UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

## PLAINTIFFS' STATEMENT REGARDING THE "KOLASSA MISTAKE"

**I.     INTRODUCTION**

Plaintiffs submit this memorandum in connection with what we fairly believe may be described as the "Kolassa Mistake". During his trial testimony on December 12, 2006, Dr. Kolassa testified that under Medicare Part B, multi-source drugs commonly are *not* reimbursed on the basis of the median of the generic AWP. Instead, Dr. Kolassa testified that it is "not based on AWP whatsoever" and that it is "based on prices that are out there." December 12, 2006 Transcript, 74.

Dr. Kolassa is wrong. At all times the median of the generic AWPs was used by Medicare Part B for reimbursement of multi-source drugs. Under the statute, the applicable regulations, the billing guidelines and an analysis of the claims at issue in this case, class members purchased multi-source drugs based on the median of the AWPs. What Dr. Kolassa failed to observe is that when two or more nebulizer drugs are combined by a dispenser (e.g., albuterol sulfate and ipratropium bromide), to make ready-to-use ("unit dose") preparations for each drug (in a single vial), the pharmacist must bill one of those drugs at the reimbursement rate for the *concentrated* version. While the reimbursement rate for the concentrated preparation is lower than the rate for the ready-to-use ("unit dose") preparation, it is still based on the median

001534-16 144800 V1

of the AWPs published by manufacturers of the concentrate preparations (including Schering/Warrick). Dr. Kolassa simply misidentified the AWP reimbursement rate for the products – it was not the $0.47 for the unit dose version that applied, but the $0.15 for the concentrated version (both of which are based on the median of the AWPs).

## II.     THE STATUTORY AND REGULATORY FRAMEWORK

During the period of 1992 through 1997, Medicare's reimbursement for multi-source drugs was based on the median of the published AWPs for all generic forms of the drug. This payment methodology was set forth in 42 C.F.R. §405.517, a regulation first published in the Federal Register on November 25, 1991 which became effective on or about January 1, 1992. In 1997, Congress codified the AWP reimbursement standard and moved reimbursement to 95% of the AWP for covered drugs. 42 U.S.C. §1395u(o). On January 1, 1998, 42 C.F.R 405.517 was amended to reflect this change. At this time the AWP used by Medicare was defined as the median of the published AWPs for all generic forms of the drug or the lowest published AWP of the brand named form of the drug, whichever is lower. 42 C.F.R. § 405.517(c).

## III.    J-CODES AND HCPCS MODIFIERS

Under Medicare Part B, drugs and biologicals are reimbursed on the basis of J-codes. J-codes are a subset of the Health Care Common Procedures Code System ("HCPCS") level 2 code set with a high-order value of "J" that has been used to identify certain drugs and other items. See Exhibit 1. A J-code may represent one manufacturer's drug formulation (when the manufacturer is single source), or the J-code may represent multiple manufacturers' products (when the product is multi-source). For single source drugs, generally the AWP associated with a J-code will simply be the AWP associated with respect to that manufacturer's single source NDC AWP. When the product is multi-source, then the associated AWP for the J-code will be the median of the AWPs associated for the generic suppliers or the lowers brand AWP.

HCPCS J-codes serve as the basis for billing under Medicare (and are also used by most private payors). When billing for drugs and biologicals and using J-codes, the providers seeking reimbursement using the J-code and obtains reimbursement on the basis of the associated AWP prices. See Exhibits 1 through 7.

There are some occasions in which HCPCS codes (for drugs or services) need to be modified. For example, when a doctor dresses a wound under a particular HCPCS code, Medicare wishes to reimburse for the dressing of the wound differently depending on whether it was one wound, two wounds, or many others. Thus, a series of HCPCS modifiers have been established for different procedures and products. See Exhibit 2. Modifiers have also been established for nebulizer drugs.

## IV.  NEBULIZER DRUGS – KO, KP, AND KQ MODIFIERS

Nebulizer drugs come in concentrated and ready-to-use preparations. Nebulizer drugs can also be used by themselves or in combination with other products. To accommodate these features, reimbursement policies for nebulizer drugs have established coding guidelines for the proper J-code billing of nebulizer drugs using HCPCS modifiers, with suffixes to the J-code KO, KP, and KQ.

Like other nebulizer drugs, dispensers (pharmacies, home health agencies, physicians) can purchase albuterol sulfate in a concentrated form (e.g. J-7618) or in a unit dose (ready-to-use version) (e.g. J-7619). When a dispenser dispenses concentrated albuterol in the same concentrated preparation form as it purchased it, the dispenser simply uses the associated J-code without a modifier. Thus, if a concentrated preparation form J-7618 is dispensed, the associated J-7618 appears on the claim form. When a dispenser purchases the more costly unit dose (ready-to-use) albuterol preparation, the associated J-7619 appears on the claim form, and the dispenser uses the J-code J-7619 or J-7619KO to designate that the preparation as being

dispensed is a single unit dose. In both these situations, the J-code is reimbursed on the basis of the applicable median AWP for the multi-source albuterol sulfate products. The concentrated version median AWP is lower by (about 2/3) than the median for the unit dose. See Exhibits 3, 4, 5 and 6.

Sometimes, a dispenser uses the concentrated form of a drug, dilutes it and then dispenses the single product in a unit (ready-to-use) preparation form to the patient. In this situation, although the dispenser acquired the concentrated form of the product, Medicare policy permits the dispenser to seek reimbursement for the single dose unit form (ready-to-use) of the product (since the dispenser is dispensing a single dose unit preparation form dose). To do so the dispenser adds a HCPCS J-code modifier of "KO" to the J-code to show that it is a single unit dose *formulation*. To use the words of the Region A DMERC Supplier Manual:

> "When inhalation drugs are dispensed as a single drug formulation, the coding of a unit dose form or a concentrated form (see Definitions section) is determined by the formulation of the drug *as it is dispensed to the patient.* If a pharmacist takes a concentrated form of a single inhalation drug (e.g., 0.5% albuterol) and dilutes it to a ready-to-use concentration (e.g., 0.083% albuterol) which is then dispensed to the patient in single-dose bottles/ vials/ ampules, the inhalation solution is billed as the unit dose form, not the concentrated form."

Exhibit 1B, 14.28-8 (*emphasis added*). See also Exhibit 1A.

Finally, there are times when dispensers will compound (mix together) multiple drug unit doses into a single formulation to be dispensed. Because Medicare does not wish to be charged the high cost of the single unit dose preparations for both of the now-compounded drugs, in 1997 Medicare created HCPCS codes KP and KQ. KP stands for the "first drug of a multiple drug unit dose formulation", and KQ stands for the "second or subsequent drug of a multiple drug unit dose formulation." See Exhibit 2. The effect of the policy is that when nebulizer drugs

are compounded, Medicare will be charged (i) at the single unit dose preparation rate for one product and (ii) at the concentrated dose level preparation rate for the second and subsequent products.

> To use the words of the Manual:
>
> "When there is a single drug in a unit dose container, the KO modifier is added to the unit dose form code. When two or more drugs are combined by a pharmacist and dispensed to the patient in the same unit dose container, all of the drugs are billed using the unit dose form code. However, the KP modifier is added to <u>only one</u> of the unit dose form codes and the KQ modifier is added to the other unit dose code(s). When two or more drugs are combined, the use of the KP and KQ modifiers should result in a combination that yields the lower cost to the beneficiary.
>
> Whenever a unit dose form code is billed, it must have either a KO, KP, or KQ modifier. If a unit dose code does not have one of these modifiers, it will be denied as an invalid code. The KO, KP, and KQ modifiers are not used with the concentrated form codes."
>
> Exhibit 1B, 14.28-8; See also Exhibit 1A.

One Medicare carrier, Palmetto GBA, posts its historic HCPCS drug fees on the internet. For the years 2001, 2002 and 2003, it posted the following:

| | | | |
|---|---|---|---|
| J7618 | Albuterol, all formulations including separation isomers, inhalation solution administered through DME, concentrated form, per 1 mg (Albuterol) or per 0.5 mg (levalbuterol) | 1 mg Albuterol 0.5 mg Levalbuterol | $0.14 |
| J7619KO | Albuterol, all formulations including separated isomers, inhalation solution administered through DME unit dose, per 1 mg (Albuterol) or per 0.5 mg (levalbuterol) | 1 mg Albuterol, 0.5 mg Levalbuterol | $0.47 |
| J7619KP | Albuterol, all formulations including separated isomers, inhalation solution administered through DME, concentrated form, per 1 mg (Albuterol) or per 0.5 mg (levalbuterol) | 1 mg Albuterol, 0.5 mg Levalbuterol | $0.47 |
| J7619KQ | Albuterol, all formulations including separated isomers, inhalation solution administered through DME, concentrated form, per 1 mg (Albuterol) or per 0.5 mg (levalbuterol) | 1mg Albuterol, 0.5 mg Levalbuterol | $0.14 |

Exhibit 3,4 and 5. Note that the allowance for J7619KQ is based on the reimbursement for J7618.

Thus, the Medicare regulations acknowledge that there are higher allowances for the unit dose preparation and lower allowances for the concentrate dose preparation. When dispensers combine products, Medicare does not wish to be billed at the higher level (unit dose) level for both the products since only one single unit is ultimately being dispensed to the patient (even though it contains two drugs). Instead, Medicare wishes to be billed for one drug at the

higher single unit dose rate, and on the basis of the allowances that apply to the concentrate version of the second (and perhaps other) products that comprise the product being dispensed. As is stated by the Manual:

> "Because of the difference in preparation costs, the allowance per mg. for a single drug dispensed as a unit dose formulation (e.g. J7619KO) will be higher than the allowance per mg. for the same drug dispensed in a concentrated form (e.g. J7618). However, if multiple inhalation drugs are dispensed in a single container, only one of the drugs (i.e. that drug billed with the KP modifier) will be reimbursed at the higher allowance, whereas *the other drug(s) (i.e. those billed with the KQ modifier) will be reimbursed at the same allowance as the concentrate.* (See Coding Guidelines section for explanation of the KO, KP and KQ modifiers)."

Exhibit 1B, 14.28-9 (*emphasis added*); see also Exhibit 1A.

In each instance (the single unit dose preparation and the concentrated preparation) the allowance permitted by Medicare Part B remains based upon the median of the AWPs. As is repeatedly indicated:

> "The allowance for drugs is based on the National Average Wholesale Price (AWP) for all sources of the pharmaceutical. If more than one available source of a drug exists, 95% of the median of the national wholesale generic prices is used, unless a brand AWP is lower. If a generic source of a drug does not exist, 95% of the brand product with the lowest AWP is used to calculate the allowance. The fee changes are in bold text."

See Exhibits 3,4,5.

## V. THE SHEET METAL CLAIMS ARE BASED ON THE MEDIAN AWP

A review of the particular claim identified by Dr. Kolassa confirms the established regulatory approach, and disproves Dr. Kolassa's testimony.

On July 14, 2003, the Lincare Pharmacy outlet in Amherst, Massachusetts dispensed a combined unit dose of albuterol sulfate and ipratorpium bromide to a Holbrook, Massachusetts resident. Defendants' Exhibit 957A. We will see, under applicable regulations

and manual procedures, both products' reimbursements will be based on the median AWP applicable for that product.

Because a compounded unit dose was being billed, Lincare could not charge at the unit dose rate for *both* products even though a unit dose of albuterol and a unit dose of ipratropium bromide was being dispensed. Instead, it needed to apply the process previously discussed, i.e., it could charge at the unit dose rate for one product (here, ipratorpium bromide) and that the concentrated rate for the other product (here, albuterol). As a result, the unit dose of albuterol being dispensed (J7619, because the albuterol was a unit dose) needed to have a modifier, KQ. Thus, Lincare entered J7619KQ in block 24D of form 1500. See Exhibit 8.

When processing the claim, the Medicare carrier applied the median AWP for the concentrated form of albuterol (J7618) to the albuterol unit dose being administered (J7619KQ) because the product being dispensed was compounded. The median AWP for the concentrated version of albuterol sulfate was $0.15. Since 300 units of albuterol was dispensed, 300 times $0.15 equaled $45.00. Thus, although Lincare had billed $90.00 for the albuterol (a billed amount which exceeded the Medicare allowable amount[1]), Medicare allowed only the allowable, $45.00 which was calculated based on the AWP. Of this, Medicare was required to pay $36.00 and Sheet Metals, $9.00. Medicare and Sheet Metals were billed for albuterol sulfate on the basis of the median AWP for the concentrated albuterol.

The attached chart summarizes *all* Sheet Metal workers claims for albuterol sulfate for which we had complete records. See Exhibit 10. In some situations, the non-compounded unit dose form of albuterol (J7619) was charged; there is proof of a Medicare allowed amount at that J-Code level based upon the median AWP at that time and that claim by

---

[1] As Dr. Hartman has testified, it is quite common for pharmacies and providers to bill at levels in excess of the Medicare allowable amount.

itself provides standing for Sheet Metals. Moreover, numerous instances of the compounded product of albuterol being dispensed, with the Medicare allowed amount based upon the concentrated form (i.e., the median AWP for the concentrated version) is charged and paid. In fact, every situation but one demonstrates that payments by Sheet Metals for albuterol sulfate were directly based upon the median AWP whether in a non-compounded or the compounded forms. See Exhibit 9.

## VI.  DR. KOLASSA PROVIDED NO BASIS FOR HIS TESTIMONY

After Dr. Kolassa testified that reimbursements of multi-source drugs under Medicare Part B are "not based on AWP whatsoever", a colloquy with the Court ensued, in which Dr. Kolassa testified:

> WITNESS:...So, in the case of the multi-source drug such as this, again, because there had been MACs and other kinds of limits in other systems for a very long time, the regional carriers that provided the service for Medicare also established their own version of MACs in here.
>
> THE COURT: Which is totally market-based.
>
> THE WITNESS: Totally market based.
>
> THE COURT: So for purposes of my analysis, your position would be the median AWPs – the median of the AWPs is irrelevant.
>
> THE WITNESS: For albuterol, absolutely.
>
> THE COURT: For alburterol?
>
> THE WITNESS: Absolutely.

Transcript, 81-82

Dr. Kolassa provided no basis for this testimony that multi-source reimbursements are "market based" or "out there". He could cite to no statute, regulation or applicable manual. Although he had worked with counsel for Schering/Warrick for months (if not years), and even though his expert disclosure required that he identify the materials he

considered in support of his opinion (See Fed. R. Civ. P. 26), there was none. Although Dr. Kolassa held himself out as expert on Medicare reimbursement he did not disclose to this Court a routine practice for nebulizer drugs dating back nine years in which the reimbursement rate (based on the median of the AWPs) for the concentrated formulation of a product is used when two or more nebulizer drugs are combined.

## VII. CONCLUSION

The testimony of Dr. Kolassa should be rejected. The Sheet Metal claims are based upon the median of the AWP.

Respectfully submitted,

By_____
Thomas M. Sobol, Esq. (BBO# 471770)
Edward Notargiacomo, Esq. (BBO# 567636)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

DATED: December 15, 2006

Steve W. Berman, Esq.
Sean R. Matt, Esq.
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan, Esq.
**HAGENS BERMAN SOBOL SHAPIRO LLP**
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Marc H. Edelson, Esq.
**HOFFMAN & EDELSON**
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler, Esq.
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Eugene A. Spector, Esq.
Jeffrey L. Kodroff, Esq.
John A. Macoretta, Esq.
**SPECTOR, ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

# CERTIFICATE OF SERVICE

I hereby certify that I, Thomas M. Sobol, an attorney for the plaintiffs, caused a true and correct copy of the foregoing **PLAINTIFFS' STATEMENT REGARDING THE "KOLASSA MISTAKE"** be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on December 15, 2006, a copy to LexisNexis File and Serve for posting and notification to all parties.

By_____**/s/ Thomas M. Sobol**_____
Thomas M. Sobol
**HAGENS BERMAN SOBOL SHAPIRO LLP**
One Main Street, 4th Floor
Cambridge, MA 02142

001534-16 144800 V1