UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) Civil Action No. 01-12257-PBS ) |
| **THIS DOCUMENT RELATES TO:** | ) Hon. Patti Saris ) |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) |

### UNITED STATES' MEMORANDUM IN OPPOSITION TO ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL PRODUCTION OF *EX PARTE* FILINGS

Defendant Abbott Laboratories, Inc. ("Abbott") moves to compel production of sealed *ex parte* filings in a case still pending under seal in the Southern District of Florida before Judge Alan S. Gold. Abbott's motion mistakenly assumes that the sealed filings that it seeks have been sent to this Court. Abbott Memorandum ("Memo.") at 1 n. 1. In fact, because those filings pertain to a still pending sealed case in the Southern District of Florida, they remain with the Florida court, which has already rejected an earlier attempt by Abbott to obtain at least one sealed filing. Abbott's motion should be denied because the filings are not contained in this Court's file and are outside the Court's jurisdiction. The United States should not be compelled to produce documents sealed by order of another district court. Furthermore, there is significant legal authority for maintaining the seal on these filings. Therefore, Abbott's motion should be denied in its entirety.

I.   **The Sealed Filings Sought by Abbott Are Outside the Court's Jurisdiction**

As its motion demonstrates, Abbott is well aware that claims against Abbott were severed from a pending sealed case in the Southern District of Florida and subsequently transferred to this Court.  The original case files remain sealed, and Abbott acknowledges its understanding that "the United States has not yet decided whether to intervene as to all other defendants named in the *qui tam* . . . ."  Abbott Memo. at 2 n. 2.

A court that receives a severed and transferred case does not have jurisdiction over the remaining portions of the case in the original district.  *See St. Jude Medical, Inc. v. Lifecare Intern, Inc.,* 250 F.3d 587 at 593 (8th Cir. 2001) ("if a case is transferred, the transferee court may review the propriety of transfer if a motion for retransfer is filed; otherwise jurisdiction is lacking."); *Linnell & Linnell v. Sloan*, 636 F.2d 65, 67 (4th Cir. 1980) (same).  When claims are severed pursuant to Fed. R. Civ. P. Rule 21, "they become independent actions with separate judgment entered in each."  *Chrysler Credit Corp v. Country Chrysler, Inc.,* 928 F.2d 1509, 1519 (10th Cir. 1991).

Just as the court in the Southern District of Florida no longer has jurisdiction over the severed and transferred case against Abbott, the District Court here cannot exercise jurisdiction over the file in the Southern District of Florida.  *See, e.g., United States ex rel. Health Outcomes Technologies v. Hallmark Health Systems, Inc.*, 349 F. Supp. 2d 170 (D. Mass. 2004) (where False Claims Act ("FCA") *qui tam* claims against three defendants had been severed and transferred from another district court, and defendants sought sealed filings, the district court in Massachusetts only exercised jurisdiction over documents in its case file and did not attempt to

unseal filings that remained in original district court where sealed *qui tam* was still pending);[1] *see also* <u>In re Flight Transp. Corp. Securities Litigation</u>, 764 F.2d 515 at 516 (8th Cir. 1985) (district court cannot simultaneously order transfer in MDL for trial purposes, while directing parties to continue filing papers in the original district court).

Abbott cannot point to any authority explaining how this Court could order the unsealing of files of a sister district court, or order the United States to turn over filings sealed pursuant to the order of another district court. Abbott's reference to the MDL rules does not support the action requested here because Abbott is seeking files pertaining to an action still pending in the Southern District of Florida. Put plainly, this Court does not have jurisdiction over the file in the district court for the Southern District of Florida.

The case against Abbott is now a separate case from the original matter pending in the Southern District of Florida. Abbott was served with the United States' complaint and it is that complaint that Abbott must answer and upon which it may conduct discovery. Furthermore, in an effort to avoid litigation over such collateral issues, the United States sought and obtained permission from the district court in Florida to provide to Abbott redacted copies of relator's earlier complaints, containing only the claims against Abbott, and the United States already provided Abbott with those pleadings.

Finally, Abbott argues that its request for relief is properly before this Court because, *inter alia*, Judge Gold issued an order administratively closing this case on July 31, 2006. Abbott Memorandum at 1 n. 1. What Abbott neglects to inform this Court is that even *after* that

---

[1] While the United States disagreed with the court's decision to unseal certain filings in that matter, it is instructive that the court did not presume to either unseal the original sealed filings or order the United States to disclose those filings.

order was issued, Abbott petitioned Judge Gold to grant its motion to compel the United States to produce a sealed filing made by the United States at Judge Gold's direction to the MDL Panel in Washington, D.C.  The sealed filing concerned the impact of the Abbott MDL transfer on the original action still pending before Judge Gold.  Notwithstanding his order closing the case, Judge Gold considered and denied Abbott's motion to compel, finding that the motion was "without merit."  (September 5, 2006 Order, Attachment One)  While the United States does not believe that Abbott is entitled to obtain the sealed filings that it seeks, the proper forum for that issue is the district court in the Southern District of Florida.

## II.   The Filings in the Pending Sealed Case in Florida Should Remain Sealed

There are significant reasons why pre-intervention filings by the United States remain sealed even after intervention or declination.  Here, where a sealed *qui tam* is still pending, those considerations carry even more weight, and Abbott has failed to present a single compelling reason why the seal on pre-intervention filings by the United States in a still pending matter should be lifted for Abbott's benefit.  Abbott also effectively admits that its efforts here are a "fishing expedition" for evidence of hypothetical government misconduct.  Such efforts should not be rewarded.

### A.   Because the FCA Provides for the Seal, There is No Presumption of Access

The general common law right to inspect and copy judicial records is not absolute and is limited by a court's supervisory authority over its own files.  *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978).  Contrary to Abbott's assertions, the case law does not support a presumption in favor of disclosure when the disputed documents have been properly submitted to the court under seal.  As the Seventh Circuit has held:

> While this court has recognized that the common law right of access creates a "strong presumption" in favor of public access to materials submitted as evidence in open court, this presumption should not apply to materials properly submitted to the court under seal. Where judicial records are confidential, the party seeking disclosure may not rely on presumptions, but must instead make a specific showing of need for access to the document.

*United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989); *see also In re Boston Herald, Inc.*, 321 F.3d 174, 184 (1st Cir. 2003) ("the First Amendment does not grant the press or the public an automatic constitutional right of access to every document connected to judicial activity."); *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83, 96 (2d Cir. 2004) (presumption of openness for court docket sheets rebuttable by showing that sealing is necessary and narrowly tailored). Thus, a court's discretionary decision to maintain documents properly filed under seal may trump the presumption of access, particularly when the materials under seal have no evidentiary value and when the court's decision is rooted in a recognition that the documents are under seal by operation of law, here the FCA.

At the investigatory stage of a government fraud case, neither the public nor the defendant has a right of access to details of the government's efforts. *See In re Search of Office Suites for World & Islam Studies*, 925 F. Supp. 738, 741 (M.D. Fla. 1996) (no public right of access to warrant procedures at the pre-investigatory stage); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir. 1989) (same); *In Re Subpoena to Testify Before Grand Jury*, 864 F.2d 1559, 1562 (11th Cir. 1989) (historically grand jury proceedings have been closed to the press and public); *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997) (same). That analysis does not change merely because documents have been filed with the Court relating to that investigation. *In re Search of Office Suites, supra; Times Mirror Co., supra; Smith, supra.*

Under the FCA, a relator's complaint must be filed under seal, and the United States is explicitly permitted to file for extensions of the investigatory period and to submit such filings under seal and *in camera*. 31 U.S.C. § 3730(b)(3). The FCA specifically requires the unsealing of the complaint after the Government's intervention decision, but does not also require that the Government's *in camera* submissions should also be unsealed. *See* 31 U.S.C. § 3730(b)(2); *see also United States ex rel. Stephens v. Prabhu*, 1994 WL 761236, at *1 (D. Nev. Dec. 9, 1994) ("Neither that section nor any other provision of the FCA ... directs the court to unseal the motions for enlargement of time filed *in camera*."); *United States ex rel. Coughlin v. International Bus. Machs. Corp.*, 992 F. Supp. 137, 140 (N.D.N.Y. 1998) ("section 3730 only provides for the unsealing of the complaint and no other section of the False Claims Act references the unsealing of any other documents filed with the court."). Accordingly, the court is well within its discretion to maintain the seal on the filings submitted during the investigatory phase of this matter after intervention. *See United States v. Andreas*, 150 F.3d 766, 769-70 (7th Cir. 1998) (employing balancing test in determination as to whether documents filed under seal in a criminal prosecution should be disclosed to the media). Here, of course, the original case remains under seal.

The *qui tam* seal is in place to protect the Government's investigation and is designed "to allow the Government an adequate opportunity fully to evaluate the private enforcement suit and to determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action." S. Rep. No. 345, 99th Cong., 2d Sess. 24 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5289, *cited in United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 244 (9th Cir. 1995) (the seal

"allows the Government the opportunity to study and evaluate the relator's information for possible intervention in the *qui tam* action or in relation to an overlapping criminal investigation").  The seal is designed to make sure that the Government's investigation is not "harmed."  *Lujan,* 67 F.3d at 245.

Indeed, the FCA confers on the Attorney General absolute and unreviewable discretion and obligation to determine how to diligently investigate various allegations of fraud brought to his attention.  31 U.S.C. § 3730(a); *see* 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 834 (1985) (absent an intent to circumscribe agency enforcement discretion and defined limits of that discretion, courts should not review discretionary agency law enforcement action).  In fact, the investigatory subsection of the False Claims Act, 31 U.S.C. § 3730(a) does not confer any rights on a *qui tam* relator, much less a defendant, to enforce or challenge the actions taken pursuant to § 3730(a).   Such an approach is consistent with the Government's conduct of fraud investigations that are not commenced as *qui tam* actions; in such situations, the investigative determinations are made by the government alone, and the government does not readily provide information about its ongoing investigations to any outside parties.  Abbott's argument, therefore, that it is entitled to these filings to determine whether the United States met the "good cause" standard is meritless.

> B.  **The FCA Seal Serves Important Purposes Both Before and After Intervention**

Under the False Claims Act, Congress charged the Attorney General with responsibility to "diligently [] investigate" suspected violations.  31 U.S.C. § 3730(a).  In all but the simplest of *qui tam* cases, this duty requires the Department of Justice to seek one or more extensions of the

investigatory period. It is the Department's practice, as contemplated by the statute, to file such requests under seal and to ask the court to retain the seal after the Government's election as to all documents pre-dating the election, except for the complaint and the Government's notice. Far from the sinister practice Abbott seeks to portray in its brief, this practice is in accord with Congress' explicit recognition, in crafting the FCA's seal provisions, that the Government's investigation is confidential and that disclosure of the Government's methods could harm not only pending, but future investigations.[2]

Disclosure of the documents sought by Abbott here is inappropriate because routine disclosure of the government's applications for extension of the seal period may interfere with the government's efforts to investigate and prosecute fraud against the United States. In addition, release of the materials contained in the sealed documents may vitiate the investigative and deliberative process privileges, and the protection properly afforded to the government's work product.

At the close of the investigatory period, the government either elects to intervene to conduct the action or declines to take over the action. 31 U.S.C. § 3730(b)(4)(A). At that point the seal is lifted and the complaint is served. The government agrees that, after its intervention decision, the public has a right of access to all proceedings in the case thereafter. Until the point

---

[2] The Department of Justice's interpretation and practices concerning a statute within its enforcement jurisdiction are entitled to some deference. *See*, *e.g.*, *Massachusetts v. Federal Deposit Ins. Corp.*, 102 F.3d 615, 621 (1st Cir. 1996) ("An established administrative practice interpreting a statute may be entitled to deference even if not yet reduced to specific regulation.") (citing *FDIC v. Philadelphia Gear Corp.* 476 U.S. 426, 437 (1986)); *Pennington v. Didrickson*, 22 F.3d 1376, 1383 (7th Cir.), *cert. denied*, 513 U.S. 1032 (1994) ("We are mindful of our obligation to defer to the interpretation of the agency whenever that interpretation can be said to embody a deliberate and considered interpretation of the legislative intent.").

of intervention or declination, however, the status of the case is no different from that of a pre-filing government fraud investigation. The seal not only permits the government to investigate possible violations of the FCA, but also guards against premature disclosure of sensitive criminal investigations that often are carried on in tandem with the civil inquiries. *See* S. Rep. at 24, *reprinted in* 1986 U.S.C.C.A.N. at 5289; *Erickson v. American Institute of Biological Sciences*, 716 F. Supp. 908, 912 (E.D. Va. 1989).

The FCA specifically requires that the government demonstrate good cause for extensions of the seal period. 31 U.S.C. § 3730(b)(3). To demonstrate good cause, the government must reveal to the Court, at least to some degree, information about its investigations. To hold that those details automatically become public at the end of the seal period effectively creates a "Catch-22," impairing the government's right to keep from the public eye documents and information that ordinarily would not be subject to review in any other civil enforcement action brought by the United States.[3]

These concerns also are implicated where, as here, government agencies deal with numerous similar cases in which they must decide whether and how to conduct enforcement litigation. *See Federal Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 30 (1983) (Brennan, J. concurring). Information filed under seal may reveal investigatory techniques that apply in

---

[3] In fact, public access not only would play no positive role, it is likely to hinder and damage the investigatory process. *United States v. Smith*, 123 F.3d at 148; *Times Mirror Co. v. United States*, 873 F.2d at 1214. As the Court explained in *Times Mirror*, if investigatory processes were opened to the public "persons identified as being under suspicion . . . might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Times Mirror*, 873 F.2d at 1215. *See also Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979) ("if preindictment proceedings were made public many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony").

hundreds of similar cases.  Defendants may obtain the benefit of the government's research and reasoning or even worse, "gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled."  *Id.*  Thus, disclosing the government's pre-election filings is detrimental to the Government's ability to conduct FCA investigations generally.  Here, where the original case is ongoing, disclosure is even more potentially prejudicial to the United States.

When seeking an extension of time in a *qui tam* case under the FCA, defendant would place the Government on the horns of a dilemma:  either include substantive information to justify an extension of the seal period, and at the same time risk subsequent disclosure of investigatory details deemed by a court to be "routine" or submit insufficient requests for extensions of time and risk premature unsealing of cases that, if adequate time were allowed for investigation, could result in substantial recoveries for the United States.  This Hobson's choice conflicts with the clear intent of the FCA and its *qui tam* provisions: to enhance the government's ability to recover funds lost due to fraud against the United States.

Finally, the Department of Justice ("DOJ") typically seeks to protect sensitive law enforcement information contained in filings made under the seal provision, even after the government's election decision.  The need for protection of work product materials, for example, does not disappear once preparation for a particular case is over, or even if litigation never in fact commences.  Because the government remains the real party in interest throughout all *qui tam* actions, it is proper for the United States to protect information contained in extensions that may impart information ordinarily subject to governmental privileges (law enforcement and deliberative process) or protected under the work product doctrine.  Here, where the case is still

pending, and where the government has other similar cases, the government's interests are even more significant.

The original case remains under seal with ongoing investigations. Abbott nevertheless seeks access to the entire court file, albeit according to Abbott, "subject to appropriate redactions and confidentiality protections." The United States submits that simply redacting the names of other defendants from these sealed filings does not adequately protect the interests of the United States as discussed above.

### C. Abbott Has Not Presented Any Compelling Reason to Unseal the Filings in the Original Pending Case

As previously noted, where judicial records have properly been submitted to the court under seal, there is no presumption in favor of public access; rather, the party seeking disclosure must make a specific showing of need for access to the records. *Corbitt*, 879 F.2d at 228.

Abbott has failed to make the necessary showing here. Abbott's reasons for obtaining these documents boil down to the following. First, Abbott wants to improperly second-guess the judgment of the district court for the Southern District of Florida in granting seal extensions. Given that the seal is in place for the benefit of the United States and not the defendant, Abbott has absolutely no basis for such a challenge. The United States filed applications for extensions of time prior to electing to intervene in the action against Abbott. Those applications have been considered by the court and ruled on, as provided for in 31 U.S.C. § 3730(b)(3), and remain sealed in the original case. Thus, the previous applications are moot. There is simply nothing in those applications for Abbott to address. Moreover, any assertions made by the Government in such applications concerned the status of the United States' investigation. Defendant's argument

that it should have an opportunity to review those materials has no basis in law or *qui tam* procedure.

Second, consistent with Abbott's attempt to divert attention from its own wrongdoing, Abbott argues that the government's "knowledge regarding the alleged misconduct and why it took so long to decide whether to intervene" is somehow relevant to this case. The latter is clearly covered by the government's deliberative process privilege, while the former is hardly grounds for the relief sought here given that the government's learning of fraud allegations via a *qui tam* complaint cannot possibly constitute a defense in the action.

Third, Abbott contends that the court file may contain evidence to support its other defenses of estoppel and laches. It takes very little research to know that both of these defenses are not available with respect to the government under these circumstances, as the United States pointed out in its opposition to Abbott's Motion to Dismiss. (Dkt. #3103 at 13 n.5). To the extent Abbott is now attempting to lay the groundwork for a statute of limitations challenge to this action, the case cited by Abbott from this district does not support Abbott's claim. The district court in *Health Outcomes* found that because venue was improper as to the defendants in the original district, the filing of the relator's complaint did not toll the statute of limitations. *United States ex rel. Health Outcomes Technologies v. Hallmark Health Systems, Inc.*, 409 F. Supp. 2d 43 (D. Mass. 2006). Here, by contrast, there is no issue as to venue in either Miami or Boston since Abbott does business in both jurisdictions.

Finally, Abbott clearly wishes to embark on a fishing expedition for evidence of hypothetical government misconduct. Abbott cannot cite a single case that permitted unsealing for that purpose. Instead, Abbott relies on a Tenth Circuit opinion where a *relator's* claims in a

declined case were dismissed based on the public disclosure/original source bar in the FCA. Nowhere in the Tenth Circuit's opinion in *United States ex rel. King v. Hillcrest Healthcare Ctr.*, 264 F.3d 1271 (10th Cir. 2001) is the issue of unsealing anything even presented.

Contrary to its representations, denying Abbott access to the sealed documents creates no prejudice to defendant.  Rather, Abbott has the same opportunity afforded any defendant in any other civil action to discover the factual underpinnings of the government's allegations through civil discovery under the Federal Rules of Civil Procedure.  Abbott has failed to offer any cognizable need to review the Government's descriptions of its investigative efforts, as set forth in the applications for extension of time.  The documents under seal in this case are completely irrelevant to and cannot prove or disprove the allegations in the United States' complaint. Asserting a wholly speculative need for access to filings under seal does not overcome the interests favoring maintaining the seal.  Accordingly, Abbott's motion should be denied.

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court deny Abbott's motion to compel.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |
| /s/ George B. Henderson, II<br>George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>(617) 748-3398<br>(617) 748-3272 | /s/ Gejaa T. Gobena<br>Michael F. Hertz<br>Joyce R. Branda<br>Renée Brooker<br>Justin Draycott<br>Gejaa T. Gobena<br>John K. Neal<br>Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C.  20044<br>Phone:  (202) 307-1088 |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA | |

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101


For the relator, Ven-A-Care of the Florida Keys, Inc.,

 /s/ James J. Breen
James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel:  (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com


Dated: December 15, 2006

14

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above "MEMORANDUM IN OPPOSITION TO ABBOTT'S MOTION TO COMPEL PRODUCTION OF *EX PARTE* FILINGS" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                      /s/ John K. Neal
Dated: December 15, 2006                             John K. Neal