**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| ALL CLASS ACTIONS | |

### SCHERING'S AND WARRICK'S RESPONSE TO PLAINTIFFS' "KOLASSA CONFIRMATION"

Plaintiffs' sarcastic reference to the "Kolassa Mistake" is ironic in light of the fact that their filing establishes that both sides agree: Medicare systematically reimbursed albuterol sulfate 0.083% solution (the "unit dose"), corresponding to J7619, at amounts dramatically lower – and not even based on – the median AWP for that drug. Along with confirming, rather than rebutting, Dr. Kolassa's math, Plaintiffs' filing undermines the premise underlying their entire case with respect to albuterol. Plaintiffs have consistently maintained that albuterol reimbursements were always based on the median AWP for all versions of the drug corresponding to the same J-code. Their eleventh-hour admission regarding the effect of the HCPCS billing modifiers demonstrates their prior attempt to gloss over the complexities of albuterol reimbursements – a topic uniquely in the domain of the TPPs – and establishes that their previous explanation of the system was overly simplistic, incorrect, and downright misleading.

Because they cannot undermine the import of Dr. Kolassa's findings with respect to albuterol reimbursements, Plaintiffs resort to a mischaracterization of his testimony. While they

claim that Dr. Kolassa testified that reimbursements for multi-source drugs in general were "not based on AWP whatsoever" (*see* Pls.' Statement Regarding the "Kolassa Mistake" at 1, 9 ("Pls.' Statement"); *see also* Trial Tr. (Dec. 12, 2006) at 74:2), his quoted statement came in direct response to questions regarding the maximum allowable charge <u>for albuterol</u>.  (*See* Trial Tr. (Dec. 12, 2006) at 73:13-74:3.)  Similarly, a review of the remainder of Dr. Kolassa's testimony reveals that his statements were confined to albuterol – the subject drug of the claims he reviewed.  (*See, e.g.*, Trial Tr. (Dec. 12, 2006) at 59:12-15, 62:21-63:14.)  Once the scope of his testimony is properly limited to the albuterol reimbursements he analyzed, it is clear that Plaintiffs' so-called "statement" proves the only point Dr. Kolassa himself sought to make: Medicare was reimbursing the albuterol unit dose (J7619) at an amount that was not based on 95% of the median value of <u>that drug's</u> AWP.

In their statement, Plaintiffs' attorneys correctly explain that Medicare utilizes the KO, KP, and KQ HCPCS code modifiers to allow different levels of reimbursement for unit doses of nebulizer drugs, depending on whether those drugs are dispensed on their own or as part of a combination prescription.[1]  (*See* Pls.' Statement at 3.)  Plaintiffs' description of that complicated system makes clear that any attempt to follow or understand the modifier billing procedures can be, as one industry expert has put it, "more challenging than deciphering tax codes written in Latin."  Linda K. Smith, *Respiratory's New Coding Headache* (May 2002), http://www.hhcdealer.com/article.php?p=4&s=HHC/2002/05 (attached as Exhibit A).  Plaintiffs' description also makes clear that, contrary to their prior assertions, the albuterol unit dose

---

[1] Plaintiffs do not attempt to provide the authority by which Medicare was able to reimburse for a generic drug on a basis other than the drug's median AWP.  While there are specific provisions that might allow for such deviations, such as HCFA's authority to lower reimbursement rates in order to avoid "inherently unreasonable" reimbursements, *see* 42 C.F.R. 405.502(g), it is not clear whether the carrier's decision here is based on this, or any other, authority.  Regardless, the fact remains that Medicare was not generally reimbursing the albuterol unit dose (J7619) based on the unit dose's median AWP.

(J7619) was generally not reimbursed based on its own median AWP.[2] Specifically, Plaintiffs provide a chart showing that when the unit dose (J7619) is dispensed as one part of a combination prescription and is properly given a KQ modifier, it is not reimbursed on the basis of its own AWP (which would have yielded a rate of $0.47), but instead is reimbursed at a rate of $0.14. That $0.14 reimbursement is based on the lower median AWP of a different drug: the albuterol 0.5% concentrate (J7618). (*See* Pls.' Statement at 6.)

Plaintiffs attempt to dodge this central issue by using the modifiers to argue that Dr. Kolassa's theory is flawed, but – in so doing – they make arguments that belie their position. Plaintiffs admit that Medicare designed this system because it "does not wish to be billed at the higher level (unit dose level) for both products." (*Id.*) Thus, like any other payor imposing a MAC, Medicare adopted an alternative reimbursement approach to eliminate "excessive" reimbursement. As Dr. Kolassa explained using the Sheet Metal Workers' ("SMW") claims forms, market forces allowed Medicare to successfully employ that design. (*See* Trial Tr. (Dec. 12, 2006) at 81:23-82:10; s*ee also* Declaration of Direct Testimony by Eugene M. "Mick" Kolassa at ¶ 12 ("Kolassa Declaration") (attached as Exhibit B).) Simply put, Medicare consciously chose to implement a system whereby it refused to reimburse the albuterol unit dose (J7619) based on the statutorily prescribed formula related to its own median AWP.[3]

In describing the SMW claim from Lincare Pharmacy ("Lincare"), Plaintiffs concede that when albuterol and ipratropium bromide were prescribed in combination, the provider dispensed

---

[2] Plaintiffs' description of the HCPCS modifiers makes clear that the system applies to all combination albuterol prescriptions for Medicare-based claims. Thus, the modifiers would also have reduced the allowed amounts for a number of the BCBSMA claims for the unit dose of albuterol (J7619). Since Plaintiffs have not submitted the same type of detailed claims forms for the BCBSMA claims that they did for the Sheet Metals claims, they have made it impossible to clarify the proportion of BCBSMA claims where that occurred.

[3] The Court has previously recognized that a MAC in the private market represents "a single, set price that the PBM or insurer announces it will pay," and that a MAC can be based on the median or mean of different manufacturers' AWPs. *In re Pharm Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 74 (D. Mass. 2005).

"a unit dose of albuterol and a unit dose of ipratropium bromide."[4] (Pls.' Statement at 8 (referencing Tr. Ex. 957A).)  In describing the resulting reimbursement for the albuterol unit dose (J7619), Plaintiffs prove Dr. Kolassa's point: "the Medicare carrier applied the median AWP for the <u>concentrated form</u> of albuterol (J7618) to the albuterol <u>unit dose</u> being administered (J7619KQ)."  (*Id.* (emphasis added).)

Plaintiffs' analysis of the SMW claims data raises two additional points regarding the inadequacy of their purported "statement."  First, while Plaintiffs describe Lincare as a pharmacy outlet in Amherst, Massachusetts, Lincare is actually located in Amherst, New York.  (*See* Tr. Ex. 957A.)  Because Lincare is located in New York and because SMW's principal place of business is not Massachusetts,[5] claims for drugs purchased from that pharmacy do not satisfy Class 2's "Class Definition" criteria.  (*See* Consolidated Order re: Motion for Class Certification (Jan. 30, 2006) (Doc. No. 2097), at 4.)  This error is not an anomaly.  In fact, <u>none</u> of the SMW claims involved prescriptions obtained through a Massachusetts provider.  Thus, <u>none</u> of the claims fit the Class 2 definition.[6]  *See id.*  Second, Plaintiffs' Exhibit 10 – which they claim establishes SMW's standing – does not include <u>any</u> claims where the albuterol unit dose (J7619) was <u>correctly</u> billed and reimbursed on the basis of its own median AWP.  (*See* Kolassa Declaration at ¶ 13 (attaching chart explaining Plaintiffs' multiple errors).)  Along with the fact that Plaintiffs' own statement establishes that Medicare affirmatively employed measures to avoid reimbursing the albuterol unit dose (J7619) on the basis of its own AWP, these two fundamental errors defeat any SMW Class 2 claims for albuterol that Plaintiffs may otherwise have been able to assert.

---

[4] Any suggestion to the contrary would be misleading and inadequate.  (*See* Kolassa Declaration at ¶¶ 6, 10.)

[5] SMW's principal place of business is either Texas or Tennessee, not Massachusetts.

[6] Because albuterol is a self-administered drug, it does not fit the definition for Class 3.  (*See id.* at 6.)

-5-

## CONCLUSION

Plaintiffs' statement confirms Dr. Kolassa's testimony: Medicare reimbursements for the albuterol unit dose were not based on that drug's median AWP.

Respectfully Submitted,

/s/ John T. Montgomery
John T. Montgomery (BBO#352220)
Steven A. Kaufman (BBO#262230)
Eric P. Christofferson (BBO#654087)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

*Attorneys for Schering-Plough Corporation and Warrick Pharmaceuticals Corporation*

Dated:  December 16, 2006

-6-

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 16, 2006, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

                                                                                         <u>/s/ Adam Wright</u>

Adam Wright