# EXHIBIT 5

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700



Nov 19 2006
5:19PM

Direct Number:  (202) 879-3734
christophercook@jonesday.com

November 19, 2006

<u>VIA EMAIL</u>

Gejaa Gobena                         M. Justin Draycott
Patrick Henry Building               Patrick Henry Building
601 D Street, N.W.                   601 D Street, N.W.
Room 9028                            Washington, D.C. 20004
Washington, D.C. 20004

Re:   *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.*,
      <u>MDL No. 1456/Civil Action No. 01-12257-PBS</u>

Dear Counsel:

As you know, in responding to subpoenas issued by the Defendants in the AWP MDL and the Lupron MDL to the Department of Health and Human Services ("HHS") and various Medicare Carriers, the United States withheld a number of responsive documents from its production under the "deliberative process" privilege.  You have previously provided to us privilege logs purporting to describe documents initially withheld from the HHS and Medicare Carrier productions.  I have attached copies.  While the United States subsequently agreed to produce some of the documents contained on these privilege logs, it is Abbott's understanding that the United States has continued to withhold most of the documents under a claim of the deliberative process privilege.

At the parties' last meet-and-confer, Abbott asked if the United States would reconsider its decision to assert the deliberative process privilege for all documents that the United States continues to withhold under the deliberative process privilege.  We specifically asked you whether the government's decision to intervene in Ven-A-Care's *qui tam* action against Abbott would cause the government to take a different position regarding its assertion of the deliberative process privilege.  You asked that we prepare a formal letter outlining our request, and indicated you would forward that request to the appropriate agency officials.

For the reasons outlined below, Abbott hereby requests that the United States produce those documents it has previously withheld from the HHS and Medicare Carrier productions under a claim of the deliberative process privilege.

JONES DAY

Gejaa Gobena
M. Justin Draycott
November 19, 2006
Page 2

The deliberative process privilege is a qualified, not an absolute, privilege.  Of particular importance here, courts have held that the deliberative process privilege does not apply if the deliberations or decision-making of the government agency are at issue in the litigation.  *See United States v. Lake County Board of Commissioners*, 233 F.R.D. 523, 526 (N.D. Ind. 2005) (the deliberative process privilege "is vitiated entirely at step one when the government's decision-making process is central to the plaintiff's case"); *Mitchell v. Fishbein*, 227 F.R.D. 239, 250 (S.D.N.Y. 2005) ("the deliberative process privilege is not applicable 'where the decision-making process itself is the subject of litigation'") (citations omitted); *Scott v. Board of Educ. Of the City of East Orange*, 219 F.R.D. 333 (D.N.J. 2004) ("when the deliberations of a government agency are at issue, the [deliberative process] Privilege is not available to bar disclosure of such deliberations"); *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) ("where, as here, the 'decision-making process itself is the subject of the litigation,' it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information") (citations omitted).[1]

At the very least, the United States' involvement in this case demands that the government's claim of the deliberative process privilege fall.  *See In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (noting that "role of the government" is a factor in the court's balancing test); *Scott*, 219 F.R.D. at 337 (same).  The United States has chosen to make itself the Plaintiff in a case that puts at issue government decision-making in the area of drug reimbursement by the Medicare and Medicaid programs.  This decision by the United States constitutes a waiver of the deliberative process privilege as to any government decisions relevant to this litigation.  Moreover, due process does not permit the United States to seek to deprive Abbott of its property while simultaneously asserting a privilege that prevents Abbott from obtaining evidence necessary to the company's defense.

The deliberations of HHS, CMS, and the Medicare Carriers on the subject of drug reimbursement are directly relevant to claims made by the United States in its litigation against Abbott.  Relevant deliberations specifically include those entities' understanding of published AWPs and the use of those published AWPs in Medicare and Medicaid drug reimbursement.

---

[1] *See also Tri-State Hospital Supply Corp. v. United States*, 2005 U.S. Dist. LEXIS  33156, *24-25 (D.D.C. Dec. 16, 2005) ("where the government's intent is squarely at issue, there is no need for the court to engage in the tests applied in deliberative process privilege cases because 'the privilege does not come into the picture'") (citations omitted); *New York v. Oneida Indian Nation of New York*, 2001 U.S. Dist. LEXIS 21616, *20 (N.D.N.Y. 2001) ("If the party's cause of action is directed at the government's intent . . . and closely tied to the underlying litigation, then the privilege cannot be permitted and must 'evaporate.'") (citations omitted); *McPeek v. Ashcroft*, 202 F.R.D. 332, 334 (D.D.C 2001) ("It is certainly true that this privilege yields when the lawsuit is directed at the government's subjective motivation in taking a particular action."); *Department of Economic Development v. Arthur Andersen & Co. (U.S.A)*, 139 F.R.D. 295, 299 (S.D.N.Y. 1991) ("where the deliberations of government are genuinely at issue, privileges designed to shield the deliberative process from public scrutiny will not bar disclosure").

JONES DAY

Gejaa Gobena
M. Justin Draycott
November 19, 2006
Page 3

Indeed, the United States contended in its response to Abbott's motion to dismiss that Abbott "with[eld] information and/or purposely provid[ed] misleading information *that was critical to government decisions* regarding amounts to pay on claims for Abbott's products."  U.S. Opp. to Abbott Lab. Mot. to Dismiss, at 1 (filed 9/15/06) (emphasis added).  Abbott is entitled to discover whether, how, and to what extent AWPs published for prescription drugs were "critical" to the decision-making process of government officials in the area of drug reimbursement.  In particular, Abbott is entitled to seek discovery into why the Medicare and Medicaid programs continued to use published AWPs despite the fact that government officials and agents knew published AWPs did not represent average prices paid by providers and pharmacies to acquire drugs, particularly for generic drugs.

The privilege log descriptions for documents the United States continues to withhold, bare as they are, strongly suggest that all or nearly all of the withheld documents bear directly on the government's decision-making in the area of drug reimbursement and, thus, are relevant to this litigation.  Indeed, some of these documents appear to relate specifically to vancomycin, one of the generic drugs as to which the United States has now sued Abbott.  The following examples from the United States' privilege log for the HHS production are illustrative (emphasis added):

- a "Memo," no date provided, from "Director, Center for Health Plans and Providers" to "The Administrator" described as "***Medicare Average Wholesale Price (AWP) for Drug Pricing – Decision (Draft with Handwritten Notes)***" (HHC901-0973 – 75);

- a "Note," no date, author or recipient provided, described as "***Options for AWP***" (HHC901-1014);

- a 12/12/95 "Memo with Attachment," from "Bernadette" to "Charles; Pat; Bob; Dorothy" described as "***Re: Meeting on Drug Payment Policy Options***" (HC902-0094 – 97);

- a 12/11/95 "Draft" from Robert Niemann described as "***Re: Options for Drug Payment Under Medicare Part B (with handwritten notes)***" (HHC902-0100 – 02);

- a 8/12/92 "Memo and Attachment" from Albert Benz described as "***Re Calculation of the Average Wholesale Price (AWP) for Drugs***" (HHC902-0132 – 35);

JONES DAY

Gejaa Gobena
M. Justin Draycott
November 19, 2006
Page 4

- a "Draft," no date, author or recipient provided, described as "***Re Proposed Methodology for Determining Average Wholesale Price (AWP)***" (HHC902-0370 – 75);

- a "Draft Regulation," no date provided, from "Regulatory Staff" described as "***Re Implementation of the Balanced Budget Act of 1997***" (HHC902-0376 – 81);

- a 5/23/95 "Note" from Kay Jewell to Chester Robinson, Walter Rutemueller, and Larry Bonannder described as "***May 18 Meeting with OPTIVITA representatives and their recommendations regarding Vancomycin and coverage of external infusion pumps***" (HHC903-0524-25);

- a 5/24/95 "Memo" from Kay Jewell to Larry Bonannder, Walter Rutemueller, Chester Robinson and Tom Hoyer described as "***Vancomycin***" (HHC903-0543 – 47);

- a 4/5/93 "Note with attached report" from Dorothy Burn Collins to Kathy Buto, Tom Ault, Chuck Booth and Bob Wren described as "***Review of Home Infusion Therapy***" (HHC903-0641 – 49);

- a "Note and attached briefing materials," no date provided, from B. Wren to Joyce Zutell described as "***Briefing Materials for Hearing on Home Infusion Therapy, House Energy and Commerce Subcommittee on Oversight and Investigations, September 9, 1993***" (HC903-0711 – 20);

- a "Memo," no date provided, from Douglas J. Porter to "All Prescribers" described as "***Increases in Maximum Allowable Drug Dispensing Fees***" (HHC907-1087); and

- something typed "In The Matter Of The Adoption Of A Rule Which Govern Payment for Pharmaceutical" further described as "***Adoption Of A Rule Which Govern Payment For Pharmaceutical Services***" (HHC908-0684).

The United States has not provided the requisite showing to invoke the deliberative process privilege for the documents that have been withheld on those grounds. "Governmental privilege must ordinarily be invoked by a department head or other responsible agency official, after a personal review of the documents, in an affidavit stating a factual basis for the claim of injury to legitimate government interests flowing from disclosure." *Grossman v. Schawrz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) (citing *Unites States v. Reynolds*, 345 U.S. 1 (1953); *United States v. O'Neil*, 619 F.2d 222, 225-26 (3d Cir. 1980); *King v. Conde*, 121 F.R.D. 180, 189

JONES DAY

Gejaa Gobena
M. Justin Draycott
November 19, 2006
Page 5

(E.D.N.Y. 1988); *Kelly v. San Jose*, 114 F.R.D. 653, 669-70) (N.D. Cal. 1987)).  "Assertion of privilege by the attorney for the [government agency] or by the author of the document is insufficient." *Grossman*, 125 F.R.D. at 381.  The "factual basis must be stated 'with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information.'" *Id.* (quoting *King*, 121 F.R.D. at 189).  "Specifically, the affidavit must include a showing of 'what interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be.'" *Id.* (quoting *Kelly*, 114 F.R.D. at 669).  *See also Abramson v. United States*, 39 Fed. Cl. 290, 294 (1997) ("the agency must provide precise and certain reasons for maintaining the confidentiality of the documents").

As far is Abbott is aware, the United States has failed to make the requisite showing for any of the documents it has withheld under the deliberative process privilege.  If the United States remains unwilling to produce these documents to Abbott under the deliberative process privilege, Abbott requests that the United States, through the appropriate official, provide the requisite showing described above for *each* of the documents it will not produce to Abbott. *Kelly*, 114 F.R.D. at 668 ("To properly support each such objection the party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration.").  Without the required showing, Abbott is not given a "fair opportunity to challenge the bases for the assertion of the privilege." *Id.* at 669 ("Providing that opportunity is important to the court as well because in our adversary system the court looks to opposing parties to help it probe and measure the strength of submissions such as these.").

Moreover, the United States' privilege logs fail to identify the dates for many of the documents withheld under the deliberative process privilege, and the level of detail provided in the logs about the documents is minimal.  There is no reference in any of the entries to the relevant final decision to which the document relates.  This makes it impossible for Abbott (or anyone else) to assess whether the documents meet the threshold requirements of the deliberative process privilege, including whether the documents are pre-decisional and deliberative.  *See Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (entries—consisting "almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter—will not do").  If the United States remains unwilling to produce documents it has withheld under the deliberative process privilege, it should remedy those defects as well.

JONES DAY

Gejaa Gobena
M. Justin Draycott
November 19, 2006
Page 6


So that Abbott can file expeditiously any necessary motion to compel, please advise me by Friday, December 1, 2006 whether the United States will produce the documents described on your privilege log.


Very truly yours,

R. Christopher Cook


Attachments

cc:    Renee Brooker
       Mark A. Lavine
       Ana Maria Martinez
       Ann St. Peter-Griffith