UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |
| | **[Leave to File Granted on 1/2/07]** |

### PLAINTIFFS' SUR-REPLY OPPOSITION REGARDING THE TRANSACTION REQUIREMENT IN GEN. LAWS CHAPTER 93A, § 11

Although Defendants' Reply Memorandum contains numerous errors and misstatements, two of those errors are fatal to their attempt to graft a transaction requirement onto Section 11. First, contrary to Defendants' claim, the Massachusetts Supreme Judicial Court's ("SJC's") holding in *Szalla v. Locke*, 421 Mass. 448, 657 N.E.2d 1267 (1995) did not announce a departure from prior decisions interpreting Section 11; rather, it simply applied that law to a factual scenario – whether partners in the same enterprise are engaged in "trade or commerce" under Section 11 – that is not relevant here. Second, Defendants are simply wrong that Plaintiffs' argument that BCBS Massachusetts and Taft Hartley funds have standing under Section 9 stands only on the decision of a single but (according to Defendants) misguided Court. Instead, as acknowledged by other federal courts, that argument is well supported by Massachusetts

- 1 -

law. For these reasons, this Court should deny Defendants the opportunity to rewrite Section 11 as they have proposed.

I. **CONTRARY TO DEFENDANTS' ARGUMENTS, *SZALLA* ANNOUNCED NO NEW INTERPRETATION OF SECTION 11 AND DEALT WITH FACTS NOT RELEVANT HERE**

Defendants' Reply spends paragraph upon paragraph delineating Massachusetts case law as pre- and post-*Szalla*, claiming that this opinion created some brightline distinction missed by Plaintiffs. Defendants' selective quotes from that decision, however, disguise the truly narrow scope of the *Szalla* opinion. *Szalla* concerned a Section 11 claim that arose from an unsuccessful effort by the plaintiff and defendant to start a garden nursery business together. Notably, the only "relevant inquiry [in *Szalla*] [wa]s whether the parties' activities associated with the development of a business constituted 'trade or commerce' pursuant to c. 93A." *Szalla*, 421 Mass. at 450-51, 657 N.E. 2d at 1269. In determining whether there had been such trade or commerce, the Court noted that: "[t]he development of c. 93A suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities, ***and not those that may occur within a single company***." *Szalla*, 421 Mass. at 451, 657 N.E. 2d at 1269 (emphasized portion was omitted from Defendants' Reply at 2 ***without*** indicating that the sentence continued after "entities"). The Court thereafter held that intra-enterprise disputes that do not involve an "actual or contemplated" transaction could not constitute a "commercial transaction … in the sense required by c. 93A." *Id.* at 452, 657 N.E. 2d at 1270.

- 2 -

It is ***this*** discrete holding for which *Szalla* is known and relied upon,[1] ***not*** the purported "commercial interaction between the parties" requirement created by Defendants.[2] In fact, the *Szalla* Court ***actually*** "conclude[d] that c. 93A requires that there be a commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce." *Id*. at 451-52, 657 N.E. 2d at 1269. It did not require that this transaction occur between the plaintiff and defendant. *Id*. As set forth in Plaintiffs' original Opposition, this principle is bolstered by the Massachusetts Supreme Judicial Court's pronouncement (not in dicta, as Defendants suggest) that privity is not required in c. 93A § 11 claims. *See Nei v. Boston Survey Consultants, Inc*., 388 Mass. 320, 324, 446 N.E.2d 681, 683 (1983) (stating that, although there is no requirement of privity of contract, the judgment for defendant was affirmed because

---

[1] This conclusion is confirmed by the long line of Massachusetts SJC cases citing and relying on *Szalla*; each substantive *Szalla* citation by the Court is for the proposition that c. 93A does not apply to disputes among "coventurers." *See Danger Records, Inc. v. Berger*, 444 Mass. 1, 6, 825 N.E.2d 498, 503, n. 6 (2005) (citing *Szalla* for proposition that c. 93A does not apply to "a dispute among coventurers."); *Lattuca v. Robsham*, 442 Mass. 205, 209, 812 N.E.2d 877, 881 (2004) (relying on *Szalla* for rule that c. 93A does not apply to "internal disputes between parties who associated 'in the interests of forming a business venture together."); *First Enterprises, Ltd. v. Cooper*, 425 Mass. 344, 347, 680 N.E. 2d 1163, 1165 (1997) (citing *Szalla* for rule that "disputes between parties in the same venture" do not fall within scope of c. 93A); *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 23, 679 N.E. 2d 191, 206-07 (1997) (discussing *Szalla* as limiting c. 93A to exclude intra-enterprise disputes "because they are more similar to purely private disputes and not 'commercial transactions'"). Indeed, numerous other Massachusetts opinions, including several relied on by Defendants, cite *Szalla* only for this limited proposition, while none rely on it for the wide-sweeping and imaginary rule that Defendants concocted.

[2] Defendants' citations to cases purporting to confirm their "Post-*Szalla*" fiction have no relevance here, because they all deal with situations such as car crashes and contaminated wells where no transaction between the parties existed whatsoever. *See L.B. Corp. v. Scweitzer-Mauduit Int'l Inc.*, 121 F. Supp. 2d 147 (D. Mass. 2000) (in a case involving "the improper pumping of water from one of defendants' wells" that caused damage to plaintiff's property; again, there was no transaction that went awry, just bad neighboring); *Swenson v. Yellow Transp., Inc.*, 317 F. Supp. 2d 51, 56 (D. Mass. 2004) (dismissing a 93A § 11 claim based on a car crash between parties because there was no transaction or relationship between the parties, "or even between [Defendant] and any other travelers on the road."); *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 894 (D. Mass. 1991) (a pre-*Szalla* case concerning environmental contamination where no transaction occurred whatsoever); *Milliken & Co. v. Duro Textiles, LLC*, 19 Mass. L. Rep. 509, 2005 Mass. Super. Lexis 376, at *51 (2005) (the only dealings among the parties occurred "in the course of [defendant's] unsuccessful bankruptcy proceedings and the present litigation."); *O'Brien v. Comenitz*, 14 Mass. L. Rep. 589, 2002 Mass. Super Lexis 194 (2002) (dismissing 93A claim where a meter maid filed a complaint against defendant real estate broker, pursuant to injuries the meter maid received when she attempted to give the driver a parking ticket because no transaction occurred whatsoever).

- 3 -

Case 1:01-cv-12257-PBS Document 3522-2 Filed 01/04/07 Page 4 of 51

parties had no contractual or business relationship *and* the defendant never made misstatements to plaintiffs).[3]

Finally, Defendants claim that their transaction "requirement" was inserted into Section 11 by virtue of the Massachusetts legislature's purported concern with converting garden variety business tort claims into 93A claims. However, no such language exists in Section 11, which instead broadly provides in pertinent part:

> *Any person* who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by *another person* who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action….

Mass. G.L. Ch. 93A, § 11 (emphasis added). The statute does not require that the litigants transact exclusively with one another, and the Court should not require this either. Indeed, Chapter 93A is explicitly "not limited by traditional tort and contract law requirements.'" *Id*. § 2. *Samuel Black Co. v. Burroughs Corp.*¸ No. 78-3077-F, 1981

---

[3] Defendants claim that Plaintiffs' citation to *First Enterprises, Ltd. v. Cooper* recited facts not contained in that opinion. On the contrary, Plaintiffs were citing to that Court's recitation of the facts and holding of *Kirkland Constr. Co. v. James*, 39 Mass. App. Ct. 559, 658 N.E.2d 699 (1995). The *First Enterprises* Court distinguished the facts of that case from those of Kirkland as follows:

> The plaintiffs rely on *Kirkland Constr. Co. v. James*, 39 Mass. App. Ct. 559, 658 N.E.2d 699 (1995). In the *Kirkland* case, there was a sale of goods between two distinct businesses. The attorneys provided unsubstantiated assurances that their client could pay for the goods being offered by the plaintiff, a misstatement on which the plaintiff relied to its detriment. In those circumstances, the Appeals Court concluded that the attorneys injected themselves in "trade and commerce." Here, the defendant did not inject himself in a marketplace transaction. The defendant's statements were not made to influence an external marketplace but rather to secure for his client a lump-sum payment for his client's shares in the plaintiff's business. This defendant did not, as did the attorneys in *Kirkland*, *supra*, inject himself into "trade or commerce" by making a false statement on which another business relied to its detriment.

While Plaintiffs apologize for not making their citation clearer, the reasoning remains the same: because Defendants injected themselves into trade and commerce just like the attorneys in *Kirkland*, Plaintiffs have properly established a claim under Section 11.

001534-16 145125 V1

U.S. Dist. Lexis 16289, at *29 (D. Mass. Dec. 18, 1981) (citing *Slaney v. Westwood Auto, Inc.*, 322 N.E. 2d 766, 773 (Mass. 1975); *Commonwealth v. DeCotis*, 316 N.E. 2d 748 (Mass. 1974)). Defendants' cases are not to the contrary.

## II. NONPROFIT TPP PLAINTIFFS HAVE STANDING UNDER SECTION 9

In Defendants' final section of their Reply, they criticize the decision of the District of Columbia District Court in *In Re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 47 (D.D.C. 2003), claiming that it "got Massachusetts law flatly wrong" when concluding that Blue Cross Blue Shield of Massachusetts was a charitable institution that could bring a claim under Section 9. *See* Defendants' Reply at 7-8. However, the *Lorazepam* Court has not stood alone in holding that BCBS Massachusetts has standing to assert a claim under Section 9 of Massachusetts's Consumer Protection Act. Notably, the Court in *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278, slip op. at 6 (E.D. Mich. May 27, 2003), attached as Exhibit A, found that same thing after doing a comprehensive analysis of Massachusetts law. Specifically, it found that:

> BCBS Massachusetts has [shown] that it is a nonprofit corporation created by statute and regulated by the Commonwealth of Massachusetts, and that the activity in question – its customary payment or reimbursement for its members' prescription drug benefits – falls within its charitable mission as set forth by statute and case law.

*In re Cardizem*, No. 99-md-1278, at *7-8.

Indeed, the *Cardizem* and *Lorazepam* decisions are both consistent with the holdings of Massachusetts courts that non-profits may bring claims under Section 9. *See All Seasons Servs. v. Commissioner of Health & Hosps.*, 416 Mass. 269, 620 N.E.2d 778

- 5 -


(1993) (holding that a nonprofit hospital's solicitation of bids for food services was incidental to its core mission of providing medical services and was thus not engaged in a business context under Chapter 93A); *Trustees of Boston Univ. v. ASM Communs., Inc.*, 33 F. Supp. 2d 66, 77 (D. Mass. 1998) (Saris, J.) (in a case where a nonprofit university was the plaintiff, this Court noted that: "A nonprofit or charitable corporation … is not engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose,' and [o]nly if the nonprofit 'goes beyond its ordinary business' and aims instead to generate a profit does it fall within § 11.") (quoting *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 952 F. Supp. 884, 890 n.4 (D. Mass. 1997) (summarizing recent Massachusetts case law), *aff'd*, 142 F.3d 26 (1st Cir. 1998)).

And there is no question in this case that BCBS MA is a nonprofit. As noted on its web page:

> Today, Blue Cross Blue Shield of Massachusetts retains its independent, not-for-profit status as a multifaceted health care company providing a wide range of health care programs and educational services. Members receive health care coverage through a range of employer-sponsored group plans, and non-group and senior citizen programs.[4]

And the actions of BCBS MA, as well as those of the Taft Hartley Funds, are acts that are within its customary business purposes.

Defendants claim that Massachusetts courts have adjudicated a long-line of TPP cases under Section 11, but none of the cases they cite involve a non-profit plaintiff.

---

[4] Statement from web attached as Exhibit B.

Indeed, the one case that Defendants cite for the proposition that "Massachusetts courts have consistently rejected BCBS MA's argument that it does not engage in 'trade or commerce' for purposes of ch. 93A," *Singh v. Blue Cross & Blue Shield of Mass., Inc.*, ***never reached that issue.*** See 182 F. Supp.2d at 180 ("There is little need to dwell on this issue: M.G.L. ch. 93A requires conduct that reaches 'a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.' . . . Singh has shown no conduct by Blue Cross that a reasonable factfinder could find meets this demanding standard.") (internal citations omitted).

Defendants' attempts to turn Massachusetts law on its head by implying should be rejected.

DATED: December 18, 2006

By  /s/ Steve W. Berman
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

- 7 -

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL 60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496b-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Donald E. Haviland, Jr.
The Haviland Law Firm LLC
740 S. Third Street, Third Floor
Philadelphia, PA 19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400
**CO-LEAD COUNSEL FOR PLAINTIFFS**

001534-16 145125 V1

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' SUR-REPLY OPPOSITION REGARDING THE TRANSACTION REQUIREMENT UNDER MASSACHUSETTS GENERAL LAWS CH. 93A, § 11** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on December 18, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

By **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

- 9 -