# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CARDIZEM CD ANTITRUST
LITIGATION,

THIS DOCUMENT RELATES TO:

Blue Cross Blue Shield of Michigan,
et al. v. Aventis, S.A., et al.,

Case No. 01-72806

Master File No. 99-md-1278
MDL No. 1278

Honorable Nancy G. Edmunds

ORDER NO. 70
MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS THE BLUE CROSS PLAINTIFFS'
FIRST AMENDED COMPLAINT

Defendants Aventis and Andrx each bring separate motions to dismiss (or strike) the

First Amended Complaint filed by BCBS of Michigan, BCBS of Minnesota, BCBS of

Massachusetts, and Excellus Health Plan, Inc. ("Blue Cross Plaintiffs").  Plaintiffs have

responded.  For the reasons stated below, this Court **GRANTS IN PART** and **DENIES IN**

**PART** Defendants' motions to dismiss.

**I.    Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b) (6) tests the

sufficiency of a complaint. The complaint is viewed in a light most favorable to the plaintiff.

The Court assumes that the plaintiff's factual allegations are true and determines whether

the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994);

53

Bower v. Fed. Express Corp., 96 F.3d 200, 203 (6th Cir. 1996); Forest v. United States Postal Serv., 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" In re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997) (quoting Columbia Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under some viable legal theory." See In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a Rule 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. Analysis

In addition to the now familiar facts regarding Defendants' actions to restrain and monopolize the market of Cardizem CD and its AB-rated generics, the Blue Cross Plaintiffs allege the following facts showing how Defendants' conduct targeted and harmed third-party payers, like the Blue Cross Plaintiffs, specifically. Generally, in the prescription drug market, the consumer of the product (the patient) is not primarily responsible for the cost of the drug, because the patient is covered by a drug benefit provided through a Blue Cross or similar plan. With prescription drugs, the physician prescribes, the pharmacist dispenses, and the patient consumes the medication, but in most cases, it is the third party payer who actually pays. For example, in 1998, third party payers, like the Blue Cross Plaintiffs, were responsible for 73% of the retail costs of prescription drugs. Thus, entities

like the Blue Cross Plaintiffs are chiefly harmed by Defendants' anti-competitive conduct. (Compl. ¶¶ 6, 40.)[1]

Blue Cross Plaintiffs further allege that: (1) Defendants' unlawful efforts to keep AB-rated generics for Cardizem CD off the market were intended to thwart Plaintiffs' (and other third party payers') efforts to shift pharmacy prescriptions for Cardizem CD to lower priced generic equivalents through state mandatory drug substitution statutes and other cost containment programs, such as differential co-payments, maximum allowable cost programs ("MAC"), formularies, and pharmacy generic substitution incentives; (2) Defendants were aware of the threat to brand-name market share (and revenues) posed by the Blue Cross Plaintiffs' ability to control costs once AB-rated substitutes were made available; and (3) Defendants sought to protect their market share and revenues by preventing interchangeable generic products from competing with Cardizem CD. (Compl. ¶¶ 40-55.) As a direct result of Defendants' illegal conduct, Blue Cross Plaintiffs allege they were forced to pay millions in overcharges. (Compl. ¶ 1.)

Defendants have filed motions seeking to dismiss the Blue Cross Plaintiffs' claims. Plaintiffs respond that Defendants have not met their Rule 12(b)(6) burden of showing that Plaintiffs can prove no set of facts which would entitle them to relief. This Court addresses each of Defendants' dismissal arguments below, beginning with claims asserted under the Massachusetts Consumer Protection Act.

---

[1] All paragraph references are to the Blue Cross Plaintiffs' First Amended Complaint filed on September 24, 2001.

3

## A. BCBS Massachusetts's Claims Under the Massachusetts Consumer Protection Act

BCBS Massachusetts seeks damages under the Massachusetts Consumer Protection Act ("MCAP"), Mass. Gen. Laws, ch. 93a, § 2.[2] Section 9 of that Act creates a private right of action for persons injured by MCAP violations. Defendants raise three arguments why these claims should be dismissed: (1) Plaintiff is an indirect purchaser who cannot sue for damages under the Massachusetts Antitrust Act and thus cannot attempt an "end-run" around that Act by seeking damages under Massachusetts's Consumer Protection Act; (2) Plaintiff is an indirect purchaser who engages in trade or commerce and thus cannot maintain a claim under Sections 9 or 11 of the Consumer Protection Act; and (3) BCBS Massachusetts does not and cannot allege conduct that occurred predominantly within Massachusetts as required under the Consumer Protection Act, Mass. Gen. Laws ch. 93a, §11, para. 8.[3] As discussed more fully below, Defendants' arguments do not support dismissal under Rule 12(b)(6).

### 1. "End-Run" Argument

In light of a February 8, 2002 decision by Massachusetts's highest court, this Court rejects Defendants' "end-run" argument. In *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303 (Mass. 2002), the court rejected the identical argument Defendants assert here and held that indirect purchasers "can assert claims for price-fixing or other anticompetitive

---

[2]Section 2 provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

[3]Mass. Gen. Laws ch. 93a, §11, para. 8 provides that "[n]o action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."

4

conduct under G.L. c. 93A § 9, where they have no standing to bring such claims under Massachusetts Antitrust Act (Antitrust Act), G.L. c. 93, §§ 1-14A." *Id.* at 306. The *Ciardi* court observed that "General Laws c. 93A [Massachusetts's Consumer Protection Act] regulates trade and commerce 'directly or *indirectly* affecting the people of this commonwealth.'" *Id.* at 308 (quoting G.L. c. 93A, § 1 and adding emphasis). It further observed that "[t]he broad language of G.L. c. 93A, § 9(1), provides that a cause of action may be brought by '[a]ny person, [other than a businessperson entitled to bring an action under § 11], who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two.'" *Id.* Rejecting the defendants' argument that a negative inference of legislative intent should be drawn by its failure to enact proposed *Illinois Brick* repealer statutes, the court observed that, "[w]here, as here, the language of a statute is clear and unambiguous, it is conclusive as to the intent of the Legislature." *Id.* at 310. *See also id.* at 310 n.15.

The *Ciardi* court further observed that the Massachusetts Antitrust Act provides that it "shall have no effect" upon the provisions of the Massachusetts Consumer Protection Act except as expressly provided in the Massachusetts Consumer Protection Act. *See id.* at 311 (quoting the Massachusetts Antitrust Act, Mass. G.L. c. 93, § 14A). The court then noted that Section 11 of the Massachusetts Consumer Protection Act "includes a specific provision that in any action brought under that section, the court shall be guided in its interpretation of unfair methods of competition by the provisions of the Antitrust Act" whereas Section 9 "contains no such explicit provision." *Id.* at 311. Accordingly, the court reasoned, it could not conclude that Section 9 of the Massachusetts Consumer Protection

5

Act "is to be guided by the provisions of the Antitrust Act, and by association, *Illinois Brick*

. . . , so as to preclude indirect purchasers . . . from bringing a cause of action" under

Section 9 of the MCPA. *Id.* at 312.

### 2. Whether BCBS Massachusetts is a "Person Engaged in Trade or Commerce" and Thus Unable to Assert Claims Under Section 9 of the Massachusetts Consumer Protection Act

Defendants next contend that Plaintiff BCBS Massachusetts cannot assert a claim

under Section 9 of the Massachusetts Consumer Protection Act because Plaintiff is "a

person engaged in trade or commerce" and is therefore subject to Section 11's express

command that suits brought by such persons are to be guided by the provisions of the

Massachusetts Antitrust Act, and by association, *Illinois Brick*.  BCBS of Massachusetts

persuasively argues that a non-profit, tax-exempt corporation like it, that is merely engaged

in the customary business necessary to meet its charitable purposes at the time of the

relevant transactions, should not be considered as engaging in "trade or commerce" for

purposes of Section 11 and thus it has standing to assert a claim under Section 9 of

Massachusetts's Consumer Protection Act. The case law supports Plaintiff's argument.

*See Trs. of Boston Univ. v. ASM Communications, Inc.*, 33 F. Supp. 2d 66, 77 (D. Mass.

1998) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 952 F. Supp. 884, 890

n.4 (D. Mass. 1997) and observing that "[a] nonprofit or charitable corporation . . . is not

engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely

engaged in the customary business necessary to meet its charitable purpose.'").  "Only if

the nonprofit 'goes beyond its ordinary business' and aims instead to generate a profit

does it fall within § 11." *ASM Communications*, 33 F. Supp. 2d at 77.  *See also All*

*Seasons Servs., Inc. v. Comm'r of Health & Hosps.*, 620 N.E.2d 778, 780 (Mass. 1993) (observing that "the terms 'person who engages in any trade or commerce' were intended by the Legislature to refer specifically to individuals acting in a business context" and factors considered when making that determination "include the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons" and concluding that the defendant nonprofit hospital's solicitation of bids for a contract to provide food services was incidental to its core mission of providing medical services and thus the hospital was not engaged in a business context as defined by the MCPA) (internal quotes and citations omitted). The decision Defendants rely upon does not support a different result. *See Linkage Corp. v. Trs. of Boston Univ.*, 679 N.E.2d 191, 209 (Mass. 1997) (observing that "[i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission.").

The Massachusetts courts have long recognized BCBS Massachusetts' mission under Mass. Gen. Laws ch. 176A and B:

> Defendants Blue Shield of Massachusetts, Inc. and Blue Cross of Massachusetts, Inc. are nonprofit, tax exempt medical service and hospital service corporations, organized to provide for the preservation of the public health by furnishing medical services at low cost to members of the public who become subscribers . . .

*Kartell v. Blue Shield of Mass., Inc.*, 592 F.2d 1191, 1191 (1st Cir. 1979) (internal quotes and citations omitted). BCBS Massachusetts has pled facts showing that it is a nonprofit corporation created by statute and regulated by the Commonwealth of Massachusetts, and that the activity in question – its customary payment or reimbursement for its members' prescription drug benefits - falls within its charitable mission as set forth by statute and

case law.  (Compl. ¶¶ 6-8, 14, 40-55.)  Accordingly, this Court rejects Defendants' argument that BCBS Massachusetts' claims under the Massachusetts Consumer Protection Act must be dismissed.

### 3. Section 11's Requirement that Conduct Occur "Primarily and Substantially" in Massachusetts

Defendants' third argument -- that Plaintiff cannot show that conduct occurred primarily and substantially in Massachusetts -- is also rejected.  Assuming *arguendo* that § 11 applies here, the Massachusetts courts have observed that the burden of disproving the "primarily and substantially" condition of § 11 is an affirmative defense to be developed by the defendant.  *See Amcel Corp. v. Int'l Executive Sales, Inc.*, 170 F.3d 32 (1st Cir. 1999); *Garshman Co.  v. Gen. Elec. Co.*, 176 F.3d 1, 6 (1st Cir. 1999) (same).  Section 11 of Massachusetts's Consumer Protection Act specifically places the burden of proving this affirmative defense on the "person claiming that the transactions and actions did not occur primarily or substantially" within Massachusetts.  *See* Mass. Gen. Laws ch. 93A, § 11 (2001).  Accordingly, it would be premature to consider Defendants' argument at this stage of the proceedings.

### B. Excellus's Claims for Relief Under New York's Donnelly Act

Plaintiff Excellus seeks damages for Defendants' violation of New York's Donnelly Act, N.Y. Gen. Bus. Law §§ 340, *et seq.*  Defendants raise two dismissal arguments: (1) the Donnelly Act's December 1998 *Illinois Brick* repealer amendment cannot be applied retroactively to Plaintiff's antitrust claims which Defendants claim accrued in September 1997; and (2) the Donnelly Act does not include any provision comparable to or analogous with Section 2 of the Sherman Act with its prohibitions against monopolization and

8

attempted monopolization and thus Plaintiff's claims should be dismissed because they are based on unilateral conduct.  This Court first addresses Defendants' arguments that the 1998 amendment to the Donnelly Act cannot be applied retroactively.

### 1. Donnelly Act 1998 Amendment - Retroactivity Argument

Defendants argue that, although New York passed an *Illinois Brick* repealer statute in 1998 amending § 340 of the Donnelly Act, Plaintiff Excellus's claims for antitrust damages flowing from pre- and post-amendment purchases must be dismissed because these claims all *accrued before the amendment's effective date.*[4] Defendants further argue that the amendment constitutes a substantive change in the law (by taking away the prior no-standing defense, by creating a new right to sue on the part of indirect purchasers, and by affecting the pre-existing rights of direct purchasers by forcing them to share damages with indirect purchasers) and thus is not a remedial statute that can be retroactively applied without express statutory authority.

Plaintiff responds that there is no retroactivity issue because (1) the continuing antitrust violation it alleges *accrued after the amendment's effective date,*[5] and (2) the plain

---

[4]Defendants argue that Plaintiffs' cause of action accrued no later than September 1997 when Defendants executed the HMRI/Andrx Agreement because this was the last overt act causing Plaintiffs' alleged antitrust injuries; not the last effect that Plaintiffs might feel as a result of the alleged anticompetitive conduct.

[5]Plaintiff argues that it has alleged a continuing antitrust violation that accrued after the amendment's December 23, 1998 effective date; i.e., that Defendants continued to act in concert to prevent any generic competition to Cardizem CD until June 23, 1999 when Defendant Andrx belatedly introduced its generic called Cartia XT.  (Compl. ¶¶ 62, 92-94, 98, 100, 104.)  Plaintiff emphasizes that it has alleged that Aventis made payments to Andrx as a continuation of their illegal scheme to forestall generic competition and preserve the Cardizem CD monopoly as late as June 1999 when Aventis paid Andrx $50,700,000 and the parties finally terminated the September 1997 HMRI/Andrx Agreement under

9

language of the 1998 Amendment clarifies that the critical element for indirect purchaser standing is the date on which the action was brought, and thus indirect purchasers are allowed to recover antitrust damages for pre-amendment purchases as long as the action seeking those damages is *filed after its effective date*. Plaintiff further argues that, even if the Court disagrees with the above arguments, the 1998 amendment may be retroactively applied to its pre-amendment purchases because it is remedial in nature.

As both parties acknowledge, this Court must predict how New York's highest court would decide this retroactivity issue. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450 (6th Cir. 2001). The answer falls somewhere between the parties' all-or-nothing positions. The Court first discusses the flaws in the parties' arguments, then examines whether the 1998 amendment is retroactive in operation, and finally considers whether the amendatory Act fits New York's definition of a remedial statute thus allowing retroactive application.

---

pressure from both the Federal Trade Commission and the national press. (Compl. ¶ 98.)

An argument strikingly similar to Plaintiff's continuing violation argument here was recently rejected by the United States District Court for the Southern District of New York. In *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002), the court granted the defendant's motion to dismiss, concluding that the plaintiffs' federal antitrust claims were time-barred. The court rejected the plaintiffs' argument that an exception to the four-year statute of limitations for continuing violations applied under the facts alleged in that case. It observed that "to establish a continuing violation, a plaintiff must prove a continuing series of overt acts, and, in these circumstances, the statute of limitations runs from the last such overt act." *Id.* at 378-79 (citing *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999)). It further observed that "to count as such an overt act, the act must be a new and independent act, not merely a reaffirmation of a previous act; and it must inflict new injury on the plaintiff." *Id.* at 379. The court reasoned that, although the plaintiffs had alleged payments were made after the execution of an alleged agreement to keep a competitor from entering the market, "such payments are mere consequences of the original Agreement and do not restart the statute of limitations." *Id.*

10

### a. The Parties' Arguments

In an attempt to bar recovery for both pre- and post-amendment purchases, Defendants erroneously assume that Plaintiff's cause of action accrued in September 1997 before the 1998 amendment's effective date. Defendants ignore the fact that the antitrust injury at issue here would occur and an antitrust cause of action would accrue when a plaintiff purchases supra-competitively priced drugs; antitrust injury would not necessarily occur on the same date that the HMRI/Andrx Agreement was entered into (September 1997).

Although a defendant may commit an antitrust violation at time T1 and the plaintiff suffers an injury at time T2, the plaintiff's cause of action accrues at time T2. *See* 2 Phillip E. Areeda, Roger D. Blair and Herbert Hovenkamp, *Antitrust Law,* ¶ 320d at 231 (2d ed. 2000). As these commentators observe, "'a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.'" *Id.* ¶ 320b at 207 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 n.3 (1971)). "Customers of the monopolist are not injured until after the monopolist causes them injury through higher prices, which may occur later than the exclusionary practices creating the monopoly. . . . Once customers have reason to know of the violation and their damages are sufficiently ascertainable to justify an antitrust action, the statute begins to run against them." *Id.* ¶ 320c4 at 221. Defendants' accrual arguments largely ignore these well-established principles.

Plaintiff's accrual argument is also flawed. In an attempt to recover antitrust damages for both pre- and post-amendment purchases, Plaintiff erroneously assumes that the 1998

11

amendment allows indirect purchasers to sue for pre-amendment damages as long as the cause of action seeking them accrues after the amendment's December 23, 1998, effective date. Plaintiff's argument – that it can seek damages for pre-amendment purchases because it alleges a continuing scheme in violation of the Donnelly Act that accrued after the amendment's effective date – ignores the fact that the 1998 amendment is not concerned with when a cause of action accrues under the Act.

Both parties fail to critically analyze the issue New York's 1998 *Illinois Brick* repealer amendment addresses: whether the purchaser's status (direct or indirect) at the time of purchase (time that antitrust injury is suffered) should determine the right to recovery. The parties do not dispute the general principle that the law applied is that in effect at the time of the relevant conduct. They do dispute, however, what relevant conduct the *Illinois Brick* repealer amendment addresses. Rather than focusing on the time of purchase (time antitrust injury is suffered) and the purchaser's status at that time (direct or indirect), they improperly focus on whether Plaintiff's cause of action accrued before or after the 1998 amendment's effective date. New York's 1998 *Illinois Brick* repealer amendment, however, does not address accrual. Accordingly, the point in time when this occurred is not particularly relevant to the question whether the 1998 amendment allows indirect purchasers to recover damages for both pre- and post-amendment purchases.

Plaintiff's additional argument – that the 1998 amendment should be interpreted to allow indirect purchasers to recover for pre-amendment purchases as long as the action seeking those damages is filed after the amendment's December 23, 1998 effective date – is also flawed. Plaintiff argues that the plain language of the 1998 amendment reveals not only its purpose; i.e., to assure an immediate remedy for indirect purchasers, but also

12

the intent that it be applied to all who commence an action after its effective date. This Court finds the latter part of this argument unconvincing. The plain language of the 1998 amendment supports the conclusion that the Legislature's purpose was to immediately remove any bar preventing indirect purchasers from recovering for injuries suffered as a result of Donnelly Act violations. It is not evident, however, that the Legislature intended that the amendment should alter pre-existing legal rights, which would occur if this Court did as Plaintiff urges and applied the amendment to all actions filed after its effective date regardless of when purchases were made (and concomitantly when antitrust injury was suffered).

Plaintiff argues that, when §§ 340(5) and (6) are read together, along with the Legislature's directive that § 340(6) take effect immediately, it is evident that the Legislature intended that any bar to indirect purchaser recovery be removed in any action commenced after its effective date. Moreover, Plaintiff contends, there is no retroactivity issue presented here because language in the amendment clarifies that it is directed toward all who have suffered damages; not just those who will suffer damages after the statute's enactment. If the Legislature had intended that the law apply only to those with future damages, Plaintiff argues, it would have used language that "any person who *sustains* or *hereinafter sustains* damages by reason of violation of this section" rather than the language used; i.e., "any person who has *sustained* damages by reason of violation of this section." *See* N.Y. Gen. Law § 340(6). It did not do so. Rather, Plaintiff argues, the Legislature intended that indirect purchasers have standing to sue for both pre- and post-amendment damages so long as that action was commenced after the amendment's December 23, 1998 effective date.

13

Examination of the 1998 amendment and New York law fails to support Plaintiff's statutory interpretation. The plain language of the 1998 amendment reveals that the New York Legislature was concerned with *who* (indirect and/or direct purchasers) should have standing to sue for damages under that State's antitrust statute; not *when* those lawsuits were filed. Moreover, despite Plaintiff's claims otherwise, its argument – that indirect purchasers can recover pre-amendment purchases as long as their lawsuit is filed after the amendment's effective date – necessarily requires retroactive application because it alters pre-existing legal rights when applied to pre-amendment purchases. *See In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1511376 at * 3 (D. D.C. Oct. 6, 2000) (considering the same arguments Plaintiff presents here and similarly concluding that the statutory interpretation of § 340(6) advanced in that case and here "necessarily requires the Court to apply the Amendment retroactively."). The amendatory Act does not expressly provide for retroactive application. Accordingly, New York law requires that it be applied prospectively only. *See* N.Y. Stat. Law § 52 (McKinney 1971).

The strong presumption in the law against retroactive legislation flows from the principle "that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place. . . ." *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946 (1997). New York law defines a retroactive statute "as one which takes away or impairs vested rights; it is a law which looks backward affecting acts occurring or rights accruing before it came into force." N.Y. Stat. § 51(a) (McKinney 1971). Thus, this Court "must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when it acted, would increase a party's liability for

14

past conduct, or would impose new duties with respect to transactions already completed." *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). *See also Miller v. Florida*, 482 U.S. 423, 430 (1987) (observing that "[a] law is retrospective if it changes the legal consequences of acts completed before its effective date") (internal quotes and citation omitted). The end result of the Court's inquiry is its determination that a statute does or does not alter pre-existing legal rights. The inquiry begins, however, by examining "the nature and extent of change in the law and the degree of connection between the operation of the new rule and a relevant past one." *Landgraf*, 511 U.S. at 270. As taught by the Supreme Court, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, . . . or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before the enactment." *Id.* at 269-70.

### b. Whether the 1998 Amendment is Retroactive in Operation

The Court begins its analysis of the retroactivity question by examining the plain language of the 1998 amendment to ascertain the New York Legislature's purpose and intent. "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" and, because statutory text is "the clearest indicator of legislative intent", "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 696 N.E.2d 978, 980 (N.Y. 1998) (internal quotes and citations omitted).

15

New York's Donnelly Act, N. Y. Gen. Bus. Law § 340, *et seq.*, was enacted in 1909 and is modeled after the Sherman Anti-trust Act of 1890. Accordingly, the Court of Appeals of New York has observed that it "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *X.L.O. Concrete Corp. v. Rivergate Corp.*, 634 N.E.2d 158, 161 (N.Y. 1994) (internal quotes and citations omitted).

Plaintiff's arguments require that the Court read Sections 5 and 6 of the Donnelly Act together. Section 5 of the Donnelly Act, enacted in 1975, allows private suits by "any person who shall sustain damages by reason of any violation of this section" and creates the right to sue for treble damages. *See* N.Y. Gen. Bus. Law § 340(5) (McKinney 1975). This section further provides for a four year statute of limitations and expressly states that "[t]his section shall not apply to any action commenced prior to the effective date of this act." *Id.*

Section 6 of the Donnelly Act, which took effect on December 23, 1998, is the amendment at issue here. Unlike Section 5, Section 6 does not expressly state whether it is to be prospectively or retroactively applied. The Act amending § 340 of the Donnelly Act provides that:

> § 1.  Section 340 of the general business law is amended by adding a new subdivision 6 to read as follows:
>
> 6. In any action pursuant to this section, the fact that the state, or any political subdivision or public authority of the state, or any person who has sustained damages by reason of violation of this section has not dealt directly with the defendant shall not bar or otherwise limit recovery; provided, however, that in any action in which claims are asserted against a defendant by both direct and

16

indirect purchasers, the court shall take all steps necessary to avoid duplicate liability, including but not limited to the transfer and consolidation of all related action.

§ 2.  This act shall take effect immediately.

McKinney's Session Laws, 1998 Regular Session, Ch. 653, A. 4775 (Dec. 23, 1998).

Contrary to Plaintiff's arguments here, the critical element for determining indirect purchaser standing is not the date on which a Donnelly Act suit is commenced. Rather, it is the date on which a purchase is made. It is on that date that the antitrust injury is suffered, and the status of the purchaser is determined (direct or indirect). The law in effect on the purchase date thus determines whether the purchaser has standing to recover for his antitrust injury. The December 1998 amendment at issue here announced a substantive change in the law by taking away the prior no-standing defense, by creating a new right to sue on the part of indirect purchasers, and by affecting the pre-existing rights of direct purchasers by forcing them to share damages with indirect purchasers. It must, therefore, be applied prospectively to all purchases (antitrust injuries) that occurred after its effective date. Accordingly, Plaintiff cannot recover for antitrust damages resulting from pre-amendment purchases but can recover for damages resulting from post-amendment purchases. *See In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1511376 (D. D.C. Oct. 6, 2000) (supporting a similar result). This result gives effect to the New York Legislature's purpose and intent in enacting § 340(6).

If the 1998 amendment is applied to Plaintiff's purchases (antitrust injuries) that were completed before its effective date, it would change pre-existing legal rights. This is true because the law in effect at the time those purchases were made (and thus in effect at the time those antitrust injuries were suffered) would have provided Defendants with a defense

17

that is not available after December 23, 1998. Likewise, an indirect purchaser who made purchases prior to that date would not have standing to sue for recovery under New York law as it existed at that time.

If, on the other hand, the 1998 amendment is applied to Plaintiff's purchases (antitrust injuries) completed after its effective date, there would be no alteration of pre-existing legal rights. The law in effect at the time those post-amendment purchases took place (and those antitrust injuries were suffered) no longer provides Defendants with a defense and instead grants Plaintiffs standing to sue for recovery under the Donnelly Act. *See* N.Y. Stat. § 51(a) (Comment) (observing that "[a] statute is not retroactive, however, when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events.").

Plaintiff's reliance on the Legislature's expressed intent that the statute "take effect immediately" is misplaced. This language does nothing to advance Plaintiff's argument that the amendment has no retroactive effect when applied to pre-amendment purchases. Moreover, standing alone, this statement fails to establish legislative intent that a statutory amendment is to be retroactively applied. As the New York Court of Appeals has observed, "the date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence." *Majewski,* 696 N.E.2d at 980 (citations omitted). "While the fact that a statute is to take effect immediately evinces a sense of urgency, the meaning of the phrase is equivocal in an analysis of retroactivity." *Id.* (internal quotes and citations omitted).

Contrary to Plaintiff's argument here, New York law provides that "an amendment will have prospective application only, and will have no retroactive effect unless the language

18

of the statute clearly indicates it shall receive a contrary interpretation." N.Y. Stat. Law §

52 (McKinney 1971).  *See also In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL

1475705, *15 (D.D.C. May 9, 2000) (citing statute and *Burns v. Volkswagen of Am., Inc.*,

460 N.Y.S.2d 410, 412 (N.Y. Sup. Ct. 1982)).  *See also* N.Y. Stat. Law § 52 (Comment)

(McKinney 1971) (observing that "a provision in an amendatory statute that 'this act shall

take effect immediately' has been held to exclude the idea that it should be retroactive.").

New York's 1998 *Illinois Brick* repealer amendment does not expressly provide that it is to

be retroactively applied.  Accordingly, New York law requires that this amendatory Act be

prospectively applied.  *See* N.Y. Stat. Law § 52.

### c. Whether the 1998 Amendment is a Remedial Statute

There is one exception to the general rule that amendments are to have prospective

application only.  Remedial statutes are given a retroactive application "but only to the

extent that they do not impair vested rights."  N.Y. Stat. Law § 54 (McKinney 1971).

Plaintiff has not convinced the Court that the 1998 amendment is purely remedial and thus

subject to retroactive application.  While it is true that the 1998 amendment did not make

unlawful conduct that was previously lawful, it does abolish a defense previously available

against claims by indirect purchasers and, by granting indirect purchasers standing to sue,

in effect creates a new cause of action.  *See* N.Y. Stat. § 54 (McKinney 1971) (defining

remedial statutes).  Likewise, the Court is not convinced by Plaintiff's argument that §

340(6) reaffirmed original legislative intent and merely clarified that the Donnelly Act was

always meant to allow indirect purchasers standing to sue.  There is no express statutory

language evincing this intent, and the legislative history does not provide clear support for

19

this argument.[6]  *See Brothers,* 95 N.Y.2d at 299 (concluding that clear statements in the legislative history could support such a conclusion).  Rather, it reveals that the impetus for enactment was the New York Legislature's conclusion that recent case law had made it necessary to amend the Donnelly Act to expressly provide for a different interpretation than federal precedent if it wanted to grant indirect purchasers the right to recover for antitrust injuries.

### 2. Donnelly Act - Unilateral Conduct

The Court now addresses Defendants' argument that the Donnelly Act does not include any provision comparable or analogous to Section 2 of the Sherman Act with its prohibitions against monopolization and attempted monopolization, and thus Plaintiff's Donnelly Act claims should be dismissed because they are based on unilateral conduct.

---

[6]A memorandum from the amendment's senate sponsor reveals that the Legislature's intent was to "allow indirect purchasers who are third parties in transactions impacted by illegal monopolies to have legal recourse against these activities."  (Andrx State A.G. Reply, Ex. D, New York State Senate Introducer's Memorandum in Support at 1.)  It further reveals that, in light of "current state and federal case law governing antitrust litigation", New York indirect purchasers were prevented from "commencing an action against manufacturers for antitrust violations such as price-fixing." *Id.* "Accordingly, for New York indirect purchasers to commence or join an action for antitrust violations a specific statute making standing express under New York law must be enacted." *Id.* at 2.  A letter from that same senate sponsor further acknowledges that, although arguments have been made that the legislative history of the Donnelly Act justifies a different interpretation, two courts have recently denied standing to indirect purchasers under that Act.  (Andrx State A.G. Reply, Ex. E, James Lack letter to James McGuire, Counsel to the Governor, at 2 citing Robert F. Roach, Asst. Attorney General, Section Chief, Antitrust Bureau, N.Y. Atty. General's Office, *Revitalizing Indirect Purchaser Claims: Antitrust Enforcement Under New York Law,* 12 Pace L. Rev. 9-14 (1993) and *Levine v. Abbott Labs., et al.,* Index No. 117320/95). "Accordingly, for New York indirect purchasers to commence or join an action for antitrust violations a specific statute making standing express under New York law must be enacted." *Id.* at 2.

This Court has examined Plaintiffs' First Amended Complaint and concludes that Excellus has alleged more than unilateral conduct by Defendant Aventis.  It is alleged that Defendant Aventis' engaged in a series of agreements and attempted agreements that involved actions undertaken by it and others. (Compl. ¶¶ 62, 100) (referring to Defendants' collusive and concerted action).  Defendants' reliance on *State v. Mobil Oil Corp.*, 344 N.E.2d 357, 359, 361 n.4 (N.Y. 1976) is misplaced.  There, the court held only that the Donnelly Act did not apply to unilateral price discrimination because such single-firm conduct is not covered by the Sherman Act, on which the Donnelly Act is modeled.  *See id.* at 358-360.  Unlike the plaintiffs in *Mobil Oil*, Plaintiffs here do not allege that Aventis acted alone.

### C. Duplicate Recovery Arguments

Blue Cross Plaintiffs assert claims on their own behalf and on behalf of their self-funded customers for whom they have authority to pursue and recover plan-related losses; i.e., employer-sponsored health plans that Plaintiffs administer.  (Compl. ¶¶ 12-15.) Defendants argue that, to the extent Blue Cross Plaintiffs are asserting claims on behalf of individuals or entities already covered in the State Law Plaintiffs' action or the State Attorneys General's action, Blue Cross Plaintiffs' claims should be dismissed.  Defendants have entered into a Class Action Settlement Agreement with the State Law and State Attorneys General Plaintiffs, and the Blue Cross Plaintiffs have filed notices of exclusion from the class settlement on behalf of themselves and those class members on whose behalf they claim they have authority to execute a Notice of Exclusion. Defendants have

21

not presented the Court with authority supporting a dismissal of the Blue Cross Plaintiffs' claims as duplicate under these circumstances.

### D. Declaratory Relief

Defendants argue that the Blue Cross Plaintiffs' claim for declaratory relief in the form of a judgment declaring that the HMRI/Andrx Agreement is a *per se* violation of both the Sherman Act and the Michigan Antitrust Reform Act is moot in light of this Court's *per se* ruling. *See In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 682, 706-707 (E.D. Mich. 2000). This argument is without merit. Defendants have appealed this Court's ruling. The matter has been fully briefed and argued before the Sixth Circuit, but that Court has not yet ruled and thus Plaintiffs' claims are not moot. An actual controversy still exists between these parties on this issue. *See Fleet Aerospace Corp. v. Holderman*, 848 F.2d 720, 723 (6th Cir. 1988) (observing that "[m]ootness is determined by examining whether an actual controversy between the parties exists in light of intervening circumstances.").

### E. Unjust Enrichment Claims

The Blue Cross Plaintiffs assert claims for unjust enrichment under the laws of Massachusetts, Michigan, Minnesota, and New York. (Compl. ¶¶ 268-277.) Defendants argue that: (1) unjust enrichment claims are recoverable only when an adequate remedy at law is unavailable; (2) under Massachusetts law, Plaintiffs must plead the absence of an adequate remedy at law to survive a Rule 12(b)(6) motion to dismiss; (3) under Michigan law, Plaintiffs must plead that payment was made by mistake, coercion, or request by the defendant; (4) under New York law, Plaintiffs must allege that the plaintiffs and defendants were in privity; and (5) Blue Cross Plaintiffs cannot assert unjust

22

enrichment claims under Massachusetts or New York law in an end-run attempt to avoid state antitrust law barring indirect purchasers from recovery.

### 1. Whether Plaintiffs Must Plead Facts Showing the Absence of an Adequate Remedy at Law

#### a. General Arguments

Defendants argue generally that Plaintiffs' equitable claims of unjust enrichment must be dismissed at the pleading stage because Plaintiffs have not and cannot plead facts proving that they have no adequate remedy at law. This argument lacks merit.

This Court has already rejected the argument that Plaintiffs' claims must be dismissed because they fail to allege the absence of an adequate remedy at law. *See In re Cardizem CD Antitrust Litig.* 105 F. Supp.2d at 671, n.25. *See also* Fed. R. Civ. P. 8(e)(2).[7] The additional arguments Defendants raise here do not persuade the Court to alter its prior ruling. *See* 1 *Moore's Federal Practice* § 2.03[2] (Matthew Bender 3d ed.) (observing that "[i]t is not generally a ground for dismissal of a complaint asserting equitable claims that the plaintiff has an adequate remedy at law.").

The decisions Defendants rely upon do not support their argument that Plaintiffs must plead facts showing the absence of an adequate legal remedy to survive a Rule 12(b)(6)

---

[7]Fed. R. Civ. P. 8(e)(2) provides that:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

motion on their unjust enrichment claims.[8]  The mere fact that this may be an essential

element of Plaintiffs' claim thus requiring them to prove the lack of an adequate legal

remedy to succeed on the merits does not mean that Plaintiffs are precluded from pleading

---

[8]*See Laborers & Operating Eng'rs v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 951 (D. Ariz. 1999) (applying Arizona law and dismissing unjust enrichment claim because the plaintiff fund had not and could not plead or prove an essential element of its unjust enrichment claim; i.e., that it had conferred a benefit on the defendant tobacco companies when it made payments to medical service providers on behalf of fund beneficiaries); *Khoury Factory Outlets, Inc. v. Snyder*, No. 11,568, 1996 WL 74725, at *11 (Del. Ch. Ct. Jan. 8, 1996) (concluding after a trial on the merits that the chancery court did not have subject matter jurisdiction over the plaintiff's claims because, in essence, the parties' dispute was over the terms of a lease and the plaintiff was seeking money damages and replevin of personal property; not the  equitable remedies available under an unjust enrichment claim); *Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W.2d 23 (Iowa Ct. App. 2000) (affirming grant of summary judgment to defendant on plaintiff's unjust enrichment claims because plaintiff had not met its burden of establishing the essential elements of that claim); *Caldwell Wholesale Co. v. Cent. Oil & Supply Co.*, 761 So.2d 684, 688-89 (La. Ct. App. 2000) (reversing decision of trial court granting plaintiff relief on his claim of unjust enrichment after bench trial because the record did not support the conclusion that plaintiff had established the essential elements of an unjust enrichment claim); *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*, 774 F. Supp. 683 (D. Mass. 1991) (applying Massachusetts law and granting defendant's motion for summary judgment on plaintiff's unjust enrichment claim seeking compensation for services covered under the parties' distributorship agreement because, in light of that express contract, the plaintiff was unable to prove it lacked an adequate remedy at law for its claims); *Eyde v. Empire of Am. Fed. Sav. Bank*, 701 F. Supp. 126, 130 (E.D. Mich. 1988) (applying Michigan law on a motion for summary judgment and dismissing the plaintiff's request for equitable relief in the form of an accounting because discovery provided an adequate legal remedy for determining plaintiff's money damages); *Bombardier Capital, Inc. v. Richfield Housing Center, Inc.*, Nos. 91-CV-750, 91-CV-502, 1994 WL 118294, *8 (N.D. N.Y. March 21, 1994) (granting summary judgment in favor of the plaintiff and dismissing the plaintiff's unjust enrichment claim, observing that "[w]here there is an adequate remedy at law, such as that allowed in this case under plaintiff's breach of contract claim, plaintiffs cannot be permitted also to collect on a theory of unjust enrichment. . . . Plaintiff's unjust enrichment claim is therefore mooted by the granting of summary judgment as to liability on the contract claim"); *Struksnes v. Kevin's Plumbing & Heating, Inc.*, 572 N.W.2d 815, 819 (N.D. 1997) (rejecting unjust enrichment claim on the merits at summary judgment because the undisputed facts did not establish the essential elements of that claim); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 597 (Tenn. 1988) (rejecting unjust enrichment claim on the merits at summary judgment because the plaintiff was unable to establish the essential elements of that claim).

24

in the alternative both legal and equitable claims for relief. *See* 1 *Moore's Federal Practice* § 2.03[3]. This Court disagrees with *Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*, No C-97-01519 DLJ, 1998 WL 476265, at *18 (N.D. Cal. Apr. 30, 1998) to the extent it holds otherwise.

Further, Plaintiffs are not alleging an alternative unjust enrichment claim based on a breach of an implied-in-law contract when the subject matter of that claim is covered by an express contract. Accordingly, decisions holding that an equitable unjust enrichment claim cannot be pled under those circumstances are easily distinguishable and do nothing to advance Defendants' arguments.[9]

This Court now addresses Defendants' more specific arguments that the Blue Cross Plaintiffs cannot state a claim for relief under Massachusetts, Michigan, and New York law.

---

[9]*See Klusty v. Taco Bell Corp.*, 909 F. Supp. 516 (S.D. Ohio 1995) (observing that "Ohio does not recognize unjust enrichment as an alternative theory of recovery when an express contract covers the same subject"); *Davis & Tatera, Inc. v.Gray-Syracuse, Inc.*, 796 F. Supp. 1078 (S.D. Ohio 1992) (observing that Ohio law does not recognize extra-contractual remedies where an express contract governs the parties' relationship). *Accord Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326-27 (S.D. Fla. 2000) (observing that, under Florida law, "quantum meruit damages cannot be awarded when an enforceable contract exists" and granting defendant's Rule 12(b)(6) motion on this claim because the plaintiff failed to "allege that an adequate remedy at law does not exist, and nothing in the Amended Complaint or arguments of the parties indicate[d] that such a situation exist[ed]."); *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. Dist. Ct. App. 1987) (affirming a final judgment in favor of the defendant and observing that, under Florida law "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy–here, an action on the presumably valid Final Contract."); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, ___, 2002 WL 246575, at *22 (S.D. Fla. Feb. 20, 2002) (dismissing the plaintiffs' unjust enrichment claims because, under Florida law, "an unjust enrichment claim can only be pled in the alternative if one or more of the parties contest the existence of an express contract governing the subject of the dispute", and neither party had done so).

### b. Specific Arguments (Massachusetts, Michigan, and New York)

The Massachusetts decision Defendants rely upon does not support the argument that Plaintiffs must plead facts showing the absence of an adequate legal remedy to survive a Rule 12(b)(6) motion on an unjust enrichment claim. In *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*, 774 F. Supp. 683 (D. Mass. 1991), the district court applied Massachusetts law and granted the defendant's motion for summary judgment on the plaintiff's unjust enrichment claim seeking compensation for services covered under the parties' distributorship agreement. It did not hold, as Defendants contend, that a plaintiff must plead the absence of an adequate remedy at law to survive a Rule 12(b)(6) motion. Rather, an unjust enrichment claim is stated under Massachusetts law, similar to Michigan and New York law, when the plaintiff pleads that the receipt of a benefit by the defendant from the plaintiff under circumstances in which it is inequitable for the defendant to retain that benefit. *See Brandt v. Wand Partners*, 242 F.3d 6, 16 (1st Cir. 2001) (citing *White v. White*, 346 Mass. 76 (1963); *Nat'l Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co.*, 318 Mass. 142 (1945); and *Keller v. O'Brien*, 425 Mass. 774 (1997)).

Defendants' argument that Plaintiffs' unjust enrichment claims must be dismissed under Michigan law is likewise without merit. This Court has observed that a plaintiff need not plead direct payments to the defendant; rather "the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp.2d at 671. Here, the Blue Cross Plaintiffs plead that their detriment and Defendants' benefit are related and flow from Defendants' illegal conduct. Moreover, contrary to Defendants' assertions otherwise, Michigan law

26

does not require the plaintiff to plead that the payment was by mistake, coercion, or request. Rather, those are merely examples of unjust enrichment claims. *See Estate of McCallum*, 395 N.W.2d 258, 261 (Mich. App. 1986) (observing that the essential elements of an unjust enrichment claim under Michigan law are: "(1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is inequitable that defendant retain.").

Defendants' argument that New York law requires privity also fails. The required elements for an unjust enrichment claim under New York law are: (1) defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) defendant's retention of the benefit would be unjust. *See Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 669 (S.D.N.Y. 2000). Privity of contract is not a required element. *See id.* The court in *Metropolitan Electric Manufacturing Co. v. Herbert Construction Co.*, 583 N.Y.S.2d 497, 498 (N.Y. App. Div. 1992), did not hold otherwise. Rather, the *Metropolitan Electric* Court dismissed the plaintiff's unjust enrichment claim based on a quasi-contract theory against defendants who were not in privity with the subcontractor who ordered and refused to pay for goods supplied by the plaintiff. The Court observed that absent privity between these defendants and the subcontractor or evidence that these defendants "by their actions, assumed an obligation to pay for the goods" ordered by the subcontractor, the "plaintiff's sole remedy" was against the subcontractor. *Id.* at 498.

### 2. Whether the Blue Cross Plaintiffs' Unjust Enrichment Claims Constitute An Impermissible "End-Run" Around the Indirect Purchaser Bar Applied in Massachusetts and New York Antitrust Statutes

Defendants also argue that Blue Cross Plaintiffs cannot assert unjust enrichment claims under Massachusetts and New York law in an end-run attempt to avoid state

27

antitrust law barring indirect purchasers from recovery.[10] The gist of Defendants' argument is that this Court should not allow state antitrust laws (which are harmonized in many states with federal antitrust law) to be circumvented by Plaintiffs' common-law unjust enrichment claims which seek to remedy the same anti-competitive conduct that would give rise to a state antitrust claim. Plaintiffs should not, they argue, be allowed to cloak their antitrust claims in unjust enrichment clothing in an end-run around laws that bar recovery for indirect purchasers.

This Court is not convinced by Defendants' argument that federal and state antitrust laws lay waste to common-law claims of unjust enrichment. The mere fact that some states require harmonization of similar state and federal antitrust statutes is not enough to convince this Court that Plaintiffs' unjust enrichment claims cannot survive Defendants' Rule 12(b)(6) motion to dismiss. With the exception of the district court decision in *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380-81 (S.D. Fla. 2001), which this Court believes decided this issue incorrectly, the cases Defendants rely upon are distinguishable and do not support their broad argument that the *Illinois Brick* standing rule should be applied to equitable claims of unjust enrichment merely because they arise from the same nucleus of facts that give rise to Plaintiffs' antitrust and unfair competition claims.[11]

---

[10]As discussed above, indirect purchasers do not have standing to sue for antitrust damages under the Massachusetts Antitrust Act, and prior to December 23, 1998, New York's Donnelly Act similarly precluded such recovery for indirect purchasers.

[11]*See Free v. Abbott Labs.*, Inc., 176 F.3d 298, 301 (5th Cir. 1999) (predicting that Louisiana's highest court would follow *Illinois Brick* and deny antitrust standing to indirect purchasers under Louisiana's antitrust laws because the *Illinois Brick* rule "places the incentive to sue on the party best suited to recover"); *Boos v. Abbott Labs., Inc.*, 925 F.

Supp. 49, 54 (D. Mass. 1996) (holding, in a case that did not present common-law unjust enrichment claims, that even if a common-law antitrust claim existed prior to enactment of Massachusetts's antitrust act, such claims were now preempted by that act; and certifying to Supreme Judicial Court of Massachusetts the question whether indirect purchasers had standing to sue under that state's consumer protection act although barred under the state's antitrust act); *Ciardi v. F. Hoffman La Roche, Ltd.*, 436 Mass. 53, 762 N.E.2d 303 (Mass. S. Ct. 2002) (answering certified question and holding that indirect purchasers can assert claims for price-fixing or other anticompetitive conduct under Massachusetts's consumer protection act, G.L.c. 93A, even though they have no standing to bring such claims under the Massachusetts Antitrust Act, G.L.c. 93, § 1-14A); *Stifflear v. Bristol-Myers Squibb Co.*, 931 P.2d 471 (Colo. App. 1996) (holding that Colorado's Antitrust Act does not allow indirect purchasers standing to sue); *Vacco v. Microsoft Corp.*, 793 A.2d 1048 (Conn. 2002) (holding that Connecticut's antitrust and unfair trade practices acts do not allow indirect purchaser standing); *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990) (refusing to construe Illinois' consumer fraud act in a manner that would allow a private cause of action for discriminatory pricing when the legislature has refused to allow similar actions under the state's antitrust act); *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. 1996) (same); *Comes v. Microsoft Corp.*, No. 82311, 2000 WL 33176061, at *6 (Iowa Dist. Ct. July 11, 2000) (holding that the *Illinois Brick* standing rule applies to Iowa's competition law because the state and federal statutes have similar language and the Iowa statute requires harmonization of state and federal antitrust law), *rev'd*, 646 N.W.2d 40 (Iowa 2002) (holding that indirect purchasers do have standing to sue under Iowa's competition law even though federal antitrust law is to the contrary and further holding that Iowa's statute requiring harmonization of state and federal antitrust law was intended to supplement rather than displace state antitrust remedies); *Arnold v. Microsoft Corp.*, No. 00-CI-00123, 2001 WL 193765, at *3 (Ky. Cir. Ct. July 21, 2000) (holding that the *Illinois Brick* standing rule applies to Kentucky's antitrust act); *Ireland v. Microsoft Corp.*, No. 00CV-201515 (Mo. Cir. Ct. Jan. 24, 2001) (holding *Illinois Brick* standing rule applies to Missouri's antitrust and merchandising practices acts); *Keiffer v. Mylan Labs.*, No. BER-L-365-99-EM, 1999 WL 1567726 (N.J. Super. Ct. Sept. 9, 1999) (holding *Illinois Brick* standing rule applies to New Jersey's antitrust and consumer fraud acts); *Tip Top Farms, Inc. v. Dairylea Cooperative, Inc.*, 497 N.Y.S.2d 99, 105 (N.Y. App. Div. 1985) (holding, in a suit alleging federal rather state law antitrust claims, that an indirect purchaser plaintiff cannot obtain a remedy from a direct purchaser under state-law breach of contract or money had and received claims because "to allow the indirect purchaser to recover from the direct purchaser the amount of the illegal overcharges that had been passed on to it, pursuant to a cost-plus requirements contract that did not fall within an exception to the *Illinois Brick* rule, would severely impair the private enforcement of the Federal antitrust laws"); *Reliance Nat'l Ins. Co. v. Royal Indem. Co.*, No. 99 Civ. 10920 NRB, 2001 WL 984737, *15 (S.D.N.Y. Aug. 24, 2001) (holding, in insurance coverage declaratory judgment action, that the New York legislature enacted a comprehensive regulatory scheme regarding insurance contracts that "supplants ordinary common law remedies"); *Major v. Microsoft Corp.*, No. CJ-2000-1704, at 2, 8-9, 2002 WL 1585649 (Okla. Dist. Ct.

The Supreme Court has cautioned that federal statutes should not be construed to displace a court's traditional equitable jurisdiction absent "the 'clearest command' or an 'inescapable inference' to the contrary. . . ." *Miller v. French*, 530 U.S. 327, 336 (2001) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)). This cannon of construction is equally applicable under Massachusetts and New York law. *See Eyssi v. City of Lawrence*, 618 N.E.2d 1358, 1361, n.8 (Mass. 1993) (observing that Massachusetts courts follow "the rule of interpretation whereby statutes are not construed to abrogate common law rights in the absence of explicit statutory language"). *See also* N.Y. Stat. Law § 301(b) (providing that "[t]he common law is never abrogated by implication, but on the contrary it must be held no further changed than the clear import of the language used in a statute absolutely requires"). Defendants have not shown the required explicit statutory language abrogating Plaintiffs' equity-based unjust enrichment claims. Accordingly, this Court is not convinced

---

May 24, 2002) (reaffirming its previous holding "that the *Illinois Brick* direct purchaser rule was incorporated into Oklahoma law when Oklahoma enacted its Antitrust Reform Act" in 1998 and further holding that indirect purchasers cannot bring claims under the Oklahoma Consumer Protection Act that are predicated on the same factual allegations underlying a state antitrust claim because Iowa law requires harmonization of state and federal antitrust law), *aff'd* 60 P.3d 511 (Okla. Ct. App. 2002); *Siena v. Microsoft Corp.*, No. 2000-472-Appeal, (PC 00-1647), at 5 (R.I. S. Ct. May 9, 2002) (holding that, under Rhode Island's antitrust law, only direct purchasers or the Attorney General as *parens patriae*, has standing to litigate antitrust violations); *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 503, 507 (Tex. 1995) (holding that indirect purchasers cannot recover under the Texas Deceptive Trade Practice-Consumer Protection Act when claims are based upon allegations that would require a similar ruling under that state's antitrust laws which do not allow indirect purchasers standing to sue); and *Blewett v. Abbott Labs.*, 938 P.2d 842, 844 (Wash. Ct. App. 1997) (holding *Illinois Brick* standing rule applies to Washington's consumer protection act because the act is modeled on federal antitrust law and "the Legislature has instructed courts to be guided by federal law when construing" that act).

that the state antitrust laws at issue here exclude Plaintiffs' common-law claims seeking equitable relief for Defendants' unjust enrichment at Plaintiffs' expense.   There are additional reasons why the Court finds Defendants' arguments unpersuasive.

First, Defendants ignore the fact that Plaintiffs' state-law antitrust and unjust enrichment claims present "wholly separate causes of action." *In re Lorazepam & Chlorazepate Antitrust Litig.*, 202 F.R.D. 12, 20 (D. D.C. 2001) (rejecting the defendant's argument that a successful petition by the F.T.C. to disgorge profits under Section 13(b) of the Federal Trade Commission Act deprived direct purchasers of standing to sue for damages under the antitrust laws).   The former provides a remedy at law; the latter provides an equitable remedy that can be awarded only after Plaintiffs have convinced the Court that they lack an adequate legal remedy. *See* 1 *Moore's Federal Practice* § 2.03[3] (Matthew Bender 3d ed.) (observing that "[w]hile a complaint may seek both legal and equitable relief, a court may not grant equitable relief unless it first determines that the party seeking equitable relief has no adequate legal remedy.").

Second, and equally important, the concerns that led to adoption of the no-standing rule in *Illinois Brick* and its progeny are absent under Plaintiffs' equitable claims of unjust enrichment.[12]   The *Illinois Brick* Court's decision flows from its concerns that private antitrust enforcement would be hindered if courts were forced to sort out and apportion damages from overcharges that may have been passed on from direct to indirect purchasers.   The Court was also concerned that, if both direct and indirect purchasers had

---

[12]To the extent the *Terazosin* Court holds otherwise, this Court disagrees. *See Terazosin*, 160 F. Supp.2d at 1380.

antitrust standing and could sue for the same overcharges, the potential for duplicative recoveries for the same antitrust injury would exist. Those concerns are not present here.

Plaintiffs seek to disgorge Defendants of their ill-gotten gains rather than be compensated for actual overcharges that may have been passed along a chain of distribution from direct to indirect purchasers. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 352. Plaintiffs allege here that the Defendants' illegal conduct allowed HMRI, the branded manufacturer, to preserve its monopoly profits and to use those profits to fund over $89 million in payments to Andrx, the generic manufacturer, and thus induced Andrx to delay market entry of its and others' generic versions of Cardizem CD. Their claim is based upon the equitable principle that seeks to prevent the injustice of a person's retention of a benefit under circumstances that make it inequitable for him to do so. Accordingly, efficient antitrust enforcement is not threatened. Even if it were, there is no need to determine the amount of overcharges passed on from direct to indirect purchasers. Rather, all Plaintiffs seek the same remedy; disgorgement of the tens of millions of dollars that HMRI paid to Andrx in connection with the HMRI/Andrx Agreement. Theirs is an integrated claim arising from their common-law right to have Defendants disgorge the amounts in which they were unjustly enriched at Plaintiffs' expense. The duplicative recovery problem that concerned the Court in *Illinois Brick* is absent here. If Plaintiffs' succeed on their unjust enrichment claims, they will share equally in the disgorged funds.[13]

---

[13]Defendants' misapprehend the nature of Plaintiffs' unjust enrichment claims which seek disgorgement. As the Fifth Circuit Court of Appeals observed in *S.E.C. v. Huffman*, 996 F.2d 800 (5th Cir. 1993), "disgorgement is not precisely restitution. Disgorgement wrests ill-gotten gains from the hands of a wrong-doer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs. Disgorgement does not aim to compensate the victims of the wrongful acts, as restitution does. Thus, a

Moreover, their equitable claims will succeed only if Plaintiffs can prove there is no adequate remedy at law.

### F. BCBS Plaintiffs' Tortious Interference Claims

BCBS Plaintiffs assert claims of tortious interference with contractual relations (Compl., Count XIII, ¶¶ 278-287) and with prospective business advantage (Compl., Count XIV, ¶¶ 288-299) against Defendants under the laws of Massachusetts, Michigan, Minnesota and New York. Defendants move to dismiss these claims because: (1) as to Count XIII, Plaintiffs have not and cannot allege that Defendants caused a breach of Plaintiffs' contracts with prescription benefit managers ("PBMs") and/or pharmacists; and (2) as to Count XIV, Plaintiffs have not and cannot allege that Defendants caused the prescription benefit managers and/or pharmacists to disrupt or terminate any prospective business relationship with Plaintiffs. This Court agrees with Defendants and dismisses the BCBS Plaintiffs' tortious interference claims asserted in Counts XIII and XIV of their First Amended Complaint.

BCBS Plaintiffs do not dispute that they must allege a breach of contract as an element of their state law claims of tortious interference with contractual relations (Count XIII). *See United Truck Leasing Corp. v. Geltman*, 551 N.E.2d 20, 21 (Mass. 1990); *Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 462 (Mich. Ct. App. 1989); *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998); and *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.*, 664 N.E.2d 492, 495 (N.Y. 1996). Plaintiffs, however, have made no such allegation

---

disgorgement order might be for an amount more or less than that required to make the victims whole." *Id.* at 802 (internal citations omitted).

nor have they provided any response as to their ability to do so. Accordingly, their claims in Count XIII are dismissed.

Likewise, despite their assertions to the contrary, BCBS Plaintiffs have not alleged and have not persuaded the Court that they can allege facts required to state a claim for tortious interference with prospective business advantage against Defendants. Plaintiffs have not and cannot allege that Defendants' conduct caused the prescription benefit managers and/or pharmacists to terminate or breach any current or prospective business

relationship with Plaintiffs as required under Michigan,[14] Massachusetts,[15] Minnesota,[16] and New York law.[17]

---

[14]Under Michigan law, to assert a claim for tortious interference with a business relationship or expectancy with a third party, Plaintiffs must allege:

> (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*, 438 N.W.2d 349, 354 (Mich. Ct. App. 1989).

[15]Under Massachusetts law, to state a claim for intentional interference with advantageous business relations, the plaintiff must allege and prove:

> (1) the existence of a business relationship or contemplated contract of economic benefit; (2) defendant's knowledge of such relationship; (3) the defendant's intentional and improper interference with that relationship; and (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct.

*Trent Partners and Assoc., Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 112 (D. Mass. 1999) (citing and applying Massachusetts law).

[16]Under Minnesota law, the plaintiff states a claim of tortious interference with prospective business relations by alleging and showing that: "one intentionally and improperly interfere[d] with another's prospective business relation by (1) inducing a third person not to enter into or to continue the prospective relation, or (2) preventing the other from continuing the prospective relationship." *Hough Transit, Ltd. v. Nat'l Farmers Org.*, 472 N.W.2d 358, 361 (Minn. Ct. App. 1991).

[17]Under New York law, to state a claim for tortious interference with prospective business relations, the plaintiff must allege "that [the] plaintiff was actually and wrongfully prevented from entering into or continuing in a specific business relationship as a result of [the] defendants' conduct." *Korn v. Princz*, 641 N.Y.S.2d 283, 283 (N.Y. App. Div. 1996) (internal citations omitted).

BCBS Plaintiffs allege that they were harmed by Defendants' intentional anti-competitive conduct which was designed to preclude Plaintiffs from reaping the cost-saving benefits they otherwise would reap under business arrangements they had with PBMs and pharmacists (requiring the substitution of less costly generics in place of the more expensive branded drug Cardizem CD). BCBS Plaintiffs, however, do not allege facts showing that Defendants' conduct caused any third party PBMs or pharmacists to terminate any current or prospective business relationship with BCBS Plaintiffs and thus cannot allege any harm flowing therefrom. *See PPX Enter., Inc. v. Audiofidelity Enter., Inc.*, 818 F.2d 266, 270 (2d Cir. 1987) (applying New York law, holding that the plaintiff "failed to establish an essential element of its claim for tortious interference with prospective economic advantage", and rejecting an argument that "'interference' with the benefits derived from a relationship that leaves the relationship itself unchanged in any way can also constitute interference with the underlying business relations."). Similar to the plaintiff in *PPX Enterprises*, BCBS Plaintiffs allege that Defendants' intentional anti-competitive conduct interfered with the benefits Plaintiffs derived or could derive from their current or prospective business relationships with third party PBMs and pharmacists. They do not allege facts showing that Defendants' conduct caused these third parties to discontinue their business relationships with BCBS Plaintiffs. Accordingly, BCBS Plaintiffs' claims in Count XIV are dismissed.[18]

---

[18]In light of this Court's dismissal of BCBS Plaintiffs' claims of tortious interference in Counts XIII and XIV, there is no need to discuss Defendants statute of limitation arguments as to those claims or the availability of punitive damages under those claims.

III.     **Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are granted in part and

denied in part.


Nancy G. Edmunds
U.S. District Judge

Dated:___**2 3 MAY 2003**___

# CERTIFICATE OF SERVICE

**Pursuant to Rule 77(d), Federal Rules of Civil Procedure, copies have been mailed to:**

Elwood S. Simon, Esq.
**ELWOOD S. SIMON & ASSOCIATES**
355 South Old Woodward Avenue
Suite 250
Birmingham, MI 48009

Stephen Lowey, Esq.
**LOWEY, DANNENBERG,**
 **BEMPORAD & SELINGER PC**
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, New York 10601-1714

Joseph J. Tabacco, Jr., Esq.
**BERMAN, DEVALERIO, PEASE & TABACCO**
425 California Street, Suite 2025
San Francisco, CA 94104

Richard Drubel, Esq.
**BOIES & SCHILLER**
26 South Main Street
Hanover, NH 03755

Bruce E. Gerstein, Esq.
**GARWIN BRONZAFT GERSTEIN & FISHER, LLP**
1501 Broadway
New York, NY 10036

Scott E. Perwin, Esq.
**KENNY NACHWALTER SEYMOUR ARNOLD**
 **CRITCHLOW & SPECTOR, PA**
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131-4327

Joseph Rebein, Esq.
**SHOOK, HARDY & BACON LLP**
One Kansas City Place
1200 Main Street
Kansas City, MO 64105

Gordon Ball
**BALL & SCOTT**
550 W. Main Avenue, Suite 750
Bank of America Center
Knoxville, TN 37902

Craig L. John, Esq.
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304-5086

Louis M. Solomon, Esq.
**SOLOMON ZAUDERER ELLENHORN**
 **FRISCHER & SHARP**
45 Rockefeller Plaza
New York, NY 10111

Norman C. Ankers, Esq.
**HONIGMAN MILLER SCHWARTZ & COHEN**
32270 Telegraph Road, Suite 225
Bingham Farms, MI 48025-2457

Steve D. Shadowen
**SCHNADER HARRISON SEGAL & LEWIS, L.L.P.**
Suite 700, 30 North Third Street
Harrisburg, PA 17101-1713

Paul F. Novak
Assistant Attorney General
**CONSUMER PROTECTION DIVISION**
670 G Mennen Williams Building
Lansing, MI 48913

Robert Hubbard
**OFFICE OF THE NEW YORK ATTORNEY GENERAL**
120 Broadway
New York, NY 10271-0332

David L. Douglas
**PORTER WRIGHT MORRIS & ARTHUR**
1919 Pennsylvania Avenue N.W.
Washington, DC 20006-3434

**JUDICIAL PANEL MULTIDISTRICT LITIGATION**
Thurgood Marshall Federal Judiciary Building
Room G-255 North
One Columbus Circle, N.E.
Washington, D.C. 20002-8004

_____
Deputy Court Clerk

**2 3 MAY 2003**
_____
Date