# EXHIBIT 3

Page 1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
     In re:                              )
 4   PHARMACEUTICAL INDUSTRY              ) CA No. 01-12257-PBS
     AVERAGE WHOLESALE PRICE              ) MDL No. 1456
 5   LITIGATION                           ) Pages 1 - 48
 6
 7
 8                           MOTION HEARING
 9              BEFORE THE HONORABLE PATTI B. SARIS
                     UNITED STATES DISTRICT JUDGE
10
11
12
13
                                 United States District Court
14                               1 Courthouse Way, Courtroom 19
                                 Boston, Massachusetts
15                               October 26, 2006
16
17
18
19
20
21
22
                              LEE A. MARZILLI
23                       CERTIFIED REALTIME REPORTER
                          United States District Court
24                       1 Courthouse Way, Room 3205
                              Boston, MA  02210
25                              (617)345-6787
```

```
 1   A P P E A R A N C E S:
 2   For the Plaintiffs:
 3        GEJAA T. GOBENA, ESQ., RENEE BROOKER, ESQ., and
     ANDY J. MAO, ESQ., U.S. Department of Justice, Civil
 4   Division, 601 D Street, N.W., P.O. Box 261, Washington, D.C.,
     20044.
 5
          GEORGE B. HENDERSON, ESQ., Assistant United States
 6   Attorney, Office of the United States Attorney, 1 Courthouse
     Way, Boston, Massachusetts, 02210.
 7
          JAMES T. BREEN, ESQ., The Breen Law Firm, PA, 3562 Old
 8   Milton Parkway, Alpharetta, Georgia, 30005.
 9   For the Defendants:
10        JAMES R. DALY, ESQ., Jones Day, 77 West Wacker, Chicago,
     Illinois, 60601-1692.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                      P R O C E E D I N G S
 2            THE CLERK:  In re:  Pharmaceutical Industry Average
 3   Wholesale Price Litigation, Civil Action No. 01-12257,
 4   MDL No. 1456, will now be heard before this Court.  Will
 5   counsel please identify themselves for the record.
 6            MR. GOBENA:  On behalf of the United States, Gejaa
 7   Gobena.
 8            MR. MAO:  Andy Mao for the government.
 9            MR. SOBOL:  On behalf of the relator, Ven-A-Care of
10   the Florida Keys, James Breen.
11            MR. HENDERSON:  George Henderson.
12            MS. BROOKER:  Renee Brooker on behalf of the United
13   States.
14            MR. DALY:  Good afternoon, your Honor.  Jim Daly
15   for Abbott Laboratories.
16            THE COURT:  Good.  Today we have the motion to
17   dismiss pending, is that right?
18            MR. GOBENA:  That's correct, your Honor.
19            MR. DALY:  Yes, your Honor, and the CMO motion I
20   think is up today as well, if that fits with your schedule.
21            THE COURT:  Well, let me say this.  Unfortunately,
22   I have an emergency motion for a preliminary injunction that
23   was filed, and I need to hear them at 4:00 o'clock.  So we
24   can handle this in two ways.  You're all here, and so of
25   course I'm going to hear you on the motions to dismiss.  We
```

1   can get through as much as I can on the case management
2   order, but I don't have all afternoon.  So if I gave you
3   fifteen minutes a side on the argument, I don't know if
4   that's enough time, with five minutes apiece for rebuttal.
5           MR. DALY:  It might take slightly longer than that
6   on my end, your Honor, slightly more than the fifteen
7   minutes, but hopefully I can get as close to that as
8   possible.
9           THE COURT:  Well, you might have to come back.
10  Where are you from?
11          MR. DALY:  I'm from Chicago, Judge.  I'm happy to
12  come back.
13          THE COURT:  And you're all from D.C.?
14          MR. BREEN:  Atlanta.
15          THE COURT:  Atlanta?  One possibility would be
16  tomorrow morning, if you wanted to stay over, if we don't
17  finish.  This is a motion for preliminary injunction
18  involving the election coming up, which just came in the
19  front door, and I've got to do it, okay.  So I could see you
20  all tomorrow morning if we don't finish, but why don't I not
21  take any more time on that, see how far we go, and then we'll
22  see what needs to be addressed on the case management order.
23  Sound okay?
24          MR. DALY:  Yes, your Honor.
25          THE COURT:  Great.  Your motion, sir.

```
 1                MR. GOBENA:  NDC probably.
 2                THE COURT:  Right, the NDC.  And then your point is
 3   that implicit in that, it will be reimbursed at the AWP.  He
 4   says that's not enough for a false claim.
 5                MR. GOBENA:  That triggers the process, in our
 6   view, that leads to the submission of a claim --
 7                THE COURT:  All right, I've got the debate.  Okay.
 8                MR. DALY:  I don't think that's a false claim.  I
 9   think they can sue us for fraud if they want to.
10                THE COURT:  Which they have done.
11                MR. DALY:  Yes, which they have done.  So it's a
12   square-peg-round-hole problem.  To answer the question about
13   the Poe case, if you look at it, Judge, there's no analysis
14   of whether or not you can use the Anti-Kickback Statute on an
15   implied certification theory for Medicaid.  All it does is,
16   it recites in a footnote that, you know, Paragraph 42 of the
17   complaint alleged Medicare and Medicaid.  There's no analysis
18   of the question that I think is presented to the Court today,
19   which is, can you use it in that way?
20                And then, finally, just to be clear, I'm not saying
21   that I think that in the Medicaid context, certainly that
22   submitting it to the state creates a false claim.  I still
23   have my other arguments that there's still nothing false
24   about that.
25                THE COURT:  Sure.  Okay, I understand the debate.
```

```
 1   We've got to move on.  What did you want?  We need to get
 2   discovery going, right?
 3            MR. DALY:  Yes, your Honor, absolutely.
 4            THE COURT:  So are you ready to do like a
 5   scheduling order?
 6            MR. GOBENA:  Well, your Honor, there's actually --
 7            MR. DALY:  We are.  I think we've submitted
 8   competing orders to the Court which, you know, sort of differ
 9   in that we want to move quickly, and they want to move less
10   quickly, we want more, they want less, generally speaking.
11            MR. GOBENA:  Your Honor, Ms. Brooker is going to
12   address that.
13            MS. BROOKER:  Your Honor, I would just say briefly,
14   if your Honor is not going to hear either today or tomorrow
15   the briefs, we would -- we were initially before Judge Bowler
16   on Monday on this issue, so the government did not file a
17   reply.  We were going to seek leave to file a reply.  To the
18   extent that your Honor doesn't want to hear that today --
19            THE COURT:  Do you want me to just do it on the
20   papers?
21            MR. GOBENA:  We could do it on the papers, your
22   Honor, or we could appear before your Honor.  I think there
23   are more issues involved than simply, you know, they want no
24   limitations in our case and we want a different number.
25            (Discussion off the record.)
```

1          THE COURT:  So how much time do you want?

2          MS. BROOKER:  I would say, your Honor, I was

3  planning on about 20 minutes you know.

4          THE COURT:  Okay, for the discovery.

5          MS. BROOKER:  Oh, I'm sorry.  I thought you meant

6  to argue.

7          THE COURT:  Twenty minutes, that's going to be the

8  quickest case in Federal Court yet.

9          MS. BROOKER:  I think it will take a lot longer

10  than that, your Honor.  In terms of the time period for

11  discovery, is that your question?

12          THE COURT:  Yes.

13          MS. BROOKER:  Well, that really depends on the

14  scope of discovery, which is what we've argued in our CMO.

15  But the government believes that if the scope of discovery

16  is -- if the parameters are set as they should be, that this

17  case could be -- you know, we could go through the discovery

18  process in eighteen months.

19          THE COURT:  How much do you need?

20          MR. DALY:  Judge, there's a very large issue in

21  what counsel just indicated.  In terms of the scope of

22  discovery, that's the big issue for the CMO.  They're trying

23  to say that my client doesn't get any discovery of government

24  knowledge, government policy; all these things that are on

25  the board up there, they're irrelevant to the case; and

1   Abbott doesn't need any discovery on it whatsoever. It's a
2   big issue for us. We think it's one that we win. We think
3   that -- but that's the big issue on the CMO.
4              We've proposed a year, Judge. We think that this
5   case has been pending --
6              THE COURT: The debate is between a year and
7   eighteen months? Is that the debate? Can't I resolve that
8   right now? Why don't I say halfway between the two?
9              MS. BROOKER: Your Honor, the debate is that we say
10  eighteen months, but we say that parameters should be set on
11  the scope of discovery within eighteen months.
12             THE COURT: Why can't they get what you guys know
13  and did?
14             MS. BROOKER: Well, your Honor, we disagree with
15  that position.
16             THE COURT: Why?
17             MS. BROOKER: We have not taken the position that
18  there should be no discovery on government knowledge. Our
19  position is much more refined than that. What we have said,
20  however, is that defendants are not entitled to have
21  discovery on the entire federal government, which is
22  essentially what they're seeking for all pharmaceutical
23  companies, for all drugs, for the last forty-one years.
24             THE COURT: Oh, I see.
25             MS. BROOKER: It's not limited to Abbott's specific

1   conduct and Abbott's drugs, and it's certainly not limited to
2   HHS and CMS.
3           THE COURT: I'm not going to resolve the scope of
4   discovery issue right this second. What I am going to do is
5   kick-start this case.
6           MR. DALY: Thank you.
7           THE COURT: Because as far as I'm concerned, you've
8   been dealing with it since 1995 -- maybe not you
9   personally, but it's been around since 1995 -- and I'm going
10  to open up everything that happened in MDL. We're going to
11  have a trial starting in two weeks.
12          By the way, has the government, have you made a
13  decision about whether these folks are going to testify?
14          MR. HENDERSON: Your Honor, CMS has denied -- and
15  there's been an emergency motion by the defendants, CMS has
16  denied the Touhy Request. I'd also note that there are no
17  subpoenas out.
18          THE COURT: For trial, for the trial. For trial
19  subpoenas or just -- I've already ruled on the pretrial
20  depositions.
21          MR. HENDERSON: There are no trial subpoenas
22  outstanding. I mean, these people are beyond the subpoena
23  power of the court. They're not within the district.
24          THE COURT: All right, so then it's full square up
25  for this case, right?

Case 1:01-cv-12257-PBS   Document 3530-5   Filed 01/09/07   Page 11 of 16

Page 44

1          MR. HENDERSON:  I'm sorry?

2          THE COURT:  Because, I mean, I denied the request

3   just because it's too late for discovery, but this case is in

4   a different posture, so I'm going to have to deal with this

5   case.

6          MR. HENDERSON:  Yes.

7          MS. BROOKER:  Your Honor, if I may be permitted to

8   say one more brief thing, I didn't want to leave your Honor

9   with a misimpression.

10         THE COURT:  Yes.

11         MS. BROOKER:  Our position is that Abbott

12  specifically, and Abbott as lead counsel on discovery in this

13  MDL proceeding as well as the Lupron MDL proceeding, has

14  received all discovery on broad government knowledge.  That's

15  why they have all these government reports, for example.

16         THE COURT:  So they can have everything that

17  happened in the MDL.  You probably have it anyway.

18         MR. DALY:  Well, we have that anyway, Judge.

19         MS. BROOKER:  What we're seeking to set parameters

20  on is Abbott starting discovery, and if your Honor opens the

21  gates now and says "go," Abbott is going to be seeking

22  discovery against all of the Department of Defense on all

23  pharmaceuticals for forty years, the same thing with the

24  Department of Commerce, the same thing with the VA.

25         THE COURT:  And you'll move for a protective

1  order. So, you know, the truth is, I'm just doing a
2  scheduling order. I'm not going to resolve every issue in
3  this litigation going forward. And this is huge, you know,
4  how much was -- you know, this is huge. I'm not going to
5  decide every single one of those issues right now. What I am
6  going to do is fifteen months for discovery, all right, not
7  being too Solomonic about it. I think that's actually
8  incredibly generous, given the fact of how much has happened
9  so far. And so that pulls us till -- so, like, through
10 December 31 of next year? Does that sound roughly okay?
11 Then January 31 for the government's expert reports; and
12 February 28, assuming it's not a leap year, for the Abbott
13 expert reports; April 30 for the expert discovery.
14         MR. DALY: Deposition.
15         THE COURT: And so I might be willing to guess, if
16 I don't, that at least on all remaining claims, I am likely
17 to see motions for summary judgment.
18         MR. DALY: It's possible, your Honor.
19         THE COURT: Just possibly. So I think we'll
20 probably do -- why don't we just say June 15 for a motion for
21 summary judgment. Is this pushing it out too far? Do you
22 think this is --
23         MS. BROOKER: No.
24         THE COURT: July 15 for the opposition, August 1
25 for the reply, August 15 for the surreply. And the next

1   group of law clerks can get the whole shebang for the motion
2   for summary judgment.
3              When do you want to go to mediation?
4              MR. DALY:  Can we get together and propose
5   something?
6              MS. BROOKER:  We can propose something, your Honor.
7              MR. DALY:  Or you can just stick the date anywhere
8   in there.
9              THE COURT:  You know, there are just a bunch of --
10  we could send it to the United States magistrate judges.  I
11  think, in this kind of case, you may want to go to the people
12  who deal with the really big stuff.  And why don't you both
13  talk within two weeks and send me letters and counter letters
14  for a proposed settlement.
15             Now let me ask the government this.  Is this just
16  the first?
17             MR. HENDERSON:  That's what I wanted to speak to,
18  your Honor.  I'm one of the counsel on another case that's
19  been filed, an AWP case that's before Judge Lasker against
20  Dey, Incorporated.  And we intervened a couple of months
21  ago.  Dey has not answered.  We did file a notice of related
22  case before Judge Lasker.  Judge Lasker probably hasn't
23  looked at it.  And we've asked Dey on its position about a
24  motion to transfer to the MDL.
25             THE COURT:  How many more am I going to look at

1   brought by the federal government against the drug
2   companies?
3           MR. HENDERSON:  I can't answer that, your Honor,
4   but at this point in time, I do anticipate that there will be
5   an additional case.
6           THE COURT:  At least the Dey case?
7           MR. HENDERSON:  Well, the Dey case is before
8   Judge Lasker and then one additional to that.  Beyond that, I
9   can't really say.
10          THE COURT:  Well, here's my issue.  When will all
11  this be happening?
12          MR. HENDERSON:  Well, the Dey case anytime.  I
13  think that we've agreed that their response to the complaint
14  is due in late December, December 22.
15          THE COURT:  Because my concern is really to some
16  extent internally with resources with me.  At this time
17  around I've been very lucky, the First Circuit has given me a
18  third law clerk.  I mean, as you all know, this is huge, and
19  I just need to have a sense of what's going on.  So maybe
20  during at some point the trial as it's coming up, I'm just
21  going to need to know what's happening on the big picture.
22          MR. HENDERSON:  Well, in addition, one of the
23  things I'm concerned with, your Honor, is that we go through
24  a lot of discovery by Abbott against the government, and then
25  Dey says, "Well, wait a second; we didn't have the

Case 1:01-cv-12257-PBS   Document 3530-5   Filed 01/09/07   Page 15 of 16

Page 48

```
 1    opportunity to participate in that discovery.  We've got to
 2    retake these same depositions all over again."  And then a
 3    few months later we have another defendant who says, "Well,
 4    we've got to depose these people."
 5              THE COURT:  Well, that may happen.  I don't know
 6    how to protect against it other than the fact I'd incorporate
 7    the deposition, and they just would supplement and not start
 8    from base one, you know?
 9              MR. HENDERSON:  Perhaps, if we could at least get
10    the Dey case before the Court and discovery proceedings
11    consolidated on the same schedule.
12              THE COURT:  That will be another day, huh?  All
13    right, it's been a long day.  I've got to go.  I have this
14    other case.  So why don't we do this.  I've been more focused
15    on the motion to dismiss, I have to confess, than the CMO.
16    I'm moving it.  It's going.  You file your inevitable, as day
17    follows night, deposition subpoenas.  You're going to move
18    for a protective order, and I'll either refer it to
19    Judge Bowler, or if I think it's a cutting-edge issue, I'll
20    take it myself, or maybe give her the first crack at it.  It
21    will be, you know, appealable if people didn't like the
22    results of it.  I'll just play that by ear, but I don't want
23    to just -- this needs to get going.  It's been pending since
24    1995, right?  So good, thank you.
25              (Adjourned, 4:07 p.m.)
```

```
 1                    C E R T I F I C A T E
 2
 3
     UNITED STATES DISTRICT COURT )
 4   DISTRICT OF MASSACHUSETTS    ) ss.
     CITY OF BOSTON               )
 5
 6
 7
 8          I, Lee A. Marzilli, Official Federal Court
 9   Reporter, do hereby certify that the foregoing transcript,
10   Pages 1 through 48 inclusive, was recorded by me
11   stenographically at the time and place aforesaid in Civil
12   Action No. 01-12257-PBS, MDL No. 1456, In re: Pharmaceutical
13   Industry Average Wholesale Price Litigation, and thereafter
14   by me reduced to typewriting and is a true and accurate
15   record of the proceedings.
16          In witness whereof I have hereunto set my hand this
17   2nd day of November, 2006.
18
19
20
21
22
23          _____
            LEE A. MARZILLI, CRR
24          OFFICIAL FEDERAL COURT REPORTER
25
```

Electronically signed by Lee Marzilli (501-148-248-2705)    20c49a5b-7ea3-4417-baa2-e72cea1adb3d