# EXHIBIT 17



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*
*Ninth Floor*
*Washington, D.C. 20004*

*Telephone: (202) 616-3797*
*Telecopier: (202) 616-3085*

December 22, 2006

*Via Electronic Transmission*

Jason G. Winchester
77 West Wacker
Chicago, Illinois 60601-1692

R. Christopher Cook
Jones Day
51 Louisiana Ave., N.W.
Washington, DC 20001-2113

Re:  *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* MDL No. 1456/Civil Action No. 01-12257-PBS

Dear Messrs:

This letter is to memorialize the discussions held on December 15, 18, and 19 concerning the United States' First Request for the Production of Documents to Abbott, and to respond to your letter of December 21, 2006 regarding the same.

"Non-Subject Drugs"[1] Relevance Objection. Abbott stated that it "will not produce documents that relate exclusively to drugs that are not the Subject Drugs" (unless it's a document regarding an HPD drug that relates to marketing the spread or manipulating AWP.) See Abbott Response to U.S. First RFPs, Gen'l Obj. # 9. As we stated, these materials are relevant, or reasonably calculated to lead to the discovery of admissible evidence, for at least the following

---

[1] Abbott refers to drugs not specifically identified in Exhibit A to the Complaint as the "non-subject drugs". We will use that term in this letter for ease, notwithstanding our position that the marketing conduct allegations in the Complaint are not limited to the specific drugs mentioned in the Complaint.

-2-

reasons. First, Abbott's sale of drugs on which there is no spread or no AWP manipulation may very well constitute evidence in our case, if for example, it demonstrated that Abbott only engaged in spread manipulation in certain defined situations. Second, as you confirmed on our call, Abbott claims in this litigation that it does not report, advertise, publish, or cause to be published, directly or indirectly, the average wholesale price for *any* of its drugs. See, e.g., Abbott Response to U.S. First RFP, Objs. to Defin. #3 & #7. Third, Abbott claims in this litigation that it has "no role [in the] 'creation or existence' of any so-called spread". See e.g., Abbott Response to U.S. First RFP #4. We know from even the evidence we have to date that these assertions are untrue. At the least, we are entitled to explore both of these contentions through discovery of information relevant to Abbott's marketing of drugs which are not specifically identified in the Complaint. As you know, we are not insisting upon discovery of every one of the thousands of products sold by Abbott. Our quite reasonable starting point is that we are at a minimum entitled to discovery regarding drugs not mentioned specifically in the Complaint when the burden on Abbott is relatively inconsequential, as is the case when the documents have already been produced to other parties.

Plaintiffs' Request for CMO-5 Materials. Abbott has acknowledged that it has produced materials in numerous other AWP-related matters.[2] Please let us know in what other AWP-related litigation and investigations Abbott has produced materials or plans to produce materials. We are trying to secure Abbott's compliance with the United States' First Request For Production, and also coordinate discovery between the various cases and investigations directed at Abbott's conduct regarding AWP. In large part, our efforts are directed at managing discovery in an efficient, fair, and expeditious manner.

In order to ease the burden of the production of relevant materials related to Abbott's marketing of its drugs, and to expedite the discovery process in this case, the United States and Relator have repeatedly requested since the commencement of discovery that Abbott provide

---

[2] Abbott produced documents in these AWP-related matters: (1) *State of West Virginia v. Warrick Pharmaceuticals Corp., et al.*, Case No. 01-C-3011, Circuit Court of Kanawha County, WV; (2) *Peralta v. Abbott Laboratories Inc.*, Case No. BC 259587, Superior Court for the State of California, Los Angeles County; (3) *State of Nevada v. Abbott Laboratories Inc., et al.*, Case No. CV-N-02-0080-ECR-RAM, Second Judicial District Court, Washoe County, NV; (4) *Commonwealth of Kentucky v. Abbott Laboratories Inc.*, Civil Action No. 03-CI-1134, Franklin Circuit Court, KY; (5) Commonwealth of Pennsylvania, filed in March 2004 in the Commonwealth Court of Pennsylvania; (6) *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc., et al.*, Cause No. GV401286, District Court, Travis County, TX ; (7) *State of Wisconsin v. Abbott Laboratories Inc., et al.*, Case No. 04 CV 1709 Unclassified- Civil: 30703, Circuit Court of Dane County, WI; (8) *Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc., et al.*, No. 21 2 MD 2004, Commonwealth Court of Pennsylvania; and, (9) *In re Pharmaceutical Industry Average Wholesale Price Litigation (MDL 1456)* Civil Action No. 01-CV-12257 PBS, D. Mass, including actions transferred to MDL 1456.

copies of the identical sets of materials it has previously produced in other AWP-related litigation and investigations. See e.g., U.S. First RFP #2. In the alternative, to eliminate altogether the burden of Abbott re-copying any materials or CD-Roms on several of the prior productions, we offered Abbott the option of allowing us to obtain these materials from Relator and/or other Plaintiffs under the terms of the Protective Order in this case. We believe our request is non-controversial, non-objectionable and required by the Court under CMO No. 5, ¶¶2(a) & (b).[3]

Abbott has refused to provide us an identical set of copies, and has refused to allow us to obtain the same from other Plaintiffs to AWP litigation that have already received these materials. Abbott's sole objection is relevance. We have stated why these materials are relevant, or reasonably calculated to lead to the discovery of admissible evidence. The parties agree that there is little to no burdensomeness to Abbott's production of these materials. Abbott has already provided these materials to numerous other litigants. The idea that the materials can be made available to private litigants but not to the United States is insupportable. We ask that Abbott provide the same electronic copy (with the same Bates-stamped numbers from the respective cases) to us under the terms of the Protective Order entered in this MDL proceeding, which we are entitled to receive since the materials are relevant to this case and responsive to our document requests. If Abbott wants to reduce the burdensomeness of this request to zero in many cases, it always has the option to allow plaintiffs in the other matters to simply provide the copies to us. However, any production in this case is subject to the terms of this Court's Protective Order.

Abbott's Counter-Proposal. As you know, the Relator in this case is also the Plaintiff-Relator in the Texas AWP case. In order to avoid providing the United States direct access to all of the documents Abbott produced to Relator and Texas in the Texas AWP litigation, Abbott offers to provide us a list that compares the Bates numbers of documents it produced in Texas to the Bates numbers of documents that it claims we already have in this case (i.e., a cross-walk). The offer of a cross-walk is as a result of Abbott's attempts to sustain the position described above. While we gladly accept Abbott's cross-walk of Bates numbers between cases because it may assist with expediting some discovery, that solution alone is insufficient. First, the cross-walk you offer only relates to Texas documents. Second, it would take an unnecessarily lengthy period of time for the United States and Relator to reconcile the productions on case by case basis. The discovery clock that you have insisted upon is ticking, and we still are in no better position to take depositions of Abbott witnesses than we were when discovery first commenced.

---

[3] Abbott represents that it is not obligated to produce to the United States the materials identified in CMO-5, and that CMO-9 operates as a bar to the United States' Request for Production number two. As far as we can tell, the briefing that led to CMO-9 arose in the context of a situation where Plaintiffs for whom discovery was stayed pending motions to dismiss were seeking to take discovery, and appears to be limited to facts that are inapplicable in this case. Moreover, we have stated a legitimate need for the discovery in this case where there is admittedly no burden to Abbott.

-4-

Essentially, Abbott has taken the position that rather than simply turning over copies of pre-existing discovery it would prefer to take the time and effort for the parties to cull through the pre-existing discovery to identify a subset to be made available to the United States. We find Abbott's entrenched position to be both untenable and contrary to its insistence that discovery can be completed in the 12 remaining months of discovery. The only justification Abbott has for this wasteful exercise is that it does not want the United States Government "mucking around" in its documents. That is not a legitimate objection.

The United States' position remains that not only should all of the pre-existing discovery be made available, pursuant to CMO-5 and this Court's Protective Order, but that it must also include the Bates numbers from all prior productions.

Other Discovery Requests. As you know, the United States seeks documents, as well as access to deposition transcripts, in several other matters, including but not limited to, documents turned over to the MDL class action plaintiffs and the State of California. When we spoke Tuesday you said you would check to see if that could be done for other productions as well. Please let us know.

We also pointed out in a separate call yesterday, that the Court's CMO dated October 21, 2004, which appears to apply to the parties in this case, requires that "the parties....shall attempt to minimize litigation burdens by stipulating to the admissibility of testimony and documents derived from similar pricing litigation." We requested that, sufficiently in advance of the upcoming first cross-noticed depositions with the State of Texas in mid- January, Abbott inform us of its position on allowing the United States to be present for the entire deposition, notwithstanding its objection on relevance.

Time period Objection. Abbott objected to the Plaintiffs' definition of "relevant time period" and stated that it would only "produce responsive documents to the extent they exist from "1991 through January 31, 2001, the period of time specifically referenced in the Complaint.[4] We informed you that we do not believe Abbott is entitled to so limit its search for or production of relevant documents in this manner for at least several reasons. First, as we informed you, according to our information, vancomycin entered the market around August 1988. We believe there are likely to be marketing-related documents concerning vancomycin that predate 1991. Second, Abbott's marketing conduct with respect to its drugs before and after the specific time period identified in the Complaint is relevant to our claims on Abbott's marketing the spread conduct with respect to the drugs in the Complaint.

To follow up, we requested as an initial matter, that Abbott search for and produce all

---

[4] The United States' Complaint alleges that "from at least on or before January 1, 1991, and continuing through January 2001, Abbott defrauded the United States by knowingly causing the Medicare and Medicaid programs to pay false or fraudulent claims for dextrose solutions, sodium chloride solutions, sterile water, and Vancomycin."

-5-

documents related to vancomycin without regard to time frame, including but not limited to, documents discussing the launch of vancomycin and documents that relate to the marketing or potential marketing of vancomycin that predate its launch. We also asked that Abbott not limit its search by time period for marketing-related documents that discuss any spread marketing (even if those specific terms are not used in any document), particularly given Abbott's broad contention in this litigation that it "had no role [in the] 'creation or existence' of any so-called 'spread'." See Abbott Response to U.S. First RFP #4. Abbott agreed to ascertain what, if any, additional burden is involved in the search for (and production) of these documents. Please inform us of that burden, and whether Abbott will agree to produce these documents. Abbott also agreed to propose a comprehensive approach to defining the relevant time period for both parties.

We also want to confirm that you represented to us that there are no marketing related materials specifically for the other drugs (dextrose solutions, sodium chloride solutions, sterile water) referenced in the Complaint. We discussed that Abbott markets these and other generic drugs on a non-specific drug basis. Abbott agreed that its searches and production would capture these general marketing materials.

Hospital versus non-hospitals. In its objections, Abbott represented that it would only search for and produce documents from divisions responsible for selling and marketing to non-hospitals on the assumption that Medicare and Medicaid did not reimburse hospitals based on average wholesale prices. We discussed the fact that Medicare and Medicare reimburse many hospitals for outpatient services based on average wholesale prices. We requested that for starters Abbott agree to produce all documents from its Hospital Products Division and relating to outpatient services. We are also waiting for Abbott to get back to us on PPD drugs.

Miscellaneous Objections. We understand that Abbott withdraws its objections to the following definitions in our Requests: WAC, Direct Price, Best Price, and AMP, but that Abbott continues to object to the term AWP because Abbott denies that it "reports, advertises, publishes or causes to be published, directly or indirectly, the average wholesale price for any pharmaceutical." In addition, Abbott has represented that it will not produce any documents relating to third-party payors that do not encompass the Medicaid and/or Medicare programs. We further understand that Abbott's primary objections to the document Requests pertain to the time period, production of documents regarding hospital customers, production of non-Medicare and non-Medicaid related documents and production of documents maintained outside Abbott's home office. The remaining objections are asserted to preserve Abbott's position on the meaning of certain terms but will not limit the documents actually produced and Abbott will not refuse to search for, or produce, any documents on the basis of those other objections.

Previously Subpoenaed Documents. Pursuant to our Request for Production number one, we asked that Abbott produce all documents not previously produced pursuant to our earlier subpoenas as set forth in the attachments to the Requests. You represented to us that to the extent that Abbott searched for materials responsive to the subpoenas, at or near the time the

-6-

subpoenas were issued, those materials were produced to the United States at that time. Abbott admittedly produced no materials in response to the 2000 subpoena. There are a total of 38 specifications in the earlier subpoenas. After conferring, we agree that Abbott could treat each of the 38 specifications as an individual document request. We also agreed that Abbott could ignore the definitions and instructions in the subpoenas and apply the definitions and instructions from the United States' First Request for Production of Documents. We request that Abbott respond to those 38 document requests by January 5, 2007, along with its other discovery responses on which we agreed to an extension of time.

Production and Privilege Logs. Abbott has represented that, beginning in January, it will produce any additional documents on a rolling basis without a more specific time frame, and that we will receive a privilege log by early January. We have not demanded that Abbott produce on a more expedited basis than what was represented to us.

Missing CD-Rom. Finally, we asked Abbott to produce the missing CD-Rom from its earlier production of sales data which apparently was inadvertently omitted. The missing CD-Rom is likely to be the Direct National Sales Data for 1995 (ABT-DOJ 000016).

We have attempted to be accurate as possible about the parties discussions over the course of several days. Please let us know if you disagree about the content of these discussions as memorialized in this letter. We are happy to correct any misunderstandings.

Very Truly Yours,

/s/
Renée Brooker

/s/

Mark Lavine

cc: James Breen