# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) MDL No. 1456 ) ) ) Civil Action No. 01-12257-PBS ) |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | ) Judge Patti B. Saris ) ) ) |
| TRIAL OF CLASS 2 AND 3 CLAIMS | |

**TRACK 1 DEFENDANTS' (1) RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' DECEMBER 19TH REQUEST FOR ADMISSION OF TRIAL EXHIBITS AND (2) OPPOSITION TO PLAINTIFFS' JANUARY 4TH REQUEST FOR ADMISSION OF TRIAL EXHIBITS**

\\\NY - 058559/000059 - 974609 v1

The Track 1 Defendants respectfully submit this memorandum in response to Plaintiffs' Objections to Track 1 Defendants' Request for Admission of Trial Exhibits, and in opposition to Plaintiffs' January 4th Request for Admission of Trial Exhibits.

Background

At the very end of the trial, the parties announced to the Court that they had agreed on most of the remaining exhibits to be admitted into evidence. The only issues outstanding were (i) Plaintiffs' objections to a handful of Defendants' exhibits, (ii) Defendants' objections to a few of Plaintiffs' exhibits, and (iii) Plaintiffs' desire to admit into evidence several documents annexed to Professor Rosenthal's written rebuttal testimony that they had not used with her during her live testimony that day (the "Unused Rosenthal Exhibits"). The Court directed the parties to determine which of the remaining, objected-to documents and/or Unused Rosenthal Exhibits, if any, were to be used in the parties' post-trial submissions. The Court ordered that it would rule on the outstanding issues at that time. (See Day 20 Tr. at 154:18-155:23.)

The next day, December 19, 2006, Defendants formally moved for the admission of their unobjected-to exhibits. Defendants noted that Plaintiffs objected to six other exhibits. Instead of waiting (as the Court had instructed) to see whether any of those six exhibits appeared in Defendants' post-trial submissions, Plaintiffs, on December 26, 2006, decided to brief their objections. Point I below is Defendants' response.

On January 4, 2007, again ignoring the Court's direction, Plaintiffs moved for the admission of the Unused Rosenthal Exhibits. Plaintiffs also sought to admit an entirely new document: a press release concerning a tentative settlement between Bristol-Myers Squibb and

the government of various pricing matters.  Point II below is Defendants' response to Plaintiffs' January 4 motion.

I.

PLAINTIFFS' OBJECTIONS TO SIX OF DEFENDANTS'
PROPOSED EXHIBITS SHOULD BE OVERRULED

The Defendants' exhibits in question are as follows:

| Exhibit | Description |
|---|---|
| 1081 | *The Impact of Medicare Payment Policies on Patient Access to Quality Cancer Care*, by Barton C. McCann, M.D. & Julia A. James, Health Policy Alternatives (June 1999) |
| 1656 | Kathpal Technologies, *High Cost Drugs Under the Outpatient Prospective Payment System*, Draft, prepared for the Health Care Financing Administration under contract by Myers and Stauffer LC (September 1999) |
| 2001 | Charts prepared by Dr. Eric Gaier of Bates, White, LLC containing manufacturer data of sales to Massachusetts third party payors and their HMO subsidiaries |
| 2969 | Chart on Modification of Changes in Medicare Reimbursement for a Typical Albuterol .083% Prescription |
| 2970 | Chart on Medicare Reimbursement for Albuterol .083% and Dispensing Fee |
| 2971 | Chart showing Comparison of Dr. Hartman's "Spreads" Under Alternative Calculation of "Spreads" for Proventil 0.083% |

The first three exhibits (1081, 1656, and 2001) are "common" defense exhibits.  The remaining three relate specifically to Defendants Schering and Warrick.

A.     The Common Exhibits

Plaintiffs object to DX 1081 and DX 1656 on the ground that there is no testimony establishing a foundation for the documents.  Both of these reports were cited to by Dr. Bell in his Direct Testimony.  (See Bell Direct at p. 29, fn. 58; App. A to Bell Direct at pp. 9-10; App. D to Bell Direct at p. 3.)  As such, an adequate foundation has been established for the documents.  Indeed, there is no difference between DX 1081 and 1656 and many of the exhibits that Plaintiffs themselves seek to introduce: i.e. studies upon which Dr. Rosenthal relied in her

2

written rebuttal testimony.  See, e.g., PX-4018 (PriceWaterhouseCoopers study), Proposed PX-4053, 4054, 4057 (medical/health care journal articles).  In short, if the Plaintiffs wish the Court to admit the Rosenthal exhibits as expert material under FRE 703 (see Point II, infra), they must also withdraw their objections to DX 1081 and 1656.[1]

DX-2001 is a compilation of charts prepared by Defendants' expert, Dr. Eric Gaier, concerning purchases of the drugs in the case by class members (third-party payors) for their own staff-model HMOs.  Plaintiffs object that the charts should be labeled with the name of the staff-model HMOs in question rather than the parent third-party payor.  For example, Plaintiffs allege that Dr. Gaier wrongly used the label "BCBS-MA" as the purchasing entity instead of Medical West and Medical East, BCBS-MA's staff-model HMOs.

The testimony of Edward S. Curran, former Director of Pharmacy of BCBS-MA from 1990-1994, proves that Dr. Gaier's labeling of his charts was entirely appropriate.  Mr. Curran testified that in his role as BCBS-MA's Director of Pharmacy, he negotiated contracts with drug manufacturers for physician-administered drugs.  (Day 4 Trial Tr. at 41:14-41:23, 46:16-47:8.)  BCBS-MA would then supply the drugs to its staff-model HMOs – the physicians at the staff-model HMOs would not order their drugs directly from a manufacturer.  (Id. at 41:24-42:15, 45:19-46:4.)  Mr. Curran, who also used to work at Harvard Pilgrim, testified that Harvard Pilgrim's staff-model HMO worked the same way.  (Id. at 48:16-49:8.)  Because BCBS-MA was the entity that was in fact contracting for the drugs, Dr. Gaier's labels were correct.

B.   Schering/Warrick Exhibits

---

[1] Plaintiffs further object to DX 1656 on the grounds that it is titled as a draft report.  Defendants have checked with their experts who have advised that there is no evidence that the report was ever issued as final.  This is consistent with references to the document on the Internet, which are to the same draft upon which Dr. Bell relied.  See http://www.medpac.gov/publications%5Ccongressional reports%5CJune05_ch6.pdf; www.cms.hhs.gov/eRulemaking/downloads/CMS-1506-P%20email%20Comments%20472-482.pdf; www.accc-cancer.org/PUBPOL/PharmCostSurvey05.pdf.

\\\NY - 058559/000059 - 974609 v1

3

DX 2969-70 should be admitted into evidence because they are direct responses by Dr. Sumanth Addanki and his staff to data presented by Dr. Hartman *for the first time* in his rebuttal testimony. The data table in DX 2969 and the associated graphic in DX 2970 recalculate misleading data contained in Attachment C to Dr. Hartman's rebuttal testimony (which was also admitted into evidence as Plaintiffs' Exhibit 4095). Dr. Hartman's chart purports to show that Medicare reimbursement (drug cost plus dispensing fee) for 0.083% albuterol solution decreased under the MMA, but it rests on the median AWP of the 0.083% solution as the reimbursement rate under the law prior to the MMA, which Plaintiffs concede[2] overstates by a large amount the actual reimbursement rate for most prescriptions of the product: Medicare reimbursed the product at $0.14 rather than the median AWP of $0.47 in virtually every claim in evidence. DX 2969 and 2970 show that use of the actual pre-MMA reimbursement rate refutes Dr. Hartman's calculations. There was no opportunity to correct this error before Dr. Hartman made it in his rebuttal testimony.

Similarly, in DX 2971, Dr. Addanki and his staff corrected Dr. Hartman's spread calculations for Proventil by using the actual Medicare reimbursement rate of $0.14 in lieu of the erroneous rate used by Dr. Hartman in his calculations.

II.

PLAINTIFFS' REQUEST FOR ADMISSION OF EXHIBITS
SHOULD BE DENIED IN PART AND OTHERWISE DEFERRED

The Unused Rosenthal Exhibits[3] are <u>precisely</u> the documents to which the Court in the final minutes of the trial made reference when ordering the parties not to "shovel[] in" to

---

[2] *See, e.g.*, Day 20 Trial Tr. at 138:6-139:24.

[3] They are Exhibits 1099, 1303, 4040, 4053, 4054, 4057, 4062-65, 4073, 4074, and 4091. Plaintiffs erroneously included Exhibit 4058 in their Request for Admission, but this exhibit is already in evidence. (<u>See</u> Day 20 Trial Tr. at 64:23.)

the record unless "you actually cite to [it]" in post-trial submissions. (Day 20 Trial Tr. at 155:10-13.) Plaintiffs have also moved, for the first time, to introduce a Bristol-Myers Squibb press release concerning a tentative settlement with the federal government over certain pricing matters. (Proposed PX-4108.)

A.        Unused Rosenthal Exhibits

Plaintiffs should have observed the protocols agreed to on the record at the last day of trial and, therefore, should have waited to see if they felt the need to cite any of the Unused Rosenthal Exhibits in their post-trial submissions. Ultimately, however, Defendants will not object to the admission of the Unused Rosenthal Exhibits provided that the similar Defendants' Exhibits to which Plaintiffs have objected (DX-1081, 1656) are also admitted. Otherwise, Defendants object to proposed PX-4053, 4054, 4057 and 4062 on the same ground raised by Plaintiffs with respect to Defendants' proposed exhibits, i.e. that they are not governmental reports and are not sufficiently reliable to be admitted into evidence.

B.        The BMS Press Release

Plaintiffs claim that PX 4108 "confirms that the DOJ has been investigating BMS for at least several years and serves as additional evidence to rebut the notion, advanced by BMS and its experts at trial, that the federal government somehow condoned BMS's unlawful conduct." (Pl. Req. for Admission at p. 2.) The Court should exclude the proposed exhibit for several reasons.

First, evidence of settlement agreements is barred by Federal Rule of Evidence 408. Second, although the settlement documents have yet to be finalized, they will undoubtedly contain a provision stating the settlement is not an admission of BMS's liability. Third, to the extent that the settlement relates to oncology drugs at all, it arises out of a qui tam investigation,

not an investigation that the government initiated. As such, it does not stand for the proposition that the government was investigating BMS for several years.

Finally, Plaintiffs' reason for offering the document is based on a straw man: neither BMS, nor its expert, Dr. Bell, ever said that the government "condoned" BMS's conduct. Rather, BMS argued at trial that Medicare was aware of the spreads on BMS's drugs, but never either asked BMS to change the way it reported its pricing information to industry publications or directed its carriers to reimburse for those drugs based on anything but published AWPs. Nothing in the press release is relevant to these core facts. [4]

Accordingly, PX 4108 should not be admitted.

---

[4] Plaintiffs also mischaracterize the testimony of Dr. Bell on the subject of the OIG Guidelines. Dr. Bell did not testify that "contrary to the OIG guidelines, he believed that it would be proper for manufacturers to disassociate ASPs from AWPs and market the spread." See Pl. Req. for Admission at p. 2, fn. 1. Dr. Bell read from the Guidelines – which explicitly refers to the "conjunction of manipulating of the AWP . . . with active marketing of the spread" – and opined that, by contrast, a manufacturer's conduct in (a) discounting from AWP and (b) merely informing a physician of the existence of a spread, did not violate such guidance. (Day 15 Trial Tr. at 74-78.)

Conclusion

The Court should admit Defendants' Exhibits 1081, 1656, 2001 and 2969-71 and deny admission of proposed PX-4108 listed in Plaintiffs' January 4, 2007 Request for Admission of Trial Exhibits.

Dated:   Boston, Massachusetts
         January 12, 2007

        Respectfully Submitted,

By:   /s/ Jacob T. Elberg
     Thomas E. Dwyer (BBO No. 139660)
     Jacob T. Elberg (BBO No. 657469)
     **DWYER & COLLORA, LLP**
     600 Atlantic Avenue
     Boston, MA  02210
     Tel: (617) 371-1000
     Fax: (617) 371-1037
     tdwyer@dwyercollora.com
     jelberg@dwyercollora.com

     Steven M. Edwards (SE 2773)
     Lyndon M. Tretter ((LT 4031)
     Admitted *pro hac vice*
     **HOGAN & HARTSON LLP**
     875 Third Avenue
     New York, NY  10022
     Tel: (212) 918- 3000

Attorneys for Defendant Bristol-Myers Squibb Company on Behalf of All Track 1 Defendants

## CERTIFICATE OF SERVICE

I certify that on January 12, 2007 a true and correct copy of Track 1 Defendants' (1) Response to Plaintiffs' Objections to Defendants' December 19th Request For Admission Of Trial Exhibits And (2) Opposition To Plaintiffs' January 4th Request For Admission Of Trial Exhibits was served on all counsel of record by electronic service pursuant to paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis file & serve for posting and notification to all parties.

                                                                                          /s/ Jacob T. Elberg
                                                                                              Jacob T. Elberg