UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re*: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.*<br>CIVIL ACTION NO. 06-11337-PBS | Chief Mag. Marianne Bowler |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER
RELATING TO THE DEPOSITION OF GOVERNMENT COUNSEL**

The United States moves the Court to issue an order prohibiting the defendants in this case from subjecting government counsel to a deposition directed at obtaining privileged and irrelevant information. The notice from defendants requests testimony from "one of more employees of the Department of Health and Human Services ("HHS") who reviewed, approved, and/or were consulted regarding the Brief of the United States as *Amicus Curiae* submitted by the Department of Justice on behalf of the Secretary of HHS." *See* Attachment A. The brief at issue pertains to the cross motions for summary judgment filed in the multi-district litigation on the meaning of the term "Average Wholesale Price." As one would expect, the HHS personnel who fit the criteria in the deposition notice are attorneys who work in the Office of General Counsel for the Centers for Medicare and Medicaid Services ("CMS") who have been assisting the Department of Justice ("DOJ") in this litigation.

As a threshold matter, depositions of legal counsel are highly disfavored. The deposition

at issue here is clearly directed at obtaining information protected by the attorney-client and attorney work-product privileges.

## ARGUMENT

The deposition notice by Abbott seeks testimony only regarding privileged communications or matters and, moreover, pertains to issues that have already been decided by the Court.  Federal Rule of Civil Procedure 26 gives the Court broad discretion to issue orders prohibiting or limiting discovery and particularly provides that the Court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . that discovery not be had."  Fed. R. Civ. Proc. 26 (b) and (c).

The deposition of lawyers has "long been discouraged." *Shelton v. American Motors Corp.* , 805 F.2d 1323, 1327 (8th Cir. 1986);  *Broughton v. Cotter Corporation*, 65 F.3d 823, 830 (10th Cir. 1995); *Corporation for Public Broadcasting v. American Automobile Centennial Comm'n*, 1999 WL 1815561, at *2 (D.D.C. 1999) ("Depositions of opposing counsel are disfavored"); *Evans v. Atwood*, 1999 WL 1032811, at *2 (D.D.C Sept. 29, 1999); *Mike v. Dymon, Inc.*, 169 F.R.D. 376 (D. Kansas 1996); *Harriston v. Chicago Tribune Company*, 134 F.R.D. 232 (N.D. Ill. 1990); *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D. Fla. 1990); *Advance Systems, Inc. of Green Bay v. APV Baker PMC, Inc.*, 124 F.R.D. 200 (E.D. Wisc. 1989); *N. F. A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C. 1987).  "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Shelton*, 805 F.2d at 1327.  "Counsel should be free to devote his or

her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Shelton*, 805 F.2d at 1327.

Courts which have considered the issue generally follow the Eighth Circuit in requiring a party seeking to depose legal counsel to show that: (1) no other means exist to obtain the information other than deposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327; *Broughton*, 65 F.3d at 830. A trial court has the discretion under Rule 26(c) to issue a protective order against the deposition of opposing counsel "when any one or more of the three *Shelton* criteria" listed above are not met. *Broughton*, 65 F.3d at 830; *see also West Peninsular Title Co.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (party seeking deposition of attorney must overcome "presumption" against such a deposition by showing "propriety and need for deposition"). "Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26 (c) . . . protective order unless the party seeking the deposition can show both the propriety of and the need for the deposition. *N.F.A. Corp.*, 117 F.R.D. at 84.

The First Circuit has not decided whether to adopt the *Shelton* criteria. *See Carey v. Textron, Inc.*, 224 F.R.D. 530, 531 (D. Mass. 2004) (citing *Shelton* and noting that "application of the work-product doctrine to deposition of an attorney [was] an issue of first impression in the First Circuit," but that the issue did not have to be decided on the facts of that case). However, the case law indicates that attorney depositions are clearly not favored in this jurisdiction. *See MacKnight v. Leonard Morse Hosp.,* 828 F. 2d 48, 51 (1st Cir. 1987)(finding that plaintiff had not made sufficient showing to warrant proposed deposition of attorney); *Flynn v. Church of*

*Scientology Intern.*; 116 F.R.D. 1 (D. Mass. 1986) (granting protective orders in response to attorney deposition notices based on privilege and relevance concerns); *see also Diotima Shipping Corp. v. Chase, Leavitt & Co.*, 102 F.R.D. 532, 536-537 (D. Maine 1984)(same). Courts in other districts in the First Circuit have explicitly followed the *Shelton* criteria in issuing protective orders prohibiting the deposition of counsel. *See Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 209-213 (D. Puerto Rico 1998). Accordingly, the United States urges consideration of the *Shelton* criteria in this case.

Defendants cannot show that the proposed deposition meets even one of the *Shelton* criteria, much less all three.

1. <u>Other Means Exist to Obtain the Information</u>

Where the Abbott's deposition notice, on its face, is directed solely to the work of attorneys who prepared a legal brief, the United States is reluctant to suggest that such a purpose could legitimately be accomplished by other means. That said, in the event that defendants now proffer some purpose for a deposition which does not intrude on the attorney-client privilege and work-product doctrine, it is inconceivable that such a purpose could not be accomplished by other means. For example, if defendants wish to inquire about the agency's position on a particular issue, that purpose can be accomplished by the service of interrogatories.

2. <u>The Information Sought is Privileged and Irrelevent</u>

The deposition notice, on its face, seeks testimony regarding the preparation of a legal brief and, therefore, is a direct attempt to obtain information protected by privilege and doctrine. The HHS employees "who reviewed, approved, and/or were consulted regarding the Brief of the United States as Amicus Curiae" are attorneys who work at the Office of the General Counsel for

CMS.[1]  Given that the review of the *amicus* brief by CMS counsel was done in the context of litigation, the deposition will inevitably implicate the attorney work-product doctrine as well as the attorney-client privilege.  As for relevance, the deposition is an attempt to re-litigate an issue already decided by this Court.

      a.  <u>The Attorney-Client Privilege and Attorney Work-Product Doctrine</u>

Communications between DOJ attorneys and personnel at the client agency about a brief that was filed in this MDL proceeding are clearly protected by the attorney-client privilege.  *See, e.g., F.D.I.C. v. Ogden Corp.,* 202 F.3d 454, 460 (1st Cir. 2000) (the "attorney-client privilege serves important ends," one of which is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"( citations omitted).  "The privilege that attends the attorney-client relationship 'extends to all communications made to an attorney or counselor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations.'" *Id.* (internal citations omitted).  *See also, Amica Mut. Ins. Co. v. W.C. Bradley Co.,* 217 F.R.D. 79 (D. Mass. 2003)*;  Ken's Foods, Inc. v. Ken's Steak House, Inc.,* 213 F.R.D. 89 (D. Ma 2002);  *VLT Corp. v. Unitrode Corp.,* 194 F.R.D. 8 (D. Mass. 2000);  *Flynn v. Church of Scientology Intern.*; 116 F.R.D. at 3-4.  It cannot seriously be disputed that communications between lawyers at DOJ and those at the client agency relating to a legal brief filed in this MDL proceeding fall within the attorney-client privilege.  Furthermore, any analysis, research, or comments by the government's

---

[1.]  To the extent that CMS attorneys, in turn, conferred with other agency personnel, those communications also are plainly protected by the attorney-client privilege and attorney work-product doctrine.

attorneys, whether they are in the Civil Division of DOJ, the Office of the United States Attorney, or the Office of General Counsel for CMS, are protected by the work-product privilege. F.R.C.P. 26 (b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947); *United States v. Nobles*, 422 U.S. 225, 239 (1975); *Flynn v. Church of Scientology Intern.*, 116 F.R.D. at 3-4; 8 Wright & Miller, *Federal Practice and Procedure*, § 2024 (1994).

Given that the focus of the deposition notice is a legal brief prepared by attorneys and that various privileges will plainly preclude any questioning in a deposition, issuance of a protective order prior to the deposition is appropriate. *Flynn v. Church of Scientology Intern.*, 116 F.R.D. at 3-4, 6 (quashing deposition subpoenas to attorneys where requiring a "privilege to be asserted on a question-by-question basis involve[d] the possibility of the risk of disclosure").

    b. <u>The Deposition Notice Seeks Irrelevant Testimony on a Legal Issue Rendered Moot by this Court's Memorandum and Order of November 2, 2006</u>

On November 2, 2006, after almost five years of litigation, the Court issued a seminal order resolving the core issue which has been the focal point of this MDL since its inception in late 2001. The Court held that it will construe the term "Average Wholesale Price" ("AWP") according to its plain meaning. *See* 2006 WL 3102998, p. 2. Abbott served the deposition notice relating to the *amicus* brief on November 30, 2006. Prior to the Court issuing its decision, the United States, at that point as *amicus curiae*, had submitted a brief in which it argued that construing the statutory term AWP according to its plain meaning "comports with the Medicare Act and its programmatic payment objectives." The Court's Order resolving how the term AWP shall be construed plainly renders the topic referenced in Abbott's deposition notice moot.

Additionally, the issue of how the term AWP should be construed was briefed and

decided as a legal question, not a factual one. *See id.*, p. 7. Neither the Court's Order nor the Government's brief makes any mention of uncontested facts or affidavits proffered by the United States with its brief; of course, there were none. The Government's *amicus* brief addressed and argued a pure legal issue and the Court resolved the cross motions on exclusively legal grounds, ultimately finding that because the term AWP "has a plain and ordinary meaning, courts need look no further and should apply the regulation as written." *Id.* In this situation, there is simply no relevant fact discovery that can be legitimately accomplished via the proposed deposition.

In addition to holding that the term AWP will be construed according to its plain language, the Court explained that the plain meaning construction applied to the term is consistent with the Congressional purpose underlying the Medicare Act and pertinent federal statutes affecting how the Government pays for drugs. *See, e.g., id.* at 17 (noting that the legislative history "provides little support for the argument that in 1997, when Congress passed the Balanced Budget Act, Congress intended AWP to be a term of art for whatever price the industry chose to put in the industry publications"). With respect to the analysis of congressional purpose, the Court's review of the legislative and regulatory history (*see id.*, pp. 3-9) was based on the information in the public record in accordance with First Circuit law. *See e.g. United States v. Lachman*, 387 F.3d 42 (1st Cir. 2004) (with regard to the construction of a statute or regulation, "agency interpretations are only relevant if they are reflected in public documents as opposed to non-public or informal understandings of agency officials").

Therefore, even if the Court had not already ruled on the summary judgment motions, Abbott's attempt to interrogate agency personnel about their view of the arguments expressed in the *amicus* brief would be improper. The opinions or personal interpretations held by individual

agency attorneys are simply not controlling or even probative with respect to the legal issue which was the focus of the Government's brief. The fact that the Court has now ruled on the matter renders the subject covered by the deposition notice unquestionably moot. The resources of the parties should not now be diverted to re-litigating issues the Court has already decided. *See City of Waltham v. United States Postal Serv.,* 11 F.3d 235, 243 (1st Cir. 1993) (district court has broad power to control discovery and in doing so can weigh discovery burdens against likelihood of finding relevant material); *Flynn v. Church of Scientology Intern.*, 116 F.R.D. 1, 4 (D. Mass. 1986) (quashing deposition subpoena where court, *inter alia*, could not "find requisite relevance" of subject matter).

3. <u>The Testimony Sought by Defendants is not Crucial in this Case</u>

Where the testimony sought by the notice is irrelevant to any current issue in this litigation, it cannot be considered "crucial." That such a high standard pertains in this context is a clear expression of the extent to which attorney depositions are severely disfavored.

## **CONCLUSION**

The weight of authority in this district holds that deposing attorneys for the purpose of obtaining privileged and irrelevant testimony should not be allowed. That is the situation with respect to the deposition notice at issue here. The United States respectfully requests that the Court exercise its discretion under Fed. R. Civ. Proc. 26 and issue an Order directing that the deposition shall not occur.

For the United States,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3272
Fax: (617) 748-3971

 /s/ Justin Draycott
Michael F. Hertz
Joyce R. Branda
Renée Brooker
Justin Draycott
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088
Fax: (202) 307-3852

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for
 the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101


Dated: January 12, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATE'S MOTION FOR A PROTECTIVE ORDER RELATING TO THE DEPOSITION OF GOVERNMENT COUNSEL to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Date: January 12, 2007

/s/
Justin Draycott