**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT BMS'S STATEMENT WITH REGARD TO, AND DEFENDANTS SCHERING AND WARRICK'S MOTION TO STRIKE PORTIONS OF, PLAINTIFFS' EXHIBIT 4012**

On December 18, 2006, BMS Defendants filed The BMS Defendants' Statement with Regard to Plaintiffs' Exhibit 4012 ("BMS Statement") (Dkt. 3485).  BMS Defendants seek to strike portions of Plaintiffs' Exhibit 4012.  On December 22, 2006, Defendants Schering and Warrick filed Schering's and Warrick's Motion to Strike Portions of Plaintiffs' Exhibit 4012 adopting the argument set forth in the BMS Statement and seeking similar relief with respect to Plaintiffs' Exhibit 4012 ("SPW Motion") (Dkt. No. 3505).

Plaintiffs hereby respond to the BMS Statement and the SPW Motion.  Plaintiffs have complied with all orders of this Court related to the provision of "backup" data related to Exhibit 4012.  As the Court acknowledged at trial, ***Defendants have had the claims data underlying the exhibit for over a year***.  Despite the Court's direction to Defendants to analyze that data and present any evidence that the Exhibit is inaccurate, Defendants failed to do so.   Plaintiffs, with

one exception related to the reimbursement by Plaintiff Pipefitters for SPW's drug Albuterol[1],

oppose the striking of any portion of Exhibit 4012.

## I.   INTRODUCTION

In response to questions that were raised in the first week of the trial concerning the class

representatives' purchases of the drugs at issue in this case, Plaintiffs instructed Dr. Hartman to

prepare Exhibit 4012 using the claims payment data of Blue Cross Blue Shield of Massachusetts

("BCBSMA"), Pipefitters and Sheet Metal Workers ("SMW").  Dr. Hartman's office used the

same claims data that had been produced to Defendants in this case as much as a year prior to

trial.  As explained in his trial testimony, Dr. Hartman's office used that claims data to identify a

purchase of each particular drug by the particular entity related to the J-Codes at issue for each of

the years at issue. (12/11/06 Trial Tr. at 53:7-15).  Where the data indicated at least one

reimbursement under the applicable J-Code for a particular year an "X" was placed in the chart

to indicate coverage by that Plaintiff.  (12/11/06 Trial Tr. at 59:11-17, 60:6-9).  The chart also

includes color coding to denote whether and when drugs were single or multi source.  The

Exhibit was produced to Defendants on November 20, 2006.

Prior to Dr. Hartman's continued testimony on December 12, 2006, counsel for BMS

contacted Plaintiffs counsel by e-mail objecting to Exhibit 4012 for a number of bases.  BMS

Statement, Ex. A.  In trial on December 12, 2006, BMS's attorney Steven Edwards objected to

the admission of Exhibit 4012 on four separate grounds:  (1) with respect to multi-source drugs,

the X in any particular column implied that the identity of the particular manufacturer had been

determined when it had not (12/11/06 Trial Tr. at 56:7-13), (2) Dr. Hartman had not previously

---

[1] Plaintiffs concur with SPW regarding the fact that Pipefitters does not offer MediGap insurance and is not a representative of Class 2.  Because Albuterol is not a drug included in Class 3 claims, Plaintiffs concur that the last row of the last page of Exhibit 4012 related solely to Pipefitters' coverage for Schering-Plough's Albuterol is not relevant to the litigation.

2

done such an analysis in his expert reports (12/11/06 Trial Tr. at 57:11-14), (3) Dr. Hartman's

testimony was beyond the scope of cross (12/11/06 Trial Tr. at 57:23-25), and (4) that Plaintiffs

had provided no "backup" for the chart (12/11/06 Trial Tr. at 58:3-4).  The Court overruled these

objections and admitted the Exhibit with the limitation noted by Attorney Edwards regarding the

issue related to multi-source drugs.  (12/11/06 Trial Tr. at 57:2-3, 21; 58:1-2; 59:4-5).

Contrary to BMS's assertion that the Court on December 12, 2006 ordered Plaintiffs to

"show the particular data to support this," (BMS Statement p. 1), the Court accepted Plaintiffs

explanation that the "backup" for Exhibit 4012 was the claims data that Defendants had already

had for over a year.   The Court invited Defendants to analyze that data and if Defendants'

experts found it did not support Exhibit 4012 to provide testimony to that effect:

> MR. EDWARDS:  But we can't tell which of the hundreds of
> thousands of claims provided the basis for the "X"s on this chart.
> THE COURT: [to Mr. Sobol] Well, that is a rule under the
> summary provision, which is, you show the particular data that
> supports this.
> MR. SOBOL:  Well, yes, and what we've identified is that this is
> the claims data that has been provided to the defendants a year ago,
> so I don't know what more we could have done.  I mean, you go
> through the claims data.  If there's a purchase, you make an X.
> THE COURT:  [to Mr. Edwards]  Well, if you want to have your
> experts look at it and have it not be supported, you can do that, but
> right now I'm going to let it in.  [(12/11/06 Trial Tr. at 58:11-24).]

Later in Dr. Hartman's testimony concerning Exhibit 4012 SPW counsel, Michael Flynn,

raised the objection that the payments relied on for the chart with respect to SMW were not

based on AWP.  The Court overruled the objection subject to cross examination of Dr. Hartman

on the issue and a motion to limit Dr. Hartman's testimony based on it.  (12/11/06 Trial Tr. at

60:22-61:25).  Because time for Dr. Hartman's testimony was limited, during trial Defendants

reached an agreement with Plaintiffs' counsel to forgo cross examination of Dr. Hartman on the

issue as it related to SMW.  Defendants agreed to provide Plaintiffs a letter on the issue in an

attempt to resolve the issue, if possible, outside of trial.  (12/11/06 Trial Tr. at 98:23-99:3).

Defendants never provided such a letter to Plaintiffs.

On December 13, 2006 in an off-the-record discussion with the Court, again with respect

to the issue raised by attorney Flynn regarding SMW's claims, the Court directed Plaintiffs to

provide Defendants with at least one example to support each X on the chart.  SMW payment

records were maintained by SMW (and produced to Defendants) in paper form, making a search

for a particular transaction by Defendants more difficult than the search of an electronic

database.  As Defendants conceded, on December 14, 2006, Plaintiffs provided Defendants

copies of one paper claim related to each X on the chart for SMW.  BMS Statement, p. 2.

## II.     ARGUMENT

### A.     BCBSMA and Pipefitters

Defendants have misrepresented the record in this case as it relates to Exhibit 4012.

Plaintiffs have not failed to comply with any orders of this Court related to the backup for the

chart as related to BCBSMA and Pipefitters.  Contrary to BMS's assertion, and as demonstrated

by the record as quoted above, on December 11, 2006 the Court did not order Plaintiffs to

provide particular data points to support the chart as it relates to any of the Plaintiffs.   Instead,

the Court accepted that Plaintiffs had provided the data from which the chart was derived and

invited Defendants to look at that same data and offer expert testimony if they believed Exhibit

4012 to be inaccurate.  The fact that Defendants failed to take the opportunity to do so means

they now have no right to object under Fed. R. Evid. 1006.  *Frank Music Corp. v. Metro-*

*Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 n.9 (9th Cir. 1985) ("The requirements for Rule 1006

are met when the trial judge ascertains that the underlying documents are made available for

inspection . . . and this is so even if opposing counsel fails to avail himself of the opportunity to

review the documents.").

The only directive from the Court came on December 13, 2006, and was related to the chart concerning SMW and the questions raised about whether those purchases were based on AWP.  By Defendants' own admission, Plaintiffs complied with that order the next day on December 14, 2006.  BMS Statement, p. 2.

Defendants have had the data upon which the chart was based and were invited to have their experts review that data to disprove the chart and provide the Court with testimony concerning the issue and failed to do so.  There is no basis upon which to strike those portions of Exhibit 4012 related to BCBSMA or Pipefitters.  Both the BMS Statement and SPW Motion should be denied.

**B.    Sheet Metal Workers**

With respect to SMW, both BMS and SPW raise specific issues with respect to Exhibit 4012.

**1.    BMS**

Defendant BMS does not challenge the fact that SMW purchased Paraplatin in 2001, during a period when BMS was the sole source of that drug.  BMS Statement, p. 2.  BMS challenges the chart with respect to Taxol on the basis that Taxol was a multi-source drug during the time it was reimbursed by SMW.  As noted above, the Court admitted Exhibit 4012 with the understanding that, for multi-source drugs, an X in any particular column does not indicate that the specific manufacturer of the multi-source drug used was identified.  (12/11/06 Trial Tr. at 57:2-3).  The parties have previously (and exhaustively) briefed the "multi-source issue" and Plaintiffs will not repeat those arguments here.

As to Taxol and Cytoxan the chart is accurate.  BMS does not dispute the fact summarized by the chart – that SMW purchased those drugs during the period depicted on the chart.

2.      **SPW**

SPW claims that SMW's reimbursements fall outside of this Court's definition of Class 2

because the SMW reimbursements were made to a provider outside of Massachusetts.  SPW

Motion, pp 1-2.  However, the reimbursements for SPW's albuterol under SMW's MediGap plan

were made on behalf of an individual who resides in Massachusetts.  This Court, in analyzing

whether common issues predominated over individual ones, concluded that, for a class of

***consumer*** Medicare Part B beneficiaries, the most relevant factor to consider was the state of the

plaintiff's reliance.  *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61,

82 (D. Mass. 2005).  Since that time, however, this Court has made clear that choice of law

analysis should not apply to Medigap payors such as Sheet Metals, certifying a class of such

payors as follows:

> All Third-Party Payors ***who made reimbursements for drugs***
>
> ***purchased in Massachusetts, or who made reimbursements***
>
> ***for drugs and have their principal place of business in Massachusetts***,
>
> based on AWP for a Medicare Part B covered Subject Drug that was
>
> manufactured by [Track One Defendants].

*In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 223 F.R.D. 229, 231 (D. Mass.

2006) (emphasis added).  Defendants' argument ignores that this Court certified Sheet Metals as

a Class 2 representative with regard to Plaintiffs' claims against the Track One Defendants based

on Sheet Metals' reimbursements for claims of its beneficiaries who during the class period

resided in Massachusetts.  *See id.*  Nothing has changed.  SPW's motion to strike portions of

Exhibit 4012 should be rejected.

Finally, SPW's Motion also rehashes Defendants' arguments made during the parties' briefing over the testimony of Defendants' expert Eugene M. Kolassa with respect to billing and reimbursement for albuterol.  Plaintiffs will not burden the Court with further argument on those issues but refer the Court to the parties previous briefings (Dkt. Nos. 3475, 3480).

## III.   CONCLUSION

For the reasons set forth above, and with the exception noted in above regarding Pipefitters purchases of albuterol, the motions by BMS and SPW with respect to Exhibit 4012 should be denied.

DATED:  January 19, 2007

By: /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
    Hagens Berman Sobol Shapiro LLP
    One Main Street, 4th Floor
    Cambridge, MA  02142
    Telephone: (617) 482-3700
    Facsimile: (617) 482-3003

    *Liaison Counsel*

    Steve W. Berman
    Sean R. Matt
    Hagens Berman Sobol Shapiro LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496b-6611

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm LLC
740 S. Third Street, Third Floor
Philadelphia, PA  19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

***Co-Lead Counsel For Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT BMS'S STATEMENT WITH REGARD TO, AND DEFENDANTS SCHERING AND WARRICK'S MOTION TO STRIKE PORTIONS OF, PLAINTIFFS' EXHIBIT 4012** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 19, 2007 a copy to LexisNexis File & Serve for posting and notification to all parties.

By: /s/  Steve W. Berman