Document Number Case Number
051              06-C-0582-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
01/16/2007 02:03:06 PM CST

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF WISCONSIN,

    Plaintiff,

  v.

AMGEN, INC., ABBOTT LABORATORIES,
ASTRAZENECA PHARMACEUTICALS, LP,
ASTRAZENECA, LP, AVENTIS PHARMACEUTICALS, INC.,
AVENTIS BEHRING, LLC, BAXTER HEALTHCARE
CORPORATION, BEN VENUE LABORATORIES, INC.
BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM ROXANE, INC., BRISTOL-MYERS
SQUIBB CO., DEY, INC., GENEVA PHARMACEUTICALS,
INC., GLAXOSMITHKLINE, INC., IMMUNEX CORPORATION,
IVAX CORPORATION, IVAX PHARMACEUTICALS, INC.,
JANSSEN PHARMACEUTICAL PRODUCTS, LP, JOHNSON
& JOHNSON, INC., McNEIL-PPC, INC., MERCK & COMPANY,
INC., MYLAN LABORATORIES, INC., MYLAN
PHARMACEUTICALS, INC., NOVARTIS PHARMACEUTICALS
CORPORATION, ORTHO BIOTECH PRODUCTS, LP, ORTHO-
McNEIL PHARMACEUTICAL, INC., PHARMACIA, PFIZER, INC.,
ROXANE LABORATORIES, INC., SANDOZ, INC., SCHEIN
PHARMACEUTICALS, INC., SCHERING-PLOUGH CORPORATION,
SICOR, INC., SMITHKLINE BEECHAM CORPORATION, TAP
PHARMACEUTICAL PRODUCTS, INC., TEVA PHARMACEUTICALS
USA, INC., WARRICK PHARMACEUTICALS, INC., WATSON
PHARMA, INC., ZLB BEHRING,

    Defendants.

OPINION and ORDER

06-C-582-C

1

EXHIBIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil lawsuit, the State of Wisconsin contends that defendant pharmaceutical companies have violated numerous state laws and have unjustly enriched themselves by inflating the average wholesale prices of their drugs.  Originally filed in June 2004 in the Circuit Court for Dane County, Wisconsin, the case is now before this court on plaintiff's motion to remand following defendant Dey, Inc.'s third attempt at removal.  Because defendant has not met its burden of showing that it may remove this case pursuant to 31 U.S.C. § 3732(b) or that the removal is timely under 28 U.S.C. § 1446(b), plaintiff's motion to remand will be granted, as will its request for costs and attorney fees.

For the sole purpose of deciding this motion, I draw the following facts from the amended complaint attached to defendants' notice of removal and from information provided by the parties in their briefs.

ALLEGATIONS OF FACT

A.  Parties

Plaintiff State of Wisconsin is a payer under Medicaid, a joint state and federal health care entitlement program.

Defendants Amgen, Inc., Abbott Laboratories, Astrazeneca Pharmaceuticals, LP, Astrazeneca, LP, Aventis Pharmaceuticals, Inc., Aventis Behring, LLC, Baxter Healthcare

2

Corporation, Ben Venue Laboratories, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Roxane, Inc., Bristol-Myers Squibb Company, Dey, Inc., Geneva Pharmaceuticals, Inc., GlaxoSmithKline, Inc., Immunex Corporation, Ivax Corporation, Ivax Pharmaceuticals, Inc., Janssen Pharmaceutical Products, LP, Johnson & Johnson, Inc., McNeil-PPC, Inc., Merck & Company, Inc., Mylan Laboratories, Inc., Mylan Pharmaceuticals, Inc., Novartis Pharmaceuticals Corporation, Ortho Biotech Products, LP, Ortho-McNeil Pharmaceutical, Inc., Pharmacia, Pfizer, Inc., Roxane Laboratories, Inc., Sandoz, Inc., Schein Pharmaceuticals, Inc., Schering-Plough Corporation, Sicor, Inc., SmithKline Beecham Corporation, TAP Pharmaceutical Products, Inc., Teva Pharmaceuticals USA, Inc., Warrick Pharmaceuticals, Inc., Watson Pharma, Inc. and ZLB Behring are pharmaceutical manufacturers.

## B. Prescription Drug Market

The market for prescription drugs operates roughly as follows. Defendants manufacture drugs and sell them to hospitals, physicians and pharmacies, collectively known as "providers," who in essence resell the drugs to patients when the drugs are administered or prescribed. Providers pay manufacturers directly for the drugs; after a patient receives a drug, the provider is reimbursed by the patient, his insurance company or a government program such as Medicare or Medicaid, collectively known as "payers."

3

Insurance companies and government payers calculate the rates at which providers are reimbursed on the basis of a drug's "average wholesale price." Defendants set average wholesale prices for each of their drugs. These prices are compiled and published in medical compendia and are the only prices made available to providers and the public. If the price paid by a provider to the manufacturer is less than the reimbursement the provider receives from the payer, the provider retains the difference, or "spread," as profit. Because providers have substantial influence in deciding which drugs they will prescribe or administer, drug manufacturers are eager to court them. One of the ways defendants market their drugs to providers is by generating large spreads.

### C.   Alleged Pricing Fraud

Defendants have attempted to maximize the spread by publishing false and inflated average wholesale prices for their drugs. Defendants have succeeded in their unlawful pricing by concealing their scheme from plaintiff and other payers in a number of different ways. They sell their drugs to providers in a manner that hides the true price of their drugs, designate sales agreements with providers as trade secrets, charge different prices to different providers for the same drug and hide the true prices of their drugs by providing free drugs and phony grants to providers as a means of discounting the prices.

By publishing false and inflated average wholesale prices and keeping their actual

4

prices secret, defendants have harmed plaintiff, its citizens and private payers in Wisconsin. Reimbursements to pharmacies and physicians for drugs covered by Medicaid are calculated by subtracting a fixed percentage from the average wholesale prices. Thus, publication of inflated prices has caused the state to overpay for the drugs it purchases through its Medicaid program.

In addition, many Wisconsin citizens participate in Medicare, a health insurance program funded by the federal government. Medicare consists primarily of two major components, Part A and Part B. Part B is an optional program that provides coverage for some healthcare services not covered by Part A. It is supported by government funds and by premiums paid by individuals who choose to participate. Part B has a limited drug benefit. The federal government pays 80% of the allowable cost of a drug and participants are responsible for the remaining 20%. Because the allowable costs under Part B are calculated on the basis of defendants' inflated average wholesale prices, participants in Wisconsin have paid higher co-payments for their prescription drugs.

Finally, private, Wisconsin-based organizations that pay the prescription drug costs of their members have overpaid for prescription drugs. Because of the complexity of the prescription drug market, these organizations contract with Pharmacy Benefit Managers to handle their prescription drug reimbursements. Pharmacy Benefit Managers assert that they have the bargaining power needed to negotiate the price of drugs with drug manufacturers.

However, plaintiff alleges that they have used their power to obtain benefits for themselves in the form of fees and rebates paid by manufacturers. In addition, Pharmacy Benefit Managers benefit from inflated average wholesale prices because they use them to set the reimbursement rates for the private payers they represent.

### D.  Procedural History

In June 2004, plaintiff filed suit against defendants on its own behalf and in parens patriae capacity on behalf of the citizens of Wisconsin. Defendants removed the case on July 14, 2004, contending that federal jurisdiction arose under 28 U.S.C. § 1332. The case was remanded on October 7, 2004. Defendants removed it again on July 13, 2005, contending that the United States Supreme Court's decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005), established that removal was proper under 28 U.S.C. § 1331. I disagreed, and remanded the case to state court on September 29, 2005.

On September 11, 2006, the United States delivered to defendant Dey the complaint in United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc. et al., Civil Action No. 05-11084-MEL (D. Mass.), a federal qui tam action brought under the False Claims Act, 31 U.S.C. § 3729. On October 11, 2006, defendant Dey removed the case to this court.

6

Plaintiff's amended complaint consists of five counts, all arising under Wisconsin law. Counts I and II allege violations of Wis. Stat. §§ 100.18(1) and 100.18(10)(b), which prohibit making false representations with the intent to sell merchandise. Count III alleges a violation of the Wisconsin Trust and Monopolies Act, Wis. Stat. § 133.05. Count IV alleges a claim for fraud on the Wisconsin Medicaid Program, Wis. Stat. § 49.49(4m)(a)(2). Count V states a common law claim for unjust enrichment.

## OPINION

### A. Motions to "File Additional Authorities"

On November 2, November 3, and December 4, 2006, plaintiff filed motions for leave to "file additional authorities" by submitting to the court recently issued decisions by district judges in Alabama and Hawaii. Defendant Dey has opposed the motions solely on the ground that it believes "the Hawaii decision is wrongly decided and should not control" the court's decision in this case. Dkt. #44, at 1. Although I will take defendant Dey's objections into consideration, plaintiff's motions to file supplemental authority will be granted. In ruling on the motion to remand, I have considered all of the decisions brought to the court's attention by the parties after the close of briefing on the motion to remand.

### B. Motion to Stay Proceedings

Defendant Dey has moved the court to stay proceedings in this case while the Judicial Panel on Multidistrict Litigation considers whether this action and nine other similar suits brought by states against pharmaceutical companies should be transferred to the United States District Court for the District of Massachusetts. The panel has scheduled a hearing on the matter for January 25, 2007.

Plaintiff objects to defendant Dey's request for a stay, contending that a stay would serve only to delay the proceedings in this case and reward defendants for their repeated efforts to remove this case to federal court on specious grounds. As plaintiff points out, the purpose of the Judicial Panel on Multidistrict Litigation is to "transfer[] pending actions [to a single district court] upon determining that such transfers will be to the 'convenience of parties and witnesses and will promote the just and efficient conduct of such actions.'" Illinois Municipal Retirement Fund v. Citigroup, Inc., 391 F.3d 844, 852 (7th Cir. 2004) (quoting 28 U.S.C. § 1407(a)). In this case, staying a decision on plaintiff's motion to remand this case would prove inefficient and cause unnecessary delay. The court of appeals has made it clear that a district court acts well within its authority when it "rules on its own jurisdiction" during the time a case is pending before the panel. Id. ("Though some district courts stay proceedings during the interim following a conditional transfer order, this is not required where the court concludes that it lacks subject matter jurisdiction.") (internal

8

citations omitted).  Therefore, I will deny defendant Dey's motion to stay proceedings in this case and will proceed to consider the merits of plaintiff's motion to remand.

### C.  Motion to Remand

This marks the third time this lawsuit has been removed to federal court.  Having lost previous bids to remove under 28 U.S.C. § 1331 and 28 U.S.C. § 1332, defendant Dey now contends that this court has original jurisdiction under 37 U.S.C. § 3732(b).  Although plaintiff has moved for remand, defendant Dey is the party seeking federal jurisdiction and the one that bears the burden of proving this court has jurisdiction over the subject matter of this lawsuit.  Tykla v. Gerber Products Co., 211 F.3d 445, 448 (7th Cir. 2000).  In determining whether removal was proper, the court must construe the removal statute narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); People of the State of Illinois v. Kerr-McGee Corp., 677 F.2d 571, 576 (7th Cir. 1982).

The parties have raised two distinct questions with respect to whether defendant Dey has grounds for removing this lawsuit to federal court.  The first is whether 31 U.S.C. § 3732(b) confers original subject matter jurisdiction over a lawsuit brought by a state alleging solely state law claims when, as here, the federal government later files a qui tam action alleging nearly identical wrongs under the False Claims Act.  Assuming the answer to the first

9

question is "yes," the second question is whether the removal of this case is timely under 28

U.S.C. § 1446(b).


1.  Jurisdiction under § 3732(b)

Section 3732(b) states:

> The district courts shall have jurisdiction over any action brought under the
> laws of any State for the recovery of funds paid by a State or local government
> if the action arises from the same transaction or occurrence as an action
> brought under [the False Claims Act].

Few courts have wrestled with the meaning of § 3732(b).  One point, however, appears to

be undisputed:  the statute "was enacted in response to comments from the National

Association of Attorneys General and was intended to allow 'State and local governments

to join State law actions with False Claims Act actions brought in Federal district court if

such actions grow out of the same transaction or occurrence.'"  United States ex rel. Long

v. SCS Business & Technical Institute, Inc., 173 F.3d 870, 880 (D.C. Cir. 1999) (quoting

s. Rep. No. 345, 99th Cong., 2d Sess., at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 266,

5281); Hawaii v. Abbott Laboratories, Inc., — F. Supp. 2d —, 2006 WL 3456316 *5 (Dist.

Haw. Oct. 30, 2006).  However, the manner in which the statute operates is not entirely

clear.

In Long, 173 F.3d at 879-80, the Court of Appeals for the District of Columbia

Circuit suggested three possible interpretations of § 3732(b):

> [Some] courts have assumed that states can be qui tam relators . . . based on
> . . . 31 U.S.C. § 3732(b). If states are the only parties who could bring a state
> law suit to recover state funds, the argument goes, and if a state is forbidden
> by § 3730(b)(5) from intervening in another party's qui tam suit, see §
> 3730(b)(5) (providing that "[w]hen a person brings an action under this
> subsection no person other than the Government may intervene or bring a
> related action based on the facts underlying the pending action"), it seems to
> follow that the Congress which enacted § 3732(b) intended states to be qui
> tam relators under the Act. Otherwise, it is argued, the provision conferring
> jurisdiction over the state's claim under state law has little meaning. The
> legislative history lends some support to this reasoning . . . . The more obvious
> reading of § 3732(b), however, is that it authorizes permissive intervention by
> states for recovery of state funds (creating what is in effect an exception to §
> 3730(b)(5)'s apparent general bar on intervention by all other parties except
> for the United States) . . . . Or Congress might even have meant § 3732(b) to
> provide supplemental jurisdiction for a non-state relator to join a federal false
> claim action with an action to recover state funds under a state qui tam
> statute, which several states have enacted.

Not needing to choose between these competing interpretations, the court of appeals did not

do so. Nevertheless, its analysis shows that the statute's meaning is far from transparent.

None of the possible interpretations mentioned in Long applies exactly to the facts

of this case. The state of Wisconsin has not intervened in the federal qui tam action, nor

has any non-state relator attempted to do so. This case involves the application of §

3732(b) to two separate lawsuits, unrelated procedurally and connected only by the facts

upon which they rest and the defendants named in each.

Only two federal cases have addressed facts similar to those present here. Hawaii v.

11

Abbott Laboratories, Inc., — F. Supp. 2d —, 2006 WL 3457617 (D. Haw. Nov. 30, 2006);

Alabama v. Abbott Laboratories, Inc., 2006 WL 3170553 (M.D. Ala. Nov. 2, 2006)

(unpublished opinion).  Of those two opinions, only the Hawaii decision contains an

explanation of the reasoning the court employed in reaching its conclusions, therefore I will

confine my discussion to that case alone.

In Hawaii v. Abbott Laboratories, the state of Hawaii sued the same defendants the

State of Wisconsin has sued in this lawsuit, making similar allegations under Hawaii's False

Claims Act.  After the District of Massachusetts unsealed the federal qui tam action on

September 11, 2006, defendant Dey removed the Hawaii case to federal court, contending

that the qui tam action against defendants provided grounds for removal of the state lawsuit

under § 3732(b).  After a magistrate judge recommended remand, defendant Dey asked for

review in the district court. The court upheld the magistrate judge's recommendation and

remanded the case, interpreting § 3732(b) to permit removal of "a state-initiated case

founded on state law" only when

> that case may attach to a federal case that "arises from the same transaction
> or occurrence."  In other words, the state case may not be removed on its own
> merit, independent of the federal action, because removal of the state case
> "depends" on the existence of and the attachment to a similar federal case.

Id. at *5.  This interpretation is consistent with the statute's purpose, mentioned above,

which was to provide states with a means of joining their state law actions to federal actions

that are grounded in the same facts.

The parties have written at length on the issue whether § 3732(b) is a grant of original or supplemental jurisdiction.  Plaintiff contends that the statute cannot confer "original" jurisdiction, both because it does not contain the magic word "original" and because it makes jurisdiction contingent on a precedent condition.  Defendant Dey ripostes that many statutes which confer "original" jurisdiction do so without invoking the word "original" and that § 3732(b) is no different.  See, e.g., 25 U.S.C. § 345 (granting "jurisdiction" over actions involving allotment of Native American land); 33 U.S.C. § 1365(a) (granting "jurisdiction" to entertain suits under the Clean Water Act").  Moreover, defendant Dey points out, although § 3732(b) does not contain the word "original," it does not contain the word "pendent" or "supplemental" either.

Of course a statute may confer original subject matter jurisdiction even if it does not employ the phrase "original jurisdiction."  E.g., American Red Cross v. S.G., 505 U.S. 247, 248 (1992).  But when a statute does not specify the type of jurisdiction it is conveying, it is necessary to examine the purpose and construction of the statute more carefully before concluding that it authorizes federal courts to take jurisdiction where they would not otherwise do so.  The jurisdiction conferred by § 3732(b) is not easily categorized. The statute grants federal jurisdiction over an entire state law action (and not merely over pendent claims in a single lawsuit), but it makes that jurisdiction contingent on the existence

13

of a separate federal lawsuit.  Simply put, § 3732(b) appears to be something of a hybrid: it makes jurisdiction contingent on a federal claim in a related lawsuit (which looks a lot like supplemental jurisdiction), but it provides for removal of a state lawsuit even if that suit contains no federal claims of its own (a right that resembles a grant of original jurisdiction).

The State of Wisconsin could not have filed its original complaint in this case in federal court (a matter on which I ruled twice before the filing of the federal qui tam action), because the complaint alleged no federal claim.  On its own, the case was not removable and this court had no "original jurisdiction" over its subject matter.  Had the federal qui tam action been filed first, however, it is likely that Wisconsin would have been able to intervene and raise state law claims in that lawsuit, or even to join an independent lawsuit such as this one with the pending federal action.  (And of course, had Wisconsin pleaded a claim under the federal False Claims Act in its complaint, this court would have had jurisdiction over the whole lawsuit under both § 3732(b) and 28 U.S.C. §§ 1331 and 1367.)  Now the question is whether the filing of the federal qui tam action three years *after* Wisconsin initiated its purely state law-based suit is ground for removal under § 3732(b).  I find it doubtful that § 3732(b) supports such a result, but I need not make a definitive ruling on that question.  Even if the statute were to confer jurisdiction under these circumstances, defendant Dey's removal would fail because it is untimely under 28 U.S.C. § 1446(b).

14

2.  Timeliness under § 1446(b)

As I have explained during previous rounds of this removal dispute, under ordinary circumstances, a notice of removal must be filed within thirty days after defendant receives a copy of the initial pleading in the lawsuit.  28 U.S.C. § 1446(b).  There is, however, an exception to this thirty-day limit:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Id.  Defendants contend that removal is timely because the propriety of removal was made apparent first by the court order unsealing the qui tam complaint and then by the qui tam complaint itself, which defendants characterize as an "other paper."

I begin by addressing defendant Dey's assertion that the complaint in the qui tam action is an "other paper" within the meaning of § 1446(b).  As I explained at length in an order dated September 29, 2005:

> The courts are split on the question whether a decision in an unrelated case qualifies as an "order or other paper" under § 1446(b).  As plaintiff notes, the majority of courts to address the question have concluded that a decision in a case unrelated to the action for which removal is sought does not qualify as an "other paper" indicating that the action has become removable for the purpose of § 1446(b).  These courts have limited the phrase "other paper" to include only documents filed in the case for which removal is sought.

> Defendants argue that this limiting construction is improper because it does not appear in the plain language of the statute. Although correct as a technical matter, defendants' argument ignores the well established principle that statutory language draws its meaning from the context in which it is used. Section 1446(b) refers to "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper." Inclusion of the concept of receipt through service and the words "pleading" and "motion" suggest that it is reasonable to limit the phrase "other paper" to documents generated in the case for which removal is sought.

Wisconsin v. Abbott Laboratories, 390 F. Supp. 2d 815, 824 (W.D. Wis. 2005) (internal citations omitted). Defendant Dey argues, as it did in 2005, that in Doe v. American Red Cross, 14 F.3d 196 (3d Cir. 1993) and in Green v. R.J. Reynolds, 274 F.3d 263 (5th Cir. 2001), the Courts of Appeals for the Third and Fifth Circuits held that a document filed in a separate case may qualify as an "order or other paper" justifying an otherwise untimely removal. That is not quite true.

The facts of Doe bear repeating. Like many others pending in the early 1990s, that case involved a suit by individuals who alleged they had contracted human immunodeficiency virus from blood transfusions as a result of negligence on the part of the Red Cross. Doe was pending in state court at the time the United States Supreme Court issued its decision in American National Red Cross v. S.G., 505 U.S. at 247, in which the Court held that "the Red Cross charter[] . . . should be read to confer [federal] jurisdiction . . . over all cases to which the Red Cross was party," thereby resolving a long-standing debate about whether such suits could be removed to federal court. Within thirty days of

16

the S.G. decision, the Red Cross removed the Doe case to federal court, contending that the Supreme Court's decision constituted an order that justified removal under § 1441(b).

Although the court agreed that the decision in the unrelated S.G. case did justify removal, the court noted:

> We take an extremely confined view of this case and our holding is equally narrow . . . [A]n order, as manifested through a court decision, must be sufficiently related to a pending case to trigger Section 1446(b) removability. We believe that an order is sufficiently related when, as here, the order in the case came from a court superior in the same judicial hierarchy, was directed at a particular defendant and expressly authorized that same defendant to remove an action against it in another case involving similar facts and legal issues.

Doe, 14 F.3d at 200.

In this suit, the defendants are identical to those named in the federal qui tam action, the action but was issued from a court that was not superior and the order did not "expressly authorize" the removal of this action.  Consequently, Doe is inapposite.

Green is distinguishable on different grounds.  In that case, the Court of Appeals for the Fifth Circuit held that a decision in a closely related case could justify removal under § 1446(b) when the decision was that claims permitted previously in state court were preempted by federal law and could be brought only in federal court.  Green, 274 F.3d at 268.  As in Doe, the court in Green emphasized the "very narrow circumstances" and "limited parameter" within which an order in an unrelated action may justify removal.

17

Unlike the appellate decision at issue in <u>Green</u> that effectively barred the plaintiffs' lawsuit entirely, the federal <u>qui tam</u> action does not affect the viability of the claims plaintiff is raising in state court. Although defendant Dey would clearly prefer a federal forum, it will be able to litigate this case fully in state court. Because neither the order unsealing the <u>qui tam</u> complaint nor the complaint itself falls into the narrow exception carved out by <u>Doe</u> and <u>Green</u>, defendant Dey's removal is untimely under § 1446(b).

3. <u>Removal under 28 U.S.C.  § 1331</u>

One final point. In the middle of its brief, defendant Dey returns briefly to the argument this court rejected in 2005, which is that removal is proper under 28 U.S.C. § 1331. For all of the reasons set out in <u>State of Wisconsin v. Abbott Laboratories</u>, 390 F. Supp. 2d 815, 820-821 (W.D. Wis. 2005), I disagree.

E. <u>Sanctions, Fees and Costs</u>

Plaintiff has asked the court to sanction defendant Dey for its attempt to remove this case in any untimely fashion. Although I have concluded that removal was improper, I do not believe that the arguments put forth by defendant Dey were so frivolous and unjustified as to warrant sanctions. Therefore, I will deny this request.

In addition to its request for sanctions, plaintiff requests an award of costs and fees.

18

In <u>Martin v. Franklin Capital Corp.</u>, 126 S. Ct. 704 (2005), the Supreme Court examined

the language of 28 U.S.C. § 1447(c) to determine whether it supported a presumption in

favor of awarding attorney fees to a party who has successfully obtained remand of a case

from federal to state court.   The Court held that the statute did not indicate that fees

"should either usually be granted or usually be denied."   <u>Id.</u> at 710.   The Court emphasized

that through the removal statute, "Congress granted a right to a federal forum to a limited

class of state-court defendants" and that "there is no reason to suppose Congress meant to

confer a right to remove, while at the same time discouraging its exercise in all but obvious

cases."   <u>Id.</u> at 711.   For this reason, the Court held that

> [t]he appropriate test for awarding fees under § 1447(c) should recognize the
> desire to deter removals sought for the purpose of prolonging litigation and
> imposing costs on the opposing party, while not undermining Congress' basic
> decision to afford defendants a right to remove as a general matter, when the
> statutory criteria are satisfied.

<u>Id.</u>

In this case, after two previous unsuccessful attempts to remove this case, defendant

Dey sought to remove for a third time, relying on a theory of questionable merit, knowing

full well that under this court's interpretation of § 1447(b), neither the <u>qui</u> <u>tam</u> complaint

nor the order unsealing it could qualify as grounds for timely removal in this case. Defendant

Dey's argument in defense of its timeliness has been rejected by every court to consider it,

including now this one.   Consequently, I cannot help but conclude that defendant Dey

removed the case without an objectively reasonable ground for doing so, for the purpose of prolonging litigation or increasing plaintiff's costs in prosecuting the case.  Therefore, plaintiff's request for reimbursement of costs and attorney fees will be granted.


ORDER

IT IS ORDERED that

1.  Defendant Dey, Inc.'s motion to stay consideration of plaintiff State of Wisconsin's motion to remand is DENIED;

2.  Plaintiff's motions to "file additional authority" are GRANTED;

3.  Plaintiff's motion to remand is GRANTED and this case is REMANDED to the Circuit Court for Dane County, Wisconsin;

4.  Plaintiff's request for reimbursement of costs and attorney fees under 28 U.S.C. § 1447(c) is GRANTED;

5.  Plaintiff may have until January 31, 2007, in which to submit an itemization of the actual expenses, including costs and attorney fees, it incurred in responding to defendants' removal;

6.  Defendant Dey may have until February 14, 2007, in which to file an objection to any itemized costs and fees;

7.  The clerk of court is directed to return the record in case number 05-C-408-C to

the Circuit Court for Dane County, Wisconsin.

Entered this 16th day of January, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge