JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 1 9 2007

FILED
CLERK'S OFFICE

*DOCKET NO. 1456*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION*

*Commonwealth of Kentucky ex rel. v. Warrick Pharmaceuticals Corp., et al.,*
E.D. Kentucky, C.A. No. 3:06-69

*ORDER LIFTING STAY OF CONDITIONAL TRANSFER ORDER AND VACATING THE JANUARY 25, 2007 HEARING SESSION*

A conditional transfer order was filed in this action *(Kentucky)* on November 8, 2006. Prior to expiration of that order's 15-day stay of transmittal, plaintiff in *Kentucky* filed a notice of opposition to the proposed transfer and the subsequent motion and brief to vacate the conditional transfer order. Plaintiff has now advised the Panel that it withdraws its initial opposition to the conditional transfer order.

IT IS THEREFORE ORDERED that the stay of the Panel's conditional transfer order designated as "CTO-33" filed on November 8, 2006, is LIFTED insofar as it relates to this action. The action is transferred to the District of Massachusetts for inclusion in the coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 being conducted by the Honorable Patti B. Saris.

IT IS FURTHER ORDERED that the Hearing Session Order and the attached Schedule filed on December 14, 2006, are VACATED insofar as they relate to this action.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

EXHIBIT

A

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
*United States District Court*
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C.  20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888

http://www.jpml.uscourts.gov

January 19, 2007

```
RECEIVED
JAN 2 2 2007
OFFICE OF THE
ATTORNEY GENERAL
```

TO INVOLVED COUNSEL

Re:  MDL-1456 -- In re Pharmaceutical Industry Average Wholesale Price Litigation

*Commonwealth of Kentucky ex rel. v. Warrick Pharmaceuticals Corp., et al.,*
E.D. Kentucky,  C.A. No. 3:06-69

Dear Counsel:

For your information, I am enclosing a copy of an order filed today by the Panel in the above-captioned matter.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By _____
Regina Hale
Calendar Clerk

Enclosure

JPML Form 34B

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
CIVIL ACTION NO. 03-CI-1135
DIVISION II

COMMONWEALTH OF KENTUCKY,                                    PLAINTIFF
EX. REL. ALBERT B. CHANDLER III, ATTORNEY GENERAL

FILED
OCT 1 4 2003
FRANKLIN CIRCUIT CLERK
JANICE MARSHALL  CLERK

vs.                          **AMENDED COMPLAINT**

WARRICK PHARMACEUTICALS CORPORATION                          DEFENDANT

Serve:      Corporation Trust of Nevada
            6100 Neil Road; STE 500
            Reno, NV 89511
            via Kentucky Secretary of State
            Pursuant to KRS 454.210

SCHERING-PLOUGH CORPORATION                                  DEFENDANT

Serve:      Joseph J. Larosa
            200 Galloping Hill Road
            Kenilworth, NJ 07033
            via Kentucky Secretary of State
            Pursuant to KRS 454.210

SCHERING CORPORATION                                         DEFENDANT

Serve:      Joseph J. Larosa
            200 Galloping Hill Road
            Kenilworth, NJ 07033
            via Kentucky Secretary of State
            Pursuant to KRS 454.210

DEY, INC.                                                    DEFENDANT

Serve:      Pamela R. Marrs
            2751 Napa Valley Corporate Drive
            Napa, CA 94558
            via Kentucky Secretary of State
            Pursuant to KRS 454.210

EXHIBIT
B

A Copy Attest

Clerk, Franklin Circuit Court

Comes the Plaintiff, Commonwealth of Kentucky, by its Attorney General, Albert B. Chandler III, and for its Complaint against the Defendants Warrick Pharmaceuticals Corporation, Schering-Plough Corporation, Schering Corporation and Dey, Inc. (hereafter the "Defendants"), alleges as follows:

## I. INTRODUCTION

1. The Defendants have engaged in fraudulent, unfair, false, misleading and deceptive acts and practices in the pricing and marketing of their prescription drug products. The Defendants' fraudulent pricing and marketing of their prescription drugs, including, but not limited to those identified in Exhibit 1, have impacted elderly, disabled and poor Kentucky citizens covered by the Commonwealth of Kentucky's Medicaid program (hereafter "Kentucky Medicaid") and Federal Medicare program (hereafter "Medicare"), by causing the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries to pay grossly excessive prices for the Defendants' prescription drugs.

2. Fair pricing of prescription drugs is of paramount concern to the Commonwealth of Kentucky and its citizens. The exponential increase in prescription drug costs in recent years has contributed to a health care crisis within the Commonwealth of Kentucky that requires action to ensure fair dealing between the Defendants and the Kentucky Medicaid program covering senior citizens, the disabled, the poor, and Kentucky Medicare, Part B beneficiaries.

3. Plaintiff, Commonwealth of Kentucky, by its Attorney General, Albert B. Chandler III, seeks to permanently enjoin the Defendants from continuing to engage in fraudulent, unfair, false, misleading and deceptive drug pricing acts and practices, to recover damages and/or restitution on behalf of the Commonwealth of Kentucky,

damages and/or restitution on behalf of Kentucky Medicare, Part B beneficiaries, and to impose civil penalties and punitive damages against the Defendants for their fraudulent, illegal and erroneous pricing and marketing practices.

## II. PARTIES

4. Plaintiff, Albert B. Chandler III, is the duly elected Attorney General of the Commonwealth of Kentucky and is authorized pursuant to Kentucky Revised Statutes (KRS) Chapter 15.060, Chapter 367, and Kentucky common law, including the Attorney General's parens patriae authority, to bring this action on behalf of the Commonwealth of Kentucky and its citizens.  The Attorney General has determined that these proceedings are in the public interest.

5. Defendant Warrick Pharmaceuticals Corporation, ("Warrick") is a Delaware corporation with its principal places of business in Reno, Nevada and Kenilworth, New Jersey.  Warrick is a wholly owned subsidiary of Schering-Plough Corporation.  At all relevant times material to this action, Warrick transacted business in the Commonwealth of Kentucky by, including, but not limited to, the marketing, distribution and selling of pharmaceutical drug products, directly or indirectly, to wholesalers, retailers, Medicaid providers and Medicare, Part B beneficiaries in the Commonwealth of Kentucky.

6. Defendant, Schering-Plough Corporation ("Schering-Plough") is a corporation organized under the laws of New Jersey with its principal offices in Madison, New Jersey.  At all times material to this civil action, Schering-Plough and its subsidiaries have transacted business in the Commonwealth of Kentucky by, including, but not limited to, the marketing, distribution and selling of pharmaceutical drug products, directly or indirectly, to purchasers in the Commonwealth of Kentucky, including, but not

3

limited to Kentucky Medicaid providers and Medicare, Part B beneficiaries in the Commonwealth of Kentucky.

7. Defendant Schering Corporation, ("Schering") is a New Jersey corporation with its principal offices located at 1 Giralda Farms, P.O. Box 1000, Madison, New Jersey 07940.

8. Defendant Dey, Inc., ("Dey"), formerly known as Dey Laboratories, Inc., is a Delaware corporation with its principal place of business in Napa, California. At all times material to this action, Dey transacted business in the Commonwealth of Kentucky by, including, but not limited to, the marketing, distribution and selling of pharmaceutical drug products to consumers in the Commonwealth of Kentucky.

## III.  JURISDICTION AND VENUE

9. This Court has jurisdiction over the Plaintiff, Commonwealth of Kentucky's claims as they involve claims arising exclusively under Kentucky statutes, Kentucky common law and the parens patriae authority of the Attorney General to act on behalf of the Commonwealth of Kentucky and its citizens. The Defendants have failed to designate an agent to receive service of process within the Commonwealth of Kentucky. Therefore, pursuant to KRS 454.210 (3)(a), service of process may be made upon the Kentucky Secretary of State, who shall be deemed to be the statutory agent of the Defendants.

10. Venue is proper in Franklin County, Kentucky, pursuant to KRS 452.460 because the injuries to the Plaintiff occurred in Franklin County, Kentucky, and pursuant to 367.190 (1) because the unlawful method, acts and/or practices of the Defendants were committed in Franklin County, Kentucky.

4

## IV. FACTUAL BACKGROUND

### A. Government Health Plans

#### 1. The Kentucky Medicaid Program

11. The Kentucky Medicaid program is a joint state and federal program which pays for medical care, including prescription drug benefits, for Kentucky's poor citizens. Medicaid currently covers approximately 669,000, or one (1) in six (6), Kentuckians. Twenty percent (20%) of Kentucky's entire state budget goes to the Medicaid program. Prescription drug benefits are the largest component of the Kentucky Medicaid budget. Since 1995, the total annual cost of prescription drugs to Kentucky Medicaid has increased approximately 300% from total annual costs of $237,102,055 in 1995 to a $693,529,535 for fiscal year 2002. Kentucky consistently ranks near the top nationally in the number of prescriptions obtained per person annually. The number of Kentuckians covered by Medicaid and the costs associated with providing care for them continue to increase annually, while the Kentucky Medicaid Program's ability to keep pace with these increases has been diminished due to state budget shortfalls.

12. The Kentucky Medicaid program is administered by the Kentucky Cabinet for Health Services. Kentucky Medicaid reimburses medical providers ("providers"), including pharmacists and physicians, and otherwise pays for covered drugs dispensed and administered to Medicaid recipients pursuant to statutory formulas.

13. KRS 205.560 and Kentucky Administrative Regulations 907 KAR 1:018 establish the formulas used by Kentucky Medicaid to reimburse providers for

5

prescription drugs dispensed or administered to Medicaid recipients by Kentucky Medicaid providers.

14. At all times material hereto prior to April 1, 2003, pursuant to 907 KAR 1:021, Kentucky Medicaid reimbursed providers the lesser of (a) The Federal maximum allowable cost (FMAC), plus a dispensing fee, (b) average wholesale price ("AWP") of the drug minus 10%, plus a dispensing fee, or (c) usual and customary billed charges. On April 1, 2003, 907 KAR 1:018E became effective, replacing 907 KAR 1:021. It provides reimbursement to Kentucky Medicaid providers at the lesser of (a) The federal upper limit, (b) State maximum allowable cost, plus a dispensing fee, (c) AWP minus 12%, plus a dispensing fee, or (d) usual and customary billed charges.  Many state Medicaid programs use similar reimbursement formulas based upon AWP.

15. Upon information and belief, at all relevant times material to this action, the Defendants were aware of the Commonwealth of Kentucky's Medicaid drug reimbursement formulas.

## 2. Medicare

16. Medicare is a health insurance program created by the federal government for the elderly, disabled and other eligible persons. 42 U.S.C. 1395, et. seq. Individuals become eligible for Medicare health insurance benefits when they turn 65 years of age. There are two major components of the Medicare Program, Part A and Part B.

17. Medicare Part B is an optional program that provides coverage for some healthcare services for Kentucky's participating elderly, disabled and other eligible citizens not covered by Part A. 42 U.S.C. 1395j through 1395w-4. Medicare Part B is

6

supported by government funds and premiums paid by eligible individuals who choose to participate in the program.

18. Medicare Part B pays for a portion of the cost of prescription drugs, generally those drugs which are administered by a physician provider.

19. For prescription drugs covered by Part B, Medicare calculates the "allowable amount," the amount that Medicare will pay, based upon the formula set forth in 42 C.F.R. 405.517, which is the lower of the actual charge or 95% of the national AWP of the drug or biological. Medicare then pays eighty percent (80%) of the allowable amount. The remaining 20% is paid by the Medicare beneficiary as a co-payment amount. In addition, Medicare, Part B beneficiaries are required to pay an annual deductible amount before Part B benefits are payable.

20. Upon information and belief, at all relevant times to this action, the Defendants were aware of the Medicare program's Part B drug reimbursement formulas.

## B. The Defendants' Reporting of Inflated AWP information

21. Upon information and belief, at all relevant times material to this action the Defendants knowingly, willfully and intentionally provided false and inflated AWP and other pricing information for their drugs, including, but not limited to, those in Exhibit 1, to various nationally known pharmaceutical price reporting services, including First Data Bank, a/k/a Blue Book, Medical Economics Co., Inc., a/k/a Red Book, and Medispan.

22. Upon information and belief, First Data Bank, a/k/a Blue Book, Medical Economics Co., Inc., a/k/a Red Book, and Medispan do not independently determine the Defendants' drug AWP information. The Defendants provide the AWP pricing information on their drug products, or other pricing information from which the AWP is

7

derived, to the reporting services, which then publish the prices, or provide the pricing information to entities such as wholesalers whom the Defendants know will supply the information to the reporting services.

23. At all relevant times material to this action Kentucky Medicaid purchased the Defendants' published AWP pricing information from nationally recognized pharmaceutical price reporting services, including First Data Bank and Medispan.

24. Upon information and belief, the Defendants also provided AWP and other pricing information directly to Kentucky Medicaid.

25. At all relevant times material to this action Kentucky Medicaid, and Medicare, Part B beneficiaries relied upon the AWP and other pricing information provided by the Defendants to nationally known price reporting services in determining the amount Kentucky Medicaid reimburses providers, and the amount of the 20% co-payment Medicare, Part B beneficiaries were required to pay for Part B covered drugs.

26. Upon information and belief, at all relevant times material to this action, the Defendants were aware that Kentucky Medicaid and Medicare, Part B beneficiaries relied upon the Defendants' AWP and other pricing information, as provided by the Defendants to the various price reporting agencies, including First Data Bank, to determine the amounts it reimbursed to providers for covered prescription drugs and the amount of the 20% co-payment Medicare, Part B beneficiaries were required to pay for Part B covered drugs.

27. The Defendants had a Kentucky common law and Kentucky statutory duty to report pricing information which the Defendants knew fairly and reasonably reflected the prices in the marketplace.

8

28. Upon information and belief, the Defendants knowingly, willfully, and intentionally concealed their drugs' true AWP and other pricing information from Kentucky Medicaid and Kentucky Medicare, Part B beneficiaries.

29. Upon information and belief, the Defendants' false and inflated reporting of AWP drug pricing information greatly exceeded the actual prices at which the Defendants and/or other sellers sold their drugs to Kentucky Medicaid providers.

30. Upon information and belief, at all relevant times material to this action, the Defendants' reported AWP bears no relation to any price, much less an average wholesale price.

C. **The Defendant's Marketing of the "Spread"**

31. Upon information and belief, the Defendants commonly refer to the difference between the reported AWP pricing information and the actual price of a drug as the "spread", "return to practice", or "return on investment."

32. Upon information and belief, the Defendants knowingly, willfully, and intentionally created a "spread" on their drugs, and marketed the "spread" on their drugs with the intent of inducing Kentucky Medicaid providers to purchase and prescribe their drugs rather than competitors' drugs, thereby increasing the profit of Kentucky Medicaid providers and the market share and profits of the Defendants, at the expense of the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries.

33. Upon information and belief, the Defendants manipulated and controlled the size of the "spread" on their drugs by increasing their reported AWP and other pricing information, while decreasing their actual sale price to wholesalers and providers over time.

34.  Upon information and belief, in addition to manipulating the reported AWP and other pricing information, the Defendants used free goods, educational grants and other incentives to induce providers to purchase their drugs, all of which lowered the actual prices of the Defendants' drugs, resulting in increased profits for providers, as well as market share and profits of the Defendants, at the expense of the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries.

35.  Exhibits 2 and 3 attached to this Complaint provide examples of Dey's false and inflated AWP pricing information and the impact of the reported AWP information on the "spread."

36.  Exhibits 4 and 5 attached to this Complaint provide examples of Warrick's false AWP pricing information and the impact of the reported AWP information on the "spread."

D. **Damages to the Kentucky Medicaid Program**

37.  The fraudulent practices engaged in by the Defendants in creating and reporting false and inflated AWP or other pricing information for their drugs, or otherwise concealing actual pricing information, and marketing the "spread" on their drugs as an inducement to providers to utilize Defendants' drugs, has resulted in the Commonwealth of Kentucky paying millions of dollars in excess Medicaid payments, while at the same time enriching the Defendants with excessive, unjust and illegal profits.

E. **Damages to Kentucky Medicare, Part B beneficiaries**

38.  The fraudulent practices engaged in by the Defendants in creating and reporting false and inflated AWP pricing information for their drugs, concealing actual pricing information and marketing the "spread" on their drugs as an inducement to

providers to utilize or otherwise administer Defendants' drugs, has resulted in Kentucky's

Medicare, Part B beneficiaries, many of whom are elderly and/or disabled, paying

excessive co-payments for covered drugs.

39.  The fraudulent practices engaged in by the Defendants in creating and

reporting false and inflated AWP pricing information for their drugs, concealing actual

pricing information and marketing the "spread" on their drugs as an inducement to

providers to prescribe or administer Defendants' drugs, in some cases have caused the

20% co-payment paid by Kentucky Medicare, Part B beneficiaries to exceed the total

actual cost of the drug to the provider.

## V.  CLAIMS
### COUNT I
### ACTION TO RECOVER MONEY
### DUE COMMONWEALTH PURSUANT TO KRS 15.060

40.  Plaintiff hereby incorporates by reference paragraphs 1 through 39.

41.  KRS 15.060 (2) provides the Attorney General shall:  "When he believes that

any fraudulent, erroneous or illegal fee bill, account, credit, charge or claim has been

erroneously or improperly approved, allowed or paid out of the Treasury to any person,

institute the necessary actions to recover the same."

42.  The Defendants have caused fraudulent, erroneous and/or illegal claims to be

paid out of the Kentucky State Treasury by (a)  reporting  false and inflated AWP pricing

information on their drugs, including, but not limited to, those drugs in Exhibit 1,  to

reporting services relied upon by the Kentucky Medicaid program for reimbursement of

Kentucky Medicaid providers, while at the same time concealing actual AWP pricing

information, (b)  marketing the "spread" between the actual costs of the drugs and the

11

reported AWP pricing information to Kentucky Medicaid providers to induce the use of

Defendants' drugs, and thereby (c) obtaining excessive, unjust and illegal profits.

43. As a direct result of the Defendants' actions, Defendants have caused

damages to the Kentucky Treasury and Kentucky Medicaid through the payment of

grossly excessive prices for the Defendants' prescription drugs.

**COUNT II**
**PER SE VIOLATION OF THE KENTUCKY**
**CONSUMER PROTECTION ACT KRS 367.170**
**VIOLATION OF KENTUCKY MEDICAID FRAUD STATUTE, KRS 205.8463 (4)**

44. Plaintiff hereby incorporates by reference paragraphs 1 through 43.

45. KRS 205.520 (2) provides: "The General Assembly of the Commonwealth of

Kentucky recognizes and declares that it is an essential function, duty, and responsibility

of the state government to provide medical care to its indigent citizenry; and it is the

purpose of KRS 205.510 to 205.630 to provide such care."

46. KRS 205.8463 (4) provides: "No person shall, in any matter within the

jurisdiction of the Cabinet for Health Services under this chapter, knowingly falsify,

conceal, or cover-up by any trick, scheme, or device a material fact, or make any false,

fictitious, or fraudulent statement or representation, or make or use any false writing or

document knowing the same to contain any false, fictitious, or fraudulent statement or

entry."

47. KRS 205.8463 is designed to protect the Commonwealth of Kentucky, to

protect the quality of health care of Kentucky's poor citizens and the investment of the

Kentucky public in the health care of its poor citizens.

12

48.  KRS 367.170 (1) provides: "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

49.  The Defendants violated KRS 205.8463, and thereby committed per se violations of KRS 367.170 by, including, but not limited to, knowingly and willfully (a)  engaging in a scheme to falsify the true AWP of their drugs, including, but not limited to, those drugs in Exhibit 1, (b)  reporting  false and inflated AWP pricing information on their drugs to reporting services relied upon by the Kentucky Medicaid program for reimbursement of Kentucky Medicaid providers, while at the same time concealing actual AWP pricing information, (c)  marketing the "spread" between the actual costs of the drugs and the reported AWP pricing information to Kentucky Medicaid providers to induce the use of Defendants' drugs, and thereby (d)  obtaining excessive, unjust and illegal profits.

50.  As a direct result of the Defendants' per se violations of KRS 367.170 resulting from violations of KRS 205.8463 (4), Defendants have caused damages to the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries through the payment of grossly excessive prices for the Defendants' prescription drugs.

## COUNT III
### PER SE VIOLATION OF THE KENTUCKY
### CONSUMER PROTECTION ACT KRS 367.170
### VIOLATION OF KENTUCKY FALSE ADVERTISING STATUTE-KRS 517.030

51.  Plaintiff hereby incorporates by reference paragraphs 1 through 50.

52.  KRS 517.030 provides that:  "A person is guilty of false advertising when, in connection with the promotion of the sale of or to increase the consumption of property

or services, he knowingly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons."

53. In KRS 517.030 the Kentucky General Assembly has evinced a public policy designed to protect the public from persons who use false and misleading statements to increase the sale or consumption of their products.

54. KRS 367.170 (1) provides that "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

55. The Defendants violated KRS 517.030, and thereby committed per se violations of KRS 367.170, by knowingly and willfully reporting false, misleading and inflated AWP pricing information on its drug products to national reporting services, while at the same time concealing actual AWP pricing information.  The reporting services in turn published the Defendants' AWP information to substantial numbers of persons, including, but not limited to, the Kentucky Medicaid program, in connection with promotion of the sale of or to increase the consumption of Defendants' prescription drugs.

56. As a direct result of the Defendants' per se violations of KRS 367.170 resulting from violations of KRS 517.030, Defendants have caused damages to the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries through payment of grossly excessive prices for the Defendants' prescription drugs.

## COUNT IV
## VIOLATION OF THE KENTUCKY
## CONSUMER PROTECTION ACT-KRS 367.170

57. Plaintiff hereby incorporates by reference paragraphs 1 through 56.

14

58. KRS 367.170 (1) provides: "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

59. The Defendants have committed violations of KRS 367.170 by willfully (a) engaging in a scheme to falsify the true AWP of its drugs, including, but not limited to, those drugs in Exhibit 1, (b) reporting false and inflated AWP pricing information on their drugs to reporting services relied upon by the Kentucky Medicaid program for reimbursement of Kentucky Medicaid providers, while at the same time concealing actual AWP pricing information (c) marketing the "spread" between the actual costs of the drugs and the reported AWP pricing information to Kentucky Medicaid providers to induce the use of Defendants' drugs, and thereby (d) obtaining excessive, unjust and illegal profits.

60. As a direct result of Defendants' violations of KRS 367.170, Defendants have caused damages to the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries through the payment of grossly excessive prices for the Defendants' prescription drugs.

## COUNT V
## VIOLATIONS OF KENTUCKY
## MEDICAID FRAUD STATUTE-KRS 205.8463 (4), KRS 446.070

61. Plaintiff hereby incorporates by reference paragraphs 1-60.

62. KRS 205.8463 (4) provides: "No person shall, in any matter within the jurisdiction of the Cabinet of Health Services under this chapter, knowingly falsify, conceal, or cover-up by any trick, scheme, or device a material fact, or make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or

15

document knowing the same to contain any false, fictitious, or fraudulent statement or entry."

63.  KRS 446.070 provides that: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

64.  The Defendants violated KRS 205.8463 (4) by including, but not limited to knowingly (a) engaging in a scheme to falsify the true AWP of its drugs, including, but not limited to, those drugs in Exhibit 1, (b) reporting false and inflated AWP pricing information on their drugs to reporting services relied upon by the Kentucky Medicaid program for reimbursement of Kentucky Medicaid providers, while at the same time concealing actual pricing information, (c) marketing the "spread" between the actual costs of the drugs and the reported AWP pricing information to Kentucky Medicaid providers to induce the use of Defendants' drugs, and thereby (d) obtaining excessive, unjust and illegal profits.

65.  As a direct result of the Defendants' violations of KRS 205.8463 (4), Defendants have caused damages to the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries through the payment of grossly excessive prices for the Defendants' prescription drugs.

## COUNT VI
## VIOLATIONS OF KENTUCKY
## FALSE ADVERTISING STATUTE-KRS 517.030, KRS 446.070

66.  Plaintiff hereby incorporates by reference paragraphs 1-65.

67.  KRS 517.030 provides that: "A person is guilty of false advertising when, in connection with the promotion of the sale of or to increase the consumption of property

16

or services, he knowingly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons."

68. KRS 446.070 provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

69. The Defendants violated KRS 517.030, by knowingly reporting false, misleading and inflated AWP pricing information on its drug products to national reporting services, while at the same time concealing actual pricing information. The reporting services in turn published the Defendants' AWP information to substantial numbers of persons, including, but not limited to, the Kentucky Medicaid program, in connection with the promotion of the sale of or to increase the consumption of Defendants' prescription drugs, including, but not limited to, those identified in Exhibit 1.

70. As a direct result of the Defendants' violations of KRS 517.030, Defendants have caused damages to the Kentucky Medicaid program and Kentucky Medicare, Part B beneficiaries through the payment of grossly excessive prices for the Defendants' prescription drugs.

**COUNT VII**
**COMMON LAW FRAUD**

71. Plaintiff hereby incorporates by reference paragraphs 1 through 70.

72. In Kentucky an action for common law fraud may be had where the Defendant makes (a) a material representation, (b) which is false, (c) known to be false or made recklessly, (d) with inducement to be acted upon, (e) where the plaintiff acted in reliance thereon and, which (f) causes injury to the plaintiff.

17

73. The Defendants committed common law fraud by including, but not limited to, (a) reporting false AWP or other pricing information concerning their drugs to national pharmaceutical reporting services, including First Data Bank, (b) knowing that the AWP or other pricing information was false, and otherwise concealing actual AWP pricing information, (c) knowing that the Kentucky Medicaid program and Medicare, Part B beneficiaries would rely on the false AWP or other pricing information in reimbursing Kentucky Medicaid providers and in the payment of co-payments, respectively, (d) which information was relied upon Kentucky Medicaid and Medicare, Part B beneficiaries in reimbursing Kentucky Medicaid providers and in the payment of co-payments, respectively, and thereby (e) caused damages to Kentucky Medicaid and Kentucky Medicare, Part B beneficiaries through the payment of grossly excessive prices for the Defendants' prescription drugs.

74. By engaging in the acts and practices described above, the Defendants have engaged and continue to engage in repeated fraudulent acts and practices in violation of the Kentucky common law.

## COUNT VIII
## PROMISSORY ESTOPPEL

75. Plaintiff hereby incorporates by reference paragraphs 1-74.

76. The Defendants, through their agents and employees, represented they were providing true AWP or other pricing information concerning their drugs to national pharmaceutical reporting services with knowledge or reasonable expectation that the false representations would be relied upon by (a) the Kentucky Medicaid program and, (b) Medicare, Part B beneficiaries.

18

77.  In making these representations the Defendants knew or should have known the Plaintiff would be induced to its detriment to reimburse Medicaid providers, and that Medicare, Part B beneficiaries would be induced to pay higher co-payments, in reliance thereupon.

78.  The Defendants made false representations of AWP or other pricing information concerning their drug products to nationally known pharmaceutical price reporting services, including First Data Bank, a/k/a Blue Book.

79.  The Plaintiff and Kentucky Medicare, Part B beneficiaries reasonably relied upon the false representations as set forth in this complaint and were induced by those representations to reimburse Medicaid providers at a cost substantially above the average wholesale price paid for the medication, and pay higher co-payments, respectively.

80.  As a proximate result of the Defendants' false representation of AWP or other pricing information, the Plaintiff and Medicare, Part B beneficiaries relied upon said representations to their detriment, and suffered and continue to suffer damages due to excess reimbursement and excessive co-payments to providers for medications manufactured by the Defendants.

## VII. THE COURT SHOULD DISREGARD THE CORPORATE STRUCTURE FOR WARRICK, SCHERING AND SCHERING-PLOUGH

81.  Plaintiff hereby incorporates by reference paragraphs 1-80.

82.  Upon information and belief, in addition to its own acts for which it is liable, Schering/Schering-Plough Corporation as the parent, owner and primary, if not exclusive, shareholder of Warrick Pharmaceuticals, Inc., is liable for the conduct, acts and practices

19

of any and all agents of Warrick Pharmaceuticals, Inc.  Schering/Schering-Plough is liable for Warrick's wrongful activities under the equitable doctrines of joint business enterprise, single business enterprise, alter ego, and instrumentality theories, each of which is advanced alternatively.

83.  The following allegations support piercing the corporate veil for the Schering/Schering-Plough entities under any or all of the above theories:

a. Upon information and belief, Warrick could not and does not exist without Schering/Schering-Plough.  Warrick has only a handful of employees, yet Warrick generates annual sales of over $150,000,000;

b. Upon information and belief, Warrick depends upon Schering/Schering-Plough's manufacturing, distribution, accounting and administrative departments for all of its respective internal functions, and does not appear to have its own employees which perform these basic business responsibilities;

c. Upon information and belief, the only personnel Warrick employs are persons who market and sell Schering/Schering-Plough's generic products;

d. Upon information and belief, Warrick's business offices are within the offices of Schering/Schering-Plough in New Jersey, with both using the same computer systems, telephone systems, employees, centralized departments and interchangeable use of company letterhead;

e. Upon information and belief, Warrick does not conduct its corporate business in Reno, Nevada, as is represented on company letterhead.

20

f. Upon information and belief, Warrick, Schering/Schering Plough are not operated as separate entities, but rather integrate their resources to achieve a common business purpose, namely, to sell Schering/Schering Plough's generic drug products;

g. Upon information and belief, Warrick, Schering/Schering-Plough, have either expressly or impliedly agreed that Warrick acts as Schering/Schering-Plough's marketing unit for generic drug products, with the common purpose of selling more of Schering/Schering-Plough's and Warrick's products and with Schering/Schering-Plough's having at least an equal right to direct and control the operation of the business enterprise;

h. Upon information and belief, Schering/Schering-Plough's brand version of Albuterol Sulfate, Proventil, was sold in conjunction with Warrick's generic Albuterol Sulfate such that when Warrick customers purchased enough Warrick generic Albuterol Sulfate, Warrick would then give the customer a credit to obtain the Schering/Schering-Plough Proventil;

i. Upon information and belief, Warrick and Schering/Schering-Plough may have purposefully under-capitalized Warrick due to the nature and risk of its business in order to avoid financial responsibility, and to allow Schering/Schering-Plough to violate Kentucky law without suffering the consequences.

84. Warrick and Schering/Schering Plough have acted as one company, rather than as two independent drug manufacturers.

21

85.  Warrick is a mere instrumentality of Schering/Schering-Plough. Schering/Schering-Plough has exercised control of Warrick to defraud the Commonwealth of Kentucky, and failing to disregard the corporate structure in this case would subject the Commonwealth to unjust loss.

86.  Warrick is not only influenced by Schering/Schering-Plough, but there is such unity of ownership and interest that their separateness has ceased, and adherence to the normal attributes of corporate existence would sanction a fraud and promote injustice.

87.  Warrick and Schering/Schering Plough should be treated as one entity for liability purposes in order to ensure Plaintiff can fully and completely recover any judgment rendered in its favor in the above-styled matter.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Commonwealth of Kentucky, by counsel, Attorney General Albert B. Chandler III, prays for the following relief:

1.  Judgment that the Defendants committed repeated knowing and willful per se violations of KRS 367.170 by violating 205.8463 (4);

2.  Judgment that the Defendants committed repeated knowing and willful per se violations of KRS 367.170 by violating 517.030;

3.  Judgment that the Defendants committed repeated willful violations of KRS 367.170;

4.  Judgment pursuant to KRS 446.070 that the Defendants committed repeated violations of KRS 205.8463 (4);

22

5.  Judgment pursuant to KRS 446.070 that the Defendants committed repeated violations of KRS 517.030;

6.  Judgment that the Defendants have engaged in repeated acts of common law fraud;

7.  Judgment that the Defendants have engaged in conduct, acts or practices which resulted in fraudulent, erroneous or illegal payments out of the Kentucky State Treasury.

8.  Permanently enjoining the Defendants and their employees, officers, directors, agents, successors, assigns, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries, and any and all persons acting in concert or participation with Defendants, from their unlawful conduct, acts and practices.

9.  Awarding treble damages pursuant to KRS 205.8467 and 446.070 and restitution pursuant to KRS 15.060 to the Kentucky Medicaid program for excessive prescription drug reimbursements as a result of the Defendants' unlawful conduct;

10.  Awarding damages and restitution for Kentucky Medicare, Part B beneficiaries for the excessive prescription drug co-payments paid as a result of the Defendants' unlawful conduct;

11.  Awarding civil penalties of $2,000 for each willful violation of the Kentucky Consumer Protection Act pursuant to KRS 367.990 (2);

12.  Awarding civil penalties of $10,000 for each violation of the Kentucky Consumer Protection Act pursuant to KRS 367.990 (2), where the Defendants' conduct was directed at a person aged sixty (60) or older;

13.  Awarding punitive damages against the Defendants pursuant to KRS 411.184;

14.  Awarding the Commonwealth of Kentucky its costs and attorneys fees;

15.  Awarding the Commonwealth of Kentucky and Medicare, Part B Beneficiaries prejudgment interest as permitted by law;

16.  Trial by jury on all issues so triable;

17.  Awarding any other relief to which the Commonwealth is entitled or the Court deems appropriate and just.

Respectfully Submitted,

ALBERT B. CHANDER III
ATTORNEY GENERAL


By:  Janet M. Graham, Asst. Dep. Attorney General
Office of Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601
Telephone (502) 696-5300
Facsimile (502) 696-5532


*Barbara Maines Whaley By Scott C. Sutherland*
Barbara Maines Whaley, Asst. Attorney General
Director, Medicaid Fraud and Abuse Control Unit
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601
Telephone (502) 696-5300
Facsimile (502) 573-8316

24

Todd E. Leatherman, Asst.  Attorney General
Director, Consumer Protection Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601
Telephone (502) 696-5300
Facsimile (502) 573-8317


Robert S. Jones, Asst. Attorney General
Director, Civil Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601
Telephone (502) 696-5300
Facsimile (502) 564-2894


Scott C. Sutherland, Asst. Attorney General
Branch Manager, Consumer Protection Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601
Telephone (502) 696-5300
Facsimile (502) 573-7150

25

## EXHIBIT 1

## Warrick and Dey Subject Pharmaceutical Products

| Manufacturer | Product | Size | NDC No. |
|---|---|---|---|
| Warrick | Albuterol Sulfate .083% | 3 ml 25s | 59930-1500-08 |
| Warrick | Albuterol Sulfate .083% | 3ml 60s | 59930-1500-06 |
| Warrick | Albuterol Sulfate .5% | 20ml | 59930-1515-04 |
| Warrick | Albuterol Sulfate 90 mcg Aerosol Inhaler | 17gm | 59930-1560-01 |
| Warrick | Albuterol 90 mcg Aerosol Refill | 17gm | 59930-1560-02 |
| Warrick | Cimetidine | 300 mg | 59930180101 |
| Warrick | Cimetidine | 400 mg | 59930180202 |
| Warrick | Cimetidine | 400 mg | 59930180203 |
| Warrick | Cimetidine | 400 mg | 59930180201 |
| Warrick | Perphenazine | 2 mg | 59930160501 |
| Warrick | Perphenazine | 4 mg | 59930160301 |
| Warrick | Perphenazine | 8 mg | 59930160501 |
| Warrick | Perphenazine | 16 mg | 59930161001 |
| Warrick | Isosorbide Mononitrate | 30 mg | 59930150201 |
| Warrick | Isosorbide Mononitrate | 60 mg | 59930154901 |
| Warrick | Isosorbide Mononitrate | 120 mg | 59930158701 |
| Dey | Albuterol Sulfate .083% | 25s | 49502-0697-03 |
| Dey | Albuterol Sulfate .083% | 30s | 49502-0697-33 |
| Dey | Albuterol Sulfate .083% | 60s | 49502-0697-60 |
| Dey | Albuterol Sulfate 5mg/ml Solution | 20ml | 49502-0105-01 |
| Dey | Albuterol Sulfate 5mg/ml Solution | 20ml | 49502-0196-20 |
| Dey | Acetylcysteine Solution 10% | 4ml | 49502-0181-04 |
| Dey | Acetylcysteine Solution 10% | 10ml | 49502-0181-10 |
| Dey | Acetylcysteine Solution 10% | 30ml | 49502-0181-30 |
| Dey | Acetylcysteine Solution 20% | 4ml | 49502-0182-04 |

| Dey | Acetylcysteine Solution 20% | 10ml | 49502-0182-10 |
|-----|-----------------------------|------|---------------|
| Dey | Acetylcysteine Solution 20% | 30ml | 49502-0182-30 |
| Dey | Acetylcysteine Solution 20% | 100ml | 49502-0182-00 |
| Dey | Cromolyn Sodium 2ml | 60s | 49502-0689-02 |
| Dey | Cromolyn Sodium 2ml | 120s | 49502-0689-12 |
| Dey | Ipratropium Bromide 2.5ml | 25s | 49502-0685-03 |
| Dey | Ipratropium Bromide 2.5ml | 30s | 49502-0685-33 |
| Dey | Ipratropium Bromide 2.5ml | 60s | 49502-0685-60 |
| Dey | Albuterol 90mcg Aerosol Inhaler | 17gm | 49502-0333-17 |
| Dey | Albuterol 90mcg Aerosol Inhaler | 17gm | 49502-0303-17 |
| Dey | Albuterol 90mcg Aerosol Refill | 17gm | 49502-0303-27 |

2

## Exhibit 2

### Defendant-Dey (1997 reported vs. actual prices)

| Drug | Drug Type | NDC # | Dey's Reported AWP | Actual Price | "Spread" |
|------|-----------|-------|--------------------|--------------|----------|
| Albuterol Sulfate, 0.083%, 3 ml, 25s | Inhalant | 49502-0697-03 | $30.25 | $11.84 | $18.41 |
| Cromolyn Sodium, 2 ml, 60s | Inhalant | 49502-0689-02 | $42.00 | $29.21 | $12.79 |

## Exhibit 3

### Defendant-Dey (2001 reported vs. actual prices)

| Drug | Drug Type | NDC # | Dey's Reported AWP | Actual Price | "Spread" |
|------|-----------|-------|--------------------|--------------|----------|
| Albuterol Sulfate, 0.083%, 3 ml, 60s | Inhalant | 49502-0697-60 | $72.60 | $10.22 | $62.38 |
| Albuterol Sulfate, 0.083%, 3 ml, 30s | Inhalant | 49502-0697-33 | $36.30 | $5.60 | $30.70 |
| Cromolyn Sodium, 2 ml, 120s | Inhalant | 49502-0689-12 | $84.00 | $20.77 | $63.23 |

## Exhibit 4

### Defendant-Warrick (1997 reported vs. actual prices)

| Drug | Drug Type | NDC # | Warrick's Reported AWP | Actual Price | "Spread" |
|------|-----------|-------|------------------------|--------------|----------|
| Albuterol Sulfate, 0.083%, 20ml | Inhalant | 59930-1515-04 | $14.00 | $6.29 | $7.71 |
| Albuterol Sulfate, 0.083%, 3 ml, 25s | Inhalant | 59930-1500-08 | $30.25 | $10.53 | $19.72 |

## Exhibit 5

### Defendant-Warrick (2002 reported vs. actual prices)

| Drug | Drug Type | NDC # | Warrick's Reported AWP | Actual Price | "Spread" |
|---|---|---|---|---|---|
| Albuterol Sulfate, 0.083%, 3 ml, 60's | Inhalant | 59930-1500-06 | $72.60 | $12.34 | $60.26 |
| Albuterol Sulfate, 0.083%, 3 ml, 25s | Inhalant | 59930-1500-08 | $30.25 | $5.35 | $24.90 |