IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT FRANKFORT

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY ex rel. GREGORY D. STUMBO, ATTORNEY GENERAL, ) ) ) | CASE NO. _____ |
| Plaintiff, ) ) | NOTICE OF REMOVAL ELECTRONICALLY FILED |
| v. ) ) ) | |
| WARRICK PHARMACEUTICALS CORPORATION; SCHERING-PLOUGH CORPORATION; SCHERING CORPORATION; DEY, INC. ) ) ) ) ) | [Civil Action No. 03-CI-1135 in the Franklin Circuit Court, Division II, for the Commonwealth of Kentucky] |
| Defendants. ) ) | |

Pursuant to 28 U.S.C. § 1441 *et seq.*, 28 U.S.C. §§ 1331 and 1367(a), and 31 U.S.C. § 3732(b), defendant Dey, Inc. ("Dey") hereby notices removal of this civil action from the Franklin Circuit Court for Kentucky (the "Kentucky Action") to the United States District Court for the Eastern District of Kentucky.[1]

## I.  THIS COURT HAS ORIGINAL JURISDICTION OF THIS ACTION PURSUANT TO 31 U.S.C. § 3732(b) AND 28 U.S.C. § 1331

1.  On September 11, 2006, the United States delivered to Dey's counsel the unsealed complaint in an action entitled *United States of America ex rel. Ven-*

---

[1]  Notices of removal are being filed contemporaneously in similar actions pending in the following jurisdictions in addition to Kentucky: Alabama, Arizona, Florida, Hawaii, Illinois, Mississippi, Nevada, Ohio, Pennsylvania, South Carolina, Wisconsin, and in three actions brought in the courts of the State of New York by the counties of Erie, Oswego, and Schenectady.  Dey intends to notify the *Judicial Panel on Multidistrict Litigation* ("JPML") that this action is closely related to several actions pending before the United States District Court for the District of Massachusetts, which has been designated by JPML to oversee the federal pricing litigation and where the Department of Justice has two pending actions relating to Average Wholesale Price.



EXHIBIT
C

*A-Care of the Florida Keys, Inc. v. Dey, Inc. et al.*, Civil Action No. 05-11084-MEL (D. Mass.) (the "Federal *Qui Tam* Action"). The unsealed complaint ("Federal *Qui Tam* Complaint") alleges that the "United States brings this action to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33 …." Federal *Qui Tam* Complaint at ¶ 1. (A copy of the Federal *Qui Tam* Complaint is annexed hereto as Exhibit A.)

      2.      One of the FCA provisions under which the United States is suing Dey provides that:

> The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government *if the action arises from the same transaction or occurrence as an action brought under section 3730 [of Title 31].*

31 U.S.C. § 3732(b) (emphasis added).

      3.      The United States brought the Federal *Qui Tam* Action against Dey pursuant to an order entered by the United States District Court for the District of Massachusetts, dated September 9, 2006 (the "September 9 Order"), granting, *inter alia*, the motion of the United States to lift the seal and serve the unsealed complaint in the Federal *Qui Tam* Action on Dey. (A copy of the September 9 Order is annexed hereto as Exhibit B).

      4.      The Federal *Qui Tam* Action arises from the same alleged transactions and occurrences that form the basis for the present action against Dey brought by the Commonwealth of Kentucky (the "Plaintiff" or "Kentucky").

      5.      The Kentucky Action, seeking recovery of funds paid by Kentucky, has become removable under 28 U.S.C. §§ 1441 and 1446, because the district courts of the United States have original jurisdiction over the Kentucky Action pursuant

- 2 -

to 31 U.S.C. § 3732(b) and 28 U.S.C. § 1331.  Dey is filing this notice of removal within

thirty (30) days of its receipt of the September 9, 2006 order and the unsealed Federal

*Qui Tam* Complaint against it, and removal is therefore timely.  28 U.S.C. § 1446(b).

Any claims in this action over which the Court does not have original jurisdiction under

31 U.S.C. § 3732(b) and 28 U.S.C. § 1331 are within the Court's jurisdiction under 28

U.S.C. § 1367(a).

      6.     Pursuant to 28 U.S.C. § 1446(a), annexed hereto as Exhibit C is a

true and correct copy of Plaintiff's Amended Complaint ("Amended Complaint") in this

action along with  all other process, pleadings, and orders heretofore served upon

Defendants in this action.

      In further support of removal to this Court, Dey states:

      7.     Both the Kentucky Action and the Federal *Qui Tam* Action allege

that Dey fraudulently manipulated its published drug prices as part of an unlawful

scheme to increase sales by guaranteeing excessive Medicaid and Medicare[2]

reimbursement to providers selling Dey products.  Dey denies all of these allegations.

      8.     The Medicaid program is a joint federal and state program that

provides medical coverage for certain groups, including the indigent and disabled.  *See*

Federal *Qui Tam* Complaint at ¶¶ 17-18 [3]; Amended Complaint at ¶ 11; *see also* 42

U.S.C. §§ 1396a(a) and 1396d(b).

---

[2]     Kentucky also alleges that Dey caused other purchasers – *i.e.*, Medicare Part B participants – to
overpay for prescription drugs.  *See* Amended Complaint at ¶¶ 38, 39.  Kentucky's claims with
respect to the Medicare Part B program are based on the same central allegation that Dey
knowingly or intentionally reported "inflated" AWPs to pharmaceutical price reporting services,
such as First DataBank, and that these allegedly "inflated" AWPs caused excessive reimbursement
or payments.  *Id.* at ¶ 25, 26, 28, 38, 39.

[3]     This citation refers to paragraphs 17-18 under heading VI, subheading A in the Federal *Qui Tam*
Complaint.

NY01/KIMS/1139146.2

9.     Kentucky provides coverage for prescription pharmaceutical products, including drugs sold by Dey, as part of the Medicaid program. *See* Federal *Qui Tam* Complaint at ¶ 21; Amended Complaint at ¶¶ 11, 29.

10.     Local drug providers – primarily retail pharmacies – dispense prescription drugs to Medicaid beneficiaries and then submit a claim for reimbursement to the Medicaid program for the state in which the providers are located. *See* Amended Complaint at ¶¶ 12, 13; Federal *Qui Tam* Complaint at ¶¶ 30-32.

11.     Under federal supervision and within limits set by the federal Medicaid regulations, reimbursement for prescription drugs dispensed to Medicaid beneficiaries are set by the states pursuant to formulas adopted by that state and approved at the federal level by the Secretary of the Department of Health and Human Services. *See* 42 C.F.R. §§ 447.301, 447.331-447.333; *see also* Federal *Qui Tam* Complaint at ¶¶ 37-38. Kentucky alleges that it calculates the reimbursement for pharmaceuticals dispensed to Kentucky Medicaid beneficiaries in compliance with the federal regulations, and uses reimbursement formulas similar to other state Medicaid programs. *See* Amended Complaint at ¶¶ 13, 14; KRS 205.560; 907 KAR 1:018; 907 KAR 1:021 (2002); 907 KAR 1:018E (2003).

12.     Kentucky alleges that its Medicaid reimbursement formula relied on AWP and other pricing information reported by Dey and other manufacturers to reimburse Kentucky drug providers. *See, e.g.*, Amended Complaint at ¶ 25, 26. One of these reported benchmark prices is known in the industry by a commonly used acronym: AWP. The letters AWP stand for "average wholesale price." *Id.* at ¶ 14. The Federal

NY01/KIMS/1139146.2

*Qui Tam* Complaint makes the same allegations. *See, e.g.,* Federal *Qui Tam* Complaint at ¶¶ 39, 42, 50.

13. The Federal *Qui Tam* Action and the Kentucky Action both allege that Dey reports to certain publishers AWP prices and other pricing information for its products. *See, e.g.,* Federal *Qui Tam* Complaint at ¶¶ 50, 51; Amended Complaint at ¶ 25.

14. The Federal *Qui Tam* Complaint alleges that the "AWPs and WACs relied upon by State Medicaid programs have generally been those published by" Thompson Publishing (*Red Book*), First DataBank (*Blue Book*), and Medi-Span, Inc. (*Hospital Formulary Pricing Guide*). Federal *Qui Tam* Complaint at ¶ 42. Kentucky alleges that its Medicaid program relies on the AWPs and other pricing information published by nationally known price reporting services, including First DataBank and Medi-Span. Amended Complaint at ¶¶ 23-26.

15. The central allegations underlying both the Kentucky Action and the Federal *Qui Tam* Action are that Dey intentionally reported "inflated" AWP prices to these pharmaceutical pricing publishers, including First DataBank, and that these allegedly "inflated" prices caused the United States and Kentucky's Medicaid program to pay excessive reimbursement to providers for drugs dispensed to beneficiaries of the program, or concealed the true price of Defendants' drugs. *Compare* Amended Complaint at ¶¶ 21-36 *with* Federal *Qui Tam* Complaint at ¶¶ 50-61.

16. Both Kentucky, in this action, and the United States, in the Federal *Qui Tam* Action, seek to recover from Dey alleged overpayments made by the Medicaid program for each and every Medicaid pharmaceutical claim in Kentucky of a Dey

- 5 -

product dispensed by a pharmacy or other health care provider. *See* Amended Complaint at ¶¶ 43, 50, 56, 60, 65, 70, 80. The amount of these alleged overpayments in Kentucky, if any, has been paid by Kentucky and the federal government since the federal government is responsible for a portion of Kentucky's Medicaid costs. *See* 42 U.S.C. § 1396a; 42 U.S.C. § 1396d(b); Federal *Qui Tam* Complaint at ¶ 18. [4]

17.     The Federal *Qui Tam* Action contains allegations that are practically identical to Kentucky's allegations concerning the federal Medicare Part B program. *Compare* Amended Complaint at ¶¶ 16-20, 38, 39 *with* Federal *Qui Tam* Complaint at ¶¶ 24-28, 45-47.

18.     Medicare is a health insurance program created by the federal government for the elderly and disabled and other eligible persons. Amended Complaint ¶ 16; Federal *Qui Tam* Complaint at ¶ 24; *see also* 42 U.S.C. § 1395 *et seq.*. The Centers for Medicare and Medicaid Services ("CMS") is a federal agency directly responsible for the administration of the Medicare program. *See* Federal *Qui Tam* Complaint at ¶ 25.

19.     Medicare Part B provides coverage for drugs which are provided either: (a) incident to a physician's service and cannot usually be self-administered; or (b) in conjunction with the medical necessity of an infusion pump or nebulizer or other DME device payable under Medicare's DME benefit equipment. Federal *Qui Tam* Complaint at ¶ 26; *see also* 42 C.F.R. § 410.26; 42 C.F.R. §§ 405.517, 414.701.

20.     Medicare reimbursement under the Part B program is determined by federal statutes and regulations. *See* Federal *Qui Tam* Complaint at ¶¶ 45-48; 42 U.S.C. § 1395u; 42 C.F.R. §§ 405.517 (1992-2004), 414.707 (2005); Amended

---

[4]     This citation refers to paragraph 18 under heading VI, subheading A in the Federal *Qui Tam* Complaint.

NY01/KIMS/1139146.2

Complaint at ¶ 19. The Federal *Qui Tam* Complaint alleges that from 1992 through January 1, 2005, these reimbursement statutes and regulations provided reimbursement based, in part, on AWPs allegedly set by manufacturers, such as Dey. *See* Federal *Qui Tam* Complaint at ¶ 45-47. Thus, an allegedly "inflated" AWP would lead to allegedly " inflated" reimbursement for co-payments, including any co-payments paid by a state Medicaid program, such as Kentucky's Medicaid program, as the same underlying transaction is allegedly at issue.

21.     After the reimbursement is calculated based on these federal statutes and regulations, Medicare pays 80% of the amount and the Medicare beneficiary pays the remaining 20% as a co-payment. *See* Federal *Qui Tam* Complaint at ¶ 48; Amended Complaint at ¶ 19.

22.     The United States alleges that for state Medicaid beneficiaries who are also qualified to receive federal Medicare benefits, the state's Medicaid program pays the Medicare beneficiaries' 20% co-payment under Medicare Part B, which until recently was based on AWP. *See* Federal *Qui Tam* Complaint at ¶ 45-48.

23.     The alleged "scheme" concerning Medicare set forth in the Federal *Qui Tam* Action is identical to the "scheme" that is alleged with regard to the Medicare program in the Amended Complaint. *Compare* Amended Complaint at ¶¶ 21-36 *with* Federal *Qui Tam* Complaint at ¶¶ 50-61.

24.     The Federal *Qui Tam* Action and the Kentucky Action both allege that the Medicare program participants generally relied upon allegedly false AWPs. *See* Federal *Qui Tam* Complaint at ¶¶ 45, 49-51, 66; Amended Complaint at ¶¶ 21, 25. Both actions further allege that as a result of Defendants' allegedly unlawful conduct, the

- 7 -

Medicare program and its participants have paid allegedly inflated prices for Defendants' prescription drugs administered under the program. *See* Amended Complaint at ¶¶ 38, 39; Federal *Qui Tam* Complaint at ¶¶ 50-61, 66.

25.    On or about September 15, 2003, Kentucky filed the civil action captioned *Commonwealth of Kentucky, ex rel. Albert B. Chandler III, Attorney General v. Warrick Pharmaceuticals Corporation, et al.*, 03-CI-1135, in the Franklin Circuit Court for the Commonwealth of Kentucky, alleging violations of the Kentucky Consumer Protection Act (KRS 367.170), the Kentucky Medicaid Fraud Statute (KRS 205.8463(4)), and the Kentucky False Advertising Statute (KRS 517.030), and asserting claims pursuant to KRS 15.060 and 446.070, and claims for common law fraud and promissory estoppel.

26.    The Kentucky Action could not be removed by Dey to the United States District Courts on the grounds set forth herein until September 11, 2006 because the Federal *Qui Tam* Action remained under seal, and the Government had not intervened against Dey. By virtue of Government's intervention, the unsealing of the Federal *Qui Tam* Complaint against Dey, and delivery of the unsealed Federal *Qui Tam* Complaint to Dey's counsel on September 11, 2006, pursuant to the September 9, 2006 order, directing service and severing the claims of the United States from the Relator's, the Kentucky Action had become removable on September 11, 2006, under 28 U.S.C. §§ 1441 and 1446(b), on the grounds that an action under 31 U.S.C. § 3730 had been brought against Dey and a federal question was created under 28 U.S.C. § 1331.

- 8 -

## II.   PRIOR PROCEEDINGS

27.    Dey was served with the summons and complaint on September 15, 2003 via service of process on the Kentucky Secretary of State.

28.    On or about October 14, 2003, Kentucky filed the Amended Complaint, captioned *Commonwealth of Kentucky, ex rel. Albert B. Chandler III, Attorney General v. Warrick Pharmaceuticals Corporation, et al.*, 03-CI-1135, in the Franklin Circuit Court for the Commonwealth of Kentucky. The Amended Complaint did not change the substantive nature of the allegations and claims in the Kentucky Action against Dey.

29.    On or about February 6, 2004, Defendants served and filed a joint motion to dismiss the Amended Complaint. Defendants' motion was fully briefed and argued in the Circuit Court of Franklin County, Kentucky on July 27, 2004. A decision on the Defendants' motion to dismiss has not been rendered.

30.    On July 13, 2005, Defendants removed this action to the United States District Court for the Eastern District of Kentucky. The July 13, 2005 removal petition was based on federal question jurisdiction, pursuant to *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005). That petition alleged that Kentucky's claims to recover Medicare part B co-payments raises a substantial federal question and requires the resolution of issues of federal law relating to the federal Medicare program.

31.    On December 5, 2005, the Judicial Panel on Multidistrict Litigation transferred this action to the Honorable Patti B. Saris of the United States

District Court for the District of Massachusetts, who is presiding over *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456.

    32.    On March 13, 2006, Judge Saris remanded the case back to the Circuit Court of Franklin County, Kentucky. *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, 431 F. Supp.2d 98 (D. Mass. 2006), MDL No. 1456 (annexed hereto as Exhibit D).

## III.    <u>THE NOTICE OF REMOVAL IS TIMELY</u>

    33.    Dey's counsel first received, on September 11, 2006, a copy of the unsealed United States' Complaint filed against Dey in the Federal *Qui Tam* Action.[5]

    34.    Prior to September 11, 2006, Dey had not received any other paper advising it that the Federal *Qui Tam* Action was unsealed as against Dey.

    35.    This Notice of Removal is timely because it has been filed within 30 days of Dey's first receipt of a copy of the pleading, order, and other paper from which Dey was first able to ascertain that the Kentucky Action had become removable, pursuant to 28 U.S.C. § 1446(b), and removal is not based on 28 U.S.C. § 1332. While the citizenship of Defendants is not relevant to a removal based on federal question jurisdiction, we note that no Defendant in the Kentucky Action is a citizen of Kentucky.

    36.    The Federal *Qui Tam* Action is "an action brought under section 3730" of Title 31 in that it asserts claims on behalf of the Relator, Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care") and the United States for alleged violations of 31 U.S.C. § 3729. *See* 31 U.S.C. § 3730(b)(1); *see also* Federal *Qui Tam* Complaint at ¶¶ 62-64, 65-67.

---

[5]    Dey did not receive a copy of the September 9 Order until after September 11, 2006.

### IV.    REMOVAL WILL PERMIT THIS ACTION TO BE LITIGATED ALONG WITH THE FEDERAL *QUI TAM* AND OTHER SIMILAR PRICING ACTIONS CONSOLIDATED IN A MULTIDISTRICT LITIGATION

37.    State law actions arising in connection with a *qui tam* action should be litigated in a single forum.  *See United States ex rel. LaCorte v. Merck & Co.*, 99-3807, 2004 U.S. Dist. LEXIS 4860, *25 (E.D. La. Mar. 24, 2004) (granting state's motion to intervene in a false claims act suit concerning alleged excess Medicaid expenditures for a drug because, among other things, "it would serve judicial economy to finalize the matter . . . in one action as opposed to requiring the State to file a separate action . . . based on the same facts.").  31 U.S.C. § 3732(b) creates federal subject matter jurisdiction for related state actions.

38.    31 U.S.C. § 3730(c) provides that the United States Government shall have "primary responsibility" for prosecuting the Federal *Qui Tam* Action, which encompasses the claims asserted by Kentucky in this action.

39.    In addition, though sealed, the Federal *Qui Tam* Action preceded this action.  Accordingly, this action must yield to the federal action in the event of any conflict.  31 U.S.C. § 3730(b)(5) provides "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action [*i.e.*, a federal *qui tam* action]."

40.    This action also is virtually identical to other cases against Dey that have been transferred from district courts and consolidated in a multidistrict litigation proceeding, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (the "AWP MDL"), which is currently pending before the Honorable Patti B. Saris in the United States District Court for the District of Massachusetts.

- 11 -

41.     The United States recently filed a Notice of Related Action in the Federal *Qui Tam* Action for the purpose of transferring that action to Judge Saris.

42.     Like this action, other cases now pending in the AWP MDL were originally filed in the state courts before removal to federal court and transfer to the AWP MDL.  The AWP MDL currently includes similar actions brought by the States of California, Montana, Nevada and Arizona.  Dey will shortly notify the Judicial Panel on Multidistrict Litigation that this action is closely related to those pending before Judge Saris in the AWP MDL and thus should be treated as a "tag-along action" within the meaning of the Rules of the Judicial Panel on Multidistrict Litigation.

## V.     ALL DEFENDANTS CONSENT TO REMOVAL

43.     All Defendants who have been served in the Kentucky Action consent to the removal of this action to this Court.  (Annexed hereto as Exhibit E are each served Defendant's written consent to removal of the Kentucky Action to this Court.)

44.     No Defendant waives any defense to the Amended Complaint, including but not limited to lack of service, improper service or lack of personal jurisdiction.

## VI.     COMPLIANCE WITH 28 U.S.C. § 1446(d)

45.     Pursuant to 28 U.S.C. § 1446(d), Dey shall file a copy of this Notice of Removal with the Clerk of the Circuit Court, Division II, in and for Franklin County, Kentucky and will serve all counsel of record in this action with this Notice of Removal promptly after its filing.

**WHEREFORE**, Dey notices the removal of this case to the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 1441 and 31 U.S.C. § 3732(b).

- 12 -

Dated this 11th day of October, 2006.

Respectfully Submitted,

s/ Wm. T. Robinson III
Wm. T. Robinson III (KBA No. 59330)
Andrew J. (A.J) Schaeffer (KBA No. 88069)
Carrie A. Shufflebarger (KBA No. 90705)
GREENEBAUM DOLL & MCDONALD PLLC
50 East RiverCenter Blvd., Suite 1800
Covington, Kentucky 41012-2673
Telephone:   (859) 655-4210
Facsimile:   (859) 655-4239

*Attorneys for Defendant Dey, Inc.*

Of Counsel:

Paul F. Doyle
William A. Escobar
Neil Merkl
Christopher C. Palermo
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Phone:  (212) 808-7800
Fax:  (212) 808-7897

CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing was served by first class mail, postage prepaid, to the following on this 11th day of October, 2006:

Mr. C. David Johnstone
OFFICE OF THE ATTORNEY GENERAL
1024 Capital Center Drive
Frankfort, Kentucky 40601
*Counsel for Plaintiff*

Mr. Charles J. Barnhill, Jr.
MINER, BARNHILL & GALLAND PC
44 East Mifflin, Suite 803
Madison, Wisconsin  53703
*Counsel for Plaintiff*

- 13 -

Mr. P. Jeffrey Archibald
ARCHIBALD CONSUMER LAW OFFICE
1914 Monroe Street
Madison, Wisconsin  53711
*Counsel for Plaintiff*

Mr. Michael Winget-Hernandez
WINGET-HERNANDEZ, LLC
466 Pine Crest Drive
Troy, Virginia  22974
*Counsel for Plaintiff*

Mr. John T. Montgomery
Mr. Brien T. O'Connor
ROPES & GRAY, LLP
One International Place
Boston, Massachusetts  02110-2624
*Counsel for Defendants*
*Warrick Pharmaceuticals Corp., Schering-Plough*
*Corp., and Schering Corp.*

Mr. J. Steven Baughman
ROPES & GRAY, LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, D.C.  20005-9438
*Counsel for Defendants*
*Warrick Pharmaceuticals Corp., Schering-Plough*
*Corp., and Schering Corp.*

Palmer G. Vance II
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky  40507-1801
*Counsel for Defendants*
*Warrick Pharmaceuticals Corp., Schering-Plough*
*Corp., and Schering Corp.*

/s/ Wm. T. Robinson III
Wm. T. Robinson III
GREENEBAUM DOLL & MCDONALD PLLC
*Counsel for Defendant Dey, Inc.*

1196712_1.doc

- 14 -

NY01/KIMS/1139146.2

NY01/KIMS/1139146.2

ELECTRONICALLY FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## AT FRANKFORT

COMMONWEALTH OF KENTUCKY, *ex rel.* )
Gregory D. Stumbo, Attorney General )
)
                              Plaintiff )   Case No. 3:06-CV-00069-KKC
)
*v.* )
)
WARRICK PHARMACEUTICALS  CORPORATION, )
SCHERING-PLOUGH CORPORATION, SCHERING )
CORPORATION and DEY, INC. )
)
                             Defendants )
)

## MOTION TO REMAND

The Plaintiff, the Commonwealth of Kentucky, by and through its Attorney General, Gregory

D. Stumbo, pursuant to 28 U.S.C. §1447(c), moves the Court to remand this case to the state court in

which it originated.  In accordance with LR 7.1, the attached memorandum of law in support of the

Commonwealth's motion and a proposed order are filed herewith.

Respectfully submitted,

GREGORY D. STUMBO
ATTORNEY GENERAL OF KENTUCKY

By:    s/Paula J. Holbrook
Paula J. Holbrook
C. David Johnstone
OFFICE OF THE ATTORNEY GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
(502) 573-7150 Facsimile
Paula.Holbrook@ag.ky.gov
David.Johnstone@ag.ky.gov

Counsel for Plaintiff
Commonwealth of Kentucky

EXHIBIT
D

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on this the 2nd day of November, 2006, a copy of the foregoing Commonwealth's Motion to Remand, Memorandum in Support of Motion to Remand, and proposed Order were filed electronically through the Court's ECF system, which will send a notice of electronic filing to all counsel of record herein.

s/Paula J. Holbrook
Assistant Attorney General

2

ELECTRONICALLY FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## AT FRANKFORT

COMMONWEALTH OF KENTUCKY, *ex rel.*
  Gregory D. Stumbo, Attorney General

                 Plaintiff

v.

WARRICK PHARMACEUTICALS CORPORATION,
SCHERING-PLOUGH CORPORATION, SCHERING
CORPORATION and DEY, INC.

                 Defendants

Case No. 3:06-CV-00069-KKC

## MEMORANDUM
## IN SUPPORT OF MOTION TO REMAND

      The Plaintiff, the Commonwealth of Kentucky ("the Commonwealth"), by and through its Attorney General, Gregory D. Stumbo, submits the following Memorandum of law in support of its motion to remand.

### I.    INTRODUCTION

      For the second time in fifteen months and more than *three* years after it was originally filed, this case has been improperly removed. Undeterred by the lack of success of the first removal, which was found to be untimely, defendants again seek to deprive the Commonwealth of Kentucky of its chosen forum to litigate its purely state-law claims. The basis for the current notice of removal is even more specious than the first, because it relies on the very same theory that was rejected in the first case. This case should be remanded promptly–*again*-- to the Franklin Circuit Court.

      Dey is a defendant in numerous pharmaceutical pricing cases in jurisdictions all over the country. On September 12, 2006, the United States joined the fray when it unsealed a *qui tam* complaint against Dey pursuant to the federal False Claims Act, 31 U.S.C. §3729, *et seq.* in the

United States District Court in Boston. On October 11, 2006, defendant Dey, Inc. ("Dey"), joined by the other defendants, removed this case, arguing that the federal government's service of the *qui tam* complaint upon Dey in another jurisdiction made this action removable under 28 U.S.C. §§1441 and 1446(b). Dey also asserts that the federal courts have original jurisdiction over this case pursuant to 31 U.S.C. §3732(b). *See* Notice of Removal at 3. Dey contends that the notice of removal is timely "because it has been filed within thirty (30) days of Dey's first receipt of a copy of the pleading, order, and other paper from which Dey was first able to ascertain that the Kentucky action had become removable." *Id.*, at 11, ¶36.

Dey's removal is frivolous. First, Dey's removal is untimely, as it was not filed within 30 days of service of the Commonwealth's Amended Complaint upon Dey. Rather, it was filed more than 20 months after service upon Dey. Moreover, neither the federal *qui tam* complaint against Dey nor the order unsealing it is an "amended pleading, motion, order, or other paper" within the meaning of 28 U.S.C. §1446(b), thus triggering a new 30-day removal period. Both the plain meaning and legislative history of the statute, and the case law interpreting it, establish that it only applies to an event in the *state-court action* being removed that is caused by the *plaintiff's* voluntary act. Here, the federal *qui tam* complaint was an event that neither occurred in the Kentucky state action nor was caused by an act of the Commonwealth of Kentucky (voluntary or otherwise).

All defendants, including Dey, are intimately familiar with this well-established construction of the statute, because they previously invoked the statute last year, unsuccessfully, when they removed this very lawsuit based on an event external to the Kentucky case that was not caused by Kentucky's voluntary act. In remanding this case, the MDL court in Boston -- the same court to which Dey and the other defendants again seek to have this case transferred -- explicitly rejected the same construction of §1446(b) that defendants advance here.

Second, even if Dey could surmount the §1446(b) hurdle, the federal statute upon which Dey relies for its assertion of federal jurisdiction, 31 U.S.C. §3732(b) -- a part of the federal False Claims Act ("FCA") -- does not confer original jurisdiction over the state's claims. The plain language and

legislative history of the statute make clear that this provision grants only supplemental jurisdiction, *authorizing, but not requiring* a state like Kentucky to bring state-law claims in federal court when there is a pending related federal FCA action. It does *not* allow a defendant like Dey to control the state's choice of forum. Moreover, it is well established that supplemental jurisdiction over state-law claims is insufficient to establish federal-question jurisdiction under 28 U.S.C. §1331.

Finally, because there is no objectively reasonable basis for Dey's notice of removal, particularly as it relates to the §1446(b) issue, the Commonwealth is entitled to attorneys' fees and costs.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Although Dey's description of the prior proceedings in this case (*see* Notice of Removal, at 9-10, ¶¶27-33) is accurate, it is incomplete, in that it omits important facts relating to the prior removal and remand orders in this case and similar cases brought by other state Attorneys General.

Dey admits that it was served with the Commonwealth's Amended Complaint in this action on or about February 7, 2005 and that no defendant removed the case within 30 days of service. On July 13, 2005, Dey and the other defendants removed this action as well as similar actions filed by the Attorneys General for the States of Alabama, Illinois, Minnesota, New York, Pennsylvania, and Wisconsin. The sole basis for removal was that *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005) which had just been handed down by the U.S. Supreme Court, constituted an "order or other paper" from which the defendants "first ascertained" that the state-court actions were removable within the meaning of the federal removal statute, 28 U.S.C. §1446(b). Defendants asserted that *Grable* for the first time made clear that each state-court action presented a federal question pursuant to 28 U.S.C. §1331. Kentucky and the other state Attorneys General promptly filed remand motions, arguing that *Grable* did not constitute an "order or other paper" within the meaning of §1446(b) and, even if it did, their complaints did not present a federal question.

3

Without exception, every federal court to address the issue rejected defendants' *Grable* argument and concluded that the term "order or other paper" refers only to documents in the state-court case that is being removed. Accordingly, they granted the states' remand motions.[1] *See, e.g., In re Pharmaceutical Industry Average Wholesale Price Litigation*, 431 F.Supp.2d 98, 109 (D.Mass. 2006);[2] *State of Minnesota v. Pharmacia Corporation*, No. 05-1394, at 4-5 (D.Minn. Oct. 24, 2005); *Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc., et al.*, 415 F.Supp.2d 516, 526-27 (E.D.Pa. 2005); and *State of Wisconsin v. Abbott Laboratories, Inc., et al.*, 390 F.Supp.2d 815, 824-25 (W.D.Wis. 2005).[3] Indeed, *in remanding this very case, the same MDL court to which defendants again seek to have this case transferred* explicitly rejected defendants' construction of §1446(b). More recently, the federal court magistrate for the District of Hawaii soundly rejected the same ploy and rationale by Dey when he recommended that the case be remanded to state court.[4]

## III.  ARGUMENT

### A.  Defendants' burden to justify removal is a heavy one.

Federal courts disfavor depriving a litigant, particularly a sovereign such as the Commonwealth of Kentucky, of its choice of forum within which to litigate purely state-law claims. The burden of establishing jurisdiction is upon the defendant as the removing party. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993), and *Her Majesty The Queen In Right of The Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). It is the defendant's burden to establish that removal is

---

[1] The federal court in Alabama court did not address the timeliness issue but instead remanded based on the lack of a federal question.

[2] In addition to Kentucky, the MDL court also remanded the Illinois and New York cases on this basis.

[3] The federal court in Wisconsin awarded attorneys' fees and costs to the state.

[4] Magistrate Kurren's Amended Order Denying Defendant Dey, Inc.'s Motion for Leave to File Supplemental Notice of Removal is attached hereto as Exhibit A. Please note that Dey may appeal the Magistrate's finding and recommendation and order to the District Court.

4

proper, and that all doubts are to be resolved in favor of the state court's jurisdiction. *Ratliff v. Merck & Co., Inc.,* 359 F.Supp. 2d 571, 574 (E.D. Ky. 2005). *See also, Iulianelli v. Lionel, L.L.C.,* 183 F. Supp. 2d 962 (E.D. Mich. 2002); *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir. 1994); and *Hollenbeck v. Burroughs Corp.,* 664 F. Supp. 280, 281 (E.D. Mich. 1987).

Failure to rigorously apply these principles can lead to years of meaningless litigation, as the Seventh Circuit stressed in *Hart v. Terminex International,* 336 F.3d 541 (7th Cir. 2003). There, the court concluded, after eight years of federal-court litigation, that the parties were not diverse and hence, all the rulings in the case were a nullity as a result of improper removal. By its actions, Dey has stalled the instant case.

**B. Defendants' notice of removal is untimely and the federal *qui tam* complaint against Dey is not an "amended pleading, motion, order, or other paper" within the meaning of 28 U.S.C. §1446(b).**

Dey's notice of removal is untimely and the filing and service of the federal *qui tam* complaint does not alter this result. Pursuant to 28 U.S.C. §1446(b), defendants were required to file a notice of removal within 30 days of service.

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case started by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. §1446(b). *See Murphy Brothers, Inc., v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344 (1999), and *Queen v. Dobson Power Line Const. Co.,* 414 F. Supp. 2d 676 (E.D.Ky. 2006). Dey concedes, as it must, that it failed to file the notice of removal within 30 days of service of the Amended Complaint, which was filed on February 7, 2005, more than 20 months ago. Accordingly, the removal

is untimely.  To escape this obvious conclusion, defendants argue that the federal *qui tam* complaint is an "amended pleading, motion, order or other paper" within the meaning of the second paragraph of §1446(b) that triggered a new 30-day period for removal.  *See* Notice of Removal, at 11, ¶36.  Dey's argument is wholly without merit.

### 1. Section 1446(b) only applies to events occurring within the state-court action being removed.

#### a. The plain language of §1446(b).

The plain language of §1446(b) makes clear that it applies to only those events that occur within the state-court action being removed.  The court in *Morsani v. Major League Baseball*, 79 F.Supp.2d 1331 (M.D.Fla. 1999), one of the leading cases interpreting §1446(b), examined numerous cases that addressed the issue and summarized the state of the law as follows:

> Many courts have examined and rejected the defendants' argument that an order entered in another case may constitute an "order or other paper" pursuant to Section 1446(b).  These courts interpret Section 1446(b) to refer only to "an amended pleading, motion, order or other paper" that arises within the case for which removal is sought.  The plain language of the statute, referring to the "receipt by the defendant, through service or otherwise," implies the occurrence of an event within the proceeding itself; defendants do not in the ordinary sense "receive" decisions entered in unrelated cases.  Accordingly, the courts consistently hold that publication of an order on a subject that might affect the ability to remove an unrelated state court suit does not qualify as an "order or other paper" for the purposes of Section 1446(b).

*Id.*, at 1334 (omitting footnote that lists the many decisions upon which it relied).  The same conclusion was reached in *Kocaj v. Chrysler Corp.*, 794 F.Supp. 234, 236 (E.D.Mich. 1992):

> Simply put, a plain reading of the second paragraph of §1446(b) elicits the conclusion that the term "other paper" means a paper in the state court action that does not constitute "an amended pleading, motion, [or] order."  As the court in *Holiday [v. Travelers Ins. Co.*, 666 F.Supp. 1286 (W.D.Ark. 1987)] aptly observed, such "other paper" could, for example, be a plaintiff's response to a summary judgment motion, answers to interrogatories, or statements of a plaintiff.  *Holiday* at 1290 (citing cases).  Defendant's interpretation of "other paper," broadly construing such term to include even a decision in an unrelated action, ignores the preceding language in §1446(b) – "within thirty days after *receipt* by the defendant, through service or otherwise" [emphasis added] -- which language plainly refers to items served or otherwise given to a defendant in a state court case.

This construction of the statute is widespread. *See Klink v. Metavante Corp.*, 2002 WL 31962610, *2, n. 1 (E.D.Mich., Dec. 16, 2002) and *Burns v. Prudential Securities, Inc.*, 2006 WL 1932310, *4 (N.D.Ohio, July 10, 2006) ("[a] court decision in an unrelated case does not constitute a `motion, order, or other paper' for §1446(b) purposes and does not, therefore, create a new 30-day period during which a defendant can remove a case").[5]

### b. The legislative history of §1446(b).

The legislative history of 28 U.S.C. §1446(b) also supports the conclusion that the statute is limited to events occurring in the state-court action that is being removed:

> The legislative history of §1446(b) also supports an inference that Congress intended to limit order and other paper to documents in the pending case. This is so because prior to 1949, when Congress amended §1446(b), the Supreme Court had developed case law interpreting *Powers v. Chesapeake & Ohio Railway Co.*, 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898), as standing for the proposition that a case that became eligible for removal after the initial complaint could be removed only as the result of a voluntary act by the plaintiff. *See* Adam C. Clainton, *Uncertainty in Federal Removal Procedure: The Riddle of the "Other Paper"*, 71 Def. Couns. J. 388, 393, 401 (Oct. 2004) (stating that although 1446(b) does not mention a "voluntariness" requirement, courts have read such limitation into it *in light of the House report* stating that the amendment was "declaratory of the existing rule laid down by" such decisions as *Powers*). Although courts have criticized the so-called "voluntary/ involuntary" rule as overly formalistic, *see Lyon v. Ill. Cent. Ry. Co.*, 228 F.Supp. 810, 811 (S.D.Miss. 1964), the circuit courts have generally followed it, *see e.g., Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71-72 (7th Cir. 1992). It may reasonably be inferred from Congress's endorsement of the rule that Congress also

---

[5] *See also, Rose v. Beverly Health & Rehabilitation Services, Inc.*, 2006 WL 2067060, *5 (E.D.Cal., July 22, 2006) ("the phrase `other paper' has been interpreted as `documents generated within the state court litigation'") (citations omitted); *Elm v. Soo Line Railroad*, 2006 WL 1426594, *2 (D.Minn., May 22, 2006) ("courts have generally held that `other paper' refers `solely to documents generated within the state court litigation itself'") (citations omitted); *Craft v. Philip Morris Co.*, 2006 WL 744415, *6 (E.D.Mo., Mar. 17, 2006) ("the most logical interpretation of the plain language of the statute, `amended pleading, motion, order or other paper' is that `order or other paper' refers to only records in the state case"); *Black v. Brown & Williamson Tobacco Corp.*, 2006 WL 744414, *6 (E.D.Mo., Mar. 17, 2006) (same); *Allen v. Monsanto Co.*, 396 F.Supp.2d 728, 731 (S.D.W.Va. 2005) ("courts universally hold that a court decision in separate, unrelated case does not constitute `other paper' for removal purposes"); *G.M. Sign, Inc. v. Global Shop Solutions, Inc.*, 430 F.Supp.2d 826, 830 (N.D.Ill. 2006) (Gettleman, J.) ("this court would be inclined to follow the majority of cases interpreting the statute, which hold that the `order or other paper' must be generated in the same suit"); *McCormick v. Excel Corp.*, 413 F.Supp.2d 967, 970 (E.D.Wis. 2006) ("the words `an amended pleading, motion, order or other paper' are thought to refer only to documents in the same case, i.e., the case being removed"); *Phillips v. Allstate Ins. Co.*, 702 F.Supp. 1466, 1468-69, n. 2 (C.D.Cal. 1989) ("[a]lmost without exception, [cases dealing with the effect of modifications of prior case law on the timeliness of removal actions] have held that the paper required in §1446(b) must be a part of the underlying suit rather than an outside development in removal jurisdiction"); *Sclafani v. Ins. Co. of N. Amer.*, 671 F.Supp. 364, 365 (D.Md. 1987) (§1446(b) "relates only to papers filed in the action itself which alter or clarify the stated claim so as to reveal for the first time that a federal cause of action is stated"); and *Johansen v. Employee Benefit Claims, Inc.*, 668 F.Supp. 1294, 1296 (D.Minn. 1987) ("every court which has faced the issue present in this case has construed the phrase `or other paper' as referring solely to documents generated within the state court litigation itself").

> intended to limit order and other paper to documents in the case being removed. *See* 17 *No. 2 Fed. Litigator,* 30 (Feb. 2002) (indicating that the voluntariness requirement leads to the conclusion that order or other paper refers only to documents to the case being removed). A plaintiff can only generate documents in a case that is pending.

*McCormick v. Excel Corp.*, 413 F.Supp.2d 967, 971 (E.D.Wis. 2006). Because neither the unsealing order nor the federal government's service upon Dey of its *qui tam* complaint are events that occurred within the Kentucky state action, they cannot serve as the basis for federal jurisdiction.

## 2. Section 1446(b) only applies to voluntary acts of the plaintiff.

Section 1446(b) also is limited to voluntary acts of the plaintiff. As the Ninth Circuit made clear more than a decade ago in *California v. Keating*, 986 F.2d 346, 348 (9th Cir. 1993):

> [W]hen an event occurring after the filing of a complaint gives rise to federal jurisdiction, the ability of a defendant to remove is not automatic; instead, removability is governed by the 'voluntary/involuntary rule.' *See Self v. General Motors*, 588 F.2d 655, 657-60 (9th Cir. 1978); *see also Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71-72 (7th Cir. 1992) (discussing the voluntary/involuntary rule as it applies to diversity jurisdiction). The rule provides that a suit which, at the time of filing, could not have been brought in federal court must "remain in state court unless a 'voluntary' act of the plaintiff brings about a change that renders the case removable." *Self*, 588 F.2d at 657. As the Supreme Court has stated: the obvious principle of [the decisions developing the voluntary/involuntary rule] is that, in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case...and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case nonremovable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, *in invitum,* order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses towards a conclusion. *Great Northern Ry v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 239-40, 62 L.Ed. 713 (1918), *quoted in Self,* 588 F.2d at 659.

*See also, Oakes v. Allstate Ins. Co.,* 2005 WL 3134042 (W.D. Ky. 2005), citing *Huffman v. Saul Holdings Ltd. P'ship,* 194 F.3d 1072, 1078 (10th Cir. 1999), in which the court noted, "circumstances permitting removal must normally come about as the result of a voluntary act of the plaintiff." Although the voluntary/involuntary rule typically arises in diversity cases, *Keating* and numerous other cases have applied it in federal-question cases. *Keating*, 986 F.3d at 348, n. 1; *Morsani*, 79 F.Supp. 2d at 1333, n. 5 ("[i]n both federal question and diversity cases...Section 1446(b) restricts defendants from removing most cases when the circumstance potentially allowing removal arises through no consequence of the

8

plaintiff's actions"); *Dowd v. Alliance Mortgage Co.*, 339 F.Supp.2d 452, 455 (E.D.N.Y. 2004) ("involuntary changes in a case do not create removability if the plaintiff's complaint was not removable"); *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) ("'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction") (citing *SWS Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996)).[6]

Because neither the unsealing order nor the federal government's service upon Dey of its *qui tam* complaint were actions by the Commonwealth of Kentucky (voluntary or otherwise), they are not events that fall within 28 U.S.C. §1446(b).

## C. 31 U.S.C. §3732(b) does not confer original jurisdiction.

Even if the federal *qui tam* complaint against Dey falls within the ambit 28 U.S.C. §1446(b) (which it does not), this action is still not removable. Dey seeks removal pursuant to 28 U.S.C. §1441, which states that "any civil action brought in a state court of which the district courts of the United States have *original jurisdiction*, may be removed...." 28 U.S.C. §1441(a) (emphasis added). In support of its original jurisdiction argument, Dey relies on 31 U.S.C. §3732(b). *See* Notice of Removal, at 12, ¶38. However, as demonstrated below, this Court does not have original jurisdiction over Kentucky's action. At most, §3732(b) provides for supplemental jurisdiction over Kentucky's claims against Dey, i.e., it permits the Commonwealth, rather than Dey, to determine whether to bring these claims in federal court. Moreover, it is well established that actions for which the district courts have only supplemental jurisdiction may not be removed. *See, e.g., Syngeta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002) ("[a]ncillary jurisdiction...cannot provide the original jurisdiction that petitioners

---

[6] *See also, Stauffer v. Citizens Alliance Educational Foundation*, 2001 WL 34039481, *2 (D.Ore., Dec. 14, 2001); *Henderson v. City of Chattanooga*, 2002 WL 32060139, *5 (E.D.Tenn., Mar. 15, 2002) ("[a] state court case that initially is non-removable cannot subsequently become removable or be transformed into a removable case unless a change occurs that makes it removable as a result of the plaintiff's voluntary act"); *see also id.*, at *6 ("because a plaintiff is the master of his own complaint, involuntary changes caused by a party other than the plaintiff cannot make a case removable.... The voluntary-involuntary rule was developed, and is followed most often, in diversity cases.... However, the voluntary-involuntary rule is also applicable in nondiversity cases where federal subject matter jurisdiction is based on a federal question") (citations omitted).

must show in order to qualify for removal under §1441"); *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996) (supplemental jurisdiction statute is not a source of original subject-matter jurisdiction and a removal petition therefore may not base subject-matter jurisdiction on a supplemental-jurisdiction statute); and *Motion Control Corp. v. Sick, Inc.*, 354 F.3d 702, 706 (8th Cir. 2003) ("ancillary jurisdiction does not authorize removal under §1441").

It is Dey's burden, and a heavy one, to establish that this Court has original jurisdiction over Kentucky' claims against Dey pursuant to 31 U.S.C. §3732(b). That statute provides:

> The district courts shall have jurisdiction over any action brought under the laws of any state for the recovery of funds paid by a state or local government if the action arises from the same transaction or occurrence as an action brought under section 3730.

That this statute does not confer original jurisdiction over Kentucky's claims against Dey is apparent from the plain language of §3732(b), as well as the overall structure and legislative history of FCA.

By its express terms, the statute does not provide a grant of original jurisdiction. Congress could have explicitly provided for original jurisdiction, as it has done in more than 80 other statutes, but it did not.[7]  The jurisdiction over state claims provided by §3732(b) is *supplemental* jurisdiction. It operates like any other supplemental-jurisdiction provision -- it is entirely dependent on the existence of *another* claim with original jurisdiction, such as a federal FCA claim. It is not surprising that Congress felt it necessary to codify this grant of ordinary supplementary jurisdiction. It was not until 1990 that a statute codifying (and enhancing) supplementary jurisdiction was enacted by Congress. *See* 28 U.S.C. §1367; Pub. L. No. 101-650, Title III, §310(a), 104 Stat. 5113 (Dec. 1, 1990). Prior to that -- in 1986, when §3732(b) was enacted -- the limits of supplemental jurisdiction, particularly with respect to joinder of

---

[7] *See, e.g.*, 15 U.S.C. §6614(c)(1) ("the district courts of the United States shall have *original jurisdiction* of any action that is brought as a class action"); 9 U.S.C. §203 (regarding enforcement of foreign arbitral awards, stating the "district courts of the United States...shall have *original jurisdiction* over such an action..."); 5 U.S.C. §9007 (regarding long-term care insurance, stating the "district courts of the United States have *original jurisdiction* of a [such] civil action or claim..."); 12 U.S.C. §1441(a)(11) ("any civil action, suit, or proceeding to which the Thrift Depositor Protection Oversight Board is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have *original jurisdiction*").

pendent parties, were opaque at best. *See Commonwealth Edison Co. v. Westinghouse Electric Co.*, 759 F.Supp. 449, 452-53 (N.D.Ill. 1991), and *Perkins v. Halfex Co.*, 744 F.Supp. 169 (N.D.Ohio 1990).[8]

The FCA, when read as a whole, clearly demonstrates that §3732(b) merely provides for supplemental jurisdiction. Section 3732(b) is an exception to the general bar on intervention by all other parties except for the United States in a federal FCA action, permitting states and local governments to join or intervene in a federal FCA action when it grows out of the same transaction or occurrence as the state or local government claims. Under 31 U.S.C. §3730(b)(5), only the United States "may intervene or bring a related action based on the facts underlying" the federal FCA action. Accordingly, the codification of 31 U.S.C. §3732(b) provides a vehicle for a state to join a pending FCA action brought by the United States to recover state funds lost due to actions growing out of the same transaction or occurrence as the federal FCA claim and avoids the need to answer questions about whether a state can (or need) be a *qui tam* relator in order to recover.[9]  Without §3732(b), some courts have held, states would be barred from intervention. *See U.S. ex rel. Long v. SCS Business & Technical Institute, Inc.*, 173 F.3d 870, 880 (D.C. Cir. 1999) ("*§3732(b)*...authorizes permissive intervention by states for recovery of state funds (creating what is in effect an exception to §3730(b)(5)'s apparent general bar on intervention by all other parties except for the United States)"). Thus, 31 U.S.C. §3732(b) provides a means for a state or local government plaintiff to be the master of its own claim when there is a related pending federal FCA action.

**Dey has not cited, and the Commonwealth has not located, a single published case concluding that 31 U.S.C. §3732(b) constitutes a basis of original federal subject-matter jurisdiction.** Instead, as one court described it, "[t]he more obvious reading of §3732(b), however, is

[8] Because the term "supplemental jurisdiction" was not part of the statutory lexicon until four years after the enactment of 31 U.S.C. §3732(b), it makes perfect sense that 31 U.S.C. §3732(b) only uses the term "jurisdiction." Prior to the enactment of 28 U.S.C. §1367 in 1990, courts typically used the terms "ancillary" or "pendent," rather than "supplemental."

[9] *See United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100 (7th Cir. 1984) (pre-1986 amendments case finding a state may not be a relator), *superseded by statute*; *cf. Vermont Agency of Nat. Resources v. United States ex rel. Stevens*, 529 U.S. 765, 787, n. 18 (2000) (leaving open question whether a state is a "person" under the federal FCA for purposes of commencing suit).

that it authorizes *permissive intervention by states* for recovery of state funds (creating what is in effect an exception to §3730(b)(5)'s apparent general bar on intervention by all other parties except for the United States)." *SCS Business & Technical Inst., Inc.*, 173 F.3d at 880 (emphasis added, parenthetical in original); *see also United States ex rel. Stevens v. Vermont Ag. of Nat. Resources*, 162 F.3d 195, 205 (2nd Cir. 1998) ("another 1986 amendment,...*permits the joinder*, in an FCA suit, of related state-law claims where those claims are `for the recovery of funds paid by a state...'") (emphasis added), *overruled on other grounds*, 529 U.S. 765 (2000).[10]

Furthermore, the legislative history of §3732(b) makes clear that Congress intended for this provision to enhance the options of states, not restrict them. Section 3732(b) was added by the 1986 Amendments to the FCA at the urging of the National Association of Attorneys General ("NAAG"). As the Senate Report accompanying the 1986 Amendments provides:

> And finally, *in response to comments from the National Association of* [State] *Attorneys General, the subcommittee adopted a provision allowing State and local governments to join* State law actions with False Claims Act actions brought in Federal district court if such actions grow out of the same transaction or occurrence.

S. Rep. No. 345, 99th Cong., 2d Sess., at 16 (1986), *reprinted in 1986 U.S.C.C.A.N.* 5266, 5281 (emphasis added). Thus, the purpose of §3732(b) was *to permit, not require*, states and local governments to join pending federal FCA actions growing out of the same transaction or occurrence. *See SCS Business & Technical Institute, Inc.*, 173 F.3d at 880 (§3732(b) "authorizes *permissive intervention by states for recovery of state funds*") (emphasis added). It would belie common sense to conclude, as follows from Dey's argument, that the NAAG urged Congress to strip states of their ability to bring state-law claims in state court and *require* that all state-law actions be brought in federal court.

---

[10] *See also, John T. Boese, Civil False Claims and Qui Tam Actions* §4.01[B], at 4-20 (2006) ("this provision does not require the state to be a relator for jurisdiction to exist. Theoretically, a state could intervene in a federal False Claims Act suit to assert its own damages, and the *Long* [v. *SCS Business & Technical Inst., Inc.*] court concluded that this type of permissive intervention is the more obvious interpretation of Section 3732(b)"); *United States ex rel. LaCorte v. Merck & Co., Inc.*, 2004 U.S. Dist. LEXIS 4860, *23-24 (E.D.La. 2004) (permitting the State of Louisiana to intervene in a federal FCA case under 31 U.S.C. §3732(b) to pursue claims under Louisiana state law); *United States v. Sequel Contractors, Inc.*, 402 F.Supp.2d 1142, 1149-50 (C.D.Cal. 2005) (permitting Orange County, California to join its claims under the California False Claims Act with a federal FCA action under both 31 U.S.C. §3732(b) and the general federal supplemental-jurisdiction statute); and *United States ex rel. Anthony v. Burke Eng'g Co.*, 356 F.Supp.2d 1119, 1120 (C.D.Cal. 2005) (permitting a relator, pursuant to 31 U.S.C. §3732(b), to prosecute violations of California and Nevada law as supplemental to his federal FCA claim, the claim upon which the *Anthony* court had original jurisdiction).

It makes little sense, as Dey's position requires, that Congress would give defendants control of the choice of forum, drastically expand federal jurisdiction over traditionally state actions, and add enormous burdens to federal courts and the United States Department of Justice (which, under Dey's theory, would have to deal with all state complaints anytime a federal FCA action is filed) all without a single indication that this is what Congress intended. This argument is clearly without merit.

Moreover, nothing in the FCA supports Dey's contention that Kentucky's action and the federal *qui tam* action "should be litigated in a single forum." Notice of Removal, at 11, ¶38. For this proposition, Dey relies on 31 U.S.C. §3730(b)(5), which states that "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action" and states that Kentucky's action "must yield to the federal action in the event of any conflict." *Id.*, at 12, ¶40.[11] Dey also relies on §3732(b) with the mistaken reasoning that, since that section grants federal jurisdiction over state actions related to a pending federal action, the section *requires* that the state claims be litigated in federal court. Neither argument supports Dey's contention.

First, §3730(b)(5)'s ban does not apply to the states. This section is directed exclusively at actions by private parties (*see* 31 U.S.C. §3730(b), entitled "Actions by Private Parties"), and Dey cites no case that holds that a state may not bring a state-court action to recover state funds because of a pending federal FCA action. To the extent that some courts have applied §3730(b)(5) to states, these courts have recognized that §3732(b) provides an exception to the bar, thus allowing states to join FCA suits. *See SCS Business & Technical Institute, Inc.*, 173 F.3d at 880 ("§3732(b)...authorizes permissive intervention by states for recovery of state funds (creating what is in effect an exception to §3730(b)(5)'s apparent general bar on intervention by all other parties except for the United States)").

Moreover, the courts do not allow removal of an action without original jurisdiction so that it can be "married up" with a similar action pending in federal court (thus providing the state-law action with original jurisdiction), "even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction, and even if removal would

---

[11] Dey fails to identify any conflict in litigating in separate fora.

13

be efficient." *Ahearn*, 100 F.3d at 456 (citations omitted). "An already-existing federal action cannot provide a mechanism for removal of a non-removable state-court action." *In re Estate of Tabas*, 879 F.Supp. 464, 467 (E.D.Pa. 1995); *Ahearn*, 100 F.3d at 456; *Sebring Homes Corp v. T.R. Arnold & Assocs.*, 927 F.Supp. 1098, 1101 (N.D.Ind. 1995) (existence of a separate, but related, suit in federal court is not a basis for removal); and *N. Am. Van Lines, Inc. v. Coleman*, 633 F.Supp. 632, 634 (N.D.Ill. 1986) (rejecting as "wholly fanciful" the use of an already-existing federal action as a basis of removal under §1441(c)).

Indeed, even when a state-law case is removed directly to *the exact district* where the similar federal case is pending, federal courts have rejected a defendant's attempt to remove the case to join it with the federal action. In *Tafuri v. Jeppson Sanderson Co.*, 25 F.Supp.2d 1364, 1368-69 (S.D.Fla. 1998), defendants asserted their case was properly removed because the federal district court had supplemental jurisdiction over the purely state-law action, "based upon its original jurisdiction over related and consolidated cases in [a] multidistrict litigation." *See Id.*, at 1365-66. Relying on the *Ahearn* and *Tabas* line of cases, the court concluded that "the pendency of numerous cases in...multidistrict litigation..., over which the Court has original jurisdiction, does not cure the absence of original jurisdiction in the [state-law] suit" and remanded the case. *Id.*, at 1368–69.

## D. Even if federal jurisdiction exists with respect to the state's claims against Dey, the Court can and should sever the claims against the remaining defendants and remand them to state court.

Even if 31 U.S.C. §3732(b) confers federal jurisdiction over the state's claims against Dey (which it does not), there is no federal jurisdiction over the state's claims against the remaining defendants. Accordingly, the Court may retain only those claims on the basis of supplemental jurisdiction pursuant to 28 U.S.C. §1367. Section (a) of that statute provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14

In deciding whether the state's claims against the remaining defendants are so related to the claims against Dey that they form part of the same case or controversy, this Court should look to whether the claims "arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines*, 90 F.3d 451 (11th Cir. 1996). Here, although the witnesses and evidence regarding the Kentucky Medicaid program's prescription drug reimbursement rules and regulations are likely to be common as against all defendants, the state intends to prove its case against each defendant through fact witnesses and evidence that are not common to all defendants. Separate witnesses and evidence will be offered to establish each defendant's conduct in publishing false AWPs, as well as its knowledge that such AWPs were false. Moreover, that the state's claims against the remaining defendants are not part of the same "case or controversy" is apparent from the fact that the federal government has chosen *not* to join multiple defendants in a single case (as of the date of filing of this brief, the federal government has unsealed separate complaints against Abbott Laboratories and Dey; presumably complaints against additional individual drug manufacturers will be unsealed in the future).

Even if the state's claims against the remaining defendants are part of the same "case or controversy" as the state's claims against Dey, this Court still has discretion to decline to exercise supplemental jurisdiction over them. Pursuant to 28 U.S.C. §1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
>
> (1)   the claim raises a novel or complex issue of State law;
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;...or
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, the state's claims against the remaining defendants raise complex issues of state law that are unrelated to the federal government's claims. Moreover, the claims against the remaining defendants substantially predominate over the state's claims against Dey, as the defendants are trying to combine purely state-law claims from all across the country onto a single federal FCA complaint against Dey. Finally, the exercise of supplemental jurisdiction would materially impede both the federal case and Kentucky's case, constituting a compelling reason for declining to exercise supplemental jurisdiction.

*See Madden v. Able Supply*, 205 F.Supp.2d 695 (S.D. Tex. 2002) (where plaintiff brought state-law claims against 40 defendants for asbestos poisoning of her husband and federal jurisdiction existed as to only one defendant, the court severed the claims against the remaining defendants and remanded them to state court, finding that the claims substantially predominated over the federal claim and the likelihood of transfer of the non-federal claims to a multi-district litigation where they would languish for years in light of the numerous other pending cases constituted a compelling reason for declining to exercise supplemental jurisdiction).

## E. The Commonwealth is entitled to attorneys' fees and costs.

28 U.S.C. §1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court recently articulated the standard to be applied in determining whether to award costs and expenses pursuant to this statute:

> Absent unusual circumstances, courts may award attorney's fees under 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.... In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

*Martin v. Franklin Capital Corp.*, 126 S.Ct. 704, 711 (2005). In applying this test, a court "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* Here, Dey clearly lacked an objectively reasonable basis for removal. This is particularly true with respect to its position that the unsealing of the federal *qui tam* complaint constitutes an "amended pleading, motion, order, or other paper" within the meaning of 28 U.S.C. §1446(b). This position has been squarely rejected by virtually every court to have considered it, including the MDL court in Boston -- to which Dey seeks to have this case transferred -- that remanded this very case.

District courts have the discretion to award attorneys' fees and costs upon remand of an action following removal. *Merck*, 359 F. Supp. 2d at 577, quoting *Morris v. Bridgestone/Firestone, Inc.*, 985

F.2d 238 (6th Cir. 1993). The *Morris* court also stated, "A threshold determination of bad faith, improper purpose, or vexatious or wanton conduct is not necessary prior to awarding attorneys' fees and costs...an award of fees and costs should be upheld where it is fair and equitable under the circumstances." *Id.* at 239. *See also, Hansard v. Forsyth County*, 2006 WL 1843559, at *2-3 (11th Cir. July 6, 2006). (affirming award of attorneys' fees on remand where defendants did not have an objectively-reasonable basis for removal when the complaint, on its face, did not plead a federal claim and resolution of the state-law claims did not necessarily require the resolution of any federal issues). Thus, the instant case, like *Hansard* does not "aris[e] from" federal law and there is no substantial federal issue on the face of the complaint. Defendant's reading of 31 U.S.C. § 3732(b) does not withstand even the slightest scrutiny. This is Dey's second bite at the removal apple. The first time that Dey removed this case it was mired in the federal court system for nine (9) months before it was remanded because the MDL court found that *Grable* is not an "order or other paper" under § 1446(b) and that the Dey's notice of removal was untimely. 431 F.Supp2d at 109. Likewise, the unsealing of a federal qui tam against Dey in an unrelated action not an "order or other paper" under § 1446(b). Thus, Defendant's disruptive removal is a purely dilatory action which cannot be condoned. Accordingly, since Plaintiffs' Complaint contains no facial substantial question of federal law, it is not subject to removal and Plaintiffs are entitled to an award of attorneys' fees. *Hansard*, 2006 U.S. App. LEXIS 17034, at *7.

Other cases have granted fees and costs in similar circumstances. In *Ahearn*, the Sixth Circuit concluded that "the absence of caselaw or statutory authority" rendered an order granting removal "clearly erroneous" and *required* the district court to award fees and costs. *Ahearn v. Charter Township*, 1998 U.S. App. LEXIS 13445, at *14 (6th Cir. June 18,1998). See also *Brown v. Prudential Ins. Co. Of America*, 954 F. Supp. 1582, 1585 (S.D.Ga. 1997) (granting fees and costs), and *Sebring Homes*, 927 F. Supp. 1098 at 1104 (same).

Thus, removing a case to delay litigation or having an objectively unreasonable basis for removal subjects a defendant to fees and costs under § 14479(c). Accordingly, the Commonwealth is entitled to its attorneys' fees and costs.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff asks the Court to remand this case to the state court from whence it came and to award it its fees and costs.

Respectfully submitted,

GREGORY D. STUMBO
ATTORNEY GENERAL OF KENTUCKY


By:   s/Paula J. Holbrook
      Paula J. Holbrook
      C. David Johnstone
      OFFICE OF THE ATTORNEY GENERAL
      1024 Capital Center Drive, Suite 200
      Frankfort, Kentucky 40601
      (502) 696-5300
      (502) 573-7150 FAX
      Paula.Holbrook@ag.ky.gov

      Counsel for Plaintiff
      Commonwealth of Kentucky

# EXHIBIT A

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 37 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 2 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 1 of 16

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAII, | ) | |
| | ) | |
| Plaintiff, | ) | CV. NO. 06-00437 DAE-BMK |
| | ) | |
| vs. | ) | AMENDED ORDER DENYING |
| | ) | DEFENDANT DEY, INC.'S |
| ABBOTT LABORATORIES, INC.; | ) | MOTION FOR LEAVE TO FILE |
| ALPHARMA USPD, INC.; | ) | SUPPLEMENTAL NOTICE OF |
| APOTHECON, INC.; | ) | REMOVAL |
| ASTRAZENECA | ) | |
| PHARMACEUTICALS LP; | ) | |
| ASTRAZENECA LP; AVENTIS | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| AVENTIS BEHRING LLC n/k/a/ | ) | |
| ZLB BEHRING LLC; BARR | ) | |
| LABORATORIES, INC.; BAXTER | ) | |
| HEALTHCARE CORPORATION; | ) | |
| BAYER CORPORATION; BEN | ) | |
| VENUE LABORATORIES, INC.; | ) | |
| BOEHRINGER INGELHEIM | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| BOEHRINGER INGELHEIM | ) | |
| ROXANE, INC. f/k/a ROXANE | ) | |
| LABORATORIES, INC.; BRISTOL- | ) | |
| MYERS SQUIBB CO.; | ) | |
| CENTOCOR, INC.; DEY, INC.; | ) | |
| FOREST PHARMACEUTICALS, | ) | |
| INC.; GLAXOSMITHKLEIN | ) | |
| PHARMACEUTICALS, | ) | |
| HOFFMAN-LAROCHE, INC.; | ) | |
| HOSPRIA, INC.; IVAX | ) | |
| CORPORATION, INC.; IVAX | ) | |
| PHARMACEUTICAL, INC.; | ) | |
| JANSSEN PHARMACEUTICAL | ) | |
| PRODUCTS, LP; JOHNSON & | ) | |

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 38 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 3 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 2 of 16

JOHNSON, INC.; MCNEIL-PPC,            )
INC.; MERCK & CO., INC.;             )
MYLAN LABORATORIES, INC.;            )
MYLAN PHARMACEUTICALS,               )
INC.; NOVARTIS                       )
PHARMACEUTICALS                      )
CORPORATOIN; ORTHO                   )
BIOTECH PRODUCTS, LP; PAR            )
PHARMACEUTICAL COS., INC.;           )
PFIZER, INC.; PHARMACIA              )
CORPORATION; ROCHE                   )
LABORATORIES, INC.; PUREPAC )
PHARMACEUTICAL CO.;                  )
SANDOZ, INC.; SCHERING-              )
PLOUGH CORPORATION; SICOR )
PHARMACEUTICALS, INC. f/k/a/ )
GENSIA SICOR                         )
PHARMACEUTICALS, INC.; TAP )
PHARMACEUTICAL PRODUCTS, )
INC.; TEVA                           )
PHARMACEUTICALS USA, INC.; )
WARRICK PHARMACEUTICALS )
CORPORATION; WATSON                  )
PHARMACEUTICALS, INC.;               )
WATSON PHARMA INC., f/k/a            )
SCHEIN PHARMACEUTICALS,              )
INC.; WATSON LABORATORIES, )
INC.; DOE CORPORATIONS 1-            )
100; DOE ENTITIES 1-100.             )
                                     )
            Defendants.              )
_____  )

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 39 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 4 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 3 of 16

## ORDER DENYING DEFENDANT DEY, INC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL NOTICE OF REMOVAL

Defendant Dey, Inc. ("Dey") seeks leave to file a supplemental notice of removal in order to add a new substantive basis for removal, namely, that the federal government's service upon Dey of a recently unsealed *qui tam* complaint pursuant to the federal False Claims Act, 31 U.S.C. § 3729-32 (2000) (FCA) made this case removable under 28 U.S.C. §§ 1441 and 1446(b). After careful consideration of the Motion and the submissions and arguments of counsel, the Motion is hereby DENIED. This Motion is futile because the new substantive basis for removal is without merit.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff State of Hawaii ("the State") filed this action in the Circuit Court of the First Circuit of Hawaii on April 27, 2006, alleging that Defendants "engage[d] in an unlawful scheme to cause Hawaii and its citizens to pay inflated prices for prescription drugs." (Pl.'s Mem. Sup. Mot. 5-6.) Specifically, the State claims that Defendants published phony "average wholesale prices" ("AWPs") and engaged in other deceptive acts that led to overpayments by both the State Medicaid program and individual Medicare beneficiaries in Hawaii. The State

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 40 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 5 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 4 of 16

alleges that these actions violated the Hawaii False Claims Act, the Hawaii Unfair

or Deceptive Practices Act, and constituted common law intentional and/or

negligent misrepresentation and unjust enrichment. The State alleges no federal

causes of action.

Defendants filed a notice of removal on August 10, 2006. Defendants

assert in this notice of removal that federal jurisdiction exists because the

Medicare-based claims raise a substantial federal question. The State filed a

motion to remand on August 25, 2006. A hearing on the remand motion was

scheduled for October 12, 2006. During the evening of October 11, Defendant

Dey filed the present Motion, asking the Court for leave to file a supplemental

notice of removal.

Dey asserts that an additional basis for removal arose on September

11, 2006 after it had already filed its original notice of removal on August 10. This

new ground claimed by Dey was the unsealing of <u>Ven-A-Care of the Florida Keys,

Inc. ex. rel. United States v. Dey, Inc.</u>, Civ. No. 05-11084-MEL (D. Mass. filed

August 22, 2006) (unsealed Sept. 9, 2006). The suit is a federal *qui tam* action

brought on behalf of the United States by Ven-A-Care of the Florida Keys, Inc.

("Ven-A-Care") alleging that by reporting inflated AWPs, Dey violated the FCA.

Dey now argues that the FCA provides an additional, independent basis for

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 41 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 6 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 5 of 16

jurisdiction that will allow it to remove this case to federal court.

At the hearing on October 12, the Court requested that the parties brief Dey's Motion. The State's Answer was submitted on October 18, and Dey's Reply was submitted October 19. A hearing was held on October 20, 2006.

## LEGAL STANDARD

Cases filed in state court may be removed to federal district court when the district courts have original subject matter jurisdiction over the case. 28 U.S.C. § 1441(a) (2000).[1] District courts of the United States have original subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2000). District courts also have supplemental jurisdiction over related claims and parties. See, e.g., 28 U.S.C. § 1367(a) (2000). Supplemental jurisdiction does not provide a basis for removal. Sygenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 34 (2002) (holding that "[a]ncillary jurisdiction . . . cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441"); Ahearn

---

[1] Section 1441(a) provides, in part, that "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 42 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 7 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 6 of 16

v. Charter Township of Bloomfield, 100 F.3d 451, 456 (6th Cir. 1996).

Even where original jurisdiction does exist, certain procedural requisites must be met in order to remove a case. Specifically, where the case is not initially removable, the defendant must file a notice of removal in the appropriate district court "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b) (2000).

Where these procedural requisites are not met, or where the district court lacks subject matter jurisdiction, the case must be remanded to state court. See 28 U.S.C. § 1447(c) (2000). The removal statue is strictly construed in favor of remand and there is a "strong presumption against removal." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The defendant "always has the burden of establishing that removal is proper." Id.

## DISCUSSION

Dey moves the Court for leave to supplement its notice of removal to include the Ven-A-Care FCA complaint as an additional, newly-arisen basis for removal. However, an attempt to remove the case on this new ground would be

6

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 43 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 8 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 7 of 16

both procedurally and substantively defective. Procedurally, Dey's notice of the Ven-A-Care suit does not meet the "order or other paper" requirement of § 1446(b). Substantively, the Ven-A-Care suit still does not provide the Court with the original subject matter jurisdiction required for removal under § 1441(a). Because Dey will not ultimately be able to remove the case on this new ground it asserts, it would be futile to allow Dey to supplement its notice of removal.

## I. PROCEDURAL ISSUES: § 1446(b)

### A. Supplementing a Notice of Removal

A defendant may only remove a case within thirty days of receipt of the initial pleading or an "order or other paper" that indicates the case is removable. 28 U.S.C. § 1446(b). After the expiration of the thirty day period, a defendant is generally not allowed to amend the notice to add new grounds for removal. Arco Envtl. Remediation v. Dep't of Health and Envtl. Quality, 213 F.3d 1108, 1117 (9th Cir. 2000). However, where a new ground for removal arises during the pendency of the litigation, some courts have allowed the notice of removal to be supplemented to set forth the newly-arisen ground even after the expiration of the thirty-day time period. See Davis v. Life Investors Ins. Co. of America, 214 F.Supp.2d 691, 694 (S.D. Miss. 2002). That is precisely what Dey

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 44 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 9 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 8 of 16

seeks to do here.

Dey argues that the Ven-A-Care FCA suit created a new ground for removal and that Dey should be permitted to supplement its notice of removal to include the new ground.[2] In this unique situation, Dey will not be procedurally barred from supplementing its notice of removal if it is able to meet the other procedural and jurisdictional requisites for removal.

## B. Relation Back

Dey argues not only that it should be allowed to supplement its notice of removal, but that this supplemented notice of removal should relate back to its original notice of removal under Federal Rule of Civil Procedure 15(d). Federal Rule of Civil Procedure 15(c) provides that an amendment or supplementation of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ." F.R.C.P. 15(c).

---

[2] The State does not seriously contest Dey's motion on this particular issue. It merely argues, in a footnote, that the motion should be denied "because of Dey's undue delay in filing it." (Pl.'s Mem. Opp. 2-3 n.1.) Because Dey filed the motion to supplement within thirty days of receiving notice of the Ven-A-Care FCA suit, however, the motion was not untimely.

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 45 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 10 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 9 of 16

Dey's supplemental notice of removal will not relate back to the original notice of removal. First, Dey provides no support for the proposition that a notice of removal constitutes a "pleading" within the meaning of Rule 15(c). In fact, Rule 7 of the Federal Rules of Civil Procedure indicates that "pleading" is a limited term:

> There shall be a complaint and an answer; a reply to a counterclaim denonminated as such; an answer to a cross-claim; a third-party complaint . . . and a third party answer, if a third-party complaint is served. No other pleading shall be allowed . . . ."

F.R.C.P. 7(a).

Second, even if a notice of removal were considered a pleading, the "claim or defense" asserted in Dey's supplement would not "ar[i]se out of the conduct, transaction or occurrence" asserted in its original notice of removal. See F.R.C.P. 15(c). The "claim or defense" that Dey now seeks to assert is its claim that the service of the Ven-A-Care FCA complaint created a new ground for jurisdiction that did not previously exist. In fact, it is only because Dey is asserting a "claim or defense" based on a new occurrence that Dey is not barred from supplementing its original notice of removal under the general rule prohibiting the amendment of removal notices. Dey's supplemental notice of removal, if allowed, will not relate back to its original removal notice.

9

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 46 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 11 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 10 of 16

## C. "Order or Other Paper"

Because Dey's supplemental notice of removal will not relate back to its original notice of removal, Dey's new notice of removal must be able to independently meet the procedural requirements of 1446(b).  Section 1446(b) allows a defendant to file a notice of removal only after receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b).  Dey contends that its receipt of the Ven-A-Care FCA complaint (or alternatively, the order unsealing the Ven-A-Care complaint) constituted just such a "receipt . . . of an . . . order or other paper," § 1446(b).  While there may well be some instances in which a pleading or decision in a different case can meet the "other paper or order" requirement, this is not such an instance.

Generally, the "order or other paper" requirement of 1446(b) is met only by "documents generated within the state court litigation," Rose v. Beverly Health & Rehabilitation Services, Inc., 2006 WL 2067060 (E.D. Cal. 2006).  According to the State, because the Ven-A-Care complaint and the order unsealing it are documents filed outside of the state case, they do not constitute an "order or other paper."

Dey, however, urges the Court to apply a narrow exception to this

10

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 47 of 52

Case 3:06-cv-00069-KKC    Document 35-3    Filed 11/03/2006    Page 12 of 17
Case 1:06-cv-00437-DAE-BMK    Document 130    Filed 10/30/2006    Page 11 of 16

general rule. Specifically, Dey asks the Court to follow two cases that have held external documents involving a sufficient nexus of parties and issues to be "order or other paper" for the purposes of 1446(b): <u>Doe v. American Red Cross</u>, 14 F.3d 196 (3d Cir. 1993) and <u>Green v. R.J. Reynolds Tobacco Co.</u>, 274 F.3d 263 (5th Cir. 2001). In <u>Doe</u>, a Supreme Court decision in a related case constituted an "order" where the decision expressly authorized that very same defendant to remove all actions against it to federal court. 14 F.3d at 201. In <u>Green</u>, a federal Court of Appeals decision in a related case also constituted an "order" where it involved the same defendants, a similar factual situation, the same legal issue, and precluded the defendants in <u>Green</u> from being sued under Texas law. 274 F.3d at 263. Even though the decision in the related case in <u>Green</u> did not specifically address removal, as had the related Supreme Court decision in <u>Doe</u>, the <u>Green</u> court reasoned that its effect was the same: it prohibited suit against the defendant in state court. <u>Id.</u> The federal forum was the only remaining available forum. <u>See</u> <u>id.</u>

That is not the case here. While the Ven-A-Care complaint does involve the same defendant, and arguably involves similar factual situations and legal issues, it does nothing to prohibit suit against Dey in state court. Nor does the order unsealing the Ven-A-Care complaint prohibit suit against Dey in state

11

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 48 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 13 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 12 of 16

court in any way.  Thus, even under <u>Doe</u> and <u>Green</u>, neither the Ven-A-Care complaint nor the order unsealing it would constitute an "order or other paper" for the purposes of § 1446(b).[3]  Because the requirements of § 1446(b) are not met, the case is not removable and Dey's attempt to supplement the notice of removal would be futile.

## II.  JURISDICTIONAL ISSUES: §1441(a)

In addition to failing procedurally under § 1446(b), Dey's attempt to supplement its notice of removal would also fail substantively under § 1441(a). Under § 1441(a), cases filed in state court may only be removed if the federal district court has "original jurisdiction" over the matter.  § 1441(a).  Dey argues that the Ven-A-Care suit, by invoking the FCA, gives the Court the necessary original jurisdiction.  Dey contends that whenever a plaintiff sues under the FCA, 31 U.S.C. § 3732(b) automatically grants to federal courts original jurisdiction over related suits by state government.

Specifically, § 3732(b) states:

The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State

---

[3]Moreover, it is questionable whether a complaint constitutes an order in the same way a decision of a United States Court of Appeals or the United States Supreme Court does.

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 49 of 52

Case 3:06-cv-00069-KKC    Document 35-3    Filed 11/03/2006   Page 14 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 13 of 16

or local government if the action arises from the same transaction or occurrence as an action brought under section 3730.

§ 3732. Dey contends that the "jurisdiction" referred to in the statute is actually "original jurisdiction." Therefore, Dey argues, § 3732 gives the district courts original jurisdiction over this case because the Ven-A-Care action was brought under § 3730, because this case is brought by a state government, and because the action arguably arises from the same transaction or occurrence as the Ven-A-Care action.[4]

Dey's arguments are not persuasive. As the State demonstrates, the language, legislative history, and context of § 3732(b) all indicate that it grants the district courts not original jurisdiction, but supplemental jurisdiction.

First, the language of § 3732(b) indicates that the jurisdiction it confers is dependent, not independent. Federal jurisdiction under § 3732(b) exists

---

[4]     Dey also makes the novel argument that regardless of whether original jurisdiction is directly conferred on the district courts by § 3732(b), it is indirectly conferred on them by 28 U.S.C. § 1331. Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Dey contends that because the False Claims Act is a law of the United States, and because § 3732(b) provides the State with the ability to intervene in the Ven-A-Care case, that the state case now arises under the laws of the United States just as if the State had alleged a federal cause of action against Dey.

Putting aside the tautological nature of this argument, common sense and basic principles of statutory construction dictate that Dey's argument must be false. If Dey is correct, then all grants of supplemental jurisdiction would also simultaneously be grants of original jurisdiction. Even the supplemental jurisdiction statute itself, 28 U.S.C. § 1367, would grant original jurisdiction under Dey's construction of § 1331. This is obviously incorrect, and Dey did not pursue this argument at the hearing.

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 50 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 15 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 14 of 16

only where there is another independent action separately grounded in the original jurisdiction. Section 3732(b) does not stand on its own, but serves only to add jurisdiction for related actions: in short, it exists to supplement the original jurisdiction the district courts have over suits brought directly under the FCA.

Second, the legislative history of § 3732(b) supports the conclusion that it allows – but does not force – states to intervene in FCA actions. This section was added at the urging of the National Association of the State Atttorney's General, and was intended to "allow[] State . . . governments to join State law actions with False Claims Act actions brought in Federal district court." S. Rep. No. 345, 99th Cong., 2nd Sess., at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5281. Similarly, courts interpreting the FCA have recognized that the purpose of § 3732(b) is to authorize "permissive intervention by states for recovery of state funds." SCS Business & Technical Inst., Inc., 173 F.3d, 870, 880 (D.C. Cir. 1999). Without § 3732(b), states would be barred from intervening in FCA actions by §3730(b)(5). Id. It seems unlikely that § 3732(b) was ever intended to be able to force states into a federal forum without alleging any federal causes of action.

Third, the broader context of Congressional action further supports the conclusion that § 3732(b) gives district courts supplemental, not original, jurisdiction. Had Congress wanted to create original jurisdiction, it would have

14

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 51 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 16 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 15 of 16

used the words "original jurisdiction." as it has in numerous other places. See, e.g.,
15 U.S.C. 6614( c)(1) ("the district courts of the United States shall have original
jurisdiction of any Y2K action that is brought as a class action"); 5 U.S.C. § 9007
(stating that "district courts of the United States shall have original jurisdiction"
over long-term care insurance claims); 12 U.S.C. § 1441(a)(11) ("any civil action,
suit, or proceeding to which the Thrift Depositor Protection Oversight Board is a
party shall be deemed to arise under the laws of the United States, and the United
States district courts shall have original jurisdiction").[5]

The language, legislative history, and context all indicate that §
3732(b) does not grant the district courts original jurisdiction over related claims
brought by state governments.  Rather, it grants them only supplemental
jurisdiction.  Because supplemental jurisdiction cannot be a basis for removal,
Syngenta Crop Protection, Inc., 537 U.S. at 34, the Ven-A-Care suit does not
provide Dey with an additional substantive basis for removing this case.  Dey's
motion to amend its notice of removal on this ground would be futile.

---

[5] Furthermore, it makes sense that Congress did not use the term "supplemental jurisdiction" in § 3732(b), since it was not until 1990 that the various pre-existing types of supplemental jurisdiction was codified as "supplemental jurisdiction" by 28 U.S.C. § 1367. Section 3732(b) was passed in 1986, four years before this change in the way supplemental jurisdiction was approached.

Case 1:01-cv-12257-PBS   Document 3579-3   Filed 01/22/07   Page 52 of 52

Case 3:06-cv-00069-KKC   Document 35-3   Filed 11/03/2006   Page 17 of 17
Case 1:06-cv-00437-DAE-BMK   Document 130   Filed 10/30/2006   Page 16 of 16

## CONCLUSION

For the foregoing reasons, Dey's Motion is hereby DENIED on the

grounds of futility.

IT IS SO ORDERED.

DATE: Honolulu, Hawaii, October 27, 2007



/s/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

State of Hawaii v. Abbot Labs., Inc.; AMENDED ORDER DENYING DEFENDANT DEY,
INC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL NOTICE OF REMOVAL; CV
No. 06-00437 DAE-BMK.                    16