IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

|  |  |  |
|---|---|---|
| COMMONWEALTH OF KENTUCKY ex rel. GREGORY D. STUMBO, ATTORNEY GENERAL, | ) ) ) | No. 3:06-CV-00069-KKC |
| Plaintiff, | ) ) | |
| -against- | ) ) | ELECTRONICALLY FILED |
| WARRICK PHARMACEUTICALS CORPORATION; SCHERING-PLOUGH CORPORATION; SCHERING CORPORATION; DEY, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT DEY, INC.'S MEMORANDUM IN
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND



EXHIBIT
E

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 4

ARGUMENT .......................................................................................................................... 5

I.   THIS COURT HAS ORIGINAL JURISDICTION OVER THE KENTUCKY
     ACTION UNDER 37 U.S.C. § 3732(B) AND THE ACTION IS REMOVABLE
     UNDER 28 U.S.C. § 1441 .......................................................................................... 5

     A.   This Court Has Original Subject Matter Jurisdiction Over This Action
          Because Section 3732(b) Is An Independent Statutory Grant of
          Jurisdiction ....................................................................................................... 5

     B.   This Action May Be Removed Under 28 U.S.C. § 1441 et seq. Because of
          the Grant of Jurisdiction in Section 3732(b) .................................................... 8

     C.   Kentucky's Legislative History Argument Supports Dey's Position ................. 9

     D.   Section 3732(b) Creates Jurisdiction Over Actions, Not Supplemental
          Jurisdiction Over Claims ................................................................................... 11

     E.   Federal Question Jurisdiction Also Exists Under 28 U.S.C. § 1331 ................. 15

II.  DEY'S OCTOBER 11 NOTICE IS TIMELY UNDER 28 U.S.C. § 1446(b) ............... 16

     A.   The "Other Paper" Need Not Arise from the State Action ............................... 17

     B.   The Cases Upon Which Plaintiff Relies Are Inapposite .................................. 21

     C.   The "Voluntary Action" Rule Does Not Apply in This Case ........................... 22

III. KENTUCKY'S SEVERANCE ARGUMENTS ARE MERITLESS ............................ 24

CONCLUSION ....................................................................................................................... 24

## TABLE OF AUTHORITIES

### CASES

Addo v. Globe Life & Acc. Insurance Co., 230 F.3d 759 (5th Cir. 2000)...................... 22

Ahearn v. Charter Township of Bloomfield, 100 F.3d 451 (6th Cir. 1996) ................... 12

Alabama v. Abbott Laboratoriess, No. 2:06cv920 (M.D. Ala. Nov. 2, 2006)
    (Exhibit C) .................................................................................................. 14

American National Red Cross v. S.G. and A.E., 505 U.S. 247 (1992) ...................passim

Ancar v. Murphy Oil U.S.A., Inc., Nos. 06-3246 - 06-3262, 2006 WL 2850445
    (E.D. La. Oct. 3, 2006)................................................................................ 17

Avco Corp. v. Local 1010 of the International Union, 287 F. Supp. 132 (D. Conn.
    1968)........................................................................................................... 21

Benson v. SI Handling Systems, Inc., 188 F.3d 780 (7th Cir. 1999) ............................... 2

Blair v. Shanahan, 38 F.3d 1514 (9th Cir. 1994), cert. denied, 514 U.S. 1066 ............... 11

Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691 (2003)...............................passim

Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005)............................ 8

Broderick v. Dellasandro, 859 F. Supp. 176 (E.D. Pa. 1994) ......................................... 18

California v. Keating, 986 F.2d 346 (9th Cir. 1993) ..................................................12, 22

City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997) ................. 23

Davis v. Life Investors Insurance Co. of America, 282 B.R. 186 (S.D. Miss.
    2002).......................................................................................................... 13

Davis v. Life Investors  Insurance Co. of America, Inc., 214 F. Supp. 2d 691
    (S.D. Miss. 2002) ........................................................................................ 23

Doe v. American Red Cross, 14 F.3d 196 (3d Cir. 1993)........................................passim

Dowd v. Alliance Mortgage Co., 339 F. Supp. 2d 452 (E.D.N.Y. 2004)........................ 22

EEX Corp. v. ABB Vetco Gray, Inc., 161 F. Supp. 2d 747 (S.D. Tex. 2001)................. 15

G.M. Sign, Inc. v. Global Sharp Solutions, Inc., 430 F. Supp. 2d 826 (N.D. Ill. 2006).................................................................................................................. 25

Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005)................................................................................................... 1

Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263 (5th Cir. 2001)........................*passim*

Hamilton v. Hayes Freight Lines, Inc., 102 F. Supp. 594 (E.D. Ky. 1952)..................... 18

Hansard v. Forsyth County, 2006 WL 1843559 (11th Cir. July 6, 2006)........................ 25

Hawaii v. Abbott Laboratories, Inc., No. 06-00437 (D. Hawaii October 27, 2006) (Amended Order Denying Defendant Dey, Inc.'s Motion For Leave To File Supplemental Notice Of Removal) (Exhibit B)...................................................14, 15

Henderson v. City of Chattanooga, 2002 WL 32060139 (E.D. Tenn. Mar. 15, 2002)................................................................................................................. 22

iGames Entertainment Inc. v. Regan, No. 04-CV-4179, 2004 WL 2538285 (E.D. Pa. Nov. 9, 2004) ....................................................................................... 18

In Re Asbestos Litigation, No. CV01-1790-PA, 2002 WL 649400 (D. Or. Feb. 1, 2002)................................................................................................................. 24

In Re Donington, Karcher, Salmond, Ronan & Reinone, P.A., 194 B.R. 750 (D.N.J. 1996) ..................................................................................................... 24

In Re Estate of Tabas, 879 F. Supp. 464 (E.D. Pa. 1995).........................................12, 13

In re Pharm. Indus. Average Wholesale Price Litig., MDL-1456 (JPML Nov. 8, 2006) (Conditional Transfer Order No. 33) (Exhibit A) ............................................. 1

In re Pharmaceutical Industry Average Wholesale Price Litigation, 431 F. Supp. 2d 98 (D. Mass 2006)............................................................................................ 1, 20

International Paper Co. v. Inhabitants of the Town of Jay, Maine, 887 F.2d 338 (1st Cir. 1989)........................................................................................................ 11

Martin v. Franklin Capital Corp., 126 S. Ct. 704, 546 U.S. 132 (2005).......................... 25

N. America Van Lines, Inc. v. Coleman, 633 F. Supp. 632 (N.D. Ill. 1986)................... 12

Oakes v. Allstate Insurance Co., 2005 WL 3134042 (W.D. Ky. 2005) .......................... 22

Parker v. Scrap Metal Processors, Inc., 386 F.3d 993 (11th Cir. 2004) ........................... 7

Pence v. Kleppe, 529 F.2d 135 (9th Cir. 1976).................................................................... 7

Pennsylvania v. TAP Pharm. Products, Inc., 415 F. Supp. 2d 516 (E.D. Pa. 2005) ........ 20

Poulos v. NAAS Foods, Inc., 959 F.2d 69 (7th Cir. 1992) ............................................... 23

S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489 (5th Cir. 1996).................................... 22

Sanchez v. Liggett & Myers, Inc., 187 F.3d 486 (5th Cir. 1999)...............................18, 19

Save our Sound Fisheries Association v. Callaway, 429 F. Supp. 1136 (D.R.I.
   1977)................................................................................................................................ 7

Sebring Homes Corp v. T.R. Arnold & Associates, 927 F. Supp. 1098 (N.D. Ind.
   1995)............................................................................................................................... 12

Simms v. Roclan Energy Services, Inc., 137 F. Supp. 2d 731 (W.D. La. 2001) ......... 6, 15

State of Minnesota v. Pharmacia Corp., No. 05-1394 (PAM/JSM), 2005 WL
   2739297 (D. Minn. Oct. 24, 2005)............................................................................... 20

State of Wisconsin v. Abbott Laboratoriess, 390 F. Supp. 2d 815 (W.D. Wis.
   2005)..........................................................................................................................20, 21

Stauffer v. Citizens Alliance Education Foundation, 2001 WL 34039481 (D. Ore.
   Dec. 14, 2001)............................................................................................................... 22

Tafuri v. Jeppson Sanderson Co., 25 F. Supp. 2d 1364 (S.D. Fla. 1998) ....................... 12

Thomson v. Able Supply Co., 179 F. Supp. 2d 693 (W.D. Tex. 2002).............................. 24

Thornton v. Allstate Insurance Co., 492 F. Supp. 645 (E.D. Mich. 1980) ........................ 6

TMI Litigation Cases, 940 F.2d 832 (3d Cir. 1991) ........................................................ 16

United States ex rel. St. John LaCorte v. Merck & Co., No. 99-3807, 2004 U.S.
   Dist. LEXIS 4860 (E.D. La. March 24, 2004).............................................................. 20

United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 110 F.3d
   861 (2d Cir. 1997).................................................................................................6, 13, 14

Yarnevic v. Brink's, Inc.,102 F.3d 753 (4th Cir. 1996) ..............................................17, 18

Young v. Chubb Group of Insurance Cos., 295 F. Supp. 2d 806 (N.D. Ohio 2003).... 2, 17

ZB Holdings, Inc. v. White, 144 F.R.D. 42 (S.D.N.Y. 1992) ........................................... 6

**STATUTES**

31 U.S.C. § 3730(b)(5) ...................................................................................... 10

31 U.S.C. § 3732(b) ..................................................................................... passim

43 U.S.C. § 1349(b) .............................................................................................. 6

33 U.S.C. § 1365 ................................................................................................... 7

33 U.S.C. § 1365(a) .............................................................................................. 6

33 U.S.C. § 1415(g) .............................................................................................. 6

25 U.S.C. § 345 ................................................................................................ 6, 7

26 U.S.C. § 7424 ................................................................................................ 11

47 U.S.C. § 227 ................................................................................................... 8

28 U.S.C. § 1331 ........................................................................................ 15, 16,
                                                                                          23, 24

28 U.S.C. § 1334(b) ........................................................................................... 13

28 U.S.C. § 1367 ............................................................................................... 12

28 U.S.C. §1441(a) .......................................................................................... 3, 9

28 U.S.C. § 1441(c) ........................................................................................... 12

28 U.S.C. § 1446(b) ..................................................................................... passim

28 U.S.C. § 2323 ............................................................................................... 11

28 U.S.C. § 2403(b) ........................................................................................... 11

18 U.S.C. § 3626(a)(3) ....................................................................................... 11

31 U.S.C. §§ 3729-33 .......................................................................................... 5

31 U.S.C. § 3729 et seq ........................................................................................ 1

43 U.S.C. § 1331 et seq ...................................................................................... 15

## MISCELLANEOUS

H.R. Rep. No. 99-660, at 17 (1986)...........................................................................3, 9

69 Fed. Reg. 68370-68372 (Nov. 24, 2004)..................................................................4

NY01/MALOMI/1146669.1

## PRELIMINARY STATEMENT

On October 11, 2006, Defendant Dey, Inc. ("Dey") removed this civil action from the Franklin Circuit Court for the Commonwealth of Kentucky (the "Kentucky Action") to this Court.[1] This action became removable on September 11, 2006, when the United States delivered to Dey's counsel the complaint in an action captioned *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc. et al.*, Civil Action No. 05-11084-MEL (D. Mass.) (the "Federal *Qui Tam* Action"), brought pursuant to the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA").[2] The Federal *Qui Tam* Action was brought pursuant to an Order of the District of Massachusetts dated September 9, 2006, which unsealed and permitted service by the United States. Dey received the Order after September 11, 2006.

Defendants previously removed this case on July 13, 2005 on the grounds that federal question jurisdiction existed under the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). After removal, the action was transferred to the multidistrict litigation ("MDL") in Boston. In its March 13, 2006 decision remanding the case, the court in the MDL litigation held that removal was not permitted under 28 U.S.C. § 1446(b) based on *Grable*. *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 431 F. Supp. 2d 98, 109 (D. Mass 2006) (discussed *infra* pp. 19-20). This

---

[1]     Dey also removed on October 11, 2006 several other state actions, which actions make allegations similar to the allegations made by Kentucky in this action. On November 8, 2006, the Judicial Panel on Multidistrict Litigation ("JPML") issued a Conditional Transfer Order, which transferred this action, as well as several of the other removed actions, to the multidistrict litigation entitled *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL-1456 (D. Mass.). *See* CTO-33, *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL-1456 (JPML November 8, 2006) (Exhibit A).

[2]     The "Federal *Qui Tam* Complaint" and the Order unsealing it are annexed to Dey's Notice of Removal filed on October 11, 2006 ("October 11 Notice") as Exhibits A and B, respectively.

removal is based on new grounds, different from those raised in the previous removal.[3]  Removal on these new grounds was not possible until the United States intervened and asserted the same claims against Dey as those asserted by Kentucky.  Moreover, removal will cause minimal delay in this action, because discovery is on-going.  *See* Declaration of Neil Merkl, dated November 20, 2006.

When the United States intervened and brought the Federal *Qui Tam* Action against Dey, it triggered a wholly independent grant of federal subject matter jurisdiction to adjudicate the Kentucky Action.  Under 31 U.S.C. § 3732(b):

> The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government *if the action arises from the same transaction or occurrence as an action brought under section 3730 [of Title 31].*

(emphasis added).  Section 3732(b) explicitly grants the federal district courts "jurisdiction" over "any action" that meets its terms.  This provision undeniably applies to the Kentucky Action because it is an action "brought under the laws of any state for the recovery of funds paid by a state or local government".  Kentucky does not deny the allegations in the removal notice (October 11 Notice at 7, 23-25) that this action arises from the same transactions and occurrences as the Federal *Qui Tam* Action.

Kentucky argues that Congress did not intend section 3732(b) to grant "original jurisdiction" because section 3732(b) does not use the word "original", while in the same breath arguing that the jurisdiction contemplated is merely "supplemental" even though the statute does not use the word "supplemental" either.  Plaintiff's Brief in Support of Motion to Remand

---

[3]     *See Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 782-83 (7th Cir. 1999); *Young v. Chubb Group of Ins. Cos.*, 295 F. Supp.2d 806, 807-08 (N.D. Ohio 2003).

("Kentucky Br.") at 10.  In *American National Red Cross v. S.G. and A.E.*, 505 U.S. 247, 257 (1992), the United States Supreme Court held that "original" federal subject matter jurisdiction allowing removal could be created without using the term "original jurisdiction".  Numerous other statutes, in fact, also do so.  (*See infra* Part I.A. and note 4)  Here, the express grant of general "jurisdiction" to the "district courts" in section 3732(b) is more explicit than the statute at issue in *American National Red Cross*.

      Kentucky's related argument that section 3732(b) was not intended to expand the jurisdiction of the federal courts, (Kentucky Br. at 12-13), is contradicted by the legislative history of the FCA, which states that Congress, in fact, intended to "expand the jurisdiction of the Government in False Claims Act cases".  H.R. Rep. No. 99-660, at 17 (1986).  Kentucky also urges that legislative history establishes that section 3732(b) was not intended to allow a defendant to control the forum by removing to federal court.  (Kentucky Br. at 12-14.)  This argument is also wrong.  When Congress grants jurisdiction to the federal courts over an action, as it has here, removal is presumptively allowed under 28 U.S.C. §1441(a), the general removal statute; the legislative history is irrelevant on the issue of whether the general removal statute applies.  *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697-98 (2003).

      Kentucky argues that 28 U.S.C. § 1446(b)'s reference to "a copy of an amended pleading, motion, order or other paper" applies exclusively to paper filed in the same state action and only when the voluntary action of the plaintiff makes the case removable.  Kentucky is wrong.  The Third and Fifth Circuits, and several district courts, recognize that papers or orders from a separate action fall within section 1446(b) when a sufficient nexus exists between the two actions—even when the paper or order is not caused by the voluntary act of the plaintiff.  The Federal *Qui Tam* Complaint and the Order unsealing it and allowing the United States to

intervene falls within section 1446(b).  *See Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263,

268 (5th Cir. 2001); *Doe v. American Red Cross*, 14 F.3d 196, 201-03 (3d Cir. 1993) and cases

cited herein.  Furthermore, the voluntary act rule, which is derived from the well-pleaded

complaint rule, does not apply in actions based on an independent grant of federal jurisdiction.

## STATEMENT OF FACTS

Dey manufactures and sells pharmaceutical products, including certain generic

inhalation drugs, which are effective in controlling asthma.  When Dey's products are dispensed

by pharmacies to patients covered by Medicaid, the pharmacists are reimbursed under Medicaid

programs jointly funded by the federal and state governments.  The federal share of Medicaid

reimbursement varies depending on the state's per capita income compared to the national

average.  The federal share among the states is at least 50% and as much as 83%.  In Kentucky,

on each reimbursement for Medicaid-covered drugs, the federal government pays 69.26% of all

Medicaid reimbursements in Kentucky (figures for FY 2006).  *See*

http://aspe.hhs.gov/health/fmap.htm (quoting 69 Fed. Reg. 68370-68372 (Nov. 24, 2004)).

Between 2000 and September 2006, twenty-two states sued Dey and dozens of

other pharmaceutical manufacturers alleging that the manufacturers caused higher Medicaid

reimbursements to be paid to the providers by reporting certain benchmark prices known as

average wholesale price ("AWP"), prices that were not equal to the actual acquisition cost.  The

suits seek repayment of the allegedly improper "spread" between AWP-based reimbursement

and some proxy for the alleged "true" acquisition price, as well as multiple damages, fines and

penalties under various legal theories.

The Federal *Qui Tam* Action alleges the same case against Dey as is alleged in

Kentucky:  that Dey caused higher Medicaid and Medicare Part B payments to be paid to

providers because Dey's AWP prices did not equal the actual acquisition costs paid by providers.

NY01/MALOMI/1146669.1                              -4-

The very same AWP prices reported by Dey to First Databank are at issue in both actions. As in Kentucky, the Federal *Qui Tam* Action seeks recovery of the same allegedly illegal "spread" paid on the same Dey drugs. Both the Federal *Qui Tam* Action and the Kentucky Action seek damages based on allegations that Dey caused the filing of false claims. The Federal *Qui Tam* complaint alleges that the "United States brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33." (Federal *Qui Tam* Complaint at ¶ 1.) Kentucky asserts similar claims under Kentucky statutes and common law.

Therefore, every individual claim for Medicaid reimbursement of Dey drugs at issue in the Federal *Qui Tam* Action is also at issue in the Kentucky Action. Every aspect of the Kentucky Medicaid and Medicare Part B transactions and reimbursements are at issue in both cases. Both the Federal Government and Kentucky make claims based on the same drugs manufactured and sold by Dey. As a result of the identity of parties and the transactions and occurrences underlying the claims, there is extensive overlap in the discovery and litigation of the Kentucky and Federal *Qui Tam* Actions. Indeed, the same witnesses from Dey, Kentucky and the federal agencies that administer Medicaid will testify in the Kentucky action and in the Federal *Qui Tam* Action.

## ARGUMENT

I.    **THIS COURT HAS ORIGINAL JURISDICTION OVER THE KENTUCKY ACTION UNDER 37 U.S.C. § 3732(b) AND THE ACTION IS REMOVABLE UNDER 28 U.S.C. § 1441**

A.    **This Court Has Original Subject Matter Jurisdiction Over This Action Because Section 3732(b) Is An Independent Statutory Grant of Jurisdiction**

When the terms of § 3732(b) are met, as they are here, the District Courts have subject matter jurisdiction over the state law action. In *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, the United States Court of Appeals for the Second Circuit stated:

> Moreover, it is obvious that a different part of § 3732 does indeed deal with subject matter jurisdiction, for subsection (b) provides expressly that the district courts "shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government."

110 F.3d 861, 866 (2d Cir. 1997) (citing 31 U.S.C. § 3732(b)).

The State's contention that section 3732(b) does not provide "original jurisdiction" is wrong; it is based solely on the absence of the word "original" in the broad grant of "jurisdiction" in section 3732(b). While section 3732(b) does not use the word "original", the absence of that word is of no moment. "Original jurisdiction" simply means jurisdiction to adjudicate a case in the first instance and is distinguished from appellate jurisdiction. *See ZB Holdings, Inc. v. White* 144 F.R.D. 42, 47 (S.D.N.Y. 1992) ("This Court understands 'original jurisdiction' to mean jurisdiction in the first instance over a viable lawsuit . . ."); *Thornton v. Allstate Ins. Co.*, 492 F. Supp. 645, 647 (E.D. Mich. 1980) ("In general, an action is removable to federal court only if it might have been brought there originally.").

Use of the unqualified term "jurisdiction" encompasses "original jurisdiction" because it permits the states to file "actions" in the federal courts. Congress uses different formulations when granting jurisdiction and does not always use the phrase "original jurisdiction". *See American National Red Cross*, 505 U.S. at 248. Many statutes use the word "jurisdiction" without any modifying language to grant jurisdiction to the district courts to hear and determine disputes in the first instance.[4] Courts construing such statutory grants of

---

[4]   *See, e.g.,* 25 U.S.C. § 345 (providing that the "district courts are given jurisdiction to try and determine any action, suit, or proceeding" involving the allotment of Native American land); 33 U.S.C. § 1365(a) (providing that the "district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties," to entertain citizen suits for violations of the Clean Water Act); 33 U.S.C. § 1415(g) (using the word "jurisdiction" to allocate to federal courts the power to hear actions for

(continued...)

jurisdiction have held that Congress intended to grant to the designated courts the jurisdictional power to hear disputes – *i.e.*, subject matter jurisdiction – even when the statutes did not expressly use the word "original".[5]

In *American National Red Cross*, 505 U.S. at 258, the Supreme Court held that a defendant may remove when jurisdiction is supplied by a "separate and independent" grant of federal jurisdiction, regardless of whether the term "original jurisdiction" appears in the statute. The Supreme Court found that the Congress intended the language "sue and be sued" to be a grant of "original" federal jurisdiction and rejected the First Circuit's finding that the words "original jurisdiction" were essential to removal.  505 U.S. at 248.  The Supreme Court, therefore, rejected a textual argument almost identical to that made by Kentucky in this action.

Section 3732(b) is a far more explicit grant of jurisdiction than the provisions at issue in *American National Red Cross*.  Section 3732(b) expressly confers "jurisdiction" for the "district courts" to adjudicate "any action brought under the laws of any State"— the specific circumstances that are present here.  Section 3732(b) would even satisfy the dissent in *American National Red Cross*, which argued that "nothing in the language of [the sue and be sued

---

(...continued)
  violations of the Marine Protection, Research and Sanctuaries Act of 1972); *see also Simms v. Roclan Energy Services, Inc.*, 137 F. Supp. 2d 731 (W.D. La. 2001) (allowing removal of action under 43 U.S.C. § 1349(b) which provides district courts jurisdiction over cases arising under the Outer Continental Shelf, but makes no mention of "original jurisdiction").

[5]  *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004) (finding subject matter jurisdiction over a claim brought under 33 U.S.C. § 1365); *Save our Sound Fisheries Ass'n v. Callaway*, 429 F. Supp. 1136, 1145 (D.R.I. 1977) (finding jurisdiction over private citizen causes of action brought pursuant to 33 U.S.C. §§ 1365 and 1415); *Pence v. Kleppe*, 529 F.2d 135, 138 (9th Cir. 1976) ("On its face, this statute [25 U.S.C. § 345] is a grant of general jurisdiction to United States District Courts in actions such as this one").  The courts in these cases attached no significance to the absence of the word "original".

provision] suggests that it has anything to do with regulating the jurisdiction of the federal courts." 505 U.S. at 267 (Scalia, J., dissenting).  Section 3732(b) is specifically directed at the jurisdiction of federal courts in situations where the federal and state governments are seeking recovery in separate actions that arise from the same transactions or occurrences.

**B.      This Action May Be Removed Under 28 U.S.C. § 1441 *et seq.*
Because of the Grant of Jurisdiction in Section 3732(b)**

Kentucky' decision to commence this action in state court does not block Dey's right to remove it under section 3732(b) because section 1441(a) allows a defendant to remove any action over which there is federal jurisdiction unless Congress "expressly" prohibits removal.  *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450 (7th Cir. 2005) (holding that 47 U.S.C. § 227 does not preclude removal because that section contains no express prohibition of removal).

When a federal statute confers jurisdiction on the federal district courts the action is presumptively removable under the general removal statute. *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697-698 (2003).  In *Breuer*, the Supreme Court affirmed the Eleventh Circuit's denial of a remand motion that was premised on an argument similar to Kentucky's.  In *Breuer*, the plaintiff sued his employer in Florida state court. *Id.* at 693.  The employer removed the case to federal court on the basis of a provision in the Fair Labor Standards Act of 1938 ("FLSA") which provided that suit under the FLSA "may be maintained . . . in any Federal or State court of competent jurisdiction." *Id.* at 693 (quoting 29 U.S.C. § 216(b)).  The plaintiff moved to remand, arguing, precisely as Kentucky now argues, that the jurisdictional grant in the FLSA impliedly prohibited removal under the general removal statute. *Id.* at 694.  The Eleventh Circuit and the Supreme Court rejected this argument because there

was no express prohibition of removal, a holding that should control the issue in this action of whether removal is permitted under section 3732(b).

In both *Breuer* and this case, there is no question that under the jurisdictional provision the respective plaintiffs "could have begun [their] action in the District Court" because section 3732(b) allows the state to bring "actions". *See id.* at 694. Removal then follows under 28 U.S.C. § 1441(a) because nothing in the FCA provision "looks like an express prohibition of removal, there being no mention of removal, let alone of prohibition." *Id.* Kentucky does not— and cannot—identify an express prohibition of removal based on section 3732(b). On the contrary, it urges the Court to infer that there can be no removal under section 3732(b) based on legislative history, context, and argument, precisely what the Supreme Court's *Breuer* decision precludes.

**C.    Kentucky's Legislative History Argument Supports Dey's Position**

Kentucky argues that the legislative history shows that the principal purpose of section 3732(b) was to permit the states the option of filing in federal court and that this broadening of the states' options forecloses removal. (Kentucky Br. at 12-14.) Even if this contention were true, it undermines Kentucky's position because it concedes – as it must – that this provision gives the states the right to commence "actions" in the federal courts, a right that manifests the existence of original jurisdiction over such state actions. Plaintiff's argument that Congress would not "drastically expand federal jurisdiction over traditionally state actions" by allowing the removal is wrong. As the legislative history shows, Congress did intend to expand federal jurisdiction when it enacted section 3732(b): "Other amendments contained in the bill *expand the jurisdiction* of the Government in False Claims Act cases and *grant the Federal District Courts jurisdiction* over state claims". H.R. Rep. No. 99-690, at 17 (1986) (emphasis added). The Supreme Court, in any case, rejected this same argument made in *Breuer*, the

argument that legislative history could be used to read into a statute an implied exception to the general removal statutes. *Breuer*, 538 U.S. at 694-95.

Kentucky also argues that section 3732(b) should be read only as an exception to the "general bar on intervention" codified at 31 U.S.C. § 3730(b)(5) which would otherwise prevent parties other than the United States from bringing state law claims related to pending *qui tam* actions. (Kentucky Br. at 11.) This argument actually supports Dey's position. The "general bar" of section 3730(b)(5) provides:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

Section 3730(b)(5), therefore, bars two different things: (1) "intervention" and (2) "a related action". Under this provision, once the United States brings an FCA action such as that filed against Dey, no one can intervene or bring a related action. Thus, section 3730(b)(5) bars state actions like this one because it is a "related action."[6] Under the State's reasoning, however, section 3732(b) was intended as an exception to section 3730(b)(5). This exception allows the states to intervene in the district courts and also to bring "action[s]". This is because section 3732(b) specifically says: "The district courts shall have jurisdiction over any action brought under the laws of any State. . . ." 31 U.S.C. § 3732(b). Section 3732(b), therefore, allows states

---

[6]    Kentucky contradicts itself by acknowledging that several courts have held that section 3730(b)(5) bars states from intervening or bringing actions related to FCA actions while arguing, a few pages later, that the section 3730(b)(5) bar does not apply to states. (Kentucky Br. at 11, 13.) Kentucky does, however, consistently argue that section 3732(b) is an exception to the bar established by section 3730(b)(5).

to bring related "action[s]" because it uses the word "action", and nothing in section 3732(b) even suggests the exception is limited to intervention.[7]

Thus, section 3732(b), where Congress granted jurisdiction over such "action[s]", creates something more than a right of intervention – it creates the right to bring an action in federal court in the first instance. Since section 3732(b) allows the states to commence an action in federal court, it necessarily follows that the federal courts have original jurisdiction over such actions and those actions may be removed pursuant to the general removal statute.

**D.   Section 3732(b) Creates Jurisdiction Over Actions, Not Supplemental Jurisdiction Over Claims**

Original jurisdiction over the Kentucky Action exists based on the independent grant of jurisdiction provided under section 3732(b) and the holding in *American National Red Cross.* The grant of jurisdiction in section 3732(b) is not supplemental because that section allows the states to commence "actions" in federal courts. There is no requirement that the states intervene in the pending action; rather, section 3732(b) provides the option of commencing a separate action. If Congress had intended section 3732(b) to grant only supplemental jurisdiction over "claims", it would have expressly limited the statute to adjudicate state "claims" already made in an existing FCA action. Congress did so when it enacted section 1367, the

---

[7]   When Congress has granted a right to intervene, it has done so explicitly by using the word "intervene." For example, in 28 U.S.C. § 2403(b), Congress explicitly granted states the right to intervene in federal cases regarding the constitutionality of certain state statutes. 18 U.S.C. § 3626(a)(3)(F) ("Any State or local official including a legislator or unit of government . . . shall . . . have the right to intervene . . . ."). *See also* 28 U.S.C. § 2323 ("[c]ommunities, associations, corporations, firms, and individuals" as the parties who "may intervene"); 26 U.S.C. § 7424 (United States may exercise the right to "intervene"); *International Paper Co. v. Inhabitants of the Town of Jay, Maine,* 887 F.2d 338, 342 (1st Cir. 1989) (holding that state could not intervene because the facts of the case did not fall under the express language of section 2403(b)); *Blair v. Shanahan,* 38 F.3d 1514, 1522 (9th Cir. 1994), *cert. denied,* 514 U.S. 1066.

"supplemental jurisdiction" statute that applies only to *claims*. Section 3732(b), by contrast, applies to *actions*, a term "not limited to specific claims, but . . . synonymous with the term 'case' in the constitutional sense." *California v. Keating*, 986 F.2d 346, 348 (9th Cir. 1993) (citations omitted).

Section 3732(b), therefore, provides for original jurisdiction over independent cases, such as this one brought by Kentucky. There is no limiting language in Section 3732(b). Kentucky argues that Congress did not use the term "supplemental jurisdiction" when it enacted 31 U.S.C. § 3732(b) because it had not yet enacted 28 U.S.C. § 1367. (Kentucky Br. at 10-11.) This argument is meritless. Congress could have used the terms "ancillary" or "pendent" which were in use at the time; it also could have barred removal as it does so in other circumstances.

Kentucky cites to several inapposite cases where parties improperly removed state actions on the grounds that original jurisdiction existed based solely on the supplemental jurisdiction statute. *In Re Estate of Tabas*, 879 F. Supp. 464, 467 (E.D. Pa. 1995); *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996); *Sebring Homes Corp v. T.R. Arnold & Assocs.*, 927 F. Supp. 1098, 1101 (N.D. Ind. 1995); *Tafuri v. Jeppson Sanderson Co.*, 25 F. Supp. 2d 1364, 1368–69 (S.D. Fla. 1998). Plaintiff also cites to one case where a state action was improperly removed under 28 U.S.C. § 1441(c) on the grounds that a party attempted to consolidate the state action with a pending federal action. *N. Am. Van Lines, Inc. v. Coleman*, 633 F. Supp. 632, 634 (N.D. Ill. 1986). None of these cases involves an unqualified statutory grant of "jurisdiction" that allows the commencement of "actions" in the "district courts", as section 3732(b) does. The express grant in section 3732(b) of "jurisdiction" over "actions" distinguishes section 3732(b) from supplemental jurisdiction in section 1367, which is limited to "claims". Unlike supplemental jurisdiction provided under section 1367(a), which applies only

to claims within a single action, section 3732(b) grants federal "jurisdiction over any action brought under the laws of any State," allowing state action separate from but sufficiently related to an FCA action to be properly removed to federal court.  Although the pendency of the Federal *Qui Tam* Action triggers this grant of federal jurisdiction, it does not mean jurisdiction is supplemental, pendency of the Federal *Qui Tam* Action is merely the event that triggers the independent grant of federal jurisdiction in section 3732(b).  This independent grant of jurisdiction is what allows the states to bring separate actions in federal court and is a source of original federal jurisdiction.

The jurisdictional structure created in section 3732(b) is the same as the grant of federal jurisdiction over "related" state actions in 28 U.S.C. § 1334(b), which grants the federal courts jurisdiction over actions "related to" pending federal bankruptcy actions.  Under section 1334(b), the pendency of a federal bankruptcy action triggers federal jurisdiction under section 1334(b) over any other action that is "related to" the bankruptcy action, even if the other action is based only on state law.  This type of federal jurisdiction supports removal.  *See Davis v. Life Investors Ins. Co. of America*, 282 B.R. 186 (S.D. Miss. 2002).

In the same way that a pending bankruptcy action triggers federal jurisdiction over state actions "related to" the bankruptcy action, a pending FCA action triggers federal "jurisdiction over any action brought under the laws of any State. . . ."  *Compare* 31 U.S.C. § 3732(b) *with* 28 U.S.C. § 1334(b).  This type of jurisdiction is not supplemental because, unlike section 1367, section 3732(b) deals with separate actions, not claims within a single action.  *See generally In re Estate of Tabas*, 879 F. Supp. 464, 467 (E.D. Pa. 1995) (acknowledging that "[o]n its face [section 1367] distinguishes between actions and claims").  As noted in *Thistlethwaite*, section 3732(b) "obvious[ly] . . . deal[s] with subject matter jurisdiction".  110

F.3d at 866. Upon satisfaction of the specified conditions, section 3732(b)'s grant of subject matter jurisdiction allows a state to bring an action in the first instance in federal court—the very definition of original jurisdiction.

For this reason the November 2, 2006 decision in the District Court for the Middle District of Alabama (the "Alabama decision") is wrong; that decision did not appreciate that the express grant of federal subject matter jurisdiction in section 3732(b) allows a state to commence an action in federal court. Similarly, the October 27, 2006 decision by a magistrate judge in Hawaii, cited by Kentucky, (the "Hawaii decision") also failed to consider that section 3732(b) allows a state to commence an action in federal court. In the Hawaii decision and the Alabama decision, the courts declined to find subject matter jurisdiction based on 3732(b) in similar AWP actions removed by Dey from state courts. Both courts did so using somewhat tentative language: The Alabama court said that it "appear[ed]" that section 3732(b) granted supplemental jurisdiction, while the Hawaii court said that there were "indicat[ions]" that section 3732(b) granted supplemental jurisdiction. *Hawaii v. Abbott Labs., Inc.*, No. 06-00437, at *13 (D. Hawaii October 27, 2006) (decision entitled "Amended Order Denying Defendant Dey, Inc.'s Motion For Leave To File Supplemental Notice Of Removal") (Exhibit B); *Alabama v. Abbott Labs.*, No. 2:06cv920, at *1 (M.D. Ala. Nov. 2, 2006) (Exhibit C). Both decisions conflict with the Second Circuit's decision in *Thistlethwaite* that the language in section 3732(b) is an "obvious" grant of subject matter jurisdiction. 110 F.3d at 866. Neither addresses the use of the term "action" or the express language granting "jurisdiction" in section 3732(b), the distinguishing factors between an independent source of jurisdiction such as section 3732(b) and supplementary jurisdiction under section 1367, as discussed above. Neither decision addresses *American National Red Cross* or acknowledges the numerous other statutes that grant original

federal jurisdiction without using the words "original jurisdiction". The Hawaii decision gives undue weight to the legislative history, *Hawaii*, No. 06-00437, at *14, in deciding that state actions cannot be removed based on section 3732(b), an argument that was expressly rejected in *Breuer*. Dey, therefore, submits that these decisions are wrongly decided and should not be followed here.

### E.     Federal Question Jurisdiction Also Exists Under 28 U.S.C. § 1331

While the statutory grant of jurisdiction contained in section 3732(b) creates an independent and sufficient basis for removal of this action, this Court also has original jurisdiction over the action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The assertion of federal sovereignty in the Federal *Qui Tam* Action causes the claims here to arise under the FCA, a law of the United States. The Kentucky state action has been federalized by the federal government's simultaneous claim for more than 50% of the amount claimed by Kentucky and because both actions are based on the same facts and legal issues.

A similar situation arises under the statutory grant of jurisdiction in the Outer Continental Shelf Act, 43 U.S.C. § 1331 *et seq.* ("OCSLA"), which federalizes state law claims arising in connection with operations on the Continental Shelf. *Simms v. Roclan Energy Services, Inc.*, 137 F. Supp. 2d 731, 734 (W.D. La. 2001). In such circumstances, there exists a "'federal question' – in the constitutional sense – regardless of its borrowing from substance from the states". *EEX Corp. v. ABB Vetco Gray, Inc.*, 161 F. Supp. 2d 747, 751 (S.D. Tex. 2001).

The FCA, like OCSLA, includes a specific grant of subject matter jurisdiction over an action based on state law when "the action arises from the same transaction or

occurrence as an action brought under section 3730." 31 U.S.C. § 3732(b).  While the Kentucky

Action may be premised on state law, Kentucky seeks to recover the same damages from the

same alleged scheme and transactions that are now at issue in the FCA claims asserted by the

United States in the Federal *Qui Tam* Action.  Therefore, the Kentucky Action presents a case

arising under federal law – the FCA – and is removable pursuant to 28 U.S.C. §§ 1331 and

1441(a).

>     As the Third Circuit noted in *TMI Litigation Cases*, federal statutory schemes

(such as the FCA) are a proper exercise of federal sovereignty under the Constitution and permit

the creation of "arising under" federal question jurisdiction:

> Where Congress creates a right of action, and formulates
> substantive federal provision applicable to that action, the action
> arises under federal law despite the fact that the same wrong may
> previously have been actionable under state law.  Were the rule
> otherwise, actions which today may be brought under the Federal
> Tort Claims Act, the Outer Continental Shelf Lands Act and other
> federal statutes would not arise under federal law because, prior to
> enactment of the federal statute, actions based on the identical
> occurrence could have been brought in a state court.  The federal
> nature of the right to be established is decisive.

940 F.2d 832, 857-58 (3d Cir. 1991).

>     Because both Kentucky and the United States seek recovery of the same Medicaid

and Medicare reimbursements paid on the same allegedly false claims, Kentucky's action has

been federalized, giving rise to a federal question arising under the FCA.  Removal of this action,

therefore, is appropriate.

## II.     DEY'S OCTOBER 11 NOTICE IS TIMELY UNDER 28 U.S.C. § 1446(b)

>     28 U.S.C. § 1446(b) restarts the clock on a defendant's time to remove:

> If the case stated by the initial pleading is not removable, a notice
> of removal may be filed within thirty days after receipt by the
> defendant, through service or otherwise, of a copy of an . . . order

> or other paper from which it may first be ascertained that the case
> is one which is or has become removable . . . .

28 U.S.C. § 1446(b).  Dey's October 11 Notice was filed within thirty (30) days after Dey's

counsel's receipt of a copy of the Federal *Qui Tam* Complaint and the District of Massachusetts

Order unsealing the Complaint (the "Order").

### A.      The "Other Paper" Need Not Arise from the State Action

Kentucky argues that the Federal *Qui Tam* Action Complaint, and the Order

unsealing it, that Dey received cannot constitute either an "order" or "other paper" for purposes

of section 1446(b) because it does not emanate from the Kentucky Action.  The State is wrong.

The question here is not whether the "order or other paper" emanated from the state action, it is

whether the "order or other paper" emanated from another, related action that has a nexus to this

action and whether the effect of the "order or other paper" makes this action removable.

If an "order or other paper" does emanate from a different case with a nexus to the

action being removed and that "order or other paper" has an effect on the basis for removal, the

thirty (30) day time limit for removal under section 1446(b) is restarted.  *See Green v. R.J.*

*Reynolds Tobacco Co.*, 274 F.3d 263, 267-68 (5th Cir. 2001); *Doe v. American Red Cross*, 14

F.3d 196, 201-03 (3d Cir. 1993); *Young v. Chubb Group of Ins. Cos.*, 295 F. Supp.2d 806, 808

(N.D. Ohio 2003); *Ancar v. Murphy Oil U.S.A., Inc.*, Nos. 06-3246 – 06-3262, 2006 WL

2850445, at *3 (E.D. La. Oct. 3, 2006).  Pleadings and "other paper[s]" from related actions with

common parties qualify under 1446(b) when there is a sufficient "nexus" between the actions.  In

*Yarnevic v. Brink's, Inc.*, the Fourth Circuit held that it would consider the new information

concerning the plaintiff's citizenship in support of removal, notwithstanding that the information

was not obtained from filings in the state court action but was first disclosed by the plaintiff in

his remand motion in federal court:

> The "motion, order or other paper" requirement is broad enough to
> include *any* information received by the defendant, "whether
> communicated in a formal or informal manner." *Broderick v.
> Dellasandro*, 859 F.Supp. 176, 178 (E.D. Pa. 1994) (quoting 14A
> Wright, Miller, & Cooper, Federal Practice and Procedure, § 3732
> at 520).

102 F.3d 753, 755 (4th Cir. 1996) (emphasis added).  In *iGames Entertainment Inc. v. Regan*,

No. 04-CV-4179, 2004 WL 2538285, at *4 (E.D. Pa. Nov. 9, 2004), the United States District

Court for the Eastern District of Pennsylvania held that "documents associated" with one action

qualified as "other paper" for the removal of another action where there was a "sufficient nexus"

between the two cases.  2004 WL 2538285, at *4. (citing *Hamilton v. Hayes Freight Lines, Inc.*,

102 F. Supp. 594, 596 (E.D. Ky. 1952)).

In *Doe*, the removing defendant was the Red Cross.  The Third Circuit found that

the Supreme Court's decision in *American National Red Cross v. S.G. and A.E.*, discussed

above, allowed removal of the *Doe* case from state court.  *Doe*, 14 F.3d at 202-03.  The Supreme

Court decision in *American National Red Cross*, which specifically addressed the issue of

removal, was found to be an "order" within section 1446(b) even though it arose in a different

case and even though it was not caused by the voluntary act of those plaintiffs.  *Id.*

In *Green*, the Fifth Circuit, following *Doe*, held that documents from another case

can serve as a basis for removal under section 1446(b), if the other case shares similar defendants

and factual and legal issues.  274 F.3d at 268.  The court in *Green* specifically held that the Fifth

Circuit's decision in another case against the same defendants, *Sanchez v. Liggett & Myers, Inc.*,

187 F.3d 486 (5th Cir. 1999), could constitute an "order" sufficient to restart defendants' time to

remove the *Green* case if there was a nexus between the two actions:

> The Third Circuit [in *Doe*], however, has held that in very limited
> circumstances, similar to those here – a decision by a court in an
> unrelated case, but which involves the same defendant, a similar

> factual situation, and the question of removal – can constitute an
> "order" under § 1446(b).

*Green*, 274 F.3d at 267. The Fifth Circuit found that the defendants in *Sanchez* and the

defendants in *Green* overlapped and the two cases also involved a similar factual situation and

similar legal issues. *Id.* at 268. The *Sanchez* decision that qualified as an "order or other paper"

in *Green* did not explicitly discuss the "question of removal" like the Supreme Court's Order did

in *Doe*. Instead, it held that state law claims were barred by state statute. *Sanchez*, 187 F.3d at

489-491. The Fifth Circuit held that it was sufficient that the paper or order have the "effect" of

allowing removal. *Green*, 274 F.3d at 268.

Serving Dey with the Federal *Qui Tam* Action Complaint triggered federal

jurisdiction over this action under section 3732(b). Both actions share similar parties, facts, and

legal issues. The nexus is far stronger here than in *Doe* and *Green*. For example, in *Doe*, the

Third Circuit found that the two cases both involved the same defendant and the operative

decision in one case triggered the jurisdictional basis for removing a different case pending in

state court. 14 F.3d at 202-03. In *Green*, the Fifth Circuit, applying *Doe*, found that the two

different actions involved the same defendants and similar factual and legal issues. 274 F.3d at

268. The overlap between the Federal *Qui Tam* Action and the Kentucky Action is more

extensive, because the federal government and Kentucky are seeking the same damages. As

detailed above, the transactions and occurrences at issue, and, indeed, the core claims for

reimbursement amounts of the Federal *Qui Tam* Action and the Kentucky Action, are the same.

Not only is Dey a defendant in both actions, the United States, the plaintiff in the Federal *Qui

Tam* Action, is, at a minimum, a real party in interest in the Kentucky Action because it claims it

paid more than 50% of the reimbursements paid on the purportedly false claims alleged in both actions.[8]

The prior decisions remanding state AWP cases based on *Grable* are irrelevant because in each of those decisions there was no nexus between *Grable* and the AWP case being removed. The *Grable* case did not include any of the same parties in the AWP cases, and there was no overlap in any of the substantive issues. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp.2d 98, 107-09 (D. Mass. 2006); *Pennsylvania v. TAP Pharm. Prods., Inc.*, 415 F. Supp.2d 516, 526-27 (E.D. Pa. 2005); *State of Wisconsin v. Abbott Labs.*, 390 F. Supp.2d 815, 824-25 (W.D. Wis. 2005); *State of Minnesota v. Pharmacia Corp.*, No. 05-1394 (PAM/JSM), 2005 WL 2739297, at *2-3 (D. Minn. Oct. 24, 2005). Likewise, in the MDL removal decision, Judge Saris, in rejecting the *Grable* "other paper" argument, noted that:

> Unlike the situations in *Doe* and *Green*, *Grable* and the AWP MDL do not involve the same defendants or similar factual issues. *Grable* concerned a quiet title action between a former landowner and the tax sale purchaser, while the AWP MDL involves allegations against pharmaceutical companies for inflating their AWPs for prescription drugs. While there are policy arguments for permitting removal where a closely related case has been reversed on appeal, here the connection between the Supreme Court case and this litigation is too tenuous; *Grable* and the AWP MDL involve wholly different statutes and unrelated parties.

*In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d at 109. In the Wisconsin removal decision, Judge Crabb, in rejecting the *Grable* "other paper" argument, noted that the "Defendants in the [Wisconsin AWP action] were not parties in *Grable*. *Grable* did not involve

---

[8]    Also, the National Association of Medicaid Fraud Control Units, which includes Kentucky as a member and is active in coordinating these cases between the States and the United States, is funded by the federal government. *See United States ex rel. St. John LaCorte v. Merck & Co.*, No. 99-3807, 2004 U.S. Dist. LEXIS 4860, at * 20 (E.D. La. March 24, 2004).

a fact situation similar to the present case." *State of Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d

at 825.

B.     **The Cases Upon Which Plaintiff Relies Are Inapposite**

Kentucky cites numerous cases for the proposition that the "order or other paper"

under section 1446(b) must arise from the state action.  (Kentucky Br. at 6-7.)  The "other paper"

at issue in those cases arose from unrelated actions that did not involve any of the same parties

and claims.  Indeed those cases more readily stand for the proposition that "subsequent court

decision[s] in wholly *unrelated* case[s], defining what constitutes the basis for removal to the

federal court", cannot constitute "other paper" under section 1446.  *See Avco Corp. v. Local

1010 of the International Union*, 287 F. Supp. 132, 133 (D. Conn. 1968) (emphasis added).  In

*Green*, however, the court distinguished many of the same cases relied upon by Kentucky

because those cases involved circumstances different from a situation, like this one, where the

same defendant was a party in both actions.  274 F.3d at 267.  The Hawaii and Alabama

decisions are also inapposite.  The Hawaii decision incorrectly interprets the *Doe* and *Green*

cases as requiring an order or other paper to prohibit the state action in question (Hawaii decision

at 11), but *Doe* and *Green* actually stand for the proposition that the order or other paper need

only have the effect of allowing removal.  In addition, the Hawaii decision failed to consider the

strong nexus between the state action and the Federal *Qui Tam* Action, a nexus much stronger

than those in *Doe* and *Green*.  The Alabama decision also does not address the strong nexus

between the state action and the Federal *Qui Tam* Action and does not even acknowledge the

*Doe* or *Green* decisions or the principles established in those cases.  There are, however, no other

circuit court opinions refuting the *Doe* and *Green* decisions.

The principles established in the *Doe* and *Green* decisions should be applied here

because there exists a strong nexus between the Federal *Qui Tam* Action and the Kentucky

action. The Federal *Qui Tam* Action involves the same defendant, the same facts, similar legal issues, and plaintiffs who assert claims for the same transactions and occurrences.

### C.   The "Voluntary Action" Rule Does Not Apply in This Case

Kentucky argues section 1446(b) applies only to "voluntary acts" of the plaintiff. Plaintiff relies on *California v. Keating*, 986 F.2d at 348, in which a defendant impleaded the Resolution Trust Co. ("RTC") and removed the action based on a federal statute granting federal jurisdiction over actions against the RTC. The Ninth Circuit held that the act of the defendant could not unilaterally make the case removable by impleading the RTC; that is not the case here. Kentucky also relies on other cases where an action of the defendant, or another party wholly adverse to the plaintiff, caused the case to become removable.[9] This case is different. Dey has not done anything to make this case removable.

28 U.S.C. § 1446(b), moreover, does not say "voluntary act of the plaintiff." The "rule" is a gloss on the statute; and, the rationale behind the rule dictates that it is inapplicable here. The rule grows out of the well-pleaded complaint principle in the context of diversity

---

[9]     *Dowd v. Alliance Mortgage Co.*, 339 F. Supp. 2d 452, 454 (E.D.N.Y. 2004) ("Defendant's actions, and not Plaintiff's, created the basis for removability."); *Stauffer v. Citizens Alliance Education Foundation*, 2001 WL 34039481, at *2 (D. Ore. Dec. 14, 2001) (removal improper when based on defendants' offering of "a potential ground for disqualification of a state court judge"); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("We find that an affidavit created by the defendant and based on the defendant's subjective knowledge cannot convert a non-removable action into a removable one."); *Henderson v. City of Chattanooga*, 2002 WL 32060139, at *7 (E.D. Tenn. Mar. 15, 2002) (rejecting removal based on federal claims brought in an "entirely adverse" intervening complaint by intervening plaintiffs "diametrically opposed and hostile" to the plaintiffs in the original state action). The other cases cited by Plaintiff, *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) (finding that plaintiff's demand letter qualified as an "other paper" under section 1446(b)); *Oakes v. Allstate Ins. Co.*, 2005 WL 3134042 (W.D. Ky. 2005) (allowing removal under section 1446(b) based on a claim release signed by plaintiff), are inapposite despite mentioning the voluntary rule, because the main issue in those cases was whether the requirements of section 1446(b) were satisfied, not whether the voluntary rule was satisfied.

actions and addresses two potential policy problems: (i) that deference to a plaintiff's choice of forum under the well pleaded complaint rule means a defendant should not be able to rewrite plaintiff's claim to enable removal, and (ii) that a subsequent state appellate decision could undermine the basis for a prior removal. *See Poulos v. NAAS Foods, Inc.* 959 F.2d 69, 72 (7th Cir. 1992). Neither rationale applies here; and, the rule should not apply to this case.

Dey has not done anything to "rewrite" Kentucky's claims. *Cf. City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164 (1997). This is no different from a case where the plaintiff sues an out-of-state resident. Such a plaintiff does so with the risk that he or she might be removed on diversity grounds. The fact that this case was not removable by Dey until the United States elected to unseal the complaint does not bring this within the "voluntary act" rule because removal is not based on the acts of Dey or any defendant, and the United States and Kentucky both seek to recover the same reimbursements for the same drugs.

Moreover, as the Supreme Court held in *American National Red Cross*, the well-pleaded complaint rule does not apply to an independent grant of federal jurisdiction. 505 U.S. at 258. The voluntary act rule, therefore, also should not apply when removal is based on a grant of jurisdiction under a federal statute independent of federal question jurisdiction under 28 U.S.C. § 1331 because the rule arises from the well-pleaded complaint rule.[10] For example, the voluntary act rule does not apply to the removal under section 1334(b) of actions "related to" bankruptcy cases pending in the federal courts. Even though a bankruptcy proceeding is not caused by the voluntary act of the plaintiff, receipt of a notice of a bankruptcy petition triggers the removal time period under 1446(b), making the case removable. *See Davis v. Life Investors*

---

[10]     Jurisdiction over this action is appropriate under both 28 U.S.C. § 1331 and 31 U.S.C. § 3732(b). *See supra* Part I.A and E.

*Ins. Co. of America, Inc.*, 214 F. Supp. 2d 691, 694 (S.D. Miss. 2002); *see also In Re Asbestos Litigation*, No. CV01-1790-PA, 2002 WL 649400, at *2-3 (D. Or. Feb. 1, 2002); *Thomson v. Able Supply Co.*, 179 F. Supp. 2d 693, 696 (W.D. Tex. 2002); *but see In Re Donington, Karcher, Salmond, Ronan & Reinone, P.A.*, 194 B.R. 750, 755-56 (D.N.J. 1996).

Section 3732(b) is an independent grant of jurisdiction, separate and apart from federal question jurisdiction under 28 U.S.C. § 1331.  Thus, the well-pleaded complaint rule does not apply to actions, such as this one, subject to the grant of jurisdiction in section 3732(b), and the voluntary act rule, an offshoot of the well-pleaded complaint rule, also should not apply to actions like this one.

## III.   KENTUCKY'S SEVERANCE ARGUMENTS ARE MERITLESS

Kentucky could have sued each of the defendants separately but opted not to do so.  Instead, it bundled all of the defendants in a single complaint, pleading its claims against the industry in, for the most part, general terms rather than providing specific allegations of individual defendants' conduct.  Doing so served its purpose at the time.  Now, Kentucky seeks to do otherwise; but, its newfound desire to sever is a transparent attempt to avoid litigating in federal court.  Kentucky should not be held to the framework established by its pleadings, unless and until it elects to amend.  Moreover, Kentucky's attempt to raise the issue of severance in its brief is procedurally improper.  This issue should have been raised by way of a separate motion to sever brought in accordance with the Federal Rules of Civil Procedure, which would give each defendants in this action the opportunity to be heard on the issue of severance.

## CONCLUSION

For the foregoing reasons, Defendant Dey, Inc. respectfully requests that Plaintiff's motion to remand, or alternatively to sever the claims against Dey from the claims against the remaining defendants, be denied in its entirety.

Sanctions, fees and costs are inappropriate here because statutes and case law plainly support removal of this case. An award of costs and attorneys' fees here, moreover, is also plainly inappropriate. "Absent unusual circumstances, courts may award attorney's fees under section 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.[11] Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.* 126 S. Ct. 704, 711, 546 U.S. 132 (2005). There is no binding precedent foreclosing removal based on the grant of federal jurisdiction in section 3732(b). *Cf. G.M. Sign, Inc. v. Global Sharp Solutions, Inc.*, 430 F. Supp. 2d 826, 829 n.4 (N.D. Ill. 2006). The "order or other paper" authorities discussed above allow removal based upon the Federal *Qui Tam* Complaint. *See Green*, 274 F.3d at 267-68. Accordingly, Dey has an objectively reasonable basis for removal and attorneys fees and sanctions are inappropriate.

Dated this 20th day of November, 2006.

---

[11]   The Eleventh Circuit case cited by Kentucky, *Hansard v. Forsyth County*, 2006 WL 1843559 (11th Cir. July 6, 2006), is inapposite because it involved circumstances very different from this action. In *Hansard*, attorneys fees and costs were awarded because there was no objectively reasonable basis for removal and the defendant removed the case in a manner that impeded a motion for preliminary injunction and prevented the construction of a home. *Id.* at *3. There are no such circumstances here: This removal is supported by an objectively reasonable basis and causes little or no delay because the parties continue to conduct discovery on an on-going basis.

Respectfully Submitted,

s/ Wm. T. Robinson III
Wm. T. Robinson III (KBA No. 59330)
Andrew J. (A.J.) Schaeffer (KBA No. 88069)
Carrie A. Shufflebarger (KBA No. 90705)
GREENEBAUM DOLL & MCDONALD PLLC
50 East RiverCenter Blvd., Suite 1800
Covington, Kentucky  41012-2673
Telephone:  (859) 655-4210
Facsimile:  (859) 655-4239

*Attorneys for Defendant Dey, Inc.*

Paul F. Doyle
William A. Escobar
Neil Merkl
Christopher C. Palermo
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY  10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897

*Attorneys for Defendant Dey, Inc.*

## CERTIFICATE OF SERVICE

This will certify that on November 20, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record therein.  The following counsel have been served the foregoing document by regular, U.S. Mail:

J. Steven Baughman
Ropes & Gray, LLP - Washington
700 12th Street, N.W.
Suite 900, One Metro Center
Washington, DC 20005-3948

John T. Montgomery
Ropes & Gray, LLP - Boston
One International Place
Boston, MA 02110

Brien T. O'Connor
Ropes & Gray, LLP - Boston
One International Place
Boston, MA 02110

                                        s/ Wm. T. Robinson III

ELECTRONICALLY FILED

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF KENTUCKY
### AT FRANKFORT

|  |  |
|---|---|
| COMMONWEALTH OF KENTUCKY, *ex rel.* Gregory D. Stumbo, Attorney General<br><br>  Plaintiff<br><br>v.<br><br>WARRICK PHARMACEUTICALS  CORPORATION, SCHERING-PLOUGH CORPORATION, SCHERING CORPORATION and DEY, INC.<br><br>  Defendants | )<br>)<br>)<br>)<br>) Case No. 3:06-CV-00069-KKC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### COMMONWEALTH OF KENTUCKY'S
### REPLY BRIEF IN FURTHER SUPPORT
### OF ITS MOTION TO REMAND

EXHIBIT

F

## TABLE OF CONTENTS

Page

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

A.      Dey's removal is untimely. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

B.      Dey has failed to establish that federal jurisdiction exists. . . . . . . . . . .   8

        1.    Section 3732(b) grants only supplemental jurisdiction
              because the jurisdiction is dependent on another claim. . . . . . .   9

        2.    The False Claims Act does not grant any substantive
              rights to the Commonwealth of Kentucky, and thus does
              not confer original jurisdiction through 28 U.S.C. §1331. . . . .   11

        3.    Dey's reliance on *Breuer v. Jim's Concrete of Brevard, Inc.,*
              is misplaced. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

        4.    Removal is only proper where the plaintiff could have
              filed his complaint in federal court at the outset. . . . . . . . . . . .   13

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

# TABLE OF AUTHORITIES

## CASES

Page

*Aldinger v. Howard*, 427 U.S. 1, 9-10 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*American National Red Cross v. S.G.*, 505 U.S. 247 (1992) . . . . . . . . . . . . . .   3

*Ancar v. Murphy Oil U.S.A., Inc.*, 2006 WL 2850445
(E.D.La. Oct. 3, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003) . . . . . . . . . .   13

*Burns v. Prudential Securities*, 450 F.Supp. 2d 808(N.D. Ohio 2006) . . . . . . .   6

*Doe v. American Red Cross*, 14 F.3d 196 (3rd Cir. 1993) . . . . . . . . . . . . . . . .   passim

*Freeman v. Howe*, 24 How. 450, 460, 16 L.Ed. 749 (1861) . . . . . . . . . . . . . .   11

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*
125 S.Ct. 2363 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263 (5th Cir. 2001) . . . . . . . . .   passim

*Gulf Offshore Co. v. Mobil Oil Co.*, 453 U.S. 473, 480 (1981) . . . . . . . . . . . . .   12

*iGames Entertainment, Inc. v. Regan*, 2004 WL 2538285
(E.D.Pa. Nov. 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7- 8

*In re TMI Litigation Cases Consol. II*, 940 F.2d 832 (3rd Cir. 1991) . . . . . . . . .   12

*Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 (9th Cir. 1989). . .   13

*Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976) . . . . . .   13

*Lancaster County Office of Aging v. Schoener*, 2003 WL 21282198, *1
(E.D.Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1166 (9th Cir. 2002) . . . . . . . . . . .   10

*Mesa v. California*, 489 U.S. 121, 136 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Morsani v. Major League Baseball*, 79 F.Supp.2d 1331, 1333, n. 5 (M.D.Fla. 1999)..   7

*Osborn v. Bank of the United States*, 22 U.S. (9 Wheat) 738
6 L.Ed. 204 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999) . . . . . . . . . . . . .   5

*Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660 (Ohio 1999). . .   7

*SCS Business & Technical Inst., Inc.*, 173 F.3d 870, 880 (D.C. Cir. 1999) . . . .   9

*Shafizadeh v. BellSouth Mobility, LLC,* 2006 WL 1866826, *2
(6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Tyree v. Burlington Northern and Santa Fe Ry. Co.*
973 F.Supp. 786, 791, n. 3 (W.D.Tenn. 1997) . . . . . . . . . . . . . . . . . . . . .   13

*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*
110 F.3d 861 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 496-97 (1983) . . . . . .   12

*Yarnevic v. Brink's, Inc.,* 102 F.3d 753 (4th Cir. 1996) . . . . . . . . . . . . . . . . . .   7- 8

*Young v. Chubb Group of Ins. Cos.,* 295 F.Supp. 2d 806 (N.D.Ohio 2003) . . . .   6

## STATUTES

9 U.S.C. §201, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10-11

28 U.S.C. §1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

28 U.S.C. §1442(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

28 U.S.C. §1446(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

31 U.S.C. §3732(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

31 U.S.C. §3732(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8-10

## MISCELLANEOUS

Fed.R.Civ.P. 72(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Black's Law Dictionary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

1986 U.S.C.C.A.N. 5266, 5281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

ELECTRONICALLY FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### AT FRANKFORT

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, *ex rel.* Gregory D. Stumbo, Attorney General )<br><br>Plaintiff )<br><br>v. )<br><br>WARRICK PHARMACEUTICALS  CORPORATION, SCHERING-PLOUGH CORPORATION, SCHERING CORPORATION and DEY, INC. )<br><br>Defendants ) | Case No. 3:06-CV-00069-KKC |

## COMMONWEALTH OF KENTUCKY'S
## REPLY BRIEF IN FURTHER SUPPORT
## OF ITS MOTION TO REMAND

## I. INTRODUCTION

Defendants' lengthy memorandum in response to the Commonwealth's motion to remand obscures the fact that there are two relatively simple and straightforward questions to resolve.  First, from a procedural standpoint, does the unsealing of a federal *qui tam* complaint against a defendant in another venue provide defendants with a new 30 day period in which to remove the pending state court proceedings?  Second, because the unsealed complaint is brought under the False Claims Act, does 31 U.S.C. §3732(b) confer original jurisdiction over the state claims?  The answer to both questions is unequivocally "No."

Two federal courts have rejected the very arguments presented in Dey's opposition brief. *See State of Hawaii v. Abbott Laboratories, Inc., et al.*, 2006 WL3191253 (D.Hawaii) ("Hawaii order"), and State of Alabama v. Abbott Laboratories, Inc., et al., 2006 WL 3170553 (M.D.Ala.) ("Alabama

1

order"), copies of which are attached hereto as Exhibits 1 and 2, respectively.[1]  Like the Hawaii and Alabama courts, this Court should reject Dey's arguments, because the arguments fail under the dual analysis of procedural requisites and substantive law.

First, as the other courts concluded, neither the federal *qui tam* complaint against Dey nor the order unsealing it is an "order or other paper" within the meaning of 28 U.S.C. §1446(b) that restarted the 30-day removal clock.  Accordingly, Dey's removal is untimely.  Second, as those courts found, 31 U.S.C. §3732(b) does not constitute a grant of original jurisdiction, a necessary prerequisite to removal under 28 U.S.C. §1441(a).  Accordingly, even if the removal was timely (which it is not), federal jurisdiction does not exist and remand is required.

## II. ARGUMENT

A. <u>Dey's removal is untimely</u>.

Dey does not dispute that case was not removed within 30 days of service of the complaint and summons as required by the first paragraph of 28 U.S.C. §1446(b).  Relying on the second paragraph of 28 U.S.C. §1446(b), Dey argues that the 30-day removal clock restarted on September 11, 2006, when it received from the United States Department of Justice a copy of the federal *qui tam* complaint and the September 9, 2006 unsealing order issued by the federal court in Boston.  The second paragraph of §1446(b) provides:

> If the case started by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

Clarifying removal papers, Dey now contends that the *qui tam* complaint is an "other paper" and the unsealing order is an "order" within the meaning of this provision.  This distinction is important, because, as explained below, the case law interpreting §1446(b) distinguishes between

[1] The Hawaii order was entered by Magistrate Judge Barry J. Kurren.  On November 7, 2006, Dey appealed the order pursuant to Fed.R.Civ.P. 72(a).  On November 13, 2006, Hawaii filed its response to Dey's appeal. Oral argument on the appeal is scheduled for November 27, 2006.  Dey faces a serious uphill battle in its appeal, as the order can only be set aside if it is found to be "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); D.Haw. Local Rule 74.1.  It is neither.

these two terms.

As the Commonwealth demonstrated in its initial brief, the prevailing view of courts that have interpreted the terms "order" and "other paper" in §1446(b) is that it applies only to events that occur within the removed state court action which are caused by the plaintiff's voluntary act. This predominant interpretation flows from the plain language of the statute as well as its legislative history. *See* Commonwealth's Memorandum in Support of Motion to Remand ("remand motion"), at 5-9 and cases cited therein. Because the federal *qui tam* complaint and the order unsealing it did not occur within the instant state court action and were not caused by any act of the Commonwealth, voluntary or otherwise, Dey's receipt of them did not provide a new 30-day period for removal.

Dey does not seriously dispute that the above interpretation of the statute is correct; rather, Dey argues that the facts of this case fall within a narrow exception to the interpretation as set forth in *Doe v. American Red Cross*, 14 F.3d 196 (3rd Cir. 1993), and *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263 (5th Cir. 2001). Dey contends that these cases stand for the proposition that "[i]f an 'order or other paper' emanates from a different case that has a nexus to the action being removed and has an effect on the basis for removal, that 'order or other paper' restarts the thirty (30) day clock for removal under section 1446(b)." Dey's memorandum in opposition to plaintiff's motion to remand ("Opp."), at 17. Dey grossly mischaracterizes the limited holdings of these cases for, as shown below, neither case supports Dey's position.

The federal *qui tam* complaint itself cannot trigger a new 30-day removal period under *American Red Cross* or *Green* because it is not an "order." Accordingly, the only "order" that Dey can (and does) rely on as restarting the 30-day removal clock is the September 9, 2006 unsealing order. Dey fails to show that the unsealing order satisfies the rigorous test set forth in *American Red Cross* and *Green* in order to constitute an "order" within the meaning of §1446(b).

In *American Red Cross*, the Red Cross removed plaintiff's state-law action, arguing that the "sue-or-be-sued" provision of its charter conferred federal jurisdiction. The district court rejected this argument and remanded the case. After remand, and while the case was pending in state court, the Supreme Court held in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), that the "sue-

3

or-be-sued" provision of the Red Cross's charter conferred federal jurisdiction. *The Supreme Court expressly authorized the Red Cross to remove* "any state-law actions it is defending." *American Red Cross*, 14 F.3d at 197-98. The Court emphasized the narrow reach of its decision: "We take an extremely confined view of this case and our holding is equally narrow." *Id.*, at 202. Indeed, the Court repeatedly noted that the "order" in the intervening Supreme Court case was "an unequivocal order directed to a party in the pending litigation, explicitly authorizing it to remove any cases it [was currently] defending." *Id.* Moreover, the Court only construed the term "order" in §1446(b). It expressly refused to construe or interpret the term "other paper." *Id.*, at 202.

More importantly, far from simply requiring that "*a nexus*" exists between the intervening court decision and the underlying state court case and that the decision only have "*an* effect" on the basis for removal as Dey contends (*see* Opp., at 17), *American Red Cross* established a rigorous test for determining whether the relationship was sufficient to trigger a new 30-day removal period:

> Some comment is required, however, to express our agreement with the Appellants' premise that an order, as manifested through a court decision, must be sufficiently related to a pending case to trigger Section 1446(b) removability. We believe that an order is sufficiently related when, as here, the order in the case came from a court superior in the same judicial hierarchy, was directed at a particular defendant and expressly authorized that same defendant to remove an action against it in another case involving similar facts and legal issues.

*Id.*, at 202-03.

Dey fails this stringent test. First, the unsealing order is not a "court decision" in any meaningful sense of that term. *American Red Cross* addressed and is limited to orders that consider and resolve disputed questions of law. Here, however, the unsealing order was not the result of, nor did it resolve, any dispute between Dey and the federal government or the *qui tam* relator. Rather, it was simply a procedural order that made the lawsuit public and permitted the federal government to commence litigation. For all practical purposes, the unsealing order was tantamount to the filing of a complaint. Second, the unsealing order did not come from a "court superior in the same judicial hierarchy." Rather, it was issued by a federal district court in Boston, which has no binding effect on any proceedings in the Kentucky state or federal courts. Third, the unsealing order was not "directed at a particular defendant." Instead, it was directed to the clerk of the court, authorizing the

4

complaint to become part of the public record.  Finally, the unsealing order did not expressly authorize Dey to remove any other actions against it.

*American Red Cross* addresses the narrow situation in which an intervening court ruling that is binding on the court handling the state court action is actually dispositive of the federal jurisdictional question.  The September 9, 2006 unsealing order says nothing whatsoever about federal jurisdiction generally, federal jurisdiction over the instant state court action specifically, nor anything about 31 U.S.C. §3732(b), the specific basis for federal jurisdiction advanced by Dey.  Accordingly, it does not fall within the narrow *American Red Cross* exception.

In *Green*, defendants removed plaintiff's state court action, arguing that a federal statute preempted plaintiff's state-law claims.  The district court granted plaintiff's remand motion, concluding that the federal statute did not preempt state law.  After remand, and while the case was pending, the Fifth Circuit decided a case (*Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999)), which held that the federal statute *did* preempt state law.  Defendants again removed and plaintiffs again filed a remand motion.  The *Green* court concluded that the facts of the case fell within the narrow exception of *American Red Cross*:

> The Third Circuit, however, has held that in very limited circumstances, similar to those here -- a decision by a court in an unrelated case, but which involves the same defendant, a similar factual situation, and the question of removal -- can constitute an "order" under §1446(b).

*Green*, 274 F.3d at 267.  The court noted that although *Sanchez* did not explicitly authorize defendants to remove pending state court cases (distinguishing it from the facts of *American Red Cross*), *Sanchez* had a similar effect as the Supreme Court decision had on the defendant in *American Red Cross*, *i.e.*, it was dispositive as to the question of federal jurisdiction. *Id.*, at 268. Like *American Red Cross*, *Green* limited its holding to the specific circumstances of the case: "The similarities between this case and *Sanchez* bring this case within the *limited parameters* of *American Red Cross*. We therefore hold that the *Sanchez* opinion, under these *very narrow circumstances*, was an 'order' for purposes of §1446(b) removal." *Id.*, at 268 (emphasis added).

Like *American Red Cross*, *Green* involved: (a) an intervening decision from a superior court

5

(b) that was binding on the court handling the removed state action (c) resolved a disputed question of law, and (d) that was dispositive as to the question of federal jurisdiction at issue in the removed action. As explained above, Dey cannot satisfy any part of this four-part test.

Dey seeks the creation of a new, broader exception to the rule that orders in other cases do not constitute "orders" under §1446(b). Dey's request is unjustified for several reasons. *First*, Dey fails to define the parameters or limitations of this new exception it is asking the Court to create. *Second*, Dey fails to identify any compelling policy reason for creating a new exception. *Third*, there is a very compelling policy reason *not* to create a new exception here. Allowing a party to remove a case in the absence of an intervening decision from a superior court that is binding on the state court action and that resolves a disputed question of law that is dispositive as to the question of federal jurisdiction would open the floodgates of the federal courts to swarms of removal actions. Federal courts would be asked to interpret and construe orders and opinions that have no binding precedent and the holdings and effects of which will be subject to serious dispute by the parties. Federal statutes like 28 U.S.C. §1446(b) that provide clear deadlines should not be subject to such uncertainty. *Fourth*, creating the new exception that Dey seeks is inconsistent with the bedrock principle that the removal and jurisdiction statutes should be construed narrowly and strictly against removal and in favor of remand. *See Burns v. Prudential Securities,* 450 F.Supp. 2d 808(N.D. Ohio 2006).

The two cases cited by Dey that follow *American Red Cross* and *Green* are inapposite. In *Ancar v. Murphy Oil U.S.A., Inc.,* 2006 WL 2850445 (E.D.La. Oct. 3, 2006), the court found that an intervening decision from the Fifth Circuit was an "order" under §1446(b). However, unlike the instant case, the intervening decision in *Ancar* was entered by a superior court in the same judicial hierarchy and was dispositive as to the question of federal jurisdiction at issue in the removed case (relating to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201, *et seq.*). Similarly, in *Young v. Chubb Group of Ins. Cos.,* 295 F.Supp. 2d 806 (N.D.Ohio 2003), the court concluded that an intervening decision from the Sixth Circuit was an "order" within the meaning of §1446(b). As in *Ancar*, the intervening decision was issued by a

6

superior court in the same judicial hierarchy and the decision was dispositive as to the jurisdictional question at issue in the removed case (the removability of actions covered by *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660 (Ohio 1999)).[2]

Two other cases cited by Dey are inapplicable: *Yarnevic v. Brink's, Inc.*, 102 F.3d 753 (4th Cir. 1996), and *iGames Entertainment, Inc. v. Regan*, 2004 WL 2538285 (E.D.Pa. Nov. 9, 2004). *See* Opp., at 14-15. In *Yarnevic*, the plaintiff, a resident of Ohio, filed suit in state court against two defendants, a Delaware corporation and an Ohio resident.   Defendants removed, arguing that diversity jurisdiction existed because the individual defendant was the agent of the defendant corporation and therefore was also a citizen of Delaware.   In his motion to remand, plaintiff stated for the first time that he had moved to Pennsylvania after he filed his complaint but before it was served.   This motion made clear that there was complete diversity between the parties at the time of removal.   The court found that plaintiff's remand motion was a "motion" or "other paper" under §1446(b) that restarted the 30-day removal clock.   *Yarnevic* falls comfortably within the general rule that the "other paper" must result from the voluntary act of the plaintiff.[3]   *Yarnevic* is of no help to Dey, however, because the event that Dey contends triggered a new 30-day removal period was not caused by any act of the Commonwealth, whether voluntary or not.

In *iGames Entertainment*, plaintiffs filed an action in Pennsylvania state court.   Defendants removed the Pennsylvania case to state court, arguing that diversity jurisdiction existed and the

---

[2] Dey attempts to distinguish the previous remand decisions by federal courts in Pennsylvania, Wisconsin, and Minnesota, as well as the MDL court in Massachusetts, which refused to follow *American Red Cross* and *Green*, on the ground that the intervening Supreme Court decision which defendants argued restarted the 30-day removal clock, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005), involved different parties and different issues. Opp., at 20-21. Here, Dey argues, the federal *qui tam* action and this action share a common party (Dey) and common substantive issues. Yet this argument does not get Dey over the remaining hurdles of the rigorous standard articulated by *American Red Cross* and *Green* which, as explained above, it cannot surmount.

[3] Dey's argument that the "voluntary action" rule does not apply (*see* Opp., at 17-19) is incorrect, an effort at misdirection, and irrelevant. It is incorrect because although the rule originates from diversity jurisdiction jurisprudence, courts have made clear that it is equally applicable in the federal question jurisdiction jurisprudence. *See, e.g., Morsani v. Major League Baseball*, 79 F.Supp.2d 1331, 1333, n. 5 (M.D.Fla. 1999) ("[i]n both federal question and diversity cases...Section 1446(b) restricts defendants from removing most cases when the circumstance potentially allowing removal arises through no consequence of the plaintiff's actions"). It is an effort at misdirection because Dey seeks to rewrite the rule, contending that it focuses on whether the act giving rise to removal resulted from the act of the *defendant*. It is irrelevant because even if the rule is inapplicable, Dey must still meet its burden of establishing that the facts of this case fall within the limited holdings of *American Red Cross* and *Green*. As demonstrated above, Dey has not done so.

amount in controversy exceeded $75,000.00. Plaintiffs moved to remand, arguing that defendants could not establish the requisite amount in controversy where the civil cover sheet in the Pennsylvania action only indicated that the amount in controversy was "more than $50k." However, plaintiffs had served pre-complaint discovery on the defendants, including a press release that referenced a previous lawsuit that the defendants had filed against plaintiffs in federal court in Delaware in which defendants alleged that plaintiffs had withheld $2 million in breach of a contract between the parties. These documents put defendants on notice for the first time that the same breach-of-contract claim at issue in the Delaware case was at issue in the Pennsylvania case. The court found that these documents were "other papers" under §1446(b) sufficient to establish that the amount in controversy in the Pennsylvania action exceeded $75,000.00. *iGames Entertainment*, too, therefore falls within the general rule that a voluntary act of the plaintiff that occurs within the removed state court action can be considered in determining whether a right to remove exists. Again, the federal *qui tam* complaint and order unsealing it upon which Dey relies in this case were not caused by the plaintiff herein, and thus, neither the federal *qui tam* complaint nor the order unsealing it constitute an "order or other paper" within the meaning of 28 U.S.C. §1446(b). Dey's removal is therefore untimely and remand is required on this basis alone.

B. Dey has failed to establish that federal jurisdiction exists.

Removal is authorized when the federal courts have "original jurisdiction" over the matter. 28 U.S.C. §1441(a). The Commonwealth aptly demonstrated in its opening brief that 31 U.S.C. §3732(b) does not confer original jurisdiction. Remand motion, at 9-14. In the Hawaii action, Judge Kurren agreed:

> §3732(b) does not grant the district courts original jurisdiction over related claims brought by state governments. Rather, it grants them only supplemental jurisdiction. Because supplemental jurisdiction cannot be a basis for removal, *Sygenta Crop Protection, Inc.*, 537 U.S. at 34, the *Ven-A-Care* suit does not provide Dey with an additional substantive basis for removing this case.

Hawaii order, at 15. Judge Thompson reached the same conclusion in the Alabama action. *See* Alabama order ("31 U.S.C. §3732(b) appears to be a 'supplemental' jurisdictional statute and thus

cannot, by itself, be a basis for 'removal' jurisdiction, which must rest on 'original' jurisdiction").

In its opposition, Dey does not dispute the well-established principle that *supplemental* jurisdiction

cannot be a basis for removal, but instead bases all of its arguments on the mistaken premise that 31

U.S.C. §3732(b) confers "original jurisdiction" over the Commonwealth's state law claims.  More

specifically, Dey contends that 31 U.S.C. §3732(b): (a) grants original jurisdiction; (b) indirectly

grants original jurisdiction through 28 U.S.C. §1331; and (c) is not an *exception* to removal.  Each

of these arguments is without merit.

1.    Section 3732(b) grants only supplemental jurisdiction because the jurisdiction
       is dependent on another claim.

Supplemental jurisdiction is defined by *Black's Law Dictionary* as "[j]urisdiction over a

claim that is part of the same case or controversy as another claim over which the court has original

jurisdiction."  Here, the jurisdiction §3732(b) confers is dependent on another claim over which the

federal courts have original jurisdiction -- thus making the jurisdiction supplemental. The legislative

history of §3732(b) also supports the conclusion that it allows -- but does not force -- states to

intervene in FCA actions.  Interpreting Congress' grant of jurisdiction in the statute as supplemental

is in line with the stated intent-of provision,[4] whereas interpreting the grant as original (and thus

allowing removal) contradicts this intent.  *See SCS Business & Technical Inst., Inc.*, 173 F.3d 870,

880 (D.C. Cir. 1999) ("courts interpreting the FCA have recognized that the purpose of §3732(b) is

to authorize 'permissive intervention by states for recovery of state funds'").   Here the

Commonwealth has neither any claims under the FCA, nor has it sought permission to intervene in

the Federal FCA action.[5]

Nevertheless, Dey makes several meritless arguments in support of its assertion that §3732(b)

confers "original" jurisdiction.  First, Dey cites *U.S. ex rel. Thistlethwaite v. Dowty Woodville*

---

[4] "[I]n response to comments from the National Association of Attorneys General, the subcommittee adopted a provision allowing state and local governments to join state law actions with false claim actions brought in federal district court if such actions grow out of the same transaction or occurrence." S. Rep. No. 345, 99th Cong., 2nd Sess., at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5281.

[5] Unlike many states, Kentucky has no state version of the federal FCA.

9

*Polymer, Ltd.*, 110 F.3d 861 (2nd Cir. 1997). However, the case did not hold that §3732(b) grants "original jurisdiction." Rather, the court was concerned with a different provision of the False Claims Act, §3732(a), in the context of establishing venue and whether that section limited jurisdiction. In finding that subsection (a) was a venue provision, the court made a passing reference to §3732(b) as dealing with "subject matter jurisdiction." The court's brief reference is of no moment, because "subject matter jurisdiction" can be either original or supplemental, and further, the court there neither analyzed nor interpreted subsection (b). In comparing subsections (a) and (b), the court merely noted, "that a different part of §3732 does indeed deal with subject matter jurisdiction....subsection (a) however, contains no mention of jurisdiction..." *Dowty Woodville Polymer* at 866. *See also, e.g., Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1166 (9th Cir. 2002) ("we must consider the constitutionality of *supplemental subject matter jurisdiction* involving a party over whom there is no independent basis for federal court jurisdiction") (Emphasis added).

Next, Dey notes that in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), the Supreme Court found that the "sue and be sued" provision of a particular federal corporate charter conferred original federal jurisdiction over cases to which that corporation was a party," 505 U.S. at 252, and that charter did not use the term "original jurisdiction." From this Dey incorrectly contends that §3732 must confer original jurisdiction because it similarly does not contain the term "original." Dey's argument is without merit. First, contrary to Dey's contention, the Supreme Court in *Red Cross* never addressed whether the term "original jurisdiction" appeared in the corporate charter. Second, the Court was analyzing an inapposite situation: the circumstances under which an organization whose charter stated that it could be sued in federal court could be removed; there was no requirement of an independent claim for which the court had original jurisdiction. In the instant case, while the absence of the word "original" in §3732(b) may not be determinative, the fact that jurisdiction is dependent on another action conclusively establishes that the jurisdiction is not original.

Dey also argues that the jurisdiction granted is not supplemental because the statute that codified general grants of supplemental jurisdiction -- 28 U.S.C. §1367 -- uses the word "claims"

instead of "actions." Dey contends that supplemental jurisdiction can only be exercised over state-law claims in an existing federal action. Dey is wrong. The concept of supplemental jurisdiction extends beyond the limits of 28 U.S.C. §1367, which was enacted in 1990. For example, one form of supplemental jurisdiction -- pendent-party jurisdiction (or "ancillary jurisdiction") -- traditionally applied to a party which was not otherwise subject to the court's jurisdiction in an *action* that arose from the same transaction or occurrence as another claim that was properly before the court. *See Black's Law Dictionary* (definition of jurisdiction -- pendent party); *Aldinger v. Howard*, 427 U.S. 1, 9-10 (1976). Regardless of the particular form of jurisdiction that was codified by 31 U.S.C. §3732(b), it cannot be disputed that the jurisdiction is dependent, and thus supplemental. *Aldinger*, 427 U.S. at 10 (stating that an action maintainable because of pendent-party jurisdiction "would not have been 'an original suit, but ancillary and dependent, supplementary merely to the original suit'") (citing *Freeman v. Howe*, 24 How. 450, 460, 16 L.Ed. 749 (1861)).

   2.   The False Claims Act does not grant any substantive rights to the Commonwealth of
        Kentucky, and thus does not confer original jurisdiction through 28 U.S.C. §1331.

   Dey also contends that original jurisdiction is independently conferred by 28 U.S.C. §1331. Section 1331 states simply that the "district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331 (Emphasis added). Dey asserts that because the False Claims Act is a law of the United States, and because §3732(b) provides the state with the ability to intervene in the federal *qui tam* action, that Kentucky's case now *arises under* the laws of the United States just as if the Commonwealth had alleged a federal cause of action against Dey. Magistrate Judge Kurren properly rejected this argument in Hawaii, noting that if Dey were correct, all grants of supplementary jurisdiction would also be grants of original jurisdiction:

> Putting aside the tautological nature of this argument, common sense and basic principles of statutory construction dictate that Dey's argument must be false. If Dey is correct, then all grants of supplemental jurisdiction would also simultaneously be grants of original jurisdiction. Even the supplemental jurisdiction statute itself, 28 U.S.C. §1367, would grant original jurisdiction under Dey's construction of §1331. This is obviously incorrect, and Dey did not pursue this argument at the hearing.

11

Hawaii order, at 13, n. 4.

Furthermore, it is well established that a statute which merely confers access to the federal courts but does not require the application of substantive federal law does not create "arising under" jurisdiction under §1331.  In *In re TMI Litigation Cases Consol. II*, 940 F.2d 832 (3rd Cir. 1991) (a case cited by Dey in its opposition brief), the Third Circuit stated that the "central teaching of *Osborn [v. Bank of the United States*, 22 U.S. (9 Wheat) 738, 6 L.Ed. 204 (1824)], is that a case cannot be said to arise under a federal statute where that statute is nothing more than a jurisdictional grant...it must do more." *Id.*, at 849.  The Third Circuit noted the Supreme Court's conclusion that grants of jurisdiction that "merely concern access to the federal courts," do not create "arising under" jurisdiction.  *Id.*, at 850.  Instead, the statute must create substantive federal law.  *See also Gulf Offshore Co. v. Mobil Oil Co.*, 453 U.S. 473, 480 (1981) (the Outer Continental Shelf Act (OCSLA), which was enacted in order to fill gaps in the federal scheme, "borrow[s] the 'applicable and not inconsistent laws' of the adjacent states as surrogate federal law").

The *Osborn* rule was affirmed by the Supreme Court in *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 496-97 (1983) (holding that pure jurisdictional statutes which seek "to do nothing more than grant jurisdiction over a particular class of cases" cannot support Article III "arising under" jurisdiction, and finding that the Foreign Sovereign Immunities Act conferred "arising under" jurisdiction because it "codifie[d] the standards governing foreign sovereign immunity as an aspect of substantive federal law"), and *Mesa v. California*, 489 U.S. 121, 136 (1989) (holding that the federal officer removal statute, 28 U.S.C. §1442(a), is a pure jurisdictional statute that does not support "arising under" jurisdiction in the absence of a federal defense).

In the instant case, §3732(b) merely concerns access to the federal courts but provides no substantive federal law to be applied to the instant state law claims.  Indeed, it is explicitly limited to actions "brought under the laws of any state."  Therefore, §3732(b) "merely concern[s] access to the federal courts," and accordingly does not create "arising under" jurisdiction under 28 U.S.C. §1331.

12

3. Dey's reliance on *Breuer v. Jim's Concrete of Brevard, Inc.*, is misplaced.

Dey places great emphasis on *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), yet the case has no application here. *Breuer* examined whether a provision of the federal Fair Labor Standards Act, which stated that an action "may be maintained" in state court, constituted an express exception to 28 U.S.C. §1441(a)'s general removal authorization. *Id.*, at 694.[6]  Original jurisdiction was assumed in *Breuer* since the claims were brought under a federal statute. At issue in this case is not whether an exception to removal exists, but rather whether 31 U.S.C. §3732(b) confers original jurisdiction in the first place. While it is true that where original jurisdiction exists, an exception to removal must be express, it is also true that the question of whether an action is subject to removal in the first place must be established beyond a doubt. *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976) (any doubt regarding jurisdiction should be resolved in favor of remand). *Breuer* therefore does not support Dey's circuitous logic.

4.   Removal is only proper where the plaintiff could have filed his complaint in federal court at the outset.

Finally, it is well established that "removal is proper only where the plaintiff could have filed his complaint in federal court at the outset...." *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 (9th Cir. 1989). *See also Shafizadeh v. BellSouth Mobility, LLC*, 2006 WL 1866826, *2 (6th Cir. 2006) ("[i]t is well-covered ground that a state court defendant may remove a 'civil action' to federal court if the plaintiff 'original[ly]' could have filed the action in federal court"); *Tyree v. Burlington Northern and Santa Fe Ry. Co.*, 973 F.Supp. 786, 791, n. 3 (W.D.Tenn. 1997) ("[a]t a minimum, therefore, in order for a defendant to remove an action to federal court under §1441(a), the Court must find that the plaintiff could have filed his complaint in federal court"); *Lancaster County Office of Aging v. Schoener*, 2003 WL 21282198, *1 (E.D.Pa. 2003) ("[r]emoval jurisdiction is lacking in this case because plaintiff could not have initially filed its complaint in federal court

---

[6] 28 U.S.C. §1441(a) provides: "*Except as otherwise expressly provided by Act of Congress*, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants..." (Emphasis added).

based on the court's original jurisdiction"). Here, Dey ignores the fact that §3732(b) permits a state to file suit in federal court only where a related federal lawsuit is pending. The federal *qui tam* complaint was unsealed and filed on September 9, 2006. The Commonwealth filed its action on September 15, 2003, and could not have filed its lawsuit in *any* federal court at that time. Accordingly, §3732(b) does not confer original jurisdiction over the pending Kentucky action.

## III. CONCLUSION

For the foregoing reasons, plaintiff asks the Court to remand this case to the state court and to award it its fees and costs.

Respectfully submitted,

GREGORY D. STUMBO
ATTORNEY GENERAL OF KENTUCKY

By:   s/Paula J. Holbrook
Paula J. Holbrook
C. David Johnstone
OFFICE OF THE ATTORNEY GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
(502) 573-7150 Facsimile
Paula.Holbrook@ag.ky.gov
David.Johnstone@ag.ky.gov

Counsel for Plaintiff
Commonwealth of Kentucky

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on this the 29th day of November, 2006, a copy of the foregoing Commonwealth's Reply Brief in Further Support of Its Motion to Remand was filed electronically through the Court's ECF system, which will send a notice of electronic filing to all counsel of record herein.

s/Paula J. Holbrook
Assistant Attorney General

14

Westlaw.

Slip Copy

Slip Copy, 2006 WL 3191253 (D.Hawai'i)
**(Cite as: Slip Copy)**

Hawaii v. Abbott Laboratories, Inc.D.Hawai'i,2006.Only the Westlaw citation is currently available.
United States District Court, D. Hawai'i.
State of HAWAII, Plaintiff,
v.
ABBOTT LABORATORIES, INC.; Alpharma USPD, Inc.; Apothecon, Inc.; Astrazeneca Pharmaceuticals LP; Astrazeneca LP; Aventis Pharmaceuticals, Inc.; Aventis Behring LLC n/k/a/ ZLB Behring LLC; Barr Laboratories, Inc.; Baxter Healthcare Corporation; Bayer Corporation; Ben Venue Laboratories, Inc.; Boehringer Ingelheim Pharmaceuticals, Inc.; Boehringer Ingelheim Roxane, Inc. f/k/a Roxane Laboratories, Inc.; Bristol-Myers Squibb Co.; Centocor, Inc.; Dey, Inc.; Forest Pharmaceuticals, Inc.; Glaxosmithklein Pharmaceuticals, Hoffman-Laroche, Inc.; Hospria, Inc.; Ivax Corporation, Inc.; Ivax Pharmaceutical, Inc.; Janssen Pharmaceutical Products, LP; Johnson & Johnson, Inc.; McNeil-PPC, Inc.; Merck & Co., Inc.; Mylan Laboratories, Inc.; Mylan Pharmaceuticals, Inc.; Novartis Pharmaceuticals Corporatoin; Ortho Biotech Products, LP; Par Pharmaceutical Cos., Inc.; Pfizer, Inc.; Pharmacia Corporation; Roche Laboratories, Inc.; Purepac Pharmaceutical Co.; Sandoz, Inc.; Scheringplough Corporation; Sicor Pharmaceuticals, Inc. f/k/a/ Gensia Sicor Pharmaceuticals, Inc.; Tap Pharmaceutical Products, Inc .; Teva Pharmaceuticals USA, Inc.; Warrick Pharmaceuticals Corporation; Watson Pharmaceuticals, Inc.; Watson Pharma Inc., f/k/a Schein Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Doe Corporations 1-100; Doe Entities 1-100, Defendants.
**CV. No. 06-00437 DAE-BMK.**

Oct. 27, 2006.

Warren Price, III, Kenneth T. Okamoto, Rick J. Eichor, Price Okamoto Himeno & Lum, Honolulu,

HI, Robert Libman, Miner, Barnhill & Galland P.C., Chicago, IL, for Plaintiff.
John T. Komeiji, Watanabe Ing Kawashima & Komeiji, Frederick W. Rohlfing, III, Case Bigelow & Lombardi, Gail Y. Cosgrove, Hisaka Stone Goto Yoshida COsgrove & Ching, Kenneth J. Mansfield, William C. McCorriston, McCorriston Miller Mukai MacKinnon LLP, Edmund Burke, Burke McPheeters Bordner & Estes, Thomas I. Tsuchiyama, Sumida & Tsuchiyama, LLLC, Arthur F. Roeca, Roeca Louie & Hiraoka, John R. Lacy, Randy L.M. Baldemor, Thomas Benedict, Lisa W. Munger, Dawn T. Sugihara, Jacqueline L.S. Earle, Corlis J. Chang, Goodsill Anderson Quinn & Stifel LLLP Alii Place, Jerold T. Matayoshi, Fukunaga Matayoshi Hershey & Ching, Jeffrey S. Portnoy, Cades Schutte, Cori Ann C. Takamiya, James N. Duca, Kessner Duca Umebayashi Bain & Matsunaga, Brook Hart, Dale W. Lee, Kobayashi Sugita & Goda, Diane D. Hastert, Robert D. Harris, Damon Key LeongKupchak Hastert, Bruce D. Voss , Ryan H. Engle, Bays Deaver Lung Rose & Baba, Margery S. Bronster, Bronster Crabtree & Hoshibata, Paul Alston, Stephen M. Tannenbaum, Tina Leah Colman, Alston Hunt Floyd & Ing, Honolulu, HI, J. Steven Baughman, Patryk J. Drescher, Ropes & Gray LLP, Douglas B. Farquhar , Hyman, Phelps & McNamara, P.C., Washington, DC, for Defendants.

*AMENDED FINDING AND RECOMMENDATION THAT PLAINTIFF STATE OF HAWAII'S MOTION TO REMAND BE GRANTED*
BARRY M. KURREN, Magistrate Judge.
*1 Before the Court is Plaintiff State of Hawaii's Motion for **Remand**. After careful consideration of the Motion, memoranda, and arguments of counsel, the Court hereby FINDS & RECOMMENDS that Plaintiff's Motion be GRANTED.

*BACKGROUND*

Plaintiff State of Hawaii (the "State") filed this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PLAINTIFF'S
EXHIBIT 1**

Page 2

Slip Copy

Slip Copy, 2006 WL 3191253 (D.Hawai'i)
**(Cite as: Slip Copy)**

action in the Circuit Court of the First Circuit of Hawaii, alleging that Defendants "engage[d] in an unlawful scheme to cause Hawaii and its citizens to pay inflated prices for prescription drugs." (Pl.'s Mem. Supp. Mot. 5-6.) Specifically, the State claims that Defendants published phony "average wholesale prices" ("AWPs") and engaged in other deceptive acts that led to overpayments by both the State Medicaid program and Medicare beneficiaries in Hawaii. The State alleges that these actions violated the Hawaii False Claims Act, the Hawaii Unfair or Deceptive Practices Act, and constituted common law intentional and/or negligent misrepresentation and unjust enrichment.

The State filed its original Complaint on April 27, 2006. No Defendant was served with the Complaint prior to July 21, 2006. However, on May 25, Defendants Schering-Plough Corporation (" Schering Plough") and its subsidiary Warrick Pharmaceuticals Corporation ("Warrick") served the State with a Notice of Deposition.

Defendants removed this case to federal court on August 10, 2006. On September 12, 2006, a Conditional Transfer Order for this case was filed by the Judicial Panel on Multidistrict Litigation to transfer the case to the District of Massachusetts for consolidated pretrial proceedings with a number of similar cases. (Defs.' Mem. Opp. Mot. Ex. A.)

The State now moves for remand for lack of subject matter jurisdiction and untimely filing of the notice of removal.

*LEGAL STANDARD*

District courts of the United States have original subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2000). Generally, the plaintiff can only invoke this federal question jurisdiction by pleading a cause of action created by federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 2366 (2005).

In certain cases, however, federal question

jurisdiction exists even absent a federal cause of action. *Id.* at 2366-67. Federal courts have subject matter jurisdiction over state law claims that " implicate significant federal issues." *Id.* at 2367. Under *Grable,* significant federal issues are implicated when the state law claims (1)" necessarily raise a stated federal issue," (2) which are "actually disputed and substantial," (3) and which "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* In *Grable,* the meaning of a federal tax provision that implicated the government's ability to satisfy its claims from the property of delinquents constituted a significant federal issue sufficient to create federal jurisdiction. *Id.* at 2368. A significant federal issue did not exist, however, where a state law tort claim involved an allegation that a drug company had violated a federal branding law. *Merrell Dow Pharm., Inc. v. Thomson,* 478 U.S. 804 (1986).

*2 When a case involving a federal question is originally filed in state court, the defendants may remove it to federal court. 28 U.S.C. § 1441(b). Removal notices must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...." 28 U.S.C. § 1446(b).

Where removal is not proper, the case must be remanded to state court. *See* 28 U.S.C. § 1447(c) (2000). The removal statue is strictly construed in favor of remand and there is a "strong presumption against removal." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). The defendant "always has the burden of establishing that removal is proper." *Id.*

*DISCUSSION*

The State moves for remand of this case on two grounds: first, that the notice of removal was untimely; second, that the Court lacks subject matter jurisdiction over this case. Although the State's first argument fails, its second argument prevails. This case does not implicate federal issues significant enough for this court to exercise subject

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3191253 (D.Hawai'i)
(Cite as: Slip Copy)

Page 3

matter jurisdiction.

## I. TIMELINESS

To be timely, a notice of removal must be filed " within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...." 28 U.S.C. § 1446(b). A defendant's right to remove is triggered only by formal process, "not by mere receipt of the complaint unattended by any formal service." *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999). On its face, Defendants' removal action is timely. The notice of removal was filed on August 10, 2006, less than thirty days after the first Defendant was formally served on July 21.

Nonetheless, the State argues that by serving it with a deposition notice, Schering Plough and Warrick constructively waived service. The State further argues that this waiver of service started the thirty-day removal period for all Defendants, and that therefore the notice of removal was untimely because it was filed more than thirty days after the first Defendant allegedly waived service.

The State's argument fails for two reasons. First, it is not enough for a defendant to constructively waive service. Under *Murphy Bros.*, a defendant must "agree[ ] to waive service" in order to start the thirty day removal period. 526 U.S. at 348. There was no such agreement to waive service here.

Second, even if one of the Defendants had agreed to waive service, the thirty day removal period would not have commenced. The only United States Court of Appeals to explicitly address the issue since *Murphy Bros.* held that under *Murphy Bros.*, the thirty day removal period only begins after the last defendant is served. *See Marano Enter. of Kansas v. Z-Teca Rests.*, 254 F.3d 753, 757 (8th Cir.2001). The last-served rule has similarly been followed by Ninth Circuit district courts since *Murphy Bros.. See, e.g., Tomlinson Black North Idaho v. Kirk-Hughes*, 2006 WL 1663591 (D. Idaho June 8, 2006). Because the last Defendant had not even

been formally served by August 10, Defendants' notice of removal was timely filed under § 1446(b).

## II. FEDERAL QUESTION JURISDICTION

**\*3** The State also moves for remand on the grounds that the Court lacks subject matter jurisdiction over this case. Here, the State prevails.

Defendants seek to remove this case based on the narrow, but longstanding exception that certain cases implicate federal issues significant enough for federal courts to exercise jurisdiction over them although no federal claims or causes of action are stated. Defendants argue that Hawaii's claim to recover Medicare Part B co-payments on behalf of Hawaii Medicare Part B beneficiaries is just such a case, and that "it requires the resolution of issues of federal law under the Medicare statutes and regulations." (Notice of Removal 7.) In particular, Defendants argue that "[t]he meaning of AWP under the Medicare statute is in dispute and will determine whether the State can succeed on its theory of the case." (Defs.' Mem. Opp. 14.)

Whether the meaning of AWP under the Medicare statute actually does implicates a significant federal issue is governed by *Merrell Dow* and the three-part test of *Grable*. Here, it is not disputed that the state law claims meet the threshold requirement of " necessarily rais[ing] a stated federal issue," *Grable* 125 S.Ct. 2368. What Defendants bear the burden of showing here is (1) that the meaning of AWP in the Medicare statute is "actually disputed and substantial," *id.*, and (2) that this is the type of case that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," *id.* Any doubts will be resolved in favor of remand. *Gaus*, 980 F.2d at 566.

### A. "Actually Disputed and Substantial"

Defendants are unable to meet their burden of showing that the meaning of the Medicare provisions at issue are either actually disputed or substantial enough to create federal jurisdiction.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3191253 (D.Hawai'i)
**(Cite as: Slip Copy)**

First, and most importantly, Defendants fail to show that determining the meaning of AWP is "substantial " under *Grable* and *Merrell Dow*. Defendants argue that because Medicare is "an entirely federal program," the federal courts "have a special responsibility to entertain claims on behalf of Medicare beneficiaries." (Defs.' Mem. Opp. Mot. 17-18.) Additionally, they argue, "inconsistent determinations of what AWP was understood to mean under the Medicare statute in these various cases could create collateral confusion and inconsistencies in the administration of federally supported Medicaid programs." (Defs.Mem.Opp.Mot.18-19.)

Defendants' position receives some support from Judge Saris' recent ruling in *State of Arizona v. Abbot Laboratories, Inc.*, MDL No. 1456, Civ. No. 01-12257-PBS (D.Mass. Oct. 24, 2006). In *State of Arizona*, Judge Saris concluded that the meaning of AWP is substantial because (1) "[t]he government has a strong national interest in prohibiting fraud upon medicare beneficiaries because fraudulent acts threaten Medicare's integrity"; (2) how AWP is interpreted will greatly effect the Medicare litigants in Arizona and also in other states; and, (3) determining the meaning of AWP "directly impacts the viability and effectiveness of the federal Medicare program." MDL No. 1456, Civ. No. 01-12257-PBS, Slip Opinion at 8-9.

**\*4** The State, however, contends that it cannot be the case that mere construction of a federal statute, by itself, is sufficient to create federal jurisdiction. If it were, the State argues, "then any time the interpretation of a federal statute arises in the context of a state law claim, federal jurisdiction would exist." (Pl.'s Reply 5.) Moreover, the State argues, the issue is not substantial because AWP is no longer the standard for reimbursement under Medicare.

The State prevails, Judge Saris' recent ruling notwithstanding. Just like the claims in *Merrell Dow*, these are state law tort claims that rest in part on a federal standard. This is a far different set of facts than in *Grable*, where the ability of the Internal Revenue Service to enforce the tax code through tax liens was at issue. Here, the resolution

of the meaning of AWP will have little effect on the future viability of the Medicare program since the AWP standard has been abandoned. While it may well be the case that the meaning of AWP is a substantial issue for the parties, it is no longer a substantial issue for the federal government.

Moreover, while Congress's failure to create exclusive federal jurisdiction for cases involving improper notice in tax foreclosure actions might well be attributed to oversight, the same cannot be said for the failure to create exclusive federal jurisdiction for violations of the Medicare statute. In other words, if Congress had thought that AWP and other Medicare provisions implicated a substantial federal interest, it could have ensured that only federal courts would hear such cases. It did not.

Second, in addition to failing to show that the meaning of "AWP" is "substantial," Defendants also fail to show that the meaning of AWP is " actually disputed." Defendants argue that the meaning of AWP is disputed because "there is evidence that Congress understood that AWPs did not represent the actual cost providers paid for the drugs...." (Defs.' Mem. Opp. 15.) However, they neither produce evidence to this effect, nor do they even articulate a possible alternative meaning for " average wholesale price." While the meaning of AWP may be nominally disputed by Defendants, they have not shown that it is actually disputed.

This is the same conclusion reached, albeit for slightly different reasons, in *Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc.*, 2005 U.S. Dist. LEXIS 19967 (E.D.Penn.2005) (holding that "[t]he term 'average wholesale price' is not 'actually disputed" because the Commonwealth does not premise its claim on the construction of these words as they appear in the applicable Medicare statute and regulations) and *Texas v. Abbot Laboratories., Inc.* 2005 U.S. dist. LEXIS 42434 (W.D.Tex.2005) (holding that "[i]t is clear that Plaintiffs do not premise their claims on the definition of the term 'Medicare AWP' ... [and so] no court need ascribe any meaning to the term for either party to prevail). Defendants fail to meet their burden of showing that the State's claim involves issues that are actually disputed or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5

Slip Copy

Slip Copy, 2006 WL 3191253 (D.Hawai'i)
**(Cite as: Slip Copy)**

substantial enough for federal jurisdiction to exist, and so the case must be remanded.

### B. Disturbing the Balance

**\*5** Additionally, it may well be the case that taking cases such as this would "disturb the congressionally approved balance of federal and state judicial responsibilities," *Grable* 125 S.Ct. 2368. Unlike in *Grable*, where very few foreclosure cases were likely to implicate a federal interest, here, as in *Merrell Dow*, a substantial number of state tort cases are likely to implicate a federal statute. This might disturb the congressionally approved balance and lead to the clogging of the federal courts.

In fact, several courts addressing this precise issue have determined just that. *See Wisconsin v. Abbott Laboratories,* 390 F.Supp.2d 815 (W.D.Wis.2005); *Minnesota v. Pharmacia Corp.,* 2005 U.S. Dist. LEXIS 27638 (D.Minn.2005). At least two courts, however, have found to the contrary. In one instance, the decision was distinguished from *Wisconsin* (and from *Merrell Dow* ) on the grounds that a federal contract was involved. *See Santa Clara v. Astra, USA, Inc.,* 401 F.Supp.2d 1022, 1030 (N.D.Cal.2005) ("The instant case is also distinct: it involves a federal contract whereas none was at issue in *Wisconsin.* The instant case therefore has a higher quotient of federal interest .... [because this is] the type of task that already falls to federal courts.") Here, as in *Wisconsin* and *Minnesota,* no federal contract is at issue.

The other case to the contrary is *State of Arizona,* MDL No. 1456, Civ. No. 01-12257-PBS, Slip Opinion at 9-11. There, Judge Saris found that " granting federal jurisdiction in the case does not open the door to a horde [of cases]: the horde has already stormed the door." *Id.* While it may be that this particular horde has already stormed the door, the inquiry should rather focus on how many other hordes are gathered in wait on the horizon. Allowing federal jurisdiction here, where only a federal standard is implicated, would likely lead to many other cases in unrelated matters being regularly removed to federal court. Adjudication of

this type of case could well disturb the congressionally approved balance between federal courts and state courts, providing an additional grounds for remand.

### CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS that Plaintiff's Motion for Remand be GRANTED.

D.Hawai'i,2006.
Hawaii v. Abbott Laboratories, Inc.
Slip Copy, 2006 WL 3191253 (D.Hawai'i)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

Slip Copy, 2006 WL 3170553 (M.D.Ala.)
**(Cite as: Slip Copy)**

Alabama        v.        Abbott        Laboratories,
IncM.D.Ala.,2006.Only   the   Westlaw   citation   is
currently available.
United States District Court,M.D.
Alabama,Northern Division.
State of ALABAMA, Plaintiff,
v.
ABBOTT LABORATORIES, INC., et al.,
Defendants.
**Civil Action No. 2:06cv920-MHT.**

Nov. 2, 2006.

Caine O'Rear, III, Windy Cockrell Bitzer, Hand
Arendall, L.L.C., Mobile, AL, Clinton Chadwell
Carter, Jere L. Beasley, Wilson Daniel Miles, III,
Beasley Allen Crown Methvin Portis & Miles PC,
Troy Robin King, Office of the Attorney General,
Montgomery, AL, Roger Lee Bates, Hand Arendall,
LLC, Birmingham, AL, for Plaintiff.
Betsy P. Collins, Leah Pointer, Alston & Bird,
Atlanta, GA, Daniel Edward Reidy, J. Ryan Mitchell
, James R. Daly, Lee Ann Russo, Rachael E. Dehner
, Toni-Ann Citera, Daniel Edward Reidy, Jones
Day, Michael P. Doss, Richard D. Raskin, Sidley
Austin Brown & Wood LLP, Anthony C. Porcelli,
Nada Djordjevic, Robert R. Stauffer, Jenner &
Block LLP, Chicago, IL, George Robert Parker,
Philip Henry Butler, Bradley Arant Rose & White
LLP, Donald Rush Jones, Jr., Attorney at Law, PC,
James H. McLemore, Robert F. Northcutt, James N.
Walter, Jr., William D. Coleman, C. Clay Torbert,
III, Chad W. Bryan, Capell Howard PC, James
Harold Anderson, Beers Anderson Jackson Patty &
Van Heest PC, Charles Nelson Gill, Richard
Hamilton Gill, George Walton Walker, III, Lee Hall
Copeland, Copeland Franco Screws & Gill, Warren
Carroll Matthews, Burr & Forman LLP, F.
Chadwick Morriss, Robert C. (Mike) Brock, Robert
A. Huffaker, Rushton Stakely Johnston & Garrett
PA, Joseph C. Espy, III, Melton Espy & Williams,
PC, Walter Joseph McCorkle, Jr., Balch &

Bingham, Alvin Latham (Peck) Fox, Jr., Maynard
Cooper & Gale, PC, Montgomery, AL, John
Charles Dodds, Kimberly Kaye Heuer, Morgan
Lewis & Bockius LLP, Michael T. Scott, Reed
Smith LLP, Philadelphia, PA, Scott Alan Stempel,
Morgan Lewis & Bockius LLP, John Robert Fleder,
Hyman Phelps & McNamara PC, Carlos Enrique
Provencio, Shook, Hardy & Bacon, LLP, Gregory
M. Petouvis, Jonathan T. Rees, William D.
Nussbaum, Hogan and Hartson, LLP, Edwin John,
Karen Natalie Walker, Kirkland & Ellis LLP, Jason
Drew Wallach, Merle Miller Delancey, Jr.,
Dickstein Shapiro Morin & Oshinsky, LLP, Anna
Bondurant Eley, Carl E. Ross, David D. Fauver,
Emily Noel Glatfelter, Jessica Lynne Medina, Joel
Ernest Richardson, Jonathan Louis Stern, Justin
Sanjeeve Antonipillai, Nancy L. Perkins, Rebecca
Lynne Dubin, Robert S. Litt, Ross S. Goldstein,
Steven Samuel Diamond, Arnold & Porter LLP,
Andrew Lawrence Hurst, Reed Smith LLP,
Geoffrey D. Hobart, Jason R. Litow, Mark H. Lynch
, Ronald G. Dove, Jr., Covington & Burling, T.
Reed Stephens, Elizabeth I. Hack, Sonnenschein
Nath & Rosenthal LLP, James V. Hayes, Steven
Michael Umin, Paul Keith Dueffert, Richard
Melvyn Cooper, Thomas J. Roberts, Williams &
Connolly, John Michael Townsend, Robert Bruce
Funkhouser, Robert Philip Reznick, Hughes
Hubbard & Reed LLP, Graciela Maria Rodriguez,
John D. Shakow, Kevin Richard Sullivan, King &
Spalding LLP, Gregory M. Petouvis, Jonathan T.
Rees, William D. Nussbaum, Hogan And Hartson,
LLP, Washington, DC, Archibald Thomas Reeves,
IV, Edward Sledge Sledge, III, Mcdowell, Knight,
Roedder & Sledge, L.L.C., Jarrod J. White, Sandra
Grisham Robinson, Cabaniss Johnston Gardner
Dumas & O'Neal, William Huger Hardie, Jr.,
Johnstone, Adams, Bailey, Gordon & Harris,
Joseph P. H. Babington, Patrick Conor Finnegan,
Helmsing Leach Herlong Newman Rouse PC,
Mobile, AL, Fred M. (Tripp) Haston, III, Bradley
Arant Rose & White LLP, Christopher Fred Heinss,
Steven F. Casey, Francis Inge Johnstone, Balch &
Bingham, Anthony Aaron Joseph, Maynard Cooper

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PLAINTIFF'S
EXHIBIT 2**

Page 2

Slip Copy

Slip Copy, 2006 WL 3170553 (M.D.Ala.)
(Cite as: Slip Copy)

& Gale PC, Sharon Donaldson Stuart, Thomas William Christian, Christian & Small, LLP, Bruce F. Rogers, Bainbridge Mims Rogers & Smith, Julian Rushton McClees, Sirote & Permutt, P.C., Harlan Irby Prater, IV, Stephen Jackson Rowe, Derrick A. Mills, Stephen Jackson Rowe, Lightfoot Franklin & White LLC, Gary M. London, Joseph William Letzer, Burr & Forman LLP, Gilbert Calvin Steindorff, IV, Haskell Slaughter Young & Rediker, LLC, Lawrence Brown Clark, James Fredrick Barger, Jr., Lisa Wright Borden, Baker Donelson Bearman Caldwell & Berkowitz PC, Robert D. Eckinger, Stephen Ashford Rowe, Adams And Reese LLP, Julia Boaz Cooper, Richard Lee Sharff, Jr., Bradley Arant Rose & White LLP, Laura Howard Peck, William Stancil Starnes, Starnes & Atchison, Lee E. Bains, Jr., Maibeth Jernigan Porter, Maynard, Cooper & Gale, P.C., Birmingham, AL, Adeel A. Mangi, Andrew David Schau, Erik Haas, Patterson Belknap Webb & Tyler LLP, Carlos Manuel Pelayo, D. Scott Wise, Kimberley Denise Harris, Michael Sean Flynn, Davis Polk & Wardwell, Lyndon M. Tretter, Steven M. Edwards, Thomas J. Sweeney, III, Hogan & Hartson LLP, Christopher Palermo, Neil Merkl, Paul F. Doyle, William A. Escobar, Kelley Drye & Warren, LLP, Brian Rafferty, Peter J. Venaglia, Dornbush Schaeffer Strongin & Weinstein, LLP, Jane W. Parver, Mark D. Godler, Samuel Lonergan, Saul P. Morgenstern, Kaye Scholer LLP, Brendan Woodard, John Michael Gallagher, Wayne Alan Cross, White & Case, New York, NY, Jennifer A. Walker, Joseph Harrison Young, Steven Francis Barley, Hogan & Hartson LLP, Kelly Jeanne Davidson, S. Craig Holden, Ober, Kaler, Grimes & Shriver, Baltimore, MD, Courtney A. Clark, James W. Matthews, Katy Ellen Koski, Robert J. Muldoon, Jr., Sherin And Lodgen LLP, Brien T. O'Connor, E. Abim Thomas, Eric Paul Christofferson, Ropes & Gray LLP, Mark D. Seltzer, Mona M. Patel, Sarah Anne Franklin, Holland & Knight LLP, Boston, MA, Joseph George Matye, Michael Lee Koon, Nicola Heskett, Shook, Hardy & Bacon, LLP, Kansas City, MO, Frederick Geroge Herold, Thomas H. Lee, II, Valerie M. Wagner, Dechert LLP, Palo Alto, CA, Jason Robert Watkins, Ball, Ball, Matthews And Novak, P.A., Daphne, AL, David John Burman, Kathleen Murray O'Sullivan, Zoe Philippides, Perkins Coie LLP,

Seattle, WA, Brian David Ledahl, Irell & Manella LLP, Los Angeles, CA, John Barrett Starnes, Sam Berry Blair, Jr., Baker Donelson Bearman Caldwell & Berkowitz PC, Memphis, TN, Lori A. Schechter, Tiffany Cheung, Morrison & Forester, San Francisco, CA, for Defendant.

ORDER

MYRON H. THOMPSON, District Judge.

*1 This litigation is before this court, once again on plaintiff State of **Alabama**'s motion to **remand**. The motion should be granted for a number of reasons, including the following: (1) 31 U.S.C. § 3732(b) appears to be a "supplemental" jurisdictional statute and thus cannot, by itself, be a basis for "removal" jurisdiction, which must rest on "original" jurisdiction. In other words, a removing party cannot assert "supplemental" jurisdiction as a basis for "removal" jurisdiction in one case based on "original" jurisdiction in an entirely different case.FN1 *See Syngeta Crop Prot., Inc. V. Henson*, 537 U.S. 28, 34, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 456 (6th Cir.1996); *see also Darden v. Ford Consumer Fin. Co., Inc.*, 200 F.3d 753, 755 (11th Cir.2000). (2) Because the Massachusetts *qui tam0* lawsuit was not generated in the **Alabama** state-court proceeding, it is not an "order or other paper," 28 U.S.C. § 1446(b). *See Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 254 (5th Cir.1961) FN2; *Morsani v. Major League Baseball*, 79 F.Supp.2d 1331 (N.D.Fla.1999).(3) Because the Massachusetts *qui tam* lawsuit was not a voluntary act of plaintiff State of **Alabama**, 28 U.S.C. § 1446 removal is not appropriate. *See Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir.2000). Finally, although the court does not reach the issue, it has serious concerns that it can even entertain a second removal of this case. *See Harris v. Blue Cross/Blue Shield of Alabama, Inc.*, 951 F.2d 325, 330 (11th Cir.1992) ("[O]ut of respect for the state court and in recognition of principles of comity, ... [t]he action must not ricochet back and forth depending upon the most recent determination of a federal court.").

FN1. Section 3732 provides:
(a) Actions under section 3730.-Any action

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3170553 (M.D.Ala.)
**(Cite as: Slip Copy)**

under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.
"(b) Claims under state law.-The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730."

FN2. In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Accordingly, it is ORDERED that plaintiff State of **Alabama's** motion to **remand** (doc. no. 128) is granted and that this lawsuit is, again, remanded to the Circuit Court of Montgomery County, **Alabama**, for want of subject-matter jurisdiction.

It is further ORDERED that the motion to stay (doc. no. 170) is denied.

It is further ORDERED that all other outstanding motions (other than pro hac vice motions) are left for resolution by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

M.D.Ala.,2006.
Alabama v. Abbott Laboratories, Inc
Slip Copy, 2006 WL 3170553 (M.D.Ala.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.