UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

**ABBOTT LABORATORIES, INC.'S MEMORANDUM IN OPPOSITION
TO THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER
RELATING TO THE DEPOSITION OF GOVERNMENT COUNSEL**

**INTRODUCTION**

On August 3, 2006, this Court asked the United States to prepare an amicus brief on the interpretation of the term "average wholesale price," or "AWP," in Medicare statutes and regulations. *See* Aug. 3, 2006 Hrg. Tr. at 19-20. In particular, the Court asked for the views of the Center for Medicare and Medicaid Services ("CMS") on that question: "[I]t's a statutory issue and they're the agency . . . [s]o I would like to know what CMS's position is." *Id*. at 29-30.

On September 15, 2006, the Department of Justice ("DOJ"), purportedly "on behalf of the Secretary of Health and Human Services," submitted an amicus brief "in response to the Court's request that the Secretary explain his views on the term 'average wholesale price' (AWP), as reflected in the Medicare Act, *see* 42 U.S.C. §§ 1395 *et seq.*, and federal regulations." Brief of the United States as Amicus Curiae ("U.S. Amicus") at 1 (Docket # 3104).

On November 30, 2006, Abbott Laboratories, Inc. ("Abbott") served the United States with a notice to depose "one or more employees of the Department of Health and Human Services ("HHS") who reviewed, approved and/or were consulted regarding the Brief of the

United States as Amicus Curie."  Notice of Deposition (Ex. 1).  The notice specifically sought to depose the witness who reviewed or approved the *factual* assertions made in the brief, including:

- "all factual representations and/or statements regarding how the Secretary and/or the Centers for Medicare and Medicaid Services ("CMS") intended, understood, interpreted or applied the phrase 'average wholesale price (AWP) in federal statutes and regulations'";

- "what the Secretary or CMS understood or believed about average wholesale prices (AWPs) published in Red Book and other national drug listings"; and

- "the Secretary or CMS's understanding of Medicare's policy of paying 'reasonable costs' (Part A services) and 'reasonable charges' (Part B services)." *Id*.

The numerous factual assertions in the amicus brief go to the heart of the issues about which Abbott is appropriately seeking discovery against the Government in this matter.  The representations in the amicus brief purport to describe the intent and knowledge of CMS and/or the Secretary regarding Medicare drug reimbursement.  As the Court knows, this litigation is focused closely on what CMS and the Secretary "believed" about published drug prices and what CMS and the Secretary meant by, or how they interpreted, the terms of statutes and regulations, such as the term "average wholesale price."  Many of the assertions made in the amicus brief are not supported by affidavits from agency personnel, and are inconsistent with evidence and prior statements by agency personnel—including the Secretary of HHS.  Abbott seeks to identify the specific sources and bases for these naked factual assertions, so that it can test the veracity of them in discovery.  Based on the public record, the assertions may not survive close scrutiny.

The Government objected to Abbott's deposition notice on the ground that it seeks to depose Government attorneys and would, therefore, violate the attorney-client privilege and the work product doctrine.  *See* Letter from J. Draycott to R. Cook, N. Merkl, and M. Murphy (12/12/06) (Ex. 2).  Abbott quickly assured the Government that it does not "seek the deposition of HHS counsel or the DOJ" and is not asking for testimony that would reveal any "privileged

communications between HHS counsel or the DOJ and current or former employees of HHS." Letter from D. Torborg to J. Draycott, J. Neal, and A. Martinez (12/13/06) at 2 (Ex. 3). Instead, Abbott explained, it seeks to discover the specific *factual basis* for representations and assertions made in amicus brief, as well as the extent to which non-lawyer agency officials participated in preparing the brief. *See id*.

Notwithstanding Abbott's explicit assurances to the contrary, the Government filed the instant motion for protective order based on the incorrect notion that Abbott's deposition notice seeks to depose government lawyers and is "clearly directed at obtaining information protected by the attorney-client and attorney-work product privileges." U.S.' Mem. of Points and Auth. in Supp. of the U.S.' Mot. for a Prot. Order Relating to the Deposition of Government Counsel ("Gov't Mem.") at 1-2 (Docket # 3541). The Government supported its motion by stating:

> As one would expect, the HHS personnel who fit the criteria in the deposition notice are *attorneys* who work in the Office of General Counsel for the Centers for Medicare and Medicaid Services ("CMS") who have been assisting the Department of Justice ("DOJ") in this litigation.

*Id*. at 1 (emphasis added). The Government's motion ignored the letter from Abbott's counsel disavowing any such intention to depose Government attorneys. And the Government's brief did not refer to language from Abbott's deposition notice, quoted above, making clear Abbott's intention to obtain factual information regarding assertions in the amicus brief.

The Government's motion and memorandum raise a potential problem for the United States: Those filings suggest that the United States' amicus brief, purportedly filed "on behalf of the Secretary" and in response to the Court's request for the views of agency personnel, was prepared *solely by attorneys*. If this is true and the amicus brief was prepared without input from non-lawyer, agency officials having actual firsthand knowledge of the facts represented to the Court, the Government should admit that. That in itself would be useful information.

3

**ARGUMENT**

I. **ABBOTT DOES NOT SEEK PRIVILEGED COMMUNICATIONS OR WORK PRODUCT, AND ABBOTT HAS NOT ASKED TO DEPOSE GOVERNMENT LAWYERS.**

The United States' amicus brief states that it is filed "on behalf of the Secretary of Health and Human Services" and that it "explain[s] *his* views on the term 'average wholesale price' (AWP)" as used in Medicare statutes and regulations. U.S. Amicus at 1 (emphasis added). And the brief was filed in response to a request from this Court asking for *CMS*'s views on the meaning and intent of the term "average wholesale price" as used in Medicare statutes and regulations. *See* Aug. 3, 2006 Hrg. Tr. at 19-20. Accordingly, it would seem to be a reasonable assumption that the amicus brief was prepared in consultation with relevant policy-making officials at CMS or HHS, including, perhaps, past Secretaries of HHS. Indeed, one would normally expect to see affidavits or other evidence attached to the brief to provide a basis for the Government's factual assertions regarding "the Secretary's" views, knowledge, and intentions.

The Government's motion seems to call into question the assumption that the amicus brief was based on such evidence. The Government states that the "HHS employees who 'reviewed, approved, and/or were consulted regarding the Brief of the United States as Amicus Curiae are attorneys who work at the Office of the General Counsel for CMS." Gov't Memo. at 4-5. This suggests the brief was prepared *without* consulting non-lawyer, agency officials with actual firsthand knowledge of information relevant to assertions made in the amicus brief. On the other hand, the Government says in a footnote: "To the extent that CMS attorneys, in turn, conferred with other agency personnel, those communications also are plainly protected by the attorney-client privilege and attorney work-product doctrine." *Id*. at 5 n.1. If that is true, the Government should have little trouble providing a witness who can testify that he or she read the brief before it was filed and confirmed that the factual assertions contained in it were accurate.

4

Contrary to the Government's motion for protective order, Abbott is not seeking to depose DOJ or CMS lawyers, and Abbott does not intend to ask questions that would cause non-lawyer agency personnel to reveal the substance of privileged communications with government lawyers.  Abbott instead seeks discovery into the specific *factual basis* for the assertions made in the United States' amicus brief.  Abbott's notice of deposition is thus entirely proper, as "[t]here is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel."  *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 280-82 (D. Neb. 1989) (holding that "questions asking [30(b)(6) witness] to tell [Plaintiff's] lawyer what facts she was aware of which supported a particular allegation in the answer and counterclaim" were appropriate and did not tend to "elicit the mental impressions of [Defendant's] lawyers").  *See also Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003) (agreeing with *Protective* and holding work-product doctrine did not preclude deposition questions seeking to ascertain the factual bases of denials of third-party defendant in answer to third-party complaint).

The Government claims that "[t]he deposition notice, on its face, seeks testimony regarding the preparation of a legal brief and, therefore, is a direct attempt to obtain information protected by the [attorney-client] privilege and [work product] doctrine."  Gov't Mem. at 4.  The Government also claims that "[o]ther [m]eans [e]xist to [o]btain the [i]nformation" sought by Abbott.  *Id*.  These very arguments were raised and rejected in the analogous case of *U.S. Equal Employment Opportunity Comm'n v. Caesars Entm't, Inc*., 237 F.R.D. 428 (D. Nev. 2006).  There, the defendant argued that "'the very nature of the EEOC's request'" to depose the defendant's corporate representative on the factual information contained in defendants' position statement "'invades attorney work product and compels legal opinions and conclusions' and intrudes upon the attorney-client privilege."  *Id* at 430.  The Court denied the request for a

5

protective order, reaffirming the well-established principles that "[t]he attorney-client privilege does not prevent the disclosure [of] facts communicated to an attorney, and the work product doctrine does not prevent the disclosure of facts communicated by an attorney to a client that the attorney obtained from independent sources." *Id*. at 433 (citing *Upjohn Co. v. U.S.*, 499 U.S. 383, 395-96 (1981); *Hickman v. Taylor*, 329 U.S. 495 (1947)).

The Government has failed to articulate the good cause required for a protective order under Rule 26(c). No "annoyance, embarrassment, oppression, or undue burden or expense" has been shown. *See* Fed. R. Civ. P. 26(c); *U.S. Equal Employment Opportunity Comm'n*, 237 F.R.D. at 432 (Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning") (internal citation omitted); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause [for issuance of a protective order] must be based on a particular factual demonstration of potential harm, not on conclusory statements"). For that reason alone, the Government's motion should be denied.

## II. ABBOTT IT ENTITLED TO DISCOVER THE EXTENT TO WHICH THE PREPARATION OF THE UNITED STATES' AMICUS BRIEF INVOLVED AGENCY PERSONNEL.

The Court's request that the United States prepare an amicus brief providing CMS's views on the meaning of AWP presumably was motivated by a desire to consider CMS's views on the appropriate interpretation of statutes and regulations. *See Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 980-81 (1986). This Court may have considered, and other courts hearing AWP-related litigation (including appellate courts) might eventually consider, the United States' amicus brief as reflecting CMS's informed judgment on the meaning of AWP in Medicare and Medicaid statutes. *See Auer*, 519 U.S. at 461-62 (accepting Secretary of Labor's interpretation of regulation offered for first time in court-requested amicus brief).

What consideration, if any, should be paid to the United States' amicus brief depends in part on which personnel within the Government participated in the submission of the brief.  In particular, courts have "declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question," reasoning that "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988); *Azko Nobel Salt, Inc. v. Fed. Mine Safety and Health Review Comm'n*, 212 F.3d 1301, 1305 (D.C. Cir. 2000) (rejecting Secretary of Labor's "vacillating" interpretations of regulations, commenting that different positions "strongly suggests to us that the Secretary has in fact never grappled with—and thus never exercised her judgment over—the conundrum posed by the regulation's clear ambiguity"); *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1365 n.19 (9th Cir. 1990) ("The litigation arguments of the United States in its amicus brief, which lists an EPA lawyer as 'of counsel,' are not an 'agency interpretation' of CERCLA such as to invoke the customary rule of deference."); *FLRA v. United States Dep't of Treasury*, 884 F.2d 1446, 1455 (D.C. Cir. 1989) (deferring to agency interpretation in brief because "Ms. Horner, the agency head, has explicitly adopted the view of the *amicus* brief.  There is no risk that counsel may have acted as 'mavericks disembodied from the agency that they represent.'") (internal citations omitted); *Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 162 n.4 (D.C. Cir. 1986) ("There is some question . . . whether an interpretative theory put forth only by agency counsel in litigation . . . constitutes an 'agency position'"); *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1177 n.3 (2d Cir. 1997) (holding that "an *amicus curiae* is no more a witness than any other advocate" and refusing to accept agency counsel's "current litigation position" as authoritative).

7

Here, the United States' amicus brief indicates that it was submitted "on behalf of the Secretary of Health and Human Services," thereby suggesting that it represents the considered and informed view of the Secretary of HHS and not merely government lawyers advocating a position in litigation. U.S. Amicus at 1. However, apart from that and other unsupported references—such as what "the Secretary's general policy has been" (*id*. at 1), the "Secretary's reliance" (*id*. at 2), what the Secretary "intended" (*id*. at 13), and what the Secretary "believed" (*id*. at 13, 15)—the Government has provided no evidence to show that these statements or the larger position on the "meaning of AWP" reflect the considered and informed judgment of the Secretary and/or other relevant agency personnel. No affidavit is attached to the amicus brief. Indeed, government lawyers at CMS did not sign the brief, leaving that exclusively to DOJ attorneys.

Abbott understandably wishes to determine the amount of consideration, if any, that should properly be given to the positions taken in the United States' amicus brief. In order to formulate that position, Abbott is entitled to discover the extent to which the positions set forth in the brief actually reflect the considered and informed judgment of policy-makers from CMS or HHS. Abbott's notice of deposition seeks to do just that.

### III.   ABBOTT'S NOTICE OF DEPOSITION IS NOT LIMITED TO "ISSUES THAT HAVE ALREADY BEEN DECIDED BY THE COURT."

The Government contends that Abbott's notice of deposition is "moot" because the Court has made its ruling on the meaning of AWP and the Government's amicus brief did not make "any mention of uncontested facts" and "addressed and argued a pure legal issue." Gov't Mem. at 7. This argument is flawed for several reasons.

*First*, as noted, the Government submitted its brief in response to a request from the Court for CMS's views on the meaning of AWP and the Government purported to submit its

8

brief "on behalf of the Secretary of Health and Human Services." U.S. Amicus at 1. For the reasons discussed above, Abbott is entitled to discover whether, how, and the extent to which the positions taken and the assertions made in the amicus brief reflect the considered and informed judgment of non-lawyers at CMS or HHS.

*Second*, the Government is wrong when it claims that its brief merely "addressed and argued a pure legal issue." Gov't Mem. at 7. Assertions regarding what government officials "believed" or "understood" about published drug prices, what they "meant" by and how they interpreted the term "AWP" in statutes and regulations, and an "intention" to limit "reasonable charges" to drug ingredient costs do not address legal questions. Those representations, some of which are quoted below, assert *facts* that bear directly on issues of continuing importance to this case:

- "[T]he final rule [56 Fed. Reg. 59502 (Nov. 25, 1991)] reflected the Secretary's continued belief, as of 1991, that the wholesale price data published in Red Book and other national drug listings generally represented a comprehensive source and indicia of market prices." U.S. Amicus at 15.

- "[W]ith regard to Part B drug payments, since the beginning of the Medicare program, the Secretary's general policy has been to base payments on estimated acquisition costs consistent with reasonable charge principles." *Id*. at 1.

- "Although both regulations contemplated the Secretary considering published wholesale prices as one source of data, the overall payment scheme reflected an intent to base Medicare payments on an amount reflective of acquisition prices in the marketplace." *Id*. at 12.

- "[T]he final rule continued to reflect the Secretary's intention to limit Part B drug payments to an amount related to supplier acquisition costs." *Id*. at 13.

- "While carriers would, as a practical necessity, refer to Red Book for wholesale pricing data, there is nothing in the regulatory history to suggest that the Secretary intended to be bound by any particular published data. Rather, the published data was a resource to the Secretary in setting the agency's national average wholesale price for payment purposes." *Id*. at 13-14.

- "The Secretary understood that Red Book and other wholesale price guides updated their information monthly, and thus believed that the published wholesale

9

>prices were a source of acquisition costs of *some* physicians and therefore could be used to calculate Part B drug payments." *Id*. at 15.

These statements are not merely legal arguments, particularly when the amicus brief purports to express the "views," "intentions," and "beliefs" of the Secretary of HHS. For example, the contention that the Secretary or CMS believed in 1991 "that the wholesale price data published in Red Book and other national drug listings generally represented a comprehensive source and indicia of market prices" (*id*. at 15) is not a legal argument. The contention is of central importance to this case, where the Government has alleged that CMS reasonably relied on Abbott's published prices as reflecting market prices. *See* Complaint (3/17/06) at ¶ 113. Abbott is entitled to explore the factual basis for such contentions, what is meant by qualifying words like "generally represented," and to challenge those assertions through cross-examination of the individual at CMS or HHS who may have been the source of this and other assertions in the amicus brief. That is a primary purpose of depositions and why they are so important to our adversary legal system.

*Third*, even as to the meaning of AWP in statutes and regulations, the deposition does not seek irrelevant information. Abbott is entitled to develop and preserve evidence for appeal, including whether it was well accepted and widely understood—including by employees of CMS—that the term "average wholesale price" referred to prices published in Red Book and other pricing compendia, whatever their alleged faults.

Furthermore, regardless of this Court's interpretation, what relevant agency officials understood regarding the meaning of "average wholesale price" in applicable statutes and regulations is unquestionably relevant to this case, including but not limited to the issue of causation. Abbott expects the evidence will show that relevant agency officials believed the applicable statutes and regulations required or permitted reimbursement of drugs based on

10

published AWPs—even when those officials well knew those prices exceeded average actual drug ingredient acquisition costs. A legal interpretation of those statutes and regulations—made years after-the-fact—does nothing to change what fully informed Government officials, specifically at CMS, allegedly *would have done* years earlier.

Indeed, Ven-a-Care, the Relator in this case, apparently advanced an "ordinary everyday meaning" interpretation of "average wholesale price" to high-ranking CMS (then HCFA) officials over a decade ago, in September of 1995. *See* R2-041012 – 17, at R2-041014 – 15 (Ex. 4) (in letter forwarded to HCFA Administrator Nancy-Ann Min DeParle, Ven-a-Care states it was "shocked by certain statements made by certain HCFA officials concerning their understanding that the term 'AWP' had never been legislatively or administratively defined by the Federal Government"). Ven-a-Care then implored HCFA "immediately to reimburse for the twenty two drugs in the OIG report by using the Actual Average Wholesale Price determined by the OIG." *Id*. at R2-041015. HCFA failed to implement the recommendation, suggesting it did not share Ven-a-Care's "ordinary everyday meaning" interpretation of "average wholesale price."[1] The Government should not be permitted to rewrite history and then shield evidence that might conflict with today's litigation arguments.

## CONCLUSION

For the foregoing reasons, the United States' Motion for a Protective Order Relating to the Deposition of Government Counsel should be denied.

---

[1] *See also Hearing on President's Fiscal Year 1998 Budget Proposal for Medicare, Medicaid, and Welfare Before the Senate Committee on Finance*, 105th Cong. 265 (1997) (Ex. 5) (in written response to Congress during deliberations of BBA of 1997, HHS Secretary Donna Shalala states that "the *AWP is not the average price actually charged by wholesalers* to their customers," but [r]ather, it is a 'sticker' price set by drug manufacturers and published in several commercial catalogs") (emphasis added).

11

Dated:  January 26, 2007                    Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## **CERTIFICATE OF SERVICE**

      I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER RELATING TO THE DEPOSITION OF GOVERNMENT COUNSEL to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 26th day of January, 2007.

                                            /s/ David S. Torborg
                                            David S. Torborg