# Exhibit 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

------------------------------------ x
    )
IN RE: PHARMACEUTICAL INDUSTRY    )
AVERAGE WHOLESALE PRICE    )  MDL No. 1456
LITIGATION    )  Civil Action No. 01-CV-12257-PBS
    )
    )
------------------------------------ x
    )
    )  Hon. Patti B. Saris
THIS DOCUMENT RELATES TO:    )
State of Montana v. Abbott Labs., Inc., et al.,    )
Civil Action No. CV-02-09-H-DWM    )
    )
    )
------------------------------------ x

## NOTICE OF SUBPOENA
## AD TESTIFICANDUM AND DUCES TECUM

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

Procedure, Defendant AstraZeneca Pharmaceuticals L.P. will serve a subpoena in the

above-captioned action, a copy of which is attached hereto, requiring non-party witness

Great Falls Clinic – Clinic Cancer Care (i) to appear to testify at a deposition on the 9th

day of December, 2005, at 9:00 a.m. at the offices of Goetz Gallik Baldwin & Dolan, 35

North Grand Avenue, Bozeman, Montana 59771, or at such other location, date, and time

as may be agreed upon by counsel, and (ii) to produce documents responsive to the

attached schedule of documents.

      The deposition shall be taken before a notary public or other officer authorized by

law to administer oaths, shall continue from day to day until completed and shall be

recorded by stenographic means.

1

Dated: October 27, 2005
     New York, New York

Respectfully submitted,

DAVIS POLK & WARDWELL

By: _____
     James J. Duffy
     D. Scott Wise
     Kimberley Harris
     450 Lexington Avenue
     New York, New York 10017

     - and -

FOLEY HOAG LLP

     Nicholas C. Theodorou
     Lucy Fowler
     155 Seaport Boulevard
     Boston, MA 02110

     Attorneys for AstraZeneca
     Pharmaceuticals L.P.

2

# DAVIS POLK & WARDWELL

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

212 450 4803

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

October 27, 2005

Re:   **In re Pharmaceutical Industry Average Wholesale Price Litigation**

**Via Hand Delivery**

Great Falls Clinic – Clinic Cancer Care
3000 15th Avenue South
Great Falls, Montana 59405

Dear Sir/Madam:

Please find enclosed a subpoena calling for the production of documents and a deposition witness in this litigation. This subpoena is being served on behalf of all defendants to the Third Amended Master Consolidated Class Action Complaint.

We are committed to working with you in an attempt to define a production of documents that provides defendants with the information required to respond to plaintiffs' claims, while minimizing your compliance burden. While the subpoena calls for the production of a deposition witness on December 9, 2005, we are willing to work with you to schedule a mutually agreeable deposition date.

We look forward to speaking with you to discuss these requests.

Very truly yours,

James J. Duffy

Enclosures
cc:   All Counsel of Record via LexisNexis File & Serve

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## District of Montana

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY : <br> AVERAGE WHOLESALE PRICE LITIGATION : <br> : <br> : <br> : <br> : <br> THIS DOCUMENT RELATES TO: : <br> : <br> State of Montana v. : <br> Abbott Labs., Inc., et al., : <br> Civil Action No. CV-02-09-H-DWM : | **SUBPOENA IN A CIVIL CASE** <br> **MDL NO. 1456** <br><br> **Civil Action No. 01-12257-PBS** <br><br> **Judge Patti B. Saris** <br> **(case pending in D. Mass.)** |

TO:     Great Falls Clinic – Clinic Cancer Care
        3000 15th Avenue South
        Great Falls, Montana 59405

☐  **YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.**

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒  **YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Goetz Gallik Baldwin & Dolan <br> 35 North Grand Avenue <br> Bozeman, Montana 59771 | December 9, 2005 at 9:00 a.m. |

☒  **YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):**
       See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Same as above. | November 17, 2005 at 9:00 a.m. |

☐  **YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.**

| PREMISES | DATE AND TIME |
|---|---|
| | |

        Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) <br><br> Attorney for Defendant AstraZeneca Pharmaceuticals LP | DATE <br><br> October 27, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: James J. Duffy, Davis Polk & Wardwell, 450 Lexington Avenue, New York, NY 10017. (212) 450 4000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
          **DATE**

_____
**SIGNATURE OF SERVER**

_____
**ADDRESS OF SERVER**

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)    fails to allow reasonable time for compliance;
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

990483v1

## SCHEDULE A

(Schedule of Documents to be Produced)

### DEFINITIONS

1.      The term "you" or "your" shall refer to the Great Falls Clinic – Clinic Cancer Care as well as any of its predecessors or successors, any parent, subsidiary, affiliate, segment, or division thereof, any present or former officer, director, employee, partner, agent, representative, or other person acting or purporting to act on its behalf.

2.      The term "Medicaid" shall mean and refer to the Federal program enacted in 1965 under Title XIX of the Social Security Act to use Federal and State funds to pay for the costs of certain medical services and care.

3.      The term "Medicare" shall mean and refer to the Federal program enacted in 1965 under Title XVIII of the Social Security Act to pay for the costs of certain medical services and care.

4.      The term "Medicare Part B" refers to the type of Medicare program that covers the cost of certain prescription drugs, including, without limitation, those administered through injection, infusion, or inhalant.

5.      The terms "Health Care Financing Administration" or "HCFA" and "Centers for Medicare and Medicaid Services" or "CMS" shall mean and refer to the division of the United States Health and Human Services ("HHS") directly responsible for the administration of the Medicare and Medicaid programs.

6.      The term "State of Nevada" shall mean and refer to the Nevada state Medicaid agency and other Nevada state departments and agencies.

7.    The term "State of Montana" shall mean and refer to the Montana state Medicaid agency and other Montana state departments and agencies.

8.    "Average Wholesale Price" or "AWP" refers to the benchmark periodically published by several pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book"), and Medi-Span's Master Drug Database ("Medi-Span").

9.    "Wholesale Acquisition Cost" or "WAC" means the list prices for sales of drugs by manufacturers to wholesalers.

10.    The term "Estimated Acquisition Cost" or "EAC" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

11.    The term "Usual and Customary Charge" or "U&C" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

12.    The term "Subject Drugs" shall mean and refer to the drugs listed in Appendix A to this subpoena.

13.    "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in your possession, custody, or control or known or believed by you to exist.

2

14.     The term "relating to" shall mean, directly or indirectly, in whole or in part: referring to, concerning, connected with, commenting on, discussing, impacting upon, affecting, responding to, explaining, showing, associated with, indicating, describing, analyzing, reflecting, or constituting.

15.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

16.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

17.     The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

## INSTRUCTIONS

1.     Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.     The documents to be produced will be inspected and may be copied at the time specified in the subpoena. You will not be required to surrender original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production, or in the alternative you may deliver the copies to the attorney whose name appears on this subpoena.

3

3.      You are subpoenaed by the attorney whose name appears on this subpoena and unless excused from your duties under the subpoena by the attorney or the Court, you shall respond to this subpoena as directed under penalty of contempt of court.

4.      The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

5.      Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf. A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

6.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document. If the document has been destroyed, state the reason for its destruction.

4

7.      Documents should be produced in the manner in which they are
maintained in the ordinary course of business. All documents that are physically attached
to each other, whether stapled, clipped or otherwise fastened, shall be produced in that
manner. Documents that are segregated from other documents, whether by inclusion in
binders, files, sub-files or by the use of dividers, tabs or any other method, shall be
produced in that form with the corresponding file name or label attached.

8.      If any portion of a document is responsive to a request, the entire
document should be produced.

9.      Provide the following information for each document withheld on the
grounds of privilege:

      (a)    its date;

      (b)    its title;

      (c)    its author;

      (d)    its addressee;

      (e)    the specific privilege under which it is withheld;

      (f)    its general subject matter; and

      (g)    a description of it that you contend is adequate to support your
contention that it is privileged.

10.     If a portion of an otherwise responsive document contains information that
you claim is subject to a claim of privilege, then such portions shall be redacted from the
document, with such redacted material to be described in the same manner as set forth in
the preceding instruction, and the rest of the document shall be produced.

5

11.     These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the end of trial.

12.     To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which you object and each ground for each objection.

## DOCUMENTS TO BE PRODUCED

1.     All documents relating to the definition, meaning, or significance of Average Wholesale Price or AWP, Wholesale Acquisition Cost or WAC, Estimated Acquisition Cost or EAC, or Usual and Customary Charge or U&C.

2.     All documents relating to your billing policies, practices, procedures, and fee schedules for Subject Drugs under Medicare Part B and/or Medicaid.

3.     All documents relating to or discussing the implementation of a "least costly alternative" method for calculating reimbursement for Medicare covered drugs and procedures.

4.     All documents relating to any communications between you and HHS, HCFA, CMS, the State of Nevada, the State of Montana, or any other state or federal agency, regarding the (a) cost, price, or reimbursement of Subject Drugs; (b) Medicaid drug reimbursement rates, practices, and methodologies; or (c) pharmacist dispensing fees.

6

5.     All documents relating to any audits or requests for data relating to cost, price, or reimbursement of Subject Drugs made to you by the State of Nevada, the State of Montana, HHS, HCFA, CMS, or any other state and federal agencies.

6.     All documents relating to any communications between you and private insurers or other third-party payors regarding the cost, price, or reimbursement of Subject Drugs.

7.     All documents describing or relating to the terms of your contracts with private insurers, including but not limited to, any instructions received from private insurers relating to reimbursement of Subject Drugs that are sufficient to reflect the methodology used by private insurers to reimburse you for such drugs.

8.     All documents describing or relating to any instances where you have been reimbursed for physician-administered drugs on a basis other than AWP.

9.     All documents describing or relating to the number and/or percentage of your patients that are covered under Medicare, Medicaid, and/or private insurers.

10.     All documents relating to the amounts you billed to Medicare, Medicaid, and/or private insurers for Subject Drugs.

11.     All documents relating to the amounts that Medicare, Medicaid, and/or private insurers reimbursed you for Subject Drugs, including but not limited to copies of provider agreements or guidelines pursuant to which you were reimbursed.

12.     All documents relating to the amounts and/or percentages of co-payments or co-insurance that you collect from patients in connection with the prescription and administration of Subject Drugs.

7

13. All documents relating to third-party data transmission companies or "switches" that transmit provider claims or related data to Medicare, Medicaid, and/or private third-party payors.

14. All documents relating to any efforts by you to influence federal or state legislation, regulations, or agency practices regarding Medicare Part B and/or Medicaid drug reimbursement rates, practices, or methodologies.

15. All documents relating to communications between you and any trade association, group, or organization regarding Medicare Part B and/or Medicaid drug reimbursement rates, practices, or methodologies.

16. All documents relating to any formal or informal analyses conducted by you or on your behalf relating to the impact on your practice of changes, either proposed or actual, in reimbursement of Subject Drugs under Medicare Part B and/or Medicaid.

8

## APPENDIX A

## SUBJECT DRUGS

Accolate
Accupril
Accuretic
Acetylcyst
Acetylcysteine
Aciphex
Acyclovir
Acyclovir Sodium
Adriamyc PFS
Adriamyc RDF
Adrucil
Advair Disku Mis
Agenerase Cap
Agenerase Sol
Aggrastat
Albuterol
Albuterol Aer
Albuterol Neb
Alkeran Inj
Alkeran Tab
Allegra
Allegra-D
Amaryl
Amerge
A-Methapred (Methotrexate Sodium Succinate)
Amikacin
Amikacin Sul
Amikacin Sulfate
Aminosyn (Amino Acid)
Amphocin
Amphotercin B
Anzemet Inj
Anzemet Tab
Aranesp Inj
Aranesp Sol
Arava
Arimidex
Aristocort A Cre
Aristocort A Oin
Aristocort Inj
Aristocort Tab
Aristospan
Atacand
Atacand HCT
Ativan

## APPENDIX A

### SUBJECT DRUGS

Azmacort
Bebulin VH
Beconase
Biaxin
Bicitra
Blenoxane
Bleomycin Sulfate
Brevibloc Inj
Brevibloc Sol
Buminate
Buspar
Calcijex
Calcimar
Carafate
Cardizem
Cardura
Casodex
Cavapro
Cefizox
Cefizox/D5W
Ceftin Sus
Ceftin Tab
Cefzil Sus
Cefzil Tab
Celebrex
Cellcept Cap
Cellcept IV
Cellcept Sus
Cellcept Tab
Celontin
Cimetidine
Cipro Cystit
Cipro I.V.
Cipro SUS
Cipro Tab
Cipro XR
Cisplatin
Claforan/D5W
Clarinex
Claritin
Claritin-D
Cleocin-T Gel
Cleocin-T Lot

2

## APPENDIX A

### SUBJECT DRUGS

Cleocin-T Pad
Cleocin-T Sol
Clindamycin
Clotrimazole
Clozaril
Combipatch
Combivir
Comtan
Coumadin
Cromolyn Sod Neb
Cyclocort Cre
Cyclocort Lot
Cyclocort Oin
Cytarabine
Cytoxan Inj
Cytoxan Tab
Daraprim
Depakote Cap
Depakote Tab
Depo-Testost
Dexamethasone Acetate
Dexamethasone Sodium Phosphate
Dextrose
Dextrose Inj
Dextrose Inj Fl Cont
Dextrose Inj Nacl
Dextrose Sol LR
Diazepam
Dilantin Cap
Dilantin Chw
Dilantin-125
Diprivan
Diprolene AF
Diprolene Gel
Diprolene Lot
Diprolene Oin
Diprosone
Doxorubicin
Doxorubicin HCL
Doxorubicin Hydrochloride
DTIC-Dome
Duragesic
Elmiron

3

## APPENDIX A

### SUBJECT DRUGS

Elocon Cre
Elocon Lot
Elocon Oin
Enbrel
Entocort EC
Epivir HBV
Epivir Sol
Epivir Tab
Epogen
Erycette
Ery-Tab
Erythromycin
Estraderm
Estradiol
Estrostep
Etopophos
Etoposide
Eulexin
Exelon
Femara
Femhrt
Fentanyl Cit
Ferrlecit
Flexeril
Flonase
Flovent Aer
Flovent Rota Aer
Floxin
Fluorouracil
Fluphenazine
Furosemide
Gamimune N
Gammar P IV
Gammar P IV (Immune Globulin)
Gemfibrozil
Gentamicin Sulfate
Glucophage
Glucovance
Grifulvin V Sus
Grifulvin V Tab
Griseofulvin
Haldol
Haldol Decan

4

## APPENDIX A

## SUBJECT DRUGS

Hep Sod/D5W
Hep Sod/Nacl
Heparin Lock
Imipramine HCL
Imitrex Inj
Imitrex Kit
Imitrex Spr
Imitrex Tab
Infed
Intal
Intal Inh
Integrilin
Intron-A
Ipratropium Sol
Iveegam
Iveegam EN
Kineret
Koate-HP
Kogenate
Kogenate FS
Kytril Inj
Kytril Sol
Kytril Tab
Lamictal Chw
Lamictal Tab
Lamisil Spr
Lamisil Tab
Lamprene
Lanoxin Ped Elx
Lanoxin Tab
Lescol
Lescol XL
Leucovor
Leucovor CA Inj
Leucovor CA Tab
Leucovorin Calcium
Leukeran
Leukine
Levaquin
Lipitor
Lopid
Lorazepam
Lotensin

5

## APPENDIX A

### SUBJECT DRUGS

Lotensin HCT
Lotrel
Lotrisone
Lyphosin
Mepron
Metaproteren
Methotrexate
Methotrexate Inj
Methotrexate Sodium
Miacalcin
Minizide
Mithracin
Mitomycin
Monistat
Monopril
Monopril HCT
Mycelex
Myleran
Nadolol
Nardil
Nasacort
Nasacort AQ
Nasonex
Navelbine
Nebupent Or Pentam
Neosar
Neulasta
Neupogen
Neurontin Cap
Neurontin Sol
Neurontin Tab
Nexium
Nitrostat
Nolvadex
Novatrone
Osmitrol
Osmitrol VFX
Oxaprozin
Pancrease
Pancrease MT
Parafon Fort
Paraplatin
Parlodel

6

## APPENDIX A

### SUBJECT DRUGS

Paxil CR
Paxil Sus
Paxil Tab
Peg-Intron
Pentamidine Isethionate
Perphenazine
Plavix
Polycitra
Polycitra-K Pow
Polycitra-K Sol
Potassium Chloride
Prevacid
Prevacid Cap
Prevacid Gra
Prilosec
Procrit
Prograf Cap
Prograf Inj
Propranolol
Proventil
Pulmicort Inh
Pulmicort Sus
Purinethol
Ranitidine
Rebetol
Recombinate
Regranex
Relenza
Remicade
Reminyl Sol
Reminyl Tab
Renese
Renova
Rescriptor
Retin-A Cre
Retin-A Gel
Retin-A Liq
Retin-A Micr
Retrovir Cap
Retrovir Inj
Retrovir Syp
Retrovir Tab
Rhinocort

7

## APPENDIX A

### SUBJECT DRUGS

Risperdal Sol
Risperdal Tab
Ritalin
Ritalin LA
Rubex
Serevent Aer
Serevent Dis Mis
Seroquel
Serzone
Sodium Chloride
Sodium Chloride Sol
Sod Chloride Inj
Sod Chloride Kit
Solu-Cortef
Solu-Medrol
Spectazole
Sporanox
Starlix
Sulcrafate Tablets
Taxol
Taxotere
Tegretol Chw
Tegretol Sus
Tegretol Tab
Tegretol XR
Temodar
Tequin
Terazol 3 Cre
Terazol 3 Sup
Terazol 7
Testoderm
Theophylline
Thioguanine
Thioplex
Tobra/Nacl
Tobramycin
Tobramycin Sulfate
Tolectin
Tolectin DS
Topamax
Toposar
Toprol XL
Travasol

8

## APPENDIX A

### SUBJECT DRUGS

Travasol w/Dextrose
Trental
Trileptal
Trinalin Rep
Trizivir
Tylenol/COD
Tylox
Ultracet
Ultram
Urispas
Valtrex
Vancocin HCL
Vancocin/Dex
Vancomycin
Vancomycin HCL
Vascor
Ventolin HFA
Vepesid
Verapamil HCL
Videx EC
Vinblastine Sulfate
Vincasar PFS
Viracept Pow
Viracept Tab
Vivelle
Vivelle-DOT
Wellbutrin
Zantac
Zarontin Cap
Zarontin Syp
Zestril
Ziagen
Zithromax Pow
Zithromax Sus
Zithromax Tab
Zofran
Zofran ODT
Zofran Sol
Zofran Tab
Zoladex
Zoloft Con
Zoloft Tab
Zomig

## APPENDIX A

## SUBJECT DRUGS

Zomig ZMT
Zovirax
Zyban
Zyrtec Syp
Zyrtec Tab

10

# Exhibit 2

# DAVIS POLK & WARDWELL

1300 I STREET, N.W.
WASHINGTON, D.C. 20005
——
1600 EL CAMINO REAL
MENLO PARK, CA 94025
——
99 GRESHAM STREET
LONDON EC2V 7NG
——
15, AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

212 450 4803

MESSETUR
60308 FRANKFURT AM MAIN
——
MARQUÉS DE LA ENSENADA, 2
28004 MADRID
——
1-6-1 ROPPONGI
MINATO-KU, TOKYO 108-8033
——
3A CHATER ROAD
HONG KONG

November 9, 2005

Re:  **In re Pharmaceutical Industry Average Wholesale Price Litigation**

**Via Hand Delivery**

Snyders Drug Stores, Inc.
14525 Highway 7
Minnetonka, MN 55345

Dear Sir/Madam:

Please find enclosed a subpoena calling for the production of documents and a deposition witness in the above-referenced litigation. This subpoena is being served on behalf of all defendants to the Third Amended Master Consolidated Class Action Complaint.

We are committed to working with you in an attempt to define a production of documents that provides defendants with the information required to respond to plaintiffs' claims, while minimizing your compliance burden. While the subpoena calls for the production of a deposition witness on December 15, 2005, we are willing to work with you to schedule a mutually agreeable deposition date and location.

We look forward to speaking with you to discuss these requests.

Very truly yours,

James J. Duffy

Enclosures
cc:  All Counsel of Record via LexisNexis File & Serve

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
-------------------------------- x
                                  )
IN RE: PHARMACEUTICAL INDUSTRY    )
AVERAGE WHOLESALE PRICE           )  MDL No. 1456
LITIGATION                        )  Civil Action No. 01-CV-12257-PBS
                                  )
                                  )
-------------------------------- x
                                  )
THIS DOCUMENT RELATES TO:         )  Hon. Patti B. Saris
State of Montana v. Abbott Labs., Inc., et al., )
Civil Action No. CV-02-09-H-DWM; State of )
Nevada v. American Home Products Corp., et al., )
Civil Action No. CV-N-02-0202-ECR )
-------------------------------- x
```

## NOTICE OF SUBPOENA
## AD TESTIFICANDUM AND DUCES TECUM

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

Procedure, Defendant AstraZeneca Pharmaceuticals L.P. will serve a subpoena in the

above-captioned action, a copy of which is attached hereto, requiring non-party witness

Snyders Drug Stores, Inc. (i) to appear to testify at a deposition on the 15th day of

December, 2005, at 9:00 a.m. at the Doubletree Guest Suites Minneapolis, 1101 LaSalle

Ave. Minneapolis, MN 55403, or at such other location, date, and time as may be agreed

upon by counsel, and (ii) to produce documents responsive to the attached schedule of

documents.

The deposition shall be taken before a notary public or other officer authorized by

law to administer oaths, shall continue from day to day until completed and shall be

recorded by stenographic means.

1

Dated: November 9, 2005
       New York, New York

Respectfully submitted,

DAVIS POLK & WARDWELL

By: _____
       James J. Duffy
       D. Scott Wise
       Kimberley Harris
       450 Lexington Avenue
       New York, New York 10017

- and -

FOLEY HOAG LLP

       Nicholas C. Theodorou
       Lucy Fowler
       155 Seaport Boulevard
       Boston, MA 02110

       Attorneys for AstraZeneca
       Pharmaceuticals L.P.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## District of Minnesota

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | : **SUBPOENA IN A CIVIL CASE**<br>:    **MDL NO. 1456**<br>:<br>:    **Civil Action No. 01-12257-PBS**<br>:<br>:    **Judge Patti B. Saris**<br>THIS DOCUMENT RELATES TO:   :    **(case pending in D. Mass.)**<br>:<br>State of Montana v.  Abbott Labs., Inc., et al.,  :<br>Civil Action No. CV-02-09-H-DWM;  :<br>State of Nevada v.  :<br>American Home Products Corp., et al.  :<br>Civil Action No. CV-N-02-0202-ECT  : |

TO:     Snyders Drug Stores, Inc.
        14525 Highway 7
        Minnetonka, MN 55345

☐   **YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.**

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| . | |
| | DATE AND TIME |

☒   **YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.**

| PLACE OF DEPOSITION<br>Doubletree Guest Suites Minneapolis<br>1101 LaSalle Ave.<br>Minneapolis, MN 55403 | DATE AND TIME<br>December 15, 2005 at 9:00 a.m. |
|---|---|

☒   **YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):**
    See Schedule A, attached hereto.

| PLACE<br>Same as above. | DATE AND TIME<br>November 30, 2005 at 9:00 a.m. |
|---|---|

☐   **YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.**

| PREMISES | DATE AND TIME |
|---|---|

    **Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).**

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney for Defendant AstraZeneca Pharmaceuticals LP | DATE<br>November 9, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: James J. Duffy, Davis Polk & Wardwell, 450 Lexington Avenue, New York, NY 10017.  (212) 450 4000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)    fails to allow reasonable time for compliance;
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## **SCHEDULE A**

(Schedule of Documents to be Produced)

## **DEFINITIONS**

1.      The term "you" or "your" shall refer to Snyders Drug Stores, Inc. as well as any of its predecessors or successors, any parent, subsidiary, affiliate, segment, or division thereof, any present or former officer, director, employee, partner, agent, representative, or other person acting or purporting to act on its behalf.

2.      The term "Medicaid" shall mean and refer to the Federal program enacted in 1965 under Title XIX of the Social Security Act to use Federal and State funds to pay for the costs of certain medical services and care.

3.      The term "Medicare" shall mean and refer to the Federal program enacted in 1965 under Title XVIII of the Social Security Act to pay for the costs of certain medical services and care.

4.      The terms "Health Care Financing Administration" or "HCFA" and "Centers for Medicare and Medicaid Services" or "CMS" shall mean and refer to the division of the United States Health and Human Services ("HHS") directly responsible for the administration of the Medicare and Medicaid programs.

5.      The term "State of Montana" shall mean and refer to the Montana state Medicaid agency and other Montana state departments and agencies.

6.      The term "State of Nevada" shall mean and refer to the Nevada state Medicaid agency and other Nevada state departments and agencies.

7.      "Average Wholesale Price" or "AWP" refers to the benchmark periodically published by several pharmaceutical industry compendia, including the Drug

Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory

of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue

Book"), and Medi-Span's Master Drug Database ("Medi-Span").

     8.     "Wholesale Acquisition Cost" or "WAC" means the list prices for sales of

drugs by manufacturers to wholesalers.

     9.     The term "Estimated Acquisition Cost" or "EAC" shall have the meaning

ascribed to that term pursuant to 42 C.F.R. § 447.301.

     10.     The term "Usual and Customary Charge" or "U&C" shall have the

meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

     11.     The term "Subject Drugs" shall mean and refer to the drugs listed in

Appendix A to this subpoena.

     12.     "Document" means the original and each non-identical copy of a

document in any medium, including electronic form, whether or not it was communicated

to any person other than the author, and shall include but not be limited to, writings,

printings, photographs, photocopies, tapes, recordings, video recordings, electronic data,

e-mails, and any other symbolic representations in your possession, custody, or control or

known or believed by you to exist.

     13.     The term "relating to" shall mean, directly or indirectly, in whole or in

part: referring to, concerning, connected with, commenting on, discussing, impacting

upon, affecting, responding to, explaining, showing, associated with, indicating,

describing, analyzing, reflecting, or constituting.

14. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

15. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

16. The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

## INSTRUCTIONS

1. Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2. The documents to be produced will be inspected and may be copied at the time specified in the subpoena. You will not be required to surrender original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production, or in the alternative you may deliver the copies to the attorney whose name appears on this subpoena.

3. You are subpoenaed by the attorney whose name appears on this subpoena and unless excused from your duties under the subpoena by the attorney or the Court, you shall respond to this subpoena as directed under penalty of contempt of court.

4. The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun

3

shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

5.      Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf. A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

6.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document. If the document has been destroyed, state the reason for its destruction.

7.      Documents should be produced in the manner in which they are maintained in the ordinary course of business. All documents that are physically attached to each other, whether stapled, clipped or otherwise fastened, shall be produced in that manner. Documents that are segregated from other documents, whether by inclusion in binders, files, sub-files or by the use of dividers, tabs or any other method, shall be produced in that form with the corresponding file name or label attached.

4

8.    If any portion of a document is responsive to a request, the entire document should be produced.

9.    Provide the following information for each document withheld on the grounds of privilege:

      (a)    its date;

      (b)    its title;

      (c)    its author;

      (d)    its addressee;

      (e)    the specific privilege under which it is withheld;

      (f)    its general subject matter; and

      (g)    a description of it that you contend is adequate to support your contention that it is privileged.

10.    If a portion of an otherwise responsive document contains information that you claim is subject to a claim of privilege, then such portions shall be redacted from the document, with such redacted material to be described in the same manner as set forth in the preceding instruction, and the rest of the document shall be produced.

11.    These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the end of trial.

12.    To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production

5

request, and separately state the part of each request to which you object and each ground for each objection.

## DOCUMENTS TO BE PRODUCED

1.  All documents relating to the definition, meaning, or significance of Average Wholesale Price or AWP, Wholesale Acquisition Cost or WAC, Estimated Acquisition Cost or EAC, or Usual and Customary Charge or U&C.

2.  Documents sufficient to show the prices at which your Nevada and Montana pharmacy branches purchased Subject Drugs, whether from manufacturers, wholesalers, or other intermediaries, and the methodologies used to determine such prices.

3.  Documents sufficient to show the amounts your Nevada and Montana pharmacy branches charged and received for dispensing Subject Drugs, including but not limited to co-payments, coinsurance, ingredient costs, and dispensing, administration or servicing fees, and the methodologies used to determine such amounts.

4.  Documents sufficient to identify all persons involved in negotiation of contractual relationships between your Nevada and Montana pharmacy branches and drug manufacturers, wholesalers, other suppliers of drugs, third-party payors, pharmacy benefit managers ("PBMs"), government payors, third-party administrators, benefit consultants, or independent practice associations relating to Subject Drugs.

5.  A representative sample of contracts between your Nevada and Montana pharmacy branches and drug manufacturers, wholesalers, other suppliers of drugs, third-party payors, pharmacy benefit managers ("PBMs"), government payors, third-party

6

administrators, benefit consultants, or independent practice associations relating to Subject Drugs.

6.      All documents relating to your reliance on or use of drug pricing information published by any publisher in determining the prices charged for Subject Drugs.

7.      All documents relating to drug reimbursement rates, practices, methodologies, or pharmacist dispensing fees under state Medicaid plans, including but not limited to those of Nevada and Montana.

8.      All documents relating to the amounts your Nevada and Montana pharmacy branches billed to the State Nevada, State of Montana, or Medicare for Subject Drugs.

9.      All documents relating to the amounts that the State of Nevada, State of Montana, or Medicare reimbursed your Nevada and Montana pharmacy branches for Subject Drugs.

10.     All documents sufficient to show your Nevada and Montana pharmacy branches' revenue and net income derived from the sale or dispensing of Subject Drugs, by source (e.g., revenue from pharmaceutical sales, dispensing fees, etc.).

11.     All documents relating to your Nevada and Montana pharmacy branches' actual dispensing costs.

12.     All documents relating to third-party data transmission companies or "switches" that transmit Nevada or Montana claims, or related data, to the State of Nevada, State of Montana, Medicare, and/or private third-party payors.

7

13.    All documents relating to any communications between you and HHS, HCFA, CMS, other state and federal agencies, the State of Nevada, or the State of Montana regarding:

(a)    the cost, price, or reimbursement of Subject Drugs;

(b)    Medicaid drug reimbursement rates, practices, methodologies, or pharmacist dispensing fees, including but not limited to the use of AWP as a reimbursement benchmark;

(c)    changes to the Nevada or Montana state Medicaid plans, including but not limited to changes concerning pharmacist dispensing fees or reimbursement rates;

(d)    establishment of or changes to a Nevada or Montana state Medicaid preferred drug list or maximum allowable cost ("MAC") list;

(e)    the consideration or implementation of any cost-saving measures to reduce state Medicaid prescription drug expenditures.

14.    All documents relating to any efforts by you to influence state or federal legislation, regulations, or agency practices regarding: (a) the cost, price, or reimbursement of Subject Drugs; (b) Medicaid drug reimbursement rates, practices, and methodologies; or (c) pharmacist dispensing fees.

15.    All documents relating to any audits or requests for data concerning the cost, price, or reimbursement of Subject Drugs made to you by the State of Nevada, State of Montana, HHS, HCFA, CMS, or other state and federal agencies.

8

# APPENDIX A

## SUBJECT DRUGS

Accolate
Accupril
Accuretic
Acetylcyst
Acetylcysteine
Aciphex
Acyclovir
Acyclovir Sodium
Adriamyc PFS
Adriamyc RDF
Adrucil
Advair Disku Mis
Agenerase Cap
Agenerase Sol
Aggrastat
Albuterol
Albuterol Aer
Albuterol Neb
Alkeran Inj
Alkeran Tab
Allegra
Allegra-D
Amaryl
Amerge
A-Methapred (Methotrexate Sodium Succinate)
Amikacin
Amikacin Sul
Amikacin Sulfate
Aminosyn (Amino Acid)
Amphocin
Amphotercin B
Anzemet Inj
Anzemet Tab
Aranesp Inj
Aranesp Sol
Arava
Arimidex
Aristocort A Cre
Aristocort A Oin
Aristocort Inj
Aristocort Tab
Aristospan
Atacand
Atacand HCT
Ativan

## APPENDIX A

## SUBJECT DRUGS

Azmacort
Bebulin VH
Beconase
Biaxin
Bicitra
Blenoxane
Bleomycin Sulfate
Brevibloc Inj
Brevibloc Sol
Buminate
Buspar
Calcijex
Calcimar
Carafate
Cardizem
Cardura
Casodex
Cavapro
Cefizox
Cefizox/D5W
Ceftin Sus
Ceftin Tab
Cefzil Sus
Cefzil Tab
Celebrex
Cellcept Cap
Cellcept IV
Cellcept Sus
Cellcept Tab
Celontin
Cimetidine
Cipro Cystit
Cipro I.V.
Cipro SUS
Cipro Tab
Cipro XR
Cisplatin
Claforan/D5W
Clarinex
Claritin
Claritin-D
Cleocin-T Gel
Cleocin-T Lot

2

## APPENDIX A

### SUBJECT DRUGS

Cleocin-T Pad
Cleocin-T Sol
Clindamycin
Clotrimazole
Clozaril
Combipatch
Combivir
Comtan
Coumadin
Cromolyn Sod Neb
Cyclocort Cre
Cyclocort Lot
Cyclocort Oin
Cytarabine
Cytoxan Inj
Cytoxan Tab
Daraprim
Depakote Cap
Depakote Tab
Depo-Testost
Dexamethasone Acetate
Dexamethasone Sodium Phosphate
Dextrose
Dextrose Inj
Dextrose Inj Fl Cont
Dextrose Inj Nacl
Dextrose Sol LR
Diazepam
Dilantin Cap
Dilantin Chw
Dilantin-125
Diprivan
Diprolene AF
Diprolene Gel
Diprolene Lot
Diprolene Oin
Diprosone
Doxorubicin
Doxorubicin HCL
Doxorubicin Hydrochloride
DTIC-Dome
Duragesic
Elmiron

3

## APPENDIX A

## SUBJECT DRUGS

Elocon Cre
Elocon Lot
Elocon Oin
Enbrel
Entocort EC
Epivir HBV
Epivir Sol
Epivir Tab
Epogen
Erycette
Ery-Tab
Erythromycin
Estraderm
Estradiol
Estrostep
Etopophos
Etoposide
Eulexin
Exelon
Femara
Femhrt
Fentanyl Cit
Ferrlecit
Flexeril
Flonase
Flovent Aer
Flovent Rota Aer
Floxin
Fluorouracil
Fluphenazine
Furosemide
Gamimune N
Gammar P IV
Gammar P IV (Immune Globulin)
Gemfibrozil
Gentamicin Sulfate
Glucophage
Glucovance
Grifulvin V Sus
Grifulvin V Tab
Griseofulvin
Haldol
Haldol Decan

4

## APPENDIX A

### SUBJECT DRUGS

Hep Sod/D5W
Hep Sod/Nacl
Heparin Lock
Imipramine HCL
Imitrex Inj
Imitrex Kit
Imitrex Spr
Imitrex Tab
Infed
Intal
Intal Inh
Integrilin
Intron-A
Ipratropium Sol
Iveegam
Iveegam EN
Kineret
Koate-HP
Kogenate
Kogenate FS
Kytril Inj
Kytril Sol
Kytril Tab
Lamictal Chw
Lamictal Tab
Lamisil Spr
Lamisil Tab
Lamprene
Lanoxin Ped Elx
Lanoxin Tab
Lescol
Lescol XL
Leucovor
Leucovor CA Inj
Leucovor CA Tab
Leucovorin Calcium
Leukeran
Leukine
Levaquin
Lipitor
Lopid
Lorazepam
Lotensin

5

## APPENDIX A

### SUBJECT DRUGS

Lotensin HCT
Lotrel
Lotrisone
Lyphosin
Mepron
Metaproteren
Methotrexate
Methotrexate Inj
Methotrexate Sodium
Miacalcin
Minizide
Mithracin
Mitomycin
Monistat
Monopril
Monopril HCT
Mycelex
Myleran
Nadolol
Nardil
Nasacort
Nasacort AQ
Nasonex
Navelbine
Nebupent Or Pentam
Neosar
Neulasta
Neupogen
Neurontin Cap
Neurontin Sol
Neurontin Tab
Nexium
Nitrostat
Nolvadex
Novatrone
Osmitrol
Osmitrol VFX
Oxaprozin
Pancrease
Pancrease MT
Parafon Fort
Paraplatin
Parlodel

6

# APPENDIX A

## SUBJECT DRUGS

Paxil CR
Paxil Sus
Paxil Tab
Peg-Intron
Pentamidine Isethionate
Perphenazine
Plavix
Polycitra
Polycitra-K Pow
Polycitra-K Sol
Potassium Chloride
Prevacid
Prevacid Cap
Prevacid Gra
Prilosec
Procrit
Prograf Cap
Prograf Inj
Propranolol
Proventil
Pulmicort Inh
Pulmicort Sus
Purinethol
Ranitidine
Rebetol
Recombinate
Regranex
Relenza
Remicade
Reminyl Sol
Reminyl Tab
Renese
Renova
Rescriptor
Retin-A Cre
Retin-A Gel
Retin-A Liq
Retin-A Micr
Retrovir Cap
Retrovir Inj
Retrovir Syp
Retrovir Tab
Rhinocort

7

## APPENDIX A

### SUBJECT DRUGS

Risperdal Sol
Risperdal Tab
Ritalin
Ritalin LA
Rubex
Serevent Aer
Serevent Dis Mis
Seroquel
Serzone
Sodium Chloride
Sodium Chloride Sol
Sod Chloride Inj
Sod Chloride Kit
Solu-Cortef
Solu-Medrol
Spectazole
Sporanox
Starlix
Sulcrafate Tablets
Taxol
Taxotere
Tegretol Chw
Tegretol Sus
Tegretol Tab
Tegretol XR
Temodar
Tequin
Terazol 3 Cre
Terazol 3 Sup
Terazol 7
Testoderm
Theophylline
Thioguanine
Thioplex
Tobra/Nacl
Tobramycin
Tobramycin Sulfate
Tolectin
Tolectin DS
Topamax
Toposar
Toprol XL
Travasol

8

## APPENDIX A

### SUBJECT DRUGS

Travasol w/Dextrose
Trental
Trileptal
Trinalin Rep
Trizivir
Tylenol/COD
Tylox
Ultracet
Ultram
Urispas
Valtrex
Vancocin HCL
Vancocin/Dex
Vancomycin
Vancomycin HCL
Vascor
Ventolin HFA
Vepesid
Verapamil HCL
Videx EC
Vinblastine Sulfate
Vincasar PFS
Viracept Pow
Viracept Tab
Vivelle
Vivelle-DOT
Wellbutrin
Zantac
Zarontin Cap
Zarontin Syp
Zestril
Ziagen
Zithromax Pow
Zithromax Sus
Zithromax Tab
Zofran
Zofran ODT
Zofran Sol
Zofran Tab
Zoladex
Zoloft Con
Zoloft Tab
Zomig

9

## APPENDIX A

### SUBJECT DRUGS

Zomig ZMT
Zovirax
Zyban
Zyrtec Syp
Zyrtec Tab

10

## SCHEDULE B

## AREAS OF INQUIRY FOR DEPOSITION

1.      Your organizational structure.

2.      The prices you pay for the purchasing of Subject Drugs and the bases on which you agree to those prices.

3.      The reimbursement you receive for the sale or dispensing of Subject Drugs and the bases on which you agree to such reimbursement.

4.      Your revenue and net income derived from the sale or dispensing of Subject Drugs.

5.      The policies, procedures, and systems you use to submit claims to, and receive reimbursement from, the State of Nevada, the State of Montana, Medicare, and/or private third-party payors for the sale or dispensing of Subject Drugs.

6.      Negotiation of contractual relationships between you and drug manufacturers, wholesalers, other suppliers of drugs, third-party payors, pharmacy benefit managers ("PBMs"), government payors, third-party administrators, benefit consultants, or independent practice associations relating to Subject Drugs.

7.      Communications between you and HHS, HCFA, CMS, other state and federal agencies, the State of Nevada, or the State of Montana regarding:

      (a)      the cost, price, or reimbursement of Subject Drugs;

      (b)      Medicaid drug reimbursement rates, practices, methodologies, or pharmacist dispensing fees, including but not limited to, the use of AWP as a reimbursement benchmark;

      (c)     changes to the Nevada or Montana state Medicaid plans, including but not limited to, changes concerning pharmacist dispensing fees or reimbursement rates;

      (d)     establishment of or changes to a Nevada or Montana state Medicaid preferred drug list or maximum allowable cost ("MAC") list;

      (e)     the consideration or implementation of any cost-saving measures to reduce state Medicaid prescription drug expenditures.

    8.     Any audits or requests for data concerning the cost, price, or reimbursement of Subject Drugs made to you by the State of Nevada, State of Montana, HHS, HCFA, CMS, or other state and federal agencies.

    9.     Any efforts by you to influence state or federal legislation, regulations, or agency practices regarding:

      (a)     the cost, price, or reimbursement of Subject Drugs;

      (b)     Medicaid drug reimbursement rates, practices, and methodologies; or pharmacist dispensing fees.

    10.    All efforts made by you or on your behalf to identify and produce documents pursuant to this Subpoena.

    11.    Your document retention or destruction policies and practices.

2

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CITIZENS FOR CONSUME, et al          .      CIVIL ACTION NO. 01-12257-PBS
    Plaintiffs                        .
                              .
        V.                               .      BOSTON, MASSACHUSETTS
                              .      OCTOBER 23, 2006
ABBOTT LABORATORIES, et al          .
    Defendants                        .
.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the plaintiffs:          Jennifer Connolly, Esquire
                             Wexler Toriseva Wallace LLP
                             One North LaSalle Street, Suite 2000
                             Chicago, IL 60602
                             312-346-2222

For Montana:                 Thomas Sobol, Esquire
                             Hagens Berman Sobol Shapiro LLP
                             One Main Street
                             4th Floor
                             Cambridge, MA 02142
                             617-482-3700

For Amgen:                   Joseph Young, Esquire
                             Hogan & Hartson, LLP
                             111 South Calvert Street
                             Suite 1600
                             Baltimore, MD 21202
                             410-659-2775

                           Frank Libby, Esquire
                           Kelly Libby & Hoopes, PC
                           175 Federal Street
                           Boston, MA 02110
                           617-338-9300

1  consideration.  But they didn't even keep those two years of

2  documents with respect to my client.  So it's not enough for

3  to establish what a document says.  It's what that document

4  could do.  That document could show that somebody read it.

5  They had that information.  They considered it, and they made

6  decisions and they communicated in ways in which I'm never

7  going to know.  These fact admissions try to restore us back to

8  the place we are.  I would submit that this Court should enter

9  them.  Thank you.

10       THE COURT:  All right.  I'll take the matter under

11  advisement.  This is to be done by report and recommendation.

12       All right.  Moving on, we have 2966, which is

13  Nevada's motion for a protective order.

14       MR. SOBOL:  That's on the MGM, Your Honor?

15       THE COURT:  It is.

16       MR. SOBOL:  Your Honor, this motion relates to a

17  deposition that the defendants are attempting to take of a

18  non-party to the litigation after the time that the discovery

19  period was closed in the end of March of 2006 because it was

20  late and after March of--

21       THE COURT:  And it was noticed after the close?

22       MR. SOBOL:  There was notice prior to it, the close

23  of discovery--

24       THE COURT:  Right.

25       MR. SOBOL:  --but it was not concluded.  It wasn't

1   undertaken and then there was a series of efforts, we

2   learned I think sometime in, hold on a moment, in May of 2000,

3   excuse me, yeah, in May of this year we learned that there are

4   documents that had been produced by MGM to the defendants and

5   then there was a series of communications by the defendants

6   regarding an effort to get authenticity of the documents as

7   well as acknowledgements by us regarding admissibility, but we

8   weren't in a position to be able to say whether they were

9   authentic, whether they were admissible because it's a non-

10  party.  It's not as if it's the state documents, that kind of

11  thing, and as a result because it was after the fact, we said

12  it was after the fact, you know, the time period is gone.

13          THE COURT:  But it was noticed--

14          MR. SOBOL:  It was noticed, it was noticed prior to.

15  They didn't--

16          THE COURT:  And what was the delay?  What was the

17  sequence of the delay?  I've read so much I--

18          MR. SOBOL:  Um, the notices, the first subpoena was

19  issued in November.  There was a second subpoena issued in

20  January.  The time period for discovery lapsed March 31st.  We

21  then learned in May that documents had been produced by MGM to

22  the defendants.  This is now whatever, two, three months after

23  the discovery period, so now getting their documents, and it

24  was after that period of the time that the defendants wanted to

25  take a deposition of MGM, and although the deposition notice to

1    MGM now, a new notice to MGM now for their deposition is,

2    you know, a general, provides a variety of different topics i

3    fairness to, you know, my colleagues, I think that they've

4    indicated that well, no, now what they want to do is just be

5    able to deal with issues of authenticity and admissibility.  So

6    because it was after the fact, because the documents weren't

7    produced until after the fact discovery, the following

8    deposition notice because they didn't have these authenticated

9    or, you know, admissible, is all after the fact.

10             THE COURT:  Why shouldn't I allow this motion?

11             MR. LONERGAN:  Good afternoon, Your Honor, my name is

12   Sam Lonergan.  I'm an attorney with Kaye Scholer and I

13   represent Novartis Pharmaceuticals Corporation.  I'm here on

14   behalf of defendants to argue that the defendants should be

15   permitted to go forward with depositions of MGM Mirage, Great

16   Falls Clinic, Schneider's Drugs and Walgreens.  With respect to

17   all of these non-parties, defendants served subpoenas on them--

18             THE COURT:  Is that correct?  I see you bracing?

19             MR. SOBOL:  Well, and I'm going to ruffle through the

20   papers, the only motion that I know or the only, the only

21   motion that's on today, Your Honor, I'll put it that way, is

22   our motion--

23             THE COURT:  As to MGM.

24             MR. SOBOL:  --is with respect to MGM.  Okay?  Now,

25   I'm only dealing with the motions that are on today.  If there

1    is--

2                THE COURT:  Exactly.

3                MR. SOBOL:  --motion that relates to other parties,

4    I'm not aware of it.

5                THE COURT:  Do you have a motion that relates to the

6    others?

7                MR. LONERGAN:  I do not, Your Honor.  I was under the

8    impression that plaintiff's motion on page two relates to all

9    remaining non-party depositions, the first full paragraph on

10   page two.

11               THE COURT:  Well, I think this is pretty specific to

12   MGM.  I'll take it only as to MGM.

13               MR. LONERGAN:  Okay.  Well, with respect to MGM,

14   defendants served subpoenas for documents and depositions

15   during the discovery period.  The return date on the subpoenas

16   was prior to the close of discovery.  MGM did not produce, did

17   not complete its document production until after the close of

18   discovery.  This puts us in a position of needing to

19   authenticate the documents for admissibility purposes.  We went

20   to the plaintiffs and asked them if they would be willing to

21   stipulate as to the authenticity and admissibility of certain

22   of the documents that had been produced by MGM.  Plaintiffs

23   ultimately rejected our offer and now we're left in a position

24   of needing to take these depositions in order to authenticate

25   the documents.

1          THE COURT:  Are you willing to authenticate the

2    documents now?

3          MR. SOBOL:  Most of the documents can be

4    authenticated.  My understanding is there's one document that's

5    handwritten that we're not in a position even to agree about

6    its authenticity or not.  Issues of admissibility we're not

7    aware of and, frankly, I think the parties would need to go

8    through a deposition, although it's late to be able to deal

9    with issues of admissibility, which is why were pressing the

10   time period because they defendants had known for a couple of

11   months about trying to get these kinds of non-party--

12         THE COURT:  Is this one document critical to either

13   side?

14         MR. LONERGAN:  I'm not entirely sure what one

15   document plaintiff's counsel is referring to.  If he's

16   referring to--

17         THE COURT:  Well, he'll tell you.

18         MR. LONERGAN:  --a list of data, I don't think it's a

19   handwritten document, but we had already offered to plaintiffs

20   to remove that from the stipulation, and they still rejected

21   our offer so I'm not sure if that's what he's talking about.

22         THE COURT:  Well, let's see if we can work this out.

23   What is the one document?  Can you--

24         MR. SOBOL:  It may well be the list of data so, and

25   again--

1        THE COURT:  Well, it is or it isn't.  Take a

2   moment, look at your papers.

3        MR. SOBOL:  Okay.

4   (Pause)

5        MR. SOBOL:  Your Honor, I don't think we're going to

6   have an issue on authenticity.  Again, my recollection of this

7   is that the major issues weren't the admissibility.  In terms

8   of what purposes the documents were used for, whether or not

9   they're regular course, that was particularly the issue

10  regarding the list of data.  It wasn't clear to us what the

11  time period was for the data and that kind of thing.  So I

12  think the issues would go more to admissibility anyway

13  regarding whether or not it's an accurate photocopy of the

14  things that came out of MGM.

15       THE COURT:  Well, is there any possibility of a

16  stipulation here?

17       MR. SOBOL:  As to authenticity, yes.  As to

18  admissibility, the reason we pressed the motion was because

19  you'd have to actually do a deposition to be able to understand

20  the documents and understand for what purposes they were being

21  used for, that kind of thing.  That's why we pressed the time

22  period.  Many of these things are not self evident in terms of

23  what--

24       THE COURT:  Do you have anything else to say?

25       MR. LONERGAN:  Your Honor, the only thing that I have

1   to say is all of the cases that plaintiff's cite for the

2   proposition that defendants should not be allowed to go forwa

3   with this deposition are distinguishable on the grounds that

4   they all deal with subpoenas that were either served after the

5   close of discovery in those cases or subpoenas that had return

6   dates that were after the close of discovery.  The MGM subpoena

7   does not present this issue.  The subpoena was served during

8   discovery.  The return date was prior to the disclose of

9   discovery.  We simply had to deal with the fact that the non-

10  party produced documents after the close of discovery.

11          Additionally, I just want to point out that

12  plaintiffs are being somewhat hypocritical in their attempt to

13  enforce case management order number 23.  Plaintiff served

14  30(b)(6) notices on all defendants on March 2nd, 2006 and

15  there's been multiple instances where plaintiffs have taken

16  depositions of defendants after the March 31 discovery cutoff

17  date.  Additionally, case management order number 23 also did

18  more than set a March 31st--

19          THE COURT:  Okay.  You can have your deposition.

20          MR. LONERGAN:  Thank you, Your Honor.

21          THE COURT:  Motion denied.

22          3105, United States.

23          MS. BROOKER:  Good afternoon, Your Honor.

24          THE COURT:  Good afternoon.

25          MS. BROOKER: Rene Brooker on behalf of the United

# Exhibit 4

## Jeniphr Breckenridge

**From:**   Jeniphr Breckenridge

**Sent:**   Thursday, December 14, 2006 12:55 PM

**To:**   'Skibell, Reid'

**Cc:**   Tim Terry

**Subject:** RE: Document Authentication

Reid. Sam Lonergan approached us with a very specific proposal regarding documents produced by MGM Mirage after the Court ordered the deposition to go forward. I do not recall if the Sndyer's and Great Falls Clinic depositions were included in the motions - or if those depositions were ever even noticed. If they were, we would be happy to consider a proposal similar to the one submitted with respect to the MGM Mirage documents. This would be include specific documents defendants (by document number if available or by providing copies if the documents are not numbered ) seek to have the stipulation cover and proposed language for the stipulation.

We look forward to hearing from you.

Jeniphr

**Jeniphr Breckenridge**
**Hagens Berman Sobol Shapiro LLP**
**1301 Fifth Avenue; Suite 2900**
**Seattle, WA  98101**
**206.623.7292**
**206.623.0594 (fax)**

---

**From:** Skibell, Reid [mailto:reid.skibell@dpw.com]
**Sent:** Thursday, December 14, 2006 11:33 AM
**To:** Jeniphr Breckenridge
**Cc:** Duffy, James J.
**Subject:** Document Authentication

Dear Jeniphr,

I understand from Sam Lonergan that you were able to agree to a document authentication stipulation with regards to documents produced by MGM Mirage. We would be interested in a similar stipulation for the documents that Sam has previously referenced that were produced by Snyder's and the Great Falls Clinic. Is that something to which you would be open, or in the alternative, can you contact me and we can discuss what dates might work for both of us to conduct depositions for the purpose of authenticating these documents?

Regards,

Reid

Reid Skibell
Davis Polk & Wardwell
450 Lexington Ave.
NY, NY 10017
(212)450-4634

_____ Confidentiality Note: This e-mail is intended only for the person or

entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please notify the sender immediately and destroy the original message and all copies.

---

# Exhibit 5

## Jeniphr Breckenridge

| | |
|---|---|
| **From:** | Jeniphr Breckenridge |
| **Sent:** | Tuesday, January 09, 2007 9:16 AM |
| **To:** | 'Skibell, Reid' |
| **Cc:** | Tim Terry; Duffy, James J.; Carrie Flexer; 'Bovingdon, Ali' |
| **Subject:** | Great Falls Clinic and Snyders Drug Store, Inc. Document Authentication |

Reid. We have now had an opportunity to review the Great Falls Clinic and Snyders Drug Store subpoenas and the documents in question. We have located a subpoena dated October 27, 2005 for Great Fall Clinic - Clinic Cancer Care and a subpoena dated November 9, 2005 for Snyders Drug Stores, Inc. We have no record of any deposition notices for these entities beyond the subpoenas or any correspondence related to the depositions. This is a different set of facts than presented by the MGM Mirage and MMCAP depositions, which were noticed, giving the States an opportunity to move for protection. Unlike the MGM Mirage and MMCAP scenarios, we do not see that defendants have made any effort to take these depositions within a reasonable timeframe. Instead, it appears that defendants waited more than a year after issuing the subpoenas to raise the issue. Magistrate Bowler's ruling was limited to the MGM Mirage deposition. Oct. 23, 2006 Transcript at 89. Defendants have foregone their right to take these depositions.

As an additional point, our review of the documents confirms that even if we were able to agree to the authenticity of some of the documents, we could not agree to their admissibility of most of them. Many of the Snyders documents contain data from unknown sources.

If defendants have information that you believe contradicts the facts above, please advise. Otherwise, we cannot agree to a stipulation or additional depositions more than a year after subpoenas were issued.

Jeniphr Breckenridge
Hagens Berman Sobol Shapiro LLP
206.224.9325

---

**From:** Skibell, Reid [mailto:reid.skibell@dpw.com]
**Sent:** Tuesday, January 09, 2007 7:53 AM
**To:** Jeniphr Breckenridge
**Cc:** Tim Terry; Duffy, James J.
**Subject:** RE: Document Authentication

Jeniphr,

Attached are the documents in question, and I can confirm that 1380 is the last document produced by Snyder's.

Regards,

Reid

Reid Skibell
Davis Polk & Wardwell
450 Lexington Ave.
NY, NY 10017
(212)450-4634

_____ Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise

protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please notify the sender immediately and destroy the original message and all copies.

---

**From:** Jeniphr Breckenridge [mailto:Jeniphr@hbsslaw.com]
**Sent:** Monday, January 08, 2007 5:48 PM
**To:** Skibell, Reid
**Cc:** Tim Terry; Duffy, James J.
**Subject:** RE: Document Authentication

Reid.  We are reviewing the documents and defendants' request.  In doing so, we notice that we are missing Snyder documents numbered 1376, 1377, 1378 and 1379.  Although you have not asked us to enter a stipulation with respect to these pages, we would like our copy of the production to be complete and to put document number 1380, in which defendants are interested,  in context.  Further, 1380 is the last Snyder's document we received.  Please confirm that 1380 is the last page of the production.

Thank you.

Jeniphr Breckenridge
Hagens Berman Sobol Shapiro LLP
206.224.9325

---

**From:** Skibell, Reid [mailto:reid.skibell@dpw.com]
**Sent:** Monday, January 08, 2007 8:15 AM
**To:** Jeniphr Breckenridge
**Cc:** Tim Terry; Duffy, James J.
**Subject:** RE: Document Authentication

Dear Jeniphr,

I am following up regarding my earlier email about authenticating documents provided by Snyder's Drugstores and the Great Falls Clinic. As you know, I think it would benefit all concerned if we could reach an agreement on a stipulation for these documents, thus foregoing the need for depositions. I would appreciate it if you could let me know by end of the day on Wednesday one way or the other concerning the possibility of a stipulation.

Regards,

Reid

Reid Skibell
Davis Polk & Wardwell
450 Lexington Ave.
NY, NY 10017
(212)450-4634

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise

# Exhibit 6



HAGENS BERMAN
SOBOL SHAPIRO LLP

JENIPHR A.E. BRECKENRIDGE
DIRECT • (206) 224-9325
JENIPHR@HBSSLAW.COM

January 30, 2007

*Via E-Mail*

Mr. James J. Duffy
Mr. Reid Skibell
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

    Re:     *Montana and Nevada Average Wholesale Price Litigation*

Dear Counsel:

    This letter is a follow up to electronic mails. The States of Montana and Nevada advise Defendants that the depositions of the Great Falls Clinic and Snyders Drugstores were not timely noticed pursuant to CMO No. 10. I previously advised Mr. Skibell in writing of the States' intent to object to any deposition on the basis that discovery in these cases closed nearly one year ago. In addition, Defendants' violation of CMO No. 10 guidelines is particularly egregious here where Defendants were on notice of the States' objections and the depositions were arranged during a period of intense post-trial briefing for all parties.

    The States will file an emergency motion for protective order today citing the above basis and others.

    The depositions should not go forward.

    We will advise the non-parties of our objections directly.

              Sincerely,

              HAGENS BERMAN SOBOL SHAPIRO LLP

              *[sent via electronic delivery]*

              Jeniphr A.E. Breckenridge

cc:    Ali Bovingdon
       L. Timothy Terry

ATTORNEYS AT LAW        SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO

T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE   SUITE 2900   SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001534-13 150918 V1