# ATTACHMENT 1



**U.S. Department of Justice**

Civil Division, Fraud Section

---

*601 D Street, NW*　　　　　　　　　　*Telephone:  (202) 514-3345*
*Ninth Floor*　　　　　　　　　　　　　*Telecopier:  (202) 305-4117*
*Washington, D.C. 20004*

---

<u>*Via Electronic Transmission*</u>

Mr. Martin Murphy
Foley Hoag LLP
155 Seaport Blvd
Boston, MA 02210


Re:　　*United States ex rel. Ven-a-Care of the Florida Keys Inc. v. Dey, Inc., et al.*, MDL No.
　　　　1456/Civil Action No. 05-11084-PBS (D. Mass.)

Dear Marty:

　　　　Please find attached redacted versions of earlier complaints in the *qui tam* actions.  We are providing these to you pursuant to partial lift seal orders that permit disclosure to defendants alone.  If you believe you will need to publicly refer to these documents, please advise me and we will seek an order fully unsealing the redacted complaints.

　　　　Thank you for your attention.

　　　　　　　　　　　　　　　Very Truly Yours,


　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　Laurie A. Oberembt
　　　　　　　　　　　　　Senior Trial Counsel
　　　　　　　　　　　　Commercial Litigation Branch

cc:　　AUSA George B. Henderson, II
　　　　U.S. Dept. of Justice

　　　　James Breen
　　　　The Breen Law Firm

　　　　Neil Merkl
　　　　Kelley Drye & Warren, LLP
　　　　nmerkl@kelleydrye.com

**ATTACHMENT 2**

4409A4418

# UNITED STATES OF AMERICA

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### OFFICE OF INSPECTOR GENERAL

---

### SUBPOENA DUCES TECUM

TO

Dey Laboratories
2751 Napa Valley Corporate Drive
Napa, CA 94558

*by service upon its registered agent:*
CT Corporation
818 W. Seventh St.
Los Angeles, CA 90017

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE*  Special Agent Kevin Aberle ,
*an official of the Office of Inspector General, at* 15500 New Barn Road, Suite 207

*in the City of* Miami Lakes  *and State of* Florida
*on the* ____ *day of* October  31  , 19 97 , *at* 9 *o'clock,* a  *m of*
*that day, in connection with* an investigation of Medicaid and/or Medicare fraud

;

*and you are hereby required to bring with you and produce at said time and place the following:*

### SEE ATTACHED

*which are necessary in the performance of the responsibility of the Inspector General under Public Law 95-452 [5 USC App. 3 Section 6(a)(4)], as amended by Public Law 100-504, to conduct and supervise audits and investigations and to promote economy, efficiency and effectiveness in the administration of and to prevent and detect fraud and abuse in the programs and operations of the Department of Health and Human Services.*



*IN TESTIMONY WHEREOF*

Albert A. Hallmark  *the undersigned official of the Office of Inspector General of said DEPARTMENT OF HEALTH AND HUMAN SERVICES, has hereunto set* his  *hand this* 6th  *day of* October 19 97 .

## DEFINITIONS

**"Listed Pharmaceuticals"** means the brand name, trade name or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

## I.   INSTRUCTIONS

A.   Each Document Request shall be construed to include documents within the knowledge, possession or control of the subpoenaed party, its attorneys, investigators, agents, owners, officers, employees, or other representatives of the subpoenaed party and/or its attorneys, as of the date of the answers given to these Document Requests and any supplemental information, knowledge, data, documents or communication responsive to these Document Requests which is subsequently generated, obtained or discovered.

B.   If the response to any Document Request consists in whole or in part of an objection relating to or including burdensomeness, then with respect to such responses:

1.   Provide such information as can be ascertained without undue burden;

2.   State with particularity the basis for each such objection, including:

(a)   a description of the process or method required to obtain any fact responsive to the Document Request; and

(b)   the estimated costs and time required to obtain any fact responsive to the Document Request.

3.   Describe the nature and extent of the documents or other source(s), if any, from which any fact responsive to the Document Request can be obtained; and

4.   State whether the documents or other sources will be made available for inspection and copying.

C.    If you claim privilege as a ground for not providing documents in response to any Document Request, describe the factual basis for said claim or privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim. If the claim of privilege relates to identification of a document, also state the date the document was prepared, the author, the addressees, all recipients and the general subject matter.

D.    If the response to any Document Request consists, in whole or in part, of an objection(s), state with specificity the full objection(s) and the particularized basis for each said objection.

II.   <u>DEFINITIONS</u>

As used in these Document Requests, the following terms include the meanings set forth below:

A.    **"You"** or **"your"** means Dey Laboratories, Inc., Dey Laboratories and any other affiliated company, parent, subsidiary, division, joint venture or other entity or agent acting on your behalf in manufacturing, marketing or distributing the Listed Pharmaceuticals.

B.    The term **"document"** means any writing or recording of any kind whether written, graphic, pictorial, photographic, phonographic, mechanical, taped, saved on computer disc, hard drives or data tapes or otherwise, and every non-identical copy now or formerly in your possession, custody or control. Different versions of the same document, such as different copies of a written record bearing different handwritten notations, are different documents within the meaning of the term as used.  In case originals or original non-identical copies are not available, "document" includes copies of originals or copies of non-identical copies as the case may be.

C.    The term **"identify"** has the following meanings:

1.    When used in reference to a natural person, it means to state his or her full name, his or her last known residence, business address, and business telephone number.

2.    "Identify" when referring to corporate or other entities shall mean to set forth:  (a) the name; (b) present or last known address; (c) its principal place of business; and (d) the form or

2

manner of its organization.  Once a corporation or
other entity has thus been identified, it shall be
sufficient thereafter when identifying that
corporation or other entity to state its full
name.

3.  When used in reference to a communication, it
means:

    a)  If such communication was oral, to identify
        the person speaking and the person spoken to,
        who else was present, and to state the date
        and place of the communication and its
        substance;

    b)  if such communication was contained in a
        document, to identify the document.

4.  When used in reference to a document, it means to
    state the type of document (e.g., letter,
    telegram, magnetic tape, chart, etc.), describing
    it sufficiently (date, author, recipient(s)) for
    purposes of a request to produce or subpoena duces
    tecum.  In lieu of identification of a document,
    the document may be made available for inspection
    and copying.  If any such document was, but is no
    longer in your possession, or subject to your
    control, please state what disposition was made of
    it.

5.  When used in reference to a course of conduct, it
    means to furnish the names, addresses, and
    positions of those persons who have committed the
    acts alleged and the names, addresses, and
    positions of those persons who have knowledge of
    the conduct as identified.

   D.  The term "communication" means a transmittal of
information, or request for information, by document or otherwise
and includes any conversation in person, by telephone or by any
other means, as well as any utterance heard by another person
whether in person, by telephone or otherwise.

   E.  The term "entity" means an individual, corporation,
partnership, proprietorship, professional corporation,
association, group, governmental agency or agent, municipal
corporation, state government, local government, political
subdivision, or any other legal entity of any kind, whether for

3

profit or not for profit.

F.     The words **"and"** and **"or"** shall mean "and/or."

G.     The term **"relate to"** means concerning, embodying, considering, mentioning, respecting, bearing on, referring to or addressed in whole or in part to that subject.

H.     The term **"interest"** shall mean any form of monetary investment in or control over an entity.

I.     The term **"affiliated"** shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

J.     Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

K.     The phrase **"possession or control"** means to have physical possession, legal or effective control, or majority or joint ownership.  This includes assets that are being held by another party on behalf of an individual or entity.

L.     **"Pricing Correspondence"** means any document (excluding invoices) containing a representation of price for a Listed Pharmaceutical directed to any or all of the state government offices (or privately contracted agents) of the states of Texas, Florida, Colorado, Alabama, Massachusetts and Maryland that are responsible for receiving, processing, and/or paying claims for Medicaid reimbursement for the Listed Pharmaceuticals or setting the rates of reimbursement for the Listed Pharmaceuticals.

M.     **"Request for Information for New Drug Product Or Request for Additional Information of Products Currently Included in Texas Medicaid"** means the survey/questionnaire required by the state of Texas Department of Health Bureau of Vendor Drug for the approval for reimbursement of any pharmaceutical under the Texas Vendor Drug Program.

N.     **"Publishers"** means the publishers of the following pharmaceutical pricing guides and/or databases:  the Medical Economics *Drug Topics Red Book*; the Hearst Corporation's *First DataBank*; or *Medi-Span, Inc.*

O.     **"AWP"** means the price that you report, advertise or publish as the average wholesale price for the Listed Pharmaceuticals.

P.    **"Direct Price"** means the price you report, advertise or publish as the "DP" or direct price for the Listed Pharmaceuticals.

Q.    **"Best Price"** means the price you report, advertise or publish as the best price for the Listed Pharmaceuticals.

R.    **"AMP"** means the price you report, advertise or publish as the "average manufacturer's price" for the Listed Pharmaceuticals.

S.    **"Medicaid representative"** means any state's Medicaid program employees or officials, or their agents, fiscal agents, sub-contractors or designees.

T.    **"Price representations"** means any statement, assertion or declaration of the price of the Listed Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, or Suggested Net Trade.

**Relevant Time Period:**  The requests herein refer to documents created from January 1, 1994 to the present and documents relating to such period even though created before that period.

## DOCUMENTS REQUESTED

1.    All documents that reflect, discuss, analyze or comment upon the prices which you have set for the sale of, or at which you have sold, any of the Listed Pharmaceuticals to Florida Infusion/Nation's Drug, Ultracare, Oncology Therapeutics Network, FFF Enterprises, Inc., National Specialty Services, ASD (a subsidiary of Bergen Brunswig Drug Co.), and/or Oncology Supply Co., Inc. (a division of ASD) for the years 1994, 1995, and 1996, including but not limited to contracts, price lists, or any documents reflecting charge back agreements, rebates, discounts or other items of value offered or given.

2.    All documents that reflect, discuss, analyze or comment upon the prices which you have set for the sale of, or at which you have sold, any of the Listed

Pharmaceuticals to GNYHA Alternate Care, Automated
Health Technologies, Pharmaceutical Buyers, Inc.,
Amerinet, Gerimed/IV Med, and/or Health Care Purchasing
Agency (a subsidiary of Bergen Brunswig Co.), for the
years 1994, 1995, and 1996 including but not limited to
contracts, price lists, or any documents reflecting
charge back agreements, rebates, discounts or other
items of value offered or given.

3.     All documents that reflect, discuss, analyze or comment
       upon the prices which you have set for the sale of, or
       at which you have sold, any of the Listed
       Pharmaceuticals to Texas Oncology Pharmacy Services,
       Inc. (a subsidiary of Physician Reliance Network,
       Inc.), Lessner & Troner, M.D.'s. P.A., NMC Homecare,
       Inc., Caremark, Coram Health Care, Quantum Health
       Resources, Olsten Health Services, Kimberly Care, Vital
       Systems, Texas Health Resources, Nova Factor, American
       Pharmaceutical Services, Abbey Health Care, Home
       Patient Care, Inc. (a/k/a HPC, Inc.) and/or Home
       Patient Care, America (HPC America) for the years 1994,
       1995, and 1996, including but not limited to contracts,
       price lists, or any documents reflecting charge back
       agreements, rebates, discounts or other items of value
       offered or given.

4.     All Pricing Correspondence, and drafts thereof, for any
       of the Listed Pharmaceuticals.

5.     All documents that reflect, discuss, analyze or comment
       upon any decision to increase the amounts of any of the
       Price representations of a Listed Pharmaceutical as
       reported by you to the Publishers, to any state's
       Medicaid representatives or to any Medicare carrier
       while maintaining at the same level or reducing the
       price at which you actually sold any of the Listed
       Pharmaceuticals to physicians, physicians groups,
       hospital groups, home infusion or IV pharmacies,
       wholesalers (including but not limited to Florida
       Infusion/Nation's Drug, Ultracare, Oncology
       Therapeutics Network, FFF Enterprises, Inc., National
       Specialty Services, ASD (a subsidiary of Bergen
       Brunswig Drug Co.), Oncology Supply Co., Inc. (a
       division of ASD), GNYHA Alternate Care, Automated
       Health Technologies, Pharmaceutical Buyers, Inc.,
       Amerinet, Gerimed/IV Med, Health Care Purchasing Agency
       (a subsidiary of Bergen Brunswig Co.), Lessner &
       Troner, M.D.'s. P.A., NMC Homecare, Inc., Caremark,

6

Coram Health Care, Quantum Health Resources, Olsten Health Services, Kimberly Care, Vital Systems, Texas Health Resources, Nova Factor, American Pharmaceutical Services, Abbey Health Care, Home Patient Care, Inc. (a/k/a HPC, Inc.) and/or Home Patient Care, America (HPC America) and/or any other entity marketing the Listed Pharmaceuticals) in any or all of the following states: Texas, Florida, Colorado, Alabama, Massachusetts and Maryland.

6.  All communications between you and any distributor, wholesaler, home infusion or IV pharmacy, physician, buying group, or hospital group, that discuss the Price Representations of any of the Listed Pharmaceuticals in comparison to the reimbursement rates of the Medicaid programs in any or all of the following states:Texas, Florida, Colorado, Alabama, Massachusetts and Maryland for any of the Listed Pharmaceuticals.

7.  All of your internal communications that discuss the Price representations of any of the Listed Pharmaceuticals in comparison to the reimbursement rates of the Medicaid programs in any or all of the following states:Texas, Florida, Colorado, Alabama, Massachusetts and Maryland for any of the Listed Pharmaceuticals.

8.  All documents created by you that compare or analyze other drug manufacturers' published Price Representations with your Price Representations for any of the Listed Pharmaceuticals or their generic equivalents.

9.  All documents that discuss or refer to the "wholesale acquisition cost" or "WAC" reimbursement rates set by the Alabama, Florida and/or Colorado Medicaid programs and/or how those reimbursement rates affect your marketing or sale of any of the Listed Pharmaceuticals.

10.  All documents that discuss or refer to the "wholesale estimated acquisition cost" or "WEAC" reimbursement rates set by the Texas Medicaid program and/or how those reimbursement rates affect your marketing or sale of any of the Listed Pharmaceuticals.

11.  All documents that discuss or refer to the "direct

7

estimated acquisition cost" or "DEAC" reimbursement rate set by the Texas Medicaid program and/or how those reimbursement rates affect your marketing or sale of any of the Listed Pharmaceuticals.

12. All documents that reflect the price used by you to compute the rebate you paid to each of the Medicaid programs of Texas, Florida, Colorado, Alabama, Massachusetts and Maryland for each of the Listed Pharmaceuticals from 1990 to the present.

13. All "Applications for Inclusion of a New Product and the Recertification of Products Presently Included in the Texas Vendor Drug Program" sent to the Texas Medicaid Program, and drafts thereof.

14. All documents, not otherwise described in paragraph 13, transmitted to the Texas Medicaid Program which contained any Price Representations regarding any of the Listed Pharmaceuticals, and drafts thereof.

15. All documents which mention, evidence or reflect any discussions or analysis regarding the manner in which to provide the information described in paragraphs 13 and 14.

# EXHIBIT A

## DEY LABORATORIES

1) **Acetylcysteine Solution 10%, 20%**
2) **Albuterol Sulfate Solution 0.083%**
3) **Cromolyn Sodium**
4) **Metaproterenol Sulfate**
5) **Sodium Chloride 0.9%, 3%, 10% for inhalation**

**ATTACHMENT 3**

# COUDERT BROTHERS

ATTORNEYS AT LAW

1114 AVENUE OF THE AMERICAS
NEW YORK, N.Y. 10036-7703
TEL: 212 626-4400 FAX: 212 626-4120

| | NEW YORK |
|---|---|
| | PARIS |
| | WASHINGTON |
| | LONDON |
| | BRUSSELS |
| | HONG KONG |
| | SINGAPORE |
| | SAN FRANCISCO |
| | BEIJING |
| | SYDNEY |
| | LOS ANGELES |
| | SAN JOSE |
| | TOKYO |
| | MOSCOW |
| | BANGKOK |
| | JAKARTA |
| | HO CHI MINH CITY |
| | HANOI |
| | BERLIN |
| | DENVER |
| | ST. PETERSBURG |
| | MEXICO CITY |
| | ASSOCIATED OFFICE |
| | RIOS FERRER Y |
| | GUILLEN-LLARENA, S.C. |

**BY FEDERAL EXPRESS**

October 31, 1997

Reed Stephens, Esq.
U.S Department of Justice
Fraud Division, Room 9226
601 D Street, NW
Washington, DC 20004

Dear Mr. Stephens:

     I enclose the first batch of documents, numbered DL001 - DL048, from the production by our client, Dey Laboratories, in response to the subpoena of the United States Department of Health and Human Services, dated October 6, 1997.

Very truly yours,

Stephen M. Hudspeth

ceh/SMH
Direct Tel: 212 626-4442
Enclosures

# ATTACHMENT 4



**DEPARTMENT OF HEALTH & HUMAN SERVICES**          Office of Inspector General

Office of Investigations
8100 Oak Lane, Ste 306
Miami, FL 33016

July 25, 2000

Dey Inc.
Dey Laboratories, Inc.
2751 Napa Valley Corporate Drive
Napa, CA 94558

Dear Sir or Madame:

    Accompanying this letter is a subpoena addressed to you as Records Custodian returnable at a location of the Miami Field Office, Office of Inspector General, before my designee, Special Agent Alain Rossello. The subpoena has been issued pursuant to the authority provided to the Inspector General under Public Law 95-452 (5 UCS Appendix 3, Section 6 (a) (4) ), as amended by Public Law 100-504.

    After you review the subpoena, you will see that it seeks documents similar to those demanded in a previous subpoena served upon your or your subsidiaries.  Please note that the intent of the current subpoena is to acquire different documents than those acquired in response to the previous subpoena.  To the extent that this subpoena can be interpreted to demand documents already provided in response to the previous subpoena, duplicate production is not required.

    Fully legible and complete copies of the records called for by the subpoena will be accepted in response to the subpoena, provided that the original records will be made available to employees of my office, upon request, during normal business hours.  Otherwise, original documents (including copies as maintained in your files) should be produced.

Failure to appear at the time and place specified in the subpoena may be taken as a failure to comply with the subpoena. However, as a convenience, you may assemble the documents requested and mail them by certified mail on or before August 28, 2000 to:  HHS/OIG/OI, ATTN: SA Alain Rossello, 99 N.E. 4th Street, 3rd Floor, Miami, FL  33132.

If you have any questions please feel free to contact SA Alain Rossello at (305)536-6927.

                    Sincerely,

                    Linda J. Hillier
                    Regional Inspector
                    General for Investigations

# UNITED STATES OF AMERICA
## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### OFFICE OF INSPECTOR GENERAL

---

## SUBPOENA DUCES TECUM

TO:

**Dey Inc.**
**Dey Laboratories, Inc.**
**2751 Napa Valley Corporate Drive**
**Napa, CA 94558**

*by service upon its registered agent:*
**CT Corporation**
**818 West Seventh St.**
**Los Angeles, CA 90017**

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE   Special Agent Alain Rossello   ,
an official of the Office of Inspector General, at   99 N.E. 4th St., Suite 300*

| | | | | | |
|---|---|---|---|---|---|
| *in the City of* | *Miami* | | *and State of* | *Florida* | |
| *on the*  28th  *day of*  August | | ,20   00  , at   9   *o'c*  am | | | |

*that day, in connection with   an investigation of Medicaid and/or Medicare fraud.*
*Should you have any questions, please contact Alain Rossello, Special Agent, U.S. Dept. Of Health*
*Services, Office of Inspector General, at 305-536-6927.*

;

*and you are hereby required to bring with you and produce at said time and place the following:*

## SEE ATTACHED

*which are necessary in the performance of the responsibility of the Inspector General under Public Law
95-452[5 USC App. 3 Section 6(a)(4)], as amended by Public Law 100-504, to conduct and supervise
audits and investigations and to promote economy, efficiency and effectiveness in the administration of
and to prevent and detect fraud and abuse in the programs and operations of the Department of Health
and Human Services*



*IN TESTIMONY WHEREOF*
*Linda J. Hillier        the undersigned official of the
Office of Inspector General of said DEPARTMENT
OF HEALTH AND HUMAN SERVICES, HAS
hereunto set h  er   hand this   27   d a y
of   July        20  00  .*
*Regional Inspector General for Investigations*

6597

## I.    **INSTRUCTIONS**

A.        Each Document Request shall be construed to include documents within the knowledge, possession or control of the subpoenaed party, its attorneys, investigators, agents, owners, officers, employees, or other representatives of the subpoenaed party and/or its attorneys, as of the date of the answers given to these Document Requests and any supplemental information, knowledge, data, documents or communication responsive to these Document Requests which is subsequently obtained or discovered.

B.        If you claim privilege as a ground for not providing documents in response to any Document Request, describe the factual basis for said claim or privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim, including the date the document was prepared, the author, the addressees, all recipients and the general subject matter.

C.        If the response to any Document Request consists, in whole or in part, of an objection(s), state with specificity the full objection(s) and the particularized basis for each said objection.

## II.    **DEFINITIONS**

As used in these Document Requests, the following terms include the meanings set forth below:

A.        **"You"** or **"your"** means Dey Laboratories, Inc., Dey Laboratories and any other affiliated company, parent, subsidiary, division, joint venture or other entity or agent acting on your behalf in purchasing, marketing or distributing any of the Listed Pharmaceuticals.

B.        The term **"document"** means any writing or recording of any kind whether written, graphic, pictorial, photographic, phonographic, mechanical, taped, saved on computer disc, hard drives or data tapes or otherwise, and every non-identical copy. Different versions of the same document, such as different copies of a written record bearing different handwritten notations, are different documents within the meaning of the term as used.  In case originals or original non-identical copies are not available, "document" includes copies of originals or copies of non-identical copies as the case may be.

C.        The term **"identify"** has the following meanings:

1.        **"Identify"** when used in reference to a natural person, means to provide any documents that list the person's full name, their last known residence, business address, and business telephone number.

2.    **"Identify"** when referring to corporate or other entities shall mean to provide any documents that list: (a) the name; (b) present or last known address; (c) its principal place of business; and (d) the form or manner of its organization.

3.    **"Identify"** when used in reference to a communication, means that if such communication was contained in a document, to provide the document.

D.    The term **"communication"** means a transmittal of information, or request for information, by document and includes documentation thereof, and if such communication was contained in a document, to provide the document.

E.    The term **"entity"** means an individual, corporation, partnership, proprietorship, professional corporation, association, group, governmental agency or agent, municipal corporation, state government, local government, political subdivision, or any other legal entity of any kind, whether for profit or not for profit.

F.    The words **"and"** and **"or"** shall mean "and/or."

G.    The term **"affiliated"** shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

H.    Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

I.    The terms **"accuracy," "accurate"** or **"accurately,"** when used in reference to Price Representations, are used with reference to whether the information is reflective of the prices actually paid in the marketplace by any purchasers, including but not limited to prices paid by wholesalers, pharmacies, oncology supply houses, group purchasing organizations or physicians.

J.    The term **"Price Representations"** means any statement, assertion, representation or declaration of the price of any Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, List Price or Suggested Net Trade.

K.    The term **"Pharmaceutical"** means any drug or other product sold by you which requires a physician's prescription, and includes but is not limited to "biological" products such as hemophilia factors and intravenous solutions such as sodium chloride solution.

L.        The term **"Listed Pharmaceuticals"** means the brand name, trade name or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

M.        The term **"Spread"** is used to refer to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid **by** purchasers of the Pharmaceuticals) and the price or cost set, published or arranged by the manufacturer or the reimbursement rate paid by third party payors (**to** purchasers of the Pharmaceuticals). Third party payors include Medicare, Medicaid and private insurance.  Thus, the Spread is the gross profit actually or potentially realized by the purchasers of the Pharmaceuticals.

N.        The term **"Request for Information for New Drug Product Or Request for Additional Information of Products Currently Included in Texas Medicaid"** means the survey/questionnaire required by the state of Texas Department of Health Bureau of Vendor Drug for the approval for reimbursement of any Pharmaceutical under the Texas Vendor Drug Program.

O.        The term **"Publishers"** means any person or entity engaged in publishing drug prices, including the publishers of the following pharmaceutical pricing guides and/or databases:  the Medical Economics *Drug Topics Red Book*; the Hearst Corporation's *First DataBank*; or *Medi-Span, Inc.*

P.        The term **"Medicare Representative"** means any Medicare program employees or officials, or their agents, fiscal agents, sub-contractors or designees, including any Medicare carrier or fiscal intermediary.

Q.        The term **"Medicaid Representative"** means any state's Medicaid program employees or officials, or their agents, fiscal agents, sub-contractors or designees.

R.        The term **"AWP"** means the price that you report, advertise, publish or cause to be published, directly or indirectly, as the average wholesale price for any Pharmaceutical.

S.        The term **"WAC"** means the price that you report, advertise, publish or cause to be published, directly or indirectly, as the wholesale acquisition cost or wholesaler acquisition cost for any Pharmaceutical.

T.        The term **"Direct Price"** means the price you report, advertise, publish or cause to be published, directly or indirectly, as the "DP" or direct price for any Pharmaceutical.

U.        The term **"Best Price"** means the price you report or otherwise disseminate as the best price for any Pharmaceutical, including the price you report for purposes of the Medicaid rebate program.

V.         The term **"AMP"** means the price you report or otherwise disseminate as the average manufacturers price for any Pharmaceutical, including the price you report for purposes of the Medicaid rebate program.

**Relevant Time Period:** Unless otherwise indicated in a specific request, the requests herein refer to documents created from January 1, 1990 to the present and documents relating to such period even though created before that period.

## DOCUMENTS REQUESTED

1.      All documents (excluding invoices) which mention, evidence or reflect any Price Representation for a Listed Pharmaceutical sent or directed by you or on your behalf to any government office or official (or their privately contracted agents) responsible for receiving, processing, and/or paying claims for Medicaid or Medicare reimbursement for the Listed Pharmaceuticals, setting the rates of reimbursement for the Listed Pharmaceuticals, or for calculating Medicaid rebates for the Listed Pharmaceuticals.

2.      All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any explanation or definition of any terms commonly used to describe Price Representations or charge-back arrangements.

3.      All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any Price Representations regarding the Listed Pharmaceuticals.

4.      All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any reimbursement information regarding the Medicare Program or any Medicaid Program.

5.      All documents which mention, evidence or reflect any Price Representation for a Listed Pharmaceutical sent or provided by you or on your behalf to any elected official of any State or the United States.

6.      All documents which mention, evidence or reflect any explanation or definition of any terms commonly used to describe Price Representations, AMP, Best Price or charge-back arrangements sent or provided by you or on your behalf to any elected official of any State or the United States.

7.      All documents which mention, evidence or reflect any Price Representations sent to or received from any Publishers for any of the Listed Pharmaceuticals, including but not limited to new product submissions, data requests or price updates.

8.      All documents which mention, evidence or reflect the purpose, goal or reason for the transmittal of the information described in paragraphs 1 - 7, including internal memoranda, cover letters, analysis or strategy discussions.

9.      All documents which mention, evidence or reflect the reimbursement rates set or methodologies used by any state's Medicaid program, the Medicare program, or any private insurance program, including all documents which mention, evidence or reflect

how those reimbursement rates affect your marketing or sale of any of your Pharmaceuticals.

10. All documents which mention, evidence or reflect the Price Representations of any of your Pharmaceuticals in comparison to or in connection with the reimbursement rates of any state's Medicaid program, the Medicare program, or any private insurance program.

11. All documents which mention, evidence or reflect other drug manufacturers' Price Representations in comparison to or in connection with (a) your Price Representations or (b) the reimbursement rates of any state's Medicaid program, the Medicare program, or any private insurance program.

12. All "Applications for Inclusion of a New Product and the Recertification of Products Presently Included in the Texas Vendor Drug Program" sent to the Texas Medicaid Program and all other similar forms or applications, and drafts thereof.

13. All documents, not otherwise described in paragraph 12, transmitted to the Texas Medicaid Program which contained any Price Representations regarding any of your Pharmaceuticals, and drafts thereof.

14. All documents which mention, evidence or reflect any discussions or analysis regarding supplying or otherwise reporting the information described in paragraphs 12 and 13.

15. All documents that mention, evidence or reflect any impact upon the net purchase or sale price of any Listed Pharmaceutical due to any payment or proposed payment in cash or in kind directly or indirectly, including charge backs, discounts, the Spread, rebates, free pharmaceuticals, administrative fees, sponsorship of meetings, drug studies, educational or research grants or off-invoice pricing.

16. All documents that mention, evidence or reflect any impact of the Spread upon the sale of your Pharmaceuticals to any purchaser, including any documents analyzing the gross profit or estimated gross profit of any purchaser.

17. All documents that mention evidence or reflect the gross profits or estimated gross profits for any purchaser with respect to any of the Listed Pharmaceuticals.

18. All documents that summarize or describe the function of any system for connecting or interfacing with physicians' billing systems or practice management systems.

19. All documents that mention, evidence or reflect any payment in cash or in kind directly or indirectly to any employee of any agency involved in the administration of any Medicaid program or the Medicare program, or to any of their family members.

20. All documents that mention, evidence or reflect any communications directed by you or on your behalf to any purchaser which mention, evidence or reflect either reimbursement

amounts for the Listed Pharmaceuticals or the Spread, including documents which reference AWP or WAC.

21.    All documents which mention, evidence or reflect any occasion whereby the net price or cost to a purchaser was less than that reflected on the invoice to the purchaser, including any arrangement whereby payments were made directly to the purchaser or free goods were delivered directly to the purchaser thereby resulting in a reduction of the net price or net cost of the purchaser.

22.    All documents which mention, evidence or reflect any price changes or changes in Price Representations to any of your Pharmaceuticals from April 30, 2000 to the present.

23.    All documents which mention, evidence or reflect the reason for any price change or changes in Price Representations described in paragraph 22.

# EXHIBIT A

# DEY LABORATORIES

1) Acetylcysteine Solution 10%, 20%
2) Albuterol Sulfate Solution 0.083%
3) Cromolyn Sodium
4) Metaproterenol Sulfate
5) Sodium Chloride 0.9%, 3%, 10% for inhalation
6) Albuterol
7) Ipratropium Bromide




DEY LABS          SOR12

**FedEx** USA *Airbill*  FedEx Tracking Number  **8154 3025 4449**

Form I.D. No. **0215**

**1 From** *Please print and press hard.*

Date  **8/3/00**     Sender's FedEx Account Number    **1425-1511-3**

Sender's Name  **Mark A. Lavine, AUSA**   Phone ( **305** ) **961-9215**

Company  **USDOJ/US ATTORNEYS OFFICE**

Address  **99 NE 4TH ST**

City  **MIAMI**   State **FL**   ZIP **33132**

**2 Your Internal Billing Reference**
*First 24 characters will appear on invoice.*

**3 To**

Recipient's Name  **Steve Hudspeth**   Phone (   )

Company  **Coudert Brothers**

Address  **1114 Avenue of the Americas**
*We cannot deliver to P.O. boxes or P.O. ZIP codes.*

To "HOLD" at FedEx location, print FedEx address here.

City  **New York**   State **NY**   ZIP **10036**

See back for application instructions.

**Questions? Call 1·800·Go·FedEx®** (800-463-3339)
Visit our Web site at www.fedex.com

*By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.*

**4a Express Package Service**     *Packages up to 150 lbs.*

☐ FedEx Priority Overnight   ☐ FedEx Standard Overnight   ☐ FedEx First Overnight

☐ FedEx 2Day®   ☐ FedEx Express Saver®

**4b Express Freight Service**     *Packages over 150 lbs.*

☐ FedEx 1Day Freight®   ☐ FedEx 2Day Freight   ☐ FedEx 3Day Freight

**5 Packaging**

☐ FedEx Letter®   ☐ FedEx Pak®   ☐ Other Pkg.

**6 Special Handling**

☐ Saturday Delivery   ☐ Sunday Delivery   ☐ HOLD Weekday at FedEx Location   ☐ HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

☐ No   ☐ Yes As per attached Shipper's Declaration   ☐ Yes Shipper's Declaration not required   ☐ Dry Ice   ☐ Cargo Aircraft Only

**7 Payment** *Bill to:*

☐ Sender   ☐ Recipient   ☐ Third Party   ☐ Credit Card   ☐ Cash/Check

**8 Release Signature** *Sign to authorize delivery without obtaining signature.*

**359**

0113269323

# ATTACHMENT 5

# HOGAN & HARTSON
## L.L.P.

**DAVID P. KING**
PARTNER
(410) 659-2700
DPKING@HHLAW.COM

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 539-6981

March 17, 2000

**BY HAND DELIVERY**

David Ogden, Esquire
Department of Justice
Main Justice Building
10th Street and Constitution Avenue, N.W.
Room 3744
Washington, DC 20530

            Re:    **Analysis of Why the United States Should Decline Intervention in United States Ex Rel. [Relator] v. [Defendants] (S.D. Fla.) (Under Seal)**

Dear Mr. Ogden:

        On behalf of Dey, L.P.; ESI Lederle, Inc.; Fujisawa Healthcare, Inc.; Ben Venue Laboratories; SmithklineBeecham Pharmaceuticals; Novartis Pharmaceuticals Corporation; Baxter Healthcare Corporation; Immunex Corporation; Glaxo Wellcome, Inc.; Aventis Behring L.L.C. (Centeon); and Bristol Myers Squibb Company, I enclose an Analysis of Why the United States Should Decline Intervention in United States Ex Rel. [Relator] v. [Defendants] (S.D. Fla.) (Under Seal). After you have had an opportunity to review the Analysis, please let us know when we may schedule a meeting to discuss this matter further. I look forward to hearing from you.

                       Very truly yours,

                       David P. King

DPK:jvd

Enclosure

cc:   Stuart Schiffer, Esq.
      Michael Hertz, Esq.
      T. Reed Stephens, Esq.

WASHINGTON, DC

BRUSSELS   BUDAPEST   LONDON   MOSCOW   PARIS   PRAGUE   WARSAW
COLORADO SPRINGS, CO   DENVER, CO   LOS ANGELES, CA   McLEAN, VA   NEW YORK, NY   ROCKVILLE, MD
WASHINGTON OFFICE: 555 THIRTEENTH STREET NW, WASHINGTON DC 20004-1109   TEL: (202) 637-5600   FAX: (202) 637-5910
\\\BA - 58350/100 - 462686 v1

2103858

**ATTACHMENT 6**

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

---

## SUBPOENA DUCES TECUM

**TO:**   Custodian of Records
Dey Inc. and Dey Laboratories, Inc.
2751 Napa Valley Corporate Drive
Napa, CA  94558

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE* _____
*Assistant U.S. Attorney George Vien* _____

*official of the U.S. Department of Justice, and you are hereby required to bring with you and produce the following:*

**See attached Schedules A and B**

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate: 18 U.S.C. §§669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

## PLACE AND TIME FOR APPEARANCE:

At the place specified on Schedule C, on September 29, 2000, at 10:00 a.m.

*In lieu of answering at the date and time specified, you may comply with this subpoena by, at your option, causing the materials described to be delivered to the agent serving this subpoena or by causing such materials to be mailed to Assistant U.S. Attorney George Vien at the United States Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02210. Any questions, contact Assistant U.S. Attorney George Vien at 617-748-3236.*

---

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



*IN TESTIMONY WHEREOF*

_____**MICHAEL K. LOUCKS**_____
*the undersigned official of the U.S.
DEPARTMENT OF JUSTICE, has hereunto
set his hand this 25 th day of August, 2000*

_____
(SIGNATURE)

UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE

SUBPOENA DUCES TECUM

*Upon contumacy or refusal to obey, this subpoena shall be enforceable by order of the appropriate United States District Court.*

RETURN OF SERVICE

I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of --

1.  personal delivery to an individual, to wit:

_____
*(Name)*

_____
*(Title)*

_____
*(Address)*

2.  personal delivery to an address, to wit:

_____
*(Description of premises)*

_____
*(Address)*

_____

_____

3.  registered or certified mailing to:

_____
*(Name)*

_____
*(Address)*

at_____ ( ) a.m.
       ( ) p.m. on _____

_____
*(Signature)*

_____
*(Title)*

## SCHEDULE A TO SUBPOENA DUCES TECUM

### I.     INSTRUCTIONS AND DEFINITIONS

A.     "Document(s)" means, without limitation, any written, printed, typed, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings and the backsides of any communication or representation which contain any of the above.

By way of example, "document(s)" includes, but is not limited to:  correspondence; memoranda; notes; drafts; records; letters; envelopes; telegrams; messages; electronic mail; analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; notices; drawings; diagrams; instructions; manuals; calendars; diaries; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or company communications; questionnaires; surveys; charts; graphs; photographs; films or videos; tapes; discs; data cells; bulletins; printouts of information stored, maintained, or transmitted by electronic data or word processing equipment; electronic claims filing and transmittals, invoices, all other data compilations from which information can be obtained including electromagnetically sensitive stored media such as floppy discs, hard discs, hard drives and magnetic tapes; laptop computers issued to officers and employees; and any preliminary versions, drafts or revisions of any of the foregoing.

B.     The "Company" means any and all of the following: Dey, Inc. or Dey Laboratories, Inc., and any predecessors, parents, subsidiaries affiliates, segments, divisions, and any present or former officers, directors, employees, consultants, contractors, agents, or members of the board of directors.

C.     The term "Drugs" means the brand name, trade name, or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

D.     Documents required by this Authorized Investigative Demand ("subpoena") shall be produced to the identified officials of the United States Department of Justice at the time and place indicated on the subpoena.

E.     The recipient of this subpoena shall identify a qualified custodian of records who will be available to testify at the place and time indicated, concerning the production and authentication of documents and records required to be produced by this subpoena.

1

F.     If a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced on the basis of such claim, for each such document or part thereof that is not produced, you are directed to provide a privilege log wherein you identify the type of document being withheld (e.g. letter, memorandum, handwritten notes, marginalia, etc.), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the U.S. Attorney's Office, and potentially the Court, to assess the validity of the claim of privilege.

G.     No documents provided in response to this subpoena shall be produced in redacted form unless the redaction is for a claim of privilege, and such redaction is identified on the privilege log addressed in Paragraph F. Specifically, documents provided in response to this subpoena shall not be redacted on the grounds that another drug, other than the listed Drugs, is mentioned in the document, as such information is relevant for comparative purposes.

H.     All documents provided in response to this subpoena are to be the original documents and are to include all copies that differ in any respect (such as marginalia and/or notations), and are to include all markings and post-it notes and other similar documents attached thereto, as well as all attachments referred to or incorporated by the documents.

I.     The words "and" and "or" in this subpoena shall be read in both the conjunctive and the disjunctive (i.e., "and/or"), so as to give the document request its broadest meaning.

J.     Relevant time period: Unless otherwise indicated, the relevant time period for each document request in this subpoena shall be January 1, 1991 to the present, and shall include all documents created or prepared during that period, or referring or relating to that period, regardless of when the document was created or prepared.

K.     If any document, information or data called for by this subpoena exists as, or can be retrieved from, information stored in computerized form, then you are directed to produce the information in computerized form, including sufficient identification of the applicable software program to permit access to, and use of, the document.

L.     Scope of search required: This subpoena calls for all documents in the possession, custody or control of the Company, as defined above, including, but not limited to, its officers, directors, employees, agents, consultants and contractors. The Company is required to search all files reasonably likely to contain responsive documents, including files left behind by former officers, directors, agents and employees. This search must include all offices, including without limitation offices maintained in homes of employees and officers, and including without limitation, offices in any remote locations.

M.     Manner of production: All documents produced in response to this subpoena shall comply with the following instructions:

a.     The Company shall conduct a search for responsive documents in a manner sufficient to identify the source and location where each responsive document is found.

b.     All documents produced in response to this subpoena shall be segregated and labeled to show the document request to which the documents are responsive and the source and location where the document was found.

c.     To the extent that documents are found in file folders and other similar containers which have labels or other identifying information, the documents shall be produced with such file folder and label information intact.

d.     To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in their condition when found.

N.     In the event there are no documents responsive to a particular subpoena request, please specify that the Company has no responsive documents.

O.     If the Company knows of documents it once possessed or controlled, but no longer possesses or controls, which would have been responsive to this subpoena, state what disposition was made of such documents, including identification of the person(s) who are or are believed to be in possession or control of such documents currently.

P.     To facilitate the handling and return of the submitted documents, please mark each page with an identifying logo or the first three letters of your company's name and number each page sequentially beginning with "00001." The marks should be placed in the lower right hand corner of each page but should not obscure any information on the document. All documents should be produced in enclosures bearing the name of your company, the date of the subpoena and the paragraphs of the subpoena to which the documents respond. Use of the foregoing procedure will preserve the identity of all documents submitted by your company and assure their accurate and expeditious return at the conclusion of this investigation or of any proceeding arising from it.

3

## EXHIBIT A

Albuterol Inhalation Aerosal, 17 gm.

Albuterol Inhalation Aerosal (refill), 17 gm.

## SCHEDULE B TO SUBPOENA DUCES TECUM

1.      Such documents as will show, for the Company: (a) the date it was incorporated; (b) the state in which it was incorporated; (c) its name at the time of its incorporation; and (d) each change in its name or state of incorporation and the date of such change.

2.      Such documents as will show for the Company for the period covered by this subpoena:  (a) the name of each person who has served as a director and/or an officer; (b) each such person's current business and residence address; (c) the time period such person served as a director and/or an officer; and (d) the title of the director and/or officer.

3.      Such documents as will show for the relevant period the following information as to each of the Company's subsidiaries, divisions, and affiliates: (a) name; (b) date and state of incorporation; (c) current principal place of business; (d) name at the time of incorporation, if different than the current name; and (e) all changes in name or state of incorporation and the date of such change.

4.      One copy of each table of organization, organization chart or other similar document showing the lines of authority or reporting responsibilities for the officers, executives, supervisors, employees, consultants, independent contractors, distributors, and agents of the Company during the relevant time period.  This specification is limited to Dey, Inc. and Dey Laboratories, Inc., and their predecessor corporations.

5.      Such documents as will show for the relevant period the following information for each of the Company's current and former officers, executives, supervisors, employees, consultants, independent contractors, distributors, and agents: (a) name; (b) residential and business addresses; (c) position; (d) date of hire or date of contract; and (e) termination date. This specification is limited to Dey, Inc. and Dey Laboratories, Inc., and their predecessor corporations.

6.      For each year from 1991 to the present, provide all documents that reflect or evidence the annual breakdown of purchasing data for purchasers of the Drugs that have entered contracts with the Company, including the units sold and the purchase price, net of all rebates, discounts, or price reductions.  This request excludes invoices.

7.      For each year from 1991 to the present, provide all documents that reflect or evidence the annual breakdown of purchasing data for purchasers of the Drugs that have not entered  contracts with the Company, including the units sold and the purchase price, net of all rebates, discounts, or price reductions.  This request excludes invoices.

8.      All documents constituting, referring or relating to the Company's document retention and destruction policy during the relevant time period.

5

9.     All documents constituting contracts or agreements, or drafts thereof, with all governmental entities, health maintenance organizations, hospitals, and buying groups or consortiums for the sale of any of the Drugs.

10.    All documents constituting, referring or relating to the Medicaid Rebate Agreement between the Company and (a) the Health Care Financing Administration and (b) any state regulatory authority. The time period of this specification is 1990 to the present. This request excludes invoices.

11.    All documents constituting, referring or relating to all contracts or agreements between the Company and any wholesaler regarding or relating to the Drugs, including any documents constituting, referring or relating to negotiations concerning such contracts of agreements. The time period of this request is 1990 to the present.

12.    All documents constituting, referring, evidencing, or relating to all monthly reports, referring or relating to the Drugs, from national and regional account managers and managed care market managers.

13.    All documents constituting, referring, evidencing or relating to projections, analyses, or reports of actual or projected revenue and/or actual and/or projected profit from sales of any of the Drugs by the Company, including, but not limited to, any review and assessment of profit margins regarding the Drugs. This includes the actual per unit cost of production for the Drugs.

14.    All documents constituting, referring, evidencing or relating to projections, analyses, or reports of actual or projected revenue and/or actual or projected profit for any purchaser of the Drugs, including but not limited to, any health maintenance organization ("HMO"), group purchasing organization ("GPO"), retail pharmacy, and/or hospital.

15.    All documents constituting, referring or relating to projections, analyses, and reports of actual or projected Medicaid reimbursement for any purchaser of the Drugs, including but not limited to, any HMO, GPO, retail pharmacy, and/or hospital, in connection with the actual or projected sale of any of the Drugs.

16.    All documents constituting, referring or relating to the training, advising, or instruction of employees, officers, distributors, contractors or sales personnel regarding or relating to the reporting of Wholesale Acquisition Cost ("WAC").

17.    All documents which discuss, interpret, define, describe, relate or refer to the meaning of the term Wholesale Acquisition Cost or WAC.

18.    All invoices reflecting the Best Price for the Drugs for each quarter beginning January 1, 1991.

6

19.    All documents constituting, referring or relating to the training, advising, or instruction of employees, officers, distributors, contractors or sales personnel regarding or relating to the Medicaid reimbursement system for pharmaceutical drugs.

20.    All documents constituting, referring or relating to internal audits or analyses, conducted by the Company or outside auditors regarding whether the Company's reporting of WAC complies with federal and state law and regulations, including but not limited to those pertaining to the Medicare and Medicaid programs, Food and Drug Administration, Veteran's Administration, and Department of Defense.

22.    All documents that mention, reflect or refer to any of the Company's competitors -- or any other companies involved in the manufacturing of pharmaceuticals -- regarding, referring, or evidencing uses, interpretations, and/or reporting of WAC, Average Wholesale Price ("AWP"), Estimated Acquisition Price ("EAP"), Estimated Acquisition Cost ("EAC"), Best Price, or Medicaid reimbursement.

23.    All documents that constitute, discuss or refer to any complaints, lawsuits or administrative actions by or against the Company involving EAP, EAC, AWP, WAC, or Medicaid reimbursement.

24.    Minutes of all meetings of all supervisory groups and all executive meetings of the Company that mention, refer to, or regard any of the Drugs and/or WAC. This specification is limited to supervisory groups and executive meetings within Dey, Inc. and Dey Laboratories, Inc., and their predecessor corporations.

25.    All documents constituting, referring or relating to the calculation, reporting, or setting of AWP, WAC, EAP, EAC, Average Manufacturer Price ("AMP"), Direct Price, and Best Price of any of the Drugs.

26.    All documents constituting, referring or relating to the quarterly reports submitted to the Health Care Financing Administration by the Company relating or referring to the Drugs. This specification includes, without limitation, documents sufficient to show the Best Price as reported to the Health Care Financing Administration for the Drugs.

27.    All documents constituting, referring or relating to communications, whether internal, external or by proxy, regarding the calculation or setting of the Average Wholesale Price, Wholesale Acquisition Cost, the Actual Acquisition Price, Estimated Acquisition Price, Actual Acquisition Cost, Estimated Acquisition Cost, the Direct Price, the Average Manufacturer's Price, and/or the Best Price of any of the Drugs to the Healthcare Financing Administration, the Department of Health and Human Services, Medicare, the United States Congress, Congressional committees and representatives, Congressional branches, and/or state regulatory authorities and agencies.

7

28.    All documents constituting, referring or relating to the impact of WAC reporting on Medicaid reimbursement to any purchaser of pharmaceutical drugs, including but not limited to the Drugs.

29.    All catalogs, including on-line catalogs, listings, or advertisements, provided to HMOs, retail pharmacies, and/or GPOs, concerning any of the Drugs.

30.    All documents that mention, reflect, or evidence any of the Company's competitors for market share in the sub-market for the Drugs, including surveys, marketing proposals, and sales projections.

31.    All documents that mention, reflect, or evidence any drug manufacturer's market share for any of the Drugs, including surveys, marketing proposals, and sales projections.

32.    All documents that mention, evidence, or reflect any chargeback arrangement in which the Company has participated in with any wholesaler of the Drugs.

33.    All documents that mention, evidence, or reflect any rebate or discount arrangement in which the Company has participated in with any wholesaler of the Drugs.

34.    All documents that mention, evidence, or reflect the "spread" or difference between the actual acquisition cost or purchase price of any pharmaceutical drug, including but not limited to the Drugs, by a retailer, and the reimbursement rate paid by third party payors, including Medicaid, Medicare, and private insurers.

35.    All documents that mention, evidence, reflect or refer to communications with or from any person or entity engaged in publishing drug prices (e.g., Average Wholesale Price, Direct Price, Wholesale Acquisition Cost), including First Data Bank, Medical Economics and Medi-Span, regarding Wholesale Acquisition Cost generally, or the Wholesale Acquisition Cost of any of the Drugs.

36.    All documents that constitute, mention, evidence or reflect any procedures used by the Company to calculate, set, report, and/or verify price information regarding the Drugs.

37.    All documents that constitute, mention, evidence or reflect any procedures used by the Company to calculate or set actual prices charged to purchasers of the Drugs.

## SCHEDULE C

United States Attorney's Office
John Williams Coast Guard Building
Health Care Fraud Unit, Room 530
408 Atlantic Avenue
Boston, MA 02110

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

### SUBPOENA DUCES TECUM

TO:   Custodian of Records
Dey Inc. and Dey Laboratories, Inc.
2751 Napa Valley Corporate Drive
Napa, CA 94558

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE* _____
*Assistant U.S. Attorney George Vien*

*official of the U.S. Department of Justice, and you are hereby required to bring with you and produce the following:*

### See attached Schedules A and B

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate: 18 U.S.C. §§669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

## PLACE AND TIME FOR APPEARANCE:

At the place specified on Schedule C, on September 29, 2000, at 10:00 a.m.

*In lieu of answering at the date and time specified, you may comply with this subpoena by, at your option, causing the materials described to be delivered to the agent serving this subpoena or by causing such materials to be mailed to Assistant U.S. Attorney George Vien at the United States Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02210. Any questions, contact Assistant U.S. Attorney George Vien at 617-748-3236.*

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-51
(18 U.S.C. § 3486)



IN TESTIMONY WHEREOF

_MICHAEL E. LOUCKS_
the undersigned official of the U.S.
DEPARTMENT OF JUSTICE, has hereunto
set his Hand this ____ th day of August, 2000

(SIGNATURE)

UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE

SUBPOENA DUCES TECUM

Upon contumacy or refusal to obey, this
subpoena shall be enforceable, by order of the
appropriate United States District Court

RETURN OF SERVICE

rson over 18 years of age, hereby
a copy of this subpoena was duly
he person named herein by means of ...

sonal delivery to an individual, to wit:

_____
(Name)

_____
(Title)

_____
(Address)

rsonal delivery to an address, to wit:

_____
(Description of premises)

_____
(Address)

gistered or certified mailing to:
IAN OF RECORDS
IC WE DEY LABORATORIES, INC.
(Name)
NAPA VALLEY CORPORATE WAY
(Address)
CA 94558

a.m.
p.m. on 03/29/2000
_____

## SCHEDULE A TO SUBPOENA DUCES TECUM

### I.   INSTRUCTIONS AND DEFINITIONS

A.    "Document(s)" means, without limitation, any written, printed, typed, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings and the backsides of any communication or representation which contain any of the above.

By way of example, "document(s)" includes, but is not limited to: correspondence; memoranda; notes; drafts; records; letters; envelopes; telegrams; messages; electronic mail; analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; notices; drawings; diagrams; instructions; manuals; calendars; diaries; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or company communications; questionnaires; surveys; charts; graphs; photographs; films or videos; tapes; discs; data cells; bulletins; printouts of information stored, maintained, or transmitted by electronic data or word processing equipment; electronic claims filing and transmittals, invoices, all other data compilations from which information can be obtained including electromagnetically sensitive stored media such as floppy discs, hard discs, hard drives and magnetic tapes; laptop computers issued to officers and employees; and any preliminary versions, drafts or revisions of any of the foregoing.

B.    The "Company" means any and all of the following: Dey, Inc. or Dey Laboratories, Inc., and any predecessors, parents, subsidiaries affiliates, segments, divisions, and any present or former officers, directors, employees, consultants, contractors, agents, or members of the board of directors.

C.    The term "Drugs" means the brand name, trade name, or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

D.    Documents required by this Authorized Investigative Demand ("subpoena") shall be produced to the identified officials of the United States Department of Justice at the time and place indicated on the subpoena.

E.    The recipient of this subpoena shall identify a qualified custodian of records who will be available to testify at the place and time indicated, concerning the production and authentication of documents and records required to be produced by this subpoena.

F.    If a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced on the basis of such claim, for each such document or part thereof that is not produced, you are directed to provide a privilege log wherein you identify the type of document being withheld (e.g. letter, memorandum, handwritten notes, marginalia, etc.), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the U.S. Attorney's Office, and potentially the Court, to assess the validity of the claim of privilege.

G.    No documents provided in response to this subpoena shall be produced in redacted form unless the redaction is for a claim of privilege, and such redaction is identified on the privilege log addressed in Paragraph F. Specifically, documents provided in response to this subpoena shall not be redacted on the grounds that another drug, other than the listed Drugs, is mentioned in the document, as such information is relevant for comparative purposes.

H.·   All documents provided in response to this subpoena are to be the original documents and are to include all copies that differ in any respect (such as marginalia and/or notations), and are to include all markings and post-it notes and other similar documents attached thereto, as well as all attachments referred to or incorporated by the documents.

I.    The words "and" and "or" in this subpoena shall be read in both the conjunctive and the disjunctive (i.e., "and/or"), so as to give the document request its broadest meaning.

J.    Relevant time period: Unless otherwise indicated, the relevant time period for each document request in this subpoena shall be January 1, 1991 to the present, and shall include all documents created or prepared during that period, or referring or relating to that period, regardless of when the document was created or prepared.

K.    If any document, information or data called for by this subpoena exists as, or can be retrieved from, information stored in computerized form, then you are directed to produce the information in computerized form, including sufficient identification of the applicable software program to permit access to, and use of, the document.

L.    Scope of search required: This subpoena calls for all documents in the possession, custody or control of the Company, as defined above, including, but not limited to, its officers, directors, employees, agents, consultants and contractors. The Company is required to search all files reasonably likely to contain responsive documents, including files left behind by former officers, directors, agents and employees. This search must include all offices, including without limitation offices maintained in homes of employees and officers, and including without limitation, offices in any remote locations.

M.    Manner of production: All documents produced in response to this subpoena shall comply with the following instructions:

2

a.  The Company shall conduct a search for responsive documents in a manner sufficient to identify the source and location where each responsive document is found.

b.  All documents produced in response to this subpoena shall be segregated and labeled to show the document request to which the documents are responsive and the source and location where the document was found.

c.  To the extent that documents are found in file folders and other similar containers which have labels or other identifying information, the documents shall be produced with such file folder and label information intact.

d.  To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in their condition when found.

N.  In the event there are no documents responsive to a particular subpoena request, please specify that the Company has no responsive documents.

O.  If the Company knows of documents it once possessed or controlled, but no longer possesses or controls, which would have been responsive to this subpoena, state what disposition was made of such documents, including identification of the person(s) who are or are believed to be in possession or control of such documents currently.

P.  To facilitate the handling and return of the submitted documents, please mark each page with an identifying logo or the first three letters of your company's name and number each page sequentially beginning with "00001." The marks should be placed in the lower right hand corner of each page but should not obscure any information on the document. All documents should be produced in enclosures bearing the name of your company, the date of the subpoena and the paragraphs of the subpoena to which the documents respond. Use of the foregoing procedure will preserve the identity of all documents submitted by your company and assure their accurate and expeditious return at the conclusion of this investigation or of any proceeding arising from it.

## EXHIBIT A

Albuterol Inhalation Aerosol, 17 gm.

Albuterol Inhalation Aerosal (refill), 17 gm.

## SCHEDULE B TO SUBPOENA DUCES TECUM

1.      Such documents as will show, for the Company: (a) the date it was incorporated; (b) the state in which it was incorporated; (c) its name at the time of its incorporation; and (d) each change in its name or state of incorporation and the date of such change.

2.      Such documents as will show for the Company for the period covered by this subpoena: (a) the name of each person who has served as a director and/or an officer; (b) each such person's current business and residence address; (c) the time period such person served as a director and/or an officer; and (d) the title of the director and/or officer.

3.      Such documents as will show for the relevant period the following information as to each of the Company's subsidiaries, divisions, and affiliates: (a) name; (b) date and state of incorporation; (c) current principal place of business; (d) name at the time of incorporation, if different than the current name; and (e) all changes in name or state of incorporation and the date of such change.

4.      One copy of each table of organization, organization chart or other similar document showing the lines of authority or reporting responsibilities for the officers, executives, supervisors, employees, consultants, independent contractors, distributors, and agents of the Company during the relevant time period. This specification is limited to Dey, Inc. and Dey Laboratories, Inc., and their predecessor corporations.

5.      Such documents as will show for the relevant period the following information for each of the Company's current and former officers, executives, supervisors, employees, consultants, independent contractors, distributors, and agents: (a) name; (b) residential and business addresses; (c) position; (d) date of hire or date of contract; and (e) termination date. This specification is limited to Dey, Inc. and Dey Laboratories, Inc., and their predecessor corporations.

6.      For each year from 1991 to the present, provide all documents that reflect or evidence the annual breakdown of purchasing data for purchasers of the Drugs that have entered contracts with the Company, including the units sold and the purchase price, net of all rebates, discounts, or price reductions. This request excludes invoices.

7.      For each year from 1991 to the present, provide all documents that reflect or evidence the annual breakdown of purchasing data for purchasers of the Drugs that have not entered contracts with the Company, including the units sold and the purchase price, net of all rebates, discounts, or price reductions. This request excludes invoices.

8.      All documents constituting, referring or relating to the Company's document retention and destruction policy during the relevant time period.

9.      All documents constituting contracts or agreements, or drafts thereof, with all governmental entities, health maintenance organizations, hospitals, and buying groups or consortiums for the sale of any of the Drugs.

10.     All documents constituting, referring or relating to the Medicaid Rebate Agreement between the Company and (a) the Health Care Financing Administration and (b) any state regulatory authority. The time period of this specification is 1990 to the present. This request excludes invoices.

11.     All documents constituting, referring or relating to all contracts or agreements between the Company and any wholesaler regarding or relating to the Drugs, including any documents constituting, referring or relating to negotiations concerning such contracts of agreements. The time period of this request is 1990 to the present.

12.     All documents constituting, referring, evidencing, or relating to all monthly reports, referring or relating to the Drugs, from national and regional account managers and managed care market managers.

13.     All documents constituting, referring, evidencing or relating to projections, analyses, or reports of actual or projected revenue and/or actual and/or projected profit from sales of any of the Drugs by the Company, including, but not limited to, any review and assessment of profit margins regarding the Drugs. This includes the actual per unit cost of production for the Drugs.

14.     All documents constituting, referring, evidencing or relating to projections, analyses, or reports of actual or projected revenue and/or actual or projected profit for any purchaser of the Drugs, including but not limited to, any health maintenance organization ("HMO"), group purchasing organization ("GPO"), retail pharmacy, and/or hospital.

15.     All documents constituting, referring or relating to projections, analyses, and reports of actual or projected Medicaid reimbursement for any purchaser of the Drugs, including but not limited to, any HMO, GPO, retail pharmacy, and/or hospital, in connection with the actual or projected sale of any of the Drugs.

16.     All documents constituting, referring or relating to the training, advising, or instruction of employees, officers, distributors, contractors or sales personnel regarding or relating to the reporting of Wholesale Acquisition Cost ("WAC").

17.     All documents which discuss, interpret, define, describe, relate or refer to the meaning of the term Wholesale Acquisition Cost or WAC.

18.     All invoices reflecting the Best Price for the Drugs for each quarter beginning January 1, 1991.

6

19.    All documents constituting, referring or relating to the training, advising, or instruction of employees, officers, distributors, contractors or sales personnel regarding or relating to the Medicaid reimbursement system for pharmaceutical drugs.

20.    All documents constituting, referring or relating to internal audits or analyses, conducted by the Company or outside auditors regarding whether the Company's reporting of WAC complies with federal and state law and regulations, including but not limited to those pertaining to the Medicare and Medicaid programs, Food and Drug Administration, Veteran's Administration, and Department of Defense.

22.    All documents that mention, reflect or refer to any of the Company's competitors -- or any other companies involved in the manufacturing of pharmaceuticals -- regarding, referring, or evidencing uses, interpretations, and/or reporting of WAC, Average Wholesale Price ("AWP"), Estimated Acquisition Price ("EAP"), Estimated Acquisition Cost ("EAC"), Best Price, or Medicaid reimbursement.

23.    All documents that constitute, discuss or refer to any complaints, lawsuits or administrative actions by or against the Company involving EAP, EAC, AWP, WAC, or Medicaid reimbursement.

24.    Minutes of all meetings of all supervisory groups and all executive meetings of the Company that mention, refer to, or regard any of the Drugs and/or WAC. This specification is limited to supervisory groups and executive meetings within Dey, Inc. and Dey Laboratories, Inc., and their predecessor corporations.

25.    All documents constituting, referring or relating to the calculation, reporting, or setting of AWP, WAC, EAP, EAC, Average Manufacturer Price ("AMP"), Direct Price, and Best Price of any of the Drugs.

26.    All documents constituting, referring or relating to the quarterly reports submitted to the Health Care Financing Administration by the Company relating or referring to the Drugs. This specification includes, without limitation, documents sufficient to show the Best Price as reported to the Health Care Financing Administration for the Drugs.

27.    All documents constituting, referring or relating to communications, whether internal, external or by proxy, regarding the calculation or setting of the Average Wholesale Price, Wholesale Acquisition Cost, the Actual Acquisition Price, Estimated Acquisition Price, Actual Acquisition Cost, Estimated Acquisition Cost, the Direct Price, the Average Manufacturer's Price, and/or the Best Price of any of the Drugs to the Healthcare Financing Administration, the Department of Health and Human Services, Medicare, the United States Congress, Congressional committees and representatives, Congressional branches, and/or state regulatory authorities and agencies.

7



28. All documents constituting, referring or relating to the impact of WAC reporting on Medicaid reimbursement to any purchaser of pharmaceutical drugs, including but not limited to the Drugs.

29. All catalogs, including on-line catalogs, listings, or advertisements, provided to HMOs, retail pharmacies, and/or GPOs, concerning any of the Drugs.

30. All documents that mention, reflect, or evidence any of the Company's competitors for market share in the sub-market for the Drugs, including surveys, marketing proposals, and sales projections.

31. All documents that mention, reflect, or evidence any drug manufacturer's market share for any of the Drugs, including surveys, marketing proposals, and sales projections.

32. All documents that mention, evidence, or reflect any chargeback arrangement in which the Company has participated in with any wholesaler of the Drugs.

33. All documents that mention, evidence, or reflect any rebate or discount arrangement in which the Company has participated in with any wholesaler of the Drugs.

34. All documents that mention, evidence, or reflect the "spread" or difference between the actual acquisition cost or purchase price of any pharmaceutical drug, including but not limited to the Drugs, by a retailer, and the reimbursement rate paid by third party payors, including Medicaid, Medicare, and private insurers.

35. All documents that mention, evidence, reflect or refer to communications with or from any person or entity engaged in publishing drug prices (e.g., Average Wholesale Price, Direct Price, Wholesale Acquisition Cost), including First Data Bank, Medical Economics and Medi-Span, regarding Wholesale Acquisition Cost generally, or the Wholesale Acquisition Cost of any of the Drugs.

36. All documents that constitute, mention, evidence or reflect any procedures used by the Company to calculate, set, report, and/or verify price information regarding the Drugs.

37. All documents that constitute, mention, evidence or reflect any procedures used by the Company to calculate or set actual prices charged to purchasers of the Drugs.

## SCHEDULE C

United States Attorney's Office
John Williams Coast Guard Building
Health Care Fraud Unit, Room 530
408 Atlantic Avenue
Boston, MA 02110

**U.S. Department of Justice**



*United States Attorney*
*District of Massachusetts*

---

*Direct Line: (617) 748-3355*
*Facsimile: (617) 748-3969*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

October 17, 2001

BY REGULAR MAIL

Stephen Hudspeth
Coudert Brothers
1114 Avenue of the Americas
New York, NY   10036-7703

    RE:  Subpoena Served on Dey Inc. and Dey Laboratories

Dear Mr. Hudspeth:

    As discussed, I enclose a subpoena for data for Dey Inc. and
Dey Laboratories.

    Please do not hesitate to contact me if you would like to
discuss this matter.

                    Very truly yours,

                    Peter K. Levitt

Enclosure

cc:  George Vien

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

## SUBPOENA DUCES TECUM

**TO:**   Custodian of Records
Dey Inc. and Dey Laboratories, Inc.
2751 Napa Valley Corporate Drive
Napa, CA  94558

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE* _____
<u>*Assistant U.S. Attorneys George Vien and Peter Levitt*</u> _____

*official of the U.S. Department of Justice, and you are hereby required to bring with you and produce the following:*

*See attached Schedules A and B*

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate: 18 U.S.C. §§669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

## PLACE AND TIME FOR APPEARANCE:

At the place specified on Schedule C, on November 19, 2001, at 10:00 a.m.

<u>*In lieu of answering at the date and time specified,*</u> *you may comply with this subpoena by, at your option, causing the materials described to be delivered to the agent serving this subpoena or by causing such materials to be mailed to Assistant U.S. Attorney Peter Levitt at the United States Attorney's Office, John Williams Coast Guard Building, Health Care Fraud Unit, Room 530, 408 Atlantic Avenue Boston, MA 02210. Any questions, contact Assistant U.S. Attorneys George Vien, at 617-748-3236, or Peter Levitt, at 617-748-3355.*

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



*IN TESTIMONY WHEREOF*

_____<u>MICHAEL K. LOUCKS</u>_____
*the undersigned official of the U.S.*
*DEPARTMENT OF JUSTICE, has hereunto*
*set his hand this 11th day of October, 2001*

_____
(SIGNATURE)

UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE

SUBPOENA DUCES TECUM

*Upon contumacy or refusal to obey, this subpoena shall be enforceable by order of the appropriate United States District Court.*

RETURN OF SERVICE

I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of --

1.  personal delivery to an individual, to wit:

_____
*(Name)*

_____
*(Title)*

_____
*(Address)*

2.  personal delivery to an address, to wit:

_____
*(Description of premises)*

_____
*(Address)*

_____

_____

3.  registered or certified mailing to:

_____
*(Name)*

_____
*(Address)*

at ____  ( ) a.m.
        ( ) p.m. on _____

_____
*(Signature)*

_____
*(Title)*

## SCHEDULE A TO SUBPOENA DUCES TECUM

## I.    INSTRUCTIONS AND DEFINITIONS

A.    The "Company" means any and all of the following:  Dey, Inc. or Dey Laboratories, Inc., and any predecessors, parents, subsidiaries, affiliates, segments, divisions, and any present or former officers, directors, employees, consultants, contractors, agents, or members of the board of directors.

B.    The term "drugs" means the brand name, trade name, or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) that may have been produced, sold, offered for sale or assigned an NDC number.

C.    The term "dead net" price means the actual price the Company sells product to a customer, including but not limited to all sources of departure from list price, such as rebates, prebates, discounts, credits, charge backs, cash payments, free goods, samples, and "stocking allowance."  To the extent the Company ascribes a different meaning to the term "dead net" price per unit, then the term shall also, in addition to the meaning above, be defined as have the meaning ascribed to it by the Company in Company documents.

D.    The terms "stocking allowance" or "distribution allowance" means payments, discounts, and/or credits given by the Company to a customer that buys product and stocks it at the customer's facility and/or payments, discounts, and/or credits purportedly given to a customer to offset costs associated with switching from another manufacturer's drugs to those manufactured by the Company.

E.    The term "non-wholesaler customer" means all class of trade customers other than wholesalers (e.g., retailers, HMOs, hospitals, etc.)

F.    The term "SKU" means "stock keeping unit" for each package size, and dose strength of each product.

# **EXHIBIT A**

Albuterol Inhalation Aerosal

## SCHEDULE B TO SUBPOENA DUCES TECUM

This subpoena requests the following information in **electronic database form**, not electronic page image form, except where otherwise specified. All information maintained on personal computers shall be provided on standard Windows-accessible media, such as diskette, CD-ROM, Zip disk, or JAZ disk. Information not maintained on personal computers shall be transmitted on standard media (e.g., mainframe electronic tape). If the information is maintained both on personal computers and other computers (e.g., mainframe servers) shall be transmitted in both formats. If information is transmitted in a proprietary format that is not accessible by publicly available software packages, the software to read the information shall be provided.

If the information is provided in a generic format, the Company shall also provide a complete and accurate description of the data layout. The Company shall also provide control-total information, including the number of records and sums for selected numeric variables, for each file transmitted.

In addition to the electronic information, the Company shall provide a complete and accurate description of the information, such as a data dictionary. This description shall include translation tables for all fields that contain coded values. The respondent shall also provide a description of each file, specifying the scope and time period of the information contained.

1. For all Drugs sold and/or shipped in the United States for the period 1991 to the present on an annual basis, to each customer of the Company (including all non-wholesaler and wholesaler customers):

   a. Provide copies of all contracts or arrangements with customers and amendments thereto, including all information on agreed to contract prices (including information on discounts, rebates, "prebates", free goods, "stocking allowances" and any other incentive) with customer identifying information including but not limited to:
      * Name of customer
      * Address of customer, including city, state, and zip code
      * Customer Medicare and/or Medicaid number

   These contracts and customer information should be sent in printed form.

2. For all Drugs sold and/or shipped directly to each non-wholesaler customer in the United States for the period 1991 to the present, on an annual basis, the following information:

   a. Date of the invoice, credit memo, or other financial record of the transaction or account adjustment
   b. Name of customer
   c. Address of customer, including city, state, and zip code
   d. Trade class of customer

  e.  Customer Medicare and/or Medicaid number

  f.  Total amount billed on invoice

  g.  Total amount of all discounts, and other adjustments, credits whether or not attributed to a specific SKU

  h.  For each non-SKU items (e.g., shipping charges, credits), include any other charges or credits appearing on the invoice not attributable to a particular product sold.

For each line item listed on a specific invoice include:

  i.  Line item description including package description, NDC code, and number of such NDC-coded items included in the package

  j.  Number of units purchased or returned

  k.  Per unit price billed before any departures from list price (e.g., discounts, rebates, "prebates," free goods)

  l.  The "dead net" price per unit price shipped or returned, after any departures from list price (e.g., discounts, rebates, "prebates," free goods)

  m.  Total amount billed

3.  For all other transactions with each non-wholesaler customer in the United States (e.g., monthly, quarterly, or periodic rebate checks, including records of Rapidraft payments) for the period 1991 to the present:

  a.  Date of transaction

  b.  Name of customer

  c.  Address of customer, including city, state, and zip code

  d.  Trade class of customer

  e.  Customer Medicare and/or Medicaid number

  f.  Itemized description of transaction (e.g., rebates, free goods, discounts, stocking allowances, performance related incentives, credits, prompt payment discounts)

  g.  Amount of each transaction (e.g., amount of payment, credit, free goods allowance)

4.  For all Drugs sold and/or shipped to each wholesaler customer in the United States for the period 1991 to the present, the following information:

  a.  All reports, financial statements, and other information the Company receives from wholesalers regarding wholesaler's sales of the Drugs to the wholesaler's customers in connection with those customers' contracts with the Company. This information includes units of the Drugs and/or other products sold, by NDC and/or other relevant tracking identification code, by quarter.

        b.     Actual payments by the Company to each non-wholesaler customer by NDC and/or other relevant tracking identification code, by quarter.

5.     Data on units of the Drugs not invoiced or for which no charge was incurred (e.g., free goods or "free goods allowance", free samples, and units provided through a compassionate drug program) and distributed in the United States for the period 1991 to the present, as it relates to non-wholesaler customers, including:

        a.     Name of customer
        b.     Address of customer, including city, state, and zip code
        c.     Trade class of customer
        d.     Customer Medicare and/or Medicaid number
        e.     Date on which units of the Drugs not invoiced were supplied to customer
        f.     Number of units supplied to customer, by formulation
        g.     Total dollar value of units

6.     Data on "stocking allowances" or "distribution allowances" provided to non-wholesaler customers in the United States for the period 1991 to the present, including:

        a.     Name of customer
        b.     Address of customer, including city, state, and zip code
        c.     Trade class of customer
        d.     Customer Medicare and/or Medicaid number
        e.     Date on which the stocking allowance was provided to customer
        f.     Date on which units associated with the stocking allowance were provided to customer
        g.     Number of units supplied to customer, by formulation
        h.     Total dollar value of units
        i.     Total dollar value of stocking allowance

7.     From 1991 to the present, all Wholesale List Prices ("WLPs") for the Drugs, including the dates of any changes to the Wholesale List Price. Provide backup documents (i.e., letters to FirstData Bank and other reporting services) in sequential order, reflecting the reporting of WLPs and/or the request for changes to Average Wholesale Price and/or Wholesale Acquisition Cost.

8.     From 1991 to the present, all Wholesale Acquisition Cost data for the Drugs, including the dates of any changes to the Wholesale Acquisition Cost.

9.     From 1991 to the present, all Average Wholesale Price data for the Drugs, including the dates of any changes to the Average Wholesale Price.

10.     From 1991 to the present, all Average Manufacturer Price ("AMP") data for the Drugs, including the dates of any changes to the AMP. Provide all documents constituting and/or reflecting the reporting of AMP to the state or federal government.

11.     From 1991 to the present, all documents concerning any special offer relating or referring to any of the Drugs. This information should not be provided in electronic format.

12.     Any database or spreadsheet maintained by the Company to track rebates, prebates, discounts, free goods, stocking allowances, and any other form of payment provided to customers of the Company. This information should be provided in both printed form and electronic form.

## SCHEDULE C

United States Attorney's Office
John Williams Coast Guard Building
Health Care Fraud Unit, Room 530
408 Atlantic Avenue
Boston, MA 02110

05/20/03   10:28 FAX   @002

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

### SUBPOENA DUCES TECUM

**TO:   Dey Laboratories**
c/o Martin F. Murphy, Esquire

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE <u>Assistant U.S. Attorneys James J. McGovern and Eugenia Carris</u> officials of the U.S. Department of Justice, and you are hereby required to bring with you and produce the following:*

*See attached Schedules A and B*

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate: 18 U.S.C. §§669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

### PLACE AND TIME FOR APPEARANCE:

At the place specified on Schedule C, on June 15, 2003, at 10:00 a.m.

*<u>In lieu of answering at the date and time specified</u>, you may comply with this subpoena by, at your option, causing the materials described to be delivered to the agent serving this subpoena or by causing such materials to be mailed to Assistant U.S. Attorney James J. McGovern at the United States Attorney's Office, Health Care Fraud Unit 408 Atlantic Avenue, Room 530, Williams Building, Boston, MA 02109. Any questions, contact Assistant U.S. Attorney James J. McGovern at 617-748-3100 or Assistant U.S. Attorney Eugenia Carris at 617-748-3376.*

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



IN TESTIMONY WHEREOF

MICHAEL K. LOUCKS
the undersigned official of the U.S.
DEPARTMENT OF JUSTICE, has hereunto
set his hand this        th day of May, 2003

(SIGNATURE)

FORM CRM-180
MAR

05/20/03, 10:28 FAX                                    @003

UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE

SUBPOENA DUCES TECUM

*Upon contumacy or refusal to obey, this subpoena shall be enforceable by order of the appropriate United States District Court.*

RETURN OF SERVICE

being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of —

1. personal delivery to an individual, to wit:

_____
(Name)

_____
(Title)

_____
(Address)

2. personal delivery to an address, to wit:

_____
(Description of premises)

_____
(Address)

3. registered or certified mailing to:

_____
(Name)

_____
(Address)

at _____   ( ) a.m.
          ( ) p.m. on

_____
(Signature)

_____
(Title)

## SCHEDULE A TO SUBPOENA DUCES TECUM

### I.     INSTRUCTIONS AND DEFINITIONS

A.     "Document(s)" means, without limitation, any written, printed, typed, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof.  This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings and the backsides of any communication or representation which contain any of the above.

By way of example, "document(s)" includes, but is not limited to:  correspondence; memoranda; notes; drafts; records; letters; envelopes; telegrams; messages; electronic mail (including hard drives); analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; notices; drawings; diagrams; instructions; manuals; calendars; diaries; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or company communications; questionnaires; surveys; charts; graphs; photographs; films or videos; tapes; discs; data cells; bulletins; printouts of information stored, maintained, or transmitted by electronic data or word processing equipment; electronic claims filing and transmittals, invoices, all other data compilations from which information can be obtained including electromagnetically sensitive stored media such as floppy discs, hard discs, hard drives and magnetic tapes; laptop computers issued to officers and employees; and any preliminary versions, drafts or revisions of any of the foregoing.

B.     The "Company" means any and all of the following: *DEY LABORATORIES* and any predecessors, parents, subsidiaries affiliates, segments, divisions, and any present or former officers, directors, employees, consultants, contractors, agents, or members of the board of directors.

C.     The term "Drugs" means the brand name, trade name, or generic products *Albuterol Inhalation, Cromolyn Sulfate and Ipratropium Bromide* and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, dilutence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

D.     Documents required by this Authorized Investigative Demand ("subpoena") shall be produced to the identified officials of the United States Department of Justice at the time and place indicated on the subpoena.

E.     The recipient of this subpoena shall identify a qualified custodian of records who will be available to testify at the place and time indicated, concerning the production and authentication of documents and records required to be produced by this subpoena.

1

F.      If a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced on the basis of such claim, for each such document or part thereof that is not produced, you are directed to provide a privilege log wherein you identify the type of document being withheld (e.g. letter, memorandum, handwritten notes, marginalia, etc.), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the U.S. Attorney's Office, and potentially the Court, to assess the validity of the claim of privilege.

G.      No documents provided in response to this subpoena shall be produced in redacted form unless the redaction is for a claim of privilege, and such redaction is identified on the privilege log addressed in Paragraph F. Specifically, documents provided in response to this subpoena shall not be redacted on the grounds that another drug, other than the listed Drugs, is mentioned in the document, as such information is relevant for comparative purposes.

H.      All documents provided in response to this subpoena are to be provided in electronic base format  and are to include all items that differ in any respect (such as marginalia and/or notations), and are to include all markings and  post-it notes and other similar documents attached thereto, as well as all attachments referred to or incorporated by the documents. *Whatever electronic base format is provided by the Company, the format shall be searchable by the use of key terms.*

I.      The words "and" and "or" in this subpoena shall be read in both the conjunctive and the  disjunctive (i.e., "and/or"), so as to give the document request its broadest meaning.

J.      Relevant time period: Unless otherwise indicated, the relevant time period for each document request in this subpoena shall be January 1, 1995 to the present, and shall include all documents created or prepared during that period, or referring or relating to that period, regardless of when the document was created or prepared.

K.      If any document, information or data called for by this subpoena exists as, or can be retrieved from, information stored in computerized form, then you are directed to produce the information in computerized form, including sufficient identification of the applicable software program to permit access to, and use of, the document as well as a dictionary of terms to assist in the review of documents produced.

L.      Scope of search required: This subpoena calls for all documents in the possession, custody or control of the Company, as defined above, including, but not limited to, its officers, directors, employees, agents, consultants and contractors.  The Company is required to search all files reasonably likely to contain responsive documents, including files left behind by former officers, directors, agents and employees.  This search must include all offices, including without limitation offices maintained in homes of employees and officers, and including without limitation, offices in any remote locations.

M.      Manner of production:  All documents produced in response to this subpoena

2

05/20/03  10:29 FAX                                                          ☒ 006

## SCHEDULE A TO SUBPOENA DUCES TECUM

### I.    INSTRUCTIONS AND DEFINITIONS

A.    "Document(s)" means, without limitation, any written, printed, typed, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings and the backsides of any communication or representation which contain any of the above.

By way of example, "document(s)" includes, but is not limited to:  correspondence; memoranda; notes; drafts; records; letters; envelopes; telegrams; messages; electronic mail (including hard drives); analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; notices; drawings; diagrams; instructions; manuals; calendars; diaries; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or company communications; questionnaires; surveys; charts; graphs; photographs; films or videos; tapes; discs; data cells; bulletins; printouts of information stored, maintained, or transmitted by electronic data or word processing equipment; electronic claims filing and transmittals, invoices, all other data compilations from which information can be obtained including electromagnetically sensitive stored media such as floppy discs, hard discs, hard drives and magnetic tapes; laptop computers issued to officers and employees; and any preliminary versions, drafts or revisions of any of the foregoing.

B.    The "Company" means any and all of the following: *DEY LABORATORIES* and any predecessors, parents, subsidiaries affiliates, segments, divisions, and any present or former officers, directors, employees, consultants, contractors, agents, or members of the board of directors.

C.    The term "Drugs" means the brand name, trade name, or generic products *Albuterol Inhalation, Cromolyn Sulfate and Ipratropium Bromide* and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, dilutence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

D.    Documents required by this Authorized Investigative Demand ("subpoena") shall be produced to the identified officials of the United States Department of Justice at the time and place indicated on the subpoena.

E.    The recipient of this subpoena shall identify a qualified custodian of records who will be available to testify at the place and time indicated, concerning the production and authentication of documents and records required to be produced by this subpoena.

F.    If a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced on the basis of such claim, for each such document or part thereof that is not produced, you are directed to provide a privilege log wherein you identify the type of document being withheld (e.g. letter, memorandum, handwritten notes, marginalia, etc.), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the U.S. Attorney's Office, and potentially the Court, to assess the validity of the claim of privilege.

G.    No documents provided in response to this subpoena shall be produced in redacted form unless the redaction is for a claim of privilege, and such redaction is identified on the privilege log addressed in Paragraph F. Specifically, documents provided in response to this subpoena shall not be redacted on the grounds that another drug, other than the listed Drugs, is mentioned in the document, as such information is relevant for comparative purposes.

H.    All documents provided in response to this subpoena are to be provided in electronic base format and are to include all items that differ in any respect (such as marginalia and/or notations), and are to include all markings and post-it notes and other similar documents attached thereto, as well as all attachments referred to or incorporated by the documents. *Whatever electronic base format is provided by the Company, the format shall be searchable by the use of key terms.*

I.    The words "and" and "or" in this subpoena shall be read in both the conjunctive and the disjunctive (i.e., "and/or"), so as to give the document request its broadest meaning.

J.    Relevant time period: Unless otherwise indicated, the relevant time period for each document request in this subpoena shall be January 1, 1995 to the present, and shall include all documents created or prepared during that period, or referring or relating to that period, regardless of when the document was created or prepared.

K.    If any document, information or data called for by this subpoena exists as, or can be retrieved from, information stored in computerized form, then you are directed to produce the information in computerized form, including sufficient identification of the applicable software program to permit access to, and use of, the document as well as a dictionary of terms to assist in the review of documents produced.

L.    Scope of search required: This subpoena calls for all documents in the possession, custody or control of the Company, as defined above, including, but not limited to, its officers, directors, employees, agents, consultants and contractors. The Company is required to search all files reasonably likely to contain responsive documents, including files left behind by former officers, directors, agents and employees. This search must include all offices, including without limitation offices maintained in homes of employees and officers, and including without limitation, offices in any remote locations.

☑008

M.      In the event there are no documents responsive to a particular subpoena request, please specify that the Company has no responsive documents.

N.      If the Company knows of documents it once possessed or controlled, but no longer possesses or controls, which would have been responsive to this subpoena, state what disposition was made of such documents, including identification of the person(s) who are or are believed to be in possession or control of such documents currently.

O. In the event counsel, on behalf of its client, determines that any document is or may be subject to a bona fide privilege, provide the Privilege Log listing any and all such documents. Please identify the document, the nature thereof and the specific privilege asserted.

## SCHEDULE B TO SUBPOENA DUCES TECUM

1.     The complete Chart of Accounts for Dey Laboratories for fiscal years ended 1995 through 2000.

2. The general ledger for Dey Laboratories for fiscal years ended 1995 through 2000.

3.     Detailed financial statements for Dey Laboratories for fiscal years ended 1995 through 2000, with revenue and expense items (as well as contra-revenue and contra-expense items) detailed at the Chart of Accounts level.

4.     All adjusting journal entries, whether instigated by Dey Laboratories its parent, its auditors, or any other person, related to the fiscal years 1995 through 2000, whether or not made during that time period.

5.     All documents describing, referring or relating to the accounting procedure for booking or recording any form of discount or rebate  in connection with any of the Drugs.

6.     All documents describing, referring or relating to the accounting procedure for booking or recording to any stocking allowance or slotting allowance or shelf stock adjustment in connection with any of the Drugs.

7.     All documents describing, referring or relating to the accounting procedure for booking or recording distribution allowance in connection with any of the Drugs.

8.     All documents describing, referring or relating to the accounting procedure for booking or recording any cash payment made to a pharmacy or other retail distributor in connection with any of the Drugs.

9.     All documents describing, referring or relating to the accounting procedure for booking or recording the "dead net" price or the "dead dead net" price for any of the Drugs.

10.     All documents describing, referring or relating to the accounting procedure for booking or recording any administrative fee offered to a pharmacy or other retail distributor in connection with any of the Drugs.

11.     All documents describing, referring or relating to the accounting procedure for booking or recording payments, credits or adjustments  to a pharmacy or other retail distributor for price protection, price differential or write offs in connection with any of the Drugs.

12.     All documents describing, referring or relating to the accounting procedure for booking or recording any payments, credits or adjustments to a pharmacy or other retail distributor in connection with conversion funding related to any of the Drugs.

13. Any and all documentation that establishes the Average Wholesale Price (AWP), the Average Manufacturer's Price ( AMP) and the Wholesale Acquisition Cost ( WAC) for the Drugs for fiscal years ended 1995 through 2000.

14. Any and all data "dictionaries" and/or manuals that can be utilized to interpret data provided in electronic form.

5

05/20/03  10:31 FAX

## SCHEDULE C

United States Attorney's Office
John Williams Coast Guard Building
Health Care Fraud Unit, Room 530
408 Atlantic Avenue
Boston, MA 02110

6