# ATTACHMENT 11

FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 MAR 30 PM 2:17

DISTRICT COURT
N.D. OF ALABAMA

The UNITED STATES OF AMERICA }
ex rel. TERI L. FLANAGAN, }
                               }
        Plaintiff,             }
                               }    CASE NO. CV 97-B-3070-S
v.                             }
                               }
BAPTIST HEALTH SYSTEM, INC.,   }
et al.,                        }    ENTERED
                               }
        Defendant.             }    MAR 3 1

## MEMORANDUM OPINION

Currently before the court is the Defendants' Motion to Dismiss Complaint of the United States in Intervention and Relator's *Qui Tam* Complaint, filed by defendants Baptist Health Systems, Inc. ("BHS"); Coosa Valley Baptist Medical Center; Coosa Valley Home Health, Inc.; Citizens Baptist Medical Center; Cullman Regional Medical Center, Inc.; Cherokee Baptist Medical Center; DeKalb Baptist Medical Center; Lawrence Baptist Medical Center; Marion Baptist Medical Center; Birmingham Baptist Medical Center Montclair; Birmingham Baptist Medical Center Princeton; Shelby Baptist Medical Center; and Walker Baptist Medical Center (collectively "defendants"), on May 5, 2000. On November 24, 1997, Teri L. Flanagan ("Relator"), as *qui tam* relator on behalf of the United States of America, filed a Qui Tam Complaint ("Relator's Compl.") under seal against defendants[1] alleging a pattern of fraudulent Medicaid and Medicare billing and reimbursement, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* The United States of America ("the government") elected to

---

[1] Relator's Complaint only named BHS; Coosa Valley Medical Center Foundation d/b/a Coosa Valley Baptist Medical Center; Coosa Valley Home Health, Inc.; Citizens Baptist Medical Center; and Cullman Regional Medical Center, Inc. as defendants.

54

intervene on certain allegations and causes of action contained in Relator's Complaint. The government filed a notice of partial intervention on February 28, 2000, and filed the United States' Complaint ("Government's Compl.") against defendants[2] on April 6, 2000, alleging violations of the FCA; unjust enrichment; willful, negligent, or reckless misrepresentation pursuant to Alabama Code § 6-5-101; and payment by mistake.[3] Defendants contend that both Complaints are due to be dismissed under Federal Rule of Civil Procedure 12(b)(6) because:

1. The complaints utterly fail to provide the defendants with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure;

2. The Government's state law claims suffer from the same failure to plead with particularity required under Rule 9(b), are also time-barred;

3. The Relator's complaint violates Articles II and III of the U.S. Constitution; and

4. The Relator's conspiracy claim is due to be dismissed for her failure to plead the requisite elements of a conspiracy.

---

[2] The government asserted claims against all defendants named in Relator's Complaint, with the exception of Coosa Valley Home Health, and added defendants Cherokee Baptist Medical Center, DeKalb Baptist Medical Center, Lawrence Baptist Medical Center, Marion Baptist Medical Center, Birmingham Baptist Medical Center Montclair, Birmingham Baptist Medical Center Princeton, Shelby Baptist Medical Center, and Walker Baptist Medical Center. The government noted that all defendants named in their Complaint are wholly or partially owned, operated, or managed by BHS, which was named in both Relator's Complaint and the government's Complaint. (Government's Compl. at unnumbered 2.) At oral argument, the government admitted that it inadvertently failed to obtain records from defendant Cherokee Baptist Medical Center. Thus, the government's Complaint as to this defendant is due to be dismissed.

[3] The government at first asserted a claim of payment by mistake under Alabama Code § 7-3-418. However, the government has since conceded that this Code section is inapplicable and asserts a general common law claim of payment by mistake. (See Response of United States to Defendants' Motion to Dismiss ("Government's Response") at 13) ("The United States does agree with Defendants that Alabama Code 7-3-418 referenced in 'Count Five' of the complaint probably does not apply. However, a general common law assertion of mistake of fact is also pled in that count.")

2

(Defendants' Motion to Dismiss Complaint of the United States in Intervention and Relator's Complaint ("Defs.' Mot.") at 1-2.) Upon consideration of the Motion, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion is due to be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL SUMMARY

Relator was employed as the Director of Rehabilitation Services for defendant Coosa Valley Baptist Medical Center from August 1997, through November 7, 1997. (Relator's Compl. at ¶ 10.) Relator alleges that during this time, she became aware of a variety of schemes that defendants required its employees to implement, consisting of (1) submitting Medicare and Medicaid reimbursement claims for physical therapy and other rehabilitation services even though the initial evaluations and recertification evaluations were performed by unlicensed individuals; (2) submitting Medicare and Medicaid reimbursement claims for ongoing physical therapy and other rehabilitation services even though such services were administered by unsupervised and unlicensed individuals; (3) submitting and/or maintaining fabricated documentation to support Medicare and Medicaid reimbursement claims for physical therapy, skilled nursing, and other rehabilitative services; (4) routinely submitting Medicare and Medicaid reimbursement claims for numerous services, primarily in the area of physical therapy and skilled nursing, when the documentation to support the "medical necessity" for such services was either lacking or directly contraindicated; (5) submitting Medicare and Medicaid reimbursement claims for outpatient services in violation of the "72-hour rule;" and (6) submitting false and fraudulent Medicare and Medicaid reimbursement claims in connection with laboratory billing. (*See* Relator's Compl. at ¶ 11.) Relator further alleges that the fraudulent billing practices for physical therapy and skilled nursing services have occurred with

3

respect to patient care provided in the inpatient units, outpatient facilities, home health agencies, and skilled nursing facilities, and that the defendants named in her Complaint have falsely and fraudulently included the various costs associated with such services on hospital cost reports. (*Id.*)

Specifically, Count I of Relator's Complaint alleges that the defendants named in her Complaint violated 31 U.S.C. § 3729(a)(1) because they submitted false or fraudulent claims to the government for payment or approval. (*See* Relator's Compl. at ¶¶ 32-34.) Count II alleges that these same defendants violated 31 U.S.C. § 3729(a)(2) because they knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims allowed or paid by the government. (*See id.* at ¶¶ 35-39.) Count III alleges that these defendants violated 31 U.S.C. § 3729(a)(3) by conspiring with numerous individuals and entities to defraud the government. (*See id.* at ¶¶ 40-42.) Count IV alleges that defendant Coosa Valley wrongfully terminated Relator in violation of 31 U.S.C. § 3730(h). (*See id.* at ¶¶ 43-45.)

Relator served her Complaint on the government at or about the time of filing, and the government subsequently initiated an investigation into the allegations raised in Relator's Complaint. The government elected to intervene on certain allegations and causes of action contained in her Complaint. The government intervened only as to Counts I and II of Relator's Complaint and only to the extent that these counts involve defendants' submission of Medicare claims without first developing an appropriate plan of care or obtaining the required physician certifications and/or recertifications required by law. (Government's Compl. at ¶¶ 28-35.) The government also asserted common law claims for unjust enrichment, misrepresentation under Alabama Code § 6-5-101, and payment by mistake. (*Id.* at ¶¶ 36-50.)

4

As to Relator's Complaint, defendants argue that (1) the Complaint fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b); (2) Relator is barred from bringing her claims under Articles II and III of the United States Constitution; and (3) Relator did not adequately plead her conspiracy claim under 31 U.S.C. § 3729(a)(3) because she failed to allege a specific intent to defraud and an agreement among the parties allegedly involved.[4] As to the government's Complaint, defendants argue that (1) the Complaint (including both the FCA claims and the common law claims) fails to satisfy the particularity requirements of Rule 9(b); (2) the Complaint fails to adequately plead defendants' requisite state of mind; and (3) the

---

[4] Defendants also assert that the only proper defendants are (1) BHS, (2) Cullman Regional Medical Center, Inc., and (3) Walker Regional Medical Center, Inc. (*See* Defendants' Reply in Support of Motion to Dismiss ("Defs.' Reply") at 17.) Defendants further assert that the intracorporate conspiracy doctrine bars this claim because "the 'agreements' detailed on page[s] 35-36 of the Relator's Response all are illusory -- the Relator is actually describing alleged wrongdoing only by BHS," (*id.* at 17), and "to the extent that the Relator is alleging that the conspiracy has occurred within Baptist and its operating divisions, the law is clear that a corporation may not be found to conspire with itself or its agents," (Defs.' Mot. at 26).

Under the intracorporate conspiracy doctrine, "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Simply put, under this doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *Id.*; *see also Dickerson v. Alachua County Commission*, 200 F.3d 761, 767 (11th Cir. 2000). Thus, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. *McAndrew*, 206 F.3d at 1036.

Relator asserts that "since the Complaint alleges activity by Defendants which each have separate corporate existences, these Defendants can (and did) conspire with each other," and, therefore, the intracorporate conspiracy doctrine does not apply. (Relator's Response in Opposition to Defendants' Motion to Dismiss Relator's Qui Tam Complaint ("Relator's Response") at 37.) Relator further argues that because the intracorporate conspiracy doctrine does not apply to criminal conspiracies, it should not apply in this case since the underlying conspiracy is criminal in nature. (*Id.*) Because the court must accept all of Relator's factual allegations as true in a Motion to Dismiss, including the Relator's allegations regarding the separate corporate existence of each named defendant, the court will not address these arguments in this Memorandum Opinion.

common law claims are barred by the applicable statute of limitations.

## II. DISCUSSION

### A. The False Claims Act

#### 1. Background

The FCA prohibits the making of false or fraudulent claims to the government for payment. *See e.g., United States ex rel. Williams v. NEC Corporation*, 931 F.2d 1493, 1496 (11th Cir. 1991). The purpose of the FCA is to recover money fraudulently taken from the government. *Id.* at 1497. "The Act was first passed by Congress in 1863, at the request of President Lincoln, in an effort to combat profiteering by Union Army suppliers during the Civil War." *Id.* at 1496-97. The *qui tam* provision of the FCA allows private persons ("relators") to bring suit under the Act, with a promise of a share of the damages recovered. *Id.* at 1497. Courts have observed that "the purpose of the *qui tam* provisions of the False Claims Act is to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward." *Id.* (citing *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 18 (2d Cir. 1990) (quotation marks omitted). "By allowing certain private parties to sue on behalf of the government, the FCA creates a statutory exception to the general rule regarding standing to sue." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040, 1044 (S.D. Ga. 1990).

Congress amended the FCA in 1986 to encourage more private enforcement suits in combatting the rising problem of sophisticated and widespread fraud against the government. *See Williams*, 931 F.2d at 1497. Before the 1986 amendments, when the government elected to intervene in a *qui tam* action, the suit was conducted solely by the government. *See United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1144 (9th Cir.

1998). The 1986 amendments allow the relator to continue as a party to the action after the government's intervention. *Id.* (citing 31 U.S.C. § 3730(c)(1)). Although the amendments increased the relator's role when the government intervenes, the government still has "primary responsibility" for the case and retains supervisory powers over the relator. *Id.*

The Act explicitly provides that when the government takes over the *qui tam* action from the start, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1). Though the relator "shall have the right to continue as a party," *id.*, the government may end the litigation or limit the participation of the relator in several ways. First, the government may dismiss the action "notwithstanding the objections of the person initiating the action" once the relator has received notice and an opportunity for a hearing on the dismissal motion. 31 U.S.C. § 3730(c)(2)(A). Second, the government may also settle with the defendant "notwithstanding the objections of the person initiating the action," but only if the court determines after a hearing "that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). Further, the government may request that the court impose appropriate limitations on the relator's participation if it shows that unrestricted participation "would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment." 31 U.S.C. § 3730(c)(2)(C). The Act also provides the defendant with an opportunity to request that the court limit the relator's participation, upon a showing that unrestricted participation "would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense." 31 U.S.C. § 3730(c)(2)(D).

The 1986 amendments also expanded the government's ability to intervene in a *qui tam* action. *Sequoia Orange Co.*, 151 F.3d at 1144. The government may move for an extension of

the original sixty-day period for deciding whether to intervene. 31 U.S.C. § 3730(b)(2) and (b)(3). Even after that period has expired, the government now has the right to track the litigation and to intervene at a later date upon a showing of good cause. 31 U.S.C. § 3730(c)(3). However, in permitting late intervention, the court may not limit "the status and rights" of the relator. (*Id.*)

When the government chooses not to take over a *qui tam* action, the relator "shall have the right to conduct the action." 31 U.S.C. § 3730(c)(3). Upon the government's request, however, the relator must serve the government with copies of all pleadings and deposition transcripts. (*Id.*) Whether or not the government takes over the action from the outset, it may ask the court to stay the relator's discovery for an extendable sixty-day period, upon a showing that the relator's discovery "would interfere with the government's investigation or prosecution of a criminal or civil matter arising out of the same facts." 31 U.S.C. § 3730(c)(4).

2.   *Relator's Standing*

Defendants contend that the Constitution bars and precludes the Relator from asserting claims to the extent that the government has chosen to intervene. (*See* defs.' Reply at 18-20.) The court disagrees.

In *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 120 S.Ct. 1858, 1861 (2000), the Supreme Court noted:

> If a relator initiates the FCA action, he must deliver a copy of the complaint, and any supporting evidence, to the Government, § 3730(b)(2), which then has 60 days to intervene in the action, §§ 3730(b)(2), (4). If it does so, it assumes primary responsibility for prosecuting the action, § 3730(c)(1), though the relator may continue to participate in the litigation and is entitled to a hearing before voluntary dismissal and to a court determination of reasonableness before settlement, § 3730(c)(2). If the Government declines to intervene within the 60-day period, the relator has the exclusive right to conduct the action, § 3730(b)(4), and the Government may subsequently intervene only on a showing

8

of "good cause," § 3730(c)(3). The relator receives a share of any proceeds from the action--generally ranging from 15 to 25 percent if the Government intervenes (depending upon the relator's contribution to the prosecution), and from 25 to 30 percent if it does not (depending upon the court's assessment of what is reasonable)--plus attorney's fees and costs. §§ 3730(d)(1)-(2).

Further, the court stated:

> [T]he statute gives the relator himself an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery. Thus, it provides that "[a] person may bring a civil action for a violation of section 3729 *for the person and for the United States Government*," § 3730(b) (emphasis added); gives the relator "the right to continue as a party to the action" even when the Government itself has assumed "primary responsibility" for prosecuting it, § 3730(c)(1); entitles the relator to a hearing before the Government's voluntary dismissal of the suit, § 3730(c)(2)(A); and prohibits the Government from settling the suit over the relator's objection without a judicial determination of "fair[ness], adequa[cy] and reasonable[ness]," § 3730(c)(2)(B).

*Id.* at 1863 (emphasis in original). The Eleventh Circuit has noted that the FCA's purpose is not limited to punishing the wrongs against the public, but the FCA also fills a remedial capacity in redressing injury to the individual relator. *See United States ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 138 (11th Cir. 1993) ("We believe that a *qui tam* relator suffers substantial harm and the *qui tam* provisions of the FCA are intended to remedy that harm.")

As noted above, once the government intervenes in the lawsuit, the party bringing the action remains as a party to the litigation. 31 U.S.C. § 3730(c)(1). The Act also makes clear that the relator retains an interest in the lawsuit and the relator is given "unrestricted participation" in the litigation, subject to a request for limitation by the government or the defendant on a showing of delay, interference, harassment, or undue burden. *See* 31 U.S.C. §§ 3730(c)(2)(C), 3730(c)(2)(D); *see also Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 n.7 (11th Cir. 1999) ("with certain exceptions . . . , relators have unrestricted participation in the litigation"). Although the government has primary authority to prosecute the action and the relator is subject

9

to a number of controls, the relator still remains a party to the suit -- the government is simply not bound by any act of the relator. 31 U.S.C. § 3730(c)(1).

Thus, nothing in the FCA or the case law states that Relator's Complaint or claims must be dismissed because the government has intervened on those same claims. In fact, the FCA expressly provides that once the government intervenes, the relator "shall have the right to continue as a party to the action." *See* 31 U.S.C. § 3730(c)(1). In the present case, the government has not objected to or sought to limit Relator's role in the litigation. Moreover, defendants have not shown that unrestricted participation would be for purposes of harassment or would cause defendants undue burden or unnecessary expense under 31 U.S.C. § 3730(c)(2)(D). Thus, Relator remains as a party as to the claims on which the government has intervened, and defendants' Motion to Dismiss as to these claims is due to be denied.

3.   *Take Care Clause and Appointments Clause*

Defendants further assert that the Relator's claims for which the government decided not to intervene must also be dismissed. (*See* Defs.' Mot. at 20-22; *see also* Defs.' Reply at 18-21.) Defendants assert that application of the *qui tam* provisions of the FCA violate the Take Care Clause and the Appointments Clause under the doctrine of separation of powers. (*Id.*) The court disagrees.

In *Stevens*, the United States Supreme Court expressly declined to address whether *qui tam* suits violate Article II, specifically the Appointments Clause of § 2 and the Take Care Clause of § 3. *See Stevens*, 120 S. Ct at 1865 n.8. However, this issue has been discussed extensively in two different Circuit court opinions. In *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 749-59 (9th Cir. 1993), the court concluded that the *qui tam* provisions of the FCA are constitutional. The Fifth Circuit, in a split decision, came to the contrary conclusion. *See*

10

*Riley v. St. Luke's Episcopal Hosp.*, 196 F.3d 514, 523-31 (5th Cir. 1999).[5] Further, the Second Circuit, in a much shorter discussion, found the *qui tam* provisions constitutional, *see United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1154-55 (2d Cir. 1993), as did the Sixth Circuit in *United States ex rel. Taxpayers Against Fraud v. Geberal Electric Co.*, 41 F.3d 1032, 1041-42 (6th Cir. 1994). Numerous district courts have also found the *qui tam* provisions constitutional under the Take Care Clause and the Appointments Clause. *See, e.g., United States ex rel. Phillips v. Pediatric Services of America, Inc.*, 123 F. Supp. 2d 990, 992-94 (W.D. N.C. 2000); *United States ex rel. Downy v. Corning, Inc.*, 118 F. Supp. 2d 1160, 1167-68 (D. N.M. 2000); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1044-46 (S.D. TX 1998). As noted by the United States Supreme Court:

> [There is a] long tradition of *qui tam* actions in England and the American colonies. That history is particularly relevant to the constitutional standing inquiry since, as we have said elsewhere, Article III's restriction of the judicial power to "Cases" and "Controversies" is properly understood to mean "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process."

*Stevens*, 120 S.Ct. at 1863.

The court agrees with the reasoning and conclusions of the courts in *Kelly*, *Kreindler*, and *Geberal*, and is of the opinion that the *qui tam* provisions of the FCA do not contradict either the Take Care Clause or the Appointments Clause. As to the Take Care Clause, the Executive Branch retains sufficient control[6] over the relator's conduct so as not to "impermissibly

---

[5] Rehearing en banc has been granted in *Riley*. *Riley v. St. Luke's Episcopal Hosp.*, 196 F.3d 561 (5th Cir. 1999).

[6] As noted above, upon intervening, the government has primary responsibility for prosecuting the action. 31 U.S.C. § 3730(c)(1). Even if the government decides against

11

undermine" the powers of the Executive Branch or disrupt the proper balance between the coordinate branches by preventing the Executive Branch from accomplishing its constitutionally assigned function to take care that the laws be faithfully executed. *See Morrison v. Olson*, 487 U.S. 654, 696 (1988) (The court must determine "whether the Act, taken as a whole, violates the principle of separation of powers by unduly interfering with the role of the Executive Branch. Time and again we have reaffirmed the importance in our constitutional scheme of the separation of governmental powers into the three coordinate branches. . . . As we [have previously] stated . . . , the system of separated powers and checks and balances established in the Constitution was regarded by the Framers as 'a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.' We have not hesitated to invalidate provisions of law which violate this principle.") (citations and quotations imitted); *see also* U.S. Constitution Art. II, § 3. Similarly, the *qui tam* provisions of the FCA do not violate the Appointments Clause of the Constitution, Article II, § 2 cl. 2. Although a relator may sue in the government's name, the relator is not vested with governmental power. Indeed, as noted above, the government may take complete control of the case if it wishes. Furthermore, the relator's "position is without tenure, duration, continuing emolument, or continuous duties," and a relator is not an "officer" within the meaning of the Appointments Clause. *See Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890) (finding that the merchant appraiser position did not offend

---

intervening in the relator's case, it may still require the relator to inform it of developments and to forward copies of the claims, the material evidence and information, and copies of depositions taken. 31 U.S.C. § 3730(c)(3). In fact, after turning down the opportunity to intervene, the government may still intervene later upon a showing of good cause. *Id.* Similarly, when the government chooses to intervene, it may move to have the relator's litigation role significantly restricted, even as it may conduct settlement talks or even decide that the case should be dismissed. 31 U.S.C. § 3730(c)(2)(A), (B), and (C).

the Appointments Clause, U.S. Const. Art. 2, § 2, because the position is without tenure, duration, continuing emolument, or continuous duties, and [the individual holding the position] acts only occasionally and temporarily, [and [t]herefore, [the merchant appraiser] is not an 'officer,' within the meaning of the [Appointments Clause].") The FCA *qui tam* provisions provide no threat to the interest of a balanced government which underlies both the Appointments Clause and the Take Care Clause. The court is of the opinion that the *qui tam* provisions of the FCA do not violate the Take Care Clause or the Appointments Clause, nor do these provisions offend the doctrine of separation of powers.

4.  *Particularity Requirements of Rule 9(b)*

Defendants assert that both the government's Complaint and Relator's Complaint fail to provide defendants with the particularity of their claims as required by Rule 9(b). (*See* defs.' Mot. at 6-15, 22-26; *see also* defs.' Reply at 1-15.) Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." It is well-settled in this and other circuits that Federal Rule of Civil Procedure 9(b) applies to cases involving the FCA.[7] *See, e.g., Cooper*, 19 F.3d at

---

[7] The cases addressing the sufficiency under Rule 9(b) of *qui tam* complaints alleging FCA claims for Medicare and Medicaid fraud are not in total accord. *Compare United States v. Gericare Medical Supply, Inc.*, 2000 WL 33156443, at *7-8 (S.D. Ala. Dec. 11, 2000) (concluding that exact date on which each allegedly false claim was submitted and specific individual(s) that physically completed the forms are not necessary to satisfy Rule 9(b); *Downy*, 118 F.Supp.2d at 1172-73 (finding that the relator's complaint satisfied the requirements of Rule 9(b), even without specific examples of false claims submitted to the United States because information concerning the alleged fraud was undoubtedly in defendants' possession rather than the public domain.); *United States v. NHC Healthcare Corp.*, 115 F. Supp. 2d 1149, 1151-52 (W.D. Mo. 2000) ("when an underlying fraudulent activity is alleged to have occurred systematically and continuously over a period of time, it is sufficient to allege a general time frame of the fraud in question;" although details were left out of the Complaint such as what specific services were not provided, the court noted that "this type of more specific information is likely not in the possession of the Plaintiff at this time and is more properly brought to light in

13

---

discovery;" Rule 9(b) was "never meant to require a plaintiff to set forth every factual detail supporting its claim, nor was it meant to fuse the stages of pretrial investigation and discovery"); *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 207-08 (E. D. Tex.1998) ("A plaintiff cannot be expected to have personal knowledge of the details of corporate internal affairs," including who physically completed the false forms.); *United States ex rel. Pogue v. American Healthcorp., Inc.*, 977 F. Supp. 1329, 1332-33 (M.D. Tenn. 1997) (finding *qui tam* complaint sufficient where it generally described fraudulent scheme to submit false Medicare and Medicaid claims, even without identification of any specific dates of claims or specific employees involved; the court also noted that requiring plaintiffs to refer to the specific instances underlying each Medicare and Medicaid claim submission alleged to be fraudulent in the complaint would undermine Rule 8's admonishment to keep pleadings simplistic); *United States ex rel. Sanders v. East Alabama Healthcare Authority*, 953 F.Supp. 1404, 1413-14 (M.D. Ala. 1996) (noting that the particularity requirements of Rule 9(b) "may be relaxed somewhat if the defendant controls information required for proper pleading," and finding some of plaintiff's FCA allegations sufficient under the relaxed standard of Rule 9(b)) *with United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 232 F.3d 902 (Table), 2000 WL 159576, at *5 (10th Cir. 2000) (unpublished decision) (finding that the amended complaint failed to satisfy Rule 9(b) because plaintiff did not identify specific individuals responsible for the alleged fraud, the time when a false or fraudulent claim was presented, or the particular time or place when the plan resulted in the submission of a false or fraudulent claim); *United States ex rel. Harris v. George Washington Primary Care*, 203 F.3d 53 (Table), 1999 WL 1021936, at *1 (D.C. Cir. 1999) (unpublished opinion) (finding that the complaint failed to plead the time, place, or content of alleged false misrepresentation and failed to specifically state the alleged illegal gain; the court refused to accept the contention that a modified Rule 9(b) standard should be applied to *qui tam* actions); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (finding that because the relator provided no factual basis for his belief that defendants engaged in fraudulent activity other than his reference to statistical studies that did not directly implicate defendants, the relator's allegations amounted to nothing more than speculation, and failed to satisfy Rule 9(b).); *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th Cir. 1994) (noting that the "complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them," and concluding that the complaint failed to satisfy Rule 9(b) where the plaintiff "made general conclusory allegations of fraud"); *United States ex rel. Clausen v. Laboratory Corp. of America*, 198 F.R.D. 560, 562-63 (N.D. Ga. 2000) (finding the complaint insufficient under Rule 9(b) where plaintiff alleged no specific facts in support of general allegation that defendant submitted false claims, plaintiff failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes, and plaintiff failed to specify the time of submission with particularity); *United States ex rel. Butler v. Magellan Health Services, Inc.*, 101 F. Supp. 2d 1365, 1369-70 (M.D. Fla. 2000) (finding complaint insufficient under Rule 9(b) where plaintiff merely alleged a scheme of fraud, and not specific occurrences or facts which support this general scheme); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 147 (D. Mass. 2000) ("Without citing a single false claim arising from an allegedly false invoice, Relator has not met even a bare-bones Rule 9(b) test."); *United States ex rel. Lacorte v. Smithkline*

14

568; *Clausen,* 198 F.R.D. at 562.

As noted above, under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[8] Fed. R. Civ. P. 9(b). Pleading fraud with particularity is necessary for the following reasons: (1) it provides the defendants with sufficient notice of the acts about which the plaintiff complains to enable them to frame a response; (2) it prevents "fishing expeditions" to uncover wrongdoing; and (3) it protects defendants from unfounded accusations of immoral and otherwise wrongful conduct. *Butler,* 101 F. Supp. 2d at 1368. The Eleventh Circuit has stated:

> Rule 9(b) may be satisfied if the complaint sets forth:
> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
> (3) the content of such statements and the manner in which they misled the plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.
> ... However, alternative means are also available to satisfy the rule.

*Brooks,* 116 F.3d at 1371 (quotations and citations omitted); *see also Durham v. Business*

---

*Beecham Clinical Laboratories, Inc.,* 2000 WL 17838, at **3-5 (E.D. La. Jan. 10, 2000) (finding complaint insufficient under Rule 9(b) where plaintiff failed to plead with particularity how the scheme allegedly perpetrated by defendants was fraudulent or the who, where, and when of the alleged fraud.); *State of California ex rel. Mueller v. Walgreen Corp.,* 175 F.R.D. 631, 634-36 (N.D. Cal. 1997) (finding that the complaint was insufficient under Rule 9(b) where plaintiff failed to provide any specific examples or particular instances of wrongdoing by the defendant). *Stinson,* 755 F. Supp. at 1053 (finding that plaintiff failed to satisfy Rule 9(b) because the complaint only served one of Rule 9(b)'s purposes – it put defendants on notice of the complained of conduct. However, the lack of any factual basis to connect defendants to the scheme plaintiff constructed did not ensure that the suit was not frivolous. Nor did the lack of factual basis for the complaint ensure that defendant's "reputation and goodwill" will remain protected.).

[8] Knowledge may be pleaded generally and is not subject to the particularity requirements of Rule 9(b). Fed. R. Civ. P. 9(b); *see also Gericare,* 2000 WL 33156443, at *9.

15

*Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988) ("Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule.").

However, a number have courts have concluded that where the fraud occurred over an extended period of time and consisted of numerous acts, the specificity requirements are applied less stringently. *See, e.g., Clausen*, 198 F.R.D. at 562. The heightened pleading standard may also be relaxed if the factual information that is the basis of the claim is peculiarly within the defendant's knowledge or control. *See, e.g., Id.; Stinson*, 755 F. Supp. at 1052. Further,

> [P]leadings generally cannot be based on information and belief. . . . Where, however, [the] factual information is peculiarly within the defendant's knowledge or control, rule 9(b)'s requirement is relaxed somewhat. . . . In such a case, pleading on information and belief is acceptable, . . . but on one condition: the complainant must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.

*Stinson*, 755 F. Supp. at 1052. Moreover, where widespread fraud is alleged, "courts will adhere to a relaxed standard," but "only when the plaintiff alleges that the 'necessary information lies within the defendant's control' and includes a 'statement of facts upon which the allegations are based.'" *Butler*, 101 F. Supp. 2d at 1368 (quoting *Stinson*, 755 F.Supp. at 1052).

A relaxation of the heightened pleading standard does not relieve plaintiff from all particularity in pleading. *See Butler*, 101 F. Supp. 2d at 1369. The facts alleged must amount to more than the mere suspicion that a fraud may have occurred, and plaintiff must be able to connect the allegations of fraud to the defendant. *Stinson*, 755 F. Supp. at 1052 (citations and quotations omitted). Bald or conclusory allegations will not suffice. *Id.* Plaintiff must still adduce facts "specific supporting a strong inference of fraud or the complaint will not satisfy even a relaxed pleading standard." *Id.*

16