# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | MASTER FILE NO. 01-CV-12257-PBS |
| _____ ) | |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO: ) | |
| ) | Chief Mag. Judge Marianne B. Bowler |
| *State of Nevada v. Abbott Labs. Inc., et al.*, ) | |
| CV-2-00260 (Nevada I), ) | |
| ) | |
| *State of Nevada v. American Home Products,* ) | |
| *et al.*, 02-CV-12086-PBS (Nevada II), and ) | |
| ) | |
| *State of Montana v. Abbott Labs. Inc., et al.*, ) | |
| CV-02-09-H-DWM (D. Mont.) ) | |
| _____ ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO STATES' EMERGENCY MOTION FOR PROTECTIVE ORDER RELATING TO DEFENDANTS' ATTEMPT TO TAKE DEPOSITIONS OF NON-PARTIES

Defendants in the above-captioned matters respectfully submit this memorandum of law in response to the State of Montana's and the State of Nevada's ("Plaintiffs") joint motion for a protective order concerning Defendants' deposition subpoenas issued to Great Falls Clinic—Cancer Care ("Great Falls Clinic") and Snyders Drugstores, Inc. ("Snyders").

## PRELIMINARY STATEMENT

Plaintiffs are once again seeking protective orders to prevent Defendants from deposing two non-parties that have neither moved on their own behalf nor joined in Plaintiffs' motion. Indeed, what Plaintiffs have styled an "emergency" motion[1] is nothing more than a thinly veiled attempt to reargue the same issues that were before this Court last fall when the State of Nevada unsuccessfully sought to bar the deposition of MGM Mirage.  As with the contested MGM Mirage deposition, Defendants issued these non-party subpoenas well before the fact discovery deadline, and only delayed scheduling the depositions pending the outcome of negotiations with Plaintiffs concerning the admissibility and authenticity of certain documents produced by Great Falls Clinic, MGM Mirage, the Minnesota Multi-State Contracting Alliance for Pharmacy ("MMCAP"), Snyders, and Walgreens.[2]  The only additional delay involved with the instant depositions was created by Plaintiffs' drawn-out decision, in the wake of the October 23, 2006 motion hearing, to reject Defendants' proposal to stipulate to the authenticity and admissibility of

---

[1] *See* States' Emergency Motion for Protective Order Relating to Defendants' Attempt to Take Depositions of Non-Parties ("Pls.' Mem.").

[2] Defendants have made clear to Plaintiffs that they intend to depose representatives of Great Falls Clinic and Snyders solely for the purpose of authenticating a limited number of documents that were produced by these entities.  *See* E-mail from Reid Skibell, counsel for AstraZeneca, to Jeniphr Breckenridge, counsel for Plaintiffs, Jan. 30, 2007, Declaration of James J. Duffy in Support of Defendants' Memorandum of Law in Response to States' Emergency Motion for Protective Order Relating to Defendants' Attempt to Take Depositions of Non-Parties ("Duffy Decl.") ¶ 3, Ex. 1.

seven documents.[3]  After Plaintiffs refused to enter into the stipulation, Defendants proceeded to schedule depositions to establish the authenticity and admissibility of those documents, as they had reserved the right to do all along.[4]

## FACTUAL BACKGROUND

On October 27, 2005, Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") served a subpoena ad testificandum and duces tecum on Great Falls Clinic in the Montana AWP Litigation.[5]  Approximately two weeks later, on November 9, 2005, AstraZeneca served a second subpoena seeking testimony and production of documents, this time on Snyders, in the Montana and Nevada AWP Actions.[6]  Great Falls Clinic produced documents responsive to this subpoena on a rolling basis, from January 2006 through May 2006.  Similarly, Snyders produced documents from January 2006 through June 2006.  (Duffy Decl. ¶ 4.)

As detailed in Defendants' Memorandum of Law in Opposition to Nevada's Motion for a Protective Order Relating to Defendants' Deposition Subpoena to MGM Mirage ("MGM Mirage Defs.' Mem."),[7] Defendants were attempting from May through July of 2006 to reach agreement

---

[3] Defendants have determined that they would also like to confirm the authenticity of an additional document as a business record, GFC0000152-161, which is a signed provider agreement between Blue Cross Blue Shield of Montana and the Great Falls Clinic.

[4] In addition to developing the necessary factual record with regard to the authenticity and admissibility of documents produced by non-parties to these actions through depositions, documents that qualify as business records under Fed. R. Evid. 803(6) may also be self-authenticated, under Fed. R. Evid. 902(11), through the use of a declaration of a custodian or other qualified person.

[5] *See* Subpoena to Great Falls Clinic, Oct. 27, 2005, Declaration of Jeniphr Breckenridge in Support of States' Emergency Motion for Protective Order Relating to Defendants' Attempts to Take Depositions of Non-Parties (Docket No. 3599) ("Breckenridge Decl."), Ex. 1.

[6] *See* Subpoena to Snyders Drugstores, Nov. 9, 2005, Breckenridge Decl. Ex. 2.

[7] *See* Declaration of Thomas Daly in Support of Defendants' Memorandum of Law in Support of Their Motion for Reconsideration of Nevada's Motion for a Protective Order Relating to Defendants' Deposition Subpoena to MGM Mirage, Sept. 19, 2006 (Docket No. 3117), Ex. 1.

with Plaintiffs concerning a stipulation pertaining to the authenticity and admissibility of the documents of non-parties, including MGM Mirage, Great Falls Clinic, and Snyders.

In August 2006, the State of Nevada moved for a protective order relating to Defendants' deposition subpoena to MGM Mirage.  In its memorandum of law, the State contended:

> Defendants' proposed stipulation related to documents produced by Walgreens, [MMCAP], MGM Mirage, Great Falls Clinic and Snyders Drug Stores.  Each of these nonparties has been served with a subpoena. . . .  Although the State and defendants have not fully conferred on the other depositions, *the State's arguments would be essentially the same as those submitted via this motion*. Thus, the State asks the Court for a protective order directing that *no additional non-party depositions be taken*.[8]

Consistent with this position, Defendants noted in their response that "[t]o the extent that Plaintiff seeks a protective order that prevents any additional depositions of non-parties from being taken, including any that have not yet been scheduled, this brief is filed in opposition to that aspect of Plaintiff's motion as well." (MGM Mirage Defs.' Mem. 1 n.1 (citations omitted).) Indeed, at the October 23, 2006 motion hearing before this Court, counsel for Defendants stated that he was arguing that "defendants should be permitted to go forward with depositions of MGM Mirage, Great Falls Clinic, Schneider's [*sic*] Drugs and Walgreens."  (Mot. Hr'g Tr. 88:13–16, Oct. 23, 2006, Breckenridge Decl. Ex. 3.)  Notwithstanding the State's concession in its briefing that its arguments with regard to the other non-party subpoenas would mirror those it made with regard to MGM Mirage,[9] the State asked at oral argument that its motion be directed

---

[8] The State of Nevada's Motion for Protective Order Relating to Defendants' Deposition Subpoena to MGM Mirage, Aug. 8, 2006 (Docket No. 2966) ("MGM Mirage Pl.'s Mem.") 3 n.2 (first emphasis added).

[9] *See id.*

4

only to MGM Mirage.  (Mot. Hr'g Tr. 88:19-89:4.)  Accordingly, the Court's denial of the State of Nevada's application for a protective order was binding as to MGM Mirage only.[10]

In the wake of the October 23 motion hearing, the State of Nevada and Defendants entered into a stipulation concerning the admissibility and authenticity of documents produced by MGM Mirage.[11]  In light of the MGM Mirage stipulation, Defendants wrote to Plaintiffs on December 14, 2006 seeking a similar stipulation for documents produced by Great Falls Clinic and Snyders.[12]  In response to Plaintiffs' request that Defendants set forth specific documents that would be subject to the proposed stipulation,[13] Defendants provided Plaintiffs with a list of seven documents, three from Snyders and four from Great Falls Clinic.[14]  Four of these documents are signed provider agreements, one is a 2004 summary of payors listed by oncology practitioners, one is a spreadsheet of drugs purchased by Snyders and their acquisition cost, and one is a 2004 analysis of Snyders' average cost to dispense.[15]  When it became clear by the third week of January that Plaintiffs would not enter into a proposed stipulation,[16] Defendants notified

---

[10] On the same day, the Court also decided motions for protective orders as to Blue Cross Blue Shield of Montana and MMCAP.

[11] Stipulation Regarding Authenticity and Admissibility of Certain Documents Produced by Non-Party MGM Mirage, Dec. 7, 2006, Duffy Decl. ¶ 5, Ex. 2.

[12] E-mail from R. Skibell to J. Breckenridge, Dec. 14, 2006, Breckenridge Decl. Ex. 4.

[13] E-mail from J. Breckenridge to R. Skibell, Dec. 14, 2006, Breckenridge Decl. Ex. 4.

[14] E-mail from R. Skibell to J. Breckenridge, Dec. 14, 2006, Duffy Decl. ¶ 6, Ex. 3.

[15] It appears that this final document is the one that Ms. Breckinridge refers to in her declaration as containing information from unknown sources.  Nevertheless, in a June 29, 2006 email, Mr. Skibell, after talking with Snyders, confirmed for Ms. Breckinridge that this dispensing fee analysis was done in 2004 and concerned all of their stores, not just those in one state.  E-mail from R. Skibell to J. Breckenridge, June 29, 2006, Duffy Decl. ¶ 7, Ex. 4.

[16] See E-mail from J. Breckenridge to R. Skibell, Jan. 18, 2007, Duffy Decl. ¶ 8, Ex. 5.

(NY) 22448/076/MISC07/MT_NV_Response_Mtn_ProtOrder.doc

Plaintiffs that they would move forward with the depositions.  In letters that were electronically served to Plaintiffs on January 19, 2007, Defendants scheduled the Great Falls Clinic and Snyders depositions for January 30 and 31, 2007, respectively.[17]  On January 29, *the day immediately before the scheduled deposition*, Plaintiffs sent an e-mail to Defendants objecting to these depositions,[18] and on the evening of January 30, Plaintiffs filed the instant motion.  Out of deference to the Court, Defendants have postponed the scheduled depositions of Great Falls and Snyders pending a ruling on Plaintiffs' motion.[19]

## ARGUMENT

Plaintiffs' motion should be denied for two reasons.  First, Plaintiffs provide no sound basis for this Court to depart from the reasoning underlying its ruling denying a protective order as to MGM Mirage.  Second, the Great Falls Clinic and Snyders subpoenas were timely issued and the proposed scheduling of the depositions does not impose an undue burden on Plaintiffs.  As Plaintiffs note, the parties have previously briefed many of the legal issues that govern Plaintiffs' motion. (Pls.' Mem. 4.)  Such arguments need not be repeated in full, but merit brief mention.

## I.   THERE IS NO BASIS TO DEPART FROM THE COURT'S REASONING IN DENYING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AS TO MGM MIRAGE

Despite Plaintiffs' attempts to distinguish MGM Mirage, the factual circumstances there do not differ materially from the facts governing the Great Falls Clinic and Snyders depositions.

---

[17] *See* Letter from R. Skibell to Tyler Moss, counsel for Great Falls Clinic, Jan. 19, 2007, *and* Letter from R. Skibell to Jodi Robinson, Snyders Drugstores, Jan. 19, 2007, Duffy Decl. ¶ 9, Ex. 6.

[18] *See* E-mail from J. Breckenridge to R. Skibell, Jan. 29, 2007, Duffy Decl. ¶ 10, Ex. 7; Letter from J. Breckenridge to J. Duffy and R. Skibell, counsel for AstraZeneca, Jan. 30, 2007, Breckenridge Decl. Ex. 6.

[19] *See* Letter from J. Duffy to J. Breckenridge, Jan. 31, 2007, Duffy Decl. ¶ 11, Ex. 8.

Thus, the Court's reasoning in denying Plaintiffs' motion for a protective order as to MGM Mirage should apply equally here.  Defendants do not dispute that the Court's ruling was limited to the MGM Mirage deposition. (Pls.' Mem. 5.)  However, the point is not whether the Court's ruling applied only to MGM Mirage; rather, of import is the fact that the legal arguments and factual underpinnings are no different for Snyders, Great Falls Clinic, or MGM Mirage.  Perhaps the State put it best when it proffered last fall that its arguments would be "essentially the same" with regard to Great Falls Clinic and Snyders as they were with regard to MGM Mirage.  (*See* MGM Mirage Pl.'s Mem. 3 n.2.)

Here, as this Court found relevant to the MGM Mirage motion, the subpoenas to Snyders and Great Falls Clinic were issued well prior to the close of discovery.[20]  Also, as with MGM Mirage, documents from these entities were produced after the close of discovery in this case.[21]  And as with MGM Mirage, Plaintiffs refused to stipulate to the authenticity of documents, resulting in Defendants' scheduling of depositions on this limited issue.[22]  Finally, as with the case of MGM Mirage, the third parties have not objected to these depositions, and continue to be willing to proceed with the depositions.  Thus, similar to the ruling in MGM Mirage, the Court should likewise allow the depositions on this narrow issue to proceed.

---

[20] Mot. Hr'g Tr. 86:16–24, 87:13–20, Breckenridge Decl. Ex. 3.

[21] *Id.* at 88:6–9, 89:16–18.

[22] *Id.* at 89:18–25.

## II.   DEFENDANTS' SUBPOENAS WERE TIMELY ISSUED AND THE SCHEDULING OF THE PROPOSED DEPOSITIONS DOES NOT IMPOSE AN UNDUE BURDEN ON PLAINTIFFS

As with the MGM Mirage motion, Plaintiffs' refusal to stipulate to the authenticity and admissibility of the limited number of non-party documents identified by Defendants requires that Defendants build the factual record with regard to these documents through other means. Nonetheless, Plaintiffs seek the "extraordinary measure" of preventing depositions from being taken and therefore must satisfy the "heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Prozina Shipping Co., Ltd. v. Thirty-Four Autos.*, 179 F.R.D. 41, 48 (D. Mass. 1998). Plaintiffs' conclusory statement that Defendants' "timing is oppressive and imposes an undue burden on the parties," (Pls.' Mem. 5), fails to meet this burden.

Plaintiffs' primary complaint appears to be that Defendants have "inexcusably delayed" the depositions until "summary-judgment deadlines loomed."[23] (Pls.' Mem. 5.) However, this position overlooks the fact that far greater effort has been wasted in briefing this purported "emergency" motion than would have been expended in short depositions, narrowly focused on authenticating a handful of documents.[24] Defendants also repeatedly emphasized that they would be compelled to take these depositions if Plaintiffs refused to agree to a document authentication stipulation, so the timing of these depositions should have come as no surprise to

---

[23] It is not clear how Plaintiffs would suffer any "undue burden" if these depositions were to proceed as scheduled. Whether the documents are deemed admissible through the deposition is relevant for purposes of trial, but not for summary judgment, and has no bearing on the parties' respective summary judgment briefs.

[24] Plaintiffs' motion is also explicitly prohibited by Case Management Order No. 10 ("CMO-10"), Mar. 25, 2004 (Docket No. 756) as untimely, because it was issued less than five days prior to the deposition. Nevertheless, this has not prevented Plaintiffs from engaging in this fruitless briefing exercise immediately before summary judgment briefs are to be submitted.

Plaintiffs.  Defendants, furthermore, are willing to postpone these depositions until after the summary judgment briefs have been submitted, an alternative that Defendants would have offered to Plaintiffs if they had conferred in good faith as also required by CMO-10.

Moreover, the factual record reflects no unreasonable delay on Defendants' part.  First, the subpoenas were issued well before the close of fact discovery.  Second, the depositions could not have gone forward as scheduled in the subpoenas or at any time prior to the end of fact discovery, as the subpoenaed non-parties did not complete their document productions until after March 31, 2006.[25]  Third, the Great Falls and Snyders' authentication and admissibility issues were inextricably intertwined with the negotiations concerning the stipulation covering the other non-party entities.  Fourth, following the Court's ruling on the MGM Mirage motion, Defendants diligently tried to enter into a stipulation with Plaintiffs, modeled on the MGM Mirage agreement, so as to avoid the needless burden of briefing the same issues yet again.  These efforts continued until it became clear that Plaintiffs would not consent, when Defendants immediately noticed the depositions of Great Falls Clinic and Snyders.[26]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Emergency Motion for Protective Order Relating to Defendants' Attempts to Take Depositions of Non-Parties.

---

[25] Moreover, Plaintiffs have scheduled and taken Fed. R. Civ. P. 30(b)(6) depositions after March 31, 2006. Indeed, Plaintiff scheduled and took 30(b)(6) depositions of *Defendants* after the March 31 discovery cutoff date, and here Defendants only seek to take 30(b)(6) depositions of non-parties.  *See* Duffy Decl. ¶ 12.

[26] Despite their suggestion to the contrary, Plaintiffs cannot seriously challenge Defendants' deposition notice on the basis of CMO-10.  *See* Pls.' Mem. 4, 6.  Plaintiffs' filing of this motion on the evening before the Snyders deposition was in contravention of the directive in CMO-10 that (a) the parties shall confer in good faith and (b) any motion for a protective order shall be filed at least five days before the scheduled deposition.  *See* CMO-10 at 3 ¶ 7.

Dated:   Boston, Massachusetts
          February 2, 2007

                              Respectfully Submitted,


                              By:   /s/ Katherine B. Schmeckpeper

                                    Nicholas C. Theodorou (BBO # 496730)
                                    Katherine B. Schmeckpeper (BBO #663200)
                                    FOLEY HOAG LLP
                                    155 Seaport Blvd.
                                    Boston, Massachusetts  02210
                                    Tel:  (617) 832-1000


                                    D. Scott Wise (admitted *pro hac vice*)
                                    Michael S. Flynn (admitted *pro hac vice*)
                                    Kimberley D. Harris (admitted *pro hac vice*)
                                    James J. Duffy (admitted *pro hac vice*)
                                    DAVIS POLK & WARDWELL
                                    450 Lexington Avenue
                                    New York, New York  10017
                                    Tel:  (212) 450-4000


                                    Attorneys for AstraZeneca Pharmaceuticals LP

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2007, I caused a true and correct copy of the

foregoing, Defendants' Memorandum of Law in Response to States' Emergency Motion for

Protective Order Relating to Defendants' Attempt to Take Depositions of Non-Parties, to be

served on all counsel of record by electronic service pursuant to Case Management Order No. 2

in MDL No. 1456.


/s/ Katherine B. Schmeckpeper
Katherine B. Schmeckpeper