**EXHIBIT B**





# federal register

FRIDAY, NOVEMBER 15, 1974
WASHINGTON, D.C.

Volume 39 ■ Number 222

Pages 40247–40489

PART I



## HIGHLIGHTS OF THIS ISSUE

This listing does not affect the legal status of any document published in this issue. Detailed table of contents appears inside.

> **A REMINDER:**
>
> The Office of the Federal Register is located at 1100 L St., NW., but the mailing address is:
>
> Office of the Federal Register
> National Archives and Records Service
> General Services Administration
> Washington, D.C. 20408

**BITUMINOUS COAL**—Commerce/DIBA issues export monitoring regulations; effective 11–12–74 .. 40279

**DISCOVERY DEVICES**—ICC adopts new rules; effective 1–14–75 .. .... 40296

**GOLD AND SILVER**—USDA/Commodity Exchange Authority notice of inquiry concerning leverage contracts; comments by 12–31–74 .... 40313

**NUCLEAR ENERGY**—AEC rule on applications for export licensing of production and utilization facilities; 12–16–74  40249

**DISASTER RELIEF**—Treasury issues revenue sharing regulation; effective 12–16–74..... .. ... .... . 40248

**DRUG COSTS**—HEW proposes procedures for limitations on payment or reimbursement to states; comments by 1–14–75 .. ... . ... . ... .. .. . .. ........ .. 40302

**INSULIN**—
HEW/FDA amends certification requirements; effective 12–16–74 ... ...... ......... .. ...... . . 40284
HEW/FDA proposes discontinuing certification of 80-unit insulins, comments by 2–13–75 .... 40301
HEW/FDA proposes warning and caution statement on syringes; comments by 1–14–75 ..... . ..... 40301

(Continued Inside)

**PART II:**
**FEDERAL AND FEDERALLY ASSISTED CONSTRUCTION**—Labor/ESA minimum wage determination decisions ......... . ... .... .. ... .... . . ................ 40369

prices. Studies of drug prices in the multiple-source market indicate that savings of 22 to 36 percent would result from the dispensing of lower cost equivalent products. This would be equivalent to savings of 5 to 8 percent of overall prescription drug expenditures.

## II. Drug Quality

The existence of different prices for the same drug has raised questions about differences in quality and effectiveness. The Department has an obligation to see that all drugs, not just those potentially cost-reimbursable in Federal programs, are formulated to be safe and effective and are manufactured under optimal conditions to assure consistently high quality. The most important measures the Department employs to achieve these goals are the quality assurance regulations and programs developed under the Food, Drug, and Cosmetic Act. These include stringent requirements for drug testing and clinical experience reporting, as well as quality control assurances prior to approval for marketing. The Department, through the Food and Drug Administration, maintains an extensive drug surveillance program designed to assure adherence to drug standards. This program includes batch certification of antibiotics, insulin, and other selected drugs which the drug surveillance program has revealed to vary significantly from official standards.

The Food and Drug Administration works with interested individuals or groups and with the official standard-setting organizations—the U.S. Pharmacopeia, and the National Formulary—to develop improved laboratory methods and to revise or develop new standards as the necessary technology permits such changes. Meanwhile, the existing drug and manufacturing standards, drug surveillance system, batch testing requirements, and other standards such as bioavailability requirements, where needed, will assure safe and effective drugs of consistently high quality.

## III. Establishment of Cost Limitations

Considering both cost and quality, the Department proposes to limit cost reimbursement for multiple source drugs under the health financing and service programs administered by the Department to the lowest cost at which chemically equivalent drugs are "generally available;" that is, marketed so as to be widely and consistently available to providers in the United States. This would be termed the "maximum allowable cost", or "MAC". While the greatest potential for savings exists with those drugs which are the most frequently prescribed, the policy would apply to all multiple-source drugs with significant price differentials. The MAC limitation would not apply when a prescriber certifies in writing that only a specific brand of drug is effective for or can be tolerated by a particular patient.

To develop and revise the list of drugs subject to MAC limitations, the Secretary proposes to establish a Pharmaceutical Reimbursement Board. The Board will consist of five regular Departmental employees, representing the principal program areas involved in developing and implementing the cost determination, who will devote part time to their duties as Board members. The Board will draw upon a Pharmaceutical Reimbursement Advisory Committee for advice and technical assistance. Members of the Advisory Committee will be selected from persons outside the Government to provide a broad range of knowledge, experience and judgment in the areas of pharmacy, pharmacology, medicine, pharmaceutical marketing, public health and consumer affairs.

Before establishing a MAC for any drug, the Board will request a statement from the Food and Drug Administration advising of any pending regulatory activity, including the establishment of a bioavailability requirement, that would warrant delay in applying a MAC to that drug.

Opportunities will be provided for individuals and organizations to submit relevant drug price information, propose additions to, revisions of, and deletions from the list, offer comments, and participate in oral hearings on proposed MAC limits.

It should be noted that the proposed MAC regulation does not establish procedures for fixing the actual amount of reimbursement to which providers will be entitled for dispensing drugs. Rather, it establishes procedures for setting a limit on what the individual program regulations and policies might otherwise provide. If the authorizing legislation for a particular program, or the program regulations or policies adopted or issued under that legislation, provide for a lower rate of reimbursement than the Departmental MAC regulation permits, then the program reimbursement rate, being lower, will necessarily control the actual payment.

## IV. Acquisition Cost

The Department recognizes that published wholesale prices for drugs, including single-source drugs that would not be subject to the MAC policy, are frequently higher than prices actually paid by providers. Current regulations under Medicaid governing drug cost specify that cost is to be defined by the State agency. This has permitted a number of cost determination methods, resulting in significant cost differences among identical drugs. Some States reimburse providers on the basis of published wholesale prices; others pay on the basis of published prices less a volume discount to the program; still others pay the actual cost to the provider. Similar inconsistencies exist in other Department supported programs.

The Department believes that significant savings can be achieved in non-institutional settings by specifying payment for the cost portion of the provider's charge on the basis of actual acquisition cost. To promote economical purchases of multiple-source drugs subject to MAC limitations, the proposed regulation would allow retention by such providers of 25 percent of the difference between actual acquisition cost and the maximum allowable cost of any listed drug.

The Commissioner of the Social Security Administration, the Administrator of the Social and Rehabilitation Service, and the Assistant Secretary for Health will propose conforming regulations.

## V. Price Information

The Department recognizes that the MAC policy and the acquisition cost policy proposed herein would not affect the prices charged by manufacturers for single-source drugs. The Department believes that additional cost savings can be achieved by providing current and comparative drug price information to physicians, pharmacists, and other health professionals. There is growing evidence that such information does promote cost-consciousness and economy in prescribing. Therefore, the Department plans to develop a simple and convenient format for communicating such information to drug prescribers and providers. The Department will conduct appropriate studies of the economic aspects and cost effectiveness of the proposed policies.

Therefore, the Secretary proposes to amend Subtitle A of Title 45 of the Code of Federal Regulations by adding a new Part 19, to read as set forth below.

## PART 19—LIMITATIONS ON PAYMENT OR REIMBURSEMENT FOR DRUGS

Sec.
19.1 Purpose.
19.2 Definitions.
19.3 Cost limitation.
19.4 Establishment of Pharmaceutical Reimbursement Board and Advisory Committee.
19.5 Determination of maximum allowable cost.
19.6 Review and revision of maximum allowable cost determinations.

Authority: Pub. L. 92-603, section 224, (40 U.S.C. 486c; 42 U.S.C. 1302, 1395f(b), 1395x(v), 1395hh; 42 U.S.C. 1396b(1)(1); 42 U.S.C. 242(b), 246(d)(e), 247b, 247c, 299d 42 U.S.C. 2688N-1); secs. 301, 311 of the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970; 84 Stat. 1849, 85 Stat. 129; (42 U.S.C. 4571, 4577); secs. 409, 410, of the Drug Abuse Office and Treatment Act, 86 Stat. 81, 82 (42 U.S.C. 1176, 1177)

### § 19.1 Purpose.

This Part establishes Department of Health, Education, and Welfare procedures for determining drug costs and where applicable dispensing charges which the Department will use for the purpose of:

(a) Reimbursement to providers and health maintenance organizations under the Medicare program.

(b) Reimbursement to States under State administered health, welfare and social service programs.