# EXHIBIT E



**FRIDAY, AUGUST 15, 1975**



PART III:

# DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE

Social and Rehabilitation Service

■

## MEDICAL ASSISTANCE PROGRAMS

Limits on Payments for Drugs

## RULES AND REGULATIONS

**Title 45—Public Welfare**

**CHAPTER II—SOCIAL AND REHABILITATION SERVICE (ASSISTANCE PROGRAMS), DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE**

**PART 250—ADMINISTRATION OF MEDICAL ASSISTANCE PROGRAMS**

### Limits on Payments for Drugs

Notice of proposed rule making was published in the FEDERAL REGISTER on November 27, 1974 (39 FR 41480), amending the provisions governing the upper limit for payment for prescribed drugs in the Medicaid program. The notice:

(1) Specified that, for a list of selected multiple source drugs, cost would be limited to the lower of maximum allowable cost (MAC) established by a Pharmaceutical Board appointed by the Secretary or actual acquisition cost plus 25 percent of the differential between actual acquisition cost and the established maximum allowable cost;

(2) Provided that the upper limit would be based on cost plus a dispensing fee, with cost specified as actual acquisition cost (AAC); and

(3) Clarified the use of a dispensing fee for drugs furnished recipients of medical assistance in long-term care facilities by pharmacies employing a unit dose system.

The proposed requirements conformed to the November 15, 1974 proposed regulations governing all departmental programs (39 FR 40302).

The purpose of these regulations is to prescribe an upper limit on payments in the Medicaid (title XIX) program for selected multiple-source prescribed drugs (except where otherwise specified in writing by a physician) and to require that payments for other drugs prescribed under title XIX be determined on the basis of acquisition cost as estimated by the State plus a dispensing fee, or the provider's usual and customary charge to the general public, whichever is lower. The basis of these regulations is the Secretary's strong belief that such upper limits will result in substantial savings in the title XIX program while continuing to assure that high quality drugs are available to title XIX recipients.

Comments were received from 150 respondents. The following is a listing of the major areas of expressions of opinion and the Department's responses:

#### DISPENSING FEE

Comment: The regulations should require dispensing fee indexing for inflation (or regular updating). (5 hospitals, 16 pharmacy associations, 11 individual pharmacists and 2 State Medicaid agencies); they should set the fee at the 90th percentile (2 pharmacy associations); payment levels of other third-party payors should not be used as a criterion (5 pharmacy associations); the dispensing fee should not be lower than that paid by other State, Federal, and third-party reimbursement programs unless the State can provide data to support a lower fee (1 pharmacy association).

Response: The Secretary has no authority to establish a floor for State reimbursement of drugs. The regulations can only specify the upper limit which a State may pay.

Comment: The regulations will require an increase in dispensing fees if the average wholesale price is discarded for AAC or MAC. (9 pharmacy associations and 2 State Medicaid agencies).

Response: The regulations recommend the use of pharmacy operational data in establishing a dispensing fee. The regulations also require the States to conduct periodic surveys of pharmacy operational data. It is believed that such surveys will contribute to the efficient administration of State plans and it is further expected that States will use these surveys to assure equitable fees. It is the Department's intention to work closely with States in furnishing guidance and encouragement toward the objective of having the cost plus a dispensing fee represent equitable reimbursement.

Comment: The fee should be same for legend and non-legend drugs (1 hospital and 2 pharmacy associations).

Response: The Secretary has no authority to prohibit States from varying fees according to legend and non-legend drugs. This is a State decision.

Comment: The term "Professional service fee" should be used instead of "dispensing fee" and a wider role given professional pharmacists. (2 hospitals, 3 pharmacy associations, and 2 individual pharmacists).

Response: The term "dispensing fee" includes "professional services" and other items, thus it is a broader concept than would be indicated by using the term "professional services." The Department advocates a wide role for the pharmacist as a professional. However, the extent to which this is done depends upon State law.

Comment: Use of a variable dispensing fee concept was opposed by some (6 pharmacy associations, 4 State Medicaid agencies, 4 individual pharmacists) and advocated by others (7 State Medicaid agencies and 6 individual pharmacists).

Response: The method for determining the dispensing fee, fixed or variable, is optional with the State Medicaid agency. SRS regulations encourage use of a variable dispensing fee by providing guidance on elements to be considered in establishing such fees.

Comment: Respondents request more guidance or technical assistance in setting of a dispensing fee. (5 pharmacy associations, 3 State Medicaid agencies, and 11 individual pharmacists).

Response: Regulations contain advice and guidance on elements of cost to be considered in the establishment of dispensing fees. In addition, more detailed guides will be issued after the final policy is published.

Comment: The setting of a variable dispensing fee will increase State administrative or audit costs, and mechanized claims processing costs. (13 State Medicaid agencies and 3 individual pharmacies).

Response: The regulations do not mandate a variable fee. This is optional with States. Those States which now employ a variable fee have reported a very modest administrative cost attributable to the variable fee.

Comment: The dispensing fee should include an additional fee for claims processing and special services (2 State Medicaid agencies and 3 individual pharmacies).

Response: This is unnecessary since billing costs as well as other overhead costs are included in the computation of the dispensing fee.

Comment: The method of determining a dispensing fee should be based on percentage mark-up rather than on a fixed fee basis. (1 State Medicaid agency).

Response: This is not acceptable since a percentage mark-up would be an incentive to use higher cost drug items and thus it would run counter to the objectives of the regulations. A GAO study in 1966 strongly recommended against this method.

Comment: The regulations should allow a dispensing fee for dispensing physicians (1 individual pharmacist).

Response: This is an area of State discretion. Medicaid guidelines recommend that payment for drugs dispensed by physicians be limited to not more than the cost of the drug. Physicians are professionals who gain their livelihood from the practice of medicine. Accordingly, it may be held that they should not also profit from a pharmacy practice, particularly when the drugs they sell are also prescribed by them.

Comment: Large chains will set dispensing fee patterns. (2 individual pharmacists).

Response: States are responsible for setting dispensing fees. The dispensing fee should be ascertained by analysis of pharmacy operational data which include such components as overhead, professional services, and profit. Thus, States may recognize differences in size of operation by setting variable fees.

### UNIT DOSE SYSTEM

Comment: The unit dose system is expensive. (1 hospital, 4 State Medicaid agencies and 6 individual pharmacists).

Response: Dollar savings result from paying only for drugs which are actually consumed. Savings also result from reduced personnel costs in long-term care facilities but these may be offset to some extent by the relative increase in the dispensing cost paid to the pharmacy. In any case the Department is not mandating the use of a unit dose system, but is merely specifying the reimbursement limit where such a method is used.

Comment: Clarification is needed to define the quantity involved in a unit dose system (1 hospital, 2 drug manufacturers, 1 pharmacy association) and State agencies should be given technical assistance in reimbursement for a unit dose system (2 State Medicaid agencies).

Response: Detailed guides will be issued on the unit dose system after the final policy is published and technical