# EXHIBIT 28   Part I

# CHIP ADDENDUM
## TO
## AMENDED AND RESTATED PHARMACEUTICAL SERVICE AGREEMENT

This CHIP ADDENDUM (the "Addendum") to the Amended and Restated Pharmaceutical Service Agreement and Mail Service Addendum to Pharmaceutical Service Agreement by and between Blue Cross Blue Shield of Montana, Inc. ("BCBSMT") and Diversified Pharmaceutical Services, Inc. ("DPS") and Express Scripts, Inc. ("ESI") (the "Agreement") is made and entered into this *15th* day of November, 2000 with an effective date of October 1, 2000. For purposes of the Addendum, DPS, and ESI shall collectively be referred as "ESI ."

## RECITALS

WHEREAS, ESI and BCBSMT wish to make provision for the Children's Health Insurance Program ("CHIP") as offered through BCBSMT under the Agreement by entering into this Addendum.

THEREFORE, in consideration of the mutual promises and covenants contained in the Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to the addition of this Addendum to the Agreement, the terms and conditions of which are set forth as follows:

I.      DEFINITIONS.  The following definitions shall be added to the Agreement:

"Children's Health Insurance Program" ("CHIP") means the health insurance program that is the subject of the services under this Addendum, authorized and funded pursuant to Title XXI, Social Security Act (42 U.S.C. §§ 1397aa-1397jj), Mont. Code Ann. §§ 53-4-1001 et seq., and implementing rules.

"CHIP Participant" means a "Participant" identified by BCBSMT as eligible under CHIP Program.

Except as otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Agreement.

II.     OTHER OBLIGATIONS OF ESI:

A.      ESI understands and agrees that ESI shall not engage in any marketing to CHIP Participants.

B.      ESI understands and agrees that ESI is being contracted to deliver the same services to CHIP Participants as are delivered to BCBSMT's other commercial members under the Agreement; provided, ESI understands that there is no formulary (BCBSMT shall identify to ESI the drugs and supplies that will be covered by BCBSMT) and the copayment shall be as set forth in the contract between BCBSMT and the Montana Department of

**MT 076208**

Public Health and Human Services ("DPHHS") (the "Prime Contract"), to wit: (i) $3.00 per prescription or refill for generic medications, and (ii) $5.00 per prescription or refill for brand medications.

C.    ESI further acknowledges that services provided under this Addendum are funded by state and federal funds. ESI is subject to and agrees to comply with all applicable state and federal laws, rules, and regulations that apply to persons or entities receiving state and federal funds and grants, some of which are identified in Item V. below and in the Prime Contract. ESI understands that any violation by ESI of a state or federal law relating to the delivery of service by ESI, or any violation of the Prime Contract could result in liability for money damages, and or civil or criminal penalties and sanctions under the state and/or federal law.

D.    ESI and BCBSMT understand and agree that the Addendum is subject to all applicable state and federal laws and regulations relating to fraud and abuse in health care, the Prime Contract, and CHIP. ESI agrees to cooperate and assist BCBSMT, HHSC and any state or federal agency that has the duty of identifying, investigating, sanctioning or prosecuting suspected fraud and abuse. ESI shall provide originals to the extent available and/or copies of records and information relating to CHIP Participants requested and allow access to premises and provide such records to BCBSMT, HHSC or its authorized agent(s), DPHHS, HCFA, the U.S. Department of Health and Human Services (DHHS), FBI, MDI, or other unit of state government. ESI agrees to provide one (1) copy of each record free of charge.

E.    ESI is not now and has not been suspended, debarred or otherwise prohibited from entering into a federal funded contract, or from participating in the performance of a federally funded contract, or from participating in procurement activities funded with federal monies. In addition, no director, officer, partner, person with beneficial ownership of more than 5% of ESI's equity, employee, consultant or person otherwise providing items and services that are significant to ESI's obligations has been debarred, suspended or otherwise excluded from entering into a federally funded contract or participating in the performance of a federally funded contract.

III.    **COMPENSATION AND HOLD HARMLESS PROVISIONS:**

**Pharmacy services are to be provided to CHIP Participants through Participating Pharmacies in the PERxCare Network.** The compensation for provision of pharmacy benefit services to CHIP Participants will be based on the PERxCare Network pricing as provided in the Agreement, as the same may be amended from time to time. ESI will hold harmless the CHIP Participant, and DPHHS from incurring liability for any and all claims, costs, damages, or expenses (including attorney's fees) of any type or nature arising from the failure, inability,

**MT 076209**

or refusal of BCBSMT to pay charges for pharmacy benefit services to CHIP Participants provided by ESI.

**IV.    TERM:**

    A.    This Addendum is effective as of October 1, 2000 and shall terminate on the earlier of the termination of the Agreement, the Prime Contract or September 30, 2001.

    B.    ESI agrees that neither DPHHS nor the CHIP Participant is liable or responsible for payment for any prescription drugs over and above allowable copayments excluding payment for services not covered under the Prime Contract.

**V.    REGULATIONS APPLYING TO PROVIDERS RECEIVING FEDERAL AND STATE FUNDS:**

The parties agree to comply with the following:

    A.    Applicable provisions of the Clean Air Act and the Federal Water Pollution Control Act, as amended, found at 42 C.F.R. 7401, *et seq.* and 33 U.S.C. 1251, *et seq.,* respectively; the exclusion, debarment, and suspension provisions of Section 1128(a) or (b) of the Social Security Act (42 USC § 1320 a7), or Executive Order 12549; the provisions of the Byrd Anti-Lobbying Amendment, found at 31 U.S.C. 1352, relating to use of federal funds for lobbying for or obtaining federal contracts; Health and Safety Code, Chapter 85, Subchapter E, relating to the Duties of State Agencies and State Contractors for the confidentiality of AIDS and HIV-related medical information and an anti-discrimination policy for employees and Participant with communicable diseases; confidentiality provisions relating to Participant information; Age Discrimination Act of 1975; Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and all requirements imposed by the regulations implementing these acts and all amendments to the laws and regulations: and the provisions of Executive Order 11246, as amended by 11375, relating to Equal Employment Opportunity.

    B.    applicable restrictions on political and lobbying activities as contained in section 17 of the Prime Contract which is set forth in Appendix A hereto.

**VI.    EFFECT OF ADDENDUM:**

Except as otherwise modified by this Addendum relating to the CHIP Program and CHIP Participants, the terms and conditions of the Agreement shall remain in full force and effect.

**VII.    MISCELLANEOUS:**                                **MT 076210**

The parties acknowledge that ValueRx Pharmacy Program, Inc., an original signatory to the Agreement, has been merged into ESI and no longer exists as a legal entity.

THIS ADDENDUM IS ACCEPTED AND AGREED TO BY:

BLUE CROSS BLUE SHIELD                    EXPRESS SCRIPTS, INC
OF MONTANA

By: _____            By: _____
Name: MICHAEL S. BECKER                        Stuart L. Bascomb
Title: VP & GENERAL COUNSEL                    Executive Vice President
Date: 11/16/00                            Date: _____

**MT 076211**

APPENDIX A

POLITICAL AND LOBBYING ACTIVITIES

(1)     Federal monies received by Diversified Pharmaceutical Services, Inc. ("DPS") and Express Scripts, Inc. (collectively "ESI") under the terms of the Amended and Restated Pharmaceutical Service Agreement and Mail Service Addendum to the Pharmaceutical Service Agreement and CHIP Addendum to the Amended and Restated Pharmaceutical Service Agreement, by and between Blue Cross and Blue Shield of Montana and the ESI parties, may not be used for any political activities by ESI, their employees or agents except as expressly permitted by state and federal law.

(2)     As required by 31 USC 1352 and 45 CFR 93.100 et seq., federally appropriated monies may not be used to influence or attempt to influence an officer or employee of any agency, a member of the U.S. Congress, an officer or employee of the U.S. Congress or an employee of a member of the U.S. Congress, in connection with the awarding of any federal contract, grant or loan, the making of any cooperative agreement or the extension, continuation, renewal, amendment or modification of any federal contract, grant, loan or cooperative agreement.

(3)     If any funds other than federally appropriated funds are paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of the U.S. Congress, an officer or employee of the U.S. Congress or an employee of a member of the U.S. Congress, the appropriate ESI party must complete and submit to the Montana Department of Public Health & Human Services the federally required form "STANDARD FORM LLL."

(4)     Federally appropriated monies received through the programs of the federal Departments of Health & Human Services, Education or Labor, as provided in Section 503 of the Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriations Act, 1997, Division A, Title I, Sections 101(e), Pub. L. No. 104-208, and as may be provided by congressional continuing resolutions or further budgetary enactments, may not be used:

     a.     to fund publicity or propaganda, or for the preparation, distribution, or use of any kit, pamphlet, booklet, publication, radio, television, or video presentation designed to support or defeat legislation pending before the U.S. Congress or a state legislature, except in presentation to the U.S. Congress or a state or local legislative body, other than for normal and recognized executive-legislative relationships.

     b.     to pay the salary or expenses of any grant or contract recipient, or agent acting for the recipient, related to any activity designed to influence legislation or appropriations pending before the U.S. Congress or a state or local legislative body.

**MT 076212**

12/02/99

**THIS AGREEMENT IS SUBJECT TO ARBITRATION PURSUANT TO THE PROVISIONS OF TITLE 27, CHAPTER 5 OF THE MONTANA CODE ANNOTATED**

**AMENDED AND RESTATED**
**PHARMACEUTICAL SERVICE AGREEMENT**

THIS AGREEMENT is made effective January 1, 2000 ("Effective Date"), by and between Blue Cross and Blue Shield of Montana ("Client") and Diversified Pharmaceutical Services, Inc. ("Diversified"), Express Scripts, Inc. ("ESI"), and ValueRx Pharmacy Program, Inc. ("ValueRx"). Diversified, ESI, and ValueRx may be singly referred to as "ESI party" or collectively referred to as "ESI parties" herein. This Agreement is for the purpose of amending that certain Diversified Pharmaceutical Services Pharmaceutical Service Agreement between Diversified and Client, and setting forth the terms and conditions under which ESI parties shall provide prescription drug benefit management, mail service pharmacy services and any other services described herein to Client.

**SECTION ONE**
**Definitions**

1.1    <u>Definitions</u>. For purposes of this Agreement, the following terms shall have the meanings set forth below:

a.      "Customer" means a corporation, union, association, individual or other organization to which Client provides health care coverage and/or administrative services.

b.      "Drug Benefit Worksheet" means the benefit summary documents and instructions prepared by Diversified in conjunction with Client and approved in writing by Client (as amended from time to time), which are used by Diversified in processing outpatient prescription drug claims in connection with this Agreement.

c.      "Participant" means an individual who is eligible for outpatient prescription drug benefits under a Plan.

d.      "Participating Pharmacy" means a pharmacy, including a retail or mail order pharmacy, which has entered into an agreement under which it has agreed to provide prescription drug services to Participants. Participating Pharmacy shall include pharmacies under contract with ESI which participate in an ESI national network and may include mail service pharmacies under contract with Client. PlanetRx or any successor internet pharmacy (i.e. pharmacy that conducts business solely on the world wide web) included by written agreement in ESI's pharmacy network which agrees to comply with applicable state and federal laws shall be considered a Participating Pharmacy.

e.      "Plan" means a plan of health care coverage established or purchased by the Customer and underwritten, issued or administered by Client for the Customer or its employees, retirees, members, dependents or other eligible persons. The Plan is evidenced by a Certificate of Coverage, Plan Document, Summary Plan Description or other document provided to the Customer and/or its employees, retirees, members, dependents or other eligible persons.

f.      "Prescription Drug Services" means the outpatient prescription drug services or supplies which are covered by the Plan as reflected in the Drug Benefit Worksheet.

g.      "Rebate Program" means the Diversified Manufacturer Rebate Program, under which Diversified contracts with pharmaceutical manufacturers for rebates.

**MT 076213**

## SECTION TWO
### Services by ESI Parties

2.1   <u>Services Provided by ESI Parties</u>.  ESI parties shall provide the services described in Exhibit A in the manner described in that Exhibit and in this Agreement.  It is understood and acknowledged by Client that each ESI party shall provide its services in accordance with its standard methods.  In the event Client requests non-standard or customized services, the additional cost of such services shall be paid by Client at an additional charge to be mutually agreed upon by the parties in writing before the services are provided.

## SECTION THREE
### Obligations of Client

3.1   <u>Obligations of Client</u>.  Client agrees to perform and comply with the obligations described in Exhibit B.

## SECTION FOUR
### Payment to ESI Parties

4.1   <u>Service Fees and Other Costs and Charges</u>.  Client and the ESI parties agree to the terms and conditions regarding the payment of service fees and other costs and charges as set forth in Exhibit C.

## SECTION FIVE
### Confidentiality and Access to Records

5.1   <u>Protection of Proprietary Information</u>.  Client and the ESI parties shall take all reasonable steps to protect all parties' trade secrets and confidential information.  Except as specifically provided in this Agreement, such information shall not be disclosed to third parties without the express written consent of the party to whom the information belongs.  No party shall utilize trade secret or confidential information or any material or property protected by patent, trademark, service mark or copyright belonging to any other party other than as expressly permitted by this Agreement or otherwise in writing.  Client acknowledges that ESI parties' methods of doing business and the documentation of those methods are proprietary to such parties and Client shall not use such methods or documentation except in connection with this Agreement.  No party shall be required to keep confidential any information or data which is or becomes publicly available without breach of this Agreement, is already known or is independently developed by any party outside the scope of this Agreement, or is rightfully obtained from a third party.

5.2   <u>Audit Rights</u>.  The parties shall maintain appropriate records relating to their responsibilities under this Agreement.  Subject to applicable confidentiality and disclosure laws, each party may have access to the records of any other party relating to that party's performance of this Agreement during normal business hours and upon reasonable request.  Only an independent third party auditor will have the right to review specific terms and conditions of Diversified's contracts with the manufacturers participating in the Rebate Program for the limited purpose of verifying Diversified's compliance with the terms of its contracts with manufacturers and this Agreement.  A party requesting an audit shall pay the reasonable cost of the other party's time in excess of 8 hours and any other costs incurred by such party in complying with the audit request.  No third party may be allowed or designated to conduct an audit without the prior written consent of the party whose records are being audited.

5.3   <u>Confidentiality Regarding Participants</u>.  The parties shall maintain the confidentiality of any information relating to Participants in accordance with any applicable laws and regulations.  Client shall only be required to provide the ESI parties with that information reasonably necessary for such parties to perform the services contemplated herein.  Client acknowledges, however, that confidential information about Participants will be obtained by ESI parties in providing services under this Agreement and that such confidential information will be obtained from or distributed to Client.  Confidential information shall only be distributed by ESI parties in accordance with applicable state and federal law.  Client shall be responsible for obtaining, to the extent necessary, adequate releases from Participants in regard to any information relating to Participants provided to Diversified or by Diversified to Client for the purpose of claims administration, claims adjustment and management, quality assessment, or quality improvement,

**MT 076214**

underwriting, loss control, rate making, administration of compliance and policyholder service functions, in the determination of a Participant's eligibility for an insurance coverage, benefits or payment, or provided by Diversified to Participating Pharmacies or a Participant's physician for the purpose of verifying insurance coverage or benefits, or for informing a Participant of a medical problem of which the Participant may not be aware.  In the event that Diversified must provide confidential information to Client, Participating Pharmacies, or Participants' physicians to comply with the terms of the Agreement for reasons other than outlined in the immediately preceding sentence, Diversified shall inform Client and Client shall, if reasonably feasible, obtain such releases.  Client shall indemnify, defend and hold harmless the ESI parties from any and all claims, penalties, liabilities, losses, damages, settlements or costs (including attorneys' fees) which may arise from ESI parties' provision of Participant information to Client in connection with this Agreement or from such use of information by Client or Customer for purposes other than administration of a Plan. The ESI parties shall indemnify and hold harmless Client from any and all claims, penalties, liabilities, losses, damages, settlements or costs (including attorneys' fees) which may arise from ESI parties' provision of Participant information to third parties other than specifically provided for herein or except as requested or agreed to in writing by Client and allowed by law.  Client further acknowledges that, during and after the term of this Agreement, the ESI parties may use and/or transfer to third parties drug and related medical data (which data shall not in any way identify any Participant or include personal or privileged information (as defined under Montana's Insurance Information and Privacy Protection Act, Montana Code Annotated, Title 33, Chapter 19, Part 3, as the same may be amended) about a Participant) for research, analysis or cost comparison purposes.

## SECTION SIX
### Term and Termination

6.1    Term.  This Agreement shall begin on the Effective Date.  The initial term of this Agreement shall end at the expiration of September 30, 2002, unless terminated earlier as allowed herein.

6.2    Renewal.  Upon expiration of the initial term or any renewal term, this Agreement shall automatically renew for an additional 1 year term unless either party provides written notice to the other of its intention not to renew at least 90 days prior to the expiration of the then-current term.

6.3    Termination.

    a.    Either party (ESI parties on the one hand, and Client on the other hand) may terminate this Agreement in the event of a material default by the other party.  Such termination shall be effective 30 days after written notice specifying the default has been given to the defaulting party, unless the default has been cured before the end of the 30 day period.

    b.    Either party may terminate this Agreement effective immediately upon written notice of such termination to the other party if the other party ceases to be actively engaged in business or becomes insolvent, which for purposes of this subsection shall mean that the party voluntarily files or has filed involuntarily against it a petition under the United States Bankruptcy Code, including a petition for Chapter 11 reorganization as set forth in the United States Bankruptcy Code.  If Client becomes insolvent or otherwise ceases operations, Prescription Drug Services and mail service pharmacy services shall continue through the end of a period for which a premium has been paid to Client on behalf of Participant, but not to exceed 30 days, provided Client pays or makes other arrangements acceptable to the parties to assure future payment for such services.  Notwithstanding the preceding, Client acknowledges that ESI parties do not receive a premium for mail service pharmacy services nor services provided by Participating Pharmacies, but rather are paid on a fee for service basis for such services.  This provision shall survive the termination of this Agreement, regardless of the reason for termination and supersedes any oral or written contrary agreement.

    c.    Notwithstanding the material default/breach provisions of this Agreement, but subject to section 6.3.b., if Client fails to pay ESI parties or provide a deposit, if required, in accordance with the terms of this Agreement, and does not cure such failure within five business days of receiving

3

**MT 076215**

written notice from any ESI party, the ESI parties may terminate or suspend performance hereunder immediately and cease processing claims or providing Prescription Drug Services to Participants. ValueRx may also suspend its services to a Participant who is in default of payment of any copayments, coinsurance or deductibles with respect to the mail service pharmacy.

d.  If, in the opinion of Client, any aspect of the financial arrangements provided for under this Agreement, the Exhibits, attachments or any addenda hereto, become non-competitive or if Client is presented with a more beneficial financial arrangement from another party for the services provided herein, the ESI parties shall negotiate in good faith with Client to modify the financial arrangements herein to be competitive or meet the terms presented by such third party, as the case may be. If the parties cannot mutually agree to the modification of the financial arrangements within 30 days of the initial request for renegotiation by Client, Client may terminate this Agreement upon 120 days' written notice.

e.  In the event the ESI network of Participating Pharmacies (as described in Exhibit A, Section 4 of this Agreement) does not include 90% or more of the retail pharmacies in the state of Montana, Client may terminate the Agreement upon 120 days written notice to Diversified.

f.  In the event Client terminates the Agreement prior to September 30, 2002, pursuant to subsection d or e above, Client shall pay to Diversified the amount of 1/60th of the total Implementation Credit paid by Diversified under the agreement superseded by this Agreement for each month the full term of the Agreement is not realized (considering the term of this Amended and Restated Agreement and the agreement which it superseded). (See Exhibit C, Section 3 for calculation of Implementation Credit.) In addition, in the event Client terminates the Agreement pursuant to subsection d above, the provisions of Exhibit C, Section 1.a. shall be invoked.

## SECTION SEVEN
### Miscellaneous

7.1  <u>Assignment</u>. Unless it has first obtained the written consent of the other party, neither party may assign this Agreement or any of its rights or obligations under this Agreement to any other person or entity; provided, however, that (a) Diversified or ESI may make such an assignment to any entity controlling, controlled by, or under common control with ESI parties and (b) Client may make such an assignment to any entity controlling, controlled by, or under common  control with Client which is a successor in interest to Client with respect to the Plans, provided that under any assignment by Client, the terms of this Agreement apply only to Participants of the Plans issued or administered by Client as they exist at the time of the assignment. Client acknowledges that persons and entities under contract with ESI parties may perform certain administrative services under this Agreement, provided that each ESI party shall remain responsible for the proper performance of its obligations in accordance with the terms of this Agreement. The parties further acknowledge that the mail pharmacy services to be provided hereunder by ValueRx will be provided by ESI Mail Pharmacy Services, Inc. ("ESI Mail") once ESI (i) transfers the appropriate assets to ESI Mail, (ii) qualifies ESI Mail as a foreign corporation with the State of Montana, and (iii) obtains the applicable licenses from the State of Montana Board of Pharmacy.

7.2  <u>Public References</u>. Each ESI party shall have the right to make public reference to its role and responsibility in providing prescription drug benefit management services and/or mail order pharmacy services to Client as set forth in this Agreement; provided, however, that ESI parties shall not use Client's name or trademark for any advertising unless first approved in writing by Client. ESI parties shall have the right to approve all written public references to and descriptions of the applicable party, including in any Plan or Participant materials. Client will follow ESI parties' reasonable instructions regarding the use of ESI parties' trademarks and service marks.

7.3  <u>Impossibility of Performance</u>. Neither Client nor any ESI party shall be deemed to be in violation of this Agreement if prevented from performing any obligation under this Agreement due to any cause beyond its reasonable control, including any act of war or natural disaster. At all times during the term of this

4

**MT 076216**

Agreement, however, Diversified shall have in place an emergency disaster recovery plan, which shall include maintaining a contract with a recovery site vendor to provide an alternative computer capability to re-establish Diversified's data center should the processing function be destroyed or interrupted and procedures to re-establish claims processing services within 48 hours after a disaster is declared by Diversified.

7.4    <u>Entire Agreement</u>.  This Agreement, including its Exhibits, Attachments, and addenda, constitutes the complete understanding of the parties with respect to the subject matter hereof and may not be amended except upon written agreement of the parties.  The terms of the body of this Agreement shall apply to the Exhibits and Attachments and addenda.  In the event of a conflict between the terms of the body of this Agreement and any Exhibit or Attachment or addendum, the terms of the Exhibit or Attachment or addendum will control.  For services rendered on or after the Effective Date, this Agreement supersedes and replaces any existing agreements related to the same subject matter between Client and Diversified, including, but not limited to, the Pharmaceutical Service Agreement between Diversified and Client which was effective October 1, 1997 (the "October 1, 1997 Agreement"); provided, however, that the Mail Service Addendum to the October 1, 1997 Agreement which became effective December 1, 1999 shall not be superseded by this Agreement, but shall be considered an addendum to this Agreement effective January 1, 2000, as provided in such Addendum.

7.5    <u>Disputes</u>.  In the event that any dispute relating to this Agreement arises between ESI parties and Client, any party may by written notice call a telephone conference regarding the dispute to be attended by executive officers of the applicable parties who shall attempt in good faith to resolve the dispute.  If the dispute cannot be resolved through executive negotiation as described in the preceding sentence within 30 days from the date of the initial notice, and if any party wishes to pursue the dispute, the dispute shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association.  The site for any arbitration in connection with this Agreement shall be Helena, Montana.  The arbitrator or panel of arbitrators shall be designated by mutual agreement.  In no event may the arbitration be initiated more than one year after the date a party gave written notice of the dispute to the other party.  The arbitrators shall have no power to award any punitive damages or exemplary damages or to ignore or vary the terms of this Agreement and shall be bound by controlling law.

7.6    <u>Independent Contractors</u>.  The relationship between the parties (ESI parties on the one hand and Client on the other hand) is solely one of independent contractors and nothing in this Agreement shall be construed or deemed to create any other relationship between the parties, including one of employment, agency or joint venture.

7.7    <u>Regulatory Compliance</u>.  To its best knowledge, each party is currently in compliance with and shall continue throughout the term of this Agreement to comply with any laws and regulations material to its business.  For any business for a self-insured Customer which is subject to the provisions of the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. ("ERISA"), Client shall ensure that its activities in regard to those plans are in compliance with ERISA.  Each party shall be responsible for interfacing with regulatory authorities on matters relating to compliance with laws or regulations which are directly applicable to its business, including matters relating to licenses necessary for each party to operate its business, though each party shall cooperate with the other in resolving any regulatory matters relating to this Agreement.  Client shall promptly notify Diversified upon becoming aware of any change in law or regulations applicable to Client or a Customer which are likely to impact the provision of services in connection with this Agreement.  Each party shall promptly notify the other of any inquiry it receives from a regulatory agency or other government entity relating to this Agreement or to the other party or its affiliates.

Client acknowledges and agrees that no ESI party acts as a fiduciary of a Plan for purposes of ERISA when contracting with Participating Pharmacies, when negotiating rebates from drug manufacturers under the Rebate Program, or when exercising any other cost-containment functions described in this Agreement.  No amounts which are to be or are transferred to ESI parties shall be considered plan assets.  Client acknowledges and agrees that:  (i) neither a Plan nor any Participant has a preferential claim against or beneficial interest in any funds paid to ESI parties; (ii) the funds paid to ESI parties do not in any way constitute security for the obligation to pay benefits under a Plan; (iii) ESI parties are not required to segregate the payments that are received from a Plan or otherwise to identify these payments separately

**MT 076217**

from such party's general assets; (iv) any and all interest earned on funds transferred to ESI parties in connection with this Agreement shall belong to ESI parties; and (v) any communication from a Plan to Participants will be consistent with the foregoing propositions.

In the event that Client, any Plan, any self-insured Customer, the arrangement established by this Agreement or any payments for claims for Prescription Drug Services or fees to ESI parties are subjected to any form of governmental or regulatory charges, including any premium taxes, insolvency fund fees, guarantee fund fees, licensing fees, sales taxes or any similar charges, such charges shall be the sole responsibility of Client, the Plan or the self-insured Customer.

7.8     <u>Governing Law</u>.  This Agreement shall be governed by and construed under the laws of the state of Montana.

7.9     <u>Insurance</u>.  During the term of this Agreement, each party shall maintain adequate professional and general liability insurance appropriate to its business.

7.10     <u>Indemnity</u>.  Each party (ESI parties on the one hand, and Client on the other hand) shall indemnify and hold harmless the other party from and defend against any and all claims, lawsuits, judgments, settlements and expenses, including reasonable attorneys' fees, caused by the negligence or willful misconduct of the first party.

7.11     <u>Notices</u>.  All notices required under this Agreement shall be given in writing, signed by the party giving notice and delivered by hand or first-class mail to the other party at the address set forth below or at such address as has been given by proper notice.  All notices to ESI parties shall be directed to Diversified unless otherwise specifically stated in the Agreement, Exhibits, Attachments, or addenda.

7.12     <u>Participant hold harmless</u>.  Neither Diversified nor ESI will for any reason, including but not limited to nonpayment by Client, insolvency of Client, or breach of this Agreement, bill, charge, collect a deposit, seek compensation, remuneration or reimbursement or have any recourse from or against a Participant or a person other than Client acting on behalf of a Participant for Prescription Drug Services, mail order pharmacy services and other services provided pursuant to this Agreement.  A substantively similar provision will be included in contracts with ESI Participating Pharmacies.  This does not prohibit Diversified, ESI or an ESI Participating Pharmacy from collecting allowable coinsurance, copayments, or deductibles, or fees for uncovered services provided on a fee-for-service basis to a Participant.  This Agreement does not prohibit Diversified, ESI or an ESI Participating Pharmacy and a Participant from agreeing to continue services solely at the expense of the Participant if Diversified, ESI or the ESI Participating Pharmacy has clearly informed the Participant that Client may not cover or continue to cover a specific service or services.  Except as provided in this Agreement, this Agreement does not prohibit Diversified, ESI or an ESI Participating Pharmacy from pursuing any legal remedy available for obtaining payment for services from Client.  This provision shall survive the termination of this Agreement, regardless of the reason for termination and supersedes any oral or written contrary agreement.

**MT 076218**

**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION THAT MAY BE ENFORCED BY THE PARTIES.**

Diversified Pharmaceutical Services, Inc.
6625 W. 78th Street
Bloomington, MN  55439-0842

By:_____

Print Name  _Stuart h. Bascomb_____

Print Title  _Vice President_____

Date_____

Blue Cross and Blue Shield of Montana
560 Park Avenue
P.O. Box 4309
Helena, MT  59604

By_____

Print Name  _Peter T. Babin_____

Print Title  _Executive Vice President_

Date  _15/8/99_____

Express Scripts, Inc.
13900 Riverport Drive,
Maryland Heights, Missouri 63043

By:_____

Print Name  **Stuart L. Bascomb**

Print Title  **Executive Vice President**
~~Phone: 314-702-7245~~

Date____  **Fax: 314-702-7055**

ValueRx Pharmacy Program, Inc.
13900 Riverport Drive
Maryland Heights, Missouri 63043

By:_____

Print Name  _Stuart L. Bascomb_____

Print Title  _Vice President_____

Date_____

s:\legal\client\bcbsmont\k120299.doc

**MT 076219**

EXHIBIT A

SERVICES BY ESI PARTIES

1.  <u>General Support and Consultative Services</u>.  ESI parties shall provide to Client, upon Client's reasonable request, general support and consultative services regarding pharmacy benefit design, generic drug program design and implementation, general drug use and cost data, pharmacy network design, pharmacy provider communications, drug formulary design and implementation, and drug utilization evaluation.

2.  <u>Claims Processing Services</u>.  Diversified shall provide the claims processing services described below. Client shall have the complete discretionary, binding and final authority with regard to the payment of any disputed claim or provision of benefits, according to processes established by Client.  Client acknowledges and agrees that Diversified does not have discretionary authority to manage or administer the Plan.  Upon any termination of this Agreement, except termination for Client insolvency as provided under 6.3.b. of the Agreement, Diversified shall be obligated to process only those claims which are for prescriptions dispensed before the termination date and which are received by Diversified within 60 days of the termination date.  Client shall pay all fees or other charges due and payable to ESI parties under this Agreement within ninety (90) days after the termination date.  Notwithstanding the preceding, Diversified may delay payment of any final rebates to allow for any final adjustments or request that Client pay a reasonable deposit in the event Diversified is requested to process after the termination date claims incurred on or prior to such date.

    a.  <u>Claims from Participating Pharmacies and ValueRx Mail Service Pharmacy</u>.  Claims submitted by Participating Pharmacies and ValueRx mail service pharmacy claims will be processed in accordance with any applicable standard operating procedure, the fees shown in Exhibit C, and the Drug Benefit Worksheet ("DBW"); provided, however, that any benefit determinations relating to Participant payments shall be based on the rates payable by Client to Diversified.  Subject to the provisions of Exhibit B, Section 3, Diversified or ESI will pay Participating Pharmacies, in accordance with the ESI agreement with the applicable Participating Pharmacy.

    b.  <u>Participant Claims</u>.  Client shall provide Participants with a claim form approved by Diversified for use in submitting claims for Prescription Drug Services not submitted on-line by a Participating Pharmacy.  When a claim is submitted on the approved form by a Participant, Diversified shall process the claim in accordance with the standard operating procedure mutually agreed upon by the parties, the fees shown in Exhibit C, and the DBW; provided, however, that any benefit determinations relating to Participant payments shall be based on the rates payable by Client to Diversified, unless Client has specified in the DBW that payment of such Participant-submitted claim is to be determined based on the charge actually made by the pharmacy to the Participant.

    c.  <u>Claims Payment Procedures</u>.  Diversified shall invoice Client, on a periodic basis, for its liability for claims processed in accordance with the Agreement.  Invoicing procedures and timeframes for payment by Client are described in Exhibit C, and may be further supplemented in a standard operating procedure mutually agreed upon by the parties.  Diversified's action for non-payment is addressed in, but not limited to, the termination for non-payment provisions of this Agreement (section 6.3.c. of the Agreement).

    d.  <u>Deposit.</u>  In the event Client is delinquent in payment of fees for two consecutive months, Diversified shall have the option, at its discretion, to require Client to provide Diversified a deposit in an amount equal to the average monthly invoice amount for the previous six (6) months for claims funding and administrative fees or if there is less than six (6) months billing history, then such deposit shall be based on the average monthly invoice of the actual billing history. Diversified shall retain the deposit until the termination of this Agreement and may apply all or a portion of the deposit to any outstanding unpaid balance due from Client.  Any remaining deposit funds shall be returned to Client.

3.  <u>Reporting</u>.  Diversified will provide Client with those reports selected by Client from Diversified's standard managed care reporting package, as revised by Diversified from time to time, as applicable to the services provided by Diversified under this Agreement  Any reports requested by Client other than Diversified's

**MT 076220**

standard managed care reports shall be provided by Diversified upon terms, including additional fees, agreed by the parties before the reports are produced as described in the Section below entitled "Additional Services"; provided, however, ESI parties shall provide to Client, at no additional cost, that information reasonably necessary for Client to assess the sufficiency of the ESI Participating Pharmacy network, Participants' satisfaction with services provided, and the qualify and outcome of the services provided to Participants. In addition, ESI parties shall provide to Client, upon Client's reasonable request, and at no additional cost, documentation regarding claims paid by Client and Client's utilization. ESI parties shall maintain the books, records, financial information and documentation of services provided to Participants for five years in a manner that facilitates regulatory review.

4.     Participating Pharmacies.

     a.     Retail

          i.     ESI Network Pharmacies. ESI has created national networks of Participating Pharmacies under contract with ESI ("National Networks"). The National Network specified in Exhibit C, section 5, shall be available to provide Prescription Drug Services to Participants, provided they present Diversified or ESI- approved identification cards to such National Network Participating Pharmacies. Neither Diversified or ESI makes any representations or promises regarding the continued availability of a Participating Pharmacy. Deletions from or additions to the National Network may be made at ESI's discretion. Pharmacies which meet ESI criteria and payment terms shall not be prohibited from participation in the network. Diversified or ESI shall provide Client, on a monthly basis, an updated listing of Participating Pharmacies in the applicable National Network which are located in Montana. Diversified or ESI shall further provide Client written notice of deletions or additions to such National Network that materially affect the access of applicable Participants obtaining Prescription Drug Services from such network. Client shall in turn provide written notice of such changes to applicable Participants.

          ii.     Creation and Adoption of Multiple Networks. Client agrees and acknowledges that the creation and adoption of networks of Participating Pharmacies will be subject to reasonable operational and system requirements of Diversified or ESI. Any contracting of Participating Pharmacies on a retail basis shall be by ESI.

     b.     Mail Service Pharmacies. Mail service pharmacy provisions are addressed in a separate addendum to this Agreement.

     c.     Regulatory Compliance; Network Changes. ESI shall provide basic pharmacy network maintenance to the ESI Participating Pharmacy network as a standard service under this Agreement, including the addition and deletion of specific Participating Pharmacies to the ESI network. Upon written request of Client, ESI shall provide Client with copies of the generic provider agreement applicable to the ESI network utilized by Client. Client shall be responsible for advising ESI of any changes to the ESI provider agreements or the makeup of the ESI network which Client believes are necessary for Client to be in compliance with regulatory requirements applicable to Client or to meet Client's needs. If Client believes that the provider agreements applicable to an ESI network need to be amended or the makeup of the network needs to be changed substantially, Client shall notify ESI in writing of the necessary changes. In such a case, ESI shall work with Client to develop a work plan to obtain the necessary amendments, including timelines and the estimated costs to Client for time and materials associated with the project. Once the work plan has been mutually agreed upon by the parties, ESI shall use reasonable efforts to execute the required changes in accordance with the work plan. ESI agreements with Participating Pharmacies require that the Participating Pharmacy comply with applicable state laws.

     d.     Neither ESI nor Diversified shall adopt any selection criteria for choosing a Participating Pharmacy that allows ESI or Diversified to avoid high risk populations by precluding a pharmacy from being a Participating Pharmacy because the pharmacy is located in a geographic area that contains populations or providers presenting a risk of higher than average claims, losses, or use of health care services. If Client rejects a pharmacy for inclusion as a Participating Pharmacy

**MT 076221**

because of the rate required to contract with such pharmacy, such rejection shall not be construed as adverse selection by ESI or Diversified.  Neither Diversified nor ESI shall offer any inducement to a Participating Pharmacy to provide less than medically necessary services to a Participant or prohibit a Participating Pharmacy from advocating on behalf of a Participant within the utilization review or grievance process established by Client.  Further, neither ESI nor Diversified shall penalize a Participating Pharmacy because the Participating Pharmacy in good faith reports to state or federal authorities an act or practice by ESI or Diversified that may adversely affect a Participant's health or welfare.  Diversified shall establish a mechanism by which a Participating Pharmacy may determine in a timely manner whether or not a person is covered by Client.

    e.    <u>Audits of Participating Pharmacies</u>.  Audits of Participating Pharmacies may be conducted by ESI's internal auditors or its outside auditors, and at the pharmacy or at Diversified by a review of electronically transmitted claims.  To compensate Diversified and ESI for the cost of conducting such audits, Client shall be charged an audit fee equal to twenty percent (20%) of any overpayments attributable to Client, which are recovered from Participating Pharmacies.  Diversified's and ESI's obligations to attempt recovery shall be Diversified's and ESI's sole obligation and liability with respect to remedying such overpayments.  Neither Diversified nor ESI shall be required to institute litigation to collect any overpayments.  No attempts to recover overpayments from Participating Pharmacies shall be made more than one year from the date of the claim or asserted overpayment.

5.    <u>Drug Formulary</u>.  Diversified grants Client the right to use, during the term of this Agreement Diversified's drug formularies ("Diversified Formularies") or a drug formulary adopted by Client based on a Diversified formulary ("Client Formulary").  (The Diversified Formularies and Client Formulary are referred to collectively as "Formularies.")  Client understands and agrees that this right is limited solely to Client's own use of the Formularies in connection with Plans for which Diversified provides services under this Agreement.  At Diversified's request, Client agrees to include Diversified's copyright notice on all copies of the Formularies.  Client shall have no right to use the Formularies following termination of this Agreement.  Upon any such termination, Client shall destroy all copies of the Formularies in its possession and Client shall direct any third parties to whom it has provided a Formulary to destroy all copies.

6.    <u>Rebate Program.</u>

    a.    <u>Qualification for the Rebate Program</u>.  Provided that the following requirements are met, Client shall be eligible to receive rebates under the Rebate Program with respect to certain Prescription Drug Services dispensed to and submitted on behalf of Participants by Participating Pharmacies.  The requirements for eligibility for the Rebate Program include the following:  (i)  Client shall adopt a Formulary and a Participating Pharmacy network; (ii) Client and/or Customer shall distribute the Formulary (or a summary of the Formulary) to Participants or, if applicable, the Plan's participating physicians; and (iii) Client and/or Customer shall conduct appropriate communication to such parties concerning use of the Formulary, including an indication, if distributed to Participants that Participants should furnish the Formulary to their physicians; (iv) Client shall comply with the other reasonable, generally applicable requirements for participation in the Rebate Program and associated program parameters as are communicated by Diversified to Client from time to time.  If Client intends to retain any rebate amounts based on prescription drugs dispensed to Participants of any self-insured Customer, it shall disclose the retention of rebates to such Customer and shall only retain any rebate amounts upon the agreement of the Customer as part of Client's reasonable compensation for services to such Customer.  Client further agrees to disclose to self-insured Customers and obtain their written consent to the retention by Diversified of a portion of the rebate amounts in partial payment of Diversified's service fee as provided in Exhibit C.

    b.    <u>Distribution of Rebates</u>.  Diversified will make monthly payments to Client of rebate earnings with approximately a 90 day lag period; subject to the provisions of Exhibit C, Section 1.

    c.    <u>Application with respect to certain Government Programs</u>.  No rebates shall be payable to Client for any Prescription Drug Services dispensed to any Participant for which Client, a Plan, a pharmacy or any other person or entity seeks direct reimbursement from Medicare, Medicaid or

**MT 076222**

any state health care program, as defined in Section 1128(h) of the Social Security Act. Notwithstanding the foregoing, if Client or a Plan has a contract with or receives a grant from a state or the federal government under which capitated or lump-sum payments are received to provide coverage for and/or arrange for the provision of health care services to Participants who are beneficiaries of Medicare, Medicaid or any state health care program, as defined in Section 1128(h) of the Social Security Act, and notifies Diversified in writing of such an arrangement, rebates shall be payable for Prescription Drug Services dispensed to such Participants. Client represents that no Participants receiving Prescription Drug Services which are eligible for rebates under this Agreement are enrolled in Medicaid or other state health care programs for which Client is paid on a fee for service basis.

d.   **Rebate Arrangements with Manufacturers.**  Diversified will negotiate with drug manufacturers regarding the terms of the Rebate Program and will arrange for the payment of rebates on certain Prescription Drug Services utilized by Participants.  Client agrees that during the term of this Agreement Client will not negotiate or arrange or contract in any way for rebates on or the purchase of prescription drugs from any manufacturer with respect to drugs dispensed in connection with this Agreement.  Client shall not be eligible for rebates on prescriptions under the Rebate Program for any period during which Client or a Customer is or was receiving rebates on such prescriptions from manufacturers under an agreement with such manufacturers or through a third party.  Diversified reserves the right to make retroactive adjustments to rebates payable to the Client or Customer in accordance with the provisions of this paragraph.  In the event Client, one of Client's Customers, or a Plan negotiates or arranges with a drug manufacturer for rebates on or the purchase of prescription drugs or services in violation of this Section, but without limiting Diversified's right to other remedies, Diversified may immediately terminate Client's participation in the Rebate Program or terminate this Agreement according to the terms of the material default provision of the Section entitled "Termination." In the event of such termination of Client's participation in the Rebate Program or this Agreement due to violation of this Section, Diversified shall be entitled to keep 100% of any and all rebates due to Client under this Agreement which have not been paid to Client as of the date the participation so terminates.

7.   **Rebate Guarantee.**

a.   **Guarantee.**  Diversified guarantees that Client will receive, at a minimum, rebates for Prescription Drug Services dispensed and submitted on behalf of Participants by Participating Pharmacies or ValueRx mail service pharmacy that will average $3.95 per brand-name rebate-eligible Prescription Drug Service that is processed under (i) a closed formulary (only formulary drugs are covered by the Plan, with limited medical exceptions where clinically required) or (ii) a benefit design with a generic/formulary brand/non-formulary brand drug copayment structure, with a $15.00 minimum copayment differential between formulary brand and non-formulary brand drugs; provided, however, that any benefit plans under (i) or (ii) with a deductible of more than $100 per annum are precluded from consideration.  Any guarantee shall be contingent on Client's continuing compliance with the requirements for the Rebate Program.

b.   **Calculation of the Rebate Guarantee.**   The rebate guarantee shall apply on a calendar year basis.  Once all, or substantially all, of the rebates with respect to claims invoiced for the calendar year have been received from manufacturers, Diversified shall calculate the aggregate amount payable, if any, on account of this guarantee.  If, for any period for which a rebate guarantee is in effect, Diversified does not meet the guarantee, Diversified shall forward to Client the amount due under the guarantee within 30 days of such calculation.

c.   **Adjustment of the Rebate Guarantee.**  In the event the amount of rebates available to Client under the Rebate Program is decreased due to a change in Plan design or due to a change in federal, state or local laws or regulations or the application or interpretation of such laws or regulations during the term of the Agreement, Diversified shall provide notice of such circumstances and propose an equitable adjustment to the rebate guarantee.  If the parties cannot agree on an appropriate change to this section, either party may terminate this Agreement upon 120 days written notice to the other party.  In the event Client terminates this Agreement pursuant to this section, Section 6.3.f. of this

4

**MT 076223**

Agreement remains applicable.  Additionally, in the event Client does not or is not able to follow the formulary recommendations of Diversified's clinical pharmacists, Diversified reserves the right to revise the rebate guarantee, but only to the extent not following such formulary recommendations negatively affects Client's rebate earnings.

8.    Inquiries.

a.    <u>Pharmacy and Participant Inquiries.</u>  Diversified or ESI shall be responsible for responding to inquiries from Participating Pharmacies regarding the services provided by Diversified or ESI under this Agreement.  At Client's request, upon reasonable written notice and for additional fees agreed upon by the parties, Diversified shall be responsible for responding to inquiries from Participants regarding the services provided by ESI parties under this Agreement.  Inquiries to Diversified or ESI may be made through a toll-free telephone line that operates 24 hours every day.

b.    <u>Prior Authorization and Medical Necessity Review Services.</u>  Diversified shall provide advice to Client regarding drugs which the Plan may require be prior authorized for coverage.  Diversified shall make available to Client prior authorization services in connection with those Prescription Drug Services mutually agreed to by Diversified and Client, and medical necessity review services, subject to prior agreement on the fees, if any, applicable to such services.  In the event Client requests in writing and upon reasonable notice that Diversified provide prior authorization and/or medical necessity review services, Diversified's staff, under the supervision of its clinical pharmacists, shall review Participants' prescriptions for those drugs requiring prior authorization or medical necessity review in accordance with criteria, definitions and procedures developed by Diversified and subscribed to by Client.

c.    <u>Participant Appeals.</u>  ESI parties shall not be responsible for responding to formal complaints or appeals from Participants regarding denial of benefits under their Plan or to formal complaints or grievances against the Plan; nor shall ESI parties be responsible or liable in any way for Client's or the Plan's compliance with the terms and conditions of the Plan or applicable laws or regulations regarding responding to Participant complaints or appeals.  Client is solely responsible for the review of appeals of denied claims and for the final resolution of complaints or grievances from Participants. Client shall have complete discretionary, binding and final authority to construe the terms of the Plan, to interpret ambiguous Plan language, to make factual determinations regarding the payment of claims or provision of benefits, to review denied claims and to resolve complaints by Participants.  Diversified and ESI shall cooperate with Client on any Participant appeal related to denied claims and shall provide Client all reasonably necessary documents and information related to such appeal in Diversified's or ESI's possession or which can reasonably be obtained from Participating Pharmacies.

9.    <u>Diversified AlertCare.</u>  Diversified shall make available to Client Diversified's drug utilization evaluation ("DUE") services via on-line communication to Participating Pharmacies known as the Diversified AlertCare<sup>SM</sup> service.  Client acknowledges that Diversified AlertCare is an educational service designed to enhance the information available to Participating Pharmacies in providing Prescription Drug Services to Participants.  Client further acknowledges that Diversified AlertCare is based only on the prescription claim and Participant information in Diversified's system and is limited to certain drugs and criteria as established by Diversified in its on-line claims adjudication system.  Client agrees to inform Participants of the Diversified AlertCare service.

10.    <u>Systems Programs.</u>  From time to time, Diversified or ESI may offer to Client systems programs that have varying purposes.  Diversified will make available upon 90 days prior written request its on-line reporting product, including subsequent releases as the product is enhanced from time to time, subject to Client's compliance with Diversified's standard requirements and documentation relating to the product.  The cost of Diversified's on-line reporting product and any updates or new releases thereto is included in Client's service fees set forth in Exhibit C.  Client may, upon request, participate in any other program by meeting the qualifications for the program, signing the appropriate documents and paying any applicable fees. Diversified or ESI retains the right, upon ninety days written notice, to substitute a new program while discontinuing any existing program or to terminate any program without offering a substitute.  In each case,

**MT 076224**

Client will have ninety days following the date of Diversified's or ESI's written notice to discontinue a program or to transfer to a new one, as applicable.

11.  <u>Participant Materials</u>.  Client shall be responsible for provision of Participant materials, including Diversified-approved or ESI-approved identification cards and other introductory materials, to Participants. At Client's request and upon reasonable notice, Diversified will provide Diversified's or ESI's standard or customized identification cards and introductory materials as mutually agreed upon by the parties in writing and for an additional fee.

12.  <u>Performance Guarantees</u>.  Diversified and Client agree to the terms of the performance standards and guarantees set forth in Attachment A1.

13.  <u>Clinician</u>.  Diversified shall provide funding for Client's clinical pharmacist or clinical pharmacist consultant up to a maximum of $40,000 per contract year (October 1 through September 30, with the three last months under the October 1, 1997 Agreement considered herein).  Client shall submit an annual invoice to Diversified setting forth the total actual expenses for the clinical pharmacist or clinical pharmacist consultant during the previous year.  Diversified shall provide reimbursement of Client's actual expenses (up to $40,000) within 30 days of receipt of invoice.

14.  <u>Additional Services</u>.  In the event Client requests an ESI party to provide services or products other than those described above, including special research projects, reports, system changes to accommodate changes in Client's pharmacy program or system, or other tasks to be specifically performed for or on behalf of Client, Client shall pay to ESI parties an additional charge to be mutually agreed upon by the parties in writing before the services are provided.

15.  <u>Additional Obligations of ESI Parties</u>.  Obligations of ESI parties are further described in the body of this Agreement and its other Attachments and Exhibits.

s:\legal\client\bcbsmont\k120299.doc

**MT 076225**