# EXHIBIT 33



E-SERVED 09/15/03 06:11 PM ET AWP MDL No. 1456

DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of Inspector General

# Memorandum

EXHIBIT 2 2/22/06 Towsley

Date JUL 11 1996

From June Gibbs Brown
Inspector General

Subject Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services (A-06-95-00068)

To Bruce C. Vladeck
Administrator
Health Care Financing Administration

Attached for your information and use is our final report entitled, "Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services." This review was conducted as part of a nationwide audit of pharmacy drug acquisition costs at the Health Care Financing Administration's request. Most States reimburse pharmacies for Medicaid prescriptions using a formula which generally discounts the average wholesale price (AWP) by 10.5 percent. The objective of our review was focused on developing an estimate of the difference between the actual acquisition costs of drugs of pharmacies and AWP for both brand name and generic drugs.

The Montana Department of Public Health and Human Services (State Agency) was 1 of 11 States randomly selected as part of the nationwide review. Montana reported drug expenditures of $26 million in Calendar Year 1994.

Through statistical sampling, we obtained pricing information from 43 Montana pharmacies. We obtained 2,924 invoice prices for brand name drugs, and 1,662 invoice prices for generic drugs. The overall estimate of the extent that AWP exceeded pharmacy purchase invoice prices was 16.2 percent for brand name drugs and 48.5 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent. The estimates exclude the results obtained from non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, home IV, etc.) because such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inappropriately inflated our percentages.

10-19-05 DEPOSITION EXHIBIT No. Buska 012 NORDHAGEN REPORTING



We are recommending that the State Agency consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs.

In response to our draft report, the State Agency expressed concerns about the evaluation of Medicaid pharmacy pricing. The State Agency also raised questions concerning the further discounting of AWP in pricing formulas and the effect of its result. The State Agency's comments are incorporated in our final report.

We welcome any comments you have on this Montana State report. If you have any questions, please call me or have your staff contact George M. Reeb, Assistant Inspector General for Health Care Financing Audits, at (410) 786-7104.

To facilitate identification, please refer to Common Identification Number A-06 -95-OO068.

Attachment





Department of Health and Human Services

# OFFICE OF INSPECTOR GENERAL

## REVIEW OF PHARMACY ACQUISITION COSTS FOR DRUGS REIMBURSED UNDER THE MEDICAID PRESCRIPTION DRUG PROGRAM OF THE MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES

JUNE GIBBS BROWN
Inspector General

JULY 1996
A-06-95-00068



ESERVED
09/15/03
06:11 PM ET
AWP-MDL NO.

# SUMMARY

At the request of the Health Care Financing Administration (HCFA), the Office of Inspector General (OIG) conducted a nationwide review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program. Since most States reimburse pharmacies for Medicaid prescriptions using a formula which discounts the average wholesale price (AWP), the objective of our review was to develop an estimate of the difference between the actual acquisition costs of drugs of the pharmacies and AWP for both brand name and generic drugs.

To accomplish our objective, we selected a random sample of 11 States from a universe of 48 States and the District of Columbia. Arizona was excluded from the universe of States because the Medicaid drug program is a demonstration project using prepaid cavitation financing and Tennessee was excluded because of a waiver received to implement a statewide managed care program for Medicaid. Montana was one of the sample States, as well as California, Delaware, District of Columbia, Florida, Maryland, Missouri, Nebraska, New Jersey, North Carolina, and Virginia.

Additionally, we selected a sample of Medicaid pharmacy providers from each State and obtained invoices of their drug purchases. The pharmacies were selected from each of five categories--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, etc.). We included the non-traditional category so as to be able to exclude those pharmacies from our overall estimates. We believed such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inflated our percentages.

We compared each invoice drug price to AWP for that drug and calculated the percentage, if any, by which AWP exceeded the invoice price. We then projected those differences to the universe of pharmacies in each category for each State and calculated an overall estimate for each State. Additionally, we projected the results from each State to estimate the nationwide difference between AWP and invoice price for each category.

In Montana, we obtained pricing information from 43 pharmacies. Specifically, we obtained 2,924 invoice prices for brand name drugs, and 1,662 invoice prices for generic drugs. For Montana, the overall estimate of the extent that AWP exceeded invoice prices was 16.2 percent for brand name drugs and 48.5 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent and exclude the results obtained from non-traditional pharmacies.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services
i



E-SERVED
09/15/03
06:11 PM ET
AWP MDL NO.1456

We are recommending that the Montana Department of Public Health and Human Services (State Agency) consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs. We will share the information with HCFA from all 11 States in a consolidation report for their use in evaluating the overall Medicaid drug program.

The Director of the State Agency responded to our draft report in a letter dated April 4, 1996. The State Agency stated that any evaluation of Medicaid pharmacy pricing should also consider the dispensing fee portion of the payment formula and the effect of Federal upper limit pricing for generic drugs. The State Agency was also concerned that further discounting of AWP in pricing formulas would result in a corresponding inflation of AWP.

We agree with the Director that acquisition cost is just one factor to consider in evaluating Medicaid pharmacy reimbursement. We also agree that inflation of AWP could result from further discounting AWP in pricing formulas. However, we believe that information on prices actually paid by pharmacies will be useful to both HCFA and the States in setting future pharmacy reimbursement for the ingredient cost of drugs. The full text of the Director's comments is included in Appendix 4.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Semites
ii



TABLE OF CONTENTS

| | PAGE |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| SCOPE | 2 |
| FINDINGS AND RECOMMENDATIONS | 4 |
| CONCLUSIONS AND RECOMMENDATION | 6 |

APPENDICES

APPENDIX 1- SAMPLE DESCRIPTION -":

APPENDIX 2- MONTANA SAMPLE RESULTS

APPENDIX 3- NATIONWIDE SAMPLE RESULTS

APPENDIX 4- STATE AGENCY COMMENTS



E-SERVED
09/15/03
06:11 PM ET
AWP MDL No. 1456

# INTRODUCTION

At the request of HCFA, OIG, Office of Audit Services (OAS) conducted a review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program of the Montana Department of Public Health and Human Services (State Agency). The objective of our review was to develop an estimate of the difference between the actual acquisition costs of drugs and AWP. This review was conducted as apart of a nationwide review of pharmacy acquisition costs. Montana was 1 of 11 States randomly selected as part of the nationwide review.

## *BACKGROUND*

Medicaid regulations provide for the reimbursement of drugs using two methods. If a drug is a multiple source (generic) drug, then reimbursement is based on the lower of the pharmacist's usual and customary charge to the general public or an upper limit amount plus a dispensing fee. The Federal upper limit amounts are established by HCFA. If a drug is a single source (brand name) drug, or a generic drug for which an upper limit amount has not been established, then the reimbursement is the lower of the pharmacist's usual and customary charge to the general public or the estimated acquisition cost (EAC) plus a reasonable dispensing fee. The State agencies are responsible for determining the EAC and the dispensing fee.

The EAC for most States is calculated by using AWP for a drug less some percentage. The AWP is the price assigned to the drug by its manufacturer and is listed in either the ***Red Book***, ***Medispan*** or the ***Blue*** Book--publications universally used in the pharmaceutical industry. Prior to 1984, most States used 100 percent of AWP for reimbursement of acquisition costs. However, OIG issued a report in 1984 which stated that, on average, pharmacies purchased drugs for 15.9 percent below AWP. In 1989, OIG issued a follow-up report which concluded that pharmacies were purchasing drugs at discounts of 15.5 percent below AWP. Both the 1984 and 1989 reports combined brand name and generic drugs in calculating the percentage discounts and included a comparison of 3,469 and 4,723 purchases, respectively.

In 1989, HCFA issued a revision to the State Medicaid Manual which pointed out that a preponderance of evidence demonstrated that AWP overstated prices that pharmacies actually paid for drugs by as much as 10 to 20 percent. The Manual further provided that, absent valid documentation to the contrary, it would not be acceptable for a State to make reimbursements using AWP without a significant discount.

In November 1990, the Omnibus Budget Reconciliation Act of 1990 was passed which placed a 4-year moratorium on changes to States' reimbursement policies. The moratorium expired on December 31, 1994 and HCFA requested that we, once again, determine the difference between AWP and actual pharmacy acquisition cost.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services

1



E-SERVED
09/15/03
06:11 PM ET

The State Agency reported drug expenditures of $26 million in Calendar Year (CY) 1994.

## SCOPE

Our review was performed in accordance with generally accepted government auditing standards. The objective of our review was to develop an estimate of the difference between AWP and the actual invoice prices of both brand name and generic prescription drugs to Medicaid pharmacy providers. Our objective did not require that we identify or review any internal control systems.

Our review was limited to ingredient acquisition costs and did not address other areas such as: the effect of Medicaid business as a contribution to other store sales; the cost to provide professional services other than dispensing a prescription such as therapeutic interventions, patient education, and physician consultation; and the cost of dispensing which includes costs for computers, multi-part labels, containers, technical staff, transaction fees, Medicaid specific administrative costs, and general overhead. We also did not take into consideration the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations. We plan to evaluate the effect of the Federal upper limit amounts on generic drug reimbursements in a subsequent review.

We obtained a listing of all Medicaid pharmacy providers from the State Agency. The State Agency was responsible for classifying each pharmacy as chain, independent or non-traditional. For purposes of this review, a chain was defined as four or more pharmacies with common ownership. We determined whether each pharmacy was rural or urban by comparing the county location for each pharmacy to a December 31, 1992 listing of metropolitan areas and their components. We selected a stratified random sampleof 60 pharmacies with 12 pharmacies selected from each of 5 strata--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.). We included the non-traditional category so as to be able to exclude those pharmacies from our estimates. We believed that such pharmacies are able to purchase drugs at substantially greater discounts than a retail pharmacy and would inflate our estimate.

We requested, from each pharmacy selected, the largest invoice from each different source of supply for a specified month in CY 1994. We identified the sources of supply as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. Each pharmacy was assigned a month from January through September in order to provide a cross-section of this 9-month time period. However, we permitted one pharmacy to provide invoices from December as invoices were not available from the earlier period.

We reviewed every line item on the invoices supplied by the sample pharmacies to ensure that the invoices contained the information necessary for our review. We eliminated over-the-counter items. Some invoices did not include National Drug Codes (NDC), which were needed to obtain

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the Montana Department of Public Health and Human Services
2





E-SERVED
09/15/03
06:11 PM ET
AWP-MDL No.1456

AWP for the drug. We attempted to obtain NDCS in those instances. We used the 1994 *Red Book,* a nationally recognized reference for drug product and pricing information, as a reference for drug product and pricing information, as a reference to obtain NDCS or identify over-the-counter items. One prominent wholesaler, whose invoices contained that wholesaler's item number rather than NDCs, provided us with a listing that converted their item number to an NDC. If we were unable to identify the NDC for a drug, we eliminated the drug. This was a common occurrence for generic drugs where there was no indication on the invoice as to the manufacturer of the drug.

We obtained a listing from HCFA that indicated whether a drug is a brand name or generic drug. We used that listing to classify each drug on the invoices as brand or generic. If a drug was not on the HCFA listing, we used the *Red Book* to determine whether the drug was brand or generic. Additionally, we obtained drug expenditure information from HCFA-64 Reports.

The State of Montana provided us with a pricing file for the purpose of obtaining the AWP for each drug. We compared the invoice drug price to AWP for each drug and calculated the percentage, if any, by which AWP exceeded the invoice price. If a drug from an invoice was not on the pricing file we eliminated that drug.

An initial meeting was held in Richmond, Virginia on August 30-31, 1994, with Medicaid pharmacy representatives from the sample States. At this meeting, we presented a methodology for performing the review and the methodology was refined with input from the State representatives. At a follow-up meeting held in Richmond, Virginia, on September 27-28, 1995, we presented the results of our review with the sample States.

We used OAS statistical computer software to calculate all estimates as well as to generate all random numbers. We did not independently verify any information obtained from third party sources. Our review was conducted by our Little Rock, Arkansas OAS field office with assistance from our OAS field offices in Baton Rouge, Louisiana, and Austin, Texas from "September 1994 to September 1995.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the Montana Department of Public Health and Human Services
3



ESERVED
09/15/03
06:11 PM ET
AWP-MDL No.

# FINDINGS AND RECOMMENDATIONS

## *BRAND NAME DRUGS*

We estimate that AWP exceeded invoice prices for *brand name drugs* by 16.2 percent. The estimate combined all pharmacy categories except for non-traditional pharmacies and was based on the comparison to AWP of 2,924 invoice prices received from 43 pharmacies. The standard deviation for this estimate was 0.56 percent (see Appendix 2).

The estimates that AWP exceeded invoice prices for *brand name drugs* are summarized in the following table:

Estimated Difference
17
15.7
17.6
16.6
16.2
Rural Chain
Rural Independent
Urban Chain
Urban Independent
Non-Traditional (NonT)
Overall (Excluding NonT)

The following table shows the number of pharmacies sampled and the number of prices reviewed by individual category for *brand name drugs*.

Number of Sample Pharmacies
Prices from Sample Pharmacies
Rural-Chain
Rural-Independent
Urban-Chain
Urban-Independent
Non-Traditional
Overall (Exc. NonT)
12
10
11
10
11
43
412
1092
426
400

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services
4



## *GENERIC DRUGS*

We estimate that AWP exceeded invoice prices for *generic drugs* by 48.5 percent. Once again, the estimate combined all pharmacy categories except non-traditional pharmacies. The estimate was based on the comparison to AWP of 1,662 invoice prices received from 43 pharmacies. The standard deviation for this estimate was 1.51 percent (see Appendix 2).

The estimates that AWP exceeded invoice prices for *generic drugs* are summarized by individual categories in the following table:

The following table shows the number of pharmacies sampled and the number of prices reviewed by individual category for the *generic drugs*.







E-SERVED
09/15/03
06:11 PM ET
AWP-MDL No.

# CONCLUSIONS AND RECOMMENDATION

Based on our review, we have determined that there is a significant difference between AWP and pharmacy acquisition costs. The difference between AWP and pharmacy acquisition costs is significantly greater for generic drugs than for brand name drugs. In general, State representatives believed that the review supported current State practices to establish pharmacy reimbursement for ingredient cost at levels below AWP.

We recognize that acquisition cost is just one factor in pharmacy reimbursement policy and that any change to that policy should also consider the other factors discussed in the Scope section of our report. Additionally, the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations should be taken into consideration. However, a change in any of the factors affecting pharmacy reimbursement could have a significant impact on expenditures because of the size of the program ($26 million) in Montana. We believe that the difference between AWP and pharmacy acquisition costs as determined by our review is significant enough to warrant consideration by the State in any evaluation of the drug program. Therefore, we recommend that the State Agency consider the results of this review in determining any future changes to pharmacy reimbursement for Medicaid drugs.

## *STA TEA GENCY'S COMMENTS*

The Director of the State Agency responded to our draft report in a letter dated April 4, 1996. The Director stated that any evaluation of Medicaid pharmacy pricing should also consider the dispensing fee portion of the payment formula and the effect of Federal upper limit pricing for generic drugs. The Director was also concerned that further discounting of AWP in pricing formulas would result in a corresponding inflation of AWP.

## *OIG'S RESPONSE*

We agree with the Director that acquisition cost is just one factor to consider in evaluating Medicaid pharmacy reimbursement. We also agree that inflation of AWP could result from further discounting AWP in pricing formulas. However, we believe that information on prices actually paid by pharmacies will be useful to both HCFA and the States in setting future pharmacy reimbursement for the ingredient cost of drugs. The full text of the Director's comments is included in Appendix 4.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the Montana Department of Public Health and Human Services
6



# *APPENDICES*



## *SAMPLE DESCRIPTION*

### *Sample Objectives:*

Develop an estimate of the extent that Average Wholesale Prices (AWP) exceed actual invoice prices to Medicaid pharmacies in Montam for brand name drugs and for generic drugs.

### *Population:*

The sampling population was pharmacy providers participating in the Medicaid prescription drug program of the State Agency.

### **Sampling Frame:**

The sampling frame was a listing of all pharmacy providers participating in the Medicaid prescription drug program.

### *Sample Design:*

A sample of 12 pharmacies was randomly selected from each of 5 strata. The five strata of pharmacies were rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.). Each pharmacy was assigned a month from 1994 for which to provide invoices. All pharmacies were initially assigned a month from January through September in a method designed to provide a cross-section of the 9-month period. However, some pharmacies were permitted to submit invoices from November or December as invoices were not available for the month originally assigned. The largest invoice from each of four different sources of supply was requested. The sources of supply were identified as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. All invoice prices were compared to AWP.



*APPENDIX I*
*PAGE 2 of 2*

*Sample Size:*

Twelve pharmacies were selected from each stratum for a total of 60 pharmacies.

*Source of Random Numbers:*

OAS statistical sampling software was used to generate the random numbers.

*Characteristics to be Measured:*

From our review of the pharmacy invoices, we calculated the percentage that AWP exceeded actual invoice prices for all drugs on the invoices submitted.

*Treatment of Missing Sample Items:*

No spare was substituted for a pharmacy that did not provide information. If a pharmacy did not send an invoice for a particular type of supplier, we assumed that the pharmacy did not purchase drugs from that type of supplier during the month assigned to the pharmacy.

*Estimation Methodology:*

We used OAS Statistical Software to project the percentage difference between AWP and actual invoice prices for each stratum, as well as an overall percentage difference. The overall percentage difference excluded the non-traditional pharmacies. The projections were done separately for brand name drugs and generics.

*Other Evidence:*

We obtained AWP from First DataBank.



*APPENDIX 2*

## MONTANA SAMPLE RESULTS
## BRAND NAME AND GENERIC DRUGS

| | CATEGORY | SAMPLE UNIVERSE | SAMPLE SIZE | DRUG PRICES REVIEWED | POINT ESTIMATE | STANDARD DEVIATION | 90 PERCENT CONFIDENCE LEVEL | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | LOWER LIMIT | UPPER LIMIT |
| BRAND | RURAL-CHAIN | 43 | 12 | 994 | 17.[illegible] | 1.8[illegible] | 16.19 | 17.71 |
| BRAND | RURALINDEPENDENT | 118 | 10 | 412 | 15.[illegible] | 3.0[illegible] | 14.11 | 17.19 |
| BRAND | URBAN-CHAIN | 23 | 11 | 1,092 | 17.[illegible] | 2.2[illegible] | 16.6[illegible] | 18.24 |
| BRAND | URBAN-INDEPENDENT | 16 | 10 | 42[illegible] | 16.[illegible] | 1.3[illegible] | 16.3[illegible] | 17.23 |
| BRAND | NON-TRADITIONAL | 45 | 11 | 40[illegible] | 28.[illegible] | 8.41 | 24.4[illegible] | 31.6[illegible] |
| BRAND | OVERALL (EXCL. NON-TRAD) | 200 | 43 | 2,924 | 16.[illegible] | 0.5[illegible] | 15.3[illegible] | 17.1[illegible] |
| GENERIC | RURALCHAIN | 43 | 12 | 552 | 50.2[illegible] | 9.38 | 46.43 | 53.99 |
| GENERIC | RURALINDEPENDENT | 118 | 10 | 213 | 48.3[illegible] | 7.89 | 44.35 | 52.21 |
| GENERIC | URBAN-CHAIN | 23 | 11 | 662 | 48.4[illegible] | 8.43 | 45.33 | 51.38 |
| GENERIC | URBAN-INDEPENDENT | 16 | 10 | 235 | 45.[illegible] | 8.25 | 42.55 | 47.83 |
| GENERIC | NON-TRADITIONAL | 4[illegible] | 11 | 284 | 62.[illegible] | 12.72 | 56.47 | 67.44 |
| GENERIC | OVERALL (EXCL. NON-TRAD) | 20[illegible] | 43 | 1,662 | 48.[illegible] | 1.51 | 45.97 | 50.94 |



*APPENDIX 3*

## NATIONWIDE SAMPLE RESULTS BRAND NAME AND GENERIC DRUGS

| | NATIONWIDE | SAMPLE UNIVERSE | SAMPLE SIZE | DRUG PRICES REVIEWED | POINT ESTIMATE | STANDARD ERROR | 90 PERCENT CONFIDENCE LEVEL | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | LOWER LIMIT | UPPER LIMIT |
| BRAND | RURAL-CHAIN | 1,095 | 73 | 5,723 | 17.4 | 1.05 | 15.67 | 19.13 |
| | RURAL-INDEPENDENT | 1,495 | 78 | 3,043 | 16.4 | 1.07 | 14.63 | 18.15 |
| | URBAN-CHAIN | 8,194 | 73 | 7,198 | 18.5 | 0.52 | 17.60 | 19.31 |
| | URBAN-INDEPENDENT | 6,243 | 91 | 3,009 | 18.7 | 0.90 | 17.22 | 20.19 |
| | NON-TRADITIONAL | 2,026 | 66 | 1,762 | 27.5 | 2.28 | 23.76 | 31.27 |
| | OVERALL (EXCL. NON-TRAD | 17,030 | 315 | 18,973 | 18.3 | 0.66 | 17.21 | 19.38 |
| GENERIC | RURAL-CHAIN | 1,095 | 73 | 2,963 | 47.5 | 1.63 | 44.82 | 50.20 |
| | RUIL4L-INDEPENDENT | 1,495 | 78 | 1,798 | 47.4 | 0.93 | 45.86 | 48.92 |
| | URBAN-CHAIN | 8,194 | 72 | 2,634 | 37.6 | 2.82 | 32.97 | 42.28 |
| | URBAN-INDEPENDENT | 6,243 | 91 | 1,660 | 46.7 | 2.44 | 42.70 | 50.73 |
| | NON-TRADITIONAL | 2,026 | 55 | 1,262 | 57.7 | 1.98 | 54.43 | 60.98 |
| | OVERALL (EXCL. NON-TRAD | 17,030 | 314 | 9,075 | 42.5 | 0.90 | 40.87 | 43.03 |



APPENDIX 4
Page 1 of 2

DEPARTMENT OF
PUBLIC HEALTH AND HUMAN SERVICES

MARC RACICOT
GOVERNOR

PETER S. BLOUKE, PhD
DIRECTOR

PO BOX 4210
HELENA, MONTANA 59604-4210
(406) 444-5622
FAX (406) 444-1970

April 4, 1996

Mr. George M. Reeb, Asst. Inspector General
Department of Health and Human Services
Office of the Inspector General
330 Independence Avenue, S.W.
Washington, D.C. 20201

Dear Mr. Reeb:
On March 29, 1996, the Montana Department of Health and Human Services received the draft report of a review of pharmacy acquisition costs. The study results indicate the national average acquisition costs for brand products are estimated to be AWP minus 18.3 percent and for generic products they are estimated to be AWP minus 42.45%. Montana's corresponding average discounts as computed by the OIG are 16.23% and 48.46% respectively. Montana currently pays the lesser of AWP minus 10%, Federal upper limit for multi-source generic products. In addition to the product cost Medicaid also reimburses a dispensing fee not to exceed $4.08 per script and limits payment for the total of both components to the usual and customary charge for the prescription..

It is important to note that the study did not investigate the payment of these services by Medicaid, only the cost of acquisition of the drug by the providers. We believe all states involved are concerned that if these numbers are directly compared to the discounted AWP method of Medicaid Pharmacy pricing, confusion and questions will arise. The two major factors that must also be considered if this comparison is done relate to the dispensing fee portion of the payment formula and the effect of Federal upper limit (FUL) pricing for generic drugs. No work was performed by the OIG to determine how total reimbursement for pharmacy services relates to the cost of providing the service.

It is expected that when these results are published that the immediately concerns will be raised that pharmacy providers are being reimbursed more than the acquisition cost of the products and that changes should be made to the pricing formula to increase the discount on AWP. In order to address these concerns, states must do additional work to determine whether the cost to dispense is being accurately reimbursed and what effect the FUL pricing has on the discount for generic. In Montana we currently believe that the dispensing fee is below the cost to dispense because of the capon dispensing fees that is currently in place and has been for many years. Unfortunately, the FUL affect is not known at this time. The OIG has offered to release the base data so that FUL impact can be calculated by the states, but these data are not expected to be



Mr. George M.Reeb, Asst. Inspector General
Apri14,1996
Page 2

received until after the findings are published. At that time , work could be performed to determine the impact of FUL on generic pricing.

We also believe that further discounting the AWP in pricing formulas will result in a corresponding inflation of AWP to mitigate the impact. This might result in a cycle of action and reaction that results in increased administrative burden but little savings to Medicaid. Caution and careful thought should precede action in addressing this situation.

It is imperative that this information be given equal consideration in any evaluation of Medicaid pharmacy pricing so that improper assumptions and conclusion are not made.

If you have any questions, please contact Terry Krantz of my staff at (406)444-4145. We appreciate the cooperation and inclusion in this process and look forward to continuing this excellent working relationship.

Sincerely,

Michael P. Billings

Peter S. Blouke, Ph.D.
Director

cc: Mary Dalton
Nancy Ellery
Terry Krantz
Jeff Ireland

# EXHIBIT 34

viewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2288523&DocID=0&tableID=1183] Page 1 of 1

HHS/OIG-Audit-"Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Prograr... Page 1 of 1

# *Department of Health and Human Services*

**Office of Inspector General -- AUDIT**

**"Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services," (A-06-01-00005)**

This is most current OIG report mentioned at today's meeting. Marvin

**February 12, 2002**

---

Complete Text of Report is available in PDF format (1.4 mb). Copies can also be obtained by contacting the Office of Public Affairs at 202-619-1343.

---

**EXECUTIVE SUMMARY:**

Most States use average wholesale price (AWP) minus a percentage discount, which varies by State, as a basis for reimbursing pharmacies for drug prescriptions. Therefore, the objective of this review was to develop for the Montana Medicaid program an estimate of the discount below AWP at which pharmacies purchase brand name and generic drugs. Our estimate of the overall discount below AWP for the invoice prices we reviewed was 19.71 percent for brand name drugs and 65.37 percent for generic drugs. Our national estimates, included in reports we previously issued, were 21.84 percent and 65.93 percent, respectively. We recommended that the Montana Department of Public Health and Human Services (State Agency) consider the results of our review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs. The State Agency stated that they would consider the results in any future changes to their pharmacy reimbursement.

---

E-Mail List | HIPDB | Hotline | Privacy Notice

http://oig.hhs.gov/oas/reports/region6/60100005.htm 03/08/2002

10-19-05
DEPOSITION EXHIBIT
No. Buska 014
NORDHAGEN REPORTING

HHC001-0001 F



DEPARTMENT OF HEALTH & HUMAN SERVICES Office of Inspector General

# Memorandum

Date FEB - 7 2002

From Thomas D. Roslewicz
Deputy Inspector General
for Audit Services

Subject Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services (A-06-01-00005)

To Neil Donovan
Director, Audit Liaison Staff
Centers for Medicare & Medicaid Services

As part of self-initiated audits by the Office of Inspector General, we are alerting you to the issuance within 5 business days from the date of this memorandum of our final report entitled, "Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services." A copy of the report is attached. This report is one of a series of reports involving our multi-State review of pharmacy acquisition costs for drugs. We suggest you share this report with components of the Centers for Medicare & Medicaid Services (CMS) involved with program integrity, provider issues, and State Medicaid agency oversight, particularly the Center for Medicaid and State Operations.

Most States use average wholesale price (AWP) minus a percentage discount, which varies by State, as a basis for reimbursing pharmacies for drug prescriptions. Therefore, the objective of this review was to develop for the Montana Medicaid program an estimate of the discount below AWP at which pharmacies purchase brand name and generic drugs.

Through use of statistical sampling, we obtained from Montana retail pharmacies 1,675 invoice prices for brand name drugs, and 915 invoice prices for generic drugs. Our estimate of the overall discount below AWP for the invoice prices we reviewed was 19.71 percent for brand name drugs and 65.37 percent for generic drugs. Our national estimates, included in reports we previously issued to you,[1] were 21.84 percent and 65.93 percent, respectively. The estimates combined the results for four categories of pharmacies, including rural-chain, rural-independent, urban-chain, and urban-independent. The estimates excluded the results obtained from non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, home IV, etc.) because we believe such pharmacies are able to purchase drugs at substantially greater discounts than retail pharmacies and including those discounts would inflate our estimates.

[1] Final report dated August 10, 2001 entitled, "Medicaid Pharmacy – Actual Acquisition Cost of Brand Name Prescription Drug Products (A-06-00-00023)." Draft report dated August 20, 2001 entitled, "Medicaid Pharmacy – Actual Acquisition Cost of Generic Prescription Drug Products (A-06-01-00053)."

Page 2 – Neil Donovan

We recommended that the Montana Department of Public Health and Human Services (State Agency) consider the results of our review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs. The State Agency was appreciative of our report and stated that they would consider the results in any future changes to their pharmacy reimbursement.

Any questions or comments on any aspect of this memorandum are welcome. Please address them to George M. Reeb, Assistant Inspector General for Health Care Financing Audits, at (410) 786-7104 or Gordon L. Sato, Regional Inspector General for Audit Services, Region VI, at (214) 767-8414.

Attachment

viewItem (https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2288525eDocID=0tableID=1183) Page 1 of 10

Department of Health and Human Services

# OFFICE OF INSPECTOR GENERAL

# REVIEW OF PHARMACY ACQUISITION COSTS FOR DRUGS REIMBURSED UNDER THE MEDICAID PRESCRIPTION DRUG PROGRAM OF THE MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES

DEPARTMENT OF HEALTH & HUMAN SERVICES·USA

FEBRUARY 2002
A-06-01-00005

HHC001-0004

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Office of Inspector General

Office of Audit Services
1100 Commerce, Room 6B6
Dallas, TX 75242

FEB 12 2002

Common Identification Number: A-06-01-00005

Maggie Bullock
Administrator
Health Policy and Services Division
Montana Department of Public Health and Human Services
P.O. Box 202951
Helena, Montana 59620

Dear Ms. Bullock:

Enclosed are two copies of the Department of Health and Human Services (HHS), Office of Inspector General (OIG), Office of Audit Services' (OAS) final report entitled, "Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montana Department of Public Health and Human Services." A copy of this report will be forwarded to the action official noted below for review and any action deemed necessary.

Final determination as to actions taken on all matters reported will be made by the HHS action official. We request that you respond to the HHS action official within 30 days from the date of this letter. Your response should present any comments or additional information that you believe may have a bearing on the final determination.

In accordance with the principles of the Freedom of Information Act, 5 U.S.C. 522, as amended by Public Law 104-231, OIG, OAS reports issued to the Department's grantees and contractors are made available to members of the press and general public to the extent information contained therein is not subject to exemptions in the Act which the Department chooses to exercise. (See 45 CFR part 5). As such, within 10 business days after the final report is issued, it will be posted on the world wide web at http://oig.hhs.gov.

To facilitate identification, please refer to common identification number A-06-01-00005 in all correspondence relating to this report.

Sincerely yours,

Gordon L. Sato
Regional Inspector General
for Audit Services

Enclosure

iewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2288525eDocID=0tableID=1183] Page 3 of 10

Page 2 - Ms. Maggie Bullock

**Direct Reply to HHS Action Official:**

Joe Tilghman
Regional Administrator
Centers for Medicare & Medicaid Services
Richard Bolling Federal Building
601 E. 12th Street, Room 235
Kansas City, Missouri 64106-2808

HHC001-0006

## SUMMARY

As a follow-up to our previous work, the Office of Inspector General conducted a nationwide review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program. Most States use average wholesale price (AWP) minus a percentage discount, which varies by State, as a basis for reimbursing pharmacies for drug prescriptions. Therefore, the objective of this review was to develop an estimate of the discount below AWP at which pharmacies purchase brand name and generic drugs.

To accomplish our objective, we selected a stratified random sample of 8 States from a universe of 48 States and the District of Columbia. Arizona was excluded from the universe of States because the Medicaid drug program is a demonstration project using prepaid capitation financing. Tennessee was also excluded because of a waiver received to implement a managed care program for Medicaid. Montana was one of the sample States selected, as well as Colorado, Florida, Indiana, Texas, Washington, West Virginia, and Wisconsin.

In addition, a random sample of Medicaid provider pharmacies from each State was selected. The pharmacies were selected from each of five categories--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, home IV, etc.). We included the non-traditional category so as to be able to exclude those pharmacies from our overall estimates. We believe such pharmacies are able to purchase drugs at substantially greater discounts than retail pharmacies, and including those discounts would inflate our estimates.

We compared each invoice drug price to AWP for that drug and calculated the percentage, if any, by which the invoice price was discounted below AWP. We then projected those differences to the universe of pharmacies in each category for each State and calculated an overall estimate for each State. Additionally, we projected the results from each State to estimate the nationwide difference between invoice price and AWP for each category.

In Montana, we obtained drug pricing information from 33 pharmacies (including non-traditional). Specifically, we obtained 1,675 invoice prices for brand name drugs, and 915 invoice prices for generic drugs (excluding non-traditional). For Montana, our estimate of the overall discount below AWP for the invoice prices was 19.71 percent for brand name drugs and 65.37 percent for generic drugs. The national estimates were 21.84 percent and 65.93 percent, respectively. Our previous estimates, based on Calendar Year 1994 pricing data, were 18.30 percent and 42.45 percent, respectively. The estimates combined the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent and excluded the results obtained from non-traditional pharmacies.

We recommended that the Montana Department of Public Health and Human Services (State Agency) consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs. The State Agency responded to our draft report in a letter dated December 5, 2001. The State Agency indicated that they would consider the results of our review in any future changes to pharmacy reimbursement for Medicaid drugs.

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| SCOPE | 2 |
| FINDINGS | 3 |
| CONCLUSIONS AND RECOMMENDATION | 4 |

APPENDICES

APPENDIX 1 - SAMPLE DESCRIPTION

APPENDIX 2 - MONTANA SAMPLE RESULTS-AWP

APPENDIX 3 - NATIONWIDE SAMPLE RESULTS-AWP

APPENDIX 4 - MONTANA SAMPLE RESULTS-WAC

APPENDIX 5 - NATIONWIDE SAMPLE RESULTS-WAC

APPENDIX 6 - STATE AGENCY'S COMMENTS

**INTRODUCTION**

The Office of Inspector General (OIG) conducted a review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program of the Montana Department of Public Health and Human Services (State Agency). The objective of this review was to develop an estimate of the discount below average wholesale price (AWP) at which pharmacies purchase brand name and generic drugs. This review was conducted as a part of a nationwide review of pharmacy acquisition costs. Montana was one of eight States randomly selected as part of the nationwide review. (See **APPENDICES** 3 and 5 for the results of our nationwide sample.)

**BACKGROUND**

Medicaid regulations provide for the reimbursement of drugs using two methods. If a drug is a multiple source (generic) drug, then reimbursement is based on the lower of the pharmacist□s usual and customary charge to the general public or an upper limit amount plus a dispensing fee. The Federal upper limit amounts are established by the Centers for Medicare & Medicaid Services (CMS). If a drug is a single source (brand name) drug, or a generic drug for which an upper limit amount has not been established, then the reimbursement is the lower of the pharmacist's usual and customary charge to the general public or the estimated acquisition cost (EAC) plus a reasonable dispensing fee. The State agencies are responsible for determining the EAC and the dispensing fee.

The EAC for most States is calculated by using AWP for a drug less a percentage discount. The AWP is the price assigned to the drug by its manufacturer and is compiled by the **Red Book, First DataBank,** and **Medi-Span** for use by the pharmaceutical community. Prior to 1984, most States used 100 percent of AWP for reimbursement of acquisition costs. However, the OIG issued a report in 1984, which stated that, on average, pharmacies purchased drugs for 15.9 percent below AWP. In 1989, the OIG issued a follow-up report that found that pharmacies were purchasing drugs at discounts of 15.5 percent below AWP. Both the 1984 and 1989 reports combined brand name and generic drugs in calculating the percentage discounts and included a comparison of 3,469 and 4,723 purchases, respectively.

In 1989, CMS issued a revision to the State Medicaid Manual (Manual) which pointed out that a preponderance of evidence demonstrated that AWP overstated prices that pharmacies actually paid for drugs by as much as 10 to 20 percent. The Manual issuance further provided that, absent valid documentation to the contrary, it would not be acceptable for a State to make reimbursements using AWP without a significant discount.

In 1997, OIG issued separate reports on the actual acquisition cost of brand name and generic drugs. The 1997 reports were based on comparisons of 18,973 invoice prices for brand name products and 9,075 invoice prices for generic products. The reports showed average discounts of 18.30 percent below AWP and 42.45 percent below AWP, respectively. Medicaid drug program expenditures in Calendar Year (CY) 1994 totaled about $9.4 billion. In CY 1999, nationwide drug expenditures for the program increased to about $17.9 billion. Montana reported Medicaid drug expenditures of $49 million in CY 1999.

**SCOPE**

Our review was performed in accordance with generally accepted government auditing standards. The objective of our review was to develop an estimate of the difference between AWP and the actual invoice prices of both brand name and generic prescription drugs to Medicaid pharmacy providers. Our objective did not require that we identify or review any internal control systems.

Our review was limited to ingredient acquisition costs and did not address other areas such as: the effect of Medicaid business as a contribution to other store sales; the cost to provide professional services other than dispensing a prescription for instances such as therapeutic interventions, patient education, and physician consultation; and the cost of dispensing which includes costs for computers, multi-part labels, containers, technical staff, transaction fees, Medicaid-specific administrative costs, and general overhead.

We obtained a listing of all Medicaid pharmacy providers from the State Agency. The State Agency was responsible for classifying each pharmacy as chain, independent, or non-traditional. For purposes of this review, a chain was defined as four or more pharmacies with common ownership. We determined whether each pharmacy was rural or urban by comparing the county location for each pharmacy to a 1999 listing of metropolitan statistical areas and their components. We selected a stratified random sample of 40 pharmacies from a universe of 276 pharmacies, with 8 pharmacies selected from each of 5 strata--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.). We included the non-traditional category so as to be able to exclude those pharmacies from our estimates. We believe that such pharmacies are able to purchase drugs at substantially greater discounts than retail pharmacies and including those discounts would inflate our estimates.

We requested, from each pharmacy selected, the largest invoice from each different source of supply for a specified month in CY 1999. Supply sources included wholesalers, chain warehouse distribution centers, generic distributors, and manufacturers. Each pharmacy was initially assigned a month from January 1999 through December 1999 in order to provide a cross-section of this 12-month time period. However, we permitted some pharmacies to provide invoices from other months in 1999, if invoices were not available for the requested period.

We reviewed every line item on the invoices supplied by the sample pharmacies to ensure that the invoices contained the information necessary for our review. We eliminated over-the-counter items. Some invoices did not include National Drug Codes (NDC), which were needed to obtain AWP for the drug. We attempted to obtain NDCs in those instances. We used the **2000 Red Book**, a nationally recognized reference for drug product and pricing information, to obtain NDCs and identify over-the-counter items. Two prominent wholesalers, as well as four chain stores, whose invoices contained the wholesaler item number rather than NDCs, provided us with a listing that converted their item numbers to an NDC. If we were unable to identify the NDC for a drug, we eliminated the drug.

To verify the drug name, we utilized the drug product file on the CMS web site. In addition to verifying the drug name, we were also able to determine the drug-type indicator from this file. The drug-type indicator showed whether the drug was a brand name or generic drug. We considered single source and innovator multiple source drugs as brand name drugs. Non-innovator drugs were classified as generic drugs.

We obtained a drug pricing file from **First DataBank** through the State of Florida for the purpose of obtaining the AWP for each drug. We compared the invoice drug price to AWP for each drug and calculated the percentage, if any, by which the invoice price was discounted below AWP. If a drug listed on an invoice was not on the pricing file, we eliminated that drug.

Since some States also use wholesalers acquisition cost (WAC) in their reimbursement methodology, we also compared the invoice drug price to WAC for each drug for which WAC was available on the pricing file. We calculated the percentage, if any, by which WAC must be increased to equate the invoice price. The results of the WAC comparisons are reported in **APPENDICES** 4 and 5.

We used OIG Office of Audit Services (OAS) statistical software to calculate all estimates as well as to generate all random numbers. We obtained the total number of pharmacies in the universe from the National Council for Prescription Drug Programs. We did not independently verify any information obtained from third-party sources. Additionally, we did not attempt to identify any special discounts, rebates, or other types of special incentives not reflected on the invoices. Our review was conducted by our Little Rock, Arkansas OAS field office from July 2000 through June 2001. (See **APPENDIX 1** for a description of our sample.)

## FINDINGS

### BRAND NAME DRUGS

We estimated that the invoice price for brand name drugs was 19.71 percent below AWP. The estimate combined all pharmacy categories except non-traditional pharmacies and was based on the comparison to AWP of 1,675 invoice prices received from 25 pharmacies. The standard deviation for this estimate was 0.39 percent (see **APPENDIX 2**).

The estimates by individual categories for brand name drugs are summarized in the following table:

**Estimated Difference Between AWP and Invoice Price for Brand Name Drugs**

| Category | Percent Below AWP (Point Estimate) | Standard Deviation | Sample Pharmacies | Drug Prices Reviewed |
|---|---|---|---|---|
| Rural-Chain | 19.38 | 3.24 | 6 | 348 |
| Rural-Independent | 19.88 | 0.84 | 4 | 160 |
| Urban-Chain | 18.90 | 0.71 | 8 | 941 |
| Urban-Independent | 20.70 | 2.92 | 7 | 226 |
| Non-Traditional | 33.00 | 12.56 | 8 | 243 |
| Overall (Exc. Non-Trad.) | 19.71 | 0.39 | 25 | 1,675 |

**GENERIC DRUGS**

We estimated that the invoice price for generic drugs was 65.37 percent below AWP. Once again, the estimate combined all pharmacy categories except non-traditional pharmacies. The estimate was based on the comparison to AWP of 915 invoice prices received from 25 pharmacies. The standard deviation for this estimate was 1.55 percent (see **APPENDIX 2**). The following table summarizes the results by category for generic drugs:

**Estimated Difference Between AWP and Invoice Price for Generic Drugs**

| Category | Percent Below AWP (Point Estimate) | Standard Deviation | Sample Pharmacies | Drug Prices Reviewed |
|---|---|---|---|---|
| Rural-Chain | 59.28 | 13.23 | 6 | 195 |
| Rural-Independent | 67.03 | 3.86 | 4 | 76 |
| Urban-Chain | 66.76 | 2.67 | 8 | 536 |
| Urban-Independent | 69.37 | 3.97 | 7 | 108 |
| Non-Traditional | 69.00 | 9.25 | 8 | 164 |
| Overall (Exc.Non-Trad.) | 65.37 | 1.55 | 25 | 915 |

**WAC RESULTS**

In addition to our comparison of AWP to invoice price, we also compared WAC to invoice price. This was done because some States use WAC plus a percentage in their pharmacy reimbursement methodology. We estimated that the invoice price for brand name drugs was 1.96 percent below WAC rather than a percentage to be added to WAC. The estimate combined all pharmacy categories except non-traditional pharmacies and was based on the comparison to AWP of 1,288 invoice prices received from 25 pharmacies.

We also estimated that the invoice price for generic drugs was 27.82 percent below WAC. The estimate also combined all pharmacy categories except non-traditional pharmacies and was based on the comparison to AWP of 653 invoice prices received from 25 pharmacies. A more detailed description of the WAC results, including the nationwide estimates is shown in **APPENDICES 4 and 5**.

**CONCLUSIONS AND RECOMMENDATION**

Based on our review, we determined that there was a significant difference between AWP and pharmacy acquisition costs. The difference between AWP and pharmacy acquisition costs was significantly greater for generic drugs than for brand name drugs. We recognize that acquisition cost is just one factor in pharmacy reimbursement policy and that any change to that policy should also consider the other factors discussed in the **SCOPE** section of our report.

Additionally, the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations should be taken into consideration. However, a change in any of the factors affecting pharmacy reimbursement could have a significant impact on expenditures because of the size of the program. We believe that the difference between AWP and pharmacy acquisition costs as determined by our review was significant enough to warrant consideration by the State in any evaluation of their Medicaid drug program. Therefore, we recommended that the State Agency consider the results of this review as a factor in determining any future changes to pharmacy reimbursement for Medicaid drugs.

**STATE AGENCY'S COMMENTS**

The State Agency responded to our draft report in a letter dated December 5, 2001. The State Agency stated that they would consider the results of our review in any future changes to pharmacy reimbursement for Medicaid drugs. The State Agency raised an issue with the method we used to verify the drug name. The State Agency indicated that it had found that the drug product file maintained by CMS may not be the same as **First DataBank**. The State Agency also noted that it had observed instances where the CMS drug product file classified a drug as a generic but **First DataBank** listed it as a brand. The full text of the State Agency's comments is included as **APPENDIX 6.**

**OIG'S RESPONSE**

The drug classifications on the drug product file maintained by CMS are the drug manufacturers' representations for Medicaid drug rebate purposes. The manufacturers pay a higher rebate for brand name drugs than for generic drugs so it is in their interest to report the classifications accurately. We believe that **First DataBank** classifies generic drugs as brand if the drug is priced more like a brand. The decision as to what drugs should be considered brand name drugs is a complex one but we continue to believe our results are valid. In that regard, however, we are planning to issue an additional report that provides an estimate of the discount off AWP for single source innovator drugs. We believe this estimate will provide States with more information to use in evaluating their reimbursement methodologies.

# APPENDICES

**APPENDIX 1**
**PAGE 1 of 2**

## SAMPLE DESCRIPTION

Sample Objectives:

Develop an estimate of the extent of the discount below AWP of actual invoice prices to Medicaid pharmacies in Montana for brand name drugs and for generic drugs.

Population:

The sampling population was pharmacy providers participating in the Medicaid prescription drug program of the State Agency.

Sampling Frame:

The sampling frame was a listing of all pharmacy providers participating in the Medicaid prescription drug program.

Sample Design:

A sample of eight pharmacies was randomly selected from each of five strata. The five strata of pharmacies were rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.) Each pharmacy was assigned a month from 1999 for which to provide invoices. All pharmacies were initially assigned a month from January through December in a method designed to provide a cross-section of the 12-month period. However, some pharmacies were permitted to submit invoices from other months as invoices were not available for the month originally assigned. The largest invoice from each of four different sources of supply was requested. The sources of supply were identified as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. All invoice prices were compared to AWP.

Sample Size:

Eight pharmacies were selected from each stratum for a total of 40 pharmacies.

Source of Random Numbers:

We used OAS statistical sampling software to generate the random numbers.

**APPENDIX 1**
**PAGE 2 of 2**

Characteristics to be Measured:

From our review of the pharmacy invoices, we calculated the percentage discount below AWP of actual invoice prices for all drugs on the invoices submitted.

Treatment of Missing Sample Items:

No spare was substituted for a pharmacy that did not provide information. If a pharmacy did not send an invoice for a particular type of supplier, we assumed that the pharmacy did not purchase drugs from that type of supplier during the month assigned to the pharmacy.

Estimation Methodology:

We used OAS statistical software to project the percentage difference between AWP and actual invoice prices for each stratum, as well as an overall percentage difference. The overall percentage difference excluded the non-traditional pharmacies. The projections were done separately for brand name and generic drugs.

Other Evidence:

We obtained AWP from a pricing file received from the State of Florida.

APPENDIX 2

## MONTANA SAMPLE RESULTS -AWP

**BRAND NAME DRUGS – AWP**

| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | Percent Below AWP – Sample – Mean | Percent Below AWP – Sample – Standard Deviation | Percent Below AWP – 90 Percent Confidence Level – Lower Limit | Percent Below AWP – 90 Percent Confidence Level – Upper Limit |
|---|---|---|---|---|---|---|---|
| RURAL-CHAIN | 57 | 6 | 348 | 19.38 | 3.24 | 17.33 | 21.44 |
| RURAL-INDEPENDENT | 104 | 4 | 160 | 19.88 | 0.84 | 19.20 | 20.55 |
| URBAN-CHAIN | 37 | 8 | 941 | 18.90 | 0.71 | 18.53 | 19.27 |
| URBAN-INDEPENDENT | 31 | 7 | 226 | 20.70 | 2.92 | 19.10 | 22.30 |
| NON-TRADITIONAL | 47 | 8 | 243 | 33.00 | 12.56 | 26.35 | 39.65 |
| OVERALL (EXCL. NON TRAD.) | 229 | 25 | 1,675 | 19.71 | 0.39 | 19.07 | 20.34 |

**GENERIC DRUGS – AWP**

| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | Percent Below AWP – Sample – Mean | Percent Below AWP – Sample – Standard Deviation | Percent Below AWP – 90 Percent Confidence Level – Lower Limit | Percent Below AWP – 90 Percent Confidence Level – Upper Limit |
|---|---|---|---|---|---|---|---|
| RURAL-CHAIN | 57 | 6 | 195 | 59.28 | 13.23 | 50.88 | 67.69 |
| RURAL-INDEPENDENT | 104 | 4 | 76 | 67.03 | 3.86 | 63.91 | 70.14 |
| URBAN-CHAIN | 37 | 8 | 536 | 66.76 | 2.67 | 65.39 | 68.14 |
| URBAN-INDEPENDENT | 31 | 7 | 108 | 69.37 | 3.97 | 67.20 | 71.54 |
| NON-TRADITIONAL | 47 | 8 | 164 | 69.00 | 9.25 | 64.10 | 73.90 |
| OVERALL (EXCL. NON TRAD.) | 229 | 25 | 915 | 65.37 | 1.55 | 62.82 | 67.93 |

**APPENDIX 3**

## NATIONWIDE SAMPLE RESULTS - AWP

| BRAND NAME DRUGS – AWP | | | | |
|---|---|---|---|---|
| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | Percent Below AWP (Point Estimate) |
| Rural-Chain | 1,008 | 52 | 3,533 | 20.68 |
| Rural-Independent | 1,243 | 55 | 2,628 | 20.86 |
| Urban-Chain | 5,745 | 56 | 7,719 | 22.19 |
| Urban-Independent | 2,398 | 53 | 2,324 | 22.00 |
| Non-Traditional | 1,123 | 61 | 1,528 | 31.18 |
| Overall (Excl. Non-Trad.) | 10,394 | 216 | 16,204 | 21.84 |
| **GENERIC DRUGS – AWP** | | | | |
| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | Percent Below AWP (Point Estimate) |
| Rural-Chain | 1,008 | 52 | 2,073 | 64.39 |
| Rural-Independent | 1,243 | 55 | 1,142 | 66.64 |
| Urban-Chain | 5,745 | 56 | 4,491 | 66.97 |
| Urban-Independent | 2,398 | 54 | 1,022 | 63.70 |
| Non-Traditional | 1,123 | 58 | 1,185 | 67.07 |
| Overall (Excl. Non-Trad.) | 10,394 | 217 | 8,728 | 65.93 |

APPENDIX 4

## MONTANA SAMPLE RESULTS - WAC

| BRAND NAME DRUGS – WAC | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | WAC Plus Percent | | | |
| | | | | Sample | | 90 Percent Confidence Level | |
| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | Mean | Standard Deviation | Lower Limit | Upper Limit |
| RURAL-CHAIN | 57 | 6 | 204 | -1.30 | 3.19 | -3.32 | 0.72 |
| RURAL-INDEPENDENT | 104 | 4 | 125 | -2.85 | 1.30 | -3.90 | -1.80 |
| URBAN-CHAIN | 37 | 8 | 809 | 0.09 | 1.49 | -0.68 | 0.86 |
| URBAN-INDEPENDENT | 31 | 7 | 150 | -2.61 | 3.48 | -4.52 | -0.71 |
| NON-TRADITIONAL | 47 | 8 | 186 | -11.58 | 10.99 | -17.40 | -5.75 |
| OVERALL (EXCL. NON TRAD.) | 229 | 25 | 1,288 | -1.96 | 0.46 | -2.71 | -1.21 |

| GENERIC DRUGS – WAC | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | WAC Plus Percent | | | |
| | | | | Sample | | 90 Percent Confidence Level | |
| Category | Universe of Pharmacies | Sample Pharmacies | Prices Compared | Mean | Standard Deviation | Lower Limit | Upper Limit |
| RURAL-CHAIN | 57 | 6 | 146 | -24.87 | 9.80 | -31.09 | -18.64 |
| RURAL-INDEPENDENT | 104 | 4 | 51 | -27.33 | 11.54 | -36.63 | -18.02 |
| URBAN-CHAIN | 37 | 8 | 371 | -28.03 | 5.17 | -30.69 | -25.36 |
| URBAN-INDEPENDENT | 31 | 7 | 85 | -34.66 | 10.68 | -40.50 | -28.82 |
| NON-TRADITIONAL | 47 | 8 | 116 | -37.28 | 23.82 | -49.89 | -24.66 |
| OVERALL (EXCL. NON TRAD.) | 229 | 25 | 653 | -27.82 | 2.79 | -32.41 | -23.23 |

APPENDIX 5

# NATIONWIDE SAMPLE RESULTS - WAC

| BRAND NAME DRUGS – WAC | | | | |
|---|---|---|---|---|
| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | WAC Plus Percent (Point Estimate) |
| Rural-Chain | 1,008 | 52 | 2,249 | -1.93 |
| Rural-Independent | 1,243 | 55 | 2,101 | -2.59 |
| Urban-Chain | 5,745 | 56 | 6,239 | -1.13 |
| Urban-Independent | 2,398 | 53 | 1,543 | -2.98 |
| Non-Traditional | 1,123 | 58 | 1,168 | -14.99 |
| Overall (Excl. Non-Trad.) | 10,394 | 216 | 12,132 | -1.81 |
| GENERIC DRUGS – WAC | | | | |
| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | WAC Plus Percent (Point Estimate) |
| Rural-Chain | 1,008 | 52 | 1,569 | -27.13 |
| Rural-Independent | 1,243 | 55 | 856 | -27.01 |
| Urban-Chain | 5,745 | 56 | 3,193 | -33.04 |
| Urban-Independent | 2,398 | 54 | 752 | -27.80 |
| Non-Traditional | 1,123 | 56 | 893 | -35.97 |
| Overall (Excl. Non-Trad.) | 10,394 | 217 | 6,370 | -30.55 |

APPENDIX 6

DEPARTMENT OF
PUBLIC HEALTH AND HUMAN SERVICES
HEALTH POLICY & SERVICES DIVISION

JUDY MARTZ
GOVERNOR

GAIL GRAY, Ed.D.
DIRECTOR

STATE OF MONTANA

COGSWELL BLDG., 1400 BROADWAY
PO BOX 202951
HELENA, MONTANA 59620-2951

December 6, 2001

Gordon L. Sato
Regional Inspector General for Audit Services
Department of Health & Human Services
Office of Inspector General
1100 Commerce, room 6B6
Dallas, TX 75242-1027

Dear Gordon:

On November 16, 2001, Montana Medicaid received the draft report on the results of your review of pharmacy acquisition costs for drugs. After review of the findings, we agree that Montana should consider the results of this study as at least one factor in any future changes to pharmacy reimbursement for Medicaid drugs. Thank you for your efforts.

We appreciate your recognition of the fact that the review does contain some limitations, including: the effect of Medicaid business as a contribution to other store sales; the cost to provide professional services other than dispensing a prescription for instances such as therapeutic interventions; and the cost of dispensing which includes costs for supplies and staff.

However, we found another possible conflict in your method to verify the drug name. We have found that often, the drug product file maintained by Center for Medicare and Medicaid Services (CMS) may not be the same as First DataBank (FDB). Montana, along with many other states, uses the drug product file from FDB for pricing. Additionally, there are often discrepancies in how the drug is coded as a brand or generic. We have found situations when CMS may list a drug as a generic but FDB lists it as a brand.

Again, thank you for including Montana in the study. If you have any questions regarding this letter, please contact Shannon Marr, Medicaid Pharmacy Program Officer at 406-444-2738 or smarr@state.mt.us

Sincerely,

Maggie Bullock

Maggie Bullock, Administrator
Health Policy and Services Division

1.5.3

Cc: Jeff Buska
Shannon Marr

PHONE: (406) 444-4540 FAX: (406) 444-1861

# EXHIBIT 35



DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of Inspector General

Washington, D.C. 20201

MAR 19 1996

EXHIBIT
5
3/17/06 KRANTZ

Mr. Peter Blouke
Director
Department of Public Health and Human Services
P.O. Box 4210
Helena, Montana 59604-4210

Dear Mr. Blouke:

Enclosed is our draft report on the results of our review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program of the Montana Department of Public Health and Human Services (State Agency). Many States reimburse pharmacies for Medicaid prescriptions using a formula which discounts the average wholesale price (AWP) by about 10.5 percent. The objective of our review was to develop an estimate of the difference between the actual acquisition costs of drugs of the pharmacies and AWP for both brand name and generic drugs. Montana reported Medicaid drug expenditures of $26 million in Calendar Year 1994.

Through statistical sampling, we obtained pricing information from 43 Montana pharmacies. We obtained 2,924 invoice prices for brand name drugs, and 1,662 invoice prices for generic drugs. The overall estimate of the extent that AWP exceeded pharmacy purchase invoice prices in Montana was 16.2 percent for brand name drugs and 48.5 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent. The estimates exclude the results obtained from non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, etc.) because such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inappropriately inflated our percentages.

This review was conducted as part of a nationwide review of pharmacy drug acquisition costs. Montana was 1 of 11 States randomly selected as part of the nationwide review. Although this review was performed at the request of the Health Care Financing Administration, State Agency officials expressed significant interest in and were very supportive of this project. Terry Krantz, of Nancy Ellery's staff, worked closely with us during this review from the planning of our work through the drafting of the reports. These officials were especially supportive in helping us interact with pharmacies to obtain the data we needed. Your staff also provided us with fundamental insights in how your State pharmacy program worked, and how we could best achieve our objectives. We believe that the support from your staff greatly contributed to the successful completion of this extensive review. We further believe that this is an outstanding

example of how a State agency and my office, an independent Federal agency, can work together to create a mutually beneficial report. We thank you for your support!

We are recommending that the State Agency consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs.

If you have any questions, please call me or have your staff contact George M. Reeb, Assistant Inspector General for Health Care Financing Audits, at (410) 786-7104. We would appreciate receiving your comments within 15 days from the date of this letter.

Sincerely,

Michael Mangano

for June Gibbs Brown
Inspector General

Enclosure

# SUMMARY

At the request of the Health Care Financing Administration (HCFA), the Office of Inspector General (OIG) conducted a nationwide review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program. Since most States reimburse pharmacies for Medicaid prescriptions using a formula which discounts the average wholesale price (AWP), the objective of our review was to develop an estimate of the difference between the actual acquisition costs of drugs of the pharmacies and AWP for both brand name and generic drugs.

To accomplish our objective, we selected a random sample of 11 States from a universe of 48 States and the District of Columbia. Arizona was excluded from the universe of States because the Medicaid drug program is a demonstration project using prepaid capitation financing and Tennessee was excluded because of a waiver received to implement a statewide managed care program for Medicaid. Montana was one of the sample States, as well as California, Delaware, District of Columbia, Florida, Maryland, Missouri, Nebraska, New Jersey, North Carolina, and Virginia.

Additionally, we selected a sample of Medicaid pharmacy providers from each State and obtained invoices of their drug purchases. The pharmacies were selected from each of five categories--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, etc.). We included the non-traditional category so as to be able to exclude those pharmacies from our overall estimates. We believed such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inflated our percentages.

We compared each invoice drug price to AWP for that drug and calculated the percentage, if any, by which AWP exceeded the invoice price. We then projected those differences to the universe of pharmacies in each category for each State and calculated an overall estimate for each State. Additionally, we projected the results from each State to estimate the nationwide difference between AWP and invoice price for each category.

In Montana, we obtained pricing information from 43 pharmacies. Specifically, we obtained 2,924 invoice prices for brand name drugs, and 1,662 invoice prices for generic drugs. For Montana, the overall estimate of the extent that AWP exceeded invoice prices was 16.2 percent for brand name drugs and 48.5 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent and exclude the results obtained from non-traditional pharmacies.

MT 019210

We are recommending that the Montana Department of Public Health and Human Services (State Agency) consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs.  We will share the information with HCFA from all 11 States in a consolidation report for their use in evaluating the overall Medicaid drug program.

DRAFT

MT 019211