7

Case 1:01-cv-12257-PBS   Document 3669-8   Filed 02/08/07   Page 1 of 13

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-oOo-

In Re: Pharmaceutical

Industry Average Wholesale

Price Litigation                  MDL No. 1456

                                       Civil Action No.

                                       01-CV-12257-PBS

This Document Relates to State of    CA No. 02-CV-00260-ECR

Nevada v. Abbott Laboratories, et al.,

(Nevada I), and

State of Nevada v. American Home

Products, et al.,                      CA No.02-CV-12086-PBS (Nevada II)

VOLUME 1 OF THE DEPOSITION OF

COLEEN LAWRENCE

August 15, 2005

Carson City, Nevada

REPORTED BY: DEBORAH MIDDLETON GRECO, CCR #113, RDR, CRR

1          Do you see that?

2    A    Yes.

3    Q    This section states that in 2000, the US Department of
4 Justice, DOJ, and the National Association of Medicaid Fraud
5 Control Units, NAMFCU, determined that some drug manufacturers
6 were reporting inaccurate average wholesale prices, AWPs, for
7 some of their products.

8          As a result, the DOJ and the NAMFCU compiled new
9 pricing data gathered from several wholesale drug catalogs for
10 approximately 400 national drug codes.

11         State Medicaid programs had the option to implement
12 this revised pricing from the investigation.  Nevada Medicaid
13 chose to implement the pricing algorithm at the time of its
14 inception.  The pricing is reflective of the data filed from
15 First DataBank.

16         MR. DOVE:  Could you please put your phone on mute?
17 We're hearing sirens.

18         MR. LITGOW:  That's New York, I'm sure of it.

19         MR. DOVE:  Thanks.

20         Now, do you see that paragraph?

21         THE WITNESS:  Yes, I do.

22 BY MR. DOVE:

1    Q    Now, would you agree that these alternative prices set
2 by DOJ were lower than the AWPs published by commercial
3 reporting services?
4         MS. BRECKENRIDGE:  Objection.
5         THE WITNESS:  I actually did not review the DOJ in
6 comparison to the amounts that were reported.
7         It is just a field on the First DataBank file that was
8 adopted prior to me coming here.
9 BY MR. DOVE:
10   Q    Is it your understanding that the DOJ price is lower
11 than the AWPs?
12   A    As a general understanding, yes.
13   Q    Do you know why Nevada decided to use these
14 alternative Department of Justice prices for the 400 drugs
15 identified here?
16   A    No.  It was prior to my time.
17   Q    But at least for -- at least as of the time that this
18 policy was implemented for the 400 national drug codes that are
19 referenced here, reimbursement was not based on AWP, but was
20 based on the DOJ prices, correct?
21        MS. BRECKENRIDGE:  Objection.
22        THE WITNESS:  It could be based on multiple.  Our

1  reimbursement methodology is a lower of pricing methodology.
2           So if the federal upper limit happened to be lower now
3  because of the time difference in the DOJ pricing, it would pay
4  off the federal upper limit.
5           So whichever pricing is lowest on reimbursement
6  methodology, it will pay.
7  ///
8  BY MR. DOVE:
9     Q     But if the DOJ price for these 400 drugs was lower
10 than the AWP minus discount price, you would pay the DOJ minus
11 discount price, correct?
12    A     It would have to be lower than the AWP minus discount
13 price.  It would have to be lower than the state upper limit
14 discount price.  It would have to be lower than the federal
15 upper limit price, also.
16          There is multiple components of that reimbursement
17 methodology.  So it's whichever is lowest in the end.  So if it
18 was the lowest in the end, then, yes, it would pay that one.
19    Q     Okay.  So there would be many occasions where Nevada
20 might -- would either reimburse based on the DOJ minus discount
21 price or the federal upper limit minus discount price or the
22 state upper limit discount price, and not the AWP price,

1 correct?

2          MS. BRECKENRIDGE:  Objection.

3          THE WITNESS:  Correct.  It's lower of methodology.

4 BY MR. DOVE:

5     Q    Yes.

6          If you could turn to NV 00579, to the section entitled
7 State Maximum Allowable Cost.

8          Miss Lawrence, what is the state maximum allowable
9 cost?  What does that mean?

10    A    It's a -- just says, as defined here, is the upper
11 reimbursement limit for multiple source outpatient
12 pharmaceuticals established by the Division of Healthcare
13 Financing and Policy or our fiscal agent, who is First Health
14 Services.

15    Q    How is that state maximum allowable cost calculated?

16    A    That's actually proprietary information under First
17 Health Services.  They perform it based upon the multiple source
18 outpatient drugs and look at regional analysis and Nevada
19 specific analysis.

20    Q    But it's proprietary, and you don't really know how
21 it's -- what all goes into that calculation?

22    A    Correct.

1     Q     And it's First Health that does the calculations.  So
2  if I wanted to find out information, I need to talk to somebody
3  at First Health?
4     A     Correct.
5     Q     Do you know if AWP has anything to do with calculation
6  of the state maximum allowable cost?
7     A     As I've said, it's proprietary.  I do not know.
8     Q     If you turn to section 1207.
9     A     Do you have an NV number?
10          MS. BRECKENRIDGE:  587.
11          THE WITNESS:  587.
12 BY MR. DOVE:
13    Q     NV 587.  And it's specifically section B-3, physician
14 office clinic.
15          Do you see that?
16    A     Yes, I do.
17    Q     And it states that pharmacy charges are billed
18 separately using the appropriate CPT code for administration of
19 the drug.
20          The drug is to be billed per HCPC's J-code at Red Book
21 AWP, average wholesale price.  Provider is to enter the Red Book
22 AWP under billed charges on the CMS 1500 and will be reimbursed

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-oOo-

In Re: Pharmaceutical Industry

Average Wholesale

Price Litigation

                                                MDL No. 1456

                                                Civil Action No.

This Document Relates to State of   01-CV-12257-PBS

Nevada v. Abbott Laboratories, et al.,

    and                                 CA No. 02-CV-00260-ECR (Nevada I)

State of Nevada v. American Home

Products, et al.,                    CA No. 02-CV-12086-PBS (Nevada II)

VOLUME 2 OF THE DEPOSITION OF

COLEEN LAWRENCE

August 16, 2005

Carson City, Nevada

REPORTED BY:  DEBORAH MIDDLETON GRECO, CCR #113, RDR, CRR

1         Is there a record of the public comments that were
2  received at this hearing?
3      A    Yes.  They would have been submitted with any of the
4  hearing paperwork.
5      Q    And have those records been, or those public comments,
6  been produced to us, produced to the defendants?
7      A    I do not know.
8      Q    We would ask that you search your records for the
9  public comments referenced in point number three and produce
10 those to us.
11        And finally, the last sentence on this page at the
12 bottom, it says, written comments on the proposed changes may be
13 sent to the Department of Healthcare Financing and Policy where
14 they may be reviewed by the public.
15        Do you see that sentence?
16     A    Yes.
17     Q    Do you know if those comments have been produced to
18 the defendants in this case?
19     A    I do not know.  They would be part of public
20 testimony, though.
21     Q    So we would ask that those written comments, that you
22 search for those written comments, and that they be produced to

1  the defendants, please.

2          Miss Lawrence, how are generic drugs currently
3  reimbursed by Nevada Medicaid -- excuse me -- Nevada Medicaid?

4          MR. TERRY:  Thank you.

5          MS. BRECKENRIDGE:  Who educated him?

6          THE WITNESS:  Who told him last night?

7          MS. BRECKENRIDGE:  Thank you.  Thank you.

8          MS. PYZEL:  It was painful.

9          THE WITNESS:  All drugs are subject to the lesser of
10 logic that we discussed earlier on the reimbursement
11 methodology.

12         Some generic multisource drugs are subject to the
13 maximum allowable cost.  Some multisource drugs are subject to
14 the federal upper limit maximum cost.

15 BY MR. DOVE:

16     Q    What is the federal upper limit maximum cost?

17     A    It's equivalent to -- federal upper limit is
18 equivalent to what the state does as far as multisource drugs,
19 setting a ceiling on the highest an ingredient can be reimbursed
20 for a drug, except for CMS sets the limits.

21     Q    Other than maximum acquisition costs and federal upper
22 limit, are there any other possible formulas for reimbursement

1 of generic drugs?

2    A    Well, they fall in the lower or lesser of logic. So
3 if a provider happens to bill a lesser of than any of those,
4 then it will pay those charges.

5    Q    And has this formulation for generic drugs changed
6 since you've been employed at Nevada Medicaid?

7    A    Yes.

8    Q    How so?

9    A    The only change was the inception of the MAC, the
10 state MAC, which came on in December of 2003.

11    Q    And I think we have a document about the state MAC,
12 which -- so we'll talk about it a little bit later in the
13 deposition.

14    A    I need to be sure that MAC date, of the start date on
15 that.

16    Q    Actually, the next two documents I'm going to be
17 showing you relate to the --

18    A    Okay.

19    Q    -- state MAC.

20        And so maybe you can -- that information will be
21 provided on those documents.

22    A    Okay.

1    Q    I'd like to mark as Exhibit Lawrence 013 a document
2 entitled -- well, the first page of which is entitled Notice of
3 Intent to Review the State Plan Medicaid Service Manual
4 Amendment and a Meeting for Additional Public Comment, dated
5 November 12th, 2003.
6         Though this exhibit looks like it's actually a
7 collection of documents bearing the Bates number NV 00343 to NV
8 00393.
9         (Exhibit Lawrence 013 marked for identification)
10 BY MR. DOVE:
11   Q    And I'd ask that the witness please identify this
12 exhibit.
13   A    It looks like it's a compilation of documents for our
14 state plan to change, and public notification to change our
15 state plan amendment regarding the MAC, the state MAC.
16   Q    So all these documents in this packet relate to that
17 process?
18   A    Yes.  It all looks like it's related to a MAC except
19 for one email which is in here, which I have not read through.
20        00363, this relates to a different state plan
21 amendment.  It's not --
22   Q    But other than that page, it looks like everything