13



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

JENIPHR A.E. BRECKENRIDGE
DIRECT • (206) 224-9325
JENIPHR@HBSSLAW.COM

June 1, 2006

*Via E-Mail*

Mr. Christopher R. Dillon
Ropes & Gray
One International Place
Boston, MA 02110-2624

      Re:   *Nevada AWP Actions*

Dear Chris:

      This letter addresses numerous issues raised by your May 16, 2006 letter.

*Document Requests*

      **Category 1:** The State will provide a list of defendant-specific documents. Defendants can take it from there.

      **Category 2:** All responsive materials have been produced.

      **Category 6:** The State will produce MAC reports it has been able to obtain from First Health. Presumably this information is responsive to defendants' outstanding subpoena to First Health. If defendants obtain additional MAC lists – or any material – pursuant to the outstanding defense subpoena, we request a copy.

      **Rebate Data:** Your letter indicates that the State will receive a response from defendants as a group or individually. We have heard from very few defendants. To my knowledge, your clients have not responded. Please advise what defendants' position will be and when it will be revealed to us.

      **Other:** Michael Willden has located additional documents as a follow up to his deposition. They are to be sent to our office for production this week.

ATTORNEYS AT LAW    SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 206.623.7292   F 206.623.0594
www.hagens-berman.com

001534-13 111702 V1

Mr. Christopher R. Dillon
June 1, 2006
Page 2

We have detailed elsewhere the difficulties related to the defendants' unreasonably broad electronic discovery requests (review ongoing) and the request for discovery from non-Medicaid entities (Division of Mental Health and Developmental Services pending).

*30(b)(6) Notice*

The State has objected to the 30(b)(6) notice in its entirety. We agreed to consider defendants' compromise position – i.e., to adopt select portions of existing testimony as testimony on the part of the State. We cannot do so if defendants will not identify the witnesses and testimony they had in mind when they made this offer. It is absurd to ask the State to identify the pre-existing testimony defendants might have had in mind when they drafted and served their 30(b)(6) notice. We remain willing to work with you on this matter, but we need more information.

*Claims Data*

1.   **First Health Claims Data – Post-2003 Data**

Defendants have met extensively with First Health since August, 2005 to develop the claims data defendants desired for their case. These meetings were held cooperatively with representatives of the State. At all times during these discussions, it was clear that the State did not agree to bear the costs for information defendants sought. This was First Health's understanding as well. On March 28, 2006, First Health provided Jason Litow an invoice for the provision of the data defendants requested. A copy of that invoice is attached to this letter as Exhibit A. The letter states that in order for First Health to provide the data, a written agreement would have to be entered into between First Health and authorized representatives of the defendants. To our knowledge, defendants have never followed up on this invoice or asked First Health to provide the data.

There has never been an agreement that the State would pay for data defendants requested from First Health. This is not data that the State was obligated to produce. First Health was adamant that in order to obtain the data, defendants would have to serve a subpoena. First Health's counsel even participated in the drafting of the subpoena. The data contemplated by the First Health production and the March 28, 2006 invoice is data prepared to defendants' specifications. It is not necessarily in the format the State or the State's experts would have selected. The State has to go through a similar process to obtain data from First Health, *including paying for it*.

Mr. Christopher R. Dillon
June 1, 2006
Page 3

### 2. Pre-2003 Data

The State provided pre-2003 data to defendants by early November 2005. In response, defendants took the deposition of Ron Swenson of the Department of Information Technology, on January 5, 2006. The purpose of the deposition was for defendants to clarify the claims data provided. Defendants' expert witness, Chris Stromberg of Bates White, participated in the deposition by telephone. In advance of the deposition, the State provided defendants with additional, explanatory information regarding the data. The State placed no limits on the deposition; GSK counsel concluded the deposition after approximately one-half day.

Despite having had this data for more than six months, defendants have only recently begun to complain about this data. The May 16, 2006 Letter is the first notice the State has received that defendants have had difficulty reading the claims data. This is particularly surprising given that defendants' experts have been involved in obtaining and have had access to the data since last fall. Although we believe that the State has more than fulfilled its obligations with respect to this data, we are willing to provide a state employee to answer questions defendants or their experts may have. We request that you submit the questions in writing as soon as possible so we may locate the appropriate state employee.

### 3. Other

Your letter requests information regarding the State's parens patriae claims. We have explained to you repeatedly: the State relies on sales data provided by defendants to support its *parens patriae* claims. The State is not relying on its own data. Thus, we do not understand the questions you pose in the May 16, 2006 Letter at 3. As for the identity of the *parens patriae* claimants, the State expects these to be revealed at the time the claims are made as part of the claims process. It is thus not clear what the source of defendants' request for a 30(b)(6) witness is.

*Electronic Discovery*

The State's efforts – and difficulties – with defendants' electronic discovery requests are detailed elsewhere. As for defendants' questions regarding the availability of electronic mail, in addition to what we have already explained, we refer you to the deposition of Mel Rosenberg, taken by defendants earlier in the case. We also note that Keith Macdonald left Medicaid more than 17 years ago; Chris Thompson left Medicaid

Mr. Christopher R. Dillon
June 1, 2006
Page 4


in January, 1999; Janice Wright left Medicaid in August, 2000 and Laurie Squartsoff left Medicaid in 2000 – all well before these lawsuits were brought.

    Please contact us with any questions.

                      Sincerely,

                        HAGENS BERMAN SOBOL SHAPIRO LLP


                        *[sent via electronic delivery]*

                        Jeniphr A.E. Breckenridge


cc:    Steve W. Berman
        L. Timothy Terry