**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456<br><br>Civil Action No.<br>01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ) ) ) | Judge Patti B. Saris |
| *State of Montana v. Abbott Labs., Inc., et al..*<br>*02-CV-12084-PBS* ) ) | |
| *State of Nevada v. Abbott Labs., Inc., et al..*<br>*D. Nev. Cause No. CV-12086-PBS (Nevada II)* ) ) | |

**THE JOHNSON & JOHNSON DEFENDANTS'**
**INDIVIDUAL MEMORANDUM IN SUPPORT OF SUMMARY**
**JUDGMENT AGAINST THE STATES OF NEVADA AND MONTANA**

Johnson & Johnson, Centocor, Inc., Janssen Pharmaceutica Products L.P., McNeil-PPC, Inc., and Ortho Biotech Products, L.P. (the "J&J Defendants") submit this memorandum in support of their individual motion for summary judgment. The J&J Defendants also adopt and incorporate the common summary judgment submissions made on behalf of all defendants.

**Introduction**

The Court in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.) (the "MDL") recently completed a 21-day bench trial concerning the same alleged "AWP scheme" at issue in this case. Two Johnson & Johnson drugs – Procrit® (sold by Ortho Biotech) and Remicade® (sold by Centocor) – were at issue in the MDL trial. The court heard extensive testimony about the health care industry's use and understanding of AWP in general, and about Procrit and Remicade in particular. A decision is pending.

Nevada and Montana are represented by the same counsel as the plaintiffs in the MDL, and they rely on the same expert, Dr. Raymond S. Hartman. Nevertheless, Nevada and Montana completely ignore the MDL record and seek to recast AWP as something the MDL plaintiffs and Dr. Hartman conceded it is not. Thus, for Johnson & Johnson's products, Nevada and Montana complain about "spreads" between AWP and provider acquisition cost of 13.4% to 20.8%[1], notwithstanding that the MDL plaintiffs and Dr. Hartman admitted that "spreads" up to 30% were legitimate and not fraudulent.[2] This admission is consistent with the testimony of Nevada and Montana Medicaid officials who say they knew about the extent of the difference

---

[1] Supporting Declaration of Andrew D. Schau ("Schau Decl.") Ex. 1 (Montana Second Amended Complaint, ¶ 489); Schau Decl. Ex. 2 (Nevada Amended Complaint, ¶ 310).

[2] Johnson & Johnson Defendants' Individual L.R. 56.1 Statement of Undisputed Facts ("J&J 56.1 Stmt.") ¶ 4. The MDL defendants disputed Dr. Hartman's claim that spreads greater than 30% were fraudulent, but that dispute does not undermine the force of plaintiffs' admission that a 30% spread is proper.

between AWP and acquisition cost and knowingly used that difference to provide in-state Medicaid providers a margin over their acquisition cost.[3]

Dr. Hartman's reports in this case never mention his admission in the MDL that payors, including the state Medicaid agencies, knew about and expected spreads up to 30%.[4] Rather, he states that he was "instructed by Counsel" to find liability anytime there is *any* difference between the state's reimbursement payment and the provider's acquisition cost, regardless of whether the spread is large or small, and regardless of whether the difference between acquisition cost and AWP is more than 30% or less than 30%.[5]

This dramatic but silent shift in Dr. Hartman's liability theory has profound implications for companies with modest spreads, including the J&J Defendants. In the MDL, the J&J Defendants proved that the spreads on the only two drugs there at issue – Procrit and Remicade – did not exceed Dr. Hartman's 30% liability yardstick.[6] Moreover, as noted above, the spreads on all of the Johnson & Johnson drugs identified in the Nevada and Montana complaints are well below 30%.[7] In fact, there is not a shred of evidence that the spread on *any* drug sold by the J&J Defendants has *ever* exceeded 30%.[8]

These undisputed facts, and those set forth in the defendants' joint submissions, fully defeat the Nevada and Montana claims. But, as to the J&J Defendants, other undisputed facts are equally fatal. As discussed below, Nevada and Montana cannot demonstrate that they

---

[3] Nevada Joint Defendants' 56.1 Stmt. ¶¶ 76-91; Montana Joint Defendants' 56.1 Stmt. ¶¶ 63-79.

[4] J&J 56.1 Stmt., ¶ 4.

[5] Schau Decl. Ex. 4 (Declaration of Raymond S. Hartman (Nevada) ¶¶ 21-22); Schau Decl. Ex 5 (Declaration of Raymond S. Hartman (Montana), ¶¶ 22-23).

[6] Schau Decl. Ex. 6 (MDL Trial Declaration of Jayson S. Dukes, November 16, 2006).

[7] Schau Decl. Ex. 1 (Montana Second Amended Complaint, ¶ 489); Schau Decl. Ex. 2 (Nevada Amended Complaint, ¶ 310)

[8] J&J 56.1 Stmt., ¶ 3.

2

suffered any injury or loss as a result of the J&J Defendants' AWPs. To the contrary, the alleged "overcharges" they paid to their Medicaid providers were completely offset by the rebates that the J&J Defendants paid to them based on their rebate contracts. These rebates more than compensated for each state's alleged overpayments to physicians and pharmacies under their respective Medicaid programs.

## ARGUMENT

In order to sustain their claims, Nevada and Montana must prove that they suffered injury as a result of the J&J Defendants' alleged misreporting of AWP. *Sisler v. Bennett-Ames,* 149 P.3d 944 (Mont. 2006); *In re Estate of Kindsfather*, 108 P.3d. 487 (Mont. 2005); *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588 (Nev. 1992); Mont. Code Ann. § 30-14-133(1). Absent proof of injury, neither state may recover damages or seek statutory penalties. *Id.*

In this case, Nevada and Montana claim overcharge damages solely with respect to two Johnson & Johnson drugs, Procrit and Remicade. As to Procrit, Nevada claims that its physicians and pharmacies overcharged the state Medicaid program a total of $35,053.[9] Nevada does not claim that it was overcharged for Remicade.[10] Montana claims that its Medicaid providers overcharged the Medicaid program $72,814 for Procrit and $25,312 for Remicade.[11] Neither Montana nor Nevada claim overcharge damages with respect to any other Johnson & Johnson drug, although they assert that, between them, they are owed over $185 million in alleged "statute penalties."[12]

---

[9] J&J 56.1 Stmt., ¶ 5.

[10] *Id.*, ¶ 7.

[11] J&J 56.1 Stmt., ¶ 9.

[12] *See* Schau Decl. Ex. 4 (Declaration of Raymond S. Hartman (Nevada)); *see* Schau Decl. Ex 5 (Declaration of Raymond S. Hartman (Montana)).

3

Dr. Hartman's damages calculations are based on the difference between the amounts the state paid to its Medicaid providers and the amount the providers paid to acquire the drugs. But this way of calculating the alleged overcharge ignores the obvious fact that the State's payments are subsidized, in significant part, by the rebates that drug manufacturers remit to the states on drugs administered through the Medicaid program. *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 457 F. Supp.2d 65, 68 (D. Mass. Sept. 6, 2006). In other words, the states themselves do not pay the full reimbursement amount. Rather, they pay only part of the reimbursement amount; the balance is funded by the manufacturer. If the rebate payment from the manufacturer equals or exceeds the alleged "overcharge," the state is not injured.

Nevada and Montana ignore the rebates they receive from manufacturers.[13] As the MDL court has noted, however, any damages allegedly incurred due to excessive payments to providers "will necessarily be reduced by the rebates the state received," and, therefore, "may play a role in determining the correct amount of damages in the case." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 457 F. Supp.2d at 74-75.

With respect to both Procrit and Remicade, the rebate payments that Montana and Nevada received from the J&J Defendants *exceeded* (by a substantial margin) the alleged overcharge payments. As to Nevada, which claims overcharge damages only with respect to Procrit, the rebate exceeded the alleged overcharge by $232,515:[14]

---

[13] Schau Decl. Ex. 4 (Declaration of Raymond S. Hartman (Nevada) ¶ 33); Schau Decl. Ex 5 (Declaration of Raymond S. Hartman (Montana), ¶ 32).

[14] Declaration of Jayson S. Dukes Regarding Nevada's Claim ("Dukes Nev. Decl."), ¶8.

**Procrit®**

| | |
|---|---|
| Alleged "Overcharge" Damages | $35,053 |
| Rebate Paid | $267,568 |
| "Overcharge" Minus Rebate | ($232,515) |

A similar result obtains in Montana, which claims overcharge damages for both Procrit and Remicade. The rebates that Montana received from the J&J Defendants also exceeded the alleged overcharges:[15]

**Procrit®**

| | |
|---|---|
| Alleged "Overcharge" Damages | $72,814 |
| Rebate Paid | $146,474 |
| "Overcharge" Minus Rebate | ($73,660) |

**Remicade®**

| | |
|---|---|
| Alleged "Overcharge" Damages | $25,312 |
| Rebate Paid | $33,566 |
| "Overcharge" Minus Rebate | ($8,254) |

Dr. Hartman argues that rebate payments should be ignored because they would be the same even if the AWPs were not fraudulent.[16] This reasoning, however, is circular. As a matter of law, absent injury, there is no fraud. Because the rebate payments exceed the alleged overcharge, there is no injury. Hence, there is no fraud.[17]

\*   \*   \*

Defendants should be granted summary judgment for all of the reasons stated in defendants' joint motion for summary judgment. Summary judgment is warranted as to the J&J Defendants for the additional reason that its rebate payments exceeded the alleged overcharge

---

[15] Declaration of Jayson S. Dukes Regarding Montana's Claim ("Dukes Mon. Decl.), ¶8.

[16] Schau Decl. Ex. 4 (Declaration of Raymond S. Hartman (Nevada) ¶ 33); Schau Decl. Ex 5 (Declaration of Raymond S. Hartman (Montana), ¶ 32).

[17] A different result might obtain if the rebate was *less than* the alleged overcharge, but even then the state would have to prove that it was deceived by the reported AWP.

damages on the only drugs as to which Montana and Nevada claim to have incurred damages by reason of allegedly inflated AWPs.[18]

## CONCLUSION

The J&J Defendants' motion for summary judgment should be granted.

Dated:  February 8, 2007        Respectfully submitted,

/s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
Adeel A. Mangi
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, New York  10036-6710
(212) 336-2000

Attorneys for the Johnson & Johnson Defendants

---

[18] It should be noted that Dr. Hartman's estimate of the Nevada and Montana overcharges are based on ASP calculations that he himself admitted in the MDL were inaccurate.  Accordingly, Dr. Hartman revised his ASP calculations before trial.  When Dr. Hartman's revised figures are used to calculate the alleged overcharge damages, the alleged damages are reduced by more than $35,000.  *See* Dukes Nev. Decl., ¶ 11 and Dukes Mon. Decl., ¶ 12.

**Certificate of Service**

I certify that a true and correct copy of the foregoing was served on all parties on February 8, 2007 via LexisNexis File & Serve.

/s/ Andrew D. Schau
Andrew D. Schau