UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO <br><br> *State of Nevada v. American Home Prods. Corp., et al.,* 02-CV-12086-PBS <br><br> *State of Montana v. Abbott Labs., Inc., et al.,* 02-CV-12084-PBS | MDL No. 1456 <br><br> Civil Action No. 01-CV-12257-PBS <br><br> Judge Patti B. Saris |

### AVENTIS PHARMACEUTICALS INC.'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, Defendant Aventis Pharmaceuticals Inc. ("Aventis") submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment:

### AVENTIS'S SELF-ADMINISTERED DRUGS AT ISSUE

1.  Plaintiffs' expert, Dr. Hartman, has calculated penalties in these cases related to reimbursements for the following Aventis drugs: Allegra, Allegra-D, Amaryl, Arava, Azmacort, Carafate, Cardizem, Cardizem SR, Intal, Nasacort, Nasacort AQ and Trental. All of these products were "single source," branded, self-administered medications during the entire relevant period. (Declaration of James W. Hughes, dated February 8, 2007 ("Hughes Decl.") at ¶4).

2316237v3

## AVENTIS PRICING AND PRICE REPORTING

2.      Prior to August 2001, Aventis and its predecessor companies[1] reported two price benchmarks to the pricing publications: (1) an undiscounted wholesale list price, referred to either as Wholesale List Price ("WLP") or Wholesale Acquisition Cost ("WAC"), and (2) a price that was marked up from that list price and described as either the Manufacturer's Suggested Price ("MSP") (beginning in 2000) or Average Wholesale Price ("AWP") (prior to 2000). (Declaration of Joseph G. Matye, dated February 8, 2007 ("Matye Decl.") at ¶3, Ex. C).

3.      The MSPs and AWPs that were reported prior to August 2001 were calculated by adding either 20% or 25% to the product's wholesale list price.(Matye Decl. at ¶1, Ex. A).

4.      Historically, AWPs for branded pharmaceutical companies were usually set at a markup of either 20% or 25% above wholesale list price. Prior to the merger that created Aventis, RPR's suggested AWP was equivalent to a 25% markup over list price, while HMR's were set at 20%. (Matye Decl. at ¶1, Ex. A).

5.      For the short time after the merger that Aventis continued to report suggested AWPs or MSPs, it maintained a markup over wholesale list price of 25% for all legacy RPR drugs and 20% for all legacy HMR drugs. (Matye Decl. at ¶3, Ex. C).

6.      This AWP/MSP mark-up conformed to industry custom and practice. (Matye Decl. at ¶4, Ex. D).

---

[1] Aventis was formed on December 15, 1999 from the merger of Hoechst Marion Roussel ("HMR") and Rhone-Poulenc Rorer ("RPR").

2316237v3

7. Since 2000, Aventis has included in its price announcements the following disclaimer regarding Wholesale List Price: "The list price may not reflect actual sales prices, which may include discounts, rebates, chargebacks, and other terms." (Matye Decl. at ¶3, Ex. C).

8. Beginning August 2, 2001, Aventis stopped reporting MSP. (Matye Decl. at ¶3, Ex. C).

9. Since then, Aventis has reported only Wholesale List Price to its customers and the publishers, with the disclaimer that "the list price does not reflect discounts, rebates, chargebacks, or other terms or distribution arrangements that may reduce actual sales price." (Matye Decl. at ¶3, Ex. C).

10. Aventis periodically raised the list prices for its drugs. In doing so, the Aventis Pricing Board established guidelines to be followed to insure that the company stayed within the Consumer Price Index ("CPI") for its overall weighted averages of price increases across the entire portfolio of products. (Matye Decl. at ¶2, Ex. B).

11. Aventis referred to this policy as the "Belle CPI", named after the then-president of the North American business unit, Gerald Belle. (Matye Decl. at ¶2, Ex. B).

12. The commitment to keep price increases at or below the CPI was also followed by Aventis's predecessor companies. (Matye Decl. at ¶1, Ex. A).

### AVENTIS'S SALES OF SELF-ADMINISTERED DRUGS

13. Aventis sells virtually all its self-administered drugs to wholesalers, who then resell the products to their customers, such as retail pharmacies. (Hughes Decl. at ¶5).

3

2316237v3

14.     Aventis records these sales at the wholesale list prices reported to the pricing publications and others. These list prices are then adjusted to take into account any customer discounts. (Hughes Decl. at ¶6).

15.     Most wholesalers receive a two percent prompt pay discount when they pay for the products within a specified time period. (Matye Decl. at ¶2, Ex. B).

16.     Additional adjustments may be made to the wholesale list price if the wholesaler resells the product to customers, such as hospitals, who have negotiated special pricing discounts with Aventis. In such cases, Aventis sells the drug to the wholesaler at the list price; the wholesaler then sells the drug to the customer at the discounted price; and the wholesaler then receives a "chargeback" from Aventis that makes it whole. (Matye Decl. at ¶2, Ex. B).

17.     The vast majority of Medicaid reimbursements for self-administered drugs at issue in these cases were made to retail pharmacies who do not receive discounted pricing from Aventis. Thus, for the vast majority of transactions at issue here, Aventis's net sales price for its self-administered drugs are either at or near wholesale list price. (Hughes Decl. at ¶8).

18.     The data produced by retail pharmacies in these cases confirms that the pharmacies do not receive pricing discounts from Aventis for the drugs at issue and, as a result, purchase the drugs at wholesale list price plus a small wholesaler mark-up (or mark-down). (Hughes Decl. at ¶9).

Dated: February 8, 2007

        AVENTIS PHARMACEUTICALS INC.

        By its attorneys:

         /s/ Joseph G. Matye
        Michael L. Koon, Esq.
        Joseph G. Matye, Esq.
        Brian G. Fedotin
        Admitted *pro hac vice*
        SHOOK HARDY & BACON L.L.P
        2555 Grand Blvd.
        Kansas City, Missouri 64108-2613
        Telephone:  (816) 474-6550
        Facsimile:  (816) 421-5547

        Michael DeMarco (BBO# 119960)
        KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
        State Street Financial Center
        One Lincoln Street
        Boston, MA  02111-2950
        Telephone: 617-261-3100

        ATTORNEYS FOR DEFENDANT AVENTIS PHARMACEUTICALS INC.

## CERTIFICATE OF SERVICE

I here by certify that on February 8, 2007, copies of the foregoing Local Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment were served on all counsel of record via ECF and Lexis/Nexis File & Serve.

/s/ Joseph G. Matye