# Exhibit E



**Calculation of Damages and Penalties for the State of Montana**

**Declaration of Raymond S. Hartman**

I.   **Introduction and Overview**

1.   My name is Raymond S. Hartman. I am Director and President of Greylock McKinnon Associates (GMA), an economic consulting and litigation support firm located in Cambridge, Massachusetts. Since I have previously described my qualifications to this Court, I will not repeat them here.

2.   I have been asked by Counsel to the State of Montana to review the Complaint in this matter;[1] to review the allegations regarding fraudulent pricing practices on the part of Defendants; and to describe the formulaic methodologies I would use to calculate both the damages to the State and its consumers if the alleged fraudulent pricing practices are proved and the penalties to the Defendants arising from those fraudulent practices.

3.   The fraudulent pricing practices specifically alleged of twenty-one Defendant drug manufacturers[2] are characterized as the "AWP Inflation Scheme."[3] Through the alleged "AWP Inflation Scheme" (or "AWP Scheme"), Defendant manufacturers fraudulently increased the AWPs of selected drugs (denoted by NDCs) above the provider acquisition costs (ACs) for which the AWPs were a market signal.[4] Defendants reported the inflated AWPs to the standard national price compendia (*First DataBank (FDB), Red Book* and *Blue Book*), and the industry based reimbursement amounts on those AWPs. Since providers acquired the drugs at acquisition cost (AC) while payors (Medicare, Medicaid, private Third-Party Payers (TPPs), and consumers) paid for the drugs at reimbursement rates based on the AWPs, the increased "spreads" (AWP – AC) caused by the AWP Scheme increased the profits earned by the providers of the drugs (pharmacies, physicians) at the expense of the payors. The increased profits induced providers to move market share of the relevant drugs, the *raison d'etre* of the AWP Scheme to the drug manufacturers.[5]

---

[1] State of Montana's Second Amended Complaint, *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, United States District Court for the District of Massachusetts, August 1, 2003 (hereafter, *Complaint*).

[2] Identified and discussed in detail in the *Complaint* in ¶¶ 214-602. I have been instructed by Counsel to exclude the GSK Group from my analysis.

[3] *Complaint*, ¶¶ 5-10.

[4] Market reliance upon reported AWPs is discussed in ¶¶ 169-172 of the *Complaint*.

[5] A more complete discussion of the fraud and its market effects are developed in ¶¶ 173-213 of the *Complaint*.

sets summarizing (to varying degrees of completeness) invoice information, rebates information and other accounting information, I have not received from Defendants sufficient explanation and clarification of these data to accurately calculate the $ASP_{jk}$ by NDC and/or J-Code for most drugs and most Defendants in this matter. Indeed, the data that I have been able to use to analyze liability using ASPs have been developed as part of the MDL AWP litigation addressing the Track 1 Defendants and the Connecticut AWP litigation.

Given this limited ability to make use of discovery materials, I have developed a method to make use of the existing information to draw conclusions regarding liability. Specifically,

a) For claims for reimbursement for single-source self-administered drugs, I conclude liability as follows:

- For those NDCs for which I have ASPs and for which AA > ASP = EAC, I conclude that AA fraudulently exceeds EAC.
- Since the Amount Billed and the U&C > EAC, EAC will be the lesser of the alternative reimbursement bases.[24]
- AWP – (16.6%-20%)[25] = WAC
- I understand that the retail acquisition costs (RAC) is approximately equal to WAC and indeed may be slightly less {that is, RAC (EAC) < WAC}, perhaps 1-2% of AWP.[26] To be conservative, I assume that RAC = EAC ≈ WAC.[27]
- Using the upper bound of these discounts off AWP, if AA > AWP – 20%, AA exceeds EAC.
- Using the lower bound of these discounts off AWP, AA > AWP – 16.6%, AA exceeds EAC.
- Absent a measure of ASP, I let the threshold for liability be AA > AWP – 20%. For sensitivity analysis, I let the threshold for liability be AA > AWP – 16.6%. In each case, if AA exceeds the threshold I conclude AA fraudulently exceeds EAC.

b) For claims for reimbursement for multi-source self-administered drugs, I conclude liability as follows:

- For those NDCs for which I have ASPs and for which AA > ASP = EAC, I conclude that AA fraudulently exceeds EAC.
- Since the Amount Billed and the U&C > EAC; since FUL > EAC; and since Montana does not have a state MAC; EAC will be the lesser of the alternative reimbursement bases.
- Evidence demonstrates that EACs (i.e., ASPs or RACs) < AWP – (16.6%-66%)[28] over the period 1991-2002.

---

[24] The U&C is the "walk-in" price paid by uninsured cash payers; it is usually ≈ AWP.

[25] These discounts off AWP are equivalent to spreads of 20%-25% above WAC. For example, if AWP – 20% = WAC; then AWP (100%-20%) = .80*AWP = WAC; and AWP = 1.25 WAC or WAC + 25%.

[26] See footnote 9 above.

[27] This understanding is corroborated by Defendants' Experts; see footnote 8 above.