UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
----------------------------------- x
                                    :
IN RE PHARMACEUTICAL INDUSTRY       :
AVERAGE WHOLESALE PRICE             :
LITIGATION                          :
                                    :
                                    :
THIS DOCUMENT RELATES TO            :   MDL NO. 1456
                                    :
State of Nevada v. American Home Prods. Corp.,  :   Master File No. 01-CV-12257-PBS
et al., 02-CV-12086-PBS             :
                                    :   Hon. Patti B. Saris
State of Montana v. Abbott Labs., Inc., et al., 02-  :
CV-12084-PBS                        :
                                    :
                                    :
                                    :
                                    :
                                    :
----------------------------------- x
```

<u>**DECLARATION OF JAMES W. HUGHES, PH.D IN SUPPORT OF
DEFENDANT AVENTIS PHARMACEUTICALS INC.'S
MOTION FOR SUMMARY JUDGMENT**</u>

February 8, 2007

1.      I am the Thomas Sowell Professor of Economics and Chair of the Economics Department at Bates College. I specialize in the fields of Industrial Organization and Antitrust Policy; Law and Economics; Health Economics; Environmental Economics; and Labor Economics. I earned my M.A. in Economics from Boston University in 1978, and my Ph.D. in Economics from The University of Michigan in 1987. I joined the faculty of Amherst College in 1987 and the faculty of Bates College in 1992. In 2005, I was named the Thomas Sowell Professor of Economics. My curriculum vitae is attached as Exhibit 1.

2.      I have been retained by counsel for defendant Aventis Pharmaceuticals Inc. ("Aventis") to review and evaluate the plaintiffs' liability theory and damage calculations put forth by their expert Dr. Raymond Hartman in this matter. I submit this Declaration in support of Aventis's motion for summary judgment.

3.      I have reviewed Aventis contracts and sales data from retail pharmacies, as well as Dr. Hartman's Calculation of Damages and Penalties for the States of Montana and Nevada, and Dr. Hartman's reports and testimony in the related class action litigation. A complete list of materials I reviewed and relied on in connection with my work on these cases is attached as Exhibit 2.

4.      The Aventis products[1] at issue in Aventis's motion for summary judgment are all single-source, self-administered drugs.

---

[1] Allegra, Allegra-D, Amaryl, Arava, Azmacort, Carafate, Cardizem, Cardizem SR, Intal, Nasacort, Nasacort AQ, and Trental.

2

5.      Based on my review of Aventis's contracts and sales data, I conclude that Aventis sells virtually all of its self-administered drugs to wholesalers, who then resell the products to their customers, such as retail pharmacies.

6.      Aventis records these sales of self-administered drugs at the wholesale list prices (or WAC) reported to the pricing publications and others. These list prices are then adjusted to account for any customer discounts. For example, most wholesalers receive a two percent prompt pay discount when they pay for the products within a specified time period.

7.      Additional adjustments may be made to the wholesale list price if the wholesaler resells the product to customers, such as hospitals, who have negotiated special pricing discounts with Aventis. In such cases, Aventis sells the drug to the wholesaler at the list price; the wholesaler then sells the drug to the customer at the discounted price; and the wholesaler receives a "chargeback" from Aventis to make it whole.

8.      With the exception of the 2% prompt pay discount, Aventis generally does not offer additional pricing discounts to retail pharmacies. The vast majority of Medicaid reimbursements for self-administered drugs at issue in these cases (i.e., those which Dr. Hartman included in his penalty counts) were made to retail pharmacies who do not receive discounted pricing from Aventis. Thus, for the vast majority of transactions at issue here, Aventis's net sales price for its self-administered drugs are either at or near wholesale list price.

9.      The data produced by retail pharmacies in these cases confirms that the pharmacies do not receive pricing discounts from Aventis for the drugs at issue and, as a result, the pharmacies purchase the drugs at wholesale list price plus a small wholesaler mark-up (or mark-down). For example, the data produced by Walgreens' and Snyder's reveals that the retail pharmacies

3

acquisition cost for the vast majority of Aventis drug covered by this litigation is equal to or within a few percentage points of WAC.

10. I have reviewed the MDL class action expert reports in which Dr. Hartman advanced his theory that payers were misled by AWPs only when the resulting "spreads" between AWP and provider acquisition cost exceeded the payers' expectation of spreads. Dr. Hartman determined that the threshold for liability under this theory was a 30% spread between AWP and average acquisition cost.

11. Applying Dr. Hartman's "expectations" analysis to determine liability here, and using his own methodology to calculate spreads, I conclude that none of the published AWPs for Aventis's self-administered drugs at issue exceeded Dr. Hartman's 30% threshold.

I declare under penalty of perjury that the foregoing is true and correct.

_____          February 8, 2007
James W. Hughes, Ph.D.                     _____
                                           Date