# EXHIBIT 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————— )<br>NEW ENGLAND CARPENTERS )<br>HEALTH BENEFITS FUND; PIRELLI )<br>ARMSTRONG RETIREE )<br>MEDICAL BENEFITS TRUST; )<br>TEAMSTERS HEALTH & WELFARE )<br>FUND OF PHILADELPHIA AND )<br>VICINITY; and PHILADELPHIA )<br>FEDERATION OF TEACHERS HEALTH )<br>AND WELFARE FUND, )<br>   )<br>        Plaintiffs, )<br>   )<br>v. )<br>   )<br>FIRST DATABANK, INC., a Missouri )<br>Corporation; and McKESSON )<br>CORPORATION, a Delaware Corporation, )<br>   )<br>        Defendants )<br>———————————————— ) | Civil Action No. 1:05-CV-11148-PBS |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Settlement Court, this Agreement is entered into between and among (1) the Class Representatives on behalf of themselves and the Private Payor Class (the "Plaintiffs") and (2) Defendant First DataBank, Inc. ("First DataBank" or "FDB"), by and through their respective counsel.

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a civil proceeding (the "Class Action") in which the Plaintiffs have alleged, *inter alia*, that Defendants, including

First DataBank, wrongfully increased the so-called WAC to AWP markup factor applied to numerous prescription pharmaceuticals through a scheme begun in late 2001 and 2002, thereby causing members of the proposed Private Payor Class, whose payments for pharmaceuticals are tied to the published AWP, to make substantial excess payments for those pharmaceuticals.

WHEREAS, First DataBank, a publisher of information that is not now, nor ever was, a manufacturer, supplier, wholesaler, distributor, or seller of prescription pharmaceuticals, asserts a number of legal and factual defenses to the claims by the Plaintiffs and denies any wrongdoing or liability whatsoever;

WHEREAS, Class Settlement Counsel have concluded, after discovery and investigation of the facts and after carefully considering the circumstances of the Class Action, including the claims asserted in the complaint filed in the Class Action and the possible legal and factual defenses thereto, that it would be in the best interests of the Plaintiffs to enter into this Agreement, which interests include the substantial prospective value to be derived by this Settlement and the interest in avoiding the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Plaintiffs; and, further, that Class Settlement Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Plaintiffs and of the proposed Private Payor Class;

WHEREAS, the proposed Private Payor Class is comprised of (1) third-party payors, including, but not limited to, self-insured employers, health and welfare plans, private health insurers (including private plans that cover government employees and/or retirees by reason of their current or past governmental employment), and (2) individual consumers ("Consumers"), in the United States, who paid for all or part of the purchase price of certain prescription pharmaceuticals based in whole or in part upon the Average Wholesale Price ("AWP"), Blue Book AWP ("BBAWP") or similar data published or disseminated by First DataBank electronically or otherwise, during the Class Period.

WHEREAS, First DataBank, through their counsel, after vigorous, arms-length negotiations, have conditionally agreed (i) to cease to publish the AWP (known in the FDB database as the BBAWP field) for pharmaceutical products, after a two year notice period, and (ii) to adjust the WAC to AWP mark up on certain pharmaceuticals, all as provided in this Agreement;

WHEREAS, First DataBank, despite its belief that it has valid and complete defenses to the claims asserted against them in the Class Action, have nevertheless agreed to enter into this Agreement to reduce and avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to resolve this controversy;

3

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of First DataBank and the Plaintiffs that any and all claims made or that could have been made against First DataBank by Plaintiffs in the Class Action be settled, compromised and dismissed on the merits and with prejudice and, except as hereafter provided, without costs as to Plaintiffs or First DataBank, subject to the approval of the Settlement Court, on the following terms and conditions:

1.     Private Payor Class Definition.  Subject to the Settlement Court's approval, and the conditions of Paragraph 15, the undersigned agree and consent to the certification pursuant to Fed. R. Civ. P. 23(b)(1) 23(b)(2) and 23(b)(3) of the following settlement class (the "Private Payor Class") in the Class Action:

> All individual persons or entities who, during the Class
> Period, made purchases and/or paid, whether directly,
> indirectly, or by reimbursement, for all or part of the
> purchase price of prescription pharmaceuticals, including,
> but not limited to, those pharmaceuticals listed on the
> attached Exhibit A, where any or all of the purchase price,
> reimbursement or payment amount was based in any part
> on the Average Wholesale Price, Blue Book Average
> Wholesale Price, or similar data published or disseminated
> by First DataBank, Inc., electronically or otherwise, and
> which such Average Wholesale Price, Blue Book Average
> Wholesale Price, or similar data published or disseminated
> by First DataBank, Inc., electronically or otherwise, in whole
> or part, was based on a FDB wholesale survey.  Excluded
> from the class are Defendants, their respective present and
> former, direct and indirect, parents, subsidiaries, divisions,
> partners and affiliates; the United States government, its
> officers, agents, agencies and departments, and all other
> federal, state or local government entities' claims, to the
> extent such governmental entities purchased and/or paid,
> whether directly or by reimbursement, for all or part of the

4

cost of prescription pharmaceuticals as benefits provided pursuant to a legislatively enacted public health and welfare entitlement program.

2.      General Definitions.  As used in this Agreement, the following terms shall have the indicated meanings:

"Class Period" means January 1, 2000 through the date the the Settlement Court enters a Final Order and Judgment in the Class Action.

"Consumer" means any person falling within the definition of the Private Payor Class who is a natural person or other legal entity and not a TPP.  "Consumer" includes living persons as well as the executors, heirs, administrators, trustees, or other authorized representatives of deceased persons.

"Consumer Class Members" means Consumers who are not Class Opt-Outs.

"Court" or "Settlement Court" means the Honorable Patti B. Saris of the United States District Court for the District of Massachusetts, or if Judge Saris is not available, another judge from the United States District Court for the District of Massachusetts who will be designated by Judge Saris or who is appointed, or any subsequent court before which First DataBank's Counsel and Class Settlement Counsel agree to settle the claims of the Private Payor Class.

"Class Member" means any person or entity falling within the definition of the Private Payor Class set forth in Paragraph 1 other than any Class Opt-Outs.

"Class Settlement Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, Wexler Toriseva Wallace LLP, and Edelson & Associates, LLC.

"Class Opt-Out" means any person or entity falling within the definition of the Private Payor Class set forth in Paragraph 1 who timely and validly submits a request for exclusion from the Private Payor Class in accordance with the procedures set forth in the Settlement Notice. A Class Opt-Out that is a Consumer is also referred to as a "Consumer Opt-Out." A Class Opt-Out that is a TPP is also referred to as a "TPP Opt-Out."

"Class Representatives" means the named plaintiffs who have asserted claims on behalf of themselves and a putative class in the Class Action.

"FDB Data Room" means a facility or web-based site, maintained by First Databank at its own expense for a period of three (3) years from the Effective Date, for the purpose of facilitating reasonable access to discoverable material from FDB. "Discoverable Material" as used herein means any and all material created during the period

January 1, 2000 to the date of the entry of the Final Order and

Judgment, located pursuant to a reasonable search, which falls into any

of the following categories:

> (a) all non-privileged materials previously produced by First DataBank as a party or non-party in other litigation or civil proceedings which relate to the price reporting and/or price data acquisition activities of FDB;
>
> (b) all transcripts of testimony of employees taken, and affidavits of employees filed, in any civil proceedings pertaining to the price reporting and/or price data acquisition activities of FDB;
>
> (c) all non-privileged documents or other materials evidencing all communications between FDB and any other persons (e.g., third party payors, pharmacy chains, independent pharmacies, pharmacy benefit managers, pharmaceutical price reporting entities, government entities) concerning the price reporting and/or price data acquisition activities of FDB.
>
> (d) All non-privileged documents or other materials evidencing pharmaceutical price lists, price catalogues, and/or other price data acquisition efforts and materials.

First DataBank shall continue to supplement the FDB Data

Room with relevant non-privileged material located up to the date of the

Final Order and Judgment as provided herein. As used herein the term

"non-privileged materials" means all responsive materials not protected

from disclosure by the attorney-client privilege, work-product immunity,

trade secret or other confidentiality obligations, First Amendment, or

other applicable privileges or immunities. In the event of the assertion of

a privilege or immunity, First DataBank shall maintain in its possession

and make part of the material provided in the FDB Data Room a privilege

log containing that information required by law to demonstrate the existence of any  privilege or immunity being asserted with respect to any documents created during the period from January 1, 2000 through December 31, 2003.

"FDB wholesale survey" means any actions taken by FDB, its employees or agents, to obtain from one or more drug wholesalers information relating to its catalogue or list pricing information for, or mark-up applied to, a manufacturer's line of products or a specific product by any means, either written or oral.

"First DataBank" means First DataBank, Inc.

"First DataBank's Counsel" means the Office of General Counsel, The Hearst Corporation.

"Effective Date" has the meaning ascribed in Paragraph 7 of this Agreement.

"Pharmaceutical Purchase" means payment or reimbursement, direct or indirect, for all or part of the cost of a pharmaceutical, including, but not limited to, those pharmaceuticals listed on the attached Exhibit A, prescribed, provided or administered in the United States; including, but not limited to, the AWP-based payment or partial payment for or reimbursement of the price or part of the price of a pharmaceutical to any doctor, medical practice, hospital, pharmacy

or any other health care provider, or the payment of any AWP-based co-insurance, deductible or other amount that, in whole or in part, is based on or affected by the AWP or BBAWP for such pharmaceuticals pursuant to an insurance agreement or other health care plan  As stated, the term "Pharmaceutical Purchases" is limited to transactions where the cost, payment, reimbursement amount or price of the pharmaceutical was based, in whole or in part, on the Average Wholesale Price, the Blue Book AWP,  or similar data published or disseminated by First DataBank, Inc, electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, in whole or part, was based on a FDB wholesale survey.

"Plaintiffs" means the Class Representatives together with all putative members of the Private Payor Class.

"Publishing Competitor" means an entity that is not a subsidiary or affiliate of First DataBank that is engaged in the business of publishing or disseminating electronic integrateable drug information databases and has more than $5 million in annual revenue.

"Releasees" or "Released Entities" means First DataBank, Inc., its parent, subsidiaries, and affiliates and their (including First DataBank Inc.'s) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors, successors

and assigns; provided, however, that Medispan, a division of Wolters
Kluwer Health, Inc., its parent, subsidiaries, and affiliates and their
(including Medispan's) past, present and future officers, directors,
trustees, employees, agents, attorneys, shareholders, predecessors and
assigns (collectively referred to herein as "Medispan") are excluded from
the term Releasees and Released Entities, except for (1) the period when
Medispan was owned by First DataBank, and (2) the period from
December 19, 2001 to and including October 2, 2004, when First
DataBank was required to divest the Medispan business and provide
related editorial and consulting services to Medispan, which during these
periods (1) and (2) above, Medispan is included in the term Releasees and
Released Entities.

"Released Claims" means any and all known or unknown
claims, demands, actions, suits, causes of action, damages whenever
incurred whether compensatory or exemplary, liabilities of any nature or
under any theory whatsoever, including costs, expenses, penalties and
attorneys' fees, in law or equity, that any Releasor who has not timely
excluded themselves from the Private Payor Class, whether or not they
object to the settlement, ever had or now has, directly, representatively,
derivatively or in any capacity, arising out of any conduct, events or
transactions relating to the collection, calculation, formulas, mark-up,
determination, dissemination, publication of, and representations
concerning, the AWP or BBAWP or similar data published or

disseminated by First DataBank, Inc. electronically or otherwise for any prescription pharmaceuticals, including but not limited to, the allegations contained in the action entitled *New England Carpenters Health Benefits Fund et al. v. First Databank, Inc., et al.*, Civil Action No. 1:05-CV-11148 (D.Mass.).

"Releasors" means any and all Class Members, as well as their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, any future operating entities created and controlled by a Class Member (not including any successor of an Opt-Out), and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such, and any entities or persons (including, to the extent that a TPP Class Member administered their Pharmaceutical Purchases, all entities for which any TPP Class Member provides or provided administrative services) on whose behalf the Class Member is authorized to act. All Released Claims are forever discharged, and such claims cannot be asserted by any of Releasors' future, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective future stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal

representatives, or any successors, heirs, executors, trustees, administrators, or assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

"Settlement Notice" means the Notice of Pendency and Proposed Settlement of Class Action, and Settlement Hearing substantially in the form annexed hereto as Exhibit B and the Summary Notice for publication annexed hereto as Exhibit C.

"Third-Party Payor" or "TPP" means a private or quasi-governmental entity that paid or was at risk by contract to pay all or part of the cost of Pharmaceutical Purchases for individual or group beneficiaries of the TPP's prescription drug or health coverage including, but not limited to, self-insured employers, health and welfare plans, private health insurers (including private plans that cover government employees and/or retirees by reason of their current or past governmental employment). Excluded are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments, and all other federal, state or local government entities' claims, to the extent such governmental entities purchased and/or paid, whether directly or by reimbursement, for all or

part of the purchase price of prescription pharmaceuticals as non-employee public benefits provided pursuant to a legislative enactment.

"TPP Class Members" means any person or entity falling within the definition of the Private Payor Class, excluding any Class Opt-Outs, who also fall within the definition of Third-Party Payor.

"United States" means the United States of America including its states, commonwealths, territories and possessions.

"WAC to AWP Markup" means the number applied by FDB to the Wholesale Acquisition Cost ("WAC"), or if the WAC is not available then to the direct price ("DIR") of a pharmaceutical as reported by the manufacturer, in order to determine the AWP or BBAWP to be used in First DataBank's publications.

3.    Reasonable Best Efforts to Effectuate This Settlement. Consistent with the terms of this Agreement and notwithstanding the rights of the parties to terminate this Agreement at certain times, the parties and their counsel agree to use their reasonable best efforts, including all steps and efforts contemplated by this Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Settlement Court or otherwise, to carry out the terms of this Agreement.

4.    Motion for Preliminary Approval.  Concurrent with or shortly following the submission of this Agreement for consideration by the Settlement Court, Class Settlement Counsel shall submit to the Settlement Court a motion for preliminary approval of the settlement set forth in this Agreement, requesting entry of a Preliminary Approval and Settlement Class Order substantially in the form annexed hereto as Exhibit D.

5.    Notice to Class.  In the event the Settlement Court preliminarily approves the settlement set forth in this Agreement, Class Settlement Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order,  by mail, provide all those members of the Private Payor Class who can be identified by reasonable means with a copy of the detailed Settlement Notice substantially in the form annexed hereto as Exhibit B.  Notice to members of the Private Payor Class shall also be given by publication in national print media of the Summary Notice, substantially in the form annexed hereto as Exhibit C or as otherwise ordered by the Settlement Court, and by publication on the web site established by Class Settlement Counsel or the Notice Agent.  In addition, all members of the nationwide Private Payor Class shall be directed to review a copy of the detailed Settlement Notice which will be published on the web site and will be mailed to any nationwide Private Payor Class Member upon

14

request.  All costs of Settlement Notice as well as the retention of a notice consultant to effectuate notice, shall be paid exclusively by First DataBank as further provided in this Agreement in Paragraph 12.

6.    <u>Entry of Final Judgment</u>.  If, after the settlement fairness hearing scheduled by the Settlement Court in the Preliminary Approval and Settlement Class Order, the Settlement Court preliminarily approves this Agreement, then counsel for the parties shall request that the Settlement Court enter an Order and Final Judgment substantially in the form annexed hereto as <u>Exhibit E</u>.

7.    <u>Effective Date of Settlement</u>.  The settlement detailed in this Class Agreement shall be effective on the first date after all of the following events have occurred: (1) entry of the Preliminary Approval and Settlement Class Order substantially in the form annexed hereto as <u>Exhibit D</u>, or entry of a Preliminary Approval and Settlement Class Order not substantially in the form annexed hereto with respect to which neither First DataBank nor Class Settlement Counsel invoke their termination rights within the period prescribed in Paragraph 8 below; (2) final approval by the Settlement Court of this Agreement, following notice to the Private Payor Class and a fairness hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (3) entry by the Settlement Court of an Order and Final Judgment, substantially in the form set forth in <u>Exhibit E</u> annexed hereto; and, (4) the expiration of any time for

appeal or review of such Order and Final Judgment, or, if any appeal is

filed and not dismissed, after such Order and Final Judgment is upheld

on appeal in all material respects and is no longer subject to review upon

appeal or review by writ of certiorari, or, in the event that the Settlement

Court enters an order and final judgment in a form other than that

provided above ("Alternative Judgment") and none of the parties hereto

elect to terminate this Class Agreement as permitted by Paragraph 8, the

date that such Alternative Judgment becomes final and no longer subject

to appeal or review; and 4) this Agreement is no longer subject to

termination by any party as provided for in Paragraph 8.

    8.    <u>Termination</u>.

    (A)  REJECTION OR MATERIAL ALTERATION OF SETTLMENT

TERMS. First DataBank and Class Settlement Counsel shall each have

the right to terminate this Agreement by providing written notice of their

election to do so ("Termination Notice") to each other within thirty (30)

days of (1) the Settlement Court declining to enter the Preliminary

Approval and Settlement Class Order substantially in the form annexed

hereto as <u>Exhibit D</u>; (2) the Settlement Court declining to enter the Order

and Final Judgment substantially in the form annexed hereto as <u>Exhibit

E</u>; (3) the date upon which the Order and Final Judgment is modified or

reversed in any material respect by the U.S. Court of Appeals or the U.S.

Supreme Court; or (4) the date upon which an Alternative Judgment is

modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.

(B)  TPP OPT OUTS.  If First DataBank, in its sole discretion, determines that the number or identity of the TPP Class Members who request exclusion from the class is unsatisfactory, First DataBank shall be entitled to terminate this Agreement.  The parameters under which First DataBank likely would exercise its discretion under this paragraph will be set forth in a Supplemental Agreement between the parties which will be filed under seal with the Settlement Court.

(C)  STATE ATTORNEYS GENERAL:  During the period between the filing of a proposed Order for Preliminary Approval and ten (10) days before the date set by the Court for a hearing on final approval of the settlement embodied by this Agreement (the "Fairness Hearing"), First DataBank, shall seek written assurance of a lack of current interest in the prosecution or filing of claims based upon the allegations contained in the Class Action complaint or substantially in the form of the claims raised in the Class Action from State Attorneys General that have inquired, or may wish to inquire, about the terms of this Agreement.  If more than one such State Attorneys General affirmatively declines to provide such written assurance described above, then First Databank shall have a right to terminate this Agreement.  If First DataBank elects to exercise the option to terminate as set forth in this paragraph, written

notice of such election must be provided to Class Settlement Counsel so as to be received no later than 5:00 pm eastern time on the tenth (10th) day prior to the first date for the scheduled Fairness Hearing.  For purposes of the Settlement, the term State refers to the States of the United States, the District of Columbia, the territories, possessions, and commonwealths of the United States.

(D)  RETURN TO PRE-AGREEMENT STATUS.  In the event any of the parties exercise the right of termination enumerated in this paragraph, the stipulation concerning the certification of the Private Payor Class as defined in Paragraph 1 shall be null and void, the rights and obligations of the parties shall be identical to those prior to the execution of this Agreement and the status of the Class Action shall be as it was prior to the execution of this Agreement.  In the event either party exercises any right of termination, First DataBank will have a reasonable opportunity to conduct non-repetitive discovery and to raise and have heard any dispositive motions with respect to the claims against it.  However, FDB, if it exercises a right of termination, will make every reasonable effort to adhere to the case schedule set by the Court in the Class Action.

9.    Settlement Consideration.  Subject to the provisions hereof, and in full, complete and final settlement of all Released Claims as provided herein, First DataBank agrees to the following:

(A)    CHANGE IN PRICE REPORTING

(1) <u>ADJUSTMENT OF THE WAC TO AWP MARKUP</u>.  On a date which is no later than (1) sixty (60) days after the Effective Date of this Agreement, or (2) 270 days from the entry by the Settlement Court of a Preliminary Approval Order in substantially the form annexed hereto as <u>Exhibit D</u>, First DataBank shall adjust, i.e., change, the WAC to AWP Markup it utilizes for all pharmaceuticals listed on <u>Exhibit A</u> to 1.20.  As for other pharmaceuticals in the First DataBank database, to the extent that others are on a mark up factor basis and have a WAC to AWP mark up of less than 1.20, First Databank covenants and agrees that it shall not increase the WAC to AWP Markup for those pharmaceuticals in whole or in any part by reason of the adjustment on other pharmaceuticals made pursuant to this paragraph.  Subject to the provisions of paragraph (9)(A)(3) below, First DataBank will not at any time thereafter increase the WAC to AWP Markup of any pharmaceutical above 1.20 unless a different methodology for determining WAC, AWP or mark ups is adopted as contemplated by paragraph 9 (A)(3) or 9(A)(6).

(2) <u>DISCONTINUE PUBLICATION OF BBAWP</u>.  Subject to the provisions of paragraph (9)(A)(3) below, on a date which is no later than two (2) years from the Effective Date of this Agreement, First DataBank shall discontinue publishing, electronically or otherwise, the BBAWP data field for any pharmaceutical.  First DataBank shall use the

two year period described herein to notify its customers of the change in its publications contemplated by this paragraph.

(3) <u>REACTION TO PUBLISHING COMPETITOR.</u>

Notwithstanding paragraph (9)(A)(2) above, if at the time First DataBank is required to discontinue publication of the BBAWP data field by operation of this Agreement, or any time thereafter, a Publishing Competitor is or becomes engaged in the business of publishing or disseminating an electronically integrateable BBAWP field or other substantially similar drug pricing benchmark, First DataBank shall have the option to continue or resume to publish or disseminate a substantially similar data field in accordance with the methodology utilized by a Publishing Competitor or the revised methodology specified in Paragraph 9(A)(1) of this Agreement. However, to the extent the Publishing Competitor's revised methodology differs from the methodologies permitted by paragraphs 9(A)(1) or 9(A)(6) but nonetheless includes application of a WAC to AWP mark-up factor, FDB's publication of a substantially similar data field will be limited to the methodologies permitted by paragraphs 9(A)(1) or 9(A)(6), or the methodology employed by the Publishing Competitor provided it results in a WAC to AWP mark-up factor less than that proscribed by paragraph 9(A)(1). If at any time thereafter, the Publishing Competitor or Publishing Competitors which caused First DataBank to continue to publish its AWP or BBAWP data fields in accordance with this Agreement ceases to publish an AWP field

20

for all pharmaceuticals, First DataBank shall discontinue publishing the AWP and BBAWP data fields for all pharmaceuticals. After discontinuing to publish the BBAWP data field, First DataBank may not at any time thereafter resume publishing or disseminating that same data field unless the actions of another Publishing Competitor thereafter entitles First DataBank to relief from the obligations of paragraph 9 (A)(2) pursuant to the provisions of this paragraph.

(4) JURISDICTION DURING NOTICE PERIOD. As provided in the proposed Final Judgment and Order attached hereto as Exhibit E, the Settlement Court shall maintain continuing jurisdiction over any issues relating to this Agreement, including but not limited to the publication of the AWP or BBAWP prices during the two year notice period prescribed in Paragraph 9(A)(2).

(5) MEDIATION. First DataBank shall participate with other major participants in the pharmaceutical industry, including, but not limited to, pharmaceutical manufacturers, retail pharmacies, prescription benefit managers Private and Third Party Payor representatives, and experts, in a Settlement Court-approved mediation process meant to facilitate the establishment of a sustainable benchmark for pharmaceutical reimbursement. Class Settlement Counsel shall have the right to comment to the Court regarding the form and structure of

the settlement mediation process, and may propose to the Court participants in the mediation process.

(6) VERIFIABLE WHOLESALE PRICES. Notwithstanding anything to the contrary in this Agreement, to the extent that, as a result of changes in law, regulation or industry practice, verifiable pharmaceutical wholesale price information becomes available, First DataBank may publish such information.

(B). ACCESS TO INFORMATION

(1) FDB DATA ROOM: First DataBank shall establish and maintain for a period of three (3) years from the Effective Date, at its expense, an FDB Data Room and provide reasonable access to the FDB Data Room and its contents to all members of the Private Payor Class and Class Settlement Counsel in connection with any claim or potential claim brought or contemplated against other defendants in litigation involving pharmaceutical pricing and reimbursement, including, but not limited to, all plaintiffs with cases currently pending in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456. Nothing herein shall constitute a representation by Class Settlement Counsel as to the scope, completeness, accuracy or integrity of the information provided by First DataBank to the FDB Data Room. The scope, completeness, accuracy or integrity of the information is solely the responsibility of First DataBank. The establishment and maintenance of

the FDB Data Room does not constitute a waiver on the part of First DataBank of any attorney-client, work product, trade secret, or other confidentiality obligations, First Amendment, and/or other applicable privileges or immunities to discovery. In the event of the assertion of a privilege or immunity, First DataBank shall maintain in its possession and provide as part of the information maintained in the FDB Data Room a privilege log containing that information required by law to demonstrate the existence of any privilege or immunity being asserted with respect to any documents created during the period from January 1, 2001 through December 31, 2003. Any dispute arising with respect to a claim of privilege or immunity shall be brought to the attention of and resolved by the Settlement Court after the parties meet and confer in an attempt to resolve the dispute(s) in accordance with Local Rules. First DataBank shall cooperate with Class Settlement Counsel to establish that the documents produced by First DataBank in the Class Action as well as the documents and information included in the FDB Data Room, are authentic and business records maintained in the ordinary course of business.

In its sole discretion, First Databank may provide others with access to the FDB Data Room as well. As a condition to obtaining access to the FDB Data Room, First DataBank may require that one seeking access enter into reasonable confidentiality agreement and/or agree to be bound by any applicable protective orders.

As set forth in the proposed Final Order and Judgment, attached hereto as Exhibit E, no member of the Private Payor Class shall be permitted to serve FDB, its parents, subsidiaries, affiliates, directors, officers, or employees (past or present) in any action with any discovery requests, requests to admit, or subpoenas seeking materials or deposition or trial testimony in connection with any claim or potential claims brought against other defendants in connection with litigation involving pharmaceutical pricing and reimbursements without (1) reviewing the materials placed in the FDB Data Room, and then (2) demonstrating by motion before the Settlement Court that the requested discovery, testimony, or requests to admit are substantially non-repetitive and which they in good faith believe cannot be substantially obtained from the materials located in the FDB Data Room  As set forth in the proposed Final Order and Judgment attached hereto as Exhibit E, the parties shall request that the Court exercise its authority under the All Writs Act to enforce the provisions of this paragraph.

(2) EMPLOYEE INTERVIEWS:  In connection with litigation captioned *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 ("AWP MDL"), FDB will cooperate with and facilitate the interview of certain FDB employees involved in the drug price reporting and price data acquisition activities of FDB.  FDB will use its reasonable best efforts to identify to Settlement Class Counsel the FDB employees, present and former, who have had such involvement.  The

interviews shall be conducted by Class Settlement Counsel, or their
designees, and may, at the election of Class Settlement Counsel, be given
under oath and otherwise conducted in accordance with Fed.R.Civ.P.
30(c). The individuals to be interviewed shall be those who Class
Settlement Counsel reasonably, and in good faith, determine can provide
non-repetitive factual information concerning the drug price reporting
and price data acquisition activities of FDB. If transcripts are made, said
transcripts shall be placed in the FDB Data Room and made available to
all Class Members in accordance with Paragraph 9(B)(1).

      (3) EMPLOYEE TRIAL TESTIMONY: First DataBank shall
make reasonable efforts to make its employees and officers with relevant
knowledge available for trial testimony in connection with (1) any trial of
claims against the remaining defendant or defendants in the Class
Action, (2) any trial in the AWP MDL, and (3) any trial of claims similar to
those brought by Plaintiffs in the AWP MDL, brought by State Attorneys
General. First DataBank shall take reasonable steps to facilitate the
service on such employees of subpoenas issued at the request of counsel
compelling their attendance at trial as set forth above. First DataBank
shall also request that their former employees attend and testify at any
such trial.

      10.  <u>Attorneys' Expenses and Fees and Fee Disputes</u>. The
parties agree that an award of attorneys' fees in this action is a matter

committed to the sole discretion of the Settlement Court. Settlement Class Counsel shall, within twenty (20) days after the filing for preliminary approval, submit an application for attorneys' fees and expenses to the Settlement Court in an amount that shall not exceed (1) $625,000.00 in fees, (2) $125,000 for the maintenance of the FDB Data Room for a period of three (3) years from the Effective Date, and (3) $200,000.00 in expenses exclusive of amounts expended by FDB pursuant to Paragraph 12 below. The Settlement Court shall determine the appropriate amount of any attorneys fees and expenses to be paid to Settlement Class Counsel. Such fees and expenses approved by the Settlement Court shall be paid exclusively by First DataBank up to the amounts indicated above, exclusive of amounts expended by First DataBank pursuant to Paragraph 12 below, within twenty (20) days after the Effective Date. Upon payment of the attorneys' fees and expenses as awarded by the Settlement Court, Settlement Class Counsel shall release and forever discharge any claims, demands, actions, suits, causes of action, or other liabilities relating to any attorneys' fees or expenses incurred in the Class Action.

11.   All Claims Satisfied. Each Private Payor Class Member shall look solely to the relief described in Paragraph 9 of this Agreement for settlement and satisfaction, as provided herein, of all Released Claims.

12.     <u>Payment of Expenses Related to Notice and Administration</u>.
First DataBank shall be liable for all expenses associated with the
provision of notice to the members of the Private Payor Class and all
costs associated with the administration of the settlement embodied by
this Agreement, including the fee for professional services rendered by
Kinsella/Novak Communications, Ltd., 2120 L Street NW, Suite 205,
Washington, DC or, if not reasonably available, another firm agreed to by
FDB and Class Counsel (the "Class Notice Consultant").  In addition to
direct mail notice to TPPs, notice to Class Members shall also be
accomplished by a program of notice publication designed to achieve a
reasonable reach and frequency commensurate with the reach and
frequency sought in other pharmaceutical pricing litigation notice
programs, as reasonably determined by the Class Notice Consultant.

13.     <u>Releases</u>.  Upon the Effective Date of this Class Agreement
the Released Entities shall be released and forever discharged from any
Released Claims that any Releasor who has not timely excluded
themselves from the Private Payor Class.  All Releasors covenant and
agree that they shall not hereafter seek to establish liability against any
Released Entity based, in whole or in part, on any of the Released
Claims, and that upon the Effective Date, all Releasors will be forever
barred and enjoined from commencing, filing, initiating, instituting,
prosecuting, maintaining, or consenting to any action against any
Released Entity with respect to the Released Claims.

27

In addition, each Class Member hereby expressly waives and releases, upon this Agreement becoming effective, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Class Member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Agreement, but each Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Agreement becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of this Agreement whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Released Entities under § 17200, *et seq.*, of the California Business and Professions Code, which claims are expressly incorporated

28

into this Paragraph.  Further, Releasors hereby agree to reduce any judgment they might recover against any entity other than a Released Entity by release and discharge in an amount, fraction, portion, or percentage necessary under applicable state or federal law to bar, eliminate, or satisfy claims against the Released Entities for contribution and/or indemnity to the fullest extent permitted by applicable state or federal law arising from any Released Claims, including any amount re-allocated by applicable state or federal statute or common law to Released Entities resulting from uncollectibility and/or insolvency of other persons or entities determined to be at fault.  In addition, Releasors agree to indemnify the Released Entities herein and save and hold them harmless from any claims, demands, causes of action, subrogation claims, liens, and claims for contribution or indemnity, made by others so adjudged jointly liable or severally liable with the Released Entities arising from any of the Released Claims, whether such is alleged to arise by reason of judgment, settlement, reallocation of fault in the event of insolvency or uncollectibility of any award, or otherwise.  A Releasor may satisfy such indemnity obligation by reducing any judgment recovered by such Releasor against a party other than a Released Entity by the amount, percentage, or share of such judgment necessary, under applicable law, to relieve the Released Entities of liability for contribution and/or indemnity.  Releasors shall execute any additional

documentation that may be required under applicable state or federal law in order to give effect to this provision.

14. <u>Preservation of Rights</u>. The parties hereto agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by First DataBank or of the truth of any of the claims or allegations contained in the complaint in the Class Action; and evidence thereof shall not be discoverable or used directly or indirectly by the Private Payor Class or any third party, in any way (except that the provisions of this Agreement may be used by the parties to enforce its terms), whether in the Class Action or in any other action or proceeding. This Agreement and all of the terms herein constitute compromises and offers to compromise covered by Federal Rule of Evidence 408. In the event that this Agreement is terminated pursuant to Paragraph 8, nothing in this Class Agreement or its negotiation may be used as evidence in any action between the parties hereto. The parties expressly reserve all their rights and defenses if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement.

15. <u>Class Certification For Settlement Purposes Only</u>. First
DataBank stipulates to certification of the Private Payor Class as defined
in Paragraph 1 for settlement purposes only, and for the sole purpose of
creating that settlement class. First DataBank's stipulation is contingent
upon the execution by the parties of this Agreement and that this
Agreement is finally approved by the Settlement Court and is not
terminated pursuant to the terms of this Agreement. If the Agreement is
for any reason not finally approved, or is otherwise terminated, First
DataBank reserves the right to reassert all objections and defenses to
certification of any class for trial purposes, and Plaintiffs will not offer
First DataBank's stipulation to certification as part of this Agreement as
any evidence in support of a motion to certify any class for trial
purposes.

16. <u>Consent to Jurisdiction</u>. First DataBank and Plaintiffs
hereby irrevocably submit to the exclusive jurisdiction of the Settlement
Court for purposes of any suit, action, proceeding or dispute arising out
of, or relating to, this Agreement or the applicability of this Agreement,
including any issues arising or regarding the establishment and
maintenance of the FDB Data Room and the information and materials
contained therein.

17. <u>Resolution of Disputes: Retention of Jurisdiction</u>. Any
disputes between or among First DataBank and any Class Members

concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Settlement Court for resolution. The Settlement Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

18. <u>Enforcement of Settlement</u>. Notwithstanding Paragraph 14 above, this Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used by any of the Released Entities for such defense and/or in support of injunctive relief against any such action, suit or other proceeding.

19. <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

20. <u>Authorization to Enter Class Agreement</u>. The undersigned representatives of First DataBank represent that they are fully authorized to enter into and to execute this Agreement on behalf of First DataBank. Class Settlement Counsel represent that they are fully authorized to conduct settlement negotiations with First DataBank's Counsel on behalf of the Plaintiffs and to enter into, and to execute, this Agreement on behalf of Plaintiffs, subject to Settlement Court approval pursuant to Fed. R. Civ. P. 23(e).

Case 1:05-cv-11487-PBS Document 162-9 Filed 11/07/2006 Page 35 of 36

21.   <u>No Party Is the Drafter</u>.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

22.   <u>Choice of Law</u>.  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

23.   <u>Amendment or Waiver</u>.  This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

24.   <u>Execution in Counterparts</u>.  This Agreement may be executed in counterparts.  Facsimile signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Settlement Court.

25.   <u>Integrated Agreement</u>.  This Agreement, including the exhibits hereto, together with the Supplemental Agreement and any

exhibits thereto, contain an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto, and supersede all prior oral or written agreements and contemporaneous oral agreements among the parties.

26. <u>Construction</u>. This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Entities.

27. <u>Notices</u>. All notices and other communications required or permitted under this Agreement shall be in writing and delivered in person, by overnight delivery service or by facsimile. Any such notice shall be deemed given as of the date of receipt and shall be delivered to the parties as follows:

**If To Plaintiffs**:

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP,
One Main St., 4th Floor
Cambridge, MA 02142
Tel. 617-482-3700
Fax: 617-482-3003

Steve W. Berman
Hagens Berman Sobol Shapiro LLP,
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Tel. 206-623-7292
Fax: 206-623-0594

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. 215-496-0300
Fax: 215-496-6611

**If To First DataBank:**

Eve Burton
Office of the General Counsel
The Hearst Corporation
1345 Avenue of the Americas
New York, NY 10019
Tel. 212-649-2045
Fax: 215-649-2041

28. <u>Severability</u>. In the event any one or more of the provisions
contained in this Agreement shall for any reason be held to be invalid,
illegal, or unenforceable in any respect, such invalidity, illegality or
unenforceability shall not affect any other provision if First DataBank
and Class Settlement Counsel mutually elect to proceed as if such
invalid, illegal or unenforceable provision had never been included in the
Agreement.

29. <u>Headings</u>. The headings to this Agreement have been
inserted for convenience only and are not to be considered when
construing the provisions of this Agreement.

30. <u>Public Statement</u>. Class Settlement Counsel and First
DataBank shall, upon execution of this Agreement, each issue a public

statement with respect to the settlement embodied by this Agreement. The content of the public statement is to be agreed upon by the parties prior to release.


IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Class Agreement as of the date first written below.

PLAINTIFFS

By: _____

    Thomas M. Sobol, Esq.

    Hagens Berman Sobol Shapiro LLP.


Dated: _August 3, 2006_

FIRST DATABANK, INC.

By: _____

    Eve Burton, Esq., its counsel


Dated _August 7, 2006_

36