UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Civil Action No.<br>   01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO<br><br>*State of Montana v. Abbott Labs. Inc., et al.*,<br>02-CV-12084-PBS<br><br>*State of Nevada v. American Home Prods. Corp., et al.*,<br>D. Nev. Cause No. CV-N-02-0202-ECR | Judge Patti B. Saris<br><br>**AFFIDAVIT OF**<br>**MICHAEL CONLEY** |

STATE OF NEW JERSEY
                    ss.:
COUNTY OF UNION

MICHAEL CONLEY, being duly sworn, deposes and says

1. I am the Executive Director for U.S. Managed Markets, Trade Corporate Accounts, and Customer Service for Novartis Pharmaceuticals Corporation ("NPC"), a defendant in these actions. I have held this position at NPC since approximately March 2000. My responsibilities include communicating the pricing for NPC's pharmaceutical products to third-party publishers.

2. I submit this affidavit in support of NPC's motions for summary judgment in *State of Montana v. Abbott Laboratories* and *State of Nevada v. American Home Products*. In particular, I explain that NPC develops and sells only Brand Name prescription drugs; describe NPC's customers and sales practices; explain that for the vast majority of NPC drugs, Wholesale Acquisition Cost ("WAC") is equal to Average Wholesale Price ("AWP") minus 16.66 percent; and explain that NPC accurately described what its AWP represented when NPC reported AWP.

ws617.tmp

3. I have personal knowledge or have made inquiries with respect to the facts set forth in this affidavit. I would be competent to testify with regard to the facts stated in this affidavit if called upon to do so.

4. I understand that the NPC drugs at issue in these cases are Aredia; Clozaril; Combipatch; Comtan; Diovan; Diovan HCT; Elidel; Estraderm; Exelon; Famvir; Femara; Focalin; Lamisil; Lamprene; Lescol; Lescol XL; Lotensin; Lotensin HCT; Lotrel; Miacalcin Injection; Mialcalcin SPR; Parlodel; Rescula; Ritalin; Ritalin LA; Starlix; Tegretol; Tegretol XR; Trileptal; Vivelle; Vivelle-DOT; Voltaren Opthalmic; Zaditor; and Zelnorm.

## A. NPC's Products and Customers

5. NPC is a Delaware corporation with its principal place of business in East Hanover, New Jersey, that was formed by merger of Sandoz and Ciba-Geigy effective January 1, 1997.

6. NPC develops, distributes, and markets Brand Name prescription drugs only; it does not market and sell generic drugs.

7. With respect to the drugs at issue here, the following are only self-administered: Clozaril; Combipatch; Comtan; Diovan; Diovan HCT; Elidel; Estraderm; Exelon; Famvir; Femara; Focalin; Lamisil; Lamprene; Lescol; Lescol XL; Lotensin; Lotensin HCT; Lotrel; Mialcalcin SPR; Parlodel; Rescula; Ritalin; Ritalin LA; Starlix; Tegretol; Tegretol XR; Trileptal; Vivelle; Vivelle-DOT; Voltaren Opthalmic; Zaditor; and Zelnorm.

8. NPC delivers the vast majority of its prescription pharmaceuticals to, and is paid by, wholesalers and retail pharmacy chains with ten or more stores and a warehouse that provides wholesaler-type services to the chain ("warehousing retail chains").

9. NPC generally sells to wholesalers and warehousing retail chains at WAC, minus a two percent discount for prompt payment of invoices.

10. Certain entities, such as hospitals and pharmacy benefit managers ("PBMs"), can influence patients' preferences and/or doctors' prescribing decisions through their choice of which prescription drugs they place on their formularies of preferred drugs. To have its drugs placed on formularies, NPC typically uses either contracted discount prices or contracted rebates, depending on whether the entity actually takes possession of the drugs.

11. For entities that purchase and take possession of drugs, such as hospitals, NPC may negotiate a contract price with the entity – typically at a discount to WAC – at which the entity may purchase the NPC drug from a wholesaler. When the wholesaler delivers the NPC product to the entity at the price that was negotiated between NPC and the purchasing entity, NPC provides the wholesaler with what is called a "chargeback."

12. The chargeback reimburses the wholesaler for having sold the product at below its own cost. It is equal to the difference between the price at which the wholesaler purchased the drug from NPC (*i.e.*, typically WAC) and the lower price at which the wholesaler delivered the drug.

13. Other entities, such as PBMs, health maintenance organizations, and state Medicaid agencies that have preferred drug lists, typically do not take possession of NPC drugs, but these entities reimburse doctors and pharmacies for administering or dispensing NPC drugs to their respective beneficiaries. To obtain or maintain a position on such an entity's drug formulary, NPC may pay the entity a contractual rebate that ultimately lowers that entity's net cost for drugs.

B. **Background on NPC's Reporting of Pricing Information**

14. NPC regularly communicates its pricing information to wholesalers, warehousing retail chains, and third-party publishers including First DataBank. Notice of NPC's introduction of new products or price adjustments to existing products is communicated in a

document called a "Broadcast Fax." A Broadcast Fax is in letter form and includes the National Drug Code ("NDC") number, product description, "AWP" or "AWP Price" (also known as "average wholesale price" or "AWP"), and "Wholesaler Price" or "Cost Price to Wholesaler" (*i.e.*, WAC) for each product and the effective date of the prices.

15. In or around 1997, NPC began including on each Broadcast Fax that contained AWP data a disclosure related to AWP (the "AWP disclosure"). Although the exact wording has changed slightly over the years, the central theme remains the same. Each AWP disclosure expressly provides that AWP is not intended to represent an actual price charged by NPC to any customer. By way of example, the January 17, 2002, version (a true and correct copy of which is attached hereto as Exhibit 1) states:

> As used in this letter, the term "AWP" or "Average Wholesale Price" constitutes a reference for each Novartis product, set as a percentage above the price for which each product is offered generally to wholesalers. Notwithstanding, the inclusion of the term "price" in "Average Wholesale Price", AWP is not intended to be a "price" charged by Novartis for any product to any customer.

16. Since on or about March 2000, the Broadcast Faxes have been sent over my signature. True and correct copies of Broadcast Faxes announcing price changes and dated January 31, 1997, July 10, 1997, January 1, 1998, October 26, 1998, July 1, 1999, October 15, 1999, March 27, 2000, July 5, 2000, October 19, 2000, January 4, 2001, March 8, 2001, May 21, 2001, June 7, 2001, July 5, 2001, September 10, 2001, January 17, 2002, February 7, 2002, March 7, 2002, April 17, 2002, May 9, 2002, May 23, 2002, June 6, 2002, July 11, 2002, August 21, 2002, January 6, 2003, February 26, 2003, March 5, 2003, and March 13, 2003, are attached hereto as Exhibits 2-29 respectively.

### C. AWPs Reported by NPC

17. As the attached Broadcast Faxes reflect, for the period January 31, 1997, through June 4, 2003, for all but four of the drugs at issue here, the AWP that NPC reported to third-party publishers was 120 percent of the WAC (*i.e.*, WAC plus 20 percent), which, put differently, means that the WAC was equal to AWP minus 16.66 percent. For Diovan, Diovan HCT, Famvir, and Zaditor, the AWP that NPC reported to third-party publishers was 125 percent of the WAC (*i.e.*, WAC plus 25 percent), which, put differently, means that the WAC was equal to AWP minus 20 percent.

18. I understand that Plaintiffs in these cases have claimed that NPC uniformly increased the difference between the WAC and AWP of certain drugs at issue here in late 2000 and 2001. (State of Montana Second Amended Complaint at ¶ 501; State of Nevada Amended Complaint at ¶ 322). As the attached Broadcast Faxes reflect, for the period March 27, 2000, through June 4, 2003, the ratio between the WAC and the AWP that NPC reported to third-party publishers for each of the drugs at issue here remained constant.

### D. AWPs Published by First DataBank

19. NPC regularly subscribes to certain third-party publication sources, including AnalySource, an on-line pricing database that reports the National Drug Data File published by First DataBank.

20. Using the AnalySource database, I compared the WAC and AWP for the drugs at issue here that NPC reported in its Broadcast Faxes to First DataBank with the WAC and AWP for the same drugs at issue that First DataBank published for the period March 27, 2000, through June 4, 2003 (a period that includes the late 2000 and 2001 period during which Plaintiffs claim that NPC uniformly increased the ratio between the WAC and AWP that NPC reported for certain NPC drugs at issue).

21. For the period March 27, 2000, through January 17, 2002, the WAC and AWP published by First DataBank for all of the drugs at issue were identical to the WAC and AWP reported to First DataBank by NPC. In other words, both the First DataBank data that Plaintiffs cite and the Broadcast Faxes themselves show that NPC did not uniformly increase the ratio between the WAC and AWP that NPC reported for certain NPC drugs at issue during the late 2000 and 2001 period.

22. As previously noted, NPC issues a Broadcast Fax when it changes the price of a drug. When NPC increased the price of a drug, the difference between the WAC and AWP that NPC reported for that drug remained constant. Beginning on January 18, 2002, First DataBank unilaterally changed the markup factor it used to calculate AWPs for NPC drugs to 25 percent, which had the effect of making First DataBank's reported AWPs higher than NPC's reported AWPs for all NPC drugs at issue here other than Diovan, Diovan HCT, Famvir, and Zaditor.

X _____
Michael Conley

Subscribed and sworn to before me
this 2nd day of Feb, 2007

_____
Notary Public

CARMELA YAUCH
A NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Jan. 3, 2009

ws617.tmp                                6