# Exhibit 58

LEXSTAT MT. CODE ANN. 1-2-106

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 16, 2006 ***

TITLE 1  GENERAL LAWS AND DEFINITIONS
CHAPTER 2  STATUTORY CONSTRUCTION
PART 1  GENERAL PROVISIONS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 1-2-106 (2006)*

1-2-106  Construction of words and phrases.

Words and phrases used in the statutes of Montana are construed according to the context and the approved usage of the language, but technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law or are defined in chapter 1, part 2, as amended, are to be construed according to such peculiar and appropriate meaning or definition.

**HISTORY:**

En. Sec. 15, Pol. C. 1895; re-en. Sec. 15, Rev. C. 1907; amd. Sec. 3, Ch. 4, L. 1921; re-en. Sec. 15, R.C.M. 1921; Cal. Pol. C. Sec. 16; re-en. Sec. 15, R.C.M. 1935; R.C.M. 1947, 19-102.

**NOTES:**

Cross-References

See "Words and Phrases Defined in Code", MCA General Index.

Chapter Case Notes

*Modification of Custody Order Required by Substantial Change in Circumstances -- Application of In re Marriage of Johnson Required -- Jurisdictional Prerequisites -- Absurd Application of Statute Avoided:* After making an agreement for child custody as part of the dissolution of her marriage, Kimberly determined to attend college and moved from Lewistown to Billings with her children. On a remand from the Supreme Court, the District Court held that *In re Marriage of Johnson, 266 M 158, 879 P2d 689 (1994),* did not apply because custody was not being transferred from the primary custodian to the secondary custodian. The Supreme Court held that contrary to the District Court's interpretation, Johnson did apply to the case and that Johnson applied to any case in which a custody modification would have the effect of substantially changing the children's primary residence, requiring that the District Court must first meet the jurisdictional requirements of *40-4-219.* However, the Supreme Court found that a literal application of that statute would cause an absurd result by its application only to movement of a child to another state and not to instances in which the child is moved from one end of the state to another or to another country. For this reason, the Supreme Court held that if a change has occurred in the circumstances of the child or the child's custodian, causing the children to move from one location to another in a manner that would hinder the effectiveness of the custody arrangement, then the jurisdictional requirements of *40-4-219* have been met and the District Court may modify the custody arrangement pursuant to *40-4-212.* The Supreme Court then applied the rule to the case before it and concluded that the modification of the custody arrangement changing the custody of Kimberly's ex-husband from 160 days to 75 days annually was in the best

interests of the children, as demonstrated in the record. *In re Marriage of Syverson, 281 M 1, 931 P2d 691, 54 St. Rep. 32 (1997),* followed in *In re Marriage of Oehlke, 2002 MT 79, 309 M 254, 46 P3d 49 (2002).*

*Repeal by Implication Not Favored:* The Supreme Court looks with disfavor upon repeal by implication. Without an express declaration by the Legislature that an enactment repeals an existing law, a later statute will not repeal an earlier law unless the two are plainly and irreconcilably repugnant to or in conflict with each other. *W.R. Grace & Co. v. Dept. of Revenue, 238 M 439, 779 P2d 470, 46 St. Rep. 1399 (1989),* followed in *Ross v. Great Falls, 1998 MT 276, 291 M 377, 967 P2d 1103, 55 St. Rep. 1127 (1998).* See also *Ritchie v. Ennis, 2004 MT 43, 320 M 94, 86 P3d 11 (2004).*

*Mandatory Teacher Retirement Impliedly Repealed:* Plaintiff was a tenured elementary school principal in Anaconda. In March 1977, she received notification that because she was 65 years of age her contract would not be renewed. This termination was accomplished by a majority vote of the board of trustees for the school district in accordance with *20-4-203(2)* and board policy. Plaintiff sought a redetermination by the board and also appealed to the School District Superintendent. No action was taken. Plaintiff then filed a discrimination complaint with the Human Rights Commission. The Commission found *20-4-203(2)* to be a statutory exception to the antidiscrimination provisions of Title 49, ch. 2 and 3. The District Court held that *20-4-203(2)* was impliedly repealed by the adoption of *49-2-303(1)* and *49-3-201.* The Supreme Court affirmed, saying that while repeal by implication is not favored, the application of the rule that the latest enactment of the Legislature prevails best effectuates the intent of the Legislature in this instance. The Supreme Court said that the manner in which the Legislature enacted Title 49 clearly depicted the legislative intent that there be no discrimination in the lives of Montana citizens in certain areas, including employment. Section *20-4-203(2)* permits discrimination based solely on age with no qualifications or justifications bringing it within the limited exceptions of Title 49. Because the mandatory retirement provision bore no relationship to job performance, it was held impliedly repealed. *Dolan v. School District, 195 M 340, 636 P2d 825, 38 St. Rep. 1903 (1981),* distinguished in *Ross v. Great Falls, 1998 MT 276, 291 M 377, 967 P2d 1103, 55 St. Rep. 1127 (1998).*

*Statutory Construction -- Initiatives:* The rules applicable to judicial interpretation of initiatives are the same as those applying to legislation enacted by the *Legislature. St. Bar of Mont. v. Krivec, 193 M 477, 632 P2d 707, 38 St. Rep. 1322 (1981),* followed in *State ex rel. Palmer v. Hart, 201 M 526, 655 P2d 965, 39 St. Rep. 2277 (1982).*

*Questions of Statutory Construction -- Court Determination:* All questions of law, including the construction of statutes, are to be decided by the court and not by the jury. Therefore, it was not error for the court to refuse plaintiff's instruction regarding statutory construction. *Stenberg v. Neel, 188 M 333, 613 P2d 1007 (1980).*

*Interpretation of Constitution:* To determine the meaning of *Art. II, sec. 20, Mont. Const.,* the Supreme Court employs the same rules of construction employed to construe statutes. The intent of the framers should be determined from the plain meaning of the words used. If that is possible, we apply no other means of interpretation. *St. v. Cardwell, 187 M 370, 609 P2d 1230 (1980).* See also, as to the intent of the framers, *Woirhaye v. District Court, 1998 MT 320, 292 M 185, 972 P2d 800, 55 St. Rep. 1298 (1998).*

Part Case Notes

*Preclusion of Wrongful Discharge Suit by Collective Bargaining Agreement Not Unconstitutional Impediment to Access to Courts:* When plaintiff filed a wrongful discharge suit, defendant pointed out that the employment was covered by a union collective bargaining agreement (CBA) and that *39-2-912(2)* precludes an employee covered by a CBA from seeking relief under the Wrongful Discharge From Employment Act. Plaintiff argued that if she was precluded from bring a wrongful discharge claim solely because her employment was covered by a CBA, then *39-2-912* unconstitutionally violated her access to courts, full redress, and a jury trial. However, constitutionality of a statute is presumed unless the person challenging it proves unconstitutionality beyond a reasonable doubt. Here, plaintiff presented nothing to overcome the presumption of constitutionality. Plaintiff's argument concerning lack of legal redress also failed because a possible action against the union was still available. *LaFournaise v. Mont. Developmental Center, 2003 MT 240, 317 M 283, 77 P3d 202 (2003).*

*Applicability of Act When Unconstitutional Part Eliminated:* If, when an unconstitutional part of an act is eliminated, the remainder is complete in itself and capable of being executed in accordance with the apparent legislative intent, the remainder of the act must be sustained. *Tax Lien Serv. v. Hall, 277 M 126, 919 P2d 396, 53 St. Rep. 614 (1996).*

Mont. Code Anno., § 1-2-106 (2006)

*Severability Clause in Bill -- Provisions Held Severable:*   The Supreme Court held that the retirement adjustment payment provisions contained in Ch. 823, L. 1991, were void because they were in violation of *4 U.S.C 111.* Citing *Mont. Auto. Ass'n v. Greely, 193 M 378, 632 P2d 300 (1981),* the Supreme Court held that the income tax portions of Ch. 823 were not affected by striking the adjustment provisions contained in sections 4 and 5 of that chapter. Those sections were segregable from the remainder of the act from an administrative and operational perspective. The inclusion of a severability clause raised a presumption that the Legislature would have enacted the law without the portion held invalid, and nothing else in the act contradicted that presumption. *Sheehy v. Pub. Employees Retirement Div., 262 M 129, 864 P2d 762, 50 St. Rep. 1477 (1993).*

*Severability Clause in Bill -- Entire Act Void:*   A legislative act is void in its entirety despite the presence of a severability clause when core provisions of the act are unconstitutional. *White v. St., 233 M 81, 759 P2d 971, 45 St. Rep. 1310 (1988).*

*When One Must Look to Other Statutes to Determine Prohibited Conduct -- Statute Establishing Jurisdiction and Penalty Not Deficient:*   District Court dismissed a charge of driving under the influence of alcohol, third offense, because defendant's first offense was a violation of *61-12-601* (now repealed and replaced by *61-5-217* and *61-8-723*) when he was a minor and the court found he had only one prior conviction as an adult under *61-8-401.* The court held that the current charge was DUI, second offense, and that it lacked jurisdiction to hear the charge. On appeal, the state argued that *61-12-601* (now repealed and replaced by *61-5-217* and *61-8-723*) was unconstitutionally vague because it (1) did not establish a crime but merely provided a forum where other traffic crimes were to be prosecuted if a juvenile driver was involved; and (2) established penalties the court may impose. The Supreme Court affirmed the dismissal, holding that a statute is not deficient merely because one must look to other statutes to determine prohibited conduct, in this case whether the minor had unlawfully operated a motor vehicle. *St. v. Gee, 222 M 498, 723 P2d 934, 43 St. Rep. 1452 (1986).*

*Administrative Interpretation of Statute:*   In determining the meaning of a statute, deference must be given to the interpretations given the statute by the officers and agencies charged with its administration. *St. v. Midland Materials Co., 204 M 65, 662 P2d 1322, 40 St. Rep. 666 (1983).*

*Administrative Rule Void When Contrary to Longstanding Administrative Interpretation:*   The Department of Revenue's longstanding administrative interpretation of the meaning of "on the same street" as used in *16-3-306* has the force and effect of law due to the repeated reenactment of that section by the Legislature without change in the operative language that no license be issued to a business "on the same street" and within 600 feet of a church or school. Thus, the interpretation could not be changed, and an administrative rule making a change is invalid. *Hovey v. Dept. of Revenue, 203 M 27, 659 P2d 280, 40 St. Rep. 272 (1983).*

*Penal Statutes -- Grounds for Declaring Void:*   Statutes imposing penalties, either civil or criminal, must be clear and explicit, and if they are so vague and uncertain in their terms as to convey no meaning or if the means of carrying them out are not adequate or effective, the courts must declare them void. *Missoula High School Legal Defense Ass'n v. Supt. of Pub. Instruction, 196 M 106, 637 P2d 1188, 38 St. Rep. 2164 (1981).*

*Penal Statutes -- Education Funds:*   Section *20-1-301,* providing that if a school district does not provide 180 days of instruction it is not entitled to state interest and income funds and the forfeited funds will be apportioned to the other districts in the county, is a penal statute and must thus be strictly construed. *Missoula High School Legal Defense Ass'n v. Supt. of Pub. Instruction, 196 M 106, 637 P2d 1188, 38 St. Rep. 2164 (1981).*

*Legislative Intent -- Implied Repeal of General Statutes by Later Comprehensive Act:*   While implied repeals are not favored where an irreconcilable conflict exists between earlier and later statutes, the courts do not hesitate to declare the earlier statute repealed, especially if the later act is a comprehensive act establishing elaborate inclusions and exclusions of persons, things, and relationships ordinarily associated with the subject. *In re Estate of Holmes, 183 M 290, 599 P2d 344 (1979).*

Case Notes

*Federal Self-Employment Tax Not Considered Income Tax and Not Deductible in Calculating Montana Net Income -- No Administrative Rule Required to Explain Denial of Tax Deduction When Deduction Not Explicitly Provided:*   The federal income tax and the federal self-employment tax are distinct entities, despite their colocation in the federal tax code and their conjoined collection procedures. The self-employment tax, although based on income, is in the nature of an employment tax and is a Social Security tax rather than an income tax as that term is commonly understood. Mon-

tana has the authority to interpret its own tax code without being bound by the vagaries of the federal tax code. Therefore, federal income tax, as used in *15-30-121(1)(b)*, does not include federal self-employment taxes for purposes of calculating net income on Montana tax returns. Further, the Department of Revenue is not required to promulgate a rule explaining the denial of a tax deduction that is not explicitly provided for in the tax code. *Baitis v. Dept. of Revenue, 2004 MT 17, 319 M 292, 83 P3d 1278 (2004)*.

*Right of Defendant to Plead Guilty Over State's Objection -- Erroneous Refusal to Accept Guilty Plea:* Peplow was charged with and convicted of DUI, driving with a suspended or revoked license, driving without insurance, failing to report an accident, and tampering with evidence. Prior to trial, Peplow tried to enter guilty pleas to the driving with a suspended or revoked license and driving without insurance counts, but the trial court ruled that it was not required to accept the pleas because Peplow's actions giving rise to the counts were part of the res gestae and probative of the issue of impairment; the trial court proceeded to trial on all counts. Peplow appealed on grounds that the trial court erred in refusing the guilty pleas. In a case of first impression, the Supreme Court considered a defendant's right to plead guilty over the state's objection. The court noted the numerous statutory procedural safeguards in place to ensure that: (1) a guilty plea is made knowingly, voluntarily, and intelligently; (2) there is a factual basis for the plea; (3) the court is not bound by any plea agreements; and (4) a defendant may not withdraw a guilty plea if the plea agreement is not accepted. The Supreme Court cited *Lamb v. Missoula Imports, 230 M 183, 748 P2d 965 (1988),* for the proposition that when the word "may" is used to confer power upon an officer, court, or tribunal and the public or a third person has an interest in the exercise of power, then the exercise of power becomes imperative. Under *46-16-105*, a plea of guilty "may" be accepted before or during trial. The Supreme Court construed this language to mandate the acceptance of a guilty plea as long as the statutory requirements are met. Further, under *46-12-204*, a defendant may plead guilty or not guilty without limitation on the right to plead. *St. v. Peplow, 2001 MT 253, 307 M 172, 36 P3d 922 (2001)*.

*Unmarked Crosswalk at Every Intersection:* Hanson was struck by Edwards's car while crossing an intersection that had no sidewalks, curbs, or painted lines delineating a crosswalk. Hanson moved for a directed verdict on grounds that because he was in an unmarked crosswalk, which gave him the right-of-way, Edwards was negligent as a matter of law. The motion was denied, and the trial court refused to instruct the jury that an unmarked crosswalk exists at every intersection pursuant to *61-1-209* (now repealed). The Supreme Court examined legislative intent and, reading *61-1-209* (now repealed) in pari materia with *61-8-502*, concluded that Montana law provides for a crosswalk on any portion of a roadway at an intersection. The jury should have been so instructed, and failure to do so was reversible error. *Hanson v. Edwards, 2000 MT 221, 301 M 185, 7 P3d 419, 57 St. Rep. 907 (2000)*.

*Definition of Farm for Purposes of Eminent Domain -- Use of Otherwise Inapplicable Definition -- Use of Ordinary Meaning of Undefined Term:* The Richters brought an action in District Court to condemn an easement across the land of a neighbor that surrounded their property on three sides. The District Court held that the definition of farm in *72-16-331(7)* (section now repealed) applied to the use of that term in *70-30-102(6)*, reasoning that because the term "farm" was undefined in Title 70, ch. 30, the definition in *72-16-331(7)* (section now repealed) should be applied because *1-2-107* provides that a definition contained in one section of law should be used for the purposes of other sections of law unless "a contrary intention plainly appears". The District Court then entered a preliminary condemnation order in favor of the Richters. The Supreme Court held that a contrary intention did in fact appear because the Legislature had, by use of the phrase "as used in *72-16-331* through *72-16-349*" (all sections now repealed), limited the application of the terms defined in *72-16-331* (now repealed) to only *72-16-331* through *72-16-349* (all sections now repealed). Because farm was then left undefined for the purposes of Title 70, ch. 30, the Supreme Court applied the definition found in the American Heritage Dictionary and held that the Richters' property did not qualify as a farm, as defined in that dictionary, because the Richters had not prepared, fertilized, or tilled the soil on their property nor had they cited any authority for the Supreme Court to hold that naturally occurring timber on the property was a crop. The Supreme Court therefore reversed the condemnation order of the *District Court. Richter v. Rose, 1998 MT 165, 289 M 379, 962 P2d 583, 55 St. Rep. 663 (1998)*.

*Restrictive Covenant Prohibiting Mobile Homes -- Application to Manufactured Home -- "Mobile Home" Used in Ordinary and Popular Sense:* Wittmers purchased a 26- by 60-foot manufactured home that was capable of being put on wheels and moved it to a subdivision in Gallatin County. The plaintiffs brought an action to restrain Wittmers from maintaining the home within the subdivision because it was in violation of a restrictive covenant that prohibited the use of "mobile homes". The Supreme Court held that the covenant was not ambiguous and that the term "mobile home", which was undefined in the covenants, should be understood in its ordinary and popular sense. The Supreme Court noted that other statutory definitions of the term "mobile home" could be looked to for guidance in determining the meaning of the term for the purposes of the covenants and that those other definitions include structures such as Witt-

mers'. The Supreme Court held that the District Court correctly construed the term "mobile home" to include the Witt-mers' manufactured home because their home fell within other definitions of the term "mobile home", because the Su-preme Court had previously construed the term to include homes such as the Wittmers' in two other cases before the court, and because the Wittmers' home had the characteristics of a mobile home. *Newman v. Wittmer, 277 M 1, 917 P2d 926, 53 St. Rep. 516 (1996).*

*Public or Governmental Bodies -- Committee to Recommend Commissioner of Political Practices Appointees to Governor:*  The committee that recommends a list of persons from whom the Governor may select the Commissioner of Political Practices is not a board, bureau, commission, or agency within the meaning of those terms as used in the open meeting law. However, the committee is a "public or governmental body" under the plain meaning of those terms as used in that law because it has a clear public and governmental purpose and was created for a specific governmental task and is thus subject to the open meeting law. *Common Cause of Mont. v. Statutory Comm. to Nominate Candidates for Comm'r of Political Practices, 263 M 324, 868 P2d 604, 51 St. Rep. 77 (1994).*

*Judicial Notice of Facts Overruled:*  The lower court took judicial notice of the fact that livestock raised and in-tended for sale in the ordinary course of business constituted business inventory. The Supreme Court held that Montana law distinguishes livestock and business inventory so that the lower court had to construe livestock and business inven-tory according to their peculiar and appropriate meaning as technical words and phrases. *Montana Stockgrowers Ass'n v. St., 238 M 113, 777 P2d 285, 46 St. Rep. 1132 (1989).*

*Legislative Intent -- Plain Meaning:*  Plaintiff was not allowed to gather signatures for an initiative petition on a general election day in a school building used as a polling place. The school district had a general policy prohibiting solicitation of any kind in school buildings. Plaintiff contended the policy violated *13-35-218* by prohibiting solicitation permitted by that section. The Supreme Court held that its function in construing and applying statutes is to effect legis-lative intent. The primary tool for ascertaining intent is the plain meaning of the words used. The court properly refers to legislative history only when intent cannot be determined from the content of the statute. Section *13-35-218* did not necessitate such an inquiry. The court held that it clearly and unambiguously proscribes a manner of solicitation which results in interference with the election process or obstructing access to and from the polls but in no way guarantees access to persons whose solicitation effects no interference or obstruction. The most that can be said is that some man-ner of solicitation at polling places on election day may be permitted. *Dorn v. Bd. of Trustees, 203 M 136, 661 P2d 426, 40 St. Rep. 348 (1983).*

*Administrative Rule Void When Contrary to Longstanding Administrative Interpretation:*  The Department of Revenue's longstanding administrative interpretation of the meaning of "on the same street" as used in *16-3-306* has the force and effect of law due to the repeated reenactment of that section by the Legislature without change in the opera-tive language that no license be issued to a business "on the same street" and within 600 feet of a church or school. Thus, the interpretation could not be changed, and an administrative rule making a change is invalid. *Hovey v. Dept. of Revenue, 203 M 27, 659 P2d 280, 40 St. Rep. 272 (1983).*

*Ordinary Rules of Grammar:*  Supreme Court is bound to follow common understanding and ordinary rules of grammar in interpreting statutes. *Missoula High School Legal Defense Ass'n v. Supt. of Pub. Instruction, 196 M 106, 637 P2d 1188, 38 St. Rep. 2164 (1981).*

*Single Word Not to Be Used to Find Intent:*  A statute's intent cannot be derived from the definition of one word; a statute derives its meaning from the entire body of words taken together. *Wyse v. District Court, 195 M 434, 636 P2d 865, 38 St. Rep. 2005 (1981).*

*Intention Shown by Plain Meaning -- Other Means of Interpretation Barred:*  Where the intention of the Legisla-ture can be determined from the plain meaning of words used in a statute, the courts may not go further and apply any other means of interpretation. *Tongue River Elec. Co-op, Inc. v. Mont. Power Co., 195 M 511, 636 P2d 862, 38 St. Rep. 2032 (1981).*

*Standard of Review:*  In cases involving application of a well-defined statutory term to a given set of facts, the is-sue for the reviewing court is whether the lower court's application is legally correct. The reviewing court is not re-quired to affirm simply because the lower court's application is not unreasonable. Therefore, in reviewing the Workers' Compensation Court's application of the definition of "temporary total disability" to its own findings of fact, the review-ing court determined whether the application was legally correct. *Anderson v. Home Indem. Co., 178 M 290, 583 P2d 440 (1978).*

Mont. Code Anno., § 1-2-106 (2006)

*Concerted Activities:*  After more than 40 years of construction by federal and state courts, "concerted activities" has acquired a peculiar and appropriate meaning in labor law which includes strikes. *Dept. of Highways v. Pub. Employees Craft Council, 165 M 349, 529 P2d 785 (1974).*

*Force of Ordinary Rules of Grammar:*  Since under this section statutes must be interpreted according to the ordinary rules of grammar, and if when thus regarded, the words embody a definite meaning involving no absurdity or contradiction, the court may not add to or take from their meaning. In construing *70-27-205* the words "of the damages thus assessed, and of the rent found due" obviously constitute two separate and coordinate prepositional phrases connected by the word "and", the antecedent of both phrases being the noun "amount", and the amount which must be trebled in the judgment includes rent as well as damages, the court having no discretion in the matter. *Steinbrenner v. Love, 113 M 466, 129 P2d 101 (1942).*

*"May" Construed:*  The word "may", unless it has acquired a special meaning in law, is to be given its ordinary meaning. *Lewis v. Petroleum Co., 92 M 563, 17 P2d 60 (1932),* followed in *Chouteau County v. Fort Benton, 181 M 123, 592 P2d 504 (1979),* and *Dover Ranch v. Yellowstone County, 187 M 276, 609 P2d 711 (1980).*

Where the word "may" is used in conferring power upon an officer, court, or tribunal, and the public or a third person has an interest in the exercise of the power, the exercise of the power sometimes becomes imperative. *Mont. Ore Purchasing Co. v. Lindsay, 25 M 24, 63 P 715 (1901),* followed in *State ex rel. Stiefel v. District Court, 54 M 602, 172 P 1030 (1918), State ex rel. Case v. Bolles, 74 M 54, 238 P 586 (1925), Durland v. Prickett, 98 M 399, 39 P2d 652 (1935), Colbert Drug Co. v. Elec. Products Consol., 106 M 11, 74 P2d 437 (1937), Thomas v. Cloyd, 110 M 343, 100 P2d 938 (1940), Hansen v. Havre, 112 M 207, 114 P2d 1053 (1941),* and *Bascom v. Carpenter, 126 M 129, 246 P2d 223 (1952).* See also *Lamb v. Missoula Imports, 230 M 183, 748 P2d 965 (1988),* and *St. v. Peplow, 2001 MT 253, 307 M 172, 36 P3d 922 (2001).*

*Words in Common Use:*  "Facility" is not a technical word but one in common use, and its meaning is to be found in the sense attached to it by approved usage. Money raised by a tax to furnish "additional school facilities" may be used to pay the salaries of teachers. *State ex rel. Knight v. Cave, 20 M 468, 52 P 200 (1898).*

"Width". *State ex rel. Keane v. Bd. of County Comm'rs, 83 M 540, 273 P 290 (1929).*

"Manufacture". *St. v. Hennessy Co., 71 M 301, 230 P 64 (1924).*

"Malt liquors". *St. v. Centennial Brewing Co., 55 M 500, 179 P 296 (1919).*

"Each party". *Mullery v. Great N. Ry., 50 M 408, 148 P 323 (1915).*

**NOTES:**

Attorney General's Opinions

*"May" Construed:*  The use of the term "may" in *2-2-132* (now repealed) to convey authority to the Secretary of State to issue ethics opinions and adopt rules with regard thereto falls under the rule that whenever the rights of the public are involved in the exercise of the authority, the word "may" is interpreted to mean "shall". *39 A.G. Op. 32 (1981).*

*Tort Claims Against State — Fee Regulation:*  This section requires an attorney representing a party to a tort claim against the state to file a copy of his contract of employment with the Department of Administration. The District Court of Lewis and Clark County has the power to regulate such fees in conjunction with claims which are not litigated. In the case of litigated claims, the District Court before which the case is tried has regulatory power. The method and extent of its regulation are matters for the court's discretion. *37 A.G. Op. 121 (1978).*

*Elements of DWI:*  In order to sustain a conviction for driving under the influence of alcohol, the state must prove actual physical control of a motor vehicle while under the influence of alcohol. This section does not require proof that a person is under the influence of alcohol to a degree which renders him incapable of safely driving a motor vehicle. *37 A.G. Op. 120 (1978).*

*Public Disclosure of Records:*  The Board of Real Estate when requested must disclose the status of any real estate licensee, whether any disciplinary action has been taken against that individual, and if so, the reason. Public access to information relating to complaints or to allegations and to other files on individual licensees is left to the discretion of

Mont. Code Anno., § 1-2-106 (2006)

the Board, within the guidelines of this opinion. All minutes except those minutes of a meeting closed by the presiding officer pursuant to *2-3-203* must be open to public inspection. *37 A.G. Op. 107 (1978).*

*"Immediate Family":* The Subdivision and Platting Act refers to but does not define "immediate family". Because of the use of "immediate" and the usual common meaning of "family", the term's meaning was intended to be quite restrictive, and it means one's spouse and one's children by blood or adoption. *35 A.G. Op. 70 (1974).*

*"Volume of Business":* A nontechnical term in a statute must be understood in its ordinary sense. If it has not acquired a peculiar meaning in the law, it must be taken in its ordinary sense with the meaning commonly given. "Volume of business", as used in *16-2-101* (prior to amendment in 1979) is the amount of money taken in the performance of the store's statutory functions. *29 A.G. Op. 18 (1961).*

*"District":* The word "district", as it appears in the herd district law, is used in its ordinary sense and is not specially defined. Nothing in the herd district law indicates it is used in a special sense. *28 A.G. Op. 21 (1959).*

Part Law Review Articles

Reconstructing the Plain Language Rule of Statutory Construction: How and Why, Goodman, *65 Mont. L. Rev. 229 (2004).*

Collateral References

Statutes [Key number] 188, 191, 192.

82 C.J.S. Statutes § § 329, 330.

*73 Am. Jur. 2d Statutes § § 113, 114.*

LexisNexis (R) Notes:

CASE NOTES

1. Defendant school board's closing a meeting to discuss the employment status of plaintiff, a non-tenured teacher and principal, did not fall within the collective bargaining exception, *Mont. Code Ann. § 2-3-203(3)*, of the Montana Open Meeting Law, as the term "collective bargaining" was construed by *Mont. Code Ann. § 1-2-106*, because plaintiff was dealing with defendant regarding his own future employment, and his actions were not taken on behalf of anyone else; thus, defendant's termination of plaintiff's employment was voided pursuant to *Mont. Code Ann. § 2-3-213* because plaintiff had a right to be present during defendant's deliberations under *Mont. Const. Art. II, § 9* and *Mont. Code Ann. § 2-3-203(1). Jarussi v. Bd. of Trs., 204 Mont. 131, 664 P.2d 316, 1983 Mont. LEXIS 715 (Mont. 1983).*

2. Pursuant to *Mont. Code Ann. § 1-2-106*, the words used in Montana statutes are to be construed according to the context in which they are found and according to their normal usage, unless they have acquired some peculiar or technical meaning; further, a tax deduction cannot be inferred or presumed, as a court is required to ascribe a plain meaning to the words of a statute pursuant to *Mont. Code Ann. § 1-2-101. Baitis v. Dep't of Revenue, 2004 MT 17, 319 Mont. 292, 83 P.3d 1278, 2004 Mont. LEXIS 17 (2004).*

3. In an eminent domain proceeding, when several statutory definitions of the word "farm" did not apply, the court had to construe the word according to its plain meaning. *Richter v. Rose, 1998 MT 165, 289 Mont. 379, 962 P.2d 583, 1998 Mont. LEXIS 147, 55 Mont. St. Rep. 663 (1998).*

4. Defendant school board's closing a meeting to discuss the employment status of plaintiff, a non-tenured teacher and principal, did not fall within the collective bargaining exception, *Mont. Code Ann. § 2-3-203(3)*, of the Montana Open Meeting Law, as the term "collective bargaining" was construed by *Mont. Code Ann. § 1-2-106*, because plaintiff was dealing with defendant regarding his own future employment, and his actions were not taken on behalf of anyone else; thus, defendant's termination of plaintiff's employment was voided pursuant to *Mont. Code Ann. § 2-3-213* because plaintiff had a right to be present during defendant's deliberations under *Mont. Const. Art. II, § 9* and *Mont. Code Ann. § 2-3-203(1)*. *Jarussi v. Bd. of Trs., 204 Mont. 131, 664 P.2d 316, 1983 Mont. LEXIS 715 (Mont. 1983)*.

5. Pursuant to *Mont. Code Ann. § 1-2-106*, the words used in Montana statutes are to be construed according to the context in which they are found and according to their normal usage, unless they have acquired some peculiar or technical meaning; further, a tax deduction cannot be inferred or presumed, as a court is required to ascribe a plain meaning to the words of a statute pursuant to *Mont. Code Ann. § 1-2-101*. *Baitis v. Dep't of Revenue, 2004 MT 17, 319 Mont. 292, 83 P.3d 1278, 2004 Mont. LEXIS 17 (2004)*.

6. In the construction of a statute, the intention of the legislature is to be pursued if possible, words and phrases are construed according to the context and approved usage of the language, and a construction to give effect to all words and phrases should be given if possible. In a pedestrian's action to recover damages for injuries sustained when he was struck by an automobile, the intention of the legislature was ascertained in determining whether a crosswalk existed where pedestrian was struck. *Hanson v. Edwards, 2000 MT 221, 301 Mont. 185, 7 P.3d 419, 2000 Mont. LEXIS 221, 57 Mont. St. Rep. 907 (2000)*.

7. Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law are to be construed according to such peculiar and appropriate meaning or definition, *Mont. Code Ann. § 1-2-106*. *Mont. Stockgrowers Ass'n v. Dep't of Revenue, 238 Mont. 113, 777 P.2d 285, 1989 Mont. LEXIS 170 (Mont. 1989)*.

8. Nonsupervisory teachers employed at a state juvenile correctional facility were state employees subject to the direction of the Departments of Administration and Institutions. As state employees they did not fall within the statutory definition of "teachers" under *Mont. Code Ann. § 20-1-101(20)* or *Mont. Code Ann. § 2-18-601(2)*. Hence, the court determined that they were entitled to leave benefits provided for other state employees under *Mont. Code Ann. § 2-18-601*. *Mt. View Educ. Ass'n v. Mt. View Sch., 227 Mont. 288, 738 P.2d 1288, 1987 Mont. LEXIS 913 (Mont. 1987)*.

9. In an action brought by plaintiff worker to recover damages for injuries he received in a fall from a ladder while working at a construction site, pursuant to *Mont. Code Ann. § 1-2-102* and *Mont. Code Ann. § 1-2-106*, breach of contractual obligations to provide scaffolding invoked the Scaffolding Act (Act) to the same extent that providing deficient scaffolding would have invoked the Act. *Mydlarz v. Palmer/Duncan Constr. Co., 209 Mont. 325, 682 P.2d 695, 1984 Mont. LEXIS 890 (Mont. 1984)*.

10. Defendant school board's closing a meeting to discuss the employment status of plaintiff, a non-tenured teacher and principal, did not fall within the collective bargaining exception, *Mont. Code Ann. § 2-3-203(3)*, of the Montana Open Meeting Law, as the term "collective bargaining" was construed by *Mont. Code Ann. § 1-2-106*, because plaintiff was dealing with defendant regarding his own future employment, and his actions were not taken on behalf of anyone else; thus, defendant's termination of plaintiff's employment was voided pursuant to *Mont. Code Ann. § 2-3-213* because plaintiff had a right to be present during defendant's deliberations under *Mont. Const. Art. II, § 9* and *Mont. Code Ann. § 2-3-203(1)*. *Jarussi v. Bd. of Trs., 204 Mont. 131, 664 P.2d 316, 1983 Mont. LEXIS 715 (Mont. 1983)*.

11. Nonsupervisory teachers employed at a state juvenile correctional facility were state employees subject to the direction of the Departments of Administration and Institutions. As state employees they did not fall within the statutory definition of "teachers" under *Mont. Code Ann. § 20-1-101(20)* or *Mont. Code Ann. § 2-18-601(2)*. Hence, the court

Mont. Code Anno., § 1-2-106 (2006)

determined that they were entitled to leave benefits provided for other state employees under *Mont. Code Ann. § 2-18-601. Mt. View Educ. Ass'n v. Mt. View Sch., 227 Mont. 288, 738 P.2d 1288, 1987 Mont. LEXIS 913 (Mont. 1987).*

12. In an action brought by plaintiff worker to recover damages for injuries he received in a fall from a ladder while working at a construction site, pursuant to *Mont. Code Ann. § 1-2-102* and *Mont. Code Ann. § 1-2-106*, breach of contractual obligations to provide scaffolding invoked the Scaffolding Act (Act) to the same extent that providing deficient scaffolding would have invoked the Act. *Mydlarz v. Palmer/Duncan Constr. Co., 209 Mont. 325, 682 P.2d 695, 1984 Mont. LEXIS 890 (Mont. 1984).*

13. In an eminent domain proceeding, when several statutory definitions of the word "farm" did not apply, the court had to construe the word according to its plain meaning. *Richter v. Rose, 1998 MT 165, 289 Mont. 379, 962 P.2d 583, 1998 Mont. LEXIS 147, 55 Mont. St. Rep. 663 (1998).*

14. Pursuant to *Mont. Code Ann. § 1-2-106*, the words used in Montana statutes are to be construed according to the context in which they are found and according to their normal usage, unless they have acquired some peculiar or technical meaning; further, a tax deduction cannot be inferred or presumed, as a court is required to ascribe a plain meaning to the words of a statute pursuant to *Mont. Code Ann. § 1-2-101. Baitis v. Dep't of Revenue, 2004 MT 17, 319 Mont. 292, 83 P.3d 1278, 2004 Mont. LEXIS 17 (2004).*

15. In the construction of a statute, the intention of the legislature is to be pursued if possible, words and phrases are construed according to the context and approved usage of the language, and a construction to give effect to all words and phrases should be given if possible. In a pedestrian's action to recover damages for injuries sustained when he was struck by an automobile, the intention of the legislature was ascertained in determining whether a crosswalk existed where pedestrian was struck. *Hanson v. Edwards, 2000 MT 221, 301 Mont. 185, 7 P.3d 419, 2000 Mont. LEXIS 221, 57 Mont. St. Rep. 907 (2000).*

OPINIONS OF ATTORNEY GENERAL

1. Administrative Procedure -- Administrative Procedure Act meets existing due process standards; Cities And Towns -- A city has the power to regulate garbage and refuse collection; Cities And Towns -- Power to levy special tax for garbage collection services; Cities And Towns -- Local open burning policies are subordinate to Department of Health and Environmental Sciences Rules; Constitutional Law -- Due Process and Equal Protection requirements met by open burning restrictions; Department Of Health And Environmental Sciences -- Power to regulate open burning and pollution by adopting rules superior to local policies; Sanitation -- Garbage collection, open burning; Taxation -- Garbage collection is a tax supported service; Taxation -- Cities power to levy special tax for garbage collection., OPINION No. 30, *1979 Mont. AG LEXIS 30; 38 Op. Atty Gen. Mont. 102.*

2. *Montana Code Annotated -- Sections 7-6-4406*, 7-14-7105(2), *7-14-4106(1)*, *75-2-111*, *75-2-301*. HELD: 1. The tax-supported garbage hauling service provided by the City of Kalispell comes within the jurisdictional scope of Arm 16-2.14(1)-S1490(1)(d)., OPINION No. 30, *1979 Mont. AG LEXIS 30; 38 Op. Atty Gen. Mont. 102.*

3. The entire area covered by a private garbage hauler or the tax supported service is within the prohibited area for open burning., OPINION No. 30, *1979 Mont. AG LEXIS 30; 38 Op. Atty Gen. Mont. 102.*

Mont. Code Anno., § 1-2-106 (2006)

4. Arm 16-2.14(1)-S1490(d) violates no constitutional standards of due process or equal protection., OPINION No. 30, *1979 Mont. AG LEXIS 30; 38 Op. Atty Gen. Mont. 102.*

5. Corporations -- Eligibility of Subchapter S shareholder for tuition offset; Parent -- Eligibility of Subchapter S shareholder for tuition offset; Shareholder -- Eligibility of Subchapter S shareholder for tuition offset; Tuition Offset -- Eligibility of Subchapter S shareholder for; *Montana Code Annotated -- Sections 1-2-106, 20-5-303, 20-5-305, 35-1-510(1), 40-6-102, 41-5-103(9).* HELD: A shareholder in a closed, or family, type Subchapter S corporation is not eligible to claim tuition offset under *section 20-5-303, MCA*, when the corporation is the taxpayer responsible for the district and county property taxes referred to in that section., OPINION No. 42, *1984 Mont. AG LEXIS 41; 40 Op. Atty Gen. Mont. No. 42.*

6. Cities And Towns -- Streets and alleys, definition of "discontinue"; Counties -- County roads, streets and alleys, definition of "discontinue"; Highways -- Local roads, streets and alleys, definition of "discontinue"; *Montana Code Annotated -- Sections 1-2-106, 7-3-4447, 7-3-4448, 7-14-104, 7-14-2601, 7-14-2602, 7-14-2615, 7-14-2616, 7-14-2617, 7-14-4114, 7-14-4115, 60-1-103(1)*; Revised Codes Of Montana, 1947 -- Section 11-2801. HELD: The term "discontinue" as utilized in *Title 7, chapter 14, parts 26* and 41, Mca, is synonymous with the terms "abandon" and "vacate.", OPINION No. 23, *1983 Mont. AG LEXIS 7; 40 Op. Atty Gen. Mont. No. 23.*

7. Cities And Towns -- Authority of self-governing local government to acquire and operate electric and natural gas utilities;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

8. City Government -- Authority of self-governing local government to acquire and operate electric and natural gas utilities;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

9. County Government -- Authority of self-governing local government to acquire and operate electric and natural gas utilities;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

10. Local Government -- Authority of self-governing local government to acquire and operate electric and natural gas utilities;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

11. Municipal Government -- Authority of self-governing local government to acquire and operate electric and natural gas utilities;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

12. Public Service Commission -- Authority of self-governing local government to acquire and operate electric and natural gas utilities;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

13. *Montana Code Annotated -- Sections 1-2-106, 7-1-101* to *-114, 7-1-4121(9), 7-2-4704(2), 7-3-302, -1103(1), -1104, -4313, 7-5-201(1), 7-6-4202(4), 7-15-4206(8), -4283(8), 69-2-101, 69-3-101, -102, 69-7-101* to *-201*;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

14. Montana Constitution -- Article XI, sections 4 to 6;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

15. Montana Laws Of 1981 -- Chapter 607;, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

16. Opinions Of The Attorney General -- *46 Op. Att'y Gen. No. 13 (1996), 46 Op. Att'y Gen. No. 12 (1995), 44 Op. Att'y Gen. No. 34 (1992), 37 Op. Att'y Gen. No. 68 (1977).*, OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

17. HELD: The City and County of Butte-Silver Bow, a consolidated government with self-government powers, has the authority to acquire and operate electric and natural gas utilities within and outside the boundaries of the local government unit., OPINION No. 14, *2000 Mont. AG LEXIS 7; 48 Op. Atty Gen. Mont. No. 14.*

18. Cities And Towns -- Authority of self-governing city to establish tiered resort tax schedule;, OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

19. Local Government -- Authority of self-governing city to establish tiered resort tax schedule;, OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

20. Municipal Corporations -- Authority of self-governing city to establish tiered resort tax schedule;, OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

21. Public Funds -- Authority of self-governing city to establish tiered resort tax schedule;, OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

22. *Montana Code Annotated -- Sections 7-1-101, -106, -112, 7-6-1501* to *-1509, 15-10-420*;, OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

23. Montana Constitution -- Article XI, section 6;, OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

24. Montana Laws Of 1985 -- Chapter 729;, OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

25. Opinions Of The Attorney General -- *44 Op. Att'y Gen. No. 5 (1991), 41 Op. Att'y Gen. No. 75 (1986).,* OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

26. HELD: A municipality with self-governing powers may, under *Mont. Code Ann. § § 7-6-1501* to *-1509*, establish a tiered resort tax schedule providing different tax rates, none of which exceed 3 percent, for similar goods or services according to the character of the business in which the goods or services are sold or offered., OPINION No. 25, *2000 Mont. AG LEXIS 15; 48 Op. Atty Gen. Mont. No. 25.*

LAW REVIEWS

1. *63 Mont. L. Rev. 1,* ESSAY: "NO ARMED BODIES OF MEN" -- MONTANANS' FORGOTTEN CONSTITU-TIONAL RIGHT (With Some Passing Notes on Recent Environmental Rights Cases).

1 of 1 DOCUMENT

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 16, 2006 ***

TITLE 30  TRADE AND COMMERCE
CHAPTER 14  UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
PART 1  CONSUMER PROTECTION ACT

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 30-14-101 (2006)*

30-14-101  Short title.

This part shall be cited as the "Montana Unfair Trade Practices and Consumer Protection Act of 1973".

**HISTORY:**

En. Sec. 19, Ch. 275, L. 1973; R.C.M. 1947, 85-418.

**NOTES:**

Chapter Cross-References

Protection of consumers from unfair practices of corporations, *Art. XIII, sec. 1, Mont. Const.*

Plain Language in Contracts Act, Title 30, ch. 14, part 11.

New motor vehicle warranties -- remedies, Title 61, ch. 4, part 5.

Part Cross-References

Consumer Counsel, *Art. XIII, sec. 2, Mont. Const.*

Policy of Montana Alcoholic Beverage Code, *16-1-101.*

Policy of The Montana Cigarette Sales Act, *16-10-102.*

Violation of consumer reporting agencies' law as violation of part, *31-3-153.*

Montana Consumer Product Safety Act of 1975, Title 50, ch. 30.

Chapter Compiler's Comments

*Similarity to Uniform Law:*  This chapter is substantially similar to the Uniform Unfair Trade Practices and Consumer Protection Law, which may be found in 29 Suggested State Legislation 141 (1972).

Part Compiler's Comments

*Severability Clause:*  Section 18, Ch. 275, L. 1973, read: "If any provision of this act is declared unconstitutional, or the application to any person or circumstances is held invalid, the constitutionality of the remainder of the act and its applicability to other persons and circumstances is not affected."

Mont. Code Anno., § 30-14-101 (2006)

Chapter Case Notes

*Claims Under Unfair Trade Practices Act Subject to Statute of Limitations on Actions for Constructive Fraud:* As a liability created by statute that is neither a penalty nor a statutory debt, claims brought under the Montana Unfair Trade Practices and Consumer Protection Act of 1973 are subject to the 2-year statute of limitations in *27-2-211*. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003),* following *Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 M 508, 11 P3d 105 (2000).*

*Exercise of Ordinary Diligence Required in Discovery of Unfair Trade Practices Constituting Fraud for Tolling Statute of Limitations:* For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, ordinary diligence must be exercised by the aggrieved party in discovery of the facts constituting the fraud or deceptive practice. Pursuant to *Johnson v. Barrett, 1999 MT 176, 295 M 254, 983 P2d 925 (1999),* the test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to the plaintiff's investigation. Mere ignorance of the facts will not suffice to toll the statute of limitations. In this case, plaintiff filed an unfair trade practices complaint about 2 years and 9 months after entering an agreement with defendant siding installer, believing at the time that the contract was with the defendant company that manufactured the siding. However, plaintiff showed no affirmative conduct by either defendant that was calculated to obscure the existence of a cause of action, nor were the facts giving rise to the alleged fraud concealed. Thus, plaintiff discovered or should have discovered the facts constituting the alleged fraud when the contract was entered more than 2 years prior to filing suit, so the claim was barred by the 2-year statute of limitations in *27-2-211*. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003).*

*Provisions of Act Not Applicable -- Attorney Fees Proper:* The District Court found that the provisions of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 were inapplicable to the subject of this case but that pursuant to the Act the defendant, as prevailing party, was entitled to reasonable attorney fees under *30-14-133*. Appellant contended that since the Act did not apply, award of attorney fees was not appropriate. The Supreme Court affirmed the award, noting that defendant prevailed on the main issue in controversy and that since the action was brought under the Act, reasonable attorney fees were proper. *Dillree v. Devoe, 223 M 47, 724 P2d 171, 43 St. Rep. 1521 (1986).*

*Applicability of Chapter Where No Fraud, Duress, or Undue Influence Present:* Attorney, minutes before he was to defend client on criminal charges, threatened to withdraw as counsel unless client executed security agreement and quitclaim deed as security for attorney's fee. Attorney had given the instruments to client weeks before trial, but client had failed to execute them. No fraud, duress, or undue influence was found. Under these facts, this chapter has no application. *Matthews v. Berryman, 196 M 49, 637 P2d 822, 38 St. Rep. 2112 (1981).*

Part Case Notes

*Negligence Compared With Violation of Consumer Protection Act:* The jury found the defendant violated the Consumer Protection Act and was negligent. The trial court applied the comparative negligence statute to reduce the plaintiffs' recovery under the Act. On appeal, the Supreme Court affirmed the reduction of damages, stating that the law as stated in the jury instructions does not allow the separation of the defendant's actions in violation of the Consumer Protection Act from its actions that were negligent. *Evans v. Teakettle Realty, 226 M 363, 736 P2d 472, 44 St. Rep. 723 (1987).*

*Public Service Commission Exempt From Consumer Protection Act:* The plain meaning of *30-14-105* is that actions and transactions of the Public Service Commission, acting under its statutory authority, are exempt from the *Consumer Protection Act. Rozel Corp. v. Dept. of Public Service Regulation, 226 M 237, 735 P2d 282, 44 St. Rep. 618 (1987).*

*No Individual Cause of Action Concerning Goods Purchased for Business Rather Than for Personal, Family, or Household Purposes:* When uncontradicted testimony established that a machine had been purchased for use in respondents' business, respondents did not fall within the class of persons who may bring a private action under *30-14-133. Doll v. Major Muffler Centers, Inc., 208 M 401, 687 P2d 48, 41 St. Rep. 429 (1984).*

**NOTES:**

Part Law Review Articles

Mont. Code Anno., § 30-14-101 (2006)

### MONTANA ARTICLES

Recent Consumer Protection Developments in Montana, Swartley, *37 Mont. L. Rev. 371 (1976).*

The Supreme Court's Changing Attitude Toward Consumer Protection and Its Impact on Montana Prejudgment Remedies, McDermott, *36 Mont. L. Rev. 165 (1975).*

The Supreme Court's Still Changing Attitude Toward Consumer Protection and Its Impact on the Integrity of the Court, McDermott, *37 Mont. L. Rev. 27 (1976).*

### ARTICLES FROM OTHER STATES

Case Law Under the Texas Deceptive Practices--Consumer Protection Act, *33 Baylor L. Rev. 533 (1981).*

Consumer Action Against Unfair or Deceptive Acts or Practices: The Private Use of FTC Jurisprudence, Leuffer & Lipson, 48 George Washington L. Rev. 521 (1980).

Consumer Protection: The Caveat Emptor's New Clothes?, Maher, 59 Law Inst. J. 178 (1985).

Deceptive Trade Practice--Consumer Protection Acts and Their Effect on Product Liability Litigation, Buswell, Stagg, & Myers, *15 Forum 716 (1980).*

Innovative Use of the Deceptive Trade Practices Act, Alderman, *18 Tex. Tech L. Rev. 45 (1987).*

Re-examining New Jersey's Consumer Fraud Act: Loopholes for Professionals?, *7 Seton Hall Legis. J. 45 (1983).*

Symposium: The Developing Law of Consumer Protection, *10 Gonz. L. Rev. 319 (1975).*

The Consumer Protection Act Private Right of Action: A Reevaluation, Rowland, *19 Gonz. L. Rev. 673 (1983).*

The Seller's Duty to Disclose Under Consumer Protection Statutes: Defining the Standard of Care, *17 Suffolk U.L. Rev. 721 (1983).*

Chapter Collateral References

Uniform State Antitrust Act, National Conference of Commissioners on Uniform State Laws (1979).

Uniform Trade Secrets Act, National Conference of Commissioners on Uniform State Laws (1979).

When Statute of Limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

Finance company's liability in connection with consumer fraud practice of party selling goods or services. *18 ALR 4th 824.*

Part Collateral References

Uniform Consumer Credit Code (1974), 7 U.L.A. 601.

Uniform Consumer Credit Code (1968), 7 U.L.A. 233.

Uniform Consumer Sales Practices Act (1970), (1971), 7A U.L.A. 3.

Uniform Deceptive Trade Practices Act (1966), 7A U.L.A. 35.

Uniform Deceptive Trade Practices Act (1964), 7A U.L.A. 65.

What goods or property are "used," "second hand," or the like, for purposes of state consumer laws prohibiting claims that such items are new. *59 ALR 4th 1192.*

Award of attorneys' fees in actions under state deceptive trade practice and consumer protection acts. *35 ALR 4th 12.*

Mont. Code Anno., § 30-14-101 (2006)

When statute of limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

Practices forbidden by state deceptive trade practice and consumer protection acts. *89 ALR 3d 449.*

Right to private action under state consumer protection act. *62 ALR 3d 169.*

LexisNexis (R) Notes:


CASE NOTES




1. Damages for a realty company's violation of the Montana Consumer Protection Act, *Mont. Code Ann. § 30-14-101* et seq., were properly reduced under the Montana Comparative Negligence Statute, *Mont. Code Ann. § 27-1-702* because the realty company had been negligent and because two home buyers had been negligent as well. *Evans v. Teakettle Realty, 226 Mont. 363, 736 P.2d 472, 1987 Mont. LEXIS 872 (Mont. 1987).*


2. Judgment against a lessor was improper because the rental equipment at issue was leased for business use, so that the lessees did not have a cause of action under the state Unfair Trade Practices and Consumer Protection Act, *Mont. Code Ann. § 30-14-101* et seq. *Doll v. Major Muffler Ctrs., 208 Mont. 401, 687 P.2d 48, 1984 Mont. LEXIS 912 (Mont. 1984).*


3. Substantial evidence supported the trial court's findings, including that (1) the landlords breached their duty to provide fit and habitable housing, as the Montana Residential Landlord and Tenant Act, *Mont. Code Ann. § § 70-24-101* through *70-24-442*, required, (2) breached their agreement to provide housing for one year and failed to perform their duties in good faith under the Act, (3) wrongfully withheld a portion of the tenants' security deposit, and (4) violated the Consumer Protection Act, *Mont. Code Ann. § § 30-14-101* through *30-14-143*. *Thueson v. Swinger, 2006 Mont. LEXIS 473* (Oct. 3, 2006).


4. Claims brought under the Montana Unfair Trade Practices Act, § *30-14-101* et seq., are subject to the two-year time limitation set forth in *Mont. Code Ann. § 27-2-211*; therefore, summary judgment was properly granted on a purchaser's claim for unfair trade practices against a seller and an independent contractor, and the time period was not tolled because the evidence showed that the purchaser was aware of the relationship between the seller and the independent contractor at the time that a check was written to pay for the services rendered. *Osterman v. Sears, 2003 MT 327, 318 Mont. 342, 80 P.3d 435, 2003 Mont. LEXIS 791 (2003).*


5. Claims brought under the Montana Unfair Trade Practices Act, § *30-14-101* et seq., are subject to the two-year time limitation set forth in *Mont. Code Ann. § 27-2-211*; therefore, summary judgment was properly granted on a purchaser's claim for unfair trade practices against a seller and an independent contractor, and the time period was not tolled because the evidence showed that the purchaser was aware of the relationship between the seller and the independent contractor at the time that a check was written to pay for the services rendered. *Osterman v. Sears, 2003 MT 327, 318 Mont. 342, 80 P.3d 435, 2003 Mont. LEXIS 791 (2003).*

Mont. Code Anno., § 30-14-101 (2006)

6. Damages for a realty company's violation of the Montana Consumer Protection Act, *Mont. Code Ann. § 30-14-101* et seq., were properly reduced under the Montana Comparative Negligence Statute, *Mont. Code Ann. § 27-1-702* because the realty company had been negligent and because two home buyers had been negligent as well. *Evans v. Teakettle Realty, 226 Mont. 363, 736 P.2d 472, 1987 Mont. LEXIS 872 (Mont. 1987).*

7. Claims brought under the Montana Unfair Trade Practices Act, § *30-14-101* et seq., are subject to the two-year time limitation set forth in *Mont. Code Ann. § 27-2-211*; therefore, summary judgment was properly granted on a purchaser's claim for unfair trade practices against a seller and an independent contractor, and the time period was not tolled because the evidence showed that the purchaser was aware of the relationship between the seller and the independent contractor at the time that a check was written to pay for the services rendered. *Osterman v. Sears, 2003 MT 327, 318 Mont. 342, 80 P.3d 435, 2003 Mont. LEXIS 791 (2003).*

1 of 1 DOCUMENT

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 16, 2006 ***

TITLE 30  TRADE AND COMMERCE
CHAPTER 14  UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
PART 1  CONSUMER PROTECTION ACT

### GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION

*Mont. Code Anno., § 30-14-102 (2006)*

30-14-102  Definitions.

As used in this part, the following definitions apply:

(1) "Consumer" means a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes.

(2) "Department" means the department of justice created in *2-15-2001*.

(3) "Documentary material" means the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording.

(4) "Examination" of documentary material includes the inspection, study, or copying of documentary material and the taking of testimony under oath or acknowledgment in respect to any documentary material or copy of documentary material.

(5) (a)  "Gift certificate" means a record, including a gift card, that is provided for paid consideration and that indicates a promise by the issuer or seller of the record that goods or services will be provided to the possessor of the record for the value that is shown on the record or contained within the record by means of a microprocessor chip, magnetic stripe, bar code, or other electronic information storage device. The consideration provided for the gift certificate must be made in advance. The value of the gift certificate is reduced by the amount spent with each use. A gift certificate is considered trust property of the possessor if the issuer or seller of the gift certificate declares bankruptcy after issuing or selling the gift certificate. The value represented by the gift certificate belongs to the possessor, to the extent provided by law, and not to the issuer or seller.

(b) The term does not mean:

(i) prepaid telecommunications and technology cards, including but not limited to prepaid telephone calling cards, prepaid technical support cards, and prepaid internet disks that have been distributed to or purchased by a consumer;

(ii) a coupon provided to a consumer pursuant to any award, loyalty, or promotion program without any money or consideration being given in exchange for the card; or

(iii) a gift certificate usable with multiple sellers of goods or services.

(6) "Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.

(7) "Possessor" means a natural person who has physical control over a gift certificate.

(8) "Trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services, any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value, wherever located, and includes any trade or commerce directly or indirectly affecting the people of this state.

Case 1:01-cv-12257-PBS   Document 3735-9   Filed 02/08/07   Page 22 of 48

Page 2
Mont. Code Anno., § 30-14-102 (2006)

**HISTORY:**

En. Sec. 1, Ch. 275, L. 1973; R.C.M. 1947, 85-401; amd. Sec. 2, Ch. 274, L. 1981; amd. Sec. 66, Ch. 483, L. 2001; amd. Sec. 1, Ch. 322, L. 2003; amd. Sec. 1, Ch. 280, L. 2005; amd. Sec. 2, Ch. 291, L. 2005.

**NOTES:**

Chapter Cross-References

Protection of consumers from unfair practices of corporations, *Art. XIII, sec. 1, Mont. Const.*

Plain Language in Contracts Act, Title 30, ch. 14, part 11.

New motor vehicle warranties -- remedies, Title 61, ch. 4, part 5.

Part Cross-References

Consumer Counsel, *Art. XIII, sec. 2, Mont. Const.*

Policy of Montana Alcoholic Beverage Code, *16-1-101.*

Policy of The Montana Cigarette Sales Act, *16-10-102.*

Violation of consumer reporting agencies' law as violation of part, *31-3-153.*

Montana Consumer Product Safety Act of 1975, Title 50, ch. 30.

Chapter Compiler's Comments

*Similarity to Uniform Law:*  This chapter is substantially similar to the Uniform Unfair Trade Practices and Consumer Protection Law, which may be found in 29 Suggested State Legislation 141 (1972).

Part Compiler's Comments

*Severability Clause:*  Section 18, Ch. 275, L. 1973, read: "If any provision of this act is declared unconstitutional, or the application to any person or circumstances is held invalid, the constitutionality of the remainder of the act and its applicability to other persons and circumstances is not affected."

Compiler's Comments

*2005 Amendments -- Composite Section:*  Chapter 280 in definition of department substituted "department of justice" for "department of administration" and substituted "*2-15-2001*" for "*2-15-1001*". Amendment effective July 1, 2005.

Chapter 291 inserted definitions of gift certificate and possessor; and made minor changes in style. Amendment effective October 1, 2005.

*Saving Clause:*  Section 4, Ch. 291, L. 2005, was a saving clause.

*2003 Amendment:*  Chapter 322 inserted definition of consumer; deleted definition of national advertising that read: ""National advertising" means any advertising run simultaneously in five or more states and over which a local advertiser has no control"; and made minor changes in style. Amendment effective April 15, 2003.

*2001 Amendment:*  Chapter 483 in definition of department substituted reference to department of administration for reference to department of commerce and substituted "*2-15-1001*" for "*2-15-1801*"; and made minor changes in style. Amendment effective July 1, 2001.

*1981 Amendment:*  Substituted "department of commerce" for "department of business regulation" in (1).

Chapter Case Notes

Case 1:01-cv-12257-PBS   Document 3735-9   Filed 02/08/07   Page 23 of 48

Page 3
Mont. Code Anno., § 30-14-102 (2006)

*Claims Under Unfair Trade Practices Act Subject to Statute of Limitations on Actions for Constructive Fraud:*  As a liability created by statute that is neither a penalty nor a statutory debt, claims brought under the Montana Unfair Trade Practices and Consumer Protection Act of 1973 are subject to the 2-year statute of limitations in *27-2-211*. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003),* following *Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 M 508, 11 P3d 105 (2000).*

*Exercise of Ordinary Diligence Required in Discovery of Unfair Trade Practices Constituting Fraud for Tolling Statute of Limitations:*  For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, ordinary diligence must be exercised by the aggrieved party in discovery of the facts constituting the fraud or deceptive practice. Pursuant to *Johnson v. Barrett, 1999 MT 176, 295 M 254, 983 P2d 925 (1999),* the test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to the plaintiff's investigation. Mere ignorance of the facts will not suffice to toll the statute of limitations. In this case, plaintiff filed an unfair trade practices complaint about 2 years and 9 months after entering an agreement with defendant siding installer, believing at the time that the contract was with the defendant company that manufactured the siding. However, plaintiff showed no affirmative conduct by either defendant that was calculated to obscure the existence of a cause of action, nor were the facts giving rise to the alleged fraud concealed. Thus, plaintiff discovered or should have discovered the facts constituting the alleged fraud when the contract was entered more than 2 years prior to filing suit, so the claim was barred by the 2-year statute of limitations in *27-2-211*. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003).*

*Provisions of Act Not Applicable -- Attorney Fees Proper:*  The District Court found that the provisions of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 were inapplicable to the subject of this case but that pursuant to the Act the defendant, as prevailing party, was entitled to reasonable attorney fees under *30-14-133*. Appellant contended that since the Act did not apply, award of attorney fees was not appropriate. The Supreme Court affirmed the award, noting that defendant prevailed on the main issue in controversy and that since the action was brought under the Act, reasonable attorney fees were proper. *Dillree v. Devoe, 223 M 47, 724 P2d 171, 43 St. Rep. 1521 (1986).*

*Applicability of Chapter Where No Fraud, Duress, or Undue Influence Present:*  Attorney, minutes before he was to defend client on criminal charges, threatened to withdraw as counsel unless client executed security agreement and quitclaim deed as security for attorney's fee. Attorney had given the instruments to client weeks before trial, but client had failed to execute them. No fraud, duress, or undue influence was found. Under these facts, this chapter has no application. *Matthews v. Berryman, 196 M 49, 637 P2d 822, 38 St. Rep. 2112 (1981).*

Part Case Notes

*Negligence Compared With Violation of Consumer Protection Act:*  The jury found the defendant violated the Consumer Protection Act and was negligent. The trial court applied the comparative negligence statute to reduce the plaintiffs' recovery under the Act. On appeal, the Supreme Court affirmed the reduction of damages, stating that the law as stated in the jury instructions does not allow the separation of the defendant's actions in violation of the Consumer Protection Act from its actions that were negligent. *Evans v. Teakettle Realty, 226 M 363, 736 P2d 472, 44 St. Rep. 723 (1987).*

*Public Service Commission Exempt From Consumer Protection Act:*  The plain meaning of *30-14-105* is that actions and transactions of the Public Service Commission, acting under its statutory authority, are exempt from the *Consumer Protection Act. Rozel Corp. v. Dept. of Public Service Regulation, 226 M 237, 735 P2d 282, 44 St. Rep. 618 (1987).*

*No Individual Cause of Action Concerning Goods Purchased for Business Rather Than for Personal, Family, or Household Purposes:*  When uncontradicted testimony established that a machine had been purchased for use in respondents' business, respondents did not fall within the class of persons who may bring a private action under *30-14-133. Doll v. Major Muffler Centers, Inc., 208 M 401, 687 P2d 48, 41 St. Rep. 429 (1984).*

Case Notes

*Jury Instruction Regarding Contractor's Involvement in Trade or Commerce -- Waiver of Defense by Failure to Include in Final Pretrial Order:*  Defendant objected to a jury instruction stating defendant's involvement in trade or commerce, contending that that determination and the applicability of the Consumer Protection Act to his business were questions of fact for the jury. However, the final pretrial order did not contain any factual issue, legal theory, or defense

that defendant was contesting the applicability of the Montana Unfair Trade practices and Consumer Protection Act of 1973 to his business, so that theory or defense was waived as an issue to be determined by the trier of fact at trial. The Supreme Court found that the agreed facts in the pretrial order supported a determination that defendant was in fact engaged in trade or commerce, as defined in this section, so giving of a jury instruction to that effect was not in error. *Plath v. Schonrock, 2003 MT 21, 314 M 101, 64 P3d 984 (2003).*

*Consumer Loan by Bank Covered by Act:*   Because the Montana Unfair Trade Practices and Consumer Protection Act of 1973 is in derogation of the common law, it should be liberally construed with a view to effect its object and to promote justice. The approach to defining what is meant by the word "services" should be broad in scope. The Act applies to a consumer loan by a bank. *Baird v. Norwest Bank, 255 M 317, 843 P2d 327, 49 St. Rep. 1026 (1992).*

**NOTES:**

Part Law Review Articles

### MONTANA ARTICLES

Recent Consumer Protection Developments in Montana, Swartley, *37 Mont. L. Rev. 371 (1976).*

The Supreme Court's Changing Attitude Toward Consumer Protection and Its Impact on Montana Prejudgment Remedies, McDermott, *36 Mont. L. Rev. 165 (1975).*

The Supreme Court's Still Changing Attitude Toward Consumer Protection and Its Impact on the Integrity of the Court, McDermott, *37 Mont. L. Rev. 27 (1976).*

### ARTICLES FROM OTHER STATES

Case Law Under the Texas Deceptive Practices--Consumer Protection Act, *33 Baylor L. Rev. 533 (1981).*

Consumer Action Against Unfair or Deceptive Acts or Practices: The Private Use of FTC Jurisprudence, Leuffer & Lipson, 48 George Washington L. Rev. 521 (1980).

Consumer Protection: The Caveat Emptor's New Clothes?, Maher, 59 Law Inst. J. 178 (1985).

Deceptive Trade Practice--Consumer Protection Acts and Their Effect on Product Liability Litigation, Buswell, Stagg, & Myers, *15 Forum 716 (1980).*

Innovative Use of the Deceptive Trade Practices Act, Alderman, *18 Tex. Tech L. Rev. 45 (1987).*

Re-examining New Jersey's Consumer Fraud Act: Loopholes for Professionals?, *7 Seton Hall Legis. J. 45 (1983).*

Symposium: The Developing Law of Consumer Protection, *10 Gonz. L. Rev. 319 (1975).*

The Consumer Protection Act Private Right of Action: A Reevaluation, Rowland, *19 Gonz. L. Rev. 673 (1983).*

The Seller's Duty to Disclose Under Consumer Protection Statutes: Defining the Standard of Care, *17 Suffolk U.L. Rev. 721 (1983).*

Chapter Collateral References

Uniform State Antitrust Act, National Conference of Commissioners on Uniform State Laws (1979).

Uniform Trade Secrets Act, National Conference of Commissioners on Uniform State Laws (1979).

When Statute of Limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

Finance company's liability in connection with consumer fraud practice of party selling goods or services. *18 ALR 4th 824.*

Part Collateral References

　　Uniform Consumer Credit Code (1974), 7 U.L.A. 601.

　　Uniform Consumer Credit Code (1968), 7 U.L.A. 233.

　　Uniform Consumer Sales Practices Act (1970), (1971), 7A U.L.A. 3.

　　Uniform Deceptive Trade Practices Act (1966), 7A U.L.A. 35.

　　Uniform Deceptive Trade Practices Act (1964), 7A U.L.A. 65.

　　What goods or property are "used," "second hand," or the like, for purposes of state consumer laws prohibiting claims that such items are new. *59 ALR 4th 1192.*

　　Award of attorneys' fees in actions under state deceptive trade practice and consumer protection acts. *35 ALR 4th 12.*

　　When statute of limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

　　Practices forbidden by state deceptive trade practice and consumer protection acts. *89 ALR 3d 449.*

　　Right to private action under state consumer protection act. *62 ALR 3d 169.*

Collateral References

　　Who is a "consumer" entitled to protection of state deceptive trade practice and consumer protection acts. *63 ALR 5th 1.*

LexisNexis (R) Notes:

CASE NOTES

1. "Trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state. *Baird v. Norwest Bank, 255 Mont. 317, 843 P.2d 327, 1992 Mont. LEXIS 316, 49 Mont. St. Rep. 1026 (Mont. 1992).*

2. "Trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state. *Baird v. Norwest Bank, 255 Mont. 317, 843 P.2d 327, 1992 Mont. LEXIS 316, 49 Mont. St. Rep. 1026 (Mont. 1992).*

3. Builder was a resident of Montana doing business under a company name and the builder entered into a contract with the homeowners for the construction of a new home; thus, the district court did not err when it instructed the jury that the builder was involved in a trade or commerce, pursuant to *Mont. Code Ann. § 30-14-102(6)* of Montana's Consumer Protection Act, *Mont. Code Ann. § 30-14-101* et seq., in the builder's dealings with the homeowners. *Plath v. Schonrock, 2003 MT 21, 314 Mont. 101, 64 P.3d 984, 2003 Mont. LEXIS 19 (2003).*

Mont. Code Anno., § 30-14-102 (2006)

LAW REVIEWS

1. *66 Mont. L. Rev. 139,* ARTICLE: THE WAR AGAINST ARBITRATION IN MONTANA.

1 of 1 DOCUMENT

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 16, 2006 ***

TITLE 53  SOCIAL SERVICES AND INSTITUTIONS
CHAPTER 6  HEALTH CARE SERVICES
PART 1  MEDICAL ASSISTANCE -- MEDICAID

### GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION

*Mont. Code Anno., § 53-6-143 (2006)*

53-6-143  Medical assistance liens and recoveries.

(1)  Except as provided in this section, the department may not impose a lien upon the property of an applicant for or recipient of medical assistance.

(2)  A lien for recovery of medical assistance paid or to be paid under this chapter may be imposed against the real or personal property of a medicaid applicant or recipient prior to the applicant's or recipient's death only:

(a)  pursuant to a judgment of a court for recovery of medical assistance paid on behalf of the recipient;

(b)  on a third-party recovery as provided in *53-2-612*;

(c)  as provided in *53-6-171* through *53-6-188*; or

(d)  to the extent that the recipient has received medical assistance based upon resources not disregarded pursuant to part 8 of this chapter.

(3)  The department may recover medical assistance correctly paid on behalf of a recipient only as provided in *53-2-612*, *53-6-167* through *53-6-169*, or *53-6-171* through *53-6-188* or as provided in a written agreement between the department and the recipient or the recipient's representative pursuant to *42 U.S.C. 1382b*(b).

(4)  Except as otherwise specifically provided by *53-6-144*, *53-6-165* through *53-6-169*, *53-6-171* through *53-6-189*, and this section, the department may pursue recovery under any section or combination of sections as may be applicable in a particular case. However, the department may not recover pursuant to *53-6-167* through *53-6-169* or *53-6-171* through *53-6-188* more than the total amount of recoverable medical assistance paid on behalf of a recipient, plus any applicable costs, interest, or other charges specifically allowed by law. The fact that the department has or may have a lien on particular property does not preclude the department from pursuing recovery under another section against other assets of the recipient or assets of another person as provided in *53-6-144*, *53-6-165* through *53-6-169*, *53-6-171* through *53-6-189*, and this section.

(5)  Except as provided in subsections (5)(a) and (5)(b), the department may not impose a lien under this section upon a self-sufficiency trust established pursuant to Title 53, chapter 18, part 1, or upon the assets of a self-sufficiency trust established pursuant to Title 53, chapter 18, part 1.

(a)  The department may impose a lien under this section upon a self-sufficiency trust or upon the assets of a self-sufficiency trust established pursuant to Title 53, chapter 18, part 1, if the department is required by federal law to recover or collect from the trust or its assets as a condition of receiving federal financial participation for the medicaid program.

(b)  To the extent otherwise permitted by this section, the department is not precluded from asserting a claim or imposing a lien upon real or personal property prior to transfer of the property to the trust. If the department imposes a lien upon property prior to transfer to a self-sufficiency trust, any transfer of the property to the trust is subject to the lien.

Mont. Code Anno., § 53-6-143 (2006)

## HISTORY:

En. Sec. 14, Ch. 325, L. 1967; amd. Sec. 1, Ch. 249, L. 1969; amd. Sec. 1, Ch. 279, L. 1974; amd. Sec. 5, Ch. 379, L. 1977; R.C.M. 1947, 71-1524; amd. Sec. 2, Ch. 482, L. 1989; amd. Sec. 3, Ch. 492, L. 1995; amd. Sec. 456, Ch. 546, L. 1995; amd. Sec. 6, Ch. 195, L. 1997; amd. Sec. 4, Ch. 262, L. 1997.

## NOTES:

Title Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Part Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Families Achieving Independence in Montana (FAIM) -- financial assistance, Title 53, ch. 4, part 2.

Cross-References

Liens, Title 71, ch. 3.

Claims against estate, Title 72, ch. 3, part 8.

Part Compiler's Comments

*Study of Conversion to Private Coverage:* Chapter 523, L. 1995, requires the Department of Social and Rehabilitation Services (now Department of Public Health and Human Services) to, if sufficient funds are available from public and private sources, contract with the Legislative Auditor for a study of the conversion and cost-effectiveness of converting Medicaid to a combined private insurance and medical savings accounts program. After the study is completed, if the Office of Budget and Program Planning decides that conversion would be cost-effective, the Department must apply to the United States government for a waiver of Medicaid statutes and rules and, if the waiver is granted, convert Medicaid to a combined private insurance and medical savings accounts program. The act is effective July 1, 1995, and terminates October 1, 1996.

Compiler's Comments

*Contingent Effective Date Repealed:* Section 2, Ch. 406, L. 2005, repealed sec. 8, Ch. 195, L. 1997, which provided a contingent effective date for this section. Effective October 1, 2005.

*Contingent Effective Date:* Section 8, Ch. 195, L. 1997, provided: "(1) Sections 4, 5, and 7 and this section *53-6-804, 53-6-805,* and the codification instruction are effective on the effective date of the repeal of *42 U.S.C. 1396p*(b)(1)(A) and (b)(1)(B) or of the amendment of that section in a manner prohibiting adjustment or recovery of medical assistance paid to individuals described in that section.

(2)  Sections 1 through 3 and 6 *53-6-801* through *53-6-803* and amendments to *53-6-143* are effective 6 months after the effective date of sections 4 and 5 *53-6-804* and *53-6-805*."

*1997 Amendments:* Chapter 195 inserted (2)(d) precluding imposition of a lien to the extent that the recipient has received medical assistance based upon resources not disregarded pursuant to the long-term care insurance partnerships statutes; and made minor changes in style. Amendment effective 6 months after occurrence of contingency.

Chapter 262 inserted (5) disallowing imposition of a lien upon a self-sufficiency trust or the assets of a self-sufficiency trust; and inserted (5)(a) and (5)(b) providing exceptions to the lien imposition restrictions. Amendment effective July 1, 1997.

*1997 Statement of Intent:* The statement of intent attached to Ch. 195, L. 1997, provided: "A statement of intent is required for this bill because sections 4 and 5 *53-6-804* and *53-6-805* grant rulemaking authority to the commissioner of insurance and the department of public health and human services. Section 4 *53-6-804* authorizes the commissioner and the department to adopt rules regarding requirements for certification of long-term care insurance policies and certifi-

cates for the purposes of qualification for medical assistance benefits. Section 5 *53-6-805* requires the department to adopt rules necessary for the administration of long-term care insurance partnerships, including eligibility requirements for disregard of resources and amounts of resources to be disregarded for the purposes of qualification for medical assistance benefits. In adopting rules pursuant to these sections, the commissioner and the department shall take into consideration the goal of reducing expenditures for long-term care by the Montana medicaid program."

*1995 Amendments -- Composite Section:* Chapter 492 in (1), at beginning, inserted exception clause, near end, after "recipient of", inserted "medical", and at end, after "assistance", deleted "may not be required to execute an agreement creating a lien on his real property"; in (2), near middle after "property of", substituted "a medicaid applicant or recipient" for "an individual"; in (2)(a), after "recovery of", inserted "medical" and after "assistance" deleted "incorrectly"; inserted (2)(c) referencing *53-6-171* through *53-6-188*; in (3), after "provided in", substituted present language referencing state and federal laws for former language that read: "*53-2-611*, except that it may not recover for any assistance paid on behalf of a recipient for services provided before he reached age 65"; deleted (3)(b) that read: "(b) The department may recover under *53-2-611* only:

(i) after the death of the recipient's surviving spouse, if any; and

(ii) if there is no surviving child of the recipient who is under age 21, blind, or permanently and totally disabled"; substituted (4) regarding recovery procedures for former language that read: "(4)   Recoveries must be prorated to the federal government and the state in the proportion to which each contributed to the medical assistance. Recovery for medical assistance paid prior to July 1, 1974, shall be prorated to reimburse the county share of participation. The provisions of this section are hereby extended to provide for the recovery of all medical assistance paid under this part and likewise to all medical aid to the aged assistance paid by the department of social and rehabilitation services during the period of time July 1, 1965, through June 30, 1967"; and made minor changes in style. Amendment effective July 1, 1995.

Chapter 546 at end of (4) substituted "department of public health and human services" for "department of social and rehabilitation services"; and made minor changes in style. Amendment effective July 1, 1995. The amendment by Ch. 492 rendered the amendment by Ch. 546 void.

Style changes in the chapters were slightly different. In each case, the codifier chose the most appropriate.

*Preamble:*   The preamble attached to Ch. 492, L. 1995, provided: "WHEREAS, the cost of funding the Montana Medicaid Program has escalated rapidly in recent years and threatens to continue escalating beyond the capacity of Montanans to fund the program;

WHEREAS, prior state laws and rules have inadvertently permitted individuals to become eligible for Medicaid benefits while retaining or disposing of valuable assets through the use of various transfers, trusts, and other arrangements;

WHEREAS, under prior state laws and rules, valuable assets of an individual who received Medicaid benefits were often transferred or disposed of prior to the death of the individual, making the assets unavailable for recovery by the Medicaid Program even when not needed by the individual's surviving spouse, dependent children, or other dependent family members;

WHEREAS, unused funds belonging to Medicaid-eligible nursing facility residents or set aside for burial have often become unavailable for recovery by the Medicaid Program; and

WHEREAS, the United States Congress has recently enacted amendments to the federal Social Security Act that require or permit the state Medicaid agency to deny Medicaid eligibility to a greater number of persons and to recover the value of Medicaid benefits already paid in order to ensure that Medicaid benefits remain available to the truly needy."

*Severability:*   Section 29, Ch. 492, L. 1995, was a severability clause.

*Applicability:*   Section 31(1), Ch. 492, L. 1995, provided that this section applied to medical assistance recipients who die on or after the effective date of this section. Effective July 1, 1995.

*Saving Clause:*   Section 571, Ch. 546, L. 1995, was a saving clause.

*1989 Amendment:*   Rewrote section to allow lien for recovery of medical assistance, subject to certain limitations (see 1989 Session Law for text). Amendment effective April 10, 1989.

Case 1:01-cv-12257-PBS   Document 3735-9   Filed 02/08/07   Page 31 of 48

Page 4
Mont. Code Anno., § 53-6-143 (2006)

*Retroactive Applicability:* Section 6, Ch. 482, L. 1989, provided that the amendments to this section apply retroactively, within the meaning of *1-2-109.*

Chapter Administrative Rules

*Title 37, chapter 40, ARM* Senior and long-term care services.

*Title 37, chapter 49, ARM* IV-E foster care services.

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Administrative Rules

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 83, ARM Medicaid for certain Medicare beneficiaries and others.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Administrative Rules

ARM 37.82.417 Transfer of resources -- medical services.

Part Case Notes

*Implied Contracts -- Medicaid Payments:* The principle underlying the implied contract doctrine is that one person should not be permitted to be unjustly enriched at the expense of another but should be required to make restitution for property or benefits received where it is just and equitable that such restitution be made and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. The circumstances on the record do not justify payment be made on any formula other than the "reasonable costs" formula as set forth in federal Medicaid statutes and regulations. *Flathead Health Center v. Flathead County, 183 M 211, 598 P2d 1111, 36 St. Rep. 1465 (1979).*

**NOTES:**

Title Law Review Articles

Equality in Basic Needs and Services: Constitutional Right to Subsidy and Sharing. Welfare Rights in a Constitutional Democracy. F. I. Michelman. Commentary. R. H. Bork, B. Levin, S. F. Appleton; Panel discussion. Reaching the Private Sphere; Schools, Clubs, Monopolies. Changing Concepts of Equality: From Equality Before the Law to the Welfare State. R. K. Winter, Jr.; Commentary. J. H. Choper, M. B. Wilson; Panel discussion. Wash. U.L.Q. 1979: 659 through 793 (Summer 1979).

Part Law Review Articles

Between Welfare Medicine and Mainstream Entitlement: Medicaid at the Crossroads, Grogan & Patashnik, 28 J. Health Pol., Pol'y & L. 821 (2003).

Get Medicaid Without Giving Up the Farm: A Medicaid Applicant Can Keep His Home and His Eligibility, Sandoval, 142 Tr. & Est. 29 (2003).

Medicaid Eligibility Rules, Knoepfle, 34 Tax Adviser 354 (2003).

Medicaid Eligibility Rules for the Elderly Long-Term Care Applicant: History and Developments, 1965-1998, Ahmad, *20 J. Legal Med. 251 (1999).*

Balancing the Budget on the Backs of American's Elderly--Section 4734 of the Balanced Budget Act: Criminalization of the Attorney's Role as Advisor and Counselor, Miller, *29 U. Mem. L. Rev. 165 (1998).*

Criminal Penalty for Assisting With Medicaid Planning Transfers, Coplan, 29 Tax Adviser 17 (1998).

Long-Term Care Financing Crisis--Recent Federal and State Efforts to Deter Asset Transfers as a Means to Gain Medicaid Eligibility, Reich, *74 N.D.L. Rev. 383 (1998).*

A Creative Strategy for Protecting the Home for Medicaid Purposes, Bove, *24 Est. Plan. 22 (1997).*

Advising the Elder Client: Trusts and Medicaid Eligibility, Barrett, *43 Prac. Law. 57 (1997).*

Legal Issues in Securing Home Health Services Under Medicare and Medicaid (Elder Law), Bogart, Chilin, Gottlich, & Stein, *31 Clearinghouse Rev. 199 (1997).*

The Welfare Law and Its Effects on Medicaid Recipients, *30 Clearinghouse Rev. 1008 (1997).*

Medicaid Reform: Saving an American Success Story, Graham, *23 Fla. St. U.L. Rev. 917 (1996).*

Medicaid and the Elderly Poor--A Second Look at the Medicare Catastrophic Coverage Act: Transfer of Assets and Spousal Impoverishment, Finberg & Nemore, *25 Clearinghouse Rev. 1316 (1992).*

Symposium on Medical Cost Containment, 3 Notre Dame J.L., Ethics, & Pub. Pol'y (1988).

Equal Protection Problems With Welfare Fraud Prosecution (Special Issue: Poverty Law), Collin & Hemmons, *33 Loy. L. Rev. 17 (1987).*

Health Care Delivery and the Elderly: Teaching Old Patients New Tricks, Kapp, *17 Cum. L. Rev. 437 (1987).*

Medicare Regulations--Judicial Review, *12 Am. J.L. & Med. 162 (1987).*

Part Collateral References

Social Security and Public Welfare [Key number] 241.

81 C.J.S. Social Security and Public Welfare § 126, et seq.

*79 Am. Jur. 2d Welfare Laws § § 33* through *38.*

Supreme Court's views as to construction and application of Medicaid Act *(42 USCS § § 1396* - 1396s). *85 L. Ed. 2d 935,* § 4 b, c .

Grants to States for Medical Assistance Programs, Title 42, ch. 7, subchapter 19, U.S.C.

Montana's Welfare Reform Project: Families Achieving Independence in Montana, FAIM, February 1998 Update, Montana Department of Public Health and Human Services.

Welfare in Montana: A Time for Reform, Interim Report, Mont. Leg. Council (Dec. 1988).

Collateral References

Social Security and Public Welfare [Key number] 241.70.

81 C.J.S. Social Security and Public Welfare § 138.

Claims for expenses of last sickness or for funeral expenses as within contemplation of statute requiring presentation of claims against decedent's estate, or limiting time for bringing action thereon. *17 ALR 4th 530.*

. FOCUS - 9 of 15 DOCUMENTS

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 16, 2006 ***

TITLE 53  SOCIAL SERVICES AND INSTITUTIONS
CHAPTER 6  HEALTH CARE SERVICES
PART 1  MEDICAL ASSISTANCE -- MEDICAID

### GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION

*Mont. Code Anno., § 53-6-155 (2006)*

53-6-155  Definitions.

As used in this part, unless expressly provided otherwise, the following definitions apply:

(1) "Abuse" means conduct by an applicant, recipient, provider, or other person involving disregard of and an un-reasonable failure to conform with the statutes, regulations, and rules governing the medical assistance program when the disregard or failure results or may result in an incorrect determination that a person is eligible for medical assistance or payment by a medicaid agency of medical assistance payments to which the provider is not entitled.

(2) "Applicant" means a person:

(a) who has submitted an application for determination of medicaid eligibility to a medicaid agency on the person's own behalf or on behalf of another person; or

(b) on whose behalf an application has been submitted.

(3) "Benefit" means the provision of anything of pecuniary value to or on behalf of a recipient under the medicaid program.

(4) "Claim" means a communication, whether in oral, written, electronic, magnetic, or other form, that is used to claim specific services or items as payable or reimbursable under the medicaid program or that states income, expense, or other information that is or may be used to determine entitlement to or the rate of payment under the medicaid pro-gram. The term includes any documents submitted as part of or in support of the claim.

(5) "Department" means the department of public health and human services provided for in *2-15-2201.*

(6) "Document" means any application, claim, form, report, record, writing, or correspondence, whether in written, electronic, magnetic, or other form.

(7) "Fraud" means any conduct or activity prohibited by statute, regulation, or rule involving purposeful or know-ing conduct or omission to perform a duty that results in or may result in medicaid payments or benefits to which the applicant, recipient, or provider is not entitled. Fraud includes but is not limited to any conduct or omission under the medicaid program that would constitute a criminal offense under Title 45, chapter 6 or 7.

(8) "Medicaid" means the Montana medical assistance program established under Title 53, chapter 6.

(9) "Medicaid agency" means any agency or entity of state, county, or local government that administers any part of the medicaid program, whether under direct statutory authority or under contract with an authorized agency of the state or federal government. The term includes but is not limited to the department, the department of corrections, local offices of public assistance, and other local and state agencies and their agents, contractors, and employees, when acting with respect to medicaid eligibility, claims processing or payment, utilization review, case management, provider certi-fication, investigation, or other administration of the medicaid program.

Mont. Code Anno., § 53-6-155 (2006)

(10) "Misappropriation of patient property" means exploitation, deliberate misplacement, or wrongful use or taking of a patient's property, whether temporary or permanent, without authorization by the patient or the patient's designated representative. Misappropriation of patient property includes but is not limited to any conduct with respect to a patient's property that would constitute a criminal offense under Title 45, chapter 6, part 3.

(11) "Patient abuse" means the willful infliction of physical or mental injury of a patient or unreasonable confinement, intimidation, or punishment that results in pain, physical or mental harm, or mental anguish of a patient. Patient abuse includes but is not limited to any conduct with respect to a patient that would constitute a criminal offense under Title 45, chapter 5.

(12) "Patient neglect" means a failure, through inattentiveness, carelessness, or other omission, to provide to a patient goods and services necessary to avoid physical harm, mental anguish, or mental illness when an omission is not caused by factors beyond the person's control or by good faith errors in judgment. Patient neglect includes but is not limited to any conduct with respect to a patient that would constitute a criminal offense under *45-5-208*.

(13) "Provider" means an individual, company, partnership, corporation, institution, facility, or other entity or business association that has enrolled or applied to enroll as a provider of services or items under the medical assistance program established under this part.

(14) "Recipient" means a person:

(a) who has been determined by a medicaid agency to be eligible for medicaid benefits, whether or not the person actually has received any benefits; or

(b) who actually receives medicaid benefits, whether or not determined eligible.

(15) (a) "Records" means medical, professional, business, or financial information and documents, whether in written, electronic, magnetic, microfilm, or other form:

(i) pertaining to the provision of treatment, care, services, or items to a recipient;

(ii) pertaining to the income and expenses of the provider; or

(iii) otherwise relating to or pertaining to a determination of eligibility for or entitlement to payment or reimbursement under the medicaid program.

(b) The term includes all records and documents, regardless of whether the records are required by medicaid laws, regulations, rules, or policies to be made and maintained by the provider.

## HISTORY:

En. Sec. 1, Ch. 354, L. 1995; amd. Sec. 40, Ch. 571, L. 2001.

## NOTES:

Title Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Part Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Families Achieving Independence in Montana (FAIM) -- financial assistance, Title 53, ch. 4, part 2.

Part Compiler's Comments

*Study of Conversion to Private Coverage:* Chapter 523, L. 1995, requires the Department of Social and Rehabilitation Services (now Department of Public Health and Human Services) to, if sufficient funds are available from public and private sources, contract with the Legislative Auditor for a study of the conversion and cost-effectiveness of converting Medicaid to a combined private insurance and medical savings accounts program. After the study is completed, if the Office of Budget and Program Planning decides that conversion would be cost-effective, the Department must

Case 1:01-cv-12257-PBS   Document 3735-9   Filed 02/08/07   Page 36 of 48

Page 3
Mont. Code Anno., § 53-6-155 (2006)

apply to the United States government for a waiver of Medicaid statutes and rules and, if the waiver is granted, convert Medicaid to a combined private insurance and medical savings accounts program. The act is effective July 1, 1995, and terminates October 1, 1996.

Compiler's Comments

*2001 Amendment:* Chapter 571 in definition of medicaid agency in second sentence near beginning after "the department of corrections" substituted "local offices of public assistance" for "county offices of human services and public welfare". Amendment effective July 1, 2001.

*Severability:* Section 18, Ch. 354, L. 1995, was a severability clause.

*Effective Date:* Section 19(1), Ch. 354, L. 1995, provided that this section was effective on passage and approval. Approved April 11, 1995.

*Code Commissioner Changes:* Pursuant to sec. 1, Ch. 546, L. 1995, the Code Commissioner substituted Department of Public Health and Human Services for Department of Social and Rehabilitation Services.

Pursuant to sec. 3, Ch. 546, L. 1995, the Code Commissioner substituted Department of Public Health and Human Services for Department of Health and Environmental Sciences.

Pursuant to sec. 4, Ch. 546, L. 1995, the Code Commissioner substituted Department of Public Health and Human Services for Department of Corrections and Human Services.

Chapter Administrative Rules

*Title 37, chapter 40, ARM* Senior and long-term care services.

*Title 37, chapter 49, ARM* IV-E foster care services.

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Administrative Rules

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 83, ARM Medicaid for certain Medicare beneficiaries and others.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Case Notes

*Implied Contracts -- Medicaid Payments:* The principle underlying the implied contract doctrine is that one person should not be permitted to be unjustly enriched at the expense of another but should be required to make restitution for property or benefits received where it is just and equitable that such restitution be made and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. The circumstances on the record do not justify payment be made on any formula other than the "reasonable costs" formula as set forth in federal Medicaid statutes and regulations. *Flathead Health Center v. Flathead County, 183 M 211, 598 P2d 1111, 36 St. Rep. 1465 (1979).*

**NOTES:**

Title Law Review Articles

Equality in Basic Needs and Services: Constitutional Right to Subsidy and Sharing. Welfare Rights in a Constitutional Democracy. F. I. Michelman. Commentary. R. H. Bork, B. Levin, S. F. Appleton; Panel discussion. Reaching the Private Sphere; Schools, Clubs, Monopolies. Changing Concepts of Equality: From Equality Before the Law to the Welfare State. R. K. Winter, Jr.; Commentary. J. H. Choper, M. B. Wilson; Panel discussion. Wash. U.L.Q. 1979: 659 through 793 (Summer 1979).

Part Law Review Articles

Between Welfare Medicine and Mainstream Entitlement: Medicaid at the Crossroads, Grogan & Patashnik, 28 J. Health Pol., Pol'y & L. 821 (2003).

Get Medicaid Without Giving Up the Farm: A Medicaid Applicant Can Keep His Home and His Eligibility, Sandoval, 142 Tr. & Est. 29 (2003).

Medicaid Eligibility Rules, Knoepfle, 34 Tax Adviser 354 (2003).

Medicaid Eligibility Rules for the Elderly Long-Term Care Applicant: History and Developments, 1965-1998, Ahmad, *20 J. Legal Med. 251 (1999)*.

Balancing the Budget on the Backs of American's Elderly--Section 4734 of the Balanced Budget Act: Criminalization of the Attorney's Role as Advisor and Counselor, Miller, *29 U. Mem. L. Rev. 165 (1998)*.

Criminal Penalty for Assisting With Medicaid Planning Transfers, Coplan, 29 Tax Adviser 17 (1998).

Long-Term Care Financing Crisis--Recent Federal and State Efforts to Deter Asset Transfers as a Means to Gain Medicaid Eligibility, Reich, *74 N.D.L. Rev. 383 (1998)*.

A Creative Strategy for Protecting the Home for Medicaid Purposes, Bove, *24 Est. Plan. 22 (1997)*.

Advising the Elder Client: Trusts and Medicaid Eligibility, Barrett, *43 Prac. Law. 57 (1997)*.

Legal Issues in Securing Home Health Services Under Medicare and Medicaid (Elder Law), Bogart, Chilin, Gottlich, & Stein, *31 Clearinghouse Rev. 199 (1997)*.

The Welfare Law and Its Effects on Medicaid Recipients, *30 Clearinghouse Rev. 1008 (1997)*.

Medicaid Reform: Saving an American Success Story, Graham, *23 Fla. St. U.L. Rev. 917 (1996)*.

Medicaid and the Elderly Poor--A Second Look at the Medicare Catastrophic Coverage Act: Transfer of Assets and Spousal Impoverishment, Finberg & Nemore, *25 Clearinghouse Rev. 1316 (1992)*.

Symposium on Medical Cost Containment, 3 Notre Dame J.L., Ethics, & Pub. Pol'y (1988).

Equal Protection Problems With Welfare Fraud Prosecution (Special Issue: Poverty Law), Collin & Hemmons, *33 Loy. L. Rev. 17 (1987)*.

Health Care Delivery and the Elderly: Teaching Old Patients New Tricks, Kapp, *17 Cum. L. Rev. 437 (1987)*.

Medicare Regulations--Judicial Review, *12 Am. J.L. & Med. 162 (1987)*.

Part Collateral References

Social Security and Public Welfare [Key number] 241.

81 C.J.S. Social Security and Public Welfare § 126, et seq.

*79 Am. Jur. 2d Welfare Laws §§ 33 through 38*.

Supreme Court's views as to construction and application of Medicaid Act *(42 USCS §§ 1396 - 1396s)*. *85 L. Ed. 2d 935*, § 4 b, c .

Grants to States for Medical Assistance Programs, Title 42, ch. 7, subchapter 19, U.S.C.

Mont. Code Anno., § 53-6-155 (2006)

Montana's Welfare Reform Project: Families Achieving Independence in Montana, FAIM, February 1998 Update, Montana Department of Public Health and Human Services.

Welfare in Montana: A Time for Reform, Interim Report, Mont. Leg. Council (Dec. 1988).

1 of 1 DOCUMENT

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 16, 2006 ***

TITLE 53  SOCIAL SERVICES AND INSTITUTIONS
CHAPTER 6  HEALTH CARE SERVICES
PART 1  MEDICAL ASSISTANCE -- MEDICAID

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 53-6-160 (2006)*

53-6-160  Truthfulness, completeness, and accuracy of submissions to medicaid agencies.

(1)  A person who submits to a medicaid agency an application, claim, report, document, or other information that is or may be used to determine eligibility for medicaid benefits, eligibility to participate as a provider, or the right to or the amount of payment under the medicaid program is considered to represent to the department, to the best of the person's knowledge and belief, that the item is genuine and that its contents, including all statements, claims, and representations contained in the document, are true, complete, accurate, and not misleading.

(2)  (a)  A provider has a duty to exercise reasonable care to ensure the truthfulness, completeness, and accuracy of all applications, claims, reports, documents, and other information and of all statements and representations made or submitted, or authorized by the provider to be made or submitted, to the department for purposes related to the medicaid program. The duty applies whether the applications, claims, reports, documents, other information, statements, or representations were made or submitted, or authorized by the provider to be made or submitted, on behalf of the provider or on behalf of an applicant or recipient being served by the provider.

(b)  A provider has a duty to exercise reasonable care to ensure that a claim made or submitted to the department or its agents or employees for payment or reimbursement under the medicaid program is one for which the provider is entitled to receive payment and that the service or item is provided and billed according to all applicable medicaid requirements, including but not limited to identification of the appropriate procedure code or level of service and provision of the service by a person, facility, or other provider entitled to receive medicaid payment for the particular service.

(3)  A person is considered to have known that a claim, statement, or representation related to the medicaid program was false if the person knew, or by virtue of the person's position, authority, or responsibility should have known, of the falsity of the claim, statement, or representation.

(4)  A person is considered to have made or to have authorized to be made a claim, statement, or representation if the person:

(a)  had the authority or responsibility to:

(i)  make the claim, statement, or representation;

(ii)  supervise another who made the claim, statement, or representation; or

(iii)  authorize the making of the claim, statement, or representation, whether by operation of law, business or professional practice, or office policy or procedure; and

(b)  exercised or failed to exercise that authority or responsibility and, as a direct or indirect result, the false statement was made, resulting in a claim for a service or item when the person knew or had reason to know that the person was not entitled under applicable statutes, regulations, rules, or policies to medicaid payment or benefits for the service or item or for the amount of payment requested or claimed.

Case 1:01-cv-12257-PBS   Document 3735-9   Filed 02/08/07   Page 41 of 48

Page 2
Mont. Code Anno., § 53-6-160 (2006)

(5) (a) There is an inference that a person who signs or submits a document to a medicaid agency on behalf of or in the name of a provider is authorized by the provider to do so and is acting under the provider's direction.

(b) For purposes of this section, the term "signs" includes but is not limited to the use of facsimile, computer-generated and typed, or block-letter signatures.

(6) The department shall directly or by contract provide a program of instruction and assistance to persons submitting applications, claims, reports, documents, and other information to the department concerning the completion and submission of the application, claim, report, document, or other information in a manner determined necessary by the department. The program must include:

(a) clear directions for the completion of applications, claims, reports, documents, and other information;

(b) examples of properly completed applications, claims, reports, documents, and other information;

(c) a method by which persons submitting applications, claims, reports, documents, and other information may, on a case-by-case basis, receive accurate, complete, specific, and timely advice and directions from the department before the completed applications, claims, reports, documents, and other information must be submitted to the department; and

(d) a method by which persons submitting applications, claims, reports, documents, and other information may challenge the department's interpretation or application of the manner in which the applications, claims, reports, documents, and other information must be completed.

(7) This section applies only for the purpose of civil liability under Title 53 and does not apply in a criminal proceeding.

**HISTORY:**

En. Sec. 6, Ch. 354, L. 1995.

**NOTES:**

Title Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Part Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Families Achieving Independence in Montana (FAIM) -- financial assistance, Title 53, ch. 4, part 2.

Part Compiler's Comments

*Study of Conversion to Private Coverage:* Chapter 523, L. 1995, requires the Department of Social and Rehabilitation Services (now Department of Public Health and Human Services) to, if sufficient funds are available from public and private sources, contract with the Legislative Auditor for a study of the conversion and cost-effectiveness of converting Medicaid to a combined private insurance and medical savings accounts program. After the study is completed, if the Office of Budget and Program Planning decides that conversion would be cost-effective, the Department must apply to the United States government for a waiver of Medicaid statutes and rules and, if the waiver is granted, convert Medicaid to a combined private insurance and medical savings accounts program. The act is effective July 1, 1995, and terminates October 1, 1996.

Compiler's Comments

*Severability:* Section 18, Ch. 354, L. 1995, was a severability clause.

*Effective Date:* Section 19(1), Ch. 354, L. 1995, provided that this section was effective on passage and approval. Approved April 11, 1995.

Chapter Administrative Rules

Mont. Code Anno., § 53-6-160 (2006)

*Title 37, chapter 40, ARM* Senior and long-term care services.

*Title 37, chapter 49, ARM* IV-E foster care services.

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Administrative Rules

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 83, ARM Medicaid for certain Medicare beneficiaries and others.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Case Notes

*Implied Contracts -- Medicaid Payments:* The principle underlying the implied contract doctrine is that one person should not be permitted to be unjustly enriched at the expense of another but should be required to make restitution for property or benefits received where it is just and equitable that such restitution be made and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. The circumstances on the record do not justify payment be made on any formula other than the "reasonable costs" formula as set forth in federal Medicaid statutes and regulations. *Flathead Health Center v. Flathead County, 183 M 211, 598 P2d 1111, 36 St. Rep. 1465 (1979).*

**NOTES:**

Title Law Review Articles

Equality in Basic Needs and Services: Constitutional Right to Subsidy and Sharing. Welfare Rights in a Constitutional Democracy. F. I. Michelman. Commentary. R. H. Bork, B. Levin, S. F. Appleton; Panel discussion. Reaching the Private Sphere; Schools, Clubs, Monopolies. Changing Concepts of Equality: From Equality Before the Law to the Welfare State. R. K. Winter, Jr.; Commentary. J. H. Choper, M. B. Wilson; Panel discussion. Wash. U.L.Q. 1979: 659 through 793 (Summer 1979).

Part Law Review Articles

Between Welfare Medicine and Mainstream Entitlement: Medicaid at the Crossroads, Grogan & Patashnik, 28 J. Health Pol., Pol'y & L. 821 (2003).

Get Medicaid Without Giving Up the Farm: A Medicaid Applicant Can Keep His Home and His Eligibility, Sandoval, 142 Tr. & Est. 29 (2003).

Medicaid Eligibility Rules, Knoepfle, 34 Tax Adviser 354 (2003).

Medicaid Eligibility Rules for the Elderly Long-Term Care Applicant: History and Developments, 1965-1998, Ahmad, *20 J. Legal Med. 251 (1999).*

Balancing the Budget on the Backs of American's Elderly--Section 4734 of the Balanced Budget Act: Criminalization of the Attorney's Role as Advisor and Counselor, Miller, *29 U. Mem. L. Rev. 165 (1998).*

Criminal Penalty for Assisting With Medicaid Planning Transfers, Coplan, 29 Tax Adviser 17 (1998).

Case 1:01-cv-12257-PBS   Document 3735-9   Filed 02/08/07   Page 43 of 48

Page 4
Mont. Code Anno., § 53-6-160 (2006)

Long-Term Care Financing Crisis--Recent Federal and State Efforts to Deter Asset Transfers as a Means to Gain Medicaid Eligibility, Reich, *74 N.D.L. Rev. 383 (1998).*

A Creative Strategy for Protecting the Home for Medicaid Purposes, Bove, *24 Est. Plan. 22 (1997).*

Advising the Elder Client: Trusts and Medicaid Eligibility, Barrett, *43 Prac. Law. 57 (1997).*

Legal Issues in Securing Home Health Services Under Medicare and Medicaid (Elder Law), Bogart, Chilin, Gottlich, & Stein, *31 Clearinghouse Rev. 199 (1997).*

The Welfare Law and Its Effects on Medicaid Recipients, *30 Clearinghouse Rev. 1008 (1997).*

Medicaid Reform: Saving an American Success Story, Graham, *23 Fla. St. U.L. Rev. 917 (1996).*

Medicaid and the Elderly Poor--A Second Look at the Medicare Catastrophic Coverage Act: Transfer of Assets and Spousal Impoverishment, Finberg & Nemore, *25 Clearinghouse Rev. 1316 (1992).*

Symposium on Medical Cost Containment, 3 Notre Dame J.L., Ethics, & Pub. Pol'y (1988).

Equal Protection Problems With Welfare Fraud Prosecution (Special Issue: Poverty Law), Collin & Hemmons, *33 Loy. L. Rev. 17 (1987).*

Health Care Delivery and the Elderly: Teaching Old Patients New Tricks, Kapp, *17 Cum. L. Rev. 437 (1987).*

Medicare Regulations--Judicial Review, *12 Am. J.L. & Med. 162 (1987).*

Part Collateral References

Social Security and Public Welfare [Key number] 241.

81 C.J.S. Social Security and Public Welfare § 126, et seq.

*79 Am. Jur. 2d Welfare Laws § § 33* through *38.*

Supreme Court's views as to construction and application of Medicaid Act *(42 USCS § § 1396* - 1396s). *85 L. Ed. 2d 935,* § 4 b, c .

Grants to States for Medical Assistance Programs, Title 42, ch. 7, subchapter 19, U.S.C.

Montana's Welfare Reform Project: Families Achieving Independence in Montana, FAIM, February 1998 Update, Montana Department of Public Health and Human Services.

Welfare in Montana: A Time for Reform, Interim Report, Mont. Leg. Council (Dec. 1988).

LEXSTAT MT. CODE ANN. 53-6-1001

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH OCTOBER 16, 2006 ***

TITLE 53  SOCIAL SERVICES AND INSTITUTIONS
CHAPTER 6  HEALTH CARE SERVICES
PART 10  PRESCRIPTION DRUG PLUS DISCOUNT PROGRAM

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 53-6-1001 (2006)*

53-6-1001  Definitions.

As used in this part, unless the context requires otherwise, the following definitions apply:

(1) "Average wholesale price" means the wholesale price charged on a specific drug that is assigned by the drug manufacturer and is listed in a nationally recognized drug pricing file.

(2) "Department" means the department of public health and human services provided for in Title 2, chapter 15, part 22.

(3) "Discounted price" means a price set by the department by rule pursuant to *53-6-1002*.

(4) "Gross household income" has the meaning provided in *15-30-171*.

(5) "Manufacturer" means a manufacturer of prescription drugs and includes a subsidiary or affiliate of a manufacturer.

(6) "Participating retail pharmacy" means a retail pharmacy located in this state or another business licensed to dispense prescription drugs in this state that is medicaid-approved.

(7) "Program" means the prescription drug plus discount program provided for in *53-6-1002*.

(8) "Secondary discounted price" means the discounted price less any further discounts funded by manufacturer rebates for medication purchased by participants in the program.

**HISTORY:**

En. Sec. 1, Ch. 551, L. 2003; amd. Sec. 4, Ch. 287, L. 2005.

**NOTES:**

Title Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Part Compiler's Comments

*Preamble:*  The preamble attached to Ch. 551, L. 2003, provided: "WHEREAS, the Legislature finds that the cost of prescription drugs is a major threat to the public health of Montana citizens; and

WHEREAS, other states have implemented innovative prescription drug access and affordability legislation that can be adapted to meet Montana's needs; and

Mont. Code Anno., § 53-6-1001 (2006)

WHEREAS, the Legislature finds it necessary to provide some relief for the high cost of prescription drugs by using an expanded Medicaid program for which reimbursement will be sought through Medicaid rebates and federal reimbursement programs."

*Loan for Startup Costs:*   Section 8, Ch. 551, L. 2003, provided: "The department of public health and human services may apply for a loan from the board of investments under the revolving loan program provided for in *17-5-1605* to pay the startup costs of the program provided for in sections 1 through 7 this part ."

*Severability:*   Section 10, Ch. 551, L. 2003, was a severability clause.

*Effective Date:*   Section 12, Ch. 551, L. 2003, provided: " This act is effective July 1, 2003."

Compiler's Comments

*2005 Amendment:*   Chapter 287 in definition of average wholesale price near middle substituted "drug" for "commodity"; in definition of discounted price after "means" substituted "a price set" for "a price that is less than or equal to the average wholesale price, minus a percentage between 6% and 25% determined" and after "department" inserted "by rule"; in definition of program substituted "prescription drug plus discount" for "medicaid prescription drug"; inserted definition of secondary discounted price; and made minor changes in style. Amendment effective July 1, 2005.

Chapter Administrative Rules

*Title 37, chapter 40, ARM* Senior and long-term care services.

*Title 37, chapter 49, ARM* IV-E foster care services.

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Administrative Rules

*Title 37, chapter 81, ARM* Pharmacy access prescription drug benefit program (Big Sky Rx).

**NOTES:**

Title Law Review Articles

Equality in Basic Needs and Services: Constitutional Right to Subsidy and Sharing. Welfare Rights in a Constitutional Democracy. F. I. Michelman. Commentary. R. H. Bork, B. Levin, S. F. Appleton; Panel discussion. Reaching the Private Sphere; Schools, Clubs, Monopolies. Changing Concepts of Equality: From Equality Before the Law to the Welfare State. R. K. Winter, Jr.; Commentary. J. H. Choper, M. B. Wilson; Panel discussion. Wash. U.L.Q. 1979: 659 through 793 (Summer 1979).

LEXSTAT MT ADMIN R 37.86.1101

ADMINISTRATIVE RULES OF MONTANA

*** THIS DOCUMENT IS CURRENT THROUGH JANUARY 26, 2007 ***

TITLE 37: DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES
CHAPTER 86: MEDICAID PRIMARY CARE SERVICES
SUB-CHAPTER 11: OUTPATIENT DRUG SERVICES

*MONT. ADMIN. R. 37.86.1101* (2006)

37.86.1101 OUTPATIENT DRUGS, DEFINITIONS

(1) "Estimated acquisition cost (EAC)" means the cost of drugs for which no maximum allowable cost (MAC) price has been determined. The EAC is the department's best estimate of what price providers are generally paying in the state for a drug in the package size providers buy most frequently. The EAC for a drug is:

(a) the direct price (DP) charged by manufacturers to retailers;

(b) if there is no available DP for a drug or the department determines that the DP is not available to providers in the state, the EAC is the average wholesale price (AWP) less 15%; or

(c) the department may set an allowable acquisition cost for specified drugs or drug categories when the department determines that acquisition cost is lower than (1)(a) or (b) based on data provided by the drug pricing file contractor.

(2) "Legend drugs" means drugs that federal law prohibits dispensing without a prescription.

(3) "Maximum allowable cost (MAC)" means the upper limit the department will pay for multi-source drugs. In order to establish base prices for calculating the maximum allowable cost, the department hereby adopts and incorporates by reference the methodology for limits of payment set forth in 42 CFR 447.331 and 447.332 (1996). The maximum allowable cost for multi-source drugs will not exceed the total of the dispensing fee established by the department and an amount that is equal to the price established under the methodology set forth in 42 CFR 447.331 and 447.332 for the least costly therapeutic equivalent that can be purchased by phar- macists in quantities of 100 tablets or capsules or, in the case of liquids, the commonly listed size. If the drug is not commonly available in quantities of 100, the package size commonly listed will be the accepted quantity. A copy of the above-cited regulations may be obtained from the Department of Public Health and Human Services, Health Policy and Services Division, 1400 Broadway, P.O. Box 202951, Helena, MT, 59620-2951.

(4) "Outpatient drugs" means drugs which are obtained outside of a hospital.

(History: *Sec. 53-2-201* and *53-6-113, MCA*; IMP, *Sec. 53-2-201, 53-6-101, 53-6-111* and *53-6-113, MCA*; NEW, 1998 MAR p. 495, Eff. 2/13/98; TRANS, from SRS, 2000 MAR p. 481; AMD, 2000 MAR p. 2313, Eff. 8/25/00; AMD, 2002 MAR p. 1788, Eff. 6/28/02.)