# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 <br><br> CIVIL ACTION:  01-CV-12257-PBS <br><br> Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: <br><br> *State of Montana v. Abbott Labs., Inc., et al.*, <br>        Cause No. CV-02-09-H-DWM (D. Mont.), | |

## THE STATE OF MONTANA'S L.R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CERTAIN DEFENDANTS

Pursuant to Local Rule 56.1, the State of Montana hereby submits its Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment Against Certain Defendants.[1]

1.       Average Wholesale Price ("AWP") was the reimbursement benchmark for the Montana Medicaid pharmacy program.  *See* State of Montana Motion for Partial Summary Judgment at § II.B (citing Montana Medicaid reimbursement formulas).

2.       Each Defendant knew that the State and other payors based their drug reimbursement on AWPs.  This is reflected in Defendants' Answers to the State of Montana's Second Amended Complaint ("SAC"),[2]  testimony,[3] and internal documents of the Defendants.[4]

---

[1] The State of Montana seeks partial summary judgment against the following Defendants:  Abbott, AstraZeneca, Aventis, Bayer, BMS, Dey, Fujisawa, Immunex, Johnson & Johnson, Novartis, Pfizer, Pharmacia, Schering-Plough/Warrick, Sicor, and TAP.  Baxter International, Inc. is also a Defendant, but is subject to its own case schedule.  All evidence citations herein refer to exhibits to the Declaration of Jeniphr Breckenridge in Support of the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants.

   3.  Each Defendant caused AWPs to be published for each of their Subject Drugs.

Company insiders have testified to these practices at trial and at depositions and internal industry

documents reflect the same.[5]  Evidence shows that the reporting practices of other Defendants

were similar.[6]

---

[2] *See, e.g.,* Ex. 34 ( Abbott Answer to SAC (Dkt. No. 900), ¶ 5); Ex. 35 (AstraZeneca Answer to Montana SAC (Dkt. No. 896), ¶ 5); Ex. 36 (Aventis Pharmaceutical, Inc. Answer to Montana SAC (Dkt. No. 912), ¶¶ 5, 162); Ex. 37 (Aventis Behring LLC's Answer to Mont. SAC (Dkt. No. 916), ¶ 5); Ex. 38 (BMS Answer to Mont. SAC (Dkt. No. 914), ¶ 5); Ex. 39 (Fujisawa Answer to Mont. SAC (Dkt. No. 898), ¶¶ 5, 162); Ex. 40 (J&J Answer to Mont. SAC, ¶¶ 5, 162); Ex. 41 (Novartis Answer to Mont. SAC (Dkt. No. 911), ¶ 5); Ex. 42 (Pfizer Answer to Mont. SAC (Dkt. No. 908), ¶ 5); Ex. 43 (Pharmacia Answer to Mont. SAC (Dkt. No. 909), ¶ 5); Ex. 44 (Sicor Answer to Mont. SAC (Dkt. No. 932), ¶ 5); Ex. 57 (TAP Answer to Mont. SAC (Dkt. No. 930), ¶ 5).

[3] Ex. 24 (Direct Testimony of Julie-Ann G. Tracy, ¶ 6); *see also* Ex. 25 (Deposition of Christopher Iacono ("Iacono Dep."), Vol. I at 126:21-127:16 (the Vice President of Marketing at AstraZeneca (testifying that it is his "general understanding that AWP was the benchmark for reimbursement from Third-Party Payors)).
Ex. 26 (Deposition of Dianne Ihling ("Ihling Dep."), at 90-93, 117-18); Ex. 2 (Trial Tr. Day 5 at 142 (Marré)); Ex. (Marré Trial Aff., ¶ 10); Ex. 4 (Trial Tr. Day 4 at 62-64 (Kaszuba)); Ex. 28 (Deposition of John Akscin ("Akscin Dep."), at 26-27); Ex. 29 (Deposition of Marsha Peterson ("Peterson Dep."), at 114-15).
Centocor (CNTO), which manufactures, markets and sells Remicade, and Ortho Biotech Products, L.P. (OBI), which markets and sells Procrit, are both corporations that are wholly owned by the parent company Johnson & Johnson (J&J); Ex. 9 (Kling Dep. at 105:2-6); Ex. 6 (Webb Dep. at 67:9-22, 68:1-9).
Ex. 30 (Deposition of Richard W. Zahn, January 15, 2003 ("Zahn Dep.") at 173:1-23); Ex. 31 (Deposition of Debra Kane, June 15, 2004 ("Kane Dep.") at 34:7-11 ("[AWP] is a price that is used for reimbursement purposes. . . .")); Ex. 32 (RGX0315084-141, at 0315084); *E.g.,* Ex. 33 (Trial Tr. Day 18 at 29 (Weintraub)); Ex. 10 (Feb. 2003 Weintraub Dep. at 655:10-13); Ex. 33 (Trial Tr. Day 18 at 25-26 (Weintraub)).

[4] *See, e.g.,* Ex. 45 (Aventis compiles Medicaid and Medicare "Reimbursement Information by State," including "Payment Methodology," for Nevada and numerous other states) (AV-AAA-005243-92); Ex. 46 (Immunex communicated prices directly to industry compendia (IAWP023473; IAWP008102; IAWP016500); Ex. 47 (Dey discusses HCFA pricing) (EDEY-LABS-0018690, 18688, EDEY-LABS-0000307-08); Ex.48 (Dey discussing Medicaid reimbursement) (EDEY-LABS-0010325-28); Ex.23 (Pharmacia power point presentation defining AWP as "an artificial pricing index that is used as a common basis for third-party reimbursement to pharmacists and physicians" (PH 025785-94 at 025785, 025793)).

[5] Ex. 2 (Trial Tr. Day 5 at 14 (Buckanavage) ("Q:  And so you felt that AstraZeneca had the ability to set its own AWP, correct?  A:  At that time we submitted those prices to the pricing services."), and at 34:3-9 ("THE WITNESS:  At that time we reported both to the pricing services.  THE COURT:  You reported - THE WITNESS: Both WAC and AWP.  THE COURT:  So you decided what AWP was, not the publication?  THE WITNESS:  At that time, that's correct.")).  *See also* Ex. 3 at AZ0419345 (Document entitled Medicare Review stating that "To date, Medicare has not influenced the AWP of any medication that qualifies for reimbursement.  Companies have the latitude to set AWP as they wish.").  Once a new or revised AWP was approved, AstraZeneca would inform the Publishers.  Ex. 2 (Trial Tr. Day 5 at 17 (Buckanavage) (Q:  "Now you understood then that your AWP price would be reported by AstraZeneca to the Red Book, correct?  A:  Yes.")).  BMS did not send AWPs directly to the Publishers.  Instead, BMS sent to the Publishers a wholesale list price (WLP) or direct price, which the Publishers predictably marked up from 20% to 25% to derive the AWP.  Ex. 4 (Trial Tr. Day 4 at 55, 59 (Kaszuba)).  Kaszuba was responsible, since 1991, for communicating BMS's wholesale list prices to customers and the *Red Book, First DataBank* and *MediSpan.  Id.* at 52 (Kaszuba).  As Plaintiffs' expert opined in the Class case, there is a well understood formulaic relationship between AWP and WLP.  They are functional equivalents in that reporting either

4.      Each Defendant knew that Montana Medicaid would use those AWPs as a basis to reimburse providers.  *See supra* at n.2-4.

5.      The term "AWP," as used in governing regulations, means the average price at which wholesalers sell drugs.  *In re Pharm. Indus. Average Wholesale Price Litig.*, Memorandum and Order, at 1-2 (Nov. 2, 2006).

---

to the Publishers implies that the other price is set automatically.  "AWP and WAC [or WLP] are 'interchangeable' since the two list prices are usually related by a constant ration and convey the same information to purchasers and other entities that rely on published price data."  Ex. 5 (Direct Testimony of Raymond S. Hartman) ("Hartman Direct"), ¶ 44.  J&J predecessor CNTO knew that the Publishers would simply republish what CNTO provided them.  Ex. 6 (Deposition of Carol Webb ("Webb Dep.") at 56); *see also* Ex. 7 (where CNTO discusses "setting" the AWP, not recommending or suggesting an AWP).  OBI witnesses testified that they could not recall a single instance when the actual AWP prices provided by OBI were not published.  *See, e.g.,* Ex. 6 (Webb Dep. at 66:16-21, 67:1-8); Ex. 8 (Deposition of Thomas Hiriak ("Hiriak Dep.") (July 28, 2004) at 214:18-215:1); Ex. 9 (Deposition of Elaine Kling ("Kling Dep.") at 103:2-5, 115:21-22, 116:1-22).  Schering-Plough reported the AWPs for its branded drugs to the Publishers of pharmaceutical industry pricing guides such as *Red Book* and *Price Alert* for publication in those guides.  Ex. 10 (Deposition of Harvey J. Weintraub, February 12, 2003 ("Feb. 2003 Weintraub Dep.") at 429:23-431:1); Ex. 11 ("As you know, Pharmaceutical Manufacturers publish AWPs (Average Wholesale Prices) for reimbursement purposes.  Most manufacturers (including Schering) report AWPs at NDP [net direct price] plus 20%.").

[6] *See, e.g.,* Exs. 12 and 13 (The Fujisawa Group controlled and set the AWPs for all of its drugs through direct communications with industry compendia.  Fujisawa documents confirm Fujisawa knowledge of compendium pricing and concern about how to increase the prices published to even higher levels.) (FJ-MDL 8346) (BBMDL FJ-MDL 015152-59); Ex. 14 (Immunex used the "AWP Product Pricing guide," which listed each Immunex drug, along with its dose, NDC number and AWP per *Red Book*) (IAWP112178-81); Ex. 15 (Immunex periodically provided Pricing Guides to the Publishers or otherwise Provided AWPs) (IAWP002632; IAWP109826); Ex. 16 (SICOR 00753-57, SICOR 02259-65, SICOR 00885-903; SICOR 00947-48, SICOR 00955-58, SICOR 00962, SICOR 00982-83, SICOR 00987-88); Ex. 17 (BAY005278); Ex. 18 (Armour Pharmaceutical circulates AWPs list sent to *First DataBank* and states that listing AWPs was "consistent with industry practice.") (ABAWP 005005-11); Ex. 19 (Armour Pharmaceutical send pricing update, including AWPs, to *Red Book*) (ABAWP005163-71); Ex. 20 (Centeon reporting price changes to *First DataBank*) (ABAWP 008440); Ex. 21 (2003 email string with price list submitted to publishers) (EDEY-LABS-0022217-22); Ex. 22 (2003 email, Dey writes: "[A]s a reminder, we (the Contracts Dept.) sends WAC & AWP information on all our products to First Databank (FDB).  Every month we receive a report from FDB that lists all our products and their AWP.  So far (within the last 3 months), I have not found any discrepancies with the prices being reported by FDB in our report and our published AWP.") (EDEY-LABS 0022187-93); Ex. 23 (Pharmacia chart reflecting Pharmacia & Upjohn reporting of AWP information to publishers) (PH 025785-94 at PH 025792).  *See also* Ex. 36, ¶ 6 (Aventis, Inc.); Ex. 37, ¶ 6 (Aventis Berhing); Ex. 38, ¶¶ 6, 366 (BMS); Ex. 54 (Dey Answer to Mont. SAC (Dkt. No. 919), ¶ 388); Ex. 39 ¶¶ 6, 412 (Fujisawa); Ex. 55 (Immunex Answer to Mont. SAC (Dkt. No. 899), ¶¶ 5, 6); Ex. 40, ¶ 6, 438 (J&J); Ex. 56 (Schering-Plough Answer to Mont. SAC (Dkt. No. 901), ¶¶ 6, 534); Ex. 44, ¶ 6 (Sicor).

6.      The AWPs each Defendant caused to be published for each of their subject drugs were neither averages nor a price at which wholesalers sell drugs. [7]

7.      Defendants knew that the AWPs they caused to be published were neither averages nor a price at which wholesalers sell drugs, but allowed them to be published anyway. *See supra* at n.7.

All documents and deposition testimony supporting this Local Rule 56.1 Statement of Undisputed Material Facts in Support of the State of Montana's Motion for Partial Summary Judgment are identified in the State's Memorandum in Support of Motion for their Partial Summary Judgment and have been submitted therewith, and these references and source materials are expressly incorporated herewith.  In particular, all record cites are identified in Section II of Montana's Memorandum in Support of their Motion for Partial Summary Judgment, and all documents and deposition testimony are submitted as exhibits to the Breckenridge Declaration.  Rather than unnecessarily magnify the already substantial pile of paper on file in this case, that State of Montana has not burdened the Court with a duplication of the record identified and attached in the pleadings submitted herewith.

---

[7] *See, e.g,* Plaintiffs' Post-Trial Proposed Findings of Fact ("PFOF") (Dkt. No. 3553) where Plaintiffs submitted facts supporting a finding that each of the Defendant's AWPs were false in that they did not include relevant discounts nor reflect an average.  *See e.g.*, PFOF, ¶¶ 40-44 (AZ knew that its AWP was a fictitious number); ¶¶ 45-47 (AZ refrained from making AWP a meaningful number); ¶¶ 130-53 (BMS's AWPs for its subject drugs were false in that they did not include relevant discounts or reflect an average); ¶¶ 191-97 (J&J did not include discounts in its reported AWP and did not report an actual average); ¶¶ 198-201 (J&J manipulated its pricing to create a spread); ¶¶ 202-73, 289-347 (the Schering-Plough Group's AWPs for its subject drugs did not include relevant discounts nor reflect an average).  The State incorporates by reference these sections of the PFOF and rely on them in support of their Motion for Partial Summary Judgment.  The fact that the AWPs were neither averages nor prices paid by wholesalers is also supported by the reports of Dr. Raymond S. Hartman Ex. 53 (Calculation of Damages and Penalties for the State of Montana – Supplementary Declaration of Raymond S. Hartman ("Hartman Supp. Rpt.") at p. 1).

By_____/s/ Steve W. Berman_____          DATED:  February 8, 2007
    Steve W. Berman
    Sean R. Matt
    Jeniphr A.E. Breckinridge
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Thomas M. Sobol
    Edward Notargiacomo
    HAGENS BERMAN SOBOL SHAPIRO LLP
    One Main Street, 4th Floor
    Boston, MA  02142
    Telephone: (617) 482-3700
    Facsimile: (617) 482-3003

    Mike McGrath
    Attorney General of Montana
    Ali Bovingdon
    Assistant Attorney General
    Justice Building
    215 North Sanders
    P.O. Box 201401
    Helena, MT  56920-1402
    (406) 444-2026

    COUNSEL FOR PLAINTIFF
    STATE OF MONTANA

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **THE STATE OF MONTANA'S L.R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CERTAIN DEFENDANTS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 8, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By        **/s/ Steve W. Berman**
        Steve W. Berman
        **HAGENS BERMAN SOBOL SHAPIRO LLP**
        1301 Fifth Avenue, Suite 2900
        Seattle, WA  98101
        (206) 623-7292