# Tab A-3

**CORPORATE INTEGRITY AGREEMENT
BETWEEN THE OFFICE OF INSPECTOR GENERAL
OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND
BAYER CORPORATION**

## I.   PREAMBLE

Bayer Corporation ("Bayer") hereby enters into this Corporate Integrity

Agreement ("CIA") with the Office of Inspector General ("OIG") of the United States

Department of Health and Human Services ("HHS") to promote compliance by officers,

directors, employees, contractors (subject to Bayer's control) and agents of the Bayer

Pharmaceutical Division who are involved in the contracting for, or marketing, selling or

reporting the price of products that are reimbursed by Medicare, Medicaid and all other

Federal health care programs (as defined in 42 U.S.C. § 1320a7b(f)) (hereinafter

collectively referred to as the "Federal health care programs") with the requirements of

those Federal health care programs.  All persons identified in the preceding sentence shall

collectively be referred to as the "Covered Persons."[1]  If during the term of this CIA, any

Bayer division or affiliate (defined as an entity controlled by Bayer) besides, or in

addition to, the Pharmaceutical Division becomes involved in the contracting for,

---

[1] Specifically excluded from the definition of "Covered Persons" are the marketing, sales or
other personnel of firms with which Bayer has agreements to co-promote its products.  Bayer
shall, however, in good faith seek to obtain assurances that such personnel have received
appropriate training on proper marketing and sales techniques.  The term "Covered Persons"
specifically includes all other personnel, apart from those acting under co-promotion agreements,
who comprise Bayer's contract sales force.

A. **Compliance Officer and Committee.** Within sixty (60) days of the Effective Date of this CIA, Bayer Pharmaceutical Division shall appoint an individual to serve as its Compliance Officer. That person shall be responsible for developing and implementing policies, procedures, and practices designed to ensure compliance with the requirements set forth in this CIA and with the requirements of the Federal health care programs. The Compliance Officer shall be a member of senior management of the Bayer Pharmaceutical Division, shall make periodic (at least quarterly) reports regarding compliance matters directly to the President of the Pharmaceutical Division and shall be authorized to report on such matters to the Chief Executive Officer and the Board of Directors of Bayer at any time. The Compliance Officer shall be responsible for monitoring the day-to-day compliance activities engaged in by Bayer Pharmaceutical Division as well as any reporting obligations created under this CIA.

Any change in the identity or position description of the Compliance Officer, or any actions or changes that would affect the Compliance Officer's ability to perform the duties necessary to meet the obligations in this CIA, must be reported to OIG, in writing, within fifteen (15) days of such a change.

Bayer Pharmaceutical Division shall also appoint a Compliance Committee within sixty (60) days of the Effective Date of this CIA. The Compliance Committee shall, at a minimum, include the Compliance Officer and any other members of senior management of the Pharmaceutical Division necessary to meet the requirements of this CIA (e.g., senior executives of each major department, such as Contracting, Sales, Marketing,

Human Resources and Internal Audit). The Compliance Officer shall chair the Compliance Committee and the Committee shall support the Compliance Officer in fulfilling his/her responsibilities (e.g., shall assist in the analysis of the Pharmaceutical Division's risk areas and shall oversee monitoring of internal and external compliance audits and investigations).

Any changes in the composition of the Compliance Committee, or any actions or changes that would affect the Compliance Committee's ability to perform the duties necessary to meet the obligations in this CIA, must be reported to OIG, in writing, within fifteen (15) days of such a change.

B. Written Standards.

1. *Code of Conduct.* Within ninety (90) days of the Effective Date of this CIA, Bayer Pharmaceutical Division shall establish a Code of Conduct. The Code of Conduct shall be distributed to all Covered Persons within one-hundred-twenty (120) days of the Effective Date of this CIA. Bayer Pharmaceutical Division shall make the promotion of, and adherence to, the Code of Conduct an element in evaluating the performance of all employees. The Code of Conduct shall, at a minimum, set forth:

    a. Bayer Pharmaceutical Division's commitment to full compliance with all Federal health care program requirements, including its commitment to report prices for and market its drug and biologic products for which the Federal health care programs provide reimbursement ("Government

Reimbursed Products") in accordance with Federal health care program requirements;

b. Bayer Pharmaceutical Division's requirement that all of its Covered Persons shall be expected to comply with all Federal health care program requirements and with Bayer's Pharmaceutical Division's own Policies and Procedures as implemented pursuant to Section III.B.2 (including the requirements of this CIA);

c. the requirement that all Covered Persons shall be expected to report to the Compliance Officer or other individual designated by Bayer Pharmaceutical Division any suspected violations of any Federal health care program requirements or of Bayer Pharmaceutical Division's own Policies and Procedures;

d. the potential consequences to both Bayer and to Covered Persons of failure to comply with all Federal health care program requirements and with Bayer Pharmaceutical Division's own Policies and Procedures or of failure to report such noncompliance; and

e. the right of all individuals to use the Confidential Disclosure Program described in Section III.F, and Bayer's commitment to maintain confidentiality, as appropriate, and non-retaliation with respect to disclosures.

Within one-hundred twenty (120) days of the Effective Date of the CIA, each Covered Person shall certify, in writing or in electronic form, that he or she has received, read, understood, and will abide by Bayer Pharmaceutical Division's Code of Conduct. New Covered Persons shall receive and complete the required certification within two (2) weeks after becoming a Covered Person or within one-hundred twenty (120) days of the Effective Date of the CIA, whichever is later.

Bayer Pharmaceutical Division will annually review the Code of Conduct to determine if revisions are appropriate and shall make any necessary revisions based on such a review. Any such revised Code of Conduct shall be distributed within thirty (30) days of finalizing such changes. Covered Persons shall certify that they have received, read, understood and will abide by the revised Code of Conduct within thirty (30) days after distribution of such revisions.

2. *Policies and Procedures*. Within one-hundred twenty (120) days of the Effective Date of this CIA, Bayer Pharmaceutical Division shall implement written Policies and Procedures regarding the operation of its compliance program and its compliance with all of the Federal health care program requirements. At a minimum, the Policies and Procedures shall specifically address: 1) the subjects relating to the Code of Conduct identified in Section III.B.1; 2) the need to report accurate prices, including proper accrual determinations (based on reasonable assumptions that are regularly reviewed and for which appropriate adjustments are made, if necessary) for Government Reimbursed Products to the Health Care Financing Administration ("HCFA"), the State

Medicaid programs and all drug price reporting services on which government agencies rely; and 3) the requirements for marketing, selling and distributing Government Reimbursed Products in accordance with all applicable requirements of the Federal health care programs.

Within one-hundred twenty (120) days of the Effective Date of the CIA, the relevant portions of the Policies and Procedures shall be distributed to all Covered Persons. Bayer Pharmaceutical Division shall make available appropriate and knowledgeable staff to explain the Policies and Procedures.

At least annually (and more frequently if appropriate) Bayer Pharmaceutical Division shall assess and update as necessary the Policies and Procedures. Within thirty (30) days of the Effective Date of any revisions, the relevant portions of any such revised Policies and Procedures shall be distributed to all Covered Persons whose job functions are related to those Policies and Procedures.

C. Training and Education.

1. *General Training.* Within one-hundred twenty (120) days of the Effective Date of this CIA, Bayer Pharmaceutical Division shall make its best efforts to provide at least three (3) hours of general training to each Covered Person. In the event that the Pharmaceutical Division is unable to complete the training within one hundred and twenty (120) days of the Effective Date of this CIA, it shall complete such training by no later than one hundred and fifty (150) days of the Effective Date. If any Covered Person has not completed the general training within this time period, a Covered Person

7

who has completed the general training shall review all of the untrained person's work in the area of contracting for, marketing, selling or reporting the price of products that are reimbursed by Federal health care programs until that untrained person receives training. This general training shall explain:

a. Bayer's Corporate Integrity Agreement requirements;

b. Bayer Pharmaceutical Division's Compliance Program (including the Policies and Procedures as they pertain to general compliance issues);

c. the proper methods of marketing and selling Government Reimbursed Products in accordance with applicable requirements of Federal heath care programs;

d. the personal obligation of each individual involved in marketing and sales of Government Reimbursed Products to ensure that those products are marketed and sold in accordance with all applicable requirements of the Federal health care programs; and

e. applicable legal rules (including the sanctions for violations) relating to Government Reimbursed Products (including, but not limited to, the Anti-kickback Statute, 42 U.S.C. § 1320a-7b(1) and (2); the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Civil False Claims Act, 31 U.S.C. §§ 3729-3733; and the Medicaid Rebate Statute, 42 U.S.C. § 1396r-8)).

8

New Covered Persons shall receive the general training described above within thirty (30) days of becoming a Covered Person or within one-hundred twenty (120) days after the Effective Date of this CIA, whichever is later.  If any new Covered Person has responsibility for contracting for, marketing, selling or reporting the price of Government Reimbursed Products prior to completing the general training, a Covered Person who has completed the general training shall review the untrained person's work in those areas. After receiving the initial training described above, each Covered Person shall receive at least one hour of general training annually.

2. *Specific Training*.  Within one-hundred twenty (120) days of the Effective Date of this CIA, each Covered Person who has direct responsibility for establishing or reporting prices for Government Reimbursed Products or sets policy for or supervises the marketing and sales of Government Reimbursed Products ("Relevant Covered Persons") shall receive at least two hours of specific training in addition to the general training required above.  This training shall include a discussion of:

> a.  the reporting of accurate pricing information to HCFA, the State Medicaid Programs and drug price reporting services for Government Reimbursed Products;
>
> b.  the personal obligation of each individual involved in the drug price reporting process to ensure that prices are accurately reported; and
>
> c.  examples of proper and improper drug price reporting and marketing/sales practices.

9

Relevant Covered Persons shall receive this specific training within thirty (30) days of becoming a Relevant Covered Person or within one hundred twenty (120) days of the Effective Date of this CIA, whichever is later. If a new Relevant Covered Person has any responsibility for the reporting of drug pricing information or the marketing/sales of Government Reimbursed Products prior to completing this specific training, a Relevant Covered Person who has completed the specific training shall review all of the untrained person's work in these areas.

After receiving this initial training described in this section, every Relevant Covered Person shall receive at least two (2) hours of specific training annually.

3. *Certification.* Each individual who is required to attend training shall certify, in writing (or in electronic form if the training is computerized) that he or she has received the required training. The certification shall specify the type of training received and the date received. The Compliance Officer (or his or her designee) shall retain the certifications, along with specific course materials. These shall be made available to OIG upon request.

4. *Training Methodology.* Persons designing and providing all training required under this section III.C. must be knowledgeable about the subject areas of the training. Bayer Pharmaceutical Division may provide the training required under this CIA through appropriate web-based approaches. In that event, all references to "hours" in this section III.C. shall mean "normative hours" as that term is used in the computer-based training industry. If Bayer Pharmaceutical Division chooses to provide web-based

training, it shall also make available appropriately qualified and knowledgeable  staff to answer questions or provide additional information to the Covered Persons who are receiving such training.

D. Reporting Requirements.

1. *General Statement of Purpose and Intent.*  On a quarterly basis, Bayer Pharmaceutical Division shall report to the entities identified below in Section III.D.2.b. certain pricing information, as specified below in Section III.D.2.a, for the purpose of furnishing those entities with true pricing information that accurately reflects prices at which actual purchasers buy the Government Reimbursed Products sold by Bayer.  Bayer understands that this information may be relied upon by State government entities in establishing Medicaid reimbursement rates for the Government Reimbursed Products.

2. *Specific Reporting Requirements.*

a) *Average Sale Price Defined:*

For purposes of this CIA, "average sale price" means, with respect to each dosage form, strength and volume of the drug or biologic product (without regard to any special packaging, labeling, or identifiers on the dosage form or product or package) the average of all final sales prices charged by Bayer for the drug or biologic product in the United States to all purchasers, excluding those sales exempt from inclusion in the calculation of "Best Price" for Medicaid Rebate purposes, pursuant to 42 U.S.C. § 1396r-8, and direct sales to hospitals.   The prices identified in the calculation of the average sale price should be net of all the following: volume discounts; prompt pay discounts; cash discounts;

11

chargebacks; short-dated product discounts; free goods; rebates,[2] and all other price concessions provided by Bayer to any relevant purchaser, as earlier defined in this paragraph, that result in a reduction of the ultimate cost to the purchaser. Notwithstanding the foregoing, the average sale price shall not include the value of bona fide charity care or grants.

Bayer Pharmaceutical Division shall report the average sale price by National Drug Code ("NDC") for each Government Reimbursed Product identified by Bayer's NDC. The average sale price reported shall be properly weighted to reflect the volume of sales at each sale price, *i.e.*, for each NDC, the price reported shall be an average per unit price determined by dividing the sum of all final prices charged by Bayer, net of all price reductions identified above, for a drug or biologic product in a quarter by the total number of units of that drug or biologic product sold in that quarter.

**b)** *Reporting Obligations for Government Reimbursed Products:*

Except as otherwise noted below, thirty (30) days after the last day of each calendar quarter, Bayer Pharmaceutical Division shall report, in accordance with Section III.D.2.a above, the average sale prices of each of its Government Reimbursed Products identified by Bayer's NDC to: 1) the Medicaid programs of those States who have executed a state settlement agreement with Bayer; 2) to First DataBank Inc.[3] solely for the

---

[2] The term "rebate" as used in this paragraph does not include any payments made by Bayer to the States pursuant to the Medicaid Rebate Program (42 U.S.C. § 1396r-8).

[3] If appropriate to reflect changes in the sources from which the State Medicaid programs

(continued...)

purpose of reporting pricing information based on those average sale prices to the Medicaid Programs of those States that have executed a state settlement agreement; 3) and to the OIG. The first such report of average sale prices shall be made by February 28, 2001, or fifteen (15) days after the Effective Date of this CIA, whichever is later. With respect to the Qui Tam Drugs,[4] Bayer Pharmaceutical Division shall not report an Average Wholesale Price ("AWP") to First DataBank, or any other reporting service, to be used for purposes of setting Medicaid reimbursement prices for the Qui Tam Drugs and Bayer shall expressly inform such reporting services to this effect. This restriction shall not limit Bayer's ability to report AWP information for the Qui Tam Drugs to any price reporting service for uses unrelated to Medicaid, or Bayer's ability to report AWP information for any purposes for drugs or biologic products other than the Qui Tam Drugs.

### c) *Certification Requirement:*

In connection with each report of average sale price, Bayer Pharmaceutical Division shall also provide the OIG and the applicable States a detailed description of the

---

(...continued)
received their pricing information, Bayer agrees that, upon the receipt of a written request by any of the States, it will report the required information to a drug pricing reporting source other than, and in addition to First DataBank, subject to reasonable provisions equivalent to those agreed to by First Data Bank to ensure the confidentiality of that information.

[4] The Qui Tam Drugs, as defined in the Settlement Agreement incorporated herein by reference, are: Koate-HP Antihemophilic Factor (Human), Kogenate Antihemophilic Factor (Recombinant), Konyne-80 Factor IX Complex (Human), Gamimune N, 5% Immune Globulin Intravenous (Human 5%), Gamimune N, 10% Immune Globulin Intravenous (Human, 10%), and Thrombate III (Antithrombin III, Human).

methodology used to calculate the average sale prices. A high managerial agent of Bayer Pharmaceutical Division will certify that the average sale prices reported with the certification are calculated in accordance with the described methodology. Said certifications shall be made in form attached hereto as Attachment A and shall include an acknowledgment that the average sale prices reported will be filed with and used in the administration of the Medicaid programs. To the extent that Bayer's methodology involves accruing for the impact of future events, Bayer shall include a description of its accrual methodology, including underlying assumptions, in its certification, and shall, on a quarterly basis, evaluate such accrual methodology in light of its actual experience and make any appropriate adjustments.

### d) *Confidentiality of Reported Information:*

It is understood that Bayer considers the average sale price information and the methodology by which it is calculated to be confidential commercial information and proprietary trade secrets that if disclosed would cause substantial injury to the competitive position of Bayer.

### e) *Document Retention:*

Bayer Pharmaceutical Division shall retain all work papers and supporting documentation relating to the average sale price of its drugs for six years after the Effective Date of this CIA and shall make such documentation available for inspection by

14

the OIG or its duly authorized representative(s) in accordance with the provisions set forth more fully below in section VII of this CIA.

E. Review Procedures.

1. *General Description.*

a. *Retention of Independent Review Organization.* Bayer shall retain an entity (or entities), such as an accounting, auditing or consulting firm (hereinafter "Independent Review Organization" or "IRO"), to perform procedures to assist Bayer in assessing and evaluating its drug price reporting and compliance practices pursuant to this CIA. Each Independent Review Organization must have expertise in auditing and the requirements of the Federal health care programs as they relate to the reimbursement and marketing/sales of Government Reimbursed Products. The Independent Review Organization(s) must be retained to conduct the engagements described below for the first year within ninety (90) days of the Effective Date of this CIA. Each IRO shall assess, along with Bayer, whether it can perform the IRO engagements in a professionally independent fashion taking into account any other business relationships or other engagements that may exist.

b. *Types of and Frequency of Engagements.* The Independent Review Organization(s) will conduct two separate engagements. One engagement shall be to conduct procedures with regard to Bayer Pharmaceutical Division's drug price reporting practices ("Drug Price Reporting Engagement"). The second engagement will be to conduct procedures with regard to whether Bayer is in compliance with this CIA

15

("Compliance Engagement"). The Drug Price Reporting Engagement shall be performed annually and shall cover each of the one-year periods beginning with the Effective Date of the CIA. The Compliance Engagement shall be performed by the IRO for the first one-year period beginning with the Effective Date of the CIA.

c. *Retention and Submission of Records.* A complete copy of the Independent Review Organization's Drug Price Reporting Report for each year of the CIA and, for the first year of the CIA only, the IRO's Compliance Engagement Report, shall be included in Bayer's Annual Reports to OIG. The IRO and Bayer shall retain and make available to the OIG upon request all work papers, supporting documentation, correspondence, and draft reports that are exchanged between the IRO and Bayer relating to the engagements.

2. *Drug Price Reporting Engagement.* The Drug Price Reporting Engagement, shall be composed of two separate sets of procedures, "Reported Prices Procedures" and "Systems Procedures", both of which are described in detail in Attachment B to the CIA. Prior to conducting the Drug Price Reporting Engagement, the IRO may submit its workplan(s) to the OIG for comment. However, any comments or recommendations made by the OIG in connection with a review of the workplan will not preclude the OIG from making further comments or recommendations after reviewing the Drug Price Reporting Engagement Report.

3. *Compliance Engagement.* The IRO shall conduct an engagement regarding Bayer's compliance activities under which it shall perform procedures designed to assist in determining Bayer's compliance with the obligations set forth in sections I through

16

VIII of this CIA.  The IRO shall prepare a report based upon the Compliance Engagement

performed (the "Compliance Engagement Report"), which shall include the IRO's

findings, supporting rationale, and a summary of such findings and rationale regarding

Bayer's compliance with the terms sections I through VIII of the CIA, as applicable.

    4. *Verification/Validation.*  In the event that the OIG has reason to believe that:

(a) Bayer's Drug Price Reporting or Compliance Engagement fails to conform to the

requirements of this CIA, or (b) the findings of the reports from these engagements are

inaccurate, the OIG may, at its sole discretion, conduct its own review to determine

whether the Drug Price Reporting Engagement and Compliance Engagement comply with

the requirements of the CIA and/or the reported findings are inaccurate.  Bayer agrees to

pay for the reasonable cost of any such review performed by the OIG or any of its

designated agents so long as it is initiated before one year after the Final Annual Report

or any additional materials requested by the OIG as described in section II.  Prior to

proceeding with such an independent review, the OIG shall notify Bayer of its intent to do

so and its reasons for believing such a review is necessary, and shall in good faith attempt

to resolve any Drug Price Reporting or Compliance Engagement issues without

proceeding with an independent review.  However, it shall remain in the sole discretion of

the OIG to proceed with an independent review as described above.

    5. *Independence Certification.*  The IRO(s) shall include in its report(s) to Bayer

a certification or sworn affidavit that it has: 1) evaluated its professional independence

with regard to the Drug Price Reporting and Compliance Engagements (in accordance

with the independence standards of its industry/profession);  and 2) concluded that it was, in fact, independent.

F.  **Confidential Disclosure Program.** Within one-hundred twenty (120) days after the Effective Date of this CIA, Bayer Pharmaceutical Division shall establish a Confidential Disclosure Program, which must include a mechanism (e.g., a toll-free compliance telephone line) to enable individuals to disclose, to the Compliance Officer or some other person who is not in the disclosing individual's chain of command, any identified issues or questions associated with Bayer's policies, practices or procedures with respect to any Federal health care programs, believed by the individual to be a potential violation of criminal, civil or administrative law.  Bayer Pharmaceutical Division shall publicize the existence of the confidential disclosure mechanism (e.g., via periodic e-mails to employees or by posting the information in prominent common areas).

The Confidential Disclosure Program shall emphasize a non-retribution, non-retaliation policy, and shall include a reporting mechanism for anonymous, confidential communications. Upon receipt of a disclosure, the Compliance Officer (or designee) shall make a preliminary good faith inquiry into the allegations set forth in every disclosure to ensure that he or she has obtained all of the information necessary to determine whether a further review should be conducted.  For any disclosure that is sufficiently specific so that it reasonably:  (1) permits a determination of the appropriateness of the alleged improper practice, and (2) provides an opportunity for taking corrective action, Bayer

Pharmaceutical Division shall conduct an internal review of the allegations set forth in such a disclosure and ensure that proper follow-up is conducted.

The Compliance Officer (or his or her designee) shall maintain a confidential disclosure log, which shall include a record and summary of each allegation received, the status of the respective investigations, and any corrective action taken in response to the internal reviews. The confidential disclosure log shall be available to the OIG upon request.

G. <u>Ineligible Persons.</u>

1. *Definition.* For purposes of this CIA, an "Ineligible Person" shall be any individual or entity who: (a) is currently excluded, suspended, debarred or otherwise ineligible to participate in the Federal health care programs or in Federal procurement or non-procurement programs; or (b) has been convicted of a criminal offense that falls within the ambit of 42 U.S.C. § 1320a-7(a), but has not yet been excluded, debarred, or otherwise declared ineligible.

2. *Screening Requirements.* Bayer Pharmaceutical Division shall not hire or engage as a Covered Person any Ineligible Person. To prevent hiring or engaging any Ineligible Person, Bayer Pharmaceutical Division shall screen all prospective Covered Persons prior to engaging their services by: (a) requiring applicants to disclose whether they are Ineligible Persons, and (b) reviewing the General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.arnet.gov) and the HHS/OIG List of Excluded Individuals/Entities (available

19

through the Internet at http://www.hhs.gov/oig) (these lists will hereinafter be referred to
as the "Exclusion Lists").

      3. *Review and Removal Requirement.*  Within one hundred twenty (120)
days of the Effective Date of this CIA, Bayer Pharmaceutical Division will review its list
of current Covered Persons against the Exclusion Lists.  Thereafter, Bayer
Pharmaceutical Division shall review its list of Covered Persons against the Exclusion
Lists once annually.  In addition, Bayer Pharmaceutical Division shall require Covered
Persons to disclose immediately any debarment, exclusion or other event that makes the
individual an Ineligible Person.

      If Bayer Pharmaceutical Division has notice that a Covered Person has become an
Ineligible Person, it will remove such person from responsibility for, or involvement with,
Bayer Pharmaceutical Division's business operations related to the Federal health care
programs and shall remove such person from any position for which the person's salary
or any items or services rendered, ordered, or prescribed by the person are paid in whole
or part, directly or indirectly, by Federal health care programs or otherwise with Federal
funds at least until such time as the person is reinstated into participation in the Federal
health care programs.

      4. *Pending Charges and Proposed Exclusions.*  If Bayer Pharmaceutical
Division has notice that a Covered Person is charged with a criminal offense related to
any Federal health care program, or is proposed for exclusion during his or her
employment or engagement, Bayer Pharmaceutical Division shall take all appropriate

actions to ensure that the responsibilities of that individual shall not adversely affect the accuracy of any claims for reimbursement submitted to any Federal health care program.

H. **Notification of Government Investigation or Legal Proceedings.**  Within thirty (30) days of discovery, Bayer shall notify OIG, in writing, of any ongoing investigation or legal proceeding conducted or brought by a governmental entity or its agents involving an allegation that Bayer Pharmaceutical Division has committed a crime or has engaged in fraudulent activities or that Bayer has committed a crime or engaged in fraudulent activities relating to the Federal health care programs.  This notification shall include a description of the allegation, the identity of the investigating or prosecuting agency, and the status of such investigation or legal proceeding.  Bayer shall also provide written notice to OIG within thirty (30) days of the resolution of the matter, and shall provide OIG with a description of the findings and/or results of the proceedings, if any.

IV.    **NEW BUSINESS UNITS OR LOCATIONS**

In the event that, after the Effective Date of this CIA, Bayer changes locations or purchases or establishes new business units engaged in the contracting for, marketing, sales or price reporting of Government Reimbursed Products, Bayer shall notify OIG of this fact as soon as possible, but no later than within thirty (30) days of the date of change of location, purchase or establishment.  This notification shall include the location of new operation(s), phone number, fax number, Federal health care program provider number(s) (if any), and the corresponding contractor's name and address that has issued each such provider number.  All Covered Persons at such locations shall be subject

21

to the applicable requirements in this CIA (e.g., completing certifications and undergoing training). Bayer shall use its best efforts to implement the requirements of this CIA in new business units or locations that participate in any Federal health care program as soon as practicable. Notwithstanding any other provisions to the contrary, the price reporting requirements of Section III.D of this CIA shall not become effective for new business units or locations until six (6) months after the purchase or establishment of such new business units or locations.

V.    IMPLEMENTATION AND ANNUAL REPORTS

    A. Implementation Report.

        Within one hundred and fifty-five (155) days after the Effective Date of this CIA, Bayer shall submit a written report to OIG summarizing the status of its implementation of the requirements of this CIA. This Implementation Report shall include:

        1. the name, address, phone number and position description of the Compliance Officer required by section III.A;

        2. the names and positions of the members of the Compliance Committee required by section III.A;

        3. a copy of the Code of Conduct required by section III.B.1;

        4. a summary of the Policies and Procedures required by section III.B.2;

        5. a copy of training materials used for the training required by section III.C, a description of such training programs, and a summary of the