# Exhibit B

HIGHLY CONFIDENTIAL

# EXPERT DECLARATION OF STEVEN J. YOUNG IN SUPPORT OF THE FOLLOWING TRACK 2 DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION:

ABBOTT LABORATORIES, AMGEN INC., AVENTIS PHARMACEUTICALS INC., BAXTER HEALTHCARE CORP., BAXTER INTERNATIONAL INC., BAYER CORPORATION, DEY, INC., FUJISAWA HEALTHCARE INCORPORATION, FUJISAWA USA, INC., HOECHST MARION ROUSSEL, INC., IMMUNEX CORPORATION, PFIZER, INC., PHARMACIA CORP., PHARMACIA & UPJOHN, AND AVENTIS BERING LLC, N/K/A ZLB BEHRING LLC.

JUNE 15, 2006

[REDACTED VERSION]

Subject To Protective Order

**HIGHLY CONFIDENTIAL**

# TABLE OF CONTENTS

Page

QUALIFICATIONS AND COMPENSATION ................................................................. 1
SCOPE OF REPORT ............................................................................................................ 1
SUMMARY OF OPINIONS .................................................................................................. 3
    I.    REIMBURSEMENT OF MULTI-SOURCE DRUGS ............................................... 4
    II.    PROPOSED CLASS 1 ........................................................................................................ 5
    III.    PROPOSED CLASS 2 ........................................................................................................ 6
    IV.    PROPOSED CLASS 3 ........................................................................................................ 6
ANALYSIS ................................................................................................................................ 8
    I.    MULTI-SOURCE DRUGS AND THEIR REIMBURSEMENT UNDER MEDICARE PART B ............................................................................................. 8
        A.    Regulatory Background ........................................................................................... 8
        B.    Multi-Source Drug Reimbursement Under Medicare Part B ......... 10
    II.    PROPOSED CLASS 1 ........................................................................................................ 15
        A.    The Vast Majority Of The Named Plaintiffs' Drug Encounters Do Not Meet The Proposed Class Definition Because They Were Not Paid Based On The AWP For The Subject Drug Identified For The Track 2 Defendant ............................................. 15
            1.    The Encounter Relates To Inpatient Hospital Stay And Is Reimbursed Under Medicare Part A – Any Co-Payment Was Not Based On The AWP Of The Subject Drug ......................................................... 15
            2.    The Encounter Was Reimbursed Under Medicare Part B After The Implementation Of ASP In 2005 – Any Co-Payment Was Not Based On The AWP Of The Subject Drug ................................................. 16
            3.    The Encounter Was Reimbursed Under The Medicare Hospital Outpatient Prospective Payment System (Hospital OPPS) – Any Co-Payment Was Not Based On The AWP Of The Subject Drug ................................... 17
            4.    The Plaintiff Either Paid Nothing For The Subject Drug, Or Any Payment Made By The Plaintiff Was Not Based On The AWP For The Subject Drug ....................... 19

**HIGHLY CONFIDENTIAL**

**TABLE OF CONTENTS**
(continued)

Page

|     |    |    |                                                                                                                                                                                                                                    |
| --- | -- | -- | --- |
|     |    | 5. | The Encounter Involved A Multi-Source Drug, And Reimbursement For The Multi-Source Drug Was Not Based On The AWP For The Subject Drug ...................... 22 |
|     |    | 6. | For The Remaining 6% There Is Conflicting Information Regarding Supplemental Insurance and Medicare Coverage For the Subject Drug ........................ 24 |
|     | B. |    | A Plaintiff-By-Plaintiff Assessment For Class 1 Confirms That 4 of the 6 Proposed Class Representatives Are Not Members Of The Proposed Class Because They Did Not Pay For A Subject Drug Identified For A Track 2 Defendant Based On AWP ................................................... 26 |
| III. |   |    | PROPOSED CLASS 2 ................................................................. 33 |
|     | A. |    | Class Definition and Overall Class Characteristics ...................... 33 |
|     | B. |    | The Vast Majority Of The Named Plaintiffs' Drug Encounters Do Not Meet The Proposed Class Definition For Class 2 Because They Were Not Paid Based On the AWP For the Subject Drug Identified For The Track 2 Defendant ...................... 35 |
| IV. |   |    | PROPOSED CLASS 3 ................................................................. 37 |
|     | A. |    | Class Definition and Overall Class Characteristics ...................... 37 |
|     | B. |    | The Variability Between TPPs Requires A TPP-By-TPP Analysis For Each Proposed Class 3 Plaintiff ............................. 39 |
|     |    | 1. | Massachusetts TPPs Are Typically Large And Sophisticated Organizations With Significant Knowledge Of Drug Acquisition Cost ............................... 40 |
|     |    | 2. | TPPs Possess Competitive Leverage .............................. 41 |
|     |    | 3. | TPP Drug Reimbursements Cannot Be Considered In Isolation Due To Cross-Subsidization .............................. 42 |
|     |    | 4. | Health And Welfare Funds Obtain The Benefit Of The TPP's Network Contracts And The Related Fee Schedule Structures ................................................... 43 |
|     |    | 5. | Summary Of TPP-By-TPP Issues .................................... 46 |
|     | C. |    | Individual Issues That Must Be Assessed Within Each TPP ........ 46 |
|     | D. |    | Conclusion Regarding The Proposed Class 3 ............................. 47 |

**HIGHLY CONFIDENTIAL**

## QUALIFICATIONS AND COMPENSATION

1. I have been a consultant to the health care industry for more than twenty years. I have substantial experience with health insurance reimbursement, claims processing, pharmaceutical pricing and distribution channels, and Government pricing in the health care industry. I have previously outlined my experience and qualifications ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Exhibit 2a of that Declaration. In addition, I have provided an updated summary of my recent testimony in Exhibit 1a of this report. To the extent my opinions have been addressed in previous expert reports ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will reference those reports and not repeat that information in this report. A true and correct copy of the materials cited here in is submitted with this Declaration.

2. I have been retained by counsel for the defendants and am being compensated at an hourly rate of $475. No portion of my compensation depends upon the nature of my findings or on the outcome of this matter.

3. A list describing the data and information I relied upon in preparing this report is attached as Exhibit 1.

## SCOPE OF REPORT

4. I understand that the plaintiffs have asked the Court to certify the following three classes:

### Class 1: Medicare Part B Co-Payment Class

All natural persons nationwide who made, or who incurred an obligation enforceable at the time of judgment to make, a co-payment based on AWP for a Medicare Part B covered Subject Drug that was manufactured by Abbott, Amgen, The Aventis Group, Baxter, Dey, Fujisawa, Immunex, Pfizer, Pharmacia, The Sicor Group and Watson. Excluded from the class are those who made flat co-payments, who were reimbursed fully for any co-payments, or who have the right to be fully reimbursed; and the residents of the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana, and Virginia (where consumer protection statutes do not permit class actions).

The proposed Class Period for Class 1 is January 1, 1995 to January 1, 2005.

**HIGHLY CONFIDENTIAL**

## Class 2: Third-Party Payor MediGap Supplemental Insurance Class

All Third-Party Payors who made reimbursements for drugs purchased in Massachusetts, or who made reimbursements for drugs and have their principal place of business in Massachusetts, based on AWP for a Medicare Part B covered Subject Drug that was manufactured by Abbott, Amgen, The Aventis Group, Baxter, Dey, Fujisawa, Immunex, Pfizer, Pharmacia, The Sicor Group and Watson.

The proposed Class Period for Class 2 is January 1, 1995 to January 1, 2005.

## Class 3: Consumer and Third-Party Payor Class for Medicare Part B Drugs Outside of the Medicare Context

All natural persons who made or who incurred an obligation enforceable at the time of judgment to make a payment for purchases in Massachusetts, and all Third-Party Payors who made reimbursements based on AWP as a pricing standard and have their principal place of business in Massachusetts or who have made reimbursements for Medicare Part B consumers in Massachusetts, for a physician-administered Subject Drug that was manufactured by Abbott, Amgen, The Aventis Group, Bayer, Baxter, Dey, Fujisawa, Immunex, Pharmacia, The Sicor Group and Watson. Included within this class are natural persons who paid coinsurance (*i.e.*, co-payments proportional to the reimbursed amount) for a Subject Drug purchased in Massachusetts, where such coinsurance was based upon the use of AWP as a pricing standard. Excluded from this Class are any payments or reimbursements for generic drugs that are based on MAC and not AWP.

The proposed Class Period for Class 3 is January 1, 1991 to the present.

5. I was asked, in connection with Track 2 class certification proceedings, to analyze the named plaintiffs' drug encounters[1] involving Track 2 Subject Drugs[2] to determine whether each drug encounter resulted in a named plaintiff incurring an obligation to pay based on AWP for the Subject Drug as required by the class definitions.

---

[1] Throughout this report I use the term "drug encounter" to describe each time a specific Subject Drug appears associated with a named plaintiff's claim against a Track 2 Defendant based on that drug. There are often multiple drug encounters associated with a single clinic visit and reimbursement claim because more than one Subject Drug was administered during the clinic visit. I have analyzed each drug individually because different circumstances may apply to individual drugs, such as whether each drug is covered by Medicare and/or supplemental insurance, whether the drug is a single source or a multi-source drug, etc.

[2] A "Subject Drug" is a drug that has been appropriately identified by plaintiffs for a specific Track 2 Defendant in the revised Appendix A provided in the "[Proposed] Consolidated Order Re: Motion For Class Certification Track 2," and has not been stricken by this Court.

**HIGHLY CONFIDENTIAL**

6. My analysis of the named plaintiffs' drug encounters has required a detailed review of documentation for each encounter, including the Explanation of Medicare Benefits ("EOMB"), the Explanation of Benefits ("EOB") for the supplemental insurance, supplemental insurance coverage documentation, provider billings or statements, remittance advice, evidence of the source of any multi-source drugs, and other information. Each must be analyzed to determine whether the named plaintiff incurred a responsibility to pay for the encounter based on the AWP for the Subject Drug.

7. I was also asked to consider whether class treatment under the framework of the three proposed classes is feasible considering the complexity of the analysis required to determine whether any given drug encounter for a named plaintiff resulted in the named plaintiff incurring an obligation to pay based on AWP for the Subject Drug.

8. I have set forth the results of my analysis and the opinions I have formed below.

## SUMMARY OF OPINIONS

9. Whereas the drugs named for the Track 1 Defendants are primarily branded and oncology drugs, the Subject Drugs named for the Track 2 Defendants are predominately multi-source drugs administered primarily in the hospital setting ("Hospital Products"). For example, the Track 2 Subject Drugs include sodium chloride solution, also known as saline. In fact, over 70% (Class 1), over 80% (Class 2), and over 90% (Class 3) of the identified Track 2 drug encounters relate to multi-source drugs.

10. The reports issued by ▬▬▬ and myself in connection with proceedings in Track $1^3$ explain that, as a general matter, a series of individual inquiries must be undertaken, on a drug encounter by drug encounter basis, to determine whether a given drug encounter meets the definitions of a proposed class. This analysis is significantly more complex for the Track 2 Subject Drugs because, for multi-source drugs and Hospital Products, the reimbursement structures adopted by

**HIGHLY CONFIDENTIAL**

Medicare and private Third-Party Payors ("TPPs") are generally not based on the AWP for the Subject Drug due to the use of other reimbursement methods for hospitals and the use of J-codes by other providers. ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

11. My analysis of whether the various drug encounters shown in the discovery concerning the named plaintiffs meets the proposed Class definitions illustrates two important points: (1) that the vast majority of the identified drug encounters do not even fall within the proposed class definitions, which not only eliminates the named plaintiffs' claims against Track 2 Defendants, thereby eliminating them from the proposed Class, but also highlights the fundamental flaws in the proposed classes and (2) that the sheer complexity of the analysis itself suggests that it would not be feasible to afford class treatment to the claims of the named plaintiffs as they relate to Track 2 Subject Drugs.

## I.    REIMBURSEMENT OF MULTI-SOURCE DRUGS

12. The majority of the Subject Drugs named for the Track 2 Defendants are multi-source drugs. The challenges of cross-walking between J-codes and NDCs, previously identified by ████████████████ and myself, are magnified for multi-source drugs. The use of J-codes to reimburse for these drugs creates at least the following issues:

- It is not possible to identify the source of a multi-source drug based on the information available to the patient and TPP because the source of the product is not needed to reimburse the provider and is therefore not included in the documentation. As a result, it is not possible to establish that the product was purchased from a Track 2 Defendant as opposed to another non-defendant source.
- All competing sources, both defendant and non-defendant, are by definition reimbursed at the same level – making it impossible for any



**HIGHLY CONFIDENTIAL**

Moreover, while proposed Classes 1 and 2 both relate to Medicare (in which there is one uniform regulatory framework), the reimbursement structures for the proposed Class 3, which involves reimbursement outside of the Medicare context, are contractual – TPPs typically contract with Providers on behalf of their plan members.[9]

20. As a result, analysis of proposed Class 3 requires a two-pronged approach: (1) analysis of the overall reimbursement approach of the specific TPP; and (2) analysis of the same encounter specific issues involved with an assessment of Classes 1 and 2. There are a number of significant issues for Pipefitters for both levels of the analysis.

21. First, Pipefitters contracts with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to manage the care for its members and process medical benefit claims.[10] Through this arrangement, Pipefitters obtains the full benefit of ▇▇▇▇▇ negotiated fee schedules with the plan's provider network and the managed care techniques ▇▇▇▇▇ uses to control medical expenses for its customers. ▇▇▇▇▇ has had direct contracts with Track 2 Defendants for the purchase of Subject Drugs at deeply discounted prices since the mid 1990's. The role that ▇▇▇▇▇ played in the reimbursement paid by Pipefitters raises additional issues that bear on the assessment of Pipefitters as a named plaintiff which I discuss in detail later in this report.

22. Second, the discovery provided by Pipefitters was inadequate to perform the necessary transaction level analysis to determine if the identified transactions were even based on the AWP of the Subject Drug. Because of the lack of documentation provided by Pipefitters, it is not possible to perform the level of analyses I performed for the proposed Classes 1 and 2; however, I can conclude based on the analysis I have been able to complete and my experience that the vast majority of Pipefitters' claims are not within the class definition (e.g., the cited claim had no payment for the drug, the claim was paid at full charges indicating it was not reimbursed based on AWP or the claim related to a multi-source drug).



[10] See the March 8, 2006 Declaration of Charles Hannaford that states "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**HIGHLY CONFIDENTIAL**

23. It is my opinion, based on this analysis, the complexity of the analysis, and the over-riding issues associated with reimbursement for multi-source drugs (which impact the majority of these encounters) that it would not be feasible to assess the allegations in the Complaint on a class-wide basis for Track 2 Subject Drugs for the proposed Class 3.

## ANALYSIS

### I. MULTI-SOURCE DRUGS AND THEIR REIMBURSEMENT UNDER MEDICARE PART B

24. There is a critical difference between the Track 2 Subject Drugs and the Track 1 Subject Drugs. Whereas the drugs named for the Track 1 Defendants are primarily branded and oncology drugs, the drugs named for the Track 2 Defendants are predominately multi-source drugs[11] and Hospital Products. Indeed, 17 of the 21 drug J-codes[12] involved with Track 2 Subject Drug encounters identified by the proposed Class 1 plaintiffs are for multi-source drugs. Classes 2 and 3 involve yet additional multi-source drugs.

#### A. Regulatory Background

25. All competing versions of a multi-source drug are billed within the same J-code at a single reimbursement level. As a result of having all competing drugs billed within the same J-code with no ability to differentiate the source, multi-source drugs are treated differently than single-source drugs under Medicare Part B. Medicare has known of large variations in the AWP for the various sources of drugs within a given multi-source J-code.[13] In addition, Medicare has long been aware of the very large

---

[11] For purposes of this report, I consider a multi-source drug to be any drug where there are 2 or more sources (NDCs) associated with one J-Code. I use this definition for two reasons. First, the issues I have identified associated with multi-source drugs apply once there is more than one source for a drug coded under the same J-code (e.g. it is unknown which source was administered to the patient, the government or TPP must select one and only one of the different AWPs to use for the reimbursement of that J-code, and two competing sources of the drug must, by definition, be reimbursed at the same amount under that J-code). Second, Medicare recognized this approach when it implemented the Single Drug Pricer (See note 18) by including J-codes with only 2 sources in the Single Drug Pricer analysis and supporting background file.

[12] Two of the multi-source drugs did not have a J-code provided for the drug encounters put forth in the plaintiffs' discovery.

[13] See "Medicare Reimbursement of Prescription Drugs," Department of Health and Human Services Office of the Inspector General Report, January 2001.