# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.* | Judge Patti B. Saris Magistrate Judge Marianne B. Bowler |
| CIVIL ACTION NO. 06-11337-PBS | |

## <u>DECLARATION OF JENNIFER FOUNTAIN CONNOLLY</u>

I, Jennifer Fountain Connolly, declare as follows:

1.      I am a partner at Wexler Toriseva Wallace LLP and am one of plaintiffs' attorneys.  I submit this Declaration in support of MDL Plaintiffs' Joinder to the United States' Motion to Compel Abbott To Produce All Discovery Required by CMOs 5 and 10.

2.      Attached as Exhibit A is a true and correct copy of correspondence exchanged between me, or attorneys acting under my direction or control, on one hand, and attorneys for Abbott, on the other hand.

3.      On November 14, 2006, while I was in Boston as part of the trial team, one of Abbott's attorneys contacted me by e-mail and asked me to contact her.  A true and correct copy of her e-mail is attached hereto as Exhibit B.  After receiving that e-mail, I called her.  She told me that she wanted to ensure that MDL Plaintiffs were not planning to share documents produced by Abbott with the United States.  I informed her that, pending a Court's ruling on the propriety of our doing so, we would not provide documents produced by Abbott to the United States.

4.     I have been informed by my co-lead counsel, Don Haviland, that during a recent telephone conference Abbott took the position that no documents should be shared amongst MDL Plaintiffs.  Attached as Exhibit C is a true and correct copy of a January 22, 2007 letter from Raymond Winter of the Texas Attorney General's office whose proposal Abbott rejected.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated:  February 8, 2007                         /s/ Jennifer Fountain Connolly
                                                 Jennifer Fountain Connolly
                                                 Wexler Toriseva Wallace LLP
                                                 One N. LaSalle Street, Suite 2000
                                                 Chicago, IL  60602
                                                 Telephone: (312) 346-2222
                                                 Facsimile: (312) 346-0022

2

# Exhibit A

# W E X L E R │ T O R I S E V A │ W A L L A C E

Limited Liability Partnership

Chicago, IL • Wheeling, WV • Sacramento, CA

September 15, 2006

***Via Facsimile***

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-7692

> Re:   *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
>        MDL No. 1456 (D. Mass.)

Dear Beth:

We would like to schedule a meet and confer regarding the following additional discovery issues on Friday, September 22 at 2:00 p.m.

## Issue No. 1:  Abbott's E-mail Production

As you know, we have had lengthy discussions about Abbott's e-mail production, which we have always deemed to be inadequate.  Both before and after the filing of our Motion to Compel and for Assessment of Discovery Related Costs ("Motion to Compel"), we have expressed concern over the volume and substance of Abbott's e-mail production.

During our June 15th and 23rd meet and confers, you explained that Abbott had taken two server snapshots for Abbott's Hospital Products Division – on January 23, 2002 and then on September 1, 2004.  You explained that you reviewed those two snapshots for e-mails belonging to certain employees, and then ran key word searches based on terms we previously provided.  You then reviewed the resulting e-mails for responsiveness, eliminated duplicates within custodians, and produced the remaining e-mails.  On August 7th you provided a list of custodians whose e-mail inboxes were searched.

We have since thoroughly reviewed Abbott's e-mail production.  Unfortunately, our review has only confirmed that our concerns about the extent of Abbott's e-mail production are legitimate.

# W E X L E R | T O R I S E V A | W A L L A C E

Beth A. O'Connor
September 15, 2006
Page 2

### A.    Almost the Entire E-Mail Production Is From Two Months

We have reviewed all e-mails in Abbott's ABTMDL-E production and have determined that Abbott's entire e-mail production consists of 994 e-mails.[1]  This number includes all e-mails, whether the e-mail was an original "parent" e-mail or a subsequent "child" e-mail, including all instances where the employee was the author, recipient, or carbon copied on the communication. We did not eliminate duplicate e-mails, although we did subtract all Microsoft Outlook-generated "meeting requests."   Given our methods, these numbers reflect the most favorable result for Abbott, since they will almost certainly decrease if we subtracted out duplicates amongst custodians and within e-mail chains.

Of these 994 e-mails, 260 are from December of 2001, and 648 are from January of 2002.  This amounts to *over* 91% of the e-mails in Abbott's electronic production coming from a mere two months.  Although we recognize that the nature of a snapshot is that it is, indeed, a snapshot, because a true snapshot should contain all e-mails on the server for a particular individual, the results of our search suggest that Abbott's search was not conducted properly.

### B.    E-mails Are Virtually Nonexistent for Highly Important Individuals

We also have very few e-mails from highly relevant employees.[2]  For example, there are only eight e-mails for which Jeffrey Balzer was the author, recipient, or received a carbon copy.  As you know, he was a manager in Abbott's contract marketing and HPD Major Health Care Systems and Alternate Site divisions, and should - and likely does – have more than eight responsive e-mails.  Further, there are only six e-mails involving Steve Kipperman, a manager in the HPD Infusion Therapy and Alternate Site divisions.  The fact that some of Abbott's key employees have six or eight "responsive" e-mails indicates serious problems with the search mechanisms used.

If Abbott cannot otherwise explain the reasons for its sparse e-mail production, plaintiffs will have no choice but to ask Abbott to restore its back-up tapes.

### Issue No. 2:  1995 Vancomycin Documents

You have previously represented to us that Abbott did not create a privilege log for the documents withheld from its "government production," and that it would be impossible for

---

[1]  Found in Abbott's document productions bearing the bates number ABTMDL-E 0000001 – ABTMDL-E 0014615, ABTMDL-E 0014616 – ABTMDL-E 0036640, ABTMDL-E 0036641 – ABTMDL-E 0044356.

[2]  In order to reach this count, we used the same method described above.

# W E X L E R | T O R I S E V A | W A L L A C E

Beth A. O'Connor
September 15, 2006
Page 3

Abbott to create one now.  While we understand your assertion, in analyzing Abbott's production it is clear that plaintiffs have very few documents relating to Abbott's March and May 1995 price changes for Vancomycin.  For example, in ABT001125, Gerald Eichhorn refers to a May 4, 1995 meeting discussing Vancomycin's new list price, yet there are no meeting minutes, handwritten notes, memos, or e-mails discussing the substance of this meeting in Abbott's production.  In this regard, please either (1) produce the missing documents or (2) advise us why they are being withheld.  If they are being withheld, please provide plaintiffs with a log that complies with Fed. R. Civ. P. 26(a)(5) for those documents.  We would like this log within two weeks, or by September 29, 2006.

## Issue No. 3:  2001 Vancomycin Documents

Abbott's privilege log includes approximately fifty (50) entries that appear to relate to the 2001 price changes for Vancomycin.  Virtually all of the documents were withheld based only on the work product protection, and most are described as "E-mail correspondence transmitting pricing analysis of Abbott drug products prepared in connection with price adjustment project undertaken at direction of counsel for the purpose of rendering legal advice and in anticipation of litigation."

The work-product doctrine applies to documents that are prepared in anticipation of litigation and can only be withheld if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *In re Raytheon Secs. Litig.*, 218 F.R.D. 354, 358 (D. Mass. 2003) (Saris, J.) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure, § 2024 at 343 (1994)).  However, "[i]t should be emphasized that the "because of" formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."  *In re Lernout & Hauspie Sec. Litig.*, 222 F.R.D. 29, 37 (D. Mass. 2004) (quotations omitted) (refusing to apply the work-product doctrine to e-mails created by attorney for an accounting firm that would have been created by the attorneys in the ordinary course of their business and would have been created in the same form regardless of any possible future litigation).

Based on the descriptions in Abbott's privilege logs, it appears as though the purportedly privileged documents would have been created in the same form regardless of any possible litigation.  Indeed, these appear to be business decisions relating to routine price changes.  Accordingly, please review these entries and either revise them to make it clear how these are different from standard pricing changes, or produce these documents by September 29.

# W E X L E R | T O R I S E V A | W A L L A C E

Beth A. O'Connor
September 15, 2006
Page 4

## Issue No. 4: AWP Deposition Transcripts

We have previously asked you for *all* deposition transcripts from *all* AWP-related proceedings. In response, you only gave us transcripts from the West Virginia AWP proceedings. Accordingly, please produce all transcripts from each and every AWP-related proceeding and confirm that you have sent us all West Virginia transcripts.

## Issue No. 5: Missing Documents

We have determined that there are numerous documents produced by Redbook that Abbott did not likewise produce but that clearly should have been.[3]   Please confirm that Abbott has conducted a search for all responsive documents.

Finally, documents in your production describe OmniCare's "Industry Day" meetings. *See e.g.,* ABTAWP/MDL249874-875 (referring to Jeffrey Balzer's attendance at a February 21, 2001 "Industry Day" event at OmniCare).   However, there are no other documents relating to these meetings in Abbott's production.   Please produce these by September 29 or advise why they will not be forthcoming.

***

We are concerned that Abbott's production – both paper and electronic – was not done in a manner consistent with Abbott's obligations.   I look forward to speaking with you about these issues so that plaintiffs can get the documents to which we are entitled.

Very truly yours,

Jennifer Fountain Connolly
JFC/lmv

cc:     Tina M. Tabacchi (via facsimile)

---

[3]  We have thoroughly checked the database and have been unable to find these documents.  However, if you determine that Abbott did produce them, please provide us with the Bates numbers.

# W E X L E R | T O R I S E V A | W A L L A C E

Limited Liability Partnership

Chicago, IL • Wheeling, WV • Sacramento, CA

September 29, 2006

## VIA HAND-DELIVERY

Ms. Beth O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-7692

Re:     *In re: Pharmaceutical Industry Average Wholesale Price Litigation,*
        MDL 1456 (D. Mass.)

Dear Beth:

I write to summarize our September 26th meet and confer during which we discussed the issues relating to Abbott's document production raised in Jennifer Connolly's September 15, 2006 letter. Our respective positions and the conclusions reached are set forth in detail below.

## Issue No. 1: Abbott's E-mail Production

There are two separate issues that we discussed relating to Abbott's e-mail production. First, we discussed our discovery that virtually all e-mails produced by Abbott are from only two months: December of 2001 and January of 2002. Second, we also addressed the fact that there are very few e-mails from highly relevant Abbott employees.

You stated that you are conducting your own internal investigation for both e-mail issues outlines above, and are working with your vendor to determine whether you agree with our conclusion and, if so, how this happened. Per our agreement, we have enclosed a chart we created reflecting the number of e-mails produced for seventeen of Abbott's most relevant employees. You committed to providing us with the results of this investigation by early next week (October 3rd), if not sooner.

## Issue No. 2: 1995 Vancomycin Documents

We discussed whether there are any 1995 Vancomycin-related documents that have been withheld from Abbott's government production for which no privilege log exists. You stated that Abbott has not claimed any privilege on these documents and has therefore not withheld any from production, so we should have them all. You committed to discussing this issue with Mr.

Contact Information:   Amber M. Nesbitt         One N. LaSalle Street    (312) 346-2222
                       (312) 261-6193 Direct Dial   Suite 2000               (312) 346-0022 fax
                       amn@wtwlaw.us            Chicago, IL 60602        www.wtwlaw.us

# W E X L E R | T O R I S E V A | W A L L A C E

Ms. Beth O'Connor
September 29, 2006
Page 2

Eichhorn to confirm that all such documents have indeed been collected. You also promised to provide us with Bates numbers of a sample of documents you believe fall into this category.

## Issue No. 3: 2001 Vancomycin Documents

We discussed our concern that many of the documents relating to Abbott's 2001 Vancomycin pricing changes were improperly withheld by virtue of the work-product doctrine. You stated that you have reviewed these documents and have determined that many, but not all, of them are no longer deemed privileged and will be produced. You also committed to providing us with an updated privilege log, which we will review and revisit this issue at a later date if necessary.

## Issue No. 4: AWP Deposition Transcripts

You stated that you had given us all deposition transcripts from the West Virginia case against Abbott and the CID deposition transcripts of the Texas case. However, you indicated that Texas had taken the following depositions in the last two months and that those transcripts had not yet been produced to us: Bruce Stowell, Nancy Carlson, a former Alternative Site sales representative located in Texas, and Michael Heggie.

We discussed the possibility of creating a mechanism to facilitate the exchange of deposition transcripts taken in parallel AWP cases. Jennifer Connolly will revisit this issue with you on our scheduled meet and confer on Tuesday.

## Issue No. 5: Missing Documents

We discussed the fact that Abbott did not produce certain documents reflecting communications between Abbott and Redbook. You agreed to investigate this issue, and we agreed to provide you with the enclosed a sample of these documents to assist you in your efforts.

Finally, we also discussed whether there are any additional documents relating to Abbott's attendance or involvement in OmniCare's Industry Day events. You assured us that Abbott only attended one such event, and that we should have all relevant documents. Nonetheless, you agreed to send us Bates numbers of responsive documents and to ensure that there are no additional documents.

# W E X L E R | T O R I S E V A | W A L L A C E

Ms. Beth O'Connor
September 29, 2006
Page 2


Please let me know if this does not comport with your recollection of our discussion.  I look forward to further discussing these issues during our follow-up call on Tuesday, October 3rd at 9:30 a.m.


Sincerely,

Amber M. Nesbitt

AMN:lyr

Enclosures

cc:     Jennifer Fountain Connolly

# W E X L E R | T O R I S E V A | W A L L A C E

Limited Liability Partnership
Chicago, IL • Wheeling, WV • Sacramento, CA

October 5, 2006

***Via Facsimile***

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-7692

Re:     *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
        MDL No. 1456 (D. Mass.)

Dear Beth:

I write to summarize our second meet and confer from October 3, 2006 during which we discussed outstanding issues remaining after our September 26, 2006 discussion.  The conclusions and compromises we reached are set forth below.

## Issue No. 1:  Abbott's E-mail Production

You told us that you had conducted your own internal investigation into the two overarching problems we have identified with Abbott's e-mail production: the fact that virtually all e-mails are from only two months, and that there are very few e-mails for highly relevant Abbott employees.  You expressed the fact that you and your client are very surprised and indeed agree with our findings, and that you have spoken to Abbott's Information Technology department about these problems.  You also plan to speak with your e-discovery vendor this week to get an explanation of how these problems occurred. You promised to apprise us of the outcome of this discussion.  However, you noted that it might be the case that additional back-up tapes will have to be restored to attempt to remedy this problem.

## Issue No. 2:  1995 Vancomycin Documents

You told us that you had consulted with your client and that they had no new documents relating to the 1995 Vanco issue.  However, you said that you would get back to us by the end of the week after your client has concluded its search.  In addition, you identified three documents (AB006327-31, AB002572-80 & AB020129-34) that you believe relate to this issue.

## Issue No. 3:  2001 Vancomycin Documents

You informed us that you had determined that several documents previously withheld as privileged have been re-reviewed and will now be produced to us by the end of this week.  In

Contact Information:

| | | |
|---|---|---|
| **Amber M. Nesbitt** | One N. LaSalle Street | (312) 346-2222 |
| **(312) 261-6193 Direct Dial** | Suite 2000 | (312) 346-0022 |
| **amn@wtwlaw.us** | Chicago, IL 60602 | **www.wtwlaw.us** |

# W E X L E R | T O R I S E V A | W A L L A C E

Beth A. O'Connor
October 5, 2006
Page 2

addition, you said that you were in the process of updating the privilege log and that you would send us an updated version by the end of next week.

## Issue No. 4: AWP Deposition Transcripts

We engaged in a lengthy discussion about possible compromises to our request that plaintiffs receive, on a going forward basis, all relevant deposition transcripts taken in AWP-related proceedings. Plaintiffs contend that such production is required under Abbott's continuing duties under CMO Nos. 5 and 10. Without waiving our respective positions, we agreed that you would send us three deposition transcripts from the Texas case, that of Mike Heggie, an Abbott District Manager, and a Texas Alternate Site District Manager. We further agreed to discuss future sharing of additional transcripts on a going-forward basis when there is a ruling on the Immunex motion. In addition, you agreed to review the deposition of Stacey Kronos to see if there were any portions of the transcript relevant to the MDL.

## Issue No. 5: Missing Documents

You said that you had just received the Red Book documents we sent and that you would check with your client to see if Abbott has any similar documents. In addition, you agreed that the documents were indeed relevant. You also said that you had located additional documents relating to Omnicare's "Industry Day" and that you would send them to us by the end of the week.

Please let me know if this does not comport with your recollection of our discussion

Sincerely,

Amber M. Nesbitt

AMN:lmv

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1676
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number:  312/269-1529
baoconnor@jonesday.com

October 9, 2006

<u>VIA MESSENGER</u>

Amber Nesbitt
Wexler Toriseva Wallace
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602

Re:   In Re Pharmaceutical Industry Average Wholesale Price Litigation,
      MDL 1456 (D. Mass.)

Dear Amber:

I am in receipt of your October 5, 2006 letter summarizing our discussion from October 3, 2006. At the outset, I am reasserting Abbott's position that it believes the discovery period for Track II has closed. Abbott recognizes, however, its obligation to discuss with Plaintiffs their concerns regarding discovery requests and production issues that were properly served prior to the discovery cut-off and supplement its production to the extent required under the Federal Rules.

### Issue No. 1: E-Mail Production

As promised, we are investigating the e-mail issue you have raised to determine if there is a date restriction problem that we were unaware of when the back-up tapes were restored. If so, we will investigate how to remedy such a problem and apprise you of a proposed solution.

### Issue No. 2: 1995 Vancomycin Documents

As discussed, Abbott undertook another search for documents related to the 1995 Vancomycin price change. We have not uncovered any additional documents related to this issue and believe that all documents have been produced.

### Issue No. 3: 2001 Vancomycin Documents

As we discussed, Abbott has removed certain documents from its privilege and are producing them with this letter. (*See* ABT AWP/MDL 249935 – 250302). In addition, we will provide you with a revised privilege log.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Amber Nesbitt
October 9, 2006
Page 2

### ISSUE NO. 4:   DEPOSITION TRANSCRIPTS

Abbott reasserts its position that transcripts from recent and future depositions taken in other AWP-related cases should not be produced to Plaintiffs. As you know, we provided deposition transcripts to you taken in other AWP cases prior to the close of Plaintiffs' proposed discovery cut-off deadline, which was June 30, 2006. The issue of when Track II discovery closed will be decided very soon by Judge Bowler. To that end, we think a better solution is to wait before producing the transcripts we discussed (two of which we do not yet have final transcripts) until Judge Bowler has made this decision regarding discovery cut-off. We will, of course, respond in accordance with Judge Bowler's ruling.

With respect to the deposition of Stacey Chronis, the focus of Ms. Chronis's deposition was a communication from Ms. Chronis to the Texas Medicaid Program, which is completely irrelevant to Plaintiffs' case. Accordingly, Abbott will not produce Ms. Chronis's deposition transcript.

### ISSUE NO. 5:   RED BOOK AND OMNICARE INDUSTRY DAY DOCUMENTS

You sent me three documents produced by Red Book which you believe Abbott should have also produced. Two of these documents are correspondence from 1997 and 1998. Abbott is checking to see if Abbott has these, or any other similar documents, which have not already been produced. If Abbott should uncover any additional documents, they will be produced to Plaintiffs. The third document is a cover letter forwarding the 1996 HPD Drug Wholesale Price List for HPD. Abbott has already produced this document. (*See* ABT210969 – ABT211053).

Finally, I have enclosed a few "Omnicare Industry Day" documents. (*See* ABT AWP/MDL 250303 – 250338).

Thank you for speaking with me about the above issues. Please let me know if you have any questions.

Sincerely,

Beth A. O'Connor

cc:   Tina M. Tabacchi
       Brian J. Murray

**Amber Nesbitt**

| | |
|---|---|
| **From:** | Jennifer F. Connolly |
| **Sent:** | Tuesday, October 10, 2006 12:18 PM |
| **To:** | Beth A. O'Connor |
| **Cc:** | Amber Nesbitt |
| **Subject:** | FW: Messenger - AWP |

**Attachments:**     Exchange.pdf

Beth:  The position you take in this letter regarding the AWP transcripts is different from the one you took on our call.  One our call, you said that you would produce the transcripts of Heggie and the district manager and then we would revisit the remaining deps after Judge Bowler's ruling.  Is Abbott now taking a different position?

Jennifer

-----Original Message-----
From: Lynette M. Vazquez
Sent: Tuesday, October 10, 2006 11:00 AM
To: Jennifer F. Connolly; Amber Nesbitt; Eric H. Stadel
Subject: Messenger - AWP

Letter from Beth O'Connor producing documents and summarizing 10/03 meet and confer

Exchange.pdf (91
KB)

1

# Exhibit B

**Jennifer F. Connolly**

**From:** Carol Geisler [cgeisler@JonesDay.com]
**Sent:** Tuesday, November 14, 2006 2:46 PM
**To:** Jennifer F. Connolly
**Subject:** MDL 1456

Jennifer--I'm working on the AWP litigation here at Jones Day and am in Boston monitoring the trial.  I was hoping to catch up with you there but missed you.  If possible, can you give me a call this afternoon?  I can be reached at 630.927.0038.  Thanks.

Carol P. Geisler
JONES DAY
77 W. Wacker
Chicago, IL 60601-1692
312.269.4174 (Phone)
312.782.8585 (Fax)

# Exhibit C



ATTORNEY GENERAL *of* TEXAS

GREG ABBOTT

January 22, 2007

**Via Facsimile # 312-782-8585**

Mr. Eric P. Berlin
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

Re:   Cause No. D-1-GV-04-001286, in the 201st District Court of Travis County, Texas;
      *State of Texas ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories,*
      *et. al.*

Dear Eric,

I write to follow up with you regarding the telephone conversation we had last Friday regarding the depositions of De Young and Eichhorn.  I write this letter to set forth a joint proposal on behalf of Texas and Ven-A-Care to facilitate the conduct of joint depositions. As we have discussed the depositions of De Young and Eichhorn have been noticed in both Texas and in MDL-1456.  In addition, as we have also discussed, Abbott has previously requested on more than one occasion to the Plaintiff governments that the multiple plaintiffs who have sued Abbott coordinate their discovery efforts.  *See*, for example, Chris Cook's letter of August 6, 2004.

Texas, Ven-A-Care and the other litigating plaintiffs generally agree that joint depositions are desirable, under the appropriate conditions, in order to maximize resources and judicial efficiency and in order to minimize the burden on Abbott and third-party witnesses. Accordingly, we propose that depositions of jointly noticed Abbott and third party witnesses proceed on the following basis:

- Abbott agrees that the depositions are admissible in all jurisdictions that have noticed the depositions;
- Abbott agrees that similarly situated Plaintiffs may share documents that are produced by Abbott and that are specifically deemed by Plaintiffs' counsel to be reasonably relevant to the witness;
- Plaintiffs' counsel will generally identify by Bates range the production from which the documents to be shared are selected;
- Abbott will have 24 hours after the announcement by counsel of an intent to share pursuant to these criteria to object to the proposed sharing, such objection will be heard in the court presiding over the litigation where the documents were produced.

Mr. Eric P. Berlin
Page 2

Please let me know at your earliest convenience if Abbott is willing to agree to these terms for conducting joint depositions.

Thank you.


Sincerely,

*/s/ Raymond C. Winter*

Raymond C. Winter
Assistant Attorney General
(512) 936-1709
(512) 370-9477 FAX

cc:    Jim Breen
       Jarrett Anderson
       Gary L. Lewis