# Exhibit 1

# STATE SETTLEMENT AGREEMENT

## I. PARTIES

This State Settlement Agreement is entered into between the state of Montana, and Pfizer Inc, Warner-Lambert Company ("Warner-Lambert") and Parke-Davis Division (collectively, Pfizer), hereinafter referred to as "the Parties," through their authorized representatives.

## II. PREAMBLE

As a preamble to this State Settlement Agreement, the Parties agree to the following:

A. Pfizer is a corporation organized under the laws of the state of Delaware. Its headquarters are in New York. Pfizer is a manufacturer of pharmaceutical products. Parke-Davis and Warner-Lambert were predecessor organizations that ultimately were merged into Pfizer Inc in June 2000. At all relevant times, Warner-Lambert manufactured, marketed and sold a cholesterol-lowering drug, marketed under the name Lipitor.

B. The state of Montana contends that Warner-Lambert owed additional rebate payments under the federal Medicaid Rebate Program, 42 U.S.C. § 1396r-8, which is part of the federal Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v.

C. The state of Montana contends that it has certain civil claims against Pfizer as successor in interest under the False Claims Act, 31 U.S.C. §§ 3729-3733, other federal and state statutes and/or common law doctrines, for engaging in the following conduct: During the period beginning January 1999 and ending December 1999, employees of a unit of Parke-Davis, a Warner-Lambert division, offered and made payments, characterized as "unrestricted educational grants," totaling $250,000 ($50,000 in the First Quarter of 1999 characterized as "program funding," $200,000 in the Second Quarter of 1999 characterized as an "unrestricted educational

- 1 -



grant") to the Ochsner Health Plan ("Ochsner"), a managed care organization headquartered in New Orleans, Louisiana, in exchange for Ochsner's agreement to extend unrestricted formulary status to Lipitor in order to encourage Ochsner plan doctors to write Lipitor prescriptions for Ochsner plan beneficiaries. In addition, Ochsner agreed to extend this formulary status for three years and entered into a so-called market share contract that enabled Ochsner to receive additional discounts and rebates on the Ochsner plan's usage of Lipitor over the three year period of the agreement.

Prior to its acquisition by Pfizer, Warner-Lambert entered into a rebate agreement with the Centers for Medicare and Medicaid Services ("CMS"). The state of Montana contends that Warner-Lambert knowingly misreported and underpaid its Medicaid Rebates for Lipitor, i.e., the amounts that it owed to the state under the federal Medicaid Rebate Program, 42 U.S.C. § 1396r-8. Warner-Lambert was generally required on a quarterly basis to calculate and pay rebates to each state Medicaid program based on the difference between the Average Manufacturer Price ("AMP") and its "Best Price," as defined by 42 U.S.C. § 1396r-8(k)(1) and 1396r-8(c)(1)(C). For the First, Second, Third and Fourth Quarters of 1999, Warner-Lambert misreported and underpaid its Medicaid rebates to states participating in the Medicaid Rebate Program by calculating its Best Price for Lipitor without factoring in the value of all unrestricted educational grants and rebates that were, in fact, discounts off the purchase price of Lipitor paid to Ochsner as described above which were not disclosed to the states or the federal government. By failing to disclose and properly report these discounts, Warner-Lambert was in breach of its Medicaid Rebate Agreement with CMS and was unjustly enriched by maintaining possession of the rebate

- 2 -

funds that were rightfully and statutorily owed to the Medicaid Rebate Program (hereinafter referred to as the "Covered Conduct").

D. This settlement is based upon a qui tam complaint filed by John D. Foster, Relator, against Warner-Lambert on May 4, 2000, which is styled United States ex. rel John David Foster v. Pfizer, Inc. Successor in interest to Warner-Lambert Co. No.1:00-cv-00246 (E.D. Texas).

E. The Parties desire a final negotiated settlement and compromise of the claims against Pfizer set forth in Paragraph C.

F. Warner-Lambert denies the contentions of the state of Montana as set forth as the Covered Conduct in Paragraph C above and denies that it has any liability relating to these contentions and allegations. This State Settlement Agreement does not constitute an admission by Warner-Lambert of any liability or wrongful conduct. All Covered Conduct occurred prior to the June 2000 merger into Pfizer Inc.

G. In order to avoid the delay, uncertainty, inconvenience and expense of protracted litigation of these claims, the Parties reach a full and final settlement as set forth below.

### III. TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual promises, covenants, and obligations set forth below, and for good and valuable consideration as stated herein, the Parties agree as follows:

1. Pfizer agrees to pay to the United States and the individual states the total amount of $49,000,000 (the "Settlement Amount") as follows: Pursuant to a settlement agreement executed on or about May 15, 2002 between Pfizer, the United States and Relator (the "Federal Settlement Agreement") Pfizer agreed to make payment to the United States of $49,000,000 (which includes

- 3 -



both the United States' and the states' shares of the Settlement Amount (the "State Shares")). That amount was deposited in the Court's Registry on May 30, 2002. Of that amount, $21,084,700 of the Pfizer funds in the Court's Registry represent the State Shares of this settlement agreement. The State Shares will be released for distribution to individual participating states when the negotiating team for the National Association of Medicaid Fraud Control Units ("NAMFCU Team") and Pfizer mutually agree in writing that the state settlements are final.

2. The state of Montana's total State Share of this Settlement Amount is $28,811.53.

3. The parties agree that no portion of the State's Share of the Settlement Amount is subject to any Relator's fees or recoveries.

4. Subject to the exceptions in Paragraph 6 below, in consideration of the obligations of Pfizer set forth in this State Settlement Agreement, conditioned upon the State's receipt of its State Share of the Settlement Amount, the state of Montana agrees to release Pfizer, including its predecessors, successors, subsidiaries and affiliates, and assigns, as well as its current officers, directors, employees, and agents (Pfizer Released Parties) from any civil or administrative claims or penalties the state of Montana has or may have for claims submitted to the state Medicaid program for the Covered Conduct.

5. In consideration of the obligations of Pfizer set forth in this State Settlement Agreement and the federal Corporate Integrity Agreement ("CIA"), conditioned upon the state's receipt of its State Share of the Settlement Amount, the state of Montana agrees to release and refrain from instituting, directing or maintaining any administrative claim or any action seeking exclusion from its Medicaid Program against Pfizer, including its predecessors, successors,



subsidiaries and assigns, for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 6, below. The state of Montana expressly reserves all rights to comply with any statutory obligations to exclude Pfizer from its Medicaid program under 42 U.S.C. § 1320a7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the state of Montana from taking action against entities or persons, or for conduct and practices, for which civil claims have been reserved in Paragraph 6, below.

6. Notwithstanding any term of this State Settlement Agreement, specifically reserved and excluded from the scope and terms of this State Settlement Agreement as to any entity or person (including, without limitation, Pfizer) are any and all of the following claims of the state of Montana:

(a) Any civil, criminal or administrative claims of the state of Montana arising under state tax codes;

(b) Any criminal liability;

(c) Any civil or administrative liability that Pfizer has or may have under any state statute, regulation, or rule not covered by the release in paragraph 4 above;

(d) Except as explicitly stated in this State Settlement Agreement, any administrative liability, including mandatory exclusion from the state of Montana's Medicaid program;

(e) Any liability to the state of Montana (or its agencies) for any conduct other than the Covered Conduct;

(f) Any claims based upon such obligations as are created by this State Settlement Agreement;

- 5 -



(g) Any express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services, provided by Pfizer;

(h) Any claims of the state of Montana based on a failure to deliver items or services due;

(i) Any civil or administrative claims against individuals, including current or former directors, officers, employees, agents or shareholders of Pfizer who are criminally indicted or charged, or are convicted, or who enter into a criminal plea agreement related to the Covered Conduct;

7. Pfizer waives and will not assert any defenses Pfizer may have to any criminal prosecution or administrative action relating to the Covered Conduct, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution or equivalent State Constitutional provisions or laws, this settlement bars a remedy sought in such criminal prosecution or administrative action. Pfizer agrees that this settlement is not punitive in purpose or effect. Nothing in this paragraph or any other provision of this Settlement Agreement constitutes an agreement by the state of Montana concerning the characterization of the Settlement Amount for purposes of the Internal Revenue Laws, Title 26 of the United States Code or State or Local Tax Codes.

8. Pfizer fully and finally releases the state of Montana from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which Pfizer has asserted, could have asserted, or may assert in the future against the state of Montana related to the Covered Conduct,

- 6 -

9. The amount that Pfizer must pay pursuant to any applicable provision of this State Settlement Agreement will not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare Carrier or Intermediary or any State Medicaid program, related to the Covered Conduct. Pfizer agrees not to resubmit to any Medicare Carrier or Intermediary or any State Medicaid program any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims. Notwithstanding anything to the contrary, Pfizer does not submit such claims.

10. Pfizer agrees to the following:

(a) Unallowable Costs Defined: that all costs (as defined in the Federal Acquisition Regulations (FAR) § 31.205-47 and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v, and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Pfizer, its present or former officers, directors, employees, shareholders, and agents in connection with: (1) the matters covered by this State Settlement Agreement; (2) the United States' audit and civil investigation of the matters covered by this State Settlement Agreement; (3) Pfizer's investigation, defense, and any corrective actions undertaken in direct response to the United States' audit and civil investigation in connection with the matters covered by this State Settlement Agreement (including attorney's fees); (4) the negotiation and performance of this State Settlement Agreement, (5) the payment Pfizer makes to the United States and the participating states pursuant to this State Settlement Agreement and any payments that Pfizer may make to Relator; (6) the negotiation of the CIA, and the obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in the CIA; and (ii)

- 7 -

prepare and submit reports to the HHS-OIG, are unallowable costs on Government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP). However, nothing in this sub-paragraph that may apply to compliance costs affects the status of costs that are not allowable based on any other authority applicable to Pfizer. (All costs described or set forth in this Paragraph 13(a) are hereafter, "unallowable costs").

(b) Future Treatment of Unallowable Costs: If applicable, these unallowable costs will be separately estimated and accounted for by Pfizer, and Pfizer will not charge such unallowable costs directly or indirectly to any contracts with the United States or any State Medicaid Program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by Pfizer or any of its subsidiaries to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

(c) Treatment of Unallowable Costs Previously Submitted for Payment: If applicable, Pfizer further agrees that within 60 days of the effective date of this State Settlement Agreement, it will identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid, VA and FEHBP fiscal agents, any unallowable costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Pfizer or any of its successors or its subsidiaries, and will request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Pfizer agrees that the United States and any

- 8 -



participating state, at a minimum, will be entitled to recoup from Pfizer any overpayment plus applicable interest as a result of the inclusion of such unallowable costs on previously-submitted cost reports, information reports, cost statements, or requests for payment. Any payment due after the adjustments have been made shall be paid to the United States and any participating state pursuant to the direction of the affected agencies. The United States and any participating state reserves its rights to disagree with any calculations submitted by Pfizer or any of its subsidiaries on the effect of inclusion of unallowable costs (as defined in this Paragraph) on Pfizer or any of its subsidiaries' cost reports, cost statements, or information reports. Nothing in this State Settlement Agreement shall constitute a waiver of the rights of the United States or any participating state to examine or reexamine the unallowable costs described in this Paragraph.

11. Pfizer covenants to cooperate fully and truthfully with the United States' and any participating state's investigation of individuals and entities not specifically released in this State Settlement Agreement for the Covered Conduct. Upon reasonable notice, Pfizer will make reasonable efforts to facilitate access to, and encourage the cooperation of, their directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals, and will furnish to the United States and any participating state, upon reasonable request, all non-privileged documents and records in its possession, custody or control relating to the Covered Conduct.

12. Pfizer has entered into a CIA with HHS-OIG in connection with this matter. Pfizer acknowledges that the state of Montana may gain access from the OIG to the certain information that Pfizer submits to the OIG pursuant to the CIA. Specifically, such access is limited to the following: (a) any information contained in Pfizer's Implementation Report and/or Annual

- 9 -

Reports; and (b) information that is included in the IRO reports (collectively, "CIA Information"). The state of Montana agrees to afford all such CIA Information the maximum degree of confidentiality permitted by state law. As set forth in the CIA, when Pfizer submits any CIA Information to the HHS-OIG pursuant to its obligations under this CIA, Pfizer shall identify any portions of such CIA Information that it believes are trade secrets, or information that is commercial or financial information, or privileged and confidential, and therefore exempt from disclosure ("Exempt CIA Information") under the state of Montana's freedom of information (or its equivalent) or the federal Freedom of Information Act (collectively, "FOIAs"). It is understood that the disclosure of Exempt CIA Information may cause substantial injury to Pfizer. Therefore, the state of Montana agrees to notify Pfizer promptly in the event of a request for copies or access to CIA Information, whether or not identified as exempt by Pfizer. Such prompt notice shall afford Pfizer a meaningful opportunity to respond to such requested disclosure. Such notice shall be made in writing, by overnight mail or hand delivery to the following addresses:

Douglas M. Lankler, Esq.
Deputy Compliance Officer
Pfizer Inc
235 East 42d Street (150/5/22)
New York, NY 10017
Phone: 212-733-3026

With a simultaneous copy to:

Lynn Shapiro Snyder, Esq.
Counsel to Pfizer Inc
Epstein Becker & Green
1227 25th Street, N.W.
Washington, D.C. 20037
Phone: 202-861-0900

- 10 -

13. This State Settlement Agreement is intended to be for the benefit of the Parties only, and by this instrument the Parties do not release any claims against any other person or entity.

14. Pfizer expressly warrants that it has reviewed its financial situations and that it is currently solvent within the meaning of 11 U.S.C. Section 547(b)(3) and 548(a)(1)(A)(ii)(I), and will not become insolvent as a result of the payment obligations to the United States and the participating states set forth in this State Settlement Agreement. Further, the Parties expressly warrant that, in evaluating whether to execute this State Settlement Agreement, the Parties (a) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to Pfizer, within the meaning of 11 U.S.C. Section 547(c)(1), and (b) have concluded that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange.

15. Pfizer represents it has entered into this State Settlement Agreement freely and voluntarily.

16. This State Settlement Agreement is governed by the laws of and subject to the exclusive Jurisdiction and Venue of the state of Montana.

17. The Parties agree that any disputes arising under the CIA shall be resolved exclusively through the breach and dispute resolution provisions included in that agreement. A breach by Pfizer of the CIA will not constitute a breach of this State Settlement Agreement.

18. This State Settlement Agreement and the CIA, constitute the complete agreement between the Parties. This State Settlement Agreement may not be amended except by written consent of the Parties, except that only Pfizer and HHS-OIG must agree in writing to modification of the CIA.

- 11 -

19. The undersigned individuals signing this State Settlement Agreement on behalf of Pfizer represent and warrant that they are authorized by Pfizer to execute this State Settlement Agreement. The undersigned State signatories represent that they are signing this State Settlement Agreement in their official capacities and that they are authorized to execute this State Settlement Agreement.

20. This State Settlement Agreement may be executed in counterparts and/or in facsimile form, each of which constitutes an original and all of which constitute one and the same agreement.

21. The Effective Date of this State Settlement Agreement is the date on which the final signatory to this State Settlement Agreement executes this State Settlement Agreement.

22. This State Settlement Agreement is binding on the Parties, their transferees, heirs, successors and assigns.



- 12 -

Case 1:01-cv-12257-PBS Document 3768-2 Filed 02/08/2007 Page 13 of 15

## THE STATE OF MONTANA

DATED: 10-29-02

state of Montana
Office of Attorney General
Medicaid Fraud Control Unit

BY: *Gordon Hage*
Title: *Director - MFCU*

DATED: 11/1/02

*John Clapper*
state of Montana
Medicaid Program
BY:
Title: *State Medicaid Director*

- 13 -

PFIZER INC, WARNER-LAMBERT, and PARKE-DAVIS

DATED: 1/13/03

BY: /s/ George W. Evans
GEORGE W. EVANS, Esq.
HEIDI CHEN, Esq.
Counsel for Pfizer, Warner-Lambert, Parke-Davis

DATED: 1/14/03

BY: /s/ Lynn Shapiro Snyder
LYNN SHAPIRO SNYDER, Esq.
STUART M. GERSON, Esq.
Epstein, Becker & Green
Counsel for Pfizer, Warner-Lambert, Parke-Davis

- 14 -