UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br><br>Civil Action No. 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Montana v. Abbott Labs Inc., et al.,* 02-CV-12084-PBS | |

**MEMORANDUM IN SUPPORT OF
PFIZER'S AND PHARMACIA'S MOTION
<u>FOR SUMMARY JUDGMENT</u>**

Pfizer Inc. ("Pfizer"), and Pharmacia Corporation and Pharmacia & Upjohn (together, "Pharmacia"), submit this Memorandum in support of their Motion for Summary Judgment.[1]

## I. INTRODUCTION

Almost none of the Pfizer drugs at issue in this litigation were reimbursed by Montana Medicaid on the basis of AWP. The same is true of many of the Pharmacia drugs. Instead, Montana Medicaid chose to reimburse pharmacists at "Direct Price" for drugs manufactured by Pfizer, Parke-Davis (which was acquired by Pfizer), and Upjohn (which was acquired by a company now known as Pharmacia Corporation). Nevertheless, these drugs were included in the complaint filed by the Montana Attorney General, and claims for these drugs that were reimbursed at Direct Price were included in plaintiff's damages calculations for penalties based on allegedly fraudulent AWPs.

Montana Medicaid reimbursed certain manufacturers' drugs at Direct Price, rather than AWP-10%, since at least 1990, and began phasing out Direct Price as a basis for reimbursement in 1999 as part of a provider rate increase and in response to provider complaints of under-reimbursement. More than four months after the filing of this lawsuit, Montana Medicaid decided to complete its phase-out of Direct Price reimbursement and move all remaining Direct Price drugs to the AWP-based reimbursement in order to *increase* the amount of reimbursement to pharmacists. Accordingly, plaintiff's claim that it "overpaid" because Montana was somehow defrauded by "false" and "inflated" AWPs is simply unsupportable—particularly when Montana Medicaid opted to use the very AWPs plaintiff claims are "fraudulent" in lieu of other bases for reimbursement even after the filing of this lawsuit. Such undisputed facts warrant summary judgment in favor of Pfizer and Pharmacia on each of Montana's fraud-based claims.

---

[1] Pfizer and Pharmacia also join in the Defendants' Joint Motion for Summary Judgment, and also move this Court for summary judgment in their favor upon the grounds set forth in the Memorandum in Support of Defendants' Joint Motion for Summary Judgment, as well as the additional grounds set forth herein.

Even if this Court finds such facts are not sufficient to demonstrate that Montana Medicaid was not defrauded, at a minimum, summary judgment should be granted as to the drugs that were reimbursed at Direct Price. The claims data produced by plaintiff clearly demonstrates that the majority of Pfizer and Pharmacia drugs cannot be included in this action, as these drugs were not reimbursed using any AWP methodology.

Finally, the Best Price claim relating to Lipitor has no support in the factual record.[2] The discovery record developed in this case is devoid of evidence that would suggest—let alone permit plaintiff to prove—Best Price fraud. Furthermore, Montana participated in a federal and state settlement regarding the very allegations contained in the Complaint, and is therefore barred from recovering on this claim. Accordingly, summary judgment should be awarded to Pfizer on Count III of the Complaint.

## II.  DISCUSSION

From at least 1988 to the present, Montana Medicaid defined Estimated Acquisition Cost ("EAC") as "The Direct Price (DP), the price charged by manufacturers to retailers, will be paid unless the DP is not available to providers in the state. If no DP is available, drugs paid by their Average Wholesale Price (AWP) will be paid at AWP less 10%." *See* Local Rule 56.1 Statement of Undisputed Facts in Support of Pfizer's and Pharmacia's Motion for Summary Judgment ("Pfizer SOF") ¶ 1; Declaration of Scott A. Stempel in Support of Pfizer's and Pharmacia's Motion for Summary Judgment ("Stempel Decl.") Exh. 1.[3]

---

[2]  Plaintiff's "Best Price" claims against Pfizer and Pharmacia were dismissed as to all drugs except Pfizer's drug Lipitor in the Court's June 10, 2004 Memorandum and Order. *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 321 F. Supp. 2d 187, 208 (D. Mass. 2004).

[3]  *See also* Pfizer SOF ¶ 2, Stempel Decl. Exh. 2 (October 1, 1994 state plan setting forth the EAC methodology as "Drugs paid by their Average Wholesale Price (AWP) will be paid at AWP less 10%. The policy for the reimbursement of Direct Price (DP) drugs (the price charged by manufacturers to retailers) is the current direct price (the direct price in effect on the date of service for the claim.[)]").

Montana retained the Direct Price reimbursement language in its 2002 state plan amendment, *see* Pfizer SOF ¶ 4, Stempel Decl. Exh. 4, although it currently does not reimburse any manufacturer's drugs at Direct Price. *See* Pfizer SOF ¶ 5, Stempel Decl. Exh. 12.

2

In 2000, Montana Medicaid amended its definition of EAC, but retained the language that made Direct Price the default reimbursement methodology unless it was not available to Montana providers. Thus, as of October 1, 2000, Montana defined EAC to be:

> "The Direct Price (DP), the price charged by manufacturers to retailers, will be paid unless the DP is not available to providers in the state. If no DP is available, drugs paid by their Average Wholesale Price (AWP) will be paid at AWP less 10%. If the state agency determines that acquisition cost is lower than either the available DP or AWP less 10%, then the state agency may set an allowable acquisition cost based on data provided by the drug pricing file contractor."

Pfizer SOF ¶ 3, Stempel Decl. Exh. 3. Thus, Direct Price has been a State Plan basis for provider reimbursement throughout the time period at issue in this lawsuit.

### A. Summary Judgment Should Be Granted as to Plaintiff's Fraud Claims Because Montana Medicaid Knowingly and Deliberately Chose to Use AWP as a Basis for Reimbursement.

#### 1. Plaintiff Filed This Lawsuit Alleging Montana Had Been Defrauded By AWPs for Drugs That Were Actually Reimbursed at Direct Price.

In his complaint filed February 25, 2002, the Attorney General alleges that Montana was defrauded and suffered damages in overpayments to providers because Montana Medicaid reimbursed for Pfizer's and Pharmacia's prescription drugs at AWP minus 10%. As the record demonstrates, this is patently untrue. Nearly all of the Pfizer drugs at issue, and many of the Pharmacia drugs, were reimbursed at Direct Price, rather than the AWP-based methodology.[4] In

---

[4] Specifically, for drugs bearing the Pfizer labeler code 00049 (a labeler code is the first five digits of the NDC code), 83.7% of claims submitted between January 1991 and June 2001 were reimbursed at Direct Price. Similarly, 95.8% of claims submitted between September 1995 and June 2001 for drugs bearing Pfizer labeler code 00069 were reimbursement at Direct Price. As discussed herein, Montana Medicaid eliminated Direct Price reimbursement for these labeler codes in June 2002, and permitted providers to resubmit claims from the previous 12 months for increased reimbursement. *See* Declaration of Eric M. Gaier, Ph.D., Concerning Direct Price Reimbursements for Pfizer Inc. and Pharmacia Corp. Drugs ("Gaier Direct Price Decl.") at ¶ 4.

For drugs bearing the Upjohn labeler code 00009, 91.1% of claims submitted between January 1991 and June 1999 were reimbursed at Direct Price. For drugs bearing the Parke-Davis labeler code

3

fact, Montana Medicaid continued to reimburse for most of Pfizer's drugs at issue in this lawsuit at Direct Price until July 1, 2002. **It was not until *four months after the filing of its lawsuit* that Montana Medicaid began reimbursing for these drugs using a methodology based upon the allegedly fraudulent AWPs, and it did so with the specific intention of *increasing* the amount of reimbursement to providers.**

The exhibits to Montana's Second Amended Complaint purport to list the drugs for which Montana overpaid as a result of the alleged fraud. Of the 21 Pfizer drugs listed, 19 of them were to be reimbursed at Direct Price during the relevant time period.[5] Pfizer SOF ¶¶ 10-11. Of the 16 Pharmacia drugs listed, 5 were to be reimbursed at Direct Price during the relevant time period. Pfizer SOF ¶¶ 12-13. Such drugs should not have been included in plaintiff's AWP fraud complaint, particularly when the State's actions after the filing of the lawsuit demonstrates that it was fully aware that these drugs were reimbursed at Direct Price, rather than AWP. Furthermore, Montana Medicaid's actions regarding these drugs—including its actions since the filing of this lawsuit—show that it deliberately chose to use AWP as a basis for reimbursement rather than Direct Price in order to increase payments to providers.

### 2. Montana Deliberately Chose to Increase Payments to Pharmacists By Eliminating Direct Price Reimbursement and Moving to AWP-10%.

Because Direct Price results in a lower reimbursement amount than the AWP-10% methodology,[6] *see* Pfizer SOF ¶ 14, Gaier Direct Price Decl. ¶ 5, Montana Medicaid received complaints from pharmacists that they were being insufficiently reimbursed. Pfizer SOF ¶ 15, Stempel Decl. Exhs. 5, 13. In 1998, Montana undertook a survey of pharmacies to determine

---

00071, 51% of claims submitted between January 1991 and June 1992 were reimbursed at Direct Price. *Id.*

[5] Labeler codes 00662, 00663, 00995, and 00710 were listed as Direct Price codes in Montana's documents, *see, e.g.,* Stempel Decl. Exhs. 7, 8, 9, 10, 11, but there were no reimbursements for these drugs in the claims data produced by Montana. Gaier Direct Price Decl. at ¶ 4.

[6] *See* Gaier Direct Price Decl. at ¶ 5.

4

how they were acquiring their drugs. Pfizer SOF ¶ 16, Stempel Decl. Exh. 6. That survey reflected that Montana pharmacists were acquiring Pfizer and Upjohn drugs through wholesalers and buying groups, rather than purchasing them directly from the manufacturers. *Id.* Dorothy Poulsen, Montana Medicaid's Pharmacy Program Officer, explained that the survey was used to determine the availability of Direct Price:

> Q: Do you know whether the survey also looked at whether Montana pharmacies could acquire any drugs at published direct prices?
>
> A: That was the issue, I believe, is that pharmacies in Montana had a great difficulty acquiring drugs at that price. And – and this is speculation on my part. It could be that our system was set up. Our reimbursement system, the PBM system was set up to take the lower of direct price or AWP minus 10%. And so for those labels that's what I'm guessing. **For those labels that were at direct price, they were paying at the direct price but our pharmacies were unable to get the drugs at that cost.**

Pfizer SOF ¶ 18, Stempel Decl. Exh. 13 (emphasis supplied).

Ms. Poulsen further explained, "That based on the survey, they were asking – pharmacists were asking that we do away with direct price because they weren't getting paid what they were having to pay. So they wanted to use AWP minus 10% for everything." Pfizer SOF ¶ 19, Stempel Decl. Exh. 13. As a result, Ms. Poulsen wrote a letter to Jim Smith, president of the Montana State Pharmaceutical Association, in April 1999 proposing that direct price reimbursement be eliminated. Pfizer SOF ¶¶ 20-21, Stempel Decl. Exh. 7. As stated in her letter, Ms. Poulsen wrote that because the "1999 Legislature has authorized a 1% provider increase for each year of the next biennium," Montana Medicaid could apply this increased funding to eliminate Direct Price reimbursement and move to an AWP-10% methodology. Pfizer SOF ¶ 22, Stempel Decl. Exh. 7. Ms. Poulsen acknowledged that "removing all the labels from direct price would result in an **increased cost of approximately $335,868 per year**." Pfizer SOF ¶ 23, Stempel Decl. Exh. 7 (emphasis supplied). Because the legislature's increase

5

was for only $148,208, Ms. Poulsen proposed that Montana Medicaid "phase in elimination of direct price reimbursement by removing labels 00005, 00008, 00009, 00662 and 00663 from this methodology for the 2000-2001 biennium.  **The analysis shows that this will result in approximately $193,854 greater cost to the Medicaid pharmacy program.  If the legislature authorizes another provider increase next biennium, we would continue to eliminate the labels subject to direct price.**"  Pfizer SOF ¶ 24, Stempel Decl. Exh. 7 (emphasis supplied).

In fact, Ms. Poulsen had calculated by hand the increased cost of using an AWP-10% methodology rather than the Direct Price methodology, and so she was well-aware that the AWP-10% methodology resulted in higher reimbursement to pharmacists.  Pfizer SOF ¶ 25; Stempel Decl. Exhs. 8, 13.  The State's production also contains numerous computer printouts reflecting spreadsheets calculating the differences, sometimes by hand, on a drug-by-drug basis, of reimbursing at Direct Price versus AWP-10%, further demonstrating that Montana Medicaid's decision to move to AWP-10% for these drugs was made carefully and deliberately.  *See id.*

On May 27, 1999, Jim Smith replied to Ms. Poulsen after he had presented her proposal to the full membership of the Montana State Pharmaceutical Association at its annual convention.  Mr. Smith wrote that "you can be assured that the leadership of the Association, and the most active, involved members are quite enthused over this proposal."  Pfizer SOF ¶ 26, Stempel Decl. Exh. 9.  Ms. Poulsen's understanding of this letter was that "Because the pharmacies were unable to acquire drugs at the direct price, which so far as I know, was less than AWP minus 10%.  Having that pricing mechanism removed means they would be reimbursed at the AWP minus 10% charge or the usual and customary charge, whichever was less.  And – and **so they would either be able to meet their costs or they would make more money**."  Pfizer SOF ¶ 27, Stempel Decl. Exh. 13 (emphasis supplied).

In 2002, during the next fiscal biennium, Montana Medicaid revisited the Direct Pricing methodology as to the five remaining labeler codes that continued to be reimbursed at Direct Price after 1999.  In response to public comments in opposition to the change in reimbursement from AWP-10% to AWP-15%, Montana decided to increase the dispensing fee to $4.70 from

6

$4.20, eliminate the use of Medicaid AWP prices, and wholly eliminate Direct Price reimbursement. Pfizer SOF ¶¶ 28, 29, Stempel Decl. Exhs. 1, 5. In response to a public comment that "Some pharmacies indicate that the reimbursement for certain drugs are actually lower than the acquisition cost, particularly products by Pfizer and Abbott" Montana Medicaid responded:

> **The Department understands that pharmacies have been reimbursed below their cost for a select number of drugs made by Pfizer and Abbott.** The reason for the underpayment is because selected drugs have continued to be reimbursed at direct price, when in fact direct prices are not available for the majority of pharmacies in the state, that is, pharmaceutical companies are not selling these drugs to pharmacies in Montana at the direct price. ARM 27.86.1101(1)(b) currently provides that if the direct price is not available to providers in the state, the estimated acquisition cost (EAC), on which reimbursement may be based, will be the AWP minus the discount specified in the rule. Thus, at the present time the EAC used to calculate reimbursement should be based on the AWP rather than the direct price.
>
> **For that reason, the Department has eliminated direct pricing from the reimbursement methodology effective June 5, 2002.** This change will enable pharmacies to be paid at the lower o the EAC, Federal Maximum Allowable Cost (FMAC), or their usual and customary charge. Subsection (1)(a) of ARM 37.86.1101, which defines the EAC as the direct cost, is being left in the rule because the direct price may be available to pharmacies in the state at some time in the future. **The Department regrets not being able to change the reimbursement methodology sooner and will allow providers who have been paid incorrectly in the past year to reverse and resubmit those claims which were previously subjected to direct pricing.**

Pfizer SOF ¶ 30, Stempel Decl. Exh. 5.[7]

This position was further confirmed through correspondence from Shannon Marr, the Montana Medicaid Pharmacy Program Officer, to individual providers. Pfizer SOF ¶ 31, Stempel Decl. Exhs. 10, 11. In that correspondence, Ms. Marr explained that Direct Pricing

---

[7] Montana Medicaid's decision to permit providers to resubmit claims for the previous year is reflected in the claims data produced by the State's fiscal agent. Although the rule change was effective June 5, 2002, Direct Price reimbursements for Pfizer's drugs ended on June 1, 2001.

7

would be removed from Pfizer 00049, Pfizer 00069, Abbott 00074, Pfizer 00063 and Pfizer 00995 labels. *Id.* Apologizing for under-reimbursing pharmacists for their purchases of Pfizer and Abbott drugs, she also confirmed that providers would be able to resubmit claims made within the last year. *Id.* Accordingly, providers who had been reimbursed at Direct Price from July 1, 2001 through July 1, 2002 could resubmit claims to be reimbursed at AWP-10% or at their usual and customary charge.

It is undisputed that Montana Medicaid had the option of using Direct Price, rather than AWP, as a basis of reimbursement and, in fact, did so for certain manufacturers' drugs. It is also undisputed that Montana Medicaid recognized that reimbursement at Direct Price resulted in lower payments to providers than using the AWP-10% methodology. Despite plaintiff's claims that the AWPs were "fraudulent" and resulted in "overpayments" to providers, Montana Medicaid chose to use the AWP methodology to reimburse for drugs that had previously been reimbursed at Direct Price. Montana Medicaid did this even after the filing of this lawsuit, and in a deliberate and considered effort to increase drug reimbursement payments to providers. Given such undisputed facts, plaintiff cannot sustain its burden as to its fraud claims, and summary judgment should be granted. *See, e.g., Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435 (Mont. 2003).

### B. At a Minimum, Summary Judgment Should Be Granted as to the Drugs that Were Reimbursed at Direct Price During the Relevant Time Period.

As set forth above, the claims data undisputedly demonstrates that drugs bearing Pfizer's, Upjohn's, and Parke-Davis's labeler codes were reimbursed at Direct Price during the relevant time period. These Direct Price payments were virtually always lower than the payment that would have been made had Montana Medicaid opted to use its AWP-10% methodology. *See* Gaier Direct Price Decl. at ¶ 5 (stating that 191,927 of 192,073 Direct Price payments were below AWP-10%).

8

Nevertheless, plaintiff included these drugs in its listing of drugs with allegedly "fraudulent" AWPs that resulted in what plaintiff claims were overpayments to providers. Plaintiff's expert, Dr. Hartman, even included the drugs reimbursed at Direct Price in his damages calculations, and assessed substantial penalties for those claims. In fact, Dr. Hartman included in his penalty calculations more than 150,000 claims that were, in fact, reimbursed at Direct Price, rather than AWP, and therefore incorrectly assessed over $450,000,000.00 in penalties against Pfizer and Pharmacia for those claims. Gaier Direct Price Decl. at ¶ 6.

Setting aside the fact that Montana's irresponsible actions in naming these drugs in the lawsuit has resulted in nearly five years of unnecessary litigation and discovery expenses that Pfizer and Pharmacia have had to defend, it cannot be disputed that there is simply no factual basis for these drugs to be included in Montana's lawsuit. Montana's fraud claims are premised upon a theory that it was damaged by allegedly fraudulent and inflated AWPs. These drugs, however, were not reimbursed using AWP as a reference. In fact, many of these drugs were not even eligible to be included in the AWP-based reimbursement methodology until *after* Montana filed suit. Accordingly, summary judgment should be granted in favor of Pfizer and Pharmacia for all drugs that were reimbursed at Direct Price during the relevant time period.

### C. Summary Judgment Should Be Granted on Montana's Best Price Claim Regarding Lipitor Because It Is Barred By Settlement and There Is No Evidentiary Support for the Claim in the Record.

The remaining allegations in the Montana Complaint solely address a federal and state settlement involving Lipitor. Montana Second Amended Complaint ¶¶ 631-34; *see also* State Settlement Agreement executed by the State of Montana, ¶ II(C) ("Settlement Agreement"), Pfizer SOF ¶¶ 36-37, Stempel Decl. Exh. 14. The settlement involved Warner-Lambert's unrestricted educational grants to the Ochsner Health Plan in New Orleans, Louisiana in 1999, allegedly in exchange for unrestricted formulary status for Lipitor and a market-share contract.[8]

---

[8] The educational grants were made by the Parke Davis Division of Warner-Lambert. The allegations and "Covered Conduct" in the Settlement Agreement occurred prior to the June 2000 merger of Warner-Lambert into Pfizer Inc. Stempel Decl. Exh. 14 at ¶ I(F).

9

*Id.* The federal government and the states alleged that with respect to the 1999 grants "Warner-Lambert misreported and underpaid its Medicaid rebates to states participating in the Medicaid Rebate Program by calculating its Best Price for Lipitor without factoring in the value of all unrestricted educational grants and rebates that were, in fact, discounts off the purchase price of Lipitor paid to Ochsner . . . [and] were not disclosed to the states or the federal government." (Stempel Decl. Exh. 14 at ¶ II(C)). Montana also contended that it had civil claims against Pfizer — as the successor in interest to Warner-Lambert — under the False Claims Act and "other federal and state statutes and/or common law doctrines." *Id.*

Warner-Lambert denied the contentions and denied any liability relating to the contentions and allegations. *Id.* at ¶ II(F). To "avoid the delay, uncertainty, inconvenience and expense of protracted litigation on the claims," the parties reached a full and final settlement on the claims. *Id.* at ¶ II(G). The settlement was reached after the parties agreed, and incorporated into the agreement, that the "Settlement Agreement [did] not constitute an admission by Warner-Lambert of any liability or wrongful conduct." *Id.* at ¶ II(F).

The State of Montana entered into the Settlement Agreement in November of 2002,[9] and agreed to "release Pfizer . . . from any civil or administrative claims or penalties the state of Montana has or may have for claims submitted to the state Medicaid program for the Covered Conduct." *Id.* at ¶ III(4).

Montana's participation in the Lipitor settlement, and receipt of its share of the settlement proceeds, bars any further recovery on its allegations of "Best Price" fraud in the Complaint. Moreover, after years of discovery, Montana does not have a single piece of evidence supporting (or even relating to) its "Best Price" fraud claim beyond the Settlement Agreement itself. Rather, it has only the allegations in the Complaint relating to the Settlement Agreement. Accordingly, Pfizer is entitled to summary judgment on the "Best Price" fraud claims.

---

[9] Gordon Hage, Director of the Medicaid Fraud Control Unit executed the agreement on October 29, 2002. Montana's Medicaid Director, John Chappuis, executed the agreement on November 1, 2002. Stempel Decl. Exh. 14 at p. 13.

10

## III. CONCLUSION

For the reasons set forth above, summary judgment should be granted in favor of Pfizer and Pharmacia.

Respectfully submitted,

Dated: February 8, 2007

   /s/ Mark D. Smith_____
Mark D. Smith
LAREDO & SMITH, LLP
15 Broad Street, Suite 600
Boston, MA 02109
Tel: (617) 367-7984
Fax: (617) 367-6475

John C. Dodds
Erica Smith-Klocek
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001

Scott A. Stempel
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 739-3000
Fax: (202) 739-3001

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2007, a true and accurate copy of the Memorandum in Support of Pfizer's and Pharmacia's Motion for Summary Judgment was served upon all counsel of record via the Lexis-Nexis Filing System:

DATED: February 8, 2007.

                                            /s/ Mark D. Smith