(h) Electronic claims management.
   (1) In general. In accordance with chapter 35 of title 44, United States Code [44 USCS §§ 3501 et seq.] (relating to coordination of Federal information policy), the Secretary shall encourage each State agency to establish, as its principal means of processing claims for covered outpatient drugs under this title [42 USCS §§ 1396 et seq.], a point-of-sale electronic claims management system, for the purpose of performing on-line, real time eligibility verifications, claims data capture, adjudication of claims, and assisting pharmacists (and other authorized persons) in applying for and receiving payment.
   (2) Encouragement. In order to carry out paragraph (1)--
      (A) for calendar quarters during fiscal years 1991 and 1992, expenditures under the State plan attributable to development of a system described in paragraph (1) shall receive Federal financial participation under section 1903(a)(3)(A)(i) [42 USCS § 1396b(a)(3)(A)(i)] (at a matching rate of 90 percent) if the State acquires, through applicable competitive procurement process in the State, the most cost-effective telecommunications network and automatic data processing services and equipment; and
      (B) the Secretary may permit, in the procurement described in subparagraph (A) in the application of part 433 of title 42, Code of Federal Regulations, and parts 95, 205, and 307 of title 45, Code of Federal Regulations, the substitution of the State's request for proposal in competitive procurement for advance planning and implementation documents otherwise required.

(i) Annual report.
   (1) In general. Not later than May 1 of each year the Secretary shall transmit to the Committee on Finance of the Senate, the Committee on Energy and Commerce of the House of Representatives, and the Committees on Aging of the Senate and the House of Representatives a report on the operation of this section in the preceding fiscal year.
   (2) Details. Each report shall include information on--
      (A) ingredient costs paid under this title [42 USCS §§ 1396 et seq.] for single source drugs, multiple source drugs, and nonprescription covered outpatient drugs;
      (B) the total value of rebates received and number of manufacturers providing such rebates;
      (C) how the size of such rebates compare with the size or [of] rebates offered to other purchasers of covered outpatient drugs;
      (D) the effect of inflation on the value of rebates required under this section;
      (E) trends in prices paid under this title [42 USCS §§ 1396 et seq.] for covered outpatient drugs; and
      (F) Federal and State administrative costs associated with compliance with the provisions of this title [42 USCS §§ 1396 et seq.].

(j) Exemption of organized health care settings.
   (1) Covered outpatient drugs dispensed by health maintenance organizations, including medicaid managed care organizations that contract under section 1903(m) [42 USCS § 1396b(m)], are not subject to the requirements of this section.
   (2) The State plan shall provide that a hospital (providing medical assistance under such plan) that dispenses covered outpatient drugs using drug formulary systems, and bills the plan no more than the hospital's purchasing costs for covered outpatient drugs (as determined under the State plan) shall not be subject to the requirements of this section.
   (3) Nothing in this subsection shall be construed as providing that amounts for covered outpatient drugs paid by the institutions described in this subsection should not be taken into account for purposes of determining the best price as described in subsection (c).

(k) Definitions. In this section--
   (1) Average manufacturer price.
      (A) In general. Subject to paragraph (B), the term "average manufacturer price" means, with respect to a covered outpatient drug of a manufacturer for a rebate period, the average price paid to the manufacturer for the drug in the United States by wholesalers for drugs distributed to the retail pharmacy class of trade.
      (B) Exclusion of customary prompt pay discounts extended to wholesalers. The average manufacturer price for a covered outpatient drug shall be determined without regard to customary prompt pay discounts extended to wholesalers.
      (C) Inclusion of section 505(c) drugs. In the case of a manufacturer that approves, allows, or otherwise permits any drug of the manufacturer to be sold under a new drug application approved under section 505(c) of the Federal

Food, Drug, and Cosmetic Act [*21 USCS § 355(c)*], such term shall be inclusive of the average price paid for such drug by wholesalers for drugs distributed to the retail pharmacy class of trade.

   (2) Covered outpatient drug. Subject to the exceptions in paragraph (3), the term "covered outpatient drug" means-

      (A) of those drugs which are treated as prescribed drugs for purposes of section 1905(a)(12) [*42 USCS § 1396d(a)(12)*], a drug which may be dispensed only upon prescription (except as provided in paragraph (5)), and--

         (i) which is approved for safety and effectiveness as a prescription drug under section 505 or 507 of the Federal Food, Drug, and Cosmetic Act [*21 USCS § 355 or former 357*] or which is approved under section 505(j) of such Act [*21 USCS § 355(j)*];

         (ii) (I) which was commercially used or sold in the United States before the date of the enactment of the Drug Amendments of 1962 [enacted Oct. 10, 1962] or which is identical, similar, or related (within the meaning of *section 310.6(b)(1) of title 21 of the Code of Federal* Regulations) to such a drug, and (II) which has not been the subject of a final determination by the Secretary that it is a "new drug" (within the meaning of section 201(p) of the Federal Food, Drug, and Cosmetic Act [*21 USCS § 321(p)*]) or an action brought by the Secretary under section 301, 302(a), or 304(a) of such Act [*21 USCS § 331, 332(a), or 334(a)*] to enforce section 502(f) or 505(a) of such Act [*21 USCS § 352(f) or 355(a)*]; or

         (iii) (I) which is described in section 107(c)(3) of the Drug Amendments of 1962 [*21 USCS § 321* note] and for which the Secretary has determined there is a compelling justification for its medical need, or is identical, similar, or related (within the meaning of *section 310.6(b)(1) of title 21 of the Code of Federal* Regulations) to such a drug, and (II) for which the Secretary has not issued a notice of an opportunity for a hearing under section 505(e) of the Federal Food, Drug, and Cosmetic Act [*21 USCS § 355(e)*] on a proposed order of the Secretary to withdraw approval of an application for such drug under such section because the Secretary has determined that the drug is less than effective for some or all conditions of use prescribed, recommended, or suggested in its labeling; and

      (B) a biological product, other than a vaccine which--

         (i) may only be dispensed upon prescription,

         (ii) is licensed under section 351 of the Public Health Service Act [*42 USCS § 262*], and

         (iii) is produced at an establishment licensed under such section to produce such product; and

      (C) insulin certified under section 506 of the Federal Food, Drug, and Cosmetic Act *[42 USCS § 356].*

   (3) Limiting definition. The term "covered outpatient drug" does not include any drug, biological product, or insulin provided as part of, or as incident to and in the same setting as, any of the following (and for which payment may be made under this *title [42 USCS §§ 1396* et seq.] as part of payment for the following and not as direct reimbursement for the drug):

      (A) Inpatient hospital services.

      (B) Hospice services.

      (C) Dental services, except that drugs for which the State plan authorizes direct reimbursement to the dispensing dentist are covered outpatient drugs.

      (D) Physicians' services.

      (E) Outpatient hospital services.

      (F) Nursing facility services and services provided by an intermediate care facility for the mentally retarded.

      (G) Other laboratory and x-ray services.

      (H) Renal dialysis.

   Such term also does not include any such drug or product for which a National Drug Code number is not required by the Food and Drug Administration or a drug or biological [product] used for a medical indication which is not a medically accepted indication. Any drug, biological product, or insulin excluded from the definition of such term as a result of this paragraph shall be treated as a covered outpatient drug for purposes of determining the best price (as defined in subsection (c)(1)(C)) for such drug, biological product, or insulin.

   (4) Nonprescription drugs. If a State plan for medical assistance under this *title [42 USCS §§ 1396* et seq.] includes coverage of prescribed drugs as described in section 1905(a)(12) [*42 USCS § 1396d(a)(12)*] and permits coverage of drugs which may be sold without a prescription (commonly referred to as "over-the-counter" drugs), if they are prescribed by a physician (or other person authorized to prescribe under State law), such a drug shall be regarded as a covered outpatient drug.

   (5) Manufacturer. The term "manufacturer" means any entity which is engaged in--

      (A) the production, preparation, propagation, compounding, conversion, or processing of prescription drug products, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, or

      (B) in the packaging, repackaging, labeling, relabeling, or distribution of prescription drug products.

Such term does not include a wholesale distributor of drugs or a retail pharmacy licensed under State law.

(6) Medically accepted indication. The term "medically accepted indication" means any use for a covered outpatient drug which is approved under the Federal Food, Drug, and Cosmetic Act [*21 USCS § § 301* et seq.] or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(i).

(7) Multiple source drug; innovator multiple source drug; noninnovator multiple source drug; single source drug.
   (A) Defined.
      (i) Multiple source drug. The term "multiple source drug" means, with respect to a rebate period, a covered outpatient drug (not including any drug described in paragraph (5)) for which there [is] at least 1 other drug product which--
         (I) is rated as therapeutically equivalent (under the Food and Drug Administration's most recent publication of "Approved Drug Products with Therapeutic Equivalence Evaluations"),
         (II) except as provided in subparagraph (B), is pharmaceutically equivalent and bioequivalent, as defined in subparagraph (C) and as determined by the Food and Drug Administration, and
         (III) is sold or marketed in the State during the period.
      (ii) Innovator multiple source drug. The term "innovator multiple source drug" means a multiple source drug that was originally marketed under an original new drug application approved by the Food and Drug Administration.
      (iii) Noninnovator multiple source drug. The term "noninnovator multiple source drug" means a multiple source drug that is not an innovator multiple source drug.
      (iv) Single source drug. The term "single source drug" means a covered outpatient drug which is produced or distributed under an original new drug application approved by the Food and Drug Administration, including a drug product marketed by any cross-licensed producers or distributors operating under the new drug application.
   (B) Exception. Subparagraph (A)(i)(II) shall not apply if the Food and Drug Administration changes by regulation the requirement that, for purposes of the publication described in subparagraph (A)(i)(I), in order for drug products to rated as therapeutically equivalent, they must be pharmaceutically equivalent and bioequivalent, as defined in subparagraph (C).
   (C) Definitions. For purposes of this paragraph--
      (i) drug products are pharmaceutically equivalent if the products contain identical amounts of the same active drug ingredient in the same dosage form and meet compendial or other applicable standards of strength, quality, purity, and identity;
      (ii) drugs are bioequivalent if they do not present a known or potential bioequivalence problem, or, if they do present such a problem, they are shown to meet an appropriate standard of bioequivalence; and
      (iii) a drug product is considered to be sold or marketed in a State if it appears in a published national listing of average wholesale prices selected by the Secretary, provided that the listed product is generally available to the public through retail pharmacies in that State.

(8) Rebate period. The term "rebate period" means, with respect to an agreement under subsection (a), a calendar quarter or other period specified by the Secretary with respect to the payment of rebates under such agreement.

(9) State agency. The term "State agency" means the agency designated under section 1902(a)(5) [*42 USCS § 1396a(a)(5)*] to administer or supervise the administration of the State plan for medical assistance.

**HISTORY:**
(Aug. 14, 1935, ch 531, Title XIX, § 1927, as added Nov. 5, 1990, P.L. 101-508, Title IV, Subtitle B, Part 1, § 4401(a)(3), 104 Stat. 1388-143; Nov. 4, 1992, P.L. 102-585, Title VI, § 601(a)-(c), 106 Stat. 4962; April 12, 1993, P.L. 103-18, § 2(a), 107 Stat. 54; Aug. 10, 1993, P.L. 103-66, Title XIII, Ch 2, Subch B, Part I, § 13602(a), 107 Stat. 613; Aug. 5, 1997, P.L. 105-33, Title IV, Subtitle H, Ch 1, § 4701(b)(2)(A)(x), Ch 6, § 4756, 111 Stat. 493, 527; Nov. 29, 1999, P.L. 106-113, Div B, § 1000(a)(6), 113 Stat. 1536.)
(As amended Dec. 8, 2003, P.L. 108-173, Title I, § § 101(e)(4), (9), 103(e)(1), 105(b), Title III, § 303(i)(4), Title IX, § 900(e)(1)(K), (L), Title X, Subtitle A, § 1002, 117 Stat. 2151, 2152, 2159, 2166, 2254, 2372, 2431; Oct. 20, 2005, P.L. 109-91, Title I, § 104(a), 119 Stat. 2092; Feb. 8, 2006, P.L. 109-171, Title VI, Subtitle A, Ch. 1, § § 6001(a)-(c)(2), (d)-(f)(2), 6002(a), 6003(a), (b), 6004(a), 120 Stat. 54, 56, 59, 60, 61; Dec. 20, 2006, P.L. 109-432, Div B, Title IV, § 405(c)(2)(A)(ii), 120 Stat. 3000.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

References in text:
   With respect to the Committee on Energy and Commerce of the House of Representatives, referred to in this section, § 1(a)(4), (c)(1) of Act June 3, 1995, P.L. 104-14, which appears as a note preceding *2 USCS § 21*, provides that any reference to such Committee in any provision of law enacted before January 4, 1995, shall be treated as referring to the Committee on Commerce of the House of Representatives, except that it shall be treated as referring to (A) the Committee on Agriculture of the House of Representatives, in the case of a provision of law relating to inspection of seafood or seafood products, (B) the Committee on Banking and Financial Services of the House of Representatives, in the case of a provision of law relating to bank capital markets activities generally or to depository institution securities activities generally, and (C) the Committee on Transportation and Infrastructure of the House of Representatives, in the case of a provision of law relating to railroads, railway labor, or railroad retirement and unemployment (except revenue measures related thereto).


Explanatory notes:
   The bracketed comma has been inserted in subsec. (b)(3)(A)(ii) as the punctuation probably intended by Congress.
   The bracketed paragraph designator "(4)" has been inserted in subsec. (e) to indicate the probable intent of Congress to include it.
   The bracketed word "paragraph" has been inserted in subsec. (g)(2)(C) as the word probably intended by Congress.
   The asterisks in subsec. (g)(3)(B)(iv) have been enclosed in brackets to indicate the probable intent of Congress to delete them.
   The bracketed word "paragraph" has been inserted in subsecs. (g)(3)(C)(i) and (ii) as the word probably intended by Congress.
   The bracketed word "of" has been inserted in subsec. (i)(2)(C) as the word probably intended by Congress.
   The bracketed word "product" has been inserted in subsec. (k)(3) to indicate the probable intent of Congress to include such word.
   The bracketed word "is" has been inserted in the introductory matter of subsec. (k)(7)(A)(i) to indicate the probable intent of Congress to include it.
   A prior § 1927 of Act Aug. 14, 1935, ch 531, Title XIX, was redesignated as § 1928 of the Act by Act Nov. 5, 1990, P.L. 101-508, Title IV, Subtitle B, Part I, § 4401(a)(3), 104 Stat. 1388-143, and is classified as *42 USCS § 1396s*.
   The amendments made by § 1000(a)(6) of Act Nov. 29, 1999, P.L. 106-113, are based on §§ 606(a) and 608(u) of Title VI of H.R. 3426 (113 Stat. 1501A-396, 398), as introduced on Nov. 17, 1999, which was enacted into law by such § 1000(a)(6).


Amendments:

1992. Act Nov. 4, 1992 (applicable as provided by § 601(e) of such Act, which appears as a note to this section), in subsec. (a)(1), substituted "manufacturer), and must meet the requirements of paragraph (5) (with respect to drugs purchased by a covered entity on or after the first day of the first month that begins after the date of the enactment of title VI of the Veterans Health Care Act of 1992) and paragraph (6)." for "manufacturer)." and added paras. (5) and (6); in subsec. (b), in para. (3)(D), substituted "this paragraph or under an agreement with the Secretary of Veterans Affairs described in subsection (a)(6)(A)(ii)" for "this paragraph", substituted "Secretary or the Secretary of Veterans Affairs" for "Secretary" wherever appearing, and substituted "except--" and cls. (i)-(iii) for "except as the Secretary or Secretary of Veterans Affairs determines to be necessary to carry out this section and to permit the Comptroller General to review the information provided.", in para. (4)(B)(ii), substituted "the calendar quarter beginning at least 60 days" for "such period", in cl. (ii), substituted "the manufacturer provides notice to the Secretary." for "of the notice as the Secretary may provide (but not beyond the term of the agreement).", and added cls. (iv) and (v); in subsec. (c)(1), in subpara. (B), in cl. (i), substituted "October 1, 1992," for "January 1, 1993,", in subcl. (II), deleted "and" following the semicolon, and substituted cls. (ii)-(v) for cl. (ii) which read:
   "(ii) for quarters (or other periods) beginning after December 31, 1992, the greater of--
      "(I) the difference between the average manufacturer price for a drug and 85 percent of such price, or

"(II) the difference between the average manufacturer price for a drug and the best price (as defined in paragraph (2)(B)) for such quarter (or period) for such drug.";
and, in subpara. (C), substituted "(excluding any prices charged on or after October 1, 1992, to the Indian Health Service, the Department of Veterans Affairs, a State home receiving funds under *section 1741 of title 38, United States Code*, the Department of Defense, the Public Health Service, or a covered entity described in subsection (a)(5)(B), any prices charged under the Federal Supply Schedule of the General Services Administration, or any prices used under a State pharmaceutical assistance program, and excluding" for "(excluding".

1993. Act April 12, 1993 (effective as if included in the enactment of § 601(c) of Act Nov. 4, 1992, P.L. 102-585, as provided by § 2(b) of Act April 12, 1993), in subsec. (c)(1)(B)(ii)(II), substituted "drug, except that for the calendar quarter beginning after September 30, 1992, and before January 1, 1993, the amount of the rebate may not exceed 50 percent of such average manufacturer price;" for "drug;".

Act Aug. 10, 1993 (effective, with certain exceptions, as if included in the enactment of Act Nov. 5, 1990, P.L. 101-508, as provided by § 13602(d) of such Act, which appears as a note to this section), in subsec. (b), in para. (1)(A), substituted "for a rebate period" for "each calendar quarter (or periodically in accordance with a schedule specified by the Secretary)" and substituted "dispensed after December 31, 1990, for which payment was made under the State plan for such period" for "dispensed under the plan during the quarter (or such other period as the Secretary may specify)", in para. (2)(A), substituted "rebate period" for "calendar quarter" and substituted "units of each dosage form and strength and package size" for "dosage units", inserted "after December 31, 1990", and substituted "the period" for "the quarter", and, in para. (3)(A)(i), substituted "rebate period under the agreement" for "quarter" in two places.

Such Act further (effective as above) substituted subsecs. (c)-(e) for subsecs. (c)-(f)(1), which read:

"(c) Amount of rebate.

(1) Basic rebate for single source drugs and innovator multiple source drugs. With respect to single source drugs and innovator multiple source drugs, each manufacturer shall remit a basic rebate to the State medical assistance plan. Except as otherwise provided in this subsection, the amount of the rebate to a State for a calendar quarter (or other period specified by the Secretary) with respect to each dosage form and strength of single source drugs and innovator multiple source drugs shall be equal to the product of--

"(A) the total number of units of each dosage form and strength dispensed under the plan under this title in the quarter (or other period) reported by the State under subsection (b)(2); and

"(B)

(i) for quarters (or periods) beginning after December 31, 1990, and before October 1, 1992, the greater of--

"(I) the difference between the average manufacturer price (after deducting customary prompt payment discounts) and 87.5 percent of such price for the quarter (or other period), or

"(II) the difference between the average manufacturer price for a drug and the best price (as defined in paragraph (2)(B)) for such quarter (or period) for such drug (except that for calendar quarters beginning after December 31, 1990, and ending before January 1, 1992, the rebate shall not exceed 25 percent of the average manufacturer price, and for calendar quarters beginning after December 31, 1991, and ending before January 1, 1993, the rebate shall not exceed 50 percent of the average manufacturer price);

"(ii) for quarters (or other periods) beginning after September 30, 1992, and before January 1, 1994, the greater of--

"(I) 15.7 percent of the average manufacturer price for the drug, or

"(II) the difference between the average manufacturer price for the drug, except that for the calendar quarter beginning after September 30, 1992, and before January 1, 1993, the amount of the rebate may not exceed 50 percent of such average manufacturer price; and the best price (as defined in subparagraph (C)) for such quarter (or period) for such drug;

"(iii) for quarters (or other periods) beginning after December 31, 1993, and before January 1, 1995, the greater of--

"(I) 15.4 percent of the average manufacturer price for the drug, or

"(II) the difference between the average manufacturer price for the drug and the best price (as defined in subparagraph (C)) for such quarter (or period) for such drug;

"(iv) for quarters (or other periods) beginning after December 31, 1994, and before January 1, 1996, the greater of--

"(I) 15.2 percent of the average manufacturer price for the drug, or

"(II) the difference between the average manufacturer price for the drug and the best price (as defined in subparagraph (C)) for such quarter (or period) for such drug; and
"(v) for quarters (or other periods) beginning after December 31, 1995, the greater of--
"(I) 15.1 percent of the average manufacturer price for the drug, or
"(II) the difference between the average manufacturer price for the drug and the best price (as defined in subparagraph (C)) for such quarter (or period) for such drug.
"(C) For the purposes of this paragraph, the term 'best price' means, with respect to a single source drug or innovator multiple source drug of a manufacturer, the lowest price available from the manufacturer to any wholesaler, retailer, nonprofit entity, or governmental entity within the United States (excluding any prices charged on or after October 1, 1992, to the Indian Health Service, the Department of Veterans Affairs, a State home receiving funds under *section 1741 of title 38, United States Code*, the Department of Defense, the Public Health Service, or a covered entity described in subsection (a)(5)(B), any prices charged under the Federal Supply Schedule of the General Services Administration, or any prices used under a State pharmaceutical assistance program, and excluding depot prices and single award contract prices, as defined by the Secretary, of any agency of the Federal Government). The best price shall be inclusive of cash discounts, free goods, volume discounts, and rebates (other than rebates under this section) and shall be determined without regard to special packaging, labeling, or identifiers on the dosage form or product or package, and shall not take into account prices that are merely nominal in amount;
"(D) In the case of a covered outpatient drug approved for marketing after October 1, 1990, any reference in this paragraph to 'October 1, 1990' shall be a reference to the first day of the first month during which the drug was marketed.
"(2) Additional rebate for single source and innovator multiple source drugs.
(A) Each manufacturer shall remit an additional rebate to the State medical assistance plan in an amount equal to:
"(i) For calendar quarters (or other periods) beginning after December 31, 1990 and ending before January 1, 1994--
"(I) the total number of each dosage form and strength of a single source or innovator multiple source drug dispensed during the calendar quarter (or other period); multiplied by
"(II)
(aa) the average manufacturer price for each dosage form and strength, minus
"(bb) the average manufacturer price for each such dosage form and strength in effect on October 1, 1990, increased by the percentage increase in the Consumer Price Index for all urban consumers (U.S. average) from October 1, 1990, to the month before the beginning of the calendar quarter (or other period) involved;
"(ii) For calendar quarters (or other periods) beginning after December 31, 1993--
"(I) the total number of each dosage form and strength of a single source or innovative multiple source drug dispensed during the calendar quarter (or other period); multiplied by
"(II) the amount, if any, by which the weighted average manufacturer price for single source and innovator multiple source drugs of a manufacturer exceeds the weighted average manufacturer price for the manufacturer as of October 1, 1990, increased by the percentage increase in the Consumer Price Index for all urban consumers (U.S. average) from October 1, 1990, to the month before the beginning of the calendar quarter (or other period) involved.
"(B)
(i) For the purposes of subparagraph (A)(ii), the term 'weighted average manufacturer price' means (with respect to a calendar quarter or other period) the ratio of--
"(I) the sum of the products (for all covered drugs of the manufacturer purchased under a State program under this title) of--
"(aa) the average manufacturer price for each such covered drug; and
"(bb) the number of units of the covered drug sold to any State program under this title during such period, to
"(II) the total number of units of all such covered drugs sold under a State program under this title in such period,
except that the Secretary may exclude certain new drugs from the calculation of the weighted average if the inclusion of any such drug in such calculation has the effect of--
"(aa) reducing the rebate otherwise calculated pursuant to subparagraph (A)(ii); or
"(bb) increasing the rebate otherwise calculated pursuant to subparagraph (A)(ii) (in cases where such calculation under the conditions outlined in clause (ii).
"(ii)

(I) The Secretary may exclude drugs approved by the Food and Drug Administration on or after October 1, 1990, from the calculation of weighted average manufacturer price if manufacturer demonstrates through a petition, in a form and manner prescribed by the Secretary, undue hardship on such manufacturer as a result of the inclusion of such drug in such calculation.

"(II) The Secretary may promulgate guidelines to restrict the conditions under which the Secretary may consider such petitions.

"(C) For each of 8 calendar quarters beginning after December 31, 1991, the Secretary shall compare the aggregate amount of the rebates under subparagraph (A)(i) to the aggregate amount of rebates under subparagraph (A)(ii). Based on any such comparison, the Secretary may propose and utilize an alternative formula for the purpose of calculating an aggregate rebate.

"(3) Rebate for other drugs. The amount of the rebate to a State for a calendar quarter (or other period specified by the Secretary) with respect to covered outpatient drugs (other than single source drugs and innovator multiple source drugs) shall be equal to the product of--

"(A) the applicable percentage (as described in paragraph (4) of the average manufacturer price for each dosage form and strength of such drugs (after deducting customary prompt payment discounts) for the quarter (or other period), and

"(B) the number of units of such form and dosage dispensed under the plan under this title in the quarter (or other period) reported by the State under subsection (b)(2).

"(4) For the purposes of paragraph (3), the applicable percentage is--

"(A) with respect to calendar quarters beginning after December 31, 1990, and ending before January 1, 1994, 10 percent; and

"(B) with respect to calendar quarters beginning on or after December 31, 1993, 11 percent.

"(d) Limitations on coverage of drugs.

(1) Permissible restrictions.

(A) Except as provided in paragraph (6), a State may subject to prior authorization any covered outpatient drug. Any such prior authorization program shall comply with the requirements of paragraph (5).

"(B) A State may exclude or otherwise restrict coverage of a covered outpatient drug if--

"(i) the prescribed use is not for a medically accepted indication (as defined in (k)(6));

"(ii) the drug is contained in the list referred to in paragraph (2); or

"(iii) the drug is subject to such restrictions pursuant to an agreement between a manufacturer and a State authorized by the Secretary under subsection (a)(1) or in effect pursuant to subsection (a)(4).

"(2) List of drugs subject to restriction. The following drugs or classes of drugs, or their medical uses, may be excluded from coverage or otherwise restricted:

"(A) Agents when used for anorexia or weight gain.

"(B) Agents when used to promote fertility.

"(C) Agents when used for cosmetic purposes or hair growth.

"(D) Agents when used for the symptomatic relief of cough and colds.

"(E) Agents when used to promote smoking cessation.

"(F) Prescription vitamins and mineral products, except prenatal vitamins and fluoride preparations.

"(G) Nonprescription drugs.

"(H) Covered outpatient drugs which the manufacturer seeks to require as a condition of sale that associated tests or monitoring services be purchased exclusively from the manufacturer or its designee.

"(I) Drugs described in section 107(c)(3) of the Drug Amendments of 1962 and identical, similar, or related drugs (within the meaning of *section 310.6(b)(1) of title 21 of the Code of Federal* Regulations ('DESI' drugs)).

"(J) Barbiturates.

"(K) Benzodiazepines.

"(3) Update of drug listings. The Secretary shall (except with respect to new drugs approved by the FDA for the first 6 months following the date of approval of such drugs shall not be subject to being listed in paragraph (2) under the provisions of this paragraph), by regulation, periodically update the list of drugs described in paragraph (2) or classes of drugs, or their medical uses, which the Secretary has determined, based on data collected by surveillance and utilization review programs of State medical assistance programs, to be subject to clinical abuse or inappropriate use.

"(4) Innovator multiple-source drugs. Innovator multiple-source drugs shall be treated under applicable State and Federal law and regulation.

"(5) Prior authorization programs. A State plan under this title may not require, as a condition of coverage or payment for a covered outpatient drug for which Federal financial participation is available in accordance with this

section, the approval of the drug before its dispensing for any medically accepted indication (as defined in subsection (k)(6)) unless the system providing for such approval--
   "(A) provides response by telephone or other telecommunication device within 24 hours of a request for prior authorization; and
   "(B) except with respect to the drugs on the list referred to in paragraph (2), provides for the dispensing of at least a 72-hour supply of a covered outpatient prescription drug in an emergency situation (as defined by the Secretary).
   "(6) Treatment of new drugs. A State may not exclude for coverage, subject to prior authorization, or otherwise restrict any new biological or drug approved by the Food and Drug Administration after the date of enactment of this section, for a period of 6 months after such approval.
   "(7) Other permissible restrictions. A State may impose limitations, with respect to all such drugs in a therapeutic class, on the minimum or maximum quantities per prescription or on the number of refills, provided such limitations are necessary to discourage waste.
   Nothing in this section shall restrict the ability of a State to address individual instances of fraud or abuse in any manner authorized under the Social Security Act.
   "(8) Delayed effective date. The provisions of paragraph (5) shall become effective with respect to drugs dispensed under this title on or after July 1, 1991.
   "(e) Denial of Federal financial participation in certain cases. The Secretary shall provide that no payment shall be made to a State under section 1903(a) for an innovator multiple-source drug dispensed on or after July 1, 1991, if, under applicable State law, a less expensive noninnovator multiple source drug (other than the innovator multiple-source drug) could have been dispensed.
   "(f) Pharmacy reimbursement.
   (1) No reductions in reimbursement limits. (A) During the period of time beginning on January 1, 1991, and ending on December 31, 1994, the Secretary may not modify by regulation the formula used to determine reimbursement limits described in the regulations under *42 CFR 447.331* through *42 CFR 447.334* (as in effect on the date of the enactment of the Omnibus Budget Reconciliation Act of 1990) to reduce such limits for covered outpatient drugs.
   "(B) During the period of time described in subparagraph (A), any State that was in compliance with the regulations described in subparagraph (A) may not reduce the limits for covered outpatient drugs described in subparagraph (A) or dispensing fees for such drugs.".
   Such Act further (effective and applicable as above), in subsec. (f), deleted the paragraph designator "(2)" without adding a new designator. Such paragraph is now the last paragraph of subsec. (e).
   Such Act further (effective and applicable as above), in subsec. (k), in para. (1), substituted "rebate period" for "calendar quarter" and inserted ", after deducting customary prompt pay discounts", in para. (3), in subpara. (E), deleted "emergency room visits" following "Outpatient hospital services" and, in the concluding matter, substituted "for which a National Drug Code number is not required by the Food and Drug Administration or a drug or biological used" for "which is used" and added the sentence beginning "Any drug, biological product, or insulin . . .", in para. (6), substituted "or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(i)." for ", which appears in peer-reviewed medical literature or which is accepted by one or more of the following compendia: the American Hospital Formulary Service-Drug Information, the American Medical Association Drug Evaluations, and the United States Pharmacopeia-Drug Information.", in para. (7)(A)(i), substituted "rebate period" for "calendar quarter", redesignated para. (8) as para. (9), and added a new para. (8).
   Such Act further, in subsec. (k)(3), in subpara. (F), purported to substitute "services and services provided by an intermediate care facility for the mentally retarded" for "services", but such substitution was made for "sevices" in order to conform to the probable intent of Congress.


1997. Act Aug. 5, 1997, § 4701(b)(2)(A)(x) (effective and applicable as provided by § 4710 of such Act, which appears as *42 USCS § 1396b* note), in subsec. (j)(1), substituted "health maintenance organizations, including medicaid managed care organizations" for "* * * Health Maintenance Organizations, including those organizations".
   Section 4756 of such Act, in subsec. (g)(1)(B)(i), in subcl. (II), deleted "and" after the concluding comma, redesignated subcl. (III) as subcl. (IV), and added new subcl. (III).

1999. Act Nov. 29, 1999 (applicable as provided by § 606(b) of H.R. 3426, as enacted into law by such Act, which appears as a note to this section), in subsec. (a)(1), substituted "shall become effective as of the date on which the agreement is entered into or, at State option, on any date thereafter on or before" for "shall not be effective until".

Such Act further (effective upon enactment as provided by § 608(bb) of H.R. 3426, as enacted into law by such Act, which appears as *42 USCS § 1396a* note), in subsec. (g)(2)(A)(ii)(II)(cc), substituted "individual's" for "individuals"; in subsec. (i)(1), substituted "the" for "the the" preceding "operation of this section"; and, in subsec. (k)(7), in subpara. (A)(iv), substituted "distributors" for "distributers" and, in subpara. (C)(i), substituted "pharmaceutically" for "pharmaceuutically".


2003. Act Dec. 8, 2003, in subsec. (a)(1), inserted "or under part B of title XVIII"; and, in subsec. (b)(3), in subpara. (A), in cl. (i), substituted the concluding semicolon for "and", in cl. (ii), substituted "; and" for a concluding period, and added cl. (iii), in subpara. (B), in the heading, inserted "and manufacturer's average sales price", and, in the text, inserted "and manufacturer's average sales prices (including wholesale acquisition cost) if required to make payment", and, in subpara. (D), in the introductory matter, inserted "(other than the wholesale acquisition cost for purposes of carrying out section 1847A)", in cl. (i), inserted ", to carry out section 1847A (including the determination and implementation of the payment amount), or to carry out section 1847B", and added the concluding matter; in subsec. (c)(1)(C), in cl. (i), in subcl. (I), inserted "(including inpatient prices charged to hospitals described in section 340B(a)(4)(L) of the Public Health Service Act)", in subcl. (III), deleted "and" following the concluding semicolon, in subcl. (IV), substituted the concluding semicolon for a period, and added subcls. (V) and (VI), and added cl. (iii); and, in subsec. (g)(1)(B)(i), in subcl. (II), added "and" following the concluding semicolon, and deleted subcl. (IV), which read: "(IV) American Medical Association Drug Evaluations; and".

Such Act further, in subsec. (b)(3)(D), in the concluding matter, inserted "and drug pricing data reported under the first sentence of section 1860D-31(i)(1)"; and, in subsec. (e)(4), substituted "The Secretary" for "HCFA".

Such Act further purported to amend subsec. (f)(2) by substituting "The Secretary" for "HCFA"; however, because of prior amendments, this amendment could not be executed.


2005. Act Oct. 20, 2005 (applicable to drugs dispensed on or after 1/1/2006, as provided by § 104(d) of such Act, which appears as *42 USCS § 1396b* note), in subsec. (d)(2), added subpara. (K).


2006. Act Feb. 8, 2006 (applicable to drugs purchased on or after enactment, as provided by § 6004(b) of such Act, which appears as a note to this section), in subsec. (a)(5)(B), inserted "and a children's hospital described in section 1886(d)(1)(B)(iii) which meets the requirements of clauses (i) and (iii) of section 340B(b)(4)(L) of the Public Health Service Act and which would meet the requirements of clause (ii) of such section if that clause were applied by taking into account the percentage of care provided by the hospital to patients eligible for medical assistance under a State plan under this title".

Such Act further, in subsec. (a), added para. (7).

Such Act further (effective on enactment, as provided by § 6001(f)(3) of such Act, which appears as a note to this section), in subsec. (g), in para. (1)(B)(i)(II), inserted "(or its successor publications)", and, in para. (2)(A)(ii), inserted ", or to require verification of the offer to provide consultation or a refusal of such offer".

Such Act further (effective on 1/1/2007, as provided by § 6001(g) of such Act, which appears as a note to this section), in subsec. (b)(3), in subpara. (A), in cl. (i), inserted "month of a" and ", customary prompt pay discounts extended to wholesalers,", in cl. (iii), inserted ", and, for calendar quarters beginning on or after January 1, 2007 and only with respect to the information described in subclause (III), for covered outpatient drugs", and, in the concluding matter, added the sentence beginning "Beginning July 1, 2006, . . .", and, in subpara. (D), in cl. (ii), deleted "and" following the concluding comma, in cl. (iii), substituted the concluding comma for a period, and added cls. (iv) and (v); in subsec. (c)(1), added subpara. (D); in subsec. (e), in para. (4), substituted "Subject to paragraph (5), the Secretary" for "The Secretary", and inserted "(or, effective January 1, 2007), two or more", and added para. (5); inserted subsec. (f); and, in subsec. (k), in para. (1), substituted "(A) In general. Subject to paragraph (B), the term" for "The term", deleted ", after deducting customary prompt pay discounts" following "trade", and added subpara. (B), and in para. (7)(A)(i), in the introductory matter, substituted "at least 1 other drug product" for "are 2 or more drug products", and, in subcls. (I), (II), and (III), substituted "is" for "are" wherever appearing.

Such Act further (effective on 1/1/2007, as provided by § 6003(c) of such Act, which appears as a note to this section), as amended by Act Dec. 20, 2006, in subsec. (b)(3)(A), substituted cl. (i) for one which read: "(i) not later than 30 days after the last day of each month of a rebate period under the agreement (beginning on or after January 1, 1991), on the average manufacturer price (as defined in subsection (k)(1)), customary prompt pay discounts extended to wholesalers, and, (for single source drugs and innovator multiple source drugs), the manufacturer's best price (as defined in subsection (c)(2)(B)) for covered outpatient drugs for the rebate period under the agreement,;", and in cl. (ii), inserted "(including for such drugs that are sold under a new drug application approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act)"; in subsec. (c)(1)(C), in cl. (i), in the introductory matter, inserted "(including the lowest price available to any entity for any such drug of a manufacturer that is sold under a new drug application approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act)", and in cl. (ii), in subcl. (II), deleted "and" following the concluding semicolon, in subcl. (III), substituted "; and" for a concluding period, and added subcl. (IV); and, in subsec. (k)(1), added subpara. (C).

Act Dec. 20, 2006 (effective as if included in Act Feb. 8, 2006, as provided by § 405(c)(2)(A) of Div B of Act Dec. 20, 2006), amended the directory language of Act Feb. 8, 2006.

Other provisions:
**Demonstration projects; prospective drug utilization review; cost-effectiveness of reimbursement for pharmacists' cognitive services.** Act Nov. 5, 1990, P.L. 101-508, Title IV, Subtitle B, Part 1, § 4401(c), 104 Stat. 1388-159, provides:

"(1) Prospective drug utilization review.

   (A) The Secretary of Health and Human Services shall provide, through competitive procurement by not later than January 1, 1992, for the establishment of at least 10 statewide demonstration projects to evaluate the efficiency and cost-effectiveness of prospective drug utilization review (as a component of on-line, real-time electronic point-of-sales claims management) in fulfilling patient counseling and in reducing costs for prescription drugs.

   "(B) Each of such projects shall establish a central electronic repository for capturing, storing, and updating prospective drug utilization review data and for providing access to such data by participating pharmacists (and other authorized participants).

   "(C) Under each project, the pharmacist or other authorized participant shall assess the active drug regimens of recipients in terms of duplicate drug therapy, therapeutic overlap, allergy and cross-sensitivity reactions, drug interactions, age precautions, drug regiment compliance, prescribing limits, and other appropriate elements.

   "(D) Not later than January 1, 1994, the Secretary shall submit to Congress a report on the demonstration projects conducted under this paragraph.

"(2) Demonstration project on cost-effectiveness of reimbursement for pharmacists' cognitive services.

   (A) The Secretary of Health and Human Services shall conduct a demonstration project to evaluate the impact on quality of care and cost-effectiveness of paying pharmacists under title XIX of the Social Security Act [*42 USCS §§ 1396* et seq.], whether or not a drug is dispensed, for drug use review services. For this purpose, the Secretary shall provide for no fewer than 5 demonstration sites in different States and the participation of a significant number of pharmacists.

   "(B) Not later than January 1, 1995, the Secretary shall submit a report to the Congress on the results of the demonstration project conducted under subparagraph (A).".

**Studies; drug purchasing and billing activities of health care systems; pricing; prior approval procedures; payments for vaccines; discounting of drugs under Medicare.** Act Nov. 5, 1990, P.L. 101-508, Title IV, Subtitle B, Part 1, § 4401(d), 104 Stat. 1388-160; Oct. 19, 1996, P.L. 104-316, Title I, § 122(i), 110 Stat. 3837 (effective on enactment, as provided by § 101(e) of such Act, which appears as *2 USCS § 130c* note), provides:

"(1) Study of drug purchasing and billing activities of various health care systems.

   (A) The Comptroller General shall conduct a study of the drug purchasing and billing practices of hospitals, other institutional facilities, and managed care plans which provide covered outpatient drugs in the medicaid program. The study shall compare the ingredient costs of drugs for medicaid prescriptions to these facilities and plans and the charges billed to medical assistance programs by these facilities and plans compared to retail pharmacies.

   "(B) The study conducted under this subsection shall include an assessment of--

      "(i) the prices paid by these institutions for covered outpatient drugs compared to prices that would be paid under this section,

"(ii) the quality of outpatient drug use review provided by these institutions as compared to drug use review required under this section, and

"(iii) the efficiency of mechanisms used by these institutions for billing and receiving payment for covered outpatient drugs dispensed under this title [Title IV of Act Nov. 5, 1990, P.L. 101-508; for full classification, consult USCS Tables volumes].

"(C) By not later than May 1, 1991, the Comptroller General shall report to the Secretary of Health and Human Services (hereafter in this section referred to as the 'Secretary'), the Committee on Finance of the Senate, the Committee on Energy and Commerce of the House of Representatives, and the Committees on Aging of the Senate and the House of Representatives on the study conducted under subparagraph (A).

"(2) Report on drug pricing. The the Comptroller General shall submit to the Secretary, the Committee on Finance of the Senate, the Committee on Energy and Commerce of the House of Representatives, and the Committees on Aging of the Senate and House of Representatives a report on changes in prices charged by manufacturers for prescription drugs to the Department of Veterans Affairs, other Federal programs, hospital pharmacies, and other purchasing groups and managed care plans.

"(3) Study on prior approval procedures.

(A) The Secretary, acting in consultation with the Comptroller General, shall study prior approval procedures utilized by State medical assistance programs conducted under title XIX of the Social Security Act [42 USCS §§ 1396 et seq.], including--

"(i) the appeals provisions under such programs; and

"(ii) the effects of such procedures on beneficiary and provider access to medications covered under such programs.

"(B) By not later than December 31, 1991, the Secretary and the Comptroller General shall report to the Committee on Finance of the Senate, the Committee on Energy and Commerce of the House of Representatives, and the Committees on Aging of the Senate and the House of Representatives on the results of the study conducted under subparagraph (A) and shall make recommendations with respect to which procedures are appropriate or inappropriate to be utilized by State plans for medical assistance.

"(4) Study on reimbursement rates to pharmacists.

(A) The Secretary shall conduct a study on (i) the adequacy of current reimbursement rates to pharmacists under each State medical assistance programs conducted under title XIX of the Social Security Act [42 USCS §§ 1396 et seq.]; and (ii) the extent to which reimbursement rates under such programs have an effect on beneficiary access to medications covered and pharmacy services under such programs.

"(B) By not later than December 31, 1991, the Secretary shall report to the Committee on Finance of the Senate, the Committee on Energy and Commerce of the House of Representatives, and the Committees on Aging of the Senate and the House of Representatives on the results of the study conducted under subparagraph (A).

"(5) Study of payments for vaccines. The Secretary of Health and Human Services shall undertake a study of the relationship between State medical assistance plans and Federal and State acquisition and reimbursement policies for vaccines and the accessibility of vaccinations and immunization to children provided under this title [Title IV of Act Nov. 5, 1990, P.L. 101-508; for full classification, consult USCS Tables volumes]. The Secretary shall report to the Congress on the Study not later than one year after the date of the enactment of this Act.

"(6) [Deleted]".

**Reports on best price changes and payment of rebates.** Act Nov. 4, 1992, P.L. 102-585, Title VI, § 601(d), 106 Stat. 4965 (applicable as provided by § 601(e) of such Act, which appears as a note to this section), provides:

"(d) Reports on best price changes and payment of rebates.

(1) In general. Not later than 90 days after the expiration of each calendar quarter that begins on or after October 1, 1992, and ends on or before December 31, 1995, the Secretary of Health and Human Services shall submit a report to Congress that contains the following information relating to prescription drugs dispensed in the quarter (subject to paragraph (2)):

"(A) With respect to single source drugs and innovator multiple source drugs (as such terms are defined in section 1927(k)(7) of the Social Security Act [subsec. (k)(7) of this section])--

"(i) the percentage of such drugs whose best price (as reported to the Secretary under section 1927(b) of the Social Security Act [subsec. (b) of this section]) increased compared to the best price during the previous calendar quarter, and the amount of expenditures under State plans under title XIX of such Act [42 USCS §§ 1396 et seq.] attributable to such drugs;

"(ii) the percentage of such drugs whose best price (as so reported) decreased compared to the best price during the previous calendar quarter, and the amount of expenditures under State plans under title XIX of such Act [42 USCS §§ 1396 et seq.] attributable to such drugs;

"(iii) the percentage of such drugs whose best price (as so reported) was the same as the best price during the previous calendar quarter, and the amount of expenditures under State plans under title XIX of such Act [*42 USCS § § 1396* et seq.] attributable to such drugs;

"(iv) the median and mean percentage increase (or decrease) in the best price of such single source drugs (as so reported) compared to the best price during the previous calendar quarter, unweighted and weighted (in the case of the mean percentage increase or decrease) by the dollar volume of drugs dispensed;

"(v) the median and mean percentage increase (or decrease) in the best price of such innovator multiple source drugs (as so reported) compared to the best price during the previous calendar quarter, unweighted and weighted (in the case of the mean percentage increase or decrease) by the dollar volume of drugs dispensed; and

"(vi) the median and mean percentage increase (or decrease) in the best price of all such drugs (as so reported) compared to the best price during the previous calendar quarter, unweighted and weighted (in the case of the mean percentage increase or decrease) by the dollar volume of drugs dispensed.

"(B) With respect to all drugs for which manufacturers are required to pay rebates under section 1927(c) of the Social Security Act [subsec. (c) of this section], the Secretary's estimate, on a State-by-State and a national aggregate basis, of--

"(i) the total amount of all rebates paid under such section during the quarter, broken down by the portions of such total amount attributable to rebates described in paragraphs (1), (2), and (3) of such section;

"(ii) the percentages of such total amount attributable to rebates described in paragraphs (1), (2), and (3) of such section; and

"(iii) the amount of the portion of such total amount attributable to the rebate described in paragraph (1) of such section that is solely attributable to the application of subclause (II) of clause (i), (ii), (iii), (iv), or (v) of such paragraph.

"(2) Limitation on drugs subject to report. No report submitted under paragraph (1) shall include any information relating to any prescription drug unless the Secretary finds that expenditures for the drug are significant expenditures under the medicaid program. In the previous sentence, expenditures for a drug are 'significant' if the drug was one of the 1,000 drugs for which the greatest amount of the Federal financial assistance attributable to prescription drugs was paid under section 1903(a) of the Social Security Act [*42 USCS § 1396b(a)*] during calendar year 1991.

"(3) Special rule for initial report. For purposes of the first report required to be submitted under paragraph (1)--

"(A) the Secretary shall submit the report not later than May 1, 1993; and

"(B) the information contained in the report shall include information on prescription drugs dispensed during each calendar quarter that began on or after January 1, 1991, and ended on or before December 31, 1992.".

**Applicability of Nov. 4, 1992 amendments.** Act Nov. 4, 1992, P.L. 102-585, Title VI, § 601(e), 106 Stat. 4966, provides: "The amendments made by this section [amending subsecs. (a)-(c) of this section] shall apply with respect to payments to State plans under title XIX of the Social Security Act [*42 USCS § § 1396* et seq.] for calendar quarters (or periods) beginning on or after January 1, 1993 (without regard to whether or not regulations to carry out such amendments have been promulgated by such date).".

**Effective date and applicability of amendments made by § 13602(a) of Act Aug. 10, 1993.** Act Aug. 10, 1993, P.L. 103-66, Title XIII, Ch 2, Subch B, Part I, § 13602(d), 107 Stat. 619, provides:

"(1) Except as provided in paragraph (2), the amendments made by this section [amending *42 USCS § § 1396a(a)(54), 1396b(i)(10)*, and *1396r-8(b)*-(f), (k)] shall take effect as if included in the enactment of OBRA-1990 [Act Nov. 5, 1990, P.L. 101-508].

"(2) The amendment made by subsection (a)(1) (insofar as such subsection amends section 1927(d) of the Social Security Act [subsec. (d) of this section]) and the amendment made by subsection (c) [amending *42 USCS § 1396a(a)(54)*] shall apply to calendar quarters beginning on or after October 1, 1993, without regard to whether or not regulations to carry out such amendments have been promulgated by such date.".

**Applicability of amendment made by § 606(a) of H.R. 3426.** Act Nov. 29, 1999, P.L. 106-113, Div B, § 1000(a)(6), 113 Stat. 1536 (enacting into law § 606(b) of Title VI of H.R. 3426 (113 Stat. 1501A-396), as introduced on Nov. 17, 1999), provides: "The amendment made by subsection (a) [amending subsec. (a)(1) of this section] applies to agreements entered into on or after the date of enactment of this Act.".

**Applicability of subsec. (c)(1)(C)(i)(VI).** Act Dec. 8, 2003, P.L. 108-173, Title I, § 103(e)(2), 117 Stat. 2160, provides: "Section 1927(c)(1)(C)(i)(VI) of the Social Security Act [subsec. (c)(1)(C)(i)(VI) of this section], as added by paragraph (1), shall apply to prices charged for drugs dispensed on or after January 1, 2006.".

**Requirement to promulgate regulation for determination of average manufacturer prices.** Act Feb. 8, 2006, P.L. 109-171, Title VI, Subtitle A, Ch. 1, § 6001(c)(3), 120 Stat. 55, provides:

"(A) Inspector General recommendations. Not later than June 1, 2006, the Inspector General of the Department of Health and Human Services shall--

"(i) review the requirements for, and manner in which, average manufacturer prices are determined under section 1927 of the Social Security Act [this section], as amended by this section; and

"(ii) shall submit to the Secretary of Health and Human Services and Congress such recommendations for changes in such requirements or manner as the Inspector General determines to be appropriate.

"(B) Deadline for promulgation. Not later than July 1, 2007, the Secretary of Health and Human Services shall promulgate a regulation that clarifies the requirements for, and manner in which, average manufacturer prices are determined under section 1927 of the Social Security Act [this section], taking into consideration the recommendations submitted to the Secretary in accordance with subparagraph (A)(ii).".

**Effective date of amendments made by § 6001(f) of Act Feb. 8, 2006.** Act Feb. 8, 2006, P.L. 109-171, Title VI, Subtitle A, Ch. 1, § 6001(f)(3), 120 Stat. 58, provides: "The amendments made by this subsection [amending *42 USCS §§ 1395x(t)* and *1396r-8(g)*] shall take effect on the date of the enactment of this Act.".

**Effective date of amendments made by § 6001 of Act Feb. 8, 2006.** Act Feb. 8, 2006, P.L. 109-171, Title VI, Subtitle A, Ch. 1, § 6001(g), 120 Stat. 58, provides: "Except as otherwise provided, the amendments made by this section [amending this section] shall take effect on January 1, 2007, without regard to whether or not final regulations to carry out such amendments have been promulgated by such date.".

**Effective date of amendments made by § 6003 of Act Feb. 8, 2006.** Act Feb. 8, 2006, P.L. 109-171, Title VI, Subtitle A, Ch. 1, § 6003(c), 120 Stat. 61, provides: "The amendments made by this section [amending subsecs. (b), (c), (k) of this section] take effect on January 1, 2007.".

**Applicability of amendment made by § 6004 of Act Feb. 8, 2006.** Act Feb. 8, 2006, P.L. 109-171, Title VI, Subtitle A, Ch. 1, § 6004(b), 120 Stat. 61, provides: "The amendment made by subsection (a) [amending subsec. (a)(5)(B) of this section] shall apply to drugs purchased on or after the date of the enactment of this Act.".