UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

MDL NO. 1456

Civil Action No. 01-CV-12257-PBS

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

*State of Montana v. Abbott Labs Inc., et al.,*
D. Mont. Cause No. CV-02-09-H-DWM

**DEFENDANT ABBOTT LABORATORIES' LOCAL RULE 56.1 STATEMENT
OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, Defendant Abbott Laboratories submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment:

**I.     Abbott's Subject Drugs**

1.     Montana's Complaint identifies the following Abbott Subject Drugs: Acetylcysteine, Acyclovir, A-Methapred, Amikacin Sulfate, Aminosyn, Calcijex, Cimetidine, Clindamycin, Dextrose, Diazepam, Fentanyl Citrate, Furosemide, Gentamycin, Heparin, Leucovorin, Liposyn, Lorazepam, Sodium Chloride, Tobramycin, Vancomycin, Biaxin®, Depakote®, and Erythromycin.  Sec. Am. Cmplt. at Exhibit A.

2.     The Abbott Subject Drugs are from two different divisions, the Pharmaceutical Products Division ("PPD") and the Hospital Products Division ("HPD").  Ex. 1, Young Abbott MT Rpt. at ¶¶ 24, 25.

### A.      Abbott's PPD Subject Drugs

3.      Three of the Abbott Subject Drugs, Depakote®, Biaxin®, and Erythromycin, are products manufactured and sold by Abbott's PPD.  Ex. 1, Young Abbott MT Rpt. at ¶ 25.

4.      The Abbott PPD Subject Drugs are self-administered drugs (pills).  Ex. 1, Young Abbott MT Rpt. at ¶ 25.

5.      Depakote® and Biaxin® are branded self-administered pills.  Ex. 1, Young Abbott MT Rpt. at ¶ 25.

6.      Erythromycin is a multiple-source pill.  Ex. 1, Young Abbott MT Rpt. at ¶ 25.

7.      The PPD Subject Drugs are generally sold by Abbott to wholesalers, who in-turn sell them to pharmacists, who then dispense them to customers with prescriptions for that particular drug.  Ex. 1, Young Abbott MT Rpt. at ¶ 69.

8.      95% of Abbott's sales of the Depakote® and Biaxin® Subject Drugs to the retail class of trade were at Wholesale Acquisition Cost ("WAC"), which for these drugs was equal to direct price.  Ex. 1, Young Abbott MT Rpt. at ¶ 45.

9.      Direct price is the list price at which a direct customer can purchase the product on a non-discounted basis.  Ex. 1, Young Abbott MT Rpt. at ¶ 26.

10.     The industry compendia reported Abbott's direct price and WAC for the PPD Subject Drugs along with an AWP.  Ex. 1, Young Abbott MT Rpt. at ¶ 43.

11.     Marketing of branded self administered drugs is generally focused on the doctors that prescribe them, not the pharmacists that dispense them.  Ex. 1, Young Abbott MT Rpt. at ¶¶ 27, 28.

12. For branded products like Depakote® and Biaxin®, the pharmacist must dispense the brand prescribed by the doctor. Ex. 1, Young Abbott MT Rpt. at ¶¶ 27, 28; Ex. 2, Berndt Rpt. at ¶ 42.

13. It is the pharmacist who dispenses these branded pills, and not the physician who prescribes them, that ultimately receives the reimbursement from Montana Medicaid. Ex. 1, Young Abbott MT Rpt. at ¶ 29.

### B.     Abbott's HPD Subject Drugs

14. The remainder of the Abbott Subject Drugs, with the exception of Calcijex, are HPD generic multi-source products. Ex. 1, Young Abbott MT Rpt. at ¶ 34.

15. The Abbott HPD Subject Drugs are generally physician-administered solutions or antibiotics that are sold to hospitals, not retail pharmacies. Ex. 1, Young Abbott MT Rpt. at ¶¶ 35, 37, 65.

16. These HPD Subject Drugs are inexpensive, and the "spread" between AWP and acquisition cost typically translates into small dollar margins. *See* Gaier MT/NV Rpt. and Decl. at ¶ 16.

17. The industry compendia published the direct price and periodically the WAC price for Abbott's HPD Subject Drugs along with an AWP for these drugs. Ex. 1, Young Abbott MT Rpt. at ¶ 26.

18. On April 1, 2004, Abbott spun off its hospital products division into a new separate and independent company. Ex. 1, Young Abbott MT Rpt. at ¶ 5, n. 3.

19. Montana's expert calculates penalties for the HPD Subject Drugs past April, 2004. Ex. 1, Young Abbott MT Rpt. at ¶ 5, n. 3.

20.  Abbott's sales of HPD Subject Drugs to the retail class of trade is inconsequential. From January 1, 1995 to June 30, 2001, 2.60% of sales of Sodium Chloride Bacteriostatic (one of the HPD Subject Drugs) were reimbursed by Medicaid.  Ex. 1, Young Abbott MT Rpt. at ¶¶ 59, 65, 66.

## II.  Montana's Reimbursement Of Abbott's Subject Drugs

21.  Montana Medicaid did not pay a single claim for Calcijex under its pharmacy benefits program.  Ex. 1, Young Abbott MT Rpt. at ¶ 3, n. 1.

22.  Prior to July 2001, Montana Medicaid rarely reimbursed for the Abbott Subject Drugs based on AWP; reimbursement for the Subject Drugs was generally below the AWP based amount and sometimes substantially below the AWP based amount.  Ex. 1, Young Abbott MT Rpt. at ¶ 7.

23.  Prior to July 2001, 99.75% of Depakote®, 100% of Biaxin®, 99.13% of Erythromycin, and 96.6% of the HPD Subject Drugs were reimbursed at amounts other than the AWP based formula.  Ex. 1, Young Abbott MT Rpt. at ¶¶ 48, 55.

24.  In 1997, Medicaid reimbursed for Sodium Chloride Bacteriostatic – an Abbott Subject HPD Drug – at varying levels as low as 85% below the published AWP.  Ex. 1, Young Abbott MT Rpt. at ¶ 63.

25.  Because all of the Abbott Subject Drugs had a direct price, pursuant to Montana's administrative rules, Montana should not have reimbursed any of Abbott's Subject Drugs based on the AWP based formula.  Ex. 1, Young Abbott MT Rpt. at ¶¶ 40, 41.

26.  In 1999, Montana used a budget increase to enable it to begin phasing out direct price reimbursement for certain manufacturers' drugs to increase reimbursement to pharmacies. Ex. 3, MT 005370 – 71; Ex. 4, MT 005369; Ex. 5, MT 005368; Ex. 6, Poulsen Dep. at 184 – 90.

27. Montana began phasing out direct price with the knowledge that it could cost the State an estimated additional $335,868 per year ($105,855 of which it estimated would be from Abbott products). Ex. 3, MT 005370 – 71; Ex. 7, MT 005387.

28. In 2002, Montana decided to eliminate direct price reimbursement altogether as of July 2002. Ex. 8, MT 013531 – 39 at 36; Ex. 9, MT 005358 – 59.

29. In response to a comment to the proposed 2002 changes to reimbursement, Montana stated that pharmacies were reimbursed below their cost for Abbott products. Ex. 8, MT 013531 – 39, at 36.

30. Montana blamed its under-reimbursement of Abbott products on the fact that it was reimbursing based on direct price rather than AWP. Ex. 8, MT 013531 – 39, at 36.

31. Montana made the decision to eliminate direct price reimbursement even though the administrative rules continued to require Montana to use a direct price when one is available. Ex. 8, MT 013531 – 39 at 36.

32. As part of the July 2002 elimination of direct price, Montana allowed providers to reverse and resubmit claims that were paid based on direct price over the prior twelve months. Ex. 9, MT 005358 – 59; Ex. 8, MT 013531 – 39, at 36; Ex. 10, MT 013591.

33. Montana has not calculated damages for Medicaid pharmacy benefit claims ("NDC claims") for the Abbott Subject Drugs, but it has calculated penalties for these claims. Ex. 1, Young Abbott MT Rpt. at ¶ 4, n. 2.

**III.   Montana Medicaid Rebates**

34. Under the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), Abbott was required to calculate and submit to the Federal Government the Average Manufacturer Price ("AMP"). *See* Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 143.

35. OBRA '90 required Abbott to rebate at least 15.1% of the AMP to Montana for each unit of Depakote® and Biaxin® reimbursed by Medicaid. Ex. 1, Young Abbott MT Rpt. at ¶ 49.

36. After receiving this rebate, the amount reimbursed to the retail pharmacy less the rebate paid by the manufacturer to Montana (Montana Medicaid's net effective payment) for the Depakote® and Biaxin® Subject Drugs was below direct price. Ex. 1, Young Abbott MT Rpt. at ¶ 51.

## IV. Montana's Knew That The AWP Of Abbott's Subject Drugs Did Not Equal Acquisition Cost

37. Montana purchased HPD Subject Drugs directly from Abbott for use in its hospitals, prisons, and universities. Ex. 1, Young Abbott MT Rpt. at ¶ 67.

38. Montana contracted with Abbott to purchase HPD Subject Drugs at a discount. Ex. 1, Young Abbott MT Rpt. at ¶ 67.

39. For example, Montana contracted with Abbott to purchase Dextrose and Sodium Chloride in 1991 at a discount of 82.1% off direct price and had similar contacts and discounts for these drugs and other HPD Subject Drugs at various points in time. Ex. 1, Young Abbott MT Rpt. at ¶ 67.

40. Montana Medicaid officials reviewed publications it received from the Office of the Inspector General ("OIG"). Ex. 11, Preshinger Dep. at 126-128.

41. In October 1992, the OIG published a report entitled "Cost of Dialysis-Related Drugs." This report detailed an Estimated Acquisition Cost of Vancomycin (one of the Abbott Subject HPD Drugs) of $5 and a median AWP of $19.17. Ex. 12, from http://oig.hhs.gov/oas/reports/region1/19100526.htm.

42. In December 1997, the OIG published a report entitled "Excessive Medicare Payments For Prescription Drugs." The report listed, among other information, the average Medicare allowed amount, lowest wholesale price found, and the "Actual Average Wholesale Price" of Vancomycin for 1995. Ex. 13, from http://oig.hhs.gov/oei/atod.html.

43. In January 2001, the OIG published "Medicare Reimbursement of Prescription Drugs." The report compared the Medicare median price and Veteran's Affairs median price of Leucovorin Calcium. Ex. 14, from http://oig.hhs.gov/oei/atod.html.

44. In January 2000, the Department of Justice sent Montana a list of suggested AWPs (the "DOJ AWPs"), including AWPs for 15 Abbott Subject Drugs. Ex. 1, Young Abbott MT Rpt. at ¶ 40, n. 32.

45. These DOJ AWPs were lower than the published AWPs for the Abbott Subject Drugs. Ex. 1, Young Abbott MT Rpt. at ¶ 40, n. 32.

46. Montana did not use the DOJ AWPs for any of the Abbott Subject Drugs. Ex. 1, Young Abbott MT Rpt. at ¶ 40, n. 32.

Dated:  February 8, 2007

Respectfully submitted,

/s/ Toni-Ann Citera
Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

James R. Daly
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

**Counsel for Defendant**
**Abbott Laboratories**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2007, I caused a true and correct copy of the foregoing **Defendant Abbott Laboratories, Inc.'s Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment** to be served on liaison counsel (identified below) via Federal Express next day delivery.

                                                  /s/ Toni A. Citera

                                                 Toni A. Citera

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594