# - Exhibit B -

# STATE SETTLEMENT AGREEMENT AND RELEASE

## I. THE PARTIES

This Settlement Agreement ("Agreement") is entered into this 3rd day of December, 2001. The parties to the Agreement are the state of Montana and TAP Pharmaceutical Products Inc. (formerly known as TAP Holdings Inc. and TAP Pharmaceuticals Inc.) ("TAP"), a Delaware corporation with a principal place of business in Lake Forest, Illinois, and are collectively referred to as the "Parties". The Parties now agree as follows:

## II. PREAMBLE

A. WHEREAS, TAP is entering into a civil settlement agreement with the United States of America, acting through and/or on behalf of its Department of Justice and the United States Attorney's Office for the District of Massachusetts, and the Office of Inspector General of the United States Department of Health and Human Services ("HHS-OIG"); TRICARE Management Activity ("TMA")(formerly known as the Office of the Civilian Health and Medical Program of the Uniformed Services), a field activity of the Office of the Secretary of Defense, the United States Department of Defense, and relators in certain federal False Claims Act lawsuits, as well as settlement agreements with the state of Montana and numerous other states, all of which are intended to resolve civil claims for the conduct alleged in Paragraph F below;

B. WHEREAS, this Agreement addresses the state of Montana's claims against TAP for the conduct alleged in Preamble Paragraph F below;

C. WHEREAS, on or before October 16, 2001, or such other date as the Court may set in <u>United States of America v. TAP Pharmaceutical Products Inc.</u>, Criminal Action No. [to be assigned](District of Massachusetts) (the "Criminal Action"), or such other

1

Nothing in this agreement shall be construed as a waiver by TAP of its attorney-client privilege or work product privilege. Notwithstanding that fact, the existence of any such privilege does not affect TAP's obligation to comply with this Agreement.

13. Notwithstanding any provision of this Agreement, TAP is not required to (1) request of its present or former officers, directors, employees or agents that they forego seeking the advice of an attorney nor that they act contrary to that advice; (2) take any action against its directors, employees or agents for following their attorney's advice or for failing to submit to an interview or otherwise cooperate with the state of Montana; or (3) waive any privilege or claim of work product. The failure of any individual to submit to an interview or otherwise to refuse to cooperate with the state of Montana shall not constitute a breach of this agreement by TAP.

14. The state of Montana acknowledges TAP's cooperation in the state of Montana's investigation of drug pricing practices and agrees to communicate the nature and extent of this cooperation to other parties upon the request of TAP. The making of this Agreement, and TAP's provision of information pursuant to it, shall not be construed by the state of Montana as a basis for the exclusion of any of TAP's products from the state of Montana's formulary.

15. TAP represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

16. TAP has entered into a Corporate Integrity Agreement ("CIA") with HHS-OIG. TAP acknowledges that the state of Montana may gain access to and use the pricing information provided by TAP under the CIA, provided that the state of Montana meets its obligations relating to the use and confidentiality of that information as set forth in this Agreement. TAP acknowledges that the CIA does not preclude the state from taking any appropriate action against

13

TAP for future conduct under the state of Montana's laws. The state of Montana hereby agrees to abide by all confidentiality provisions and restrictions contained in the CIA and to afford all such information the maximum degree of confidentiality permitted by law.

17. TAP shall report directly to the Medicaid Program for the state of Montana the average sale price, as defined below, for pharmaceutical and other products for which the Medicaid Program for the state of Montana provides reimbursement (hereafter "Government Reimbursed Products").

(a) AVERAGE SALE PRICE DEFINITION: For purposes of this Agreement, "average sale price" means, with respect to each dosage form, strength and volume of the Government Reimbursed Product (without regard to any special packaging, labeling, or identifiers on the dosage form or product or package) the average of all final sales prices charged by TAP for the product in the United States to all purchasers, excluding those sales exempt from inclusion in the calculation of "Best Price" for Medicaid Drug Rebate purposes, pursuant to 42 U.S.C. § 1396r-8, and excluding direct sales to hospitals. (Those purchasers for which the sales are included in the calculation of average sale price are hereafter referred to as the "Relevant Purchasers".) The prices identified in the calculation of the average sale price should be net of all the following: volume discounts; prompt pay discounts; cash discounts; chargebacks; short-dated product discounts; free goods; rebates[1]; and all other price concessions provided by TAP to any Relevant Purchaser that result in a reduction of the ultimate cost to the purchaser.

---

[1] The term "rebate" as used in this paragraph does not include any payments made by TAP to the States pursuant to the Medicaid Drug Rebate Program (42 U.S.C. § 1396r-8)

14

Notwithstanding the foregoing, the average sale price shall not include the value of bona fide charity care or grants.

TAP shall report the average sale price by National Drug Code ("NDC") for each Government Reimbursed Product identified by TAP's NDC. The average sale price reported shall be properly weighted to reflect the volume of sales at each sale price, *i.e.*, for each NDC, the price reported shall be an average per unit price determined by dividing the sum of all final prices charged by TAP to a Relevant Purchaser, net of all price reductions identified above, for a Government Reimbursed Product in a quarter by the total number of units of that product sold in that quarter.

(b) TIME FRAME: Except as otherwise noted below, thirty (30) days after the last day of each calendar quarter, TAP shall report, in accordance with section 17.a. above, the average sale prices of each of its Government Reimbursed Products identified by TAP's NDC to: (1) the Medicaid programs of those States who have executed a state settlement agreement with TAP; and (2) First DataBank Inc.[2] solely for the purpose of reporting pricing information based on those average sale prices to the Medicaid Programs of those States that have executed a state settlement agreement. The first such report of average sale prices shall be made no later than 30 days after the end of the first full calendar quarter following the Effective Date of the CIA.

(c) CERTIFICATION: With each report of price information TAP sends to the Medicaid Program for the state of Montana, an appropriate employee or agent of TAP will certify

---

[2] If appropriate to reflect changes in the sources from which the Medicaid programs for the Participating States receive pricing information, TAP agrees that, upon the receipt of a written request by any of the Participating States, TAP will report the required information to a drug pricing reporting source other than, and in addition to, First DataBank, provided that the price reporting source agrees to protect the confidentiality of TAP's pricing information in a written agreement containing reasonable provisions equivalent to the confidentiality provisions governing the submission of pricing information to First Data Bank.

that the price information reported has been reported to First DataBank, or any successor or alternative reporting agency, and that the price information has been calculated in accordance with the methodology described in this Agreement. Said certification shall be in the form annexed to this Agreement as Exhibit "A". TAP agrees that this certification by an appropriate employee or agent of TAP constitutes a certification by TAP.

(d) DOCUMENT RETENTION: TAP shall retain all supporting work papers and documentation relating to the average sale price of its Government Reimbursed Products for eight years after the effective date of the CIA, and, to the extent not protected by appropriately asserted privileges, shall make such documentation available for inspection by the MFCU for the state of Montana, or a duly authorized representative of the MFCU, pursuant to the confidentiality provisions set forth in paragraph 18 below.

(e) TIME PERIOD. TAP agrees to submit average sale price in accordance with this Agreement for a period of seven years from the effective date of the CIA.

18. (a) TAP and the state of Montana acknowledge that the pricing information provided by TAP is considered to be confidential commercial information and proprietary trade secrets that if disclosed may cause substantial injury to the competitive position of TAP. It is further understood that all information provided by TAP shall be made available to the state of Montana's MFCU upon request. The state of Montana hereby agrees to afford to the pricing information disclosed by TAP the maximum degree of confidentiality permitted by law.

(b) The Medicaid Program of the state of Montana has been advised by the MFCU of the purpose and use of this information. The parties acknowledge that this information may be relied upon by the state of Montana in establishing reimbursement rates for TAP products, provided

**For the state of Montana:**

By: _John Connor_ Dated: Sept 17, 2001

Title: _Bureau Chief_
_Prosecution Services Bureau_
_Attorney General's Office_

**For the state of Montana Medicaid Program:**

By: _M. Reginald Bullock_ Dated: 9-30-01

Title: _Administrator_

## TAP PHARMACEUTICAL PRODUCTS INC.

By: _H. Thom Watkins_ Dated: 12/3/01
H. THOMAS WATKINS
President
TAP Pharmaceutical Products Inc.

By: _Daniel Reidy_ Dated: 12/4/01
DANIEL REIDY
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601
Counsel to TAP Pharmaceutical Products Inc.

By: _Joseph Savage_ Dated: 12/4/01
JOSEPH SAVAGE
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Counsel to TAP Pharmaceutical Products Inc.