# Exhibit B

ADR, CASREF, LEAD, MDL

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:01-cv-12257-PBS

Citizens for Consume, et al v. Abbott Laboratories,, et al
Assigned to: Judge Patti B. Saris
Referred to: Magistrate Judge Marianne B. Bowler
Demand: $0
Lead case: 1:01-cv-12257-PBS   (View Member Cases)
Related Cases: 1:02-cv-10850-PBS
    1:02-cv-10851-PBS
    1:02-cv-10852-PBS
    1:02-cv-10853-PBS
    1:02-cv-10854-PBS
    1:02-cv-10846-PBS
    1:02-cv-10847-PBS
    1:02-cv-10848-PBS
    1:02-cv-10855-PBS
    1:02-cv-10856-PBS
    1:02-cv-10857-PBS
    1:02-cv-10859-PBS
    1:02-cv-10860-PBS
    1:02-cv-10861-PBS
    1:02-cv-10862-PBS
    1:02-cv-11257-PBS
    1:02-cv-11258-PBS
    1:02-cv-11259-PBS
    1:02-cv-10849-PBS
    1:02-cv-11260-PBS
    1:01-cv-11747-MEL
    1:02-cv-11261-PBS
    1:02-cv-11744-PBS
    1:02-cv-11745-PBS
    1:02-cv-11746-PBS
    1:02-cv-11747-PBS
    1:02-cv-12085-PBS
    1:03-cv-10069-PBS
    1:03-cv-11227-PBS
    1:03-cv-11228-PBS
    1:03-cv-11285-PBS
    1:03-cv-11349-PBS
    1:03-cv-11157-PBS
    1:03-cv-11350-PBS
    1:06-cv-10613-PBS
    1:03-cv-11351-PBS

Date Filed: 12/19/2001
Jury Demand: Both
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

1:03-cv-11348-PBS
1:03-cv-11529-PBS
1:03-cv-11865-PBS
1:07-cv-10271-PBS

Cause: 15:1 Antitrust Litigation

| Date Filed | # | Docket Text |
|---|---|---|
| 11/01/2006 | 3283 | STATUS REPORT *November 1, 2006* by State of California. (Paul, Nicholas) (Entered: 11/01/2006) |
| 11/01/2006 | | Judge Marianne B. Bowler: Electronic ORDER entered granting 2465 Motion to Compel, to the extent set forth on the record in open court; granting 2510 Motion for Protective Order; denying 2603 Motion for Protective Order and denying 2630 Motion to Compel without prejudice, to be renewed in 45 days if necessary. (Bowler, Marianne) (Entered: 11/01/2006) |
| 11/01/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 3276 Motion to Dismiss Pfizer, Inc. "With agreement of the parties, the joint motion is allowed." (Patch, Christine) (Entered: 11/01/2006) |
| 11/01/2006 | 3284 | Proposed Findings of Fact by Oncology Therapeutics Network Corp., Bristol-Myers Squibb Company. (Elberg, Jacob) (Entered: 11/01/2006) |
| 11/01/2006 | 3285 | Joint MOTION to Amend *CMO No. 25* by Schering-Plough Corporation, Warrick Pharmaceuticals Corporation.(Klemeyer, Carisa) (Entered: 11/01/2006) |
| 11/01/2006 | 3286 | STATUS REPORT *November 1, 2006* by All Plaintiffs. (Sobol, Thomas) (Entered: 11/01/2006) |
| 11/01/2006 | 3287 | Proposed Findings of Fact by Schering-Plough Corporation, Warrick Pharmaceuticals Corporation. (Christofferson, Eric) (Entered: 11/01/2006) |
| 11/01/2006 | 3288 | TRIAL BRIEF *[The J&J Defendants' Trial Memorandum]* by Johnson & Johnson. (Schau, Andrew) (Entered: 11/01/2006) |
| 11/01/2006 | 3289 | Proposed Findings of Fact by Johnson & Johnson. (Schau, Andrew) (Entered: 11/01/2006) |
| 11/01/2006 | 3290 | Proposed Findings of Fact by Johnson & Johnson. (Schau, Andrew) (Entered: 11/01/2006) |
| 11/01/2006 | 3291 | Proposed Findings of Fact by Astrazeneca Pharmaceuticals LP. (Schmeckpeper, Katherine) (Entered: 11/01/2006) |
| 11/01/2006 | 3292 | NOTICE by The City of New York and Captioned New York Counties *of Supplemental Authority in Further Opposition to Defendant Merck's Motion to Dismiss* (Attachments: # 1 Exhibit A)(Cicala, Joanne) (Entered: 11/01/2006) |
| 11/01/2006 | 3293 | STATUS REPORT *for November 1, 2006* by The City of New York and Captioned New York Counties. (Cicala, Joanne) (Entered: 11/01/2006) |
| 11/01/2006 | 3294 | STATUS REPORT *November 1, 2006* by State of Florida, State of Florida. (Thomas, Susan) (Entered: 11/01/2006) |
| 11/01/2006 | 3295 | DECLARATION re 3274 Affidavit,, *Trial Declaration of Charles M. Alcorn* by All Plaintiffs. (Berman, Steve) (Entered: 11/01/2006) |

| 11/01/2006 | 3296 | AFFIDAVIT of Direct Testimony of Raymond S. Hartman by All Plaintiffs. (Berman, Steve) (Entered: 11/01/2006) |
|---|---|---|
| 11/01/2006 | 3297 | Proposed Findings of Fact by All Plaintiffs. (Berman, Steve) (Entered: 11/01/2006) |
| 11/01/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 3198 Motion to Amend Date for Filing Objections to Trial Exhibits and Motions so as to Allow for the Same Time Defendants Received to do the Same. (Patch, Christine) (Entered: 11/02/2006) |
| 11/01/2006 | | Judge Patti B. Saris : Electronic ORDER entered. ORDER ADOPTING 3177 REPORT AND RECOMMENDATIONS for 2786 Motion for Sanctions filed by All Plaintiffs, 2907 Motion for Joinder filed by State of Nevada/State of Montana, Action on motions: DENIED. "After review of the plaintiffs' objections, I adopt the report and recommendation. Plaintiffs may propose an alternative discovery schedule to alleviate the burden and expense of Baxter's late production of so many documents."(Patch, Christine) (Entered: 11/02/2006) |
| 11/01/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 3200 Motion for Leave to File Supplemental Notice of Removal; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Patch, Christine) (Entered: 11/02/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/22/2007 13:09:32 | | | |
| **PACER Login:** | kw0083 | **Client Code:** | 1075-012 |
| **Description:** | Docket Report | **Search Criteria:** | 1:01-cv-12257-PBS Start date: 11/1/2006 End date: 11/1/2006 |
| **Billable Pages:** | 21 | **Cost:** | 1.68 |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CITIZENS FOR CONSUME, et al      .      CIVIL ACTION NO. 01-12257-PBS
    Plaintiffs                      .
                       .
         V.                       .      BOSTON, MASSACHUSETTS
                       .      OCTOBER 23, 2006
ABBOTT LABORATORIES, et al        .
    Defendants                      .
. . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the plaintiffs:      Jennifer Connolly, Esquire
                       Wexler Toriseva Wallace LLP
                       One North LaSalle Street, Suite 2000
                       Chicago, IL 60602
                       312-346-2222

For Montana:             Thomas Sobol, Esquire
                       Hagens Berman Sobol Shapiro LLP
                       One Main Street
                       4th Floor
                       Cambridge, MA 02142
                       617-482-3700

For Amgen:               Joseph Young, Esquire
                       Hogan & Hartson, LLP
                       111 South Calvert Street
                       Suite 1600
                       Baltimore, MD 21202
                       410-659-2775

                       Frank Libby, Esquire
                       Kelly Libby & Hoopes, PC
                       175 Federal Street
                       Boston, MA 02110
                       617-338-9300

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

```
Abbott:                  Brian Murray, Esquire
                         James Daly, Esquire
                         Jones Day Reavis & Pogue
                         77 West Wacker Drive
                         Chicago, IL  60601-1692

                         Nerag Pratt, Esquire
                         Patterson Belknap Webb & Tyler
                         1133 Avenue of the Americas
                         New York, NY 10036
                         212-336-2546

                         Brian Pitt, Esquire
                         Shook Hardy and Bacon (DC)
                         600 14th Street NW
                         Hamilton Square, Suite 800
                         Washington, DC 20005-2004

Joint Defendants:        Christopher Dillon, Esquire
                         Ropes & Gray, LLP
                         One International Place
                         Boston, MA 02110
                         617-951-7976

Bayer:                   Michael Doss, Esquire
                         Sidley Austin Brown & Wood, LLP
                         10 S. Dearborn Street
                         Chicago, IL  60602
                         312-853-7502

Immunex:                 Kathleen M. O'Sullivan, Esquire
                         Perkins Coie LLP
                         1201 Third Ave
                         40th Floor
                         Seattle, WA 98101
                         206-359-6375
```

```
Novartis Pharmaceuticals:Samuel Lonergan, Esquire
                         Kaye Scholer LLP
                         425 Park Avenue
                         New York, NY 10022-3598
                         212-836-7499

United States:           Rene Brooker, Esquire
                         United States Department of Justice
                         601 D Street, NW
                         Patrick Henry Building, Room 9028
                         Washington, DC  20004
                         202-307-1088

Ven-a-Care:              James J. Breen, Esquire
                         The Breen Law Firm, P.A.
                         3562 Old Milton Parkway
                         Alpharetta, GA 30005
                         770-740-0008
```

Court Reporter:

Proceedings recorded by digital sound recording, transcript produced by transcription service.

1                                    **I N D E X**

2    Proceedings                                                    3

1               **P R O C E E D I N G S**

2          (Court called into session)

3               THE CLERK:  The Honorable Marianne B. Bowler

4     presiding.  Today is October 23, 2006 in the case of Citizens

5     for Consume, et al v. Abbott Labs, et al.  Civil Action

6     No. 01-12257 will now be heard.  Will counsel please identify

7     themselves for the record.

8               MR. SOBOL:  Good morning, Your Honor, Thomas Sobol,

9     Hagens, Berman, Sobol, Shapiro for the class plaintiffs.

10              THE COURT:  Thank you.

11              MS. CONNOLLY:  Good morning, Your Honor, Jennifer

12    Connolly, Wexler Toriseva Wallace on behalf of the class

13    plaintiffs.

14              THE COURT:  Thank you.

15              MR. BREEN:  Your Honor, Attorney James Breen, I

16    represent the relator, Ven-A-Care of the Florida Keys.

17              THE COURT:  Thank you, very much.

18              Well, we have a number of motions to be dealt with

19    today, and we'll take them in the order in which they've been

20    filed.

21              So starting with docket entry number 2465, Defendant

22    Bayer Corporation's motion.

23              MR. DOSS:  Good morning, Your Honor--

24              THE COURT:  Good morning.

25              MR. DOSS:  --my name's Mike Doss.  I represent Bayer

1   Corporation in this matter, and as you've already noted,

2   this is a motion to compel by Bayer against the state of

3   Montana in that litigation, the AWP litigation out of the state

4   of Montana.  Bayer filed, had a 30(b)(6) notice for a witness

5   from Montana back in January 31st of this year in which it

6   requested that a witness be identified to testify on behalf of

7   the state as to the state's use and consideration of Bayer

8   average sale price information that had been provided to the

9   state since 2001 for a period of five years, and also asked for

10  the state to identify and present a 30(b)(6) witness to testify

11  on communications with NAMFCO, the National Association of

12  Medicare Fraud, well, the Medicare Fraud Coordinators from the

13  various state AG offices.  Your Honor, the state declined to

14  identify a witness to respond to this 30(b)(6) notice, so we

15  have not had any witness appear on behalf of the state on these

16  issues.  This issue, the issue of the state's use and

17  consideration of the Bayer Average sale price information goes

18  to the heart of Bayer's defenses in this case against the state

19  of Montana.  If Your Honor is familiar, Bayer entered in a

20  settlement agreement with the state of Montana back in 2001 and

21  through that settlement agreement, besides paying $6,000, it

22  also agreed to provide average sale price information for every

23  single one of its pharmaceutical products sold in the United

24  States and that was obviously a significant part of the

25  settlement agreement with the state of Montana and our defenses

1 in this case hinge on the Montana's consideration of those

2 average sale price information and its analysis of that

3 information in order to defend ourselves in this case.  That is

4 why we asked for a witness to be identified.

5          Now, the state does not dispute that our notice was

6 timely filed.  It was within the original discovery period

7 which had since been, has since been extended, and also does

8 not dispute that is on issues of relevance to this case which

9 is something that was really beyond dispute.  Instead, the

10 state identifies as I read them three different reasons for why

11 it's declining to produce a single witness to testify.  First

12 it claims that it can't find a witness with personal knowledge

13 on the subjects that we've identified.  Your Honor, that is an

14 improper response because the state is obliged to educate a

15 witness if it can't find one with personal knowledge and to

16 present a witness who can testify on behalf of the state, and

17 we have been providing this ASP information for five years.

18 The state clearly has internal documents that relate to our

19 provision of these ASP information, so it's our position that

20 they certainly have to educate a witness who can testify as

21 best the state can on the subjects that we've identified.  The

22 state's second response is that they've already answered our

23 request, and what they point to in that regard is a

24 one-paragraph interrogatory response.  We, as well as asking

25 for a 30(b)(6) witness on these topics that I've described, we

1  also had an interrogatory that went to the same issue.  They

2  provided a one-paragraph interrogatory response which said that

3  they do not consider the Bayer average sale price information

4  in setting their reimbursement rates in their Medicaid program,

5  and that they have not used it in their Medicaid program

6  because of some manual processes.  Your Honor, that one

7  paragraph response by no means meets the state's obligations to

8  provide a 30(b)(6) witness.  There are a host of questions and

9  issues that we would want to ask a state witness who has been

10 properly prepared to testify on the subjects that we have.  So

11 that again is, there's no basis for claiming that a

12 one-paragraph interrogatory response somehow relieves the state

13 of its obligation to otherwise respond to a fair and

14 appropriate discovery request.

15        Now, their final response to our request is what I

16 view as to be a red herring.  It's simply, they state that

17 Bayer has not been asking these questions of each of the state

18 witnesses who have testified in this case.  The reason that's a

19 red herring, Your Honor, is our notice was presented to the

20 state before any substantive state witness from Montana

21 testified.  The only witnesses before our notice were 30(b)(6)

22 witnesses who testified about certain document and electronic

23 email issues.  They were 30(b)(6) witnesses that were on narrow

24 topics.  In fact, we did ask one of those witnesses about

25 knowledge of the Bayer settlement and the average sale price

1  reporting and that witness declined to have knowledge about

2  that.  Since our notice, we have offered to the state to allow

3  them to designate any of the witnesses who were, who did come

4  and were deposed to have them designate one of those witnesses

5  as a 30(b)(6) witness, and we would simply tag along at the end

6  of the deposition so that the minimum of inconvenience.  They

7  declined to do that for reasons that they could explain, but

8  which were never explained to us.  We are not obliged to simply

9  ask every witness who comes before a deposition about our

10  topics for a couple of reasons.  One, 30(b)(6) allows us to

11  require the state to identify a witness and any response from

12  those witnesses would not necessarily be binding on the state

13  in the same way that 30(b)(6) testimony would be.  So to our

14  mind, that also does not relieve the state of its obligation,

15  and it's an unusual argument in part because the state claims

16  that it doesn't have a party that has personal knowledge.

17          Now, my final point, Your Honor, concerns a

18  supplemental filing that we made with the court back in,

19  earlier this summer, and this goes to why we believe the state

20  should be compelled to produce a witness.  Maybe one of the

21  more significant reasons is, if I may, Your Honor, approach the

22  Court?

23          THE COURT:  Certainly.

24          MR. DOSS:  This is an exhibit to our supplemental

25  response which we were granted leave to submit to the Court and

1   so it's part of the record in this case, Your Honor, but

2   this is a printout of one of Bayer's ASP, what we call ASP

3   reports, average sale price reports, and on the front of it as

4   you can see at the top it's from the second quarter, I believe,

5   of 2001.  Now, the typed part of this document is part of

6   Bayer's production to the state.  This is part of Bayer's

7   reporting.  The handwritten notations are not Bayer's

8   handwriting and it's not Bayer's analysis.  This clearly

9   reflects in our mind that the state has in fact used and

10  considered the Bayer ASP reporting in their work on behalf of

11  Medicaid because it shows a comparison of the average sale

12  price for each of the products listed to a handwritten AWP

13  entry for each one.  It also appears to have a notation about

14  the Texas AMP, which I would assume means average

15  manufacturer's price, but the meaningfulness of this document

16  is we should have a right to ask the state questions about this

17  document and about similar documents and we have not been

18  allowed to.

19          THE COURT:  Do we know who made these entries?

20          MR. DOSS:  We have no knowledge to that, Your Honor.

21  But that's essentially Bayer's position, Your Honor, and we ask

22  that the state be compelled to produce a witness and testify as

23  best they can about the subjects that are at the heart of our

24  defenses and that they properly should be required to provide.

25          Thank you.

| | |
|---|---|
| 1 | THE COURT: All right. In response? |
| 2 | MR. SOBOL: Yes, Your Honor. Tom Sobol for the state |
| 3 | of Montana. Also just to put this in context, the timeframes |
| 4 | that relate to the state cases are not always the same |
| 5 | obviously as they are for the others. Either taken in |
| 6 | isolation with respect to these specific issues-- |
| 7 | THE COURT: Before I go any further-- |
| 8 | MR. SOBOL: Yes. |
| 9 | THE COURT: --I'll ask you if you know who prepared |
| 10 | this? |
| 11 | MR. SOBOL: No. My understanding from my office in |
| 12 | Seattle that handles this directly is that people have not been |
| 13 | able to figure who it is that prepared these notes in the state |
| 14 | of Montana. Either taken in isolation-- |
| 15 | THE COURT: Do we know a date when they were |
| 16 | prepared? Do we have any idea? |
| 17 | MR. SOBOL: No. I mean, there's a document, there's |
| 18 | a document date, there's a date on the document, we have not |
| 19 | been able to find any person in the state of Montana, Medicaid, |
| 20 | that has any knowledge regarding this document at all. |
| 21 | THE COURT: I find that problematic. |
| 22 | MR. SOBOL: Well, taken in isolation, Your Honor, or |
| 23 | in the broader context, the reality is that the information |
| 24 | that people have been able to find is all the information we've |
| 25 | been able to find. The interrogatory answer that the state of |

1   Montana provided, Bayer of course sent out both

2   interrogatories and a Rule 30(b)(6) request on the same day,

3   the last day of the discovery deadline as it then existed.

4   They ask for identical information, the interrogatory and the

5   witness who was going to be provided.  The state of Montana has

6   answered the interrogatory to which it is therefore bound, much

7   like it would be in the 30(b)(6) context to as well to, and

8   it's answer stated that the state of Montana receives Bayer ASP

9   information.  The Bayer ASP information is not used as a

10  benchmark in evaluating, revising or settling payments to

11  providers.  The pricing logarithm for Montana Medicaid is

12  delivered through First Data Bank.  In order to incorporate the

13  Bayer AS, I'm paraphrasing a little bit, incorporating the

14  Bayer ASP information into the logarithm would require a manual

15  process because Medicaid, Montana Medicaid is relatively a

16  small program with limited resources.  It is not able to

17  incorporate the Bayer ASP information into existing period.

18          THE COURT:  The fact that it's a relatively small

19  program suggests to me that somebody knows who prepared this

20  document.

21          MR. SOBOL:  And what we have done is we've undertaken

22  a good faith effort to find out who, and there had been many

23  depositions of persons from Medicaid in Montana that have

24  occurred since the time that this request had came out.  During

25  all those depositions, including two Rule 30(b)(6) witnesses,

1   Montana provided, Bayer of course sent out both

2   interrogatories and a Rule 30(b)(6) request on the same day,

3   the last day of the discovery deadline as it then existed.

4   They ask for identical information, the interrogatory and the

5   witness who was going to be provided.  The state of Montana has

6   answered the interrogatory to which it is therefore bound, much

7   like it would be in the 30(b)(6) context to as well to, and

8   it's answer stated that the state of Montana receives Bayer ASP

9   information.  The Bayer ASP information is not used as a

10  benchmark in evaluating, revising or settling payments to

11  providers.  The pricing logarithm for Montana Medicaid is

12  delivered through First Data Bank.  In order to incorporate the

13  Bayer AS, I'm paraphrasing a little bit, incorporating the

14  Bayer ASP information into the logarithm would require a manual

15  process because Medicaid, Montana Medicaid is relatively a

16  small program with limited resources.  It is not able to

17  incorporate the Bayer ASP information into existing period.

18          THE COURT:  The fact that it's a relatively small

19  program suggests to me that somebody knows who prepared this

20  document.

21          MR. SOBOL:  And what we have done is we've undertaken

22  a good faith effort to find out who, and there had been many

23  depositions of persons from Medicaid in Montana that have

24  occurred since the time that this request had came out.  During

25  all those depositions, including two Rule 30(b)(6) witnesses,

1  there hasn't been a witness who was asked who was able to

2  provide any information beyond the answer to the interrogatory

3  that I've provided here, including the information with respect

4  to this document.  So whether or not, you know, there was or

5  wasn't somebody, and obviously there was somebody at some point

6  who did something with this document, there's no further

7  information with respect to it.  So taken in isolation first in

8  terms of the specific request, the specific request is one

9  which is redundant of what has already occurred and the state

10 of Montanan has answered and done what it can to date and we're

11 on record with respect to that.  If it's then evaluated in the

12 broader context of what's been going on, which is numerous

13 depositions of Montana officials over months, and during that

14 time Bayer has had an opportunity to avail itself of inquiring

15 of any of those witnesses whether there's, you know, would

16 have, so there's a practical ultimately, you know, problem with

17 this motion, and the practical problem is what would they have

18 one do more?  In other words, we have undertaken a good faith

19 diligent effort to find the author to deal with the answers to

20 questions.  We provided them the information that we have.  The

21 only reason to do a Rule 30(b)(6) at this point is to require

22 us to prepare somebody along the dimensions where we wouldn't

23 know what they would be prepared to testify regarding what we

24 did because we don't have the information upon which to make

25 even that judgment.  So as a practical matter, the sort of, the

1   evidence is what the evidence is and we can't, you know, be

2   asked to pretend that there is something more when there isn't

3   going to be more.

4            THE COURT:   Well, I'm afraid that is not good enough.

5   I'll give you 10 days to find somebody, and I think you have to

6   identify that person within 10 days.   This is going on just too

7   long.   You've admitted here yourself this morning that this is

8   a small program.   There can't be that many people.   Somebody

9   has to know when this document was prepared and who prepared

10  it.

11           MR. SOBOL:   Okay.

12           THE COURT:   And if you fail to find anyone, I want it

13  set forth in affidavit form in great detail.

14           MR. SOBOL:   Just, I want to make sure because I want

15  to make sure I follow the intent as well as the words of what

16  you just said, Your Honor.   If we're able to find somebody then

17  we're able to find somebody who has information regarding--

18           THE COURT:   Oh, and I think if you're not able to

19  find somebody, you're gong to have to designate somebody who's

20  going to have be, educate themselves on this and be produced.

21  I'll give you a little bit more time for that, but--

22           MR. SOBOL:   Okay.   We'll do the best we can, Your

23  Honor, to find somebody and put them in a position to be able

24  to say something beyond what's in the document, even--

25           MR. DOSS:   Your Honor, for clarification, this

1  document, which I presented to the Court, is merely an

2  example of the type of questions that we would have for a

3  witness who has been properly presented for the 30(b)(6).

4           THE COURT:  I realize that.

5           MR. DOSS:  I want to make sure that we're not

6  suggesting that the state merely would have to present a

7  witness who would only talk about this document.

8           THE COURT:  No, the documents in this category.

9           MR. DOSS:  Thank you, thank you, Your Honor.

10          THE COURT:  All right, allowed to that extent.

11          All right, moving on.  Next is docket entry number

12  2510, Amgen's motion.

13          MR. YOUNG:  Good morning, Your Honor, Joseph Young on

14  behalf of Amgen.

15          THE COURT:  Thank you.

16          MR. LIBBY:  Frank Libby, Your Honor.  Good morning.

17          THE COURT:  Good morning, Mr. Libby.

18          MR. YOUNG:  Your Honor, Amgen's motion is really a

19  very narrow one, but it's also a very important one to Amgen if

20  we're ever going to be able to figure out how to get to the end

21  of the road with respect to discovery in this case.  That is

22  whether the plaintiffs are entitled to know and to take an

23  additional 30(b)(6) deposition on a broad new array of issues

24  after the agreed upon discovery cutoff, the December 3rd, 2005

25  cutoff in this case, months after that cutoff, and the answer,

1  Your Honor, I frankly submit has got to be no, they can't.
2  When we were last before the Court in March, the Court said you
3  need to be focused on how to narrow discovery, how to tailor it
4  and how to get to the finish line, and we took those
5  instructions.  We've met with the plaintiffs on the omnibus
6  requests.  We've reached agreements and resolved those and
7  taken care of the document aspect of this case, but these
8  requests, Your Honor, threaten to undo all of that.  These are
9  very broad in nature.  They go into new areas, including sales
10 and marketing practices, campaign strategies, relationships
11 with outside consultants, document systems that were used to
12 retain documents relating to each of those, and they go back to
13 1991 through I guess 2005, the date that the Court had set as
14 the cutoff date at the end.  They are in no way different than
15 plaintiff's prior requests for 30(b)(6) depositions and those
16 requests were received.  They were met.  They were honored.
17 Amgen produced witnesses I think earlier than most of the
18 defendants in this case in the spring of 2004, received another
19 request in the summer of 2005, but the plaintiffs have provided
20 no explanation, no excuse as to why four months after the
21 December 3rd cutoff we received yet again a new and a broader
22 request than the request that had been received before. Your
23 Honor, discovery needs to close in this case and, you know, I
24 think in their heart of hearts, the plaintiffs agree with that,
25 and you really don't have to look any further than the

1  pleadings that they filed, other pleadings that the Court is

2  going to consider this morning in connection with the Montana

3  litigation.

4          Now, the plaintiffs in that case filed a motion for a

5  protective order to stop what they claim is untimely requests

6  for third party discovery in that case and admittedly that's

7  going to rise or fall on the specific facts that are unique to

8  that case, but if you look at the language, I think it really

9  shows that the sentiment of the parties are one in the same,

10  and that is that we should end it.  In their motion in June of

11  this year, they stated at some point discovery in this case

12  must end.  That point, subject to the limited exception

13  identified above, was March 2006, and that was the applicable

14  deadline in the Montana case.  Defendants can offer no

15  justification for their delay in serving non-party discovery

16  before the Court.  About six weeks earlier, Amgen filed its

17  motion for protective order in this case, and Amgen stated at

18  some point discovery in this case must end.  That point, with

19  limited exceptions, came and went in December of 2005.

20  Plaintiffs can offer no justification for their delay in

21  noticing the deposition.  Your Honor, the parties need to focus

22  on getting to the finish line and enough is enough.  We

23  shouldn't be sidetracked by a broad new discovery request.

24  Plaintiffs haven't offered any reason why they've delayed for

25  this long to make the request, and I submit that the motion

1    should be granted.

2            THE COURT:  Opposition?

3            MR. SOBOL:  Yes, Your Honor.  The situation with

4    Amgen is marketedly different than with many of the other

5    defendants.  Amgen, unlike other defendants, waited until very

6    late in the game to start producing any documents at all.

7    According to our records, it wasn't until November 1st of 2005

8    that they provided any documents.  They then indicated that

9    what they were willing to do was produce these documents on

10   some kind of a rolling basis, during which some documents did

11   come in.  But then having to review the hundreds of thousands

12   of documents produced by Amgen is a situation that Amgen

13   created knowing that it was going to be impossible if Amgen

14   dragged its feet until the last minute in terms of producing

15   documents for the plaintiffs to be able to do anything with

16   them.  My understanding is in December of 2005, the parties

17   submitted different proposed case management orders to Judge

18   Saris in order to address the timeframe for track two discovery

19   in the case and that there hasn't been a ruling in connection

20   with that.  As a result, there has been some ambiguity in terms

21   of what, you know, deadlines may or may not apply to track two.

22           THE COURT:  Do you know the docket entry number?

23           MR. SOBOL:  I don't, Your Honor.  I will look it up

24   for Your Honor.  There's a couple of docket entries there in

25   that timeframe.

1          Now, with respect to Amgen then, having dragged

2   its heels to produce any documents whatsoever, the plaintiffs

3   submitted and, you know, sent a Rule 30(b)(6) deposition notice

4   which covers the discreet areas, not some kind of fishing

5   expedition, the discreet areas that are necessary in order to

6   inquire of Amgen in the wake of what it is that Amgen produced

7   by way of a voluminous material.

8          I'll also say, Your Honor, this, although Mr. Young

9   comes in today and makes the argument that there's some effort

10  to try to parse things and be, you know, more particular in

11  terms of what should go on and what shouldn't go on, according

12  to the papers that have been filed, I haven't been directly

13  involved in this, but according to the papers that have been

14  filed, Amgen filed this motion without any effort to consult

15  with the plaintiff's counsel, pressed forward an omnibus

16  request that it shouldn't have to produce any witness in

17  response to this Rule 30(b)(6) witness.  So their motion is

18  quashed under Rule 30(b)(6) deposition notice in total.  Not

19  permit any discovery in the wake of this massive document

20  request.  So with all due respect, Your Honor, what I would

21  submit is that this motion as it's currently framed should be

22  denied without prejudice.  If there are discreet areas that

23  they think are going overbroad or over burdensome, the parties

24  can communicate on it, first try to work out a resolution.

25          THE COURT:  Well, can we narrow it right here and

1    now?

2          MR. SOBOL:  Well, I can't, Your Honor.  Because thee

3    are so many, and I say it with all due respect, Your Honor,

4    there are so many defendants that are in this case right now,

5    the person, people who are primarily responsible for dealing

6    with Amgen aren't here.

7          THE COURT:  Why not, the motion's on?

8          MR. SOBOL:  Well, I did not know that we were going

9    to get into that dialogue.  I will say this, I will say this,

10   Your Honor, the reason that the Rule 30--

11         THE COURT:  We don't have much time here, Your Honor?

12         MR. SOBOL:  Yes.

13         THE COURT:  I mean, these motions were, it was

14   docketed that we were going to hear these motions.

15         MR. SOBOL:  Right.

16         THE COURT:  The people that can argue them should be

17   here.

18         MR. SOBOL:  Right.  What I can say is this, Your

19   Honor, having gone through the deposition notice with my

20   colleagues in Seattle, I can tell you that the areas of inquiry

21   that were asked for are areas that are critical for the

22   preparation of the case.  So as far as I know without Amgen

23   proffering some kind of curtailment that would make sense,

24   there is no limitation in the face of the Rule 30(b)(6) itself

25   that can be made in order to be able to enable the plaintiffs

1  the kind of fair discovery in the wake of millions of pages

2  of documents being produced.

3       MR. YOUNG:  Your Honor, very briefly, the request

4  that was made is not covered in any way to the production.  In

5  fact, the request was made prior to the production that was

6  made after our hearing in March, the large production Mr. Sobol

7  is referring to, first.  Second, we're not saying that they're

8  not entitled to any follow-up with respect to that production

9  that was made following the Court's order in March.  In fact,

10  we have agreed with them that we will and tried to as recently

11  as this weekend, to sit down and map out a specific strategy

12  for fact witnesses who are separate and different from

13  corporate designees.  The corporate designees, Your Honor, if

14  you look at the requests, those are specifically, are the kinds

15  of requests that they could have made months ago and years ago.

16  They are the same as they have made of other parties months and

17  years ago and there's no reason to delay it.  We're not trying

18  to stop the discovery with respect to those fact witnesses.

19  We'll work with them on that, but we are trying to cut off and

20  rely on deadlines and agreements that the parties have reached

21  with respect to certain aspects of that discovery and the

22  30(b)(6)'s like interrogatories or like new requests for

23  production are the kinds of discovery that we should now be

24  finished with and we need to move on.

25       MR. SOBOL:  Well, with all due respect, Your Honor,

1    it would be more efficient to do it by way of a Rule

2    30(b)(6).  Rule 30(b)(6) notices can go out well ahead of

3    document production.  The question is how does one undertake an

4    intelligent of a Rule 30(b)(6) witness without the documents

5    and having reviewed them in detail.  It's a, the more efficient

6    process for the defendant to put up a Rule 30(b)(6) witness on

7    the areas that are necessary for the prosecution of the case

8    rather than having the parties now hunt and peck discreet fact

9    witnesses from the millions of pages of documents and try to

10   end discovery in that fashion.  It's going to be more efficient

11   if Amgen says on this topic here's our one or two witness.  On

12   topic two, here's our one or two witnesses and be done with

13   discovery in that method.

14            MR. YOUNG:  Your Honor, the only thing I'd say in

15   response to that is--

16            THE COURT:  Last word.

17            MR. YOUNG:  Okay.  That if it was that important,

18   that that is the process they're looking for, it should have

19   been a process they pursued years ago.

20            THE COURT:  I mean, you say you're going to sit down,

21   when is your plan to sit down?

22            MR. YOUNG:  My plan, Your Honor?  I sat down as

23   recently as Saturday with Mr. Lopez to try and talk about who

24   are you going to need to depose, when are you going to depose

25   them, and the number of fact witnesses.

1          THE COURT:  And what progress did you make?

2          MR. YOUNG:  In advance of this motion, not very much,

3   but certainly we, I mean, we have a good working relationship

4   we'll be talking about it.

5          THE COURT:  I'll grant the motion.

6          All right.  The next one is docket entry number 2603,

7   Immunex.

8          MS. O'SULLIVAN:  Yes, Your Honor, Katie O'Sullivan on

9   behalf of Immunex Corporation.  I first wanted to answer one

10  question you raised.  You asked a docket entry number question.

11  I believe docket entry number 1950 is the Track two defendants

12  submission regarding discovery schedule.  There was a competing

13  plaintiff's filing.  I don't have that docket number.

14         Immunex's motion for protective order should be

15  granted for three reasons.  First, the deposition notice was

16  untimely.  It was issued nearly five months after the discovery

17  cutoff you're been hearing about of December 3rd.  Second, the

18  plaintiffs can offer no justification for delay.  It was

19  certainly nothing caused by what Immunex did which cooperated

20  early and often.  And third, this deposition testimony would be

21  duplicative of depositions already taken of other Immunex

22  employees who worked in the sales organization or who supported

23  the sales force.

24         Just a little bit of background about Immunex which

25  may be unique among the companies in the AWP litigation.  They

1   haven't sold or marketed any drugs since 2002.  They sold a

2   couple of the drugs at issue in 2001, and in 2002 they either

3   sold, licensed or discontinued sales for the remaining drugs at

4   issue.  So what that means is there are no current employees

5   who have any knowledge about the sales and marketing of the

6   drugs at issue.

7           I just want to run down with a timeline of Immunex's

8   good faith compliance with plaintiff's discovery requests,

9   which is totally ignored in the plaintiff's filing.  Immunex

10  began its document production nearly four years ago in December

11  2002 when the company produced over 90 boxes of documents,

12  voluminous electronic files and sales data and of particular

13  relevance to this motion, there was a database that was called

14  a call notes database.  When sales representatives make visits

15  to doctors or customers, they're often called calls.  It's a

16  massive database.  The company produced all of it.  They placed

17  no limitations whatsoever on what the plaintiffs could see in

18  it and six months after the original production, the

19  plaintiff's counsel told Immunex which documents they wanted

20  copies of and which electronic files.  So they formally asked

21  for and got their own copy of that database then, June 2003.

22  About a year later they told us that they didn't have a copy of

23  this Immunex call notes database so we sent them another copy,

24  the same exact CD, that's April 2004, and those letters are

25  exhibits to our motion.  There is no doubt that plaintiffs had

1   access to that database for over two years before they

2   issued this deposition notice at issue.  Also in terms of

3   document productions, Immunex made supplemental productions,

4   mainly of electronic sales data in response to plaintiff's

5   request for more specific types of data.  We completed that

6   production by September of 2005, meaning when the discovery

7   cutoff of December 3rd came as to Immunex, we had no issues

8   about documents with the plaintiff.

9          Now, a quick summary of the depositions.  The May

10  2006 deposition notice at issue is the sixth deposition notice

11  Immunex received from plaintiff in the case.  Eleven Immunex

12  depositions have occurred and for the first five notices we

13  cooperated with the plaintiffs in locating and producing these

14  witnesses who are located around the country.  They started

15  with a 2003 notice, that they then asked to hold in abeyance.

16  We got an April 2004 30(b)96) notice.  We identified three

17  individuals and scheduled their depositions and then the next

18  day after they've been scheduled, the plaintiffs canceled them.

19  We heard from them again May 2005 with a new 30(b)(6).  That

20  was a slightly different notice.  We identified two individuals

21  to testify and they did in September 2005.  We got a November

22  2005 notice of five Immunex fact witnesses.  We made them all

23  available, and given that the notice came only a few weeks

24  before the cutoff, we agreed that the depositions could take

25  place after the cutoff, just due to the challenges of

1   scheduling.  In February 2006, we got a notice for five more

2   witnesses and we said, wait, this is after the December 3rd

3   cutoff, and the plaintiff said, well, but the Montana Nevada

4   discovery is still open and these depositions arguably relate

5   to those cases well and it would be timely there, and that was

6   true.  The cutoff in Montana Nevada wasn't until March 31st.  So

7   we said, fine, go ahead, we don't need to bring this issue to

8   the court, and all five of those depositions went forward.  And

9   in particular, one of these depositions, the witness' name was

10  Joyce Golden in March who's testified at great length about

11  this call notes database and yet we only got the latest notice

12  three months after that, excuse me, I'm miscounting, two months

13  after that deposition.

14          So why is their notice untimely?  The originally

15  discovery cutoff for Track two was October 2005.  Then in March

16  of 2005, Judge Saris set the December 3rd cutoff.  So plaintiffs

17  had eight months warning that this cutoff was coming and as to

18  Immunex, unlike perhaps some other companies, the plaintiff had

19  everything they need.  They had these documents.  They had the

20  electronic files.  They had the call notes database.

21          September 2005, plaintiffs moved for a stay of Track

22  two discovery and Judge Saris denied that.  What happened next

23  is interesting.  The plaintiffs filed a motion for

24  clarification of CMO 16.  Mr. Sobol referenced some ambiguity,

25  and in this motion they submitted a chart with eight defendants

1  and their alleged delay.  You don't see anything about

2  Immunex in that motion because there were no issues.  Judge

3  Saris then issued an order December 1st.  Plaintiffs liked this

4  order.  Judge Saris said this is the holiday season.  There's

5  no reason to complete discovery this month, and we understand

6  that to mean people be reasonable.  Don't force things to get

7  done this month.  There should be a modest extension to

8  accommodate the crush of the holiday season.  We did that as to

9  Immunex and allowed these motions, excuse me, other depositions

10 to go over to `06.  but Judge Saris also said in that order,

11 it's important to keep Track two from becoming the molasses

12 track.  Yet, that is exactly what the plaintiffs are trying to

13 do here as to Immunex, and in our view, at most, plaintiffs

14 should have been given the 90 days they had previous asked for,

15 so discovery either closed December 3rd `05 or no later than

16 March 3, `06, which would be adding the 90 days.

17         The notice is also duplicative for two reasons

18 because they spent an entire deposition with this Joyce Golden

19 person who testified she was in charge of the database.  She

20 explained how the formatting worked, how it was maintained, how

21 it was used, and plaintiffs have already deposed a number of

22 other former Immunex sales management, people who supported the

23 sales force, the former VP of sales, the former head of sales

24 to wholesalers and oncology distributors, national sales

25 mangers, regional sales managers.  There is no need for these

1   other witnesses.  So what did the plaintiff say, they really

2   have two arguments, one saying it's not untimely because Judge

3   Saris never ruled on these competing December '05 filings, but

4   there's no basis for that argument as to Immunex which have

5   fully cooperated and at most, plaintiffs should be given the

6   other 90 days.  Really what the plaintiffs are trying to do

7   here is just exploit the fact that Judge Saris didn't rule on

8   those motions and somehow has sub silentio, but I think they

9   used the phrased tacitly, left discovery open.  That couldn't

10  have been possibly what Judge Saris meant and intended to do in

11  managing this case.

12          And then their second and final argument is that

13  Immunex can't show prejudice if these depositions go forward.

14  Well, we certainly can because when two parties do not have to

15  play by the same rules, there's prejudice there.  As I said, we

16  cooperated early and often for years while discovery was

17  ongoing and just because the plaintiffs decided in May 2006

18  that even more discovery of Immunex would be nice, doesn't mean

19  that it was timely so we ask that you grant the motion.

20          THE COURT:  I'll hear you.

21          MR. SOBOL:  Thank you, Your Honor.  The specific

22  issue with respect to this discovery is that there are five

23  named employees or former employees of Immunex whose comments

24  were discovered in the review of the call notes database that

25  show that these specific five sales people were engaging in

1   efforts with clinicians and physicians to have them engage

2   in a profit motive base prescription of Immunex products, and

3   those, the names of those people and examples of quotes of

4   those sales people are set forth here.

5            THE COURT:  And how many of them are still employed?

6            MR. SOBOL:  I don't know the answer to that.  I think

7   that--

8            MS. O'SULLIVAN:  None, Your Honor.

9            THE COURT:  None.

10           MR. SOBOL:  Okay.  Which, you know, given the

11  timeframe of what we're talking about here would, you know,

12  frankly be anticipated.

13           The issue before, in this motion is not whether or

14  not the parties have been able to get along with respect to

15  discovery in the case.  They obviously have been able to in

16  this situation.  It's also the case that one of the reasons

17  that there have been some fits and starts in the case is that

18  the case got bifurcated into Track one and Track two, which,

19  therefore, had the Track Two defendants moving at a slower pace

20  than was, you know, began at the outset.  In this particular

21  situation, the parties have been able to try to deal with the

22  wrapping up the final details of the discovery process and so

23  when the discovery deadlines were tracked to, slipped in

24  December, the parties in good faith have been trying to figure

25  out the remaining issues that are there.  In good faith, we

1  have identified the names of five specific people who we

2  know have contract, excuse me, specific examples of profit

3  based marketing and sales activity by Immunex.  It would be

4  prejudicial to the plaintiffs not to be able to take their

5  depositions because otherwise Immunex might say, well, we have

6  certain policies.  They're not suppose to do that.  These are

7  world employees, that kind of thing, and this is really--

8        THE COURT:  Where are they located, these five?

9        MS. O'SULLIVAN:  I don't specifically know, Your

10 Honor, but my understanding is that they are generally located

11 across the country as all the former sales employees have been.

12       MR. SOBOL:  So this is sort of when you get down to

13 the final analysis in a case like this, when you're finally

14 able to find those specific employees who, you know, would be,

15 from the plaintiff's point of view, being able to get their

16 testimony under oath before the court for trial eventually,

17 this is the kind of thing you anticipate is always going to be

18 the last thing.  So we should be able to have an opportunity to

19 take their deposition, Your Honor.

20       THE COURT:  Well, because they have been specifically

21 identified, I'll permit it.  So defendant's motion is denied.

22       THE COURT:  All right.  The next is 2630, plaintiffs'

23 motion to compel.

24       MS. CONNOLLY:  Yes, Your Honor, Jennifer Connolly on

25 behalf of the plaintiffs.  Plaintiffs brought this motion to

1   compel and for what we've termed discovery related costs

2   against Abbott's attorneys under Section 1927 because after,

3   over a year of negotiations with Abbott's attorney, they failed

4   to produce five specific categories of documents and instead of

5   producing those five specific categories of documents,

6   proceeded with a document dump of hundreds of thousands of

7   pages of contracting files and price lists which the plaintiffs

8   had specifically said to Abbott we did not want.  And aside

9   from that delay, here are four months after having filed our

10  motion to compel, Abbott still has not completed its document

11  production.  It still has not completed its email production,

12  which is one of the five categories of documents we sought in

13  our motion to compel, and it still owes us a privileged log

14  that it promised us over three months ago.  There is no

15  question that the five categories of documents that we sought

16  are relevant to this case.  Indeed, Abbott has never contended

17  in response to our motion that these documents were irrelevant.

18  As a matter of fact, because Abbott mysteriously produced some

19  categories of these documents after we filed our motion to

20  compel and then again after we filed a reply in support of our

21  motion to compel, Abbott has impliedly conceded that these

22  documents are relevant.  So Abbott hasn't argued that these

23  documents were irrelevant.  Instead, it has said two things.

24  First of all, Abbott says that by virtue of the fact that we

25  served them with omnibus document requests back in March 2004,

1  that Abbott thinks we're overbroad, that we somehow asked

2  for this document dump.  Well, that's not true with regard to

3  any Track two defendant, but it's specifically not true with

4  regard to Abbott, Your Honor, and the reason for that is in the

5  spring and summer of 2005, after plaintiffs had gained the

6  expertise of getting discovery from the Track one defendants,

7  we contacted Abbott and said, you know what, we're not looking

8  for every document that's responsive to the omnibus request.

9  We've gotten a lot of expertise from working with the Track one

10  defendants.  We're looking for a limited set of documents, and

11  beginning in the spring of 2005 throughout the summer and

12  throughout the fall of 2005, there is extensive correspondence

13  that we provided to Your Honor that shows that we specifically

14  wanted these five categories of documents, and we specifically

15  asked them to stop producing these document dump of material,

16  but even though we asked them to do that, they continued to

17  provide CDs on a weekly basis of hundreds of thousands of pages

18  telling us they were relevant documents when in fact they were

19  specifically the documents we said we weren't interested in.

20  So in addition to somehow saying that we asked for these

21  documents, Abbott has also said that it shouldn't be sanctioned

22  because it hasn't outright refused to produce these documents.

23  But of course we would have been better off that come spring

24  2005 they had outright refused to produce these documents

25  because had they done so then, we would have come to Your

1   Honor, asked for an order, and we could have proceeded with

2   discovery.  Instead, we received broken promise after broken

3   promise after broken promise to produce these documents and

4   they simply weren't forthcoming and so we received a partial

5   production immediately after filing a motion to compel nearly a

6   year and a half later.  There's also, Your Honor, a point that

7   these documents were clearly available to Abbott because it

8   produced them nearly immediately after the motion to compel.

9   So there is no undue burden argument that they could have made.

10          The plaintiffs, because we had to wait for these

11  documents, we incurred what we call in the motion,

12  discovery-related cost, which are costs incurred in OCR'ing the

13  entire database of Abbott documents, which my firm has not been

14  required to do with regard to any defendant we're responsible

15  for, Track one or Track two, and also the cost that we incurred

16  in preparing this motion and in preparing this motion doing the

17  detailed analysis we did of average production so that we could

18  represent to the Court the extent of the document dump and the

19  extent to which we have not received relevant documents.

20  Abbott repeatedly has come and said we've produced hundreds and

21  thousands of pages, but the point is that those hundreds of

22  thousands of pages are not the documents that we were actually

23  seeking.

24          Section 1927 authorizes this Court to impose

25  sanctions upon attorneys who reasonable and vexatiously