# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | |
| THIS DOCUMENT RELATES TO:<br><br>*The City of New York v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 04-CV-06054<br><br>*County of Albany v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0425<br><br>*County of Allegany v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0236<br><br>*County of Broome v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0456<br><br>*County of Cattaraugus v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0256<br><br>*County of Cayuga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0423<br><br>*County of Chautauqua v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0214<br><br>*County of Chemung v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6744<br><br>*County of Chenango v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0354<br><br>*County of Columbia v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0867<br><br>*County of Cortland v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0881<br><br>*County of Dutchess v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 05-CV-6458 | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris<br><br>**CAPTIONED PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MERCK'S MOTION FOR LEAVE TO FILE MEMORANDUM IN RESPONSE TO PLAINTIFFS' "NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO MERCK'S MOTION TO DISMISS"** |

*County of Essex v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0878

*County of Fulton v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0519

*County of Genesee v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-00267

*County of Greene v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0474

*County of Herkimer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00415

*County of Jefferson v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0715

*County of Lewis v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0839

*County of Madison v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00714

*County of Monroe v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6148

*County of Niagara v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-06296

*County of Oneida v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0489

*County of Onondaga v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0088

*County of Ontario v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6373

*County of Orleans v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6371

*County of Putnam v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 05-CV-04740

*County of Rensselaer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00422

*County of Rockland v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 03-CV-7055

| | |
|---|---|
| *County of Schuyler v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6387 | |
| *County of Seneca v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6370 | |
| *County of St. Lawrence v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0479 | |
| *County of Saratoga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0478 | |
| *County of Steuben v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6223 | |
| *County of Suffolk v. Abbott Laboratories, Inc., et al.*<br>E.D.N.Y. Case No. 03-CV-12257 | |
| *County of Tompkins v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0397 | |
| *County of Ulster v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 06-CV-0123 | |
| *County of Warren v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0468 | |
| *County of Washington v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0408 | |
| *County of Wayne v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06138 | |
| *County of Westchester v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 03-CV-6178 | |
| *County of Wyoming v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6379 | |
| *County of Yates v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06172 | |

## INTRODUCTION

On November 1, 2006 Plaintiffs filed a Notice of Supplemental Authority in Opposition to Merck's Motion To Dismiss, appending a May 31, 2006 decision from the matter styled *Nevada, ex rel. Steinke v. Merck & Co.*, Inc., 432 F. Supp. 2d 1082 (D. Nev. 2006) ("*Steinke*"). On December 11, 2006, Merck filed a Motion for Leave to File Memorandum in Response to Plaintiffs' "Notice of Supplemental Authority in Opposition to Merck's Motion to Dismiss" and an accompanying "Memorandum in Response to Plaintiffs' 'Notice of Supplemental Authority in Opposition to Merck's Motion to Dismiss'" (the "Merck Memorandum").

Merck argues that leave should be granted because *Steinke* is mistaken and irrelevant and, in any event, plaintiffs' submission is untimely. Merck is wrong on all counts. The *Steinke* court considered allegations akin to those in plaintiffs' Consolidated Complaint regarding Merck's abuse of the Nominal Price Exception ("NPE"). It analyzed the express language of the Medicaid Rebate Statute, the purpose of the NPE, Congressional intent and Merck's alleged misconduct and concluded that the *Steinke* plaintiffs had stated a cause. This ruling is undeniably relevant here given that plaintiffs' allegations track those in *Steinke* and Merck has advanced similar arguments in moving to dismiss plaintiffs' NPE related claims.

Further, plaintiffs' submission of *Steinke* is timely. Plaintiffs filed the decision promptly after Merck's motion for reconsideration of it was effectively withdrawn

## ARGUMENT

### I. *Steinke* Is Relevant

*Steinke* addresses the exact same issue now before this Court on Merck's Motion to Dismiss plaintiffs' consolidated complaint regarding the "proper reading of the Medicaid Rebate Statute." *Id.* at 1085. Both *Steinke* and plaintiffs allege that Merck's nominal pricing programs either had significant qualifications attached to them or were made to commercial, not charitable entities. As such, both *Steinke* and the plaintiffs allege that Merck's deeply discounted prices were not "merely" nominal in amount and should have been included in any calculation of Best Price. *See Steinke* at 1087; *see* Plaintiffs' Consolidated Complaint at ¶¶ 23, 154, 159, 601-607. Given these similarities, it is simply absurd for Merck to suggest that the decision is irrelevant.

## II. *Steinke* Was Correctly Decided

The express terms of the Medicaid Rebate Statute and legislative history firmly demonstrate that the *Steinke* court was correct when it held that the NPE applies only to "all prices that are less than 10% of the AMP, but *without other qualifications*". *Steinke* at 1087 (emphasis added). Merck asserts that this interpretation of the NPE is wrong, and that "[t]he law is clear that manufacturers are required to exclude from Best Price *any price less than 10%* of Average Manufacturer Price." Merck Memorandum at 2 (emphasis added). Notably, Merck's source for this conclusion is neither the Medicaid Rebate Statute itself, nor the legislative history. Rather, Merck cherry picks statements made by CMS and selective portions of the Rebate Agreement in a desperate effort to create ambiguity where there is none

Merck's approach is improper. It is well settled that any evaluation of the Medicaid Rebate Statute must start with the text of the statute itself. That text makes clear that the Medicaid Rebate statute defined Best Price calculations as excluding prices

2

that are "*merely* nominal in amount" (*see* 42 USCS § 1396r-8(c)(1)(C)(ii)). Adopting Merck's reading of the statute (i.e. that *all* prices under 10% of AMP are nominally priced) would render the word "merely" superfluous. Statutory interpretation prohibits such a reading. *See Steinke* at 1086 (cardinal principle of statutory interpretation is to give effect "to every clause and word of a statute").

Legislative history also confirms the *Steinke* ruling. It reveals that Congress did not intend the NPE to be used for all prices in a mathematical band of less than 10% of AMP, but rather to only prices made available to "special purchasers". (*See Steinke* at 1086, citing 136 Cong. Rec. S 12954, *S12962 (1990), quoting congressional statements that the NPE "was intended to exclude those prices that manufacturers offer to special purchasers, such as the sale of birth control pills for a penny a pack to Planned Parenthood.")

Congress also intended that Medicaid receive the "best discounts in the market". *Steinke* at 1086. This too is incompatible with Merck's purely mathematical approach to NPE, as Merck's approach would allow the best discounts to bypass Medicaid entirely.

Rather than respond to this legislative history, Merck argues that because the Deficit Reduction Act of 2005 reaffirmed that the nominal price exception applies only to certain purchasers, this means that the existing NPE was never limited to charitable institutions or prices contingent on a purchase requirement. *See* Merck Memorandum at 4. As set forth above however, and in *Steinke*, the express language of the Rebate Statute and the Legislative History makes clear the purpose of the NPE from its inception.

3

### III. Merck Admits That Free Goods Contingent On A Purchase Requirement Must Be Included In Best Price; Free Goods Are Nominally Priced Goods

Merck admits, as it must, that free goods that are contingent on any purchase requirement shall be included in Best Price. *Steinke* at 1085. Merck tries to divorce this point from its bright line approach to NPE, however, by stating in conclusory fashion that the "free goods" section of the Best Price definition is "separate" from interpretation of the NPE. *See* Merck at 3. Merck is obviously incorrect. Free goods are nominally priced even under Merck's overly broad definition; they are "less than 10% of Average Manufacturer Price." *See* Merck Memorandum at 2.

### IV. Subsequent Legislative History Also Confirms *Steinke*.

On January 31, 2007 the Bi-Partisan leadership of the Senate Finance Committee (the "Committee") sent a Letter (the "Letter") to CMS "to report to CMS the Committee's findings with respect to its review of nominal pricing." Letter at 2 annexed as Exhibit A. This letter provides even further evidence of Congress' past and present view of the meaning of the NPE, and confirms that the NPE was to be applied based on the *type* of transaction (*i.e.* charitable or commercial), as opposed to only the *amount* of the transaction, (*i.e.* less than 10% of AMP). The Committee summarized Congressional intention regarding the meaning of the NPE, stating unambiguously that (1) the nominal price exception was intended to be used for charitable purposes only[1] (2) "Congress most

---

[1] The Ranking Committee members stated "Congress included the NPE in the Medicaid reforms of OBRA 1990 to ensure that efforts to more closely align Medicaid's drug pricing with pricing for private purchasers did not threaten the steep discounts on pharmaceutical products offered to certain purchasers. **Recognizing that charitable and other organizations that provide health care to populations with limited access to health care often receive special discount prices for pharmaceutical products, Congress wanted to encourage manufacturers to continue offering deep discounts to such purchasers. Specifically, by excluding nominal prices from a manufacturer's best price calculation, Congress, under the original law, intended to allow pharmaceutical manufacturers to continue offering discounts to charitable**

4

certainly did not intend for manufacturers to use the NPE as a marketing tool," and (3) "manufacturers were on notice that the primary intent of the NPE was to benefit charitable organizations" Letter at 6.

The Committee further stated:

(1) The interpretation [of charitable intent] is reinforced by a report by the Senate Special Committee on Aging, entitled "Developments in Aging: 1990", which stated that the rationale behind the NPE was that "Congress did not want to threaten" the dramatic discounts offered to "charitable organizations and clinics" by requiring manufacturers to calculate and remit rebates based on prices not calculated with the market or any profit motive in mind. *Id.* at 5;

(2) The Veterans Administration views "nominal" pricing as being pricing, usually below cost, designed to benefit the public by financially aiding disadvantaged, not-for-profit covered drug dispensaries or researchers using a drug for an experimental or non-standard purpose. *Id.* at 5-6;

(3) Covington and Burling (who, notably serve as counsel to certain defendants herein) agreed that that "[t]he exclusion of nominal prices from BP calculations was primarily intended to avoid a chilling effect on manufacturers' in-kind contributions to charitable programs. CMS has adopted a bright-line rule that a nominal price is any price lower than 10% of AMP for the quarter. A nominal price, however, cannot be conditioned on any purchase requirements. If it is, it may become relevant for BP purposes." *Id.* at 6.

Taken together, these various portions of the Congressional record make Congress' intent clear - the NPE was not intended to be a simplistic mathematical formula as Merck suggests. Rather, it was an exception unambiguously intended to avoid discouraging charitable giving. As such, Congress in no way intended the NPE to be used for commercial practices.

---

**organizations without dramatically increasing the rebate due to states.** If nominal prices were not excluded from a manufacturer's best price calculation, a manufacturer that offered discounts to charitable organizations greater than those offered to regular customers would have to remit to the State Medicaid program a rebate for the difference between AMP and the deeply discounted price. Concerned that manufacturers might stop offering such discounts as a result, Congress saw the nominal pricing exception as a way to maintain the practice of deep discounts to charitable organizations while still attempting to more closely align Medicaid's drug pricing with pricing for private purchasers." Letter at 4. (Emphasis added).

5

### IV. Selective CMS Statements On NPE Do Not Trump The Plain Meaning Of The Statute Or Congressional Intent

Merck's tortured approach to the NPE rests almost entirely on cherry-picked statements by CMS. Even if these statements said what Merck asserts they do (and they do not), the statements would not trump the plain meaning of the Medicaid Rebate Statute or Congressional intent as discussed above. S*ee Steinke* at 1085, citing *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)(agency interpretation is only permissible where it is consistent with congressional intent.)

### VI. Plaintiffs' Notice Is Timely

Plaintiffs' submission of *Steinke* was timely. While the decision issued on May 31, 2006, Merck immediately filed a motion to certify for interlocutory appeal[2] and a motion for reconsideration[3]. Those motions were effectively withdrawn on October 18, 2006 when Nevada and Merck stipulated they would stay the case "to facilitate ongoing settlement discussions". Plaintiffs promptly filed *Steinke* as supplementary authority thereafter (on November 1, 2006). Had plaintiffs submitted *Steinke* sooner, Merck certainly would have objected on the grounds that it was subject of a motion for reconsideration. This prong of Merck's response should be disregarded entirely.

---

[2] Merck's Motion to Certify for Interlocutory Appeal the Court's Order Denying Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint by Defendant Merck and Co., Inc. was filed on July 5, 2006. *See Steinke* docket entry #57 attached as Exhibit B.

[3] Merck's Motion to Reconsider District Court's Order on Motion to Dismiss Plaintiffs' First Amended Complaint was filed while the interlocutory appeal was still pending on August 21, 2006. *See Steinke* docket entry #68 attached as Exhibit C.

6

## CONCLUSION

For the foregoing reasons, Merck's motion for leave should be denied.

Dated: February 23, 2007

        Respectfully submitted,

        KIRBY McINERNEY & SQUIRE, LLP
        830 Third Avenue
        New York, New York 10022
        (212) 371-6600

        By:    /s/Joanne M. Cicala
        Joanne M. Cicala (JC 5032)
        James P. Carroll Jr. (JPC 8348)
        Aaron D. Hovan (AH 3290)