UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO UNITED STATES' AND RELATOR'S MOTION FOR A COMPREHENSIVE CASE MANAGEMENT ORDER AND IN SUPPORT OF REVISED PROPOSED CASE MANAGEMENT ORDER

### BACKGROUND

The Court recently issued an electronic notice scheduling a hearing for February 27, 2007 on Plaintiffs United States' and Relator's Motion for a Comprehensive Case Management Order, which was filed on September 15, 2006 (Dkt. No. 3107). Among other things, Plaintiffs' motion and accompanying proposed case management order seeks to establish discovery limits, not only on Abbott but jointly upon an undetermined number of unnamed defendants that are not yet even before the Court.[1] Abbott filed its Memorandum in Opposition to United States' and Relator's Motion for a Comprehensive Case Management Order on October 6, 2006 (Dkt. No. 3173) ("Abbott CMO Memo."). Among other things, Abbott's memorandum explained why Plaintiffs' proposed discovery limits were patently unreasonable for the scope of this case. *See id*. at 1-7. Abbott attached its proposed case management order as Exhibit 1 to its memorandum.[2]

---

[1] *See* Plfs. 9/15/06 Prop. CMO ¶¶ 1, 3, 10, & 11 (seeking to establish joint discovery limits on "each side," and defining "each side" to include "all Defendants" that the United States eventually sues that are brought within MDL 1456).

[2] Through its Motion for Entry of Case Management Order and to Order Commencement of Discovery, filed August 18, 2006 (Dkt. No. 2992), Abbott was actually the first party to propose a CMO in this case.

In the months since the parties filed their briefs and the proposed CMOs currently pending before the Court, the parties have continued to negotiate on case management issues. The parties have had multiple discussions and have exchanged drafts of revised proposals. The parties have reached agreement on several case management provisions, and Abbott expects the parties will present a proposed CMO to the Court that reflects those agreements. However, on several important case management issues—particularly relating to discovery limits—the parties have been unable to reach agreement. This memorandum identifies those issues that Abbott believes should be the focus of the February 27, 2007 hearing. The chart attached as Exhibit A summarizes what Abbott understands to be the parties' positions on these important issues.

Attached as Exhibit B is a version of Abbott's latest proposed CMO. Exhibit B contains both provisions on which Abbott believes the parties have reached agreement, as well as the provisions (primarily relating to discovery limits) where the parties have been unable to agree. Abbott's Exhibit B clearly sets forth (and Exhibit A summarizes) what Abbott believes are the necessary and appropriate discovery limits applicable to the parties in this case in light of the December 31, 2007 close of fact discovery. *See* Ex. B at ¶ 2. By contrast, Plaintiffs have not put forth any rational proposals on what discovery limits should apply.

In the proposed CMO filed with this Court on September 15, 2006, Plaintiffs sought to establish specific discovery limits (*e.g.*, 75 interrogatories) not only upon the parties in this case (the United States, Ven-a-Care, and Abbott), but also to "any other parties in lawsuits that are consolidated with this Multidistrict Litigation ("MDL") proceeding in which the United States is a party." Plfs. 9/15/06 Prop. CMO ¶ 1 (Dkt. No. 3107). Even the Government has recognized that proposal is unworkable for obvious reasons. On December 18, 2006, Plaintiffs forwarded a revised CMO proposal that would apply to the Government's claims against Abbott and Dey. *See* Plfs. 12/18/06 Prop. CMO at ¶ 1 (Ex. C). Apparently recognizing the infeasibility of

establishing joint discovery limits upon defendants in two separate cases with very different schedules,[3] this draft would give both Abbott and Dey separate discovery limits. *See id*. at ¶ 2. But this draft would also give *both* the United States *and* Relator the same (unspecified) number of discovery events as Abbott and Dey, thus improperly treating the United States and Relator as if they are separate parties in the same sense that Abbott and Dey are separate parties. *See id*. Moreover, this proposal but does not contain specific limits on interrogatories, requests for production, requests for admission, or deposition hours. *See id*.

Thus, as to discovery limits, it appears Plaintiffs are still asking this Court to enter an order that would require Abbott, Dey, likely Boehringer Ingelheim Roxane, and perhaps many more defendants to be named later to share a relatively small number of discovery limits. Plaintiffs' approach is unworkable and unfair.

## ARGUMENT

What follows is a brief summary of the parties' current positions on the key case management issues that Abbott believes should be the focus of the February 27, 2007 hearing, as well as a brief discussion of why Abbott's proposals are more appropriate.

*1.     Total Number of Deposition Hours.*  As noted, Plaintiffs' latest proposal does not provide any specific proposal on the number of total deposition hours each party can take. The proposed CMO that Plaintiffs filed on September 15, 2006 proposes that "each side" can take up to 250 hours of depositions. Applied now, that would mean Abbott, Dey, likely Boehringer Ingelheim Roxane, and potentially others would have to split 250 hours of total deposition time. In the context of these cases, including the extent of discovery taken in much narrower single-

---

[3] Fact discovery is scheduled to close in this case on December 31, 2007. Abbott understands that the Government and Dey have agreed to a much longer discovery schedule. The parties to this case have already each exchanged two sets of document requests, and have each served initial sets of interrogatories and requests for admission.

state cases seeking much less in damages (*see* Abbott CMO Memo. at 3), Plaintiffs' proposal is, quite frankly, absurd. Plaintiffs have never in any court filing (or in discussions with counsel) been able to explain why such limits are reasonable in the context of this case, or how they came to conclude such limits were appropriate. Simply put, it does not appear that Plaintiffs have analyzed what limits are reasonable and necessary. Instead, it seems that Plaintiffs have thrown out an unrealistic "low-ball" proposal in the hope that the Court will split the difference.

Consistent with the practice in MDL 1456, where there is no presumptive limits on depositions, Abbott's latest CMO proposal requests that there be no presumptive limit on the total number of depositions or deposition hours. Abbott's previous CMO proposal had suggested that each side be given an initial total limit of 500 hours. Although it may well be that the schedule calling for the closing of fact discovery on December 31, 2007 will not allow any more than 500 hours per side in any event, there is no reason now to establish a limit.

The Government's concerns about unlimited and oppressive discovery is premature and unfounded. The parties to other cases consolidated within MDL 1456 have operated peacefully and cooperatively without arbitrary limits and the Government's purported concern about the impact of discovery demands on Department of Health and Human Services personnel has no basis. As can be seen from the Government's response to Abbott's Interrogatory No. 2, the vast majority of CMS employees the United States identified as responsible for Medicare and Medicaid drug reimbursement policy are former or retired employees. *See* Response By the U.S. to Abbott's First Set of Req. for Prod. of Documents and Tangible Things to the U.S. at 16-19 (Ex. D). And by agreeing to coordinate depositions of federal government personnel to avoid

multiple depositions, Abbott and Dey have already agreed on the one provision that, as a practical matter, should be the most important to Plaintiffs and this Court.[4]

As to number and hour limitations, Abbott outlined in its previous brief why it believed even 500 hours would not likely be a sufficient amount of affirmative deposition discovery. *See* Abbott CMO Br. at 3-4. This is complex case with many potentially relevant witnesses. In addition to many witnesses from the central and regional offices of HHS agencies, by seeking recovery related to every state Medicaid program, Plaintiffs' case puts at issue the knowledge and decision-making of state Medicaid officials from across the country. States were given significant flexibility to determine reimbursement for prescription drugs, and each state set its own reimbursements levels for its own reasons. Indeed, HHS' own research shows that "overall compensation to pharmacies in most states is set through a process of political bargaining between pharmacy owners and state legislatures." HHC903-0178 at 0181 (Ex. E). Evidence indicates that states made deliberate decisions to reimburse more than what they knew providers actually paid for drugs. *See* Abbott CMO Br. at 19-20. Even a sampling of relevant facts from a cross-section of 50 state Medicaid programs will take significant deposition time. Plaintiffs should not be permitted to inhibit that important factual development through arbitrary limits.[5]

In addition to the state Medicaid programs themselves, most states utilize a separate fiscal intermediary to set reimbursement levels and administer claims. Discovery, including depositions, will be sought of at least a significant sampling of these entities. Likewise, dozens

---

[4] Indeed, that is the one issue the Government raised at the October 26, 2006 hearing. *See* Oct. 26, 2006 Hrg. at 47 (Mr. Henderson: "In addition one of the things I'm concerned with your Honor is that we go through a lot of discovery by Abbott against the government and then Dey says well wait a second we didn't have the opportunity to participate in that discovery, we've got to retake these same depositions all over again . . . .").

[5] Plaintiffs' initial disclosures recognize the relevance of the evidence to be attained from the states. *See* Plaintiffs' Rule 26(a)(1) Disclosures at 2 (8/9/06) (Ex. F) ("Because Medicaid is a joint federal and state program, the Defendants may seek to obtain discoverable information – whether on liability or damages – from employees or representatives from various states throughout the country. At this stage, Plaintiffs do not anticipate calling any such individuals at trial.").

of Medicare carriers were used by the federal Medicare program over the 1991 to 2001 time period to set reimbursement levels and administer claims. These entities—as well as individuals from Ven-a-Care and third parties such as publishers (*e.g.*, Red Book), wholesalers and buying groups, and various providers who submitted the claims at issue in this case—will also be sources of highly relevant information.

It is also important to note that deposition testimony taken of federal employees thus far suggests that the Government has done little if anything to preserve documents critical to this case. *See* N. Molyneaux Dep. Tr. at 29-32, 102-04 (HHS-OIG employee testified that she was not aware of any direction to retain documents, that she "cleaned house" by destroying documents she was no longer working with, and that working paper files for government reports were routinely destroyed after five or ten years) (Ex. G); J. Boughn Dep. Tr. at 209 (CMO information officer testified that she was not aware of any general document litigation hold policies or any specific hold policy relating to this case) (Ex. H). Thus, evidence of what the Government knew, when it knew it, and what it did with that information and why—fundamental issues in any fraud case—may in large part have to come solely through deposition testimony. The Government's apparent destruction of documents is bad enough; it should not be allowed to further inhibit Abbott's defense through arbitrary deposition limits.

In sum, Abbott will be required to depose various present and former employees of federal government, a significant sampling of the states, their financial intermediaries and the Medicare carriers, along with many third parties such as providers. Even 500 hours of deposition time would only allow approximately 70 one-day depositions. Experience in these cases teaches that many depositions last longer than one day. Indeed, Abbott understands that the parties have already agreed, consistent with existing CMO 10 ¶ II.8, to a presumptive limit of

21 hours per deposition. In light of the work that has to be done, Abbott respectfully suggests that no presumptive limit be imposed.

    *2.*    ***30(b)(6) Depositions.***  Abbott's proposal contains in paragraph 11 a provision that there is no limit on the number of 30(b)(6) depositions that could be taken of any party. Abbott also included this provision in the proposed CMO that it filed with the Court on October 6, 2006. Abbott believed the parties had reached an agreement on this provision when the Government's December 18, 2006 CMO proposal circulated to Abbott included a provision that there would be "no limit on the <u>number</u> of 30(b)(6) depositions that can be noticed and taken of parties." *See* Ex. C at ¶ 12. For whatever reason, however, the Government has not included this provision in its latest draft of the agreed-upon CMO provisions that the parties would present to the Court.

    *3.*    ***Requests for Admission.***  Abbott's initial proposed CMO sought unlimited requests for admission ("RFAs"). Plaintiffs' initial CMO proposed a joint limit of 50 RFAs for all defendants sued by the United States and brought into MDL 1456. Abbott's latest proposal attempted a compromise: there would be no limit on RFAs that merely seek authentication of documents, certification of business records, or an admission that a person or entity made a statement in any document or that was otherwise recorded at the time the statement was made. *See* Ex. B at ¶ 2(c). Abbott's proposal would also require the propounding party to attach a copy of the statement or document to the RFAs. Plaintiffs and Abbott would be limited to 150 RFAs that do not fall within those parameters. *See id*. Plaintiffs have never responded to this proposal.

As stated in its initial brief, Abbott believes much of the evidence in this case is undisputed and that RFAs can prove useful in avoiding unnecessary depositions to establish facts for trial. Understanding that parties can often misuse RFAs by turning them into disguised interrogatories, Abbott's latest proposal attempted to relieve any such concerns by putting a limit

on any non-routine RFAs.  Given the complexity of this case, Abbott believes 150 RFAs is reasonable and appropriate.[6]

4.   *Interrogatories and Requests for Production.*  Prior to the Government's unsealing as to Dey, the parties were very close to agreeing to limits on the number of interrogatories (65 to 75 each) and requests for production (seven rounds each).  But after the Government unsealed as to Dey, the Government proposed that these limits should apply jointly to all defendants sued by the United States.  The fact that Plaintiffs agreed to these limits when Abbott was the only manufacturer sued by the United States is proof enough that Plaintiffs believed these limits were appropriate as to Abbott.  Abbott should not suffer diminishing discovery rights every time the Government adds a defendant.

Consistent with Rule 34 of the Federal Rules, Abbott also proposes that the parties provide any written responses to documents requests within 30 days.  Although it is required under the Federal Rules, the Government has refused to agree to this provision.  Abbott has specifically included the provision in its proposed CMO because the Government has previously sought to evade this requirement.  *See* Abbott CMO Memo. at 8.  Written responses under Rule 34 serve an important role in promptly identifying what the responding party is and is not willing to produce, and what motions to compel may be necessary.

5.   *Pre-Trial Schedule.*  Abbott's proposed CMO contains a section titled "Pre-Trial Schedule."  This section merely contains the deadlines that this Court set at the October 26, 2006

---

[6] On July 12, 2006, while this case was pending before Judge Gold in the Southern District of Florida (where there is no presumptive limit on RFAs), Abbott propounded 298 RFAs to the Plaintiffs.  Approximately half of those RFAs merely seek authentication of documents, certification of business records, or an admission that a person or entity made a statement in a document or that was otherwise recorded at the time the statement was made.  Abbott attached copies of relevant documents or provided citations to sources in the public domain where such statements were recorded.  The parties have agreed to suspend Plaintiffs' obligation to respond to Abbott's RFAs until such time as the Court resolves the parties' disagreement on what limits on RFAs, if any, should apply to this case.  Most of Abbott's RFAs should not be controversial; Abbott would like to have these RFAs admitted as soon as possible so that it will know what discovery can be avoided.

hearing for the completion of fact discovery, exchange of expert reports, close of expert discovery, and summary judgment briefing. *Compare* Ex. B ¶ 18 with Excerpt of Docket Report (10/26/2006) (Ex. I). The Plaintiffs have failed to include these dates in the CMO proposals exchanged with Abbott since the October 26, 2006 hearing.

## **CONCLUSION**

For the foregoing reasons, Abbott respectfully requests that the Court enter the [Proposed] Case Management Order attached as Exhibit B to this memorandum.

Dated: February 25, 2007

Respectfully submitted,

/s/ James R. Daly
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

      I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO UNITED STATES' AND RELATOR'S MOTION FOR A COMPREHENSIVE CASE MANAGEMENT ORDER AND IN SUPPORT OF REVISED PROPOSED CASE MANAGEMENT ORDER, and supporting exhibits, to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 25th day of February, 2007.

                                                  /s/ David S. Torborg
                                                  David S. Torborg