# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re. PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS Hon. Patti Saris |
| THIS DOCUMENT RELATES TO UNITED STATES OF AMERICA, EX REL. VEN-A-CARE OF THE FLORIDA KEYS, INC. v. ABBOTT LABORATORIES, INC., AND HOSPIRA, INC. ) ) ) ) ) ) ) | |

**PLAINTIFFS' RULE 26(a)(1) DISCLOSURES**

The United States ("Government") and Ven-A-Care of the Florida Keys, Inc. ("Relator") (collectively "Plaintiffs"), hereby provide their Rule 26(a)(1) Disclosures:

**A. Witness Disclosures**

The individuals identified on the attached **Exhibit A** may have discoverable information that the Plaintiffs may use to support the claims in this case.[1]  Exhibit "A" also identifies generally the subject matter upon which the identified individuals may be knowledgeable.  If an identified individual is an employee of a corporate entity or a state, the information that each may provide may be subject to the approval of their employer and/or counsel representing that employer.

All contact and/or deposition scheduling of employees of the Government and the Relator identified herein should be coordinated through an Assistant United States Attorney or a

---

[1] To the extent that any document covered by Section B of these disclosures identifies additional persons not named herein who the Plaintiffs later determine may have information supporting their claims, the names of those persons are incorporated in this initial disclosure.

1

Department of Justice Trial Attorney who has entered an appearance in this case or, where appropriate, through Relator's counsel.

Because Medicaid is a joint federal and state program, the Defendants may seek to obtain discoverable information – whether on liability or damages – from employees or representatives from various states throughout the country. At this stage, Plaintiffs do not anticipate calling any such individuals at trial. If that position changes, Plaintiffs will supplement these disclosures. To the extent Defendants nonetheless pursue such evidence, Defendants are referred to each individual state's Attorney General, Medicaid Agency legal representative, or other state legal representatives, who will be responsible for designating individual state witnesses authorized to provide information or testimony on each state's behalf.

**B.     Document Disclosures**

The United States is producing the documents identified in **Exhibit B** that may be used to support the Plaintiffs' claims in this case. The Relator has identified in **Exhibit C** documents in the possession, custody or control of Ven-A-Care of the Florida Keys, Inc. and/or its attorneys that may be used to support the Plaintiffs' claims in this case.

The Plaintiffs reserve all rights to object to any documents produced in this case, including but not limited to objections based on relevancy and materiality. The Plaintiffs also reserve the right to supplement the foregoing identified documents and witnesses.

**C. Damages**

The United States seeks the recovery of damages to the Medicaid and Medicare programs arising from the Defendants' unlawful conduct. Defendants have not yet fully produced

2

complete pricing and transaction data that is essential to identifying and understanding the amount of the United State's damages.  Until then, Plaintiffs will be unable to complete their damages analyses.  Hence, the amounts identified herein are estimates based on Plaintiffs' preliminary information and are subject to revision.  Plaintiffs will refine their damage calculations as they obtain and analyze relevant information from Defendants through discovery and reserve their rights to fully amend and supplement this disclosure as necessary.

        1.        **FCA and Common Law Fraud Damages**

**Medicaid**:    Information regarding damages suffered by the Medicaid Programs of each state in connection with NDC-based reimbursement is provided in the accompanying disc labeled "Damages 1" in the file named NDC.Damages.xls.  There are a variety of different damages theories that may apply to the Defendants' false price reporting conduct and the resulting harm to the Medicaid Programs.  The Medicaid Programs paid approximately $125 million for the Defendants' products identified in the Complaint.  The payments were all tainted by the illegal kickbacks alleged in the United States' Complaint.  Under a damages theory based on the claims being paid as a result of the Defendants' unlawful conduct, the single damages suffered by the Medicaid Programs would be the entire $125 million paid for the Defendants' products listed in the Complaint. Under an alternative damages theory, single damages would equal the difference between the reimbursements inflated by the Defendants' false price reporting and the prices at which the products in the Complaint were generally and currently available in the marketplace.  Plaintiffs have engaged experts to explore alternative damages theories arising from NDC-based Medicaid reimbursement for the Defendants' drugs identified in the Complaint and will supplement this part of its initial disclosures as necessary.

Information regarding damages suffered by each state's Medicaid Program in connection with J-Code based reimbursement is not available at this time. Plaintiffs do estimate that the total amount of Medicaid J-Code reimbursement could exceed the amount of Medicaid NDC-based reimbursement. Plaintiffs have engaged experts to explore various Medicaid J-Code damages theories, including the damages theory based upon the claims having been paid as a result of the Defendants' wrongful conduct.

**Medicare**: Information regarding damages suffered by the Medicare Program in connection with J-Code based reimbursement is provided in the accompanying disc labeled "Damages 1" in the file named Abbott Medicare Damages 1.xls. The Medicare program paid approximately $210 million in total reimbursement for the specified J-Codes between 1993 and 2000. Additional damages may also have been caused in connection with additional reimbursement paid in all or a portion of 2001. The spreadsheet tab labeled Vancomycin calculates the portion of the total Vancomycin reimbursement paid for the Defendants' products based upon its estimated minimum market share for each year at issue. The spreadsheet tab labeled Solutions calculates the portion of the total solutions reimbursement paid for the Defendants' products based upon its estimated minimum market share for each year at issue. The payments were all tainted by the illegal kickbacks alleged in the United States' Complaint. Under the damages theory that bases damages upon the claims paid as a result of the Defendants' unlawful conduct set forth above, the entire amount of reimbursement for the Defendants' products was improper, which for the Defendants is estimated to be approximately $89 million in single damages. In addition to that theory, the Plaintiffs have engaged experts to explore

alternative Medicare damages theories and will supplement this part of its initial disclosures as necessary.

\*\*\*

Additionally, Plaintiffs seek treble the amount of its actual damages under the False Claims Act, plus penalties of between $5,000/$5,500 and $10,000/$11,000 for each false claim submitted or caused to be submitted by the Defendants to Medicaid and Medicare during the time period identified in the Complaint.  For the common law fraud claims, the Plaintiffs seek compensatory and punitive damages in an amount to be determined, together with costs and interest.

**2.    Unjust Enrichment**

As set forth in the Complaint, the recovery sought for the Plaintiffs' unjust enrichment claim is the amounts by which the Defendants were unjustly enriched, including an accounting of all revenues unlawfully obtained by the Defendants, the imposition of a constructive trust upon such revenues, and the disgorgement of the illegal profits obtained by the Defendants, plus interest, costs, and expenses.  The information required to quantify these amounts is solely in the Defendants' possession and will be sought in discovery.

DATED this _____ day of August, 2006.

Respectfully submitted,

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

_____

MARK A. LAVINE
ANA MARIA MARTINEZ
ANN ST. PETER-GRIFFITH
Assistant U.S. Attorneys
99 N.E. 4th Street
Miami, FL   33132
Phone:  (305) 961-9003
Fax: (305) 536-4101
Mark.Lavine@usdoj.gov

_____

MICHAEL F. HERTZ
JOYCE R. BRANDA
RENÉE BROOKER
JUSTIN DRAYCOTT
GEJAA T. GOBENA
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088

ATTORNEYS FOR THE UNITED STATES

_____
JAMES J. BREEN
ALISON W. SIMON
THE BREEN LAW FIRM, P.A.
P. O. Box 297470
Pembroke Pines, FL 33029
Telephone: 954-874-1635
Facsimile: 954-874-1705


SHERRIE R. SAVETT
GARY L. AZORSKY
SUSAN S. THOMAS
JEANNE A. MARKEY
JOY CLAIRMONT
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3000
Facsimile: 215-875-4636


ATTORNEYS FOR VEN-A-CARE
OF THE FLORIDA KEYS, INC.

<u>CERTIFICATE OF SERVICE</u>

I, Mark Lavine, hereby certify that this document served by electronic mail and express mail to counsel listed below, on this date.

August 9, 2006

_____
Mark Lavine

**SERVICE LIST**

James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel: (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com
*Counsel for Relator*

R. Christopher Cook
Daniel Reidy, Esq.
James Daly, Esq.
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: jrdaly@jonesday.com

*Counsel for Defendant*s