UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) MDL No. 1456 |
| | ) Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS and 01-CV-339 | ) ) ) ) |

**TRIAL OF CLASS 1 CLAIMS**

**DEFENDANT ASTRAZENECA'S RESPONSE TO PLAINTIFFS' MEMORANDUM CONCERNING THE START OF THE CLASS 1 JURY TRIAL AND REQUEST FOR PLAINTIFFS TO PRESENT A FAIR AND MANAGEABLE TRIAL PLAN**

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") submits this response to Plaintiffs' suggestions concerning the Class 1 trial.

## PRELIMINARY STATEMENT

Plaintiffs have now suggested that a 30-day delay in the AstraZeneca Class 1 trial would be appropriate so as to afford more time for the Court to render decisions on issues raised in the Class 2 and 3 trials. The underlying premise of Plaintiffs' suggestion is that rulings with respect to the recently completed bench trial should be used to "streamline" the AstraZeneca Class 1 trial. That premise is fundamentally flawed in several respects:

- First, Plaintiffs posit that the Court's rulings may take away from the jury many issues and thereby "streamline" the Class 1 trial, but they completely ignore the constitutional concerns this Court has observed regarding the right to a jury trial that may be implicated by the issuance of rulings from the Class 2 & 3 trials. See Motion Hearing Before the Hon. Patti B. Saris, June 26, 2006, Tr. at

14-16; see generally Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508 (1959) ("[T]he use of discretion by the trial court under Rule 42(b) [to conduct separate trials] to deprive [a party] of a full jury trial . . . cannot be justified."); Perez-Serrano v. DeLeon-Velez, 868 F.2d 30, 33 (1st Cir. 1989) (vacating and remanding because district court resolved issues properly submitted to the jury).

- Second, in an effort to backslide from a guiding principle of this Court's Class 1 certification ruling, Plaintiffs wrongly suggest that issues of "unfairness" are subject to trial in the Class 1 proceeding. They are not. The Court's class certification order limited Plaintiffs to "only the theory that defendants intentionally made fraudulent misrepresentations of AWP." In re Pharmaceutical Industry Average Wholesale Price Litigation, 230 F.R.D. 61, 85 (D. Mass. 2005) (hereinafter "AWP").

- Third, but most important, Plaintiffs' ostensible appeal to efficiency and their breezy assertion that the Court can "streamline" the Class 1 trial completely overlooks "the elephant in the room"—the manageability and adequacy obstacles that must be addressed before beginning a Class 1 trial. This Court's class certification ruling made plain that Plaintiffs had to develop and present a trial plan to deal with and manage the 42 States' consumer protection laws ("CPLs"). Id. at 84. Plaintiffs have yet to present the Court a proposed plan that would enable this Court to do what other courts say cannot be done, and which no court has ever done: try a class action under the different statutory and decisional law

of 40 or more CPLs in a manner that comports with Federalism and Due Process for both AstraZeneca and the absent class members.[1]

To the extent the Court shares Plaintiffs' belief that rulings from the Class 2 & 3 trials have decisional implications for the Class 1 claims that do not raise Seventh Amendment concerns, AstraZeneca submits that the Class 1 trial against it should not proceed until after such rulings are tested on appeal.  If the Court's rulings on Classes 2 and 3 are to have an impact on the Class 1 trial, it would make little sense to proceed with the Class 1 trial on the basis of such rulings because they may be the subject of modification or reversal on appeal.  Such a process would unnecessarily intertwine the Class 1 proceedings with issues subject to ongoing appeals and would thereby compound any errors and potentially render a Class 1 trial meaningless.

In any event, whether through the lens of the Court's rulings with respect to Classes 2 and 3 or separated from any such rulings, the issue of trying the Class 1 case on the basis of what the CPLs of the 40 or more States actually require – in terms of definitions, burdens, elements, or defenses – must be confronted.  To put it bluntly, AstraZeneca does not think it can be done. AstraZeneca has engaged in the extensive effort of reviewing the statutes and decisional law in the 40-plus States in order to submit the proposed jury instructions that the parties must file by April 16, 2007.  This effort has revealed extensive differences in, and irreconcilable conflicts among, the CPLs. While limiting Plaintiffs to "only the theory that defendants intentionally made fraudulent misrepresentations of AWP," 230 F.R.D. at 85, does reduce the problem, it does not eliminate the extensive complexity.

---

[1] Plaintiffs originally requested certification under 50 States' laws and the District of Columbia.  In re Pharmaceutical Industry Average Wholesale Price Litig., 230 F.R.D. 61, 77 n.16 (D. Mass. 2005) (hereinafter "AWP").  The Court excluded Iowa where there is no private right of action and Alabama, Alaska, Georgia, Kentucky, Louisiana, Mississippi and Montana because those statutes do not provide for class actions.  Id. at 76. The Court later excluded Virginia for the same reason.  AWP, 233 F.R.D. 229, 230 (D. Mass. 2006).

3

Other than their recent blithe suggestion of how to streamline the Class 1 trial by piggybacking on hoped-for rulings by this Court in connection with the recently completed bench trial, Plaintiffs have been silent regarding how this Court will conduct a trial and instruct a jury about the different elements of statutory schemes of 40 or more States.[2]  Nor have they explained how any plan may be configured with representatives from two states having CPLs that vary from those of other class members.[3]  While Plaintiffs must establish for the Court that the legal interests of absent class members are congruent and aligned with those of the two class representatives, neither has the required legal interest and personal stake to litigate elements of CPLs different from the CPLs of Oregon and Florida.

I.  **WITHOUT FURTHER DELAY, PLAINTIFFS MUST PRESENT THE COURT WITH A MANAGEABLE TRIAL PLAN THAT COMPORTS WITH FEDERALISM AND DUE PROCESS**

The Court certified Class 1 in August 2005 with the expectation that Plaintiffs would produce class representatives appropriate for a 42 State CPL trial and set forth a realistic trial plan in advance of trial.  AWP, 230 F.R.D. at 84.  Now that trial is imminent, it is apparent that

---

[2] AstraZeneca also notes that the Court excluded from Class 1 persons from States which prohibit class actions for violations of the State's CPL.  At least three other State CPLs—Ohio, Utah, and South Dakota—preclude CPL class actions unless the plaintiff has first shown that, prior to the defendant's alleged acts, the State's enforcing authority adopted a rule declaring such specific practice to violate the State CPL, UTAH CODE ANN. § 13-11-19(4)(a); or a state court had previously declared that the specific practice violated the state CPL in a publicly available decision, O.R.C. ANN. § 1345.09(B); or the defendant had previously agreed to a consent judgment covering the subject conduct, S.D.C.L. § 37-24-6.  Unless Plaintiffs make a showing prior to trial, claims from at least these States should also be dismissed.  In addition, because under the Texas CPL a plaintiff must prove actual reliance, such class actions in Texas state courts are denied.  AstraZeneca submits that this is the functional equivalent of a statutory prohibition on such class actions, and claims from Texas should likewise be dismissed.  Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 (Tex. 2002); Peltier Enters., Inc. v. Hilton, 51 S.W.3d 616, 624 (Tex. App. 2000).

[3] In certifying Class 1 in August, 2005, the Court sua sponte created defendant subclasses.  AstraZeneca has only one drug – Zoladex – at issue.  The Court permitted counsel to locate Class 1 representatives for the AstraZeneca subclass.  They were located and deposed in December 2005, and the Court named them as representatives in the January 2006 final class certification.

the Court's assumption that such a plan would be presented was misplaced.[4] No court to date has tried a class action requiring the application of the laws of 42 jurisdictions, or even a significantly smaller number of disparate state laws. Not surprisingly, therefore, more than 18 months after the class was certified, and a short time before the scheduled commencement of the Class 1 trial, Plaintiffs have yet to propose any actual plan for adjudication of this 42 state CPL case.[5]

Without requiring Plaintiffs to present a fair and manageable trial plan, it will never be possible for this Court to "clearly articulate its reasons" for certifying the class with respect to the adequacy and manageability requirements of Rule 23. Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006). Notwithstanding its earlier optimism, this Court held that Plaintiffs have the burden to show "through extensive analysis" that a class action requiring the application of the CPLs of 40 or more States complies with the dictates of Rule 23. AWP, 230 F.R.D. at 84 (citing cases). We note that since this Court initially certified the class, additional federal courts have denied class certification in similar cases for plaintiffs' failure to provide realistic solutions to the management and adequacy problems caused by the application of conflicting state laws. See, e.g., Blaine v. Smithkline Beecham Corp. d/b/a Glaxosmithkline, No. Civ. A. 06-1247, 2007 WL 178564, at *8, 12 (E.D. Pa. Jan. 25, 2007) ("The divergent interests and circumstances will impair the plaintiffs' ability to adequately protect the interests of the class members" and "conflicts among the laws of the various jurisdictions render a class action as proposed by the

---

[4] See, e.g., In re Ford Motor Co. Ignition Switch, 174 F.R.D. 332, 350 (D.N.J. 1997) (inappropriate to certify multistate class on the "slender reed" of plaintiffs' "mere promise that a manageable litigation plan can be designed . . . as the litigation progresses"); see also In re St. Jude Med., Inc., 425 F.3d 1116 (8th Cir. 2005) (vacating district court order certifying class under the laws of multiple states on condition that plaintiffs submit to the court the identities of suitable class representatives and a manageable trial plan).

[5] See, e.g., Allison v. Citgo Petroleum Corp., 151 F.3d 402, 420 n.15 (5th Cir. 1998) (affirming denial of class certification where, as here, plaintiffs' proposal to manage national class action consisted only of a "generalized" bifurcation scheme).

plaintiffs unmanageable"); In re Vioxx Products Liability Litig., _ F.R.D. _, No. MDL 1657, 2006 WL 3391432, at *9 (E.D. La. Nov. 2, 2006); see also Norwood v. Raytheon Co., 237 F.R.D. 581 (W.D. Tex. 2006). At this late stage of the litigation, Plaintiffs owe this Court a realistic plan.[6]

As the Court acknowledged, Plaintiffs must present an adequate "grouping" model that accounts for variations in state consumer protection laws. AWP, 230 F.R.D. at 84 ("the burden of proof is on plaintiffs to demonstrate 'through extensive analysis' that grouping is feasible"); see also e.g., Klay v. Humana, Inc., 382 F.3d 1241, 1262 (11th Cir. 2004) ("The burden of showing uniformity or the existence of only a small number of applicable standards (that is, 'groupability') among the laws of the fifty states rests squarely with the plaintiffs.") (emphasis added). While this Court certified the class in August 2005, the opinion does not purport to exempt Plaintiffs from satisfying their *ultimate* burden of proof. See, e.g., Makuc v. Amer. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987); Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 257 (D. Mass. 2005). In view of the "patchquilt" of consumer protection law, Plaintiffs cannot be presumed, without a showing, to be capable of succeeding where others have failed.[7] With the trial date approaching, the bell has tolled for Plaintiffs, who must now

---

[6] See Lamphere v. Brown Univ., 553 F.2d 714, 720 (1st Cir. 1977) (A court must "follow closely the developing evidence as to class-wide decision-making and … take seriously its power under 23(c)(1) to alter or amend its certification order before the decision on the merits").

[7] See, e.g., In re Paxil Litig., 212 F.R.D. 539, 544 (C.D. Cal. 2003) ("Plaintiffs here fail to carry their burden of showing, prior to class certification, that the differences in state laws within each of their groupings are nonmaterial."); Hosfeld v. Weyerhaeuser Mortgage Co., No. 99 C 1966, 2003 WL 22229255, at *1 (N.D. Ill. Sept. 26, 2003) ("It is plaintiffs' burden to demonstrate that the law of all 50 states does not significantly alter the liability question and they have not satisfied this burden."); Hammett v. Amer. Bankers Ins. Co., 203 F.R.D. 690, 701 (S.D. Fla. 2001) (Plaintiff failed to "prove through extensive analysis that there are not material variations among the law of the states") (internal citation omitted); Oxford v. Williams Cos., 137 F. Supp. 2d 756, 764 (E.D. Tex. 2001)("[I]t is plaintiffs' burden to provide an adequately detailed and reasonable plan showing how this case can be managed given . . . the varying effects of local law in the fifty-one jurisdictions on each such claim."); Chilton Water Authority v. Shell Oil Co.,  Civ. A. 98-T-1452-N, 1999 WL 1628000, at *8 (M.D. Ala. May, 21, 1999) ("The court does not have a duty to survey each state's law to determine whether the negligence, or other relevant, law of the 50 states is of sufficient commonality for plaintiffs' class claim to pass muster under Rule 23(b)(3). That burden falls

articulate, if they can, how the Court can manage this case in accordance with the Rules Enabling Act, Erie, Due Process and the Seventh Amendment.

Here, the reasons for this Court's immediate attention to Plaintiffs' failure are not only compelling, but are imperative, because the manageability and adequacy problems in this litigation pose significant federalism and due process concerns.

### A. Federal and Constitutional Law Compel Faithful Application of Variations in State Law

"The class action device exists primarily, if not solely, to achieve a measure of judicial economy" and "preserves the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 410 (5th Cir. 1998) (citing General Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982)). Continued certification is only appropriate so long as these standards are met.

Where, as here, choice-of-law requires the application of 40-plus different state laws, the Rules Enabling Act, 28 U.S.C. § 2072, Erie, and basic principles of fairness prevent manipulation of those state laws' elements and defenses to facilitate litigation in a single forum.[8] Thus, Plaintiffs may not present a trial plan that "amalgamates" the law of all relevant

---

on plaintiffs"); Peoples v. Amer. Fidelity Life Ins. Co., 176 F.R.D. 637, 643 (N.D. Fla. 1998) ("Appellees see the 'which law' matter as academic. They say no variations in state warranty laws relevant to this case exist. A court cannot accept such an assertion on faith. Appellees, as class action proponents, must show that it is accurate.").

[8] See Cimino v. Raymark Indus., Inc., 151 F.3d 297, 312 (5th Cir. 1998) ("[U]se of Rule 23(b)(3) . . . does not alter the required elements which must be found to impose liability and fix damages (or the burden of proof thereon) or the identity of the substantive law . . . which determines such elements."); Amchem Prods. Co. v. Windsor, 521 U.S. 591, 612-13 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right'"). In cases where the law of more than one jurisdiction applies, a federal district court "must give effect to the variations in state law, however minor they may be." In re Stucco Litig, 175 F.R.D. 210 (E.D.N.C. 1997) (citing Erie); see also Harding v. Tambrands Inc., 165 F.R.D. 623, 629-30 (D. Kan. 1996) ("Under Erie . . ., the court must consider how the law of negligence differs from jurisdiction to jurisdiction.").

jurisdictions into an "Esperanto" version of consumer protection law.[9] Rather, Plaintiffs must explain to this Court how a trial under 40-plus State CPLs will proceed without altering or abrogating the legal requirements and defenses applicable under state law.[10]

### B. Any Trial Plan Must Account for the Innumerable and Material Variations in 40-Plus Consumer Protection Laws

The diversity in consumer protection laws in our federal system of government has not eluded the attention of the highest state or federal courts. Sixteen years ago, the Utah Supreme Court noted: "There is great diversity in the language, scope, degree of enforcement, and judicial interpretation of the various state consumer protection laws." Wade v. Jobe, 818 P.2d 1006, 1014 (Utah 1991). The United States Supreme Court followed with a similar observation:

> No one doubts that a state may protect its citizens by prohibiting deceptive trade practices.... But the states need not, and in fact do not, provide such protection in a uniform manner. The result is a patchwork of rules representing the diverse policy judgments of lawmakers in 50 states.

BMW of North Amer., Inc., v. Gore, 517 U.S. 559, 568-69 (1996); see also e.g., Tylka, 178 F.R.D. at 498 ("[A] brief review of the [consumer fraud] statutes reveals not only nuances, but differing standards of proof, procedure, substance, and remedies"). Although some potential variations in state CPL law have been reduced by the Court's limitation of Plaintiffs' claim to

---

[9] In re Bridgestone/Firestone, Inc., 288 F.3d at 1020 ("Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court."); In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1302 (7th Cir. 1995) (issuing writ of mandamus against district court for adopting "Esperanto" instructions that merged the law of various states into a single legal standard).

[10] Furthermore, while some courts have imagined that identical elements of various States' laws could be "grouped" into a manageable whole, no court has actually approved a "grouping" model for the laws of 40-plus States, or anywhere near that number, let alone in a case where both multiple elements and affirmative defenses are contested issues. See, e.g., Klay v. Humana, Inc., 382 F.3d 1241, 1262 (11th Cir. 2004); In re Am. Med. Sys., 75 F.3d at 1069, 1085 (6th Cir. 1996); Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 219 (E.D. Pa. 2000).

intentional misrepresentation, the remaining differences among the States' CPLs, as sketched below, are extensive. [11]

As an initial matter, the variation in basic structure and form of state CPLs poses a formidable challenge to Plaintiffs' overdue proposal to the Court of a fair and manageable trial plan. Some States, such as North Carolina and Massachusetts, broadly outlaw "deceptive acts or practices," which phrase is given elaboration through case law. Other States, such as Pennsylvania, Michigan and South Dakota, specifically define what constitutes a "deceptive practice" through enumerated provisions, which also have been explicated in case law. In the latter States, the number of provisions range from a handful to upwards of sixty. These variations in form and structure are further amplified by numerous Attorney General regulations, violations of which, in some states, constitute per se deceptive conduct, as in Massachusetts, or in others merely provide further substance to the meaning of "deceptive practices" in that state, such as in Michigan. Compare 940 MASS. REGS. CODE § 3.16(4) with MCLS § 455.903(2).

While the differing forms and structures, and their diverse implementation by Attorneys General, resist discrete categorization, "deceptive practices" is not an abstract concept divorced from the context in which juries must evaluate their occurrence in accordance with state law. For instance, in order to determine whether a representation is deceptive, North Carolina demands that jurors consider the effect of an act or practice on the average consumer in North Carolina; Maryland asks jurors to consider whether a significant number of unsophisticated consumers in Maryland would attach importance to the information in determining a choice of action; and Connecticut asks jurors to evaluate the impact on the least sophisticated consumer in Connecticut. Compare Pearce v. Amer. Defender Life Ins. Co., 316 N.C. 461, 471, 343 S.E.2d

---

[11] See, e.g., In re Ford Motor Co. Vehicle Paint Litig, 182 F.R.D. 214, 223 (E.D. La. 1998) ("A few examples of the variations in state law will suffice to illustrate the magnitude of the problem.")

174, 180 (1986) with Hayes v. Hambruch, 841 F. Supp. 706 (D. Md. 1994), aff'd, 64 F.3d 657 (4th Cir. 1995) and Aurigemma v. Arco Petroleum Prods. Co., 734 F. Supp. 1025, 1029 (D. Conn. 1990).

Additionally, some States require plaintiffs to demonstrate a direct "transaction" with the defendant in order to have a claim under the State's CPL. Not only is it often impossible to discern the absence or presence of such a requirement by simply reading a state's statute, but understanding the various aspects of a state's "transaction requirement" is a similarly involved task requiring analysis of state decisional law. Both Oregon and Florida only require a plaintiff to show that the transaction in question was a "consumer" transaction. However, a direct transaction between plaintiff and defendant may be required for Pennsylvania claims. Christopher v. First Mut. Corp., No. Civ. A. 05-01149, 2006 U.S. Dist. LEXIS 2255, *8-12 (D. Pa. Jan. 20, 2006) (holding that assignee could not be held liable for fraud or deceptive conduct based on any alleged misrepresentations that it had made because it did not have any direct contact with the mortgagor). Some States may not require a direct transaction between defendant and plaintiff, but, like Texas, for example, require a plaintiff to show that the actionable conduct consists of representations made by a defendant directly to the plaintiff. See Atrium Cos. v. Bethke, No. 05-02-00293-CV, 2002 Tex. App. LEXIS 9257 (Tex. Ct. App. Dec. 31, 2002); Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649, 1996 Tex. LEXIS 28, at *12-13 (1996) ("[W]e are not persuaded that the Legislature intended the DTPA to reach upstream manufacturers and suppliers when their misrepresentations are not communicated [by an intermediary] to the consumer."). Other States, like Utah, exhibit additional permutations of the transaction requirement. See Div. of Consumer Protection v. GAF Corp., 760 P.2d 310, 314 (1988) (applying consumer protection act to warranty allegations). To further complicate matters, under other CPLs, the defendant must be a "supplier," which, depending on decisional

case law in the particular jurisdiction, does not necessarily include a manufacturer who lacks sufficient contact with retail consumers.  See Eisenberg v. Anheuser-Busch, Inc., No. 1:04 CV 1081, 2006 WL 290308, at *9 (N.D. Ohio Feb. 1, 2006).  These variations are only exemplary, and will likely multiply as full jury instructions are prepared.

As this Court noted, in general terms, at an early stage of the litigation, "States do have different definitions of reliance and proximate cause."  AWP, 230 F.R.D. at 85.  Indeed, the variations, which must be placed before any jury, are more pronounced than either the Court or the parties expected at the time the Court certified the class.  The concept of "reliance," where required at all, is itself highly variable from state to state.  In Pennsylvania, for example, plaintiff must prove justifiable reliance, Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140-41 (3d Cir. 2005), whereas in Michigan, plaintiff must show reasonable reliance, or at least that "a reasonable person would have relied on the representations."  Dix v. Amer. Bankers Life Assurance Co., 429 Mich. 410, 418, 415 N.W.2d 206, 209 (1987).  In Arizona, the "reliance" a plaintiff must prove need not be either.  Correa v. Pecos Valley Dev. Corp., 126 Ariz. 601, 605, 617 P.2d 767, 771 (Ariz. Ct. App. 1980).[12]  To add an additional variance, while the CPLs in Delaware and Minnesota do not require reliance on the part of consumers, these acts require that the defendant intend to induce a consumer's reliance.  Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983); Duxbury v. Spex Feeds, Inc., 681 N.W.2d 380, 393-94 (Minn. Ct. App. 2004).

---

[12] As courts have noted in the common law fraud context, states have adopted varying degrees of reliance. See, e.g., Field v. Mans, 516 U.S. 59, 73-74 (1995) ("Of the 46 States that had articulated the required level of reliance in a common-law fraud action, 5 required reasonable reliance, 5 required mere reliance in fact and 36 required an intermediate level of reliance, most frequently referred to as justifiable reliance.").  In a multistate class certification context, the district court must respect these nuances.  See, e.g., Rosen v. Chrysler Corp., No. 97-CV-60374-AA 2000 WL 34609135, at *9 (E.D. Mich. July 18, 2000) (not certifying multistate common law fraud class because some states require "actual" reliance, while others require only "reasonable" or "justifiable" reliance).  The same applies to the other elements and defenses discussed infra and their cumulative variances compound the unmanageability of the class action before this Court.

Similar variations are evident in the law of causation. For example, in Missouri, "but-for" causation suffices, e.g., Collora v. R.J. Reynolds Tobacco Co., No. 002-00732, 2003 WL 23139377 (Mo. Cir. Dec. 31, 2003) ("While the 'as a result of' language in the statute does indeed require a causal link or nexus between a defendant's unlawful conduct and a plaintiff's "ascertainable loss," this causal connection is not the strict "proximate cause" requirement that Defendants suggest."), whereas, in Illinois, "proximate causation" must be shown, e.g., Gredell v. Wyeth Labs., Inc., 367 Ill. App. 3d 287, 292-93, 854 N.E.2d 752, 757 (Ill. App. Ct. 2006) ("[A]lthough a plaintiff's reliance on an alleged fraud is not an element of statutory consumer fraud, a valid consumer fraud claim must show that the alleged fraud proximately caused the plaintiff's injury."). Massachusetts courts follow yet a third approach: a more abstract "materiality" standard for causation which queries only whether "the representation involves information that is important to consumers and, hence, likely to affect the choice of, or conduct regarding, a product." See, e.g., Commonwealth v. AmCan Enter., Inc., 47 Mass. App. Ct. 330, 334-35 , 712 N.E.2d 1205, 1209 (Mass. App. Ct. 1999).[13]

Even on affirmative defenses, the variations are legion. For example, the limitations or repose periods range from 2-10 years. Moreover, where tolling is even permitted, the rules differ. The Florida statute, for example, does not toll in cases of fraudulent concealment, In re Vitamins Antitrust Litig., No. Misc. 99-197 TFH, 2000 WL 33975412, at *5 (D.D.C. Oct. 26,

---

[13] Preliminary research also suggests that courts have different rules regarding whether various forms of reliance or causation may be presumed in a consumer protection act case. The courts in New Jersey and Arkansas have rejected such a presumption, New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 15-16, 842 A.2d 174, 178-79 (N.J. Super. Ct. 2003); Frelin v. Oakwood Homes Corp., 2002 WL 31863487, at *10 n.45 (Ark. Cir. Ct. Nov. 25, 2002). The Ohio courts permit a rebuttable presumption of reliance on behalf of a consumer protection class under certain circumstances. Amato v. General Motors Corp., 11 Ohio App. 3d 124, 128, 463 N.E.2d 625, 630-31 (Ohio Ct. App. 1982).

12

2000), whereas the Texas statute does. Underkofler v. Vanasek, 53 S.W.3d 343, 346 (Tex. 2001).[14]

Even certain "damages" issues present variations that must be addressed in any determination of liability. This is because numerous states' CPLs predicate enhanced damages on additional findings that must be made by the fact-finder. These include, for example, that the defendant was "malicious" to Pennsylvania consumers; that the defendant acted "willfully" against North Carolina consumers; or "clear and convincing evidence" that the defendant acted with "willful indifference to the rights or safety" of Michigan consumers.[15]

These variations discussed are merely illustrative, and will likely multiply. Plaintiffs must show that the complexities engendered by these and other variations among the 40 states' laws can be addressed in a manageable trial plan that comports with the requirements of the Rules Enabling Act, Erie, Due Process and the Seventh Amendment. As discussed below, Plaintiffs must also show how any such plan, however feasible in their imagination, may be implemented where representatives from two States, Florida and Oregon, are seeking to adjudicate the claims of absent class members from 40 other states with differing CPLs.

### C.   Plaintiffs' Plan Must Explain How the Legal Interests of the Two Class Members and the Absent Class Members Are Aligned and Congruent

Rule 23, to say nothing of the underlying principles reflected in Article III and the Due Process Clause, require an alignment and congruence between the legal interests of the class

---

[14] Furthermore, because the statutes of limitations or repose period are wide ranging, their application to various class members affects the admissibility of evidence and the scope of jury instructions. See, e.g., Vernon v. Port Authority of New York and New Jersey, 200 F. Supp. 2d 401, 404 (S.D.N.Y. 2002) ("[P]re-statute of limitations evidence is presumptively inadmissible, so as not to confuse the jury between actionable and non-actionable conduct," but where admissible, defendant may be entitled to "limiting instruction") (internal citation omitted).

[15] See Johnson v. Hyundai Motor America, 698 A.2d 631, 638 (Pa. Super. Ct. 1997); Yost v. Millhouse, 373 N.W.2d 826, 1985 Minn. App. LEXIS 4496 (Minn. Ct. App. 1985); Pinehurst, Inc. v. O'Leary Bros. Realty, Inc., 338 S.E. 2d 918, 925 (N.C. Ct. App. 1986).

13

representatives and the absent class members to ensure that litigation by the representative party will fairly and finally adjudicate the rights of absent class members. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 629 (1997) (affirming court of appeals refusal to approve class action settlement where legal interests of class representatives were not adequately aligned with absent class members). The Amchem Court cautioned lower courts that in order to protect the rights of absent class members, the differences among them—both factual disparities and differences in state law—must be adequately represented. Id. at 624. Rule 23(a)(4) addresses the concerns raised in Amchem by requiring that the district court ascertain whether the class representatives have interests which conflict with absent class members, and whether the class representative will vigorously advance the interests of the class. Unless these essential requirements are satisfied, there is "no structural assurance of fair and adequate representation for the diverse groups and individuals affected." Amchem at 627. <u>This Court had no opportunity to address this issue because, at the time of the class certification opinion, there was no AstraZeneca subclass and there were no proffered class representatives until four months later.</u>

But now that the trial date is near, Plaintiffs' must provide their long-overdue explanation as to how this nationwide class action on behalf of thousands of individuals dispersed throughout more than 40 states, each with their own set of applicable laws, may be configured with representatives from Florida and Oregon alone. These two class representatives will purport to present facts for analysis under the laws of their respective states and 40 additional States, binding individuals across the entire nation by the outcome. AstraZeneca is not aware of any court that has permitted a class representative to represent absent class members whose claims arose under laws with elements and defenses that vary from the class representatives.

More specifically, Plaintiffs' plan must explain how the class representatives have the incentive to litigate variations that are not incorporated into their CPLs. Even a cursory

14

consideration of Mr. Howe and Mr. Townsend's legal interests as to a single element in certain jurisdictions (reliance) and a single affirmative defense (statute of limitations) reveals the conflicts facing the Court due to Plaintiffs' failure to provide a manageable trial plan. See, e.g., In re Ford Motor Co. Bronco II Prod. Liab. Litig., 177 F.R.D. 360, 372 (E.D. La. 1997) (holding that named plaintiffs confined to only nine states in purported nationwide class action were neither typical nor adequate).

A claimant's reliance on the defendant's allegedly deceptive statement is not a requirement under the Florida or, according to Plaintiffs, Oregon CPLs.[16] Neither Mr. Howe or Mr. Townsend has a legal interest or personal stake in proving such element; as such, reliance is an abstract, hypothetical factual and legal issue to both. In contrast, many of the other 40 States' laws, upon which absent class members' claims are brought, do require a factual showing of reliance by each plaintiff as an essential element of a plaintiff's claim. Furthermore, as noted earlier, courts requiring reliance differ on whether the appropriate standard is objective (reasonable), subjective (factual) or has elements of both (justifiable). Mr. Howe and Mr. Townsend, both hailing from States which do not impose reliance on the defendant's deceptive statement as a specific element of a CPL claim, have no legal interest or personal stake in establishing the existence of reliance at all, let alone the particular variety of reliance which may be required for many absent class members to have their claims fairly adjudicated.

Also, by way of example, the two class representatives have no legal interest in litigating the potential statute of limitations issues facing some absent class members. Class representative

---

[16] Plaintiffs' Opp'n to AstraZeneca Pharmaceuticals LP's Mot. for Summ. J. at 6-8 ("Reliance, therefore, is irrelevant to Mr. Howe's UTPA claim."). In fact, the reliance requirement is not settled under Oregon law, because "whether reliance [is] a necessary element depend[s] upon the type of violation alleged." State ex rel. Redden v. Discount Fabrics, Inc., 289 Ore. 375, 384 (1980); see also AstraZeneca Pharmaceuticals LP's Memorandum of Law in Support of its Mot. for Summ. J. at 7-9. Accordingly, this issue is one among numerous legal determinations that this Court will have to make prior to the Class 1 trial. Regardless, as relevant to the discussion above, it is in Mr. Howe's interest to argue that he does not need to prove reliance.

Mr. Howe faces no statute of limitations issue. There is an issue with Mr. Townsend, but, as noted earlier, the Florida CPL does not allow any tolling for fraudulent concealment. Thus, to both class representatives, fraudulent concealment is an abstract, hypothetical issue in which neither has a legal interest. This is not the case for an absent class member in, for instance, Texas, where the statute of limitations under the DTPA is only two years, but the state legislature explicitly allows tolling for fraudulent concealment.[17]

In sum, Plaintiffs are required to show that Mr. Townsend and Mr. Howe have the legal interest and personal stake to prove elements of CPLs that absent class members must prove to recover. In other words, their trial plan must not only account for the faithful application of variations in state law, but also be configured as Amchem requires: "structural assurance of fair and adequate representation for the diverse groups and individuals affected." 521 U.S. at 627. However, it is apparent that neither has the legal interest required to litigate the variations discussed in the preceding section, nor additional variations which further research will disclose.

## II.   UNRESOLVED NOTICE ISSUES

One important additional point should be addressed in connection with the management of the upcoming nationwide class action trial—namely, an assessment of the notice program and its results. As the Court will recall, after much resistance and unwarranted delay by Plaintiffs,

---

[17] Courts cannot permit a class action to proceed unless the legal interests of class representatives and absent class members are congruent. In re Telectronics Pacing Sys., 168 F.R.D. 203, 217 (S.D. Ohio 1996) (refusing certification because proposed class representatives, from Ohio and Oregon, were subject to varying elements and defenses under their states' laws such that, inter alia, "the Ohio representatives have no incentive to pursue the plaintiffs' negligence claims, since, as discussed, they do not have negligence claims themselves"); Daly v. Harris, 209 F.R.D. 180, 190 (D. Haw. 2002) (stating that "the SOL-susceptible Class members' due process rights are jeopardized by the fact that the named-Plaintiffs do not face a similar obstacle" because "[t]he named-Plaintiffs may, due to the demands involved in prosecuting this case and in responding to the issues most prevalent to them, inadvertently neglect or fail to anticipate issues particular to the SOL-susceptible Class members"). See also Sheehan v. Grove Farm Co., Civ. No. 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, 2005 Hawaii App. LEXIS 368, at *33 (Haw. Ct. App. Apr. 30, 2005) ("Where claims or defenses are coextensive, there is a probability of fair and adequate representation; where they are potentially conflicting, absentees are unlikely to be afforded representation consistent with notions of fairness and justice.") (quoting Life of the Land v. Land Use Comm'n, 63 Haw. 166, 623 P.2d 431 (1981)).

the Court directed Plaintiffs to mail notice to potential members of Class 1.  Presumably the notice was mailed out in accordance with the Court's directives.  The Court-established opt-out date has now passed.  To date, Plaintiffs have provided no report to the Court or AstraZeneca regarding the number of mailings, the number of opt-outs, the number of returned pieces of mail due to incorrect addresses, people moving or people dying or other reasons.  So, at this juncture, on the eve trial, neither the Court, nor AstraZeneca has any information regarding the actual number of persons who have excluded themselves from the class or who did not receive the mailing directed by the Court.  AstraZeneca respectfully requests that the Court direct Plaintiffs to provide this important information to the Court and AstraZeneca as part of their trial plan, so that both AstraZeneca and the Court may have such information in evaluating issues regarding the manageability and superiority of the proposed nationwide class.

   AstraZeneca also points out in this context that, to its knowledge, Plaintiffs have not complied with this Court's directive to mail notice to the consumer members of Class 3.  Thus, Plaintiffs' suggestion that the Court delay the Class 1 trial until it has an opportunity to issue rulings with respect to Classes 2 and 3 overlooks a critical prerequisite to the Court rulings with respect to Class 3—namely, the completion of notice to Class 3 in accordance with this Court's prior rulings.  For the Court to issue a ruling on Class 3 prior to the completion of the notice process as to Class 3 would give certain members of Class 3 a potential one-way option:  they would know the results of the trial before having to decide whether or not to opt out.  Such a procedure is impermissible. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950) (holding that notice must "afford a reasonable time for those interested to choose whether to appear or default, acquiesce or contest"); Katz v. Carte Blanche Corp., 496 F.2d 747, 759-60 (3d Cir. 1974) (en banc) (noting that the history of the development of Rule 23(c)(2) makes clear that the rule was adopted to prevent "one-way intervention"—that is, the

intervention of a plaintiff in a class action after an adjudication favoring the class had taken place); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1788 (3d ed. 2005) ("[N]otice must be sent long before the merits of the case are adjudicated"). Unless the Court were to decertify Class 3 consumers, notice as to them must be effectuated prior to the issuance of any rulings by the Court with respect to Class. Plaintiffs' blithe suggestion that the trial scheduled for April 30 be delayed so as to afford the Court and the parties additional time to generate and assimilate the Court's rulings with respect to the recently concluded bench trial thus strikingly ignores this critical notice issue.

### III.   CONCLUSION

AstraZeneca submits that the Court should (a) reject Plaintiffs' suggestion that it should streamline the Class 1 trial based on the Court's still to-be-issued bench trial ruling as to Classes 2 and 3; and (b) require Plaintiff to present a trial plan so that (i) the Court can fulfill its independent obligation to evaluate whether this Class 1 trial can be managed in accordance with Rules Enabling Act, Erie, Due Process and the Seventh Amendment; and (ii) AstraZeneca can evaluate whether its interests will be appropriately protected in connection with this proceeding. For all of the above reasons, AstraZeneca does not believe that adjourning the trial to June 4, 2007 solves any of the issues confronting the Court and the parties. The timing of the trial should be a function of the appropriate resolution of the issues addressed above, whether that be April 30, June 4, or some other date.

Respectfully submitted,

By: /s/ Katherine B. Schmeckpeper
Nicholas C. Theodorou (BBO # 496730)
Michael P. Boudett (BBO # 558757)
Katherine B. Schmeckpeper (BBO #663200)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110

D. Scott Wise
Michael Flynn
Kimberley Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY  10017

Attorneys for AstraZeneca Pharmaceuticals LP

Dated: March 1, 2007

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was delivered on March 1, 2007 to counsel for plaintiffs and to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, via LexisNexis File & Serve.

                              By:    /s/ Katherine B. Schmeckpeper
                                     Katherine B. Schmeckpeper