UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, CIVIL ACTION NO. 05-11084-PBS | ) ) ) ) ) ) ) | Hon. Patti B. Saris |

**VAC'S SURREPLY MEMORANDUM
IN OPPOSITION TO DEY'S MOTION TO DISMISS**

## I. Introductory Statement

In a rather backhanded manner in its reply brief, Dey introduces two completely new grounds for dismissal of the government's and VAC's complaints - namely, that these complaints are untimely and they cannot relate back to VAC's initial complaints because those complaints lacked subject matter jurisdiction. Two jurisdictional arguments are asserted: first, that the VAC complaint filed in the Southern District of Florida against Dey in 1997 was barred because there was prior public disclosure that destroyed jurisdiction under the False Claims Act, and second, that VAC's 2000 complaint filed against Dey in this District was barred by the 1997 Florida complaint pursuant to the FCA's "first-to-file" provision.

Initially, it is patently unfair for Dey to shoehorn these arguments for the first time into its reply brief, thereby limiting plaintiffs to very short page limits and time constraints within which to address these complex topics. Furthermore, because Dey's arguments are factual attacks on the Court's subject matter jurisdiction, it is clear that plaintiffs should be given leave to introduce evidence showing the basis for jurisdiction. See McCulloch v. Velez, 364 F.3d 1, 6 (1st Cir. 2004) (before court can engage in fact-finding and dismiss action under Rule 12(b)(1), party asserting jurisdiction must be given notice that issue is in dispute and adequate opportunity to ascertain and present relevant facts). The limited time frame available for this surreply renders that task difficult at best. However, because plaintiffs believe the jurisdictional arguments are frivolous and can be disposed of by this Court on the existing papers, plaintiffs have addressed the arguments herein. Plaintiffs seek leave to file evidentiary submissions as permitted for Rule 12(b)(1) arguments should the Court deem defendants' arguments of sufficient gravity to warrant possible dismissals.

**II.  The 1996 OIG Reports Are Not Public Disclosures Barring the Relator's Complaint**

Dey argues that a referenced Office of the Inspector General (OIG) report from 1996 constitutes a public disclosure that bars VAC's complaint because the "Government, through its own investigative efforts, knew that published AWPs for albuterol did not equal providers' 'actual acquisition costs' for that drug in 1996, more than a year before Dey was named as a defendant in the Relator's qui tam action. The 1996 audit report identifies one year earlier the same 200% or more 'spread' for albuterol that is also alleged in the 1997 Florida Complaint." Dey Reply Mem. at 24 (citations omitted).[1]  This is the entirety of Dey's factual discussion of the substance and content of the claimed public disclosure.  Noticeably missing from Dey's public disclosure argument is any showing by Dey that the ostensible public disclosure in fact disclosed anything whatsoever *about Dey* and its conduct, or even about the fraudulent spread marketing scheme in general.  Dey's argument is simply that the Government knew certain information about published AWPs or actual acquisition costs for albuterol products in the aggregate – not Dey's reported or actual prices for its albuterol, and not the deliberate price inflation scheme that is alleged in this action.

To constitute a public disclosure, the disclosure must reveal either the allegations of fraud or the elements of the underlying fraud. E.g., <u>United States ex rel. Dunleavy v. County of Delaware</u>, 123 F.3d 734 (3d Cir. 1997). For a public disclosure of fraudulent transactions to have occurred, both the misrepresented facts and the true facts must have been disclosed. <u>United States ex rel. Spring field Terminal Ry. v. Quinn</u>, 14 F.3d 645, 654 (D.C. Cir. 1994). The

---

[1]  Although only one report is specifically cited, Dey obliquely alludes to other reports by referencing its opening brief, which refers to the Robben Declaration, which attaches documents and refers to Appendix A to Abbott's Motion to Dismiss, which attaches various government reports.

statutory provision bars suits based on publicly disclosed "allegations or transactions," not "information", as many courts have noted. E.g., <u>Wang ex rel. United States v. FMC Corp.</u>, 975 F.2d 1412, 1418 (9th Cir. 1992).[2]

Public disclosures need to "specifically name" or otherwise "directly identify" the defendants in order for the jurisdictional bar to arise. <u>Cooper v. Blue Cross and Blue Shield of Florida</u>, 19 F.3d 562, 566 (11th Cir. 1994) ("we consider it to be crucial whether [a defendant] was mentioned by name or otherwise specifically identified in public disclosures"); <u>see also United States ex rel. Aflatooni v. Kitsap Physicians Services</u>, 163 F.3d 516, 523 (9th Cir. 1999) (public disclosure identifying one group of defendants did not bar subsequent FCA suit against other defendants); <u>United States ex rel. Butler v. Magellan Health Servs.</u>, 74 F.Supp.2d 1201 (M.D.Fl. 1999) (prior litigation constituted public disclosure bar only as to two defendants specifically named in state court complaint).[3] Additionally, a government report or

---

[2] In the context of this MDL, with the considerable emphasis in the class cases on when there was sufficient "inquiry notice" for statute of limitations purposes, it is critically important to focus on the very different and far more exacting standards applicable to a determination of whether a prior public disclosure jurisdictionally bars a qui tam action. Tellingly, the majority of cases in which a public disclosure prevented a subsequent False Claims Act case involved prior litigation against the same defendants, demonstrating the close nexus that normally exists to bring down the public disclosure bar.  E.g., <u>United States ex rel. Precision Co. v. Koch Indus.</u>, 971 F.2d 548 (10th Cir. 1992); <u>United States ex rel. Jones v. Horizon Healthcare Corp,.</u>, 160 F.3d 326 (6th Cir. 1998); <u>Kennard v. Comstock Res., Inc.</u>, 363 F.3d 1039 (6th Cir. 2004); <u>United States ex rel. Bly-Magee v. Premo</u>, 470 F.3d 914 (9th Cir. 2006) (dismissing claims only for same time period as prior complaint); <u>United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Serv. Co.</u>, 336 F.3d 346 (5th Cir. 2003); <u>United States ex rel. Butler v. Magellan Health Servs.</u>, 74 F.Supp.2d 1201 (M.D.Fla. 1999) (dismissing false claims act allegations only against two named defendants); <u>United States ex rel. Buntin v. Lahue</u>, 1996 U.S.Dist. LEXIS 11115 (D. Kan. 1996); <u>United States ex rel. McAllan v. City of New York</u>, 1999 U.S.Dist. LEXIS 6382 (S.D.N.Y. 1999).

[3] Even in a minority view, a public disclosure can constitute a jurisdictional bar when the specific defendant is not named, but only in the limited circumstances where the specific misconduct was performed by a small, identifiable group of companies, such that

even a prior complaint identifying the same misconduct only bars later claims pertaining to the same time period covered by the public disclosure. United States ex rel. Bly-Magee v. Premo, 470 F.3d 914 (9th Cir. 2006).

Examination of the cited OIG report and other OIG reports arguably referenced from 1996 demonstrates that Dey is not mentioned in any fashion, nor is there reference to any particular cohort of manufacturers. The OIG reports do not disclose Dey's (or any particular manufacturer's) reported AWPs, nor do they disclose the actual acquisition costs for Dey's (or any particular manufacturer's) albuterol product. The only information disclosed was that the *median* reported AWP for an unidentified group of albuterol sulfate products exceeded the *average* acquisition cost for those unidentified products. Because – as the report makes clear – Medicare calculated its allowable amounts based on the median AWP reported by some unknown number and cohort of manufacturers, it would be absolutely impossible to ascertain from the report that Dey had reported an inflated AWP for its albuterol products.[4]

---

pinpointing the actual perpetrator takes little insider knowledge or expertise. E.g., United States ex rel. Fine v. Sandia Corp., 70 F.3d 568 (10th Cir. 1995) (although public disclosure did not name specific defendant, there were a limited number of national laboratories and it was not difficult to figure out which was a wrongdoer); United States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 687 (D.C. Cir. 1997) (holding that a public disclosure occurred where there was enough information in the public domain to identify defendants and their allegedly fraudulent transactions).

[4]   A median is the number in the middle of a group of numbers that are arrayed from lowest to highest. In the median AWP context, if five prices were reported as follows, $0.37, $0.39, $0.44, $0.45 and $0.66, the median would be $0.44. However, the following five prices (or an infinite number of other examples) would yield the same $0.44 median -- $0.16, $0.20, $0.44, $0.48 and $0.49. Since OIG determined that the average acquisition cost of all albuterol sulfate products was $0.23, it is possible (although by no means certain) that all five of the manufacturers that reported prices in the first hypothetical array were inflating their reported prices. In the second hypothetical array, however, it is most likely that only three companies had reported inflated prices. Without specific identification of manufacturers, it is impossible to know how many, let alone which, manufacturers might have been misreporting their prices.

None of the OIG reports suggest in any fashion that there was any fraud associated with the calculated differences between the median of the reported prices and the average of the suppliers' actual acquisition costs. There is no reference to Dey (or other manufacturers) creating a spread, or marketing the spread, or anything to suggest knowing misconduct that constitutes a false claim or statement in support of a false claim. Plainly, there is nothing in the OIG reports that even hints at the kickback violations alleged by VAC. Moreover, VAC's initial FCA complaint alleging the AWP scheme and spread inducements against multiple drug manufacturers was filed in 1995, preceding and influencing the flurry of OIG investigations.

Significantly, the specific, non-public information that VAC provided to the government was information about Dey's knowing creation and marketing of a spread, and actual acquisition costs for Dey's products, coupled with an analysis of Dey's reported AWPs and WACs that evidenced the enormous spreads. The OIG reports, in discussing the government's failed attempt to collect and possibly utilize actual acquisition cost information, state that HCFA was thwarted in its effort to collect such information on a drug-specific basis due to the burdensomeness of the paperwork that would have been required. E.g., Def. Robben Decl. Exh. I at Appx. D. p.2. On its face, therefore, the ostensible "public disclosure" document reveals that the government was not able to gain access to this information in a reasonable fashion. Finally, the OIG reports are limited to an approximately one year time-frame, a small fraction of the relevant time period identified in VAC's complaint. Accordingly, the OIG reports do not constitute public disclosure of any allegations or transactions.[5]

---

[5] Should the Court disagree, Relator requests leave to introduce evidence demonstrating that VAC was an "original source." Dey's simplistic argument that the

### III.  VAC's 2000 Complaint Is Not Barred by the First-to-File Provisions of the FCA

Dey also alleges that VAC's 2000 complaint filed in this district is barred by VAC's own earlier complaint naming Dey.  Dey's argument ignores the obvious distinction that the 2000 complaint alleges inflated price reporting of different drugs, which were marketed and sold through different types of distributors and providers, thus raising different issues.  Virtually all of the defendants in the class case have argued extensively that there are differences between physician-administered and self-administered drugs, between drugs sold directly to providers versus those sold through distributors or wholesalers, and between multiple source versus single source drugs.  Indeed, they argued that each different type of drug presents unique sets of facts pertaining to pricing, competition, discounts and incentives, marketing, channels of distribution and issues of dispensing fees versus compensation for physician services.  Here, the drugs that are the subject of the 2000 complaint are self-administered, or retail pharmacy, drugs, versus the physician-administered infusion drugs in the 1997 complaint.  Moreover, the 2000 complaint identifies drugs or NDC numbers that did not even exist in 1997.

Even more fundamentally, however, Dey completely ignores the fact that Judge Lasker consolidated VAC's 1997 case against Dey (which had been severed from the Florida action and transferred to this District) with the 2000 case.  At that point, only one case existed

---

complaints do not allege that VAC was an original source misperceives the pleading burden in FCA cases.  Original source comes into play only if a defendant demonstrates that there had been a prior public disclosure.  Since a qui tam plaintiff could never prove a negative (the absence of a public disclosure), it is not rational to require plaintiff to affirmatively plead that.  Likewise, plaintiff need not plead the original source exception to public disclosure, any more than every plaintiff has an affirmative burden to plead that they are not a member of the armed forces suing another member of the armed forces, or that no defendant is a member of the judiciary or a senior executive branch official, see 31 U.S.C. § 3730(e)(1), (2); or that there was no earlier-filed complaint (which no plaintiff could ever possibly allege consistent with Rule 11 since qui tam complaints are filed under seal).

against Dey, effectively nullifying any first or second filed arguments. As the court recognized in <u>United States ex rel. Smith v. Yale-New Haven Hospital</u>, 2006 U.S. Dist. LEXIS 8614 (D. Conn. 2006), where plaintiff was permitted to amend an earlier complaint when faced with a first-to-file challenge, a procedural adjustment is preferable to dismissal under § 3730(b)(5). [6] The instant cases were already consolidated by court order, and the government intervened in the consolidated case, leaving no point to a first-to-file challenge. Obviously the government is not barred by § 3730(b)(5) and it has lodged no objection to the Relator's participation in the case.[7]

## CONCLUSION

For the foregoing reasons and as set forth in the United States' memoranda in opposition to the motion to dismiss, Dey's motion should be denied in its entirety.

Respectfully submitted,

   /s/ Susan Schneider Thomas
Susan Schneider Thomas
PA Bar I.D. No. 32799
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Phone: 215-875-3000

---

[6] Should the Court deem further amendment a more appropriate procedural mechanism, Relator requests leave to amend its allegations against Dey in the 1997 complaint <u>nunc pro tunc</u>.

[7] Even while enforcing the first-to-file bar, some courts have alluded to the fact that one purpose of the ban – to protect legitimate relators from opportunistic second filers – is obviously not served by applying the ban against a same relator filing a second suit. <u>E.g.</u>, <u>Grynberg v. Koch Gateway Pipeline Co.</u>, 390 F.3d 1276, 1279 (10th Cir. 2004) ("original qui tam relators would be less likely to act on the government's behalf if they had to share in their recovery with third parties who do no more than tack on additional factual allegations to the same essential claim"); <u>United States v. Kinder Morgan Co2 Co., L.P.</u>, 2005 U.S. Dist. LEXIS 31103 (D. Colo. 2005) ("it would be reasonable to read the statute as prohibiting the same claim being made by a different party rather than the same party as is the case here").

       James J. Breen
       Floirda Bar No: 0297178
       Alison W. Simon
       Florida Bar No. 0109568
       THE BREEN LAW FIRM, P.A.
       P. O. Box 297470
       Pembroke Pines, FL 33029-7470
       Telephone: 954-874-1635
       Facsimile: 954-874-1705
       jbreen@breenlaw.com
       alisonsimon@breenlaw.com

       Attorneys for the Relator
       VEN-A-CARE OF THE FLORIDA KEYS, INC.

**CERTIFICATE OF SERVICE**

I certify that a true and corect copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on March 2, 2007, a copy to LexisNexis File & Serve for posting and notification to all parties.

    /s/ Susan Schneider Thomas