# EXHIBIT A

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

CITIZENS FOR CONSUME, et al     .     CIVIL ACTION NO. 01-12257-PBS
    Plaintiffs                .
                              .
       V.                  .     BOSTON, MASSACHUSETTS
                              .     FEBRUARY 12, 2007
ABBOTT LABORATORIES, et al      .
    Defendants                 .
. . . . . . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:              Edward Notargiacomo, Esquire
                             Hagens Berman Sobol Shapiro LLP
                             One Main Street
                             4th Floor
                             Cambridge, MA 02142
                             617-374-3738


For Abbott Laboratories:     Brian Murray, Esquire
                             Jones Day Reavis & Pogue
                             77 West Wacker Drive
                             Chicago, IL  60601-1692
                             312-782-3939


For AstraZenaca:             James Duffy, Esquire
                             Reid Skibell, Esquire
                             Davis Polk & Wardwell
                             450 Lexington Avenue
                             New York, NY 10017
                             212-450-4803




Court Reporter:

Proceedings recorded by digital sound recording, transcript
produced by transcription service.
_____

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

2

1                              **I N D E X**

2   Proceedings                                                3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                        P R O C E E D I N G S

2          (Court called into session)

3          THE CLERK:  The Honorable Marianne B. Bowler

4   presiding.  Today is February 12, 2007.  The case of Citizens

5   for Consume, et al v. Abbott Laboratories et al, Civil Action

6   No. 01-12257 will now be heard.  Would counsel please identify

7   themselves for the record.

8          MR. NOTARGIACOMO:  Attorney Ed Notargiacomo from

9   Hagens, Berman, Sobol & Shapiro here in Boston, for the

10  plaintiffs in that action.  We are actually opposing Abbott's

11  motion for a protective order.

12         THE COURT:  Uh-huh.

13         MR. MURRAY:  My name is Brian Murray from Jones Day

14  in Chicago on behalf of Abbott Laboratories.

15         MR. DUFFY:  Jim Duffy with Davis, Polk & Wardwell on

16  behalf of AstraZeneca Pharmaceuticals and arguing the motion on

17  behalf of all defendants in the Montana and Nevada AWP

18  litigations.

19         MR. SKIBELL:  And Reid Skibell of Davis, Polk &

20  Wardwell also on behalf of AstraZeneca Pharmaceuticals.

21         THE COURT:  Thank you very much.  Well, I will hear

22  it.  It's docket entry starting, we'll start off with 3190,

23  which is Abbott's motion for a protective order.

24         MR. MURRAY:  Thank you very much, Your Honor.

25         THE COURT:  You're welcome.

1          MR. MURRAY:  This is our motion, Abbott's motion

2    seeking to prevent enforcement of 11 subpoenas directed to

3    third parties who happen to be Abbott's customers.  I'd be

4    happy to proceed in whatever order the Court finds convenient.

5    The motion sort of tees up two issues not to enforce, two

6    reasons not to enforce the subpoenas, one's a timeliness

7    question and the other maybe I could proceed onto

8    burdensomeness.  If Your Honor would prefer, I'd be happy to

9    talk about timeliness and maybe my brother and I could do a

10   point, counterpoint.  That might end the whole thing.

11         THE COURT:  Sure.

12         MR. MURRAY:  Thank you, Your Honor.  Your Honor, this

13   first part of the motion seeks a protective order under Rules

14   15 and 26.  As the Albert case that's cited in our paper points

15   out, good cause exists for the issuance of a protective order

16   when the discovery deadline has passed and discovery isn't

17   served until after the deadline has passed.  CMO-16 in the MDL

18   set a cutoff date for Track 2 for December 3, 2005.  As Your

19   Honor is aware, the Court asked the parties to submit an agreed

20   or alternative motions for an extension to that.  The

21   defendants had proposed March 3rd of 2006 and the plaintiffs had

22   sought June 30th of 2006.  The Court of course never ruled on

23   which of those it would accept but even under the most

24   favorable construction put forward by the plaintiffs that means

25   that discovery ended at the best case for them, June 30th of

5

1  2006.  The subpoenas at issue here to third parties, all of

2  whom are Abbott customers, were not issued until September 26th

3  of 2006, under any calculation at least three months after the

4  discovery cutoff.  That's our motion, they were not timely

5  served and they should not be permitted to go forward.

6          THE COURT:  Thank you.  I'll hear you.

7          MR. NOTARGIACOMO:  As to the issue of timeliness,

8  Your Honor, our position is in fact that they are timely, that

9  no, the Court did not accept either proposal, did not set a new

10 deadline for the close of discovery, set no--

11         THE COURT:  Well, absent not setting a new deadline,

12 isn't that by implication that the previous deadline is still

13 in place?

14         MR. NOTARGIACOMO:  Not necessarily, Your Honor.  If

15 you look to the order, I think it was the December 3rd order of

16 Judge Saris, December 1 order of Judge Saris, speaking about

17 the issue about case management order No. 16, she implicitly

18 recognizes that there may be a need to go defendant by

19 defendant, and we would submit that if the Court had in fact

20 submitted or ruled on any of those motions and set a deadline,

21 we would have sought additional time as against Abbott because

22 as Your Honor is probably well aware we've been in front of

23 Your Honor three times, three separate times in motions to

24 compel Abbott to produce documents in this case.

25         THE COURT:  Why couldn't these have been noticed

6

1    before June 30th?

2           MR. NOTARGIACOMO:  Specifically for that reason, Your

3    Honor, because Abbott's production – we have been trying to

4    work in good faith with Abbott and a number of times we

5    submitted three different motions to compel, May 3, 2004,

6    November 9, 2005 and most recently in June of 2006.  Abbott's

7    production, and I would point Your Honor to our submission in

8    the June filing, which is docket No. 2632, where we go through

9    the deficiencies in Abbott's production, and as a result of

10   those deficiencies and the fact that they basically dumped a

11   quarter of a million documents on us without producing what we

12   needed and what we had talked about them producing, we weren't

13   sure what we needed.  And when we did know what we needed and

14   the fact that we weren't going to get it from Abbott, we were

15   seeking it from third parties.

16          You know Abbott argues that in fact it's duplicative

17   of what Abbott would have produced.  Well, there's nothing

18   wrong with seeking what I call triangulation from third parties

19   to confirm what Abbott is telling us, that it has no other

20   documents but the ones it produced.  Frankly, we don't believe

21   that.  We believe there are other documents for other

22   communications with these subpoena recipients, highly relevant

23   to the issue of marketing the spread that goes to the heart of

24   this case, and we should be allowed to seek that discovery.

25          THE COURT:  Do you want to respond?

1      MR. MURRAY:  If I may, Your Honor.  The one thing my

2 brother did not mention is how anything – there's talk in the

3 response brief when they said a briefing about Abbott and its

4 production issues and we've been negotiating with plaintiffs

5 for many months and trying to get those put to bed, and as Your

6 Honor saw we filed a stipulation as to the emails which

7 hopefully will put most of that to bed, but what the paper

8 fails to do and what I haven't heard my brother say is how

9 those two things connect up and in fact they don't.  The third

10 party subpoenas here were issued to Abbott customers which were

11 in the national sales data which was produced years ago and

12 which the plaintiffs have taken the deposition of an Abbott

13 employee named Mike Sellers who told them--

14      THE COURT:  Just one second.

15 (Pause)

16      THE COURT:  I'm sorry.

17      MR. MURRAY:  No problem.  And Mr. Sellers had

18 testified that if they wanted to know who Abbott's customers

19 were they should just look in that national sales data, they

20 were there.  All of that was in plaintiffs' possession long

21 before the June 30, 2006 best case scenario discovery cutoff.

22 If the plaintiffs had wanted to do this triangulation that

23 they're talking about, they had everything in their possession

24 they needed long before that date came to get that done.  They

25 didn't.  They waited until three months after the best case

8

1  scenario discovery cutoff and there's nothing that they've

2  learned since then that allowed them to do this that they

3  didn't have back then.

4       MR. NOTARGIACOMO:  Just quickly, Your Honor, I think

5  that's not exactly true.  We thought we would get what Abbott

6  promised us, which was the communications that went to the

7  heart of the case with its customers.  We didn't receive those,

8  that's why we're seeking them now through a third party

9  subpoena.

10       THE COURT:  Denied as untimely.  All right, moving

11  on.

12       MR. MURRAY:  If I may, Your Honor.  The motion was a

13  motion to prevent the enforcement of the subpoenas.  Is the

14  motion denied as untimely or--

15       THE COURT:  The motion is granted, the basis being

16  untimely.

17       MR. MURRAY:  Thank you, Your Honor.

18       MR. NOTARGIACOMO:  Thank you, Your Honor.

19       THE COURT:  All right, the next motion.

20       MR. NOTARGIACOMO:  Your Honor, I'm here on behalf of

21  the states of Montana and Nevada seeking a motion for a

22  protective order with respect to defendants in those cases

23  seeking to depose--

24       THE COURT:  This is 3598, correct?

25       MR. NOTARGIACOMO:  3598.

1          THE COURT:  Right.

2          MR. NOTARGIACOMO:  Correct, Your Honor.  Defendants

3   seek to depose two entities, Great Falls and Snyder Drugs, both

4   I believe of Montana.  The subpoenas were issued to those

5   entities respectively on October 25, 2005 and November 9, 2005.

6   but I want to stress that our motion doesn't go just to those

7   entities.  There are other entities out there that during this

8   timeframe defendants served subpoenas on that have yet to be

9   deposed.  But the crux of the matter--

10         THE COURT:  How many?

11         MR. NOTARGIACOMO:  I don't know the - I know between

12  that time and March 31, 2006 deadline for discovery in that

13  case they issued 56 third party subpoenas.  Now I think they've

14  taken many depositions.  I'm not exactly sure what's left but

15  we want to make sure that whatever order Your Honor enters goes

16  to not just these two entities but anyone else out there

17  because the fact of the matter is the discovery deadline in

18  that case unequivocally without question, no one is arguing the

19  fact that it ended March 31, 2006.  Now these subpoenas were

20  issued to these entities before that time but there were a

21  number of times along the way that--

22         THE COURT:  Issued before that - what are the issue

23  dates?

24         MR. NOTARGIACOMO:  The issue dates for these two

25  entities are October of `05 and November of `05.

10

1          THE COURT:  Substantially before the cutoff?

2          MR. NOTARGIACOMO:  Right.  But here we are, Your

3    Honor, now eight months after the discovery deadline, 14 months

4    after they served the subpoenas on these entities, a number of

5    months, in some instances a whole year after they've received

6    documents from some of these deponents.  They could have at any

7    point decided to take those depositions but they failed to.  I

8    mean we're not even talking about coming to us a month or two

9    after the deadline, you know, we probably wouldn't be here, but

10   it's so far after the deadline, Your Honor.  I mean defendant's

11   position basically is if we issued a subpoena prior to that

12   cutoff it doesn't matter, we can take a deposition any time in

13   the litigation, doesn't matter what the case schedule says.

14         THE COURT:  Well, why didn't they go forward as

15   noticed?  Was it by agreement?

16         MR. NOTARGIACOMO:  Not agreement with the plaintiffs,

17   Your Honor.  The first we heard from them wanting to take these

18   depositions or approaching us about taking these depositions

19   was in December of `06, just last month, well, a little over a

20   month ago.  I can't speak to defendants' reasons for not taking

21   those depositions but surely they knew they wanted to take them

22   back in October of `05.  Surely they knew they wanted to take

23   them as late as even October of last year when we were in front

24   of Your Honor on a similar matter.  They knew these subpoenas

25   were outstanding.  They said nothing; they did nothing until

11

1   the end of last year.  That's not the way it works.  You can't

2   just put placeholders in before the date and then seek to take

3   depositions whenever you want in the litigation.

4          I'm not sure if Your Honor reviews the ECF filings in

5   this case--

6          THE COURT:  Everyday.

7          MR. NOTARGIACOMO:  --last week--

8          THE COURT:  At home one minute after midnight.

9          MR. NOTARGIACOMO:  I understand, Your Honor.  There

10  were thousands of pages filed with respect to summary judgment

11  in these proceedings.  We should be focusing on summary

12  judgment, that's where we are in the case, not diverting our

13  attention to subpoenas that were issued 14 months ago.

14         THE COURT:  All right.  What do you have to say?  Why

15  shouldn't I grant this motion?

16         MR. DUFFY:  Well, as an initial matter, Your Honor,

17  the state's motion for a protective order was targeted at the

18  depositions of Great Falls Clinic and Snyders Drugstores.  I'm

19  not prepared to argue as far as depositions of other third

20  parties.  To my knowledge there are no notice depositions of

21  other third parties out there, so I'm going to limit my

22  argument to Great Falls Clinic and Snyders.  As the state's

23  counsel said, the subpoenas were issued well before the March

24  31 discovery cutoff in November and October of 2005.  The

25  subpoenas were both for documents and depositions which were

12

1   both noticed with a return date before the discovery cutoff.

2   A number of the facts after which state's counsel misstates, at

3   no time did the defendants drag their feet in trying to take

4   these depositions.  From the point where the subpoenas were

5   issued until the summer of 2006, we were in negotiations with

6   the third parties attempting to try and take, receive

7   documents.

8           As you well know the depositions in question here are

9   limited only to depositions to authenticate information

10  regarding the admissibility of these documents.  So obviously

11  it would make no sense for defendants to go forward and try to

12  depose these third parties until we had their document

13  production.  Both of these third parties produced documents,

14  finally the Great Falls Clinic in May of 2006, Snyders produced

15  their final documents on June 29 of 2006.

16          THE COURT:  But you were negotiating with them and--

17          MR. DUFFY:  We were, we were negotiating with them

18  throughout the process.  They produced; they began producing

19  documents in January of 2006.  We reviewed the documents. We

20  went back to them saying these are not exactly what we're

21  looking for.  We'd like, you know, there was a negotiation

22  process going on into the summer of 2006.  Importantly also,

23  beginning in May 12, 2006, the defendants contacted plaintiffs

24  counsel in an attempt to negotiate a stipulation regarding

25  admissibility and authentication of these documents,

1    specifically--

2            THE COURT:  And what was the date of that?

3            MR. DUFFY:  Initial contact when we reached out to

4    the state's counsel was May 12th of 2006.

5            THE COURT:  So after the discovery deadline?

6            MR. DUFFY:  After the discovery deadline but at the

7    same point we were still receiving documents from these third

8    parties.  Trying to avoid having to do a deposition for

9    authentication and admissibility purposes, we reached out to

10   the state to try to negotiate a stipulation both for these

11   third parties and a number of others, MGM Mirage, which was one

12   other.  The, I believe it was June 29, 2006 defendants actually

13   sent a draft stipulation to the state's counsel with proposed

14   language and specifically listing the documents that are in

15   question here today, the seven documents, three produced by

16   Snyders, four produced by Great Falls Clinic.

17           Ultimately on July 21st, the state came back to us and

18   said, you know, we can't stipulate to these documents regarding

19   admissibility and authentication.  At that point in time

20   defendants went forward and, again, tried to go ahead and take

21   depositions of these third parties.  Shortly thereafter on

22   August 8, 2006, the state filed its motion for a protective

23   order regarding depositions, not only to MGM Mirage but on the

24   face of the motion it also refers to Great Falls Clinic and

25   Snyders Drug Stores.  Obviously given the pending motion, we

1  didn't go forward.  We'd try to take these depositions and let

2  this play out with the Court.

3          On October 23, 2006, Your Honor had a hearing and

4  decided the motions.  At that point in time, the state

5  backtracked and said that their motion applied only to MGM

6  Mirage and not to any of the other third parties.  Again,

7  counsel for state misstates the fact that defendants did not

8  try and argue this motion as to the other third parties.  The

9  transcript of the hearing is clear.  Sam Lonergan of Kaye

10  Scholer attempted to argue the motion not only as to MGM Mirage

11  but also to the other third parties in question including

12  Snyders Drug Stores and Great Falls Clinic.  The state

13  requested that the motion be limited to MGM Mirage which Your

14  Honor agreed to.  Therefore, the polling or the decision of

15  Your Honor at that hearing was only as to MGM Mirage.

16          After you had denied the state's motion for a

17  protective order concerning MGM Mirage, again, defendants went

18  forward and tried to schedule and plan the depositions of these

19  third parties including MGM Mirage, Great Falls Clinic and

20  Snyders Drug Stores.  We learned at some point later on that

21  the plaintiffs' counsel was again in negotiations with defense

22  counsel regarding coming to an agreement with a stipulation as

23  to the authenticity and admissibility of these documents.  We

24  waited until that process played out.  On December 7th the state

25  agreed to a stipulation with defendants concerning the MGM

1    Mirage documents.  Shortly thereafter, on December 14th, my

2    colleague Mr. Skibell contacted Ms. Breckenridge, counsel for

3    the state, in an attempt to again negotiate stipulation

4    concerning Great Falls and Snyders Drug Stores documents.  That

5    process played out for about a month.

6          In the middle of January counsel, Ms. Breckenridge,

7    counsel for the state, came back to us and definitively said we

8    can't agree to such a stipulation.  At that point we went

9    forward and tried to move it as expeditiously as possible in

10   scheduling and taking the depositions of Great Falls Clinic and

11   Snyders.  so I would put forward to you that at no point in

12   time did the defendants drag their feet or delay in going

13   forward in trying to take these depositions.

14          A couple of other points I'd just like to mention--

15          THE COURT:  No possibility of a stipulation?

16          MR. NOTARGIACOMO:  Your Honor, from what I understand

17   most of the documents are unlike the ones that were produced by

18   MGM which were contracts and we could stipulate to the

19   authenticity of those.  Here, I think the main issue is some of

20   these documents and a lot of the documentation is data.

21   There's no way to authenticate the data.  There's no way for us

22   to talk about its admissibility certainly if we don't know what

23   purpose it's being used for, so with respect to these

24   documents, no.

25          MR. DUFFY:  Your Honor, the defendants would be more

1  than happy to enter a stipulation regarding these documents as

2  we have regarding the MGM Mirage documents.

3          THE COURT:  I mean not to the truth of the matter but

4  that they are in fact authentic, that they were produced.

5  You're not willing to do that?

6          MR. NOTARGIACOMO:  Well, I mean, I don't think we're

7  arguing that they were produced but we don't know how they

8  kept.  We don't know anything about the data.  All they are,

9  are literally data sheets so it's difficult for us - we're in a

10 position where we don't know what it is.  It's not a contract,

11 you can say, okay, well, it was signed by the CEO of the

12 corporation and we can all agree to that.

13         MR. DUFFY:  Your Honor, just if I could clarify as to

14 the eight documents we're talking about.  It is true that one

15 of them is a large, I think it's something like 653 pages, it's

16 a spreadsheet of data which is transaction data for Snyders

17 Drug Stores.  The rest of documents are similar to what we

18 agreed to stipulate before.  There are four of the documents

19 for Great Falls Clinic or service agreement contracts.  There's

20 one service agreement contract for Snyders Drug Stores.  Then

21 the two remaining documents, one for Snyders, one for Great

22 Clinic, are one page data sheets.  So just so the record is

23 clear, the defense counsel has been in contact with the state's

24 counsel, Ms. Breckenridge, on a number of occasions trying to

25 answer her questions that she's raised as to a number of these

1   documents.  To our knowledge she's only raised questions as to

2   one or two of these documents in the past and we have

3   corresponded with her.  We've gone back to the third parties to

4   try to clarify exactly the sources of the data, what periods of

5   time these cover, what, you know, what these documents are and

6   have gone ahead and provided this information to the states

7   counsel.  So we have been in good faith, you know, made every

8   effort--

9           THE COURT:  Are you willing to stipulate to

10  everything except the spreadsheet?

11          MR. NOTARGIACOMO:  Your Honor, I can't agree to

12  stipulate to anything here.  I mean, I'd be happy to with

13  Ms. Breckenridge who is in Seattle and whose reviewed the

14  documents, I'm local counsel, be happy to talk to defense

15  counsel and see if her--

16          THE COURT:  Well that should have been done before

17  you came here.

18          MR. NOTARGIACOMO:  Well I believe, I believe it was,

19  Your Honor, but we're willing to give it another shot but not

20  with respect to any of the data.  A data sheet, as he said,

21  there's a large printout from Snyders, there's two other data

22  sheets.  There's nothing we can do by way of admissibility or

23  authenticity of those.

24          THE COURT:  Well I'm not talking about admissibility.

25  I'm just talking about authenticity.

18

1        MR. NOTARGIACOMO:  Well defendants are talking about

2   both.  They want us to stipulate to both and we - and I don't

3   think even with respect to the MGM material--

4        THE COURT:  How about, are you willing to enter into

5   a stipulation just as to authenticity and deal with

6   admissibility down the road?

7        MR. DUFFY:  Well, I guess it depends on where you

8   draw the line.  I mean the stipulation that defendants agree to

9   for the MGM Mirage documents were generalized to the

10  authenticity of the documents but there were specific

11  agreements as to admissibility regarding the admissibility of

12  the documents for a very specific and narrow purpose.  I mean

13  if we could do something like that we would be more than

14  willing to do that.  We do believe that, you know, at

15  depositions it would be necessary regarding admissibility if

16  the state is not willing to at least admit regarding a very

17  narrow use of the documents.  But as I said, the defendants are

18  more than willing to go ahead and, you know, reach an agreement

19  on the stipulation regarding the authenticity and, you know,

20  admissibility to a very limited purpose for these documents.

21        One other point, Your Honor, if I could make before

22  we continue discussion I think is important is that third

23  parties in both cases, Great Falls Clinic and Snyders Drug

24  Stores, were willing to go forward with these depositions and

25  were not opposed to these depositions, which again were limited

1  to authenticity, admissibility and we were planning on doing

2  by phone and probably, you know, taking at most an hour, an

3  hour and a half--

4          THE COURT:  By phone.

5          MR. DUFFY:  By phone, an hour, an hour and a half for

6  each of these which is why we believe that the state's

7  arguments regarding undo burden and prejudice are without

8  merit.  Again, as I said, we've been--

9          THE COURT:  Where's the burden if they're done by

10 phone--

11         MR. NOTARGIACOMO:  Your Honor--

12         THE COURT:  --and they're short.

13         MR. NOTARGIACOMO:  --I would, again, harken back to

14 the numerous motions for summary judgment that were filed last

15 week.  I mean we are not of unlimited resources.  I mean we

16 have, even an hour, hour and a half, two hours, you know, is a

17 lot of time when you're talking about the need to respond to

18 all of that paper.

19         And I'd like to point out, Your Honor, that if, as

20 the deadline approached if defendants saw the need to preserve

21 their ability to take these depositions, they could have filed

22 a motion or at the very least they could have come to us.

23         THE COURT:  You represent to me that they will be

24 done by telephone?

25         MR. DUFFY:  Yes, Your Honor.  We had arrangements

1   with the third parties to do these via telephone.  We, again,

2   we had provided notice of the depositions on January 19th.  We

3   didn't hear a word from the state's counsel about the

4   scheduling being a problem until January 29th, the night before

5   the first of these depositions was supposed to go forward.

6   Again, if the state's counsel had a problem with the scheduling

7   around summary judgment, we would have been more than happy to

8   move it.  Again, we're trying to schedule these for a time

9   that's convenient with, you know, witnesses for the third

10  parties.

11          THE COURT:  All right, allowed to the extent that

12  they be done by telephone, and if prior to the taking you can

13  narrow it by stipulating to the authenticity of certain

14  documents, please do so.  All right?

15          MR. DUFFY:  Thank you, Your Honor.

16          MR. NOTARGIACOMO:  Thank you, Your Honor.

17          THE COURT:  You're welcome.  All right, we have one

18  more?

19  (Pause)

20          THE COURT:  Anything else?  No, okay.  All right,

21  then we stand in recess.

22  //

23  //

24  //

25  //

21

<u>CERTIFICATION</u>

I, Maryann V. Young, court approved transcriber, certify
that the foregoing is a correct transcript from the official
digital sound recording of the proceedings in the
above-entitled matter.


_____                    March 2, 2007_____

Maryann V. Young_____