## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S MEMORANDUM IN
## SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO
## <u>PROVIDE AN ADEQUATE RESPONSE TO INTERROGATORY NO. 7</u>

### <u>INTRODUCTION</u>

Paragraph 42 of Plaintiffs' Complaint against Abbott contains a critical factual assertion that is the linchpin of this lawsuit:

> AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient.

Complaint ¶ 42.  Implicit in this allegation—and explicit elsewhere in the Complaint—is the notion that the United States Government believed that AWP was, in fact, a "price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer," and that the Government relied to its detriment on that belief.  Based on the evidence adduced to date, Abbott believes it is overwhelmingly clear that the Government at all times relevant to this Complaint did *not* believe AWP was the price at which pharmaceutical firms and manufacturers sold drugs to retail customers.  The evidence instead shows that AWP was widely understood by Medicare and Medicaid officials and others *not* to be the average price actually charged by pharmaceutical firms and wholesalers to their customers.

Early in this litigation, Abbott served an interrogatory on Plaintiffs seeking the evidence supporting the allegation in paragraph 42. The Government responded with a naked and unsworn assertion from DOJ lawyers, claiming that "[t]he general concept that the AWP refers to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers is commonly understood in the industry." *See* U.S.' Objections and Responses to Def. Abbott's First Set of Interrogatories at 35 (12/4/06) ("Gov. Resp.").[1] Relator Ven-a-Care provided no response at all. After several fruitless attempts to obtain an adequate response to its interrogatory, Abbott now asks the Court for help.

## BACKGROUND

### A.    Abbott's Interrogatory No. 7

Abbott's Interrogatory No. 7 asks Plaintiffs to "state the basis for Your contention in paragraph 42 of the Complaint that 'AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient.'" Abbott's First Set of Interrogatories Directed to Plfs. U.S. and Relator Ven-A-Care of the Florida Keys at 9 (8/4/06). In the following subparts, Interrogatory No. 7 further asks Plaintiffs to identify *who* believed or used the term AWP as it is described in paragraph 42 of the Complaint, and the specific basis for those beliefs:

> (c) all Persons who at any time *believed* that the term AWP or 'Average Wholesale Price' was used to refer to a price at which a pharmaceutical firm or wholesaler sells a drug to a retail customer, and how such Persons came to that understanding;

> (d) all Persons who at any time *used* the term AWP or 'Average Wholesale Price' to refer to a price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer;

---

[1] For the Court's convenience, the relevant excerpts from Abbott's interrogatories, as well as the responses of the Government and Ven-A-Care, are attached as Exhibit A. Complete copies of Abbott's interrogatories, the Government's responses and Ven-A-Care's responses are attached as Exhibits B, C and D, respectively.

(e) the *specific basis* of any Person's belief that AWP is used to refer to the price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer who then administers it to a patient[.]

*Id.* (emphasis added).

### B.     Plaintiffs' Responses To Interrogatory No. 7

After asserting a page and a half of meritless objections (such as quibbling over the meaning of terms like "belief" and "action"), the Government provided a minimal and unsupported response to the interrogatory.  *See* Gov. Resp. at 33-35.  First, the Government restated the factual assertion contained in paragraph 42 of its Complaint, declaring that "[t]he general concept that the AWP refers to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers is commonly understood in the industry."  *Id.* at 35.  The Government provided no support whatsoever for its declaration.  Nor did the Government verify the response as required by Rule 33(b).

The Government's separate responses to the subparts quoted above, which seek information on *who* exactly believed or used the term AWP as it is described in paragraph 42 during the time period of the Complaint, were no better.  The Government simply referred to this Court's 2006 ruling in another case on the meaning of AWP as used in Medicare statutes and regulations:

> The Court has ruled in this MDL proceeding that the term 'average wholesale price' should be interpreted according to its plain meaning. The United States objects to these interrogatories as being unduly burdensome, vague and not relevant.  The United States need not identify all 'Persons'' understanding of AWP whether it be the same or otherwise.

*Id.* at 35.   Besides these two statements, the Government provided no further answer. Importantly, the Government identified no individual, whether in the Government or elsewhere, who understood AWP to have the meaning described in paragraph 42.

Relator Ven-a-Care avoided the interrogatory altogether, claiming that "the information requested is directed at the Plaintiff's contentions about the claims of the United States in this cause" and that "the United States is the proper party to provide Answers and Objections to this Interrogatory." Answer and Objections of Relator/Plaintiff Ven-A-Care of the Florida Keys, Inc. to Def. Abbott Laboratories, Inc.'s First Set of Interrogatories Propounded Jointly to the Plaintiffs at 22 (12/4/06) (Ex. D).

### C.      Attempts To Obtain A Response To Interrogatory No. 7

Counsel for Abbott has conferred with Plaintiffs to explain why their responses to this Interrogatory are inadequate. Abbott also demanded that the Government provide a verification to its existing response, warning that a failure to do so would force Abbott to seek judicial relief. *See* Letter from C. Cook to A. Martinez (2/16/07) (attached as Ex. E). None of these attempts was successful.[2]

Abbott respectfully requests that the Court order Plaintiffs to provide a full, complete, and verified response to Interrogatory No. 7. The Government and Ven-a-Care should be required to identify all evidence in their possession that supports the contention contained in paragraph 42 of the Complaint, including all documents and witnesses on which they intend to rely to prove this assertion. Furthermore, as required by Rule 33(b), the Court should order the Government to swear to the factual assertion made in the Government's response allegedly describing the manner in which AWP was "commonly understood in the industry," as well as any other factual assertions Plaintiffs offer in response to Interrogatory No. 7.

---

[2] Abbott continues to confer with Plaintiffs regarding other interrogatory responses that are inadequate or have not been verified.

**ARGUMENT**

I.      **PLAINTIFFS MUST IDENTIFY EVIDENCE SUPPORTING THE FACTUAL ASSERTION REGARDING HOW AWP WAS "UNDERSTOOD IN THE INDUSTRY."**

Answers to interrogatories "must be responsive, full, complete and unevasive." C. Wright, A. Miller, R. Marcus, 8A *Federal Practice and Procedure* §§ 2177 (West 2007) (quoting *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968)).  "[C]ourts should not permit answers to interrogatories that are incomplete, inexplicit, and unresponsive." *Id.* (citing *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136 (D. Okla. 1977)).  Plaintiffs' responses to Abbott's Interrogatory No. 7 ignore these well-established rules.

The Complaint's passive-voice allegation that "AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient" concerns an assertion of *fact*.  The Government's naked assertion in its response to Abbott's Interrogatory No. 7 that "[t]he general concept that the AWP refers to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers is commonly understood in the industry" (Gov. Resp. at 35) also constitutes a *statement of fact*.

Parties are required to support their factual allegations with substantive evidence. Interrogatories designed to elicit that substantive evidence are entirely appropriate and must be answered under the Federal Rules.  Here, Abbott is not asking Plaintiffs to identify every fact that they will *ever* rely upon to support their assertion about how the term AWP was understood in the industry, but rather all facts they *now* have.  Plaintiffs have failed to identify the name of just one person who believes the assertion in paragraph 42 or just one document now in the Plaintiffs' possession that substantiates paragraph 42.  By signing the Complaint, Plaintiffs' counsel represented at the time that "the allegations and other factual contentions" in the Complaint have "evidentiary support."  Fed. R. Civ. P. 11(b)(3).

Yet the Government's response to Interrogatory No. 7 continues to obfuscate the central issue in this case by employing the passive voice—the response pointedly does not identify *who* believed AWP to be "commonly understood in the industry" as "the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers."  Gov. Resp. at 35.  If this case is to go forward, the Court must compel the Plaintiffs to stand behind their allegations.  Of course, to the extent that Plaintiffs have no evidentiary basis for their allegations, they should be required to admit as much and suffer the consequences.

This is not a hypothetical or far-fetched dispute.  Abundant evidence from the Government itself explicitly refutes Plaintiffs' assertion that "[t]he general concept that the AWP refers to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers is commonly understood in the industry."  Gov. Resp. at 35.  In 1997, the then-Secretary of HHS Donna Shalala told Congress the exact opposite.  She explicitly stated that "*the AWP is not the average price actually charged by wholesalers to their customers,*" but [r]ather, it is a 'sticker' price set by drug manufacturers and published in several commercial catalogs").  *Hearing on President's Fiscal Year 1998 Budget Proposal for Medicare, Medicaid, and Welfare Before the Senate Committee on Finance*, 105th Cong. 265 (1997) (attached as Ex. F) (emphasis added).  Reports from the Inspector General of HHS have repeatedly recognized that AWP is not an accurate or reliable indication of the price at which pharmaceutical firms or wholesalers sell drugs to their customers.  *See, e.g.*, *Medicaid-Limitation on Payment for Drugs*, Medicaid Action Transmittal No. 84-12 at pg. 3 (reprinted in Medicare & Medicaid Guide (CCH) ¶ 34,157) (Oct. 1984) ("Within the pharmaceutical industry, AWP means non-discounted list price.  Pharmacies purchase drugs at prices that are discounted significantly below AWP or list price.") (attached as Ex. P); *Physicians' Costs for Chemotherapy Drugs*, CIN A-02-91-01049 at pg. 1 (Nov. 1992)

("AWP is not a reliable indicator of the cost of a drug to physicians") (attached as Ex. G); *OIG Report Concerning Medicaid & Medicare Reimbursement for Drugs*, A-06-89-00037 at pg. 7 (Oct. 1989) ("[W]e continue to believe that AWP is not a reliable price to be used as a basis for making reimbursements for either the Medicaid or Medicare programs.") (attached as Ex. H); *Excessive Medicare Payments for Prescription Drugs*, OEI-03-97-00290 at pg. 9 (Dec. 1997) ("it is apparent that the current Medicare reimbursement methodology is based on [a] significantly inflated AWP statistic *which bears little resemblance to actual wholesale prices available in the marketplace*") (emphasis added) (attached as Ex. I).

Indeed, in 1989, a HCFA Associate Regional Administrator commented that while "the term 'average wholesale price' connotes what pharmacies pay for drug products, in the pharmaceutical industry it *is commonly understood to be higher than actual costs*."  HHC016-0747-48 (emphasis added) (attached as Ex. J).  These statements cannot be squared with Plaintiffs' contention that AWP is "commonly understood" to "refer[ ] to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customer."  Gov. Resp. at 35.

How AWP was understood in the industry is a key issue in this case, and Abbott needs an answer to this Interrogatory now if the parties are to litigate and conduct meaningful discovery on schedule.  Seven months after propounding Interrogatory No. 7, Abbott remains uninformed about the evidentiary support for the allegation in paragraph 42 of the Complaint.  To test this allegation, Abbott needs access to the evidence—both individuals and documents—that Plaintiffs claim substantiate it.  "[T]he purpose of discovery is to allow the parties to gain, at least, the basic information necessary to prepare for trial or make an informed decision about settlement."  *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*,  Nos. 8:02CV553, 8:02CV561, 2006 WL 1805936 at *1 (D. Neb. June 28, 2006); *Johnson v. Kraft*

*Foods N. Am., Inc.*, 236 F.R.D. 535, 544 (D. Kan. 2006) ("Plaintiff should provide as much information as possible regarding his claims without delay and as early as required," as "Defendants are 'entitled to know the factual basis of plaintiff's allegations'") (citations omitted).

## II. THIS COURT'S PRIOR RULING ABOUT THE MEANING OF AWP IS NOT EVIDENCE IN THIS CASE AND DOES NOT EXCUSE PLAINTIFFS FROM ANSWERING INTERROGATORY NO. 7.

Instead of providing any evidence to support the factual contention contained in paragraph 42, the Government refers to this Court as the sole support for how AWP was "commonly understood in the industry." In its response to subparts (c) through (e) of Interrogatory No. 7, which asks for information on *who* believed or used the term AWP to refer to the price at which pharmaceutical firms or wholesalers sell drugs to retail customers, the Government merely states that "th[e] Court has ruled in this MDL proceeding that the term [AWP] should be interpreted according to its plain meaning." Gov. Resp. at 35.

The Court's ruling in another AWP case regarding how the term AWP should be interpreted in Medicare statutes and regulations, however, is not evidence in this proceeding and is not responsive to Abbott's Interrogatory No. 7. That ruling provides no justification for refusing to answer an interrogatory in this proceeding about how AWP was understood by those responsible for drug reimbursement policy. To start with, the Track One ruling was issued months after the Complaint was filed in this case. As a result, it could not have formed the basis for the allegations in the Complaint, and should not be cited as the only evidence supporting paragraph 42. Furthermore, the Court's ruling does not even answer the question posed by Abbott. The Court's Track One ruling interpreted a term that was used in Medicare statutes and regulations. The Court did not purport to make a finding of fact or even to assert its own belief

about how AWP was understood in the industry.  Thus, even if the Court's ruling was evidence—and it is not—it would not be responsive to Abbott's request.[3]

Nor does the Court's ruling on the meaning of AWP in Medicare statutes and regulations render Abbott's Interrogatory No. 7 "not relevant," as the Government maintains.  Gov. Resp. at 35.  Government employees' understanding of the term AWP, and what they understood about published AWPs, is critical to the issues of falsity, reliance, and causation.  As noted above, the evidence shows that relevant agency officials believed that the term AWP referred to drug prices found in Red Book and other publications.  Abbott expects that the evidence will show that relevant agency officials were well aware that published AWPs were *not* an actual, calculated average of how much a pharmaceutical manufacturer or wholesaler sold drugs to retail customers, but nevertheless understood that relevant Medicare and Medicaid statutes and regulations permitted (or even required) reimbursement for drugs based upon AWPs published in Red Book and similar price listings—even if those prices exceeded average provider acquisition costs.

On this point, a response by HCFA Administrator Nancy-Ann Min DeParle to a 1998 OIG report showing Medicare allowed more than three times what providers paid for albuterol sulfate is telling.  There, Ms. Min DeParle stated unequivocally that HCFA was "required" by statute to base reimbursement upon AWP, even though HCFA knew it was an inflated figure:

> *If given the authority*, HCFA would like to increase the discount we now take on the published average wholesale price (AWP) and base our price on the acquisition cost.  The acquisition price and the average wholesale price are two distinct pricing methods.  The acquisition cost relates to the invoice for an item.  The AWP is a price that is essentially established by the industry, similar to the sticker price on a vehicle.  It is HCFA's belief that AWP does not

___
[3] The Court itself made clear that its decision applied only to the parties before it.  *See* Memorandum and Order, MDL No. 1456, Civ. Action No. 01-12257-PBS, Document 3299 at 2 (Nov. 2, 2006) ("The [MDL] before this Court currently includes such actions from Arizona, California, Nevada, and New York.  On July 27, 2006, the [JPMDL] transferred a qui tam action, in which the United States government has intervened, brought against pharmaceutical manufacturers under the [FCA].  The Court does not address these actions here.").

accurately reflect the true reimbursement for this product [albuterol sulfate], but rather is an inflated number.  *As long as HCFA is required to use AWP*, which is essentially retail, we will continue to pay more than other payers.

*Are Medicare Allowances for Albuterol Sulfate Reasonable?*, OEI-03-97-00292 (Aug. 1998) at

A-2 (emphasis added) (attached as Ex. Q).  *See also* Abbott Dep. Ex. 38 at HHD008-0009

(Medicare intermediary manual stating that "national average wholesale price" under Medicare

regulations means "as published in the Red Book and similar price listings") (attached as Ex. K);

Abbott Dep. Ex. 52 at HHD009-0217 (Jan. 14, 1998 HCFA memorandum stating "section 4556

of the Balanced Budget Act of 1997 has changed the way the Medicare program can pay for

drugs and no longer permits [estimated acquisition cost]") (attached as Ex. L).

Not surprisingly, early depositions of HHS officials in the Office of Inspector General

have also contradicted paragraph 42.  For example, on January 11, 2006, Abbott deposed OIG

employee Nancy Molyneaux, who helped prepare OIG reports in the mid-1990s relating to

reimbursement of drugs.  She testified that she always understood the term "AWP" to refer to

prices found in publications such as Red Book:

Q.  What did you mean when you used the word average wholesale price in that sentence?

A.  That's just the published wholesale price, average wholesale price.

Q.  And published in publications such as Red Book?

A.  Yes.

Q.  When you use the term average wholesale price in your work at OIG, did it mean to refer to the price published?

A.  As far as I recall.

Q. You did not -- when you used the term average wholesale price or AWP, you did not use it to refer to some actual calculated average of provider acquisition cost, did you?

MS. POLLACK: Objection to form.

MR. HAVILAND: Objection to form.

MR. NEAL: Objection to form. You can answer.

THE WITNESS:  I don't remember.

N. Molyneaux Dep. Tr. at 158-59; *see also id*. 263-64 (excerpt attached as Ex. M).  Amy Sernyak, another OIG witness who worked on reports in the mid-1990s, provided similar testimony.  *See* A. Sernyak Dep. Tr. at 79-80, 90-92 (rough transcript) (excerpt attached as Ex. N).  Other CMS and OIG witnesses can be expected to testify in the same way.

Discovery in the instant matter will allow Abbott to take meaningful discovery from fact witnesses at the federal government—and to challenge the unsupported statements the DOJ has made in the Complaint, responses to Abbott's interrogatories, and the amicus brief requested by the Court on the meaning of AWP.  Abbott finally will be able to scrutinize in detail the papers and files of key decision-makers at the federal agencies responsible for administering Medicare and Medicaid.  Soon Abbott will have the chance not just to read the memoranda and emails of these decision-makers but to depose them and hear them explain in their own words what they understood AWP to mean.  This process will be obstructed if Plaintiffs continue to withhold the names of individuals that purportedly justify the assertion in their Complaint about AWP's industry-wide meaning.

## III.   THE GOVERNMENT MUST VERIFY ITS RESPONSE TO INTERROGATORY NO. 7.

Rule 33 of the Federal Rules requires that "[e]ach interrogatory shall be answered separately and fully in writing *under oath*" and that responses must "be signed by the person making them."  *See* Fed. R. Civ. P. 33(b) (emphasis added).  This verification requirement is independent of an attorney's obligation to sign discovery papers.  *See Entergy La., Inc. v. Nat'l Union Fire Ins. Co.*, No. CIV. A. 98-219, 1999 WL 239511, *2 (E.D. La. Apr. 21, 1999) ("the

Rule 26(g)(2) signature of counsel [does not] supplant[] the separate verification requirement of Rule 33(b)(1) and (2)"); *Epling v. UCB Films, Inc.*, Nos. 98-4226-RDR, 98-4227-RDR, 00-4062-RDR, 00-4186-RDR, 2001 WL 1249362, at *5 (D. Kan. Sept. 27, 2001) (letter signed by counsel is not the equivalent of verification); C. Wright, A. Miller, R. Marcus, 8A *Federal Practice and Procedure* §§ 2172 & 2177 (West 2007). Interrogatory responses that assert facts, in particular, must be verified. *See Lastick v. Bahama Cruise Line, Inc.*, No. 88 CIV. 3624 (KC), 1990 WL 139023, at *5 (S.D.N.Y. Sept. 18, 1990) (when dealing with "fact interrogatories," "the importance of sworn answers given upon personal knowledge is obvious").

The Government provided a verification from CMS officials for just three of the 17 interrogatories contained in Abbott's first set of interrogatories. *See* Gov. Resp. Verifications (Ex. C). The Government provided no verification for Interrogatory No. 7. The Government's objections and responses to Abbott's interrogatories were signed by DOJ attorneys Ana Maria Martinez and Justin Draycott. However, because neither Ms. Martinez or Mr. Draycott swore to the substantive responses to any of the interrogatories, several of the Government's factual assertions—including those offered in response to Interrogatory No. 7—were not sworn as required by Rule 33.

The Government's only justification for its failure to verify has been to argue, citing *Johns v. U.S.*, No. Civ.A 96-1058, 1997 WL 732423 (E.D. La. Nov. 21, 1997), that "an attorney can sign for a corporation or the government." *See* Email from A. Martinez to C. Cook (Feb. 28, 2007) (attached as Ex. O). The Government misinterprets that decision. The *Johns* court held that in appropriate circumstances a government attorney can *verify* an interrogatory on behalf of the Government so long as the attorney based his response on all the information available to the Government. *Id.* at *2. Indeed, less than two months later, the court in *Johns* explicitly clarified

that its ruling did *not* mean that the Government could ignore Rule 33's verification requirement. *See Johns v. U.S.*, No. Civ.A. 96-1058, 1998 WL 15119, at *1 (E.D. La. Jan. 16, 1998) ("The rule is clear; interrogatories are to be answered under oath.").  As here, the Government attorneys in *Johns* failed to answer interrogatories under oath, forcing the Court to intervene and order verification.

Moreover, decisions that have allowed a Government attorney to verify interrogatories on behalf of the Government are careful to require that "the United States Attorney must consult with other relevant sources so that the answer to the interrogatory contains 'such information as is available to the party.'"  *United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 572 (E.D. Ill. 1975).  Moreover, a Government attorney verifying interrogatories "must have a basis for signing the responses."  *Shepherd v. Am. Broadcasting Cos.*, 62 F.3d 1469, 1482 (D.C. Cir. 1995).  That is exactly what Abbott's interrogatory seeks—the evidentiary basis for the factual contention contained in paragraph 42.

Because interrogatory answers themselves may be used at trial, "they are nothing short of testimony."  *Saria v. Mass. Mut. Life Ins. Co.*,  228 F.R.D. 536, 538 (S.D. W.Va. 2005). Someone must therefore accept responsibility for testifying about assertions made in an interrogatory response.  Arguably the person swearing to the response can be an attorney, but "[w]hen responses are only signed by an attorney, and not by the client, the attorney has effectively been made a witness."  *Id.* at 538-39.

The Government's failure to provide a substantive, sworn response to Interrogatory No. 7 is all the more troubling in light of the Government's unwillingness to provide a fact witness to support the assertions made in the United States' amicus brief on the meaning of AWP.  The Government has moved to quash an Abbott deposition notice seeking to depose one or more

- 13 -

employees of the HHS who reviewed, approved and/or were consulted regarding that brief, stating:

> As one would expect, the HHS personnel who fit the criteria in the deposition notice are *attorneys* who work in the Office of General Counsel for the Centers for Medicare and Medicaid Services ("CMS") who have been assisting the Department of Justice ("DOJ") in this litigation.

U.S.' Mem. of Points and Auth. in Supp. of the U.S.' Mot. for a Prot. Order Relating to the Deposition of Government Counsel at 1 (1/12/07) ("Gov't Mem.") (Dkt. No. 3541) (emphasis added).  Abbott has repeatedly advised the Government that it does not seek to depose Government lawyers.  Rather, Abbott simply wants to question a fact witness with personal knowledge of the factual assertions made in that brief.

The Government represented in a March 13, 2007 conference call that it intended to provide some sort of verification for its response to Interrogatory No. 7.  If that verification is made by a person with personal knowledge of how AWP was "commonly understood in the industry," then that limited aspect of this motion may become moot.  On the other hand, if the verification merely attests to the existence of other evidence allegedly supporting the Government's response to Interrogatory No. 7, the response will continue to be deficient in the absence of additional information, requested in Abbott Interrogatory No. 17, identifying the persons with personal knowledge from whom the Government obtained the information in its response.  *See Shepard*, 62 F.3d at 1482 ("If the party propounding the interrogatories wants to know the names of the individuals with personal knowledge of each response, it can always ask for them as part of the interrogatories.").[4]  In any event, even if the Government provides a

---

[4] Abbott's Interrogatory No. 17 asks the Government to "[i]dentify each person consulted or relied upon, or who provided documents or who otherwise constituted a source of factual information, in connection with the preparation of the Complaint or Your responses to these Interrogatories . . . ."  Abbott Inter. No. 17.

belated verification, the remaining aspects of this motion—seeking a full substantive and supported response to Interrogatory No. 7—must still be addressed.

It is time for the Plaintiffs to move beyond lawyer rhetoric and to start supporting their allegations with facts and/or witnesses with *personal knowledge* of facts.  If Plaintiffs remain unable or unwilling to support the factual assertion contained in paragraph 42 of its Complaint, this action should be subject to swift dismissal or summary judgment.  Indeed, if Plaintiffs are wholly unable to offer any support for this factual assertion, sanctions or summary judgment may be appropriate.  *See King v. E.F. Hutton & Co., Inc.*, 117 F.R.D. 2, 6-7 n.5 (D.D.C. 1987) ("Obtaining answers to contention interrogatories early on during the pretrial stage can expose a substantial basis for a motion under Rule 11 or Rule 56, and thus lead to an expeditious and inexpensive determination of a lawsuit.").

## CONCLUSION

For the foregoing reasons, the Court should grant Abbott's Motion to Compel Plaintiffs to Provide an Adequate Response to Interrogatory No. 7.

Dated:  March 16, 2007                       Respectfully submitted,

                                             /s/ R. Christopher Cook
                                             James R. Daly
                                             Tina M. Tabacchi
                                             Brian J. Murray
                                             JONES DAY
                                             77 West Wacker Drive, Suite 3500
                                             Chicago, Illinois  60601
                                             Telephone:  (312) 782-3939
                                             Facsimile:   (312) 782-8585

                                             R. Christopher Cook
                                             David S. Torborg
                                             JONES DAY
                                             51 Louisiana Avenue, N.W.
                                             Washington, D.C.  20001-2113
                                             Telephone:  (202) 879-3939
                                             Facsimile:  (202) 626-1700

                                             *Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

      I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL PLAINTIFFS TO PROVIDE AN ADEQUATE RESPONSE TO INTERROGATORY NO. 7, and memorandum and materials in support, to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 16th day of March, 2007.

                            /s/ David S. Torborg_____
                            David S. Torborg