# EXHIBIT C

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:** | ) | |
| *United States of America ex rel.* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Ven-a-Care of the Florida Keys, Inc., v.* | ) | |
| *Abbott Laboratories, Inc.* | ) | |
| CIVIL ACTION NO. 06-11337-PBS | ) | |
| | ) | |

## UNITED STATES' OBJECTIONS AND RESPONSES
## TO DEFENDANT ABBOTT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the United States

provides these objections and responses to Defendant Abbott Laboratories, Inc.'s ("Abbott")

First Set of Interrogatories ("Interrogatories") Directed To Plaintiff United States of America

And Relator Ven-A-Care Of The Florida Keys, Inc. ("Relator").

### Introductory Statement and General Objections

1.      These Interrogatories are unclear, vague, and ambiguous to the extent they are

directed jointly at the United States and the Relator.  The United States further objects to the

extent that it is unclear as to whether Abbott seeks responses to particular Interrogatories from

either the United States or the Relator, or both.  The United States objects to each Interrogatory

that is directed, in whole or part, to Relator.  The United States is not obligated to respond to all

or part of any Interrogatory that is, or should be, directed at the Relator.  Thus, the United States

1

responds only to those Interrogatories, in whole or part, that appear to be directed at the United States.

2. Subject to and without waiving its specific and general objections, and objections to Abbott's definitions and instructions, the responses set forth herein are based on information currently known to the United States, and their attorneys, and are made without prejudice to the right of the United States to assert additional objections should grounds for objection be discovered at a later time. Discovery in this case has only just commenced, and Abbott has not yet responded to any of the United States' discovery requests. Thus, the United States has not completed its discovery of the facts pertaining to this action or its preparation of this case for trial. The United States reserves the right to rely on any facts, documents, or other evidence that may be developed by the parties, or come to the United States' attention, and to supplement these Interrogatories when and if appropriate at a later time.

3. The fact that the United States may answer or object to part or all of any particular Interrogatory, should not be construed as an admission or acknowledgment of any fact set forth in, assumed by, or inferred from any such Interrogatory.

4. The United States reserves the right to object to the introduction into evidence in this or any other action, any of the responses or objections set forth in response to these Interrogatories. The fact that the United States has responded to any part or all of any particular Interrogatory is not intended, and shall not be construed, to be a waiver of any objection to the competence, relevance, materiality, privilege or admissibility of any evidence in this or any other action.

2

5. The United States' responses or objections to these Interrogatories shall not be construed to be a waiver of the right to object on any ground to other discovery requests involving or relating to the subject matter of these Interrogatories.

6. The United States objects to these Interrogatories to the extent that they seek information protected from disclosure by privilege or doctrine, including the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the law enforcement investigative files privilege or any other applicable basis for invoking privilege. The United States will screen materials and information to be released to Abbott to remove privileged materials. To the extent there is any inadvertent disclosure of privileged information, the United States reserves its right to argue that such inadvertent disclosure shall not constitute any waiver of the privileges. The United States reserves the right to object to the introduction into evidence before the Court at any time before or at trial of information that is privileged or otherwise protected under law and that has been revealed or produced inadvertently. The United States does not, by responding to these Interrogatories, waive any claim of privilege or the protection of any doctrine.

7. The United States objects to these Interrogatories to the extent that responding would require it to violate any seal imposed by a Court, by statute in the context of a False Claims Act *qui tam* matter, or the Federal Rules of Criminal Procedure, a grand jury proceeding, a criminal sentencing or other disposition, or any other matter. The United States will not separately object to any specific Interrogatory to assert this ground where doing so would itself identify a case currently under seal.

3

8.      The United States objects to these Interrogatories to the extent that they seek material which is not subject to release in the absence of a protective order under Fed. R. Civ. Proc. 26(c)(7). To the extent that these Interrogatories call for material subject to any applicable protective order in this case, it will be produced subject to the terms of that order.

9.      The United States objects to these Interrogatories to the extent they require the United States to draw legal conclusions or otherwise seek to impose upon the United States any requirements beyond those established by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts, or applicable Court Orders.

10.     The United States objects to these Interrogatories to the extent they exceed 25 in number in violation of Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, in the absence an agreement between the parties, or a court order.

11.     The United States objects to the scope of these Interrogatories to the extent they call for information that are not within the possession, custody or control of the United States Department of Health and Human Services' Centers for Medicare and Medicaid Services (CMS).

12.     The United States objects to these Interrogatories as overly broad, vague, unduly burdensome, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information spanning 40 years when the conduct alleged in the Complaint covers the time period from January 1, 1991 to January 31, 2001.

13.     Subject to and without waiving its specific and general objections, and objections to Abbott's definitions and instructions, where appropriate, the United States will produce information available to CMS through its contracts with Medicare carriers.  The United States

4

does not waive any objections to any assertions made by Abbott that those contractors are part of

CMS or parties to this action. The United States does not agree to be bound by the decisions or

actions of those contractors.

14.     The United States objects to these Interrogatories as overly broad, unduly

burdensome, not relevant or reasonably calculated to lead to the discovery of admissible

evidence, to the extent they seek information about drugs, manufacturers, other entities or

providers not named or referenced in the United States' Complaint.

15.     The United States objects to these Interrogatories to the extent that they are

cumulative and duplicative of Abbott's other discovery requests, including but not limited to,

third-party subpoenas issued to the United States and its contractors by defendants in the

Pharmaceutical Industry Average Wholesale Price Litigation ("AWP MDL") No. 1456, 01-

12257-PBS (D. Mass.), and the Lupron Marketing & Sales Practices Litigation ("Lupron MDL"),

MDL. No. 1430, 01-CV-10861-RGS (D. Mass.).

16.     The United States objects to the Interrogatories to the extent that: (a) the discovery

sought by any Interrogatory is unreasonably cumulative or duplicative, or is obtainable from

some other source (including but not limited to, a public source) that is more convenient, less

burdensome, or less expensive; (b) the discovery sought is in Abbott's possession; (c) the

discovery sought is equally available to Abbott; and (d) compliance with any Interrogatory would

be unduly burdensome, unduly expensive, harassing, annoying, or oppressive.

17.     These general objections apply to each Interrogatory and thus, for convenience,

are not repeated after each Interrogatory, but rather are set forth herein and hereby incorporated

into each response. The assertion of the same, similar, or additional objections or the provision

5

of partial responses to individual Interrogatories does not and should not be construed to waive or modify any of the United States' general objections.

18.     When the United States states that it will produce documents in accordance with the Rule 33(d) of the Federal Rules of Civil Procedure, it will produce such documents to the extent that they exist and can be reasonably obtained, and are within its possession, custody and control.  By stating that it will produce documents, the United States does not represent that any such documents or things exist or are within its possession, custody, or control.

19.     Any information or documents supplied in response to these Interrogatories are for use in this litigation and for no other purpose.

### Objections to Definitions and Instructions

1.     The United States objects to the Interrogatories' definitions and instructions because they are unclear, vague, and ambiguous to the extent that the Interrogatories intend to incorporate the definitions and instructions of two sets of Requests for Production, one served on the United States, and one served on the Relator.

2.     The United States objects to the additional definition of "You" and "Your" included in the Interrogatories because it is vague and ambiguous to the extent it refers to the United States and the Relator "collectively."

3.     The United States objects to the additional definition of "time frame" included in the Interrogatories as vague, ambiguous, overly broad and unduly burdensome in that the definition does not clearly specify a time period, but refers to whatever time period may "correspond to the events, reports, laws, determinations, or documents referred to in particular Interrogatories."

4.      The United States objects to the inclusion of definitions and instructions in the Interrogatories that are neither invoked by nor referenced in any individual Interrogatory.  Failure of the United States to object to any particular definition or instruction in this document, particularly definitions and instructions not applicable to these Interrogatories in any way, should not be construed as a waiver of any objection the United States may raise to an identical definition or instruction in responding to discovery requests in this or any other action.

5.      The United States objects to Abbott's definition of "Communication" in that the terms "any oral or written exchange" of "thoughts or ideas" by "any process" are overly broad and vague.  Further, the United States objects to Abbott's definition of "Communication" to the extent that it purports to impose discovery obligations broader than the scope of permissible discovery under the Federal Rules of Civil Procedure.  Subject to and without waiving its specific and general objections, and objections to Abbott's definitions and instructions, the United States will look to the descriptive terms included in the Interrogatories themselves to determine the "circumstances" that render a communication responsive to any Interrogatory.

6.      The United States objects to Abbott's definition of the terms "Concern," "Concerning," "Relating to" and "Relate to" as vague and ambiguous in that the proposed definition, which includes the terms and phrases "embody," "mention," "support," "contradict," "whether directly or indirectly," and "as required by the context to bring within the scope of the requests," is not subject to objective application.

7.      The United States objects to Abbott's definition of "Documents" as overly broad and vague in that the term is defined to include "communications" which Abbott defines by reference to terms that are overly broad and vague.  The United States objects to the inclusion

7

within the term "Documents" materials "which are in the possession of the Carrier" and to any

implication in the definitions that Carriers or other payment processing contractors are to be

included within the definition of the United States or any particular agency. Those contractors

are not parties to this action. Although the United States contracts with Carriers to perform

services, and to the extent the United States incorporates information from the Carriers, the

United States does not thereby admit to or agree to be bound by the decisions or actions of those

Carriers. Further, the United States objects to the extent that Abbott's definition purports to

impose obligations beyond the requirements of the Federal Rules of Civil Procedure.

8.     The United States objects to Abbott's definition of "Identify." The definition is

overly broad, in that with respect to persons, it seeks current contact information (including

personal residences). Any employees of the United States or its contractors should be contacted

through counsel for the United States. The United States objects to the extent that disclosure of

personal information, including home addresses, of any current or former government employee

is prohibited under the Privacy Act, 5 U.S.C.A. § 552a.

9.     The United States objects to Abbott's definitions of the terms "You", "Your" and

"U.S. Government" as overly broad and vague. The United States objects to the use of the terms

"agents," "representatives," "attorneys" in these definitions as vague and ambiguous. The United

States objects to these definitions to the extent that they encompass any agency, office, employee,

agent, representative, officer or contractor of either the Legislative Branch or the Judicial Branch

of the United States government and, moreover, to the extent that they are directed at Executive

Branch agencies and offices that do not have materials or information relevant to this case or

reasonably calculated to lead to the discovery of admissible evidence. Further, the United States

objects to the inclusion of the Department of Justice in these definitions to the extent that these

Interrogatories call for the production of documents protected from disclosure by privilege or

doctrine, including the attorney-client privilege, the work product doctrine, the law enforcement

investigative files privilege, the informant's privilege, the consulting expert privilege, the

deliberative process privilege, or any other applicable basis for invoking privilege. Subject to

and without waiving these objections, the United States will interpret these terms to mean offices

within the Centers for Medicare and Medicaid Services that are reasonably likely to possess

responsive information or documents, and the employees of those offices.

      10.     The United States objects to Abbott's definition of the term "Medicaid Drug

Rebate Program," to the extent that the definition asserts that the Public Health Service 340B

Drug Pricing Program is part of the Medicaid Drug Rebate Program.

      11.     The United States objects to Abbott's Instruction Number 1, incorporated by

reference to its First Set of Requests for Production of Documents, that the "requests are not

limited to documents in possession of the United States Department of Health and Human

Services," but include "documents in the possession of the United States Government's

executive, administrative, and legislative offices," as well as "all Medicare Carriers and Medicaid

Fiscal Intermediaries." With respect to "Medicaid Fiscal Intermediaries," to the extent that any

state used a contractor to administer or assist in the administration of its Medicaid program, it

was pursuant to a contract or agreement between such contractor and a state agency and not the

U.S. Government. To the extent that these Interrogatories call for the identification of documents

in the possession, custody or control of "Medicaid Fiscal Intermediaries," other state contractors,

or from state Medicaid agencies, which are not in the possession, custody or control of the U.S.

Government, the United States is not obligated to identify such documents. The United States incorporates by reference its objections to Abbott's definitions of "Documents" and "U.S. Government" in response to Instruction Number 1.

12.     The United States objects to Abbott's definitions and instructions to the extent they are inconsistent with or in excess of that which is required by the Federal Rules of Civil Procedure, Local Rules of the District of Massachusetts or Case Management Orders applicable to the above-captioned action.

### Responses and Objections to Interrogatories

<u>Interrogatory No. 1</u>: Identify each and every allegedly false or fraudulent statement or action made or taken by Abbott that relates in any way to Your claims in the Complaint, including:

(a) false or fraudulent statements made or caused to be made by Abbott and its agents;

(b) false or fraudulent claims filed by Abbott and its agents;

(c) actions or statements that caused a false or fraudulent claim to be filed; and

(d) false or fraudulent price representations.

As to each statement or action You identify, state why the statement or action was false or fraudulent and state with particularity the circumstances of the alleged fraud, including the date, time, location, subject matter, and participants in any allegedly false or fraudulent action. Identify all Documents relating to information provided in response to this Interrogatory.

<u>Response</u>:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.   The United States objects to this interrogatory on the following additional grounds. Objection, as used in this interrogatory the terms "agents" and "why" are vague, ambiguous, and not subject to objective

10

application in identifying responsive information.  Objection, this contention interrogatory is

overly broad and unduly burdensome, premature and unreasonable at this early stage of

discovery, before Abbott has responded to all the United States' factual discovery requests, before

all depositions have been taken, and before third-party discovery has commenced.  Objection,

serving such a contention interrogatory at the outset of discovery in an attempt to mandate

supplementation as "additional information becomes available," or as otherwise required by the

Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring

the United States to respond multiple times over the course of this complex case, (b) disrupting

the effective administration of the United States' case, and (c) improperly infringing on attorney

work product by requiring what would amount to frequent or periodic reports on counsels'

ongoing review and analysis of the evidence.  Objection, by seeking an inventory of each and

every "statement or action" "that relates in any way to Your claims in the Complaint," and "all

Documents" "relating to" the United States' contentions, regardless of the level of significance of

such facts and documents, the interrogatory is overly broad and unduly burdensome.   Objection,

by seeking identification of "all Documents," the interrogatory calls for the production of

documents and information protected from disclosure by privilege and doctrine, including but not

limited to, the attorney-client privilege, the work product doctrine, the common interest privilege,

the deliberative process privilege, and the law enforcement investigative files privilege.

Objection, the interrogatory is overly broad and unduly burdensome to the extent that it calls on

the United States to organize and inventory for Abbott documents and information produced by

Abbott to the United States, and Abbott can easily identify from their own files all documents

produced to the United States that "relate to" the United States' contentions.  Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following.  The United States reserves its right to supplement or amend this response.

As stated in the United States' Complaint ("Complaint"), from approximately January 1991 through January 2001, Abbott engaged in fraudulent acts that harmed the Medicare and Medicaid Programs.  The false or fraudulent statements or actions include Abbott reporting inflated pharmaceutical prices to price publications, such as the "Red Book," the "Blue Book," and the Medi-Span Hospital Formulary Guide ("Price Publications"), when Abbott knew or should have known that Medicare and Medicaid relied upon those reported prices to set reimbursement rates for Abbott's pharmaceutical products.  Abbott's actual sales prices for the pharmaceutical products named in the Complaint were far less than the prices reported by Abbott.  By reporting inflated prices – often 1000% higher than Abbott's actual prices – Abbott ensured its customers received inflated reimbursement from Medicare and Medicaid.   Thus Abbott's acts ensured that providers would profit from choosing Abbott's products.  Abbott then actively promoted "spreads" between (1) its fraudulently inflated prices and (2) its actual sales prices as an inducement to its customers.

(a) The false or fraudulent statements include the false prices reported by Abbott for the pharmaceuticals identified in the Complaint. Abbott submitted those prices and is fully knowledgeable of when it reported false prices for the pharmaceuticals at issue.   Abbott is well aware of all aspects of its price reporting to the Price Publications.

12

(b) The United States alleges that Abbott's fraudulent acts caused the submission of false claims. The United States will also explore in discovery whether Abbott submitted false claims on behalf of certain of its customers.

(c) Abbott reported false, fraudulent and inflated drug prices for certain drugs (listed in ¶¶ 31 and 35 of the Complaint) to the Price Publications, which were relied upon by the Medicare and Medicaid programs when setting reimbursement rates for Abbott's customers.

(d) During the time frame that Abbott engaged in the fraudulent scheme, all the price representations to the Price Publications for the pharmaceuticals at issue in the Complaint were inflated and therefore false.

The specific date, time, place, and individuals involved for all of Abbott's false price representations are in Abbott's possession and have not yet been fully produced to the United States. The United States has propounded discovery to Abbott for all documents and information regarding Abbott's price reporting for the pharmaceuticals at issue. The United States has propounded an interrogatory seeking the exact same information from the entity that possesses that knowledge – Abbott. Upon Abbott's complete production to the United States of those discovery responses, both parties will possess all information responsive to this interrogatory.

Abbott's production of documents pursuant to a False Claims Act Civil Investigative Demand and agency investigative subpoenas that would be responsive to this request was incomplete. Any documents responsive to this request currently in the United States' possession have been produced as part of the United States' initial disclosures under Fed. R. Civ. P. 26. The United States expects a further, more complete production from Abbott of documents responsive to this interrogatory and to the United States' interrogatories and requests for production.

13

Interrogatory No. 2: From January 1, 1965 to the end of the Relevant Claim Period, Identify all Persons currently or formerly employed by or serving the U.S. Government, currently or formerly serving as a contractor to the U.S. Government, or currently or formerly acting on behalf of the U.S. Government, as an agent or otherwise, with any responsibility for, involvement in, or influence over:

(a) the methodologies, policies, and procedures used in determining the amount that Providers would be paid for drugs under Medicare or Medicaid;

(b) the implementation of those methodologies, policies, and procedures by CMS, HCFA, HHS, State Medicaid Programs, Medicare Carriers or Medicaid Intermediaries;

(c) the price at which any agency or department of the U.S. Government purchased drugs from Manufacturers, wholesalers, or distributors; or

(d) the amount of rebates paid under the Medicaid Drug Rebate Program. For each such Person, Identify the Person's position, the time period and geographic scope of the Person's role, and the subjects of information the Person is likely to have.

   Response:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.  The United States objects to this interrogatory on the following additional grounds. Objection, the interrogatory is vague and ambiguous in its use of the following terms and phrases: "contractor," "acting on behalf of," "agent," "responsibility for," "involvement in," "influence over," "methodologies," "procedures," "determining the amount," "implementation," and "geographic scope." Objection, the interrogatory is overly broad and burdensome, and seeks information that is not relevant to any claim or defense and is not reasonably calculated to lead to the discovery of

14

admissible evidence, because it seeks information spanning 40 years, seeks "all" former and current employees, contractors, agents of the entire United States legislative and executive branches (according to Abbott's definition of "U.S. Government"), seeks the identity of persons who have no information about any claim or defense in this case, including but not limited to persons from "any agency or department of the U.S. Government [which] purchased drugs." Objection, to the extent that subpart (c) of this interrogatory relates to a different subject area and is not logically related to the basic interrogatory. Objection, the process of developing policies, rules and regulations is an inherently pre-decisional and policy-based process that includes requests for legal advice frequently made in anticipation of litigation; the identities of all individuals who were involved or consulted in that process is therefore protected from disclosure by the deliberative process privilege and, in some cases the attorney-client privilege and/or the work product doctrine. Objection, the interrogatory is not limited by reference to either particular policies or particular dates. Objection, the defined term "Identify" renders the interrogatory vague and ambiguous because the interrogatory purports to require the United States to provide information different from that called for by Abbott's definition of identify. Objection, the interrogatory is overly broad to the extent that it seeks current contact information (including residence) for former or current employees of Plaintiff who should be contacted through counsel for the United States. Objection, to the extent that disclosure of personal information, including home addresses, of any current or former government employee is prohibited under the Privacy Act, 5 U.S.C.A. § 552a.

15

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

All Federal Register notices of proposed or final policies, rules, regulations, or guidance concerning Medicare or Medicaid programs, identify individuals and offices within the U.S. Department of Health and Human Services that serve as points of contact. In addition, the United States has also already provided responsive information and documents in its initial disclosures pursuant to Fed. R. Civ. P. 26.

The following are persons currently or formerly employed by or serving within the Centers for Medicare and Medicare Services with material responsibility for the methodologies, policies, and procedures concerning drug reimbursement under Medicare or Medicaid and the implementation of those methodologies, policies, and procedures:

| | |
|---|---|
| Thomas Gustafson, Ph.D. | Deputy Director, Center for Medicare Management, CMS |
| Robert Nieman | Retired, former Health Insurance Specialist, Center for Medicare Management, Hospital & Ambulatory Policy Group |
| Bernie Patashnik | Retired, Director, Division of Medical Services Payment, Office of Payment Policy, Bureau of Policy Development |
| Bernadette Schumaker | Retired, Deputy Director, Division of Integrated Delivery Systems, Center for Health Plans & Providers |
| Thomas Ault | Former Director of Bureau of Policy Development |
| Barbara Wynn | Former Director of Bureau of Policy Development |
| Nancy-Ann Deparle | Former Administrator, CMS |
| Bruce Vladek | Former Administrator, CMS |

16

Thomas Scully            Former Administrator, CMS

Kathleen Buto            Former Associate Administrator for Policy, CMS

Robert Berenson          Former Director, Center for Health Plans & Providers

Mark Miller              Former Deputy Director, Center for Health Plans & Providers

Michael Hash             Former Deputy Administrator, HCFA

Elizabeth Cusick         Retired, Deputy Director, Center for Medicare Management

Stanley Weintraub        Retired, Branch Chief, Division of Medical Services Payment, Office of Payment Policy, Bureau of Policy Development

Rosanne Abato            Former Acting Director, Medicaid Bureau

Christine Nye            Former Director, Medicaid Bureau

Sally Richardson         Former Director, Medicaid Bureau and Director, Center for Medicaid and State Operations

Dennis G. Smith          Director, Center for Medicaid & State Operations

Timothy Westmoreland     Former Director, Center for Medicaid & State Operations

Rick Fenton              Deputy Director, Family & Children's Health Program Group, Center for Medicaid & State Operations

William Hickman          Supervisory Social Science Research Analyst, Office of Research, Development & Information, Planning & Policy Analysis Group

Jerome Jackson           Former Director, Division of Benefits, Coverage, and Payment

Linda Sizelove           Former Office Director, Medical Services, Medicaid Bureau

Robert Wardwell          Former Office Director, Division of Coverage Policy, Medicaid Bureau

17

| | |
|---|---|
| Cheryl Austein-Casnoff | Former Division Director, Division of Benefits, Coverage and Payment, Medicaid Bureau |
| Debbie Chang | Former Division Director, Division of Benefits, Coverage and Payment, Medicaid Bureau |
| Larry Reed | Health Insurance Specialist, Centers for Medicaid & State Operations, Disabled & Elderly Health Programs Group, Division of Pharmacy |
| Rhonda Rhoades | Former Division Director, Division of Benefits, Coverage and Payment, Medicaid Bureau |
| Deirdre Duzor | Director, Centers for Medicaid & State Operations, Disabled & Elderly Health Programs Group, Division of Pharmacy |
| Peter Rodler | Pharmacist, Chairman, Pharmaceutical Reimbursement Board |

The following are persons currently or formerly employed by or serving within the

Centers for Medicare and Medicare Services with material responsibilities concerning the

Medicaid Drug Rebate Program:

| | |
|---|---|
| Rosanne Abato | Former Acting Director, Medicaid Bureau |
| Christine Nye | Former Director, Medicaid Bureau |
| Sally Richardson | Former Director, Medicaid Bureau and Director, Center for Medicaid and State Operations |
| Dennis G. Smith | Director, Center for Medicaid & State Operations |
| Timothy Westmoreland | Former Director, Center for Medicaid & State Operations |
| Rick Fenton | Deputy Director, Family & Children's Health Program Group, Center for Medicaid & State Operations |

18

| | |
|---|---|
| William Hickman | Supervisory Social Science Research Analyst, Office of Research, Development & Information, Planning & Policy Analysis Group |
| Jerome Jackson | Former Director, Division of Benefits, Coverage, and Payment |
| Linda Sizelove | Former Office Director, Medical Services, Medicaid Bureau |
| Robert Wardwell | Former Office Director, Division of Coverage Policy, Medicaid Bureau |
| Cheryl Austein-Casnoff | Former Division Director, Division of Benefits, Coverage and Payment, Medicaid Bureau |
| Debbie Chang | Former Division Director, Division of Benefits, Coverage and Payment, Medicaid Bureau |
| Larry Reed | Health Insurance Specialist, Center for Medicaid & State Operations, Disabled & Elderly Health Programs Group, Division of Pharmacy |
| Rhonda Rhoades | Former Division Director, Division of Benefits, Coverage and Payment, Medicaid Bureau |
| Deirdre Duzor | Director, Center for Medicaid & State Operations, Disabled & Elderly Health Programs Group, Division of Pharmacy |
| Peter Rodler | Pharmacist, Chairman, Pharmaceutical Reimbursement Board |
| Vincent Powell | Former Health Insurance Specialist, Center for Medicaid & State Operations, Finance, Systems & Budget Group, Division of State Systems |
| David McNally | Former Deputy Director of the Finance, Systems and Budget Group, Center for Medicaid and State Operations |

19

Interrogatory No. 3: From January 1, 1965 to the end of the Relevant Claim Period, Identify all studies, analyses, or reviews performed on behalf of or received by the U.S. Government concerning (I) Medicare Part B or Medicaid's payment for prescription drugs or dispensing fees, (ii) the acquisition costs of Providers for drugs, (iii) drug pricing, and/or (iv) a difference between Providers' actual or average drug acquisition costs and then-published AWPs, WACS, Direct Prices, or List Prices for drugs. For each study, Identify:

(a) the entity, agency, department, organization, consultant, commission, accountant, or task force that performed the study;

(b) all individual Persons who were involved in the study;

(c) the time period of the study;

(d) the particular subject matter or drug involved in the study;

(e) any report or other Documents prepared as a result of the study;

(f) what, if anything, was done with the results of the study;

(g) each Person who received a report of the study or who otherwise learned of the study's conclusions; and

(h) Documents, data, information and witness statements collected in connection with the study.

Response:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.  The United States objects to this interrogatory on the following additional grounds.  Objection, the interrogatory is vague and ambiguous in its use of the following terms and phrases: "studies," "analyses," "reviews," "performed on behalf of," "drug pricing," "persons who were involved," "as a result

20

of the study," and "the results of the study." Objection, the interrogatory is overly broad and unduly burdensome, and seeks information that is not relevant to any claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence, because: it seeks information spanning 40 years; it seeks "all" "studies, analyses, or reviews" performed "on behalf of" or even just "received by" the entire United States legislative and executive branches (according to Abbott's definition of "U.S. Government") and relating to overly broad categories such as "drug pricing"; it is not limited to defendant Abbott and the drugs at issue in the United States' Complaint; it seeks the identity of persons and details about studies that have no relevance to any claim or defense in this case; and it seeks irrelevant and overly broad details such as the identification of "each person who received a report of the study or who otherwise learned of the study's conclusions." Objection, the interrogatory is overly broad and unduly burdensome to the extent that it calls on the United States to organize and inventory for Abbott documents and information that is equally accessible to Abbott, because it is publicly available and a large number of reports of the type requested by Abbott are already in Abbott's possession; these publicly available reports contains the non-privileged information that Abbott asks the United States to identify and inventory. Objection, the interrogatory seeks information protected from disclosure by privilege, including but not limited to, the attorney-client privilege, the work product privilege, the deliberative process privilege, and the law enforcement investigative files privilege.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response. Pursuant to Rule 33(d)

21

the United States will produce, for inspection and copying, reports issued between January 1,

1991 and January 31, 2001, by the Office of Inspector General of the U.S. Department of Human

Services relating to reimbursement of drugs under the Medicare and Medicaid programs.

Interrogatory No. 4: For any time period, Identify all Persons, including all current or former

employees or agents of the U.S. Government, of any State Medicaid Program, of any Medicare

Carrier, or of any Medicaid Intermediary, who received or were made aware of the Ven-A-Care

Qui Tam Complaint, the disclosure statement filed by Ven-A-Care pursuant to 31 U.S.C. §

3730(b)(2), or any of the allegations contained in the Ven-A-Care Qui Tam Complaint or

disclosure statement prior to May 16, 2006. For each Person identified, state when and under

what circumstances that Person became aware of Ven-A-Care's allegations and what information

was provided to them.  Identify all Documents relating to the information provided in response to

this Interrogatory.

Response:  The United States incorporates by reference its general objections and its

objections to definitions and instructions implicated by this interrogatory.   The United States

objects to this interrogatory on the following additional grounds.  Objection, part or all of this

interrogatory seems directed at the Relator which is a separate party in this case.  Objection, the

interrogatory is vague and ambiguous and overly broad in its use of the terms and phrases "were

made aware of" and "any of the allegations."  Objection, the interrogatory is overly broad and

unduly burdensome, and seeks information that is not relevant to any claim or defense and is not

reasonably calculated to lead to the discovery of admissible evidence, because it seeks

information for "any time period," seeks "all" former and current employees and agents of the

entire United States legislative and executive branches (according to Abbott's definition of "U.S.

22

Government"), any State Medicaid Program, any Medicare Carrier and any Medicaid Intermediary, and seeks the identity of persons who have no information about any claim or defense in this case.   Objection, this interrogatory is an improperly promulgated request for information, communications, and the identification of documents protected from disclosure by privilege, including but not limited to the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege.   Objection,  this interrogatory is an improperly promulgated request for information which is sealed by Court Order.  Objection, the defined term "Identify" renders the interrogatory vague and ambiguous because the interrogatory purports to require the United States to provide information different from that called for by Abbott's definition of identify.  Objection, the interrogatory is overly broad to the extent that it seeks current contact information (including residence) for former or current employees of Plaintiff, who should be contacted through counsel for the United States.  Objection, to the extent that disclosure of personal information, including home addresses, of any current or former government employee is prohibited under the Privacy Act, 5 U.S.C.A. § 552a.

Interrogatory No. 5: Identify and provide all facts in your possession relating to each and every instance in which Abbott marketed the "spread" to any Provider as alleged in paragraph 3 of the Complaint, and for each such instance, Identify:

(a) the employee of Abbott who allegedly marketed the spread;

(b) the Provider to whom the spread was marketed (and the individual employees of the Provider involved in the interaction);

(c) the drug that was marketed;

(d) the place and time of the alleged marketing;

(e) the content of the alleged marketing (including the precise facts on which You base your assertion that the employee "marketed the spread");

(f) whether the Provider purchased or did not purchase the product; and

(g) if applicable, all evidence that supports or refutes Your contention that the Provider purchased the product because of the spread between acquisition cost and reimbursement, as opposed to some other reason.

Identify all Documents relating to the information provided in response to this Interrogatory.

Response: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, this interrogatory is vague and ambiguous to the extent that it seeks evidence that "supports" or "refutes" "Your contention." Objection, the United States objects to this interrogatory to the extent that it changes and characterizes the allegations in the United States' Complaint. Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced. Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as "additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United states to respond multiple times over the course of this complex case, (b) disrupting the effective administration of Plaintiffs' case, and (c) improperly

24

infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence. Objection, by seeking an inventory of "each and every instance" and "all Documents" "relating to" the United States' contentions, regardless of the level of significance of such facts and documents, the interrogatory is overly broad and unduly burdensome. Objection, by seeking identification of "all Documents," the interrogatory calls for the production of documents and information protected from disclosure by privilege and doctrine, including but not limited to, the attorney-client privilege, the work product doctrine, the common interest privilege, the deliberative process privilege, the law enforcement investigative files privilege. Objection, the interrogatory is overly broad and unduly burdensome to the extent that it calls on the United States to organize and inventory for Abbott documents and information produced by Abbott to the United States, and Abbott can easily identify all documents produced to the United States that "relate to" the United States' contentions from Abbott's own files.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

As stated in the Complaint, from at least January 1991 through January 2001, Abbott engaged in a fraudulent scheme that harmed the Medicare and Medicaid Programs. The details of Abbott's marketing are known by Abbott's employees and are contained in Abbott's own documents.

The United States is unable at this early stage of the litigation to document every single time, place or Abbott individuals involved in marketing the spread on Abbott's pharmaceuticals.

First, it is not feasible to list all specific acts of a scheme that spanned ten years and fifty states. Second, the vast majority of that information still remains in Abbott's possession.   Abbott provided incomplete responses to the United States' investigatory subpoenas and document requests on this issue.  The United States issued two subpoenas requesting this material in 1997 and 2000.  Abbott failed to provide materials regarding its spread marketing activities in response to the 1997 subpoena.  Abbott failed to respond to the 2000 subpoena.  The United States believes that Abbott's initial disclosures and production to date on this issue have been deficient.

Now that discovery has begun in this action, United States is seeking additional evidence of Abbott's marketing the spread on its products.  In addition, the United States is aware that depositions are on-going in state cases where current and former Abbott employees are testifying about marketing the spread on Abbott drugs.  The United States expects to obtain those transcripts as part of discovery in this case.

Abbott's failure to produce evidence notwithstanding, the United States has identified instances where Abbott marketed the spread to its customers.  For example:

> • In an April 26, 1995 memorandum, Abbott's Manager for Reimbursement, Michael Heggie, discusses why having an inflated AWP for Abbott's Vancomycin is important.  In discussing changes in the reported AWP for Vancomycin, Mr. Heggie states "These changes will effect (sic) reimbursement and so customers may question us... Medicaid ... pays for the most part from NDC numbers.  Having a published price which is high allows a provider to bill at that list price.  Some customers who were buying our Vanco at a deep discount off list may ask about the price

26

change." This admission that Abbott kept the reported prices for its Pharmaceuticals "high" to boost its customers' reimbursement indicates that Abbott was marketing the spread.

- An Abbott employee (Jerrie Cicerale) and a Medi-Span employee (Michelle Christopher) had a discussion on May 8, 1995 regarding Vancomycin's inflated AWPs. In contemporaneously-taken notes, Ms. Christopher wrote, "Jerrie said Abbotts (sic) prices were always a little bit high and they want to be more competitive."

- Abbott actively marketed its spreads to numerous group purchasing organizations ("GPOs"), including one named Gerimed, Inc. ("Gerimed"). In a December 20, 1995 report on sales efforts to Gerimed, National Account Manager Dennis Walker wrote, "One of Gerimed's goals of obtaining maximum profitability for its members presents an opportunity for our injectables. They think there is about an 18 month window of opportunity to promote our injectables as more profitable for their members to use because of the bigger spread between AWP and cost. Legislative changes in reimbursement are expected to do away with this spread advantage by mid 1997 . . . **PLAN OF ACTION** . . . (3) Develop a plan for our field reps to complement Gerimed's efforts to promote our injectables that offer their members maximum profitability."

- In August 7, 1996 memorandum from Mr. Walker to his infusion system specialists and district managers, he noted, "GeriMed usually recommends

27

that our products be included on a members (sic) formulary because of the higher spread between contract price and our average wholesale price (AWP). This means your customers will be eager to know they now have additional Abbott products available to them on their GeriMed contract, because in most cases, they will make more money using our products." In this document, an Abbott national sales manager is directing his staff to market Abbott's inflated spreads.

- Abbott's customers expected the spreads Abbott marketed. When Abbott lowered its WAC prices in early 2001, it led to a lowering of its AWPs. Customers complained about the lowered reimbursement, having expected Abbott's spreads based on Abbott's marketing of its products. On May 11, 2001, one customer, Omnicare, went so far as to write a letter demanding approximately $10 million in restitution for lost profits from the decreased Abbott spreads.

- In addition, the United States is aware that Abbott marketed the spreads on certain of its drugs to the Relator in this case, Ven-A-Care of the Florida Keys, Inc.

<u>Interrogatory No. 6:</u> For each of the Subject Drugs and for each quarter during the Relevant Claim period, Identify:

(a) the false price You allege Abbott reported or represented;

(b) all circumstances of the Communication, including to whom and when;

(c) the specific prices You contend Abbott should have reported to Publishers or others;

28

(d) the basis for Your contention that Abbott should have reported each of those prices; and (e) for those claims You allege to have been false and for which You are seeking damages, the basis for any contention that the price reported or represented by Abbott was used in determining reimbursement under Medicare Part B or Medicaid.

Response:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.   The United States objects to this interrogatory on the following additional grounds.  Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, the term "Your contention" is vague and ambiguous as used in this interrogatory. Objection, to the extent that this interrogatory changes and characterizes the allegations in the United States' Complaint.  Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced.  Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as "additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence.  Objection, the interrogatory is overly broad and unduly burdensome in that it seeks prices reported by Abbott and communications made by Abbott, which are in the

29

possession of Abbott and are more easily inventoried by Abbott. Objection, the United States objects to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege, the common interest privilege, the consulting expert privilege, and the law enforcement investigative files privilege. Objection, to the extent that this interrogatory is a premature request for information that may be contained in the United States' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

(a) The false prices are the Direct Prices, WACs and AWPs Abbott reported to the Price Publications during the relevant time period of the Complaint for the following NDCs:

| DRUG | NDC# |
|------|------|
| Sodium Chloride Injection | 74196607 |
| Water for Injection 30 ml | 00074397703 |
| Vancomycin HCl 500 mg | 00074433201 |
| Water for Injection 10 ml | 00074488710 |
| Water for Injection 20 ml | 00074488720 |
| Sterile Water for Injection | 00074488750 |
| Sodium Chloride Injection | 00074488810 |
| Sodium Chloride Injection | 00074488820 |
| Sodium Chloride Irrigation | 00074613802 |
| Sodium Chloride Irrigation | 00074613803 |
| Sodium Chloride Irrigation | 00074613822 |
| Sterile Water for Irrigation | 00074613902 |
| Sterile Water for Irrigation | 00074613903 |

| | |
|---|---|
| Sterile Water for Irrigation | 00074613922 |
| Vancomycin HCl 5 gm | 00074650901 |
| Vancomycin HCl 1 gm | 00074653301 |
| Vancomycin HCL 500 mg Add-Vantage | 00074653401 |
| Vancomycin HCl 1 gm Add-Vantage | 00074653501 |
| 5% Dextrose in Water 50 ml | 00074710013 |
| 5% Dextrose in Water 100 ml | 74710023 |
| Sodium Chloride Injection | 00074710102 |
| Sodium Chloride 0.9% 50ml | 00074710113 |
| Sodium Chloride 0.9% 100 ml | 00074710123 |
| Dextrose Injection | 00074712007 |
| Sodium Chloride Irrigation | 00074713809 |
| Sterile Water for Irrigation | 00074713909 |
| Dextrose 5%/ Kcl/NaCl 1000 ml | 00074790209 |
| Dextrose Injection | 00074792202 |
| 5% Dextrose in Water 500 ml | 00074792203 |
| 5% Dextrose in Water1000 ml | 00074792209 |
| Dextrose Injection | 00074792336 |
| Dextrose Injection | 00074792337 |
| Dextrose 5% and 0.225% NaCL Injection | 00074792409 |
| Dextrose 5% and 0.225% NaCL Injection | 00074792609 |
| 5% Dextrose/ NaCl 0.9% 1000 ml | 00074794109 |
| Sodium Chloride Irrigation | 00074797205 |
| Sterile Water for Irrigation | 00074797305 |
| Sodium Chloride 0.9% 250 ml | 00074798302 |
| Sodium Chloride 0.9% 500 ml | 00074798303 |
| Sodium Chloride 0.9% 1000 ml | 74798309 |
| Sodium Chloride Injection | 74798436 |
| Sodium Chloride Injection | 74798437 |
| Sodium Chloride Injection | 74798509 |
| Water for Injection1000 ml | 00074799009 |

(b)     The prices for these pharmaceuticals were communicated to Price Publications by Abbott personnel – including, but not limited to, Ms. Jerrie Cicerale – throughout the time period covered by the United States' Complaint.  The dates of all communications will be determined when the United States completes review of Abbott's initial disclosures and Abbott makes full production of all documents related to its price reporting for the pharmaceuticals at issue.  Abbott already possess the information to answer this question.

31

(c)      Abbott should have reported the average or estimated acquisition cost for the pharmaceuticals at issue.

(d)      Abbott should have reported the average or estimated acquisition cost for its products because that was the amount at which Abbott was actually selling its pharmaceuticals. Abbott was not authorized by the government, any law or any regulation to submit false or fraudulent pricing information to inflate reimbursement to its customers to help sell or market its pharmaceuticals.

(e)      The basis for which the United States claims Abbott's false prices were part of the claims process for reimbursing providers for Abbott's pharmaceuticals is set forth in ¶¶ 31-50 of the United States' Complaint.

Interrogatory No. 7: During the Relevant Claim Period, state the basis for Your contention in paragraph 42 of the Complaint that "AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient." Separately identify:

(a) which Providers or class of Providers are included in Your use of the term "retail Customer" in paragraph 42 of the Complaint;

(b) which Providers or class of Providers included in Your use of the term "retail Customer" submitted claims to Medicare Part B or Medicaid that You allege were false;

(c) all Persons who at any time believed the term AWP or "Average Wholesale Price" was used to refer a price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer, and how such Persons came to that understanding;

(d) all Persons who at any time used the term AWP or "Average Wholesale Price" to refer to a price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer;

(e) the specific basis of any Person's belief that AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient;

(f) any statement, representation, or action by Abbott that You contend caused anyone to believe that AWP was used to refer a price at which Abbott sold drugs to a retail Customer who then administers it to a patient; and

(g) any statement, representation, or action by Abbott that You contend caused anyone to believe that AWP was used to refer a price at which Abbott sold drugs to any Provider or class of Providers who submitted claims to Medicare Part B or Medicaid that You allege were false. Identify all Documents relating to the information provided in response to this Interrogatory.

Response:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.   The United States objects to this interrogatory on the following additional grounds.  Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, the terms "belief," "believe," and "action," are vague and ambiguous as used in this interrogatory.   Objection, to the extent that this interrogatory seeks information about the "beliefs" and actions of an indefinite and undefined category of persons, this interrogatory seeks information that is not relevant to a claim or defense of any party to this action and the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection, to the extent that this interrogatory changes and characterizes the allegations in the

United States' Complaint. Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced. Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as "additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence. Objection, to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege. Objection, to the extent that this interrogatory is a premature request for information that may be contained in the plaintiffs' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders. Objection, this interrogatory is overly broad to the extent that it requests the identification of "all" Documents "relating to" the information sought by the interrogatory. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

34

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

The general concept that the AWP refers to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers is commonly understood in the industry.

(a)     Retail customers are all customers that purchased Abbot drugs, whether through a wholesaler or directly from Abbott.

(b)     To the extent those providers were reimbursed by Medicaid or Medicare, they were among the retail customers referred to in the Complaint.  Abbott has or should have access to the names, addresses and other contact information of its purchasing customers.  As claims data is produced in this matter, additional information regarding the retail customers who billed Medicaid and Medicare will be provided to Abbott.

(c) - (e)   The Court has ruled in this MDL proceeding that the term "average wholesale price" should be interpreted according to its plain meaning.  The United States objects to these interrogatories as being unduly burdensome, vague and not relevant.  The United States need not identify all "Persons'" understanding of AWP whether it be the same or otherwise.

(f) - (g)   Abbott reported prices it called "direct price," "list price," "wholesale acquisition cost," and "average wholesale price" to the Price Publications.  To the United States' knowledge, Abbott never submitted any statement or qualifier that the prices it reported using these terms were false and not in keeping with the plain meaning of the pricing terms Abbott was reporting.  Abbott gave no warning or indicator that it was reporting false prices when using these pricing terms to refer to the prices it reported to the Price Publications.

35

<u>Interrogatory No. 8</u>: Describe the damages You seek from Abbott. Your response to this Interrogatory should provide all information necessary for Abbott to quantify the damages You seek and should, at a minimum:

(a) Identify by name each state as to which you seek damages in this action relating to claims for reimbursement from the Medicaid program.

(b) Identify by name any programs beyond Medicare and Medicaid for which You seek damages.

(c) Identify, by NDC, calendar quarter, state (for Medicaid claims), program *(e.g.,* Medicare, Medicaid), and on a claim-by-claim basis, the amount of damages (excluding any punitive damages and civil penalties) Plaintiff seeks in this action.

(d) Describe the methodology, including any assumptions, used to calculate those amounts.

(e) For Medicare Part B claims, Medicaid claims relating to physician-administered drugs, and other classes of claims reimbursed by use of J-Codes, explain how You determined that reimbursement was paid using AWPs or WACS for Abbott drugs and how You calculated damages for such claims.

(f) Identify the number of "false or fraudulent claims that Abbott caused to be made" (Complaint, ¶ 104), the number of "false records or false statements made by Abbott" *(Id.,* ¶ 106), and the amount of civil penalties Plaintiff seeks in this action.

(g) Identify any lawsuits, judicial proceedings, settlements, or allegations concerning allegedly false claims filed by any Provider related to reimbursement of drugs by Medicare Part B or Medicaid, and explain how You intend to account for such lawsuits, judicial proceedings,

settlements, or allegations in determining Defendant's liability and the appropriate measure of damages in this case.

(h) Identify all Documents relating to the information provided in response to this Interrogatory.

Response:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.  The United States objects to this interrogatory on the following additional grounds.  Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, as used in this interrogatory the following terms and phrases are vague, ambiguous, and not subject to objective application in identifying responsive information:  "programs," "methodology," "assumptions," "other classes of claims," "lawsuits, judicial proceedings, settlements, or allegations concerning allegedly false claims filed by any Provider related to reimbursement of drugs," and "account for."  Objection, the interrogatory is overly broad and seeks information that is not relevant to any claim or defense and is not reasonably calculated to lead to admissible evidence to the extent that it asks "identify any lawsuits, judicial proceedings, settlements, or allegations concerning allegedly false claims filed by any Provider related to reimbursement of drugs by Medicare Part B or Medicaid, and explain how You intend to account for such lawsuits, judicial proceedings, settlements, or allegations in determining Defendant's liability and the appropriate measure of damages . . ."  Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests (including but not limited to requests for complete pricing and transactional data), before all depositions have been taken, and before third-party discovery has commenced.

37

Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as "additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence. Objection, this interrogatory is unduly burdensome to the extent that it seeks an identification of damages by NDC, calendar quarter, state, program, and on a "claim-by-claim basis." Objection, this interrogatory is unreasonably broad and burdensome to the extent that it seeks the number of "false records or false statements" made by Abbott. Objection, by seeking identification of "all Documents," the interrogatory calls for the production of documents and information protected from disclosure by privilege and doctrine, including but not limited to, the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the deliberative process privilege, and the law enforcement investigative files privilege. Objection, to the extent that this interrogatory is a premature request for information that may be contained in the plaintiffs' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

The United States has already provided responsive information and documents contained in the United States' initial disclosures which were previously provided to Abbott pursuant to Fed. R. Civ. P. 26.  In addition, the United States provides the following.

The United States seeks damages for the Medicaid Programs of all 50 states.  The United States is not seeking damages for any programs beyond Medicare and Medicaid at this time.

The United States has not received complete pricing and transaction data from Abbott. That information is needed for detailed damage calculations.  Damage methodologies may include, but are not limited to:

- calculating all amounts paid by Medicare and Medicaid for the drugs in the United States' Complaint from January 1991 to January 2001, as all the claims were tainted by kickbacks;

- calculating the difference between what Medicare and Medicaid actually paid for the drugs in the Complaint from January 1991 to January 2001, and what would have been paid had Abbott not engaged in its scheme;

- calculating the amount by which Abbott was enriched by its scheme as measured by the profits received by Abbott for its sales of the drugs at issue in the Complaint from January 1991 to January 2001; the United States will also be conducting discovery as to Abbott's direct participation in the process of submitting claims to Medicaid and/or Medicare; Abbott may have been additionally enriched by directly receiving part of the spread that Abbott created for its customers through its fraudulent scheme;

- calculating the value of the kickbacks received by Abbott's customers; and

- penalties of $5,000 to $10,000 per Medicare and Medicaid claim for the Abbott drugs in the Complaint from January 1991 to September 28, 1999; and penalties of $5,500 to $11,000 per Medicare and Medicaid claim for the Abbott drugs in the Complaint from September 29, 1999 to January 31, 2001.

The United States will rely on testifying experts to provide damage calculations. The expert reports will be provided pursuant to Fed. R. Civ. P. 26 and the Court's scheduling order in this case.

Interrogatory No. 9: Paragraph 109 of the Complaint states that "Abbott has been unjustly enriched, including profits earned by Abbott because of illegal inducements Abbott arranged to be paid to its Customers." Identify with particularity all evidence that supports your contention, all illegal inducements that Abbott allegedly arranged to be paid to its Customers, and all payments by which Abbott allegedly was unjustly enriched. Identify all Documents relating to the information provided in response to this Interrogatory.

Response: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, as used in this interrogatory the term "payments" is vague, ambiguous, and not subject to objective application in identifying responsive information. Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced. Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as

40

"additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence. Objection, by seeking an inventory of "all evidence" that supports "your contention," "all illegal inducements," "all payments," and "all Documents" "relating to" the United States' contentions, regardless of the level of significance or volume of such facts and documents, the interrogatory is overly broad and unduly burdensome. Objection, the interrogatory is overly broad and unduly burdensome to the extent that it calls on the United States to organize and inventory for Abbott documents and information produced by Abbott to the United States, and Abbott can easily identify all documents produced to the United States that "relate to" United States' contentions from Abbott's own files. Objection, by seeking identification of "all Documents," the interrogatory calls for the production of documents and information protected from disclosure by privilege and doctrine, including but not limited to, the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the deliberative process privilege, and the law enforcement investigative files privilege. Objection, to the extent that this interrogatory is a premature request for information that may be contained in the United States' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

41

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

The doctrine of unjust enrichment allows for restitution when it would be unconscionable to permit another to retain the benefit received. Abbott benefitted from reporting false prices by maintaining or increasing its market position as a result of its scheme. For example, in 1991, publically-available State Drug Utilization Data ("SDUD") showed that less than 10% of Abbott's Vancomycin sales were reimbursed by Medicaid; SDUD data shows that Abbott's market share eventually increased to approximately 80%. The relation between this increased market share and Abbott's fraudulent reporting of prices is evidenced by Abbott documents, which show consideration by Abbott employees of the additional profits that could be obtained by artificially inflating prices. While Abbott profited from this fraudulent price reporting from at least 1991 through 2001, Medicare and Medicaid paid in excess of $69 million for Vancomycin alone and approximately $145 million for large volume parenterals referred to in the United States' Complaint. The payments from the government flowed to Abbott's customers, who in turn paid Abbott for the drugs both directly and through wholesalers and group purchasing organizations, thereby maintaining and increasing Abbott's market share.

The market share maintained and increased as a result of Abbott's fraudulent scheme increased Abbott's profits. In addition, the United States will be conducting discovery as to Abbott's direct participation in the process of submitting claims to Medicaid and/or Medicare. Abbott may have caused additional damages and have been additionally enriched by directly receiving part of the spread that Abbott created for its customers through its fraudulent scheme.

42

The United States provided information responsive to this interrogatory in its initial disclosures under Fed. R. Civ. P. 26. The United States will rely on testifying experts to provide further damage calculations. The expert reports will be provided pursuant to Fed. R. Civ. P. 26 and the Court's scheduling order in this case.

Interrogatory No. 10: During the over ten years between the filing of the Ven- A-Care Qui Tam Complaint and the U.S. Government's decision to intervene in the action, Identify:

(a) all Persons or organizations the U.S. Government or Ven-A-Care contacted in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(b) all Persons the U.S. Government interviewed or spoke with in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(c) all Persons the U.S. Government deposed or questioned in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(d) every subpoena or document request the U.S. Government issued in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(e) every response to any subpoena or document request the U.S. Government issued in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(f) all documents, transcripts, recordings (video or audio), or other materials that the U.S. Government received or that were generated in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint.

Response: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, part or all of this

43

interrogatory seems directed at the Relator which is a separate party in this case. Objection, this interrogatory is an improperly promulgated request for information protected from disclosure by privilege, including but not limited to the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege. Objection, to the extent that this interrogatory seeks information designated as confidential by third parties. Objection, this interrogatory is an improperly promulgated request for information which is sealed by Court Order. Objection, this interrogatory is unreasonably over broad and unduly burdensome to the extent that it seeks "all" contacts, interviews, depositions, subpoenas, responses, documents, transcripts, recordings or "other materials" related to "all persons or organizations," regardless of significance. Objection, this interrogatory is not limited to Abbott and the drugs in the United States' complaint. Objection, this interrogatory is cumulative to the extent that the United States has already provided their initial disclosures under Fed. R. Civ. P. 26 and will be responding to appropriate discovery during the discovery period. Objection, this interrogatory seeks information not relevant to any claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory No. 11: From any time period, Identify all Communications regarding Medicare Part B or Medicaid's payment of or methodology for reimbursing drugs or dispensing fees; the acquisition costs of Providers for drugs; and/or drug pricing between Ven-A-Care and any other Person, including but not limited to: (I) the U.S. Government, (ii) any state or State Medicaid Program, (iii) NAMFCU or any MCFU, (iv) any Medicare Carrier or Medicaid Intermediary, (v) any Publisher, or (vi) any Provider. For each such Communication, Identify:

44

(a) the Persons involved in the Communication;

(b) the date and place of the Communication;

(c) all materials, including exchanges of data, associated with the Communication; and

(d) the subject matter of the Communication, including but not limited to the drugs at issue, the Manufacturer(s) of those drugs, and the prices at issue.

Identify all Documents relating to the information provided in response to this Interrogatory.

Response: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, part or all of this interrogatory seems directed at the Relator which is a separate party in this case. Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, as used in the interrogatory the terms "communications," "drug pricing," and "exchanges of data" are vague, ambiguous and overly broad. Objection, the interrogatory is overly broad, unduly burdensome, and seeks information that is not relevant to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information about communications from "any time period," communications with "any other Person," "all" communications regarding "acquisition costs," "and/or drug pricing." Objection, to the extent that this interrogatory seeks information and documents protected by privilege including but not limited to the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege.

45

Interrogatory No. 12: Identify all instances where Ven-A-Care was over reimbursed for drugs by Medicare Part B or Medicaid and state what Ven-A-Care did with each such reimbursement. Identify the steps that other Providers should have taken when they were over-reimbursed for drugs by Medicare Part B and Medicaid.

Response: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, part or all of this interrogatory seems directed at the Relator which is a separate party in this case. Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, as used in this interrogatory the following terms and phrases are vague, ambiguous, and not subject to objective application in identifying responsive information: "over-reimbursed," "what Ven-A-Care did," "the steps," "other Providers," and "should have taken." Objection, the interrogatory is also vague and overly broad in that it does not specify a time period, and is not limited to the Abbott drugs at issue in the Complaint. Objection, the interrogatory also seeks information that is not relevant to any claim or defense in this case, and is not reasonably calculated to lead to the discovery of admissible evidence. Objection, the United States objects to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Interrogatory No. 13: For the Relevant Claim Period, Identify all laws, regulations, and Communications to Abbott that Plaintiff contends required Abbott to report prices to Publishers that reflected the "the prices at which Abbott actually sold its drugs" and/or refrain from marketing the "spread" to its Customers. *See* Complaint, ¶ 3. Identify (a) every Manufacturer

46

that did comply with these duties and (b) every Manufacturer that did not comply with these duties. Identify all Documents relating to the information provided in response to this Interrogatory.

Response:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.   The United States objects to this interrogatory on the following additional grounds.  Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, as used in this interrogatory the term "communications" is vague, ambiguous, and not subject to objective application in identifying responsive information.  Objection, to the extent that this interrogatory seeks information about "every manufacturer," this interrogatory seeks information that is not relevant to a claim or defense of any party to this action and the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced.  Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as "additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence.

Objection, by seeking identification of "all Documents," the interrogatory calls for the

production of documents and information protected from disclosure by privilege and doctrine,

including but not limited to, the attorney-client privilege, the work product doctrine, the

common interest privilege, the deliberative process privilege, and the law enforcement

investigative files privilege. Objection, to the extent the interrogatory purports to require the

United States to draw pure conclusions of law.

Subject to and without waiving the United States' general and specific objections, and its

objections to Abbott's definitions and instructions, the United States provides the following.

The United States reserves its right to supplement or amend this response. The United States

refers Abbott to its Complaint, its Opposition to Abbott's Motion to Dismiss and its September

15, 2006 Amicus Brief on the meaning of AWP, all of which set forth statutes, regulations and

rules relevant to this case.

Abbott was prohibited by the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. ("FCA"),

from causing the submission of false or fraudulent inflated reimbursement claims. By reporting

false prices, Abbott injected itself into the claims process and manipulated government

reimbursements. Abbott's liability for manipulating government reimbursement does not

require an affirmative legal duty to disclose true and correct prices as a condition precedent.

Abbott's decision to manipulate government reimbursement claims for its drugs was voluntary;

engaging in a fraudulent scheme to induce the government to pay false claims can give rise to

FCA liability. *See Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003)

("Congress wrote [the FCA] expansively, meaning 'to reach all types of fraud, without

qualification, that might result in financial loss to the Government.'")(citation omitted). "'[T]he

48

[FCA] is violated not only by a person who makes a false statement or a false record, . . . but also by one who engages in a *fraudulent course of conduct* that causes the government' to lose money by honoring a false claim." *United States v Raymond & Whitecomb Co.*, 53 F. Supp. 2d 436, 445 (S.D.N.Y. 1999); *see also Franklin v. Parke-Davis*, 2003 WL 22048255, \*1 (D. Mass. 2003) (sustaining FCA claims emanating from defendant's fraudulent statements about Medicaid policies although no false information appeared on the face of the claims submitted by providers).

In addition, the United States has alleged that Abbott offered illegal remuneration – in the form of the spread – to its customers in violation of the Anti-Kickback Statute ("AKS"). In pertinent part, the AKS, codified at 42 U.S.C. § 1320a-7b(b) (as amended), reads:

(b) Illegal remuneration

\*  \*  \*

> (2) whoever knowingly and willfully offers or pays *any remuneration* (including any kickback, bribe, or rebate) *directly or indirectly, overtly or covertly, in cash or in kind* to any person to induce such person –

>> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

>> (B) to purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

> shall be guilty of a felony and upon conviction thereof, shall be fined not more than \$25,000 or imprisoned for not more than five years, or both.

49

42 U.S.C. § 1320a-7b(b) (emphasis added).  The statute makes clear that offering indirect

remuneration that induces a provider to purchase Abbott drugs for which payment may be made

under Medicare and Medicaid – which is what Abbott did here by causing inflated government

reimbursement for its drugs as alleged in the Complaint –  is illegal.  *Id*. at § 1320a-7b(b)(2).

When a person violates the AKS and obtains referrals or other business as a result, the

claims relating to such referred items or services are not eligible for reimbursement because

compliance with the AKS is a condition of payment.  *United States ex rel. McNutt v. Haleyville*

*Medical Supplies, Inc. et al.*, 423 F.3d 1256, 159-160 (11th Cir. 2005); *see generally Schmitt*,

386 F.3d at 245 (violation of AKS can give rise to FCA liability); *Thompson*, 125 F.3d at 902

(same); *Pogue*, 238 F. Supp. 2d at 266 (same).  When an entity knowingly submits or causes the

submission of claims resulting from an illegal remunerative arrangement, it has presented or

caused the submission of a false or fraudulent claim in violation of the FCA.  *Id.*

 Interrogatory No. 14:  From January 1, 1965 to the end of the Relevant Claim Period, Identify

all efforts by the U.S. Government to (I) establish a drug reimbursement methodology for

Medicare Part B, Medicaid, or any co-payment under Medicare Part B or Medicaid that did not

rely on or use AWP figures reported by Publishers and (ii) change the way in which Publishers

reported AWP figures, including but not limited to any proposed or enacted rule or regulation,

any proposed Congressional legislation, any survey of actual acquisition costs, any

determination by CMS or HCFA to disapprove of state Medicaid plans, any development of

alternative sources of AWP or average wholesale prices, any attempt by CMS or HCFA to use

its "inherent reasonableness" authority to change the amounts paid to Providers, and any

Communications with Publishers, Providers, or Manufacturers.  Identify the date, individual

Persons involved, and the outcome of all such efforts. Identify all Documents relating to the information provided in response to this Interrogatory.

    <u>Response</u>: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, as used in this interrogatory the following terms and phrases are vague, ambiguous, and not subject to objective application in identifying responsive information: "efforts," "establish,." "drug reimbursement methodology," "any copayment," "did not rely on or use AWP figures reported by Publishers," "change the way," "survey," "actual acquisition costs," "determination," "development," "alternative sources," "communications," "involved," and "outcome." Objection, the defined term "Identify" renders the interrogatory vague and ambiguous because the interrogatory purports to require the United States to provide information different from that called for by Abbott's definition of identify. Objection, the interrogatory seeks information that is not relevant to any claim or defense in this case, and is not reasonably calculated to lead to the discovery of admissible evidence. Objection, to the extent that information responsive to this interrogatory is in Abbott's possession or is equally accessible to Abbott, including but not limited to items published in the Federal Register or otherwise publicly released by the U.S. Department of Health and Human Services. Objection, the interrogatory is overly broad and unduly burdensome because it seeks information spanning 40 years, seeks information concerning the entire legislative and executive branches of the U.S. government (as defined by Abbott), and is not limited to Abbott and the drugs at issue in the

51

Complaint. Objection, this interrogatory is overly broad to the extent that it requests the identification of "all" Documents "relating to" the information sought by the interrogatory. Objection, the interrogatory improperly asks for information protected from disclosure by privilege, including but not limited to the attorney-client privilege, the work product privilege, the common interest privilege, the consulting expert privilege, and the law enforcement investigative files privilege. Objection, the process of developing policies, regulations, rules and policies is an inherently pre-decisional and policy-based process that includes requests for legal advice frequently made in anticipation of litigation; the identities of all individuals who were involved or consulted in that process is therefore protected from disclosure by the deliberative process privilege and, in some cases the attorney-client privilege and/or the work product doctrine. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Interrogatory No. 15: Regarding HCFA Program Memoranda AB-00-86 (Sept. 8, 2000):

(a) explain why HCFA issued AB-00-86 to Medicare Carriers;

(b) explain why HCFA believed AB-00-86 contained "more accurate wholesale prices" for certain drugs;

(c) explain why HCFA did not mandate use of the alternative AWP data contained in AB-00-86;

(d) explain why HCFA later directed Medicare Carriers to cease using the alternative AWP data;

(e) Identify all Persons who drafted, prepared, made decisions relating to or other played a role in the creation and promulgation of AB-00-86;

(f) Identify all data and information used to calculate the wholesale prices contained in AB-00-86;

52

(g) Identify all Communications with Medicaid Intermediaries or State Medicaid Programs regarding AB-00-86, including the alternate AWP data contained therein; and

(h) Identify all Documents relating to AB-00-86.

Response:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.  The United States objects to this interrogatory on the following additional grounds.   Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, the interrogatory misquotes and mischaracterizes the contents of the Program Memorandum about which it inquires.  Accordingly, questions which proceed from such misquotations and mischaracterizations are unduly confusing and vague.  Objection, as used in this interrogatory the following terms and phrases are vague, ambiguous, and not subject to objective application in identifying responsive information: "explain why," "mandate the use of," "prepared," "made decisions," "other (sic) played a role," "creation," "promulgation," and "communications."  Objection, the defined term "Identify" renders the interrogatory vague and ambiguous because the interrogatory purports to require the United States to provide information different from that called for by Abbott's definition of identify.   Objection, the interrogatory seeks information that is not relevant to any claim or defense in this case, and is not reasonably calculated to lead to the discovery of admissible evidence.  Objection, the interrogatory is overly broad and unduly burdensome because it is not limited to Abbott and the drugs at issue in the Complaint.  Objection, the United States objects to the request for identification of "all" Documents "relating to" AB-00-86 as overly broad.  Objection, the interrogatory improperly asks for information protected from disclosure by privilege, including

but not limited to the attorney-client privilege, the work product privilege, the common interest privilege, the consulting expert privilege, and the law enforcement investigative files privilege. Objection, the process of developing policies, regulations, rules, policies, and program memoranda is an inherently pre-decisional and policy-based process that includes requests for legal advice frequently made in anticipation of litigation; the identities of all individuals who were involved or consulted in that process is therefore protected from disclosure by the deliberative process privilege and, in some cases the attorney-client privilege and/or the work product doctrine. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response. Pursuant to Fed. R. Civ. P. 33(d), the United States will produce HCFA Program Memoranda AB-00-86 dated September 8, 2000, and AB-00-115 dated November 17, 2000. These documents contain information responsive to this interrogatory.

Persons who had a role in the creation of HCFA Program Memorandum AB-00-86 were: Robert Neimann, CMS; Ira Burney, Office of Legislation, CMS; Michael Hash, former Deputy Administrator, CMS; Mark Miller, former Deputy Director, Center for Health Plans and Providers, CMS; Robert Berenson, former Director, Center for Health Plans and Providers, CMS; and counsel from the U.S. Department of Health and Human Services and the Department of Justice.

54

Interrogatory No. 16: Identify all actions taken by the U.S. Government and Ven-A-Care to

insure the preservation of evidence, witness testimony, data, or other information relevant to or

discoverable in this litigation, including, without limitation:

(a) the date on which the action was taken;

(b) the Persons who took the action;

(c) the specific direction to preserve evidence that was communicated, including the Persons to

whom the direction were directed; and

(d) the parties to any Communication relating to the preservation of evidence.

 Identify all Documents relating to the information provided in response to this Interrogatory.

Response: The United States incorporates by reference its specific and general

objections, and objections to Abbott's definitions and instructions.  The United States objects to

this interrogatory on the following, additional grounds.   Objection, part or all of this

interrogatory seems directed at the Relator which is a separate party in this case.  Objection, as

used in this interrogatory, the following terms and phrases are overly broad, vague, ambiguous,

and not subject to objective application in identifying responsive information: "actions,"

"preservation," "evidence," "witness testimony," "data," "other information relevant to or

discoverable in this litigation," and "communication."  Objection, the defined term "Identify"

renders the interrogatory vague and ambiguous because it purports to require the United States

to provide information different from that called for by Abbott's definition of "Identify".

Objection, the interrogatory is overly broad and unduly burdensome because it seeks "all"

"actions," with respect to the entire legislative and executive branches of the U.S. Government

(according to Abbott's definition of U.S. Government), the contents of all communications, and

the identification of "all" Documents "relating to" the information sought by the interrogatory.

Objection, the interrogatory seeks information that is not relevant to any claim or defense in this

case, and is not reasonably calculated to lead to the discovery of admissible evidence.

Objection, the interrogatory improperly asks for information protected from disclosure by

privilege, including but not limited to the attorney-client privilege, the work product privilege,

the common interest privilege, the consulting expert privilege, the law enforcement investigative

files privilege, and the deliberative process privilege.  Subject to and without waiving specific

and general objections, and objections to Abbott's definitions and instructions, the United States

responds that CMS has preserved relevant evidence relating to this litigation.

Interrogatory No. 17: Identify each Person consulted or relied upon, or who provided documents

or who otherwise constituted a source of factual information, in connection with the preparation

of the Complaint or Your responses to these Interrogatories or Defendant Abbott's First Set of

Requests for Admission to Plaintiffs United States of America and Ven-A-Care of the Florida

Keys, Inc. For each such person, Identify the subject matter and/or the particular interrogatories

and/or requests for admission that such person was consulted upon or otherwise constituted a

source of factual information.

Response:  The United States incorporates by reference its general objections and its

objections to definitions and instructions implicated by this interrogatory.  The United States

objects to this interrogatory on the following additional grounds.   Objection, to the extent this

interrogatory contains multiple subparts that are not logically part of the basic interrogatory.

Objection, part or all of this interrogatory seems directed at the Relator which is a separate party

in this case.  Objection, the interrogatory is vague and ambiguous in its use of the following

56

terms and phrases "consulted or relied upon" and "otherwise constituted a source." Objection, the defined term "Identify" renders the interrogatory vague and ambiguous because the interrogatory purports to require the United States to provide information different from that called for by Abbott's definition of identify. Objection, the interrogatory is overly broad and burdensome, and seeks information that is not relevant to any claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence. Objection, the United States objects to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege. Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response. The United States states that it has already identified individuals and provided documents which support the United States' claims in its initial disclosures pursuant to Fed. R. Civ. P. 26.

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |
| George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>Phone: (617) 748-3398<br>Fax: (617) 748-3272 | /s/ Justin Draycott<br>Michael F. Hertz<br>Joyce R. Branda<br>Renée Brooker<br>Justin Draycott<br>Gejaa T. Gobena<br>Civil Division<br>Commercial Litigation Branch |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA | P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C.  20044<br>Phone: (202) 307-1088<br>Fax: (202) 307-3852 |
| /s/ Ana Maria Martinez<br>Mark A. Lavine<br>Ana Maria Martinez<br>Ann St.Peter-Griffith<br>Special Attorneys for<br> the Attorney General<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL  33132<br>Phone:  (305) 961-9003<br>Fax: (305) 536-4101 | |
| Dated: December 4, 2006 | |

## **VERIFICATION**

I declare under penalty of perjury that the facts provided in the answers of the,

Department of Health and Human Services' Centers for Medicare and Medicaid Services in the

foregoing Responses of the United States to Interrogatories number 2, 15, and 16 from

Defendant Abbott's First Set of Interrogatories are true and correct to the best of my knowledge,

information and belief.

Dated: 12/04/06

Thomas Gustafson
Deputy Director, Center for Medicare Management
Centers for Medicare and Medicaid Services
U.S. Dept. of Health and Human Services

## <u>VERIFICATION</u>

I declare under penalty of perjury that the facts provided in the answers of the,

Department of Health and Human Services' Centers for Medicare and Medicaid Services in the

foregoing Responses of the United States to Interrogatory number 2 from  Defendant Abbott's

First Set of Interrogatories are true and correct to the best of my knowledge, information and

belief.


Dated: **12-04-06**          _William Lasowski_

William Lasowski
Deputy Director, Center for Medicaid & State
Operations
Centers for Medicare and Medicaid Services
U.S. Dept. of Health and Human Services

## VERIFICATION

I declare under penalty of perjury that the facts provided in the answers of the

Department of Health and Human Services' Centers for Medicare & Medicaid Services in the

foregoing Responses of the United States to Interrogatory number 16 from Defendant Abbott's

First Set of Interrogatories are true and correct to the best of my knowledge, information and

belief.

Dated: _12/04/2006_

Jacqueline White
Director, Office of Strategic Operations &
Regulatory Affairs
Centers for Medicare & Medicaid Services
U.S. Dept. of Health and Human Services

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above United States'

Objections And Responses To Defendant Abbott's First Set Of Interrogatories to be served on

the following counsel by electronic mail:

Daniel Reidy
James Daly
Tina M. Tabacchi
Brian J. Murray
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: jrdaly@jonesday.com

Martin F. Murphy
Foley Hoag LLP
155 Seaport Blvd
Boston, MA 02210-2600
Tel: (617)832.1213
Fax: (617)832.7000
Email: mmurphy@foleyhoag.com

R. Christopher Cook
David S. Torborg
Jones, Day, Reavis & Pogue
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: christophercook@jonesday.com

Neil Merkl
Paul F. Doyle,
William A. Escobar
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7811
Fax: (212) 808-7897
Email: nmerkl@kelleydrye.com

Date: December 4, 2006

　　　　/s/ Ana Maria Martinez
　　　　Ana Maria Martinez