# Attachment A

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

MELISSA FUNK and
HEIDI GREER,

      Plaintiffs,

v.

CENTOCOR, INC., a Pennsylvania
Corporation,

      Defendant.

Case Type: Employment

Case File No.: _____

**COMPLAINT**
**(JURY DEMAND)**

Plaintiffs, through their attorneys, Neaton & Puklich, PLLP, state and allege for their Complaint, as follows:

### Nature of Claim

1. This is an action for employment discrimination brought to secure relief for violation of rights guaranteed by the Minnesota Human Rights Act, Minn. Stat. Chapter 363A ("MHRA"), and for violation of Minnesota's Whistle Blower Act, Minn. Stat. § 181.932.

### Parties, Jurisdiction and Venue

2. Plaintiff Melissa Funk was, at all times relevant herein, a resident of the County of Dakota, State of Minnesota.

3. Plaintiff Heidi Greer was, at all times relevant herein, a resident of the County of Hennepin, State of Minnesota.

4. At all times relevant herein, Defendant Centocor, Inc., was authorized to do business, and does business, in the State of Minnesota.

5. At all times relevant herein Defendant was Plaintiffs' "employer" within the meaning of the MHRA and the Whistle Blower Act.

6. Venue is appropriate in this Court pursuant to Minn. Stat. § 542.01, *et. seq.*

### Allegations Common to All Claims

7. Plaintiff Funk began employment with Defendant in 1998. Plaintiff Greer began employment with Defendant in May of 2000.

8. During Plaintiff Funk's employment with Defendant, Plaintiff Funk was employed as an executive immunology specialist.

9. During Plaintiff Greer's employment with Defendant, Plaintiff Greer was employed as a senior area business specialist.

10. During the course of Plaintiffs' employment with Defendant, Defendant marketed and sold Remicade, an advanced biologic agent that is used to treat inflammatory disorders involving the immune system. As an executive immunology specialist, it was Plaintiff Funk's job to sell Remicade. As a senior area business specialist, it was Plaintiff Greer's job to, among other things, educate customers on Remicade reimbursement and educate customers on how to obtain access to Remicade through various cites of care.

11. As Defendant's sales force began marketing Remicade, Defendant began to incorporate marketing material which described how Physicians, Medical Centers and other entities could make money by prescribing Remicade. As part of this marketing effort, Defendant specifically described the revenue gains that could be made through Medicare coverage. In or about 1999-2000, Defendant was made aware that such practices violated or potentially violated the law.

12. In or about 2002, Defendant publicly stated that all such unlawful marketing efforts had stopped in 2000. However, the unlawful marketing practices did not stop in 2000, and post 2000, Defendant, through its agents and employees, continued to market the profit

- 2 -

potential of Remicade to its clients. Examples of the marketing materials include, but are not limited to, financial projections regarding in-patient infusions and Medicare reimbursement. In fact, one power point presentation contains an audible "Ka-Ching" sound while a slide details the profit potential of Remicade. Defendant further actively promoted the use of Remicade for uses other than the treatment of inflammatory disorders involving the immune system; Plaintiffs believe that such "off label" promotion violates federal law, rules and/or regulations. Plaintiffs vocally raised concerns regarding these marketing efforts and Defendant's promotion of Remicade for "off label" use(s) to Defendant.

13. In or about February of 2006, Defendant's Health Care Compliance Department contacted Plaintiffs concerning various issues including the marketing of Remicade to Parker Hughes. Upon information and belief, Parker Hughes and/or one of its principals is under investigation by State and/or Federal authorities. During the course of the investigation, Plaintiffs honestly and truthfully answered Defendant's questions.

14. After meeting with Plaintiffs in February of 2006, Defendant terminated Plaintiffs' employment. The purported reason given by Defendant was that Plaintiffs, in 2002, entered a "Gentlemen's Club" with a client.

15. The purported reason given by Defendant for terminating Plaintiffs' employment is false and pretext for unlawful termination.

16. At all times relevant herein, Plaintiffs performed their job duties and functions in a highly satisfactorily manner.

**COUNT I**
**Gender Discrimination**

17. Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

- 3 -

18.   At all times material herein, Plaintiffs were qualified for the positions they held with Defendant.

19.   Upon information and belief, while Plaintiffs were employed by Defendant, certain of Defendant's male employees entered or frequented "Gentlemen's Clubs" with customers.   Further, upon information and belief, Defendant has not terminated male employee(s) for entering or frequenting a "Gentlemen's Club."   To the extent that Defendant's purported basis for terminating Plaintiffs' employment is true or, in part, motivated the termination decision, such actions were unlawful as Plaintiffs were treated differently on the basis of their gender in violation of the Minnesota Human Rights Act, Minn. Stat. Chap. 363A.

20.   By reason of Defendant's discriminatory and unlawful practices against Plaintiffs, Plaintiffs have sustained loss of income and fringe benefits in the past, and will sustain a loss of income, benefits, shares in Defendant corporation, and fringe benefits in the future, and have sustained mental anguish, pain and suffering in the past, and will sustain mental anguish, pain and suffering in the future.

## COUNT II
### Whistleblower

21.   Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

22.   Minnesota Statute § 181.932 provides that:

> [a]n employer shall not discharge, discipline, threaten, or otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
>
> > (a) the employee...in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer...

- 4 -

23. During their employment with Defendant, Plaintiffs observed actions of the Defendant that they in good faith believed were in violation of state or federal law, or state and federal rules adopted pursuant to law. Specifically, Plaintiffs raised and reported concerns about Defendant's marketing of Remicade and Defendant's promotion of "off label" uses of Remicade. Additionally, Plaintiffs have knowledge of Defendant's violations of the law.

24. As a result of Plaintiffs' actions and knowledge, Defendant retaliated against Plaintiffs in violation of Minnesota law, by terminating Plaintiffs' employment.

25. As a direct and proximate result of Defendant's aforesaid illegal retaliatory practices of Defendant, Plaintiffs have suffered and continue to suffer lost earnings and benefits, lost earning capacity, embarrassment, humiliation, emotional distress and other damages in an amount in excess of $75,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray:

A. That the practices of Defendant complained of herein be adjudged, decreed and declared to be violative of the rights secured to Plaintiffs by the Minnesota Human Rights Act and the Minnesota Whistleblower Act.

B. That a permanent mandatory injunction be issued requiring that Defendant adopt practices in conformity with the requirements of the Minnesota Human Rights Act and the Minnesota Whistleblower Act.

C. That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

D. That Plaintiffs be awarded damages pursuant to the Counts in their Complaint in an amount to be established at trial.

E. That the Court retain jurisdiction until such time as the Court is satisfied that Defendant has remedied the practices complained of herein and is determined to be in full compliance with the law.

F. That the Court order Defendant to pay reasonable attorneys' fees and the costs and expenses of this action.

G. That Plaintiffs be awarded such other and further legal and equitable relief as may be found appropriate, just and/or equitable.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury.

NEATON & PUKLICH PLLP

Dated this 30 day of November, 2006.

By: _____
Michael L. Puklich (#0250611)
601 Carlson Parkway, Suite 620
Minnetonka, Minnesota 55305
(952) 258-8444

Attorneys for Plaintiff

- 6 -

## ACKNOWLEDGEMENT REQUIRED BY
## MINNESOTA STATUTE SECTION 549.211

Plaintiffs, by their undersigned attorneys, hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties pursuant to Minn. Stat. § 549.211, if the party or attorney against whom costs, disbursements, reasonable attorney and witness fees are charged acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court.

Dated this 30 day of November, 2006.

NEATON & PUKLICH PLLP

By: _____
Michael L. Puklich (#0250611)
601 Carlson Parkway, Suite 620
Minnetonka, Minnesota 55305
(952) 258-8444

Attorneys for Plaintiff

- 7 -