UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*State of Montana* v. *Abbott Labs., Inc., et al.*, D. Mont. Cause No. CV-02-09-H-DWM | )<br>)<br>)<br>)<br>)<br>) MDL No. 1456<br>)<br>) Civil Action No. 01-12257-PBS<br>)<br>) Judge Patti B. Saris<br>)<br>)<br>)<br>)<br>)<br>) |

### SCHERING-PLOUGH CORPORATION'S AND WARRICK PHARMACEUTICALS CORPORATION'S OPPOSITION TO PLAINTIFF STATE OF MONTANA'S MOTION FOR SUMMARY JUDGMENT

Schering-Plough Corporation and Warrick Pharmaceuticals Corporation adopt the arguments set forth in the Defendants' joint opposition to the State of Montana's motion for summary judgment. In addition, the Court should deny Montana's motion and enter judgment on behalf of Warrick and Schering for the reasons set forth in Warrick and Schering's cross motion for summary judgment (Docket No. 3662), filed on February 8, 2007. Warrick and Schering will not unnecessarily repeat those arguments herein, and refer the Court to the memorandum of law in support of their cross motion.[1] (Docket No. 3663) Briefly, these grounds include:

---

[1] Montana has failed to set forth with any specificity the specific evidence upon which it relies as to Warrick and Schering; this failure to comply with local rule 56.1 alone warrants denial of its motion. *See Dale v. H.B. Smith Co., Inc.*, 910 F. Supp. 14, 20-21 (D. Mass 1995). Moreover, none of the seven general allegations contained in Montana's 56.1 statement are undisputed; thus, summary judgment for Montana is unwarranted. Warrick and Schering refer the Court to their own 56.1 statement (Docket No. 3665) for the undisputed grounds compelling summary judgment in favor of Warrick and Schering and reserve their rights to later put before the Court evidence to contradict the facts upon which Montana ostensibly relies.

- 1 -

- Warrick and Schering did not manipulate their AWPs.  Indeed, Warrick generally set the AWPs of its products at launch and left them unchanged, and Warrick has not changed the AWP on any of the subject drugs in over a decade.  (Memorandum in Support of Schering-Plough Corporation's & Warrick Pharmaceuticals Corporation's Motion for Summary Judgment as to Nevada and Montana Actions (hereinafter, "Mem.") at 3.)

- As to Schering, not only is there no evidence in the record as to what the spreads were with respect to its branded drugs, but there is no evidence in the record that these spreads exceeded what Montana Medicaid expected when arranging its regulatory system.  Moreover, there is no incentive for manufacturers of self-administered drugs—like the Schering drugs at issue here—to manipulate spreads.  (Mem. at 11-12.)

- Warrick and Schering did not market their products on the basis of the spread between AWP and acquisition cost.  Such a strategy would have been counterproductive for Warrick, as its products did not have the largest spreads.  Instead of touting spreads, Warrick competed on the grounds of price, quality and service (Mem. at 4-6.)

- As to Schering, there is no evidence that it deliberately relied on inflated AWPs to increase its market share with respect to any drug.  Indeed, in Schering's case, such a strategy could not have been successful because the physician who chooses the Schering drug does not benefit from any reimbursement spread—no motive—and the pharmacist who dispenses the drug and gets the reimbursement is obligated to dispense what the doctor has prescribed, even if there is an alternative drug with a more attractive spread— no opportunity.  (Mem. at 11-12.)

- Schering and Warrick could not have deceived Montana because for years Schering and Warrick have been sending letters to Montana on a quarterly (Schering) or monthly

(Warrick) basis informing Montana as to the actual prices at which they are then selling their drugs. They did not represent to Montana that AWP (which is a term that comes from third party publishers and not Warrick or Schering) was an actual acquisition cost or average of wholesale prices; in fact, both Warrick and Schering took affirmative steps to alert Montana to the difference between their actual sales prices and AWP. Montana Medicaid officials, for example, conceded Montana regularly received letters from Warrick that warned that "AWP does not reflect an average of wholesale prices, nor any actual wholesale price." *See* Supp. Diederich Decl. Ex. 7 (Docket No. 3673 (Exhibits filed under seal)). Despite receiving such pricing information, the States did not change the reimbursement for Warrick's or Schering's drugs. (Mem. at 3 n.2.)

- Montana asserts drug reimbursement was based on AWP (MT Br. at 3-4), but cites no evidence that this was in fact the case. Indeed, for most of the Warrick subject drugs, Montana reimbursed drugs on the basis of other measures—including federal upper limits ("FULs") established by the Centers for Medicare and Medicaid Services ("CMS") and alternative AWP calculations made by the Department of Justice—that are not based on manufacturer-reported AWPs. (Mem. at 6-8.)

Ultimately, Montana's claim of fraud fails because neither Warrick nor Schering made any false or misleading representations regarding AWP; nor did they engage in a scheme to manipulate AWPs and market their drugs on that basis. On this evidentiary record, judgment should not only be denied against the State of Montana, it should be entered against it.

                                                       Schering-Plough Corporation and
Warrick Pharmaceuticals Corporation
By their attorneys,

/s/Christopher R. Dillon
Brien T. O'Connor (BBO# 546767)
Christopher R. Dillon (BBO# 640896)
Bryan R. Diederich (BBO # 647632)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: March 22, 2007

## CERTIFICATE OF SERVICE

    I, Christopher R. Dillon, hereby certify that a true copy of the foregoing document was served upon all counsel of record electronically pursuant to Fed. R. Civ. P. 5(b)(2)(D) and CMO No. 2 on this 22nd day of March 2007 by causing a copy to be sent to LexisNexis File & Serve for posting and notification to all counsel of record.

                                                                           /s/   Christopher R. Dillon