UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>D. Mont. Cause No. CV-02-09-H-DWM | Judge Patti B. Saris |

**DEFENDANTS' JOINT RESPONSE TO THE STATE OF MONTANA'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CERTAIN DEFENDANTS AND SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.1, Defendants submit this joint response to the State of Montana's Statement of Undisputed Material Facts in Support of Its Motion for Partial Summary Judgment Against Certain Defendants ("the State's 56.1 Statement").

1. Average Wholesale Price ("AWP") was the reimbursement benchmark for the Montana Medicaid pharmacy program.

**RESPONSE:** A discounted AWP is one of *many* benchmarks used for reimbursement by the Montana Medicaid pharmacy program. *See, e.g.*, MT ADC 37.86.1101, .1105. The present AWP-based reimbursement under Montana Medicaid's regulations is AWP-15%; prior to 2002, it was AWP-10%. *Id.* AWP-based reimbursement is only used if that reimbursement amount is the lowest among the various reimbursement benchmarks utilized, which include "usual and customary charge," "Direct Price," an "allowable acquisition cost for specified drugs or drug categories," or "maximum allowable cost," (for which Montana used the

"Federal Upper Limit" for multi-source drugs). *Id. See* Defendants' Statement of Undisputed Material Facts In Support of Defendants' Motion for Summary Judgment (docket no. 3648) ("Defs.' 56.1 Stmt."), ¶¶ 2-4.

2. Each Defendant knew that the State and other payors based their drug reimbursement on AWPs. This is reflected in Defendants' Answers to the State of Montana's Second Amended Complaint ("SAC"), testimony, and internal documents of the Defendants.

**RESPONSE:** The State cites to Defendants' Answers, but those responses that are arguably relevant to Paragraph 2 of the State's 56.1 Statement simply state that some public and private reimbursement systems use AWP-based reimbursement for some drugs in some circumstances, and do not support the assertion that Defendants knew that Montana Medicaid based their drug reimbursement on AWPs. The other evidence cited by the State include testimony from the MDL bench trial (in which there has not been a decision) and evidence that otherwise does not relate to Montana, and therefore the State makes no showing that Defendants knew that Montana reimbursed based on AWP.

3. Each Defendant caused AWPs to be published for each of their Subject Drugs. Company insiders have testified to these practices at trial and at depositions and internal industry documents reflect the same. Evidence shows that the reporting practices of other Defendants were similar.

**RESPONSE:** Defendants did not cause AWPs to be published; First DataBank controlled and published the AWPs used by Montana Medicaid. *See* Defs.' 56.1 Stmt. ¶ 85, Ex. 4 (Buska 30(b)(6) Dep. Tr. 180:9-181:21); Confidential Declaration of Kathleen M. O'Sullivan in Support of Defendants' Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants ("Confidential O'Sullivan Decl.") ¶¶1-2,

Exs. 1-2 (Morgan Dep. 26:11-27:6; 36:3-19; 111:4-8); (February 11, 2002, email exchange between Morgan and S. Lowery, McNeil Consumer and Specialty Pharmaceuticals).

       4.       Each Defendant knew that Montana Medicaid would use those AWPs as a basis to reimburse providers.

       **RESPONSE:** The State does not cite any evidence to support the assertion in Paragraph 4 of its 56.1 Statement beyond that cited in support of its assertion in Paragraph 2 of its 56.1 Statement. The evidence cited in Paragraph 2 does not support the assertion that "Each Defendant knew that Montana Medicaid would use those AWPs as a basis to reimburse providers." *See supra*, response to ¶ 2 of the State's 56.1 Statement.

       5.       The term "AWP," as used in governing regulations, means the average price at which wholesalers sell drugs.

       **RESPONSE:** The State cites no evidence in support of Paragraph 5 of the State's 56.1 Statement. It is simply a legal conclusion, not a fact, and therefore is not properly included as a "material fact of record."

       6.       The AWPs each Defendant caused to be published for each of their subject drugs were neither averages nor a price at which wholesalers sell drugs.

       **RESPONSE:** Defendants did not cause AWPs to be published; First DataBank controlled and published the AWPs used by Montana Medicaid. *See supra*, response to Paragraph 3 of the State's 56.1 Statement. In addition, the State inappropriately cites Proposed Findings of Fact from different plaintiffs in another case in which there has not yet been a decision. *See* the State's 56.1 Statement at 4 n.7. Those Plaintiffs' Proposed Findings of Fact are not "material facts of record" in this litigation.

7. Defendants knew that the AWPs they caused to be published were neither averages nor a price at which wholesalers sell drugs, but allowed them to be published anyway.

**RESPONSE:** The State does not cite any evidence to support the assertion in Paragraph 7 of its 56.1 Statement beyond that cited in support of its assertion in Paragraph 6 of its 56.1 Statement. The evidence cited does not support the assertion that "Defendants knew that the AWPs they caused to be published were neither averages nor a price at which wholesalers sell drugs, but allowed them to be published anyway." *See supra*, response to Paragraph 6 of the State's 56.1 Statement.

### DEFENDANTS' SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' OPPOSITION TO THE STATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Defendants submit this supplemental statement of the material facts of record which support their opposition to the State's Motion. Deposition transcripts and documents cited herein are attached to the Declaration of Kathleen M. O'Sullivan in Support of Defendants' Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants ("O'Sullivan Decl.") and the Confidential Declaration of Kathleen M. O'Sullivan in Support of Defendants' Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants ("Confidential O'Sullivan Decl.").

1. Some pharmacy providers for Montana Medicaid, particularly those in rural areas, could not obtain drugs at national Direct Prices, and thus advocated elimination of Direct Price as a benchmark and expanded use of a discounted AWP as a basis for reimbursement. O'Sullivan Decl. ¶ 1, Ex. 1 (Poulsen Tr. 182:2-3; 185:1-5; 189:21-190:1).

2. Patricia Kay Morgan, Manager of Product Knowledge-Based Services with First DataBank, testified that First DataBank's AWPs were not set by pharmaceutical

companies, but by First DataBank.  Confidential O'Sullivan Decl. ¶ 1, Ex. 1 (Morgan Tr. 26:11-27:6; 36:3-19).  Morgan provided specific examples where First DataBank's AWP was not the same as that suggested by a manufacturer.  *Id.* (111:4-8).

3. First DataBank controlled the mark up factor it used to calculate AWPs for many of Defendants' drugs, and changed that mark-up factor from 1.20 times Wholesale Acquisition Cost ("WAC") to 1.25 times WAC in late 2001 and 2002.  Confidential O'Sullivan Decl. ¶ 2, Ex. 2.

4. Counsel for the State of Montana is also counsel for plaintiffs in an action filed against First DataBank relating to First DataBank's alleged practices with respect to AWPs.  O'Sullivan Decl. ¶ 5, Ex. 5.

5. The Montana law codified at MONT. CODE ANN. § 53-6-1001 was not passed into law until July, 2003, seventeen months after the State of Montana filed its Complaint in this action.  O'Sullivan Decl. ¶ 2, Ex.2.

6. In 1995, then-Medicaid Director Nancy Ellery wrote in support of the Montana Medicaid fraud statute, as intended to reach the conduct of providers in the submission of false claims.  O'Sullivan Decl. ¶ 3, Ex. 3.

7. Greg Gould, the legal counsel for the Montana Department of Health and Human Services in 1995, testified before the Montana Legislature prior to the enactment of the Medicaid fraud statute that the statute was intended to reach providers and those who worked for providers and were authorized to submit claims on their behalf.  O'Sullivan Decl. ¶ 6, Ex. 6.

8. Montana Medicaid has used AWP as part of its reimbursement methodology in regulations dating back to 1988.  O'Sullivan Decl. ¶ 4, Ex. 4.

9. The State of Montana's proffered expert witness Dr. Raymond Hartman submitted reports containing his calculations of damages and penalties allegedly incurred by or owed to the State. Confidential O'Sullivan Decl. ¶ 3, Ex. 3.

10. Dr. Hartman testified that he did not make any finding of fraud or deception in the course of his work, and is not expressing any opinion as to Defendants' liability under the State's Medicaid fraud claim or any other claim asserted by the State. Nor is he expressing an opinion on causation. Dr. Hartman's opinion is limited to a calculation of damages and penalties. Confidential O'Sullivan Decl. ¶ 4, Ex. 4 (Hartman Tr. 47-50, 52-53, 76, 79, 81-82, 235, 326, 366, 369).

11. Dr. Hartman's calculations were based on instructions from the State of Montana's attorneys that he should assume liability for Defendants if Montana Medicaid reimbursed at an amount in excess of the drug's estimated acquisition cost. His calculations of those estimated acquisition costs were based on further assumptions, and he did not undertake any efforts to determine the actual acquisition costs of Medicaid providers in Montana. Confidential O'Sullivan Decl. ¶ 4, Ex. 4 (Hartman Tr. 76, 78, 90-92, 115-17, 148-50).

12. Dr. Hartman has undertaken no analysis of the understanding of Montana Medicaid officials regarding the relationship between AWP and actual acquisition cost, nor has he read the deposition testimony of Montana Medicaid officials, or reviewed documents produced by the State in this litigation. Confidential O'Sullivan Decl. ¶ 4, Ex. 4 (Hartman Tr. 32-34, 36-40, 60-63, 193-194, 240, 253-60, 274-75, 510-12).

13. Dr. Hartman admits that that there is extensive evidence that both federal and state officials were aware of the difference between AWP and acquisition cost: "I mean, everybody knew that. . . . [W]hat people knew during this period was that AWP did not equal

ASP." Confidential O'Sullivan Decl. ¶ 4, Ex. 4 (Hartman Tr. 529-30); *see also id.* at 189-91, 242-44, 544.

14. In the MDL class action case, Dr. Hartman opined that private payors "expected" a 30% difference between AWP and actual sales prices. At his deposition in this case, he testified that his 30% "expectation yardstick" would apply to Montana Medicaid officials, which is inconsistent with the State's assertion in its Motion that "[t]here is no 'expectation' theory on the claim" and with the State's argument that it intended for AWP to represent actual prices paid. Another conflict is that Dr. Hartman proposes assessing penalties on some drugs that he found non-fraudulent in the MDL class action. Confidential O'Sullivan Decl. ¶ 4, Ex. 4 (Hartman Tr. 31-32, 326-39).

15. Dr. Hartman was unaware of federal regulations regarding "equal access" and "aggregate limit" that pertain to state Medicaid agencies and did not consider them in his analysis. He likewise did not consider dispensing fees or cross-subsidization. Confidential O'Sullivan Decl. ¶ 4, Ex. 4 (Hartman Tr. 157, 165-67, 169, 173-76, 183, 198-99, 205, 212, 216-17, 245-46, 248-49, 257, 263-64).

DATED this 22nd day of March, 2007.

**PERKINS COIE LLP**
**ON BEHALF OF ALL DEFENDANTS**

By: /s/ *Kathleen M. O'Sullivan*
David J. Burman, WSBA # 10611
Kathleen M. O'Sullivan, WSBA # 27850
Charles C. Sipos, WSBA # 32825
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206-359-8000
Fax:  206-359-9000
Email:  DBurman@perkinscoie.com
E-mail:  KOSullivan@perkinscoie.com
E-mail:  CSipos@perkinscoie.com

> Thomas J. Sartory, BBO #442500
> **GOULSTON & STORRS, P.C.**
> 400 Atlantic Avenue
> Boston, MA  02110-3333
> Telephone: (617) 482-1776
> Email: tsartory@goulstonstorrs.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2007, a true and accurate copy of Defendants' Joint Response to the State of Montana's Statement of Undisputed Material Facts in Support of Its Motion for Partial Summary Judgment Against Certain Defendants was mailed, postage prepaid, and served via the Lexis-Nexis Filing System:

DATED:  March 22, 2007.

*Kathleen M. O'Sullivan*