# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                      )
IN RE PHARMACEUTICAL INDUSTRY   )   MDL No. 1456
AVERAGE WHOLESALE PRICE        )
LITIGATION                     )   Civil Action No.
_____)       01-CV-12257-PBS
THIS DOCUMENT RELATES TO      )
                      )
*State of Montana v. Abbott Labs., Inc., et al.*,  )   Judge Patti B. Saris
02-CV-12084-PBS            )
                      )
_____)

## RESPONSE OF AVENTIS BEHRING LLC, N/K/A ZLB BEHRING LLC, TO THE STATE OF MONTANA'S L. R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, Defendant Aventis Behring LLC, n/k/a ZLB Behring LLC, submits the following Response to the State of Montana's Statement of Undisputed Material Facts:

1.     Average Wholesale Price ("AWP") was the reimbursement benchmark for the Montana Medicaid pharmacy program.

**RESPONSE:** A discounted AWP is one of *many* benchmarks used for reimbursement by the Montana Medicaid pharmacy program. *See, e.g.,* MT ADC 37.86.1101, .1105. The present AWP-based reimbursement under Montana Medicaid's regulation is AWP-15%; prior to 2002, it was AWP-10%. *Id.* AWP-based reimbursement is only used if that reimbursement amount is the lowest among the various reimbursement benchmarks utilized, which include "usual and customary charge," "Direct Price," [allowable acquisition cost…] or "maximum allowable cost" (for which Montana used the "Federal Upper Limit" for multi-source drugs). *Id. See*

Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (Docket No. 3648) at ¶¶ 2-4.

2.      Each Defendant knew that the State and other payors based their drug reimbursement on AWPs.  This is reflected in Defendants' Answers to the State of Montana's Second Amended Complaint ("SAC"), testimony, and internal documents of the Defendants.

**RESPONSE:**  Disputed.  The document that Montana attributes to Behring does not support Montana's allegation that Behring knew that the State and other payors based their drug reimbursement on AWPs.  Behring's Answer to Montana's Second Amended Complaint simply states that "some private and public drug reimbursement systems use AWP as published and reported by various compendia in developing their reimbursement methodologies for physicians and pharmacies."  (*See* Ex. 37 to Montana's 56.1 Statement).

3.      Each Defendant caused AWPs to be published for each of their Subject Drugs. Company insiders have testified to these practices at trial and at depositions and internal industry documents reflect the same.  Evidence shows that the reporting practices of other Defendants were similar.

**RESPONSE:**  Disputed.  The documents that Montana attributes to Behring do not support Montana's allegation that Behring caused AWPs to be published for its one Subject Drug, Gammar PIV.  *See* Schedule A to Montana's Second Amended Complaint.  Exhibit 18 has no probative value because it does not list Gammar PIV, and was sent before the date on which Gammar PIV entered the market.  *See* Declaration of Mary Ann Tomasso at ¶ 4 (attached as Exhibit 2 hereto).  Exhibit 19 similarly has no probative value because it reflects a submission to the Red Book, not to First DataBank, and Montana has admitted that First DataBank, not Red

Book, is the source of any AWPs used by Montana Medicaid for drug reimbursement.  *See* Motion for Summary Judgment Against Certain Defendants at 4.  Finally, Exhibit 20 refutes Montana's assertion that Behring "caused" a particular AWP to be published for Gammar PIV. Although Exhibit 20 reflects a suggested AWP of $80 per gram for Gammar PIV, First DataBank actually published an AWP of $65 per gram.  *See* Declaration of Eric Gaier at ¶¶ 6-7 (attached as Exhibit 1 hereto).

4.     Each Defendant knew that Montana Medicaid would use those AWPs as a basis to reimburse providers.

**RESPONSE:**  Disputed.  The document that Montana attributes to Behring does not support Montana's allegation that Behring knew that Montana Medicaid would use those AWPs as a basis to reimburse providers.  Behring's Answer to Montana's Second Amended Complaint simply states that "some private and public drug reimbursement systems use AWP as published and reported by various compendia in developing their reimbursement methodologies for physicians and pharmacies."  (*See* Ex. 37 to Montana's 56.1 Statement).

5.     The term "AWP," as used in governing regulations, means the average wholesale price at which wholesalers sell drugs.

**RESPONSE:**  The State cites no evidence in support of Paragraph 5 of its 56.1 Statement.  It is simply a legal conclusion, not a fact, and therefore is not properly included as a "material fact of record."

6.     The AWPs each Defendant caused to be published for each of their subject drugs were neither averages nor a price at which wholesalers sell drugs.

**RESPONSE:** Disputed.  Behring did not cause AWPs to be published.  First DataBank controlled and published the AWPs used by Montana Medicaid.  *See* First DataBank controlled and published the AWPs used by Montana Medicaid.  *See* Exs. 1-2 to Defendants' Joint Response to Montana's 56.1 Statement (Morgan Dep. Tr. 26:11-27:6; 36:3-19;111:4-8); [Morgan Dep. Ex. 25] (Feb. 11, 2002 email exchange between Morgan and S. Lowery, McNeil Consumer and Specialty Pharmaceuticals)); and Ex. 4 to O'Sullivan Declaration in Support of Defendants' Joint Motion for Summary Judgment (Buska 30(b)(6) Dep. Tr. 180:9-181:21).  In addition, the State inappropriately cited Proposed Findings of Fact from different plaintiffs against different defendants in another case.  *See* the State's 56.1 Statement at 4 n.7.  Those Plaintiffs' Proposed Findings of Fact are not "material facts of record" in this litigation.   The only support offered by the State for its allegation that the "AWPs [that Behring] caused to be published for each of [its] subject drugs were neither averages nor a price at which wholesalers sell drugs" is the supplemental report submitted by its expert Dr. Raymond Hartman, which does not establish that Behring caused AWPs to be published or that AWPs for Behring's one Subject Drug were either averages or prices at which wholesalers sell drugs.

7.      Defendants knew that the AWPs they caused to be published were neither averages nor a price at which wholesalers sell drugs, but allowed them to be published anyway.

**RESPONSE:** Disputed.  The State does not cite any evidence to support the assertion in Paragraph 7 of its 56.1 Statement beyond that cited in support of its assertion in Paragraph 6 of its 56.1 Statement.  The evidence cited does not support the assertion that Behring "knew that the AWPs [it] caused to be published were neither averages nor a price at which wholesalers sell drugs, but allowed them to be published anyway." *See supra*, response to Paragraph 6 of the State's 56.1 Statement.

The State's allegations against Behring in its 56.1 Statement are not supported by any of the evidence submitted in its summary judgment papers.  Accordingly, Montana's motion for partial summary judgment against Behring should be denied.

Respectfully submitted,

/s/  Aimée E. Bierman
Michael DeMarco (BBO #119960)
  michael.demarco@klgates.com
Aimée E. Bierman (BBO #640385)
  aimee.bierman@klgates.com
KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
One Lincoln Street
Boston, MA 02111
(617) 261-3100
FAX: (617) 261-3175

Jonathan T. Rees
HOGAN & HARTSON L.L.P.
555 13th Street, NW
Washington D.C. 20004
(202) 637-5600
FAX:  (202) 637-5910

ATTORNEYS FOR DEFENDANT AVENTIS
BEHRING LLC, N/K/A ZLB BEHRING LLC

\\\DC - 065744/000019 - 2477157 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2007 I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

   /s/ Aimée E. Bierman

Aimée E. Bierman

\\\DC - 065744/000019 - 2477157 v1