**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456 |
| ) ) | Civil Action No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ) ) | Judge Patti B. Saris |
| *State of Montana v. Abbott Labs. Inc., et al.,* D. Mont. Cause No. CV-02-09-H-DWM ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |

**NOVARTIS PHARMACEUTICALS CORPORATION'S MEMORANDUM
IN OPPOSITION TO THE STATE OF MONTANA'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AGAINST CERTAIN DEFENDANTS**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 6

CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Gosselin v. Webb*, 242 F.3d 412 (1st Cir. 2001).................................................................................9

*Martinez v. Signature Seafoods Inc.*, 303 F.3d 1132 (9th Cir. 2002) ............................................10

### STATE CASES

*In re Estate of Kindsfather*, 326 Mont. 192, 108 P.3d 487 (Mont. 2005).................................... 7-9

*State ex rel. State Comp. Mutual Insurance Fund v. Berg*, 279 Mont. 161, 927
     P.2d 975 (Mont. 1996) .................................................................................................. 7-8

### DOCKETED CASES

Complaint in *New England Carpenters Health Benefits Fund, et al v. First
     DataBank, Inc. and McKesson Corp.*, Civil Action No. 1:05-cv 11148-
     PBS (D. Mass.), filed June 2, 2005 ....................................................................................3

### STATE STATUTES

Mont. Code. Ann. § 53-6-160.......................................................................................................6, 7

Novartis Pharmaceuticals Corporation ("NPC") respectfully submits this Memorandum of Law in opposition to Montana's Motion for Partial Summary Judgment as to NPC.[1]

## PRELIMINARY STATEMENT

Plaintiff's motion fails with respect to NPC because, remarkably, it does not rely upon any evidence – undisputed or otherwise – that would entitle Montana to partial summary judgment against NPC. Montana's motion rests entirely on one lone reference to NPC: NPC's uncontroversial acknowledgement in its Answer that certain drug reimbursement systems are based on Average Wholesale Price ("AWP") as published and reported by third party publications. NPC's acknowledgment of this common fact certainly is not an admission that Montana Medicaid (or any other state Medicaid agency) relied on any AWP reported by NPC or that NPC knew it if they did. Moreover, Plaintiff has not offered any evidence either that Montana relied on any AWP reported by NPC or that, if Montana did, NPC knew it.

In fact, contrary to the premise underlying Plaintiff's entire motion, the undisputed evidence establishes that (i) to the extent that Montana claims it relied on AWPs, it relied on AWPs published by First DataBank ("FDB"), a third-party, price-reporting service and (ii) FDB alone set the AWPs that it published for NPC drugs, which often were greater than the AWPs that NPC reported to FDB. Montana has cited no

---

[1] NPC's motion for summary judgment is also before this Court, and its supporting memorandum sets forth the reasons why NPC is entitled to summary judgment dismissing Montana's complaint in its entirety. *See* Memorandum in Support of Novartis Pharmaceuticals Corporation's Motion for Summary Judgment (docket no. 3723), filed on February 8, 2007.

evidence – and there is none – linking any AWP reported by NPC to Montana Medicaid's alleged overpayments to doctors and pharmacies ("Providers") for prescription drugs. Rather, the undisputed evidence establishes that NPC accurately described its AWPs when it reported them, focused its drug marketing on efficacy and safety, and neither reported fraudulent AWPs to induce Providers to purchase its products, nor had any reason to do so.

For the reasons stated below and those set forth in Defendants' Joint Memorandum, which NPC incorporates by reference,[2] the Court should deny Montana's motion as to NPC.

## BACKGROUND[3]

Montana claims that its Medicaid program based its reimbursements to Providers on AWPs published by FDB, an independent, third-party, price-reporting service. (The State of Montana's Memorandum in Support of Motion for Partial Summary Judgment Against Certain Defendants ("Pl. Mem.") at p. 4; NPC Opp. 56.1 ¶ 21.) There can be no doubt that FDB and FDB alone set the AWPs that it published for NPC drugs. (NPC Opp. 56.1 ¶¶ 21-28.) Patricia Kay Morgan, Manager of Product Knowledge-based Services for FDB, testified unequivocally that FDB derived its published AWPs from surveys that it conducted of wholesalers to determine the "markup

---

[2] *See* Memorandum in Support of Defendants' Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants, filed on March 22, 2007.

[3] In compliance with Local Rule 56.1, NPC also submits a Local Rule 56.1 Counterstatement of Undisputed Facts in Support of Novartis Pharmaceuticals Corporation's Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants ("NPC Opp. 56.1").

[wholesalers] were applying to a manufacturer's line [of products]," and not from the AWPs that manufacturers reported to FDB.  (*Id.* ¶ 21.)

Significantly, beginning in January 2002, the AWPs that FDB set and published for NPC drugs were greater than the AWPs that NPC reported to FDB for the following NPC drugs at issue here: Aredia, Clozaril, Combipatch, Comtan, Elidel, Estraderm, Exelon, Femara, Focalin, Lamisil, Lamprene, Lescol, Lescol XL, Lotensin, Lotensin HCT, Lotrel, Miacalcin Injection, Miacalcin SPR, Parlodel, Rescula, Ritalin, Ritalin LA, Starlix, Tegretol, Tegretol XR, Trileptal, Vivelle, Vivelle-DOT, Voltaren Ophthalmic, and Zelnorm.[4]  (*Id.* ¶ 22.)  As a result, Montana Medicaid's reimbursements to Providers for nearly all of the NPC drugs at issue here were based on AWPs that were greater than the AWPs that NPC reported.  (*Id.*)

Notably, Montana's own counsel, in a separate lawsuit against FDB, has asserted FDB's control over the AWPs it publishes.  Representing private plaintiffs in *Citizens for Consumer Justice* (the private payor class in *In re Pharmaceutical Industry Average Wholesale Price Litigation)*, they originally sued Together Rx LLC and its members, including NPC, alleging that they had conspired to raise the spread between Wholesale Acquisition Cost ("WAC") and AWP to WAC plus 25 percent on drugs in the Together Rx program (a discount program for the indigent elderly).  (*Id.* ¶ 23.)  After Defendants took discovery of FDB, plaintiffs voluntarily dismissed their claims against the manufacturers and sued FDB ("the FDB lawsuit").[5]  (*Id.* ¶¶ 24-26.)  The FDB lawsuit

---

[4] The AWPs that NPC reported were equal to the AWPs that FDB set and published for four NPC drugs at issue here.

[5] *See* Complaint in *New England Carpenters Health Benefits Fund, et al v. First DataBank, Inc. and McKesson Corp.*, Civil Action No. 1:05-cv 11148-PBS (D. Mass.), filed on June 2, 2005.

alleged that FDB and a pharmaceutical wholesaler had agreed to increase the difference between WAC and AWP for numerous drugs beginning in late 2001 without regard to the manufacturers' reported AWPs and to publish such AWPs as FDB's regularly-published "Blue Book" AWP.  (*Id.* ¶ 26.)  Pursuant to a pending settlement agreement of the FDB lawsuit, FDB now has agreed to reduce its Blue Book AWP to WAC plus 20 percent for all pharmaceuticals, including NPC drugs, subject to the settlement agreement.  (*Id.* ¶ 27.)  The FDB lawsuit, and the proposed settlement's requirement that FDB alter its price-reporting practices with respect to AWP, confirm that FDB alone was, and is, responsible for the AWPs that it set and published for NPC drugs, upon which Montana Medicaid claims it relied.

Thus, no evidence exists that NPC in any way caused Montana Medicaid's alleged overpayments to Providers.[6]  First, NPC accurately described its AWPs when NPC reported them to wholesalers, independent price-reporting services such as FDB, and warehousing retail chains (*i.e.*, drugstore chains of ten or more stores that have their own warehouses that provide wholesaler-type services for the chain), clearly stating that NPC's AWPs were "set as a percentage above the price at which each product is offered generally to wholesalers" and that "AWP is not intended to be a price charged by [NPC] for any product to any customer."  (*Id.* ¶¶ 18-20.)

Second, NPC's drug marketing focuses on efficacy and safety; NPC's sales representatives do not market to Providers the difference between a drug's AWP and the Provider's acquisition cost.  (*Id.* ¶ 17.)

---

[6] These facts are fully detailed in NPC's Local Rule 56.1 Statement of Undisputed Facts in Support of NPC's Motion for Summary Judgment (docket no. 3724), filed on February 8, 2007, which NPC incorporates by reference here.

Third, NPC neither reported AWPs to induce Providers to purchase NPC drugs instead of competing products (*Id.*), nor had any reason to report deceptive AWPs. Nearly all of the NPC drugs at issue here are single-source Brand Name self-administered drugs ("SADs"). (*Id.* ¶ 10.) When a prescription for a single-source Brand Name SAD is presented to a pharmacy, the pharmacy must dispense that drug. (*Id.* ¶ 6.) It may not substitute an alternative drug, even if the alternative is approved by the U.S. Food and Drug Administration for the same condition, unless it obtains a new prescription from the prescribing doctor. (*Id.*) Nor can the pharmacy control the number of prescriptions written for such products. (*Id.*) As such, pharmacies have little to no influence over a Brand Name drug's sales volume – a conclusion drawn by Ernst R. Berndt, the Court-appointed independent expert in *Citizens for Consumer Justice*. (*Id.* ¶ 7.) Because NPC could not increase the market share of its Brand Name SADs by providing financial incentives to pharmacies, it had no reason to "market the spread" to them. (*Id.* ¶ 9.) Of the two other NPC products at issue, Aredia is a physician-administered drug that faced no competition for much of the relevant period; Miacalcin Injection is a SAD that may, in rare circumstances, be physician-administered and that faced no competition during the relevant period. (*Id.* ¶¶ 11-14.) As a result, NPC had no reason to "market the spread" on these drugs to physicians. Moreover, when Aredia did face competition, NPC had already stopped promoting it (*i.e.*, the drug was not supported by advertising, a sales force, or promotional materials). (*Id.* ¶ 15.)

# ARGUMENT

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT FAILS AS A MATTER OF LAW

In the face of these record facts, Plaintiff offers *no* evidence that NPC "marketed the spread" to anyone, much less to any Provider that Plaintiff reimbursed for any NPC drug. Plaintiff's motion rests solely on naked allegations and speculation. Federal Rule of Civil Procedure 56 requires much more. It requires undisputed material facts entitling Plaintiff to judgment. Plaintiff has no facts with respect to NPC, let alone undisputed ones.

Montana's Medicaid fraud statute requires Montana to demonstrate in part that NPC had the "authority or responsibility to: (i) make the [allegedly false] claim, statement, or representation; (ii) supervise another who made the claim, statement, or representation; or (iii) authorize the making of the claim, statement, or representation." Mont. Code. Ann. § 53-6-160(4)(a). Montana's motion for partial summary judgment against NPC on its Medicaid fraud claim fails because Montana has not and cannot establish the elements of its claim.

First, as Montana concedes, Montana Medicaid relied on AWPs set and published by FDB, not on AWPs reported by NPC. (Pl. Mem. at p. 1.)

Second, it is undisputed that FDB independently set and published AWPs for NPC drugs, without any involvement by NPC. (NPC Opp. 56.1 ¶¶ 21-28.) Montana's lawyers know this because they not only sued FDB for inflating the AWPs it published beginning in late 2001 without regard to what manufacturers had reported, but also obtained a proposed settlement of the FDB lawsuit that requires FDB to reduce its AWPs. (*Id*. ¶¶ 26-27.)

The only purported basis for Montana's motion with respect to NPC is NPC's acknowledgement, contained in its Answer, that "certain drug reimbursement systems reimburse physicians and pharmacies for prescription drugs based upon AWPs *as published and reported by third party publications*."  (emphasis added).  That statement does not even come close to establishing that NPC made "the [allegedly false] claim, statement, or representation;" or "supervise[d] another who made the claim, statement, or representation;" or "authorize[d] the making of the claim, statement, or representation," as required under Mont. Code Ann. § 53-6-160(4)(a).  In fact, it does not even establish that NPC knew that Montana Medicaid based its drug reimbursement on "reported AWPs."  (Pl. Mem. at p. 7.)

As set forth in greater detail in Defendants' joint Memorandum in Support of Defendants' Joint Motion for Summary Judgment ("Defendants' summary judgment brief") (at p. 32),[7] to prevail on its Medicaid fraud claim, Montana must prove:

> (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*In re Estate of Kindsfather*, 326 Mont. 192, 196-97, 108 P.3d 487, 490 (Mont. 2005); *State ex rel. State Comp. Mut. Ins. Fund v. Berg*, 279 Mont. 161, 176, 927 P.2d 975, 983

---

[7] Docket no. 3647, filed on February 8, 2007.

(Mont. 1996) (characterizing intent element as "intent to deceive or dishonesty of purpose").

Montana must therefore establish that NPC knowingly made a false representation with the intent to deceive Montana Medicaid and that Montana Medicaid was deceived by NPC's alleged misrepresentation, rightfully relied upon it, and was thereby injured.  However, the undisputed facts establish that Montana cannot meet its burden.

First, NPC's AWPs were not false, *see Kindsfather* at 196.  The undisputed evidence establishes that NPC accurately stated in its broadcast faxes – the same document in which NPC reported its AWPs – that its AWPs are "set as a percentage above the price at which each product is offered generally to wholesalers" (i.e., WAC) and that "AWP is not intended to be a price charged by [NPC] for any product to any customer."  (NPC Opp. 56.1 ¶¶ 18-20.)

Second, Plaintiff has failed to offer any proof that NPC intended to deceive Montana.  *See Kindsfather* at 196; *Berg* at 176.  Further, no such intent can be inferred, because NPC accurately described the AWPs it reported.  (NPC Opp. 56.1 ¶¶ 18-20.)  Further, the record establishes that not only did NPC report accurate AWPs, it neither "marketed the spread" for the drugs at issue nor had any reason to do so.  (*Id.* ¶¶ 6, 7, 9, 12-15, 17.)

Third, Montana Medicaid was not "ignoran[t]" of the true nature of NPC's AWPs, *see Kindsfather* at 196, because, as Defendants' summary judgment motion demonstrates, the undisputed evidence establishes that Montana Medicaid (i) knew that AWP and its AWP-based reimbursement rate exceeded Providers' average actual

acquisition cost and (ii) chose to reimburse Providers at a discount off AWP, to give Providers a profit margin and encourage their participation in Medicaid so that Medicaid enrollees would have equal access to prescription drugs, as required under Federal law. (*See* Statement of Undisputed Material Facts in Support of Defendants' Motion For Summary Judgment ("Defs. 56.1 stmt."), docket no. 3648, filed on February 8, 2007; NPC Opp. 56.1 ¶¶ 29-30.)

Fourth, Montana Medicaid did not rely on any alleged misrepresentation by NPC regarding its AWPs. *See Kindsfather* at 196. As stated above, Montana Medicaid understood that AWP was simply a benchmark and that its AWP-based reimbursement rate exceeded Providers' average actual acquisition cost. (Defs. 56.1 stmt.; NPC Opp. 56.1 ¶¶ 29-30.) And, in any event, Montana Medicaid relied on AWPs that FDB independently set and published (NPC Opp. 56.1 ¶¶ 21-28, 31); there is no evidence that NPC made any representation to Montana Medicaid or that Montana Medicaid relied on any such representation.

In sum, it is undisputed that (i) Montana Medicaid relied on AWPs set and published by FDB; (ii) NPC lacked "authority or responsibility" regarding the AWPs that FDB set and published for NPC drugs; (iii) NPC made no false representation – knowingly or otherwise – and (iv) NPC lacked any intent to deceive Montana Medicaid. It is also undisputed that Montana Medicaid did not rely on and was not ignorant of the truth of any alleged misrepresentation by NPC and, for all of the above reasons, was not injured by any alleged misrepresentation by NPC. These facts are sufficient to defeat Plaintiff's summary judgment motion. *See Gosselin v. Webb*, 242 F.3d 412 (1st Cir. 2001) (summary judgment should be denied "if a reasonable factfinder . . . could resolve

a factual controversy which is critical to the outcome of the case in favor of the nonmoving party"); *Martinez v. Signature Seafoods Inc.*, 303 F.3d 1132 (9th Cir. 2002) (summary judgment should be denied unless "the facts and the law will reasonably support only one conclusion") (*quoting McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 353-54 (1991)).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment on its Medicaid fraud claim should be denied as to NPC.

Dated: Boston, Massachusetts
       March 22, 2007

>Respectfully submitted,
>
>/s/ Karen F. Green
>Karen F. Green, BBO # 209050
>WILMER CUTLER PICKERING HALE AND DORR LLP
>60 State Street
>Boston, Massachusetts 02109
>(617) 526-6000
>
>Jane W. Parver (admitted *pro hac vice*)
>Saul P. Morgenstern (admitted *pro hac vice*)
>Samuel Lonergan (admitted *pro hac vice*)
>Charles Graybow (admitted *pro hac vice*)
>KAYE SCHOLER LLP
>425 Park Avenue
>New York, New York 10022
>(212) 836-8000
>
>*Attorneys for Defendant*
>   *Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2007, a true and accurate copy of Novartis Pharmaceuticals Corporation's Memorandum in Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants was served via the Lexis-Nexis Filing System:

Dated: Boston, Massachusetts
       March 22, 2007

                                                      /s/  Brett Budzinski