# EXHIBIT 9

## TO AFFIDAVIT OF SAMUEL N. LONERGAN

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri Corporation; and McKESSON CORPORATION, a Delaware Corporation,<br><br>Defendants | Civil Action No. 1:05-CV-11148-PBS |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Settlement Court, this Agreement is entered into between and among (1) the Class Representatives on behalf of themselves and the Private Payor Class (the "Plaintiffs") and (2) Defendant First DataBank, Inc. ("First DataBank" or "FDB"), by and through their respective counsel.

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a civil proceeding (the "Class Action") in which the Plaintiffs have alleged, *inter alia,* that Defendants, including

First DataBank, wrongfully increased the so-called WAC to AWP markup factor applied to numerous prescription pharmaceuticals through a scheme begun in late 2001 and 2002, thereby causing members of the proposed Private Payor Class, whose payments for pharmaceuticals are tied to the published AWP, to make substantial excess payments for those pharmaceuticals.

WHEREAS, First DataBank, a publisher of information that is not now, nor ever was, a manufacturer, supplier, wholesaler, distributor, or seller of prescription pharmaceuticals, asserts a number of legal and factual defenses to the claims by the Plaintiffs and denies any wrongdoing or liability whatsoever;

WHEREAS, Class Settlement Counsel have concluded, after discovery and investigation of the facts and after carefully considering the circumstances of the Class Action, including the claims asserted in the complaint filed in the Class Action and the possible legal and factual defenses thereto, that it would be in the best interests of the Plaintiffs to enter into this Agreement, which interests include the substantial prospective value to be derived by this Settlement and the interest in avoiding the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Plaintiffs; and, further, that Class Settlement Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Plaintiffs and of the proposed Private Payor Class;

WHEREAS, the proposed Private Payor Class is comprised of (1) third-party payors, including, but not limited to, self-insured employers, health and welfare plans, private health insurers (including private plans that cover government employees and/or retirees by reason of their current or past governmental employment), and (2) individual consumers ("Consumers"), in the United States, who paid for all or part of the purchase price of certain prescription pharmaceuticals based in whole or in part upon the Average Wholesale Price ("AWP"), Blue Book AWP ("BBAWP") or similar data published or disseminated by First DataBank electronically or otherwise, during the Class Period.

WHEREAS, First DataBank, through their counsel, after vigorous, arms-length negotiations, have conditionally agreed (i) to cease to publish the AWP (known in the FDB database as the BBAWP field) for pharmaceutical products, after a two year notice period, and (ii) to adjust the WAC to AWP mark up on certain pharmaceuticals, all as provided in this Agreement;

WHEREAS, First DataBank, despite its belief that it has valid and complete defenses to the claims asserted against them in the Class Action, have nevertheless agreed to enter into this Agreement to reduce and avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to resolve this controversy;

3

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of First DataBank and the Plaintiffs that any and all claims made or that could have been made against First DataBank by Plaintiffs in the Class Action be settled, compromised and dismissed on the merits and with prejudice and, except as hereafter provided, without costs as to Plaintiffs or First DataBank, subject to the approval of the Settlement Court, on the following terms and conditions:

1. <u>Private Payor Class Definition</u>. Subject to the Settlement Court's approval, and the conditions of Paragraph 15, the undersigned agree and consent to the certification pursuant to Fed. R. Civ. P. 23(b)(1) 23(b)(2) and 23(b)(3) of the following settlement class (the "Private Payor Class") in the Class Action:

> All individual persons or entities who, during the Class Period, made purchases and/or paid, whether directly, indirectly, or by reimbursement, for all or part of the purchase price of prescription pharmaceuticals, including, but not limited to, those pharmaceuticals listed on the attached Exhibit A, where any or all of the purchase price, reimbursement or payment amount was based in any part on the Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, in whole or part, was based on a FDB wholesale survey. Excluded from the class are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments, and all other federal, state or local government entities' claims, to the extent such governmental entities purchased and/or paid, whether directly or by reimbursement, for all or part of the

cost of prescription pharmaceuticals as benefits provided pursuant to a legislatively enacted public health and welfare entitlement program.

2. <u>General Definitions</u>. As used in this Agreement, the following terms shall have the indicated meanings:

"Class Period" means January 1, 2000 through the date the the Settlement Court enters a Final Order and Judgment in the Class Action.

"Consumer" means any person falling within the definition of the Private Payor Class who is a natural person or other legal entity and not a TPP. "Consumer" includes living persons as well as the executors, heirs, administrators, trustees, or other authorized representatives of deceased persons.

"Consumer Class Members" means Consumers who are not Class Opt-Outs.

"Court" or "Settlement Court" means the Honorable Patti B. Saris of the United States District Court for the District of Massachusetts, or if Judge Saris is not available, another judge from the United States District Court for the District of Massachusetts who will be designated by Judge Saris or who is appointed, or any subsequent court before which First DataBank's Counsel and Class Settlement Counsel agree to settle the claims of the Private Payor Class.

5

"Class Member" means any person or entity falling within the definition of the Private Payor Class set forth in Paragraph 1 other than any Class Opt-Outs.

"Class Settlement Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, Wexler Toriseva Wallace LLP, and Edelson & Associates, LLC.

"Class Opt-Out" means any person or entity falling within the definition of the Private Payor Class set forth in Paragraph 1 who timely and validly submits a request for exclusion from the Private Payor Class in accordance with the procedures set forth in the Settlement Notice. A Class Opt-Out that is a Consumer is also referred to as a "Consumer Opt-Out." A Class Opt-Out that is a TPP is also referred to as a "TPP Opt-Out."

"Class Representatives" means the named plaintiffs who have asserted claims on behalf of themselves and a putative class in the Class Action.

"FDB Data Room" means a facility or web-based site, maintained by First Databank at its own expense for a period of three (3) years from the Effective Date, for the purpose of facilitating reasonable access to discoverable material from FDB. "Discoverable Material" as used herein means any and all material created during the period

January 1, 2000 to the date of the entry of the Final Order and Judgment, located pursuant to a reasonable search, which falls into any of the following categories:

(a) all non-privileged materials previously produced by First DataBank as a party or non-party in other litigation or civil proceedings which relate to the price reporting and/or price data acquisition activities of FDB;

(b) all transcripts of testimony of employees taken, and affidavits of employees filed, in any civil proceedings pertaining to the price reporting and/or price data acquisition activities of FDB;

(c) all non-privileged documents or other materials evidencing all communications between FDB and any other persons (e.g., third party payors, pharmacy chains, independent pharmacies, pharmacy benefit managers, pharmaceutical price reporting entities, government entities) concerning the price reporting and/or price data acquisition activities of FDB.

(d) All non-privileged documents or other materials evidencing pharmaceutical price lists, price catalogues, and/or other price data acquisition efforts and materials.

First DataBank shall continue to supplement the FDB Data Room with relevant non-privileged material located up to the date of the Final Order and Judgment as provided herein. As used herein the term "non-privileged materials" means all responsive materials not protected from disclosure by the attorney-client privilege, work-product immunity, trade secret or other confidentiality obligations, First Amendment, or other applicable privileges or immunities. In the event of the assertion of a privilege or immunity, First DataBank shall maintain in its possession and make part of the material provided in the FDB Data Room a privilege

7

log containing that information required by law to demonstrate the existence of any privilege or immunity being asserted with respect to any documents created during the period from January 1, 2000 through December 31, 2003.

"FDB wholesale survey" means any actions taken by FDB, its employees or agents, to obtain from one or more drug wholesalers information relating to its catalogue or list pricing information for, or mark-up applied to, a manufacturer's line of products or a specific product by any means, either written or oral.

"First DataBank" means First DataBank, Inc.

"First DataBank's Counsel" means the Office of General Counsel, The Hearst Corporation.

"Effective Date" has the meaning ascribed in Paragraph 7 of this Agreement.

"Pharmaceutical Purchase" means payment or reimbursement, direct or indirect, for all or part of the cost of a pharmaceutical, including, but not limited to, those pharmaceuticals listed on the attached Exhibit A, prescribed, provided or administered in the United States; including, but not limited to, the AWP-based payment or partial payment for or reimbursement of the price or part of the price of a pharmaceutical to any doctor, medical practice, hospital, pharmacy

8

or any other health care provider, or the payment of any AWP-based co-insurance, deductible or other amount that, in whole or in part, is based on or affected by the AWP or BBAWP for such pharmaceuticals pursuant to an insurance agreement or other health care plan  As stated, the term "Pharmaceutical Purchases" is limited to transactions where the cost, payment, reimbursement amount or price of the pharmaceutical was based, in whole or in part, on the Average Wholesale Price, the Blue Book AWP,  or similar data published or disseminated by First DataBank, Inc, electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, in whole or part, was based on a FDB wholesale survey.

"Plaintiffs" means the Class Representatives together with all putative members of the Private Payor Class.

"Publishing Competitor" means an entity that is not a subsidiary or affiliate of First DataBank that is engaged in the business of publishing or disseminating electronic integrateable drug information databases and has more than $5 million in annual revenue.

"Releasees" or "Released Entities" means First DataBank, Inc., its parent, subsidiaries, and affiliates and their (including First DataBank Inc.'s) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors, successors

9

and assigns; provided, however, that Medispan, a division of Wolters Kluwer Health, Inc., its parent, subsidiaries, and affiliates and their (including Medispan's) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors and assigns (collectively referred to herein as "Medispan") are excluded from the term Releasees and Released Entities, except for (1) the period when Medispan was owned by First DataBank, and (2) the period from December 19, 2001 to and including October 2, 2004, when First DataBank was required to divest the Medispan business and provide related editorial and consulting services to Medispan, which during these periods (1) and (2) above, Medispan is included in the term Releasees and Released Entities.

"Released Claims" means any and all known or unknown claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Releasor who has not timely excluded themselves from the Private Payor Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to the collection, calculation, formulas, mark-up, determination, dissemination, publication of, and representations concerning, the AWP or BBAWP or similar data published or

10

disseminated by First DataBank, Inc. electronically or otherwise for any prescription pharmaceuticals, including but not limited to, the allegations contained in the action entitled *New England Carpenters Health Benefits Fund et al. v. First Databank, Inc., et al.*, Civil Action No. 1:05-CV-11148 (D.Mass.).

"Releasors" means any and all Class Members, as well as their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, any future operating entities created and controlled by a Class Member (not including any successor of an Opt-Out), and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such, and any entities or persons (including, to the extent that a TPP Class Member administered their Pharmaceutical Purchases, all entities for which any TPP Class Member provides or provided administrative services) on whose behalf the Class Member is authorized to act. All Released Claims are forever discharged, and such claims cannot be asserted by any of Releasors' future, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective future stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal

11

representatives, or any successors, heirs, executors, trustees, administrators, or assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

"Settlement Notice" means the Notice of Pendency and Proposed Settlement of Class Action, and Settlement Hearing substantially in the form annexed hereto as <u>Exhibit B</u> and the Summary Notice for publication annexed hereto as <u>Exhibit C</u>.

"Third-Party Payor" or "TPP" means a private or quasi-governmental entity that paid or was at risk by contract to pay all or part of the cost of Pharmaceutical Purchases for individual or group beneficiaries of the TPP's prescription drug or health coverage including, but not limited to, self-insured employers, health and welfare plans, private health insurers (including private plans that cover government employees and/or retirees by reason of their current or past governmental employment). Excluded are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments, and all other federal, state or local government entities' claims, to the extent such governmental entities purchased and/or paid, whether directly or by reimbursement, for all or

12

part of the purchase price of prescription pharmaceuticals as non-employee public benefits provided pursuant to a legislative enactment.

"TPP Class Members" means any person or entity falling within the definition of the Private Payor Class, excluding any Class Opt-Outs, who also fall within the definition of Third-Party Payor.

"United States" means the United States of America including its states, commonwealths, territories and possessions.

"WAC to AWP Markup" means the number applied by FDB to the Wholesale Acquisition Cost ("WAC"), or if the WAC is not available then to the direct price ("DIR") of a pharmaceutical as reported by the manufacturer, in order to determine the AWP or BBAWP to be used in First DataBank's publications.

3. <u>Reasonable Best Efforts to Effectuate This Settlement</u>. Consistent with the terms of this Agreement and notwithstanding the rights of the parties to terminate this Agreement at certain times, the parties and their counsel agree to use their reasonable best efforts, including all steps and efforts contemplated by this Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Settlement Court or otherwise, to carry out the terms of this Agreement.

4.   <u>Motion for Preliminary Approval</u>.  Concurrent with or shortly following the submission of this Agreement for consideration by the Settlement Court, Class Settlement Counsel shall submit to the Settlement Court a motion for preliminary approval of the settlement set forth in this Agreement, requesting entry of a Preliminary Approval and Settlement Class Order substantially in the form annexed hereto as <u>Exhibit D</u>.

5.   <u>Notice to Class</u>.  In the event the Settlement Court preliminarily approves the settlement set forth in this Agreement, Class Settlement Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order, by mail, provide all those members of the Private Payor Class who can be identified by reasonable means with a copy of the detailed Settlement Notice substantially in the form annexed hereto as <u>Exhibit B</u>.  Notice to members of the Private Payor Class shall also be given by publication in national print media of the Summary Notice, substantially in the form annexed hereto as <u>Exhibit C</u> or as otherwise ordered by the Settlement Court, and by publication on the web site established by Class Settlement Counsel or the Notice Agent.  In addition, all members of the nationwide Private Payor Class shall be directed to review a copy of the detailed Settlement Notice which will be published on the web site and will be mailed to any nationwide Private Payor Class Member upon

14

request. All costs of Settlement Notice as well as the retention of a notice consultant to effectuate notice, shall be paid exclusively by First DataBank as further provided in this Agreement in Paragraph 12.

6.   Entry of Final Judgment. If, after the settlement fairness hearing scheduled by the Settlement Court in the Preliminary Approval and Settlement Class Order, the Settlement Court preliminarily approves this Agreement, then counsel for the parties shall request that the Settlement Court enter an Order and Final Judgment substantially in the form annexed hereto as Exhibit E.

7.   Effective Date of Settlement. The settlement detailed in this Class Agreement shall be effective on the first date after all of the following events have occurred: (1) entry of the Preliminary Approval and Settlement Class Order substantially in the form annexed hereto as Exhibit D, or entry of a Preliminary Approval and Settlement Class Order not substantially in the form annexed hereto with respect to which neither First DataBank nor Class Settlement Counsel invoke their termination rights within the period prescribed in Paragraph 8 below; (2) final approval by the Settlement Court of this Agreement, following notice to the Private Payor Class and a fairness hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (3) entry by the Settlement Court of an Order and Final Judgment, substantially in the form set forth in Exhibit E annexed hereto; and, (4) the expiration of any time for

15

appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Settlement Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Class Agreement as permitted by Paragraph 8, the date that such Alternative Judgment becomes final and no longer subject to appeal or review; and 4) this Agreement is no longer subject to termination by any party as provided for in Paragraph 8.

8. <u>Termination</u>.

(A) REJECTION OR MATERIAL ALTERATION OF SETTLMENT TERMS. First DataBank and Class Settlement Counsel shall each have the right to terminate this Agreement by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30) days of (1) the Settlement Court declining to enter the Preliminary Approval and Settlement Class Order substantially in the form annexed hereto as <u>Exhibit D</u>; (2) the Settlement Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as <u>Exhibit E</u>; (3) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (4) the date upon which an Alternative Judgment is

modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.

(B) TPP OPT OUTS. If First DataBank, in its sole discretion, determines that the number or identity of the TPP Class Members who request exclusion from the class is unsatisfactory, First DataBank shall be entitled to terminate this Agreement. The parameters under which First DataBank likely would exercise its discretion under this paragraph will be set forth in a Supplemental Agreement between the parties which will be filed under seal with the Settlement Court.

(C) STATE ATTORNEYS GENERAL: During the period between the filing of a proposed Order for Preliminary Approval and ten (10) days before the date set by the Court for a hearing on final approval of the settlement embodied by this Agreement (the "Fairness Hearing"), First DataBank, shall seek written assurance of a lack of current interest in the prosecution or filing of claims based upon the allegations contained in the Class Action complaint or substantially in the form of the claims raised in the Class Action from State Attorneys General that have inquired, or may wish to inquire, about the terms of this Agreement. If more than one such State Attorneys General affirmatively declines to provide such written assurance described above, then First Databank shall have a right to terminate this Agreement. If First DataBank elects to exercise the option to terminate as set forth in this paragraph, written

17

notice of such election must be provided to Class Settlement Counsel so as to be received no later than 5:00 pm eastern time on the tenth (10th) day prior to the first date for the scheduled Fairness Hearing.  For purposes of the Settlement, the term State refers to the States of the United States, the District of Columbia, the territories, possessions, and commonwealths of the United States.

(D)  RETURN TO PRE-AGREEMENT STATUS.  In the event any of the parties exercise the right of termination enumerated in this paragraph, the stipulation concerning the certification of the Private Payor Class as defined in Paragraph 1 shall be null and void, the rights and obligations of the parties shall be identical to those prior to the execution of this Agreement and the status of the Class Action shall be as it was prior to the execution of this Agreement.  In the event either party exercises any right of termination, First DataBank will have a reasonable opportunity to conduct non-repetitive discovery and to raise and have heard any dispositive motions with respect to the claims against it.  However, FDB, if it exercises a right of termination, will make every reasonable effort to adhere to the case schedule set by the Court in the Class Action.

9. Settlement Consideration.  Subject to the provisions hereof, and in full, complete and final settlement of all Released Claims as provided herein, First DataBank agrees to the following:

(A)  CHANGE IN PRICE REPORTING

(1) ADJUSTMENT OF THE WAC TO AWP MARKUP. On a date which is no later than (1) sixty (60) days after the Effective Date of this Agreement, or (2) 270 days from the entry by the Settlement Court of a Preliminary Approval Order in substantially the form annexed hereto as Exhibit D, First DataBank shall adjust, i.e., change, the WAC to AWP Markup it utilizes for all pharmaceuticals listed on Exhibit A to 1.20. As for other pharmaceuticals in the First DataBank database, to the extent that others are on a mark up factor basis and have a WAC to AWP mark up of less than 1.20, First Databank covenants and agrees that it shall not increase the WAC to AWP Markup for those pharmaceuticals in whole or in any part by reason of the adjustment on other pharmaceuticals made pursuant to this paragraph. Subject to the provisions of paragraph (9)(A)(3) below, First DataBank will not at any time thereafter increase the WAC to AWP Markup of any pharmaceutical above 1.20 unless a different methodology for determining WAC, AWP or mark ups is adopted as contemplated by paragraph 9 (A)(3) or 9(A)(6).

(2) DISCONTINUE PUBLICATION OF BBAWP. Subject to the provisions of paragraph (9)(A)(3) below, on a date which is no later than two (2) years from the Effective Date of this Agreement, First DataBank shall discontinue publishing, electronically or otherwise, the BBAWP data field for any pharmaceutical. First DataBank shall use the

19