Case 1:05-cv-11467-PBS Document 2001-16 Filed 10/04/2006 Page 20 of 36

two year period described herein to notify its customers of the change in its publications contemplated by this paragraph.

### (3) <u>REACTION TO PUBLISHING COMPETITOR</u>.

Notwithstanding paragraph (9)(A)(2) above, if at the time First DataBank is required to discontinue publication of the BBAWP data field by operation of this Agreement, or any time thereafter, a Publishing Competitor is or becomes engaged in the business of publishing or disseminating an electronically integrateable BBAWP field or other substantially similar drug pricing benchmark, First DataBank shall have the option to continue or resume to publish or disseminate a substantially similar data field in accordance with the methodology utilized by a Publishing Competitor or the revised methodology specified in Paragraph 9(A)(1) of this Agreement. However, to the extent the Publishing Competitor's revised methodology differs from the methodologies permitted by paragraphs 9(A)(1) or 9(A)(6) but nonetheless includes application of a WAC to AWP mark-up factor, FDB's publication of a substantially similar data field will be limited to the methodologies permitted by paragraphs 9(A)(1) or 9(A)(6), or the methodology employed by the Publishing Competitor provided it results in a WAC to AWP mark-up factor less than that proscribed by paragraph 9(A)(1). If at any time thereafter, the Publishing Competitor or Publishing Competitors which caused First DataBank to continue to publish its AWP or BBAWP data fields in accordance with this Agreement ceases to publish an AWP field

20

Case 1:05-cv-11148-PBS Document 201-16 Filed 10/04/2006 Page 2 of 36

for all pharmaceuticals, First DataBank shall discontinue publishing the AWP and BBAWP data fields for all pharmaceuticals. After discontinuing to publish the BBAWP data field, First DataBank may not at any time thereafter resume publishing or disseminating that same data field unless the actions of another Publishing Competitor thereafter entitles First DataBank to relief from the obligations of paragraph 9 (A)(2) pursuant to the provisions of this paragraph.

(4) JURISDICTION DURING NOTICE PERIOD. As provided in the proposed Final Judgment and Order attached hereto as Exhibit E, the Settlement Court shall maintain continuing jurisdiction over any issues relating to this Agreement, including but not limited to the publication of the AWP or BBAWP prices during the two year notice period prescribed in Paragraph 9(A)(2).

(5) MEDIATION. First DataBank shall participate with other major participants in the pharmaceutical industry, including, but not limited to, pharmaceutical manufacturers, retail pharmacies, prescription benefit managers Private and Third Party Payor representatives, and experts, in a Settlement Court-approved mediation process meant to facilitate the establishment of a sustainable benchmark for pharmaceutical reimbursement. Class Settlement Counsel shall have the right to comment to the Court regarding the form and structure of

the settlement mediation process, and may propose to the Court participants in the mediation process.

(6) <u>VERIFIABLE WHOLESALE PRICES</u>.  Notwithstanding anything to the contrary in this Agreement, to the extent that, as a result of changes in law, regulation or industry practice, verifiable pharmaceutical wholesale price information becomes available, First DataBank may publish such information.

(B).    <u>ACCESS TO INFORMATION</u>

(1) <u>FDB DATA ROOM</u>:  First DataBank shall establish and maintain for a period of three (3) years from the Effective Date, at its expense, an FDB Data Room and provide reasonable access to the FDB Data Room and its contents to all members of the Private Payor Class and Class Settlement Counsel in connection with any claim or potential claim brought or contemplated against other defendants in litigation involving pharmaceutical pricing and reimbursement, including, but not limited to, all plaintiffs with cases currently pending in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456. Nothing herein shall constitute a representation by Class Settlement Counsel as to the scope, completeness, accuracy or integrity of the information provided by First DataBank to the FDB Data Room.  The scope, completeness, accuracy or integrity of the information is solely the responsibility of First DataBank.  The establishment and maintenance of

the FDB Data Room does not constitute a waiver on the part of First DataBank of any attorney-client, work product, trade secret, or other confidentiality obligations, First Amendment, and/or other applicable privileges or immunities to discovery. In the event of the assertion of a privilege or immunity, First DataBank shall maintain in its possession and provide as part of the information maintained in the FDB Data Room a privilege log containing that information required by law to demonstrate the existence of any privilege or immunity being asserted with respect to any documents created during the period from January 1, 2001 through December 31, 2003. Any dispute arising with respect to a claim of privilege or immunity shall be brought to the attention of and resolved by the Settlement Court after the parties meet and confer in an attempt to resolve the dispute(s) in accordance with Local Rules. First DataBank shall cooperate with Class Settlement Counsel to establish that the documents produced by First DataBank in the Class Action as well as the documents and information included in the FDB Data Room, are authentic and business records maintained in the ordinary course of business.

In its sole discretion, First Databank may provide others with access to the FDB Data Room as well. As a condition to obtaining access to the FDB Data Room, First DataBank may require that one seeking access enter into reasonable confidentiality agreement and/or agree to be bound by any applicable protective orders.

Case 1:05-cv-11487-PBS Document 2001-16 Filed 10/04/2006 Page 24 of 36

As set forth in the proposed Final Order and Judgment, attached hereto as <u>Exhibit E</u>, no member of the Private Payor Class shall be permitted to serve FDB, its parents, subsidiaries, affiliates, directors, officers, or employees (past or present) in any action with any discovery requests, requests to admit, or subpoenas seeking materials or deposition or trial testimony in connection with any claim or potential claims brought against other defendants in connection with litigation involving pharmaceutical pricing and reimbursements without (1) reviewing the materials placed in the FDB Data Room, and then (2) demonstrating by motion before the Settlement Court that the requested discovery, testimony, or requests to admit are substantially non-repetitive and which they in good faith believe cannot be substantially obtained from the materials located in the FDB Data Room  As set forth in the proposed Final Order and Judgment attached hereto as <u>Exhibit E</u>, the parties shall request that the Court exercise its authority under the All Writs Act to enforce the provisions of this paragraph.

(2)  <u>EMPLOYEE INTERVIEWS</u>:  In connection with litigation captioned *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 ("AWP MDL"), FDB will cooperate with and facilitate the interview of certain FDB employees involved in the drug price reporting and price data acquisition activities of FDB.  FDB will use its reasonable best efforts to identify to Settlement Class Counsel the FDB employees, present and former, who have had such involvement.  The

Case 1:05-cv-11485-PBS Document 201-1 Filed 10/04/2006 Page 25 of 36

interviews shall be conducted by Class Settlement Counsel, or their designees, and may, at the election of Class Settlement Counsel, be given under oath and otherwise conducted in accordance with Fed.R.Civ.P. 30(c). The individuals to be interviewed shall be those who Class Settlement Counsel reasonably, and in good faith, determine can provide non-repetitive factual information concerning the drug price reporting and price data acquisition activities of FDB. If transcripts are made, said transcripts shall be placed in the FDB Data Room and made available to all Class Members in accordance with Paragraph 9(B)(1).

(3) EMPLOYEE TRIAL TESTIMONY: First DataBank shall make reasonable efforts to make its employees and officers with relevant knowledge available for trial testimony in connection with (1) any trial of claims against the remaining defendant or defendants in the Class Action, (2) any trial in the AWP MDL, and (3) any trial of claims similar to those brought by Plaintiffs in the AWP MDL, brought by State Attorneys General. First DataBank shall take reasonable steps to facilitate the service on such employees of subpoenas issued at the request of counsel compelling their attendance at trial as set forth above. First DataBank shall also request that their former employees attend and testify at any such trial.

10. Attorneys' Expenses and Fees and Fee Disputes. The parties agree that an award of attorneys' fees in this action is a matter

committed to the sole discretion of the Settlement Court. Settlement Class Counsel shall, within twenty (20) days after the filing for preliminary approval, submit an application for attorneys' fees and expenses to the Settlement Court in an amount that shall not exceed (1) $625,000.00 in fees, (2) $125,000 for the maintenance of the FDB Data Room for a period of three (3) years from the Effective Date, and (3) $200,000.00 in expenses exclusive of amounts expended by FDB pursuant to Paragraph 12 below. The Settlement Court shall determine the appropriate amount of any attorneys fees and expenses to be paid to Settlement Class Counsel. Such fees and expenses approved by the Settlement Court shall be paid exclusively by First DataBank up to the amounts indicated above, exclusive of amounts expended by First DataBank pursuant to Paragraph 12 below, within twenty (20) days after the Effective Date. Upon payment of the attorneys' fees and expenses as awarded by the Settlement Court, Settlement Class Counsel shall release and forever discharge any claims, demands, actions, suits, causes of action, or other liabilities relating to any attorneys' fees or expenses incurred in the Class Action.

11. <u>All Claims Satisfied</u>. Each Private Payor Class Member shall look solely to the relief described in Paragraph 9 of this Agreement for settlement and satisfaction, as provided herein, of all Released Claims.

12. Payment of Expenses Related to Notice and Administration.

First DataBank shall be liable for all expenses associated with the provision of notice to the members of the Private Payor Class and all costs associated with the administration of the settlement embodied by this Agreement, including the fee for professional services rendered by Kinsella/Novak Communications, Ltd., 2120 L Street NW, Suite 205, Washington, DC or, if not reasonably available, another firm agreed to by FDB and Class Counsel (the "Class Notice Consultant"). In addition to direct mail notice to TPPs, notice to Class Members shall also be accomplished by a program of notice publication designed to achieve a reasonable reach and frequency commensurate with the reach and frequency sought in other pharmaceutical pricing litigation notice programs, as reasonably determined by the Class Notice Consultant.

13. Releases. Upon the Effective Date of this Class Agreement the Released Entities shall be released and forever discharged from any Released Claims that any Releasor who has not timely excluded themselves from the Private Payor Class. All Releasors covenant and agree that they shall not hereafter seek to establish liability against any Released Entity based, in whole or in part, on any of the Released Claims, and that upon the Effective Date, all Releasors will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against any Released Entity with respect to the Released Claims.

In addition, each Class Member hereby expressly waives and

releases, upon this Agreement becoming effective, any and all provisions,

rights and benefits conferred by § 1542 of the California Civil Code,

which reads:

> Section 1542. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of

common law, which is similar, comparable or equivalent to § 1542 of the

California Civil Code. Each Class Member may hereafter discover facts

other than or different from those which he, she or it knows or believes to

be true with respect to the claims which are the subject matter of this

Agreement, but each Class Member hereby expressly waives and fully,

finally and forever settles and releases, upon this Agreement becoming

effective, any known or unknown, suspected or unsuspected, contingent

or non-contingent Released Claims with respect to the subject matter of

this Agreement whether or not concealed or hidden, without regard to

the subsequent discovery or existence of such different or additional

facts. Each Class Member also hereby expressly waives and fully, finally

and forever settles and releases any and all Released Claims it may have

against Released Entities under § 17200, *et seq.*, of the California

Business and Professions Code, which claims are expressly incorporated

Case 1:05-cv-11148-PBS Document 120-1 Filed 10/04/2006 Page 29 of 36

into this Paragraph. Further, Releasors hereby agree to reduce any judgment they might recover against any entity other than a Released Entity by release and discharge in an amount, fraction, portion, or percentage necessary under applicable state or federal law to bar, eliminate, or satisfy claims against the Released Entities for contribution and/or indemnity to the fullest extent permitted by applicable state or federal law arising from any Released Claims, including any amount re-allocated by applicable state or federal statute or common law to Released Entities resulting from uncollectibility and/or insolvency of other persons or entities determined to be at fault. In addition, Releasors agree to indemnify the Released Entities herein and save and hold them harmless from any claims, demands, causes of action, subrogation claims, liens, and claims for contribution or indemnity, made by others so adjudged jointly liable or severally liable with the Released Entities arising from any of the Released Claims, whether such is alleged to arise by reason of judgment, settlement, reallocation of fault in the event of insolvency or uncollectibility of any award, or otherwise. A Releasor may satisfy such indemnity obligation by reducing any judgment recovered by such Releasor against a party other than a Released Entity by the amount, percentage, or share of such judgment necessary, under applicable law, to relieve the Released Entities of liability for contribution and/or indemnity. Releasors shall execute any additional

29

documentation that may be required under applicable state or federal law in order to give effect to this provision.

14.    Preservation of Rights.  The parties hereto agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by First DataBank or of the truth of any of the claims or allegations contained in the complaint in the Class Action; and evidence thereof shall not be discoverable or used directly or indirectly by the Private Payor Class or any third party, in any way (except that the provisions of this Agreement may be used by the parties to enforce its terms), whether in the Class Action or in any other action or proceeding.  This Agreement and all of the terms herein constitute compromises and offers to compromise covered by Federal Rule of Evidence 408.  In the event that this Agreement is terminated pursuant to Paragraph 8, nothing in this Class Agreement or its negotiation may be used as evidence in any action between the parties hereto.  The parties expressly reserve all their rights and defenses if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement.

15.    Class Certification For Settlement Purposes Only.  First

DataBank stipulates to certification of the Private Payor Class as defined

in Paragraph 1 for settlement purposes only, and for the sole purpose of

creating that settlement class.  First DataBank's stipulation is contingent

upon the execution by the parties of this Agreement and that this

Agreement is finally approved by the Settlement Court and is not

terminated pursuant to the terms of this Agreement.  If the Agreement is

for any reason not finally approved, or is otherwise terminated, First

DataBank reserves the right to reassert all  objections and defenses to

certification of any class for trial purposes, and Plaintiffs will not offer

First DataBank's stipulation to certification as part of this Agreement as

any evidence in support of a motion to certify any class for trial

purposes.

16.    Consent to Jurisdiction.  First DataBank and Plaintiffs

hereby irrevocably submit to the exclusive jurisdiction of the Settlement

Court for purposes of any suit, action, proceeding or dispute arising out

of, or relating to, this Agreement or the applicability of this Agreement,

including any issues arising or regarding the establishment and

maintenance of the FDB Data Room and the information and materials

contained therein.

17.    Resolution of Disputes: Retention of Jurisdiction.  Any

disputes between or among First DataBank and any Class Members

concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Settlement Court for resolution.  The Settlement Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

18.    Enforcement of Settlement.  Notwithstanding Paragraph 14 above, this Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used by any of the Released Entities for such defense and/or in support of injunctive relief against any such action, suit or other proceeding.

19.    Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

20.    Authorization to Enter Class Agreement.  The undersigned representatives of First DataBank represent that they are fully authorized to enter into and to execute this Agreement on behalf of First DataBank.  Class Settlement Counsel represent that they are fully authorized to conduct settlement negotiations with First DataBank's Counsel on behalf of the Plaintiffs and to enter into, and to execute, this Agreement on behalf of Plaintiffs, subject to Settlement Court approval pursuant to Fed. R. Civ. P. 23(e).

32

Case 1:05-cv-11148-PBS Document 120-1 Filed 10/04/2006 Page 39 of 36

21.    No Party Is the Drafter.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

22.    Choice of Law.  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

23.    Amendment or Waiver.  This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

24.    Execution in Counterparts.  This Agreement may be executed in counterparts.  Facsimile signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Settlement Court.

25.    Integrated Agreement.  This Agreement, including the exhibits hereto, together with the Supplemental Agreement and any

33

exhibits thereto, contain an entire, complete, and integrated statement of
each and every term and provision agreed to by and between the parties
hereto, and supersede all prior oral or written agreements and
contemporaneous oral agreements among the parties.

26.   Construction.  This Agreement shall be construed and
interpreted to effectuate the intent of the parties, which is to provide,
through this Agreement, for a complete resolution of the Released Claims
with respect to the Released Entities.

27.   Notices.  All notices and other communications required or
permitted under this Agreement shall be in writing and delivered in
person, by overnight delivery service or by facsimile.  Any such notice
shall be deemed given as of the date of receipt and shall be delivered to
the parties as follows:

**If To Plaintiffs**:

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP,
One Main St., 4th Floor
Cambridge, MA 02142
Tel. 617-482-3700
Fax: 617-482-3003

Steve W. Berman
Hagens Berman Sobol Shapiro LLP,
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Tel. 206-623-7292
Fax: 206-623-0594

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. 215-496-0300
Fax: 215-496-6611


**If To First DataBank:**


Eve Burton
Office of the General Counsel
The Hearst Corporation
1345 Avenue of the Americas
New York, NY 10019
Tel. 212-649-2045
Fax: 215-649-2041


28.    Severability. In the event any one or more of the provisions
contained in this Agreement shall for any reason be held to be invalid,
illegal, or unenforceable in any respect, such invalidity, illegality or
unenforceability shall not affect any other provision if First DataBank
and Class Settlement Counsel mutually elect to proceed as if such
invalid, illegal or unenforceable provision had never been included in the
Agreement.

29.    Headings. The headings to this Agreement have been
inserted for convenience only and are not to be considered when
construing the provisions of this Agreement.

30.    Public Statement. Class Settlement Counsel and First
DataBank shall, upon execution of this Agreement, each issue a public

statement with respect to the settlement embodied by this Agreement.

The content of the public statement is to be agreed upon by the parties

prior to release.


IN WITNESS WHEREOF, the parties hereto, through their fully

authorized representatives, have executed this Class Agreement as of the

date first written below.


PLAINTIFFS                                    FIRST DATABANK, INC.


By: _____                   By: _____
    Thomas M. Sobol, Esq.                          Eve Burton, Esq., its counsel
    Hagens Berman Sobol Shapiro LLP.


Dated: _August 3, 2006_                       Dated _August 7, 2006_