# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| *State of Montana v. Abbott Labs., Inc., et al.*,         Cause No. CV-02-09-H-DWM (D. Mont.), | Judge Patti B. Saris |

## STATE OF MONTANA'S RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

The State of Montana, by its counsel, hereby responds to the Local Rule 56.1 Statement of Undisputed Material Facts In Support of Defendants' Motion for Summary Judgment ("Def. L.R. 56.1 Stmt.") and where necessary counter-designates undisputed facts in opposition to Defendants' joint motion.  Counter-designations of deposition transcripts and documents cited herein are attached to the Declaration of Jeniphr Breckenridge in Support of the State of Montana's Opposition to Defendants' Joint Motion for Summary Judgment and are referred to as "Breckenridge Decl. Ex. __".  The State incorporates and refers herein to the declarations of Dorothy Poulsen ("Poulsen Decl."), Jeff Buska ("Buska Decl."), John Chappuis ("Chappuis Decl."), and Betty DeVaney ("DeVaney Decl.") In Support of the State of Montana's Opposition to Defendants' Joint Motion For Summary Judgment.  These declarations are submitted herewith.[1]

---

[1] The State also incorporates and refers herein to the exhibits to the State of Montana's Memorandum In Support of Motion For Partial Summary Judgment Against Certain Defendants (Dkt. No. 3731).  References to these exhibits are in the form of "MT Summ. J. Ex. __."  The State further incorporates and refers to Plaintiffs' Post-Trial Proposed Findings of Fact (Dkt. No. 3553).  References to this memorandum are in the form of "PFOF ¶ ___."

001534-15 159641 V1

In addition, the State reserves all evidentiary objections to the use of the evidence by Defendants.

**A.      Response to Defendants Alleged Undisputed Facts**

1.      Admitted, except denied that Def. Ex. 74[2] contains a copy of Mont. Code Ann. § 53-6-113.

2.      The State cannot admit or deny the quotations in this paragraph as the sources of the quotations are not attached and appeared in Administrative Rules that have been repealed. The State denies that Def. Ex. 19 provides support for Def. L.R. 56.1 Stmt. ¶ 2.

3.      Admitted, but counter-designates that the Proposed Amendment also added other material to the rule.

4.      Admitted.

5.      Admitted.

6.      Denied.

7.      Admitted that some non-Medicaid Montana agencies did not purchase drugs based on AWP.  However, the State denies that Def. Conf. Ex. 6 is evidence of this fact.  Further, the State disputes that Montana Medicaid had knowledge of the purchasing or reimbursement practices of "some non-Medicaid agencies."  Plaintiffs counter-designate the following evidence in support of Montana Medicaid's lack of knowledge:  Ellery Tr. at 70-71 (Breckenridge Decl. Ex. 4); Chappuis Tr. at 77 (Breckenridge Decl. Ex. 3).

8.      The State incorporates its response to ¶ 7, including counter-designations.  In addition, the State objects that Def. Ex. 11 does not support the proposition.  This document is limited to one non-Medicaid entity.  There is no evidence that Montana Medicaid employees

---

[2] References to Def. L.R. 56.1 Stmt. exhibits are in the form "Def. Ex. __."  References to Def. L.R. 56.1 Stmt. Confidential exhibits are in the form "Def. Conf. Ex. __."

reviewed this document.  Further, the State denies that Montana Medicaid had "knowledge of the massive discounts off of AWP available to Montana providers in light of the State's own purchase of the subject drugs."  Denied to the extent this is opinion testimony of Defendants' expert and not "undisputed fact."

9.      Admitted.

10.     Montana cannot admit or deny this statement.  Plaintiffs dispute the evidence submitted as O'Sullivan Declaration Ex. 16 because the witness was not qualified as an expert in this case and a proper foundation was not laid for the testimony.  Further, the witness qualified his own statement with the words "I suspected."  There is no confirmed basis for this statement of "fact."

11.     Admitted.

12.     Admitted that the quotation was "reported" in Def. Ex. 29.

13.     Admitted.

14.     The State admits that the John Chappuis wrote to CMS that he "would like CMS to add language that defines 'frontier' service areas as well, and address how beneficiary populations, like those in Montanan, can expect service delivery."  Otherwise denied.  The State states that the rest of Def. L.R. 56.1 Stmt. ¶ 14 is unsupported.

15.     Admitted that the quotation is an accurate reproduction of the statement as it appeared in the document.  The State counter-designates that neither Paul Poltzin nor Timothy Stratton have been designated nor qualified as experts in this case and that proper foundations were not laid for this testimony.

001534-15  159641 V1

16.     Admitted that Dr. Stratton testified to this fact, otherwise denied.  Plaintiffs counter-designate that Dr. Stratton has not been designated nor qualified an expert in this case and a proper foundation was not laid for this testimony.

17.     Admitted.

18.     The State can neither admit nor deny this statement as O'Sullivan Decl. ¶ 16, Ex. 16 is comprised of excerpts from the March 8, 2006 deposition of James E. Smith, Director of Montana Pharmacy Association, and does not contain the 2002 survey referenced.  See response to Def. L.R. 56.1 Stmt. ¶ 19 for objections to the survey.

19.     Admitted that the quotation is an accurate reproduction of the statement as it appeared in the document.  The State counter-designates that Mr. Smith has not been designated nor qualified as an expert in this case and a proper foundation was not laid for this testimony. The survey itself is hearsay.

20.     Admitted that the quotation is an accurate reproduction of the statement as it appeared in the document.  Denied that the survey "revealed" this quotation.  The State counter-designates the fact that the survey is hearsay.

21.     Admitted.  The State counter-designates criticism of the surveys by multiple sources:  Marr Tr. at 48:8-14, 53-55 (Breckenridge Decl. Ex. 8); Ireland Tr. at 89-90 (Breckenridge Decl. Ex. 9); Buska Tr. at 362-63 (Breckenridge Decl. Ex. 5).

22.     Admitted that the evidence cited shows correspondence directed to Montana in connection with the 1996 OIG Report.  Admitted that Terry Krantz considered himself the "point person" in connection with the 1996 OIG Report only.  Denied that Terry Krantz or other Medicaid personnel were involved in the 2002 study.  Plaintiffs counter-designate Krantz Tr. 9:19-11:4 (Breckenridge Decl. Ex. 11) to demonstrate that Mr. Krantz was not involved with

Montana Medicaid in 2002.  Denied that Defendants submit any evidence of "active participation" by Montana Medicaid in connection with the 1996 study or any evidence of the 2002 study in connection with this paragraph.

23.     Admitted.

24.     Admitted that this quotation an accurate reproduction of the statement as it appeared in the document.  Denied the contents of the statement.

25.     The State disputes that the study's preliminary results for Montana showed that average acquisition cost for brand name drugs was AWP -16.23% and AWP -48.46% for generic drugs compared to national results of AWP -18.3% and AWP -42.45%.  The State counter-designates the language of the Krantz Memorandum (Def. Ex. 36) which states that this is how the OIG calculated the percentages and the final 1996 OIG Report, "Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Montanan Department of Public Health and Human Services" (Def. Ex. 33), which describes the limits on the study conducted by OIG, including the fact that the data employed was from 1994 (already two years old when the study was published) and was comprised of "a sample of 42 pharmacies . . . randomly selected from each of 5 strata."  Def. Ex. 33.  This represented a small percentage of the total number of pharmacies in Montana.  Each pharmacy provided the largest invoice from each of four different sources of supply.  ***No other data was collected or supplied.***  *Id*.  The report reflects Montana Medicaid's concerns regarding the report.  Def. Ex. 33 at 3.  Plaintiffs also counter-designate other evidence reflecting criticism of AG reports:  Marr Tr. at 48 (Breckenridge Decl. Ex. 8); Ireland Tr. at 89:10-90:1 (Breckenridge Decl. Ex. 9); Marr Tr. at 53-55 (Breckenridge Decl. Ex. 8); Buska Tr. at 363 (Breckenridge Decl. Ex. 5).

26.     The State incorporates by reference its response to Def. L.R. 56.1 Stmt. ¶ 25.

27.     The State disputes that the evidence cited supports the conclusion that other "key Montana Medicaid employees received the OIG 1996 reports and were aware of its findings." The State counter-designates that Mr. Krantz testified that he would have to "assume" that others received the report, but that he did not know and he did not recall any discussions with them about the report and he did not testify that they were "aware of its findings."  Krantz Tr. 59:19-60:3 (Breckenridge Decl. Ex. 11).  Admitted that Dorothy Poulsen referred to the OIG 1996 report in the document cited.  Otherwise denied.

28.     Admitted that the quotations are accurate reproductions of language in the documents cited, but otherwise denied.

29.     Admitted that OIG contacted Montana Medicaid about a "nationwide review of pharmacy and physician acquisition cost for prescription drugs reimbursed under the Medicaid program."  The State disputes that the evidence cited establishes the remainder of Def. L.R. 56.1 Stmt. ¶ 29.

30.     Admitted that the quotation is an accurate reproduction of language in the documents cited.  Deny that the citation to the Chappuis transcript supports the proposition or has anything to do with the report.

31.     Denied Defendants' interpretation of the exhibit.  Plaintiffs counter-designate the contents of the letter stating that the State both criticized the 2002 draft OIG report and committed to consider the results of the report in determining its pharmacy reimbursement for Medicaid drugs.  The State further counter-designates other evidence reflecting criticism of the AG reports:  Marr Tr. at 48, 53-55 (Breckenridge Decl. Ex. 8); Ireland Tr. at 89:10-90:1 (Breckenridge Decl. Ex. 9); Buska Tr. at 363 (Breckenridge Decl. Ex. 5).

32.     Admitted, but deny that Def. Ex. 5 supports this statement.

001534-15 159641 V1

33.     Admitted that the quotation is an accurate reproduction of language in the document cited.  The State counter-designates that no State personnel have testified to receipt or review of this document and that the document pre-dates the relevant time period for the litigation.

34.     Admitted that the quotation is an accurate reproduction of language in the document cited.  The State counter-designates that no State personnel have testified to receipt or review of this document and that the document pre-dates the relevant time period for the litigation.  The State further designates that the conclusions were based on states other than Montana.

35.     Admitted that the quotation is an accurate reproduction of language in the document cited.  The State counter-designates that no State personnel have testified to receipt or consideration of this document and that the document pre-dates the relevant time period for the litigation.

36.     Denied.  Montana Medicaid and officials were consulted by the Attorney General prior to the filing of the lawsuit.  The State counter-designates Buska Decl. at ¶ 6.

37.     Admitted that Montana Medicaid knew that AWP did not represent actual acquisition cost.  The State counter-designates testimony establishing that the Montana Medicaid knew that AWP did not represent actual acquisition cost *and that is why they used AWP plus a discount to determine Estimated Acquisition Cost (EAC)*:  Poulsen Decl. at ¶ 8; Poulsen Tr. at 119:10-12; 122:21-123:11 (Breckenridge Decl. Ex. 6).

38.     Admitted that the quotation is an accurate reproduction of the deposition transcript, denied to the extent that it is incomplete.  The State counter-designates Poulsen Decl.

¶ 5-11 as evidence of Dorothy Poulsen's understanding of the meaning of AWP during her tenure.

39.     Disputed.  The evidence shows that Montana Medicaid personnel involved in pharmacy reimbursement believed that AWP was a "base price – a wholesale price being made available by the drug manufacturers or "a price assigned by the pharmaceutical company [that] represented an average of the prices at which the company sold its products."  Montana Medicaid believed that the prices were provided by manufacturers.  The State counter-designates Buska Decl. at ¶ 8; Poulsen Decl. ¶ 5.  The State counter-designates that the Ellery testimony cited does not support the proposition.

40.     Denied that Montana Medicaid "deferred to the judgment of its Program Officers."  The State counter-designates that many Medicaid personnel, including pharmacy program officers, were involved in setting reimbursement methodology.

41.     Admitted that access to care is a federal requirement for state Medicaid programs. Denied that this "means only making sure there are a sufficient number of pharmacies" or that it is an "overarching goal."

42.     Admitted that this is an accurate reproduction of the deposition transcript.  The State counter-designates the following testimony describing the multiple roles of Medicaid: Poulsen Tr. 233:18-234:3 (Breckenridge Decl. Ex. 6); Ellery Tr. at 159:17-160:7 (Breckenridge Decl. Ex. 4).

43.     Admitted that access to care in rural areas is a "general concern."  The State is not sure what is meant by "particularly acute."

44.     Denied.  The State counter-designates that it does not know the source or purpose of this document.  Defendants have submitted no testimony concerning this document.  The State

- 8 -

disputes that this is a statement adopted by Montana Medicaid of its "common values, principles and policy goals."  This document is inadmissible.

45.     Denied.  The State disputes that "equal access to care was a predominant factor" in Montana's use of an AWP-based reimbursement methodology.  The State counter-designates the following evidence:  Buska Tr. 317:5-10 (access to care was "a concern," not predominant concern) (Breckenridge Decl. Ex. 5); Poulsen Tr. 233:18-234:15 (access is one of many concerns) (Breckenridge Decl. Ex. 6); Chappuis Tr. at 85 (multiple considerations) (Breckenridge Decl. Ex. 3).

46.     The State adopts its response to Def. L.R. 56.1 Stmt. ¶ 45.  The State counter-designates that "substantial" is not part of the testimony.

47.     Denied.  The State counter-designates testimony showing that "economic incentive" to pharmacies did not dominate Montana Medicaid pharmacy reimbursement policy. Ellery Tr. at 37-38; 113-14 (Breckenridge Decl. Ex. 4); Chappuis Tr. at 85 (Breckenridge Decl. Ex. 3).

48.     Denied.  The State counter-designates that Dr. Stratton has not been designated nor qualified as an expert in this case and that a proper foundation was not laid for this testimony.

49.     Denied.  The State adopts its response to Def. L.R. 56.1 Stmt. ¶ 47.

50.     Admitted that the quotations are accurate reproductions of language in the documents cited.  The State disputes that Montana Medicaid officials set reimbursement high enough so that rural pharmacies will continue servicing Medicaid beneficiaries.  The State counter-designates testimony regarding why Montana Medicaid sets reimbursement at the levels they do:  to get the level as close to acquisition costs as possible while limiting costs to the State.

Peterson Tr. at 86:3-5, 8-10 (Breckenridge Decl. Ex. 7); Buska Decl. at ¶ 17; Poulsen Decl. at ¶¶ 8-11.

51.     Admitted that the changes to the dispensing fee were made.  The States dispute the use of the term "modest" as Defendants' interpretation, not in the evidence submitted and not a "fact" that can be admitted or denied.

52.     Admitted that concerns have been expressed regarding dispensing fees.  The State counter-designates that Dr. Stratton has not been designated nor qualified as an expert in this area and deny that proper foundation was not laid for his testimony.

53.     Admitted that the quotations are accurate reproductions of language in the documents cited.  The State counter-designates Buska Decl. at ¶ 11; Poulsen Decl. at ¶¶ 8-11 as providing details of why the reimbursement rates were set at the levels they were.

54.     Admitted that the quotations are accurate reproductions of language in the documents cited.  The State incorporates its responses to Def. L.R. 56.1 Stmt. ¶¶ 51-53.

55.     Admitted that the quotations are accurate reproductions of language in the documents cited.  The State incorporates its responses to Def. L.R. 56.1 Stmt. ¶¶ 51-54.

56.     Admitted that the quotations are accurate reproductions of the deposition transcript.  The State incorporates its responses to Def. L.R. 56.1 Stmt. ¶¶ 51-55.

57.     Denied.  The State disputes the survey as inadmissible hearsay evidence not subject to any exception.

58.     Admitted that the quotation is an accurate reproduction of language in the document cited.  The State disputes the survey as inadmissible hearsay evidence not subject to any exception.

001534-15 159641 V1

59.     Admitted that the quotation is an accurate reproduction of language in the document cited.  The State disputes the survey as inadmissible hearsay evidence not subject to any exception.

60.     Admitted that the quotation is an accurate reproduction of language in the document cited.  The State disputes the survey as inadmissible hearsay evidence not subject to any exception.

61.     Denied.  The State disputes that pharmacists "consistently complained that Montana Medicaid's dispensing fee was too low to cover their costs."  The State disputes that the evidence submitted (four surveys) supports the statement in Def. L.R. 56.1 Stmt. at ¶ 61 or any other generalizations.  The surveys submitted are hearsay and incomplete.

62.     Disputed.  The State objects to Def. Ex. 48 because it is a composite of documents from two different decades.  The State cannot determine what the studies "concluded" and how those conclusions were qualified because the reports are incomplete.

63.     Denied.  The State counter-designates other testimony about why rates were set as they were in their response to Def. L.R. 56.1 Stmt. ¶ 53.

64.     Denied.  The State counter-designates that there is no evidence that pharmacies and providers withdrew when reimbursement rates were reduced.

65.     Denied.  The State counter-designates that the testimony reflects the fact that the so-called consideration was the result of one State employee's "brainstorm."  Burnett Tr. at 86-87 ("I recall it as my own idea . . . brainstorming.") (Breckenridge Decl. Ex. 10).  The State further counter-designates that Ms. Burnett's testimony of conclusions drawn by other State personnel was vague and not corroborated by the other personnel, both of whom were deposed. *Id*.

66.     Denied.  The State counter-designates evidence that Montana Medicaid's use of AWP less 10% in its reimbursement methodology was the State's good faith effort to approximate EAC.  Poulsen Decl. at ¶ 8, 11; Buska Decl. at ¶ 11; Poulsen Tr. at 119, 122 (Breckenridge Decl. Ex. 6).

67.     Admitted.

68.     Admitted that the Amendment to ARM 37.86.1101 proposed changing the EAC, among other things.

69.     Admitted.

70.     Admitted.

71.     Admitted that Montana Medicaid settled on AWP -15 % and it met budgetary constraints.  Deny that this was the reason for settling on AWP -15 %.  The State counter-designates evidence showing State considerations, including the expectation that the State was approximating EAC:  Buska Decl. at ¶ 11; Poulsen Decl. at ¶¶ 8-11; Chappuis Tr. at 82:2-15 (Breckenridge Decl. Ex. 3); Buska Tr. at 347:9-348:3 (Breckenridge Decl. Ex. 5).

72.     Denied.  The State incorporates its response to Def. L.R. 56.1 Stmt. ¶ 71.

73.     Admitted that the State raised its dispensing fee in 2002.  Denied that the quotation appears in Def. Ex. 52 or elsewhere in the document.  The concept may appear in a comment to the rule change but this is not attributable to Montana Medicaid and is, besides, hearsay.

74.      Admitted that this is an accurate quotation of the transcript cited.   The State counter-designates the fact that Dr. Stratton has not been designated nor qualified as an expert in this area and denies that proper foundation was laid for this testimony.

75.     Admitted that this is an accurate quotation of the document cited.  The State disputes the survey as inadmissible hearsay.

76.     Denied.  No provider has testified to this fact.  It is hearsay not subject to any exception.

77.     Admitted the first sentence.  Admitted that the quotation is an accurate reproduction of the transcript cited.

78.     Admitted that Montana Medicaid has elected to retain an AWP-based system.  The State counter-designates the following evidence reflecting the reasons why.  Buska Decl. ¶¶ 12-14.  Denies that it has "repeatedly chosen" not to go below the 15% discount off of AWP.

79.     Denied.  The State incorporates its response to Def. L.R. 56.1 Stmt. ¶ 78.

80.     Admitted.

81.     Admitted.

82.     Admitted that First DataBank publishes AWP.  The State denies knowledge as to WAC and objects that the testimony designated does not refer to WAC.

83.     Denied.  The cited testimony neither contains the quoted language nor supports the proposition.  The State counter-designates Morgan Tr. at 39:10-22 (FDB's Morgan testifies that when she refers to AWP as a "benchmark price" she means "average" price) (Breckenridge Decl. Ex. 13).  The State counter-designates that FDB states varying interpretations of the term "AWP" over the years.  The State further counter-designates that there is no evidence that the State had knowledge of FDB's position on this topic.  The select FDB testimony submitted by Defendants here is inadmissible hearsay in this case.

84.     Admitted.  The State counter-designates that there is no evidence that the State had knowledge of First Data Bank's position on this topic.  Moreover, the select FDB testimony

submitted by Defendants here is inadmissible hearsay in this case.  The State incorporates by reference its response to Def. L.R. 56.1 Stmt. ¶ 83.

85.     Admitted, but the State also counter-designates testimony reflecting Medicaid understanding that the data came from drug manufacturers.  *See infra* at ¶¶ 137-39.

86.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

87.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

88.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

89.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

90.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

91.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

92.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

93.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

94.     The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

95.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

96.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

97.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

98.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

99.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

100.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

101.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

102.    The State is not pursuing TPP damages, thus this evidence is irrelevant and inadmissible.

103.    Admitted that Medicaid providers submit claims to Montana Medicaid on MA-5 and HCFA-1500 forms.  Deny that "these forms set the nature of the claim, the provider's charge for the drug, and the reimbursement sought."  The State counter-designates that the nature of the claim is set by the type of transaction being submitted; the provider's charge for the drug is set by the provider; the reimbursement is determined by the prevailing reimbursement methodology.

104.    Denied.  The State counter-designates that it has no way to know if the information submitted by providers was false.

105.     Admitted.

106.     Denied.  The statement attributed to Nancy Ellery relates to the establishment of a Medicaid Fraud Control Unit and ***not the Medicaid Fraud statute***.

107.     Denied.

108.     Denied.  The proposition is opinion testimony of Defendants' expert, not fact. Ex. 33 does not support the proposition.  The State counter-designates the following testimony: Poulsen Tr. at 151:22-152:6, 152:11-13, 182:22-183-5 (detailing the inability of Montana providers to obtain a direct price) (Breckenridge Decl. Ex. 6).

109.     Denied.  The State counter-designates Ms. Brunett's testimony qualifying her testimony and stating this is not true for all J-Codes.  The State further counter-designates the Hartman Declaration at ¶ 22(c) (cross-walking J-Codes for multi-source drugs).  Denied that the Buska testimony supports the proposition.  The State cannot locate the Poulsen reference, it was not included.

110.     Admitted the first proposition, denied otherwise.  The State counter-designates the Hartman Decl. (Breckenridge Decl. Ex. 1).

111.     Denied.

112.     Denied.  The State counter-designates Ms. Brunett's testimony that she did not know what happened before she started in 2001 and did not seek that information.  Brunett Tr. at 40, 45, 96 (Breckenridge Decl. Ex. 10).

113.     Denied.  The State incorporates its response to Def. L.R. 56.1 Stmt. ¶ 112.  The State states that the designated Brunett testimony is not included as part of O'Sullivan Decl., Ex. 2.

- 16 -

114.    Admitted that the State did not collect any rebates in Physician-Administered Drugs until March 2006.

115.    Denied.

116.    Denied.

117.    Admitted that the State received ASP data provided by three defendants: AstraZeneca, Bayer, and TAP on a periodic basis.  The State counter-designates testimony reflecting the limited receipt and usability of the information:  Buska Decl. at ¶¶ 32-36.

118.    Denied.  The State adopts its response to Def. L.R. 56.1 Stmt. ¶ 117.  The State further counter-designates the fact that Shannon Marr did not testify about this document.

119.    Admitted that the State did not use the data for Medicaid reimbursements.  The State adopts its counter-designation to Def. L.R. 56.1 Stmt. ¶ 117.

120.    Admitted that the quotation is an accurate reproduction of information in an email sent by Ray Hanley of Arkansas, otherwise denied.  Hearsay.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Admitted that the quotation is an accurate reproduction of the transcript cited.

125.    Denied.  The evidence submitted as Def. L.R. 56.1 Stmt. ¶ 71, Ex. 71 does not support the proposition.  The State counter-designates that there is no evidence that it knows the statistics on state MAC programs.

126.    Admitted.

127.    Admitted.

128.     Denied.  The State counter-designates that Preshinger stated that this was one consideration.

129.     Admitted.

130.     Admitted.

131.     Admitted.

132.     Denied.  The State counter-designates Preshinger Tr. 65:17-21 (reflecting he could not recall whether providers even complained) (Breckenridge Decl. Ex. 12).

133.     Admitted that this is an accurate reproduction of one provider's comment. Denied that the comment extended to other providers.  The State counter-designates the fact that Defendants have not submitted evidence that provider complaints were widespread.

134.     Admitted that this is an accurate reproduction of one provider's comment. Denied that the comment extended to other providers.  The State counter-designates the fact that Defendants have not submitted evidence that provider complaints were widespread.

135.     Admitted that this is an accurate reproduction of the document cited.

136.     Denied.

**B.     Additional Facts Relied Upon by Montana in Response to Defendants Motion for Summary Judgment**

137.     Each of the Defendants caused AWPs to be published for their Subject Drugs in one of two ways:  (i) by sending an AWP or "suggested" AWP directly to a publisher; *or* (ii) by submitting wholesale list price ("WLP"), wholesale acquisition cost ("WAC") or Direct Price ("DP") to the publisher – with the knowledge that the publisher would mark that price up (usually by either 20% or 25%) to achieve the reported AWP.  Company insiders have testified to these practices at trial and at depositions and internal industry documents reflect the same. *See* MT Summ. J. Ex. 2 (Trial Tr. Day 5 at 14 (Buckanavage) ("Q:  And so you felt that

AstraZeneca had the ability to set its own AWP, correct?  A:  At that time we submitted those

prices to the pricing services."), and at 34:3-9 ("THE WITNESS:  At that time we reported both

to the pricing services.  THE COURT:  You reported - THE WITNESS:  Both WAC and AWP.

THE COURT:  So you decided what AWP was, not the publication?  THE WITNESS:  At that

time, that's correct.")).  *See also* MT Summ. J. Ex. 3 at AZ0419345-348 (Document entitled

Medicare Review stating that "To date, Medicare has not influenced the AWP of any medication

that qualifies for reimbursement.  Companies have the latitude to set AWP as they wish.").  Once

a new or revised AWP was approved, AstraZeneca would inform the publishers.  MT Summ. J.

Ex. 2 (Trial Tr. Day 5 at 17 (Buckanavage) (Q:  "Now you understood then that your AWP price

would be reported by AstraZeneca to the Red Book, correct?  A: Yes.")).  BMS did not send

AWPs directly to the publishers.  Instead, BMS sent to the publishers a wholesale list price

(WLP) or direct price, which the publishers predictably marked up from 20% to 25% to derive

the AWP.  MT Summ. J. Ex. 4 (Trial Tr. Day 4 at 55, 59 (Kaszuba)).  Kaszuba was responsible,

since 1991, for communicating BMS's wholesale list prices to customers and the *Red Book, First

DataBank* and *MediSpan*.  *Id*. at 52 (Kaszuba).  As Plaintiffs' expert opined in the Class case,

there is a well understood formulaic relationship between AWP and WLP.  They are functional

equivalents in that reporting either to the publishers implies that the other price is set

automatically.  "AWP and WAC [or WLP] are 'interchangeable' since the two list prices are

usually related by a constant ration and convey the same information to purchasers and other

entities that rely on published price data."  MT Summ. J. Ex. 5 (Direct Testimony of Raymond S.

Hartman) ("Hartman Direct"), ¶ 44.  J&J predecessor CNTO knew that the publishers would

simply republish what CNTO provided them.  MT Summ. J. Ex. 6 (Deposition of Carol Webb

("Webb Tr.") at 56); *see also* MT Summ. J. Ex. 7 (where CNTO discusses "setting" the AWP,

not recommending or suggesting an AWP). OBI witnesses testified that they could not recall a single instance when the actual AWP prices provided by OBI were not published. *See*, *e.g.*, MT Summ. J. Ex. 6 (Webb Tr. at 66:16-21, 67:1-8); MT Summ. J. Ex. 8 (Deposition of Thomas Hiriak ("Hiriak Tr.") (July 28, 2004) at 214:18-215:1); MT Summ. J. Ex. 9 (Deposition of Elaine Kling ("Kling Tr.") at 103:2-5, 115:21-22, 116:1-22). Schering-Plough reported the AWPs for its branded drugs to the publishers of pharmaceutical industry pricing guides such as *Red Book* and *Price Alert* for publication in those guides. MT Summ. J. Ex. 10 (Deposition of Harvey J. Weintraub, February 12, 2003 ("Feb. 2003 Weintraub Tr.") at 429:23-431:1); MT Summ. J. Ex. 11 ("As you know, Pharmaceutical Manufacturers publish AWPs (Average Wholesale Prices) for reimbursement purposes. Most manufacturers (including Schering) report AWPs at NDP [net direct price] plus 20%.").

138.    The reporting practices of other, non-trial drug manufacturer defendants were the same. *See*, *e.g.*, MT Summ. J. Exs. 12 and 13 (The Fujisawa Group controlled and set the AWPs for all of its drugs through direct communications with industry compendia. Fujisawa documents confirm Fujisawa knowledge of compendium pricing and concern about how to increase the prices published to even higher levels.) (FJ-MDL 8346) (BBMDL FJ-MDL 015152-59); MT Summ. J. Ex. 14 (Immunex used the "AWP Product Pricing guide," which listed each Immunex drug, along with its dose, NDC number and AWP per *Red Book*) (IAWP112178-81); MT Summ. J. Ex. 15 (Immunex periodically provided Pricing Guides to the publishers or otherwise provided AWPs) (IAWP002632; IAWP109826); MT Summ. J. Ex. 16 (SICOR 00753-57, SICOR 02259-65, SICOR 00885-903; SICOR 00947-48, SICOR 00955-58, SICOR 00962, SICOR 00982-83, SICOR 00987-88); MT Summ. J. Ex. 17 (BAY005278); MT Summ. J. Ex. 18 (Armour Pharmaceutical circulates AWPs list sent to *First DataBank* and states that listing

AWPs was "consistent with industry practice.") (ABAWP 005005-11); MT Summ. J. Ex. 19

(Armour Pharmaceutical send pricing update, including AWPs, to *Red Book*) (ABAWP005163-

71); MT Summ. J. Ex. 20 (Centeon reporting price changes to *First DataBank*) (ABAWP

008440); MT Summ. J. Ex. 21 (2003 email string with price list submitted to publishers)

(EDEY-LABS-0022217-22); MT Summ. J. Ex. 22 (2003 email, Dey writes:  "[A]s a reminder,

we (the Contracts Dept.) sends WAC & AWP information on all our products to First Databank

(FDB).  Every month we receive a report from FDB that lists all our products and their AWP.

So far (within the last three months), I have not found any discrepancies with the prices being

reported by FDB in our report and our published AWP.") (EDEY-LABS 0022187-93); MT

Summ. J. Ex. 23 (Pharmacia chart reflecting Pharmacia & Upjohn reporting of AWP information

to publishers) (PH 025785-94 at PH 025792).  *See also* MT Summ. J. Ex. 36, ¶ 6 (Aventis, Inc.);

MT Summ. J. Ex. 37, ¶ 6 (Aventis Behring); MT Summ. J. Ex. 38, ¶¶ 6, 366 (BMS); MT

Summ. J. Ex. 54 (Dey Answer to Mont. SAC (Dkt. No. 919), ¶ 388); MT Summ. J. Ex. 39, ¶¶ 6,

412 (Fujisawa); MT Summ. J. Ex. 55 (Immunex Answer to Mont. SAC (Dkt. No. 899), ¶¶ 5, 6);

MT Summ. J. Ex. 40, ¶ 6, 438 (J&J); MT Summ. J. Ex. 56 (Schering-Plough Answer to Mont.

SAC (Dkt. No. 901), ¶¶ 6, 534); MT Summ. J. Ex. 44, ¶ 6 (Sicor).

139.     Through this system, each Defendant directly controlled what the AWP would be.

140.     The record shows that drug manufacturers were aware of Montana's and other

states use of AWP for reimbursement purposes.  MT Summ. J. Ex. 24 (Direct Testimony of

Julie-Ann G. Tracy, ¶ 6); *see also* MT Summ. J. Ex. 25 (Deposition of Christopher Iacono

("Iacono Tr."), Vol. I at 126:21-127:16 (the Vice President of Marketing at AstraZeneca

(testifying that it is his "general understanding" that AWP was the benchmark for reimbursement

from Third-Party Payors)).  MT Summ. J. Ex. 26 (Deposition of Dianne Ihling ("Ihling Tr."), at

90-93, 117-18); MT Summ. J. Ex. 2 (Trial Tr. Day 5 at 142 (Marré)); MT Summ. J. Ex. 27

(Marré Trial Aff., ¶ 10).  MT Summ. J. Ex. 4 (Trial Tr. Day 4 at 62-64 (Kaszuba)); MT Summ. J.

Ex. 28 (Deposition of John Akscin ("Akscin Tr."), at 26-27); MT Summ. J. Ex. 29 (Deposition

of Marsha Peterson ("Peterson Tr."), at 114-15); MT Summ. J.  Ex. 40 Centocor (CNTO), which

manufactures, markets and sells Remicade, and Ortho Biotech Products, L.P. (OBI), which

markets and sells Procrit, are both corporations that are wholly owned by the parent company

Johnson & Johnson (J&J); MT Summ. J. Ex. 9 (Kling Tr. at 105:2-6); MT Summ. J. Ex. 6

(Webb Tr. at 67:9-22, 68:1-9); MT Summ. J. Ex. 30 (Deposition of Richard W. Zahn,

January 15, 2003 ("Zahn Tr.") at 173:1-23); MT Summ. J. Ex. 31 (Deposition of Debra Kane,

June 15, 2004 ("Kane Tr.") at 34:7-11 ("[AWP] is a price that is used for reimbursement

purposes. . . .")); MT Summ. J. Ex. 32 (RGX0315084-141, at 0315084); *e.g.*, MT Summ. J.

Ex. 33 (Trial Tr. Day 18 at 29 (Weintraub)); MT Summ. J. Ex. 10 (Feb. 2003 Weintraub Tr. at

655:10-13); MT Summ. J. Ex. 33 (Trial Tr. Day 18 at 25-26 (Weintraub)).

141.    All Defendants shared the same understanding that States and other payors based

their drug reimbursement on reported AWPS.  This is reflected in Defendants Answers to this

lawsuit.  *See*, *e.g.*, MT Summ. J. Ex. 34 (Abbott Answer to SAC (Dkt. No. 900), ¶ 5); MT

Summ. J. Ex. 35 (AstraZeneca Answer to Montana SAC (Dkt. No. 896), ¶ 5); MT Summ. J.

Ex. 36 (Aventis Pharmaceutical, Inc. Answer to Montana SAC (Dkt. No. 912), ¶¶ 5, 162); MT

Summ. J. Ex. 37 (Aventis Behring LLC's Answer to Mont. SAC (Dkt. No. 916), ¶ 5); MT

Summ. J. Ex. 38 (BMS Answer to Mont. SAC (Dkt. No. 914), ¶ 5); MT Summ. J. Ex. 39

(Fujisawa Answer to Mont. SAC (Dkt. No. 898), ¶¶ 5, 162); MT Summ. J. Ex. 40 (J&J Answer

to Mont. SAC, ¶¶ 5, 162); MT Summ. J. Ex. 41 (Novartis Answer to Mont. SAC (Dkt. No. 911),

¶ 5); MT Summ. J. Ex. 42 (Pfizer Answer to Mont. SAC (Dkt. No. 908), ¶ 5); MT Summ. J.

Ex. 43 (Pharmacia Answer to Mont. SAC (Dkt. No. 909), ¶ 5); MT Summ. J. Ex. 44 (Sicor Answer to Mont. SAC (Dkt. No. 932), ¶ 5); MT Summ. J. Ex. 57 (TAP Answer to Mont. SAC (Dkt. No. 930), ¶ 5).

142.    This understanding is also reflected in other internal defense documents. *See*, *e.g.*, MT Summ. J. Ex. 45 (Aventis compiles Medicaid and Medicare "Reimbursement Information by State," including "Payment Methodology," for Nevada and numerous other states) (AV-AAA-005243-92); MT Summ. J. Ex. 46 (Immunex communicated prices directly to industry compendia) (IAWP023473; IAWP008102; IAWP016500); MT Summ. J. Ex. 47 (Dey discusses HCFA pricing) (EDEY-LABS-0018690, 18688, EDEY-LABS-0000307-08); MT Summ. J. Ex. 48 (Dey discussing Medicaid reimbursement) (EDEY-LABS-0010325-28); MT Summ. J. Ex. 23 (Pharmacia power point presentation defining AWP as "an artificial pricing index that is used as a common basis for third-party reimbursement to pharmacists and physicians" (PH 025785-94 at 025785, 025793)).

143.    The State could not have determined the spreads between acquisition costs and AWP because true drug prices were considered confidential by the defendant drug manufacturers that were neither publicly revealed nor disclosed to the government or other payors.  Defendants' marketing of the spread to providers was also treated as confidential information.  Plaintiffs' Post Trial Findings of Fact at ¶¶ 77-82, ¶¶ 130-33, ¶¶ 239-51.

144.    Montana Medicaid had no knowledge of the magnitude of the spreads between acquisition cost and AWP until after this lawsuit was filed.  Buska Decl. ¶¶ 19-29.

By_____/s/ Steve W. Berman_____        DATED:  March 22, 2007
Steve W. Berman
Sean R. Matt
Jeniphr A.E. Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Boston, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

COUNSEL FOR PLAINTIFF
STATE OF MONTANA

001534-15 159641 V1

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **STATE OF MONTANA'S RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on March 22, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.


By_____/s/ Steve W. Berman_____
    Steve W. Berman
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    (206) 623-7292

001534-15  159641 V1