**BRECKENRIDGE DECL. EXHIBIT 14**

LEXSTAT MONT. ADMIN. R. 37.86.1101

ADMINISTRATIVE RULES OF MONTANA

\*\*\* THIS DOCUMENT IS CURRENT THROUGH MARCH 9, 2007 \*\*\*

TITLE 37: DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES
CHAPTER 86: MEDICAID PRIMARY CARE SERVICES
SUB-CHAPTER 11: OUTPATIENT DRUG SERVICES

*MONT. ADMIN. R. 37.86.1101* (2007)

37.86.1101 OUTPATIENT DRUGS, DEFINITIONS

(1) "Estimated acquisition cost (EAC)" means the cost of drugs for which no maximum allowable cost (MAC) price has been determined. The EAC is the department's best estimate of what price providers are generally paying in the state for a drug in the package size providers buy most frequently. The EAC for a drug is:

(a) the direct price (DP) charged by manufacturers to retailers;

(b) if there is no available DP for a drug or the department determines that the DP is not available to providers in the state, the EAC is the average wholesale price (AWP) less 15%; or

(c) the department may set an allowable acquisition cost for specified drugs or drug categories when the department determines that acquisition cost is lower than (1)(a) or (b) based on data provided by the drug pricing file contractor.

(2) "Legend drugs" means drugs that federal law prohibits dispensing without a prescription.

(3) "Maximum allowable cost (MAC)" means the upper limit the department will pay for multi-source drugs. In order to establish base prices for calculating the maximum allowable cost, the department hereby adopts and incorporates by reference the methodology for limits of payment set forth in 42 CFR 447.331 and 447.332 (1996). The maximum allowable cost for multi-source drugs will not exceed the total of the dispensing fee established by the department and an amount that is equal to the price established under the methodology set forth in 42 CFR 447.331 and 447.332 for the least costly therapeutic equivalent that can be purchased by phar- macists in quantities of 100 tablets or capsules or, in the case of liquids, the commonly listed size. If the drug is not commonly available in quantities of 100, the package size commonly listed will be the accepted quantity. A copy of the above-cited regulations may be obtained from the Department of Public Health and Human Services, Health Policy and Services Division, 1400 Broadway, P.O. Box 202951, Helena, MT, 59620-2951.

(4) "Outpatient drugs" means drugs which are obtained outside of a hospital.

(History: *Sec. 53-2-201* and *53-6-113, MCA*; IMP, *Sec. 53-2-201, 53-6-101, 53-6-111* and *53-6-113, MCA*; NEW, 1998 MAR p. 495, Eff. 2/13/98; TRANS, from SRS, 2000 MAR p. 481; AMD, 2000 MAR p. 2313, Eff. 8/25/00; AMD, 2002 MAR p. 1788, Eff. 6/28/02.)

LEXSTAT MONT. CODE ANNO., § 1-1-201(1)(B)

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH JANUARY 3, 2007 ***

TITLE 1  GENERAL LAWS AND DEFINITIONS
CHAPTER 1  GENERAL PROVISIONS
PART 2  GENERAL DEFINITIONS OF TERMS USED IN CODE

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 1-1-201 (2005)*

1-1-201  Terms of wide applicability.

(1) Unless the context requires otherwise, the following definitions apply in the Montana Code Annotated:

(a)  "Oath" includes an affirmation or declaration.

(b)  "Person" includes a corporation as well as a natural person.

(c)  "Several" means two or more.

(d)  "State", when applied to the different parts of the United States, includes the District of Columbia and the territories.

(e)  "United States" includes the District of Columbia and the territories.

(2) Wherever the word "man" or "men" or a word which includes the syllable "man" or "men" in combination with other syllables, such as "workman", appears in this code, such word or syllable shall be deemed to include "woman" or "women" unless the context clearly indicates a contrary intent and unless the subject matter of the statute relates clearly and necessarily to the male sex only.

(3) Whenever the term "heretofore" occurs in any statute, it shall be construed to mean any time previous to the day such statute shall take effect. Whenever the word "hereafter" occurs, it shall be construed to mean the time after the statute containing the term shall take effect.

**HISTORY:** (1)En. Sec. 16, Pol. C. 1895; re-en. Sec. 16, Rev. C. 1907; amd. Sec. 4, Ch. 4, L. 1921; re-en. Sec. 16, R.C.M. 1921; Cal. Pol. C. Sec. 17; re-en. Sec. 16, R.C.M. 1935; amd. Sec. 1, Ch. 25, L. 1947; amd. Sec. 11-114, Ch. 264, L. 1963; amd. Sec. 3, Ch. 309, L. 1977; Sec. 19-103, R.C.M. 1947; (2)En. 12-216 by Sec. 61, Ch. 535, L. 1975; Sec. 12-217, R.C.M. 1947; (3)En. Sec. 4670, Civ. C. 1895; re-en. Sec. 6232, Rev. C. 1907; re-en. Sec. 8782, R.C.M. 1921; re-en. Sec. 8782, R.C.M. 1935; Sec. 19-104, R.C.M. 1947; R.C.M. 1947, 12-217, 19-103(part), (6), (7), (14), (27), (29), 19-104.

**NOTES:**

Part Cross-References

Mont. Code Anno., § 1-1-201

See "Words and Phrases Defined in Code", MCA General Index.

Cross-References

General definitional rules -- verb tense, gender, and number, *1-2-105*.

Case Notes

*State as a Person:*  The state was properly held to be a "person" where such construction of the statute was beneficial to the state and general public by permitting recovery of limited amounts paid through ADC for the support and necessaries of children. *Dept. of Social & Rehabilitation Services v. Hultgren, 168 M 257, 541 P2d 1211 (1975).*

*Logging Corporation Not a Person:*  A logging corporation acting in the capacity of an independent contractor is not a "person" as set forth in *71-3-601* and is not entitled to a loggers' lien thereunder. *Jack Long Logging Co. v. Pyramid Mtn. Lumber, Inc., 143 M 87, 387 P 712 (1963).*

*Corporation as a Person:*  Though the term "person" ordinarily refers to a living human being--a natural person--the definition given it by this section and other sections of the Codes includes corporations as well as natural persons. *In re Beck's Estate, 44 M 561, 121 P 784 (1912).*

**NOTES:**

Attorney General's Opinions

*"United States":*  As used in this section, "United States" includes the District of Columbia, Puerto Rico, and the Virgin Islands. *28 A.G. Op. 35 (1959).*

Collateral References

Statutes [Key number] 199, 234  1/2, 261, et seq.

82 C.J.S. Statutes §§ 319, 338, 412.

LEXSTAT MONT. CODE ANN. SECTION 53-6-160

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH JANUARY 3, 2007 ***

TITLE 53  SOCIAL SERVICES AND INSTITUTIONS
CHAPTER 6  HEALTH CARE SERVICES
PART 1  MEDICAL ASSISTANCE -- MEDICAID

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 53-6-160* (2005)

53-6-160  Truthfulness, completeness, and accuracy of submissions to medicaid agencies.

(1) A person who submits to a medicaid agency an application, claim, report, document, or other information that is or may be used to determine eligibility for medicaid benefits, eligibility to participate as a provider, or the right to or the amount of payment under the medicaid program is considered to represent to the department, to the best of the person's knowledge and belief, that the item is genuine and that its contents, including all statements, claims, and representations contained in the document, are true, complete, accurate, and not misleading.

(2) (a) A provider has a duty to exercise reasonable care to ensure the truthfulness, completeness, and accuracy of all applications, claims, reports, documents, and other information and of all statements and representations made or submitted, or authorized by the provider to be made or submitted, to the department for purposes related to the medicaid program. The duty applies whether the applications, claims, reports, documents, other information, statements, or representations were made or submitted, or authorized by the provider to be made or submitted, on behalf of the provider or on behalf of an applicant or recipient being served by the provider.

(b) A provider has a duty to exercise reasonable care to ensure that a claim made or submitted to the department or its agents or employees for payment or reimbursement under the medicaid program is one for which the provider is entitled to receive payment and that the service or item is provided and billed according to all applicable medicaid requirements, including but not limited to identification of the appropriate procedure code or level of service and provision of the service by a person, facility, or other provider entitled to receive medicaid payment for the particular service.

(3) A person is considered to have known that a claim, statement, or representation related to the medicaid program was false if the person knew, or by virtue of the person's position, authority, or responsibility should have known, of the falsity of the claim, statement, or representation.

(4) A person is considered to have made or to have authorized to be made a claim, statement, or representation if the person:

(a) had the authority or responsibility to:

(i) make the claim, statement, or representation;

(ii) supervise another who made the claim, statement, or representation; or

(iii) authorize the making of the claim, statement, or representation, whether by operation of law, business or

Mont. Code Anno., § 53-6-160

professional practice, or office policy or procedure; and

(b)  exercised or failed to exercise that authority or responsibility and, as a direct or indirect result, the false statement was made, resulting in a claim for a service or item when the person knew or had reason to know that the person was not entitled under applicable statutes, regulations, rules, or policies to medicaid payment or benefits for the service or item or for the amount of payment requested or claimed.

(5)  (a) There is an inference that a person who signs or submits a document to a medicaid agency on behalf of or in the name of a provider is authorized by the provider to do so and is acting under the provider's direction.

(b)  For purposes of this section, the term "signs" includes but is not limited to the use of facsimile, computer-generated and typed, or block-letter signatures.

(6)  The department shall directly or by contract provide a program of instruction and assistance to persons submitting applications, claims, reports, documents, and other information to the department concerning the completion and submission of the application, claim, report, document, or other information in a manner determined necessary by the department. The program must include:

(a)  clear directions for the completion of applications, claims, reports, documents, and other information;

(b)  examples of properly completed applications, claims, reports, documents, and other information;

(c)  a method by which persons submitting applications, claims, reports, documents, and other information may, on a case-by-case basis, receive accurate, complete, specific, and timely advice and directions from the department before the completed applications, claims, reports, documents, and other information must be submitted to the department; and

(d)  a method by which persons submitting applications, claims, reports, documents, and other information may challenge the department's interpretation or application of the manner in which the applications, claims, reports, documents, and other information must be completed.

(7)  This section applies only for the purpose of civil liability under Title 53 and does not apply in a criminal proceeding.

**HISTORY:** En. Sec. 6, Ch. 354, L. 1995.

**NOTES:**

Title Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Part Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Families Achieving Independence in Montana (FAIM) -- financial assistance, Title 53, ch. 4, part 2.

Part Compiler's Comments

*Study of Conversion to Private Coverage:*  Chapter 523, L. 1995, requires the Department of Social and Rehabilitation Services (now Department of Public Health and Human Services) to, if sufficient funds are available from public and private sources, contract with the Legislative Auditor for a study of the conversion and

cost-effectiveness of converting Medicaid to a combined private insurance and medical savings accounts program. After the study is completed, if the Office of Budget and Program Planning decides that conversion would be cost-effective, the Department must apply to the United States government for a waiver of Medicaid statutes and rules and, if the waiver is granted, convert Medicaid to a combined private insurance and medical savings accounts program. The act is effective July 1, 1995, and terminates October 1, 1996.

Compiler's Comments

*Severability:* Section 18, Ch. 354, L. 1995, was a severability clause.

*Effective Date:* Section 19(1), Ch. 354, L. 1995, provided that this section was effective on passage and approval. Approved April 11, 1995.

Chapter Administrative Rules

*Title 37, chapter 40, ARM* Senior and long-term care services.

*Title 37, chapter 49, ARM* IV-E foster care services.

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Administrative Rules

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 83, ARM Medicaid for certain Medicare beneficiaries and others.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Case Notes

*Implied Contracts -- Medicaid Payments:* The principle underlying the implied contract doctrine is that one person should not be permitted to be unjustly enriched at the expense of another but should be required to make restitution for property or benefits received where it is just and equitable that such restitution be made and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. The circumstances on the record do not justify payment be made on any formula other than the "reasonable costs" formula as set forth in federal Medicaid statutes and regulations. *Flathead Health Center v. Flathead County, 183 M 211, 598 P2d 1111, 36 St. Rep. 1465 (1979).*

**NOTES:**

Title Law Review Articles

Equality in Basic Needs and Services: Constitutional Right to Subsidy and Sharing. Welfare Rights in a Constitutional Democracy. F. I. Michelman. Commentary. R. H. Bork, B. Levin, S. F. Appleton; Panel discussion. Reaching the Private Sphere; Schools, Clubs, Monopolies. Changing Concepts of Equality: From Equality Before the Law to the Welfare State. R. K. Winter, Jr.; Commentary. J. H. Choper, M. B. Wilson; Panel discussion. Wash. U.L.Q. 1979: 659 through 793 (Summer 1979).

Part Law Review Articles

Between Welfare Medicine and Mainstream Entitlement: Medicaid at the Crossroads, Grogan & Patashnik, 28 J. Health Pol., Pol'y & L. 821 (2003).

Get Medicaid Without Giving Up the Farm: A Medicaid Applicant Can Keep His Home and His Eligibility, Sandoval, 142 Tr. & Est. 29 (2003).

Medicaid Eligibility Rules, Knoepfle, 34 Tax Adviser 354 (2003).

Medicaid Eligibility Rules for the Elderly Long-Term Care Applicant: History and Developments, 1965-1998, Ahmad, *20 J. Legal Med. 251 (1999)*.

Balancing the Budget on the Backs of American's Elderly--Section 4734 of the Balanced Budget Act: Criminalization of the Attorney's Role as Advisor and Counselor, Miller, *29 U. Mem. L. Rev. 165 (1998)*.

Criminal Penalty for Assisting With Medicaid Planning Transfers, Coplan, 29 Tax Adviser 17 (1998).

Long-Term Care Financing Crisis--Recent Federal and State Efforts to Deter Asset Transfers as a Means to Gain Medicaid Eligibility, Reich, *74 N.D.L. Rev. 383 (1998)*.

A Creative Strategy for Protecting the Home for Medicaid Purposes, Bove, *24 Est. Plan. 22 (1997)*.

Advising the Elder Client: Trusts and Medicaid Eligibility, Barrett, *43 Prac. Law. 57 (1997)*.

Legal Issues in Securing Home Health Services Under Medicare and Medicaid (Elder Law), Bogart, Chilin, Gottlich, & Stein, *31 Clearinghouse Rev. 199 (1997)*.

The Welfare Law and Its Effects on Medicaid Recipients, *30 Clearinghouse Rev. 1008 (1997)*.

Medicaid Reform: Saving an American Success Story, Graham, *23 Fla. St. U.L. Rev. 917 (1996)*.

Medicaid and the Elderly Poor--A Second Look at the Medicare Catastrophic Coverage Act: Transfer of Assets and Spousal Impoverishment, Finberg & Nemore, *25 Clearinghouse Rev. 1316 (1992)*.

Symposium on Medical Cost Containment, 3 Notre Dame J.L., Ethics, & Pub. Pol'y (1988).

Equal Protection Problems With Welfare Fraud Prosecution (Special Issue: Poverty Law), Collin & Hemmons, *33 Loy. L. Rev. 17 (1987)*.

Health Care Delivery and the Elderly: Teaching Old Patients New Tricks, Kapp, *17 Cum. L. Rev. 437 (1987)*.

Medicare Regulations--Judicial Review, *12 Am. J.L. & Med. 162 (1987)*.

Mont. Code Anno., § 53-6-160

Part Collateral References

Social Security and Public Welfare [Key number] 241.

81 C.J.S. Social Security and Public Welfare § 126, et seq.

*79 Am. Jur. 2d Welfare Laws §§ 33* through *38.*

Supreme Court's views as to construction and application of Medicaid Act *(42 USCS §§ 1396* - 1396s). *85 L. Ed. 2d 935,* § 4 b, c .

Grants to States for Medical Assistance Programs, Title 42, ch. 7, subchapter 19, U.S.C.

Montana's Welfare Reform Project: Families Achieving Independence in Montana, FAIM, February 1998 Update, Montana Department of Public Health and Human Services.

Welfare in Montana: A Time for Reform, Interim Report, Mont. Leg. Council (Dec. 1988).

1 of 100 DOCUMENTS

LexisNexis (R) Montana Code Annotated
\*\*\* ARCHIVE DATA \*\*\*

\*\*\* THIS DOCUMENT IS CURRENT THROUGH ALL 2003 LEGISLATION \*\*\*
\*\*\* No legislation enacted in 2004 \*\*\*
\*\*\* ANNOTATIONS CURRENT THROUGH JULY 12, 2005 \*\*\*

TITLE 17  STATE FINANCE
CHAPTER 8  DISBURSEMENT AND EXPENDITURE
PART 2  CLAIMS

*MCA § 17-8-231* (2004)

17-8-231  Liability for false claims.

(1)  A person who knowingly presents or causes to be presented a false, fictitious, or fraudulent claim for allowance or payment to any state agency or its contractors forfeits the claim, including any portion that may be legitimate, and in addition is subject to a penalty of not to exceed $ 2,000 plus double the damages sustained by the state as a result of the false claim, including all legal costs.

(2)  The forfeiture and the penalty may be sued for in the same suit.

**HISTORY:**

En. Sec. 2, Ch. 151, L. 1981.

**NOTES:**

Chapter Cross-References

Prohibited payments, Art. VIII, sec. 14, Mont. Const.

Treasurer to withhold payment, 2-2-206.

Part Cross-References

State insurance plan and tort claims, Title 2, ch. 9.

Board of Examiners -- allocation, 2-15-1007.

Claim settlement by Attorney General, 18-1-412, 18-1-413.

Verification of pleadings, 25-4-203.

Cross-References

False claims to public agencies -- criminal offense, 45-7-210.

**NOTES:**

Attorney General's Opinions

*Penalties for Fraudulent Benefits Claim -- Specific Remedy Controlling Over General Remedy:*  Although 17-8-231 appears to provide a penalty for fraudulent claiming of unemployment insurance benefits, that statute is a general

one which provides a penalty in conflict with the more specific penalty provided under 39-51-3201. Because the more particular statute must control to the extent of any inconsistency, the Department of Labor and Industry is limited to recovery of those amounts of benefits wrongfully received by the claimant. The Department may not sue a claimant for all benefits paid to the claimant or for the additional penalty provided in 17-8-231, but may disqualify the claimant under 39-51-3201 from receipt of future benefits. *40 A.G. Op. 21 (1983).*

Chapter Collateral References

*72 Am. Jur. 2d States §§ 90, 91.*

Inherent power of court to compel appropriation or expenditure of funds for judicial purposes. *59 ALR 3d 569.*

Part Collateral References

Amount of appropriation as limitation on damages for breach of contract recoverable by one contracting with government agency. *40 ALR 4th 998.*

LEXSTAT MCA § 27-1-221

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH JANUARY 3, 2007 ***

TITLE 27  CIVIL LIABILITY, REMEDIES, AND LIMITATIONS
CHAPTER 1  AVAILABILITY OF REMEDIES -- LIABILITY
PART 2  DAMAGES

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 27-1-221* (2005)

27-1-221  Punitive damages -- liability -- proof -- award.

(1)  Subject to the provisions of *27-1-220* and this section, reasonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice.

(2)  A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:

(a)  deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or

(b)  deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

(3)  A defendant is guilty of actual fraud if the defendant:

(a)  makes a representation with knowledge of its falsity; or

(b)  conceals a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury.

(4)  Actual fraud exists only when the plaintiff has a right to rely upon the representation of the defendant and suffers injury as a result of that reliance. The contract definitions of fraud expressed in Title 28, chapter 2, do not apply to proof of actual fraud under this section.

(5)  All elements of the claim for punitive damages must be proved by clear and convincing evidence. Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. It is more than a preponderance of evidence but less than beyond a reasonable doubt.

(6)  Liability for punitive damages must be determined by the trier of fact, whether judge or jury.

(7) (a)  Evidence regarding a defendant's financial affairs, financial condition, and net worth is not admissible in a trial to determine whether a defendant is liable for punitive damages. When the jury returns a verdict finding a defendant liable for punitive damages, the amount of punitive damages must then be determined by the jury in an immediate, separate proceeding and be submitted to the judge for review as provided in subsection (7)(c). In the separate proceeding to determine the amount of punitive damages to be awarded, the defendant's financial affairs, financial condition, and net worth must be considered.

(b)  When an award of punitive damages is made by the judge, the judge shall clearly state the reasons for making the award in findings of fact and conclusions of law, demonstrating consideration of each of the following matters:

(i)  the nature and reprehensibility of the defendant's wrongdoing;

(ii)  the extent of the defendant's wrongdoing;

(iii)  the intent of the defendant in committing the wrong;

(iv) the profitability of the defendant's wrongdoing, if applicable;

(v) the amount of actual damages awarded by the jury;

(vi) the defendant's net worth;

(vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;

(viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and

(ix) any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

(c) The judge shall review a jury award of punitive damages, giving consideration to each of the matters listed in subsection (7)(b). If after review the judge determines that the jury award of punitive damages should be increased or decreased, the judge may do so. The judge shall clearly state the reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award of the jury in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in subsection (7)(b).

(8) This section is not intended to alter the Montana Rules of Civil Procedure governing discovery of a defendant's financial affairs, financial condition, and net worth.

**HISTORY:** En. Sec. 4290, Civ. C. 1895; re-en. Sec. 6047, Rev. C. 1907; re-en. Sec. 8666, R.C.M. 1921; Cal. Civ. C. Sec. 3294; Field. Civ. C. Sec. 1839; re-en. Sec. 8666, R.C.M. 1935; R.C.M. 1947, 17-208; amd. Sec. 2, Ch. 507, L. 1985; amd. Sec. 2, Ch. 627, L. 1987; amd. Sec. 33, Ch. 16, L. 1991; amd. Sec. 1, Ch. 328, L. 1997; amd. Sec. 1, Ch. 121, L. 2003.

## NOTES:

Part Cross-References

Periodic payment of certain future damages, Title 25, ch. 9, part 4.

Limitation on liability for compliance with income withholding order, *40-5-424*.

Cross-References

State or other governmental entity immune from exemplary and punitive damages, *2-9-105*.

Insurance coverage of punitive damages, *33-15-317*.

Compiler's Comments

*2003 Amendment:* Chapter 121 in (6) deleted former second sentence that read: "An award of punitive damages must be unanimous as to liability and amount." Amendment effective March 25, 2003.

*Preamble:* The preamble attached to Ch. 121, L. 2003, provided: "WHEREAS, in *Finstad v. W.R. Grace & Co., 2000 MT 228, 301 Mont. 240, 8 P.3d 778 (2000)*, the Montana Supreme Court held that the portion of *section 27-1-221(6), MCA,* which requires that an award of punitive damages must be unanimous as to liability and amount, violates *Article II, section 26, of the Montana Constitution*, guaranteeing a verdict by a two-thirds majority in all civil cases."

*1997 Amendment:* Chapter 328 in (6) inserted last sentence relating to unanimous punitive damage awards; and made minor changes in style. Amendment effective April 21, 1997.

*Applicability:* Section 2, Ch. 328, L. 1997, provided: " This act applies to causes of action that arise after the effective date of this act ." Effective April 21, 1997.

*1991 Amendment:* In (1) substituted reference to "this section" for reference to "subsection (2)"; and made minor changes in style.

*1987 Amendment:* In (1) substituted "Subject to subsection (2) and the provisions of *27-1-220*, reasonable punitive damages may be awarded where the defendant has been guilty of actual fraud or actual malice" for former (1) that read: "Subject to subsection (2), in any action for a breach of an obligation not arising from contract where the defendant has

been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant"; inserted (2) through (4) defining actual fraud and actual malice; in (5) substituted "All elements of the claim for punitive damages must be proved by clear and convincing evidence" for "The jury may not award exemplary or punitive damages unless the plaintiff has proved all elements of the claim for exemplary or punitive damages by clear and convincing evidence"; deleted former (3) through (7) that read: "(3)  Presumed malice exists when a person has knowledge of facts, intentionally avoids learning of facts, or recklessly disregards facts, knowledge of which may be proven by direct or circumstantial evidence, which creates a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk or recklessly proceeds in unreasonable disregard of or indifference to that risk.

(4)  The plaintiff may not present, with respect to the issue of exemplary or punitive damages, any evidence to the jury regarding the defendant's financial affairs or net worth unless the judge first rules, outside the presence of the jury, that the plaintiff has presented a prima facie claim for exemplary or punitive damages.

(5)  A defendant is guilty of oppression if he intentionally causes cruel and unjust hardship by:

(a)  misuse or abuse of authority or power; or

(b)  taking advantage of some weakness, disability, or misfortune of another person.

(6) (a)  In cases of actual fraud or actual malice, the jury may award reasonable punitive damages after considering the circumstances of the case.

(b)  In all other cases where punitive damages are awarded, punitive damages may be in an amount up to but no greater than $ 25,000 or 1% of the defendant's net worth, whichever is greater.

(7)  In cases where punitive damages may be awarded, the jury shall not be instructed, informed, or advised in any manner as to the limitations on the amount of exemplary or punitive damages as set forth in subsection (6)(b)"; and inserted (6) through (8) providing procedure to be used in determining punitive damage award.

*Applicability:*  Section 5, Ch. 627, L. 1987, provided: "This act applies to claims arising after the effective date of this act, except that subsections (6), (7), and (8) of *27-1-221* apply to trials that begin after the effective date of this act whether or not the claim arose after the effective date of this act." Pursuant to *1-2-201*, the act was effective October 1, 1987.

*1985 Amendment:*  At beginning of (1) inserted "Subject to subsection (2)"; inserted (2) through (7) defining basis for liability, proof requirements, and setting liability limit.

*Severability:*  Section 3, Ch. 507, L. 1985, is a severability clause.

*Applicability -- Effective Date:*  Section 4, Ch. 507, L. 1985, provided: "This act applies to any claim arising after the effective date of this act." Pursuant to sec. 6, Ch. 507, L. 1985, the act was effective on passage and approval, which was April 16, 1985.

Chapter Case Notes

*Voluntary Act Precluding False Imprisonment Claim -- Lack of Underlying Tort Precluding Civil Conspiracy Claim:*  A woman with breast cancer was advised by Hughes, a radiation oncologist, to undergo therapeutic radiology for the disease. Prior to radiation, an oncologist makes specific marks on the affected area to identify where to direct radiation beams. However, in addition to the marks directing radiation beams, Hughes drew a "smiley face" on the woman's breast by drawing two dime-sized "eyes" above the nipple of the breast and outlining the scar from the breast biopsy for the "mouth". The woman complained to hospital administration, and an ad hoc investigative committee recommended that Hughes receive a letter of reprimand, have a term of probation, have a chaperone while working, and be evaluated by the Montana Professional Assistance Program (MPAP). Hughes agreed to a medical, psychiatric, or chemical dependency evaluation and voluntarily enrolled in two such programs in Texas and Kansas. After release, Hughes signed an aftercare agreement. Hughes then brought suit against the individual members of the ad hoc committee and MPAP, alleging false imprisonment, civil conspiracy, breach of contract, and civil right violations related to the disciplinary actions. Summary judgment was granted to defendants in federal District Court on the civil rights claims, and the remaining charges were remanded to state District Court, where they were also summarily dismissed. Hughes

appealed. The Supreme Court affirmed dismissal of the false imprisonment claim because Hughes voluntarily signed the treatment agreements and submitted to evaluation. Two elements of false imprisonment are the restraint of an individual against the individual's will and the unlawfulness of that restraint, but because no material fact existed as to the voluntariness of Hughes's action, the false imprisonment claim failed as a matter of law. Further, to sustain a civil conspiracy claim, plaintiff must allege a tort committed by one of the conspirators, but because the false imprisonment claim failed, there was no underlying tort action to form a basis for civil conspiracy, so that claim failed as well. *Hughes v. Pullman, 2001 MT 216, 306 M 420, 36 P3d 339 (2001).*

*Civil Conspiracy -- Elements -- Summary Judgment Properly Granted:*  David, his wife Susan, their minor child, and the parties' defunct business sued Pierce Flooring and others for civil damages, including damages resulting from a civil conspiracy, stemming from criminal acts of vandalism taken against the plaintiffs' competing business. The District Court granted the defendants' motion for summary judgment against David and the other plaintiffs on the civil conspiracy claim. Citing *Duffy v. Butte Teachers' Union No. 332, 168 M 246, 541 P2d 1199 (1975)*, and *Grenz v. Medical Management NW., Inc., 250 M 58, 817 P2d 1151 (1991)*, the Supreme Court stated that the elements of a cause of action for civil conspiracy are: (1) two people (and, as in this case, a person may be a corporation); (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful acts; and (5) damages as the proximate result. The Supreme Court noted that the District Court had held that there was "probably sufficient evidence of elements 1, 2, 4, and 5" but that the plaintiffs failed to prove a genuine issue of material fact as to element 3. After reviewing the record, the Supreme Court held that the District Court correctly concluded that there was no evidence of a "meeting of the minds on the object or course of action" between the defendants. *Rocky Mtn. Enterprises, Inc. v. Pierce Flooring, 286 M 282, 951 P2d 1326, 54 St. Rep. 1410 (1997).*

*Unjust Enrichment -- Misconduct by Defendant Required -- Denial of Restitution to Defaulting Purchaser:*  Upon default by purchasers, seller resold the property. Purchasers sought restitution, contending it was unfair to allow seller to be unjustly enriched by selling the property twice. However, restitution is normally denied to a defaulting purchaser. (See *Contract Damages in Montana Part II: Reliance and Restitution*, Burnham, *45 Mont. L. Rev. 1 (1984)*.) Further, in order for the equitable doctrine of unjust enrichment to apply, plaintiff must show some element of misconduct or fault on the part of defendant. *Schweigert v. Fowler, 240 M 424, 784 P2d 405, 47 St. Rep. 1 (1990).*

*Abuse of Process -- What Constitutes:*  The tort of abuse of process must be proven by a showing of: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Brault v. Smith, 209 M 21, 679 P2d 236, 41 St. Rep. 527 (1984)*, followed in *St. v. Kandarian, 268 M 408, 886 P2d 954, 51 St. Rep. 1381 (1994).*

*Unjust Enrichment -- Recovery for Repudiated Contract Not Barred by Statute of Frauds.*  Where the plaintiffs failed to make a final payment to the defendant under a lease of property upon which the plaintiffs had spent considerable time and effort to grow wheat and the defendant thereafter wrongfully terminated the lease and retained the proceeds from the sale of plaintiffs' crop, the District Court erred in holding the plaintiffs' claim of unjust enrichment barred by the Statute of Frauds. Where one party repudiates a contract or breaches it by nonperformance, the injured party may seek restitution of the unjust enrichment whether the Statute of Frauds applies or not. Here the defendant breached the lease, and the theory of unjust enrichment applies. *Robertus v. Candee, 205 M 403, 670 P2d 540, 40 St. Rep. 1391 (1983).*

*Material Misrepresentation in Sale of Real Property -- Damages Inadequate:*  Where seller misrepresents the condition of premises to be sold to the extent that over $ 27,000 in repairs would be needed to bring the premises up to the condition represented and where repairs would result in a prolonged period during which premises could not be used for business, the misrepresentation is material and damages, as opposed to rescission, would be inappropriate. *Moschelle v. Hulse, 190 M 532, 622 P2d 155, 37 St. Rep. 1506 (1980).*

Part Case Notes

*Violation of Federal Railroad Safety Regulations Negligence Per Se -- Evidence of Contributory Negligence Disallowed:*  Railroad employee Woods accompanied track supervisor Holloway to inspect a section of track. Holloway exceeded the authorized limits of the track warrant and proceeded another 4 miles down the track where the inspection vehicle was struck by a train and Woods was killed. Following an investigation, the railroad concluded that Holloway's violation of the working limits caused Woods's death. Woods's widow moved for partial summary judgment that the railroad was negligent per se, but the motion was denied. The widow then requested a ruling that Woods was not contributorily negligent, but the motion was denied as untimely. The jury found that Woods was 50% negligent, and the

award to the widow was reduced by half. On appeal, the Supreme Court reversed. The Federal Employers' Liability Act (FELA) governing the case is a remedial statute, the specific intent of which is to prevent railroad accidents and casualties. Federal railroad administration regulations are reviewed and construed as a comprehensive scheme of protection for railroad workers, and an interpretation of federal railroad administration regulations that leads to an unreasonable or absurd result will be rejected in favor of an interpretation that leads to a reasonable result. To conclude that federal railroad administration regulations define working limits but do not prohibit exceeding them would lead to an absurd result. Thus, the trial court erred in concluding that violation of the working limits of the track warrant was not negligence per se. FELA also provides that an employee will not be held liable for contributory negligence when a railroad's violation of any statute enacted for the safety of employees contributed to an employee's injury or death, and the restriction against the use of contributory negligence as a defense applies to regulation violations as well, so it was also error for the trial court to allow the railroad to argue Woods's contributory negligence. The case was remanded for judgment reinstating the entire jury award. *Woods v. Burlington N. & Santa Fe Ry., 2004 MT 332, 324 M 151, 104 P3d 1037 (2004),* following *Bevacqua v. Union Pac. RR Co., 1998 MT 120, 289 M 36, 960 P2d 273 (1998).*

*Award of Injunction and Damages in Same Case -- No Error:* A subdivision developer was found to have been negligent and in breach of contract with the purchaser of two subdivision lots for failing to record a restrictive covenant prohibiting commercial use and for the resulting diminution in property value when another subdivision tenant operated an auto body shop in the subdivision. The jury held the developer liable for damages, and a permanent injunction was issued against the auto body shop operator, who complained that the award of both damages and an injunction resulted in double recovery. The Supreme Court disagreed. Montana law does not prohibit awarding money damages and an injunction in the same case. Both were justified here, and the award of both was affirmed. *Rice v. C.I. Lanning, 2004 MT 237, 322 M 487, 97 P3d 580 (2004).*

*No Duty to Defend Property Damage or Fraud Claim When No Property Damage or Fraud Asserted:* Defendant contended that plaintiff insurer had a duty to defend and provide coverage under defendant's commercial general liability policy, which provided coverage for property damages. However, the claim did not seek compensation for property damages for physical injury to tangible property, but rather for sums fraudulently paid to defendant based on a breach of contract. Because allegations in the complaint did not set forth facts that brought the event within the policy provisions and specifically excluded coverage for a fraud claim, the insurer had no duty to defend the claim. *Generali-U.S. Branch v. Alexander, 2004 MT 81, 320 M 450, 87 P3d 1000 (2004),* following *Graber v. St. Farm Fire & Cas. Co., 244 M 265, 797 P2d 214 (1990).*

*No Error in Giving Jury Instructions Regarding Intervening Cause When Jury Did Not Consider Issue:* Pula sued the state for negligence related to an incident of rape of Pula by another inmate while Pula was incarcerated in Blaine County jail. The District Court's special verdict form required jurors to answer a series of questions on breach of duty, causation, and damages, and then, depending on the answers, to move on to succeeding questions, one of which was the issue of whether there was an intervening cause. Pula asserted error in that the instructions on independent intervening causation were incorrect statements of the law. However, the first question for the jury was whether the state was negligent, which was answered affirmatively, so the jury moved on to the second question, which was whether the negligence resulted in Pula's injuries. The answer was negative, so the jury was instructed not to consider the third question, which was whether there was an intervening cause. Because the jury never considered the issue of intervening cause in reaching its verdict, the instructions on intervening cause had no effect on the outcome of the trial. The Supreme Court declined to assign reversible error to instructions addressing an issue that was never reached. *Pula v. St., 2002 MT 9, 308 M 122, 40 P3d 364 (2002).* See also *Stenberg v. Neel, 188 M 333, 613 P2d 1007 (1980).*

*Improper Grant of Motion to Dismiss Legal Malpractice Suit for Failure to State Claim Upon Which Relief Could Be Granted:* Hauschulz faced criminal charges in Billings, and while awaiting trial, he was extradited to Idaho on unrelated charges and incarcerated. The Michael Law Firm was hired to represent Hauschulz in the Billings proceedings, which Hauschulz could not attend. Instead of moving for dismissal of the charges unless Montana extradited Hauschulz, the law firm professed not to know where Hauschulz was and negotiated an unauthorized plea agreement on behalf of Hauschulz. Upon learning of the law firm's actions, Hauschulz filed a legal malpractice complaint alleging constitutional violations and requesting damages. The District Court dismissed the action on grounds that Hauschulz had failed to state a claim upon which relief could be granted, reasoning that no damages could be awarded because Hauschulz's problems all stemmed from the failure to appear at trial. Hauschulz appealed, and the Supreme Court reversed. A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief, and a dismissal will be affirmed by the Supreme Court only if plaintiff is not entitled to relief under any set of facts that would support the claim. As set out in *Merzlak v.*

*Purcell, 252 M 527, 830 P2d 1278 (1992),* to recover damages in a legal malpractice claim, plaintiff must establish that: (1) the professional owed plaintiff a duty of care; (2) the professional breached the duty of care through failure to use reasonable care and skill; (3) plaintiff suffered an injury; and (4) the professional's conduct was the proximate cause of the injury. In this case, the Supreme Court found that each element was satisfied. Hauschulz might be able to prove a set of facts that would entitle him to relief and has stated a sufficient claim to survive a challenge under Rule 12(b), M.R.Civ.P. (Title 25, ch. 20). *Hauschulz v. Michael Law Firm, 2001 MT 160, 306 M 102, 30 P3d 357 (2001).* See also *Trankel v. St., 282 M 348, 938 P2d 614 (1997).*

*FELA -- Stipulation That Jury Awards Not Be Added Together -- Greater Award Subsuming Smaller Awards:* Under the Federal Employers' Liability Act (FELA), *45 U.S.C. 51* through 60, an injured railroad worker is entitled to recover damages if the negligence of the railroad played any part, no matter how slight, in causing the injury or death for which damages are sought. In the present case, the jury found independent railroad negligence and causation in each of three work-related incidents that played a part in the condition of Bevacqua's knee. Under FELA, Bevacqua was entitled to judgment of $ 200,000 for a 1973 injury, $ 320,000 for a 1980 injury, and $ 40,000 for a 1990 injury. However, the parties stipulated that the jury awards for each incident would not be added together, precluding any double recovery. The Supreme Court held that Bevacqua was entitled to $ 320,000, the greatest of the jury awards, and that under the terms of the stipulation, the smaller awards were subsumed in the greater award. *Bevacqua v. Union Pac. RR Co., 1998 MT 120, 289 M 36, 960 P2d 273, 55 St. Rep. 469 (1998),* following *Rogers v. Mo. Pac. RR Co., 352 US 500, 1 L Ed 2d 493, 77 S Ct 443 (1957).*

*Injury to Tangible Property Required Before Economic Loss Covered -- Plagiarism:* After arriving at a settlement agreement based on a charge of plagiarism, an insured sought recovery from his insurance company under a business policy that provided that the company would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which the insurance applies". When the insurer refused to pay, the District Court properly granted summary judgment to the company because the charges of plagiarism did not allege direct physical injury to tangible property, but alleged only economic loss. The longstanding rule in Montana is that in order for economic losses to be covered by insurance, a direct physical injury to tangible property must occur. *Graber v. St. Farm Fire & Cas. Co., 244 M 265, 797 P2d 214, 47 St. Rep. 1595 (1990).*

*Damaged Party to Mitigate Damages -- Reasonable Expectations:* A damaged party is only expected to do what is reasonable under the circumstances to mitigate his damages and need not embark on a course of action that may cause further detriment to him. *Romain v. Earl Schwartz Co., 238 M 500, 779 P2d 54, 46 St. Rep. 1450 (1989).*

*Duty of Plaintiff When Multiple Causes of Damage Appear:* The Supreme Court cited *Valley Inland Pac. Constructors, Inc. v. Clackamas Water District, 603 P2d 1381 (Oreg. 1979),* in holding that when more than one possible cause of damage appears, the plaintiff must eliminate causes other than those for which the defendant is responsible. Failure to separate causes and damage barred plaintiff from arguing proximate cause. *Young v. Flathead County, 232 M 274, 757 P2d 772, 45 St. Rep. 1047 (1988),* followed in *USF&G v. Camp, 253 M 64, 831 P2d 586, 49 St. Rep. 372 (1992).*

*Comparison of Conduct in Ascertaining Damages:* Willful or wanton conduct may be compared with like conduct for the purpose of ascertaining damages. Refusing an offered instruction on comparing like conduct was error. *Gurnsey v. Conklin Co., Inc., 230 M 42, 751 P2d 151, 45 St. Rep. 1 (1988),* citing *Simonson v. White, 220 M 14, 713 P2d 983, 43 St. Rep. 133 (1986).*

*Award of Grossly Excessive and Disproportionate Damages -- Based on Passion or Prejudice:* A jury award of $ 5 million in punitive damages, which was found to be 20,000% above the award for economic damage caused insured and 5,000% more than the maximum of the insurance policy, was held to be so grossly excessive and disproportionate to the injury as to shock one's conscience. Noting that appellate courts in most jurisdictions, including Montana, ordinarily defer to the discretion of the factfinder when reviewing punitive damage awards, the court found that as a matter of law this award must have been determined by passion or prejudice. On remittitur, the judgment was modified to an award of $ 1 million total. *Safeco Ins. Co. v. Ellinghouse, 223 M 239, 725 P2d 217, 43 St. Rep. 1689 (1986).* In a strong dissent, Mr. Justice Morrison noted no reversible error on any liability question and pointed out that up to this time "there is little, if any, precedent supporting the Montana Supreme Court substituting its judgment for that of the jury. Unfortunately that strong support for the jury system has now been dynamited. The majority announces loud and clear that from this day forward, four justices, robed in judicial omniscience, will replace our jury." Mr. Justice Sheehy, also

dissenting, said that the "deleterious effect of the opinion in this case is its announcement that the right of a jury to set damages is hereafter subject to the consent of the majority of this Court".

*Overgrazing Damages Remanded -- No Offset -- Open Range Law:*   The District Court ruled that Helehan was liable for $ 3,000 in overgrazing damages caused to Ueland's property by horses allowed on Helehan's land and that Ueland was not entitled to reimbursement for a $ 3,000 fence. The court offset these amounts. The Supreme Court remanded, finding that the costs did not offset since damages flowed from Helehan to Ueland but not from Ueland to Helehan. However, the error was harmless since under Montana's open range law Helehan could not be legally obligated to restrain the horses and could not be held liable for damages occurring prior to the time the fence was built. *Helehan v. Ueland, 223 M 228, 725 P2d 1192, 43 St. Rep. 1679 (1986).*

*Determination of Damages -- "Good Sense":*   A District Court faced with widely varying estimates of value for services performed on an oral contact "split the difference" as a setoff to a recovery. The Supreme Court, recalling its decision in *Spackman v. Ralph M. Parsons Co., 147 M 500, 414 P2d 918 (1966),* found that formulas may serve as useful guides in determining damages, but that the final answer rests in good sense rather than mechanical application of formulas. The "compromise" developed by the District Court was found to be well in line with contract principles. *Hostetter v. Donlan, 221 M 380, 719 P2d 1243, 43 St. Rep. 909 (1986).*

*Loss of Future Profits -- Breach of Contract:*   Although determination of loss of future profits is often speculative, when injury caused by a breach of contract is certain, damages for lost profits may be awarded even though the amount of damages is uncertain. *Hostetter v. Donlan, 221 M 380, 719 P2d 1243, 43 St. Rep. 909 (1986),* followed in *Van Riper v. Ford New Holland, Inc., 261 M 206, 862 P2d 47, 50 St. Rep. 1289 (1993).*

*Duty to Mitigate Damages -- Procedure at Trial:*   A nondefaulting party in a contractual arrangement must act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by a default. Whether the duty to mitigate damages was violated is for the trier of fact when the evidence conflicts, and the Supreme Court's function is to review the record to determine if there is substantial credible evidence to support the trial court's finding. Since the trial court's order and supporting memo did not include findings on the duty to mitigate or the reasonableness of the nondefaulting party's actions in consuming or destroying wine he did not sell after wine broker terminated wine distributorship contract, the damages award to nondefaulting party for unsold wine it consumed or destroyed was vacated and the issue remanded for further consideration. *Bronken's Good Time Co. v. J. W. Brown & Associates, 203 M 427, 661 P2d 861, 40 St. Rep. 549 (1983),* followed in *Fordyce v. Musick, 245 M 315, 800 P2d 1045, 47 St. Rep. 2137 (1990).*

*Mitigation of Damages -- Instruction Not Warranted:*   State Farm brought suit against Shahrokhfar in connection with an auto accident. Shahrokhfar notified State Farm that he was the wrong person and failed to defend the action. State Farm pursued the suit to a default judgment that resulted in Shahrokhfar losing his driver's license. Shahrokhfar then sued State Farm. The jury was instructed on the issue of plaintiff's comparative negligence for failure to retain counsel and defend the suit brought by State Farm. The court properly refused to instruct on mitigation of damages; such an instruction would be repetitious and potentially confusing. *Shahrokhfar v. St. Farm Mut. Auto. Ins. Co , 194 M 76, 634 P2d 653, 38 St. Rep. 1669 (1981).*

*No Reversible Error on Damage Instructions When Jury Does Not Reach Issue·*   When the jury does not reach the issue of damages, on appeal no reversible error can be predicated on damage instructions. *Stenberg v. Neel, 188 M 133, 613 P2d 1007 (1980).* See also *Pula v. St., 2002 MT 9, 308 M 122, 40 P3d 364 (2002).*

Case Notes

### GENERAL

*Sufficient Evidence to Support Jury Verdict Awarding Punitive Damages for Breach of Fiduciary Duty by Insurer in Dealings With Its Agent:*   An insured brought an action against Deonier, an insurance agent, and Paul Revere Life Insurance Company (Revere) to recover benefits and damages after the insured's claim was denied on grounds of a pre-existing condition, despite the incontestability clause in the policy. The agent cross-claimed against the company for indemnity and breach of fiduciary duty, contending that there was a significant amount of evidence that Revere planned to assert the Forman defense in Montana (see *Mass. Cas. Ins. Co. v. Forman, 516 F2d 425 (5th Cir. 1975),* in which an insurer asserted a legal defense to the incontestability clause based on its definition of sickness as excluding disabilities that manifested themselves prior to the date of issue of the policy) and that Revere's failure to inform Deonier of its intention to invoke the defense was a clear breach of Revere's duty to inform its agents of a risk of pecuniary loss from potential lawsuits. Revere asserted that pursuant to *Doettl v. Colonial Life & Accident Ins. Co., 505 F. Supp. 127 (D.C.*

*Mont. 1981),* in which a Montana federal District Court endorsed the Forman defense, it had no reason to believe that its policy interpretation might be in violation of Montana law and therefore did not breach its duty to inform its agents of risk of pecuniary loss. Revere argued that punitive damages were inappropriate as a matter of law because it was entitled to assert any defense, including the Forman defense, that had a reasonable basis in the law. Deonier countered by pointing out that she had introduced evidence that by 1994 when Revere first used the Forman defense in Montana, it knew that its selling agents had been sued in at least 20% of the previous lawsuits and the company nevertheless refused to inform its agents of the risk of pecuniary loss if Revere decided to assert that defense. The Supreme Court held that based on the evidence alone, it could conclude that there was a complete absence of any evidence that would justify submitting the issue of punitive damages to the jury and therefore the lower court did not err in denying the motion for judgment as a matter of law on punitive damages. *Deonier & Associates v. Paul Revere Life Ins. Co., 2004 MT 297, 323 M 387, 101 P3d 742 (2004).*

*Punitive Damages From Breach of Contract Prohibited Absent Showing of Actual Fraud or Malice:* Under *27-1-220,* punitive damages arising from a breach of contract are prohibited, although this section does permit an award of punitive damages if the claimant proves by clear and convincing evidence that defendant is guilty of actual fraud or malice outside the contract context. Here, plaintiff contended that defendants filed malicious claims and defenses in the present case and in other civil proceedings including tribal court, but presented insufficient evidence that defendants acted with actual malice toward plaintiff. Thus, the District Court correctly concluded that punitive damages were not owing. *Weter v. Archambault, 2002 MT 336, 313 M 284, 61 P3d 771 (2002).*

*State Law Tort Claims Not Protected or Prohibited by FELA -- Dismissal for Failure to State Claim Improper:* Reidelbach worked for the railroad for about 20 years but was forced to stop working because of job-related disabling cumulative spinal injuries. Reidelbach reached an agreement with the railroad's claim representatives under which he would forego pursuing a claim under the Federal Employers' Liability Act (FELA) and the railroad would propose a fair settlement for the injuries. After 2 years, no settlement was offered, and ultimately the parties exchanged counteroffers, but no agreement on an amount was reached. Reidelbach then filed a timely FELA claim and also brought several state claims, alleging that the railroad had engaged in unfair, dilatory, and fraudulent claims practices. The District Court concluded that all the postinjury state claims were preempted by FELA and dismissed them pursuant to Rule 12(b), M.R.Civ.P. (Title 25, ch. 20), so Reidelbach appealed. Following an extensive analysis of federal law related to preemption in its various forms, the Supreme Court held that Reidelbach's state claims were neither expressly nor impliedly preempted by FELA and did not conflict with or stand as an obstacle to the accomplishment and execution of FELA. Therefore, the District Court erred in dismissing Reidelbach's state claims on grounds of FELA preemption, and the case was reversed and remanded for trial in state court. *Reidelbach v. Burlington N. & Santa Fe Ry. Co., 2002 MT 289, 312 M 498, 60 P3d 418 (2002).*

*Claim for Punitive Damages Not Precluded by Estoppel -- Issues of Previous Litigation Not Identical:* Finstad was injured by asbestos in defendant's mine. A jury trial resulted in a verdict for Finstad and an award of $ 400,000 in compensatory damages, as well as a determination that punitive damages were warranted. The District Court conducted a minitrial on the issue of punitive damages, and the jury awarded $ 83,000. Defendant contested the award of punitive damages and moved for dismissal on grounds that Finstad's claim was barred by collateral estoppel by virtual representation because the issue had already been litigated in two previous Lincoln County cases against defendant. Defendant contended that the issues were identical, that final judgment had been rendered, and that Finstad was a party to or in privity with a party in the previous cases and thus was virtually represented by those parties in the previous cases. The District Court denied the motion to dismiss, finding that the issues were not identical, and also ruled for Finstad on the question of estoppel by virtual representation. On appeal, the Supreme Court reviewed the record, noting that although some of the evidence and witnesses regarding the punitive damages claim were the same as in the previous cases, several significant factual distinctions and legal claims existed. Because the first element of collateral estoppel regarding identical parties was not met, the Supreme Court affirmed without reaching the question of estoppel by virtual representation. *Finstad v. W.R. Grace & Co., 2000 MT 228, 301 M 240, 8 P3d 778, 57 St. Rep. 934 (2000),* following Holtman v. 4-G's Plumbing & Heating, Inc., 264 M 432, 872 P2d 318 (1994).

*Error in Allowing Evidence of Other Litigation and Fictional Average Amounts for Each Pending Claim:* Finstad was injured in defendant's Lincoln County asbestos mine and was awarded compensatory damages. In a minitrial on the issues of punitive damages, the District Court allowed evidence from defendant's economic expert regarding the number of asbestos claims pending in Lincoln County, as well as nationwide, and fictional average amounts for each of those claims. Finstad alleged that the evidence was irrelevant, misleading, and prejudicial, and the Supreme Court agreed. Although this section allows consideration of any other circumstances that may operate to increase or reduce punitive

damages, this was not the kind of evidence intended by the Legislature to be allowed, given the purpose for punitive damages and the factors for reviewing punitive damage awards, especially considering that this section specifically mandates consideration of previous punitive damage awards against a defendant. *Finstad v. W.R. Grace & Co., 2000 MT 228, 301 M 240, 8 P3d 778, 57 St. Rep. 934 (2000).*

*Punitive Damages Case Considered Civil Action -- Requirement That Punitive Damages Award Be Unanimous Unconstitutional:* Under *Art. II, sec. 26, Mont. Const ,* in all civil actions, two-thirds of the jury may render a verdict that has the same force and effect as if the entire jury had concurred in the decision. A civil action is prosecuted for the enforcement or protection of a right or the redress or prevention of a wrong. Here, Finstad was injured by asbestos in defendant's mine and sued for redress and to prevent defendant from committing similar wrongful conduct. Thus, Finstad's suit, including the claim for punitive damages, constituted a civil action. Punitive damages are merely a component of recovery of the underlying civil cause of action, imposed as enlarged damages for a civil wrong, not a substitute for criminal punishment. Because punitive damages are civil actions, the portion of subsection (6) of this section that requires that an award of punitive damages be unanimous as to liability and amount directly conflicts with *Art. II, sec. 26, Mont. Const.,* and is unconstitutional. (See 2003 amendment.) *Finstad v. W.R. Grace & Co., 2000 MT 228, 301 M 240, 8 P3d 778, 57 St. Rep. 934 (2000).*

*Burden on Defendant to Show That Financial Condition Does Not Warrant Punitive Damages:* This section requires that following a verdict of punitive damages against a defendant, a separate proceeding must be held to determine the amount and that a defendant's financial condition must be considered. The defendant is required to show that the defendant's financial condition does not support an award. The plaintiff need not show that the defendant's financial condition supports an award. Therefore, the District Court's failure to completely set aside defendant's punitive damages was not error when defendant offered no evidence of his financial condition. *Cartwright v. Equitable Life Assurance Soc'y, 276 M 1, 914 P2d 976, 53 St. Rep. 268 (1996).*

*Standard of Review for Clear and Convincing Evidence Standard of Proof:* In an insurance fraud action, each element of a punitive damages claim had to be proved by clear and convincing evidence, a standard that is more than a preponderance of the evidence but less than beyond a reasonable doubt. Addressing the standard of review for the first time, the court stated that the standard was whether there was substantial evidence to support the award of punitive damages, the same standard of review as when the standard of proof is a preponderance of the evidence. *Cartwright v. Equitable Life Assurance Soc'y, 276 M 1, 914 P2d 976, 53 St. Rep. 268 (1996).*

*Test for Whether Principal Is Subject to Punitive Damages for Acts of Its Agent:* Punitive damages were awarded against an insurance agent, who fraudulently misled insureds, and his company. The jury was instructed that the *Restatement (Second) of Torts 909* (1979) is the law in Montana on whether punitive damages can be awarded against a principal for the acts of its agent. Neither party objected to the instruction. Therefore, the Supreme Court, although expressing no opinion on whether the Restatement was the law, reviewed the evidence to determine whether the evidence supported punitive damages under the Restatement. *Cartwright v. Equitable Life Assurance Soc'y, 276 M 1, 914 P2d 976, 53 St. Rep. 268 (1996).*

*Punitive Damages Awarded -- Prejudgment Interest Disallowed:* Dees was awarded compensatory and punitive damages against his insurance company for the company's failure to settle his claim for hail damage to his crops. The District Court awarded prejudgment interest at the rate of 10% a year on both the compensatory and punitive damages, beginning with the date of the jury verdict up until the date of the final judgment. Citing *Maddux v. Bunch, 241 M 61, 784 P2d 936 (1990),* the Supreme Court held that prejudgment interest should not have been granted on the punitive damages. Because punitive damages must be reviewed and approved by the District Court, they neither vest nor are capable of being made certain until the trial court completes its review and issues a final judgment. *Dees v. Am. Nat'l Fire Ins. Co., 260 M 431, 861 P2d 141, 50 St. Rep. 1068 (1993).*

*Reduction of Punitive Damages Upheld -- Role of Passion and Prejudice:* Dees was awarded compensatory and punitive damages against his insurance company for the company's failure to settle his claim for hail damage to his crops. The District Court reduced the amount of punitive damages awarded by the jury from $ 575,000 to $ 300,000, noting the existence of "passion and prejudice" and saying that the wrong committed by the insurer "certainly does not justify that Dees should receive a half million dollar windfall" but also saying that the punitive damages should be "large enough to get the company's attention". Citing *Safeco Ins. Co. v. Ellinghouse, 223 M 239, 725 P2d 217 (1986),* the Supreme Court upheld the reduction in punitive damages, saying that the District Court performed its duty of reviewing the damages and reducing them when it found passion and prejudice. *Dees v. Am. Nat'l Fire Ins. Co., 260 M 431, 861 P2d 141, 50 St. Rep. 1068 (1993).*

*Clear and Convincing Evidence Required -- Allegation in Complaint, Statements in Judgment, and Unqualified Expert Medical Opinion Insufficient:*  Because of allegations that alcohol was involved in a car accident, the District Court awarded $ 25,000 for punitive damages to Maulding as part of a default judgment against Hardman. The Supreme Court noted that the only evidence of the use of alcohol was an unsubstantiated allegation in the complaint and that the only rationale by the District Court was a statement in the judgment that "evidence showed" that the accident was caused by the use of alcohol. The Supreme Court also noted that at the hearing on the matter, Maulding's counsel was allowed to give unqualified expert medical opinion, which the District Court should not have accepted. For these reasons, the Supreme Court reversed the denial of a motion to set aside the default. *Maulding v. Hardman, 257 M 18, 847 P2d 292, 50 St. Rep. 141 (1993).*

*Award of Punitive Damages Reserved Pending Violation of Final Judgment:*  In a prescriptive easement case, the District Court granted injunctive relief and nominal compensatory damages but reserved imposition of punitive damages pending any violation of the final judgment and order keeping a road open. In light of the fact that the earlier injunction was not disobeyed, reserving the award of punitive damages was not clearly erroneous. *Rasmussen v. Fowler, 245 M 308, 800 P2d 1053, 47 St. Rep. 2134 (1990).*

*Separate Hearing to Be Held to Determine Amount of Punitive Damages:*  The jury found that the plaintiffs were entitled to receive punitive damages from the defendant bank. Upon the defense counsel's suggestion that a hearing to determine the amount of damages based on the bank's finances would precipitate a run on the bank, the lower court held that the plaintiffs were not entitled to punitive damages. The Supreme Court held that once a jury finds that punitive damages should be awarded, the law requires the lower court to conduct a separate proceeding in which the jury is to decide the amount of damages. Prior to that time, any decision by the lower court to increase or decrease the award is premature. *First Sec. Bank of Glendive v. Gary, 245 M 394, 798 P2d 523, 47 St. Rep. 1646 (1990).*

*No Clear and Convincing Evidence Justifying Punitive Damages:*  The plaintiff maintained that his insurance company intentionally avoided learning facts pertaining to coverage of his claim. The Supreme Court held that there was a great amount of conflicting evidence concerning the degree of risk of harm to the plaintiff created by the defendant's lack of factfinding and that therefore punitive damages were inappropriate. *Maddux v. Bunch, 241 M 61, 784 P2d 936, 47 St. Rep. 82 (1990).*

*Failure to Present Prima Facie Case -- Punitive Damages Denied:*  The District Court did not err in striking a claim for punitive damages after finding plaintiff failed to present a prima facie case, including clear and convincing evidence of all elements of the claim as required in this section. *Niles v. Big Sky Eyewear, 236 M 455, 771 P2d 114, 46 St. Rep. 504 (1989),* followed in *Barnes v. United Indus., Inc., 275 M 25, 909 P2d 700, 53 St. Rep. 17 (1996).*

*Failure to Present Findings Regarding Punitive Damages -- Remand for Presentation of Evidence:*  The District Court erred by not presenting findings pursuant to this section regarding punitive damages. The Supreme Court remanded so that evidence could be presented in order to consider the statutory requirements. *Ward v. Vibrasonic Laboratories, Inc., 236 M 314, 769 P2d 1229, 46 St. Rep. 387 (1989).*

*Evidence of Witness' Misrepresentations and Omissions Improperly Excluded -- "Collateral Matters" Rule Incorrectly Applied:*  The District Court excluded evidence of a witness' misrepresentations and omissions after holding that the evidence constituted impeachment on collateral matters. The Supreme Court found the exclusion of evidence improper on two issues: the issue of the credibility of the witness and the issue of punitive damages. Further, the Supreme Court noted that the rule on collateral matters was abolished in favor of the relevancy approach contained in *Rule 607, M.R.Ev. Cooper v. Rosston, 232 M 186, 756 P2d 1125, 45 St. Rep. 978 (1988),* followed in *St. v. Kowalski, 252 M 166, 827 P2d 1253, 49 St. Rep. 197 (1992).*

*Award of Punitive Damages in Conversion Action:*  Defendant contended that punitive damages were improper in a case where he was convicted of conversion of an employee's commission checks because the employment was based on a contractual relationship. The Supreme Court noted that conversion is a tort, that the breach of contract argument was not supported by evidence or the verdict, and that in light of substantial evidence of malice or oppression, punitive damages were warranted. *Lane v. Dunkle, 231 M 365, 753 P2d 321, 45 St. Rep. 686 (1988).*

*Award of Punitive Damages Without Showing of Underlying Actual Damages:*  Just as punitive damages may be awarded where plaintiff is granted nominal damages, so may punitive damages be awarded where no monetary value has been assigned to the actual damages suffered. *Weinberg v. Farmers St. Bank of Worden, 231 M 10, 752 P2d 719, 45 St. Rep. 391 (1988).*

Mont. Code Anno., § 27-1-221

*Punitive Damages Not Recoverable Under FELA:* The remedial provisions of the Federal Employers' Liability Act (FELA) are comprehensive and exclusive, and the congressional intent to preempt the application of state remedial tort law to all cases falling within the ambit of FELA is implicit in the structure and purpose of the Act. Therefore, the holding in *Kozar v. Chesapeake & Ohio Ry. Co., 449 F2d 1238 (6th Cir. 1971),* that punitive damages, being nonpecuniary in nature, are not recoverable under FELA was applicable to a claim for punitive damages under *Montana law. Toscano v. Burlington N. RR Co., 678 F. Supp. 1477, 45 St. Rep. 367 (D.C. Mont. 1987),* distinguishing *Silkwood v. Kerr-McGee Corp., 464 US 238, 78 L Ed 2d 443, 104 S Ct 615 (1984).*

*Failure to Assign Lease -- Damages Proper:* Punitive damages were proper where defendant breached his duty to assign a lease over to landlords and attempted to avoid the duty to assign by interposing in bad faith and without justifiable cause various defenses to the assignment of the lease. *Moore v. Hardy, 230 M 158, 748 P2d 477, 45 St. Rep. 108 (1988).*

*Burden of Proving Net Worth in Determination of Punitive Damages:* In a case in which a defendant's net worth does not support an award of punitive damages in an amount the plaintiff seeks, it is up to the defendant to bring in evidence of net worth if the plaintiff does not do so. *Gurnsey v. Conklin Co., Inc., 230 M 42, 751 P2d 151, 45 St. Rep. 1 (1988).*

*Recovery Limited in Fraudulent Sale of Securities -- Punitive Damages Claim Dismissed:* In a case alleging breach of contract for sale of a security by means of fraud, recovery was limited under *30-10-307* to consideration paid for the security plus interest, costs, and attorney fees. A claim for punitive damages was properly dismissed. *State ex rel. Vranish v. District Court, 228 M 59, 741 P2d 412, 44 St. Rep. 1341 (1987).*

*Award of Attorney Fees and Costs as Punitive Damages -- Award Vacated:* A District Court award of punitive damages by way of compensating plaintiffs for one-half their attorney fees plus costs was held inappropriate. The award was vacated and case remanded to determine if a proper punitive damage award was warranted. *Reintsma v. Lawson, 223 M 520, 727 P2d 1323, 43 St. Rep. 1962 (1986).*

*Covenant of Good Faith and Fair Dealing -- General Test for Contracts Covered:* Plaintiff, who owned a building and two construction companies, and defendant insurance company signed a lease for office space in a building. Plaintiff was to renovate the space, and the two were to confer on and mutually approve the renovation plans. Disagreements arose on the plans. Plaintiff claimed he had difficulties contacting defendant. Defendant rescinded the lease on the ground that it had continually invested more time and money than plaintiff and that from a business standpoint the lease was no longer feasible. After failing in an attempt to contact defendant's president, plaintiff sent a notice of default and sued. The court affirmed an award of punitive damages to plaintiff. The court declined to extend the tort of breach of an implied covenant of good faith and fair dealing to all contracts of any type, including arms-length and substantially equal bargaining power contracts, but stated that: (1) whether breach of a contract constitutes the tort depends on whether there has been some impermissible activity; (2) the nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties and, whether performing or breaching, each party has a justifiable expectation that the other will act as a reasonable person; (3) a party who acts arbitrarily, capriciously, or unreasonably exceeds the justifiable expectations of the other party, and the other party should be compensated for damages resulting from the culpable conduct; and (4) for punitive damages to be awarded for breach of an implied covenant of good faith and fair dealing in a contract breach situation, the breach must amount to oppression, fraud, or malice. *Nicholson v. United Pac. Ins. Co., 219 M 32, 710 P2d 1342, 42 St. Rep. 1822 (1985),* followed in *McJunkin v Kaufman, 229 M 432, 748 P2d 910, 44 St. Rep. 2111 (1987),* and in *Tresch v. Norwest Bank of Lewistown, 238 M 511, 778 P2d 874, 46 St. Rep. 1459 (1989),* and distinguished and limited to contracts involving special relationships in *Story v. Bozeman, 242 M 436, 791 P2d 767, 47 St. Rep. 850 (1990).*

*Amount Awarded -- Trial Court Discretion:* The amount of punitive damages to be awarded is within the sound discretion of the trier of fact. *Castillo v. Franks, 213 M 232, 690 P2d 425, 41 St. Rep. 2071 (1984)* (decided prior to 1985 amendment of *27-1-221*).

*Insurance Contract Language Excluding Payment of Punitive Damage Award Not Effective:* Following the award of general, special, and punitive damages to the plaintiff for injuries suffered in a car accident, the insurance company refused to pay the punitive damages, whereupon the plaintiff sued the insurance company. On appeal from a summary judgment for the plaintiff, the Supreme Court held that the language in the insurance policy relied on by the company to deny the payment of punitive damages was ambiguous and should be construed against the company to allow payment of those damages. *Fitzgerald v. W. Fire Ins. Co., 209 M 213, 679 P2d 790, 41 St. Rep. 654 (1984).*

Mont. Code Anno., § 27-1-221

*Insurance Coverage of Punitive Damages -- Not Violative of Public Policy.* Punitive damages may be insured against in Montana, and insurance coverage of such damages does not violate public policy. *First Bank of Billings v. Transamerica Ins. Co., 209 M 93, 679 P2d 1217, 41 St. Rep. 573 (1984),* followed in *Fitzgerald v. W. Fire Ins. Co., 209 M 213, 679 P2d 790, 41 St. Rep. 654 (1984).*

*Causal Relationship for Relevance -- Watergate and Split Tire Rim:* In a tort action relating to the explosive failure of a Goodyear K-type split tire rim, it was error to admit material relating to Watergate in an attempt to receive exemplary damages. The Supreme Court held that the Watergate material was irrelevant under Rule 402, M.R.Ev., because the record showed only a speculative connection between the incident complained of and allegations by the plaintiff that political activities by defendant Goodyear Tire and Rubber Company during Watergate included an illegal political contribution by Goodyear in an attempt to avoid the recall of the K-type rims by the Nixon administration. *Kuiper v. Goodyear Tire & Rubber Co., 207 M 37, 673 P2d 1208, 40 St. Rep. 1861 (1983).*

*Tort of Breach of Duty to Deal Fairly and in Good Faith in Employment Relationship -- Punitive Damages Recoverable:* This section only exempts breach of contract actions from its provisions. Breach of the duty owed to deal fairly and in good faith in the employment relationship is a tort for which punitive damages may be recovered if defendant's conduct is sufficiently culpable. *Gates v. Life of Montana, 205 M 304, 668 P2d 213, 40 St. Rep. 1287 (1983).*

*Prior Guilty Plea -- Irrelevant to Misconduct or Punitive Damages:* Defendant and plaintiff, who was 16, were drinking and driving at a high rate of speed in Anaconda. Defendant was driving plaintiff's car when he lost control and hit a house. Plaintiff was severely injured. At a trial for damages based on negligence, plaintiff's counsel sought to introduce evidence of defendant's having pleaded guilty to two prior incidents of supplying intoxicating beverages to minors. Defendant's attorney moved for a motion in limine, which was denied. The jury awarded compensatory and punitive damages. On appeal the Supreme Court reversed, holding that the evidence of appellant's prior guilty pleas did not have the tendency to make the existence of his alleged willful and wanton misconduct on the night in question more or less probable. The evidence was irrelevant to establishing misconduct on the night in question or for establishing a basis for punitive damages. The fact that defendant had purchased alcohol for minors did not go toward establishing his operation of the vehicle in a reckless fashion, the act complained of. Therefore the evidence was also irrelevant toward showing a basis for punitive damages. *Derenberger v. Lutey, 207 M 1, 674 P2d 485, 40 St. Rep. 902 (1983),* followed in *Maurer v. Clausen Distrib. Co., 275 M 229, 912 P2d 195, 53 St. Rep. 78 (1996).*

*Government Punitive Damages Immunization -- Constitutionality:* Plaintiff had a constitutional right to redress against the state for all of her injuries but did not have a constitutional right to punitive damages. Thus the rational basis test, rather than the strict scrutiny test, was applied to equal protection review of *2-9-105,* immunizing the state and other governmental entities from exemplary and punitive damages. There is a rational basis for distinguishing governmental from other entities in the grant of punitive damages, in that such damages are to punish the wrongdoer and deter future similar conduct of the wrongdoer and others similarly disposed. The deterrent effect upon a government is extremely small, and innocent taxpayers are the persons punished. Therefore, *2-9-105* is not unconstitutional. *White v. St., 203 M 363, 661 P2d 1272, 40 St. Rep. 507 (1983).*

*Lessor's Interference With Leased Property:* Lessor sued for failure of lessee to vacate, and lessee counterclaimed that lessor converted the premises to his own use and interrupted her peaceful possession. Lessee could not get punitive damages under the conversion theory because conversion is a tort applicable to personal chattels and a leasehold interest is not a personal chattel. Nor could punitive damages be granted for interruption of peaceful possession, as it was not proven. In the absence of a showing of tortious conduct, it was error to grant lessee punitive damages in a simple contract action. *Lemley v. Allen, 203 M 37, 659 P2d 262, 40 St. Rep. 279 (1983).*

*Punitive Damage -- Tort Not Shown:* Lessor sued for failure of lessee to vacate, and lessee counterclaimed that lessor converted the premises to his own use and interrupted her peaceful possession. Lessee could not get punitive damages under the conversion theory because conversion is a tort applicable to personal chattels and a leasehold interest is not a personal chattel. Nor could punitive damages be granted for interruption of peaceful possession, as it was not proven. In the absence of a showing of tortious conduct, it was error to grant lessee punitive damages in a simple contract action. *Lemley v. Allen, 203 M 37, 659 P2d 262, 40 St. Rep. 279 (1983).*

*Title Insurers' Liability for Failure to Defend Suits Against Insured:* Adjoining landowner sued insured for interference with his easement rights, title insurance companies refused to defend, insured hired his own counsel, the suit was settled, and adjoining landowner again sued insured when insured refused to abide by the settlement. The insurers again refused to defend. The policy obligated insurers to defend any litigation founded upon a defect, lien, encumbrance, or other matter insured against. Insurers had failed to disclose and insure against the easements, though they

were contained in the title records. The insurers acted in bad faith in refusing to defend the first suit but not in refusing to defend the second suit, since it arose from insurers' refusal to abide by the settlement in the first suit. Insurers were liable to insured for his costs in defending the first suit, and punitive damages could be imposed for failure to defend. *Lipinski v. Title Ins. Co., 202 M 1, 655 P2d 970, 39 St. Rep. 2283 (1982).*

*Purpose of Punitive Damages:* The defendants have been victims of false accusations which the plaintiff knew to be false. Each of the allegations was made maliciously and viciously. The defendant was accused of criminal conduct, which seriously and directly affected his business reputation. The award of punitive damages is meant to make an example and punish a person so that he will cease this type of conduct in the future. An award of $ 50,000 punitive damages in this case is proper. *Miller v. Watkins, 200 M 455, 653 P2d 126, 39 St. Rep. 1867 (1982).*

*No Actual Damages Awarded -- Liability of Insurance Company for Punitive Damages:* Where the owner of a car, arriving on the scene of an accident involving his car driven by another with his permission, intentionally tampered with physical evidence at the scene and was thereafter found liable for punitive damages by a state court, but neither he nor the driver were liable for actual damages, under the policy in question the insurance company was not liable for either the punitive damages or attorney's fees. *Lee v. St. Farm Mut. Auto. Ins. Co., 39 St. Rep. 1761 (D.C. Mont. 1982)* (apparently not reported in Federal Supplement).

*Tort of "Bad Faith" -- Punitive Damages Recoverable:* Since violation of the implied-in-law duty of good faith and fair dealing is tortious in nature, notwithstanding that it may also constitute a breach of contract, punitive damages are recoverable in an action founded on such a violation. In a "bad faith" tort action, failure of a complaint to allege violation of the insurance code (*33-1-101,* et seq.) did not preclude a claim for punitive damages. *Bostwick v. Foremost Ins. Co., 539 F. Supp. 517, 39 St. Rep. 980 (D.C. Mont. 1982).*

*Limits on State Liability Not to Be Applied Retroactively:* Irrigation district, a state governmental entity, was subject to punitive damages in tort action where action arose in and was limited to summer of 1974. The 1972 Montana Constitution provided that state governmental entities have no immunity from suit for injury to person or property except as may be specifically provided by law. The Legislature did not provide immunity for certain governmental entities until 1977 when it enacted *2-9-104* (repealed, 1983) and *2-9-105.* Those sections cannot be retroactively applied. *Dvorak v. Huntley Project Irrigation District, 196 M 167, 639 P2d 62, 38 St. Rep. 2176 (1981).*

*Exemplary Damages for Unlawful Act -- No Underlying Tort Liability:* Exemplary damages may be awarded to a plaintiff under *27-1-221* even though plaintiff did not suffer any emotional distress and even though there was no underlying tort negligence found by the jury. Under *27-1-202,* plaintiff is entitled to compensation since defendant knowingly attempted to obliterate evidence of the cause of a car accident, and it is equally apparent under *27-1-221* that a jury may award exemplary damages where the defendant has been guilty of either actual or implied malice. The statutory framework of *27-1-221* sets forth no specific requirement of an underlying tort or mental distress, nor will the Supreme Court imply such requirements through judicial construction. A plaintiff need only show actual damages pursuant to *27-1-202. Lauman v. Lee, 192 M 84, 626 P2d 830, 38 St. Rep. 499 (1981).*

*Town Meeting Minutes and Related Documents:* The Troy Town Council had passed a resolution requesting a speed limit of 25 miles per hour on trains passing through town, due to the hazardous nature of the crossing where the accident in question occurred. The minutes of the Town Council, letters between the Town Council and the railroad, and intercorporate memoranda between railroad officials on the subject matter of the crossing should have been admitted into evidence. They were relevant to show notice of the claimed hazardous conditions and the intent of the railroad with respect to the same. These documents go to the issue of ordinary care to be exercised by the railroad and may go to the issue of punitive damages as an indication of wantonness or oppressiveness. The intercorporate memoranda are also relevant as possible admissions of a party opponent. *Runkle v. Burlington N., Inc., 188 M 286, 613 P2d 982 (1980).*

*Quiet Title Action -- Punitive Damages and Attorney Fees Awards:* Lack of good faith in an adverse possession case will not necessarily support a punitive damages award for slander of title. Testimony of failure to recognize the opposing party in a quiet title action from a previous business transaction and of reliance on the Secretary of State's information that the party corporation had no registered agent for service of process, although part of the determination of a lack of good faith, was sufficient to rebut an allegation of malice as required for the award of punitive damages. There being no statutory or contractual provision for attorney fees in this case, a common-law exception would be required for such an award. Without proof that the defendant acted fraudulently, maliciously, or with bad faith toward the plaintiff in a quiet title action, attorney fees will not be awarded. A decision denying attorney fees will not be disturbed absent abuse of discretion by the trial court. *Russell Realty v. Kenneally, 185 M 496, 605 P2d 1107 (1980).*

*Closing Argument -- Punitive Damages:* When punitive damages were held impermissible in a prior appeal of this case, plaintiff's counsel did not make arguments for punitive damages in closing statements at retrial as defendant alleged. *McGee v. Burlington N., Inc., 174 M 466, 571 P2d 784 (1977).*

*Punitive Damages Not Allowable Under Federal Employers' Liability Act:* Court erred in allowing plaintiff to amend his complaint alleging willful and wanton conduct as a basis for punitive damages because only compensatory damages are the measure of damages recoverable under the *Federal Employers' Liability Act. State ex rel. Burlington N., Inc. v. District Court, 169 M 480, 548 P2d 616 (1976).*

*Fraud in Contract:* Fact that alleged trickery by carpet seller arose during the contracting for the sale and installation of the carpeting did not make it "arise from the contract" within this section; the action was in tort, independent of the contract, and exemplary damages were not barred by this section. *Paulson v. Kustom Enterprises, Inc., 157 M 188, 483 P2d 708 (1971).*

*Attractive Nuisance:* In attractive nuisance case, parents of deceased child were not entitled to exemplary damages in absence of proof of willful disregard of duty or indifference on part of contractor which would permit inference of malice; exemplary damages are extraordinary in nature and are allowed as punishment where something more than mere negligence is alleged and proven. *Gagnier v. Curran Constr. Co., 151 M 468, 443 P2d 894 (1968).*

*Counterclaim:* On counterclaim by debtor against bank suing on note of debtor, evidence showing that bank converted funds and property of debtor to debtor's son for which debtor was not responsible and evidence showing bona fide intent of debtor to pay note was sufficient to warrant award of exemplary damages to debtor. *Sec. St. Bank of Harlem v. Kittleson, 149 M 183, 425 P2d 72 (1967).*

*Breach of Contract:* Under this section an insurer is not liable for exemplary damages for willful or fraudulent breaches of contract. *Wade v. Great Am. Ins. Co., 255 F. Supp. 735 (D.C. Mont. 1966).*

Punitive damages could not be allowed on a contract between laundromat owner and company that sold washing machines and dryers, where laundromat owner relied on the contract rather than on prior oral promises to help install the machines. *Ryan v. Ald, Inc., 146 M 299, 406 P2d 373 (1965).*

Plaintiff was not entitled to exemplary damages in action for allegedly fraudulent representations by defendant's insurance adjuster inducing execution of a contract of release by the plaintiff. *Westfall v. Motors Ins. Corp., 140 M 564, 374 P2d 96 (1962).*

*Exemplary Damages -- Not a Right:* The plaintiff is never entitled to exemplary damages as a matter of right, regardless of the situation or the sufficiency of the facts, and something more than mere negligence must be alleged and proved. *Spackman v. Ralph M. Parsons Co., 147 M 500, 414 P2d 918 (1966).*

*Inadmissibility of Oral Statements:* Since punitive damages cannot be awarded on obligations arising out of contract, evidence outside the agreement that attempts to prove a basis for such damages is inadmissible as falling within the parol evidence rule. *Ryan v. Ald, Inc., 146 M 299, 406 P2d 373 (1965),* followed, with respect to photographic evidence, in *Barnes v. United Indus., Inc., 275 M 25, 909 P2d 700, 53 St. Rep. 17 (1996).*

*Auto Collision -- Evidence Insufficient -- No Exemplary Damages:* Complaint in an action arising out of an automobile collision, alleging that defendant was driving at the rate of 40 miles an hour and on the wrong side of the road, was sufficient to sustain a charge of mere negligence but insufficient to warrant recovery of exemplary damages. *Thompson v. Shanley, 93 M 235, 17 P2d 1085 (1932),* distinguished in *Linney v. Chicago, Milwaukee, St. Paul & Pac. R.R., 94 M 229, 21 P2d 1101 (1933).*

*When Supreme Court Will Interfere on Appeal:* Unless an alleged excessive award of punitive damages appears to have been influenced by passion, prejudice, or some improper motive or is outrageously disproportionate either to the wrong done or the situation or circumstances of the parties, the Supreme Court will not generally interfere; there is no established rule to be followed for ascertaining whether such an award is excessive. *Johnson v. Horn, 86 M 314, 283 P 427 (1929).*

*Conversion of Personal Property:* Where the jury in an action in conversion found in favor of plaintiff's contention that defendant chattel mortgagee, in violation of his agreement extending the time within which plaintiff could pay his debt, caused an officer to seize the chattel, thus acting maliciously and oppressively, an award of exemplary damages was justified. *Ramsbacher v. Hohman, 80 M 480, 261 P 273 (1927).*

In cases of conversion of personal property, the statute authorized the imposition of punitive damages where the defendant acted maliciously, fraudulently, or oppressively, either in taking or detaining the property in controversy. *De Celles v. Casey, 48 M 568, 139 P 586 (1914).*

The complaint in an action for damages for a conversion, which alleged, among other things, that defendants "did unlawfully, maliciously, fraudulently, and oppressively take and carry away" the property in controversy and refused restitution of the same after repeated demands, was broad enough to warrant inquiry into the motives and behavior of defendants and to justify the giving of an instruction that exemplary damages might be awarded for oppressively, fraudulently, or maliciously withholding the chattels after demand. *Shandy v. McDonald, 28 M 393, 100 P 203 (1909).*

*Malicious Prosecution:* It is within the province of the jury to allow exemplary as well as compensatory damages in an action for malicious prosecution, and unless its determination appears to have been influenced by passion, prejudice, or some other improper motive or the amount is outrageously disproportionate to the wrong done or the situation or circumstances of the parties, the award will not generally be disturbed. *Cornner v. Hamilton, 62 M 239, 204 P 489 (1922).*

*Exemplary Damages to Be Separately Stated:* Where in an action in claim and delivery exemplary damages were not authorized upon any theory and the jury allowed $ 500 damages in a lump sum without designating what part was intended as actual and what part as punitive damages, the cause will be remanded for a new trial, it being impossible to determine from the verdict the amount intended to be allowed as damages by way of punishment. *Luther v. Lee, 62 M 174, 204 P 365 (1922).*

*Wrongful Death:* Damages by way of punishment, in addition to those actually sustained, may be recovered in an action against a mining company for the negligent and wrongful killing of plaintiff, a miner, where the complaint charges that the defendant company was primarily responsible for the death of decedent. *Olsen v. Mont. Ore Purchasing Co., 35 M 400, 89 P 731 (1907).*

### OPPRESSION, FRAUD, OR MALICE

*No Genuine Issue Whether Employer Acted With Intention or Malice in Employee's Injury -- Summary Judgment Proper Under Sherner Standard:* Roy contended that his employer was liable for damages beyond workers' compensation coverage by failing to provide training in ladder safety, having no policy concerning the use of safety belts on aerial ladders, and failing to abide by a letter from the federal Occupational Safety and Health Administration (OSHA) giving notice that there was a high probability that employees would be injured while performing midline work on aerial ladders without a safety belt. The District Court summarily dismissed the claims, and on appeal, the Supreme Court affirmed. Although the employer did not provide training in the use of safety belts, there was no evidence that the employer failed to train Roy in the face of knowledge that Roy would be injured if a safety belt was not used, nor was there a genuine issue of fact whether the employer had a policy requiring the use of safety belts on aerial ladders. Roy also failed to show that the employer was aware of the OSHA letter, and given the unclear language of federal regulations on the issue, Roy could not prove that the employer acted with malice, as defined in this section. Applying *Sherner v. Conoco, Inc., 2000 MT 50, 298 M 401, 995 P2d 990 (2000),* the Supreme Court concluded that absent a showing that the employer had knowledge of a high probability of injury and acted with intentional indifference to or disregard of that knowledge, summary judgment was proper. *Roy v. Blackfoot Tel. Co-op, Inc., 2004 MT 316, 324 M 30, 101 P3d 301 (2004).* See also *Gee v. Egbert, 209 M 1, 679 P2d 1194 (1984).*

*Employer Unaware That Employee Would Be Injured During Routine Job Activity -- No Showing of Employer Malice Under Sherner Standard:* Olszewski was seriously injured while loading building trusses onto a flatbed truck. Olszewski recovered workers' compensation benefits but also brought an action alleging that the injury was covered under the 1999 intentional act exception in *39-71-413,* which was in effect when the injury occurred. The District Court found no showing of malicious action on the part of the employer or foreman and granted summary judgment to the employer and foreman. On appeal, the Supreme Court applied the malicious intent standard in *Sherner v. Conoco, Inc., 2000 MT 50, 298 M 401, 995 P2d 990 (2000),* and affirmed. Olszewski was unable to provide evidence that the employer knew that employees would actually be injured by a routine that was usually performed without incident, and absent a showing of that material fact, the statutory exception did not apply and summary judgment was proper. *Olszewski v. BMC W. Corp., 2004 MT 187, 322 M 192, 94 P3d 739 (2004).*

*No Showing of Malicious Act or Omission by Coworker in Death of Employee -- Workers' Compensation Exclusivity Doctrine Applicable under 1999 Statute:* Under the 1999 version of *39-71-413* and *Sherner v. Conoco, Inc., 2000 MT 50, 298 M 401, 995 P2d 990 (2000),* a plaintiff was required to show both an intentional and malicious act or omis-

sion in order to avoid the workers' compensation exclusivity doctrine (revised in 2001 to require only the showing of an intentional act or omission). Here Everhard, a mine worker, was killed by a train driven by Aafedt after signaling that Aafedt could proceed. Everhard's estate sued Aafedt and the mining company. The District Court concluded that Aafedt's conduct was intentional when he moved the train without seeing Everhard, but there was no showing that Everhard suffered an injury caused by actual malice by Aafedt or the company, so summary judgment was granted to defendants. The Supreme Court affirmed. As a matter of law, it could not be said that Aafedt deliberately proceeded to act in conscious or intentional disregard or even indifference to the high probability of injury to Everhard under the definition of actual malice, so the estate failed to overcome the workers' compensation exclusive remedy rule, and summary judgment was proper. *Blain v. Stillwater Min. Co., 2004 MT 141, 321 M 403, 92 P3d 4 (2004).*

*Punitive Damages Owing for Fraud Connected With Sexual Assault:* Following a sexual assault by a coworker, Beaver sought punitive damages. The District Court held that the coworker was unable to control his impulses, but was not guilty of fraud or malice and thus was not liable for punitive damages. The Supreme Court disagreed and reversed. The record showed that the coworker's actions were not a spur-of-the-moment development but that the coworker had worked for several hours to place Beaver in a position in which she would be vulnerable to sexual advances, including making false representations of work-related necessity. These acts constituted actual fraud, and the coworker was liable for punitive damages under *27-1-220* and this section. *Beaver v. Dept. of Natural Resources and Conservation, 2003 MT 287, 318 M 35, 78 P3d 857 (2003).*

*Erroneous Conclusion That Elements of Malicious Prosecution by State Not Established -- Judgment as Matter of Law Improper:* Plaintiffs were cited by the state for various water quality violations related to their public swimming pools, drinking water, and discharge from a sewage lagoon. The charges were ultimately dropped, and both plaintiffs filed separate actions that were settled, except for plaintiffs' malicious prosecution claims against the state, which were joined for trial by jury. At the close of plaintiffs' case, the state's motion for judgment as a matter of law was granted, so plaintiffs appealed. As set out in *Orser v. St., 178 M 126, 582 P2d 1227 (1978),* in a civil action for malicious prosecution, plaintiff must introduce sufficient proof of the following elements: (1) a judicial proceeding has been commenced and prosecuted against the plaintiff; (2) the defendant was responsible for litigating, prosecuting, or continuing the proceeding; (3) there is lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the proceeding terminated in favor of the plaintiff; and (6) the plaintiff suffered damages. Here, the District Court found that plaintiffs had not met their burden of proof regarding elements three, four, and five. The Supreme Court examined each of those elements--lack of probable cause, malice, and favorable termination of the underlying suit--and concluded that the elements were met, warranting reversal for trial on the merits. Judgment as a matter of law averts trial by jury and is proper only in rare cases when undisputed evidence admits of only one conclusion. Although the proceedings to date in this case did not demonstrate guilt or innocence, plaintiffs nevertheless made out a prima facie case that warranted jury determination. *Plouffe v. Dept. of Public Health and Human Services, 2002 MT 64, 309 M 184, 45 P3d 10 (2002),* following *McGuire v. Armitage, 184 M 407, 603 P2d 253 (1979), Miller v. Watkins, 200 M 455, 653 P2d 126 (1982),* and *Sacco v. High Country Independent Press, Inc., 271 M 209, 896 P2d 411 (1995).*

*New Standard for Determining Whether Intentional or Malicious Act by Employer Constitutes Tortious Conduct -- Summary Judgment Improper:* Sherner was injured on the job and sued his employer, Conoco, Inc. (Conoco), for damages on grounds that Conoco was guilty of malicious acts or omissions that caused the injuries. The District Court ruled that the tort claim against Conoco was barred by the exclusivity provision in *39-71-411.* Citing *Calcaterra v. Mont. Resources, 1998 MT 187, 289 M 424, 962 P2d 590 (1998),* the court concluded that Sherner was required to allege and establish that Conoco had actual knowledge that Sherner was being harmed in order to establish that Conoco's acts were malicious and, absent sufficient facts to raise a genuine issue of material fact that Conoco directed intentional harm at Sherner, granted summary judgment for Conoco. In District Court, Sherner sufficiently raised the issue of the proper standard for determining whether Conoco's act was malicious to allow the Supreme Court to address the issue on appeal, so the court proceeded to create a new standard, applying the plain meaning of the statutory definitions, by which to judge whether an act or omission is intentional or malicious. Applying common definitions of "intentional" and "act" and the appropriate definition of "malice" for use in *39-71-413*--the one provided in this section, rather than the one in *1-1-204*--the Supreme Court reversed, finding that genuine issues of material facts existed, regarding whether Conoco acted maliciously, as to preclude summary judgment. A worker need show only that an employer's act or omission, which caused the injury, was intentional or malicious to bring a tort action against the employer under *39-71-413.* *Sherner v. Conoco, Inc., 2000 MT 50, 298 M 401, 995 P2d 990, 57 St. Rep. 241 (2000),* following *Sitzman v. Schumaker, 221 M 304, 718 P2d 657, 43 St. Rep. 831 (1986).* See also *Enberg v. Anaconda Co., 158 M 135, 489 P2d 1036 (1971).* See also *Olszewski v. BMC W. Corp., 2004 MT 187, 322 M 192, 94 P3d 739 (2004),* in which summary

judgment was held to be proper under the Sherner standard absent evidence that an employer knew that an employee would actually be injured by a routine that was usually performed without incident.

*Tort of Intentional Interference With Business Relations or Prospective Economic Advantage -- Contract Between Parties Not Required:*  The elements of the tort of intentional interference with prospective economic advantage are identical with the tortious or intentional interference with contractual relations, consisting of acts that: (1) are intentional and willful; (2) are calculated to cause damage to plaintiff's business; (3) are done with the unlawful purpose of causing damage or loss without right or justifiable cause on the part of the actor; and (4) result in actual damages or loss. The key difference between the two tort theories is that unlike interference with contractual relations, intentional interference with either business relations or prospective economic advantage does not require that a contract exist between any of the involved parties. Rather, the focus of the legal inquiry is on the intentional acts of the malicious interloper in disrupting a business relationship, and "business" includes the reasonable expectation of entering into a valid business relationship. Under the theory of intentional interference with either business relations or prospective economic advantage, a person who is involved in an economic relationship with another or who is pursuing reasonable and legitimate prospects of entering such a relationship is protected from a third person's wrongful conduct that is intended to disrupt the relationship. *Maloney v. Home & Inv. Center, Inc., 2000 MT 34, 298 M 213, 994 P2d 1124, 57 St. Rep. 144 (2000).* See also *Buckaloo v. Johnson, 537 P2d 865 (Calif. 1975), Bolz v. Myers, 200 M 286, 651 P2d 606 (1982), Ellis v. Valdez, 686 P2d 700 (Alaska 1984),* and *Sebena v. Am. Auto. Ass'n, 280 M 305, 930 P2d 51 (1996).*

*Bank Loan for Purchase of Contaminated Real Property -- Negligent Misrepresentation, Constructive Fraud, and Punitive Damages -- Summary Judgment Reversed:*  After the Department of Health and Environmental Sciences (now Department of Environmental Quality) discovered that soil had been contaminated with gasoline leaking from Habets' and other service station gas tanks in violation of *75-10-715,* Habets entered into a buy-sell agreement for sale of his service station to Mattingly. Mattingly then met with First Bank Vice President Joe Dolan to secure financing. Dolan conducted a physical inspection of the service station property in order to obtain an impression of the value of the property and to determine whether First Bank would be secure in its loan. At the time of his inspection, Dolan was aware of the contamination caused by the service station gas tanks. The loan was approved by the First Bank loan committee made up of Dolan, Susan Hemmer, the bank president, and John Mulcare, an owner of another service station, all three of whom were aware of the contamination but did not discuss it with Mattingly or the loan committee. Mattingly learned of the contamination much later when he tried to sell the station. He then brought an action against Habets, Habets' realtor, and First Bank, alleging constructive fraud, negligence, and negligent misrepresentation by First Bank and seeking punitive damages. The District Court granted summary judgment to First Bank on all issues. The Supreme Court, following *Kitchen Krafters, Inc. v. Eastside Bank of Mont., 242 M 155, 789 P2d 567 (1990),* stated that a threshold issue in a claim of negligent misrepresentation is whether the defendant made a representation as to a past or existing material fact upon which the claim is based. The Supreme Court pointed out that except for some basic facts involving the existence of the contamination, Dolan's visit to the gas station, and the action of the loan committee, the parties disagreed over the nature, scope, and import of the valuation of the property; disagreed whether First Bank's appraisal of the property and approval of the Mattingly loan constituted a representation as to the value of the property; and, if it was a representation, disagreed over whether Mattingly relied upon that representation. Citing *McGregor v. Cushman/Mommer, 220 M 98, 714 P2d 536 (1986),* the Supreme Court also stated that special circumstances may support a claim for constructive fraud when a party makes misleading statements concerning the physical condition or commercial value of real estate and pointed out that a jury might find that representations by First Bank with regard to the property would constitute these "special circumstances". Concerning the requirement of *28-2-406* that in a claim for constructive fraud one party must gain an advantage over the other, the Supreme Court cited the fact that upon closing the sale of the station to Mattingly, First Bank was able to pay off a loan for the property made to Habets and that in making the loan to Mattingly, First Bank was able to collect interest income from the loan. Because there were facts in dispute as to the foregoing issues, the Supreme Court held that summary judgment was not appropriate and that the District Court erred in granting summary judgment in favor of First Bank. Because this section allows punitive damages against a party guilty of actual fraud or malice, the Supreme Court also reversed the District Court on the issue of punitive damages. *Mattingly v. First Bank of Lincoln, 285 M 209, 947 P2d 66, 54 St. Rep. 1116 (1997).*

*Punitive Damages Properly Denied:*  When defendant insurance company was found not liable for fraud or actual malice, punitive damages were properly denied. *Bartlett v. Allstate Ins. Co., 280 M 63, 929 P2d 227, 53 St. Rep. 1300 (1996).*

*Fraudulent Insurance Agent Whose Company Knew of and Did Nothing About Fraud -- Punitive Damages Justified Against Both:*  An insurance agent was found to have fraudulently misled the plaintiff insureds, and compensatory

damages were granted against the agent and his company. The agent's conduct was described by coworkers as unethical and by various managers as fraudulent and was repeatedly reported to higher executive personnel. Regional and national personnel knew about it. One manager frequently made such disparaging remarks as "piss on 'em" in reference to customers. Two managers told another, who complained to the two about the agent, that he should mind his own business, and one of the managers told the complaining manager that they operated under the "buyer beware" theory. Nothing was done about the agent's fraudulent practices, and when he was terminated, it was for lack of production, not the fraudulent practices. There was substantial credible evidence clearly and convincingly supporting an award of $ 30,000 in punitive damages against the agent and $ 6,127,845 in punitive damages against the company. *Cartwright v. Equitable Life Assurance Soc'y, 276 M 1, 914 P2d 976, 53 St. Rep. 268 (1996).*

*Sufficiency of Defrauded Insureds' Testimony When Supported by Defrauding Insurance Agent's Superior and When Largely Supported by Agent:* In an insurance fraud action, four other insureds testified that the insurance agent misled them in the same way as he did plaintiffs and the agent's testimony corroborated plaintiffs' testimony in many particulars. A superior of the agent, who was responsible for Montana, Colorado, and Wyoming, wrote memos reviewing the agent's misrepresentations and referring, among other things, to that "mess up in Montana", meaning complaints against the agent, and to "another policy holder being raped by" the agent. He testified that he developed no evidence that would refute any of the complaints, and that after reviewing the complaints, he concluded that it was the agent's common practice to mislead people, thereby destroying the value of their policies, in order to sell them more life insurance. This met the clear and convincing evidence standard of proof at trial and the standard of review that the lower court's award must be supported by substantial credible evidence. *Cartwright v. Equitable Life Assurance Soc'y, 276 M 1, 914 P2d 976, 53 St. Rep. 268 (1996).*

*Substantial Evidence of Malicious Conduct in Conversion Action -- Punitive Damages Proper:* Evidence that a corporate secretary intentionally filed a false police report in an attempt to convert a truck from the lessor to the corporation was sufficient to support a jury finding of malicious conduct, warranting the award of punitive damages. *King v. Zimmerman, 266 M 54, 878 P2d 895, 51 St. Rep. 659 (1994).*

*Malice as Applied to Intentional Injury:* The definition of actual malice in this section, adopted in 1987 for purposes of punitive damages, did not change the standard used to determine whether an injury was intentional for purposes of the exclusivity provision of the Workers' Compensation Act. The definition of malice in *1-1-204* is still applicable to workers' compensation cases. *Blythe v. Radiometer America, Inc., 262 M 464, 866 P2d 218, 50 St. Rep. 1640 (1993).*

*No Error in Court's Refusal to Strike Punitive Damages Award -- Interpretation of Testimony Sustained:* Dees sued American National Fire Insurance Company, alleging that the insurer was guilty of actual malice in failing to settle his claim for crop damage caused by hail. Testimony at trial showed that the insurance adjusters did not examine adjacent fields to determine whether any damage had occurred there, nor did they consult experts to determine how Dees' variety of wheat differed in hail damage compared to other varieties of wheat. An executive officer of the insurer also testified on the issue of punitive damages by using language that could be interpreted to mean that in a future similar situation, the insurer would take action to get the attention of its adjusters to change their investigation and adjustment procedures. The Supreme Court held that the jury could have concluded that there was clear and convincing evidence that American National was guilty of malice as defined in subsection (2) of this section. The Supreme Court also held that the District Court Judge was in the best position to hear and evaluate the testimony of the insurer's executive and to determine whether the requirements for punitive damages had been met. The District Court therefore did not err in refusing to strike the award of punitive damages. *Dees v. Am. Nat'l Fire Ins. Co., 260 M 431, 861 P2d 141, 50 St. Rep. 1068 (1993).*

*Salesman Personally Liable for Negligent Misrepresentation:* Plaintiffs purchased a subdivision parcel from defendant and subsequently contracted with defendant, a sales agent for a home center, to purchase a modular home to be placed on the parcel. Relying on defendant's advice and assurance that the property would be properly prepared, plaintiffs installed the home on concrete piers instead of a full foundation. Upon learning from engineering reports that extensive water damage to the home was caused by foundation instability, plaintiffs filed an action, alleging that the defendant had falsely misrepresented that the land had been properly prepared prior to installation of the home. Affirming the District Court decision, the Supreme Court ruled that the defendant was personally liable for selling property as appropriate for a modular home and for unreasonably representing to plaintiffs that the home was suitable for the pier-type foundation. *Williams v. DeVinney, 259 M 354, 856 P2d 546, 50 St. Rep. 831 (1993).*

*Requisite Criteria Followed -- Punitive Damage Award Proper:*    Appellant was found guilty of both actual fraud and actual malice, and in a separate hearing, punitive damages of $ 30,000 were awarded. Appellant argued that the award was inappropriate because there was no basis for a finding of actual fraud. However, the uncontested finding of actual malice was a sufficient basis for the award. Because the District Court followed the requisite criteria in determining the award and stated the reasons for making it, the punitive damages award was affirmed. *Flikkema v. Kimm, 255 M 34, 839 P2d 1293, 49 St. Rep. 880 (1992).*

*Punitive Damages Awarded Despite Underlying Contract:*    The defendant argued that the lower court had erred in awarding punitive damages because the action was based upon breach of contract. The Supreme Court held that the statute precluding punitive damages for breach of contract did not apply to causes of action arising before the law's passage in 1987. The Supreme Court also held that if the conduct of a defendant is found to be fraudulent, an underlying contract will not defeat the award of punitive damages. *Lee v. Armstrong, 244 M 289, 798 P2d 84, 47 St. Rep. 1421 (1990).*

*Malicious Interference With Another's Business -- Punitive Damages Justified:*    The defendant claimed to have a personal service contract with the plaintiff. When the plaintiff refused to honor the alleged service contract, the defendant contacted the lessee of a gravel pit owned by the defendant and ordered the lessee to refuse to honor a contract the lessee had with the plaintiff to sell gravel to the plaintiff. The plaintiff had to obtain the needed gravel elsewhere at an additional cost of $ 7,500. The Supreme Court affirmed the lower court's award of $ 7,500 compensatory damages and $ 8,500 punitive damages on the basis that the defendant's action was intentional and malicious. *Tindall v. Konitz Contracting, Inc., 240 M 345, 783 P2d 1376, 46 St. Rep. 2182 (1989).*

*Intentional Interference With Prospective Economic Advantage:*    Plaintiff alleged that defendant knew plaintiff needed to receive a subcontract award to avoid financial ruin and that defendant intentionally pressured the contractor into accepting another party's bid. The Supreme Court reversed the lower court and remanded for a new trial, ruling that the issue of punitive damages should have been submitted to the jury and that the jury could find that defendant had intentionally taken advantage of plaintiff's financial disability in order to cause cruel and unjust hardship. *Phillip R. Morrow, Inc. v. FBS Ins. Mont.-Hoiness Labar, Inc., 236 M 394, 770 P2d 859, 46 St. Rep. 455 (1989).*

*Sufficient Evidence of Malice in Wrongful Attachment:*    Defendants contended that evidence was insufficient to support a verdict that they were guilty of malice in a wrongful attachment case. However, evidence showed that defendants must have been aware from the time of attachment that it was probably wrongful, yet they perfected and maintained attachment for some 8 years. Such evidence was sufficient to support the finding of malice or oppression, justifying the award of punitive damages. *Stensvad v. Towe, 232 M 378, 759 P2d 138, 45 St. Rep. 1129 (1988).*

*Jury Finding of Fraud and Breach of Good Faith and Fair Dealing in Contract Action -- Punitive Damages Warranted:*    Defendant contended a tort recovery was incorrectly allowed in a breach of contract action because the case dealt with an ordinary commercial setting in which two parties negotiated with relatively equal bargaining power and without any special relationship that would generate an exceptional duty. The Supreme Court noted that the jury found not only a breach of contract and good faith but also actions constituting fraud. The court held that when both fraud and a breach of the implied covenant of good faith and fair dealing are found, the plaintiff is free to pursue punitive damages. *Webcor Electronics, Inc. v. Home Electronics, Inc., 231 M 377, 754 P2d 491, 45 St. Rep. 695 (1988).*

*Refusal to Instruct on Punitive Damages Proper Absent Demonstration of Oppression, Fraud, or Malice:*    Plaintiffs seeking punitive damages on a claim of negligence in purchase of a mobile home were able to show, at most, that defendant's repeated attempts to repair defects were ineffective. The District Court correctly refused to instruct on punitive damages because plaintiffs failed to demonstrate oppression, fraud, or malice, actual or presumed, by clear and convincing evidence. *McJunkin v. Kaufman, 229 M 432, 748 P2d 910, 44 St. Rep. 2111 (1987).* (See 1987 amendment.)

*Punitive Damages Proper in Action to Quiet Title:*    In this action to quiet title to certain real property, the defendants ignored the plaintiffs' request to negotiate the boundary line and destroyed plaintiffs' fences. Punitive damages therefore were recoverable for these tortious acts of malice and oppression. *Bollinger v. Hollingsworth, 227 M 454, 739 P2d 962, 44 St. Rep. 1228 (1987).* (See 1987 amendment.)

*Fraud and Misrepresentation -- Punitive Damages Proper:*    Bank appealed a judgment awarding compensatory and punitive damages to a commercial trout company upon a finding that a breach of contract and misrepresentation by the bank and its agent proximately caused the trout farm's failure. The Supreme Court ruled that punitive damages were properly awarded upon a sufficient showing of fraud and misrepresentation. *Crystal Springs Trout Co. v. First State Bank of Froid, 225 M 122, 732 P2d 819, 44 St. Rep. 90 (1987).*

*Punitive Damages for Malicious Conduct Not Arising From Contract:* Plaintiff's amended complaint requested punitive damages for the removal of a sprinkler from his property. The District Court awarded $ 5,000 punitive damages as a punishment for the "breach of defendant's obligation, not arising from the contract she broke, to allow the Plaintiff peaceable occupation of his home and property" and for "Defendant's refusal to return either the spray system or the money ($ 5,000) paid down on it", both of which the court found "oppressive and malicious". On appeal, defendant argued that the award of punitive damages was improper because this was a contract action. The Supreme Court affirmed the award, holding that there was substantial evidence that the defendant's trespass on plaintiff's property constituted malicious conduct not arising from contract under *27-1-221. Rauch v. Michel, 221 M 1, 716 P2d 617, 43 St. Rep. 587 (1986).*

*Commission of Bad Faith Tort Against Depositor by Bank:* The District Court did not err in instructing the jury to consider recovery by bank depositor against the bank under bad faith tort principles and to accordingly consider punitive damages. The depositor and his nephew opened a checking account with a card requiring the signatures of both on checks. They then formed a partnership. The nephew induced the bank to change the card so that he could issue checks without the depositor's signature. The bank did not notify the depositor of the change or obtain his authorization for it. The bank told depositor his signature was not needed but did not tell him about the new card, and depositor disagreed. Later the bank told him it would not change its policy of honoring checks signed only by the nephew. When depositor's attorney told bank not to do so, the bank stated the card required only one signature and the bank would not change the card unless both the nephew and the depositor requested it. The bank then told depositor the card was lost but later that day produced both cards. Depositor sued, and the bank subsequently took various negative and detrimental actions against his credit status, refused loans of a type formerly granted, canceled his ready reserve account, and refused to pay several items presented before he was notified that the account had been canceled. *Tribby v. NW. Bank of Great Falls, 217 M 196, 704 P2d 409, 42 St. Rep. 1133 (1985).* See also *Flanigan v. Prudential Fed. S&L Ass'n, 221 M 419, 720 P2d 257, 43 St. Rep. 941 (1986).*

*Punitive Damages Proper in Action for Breach of Implied Covenant of Good Faith and Fair Dealing and for Negligent Investigation:* The plaintiff was properly granted punitive damages for the hospital's breach of implied covenant of good faith and fair dealing and for negligence in investigating the charges for which plaintiff was dismissed from employment as a probationary employee. *Crenshaw v. Bozeman Deaconess Hosp., 213 M 488, 693 P2d 487, 41 St. Rep. 2251 (1984).*

*Lender's Failure to Honor Renegotiated Loan Payments:* Bank's employee, Johnson, told defendants that their note with the bank would be renegotiated to allow further time for payment. Another employee then refused to renegotiate, and he offset defendants' checking account balance against the note without telling defendants, after defendants told him they had relied on Johnson and would not be able to pay on the note's due date. Several of defendants' checks were then dishonored due to insufficient funds. If a duty to exercise good faith is imposed by law rather than by a contract, breach of the duty is tortious and punitive damages are thus recoverable if the conduct is sufficiently culpable. Here, punitive damages could have been granted on the basis of malice, fraud, oppression, or all three, and a new trial was granted because the judge refused to submit the punitive damages issue to the jury. *First Nat'l Bank of Libby v. Twombly, 213 M 66, 689 P2d 1226, 41 St. Rep. 1948 (1984).* See also *Flanigan v Prudential Fed. S&L Ass'n, 221 M 419, 720 P2d 257, 43 St. Rep. 941 (1986), Dunfee v. Baskin-Robbins, Inc., 221 M 447, 720 P2d 1148, 43 St. Rep. 964 (1986), Cooper v. Rosston, 232 M 186, 756 P2d 1125, 45 St. Rep. 978 (1988),* and *Bottrell v. Am. Bank, 237 M 1, 773 P2d 694, 46 St. Rep. 561 (1989).*

*Bad Faith -- Allowance of Punitive Damages Proper:* Plaintiff, a Kalispell ophthalmologist, pierced Frisnegger's eyeball with a needle while administering a local anesthetic to his eyelid. A cataract formed on the eye. Plaintiff notified his local insurance agent and on his direction notified defendant in writing that defendant was entirely at fault. Frisnegger filed suit against plaintiff. Defendant did not feel the claim was worth over $ 45,000 and refused to settle within the policy limits of $ 100,000. A jury verdict was returned for Frisnegger in the amount of $ 175,000. Plaintiff then brought suit against defendant alleging negligence and bad faith on the part of defendant for failure to settle the claim within policy limits. A jury verdict awarding plaintiff compensatory damages of $ 250,000 and punitive damages of $ 300,000 was returned. On appeal, defendant contended that the award of punitive damages was unsupportable, as there was no evidence of intentional wrongdoing, a desire to injure plaintiff, or any illegal withholding of policy benefits. Plaintiff contended the award was proper in light of defendant's failure to investigate, evaluate, or negotiate the claim in good faith and failure to disclose matters of material interest to the insured. The Supreme Court stated that presumed malice sufficient to justify punitive damages includes unjustifiable conduct. In *Owens v. Parker Drilling Co., 207 M 446, 676 P2d 162, 41 St. Rep. 66 (1984),* the court defined unjustifiable conduct to include reckless disregard of duty. The testi-

mony in this case was such that the jury could find defendant was recklessly indifferent to the risk to which it was putting plaintiff. *Gibson v. W. Fire Ins. Co., 210 M 267, 682 P2d 725, 41 St. Rep. 1048 (1984)* (decided prior to 1985 and 1987 amendments).

*Auto Accident -- Gross Negligence and Recklessness:* Failure to yield to oncoming traffic that constitutes gross negligence and recklessness supports an award of punitive damages. It is not necessary to show actual malice to recover punitive damages. The District Court's findings meet the standard for presumed malice. *Eliason v. Wallace, 209 M 358, 680 P2d 573, 41 St. Rep. 758 (1984)* (decided prior to 1985 and 1987 amendments).

*Actual or Implied Malice -- Jury Question:* Scaffolding was needed elsewhere, so Lins used a ladder to remove the coverings from ceiling sprinkler nozzles. The ladder was leaned against the sprinkler pipes. The ladder slipped, and Lins was injured when he fell. Mydlarz was later directed to complete the removal of the nozzle covers using the ladder. He also fell and was seriously injured. A jury can award exemplary damages if the defendant has been found guilty of either actual or implied malice. The defendants were arguably guilty of actual or implied malice, and the issue of punitive damages should not have been taken from the jury. When deciding a motion for directed verdict by the defendants, the trial judge must view the evidence in a light most favorable to the plaintiff. *Mydlarz v. Palmer/Duncan Constr. Co., 209 M 325, 682 P2d 695, 41 St. Rep. 738 (1984)* (decided prior to 1985 and 1987 amendments).

*Punitive Damages Recoverable for Employment Discrimination Against Handicapped:* A violation of *49-4-101* warrants a claim for punitive damages if such violation is shown to be intentional or reckless. *Owens v. Parker Drilling Co., 207 M 446, 676 P2d 162, 41 St. Rep. 66 (1984).* (See 1987 amendment.)

*Standard for Presumed Malice:* When a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, and/or reckless to which the law of this state will allow imposition of punitive damages on the basis of presumed malice. *Owens v. Parker Drilling Co., 207 M 446, 676 P2d 162, 41 St. Rep. 66 (1984)* (decided prior to 1985 and 1987 amendments), followed in *Hart-Anderson v. Hauck, 230 M 63, 748 P2d 937, 45 St. Rep. 18 (1988),* and *Cooper v. Rosston, 232 M 186, 756 P2d 1125, 45 St. Rep. 978 (1988).*

*Constructive Fraud as Basis for Punitive Damages:* Section *27-1-221* allows punitive damages for fraud. Section *28-2-404* specifically defines fraud as including constructive fraud. The breach of a fiduciary relationship constituting a constructive fraud forms the basis for an award of punitive damages. *Purcell v. Automatic Gas Distrib., Inc., 207 M 223, 673 P2d 1246, 40 St. Rep. 1997 (1983).* (See 1987 amendment.)

*Fraud Involving Underlying Contract -- Exemplary Damages Allowed:* If the conduct of a defendant is tortious, the fact that there was an underlying contract does not defeat an award of punitive damages. In this case, the trial court found fraud, which would constitute a tort and provide a basis for an award of exemplary damages. *Purcell v. Automatic Gas Distrib., Inc., 207 M 223, 673 P2d 1246, 40 St. Rep. 1997 (1983).*

*Punitive Damages -- Insurance Settlement Practice of Restrictive Endorsement:* Plaintiff's son purchased life insurance, including an accidental death rider, from defendant. The son was found dead in a Bozeman motel room. The death was determined to be an overdose of chloroform through inhalation. The policy rider excluded payment on death due to suicide or drug overdose. On June 11, 1980, defendant sent plaintiff a check for the basic policy amount with a restrictive endorsement on the back. Plaintiff contested the denial of accidental death benefits. On August 20, plaintiff returned the tendered check, and on September 5, 1980, filed suit against defendant seeking actual and punitive damages. On September 9, 1980, defendant mailed the same check without the restrictive endorsement. A jury found that the plaintiff was not entitled to the accidental death benefits but awarded $ 30,000 in punitive damages. Defendant appealed. In order to award punitive damages there would have had to be a violation of the insurance laws for which a penalty is prescribed and actual damages. The court found that a restrictive endorsement as a general business practice in contested settlements was an unfair claim settlement practice. The actual damages were lost interest earnings and out-of-pocket expenses for legal counsel. Actual damages need only be nominal in order to award punitive damages. *Harris v. Am. Gen. Life Ins. Co., 202 M 393, 658 P2d 1089, 40 St. Rep. 164 (1983).*

*General Rule:* When punitive damages are given for the sake of example and to punish the defendant, to sustain an award against the objection that the evidence is insufficient, there must be substantial evidence in the record of oppression, fraud, or malice, actual or presumed, toward the plaintiff. *Johnson v. Murray, 201 M 495, 656 P2d 170, 39 St. Rep. 2257 (1982).* (See 1987 amendment.)

To warrant the recovery of punitive damages, the act complained of must not only be unlawful but must also partake somewhat of a criminal or wanton nature. It is an almost universally recognized rule that such damages may be recovered only in cases where the wrongful act complained of is characterized by some such circumstances of aggravation as willfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or gross fraud on the part of the defendant. *Graham v. Clarks Fork Nat'l Bank, 193 M 282, 631 P2d 718, 38 St. Rep. 1140 (1981).* (See 1987 amendment.)

*Harassing Persons by Legal Processes:* A peace officer gave defendant a speeding ticket with a maximum $ 5 fine. Defendant sued officer's supervisor and supervisor's wife for $ 1,050,007 by way of a "counterclaim" to the ticket, charging the supervisor and his wife with intimidation, compounding a felony, attempting to take money under false pretenses, using unauthorized police powers, operating a radio transmitter without an FCC license, and failure to display such a license. He also filed purported common-law liens against their personal property, crops, machinery, motor vehicles, estates, checking and savings accounts, stocks and bonds, bank safe deposit boxes, real property, and "signatures". He notified local banks of the liens and told supervisor and his wife the liens would not be removed until they satisfied his demands. The supervisor and his wife sued defendant. Defendant refused to settle, delayed the proceeding, did not hire an attorney to represent him, disregarded the Court Clerk's bill for filing his answer until default against him was requested, ignored a notice for hearing on damages, and showed utter disregard for plaintiff's rights and the proceedings of the courts. Malice was shown, and the evidence sustained award of $ 100,000 general damages and $ 100,000 punitive damages. No society governed by law and not by men could tolerate his deliberate and unprincipled actions. *Johnson v. Murray, 201 M 495, 656 P2d 170, 39 St. Rep. 2257 (1982).*

*Exemplary Damages — Intentional Interference With Business Relationships of Another:* When defendant committed the tort of intentional interference with business relationships of another and was guilty of fraud, oppression, or malice, actual or presumed, exemplary damages may be given in addition to actual damages. *Bolz v. Myers, 200 M 286, 651 P2d 606, 39 St. Rep. 1747 (1982).* (See 1987 amendment.)

*Malice Not Required in Contract Rescission Action:* In an action to rescind a contract to purchase an automobile, there was no requirement that plaintiff show malice, oppression, or fraud on the part of the seller in order to recover exemplary damages under *30-14-133. T & W Chevrolet v. Darvial, 196 M 287, 641 P2d 1368, 39 St. Rep. 112 (1982).*

*Implied Malice — Proof:* It is not necessary to show actual malice to recover punitive damages, as malice may be actual or presumed. Implied malice may be shown by proof that defendant engaged in a course of conduct knowing it to be harmful and unlawful. *Dvorak v. Huntley Project Irrigation District, 196 M 167, 639 P2d 62, 38 St. Rep. 2176 (1981).* (See 1987 amendment.)

*Malice Presumed:* In awarding exemplary damages, the jury may take into account whether the acts complained of are "of such nature as to demonstrate a reckless disregard of the rights of others". (*Butcher v. Petranek, 181 M 358, 593 P2d 743 (1979).*) The record amply supports a determination that the defendant evinced a reckless disregard for the rights of the plaintiffs. Under this section, the malice required for exemplary damages to be awarded may be actual or presumed. Where defendant's conduct is unjustifiable, "malice in law" is presumed. Defendant's use of force was unjustifiable. *Magnuson v. Billmayer, 189 M 458, 616 P2d 368, 37 St. Rep. 1597 (1980).* (See 1987 amendment.)

*Duress Upon Official:* The District Court erred in excluding the testimony of a former Town Councilman and railroad employee regarding the railroad's reaction to his motion to reduce the speed of trains at the crossing. If the railroad in fact utilized its position as employer to exert a form of duress upon its employee acting in an official capacity, such evidence might have a bearing in the mind of the jury to demonstrate wantonness or oppressiveness sufficient to establish a basis for punitive damages. *Runkle v. Burlington N., Inc., 188 M 286, 613 P2d 982 (1980).* (See 1987 amendment.)

*Willful and Malicious Deprivation of Use of Property — Damages:* In an action for actual and punitive damages for removal of a gate and approach to property of which plaintiff was a cotenant with defendant's wife, the Supreme Court found substantial evidence to support the findings of fact and conclusions of law determining the existence of a willful and malicious deprivation of the use of the property as well as the amount of damages (actual damages of $ 230 and punitive damages of $ 1,000). *Toeckes v. Baker, 188 M 109, 611 P2d 609 (1980).*

*Quiet Title Action — Punitive Damages and Attorney Fees Awards:* Lack of good faith in an adverse possession case will not necessarily support a punitive damages award for slander of title. Testimony of failure to recognize the opposing party in a quiet title action from a previous business transaction and of reliance on the Secretary of State's information that the party corporation had no registered agent for service of process, although part of the determination of

a lack of good faith, was sufficient to rebut an allegation of malice as required for the award of punitive damages. There being no statutory or contractual provision for attorney fees in this case, a common-law exception would be required for such an award. Without proof that the defendant acted fraudulently, maliciously, or with bad faith toward the plaintiff in a quiet title action, attorney fees will not be awarded. A decision denying attorney fees will not be disturbed absent abuse of discretion by the trial court. *Russell Realty v. Kenneally, 185 M 496, 605 P2d 1107 (1980).*

*Punitive Damages -- Malice Implied:* The insurer's conduct was both harmful to the insured and unlawful because it violated a statute. Its malice will therefore be implied because its actions were unjustifiable. Punitive damages are justified in such a case. *First Sec. Bank of Bozeman v. Goddard, 181 M 407, 593 P2d 1040 (1979).* (See 1987 amendment.)

*Exemplary Damages -- Wrongful Attachment:* The trial judge, without putting a money value on the damages, found "that the defendant incurred expenses and interruption of his business affairs caused by his having to stay in Montana to initiate legal proceedings to release the attachment . . ." and that defendant suffered embarrassment when served with the Writ of Attachment at a fairground grandstand in the presence of his friends, wife, and child. Therefore, exemplary damages were properly awarded in an action for wrongful attachment. *Miller v. Fox, 174 M 504, 571 P2d 804 (1977),* followed in *McNeil v. Currie, 253 M 9, 830 P2d 1241, 49 St. Rep. 312 (1992).* (See 1987 amendment.)

*Misrepresentation in Sale of Home:* Where the seller of a house represented that it had "two bathrooms" and showed buyers a room on the second floor equipped with the usual accoutrements of a bathroom, which buyer later discovered were not connected to any plumbing, and where shortly after buyers took possession the main sewerline burst due to faulty materials and installation, the buyer is not precluded from choosing to affirm the contract of sale and suing in tort seeking actual and punitive damages for fraud and deceit. *State ex rel. Dimler v. District Court, 170 M 77, 550 P2d 917 (1976).* (See 1987 amendment.)

*When Exemplary Damages Not Recoverable:* Taking possession of hay crop in exercise of rights under security agreement is not a ground for finding malice justifying assessment of exemplary damages. *Fairchild v. Williams Feed, Inc., 169 M 18, 544 P2d 1216 (1976).*

*Slander of Title:* In a slander of title action, where the defendant did not survey the lots which he claimed, never studied the abstract of title, and attempted to rely on a quitclaim deed from his secretary on the basis of her maiden name, there was a showing of malice that would entitle the plaintiff to punitive damages. *Jumping Rainbow Ranch v. Conklin, 167 M 367, 538 P2d 1027 (1975).*

*Insurance Settlement:* Where fraud of the insurer and agent in settling an automobile insurance claim by "cost of repair" and not "total loss" is alleged but no provision of the insurance code was violated, the insured was not entitled to exemplary damages. *State ex rel. Cashen v. District Court, 157 M 40, 482 P2d 567 (1971),* distinguished in *Firestone v. Bradshaw, 157 M 181, 483 P2d 709 (1971).*

*Water Rights Dispute:* In action concerning disputed water rights, plaintiff was not entitled to punitive damages under this section since defendants were not found to be guilty of oppression, fraud, or malice; further, exemplary or punitive damages cannot be recovered in absence of award of actual damages. *Smith v. Krutar, 153 M 325, 457 P2d 459 (1969).*

*Slander:* Where home owner's slanderous statements that builder had cheated him were made to numerous people in community over 2-year period and where speaker stated that "he was going to tack his builder's hide to the wall", jury had basis for finding sufficient malice to justify award of punitive damages. *McCusker v. Roberts, 152 M 513, 452 P2d 408 (1969).*

*Insurance Policy Default:* Insured was entitled to sue insurance company for actual damages for default on policy requiring it to pay car installments upon insured's disability as well as for exemplary damages since default was oppressive, malicious, or fraudulent and in violation of statute requiring prompt payment of claim. *State ex rel. Larson v. District Court, 149 M 131, 423 P2d 598 (1967),* distinguished in *State ex rel. Cashen v. District Court, 157 M 40, 482 P2d 567 (1971).*

*Eviction of Tenant:* Where a landlord, in doing an act which constructively evicts the tenant, is motivated by a desire to vex, injure, or annoy the tenant, the act is done maliciously and a jury may award punitive damages. *Cruse v. Clawson, 137 M 439, 352 P2d 989 (1960).*

A hotel proprietor who wrongfully forces an entry into the room of a guest and without just cause ejects him from it and from the house is liable not only for compensatory but also exemplary damages if the ejection is accompanied by circumstances indicating that it was prompted by malice, fraud, or a spirit of oppression. *Jones v. Shannon, 55 M 225, 175 P 882 (1918).* (See 1987 amendment.)

*Malice in Law·* "Malice in law" justifying an award of exemplary damages will be implied where defendant's conduct is unjustifiable. Evidence that overtaking automobile without warning, during severe snowstorm, seeking to pass, and, in so doing, sideswiping automobile in which accident victim rode would warrant finding that conduct of driver of overtaking automobile was unjustifiable, authorizing an implication of malice as basis for an award of exemplary damages. *Cherry-Burrell Co. v. Thatcher, 107 F2d 65 (9th Cir 1939).* See also *Dvorak v. Huntley Project Irrigation District, 196 M 167, 639 P2d 62, 38 St. Rep. 2176 (1981).* (See 1987 amendment.)

*Not Necessary to Claim Eo Nomine:* In an action for damages for the fraudulent use of a trademark, complaint asking exemplary damages need not set them out eo nomine but must allege that the acts of defendant were characterized by fraud, oppression, malice, or the like under this section. *Truzzolino Food Prod. Co. v. F. W. Woolworth Co., 108 M 408, 91 P2d 415 (1939),* overruled on another point in *Fauver v. Wilkoske, 123 M 228, 211 P2d 420 (1949).* (See 1987 amendment.)

To entitle plaintiff to recover punitive damages in an action for malicious prosecution, in addition to those actually sustained, it is not necessary that he claim them eo nomine in his complaint. *Martin v. Corscadden, 34 M 308, 86 P 33 (1906).*

*Guilty Intent Required:* To warrant the recovery of exemplary damages in a tort action, the complaint must allege either that the act complained of was done maliciously, willfully, or wantonly or the facts surrounding its commission must be set forth with such particularity as that one or more of such elements may be inferred therefrom. *Thompson v. Shanley, 93 M 235, 17 P2d 1085 (1932).* (See 1987 amendment.)

To warrant the recovery of exemplary damages, defendant must have entertained a guilty intent, the wrongful acts being characterized by circumstances of aggravation, malice, oppression, and the like. *Luther v. Lee, 62 M 174, 204 P 365 (1922).* (See 1987 amendment.)

*Conversion of Personal Property:* Where the jury in an action in conversion found in favor of plaintiff's contention that defendant chattel mortgagee, in violation of his agreement extending the time within which plaintiff could pay his debt, caused an officer to seize the chattel, thus acting maliciously and oppressively, an award of exemplary damages was justified. *Ramsbacher v. Hohman, 80 M 480, 261 P 273 (1927).* (See 1987 amendment.)

In cases of conversion of personal property, the statute authorized the imposition of punitive damages where the defendant acted maliciously, fraudulently, or oppressively, either in taking or detaining the property in controversy. *De Celles v. Casey, 48 M 568, 139 P 586 (1914).* (See 1987 amendment.)

The complaint in an action for damages for a conversion, which alleged, among other things, that defendants "did unlawfully, maliciously, fraudulently, and oppressively take and carry away" the property in controversy and refused restitution of the same after repeated demands, was broad enough to warrant inquiry into the motives and behavior of defendants and to justify the giving of an instruction that exemplary damages might be awarded for oppressively, fraudulently, or maliciously withholding the chattels after demand. *Shandy v. McDonald, 28 M 393, 100 P 203 (1909).* (See 1987 amendment.)

*Malice Actual or Presumed:* In an action in conversion in which exemplary damages were asked, an instruction defining the terms "actual" and "presumed" malice was not open to the objection that it authorized an award of punitive damages for malice in law as well as malice in fact. *Wray v. Great Falls Paper Co., 72 M 461, 234 P 486 (1925).* (See 1987 amendment.)

*Trespass:* Where acts constituting a trespass are shown to be wanton, malicious, or oppressive and of such a character as to indicate a reckless disregard of the rights of the plaintiff, the jury in its discretion may award a reasonable amount as punitive damages in addition to compensatory damages. *Mosback v. Smith Bros. Sheep Co., 65 M 42, 210 P 910 (1922).* (See 1987 amendment.)

*Malicious Prosecution:* It is within the province of the jury to allow exemplary as well as compensatory damages in an action for malicious prosecution, and unless its determination appears to have been influenced by passion, prejudice, or some other improper motive or the amount is outrageously disproportionate to the wrong done or the situation

or circumstances of the parties, the award will not generally be disturbed. *Cornner v. Hamilton, 62 M 239, 204 P 489 (1922).*

*Alienation of Affections:* Punitive damages may be awarded in an action for the alienation of a husband's affections, even though the evidence furnishes no basis for a finding of malice, since malice may be implied from the conduct of defendant in causing the wrong complained of, its existence being a question for the jury. *Moelleur v. Moelleur, 55 M 30, 173 P 419 (1918).* (See 1987 amendment.)

*Punitive Damages Allowed -- Railroad Employee's Willful Failure to Stop:* In an action against a railway company to recover damages for failure to stop its train at a station where it was scheduled to stop when flagged, punitive, in addition to compensatory, damages may be awarded if it is shown that the engineer saw the signal but willfully refused to stop for the purpose of receiving plaintiff as a passenger. *Burles v. Oreg. Short Line R.R., 49 M 129, 140 P 513 (1914).* See *Jones v. Shannon, 55 M 225, 175 P 882 (1918).* (See 1987 amendment.)

*Telegraph Operator -- Fraud -- Punitive Damages Allowed:* Where the element of fraud entered into the wrongdoing of a telegraph operator in withholding messages to and from a customer of his company, thus enabling him to profit by it, the provisions of this section, awarding the right to punitive damages, governed and *69-11-303* did not. *Lahood v. Cont. Tel. Co., 52 M 313, 157 P 639 (1916).*

*Taking or Detaining Property:* Where evidence was insufficient to justify an inference of malice, fraud, or oppression in either taking or detaining property in controversy, in an action in conversion, imposition of punitive damages, otherwise recoverable under this section, was unwarranted. *De Celles v. Casey, 48 M 568, 139 P 586 (1914).*

## DAMAGES

*Reversible Error for Lower Court to Substitute Its Judgment for Jury's in Determining Credibility of Witnesses and Evidence:* The jury found for the plaintiff, Deonier, in a breach of fiduciary duty case against the insurer for which Deonier was a selling agent and awarded Deonier $ 1 million in punitive damages in addition to compensatory damages. The District Court, after making extensive findings of fact, reduced the award to $ 375,000. The Supreme Court reinstated the jury award, stating that it was implicit in the size of the award that the jury found the insurer's witnesses and evidence less credible than the plaintiff's and that it was an abuse of discretion for the trial court to substitute its judgment for the jury's. *Deonier & Associates v. Paul Revere Life Ins. Co., 2004 MT 297, 323 M 387, 101 P3d 742 (2004).*

*Breach of Fiduciary Duty in Conversion of Corporate Property Without Requisite Notice and Shareholder Approval -- Punitive Damages Unavailable Absent Showing of Actual Malice or Fraud:* Phil was two-thirds majority shareholder in Trifad Entertainment, Inc. (Trifad), and Brad was one-third minority shareholder and Trifad director. Following Phil's extradition to Florida on racketeering charges, Brad secured a loan for $ 15,000, deposited the money in the Trifad account, and then sold virtually all of Trifad's assets to himself for $ 15,000. In addition, Brad wrote checks on Trifad's account for taxes owed and for estimated tax payments and withdrew one-third of the remaining balance and left two-thirds in the account, all without attempting to contact Phil. Phil later sued Brad for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and conversion and requested punitive damages, contending that Brad's actions were performed with actual malice and constituted actual fraud. At trial, Brad contended that the actions were reasonable considering Phil was in jail facing criminal charges, and Brad cross-claimed for indemnification from Trifad for litigation expenses and liabilities incurred in his capacity as Trifad director. The District Court found for Brad on all counts, but denied corporate indemnification. Both Phil and Brad appealed. The Supreme Court reversed, finding that Brad failed to comply with *35-1-823* by selling corporate property without the requisite notice and shareholder approval. Although contacting Phil would have been difficult, it was not impossible. However, even if Phil had been unavailable for consultation, *35-1-823* does not contain any exceptions to the notice and approval requirements governing the sale of corporate assets. Further, the sale constituted conversion because Brad exercised unauthorized dominion over Trifad property by transferring ownership to himself. The case was remanded for a determination of damages, including possible damages other than those provided in *27-1-320* if peculiar circumstances warranted compensation for future lost income and profits. The District Court erred in concluding that Brad did not breach his fiduciary duties to Trifad; however, absent proof of actual malice or actual fraud, punitive damages were not warranted. Because a breach of fiduciary duty occurred, Brad could not claim to be wholly successful in the action, so Brad's claim for corporate indemnification also failed under *35-1-453. Trifad Entertainment, Inc. v. Anderson, 2001 MT 227, 306 M 499, 36 P3d 363 (2001).*

*No Error in Failure of Trial Court to Detail From Bench Its Analysis of Statutory Factors Regarding Award of Punitive Damages:* Onstad was assaulted on the job and sued the employer, Payless Shoesource (Payless), for failure to

provide a safe workplace. The jury held Payless liable and awarded Onstad $ 500,000 in compensatory damages, plus an additional $ 1 million in punitive damages. On appeal, Payless contended that the trial court erred in approving punitive damages, asserting that Onstad did not prove actual malice, thereby failing to establish a necessary foundation for punitive damages, and that the court failed to adequately review the support for the award by enumerating from the bench its consideration of the statutory factors for approving punitive damages. The Supreme Court affirmed. The jury was instructed on malice and specifically found that Payless's conduct amounted to malice, a conclusion that was supported by the evidence. Further, it was immaterial that the trial court did not detail from the bench its analysis of each of the statutory factors as to the award of punitive damages. It was sufficient that the court made individual findings on each of the statutory factors in its subsequent written findings. *Onstad v. Payless Shoesource, 2000 MT 230, 301 M 259, 9 P3d 38, 57 St. Rep. 943 (2000).*

*Damages Proper for Emotional Distress Based on Sale of Real Estate -- Punitive Damages Appropriate:* The Maloneys were promised an option to purchase property adjacent to their own, hoping to build their retirement home near Glacier Park. The real estate agent who listed the property was aware of the Maloneys' option but sold to another instead. That person then developed the property, building a 3,000-square-foot home on the very site that the Maloneys had desired and within sight of the Maloneys' residence, and then listed the newly developed property for almost six times what the Maloneys could have paid had the option been properly offered. A special master concluded, and the District Court agreed, that the Maloneys had suffered and were entitled to compensation for the shock, worry, anger, disappointment, and frustration that they had suffered and would continue to suffer in light of the inherent duration of the Maloneys' adjacent ownership. The Supreme Court affirmed, noting that under *French v. Ralph E. Moore, Inc., 203 M 327, 661 P2d 844, 40 St. Rep. 481 (1983),* emotional distress damages may result from negligent or intentional damage to property arising from interference with the use and enjoyment of land and that under *Johnson v. Murray, 201 M 495, 656 P2d 170, 39 St. Rep. 2257 (1982),* compensatory damages could include compensation for humiliation, embarrassment, distress, and ridicule associated with interference with plaintiffs' use of their private property. The private property interest at issue here sufficiently involved the use and enjoyment of land to fall within these holdings. Further, the award of punitive damages was also affirmed in this instance despite defendant's claims of the special master's improper estimation of net worth, a syntax error, and the special master's improper recognition of punitive damages assessed against defendant in a prior case. *Maloney v. Home & Inv. Center, Inc., 2000 MT 34, 298 M 213, 994 P2d 1124, 57 St. Rep. 144 (2000).* See also Recovery for Negligent Infliction of Emotional Distress Attendant to Economic Loss: A Reassessment, Sandor & Berry, *37 Ariz. L. Rev. 1247 (1995).*

*Adequacy of Compensatory and Punitive Damages Upheld -- Motion for Directed Verdict Properly Denied:* In a civil action for damages against Huggins and the Carpet Barn, stemming from criminal acts damaging plaintiffs David and Susan Black's automobiles, the Blacks' wholly owned corporation was awarded $ 35,000 in compensatory damages and $ 51 in punitive damages. The Blacks contended that the award was insufficient because it failed to award damages for emotional distress and property damages and awarded only $ 51 in punitive damages. The District Court denied Blacks' motion for a directed verdict. The Supreme Court held that the District Court properly denied the motion because there was conflicting evidence as to the cause of Blacks' emotional distress and because the record showed that Susan Black had been reimbursed through criminal restitution and that amount was not deducted from the award to the Blacks' corporation. Concerning the amount of punitive damages awarded, the Supreme Court cited *Safeco Ins. Co. v. Ellinghouse, 223 M 239, 725 P2d 217 (1986),* and *Dees v. Am. Nat'l Fire Ins. Co., 260 M 431, 861 P2d 141 (1993),* and held that the District Court properly instructed the jury, reviewed the award in accordance with this section, and left the award intact. The Supreme Court therefore held that the District Court did not abuse its discretion in denying the motion. *Rocky Mtn. Enterprises, Inc. v. Pierce Flooring, 286 M 282, 951 P2d 1326, 54 St. Rep. 1410 (1997).*

*Burden on Defendant to Show That Financial Condition Does Not Warrant Punitive Damages:* This section requires that following a verdict of punitive damages against a defendant, a separate proceeding must be held to determine the amount and that a defendant's financial condition must be considered. The defendant is required to show that the defendant's financial condition does not support an award. The plaintiff need not show that the defendant's financial condition supports an award. Therefore, the District Court's failure to completely set aside defendant's punitive damages was not error when defendant offered no evidence of his financial condition. *Cartwright v. Equitable Life Assurance Soc'y, 276 M 1, 914 P2d 976, 53 St. Rep. 268 (1996).*

*Insurance Fraud Punitive Damages of $ 6,127,845 Against Company and $ 30,000 Against Agent Justified:* Based on its following findings, the District Court properly allowed punitive damages against a fraudulent insurance agent and his company and improperly reduced those amounts from $ 30,000 to $ 18,000 for the agent and from $ 6,127,845 to $ 4 million for the company: (1) the agent deliberately deceived the plaintiff insureds and his other clients to gain added

commissions, thereby reducing the value of the policies or resulting in their cancellation; (2) the agent's training supervisor engaged in highly questionable practices and was essentially unsupervised himself; (3) the company had notice of the defendant agent's fraud, but complaints to the company by other agents about the defendant agent were ignored; (4) the company's policy was to urge customers to trust and rely on agents and to portray the company as a caring, paternal company but was also to protect its own interests, not the insureds', with regard to complaints; (5) both the agent and the company profited from the fraud; (6) the actual damages, $ 358,591, were substantial, it was doubtful that the agent could pay much of them, and it was also doubtful that they were large enough to impress the company of the extent of its wrongdoing; (7) the company's net worth was $ 1,832,462,923, and the punitive damages against it might make it examine its actions, but not make it insolvent; (8) criminal prosecution of the company was not viable; and (9) the jury was conservative, well informed by the evidence, and did not act from passion or prejudice. *Cartwright v. Equitable Life Assurance Soc'y, 276 M 1, 914 P2d 976, 53 St. Rep. 268 (1996).*

*New Trial Based on Excessive Punitive Damages -- Abuse of Discretion Warranting Reversal:* The District Court vacated a jury award of $ 1 million in punitive damages against an employer and $ 75,000 against an employee, concluding that the awards were excessive. The Supreme Court reversed, noting that the award against the employer was not excessive when compared with the employer's overall financial condition and that the employee's financial condition was improperly valued. The employee failed to produce evidence that his net worth could not support the punitive damage award, so vacation of the jury award was a manifest abuse of discretion warranting reversal. *Maurer v. Clausen Distrib. Co., 275 M 229, 912 P2d 195, 53 St. Rep. 78 (1996),* distinguished in *Anderson v. Werner Enterprises, Inc., 1998 MT 333, 292 M 284, 972 P2d 806, 55 St. Rep. 1350 (1998).*

*Reversal of Jury Findings Regarding Liability Not Allowed Upon Court Review of Punitive Damage Award:* A jury, by special verdict, found that defendants had no reasonable basis in law or fact for contesting plaintiffs' claim for crop damages and awarded plaintiffs punitive damages. Upon review of the damage award, the District Court concluded that defendants had a reasonable basis upon which to deny the claim and modified the damage award. On appeal, the Supreme Court held that because plaintiffs invoked their right to a jury trial, allowing the court to reverse issues of underlying liability previously submitted to and decided by the jury would interfere with the jury as trier of fact deciding the issues. Court review pursuant to subsection (7)(c) of this section must be conducted without contradicting findings of fact made by the jury, and failure to do so constitutes reversible error. *Debruycker v. Guar. Nat'l Ins. Co., 266 M 294, 880 P2d 819, 51 St. Rep. 835 (1994).*

*Tort of Bad Faith -- Not Available for Most Contract Actions -- Breach:* In a contract action, the Supreme Court ruled that a breach of the implied covenant of good faith and fair dealing constituted a breach of the contract and that only contract damages would be available to the prevailing party. The court stated that tort-type damages would not be available for a breach of the covenant. The court also held that the tort of bad faith would apply only in exceptional circumstances to discourage oppression in contracts that necessarily give one party a superior position. Every contract, regardless of the type, contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract. *Story v. Bozeman, 242 M 436, 791 P2d 767, 47 St. Rep. 850 (1990),* followed in *Keller v. Dooling, 248 M 535, 813 P2d 437, 48 St. Rep. 554 (1991), Haines Pipeline Constr., Inc. v. Mont  Power Co., 251 M 422, 830 P2d 1230, 48 St. Rep. 1102 (1991),* and *Kneeland v. Luzenac America, Inc., 1998 MT 136, 289 M 201, 961 P2d 725, 55 St. Rep. 541 (1998).*

*Improper Exercise of Setoff -- Punitive Damages Granted:* A bank exercised a setoff, leaving a company with no operating cash or line of credit. As a result of the bank's action, the company could not meet payroll, lost all its employees, was sued many times, had its corporate goodwill destroyed, and had to enter into joint venture agreements with general contractors in order to stay in business. Absent any complaint of improper jury instruction, an award of $ 50,000 in punitive damages for breach of the implied covenant of good faith and fair dealing and $ 50,000 for negligent misrepresentation was affirmed. *Bottrell v. Am. Bank, 237 M 1, 773 P2d 694, 46 St. Rep  561 (1989).*

*Jury Finding of Fraud and Breach of Good Faith and Fair Dealing in Contract Action -- Punitive Damages Warranted:* Defendant contended a tort recovery was incorrectly allowed in a breach of contract action because the case dealt with an ordinary commercial setting in which two parties negotiated with relatively equal bargaining power and without any special relationship that would generate an exceptional duty. The Supreme Court noted that the jury found not only a breach of contract and good faith but also actions constituting fraud. The court held that when both fraud and a breach of the implied covenant of good faith and fair dealing are found, the plaintiff is free to pursue punitive damages. *Webcor Electronics, Inc. v. Home Electronics, Inc., 231 M 377, 754 P2d 491, 45 St. Rep. 695 (1988).*

*Misrepresentation of Business Profits — Compensatory and Punitive Damage Awards Affirmed:* Despite contentions that damage awards were too low in a case in which business profits were misrepresented to the detriment of buyers, the Supreme Court affirmed as adequate an award of $ 62,238 in compensatory damages to cover annual losses of $ 31,338 and reasonable wage losses of $ 30,900 and an award of $ 10,000 punitive damages to deter future similar behavior. *Selvidge v. McBeen, 230 M 237, 750 P2d 429, 45 St. Rep. 168 (1988).*

*Award of Grossly Excessive and Disproportionate Damages -- Based on Passion or Prejudice:* A jury award of $ 5 million in punitive damages, which was found to be 20,000% above the award for economic damage caused insured and 5,000% more than the maximum of the insurance policy, was held to be so grossly excessive and disproportionate to the injury as to shock one's conscience. Noting that appellate courts in most jurisdictions, including Montana, ordinarily defer to the discretion of the factfinder when reviewing punitive damage awards, the court found that as a matter of law this award must have been determined by passion or prejudice. On remittitur, the judgment was modified to an award of $ 1 million total. *Safeco Ins. Co. v. Ellinghouse, 223 M 239, 725 P2d 217, 43 St. Rep. 1689 (1986).* In a strong dissent, Mr. Justice Morrison noted no reversible error on any liability question and pointed out that up to this time "there is little, if any, precedent supporting the Montana Supreme Court substituting its judgment for that of the jury. Unfortunately that strong support for the jury system has now been dynamited. The majority announces loud and clear that from this day forward, four justices, robed in judicial omniscience, will replace our jury." Mr. Justice Sheehy, also dissenting, said that the "deleterious effect of the opinion in this case is its announcement that the right of a jury to set damages is hereafter subject to the consent of the majority of this Court".

*Award of Punitive Damages by Trier of Fact:* Appellant argued that under this section only a jury may award punitive damages. The Supreme Court, noting its decision in *Miller v. Fox, 174 M 504, 571 P2d 804 (1977),* construed the statute to mean that a District Court sitting as a trier of fact may award punitive damages. *Shors v. Branch, 221 M 390, 720 P2d 239, 43 St. Rep. 919 (1986).*

*Requirement of Actual Damage Before Punitive or Exemplary Damages Recoverable:* Without a finding of actual damages, whether or not determined in amount, exemplary damages are not proper. *Doll v. Major Muffler Centers, Inc., 208 M 401, 687 P2d 48, 41 St. Rep. 429 (1984).*

Plaintiff's son purchased life insurance, including an accidental death rider, from defendant. The son was found dead in a Bozeman motel room. The death was determined to be an overdose of chloroform through inhalation. The policy rider excluded payment on death due to suicide or drug overdose. On June 11, 1980, defendant sent plaintiff a check for the basic policy amount with a restrictive endorsement on the back. Plaintiff contested the denial of accidental death benefits. On August 20, plaintiff returned the tendered check, and on September 5, 1980, filed suit against defendant seeking actual and punitive damages. On September 9, 1980, defendant mailed the same check without the restrictive endorsement. A jury found that the plaintiff was not entitled to the accidental death benefits but awarded $ 30,000 in punitive damages. Defendant appealed. In order to award punitive damages there would have had to be a violation of the insurance laws for which a penalty is prescribed and actual damages. The court found that a restrictive endorsement as a general business practice in contested settlements was an unfair claim settlement practice. The actual damages were lost interest earnings and out-of-pocket expenses for legal counsel. Actual damages need only be nominal in order to award punitive damages. *Harris v. Am. Gen. Life Ins. Co., 202 M 393, 658 P2d 1089, 40 St. Rep. 164 (1983).*

This section does not require actual damages to flow from the commission of the tort before punitive damages can be assessed. If a basis for actual damages exists in the record, the fact that none are awarded does not prevent the assessment of punitive damages. Where the trial court found that insurers breached their contract with insured and also that they acted in bad faith and it awarded actual damages for the breach of contract, the court could have as easily held that the damages flowed from the bad faith actions of insurers. Punitive damages were properly awarded insured based on the insurers' bad faith. *Lipinski v. Title Ins. Co., 202 M 1, 655 P2d 970, 39 St. Rep. 2283 (1982).*

Where the owner of a car, arriving on the scene of an accident involving his car driven by another with his permission, intentionally tampered with physical evidence at the scene and was thereafter found liable for punitive damages by a state court, but neither he nor the driver were liable for actual damages, under the policy in question the insurance company was not liable for either the punitive damages or attorney's fees. *Lee v. St. Farm Mut. Auto. Ins. Co., 39 St. Rep. 1761 (D.C. Mont. 1982)* (apparently not reported in Federal Supplement).

When one count of a predominantly contract action was based on an intentional tort of false representation of a refund of the purchase price if plaintiff would return the defective merchandise and judgment denied plaintiff's claim of actual damages, an award of punitive damages was beyond the power and authority of the trial court. *Purington v. Sound W., 173 M 106, 566 P2d 795 (1977).*

Where actual damages appear from the evidence, an award of punitive or exemplary damages will stand, though the verdict of the jury shows no finding of actual damages. *Brown v. Grenz, 127 M 49, 257 P2d 246 (1953).*

When the jury was instructed by the court that it could allow exemplary damages if "you find by a preponderance of the evidence that plaintiff suffered actual damages", and the jury returned a verdict of actual damages "none" and exemplary damages "$ 250", the presumption is that the jury found actual damages. The fact that they did not assess a money award for the actual damages is not controlling, for there are various reasons why it did not assess a money award; an obvious one is the existence of a counterclaim by the defendant. *Welsh v. Roehm, 125 M 517, 241 P2d 816 (1952).*

In action for malicious prosecution where jury found malice, verdict was valid where it gave exemplary damages but entered "none" in the space on the verdict for actual damages. *Fauver v. Wilkoske, 123 M 228, 211 P2d 420, 17 ALR 2d 518 (1949).*

Where actual damage is shown although the extent of the damage cannot be shown in money value, exemplary damages may be awarded. *Fauver v. Wilkoske, 123 M 228, 211 P2d 420, 17 ALR 2d 518 (1949),* overruling *Gilham v. Devereaux, 67 M 75, 214 P 606, 33 ALR 381 (1923); Bowman v. Lewis, 110 M 435, 102 P2d 1 (1940); Truzzolino Food Prod. Co. v. F. W. Woolworth Co., 108 M 408, 91 P2d 415 (1939).*

Before exemplary damages may be awarded, actual damages must first be found to have been suffered. *Gilham v. Devereaux, 67 M 75, 214 P 606, 33 ALR 381 (1923),* overruled on another point in *Fauver v. Wilkoske, 123 M 228, 211 P2d 420 (1949).*

In a husband's action for damages for alienation of affections, where the jury expressly found that plaintiff had not suffered any actual damages, an award of $ 2,000 exemplary damages was unwarranted. *Gilham v. Devereaux, 67 M 75, 214 P 606, 33 ALR 381 (1923),* distinguished in *Long v. Davis, 68 M 85, 217 P 667 (1923),* overruled on another point in *Fauver v. Wilkoske, 123 M 228, 211 P2d 420 (1949).*

*Damages Granted for Suing Wrong Person -- Punitive Damages Not Reduced by Contributory Negligence:* The defendant sued the plaintiff in connection with an automobile accident. The plaintiff informed the defendant that he was the wrong person to sue in that action. The plaintiff refused to defend the action and the defendant obtained a default judgment. As a result of the default plaintiff lost his driver's license. Plaintiff then brought this action. The court found that there was sufficient evidence for the jury to determine that defendant acted recklessly and should pay punitive damages. Punitive damages cannot be reduced by the percentage of plaintiff's contributory negligence. *Shahrokhfar v. St. Farm Mut. Auto. Ins. Co., 194 M 76, 634 P2d 653, 38 St. Rep. 1669 (1981).* (See 1987 amendment.)

*Determination of Damages -- Requisite Support:* When a hospital interferes with its employee's statutory right under *50-5-503* to refuse to participate in a sterilization operation, its violation of *50-5-504* may entitle the employee to damages to be determined by a compensation theory, including reasonably certain future damages and possibly exemplary damages. Plaintiff, however, introduced no evidence supporting claims for exemplary damages. Finding no evidence to support the claim and noting that there was no particular difficulty in producing such evidence, the Supreme Court held that neither the likelihood of such improper behavior or injury nor the difficulty of proving damages is so great as to justify awarding damages without proof that such improper behavior took place. *Swanson v. St. John's Lutheran Hosp., 189 M 259, 615 P2d 883, 37 St. Rep. 1420 (1980).*

*When Punitive Damages Allowable:* Plaintiff contended that the District Court erred in determining that defendants were not liable for punitive damages. The jury returned a verdict of no liability for actual damages on the part of the State and Burlington Northern. Such a verdict precludes an award of punitive damages. *Penn v Burlington N., Inc., 185 M 223, 605 P2d 600 (1980).*

*Apportionment Between Joint Tortfeasors:* The jury may properly apportion exemplary damages among joint tortfeasors in a conversion action, but before a finding of such damages may be made, actual damages must have been assessed, and where exemplary damages only were assessed against one of the defendants, reversal of the judgment carries with it the award of costs against such defendants. *Bowman v. Lewis, 110 M 435, 102 P2d 1 (1940),* overruled on another point in *Fauver v. Wilkoske, 123 M 228, 211 P2d 420 (1949).*

*Assault and Battery -- Malice -- Test for Damages:* In an assault case where malice is alleged, it is not the quantum of force used but whether the assailant was in a malicious state of mind which is the test in awarding exemplary damages; the use of a dangerous weapon (a hammer) is some evidence of a wanton disregard of human life and gener-

ally gives rise to such damages; the question of malice is generally one for the jury. *Vaughn v. Mesch, 107 M 498, 87 P2d 177, 123 ALR 1106 (1939).*

## JURY QUESTION AND INSTRUCTION

*No Error in Instructing Jury as to Where Punitive Damage Payment Goes:*  Plaintiff alleged that the District Court abused its discretion by refusing to give an instruction stating that the jury was not to consider where punitive damage payments would go, contending that the instruction was necessary because jury consideration of any effect of a punitive damage award, including the beneficiary of the award, improperly distracts the jury from the purpose of a punitive damage award, which is to punish the wrongdoer and set an example, and results in an improper reduction in the amount awarded. Instead, the court gave a pattern instruction setting forth the statutory criteria for determining the amount of a punitive damages award and made no mention of the recipient of the award. The Supreme Court affirmed. The law does not preclude juries from considering where a punitive damage award will go when determining the amount of the award. *Finstad v. W.R. Grace & Co., 2000 MT 228, 301 M 240, 8 P3d 778, 57 St. Rep. 934 (2000).*

*Award of Punitive Damages Not Automatic on Finding of Fraud -- New Trial Not Required -- Standard of Review:*  In a case in which the jury found that the defendants had engaged in fraudulent conduct and did not award punitive damages, the trial court did not err in denying a new trial when the evidence that would have supported an award of punitive damages was contradicted and the jury's decision to not award punitive damages was supported by substantial evidence. All elements of a claim for punitive damages must be proved by clear and convincing evidence. An appellate court will review a jury's verdict to award or not to award punitive damages under the substantial evidence rule. It is in the province of a jury to find that there is sufficient evidence of proof of fraud, yet not the quantum of evidence necessary to support an award of punitive damages. *Sandman v. Farmers Ins. Exch., 1998 MT 286, 291 M 456, 969 P2d 277, 55 St. Rep. 1165 (1998).*

*Instruction on Vicarious Liability Not in Error When Damages Assessed for Actual Conduct:*  The District Court instructed the jury on Clausen's vicarious liability. The jury returned a verdict assessing punitive damages against Clausen based on its own conduct rather than because of Clausen's potential vicarious liability. Clausen's argument that the instruction was not appropriate was moot because Clausen was held liable for its own actions rather than those of another; therefore, the instruction was not prejudicial. *Maurer v. Clausen Distrib. Co., 275 M 229, 912 P2d 195, 53 St. Rep. 78 (1996).*

*Refusal to Give Instructions Proper When Unsupported by Evidence:*  Appellants contended the District Court erred in refusing to give proffered instructions regarding punitive damages incurred through a power company's alleged violations of the Natural Gas Pipeline Safety Act of 1968. Although limited evidence was presented regarding each claimed violation, for none of the alleged infractions was evidence sufficient to support a determination that the Act was violated. As set out in *Mydlarz v. Palmer/Duncan Constr. Co., 209 M 325, 682 P2d 695 (1984)*, instructions not supported by the evidence need not be given. *Day v. Mont. Power Co., 242 M 195, 789 P2d 1224, 47 St. Rep. 626 (1990).*

*Instructions Not Requiring Jury Finding of Wrongful Act:*  Jury instructions explained compensation for actual and punitive damages if the jury found liability for wrongful attachment. Defendants argued that after receiving the instructions, all that remained for the jury was to determine whether property was intentionally attached. However, the jury was not required to find that defendants acted wrongfully or with malice and therefore was not required to award punitive damages. *Stensvad v. Towe, 232 M 378, 759 P2d 138, 45 St. Rep. 1129 (1988).*

*Franchisor's Right to Determine Franchise Location -- Duty to Reasonably Consider Relocation:*  Appellant franchisor had the sole contractual right to determine location of the franchise; however, the law imposed a duty to reasonably consider facts regarding relocation. The Supreme Court found evidence that vital information was withheld from respondents and from the vice president in charge of authorizing relocation which, if believed, would provide a basis for finding appellant acted unreasonably, thereby breaching its duty to exercise good faith. The evidence was sufficient to warrant submission to the jury on the question of good faith. *Dunfee v. Baskin-Robbins, Inc., 221 M 447, 720 P2d 1148, 43 St. Rep. 964 (1986).*

*Inadequate Jury Instruction -- Implied Covenant of Good Faith:*  The District Court instructed the jury on the implied covenant of good faith and fair dealing, stating that good faith means honesty in fact in the conduct or transaction concerned and then equating the implied covenant to an obligation imposed by law on defendants to do nothing to deprive plaintiffs of the benefits of their commercial transaction. On appeal, defendants argued that the implied covenant had no application in a case involving an arms-length contract. The Supreme Court, relying on its decision in *Nicholson v. United Pac. Ins. Co., 219 M 32, 710 P2d 1342, 42 St. Rep. 1822 (1985)*, held that a breach of the implied covenant

Mont. Code Anno., § 27-1-221

which results in damages can give rise to an action in tort, but that in order to recover additional punitive damages, plaintiffs must prove that defendants' actions in breaching the implied covenant met the requirements of *27-1-221*. The tort of breach of the implied covenant of good faith and fair dealing requires more than a lack of honesty in fact. The instruction given to the jury on this issue inadequately defined the tort. *McGregor v. Cushman/Mommer, 220 M 98, 714 P2d 536, 43 St. Rep. 206 (1986)*, followed in *Noonan v. First Bank Butte, 227 M 329, 740 P2d 631, 44 St. Rep. 1124 (1987)*, and in *Bottrell v. Am. Bank, 237 M 1, 773 P2d 694, 46 St. Rep. 561 (1989)*. See also *Dunfee v. Baskin-Robbins, Inc., 221 M 447, 720 P2d 1148, 43 St. Rep. 964 (1986)*.

*Auto Accident -- Intoxicated Driver on Icy Road:* The jury was properly instructed on punitive damages in action arising from defendant's collision with plaintiff's auto, which was proceeding in the same direction as and in front of defendant's truck on an icy road. Defendant, according to three persons who observed him after the collision, was grossly intoxicated, and a test of his blood alcohol content found it to be .20%. *Allers v. Willis, 197 M 499, 643 P2d 592, 39 St. Rep. 745 (1982)*.

*Punitive Damages -- Scope of Review:* Plaintiffs sued defendant for damages claimed to have occurred to their farmlands when a seismograph hole drilled and shot by defendant brought a continuous water flow to the surface, damaging farmland. Defendant left the area and later tried unsuccessfully to plug the hole. A questionable permission to do the drilling was given by the plaintiffs, and explicit directions were given not to drill where the water commenced to flow. The District Court denied motions to remove the issue of punitive damages from the jury. The Supreme Court held that the issue was properly submitted to the jury and that the jury's determination would stand, since the Supreme Court had no basis in law upon which to set it aside. *Dahl v. Petroleum Geophysical Co., 194 M 294, 632 P2d 1136, 38 St. Rep. 1474 (1981)*.

*Failure of Jury to Fix Monetary Value on Actual Damages Not to Preclude Exemplary Damages:* The failure of a jury to fix a monetary value as plaintiff's damages does not of necessity indicate an absence of actual damages so as to preclude an award of exemplary damages. Although the precise extent of damages attributable to the destruction of physical evidence by defendant may be elusive, an identifiable basis for actual damages exists which arises from the deprivation to plaintiff of tests and results necessary to prove his case. *Lauman v. Lee, 192 M 84, 626 P2d 830, 38 St. Rep. 499 (1981)*.

*Fraud in Purchase:* The jury was clearly within its province in awarding punitive damages where there was substantial evidence of fraud on the part of real estate agent's use of multiple corporate identities in purchase of motel. *Flemmer v. Ming, 190 M 403, 621 P2d 1038, 37 St. Rep. 1916 (1980)*.

*Malicious Acts -- Reckless Disregard:* When the acts complained of are shown to be malicious, wanton, or oppressive and of such character as to indicate a reckless disregard for the rights of the plaintiff, the jury, in its discretion, may award a reasonable amount as punitive damages, in addition to compensatory damages. *Butcher v. Petranek, 181 M 358, 593 P2d 743 (1979)*. (See 1987 amendment.)

*Punitive Damage Instruction Denied:* The lower court correctly refused plaintiffs' instruction regarding punitive damages, since there was no evidence of actual or implied malice on the part of defendants. *Ferguson v. Town Pump, 177 M 122, 580 P2d 915 (1978)*. See also *Gee v. Egbert, 209 M 1, 679 P2d 1194, 41 St. Rep. 515 (1984)*. (See 1987 amendment.)

*Punitive Damages Instruction -- Implied Malice:* The trial court did not err in giving an instruction on implied malice that advised the jury that it is not necessary to show actual malice to recover punitive damages or in giving an instruction on punitive damages when it was clear from the record and a pretrial order that plaintiffs were bringing this case in tort, separate and distinct from any action arising out of contract. *Harrington v. Holiday Rambler Corp., 176 M 37, 575 P2d 578 (1978)*. (See 1987 amendment.)

*Matters for Jury to Consider in Assessing:* The rule that where exemplary damages are sought, the jury may take into consideration the pecuniary ability of defendant to pay, as shown by the evidence, applies in an action against joint tortfeasors; in such a case the jury may make awards of such damages in different amounts according to the various degrees of culpability of each defendant, keeping in mind the financial condition of each. *Edquest v. Tripp & Dragstedt Co., 93 M 446, 19 P2d 637 (1933)*. See also *Stensvad v. Towe, 232 M 378, 759 P2d 138, 45 St. Rep. 1129 (1988)*.

In assessing exemplary damages, the jury should take into consideration all the circumstances surrounding the act complained of and may consider the wealth and pecuniary ability of defendant, the matter of fixing the amount resting largely in its discretion. *Johnson v. Horn, 86 M 314, 283 P 427 (1929)*.

**NOTES:**

Chapter Law Review Articles

Compensation of Emotional Distress in Montana: Distinctions Between Bystanders and Direct Victims, Clinch & Johnson, *47 Mont. L. Rev. 479 (1986)*.

Part Law Review Articles

Getting Physical: Excluding Personal Injury Awards Under the New Section 104(a)(2), Burke & Friel, *58 Mont. L. Rev. 167 (1997)*.

Boldly Into the Fog: Limiting Rights of Recovery for Infliction of Emotional Distress, Cox & Shott, *53 Mont. L. Rev. 197 (1992)*.

Civil RICO: Pleading Fraud for Treble Damages, Dzivi, *45 Mont. L. Rev. 87 (1984)*.

Montana Supreme Court Survey, Hursh, *43 Mont. L. Rev. 279, 334 (1982)*.

Law Review Articles

*BMW of North America, Inc. v. Gore:* A Trial Judge's Guide to Jury Instructions and Judicial Review of Punitive Damage Awards, Harkin, *60 Mont. L. Rev. 367 (1999)*.

Intentional Infliction of Mental Distress in Montana, Tobias, *57 Mont. L. Rev. 99 (1996)*.

Insurance Coverage of Punitive Damages in Montana, Stanaway, *46 Mont. L. Rev. 77 (1985)*.

Employment At-Will, Wrongful Discharge, and the Covenant of Good Faith and Fair Dealing in Montana, Past, Present, and Future, Hopkins & Robinson, *46 Mont L. Rev. 1 (1985)*.

The Continuing Development of the Tort of Bad Faith in Montana, Graham & Luck, *45 Mont. L. Rev. 43 (1984)*.

Contract Damages in Montana Part II: Reliance and Restitution, Burnham, *45 Mont. L. Rev. 1 (1984)*.

Contract Damages in Montana Part I: Expectancy Damages, Burnham, *44 Mont. L. Rev. 1 (1983)*.

Punitive Damages on Ordinary Contracts, Lee, *42 Mont. L. Rev. 93 (1981)*.

An Insurer's Liability for the Tort of Bad Faith, Harman, *42 Mont. L. Rev. 67 (1981)*.

Standards for Limiting the Tort of Bad Faith Breach of Contract, Louderback, *16 U.S.F.L. Rev. 187 (1982)*.

The Tort of Bad Faith Breach of Contract: When, If At All, Should It Be Extended Beyond Insurance Transactions?, Diamond, *64 Marq. L. Rev. 425 (1981)*.

Part Collateral References

"Total cost method (or approach)" and "modified total cost method (or approach)" to proving damages in state contract cases. *124 ALR 5th 375*.

Exemplary or punitive damages for pharmacist's wrongful conduct in preparing or dispensing medical prescription--cases not under Consumer Product Safety Act *(15 U.S.C.A. § 2072)*. *109 ALR 5th 397*.

Recovery of damages for emotional distress due to treatment of pets and animals. *91 ALR 5th 545*.

Nonuse of seatbelt as reducing amount of damages recoverable. *62 ALR 5th 537*.

Damages for killing or injuring dog. *61 ALR 5th 635*.

Recovery of damages for loss of consortium resulting from death of child--modern status. *77 ALR 4th 411*.

Business interruption, without physical damage, as actionable. *65 ALR 4th 1126*.

Damages for killing or injuring dog. *61 ALR 5th 635*, superseded in part by *91 ALR 5th 545*.

Parent's right to recover for loss of consortium in connection with injury to child. *54 ALR 4th 112.*

Sexual child abuser's civil liability to child's parent. *54 ALR 4th 93.*

Equipment leasing expense as element of construction contractor's damages. *52 ALR 4th 712.*

Excessiveness or inadequacy of compensatory damages for malicious prosecution. *50 ALR 4th 843.*

Recovery of damages for grief or mental anguish resulting from death of child--modern cases. *45 ALR 4th 234.*

Punitive damages for interference with contract or business relationship. *44 ALR 4th 1078.*

Construction contract--modern status of rule as to whether cost of correction or difference in value of structures is proper measure of damages for breach of construction contract. *41 ALR 4th 131.*

Amount of appropriation as limitation on damages for breach of contract recoverable by one contracting with government agency. *40 ALR 4th 998.*

Recovery of punitive damages for breach of building or construction contract. *40 ALR 4th 110.*

Liability for false arrest or imprisonment under warrant as affected by mistake as to identity of person arrested. *39 ALR 4th 705.*

Value of insured's assets as limitation, in action by insured or insured's assignee for liability insurer's wrongful failure to defend, on recovery of amount of judgment against insured in excess of policy amount. *36 ALR 4th 922.*

Proof of injury to reputation as prerequisite to recovery of damages in defamation action--post-Gertz cases. *36 ALR 4th 807.*

Provocation as basis for mitigation of compensatory damages in action for assault and battery. *35 ALR 4th 947.*

Allowance of attorneys' fees in mandamus proceedings. *34 ALR 4th 457.*

Effect of anticipated inflation on damages for future losses--modern cases. *21 ALR 4th 21.*

Propriety of taking income tax into consideration in fixing damages in personal injury or death action. *16 ALR 4th 589.*

Special or consequential damages recoverable, on account of delay in delivering possession, by purchaser of real property awarded specific performance. *11 ALR 4th 891.*

Proper measure and elements of damages for misappropriation of trade secret. *11 ALR 4th 12.*

Damages recoverable for real estate mortgagee's refusal to discharge mortgage or give partial release therefrom. *8 ALR 4th 853.*

Damages recoverable for wrongful dishonor or letter of credit under *U.C.C. § 5-115. 2 ALR 4th 665.*

Measure of damages for landlord's breach of implied warranty of habitability. *1 ALR 4th 1182.*

Liability for interference with invalid or unenforceable contract. *96 ALR 3d 1294.*

Measure and elements of damages recoverable from vendor where there has been mistake as to amount of land conveyed. *94 ALR 3d 1091.*

Measure of damages in action for breach of warranty of title to personal property under *U.C.C. § 2-714. 94 ALR 3d 583.*

Insured's right to recover attorneys' fees incurred in declaratory judgment action to determine existence of coverage under liability policy. *87 ALR 3d 429.*

Damage liability of state or local public employees' union or union officials for unlawful work stoppage. *84 ALR 3d 336.*

Recovery of damages for mental anguish, distress, suffering, or the like, in action for wrongful attachment, garnishment, sequestration, or execution. *83 ALR 3d 598.*

Good will as element of damages for condemnation of property on which private business is conducted. *81 ALR 3d 198.*

Injured person's hospitalization or medical insurance as affecting damages recoverable. *77 ALR 3d 415.*

Liability for damages to adjacent land or building caused by dredging. *62 ALR 3d 526.*

Injury to credit standing, reputation, solvency, or profit potential as elements of damage resulting from wrongful execution against business property. *55 ALR 3d 911.*

Remedies and measure of damages for wrongful cancellation of liability and property insurance. *34 ALR 3d 385.*

Remedies and measure of damages for wrongful cancellation of life, health, and accident insurance. *34 ALR 3d 245.*

Measure of damages for conversion of corporate stock or certificate. *31 ALR 3d 1286.*

Right to maintain malpractice suit against injured employee's attending physician notwithstanding receipt of workmen's compensation award. *28 ALR 3d 1066.*

Pretrial discovery of defendant's financial worth on issue of damages. *27 ALR 3d 1375.*

Medical malpractice, and measure and element of damages, in connection with sterilization or birth control procedures. *27 ALR 3d 906.*

Elements and measure of damages in action by schoolteacher for wrongful discharge. *22 ALR 3d 1047.*

Tenant's right to damages for landlord's breach of tenant's option to purchase. *17 ALR 3d 976.*

Prime contractor's liability to subcontractor for delay in performance. *16 ALR 3d 1252.*

Defaulting defendant's right to notice and hearing as to determination of amount of damages. *15 ALR 3d 586.*

Recovery for loss of profits from contemplated sale or use of land, where vendor fails or refuses to convey. *11 ALR 3d 719.*

Zoning as a factor in determination of damages in eminent domain. *9 ALR 3d 291.*

Restrictive covenant or right to enforcement thereof as compensable property right. *4 ALR 3d 1137.*

Injured person's receipt of statutory disability unemployment benefits as affecting recovery against tortfeasor. *4 ALR 3d 535.*

Right and measure of recovery for breach of obligation to drill exploratory oil or gas wells. *4 ALR 3d 284.*

Overhead expenses as recoverable element of damages. *3 ALR 3d 689.*

Measure of damages for wrongful removal of earth, sand, or gravel from land. *1 ALR 3d 801.*

Mitigation of damages in landlord's action for waste against tenant. *82 ALR 2d 1106.*

Measure and elements of damages, in action other than one against a carrier for injury, loss, or destruction of livestock. *79 ALR 2d 677.*

Measure of evicted tenant's recovery for improvements made by him on premises for lease uses. *71 ALR 2d 1104.*

Right to recover attorneys' fees for wrongful attachment. *65 ALR 2d 1426.*

Damages to land as affected by permanence of nuisance in operation of sewage disposal plant. *40 ALR 2d 1200.*

Cost of hiring substitute or assistant during incapacity of injured party as proof of damages for loss of time in action for personal injury. *37 ALR 2d 364.*

Measure of damages for loss of or interference with lateral support. *36 ALR 2d 1253.*

Purchaser's use or attempted use of articles known to be defective as affecting damages recoverable for breach of warranty. *33 ALR 2d 511.*

Pain and suffering of parent on account of personal injury to infant as recoverable item of damages. *32 ALR 2d 1060.*

Exemplary damages in action for tenant's failure to surrender possession of rented premises. *32 ALR 2d 611.*

Damages for violation of reemployment rights of discharged servicemen. *29 ALR 2d 1335.*

Recovery from mental shock or distress in connection with injury or interference with tangible property. *28 ALR 2d 1070.*

Elements and measure of damages for procuring breach of contract. *26 ALR 2d 1227,* §§ 6, 7 superseded by *96 ALR 3d 1294,* § 45 superseded by *44 ALR 4th 1078.*

Measure and elements of damages for personal injury resulting in death of infant. *14 ALR 2d 485,* § 5 superseded by *45 ALR 4th 234,* § 6 superseded by *77 ALR 4th 411.*

Changes in cost of living or in purchasing power of money as affecting damages for personal injuries or death. *12 ALR 2d 611,* superseded in part by *21 ALR 4th 21.*

Loss of profits of a business in which plaintiff is interested as a factor in determining damages for impairment of earning capacity in action for personal injuries. *12 ALR 2d 288.*

Damages for diminution of value of use of property as recoverable for a permanent nuisance affecting real property. *10 ALR 2d 669.*

Collateral References

Damages [Key number] 87 through 94.

25 C.J.S. Damages §§ 195 through 217.

*22 Am. Jur. 2d Damages § 539,* et seq.

Exemplary or punitive damages for pharmacist's wrongful conduct in preparing or dispensing medical prescription--cases not under Consumer Product Safety Act *(15 U.S.C.A. § 2072). 109 ALR 5th 397.*

Availability and scope of punitive damages under state employment discrimination law. *81 ALR 5th 367.*

Allowance of punitive damages in medical malpractice action. *35 ALR 5th 145.*

Intoxication of automobile driver as basis for awarding punitive damages. *33 ALR 5th 303.*

Excessiveness or inadequacy of punitive damages in cases not involving personal injury or death. *14 ALR 5th 242,* § 48 superseded by *86 ALR 5th 397.*

Standard of proof as to conduct underlying punitive damage awards--modern status. *58 ALR 4th 878.*

Credit life insurer's punitive damage liability for refusing payment. *55 ALR 4th 246.*

Liability of successor corporation for punitive damages for injury caused by predecessor's product. *55 ALR 4th 166.*

Punitive damages as within coverage of uninsured or underinsured motorist insurance. *54 ALR 4th 1186.*

Discovery of defendant's sales, earnings, or profits on issue of punitive damages in tort action. *54 ALR 4th 998.*

Excessiveness or inadequacy of compensatory damages for malicious prosecution. *50 ALR 4th 843.*

Punitive damages for interference with contract or business relationship. *44 ALR 4th 1078.*

Sufficiency of showing of actual damages to support award of punitive damages--modern cases. *40 ALR 4th 11.*

Evidence of defendant's rehabilitation or reformation as relevant on issue of punitive damages. *39 ALR 4th 1122.*

Claim for punitive damages in tort action as surviving death of tortfeasor or person wronged. *30 ALR 4th 707.*

Effect of plaintiff's comparative negligence in reducing punitive damages recoverable. *27 ALR 4th 318.*

Insurer's tort liability for consequential or punitive damages for wrongful failure or refusal to defend insured. *20 ALR 4th 23.*

Recovery of punitive damages in action by purchasers of real property charging fraud or misrepresentation. *19 ALR 4th 801.*

Liability insurance coverage as extending to liability for punitive or exemplary damages. *16 ALR 4th 11.*

Derivative liability of partner for punitive damages for wrongful act of copartner. *14 ALR 4th 1335.*

Allowance of punitive damages in action against attorney for malpractice. *14 ALR 4th 95.*

Propriety of awarding punitive damages to separate plaintiffs bringing successive actions arising out of common incident or circumstances against common defendant or defendants ("one bite" or "first comer" doctrine). *11 ALR 4th 1261.*

Application of comparative negligence in action based on gross negligence, recklessness, or the like. *10 ALR 4th 946.*

Allowance of punitive damages in action for slander of title or disparagement of property. *7 ALR 4th 1219.*

Liability of surety on private bond for punitive damages. *2 ALR 4th 1254.*

Recovery of exemplary or punitive damages from municipal corporation. *1 ALR 4th 448.*

Criminal liability as barring or mitigating recovery of punitive damages. *98 ALR 3d 870.*

Defendant's state of mind necessary or sufficient to warrant award of punitive damages in action for false arrest or imprisonment. *93 ALR 3d 1109.*

Recoverability of punitive damages in action by insured against liability insurer for failure to settle claim against insured. *85 ALR 3d 1211.*

Arbitrator's power to award punitive damages. *83 ALR 3d 1037.*

Admissibility on defendant's behalf, as matter in mitigation of punitive damages, of evidence as to his lack of financial resources. *79 ALR 3d 1138.*

Measure and elements of buyer's recovery upon revocation of acceptance of goods under *U.C.C. § 2-608(1). 65 ALR 3d 388.*

What constitutes malice sufficient to justify an award of punitive damages in action for wrongful attachment or garnishment. *61 ALR 3d 984.*

Allowance of punitive damages for invasion of common-law rights in literary property. *40 ALR 3d 248.*

Attorneys' fees or other expenses of litigation as element in measuring exemplary or punitive damages. *30 ALR 3d 1443.*

Spouse's or parent's right to recover punitive damages in connection with recovery of damages for medical expenses or loss of services or consortium arising from personal injury to other spouse or to child. *25 ALR 3d 1416.*

Exemplary damages in action against telephone company for mistake in or omission from its directory. *92 ALR 2d 925.*

Principal's liability for punitive damages for false arrest or imprisonment caused by agent or servant. *92 ALR 2d 37.*

Right of principal to recover punitive damages for agent's or broker's breach of duty. *67 ALR 2d 952.*

Right to punitive or exemplary damages in action for personal injury caused by operation of automobile. *62 ALR 2d 813.*

Sleeping-car company's liability for punitive damages for employee's assault upon passenger. *60 ALR 2d 1115.*

Punitive damages for conversion of personalty. *54 ALR 2d 1361.*

Punitive damages for pollution of stream. *49 ALR 2d 311.*

Exemplary damages as recoverable for trade-mark infringement or unfair competition. *47 ALR 2d 1117.*

Punitive damages as recoverable for attorney's negligence with respect to maintenance or prosecution of litigation or appeal. *45 ALR 2d 69.*

Extensiveness or inadequacy of damages for alienation of affections or criminal conversation. *36 ALR 2d 551.*

Exemplary damages on account of personal injury to infant as belonging to him or to parents. *32 ALR 2d 1079.*

Exemplary damages in action for tenant's failure to surrender possession of rented premises. *32 ALR 2d 611.*

Punitive or exemplary damages in action by spouse for alienation of affections or criminal conversation. *31 ALR 2d 713.*

Punitive damages for wrongful ejection or rejection of guest from hotel or restaurant. *14 ALR 2d 715.*

LexisNexis (R) Notes:

CASE NOTES

1. Although the district court's directed verdict in favor of defendant insurer and against plaintiff claimant under *Mont. Code Ann. § 33-18-201(6)*, (13) (2002), of Montana's Unfair Trade Practices Act, was reversed, the record did not show sufficient evidence of actual fraud or actual malice, and thus, the directed verdict in favor of the insurer on the issue of punitive damages under *Mont. Code Ann. § 33-18-242(4)* was affirmed; the permissive language of § *33-18-242(4)* did not mean that the violation was per se "actual malice" under *Mont. Code Ann. § 27-1-221. Burgett v. Safeco Nat'l Ins. Co., 2003 U.S. App. LEXIS 15134 (9th Cir. Mont. July 17 2003),* reprinted as amended at *73 Fed. Appx. 254, 2003 U.S. App. LEXIS 16957 (9th Cir. Mont. 2003).*

2. Injured railway employee's state action against a railway under *Mont. Code Ann. § 27-1-221* and *Mont. Const. art. II, § 16* for post-injury claims mishandling was not preempted by the Federal Employers' Liability Act (FELA), *45 U.S.C.S. § 51* et seq., because FELA did not provide such a remedy. *Reidelbach v. Burlington Northern & Santa Fe Ry. Co., 2002 MT 289, 312 Mont. 498, 60 P.3d 418, 2002 Mont. LEXIS 563 (2002).*

3. Summary judgment for a mining company was proper in a wrongful death suit brought by decedent's personal representative, as there were no facts that showed that a co-worker, who operated a locomotive in a mine, acted with actual malice when he caused decedent's death. *Blain v. Stillwater Mining Co., 2004 MT 141, 321 Mont. 403, 92 P.3d 4, 2004 Mont. LEXIS 223 (2004).*

4. Where defendants engaged in a fraudulent real estate scheme, the district court erred by awarding punitive damages without stating the reasons in its findings of fact and conclusions of law. *Williams v. Global Fin. Servs., Inc., 2006 MT 9N, 131 P.3d 571, 2006 Mont. LEXIS 5 (2006).*

5. It was not error for the district court to grant the corporation's *Fed. R. Civ. P. 50* motion on the issue of punitive damages because the passenger failed to demonstrate that the corporation acted with malice under *Mont. Code Ann. § 27-1-221(1)*, and the passenger did not present any evidence to suggest, as a threshold matter, that there was a high probability that intoxicated passengers would injure other passengers, nor did the passenger demonstrate that the corporation

knew that its procedure for dealing with disorderly or intoxicated passengers was inadequate. *Groves v. Greyhound Lines, Inc., 79 Fed. Appx. 255, 2003 U.S. App. LEXIS 21165 (9th Cir. Mont. 2003),* amended by *2003 U.S. App. LEXIS 25886* (9th Cir. Dec. 18, 2003).

6. Given the provisions of *Mont. Code Ann. § 27-1-221* and that, on a motion for directed verdict, a trial judge had to view the evidence in a light most favorable to plaintiff injured worker, a district court erred in striking the worker's punitive damage claim. *Mydlarz v. Palmer/Duncan Constr. Co., 209 Mont. 325, 682 P.2d 695, 1984 Mont. LEXIS 890 (Mont. 1984).*

7. Where, viewing the evidence in a light most favorable to plaintiff franchisees, a jury question was raised as to fraud, oppression, and malice on the part of defendant franchisor, the factual question of punitive damages, *Mont. Code Ann. § 27-1-221,* was properly submitted to the jury. *Dunfee v. Baskin-Robbins, Inc., 221 Mont. 447, 720 P.2d 1148, 1986 Mont. LEXIS 915 (Mont. 1986).*

8. In a negligence action, it was determined that *Mont. Code Ann. § 27-1-221* which required unanimous punitive damages verdicts, was unconstitutional where it directly conflicted with *Mont. Const. Art. II, § 26,* which allowed two-thirds verdicts in all civil actions. *Finstad v. W.R. Grace & Co.-Conn., 2000 MT 228, 301 Mont. 240, 8 P.3d 778, 2000 Mont. LEXIS 229, 57 Mont. St. Rep. 934 (2000).*

9. Punitive damages are imposed for the sake of example and by way of punishing the defendant; their function is not to make up for attorney's fees or noncollectible expenses to which a litigant may feel entitled. Thus, it was error to deny an insured attorney's fees on the ground that a punitive damages award was sufficient to pay his attorney's fees and nonallowable costs. *Britton v. Farmers Ins. Group, 221 Mont. 67, 721 P.2d 303, 1986 Mont. LEXIS 880 (Mont. 1986).*

10. Where defendants engaged in a fraudulent real estate scheme, the district court erred by awarding punitive damages without stating the reasons in its findings of fact and conclusions of law. *Williams v. Global Fin. Servs., Inc., 2006 MT 9N, 131 P.3d 571, 2006 Mont. LEXIS 5 (2006).*

11. Where the jury was properly instructed on the issue of punitive damages and made its decision after considering the evidence presented, the trial court considers whether to increase or decrease the award based on the following *Mont. Code Ann. § 27-1-221(7)(c)* factors: (i) the nature and reprehensibility of the defendant's wrongdoing; (ii) the extent of the defendant's wrongdoing; (iii) the intent of the defendant in committing the wrong; (iv) the profitability of the defendant's wrongdoing, if applicable; (v) the amount of actual damages awarded by the jury; (vi) the defendant's net worth; (vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act; (viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and (ix) any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages. *Rocky Mt. Enters. v. Pierce Flooring, 286 Mont. 282, 951 P.2d 1326, 1997 Mont. LEXIS 276, 54 Mont. St. Rep. 1410 (Mont. 1997).*

12. Landlord's argument that the trial court erred in awarding a tenant three month's periodic rent under *Mont. Code Ann. § 70-24-411* because the award was punitive in nature and the tenant did not meet the requirements for punitive damages under *Mont. Code Ann. § 27-1-221* was without merit. As a specific statute, § *70-24-411* took priority over any general statute that was inconsistent with it, *Mont. Code Ann. § 1-2-102. Whalen v. Taylor, 278 Mont. 293, 925 P.2d 462, 1996 Mont. LEXIS 190, 53 Mont. St. Rep. 914 (Mont. 1996).*

13. *Mont. Code Ann. § 27-1-221(5)* requires that all elements of a claim for punitive damages must be proven by clear and convincing evidence. *Maulding v. Hardman, 257 Mont. 18, 847 P.2d 292, 1993 Mont. LEXIS 38, 50 Mont. St. Rep. 141 (Mont. 1993).*

14. Under *Mont. Code Ann. § 27-1-221(2)*, actual malice existed in a prescriptive easement case where a landowner had been told by his predecessors and others that the road across his property was to remain open, the farmer told the landowner that a new gate would prevent the farmer from harvesting his crop on state-leased land, and the landowner proceeded to block the road. *Rasmussen v. Fowler, 245 Mont. 308, 800 P.2d 1053, 1990 Mont. LEXIS 361 (Mont. 1990)*.

15. Trial court in a prescriptive easement case granted injunctive relief to a farmer as well as compensatory damages and held open the possibility of punitive damages if the landowner violated the final judgment and order that kept open a road across the landowner's property. Consequently, because an earlier injunction to keep the road open during litigation was not disobeyed, the trial court's decision to deny the farmer's motion for punitive damages at the judgment stage and to reserve the award of punitive damages was not clearly erroneous. *Rasmussen v. Fowler, 245 Mont. 308, 800 P.2d 1053, 1990 Mont. LEXIS 361 (Mont. 1990)*.

16. There was no error in a district court's assessment of damages for defendant's failure to assign a lease of certain farmland to plaintiffs who purchased the farm and related interests, because, as required by Mont. R. Civ. P. 52(a), there was enough relevant evidence to support the district court's findings of fact on the issue and the district court properly applied *Mont. Code Ann. § 27-1-314* in determining the appropriate damages. Similarly, an award of punitive damages under *Mont. Code Ann. § 27-1-221* was also proper. *Moore v. Hardy, 230 Mont. 158, 748 P.2d 477, 1988 Mont. LEXIS 15, 45 Mont. St. Rep. 108 (Mont. 1988)*.

17. Punitive damages are imposed for the sake of example and by way of punishing the defendant; their function is not to make up for attorney's fees or noncollectible expenses to which a litigant may feel entitled. Thus, it was error to deny an insured attorney's fees on the ground that a punitive damages award was sufficient to pay his attorney's fees and non-allowable costs. *Britton v. Farmers Ins. Group, 221 Mont. 67, 721 P.2d 303, 1986 Mont. LEXIS 880 (Mont. 1986)*.

18. Because, under Mont. R. Civ. P. 54(c), every final judgment had to grant the relief in whose favor it was rendered was entitled, where plaintiffs, purchasers of land, were awarded compensatory damages based on fraud and misrepresentation by defendant sellers, there was no error in an award of punitive damages to the purchasers pursuant to *Mont. Code Ann. § 27-1-221. Castillo v. Franks, 213 Mont. 232, 690 P.2d 425, 1984 Mont. LEXIS 1095 (Mont. 1984)*.

19. District court did not abuse its discretion in awarding punitive damages to plaintiff property owners on remand of an action to quiet title to an easement across property belonging to defendant property owners because the trial court was not required to employ the procedural mechanisms available under *Mont. Code Ann. § 27-8-313* and Mont. R. Civ. P. 59 where the district court upon remand of the case was ordered to reconsider the award of punitive damages, without direction or restriction on the method to be utilized, but in light of the requirements of *Mont. Code Ann. § 27-1-221(7)(b)*, which merely required the district court to reconsider whether the facts of the case supported the award of punitive damages, and if so, to comply with the requirements of *§ 27-1-221(7)(b)* by setting forth the reasons justifying such an award. *Bragg v. McLaughlin, 1998 MT 284N, 1998 Mont. LEXIS 274 (Nov. 24 1998)*.

20. Under *Mont. Code Ann. § 27-1-221(7)(c)*, a jury award of punitive damages must be reviewed by the district court judge. A district court judge, having heard the evidence and observed the witnesses, is in the best position to determine whether the requirements of proof of punitive damages have been met. *King v. Zimmerman, 266 Mont. 54, 878 P.2d 895, 1994 Mont. LEXIS 155, 51 Mont. St. Rep. 659 (Mont. 1994)*.

21. District court did not abuse its discretion in awarding punitive damages to plaintiff property owners on remand of an action to quiet title to an easement across property belonging to defendant property owners because the trial court was not required to employ the procedural mechanisms available under *Mont. Code Ann. § 27-8-313* and Mont. R. Civ. P. 59 where the district court upon remand of the case was ordered to reconsider the award of punitive damages, without direction or restriction on the method to be utilized, but in light of the requirements of *Mont. Code Ann. § 27-1-*