*221(7)(b)*, which merely required the district court to reconsider whether the facts of the case supported the award of punitive damages, and if so, to comply with the requirements of § *27-1-221(7)(b)* by setting forth the reasons justifying such an award. *Bragg v. McLaughlin, 1998 MT 284N, 1998 Mont. LEXIS 274 (Nov. 24 1998).*

22. Trial court in a prescriptive easement case granted injunctive relief to a farmer as well as compensatory damages and held open the possibility of punitive damages if the landowner violated the final judgment and order that kept open a road across the landowner's property. Consequently, because an earlier injunction to keep the road open during litigation was not disobeyed, the trial court's decision to deny the farmer's motion for punitive damages at the judgment stage and to reserve the award of punitive damages was not clearly erroneous. *Rasmussen v. Fowler, 245 Mont. 308, 800 P.2d 1053, 1990 Mont. LEXIS 361 (Mont. 1990).*

23. There was no error in a district court's assessment of damages for defendant's failure to assign a lease of certain farmland to plaintiffs who purchased the farm and related interests, because, as required by Mont. R. Civ. P. 52(a), there was enough relevant evidence to support the district court's findings of fact on the issue and the district court properly applied *Mont. Code Ann. § 27-1-314* in determining the appropriate damages. Similarly, an award of punitive damages under *Mont. Code Ann. § 27-1-221* was also proper. *Moore v. Hardy, 230 Mont. 158, 748 P.2d 477, 1988 Mont. LEXIS 15, 45 Mont. St. Rep. 108 (Mont. 1988).*

24. To sustain an award of punitive damages against an objection that the evidence is insufficient, there must be substantial evidence in the record of oppression, fraud or malice, actual or presumed, toward the plaintiff, where the punitive damage award is given for the sake of example and by way of punishing the defendant, *Mont. Code Ann. § 27-1-221. Johnson v. Murray, 201 Mont. 495, 656 P.2d 170, 1982 Mont. LEXIS 1019 (Mont. 1982).*

25. In a negligence action, it was determined that *Mont. Code Ann. § 27-1-221* which required unanimous punitive damages verdicts, was unconstitutional where it directly conflicted with *Mont. Const. Art. II, § 26*, which allowed two-thirds verdicts in all civil actions. *Finstad v. W.R. Grace & Co.-Conn., 2000 MT 228, 301 Mont. 240, 8 P.3d 778, 2000 Mont. LEXIS 229, 57 Mont. St. Rep. 934 (2000).*

26. Although a trial court found as a matter of law that the actions of defendant company in drawing on a letter of credit constituted a tortious breach of the obligation of good faith and fair dealing, as defined by *Mont. Code Ann. § 28-1-211*, in that the contract was "oppressive" and "malicious," which were terms used to characterize the type of conduct in which exemplary damages were allowed, *Mont. Code Ann. § 27-1-221*, under *Mont. Code Ann. § 27-1-220* exemplary damages were not allowed for a breach of contract unless otherwise expressly provided by statute. *Haines Pipeline Constr. v. Mont. Power Co., 251 Mont. 422, 830 P.2d 1230, 1991 Mont. LEXIS 316 (Mont. 1991),* overruled by *Porter v. Galarneau, 275 Mont. 174, 911 P.2d 1143, 1996 Mont. LEXIS 23, 53 Mont. St. Rep. 99 (Mont. 1996).*

27. To recover punitive damages in addition to compensatory recovery from a breach of the implied covenant of good faith and fair dealing requires the plaintiffs to prove that the defendants' actions in breaching the implied covenant of good faith and fair dealing met the requirements of *Mont. Code Ann. § 27-1-221. McGregor v. Mommer, 220 Mont. 98, 714 P.2d 536, 1986 Mont. LEXIS 803 (Mont. 1986).*

28. Seller of land was not entitled to punitive damages in a breach of contract action brought against the potential buyers of the land, as there was insufficient evidence that the buyer acted with actual malice towards seller by bringing a num-

ber of actions against the seller, including an action that was filed in tribal court. *Weter v. Archambault, 2002 MT 336, 313 Mont. 284, 61 P.3d 771, 2002 Mont. LEXIS 644 (2002).*

29. Reasonable punitive damages may be awarded where defendant was found guilty of actual fraud. *Webcor Elecs. v. Home Elecs., 231 Mont. 377, 754 P.2d 491, 1988 Mont. LEXIS 126, 45 Mont. St. Rep. 695, 7 U.C.C. Rep. Serv. 2d (CBC) 683 (Mont. 1988).*

30. Compensatory and punitive damages awarded for a seller in its action against a manufacturer of telephone systems for breach of contract, breach of covenant of good faith, and fraud was proper where there was evidence of a breach and fraud. *Webcor Elecs. v. Home Elecs., 231 Mont. 377, 754 P.2d 491, 1988 Mont. LEXIS 126, 45 Mont. St. Rep. 695, 7 U.C.C. Rep. Serv. 2d (CBC) 683 (Mont. 1988).*

31. Under *Mont. Code Ann. § 27-1-221(1)*, the breach of a seller of real property's obligation to allow the purchaser "peaceable occupation of his home and property did not arise from contract. Punitive damages are proper in an action for a breach of an obligation not arising from contract where the defendant has been guilty of oppression, fraud, or malice. *Rauch v. Michel, 221 Mont. 1, 716 P.2d 617, 1986 Mont. LEXIS 862 (Mont. 1986).*

32. To recover punitive damages in addition to compensatory recovery from a breach of the implied covenant of good faith and fair dealing requires the plaintiffs to prove that the defendants' actions in breaching the implied covenant of good faith and fair dealing met the requirements of *Mont. Code Ann. § 27-1-221. McGregor v. Mommer, 220 Mont. 98, 714 P.2d 536, 1986 Mont. LEXIS 803 (Mont. 1986).*

33. Defendant's actions in frustrating plaintiff's attempts to conform with terms of their contract met the state's bad faith standard required for breach of the implied covenant of good faith and fair dealing; thus, punitive damages were appropriate. *Nicholson v. United Pac. Ins. Co., 219 Mont. 32, 710 P.2d 1342, 1985 Mont. LEXIS 961 (Mont. 1985),* questioned by *Davey v. Nessan, 252 Mont. 397, 830 P.2d 92, 1992 Mont. LEXIS 92, 49 Mont. St. Rep. 294 (Mont. 1992),* questioned by *Keller v. Dooling, 248 Mont. 535, 813 P.2d 437, 1991 Mont. LEXIS 163, 48 Mont. St. Rep. 554 (Mont. 1991),* criticized by *Story v. Bozeman, 242 Mont. 436, 791 P.2d 767, 1990 Mont. LEXIS 143, 12 U.C.C. Rep. Serv. 2d (CBC) 359 (Mont. 1990).*

34. In a dispute over a sublease, it was error to award the sublessee punitive damages when no tortious conduct on the sublessor's part had been shown. *Lemley v. Allen, 203 Mont. 37, 659 P.2d 262, 1983 Mont. LEXIS 627 (Mont. 1983).*

35. In a dispute over a sublease, it was error to award the sublessee punitive damages when no tortious conduct on the sublessor's part had been shown. *Lemley v. Allen, 203 Mont. 37, 659 P.2d 262, 1983 Mont. LEXIS 627 (Mont. 1983).*

36. Where a personal injury plaintiff sought punitive damages under *Mont. Code Ann. § 27-1-221* for injuries allegedly cause by defendant driver's willful and wanton misconduct in driving his vehicle at an excessive speed, evidence of the driver's prior guilty pleas to charges that he supplied liquor to minor was irrelevant because the oppression, fraud, or malice reflected by those pleas was not associated with the alleged act of reckless driving and did not tend to make any of the requisite factors for punitive damages more or less probable. *Derenberger v. Lutey, 207 Mont. 1, 674 P.2d 485, 1983 Mont. LEXIS 848 (Mont. 1983).*

37. In a products liability action against a tire manufacturer, evidence that the manufacturer made illegal political contributions should not have been admitted under Mont. R. Evid. 402 on the issue of punitive damages under *Mont. Code Ann. § 27-1-221,* as plaintiff completely failed to connect the political contributions to a federal investigation of the multi-piece wheels, which exploded and caused plaintiff's injury. The evidence was extremely damaging and obviously inflammatory in nature and should have been admitted only upon proof showing its relevance to the action. *Kuiper v. Goodyear Tire & Rubber Co., 207 Mont. 37, 673 P.2d 1208, 1983 Mont. LEXIS 874 (Mont. 1983).*

38. Trial court exceeded its authority when it reduced the jury punitive damages awarded for the insurers' bad faith in adjusting a hail crop damage claim; the court was bound by the jury's determination of facts on all issues submitted to the jury pursuant to *Mont. Code Ann. § 27-1-221(7)(c)*. *DeBruycker v. Guar. Nat'l Ins. Co., 266 Mont. 294, 880 P.2d 819, 1994 Mont. LEXIS 187, 51 Mont. St. Rep. 835 (Mont. 1994)*.

39. The court must clearly state its reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in *Mont. Code Ann. § 27-1-221(7)(b)* and (c). *DeBruycker v. Guar. Nat'l Ins. Co., 266 Mont. 294, 880 P.2d 819, 1994 Mont. LEXIS 187, 51 Mont. St. Rep. 835 (Mont. 1994)*.

40. Title companies acted in bad faith by refusing to defend the insured, and their bad faith was a basis for properly assessing punitive damages that was independent of a contract and of the Montana Insurance Code; thus the prohibition of the imposition of punitive damages for a breach of contract contained in *Mont. Code Ann. § 27-1-221* did not apply, and there was no requirement that a breach of the Montana Insurance Code was a prerequisite for the assessment of punitive damages. *Lipinski v. Title Ins. Co., 202 Mont. 1, 655 P.2d 970, 1982 Mont. LEXIS 1017 (Mont. 1982)*.

41. Although, pursuant to *Mont. Code Ann. § 27-1-221*, malice, oppression, or fraud was necessary to establish a basis for punitive damages, malice on the part of an insurer was not a necessary component to impose liability upon the insurer for bad faith refusal to settle. *Gibson v. Western Fire Ins. Co., 210 Mont. 267, 682 P.2d 725, 1984 Mont. LEXIS 936, 57 A.L.R.4th 773 (Mont. 1984)*.

42. Where, based on the testimony at trial, a jury could have found that a malpractice insurer was at least recklessly indifferent to the risk to which it was putting its insured in failing to settle an underlying tort case, consideration of punitive damages was a proper issue to submit to the jury and the Supreme Court of Montana found no reason to state, as a matter of law, that punitive damages should not have been awarded to the insured for the insurer's failure to settle. *Gibson v. Western Fire Ins. Co., 210 Mont. 267, 682 P.2d 725, 1984 Mont. LEXIS 936, 57 A.L.R.4th 773 (Mont. 1984)*.

43. Although the district court's directed verdict in favor of defendant insurer and against plaintiff claimant under *Mont. Code Ann. § 33-18-201(6)*, (13) (2002), of Montana's Unfair Trade Practices Act, was reversed, the record did not show sufficient evidence of actual fraud or actual malice, and thus, the directed verdict in favor of the insurer on the issue of punitive damages under *Mont. Code Ann. § 33-18-242(4)* was affirmed; the permissive language of § *33-18-242(4)* did not mean that the violation was per se "actual malice" under *Mont. Code Ann. § 27-1-221*. *Burgett v. Safeco Nat'l Ins. Co., 2003 U.S. App. LEXIS 15134 (9th Cir. Mont. July 17 2003)*, reprinted as amended at *73 Fed. Appx. 254, 2003 U.S. App. LEXIS 16957 (9th Cir. Mont. 2003)*.

44. Where insurer sought to avoid punitive damages liability in wrongful repossession suits against an insured, on certified question from federal court, state supreme court ruled that state public policy did not bar insurance coverage of punitive damages. First Bank (N.A.)-*Billings v. Transamerica Ins. Co., 209 Mont. 93, 679 P.2d 1217, 1984 Mont. LEXIS 869 (Mont. 1984)*.

45. Violations of the Discrimination in Employment Statutes, *Mont. Code Ann. § 49-4-101* and *Mont. Code Ann. § 49-4-102*, warrant a claim for punitive damages under *Mont. Code Ann. § 27-1-221* if the violations are shown to have been

intentional or reckless. *Owens v. Parker Drilling Co., 207 Mont. 446, 676 P.2d 162, 1984 Mont. LEXIS 1151, 2 Am. Disabilities Cas. (BNA) 312, 44 Empl. Prac. Dec. (CCH) P37382 (Mont. 1984).*

46. Punitive damages may be assessed for breach of the obligation owed to deal fairly with an employee if the provisions of *Mont. Code Ann. § 27-1-221* are satisfied. *Gates v. Life of Montana Ins. Co., 205 Mont. 304, 668 P.2d 213, 1983 Mont. LEXIS 781, 115 L.R.R.M. (BNA) 4350, 98 Lab. Cas. (CCH) P55399 (Mont. 1983).*

47. *Mont. Code Ann. § 27-1-221* only exempts breach of contract actions from its provisions. Breach of the duty owed to deal fairly and in good faith in an employment relationship is a tort for which punitive damages can be recovered if an employer's conduct is sufficiently culpable. *Gates v. Life of Montana Ins. Co., 205 Mont. 304, 668 P.2d 213, 1983 Mont. LEXIS 781, 115 L.R.R.M. (BNA) 4350, 98 Lab. Cas. (CCH) P55399 (Mont. 1983).*

48. Where the evidence was sufficient to justify the jury in finding that an employer induced an employee to submit a letter of resignation by promising to give the employee a favorable letter of reference and in finding that the employer refused the employee's demand for the return of the letter of resignation, the employer's conduct was sufficient to form the basis for a jury finding of fraud, oppression, or malice that justified an award of punitive damages under *Mont. Code Ann. § 27-1-221. Gates v. Life of Montana Ins. Co., 205 Mont. 304, 668 P.2d 213, 1983 Mont. LEXIS 781, 115 L.R.R.M. (BNA) 4350, 98 Lab. Cas. (CCH) P55399 (Mont. 1983).*

49. In an employee's wrongful discharge action against his employer for violations of the Discrimination in Employment Statutes, *Mont. Code Ann § 49-4-101* and *Mont. Code Ann. § 49-4-102,* after he was fired from his job on an oil rig because he had only one arm, the employee was entitled to seek punitive damages because there was sufficient evidence to establish a genuine issue of reckless conduct by the employer which created a presumption of malice to support a claim for punitive damages under *Mont. Code Ann. § 27-1-221. Owens v. Parker Drilling Co., 207 Mont. 446, 676 P.2d 162, 1984 Mont. LEXIS 1151, 2 Am. Disabilities Cas. (BNA) 312, 44 Empl. Prac. Dec. (CCH) P37382 (Mont. 1984).*

50. In a boundary dispute action, punitive damages were validly awarded because the testimony at trial indicated that the owners of one piece of property refused to negotiate the boundary dispute, and destroyed two fences. *Bollinger v. Hollingsworth, 227 Mont. 454, 739 P.2d 962, 1987 Mont. LEXIS 940, 44 Mont. St. Rep. 1228 (Mont. 1987).*

51. Landlord's argument that the trial court erred in awarding a tenant three month's periodic rent under *Mont. Code Ann. § 70-24-411* because the award was punitive in nature and the tenant did not meet the requirements for punitive damages under *Mont. Code Ann. § 27-1-221* was without merit. As a specific statute, § *70-24-411* took priority over any general statute that was inconsistent with it, *Mont. Code Ann. § 1-2-102. Whalen v. Taylor, 278 Mont. 293, 925 P.2d 462, 1996 Mont. LEXIS 190, 53 Mont. St. Rep. 914 (Mont. 1996).*

52. Under *Mont. Code Ann. § 27-1-221(2),* actual malice existed in a prescriptive easement case where a landowner had been told by his predecessors and others that the road across his property was to remain open, the farmer told the landowner that a new gate would prevent the farmer from harvesting his crop on state-leased land, and the landowner proceeded to block the road. *Rasmussen v. Fowler, 245 Mont. 308, 800 P.2d 1053, 1990 Mont. LEXIS 361 (Mont. 1990).*

53. Trial court in a prescriptive easement case granted injunctive relief to a farmer as well as compensatory damages and held open the possibility of punitive damages if the landowner violated the final judgment and order that kept open a road across the landowner's property. Consequently, because an earlier injunction to keep the road open during litiga-

tion was not disobeyed, the trial court's decision to deny the farmer's motion for punitive damages at the judgment stage and to reserve the award of punitive damages was not clearly erroneous. *Rasmussen v. Fowler, 245 Mont. 308, 800 P.2d 1053, 1990 Mont. LEXIS 361 (Mont. 1990).*

54. Where defendants engaged in a fraudulent real estate scheme, the district court erred by awarding punitive damages without stating the reasons in its findings of fact and conclusions of law. *Williams v. Global Fin. Servs., Inc., 2006 MT 9N, 131 P.3d 571, 2006 Mont. LEXIS 5 (2006).*

55. Findings supported a district court's awards of compensatory damages pursuant to *Mont. Code Ann. § 27-1-317* and punitive damages pursuant to *Mont. Code Ann. § 27-1-220.* Findings as to the punitive damages met the requirements of *Mont. Code Ann. § 27-1-221(7)(b). Selvidge v. McBeen, 230 Mont. 237, 750 P.2d 429, 1988 Mont. LEXIS 26 (Mont. 1988).*

56. Punitive damages are recoverable under *Mont. Code Ann. § 27-1-221* where malice, oppression, or fraud is shown. Malice is defined for these purposes as when a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, or reckless to which the law of Montana will allow imposition of punitive damages on the basis of presumed malice; oppression includes acts that constitute an abuse of power. *First Nat'l Bank v. Twombly, 213 Mont. 66, 689 P.2d 1226, 1984 Mont. LEXIS 1077, 39 U.C.C. Rep. Serv. (CBC) 1192 (Mont. 1984).*

57. Where the evidence was sufficient for the jury to find that a bank's acceleration of a promissory note was done with malice and the jury resolved the issues that would have formed the basis for an award of punitive damages under *Mont. Code Ann. § 27-1-221* in favor of the promisors, the trial court erred in refusing to submit the issue of punitive damages to the jury. *First Nat'l Bank v. Twombly, 213 Mont. 66, 689 P.2d 1226, 1984 Mont. LEXIS 1077, 39 U.C.C. Rep. Serv (CBC) 1192 (Mont. 1984).*

58. In addition to the actual damages, juries may give damages for the sake of example and by way of punishment where they find that defendants have been guilty of oppression, fraud, or actual or presumed malice in tort actions. *Gee v. Egbert, 209 Mont. 1, 679 P.2d 1194, 1984 Mont. LEXIS 834 (Mont. 1984).*

59. Exemplary damages can be awarded permissibly in cases where there is no direct evidence of fraud or malice or gross negligence; they may be allowed where there is evidence of such recklessness and wanton disregard of another's rights that malice and evil intent will be inferred. *Gee v. Egbert, 209 Mont. 1, 679 P.2d 1194, 1984 Mont. LEXIS 834 (Mont. 1984).*

60. *Mont. Code Ann. § 27-1-221* allows punitive damages for fraud. Because *Mont. Code Ann. § 28-2-404* specifically defines fraud as including constructive fraud, the breach of a fiduciary relationship constituting a constructive fraud forms the basis for an award of punitive damages. *Purcell v. Automatic Gas Distribs., 207 Mont. 223, 673 P.2d 1246, 1983 Mont. LEXIS 871 (Mont. 1983).*

61. If the conduct of a particular defendant is tortious, the fact that an underlying contract exists does not defeat an award of punitive damages. Fraud, if present in the record, constitutes a tort and provides a basis for an award of exemplary damages. *Purcell v. Automatic Gas Distribs., 207 Mont. 223, 673 P.2d 1246, 1983 Mont. LEXIS 871 (Mont. 1983).*

62. Distinctive definition of "actual fraud" under *Mont. Code Ann. § 27-1-221(3)* applies only to the consideration of punitive damages and does not define-or affect the definition of-the underlying tort. *Hallenberg v. General Mills Operations, Inc., 2006 MT 191, 333 Mont. 143, 141 P.3d 1216, 2006 Mont. LEXIS 384 (2006).*

63. Trial court's interpretation and application of *Mont. Code Ann. § 27-1-221* was erroneously influenced by case law relative to the definitions of fraud and constructive fraud for claims brought under *Mont. Code Ann. tit. 28*, and thus the court remanded for reconsideration of the farmer's punitive damage claim based on actual fraud as defined in § *27-1-221*. *Hallenberg v. General Mills Operations, Inc , 2006 MT 191, 333 Mont. 143, 141 P.3d 1216, 2006 Mont. LEXIS 384 (2006)*.

64. Reasonable punitive damages may be awarded when the defendant has been found guilty, by clear and convincing evidence, of actual fraud or actual malice. *DeBruycker v. Guar. Nat'l Ins. Co., 266 Mont. 294, 880 P.2d 819, 1994 Mont. LEXIS 187, 51 Mont. St. Rep. 835 (Mont. 1994)*.

65. In an action under the Montana Unfair Trade Practices Act, punitive damages may be assessed pursuant to *Mont. Code Ann. § 27-1-221* for a violation of subsections (1), (4), (5), (6), (9), or (13) of *Mont. Code Ann. § 33-18-242(4)*. *Dees v. Am. Nat'l Fire Ins  Co., 260 Mont. 431, 861 P.2d 141, 1993 Mont. LEXIS 268, 50 Mont. St. Rep  1068 (Mont. 1993)*.

66. In calculating damage awards, the court can also consider any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages, pursuant to *Mont. Code Ann. § 27-1-221(7)(b)(ix)*. *Maloney v. Home & Inv. Ctr., Inc., 2000 MT 34, 298 Mont. 213, 994 P.2d 1124, 2000 Mont. LEXIS 33, 57 Mont. St. Rep. 144 (2000)*.

67. District court abused the discretion granted by *Mont. Code Ann. 25-11-102(5)* to grant a new trial on the basis that the jury's verdict was given under the influence of passion or prejudice because it failed to consider the appreciation of the corporate tortfeasor's assets, as well as the corporation's policy of retaining profits when it determined the corporation's net worth and taxable income, as required by *Mont. Code Ann. § 27-1-221*. *Maurer v. Clausen Distrib. Co., 275 Mont. 229, 912 P.2d 195, 1996 Mont. LEXIS 19, 53 Mont. St. Rep. 78 (Mont. 1996)*.

68. Although defendant's net worth was one of the factors *Mont. Code Ann. § 27-1-221(7)(a)* required to be considered in determining the appropriate punitive damage award, the plaintiff was not required to show proof that the defendant's net worth supported an award of damages; therefore, because defendant in a personal injury action did not produce evidence regarding his net worth, the award of punitive damages against him was not subject to vacation. *Maurer v. Clausen Distrib. Co., 275 Mont. 229, 912 P.2d 195, 1996 Mont. LEXIS 19, 53 Mont. St. Rep. 78 (Mont. 1996)*.

69. *Mont. Code Ann  § 27-1-202* allows compensatory damages to every person who suffers detriment from the unlawful act of another, and a plaintiff need only show actual damages; furthermore, *Mont. Code Ann. § 27-1-221* allows a jury to award exemplary damages where a defendant has been guilty of either actual or implied malice, which can be shown by proof that a defendant engaged in a course of conduct knowing it to be harmful or unlawful, and there is no specific statutory requirement of an underlying tort or mental distress. Therefore, in an accident victim's negligence action against the driver and the owner of a car that was involved in an automobile accident with the victim's car, the victim was properly awarded damages because the owner indisputably wiped the headlights of his car, thus destroying critical physical evidence relating to the victim's theory of the case, so the victim was damages as a result of the owner's wanton actions. *Lauman v. Lee, 192 Mont. 84, 626 P.2d 830, 1981 Mont. LEXIS 695 (Mont. 1981)*.

70. It was not error for the district court to grant the corporation's *Fed. R. Civ. P. 50* motion on the issue of punitive damages because the passenger failed to demonstrate that the corporation acted with malice under *Mont. Code Ann. § 27-1-221(1)*, and the passenger did not present any evidence to suggest, as a threshold matter, that there was a high probability that intoxicated passengers would injure other passengers, nor did the passenger demonstrate that the corporation knew that its procedure for dealing with disorderly or intoxicated passengers was inadequate. *Groves v  Grey-*

*hound Lines, Inc., 79 Fed. Appx. 255, 2003 U.S. App. LEXIS 21165 (9th Cir. Mont. 2003),* amended by *2003 U.S. App. LEXIS 25886* (9th Cir. Dec. 18, 2003).

71. In an employee's discrimination, assault, and battery suit against her employer and her supervisor, the trial court erred in denying the employee punitive damages against the supervisor as work-related matters were clearly not the reason that the supervisor rented the motel room and his deliberate planning to put the employee in a place where he could sexually assault her constituted actual fraud under *Mont. Code Ann. § 27-1-221(3)*, (4) (1993). *Beaver v. Mont. Dep't of Natural Res. & Conservation, 2003 MT 287, 318 Mont. 35, 78 P.3d 857, 2003 Mont. LEXIS 742, 92 Fair Empl. Prac. Cas. (BNA) 1514 (2003).*

72. Although the district court's directed verdict in favor of defendant insurer and against plaintiff claimant under *Mont. Code Ann. § 33-18-201(6)*, (13) (2002), of Montana's Unfair Trade Practices Act, was reversed, the record did not show sufficient evidence of actual fraud or actual malice, and thus, the directed verdict in favor of the insurer on the issue of punitive damages under *Mont. Code Ann. § 33-18-242(4)* was affirmed; the permissive language of § *33-18-242(4)* did not mean that the violation was per se "actual malice" under *Mont. Code Ann. § 27-1-221. Burgett v. Safeco Nat'l Ins. Co., 2003 U.S. App. LEXIS 15134 (9th Cir. Mont. July 17 2003),* reprinted as amended at *73 Fed. Appx. 254, 2003 U.S. App. LEXIS 16957 (9th Cir. Mont. 2003).*

73. Punitive damages may be awarded where the nature of the wrong complained of and injury inflicted goes beyond merely violating the rights of another and is found to be willful and malicious. *Trifad Entm't , Inc.v. Anderson, 2001 MT 227, 306 Mont. 499, 36 P.3d 363, 2001 Mont. LEXIS 479 (2001).*

74. Punitive damages may be awarded only when the defendant has been found guilty of actual fraud or actual malice. *Onstad v. Payless Shoesource, 2000 MT 230, 301 Mont. 259, 9 P.3d 38, 2000 Mont. LEXIS 233, 57 Mont. St. Rep. 943, 16 I.E.R. Cas. (BNA) 1209 (2000).*

75. After reviewing a jury's award of punitive damages, the court must clearly state the reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award of the jury in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in *Mont. Code Ann. § 27-1-221.* The factors which the court must consider are: the nature and reprehensibility of the defendant's wrongdoing; the extent of the defendant's wrongdoing; the intent of the defendant in committing the wrong; the profitability of the defendant's wrongdoing, if applicable; the amount of actual damages awarded by the jury; the defendant's net worth; previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act; potential or prior criminal sanctions against the defendant based upon the same wrongful act; and any other circumstances that may operate to increase or reduce punitive damages without wholly defeating them. *Onstad v. Payless Shoesource, 2000 MT 230, 301 Mont. 259, 9 P.3d 38, 2000 Mont. LEXIS 233, 57 Mont. St. Rep. 943, 16 I.E.R. Cas. (BNA) 1209 (2000).*

76. Legislative safeguards listed in *Mont. Code Ann. § 27-1-221* ensures that an award of punitive damages is not greater than reasonably necessary to punish and deter. *Finstad v. W.R. Grace & Co.-Conn., 2000 MT 228, 301 Mont. 240, 8 P.3d 778, 2000 Mont. LEXIS 229, 57 Mont. St. Rep. 934 (2000).*

77. Under Montana law punitive damages serve two purposes: (1) to set an example, and (2) to punish the wrongdoer. *Mont. Code Ann. § 27-1-220(1). Finstad v. W.R. Grace & Co -Conn., 2000 MT 228, 301 Mont. 240, 8 P.3d 778, 2000 Mont. LEXIS 229, 57 Mont. St. Rep. 934 (2000).*

78. In a case where plaintiff alleged that defendants stole tires, the trial court erred by failing to address the issue of punitive damages under *Mont. Code Ann. § 27-1-221. Cen-Dak Leasing, Inc. v. Morris, 2000 MT 80N, 2000 Mont. LEXIS 69 (Mar. 23 2000).*

79. Insured was not entitled to punitive damages because the jury failed to make the prerequisite finding of actual fraud or actual malice. *Sandman v Farmers Ins. Exch., 1998 MT 286, 291 Mont. 456, 969 P.2d 277, 1998 Mont. LEXIS 278, 55 Mont. St. Rep. 1165 (1998).*

80. Insured was not entitled to punitive damages as a matter of law because the decision to award or not to award punitive damages is statutorily committed to the fact finder. *Sandman v. Farmers Ins. Exch., 1998 MT 286, 291 Mont. 456, 969 P.2d 277, 1998 Mont. LEXIS 278, 55 Mont. St. Rep. 1165 (1998).*

81. Preponderance of the evidence is necessary to establish the elements of fraud, while clear and convincing evidence is required to prove all elements for a claim of punitive damages. *Sandman v. Farmers Ins. Exch., 1998 MT 286, 291 Mont. 456, 969 P.2d 277, 1998 Mont. LEXIS 278, 55 Mont. St. Rep. 1165 (1998).*

82. The court is empowered to evaluate the amount of the award of punitive damages and to make findings of fact and conclusions of law as to its reasons for increasing, decreasing, or letting stand the amount of the punitive damages award. *Sandman v. Farmers Ins. Exch., 1998 MT 286, 291 Mont. 456, 969 P.2d 277, 1998 Mont. LEXIS 278, 55 Mont. St. Rep. 1165 (1998).*

83. Where the jury was properly instructed on the issue of punitive damages and made its decision after considering the evidence presented, the trial court considers whether to increase or decrease the award based on the following *Mont. Code Ann. § 27-1-221(7)(c)* factors: (i) the nature and reprehensibility of the defendant's wrongdoing; (ii) the extent of the defendant's wrongdoing; (iii) the intent of the defendant in committing the wrong; (iv) the profitability of the defendant's wrongdoing, if applicable; (v) the amount of actual damages awarded by the jury; (vi) the defendant's net worth; (vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act; (viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and (ix) any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages. *Rocky Mt. Enters. v. Pierce Flooring, 286 Mont. 282, 951 P.2d 1326, 1997 Mont. LEXIS 276, 54 Mont. St. Rep. 1410 (Mont. 1997).*

84. Pursuant to *Mont. Code Ann. § 27-1-221*, punitive damages are available where a defendant is found guilty of actual fraud or actual malice. Accordingly, for the issue of punitive damages to reach the jury, a party must present evidence of actual fraud or malice. *Mattingly v. First Bank, 285 Mont. 209, 947 P.2d 66, 1997 Mont. LEXIS 231, 54 Mont. St. Rep. 1116 (Mont. 1997).*

85. Punitive damage award, pursuant to *Mont. Code Ann. § 27-1-221*, in a fraud action upon an insurance policy was proper because it was supported by substantial credible evidence, which was clear and convincing. *Cartwright v. Equitable Life Assur. Soc'y of the United States, 276 Mont. 1, 914 P.2d 976, 1996 Mont. LEXIS 55, 53 Mont. St. Rep. 268 (Mont. 1996).*

86. District court abused the discretion granted by *Mont. Code Ann. 25-11-102(5)* to grant a new trial on the basis that the jury's verdict was given under the influence of passion or prejudice because it failed to consider the appreciation of the corporate tortfeasor's assets, as well as the corporation's policy of retaining profits when it determined the corporation's net worth and taxable income, as required by *Mont. Code Ann. § 27-1-221. Maurer v. Clausen Distrib. Co., 275 Mont. 229, 912 P.2d 195, 1996 Mont. LEXIS 19, 53 Mont. St. Rep. 78 (Mont. 1996).*

87. Although defendant's net worth was one of the factors *Mont. Code Ann. § 27-1-221(7)(a)* required to be considered in determining the appropriate punitive damage award, the plaintiff was not required to show proof that the defendant's net worth supported an award of damages; therefore, because defendant in a personal injury action did not produce evidence regarding his net worth, the award of punitive damages against him was not subject to vacation. *Maurer v. Clausen Distrib. Co., 275 Mont. 229, 912 P.2d 195, 1996 Mont. LEXIS 19, 53 Mont. St. Rep. 78 (Mont. 1996).*

88. Under *Mont. Code Ann. § 27-1-221(1)* and *Mont. Code Ann. § 27-1-221(5)*, punitive damages may be awarded when a defendant is found, by clear and convincing evidence, to be guilty of actual malice. In an action against a corporation to recover compensatory and punitive damages for injuries sustained by a minor when he rode his bicycle into a watering pipe, which was laid across a sidewalk by an employee of the corporation, the minor was not entitled to punitive damages because he did not produce any evidence to contradict the testimony of the employee, which showed that a sidewalk barricade was in place when he initially laid the pipe on the sidewalk and every time he moved the pipe thereafter. *Barnes by & Through Barnes v. United Indus., 275 Mont. 25, 909 P.2d 700, 1996 Mont. LEXIS 4, 53 Mont. St. Rep. 17 (Mont. 1996).*

89. In an action against a corporation, seeking compensatory and punitive damages for injuries sustained by a minor when he rode his bicycle into a watering pipe laid across a sidewalk by an employee of the corporation, although actual malice was alleged under *Mont. Code Ann. § 27-1-221(2)*, the minor was not entitled to punitive damages because he did not present a prima facie case, including clear and convincing evidence of all elements required under *Mont. Code Ann. § 27-1-221*. *Barnes by & Through Barnes v. United Indus., 275 Mont. 25, 909 P.2d 700, 1996 Mont. LEXIS 4, 53 Mont. St. Rep. 17 (Mont. 1996)*.

90. Pursuant to *Mont. Code Ann. § 27-1-221(5)*, all elements of the claim for punitive damages must be proved by clear and convincing evidence which is more than a preponderance of evidence but less than beyond a reasonable doubt. *King v. Zimmerman, 266 Mont. 54, 878 P.2d 895, 1994 Mont. LEXIS 155, 51 Mont. St. Rep. 659 (Mont. 1994)*.

91. Under *Mont. Code Ann. § 27-1-221(7)(c)*, a jury award of punitive damages must be reviewed by the district court judge. A district court judge, having heard the evidence and observed the witnesses, is in the best position to determine whether the requirements of proof of punitive damages have been met. *King v. Zimmerman, 266 Mont. 54, 878 P.2d 895, 1994 Mont. LEXIS 155, 51 Mont. St. Rep. 659 (Mont. 1994)*.

92. Trial court's order that granted summary judgment in favor of a chemical company and denied fish farmers an award of punitive damages against the chemical company in their negligence action brought under *Mont. Code Ann. § 27-1-221* against the chemical company that sought damages for the death of their fish, was reversed; a factual dispute existed regarding whether the chemical company represented to EPA that a warning label was not required when it knew otherwise, and whether the chemical company represented that it was safe to mix the herbicides and apply the mixture in the vicinity of fish cultures, when it knew otherwise. *Hagen v. Dow Chem. Co., 261 Mont. 487, 863 P.2d 413, 1993 Mont. LEXIS 360, 50 Mont. St. Rep. 1421, CCH Prod. Liab. Rep. P13804 (Mont. 1993)*.

93. In an action under the Montana Unfair Trade Practices Act, punitive damages may be assessed pursuant to *Mont. Code Ann. § 27-1-221* for a violation of subsections (1), (4), (5), (6), (9), or (13) of *Mont. Code Ann. § 33-18-242(4)*. *Dees v. Am. Nat'l Fire Ins. Co., 260 Mont. 431, 861 P.2d 141, 1993 Mont. LEXIS 268, 50 Mont. St. Rep. 1068 (Mont. 1993)*.

94. Under *Mont. Code Ann. § 27-1-221*, reasonable punitive damages may be awarded when a defendant has been found guilty of actual malice. *Dees v. Am. Nat'l Fire Ins. Co., 260 Mont. 431, 861 P.2d 141, 1993 Mont. LEXIS 268, 50 Mont. St. Rep. 1068 (Mont. 1993)*.

95. Prejudgment interest on damages is controlled by *Mont. Code Ann. § 27-1-211*, which provides that every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day. *Dees v. Am. Nat'l Fire Ins. Co., 260 Mont. 431, 861 P.2d 141, 1993 Mont. LEXIS 268, 50 Mont. St. Rep. 1068 (Mont. 1993)*.

96. *Mont. Code Ann. § 27-1-211* permits the jury, or the court, to consider any other circumstances that may operate to increase or reduce without wholly defeating punitive damages. *Dees v. Am. Nat'l Fire Ins. Co., 260 Mont. 431, 861 P.2d 141, 1993 Mont. LEXIS 268, 50 Mont. St. Rep. 1068 (Mont. 1993)*.

97. Where the son of an elderly decedent, who was also the personal representative of her estate, told his siblings that they would share equally in their mother's estate but refused to communicate any information to the siblings regarding the estate, did not disclose that he was a joint tenant of the decedent, with right of survivorship, with respect to most of the assets of the estate, and caused the assets held in joint tenancy with the decedent to be transferred to his name, a trial court finding of malice that was uncontested on appeal was a sufficient basis for awarding punitive damages against the son under *Mont. Code Ann. § 27-1-221*. *Flikkema v. Kimm, 255 Mont. 34, 839 P.2d 1293, 1992 Mont. LEXIS 277, 49 Mont. St. Rep. 880 (Mont. 1992)*.

98. Although a trial court found as a matter of law that the actions of defendant company in drawing on a letter of credit constituted a tortious breach of the obligation of good faith and fair dealing, as defined by *Mont. Code Ann. § 28-1-211*, in that the contract was "oppressive" and "malicious," which were terms used to characterize the type of conduct in which exemplary damages were allowed, *Mont. Code Ann. § 27-1-221*, under *Mont. Code Ann. § 27-1-220* exemplary damages were not allowed for a breach of contract unless otherwise expressly provided by statute. *Haines Pipeline*

*Constr. v. Mont. Power Co., 251 Mont. 422, 830 P.2d 1230, 1991 Mont. LEXIS 316 (Mont. 1991),* overruled by *Porter v. Galarneau, 275 Mont. 174, 911 P.2d 1143, 1996 Mont. LEXIS 23, 53 Mont. St. Rep. 99 (Mont. 1996).*

99. Where a special interrogatory required the jury to determine if a bank was liable for punitive damages, and the jury answered "yes" to that interrogatory, under *Mont. Code Ann. § 27-1-221,* the trial court should have held an immediate, separate proceeding for the determination of the amount of punitive damages. *First Sec. Bank v. Gary, 245 Mont. 394, 798 P.2d 523, 1990 Mont. LEXIS 277, 47 Mont. St. Rep. 1646 (Mont. 1990).*

100. *Mont. Code Ann. § 27-1-220,* which prohibited punitive damages arising from a contract, did not apply to bar an award of punitive damages for constructive fraud in connection with a contract for the sale of real property where the suit was filed prior to enactment of § *27-1-220,* because, under *Mont. Code Ann. § 27-1-221,* the statute in effect when the suit was filed, an underlying contract did not defeat a right to punitive damages for fraudulent conduct. *Lee v. Armstrong, 244 Mont. 289, 798 P.2d 84, 1990 Mont. LEXIS 232, 47 Mont. St. Rep. 1421 (Mont. 1990).*

101. District court did not err in denying a request for punitive damages because the judge was in the best position make a determination whether there was clear and convincing evidence that punitive damages were appropriate. *Maddux v. Bunch, 241 Mont. 61, 784 P.2d 936, 1990 Mont. LEXIS 13, 47 Mont. St. Rep. 82 (Mont. 1990).*

102. In an action by buyers for fraud and emotional distress against their broker, a broker's net worth was only one of the factors to be considered in reviewing an award of punitive damages under *Mont. Code Ann. § 27-1-221. Zugg v. Ramage, 239 Mont. 292, 779 P.2d 913, 1989 Mont. LEXIS 256 (Mont. 1989).*

103. Where a plaintiff seeking punitive damages under *Mont. Code Ann. § 27-1-221* for wrongful discharge failed to present clear and convincing evidence that she was discharged, the trial court did not err in ruling that the prima facie case, including clear and convincing evidence of all elements of her claim, was not presented as required under the statute, and it did not err in striking the claim for punitive damages. *Niles v. Big Sky Eyewear, 236 Mont. 455, 771 P.2d 114, 1989 Mont. LEXIS 76 (Mont. 1989),* overruled by *Sacco v. High Country Indep. Press, 271 Mont. 209, 896 P.2d 411, 1995 Mont. LEXIS 95, 52 Mont. St. Rep. 407, 10 I.E.R. Cas. (BNA) 1041 (Mont. 1995).*

104. Subcontractor presented sufficient evidence to present to a jury a claim for punitive damages where the evidence showed that the subcontractor needed a contract to avoid financial ruin and a bonding agent pressured the general contractor to award the bid to someone else. *Phillip R. Morrow, Inc. v. FBS Ins. Mont.-Hoiness Labar, Inc., 236 Mont. 394, 770 P.2d 859, 1989 Mont. LEXIS 69 (Mont. 1989).*

105. In the consumer's action against the merchant concerning a defective hearing aid under an installment contract, the trial court was required to conduct an evidentiary hearing and make findings of fact to support an award of punitive damages under statute. *Ward v. Vibrasonic Lab., 236 Mont. 314, 769 P.2d 1229, 1989 Mont. LEXIS 60 (Mont. 1989).*

106. *Mont. Code Ann. § 27-1-221* and *Mont. Code Ann. § 27-1-220* authorize an award of punitive damages where the defendant has been guilty of either actual or implied malice; liability for punitive damages must be determined by the trier of fact, whether judge or jury. *Cooper v. Rosston, 232 Mont. 186, 756 P.2d 1125, 1988 Mont. LEXIS 163, 45 Mont. St. Rep. 978 (Mont. 1988).*

107. It was error to strike plaintiff's claim for punitive damages because the evidence presented the jury with numerous questions of malicious, willful, wanton or reckless conduct by defendant, which might have warranted an award of punitive damages. *Cooper v. Rosston, 232 Mont. 186, 756 P.2d 1125, 1988 Mont. LEXIS 163, 45 Mont. St. Rep. 978 (Mont. 1988).*

108. Findings supported a district court's awards of compensatory damages pursuant to *Mont. Code Ann. § 27-1-317* and punitive damages pursuant to *Mont. Code Ann. § 27-1-220.* Findings as to the punitive damages met the requirements of *Mont. Code Ann. § 27-1-221(7)(b). Selvidge v. McBeen, 230 Mont. 237, 750 P.2d 429, 1988 Mont. LEXIS 26 (Mont. 1988).*

109. In a boundary dispute action, punitive damages were validly awarded because the testimony at trial indicated that the owners of one piece of property refused to negotiate the boundary dispute, and destroyed two fences. *Bollinger v. Hollingsworth, 227 Mont. 454, 739 P.2d 962, 1987 Mont. LEXIS 940, 44 Mont. St. Rep. 1228 (Mont. 1987).*

110. Employer's argument that it had no notice that its conduct would be subject to punitive damages had no merit where the punitive damage statute, *Mont. Code Ann. § 27-1-221,* was in effect at the time it committed the malicious and oppressive conduct against an employee. *Flanigan v. Prudential Fed. S&L Ass'n, 221 Mont. 419, 720 P.2d 257, 1986 Mont. LEXIS 906, 1 I.E.R. Cas. (BNA) 1410, 122 L.R.R.M. (BNA) 2597, 104 Lab. Cas. (CCH) P55589 (Mont. 1986).*

111. Trial court sitting as a fact finder was entitled to award punitive damages; the court held that an award of punitive damages was not limited solely to a jury. *Shors v. Branch, 221 Mont. 390, 720 P.2d 239, 1986 Mont. LEXIS 921 (Mont. 1986).*

112. Where, viewing the evidence in a light most favorable to plaintiff franchisees, a jury question was raised as to fraud, oppression, and malice on the part of defendant franchisor, the factual question of punitive damages, *Mont. Code Ann. § 27-1-221,* was properly submitted to the jury. *Dunfee v. Baskin-Robbins, Inc., 221 Mont. 447, 720 P.2d 1148, 1986 Mont. LEXIS 915 (Mont. 1986).*

113. Because, under Mont. R. Civ. P. 54(c), every final judgment had to grant the relief in whose favor it was rendered was entitled, where plaintiffs, purchasers of land, were awarded compensatory damages based on fraud and misrepresentation by defendant sellers, there was no error in an award of punitive damages to the purchasers pursuant to *Mont. Code Ann. § 27-1-221. Castillo v. Franks, 213 Mont. 232, 690 P.2d 425, 1984 Mont. LEXIS 1095 (Mont. 1984).*

114. Punitive damages are recoverable under *Mont. Code Ann. § 27-1-221* where malice, oppression, or fraud is shown. Malice is defined for these purposes as when a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, or reckless to which the law of Montana will allow imposition of punitive damages on the basis of presumed malice; oppression includes acts that constitute an abuse of power. *First Nat'l Bank v. Twombly, 213 Mont. 66, 689 P.2d 1226, 1984 Mont. LEXIS 1077, 39 U.C.C. Rep. Serv. (CBC) 1192 (Mont. 1984).*

115. Where the evidence was sufficient for the jury to find that a bank's acceleration of a promissory note was done with malice and the jury resolved the issues that would have formed the basis for an award of punitive damages under *Mont. Code Ann. § 27-1-221* in favor of the promisors, the trial court erred in refusing to submit the issue of punitive damages to the jury. *First Nat'l Bank v. Twombly, 213 Mont. 66, 689 P.2d 1226, 1984 Mont. LEXIS 1077, 39 U.C.C. Rep. Serv. (CBC) 1192 (Mont. 1984).*

116. Although, pursuant to *Mont. Code Ann. § 27-1-221,* malice, oppression, or fraud was necessary to establish a basis for punitive damages, malice on the part of an insurer was not a necessary component to impose liability upon the insurer for bad faith refusal to settle. *Gibson v. Western Fire Ins. Co., 210 Mont. 267, 682 P.2d 725, 1984 Mont. LEXIS 936, 57 A.L.R.4th 773 (Mont. 1984).*

117. Where, based on the testimony at trial, a jury could have found that a malpractice insurer was at least recklessly indifferent to the risk to which it was putting its insured in failing to settle an underlying tort case, consideration of punitive damages was a proper issue to submit to the jury and the Supreme Court of Montana found no reason to state, as a matter of law, that punitive damages should not have been awarded to the insured for the insurer's failure to settle. *Gibson v. Western Fire Ins. Co., 210 Mont. 267, 682 P.2d 725, 1984 Mont. LEXIS 936, 57 A.L.R.4th 773 (Mont. 1984).*

118. When a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, and/or reckless to which the law of Montana will allow imposition of punitive damages on the basis of presumed malice. First Bank (N.A.)-*Billings v. Transamerica Ins. Co., 209 Mont. 93, 679 P.2d 1217, 1984 Mont. LEXIS 869 (Mont. 1984).*

119. Where insurer sought to avoid punitive damages liability in wrongful repossession suits against an insured, on certified question from federal court, state supreme court ruled that state public policy did not bar insurance coverage of punitive damages. First Bank (N.A.)-*Billings v. Transamerica Ins. Co., 209 Mont. 93, 679 P.2d 1217, 1984 Mont. LEXIS 869 (Mont. 1984).*

120. In addition to the actual damages, juries may give damages for the sake of example and by way of punishment where they find that defendants have been guilty of oppression, fraud, or actual or presumed malice in tort actions. *Gee v. Egbert, 209 Mont. 1, 679 P.2d 1194, 1984 Mont. LEXIS 834 (Mont. 1984).*

121. Exemplary damages can be awarded permissibly in cases where there is no direct evidence of fraud or malice or gross negligence; they may be allowed where there is evidence of such recklessness and wanton disregard of another's rights that malice and evil intent will be inferred. *Gee v. Egbert, 209 Mont. 1, 679 P.2d 1194, 1984 Mont. LEXIS 834 (Mont. 1984).*

122. In an employee's wrongful discharge action against his employer for violations of the Discrimination in Employment Statutes, *Mont. Code Ann. § 49-4-101* and *Mont. Code Ann. § 49-4-102*, after he was fired from his job on an oil rig because he had only one arm, the employee was entitled to seek punitive damages because there was sufficient evidence to establish a genuine issue of reckless conduct by the employer which created a presumption of malice to support a claim for punitive damages under *Mont. Code Ann. § 27-1-221. Owens v. Parker Drilling Co., 207 Mont. 446, 676 P.2d 162, 1984 Mont. LEXIS 1151, 2 Am. Disabilities Cas. (BNA) 312, 44 Empl. Prac. Dec. (CCH) P37382 (Mont. 1984).*

123. Mere fact that the conduct on which a lawsuit is based is unlawful does not in and of itself authorize a recovery of punitive damages under *Mont. Code Ann. § 27-1-221*. Particular facts must be present which show actual or presumed malice unless the particular statute specifically proscribes conduct which is actually malicious. *Owens v. Parker Drilling Co., 207 Mont. 446, 676 P.2d 162, 1984 Mont. LEXIS 1151, 2 Am. Disabilities Cas. (BNA) 312, 44 Empl. Prac. Dec. (CCH) P37382 (Mont. 1984).*

124. Term "malice" under *Mont. Code Ann. § 27-1-221* does not necessarily mean that which must proceed from a spiteful, malignant, or revengeful disposition. When a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, or reckless to allow imposition of punitive damages on the basis of presumed malice. *Owens v. Parker Drilling Co., 207 Mont. 446, 676 P.2d 162, 1984 Mont. LEXIS 1151, 2 Am. Disabilities Cas. (BNA) 312, 44 Empl. Prac. Dec. (CCH) P37382 (Mont. 1984).*

125. Where a statute is designed to protect the substantial interests of a person from a high degree of risk and the statute is violated either intentionally or recklessly, a jury question of punitive damages pursuant to *Mont. Code Ann. § 27-1-221* is raised. *Owens v. Parker Drilling Co., 207 Mont. 446, 676 P.2d 162, 1984 Mont. LEXIS 1151, 2 Am. Disabilities Cas. (BNA) 312, 44 Empl. Prac. Dec. (CCH) P37382 (Mont. 1984).*

126. Violations of the Discrimination in Employment Statutes, *Mont. Code Ann. § 49-4-101* and *Mont. Code Ann. § 49-4-102*, warrant a claim for punitive damages under *Mont. Code Ann. § 27-1-221* if the violations are shown to have been intentional or reckless. *Owens v. Parker Drilling Co., 207 Mont. 446, 676 P.2d 162, 1984 Mont. LEXIS 1151, 2 Am. Disabilities Cas. (BNA) 312, 44 Empl. Prac. Dec. (CCH) P37382 (Mont. 1984).*

127. Given the provisions of *Mont. Code Ann. § 27-1-221* and that, on a motion for directed verdict, a trial judge had to view the evidence in a light most favorable to plaintiff injured worker, a district court erred in striking the worker's punitive damage claim. *Mydlarz v. Palmer/Duncan Constr. Co., 209 Mont. 325, 682 P.2d 695, 1984 Mont. LEXIS 890 (Mont. 1984).*

128. *Mont. Code Ann. § 27-1-221* allows punitive damages for fraud. Because *Mont. Code Ann. § 28-2-404* specifically defines fraud as including constructive fraud, the breach of a fiduciary relationship constituting a constructive fraud

forms the basis for an award of punitive damages. *Purcell v. Automatic Gas Distribs., 207 Mont. 223, 673 P.2d 1246, 1983 Mont. LEXIS 871 (Mont. 1983).*

129. If the conduct of a particular defendant is tortious, the fact that an underlying contract exists does not defeat an award of punitive damages. Fraud, if present in the record, constitutes a tort and provides a basis for an award of exemplary damages. *Purcell v. Automatic Gas Distribs., 207 Mont. 223, 673 P.2d 1246, 1983 Mont. LEXIS 871 (Mont. 1983).*

130. In a products liability action against a tire manufacturer, evidence that the manufacturer made illegal political contributions should not have been admitted under Mont. R. Evid. 402 on the issue of punitive damages under *Mont. Code Ann. § 27-1-221*, as plaintiff completely failed to connect the political contributions to a federal investigation of the multi-piece wheels, which exploded and caused plaintiff's injury. The evidence was extremely damaging and obviously inflammatory in nature and should have been admitted only upon proof showing its relevance to the action. *Kuiper v. Goodyear Tire & Rubber Co., 207 Mont. 37, 673 P.2d 1208, 1983 Mont. LEXIS 874 (Mont. 1983).*

131. Punitive damages may be assessed for breach of the obligation owed to deal fairly with an employee if the provisions of *Mont. Code Ann. § 27-1-221* are satisfied. *Gates v. Life of Montana Ins. Co., 205 Mont. 304, 668 P.2d 213, 1983 Mont. LEXIS 781, 115 L.R.R.M. (BNA) 4350, 98 Lab. Cas. (CCH) P55399 (Mont. 1983).*

132. *Mont. Code Ann. § 27-1-221* only exempts breach of contract actions from its provisions. Breach of the duty owed to deal fairly and in good faith in an employment relationship is a tort for which punitive damages can be recovered if an employer's conduct is sufficiently culpable. *Gates v. Life of Montana Ins. Co., 205 Mont. 304, 668 P.2d 213, 1983 Mont. LEXIS 781, 115 L.R.R.M. (BNA) 4350, 98 Lab. Cas. (CCH) P55399 (Mont. 1983).*

133. Where the evidence was sufficient to justify the jury in finding that an employer induced an employee to submit a letter of resignation by promising to give the employee a favorable letter of reference and in finding that the employer refused the employee's demand for the return of the letter of resignation, the employer's conduct was sufficient to form the basis for a jury finding of fraud, oppression, or malice that justified an award of punitive damages under *Mont. Code Ann. § 27-1-221. Gates v. Life of Montana Ins. Co., 205 Mont. 304, 668 P.2d 213, 1983 Mont. LEXIS 781, 115 L.R.R.M. (BNA) 4350, 98 Lab. Cas. (CCH) P55399 (Mont. 1983).*

134. Insurance companies have a duty to act in good faith with their insureds, that duty exists independent of insurance contracts and independent of statutes, and a breach that duty can be a basis for the award of punitive damages; any statements to the contrary in *First Security Bank v. Goddard, 181 Mont. 407, 593 P.2d 1040 (1979)*, or any other cases that appear to conflict with the good-faith rule are overruled. *Lipinski v. Title Ins. Co., 202 Mont. 1, 655 P.2d 970, 1982 Mont. LEXIS 1017 (Mont. 1982).*

135. To sustain an award of punitive damages against an objection that the evidence is insufficient, there must be substantial evidence in the record of oppression, fraud or malice, actual or presumed, toward the plaintiff, where the punitive damage award is given for the sake of example and by way of punishing the defendant, *Mont. Code Ann. § 27-1-221. Johnson v. Murray, 201 Mont. 495, 656 P.2d 170, 1982 Mont. LEXIS 1019 (Mont. 1982).*

136. Punitive or exemplary damages are allowed where the defendant is guilty of oppression, fraud, or malice, actual or presumed, for the sake of example and by way of punishing the defendant, *Mont. Code Ann. § 27-1-221*. Exemplary damages are used when the defendant clearly shows that he is deserving of such special treatment and punishment. *Miller v. Watkins, 200 Mont. 455, 653 P.2d 126, 1982 Mont. LEXIS 971 (Mont. 1982).*

137. Punitive damages under *Mont. Code Ann. § 27-1-221* were recoverable in a personal injury action brought against an intoxicated driver. *Allers v. Willis, 197 Mont. 499, 643 P.2d 592, 1982 Mont. LEXIS 775 (Mont. 1982).*

138. Award of punitive damages in favor of property owners in their suit against a drilling company for damages to their land was upheld because the drilling company was guilty under *Mont. Code Ann. § 27-1-221* of oppression or malice, actual or presumed. The drilling company's unauthorized activities produced a leak of water on the land of the owners that damaged a large amount of land. *Dahl v. Petroleum Geophysical Co., 194 Mont. 294, 632 P.2d 1136, 1981 Mont. LEXIS 813, 72 Oil & Gas Rep. 301 (Mont. 1981).*

139. Where a bank seized a cattle breeder's cows, which carried brands establishing prima facie ownership in someone other than the bank's debtor, and moved them 30 miles away, then adamantly refused to divulge the cows' location to the breeder when he sought to recover them, and finally returned his cows to a pasture with six unregistered bulls, there was sufficient evidence to raise an issue for the jury's consideration. justifying the submission of punitive damages to the jury under the "recklessness" standard *Mont. Code Ann. § 27-1-221. Graham v. Clarks Fork Nat'l Bank, 193 Mont. 282, 631 P.2d 718, 1981 Mont. LEXIS 782 (Mont. 1981).*

140. Malice in law was presumed, pursuant to *Mont. Code Ann. § 27-1-221*, in an action alleging assault because defendant landowner's use of force against persons who entered his property was unjustifiable given that he had given an easement to the telephone company and the men were doing work on behalf of the telephone company. *Magnuson v. Billmayer, 189 Mont. 458, 616 P.2d 368, 1980 Mont. LEXIS 831 (Mont. 1980).*

141. In a wrongful death action arising out of a collision between a train and the decedent's truck, the district court erred in excluding evidence that the railroad had used its position as an employer to exert pressure on its employee, who was also a town councilman, not to propose reducing the speed of the railroad's trains through town. *Runkle v. Burlington N., 188 Mont. 286, 613 P.2d 982, 1980 Mont. LEXIS 784 (Mont. 1980).*

142. Alleged tortfeasor's malice in the form of threatening to shoot a co-tenant, the co-tenant's subtenant, and any livestock on the land in which the co-tenant had a leasehold interest and in the form of removing an approach and a gate to the land entitled the co-tenant, pursuant to *Mont. Code Ann. § 27-1-221*, to punitive damages in the action in which she sought a recovery for the gate's removal. *Toeckes v. Baker, 188 Mont. 109, 611 P.2d 609, 1980 Mont. LEXIS 736 (Mont. 1980).*

143. Where neighbors, who had lost an action in which he sought an easement across a property owner's land and who had had prior confrontations with the owner, plowed a swath through the owner's wheat field that stripped the topsoil, an award of punitive damages under *Mont. Code Ann. § 27-1-221* that was 22 times the amount of the actual damages awarded was not excessive; the neighbors acted with malice because they acted with full knowledge of relevant pending litigation and gross disregard for the owner's rights and property, and the jury could have reasonably calculated that a smaller award would not have been sufficient because of the neighbors' wealth. *Butcher v. Petranek, 181 Mont. 358, 593 P 2d 743, 1979 Mont. LEXIS 799 (Mont. 1979).*

144. Distinctive definition of "actual fraud" under *Mont. Code Ann. § 27-1-221(3)* applies only to the consideration of punitive damages and does not define-or affect the definition of-the underlying tort. *Hallenberg v. General Mills Operations, Inc., 2006 MT 191, 333 Mont. 143, 141 P.3d 1216, 2006 Mont. LEXIS 384 (2006).*

145. Trial court's interpretation and application of *Mont. Code Ann. § 27-1-221* was erroneously influenced by case law relative to the definitions of fraud and constructive fraud for claims brought under *Mont. Code Ann. tit. 28*, and thus the court remanded for reconsideration of the farmer's punitive damage claim based on actual fraud as defined in § 27-1-221. *Hallenberg v. General Mills Operations, Inc., 2006 MT 191, 333 Mont. 143, 141 P.3d 1216, 2006 Mont. LEXIS 384 (2006).*

146. For purposes of Mont. R. Civ. P. 16, the portions of the pretrial order were sufficient to operate as a pleading of actual malice under *Mont. Code Ann. § 27-1-221(2)*; however, this finding was not fatal to the trial court's ultimate conclusion that the farmer failed to prove actual malice against the company, which acted under the presumption that no injury would have resulted in its misrepresentation to the farmer that the seed to be planted was the same seed the farmer originally delivered to the company for cleaning, as the company had no knowledge of facts nor intentionally disregarded facts that created a high probability of injury to the farmer. *Hallenberg v. General Mills Operations, Inc., 2006 MT 191, 333 Mont. 143, 141 P.3d 1216, 2006 Mont. LEXIS 384 (2006).*

147. Where a plaintiff seeking punitive damages under *Mont. Code Ann. § 27-1-221* for wrongful discharge failed to present clear and convincing evidence that she was discharged, the trial court did not err in ruling that the prima facie case, including clear and convincing evidence of all elements of her claim, was not presented as required under the statute, and it did not err in striking the claim for punitive damages. *Niles v. Big Sky Eyewear, 236 Mont. 455, 771 P.2d 114, 1989 Mont. LEXIS 76 (Mont. 1989),* overruled by *Sacco v. High Country Indep. Press, 271 Mont. 209, 896 P.2d 411, 1995 Mont. LEXIS 95, 52 Mont. St. Rep. 407, 10 I.E.R. Cas. (BNA) 1041 (Mont. 1995).*

148. Where a personal injury plaintiff sought punitive damages under *Mont. Code Ann. § 27-1-221* for injuries allegedly cause by defendant driver's willful and wanton misconduct in driving his vehicle at an excessive speed, evidence of the driver's prior guilty pleas to charges that he supplied liquor to minor was irrelevant because the oppression, fraud, or malice reflected by those pleas was not associated with the alleged act of reckless driving and did not tend to make any of the requisite factors for punitive damages more or less probable. *Derenberger v. Lutey, 207 Mont. 1, 674 P.2d 485, 1983 Mont. LEXIS 848 (Mont. 1983).*

149. Supreme Court of Montana concluded that the legislature did not intend the definition of "actual malice" in *Mont. Code Ann. § 27-1-221(2),* to apply to determine whether conduct qualifies as an exception to the exclusive remedy under the Workers' Compensation Act, *Mont. Code Ann. § 39-71-411.* The definition of "actual malice" set forth in *Mont. Code Ann. § 27-1-221(2),* was intended for purposes of punitive damages awards and is specifically not applicable to *Mont. Code Ann. § 39-71-411. Blythe v. Radiometer Am., 262 Mont. 464, 866 P.2d 218, 1993 Mont. LEXIS 419, 50 Mont. St. Rep. 1640 (Mont. 1993).*

150. In an action by an independent agent for actual damages for conversion of her commission and expense, a punitive damages award, following a finding that the agent's manager wrongfully converted the agent's commission checks, was proper because there was evidence of oppression, pursuant to *Mont. Code Ann. § 27-1-221. Lane v. Dunkle, 231 Mont. 365, 753 P.2d 321, 1988 Mont. LEXIS 120, 45 Mont. St. Rep. 686 (Mont. 1988).*

151. Where a bank seized a cattle breeder's cows, which carried brands establishing prima facie ownership in someone other than the bank's debtor, and moved them 30 miles away, then adamantly refused to divulge the cows' location to the breeder when he sought to recover them, and finally returned his cows to a pasture with six unregistered bulls, there was sufficient evidence to raise an issue for the jury's consideration. justifying the submission of punitive damages to the jury under the "recklessness" standard *Mont. Code Ann. § 27-1-221. Graham v. Clarks Fork Nat'l Bank, 193 Mont. 282, 631 P.2d 718, 1981 Mont. LEXIS 782 (Mont. 1981).*

152. Malice in law was presumed, pursuant to *Mont. Code Ann. § 27-1-221,* in an action alleging assault because defendant landowner's use of force against persons who entered his property was unjustifiable given that he had given an easement to the telephone company and the men were doing work on behalf of the telephone company. *Magnuson v. Billmayer, 189 Mont. 458, 616 P.2d 368, 1980 Mont. LEXIS 831 (Mont. 1980).*

153. Punitive damages may be awarded where the nature of the wrong complained of and injury inflicted goes beyond merely violating the rights of another and is found to be willful and malicious. *Trifad Entm't , Inc.v. Anderson, 2001 MT 227, 306 Mont. 499, 36 P.3d 363, 2001 Mont. LEXIS 479 (2001).*

154. Appropriate definition of "malice" for use in an earlier version of *Mont. Code Ann. § 39-71-413,* is found in *Mont. Code Ann. § 27-1-221(2),* a defendant is guilty of actual malice if defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: deliberately proceeds to act in conscious or

intentional disregard of the high probability of injury to the plaintiff; or deliberately proceeds to act with indifference to the high probability of injury to the plaintiff. *Sherner v. Conoco, Inc., 2000 MT 50, 298 Mont. 401, 995 P.2d 990, 2000 Mont. LEXIS 53, 57 Mont. St. Rep. 241, O.S.H. Dec. (CCH) P32040, 2000 O.S.H. Dec. (CCH) P32040 (2000)*, amended by *2000 MT 50A, 2000 Mont. LEXIS 78* (Mar. 30, 2000).

155. In a personal injury action it was determined that the term act was not defined in *Mont. Code Ann. § 27-1-221(2)* and had no technical definition. Therefore, if the word act could be construed according to its plain meaning; "act" is "the process of doing or performing something." *Sherner v. Conoco, Inc., 2000 MT 50, 298 Mont. 401, 995 P.2d 990, 2000 Mont. LEXIS 53, 57 Mont. St. Rep. 241, O.S.H. Dec. (CCH) P32040, 2000 O.S.H. Dec. (CCH) P32040 (2000)*, amended by *2000 MT 50A, 2000 Mont. LEXIS 78* (Mar. 30, 2000).

156. Trial court's order that granted summary judgment in favor of a chemical company and denied fish farmers an award of punitive damages against the chemical company in their negligence action brought under *Mont. Code Ann. § 27-1-221* against the chemical company that sought damages for the death of their fish, was reversed; a factual dispute existed regarding whether the chemical company represented to EPA that a warning label was not required when it knew otherwise, and whether the chemical company represented that it was safe to mix the herbicides and apply the mixture in the vicinity of fish cultures, when it knew otherwise. *Hagen v. Dow Chem. Co., 261 Mont. 487, 863 P.2d 413, 1993 Mont. LEXIS 360, 50 Mont. St. Rep. 1421, CCH Prod. Liab. Rep. P13804 (Mont. 1993)*.

157. Where one is grossly and wantonly reckless in exposing others to dangers, the law holds one to have intended the natural consequences of one's act and treats one as guilty of a willful wrong; malice in law is implied where one's conduct is unjustifiable. *Gee v. Egbert, 209 Mont. 1, 679 P.2d 1194, 1984 Mont. LEXIS 834 (Mont. 1984)*.

158. Where there was nothing in the testimony that indicated that any of defendants including the building contractor and the engineer could have acted to remedy the installation of the dumbwaiter based on knowledge or information that injuries such as plaintiff employee's might occur, there was no basis on which to imply malice or wantonness on the part of any of defendants; ergo, the employee whose arm was caught by a descending car of the dumbwaiter could not recover punitive damages. *Gee v. Egbert, 209 Mont. 1, 679 P.2d 1194, 1984 Mont. LEXIS 834 (Mont. 1984)*.

159. Award of punitive damages in favor of property owners in their suit against a drilling company for damages to their land was upheld because the drilling company was guilty under *Mont. Code Ann. § 27-1-221* of oppression or malice, actual or presumed. The drilling company's unauthorized activities produced a leak of water on the land of the owners that damaged a large amount of land. *Dahl v. Petroleum Geophysical Co., 194 Mont. 294, 632 P.2d 1136, 1981 Mont. LEXIS 813, 72 Oil & Gas Rep. 301 (Mont. 1981)*.

160. While the trial court determined that the property owners damaged the land owner's pump site by diverting the main channel of the river, the trial court did not award the land owner treble damages for trespass under *Mont. Code Ann. § 70-16-108*, because there was no evidence of wrongful injuries to, or removal of, timber, trees, or underwood upon the land owner's land, and the trial court award did not punitive damages, as not all of the elements of a claim for punitive damages were proved by clear and convincing evidence as required by *Mont. Code Ann. § 27-1-221*. *Street v. Zablotney, 2003 MT 15N, 2003 Mont. LEXIS 16 (Feb. 11 2003)*.

161. Alleged tortfeasor's malice in the form of threatening to shoot a co-tenant, the co-tenant's subtenant, and any livestock on the land in which the co-tenant had a leasehold interest and in the form of removing an approach and a gate to the land entitled the co-tenant, pursuant to *Mont. Code Ann. § 27-1-221*, to punitive damages in the action in which she sought a recovery for the gate's removal. *Toeckes v. Baker, 188 Mont. 109, 611 P.2d 609, 1980 Mont. LEXIS 736 (Mont. 1980)*.

162. Where neighbors, who had lost an action in which he sought an easement across a property owner's land and who had had prior confrontations with the owner, plowed a swath through the owner's wheat field that stripped the topsoil, an award of punitive damages under *Mont. Code Ann. § 27-1-221* that was 22 times the amount of the actual damages awarded was not excessive; the neighbors acted with malice because they acted with full knowledge of relevant pending litigation and gross disregard for the owner's rights and property, and the jury could have reasonably calculated that a smaller award would not have been sufficient because of the neighbors' wealth. *Butcher v. Petranek, 181 Mont. 358, 593 P.2d 743, 1979 Mont. LEXIS 799 (Mont. 1979).*

163. Punitive damages under *Mont. Code Ann. § 27-1-221* were recoverable in a personal injury action brought against an intoxicated driver. *Allers v. Willis, 197 Mont. 499, 643 P.2d 592, 1982 Mont. LEXIS 775 (Mont. 1982).*

164. Injured railway employee's state action against a railway under *Mont. Code Ann. § 27-1-221* and *Mont. Const. art. II, § 16* for post-injury claims mishandling was not preempted by the Federal Employers' Liability Act (FELA), *45 U.S.C.S. § 51* et seq., because FELA did not provide such a remedy. *Reidelbach v. Burlington Northern & Santa Fe Ry. Co , 2002 MT 289, 312 Mont. 498, 60 P.3d 418, 2002 Mont. LEXIS 563 (2002).*

165. In a wrongful death action arising out of a collision between a train and the decedent's truck, the district court erred in excluding evidence that the railroad had used its position as an employer to exert pressure on its employee, who was also a town councilman, not to propose reducing the speed of the railroad's trains through town. *Runkle v. Burlington N., 188 Mont. 286, 613 P.2d 982, 1980 Mont. LEXIS 784 (Mont. 1980).*

166. Injured railway employee's state action against a railway under *Mont. Code Ann. § 27-1-221* and *Mont. Const. art. II, § 16* for post-injury claims mishandling was not preempted by the Federal Employers' Liability Act (FELA), *45 U.S.C.S. § 51* et seq., because FELA did not provide such a remedy. *Reidelbach v. Burlington Northern & Santa Fe Ry. Co., 2002 MT 289, 312 Mont. 498, 60 P.3d 418, 2002 Mont. LEXIS 563 (2002).*

167. Trial court properly granted summary judgment to an employer and a fellow employee in an injured employee's action against them, alleging that they were within the intentional act exception to the Workers' Compensation Act immunity from suit, pursuant to *Mont. Code Ann. § 39-71-413*, where the fellow employee had loaded roof trusses onto a truck for delivery and in attempting to support the extra-long load, the weight shifted and fell on the injured employee; the court found that the threshold showing of malice under *Mont. Code Ann. § 27-1-221* was not met, as there was no evidence that they were aware that their actions would create a high probability of injury to the injured employee. *Olszewski v. BMC W. Corp., 2004 MT 187, 322 Mont. 192, 94 P.3d 739, 2004 Mont. LEXIS 349 (2004).*

168. Summary judgment for a mining company was proper in a wrongful death suit brought by decedent's personal representative, as there were no facts that showed that a co-worker, who operated a locomotive in a mine, acted with actual malice when he caused decedent's death. *Blain v  Stillwater Mining Co., 2004 MT 141, 321 Mont. 403, 92 P.3d 4, 2004 Mont. LEXIS 223 (2004).*

169. Summary judgment for a mining company was proper in a wrongful death suit brought by decedent's personal representative, as there were no facts that showed that a co-worker, who operated a locomotive in a mine, acted with actual malice when he caused decedent's death. *Blain v. Stillwater Mining Co., 2004 MT 141, 321 Mont. 403, 92 P.3d 4, 2004 Mont. LEXIS 223 (2004).*

170. Summary judgment in a personal injury action in favor of an employer was reversed where the plain language of an earlier version of *Mont. Code Ann. § 39-71-413*, and the definition of actual malice found in *Mont. Code Ann. § 27-1-221(2)*, made it clear that an exception to the exclusive remedy rule applied to causes of action against an employer who intentionally and maliciously injured an employee. *Sherner v. Conoco, Inc., 2000 MT 50, 298 Mont. 401, 995 P.2d 990, 2000 Mont. LEXIS 53, 57 Mont. St. Rep. 241, O.S.H. Dec. (CCH) P32040, 2000 O.S.H. Dec. (CCH) P32040 (2000)*, amended by *2000 MT 50A, 2000 Mont. LEXIS 78* (Mar. 30, 2000).

## LAW REVIEWS

1. *60 Mont. L. Rev. 367*, ARTICLE: BMW OF NORTH AMERICA, INC. v. GORE: A TRIAL JUDGE'S GUIDE TO JURY INSTRUCTIONS AND JUDICIAL REVIEW OF PUNITIVE DAMAGE AWARDS.

2. *66 Mont. L. Rev. 329*, ARTICLE: RESOLVING EMPLOYEE DISCHARGE DISPUTES UNDER THE MONTANA WRONGFUL DISCHARGE ACT (MWDA), DISCHARGE CLAIMS ARISING APART FROM THE MWDA, AND PRACTICE AND PROCEDURE ISSUES IN THE CONTEXT OF A DISCHARGE CASE.

LEXSTAT MONT. CODE ANNO., § 27-2-211

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH JANUARY 3, 2007 ***

TITLE 27  CIVIL LIABILITY, REMEDIES, AND LIMITATIONS
CHAPTER 2  STATUTES OF LIMITATIONS
PART 2  TIME LIMITS ON SPECIFIC KINDS OF ACTIONS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 27-2-211 (2005)*

27-2-211  Actions to enforce penalty or forfeiture or other statutory liability.

(1) Within 2 years is the period prescribed for the commencement of an action upon:

(a) a statute for a penalty or forfeiture when the action is given to an individual or to an individual and the state, except when the statute imposing it prescribes a different limitation;

(b) a statute or an undertaking in a criminal action for a forfeiture or penalty to the state;

(c) a liability created by statute other than:

(i) a penalty or forfeiture; or

(ii) a statutory debt created by the payment of public assistance.

(2) The period prescribed for the commencement of an action by a municipal corporation for the violation of any city or town ordinance is within 1 year.

(3) Notwithstanding any other provision of this chapter, actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed or to enforce a liability created by law must be brought within 3 years after the discovery by the aggrieved party of the facts upon which the penalty of forfeiture attached or the liability was created.

(4) Unless fraud is involved or unless a support obligation has been entered, an action to enforce a statutory debt created by the payment of public assistance must be brought within 5 years from the date the debt arises. If fraud is involved, an action must be brought within 5 years of the discovery of the fraud. If a support obligation has been entered, an action must be brought within 10 years of the termination of the support obligation or within 10 years from entry of a lump-sum judgment or order for support arrears, whichever is later.

**HISTORY:** Ap. p. Sec. 515, C. Civ. Proc. 1895; re-en. Sec. 6448, Rev. C. 1907; re-en. Sec. 9032, R.C.M. 1921; Cal. C. Civ. Proc. Sec. 340; re-en. Sec. 9032, R.C.M. 1935; Sec. 93-2606, R.C.M. 1947; Ap. p. Sec. 1, p. 50, L. 1893; re-en. Sec. 524, C. Civ. Proc. 1895; amd. Sec. 1, Ch. 128, L. 1903; re-en. Sec. 6449, Rev. C. 1907; amd. Sec. 1, Ch. 47, L. 1917; amd. Sec. 1, Ch. 172, L. 1921; re-en. Sec. 9033, R.C.M. 1921; Cal. C. Civ. Proc. Sec. 338; re-en. Sec. 9033, R.C.M. 1935; amd. Sec. 1, Ch. 423, L. 1975; Sec. 93-2607, R.C.M. 1947; Ap. p. Sec. 516, C. Civ. Proc. 1895; amd. Sec. 1, p. 144, L. 1899; re-en. Sec. 6450, Rev. C. 1907; amd. Sec. 2, Ch. 47, L. 1917; re-en. Sec. 9034, R.C.M. 1921; Cal. C. Civ. Proc. Sec. 340; re-en. Sec. 9034, R.C.M. 1935; Sec. 93-2608, R.C.M. 1947; Ap. p. Sec. 554, C. Civ. Proc. 1895; re-en. Sec. 6471, Rev. C. 1907; re-en. Sec. 9061, R.C.M. 1921; Cal. C. Civ. Proc. Sec. 359; re-en. Sec. 9061, R.C.M. 1935; Sec. 93-2715, R.C.M. 1947; Ap. p. Sec. 510, C. Civ. Proc. 1895; re-en. Sec. 6443, Rev. C. 1907; re-en. Sec. 9027, R.C.M. 1921; Cal. C. Civ. Proc. Sec. 335; re-en. Sec. 9027, R.C.M. 1935; Sec. 93-2601, R.C.M. 1947; R.C.M. 1947, 93-2601(part), 93-2606(1), (2), 93-2607(1), 93-2608(part), 93-2715; amd. Sec. 18, Ch. 12, L. 1979; amd. Sec. 1, Ch. 190, L. 1981; amd. Sec. 6, Ch. 631, L. 1993;  amd. Sec. 6, Ch. 60, L. 1995.

Mont. Code Anno., § 27-2-211

**NOTES:**

Compiler's Comments

*1995 Amendment:* Chapter 60 in (4), at end of third sentence, inserted "or within 10 years from entry of a lump-sum judgment or order for support arrears, whichever is later".

*Severability:* Section 18, Ch. 60, L. 1995, was a severability clause.

*1993 Amendment:* Chapter 631 near beginning of first sentence of (4), after "involved", inserted "or unless a support obligation has been entered" and inserted third sentence that read: "If a support obligation has been entered, an action must be brought within 10 years of the termination of the support obligation."

*Preamble:* The preamble attached to Ch. 631, L. 1993, provided: "WHEREAS, it is necessary to draft a composite bill containing unrelated sections in order to present the proposed program improvements in a single, comprehensive bill that promotes the needs of legislative energy, efficiency, and economy by limiting the number of possible bills and by reducing the need for hearings and readings on those bills.

THEREFORE, the Legislature finds it appropriate to enact the following legislation."

*Severability:* Section 29, Ch. 631, L. 1993, was a severability clause.

*1981 Amendment:* Inserted (1)(c)(ii) relating to statutory debt created by payment of public assistance; and inserted (4) relating to statute of limitations to enforce statutory debt created by payment of public assistance.

Chapter Case Notes

*Statute of Limitations Applicable to FELA Actions -- Statute Tolled by Employer Misrepresentations:* A 3-year statute of limitations applies to actions brought under the Federal Employers' Liability Act (FELA), *45 U.S.C. 51* through 60. However, plaintiff is entitled to have the cause tried on the merits, even if the suit was not filed within the statutory limit, if misrepresentations made by the employer justifiably misled plaintiff into not filing a timely action. A FELA defendant may be estopped from raising the statute of limitations for equitable reasons even if the misrepresentations upon which the employee relied were unintentional. In this case, Bevacqua was examined by independent physicians, acting as agents for the railroad, who misrepresented Bevacqua's injuries. Because those misrepresentations misled Bevacqua into not filing suit within 3 years, he was entitled to have his cause tried on the merits. *Bevacqua v. Union Pac. RR Co., 1998 MT 120, 289 M 36, 960 P2d 273, 55 St. Rep. 469 (1998),* citing numerous federal cases giving a liberal construction to FELA in favor of injured railroad workers.

*Tolling of Statute of Limitations by Second Action Filed Before Dismissal of First Action -- Refiled First Action Allowed if Second Action Still Pending:* If a first action tolls a statute of limitations and a second (allowable) action is filed before a different forum before the first action is dismissed, the second action continues to toll the statute of limitations. If the first action is then refiled while the second action is pending, it is filed while the statute is tolled and is not barred by the statute of limitations. Webb v. *T.D., 275 M 243, 912 P2d 202, 53 St. Rep. 117 (1996).*

*Tolling of Statute of Repose by Chiropractic Legal Panel Proceeding Filed Before Dismissal of Court Action -- Filing of Second Court Action After Panel Decision Not Barred:* A medical malpractice complaint filed in District Court on April 16, 1992, tolled the statute of repose pursuant to *27-2-205.* On August 2, 1993, an application was timely filed with the Montana Chiropractic Legal Panel. Voluntary dismissal of the District Court complaint without prejudice on August 3, 1993, did not nullify the complaint's tolling of the statute of limitations because under *27-12-701,* the filing of the Panel application also tolled the statute. The Montana Chiropractic Legal Panel Act continued to toll the statute while the application under it was pending, and because the second District Court complaint was timely filed under the Act within 30 days after the Panel's decision, the second complaint was not barred by the statute of repose. Webb v. *T.D., 275 M 243, 912 P2d 202, 53 St. Rep. 117 (1996).*

*When Statute of Limitations or of Repose Tolled:* A statute of limitations or a statute of repose is tolled by the commencement of an action, and an action is commenced when a complaint is filed. Webb v. *T.D., 275 M 243, 912 P2d 202, 53 St. Rep. 117 (1996).*

*Architectural Malpractice -- Applicability of Continuing Relationship Doctrine:* An architect was hired to design and oversee the building of a hospital. Shortly after completion in 1975, problems developed with the heating, air conditioning, and ventilating systems. The hospital contacted the architect about remedies for the problems, seeking and continuing to rely on his advice until 1979, when the parties' relationship ended. The hospital filed suit in 1981, which the architect contended was beyond the statute of limitations that normally would begin running upon substantial completion of the facility in 1975. *Distinguishing Schneider v. Leaphart, 228 M 483, 743 P2d 613 (1987)*, the Supreme Court applied the continuing relationship doctrine because no specific statute of limitations governed the tort of architectural malpractice and because "accrual" was not statutorily defined at the time of the acts giving rise to the action. The continuing relationship doctrine may be used when, during the course of an ongoing, developing, and dependent relationship between a professional and a client, the professional commits a tortious act that injures the client. The doctrine suspends the accrual of the cause of action in order to give the professional an opportunity to remedy, avoid, or establish that there was no error or attempt to mitigate damages. The cause of action does not accrue until either the professional relationship ends or, if a general professional relationship continues between the parties, the professional ceases to treat or advise the client for the particular act causing the injury. Therefore, the statute of limitations in this case was suspended until the professional relationship ended in 1979 and the hospital's complaint in 1981 was filed well within the general 3-year tort statute of limitations. *N. Mont. Hosp. v. Knight, 248 M 310, 811 P2d 1276, 48 St. Rep. 444 (1991)*.

*Requirements of "Equitable Tolling" -- Doctrine Not Recognized:* Plaintiff relied on out-of-state decisions to present the proposition that, in instances when an injured person has several legal remedies and reasonably and in good faith pursues one, the statute of limitations will not be available as a defense where equitable principles justify tolling of the statute. Requirements of the doctrine, known as "equitable tolling", were outlined in *Collier v. Pasadena, 191 Cal. Rep. 681 (Cal. App. 1983)*: (1) timely notice to the defendant (within the applicable statute of limitations) in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiff in filing the second claim. The Supreme Court determined that in the present case the notice requirement was not met; therefore, the court did not address arguments with regard to the remaining two elements or recognize the doctrine of equitable tolling in *Montana. Erickson v. Croft, 233 M 146, 760 P2d 706, 45 St. Rep. 1379 (1988)*, but see *Harrison v. Chance, 244 M 215, 797 P2d 200, 47 St. Rep. 1539 (1990)*, in which the Supreme Court expressed an apparent willingness to apply the doctrine when the requirements set out in Erickson appeared to be met. See also *Sorenson v. Massey-Ferguson, Inc., 279 M 527, 927 P2d 1030, 53 St. Rep. 1269 (1996)*, in which the Supreme Court applied the criteria and determined that plaintiff's self-help pursuit of his rights under a warranted purchase of a combine was not a legal remedy available for purposes of equitable tolling because plaintiff was required to pursue the warranty rights within the context of time limitations imposed for filing legal claims.

*No Judicial Discretion to Alter Statute of Limitations:* Plaintiffs' complaint was dismissed because it was not timely filed, missing the statute of limitations by 1 day. Plaintiffs moved for relief under Rule 60(b), M.R.Civ.P., because of mistake, inadvertence, surprise, or excusable neglect. The statute of limitations does not discriminate between a just and unjust claim. The statute represents legislative and public policy controlling the rights of potential litigants. A trial court does not have judicial discretion to alter, change, or lessen statutory limits for commencement of actions. *Schaffer v. Champion Home Builders Co., 229 M 533, 747 P2d 872, 44 St. Rep. 2196 (1987)*.

*Applicable Statute of Limitations Governed by Basis of Claim:* Rule 54(c), M.R.Civ.P. (Title 25, ch. 20), provides that a party must be granted any relief to which he is entitled even though he may not have demanded the relief in his pleadings. Thus, under Rule 8, M.R.Civ.P. (Title 25, ch. 20), it is not necessary to set out the legal theory under which the claim is based. However, the Statute of Limitations applicable must necessarily be in conformity with the basis of the action. *Castillo v. Franks, 213 M 232, 690 P2d 425, 41 St. Rep. 2071 (1984)*.

*Laches:* The Supreme Court held in *Castillo v. Kunnemann, 197 M 190, 642 P2d 1019 (1982)*, that Kunnemann, the original owner of a 160-acre parcel of land, had reserved certain water and ditch rights when he conveyed the land to Franks, and that Franks, therefore, had not conveyed any of these water rights to the Castillos and the Cotants when they each purchased subdivided portions of the original parcel from Franks. Following the Supreme Court's decision, the Cotants and Castillos sued Franks for breach of contract, fraud, and in the case of the Cotants, for breach of warranty. Franks asserted that these actions were barred by laches. On appeal of this second case, the Supreme Court rejected Franks' argument for the following reasons: (1) plaintiffs had acted reasonably promptly in suing Kunnemann for the rights that Franks contended had been conveyed to them; (2) plaintiffs filed this action 3 1/2 months after the Supreme Court rejected their claim against Kunnemann; and (3) plaintiffs' demands are not stale. They have not been lax in enforcing their rights, and they have not acquiesced in the loss of denial of their rights. *Castillo v. Franks, 213 M 232, 690 P2d 425, 41 St. Rep. 2071 (1984)*.

*Raising for First Time on Appeal Disallowed:*  Statute of Limitations defense was an affirmative defense and could not be raised in Supreme Court when it was not raised in *District Court. Taylor v. Dept. of Fish, Wildlife, & Parks, 205 M 85, 666 P2d 1228, 40 St. Rep. 1112 (1983).*

*Products Liability -- Statute of Limitations -- Fraudulent Concealment Test Adopted:*  Plaintiff was injured in May 1975, when his holstered Ruger revolver discharged into his leg as he crawled under some brush. He filed this products liability action in September 1979. Ruger moved for summary judgment based upon the Statute of Limitations. The statutory period for tort action in Montana is 3 years. The Statute begins to run from the time the right of action accrues and not from the time when the plaintiff who was ignorant before comes to knowledge of his rights. Plaintiff contended the Statute tolled due to Ruger's fraudulent concealment of the defective nature of the revolver. The Supreme Court has never considered fraudulent concealment in a products liability case but has considered it in malpractice actions, which could apply here. To toll the Statute, the fraud must be of such a character as to prevent inquiry, elude investigation, or to mislead the party who claims the cause of action. There first must be injury and then concealment. It is the cause of action which must be fraudulently concealed by failing to disclose the fact of injury. Application of this test to this case establishes no fraudulent concealment. There must be some affirmative act of the defendant calculated to obscure the existence of the cause action. *Much v. Sturm, Ruger & Co., Inc., 502 F. Supp. 743, 37 St. Rep. 2116 (D.C. Mont. 1980).*

*Object of Statute of Limitations:*  A true Statute of Limitations establishes a time period within which suit must be brought. Its object is to suppress stale and fraudulent claims after the facts concerning them have become obscure from lapse of time, defective memory, or death or removal of witnesses. *Nelson v. Twin Bridges High School, 181 M 318, 593 P2d 722 (1979).*

Part Case Notes

*Architectural Malpractice -- Applicability of Continuing Relationship Doctrine:*  An architect was hired to design and oversee the building of a hospital. Shortly after completion in 1975, problems developed with the heating, air conditioning, and ventilating systems. The hospital contacted the architect about remedies for the problems, seeking and continuing to rely on his advice until 1979, when the parties' relationship ended. The hospital filed suit in 1981, which the architect contended was beyond the statute of limitations that normally would begin running upon substantial completion of the facility in 1975. *Distinguishing Schneider v. Leaphart, 228 M 483, 743 P2d 613 (1987),* the Supreme Court applied the continuing relationship doctrine because no specific statute of limitations governed the tort of architectural malpractice and because "accrual" was not statutorily defined at the time of the acts giving rise to the action. The continuing relationship doctrine may be used when, during the course of an ongoing, developing, and dependent relationship between a professional and a client, the professional commits a tortious act that injures the client. The doctrine suspends the accrual of the cause of action in order to give the professional an opportunity to remedy, avoid, or establish that there was no error or attempt to mitigate damages. The cause of action does not accrue until either the professional relationship ends or, if a general professional relationship continues between the parties, the professional ceases to treat or advise the client for the particular act causing the injury. Therefore, the statute of limitations in this case was suspended until the professional relationship ended in 1979 and the hospital's complaint in 1981 was filed well within the general 3-year tort statute of limitations. *N. Mont. Hosp. v. Knight, 248 M 310, 811 P2d 1276, 48 St. Rep. 444 (1991).*

*Requirements of "Equitable Tolling" -- Doctrine Not Recognized:*  Plaintiff relied on out-of-state decisions to present the proposition that, in instances when an injured person has several legal remedies and reasonably and in good faith pursues one, the statute of limitations will not be available as a defense where equitable principles justify tolling of the statute. Requirements of the doctrine, known as "equitable tolling", were outlined in *Collier v. Pasadena, 191 Cal. Rep. 681 (Cal. App. 1983):* (1) timely notice to the defendant (within the applicable statute of limitations) in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiff in filing the second claim. The Supreme Court determined that in the present case the notice requirement was not met; therefore, the court did not address arguments with regard to the remaining two elements or recognize the doctrine of equitable tolling in *Montana. Erickson v. Croft, 233 M 146, 760 P2d 706, 45 St. Rep. 1379 (1988),* but see *Harrison v. Chance, 244 M 215, 797 P2d 200, 47 St. Rep. 1539 (1990),* in which the Supreme Court expressed an apparent willingness to apply the doctrine when the requirements set out in Erickson appeared to be met.

*Relation Back of Amendment to Substitute True Name:*  When a complaint sets forth a cause of action against a defendant designated by a fictitious name under *25-5-103* and his true name is thereafter discovered and substituted by amendment, the fictitiously named defendant is considered a party to the action from its commencement, so that the

Statute of Limitations stops running as to the fictitiously named defendant on the date the original complaint is filed. *Sooy v. Petrolane Steel Gas, Inc., 218 M 418, 708 P2d 1014, 42 St. Rep. 1702 (1985).*

*Applicable Statute of Limitations Governed by Basis of Claim:* Rule 54(c), M.R.Civ.P. (Title 25, ch. 20), provides that a party must be granted any relief to which he is entitled even though he may not have demanded the relief in his pleadings. Thus, under Rule 8, M.R.Civ.P. (Title 25, ch. 20), it is not necessary to set out the legal theory under which the claim is based. However, the Statute of Limitations applicable must necessarily be in conformity with the basis of the action. *Castillo v. Franks, 213 M 232, 690 P2d 425, 41 St. Rep. 2071 (1984).*

Case Notes

*Statutory Cause of Action for Railroad Mismanagement -- Complaint Dismissed for Failure to Meet Statute of Limitations for Filing Statutory Claim:* Haux's employment with defendant was terminated December 27, 1999, and Haux filed a complaint on October 10, 2002, asserting that the termination was negligent and malicious and part of defendant's general business practice of firing employees without cause, constituting mismanagement. The District Court found that *39-2-703* does not create a cause of action for mismanagement and granted defendant's motion for summary dismissal, and Haux appealed. The Supreme Court held that a plain reading of *39-2-703* does in fact create a cause of action for mismanagement, so the District Court erred in dismissing the action on those grounds. However, dismissal was still proper because Haux's action for mismanagement was barred when Haux failed to meet the 2-year statute of limitations for filing the statutory claim. Thus, dismissal was affirmed because the right result was reached for the wrong reason. *Haux v. Mont. Rail Link, Inc., 2004 MT 233, 322 M 456, 97 P3d 540 (2004),* following *Winslow v. Mont. Rail Link, Inc., 2000 MT 292, 302 M 289, 16 P3d 992 (2000),* and distinguishing *Dillon v. Great N. Ry., 38 M 485, 100 P 960 (1909), Johnson v. Butte & Superior Copper Co., 41 M 158, 108 P 1057 (1910), Beeler v. Butte & London Copper Dev. Co., 41 M 465, 110 P 528 (1910),* and *Melzner v. Raven Copper Co., 47 M 351, 132 P 552 (1913).*

*Claims Under Unfair Trade Practices Act Subject to Statute of Limitations on Actions for Constructive Fraud:* As a liability created by statute that is neither a penalty nor a statutory debt, claims brought under the Montana Unfair Trade Practices and Consumer Protection Act of 1973 are subject to the 2-year statute of limitations in this section. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003),* following *Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 M 508, 11 P3d 105 (2000).*

*Exercise of Ordinary Diligence Required in Discovery of Unfair Trade Practices Constituting Fraud for Tolling Statute of Limitations:* For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, ordinary diligence must be exercised by the aggrieved party in discovery of the facts constituting the fraud or deceptive practice. Pursuant to *Johnson v. Barrett, 1999 MT 176, 295 M 254, 983 P2d 925 (1999),* the test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to the plaintiff's investigation. Mere ignorance of the facts will not suffice to toll the statute of limitations. In this case, plaintiff filed an unfair trade practices complaint about 2 years and 9 months after entering an agreement with defendant siding installer, believing at the time that the contract was with the defendant company that manufactured the siding. However, plaintiff showed no affirmative conduct by either defendant that was calculated to obscure the existence of a cause of action, nor were the facts giving rise to the alleged fraud concealed. Thus, plaintiff discovered or should have discovered the facts constituting the alleged fraud when the contract was entered more than 2 years prior to filing suit, so the claim was barred by the 2-year statute of limitations in this section. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003).*

*Statute of Limitations Applicable to Workers' Compensation Subrogation Right Created by Statute -- Subrogation Agreement Not Created by Correspondence Between Attorneys for Claimant and Insurer:* Roadarmel suffered an industrial injury and filed a workers' compensation claim against his employer, and the claim was defended by Royal Insurance Company (Royal). Roadarmel received a judgment and then filed a third-party action against two companies that had supplied the chemicals that injured him. Roadarmel's attorney, White, properly notified Royal that the third-party action was being commenced. Pursuant to *39-71-414,* Roadarmel requested that Royal pay a portion of the costs, and Royal agreed to participate in the costs rather than waive its subrogation rights, tendering a check for $ 5,000 toward the costs. Roadarmel was successful in the third-party action, and White advised Royal that the third parties would appeal. The appeal was upheld, and White notified Royal of that fact, attaching copies of the settlement check and jury verdict forms, a breakdown of the actual costs of the third-party action, and a request that Royal determine its subrogation interest in a portion of the third-party proceeds. Royal independently computed the amount that it contended that it was owed and advised Roadarmel in letters that an action would be filed to determine Royal's subrogation interests. White did not respond to the letters, and 3 1/2 years passed before Royal filed a petition to determine its subrogation

rights. Royal later learned through discovery that White had disbursed the third-party proceeds on the same day that Royal had been requested to determine its subrogation interest, allegedly instructing Roadarmel to hold the funds pending a subrogation determination. Royal then also filed a separate count against White for an alleged breach of the duty of trust owed Royal as a third-party beneficiary of the trust imposed on the third-party proceeds. The Workers' Compensation Court determined that a subrogation agreement had been formed in the exchange of letters between White and Royal's counsel, that the statute of limitations on the contract had not expired, and that Roadarmel and White were jointly and severally liable for $ 63,864.79 for breaching the subrogation contract and failing to honor Royal's first lien of the third-party judgment. Roadarmel and White appealed, contending that Royal's subrogation action was based on a statutory liability that was time-barred by the 2-year statute of limitations in this section and that the 3-year statute of limitations in *72-34-511*, which governs actions based on an alleged breach of trust, also barred Royal's action against White. Royal argued that the correspondence between the parties formed an enforceable contract that was subject to the longer statute of limitations in *27-2-202*. The Supreme Court agreed with Roadarmel and White. The correspondence only confirmed in writing that which was required by and took place entirely in the context of the mandatory statutory procedures and did not create an enforceable contract. Although the court recognized the rights of equitable subrogation at common law, those rights were conceptually distinguished from an insurer's first lien against third-party proceeds recovered by an injured employee, which constitutes a statutory liability amounting to an unqualified right of reimbursement not found at common law. As set out in *St. Paul Fire & Marine Ins. Co. v. Glassing, 269 M 76, 887 P2d 218 (1994)*, the concept of subrogation merely gives the insurer the right to prosecute the cause of action that the insurer possessed, so the insurer's claim by subrogation, being purely derivative, is subject to the same statute of limitations as though the cause of action were sued upon by the insured. The statutory right to reimbursement or recoupment is distinguishable from the insurer's right of subrogation proper. Thus, Royal's claim against Roadarmel, being based on a liability created by statute, was time-barred under subsection (1)(c) of this section. Further, Royal's breach of trust claim against White was time-barred by *72-34-511*. Because Royal's statutory lien was extinguished as a matter of law 2 years after Royal received notice that the third-party action was settled, by the time that the statute of limitations on White's actions began to run, even if that time was determined to be the date on which he disbursed the third-party funds, he could no longer be characterized as a trustee, constructive or otherwise, of the third-party proceeds. The case was reversed and remanded for summary judgment in favor of *Roadarmel and White. Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 M 508, 11 P3d 105, 57 St. Rep. 1080 (2000)*.

    *Action by Minority Stockholder Against Majority Stockholder -- Three-Year Statute of Limitations Applicable:* A complaint by a minority stockholder against a majority stockholder is subject to the 3-year statute of limitations in subsection (3) of this section. Hansen v. 75 Ranch Co., 1998 *MT 77, 288 M 310, 957 P2d 32, 55 St. Rep. 322 (1998)*.

    *Section Not Appropriate Limitations Period for Civil Suit Under Federal Individuals With Disabilities Education Act:* In a suit under the federal Individuals With Disabilities Education Act, because the Act does not specify a limitations period, the courts will use the most analogous state statute of limitations unless that statute would undermine the federal policies underlying the Act. Montana's statute of limitations applicable to judicial reviews of administrative appeals, *2-4-702*, was applicable to the school district's civil action challenging the administrative hearings officer's decision after the due process hearing. *Livingston School District Nos. 4 and 1 v. Keenan, 82 F3d 912 (9th Cir. 1996)*.

    *Claim for Utility Relocation Project Reimbursement Not Time-Barred:* Although the bulk of primary work in a utility relocation project was accomplished by April 1988, various items of related work were done as late as March 1989. Because the claim for reimbursement was filed in July 1990, less than 2 years later, payment of the claim was not barred by the applicable statute of limitations in this section. *N. Lights, Inc. v. St., 265 M 47, 874 P2d 6, 51 St. Rep. 394 (1994)*.

    *Conflicting Statutes of Limitations Resolved in Favor of Longest Statute:* Kearney, a news manager working for a television station under an oral contract, sued KXLF for overtime compensation. The District Court applied a 5-year statute of limitations pursuant to *27-2-202(2)*. KXLF argued that the applicable statute of limitations was the 2-year limit contained in this section. Citing *Ritland v. Rowe, 260 M 453, 861 P2d 175 (1993)*, and *Thiel v. Taurus Drilling Ltd. 1980-II, 218 M 201, 710 P2d 33 (1985)*, the Supreme Court held that conflict between the statutes applicable in this case should be resolved in favor of the statute containing the longer limitation. *Kearney v. KXLF Communications, Inc., 263 M 407, 869 P2d 772, 51 St. Rep. 119 (1994)*. See also *Travelers Indem. Co. v. Andersen, 1999 MT 201, 295 M 438, 983 P2d 999, 56 St. Rep. 782 (1999)*.

    *Statute of Limitations Applicable to Penalty for Deceit:* Because *37-61-406*, which provides a penalty for deceit or collusion by an attorney, is clearly a penalty statute, the 2-year statute of limitations in this section applies rather than

the 3-year general tort statute of limitations. *Barrett v. Holland & Hart, 256 M 101, 845 P2d 714, 49 St. Rep. 1156 (1992),* and *50 St. Rep. 63 (1993).*

*Applicability of Ten-Year Statute of Limitations to Pre-1983 Mines Net Proceeds Tax:* Prior to 1983, the limitations period for assessment revisions of property taxes, including the mines net proceeds tax, was 10 years as set in *15-8-601.* Because this specific statute of limitations was governing, the general 2-year limitations period prescribed in this section did not apply to these particular taxes. *W.R. Grace & Co. v. Dept. of Revenue, 238 M 439, 779 P2d 470, 46 St. Rep. 1399 (1989),* distinguishing *Caterpillar Tractor Co. v. Dept. of Revenue, 194 M 537, 633 P2d 618, 38 St. Rep. 1245 (1981).*

*Statute of Limitations Begins at Time of Injury:* Plaintiff alleged defendant violated *37-51-323* by misrepresenting himself as being a real estate broker licensed by another state. Plaintiff's complaint was filed over 2 years after the alleged tort. Plaintiff contends that defendant's alleged misrepresentation constitutes concealment of a material fact, and therefore the statute of limitations should be tolled. The court held that defendant's misrepresentation was not an affirmative act calculated to obscure plaintiff's cause of action. In nonmalpractice tort actions, the statute of limitations begins to run on the date of plaintiff's injury. This action is barred because plaintiff did not file within the 2-year period. *Payne v. Stratman, 229 M 377, 747 P2d 210, 44 St. Rep. 2059 (1987).*

*Statute of Limitations as Applied to Civil RICO Actions:* Section *27-2-211,* rather than *27-2-215* (renumbered *27-2-231*), provides the Statute of Limitations for claims most analogous to civil RICO claims in Montana since the Racketeer Influenced and Corrupt Organizations Act (RICO) itself contains no limitations. *Jacobson v. W. Mont. Prod. Credit Ass'n, 643 F. Supp. 391, 43 St. Rep. 1598 (D.C. Mont. 1986).*

*Eight-Year Statute of Limitations for Civil Action Under Securities Act of Montana:* The U.S. District Court for the District of Montana certified a question to the Supreme Court on the applicable Statute of Limitations for a civil action brought pursuant to *30-10-307.* In deciding that the 8-year limitation period rather than the 2-year period applied, the court traced the legislative history of the civil enforcement limitation period under the Securities Act of Montana. In 1967, the Legislature eliminated the relevant 2-year limitation and left a void. The court reviewed the legislative intent, underlying purposes of the Act, and characterization of the essence of the claim. Finding that each count of plaintiff's complaint could be interpreted as sounding in tort, contract, or statutory violation, the court resolved the case in favor of the longest limitation period. *Thiel v. Taurus Drilling Ltd. 1980-II, 218 M 201, 710 P2d 33, 42 St. Rep. 1520 (1985),* followed in *Ritland v. Rowe, 260 M 453, 861 P2d 175, 50 St. Rep. 1183 (1993),* and in *Kearney v. KXLF Communications, Inc., 263 M 407, 869 P2d 772, 51 St. Rep. 119 (1994).*

*Federal Civil Rights Action -- Accrual of Action:* Although federal courts apply the state Statute of Limitations in a civil rights action brought under *42 U.S.C. § 1983,* the date on which the action accrues is determined by federal standards. The time of accrual under federal law is when the plaintiff knows or has reason to know of the injury that is the basis for the action. Where the only incident that could give rise to a cause of action occurred 4 years prior to the federal court filing, the parties were properly dismissed, there being a 2-year Statute of Limitations in effect. *Harvey v. Pomroy, 535 F. Supp. 78, 39 St. Rep. 657 (D.C. Mont. 1982).*

*Corporate License Tax -- Limitations on Assessment Where No Return -- No Revival of Impliedly Repealed Section by Internal Reference:* The 2-year Statute of Limitations in *27-2-211* applied to the assessment of corporate license tax for corporations that failed to file a return for the reason that the Supreme Court in *St. v. King Colony Ranch, 137 M 145, 350 P2d 841 (1960),* had held that sec. 1, Ch. 209, L. 1945 (amending *15-31-526*), had superseded sec. 9, Ch. 166, L. 1933 (enacting *15-31-542,* repealed in 1983), as to the time limitation and the Legislature, in sec. 2, Ch. 186, L. 1963 (enacting *15-31-509*), though referencing *15-31-542* on an exception, had not used language to revive it; therefore *15-31-542* remained superseded or repealed. (But see *15-31-544.*) *Caterpillar Tractor Co., Inc. v. Dept. of Revenue, 194 M 537, 633 P2d 618, 38 St. Rep. 1245 (1981).*

*Misrepresentation Action in Real Estate Sale:* The court properly awarded summary judgment to defendants in a misrepresentation action under the Montana real estate license law when the record indicated that no fraudulent representations were made by defendants and the Statute of Limitations had expired, notwithstanding the "discovery" exception. *Anderson v. Applebury, 173 M 411, 567 P2d 951 (1977).*

*Rental -- Effect of Payments Upon Limitation:* Whether or not rent was paid, the lease contained no default clause and no evidence was presented as to termination of lease. Therefore, lease was voidable, not void, and the statute did not begin to run until there was a demand and refusal. *Grinde v. Tindall, 172 M 199, 562 P2d 818 (1977).*

*"Liability Created by Statute":* Action against county by motorist who alleged he suffered personal injuries in a single vehicle accident due to negligent failure of county to properly maintain and mark a "T" intersection of county roads was subject to 3-year Statute of Limitations under *27-2-209*, rather than 2-year Statute of Limitations under *27-2-211* as an action "upon a liability created by statute", since *33-23-102*, waiving sovereign immunity to extent of county's liability insurance, simply removes a defense previously existing rather than creating a new cause of action. *State ex rel. Fallon County v. District Court, 161 M 79, 505 P2d 120 (1972).*

*Action Under Federal Civil Rights Statute:* Cause of action under federal civil rights statute for improper search accrued at the time of the search, not at the time the search was adjudicated invalid or when criminal prosecution was terminated, so that action brought more than 2 years after the search was barred by this section. *Strung v. Anderson, 452 F2d 632 (9th Cir. 1971).*

*Railroad's Statutory Duty:* The cause of action based on a railroad's statutory duty to maintain a cement drop, siphon, and wooden flume on its right-of-way did not accrue on the taking of the right-of-way or on the abandonment of the right-of-way and notice to water rights owners that it would no longer maintain the works but rather would accrue only after injury occurred from the railroad's failure to maintain the works. *Harrer v. N. Pac. Ry., 147 M 130, 410 P2d 713 (1966).*

*Antitrust Civil Actions:* Federal District Court properly dismissed counterclaims charging deliberate course of conduct on the part of a utility aimed at destroying business of one of the defendants and failure of utility to operate its pipelines as a common carrier as required by the Federal Leasing Act and the Natural Gas Act and seeking damages for violations of antitrust laws, which were barred by this section. *Wight v. Montana-Dakota Util. Co., 299 F2d 470 (9th Cir. 1962).*

Action by packing company to recover treble damages from competitors for alleged violation of antitrust laws, filed more than 2 years after competitors had been engaged in a local price war in Montana, was barred by 2-year limitation under this section, though within that period short weighting and varying prices occasioned by keen competition occurred, in absence of evidence of concerted effort by competitors or systematic price cutting. Action for treble damages is not for a "penalty" or "forfeiture" under this section; liability is not mere codification of common law but is "liability created by statute". *Hansen Packing Co. v. Swift & Co., 27 F. Supp. 364 (D.C. Mont. 1939).*

*Public Officers' Obligations:* Action against former Commissioner of Public Works, appointed by former Mayor of city, to recover money received as additional salary for managing housing projects was not barred by this section where city had no knowledge of the payments taken by *Commissioner. Roundup v. Liebetrau, 134 M 114, 327 P2d 810 (1958).*

The duty of a County Treasurer to receive, keep safely, and account for all money of the county, as well as that directed by a court or statute to be deposited with him for safekeeping, being one imposed by express statutory requirement, an action on the official bond of such an officer is on "a liability created by statute" and is barred in 2 years by *27-2-211. Gallatin County v. USF&G Co., 50 M 55, 144 P 1085 (1914),* distinguished in *School District v. Pondera County, 89 M 342, 297 P 498 (1931).*

Section *27-2-211(1)(c)* does not apply to an action against a City Treasurer to recover interest received by him on deposits of city funds that he failed to turn over to his principal. *Butte v. Goodwin, 47 M 155, 134 P 670 (1913).*

*Burden of Proof as to Timeliness of Action:* Section *27-2-211(3)* is not a Statute of Limitations but is of the essence of the right itself, and one who seeks to enforce a right must show affirmatively that his action is timely. (Opinion on rehearing.) *State ex rel. Lewis & Clark County v. District Court, 90 M 213, 300 P 544 (1931).*

*Oil and Gas Lease Forfeiture:* An action for the cancellation of record of an oil and gas lease which had theretofore been declared forfeited, brought under *82-1-201* through *82-1-203*, was not an action "upon a statute for a penalty or forfeiture" within the meaning of this section or one "upon a liability created by statute other than a penalty or forfeiture". *Abell v. Bishop, 86 M 478, 284 P 525 (1930).*

*Oil and Gas Leases:* A Statute of Limitations, such as this section, prescribing a limitation of 2 years for an action "upon a liability created by statute" does not extend to an action based upon defendant's alleged negligence in addition to a statutory liability or to an action in which the element of agreement enters, as where defendant in an action of the nature of the above specifically agreed, as lessee in an oil and gas lease, in case of default on his part to release the lease of record. *Abell v. Bishop, 86 M 478, 284 P 525 (1930).*

*Double Liability of Bank Stockholders:*   The statutory liability imposed upon holders of bank stock by section 6036, R.C.M. 1921 (since repealed), for debts of the bank, is in the nature of a guaranty, not primary but secondary, and the liability is created within the meaning of this section, not when the statute imposing it was enacted or when the relation of debtor and creditor between the bank and plaintiff first arose but when the bank became insolvent; therefore, the complaint in such an action showing on its face that it was commenced within the 3-year period was sufficient as against a general demurrer (demurrer abolished, Rule 7(c), M.R.Civ.P., and *25-31-503 (25-31-503* now repealed)). *Mitchell v. Banking Corp. of Mont., 83 M 581, 273 P 1055 (1929).*

Quaere: When is the double statutory liability of a stockholder in a state bank "created" within the meaning of this section, fixing a limitation of 3 years; was it created at the time the creditor made the deposit in question or at the time the corporation was shown to be without assets? *Brown v. Roberts, 78 M 301, 254 P 419 (1927).*

While the double liability of stockholders in state banks is contractual in nature, the 5-year limitation on contracts not in writing (*27-2-202*) does not apply in an action on such liability, but, the liability being one created by law, the provision of this section, that an action of that nature must be brought within 3 years after it was created, applies. *Brown v. Roberts, 78 M 301, 254 P 419 (1927).*

*Accrual of Cause of Action:*   Limitation does not begin to run against suit to charge directors of national bank with personal liability for making excessive loans so long as defendants remain in control. Adams v. *Clarke, 22* F2d 957 (9th Cir. 1927).

An action by a depositor in an insolvent bank to enforce the stockholders' liability is based on a statutory rather than a contractual liability and is not penal in nature, so under this section it must be commenced within 3 years after the liability was created by law, without reference as to when plaintiff made discovery of the facts in the case. *Brown v. Roberts, 78 M 301, 254 P 419 (1927).*

An action against a director to enforce his statutory liability for failure of his corporation to file its annual statement is not for a penalty or forfeiture, so it must be brought within 3 years after the liability was created by law and not within 3 years after the aggrieved party discovered the fact with relation thereto. *Williams v. Hilger, 77 M 399, 251 P 524 (1926).*

*Notary Public's Liability:*   An action against a notary public to recover damages for making a false certificate to a mortgage is one "upon a liability created by statute" within the meaning of this section and barred if not brought within 2 years from the date of false making. *Steinbrenner v. Elder, 80 M 395, 260 P 725 (1927).*

*Actions in Other States:*   In an action brought in the federal District Court of a foreign state to enforce directors' liability for failure of a corporation to file the required annual report, the 3-year limitation prescribed by this section governs. *N. Pac. Ry. v. Crowell, 245 F 668 (D.C. N.J. 1917).*

This section applies to liabilities incurred before its passage under a different statute and goes with them as a qualification when they are sued upon in other states. *Davis v. Mills, 194 US 451, 48 L Ed 1067, 24 S Ct 692 (1904),* distinguished in *Pearson v. NE. Airlines, Inc., 309 F2d 553 (2nd Cir. 1962).*

*Mining Company's Liability:*   An action under *39-2-704(1)* for personal injuries, founded upon actionable negligence, is not an action on a "liability created by statute"; hence, such an action is not barred in 2 years. *Beeler v. Butte & London Copper Dev. Co., 41 M 465, 110 P 528 (1910).*

**NOTES:**

Attorney General's Opinions

*Wage Claims by Public Officers Considered Liability Created by Statute -- Two-Year Statute of Limitations Applicable:*   Because the extent and nature of public officers' duties and the amount of compensation are statutorily defined, claims for compensation must be considered liabilities created by statute. Therefore, the 2-year statute of limitations set out in subsection (1)(c) of this section applies to wage claims by public officers, including elected county officials and their deputies, and claims for longevity payments from Deputy Sheriffs and undersheriffs. *43 A.G. Op. 58 (1990).*

Chapter Law Review Articles

Does It Have to be This Hard? Rule 41(e) in Montana, Ford, *60 Mont. L. Rev. 285 (1999).*

Statutes of Limitation in Montana, Mont. L. Rev. Special Issue (1977).

Wrongful Death and the Statute of Limitations, Broeder, *34 Mont. L. Rev. 170 (1973).*

Collateral References

Banks and Banking [Key number] 55(2), 58(1); Corporations [Key number] 264, 356.

9 C.J.S. Banks and Banking §§ 119, 126; 18 C.J.S. Corporations § 414; 19 C.J.S. Corporations §§ 537, 552.

LexisNexis (R) Notes:


CASE NOTES


1. Claims brought under the Montana Unfair Trade Practices Act, § *30-14-101* et seq., are subject to the two-year time limitation set forth in *Mont. Code Ann. § 27-2-211*; therefore, summary judgment was properly granted on a purchaser's claim for unfair trade practices against a seller and an independent contractor, and the time period was not tolled because the evidence showed that the purchaser was aware of the relationship between the seller and the independent contractor at the time that a check was written to pay for the services rendered. *Osterman v. Sears, 2003 MT 327, 318 Mont. 342, 80 P.3d 435, 2003 Mont. LEXIS 791 (2003).*


2. In an owner's action against the contractors for breach of contract for the failure to complete construction work on time, the trial court erred in applying *Mont. Code Ann. § 27-2-211* in the award of judgment interest because the amount of damages was not certain until determined by the trial court. *Carriger v. Ballenger, 192 Mont. 479, 628 P.2d 1106, 1981 Mont. LEXIS 739 (Mont. 1981).*


3. Utility company's claim for reimbursement of relocation expenses under *Mont. Code Ann. § 60-4-403* did not accrue until the relocation was complete. Therefore, the two-year statute of limitations that was applicable to the claim, *Mont. Code Ann. § 27-2-211*, did not begin to run until the relocation was complete. *N. Lights v. Dep't of Highways, 265 Mont. 47, 874 P.2d 6, 1994 Mont. LEXIS 96, 51 Mont. St. Rep. 394 (Mont. 1994).*


4. Insurer's subrogation claim on an injured worker's recovery against a third party was barred by a two-year limitation on statutory liabilities. *Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 Mont. 508, 11 P.3d 105, 2000 Mont. LEXIS 262, 57 Mont. St. Rep. 1080 (2000).*


5. District court erred in finding that *Mont. Code Ann. § 39-2-703* did not provide a cause of action for mismanagement, however, in dismissing the suit, it reached the right result because the employee's claim for mismanagement was barred by the two-year statute of limitations under *Mont. Code Ann. § 27-2-211(1)(c). Haux v. Mont. Rail Link, Inc., 2004 MT 233, 322 Mont. 456, 97 P.3d 540, 2004 Mont. LEXIS 402 (2004).*

6. Utility company's claim for reimbursement of relocation expenses under *Mont. Code Ann. § 60-4-403* did not accrue until the relocation was complete. Therefore, the two-year statute of limitations that was applicable to the claim, *Mont. Code Ann. § 27-2-211*, did not begin to run until the relocation was complete. *N. Lights v. Dep't of Highways, 265 Mont. 47, 874 P.2d 6, 1994 Mont. LEXIS 96, 51 Mont. St. Rep. 394 (Mont. 1994).*

7. Because an employment relationship is contractual in nature, the applicable statute of limitations in Montana for claims involving employment relationships with no written contract is five years, pursuant to *Mont. Code Ann. § 27-2-202(2)* and *Mont. Code Ann. § 39-2-101*. In several former employees' action to recover for unpaid wages earned, the district court did not err in determining that the statute of limitations was five years instead of two years pursuant to *Mont. Code Ann. § 27-2-211. Craver v. Waste Mgmt. Partners, 265 Mont. 37, 874 P.2d 1, 1994 Mont. LEXIS 60, 51 Mont. St. Rep. 268, 2 Wage & Hour Cas. 2d (BNA) 17 (Mont. 1994),* overruled by *In re Estate of Lande, 1999 MT 179, 295 Mont. 277, 983 P.2d 316, 1999 Mont. LEXIS 189, 56 Mont. St. Rep. 701 (1999).*

8. Where both the two-year statute of limitations under *Mont. Code Ann § 27-2-211(1)(c)* and the five-year statute of limitations under *Mont. Code Ann. § 27-2-202(2)* had application to a suit brought by an employee for the payment of overtime wages, the general rule required the court to resolve any doubt in favor of the statute containing the longer limitation. *Kearney v. KXLF Communs., 263 Mont. 407, 869 P.2d 772, 1994 Mont. LEXIS 34, 51 Mont. St. Rep. 119 (Mont. 1994).*

9. Licensed real estate broker's action against an individual for the cancellation of a fee-splitting agreement and for the return of a commission paid pursuant to the agreement on the basis that the individual allegedly misrepresented that he was a licensed real estate broker, in violation of *Mont. Code Ann. § 37-51-323*, was barred by the statute of limitations, *Mont. Code Ann. § 27-2-211* because it was filed more than two years after the alleged tort. *Payne v. Stratman, 229 Mont. 377, 747 P.2d 210, 1987 Mont. LEXIS 1081, 44 Mont. St. Rep. 2059 (Mont. 1987).*

10. Licensed real estate broker's action against an individual for the cancellation of a fee-splitting agreement and for the return of a commission paid pursuant to the agreement on the basis that the individual allegedly misrepresented that he was a licensed real estate broker, in violation of *Mont. Code Ann. § 37-51-323*, was barred by the statute of limitations, *Mont. Code Ann. § 27-2-211* because it was filed more than two years after the alleged tort. *Payne v. Stratman, 229 Mont. 377, 747 P.2d 210, 1987 Mont. LEXIS 1081, 44 Mont. St. Rep. 2059 (Mont. 1987).*

11. Where both the two-year statute of limitations under *Mont. Code Ann. § 27-2-211(1)(c)* and the five-year statute of limitations under *Mont. Code Ann. § 27-2-202(2)* had application to a suit brought by an employee for the payment of overtime wages, the general rule required the court to resolve any doubt in favor of the statute containing the longer limitation. *Kearney v. KXLF Communs., 263 Mont. 407, 869 P.2d 772, 1994 Mont. LEXIS 34, 51 Mont. St. Rep. 119 (Mont. 1994).*

12. Because an employment relationship is contractual in nature, the applicable statute of limitations in Montana for claims involving employment relationships with no written contract is five years, pursuant to *Mont. Code Ann § 27-2-202(2)* and *Mont. Code Ann. § 39-2-101*. In several former employees' action to recover for unpaid wages earned, the district court did not err in determining that the statute of limitations was five years instead of two years pursuant to *Mont. Code Ann. § 27-2-211. Craver v. Waste Mgmt. Partners, 265 Mont. 37, 874 P 2d 1, 1994 Mont. LEXIS 60, 51 Mont. St. Rep. 268, 2 Wage & Hour Cas. 2d (BNA) 17 (Mont. 1994),* overruled by *In re Estate of Lande, 1999 MT 179, 295 Mont. 277, 983 P.2d 316, 1999 Mont. LEXIS 189, 56 Mont. St. Rep. 701 (1999).*

13. In the absence of a specific statute of limitations governing a particular tax, the general two-year limitations period prescribed in *Mont. Code Ann. § 27-2-211(1)(c)* for a liability created by statute other than a penalty or forfeiture applies. *W.R. Grace & Co. v. Dep't of Revenue, 238 Mont. 439, 779 P.2d 470, 1989 Mont. LEXIS 213 (Mont. 1989).*

14. In a second action by plaintiff former employee against defendant law firm for damages arising out of allegedly false representations by which the law firm obtained a retrial of the employee's first trial on claims on wrongful termination, summary judgment under Mont. R. Civ. P. 56(c) was properly granted in favor of the law firm on the employee's claim for deceit because that claim accrued with the reversal of the first judgment and was barred by the two-year statute of limitations; the general three-year statute, pursuant to *Mont. Code Ann. § 27-2-204*, did not apply. *Barrett v. Holland & Hart, 256 Mont. 101, 845 P.2d 714, 1992 Mont. LEXIS 350, 49 Mont. St. Rep. 1156 (Mont. 1992).*

15. Claims brought under the Montana Unfair Trade Practices Act, § *30-14-101* et seq., are subject to the two-year time limitation set forth in *Mont. Code Ann. § 27-2-211*; therefore, summary judgment was properly granted on a purchaser's claim for unfair trade practices against a seller and an independent contractor, and the time period was not tolled because the evidence showed that the purchaser was aware of the relationship between the seller and the independent contractor at the time that a check was written to pay for the services rendered. *Osterman v. Sears, 2003 MT 327, 318 Mont. 342, 80 P.3d 435, 2003 Mont. LEXIS 791 (2003).*

16. Claims brought under the Montana Unfair Trade Practices Act, § *30-14-101* et seq., are subject to the two-year time limitation set forth in *Mont. Code Ann. § 27-2-211*; therefore, summary judgment was properly granted on a purchaser's claim for unfair trade practices against a seller and an independent contractor, and the time period was not tolled because the evidence showed that the purchaser was aware of the relationship between the seller and the independent contractor at the time that a check was written to pay for the services rendered. *Osterman v. Sears, 2003 MT 327, 318 Mont. 342, 80 P.3d 435, 2003 Mont. LEXIS 791 (2003).*

17. In a second action by plaintiff former employee against defendant law firm for damages arising out of allegedly false representations by which the law firm obtained a retrial of the employee's first trial on claims on wrongful termination, summary judgment under Mont. R. Civ. P. 56(c) was properly granted in favor of the law firm on the employee's claim for deceit because that claim accrued with the reversal of the first judgment and was barred by the two-year statute of limitations; the general three-year statute, pursuant to *Mont. Code Ann. § 27-2-204*, did not apply. *Barrett v. Holland & Hart, 256 Mont. 101, 845 P.2d 714, 1992 Mont. LEXIS 350, 49 Mont. St. Rep. 1156 (Mont. 1992).*

18. District court erred in finding that *Mont. Code Ann. § 39-2-703* did not provide a cause of action for mismanagement, however, in dismissing the suit, it reached the right result because the employee's claim for mismanagement was barred by the two-year statute of limitations under *Mont. Code Ann. § 27-2-211(1)(c). Haux v. Mont. Rail Link, Inc., 2004 MT 233, 322 Mont. 456, 97 P.3d 540, 2004 Mont. LEXIS 402 (2004).*

19. Insurer's subrogation claim on an injured worker's recovery against a third party was barred by a two-year limitation on statutory liabilities. *Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 Mont. 508, 11 P.3d 105, 2000 Mont. LEXIS 262, 57 Mont. St. Rep. 1080 (2000).*

20. Insurer's lien that was created by *Mont. Code Ann. § 39-71-414(1)* as against third-party proceeds that were recovered by an employee constituted a "liability created by statute" within the meaning of *Mont. Code Ann. § 27-2-211(1)(c)* because it amounted to an unqualified right of reimbursement that was not found at common law; the right of "subrogation" that is granted by § *39-71-414* must necessarily be read in reference to the *Workers' Compensation Act as a whole.*

*Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 Mont. 508, 11 P.3d 105, 2000 Mont. LEXIS 262, 57 Mont. St. Rep. 1080 (2000).*

21. When an injured employee became entitled to proceeds from a third-party tortfeasor, it marked the time at which the insurer's right to reclaim its "statutorily prescribed compensation payout" began to run for purposes of the statute of limitations under *Mont. Code Ann. § 27-2-102(1)(a)*; a workers' compensation insurer's claim for statutory reimbursement that is brought pursuant to *Mont. Code Ann. § 39-71-414(1)* constitutes a "liability created by statute" within the meaning of *Mont. Code Ann. § 27-2-211(1)(c). Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 Mont. 508, 11 P.3d 105, 2000 Mont. LEXIS 262, 57 Mont. St. Rep. 1080 (2000).*

22. When an injured employee became entitled to proceeds from a third-party tortfeasor, it marked the time at which the insurer's right to reclaim its "statutorily prescribed compensation payout" began to run for purposes of the statute of limitations under *Mont. Code Ann. § 27-2-102(1)(a)*; a workers' compensation insurer's claim for statutory reimbursement that is brought pursuant to *Mont. Code Ann. § 39-71-414(1)* constitutes a "liability created by statute" within the meaning of *Mont. Code Ann. § 27-2-211(1)(c). Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 Mont. 508, 11 P.3d 105, 2000 Mont. LEXIS 262, 57 Mont. St. Rep. 1080 (2000).*

OPINIONS OF ATTORNEY GENERAL

1. Counties -- Application of 7 percent increase in section *7-4-2504(3)*; Counties -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; County Commissioners -- Application of 7 percent increase in section *7-4-2504(3)*; County Commissioners -- Discretionary authority to freeze salaries of elected county officials; County Officers And Employees -- Application of 7 percent increase in section *7-4-2504(3)*; County Officers And Employees -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; Employees, Public -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; Labor Relations -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; Limitations On Action -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; Public Officers -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; Salaries -- Application of 7 percent increase in section *7-4-2504(3)*; Salaries -- Discretionary authority to freeze salaries of elected county officials; Salaries -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; Sheriffs -- Two-year statute of limitations on wage claims from public officers and claims for longevity from deputy sheriffs and undersheriffs; *Montana Code Annotated -- Sections 7-4-2503, 7-4-2504, 27-2-202, 27-2-211*; Opinions Of The Attorney General -- *42 Op. Att'y Gen. No. 85 (1988), 39 Op. Att'y Gen. No. 32 (1981).* HELD: 1. The 7 percent increase in *section 7-4-2504(3), MCA*, must be considered a cost-of-living increment (COLA) used to determine salaries for elected county officials in fiscal year 1982 and must be added to the base salary on July 1, 1982, before computing the Cola for fiscal year 1982-83., OPINION No. 58, *1990 Mont. AG LEXIS 9; 43 Op. Atty Gen. Mont. No. 58.*

2. The two-year statute of limitations in *section 27-2-211(1)(c), MCA*, applies to wage claims by public officers, including elected county officials and their deputies, and claims for longevity payments from deputy sheriffs and undersheriffs., OPINION No. 58, *1990 Mont. AG LEXIS 9; 43 Op. Atty Gen. Mont. No. 58.*

1 of 100 DOCUMENTS

LexisNexis (R) Montana Code Annotated
*** ARCHIVE DATA ***

*** THIS DOCUMENT IS CURRENT THROUGH ALL 2003 LEGISLATION ***
*** No legislation enacted in 2004 ***
*** ANNOTATIONS CURRENT THROUGH JULY 12, 2005 ***

TITLE 17  STATE FINANCE
CHAPTER 8  DISBURSEMENT AND EXPENDITURE
PART 2  CLAIMS

*MCA § 17-8-231* (2004)

17-8-231  Liability for false claims.

(1)  A person who knowingly presents or causes to be presented a false, fictitious, or fraudulent claim for allowance or payment to any state agency or its contractors forfeits the claim, including any portion that may be legitimate, and in addition is subject to a penalty of not to exceed $ 2,000 plus double the damages sustained by the state as a result of the false claim, including all legal costs.

(2)  The forfeiture and the penalty may be sued for in the same suit.

**HISTORY:**

En. Sec. 2, Ch. 151, L. 1981.

**NOTES:**

Chapter Cross-References

Prohibited payments, Art. VIII, sec. 14, Mont. Const.

Treasurer to withhold payment, 2-2-206.

Part Cross-References

State insurance plan and tort claims, Title 2, ch. 9.

Board of Examiners -- allocation, 2-15-1007.

Claim settlement by Attorney General, 18-1-412, 18-1-413.

Verification of pleadings, 25-4-203.

Cross-References

False claims to public agencies -- criminal offense, 45-7-210.

**NOTES:**

Attorney General's Opinions

*Penalties for Fraudulent Benefits Claim -- Specific Remedy Controlling Over General Remedy:*   Although 17-8-231 appears to provide a penalty for fraudulent claiming of unemployment insurance benefits, that statute is a general

one which provides a penalty in conflict with the more specific penalty provided under 39-51-3201. Because the more particular statute must control to the extent of any inconsistency, the Department of Labor and Industry is limited to recovery of those amounts of benefits wrongfully received by the claimant. The Department may not sue a claimant for all benefits paid to the claimant or for the additional penalty provided in 17-8-231, but may disqualify the claimant under 39-51-3201 from receipt of future benefits. *40 A.G. Op. 21 (1983)*.

Chapter Collateral References

*72 Am. Jur. 2d States §§ 90, 91.*

Inherent power of court to compel appropriation or expenditure of funds for judicial purposes. *59 ALR 3d 569.*

Part Collateral References

Amount of appropriation as limitation on damages for breach of contract recoverable by one contracting with government agency. *40 ALR 4th 998.*

LEXSTAT MONT. CODE ANNO., § 30-14-103

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH JANUARY 3, 2007 ***

TITLE 30  TRADE AND COMMERCE
CHAPTER 14  UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
PART 1  CONSUMER PROTECTION ACT

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 30-14-103* (2005)

30-14-103  Unlawful practices.

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

**HISTORY:** En. Sec. 2, Ch. 275, L. 1973; R.C.M. 1947, 85-402.

**NOTES:**

Chapter Cross-References

Protection of consumers from unfair practices of corporations, *Art. XIII, sec. 1, Mont. Const.*

Plain Language in Contracts Act, Title 30, ch. 14, part 11.

New motor vehicle warranties -- remedies, Title 61, ch. 4, part 5.

Part Cross-References

Consumer Counsel, *Art. XIII, sec. 2, Mont. Const.*

Policy of Montana Alcoholic Beverage Code, *16-1-101.*

Policy of The Montana Cigarette Sales Act, *16-10-102.*

Violation of consumer reporting agencies' law as violation of part, *31-3-153.*

Montana Consumer Product Safety Act of 1975, Title 50, ch. 30.

Cross-References

Violation of consumer reporting agencies' law as violation of part, *31-3-153.*

Deceptive practices, *45-6-317.*

Deceptive business practices, *45-6-318.*

Chain distributor schemes, *45-6-319.*

Illegal branding or altering or obscuring of brand, *45-6-327.*

Chapter Compiler's Comments

*Similarity to Uniform Law:*   This chapter is substantially similar to the Uniform Unfair Trade Practices and Consumer Protection Law, which may be found in 29 Suggested State Legislation 141 (1972).

Part Compiler's Comments

*Severability Clause·*   Section 18, Ch. 275, L. 1973, read: "If any provision of this act is declared unconstitutional, or the application to any person or circumstances is held invalid, the constitutionality of the remainder of the act and its applicability to other persons and circumstances is not affected."

Administrative Rules

ARM  2.61.507 State do-not-call database.

Chapter Case Notes

*Claims Under Unfair Trade Practices Act Subject to Statute of Limitations on Actions for Constructive Fraud:*   As a liability created by statute that is neither a penalty nor a statutory debt, claims brought under the Montana Unfair Trade Practices and Consumer Protection Act of 1973 are subject to the 2-year statute of limitations in *27-2-211*. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003),* following *Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 M 508, 11 P3d 105 (2000).*

*Exercise of Ordinary Diligence Required in Discovery of Unfair Trade Practices Constituting Fraud for Tolling Statute of Limitations:*   For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, ordinary diligence must be exercised by the aggrieved party in discovery of the facts constituting the fraud or deceptive practice. Pursuant to *Johnson v. Barrett, 1999 MT 176, 295 M 254, 983 P2d 925 (1999),* the test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to the plaintiff's investigation. Mere ignorance of the facts will not suffice to toll the statute of limitations. In this case, plaintiff filed an unfair trade practices complaint about 2 years and 9 months after entering an agreement with defendant siding installer, believing at the time that the contract was with the defendant company that manufactured the siding. However, plaintiff showed no affirmative conduct by either defendant that was calculated to obscure the existence of a cause of action, nor were the facts giving rise to the alleged fraud concealed. Thus, plaintiff discovered or should have discovered the facts constituting the alleged fraud when the contract was entered more than 2 years prior to filing suit, so the claim was barred by the 2-year statute of limitations in *27-2-211*. *Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003).*

*Provisions of Act Not Applicable -- Attorney Fees Proper:*   The District Court found that the provisions of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 were inapplicable to the subject of this case but that pursuant to the Act the defendant, as prevailing party, was entitled to reasonable attorney fees under *30-14-133*. Appellant contended that since the Act did not apply, award of attorney fees was not appropriate. The Supreme Court affirmed the award, noting that defendant prevailed on the main issue in controversy and that since the action was brought under the Act, reasonable attorney fees were proper. *Dillree v. Devoe, 223 M 47, 724 P2d 171, 43 St. Rep. 1521 (1986).*

*Applicability of Chapter Where No Fraud, Duress, or Undue Influence Present:*   Attorney, minutes before he was to defend client on criminal charges, threatened to withdraw as counsel unless client executed security agreement and quitclaim deed as security for attorney's fee. Attorney had given the instruments to client weeks before trial, but client had failed to execute them. No fraud, duress, or undue influence was found. Under these facts, this chapter has no application. *Matthews v. Berryman, 196 M 49, 637 P2d 822, 38 St. Rep. 2112 (1981).*

Part Case Notes

*Negligence Compared With Violation of Consumer Protection Act:*   The jury found the defendant violated the Consumer Protection Act and was negligent. The trial court applied the comparative negligence statute to reduce the plaintiffs' recovery under the Act. On appeal, the Supreme Court affirmed the reduction of damages, stating that the law as stated in the jury instructions does not allow the separation of the defendant's actions in violation of the Consumer Protection Act from its actions that were negligent. *Evans v. Teakettle Realty, 226 M 363, 736 P2d 472, 44 St. Rep. 723 (1987).*

*Public Service Commission Exempt From Consumer Protection Act:*  The plain meaning of *30-14-105* is that actions and transactions of the Public Service Commission, acting under its statutory authority, are exempt from the *Consumer Protection Act. Rozel Corp. v. Dept. of Public Service Regulation, 226 M 237, 735 P2d 282, 44 St. Rep. 618 (1987).*

*No Individual Cause of Action Concerning Goods Purchased for Business Rather Than for Personal, Family, or Household Purposes:*  When uncontradicted testimony established that a machine had been purchased for use in respondents' business, respondents did not fall within the class of persons who may bring a private action under *30-14-133. Doll v. Major Muffler Centers, Inc., 208 M 401, 687 P2d 48, 41 St. Rep. 429 (1984).*

Case Notes

*Electric Cooperative Requirement That New Customer Pay Prior Customer's Delinquent Bill Unreasonable:*  Granbois applied to have an electric cooperative provide service to her lot. However, the bylaws of the cooperative required that before she could receive service, Granbois pay the delinquent bill of the person who previously received service at the location. She paid the delinquent bill, began receiving service, and then brought an action against the cooperative on grounds that the policy violated unfair trade practices. Citing *Howe v. Big Horn Elec. Co-op, 206 M 297, 670 P2d 936, 40 St. Rep. 1670 (1983),* the Supreme Court held that the disparity in the relative positions of the cooperative and the consumer necessarily required the cooperative to deal reasonably with its members and that the policy requiring a new customer to either pay the predecessor's bill or go without electricity was an unreasonable restriction on Granbois's access to electric services. After determining that the case could proceed as an unfair trade practices action, the court remanded with instructions to refund Granbois the amount of the delinquent bill. *Granbois v. Big Horn County Elec. Co-op, Inc., 1999 MT 222, 296 M 45, 986 P2d 1097, 56 St. Rep. 874 (1999).*

*Expert Testimony Unnecessary on Issue of Standard of Care -- District Court Not Directed as to All Expert Testimony on All Claims:*  Durbins purchased a home through the seller's realtors. Contrary to the representations of the realtors, Durbins discovered that the property had no legal septic system, that the household water was unsafe to use for any purpose, and that the access road was located on the neighbor's property. Durbins brought an action against the realtors, alleging negligent misrepresentation, actual and constructive fraud, and statutory violations involving the Montana real estate licensing laws and the Montana Unfair Trade Practices and Consumer Protection Act of 1973. The defendants sought and achieved dismissal of the case on the grounds that Durbins failed to prove through expert testimony the applicable standard of care of the realtors. The Supreme Court held that expert witnesses were unnecessary to prove a standard of care. Durbins also asked that the Supreme Court direct the District Court to exclude testimony of any expert witnesses on any claim asserted by the Durbins. The Supreme Court noted that the District Courts have great latitude concerning the admissibility of evidence and that the District Court would in any event have to comply with Rule 702, M.R.Ev. (Title 26, ch. 10). The Supreme Court therefore declined to direct the District Court as requested by the *Durbins. Durbin v. Ross, 276 M 463, 916 P2d 758, 53 St. Rep. 471 (1996).*

*Retention of Building Materials by Architects Not Violative of Professional Conduct or Consumer Protection Act:*  Architects who retained property and building materials from a building site after defendant failed to make contractual payments did not violate standards of professional conduct or commit unfair practices under the Montana Unfair Trade Practices and Consumer Protection Act of 1973. *Taylor, Thon, Thompson & Peterson v. Cannaday, 230 M 151, 749 P2d 63, 45 St. Rep. 102 (1988).*

*No Proof of Misrepresentation by Car Salesman:*  When the plaintiff, a purchaser of a used truck, brought an action against defendant car salesman alleging that the condition of a truck had been misrepresented, the District Court did not err in ruling that the plaintiff failed to offer proof establishing that the truck did not conform to the representations made by the salesman. The defects discovered by the plaintiff were discoverable by reasonable inspection and none rendered the truck inoperable or presented a safety hazard. *Emick v. Koch, 227 M 365, 739 P2d 947, 44 St. Rep. 1153 (1987).*

*Parallel Pricing as Insufficient Circumstantial Evidence of Restraint of Trade:*  Where the State brought an action against the defendant retail gasoline dealer, alleging that the defendant acted to restrain trade in the setting of gasoline prices, the federal District Court found that the defendant's actions of price following and parallel pricing were consistent with the defendant's own policies and self-interest, were a rational response to market conditions, were not accompanied by any evidence of other "plus factors" tending to show restraint of trade, and that the evidence of the defendant's pricing methods was therefore insufficient circumstantial evidence to show a violation of either state or federal law. *St. v. SuperAmerica, 559 F. Supp. 298, 40 St. Rep. 944 (D.C. Mont. 1983).*

*Consumer Protection Act Violation Alleged as Cause of Accident -- Agency Rule Not in Conflict With Federal Law -- Summary Judgment:*   The District Court properly denied summary judgment on plaintiff's Court No. II, which claimed misrepresentation as to the odometer reading on a used car sold to her by defendant corporation as the proximate cause of her accident and subsequent injuries. A state agency rule adopted pursuant to *30-14-104* was not inconsistent with the rules and decisions of the FTC and decisions of the Federal Courts, although the rule deals with sales and the main purpose of the federal law is to prevent unlawful restraint of trade. Whether the alleged violation was a cause of plaintiff's damages was a jury issue. *Kopischke v. First. Cont. Corp., 187 M 471, 610 P2d 668 (1980).*

## NOTES:

Part Law Review Articles

### MONTANA ARTICLES

Recent Consumer Protection Developments in Montana, Swartley, *37 Mont. L. Rev. 371 (1976).*

The Supreme Court's Changing Attitude Toward Consumer Protection and Its Impact on Montana Prejudgment Remedies, McDermott, *36 Mont. L. Rev. 165 (1975).*

The Supreme Court's Still Changing Attitude Toward Consumer Protection and Its Impact on the Integrity of the Court, McDermott, *37 Mont. L. Rev. 27 (1976).*

### ARTICLES FROM OTHER STATES

Case Law Under the Texas Deceptive Practices--Consumer Protection Act, *33 Baylor L. Rev. 533 (1981).*

Consumer Action Against Unfair or Deceptive Acts or Practices: The Private Use of FTC Jurisprudence, Leuffer & Lipson, 48 George Washington L. Rev. 521 (1980).

Consumer Protection: The Caveat Emptor's New Clothes?, Maher, 59 Law Inst. J. 178 (1985).

Deceptive Trade Practice--Consumer Protection Acts and Their Effect on Product Liability Litigation, Buswell, Stagg, & Myers, *15 Forum 716 (1980).*

Innovative Use of the Deceptive Trade Practices Act, Alderman, *18 Tex. Tech L. Rev. 45 (1987).*

Re-examining New Jersey's Consumer Fraud Act: Loopholes for Professionals?, *7 Seton Hall Legis. J. 45 (1983)*

Symposium: The Developing Law of Consumer Protection, *10 Gonz. L. Rev. 319 (1975)*

The Consumer Protection Act Private Right of Action: A Reevaluation, Rowland, *19 Gonz. L. Rev. 673 (1983).*

The Seller's Duty to Disclose Under Consumer Protection Statutes: Defining the Standard of Care, *17 Suffolk U.L. Rev. 721 (1983).*

Law Review Articles

Toward a Theory and Legal Standard of Consumer Unfairness, Rice, *5 J. L. & Com. 111 (1984)*

Chapter Collateral References

Uniform State Antitrust Act, National Conference of Commissioners on Uniform State Laws (1979).

Uniform Trade Secrets Act, National Conference of Commissioners on Uniform State Laws (1979).

When Statute of Limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

Finance company's liability in connection with consumer fraud practice of party selling goods or services. *18 ALR 4th 824.*

Part Collateral References

Uniform Consumer Credit Code (1974), 7 U.L.A. 601.

Uniform Consumer Credit Code (1968), 7 U.L.A. 233.

Uniform Consumer Sales Practices Act (1970), (1971), 7A U.L.A. 3.

Uniform Deceptive Trade Practices Act (1966), 7A U.L.A. 35.

Uniform Deceptive Trade Practices Act (1964), 7A U.L.A. 65.

What goods or property are "used," "second hand," or the like, for purposes of state consumer laws prohibiting claims that such items are new. *59 ALR 4th 1192.*

Award of attorneys' fees in actions under state deceptive trade practice and consumer protection acts. *35 ALR 4th 12.*

When statute of limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

Practices forbidden by state deceptive trade practice and consumer protection acts. *89 ALR 3d 449.*

Right to private action under state consumer protection act. *62 ALR 3d 169.*

Collateral References

Landlord's fraud, deceptive trade practices, and the like, in connection with mobile home owner's lease or rental of landsite. *39 ALR 4th 859.*

Consumers' rights and remedies, under modern state regulation, with respect to formaldehyde foam insulation considered as a health hazard. *38 ALR 4th 1064.*

Liability of repairer for unauthorized, unnecessary, or fraudulent repairs of motor vehicle. *23 ALR 4th 274.*

Failure to deliver ordered merchandise to customer on date promised as unfair or deceptive trade practice. *7 ALR 4th 1257.*

LexisNexis (R) Notes:

CASE NOTES

1. Where plaintiffs' complaint alleged that defendants engaged in a fraudulent real estate scheme, defendants' failure to answer and the district court's entry of a default judgment constituted an admission of the allegations contained in the complaint. Defendants' deceptive trade practices supported an award of treble damages. *Williams v. Global Fin. Servs., Inc., 2006 MT 9N, 131 P.3d 571, 2006 Mont. LEXIS 5 (2006).*

2. In a consumer's action against a car dealership and a car salesman, the consumer failed to prove an unfair or deceptive act or practice which would justify application of the *Montana Consumer Protection Act. Emick v. Koch, 227 Mont. 365, 739 P.2d 947, 1987 Mont. LEXIS 926, 44 Mont. St. Rep. 1153 (Mont. 1987).*

Mont. Code Anno., § 30-14-103

3. Regardless of whether a transaction was classed as a lease or a purchase by the lessees, it did not come within the statutory definition of a purchase or lease of goods primarily for personal, family or household purposes. *Doll v. Major Muffler Ctrs., 208 Mont. 401, 687 P.2d 48, 1984 Mont. LEXIS 912 (Mont. 1984).*

4. The provisions which dealt with unfair or deceptive acts or practices by a motor vehicle dealer were not inconsistent with *15 U.S.C.S. § 45* or the federal cases interpreting and applying it. *Kopischke v. First Cont'l Corp., 187 Mont. 471, 610 P.2d 668, 1980 Mont. LEXIS 745, CCH Prod. Liab. Rep. P8669, 29 U.C.C. Rep. Serv. (CBC) 454 (Mont. 1980).*

5. Motor home dealer did not violate the requirement of *Mont. Code Ann. § 30-14-103* to avoid engaging in unfair trade practices in a case in which a motor home was sold to the dealer without the consent of a motor home owner because the owner and the dealer did not have a contractual relationship at the time that the owner purchased the home, because the owner lawfully purchased and thus lawfully came into possession of the home, and because the dealer returned the home once she received convincing information that the home was stolen. *Ray v. Stewart, 2002 MT 20N, 2002 Mont. LEXIS 35 (Feb. 1 2002).*

6. In an action alleging an unfair trade practice under *Mont. Code Ann. § 30-14-103* and *Mont. Code Ann. § 45-6-317*, an electric cooperative cutting off a member's service was found to be unreasonable when the member lived in rural area; it was unreasonable for cooperatives to make prospective members pay past members' arrears and to terminate service for non-payment when the member refused. *Howe v. Big Horn Elec. Coop., 206 Mont. 297, 670 P.2d 936, 1983 Mont. LEXIS 805 (Mont. 1983).*

7. The provisions which dealt with unfair or deceptive acts or practices by a motor vehicle dealer were not inconsistent with *15 U.S.C.S. § 45* or the federal cases interpreting and applying it. *Kopischke v. First Cont'l Corp., 187 Mont. 471, 610 P.2d 668, 1980 Mont. LEXIS 745, CCH Prod. Liab. Rep. P8669, 29 U.C.C. Rep. Serv. (CBC) 454 (Mont. 1980).*

8. In an action alleging an unfair trade practice under *Mont. Code Ann. § 30-14-103* and *Mont. Code Ann. § 45-6-317*, an electric cooperative cutting off a member's service was found to be unreasonable when the member lived in rural area; it was unreasonable for cooperatives to make prospective members pay past members' arrears and to terminate service for non-payment when the member refused. *Howe v. Big Horn Elec. Coop., 206 Mont. 297, 670 P.2d 936, 1983 Mont. LEXIS 805 (Mont. 1983).*

9. The purpose of the Unfair Trade Practices and Consumer Protection Act, as stated in *Mont. Code Ann. § 30-14-104*, is to conform to the Federal Trade Commission Act; on the other hand, the purpose of the Unfair Claims Settlement Act, *Mont. Code Ann. § 33-18-201* et seq., is to provide effective state regulation so as to be exempt from federal regulations. Thus, the provisions of the Unfair Trade Practices Act could not be applied with respect to insurance company practices, and an insured seeking to recover attorney's fees and nontaxable costs could not recover under *Mont. Code Ann. § 30-14-103* and *Mont. Code Ann. § 30-14-133*, but was confined to such relief as might arise out of the *Unfair Claims Act. Britton v. Farmers Ins. Group, 221 Mont. 67, 721 P.2d 303, 1986 Mont. LEXIS 880 (Mont. 1986).*

10. Where plaintiffs' complaint alleged that defendants engaged in a fraudulent real estate scheme, defendants' failure to answer and the district court's entry of a default judgment constituted an admission of the allegations contained in the complaint. Defendants' deceptive trade practices supported an award of treble damages. *Williams v. Global Fin. Servs., Inc., 2006 MT 9N, 131 P.3d 571, 2006 Mont. LEXIS 5 (2006).*

11. The purpose of the Unfair Trade Practices and Consumer Protection Act, as stated in *Mont. Code Ann. § 30-14-104*, is to conform to the Federal Trade Commission Act; on the other hand, the purpose of the Unfair Claims Settlement Act, *Mont. Code Ann. § 33-18-201* et seq., is to provide effective state regulation so as to be exempt from federal regulations. Thus, the provisions of the Unfair Trade Practices Act could not be applied with respect to insurance company practices, and an insured seeking to recover attorney's fees and nontaxable costs could not recover under *Mont. Code Ann. § 30-14-103* and *Mont. Code Ann. § 30-14-133*, but was confined to such relief as might arise out of the *Unfair Claims Act. Britton v. Farmers Ins. Group, 221 Mont. 67, 721 P.2d 303, 1986 Mont. LEXIS 880 (Mont. 1986)*.

12. Where plaintiffs' complaint alleged that defendants engaged in a fraudulent real estate scheme, defendants' failure to answer and the district court's entry of a default judgment constituted an admission of the allegations contained in the complaint. Defendants' deceptive trade practices supported an award of treble damages. *Williams v. Global Fin. Servs., Inc., 2006 MT 9N, 131 P.3d 571, 2006 Mont. LEXIS 5 (2006)*.

LEXSTAT MONT. CODE ANNO., § 30-14-142

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH JANUARY 3, 2007 ***

TITLE 30  TRADE AND COMMERCE
CHAPTER 14  UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
PART 1  CONSUMER PROTECTION ACT

### GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION

*Mont. Code Anno., § 30-14-142* (2005)

30-14-142  Penalties.

(1) In addition to any fine that a person might be subject to under subsection (2), a person who violates the terms of an injunction or temporary restraining order issued under *30-14-111* shall forfeit and pay to the state a civil fine of not more than $ 10,000 for each violation. For the purposes of this section, the district court issuing an injunction or temporary restraining order retains jurisdiction and the cause must be continued, and in those cases, the department, acting in the name of the state, may petition for recovery of civil penalties.

(2) In an action brought under *30-14-111*, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by *30-14-103*, the department, upon petition to the court, may recover on behalf of the state a civil fine of not more than $ 10,000 for each violation. The fine provided for in this subsection is in addition to any liability that a person might be subject to under subsection (1).

(3) A person who engages in a fraudulent course of conduct declared unlawful by *30-14-103* shall upon conviction be fined an amount not more than $ 5,000, imprisoned for not more than 1 year, or both, in the discretion of the court. This subsection does not limit any other provision of this part.

(4) For purposes of this section, a willful violation occurs when the party committing the violation knew or should have known that the conduct was a violation of *30-14-103*.

**HISTORY:** En. Sec. 14, Ch. 275, L. 1973; R.C.M. 1947, 85-414; amd. Sec. 8, Ch. 137, L. 1979; amd. Sec. 2, Ch. 394, L. 1979; amd. Sec. 15, Ch. 342, L. 1999; amd. Sec. 6, Ch. 322, L. 2003.

**NOTES:**

Chapter Cross-References

Protection of consumers from unfair practices of corporations, *Art. XIII, sec. 1, Mont. Const.*

Plain Language in Contracts Act, Title 30, ch. 14, part 11.

New motor vehicle warranties -- remedies, Title 61, ch. 4, part 5.

Part Cross-References

Consumer Counsel, *Art. XIII, sec. 2, Mont. Const.*

Policy of Montana Alcoholic Beverage Code, *16-1-101.*

Policy of The Montana Cigarette Sales Act, *16-10-102.*

Violation of consumer reporting agencies' law as violation of part, *31-3-153.*

Montana Consumer Product Safety Act of 1975, Title 50, ch. 30.

Cross-References

Deceptive practices, *45-6-317.*

Deceptive business practices, *45-6-318.*

Chapter Compiler's Comments

*Similarity to Uniform Law:* This chapter is substantially similar to the Uniform Unfair Trade Practices and Consumer Protection Law, which may be found in 29 Suggested State Legislation 141 (1972).

Part Compiler's Comments

*Severability Clause·* Section 18, Ch. 275, L. 1973, read: "If any provision of this act is declared unconstitutional, or the application to any person or circumstances is held invalid, the constitutionality of the remainder of the act and its applicability to other persons and circumstances is not affected."

Compiler's Comments

*2003 Amendment:* Chapter 322 at beginning of (1) inserted initial clause concerning subsection (2); in (2) in first sentence increased maximum fine from $ 1,000 to $ 10,000 and inserted last sentence relating to effect of the fine; and made minor changes in style. Amendment effective April 15, 2003.

*1999 Amendment.* Chapter 342 in (1) and (2) substituted "fine" for "penalty"; in (2) increased fine amount from $ 500 to $ 1,000; in (3) increased fine amount from $ 2,000 to $ 5,000; and made minor changes in style. Amendment effective October 1, 1999.

Chapter Case Notes

*Claims Under Unfair Trade Practices Act Subject to Statute of Limitations on Actions for Constructive Fraud:* As a liability created by statute that is neither a penalty nor a statutory debt, claims brought under the Montana Unfair Trade Practices and Consumer Protection Act of 1973 are subject to the 2-year statute of limitations in *27-2-211. Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003),* following *Royal Ins. Co. v. Roadarmel, 2000 MT 259, 301 M 508, 11 P3d 105 (2000).*

*Exercise of Ordinary Diligence Required in Discovery of Unfair Trade Practices Constituting Fraud for Tolling Statute of Limitations:* For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, ordinary diligence must be exercised by the aggrieved party in discovery of the facts constituting the fraud or deceptive practice. Pursuant to *Johnson v. Barrett, 1999 MT 176, 295 M 254, 983 P2d 925 (1999),* the test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to the plaintiff's investigation. Mere ignorance of the facts will not suffice to toll the statute of limitations. In this case, plaintiff filed an unfair trade practices complaint about 2 years and 9 months after entering an agreement with defendant siding installer, believing at the time that the contract was with the defendant company that manufactured the siding. However, plaintiff showed no affirmative conduct by either defendant that was calculated to obscure the existence of a cause of action, nor were the facts giving rise to the alleged fraud concealed. Thus, plaintiff discovered or should have discovered the facts constituting the alleged fraud when the contract was entered more than 2 years prior to filing suit, so the claim was barred by the 2-year statute of limitations in *27-2-211. Osterman v. Sears, Roebuck & Co., 2003 MT 327, 318 M 342, 80 P3d 435 (2003).*

*Provisions of Act Not Applicable -- Attorney Fees Proper:* The District Court found that the provisions of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 were inapplicable to the subject of this case but that pursuant to the Act the defendant, as prevailing party, was entitled to reasonable attorney fees under *30-14-133.* Appellant contended that since the Act did not apply, award of attorney fees was not appropriate. The Supreme Court affirmed the award, noting that defendant prevailed on the main issue in controversy and that since the action was brought under the Act, reasonable attorney fees were proper. *Dillree v. Devoe, 223 M 47, 724 P2d 171, 43 St. Rep. 1521 (1986).*

*Applicability of Chapter Where No Fraud, Duress, or Undue Influence Present:*   Attorney, minutes before he was to defend client on criminal charges, threatened to withdraw as counsel unless client executed security agreement and quitclaim deed as security for attorney's fee. Attorney had given the instruments to client weeks before trial, but client had failed to execute them. No fraud, duress, or undue influence was found. Under these facts, this chapter has no application. *Matthews v. Berryman, 196 M 49, 637 P2d 822, 38 St. Rep. 2112 (1981).*

Part Case Notes

*Negligence Compared With Violation of Consumer Protection Act:*   The jury found the defendant violated the Consumer Protection Act and was negligent. The trial court applied the comparative negligence statute to reduce the plaintiffs' recovery under the Act. On appeal, the Supreme Court affirmed the reduction of damages, stating that the law as stated in the jury instructions does not allow the separation of the defendant's actions in violation of the Consumer Protection Act from its actions that were negligent. *Evans v. Teakettle Realty, 226 M 363, 736 P2d 472, 44 St. Rep. 723 (1987).*

*Public Service Commission Exempt From Consumer Protection Act:*   The plain meaning of *30-14-105* is that actions and transactions of the Public Service Commission, acting under its statutory authority, are exempt from the *Consumer Protection Act. Rozel Corp. v. Dept. of Public Service Regulation, 226 M 237, 735 P2d 282, 44 St. Rep. 618 (1987).*

*No Individual Cause of Action Concerning Goods Purchased for Business Rather Than for Personal, Family, or Household Purposes:*   When uncontradicted testimony established that a machine had been purchased for use in respondents' business, respondents did not fall within the class of persons who may bring a private action under *30-14-133. Doll v. Major Muffler Centers, Inc., 208 M 401, 687 P2d 48, 41 St. Rep. 429 (1984).*

**NOTES:**

Part Law Review Articles

### MONTANA ARTICLES

Recent Consumer Protection Developments in Montana, Swartley, *37 Mont. L. Rev. 371 (1976).*

The Supreme Court's Changing Attitude Toward Consumer Protection and Its Impact on Montana Prejudgment Remedies, McDermott, *36 Mont. L. Rev. 165 (1975).*

The Supreme Court's Still Changing Attitude Toward Consumer Protection and Its Impact on the Integrity of the Court, McDermott, *37 Mont. L. Rev. 27 (1976).*

### ARTICLES FROM OTHER STATES

Case Law Under the Texas Deceptive Practices--Consumer Protection Act, *33 Baylor L. Rev. 533 (1981).*

Consumer Action Against Unfair or Deceptive Acts or Practices: The Private Use of FTC Jurisprudence, Leuffer & Lipson, 48 George Washington L. Rev. 521 (1980).

Consumer Protection: The Caveat Emptor's New Clothes?, Maher, 59 Law Inst. J. 178 (1985).

Deceptive Trade Practice--Consumer Protection Acts and Their Effect on Product Liability Litigation, Buswell, Stagg, & Myers, *15 Forum 716 (1980).*

Innovative Use of the Deceptive Trade Practices Act, Alderman, *18 Tex. Tech L. Rev. 45 (1987).*

Re-examining New Jersey's Consumer Fraud Act: Loopholes for Professionals?, *7 Seton Hall Legis. J. 45 (1983).*

Symposium: The Developing Law of Consumer Protection, *10 Gonz. L. Rev 319 (1975).*

The Consumer Protection Act Private Right of Action: A Reevaluation, Rowland, *19 Gonz. L. Rev. 673 (1983).*

The Seller's Duty to Disclose Under Consumer Protection Statutes: Defining the Standard of Care, *17 Suffolk U.L. Rev. 721 (1983).*

Chapter Collateral References

Uniform State Antitrust Act, National Conference of Commissioners on Uniform State Laws (1979).

Uniform Trade Secrets Act, National Conference of Commissioners on Uniform State Laws (1979).

When Statute of Limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

Finance company's liability in connection with consumer fraud practice of party selling goods or services. *18 ALR 4th 824.*

Part Collateral References

Uniform Consumer Credit Code (1974), 7 U.L.A. 601.

Uniform Consumer Credit Code (1968), 7 U.L.A. 233.

Uniform Consumer Sales Practices Act (1970), (1971), 7A U.L.A. 3.

Uniform Deceptive Trade Practices Act (1966), 7A U.L.A. 35.

Uniform Deceptive Trade Practices Act (1964), 7A U.L.A. 65.

What goods or property are "used," "second hand," or the like, for purposes of state consumer laws prohibiting claims that such items are new. *59 ALR 4th 1192.*

Award of attorneys' fees in actions under state deceptive trade practice and consumer protection acts. *35 ALR 4th 12.*

When statute of limitations commences to run on action under state deceptive trade practice or consumer protection acts. *18 ALR 4th 1340.*

Practices forbidden by state deceptive trade practice and consumer protection acts. *89 ALR 3d 449.*

Right to private action under state consumer protection act. *62 ALR 3d 169.*

LexisNexis (R) Notes:

CASE NOTES

1. While a litigant, if determined to be a violator may have suffered civil penalties pursuant to *Mont Code Ann. § 30-14-142*, or potential damage to his business, the litigant would not "be convicted" or have "a record." *Harne v. Deadmond, 1998 MT 22, 287 Mont. 255, 954 P.2d 732, 1998 Mont. LEXIS 22, 55 Mont. St. Rep. 80 (1998).*

LEXSTAT MONT. CODE ANNO., § 53-6-155

LexisNexis (R) Montana Code Annotated

*** THIS DOCUMENT IS CURRENT THROUGH THE 2005 SPECIAL SESSION ***
*** ANNOTATIONS CURRENT THROUGH JANUARY 3, 2007 ***

TITLE 53  SOCIAL SERVICES AND INSTITUTIONS
CHAPTER 6  HEALTH CARE SERVICES
PART 1  MEDICAL ASSISTANCE -- MEDICAID

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*Mont. Code Anno., § 53-6-155* (2005)

53-6-155 Definitions.

As used in this part, unless expressly provided otherwise, the following definitions apply:

(1) "Abuse" means conduct by an applicant, recipient, provider, or other person involving disregard of and an unreasonable failure to conform with the statutes, regulations, and rules governing the medical assistance program when the disregard or failure results or may result in an incorrect determination that a person is eligible for medical assistance or payment by a medicaid agency of medical assistance payments to which the provider is not entitled.

(2) "Applicant" means a person:

(a) who has submitted an application for determination of medicaid eligibility to a medicaid agency on the person's own behalf or on behalf of another person; or

(b) on whose behalf an application has been submitted.

(3) "Benefit" means the provision of anything of pecuniary value to or on behalf of a recipient under the medicaid program.

(4) "Claim" means a communication, whether in oral, written, electronic, magnetic, or other form, that is used to claim specific services or items as payable or reimbursable under the medicaid program or that states income, expense, or other information that is or may be used to determine entitlement to or the rate of payment under the medicaid program. The term includes any documents submitted as part of or in support of the claim.

(5) "Department" means the department of public health and human services provided for in *2-15-2201*.

(6) "Document" means any application, claim, form, report, record, writing, or correspondence, whether in written, electronic, magnetic, or other form.

(7) "Fraud" means any conduct or activity prohibited by statute, regulation, or rule involving purposeful or knowing conduct or omission to perform a duty that results in or may result in medicaid payments or benefits to which the applicant, recipient, or provider is not entitled. Fraud includes but is not limited to any conduct or omission under the medicaid program that would constitute a criminal offense under Title 45, chapter 6 or 7.

(8) "Medicaid" means the Montana medical assistance program established under Title 53, chapter 6.

(9) "Medicaid agency" means any agency or entity of state, county, or local government that administers any part of the medicaid program, whether under direct statutory authority or under contract with an authorized agency of the state or federal government. The term includes but is not limited to the department, the department of corrections, local offices of public assistance, and other local and state agencies and their agents, contractors, and employees, when acting with respect to medicaid eligibility, claims processing or payment, utilization review, case management, provider certification, investigation, or other administration of the medicaid program.

(10) "Misappropriation of patient property" means exploitation, deliberate misplacement, or wrongful use or taking of a patient's property, whether temporary or permanent, without authorization by the patient or the patient's designated representative. Misappropriation of patient property includes but is not limited to any conduct with respect to a patient's property that would constitute a criminal offense under Title 45, chapter 6, part 3.

(11) "Patient abuse" means the willful infliction of physical or mental injury of a patient or unreasonable confinement, intimidation, or punishment that results in pain, physical or mental harm, or mental anguish of a patient. Patient abuse includes but is not limited to any conduct with respect to a patient that would constitute a criminal offense under Title 45, chapter 5.

(12) "Patient neglect" means a failure, through inattentiveness, carelessness, or other omission, to provide to a patient goods and services necessary to avoid physical harm, mental anguish, or mental illness when an omission is not caused by factors beyond the person's control or by good faith errors in judgment. Patient neglect includes but is not limited to any conduct with respect to a patient that would constitute a criminal offense under *45-5-208.*

(13) "Provider" means an individual, company, partnership, corporation, institution, facility, or other entity or business association that has enrolled or applied to enroll as a provider of services or items under the medical assistance program established under this part.

(14) "Recipient" means a person:

(a) who has been determined by a medicaid agency to be eligible for medicaid benefits, whether or not the person actually has received any benefits; or

(b) who actually receives medicaid benefits, whether or not determined eligible.

(15) (a) "Records" means medical, professional, business, or financial information and documents, whether in written, electronic, magnetic, microfilm, or other form:

(i) pertaining to the provision of treatment, care, services, or items to a recipient;

(ii) pertaining to the income and expenses of the provider; or

(iii) otherwise relating to or pertaining to a determination of eligibility for or entitlement to payment or reimbursement under the medicaid program.

(b) The term includes all records and documents, regardless of whether the records are required by medicaid laws, regulations, rules, or policies to be made and maintained by the provider.

**HISTORY:** En. Sec. 1, Ch. 354, L. 1995;  amd. Sec. 40, Ch. 571, L. 2001.

**NOTES:**

Title Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Part Cross-References

Institutions and assistance, *Art. XII, sec. 3, Mont. Const.*

Families Achieving Independence in Montana (FAIM) -- financial assistance, Title 53, ch. 4, part 2.

Part Compiler's Comments

*Study of Conversion to Private Coverage:*  Chapter 523, L. 1995, requires the Department of Social and Rehabilitation Services (now Department of Public Health and Human Services) to, if sufficient funds are available from public and private sources, contract with the Legislative Auditor for a study of the conversion and cost-effectiveness of converting Medicaid to a combined private insurance and medical savings accounts program. After the study is completed, if the Office of Budget and Program Planning decides that conversion would be cost-effective, the Department must apply to the United States government for a waiver of Medicaid statutes and rules and, if the waiver is granted, convert

Medicaid to a combined private insurance and medical savings accounts program. The act is effective July 1, 1995, and terminates October 1, 1996.

Compiler's Comments

*2001 Amendment:*   Chapter 571 in definition of medicaid agency in second sentence near beginning after "the department of corrections" substituted "local offices of public assistance" for "county offices of human services and public welfare". Amendment effective July 1, 2001.

*Severability:*   Section 18, Ch. 354, L. 1995, was a severability clause.

*Effective Date:*   Section 19(1), Ch. 354, L. 1995, provided that this section was effective on passage and approval. Approved April 11, 1995.

*Code Commissioner Changes:*   Pursuant to sec. 1, Ch. 546, L. 1995, the Code Commissioner substituted Department of Public Health and Human Services for Department of Social and Rehabilitation Services.

Pursuant to sec. 3, Ch. 546, L. 1995, the Code Commissioner substituted Department of Public Health and Human Services for Department of Health and Environmental Sciences.

Pursuant to sec. 4, Ch. 546, L. 1995, the Code Commissioner substituted Department of Public Health and Human Services for Department of Corrections and Human Services.

Chapter Administrative Rules

*Title 37, chapter 40, ARM* Senior and long-term care services.

*Title 37, chapter 49, ARM* IV-E foster care services.

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Administrative Rules

*Title 37, chapter 82, ARM* Medicaid eligibility.

Title 37, chapter 83, ARM Medicaid for certain Medicare beneficiaries and others.

Title 37, chapter 85, ARM General Medicaid services.

*Title 37, chapter 86, ARM* Medicaid primary care services.

*Title 37, chapter 88, ARM* Medicaid mental health services.

Part Case Notes

*Implied Contracts -- Medicaid Payments:*   The principle underlying the implied contract doctrine is that one person should not be permitted to be unjustly enriched at the expense of another but should be required to make restitution for property or benefits received where it is just and equitable that such restitution be made and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. The circumstances on the record do not justify payment be made on any formula other than the "reasonable costs" formula as set forth in federal Medicaid statutes and regulations. *Flathead Health Center v. Flathead County, 183 M 211, 598 P2d 1111, 36 St. Rep. 1465 (1979).*

**NOTES:**

Title Law Review Articles

Equality in Basic Needs and Services: Constitutional Right to Subsidy and Sharing. Welfare Rights in a Constitutional Democracy. F. I. Michelman. Commentary. R. H. Bork, B. Levin, S. F. Appleton; Panel discussion. Reaching the Private Sphere; Schools, Clubs, Monopolies. Changing Concepts of Equality: From Equality Before the Law to the Welfare State. R. K. Winter, Jr.; Commentary. J. H. Choper, M. B. Wilson; Panel discussion. Wash. U.L.Q. 1979: 659 through 793 (Summer 1979).

Part Law Review Articles

Between Welfare Medicine and Mainstream Entitlement: Medicaid at the Crossroads, Grogan & Patashnik, 28 J. Health Pol., Pol'y & L. 821 (2003).

Get Medicaid Without Giving Up the Farm: A Medicaid Applicant Can Keep His Home and His Eligibility, Sandoval, 142 Tr. & Est. 29 (2003).

Medicaid Eligibility Rules, Knoepfle, 34 Tax Adviser 354 (2003).

Medicaid Eligibility Rules for the Elderly Long-Term Care Applicant: History and Developments, 1965-1998, Ahmad, *20 J. Legal Med. 251 (1999)*.

Balancing the Budget on the Backs of American's Elderly--Section 4734 of the Balanced Budget Act: Criminalization of the Attorney's Role as Advisor and Counselor, Miller, *29 U. Mem. L. Rev. 165 (1998)*.

Criminal Penalty for Assisting With Medicaid Planning Transfers, Coplan, 29 Tax Adviser 17 (1998).

Long-Term Care Financing Crisis--Recent Federal and State Efforts to Deter Asset Transfers as a Means to Gain Medicaid Eligibility, Reich, *74 N.D.L. Rev. 383 (1998)*.

A Creative Strategy for Protecting the Home for Medicaid Purposes, Bove, *24 Est. Plan. 22 (1997)*.

Advising the Elder Client: Trusts and Medicaid Eligibility, Barrett, *43 Prac. Law. 57 (1997)*.

Legal Issues in Securing Home Health Services Under Medicare and Medicaid (Elder Law), Bogart, Chilin, Gottlich, & Stein, *31 Clearinghouse Rev. 199 (1997)*.

The Welfare Law and Its Effects on Medicaid Recipients, *30 Clearinghouse Rev. 1008 (1997)*.

Medicaid Reform: Saving an American Success Story, Graham, *23 Fla. St. U.L. Rev. 917 (1996)*.

Medicaid and the Elderly Poor--A Second Look at the Medicare Catastrophic Coverage Act: Transfer of Assets and Spousal Impoverishment, Finberg & Nemore, *25 Clearinghouse Rev. 1316 (1992)*.

Symposium on Medical Cost Containment, 3 Notre Dame J.L., Ethics, & Pub. Pol'y (1988).

Equal Protection Problems With Welfare Fraud Prosecution (Special Issue: Poverty Law), Collin & Hemmons, *33 Loy. L. Rev. 17 (1987)*.

Health Care Delivery and the Elderly: Teaching Old Patients New Tricks, Kapp, *17 Cum. L. Rev. 437 (1987)*.

Medicare Regulations--Judicial Review, *12 Am. J.L. & Med. 162 (1987)*.

Part Collateral References

Social Security and Public Welfare [Key number] 241.

81 C.J.S. Social Security and Public Welfare § 126, et seq.

*79 Am. Jur. 2d Welfare Laws §§ 33 through 38.*

Supreme Court's views as to construction and application of Medicaid Act *(42 USCS §§ 1396 - 1396s)*. *85 L. Ed. 2d 935,* § 4 b, c .

Grants to States for Medical Assistance Programs, Title 42, ch. 7, subchapter 19, U.S.C.

Montana's Welfare Reform Project: Families Achieving Independence in Montana, FAIM, February 1998 Update, Montana Department of Public Health and Human Services.

Welfare in Montana: A Time for Reform, Interim Report, Mont. Leg. Council (Dec. 1988).