UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| *State of Nevada v. American Home Products, et al.,* CA No. 02-CV-12086-PBS (Nevada II) | Judge Patti B. Saris |

**STATE OF NEVADA'S RESPONSE TO STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

The State of Nevada, by its counsel, hereby responds to the Local Rule 56.1 Statement of

Undisputed Material Facts In Support of Defendants' Motion for Summary Judgment ("Def.

L.R. 56.1 Stmt.") and where necessary counter-designates undisputed facts in opposition to

Defendants' joint motion. Counter-designations of deposition transcripts and documents cited

herein are attached to the Declaration of Jeniphr Breckenridge in Support of the State of

Nevada's Opposition to Certain Defendants' Motion for Summary Judgment and are referred to

as "Breckenridge Decl." The State incorporates and refers herein to the declarations of Charles

Duarte ("Duarte Decl.") and Coleen Lawrence ("Lawrence Decl.") In Support of the State of

Nevada's Opposition to Defendants' Joint Motion For Summary Judgment. These declaration

are submitted herewith.[1]

---

[1] The State also incorporates and refers herein to the exhibits to the State of Montana's Memorandum In Support of Motion For Partial Summary Judgment Against Certain Defendants (Dkt. No. 3731). References to these exhibits are in the form of "MT Summ. J. Ex. __." The State further incorporates and refers to Plaintiffs' Post-Trial Findings of Fact (Dkt. No. 3553). References to this memorandum are in the form of "PFOF ¶ ___."

In addition, the State reserves all evidentiary objections to the use of the evidence by Defendants.

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted that this is a requirement, among other requirements.

7.      Admitted that this is a requirement, among other requirements.

8.      Admitted.

9.      Admitted.

10.      Admitted, but the State counter-designates the fact that these AWPs were submitted to the State via First DataBank ("FDB") and thus were in a format the State could use, unlike AWPs certain Defendants submitted directly to the State on paper.  The State counter-designates the [Nevada] Medicaid Services Manual at § 1202.3 (Breckenridge Decl. Ex. 3).

11.      Denied.  The State counter-designates the [Nevada] Medicaid Services Manual at § 1207 (Inpatient/Other Outpatient Pharmacy Coverage) (Physician-administered drugs are reimbursed at billed charges (Redbook AWP) minus 15%.  "The provider is to enter the Redbook AWP under billed charges on the CMS 1500 and will be reimbursed [on this basis].").

12.      Admitted, but the State counter-designates the facts that although any overpayment for drugs by the State itself may have gone to providers, the ultimate benefit went to the manufacturers in the form of increased profits and market share.

13.     Denied.  The State addresses this legal argument in the State of Montana's Opposition to Defendants' Joint Motion for Summary Judgment at 5-9 ("MT Opp").  The State counter-designates that the document does not support the proposition stated.  The document is also incomplete.

14.     Admitted that AWP is among other material a national industry pricing benchmark that does not vary state-by-state.  Otherwise denied.

15.     Denied.  The State counter-designates that this is not an undisputed fact but is a legal position advocated by the drug manufacturer defendants.  The State further counter-designates that its response refers to the term "benchmark."  There was no negotiation of price.

16.     Admitted that this is, among other material, the contents of the Hartman reports.

17.     Admitted.

18.     Denied.  Ambiguous.  The State counter-designates that the document does not support the proposition stated.  The document is also incomplete.

19.     Denied.  The State counter-designates testimony showing that at times the State did believe that AWP represented an average and that the State's consistent understanding of AWP is that it bore a reasonable relationship to actual prices.  Duarte Tr. Vol. 4 at 23:18-21, 24:3-17 (Breckenridge Decl. Ex. 4)[2]; Lawrence Tr. Vol. 3 at 396, 417, 585 (Breckenridge Decl. Ex. 5); Squartsoff Tr. at 124, 138 (Breckenridge Decl. Ex. 7); Willden Tr. Vol. 1 at 83 (Breckenridge Decl. Ex. 8); Duarte Decl. at ¶¶ 18-19; Lawrence Decl. at ¶¶ 17, 20.

20.     Admitted.  The State counter-designates the following evidence demonstrating that Nevada Medicaid personnel understood that AWP did not equal acquisition costs **and that is why to determine Estimated Acquisition Costs the State applied a discount to the AWP** and that

---

[2] The deposition transcripts referenced herein are indicated as "Tr."

- 3 -

the State understood that AWP bore a reasonable and direct relationship to actual acquisition costs.  Lawrence Tr. Vol. 2 at 228 (Breckenridge Decl. Ex. 5); Macdonald Tr. at 44-45 (Breckenridge Decl. Ex. 6); Duarte Decl. at ¶¶ 18-19; Lawrence Decl. at ¶ 20.  The State also counter-designates testimony that shows that Nevada Medicaid personnel *assumed that AWP bore a rational and direct relationship to the underlying costs of the drugs*.  Duarte Tr. Vol. 4 at 23:18-21, 24:13-17 (Breckenridge Decl. Ex. 4); Lawrence Tr. Vol. 3 at 585 (Breckenridge Decl. Ex. 5); Squartsoff Tr. at 124, 128 (Breckenridge Decl. Ex. 7).

21.     Denied.  The State counter-designates the following evidence demonstrating that Nevada Medicaid personnel understood that AWP did not equal acquisition costs *and that is why to determine Estimated Acquisition Costs the State applied a discount to the AWP* and that the State understood that AWP bore a reasonable and direct relationship to actual acquisition costs. Lawrence Tr. Vol. 2 at 228 (Breckenridge Decl. Ex. 5); Macdonald Tr. at 44-45 (Breckenridge Decl. Ex. 6); Duarte Decl. at ¶ 18-19; Lawrence Decl. at ¶ 20.  The State also counter-designates testimony that shows that Nevada Medicaid personnel *assumed that AWP bore a rational and direct relationship to the underlying costs of the drugs*.  Duarte Tr. Vol. 4 at 23:18-21, 24:13-17 (Breckenridge Decl. Ex. 4); Lawrence Tr. Vol. 3 at 585 (Breckenridge Decl. Ex. 5); Squartsoff Tr. at 124, 138 (Breckenridge Decl. Ex. 7).

22.     Admitted that this is an accurate reproduction of text from Professor Berndt's report.  The State counter-designates that it is taken out of context and that it is opinion, not fact.

23.     The State admits that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this report which predates the relevant time period of the lawsuit.  The State further counter-designates that this is just one statement from a lengthy document.

- 4 -

24.     Admitted that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this report which predates the relevant time period of the lawsuit.  The State further counter-designates that this is just one statement from a lengthy document.

25.     Admitted that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this report which predates the relevant time period of the lawsuit.  The State further counter-designates that this is just one statement from a lengthy document.  The State counter-designates that this report was not directed to Nevada in particular.

26.     Admitted that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this report which predates the relevant time period of the lawsuit.  The State further counter-designates that this is just one statement from a lengthy document.

27.     Admitted that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this report which predates the relevant time period of the lawsuit.  The State further counter-designates that this is just one statement from a lengthy document.

28.     Admitted that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this report which predates the relevant time period of the lawsuit.  The State further counter-designates that this is just one statement from a lengthy document.

29.     Admitted that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this

report which predates the relevant time period of the lawsuit.  The State further counter-designates that this is just one statement from a lengthy document.

30.     Admitted that this is an accurate quotation from the document cited.  The State counter-designates the fact that no State employee has testified to receiving or reviewing this report.

31.     Admitted that Macdonald wrote a letter about a federal report dated March 14, 1986 which, in Macdonald's words "claims an aggregate drug purchase price of 18.85% below AWP realized by pharmacies in Nevada."  Denied that this letter is the best evidence of the report.  The State counter-designates the text of the letter (Def. Ex. 34) which describes Nevada Medicaid's numerous criticisms of the study.

32.     Admitted that the letter discusses these claims.  Denied that this letter is the best evidence of the report.  The State counter-designates the text of the letter (Def. Ex. 34) which describes Nevada Medicaid's numerous criticisms of the study.

33.     Admitted that Nevada received at least 30 unspecified reports at some point on some topic.  Denied that the unspecified 30 reports received by Nevada were necessarily the reports to which Defendants refer.  Denied that the evidence shows that each of the reports was "read" and "discussed" by Nevada pharmacy personnel.  The State can neither admit nor deny that the CMS reports were published on CMS's website for the unspecified period.

34.     Denied.  The report identified is not the report that appears at Def. LR 56.1 State Tab 69.

35.     Admitted, but the State counter-designates the fact that there were other aspects of the studies and the report.

- 6 -

36.     Admitted, but the State counter-designates the fact that there were other aspects of the studies and the report.

37.     Admitted that OIG issued a 1997 report that it stated "consolidated results of our review of pharmacy acquisition costs for brand name drugs reimbursed under the Medicaid prescription drug program."  The report's conclusion is not limited to that stated in Def. L.R. 56.1 ¶ 37.  The "Conclusions and Recommendations" in the report do not include the conclusion cited by Defendants.  The State counter-designates the fact found in the report that the report was based on a survey of 11 states, not including Nevada.

38.     Admitted that Nevada Medicaid retained Myers & Stauffer to prepare a "Margins on Pharmacy Reimbursement Model."  Admitted that Def. L.R. 56.1 Tab 29 is a copy of the Myers & Stauffer margin analysis.  The State counter-designates the fact that "Myers & Stauffer did not perform a study of acquisition costs specific to Nevada."  Def. L.R. 56.1 Tab 58.  The State counter-designates the fact that Myers & Stauffer had a margin analysis tool in existence for other states that it then used in Nevada.  Denied that the other evidence designated supports the facts averred.

39.     The State incorporates its response to Def. L.R. 56.1 ¶ 38.

40.     Denied.

41.     Denied.  The State counter-designates that this statement is too general and too vague as it relates to "experienced pharmacists and other state officials."  The State further counter-designates the fact that the understanding of AWP evolved over time.  The State counter-designates testimony showing that at times the State did believe that AWP represented an average and that the State's understanding of AWP is that it bore a reasonable relationship to actual prices.  Duarte Tr. Vol. 4 at 23:18-21, 24:3-17 (Breckenridge Decl. Ex. 4); Lawrence Tr.

- 7 -

Vol. 3: 396, 417, 585 (Breckenridge Decl. Ex. 5); Squartsoff Tr. at 124, 138 (Breckenridge Decl. Ex. 7); Willden Tr. Vol. 1 at 83 (Breckenridge Decl. Ex. 8); Duarte Decl. at ¶¶ 18-19; Lawrence Decl. at ¶¶ 17, 20.

42.     Admitted.

43.     Admitted.

44.     Denied.  The designated testimony does not support the proposition stated.

45.     Admitted that Mr. Macdonald used the term in his deposition after it was suggested by Defendants.  The State counter-designates testimony in which Mr. Macdonald indicated that this was a "joke" or "lighthearted remarks."  Macdonald Tr. at 48:16-20, 59:5-9, 60:3 (Breckenridge Decl. Ex. 6).

46.     Denied that the designated evidence supports the proposition stated.  The State counter-designates Macdonald testimony indicating that he assumed he would have read reports, but did not recall specific reports and could not say whether he saw particular reports, including the 1984 OIG report referenced by Def. L.R. 56.1 ¶ 46 (Tab 35) or the 1986 OIG report referenced by Def. L.R. 56.1 ¶ 46 (Tab 34).  Macdonald Tr. at 53:9–54:12, 31:1-15 (Breckenridge Decl. Ex. 6).

47.     Admitted that at one point such a change was made.  Denied that the designated evidence supports the proposition stated.

48.     Admitted.

49.     Admitted.

50.     Denied that the designated evidence supports the proposition stated.

51.     Admitted that certain Medicaid officials had *heard* the term.  Denied that certain Medicaid officials "referred to AWP as 'ain't what's made.'"  The State counter-designates the contents of the cited testimony.

52.     Admitted.

53.     Denied.  The State counter-designates Squartsoff testimony that "[she] was not involved in that process" and she would not have known prescription prices.  Squartsoff Tr. at 35:1-15 (Breckenridge Decl. Ex. 7).

54.     Admitted that Mr. Duarte used this term and other language in an email on February 3, 2005 – three years after this lawsuit was filed – to explain the circumstance that only the drug manufacturers knew for sure how AWP and AMP were derived.  Denied that Mr. Duarte used the term before or after in any context.

55.     Admitted that this was Mr. Willden's testimony.  The State counter-designates that this is not consistent with Mr. Duarte's testimony and notes that the details of this alleged conversation, including the date, are unclear.

56.     Admitted that the testimony designated from Duarte Vol. 1 indicates that Mr. Duarte generally reviewed government reports on " prescription drug issues."  Admitted that the testimony designated from Duarte Vol. 3 indicates that Mr. Duarte reviewed a specific report. Otherwise denied.

57.     Denied.  The evidence cited is inadmissible hearsay from a man in Arkansas.

58.     Admitted.

59.     Admitted that this is the figure that Dr. Ebo quoted for 2006-2007.

60.     Denied that the evidence cited supports the proposition.

61.     Admitted.

- 9 -

62.    Denied.  The State cannot determine what this unauthenticated document represents.

63.    Admitted that some Nevada entity (not specified) did so.  Admitted that Dr. Ebo did so otherwise denied.

64.    Admitted.  The State counter-designates that the MMCAP efforts relate to drug purchase only.

65.    Admitted.

66.    Denied.  The State counter-designates that access to the catalog is tightly controlled and is limited to members and their staff who have clearance.  The lawyer's representing the State in this case were initially denied access for discovery purposes.

67.    Denied.  The State counter-designates Squartsoff Tr. at 35:1-15 (Breckenridge Decl. Ex. 7).

68.    Admitted.

69.    The State admits that the document referenced discusses numerous alternatives. The State counter-designates the Conclusions section of the document that discusses the limited nature of the discussion contained in the document and the author's "inability to present a more thorough analysis."

70.    The State incorporates its response to Def. L.R. 56.1 Stmt. ¶ 69.

71.    Denied.  The State counter-designates the text of the document which does not support the proposition.

72.    Admitted.

73.    Admitted that the quotation is an accurate reproduction of language in the document.  Denied Defendants' interpretation of that language.

- 10 -

74.     Admitted that the quotation is an accurate reproduction of language in the document.  Denied Defendants' interpretation of that language.

75.     Denied.  This is opinion testimony by Defendants' experts, not undisputed fact.

76.     Admitted.

77.     Admitted that this was one consideration in setting the reimbursement rate.  The State counter-designates that this was not the only consideration.  The principal consideration was getting as close to actual acquisition cost as possible.  Duarte Tr. Vol. 3 at 50 (Breckenridge Decl. Ex. 4); Duarte Decl. at ¶¶ 17-18.

78.     Denied.  The State counter-designates the text of the letter (Def. Ex. 34) which describes Nevada Medicaid's numerous criticisms of the study.

79.     Denied.  The State counter-designates the text of the letter (Def. Ex. 34) which describes Nevada Medicaid's numerous criticisms of the study.  The State also counter-designates the fact that at best as a result of the study referenced the State had information regarding spreads for certain drugs and not all drugs.

80.     Denied.  The evidence designated does not support the proposition.  The evidence is also hearsay not subject to any exception.  The State also counter-designates the fact that at best as a result of the study referenced the State had information regarding spreads for certain drugs and not all drugs.

81.     Denied.  The evidence designated does not support the proposition.  The evidence is also hearsay not subject to any exception.  The State also counter-designates the fact that at best as a result of the study referenced the State had information regarding spreads for certain drugs and not all drugs.

82.     Admitted.

83.     Denied.  The evidence designated does not support the proposition.

84.     Denied.  This is opinion testimony by Defendants' expert, not undisputed fact.

85.     Denied.  This is opinion testimony by Defendants' expert, not undisputed fact.

86.     Denied.  This is opinion testimony by Defendants' expert, not undisputed fact.

87.     Admitted.

88.     Denied.  The evidence designated does not support the proposition.  The State counter-designates the fact that Mr. Duarte indicates that he did know if the alleged allegation about dispensing fee adequacy.

89.     Admitted that the State received comment and at times met with the pharmacy lobby.  Denied that the rates "were not set at Nevada's understanding of providers' acquisition cost."  The State counter-designates the following testimony establishing the State's objective to get as close to acquisition cost as possible.  Duarte Tr. Vol. 2 at 8 (Breckenridge Decl. Ex. 4); *Id*. Vol. 3 at 50; Lawrence Tr. Vol. 2 at 228 (Breckenridge Decl. Ex. 5); Duarte Decl. at ¶¶ 19, 21-22; Lawrence Decl. at ¶¶ 20, 26.

90.     Admitted that this was Mr. Duarte's testimony at Duarte Tr. Vol. V at 12-13 (Breckenridge Decl. Ex. 4).  Denied that Duarte Tr. Vol. V at 55-57 (Breckenridge Decl. Ex. 4) supports this proposition.

91.     Denied.  The evidence designated does not support the proposition.

92.     Admitted.

93.     Denied.  The State counter-designates that the tables at Tab 39 do not show expenditures for "organizations reporting to Mr. Willden" and the testimony does not cite evidence for 2005.

94.     Admitted that Mr. Willden is aware of the Nevada Public Employees' Benefit Program ("PEBP"), otherwise denied.

95.     Admitted.

96.     Admitted that the Nevada Medicaid program has contracted out benefits to HMOs, otherwise denied.

97.     Admitted.

98.     Denied.  This is opinion testimony by Defendants' expert, not undisputed fact. The State counter-designates evidence that reflects the fact that Medicaid personnel did not have notice of the drug purchasing or reimbursement practices of non-Medicaid state entities and the fact that the same purchasing and reimbursement opportunities are not available to every state entity.  Duarte Tr. Vol. V at 51, 58-59, 68 (Breckenridge Decl. Ex. 4); Lawrence Tr. Vol. 2 at 256 (Breckenridge Decl. Ex. 5); *Id*. Vol. III at 444; Squartsoff Tr. at 115 (Breckenridge Decl. Ex. 7).

99.     Admitted that PEBP engaged such services.  The State counter-designates that Nevada Medicaid did not engage such services or had notice of them.

100.     Admitted that the State entities indicated included the quoted language in their RFPs.  Denied that Nevada Medicaid was involved in these RFPs or had notice of them.

101.     Admitted that Senior Rx sent the letter.  Denied that Nevada Medicaid received the letter or had notice of the letter.

102.     Admitted.

103.     Admitted.

104.     Admitted.

105.     Admitted, but the State counter-designates the fact that Ms. Squartsoff testified only that her name appeared on a listserv and did not indicate whether she "participated" and does not indicate that anyone else from Nevada Medicaid "participated" or appeared on any listserv.  Denied as to Nevada Medicaid employees other than Ms. Squartsoff.

106.     Admitted that Ms. Lawrence's name appeared in a long list of recipients on an email conveying the information, but counter-designate the fact that Ms. Lawrence did not testify to knowledge of this email.

107.     Admitted, but the State counter-designates that this is only one part of the letter.

108.     Admitted, but the State counter-designates that this is only one part of the letter.

109.     Admitted, that some data was received, denied that it was received on that schedule.

110.     Admitted that Nevada did not change its reimbursement scheme.  The State counter-designates evidence reflecting the reasons it could not use the information to change its prices.  Lawrence Decl. at ¶¶ 29-30.

111.     Denied.  This is opinion testimony of Defendants' expert, not undisputed fact.

112.     Denied.  This is opinion testimony of Defendants' expert, not undisputed fact.

113.     Denied.  This is opinion testimony of Defendants' expert, not undisputed fact.

114.     Denied.  This is opinion testimony of Defendants' expert, not undisputed fact.

115.     Denied.  This is opinion testimony of Defendants' expert, not undisputed fact.

116.     Denied.  This is opinion testimony of Defendants' expert, not undisputed fact.

117.     Admitted.

118.     Admitted.

119.     Admitted.

120.     Admitted.

121.     The State states that it is not pursuing claims data or other reimbursement evidence for Medicare Part B co-payments.

122.     Admitted, but the State counter-designated that Defendants had extensive access to post-2002 data through formal (subpoena) and informal (more than one dozen telephone conferences) with the State's fiscal intermediary, First Health Services Corp., and chose not to pursue the information.  The State does not have the data.

123.     The State does not pursue damages for its *parens patriae* claims.

124.     Admitted.

125.     Admitted, that Dr. Hartman does not report the damages or penalties stated.

126.     Admitted that Dr. Hartman did not have data.

127.     See response to Def. L.R. 56.1 Stmt. ¶ 123.

128.     Denied.  The State counter-designates that it was unaware that Defendants claim the data was inadequate.  The State has made its staff available – formally and informally – to Defendants and will continue to do so.  The State also notes that in connection with Defendants' contacts with Nevada claims personnel, Defendants were assisted at all times or nearly all times by their experts, Bates and White.

129.     Admitted, but the State counter-designates that the basis of reimbursement can be determined.

130.     Denied.  There is no testimony about DRUG-MAC-EXC in the designated testimony.

131.     Admitted.

132.     Denied.  This is opinion testimony by Defendants' expert, not fact.

133.    Denied.

134.    Admitted, that Dr. Hartman did not conduct such an analysis in the Nevada case, but counter-designates that Dr. Hartman's opinions in this case are based on his work in all AWP-related cases.

135.    Admitted, but the State counter-designates reflecting the fact that Mr. Duarte and others were not aware of the practice, did not understand the magnitude of the spreads, did not understand its inflationary impact on Medicaid reimbursement and thus could not have properly evaluated them.

136.    Denied.  The State counter-designates Groth Tr. at 61-63 (testimony regarding the importance of profitability (*e.g.*, it is "absolutely" one of Walgreen's goals "to maximize profitability.").  *See* Def. Ex. 88.

## A.    Additional Facts Relied Upon by Montana in Response to Defendants Motion for Summary Judgment

137.    Each of the Defendants caused AWPs to be published for their Subject Drugs in one of two ways:  (i) by sending an AWP or "suggested" AWP directly to a publisher; *or* (ii) by submitting wholesale list price ("WLP"), wholesale acquisition cost ("WAC") or Direct Price ("DP") to the publisher – with the knowledge that the publisher would mark that price up (usually by either 20% or 25%) to achieve the reported AWP.  Company insiders have testified to these practices at trial and at depositions and internal industry documents reflect the same. *See* MT Summ. J. Ex. 2 (Trial Tr. Day 5 at 14 (Buckanavage) ("Q:  And so you felt that AstraZeneca had the ability to set its own AWP, correct?  A:  At that time we submitted those prices to the pricing services."), and at 34:3-9 ("THE WITNESS:  At that time we reported both to the pricing services.  THE COURT:  You reported - THE WITNESS:  Both WAC and AWP. THE COURT:  So you decided what AWP was, not the publication?  THE WITNESS:  At that

time, that's correct.")).  *See also* MT Summ. J. Ex. 3 at AZ0419345-348 (Document entitled

Medicare Review stating that "To date, Medicare has not influenced the AWP of any medication

that qualifies for reimbursement.  Companies have the latitude to set AWP as they wish.").  Once

a new or revised AWP was approved, AstraZeneca would inform the publishers.  MT Summ. J.

Ex. 2 (Trial Tr. Day 5 at 17 (Buckanavage) (Q:  "Now you understood then that your AWP price

would be reported by AstraZeneca to the Red Book, correct?  A: Yes.")).  BMS did not send

AWPs directly to the publishers.  Instead, BMS sent to the publishers a wholesale list price

(WLP) or direct price, which the publishers predictably marked up from 20% to 25% to derive

the AWP.  MT Summ. J. Ex. 4 (Trial Tr. Day 4 at 55, 59 (Kaszuba)).  Kaszuba was responsible,

since 1991, for communicating BMS's wholesale list prices to customers and the *Red Book, First*

*DataBank* and *MediSpan*.  *Id*. at 52 (Kaszuba).  As Plaintiffs' expert opined in the Class case,

there is a well understood formulaic relationship between AWP and WLP.  They are functional

equivalents in that reporting either to the publishers implies that the other price is set

automatically.  "AWP and WAC [or WLP] are 'interchangeable' since the two list prices are

usually related by a constant ration and convey the same information to purchasers and other

entities that rely on published price data."  MT Summ. J. Ex. 5 (Direct Testimony of Raymond S.

Hartman) ("Hartman Direct"), ¶ 44.  J&J predecessor CNTO knew that the publishers would

simply republish what CNTO provided them.  MT Summ. J. Ex. 6 (Deposition of Carol Webb

("Webb Tr.") at 56); *see also* MT Summ. J. Ex. 7 (where CNTO discusses "setting" the AWP,

not recommending or suggesting an AWP).  OBI witnesses testified that they could not recall a

single instance when the actual AWP prices provided by OBI were not published.  *See*, *e.g.*, MT

Summ. J. Ex. 6 (Webb Tr. at 66:16-21, 67:1-8); MT Summ. J. Ex. 8 (Deposition of Thomas

Hiriak ("Hiriak Tr.") (July 28, 2004) at 214:18-215:1); MT Summ. J. Ex. 9 (Deposition of Elaine

Kling ("Kling Tr.") at 103:2-5, 115:21-22, 116:1-22).  Schering-Plough reported the AWPs for

its branded drugs to the publishers of pharmaceutical industry pricing guides such as *Red Book*

and *Price Alert* for publication in those guides.  MT Summ. J. Ex. 10 (Deposition of Harvey J.

Weintraub, February 12, 2003 ("Feb. 2003 Weintraub Tr.") at 429:23-431:1); MT Summ. J.

Ex. 11 ("As you know, Pharmaceutical Manufacturers publish AWPs (Average Wholesale

Prices) for reimbursement purposes.  Most manufacturers (including Schering) report AWPs at

NDP [net direct price] plus 20%.").

      138.    The reporting practices of other, non-trial drug manufacturer defendants were the

same.  *See*, *e.g.*, MT Summ. J. Exs. 12 and 13 (The Fujisawa Group controlled and set the AWPs

for all of its drugs through direct communications with industry compendia.  Fujisawa

documents confirm Fujisawa knowledge of compendium pricing and concern about how to

increase the prices published to even higher levels.) (FJ-MDL 8346) (BBMDL FJ-MDL 015152-

59); MT Summ. J. Ex. 14 (Immunex used the "AWP Product Pricing guide," which listed each

Immunex drug, along with its dose, NDC number and AWP per *Red Book*) (IAWP112178-81);

MT Summ. J. Ex. 15 (Immunex periodically provided Pricing Guides to the publishers or

otherwise provided AWPs) (IAWP002632; IAWP109826); MT Summ. J. Ex. 16 (SICOR 00753-

57, SICOR 02259-65, SICOR 00885-903; SICOR 00947-48, SICOR 00955-58, SICOR 00962,

SICOR 00982-83, SICOR 00987-88); MT Summ. J. Ex. 17 (BAY005278); MT Summ. J. Ex. 18

(Armour Pharmaceutical circulates AWPs list sent to *First DataBank* and states that listing

AWPs was "consistent with industry practice.") (ABAWP 005005-11); MT Summ. J. Ex. 19

(Armour Pharmaceutical send pricing update, including AWPs, to *Red Book*) (ABAWP005163-

71); MT Summ. J. Ex. 20 (Centeon reporting price changes to *First DataBank*) (ABAWP

008440); MT Summ. J. Ex. 21 (2003 email string with price list submitted to publishers)

(EDEY-LABS-0022217-22); MT Summ. J. Ex. 22 (2003 email, Dey writes:  "[A]s a reminder, we (the Contracts Dept.) sends WAC & AWP information on all our products to First Databank (FDB).  Every month we receive a report from FDB that lists all our products and their AWP. So far (within the last three months), I have not found any discrepancies with the prices being reported by FDB in our report and our published AWP.") (EDEY-LABS 0022187-93); MT Summ. J. Ex. 23 (Pharmacia chart reflecting Pharmacia & Upjohn reporting of AWP information to publishers) (PH 025785-94 at PH 025792).  *See also* MT Summ. J. Ex. 36, ¶ 6 (Aventis, Inc.); MT Summ. J. Ex. 37, ¶ 6 (Aventis Behring); MT Summ. J. Ex. 38, ¶¶ 6, 366 (BMS); MT Summ. J. Ex. 54 (Dey Answer to Mont. SAC (Dkt. No. 919), ¶ 388); MT Summ. J. Ex. 39, ¶¶ 6, 412 (Fujisawa); MT Summ. J. Ex. 55 (Immunex Answer to Mont. SAC (Dkt. No. 899), ¶¶ 5, 6); MT Summ. J. Ex. 40, ¶ 6, 438 (J&J); MT Summ. J. Ex. 56 (Schering-Plough Answer to Mont. SAC (Dkt. No. 901), ¶¶ 6, 534); MT Summ. J. Ex. 44, ¶ 6 (Sicor).

139.    Through this system, each Defendant directly controlled what the AWP would be.

140.    The record shows that drug manufacturers were aware of Montana's and other states use of AWP for reimbursement purposes.  MT Summ. J. Ex. 24 (Direct Testimony of Julie-Ann G. Tracy, ¶ 6); *see also* MT Summ. J. Ex. 25 (Deposition of Christopher Iacono ("Iacono Tr."), Vol. I at 126:21-127:16 (the Vice President of Marketing at AstraZeneca (testifying that it is his "general understanding" that AWP was the benchmark for reimbursement from Third-Party Payors)).  MT Summ. J. Ex. 26 (Deposition of Dianne Ihling ("Ihling Tr."), at 90-93, 117-18); MT Summ. J. Ex. 2 (Trial Tr. Day 5 at 142 (Marré)); MT Summ. J. Ex. 27 (Marré Trial Aff., ¶ 10).  MT Summ. J. Ex. 4 (Trial Tr. Day 4 at 62-64 (Kaszuba)); MT Summ. J. Ex. 28 (Deposition of John Akscin ("Akscin Tr."), at 26-27); MT Summ. J. Ex. 29 (Deposition of Marsha Peterson ("Peterson Tr."), at 114-15); MT Summ. J.  Ex. 40 Centocor (CNTO), which

manufactures, markets and sells Remicade, and Ortho Biotech Products, L.P. (OBI), which

markets and sells Procrit, are both corporations that are wholly owned by the parent company

Johnson & Johnson (J&J); MT Summ. J. Ex. 9 (Kling Tr. at 105:2-6); MT Summ. J. Ex. 6

(Webb Tr. at 67:9-22, 68:1-9); MT Summ. J. Ex. 30 (Deposition of Richard W. Zahn,

January 15, 2003 ("Zahn Tr.") at 173:1-23); MT Summ. J. Ex. 31 (Deposition of Debra Kane,

June 15, 2004 ("Kane Tr.") at 34:7-11 ("[AWP] is a price that is used for reimbursement

purposes. . . .")); MT Summ. J. Ex. 32 (RGX0315084-141, at 0315084); *e.g.*, MT Summ. J.

Ex. 33 (Trial Tr. Day 18 at 29 (Weintraub)); MT Summ. J. Ex. 10 (Feb. 2003 Weintraub Tr. at

655:10-13); MT Summ. J. Ex. 33 (Trial Tr. Day 18 at 25-26 (Weintraub)).

141.    All Defendants shared the same understanding that States and other payors based

their drug reimbursement on reported AWPS.  This is reflected in Defendants Answers to this

lawsuit.  *See*, *e.g.*, MT Summ. J. Ex. 34 (Abbott Answer to SAC (Dkt. No. 900), ¶ 5); MT

Summ. J. Ex. 35 (AstraZeneca Answer to Montana SAC (Dkt. No. 896), ¶ 5); MT Summ. J.

Ex. 36 (Aventis Pharmaceutical, Inc. Answer to Montana SAC (Dkt. No. 912), ¶¶ 5, 162); MT

Summ. J. Ex. 37 (Aventis Behring LLC's Answer to Mont. SAC (Dkt. No. 916), ¶ 5); MT

Summ. J. Ex. 38 (BMS Answer to Mont. SAC (Dkt. No. 914), ¶ 5); MT Summ. J. Ex. 39

(Fujisawa Answer to Mont. SAC (Dkt. No. 898), ¶¶ 5, 162); MT Summ. J. Ex. 40 (J&J Answer

to Mont. SAC, ¶¶ 5, 162); MT Summ. J. Ex. 41 (Novartis Answer to Mont. SAC (Dkt. No. 911),

¶ 5); MT Summ. J. Ex. 42 (Pfizer Answer to Mont. SAC (Dkt. No. 908), ¶ 5); MT Summ. J.

Ex. 43 (Pharmacia Answer to Mont. SAC (Dkt. No. 909), ¶ 5); MT Summ. J. Ex. 44 (Sicor

Answer to Mont. SAC (Dkt. No. 932), ¶ 5); MT Summ. J. Ex. 57 (TAP Answer to Mont. SAC

(Dkt. No. 930), ¶ 5).

142.     This understanding is also reflected in other internal defense documents.  *See*, *e.g.*, MT Summ. J. Ex. 45 (Aventis compiles Medicaid and Medicare "Reimbursement Information by State," including "Payment Methodology," for Nevada and numerous other states) (AV-AAA-005243-92); MT Summ. J. Ex. 46 (Immunex communicated prices directly to industry compendia) (IAWP023473; IAWP008102; IAWP016500); MT Summ. J. Ex. 47 (Dey discusses HCFA pricing) (EDEY-LABS-0018690, 18688, EDEY-LABS-0000307-08); MT Summ. J. Ex. 48 (Dey discussing Medicaid reimbursement) (EDEY-LABS-0010325-28); MT Summ. J. Ex. 23 (Pharmacia power point presentation defining AWP as "an artificial pricing index that is used as a common basis for third-party reimbursement to pharmacists and physicians" (PH 025785-94 at 025785, 025793)).

143.     The State could not have determined the spreads between acquisition costs and AWP because true drug prices were considered confidential by the defendant drug manufacturers that were neither publicly revealed nor disclosed to the government or other payors.  Defendants' marketing of the spread to providers was also treated as confidential information.  Plaintiffs' Post Trial Findings of Fact at ¶¶ 77-82, ¶¶ 130-33, ¶¶ 239-51.

144.     Nevada Medicaid had no knowledge of the magnitude of the spreads between acquisition cost and AWP until after this lawsuit was filed.  Lawrence Decl. ¶¶ 36-39; Duarte Decl. ¶¶ 30-44.

By    /s/ Steve W. Berman                                                      DATED:  March 22, 2007

Steve W. Berman
Sean R. Matt
Jeniphr A.E. Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Boston, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Catherine Cortez Masto
Attorney General of the State of Nevada
L. Timothy Terry
Deputy Attorney General
100 N. Carson Street
Carson City,  NV 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **STATE OF NEVADA'S RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on March 22, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By_____/s/ Steve W. Berman_____
      Steve W. Berman
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      (206) 623-7292

- 23 -