**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION**
***IN LIMINE* TO PRECLUDE INTRODUCTION OF EVIDENCE**
**REGARDING THE GOVERNMENT'S PURPORTED "KNOWLEDGE"**

During the Class 2 and Class 3 trial, the primary defense used by the Track 1 Defendants, including AstraZeneca, was that the government "knew" or should have known of the conduct challenged in this litigation. The principal source of this purported "knowledge" was government reports in which either the Office of Inspector General ("OIG") or Government Accounting Office ("GAO") acknowledged, for certain drugs (many of them self-administered), the difference between the amount at which Medicare was reimbursing for those drugs and either the amount at which other agencies were reimbursing for those same drugs or the amount other entities were purchasing those drugs. In its Pretrial Disclosures [Doc. No. 3854], AstraZeneca has identified no less than ***two hundred exhibits***, almost two-thirds of AstraZeneca's entire exhibit list, of these types of documents. However, there is no dispute that none of these documents suggest that any governmental agency knew that AstraZeneca or any other drug company was fraudulently inflating its AWPs or that AstraZeneca or any other drug company was marketing the spread between the AWP and acquisition price for their drugs in order to

induce providers to purchase those drugs.  There is certainly no evidence that any government agency ever sanctioned or approved of AstraZeneca's spread marketing activities.

At the Class 2 and Class 3 trial, this Court allowed evidence regarding government "knowledge" because Defendants argued that at least certain TPP members of Class 2 and Class 3 were sophisticated and therefore had knowledge of the contents of government reports.  In addition, in the Class 3 context, TPPs were not bound by statute, as Class 1 members were here, to reimburse or pay based on AWP.  However, AstraZeneca has never suggested that any Medicare beneficiary had knowledge of the contents of these reports.  Nor would it be appropriate, under any legal theory, to hold that Medicare beneficiaries had constructive knowledge of the contents of government reports.  For all of these reasons, AstraZeneca should not be able to introduce evidence regarding the government's purported "knowledge" at trial.

## I. ASTRAZENECA'S "GOVERNMENT KNOWLEDGE" DOCUMENTS ARE NOT RELEVANT TO THIS TRIAL

The exhibits that AstraZeneca seeks to introduce regarding purported "government knowledge" are not relevant to this trial.  AstraZeneca's Exhibit List includes not only the OIG and GAO reports that were admitted during the Class 2 and Class 3 trial, but also includes proposed legislation, congressional testimony, newspaper articles about government actions, draft reports, correspondence to all types of government officials and documents produced by the OIG from its work files which, absent this litigation, would not have been made public at all.  Notably, not a single one of these documents contains a government acknowledgement or endorsement of AstraZeneca's spread marketing activities.  In addition, there is no evidence whatsoever that any Medicare beneficiary saw any of these documents.

## II. BECAUSE BY STATUTE MEDICARE BENEFICIARIES MUST PAY BASED ON AWP, ANY PURPORTED "KNOWLEDGE" OF THE GOVERNMENT MAY NOT BE IMPUTED TO THEM

Even if this Court determined that there was government "knowledge" in the documents AstraZeneca seeks to admit, any such knowledge would be irrelevant to this trial because, as this Court has previously acknowledged, Medicare beneficiaries *had no choice* but to pay based on AWP. In its Memorandum and Order Re: Motion for Class Certification [Doc No. 1648], this Court held that: "AWP was the basis for drug reimbursement under Medicare Part B for most of the proposed class period." *In re Pharm. Indus. Average Wholesale Pricing Litig.*, 230 F.R.D. 61, 70 (D. Mass. 2005). This Court likewise found that: "Medicare pays 80% of the allowed amount of a covered drug, and the beneficiary is responsible for paying the other 20%. 42 U.S.C. § 13951 (a) (1) (S)." *Id.* at 71. Therefore, MediGap payors were, by statute, making payments based on AWP. Thus, although this Court noted that "[s]ome TPPS [who are MediGap payors] may have greater sophistication with respect to the existence of spreads because they purchase self-administered drugs . . . [that knowledge was irrelevant because] the reimbursement rate is set by statute, not negotiation." *Id.* at 86. Because of this, this Court concluded that, for Class 1, "common factual issues predominate since a typical consumer by statute simply pays a percentage of AWP as a co-pay. *There is therefore no separate factual issue regarding the knowledge and reliance of each class member*." *Id.* at 82 (emphasis added). It further explained that:

> States do have different definitions of reliance and proximate cause. . . . However, in this context, where consumers (elderly people with cancer or another serious disease) make a percentage co-payment based on the stated AWP, there is no indication that different definitions of reliance and causation will matter or cannot be resolved as a matter of law prior to trial. Thus, the common legal and factual issues predominate over the individual ones.

- 3 -

*Id.* at 85 (citations omitted).

And, even if this Court held that Medicare beneficiaries could have somehow used this purported "knowledge," it cannot be imputed to them because there is no agency relationship between HCFA and Medicare beneficiaries. *See* RESTATEMENT (SECOND) OF AGENCY § 272 (1958) ("the liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acted within his power to bind the principal . . ."). Because there is no such relationship between Medicare beneficiaries and HCFA (much less any other government agency), any imputation argument fails.

### III. THIS COURT MAY EXCLUDE IRRELEVANT EVIDENCE

The Federal Rules of Evidence are plain that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Because there is no evidence that anyone at any level of the government knew about AstraZeneca's spread marketing activities, and because other types of government knowledge are not relevant, this type of evidence should be excluded at trial.

Furthermore, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Particularly with this trial, there is a danger that the jury might be confused by the introduction of evidence of government "knowledge." Because any such "knowledge" was not available to Medicare beneficiaries, evidence regarding it should be prohibited at trial. *See Santos v. Sunrise Med., Inc.*, 351 F.3d 587, 592 (1st Cir. 2003) (finding no error where district court presiding over nursing home liability action excluded letter by plaintiffs' counsel to OSHA because introduction of that evidence would have led jury to inquire regarding OSHA's investigations and findings).

WHEREFORE Plaintiffs respectfully request that this Court enter an order precluding the introduction of evidence regarding the government's purported "knowledge," and all other relief that this Court deems just and proper.

DATED:  March 23, 2007				By     /s/ **Steve W. Berman**
  Thomas M. Sobol (BBO#471770)
  Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**

Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on March 23, 2007, I caused copies of **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE INTRODUCTION OF EVIDENCE REGARDING THE GOVERNMENT'S PURPORTED "KNOWLEDGE"** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                      /s/ Steve W. Berman
                                      Steve W. Berman

001534-16 160817 V1