UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE*
TO PRECLUDE INTRODUCTION OF EVIDENCE REGARDING
PURPORTED "KNOWLEDGE" OF THIRD PARTY PAYORS**

During the Class 2 and Class 3 bench trial, AstraZeneca and the remaining Track 1 Defendants focused a good portion of their defense on introducing evidence that Blue Cross Blue Shield of Massachusetts ("BCBSMA") and other Massachusetts third party payors ("TPPs") "knew" about the differences between AWP and acquisition costs.  It is clear from AstraZeneca's pretrial disclosures that, even though this trial is brought on behalf of Medicare beneficiaries, and even though BCBSMA is not a named class representative in this trial, AstraZeneca seeks to introduce evidence of purported TPP "knowledge" to confuse the jury into believing that "everyone knew" about AstraZeneca's conduct.

Evidence regarding so-called TPP "knowledge" should not be permitted at this trial.  Not only is it irrelevant to the claims of Medicare beneficiaries, but it is also potentially misleading to a jury, who may wrongfully conclude that if certain TPPs had certain types of knowledge, there was "industry knowledge" which should be imputed to Medicare beneficiaries.  Because there is no legal theory under which the knowledge of TPPs could be imputed to Medicare beneficiaries, this type of evidence should be excluded at trial.

## I. EVIDENCE REGARDING PURPORTED TPP "KNOWLEDGE" IS NOT RELEVANT TO A CLASS 1 TRIAL

During the Class 2 and Class 3 trial, AstraZeneca and the remaining Track 1 Defendants introduced evidence regarding the "knowledge" of Massachusetts TPPs. However, that trial was both brought on behalf of Massachusetts TPPs and was tried before a Court intimately familiar with this case. Despite these key differences between that trial and the upcoming jury trial, AstraZeneca's pretrial disclosures still indicate that it intends to make this a trial about TPP knowledge. Namely, as indicated in its Pretrial Disclosures [Doc. No. 3853], AstraZeneca has designated the following deposition testimony for use at trial:

| Deponent | Designations | General Subject Matter |
|---|---|---|
| Michael Baca | October 8, 2004 dep. at 4:1-3, 13:20-22, 15:22-16:9, 102:15-22 and 184:18-185:1 | Current Executive Director of Financial Operations for HealthNet primarily responsible for rebate contracts with manufacturers testifying that AWP does not represent an average of actual prices that wholesalers charge for drugs and that AWP is not an actual price paid by anyone in the marketplace. |
| Eric Cannon | September 13, 2004 dep. at 7:5-7, 7:11-14, 8:22-9:2, 51:22-52:18, 53:17-54:4, 147:4-7 and 152:19-153:16 | Director of Pharmacy Services for IHC Health Plans testifying that AWP is a suggested retail price and that AWP is approximately 21-22% higher than WAC and that it is "common knowledge in the industry" that AWP is not an average of actual acquisition costs. Also testifying that he understood that the amount paid for administration services associated with PADs cover physicians' costs. |
| Sheila Cizauskas | March 10, 2006 dep. at 8:6-9, 9:5-8, 123:22-124:4, 125:14-126:16 and 183:12-18 | Senior Director of Provider Contracting for BCBSMA testifying that BCBSMA is now reimbursing based on AWP in the hospital context. |
| James Fanale | June 9, 2006 dep. at 7:7-12, 20:22-21:12 and 120:19-121:11 | Former Senior Vice President for Provider Partnerships and Chief Medical Officer at BCBSMA testifying that different entities can get different discounts. |

- 2 -

| Deponent | Designations | General Subject Matter |
|---|---|---|
| William Fleming | January 11, 2005 dep. at 4:1-3, 12:6-12:10, 18:20-19:8 and 92:7-93:9 | Humana Vice President of Pharmacy and Clinical Integration (*i.e.,* disease management and intervention programs) testifying that "generally speaking" the fact that AWP is not the price paid to acquire drugs is well-known in the industry and that he has heard generally that AWP means "ain't what's paid." |
| Margaret Johnson, R.Ph. | September 22, 2004 dep. at 6:1-6, 7:16-19, 24:19-22, 27:15-19, 27:22-28:4, 28:20-29:4, 30:22-31:19 and 34:7-21 | Executive Pharmacy Director at Horizon testifying that she understood that physicians were making a profit off the difference between AWP and their acquisition costs and that this was well-known within the industry. |
| John Killion | January 6, 2006 dep. at 6:3-5, 122:1-22, 136:20-137:5 and 138:7-139:5 | Senior Director of Ancillary Services for BCBSMA testifying that it was his understanding that when competition for brand name drugs entered the market there were discounts and rebates provided on those drugs and that AWP did not bear a relationship to acquisition cost for this reason. Also testifying that he knew AWP meant "ain't what's paid" while he was employed at Tufts as well. |
| Dale Kramer | July 23, 2004 dep. at 5:4-7, 5:15-20, 11:8-19, 12:6-19, 14:3-7, 14:11-17 and 15:9-14 | Director of Pharmacy Contracting at Kaiser Permanente testifying that his current understanding is that AWP is set by manufacturers and used as a benchmark to negotiate reimbursement rates and is not an actual wholesale price. Also testifying that AWP is somewhere between 20 to 25% higher than WAC. |
| Carol Sidwell | September 17, 2004 dep. at 6:5-6, 6:9-13, 8:17-10:10, 34:4-16, 40:2-8 and 64:7-16 | Manager of Provider Relations at John Deere Health testifying that WAC was AWP minus 16 and two-thirds percent and was not equivalent to the prices paid by wholesalers. Also testifying that she has understood that in providing reimbursement John Deere was providing an element of margin to physicians and pharmacies. |
| Kevin Slavik | September 14, 2004 dep. at 5:2-5, 7:4-7, 44:14-21 and 74:4-13 | Director of Prescription Drug Programs for Blue Cross Blue Shield of Illinois testifying that AWP was a price established by manufacturers as a benchmark to negotiate reimbursement rates and that there is no industry definition of AWP. |

| Deponent | Designations | General Subject Matter |
|---|---|---|
| Steven Thomas | April 5, 2005 dep. at 5:8-10, 5:13-18, 15:4-14, 38:16-39:1 and 39:15-40:4 | Director of National Contract Service at the VA National Acquisition Center testifying that AWP is "pretty meaningless" and that the VA pays far less than AWP and that in his opinion there is nothing that would stop other federal agencies and private payors from doing the same thing. |
| Scott Wert | February 1, 2006 dep. at 5:3-5, 6:22-7:3 and 36:19-37:3 | Vice President of Trade Relations for Health Net Pharmaceutical Services testifying that the difference between acquisition cost and AWP will vary by discounts and rebates given. |

Under the applicable state law, a "deceptive act" is simply one that has the capacity to deceive. *See*, *e.g.*, Ma. Superior Court Civil Practice Jury Instn. § 16.4(2)(a). What TPPs knew or did not know has no bearing on the issues of whether a consumer was deceived.

Likewise, AstraZeneca's Exhibit List [Doc. No. 3854], in addition to being filled with documents related to AstraZeneca's Managed Acquisition Program ("MAP"), discussed in another motion *in limine*, contains numerous contracts with TPPs and other documents relating to purported TPP "knowledge." All of these types of evidence should be excluded at trial.

## II.  THIS COURT MAY EXCLUDE IRRELEVANT OR UNFAIRLY PREJUDICIAL EVIDENCE

The Federal Rules of Evidence are plain that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Evidence regarding alleged "knowledge" of TPPs is not relevant. First, this "knowledge" relates to TPPs and therefore has no relevance to Medicare beneficiaries. There is no legal theory under which knowledge of TPPs could be imputed to Medicare beneficiaries because there is no agency relationship between them. Moreover, even if Medicare beneficiaries had this "knowledge" it would be irrelevant because, as this Court has repeatedly acknowledged, because their co-payments were based on AWP by statute, Medicare beneficiaries could not have avoided the effects of AstraZeneca's conduct. In its Memorandum

and Order Re:  Motion for Class Certification [Doc No. 1648], this Court held that:  "AWP was the basis for drug reimbursement under Medicare Part B for most of the proposed class period." *In re Pharm. Indus. Average Wholesale Pricing Litig.*, 230 F.R.D. 61, 70 (D. Mass. 2005).  This Court likewise found that:  "Medicare pays 80% of the allowed amount of a covered drug, and the beneficiary is responsible for paying the other 20%."  *Id.* at 71 (citing 42 U.S.C. § 13951(a)(1)(S)).  Thus, even if Medicare beneficiaries "knew" about AWP in the way implied by the partial and excerpted testimony designated by AstraZeneca, there is nothing they could have done with that knowledge.

Furthermore, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  FED. R. EVID. 403.  There is a dangerous likelihood that, if TPP knowledge evidence is admitted, the jury might conclude that they should therefore assume Medicare beneficiaries also had such knowledge.  Especially because TPP knowledge evidence is not relevant to what Medicare beneficiaries "knew," the danger of unfair prejudice to Plaintiffs and confusion of the issues justifies excluding it a trial.

WHEREFORE Plaintiffs respectfully request that this Court enter an order precluding the introduction of evidence regarding the purported "knowledge" of third party payors, and all other relief that this Court deems just and proper.

| | |
|---|---|
| DATED:  March 23, 2007 | By    /s/ Steve W. Berman     <br>   Thomas M. Sobol (BBO#471770)<br>   Edward Notargiacomo (BBO#567636)<br>Hagens Berman Sobol Shapiro LLP<br>One Main Street, 4th Floor<br>Cambridge, MA  02142<br>Telephone: (617) 482-3700<br>Facsimile: (617) 482-3003 |

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 8 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

      I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on March 23, 2007, I caused copies of **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE INTRODUCTION OF EVIDENCE REGARDING PURPORTED "KNOWLEDGE" OF THIRD PARTY PAYORS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                                                /s/ Steve W. Berman
                                                                Steve W. Berman