## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE INTRODUCTION OF EVIDENCE REGARDING AMP AND IMS DATA

During the Class 2 and Class 3 bench trial, AstraZeneca introduced evidence regarding its Average Manufacturer's Price ("AMP") for Zoladex® and regarding Zoladex® transaction prices purportedly "available" to purchasers of IMS data.  *See*, *e.g.*, AstraZeneca's Proposed Findings of Fact [Doc. No. 3569] ¶¶ 56-59 (AMP data) and ¶¶ 68-69 (IMS data); AstraZeneca closing argument (Jan. 26, 2007), at 83:23 – 94:9 (AMP data) and 81:17 – 82:4 (IMS data).  While this evidence may have been marginally relevant to the Class 2 and Class 3 trial, it has no relevance to the upcoming Class 1 jury trial because Medicare Part B beneficiaries did not have access to AMP data and did not purchase IMS data.  Moreover, as set forth in Plaintiffs' contemporaneously-filed Motion *in Limine* to Preclude Evidence Regarding the Government's Purported "Knowledge" of AstraZeneca's spread marketing and Motion *in Limine* to Preclude Evidence Regarding Purported "Knowledge" of Third Party Payors, any such knowledge by the government or third party payors ("TPPs") regarding the prices contained in AMP or IMS data may not be imputed to Medicare beneficiaries.  For all of these reasons, evidence regarding Zoladex® pricing reflected in AMP and IMS data should be excluded at trial.

- 1 -

## I.     ZOLADEX PRICING REFLECTED IN EITHER AMP OR IMS DATA IS NOT RELEVANT TO CLASS 1

AMP data is a specific price point calculated solely for the purpose of the Medicaid program.  Rebuttal Testimony of Dr. Raymond Hartman [Doc. No. 3470] ¶ 44.  By law, AMPs must be kept confidential and may only be used for administration of the Medicaid program.  42 U.S.C. § 1396r-8(b)(3)(D).  In addition, the Medicaid Rebate Agreement entered into by manufacturers likewise provides that AMP data is only available to administrators of the Medicaid program.  Hartman Rebuttal ¶ 44.  It is beyond question that no member of Class 1 has ever seen AMP data for Zoladex.®

IMS data is a commercial data source in the pharmaceutical industry.  *See* Hartman Trial Testimony (Nov. 27, 2006), at 38:23-24.  While IMS data contains pricing information about discounts received by various purchasers, it does not track "retroactive discounts" like rebates.  *Id.* at 39:7-11.  The data contained in IMS data is therefore transactional prices only.  *See* Gould Trial Testimony (Dec. 4, 2006), at 75:1-13.  IMS data does not contain any information regarding what TPPs and consumers ultimately reimbursed for drugs.  Hartman Trial Testimony at 92:20 – 93:5.  IMS data also contains *average* prices and cannot tell a purchaser of the data what a particular provider paid for Zoladex.®  Gould Trial Testimony, at 125:9 – 126:4.  IMS data is very expensive.  Hartman Trial Testimony, at 91:21-22.  Likely for partially that reason, the pharmaceutical industry itself is, by far, the largest industry that purchases IMS data.  *Id*. at 91:12-15.  It is beyond question that no member of Class 1 purchased IMS data.

Therefore, no alleged "knowledge" one could have acquired by viewing or purchasing AMP or IMS data may be imputed to Medicare beneficiaries.  Moreover, as more fully set forth in Plaintiffs' Motion *in Limine* to Preclude Evidence Regarding the Government's Purported "Knowledge" of AstraZeneca's spread marketing, any such "knowledge" of the prices contained

in AMP or IMS allegedly known by the government or TPPs can likewise not be imputed to members of Class 1. First, because not even Medicare itself had access to IMS data, knowledge cannot be imputed to Class 1 that does not exist. *See Adams v. Bernard*, No. 00-1248, 2001 Mass. Super. Lexis 470, at *8 (Mass. Super. Ct. Sept. 5, 2001) ("There is no liability for failing to disclose what a person does not know.") (citations omitted) (holding real estate agent's general knowledge of industry was not sufficient to impute knowledge regarding specific real estate transaction where agent had no such knowledge).

Second, with regard to IMS data, there has never been any evidence that Medicare purchased or utilized IMS data. Therefore, AstraZeneca could only argue that the knowledge of TPPs who purchased IMS data could somehow be imputed to Medicare beneficiaries. But, as set forth more fully in Plaintiffs' Motion *in Limine* to Preclude Evidence Regarding Purported "Knowledge" of Third Party Payors, such a far-fetched imputation argument ignores a basic tenant of agency law, which provides that for such imputation to occur there must be an agent-principal relationship in the first instance. *See* RESTATEMENT (SECOND) OF AGENCY § 272 (1958) ("the liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acted within his power to bind the principal . . ."). Because there is no such relationship between Medicare beneficiaries and TPPs, any imputation argument fails.

## THIS COURT MAY EXCLUDE IRRELEVANT EVIDENCE

The Federal Rules of Evidence are plain that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Evidence of Zoladex® pricing contained in AMP or IMS data is not relevant to Medicare beneficiaries.

Furthermore, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.  Particularly with this trial, there is a danger that the jury might be confused by the introduction of evidence of Zoladex® pricing from AMP and IMS data.  AstraZeneca should not be permitted to mislead the jury into thinking that alleged "knowledge" about Zoladex® pricing was "in the air."  Because these types of data were not analyzed by Medicare beneficiaries, they should not be permitted at trial.  *See Santos v. Sunrise Med., Inc.*, 351 F.3d 587, 592 (1st Cir. 2003) (finding no error where district court presiding over nursing home liability action excluded letter by plaintiffs' counsel to OSHA because introduction of that evidence would have led jury to inquire regarding OSHA's investigations and findings).

WHEREFORE Plaintiffs respectfully request that this Court enter an order precluding the introduction of evidence regarding AMP and IMS data, and all other relief that this Court deems just and proper.

DATED:  March 23, 2007         By     /s/ **Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 6 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

      I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on March 23, 2007, I caused copies of **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION IN LIMINE TO EVIDENCE REGARDING AMP AND IMS DATA** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                           /s/ Steve W. Berman
                                           Steve W. Berman