UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE*
TO PRECLUDE INTRODUCTION OF EVIDENCE REGARDING
ASTRAZENECA'S MANAGED ACQUISITION PROGRAM ("MAP")**

During the Class 2 and Class 3 trial, AstraZeneca introduced evidence that third party payors ("TPPs") "knew" about the discounts AstraZeneca was offering physicians for their purchases of Zoladex® because AstraZeneca attempted to offer purportedly similar discounts to IPA Model HMOs and other TPPs who purchased Zoladex® for their participating physicians.[1] AstraZeneca has indicated on its witness list [Doc. No. 3852] that it may call Julie Tracy, the primary AstraZeneca witness who testified about AstraZeneca's MAP program at the Class 2 and Class 3 trial, and AstraZeneca's exhibit list [Doc. No. 3854] contains numerous entries of MAP contracts (*see, e.g.,* Entry Nos. 1019-1022 and 1059). AstraZeneca should not be permitted to introduce this type of evidence at the Class 1 trial. In short, whether AstraZeneca

---

[1] In this motion these AstraZeneca programs are collectively referred to as AstraZeneca's Managed Acquisition Program or "MAP"; however, AstraZeneca introduced evidence at trial regarding various iterations of this program, including, amongst others, the Bill To/Ship To program. This motion seeks to exclude evidence of all such similar programs, regardless of their official titles.

- 1 -

was offering discounts *to TPPs* for their purchases of Zoladex® has no relevance to Medicare Part B beneficiaries, who were required by statute to pay based on AWP.

### I. THE MANAGED ACQUISITION PROGRAM IS NOT RELEVANT TO CLASS 1

AstraZeneca's MAP program is not relevant to Class 1. At the Class 2 and Class 3 trial, AstraZeneca introduced evidence regarding MAP to show that TPPs "knew" that Zoladex® was available at prices less than WAC. However, AstraZeneca never introduced evidence – because it could not – that any Medicare beneficiaries had this knowledge. By AstraZeneca's own admission, "[a] number of the MCOs that received offers of substantial discounts on Zoladex in connection with the MAP program **are members of Classes 2 and 3**." AstraZeneca's Proposed Findings of Fact [Doc. No. 3569] ¶ 45 (emphasis added). In addition, AstraZeneca's MAP contracts all contained confidentiality provisions that would have prohibited the terms of their disclosure.

Indeed, the part of Zeneca selling Zoladex® to physicians (who administered the product to Medicare beneficiaries) had no involvement whatsoever with the part of Zeneca selling Zoladex® to TPPs. Julie Tracy, the witness at the Class 2/Class 3 trial who testified most extensively about AstraZeneca's MAP program, testified that she did not even know that the physician side of the business was engaged in spread marketing. Tracy trial testimony (Dec. 4, 2006) at 51:23-25 ("Absolutely not. This [spread marketing document] is from the sales side of the business, and I would not have even seen this in my years covering Zoladex."). Ms. Tracy testified that the managed care part of the company was "siloed" from the physician side. *Id*. at 38:3-6 at 38:25 – 39:3 ("I deal with managed care and, you know, we're sort of siloed, so I don't have a lot of, you know, intimate knowledge of the other side of the business . . . I would say the physician sales force compared to the managed care sales force were siloed."). AstraZeneca

itself knew that Medicare beneficiaries generally were not enrolled in managed care programs and therefore were not relevant to the MAP program.  *Id*. at 22:3-7 ("At that time, you know, the large majority of the members were not Medicare customers, so that was really not my area.  You know, some of them had some Medicare customers in their member base, but the vast majority were not Medicare.").

Moreover, even if Medicare beneficiaries had this "knowledge" it would be irrelevant because, as this Court has repeatedly acknowledged, because their co-payments were based on AWP by statute, Medicare beneficiaries could not have avoided the effects of AstraZeneca's conduct.  In its Memorandum and Order Re:  Motion for Class Certification [Doc No. 1648], this Court held that:  "AWP was the basis for drug reimbursement under Medicare Part B for most of the proposed class period."  *In re Pharm. Indus. Average Wholesale Pricing Litig*., 230 F.R.D. 61, 70 (D. Mass. 2005).  This Court likewise found that:  "Medicare pays 80% of the allowed amount of a covered drug, and the beneficiary is responsible for paying the other 20%." *Id.* at 71 (citing 42 U.S.C. § 13951 (a)(1)(S)).

## II.  THIS COURT MAY EXCLUDE IRRELEVANT EVIDENCE

For all of these reasons, any evidence regarding AstraZeneca's MAP program should be excluded at trial.  There is no theory under which the alleged "knowledge" obtained by TPPs by virtue of being marketed the MAP program by AstraZeneca is relevant to Medicare beneficiaries who were not even relevant to the part of AstraZeneca devoted to attempting to market that program.  The Federal Rules of Evidence are plain that "[e]vidence which is not relevant is not admissible."  FED. R. EVID. 402.  Any evidence related to the MAP program should be excluded at trial. Furthermore, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence." FED. R. EVID. 403.  Particularly with this trial, there is a danger that the jury might be confused by the introduction of evidence of TPP "knowledge" of MAP discounts. AstraZeneca should not be permitted to mislead the jury into thinking that alleged "knowledge" about Zoladex® pricing was "in the air."  Because any such "knowledge" was not available to Medicare beneficiaries, evidence regarding it should be prohibited at trial.  *See Santos v. Sunrise Med., Inc.*, 351 F.3d 587, 592 (1st Cir. 2003) (finding no error where district court presiding over nursing home liability action excluded letter by plaintiffs' counsel to OSHA because introduction of that evidence would have led jury to inquire regarding OSHA's investigations and findings).

WHEREFORE Plaintiffs respectfully request that this Court enter an order precluding the introduction of evidence regarding AstraZeneca's Managed Acquisition Program ("MAP"), and all other relief that this Court deems just and proper.

DATED:  March 23, 2007                    By     /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 6 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on March 23, 2007, I caused copies of **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION IN LIMINE TO PRECLUDE EVIDENCE REGARDING ASTRAZENECA'S MANAGED ACQUISITION PROGRAM ("MAP")** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                                  /s/ Steve W. Berman
                                                Steve W. Berman

001534-16 159991 V1