## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | CIVIL ACTION NO. 01-CV-12257- |
| ) | PBS |
| _____ ) | |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO: ) | |
| CLASS 1 JURY TRIAL (ASTRAZENECA) ) | |
| _____ ) | |

## DEFENDANT ASTRAZENECA PHARMACEUTICALS LP'S  MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO  EXCLUDE <u>TESTIMONY AND EVIDENCE CONCERNING AGGREGATE DAMAGES</u>

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submits this memorandum of law in support of its motion *in limine*, pursuant to Federal Rules of Evidence 402 and 403 and Federal Rules of Civil Procedure 16, 23, and 37, for an Order excluding from evidence at trial documents and testimony relating to Plaintiffs' calculation of aggregate class-wide damages.[1]  There are several interrelated reasons why Plaintiffs should not be permitted to adduce testimony regarding aggregate damages during the jury trial set to begin on April 30, 2007.

---

[1] AstraZeneca and the other Track 1 Defendants previously moved to preclude Dr. Raymond Hartman's Class 1-related testimony under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).  (Track 1 Defendants' Motion to Preclude the Expert Testimony of Dr. Raymond Hartman in Connection with Classes 1 and 2, or, in the Alternative, for a <u>Daubert</u> Hearing (June 16, 2006) [Docket Entry 2722].)  The Court has never ruled on this motion.  The Court did deny the Track 1 Defendants' renewed <u>Daubert</u> motion with respect to Dr. Hartman's Class 2 and Class 3 testimony (Track 1 Defendants' Renewed Motion to Strike the Expert Testimony of Dr. Raymond Hartman in Connection with the Trial of Class 2 and Class 3 (Jan. 19, 2007) [Docket Entry 3574]), which was provided in the context of a bench, not a jury, trial, where the Court indicated it would evaluate whether criticism under <u>Daubert</u> affected the weight of his testimony.  Here, in the jury context, <u>Daubert</u> takes on added significance.  Accordingly, AstraZeneca renews the request for a ruling with respect to the previously filed <u>Daubert</u> motion as to Dr. Hartman's Class 1 testimony.  As set forth below, however, this motion seeks to exclude aggregate damages testimony and evidence for additional reasons that are independent of the already pending <u>Daubert</u> challenge to Dr. Hartman as it relates to Class 1.

First, because many of the 42 different state consumer protection laws at issue in this case require individual consumers to demonstrate injury and damages as a prerequisite to recovery, a class-wide determination of damages, divorced from such individualized proof of unreimbursed (i.e., not reduced or otherwise covered by insurance or other means) payments made on the basis of AWP (as opposed to billed charges or some other means), would be highly inappropriate, and would impermissibly subject AstraZeneca to greater liability than is permitted under the underlying state statutes and alter its substantive rights in violation of due process.  This fundamental problem is not curable through a *cy pres* or fluid recovery mechanism because such a mechanism, at times used in other settings, is inapplicable in this setting where individualized proof of claims pose significant obstacles to an accurate calculation of class-wide damages.

Second, Plaintiffs' proposed method for calculating class-wide damages inappropriately inflates the aggregate damages number because it fails to take into account the myriad individualized issues of proof and defenses that may preclude class members from recovering.  Divorced from the required individualized proof, Plaintiffs assume proof of the fact of damage as to every unit of Zoladex in the class.  Not only does that assumption fail to address the myriad variations among the 42 state consumer protection laws at issue, it does not take into account a variety of fundamental prerequisites to recovery, such as whether a patient's doctor actually collected the co-payment, whether the patient was responsible for a flat co-payment, whether the co-payment was based on the billed charges and not AWP, or whether recovery is barred by the applicable statute of limitations or other defenses.  Plaintiffs' proposed aggregate

damages calculations also fail to provide deductions for opt-outs or for those who, for a variety of reasons, will never submit a claim (or a sufficient one).

Third, permitting Plaintiffs to adduce testimony on aggregate class-wide damages would be unfairly prejudicial to AstraZeneca and would result in confusion of the issues. Because the jury should not be permitted to award an aggregate judgment, it should not be permitted to hear testimony from Plaintiffs' experts that aggregate damages range in the tens of millions of dollars. Any competing methodology of calculating class-wide damages, divorced from individualized proof that is required of class members in order to recover, would likewise be inaccurate and lead to confusion.

Fourth, aggregate damages have never been contemplated as part of the Class 1 trial. Case Management Order ("CMO") 17, which established the schedule for expert reports to be submitted by Plaintiffs and Defendants, required liability reports only. Moreover, Plaintiffs' submission last week on March 16, 2007 of new expert reports, presenting brand new damage calculations, is well beyond the time contemplated by CMO 17 and the period for expert discovery.[2] A year and a half after the close of fact discovery, and a year after the close of expert discovery, it is highly inappropriate for Plaintiffs to submit new damage calculations with respect to a trial scheduled to begin in a month.

## I.    TESTIMONY REGARDING HYPOTHETICAL AGGREGATE DAMAGES IS IMPERMISSIBLE

---

[2] The new material contained in this report is untimely and improper under Rule 26(a)(2), and should be stricken pursuant to Rules 16 and 37. See also Trilogy Commcn's, Inc. v. Times Fiber Commcn's, Inc., 109 F.3d 739, 745 (Fed. Cir. 1999) (concluding that under Rules 16 and 37, the district court did not abuse its discretion by striking from the record the expert's reports and affidavit that were submitted after the due date); Barrett v. Atl. Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996) (striking the expert testimony of four experts who failed to submit final opinions by the deadline, the district court struck their testimony pursuant to Federal Rules of Civil Procedure 16 and 37); Arnold v. Krause, Inc., 232 F.R.D. 58, 67 (W.D.N.Y. 2004) (excluding expert testimony under Rules 16 and 37).

Where, as here, many of the 42 different state consumer protection statutes require a showing that the Class member did, in fact, sustain injury and damages, the "fact of damage" is an essential element of the claim.[3]  As such, any aggregate damages award that is not tied to individualized proof of actual payments by Class members made on the basis of AWP, is improper and should be disallowed.  Put differently, where "the very fact of injury, apart from the amount of damages, depends almost entirely on individual circumstances," a class-wide determination of damages is inappropriate.  Lester v. Percudani, 217 F.R.D. 345, 352 (M.D. Pa. 2003) ("The issue of damages, a prerequisite of claims under both RICO and the Pennsylvania [Unfair Trade Practices and Consumer Protection Law], presents the court with the prospect of holding hundreds or thousands of individual hearings."); see also Bell Atl. Corp. v. Rochelle Commc'ns Inc., 339 F.3d 294 (5th Cir. 2003) (same in antitrust context).[4]  Such a principle is consistent with constitutional principles and well-established federal jurisprudence.  As the Fifth Circuit has observed, "applicability of the Seventh Amendment is not altered simply

---

[3] See, e.g., Wallis v. Ford Motor Co., 208 S.W.3d 153, 161 (Ark. 2005) ("Once again, the ADTPA only allows a private cause of action to recover 'actual damage or injury.'") (quoting 162 Ark.Code Ann. § 4-88-113(f)); Ziglin v. Players MH, L.P., 36 S.W.3d 786, 790 (Mo. App. 2001) ("The language of this section is plain and unambiguous. . . .  A private cause of action is given only to one who purchases and suffers damage.") (internal quotations and citation omitted)); Peery v. Hansen, 585 P.2d 574, 577 (Ariz. App. 1978) ("It is clear that before a private party may exert a claim under the [consumer protection] statute, he must have been damaged by the prohibited practice.").

[4] See also Cimino v. Pittsburgh Corning Co., 151 F.3d 297, 312 (5th Cir. 1998) ("Substantive law [here Texas law] includes not only the factual elements which must be found to impose liability and fix damages, but also the burdens of going forward with evidence and of persuasion thereon. . . .  None of the foregoing is or can be altered by the utilization of Fed. R. Civ. P. 23(b)(3) . . . ."); Kline v. Coldwell Banker & Co., 508 F.2d 226, 236 & n.8 (9th Cir. 1974) ("It has been suggested that generalized proof of damages might suffice under Rule 23.  But the rule does not eliminate the ultimate need for individual proof of damages by each member of the class.  Nor does it foreclose the right of each defendant to assert his defenses before a jury if one is requested."); Sample v. Monsanto Co., 218 F.R.D. 644, 650 (E.D. Mo. 2003) (rejecting plaintiffs' presumption of "class-wide impact without any consideration of whether the markets or the alleged conspiracy at issue here actually operated in such a manner so as to justify that presumption," noting that the expert "assumes the answer to this critical issue and plaintiffs, in turn, have asked the Court to rely on this conclusion as support for class certification").

because the case is [a] Rule 23(b)(3) class action," nor does use of Rule 23(b)(3) "alter the required elements which must be found to impose liability and fix damages (or the burden of proof thereon) on the identity of the substantive law . . . which determines the elements." <u>Cimino</u>, 151 F.3d at 312 & n.29 (noting that the Rules Enabling Act, 28 U.S.C. § 2072, "mandates that conclusion . . . [as does] *Erie*").

In measuring aggregate damages, Dr. Hartman disregards the necessity for Class members to demonstrate injury and damages to prove their claims,[5] instead assuming that each Class member has sustained injury (and hence damages) cognizable under the relevant state law.  This is particularly problematic where, as here, Plaintiffs' showing of damage must be measured by reference to 42 state consumer protection laws.  <u>See</u> <u>Andrews v. Am. Tel. & Tel. Co.</u>, 95 F.3d 1014, 1025 (11th Cir. 1996) (noting that "problems with trying the individualized elements of the plaintiffs' claims, as well as handling the unique aspects of the 900-number programs, are compounded by the necessity of referencing fifty sets of credit card and consumer protection laws.").  Despite evidence to the contrary, Dr. Hartman fails to incorporate into his model that, in "20% to 30% of cases, the provider does not collect a co-payment" (Merits Report and Declaration of Gregory K. Bell, Ph.D. (Mar. 22, 2006) ("Bell. Decl."), ¶ 152) or may charge an amount below the Medicare-allowed amount (<u>id.</u> ¶ 151).  (<u>See</u> Deposition Tr. of Raymond S. Hartman (Feb. 28, 2006) at 1089: 2-14.)  Similarly, Dr. Hartman overlooks that some of these individuals may be making a flat co-payment, which would

---

[5] It should be noted that Dr. Hartman's model is premised on the computation of damages per "unit" of Zoladex, lacking quantification as to how the co-payment for these units was paid by Class members.  That is, the present model does not allow for a damages calculation on a per-Class member basis.

not necessarily be based on AWP (Bell Decl. ¶ 152).[6]  (See Deposition Tr. of Raymond
S. Hartman (Feb. 28, 2006) at 1089: 2-14.)  Although Dr. Hartman claims that these
factors are de minimus, he has not quantified the significance of these omissions to his
calculation of damages.  (See Deposition Tr. of Raymond S. Hartman (Feb. 28, 2006) at
1089: 2-14.)

        This fundamental problem cannot be cured at some later date through a fluid
recovery (or cy pres) mechanism.  The problem is not how the damages should be
allocated (where fluid recovery may be appropriate), but whether the aggregate damages
contemplated are proper.  Courts have long observed that fluid recovery may not be
permitted to subject a defendant to greater liability or alter its substantive rights.  See,
e.g., Windham v. Am. Brands, Inc., 565 F.2d 59 (4th Cir. 1977); Van Gemert v. Boeing
Co., 553 F.2d 812 (2d Cir. 1977); In re Hotel Tel. Charges, 500 F.2d 86 (9th Cir. 1974);
Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973), vacated on other grounds,
417 U.S. 156 (1974); Dumas v. Albers Med., Inc., No. 03-0640-CV-W-GAF, 2005 WL
2172030 (W.D. Mo. Sept. 7, 2005).  Indeed, such impermissible use of a fluid recovery
mechanism raises questions of constitutional dimension.  See, e.g., Eisen, 479 F.2d at
1018 ("Even if amended Rule 23 could be read . . . to permit any such fantastic
procedure, the courts would have to reject it as an unconstitutional violation of the

---

[6] In this regard, the vagaries of the discovery process by which the class representatives were
certified is instructive.  Investigation as to only a handful of individuals was extensive, and produced
conflicting documentary evidence as to whether, among other things, the putative representatives made any
out-of-pocket payments, when, and under what circumstances, the amounts their providers charged them,
and the extent to which their co-payments were covered in whole or in part by other forms of insurance.
(See generally Transcript of Motion Hearing (Jan. 19, 2006).)  The outcome of that fact-intensive process
was that Plaintiffs could proffer no Class 1 representative with Article III standing for Defendant Schering-
Plough/Warrick Pharmaceuticals.  (See id. at 31.)  For AstraZeneca, of the four representatives proposed
for Class 1, only two were certified as class representatives (one was withdrawn by Plaintiffs).  (Compare
Third Amended Class Action Complaint ¶¶ 14, 17-18, 20, with Class Certification Order ¶ 3 (Jan. 30,
2006).)

requirement of due process of law."); see also, e.g., Parker v. Time Warner Entm't Co., 331 F.3d 13, 22 (2d Cir. 2003) ("It may be that the aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions. If so, such a distortion could create a potentially enormous aggregate recovery for plaintiffs, and thus an *in terrorem* effect on defendants, which may induce unfair settlements. And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award.").

Further, use of fluid recovery here could contravene the mandate of the Rules Enabling Act "that the Rules of Civil Procedure shall not abridge, enlarge or modify any substantive right." Windham, 565 F.2d at 66; see also In re Hotel Tel. Charges, 500 F.2d at 90 ("[A]llowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights under the antitrust statutes. Such enlargement or modification of substantive statutory rights by procedural devices is clearly prohibited by the Enabling Act."); cf. In re Fibreboard Corp., 893 F.2d 706, 711-12 (5th Cir. 1990) (discussing these concerns, and vacating the consolidation of cases by the district court as working a change in the parties' substantive rights under Texas law in a manner barred by the Erie doctrine). This may be so if not all of the state consumer protection statutes, pursuant to which Class 1 is certified, permit for fluid recovery.[7]

---

[7] See, e.g., Oregon R. Civ. P. 32F(2); State ex rel. Nixon v. Am. Tobacco Co., Inc., No. ED 76054, 2000 Mo. App. LEXIS 90, at *40 (Mo. App. Jan. 18, 2000) ("To this court's knowledge, the cy pres doctrine has never been applied in [situations other than in the context of trust instruments] in Missouri. In the case at hand, we are [not dealing with] a charitable trust. As such, the cy pres doctrine has no applicability."), transferred, 34 S.W.3d 122 (Mo. 2000) (not addressing this issue); Reader v. Magma-Superior Copper Co., 515 P.2d 860, 862 (Ariz. 1973) ("In the instant case, we have concluded that this class is completely unmanageable because of the impossibility of distributing to the class without resorting to 'fluid recovery,' which has been stamped as improper by *Eisen* III. The instant case is even more

## II. PLAINTIFFS' METHODOLOGY OF AGGREGATE DAMAGES IS IMPROPERLY INFLATED

Plaintiffs' proposed aggregate damages are computed in a vacuum, isolated from the myriad individualized issues of proof and defenses that may preclude Class members from recovering. Where the "calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is plainly inadequate," a determination of class-wide damages is improper. Corley v. Entergy Corp., 220 F.R.D. 478, 485 (E.D. Tex. 2004) (internal quotations omitted); see also Bell Atl. Corp., 339 F.3d at 302; Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp., 215 F.R.D. 523, 528 (E.D. Tex. 2003), aff'd, 100 Fed. Appx. 296 (5th Cir. 2004) (unpublished opinion). As the Eleventh Circuit has observed, aggregate damages awards are inappropriate where individualized proof of claims pose significant obstacles to the accurate calculation of class-wide damages. See Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1257 (11th Cir. 2003) ("[T]he determination of the amount that each dealer was overcharged during the class period must take place on an individual basis . . . . [T]he considerations that must be taken into account to calculate the correct amount of damages during the claims process reveal the obstacles to entering an aggregate judgment for the class."). Such obstacles may include, as noted in Allapattah:

> (1) accounting for those . . . who either have opted out of the class or not submitted claims; (2) accounting for those . . . whose claims were barred by the [state] statute[s] of limitations; (3) the difficulty of awarding prejudgment interest on a class-wide basis when the applicable amount of interest varies from state to state; and (4) determining whether the [Class

difficult because of the vague and indefinite damage suffered, and the impossibility of the vast majority of the members of the class being able to put a value on their individual damages.").

member's] claims are subject to further reduction by set-off claims asserted by [defendant].

Id.; see also Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y., 198 F.R.D. 41, 47-48 (E.D.N.Y. 2000) (noting that class-wide adjudication of damages improper where, *inter alia*, defendants intended to introduce evidence that some plaintiffs never attempted to mitigate their damages). Importantly, it is improper for an expert to "focus[] . . . on a fictional typical [plaintiff]" rather than attempt to calculate damages sustained by an actual class member. Broussard v. Meineke Dis. Muffler Shops, Inc., 155 F.3d 331, 343 (4th Cir. 1998) ("Plaintiffs attempted to substitute this 'hypothetical or speculative' evidence, divorced from any actual proof of damages, for the proof of individual damages necessary to meet North Carolina's 'reasonable certainty' standard of proof for lost profits awards. That this shortcut was necessary in order for this suit to proceed as a class action should have been a caution signal to the district court that class-wide proof of damages was impermissible.") (citation omitted); see also Sikes v. Teledyne, Inc., 281 F.3d 1350, 1366 (11th Cir. 2002) ("These claims will involve extensive individualized inquiries on the issues of injury and damages—so much so that a class action is not sustainable. The district court presumably recognized this or it would not have employed a presumption on these issues to avoid having to decertify the class. We cannot condone the use of a presumption as a 'shortcut' in resolving issues of injury and damages where such elements are provable by the plaintiffs and are required for recovery.").

Not only does Dr. Hartman's aggregate damages computation fail to take into account the several variations among the 42 state consumer protection laws at issue, by presuming liability, it also fails to account for various prerequisites to recovery, such as

whether a Class member's recovery is:  barred by the state statute of limitations; limited

by the assertion of affirmative defenses under applicable state laws; or precluded because

his or her doctor did not actually collect the co-payment, he or she paid a flat co-payment,

he or she paid no co-payment, or he or she paid a co-payment based on billed charges,

not based on AWP.  Further, Dr. Hartman simply ignores those consumers who have

opted out of the class[8] and those consumers who, for a variety of reasons, will never

submit a claim (or a sufficient one) (see, e.g., Transcript of Motion Hearing (Sept. 12,

2006) at 15: 16-16:-10 (Plaintiffs' counsel noting that, as far as consumer claimants to the

GSK Settlement are concerned, he expects 10 percent or "something in the teens, even

with individual notice" to actually submit a claim).

## III.   PLAINTIFFS' PRESENTATION OF AGGREGATE DAMAGES WOULD BE UNFAIRLY PREJUDICIAL TO ASTRAZENECA AND WOULD RESULT IN CONFUSION OF THE ISSUES

Evidence of aggregate damages should also be excluded because "its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury."  FED. R. EVID. 403; cf. also Kemper/Prime Indus. Partners

v. Montgomery Watson Americas, Inc., No. 97 C 4278, 2004 WL 725223, at *5 n.3

(N.D. Ill. Mar. 31, 2004) (noting that "Plaintiffs' evidence of damages likely would not

be admissible at trial because the probative value of that evidence is unquestionably

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury") (internal quotation marks omitted).  First, presentation of damages figures (ranging

from approximately $25 million to approximately $39 million) is unfairly prejudicial and

---

[8] Although counsel for AstraZeneca has requested that Plaintiffs produce the names of the consumers who have opted out of Class 1, Plaintiffs have refused to disclose any information concerning these consumers, including the number of opt-outs.

misleading both because of the artificially inflated nature of these figures and because of the flaws underlying the calculations, resulting in the overstatement of monetary losses allegedly sustained by Class 1 beneficiaries.[9]  Second, presentation of competing methodologies that produce different results, all of which are inaccurate, will inevitably lead to the confusion of the issues.

## IV.   AGGREGATE DAMAGES HAVE NEVER BEEN CONTEMPLATED AS PART OF THE CLASS 1 TRIAL

As Plaintiffs have represented to the Court, for purposes of the Class 1 trial, they proffer Dr. Hartman solely for the purpose of testifying as to the calculation of aggregate damages.  As Plaintiffs' counsel put it, "[assuming AWP is defined as a statutory term] the only issue that Dr. Hartman has to testify about is essentially a mathematical issue, which is how he went about to calculate what the total amount of damages is." (Transcript of Motion Hearing (June 26, 2006) at 79: 9-12.)[10]

Consequently, Dr. Hartman's testimony as to Class 1 damages should be excluded as beyond the scope of the expert submissions contemplated by the Court.  At the hearing on June 14, 2006, the Court suggested that the trial would address liability only.  See Transcript of Motion Hearing (June 5, 2006) at 14.  Additionally, CMO 17, which established the schedule for expert reports submitted by both Plaintiffs and Defendants in this action, contemplated the exchange of reports on liability only.  (See CMO 17 (Nov.

---

[9] Some of the variability in these figures is attributable to Dr. Hartman's inclusion of damages for 2004 in his aggregate damages.  Damages allegedly incurred for transactions that occurred in 2004 are inadmissible as they are likely to cause jury confusion, in addition to being irrelevant under this Court's November 2, 2006 decision on summary judgment.

[10] Such a conclusion is consistent with Dr. Hartman's concession that he is not an expert on the Medicare Program (see Deposition Transcript of Raymond S. Hartman (Feb. 28, 2006) at 924: 19-925: 1; accord Trial Transcript (Nov. 20, 2006) at 11-14, 109: 11-15), and therefore offers no opinion as to the Medicare system generally.

21, 2005).)[11]  Accordingly, Plaintiffs' evidence pertaining to the calculation of damages should be disregarded as beyond the scope of the Class 1 trial.

## <u>CONCLUSION</u>

For the foregoing reasons, AstraZeneca respectfully requests that this Court exclude evidence concerning aggregate damages, and, in particular, preclude the testimony of Dr. Raymond S. Hartman in its entirety.

Dated:   Boston, Massachusetts
         March 23, 2007

                                    Respectfully Submitted,


                        By:   /s/ Katherine B. Schmeckpeper
                              Nicholas C. Theodorou (BBO # 496730)
                              Michael P. Boudett (BBO # 557858)
                              Katherine B. Schmeckpeper (BBO #663200)
                              FOLEY HOAG LLP
                              155 Seaport Blvd.
                              Boston, Massachusetts  02210
                              Tel:  (617) 832-1000

                              D. Scott Wise
                              Michael S. Flynn
                              Kimberley Harris
                              DAVIS POLK & WARDWELL
                              450 Lexington Avenue
                              New York, New York  10017
                              Tel:  (212) 450-4000

                              Attorneys for AstraZeneca Pharmaceuticals LP

---

[11] Should the Court find expert opinions on the subject of damages to be permissible, AstraZeneca respectfully requests the opportunity to submit expert reports presenting its own methodology for measuring damages.

## **CERTIFICATE OF SERVICE**

       I certify that a true and correct copy of the foregoing was delivered on March 23, 2007 to counsel for plaintiffs and to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, via LexisNexis File & Serve.


                     /s/ Katherine B. Schmeckpeper
                      Katherine B. Schmeckpeper