# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>IN RE PHARMACEUTICAL INDUSTRY )<br>AVERAGE WHOLESALE PRICE )<br>LITIGATION )<br>_____ )<br> )<br>THIS DOCUMENT RELATES TO )<br>CLASS 1 JURY TRIAL )<br>_____ ) | MDL NO. 1456<br><br>CIVIL ACTION NO. 01-CV-12257-PBS<br><br>Hon. Patti B. Saris |

## DEFENDANT ASTRAZENECA PHARMACEUTICALS LP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO GUILTY PLEAS, CIVIL SETTLEMENT AND SAMPLING ACTIVITY

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submits this memorandum of law in support of its motion *in limine*, pursuant to Rules 402 and 403 of the Federal Rules of Evidence, for an Order excluding from evidence at trial documents, testimony, or any reference by counsel to the guilty pleas of AstraZeneca, TAP Pharmaceutical Products, Inc. ("TAP"), and Drs. Saad Antoun, Stanley C. Hopkins, and Robert A. Berkman. AstraZeneca also moves, pursuant to Rules 402, 403 and 408, for exclusion of AstraZeneca's related civil settlement agreement and the Corporate Integrity Agreement ("CIA") incorporated therein. Plaintiffs' recently filed pretrial disclosures include exhibits, deposition designations, and a witness designation relating to these pleas and civil settlement, all of which should be excluded.[1]

---

[1] See, e.g., Pl. Exhs. 1-13; 16; 18; 21-23; 26; 35; 60; 63; 72; 76; 83; 115; 182; 188; 195-97; 376; Dep. Desig. (S. Hopkins), (R. Berkman). It should also be noted that, as of the filing of this motion, plaintiffs have not provided all of the documents and proposed deposition testimony listed in its pre-trial disclosures, and those which they have provided were only made available on March 22, 2007, the day before the filing of this motion. Representations set forth in this memorandum as to the contents of plaintiffs' proposed exhibits and deposition testimony are made on the basis of AstraZeneca's current understanding. AstraZeneca reserves the right to (…continued)

Finally, AstraZeneca also moves to exclude, on the same grounds, all additional documents and testimony relating to sampling activity generally and the plea and/or settlement negotiations with the government.

## BACKGROUND

On June 20, 2003, AstraZeneca pled guilty in the District of Delaware to conspiracy to violate the PDMA, 21 U.S.C. §§ 353(c), 331(t), and 333(b)(1)(B), by "causing the sale of drug [(Zoladex)] samples" in violation of 18 U.S.C. § 371.  Exhibit A[2] (Memorandum of Plea Agreement in United States v. AstraZeneca Pharmaceuticals, LP, Criminal Action No. 03-55 (D. Del.)).  Three physicians, Drs. Saad Antoun, Stanley Hopkins, and Robert Berkman, also pled guilty to violating the PDMA by seeking reimbursements for free samples of Zoladex.  Ex. B (Memorandum of Plea Agreement in United States v. Saad Antoun, M.D., Criminal Action No. 02-13 (D. Del.)); Ex. C (Memorandum of Plea Agreement in United States v. Robert A. Berkman, M.D., Criminal Action No. 03-45 (D. Del.)); Ex. D (Memorandum of Plea Agreement in United States v. Stanley C. Hopkins, M.D., Criminal Action No. 02-127 (D. Del.)).  In addition, TAP Pharmaceutical Products, Inc. ("TAP"), another pharmaceutical company that is not a defendant in this trial, pled guilty to a similar charge in September 2001.  In June 2003, AstraZeneca entered into a civil settlement agreement with the United States government, which incorporated by reference a Corporate Integrity Agreement ("CIA").  Ex. E (Civil settlement agreement); Ex. F (CIA).  Notably, the civil settlement and CIA do not restrict or change the

---

(continued…)
supplement this motion once it has had an adequate opportunity to review plaintiffs' proposed exhibits and deposition testimony.

[2] All Exhibits referenced in support of this Memorandum are attached to the Declaration of Katherine B. Schmeckpeper submitted herewith.

AWPs reported for Zoladex, the company's pricing policies, or the company's ability to offer discounts to physicians.

Plaintiffs' pre-trial disclosures demonstrate that Plaintiffs intend to proffer as evidence at trial documents and testimony relating to these criminal pleas and civil settlement. As this Court correctly recognized during the oral argument on summary judgment motions for Classes 1 and 2, neither AstraZeneca's plea, nor the pleas of TAP or the other doctors, are relevant to the elements of Plaintiffs' claims in this litigation. (See Tr. at 68 (May 23, 2006)). Because they are also unfairly prejudicial, AstraZeneca seeks an Order excluding any documents or testimony relating thereto. In addition and for the same reasons, Defendant AstraZeneca also moves to exclude all documents and testimony relating to sampling generally, as well as materials related to the government's investigation and the plea and/or settlement negotiations with the government.

## **ARGUMENT**

### I. ASTRAZENECA'S PLEA AND RELATED MATERIALS ARE IRRELEVANT AND SHOULD BE EXCLUDED UNDER RULE 402

Evidence is relevant only if it makes the existence of a fact of consequence to the determination of an action more or less probable. FED. R. EVID. 401; see also United States v. Smith, 940 F.2d 710, 713 (1st Cir. 1991); 2-401 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 401.04 (2d ed. 2007) ("Relevance is not inherent in any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."). AstraZeneca's plea to limited instances of sample-billing activity does not make it more or less probable that AstraZeneca engaged in the AWP inflation and marketing activities that Plaintiffs assert violated the 42 state consumer protection laws at issue in this case.

3

Where a party seeks to introduce evidence that does not bear a logical connection to a fact at issue, the court should exclude it under Federal Rule of Evidence 402. Smith, 940 F.2d at 713 (holding evidence properly excluded as irrelevant because Defendant's belief in the legality of his conduct was not a defense to statute prohibiting gun possession by convicted felon); Farrington v. United States, 920 F. Supp. 12, 14 (D.N.H. 1996) (excluding evidence because not relevant to issues being litigated). Accordingly, AstraZeneca's plea should be excluded.

### A.   AstraZeneca's Plea Is Not Relevant to Plaintiffs' Claims

Despite years of litigation, millions of pages of discovery, and now a trial of Class 2 and 3 claims, Plaintiffs have still not been able to show any connection between their allegations of sample-billing and the alleged AstraZeneca AWP inflation scheme. Nonetheless, Plaintiffs persist in asking this Court, and a jury, to assume that the AstraZeneca guilty plea is indicative of nationwide conduct and a corporate sample-billing policy, without any evidentiary basis to support this inferential leap. In fact, all the evidence suggests otherwise. AstraZeneca asks this Court to shut down this improper detour so that the jury can focus on the relevant issues.

#### 1.   The Plea involves limited instances of sampling

AstraZeneca pled guilty to one count of violating the Prescription Drug Marketing Act, which prohibits the sale, purchase, or trade of drug samples.[3] 21 U.S.C. § 353(c)(1). Plaintiffs' Complaint does not allege a claim based on the PDMA. In fact, Plaintiffs could not allege a claim under the PDMA because the PDMA does not afford a private right of action. See 21 U.S.C. § 337(a); see also Talbott v. C.R. Bard, Inc., 63 F.3d 25, 29-30 (1st Cir. 1995). This

---

[3] The PDMA prohibits the sale, purchase, or trade of drug samples that could then be resold to patients and consumers. However, in recognition of the benefit conferred by the distribution of samples by pharmaceutical companies, the PDMA permits manufacturers to disseminate samples in certain circumstances. 21 U.S.C. § 353(d).

litigation simply has nothing to do with drug sampling or the myriad legal requirements that regulate sampling activities by pharmaceutical companies. Nor does the plea have anything to do with AWP or "marketing the spread." The term "AWP" is not even mentioned in the document. The fact that the government investigated possible AWP inflation claims, yet brought no such claim, underscores the unduly prejudicial implications of permitting a jury to hear evidence about the fact of the government's investigation, the plea, and/or settlement negotiations.

Plaintiffs try to manufacture a connection between AstraZeneca's plea and the issues in the Class 1 trial by suggesting that the plea concerns nationwide activity pursuant to company policy. This is flatly contradicted by the plea itself and all of the other evidence in the voluminous record.

First, nothing in AstraZeneca's guilty plea or plea allocution suggests a company policy of billing for samples to increase the alleged AWP spread. See Ex. G (Transcript of the Plea and Sentencing Hearing in United States v. AstraZeneca Pharmaceuticals, LP, Criminal Action No. 03-55 (D. Del.)). In fact, as the prosecutor specifically informed the court during AstraZeneca's plea hearing, "the lower [fine] multiplier [of 1.6] is appropriate here because of the lack of involvement in the illegal marketing scheme by AstraZeneca upper-level management." Id.

Second, the undisputed evidence adduced in discovery demonstrates that AstraZeneca's company policy specifically prohibited encouraging or advising physicians to bill for free samples. AstraZeneca's policy against sample-billing was confirmed by every witness who addressed the issue. See, e.g., Ex. H (Black Dep. at 31:5-15 ("I categorically deny that [sampling billing] was a corporate policy. We never provided samples on a free basis in order to be billed back to Medicare.")); Ex. I (Buckanavage Dep. at 151:8-22 (stating that samples were

5

never used to affect return to practice)); Ex. J (Chen Dep. at 146:8-11 (stating that he was never aware of Zeneca encouraging physicians to seek reimbursement for free samples)); Ex. K (Klein-Zignoli Dep. at 143:8-11 ("When I initially started in urology, they made it extremely clear in training that physicians are not to bill for samples")); Ex. L (Mastrangelo Dep. at 264:3-6 (stating that he was never aware of a time when AstraZeneca encouraged doctors to bill for free samples)); Ex. M (Patterson Dep. at 132:16-20 ("Q. Do you recall the sales force—members of the sales force using—giving samples to physicians for which they could bill Medicare the full AWP?  A. Absolutely not.")); Ex. N (Reisenauer Dep. at 78:18-79:4 ("I know the one general rule, I mean that was echoed by both the Sales Management Department, as was [sic] the Marketing Department, was that these were for sample use only and not to be used, you know, not to be billed, you know, as retail products by the physician.")); Ex. O (Ryan Dep. at 15:14-20 ("Q: [D]id you ever discuss with Doctor Antoun whether he should bill for those samples?  A: "When – no.  First of all, no.  But we – as policy, we state that no samples can ever be billed for.  On every call, we make sure the physicians are aware of that.")).

Finally, the Class 2 & 3 trial further demonstrates the lack of a nationwide sample-billing policy—Plaintiffs were unable to present any evidence demonstrating a nationwide practice that would have impacted Massachusetts or to substantiate a connection between sampling and alleged AWP inflation.

In sum, despite Plaintiffs' considerable time and energy, there is no substance behind Plaintiffs' assertion that sampling misconduct was part of the alleged AWP inflation scheme.  In the absence of any factual support, Plaintiffs cannot be permitted to present the jury with mere speculation and conjecture.

2. <u>Plaintiffs' damages are unrelated to illegal billing for samples</u>

The lack of any factual basis for Plaintiffs' assertion is evidenced by the fact that their expert's damages calculation does not include billed-for samples. When this was pointed out by Defendants prior to the Class 2 & 3 trial, Plaintiffs quickly revised their expert report to include billed samples. But, on the witness stand, Plaintiffs' expert, Dr. Hartman, admitted that his calculation of the number of billed samples was completely baseless. Ex. P (Class 2 & 3 Trial Tr. at 82:11-24 (Nov. 21, 2006)). Dr. Hartman's revised calculations were based on his "hypothesis" that 50% of all Zoladex samples distributed during the class period were improperly billed. When asked how he came to this conclusion, he stated that it was based on "a coin toss." (<u>Id.</u> at 82:24). To say nothing of the implications of this testimony for the Court's view of the adequacy of Dr. Hartman's qualifications and the soundness of his methodology, the testimony was patently groundless, and the Court excluded the revised expert report. (<u>Id.</u> at 83:21-24). On March 16, 2007, Plaintiffs submitted new expert reports for the Class 1 trial with new damages calculations, which do not account for samples.[4] Thus, Plaintiffs' only admissible damages calculation has nothing to do with illegal billing for samples.

**B.    There Is No Connection Between Sampling Activity in the Plea and the Class 1 Representatives**

There is no connection between the Class 1 representatives and the conduct described in AstraZeneca's plea. There is no evidence that: (1) Mr. Townsend or Mr. Howe were injected with samples of Zoladex; (2) Mr. Townsend or Mr. Howe were billed for or paid for Zoladex samples; or (3) Mr. Townsend or Mr. Howe's physicians were encouraged by AstraZeneca to bill

---

[4] AstraZeneca notes that any new material contained in this report is untimely and improper under Federal Rule of Civil Procedure 26(a)(2). (<u>See</u> Def.'s Mot. in Limine to Exclude Expert Testimony Re: Aggregate Damages).

7

for samples or ever did bill for samples.  The Information only identifies two physicians who improperly billed for samples—Dr. Saad Antoun and Dr. Stanley Hopkins.  Ex. Q (Information filed in <u>United States of America v. AstraZeneca Pharmaceuticals, LP.</u>, Criminal Action No. 03-55 (D. Del.) ¶ 8); Ex. R (Information filed by U.S. Attorney in <u>United States v. Saad Antoun, M.D.</u>, Criminal Action No. 02-13 (D. Del.) ¶ 1); Ex. S (Information filed by U.S. Attorney in <u>United States v. Stanley C. Hopkins, M.D.</u>, Criminal Action No. 02-127 (D. Del.) ¶ 1)).  There is no connection between Mr. Townsend or Mr. Howe and any of the doctors who pleaded guilty under the PDMA.

In fact, neither Mr. Townsend or Mr. Howe received Zoladex injections during the time period covered by AstraZeneca's plea.  The Information states that from 1993 to July 1996, in the District of Delaware and elsewhere, certain AstraZeneca employees provided samples to certain urologists free of charge with the intention and expectation that the physician would submit claims for payment for the samples in violation of the PDMA.  Ex. Q (Information filed in <u>United States of America v. AstraZeneca Pharmaceuticals, LP.</u>, Criminal Action No. 03-55 (D. Del.) ¶ 5-6, 8).  Mr. Howe was diagnosed with prostate cancer in or about 2001, long after the time period covered in the plea.  Ex. T (Howe Dep., Nov 16, 2005 at 80).  He did not receive his first Zoladex injection until June 3, 2003.  Ex. U (HOWE 0055, 0073).  Mr. Townsend received his first Zoladex injection on January 28, 1997.  Ex. V (TOWN 0046); Ex. W (Townsend Dep., Nov. 15, 2005 at 70-71).  Accordingly, there is no evidence that either Mr. Townsend or Mr. Howe were impacted in any way by sample-billing activity.

In sum, there is no link between the limited sample billing conduct at issue in the plea and the claims or class representatives in this action.  Plaintiffs cannot use the AstraZeneca plea as a proxy for evidence that does not exist.  In the absence of any evidence connecting the

AstraZeneca plea to the transactions in this litigation, there is no basis to find any documents or testimony relating to the plea relevant to the issues at trial.

### C.     The Pleas of Drs. Antoun, Hopkins, Berkman and TAP are Not Relevant

For the same reasons, the pleas of Drs. Antoun, Berkman and Hopkins, and TAP, all of whom pled guilty to violating the PDMA, are irrelevant and should be excluded. As previously stated, Plaintiffs have not made claims under the PDMA in this litigation. Moreover, none of these three doctors treated either of the class representatives, Mr. Howe and Mr. Townsend. (See Def.'s Mot. in Limine to Exclude Evidence Pertaining to Absent Class Members). In addition, TAP is not a defendant in this trial and pled guilty to a sampling violation involving a drug that is not at issue in this litigation. In sum, there is no logical connection between the activities that formed the basis for these pleas and the claims at issue in this litigation. Accordingly, the guilty pleas of these doctors and TAP, as well as any related documents and testimony, should be excluded under Rule 402.

## II.    EVIDENCE CONCERNING THESE GUILTY PLEAS AND RELATED MATERIALS IS UNFAIRLY PREJUDICIAL AND SHOULD BE EXCLUDED UNDER RULE 403

### A.     Evidence Concerning Guilty Pleas Is Unfairly Prejudicial

These materials should also be excluded because their probative value is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403; Williams v. Drake, 146 F.3d 44, 48 (1st Cir. 1998) ("Rule 403 allows the exclusion of evidence which, though relevant, carries unwanted baggage, such as unfair prejudice or potential juror confusion."). Under Rule 403, a court must balance "the probative value of the need for the evidence against the harm likely to result from its admission." FED. R. EVID. 403 advisory committee's note. In this case,

the unfair prejudice that would accompany admission of these plea-related materials far exceeds any probative value.  The admission of this evidence would result in substantial and manifestly unfair prejudice to AstraZeneca and would likely result in a jury verdict that is not based upon "the legitimate probative force of the evidence," but rather, "the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means."  22 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE & PROCEDURE: Evidence 2d § 5215 (2005).

Courts have expressed heightened concern over the prejudice attendant to the admission of prior judicial findings.  Judicial findings present a considerable danger of unfair prejudice because they "bear the imprimatur" of the courts and are likely to carry undue weight with the jury.  Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1125, 1160-61 (E.D. Pa. 1980) (finding investigative findings of the U.S. Customs Service inadmissible "because the findings bear the imprimatur of the United States government and use language . . . that may unduly influence the jury, they present a substantial danger of unfair prejudice, similar to that presented by the admission of a prior verdict against an antitrust defendant in another case").  As the First Circuit explained, "[a] lay jury is quite likely to give special weight to judicial findings merely because they are judicial findings. . . . Consequently, courts, recognizing the attendant danger of jury confusion and unfair prejudice, frequently have approved the exclusion of judicial findings, convictions, and similar evidence on Rule 403 grounds."  Faigin v. Kelly, 184 F.3d 67, 80 (1st Cir. 1999) (upholding trial court's exclusion of Rule 11 sanction issued against plaintiff in former litigation between the parties) (citing cases); see also PharmaStem Therapeutics, Inc. v. Viacell Inc., No. 02-148, 2003 U.S. Dist. LEXIS 17137, at *9 (D. Del. Sept. 30, 2003) (excluding decision of the European Patent Office from evidence because "[a]n opinion, although of a quasi-judicial or administrative body and albeit that of a foreign

jurisdiction, carries with it a certain imprimatur, which creates a substantial risk that the jury will give its conclusions undue deference").

The risk of unfair prejudice is particularly acute in the case of prior criminal convictions or guilty pleas that are claimed to be relevant to conduct in a subsequent civil suit.  The First Circuit has cautioned that the danger of unfair prejudice is especially severe in the case of "evidence of a judicial determination of prior illegal conduct on the part of the defendant" because, quoting Wigmore, "[t]he deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury."  Int'l Shoe Machine Corp. v. United Shoe Mach. Corp., 315 F.2d 449, 459 (1st Cir. 1963) (noting the "well settled" principle that "evidence that a defendant had, in the past, committed illegal acts is not admissible to show that he has a proclivity towards similar wrongs in a subsequent proceeding").

In recognition of the substantial and manifestly unfair prejudice which inevitably accompanies prior criminal convictions, trial courts frequently exclude such evidence on the basis of unfair prejudice.  For instance, in Gil-De-Rebollo v. Miami Heat Ass'ns, Inc., the defendant, a team mascot for the Miami Heat, was convicted of a criminal misdemeanor battery charge arising from his attempt to strong-arm a fan onto the basketball court. 137 F.3d 56, 59-60 (1st Cir. 1998).  The First Circuit approved the trial court's exclusion of the conviction from plaintiff's subsequent civil tort action because, "[u]nder the circumstances, admission of [plaintiff's] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own."  Id. at 64; see also Williams, 146 F.3d at 48 (affirming, in a related civil suit, exclusion of guilty plea previously entered by plaintiff before prison disciplinary board because "[t]he jury might have been tempted to find against Williams solely

11

on the basis that he admitted guilt to the Board" rather than focusing on the central issue of whether the correctional officer used excessive force); Diaz v. Cianci, 737 F.2d 138, 139-40 (1st Cir. 1984) (excluding, in related civil suit, plaintiff's conviction for assaulting police officer during same event because of great possibility of prejudice); Coleman Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351 (3d Cir. 1975) ("A jury is likely to give a prior verdict against the same defendant more weight than it warrants."). This Court must not allow Plaintiffs to capitalize on this very tendency which the Federal Rules were designed to prevent.[5]

### III. EVIDENCE CONCERNING ASTRAZENECA'S CIVIL SETTLEMENT AND CIA SHOULD BE EXCLUDED UNDER RULE 408

AstraZeneca's civil settlement agreement, and the Corporate Integrity Agreement incorporated therein, as well as any materials related to negotiations with the government concerning the plea agreement or civil settlement, should also be excluded from evidence at trial, for all of the reasons mentioned above, and in addition under Federal Rule of Evidence 408. FED. R. EVID. 408. Rule 408 explicitly bars the admission of settlement agreements or negotiations in federal trials to prove the validity or invalidity of any claim. Id. The Rule applies to settlement agreements between the parties, or between one of the litigants and a third party, as in the instant case. McInnis v. A.M.F., Inc., 765 F.2d 240, 247 (1st Cir. 1985) (granting new trial because

---

[5] Furthermore, this Court should exclude evidence of the limited sampling activity indicated in the June 2003 plea because it would only serve as an unnecessary and time-intensive distraction, as AstraZeneca will be forced to present evidence concerning its sampling procedures and policies related thereto, the lack of any connection between the pricing of Zoladex and sampling activities, the limited scope of sampling activity at issue in the various pleas, the lack of any nexus to Mr. Howe or Mr. Townsend, not to mention the lack of any nexus between the pleas and Plaintiffs' experts' testimony. See FED. R. EVID. 403 (permitting trial court to exclude evidence "if its probative value is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"); Elgabri v. Lekas, 964 F.2d 1255, 1261 (1st Cir. 1992) ("[I]t [is] well within the [trial] court's discretion" to exclude evidence that "though marginally relevant, [is] only tangentially related to the issue at hand.").

district court erred in admitting evidence of plaintiff's settlement). The rationale for the rule is twofold: (1) it promotes a public policy favoring settlement; and (2) evidence of settlement "is of questionable relevance on the issue of liability or the value of a claim, since settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions." Id. (citing Rule 408 advisory committee note).

AstraZeneca anticipates that Plaintiffs, as they have done before, will attempt to use the civil settlement to suggest the existence of broader criminal conduct which encompasses the civil claims alleged in this action.[6] As the Court is well aware, such an inference is exactly the type prohibited by Federal Rule of Evidence 408, and belies any pretext that Plaintiffs might offer for its admissibility in the Class 1 trial. Id. In this case, any inference that the settlement is indicative of liability for alleged AWP inflation is not only impermissible under Rule 408, but is also unwarranted for the further reason that AstraZeneca expressly did not admit liability for any AWP-related conduct in the agreement. Further, the civil settlement and CIA do not restrict or change the AWPs reported for Zoladex, the company's pricing policies, or the company's ability to discount in sales of physicians.

## CONCLUSION

For the foregoing reasons, AstraZeneca respectfully requests that this Court enter an Order excluding all evidence of and questions concerning AstraZeneca's plea, the government's investigation, the negotiations regarding the plea and/or civil settlement agreement, the CIA, the

---

[6] Plaintiffs explicitly made this argument in response to Defendant's Motion in Limine to Exclude Evidence Relating to Guilty Pleas and Sampling Activity in the Class 2 & 3 trial, arguing that AstraZeneca's civil settlement with the United States and various state Medicaid programs "must account for some other injury resulting from AstraZeneca's criminal activities." (Pls.' Opp'n at 10).

13

guilty pleas of Dr. Antoun, Dr. Berkman, Dr. Hopkins, and TAP, and any evidence of sampling generally.

Dated:  Boston, Massachusetts
        March 23, 2007

Respectfully Submitted,

By:   /s/ Katherine B. Schmeckpeper
      Nicholas C. Theodorou (BBO # 496730)
      Michael P. Boudett (BBO # 558757)
      Katherine B. Schmeckpeper (BBO #663200)
      FOLEY HOAG LLP
      155 Seaport Blvd.
      Boston, Massachusetts 02210
      Tel: (617) 832-1000

      D. Scott Wise
      Michael S. Flynn
      Kimberley Harris
      DAVIS POLK & WARDWELL
      450 Lexington Avenue
      New York, New York 10017
      Tel: (212) 450-4000

      Attorneys for AstraZeneca Pharmaceuticals LP

# **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing was delivered on March 23, 2007 to counsel for plaintiffs and to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, via LexisNexis File & Serve.

                          By: /s/ Katherine B. Schmeckpeper
                               Katherine B. Schmeckpeper