# **<u>EXHIBIT G</u>**

16

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Action |
| Plaintiff, | : | |
| v. | : | |
| ASTRAZENECA PHARMACEUTICALS LP, | : | |
| Defendant. | : CR No. 03-55-JJF | |

- - -

Wilmington, Delaware
Friday, June 20, 2003
1:02 p.m.

- - -

BEFORE: HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

APPEARANCES:

      BETH MOSKOW-SCHNOLL, ESQ.
      Assistant United States Attorney

          Counsel for Plaintiff

      KATHLEEN JENNINGS-HOSTETTER, ESQ.
        -and-
      JOHN C. DODDS, ESQ.
      Morgan, Lewis & Bockius, LP
      (Philadelphia, PA)

          Counsel for Defendant

- - -


Plaintiff's Exhibit
1
01-12257-PBS

2

MS. MOSKOW-SCHNOLL:  Now is the time the Court has set for plea and sentencing in United States of America versus AstraZeneca Pharmaceuticals LP.  I have a motion and order to unseal the information and a motion for lifting the seal of the qui tam complaint, the original executed plea agreement, and original executed waiver of indictment form, which I will hand up to the Court.

THE COURT:  Thank you.

MS. JENNINGS:  Good afternoon, Your Honor. Kathleen Jennings.  I would like to introduce Mr. John C. Dodds from Morgan, Lewis & Bockius, who will be handling the plea.  And seated at counsel table, also, is Glen Engelmann, who is the vice president and general counsel and compliance officer for AstraZeneca Pharmaceuticals.

THE COURT:  All right.  Thank you.  Good afternoon.  Do you want to step up to the podium, Mr. Engelmann.

MR. ENGELMANN:  Yes, Your Honor.

THE COURT:  Good afternoon.

MR. ENGELMANN:  Good afternoon.

THE COURT:  All right.  I have been handed a waiver of indictment, indicating that you are willing to on behalf of the defendant, AstraZeneca Pharmaceuticals LP, *waive indictment.  I have to ask you some questions so that I* can satisfy myself that this is an authorized act and it's

WC_PLEX_00000003

3

being done voluntarily.  All this will be done under oath by
an oath administered by the clerk of the Court.  It's
important you give truthful responses, because if it's later
found out that responses were untruthful, the government can
make a decision to file a separate charge for perjury or
making a false statement.  That charge could be filed against
you individually.  Do you understand that?

     MR. ENGELMANN: Yes, I do, Your Honor.

     THE COURT:  I will ask the clerk to administer an
oath.

     (Mr. Engelmann sworn.)

     THE COURT:  All right.  First I have to ask you
some questions to determine your authority to act on behalf
of AstraZeneca.  Could you first tell me for the record your
position with AstraZeneca?

     MR. ENGELMANN:  Yes.  I am vice president,
general counsel, and compliance officer for AstraZeneca
Pharmaceuticals LP.

     THE COURT:  Could you tell me under what
authority from the board of directors or some other entity in
corporate governance that you are acting and testifying here
on behalf of AstraZeneca today?

     MR. ENGELMANN:  I am acting pursuant to a
resolution and an act of the board of directors of
AstraZeneca PLC, the parent company for AstraZeneca

WC_PLEX_00000003

4

Pharmaceuticals LP, as well as a resolution of the

AstraZeneca leadership team, which is the government body for

AstraZeneca Pharmaceuticals LP.

THE COURT:  And you have personally reviewed

those resolutions?  Do you have copies of them with you

today?

MR. ENGELMANN:  I do not have copies of them with

me today, but, yes, I have reviewed them.

MR. DODDS:  Your Honor, we have attached to the

memorandum of plea agreement acknowledgements of authority to

enter into the plea that has been executed by Mr. Engelmann.

THE COURT:  All right.  First I am going to ask

you some questions about the waiver of indictment that has

been executed.  Have you had a chance to review this with Mr.

Dodds?

MR. ENGELMANN:  Yes, I have, Your Honor.

THE COURT:  I am going to go through it with you

just to be certain you have a complete understanding.  You

understand that AstraZeneca Pharmaceuticals LP has been

accused of violating 18 United States Code Section 371, which

charges conspiracy to violate the Prescription Drug Marketing

Act, and that you have been advised fully of these charges

and the rights that the corporation possesses, and that you

are hereby knowingly, voluntarily, and intelligently waiving

prosecution by indictment and consenting to these proceedings

5

going forward by filing of an information on behalf of the government, and that only?

        MR. ENGELMANN:  That's correct.

        THE COURT:  Do you understand that if you did not waive indictment, that the defendant corporation could not be charged with this offense unless the grand jury were to find probable cause to believe that the offenses were committed and in fact that they voted to return the indictment?

        MR. ENGELMANN:  Yes, I do, Your Honor.

        THE COURT:  Do you understand the grand jury actually meets and is composed of at least 16 but not more than 23 laypersons, and at least 12 of those grand jurors would have to vote to find probable cause to believe that the defendant corporation committed the offenses that are contained in the information before an indictment could be returned?

        MR. ENGELMANN:  Yes, I do.

        THE COURT:  And you understand by waiving indictment that the government is going to be proceeding by simply filing this piece of paper, a document called an information, and no further process will take place, and you will face the charges on the basis of this information alone?

        MR. ENGELMANN:  Yes, I do.

        THE COURT:  And you understand that you had a

6

full opportunity to discuss these charges with counsel, in this case Mr. Dodds and Ms. Jennings-Hostetter, and that you fully understand what you are doing with regard to these charges in exercising the act pursuant to a resolution to waive indictment?

MR. ENGELMANN: Yes, Your Honor.

THE COURT: Has anybody threatened you personally or to your knowledge the corporation or is anybody in any way coercing you personally or the corporation to get you to waive indictment?

MR. ENGELMANN: No, Your Honor.

THE COURT: I am going to accept the waiver of indictment, finding that on behalf of the corporation it's being done knowingly and voluntarily, without any threat or coercion. I am going to file the waiver with the clerk in open court.

Mr. Engelmann, you remain under oath. I am going to turn now to the charges specifically and the offer, as I understand it, of a guilty plea by the defendant corporation.

If at any time I ask a question that you feel you want to consult with counsel, I want you to feel free to do that.

MR. ENGELMANN: Thank you, Your Honor.

THE COURT: Now, the charges that have been brought pursuant to the information, as I have told you,

essentially charge that AstraZeneca violated Title 18,

Section 371, which broadly charges a conspiracy.  Do you

understand that?

MR. ENGELMANN:  Yes, I do.

THE COURT:  Have you reviewed this information

completely with Mr. Dodds?

MR. ENGELMANN:  Yes, I have.

THE COURT:  Do you want me to read the

information as it's been presented here in court, or are you

satisfied that you understand what it contains and that you

are fully informed to act on behalf of the corporation?

MR. ENGELMANN:  No, Your Honor, that won't be

necessary.  I am fully informed.

THE COURT:  Now, in this information, there are

certain elements that I am interested in understanding, that

AstraZeneca knows that it committed a crime by committing

these elements, which, when considered as a whole, constitute

the offense that you are charged with.  Can you tell me in

your own words what AstraZeneca did that makes it believe

it's guilty of the offense charged in the information?

MR. ENGELMANN:  Yes, Your Honor.  AstraZeneca

Pharmaceuticals LP, as you know, is headquartered in

Wilmington, Delaware.  It is the successor to the

pharmaceutical business of Zeneca, Inc.

Beginning in the early 1990s, Zeneca sold a drug

8

called Zoladex to urologists across the country, including to urologists practicing in Delaware.  Urologists who have purchased Zoladex include Drs. Said Antoun and Dr. Stanley Hopkins, who are identified in the information.

Beginning in or about 1993, and continuing at least until July 1996, some Zeneca employees provided free samples of Zoladex to physicians, knowing and expecting that certain of those physicians would prescribe and administer samples to their patients and thereafter seek and receive reimbursement, in violation of the Pharmaceutical Drug Marketing Act.

When this was done, one of the objectives was to induce the physicians to order Zoladex.  It was an objective of the physicians to bill for the free samples in order to increase their income.  As described in the information, on various dates from late 1995 to July 1996, employees of Zeneca provided Dr. Antoun with approximately 195 free samples of Zoladex.  We understand that on various dates from late 1995 to at least July 1996 Dr. Antoun sought and received reimbursement for at least a portion of these samples.  As also described in the information, on various dates from January 1995 until July 1996, some employees of Zeneca provided Dr. Stanley Hopkins with approximately 223 free samples of Zoladex.  We understand that on various dates from January 1995 to July 1996, Dr. Hopkins sought and

WC_PLEX_00000003

9

received reimbursement for at least a portion of these
samples.

THE COURT:  All right.  Ms. Moskow-Schnoll, does
the United States have a proffer?

MS. MOSKOW-SCHNOLL:  Your Honor, if you would
like one, we do have one.

THE COURT:  Yes.

MS. MOSKOW-SCHNOLL:  It is very similar to the
defendant's proffer.  From 1990 until the present, Zeneca
sold a drug called Zoladex, which was subject to the
requirements of the federal Food, Drug and Cosmetic Act.
During the relevant time period, Zeneca had approval to
distribute Zoladex for the treatment of prostate cancer and
the drug was marketed at least in the -- starting in the
early 1990s, it was marketed, sold, and provided to
urologists across the country for the treatment of prostate
cancer.  In fact, the drug was sold directly to urologists by
the company.

Beginning in or about 1993 and continuing to at
least July 1996, the defendant, which is called Zeneca here,
through its employees, provided thousands of free samples of
Zoladex to physicians knowing and expecting that certain of
those physicians would prescribe and administer those drug
samples to their patients and thereafter seek and receive
reimbursement for the free samples.

WC_PLEX_00000003

The objective for Zeneca was to obtain money from the increased sales of Zoladex, while the objective for the physicians was to obtain money for reimbursement for the samples of Zoladex.   Therefore, it was an objective of Zeneca in this conspiracy to provide free samples of Zoladex to induce the urologists to order Zoladex.   And it was an objective of some of the physicians participating in the conspiracy to bill for the free samples in order to increase their income.

THE COURT:   Essentially, it sounds like what you told me.   Do you agree with the government's proffer?

MR. ENGELMANN:   Yes.

THE COURT:   And that was the conduct of AstraZeneca, or the defendant?

MR. ENGELMANN:   Yes, it was, Your Honor.

THE COURT:   All right.   I have been told and given a memorandum of plea agreement that the parties have entered into.   Have you had a chance to review this?

MR. ENGELMANN:   Yes, I have, Your Honor.

THE COURT:   Now, this memorandum of plea agreement sets forth a lot of information about the negotiation that occurred between the defendant and the United States Government.   And what I want to be sure is, are all the promises and representations that were made to the corporate defendant to get it to plead guilty contained in

this written document?

MR. ENGELMANN:  Yes, Your Honor.

THE COURT:  I want to specifically direct your attention to Page 2.  You are aware that this plea, if I accept it, is a plea that is being taken under Federal Rule of Criminal Procedure 11(c)(1)(C), what we would commonly refer to as a C plea, and for that reason, there is specific information about sentencing contained in this memorandum of plea agreement?

MR. ENGELMANN:  Yes.

THE COURT:  And I am going to review this with you.  That the specific information about sentencing, if I accept this plea, that I am agreeing to accept, as well as the defendant, is as follows?

A criminal fine in the amount of $63,872,156 will be paid by AstraZeneca at sentencing.  Do you understand that?

MR. ENGELMANN:  Yes, I do, Your Honor.

THE COURT:  B.  Pursuant to 18 United States Code Section 3013, a mandatory special assessment of $400 will be paid by AstraZeneca at sentencing.

MR. ENGELMANN:  Yes.

THE COURT:  C.  In light of the civil settlement agreement between AstraZeneca and the United States which is attached to this memorandum of plea agreement, the parties

12

have agreed that the complication and prolongation of the
sentencing process that would result from an attempt to
fashion a proper restitution order outweighs the need to
provide restitution to the victims in this case, where as
here the loss suffered by each of the federal health care
programs will be recompensed fully from amounts that would be
paid as part of the civil settlement agreement.

MR. ENGELMANN:  Yes.

THE COURT:  And therefore, the United States
agrees that it will not seek a separate restitution order as
part of the resolution of the information, and the parties
agree that the appropriate disposition of this case does not
include a restitution order.

MR. ENGELMANN:  Yes.

THE COURT:  Ms. Moskow-Schnoll, is there any
other penalty that has been agreed to between the parties
that's not in this memorandum of plea agreement?

MS. MOSKOW-SCHNOLL:  Your Honor, there is.  There
is a range of probation of from one year to five years.
While it hasn't been agreed upon, we have discussed it.  We
believe one year is appropriate in this situation, although
that has not been part of the plea agreement.

THE COURT:  All right.  Let me ask you this
question:  If I were to accept the government's
recommendation and impose a one-year period of probation, you

13

understand that I could do that and that would be a
consequence of your plea?

MR. ENGELMANN:  Yes, I do, Your Honor.

THE COURT:  As I understand it, and I would
appreciate it if the government would put it on the record,
there is also a connection here to a civil settlement.

MS. MOSKOW-SCHNOLL:  Yes, Your Honor.

THE COURT:  That will be a condition of the
probation.

MS. MOSKOW-SCHNOLL:  Right.  The memorandum of
plea agreement, the provision that the Court just read aloud,
refers to the civil settlement agreement, which is
incorporated within the memorandum of plea agreement.  And
that calls for additional payments.  And the total of all the
payments is 354.9 million dollars.

THE COURT:  And you understand that?

MR. ENGELMANN:  Yes, I do, Your Honor.

THE COURT:  So by incorporating, it means that
it's enforceable through this plea, and through this
memorandum of plea agreement during any supervision by the
Court of the company.

MR. ENGELMANN:  Yes, I understand that.

THE COURT:  Mr. Dodds, is there anything we
should add about this C plea?

MR. DODDS:  No, Your Honor, nothing else.

THE COURT:  I am going to ask you some additional questions.  First, you understand that the defendant has the right to plead not guilty, and to persist in that plea, and there is nothing that can cause it to plead guilty, other than the organization's own choice.

Do you understand that?

MR. ENGELMANN:  Yes.

THE COURT:  Do you understand that the organization has the right to be tried by a jury and at that trial has the right to the assistance of counsel and to confront and cross-examine witnesses against the organization?  Do you understand that.

MR. ENGELMANN:  Yes.

THE COURT:  Do you understand if the organization pleads guilty, there will not be any trial of any kind.  This matter for all intents and purposes will be at an end?

MR. ENGELMANN:  Yes.

THE COURT:  Do you understand that by pleading guilty for the organization, you waive the organization's right to that trial?

MR. ENGELMANN:  Yes, I do.

THE COURT:  Do you understand that the questions I have asked you under oath about the offense subject you to the penalties I have talked about earlier about the facts of the offense?



MR. ENGELMANN:  Yes, I do, Your Honor.

THE COURT:  Do you understand or have any dispute with that every essential element of the offense charged has been met by the evidence, both by your own admission and by the government's proffer?

MR. ENGELMANN:  No, I don't dispute that.

THE COURT:  All right.  Lastly, you understand that this conviction for the type of crime that you are pleading guilty to could have consequences that may not be contemplated at this time for a corporation that does business in the United States or outside the United States, because this conviction is a serious crime?  I don't know and can't enumerate what those consequences may be, but sometimes they lead to the prohibition to do business.  Do you understand that?

MR. ENGELMANN:  Yes, we do, Your Honor.

THE COURT:  Mr. Dodds, is there anything else that you think I should inquire before I accept this guilty plea?

MR. DODDS:  No, Your Honor.

THE COURT:  Ms. Moskow-Schnoll?

MS. MOSKOW-SCHNOLL:  No, Your Honor.

THE COURT:  Based on the responses I have been given here during this proceeding, I find that the offer of a guilty plea by Mr. Engelmann is being done with the authority

of the defendant corporation, it's being done voluntarily, with full knowledge of the consequences. I further find that there is no coercion or threat. And I find that there is a basis in fact for the defendant corporation to enter this guilty plea, both by its admission and by its acceptance of the government's proffer.

For all these reasons, I now adjudge the defendant corporation guilty of Count One of the information.

All right. Ms. Moskow-Schnoll, as I understand it, there is an application that is jointly made that sentencing takes place without a presentence report.

MS. MOSKOW-SCHNOLL: Yes, Your Honor.

THE COURT: Mr. Dodds, is that correct?

MR. DODDS: That's correct, Your Honor.

THE COURT: Mr. Engelmann, I am going to recognize you. You have the opportunity to speak on behalf of the defendant prior to my imposition of a sentence.

MR. ENGELMANN: Thank you, Your Honor. Just briefly.

We accept responsibility for and we regret the improper sampling activity that took place years ago and has led to this guilty plea today.

AstraZeneca has made compliance and accountability a major focus of our new company. We are committed to maintaining a comprehensive compliance program

WC_PLEX_00000003

17

that we have in place today and we will continue to conduct
our business in a lawful and ethical manner.

Thank you.

THE COURT:  All right.  Thank you.

Mr. Dodds, is there anything that you would like
to say on behalf of the defendant corporation?

MR. DODDS:  No, Your Honor.  Thank you.

THE COURT:  Ms. Moskow-Schnoll, anything on
behalf of the United States?

MS. MOSKOW-SCHNOLL:  Yes, Your Honor.

The United States submits that one year of
probation is appropriate because pursuant to the corporate
integrity agreement the defendant will be under supervision
by Health & Human Services for five years, during which
period AstraZeneca must promote through internal training and
other policies and programs marketing and sales practices
that are in full compliance with the law.  If AstraZeneca
fails to comply with the terms of the corporate integrity
agreement, it faces exclusion from the Medicare program.
Thus, any lengthier term of probation simply would be
unnecessary.

Regarding the appropriateness of the $63,872,156
fine, the loss amount that that is based on, $39,920,098,
forms the basis for the fine, was determined after a lengthy,
painstaking and extensive review of Zoladex sales and

reimbursement figures by accounting experts that were consulted by both parties. Secondly, the 1.6 multiplier that was used in arriving at the fine figure represents the lower end of a very narrow range. In an analogous case that was prosecuted in the District of Massachusetts, the multiplier chosen was 2. Either way, compared to that case or standing on its own, the lower multiplier is appropriate here because of the lack of involvement in the illegal marketing scheme by AstraZeneca upper-level management and because of AstraZeneca's cooperation during the investigation of the case.

THE COURT: All right. Thank you. I have accepted the plea as offered under Rule 11. I find that sentencing without a presentence report, as permitted by Rule 32(c)(1)(A)(ii), is appropriate, because the information that is presently in the record, after an extensive investigation by the United States Government as well as the partners of that government and the cooperation of the defendant corporation, enables me to meaningfully exercise my authority to sentence under 18 United States Code Section 3553.

Therefore, I am prepared to impose sentence at this time as follows.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, AstraZeneca Pharmaceuticals LP, is placed on probation for one year.

19

During the period of probation, the defendant organization shall not commit another federal, state or local crime.  As a special condition of this probation, AstraZeneca is to comply with the terms of the civil settlement agreement requiring payment to the United States and to the participating state Medicaid programs in the amount of $291,027,844.  Where, as here, the loss suffered by each of the federal health care programs and the participating state Medicaid programs will be recompensed fully from amounts that will be paid as part of the civil settlement agreement, a criminal restitution order will not be entered.

In addition, the Court is ordering a fine of $63,872,156.  This fine has been calculated in the following way.  Pursuant to United States Sentencing Guideline Section 8C2.4 and 18 United States Code Section 3571 Subpart (d), the loss to the United States from this offense for criminal sentencing purposes is $39,920,098.  Pursuant to United States Sentencing Guidelines section 8C2.5, the culpability score is 8, based on a base score of 5, under Sentencing Guidelines Section 8C2.5 Subpart (a), with 5 added pursuant to United States Sentencing Guideline Section 8C2.5(b)(1)(A)(i), and two points deducted pursuant to Sentencing Guideline Section 8C2.5(g)(2) for Astra-Zeneca's acceptance of responsibility.  Pursuant to United States Sentencing Guideline 8C2.6, the applicable range for the

WC_PLEX_00000003

multiplier is 1.6 to 3.2, and the appropriate multiplier is 1.6.

The fine should be collected by the clerk of the United States District Court for the District of Delaware, and as I said before, be due immediately.

I am going to order a special assessment of $400, which is also due immediately.

Now, I don't think this is going to apply in this case, but it is my obligation to tell you this because there is a rule that says I have to. If you believe any part or all of this sentence is illegal in any way, you can appeal this sentence by letting Mr. Dodds know or by writing a letter to me, and I would file that letter and your case would move to the Court of Appeals in Philadelphia.

Do you understand your right to appeal the appeals?

MR. ENGELMANN: Yes, I do, Your Honor.

THE COURT: Mr. Dodds, anything further?

MR. DODDS: Nothing further, Your Honor.

THE COURT: Ms. Moskow-Schnoll?

MS. MOSKOW-SCHNOLL: Your Honor, I was just wondering if the Court has signed the motion to unseal so that matter is public.

THE COURT: I am going to sign it in open court at this time. And that means that the matter is unsealed. I

21

am filing it with the clerk of the Court presently.

      Anything else?

      MS. MOSKOW-SCHNOLL:  No, thank you.

      MR. DODDS:  No, thank you.

      THE COURT:  Thank you.  We will be in recess

      (Court recessed at 1:25 p.m.)

           - - -

Reporter:  Kevin Maurer

I hereby certify that the foregoing is a true
and accurate transcript from my stenographic
notes in the proceeding.

Official Court Reporter
U. S. District Court