UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ) |   |
| **IN RE PHARMACEUTICAL** ) |   |
| **INDUSTRY AVERAGE** ) |   |
| **WHOLESALE PRICE** ) | MDL NO. 1456 |
| **LITIGATION** ) | Civil Action No. 01-12257-PBS |
| ) |   |
| **THIS DOCUMENT RELATES TO:** ) | Judge Patti B. Saris |
| ) |   |
| STATE OF NEVADA V. ABBOTT ) |   |
| LABORATORIES, INC., ET AL., CA ) | Chief Magistrate Judge Marianne B. Bowler |
| NO. CV-02-00260-ECR (Nevada I) ) |   |
| ) |   |
| STATE OF NEVADA V. AMERICAN ) |   |
| HOME PRODUCTS, ET AL., CA NO. ) |   |
| 02-CV-12086-PBS (Nevada II) ) |   |
| ) |   |

### DEFENDANTS' LIMITED OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING DEFENDANTS' JOINT MOTION FOR REDRESS FOR SPOLIATION OF EVIDENCE

Pursuant to Fed. R. Civ. P. 72 (a), Defendants respectfully submit the following limited objections to the Report and Recommendation re: Defendants' Joint Motion for Redress for Spoliation of Evidence ("Report and Recommendation") issued by Chief Magistrate Judge Bowler on March 14, 2007. The facts deemed established by the Report and Recommendation follow from the misconduct found to have been committed by the State, and they are justified by extant evidence concerning what likely would have been proved by the evidence that was wrongfully destroyed. However, the temporal periods covered by the facts deemed established commence too late, in May 2000, when the extent evidence indicates that the destroyed evidence likely would have shown that they began earlier, between 1996 and 1999. In all other respects, the Defendants concur with the Report and Recommendation.

1

In the Report and Recommendation, Judge Bowler properly found that Nevada had a legal obligation to preserve documents as of May 2000, when Nevada was "on notice of potential litigation." Report and Recommendation at 19. Judge Bowler correctly determined that Nevada failed to comply with that obligation until November 20, 2005, over five years after it arose. See id. at 4. This conduct, as Judge Bowler found, was "undoubtedly negligent and . . . arguably worse than negligent." Id. at 15.

Judge Bowler appropriately rejected Nevada's "counterfactual" claim that 'no documents have been destroyed," pointing to "substantial uncontroverted evidence that documents have in fact been destroyed." Id. at 11. Judge Bowler concluded that several categories of this evidence were discoverable, including government reports, interstate e-mail communications, communications with defendants, and intrastate communications between Nevada Medicaid and the Public Employee Benefits, Senior Rx and Department of Mental Health programs. See id. at 13-14. Moreover, Judge Bowler recognized that Defendants' case was prejudiced by this destruction of evidence because (1) even if they are able to reproduce the destroyed evidence from outside sources and their own files, they have lost any discoverable marginalia or annotations made on Nevada's copies of the evidence; (2) they are prejudiced by the loss of Nevada's internal communications which would help prove that Nevada was aware of the disparity between AWP and actual drug cost; and (3) they will not be able to introduce Nevada's copies of the destroyed documents into evidence, thus permitting Nevada to more plausibly deny any knowledge of their contents. Id. at 21.

Finding that all five elements of a spoliation claim were present (State officials had destroyed evidence, that was discoverable, with the intent to do so, after having been put on notice that the evidence might be relevant to potential litigation, with resulting harm to opposing

2

parties; see id. at 11), Judge Bowler determined that sanctions were appropriate, to wit: "this Court imposes the following sanctions, establishing as fact for all purposes in this litigation that:"

      1.  After May 2000, Nevada had a practice of maintaining OIG Reports relating to pharmacy reimbursement and circulating them among employees with responsibilities for the State's Medicaid pharmacy reimbursement rate.  See (Docket Entry # 2900, Ex. E for relevant OIG Reports).

      2.  After May 2000, Nevada had a practice of maintaining CCH and federal GAO publications relating to pharmacy reimbursement issues and circulating them among employees with responsibilities for the State's Medicaid pharmacy reimbursement rate.  See (Docket Entry # 2900, Ex. I for relevant CCH publications and GAO Reports).

      3.  After May 2000, Nevada participated in an e-mail distribution with other Medicaid programs, and received e-mails from this list relating to Medicaid pharmacy reimbursement rates, including the reimbursement rates of other states' Medicaid programs.  See (Docket Entry # 2900, Ex. O for relevant e-mails).

      4.  After May 2000, Nevada had information regarding how three other Nevada pharmacy programs, namely the department of Mental Health, Public Employee Benefits, and Senior Rx, acquired and/or reimbursed drugs.

      5.  From 2001 to the present, Nevada received from defendants communications stating the actual sales price information from the manufacturers and that this sales price was different from AWP.

Id. at 26-27.

Defendants had requested in their supporting briefs that the temporal periods of these separate facts commence at different dates between 1996 and 1999, when the extant evidence indicates they would have been proven to have begun but for the State's spoliation.  Judge Bowler declined that request, and instead began them all "[a]fter May 2000."  As indicated below, that was a clear error that should be corrected by this Court.

**I.   THE FACT ADMISSIONS SHOULD APPLY TO THE DOCUMENTS THAT WERE LIKELY IN THE STATE'S FILES AT THE TIME ITS PRESERVATION OBLIGATION COMMENCED.**

Defendants chose particular dates for the fact admissions because the extant evidence, in the form of testimony by State officials, established that as of May 2000, it was more likely than not that Nevada employees possessed documents dating to those earlier dates. Nevada had a three year and thirty day document retention policy that applied to many of these documents,[1] and State employees testified that they had a practice of adhering to that policy. For example, Nevada notably "does not contest that the [federal] reports were issued by HCFA or CMS or that the State received and circulated the reports." Memorandum in Support of the State of Nevada's Opposition to Defendants' Joint Motion for Summary Judgment, Docket Entry # 3910, at 11. Laurie Squartsoff reviewed these reports during her tenure as pharmacy consultant to Nevada Medicaid from 1989 to 2000; she kept documents according to the applicable document retention policy, and testified that when she departed Nevada Medicaid her files remained there. See Docket Entry # 2900, Ex. Q., Dep. of Laurie Squartsoff at 57-60, 166-67 (Mar. 6, 2006). Current Medicaid Director Charles Duarte confirmed that the federal government reports are "[e]ither . . . kept in our administrative office files or in archive, or they're destroyed after the holding period." Docket Entry # 2900, Ex. Q., Dep. of Charles Duarte, Vol. III at 46-47 (Mar. 22, 2006). Thus, as of May 2000, State employees presumptively possessed copies of these documents dating back to at least April 1997.[2]

---

[1] E-mail was not subject to the three years and thirty days document retention policy. Docket Entry No. 2900, Ex. 0 lists examples of e-mails discussing prescription drug reimbursement that were produced by Montana and received by Nevada. These date back to January 1999, so Defendants' fact admission regarding the interstate e-mail list properly began in January 1999.

[2] Defendants dated their requested fact admissions earlier, at April 1996, based on State employees' testimony that they were not efficient in disposing of documents after the applicable document retention period had lapsed. See Docket Entry # 2900, Ex. Q, Dep. of Charles Duarte, Vol. III at 72 (stating that it "assumes a great deal of efficiency in [Nevada's] records retention area" to say that relevant documents were disposed of upon the expiration of the

4

Judge Bowler ruled that Defendant's request was overbroad because there was no legal obligation to have preserved documents prior to May 2000: "[b]ecause no legal obligation to preserve documents arose until May 2000, it is inappropriate to establish facts prior to this date." Report and Recommendation at 25. However, if Nevada in fact possessed documents dating back to April 1997 in May 2000 when its preservation duty attached, the State was obliged to retain those documents from then until now, and only the State's wrongful spoliation led to their destruction. Therefore, to remedy the harm caused by the State's breach of its preservation duty, it is necessary to establish by judicial order what the destroyed evidence likely would have established if it had not been destroyed, namely, facts dating back to April 1997. The sanction imposed by Judge Bowler does not remedy the harm found to have been committed by the State.

## II.   THE COURT SHOULD MAKE A SLIGHT EDITORIAL CHANGE TO THE WORDING OF THE FACT ADMISSIONS.

The first four of the five established facts begin with the phrase, "[a]fter May 2000." Judge Bowler used this formulation because, as described above, she declined to establish a fact as of a date prior to the commencement of the State's preservation duty, which was May 2000. As worded, however, the facts might misleadingly be construed to suggest that Nevada did not have a practice of receiving and/or maintaining the various categories of documents (OIG reports, CCH and federal GAO publications, e-mails from other States' Medicaid programs, and information regarding the three other Nevada pharmacy programs) prior to May 2000. The evidence is overwhelming that the State did receive and retain such types of documents throughout the 1990s. See Docket Entry # 2900, Ex. Q: Dep. of Laurie Squartsoff at 36, 57-60,

---

three year and thirty day retention requirement). Indeed, Coleen Lawrence testified that she saw a copy of Keith McDonald's drug cost study, prepared in the late 1980s, in the State's files sometime between 2001 and 2005. See Docket Entry # 2900, at 15-16. At a minimum, however, the extant evidence supports dating the fact admissions back to the period of the document retention policy, or April 1997.

5

65, 116-19; Dep. of April Townley, 34-36, 42-44, 59-60, 65-66; 73-74, 128-29 (Jan. 27, 2006); Dep. of Charles Duarte, Vol. 1 at 60-61 (Nov. 15, 2005); Dep. of Coleen Lawrence, Vol. 1 at 94-96 (Aug. 12, 2005); Dep. of Mary Wherry, 106-07 (Mar. 21, 2006); Dep. of Christopher Thompson, 35-36 (Jan. 6, 2006)).  Accordingly, the established facts should be rewritten to replace the word "After" with "No later than."  This would allow the parties to contest the State's practices prior to the applicable date, without implying what that practice was.  As noted above, Defendants contend that the appropriate dates should be April 1996 (January 1999 for e-mails) but, whatever the date, the fact admissions should not imply that the State's practice of receiving and retaining documents began on that date.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court modify and enter the fact admissions as follows:

1.  No later than April 1996, Nevada had a practice of maintaining OIG Reports relating to pharmacy reimbursement and circulating them among employees with responsibilities for the State's Medicaid pharmacy reimbursement rate.  See (Docket Entry # 2900, Ex. E for relevant OIG Reports).

2.  No later than April 1996, Nevada had a practice of maintaining CCH and federal GAO publications relating to pharmacy reimbursement issues and circulating them among employees with responsibilities for the State's Medicaid pharmacy reimbursement rate.  See (Docket Entry # 2900, Ex. I for relevant CCH publications and GAO Reports).

3.  No later than January 1999, Nevada participated in an e-mail distribution with other Medicaid programs, and received e-mails from this list relating to Medicaid pharmacy reimbursement rates, including the reimbursement rates of other states' Medicaid programs.  See (Docket Entry # 2900, Ex. O for relevant e-mails).

4.  No later than April 1996, Nevada had information regarding how three other Nevada pharmacy programs, namely the department of Mental Health, Public Employee Benefits, and Senior Rx, acquired and/or reimbursed drugs.

5.  From 2001 to the present, Nevada received from defendants communications stating the actual sales price information from the manufacturers and that this sales price was different from AWP.

*Respectfully submitted,*

 /s/ Carisa A. Klemeyer
Steven A. Kaufman (BBO # 262230)
Brien T. O'Connor (BBO# 546767)
Christopher R. Dillon (BBO# 640896)
Carisa A. Klemeyer (BBO# 655045)
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

*Attorneys for Schering-Plough Corporation &
Warrick Pharmaceuticals Corporation on behalf of
the Defendants in Nevada I and Nevada II*

Dated:  March 26, 2007

## **CERTIFICATE OF SERVICE**

I, Carisa A. Klemeyer, hereby certify that a true copy of the foregoing document was served upon all counsel of record in Nevada I and Nevada II electronically pursuant to Fed. R. Civ. P. 5(b)(2)(D) and CMO No. 2 on this 26th day of March, 2007, by causing a copy to be sent to LexisNexis File & Serve for posting and notification to all counsel of record.

    /s/ Carisa A. Klemeyer
    Carisa A. Klemeyer