# EXHIBIT 15

Westlaw.

Slip Copy                                                                                                                                    Page 1

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

**C**
Briefs and Other Related Documents
Pennsylvania Dept. of Public Welfare v.
U.S.W.D.Pa.,2006.Only the Westlaw citation is
currently available.
United States District Court,W.D. Pennsylvania.
COMMONWEALTH OF PA DEPT OF PUBLIC
WELFARE, Plaintiff,
v.
UNITED STATES, U.S. Dept of Health & Human
Services, Defendants.
**No. CIVA 05-1285.**

Dec. 21, 2006.

Jason W. Manne, Department of Public Welfare
Office of General Counsel, Pittsburgh, PA, for
Plaintiff.
Lee J. Karl, United States Attorney's Office,
Pittsburgh, PA, for Defendants.

MEMORANDUM ORDER
AMBROSE, Chief District J.
**\*1** The above captioned complaint was received by
the Clerk of Court on September 16, 2005, and was
referred to United States Magistrate Judge Lisa
Pupo Lenihan for pretrial proceedings in
accordance with the Magistrates Act, 28 U.S.C. §
636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local
Rules for Magistrates.

The Magistrate Judge's Report and
Recommendation (Doc. No. 22), filed on November
22, 2006, recommended that Defendants' Motion
for Summary Judgment (Doc. No. 8) be granted
with regard to the issue of the adequacy of the
FOIA search, but denied without prejudice in all
other respects. The Report and Recommendation
further recommended that Plaintiff's Rule 56(f)
Motion (Doc. No. 13) be denied without prejudice
on the issue of the adequacy of the FOIA search,
but granted on the remaining issues. Service was
made on all counsel of record. Plaintiff filed timely

Objections to the Report and Recommendation
(Doc. No. 23) on December 1, 2006, to which
Defendants filed a timely response on December
12, 2006 (Doc. No. 26). Defendants filed timely
Objections to the Report and Recommendation on
December 6, 2006 (Doc. No. 24), to which Plaintiff
filed a timely response on December 18, 2006
(Doc. No. 28). After review of the pleadings and
documents in the case, together with the Report and
Recommendation and the objections thereto, the
following order is entered:

AND NOW, this 21st day of December, 2006,

IT IS HEREBY ORDERED that Defendants'
Motion for Summary Judgment (Doc. No. 8) is
GRANTED IN PART AND DENIED IN PART.
Defendants' Motion for Summary Judgment is
GRANTED WITH PREJUDICE as to the adequacy
of the FOIA search, and DENIED WITHOUT
PREJUDICE in all other respects.

IT IS FURTHER ORDERED that Plaintiff's Rule
56(f) Motion (Doc. No. 13) is GRANTED IN
PART AND DENIED IN PART. Plaintiff's Rule
56(f) Motion is DENIED WITH PREJUDICE on
the issue of the adequacy of the FOIA search, and
GRANTED on the remaining issues. Plaintiff is
entitled to limited discovery on the remaining
issues, the parameters of which shall be set by the
Magistrate Judge.

IT IS FURTHER ORDERED that the Report and
Recommendation (Doc. No. 22) of Magistrate
Judge Lenihan, dated November 22, 2006, is
adopted as the opinion of the Court.

REPORT AND RECOMMENDATION

I. *RECOMMENDATION*

It is respectfully recommended that Defendants'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

Motion for Summary Judgment (Doc. No. 8) be granted with regard to the issue of the adequacy of the search, and denied without prejudice in all other respects. It is further recommended that Plaintiff's Rule 56(f) Motion (Doc. No. 13) be denied with prejudice on the issue of the adequacy of the search, and granted on the remaining issues.

## II. *REPORT*

Plaintiff, the Commonwealth of Pennsylvania Department of Public Welfare ("Commonwealth"), instituted this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States and its Department of Health and Human Services ("HHS") to disclose certain documents relating generally to audits conducted by HHS's Office of Inspector General (" OIG") and, specifically, to the review of Title IV-E foster care programs. The Commonwealth made five separate requests pursuant to FOIA between June 29, 2005 and July 19, 2005 for specific materials in these categories. All told, HHS has released approximately 925 pages of responsive materials to the Commonwealth, including pages with redactions, and has withheld in their entirety approximately 202 pages of responsive materials, claiming the withheld materials are exempt from disclosure under 5 U.S.C. § 552(b)(5) ("Exemption (b)(5)"). The Commonwealth disputes the applicability of Exemption (b)(5) to approximately 196 pages of responsive materials withheld by HHS, and also challenges the adequacy of the search conducted by HHS, as well as HHS's representation that it has released all responsive and reasonably segregable factual information. This Court has original subject matter jurisdiction over the action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

**\*2** HHS has filed a Motion for Summary Judgment (Doc. No. 8), based on its *Vaughn* indices and supporting declarations. In response, the Commonwealth has filed a brief and supplemental brief in opposition, supporting affidavit, and a Rule 56(f) Motion for Discovery (Doc. No. 13). For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be granted in part and denied in part, and that Plaintiff's Rule 56(f) Motion for Discovery be granted with limitations.

### A. *Standard of Review-Motion for Summary Judgment*

The summary judgment standard of Fed.R.Civ.P. 56(c) applies to FOIA cases as it would to any other civil action. *Commw. of PA., Dep't of Public Welfare v. United States Dep't of Health & Human Serv.,* 623 F.Supp. 301, 303 (M.D.Pa.1985). Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial* " or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc. .,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to prevail on a motion for summary judgment in a FOIA action, the government agency must show that there are no disputed material facts and that each page of material that falls within the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

requested category either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C.Cir.2001) (citations omitted); *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980) (citation omitted). As to the second part of its burden, the agency must demonstrate that its search was adequate and that any withheld documents fall within one of the FOIA exemptions. *Lee v. U.S. Dep't of Justice,* 235 F.R.D. 274, 287 (W.D.Pa.2006) (citing 5 U.S.C. § 552(a)(4)(B); *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.1994)). As the possessor of the records and the party responsible for conducting the search, the agency may satisfy this burden by filing a " 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." ' *Id.* (quoting *Valencia-Lucena v. U.S. Coast Guard,* 180 F.3d 321, 326 (D.C.Cir.1999); citing *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 552 (D.C.Cir.1994)). In addition, the affidavits or declarations must aver facts showing that the agency has conducted a thorough search and provide reasonably detailed explanations as to why any withheld documents fall within the claimed exemption. *Id.* (citing *Carney,* 19 F.3d at 812; *Maynard v. Cent. Intelligence Agency,* 986 F.2d 547, 559-60 (1st Cir.1993); *Perry v. Block,* 684 F.2d 121, 126-27 (D.C.Cir.1982)). Affidavits or declarations which satisfy this burden are to be given a presumption of good faith by the district court. *Id.* (citing *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d 1197, 1200 (D.C.Cir.1991)). Thus, courts have granted summary judgment in favor of the agency when the agency's affidavits " 'describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption ..., and are not controverted by either contrary evidence in the record nor [sic] by evidence of agency bad faith." ' *Davin v. U.S. Dep't of Justice,* 60 F.3d 1043, 1050 (3d Cir.1995) (quoting *Am. Friends Serv. Comm'n v. Dep't of Defense,* 831 F.2d 441, 444 (3d Cir.1987)) (other citation omitted).

**\*3** "[D]iscovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary so long as the agency's submissions are facially adequate." *Id.* (citing *Goland v. Cent. Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978)). If the agency's submissions are determined to be facially adequate, the district court may refuse discovery and award summary judgment based on the affidavits. *Id.* (citing *Goland, supra* ). If, however, a review of the record raises substantial doubt, especially where the requests are "well-defined" and the complainant submits positive indications of overlooked materials, summary judgment is inappropriate. *Id.* (citing *Valencia-Lucena,* 180 F.3d at 326; *Founding Church of Scientology of Washington, D.C., Inc., v. Nat'l Sec. Agency,* 610 F.2d 824, 830 (D.C.Cir.(1979)).

## B. *Statement of Relevant Facts and Procedural History*

On June 29, 2005, the Commonwealth sent the first of five FOIA requests to HHS requesting inter-agency agreements between OIG and Administration for Children and Families ("ACF"), and between OIG and the Centers for Medicare and Medicaid Programs ("CMS") regarding the performance of audits for these programs; all OIG statistical sampling policies; and contract documents relating to OIG's use of the Teammate working paper software.[FN1] (Ex. A to Pl.'s Compl.) On that same date, the Commonwealth sent a second FOIA request to HHS requesting all documents evidencing or discussing any agreement between ACF or its Regional Administrator, David Lett, and OIG relating to review of Pennsylvania's Title IV-E claims for any periods of time between 1997 and 2002. [FN2] (Ex. B to Pl.'s Compl.)

> FN1.     HHS     assigned     Case No.2005-0952-FW to the Commonwealth's first FOIA request. *See Declaration of Katherine Hooten* dated 1/13/06 (attached as Ex. D to Mem. of Law in Supp. of Defs.' Motion for Summ. J.) ("Hooten Decl. I") at ¶ 5.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                               Page 4

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

FN2. HHS assigned Case No.2005-0951-MB to the Commonwealth's second FOIA request. *See Hooten Decl. I* at ¶ 7.

On June 30, 2005, the Commonwealth submitted its third FOIA request to HHS requesting documents relating to all child eligibility review instruments used by OIG auditors in ongoing or completed audits of Title IV-E maintenance payments made by states and local governments.[FN3] (Ex. C to Pl.'s Compl.) Also on June 30, 2005, the Commonwealth sent a fourth FOIA request to HHS requesting any letters to state officials after January 1, 2000 announcing the initiation of an audit by OIG relative to a state Title IV-E program except for completed audits whose reports were posted on the HHS web-site or, alternatively, a letter listing the ongoing Title IV-E audits.[FN4] (Ex. D to Pl.'s Compl.)

FN3. HHS assigned Case No.2005-0953-RE to the Commonwealth's third FOIA request. *See Declation of Diane J. Diggs* dated 12/7/05 (attached as Ex. E to Mem. of Law in Supp. of Defs.' Motion for Summ. J.) ("*Diggs Decl.*") at ¶ 9.

FN4. HHS assigned Case No.2005-0954-mb to the Commonwealth's fourth FOIA request. *See Diggs Decl.* at ¶ 11.

Finally, on July 19, 2005, the Commonwealth sent its fifth FOIA request to HHS requesting all documents post 1997 relating to decisions by ACF and OIG to subject Pennsylvania's Title IV-E program to audit by OIG, discussions held by the staff of ACF, including ACF Regional Administrator David Lett, or OIG staff relative to whether Pennsylvania's Title IV-E program should be audited by OIG, and the decision by OIG to include a cost analysis of Title IV-E provider rates in its audit of Pennsylvania's Title IV-E program.[FN5] (Ex. E to Pl.'s Compl.) In this request, the Commonwealth specifically sought the release of segregable factual material contained in privileged documents.[FN6] (*Id.*)

FN5. HHS assigned Case No.2005-1000-RE to the Commonwealth's fifth FOIA request. *See Diggs Decl.* at ¶ 12.

FN6. Although the FOIA requestor's purpose for requesting the information is irrelevant, the Court notes that the majority of the information sought in the five FOIA requests here appears to be related to claims asserted by the Commonwealth in a separate lawsuit filed in this judicial district at Civil Action No. 05-1345, under the caption, "*Commonwealth of Pennsylvania Department of Public Welfare v. United States, United States Department of Health and Human Services.*" On September 19, 2006, judgment was entered in favor of defendants in the case filed at 05-1345. The Commonwealth has appealed the judgment in Civil Action No. 05-1345 to the U.S. Court of Appeals for the Third Circuit by filing a notice of appeal on September 22, 2006.

**\*4** Other than acknowledging receipt of the FOIA requests and denying the Commonwealth's requests for a fee waiver, HHS did not respond to the document requests within the time required by law. (Compl. ¶ 6 .) Therefore, while HHS was processing the five FOIA requests, the Commonwealth instituted the present FOIA action on September 16, 2005.

Subsequently, on October 19, 2005, HHS responded to the Commonwealth's fourth FOIA request (Case No.2005-0954-mb) by producing in its entirety a list of letters announcing the initiation of audits by OIG relating to state Title IV-E programs. (Ex. 6 to *Declaration of Robert Eckert* dated 4/12/06 ("*Eckert Decl. I* ").[FN7] Thereafter, the parties proposed and the Court approved a case management plan, pursuant to which HHS conducted its search for documents corresponding to the first, second, third, and fifth FOIA requests made respectively in Case Nos.2005-0952-FW, 2005-0951-MB, 2005-0953-RE, and 2005-1000-RE.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

FN7. The Declaration of Robert Eckert dated 4/12/06 is attached as Exhibit A to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 9).

On January 5, 2006, HHS informed the Commonwealth that after searching its records, it was able to locate approximately 1,128 pages responsive to the Commonwealth's requests and released approximately 830 pages, some of which contained redactions. (Ex. 8 to *Eckert Decl. I.*) In this regard, HHS informed the Commonwealth that employer identification numbers under Exemption (b)(4) [FN8], information documenting the deliberative process under Exemption (b)(5) [FN9], and names and other identifiers of minor children under Exemption (b)(6) [FN10] were redacted from the released documents. (*Id.*) HHS withheld the remaining 298 pages in their entirety based on Exemption (b)(5).[FN11] (*Id.*)

FN8. Exemption (b)(4) allows the agency to withhold "commercial or financial information obtained from a person and privileged or confidential". 5 U.S.C. § 552(b)(4).

FN9. Exemption (b)(5) allows the agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency". 5 U.S.C. § 552(b)(5). The courts have recognized that Exemption (b)(5) generally protects from disclosure materials that would be protected under the executive or "deliberative process" privilege, attorney-client privilege, and/or the attorney work product privilege. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980) (citations omitted).

FN10. Exemption (b)(6) allows the agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". 5 U.S.C. § 552(b)(6).

FN11. HHS informed the Commonwealth that it withheld materials under Exemption (b)(5) based on either the deliberative process, the attorney work-product, and/or the attorney-client privileges. (Ex. 8 to *Eckert Decl. I.*)

HHS produced its *Vaughn* indices [FN12] on February 28, 2006 for materials withheld in their entirety and released with redactions in Case Nos.2005-951-MB and 2005-1000-RE (Ex. 9), Case No.2005-0952-FW (Ex. 10), and Case No.2005-953-RE (Ex. 11). (Ex. 9-11 to *Eckert Decl. I;* Ex. C to Mem. of Law in Supp. of Defs.' Mot. for Summ. J.) The *Vaughn* indices provided by HHS identify each material withheld or containing withheld information by providing: (1) the Bate-stamp page number and number of pages, (2) a description of the material, (3) an indication of the amount of information withheld and the length of the document, and (4) the basis for the exemption claimed. According to the *Vaughn* indices submitted by HHS for Case Nos.2005-1000-RE and 2005-951-MB, which are the only *Vaughn* indices at issue here, HHS withheld 202 pages in their entirety,[FN13] released with its *Vaughn* indices two (2) pages which had been redacted,[FN14] released with its *Vaughn* indices 92 pages in their entirety, [FN15] and provided an explanation for 66 pages of previously released materials that had been redacted. [FN16]

FN12. In *Vaughn v. Rosenn,* 484 F.2d 820 (D.C.Cir.1974) (*Vaughn I* ), the Court of Appeals for the District of Columbia Circuit delineated certain information that must be provided by the agency for any documents being withheld under one of the enumerated exemptions under FOIA to satisfy its burden of proof, which has become known as the "*Vaughn* Index".

FN13. HHS alleges that 204 pages of responsive materials were withheld in their entirety; however, the Court, in its review

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 6

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

of the *Vaughn* indices, calculated only 202 pages withheld in their entirety. HHS assigned the following Bate-stamp page numbers to these 202 unreleased pages: 490-91, 492-93, 494-95, 497-98, 499, 500-06, 512, 513-16, 517, 518-19, 520, 521-24, 525, 526-28, 529, 530, 531, 532, 533, 537, 538, 539, 542, 545, 546, 556, 584-86, 690-93, 831, 832, 833, 834-35, 836, 837, 838, 839, 84-85, 86, 87-88, 89-90, 91, 92-93, 94-95, 96, 97, 98, 99-100, 101-02, 103, 104-05, 112, 113-14, 115-17, 118, 194-95, 196-97, 198-200, 201-02, 203-04, 205-08, 209-11, 212-15, 217-18, 221-22, 223-24, 227-30, 233-35, 236-37, 238-39, 241, 242, 243, 245, 246-47, 248, 249-50, 251, 252-53, 254-55, 256-57, 258-59, 260-61, 262-64, 265, 266-67, 268, 269, 270-71, 272-73, 274-76, 277-79, 280-84, 285-86, 287-88, 289-91, 292, 343, 344, 345, 346, 465, 466-68, 469, and 470-482.

FN14. These two pages are found at Bate-stamp page nos. 496 and 557.

FN15. The following Bate-stamp page numbers are assigned to these materials: 543-44, 106, 107, 108-09, 110-11, 119-193, 216, 219, 220, 225-26, 231-32, 240, and 244. Although HHS does not indicate in its *Vaughn* indices that page no. 244 was redacted, the Commonwealth contends that page was redacted and it is contesting the withholding of the redacted information.

FN16. The following Bate-stamp page numbers are assigned to these materials: 507-511, 547-55, 699-705, 711-24, 725-43, and 747-58.

In response, on March 28, 2006, the Commonwealth corresponded with HHS and provided a list of withheld documents which correlated to those listed in HHS's *Vaughn* indices for Case Nos.2005-1000-RE and 2005-951-MB, for which it was challenging the specific claimed exemptions. (Ex. B attached to Mem. of Law in Supp. of Defs.' Mot. for Summ. J.) Initially, in its March 28, 2006 correspondence, the Commonwealth challenged HHS's claimed exemptions for 191 pages of responsive materials [FN17]188 of the challenged pages were withheld in their entirety by HHS; [FN18] the other three (3) pages were redacted and released with the *Vaughn* indices.[FN19] However, a subsequent filing by the Commonwealth on June 2, 2006 (Ex. A to Rule 56(f) Declaration of Jason Manne (Doc. No. 14)) actually places 196 pages in dispute. [FN20] Of these 196 pages, 29 appear to be duplicates of the withheld material.[FN21] On March 28, 2006, the Commonwealth also informed HHS that it was contesting the adequacy of the search and objected to HHS's failure to disclose segregable factual material in the documents. (*Id.*)

FN17. The Commonwealth's March 28, 2006 challenge to the *Vaughn* indices actually lists 193 pages for which the claimed exemptions are disputed. However, that list includes Bate-stamped page nos. 219 and 220, which were released in their entirety by HHS with its *Vaughn* indices. The Commonwealth has subsequently acknowledged receipt of page nos. 00219 and 00220 and withdrawn its challenge to these pages. (Ex. C attached to Mem. of Law in Supp. of Defs.' Mot. for Summ. J.; Pl.'s Br. in Opp'n to HHS's Mot. for Summ. J. and in Supp. of its Rule 56(f) Mot. at 2 n. 2.)

FN18. The 188 pages withheld in their entirety which the Commonwealth is challenging are assigned the following Bate-stamp page numbers: 490-91, 492-93, 494-95, 497-98, 499, 500-06, 512, 513-16, 517, 518-19, 520, 521-24, 526-28, 529, 530, 531, 532, 533, 537, 538, 539, 542, 545, 546, 556, 584-86, 831, 832, 833, 834-35, 836, 837, 838, 839, 84-85, 86, 87-88, 89-90, 91, 92-93, 94-95, 96, 97, 98, 99-100, 101-02, 103, 104-05, 112, 113-14, 115-17, 118, 198-200, 201-02, 203-04, 205-08, 209-11, 212-15, 217-18, 221-22, 223-24, 227-30, 236-37, 241, 242, 243,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

245, 246-47, 248, 249-50, 251, 252-53, 254-55, 256-57, 258-59, 260-61, 262-64, 265, 266-67, 268, 269, 270-71, 272-73, 274-76, 277-79, 280-84, 285-86, 287-88, 289-91, 292, 343, 344, 345, 346, 465, 466-68, 469, 470-482.

FN19. The three (3) redacted pages released by HHS and challenged by the Commonwealth are Bate-stamp page nos. 496, 557, and 244. With regard to page no. 244, HHS's *Vaughn* indices do not indicate that this page was redacted in any way.

FN20. In addition to the 191 pages of withheld material challenged on March 28, 2006, the Commonwealth now appears to be challenging the exemptions claimed for eleven (11) other pagesBate-stamp page nos. 216, 225-26, 231-32, 233-35, 238-39, and 240-as indicated in Exhibit A to the Rule 56(f) Declaration of Jason W. Manne (Doc. No. 14). However, six (6) of these pages, *i.e.,* page nos. 216, 225-26, 231-32, and 240, appear to have been released without redaction with HHS's *Vaughn* indices, and the Commonwealth does not provide any basis for including these pages in its June 2, 2006 submission, nor is there any evidence of record to suggest that these documents contain redactions. Therefore, the Court concludes that these six (6) pages were listed in error by the Commonwealth and has not included them as part of the total number of challenged pages.

FN21. The following page numbers appear to be duplicates: Page no. 546 is a duplicate of 545; page nos. 556 and 557 are duplicates of page no. 496; page nos. 584-86, 274-76, 277-79, and 289-91 are duplicates of page no. 526-28; page no. 836 is a duplicate of page no. 537; page no. 837 is a duplicate of page no. 538; page nos. 838 and 112 are duplicates of page nos. 539; page no. 839 is a duplicate of page no. 542; page nos. 113-14 are duplicates of page nos. 834-35; page nos.

272-73 and 285-86 are duplicates of page nos. 497-98; and page nos. 344, 345, and 346 are duplicates of page no. 343.

**\*5** On May 3, 2006, HHS filed a Motion for Summary Judgment, brief in support thereof, together with its supporting declarations and documents. In response, the Commonwealth filed a motion to stay the proceedings on HHS's motion for summary judgment pending discovery pursuant to Rule 56(f), along with supporting declaration and brief. The Commonwealth also filed a brief in opposition to HHS's motion for summary judgment which was also included in its brief in support of its Rule 56(f) motion. Both sides filed reply briefs, and pursuant to the order of court dated October 19, 2006, the Commonwealth filed a supplemental brief in opposition to HHS's motion for summary judgment and in support of its Rule 56(f) motion on October 25, 2006. Thus, the pending motions have been fully briefed and are ripe for disposition.

C. *Analysis*

FOIA was enacted by Congress for the purpose of " 'facilitat[ing] public access to Government documents." ' *Davin,* 60 F.3d at 1049 (quoting *U.S. Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991)). Consistent with the purpose of creating an expedient mechanism for disseminating information and holding government agencies accountable, FOIA directs government agencies to promptly produce any requested materials unless that information is exempt from disclosure pursuant to one of the nine exemptions enumerated in the FOIA statute, 5 U.S.C. § 552(b)(1)-(9). *Id.* (citing *Coastal States Gas Corp. v. Dep't of Energy,* 644 F.2d 969, 974 (3d Cir.1981) (quoting S.Rep.No. 813, 89th Cong., 1st Sess. 3 (1965)). Thus, the Supreme Court has held that FOIA "creates a strong presumption in favor of disclosure." *Id.* (citing *Dep't of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). To this end, FOIA mandates that the district court review *de novo* the agency's decision to withhold requested information. *Id.* (citing 5 U.S.C. § 552(a)(4)(B)); *see also McDonnell v. United States,* 4 F.3d 1227, 1241 (3d Cir.1993)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 8

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

(citing § 552(a)(4)(B)). The burden of demonstrating that a particular exemption applies falls squarely on the agency. *Davin,* 60 F.3d at 1049; *McDonnell,* 4 F.3d at 1241. In addition, the statute requires the agency to disclose "[a]ny reasonably segregable portion of a record ... to any person requesting such record after deletion of the portions which are exempt under [section 552(b) ]." 5 U.S.C. § 552(b).

Because "the review of FOIA cases is made difficult by the fact that the party seeking disclosure does not know the contents of the information sought and is, therefore, helpless to contradict the government's description of the information or effectively assist the trial judge," the reviewing court generally will require the government agency to prepare a *Vaughn* index and supporting affidavits to ensure a meaningful adversarial process. *Davin,* 60 F.3d at 1049 (citing *Ferri v. Bell,* 645 F.2d 1213, 1222 (3d Cir.1981), *modified* 671 F.2d 769 (3d Cir.1982)); *McDonnell,* 4 F.3d at 1241 (citing *King v. U.S. Dep't of Justice,* 830 F.2d 210, 217-18 (D.C.Cir.1987)). In this regard, the Third Circuit endorsed the following observation of the United States Court of Appeals for the District of Columbia Circuit in *King, supra:*

*6 The significance of agency affidavits in a FOIA case cannot be underestimated. As, ordinarily, the agency alone possesses knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected. As we observed in *Vaughn v. Rosen,* "[t]his lack of knowledge by the party seeing [*sic* ] disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution," with the result that " [a]n appellate court, like the trial court, is completely without the controverting illumination that would ordinarily accompany a lower court's factual determination." Even should the court undertake in camera inspection of the material-an unwieldy process where hundreds or thousands of pages are in dispute"[t]he scope of the inquiry will not have been focused by the adverse parties...." Affidavits submitted by a governmental agency in justification for its exemption claims must therefore strive to correct, however, imperfectly, the

asymmetrical distribution of knowledge that characterizes FOIA litigation. The detailed public index which in *Vaughn* we required of withholding agencies is intended to do just that: "to permit adequate adversary testing of the agency's claimed right to an exemption," and enable "the District Court to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves, as well as to produce a record that will render the District Court's decision capable of meaningful review on appeal." Thus, when an agency seeks to withhold information, it must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."

*McDonnell,* 4 F.3d at 1241 (quoting *King,* 830 F.2d at 218-19) (footnotes omitted). The Court of Appeals in *King* further opined:Specificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." To accept an inadequately supported exemption claim "would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review."

830 F.2d at 219 (footnotes omitted).

In the case at bar, HHS has filed its *Vaughn* indices and supporting declarations, identifying what it maintains are all of the materials responsive to the Commonwealth's FOIA requests. HHS submits that its supporting documentation establishes that its search for responsive materials to the Commonwealth's FOIA requests was reasonable, it released all reasonably segregable, non-exempt information, and that it properly withheld the challenged materials under Exemption (b)(5). Accordingly, HHS submits that it is entitled to summary judgment in its favor.

*7 In opposition, the Commonwealth submits that the search affidavits submitted by HHS are deficient on virtually all of the requirements established by the courts for adequate search affidavits and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 9

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

therefore HHS has failed to carry its burden on the adequacy of the search. In addition, the Commonwealth argues that HHS's affidavits are deficient in that they fail to provide any details regarding the process used to determine that all reasonably segregable factual material has been released and/or to explain why the materials withheld are not reasonably segregable. The Commonwealth contends that Bate-stamped number 545 in the *Vaughn* Index evidences bad faith on the part of HHS with regard to its representation that all reasonably segregable material has been released. Finally, the Commonwealth argues that HHS has not met its burden of proof with regard to the claimed exemptions from disclosure, as most of the entries in the *Vaughn* index have the same conclusory, boilerplate language supporting the claimed exemption and little factual detail is supplied to show why a particular exemption applies to particular documents. In light of these infirmities, the Commonwealth contends that HHS's motion for summary judgment should be denied and that it should be allowed to conduct limited discovery to flesh out the deficiencies in the HHS submission and to establish a full record for disposition by the Court.

According to the Commonwealth, the key to resolving HHS's motion for summary judgment is to determine whether the *Vaughn* index and supporting declarations provide an "adequate factual basis" to grant the motion. In order to make this determination, the Commonwealth contends that this Court must answer the following four questions:
1. Do the search affidavits provide an adequate factual basis to establish the reasonableness of the search for documents;
2. Do the *Vaughn* index and affidavits provide an adequate factual basis to show that HHS released all segregable factual material in the withheld documents;
3. Do the *Vaughn* index and affidavits provide an adequate factual basis to establish the claimed exemptions from disclosure in the withheld documents; and
4. If the HHS materials are deficient, is [the Commonwealth] entitled to discovery.

*See* Pl.'s Br. in Opp'n to HHS' Mot. for Summ. J. and in Supp. of its Rule 56(f) Mot. (Doc. Nos. 15 & 16). The Commonwealth submits that the answers to the first three questions must be in the negative, and therefore, it is entitled to discovery, *i.e.,* the fourth question must be answered in the affirmative. Each of these arguments is addressed *seriatim* below.

1. Adequacy of Search

Generally, the courts apply a reasonableness standard to determine the adequacy of an agency's search for requested documents, which requires the agency to demonstrate that the search it conducted was "reasonably calculated to uncover all relevant documents." *Moore v. Aspin,* 916 F.Supp. 32, 35 (D.D.C.1996) (citing *Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir.1985)); *see also Williams v. U.S. Dep't of Justice,* No. 05-2928, 2006 U.S.App. LEXIS 10493, *4 (3d Cir. Apr. 26, 2006) (citing *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990)) (agency is obligated to conduct a reasonable search for responsive records); *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C.Cir.1994) (citing *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984)) (adequacy of search is judged by a standard of reasonableness). Stated another way, this standard requires the agency to "show that it made a good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested." *Moore,* 916 F.Supp. at 35 (citing *Oglesby,* 920 F.2d at 68). However, the reasonableness standard does not mandate a detailed examination of every document maintained by the agency or that the agency search every record system. *Id.* Rather, all that is required is that the search be reasonably calculated to reveal the records sought by the requester. *Id.; Steinberg,* 23 F.3d at 551.

**\*8** An agency can satisfy its burden of establishing reasonableness by providing reasonably detailed affidavits, submitted in good faith, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 10

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

materials (if such records exist) were searched[.]" [FN22] *Oglesby,* 920 F.2d at 69; *Steinberg,* 23 F.3d at 551 (citing *Weisberg,* 745 F.2d at 1485); *Miller,* 779 F.2d at 1383 (citing *Goland v. Cent. Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978)); *Williams,* 2006 U.S.App. LEXIS 10493, at *4-5 (citing *Valencia-Lucena,* 180 F.3d at 326). Once the agency has met its burden of showing the search was reasonable, the burden then shifts to the requestor to rebut that evidence by demonstrating that the search was not conducted in good faith. *Miller,* 779 F.2d at 1383 (citing *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983)). Mere speculation on the requestor's part that uncovered documents may exist will not suffice to rebut the agency's good faith reasonable search. *Steinberg,* 23 F.3d at 552 (citing *SafeCard Serv.,* 926 F.2d at 1201).

> FN22. An affidavit describing in general how the agency processed the FOIA request does not satisfy the reasonableness standard. *Steinberg,* 23 F.3d at 552-52 (citing *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 371 (D.C.Cir.1980)). The agency affidavits must state which files were searched and by whom, must contain facts showing a systematic approach to document location, thereby providing sufficiently specific information to enable the requestor to challenge the search process engaged in by the agency. *Id.* at 552.

*a. Declarations Submitted by HHS*

To satisfy its burden of establishing the adequacy of the search, HHS has produced declarations from the following individuals: Robert Eckert, Katherine Hooten, Diane J. Diggs, Frank T. Connors, and Michael S. Marquis. In asking the Court to deny summary judgment on the adequacy of the search, the Commonwealth submits that these declarations fail to describe in the required detail the files that were searched, by whom, the search terms used, and/or the structure of the agencies' filing systems. Therefore, the Commonwealth argues, the declarations do not describe a systematic approach

to document location, nor do they provide sufficient factual information to afford it a meaningful opportunity to contest the search and to allow the district court an adequate factual foundation for judicial review. In support of this argument, the Commonwealth relies primarily on *Davin* and *Ogelsby, supra,* and on *Church of Scientology of California v. IRS,* 792 F.2d 146 (D.C.Cir.1986).

On the other hand, HHS contends that its declarations provide sufficient detail regarding the scope and method of the searches conducted, in that the declarants describe the offices to which each request was referred, provide a description of the office, explain why a particular request was referred to a specific office, provide the location of the responsive documents and/or the type of files where the records were maintained. In addition, HHS argues that the declarants also state that all files likely to contain responsive documents were searched. In support of its argument, HHS cites *Perry v. Block,* 684 F.2d 121 (D.C.Cir.1982), and *Judicial Watch, Inc. v. Food & Drug Admin.,* 407 F.Supp.2d 70 (D.D.C.2005), for the proposition that in responding to FOIA requests, an agency is not required to "set forth with meticulous documentation the details of an epic search for the requested records." *Perry,* 684 F.2d at 126. Rather, HHS argues that all it is required to do is provide " ' affidavits that explain in reasonable detail and scope the method of the search conducted by the agency." ' *Lechliter v. Rumsfeld,* No. 05-4381, 182 Fed. Appx. 113, 116, 2006 WL 1506717, at *2 (3d Cir. June 1, 2006) (quoting *Perry, supra* ). [FN23] Moreover, HHS contends it has disclosed over 900 pages of responsive materials in this case, demonstrating that it searched the appropriate offices, and cites in support thereof, the district court's decision in *Commw. of PA. v. U.S. Dep't of Health & Human Serv.,* 623 F.Supp. 301, 304 (M.D.Pa.1985) (the "1985 case"), which involved a similar FOIA matter. HHS further argues based on the 1985 case, that the Commonwealth in this case has not identified any "blocks of requested information or documents which appear to be missing and which might be discovered by further search of different offices." *Id.* at 304. Accordingly, HHS submits the Commonwealth's arguments lack merit and are insufficient to raise a material

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 11

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

question of fact regarding the adequacy of the search.

> FN23. In *Lechliter,* the Court of Appeals held that affidavits from employees in the offices determined to be the only ones likely to possess responsive documents, which indicated in detail their methods for filing documents, described the various files that they searched, and certified that they searched all records systems likely to contain responsive material, were sufficiently detailed to establish that the search was adequate and " "reasonably calculated to uncover all relevant documents." ' 182 Fed. Appx. at 115-16, 2006 WL 1506717 at *2 (quoting *Ogelsby,* 920 F.2d at 68).

**\*9** With these arguments in mind, the Court now turns to a review of the supporting declarations.

*Declaration of Robert Eckert* [FN24]

> FN24. HHS actually produced two declarations of Robert Eckert: The first one dated April 12, 2006 ("Eckert Decl. I") addresses the search undertaken pursuant to the five FOIA requests submitted by the Commonwealth. The second declaration of Robert Eckert dated June 19, 2006 (" Eckert Decl. II") was submitted in response to the Commonwealth's brief in opposition to HHS's motion for summary judgment, and addresses the segregability issue discussed *infra* in Part 2.

Robert Eckert is the Director of the Freedom of Information/Privacy Acts ("FOI/PA") Division, Office of the Assistant Secretary for Public Affairs, Department of HHS. In essence, Eckert is the Freedom of Information Officer for HHS. (Eckert Decl. I at ¶ 1.) As such, his duties include responding to FOIA requests and determining whether to release or withhold records or portions of records in accordance with FOIA and HHS

regulations. (*Id.* at ¶ 2.) Upon receipt of the five FOIA requests submitted by the Commonwealth, Eckert forwarded the requests to various offices and divisions within HHS, specifically OIG, ACF and CMS, because the requests sought records from these offices and therefore these offices were reasonably likely to possess responsive documents. ( *Id.* at ¶¶ 6-10.) Eckert's office responded to all five requests, releasing approximately 830 pages of documents and withholding 298 pages pursuant to Exemption (b)(5), and withholding small portions of 260 pages under Exemptions (b)(4) and (b)(6). ( *Id.* at ¶ 13.) Subsequently, Eckert's office released an additional 94 pages of documents. (*Id.* at ¶ 16.) Eckert further stated that there were no other reasonably likely locations for responsive documents. (*Id.* at ¶¶ 6-10.) Eckert does not provide any other information regarding the search for responsive documents.

*Declarations of Katherine Hooten*

HHS produced two declarations from Katherine Hooten. The first one is dated January 13, 2006 (" Hooten Decl. I") and is attached as Exhibit D to HHS's memorandum of law in support of its motion for summary judgment (Doc. No. 9). Katherine Hooten is the Freedom of Information Specialist for ACF and her duties include assembling ACF documents and recommending whether ACF documents should be released or withheld, and identifying corresponding exemptions if withholding is recommended. (Hooten Decl. I at ¶ 1.) Hooten explained that pursuant to a telephone conference she had on July 18, 2005 with counsel for the Commonwealth, Jason Manne, she referred his request in Case No.2005-0952-FW to the Office of Family Assistance ("OFA") and Administration for Children, Youth and Families ("ACYF"). (*Id.* at ¶ 6.) Both offices reported that they did not have any records responsive to the Commonwealth's request. (*Id.*) However, neither office indicated who conducted the search, the search terms used, or identified the particular files searched.

Hooten further explained that she forwarded the Commonwealth's request in Case No.2005-0951-MB to ACYF and HHS Region III,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 12

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

because ACYF is primarily responsible for administering federal child welfare programs and HHS Region III includes the State of Pennsylvania, and therefore, any agreements between ACF and OIG regarding review of Pennsylvania's Title IV-E claims were probably located there. (*Id.* at ¶ 8.) Both locations forwarded responsive documents, some of which were redacted to withhold personal, identifiable information of children in the foster care system. (*Id.*). No other details were provided as to who conducted the search, the search terms used, or identified the particular files searched. Finally, Hooten stated there were no other likely locations for responsive documents. (*Id.*)

*10 Hooten next explained that she forwarded the Commonwealth's FOIA request in Case No.2005-1000-RE to ACYF and HHS Region III, because these offices were likely locations of records pertinent to the decision to audit Pennsylvania's title IV-E program. (*Id.* at ¶ 10.) The results of the search located the same documents retrieved in response to the FOIA request in Case No.2005-0951-MB which were forwarded to Eckert. (*Id.*) No other details were provided as to who conducted the search, the search terms used, or identified the particular files searched. Finally, Hooten stated there were no other responsive documents or likely locations for responsive documents. (*Id.*)

In response to the Commonwealth's argument in opposition that Hooten's declaration fails to explain how the searches were conducted, HHS filed the supplemental declaration of Katherine Hooten dated June 21, 2006 ("Hooten Decl. II") (attached as Exhibit J to HHS's Reply Memorandum in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Rule 56(f) Motion) (Doc. No. 17)). In her supplemental declaration, Hooten provides information regarding who conducted the searches and the files searched in response to the FOIA requests in Case Nos.2005-0952-FW and 2005-0951-MB. In particular, as to the FOIA request in Case No.2005-0952-FW for interagency agreements between OIG and ACF and OIG and CMS, Hooten states that the searches were conducted by a "Program Analyst" within OFA; the "Team Leader for Audit Liaison/Debt Management

Team, Division of Financial Integrity, Office of Financial Services, Office of Administration/ACF"; and within ACYF, a "Program Manager in Child Welfare of Region III," a "Policy Specialist," and the "Director of Program Implementation." FN25 (Hooten Decl. II at ¶ 4.) The program analyst with OFA searched OFA's Program Policy Files, which include the Intranet policy file and the paper program files and contain all of the documents in OFA, for any agreements between OIG and ACF regarding audits of ACF programs. The program analyst also consulted with the Director of Division of State TANF Policy and they agreed that if any agreement existed it would be located in the Office of Administration. The Team Leader then searched the OIG Website for work plans for fiscal years 2006, 2005 and 2004, without locating any of the requested interagency agreements. Within ACYF, the program manager, policy specialist, and director of program implementation searched all electronic and paper files for any agreements between OIG and ACF regarding audits of ACF programs. Hooten then indicated that there were no other likely locations for responsive documents to the FOIA Request in Case No.2005-0952-FW.

> FN25. Hooten does not specifically identify the searchers by name.

The Commonwealth submits that Hooten's supplemental declaration is still deficient with regard to the June 29, 2005 FOIA request for certain interagency agreements with OIG (Case No.2005-0952-FW), as Hooten fails to list the specific files searched or the search terms used, fails to describe the structure of the agency's file systems, and therefore, the declaration fails to provide evidence of a systematic approach to document location. Specifically, the Commonwealth takes issue with Hooten's failure to explain (1) why she limited her search to OFA when the FOIA request covered all programs with ACF, and (2) why it was reasonable for HHS to search OFA Program Policy files when looking for intra-agency agreements which would more likely be found in administrative type files. The Commonwealth further argues that Hooten's assertion that the OFA Intranet policy file and paper program files contain all the documents

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 13

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

in OFA fails to take into account any files maintained by individual employees, such as correspondence files and administrative files. Next, although it was determined by the OFA program analyst and Director of Division of State TANF Policy that the Office of Administration was the likely location for any intra-agency agreements, the Commonwealth notes that the team leader does not appear to have searched the files at the Office of Administration, but rather, this unnamed individual searched the "OIG Website for work plans for Fys 2006, 2005, and 2004." The Commonwealth takes issue with both the failure to search the files of the Office of Administration and Hooten's failure to explain why it is reasonable to search for intra-agency agreements on a website containing work plans, when intra-agency agreements are internal documents that would not ordinarily be publicly posted.

*11    As to the FOIA request in Case Nos.2005-0951-MB and 2005-1000-RE for any agreements or discussions between, and any decisions by, ACF, David Lett, and/or all ACF staff and OIG, regarding a review or audit of Pennsylvania's Title IV-E claims/programs, Hooten avers in her supplemental declaration that the searc hes were conducted within ACYF by "several Policy Specialists" and the "Director of Program Implementation"; and within Region III, by a "Program Manager in Child Welfare", a "Grants Officer", and a "Program Specialist in Child Welfare." [FN26] (Hooten Decl. II at ¶ 5.) According to Hooten, the files searched by these individuals consisted of "electronic and paper files" within ACYF; "Region III's electronic and paper Title IV-E files"; the "Child Welfare Unit's Title IV-E official program files for Pennsylvania (which contain letters and reports by year);" the "individual electronic files for any emails or reports involving Pennsylvania Title IV-E information;" and the "Regional Office's grants management files for Pennsylvania's Title IV-E program." (*Id.*)

> FN26.   Hooten does not specifically identify the searchers by name.

The Commonwealth contends that Hooten's

supplemental declaration does not evidence a systematic approach to the search conducted by the unnamed policy specialists and the director of program implementation within ACYF because it states only that these unnamed individuals searched unspecified electronic and paper files. Moreover, the Commonwealth contends Hooten fails to provide the search terms used, denote which files were searched, or explain the structure of agency filing system, and fails to indicate whether the files of the individuals involved with Pennsylvania's OIG audits were searched. With regard to the searches conducted within Region III by an unnamed program manager, grants officer and program specialist, the Commonwealth again takes issue with Hooten's failure to specify the search terms used or explain the structure of the agency files withing Region III. In addition, the Commonwealth notes Hooten's supplemental declaration does not indicate that individual employees' *paper* files were searched and withholds the names of the individuals whose electronic files were searched, thereby precluding the Commonwealth from determining whether HHS searched the files of all individuals it knows were involved with the OIG audits.

### *Declaration of Diane J. Diggs*

HHS produced one declaration from Diane J. Diggs, dated December 7, 2005 ("Diggs Decl.") which is attached as Exhibit E to HHS's memorandum of law in support of its motion for summary judgment (Doc. No. 9). Diane Diggs is the Freedom of Information Specialist for the Office of Secretary, Office of Inspector General, Department of HHS, and her duties include assembling OIG documents in response to a FOIA request and recommending whether OIG documents should be released or withheld and identifying corresponding FOIA exemptions if withholding is recommended. (Diggs Decl. at ¶ 1.) When she receives a FOIA request from HHS's FOI/PA Division, Diggs stated that she logs it into her database. (*Id.* at ¶ 2.) Diggs then forwards the request to the component within OIG, including OIG regional offices, which she believes may have responsive documents. (*Id.* at ¶ 3.) All five FOIA requests were forwarded to Diggs for processing. (*Id.* at ¶ 4.) With regard to all five

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 14

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

FOIA requests, Diggs determined that the Office of Audit Services ("OAS") within OIG was the likely location to have responsive documents because OAS is responsible for: (1) the performance of audits relative to ACF and CMS programs; (2) conducting audits of HHS programs and grantees, including Title IV-E audits; (3) all ongoing audits by OIG of Title IV-E programs; and (4) policy decisions regarding whether a HHS program or grantee should be audited by the OIG. (*Id.* at ¶¶ 6, 8, 10, 11, 13.) Therefore, Diggs forwarded all five FOIA requests to OAS. Documents responsive to all five FOIA requests were located and retrieved from the records maintained in the Audit Office Program Files, photocopied and sent to HHS's FOI/PA Division. (*Id.*) No further information regarding the search is provided. Diggs further stated that there were no other likely locations for responsive records. (*Id.*)

**\*12** In response to Digg's declaration, the Commonwealth argues that she fails to explain or otherwise identify the "Audit Office Program Files" and her declaration is uninformative regarding the search methodology.

*Declarations of Frank T. Connors*

HHS produced two declarations from Frank T. Connors. The first one is dated April 13, 2006 ("Connors Decl. I") and is attached as Exhibit F to HHS's memorandum of law in support of its motion for summary judgment (Doc. No. 9). Frank Connors is the Program Analyst for OAS, Office of Inspector General, Department of HHS, and his duties include reviewing FOIA requests, coordinating searches for responsive documents within OAS, and assembling OAS documents for submission to OIG. (Connors Decl. I at 1.) When he receives a FOIA request from OIG, Connors stated that he logs it into his database. (*Id.* at ¶ 4.) Connors received all five FOIA requests from Diane Diggs. (*Id.* at ¶ 5.) With regard to these requests, Connors essentially identifies by title the individuals within OAS, Region III, Grants and Internal Activities ("GIA") Division, and the Office of Counsel to the Inspector General ("OCIG"), with whom he consulted and/or referred the document requests, and explains why

these offices/divisions are likely to have any responsive documents. Connors goes on to state whether these individuals located any responsive documents after conducting a search. However, other than indicating that the responsive records were maintained in the "Audit Office Program Files, " no other information is given regarding the search terms used, the structure of the agency's file system, or the names of the specific files searched.

In response to the Commonwealth's brief in opposition challenging the sufficiency of Connors' first declaration as completely lacking any details regarding the search terms or methodology used, and the structure of the agency's filing system, HHS filed the supplemental declaration of Frank T. Connors dated June 21, 2006 ("Connors Decl. II") (attached as Exhibit K to the reply memorandum in support of HHS's motion for summary judgment and opposition to Plaintiff's Rule 56(f) motion (Doc. No. 17)). In his supplemental declaration, Connors first explains that the files in OAS are know simply as "program audit files" or "audit work files." (Connors Decl. II at ¶ 4.) He then goes on to explain, in some detail, the search process employed for the first FOIA request dated June 29, 2005 (Case No.2005-0952-FW). Connors consulted with a senior auditor within OAS who conducted a search of paper and electronic work files for any inter-agency agreements between OIG and ACF regarding the performance of audits going back six years from 2005. (Connors Decl. II at ¶ 5.) Connors also consulted with other staff members and he details the searches conducted by these individuals regarding the second, third and fourth items in this FOIA request.

With regard to OAS's processing of the second FOIA requests dated June 29, 2005 (Case No.2005-0951-MB), Connors explained that a Supervisory Auditor within the GIA Division, a Supervisory Auditor within Region III, and a senior attorney within the OCIG searched paper and electronic audit work files for the period 1997-2002 for all documents, including e-mail, file notes, meeting notices, and correspondence, evidencing or discussing any agreement between ACF, its Regional Administrator, David Lett, and OIG relative to a review of Pennsylvania's Title IV-E

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 15

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

claims. (*Id.* at ¶ 6.) Connors further stated that the searches conducted by the Supervisory Auditors at GIA and Region III, and the senior attorney at OCIG located responsive documents maintained in paper and electronic audit work files and these documents were forwarded to him in paper form. (*Id.*)

**\*13** With regard to the third FOIA request dated June 30, 2005 (Case No.2005-0953-RE) requesting all documents relating to all child eligibility review instruments used by OIG auditors in ongoing or completed audits of Title IV-E maintenance payments made by States and local governments, Connors explained that a Supervisory Auditor within GIA searched all paper and electronic audit work files for responsive documents and did not locate any documents within the scope of the request. (*Id.* at 7.) Supervisory Auditors within Regions I, II and III also searched all paper and electronic audit work files for documents responsive to the third FOIA request and located and submitted all responsive documents. (*Id.*) Supervisory Auditors from Regions IV, V and IX each searched paper and electronic audit work files within their respective offices but had no responsive documents. (*Id.*) A senior attorney from OCIG also searched paper and electronic audit work files for documents responsive to the third FOIA request but did not locate any documents within the scope of the request. (*Id.*)

With regard to the fourth FOIA request dated June 30, 2005 (Case No.2005-0954-mb), Connors explained a Supervisory Auditor provided him with the requested list of all ongoing audits of Title IV-E programs in paper form, from an electronic audit work file. (*Id.* at ¶ 8.)

As to the fifth FOIA request dated July 19, 2005 (Case No.2005-1000-RE), requesting all documents post 1997 relating to decisions by ACF and OIG to subject Pennsylvania's Title IV-E program to audit by OIG, including discussions by ACF staff, ACF Regional Administrator David Lett, or OIG staff regarding same, and the decision of OIG to include a cost analysis of Title IV-E provider rates in its audit of Pennsylvania's Title IV-E program, Connors stated that a Supervisory Auditor within

GIA, a Supervisory Auditor within Region III, and a senior attorney within OCIG all searched paper and electronic audit work files from 1997 to present for responsive documents. (*Id.* at ¶ 9.) Connors further stated that all three individuals located and forwarded responsive documents maintained in paper and electronic audit work files to Connor in paper form. (*Id.*)

However, in its supplemental reply brief, the Commonwealth challenges Connors' supplemental declaration as still devoid of either a description of the search terms used to search these "electronic" or "paper" files, or the names of the particular folders within the program audit files or audit work files which were searched. The Commonwealth also contends that the search is deficient in that none of the individuals with whom Connors consulted regarding the search for responsive records indicated that the personal filing systems and computer hard drives of individual employees were searched, or that either the "program audit files" or " audit work files" contained the files of any individuals, including the ACF staff and David Lett.

*Declaration of Michael S. Marquis*

**\*14** Finally, HHS presented one declaration from Michael S. Marquis dated January 24, 2006 (" Marquis Decl."), which is attached as Exhibit G to HHS's memorandum of law in support of its motion for summary judgment (Doc. No. 9). Michael Marquis is the Director of the Freedom of Information Group ("FIG"), Office of Strategic Operations and Regulatory Affairs, Centers for Medicare and Medicaid Services ("CMS"), U.S. Department of HHS, and as such, is the Records Access Officer for CMS. Marquis's duties include responding to FOIA requests for records of CMS, determining whether to release or withhold records or portions of records, and overseeing all FOIA activities within CMS. (Marquis Decl. at ¶ 1.) Marquis received from HHS FOI/PA Division one FOIA request dated June 29, 2005 for interagency agreements between OIG and CMS for the performance of audits relative to CMS programs (Case No.2005-0952-FW). (*Id.* at ¶ 4.) In his declaration, Marquis identifies the offices/divisions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 16

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

likely to possess responsive documents,[FN27] and the basis for this conclusion, *i.e.,* generally the relationship between the office/division and the documents requested. Marquis does not provide any detail regarding the types of files searched or the structure of the referred offices' file systems. Marquis does indicate that the searches conducted by the offices to whom he forwarded the FOIA request resulted in the retrieval of approximately 174 pages of responsive records from OAGM and OFM, which were forwarded to HHS's FOI/PA Division. (*Id.* at ¶¶ 7, 10.) Marquis further stated that there were no other likely locations for responsive documents and all located responsive documents were provided to HHS's FOI/PA Division. (*Id.* at ¶¶ 9, 12.)

> FN27. The offices/divisions to which Marquis referred the FOIA request include: Office of Strategic Operations and Regulatory Affairs ("OSORA"); Office of Acquisition and Grants Management (" OAGM"); the Center for Beneficiary Choices ("CBC"); the Center for Medicaid and State Operations ("CMSO"); and CMS's Office of Financial Management (" OFM"). (Marquis Decl. at ¶¶ 5, 6, 8.)

The Commonwealth objects to the sufficiency of the Marquis declaration, for essentially the same reasons given as to the four previous declarations: Failure to identify the specific files searched and to explain the manner in which the search was conducted.

Reviewing the declarations of Eckert, Hooten, Diggs, Connors, and Marquis, the following conclusions can be drawn regarding the adequacy of the searches. Based on the information requested in the five FOIA requests, it was determined by the declarants that responsive materials were most likely located within the following agencies, offices, and/or divisions of HHS: ACF, and its offices/divisions OFA, ACYF; the regional offices of HHS Regions I, II, III, IV, V, and IX; OIG and its offices/divisions OAS, GIA, and OCIG; and CMS and its offices/divisions OSORA, OAGM, CBC, CMSO, and OFM. Collectively, the

declarants adequately explained how and why a particular FOIA request was referred to a particular agency/office/division. The declarants also stated that these offices/divisions were searched because they were the likely locations for records responsive to the five FOIA requests submitted by the Commonwealth. In addition, the declarants indicated the filing systems or types of files searched, *i.e.,* "Audit Office Program Files," " Program audit files," or "audit work files," and within these files, whether both paper and/or electronic files were searched, and in some cases, whether individual files maintained by employees/staff were searched. Moreover, the Court notes that through their respective positions within HHS and its offices and divisions, the declarants are charged with the responsibility of processing all FOIA requests referred to HHS or their agency/office/division, and therefore, are deemed to have some expertise in processing FOIA requests. Indeed, the Commonwealth has not pointed to any reason or basis for a contrary conclusion. Accordingly, the Court finds the declarations provide sufficient factual detail to show that the searches were reasonably calculated to uncover the records requested by the Commonwealth and indeed, HHS produced approximately 925 documents (260 pages of which contained redactions of personal information pursuant to Exemptions (b)(4) and (b)(6)), thereby demonstrating that HHS searched the appropriate offices for responsive documents. Inasmuch as the Commonwealth has failed to provide any rebuttal evidence showing the searches were not conducted in good faith, the Court finds HHS has met its burden regarding the adequacy of the search. Therefore, the Court finds that HHS is entitled to summary judgment with regard to the adequacy of the search. [FN28]

> FN28. The Court finds no merit to the Commonwealth's argument that HHS's failure to specifically identify the names of the employees and/or staff who maintained individual files and to indicate whether these particular files were searched precludes the Commonwealth from a meaningful opportunity to contest the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 17

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

adequacy of the search. HHS provided the Commonwealth with approximately 925 pages of documents. Certainly, the Commonwealth has had an adequate opportunity to review these documents and determine whether there appear to be any missing documents from individuals with whom the Commonwealth has dealt with regard to the Title IV-E audits and which the Commonwealth has reason to believe exist and were not produced. Yet, in its submissions to this Court, the Commonwealth does not identify any individuals whose records appear to be missing. Accordingly, the Commonwealth's argument amounts to nothing more than speculation as to what types of records might theoretically exist based on its prior dealings with HHS, rather than on any actual evidence of overlooked materials. Such speculation is insufficient to raise an issue of material fact with regard to the adequacy of the search. *Steinberg,* 23 F.3d at 552 (citing *SafeCard,* 926 F.2d at 1201); *Lee,* 235 F.R.D. at 288 (citing *SafeCard, supra* ).

### 2. Reasonably Segregable Factual Material

**\*15** The Commonwealth also challenges the adequacy of HHS's proof in support of its statement that it has released all reasonably segregable factual information. First, the Commonwealth argues that HHS's declarations and *Vaughn* indices are legally deficient with regard to the required factual details and explanation necessary to show that all reasonably segregable factual information has been released. In support of this argument, the Commonwealth cites *Krikorian v. Dep't of State,* 984 F.2d 461, 466-67 (D.C.Cir.1993), and *Rugerio v. U.S. Dep't of Justice,* 257 F.3d 534, 553 (6th Cir.2001). Second, the Commonwealth offers evidence of bad faith on the part of HHS with regard to segregability by pointing to one of the withheld pages for which HHS is claiming an exemption under 5 U.S.C. § 552(b)(5), but which the Commonwealth obtained outside the FOIA request, *i.e.,* Bate-stamped page no. 545. With regard to page no. 545, the Commonwealth argues

that there are non-exempt portions of that page which reasonably could have and should have been segregable from the exempt portion and therefore disclosed. HHS counters that based on the supplemental declaration of Robert Eckert and its *Vaughn* indices, it has conducted a satisfactory segregability analysis and released all segregable factual material. For the reasons set forth below, the Court finds the Commonwealth's arguments have substantial merit and recommends summary judgment be denied on this issue.

HHS also has the burden of demonstrating that it has released all reasonably segregable portions of each of the withheld documents or portions of documents, or providing a factual recitation as to why certain materials are not reasonably segregable. *Davin,* 60 F.3d at 1052 (citing 5 U.S.C. § 552(a)(4)(B)). Because the emphasis of FOIA is on *information* rather than documents, an agency cannot base withholding an entire document or page of information simply on a showing that it contains some exempt material. *Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977) (emphasis added). In 1974, Congress amended FOIA to specifically incorporate this requirement. *See* 5 U.S.C. § 552(b) .[FN29] In the District of Columbia Court of Appeals, it has been clearly established that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central,* 566 F.2d at 260 (citations omitted).

> FN29. Section 552(b) states in relevant part: "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under [§ 552(b) ]."

In determining whether the agency has satisfied its burden on segregability, the court must narrowly construe the exemptions with the focus on disclosure. *Davin,* 60 F.3d at 1052 (citing *Wightman v. Bureau of Alcohol, Tobacco & Firearms,* 755 F.2d 979, 982 (1st Cir.1985). A conclusory statement to the effect that the agency

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 18

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

has provided the requestor with all reasonably segregable portions of the non-exempt information, without any supporting justification, will not satisfy the agency's burden regarding segregability on summary judgment. *Davin,* 60 F.3d at 1052; *Mead Data Central,* 566 F.2d at 261. Rather, the agency must provide a detailed justification for its decision that non-exempt material is not segregable, which includes a description of "what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Central,* 566 F.2d at 261 (footnote omitted). In determining whether the agency has satisfied its burden of proof regarding segregability, the Court of Appeals in *Davin* required the agency to "describe the process by which [it] determined that all reasonably segregable material of each of the withheld documents or portions of documents had been released" and to "provide a factual recitation of why certain materials [were] not reasonably segregable ." *Davin,* 60 F.3d at 1052. The Court of Appeals rejected as wholly conclusory a declaration that was "comprised of assertions that documents were withheld because they contain the type of information generally protected by a particular exemption." *Id.*

*16 Moreover, it is of no moment for the agency to argue that this process will cause it to incur significantly increased costs. As the Court of Appeals explained in *Mead Data Central,* these " burdens may be avoided at the option of the agency . .. by immediate disclosure." 566 F.2d at 261. The Court of Appeals further opined:
Requiring a detailed justification for an agency's decision that non-exempt material is not segregable will not only cause the agency to reflect on the need for secrecy and improve the adversarial position of FOIA plaintiffs, but it will also enable the courts to conduct their review on an open record and avoid routine reliance on in camera inspection. It is neither consistent with the FOIA nor a wise use of judicial resources to rely on in camera review of documents as the principal tool for review of segregability disputes. See *Vaughn I, supra,* 484 F.2d at 825-26.... If an agency has provided the description and justification suggested by this opinion, a district court need not conduct its own in camera search for segregable non-exempt

information unless the agency response is vague, its claims too sweeping, or there is a reason to suspect bad faith. [*Weissman v. CIA* ], 565 F.2d 692, at 697-698 [ (D.C.Cir.] 1977).

*Mead Data Central,* 566 F.2d at 216-62 (footnotes omitted).

In the case at bar, the only declaration submitted initially by HHS to satisfy its burden of proving that all reasonably segregable, non-exempt material was released is that of Robert Eckert (Eckert Decl. I). [FN30] At the end of his first declaration, Eckert states in conclusory fashion that "[a]ll reasonably segregable, non-exempt information has been released. For records withheld in their entirety, there was no reasonably segregable, non-exempt information ." (Eckert Decl. I at ¶ 20.) In response to the Commonwealth's argument in opposition that such a conclusory statement without any explanation is insufficient to satisfy its burden, HHS filed the supplemental declaration of Robert Eckert dated June 19, 2006 ("Eckert Decl. II") (attached as Exhibit L to HHS's Reply Memorandum in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Rule 56(f) Motion) (Doc. No. 17)). In his supplemental declaration, Eckert states that he evaluated "each individual piece of information with careful consideration to determine segregability." (Eckert Decl. II at ¶ 5.) In this regard, Eckert further stated:

> FN30. HHS also provided the declarations of Michael Leonard (Exhibit H) and Richard Stern (Exhibit I) in support of its motion for summary judgment with regard to its decision to withhold approximately 202 pages of responsive documents. However, neither of these declarations addresses the decision-making process and/or justification for finding that "[a]ll reasonably segregable, non-exempt information has been released. For records withheld in their entirety, there was no reasonably segregable, non-exempt information."

Documents were withheld in full either because all

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 19

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

the information contained in the documents was exempt from disclosure or the redaction of exempt material would have left only mere templates or unintelligible or meaningless words and phrases because such non-exempt information was so inextricably intertwined with exempt material. For example, in some instances, what would remain after the redaction of the exempt information would have little or no value, amounting to barely more than the date of the draft or the email transmitting such draft and the names of the parties and the subject line-all information contained in the Vaughn index. In other instances, the withheld material contains confidential communications including facts and materials submitted in confidence to an attorney for purposes of seeking legal advice. In still other instances, the withheld material contains attorney work-product, including both factual and deliberative material, prepared in reasonable anticipation of litigation.

**\*17** Eckert Decl. II at ¶ 6. Finally, regarding Bate-stamped page no. 545 which HHS withheld in its entirety but which the Commonwealth was able to obtain outside of the FOIA request, Eckert stated that he made the determination to withhold page no. 545 under the deliberative process privilege of Exemption (b)(5), and still maintains that page no. 545 is exempt as deliberative, even after learning that the Commonwealth possessed a copy of that page. (*Id.* at ¶ 7.) Eckert disclaimed any prior knowledge that the Commonwealth possessed page no. 545 or how the Commonwealth came to possess it. (*Id.*)

The Court finds that HHS's supporting evidence is woefully inadequate on segregability. First of all, the explanation of Robert Eckert paints with too broad a brush-he speaks in general terms, without any identification of the specific pages to which the explanation is said to apply. This approach was specifically rejected by the Courts of Appeals in *Mead Data Central* and *Davin, supra.* In addition, for each page withheld in its entirety, HHS fails to provide a factual recitation as to why the information on that page was not reasonably segregable.

Second, the required explanation also cannot be found in the *Vaughn* indices provided by HHS,

despite HHS's representation that its *Vaughn* indices "specify in detail which portions of the documents are discloseable and which are exempt." *See* Reply Mem. in Supp. of Defs.' Mot. for Summ. J. & Opp'n to Pl.'s Rule 56(f) Mot. at 8. The "Bases for Exemption" set forth in the *Vaughn* Index assert that the documents were withheld because they contain the type of information generally protected by a particular exemption and, in some instances, provide additional detail regarding the contents of the documents to support application of the privilege claimed. However, none of the "Bases for Exemption" offers any explanation or description of how it was determined that all reasonably segregable, non-exempt portions of the documents were released, or that there was no reasonably segregable, non-exempt information.

HHS counters that under the attorney work-product privilege and attorney-client privilege, the release of segregable factual information is not required, and cites in support of this argument, *Commonwealth of PA., 623* F.Supp. at 307 (release of segregable factual information is not required with regard to material appropriately withheld under the attorney work-product privilege). While that may be an accurate statement of the law, HHS must first demonstrate the applicability of the attorney work-product privilege under Exemption (b)(5) to the withheld pages in this case. As explained below, HHS has failed to satisfy its burden of proof in claiming the attorney work-product privilege. Accordingly, to the extent HHS has rested its segregability analysis on the attorney work-product privilege, its analysis is likewise flawed.

Third and finally, the Commonwealth has presented actual evidence of bad faith on the part of HHS relative to segregability. In this regard, the Commonwealth argues that the first paragraph on page no. 545 contains obviously segregable factual background material that was withheld without justification or explanation. Although the *Vaughn* Index describes page no. 545 as containing predecisional opinions and strategy, the Commonwealth submits that in actuality, the page communicates the fact that the Commonwealth rejected a settlement offer, and that OAS " 'may initiate completion of the review that began in 2000,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 20

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

pursuant to the agreement between ACF and the Office of the Inspector General...." ' See Pl.'s Br. in Opp'n to HHS' Mot. for Summ. J. & in Supp. of its Rule 56(f) Mot. at 18 (quoting *Vaughn* Index of Withheld Documents from HHS Release Dated Jan. 5, 2006 for Case Nos.2005-1000RE and 2005-951MB at 18 (attached as Ex. 9 to Eckert Decl. I).) The Commonwealth contends that this page is clearly a non-exempt, post-decisional document that communicates a decision to another HHS component, and therefore, neither the claimed exemption nor the description in the *Vaughn* Index are supportable.

**\*18** The Court finds that the Commonwealth's point regarding page no. 545 is well-taken. An examination of page no. 545 reveals that the first paragraph [FN31] does indeed contain segregable, non-exempt, factual background information that does not involve predecisional opinions and strategy, as does the third paragraph.[FN32] Moreover, this factual information does not appear to be inextricably intertwined with exempt material, nor does it reveal the deliberative process within ACF, OAS, or OIG. Accordingly, at the very least, the first and third paragraphs of page no. 545 should have been released as segregable, non-exempt factual information.[FN33] The fact that HHS still maintains that page no. 545 is exempt in its entirety as deliberative, after receiving the Commonwealth's challenge, is troublesome.

FN31. The first paragraph of page no. 545 states: "Attached is correspondence from the Secretary, Pennsylvania Department of Public Welfare (DPW), that declined acceptance of the Administration for Children and Families' (ACF) settlement offer pertaining to recovery of overpayments for ineligible recipients in the Title IV-E Foster Care Program for Federal Fiscal Years 1998, 1999, and 2000. " *See* Exhibit B to Pl.'s Rule 56(f) Declaration dated June 2, 2006 (Doc. No. 14).

FN32. The third paragraph of page no. 545 reads as follows: "If you have any

questions, please contact me at 215/861-4000, or have your staff contact Michael Rolish, Grants Officer, at (215) 861-4016." *See id.*

FN33. Arguably, the only portion of page no. 545 that falls within the deliberative process privilege is the second paragraph, which states: "The Office of Audit Services may initiate completion of the review that began in 2000, pursuant to the agreement between the ACF and the Office of Inspector General, to determine the full extent to which DPW's claims are ineligible for FFP." *See id.* This argument is addressed in Part 3, *infra.*

Accordingly, the Court finds that HHS has failed to satisfy its burden of proof with regard to segregability and therefore recommends that summary judgment be denied on this issue.

3. Withholding Documents Based on Exemption (b)(5)

In this case, the claimed exemption for the 196 pages of responsive materials in dispute is Exemption (b)(5) of FOIA, which allows a government agency to withhold responsive records to a FOIA request that consist of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). Stated another way, "if a particular document falls within a recognized evidentiary privilege and, hence, would not normally be discoverable by a private party in the course of civil litigation with the agency, then the document likewise falls within the scope of Exemption 5 and is not releasable under the FOIA." [FN34] *Jordan v. U.S. Dep't of Justice,* 591 F.2d 753, 772 (D.C.Cir.1978), *overruled in part on other grounds* in *Crooker v. Bureau of ATF,* 670 F.2d 1051 (D.C.Cir.1981)(en banc)). This exemption has been construed to encompass three privileges: the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. *See EPA v. Mink,* 410 U.S. 73, 85-90, 93

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 21

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

S.Ct. 827, 35 L.Ed.2d 119 (1973) (deliberative process privilege); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (attorney work-product privilege); and *Mead Data Central,* 566 F.2d at 252-55 (attorney-client privilege). All three of these privileges have been asserted by HHS in this case.[FN35]

> FN34. Although roughly based on discovery principles, exemption (b)(5) differs fundamentally in that a key ingredient for discovery, relevance, plays no part in FOIA cases. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980) (citing *EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *see also Mead Data Central,* 566 F.2d at 252 (citing *EPA v. Mink, supra* ).

> FN35. HHS claims the deliberative process privilege as to all 202 withheld pages, and for 104 of these pages, it is also claiming the attorney-client privilege; it is also claiming the attorney-work product privilege for 133 of the 202 withheld pages.

In support of its motion for summary judgment on the issue of withholding under Exemption (b)(5), HHS argues that it has provided sufficient descriptions for each withholding in its *Vaughn* indices to satisfy its burden on summary judgment to show that the documents or information are exempt from disclosure under Exemption (b)(5). HHS further argues that paragraphs 18 and 19 of Eckert's first declaration, as well as the declarations of Stern and Leonard, underscore that the documents withheld under Exemption (b)(5) generally consisted of drafts, predecisional advice, recommendations, suggestions, opinions, as well as confidential attorney-client communications and attorney work-product concerning an audit of Pennsylvania's foster care program, and therefore, HHS has demonstrated that it reasonably withheld the challenged documents under FOIA Exemption (b)(5).

**\*19** The Commonwealth disputes that the *Vaughn*

indices and declarations submitted by HHS provide sufficient detail to support the claimed privileges and therefore argues HHS has failed to carry its burden to entitle it to summary judgment on this issue.

*The Attorney-Client Privilege*

The attorney-client privilege is intended to protect " 'only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." ' *Coastal States Gas Corp.,* 617 F.2d at 862-63 (quoting *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)).[FN36] The purpose behind this privilege is to encourage a relationship of trust and free discussion between attorneys and their clients. *Id.* at 862; *Mead Data Central,* 566 F.2d at 253. Therefore, the application of this privilege is not restricted to communications that are made in relation to litigation or to a particular dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter. *Coastal States Gas Corp.,* 617 F.2d at 862. However, a fundamental prerequisite to assertion of the privilege is the demonstration of "confidentiality both at the time of the communication and maintained since. The burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." *Id.* at 863. The test applied by the courts in determining confidentiality is "whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." *Id.* (quoting *Mead Data Central,* 566 F.2d at 253 n. 24). "If the information has been or is later shared with third parties, the privilege does not apply." *Mead Data Central,* 566 F.2d at 253 (footnote omitted).

> FN36. There is no question that this privilege applies to agency attorneys and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

their clients, *i.e.,* the agencies. *See, e.g., Coastal States Gas Corp.,* 617 F.2d at 863; *Mead Data Central,* 566 F.2d at 252.

One of the measures used to determine confidentiality is the degree of care exhibited in the handling of the documents. *Coastal States,* 617 F.2d at 864. In this regard, the courts should ask what evidence exists to indicate that the person requesting the advice from the agency attorney had any expectation of confidentiality. *Id.* In *Coastal States,* the court of appeals found there was no evidence in the record from which it could conclude that there was any expectation of confidentiality. In support of its conclusion, the court of appeals noted the agency failed to establish that some attempt had been made to limit disclosure of the confidential documents to appropriate agency personnel, or that it made any attempt at all to protect the confidential communications within the agency, as the agency admitted that it did not know who had access to the documents, and undisputed testimony existed to the effect that in some regions copies of the memoranda were circulated to all area offices, filed and indexed for future reference, relied on as precedent, and used as training materials for new personnel. *Id.* at 863-64.

**\*20** In a prior FOIA case between the same parties to the instant litigation, the district court found that HHS failed to establish the confidentiality of the documents for which it was claiming nondisclosure under the attorney-client privilege. In the 1985 case between the Commonwealth and HHS, HHS provided a *Vaughn* index and two affidavits in support of its claimed exemptions for withholding fifteen documents. 623 F.Supp. at 305. The *Vaughn* index in the 1985 case set forth the date, author, recipient, subject matter, length of each document, the circumstances of its preparation, and the exemptions being claimed. The affidavits of two agency attorneys provided greater detail regarding the preparation of the withheld documents, 11 out of 15 of which were claimed to have been generated in preparation for litigation before the Grant Appeals Board. Although the district court found that given the detail of its affidavits and *Vaughn* index, HHS met its burden of providing the Commonwealth with sufficient information to

effectively challenge the claimed exemptions for 15 documents, the court nonetheless concluded that HHS had not met its burden of proving the application of the attorney-client privilege to 8 of the withheld documents. *Id.* at 305-06. The district court found that at best, the *Vaughn* index and affidavits showed only that documents 2-9 were intended to be confidential at the time they were made. *Id.* The district court found lacking any assertion or proof that the matter discussed in the documents remained confidential at the present time, "or that the documents were circulated only to those in the agency authorized to speak or act for the agency on the subject matter of the communications." *Id.* at 306.

In the present action, HHS asserts the attorney-client privilege for 104 of the 196 withheld pages,[FN37] and in support thereof, offers the explanations contained in its *Vaughn* indices supplemented by the declarations of Michael Leonard and Richard Stern. In its *Vaughn* indices, HHS states as the basis for claiming the attorney-client privilege, for almost all of the pages withheld under this privilege, that "in addition," or "further," or "moreover," "the withheld material contains confidential attorney-client communications." This is the only explanation provided in the *Vaughn* indices for 81 of the pages withheld under the attorney-client privilege.[FN38] These 81 pages contain the following Bate-stamp page numbers: 490-91, 499, 500-06, 512, 529, 530, 533, 542, 831, 832, 839, 84-85, 89-90, 92-93, 97, 99-100, 101-02, 103, 104-05, 205-08, 209-11, 212-15, 223-24, 241, 242, 243, 248, 249-50, 251, 252-53, 254-55, 256-57, 258-59, 260-61, 262-64, 265, 266-67, 268, 269, 270-71, 280-84, 287-88, 292, and 465. This explanation alone is clearly insufficient to establish the confidentiality of the information contained in the withheld pages.

> FN37. The attorney-client privilege is asserted for the following Bate-stamp page numbers: 490-91, 499, 500-06, 512, 526-28, 529, 530, 533, 538, 539, 542, 584-86, 831, 832, 837, 838, 839, 84-85, 89-90, 92-93, 97, 99-100, 101-02, 103, 104-05, 112, 205-08, 209-11, 212-15,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 23

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

223-24, 233-35, 241, 242, 243, 248, 249-50, 251, 252-53, 254-55, 256-57, 258-59, 260-61, 262-64, 265, 266-67, 268, 269, 270-71, 274-76, 277-79, 280-84, 287-88, 289-91, 292, and 465. In its opening memorandum of law in support of it motion for summary judgment ("HHS's opening memorandum"), HHS includes Bate-stamp page nos. 496, 556, 557, and 833 in the list of pages withheld under the attorney-client privilege. (Doc. No. 9 at page 25) However, an examination of the *Vaughn* indices reveals that the only claimed privilege for page nos. 496, 556, 557, and 833 is the deliberative process privilege. In addition, page nos. 233-35 are not included in HHS's list in its opening memorandum because these pages were added by the Commonwealth in its June 2, 2006 submission which post-dates the filing of HHS's opening memorandum.

FN38. Although the *Vaughn* indices do list the author and recipients of the documents (in most instances), the Court has no way of knowing if these individuals are authorized to act or speak on behalf of the agency on the subject matter of the communication.

For Bate-stamp page numbers 538, 539, 837, 838, and 112, the only explanation given by HHS in its *Vaughn* indices is "In addition, the withheld material contains confidential attorney-client communications pertaining to a legal matter for which client has sought professional advice." For three (3) pages, Bate-stamp page nos. 233-35, no explanation is given in the *Vaughn* index, other than the initial claim that the "withheld material is protected by the ... attorney-client privilege..." Again, these explanations alone are clearly insufficient to establish confidentiality.

**\*21** For 15 of the withheld pages under this privilege, Bate-stamp page nos. 526-28, 584-86, 274-76, 277-79, and 289-91, HHS provides the same statement as provided for the above 81 pages, but also adds that "The document is clearly marked as 'CONFIDENTIAL-ATTORNEY/CLIENT

PRIVILEGED MEMORANDUM." ' While such a designation on the pages demonstrates the existence of an expectation of confidentiality, it still falls short of the required showing. Just because a document is designated as " CONFIDENTIAL-ATTORNEY/CLIENT PRIVILEGED" does not mean that the Court can assume that the information contained therein was continually maintained as such. HHS asks this Court to make too great of a leap, especially since it bears the burden of proving that the claimed privilege applies. HHS must meet this burden by providing evidence, either through affidavit or some other means, that established that the particular confidential materials have not been circulated beyond those authorized to speak on its behalf on the subject matter contained in the communication.

The Declaration of Michael Leonard ("Leonard Decl.") fails to add anything to support the application of the attorney-client privilege. Leonard is an attorney in Region III of the Office of the General Counsel (OGC) of HHS and he either authored or received nine (9) of the pages withheld by HHS. (Leonard Decl. at ¶¶ 1, 5.) Leonard addresses the attorney-client privilege claimed for seven (7) of these pages, Bate-stamp page numbers 490-91, 529, 530, and 262-64, in his declaration. However, he does not provide any more information or explanation regarding page numbers 529, 530, and 262-64, than that already contained in the *Vaughn* indices. (Leonard Decl. at ¶¶ 10-12.) For page nos. 490-91, Leonard adds only that he provided input into the draft letter and advice to HHS employees concerning the letter. (*Id.* at ¶ 7.) Leonard's declaration is completely devoid of any proof that there was an expectation of confidentiality or that the materials containing the confidential information were circulated no further than among the employees of HHS who are authorized to speak or act on behalf of it in relation to the subject matter of the communication.

Likewise, the Declaration of Richard Stern ("Stern Decl.") does not add significantly to the explanations provided in the *Vaughn* indices for the attorney-client privilege. Stern is an attorney in the OCIG of the OIG of HHS, and he either authored or received 85 of the pages withheld by HHS. (Stern

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 24

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

Decl. at ¶¶ 1, 4-5.) Sixty (60) of these pages were withheld on the basis of the attorney-client privilege. For the following Bate-stamp page numbers, Stern stated merely that the pages contain a confidential exchange of emails between himself and agency attorneys and employees concerning either a draft document to the Commonwealth of Pennsylvania, or an audit of Pennsylvania's Title IV-E Foster Care Program or the Title IV-E audit: 490-91, 831, 832, 84-85, 90-90, 92-93, 101-02, 103, 241, 249-50, 251, 252-53, 254-55, 256-57, 258-59, 260-61, 262-64, 265, 266-67, 268, 269, 270-71, and 292. (*Id.* at ¶¶ 7, 9-11, 14, 16, 21-22, 32, 35-48.) Stern's explanation is simply a reiteration of that given in the *Vaughn* indices. For Bate-stamp page numbers 500-06, 104-05, 112, 209-11, 212-15, 223-24, 242, and 243, Stern stated that the pages contain a confidential legal memorandum, prepared by him to agency attorneys and/or employees regarding the audit of Pennsylvania's foster care claims or its Title IV-E program. (*Id.* at ¶¶ 8, 23-24, 29-31, 33.) Again, Stern's explanation adds nothing to the *Vaughn* indices. Finally, Stern stated that Bate-stamp page numbers 99-100 contain a confidential exchange of emails between himself and an agency attorney and agency employees regarding Title IV-E regulations. (*Id.* at ¶ 20.) Stern's explanation is simply a reiteration of that given in the *Vaughn* indices. However, at the end of his declaration, Stern makes the following statement with regard to all of the pages he authored or received:

**\*22** The documents at issue contain confidential communications from OIG to me as OIG's attorney and vice versa, for the purpose of advising and assisting OIG, and in a few instances, their HHS partner in these activities, ACF, with legal issues. My advice in these communications was advisory in nature and did not represent statements of agency policy or the final agency decision on a particular matter. OIG attorneys provide options and advice to OIG, which the agency can choose to adopt or not, depending on both legal consequences and other policy considerations. *Moreover, both the attorneys and clients who received these communications had a clear expectation that they would remain confidential. Indeed, all e-mail communications from the Office of Counsel to the Inspector General include a warning that they contain information*

*protected by the attorney-client, attorney work product, deliberative process,* or other privilege, or protected by Federal confidentiality laws.

*Id.* at ¶ 49 (emphasis added). Based on Stern's statement in paragraph 49, HHS has offered some evidence of an expectation of confidentiality. However, this offer of proof still falls short of the mark. Despite his statement that all e-mail communications from the Office of Counsel to the Inspector General contain a warning that the information contained therein is protected by various privileges, there is no indication in the *Vaughn* indices that this warning appears on the emails.[FN39] Moreover, most law firms and corporate and government legal departments include this warning on all of their emails as a matter of course. That does not mean, however that all of the information contained in those emails is confidential, or has continued to remain confidential. At best, Stern's declaration establishes an expectation of confidentiality at the time the document was drafted, but as explained earlier, this alone is not enough to carry HHS's burden. It is clear from the above case law that HHS must also establish that the pages for which it is claiming the attorney-client privilege were not circulated to any persons not authorized to speak on its behalf regarding the subject matter or to third parties. Currently, there is nothing in the record that allows the Court to make this conclusion.

> FN39. Yet, for Bate-stamp page nos. 526-28, 584-86, 274-76, 277-79, and 289-91, HHS's explanation of the attorney-client privilege included the confidentiality designation.

Since HHS bears the burden of proof on the application of a claimed exemption and it has failed to do so based on the attorney-client privilege, HHS will not be entitled to summary judgment on its withholding of the 104 pages unless it demonstrates that these within Exemption (b)(5) for some other reason.[FN40]

> FN40. A great deal of overlap exists

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 25

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
(Cite as: Slip Copy)

between the attorney-client privilege and the deliberative process privilege of Exemption (b)(5), with respect to materials containing legal opinions and advice. *Mead Data Central,* 566 F.2d at 254 n. 28. However, these two privileges are distinct in that the "attorney-client privilege permits nondisclosure of an attorney's opinion or advice *in order to protect the secrecy of the underlying facts,* while the deliberative process privilege directly protects advice and opinions and *does not permit the nondisclosure of underlying facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process.*" *Id.* (emphasis added). Moreover, the courts have held that if withheld materials are exempt only based on the deliberative process privilege, the agency is required to describe the factual content of the materials and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the materials. *Id.*

*Attorney Work-Product Privilege*

HHS also asserts the attorney work-product privilege as a basis for withholding 133 pages of responsive material.[FN41] This privilege "protects disclosure of materials prepared by attorneys, or non-attorneys supervised by attorneys, in contemplation of litigation, that reveal information about an attorney's preparation and strategy relating to a client's case." *Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F.Supp.2d 252, 268 (D.D.C.2004) (citing *Coastal States,* 617 F.2d at 866); *Wilderness Society v. U.S. Dep't of Interior,* 344 F.Supp.2d 1, 17 (D.D.C.2004) (citing *Judicial Watch, supra* ). The purpose of the attorney work product privilege is to provide "a working attorney with a 'zone of privacy' within which to think, plan weigh facts and evidence, candidly evaluate a clients case, and prepare legal theories." *Coastal States,* 617 F.2d at 864. Moreover, factual information in attorney work-product will also be protected unless the requesting party can demonstrate a substantial need

for the material and an inability to obtain it without suffering undue hardship. *Judicial Watch,* 297 F.Supp.2d at 268 (citing Fed.R.Civ.P. 26(b)(3); *Putnam v. U.S. Dep't of Justice,* 873 F.Supp. 705, 711 n. 4 (D.D.C.1995)). "The work-product privilege can be waived, however, if the work product is disclosed to a third party who does not share a 'common interest in developing legal theories and analyses of documents' with the primary party." *Id.* (quoting *In re Sealed Case,* 676 F.2d 793, 817 (D.C.Cir.1981)) (other citations omitted).

> FN41. The attorney work-product privilege is asserted for the following Bate-stamp page numbers: 490-91, 492-93, 497-98, 499, 500-06, 512, 517, 518-19, 526-28, 529, 530, 533, 542, 584-86, 831, 832, 839, 84-85, 86, 87-88, 89-90, 91, 92-93, 94-95, 96, 97, 101-02, 104-05, 115-17, 205-08, 209-11, 212-15, 217-18, 221-22, 223-24, 233-35, 241, 242, 243, 245, 246-47, 248, 249-50, 251, 254-55, 256-57, 258-59, 260-61, 262-64, 265, 266-67, 268, 269, 270-71, 272-73, 274-76, 277-79, 280-84, 285-86, 289-91, 292, 465, and 470-82.

*23 The cornerstone of this privilege is that the documents were prepared *in anticipation of litigation. Id.* (citing *Jordan,* 591 F.2d at 775) (emphasis added). Therefore, the attorney work product privilege may only be invoked to exempt those documents prepared in anticipation of litigation, and not " 'every written document generated by an attorney." ' *Judicial Watch,* 297 F.Supp.2d at 268 (quoting *Senate of the Commw. of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d 574, 586 (D.C.Cir.1987)). The agency's burden of proving application of the attorney work-product privilege is two-fold: The agency must (1) show that the "documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind," *Coastal States,* 617 F.2d at 865, and (2) " provide some indication whether the documents have been shared with third parties, which would amount to a waiver of the privilege" [FN42],

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 26

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

*Wilderness Society,* 344 F.Supp.2d at 17 (citing *Judicial Watch,* 297 F.Supp.2d at 268). As to the first requirement, there must be some "indication in the *Vaughn* index or affidavits that there was even the dimmest expectation of litigation *when the [ ] documents were drafted.*" *Coastal States,* 617 F.2d at 865 (emphasis added).

> FN42. The district court in *Judicial Watch* explained that in a normal, adversarial proceeding in which the parties are presumed to have equal access to the facts, on a waiver of privilege claim, the party asserting waiver would have the burden of proving that the privilege had been waived. However, in a FOIA case, where the agency possesses almost exclusive access to the facts, the court has required the agency to prove that it has not waived the privilege because the requester is not in a position to disprove it. 297 F.Supp.2d at 269 (citing *King v. U.S. Dep't of Justice,* 830 F.2d 210, 218 (D.C.Cir.1987)).

In *Judicial Watch, Wilderness Society,* and *King,* the courts refused to allow the agencies to withhold documents pursuant to the attorney work product privilege because in all three cases, the agencies failed to provide the courts with sufficient facts, in either their affidavits or *Vaughn* indices, to allow the courts to conclude that specific claims had arisen and were likely to be pursued to the point of litigation by the agency.

Similarly, in the case at bar, HHS fails to provide both the court and the Commonwealth with sufficient facts in either its declarations or *Vaughn* indices to determine whether the work product privilege applies to each of the claimed 133 pages. Indeed, the *Vaughn* indices for the 133 pages withheld pursuant to the attorney work product privilege state merely that the "withheld material is an intra-agency memorandum containing predecisional analysis and opinions concerning the audit of Pennsylvania's Title IV-E program ... [and] contains confidential ... attorney work-product, prepared in reasonable anticipation of litigation or administrative proceedings between HHS and

Pennsylvania." This explanation is stated for each of the 133 pages claimed as exempt under the attorney work product privilege. In addition, the declarations of Michael Leonard and Richard Stern fail to provide the necessary detail for the court to determine that these pages were drafted in anticipation of litigation. As to establishing this requirement, both declarations are utterly devoid of detail, stating only that "[t]he documents at issue were either obtained or prepared in contemplation of litigation with the Commonwealth of Pennsylvania concerning an audit of Pennsylvania's Title IV-E program." Stern Decl. at ¶ 52; Leonard Decl. at ¶ 16. Stern goes on to state that "[i]ndeed, a large majority of the documents reflect [his]own legal opinions and mental processes prepared in anticipation of the very litigation that Pennsylvania has initiated in [*Commw. of PA Dep't of Public Welfare v. United States, U.S. Dep't of Health & Human Serv.,* C.A. No. 05-1345 (W.D.Pa.) ]. Stern Decl. at ¶ 52. However, what Mr. Stern and HHS have failed to realize is that they have provided no factual basis for the Court to make the giant leap they suggest between the dates the documents were created (many of which occurred in 2000), and the litigation filed in 2005 as to how those documents could have been prepared in anticipation of litigation when the litigation was not filed, in many instances, until 5 years later.

*24 There is no indication at the time the particular document was drafted what claims or litigation were anticipated, especially since there may have been numerous audits of Pennsylvania's Title IV-E programs since 1997, and it is not clear whether every audit resulted in some sort of claim, administrative proceeding, or federal court case. For each document or page claimed as exempt under the attorney work-product privilege, HHS must identify the particular audit (by date or some other basis) which it anticipated would result in litigation (including an administrative proceeding), and specifically identify the administrative proceeding and/or federal court case which resulted, if any. In addition, HHS provides no indication of whether the documents have been shared with third parties and, therefore, whether the privilege has been waived. For example, if agency attorneys prepared any of these documents in response to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 27

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

litigation, and had filed substantially similar material with a court or other administrative body such that they were publicly available, HHS would have waived the privilege.

For these reasons, HHS has failed to satisfy its burden of proving that the 133 pages are exempt from disclosure pursuant to the attorney work-product privilege. Therefore, unless HHHS demonstrates that these documents fall within Exemption (b)(5) under the deliberative process privilege, the Court will not be able to find that HHS is entitled to summary judgment in its favor on the withheld documents.

### Deliberative Process Privilege

HHS has invoked the deliberative process privilege of Exemption (b)(5) as the basis for withholding all of the pages challenged by the Commonwealth. This privilege "protects from disclosure ' documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." ' *Wilderness Society,* 344 F.Supp.2d at 10 (quoting *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (other citation omitted)). "The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public." *Id.* (citing *Defenders of Wildlife v. U.S. Dep't of Agric.,* 311 F.Supp.2d 44, 57 (D.D.C.2004)); *see also Coastal States,* 617 F.2d at 866 (citing *Jordan,* 591 F.2d at 772-74). The critical question, therefore, in determining whether an agency has met its burden of proof as to the deliberative process privilege, is whether " ' disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." ' *Wilderness Society,* 344 F.Supp.2d at 10 (quoting *Formaldehyde Inst. v. Dep't of*

*Health & Human Serv.,* 889 F.2d 1118, 1122 (D.C.Cir.1989)) (other citation omitted).

**\*25** In order to withhold documents under the deliberative process privilege, an agency must demonstrate that its decision is both (1) predecisional and (2) deliberative. *Coastal States,* 617 F.2d at 866; *Wilderness Society,* 344 F.Supp.2d at 10 (citing *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 39 (D.C.Cir.2002); *Judicial Watch,* 297 F.Supp.2d at 259 (citations omitted). "A document is predecisional if it was 'prepared in order to assist an agency decision-maker in arriving at his decision,' rather than to support a decision already made." *Wilderness Society,* 344 F.Supp.2d at 10 (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior,* 976 F.2d 1429, 1434 (D.C.Cir.1992) (other citation omitted)). In other words, a predecisional document is one that is " 'antecedent to the adoption of agency policy." ' *Judicial Watch,* 297 F.Supp.2d at 259 (quoting *Jordan,* 591 F.2d at 774). An agency will satisfy its burden as to the predecisional requirement if it "pinpoints[s] an agency decision or policy to which the document contributed," *Senate of Puerto Rico,* 823 F.2d at 585, or "identif [ies] a decision-making process to which a document contributed", *Judicial Watch,* 297 F.Supp.2d at 259 (citation omitted).

As to the second requirement, that the document be deliberative, the agency must show that the document is " 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." ' *Wilderness Society,* 344 F.Supp.2d at 11 (quoting *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975)) ("*Vaughn II* "); *Judicial Watch,* 297 F.Supp.2d at 259 (citing same). The deliberative document "must reflect the ' give-and-take of the consultative process." ' *Wilderness Society,* 344 F.Supp.2d at 11 (quoting *Senate of Puerto Rico,* 823 F.2d at 585). "In determining whether the deliberative process privilege should apply to a particular document, courts often look at "the nature of the decision making authority vested in the officer or person issuing the disputed document,' and the relative position in the agency's 'chain of command' occupied by the document's author and recipient." '

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 28

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

*Id.* (quoting *Animal Legal Defense Fund, Inc. v. Dep't of Air Force,* 44 F.Supp.2d 295, 301 (D.D.C.1999)). In this regard, generally employee to supervisor correspondence is more likely than other intra-agency communications to be exempt under the deliberative process privilege. *Judicial Watch,* 297 F.Supp.2d at 264 (citing *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1195 (D.C.Cir.1991) ("A document from a junior to a senior is likely to reflect his or her own subjective opinions .... By contrast, one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give and take. ") (citing *Senate of Puerto Rico,* 823 F.2d at 586; *Coastal States,* 617 F.2d at 868)). Also, simply because a document has been designated as a "draft" does not automatically entitle the agency to withhold it based on the deliberative process privilege. *Wilderness Society,* 344 F.Supp.2d at 14 (citing *Arthur Andersen & Co. v. I .R.S.,* 679 F.2d 254, 257 (D.C.Cir.1982)). For each document designated as a "draft," the agency must indicate whether the "draft" was " '(1) 'adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public.' " *Id.* (quoting *Judicial Watch,* 297 F.Supp.2d at 261).

**\*26** Generally, factual information contained in a document which is withheld pursuant to the deliberative process privilege must be disclosed. *Judicial Watch,* 297 F.Supp.2d at 261 (citing *Petroleum Info. Corp.,* 976 F.2d at 1434; *Mead Data Central,* 566 F.2d at 256). However, where the factual material may expose the policy judgments or reasoning of the author, and therefore the deliberative process of the agency, the factual information will also be exempt. *Id.* at 262 (citing *Mead Data Central,* 566 F.2d at 256; *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1539 (D.C.Cir.1993); *Petroleum Info. Corp.,* 976 F.2d at 1437-38); *Wilderness Society,* 344 F.Supp.2d at 14. In the latter instance, the agency must provide the required justification for not releasing segregable factual information as outlined in Part 2 above.

In addition, the Court of Appeals for the District of Columbia has repeatedly emphasized that an agency will not satisfy its burden of establishing its right to withhold records with a conclusory assertion of privilege. *Id.* (citing *Senate of Puerto Rico,* 823 F.2d at 585 (quoting *Coastal States,* 617 F.2d at 861)). Rather, "[t]he agency must identify the role of a contested document in a specific deliberative process, *Coastal States,* 617 F.2d at 868, in order to 'show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA.' " *Judicial Watch,* 297 F.Supp.2d at 259 (quoting *Mead Data Central,* 566 F.2d at 258) (other citations omitted). Moreover, "[s]ince the applicability of the deliberative process privilege depends on the content of each document and the role it plays in the decisionmaking process, an agency's affidavit must correlate facts in or about each withheld document with the elements of the privilege." *Id.* at 259-60 (citing *Senate of Puerto Rico,* 823 F.2d at 585; *Coastal States,* 617 F.2d at 866; *Mead Data Central,* 566 F.2d at 251); *see also Wilderness Society,* 344 F.Supp.2d at 14 (to qualify redacted and withheld documents as exempt under the deliberative process privilege, the agency must " identify the 'function and significance ... in the agency's decision making process' " ' of these documents (citing *Arthur Andersen,* 679 F.2d at 258)). "Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process privilege claim." *Id.* at 260 (citing *Senate of Puerto Rico,* 823 F.2d at 585) (other citation omitted).

In the case at bar, neither the *Vaughn* indices nor the declarations of Leonard and Stern provide sufficient detail to enable this Court to decide HHS's claim of deliberative process privilege. Although the explanations for many of the withheld pages state that the documents make recommendations or express opinions regarding legal or policy matters, the *Vaughn* indices and declarations fail to provide any details regarding the give-and-take and/or supervisor/employee relationship between the author and recipient(s) in all but a few entries. Moreover, none of the explanations identify the specific agency decision or policy to which a particular document contributed, or state what role the document played in the deliberative process. For example, the entry for Bate-stamp page no. 520 identifies a specific

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 29

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

review-Pennsylvania's Title IV-E foster care program for federal fiscal years 1998, 1999 and 2000-but neglects to identify the agency decision to which the document contributes and/or the role the document played in the decision. As another example, most entries describe the subject matter of the documents as relating to either a Pennsylvania Title IV-E program, an audit of that program, or a proposed settlement agreement. Not only does this description fail to identify the particular audit or program under consideration, it fails to identify the specific agency decision and the date thereof to which the particular document contributed and the way it contributed. Certainly, more than one audit has been conducted or contemplated by HHS and/or OIG with regard to Pennsylvania since 1997, yet no distinction is made as to which audit a particular document is referring. At the very least, HHS must identify the specific audit and/or program discussed in each withheld document, the particular agency decision to which the document contributed, and how the document contributed to it.

*27 Nor does HHS correlate any facts about the withheld material with the elements of the privilege. Rather, the explanation merely reiterates the required elements of the deliberative process privilege. For many of the entries, the author and/or recipient(s) are unknown, so that a particular individual cannot be linked to a document. In this situation, " 'it becomes difficult if not impossible, to perceive how the disclosure of such documents would result in a chilling effect upon the open and frank exchange of opinions within the agency." ' *Wilderness Society,* 344 F.Supp.2d at 15 (quoting *Ethyl Corp. v. U.S. E.P.A.,* 25 F.3d 1241, 1250 (4th Cir.1994)). At the very least, HHS should provide information regarding the source of the documents' origination or the location where these documents were found, in order for the Court to assess what role, if any, a document played in the decision-making process.

In a few cases, where the document is described as a "draft," (*see e.g.,* Bate-stamp page nos. 513-16), HHS states that the documents do not represent the final agency decision. But the documents still do not fall within the deliberative process privilege because they fail to articulate with the required

detail any particular agency decision or correlate the facts with the elements of the privilege.

In order for HHS to prove it is entitled to withhold 196 pages of materials under the deliberative process privilege, it must show that each document is both predecisional and deliberative. However, on the current record, the Court cannot make a determination whether any of the entries challenged by the Commonwealth satisfy this test.

Accordingly, because HHS's *Vaughn* indices and declarations fail to provide sufficient detail to show that either the attorney-client privilege, attorney work-product privilege, or the deliberative process privilege applies to the withheld materials, the Court recommends that Defendants' motion for summary judgment on this issue be denied.

### 4. Policy Considerations

Finally, HHS argues that policy considerations also support granting summary judgment in its favor. In this regard, HHS accuses the Commonwealth of instituting the instant FOIA case with the sole purpose of conducting discovery in Civil Action No. 05-1345 (W.D.Pa.), thereby intentionally sidestepping the federal rules of discovery and this Court's instruction that discovery in Civil Action No. 05-1345 be stayed until the dispositive motions were resolved. *See* Reply Mem. in Supp. of Defs.' Mot. for Summ. J. & Opp'n to Pl.'s Rule 56(f) Mot. at 13. Such a tactic, according to HHS, is squarely against the spirit and purpose of FOIA, as explained by numerous courts, including the Supreme Court and Court of Appeals for the Third Circuit.[FN43] HHS argues that essentially, these cases hold that FOIA was not intended to be a private discovery tool or to replace or supplement the discovery of litigants, but rather, is a public disclosure statute, fundamentally designed to inform the public about agency action, and not to benefit private litigants. Despite the express purpose of FOIA, HHS submits that counsel for the Commonwealth "has converted FOIA into his own personal discovery tool in an effort to avoid and/or supplement the Federal Rules of Civil Procedure." (*Id.* at 14.) HHS further argues that if every plaintiff in a civil action against the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 30

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

United States filed a corresponding FOIA case in order to sidestep the federal rules of discovery, the drain of resources on the government and the Court system would be immeasurable. HHS posits that the Commonwealth should not be permitted to continue misusing and abusing the FOIA.

FN43. *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry . .. FOIA was *not* intended to be a private discovery tool"; *Metex Corp. v. ACS Ind., Inc.,* 748 F.2d 150, 155 (3d Cir.1984) (rejecting requester's argument that information requested is necessary to resolve underlying civil litigation as FOIA is public disclosure statute and not intended to replace or supplement discovery of private litigants); *Newry Ltd. v. U.S. Customs & Border Prot. Bureau,* No. Civ. A. 04-02110 HHK, 2005 WL 3273975, at *4 (D.D.C. July 29, 2005) (FOIA requesters' position as an entity whose merchandise was seized and the subject of administrative forfeiture proceeding had no bearing on its "right" to documents in question); *Changzhou Laosan Group v. U.S. Customs & Border Prot. Bureau,* No. Civ. A. 04-1919(ESH), 2005 WL 913268, *7 (D.D.C.Apr.20, 2005) (identity of FOIA requester and his reasons for request have no bearing on entitlement); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 144, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (FOIA is " fundamentally designed to inform public about agency action and not to benefit private litigants."); *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974) ("Discovery for litigation purposes is not an expressly indicated purpose of [FOIA]"); *Johnson v. Dep't of Justice,* 785 F.Supp. 2, 4 (D.D.C.1991) (FOIA "is not a discovery statute").

**\*28** The Commonwealth disputes this accusation,

and submits that HHS's own practice manual provides that litigants are permitted to use FOIA during the pendency of litigation against the agency. *See HHS Departmental Appeals Board Appellate Division-Practice Manual FAQ,* which is posted on the internet at *http://www.hhs.gov/dab/appellate/manual.html# 25.* Specifically, the Commonwealth points to the following frequently asked question and the agency's response thereto:

What is the relationship between discovery processes at the DAB and requests under the Freedom of Information Act (FOIA)? An appellant has a right to seek information from the Department under FOIA which is unaffected by the existence or use of DAB processes. FOIA and DAB processes sometimes intersect, as when an appellant has a pending FOIA request which the appellant anticipates will produce information to be used in DAB proceedings. To avoid delay and misunderstanding about the rights and obligations of the parties under the two separate processes, appellants are urged to ask the DAB to convene a telephone conference when a FOIA request related to the case is involved.

*Id.* The Commonwealth further submits that this FOIA case was filed in contemplation of DAB litigation as permitted by the above policy, and indeed, the Court notes that DAB litigation is more likely now that the district court has dismissed the Commonwealth's civil action filed at docket no. 05-1345, as unripe. Moreover, the Commonwealth posits that resort to FOIA is necessary due to the DAB's restrictive policies on discovery. *Id.* Therefore, the Commonwealth asserts that it routinely files FOIA litigation early into any audit that is likely to be contested due to the lag time between presenting the FOIA request and receiving responsive documents, and that such practice is expressly permitted by HHS as indicated in its DAB practice manual.

As to the cases cited by HHS for the proposition that FOIA was not intended to be a private discovery tool, the Commonwealth acknowledges that FOIA was not designed to supplement the rules of civil discovery. The Commonwealth argues, nonetheless, that it is well established that a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

requester's rights are not diminished because of its status as a litigant, citing *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 n. 23, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (stating that a person's rights under FOIA are niether diminished nor enhanced by his "litigation-generated need" for agency documents), and *State of Maine v. U.S. Dep't of the Interior,* 298 F.3d 60, 66 (1st Cir.2002) . The Commonwealth further submits that the reasons that a person makes a request under FOIA are "simply not relevant to the merits of a FOIA request", *Solar Sources, Inc. v. United States,* 142 F.3d 1033, 1039 n. 6 (7th Cir.1998), and that a plaintiff's rights in a FOIA case "do not depend on his or her identity", *North v. Walsh,* 881 F.2d 1088, 1096 (D.C.Cir.1989). Thus, the Commonwealth contends it has a right to have its FOIA litigation decided independently of what happens in the case filed at docket no. 05-1345.

**\*29** The Court finds HHS's policy argument unpersuasive. The Court does not read the cases cited by HHS as authority for preventing a party to an administrative proceeding or a lawsuit from submitting a FOIA request for information that relates to the subject matter of those proceedings, nor does this authority prevent the agency from processing and responding to such a FOIA request. Rather, the cases cited by HHS support the proposition that a FOIA requester does not have a *right* to receive and examine documents just because the information may have some special significance to the requester but not to the public at large. Moreover, this authority does not suggest that a plaintiff may not use FOIA to request information needed for an underlying civil case, nor does it suggest in any way that what the Commonwealth is doing here is an abuse or misuse of FOIA. As the district court observed in *Inter Ocean Free Zone, Inc. v. U.S. Customs Serv.,* "[t]he identity of the FOIA requester and the requester's reasons for making the request have no bearing upon its entitlement to the information.... what is given to one requester is what is available to all who make the same request." 982 F.Supp. 867, 871 (S.D.Fla.1997) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). That is all the Commonwealth can and is asking for

here. " '[FOIA's] sole concern is with what must be made public or not made public." ' *Reporters Comm.,* 489 U.S. at 772 (quoting Davis, *The Information Act: A Preliminary Analysis,* 34 U.Chi.L.Rev. 761, 765 (1966-67)) (other citation omitted). Thus, to the extent the Commonwealth's FOIA request seeks information that must be made available to the public, the Commonwealth has not abused or misused FOIA. For HHS to argue otherwise is disingenuous, especially in light of its own policy in the DAB practice manual. Indeed, HHS actually released approximately 925 pages of materials relating to the Pennsylvania's Title IV-E programs, some of which are at issue in Civil Action No. 05-1345, in response to the Commonwealth's FOIA requests in this case, which suggests, at the very least, that such "tactics" are permissible and not abusive.

Of course, Congress has built a safeguard into FOIA to protect agencies from having to disclose information that would contravene national security, privacy interests, law enforcement investigations, the attorney-client or work-product privileges, and deliberative process privilege, by enacting exemptions to FOIA's disclosure requirements. These exemptions ensure that FOIA requester, who also happens to be a private litigant, does not obtain information that is not discoverable in a lawsuit.

Therefore, it cannot be said that the Commonwealth is abusing or misusing FOIA to obtain non-discoverable documents since these documents would be exempt under either the attorney-client, attorney work-product or deliberative process privileges, so long as sufficiently detailed affidavits and *Vaughn* indices have been provided by the agency to justify their non-disclosure. However, in this case, HHS has failed to meet its burden and would have this Court hold the Commonwealth responsible. That the Court will not do. Accordingly, the Court finds no merit to HHS's argument that policy considerations also support the granting of its motion for summary judgment.

5. Appropriate Relief & Commonwealth's Rule 56(f) Motion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 32

**Slip Copy, 2006 WL 3792628 (W.D.Pa.)**
**(Cite as: Slip Copy)**

**\*30** The Court has found that HHS's *Vaughn* indices and declarations are so deficient with regard to its segregability analysis and proving its entitlement to withholding materials or portions of materials pursuant to Exemption (b)(5) that the Court is unable to make a *de novo* determination on these issues, and similarly, the Commonwealth is unable to articulate its challenges. In this instance, the Court has several options in fashioning the appropriate relief, including inspecting the withheld materials *in camera*, allowing the plaintiff to conduct discovery, and requesting further affidavits and/or an amended *Vaughn* index from the agency. *See Judicial Watch,* 297 F.Supp.2d at 270 (citing *Spirko v. U.S. Postal Serv.,* 147 F.3d 992, 997 (D.C.Cir.1998)). The Court will review each of these options in turn.

One option is to order an *in camera* review of the withheld materials, and in fact, HHS has indicated that it is not opposed to such review in the event that the Court concludes HHS is not entitled to summary judgment as to HHS's claims of exemption.[FN44] The Court has broad discretion in determining whether an *in camera* review should be conducted in a particular case. *Spirko,* 147 F.3d at 997. " 'The ultimate criterion is simply this: Whether the district judge believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption.' " *Id.* at 996 (quoting *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978)). Two factors here counsel against *in camera* review. First, conducting an *in camera* review is generally disfavored and appropriate "only when the issue ... could not be otherwise resolved." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. at 224. As explained below, the Court believes the best way to resolve the deficiencies here is through limited discovery. The second factor is the relatively large number of pages at issue. For some of the withheld materials, HHS is in the best position to provide the necessary factual information to prove the claimed exemptions, especially where the required details may not appear in the documents themselves, such as facts demonstrating documents were prepared in anticipation of litigation, or identifying the agency decision to which a particular document contributed. Conducting an *in camera* review of

close to 200 pages of unreleased materials to determine whether the withheld materials are exempt under one of the claimed privileges would place a substantial burden on judicial resources, and is especially not warranted here in light of HHS's failure to supply the Court and the Commonwealth with even the minimal information necessary to make a *de novo* review and challenge the bases for withholding the materials, respectively. Another factor militating against *in camera* review is the general disfavor of *in camera* review by the courts as the principal means for resolving segregability disputes, as it impedes the adversarial position of the requester and is inconsistent with FOIA.[FN45] Accordingly, the Court declines to order an *in camera* review at this time.

> FN44. *See* Reply Mem. in Supp. of Defs.' Mot. for Summ. J. & Opp'n to Pl.'s Rule 56(f) Motion (Doc. No. 17) at 2-3, 12.

> FN45. Although *in camera* review has been required where the agency response is "vague, its claims too sweeping, or there is a reason to suspect bad faith," *Mead Data Central,* 566 F.2d at 262 (citing *Weissman,* 565 F.2d at 697-98)), these factors do not outweigh the more laudable factors of advancing the purposes of FOIA and conserving judicial resources under the particular facts of this case.

**\*31** The second option the Court may select is allowing the plaintiff to conduct discovery. In the instant matter, the Commonwealth has indeed filed a Rule 56(f) motion requesting discovery in response to the Defendants' motion for summary judgment.[FN46] Specifically, the Commonwealth requests that it be allowed to inquire as to (1) how HHS went about identifying segregable factual material, and (2) with regard to the claimed privileges, whether the withheld materials meet the requirements for withholding, including (i) the role of particular documents in the deliberative process, and (ii) whether attorney-client privilege documents have been kept confidential.[FN47] In addition, although not raised directly in its Rule 56(f) motion, the Commonwealth challenges the assertion of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 33

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

attorney work-product privilege on the basis that HHS has not met its burden of proof of establishing that the documents were prepared in anticipation of litigation, and therefore, by implication, suggests discovery is needed on this issue as well.

> FN46. Fed.R.Civ.P. 56(f) provides: "Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

> FN47. *See* Pl.'s Br. in Opp'n to HHS' Mot. for Summ. J. & in Supp. of its Rule 56(f) Mot. (Doc. No. 15) at 20. The Commonwealth also requested discovery with regard to the adequacy of the search and suggests that at the conclusion of discovery, the parties be allowed to file cross motions for summary judgment. Given the Court's ruling on the adequacy of the search, *supra,* the Court recommends that the Commonwealth's Rule 56(f) motion be denied as to that issue.

In support of its Rule 56(f) motion, the Commonwealth submits the declaration of Jason Manne, counsel for the Pennsylvania Department of Public Welfare dated June 2, 2006 ("Manne Decl." ). (Doc. No. 14 .) In his declaration, Manne states that based on his prior experience, which spans twenty-five years of handling Federal-State grant litigation including 12 FOIA lawsuits, he has a reasonable belief that HHS may not have released all segregable factual information in exempt documents and may be claiming exemptions improperly, as the official making the determination has historically lacked the program-specific knowledge necessary to make that determination. Manne specifically points to Bate-stamp page no. 545 as evidence of HHS's failure to release all

segregable factual information. (Manne Decl. at ¶ ¶ 1, 5-6.) Manne further states that without knowing precisely how the decision to withhold information was made, he cannot adequately respond to the issue of segregability in HHS's motion for summary judgment. (*Id.* at 5.) In addition, Manne asserts that he cannot adequately respond to HHS's claimed exemptions without additional information regarding each document and how the document relates to the claimed privilege, as more fully explained in the Commonwealth's brief. (*Id.* at 6.)

HHS opposes the Commonwealth's Rule 56(f) motion, and in support thereof, advances two arguments. First, HHS submits that where the court already has sufficient information, consisting of *Vaughn* indices and declarations, to conclude the agency has fully complied with FOIA, discovery is generally unavailable. This argument is flawed however, because HHS assumes, incorrectly, that Court will find its *Vaughn* indices and declarations to be sufficiently detailed. As explained above, that is not the present case. Nonetheless, HHS cites a number of cases in which courts have denied discovery requests in FOIA cases.[FN48] However, the Court finds none of these cases dispositive here as the agencies in those cases submitted sufficiently detailed affidavits and/or there was no evidence of bad faith on the part of the agency, thereby making discovery unnecessary, unlike HHS in the case at bar.

> FN48. The cases cited by HHS include *Wheeler v. CIA,* 271 F.Supp.2d 132, 139 (D.D.C.2003) (no evidence of bad faith); *SafeCard,* 926 F.2d at 1200-02 (affidavits sufficiently detailed and no evidence of bad faith); *Simmons v. U.S. Dep't of Justice,* 796 F.2d 709, 711-12 (4th Cir.1986) (affidavits sufficiently detailed); *Broaddrick v. Executive Office of President,* 139 F.Supp.2d 55, 64 (D.D.C.2001) (affidavits sufficiently detailed and no evidence of bad faith).

**\*32** Second, HHS submits that there is no need here to conduct an *in camera* review, but if the Court is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 34

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

dissatisfied with the information supplied, it has the discretion to order a more specific index or order an *in camera* review. According to HHS, given the number and similarity of the documents at issue, an *in camera* inspection would (1) show that the documents were appropriately withheld, (2) would completely eliminate the need for discovery on the FOIA exemptions, and (3) allow the Court to make its own segregability determination. By so arguing, however, HHS attempts to improperly shift its burden of proof to this Court. As stated earlier, the Court finds an *in camera* review would substantially burden judicial resources.

Clearly, there is precedent for allowing limited discovery in FOIA cases where the affidavits and/or *Vaughn* index are deficient and national security is not involved. *See, e.g., Commw. of PA Dep't of Public Welfare v. United States, U.S. Dep't of Health & Human Serv.,* Civ. A. No. 99-175, 1999 U.S. Dist. LEXIS 17978, *7-8 (W.D.Pa. Oct. 12, 1999) (citing *Church of Scientology v. IRS,* 991 F.2d 560, 563 (9th Cir.1993), *vacated in part on other grounds,* 30 F.3d 101 (9th Cir.1994); *Benavides v. DEA,* 968 F.2d 1243, 1249-50 (D.C.Cir.), *mod. on other grounds,* 976 F.2d 751 (D.C.Cir.1992)); *see also Schiller v. I.N.S.,* 205 F.Supp.2d 648, 653 (W.D.Tex.2002) (noting numerous district court cases holding that discovery in FOIA cases is limited to determining whether withheld items are exempt from disclosure or whether a thorough search for documents has been made). Because a FOIA plaintiff "obviously cannot know the facts [it] does not know," without discovery, it is virtually impossible for a FOIA plaintiff to know whether the agency has complied with FOIA's mandate. *Id.* at *8 (quoting *Hanover Potato Prods., Inc. v. Shalala,* 989 F.2d 123, 129 (3d Cir.1993)). As the Court of Appeals for this Circuit observed in *Davin, supra:* "The review of FOIA cases is made difficult by the fact that the party seeking disclosure does not know the contents of the information sought and is, therefore, helpless to contradict the government's description of the information or effectively assist the trial judge." *Id.* (quoting *Davin,* 60 F.3d at 1049). In *Commw. v. HHS* filed at Civil Action No. 99-175, Judge Smith found that the agency's affidavit on the adequacy of the search was scant and ordered limited discovery

regarding the completeness of the material produced as well as the methodology used to compile it. *Id.* (citing *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 371 (D.C.Cir.1980)).

The decision whether to allow discovery lies within the discretion of this Court. *Schiller,* 205 F.Supp.2d at 653 (citing *Rugiero v. U.S. Dep't of Justice,* 257 F.3d 534, 544 (6th Cir.2001)) (other citations omitted). The courts have uniformly held that discovery in a FOIA case is permitted "when factual issues arise about the 'adequacy or completeness of the government search and index' and this issue can arise 'only after the government files its affidavits and supporting memorandum of law' ". *Id.* (quoting *Murphy v. F.B.I.,* 490 F.Supp. 1134, 1137 (D.D.C.1980)). Therefore, given that the discovery the Commonwealth seeks to conduct is limited to the issue of the completeness of HHS's *Vaughn* indices and declarations as to segregability of non-exempt factual information and the claimed exemptions for withholding materials, and that HHS has already filed its *Vaughn* indices and supporting declarations, the Court finds that limited discovery is appropriate here.

**\*33** In lieu of discovery and an *in camera* review, the Court may order the agency to provide supplemental declarations or an amended *Vaughn* index to correct the deficiencies. In light of the fact that HHS has already had two opportunities to provide sufficiently detailed affidavits and has failed both times, the Court finds the better approach is to allow the Commonwealth to conduct limited discovery as outlined above.

Accordingly, the Court recommends that the Commonwealth's Rule 56(f) motion be granted and limited discovery allowed with regard to the completeness of the *Vaughn* indices and declarations on the segregability of non-exempt factual information and the claimed exemptions for the withheld materials. At the conclusion of discovery, if HHS still wishes to withhold materials or portions of materials, it will be allowed to renew its motion for summary judgment, and the Commonwealth will be permitted to file a cross-motion for summary judgment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3792628 (W.D.Pa.)
**(Cite as: Slip Copy)**

### III. CONCLUSION

While the claimed privileges for a number of the documents appear plausible on the surface, HHS has failed to provide sufficiently detailed declarations and *Vaughn* indices to show that it has met *all* of the criteria for the respective privileges. Ultimately, the Court may well find that the withheld materials are exempt under either the attorney-client privilege, attorney work-product privilege, or the deliberative process privilege. However, on the current record, the Court cannot determine whether any of the claimed privileges apply as the declarations and *Vaughn* indices fail to provide the required detail.

Therefore, for this reason and the reasons set forth above, it is recommended that Defendants' Motion for Summary Judgment (Doc. No. 8) be granted with regard to the issue of the adequacy of the search, and denied without prejudice in all other respects. It is further recommended that Plaintiff's Rule 56(f) Motion (Doc. No. 13) be denied with prejudice on the issue of the adequacy of the search, and granted on the remaining issues.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

W.D.Pa.,2006.
Pennsylvania Dept. of Public Welfare v. U.S.
Slip Copy, 2006 WL 3792628 (W.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1813185 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion for Summary Judgment (May 3, 2006) Original Image of this Document (PDF)
• 2005 WL 3284027 (Trial Pleading) Defendants' Answer and Affirmative Defenses to Complaint (Oct. 17, 2005) Original Image of this Document (PDF)
• 2:05cv01285 (Docket) (Sep. 16, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.