# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| State of Ohio, )<br>         )<br>    Plaintiff, )<br>         )<br> vs.       )<br>         )<br>Dey, Inc., et al., )<br>         )<br>    Defendants. ) | Case No. 1:06-CV-676 |

<u>ORDER STAYING PROCEEDINGS</u>

Currently pending before the Court is a motion to remand this action to the Hamilton County, Ohio Court of Common Pleas filed by Plaintiff State of Ohio (Doc. No. 40).

This case originated in the Hamilton County Court of Common Pleas in March 2004 when the State of Ohio sued Defendant Dey, Inc. and five other pharmaceutical companies alleging that, <u>inter alia</u>, the Defendants artificially inflated their average wholesale prices ("AWP's") on prescription drugs and thereby fraudulently overcharged the State for Medicare reimbursements. The complaint asserted state law claims against the Defendants for fraud, unjust enrichment, violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.02 & 1345.03, violations of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165, violations of the Medicaid fraud statute, Ohio Rev. Code § 2913.40(B), and violations of the Ohio anti-kickback statutes, Ohio Rev. Code §§ 2913.40(C)(2) & 3999.22.

based on the same transactions and occurrences as the federal <u>qui tam</u> case. Finally, the State argues that the case was not removable because it took no voluntary action to create federal jurisdiction.

Lingering in the background of this case is an action pending before the Judicial Panel on Multidistrict Litigation entitled <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>, MDL No. 1456, 01-CV-12257-PBS (D. Mass)(Saris, J.). The MDL case, which arises from states other than Ohio, also concerns whether certain pharmaceutical companies, including the Defendants in this case, have fraudulently obtained Medicare reimbursements through inflated AWP's. On November 13, 2006, the Judicial Panel on Multidistrict Litigation issued an order conditionally transferring this case to the MDL case in the District of Massachusetts. Doc. No. 47-2, ¶ 10. This Court has since been advised that the State of Ohio has filed an objection to the order conditionally transferring this case to the MDL proceeding in Massachusetts. The State's objection is scheduled for a consideration without argument by the MDL panel on January 25, 2007. <u>See</u> Doc. No. 57.

In the meantime, on November 20, 2006, Defendant Abbot Laboratories, Inc. ("Abbot Labs") filed a motion for leave to file a supplemental notice of removal. Doc. No. 47. In this pleading, Abbot Labs contends that an alternative basis for this

3

final decision on transfer by the Panel. See <u>Illinois Mun. Ret. Fund v. Citigroup, Inc.</u>, 391 F.3d 844, 852 (7th Cir. 2005). In <u>Board of Trustees of the Teachers' Ret. Sys. of the State of Ill. v. Worldcom, Inc.</u>, 244 F. Supp.2d (N.D.Ill. 2002), the district court set forth a process for determining whether to proceed to the merits of the jurisdictional question or stay the proceedings, which we quote at length:

> [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court. If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. . . .
>
> . . . . .
>
> Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay. <u>Id.</u> at 1049.
>
> This court generally agrees with the reasoning and methodology of Meyers, although the analytical divisions between the three steps are perhaps not as neat as the quoted language implies. In determining the appropriateness of a stay, the court considers the interests of judicial economy and the balance of hardships to the proponent and opponent of the stay. <u>Id.</u> (citing <u>Rivers v. Walt Disney Co.</u>, 980 F.Supp. 1358, 1360 (C.D.Cal. 1997)). When the merits of a remand motion are easy, a decision requires little judicial time and a stay would merely postpone the inevitable. Similarly, when remand motions in cases potentially subject to MDL consolidation raise unique issues of law or fact, channeling the decisions to a single court would result in little or no savings of

5

> judicial resources. The threat of inconsistent judgments in either case is de minimus. In this sense, the appropriateness of a stay is arguably implicit in the analysis performed at steps one and two. And although Meyers does not say so explicitly, there is a fourth step. When the balance of equities weighs heavily against a stay, it may well be appropriate for a court to immediately decide even a difficult and duplicative remand question.

Id. at 902-03 (quoting in part Meyers v. Bayer AG, 143 F. Supp.2d 1044 (E.D.Wis. 2001).

Upon assessment of the considerations outlined by the district court in Worldcom, the Court concludes that staying these proceedings pending final action the MDL Panel is appropriate. Although the Court concedes that the timing and basis for Defendants' original notice of removal are unusual, it cannot say that preliminary scrutiny of the pleadings suggests that removal was improper. The Court also concedes that there are some unusual issues surrounding the timing and appropriateness of the filing of a supplemental notice of removal. Nevertheless, as Defendants point out in their reply brief, the most substantial jurisdictional question is whether state causes of action which implicate the meaning of average wholesale price under the federal Medicare statute present a federal question. See Doc. No. 56, at 1. Judge Saris observes that she has wrestled with the meaning of AWP in the past and, Doc. No. 47, Ex. B, at 7, moreover, she obviously has given considerable thought to the embedded federal question issue.

Judge Saris states that she is currently presiding over ninety similar pharmaceutical pricing cases and makes a compelling argument that the meaning of AWP needs a uniform interpretation. See id. at 9-10. This Court believes that Judge Saris is well-positioned to decide the jurisdictional issues raised in this case in the most efficient manner despite the apparent presence of some other unique questions.

Finally, the Court does not find that the balance of equities weighs heavily against a stay. Although this is an important case which raises important issues, none of the parties is impecunious. This matter is scheduled for a final hearing on whether the case should be transferred to the MDL proceedings in less than two weeks. The Court presumes that the MDL Panel will make a final decision relatively quickly. The Court does not foresee that a brief stay of these proceedings pending the decision of the MDL Panel does injustice to any party.

Accordingly, this case is **STAYED** pending a final decision by the MDL Panel as to whether this case should be transferred to the multidistrict litigation proceeding now pending in the District of Massachusetts. The parties shall notify the Court immediately of the decision of the MDL Panel.

**IT IS SO ORDERED**

Date January 16, 2007            s/Sandra S. Beckwith
                                 Sandra S. Beckwith, Chief Judge
                                 United States District Court