UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| ALL CLASS ACTIONS | |

**CLASS PLAINTIFFS' REPLY TO DEFENDANT ASTRAZENECA PHARMACEUTICALS LP'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF FURTHER COMMUNICATION WITH CLASS 1 CONSUMERS WHO FILED REQUESTS FOR EXCLUSION**

Class Plaintiffs hereby submit this brief reply to Defendant AstraZeneca's Opposition to Plaintiffs' Motion for Approval of Further Communication with Class 1 Consumers Who Filed Request For Exclusion in order to clarify Plaintiffs' Motion and the reasons therefore and to address those points made by AstraZeneca in opposition to Plaintiffs' Motion.

## I.  INTRODUCTION

On March 29, 2007 Plaintiffs submitted the Declaration of Charlene Young of Complete Claims Solutions (Docket # 3965) as well as the Affidavit of Katherine Kinsella (Docket # 3966). These declarations were meant to inform the Court of the notice activities undertaken by order of the Court and the results of those notice activities. Plaintiffs also filed a Motion for Approval of Further Communication with Class 1 Consumers Who Filed Requests for Exclusion ("Plaintiffs' Motion") (Docket # 3964) asking the Court to adopt CCS's recommendation that an additional letter be sent to the 22,750 consumers who filed an exclusion. On April 2, 2007 Defendants filed an Opposition to Plaintiffs' Motion ("Defendants' Memo") (Docket # 3980).

## II.     ARGUMENT

Throughout their opposition, AstraZeneca argues that Plaintiffs' Motion is an improper attempt to "prompt" and "persuade" those consumers who filed an exclusion form to change their minds.  Defendants' Memo at 1-2.  Defendants are simply wrong.

Plaintiffs' Motion reports the experience and recommendation of the Court appointed Litigation Administrator, Complete Claims Solutions ("CCS"), based upon extensive experience in consumer class notice in other cases, as well as direct experience with consumers in this case. Based on that experience CCS believes that many of those consumers who filed an exclusion form either misunderstood the nature of the form or mistakenly believed they needed to exclude themselves in order to avoid having to actively participate in the litigation.  The letter proposed by CCS to be sent to those filing exclusions is not meant to persuade individuals to change their decision to exclude themselves, but simply to ensure recipients understand the consequences of filing an exclusion.  The letter is meant to clarify and insure that Class member's true intentions are realized, not persuade them to change their mind if their intention was in fact to exclude themselves.  However, the Court is certainly capable of judging whether the text of the proposed communication is an attempt at advocacy and adjusting it accordingly in any order on this issue.

AstraZeneca makes a number of other points in its Opposition that must be addressed. First, AstraZeneca argues that the Class Notice is not confusing. Defendants' Memo at 4. Plaintiffs have not argued that the Class Notice is confusing.  Plaintiffs do not suggest to this Court that the Class Notice was not well written and as clear and concise as possible given the complexities of this case.  Plaintiffs do however accept CCS' representation that, despite the Court's and parties best intentions to communicate these issues clearly and address every conceivable issue, based on their experience with some of the consumers with whom they have

communicated, it is likely that many of the individuals who filed exclusion forms misunderstood the nature of the exclusion. As the Court is well aware Class 1 members are elderly and many of them are frail and in ill health and may be particularly susceptible to confusing the purpose of the exclusion form, despite the clear language in the notice and on the form.

To illustrate this point, CCS has provided the Court with the results of conversations it had with 11 consumers in the GSK Settlement who filed both an exclusion form as well as a claim form. Because there were many consumers who filed out and returned both forms, CCS undertook to contact, at random, twenty such consumers to clarify what their intentions were. Affidavit of Thomas R. Glenn attached hereto as Exhibit A ("*Glenn Affidavit*") at ¶16-17. CCS was able to contact 11 of the 20 consumers. Of the 11 consumers who responded to CCS's call, 3 were not class members and returned both forms even though they had not taken the drugs at issue, 2 meant to make a claim in the case and did not understand they were excluding themselves by returning the exclusion form, 5 indicated that they wished to opt out of the case, and 1 individual had no recollection of having returned any forms to CCS. *Id*. at ¶ 18. In this instance almost half of the individuals contacted incorrectly returned the opt-out form. As the Court is well aware, the GSK Settlement involves the same consumer population as the case against the remaining defendants in this case and the notice of settlement in the GSK Settlement (including the inclusion of an exclusion form) was modeled after the notice of pendancy at issue here.

Second, AstraZeneca argues that F.R.Civ.P. 23(c) does not permit re-contacting absent Class Members. Defendants' Memo at 5. To the contrary, F.R.Civ.P. 23 provides the district court with wide discretion in the conduct of class actions and provides in pertinent part that the "court may make appropriate orders . . . requiring, for the protection of the members of the class

or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action . . ." F.R.Civ. P. 23(d).  There is no prohibition on more than one communication with class members as suggested by Defendants.  "A district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties . . ." *Gulf Oil Co. v. Bernanrd*, 452 U.S. 89, 99 (1981).  This is particularly true concerning communication with members of a certified class.  *See e.g., In Re: Lupron Marketing and Sales Practices Litigation,* 2004 U.S. Dist. Lexis 26461 (D. Mass., 2004).

      Third, AstraZeneca argues that Plaintiffs have provided no proof that anyone who filed an opt-out was confused or that somehow Plaintiffs contend that confusion is the only explanation for individuals having filed an exclusion.  Defendants' Memo at 6.  Plaintiffs do not know exactly which or how many of the 22,750 individuals who filed an exclusion misunderstood the consequences of doing so, nor do Plaintiffs deny that some of these individuals understood exactly what the consequences were and intended to opt out.  However, confusion is evidenced by both the number of opt-outs as well as by the actual communications CCS has had with consumers.

      As to the numbers of opt-outs, 22,750 is, based on the experience of class counsel as well as CCS, an extraordinary number.  To give the Court some context CCS has provided the Court with some of the numbers of claims and opt-outs in 7 settlements involving pharmaceuticals in which it has acted as court appointed claims administrator.  *Glenn Affidavit*, Ex. 1.  In none of these cases, some of which involve tens of thousands of filed claims, does the number of consumer opt-outs even begin to approach what has been evidenced in this case.  While the numbers provided in the chart are for notices of settlement and not notices of pendancy as is the

case here, it would seem to make little difference.  Currently in the GSK AWP Settlement where the notices to consumers and TPPs were modeled after the notice of pendancy approved here, there are 18,882 consumer opt-outs and 7,822 consumer claims.  *Glenn Affidavit* ¶ 15.  As the claims period has not yet closed in the GSK Settlement, and will not until May 27, 2007, both the number of claims and the number of opt-outs is likely to rise, but the fact remains that to date there are more than twice the number of opt-outs as claims.[1]  The logical conclusion, especially in light of the numbers of claims and opt-outs in other similar settlements, is that one of the factors that accounts for the high number of opt-outs is confusion about the nature of the opt-out form.

As to the experience of CCS with consumers, if the random sampling of consumers provided by CCS in the GSK Settlement can be used as a guide, and putting aside those individuals who were not class members and did not need to return the opt-out form, more than 18% (2 of 11) individuals meant to make a claim and not to opt-out.  If that same ratio applies here, almost 4,275 individuals (18% of 23,750) may have mistakenly submitted an opt-out form even though they did not intend to exclude themselves.  Plaintiffs contend that the mailing of the proposed letter is a small price to pay to ensure that the rights of more than 4,000 consumers are protected and preserved.

Finally, AstraZeneca also argues that any claim of confusion is "betrayed" by the fact that the current proposal is to send a letter to these individuals and have them return it to the Litigation Administrator if they believe they originally misunderstood the consequences of filing an exclusion form.  Defendants' Memo at 7.  The implication is that because Plaintiffs propose to use the same physical form of communication with class members as was originally used (a form

---

[1] Plaintiffs anticipate that at the appropriate time they will move this Court for approval of further communication with consumers who have filed an exclusion in the GSK Settlement as well.

to be returned to CCS) the original communication could not have caused confusion. This argument is nonsensical. It is not the physical act of returning a form to the Litigation Administrator that is the source of confusion for these people. It is their misunderstanding of the meaning of that action that Plaintiffs seek to remedy. The intent of the letter is to address specific misunderstandings by class members that have been identified by CCS as a result of the notice process.

### III   CONCLUSION

Plaintiffs believe that sending the proposed letter, or some version of it approved by the Court, to those that have filed exclusions will help ensure that class members have not mistakenly excluded themselves. It is meant to protect the interests of class members and ensure the integrity of the notice process. Defendants have shown no prejudice to them by allowing the letter to be sent and Plaintiffs' Motion should therefore be granted.

DATED:  April 5, 2007

By   /s/ **Steve W. Berman**
     Thomas M. Sobol (BBO#471770)
     Edward Notargiacomo (BBO#567636)
     Hagens Berman Sobol Shapiro LLP
     One Main Street, 4th Floor
     Cambridge, MA  02142
     Telephone: (617) 482-3700
     Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE BY LEXIS-NEXIS FILE & SERVE**

Docket No. MDL 1456

      I, Steve W. Berman, hereby certify that I am one of Plaintiffs' attorneys and that, on April 5, 2007, I caused copies of **CLASS PLAINTIFFS' REPLY TO DEFENDANT ASTRAZENECA PHARMACEUTICALS LP'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF FURTHER COMMUNICATION WITH CLASS 1 CONSUMERS WHO FILED REQUESTS FOR EXCLUSION** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                                       /s/ Steve W. Berman
                                                       Steve W. Berman