**Attachment B**

Coleen Lawrence Declaration

| ¶ | Declaration language | Reasons to Strike |
|---|---|---|
| 17 | "Until this lawsuit my understanding of AWP had been that AWP meant what it said—that it was really an average of prices." | • Inconsistent with assertion at Lawrence Decl. ¶ 21: "I knew that AWP did not equal actual acquisition costs. That is why Nevada Medicaid discounted AWP to determine Estimated Acquisition Cost ("EAC") for each drug."<br>• Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (Lawrence was familiar with Myers & Stauffer's conclusions that in Nevada pharmacies acquired drugs on average at a discount off AWP of 19.3% for brand drugs, 35.1% for generic drugs without a FUL, and 83.1% for generic drugs with a FUL).<br>• Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (Lawrence testified that she authored a memo referring to OIG's projected "21 percent mark up" and further testified that it was "we knew that that would be too large of an increase for our providers") (Lawrence Dep. Vol. IV Ex. 1 (Tab 104)).<br>• Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 18-20 (Tab 103) (Lawrence testified that she wrote a 2002 email to Mr. Duarte stating: "I agree with reducing the reimbursement, heck in '86 when we raised it to 10% the feds told us then they didn't think we were in line with EAC." Lawrence Dep. Vol. IV Ex. 2 (Tab 105). She testified she was referring to the "actual approval of the State plan letter from CMS . . . where CMS agreed to have the change in rate to AWP – 10 percent . . . But they were questionable on it still.")<br>• Inconsistent with established fact n.1:<br>     After May 2000, Nevada had a practice of maintaining OIG Reports relating to pharmacy reimbursement |

| | | |
|---|---|---|
| | | and circulating them among employees with responsibilities for the State's Medicaid pharmacy reimbursement rate.<br>• Inconsistent with established fact n. 2: After May 2000, Nevada had a practice of maintaining CCH and federal GAO publications relating to pharmacy reimbursement issues and circulating them among employees with responsibilities for the State's Medicaid pharmacy reimbursement rate.<br>• Inconsistent with established fact n. 3: After May 2000, Nevada had information regarding how three other Nevada pharmacy programs, namely the Department of Mental Health, Public Employee Benefits, and Senior Rx, acquired and/or reimbursed drugs.<br>• Inconsistent with established fact n. 4: From 2002 to the present, Nevada received communications from Tap, Bayer, Schering Plough and Warrick stating their actual sales price information and that these sales prices were different from AWP. |
| 18 | "As I testified at one of my depositions:<br>Q: Is it your understanding that AWP is an average wholesale price for those drugs?<br>A: It's my understanding that AWP is an average wholesale price for those drugs" | • Inconsistent with assertion at Lawrence Decl. ¶ 21: "I knew that AWP did not equal actual acquisition costs. That is why Nevada Medicaid discounted AWP to determine Estimated Acquisition Cost ("EAC") for each drug."<br>• Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab |

| | | |
|---|---|---|
| | | 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants) |
| 19 | "Specifically, I was asked 'And what's your understanding of what AWP is?' and I testified as follows: '[B]y the semantics of the name, average wholesale price, I would assume that it is the wholesale price that is given for the drugs.'" | • Inconsistent with assertion at ¶ 21: "I knew that AWP did not equal actual acquisition costs. That is why Nevada Medicaid discounted AWP to determine Estimated Acquisition Cost ("EAC") for each drug."<br>• Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 203) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants)<br>• Incompetent owing to lack of foundation for assumption. |
| 20 | "As part of this understanding, I believed that AWP bore a rational and direct relationship to actual acquisition costs. The State expected that this was a price at which pharmacies and other providers were able to purchase drugs for sale. The State believed that the AWP was a meaningful | • Inconsistent with assertion at ¶ 21: "I knew that AWP did not equal actual acquisition costs. That is why Nevada Medicaid discounted AWP to determine Estimated Acquisition Cost ("EAC") for each drug."<br>• Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab |

10484220_1

| | | |
|---|---|---|
| | benchmark and that it bore a direct and reasonable relationship to the actual acquisition costs to pharmacies, physicians and other providers." | 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 203) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants)<br>• Incompetent owing to lack of established foundation for this belief. |
| 21 | "I knew that AWP did not equal actual acquisition costs. That is why Nevada Medicaid discounted AWP to determine Estimated Acquisition Cost ("EAC") for each drug." | • Inconsistent with assertions at Lawrence Decl. ¶¶ 17-20, quoted above. |
| 23 | "Based on the expectation described above, during my tenure, the State has always been confident that the use of AWP was a proper method to determine EAC as required by federal regulations and the State's reimbursement methodology...." | • Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales |

|    |                                                                                                                                                                                                                                                                                                   |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                           |
|----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    |                                                                                                                                                                                                                                                                                                   | price information from four Defendants)<br>• Incompetent owing to lack of personal knowledge.                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                             |
| 24 | "Nevada Medicaid was not privy to actual prices. These were kept confidential by the drug manufacturers. We would never know the actual prices because drug manufacturers did not provide them to us or—to my understanding—to anyone. Actual prices were a closely guarded secret."              | • Inconsistent with assertion in Lawrence Decl. ¶ 42: "I am only aware of four drug manufacturers providing drug pricing information to the States."<br>• Inconsistent with established fact no. 4 (actual sales price information from four Defendants)                                                                                                                                                                                                                                                                                                                                                                                                                  |
| 26 | "Nevada Medicaid understood that pharmaceutical prices could change radically and quickly due to shifting market conditions. An AWP provided and updated by the drug manufacturers would be responsive to those changes—reasonably accommodating the changes, we thought, because we believed that there was a relationship between the AWPs and actual acquisition costs." | • Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement), and no. 4 (actual sales price information from four Defendants)<br>• Incompetent owing to lack of personal knowledge. |
| 28 | "The fact is that access to care has never been a problem in connection with the pharmacy program."                                                                                                                                                                                               | • Incompetent owing to lack of personal knowledge.                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                        |
| 31 | "Profit to pharmacies, physicians and other providers does not play a significant role in the setting of Nevada Medicaid's drug reimbursement rate."                                                                                                                                              | • Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for                                                                                                                                                                                                                                                                                                                                                                                                                                                                               |

|  |  |  |
|---|---|---|
|  |  | brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants)<br>• Incompetent owing to lack of personal knowledge. |
| 32 | "I understand that the Defendants have suggested that Nevada Medicaid has exploited the difference between acquisition cost and AWP to encourage providers to participate in the Nevada Medicaid program.  This is not true and I have never even heard the prospect discussed formally or informally during my tenure with the State.  And as the Chief Program Services, with my responsibilities for the Nevada Medicaid pharmacy program, I would have heard this if it was considered." | • Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants)<br>• Incompetent owing to lack of personal knowledge. |
| 33 | "I and others have testified repeatedly that we were not privy to the actual drug purchase prices—the drug manufacturers would not share them. | • Inconsistent with assertion in Lawrence Decl. ¶ 42: "I am only aware of four drug manufacturers providing drug pricing information to the States." |

|    |                                                                                                                                                                                                                                                                 |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                |
|----|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    | Thus, we had no way of exploiting the spreads, as suggested by Defendants."                                                                                                                                                                                     | - Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>- Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants)<br>- Incompetent owing to lack of personal knowledge. |
| 35 | "At all times, Nevada Medicaid has been dedicated to maximizing the resources available to it by minimizing expenditures.  We aimed to reduce drug costs to the program, not enhance them by providing profit to pharmacies and other providers by overpaying for prescription drugs." | - Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>- Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants)<br>- Incompetent owing to lack of personal knowledge. |

| 36 | "Neither I nor any other Medicaid personnel had knowledge of the spreads for specific drugs that have become apparent as the result of this lawsuit." | <ul><li>Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).</li><li>Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement), and no. 4 (actual sales price information from four Defendants)</li><li>Incompetent owing to lack of personal knowledge.</li></ul> |
|---|---|---|
| 37 | "I have seen certain OIG and other federal reports that Defendants claim put the State on notice of systemic, industry-wide problems with the use of AWP as a basis for reimbursement. I disagree. The reports identified at most a handful of drugs for which an investigation revealed problems. There was nothing in those reports that put me or others within Nevada Medicaid on notice of the types of problems that have been revealed as a result of this lawsuit." | <ul><li>Inconsistent with established facts no. 1 (OIG reports) and no. 2 (CCH and GAO reports).</li><li>Incompetent owing to lack of personal knowledge.</li></ul> |
| 38 | "I have recently been shown a series of spreadsheets—by defendant— showing a percentage difference between the acquisition costs and AWPs for various years relevant to the lawsuit. I was surprised." | <ul><li>Inconsistent with assertion in Lawrence Decl. ¶ 42: "I am only aware of four drug manufacturers providing drug pricing information to the States."</li><li>Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL,</li></ul> |

|   |   |   |
|---|---|---|
|   |   | and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants) |
| 39 | "I was surprised to see the size of the spreads.  Nothing I had encountered or been told gave me notice of the spreads presented by those spreadsheets.  I think my colleagues at Nevada Medicaid would be equally surprised as the spreads in those sheets are beyond anything we could have expected based on the information we had before this lawsuit or outside of this lawsuit at any time." | • Inconsistent with assertion in Lawrence Decl. ¶ 42: "I am only aware of four drug manufacturers providing drug pricing information to the States."<br>• Inconsistent with deposition testimony at Lawrence Dep. Vol. IV, pp. 80-81 (Tab 103) (aware of Myers & Stauffer estimates of acquisition costs in Nevada: on average, 19.3% below AWP for brands, 35.1% for generics without FUL, and 83.1% for generics with FUL); Lawrence Dep. Vol. IV, pp. 6-15 (Tab 103) (aware of OIG recommendation of AWP-21% but believed the discount would be too low for providers); Lawrence Dep. Vol. IV pp. 18-20 (Tab 103) (aware that feds told Nevada back in 1986 that AWP-10% did not approximate acquisition costs).<br>• Inconsistent with established facts no. 1 (OIG reports), no. 2 (CCH and GAO reports), no. 3 (Mental Health, Senior Rx, and PEBs drug acquisition and reimbursement),and no. 4 (actual sales price information from four Defendants)<br>• Incompetent owing to lack of personal knowledge. |
| 40 | "It is my opinion that if accurate AWPs were provided by Defendants, the State would have paid less for its reimbursement of prescription drugs | • Incompetent owing to lack of personal knowledge.<br><br>• Incompetent owing to speculation |

|    |                                                                                                                                                                                                                                                      |                                                                                                                                                         |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------|
|    | than it did using the inflated AWPs provided."                                                                                                                                                                                                       | regarding what the State "would have paid."                                                                                                             |
| 41 | "The pharmaceutical representatives were aware that Nevada Medicaid was utilizing AWP as a source to reimburse for pharmaceutical services under the Medicaid Federal Program. The false data provided has led to inaccurate reimbursement levels." | • Incompetent owing to lack of personal knowledge.  <br><br>• Incompetent owing to legal opinions and conclusions regarding "false" data. |
| 52 | "To my knowledge and to the State of Nevada's knowledge, AWP remains the only pricing data that drug manufacturers provide and update on a regular basis."                                                                                           | • Incompetent owing to lack of personal knowledge.                                                                                                      |
| 54 | "Nobody other than the drug manufacturers themselves know what the actual prices for particular drugs are."                                                                                                                                          | • Incompetent owing to lack of personal knowledge.                                                                                                      |