# EXHIBIT 2

# (PART 3)

**DEFENDANT'S PROPOSED JURY INSTRUCTION**
**RELATING TO THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**CONN. GEN. STAT.. § 42-110b, *et seq.***

   Zoladex patients from Connecticut are included in this lawsuit.  Their ability to establish liability and to recover damages depends on your application of California law to the evidence introduced at trial.  Therefore I will now instruct you on the specific requirements of the Connecticut Unfair Trade Practices Act (hereinafter "the CUTPA").

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 1:
## EXTRATERRITORIAL APPLICATION

The Connecticut Act only only applies to individuals who either reside in Connecticut or were in Connecticut when they took or paid for Zoladex.  In order to recover, Plaintiffs must prove by a preponderance of the evidence that they reside or were injured in Connecticut.[10]

**Authority:**
Conn. Gen. Stat. § 42-110g(a).

---

[10] As Mr. Howe and Mr. Townsend cannot satisfy this requirement for class members from this state, absent class members will have to satisfy this requirement in the individual damages phase of this proceeding.

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 2:**
**TRADE OR COMMERCE REQUIREMENT**

Plaintiffs must prove by a preponderance of the evidence that they not only suffered an ascertainable loss as a result of AstraZeneca's alleged intentional misrepresentation concerning the average wholesale price of Zoladex, but that they were engaged in a trade or commerce relationship with AstraZenaca. If Plaintiffs are not able to prove both of these elements, you must render a verdict for AstraZeneca.

**Authority:**
Meehan v. Antonino, 2003 Conn. Super. LEXIS 1758, at *8-9 (Conn. Super. Ct. June 12, 2003) (Plaintiff employee attempted to assert a CUTPA claim for deceptive business practices perpetrated by his employer upon a third party with whom the employer was engaged in trade or commerce. The court noted that "the argument that 'any person' may bring a claim if they have been injured by an unfair business practice has been rejected by the courts . . . the relationship between the plaintiff and defendant must be one of trade and commerce."); Vacco v. Microsoft Corp., 793 A.2d 1048, 1066-67 (Conn. 2002) (holding that indirect purchaser could not bring claim because "the plaintiff's claimed injuries are too indirect and remote with respect to the defendant's allegedly anticompetitive conduct for the plaintiff to recover under the CUTPA.).

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3:
## DEFINITIONS

The CUTPA provides that "No person shall engage in . . . deceptive acts or practices in the conduct of any trade or commerce."

**Authority:**
Conn. Gen. Stat. § 42-110(b)(a)

Certain terms are defined in Conn. Gen. Stat. § 42-110(a).  For example:

"Person" means a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, and any other legal entity; and

"Trade" and "commerce" mean the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in Connecticut.

**Authority:**
Conn. Gen. Stat. § 42-110(a)(3), (a)(4).

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4:
## ELEMENTS

To prove a claim under CUTPA, Plaintiffs must prove by a preponderance of the evidence that AstraZeneca made an intentional misrepresentation about the average wholesale price of Zoladex.  Specifically, Mssrs. Townsend and Howe must prove: (1) that AstraZeneca made a statement of fact; (2) that it was untrue and known to be untrue by AstraZeneca; (3) that it was made to induce Mssrs. Townsend and Howe to act upon it; and (4) that Plaintiffs did act upon it to their detriment.

**Authority:**
Winn v. Ameriquest Mortgage Co. et al., 2006 Conn. Super. LEXIS 1129, at * 19 (Conn. Super. Ct. Apr. 12, 2006).

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 5:
## MENTAL STATE REQUIREMENTS/SCIENTER

For reason that need not concern you, Plaintiffs' lawyers promised the Court they would prove AstraZeneca made an "intentional misrepresentation," concerning the Zoladex average wholesale price. In order to find an intentional misrepresentation under Connecticut law, you must find that AstraZeneca made a false statement of fact in the conduct of trade or commerce knowing that the statement was false and in order to induce Plaintiffs to act upon it and Plaintiffs did act upon the false statement to their detriment.

**Authority:**
Conn. Gen. Stat. § 42-110(b)(a); Conn. Gen. Stat. § 42-110(a)(4); Winn v. Ameriquest Mortgage Company et al., 2006 Conn. Super. LEXIS 1129, at *19 (Conn. Super. Ct. Apr. 12, 2006).

**DEFENDANT'S PROPOSED JURY INSTRUCTION No. 6:
CAUSATION**

In order to show proximate cause, Plaintiffs must prove that AstraZeneca's statements about the average wholesale price of Zoladex made in the conduct of trade or commerce directly produced or contributed substantially to producing Plaintiffs' loss.  If Mr. Howe and Mr. Townsend do not prove that they heard or read AstraZeneca's alleged misstatement, there is no proximate cause and you must find for AstraZeneca.  Similarly, if Plaintiffs' actions would not have changed had they known the actual wholesale price of Zoladex, then there is no proximate cause and you must find for AstraZeneca.

**Authority:**
Conn. Gen. Stat. § 42-110g(a) (private action limited to persons who suffer ascertainable loss "as a result of" deceptive practice); Capasso & Sons, LLC v. Zullo, Couto & Jacks, LLC, 2004 Conn. Super. LEXIS 1846, at *10 (Conn. Super. Ct. July 12, Ct. 2004) (all violations of the Act require a causal connection between the alleged conduct of the defendants and the plaintiffs' injuries); Ahmad v. Yale-New Haven Hosp., 2006 Conn. Super. LEXIS 860 (Conn. Super. Ct. Mar. 24, 2006) (injury and causation are critical to a cause of action under the Connecticut Unfair Trade Practices Act).

**DEFENDANT'S PROPOSED JURY NSTRUCTION NO. 7:**
**LEARNED INTERMEDIARY DOCTRINE**

Under certain circumstances, the Connecticut courts have recognized the "learned intermediary" doctrine as a defense to claims by a consumer of prescription drugs against a pharmaceutical manufacturer, such as AstraZeneca here, when the consumer receives his prescription drugs from a physician. The physician is an independent source of information "between" the manufacturer and the patient. A patient does not have a claim against the manufacturer of a drug for failure to provide information to him or her about a drug.

In this case, if you find that Mr. Howe and Mr. Townsend's doctors knew the relevant information about the average cost of the Zoladex they bought, then Plaintiffs cannot claim that AstraZeneca should have given it, and you should find for AstraZeneca.

**Authority:**
See Vitanza v. Upjohn Co., 778 A.2d 829 (Conn. 2001) (holding that the learned intermediary doctrine applies to product liability claims brought under the Connecticut Product Liability Act and is part of Connecticut's common law); Hurley v. Heart Phys., P.C., 898 A.2d 777, 783 (Conn. 2006) (quoting Guevara v. Dorsey Lab., Div. of Sandoz, Inc., 845 F.2d 364, 367 (1st Cir. 1988) ("The learned intermediary doctrine provides that adequate warnings to prescribing physicians obviate the need for manufacturers of prescription drugs to warn ultimate consumers directly.").

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 8:
## RELATIVE INVOLVEMENT OF MANUFACTURER AND DOCTOR

Under Connecticut law, a drug manufacture has no legal obligation to convey information about a drug to patients. Under Connecticut law, a doctor is required to tell his or her patient information about a drug.

There is some information concerning a drug that a doctor knows. If you determine that Mr. Howe and Mr. Townsend, in fact, wanted to know the average cost of Zoladex that their doctor's injected into them, you may consider, as between AstraZeneca and their doctors, which of the two knew the doctor's average cost of Zoladex, which of the two knew that Mr. Howe and Mr. Townsend were being injected; and which of the two were in a better position to convey that information quickly and accurately to Mr. Howe and Mr. Townsend.

Unless you determine that AstraZeneca both knew Mr. Howe and Mr. Townsend were going to be injected with Zoladex and knew their doctors' average cost for Zoladex, and that AstraZeneca was in a better position than their doctor to tell Mr. Howe and Mr. Townsend that information, you should find for AstraZeneca.

**Authority:**
See Vitanza v. Upjohn Co., 778 A.2d 829 (Conn. 2001) (holding that the learned intermediary doctrine applies to product liability claims brought under the Connecticut Product Liability Act and is part of Connecticut's common law); Hurley v. Heart Phys., P.C., 898 A.2d 777, 783 (Conn. 2006) (quoting Guevara v. Dorsey Lab., Div. of Sandoz, Inc., 845 F.2d 364, 367 (1st Cir. 1988) ("The learned intermediary doctrine provides that adequate warnings to prescribing physicians obviate the need for manufacturers of prescription drugs to warn ultimate consumers directly. The doctrine is based on the principle that prescribing physicians act as learned intermediaries between a manufacturer and consumer and, therefore, stand in the best position to evaluate a patient's needs and assess [the] risks and benefits of a particular course of treatment.").

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 9:
### LOSS/DAMAGES

You must also find by a preponderance of evidence that Plaintiffs suffered a loss of money or property that was proximately caused by AstraZeneca's intentional misrepresentation.

**Authority:**

Conn. Gen. Stat. § 42-110g(a) (private action limited to persons who suffer ascertainable loss "as a result of" deceptive practice); Ahmad v. Yale-New Haven Hosp., 2006 Conn. Super. LEXIS 860 (Conn. Super. Ct. Mar. 24, 2006) (injury and causation are critical to a cause of action under the Connecticut Unfair Trade Practices Act); Lorenzetti v. Jolles, 120 F. Supp. 2d 181 (D. Conn. 2000) (plaintiff need not prove a specific amount of actual damages because the term "loss" is broader than the term "damages").

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 10:
## HEIGHTENED STANDARD FOR PUNITIVE DAMAGES [11]

Under Connecticut law, the jury may award punitive damages in civil cases, including this CUTPA action, only when they have shown by clear and convincing evidence that the acts of AstraZeneca are willful, reckless, or maliciously tortious. In general, courts have defined clear and convincing evidence as more than a preponderance of the evidence but less than proof beyond a reasonable doubt; in other words, the truth of the facts asserted is "highly probable."

**Authority:**
Conn. Gen. Stat. § 42-110g(a); Nautilus LLC v. Langello, 1998 Conn. Super. LEXIS 1801, at *8 (Conn. Super. Ct. June 25, 1998) (punitive damages allowed in court's discretion if there is reckless indifference to another's rights or wanton or intentional violation of such rights); Gargano v. Heyman, 525 A.2d 1343, 1347 (Conn. 1987) ("In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence."); Enviro Express v. Resco, 2001 Conn. Super. LEXIS 407 (Conn. Super. Ct. Feb. 15, 2001) (striking plaintiff's request for punitive damages, where factual allegations were insufficient to support the contention that defendant's conduct was willful, reckless, or maliciously tortious).

---

[11] AstraZeneca does not believe that the evidence warrants a punitive damages instruction in this case. However, if the Court decides to instruct on punitive damages, the addition of punitive damages instructions presents further state law variations in both necessary factual findings and standards of proof that will have to be considered by the jury.

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 11:
## STATUTE OF LIMITATIONS

As noted in the general instructions, the Statute of Limitations is an Affirmative Defense that protects a defendant from liability for claims that are filed after a period of time set by the legislature. The statute of limitations for a claim based on the CUTPA is three years.

In Connecticut, the three year limitations period begins to run when the unlawful act took place.

**Authority:**
Conn. Gen. Stat. § 42-110g(f) (An action under this section may not be brought more than three years after the occurrence of a violation of this chapter); Fichera v. Mine Hill Corp., 541 A.2d 472, 476 (Conn. 1988).

**DEFENDANT'S PROPOSED JURY INSTRUCTION
RELATING TO THE DELAWARE CONSUMER FRAUD ACT,
6 DEL. CODE § 2511, *et seq.***

Zoladex patients from Delaware are included in this lawsuit. Their ability to establish liability and to recover damages depends on your application of Delaware law to the evidence introduced at trial. Therefore, I will now instruct you on the specific requirements of the Delaware Consumer Fraud Act (hereinafter "the CFA").

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 1:
## EXTRATERRITORIAL APPLICATION

The Delaware statute applies to persons who reside in Delaware as well as individuals who obtained goods in Delaware.  In order to recover, Plaintiffs must prove by a preponderance of the evidence that they reside or were injured in Delaware.[12]

**Authority:**
Delaware. Lony v. E.I. DuPont de Nemours & Co., 821 F. Supp. 956 (D. Del. 1993) (stating that in today's business world, consumers come from different areas to transact business and the Delaware CFA speaks to the protection of these consumers, not merely consumers residing in Delaware); Delaware. Marshall v. Priceline, -- A.2d --, C.A. No. 05c-02-195-wcc, 2006 Del. Super. LEXIS 447 (Del. Super. Ct. Oct. 31, 2006).

---

[12] As Mr. Howe and Mr. Townsend cannot satisfy this requirement for class members from this state, absent class members will have to satisfy this requirement in the individual damages phase of this proceeding.

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 2:**
**DEFINITIONS**

The CFA prohibits deception in connection with the sale or advertisement of any merchandise. The Act prohibits "the act use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale, lease or advertisement of any merchandise . . . ."

**Authority:**
6 Del. Code § 2513 (a).

Before I instruct you on the elements of Delaware law, I will define certain terms that are implied or explicit in Section 2513 of the CFA.

The CFA defines an advertisement to mean "the attempt by publication, dissemination, solicitation or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in, any merchandise."

The CFA defines merchandise to mean "any objects, wares, goods, commodities, intangibles, real estate or services."

The CFA defines person to mean "an individual, corporation, government, or governmental subdivision or agency, statutory trust, business trust, estate, trust, partnership, unincorporated association, 2 or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity."

The CFA defines sale to mean "any sale, offer for sale or attempt to sell any merchandise for any consideration."

**Authority:**
6 Del. Code § 2511.

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3:
## LEARNED INTERMEDIARY DOCTRINE

In Delaware a consumer of prescription drugs cannot have a claim against a pharmaceutical manufacturer, such as AstraZeneca, concerning information about the drug when the consumer receives their prescription drugs from a physician.  The physician is an independent source of information "between" the manufacturer and the patient.  A patient does not have a claim against the manufacturer of a drug for failure to provide information to him or her about a drug.

In this case, Plaintiffs assert that information about the average wholesale price of Zoladex was important.  If you determine that Plaintiffs wanted that information and Plaintiffs' doctors knew the relevant information about the average cost of the Zoladex they bought from AstraZeneca, then Plaintiffs cannot claim that AstraZeneca should have given it, and you should find for AstraZeneca.

**Authority:**
Lacy v. G.D. Searle & Co., 1988 Del. Super. Lexis 205 (June 23, 1988) (application of learned intermediary doctrine relieves the manufacturer of its duty to warn patient in context of products liability case).

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4:
## RELATIVE INVOLVEMENT OF MANUFACTURER AND DOCTOR

Under Delaware law, a drug manufacturer has no legal obligation to convey information about a drug to patients.  Under Delaware law, a doctor is required to tell his or her patient information about a drug.

There is some information concerning a drug that a doctor knows.  If you determine that Mr. Howe and Mr. Townsend, in fact, wanted to know the average cost of Zoladex that their doctors injected into them, you may consider, as between AstraZeneca and their doctors; which of the two knew the doctor's average cost of Zoladex, which of the two knew that Mr. Howe and Mr. Townsend were being injected, and which of the two were in a better position to convey that information quickly and accurately to Mr. Howe and Mr. Townsend.

Unless you determine that AstraZeneca both knew Mr. Howe and Mr. Townsend were going to be injected with Zoladex and knew their doctors' average cost for Zoladex, and that AstraZeneca was in a better position than their respective doctor(s) to tell Mr. Howe and Mr. Townsend that information, you should find for AstraZeneca.

**Authority:**
Lacy v. G.D. Searle & Co., 1988 Del. Super. Lexis 205 (June 23, 1988) (application of learned intermediary doctrine relieves the manufacturer of its duty to warn patient in context of products liability case).

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 5:
## ELEMENTS

To prove intentional misrepresentation under Delaware law, Plaintiffs will have to prove that: (1) AstraZeneca deliberately concealed a material fact rendering a statement false; (2) AstraZeneca knew of the falsity of the statement; (3) the statement was intentionally wrong; (4) Mr. Howe and Mr. Townsend heard or read the statement; and (5) Mr. Howe and Mr. Townsend reasonably relied upon it in making a decision, that resulted in damages.

**Authority:**
Nicolet, Inc., v. Nutt, et al., 525 A.2d 146, 149 1987 Del. LEXIS 1099, at *7 (Del. 1987).

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 6:
## TRANSACTION REQUIREMENT

Under the CFA, Plaintiffs must show that any deceptive statements made by AstraZeneca occurred "in connection with" the "sale or advertisement of any merchandise." I instruct you that if Plaintiff fail to prove that AstraZeneca was the seller in a sales transaction with a consumer, you must find for AstraZeneca. Similarly, if Plaintiffs fail to prove that AstraZeneca advertised Zoladex to consumers in Delaware and in doing so, intentionally misstated the average wholesale price of Zoladex, you must also find for AstraZeneca.

This is a case involving an alleged intentional misrepresentation to which the statute applies provided that the intentional misrepresentation was made in connection with the sale or advertisement of Zoladex. As discussed earlier, sale is defined by the statute and means "any sale . . . or attempt to sell . . [Zoladex] for [profit]." For the statute to apply, Plaintiffs must prove either of two things.

Plaintiffs must prove by a preponderance of the evidence that AstraZeneca sold Zoladex to Plaintiffs. It is not sufficient to determine that AstraZeneca manufactured Zoladex and sold it to a doctor. Rather, Plaintiffs must prove AstraZeneca in fact sold Zoladex to Plaintiffs. If Plaintiffs failed to prove that AstraZeneca was the seller in a sales transaction with them, you must find for AstraZeneca.

Plaintiffs may also recover if they prove by a preponderance of the evidence that the alleged intentional misrepresentation was made in connection with the advertisement of Zoladex. Again, advertisement is defined to mean "the attempt by publication . . . or circulation to induce, . . . any person to . .. [purchase] the product." Plaintiffs must prove AstraZeneca made an intentional misrepresentation in an advertisement about Zoladex directed at consumers in Delaware. Put another way, Plaintiffs must prove that AstraZeneca advertised Zoladex to consumers in Delaware and in doing so, intentionally misstated the average wholesale price of Zoladex.

**Authority:**
6 Del. Code § 2511; Thomas v. Harford Mut. Ins. Co., C.A. No. 01C-01-046-HDR, 2003 Del. Super. LEXIS 36, at *11-12 (Del. Super. Ct. Jan. 31, 2003) (because deceptive acts must have occurred "in connection with the sale or advertisement" of merchandise, representations are only actionable if they occurred during transaction with plaintiff.)

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 7:**
**MENTAL STATE REQUIREMENT**

An act is intentional if the actor either acts with the desire to cause it, or acts believing that there is a substantial certainty that the result would follow from his conduct.

In order to find AstraZeneca liable, you must conclude that AstraZeneca intentionally made a false statement about average wholesale price believing there was a substantial certainty that Plaintiffs would reasonably rely on the alleged misrepresentation when making decisions about Zoladex.

**Authority:**
S&R Assocs. L.P. III v. Shell Oil Co., 725 A.2d 431, 440, 1998 Del. Super. LEXIS 346, at *23 (Del. Super.Ct. 1998).

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 8:
## CAUSATION

You must also find by a preponderance of evidence that Mr. Townsend and Mr. Howe suffered a loss of money or property that was proximately caused by AstraZeneca's intentional misrepresentation.  If you determine that the result would not have changed had Plaintiffs been given accurate information about the average wholesale price of Zoladex, then there is no proximate causation.

**Authority:**
Gebelein v. Four State Builders, et al., 1983 Del. Ch. LEXIS 492, at *6 (1983) (Del. Code Ann. § 2523 has been interpreted as authorizing recovery of actual damages and actual losses suffered as a result of deception); Young v. Joyce, 351 A.2d 857, 859 (Sup. Ct. 1975) ("[T]he Act . . . provides that the individual consumer harmed by a violation of § 2513 be allowed to recoup any actual losses suffered as a result of fraud or deception practiced against him").

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 9:**
**HEIGHTENED STANDARD FOR PUNITIVE DAMAGES** [13]

Under Delaware law, Plaintiffs are entitled to punitive damages in civil cases, including this CFA action, only when they have shown by clear and convincing evidence that the acts of AstraZeneca are "gross, oppressive or aggravated, or where it involves breach of trust or confidence." In general, courts have defined clear and convincing evidence as more than a preponderance of the evidence but less than proof beyond a reasonable doubt; in other words, the truth of the facts asserted is 'highly probable.' Notably, "the award of punitive damages cannot be made unless the plaintiff also receives compensatory damages."

**Authority:**
Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1076-77 (Del. 1983).

---

[13] AstraZeneca does not believe that the evidence warrants a punitive damages instruction in this case. However, if the Court decides to instruct on punitive damages, the addition of punitive damages instructions presents further state law variations in both necessary factual findings and standards of proof that will have to be considered by the jury.

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO 10:
## MATERIALITY

Plaintiffs must prove that AstraZeneca intentionally concealed material facts with the intent that Mssrs. Howe and Townsend would rely upon that concealment.  A fact is "material" if a reasonable person would attach importance to it in determining his choice of action in the transaction in question.  Mssrs. Howe and Townsend must prove that it was important to them that they know the actual wholesale price their doctors paid for Zoladex.


**Authority:**
Harper v. Russell, 836 A.2d 513 (Del. 2003); Restatement (Second) of Torts § 538 (2)(1977); S&R Assocs. L.P. III v. Shell Oil Co., 725 A.2d 431, 440 (Del. Super.Ct. 1998) ("While a fraud action at common law requires the plaintiff to prove reliance, there is no corresponding reliance requirement in [the statute].  The Plaintiff need only prove that the Defendant intentionally concealed material facts with the intent that others would rely upon such concealment.").

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 11:
## STATUTE OF LIMITATIONS

As noted in the general instructions, the Statute of Limitations is an Affirmative Defense that protects a defendant from liability for claims that are filed after a period of time set by the legislature. The statute of limitations for a violation of the Delaware CFA is three years and cannot be extended.

**Authority:**
10 Del. C. § 8106 ("no action based no a statute . . . shall be brought after the expiration of 3 years from the accruing of such action . . ."), see also Eames v. Nationwide Mut. Ins. Co., C.A. No. 04-1324-KAJ, 2006 U.S. Dist. LEXIS 61706 (D. Del. Aug. 29, 2006) ("The parties agree that Plaintiffs' statutory consumer fraud claim is governed by the three-year statute of limitations set forth in 10 Del. C. § 8106); Pender v. Daimler Chrysler Corp., C.A. No. 03c-12-022-FSS, 2004 Del. Super. LEXIS 275 (Del. Super. Ct. July 30, 2004) (applying § 8106 to plaintiffs' consumer fraud claim).

The three year period begins to run when the cause of action accrues, which is at the time of the wrongful act. For Plaintiffs from the state of Delaware, you must find that their action was filed within three years from when AstraZeneca last made a misrepresentation relevant to this case. For any such misrepresentations made three years or longer before this action was filed, Plaintiffs alleging violation of the CFA may not hold AstraZeneca liable.

**Authority:**
Pender v. Daimler Chrysler Corp., 2004 Del. Super. LEXIS 275, at *8 (Del. Super. Ct. July 30, 2004).

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 12:**
**DISCOVERY RULE**

An exception to the three year statute of limitations applies if you find that the Plaintiff's suit was filed within three years of the date from which the Plaintiff could have first reasonably discovered his injuries.

In this case, suit was filed in December 2001.

It is the Plaintiff's duty to use reasonable diligence to properly inform himself of the facts and circumstances of the injury.

Reasonable diligence is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised. Put another way, the question in any given case is not, what did the plaintiff know of the injury done him? But, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?

A person's actions must be evaluated to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.

You as the jury must determine when the Plaintiff's injury and its cause were discovered or should have reasonably been discovered by Plaintiff. Then the Court will decide whether the statute of limitations bars the claim.

**Authority:**
Eames v. Nationwide Mut. Ins. Co., 2006 U.S. Dist. LEXIS 61706, at *12 (D. Del. Aug. 29, 2006) (citation omitted) (assuming arguendo that the discovery rule applied, but still dismissing plaintiffs' claims as time-barred); Mentis v. Del. American Life Ins. Co., CA No. 98C-12-023 WTQ 1999 Del. Super. LEXIS 419, at *23-25 (Del. Super. Ct July 28, 1999) (citations omitted) (When plaintiff has reason to know that a wrong has been committed it is not the actual discovery of the reason for the injury that starts the clock, but the discovery of facts sufficient to put a person of ordinary intelligence on inquiry, which, if pursued, would lead to the discovery); S&R Assocs. L.P. III v. Shell Oil Co., 725 A.2d 431, 439 (Del. Super.Ct. 1998) ("It is not the actual discovery of the reason for the injury that starts the clock, but the discovery of facts sufficient to put a person of ordinary intelligence on inquiry, which, if pursued, would lead to discovery.")