UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| CLASS 1 JURY TRIAL (ASTRAZENECA) | Judge Patti B. Saris |

**PLAINTIFFS' OPPOSITION TO ASTRAZENECA'S MOTION *IN LIMINE* TO EXCLUDE THE 2003 OFFICE OF INSPECTOR GENERAL GUIDELINES**

Plaintiffs respectfully submit this opposition to Defendant, AstraZeneca Pharmaceuticals, LP, Motion *in Limine* seeking to exclude all documents, testimony and arguments relating to the 2003 Office of Inspector General Compliance Program Guidance for Pharmaceuticals Manufacturers, 68 Fed. Reg. 23731 (May 5, 2003) ("OIG Guidance" or "OIG Guidelines").[1]

AstraZeneca's attempt to exclude the OIG Guidance and all related material is in direct conflict with its own efforts to introduce 132 documents and reports ranging in date from 1967 to 2006 (of which at least five are OIG reports) to support its "government knowledge" defense. The OIG Guidance directly contradicts the "government knowledge" defense, as the Inspector General concludes that manipulation of AWP is illegal.  The OIG Guidance, therefore, is relevant, admissible rebuttal evidence.

---

[1] Plaintiffs' Trial Exhibit 182.

Further, the OIG Guidelines directly bear on AstraZeneca's argument that it was free to publish any AWP it felt even if completely unattached to reality.  The OIG Guidelines make it clear that the regulators believed AWP should include discounts and should be a real number. And in fact, when the government found out that companies like AstraZeneca misrepresented AWP it prosecutes such companies, including AstraZeneca, on the same theory advanced by the OIG Guidelines.

The OIG Guidance is also properly admissible to support plaintiffs' theory that AstraZeneca's conduct was unfair and deceptive.  To accept AstraZeneca's arguments to the contrary would render the OIG Guidance meaningless.  Similarly, AstraZeneca's disingenuous "too remote in time" arguments are inconsistent with its own efforts to introduce documents as early as the 1960's and as late as 2006.  As AstraZeneca's motion concedes, the Inspector General first published a notice for the OIG Guidance in June 2001 and issued a draft guidance in October 2002.  The final guideline was published during the class period.  It is irrational to suggest that events occurring within the class period are too remote to be considered by the jury.

## I.     THE OIG GUIDANCE IS RELEVANT, ADMISSIBLE EVIDENCE TO REBUT DEFENDANT'S "GOVERNMENT KNOWLEDGE" DEFENSE

Relevant evidence is that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  A party may introduce rebuttal evidence "to explain, repel, contradict or disprove an adversary's proof."  *U.S. v. LiCausi*, 167 F.3d 36, 52 (1st Cir. 1999).  This Court has significant leeway in determining whether to admit or exclude evidence.  *See Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 690 (1st Cir.1994).

The OIG Guidance is relevant and admissible because it directly rebuts AstraZeneca's "government knowledge" defense, AstraZeneca's "meeting competition" defense and

AstraZeneca's "we have marketed the spread but we ripped off consumers less than Lupron" defense. Since this case began AstraZeneca has argued that the government was aware of, and in fact acquiesced to, its manipulation of Zoladex's AWP. *See In re Pharm. Indus. Average Wholesale Price Litig.* ("*AWP*"), 263 F. Supp. 2d 172, 180 (D. Mass. 2003). AstraZeneca clearly intends to pursue this argument at trial, as it proffers as evidence 132 different government reports and documents, of which at least five are OIG reports. (AstraZeneca Pharmaceuticals LP's Pretrial Disclosures, Trial Exhibit Nos. 1006, 1007, 1075, 1080, 1098). It also appears to purport to call an ex-government employee to testify that its practices were either known to or approved by the government.

The OIG Guidance directly rebuts AstraZeneca's government knowledge and approval arguments, as it establishes that, after notice and comments, it was the view of the Inspector General[2] that "it [was] illegal for a [pharmaceutical] manufacturer knowingly to establish or inappropriately maintain a particular AWP if one purpose is to manipulate the 'spread' to induce customers to purchase its product." 68 Fed. Reg. at 23737. There is no factual dispute that AstraZeneca violated this mandate even after it was final.

Certainly the OIG Guidance destroys any argument that the government had accepted AstraZeneca's manipulation of AWP and will put in context testimony of ex-governmental officials now on the payroll of the industry, to the contrary. As such, the OIG Guidance is relevant and admissible. To prevent plaintiffs from using this rebuttal evidence would be highly prejudicial and would allow the creation of a misleading picture.

---

[2] The stated purpose of the Inspector General's Office is to "effect independent and objective audits and investigations of the programs and operations of each agency [which includes federal health care programs] . . . to prevent fraud and abuse . . . and [to keep] Congress apprised of problems and deficiencies in the programs." *Winters Ranch P'shp v. Viadero*, 123 F.3d 327, 333 (5th Cir. 1997) (citing 5 U.S.C. app. 3 § 2(1)-(3)).

## II.     THE OIG GUIDELINES ARE RELEVANT TO ASTRAZENECA'S CLAIM THAT AWP COULD MEAN ANYTHING

A basic theme of AstraZeneca's is that AWP could be utterly disconnected from a real AWP because the government knew of the existence of discounts.  Thus, apparently, according to Dr. Bell, AWP could mean anything AstraZeneca wished.

However, the Inspector General believes otherwise and indicated its belief was not a change in the law.  68 Fed. Reg. at 23733 ("This guidance does not create any new law or legal obligations").  The OIG Guidelines state that the "government sets reimbursement with the expectation that the date provided are complete and accurate."  *Id.*  They go onto state the "reported prices should accurately take into account price reductions, cash discounts. . . ."  *Id.*  It is undisputed that AstraZeneca's reported AWPs did not comply with this aspect of the Guidance.

This portion of the OIG Guidelines is directly relevant to what AWP was supposed to mean and is relevant again to AstraZeneca's claim that it had government approval for its conduct in publishing phony AWPs.

Finally, after the OIG Guidelines were proposed and implemented AstraZeneca still published false AWPs and did so until the implementation of the MMA.  How can that not be relevant?

## III.     THE OIG GUIDANCE IS RELEVANT TO PLAINTIFFS' CLAIMS

The OIG Guidance, on its own, is properly admissible, relevant evidence that AstraZeneca's conduct violates state consumer protection laws.  *Sears, Roebuck & Co. v. Goldstone & Sudalter*, 128 F.3d 10 (1st Cir. 1997) (Under Massachusetts law, violations of rules governing legal profession are relevant in consumer protection violation cases under M.G.L.A. ch. 93A).  The central issue presented at trial is whether AstraZeneca harmed Medicare

beneficiaries by manipulating Zoladex's AWP and marketed the resulting "spread" to physicians. The jury will need to determine whether such conduct is "unfair" and "deceptive" as to violate the various state consumer protection acts.[3]  Certainly, the Inspector General's conclusions about what is legal under federal law is relevant to the jury's determinations.  *PMP Assoc., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915, 917 (1975) (Ch. 93A liability may exist if the defendant's conduct falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, unethical, oppressive or unscrupulous.")

To deem the OIG Guidance irrelevant would render it meaningless, and is plainly inconsistent with the Supreme Court's holding that such enforcement guidelines are entitled to "some weight on judicial review."  *Marin v. OSHRC*, 499 U.S. 144, 157 (1991) (citations omitted).  Indeed, this Court has already considered the OIG Guidance in two opinions issued during this litigation.  First, in rejecting the defendants' prudential abstention arguments, the Court noted the plaintiffs' submission of the OIG Guidance to dispute defendants' claims of government acquiescence to its AWP practices.  *AWP*, 263 F. Supp. 2d at 180 n.6.  Second, in the Court's opinion on the parties cross-motions for summary judgment it related the meaning of AWP, the Court quoted the OIG Guidance's admonishment that pharmaceutical manufacturers should accurately take into account all price concessions and discounts offered to purchasers when calculating data used to determine government reimbursement.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 460 F. Supp. 2d 277, 282 (D. Mass. 2006).  Thus this Court has already recognized the relevance of the OIG Guidance to plaintiffs' claims.

---

[3] *Cambridge Plating Co., Inc. v. Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996) ("Perhaps by design, the dimensions of Chapter 93A liability are difficult to discern with precision.  Neither "unfair" nor "deceptive" is specifically defined in the statute; nor has the case law supplied precise definitions.").

## IV.    THE OIG GUIDANCE WAS ISSUED DURING THE CLASS PERIOD

AstraZeneca's claim that the OIG Guidance is inadmissible because it is "too remote in time" is both factually incorrect and inconsistent with its own efforts to introduce documents well before the class period (dating back to the 1960's) and after the class period (including documents from 2006).

None of the cases relied on by AstraZeneca exclude government standards that were issued *during* the class period, and there is no basis to conclude that a document must be issued at the beginning of the class period to be relevant to the entire case.  As AstraZeneca concedes, the Inspector General first published a notice about the Guidance in June 2001 and issued a draft guidance on October 3, 2002.  Def. Br. at 2 n.2.  In fact, AstraZeneca's counsel, Stuart L. Fullerton, participated in a workshop for pharmaceutical manufacturers on October 17, 2002, entitled "The PhRMA Code and the OIG Draft Guidance.  How to Implement Them and Make Them 'Workable' for Your Company."  (AZN0705380 – AZN0705389.)  Obviously AstraZeneca was aware of the OIG Guidance by 2002 and thought the Guidance important enough that senior executives and attorneys considered how to comply with it.  This was well over a year before the end of the class period, making the OIG Guidelines not "remote" in any sense, and therefore relevant evidence.

## V.    CONCLUSION

For all the foregoing reasons, AstraZeneca's motion *in limine* to exclude all documents, testimony and arguments relating to the 2003 Office of Inspector General Compliance Program Guidance for Pharmaceuticals Manufacturers must be denied.

001534-16  162846 V1

DATED:  April 6, 2007                By_____/s/ **Steve W. Berman**_____
                                         Thomas M. Sobol (BBO#471770)
                                         Edward Notargiacomo (BBO#567636)
                                     Hagens Berman Sobol Shapiro LLP
                                     One Main Street, 4th Floor
                                     Cambridge, MA  02142
                                     Telephone: (617) 482-3700
                                     Facsimile: (617) 482-3003

                                     **LIAISON COUNSEL**

                                     Steve W. Berman
                                     Sean R. Matt
                                     Hagens Berman Sobol Shapiro LLP
                                     1301 Fifth Avenue, Suite 2900
                                     Seattle, WA  98101
                                     Telephone: (206) 623-7292
                                     Facsimile: (206) 623-0594

                                     Elizabeth A. Fegan
                                     Hagens Berman Sobol Shapiro LLP
                                     60 W. Randolph Street, Suite 200
                                     Chicago, IL  60601
                                     Telephone: (312) 762-9235
                                     Facsimile: (312) 762-9286

                                     Eugene A. Spector
                                     Jeffrey Kodroff
                                     Spector, Roseman & Kodroff, P.C.
                                     1818 Market Street, Suite 2500
                                     Philadelphia, PA  19103
                                     Telephone: (215) 496-0300
                                     Facsimile: (215) 496-6611

                                     Kenneth A. Wexler
                                     Jennifer Fountain Connolly
                                     Wexler Toriseva Wallace LLP
                                     One North LaSalle Street, Suite 2000
                                     Chicago, IL  60602
                                     Telephone: (312) 346-2222
                                     Facsimile: (312) 346-0022

001534-16  162846 V1

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  162846 V1

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on April 6, 2007, I caused copies of **PLAINTIFFS' OPPOSITION TO ASTRAZENECA'S MOTION *IN LIMINE* TO EXCLUDE THE 2003 OFFICE OF INSPECTOR GENERAL GUIDELINES** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

   /s/ Steve W. Berman
Steve W. Berman

001534-16  162846 V1