UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>CLASS 1 JURY TRIAL (ASTRAZENECA) | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS 1 PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ASTRAZENECA'S MOTION *IN LIMINE* TO PRECLUDE ADMISSION OF DOCUMENTS AND <u>TESTIMONY OF OTHER PHARMACEUTICAL COMPANIES</u>**

The documents that AstraZeneca seeks to exclude are relevant, not unduly prejudicial and are either not hearsay or fall within an exception to the hearsay rule.

For example, among the documents AstraZeneca seeks to exclude are AstraZeneca's own business records produced by TAP, and not by AstraZeneca, that consist of spread marketing materials sent by AstraZeneca to doctors. How can AstraZeneca's own documents evidencing the exact practices plaintiffs' alleged in the first complaint in this case, which AstraZeneca did not produce, but which TAP did, not be admissible.

Among other documents that AstraZeneca also seeks to exclude are the internal policies of BMS and J&J admitting that marketing the spread is wrong. Such evidence goes to the heart of AstraZeneca's defense, that it is okay to market the spread in order to meet competition – or if the other company did it – we should have.

As demonstrated below, AstraZeneca's motion should be denied.

Rather than asserting broad statements unconnected to the actual evidence, as AstraZeneca has done, Plaintiffs will respond by discussing the admissibility of each specific category of evidence.

## I.     ADMISSIBILITY OF DOCUMENTS

1.     **Plaintiffs' Exs. 57-59.**  Those documents consist of correspondence reflecting an exchange of complaints between Zeneca and Abbott concerning each others marketing practices, including marketing the spread.  *See* Ex. 59 at 43560.  In one letter Zeneca threatened to go to the authorities if TAP continued to misbehave.  The relevance is as follows.  AstraZeneca could have in fact gone to the authorities and blown the whistle on illegal free goods marketing or on the spread marketing being conducted by TAP.  Instead, as will be proven by deposition testimony, the two companies agreed that they would compete based on RTP and would not go to the authorities.  Years later both companies were prosecuted for violating marketing through the use of free goods ***and*** for falsifying AWP via RTP marketing.[1]  Thus, AstraZeneca made a deliberate choice to go down the wrong path – the illegal path.  These letters and the related history, as told by deposition testimony, are relevant to its "we were the good guy" argument.  In fact, both TAP and AstraZeneca have unclean hands.

---

[1] Though AstraZeneca often claims that the government's case related to isolated instances of free goods, the government charged AstraZeneca with the same practices at issue in this litigation, the publication of false AWPs. *See* Plaintiffs' Ex. 188 at p. 2 where the DOJ summarized the charge as follows:

> (iii) Also in order to induce physicians to purchase Zoladex, AstraZeneca marketed a "Return-to-Practice" program to physicians.  This Return-to-Practice program consisted of inflating the Average Wholesale Price ("AWP") used by Medicare and others for reimbursement of the drug, deeply discounting the price paid by physicians to AstraZeneca for the drug ("the discounted price"), and marketing the spread between the AWP and the discounted price to physicians as additional profit to be returned to the physician's practice from Medicare reimbursements for Zoladex;
>
> (iv) AstraZeneca set the AWP for Zoladex at levels far higher than the majority of its physician customers actually paid for the drug.  As a result, AstraZeneca's customers received reimbursement from Medicare and state Medicaid programs and others at levels significantly higher than the physicians' actual costs or the wholesalers' average price; and….

2.      **Plaintiffs' Ex. 239.**  This is an Abbott document indicating that it has been in contact with BMS, Zeneca and Amgen and the American Society for Clinical Oncology ("ASCO") to discuss "everyone's concerns" about HCFA conducting a survey to establish acquisition costs as opposed to reimbursement being based on AWP.  The document goes on to discuss ASCO's attempt to kill the survey.  This is probative of AstraZeneca's intent and state of mind.  Rather than reveal its true prices, or merely being as it portrays itself an unwitting participant in Medicare's "perverse payment system," AstraZeneca actively sought to perpetuate the AWP system and kept knowledge of real transaction prices from the government.  This conduct is relevant also to "unfairness" and to AstraZeneca's statute of limitations defense.  If AstraZeneca was working with other companies to conceal the truth that conduct could be "unfair" and it could also toll the running of the statute.

3.      **Plaintiffs' Exs. 240-242**.  AstraZeneca is correct that these are documents produced by a third party.  However, these are AstraZeneca documents not produced by AstraZeneca but produced by TAP.  In them AstraZeneca is aggressively promoting spread marketing.  *See*, *e.g.*, Ex. 240 (at 5080967 net profit from Zoladex $8,548 versus Lupron $4,627).  *Id*. at 5080968 ("net return ... is equal or better"); Ex. 242 (AstraZeneca presentation to urology clinic boasting of a $77,108.00 greater yearly RTP with Zoladex).  These AstraZeneca documents are admissions and/or go to AstraZeneca's state of mind.  They are AstraZeneca's own documents just produced through another party, and are not hearsay.

4.      **Plaintiffs' Exs. 288 and 183.**  These exhibits are from J&J and BMS respectively.  For example, in Ex. 288, J&J (Ortho) announces that "[i]t's absolutely inappropriate to sell product based upon the difference between AWP and acquisition price."  This document is not hearsay; it was introduced at the Class 2 and 3 trial.  It is certainly relevant

- 3 -

to AstraZeneca's defense, propagated through Dr. Bell, that it is okay to market the spread. The same is true for the BMS policy document.[2]

## II.  ADMISSIBILITY OF DEPOSITIONS

AstraZeneca seeks to exclude the testimony of former TAP employees Douglas Durand, Kenneth Greisman and Dean Sundberg. Mr. Sundberg was responsible for reviewing and approving all the promotional materials used by the TAP sales force, including those materials which focused on spreads for TAP's drug Lupron and AstraZeneca's drug, Zoladex. Among other things, he will testify to the following significant facts relevant to the Class 1 consumer trial: that, sometime in the 1990s, instead of complaining to the Federal Government about AstraZeneca's use of spread marketing via a program AstraZeneca called, "Return to Practice", executives and counsel from TAP (including himself) chose to meet directly with executives and counsel from AstraZeneca at AstraZeneca's corporate headquarters in Wilmington, Delaware; that the purpose of the meeting was to discuss the respective companies' cross-allegations about improper marketing practices and "systematic misrepresentation" of the competitor's pricing to physicians, and to ensure that both companies stop misrepresenting the other's pricing; that both AstraZeneca's and TAP's mutual purposes were achieved; and that an agreement was reached between the two companies to bring the other's attention issues about promotional practices the two companies were engaging in, including Return to Practice, and, significantly, to not go to the Federal Government about these issues.

This testimony is critical to establishing, among other things, that AstraZeneca and TAP agreed to compete with each other on spread marketing via their "Return to Practice" programs,

---

[2] The remaining documents, Plaintiffs' Exs. 197, 239-43, 248-53, 290-323, 325, 327 and 329-377, are documents produced by TAP in litigation to which AstraZeneca was either a party or discovery was coordinated. Many of these documents will be used in cross-examination. Plaintiffs suggest the issue of admissibility be addressed at the time of introduction.

but also that the reached a direct agreement to conceal this conduct from the Federal Government, consumers and the world. AstraZeneca has cited no case for the proposition that discovery in a "coordinated state court case"[3] of a co-defendant employee is hearsay in the context of a trial of that defendant. Indeed, AstraZeneca cites Evidence Rule 804(b)(1), which expressly stands for the proposition that this testimony of unavailable witnesses is admissible against AstraZeneca because AstraZeneca "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *See* AZ Mem. at 7-8. While AstraZeneca claims "it did not have sufficient opportunity to cross examine the current and former TAP employees to justify admitting their hearsay statements," this claim has no merit. AstraZeneca's counsel has been the Liaison Counsel for all defendants in the *Swanston* litigation since its inception, as evidenced by the attached "Joint Pretrial Conference Memorandum for August 23, 2004 Pretrial Conference" (wherein AstraZeneca presented the defendants' unified position) (Ex. B). Throughout the *Swanston* proceedings, AstraZeneca has consistently pressed for the state and MDL courts (in both MDL 1456 and MDL 1430) to be fully coordinated on discovery. The statement by AstraZeneca on behalf of all defendants in the *Swanston* case that perhaps best exemplifies this position is the following:

> Defendants believe that this amount of time [proposed in the Pretrial Conference Memorandum] is necessary given the significant amount of discovery that will be required if a class action based on the Second Amended Complaint is certified. Moreover, this schedule allows for coordination with the MDL 1456 proceedings (the "MDL 1456") before Judge Saris in Boston and the Lupron MDL 1430 proceedings (the "MDL 1430") before Judge Stearns. (Footnote: Indeed, to facilitate coordination with the MDL proceedings, Defendants request that the Court enter an order directing that depositions in this case and the MDL

---

[3] *See* Order Designating Case As Coordinated State Court Case, *Swanston v. TAP Pharms. et al.*, CV2002-004988 (Ariz. Super. Ct. Nov. 22, 2004) attached as Ex. A.

- 5 -

> proceedings be cross-noticed in order to eliminate needless duplication and expense.)
>
> Finally, the Court should be advised that, although coordination with the MDL proceedings will help will help streamline some discovery efforts, Arizona–specific issues will need be addressed separately from the MDL proceedings . . .

*Id.* at 18.

Before each of the subject depositions were taken in the *Swanston* case,[4] counsel for AstraZeneca not only received copies of the deposition notices, but received and responded to written correspondence advising them that these depositions were being conducted in coordination with the MDL cases. *See*, *e.g.*, letters dated November 5, 2003, December 2, 2003, and March 2, 2004, all addressed to D. Scott Wise of Davis Polk & Wardwell, attached hereto collectively as Ex. D. The November 5, 2003 letter made specific reference to the November 11, 2003 deposition of Dean Sundberg of TAP and, after the deposition was taken (and AstraZeneca's counsel failed to appear), a follow-up letter dated December 2, 2003 admonished AstraZeneca as follows:

> ... you may be interested in knowing the most recent round of depositions (which were consented to by your co-defendants) uncovered some interesting facts concerning your client, AstraZeneca. Since you were duly notified about these depositions, and will continue to be notified of future depositions and discovery, your decision to not attend the same has been, and will continue to be, at your peril and the peril of your co-defendants that you classify as the 'non-Lupron defendants.' When this case comes up for trial, you and your band of 'non-Lupron defendants' will be hard pressed to argue that the evidence discovered in this case through discovery of your co-defendants who have consented to the same may not be used at trial against you under the circumstances by which you have chosen to proceed in this matter."

---

[4] *See*, *e.g.*, Transcript of the deposition of Dean Sundberg at p. 7 (attached hereto as Ex. C) (wherein counsel for Defendant TAP states "it is TAP's position that this deposition is being taken for purposes not only of the *Stetser* case, but the *Walker* case, **the *Swanston* case**, the *International Union of Operating Engineers* case **and then, of course, for the MDL case** and California cases **and coordinated state court cases**.") (Emphasis added).

- 6 -

*See Id.* (December 2, 2003 letter).

Then, after Davis Polk & Wardwell argued in a letter about the Rules concerning the admissibility of such depositions at trial, *Swanston* counsel wrote back as follows:

> I read with great interest your letter dated February 27, 2004 purporting to set forth the rules for the admissibility of evidence obtained during the discovery previously taken in the *Swanston* case. Although you continue to maintain that such prior discovery cannot be used in *Swanston,* your position is belied by the contrary position taken by your co-defendants and the interests of judicial economy and efficiency that were advanced by agreeing to coordinate the *Swanston* case with both *Walker* and *Stetster*. Nevertheless, you will make your case during the final pre-trial conference before the trial of this case and we will do the same; however, I am confident that the evidence will come in at least against your co-defendants based on their prior agreements.

*See id.* (March 2, 2004 letter to D. Scott Wise).

In view of the fact that the *Swanston* case was litigated throughout discovery as a "Coordinated State Court Case" with the consent of both AstraZeneca and its co-defendants to such coordination (to prevent duplication of discovery), the fact that AstraZeneca's counsel moved for the very Order designating the case as a "Coordinated State Court Case," the fact that AstraZeneca received timely notices of all such depositions before they were taken and several letters advising them of issues pertaining to AstraZeneca that arose at these depositions, and AstraZeneca's failure to act over the last four years since these depositions were taken to remedy the situation of their failure to participate in the discovery, their objections on the eve of trial on grounds of Rule 804(b)(1) should be rejected, and the depositions admitted as factual testimony of unavailable declarants.

DATED:  April 6, 2007                By      /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

- 9 -

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 10 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

      I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on April 6, 2007, I caused copies of **CLASS 1 PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ASTRAZENECA'S MOTION *IN LIMINE* TO PRECLUDE ADMISSION OF DOCUMENTS AND TESTIMONY OF OTHER PHARMACEUTICAL COMPANIES** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                            /s/ Steve W. Berman
                                           Steve W. Berman

001534-16  162463 V1