# EXHIBIT B

William J. Maledon, Atty. No. 003670
Dawn L. Dauphine, Atty. No. 010833
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona  85012-2794
Telephone:  (602) 640-9000
Facsimile:  (602) 640-9050
wmaledon@omlaw.com
ddauphine@omlaw.com

D. Scott Wise
Kimberley D. Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile:  (212) 450-3800
d.wise@dpw.com
kharris@dpw.com

**Attorneys for Defendants AstraZeneca Pharmaceuticals LP; Zeneca Inc.;**
**AstraZeneca LP and Liaison Counsel for the Entity Defendants**

Harry J. Miller III
80 East Columbus Ave.
Phoenix, Arizona  85012
Telephone:  (602) 264-4965
Facsimile:  (602) 277-0144
harry.miller@azbar.org

Donald E. Haviland, Jr.
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania 19012
Telephone:  (215) 772-1000
Facsimile:  (215) 772-1359
Donald.Haviland@KlineSpecter.com

**Co-Lead Counsel for Plaintiff and Class**

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ROBERT J. SWANSTON, individually and on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>TAP PHARMACEUTICAL PRODUCTS, INC.; et al.,<br><br>                              Defendants. | CV2002-004988<br><br>**Joint Pretrial Conference Memorandum for August 23, 2004, Pretrial Conference**<br><br>(Assigned to the Honorable Rebecca A. Albrecht) |

1    Pursuant to the Court's Order dated February 17, 2004, the parties submit this Joint

2  Pretrial Conference Memorandum for the August 23, 2004, pretrial conference.  As required

3  by that Order, the parties provide the following discussion and their respective positions

4  "regarding the path this litigation will take regarding discovery issues, discovery cut-off, and

5  the appointment of a discovery master."  MEO dated Feb. 17, 2004.

6  **I.      CURRENT STATUS AND SCHEDULE.**

7    Plaintiff has filed a motion for class certification.  The Court has established the

8  following schedule for class certification issues:

9
       - **November 12, 2004** -- Defendants to file response to Motion for Class
10         Certification;

11     - **December 10, 2004** -- Plaintiff to file reply re Motion for Class Certification;

12     - **January 7, 2005, 9:00 a.m.** -- Oral argument on Motion for Class
           Certification.

13    Pursuant to the Court's order, discovery pertaining to class certification issues is

14  proceeding, as discussed below.

15  **A.      PLAINTIFF'S STATEMENT.**

16    This case has been proceeding for two and one-half years.  Back in July 2002,

17  Plaintiff served on the original Defendants a set of document requests, the first of which

18  asked those Defendants to provide in this case the same materials they were

19  contemporaneously providing to counsel in other litigation pending against them, including

20  the multidistrict litigation pending in Boston federal court, MDL 1456.  These original

21  Defendants refused to respond to these discovery requests, or to otherwise provide discovery

22  pursuant to Arizona's disclosure rules at the same time discovery on the merits was being

23  produced in the MDL and other cases.  However, Plaintiff was able to reach agreement with

24  certain of these original Defendants as to the coordination of discovery being conducted in

25  state court litigation.

26
                                    - 2 -                          468544v1

1   Several of the original Defendants in this case are also Defendants in two other state

2   court cases being litigated by Plaintiff's counsel, *Walker v. TAP Pharmaceutical Products,*

3   *Inc.,* C.A. No. CPM-L-682-01 (Superior Court, Law Div., Cape May Co., New Jersey) ("the

4   New Jersey Action"), and *Stetser, et. al. v. TAP Pharmaceutical Products Inc., et. al.,* C.A.

5   No. 1 CVS 5268 (Superior Court, New Hanover County, North Carolina) ("the North

6   Carolina Action").  The discovery in these cases is now completed, the dates for discovery

7   cut off have passed, and the New Jersey case is set for trial on October 25, 2004.  The

8   Defendants in both the New Jersey and North Carolina Actions insisted from the outset that

9   the discovery being conducted in these cases be coordinated with and "count" for this case.

10  Consequently, in order to avoid duplication of discovery effort, Plaintiff's counsel herein

11  agreed to receive discovery documents in the New Jersey and North Carolina Actions in this

12  case, and to conduct discovery depositions in coordinated fashion amongst the three state-

13  court cases.  This agreement was reached despite the fact that all Defendants herein

14  collectively had insisted that discovery in this case be stayed during the pendency of

15  Defendants' Motion to Transfer the case to MDL 1456, and, most recently, they had

16  requested that "merits" discovery be stayed pending this Court's hearing on August 23,

17  2004.[1]

18  As part of such agreement to coordinate discovery, the parties conducted over one

19  hundred depositions in the New Jersey and North Carolina Actions, most of which were

20  depositions of current and former employees of the Defendant corporations.  These

21  depositions were duly noticed in this case and all defense counsel herein were invited to

22

23  [1]   Plaintiff's counsel made clear to defense counsel  – who were requesting such
    discovery coordination – that their agreement to coordinate the discovery in the New Jersey

24  and North Carolina Actions with this case was at the Defendants' request, and should not be
    construed as Plaintiff counsel's attempt to avoid or violate orders of the Court in this case

25  staying discovery.  Consequently, these Defendants should not be heard in this Court to
    complain, since Plaintiff's counsel have simply exceeded to their requests coordinate
    discovery in the interests of judicial economy and efficiency.

26

468544v1

1   attend and participate.  However, no Defendant other than the Defendants in the New Jersey

2   and North Carolina Actions appeared at any of these depositions.  Instead, defense counsel

3   for the non-appearing Defendants herein objected to proceeding in coordinated fashion with

4   these depositions, and have taken the position that such depositions cannot "count" in this

5   case and may not be used in this case.

6          Plaintiff believes that the position taken by certain Defendants in this litigation – that

7   coordinated discovery taken by Plaintiff and certain Defendants in the New Jersey and North

8   Carolina Actions should not be deemed to be discovery taken in this case  – is both

9   inefficient and contrary to the position Defendants collectively have taken with respect to

10  seeking coordinated discovery between this case, MDL 1456, and all other cases pending

11  against them.  In brief, Plaintiff's counsel submit that the most efficient way to conduct this

12  litigation is to do so in coordinated fashion with other state-court cases and MDL 1456,

13  where such coordination makes sense and leads to judicial economy and efficiency, but not

14  otherwise. [2]   In this regard, Plaintiff's counsel respectfully submit that the discovery in this

15  case can and should be coordinated at least with discovery being conducted in another state-

16  court case brought by the undersigned counsel on behalf of the Attorney General for the

17  Commonwealth of Pennsylvania, entitled *Commonwealth of Pennsylvania by Gerald J.*

18  *Pappert, et al. v. TAP Pharmaceutical Products, Inc., et al.*; Docket No. 212 MD 2004.

19  Most of the Defendants in the Pennsylvania Action are Defendants here. Since the discovery

20  in the Pennsylvania Action is proceeding along a nearly identical track with this case,

21  Plaintiff submits that all parties in this case and the Pennsylvania Action should use their best

22  efforts to coordinate discovery efforts to avoid duplication and undue litigation expense.

23

24  _____

[2]        Such a rule of coordination where it makes most sense is necessary to permit this case
25  to be litigated in the timely and efficient manner necessitated by the Arizona Rules as well as
    the practice and procedure in this Court.
26

468544v1

1    For these same reasons, Defendants' proposal that discovery be "bifurcated" - with

2  "class" discovery proceeding through the end of the year apart from claimed "merits"

3  discovery - is both unworkable and inefficient.  First, to the best of the undersigned's

4  knowledge, no such bifurcation has been ordered in any other case proceeding against these

5  Defendants, including MDL 1456 where over five million pages of documents have been

6  produced to date to Plaintiffs' counsel in advance of the hearing on class certification in that

7  case.

8    Second, to artificially "bifurcate" discovery would mean that Defendants would be

9  put to a greater burden of having to cull from the five million pages of documents previously

10  produced to search for purportedly "class documents", as opposed to "merits documents."

11  Again, judicial economy and efficiency warrants the production of all such relevant

12  documents at this time, especially given the fact that Defendants' motions to dismiss have

13  been denied, and Mr. Swanston is entitled to go forward on his claims, whether or not the

14  case is certified as a class action.

15    Third, since the documents allegedly produced during the "merits phase" of discovery

16  will have been produced to the undersigned Plaintiff's counsel in the Pennsylvania Action, it

17  is simply an artifice to contend in this Court that it is inefficient to simultaneously produce

18  them in this case.

19    Lastly, because Mr. Swanston will ultimately have to prove liability against these

20  Defendants, whether or not the case is certified as a class action, he is entitled to discovery

21  on the merits now that Defendants' motions to dismiss have been denied.  As already stated,

22  Defendants have produced more than five million pages of merits discovery which will take a

23  substantial amount of time for Plaintiff's counsel to go through.  That review should not be

24  delayed until some artificial point after the hearing on class certification, for to do so will

25  only prejudice the Plaintiff in his ability to conduct discovery in his case, and in coordinated

26

468544v1

1   fashion with other cases wherein such documents have been produced. In brief, Defendants

2   cannot have it both ways: they cannot insist that this case be coordinated with other cases,

3   where they have produced discovery on the merits, and seek to handicap the Plaintiff herein

4   in his ability to conduct fulsome discovery with other cases in which such strictures on

5   discovery have not been put in place.

6        With respect to Defendants' claimed "class discovery" of Plaintiff, the Plaintiff has

7   fully responded to Defendants' requests that relate to class issues. However, as has been

8   stated previously, it is difficult, if not impossible to discern a clear line between purported

9   "class issues" and "merits issues". However, Plaintiff's counsel, experienced in class action

10   litigation, have endeavored to walk the line that the Defendants have insisted upon drawing.

11   Consequently, it is the Plaintiff's position that he has fully and completely responded to the

12   class discovery requests propounded by Defendants.

13        However, Plaintiff's counsel would gladly drop any artificial distinction between

14   types of discovery, and proceed fully on both class and merits issues in the interest of judicial

15   economy and efficiency. This is especially true in the case of the Plaintiff's deposition,

16   which Defendants have noticed for September 1, 2004. If Defendants have their way, and

17   the class and merits issues are bifurcated, the Plaintiff will be subjected to two depositions,

18   instead of one. All Defendants have insisted on a "one deposition" rule in all the cases

19   pending against them. However, it appears they want to change the rules for this case.

20   Again, Plaintiff's counsel submit that all discovery should be conducted once in the interest

21   of judicial economy and efficiency.

22   **B.**   **DEFENDANTS' STATEMENT.**

23        Defendants have served subpoenas on a number of third party payors and other

24   entities to obtain documents relevant to class certification issues. Plaintiff filed a motion to

25   quash the subpoenas, and while the motion was pending, Plaintiff sent a letter to these third

26

                                                          468544v1

1  parties informing them of the motion to quash and indicating that they should not comply

2  with the subpoenas until the motion was resolved.  By Order dated June 29, 2004, the Court

3  denied Plaintiff's motion to quash.  While the motion to quash was pending, many of the

4  third parties refused to respond to the subpoenas pending resolution of the motion.  At this

5  time, only about seven of the third parties have produced some documents, and Defendants

6  are in the process of negotiating further responses and additional productions of documents

7  by these third parties.

8         Defendants have also served discovery on Plaintiff but, despite exchanges of

9  communication between the parties, Defendants have received only a handful of documents

10  from Plaintiff and only very limited responses to interrogatories.  Defendants anticipate that

11  they will need to file a motion to compel further discovery from Plaintiff on these matters.

12        Defendants have noticed the deposition of Plaintiff for September 1, 2004.

13  Because of the scope and complexity of the issues to be addressed,  Defendants

14  anticipate that at least a full day will be necessary for Plaintiff's deposition on class

15  issues.

16        Defendants believe that these recent document requests from Plaintiff go far

17  beyond the current scope of discovery related to class certification issues.  For

18  example, the request seeks, among other things, "all contracts" with customers or

19  intermediaries relating to pricing of all prescription drugs based in whole or in part on

20  AWP and "all documents produced by [Defendants] in any litigation, government

21  investigation or administrative proceeding" relating to AWP, pricing and a host of

22  other issues.  Although the scope of these document requests is not ripe for

23  consideration by the Court at this pretrial conference, the scope of the requests

24  underscores the potential complexities of discovery in this matter, as discussed in

25  more detail below.

26

468544v1

## II.   ISSUES PERTAINING TO MERITS DISCOVERY.

### A.   PLAINTIFF'S STATEMENT OF MERITS DISCOVERY ISSUES.

As stated previously, the Plaintiff does not believe that the Court can or should create an artificial line between "class" and "merits" discovery.  In no other court in which a case is pending against them have the Defendants succeeded in bifurcating discovery, and no exceptions should be made for this case.  Such "bifurcation" only leads to discovery duplication and needless expense which should be avoided at all costs.  Consequently, for the reasons stated above, the Plaintiff believes that this Court should proceed to set a reasonable time for the disclosure obligations to take place under the Arizona rules.  The Plaintiff proposes that disclosure obligations should be fulfilled by the parties within thirty (30) days of the August 23rd hearing, *i.e.* on or before Wednesday, September 22, 2004.  For the original Defendants who have been in this case since March, 2002, there is no reason to further delay these disclosure obligations, since their motions to dismiss were denied by Judge Burke in November, 2002.  For the Defendants who were added in the December, 2002 amendment to the Complaint, on whom discovery was recently propounded by Plaintiff, the same is true, since they have known about this case for more than a year and one-half and should be in a position to comply with Arizona's disclosure requirements.

As noted previously, these Defendants have produced collectively in excess of five million pages of documents in MDL 1456, and presumably these documents constitute documents that would be included in Defendants' disclosures in this case.  Accordingly, it appears Defendants are in a position to go forward with disclosure, and any effort to delay disclosure will only jeopardize efforts to coordinate this case with other cases in which such documents have been produced.  In brief, as state previously, Defendants cannot have it both ways:  they cannot seek to have this case coordinated with other cases, and yet not produce to this case all the same discovery materials in a timely manner.

468544v1

1    With respect to discovery in this case, the Plaintiff has proposed to the Defendants

2    that the discovery limits be suspended for this case, and that, among other things, the period

3    of time for depositions be extended to a full day, rather then the current four-hour

4    requirement.  While Plaintiff believes that supplemental discovery requests beyond the

5    documents and information provided pursuant to Arizona's disclosure obligations should be

6    unnecessary, there may be issues which may require that specific requests be propounded on

7    the parties.  For this reason, Plaintiff has proposed that the limits on document requests and

8    interrogatories be suspended, with broader limits imposed.

9    Lastly, Defendants in their "Statements of Merits Discovery Issues" offer a number of

10   points they claim relate to the discovery issues raised by the Second Amended Complaint.

11   As they have since the beginning of this case, Defendants improperly have sought to re-cast

12   the allegations of the Plaintiff's Complaint in a manner that befits their litigation objectives.

13   Their statement in this Joint Pretrial Conference Memorandum is no exception.  However,

14   rather than debate the issues before the Court, Plaintiff offers the following brief points in

15   rebuttal.

16   **First**, Defendants appear to return to an argument rejected by this Court in denying

17   their Motions to Dismiss: the specific identification of drugs they manufacture which are

18   included within the allegations of unlawful conduct in this case.  As they did in their moving

19   papers, Defendants wrongfully seek to cast the Plaintiff's causes of action as ones

20   circumscribed around drugs, rather than conduct.  The issues for discovery in this case relate

21   to Defendants' marketing and sales practices (as alleged throughout the Second Amended

22   Complaint) not simply the drugs manufactured by them, which may or may not have been

23   marketed and sold in the unlawful manner alleged in the Complaint.  Discovery will be

24   addressed to Defendants' acts or practices however manifested in the sale of specific drugs.

25   Accordingly, no artificial limits should be constructed for discovery which confine discovery

26

- 9 -

468544v1

1    on the merits of the Plaintiff's claims to specific drugs, for in doing so, critical discovery of

2    Defendants' unlawful acts and practices will be overlooked.

3          **Second**, Plaintiff's case seeks to recover damages for the unlawful marketing and

4    sales practices of Defendants on behalf of a class of healthcare patients as clearly defined in

5    the Second Amended Complaint.  There are no "entities" in the class per se.  The only

6    "entities" who may have a right to recover through a class-wide recovery – once the Court

7    certifies an appropriate class – would be insurance companies who have paid a portion of the

8    drugs purchased by the Plaintiff class.  However, the right of recovery of these insurance

9    companies is subordinate to the right of the patients to recover, and represents only a

10   potential subrogation lien upon the patients' recovery.  Accordingly, Defendants' claims of a

11   need to take discovery of various insurance entities is a veiled attempt to drag this case

12   through protracted discovery which ultimately will prove to be irrelevant and inadmissible at

13   trial, especially if Defendants seek to interpose evidence of "collateral source" payments to

14   Plaintiff and the Class by insurance companies.  *See, e.g Michael v. Cole*, 122 Ariz. 450,

15   452, 595 P.2d 995, 997 (1979) ("Under the collateral source rule, when an injured Plaintiff

16   has been compensated for his injuries from a source other than the defendants, the latter

17   cannot benefit from the recovery.").  While this Court need not decide these issues at this

18   time, it should be aware of the fact that Defendants have sought to re-cast the Plaintiff's

19   claims herein in a manner which unduly complicates and extends the relevant discovery to

20   various third-party insurance entities.  At the end of the day, however, when this Court faces

21   the issues of what is relevant, admissible evidence at trial, it will find that most of what the

22   Defendants have proposed to conduct in the way of discovery is irrelevant and inadmissible.

23         **Third**, Defendants' claim that they are entitled to conduct discovery of the

24   "reasonableness" of the reliance of "healthcare related entities" is just a subset of the

25   irrelevant discovery noted above.  Defendants believe that they have some purported defense

26

- 10 -

468544v1

1  to the consumer claims brought in this case on the grounds that "insurance companies knew".

2  As this Court will see at a later stage of the proceedings, there is no such defense and

3  discovery relating thereto is irrelevant.

4      **Fourth**, the Plaintiff agrees that relevant discovery will be provided to certain experts

5  in this case, but Plaintiff also submits that the parties know (or an reasonably anticipate) who

6  these experts are.  In fact, in the New Jersey and North Carolina Actions, the parties have

7  submitted expert reports and their respective experts have been fully deposed – **twice**.

8  Accordingly, there is no need for a protracted schedule for experts in this case, as Defendants

9  propose.  Instead, since the parties know (or reasonably can expect) who their experts will be

10  in this case, the track for expert discovery should be limited, along the lines Plaintiff

11  proposes below.

12      **B.**    DEFENDANTS' STATEMENT OF MERITS DISCOVERY ISSUES.

13      Although the Court has now ruled on the motions to dismiss and related motions filed

14  by Defendants, Defendants believe that, until the Court has ruled on Plaintiff's motion for

15  class certification, it is difficult to know for certain what the discovery issues relating to the

16  merits of this case will be.  Plaintiff's Second Amended Complaint is broad and wide-

17  reaching, alleging numerous claims against the entire United States pharmaceutical industry,

18  and seeking class certification of an extremely large class of Arizona individuals and entities

19  over an extended period of time.  Moreover, Plaintiff's recent document requests to

20  Defendants make clear that Plaintiff seeks to have this lawsuit extend to any and all

21  prescription drugs marketed or sold by any of the Defendants in Arizona.  Thus, if a class is

22  certified, Defendants believe that the discovery necessary to address the issues raised in this

23  case will be extensive and that merits discovery will take an extraordinary amount of time to

24  conduct and coordinate.  On the other hand, denial of the motion for class certification (or a

25

26

468544v1

1   substantial limitation on the scope of the class that Plaintiff seeks to have certified) would

2   significantly affect the scope of required merits discovery.

3        For these reasons, with one exception, Defendants believe that the Court's current

4   approach to discovery -- *i.e.*, discovery limited to class certification issues -- should continue

5   in place until the Court decides the pending motion for class certification.  Indeed, class

6   certification discovery is itself extensive and is still ongoing, and the next four or fives

7   months before the hearing on the class certification motion will be devoted mostly to class

8   certification discovery and briefing of the class certification motion.  Thus, there is already

9   much to be done in this case in the next several months, and Defendants submit that it is

10  unnecessary, inefficient, and potentially inequitable to initiate merits discovery before the

11  Court decides the Class certification issues.

12       The exception noted above relates to third party discovery in the MDL proceedings.

13  As discussed in more detail below, these Defendants are taking discovery of third parties in

14  the MDL who are concerned about having to provide the discovery – particularly

15  depositions – more than once.  Defendants would be willing to notice that discovery in this

16  case, as well as the MDL, so that Plaintiff in this case can participate and so that the burden

17  on third parties can be minimized.  It is anticipated that there will be extensive third party

18  discovery in the MDL over the next six months, including hundreds of document subpoenas

19  and dozens of depositions.  Most of that discovery will need to be duplicated in this case

20  unless it is taken in conjunction with the MDL.

21       To the extent that the Court believes that it is necessary to establish at this time a

22  schedule for merits discovery that will occur after the motion for class certification is

23  decided, Defendants offer the following points with respect to some of the discovery issues

24  potentially raised by the Second Amended Complaint as pleaded.

25

26

468544v1

1    **First,** Plaintiff alleges that the Average Wholesale Prices ("AWP") for Lupron and a

2    whole host of other, unidentified prescription drugs manufactured and/or sold by Defendants

3    were fraudulently inflated during the period January 1, 1991, to the present.  Plaintiff has

4    indicated that an extensive number of drugs are at issue in his case, but he refuses to identify

5    them (stating only in his recent document requests that his claims include *all* prescription

6    drugs and medicines marketed or sold in Arizona during the specified time period).  Indeed,

7    Plaintiff has already requested document discovery with respects to all prescription drugs and

8    medicines marketed and sold in Arizona by all 42 of the named company Defendants (even

9    though such discovery goes far beyond class certification issues).  Defendants believe that

10   identification and limitation of the drugs and medicines at issue in this litigation is an

11   important threshold issue and a critical area of discovery as far as the merits of the case are

12   concerned.  Because most of the Defendants manufacture and sell a variety of different drugs

13   and medicines, discovery in this area (if not limited by the Court) will be extremely time

14   consuming, expensive and complex.

15   **Second,** Plaintiff's damages theory presumes that "thousands of individuals and

16   entities . . . paid more for prescription drugs than they otherwise should have" (Second

17   Amended Compl. ¶ 1) because prescription drug pricing was allegedly based on fraudulently

18   "inflated" AWPs.  Although Plaintiff does not identify the "entities" it seeks to encompass

19   within its class (another issue requiring discovery), Plaintiff identifies three broad categories

20   of individual healthcare patients who were presumably fraudulently induced to overpay for

21   prescription drugs:  (1) government assistance patients (*e.g.*, Medicare, Medicaid, Tricare

22   patients), (2) private assistance patients (*i.e.*, purchasers of private healthcare insurance), and

23   (3) no assistance patients (*i.e.*, patients without insurance).  (*Id.*)  In order to address

24   Plaintiff's fraud claims, the parties will need to conduct discovery relating to the pricing and

25   reimbursement of whatever prescription drugs are at issue, over more than 10 years, with

26

- 13 -                              468544v1

respect to the "thousands" of persons and entities that Plaintiff seeks to encompass within the class.  Although Plaintiff would have the Court believe that this is an easy task because Defendants supposedly set AWPs, Plaintiff is wrong.  Prices paid by end-payors for prescription drugs and medicines are the result of a unique negotiation process involving PBMs, health insurers and providers, as well as other intermediaries.  Thus, different end-payors will have paid different prices for different drugs over different periods of time.

Because Plaintiff's claims purport to encompass so many different entities, with so many different payment and reimbursement plans, discovery of third parties will be significant in this case.  For example, in the MDL litigation, the parties are conducting discovery of the following categories of third parties:

- private third-party payors that pay either all or a portion of the cost of prescription drugs and medicines received by their insureds under a health plan;

- government health coverage programs that pay either all or a portion of the cost of  prescription drugs and medicines received by their insureds;

- self-insured employers that provide their own coverage to their employees;

- prescription benefits managers (PBMs) that assist payors with the negotiation of rebates and reimbursement rates and provide other services relating to prescription drugs and medicines;

- third party administrators (TPAs) that administer health insurance policies on behalf of payors and sometimes provide other services, including assistance with negotiation of reimbursement rates;

- benefit consultants that assist employers in negotiating for health coverage plans, including pharmacy benefit plans;

- publishers that publish prices for prescription drugs and medicines, as well as AWPs;

- retail pharmacies that sell prescription drugs and medicines; and

- other third parties involved in the distribution and delivery of prescription drugs and medicines.

- 14 -

468544v1

1       This third-party discovery is not only difficult and time consuming, it also is essential

2   to the case because it demonstrates that AWP may or may not be a factor in the

3   reimbursement for any particular prescription drug or medicine under any particular health

4   care plan during any particular period of time.  Indeed, negotiations relating to pricing and

5   reimbursement may, in many cases, be based on the desire to include a whole host of services

6   such as claims administration and other services.   In short, this third-party discovery --

7   necessarily complex and time-consuming because of the nature of Plaintiffs' allegations -- is

8   vitally important to a full exposition of the merits of the case.

9       **Third,** Plaintiff has alleged a claim of fraud.  Fraud requires proof of an intentional

10   misrepresentation actually and reasonably relied upon by the injured party to his or her

11   detriment.  Defendants intend to conduct discovery relating to what different healthcare

12   related entities believed about the pricing of prescription drugs and about the significance, if

13   any, of AWP in their pricing and reimbursement determinations.  Defendants also intend to

14   conduct discovery about what individual patients, under each of the different categories

15   alleged by Plaintiff, paid for prescription drugs and medicines and what they believed about

16   the bases of those payments.

17       **Fourth,** much of the discovery discussed above will be provided to expert witnesses

18   who will use it to explain the diverse nature of prescription drug pricing and reimbursement.

19   This expert witness involvement will be time consuming and will entail substantial discovery

20   of its own.  Indeed, because of the numerous Defendants in this case, the numerous different

21   drugs and medicines potentially at issue in this case, and the numerous different ways that the

22   price of drugs and medicines is negotiated, there are likely to be multiple experts in this case,

23   thereby compounding the scope and timing of expert discovery.

24

25

26

468544v1

1

2    **III.    DISCOVERY CUT-OFF.**

3        **A.        PLAINTIFF'S STATEMENT RE DISCOVERY CUT-OFF.**

4        Defendants' "worst case scenario" for discovery would have the fact discovery cut-

5    off for this case being twelve (12) months after the Court rules on class certification.

6    Provided the Court were to issue its ruling in a reasonable time after the hearing on

7    January 7, 2005 the Plaintiff does not believe that such a discovery cut-off is inherently

8    unreasonable, despite the fact that this case will be more than three (3) years old at that time.

9    However, Plaintiff's counsel have proposed to Defendants that, in exchange for Plaintiff's

10   agreement to Defendants' proposal to have a twelve (12) month discovery cut-off, that (1)

11   discovery not be artificially bifurcated, and (2) that the dates beyond the discovery cut-off be

12   reasonable.  At the time of this writing, no agreement had been reached on either issue.  The

13   former issue is addressed above.  With respect to the latter issue, Plaintiff has proposed that

14   the period for expert discovery be sixty (60) days, with both parties submitting simultaneous

15   expert reports thirty (30) days after the discovery cut-off, and depositions of the experts

16   being conducted in the thirty (30) days following.  We have also proposed that if the parties

17   agree to have a period for rebuttal expert reports, the expert discovery period should be

18   extended an additional thirty (30) days.  However, it is the Plaintiff's position that, under no

19   circumstances, should the expert discovery track be extended beyond ninety (90) days.  The

20   eight (8) months proposed by Defendants is inherently unreasonable in a case in which the

21   parties already know (or reasonably can expect) who their experts are, as several such experts

22   have already submitted reports in other cases and have been deposed.

23        The Plaintiff agrees with the Defendants' statement that, "although coordination with

24   the MDL proceedings will help streamline some discovery efforts, Arizona-specific issues

25   will need to be addressed separately from the MDL proceedings...".  In Plaintiff's view, this

26

468544v1

1  statement is an appropriate acknowledgment of the right of this case to proceed independent

2  of the MDL, as was confirmed by Judge Saris in her remand decision sending this case back

3  to state court for pre-trial purposes and trial.  No Arizona claim has been raised in the MDL,

4  and therefore no discovery in that case will be directed to the specific Arizona claims alleged

5  in this case.  Consequently, of necessity, the discovery in this case relating to the merits of

6  Plaintiff's Arizona claims will be different in certain respects.  Accordingly, in order to

7  proceed under the procedural rules of this Court, Plaintiff has proposed that the case be

8  coordinated with MDL and other state-court proceedings where it makes sense in the interest

9  of judicial economy and efficiency.  However, this case should not be given some

10  "Coordinated State Court Case" designation which relegates the conduct of discovery and the

11  advancement of the case to the exclusive direction and control of the MDL Court in the

12  hollow name of "coordination".  Instead, the track record of the proceedings thus far in this

13  case have demonstrated that counsel for Plaintiff and certain Defendants can agree to

14  discovery coordination on an *ad hoc* basis in the interest of judicial economy and efficiency.

15  We propose that such spirit of agreement be continued to be fostered by the Court in this case

16  to avoid duplication, but to allow the case to proceed as an independent action.

17  **B.**      **DEFENDANTS' STATEMENT RE DISCOVERY CUT-OFF.**

18  Again, Defendants believe that it is difficult to set a schedule for discovery while the

19  class certification decision, which will affect the nature and scope of claims in the case, is

20  still pending.  Absent a substantial narrowing of the claims of the Second Amended

21  Complaint, Defendants believe that the broad issues raised in the Second Amended

22  Complaint would need to be litigated under a schedule that allows for sufficient discovery

23  (including third-party discovery discussed above), preparation and discovery of expert

24  witnesses, coordination with the MDL proceedings, and a variety of dispositive motions.

25

26

468544v1

Specifically, Defendants believe that merits discovery in this case (as presently pleaded) would require at least the following periods of time:

- Fact Discovery Cut-off: 12 months after Court rules on the class certification motion;

- Disclosure of Plaintiff's experts: 2 months after the close of fact discovery;

- Disclosure of Defendants' experts: 5 months after the close of fact discovery;

- Expert Discovery Cut-off: 3 months after disclosure of Defendants' experts.

Defendants believe that this amount of time is necessary given the significant amount of discovery that will be required if a class action based on the Second Amended Complaint is certified. Moreover, this schedule allows for coordination with the MDL 1456 proceedings (the "MDL 1456") before Judge Saris in Boston and the Lupron MDL 1430 proceedings (the "MDL 1430") before Judge Stearns.[3]

Finally, the Court should be advised that, although coordination with the MDL proceedings will help streamline some discovery efforts, Arizona-specific issues will need to be addressed separately from the MDL proceedings, that Defendants in the MDL proceedings have been faced with a great deal of resistance from third parties, that even those third parties that have been willing to provide discovery responses generally require a significant amount of time to provide responses, and that this case potentially presents even more discovery challenges than exist in the MDL proceedings because Plaintiff here refuses to limit or even identify the drugs and medicines allegedly at issue. In short, the nature of the

---

[3]    Indeed, to facilitate coordination with the MDL proceedings, Defendants request that the Court enter an order directing that depositions in this case and the MDL proceedings be cross-noticed in order to eliminate needless duplication and expense.

468544v1

1   claims in this case and the number of parties involved make it readily apparent that merits

2   discovery will be time consuming and protracted.

3   **IV.     APPOINTMENT OF A DISCOVERY MASTER.**

4             **A.     PLAINTIFF'S STATEMENT RE: DISCOVERY MASTER**

5

6   Plaintiff's counsel reiterates their position as stated at the last hearing before the

7   Court which, ironically, has now become the position of Defendants.  We believe that it is

8   premature to consider appointing a Discovery Master at this time since the parties have

9   demonstrated an ability to work through discovery disputes and, more importantly, have not

10  demonstrated an inability to do so.  Accordingly, we concur with Defendants that a

11  Discovery Master should not be appointed at this time.

12            **B.     DEFENDANTS' STATEMENT RE DISCOVERY MASTER.**

13

14  Defendants believe that it is premature to consider appointing a discovery master at

15  this time.  Although Defendants anticipate that discovery disputes will arise, Defendants

16  believe that most of these discovery disputes will be intertwined with important merits-

17  related issues and will therefore require the attention and involvement of the Court.  Indeed,

18  although Defendants do not rule out the need for a discovery master at some point in the

19  future or on some specific matters, Defendants believe that the appointment of a discovery

20  master at this time would be counter-productive, may actually discourage the parties from

21  mutually resolving their discovery disputes, and may further complicate an already

22  complicated and uncertain merits situation in this case.  Accordingly, Defendants believe that

23  the Court should not appoint a discovery master at this time, but should preserve the option

24  to do so in the future should the need arise.

25  **V.     DISPOSITIVE MOTIONS AND TRIAL**

26

- 19 -

468544v1

### A.    PLAINTIFF'S POSITION

The Plaintiff believes that the period for dispositive motions should commence immediately after the thirty (30) day-period expires for expert depositions.  In addition, Plaintiff believes that the normal rules for the timing of such motions should be extended to provide for simultaneous filings of motions within thirty (30) days of the expert discovery cut off, opposing papers to be filed within thirty (30) days thereafter, and reply briefs, if any, to be filed within fifteen (15) days thereafter.  Plaintiffs also believes that within sixty (60) days of the hearing on dispositive motions [which we encourage this Court to set at this time] the trial should begin.  However, because pre-trial issues will likely take substantial time, we propose that the pre-trial conference be set for thirty (30) days after the hearing on dispositive motions, which will place the pre-trial conference at thirty (30) days prior to trial. The Plaintiff believes that setting the pre-trial conference now for such date will give the parties a milestone date in this case toward which they should direct their efforts at reducing the issues for trial and potentially resolving the claims of the Plaintiff and the Class in this case.

### B.    DEFENDANTS' POSITION

- 20 -

468544v1

RESPECTFULLY SUBMITTED this ___ day of August, 2004,

William J. Maledon
Dawn L. Dauphine
OSBORN MALEDON, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona  85012

D. Scott Wise
Kimberley D. Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017

**Attorneys for Defendants AstraZeneca Pharmaceuticals LP; Zeneca Inc.; AstraZeneca LP and Liaison Counsel for the Entity Defendants**

By___/s/ William J. Maledon_____
        William J. Maledon

Harry J. Miller III
80 East Columbus Ave.
Phoenix, Arizona  85012

Donald E. Haviland, Jr.
KLINE & SPECTER, P.C.
1525 Locust St., 19th Floor
Philadelphia, Pennsylvania 19012

**Co-Lead Counsel for Plaintiff and the Class**

By___/s/ Harry J. Miller III_____
        Harry J. Miller III

This document has been e-filed, a copy provided to the Honorable Rebecca A. Albrecht, and copies served upon the parties to this action through Lexis/Nexis File & Serve on this ____ day of August, 2004:

   /s/ Deborah B. Dunn

- 21 -

468544v1