# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    ROADMAP TO THE PROPOSED JURY INSTRUCTIONS AND
       VERDICT FORM ................................................................................................... 2

       A.     The Structure of the Proposed Instructions and Verdict Form ................................ 2

       B.     The Court Must Make Some Findings of Fact ......................................................... 5

       C.     The Jury Instructions Include Many Common Defined Terms ................................ 6

              1.     "Person" ........................................................................................................ 8

              2.     "Trade" or "Commerce" or "Business" ......................................................... 8

              3.     "Sale" .......................................................................................................... 12

              4.     "Advertising" .............................................................................................. 12

              5.     "Consumer Transaction" ............................................................................. 14

              6.     "Consumers" ................................................................................................ 15

              7.     "Good," "Merchandise" and "Property" ..................................................... 15

              8.     "Supplier" .................................................................................................... 17

       D.     Variations in State Law Are Immaterial And Have No Effect on
              Manageability ......................................................................................................... 17

              1.     Definitions of intent or knowledge ............................................................. 17

              2.     Variations in proving causation .................................................................. 18

III.   CONCLUSION ..................................................................................................... 19

001534-16  162303 V1

# I.    INTRODUCTION

Plaintiffs today submit their proposed jury instructions and verdict form (attached as appendices A and B hereto) that will allow a jury to make findings and reach a verdict on the claims of Consumer Class members residing in Florida, Nevada and Oregon, where the Class representatives reside, and 34 other states (including the District of Columbia) within the certified multi-state Class.  The jury form will lead the jury through the elements of the 37 jurisdictions' unfair trade practices acts ("UTPAs"), guided for each element by cross references to the pertinent jury instruction.

As the Court anticipated (*see In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83-85 (D. Mass. 2005) ("*AWP*")), because the states' UTPAs grew from common roots, common issues will pervade the jury's deliberations.  The proposed instructions group these issues for the jury.  The jury need not, for example, make findings based on 37 different standards for whether AstraZeneca's manipulation of Zoladex AWP damaged Class members.  Rather, all states provide for general compensatory damages under an identical standard.  *See* Proposed Jury Instructions (Appendix A), Part VI, Instruction 6.01.  And while some states permit recovery of enhanced and punitive damages, there is little variation in the formulas for determining when the jury can award these additional forms of damages.  *See id.* at Instructions 6.03-04.

While there are more variations among the states as to the kinds of acts and practices that are deemed unfair or deceptive, these can also be grouped for the jury.  For example, the instruction that a deceptive act or practice is "one that has the capacity or tendency to mislead or deceive" applies to 20 states' UTPAs.  *See id.* at Part IV, Instruction 4.02.  Likewise, only eight instructions, most of which apply to multiple state UTPAs, encompass the different kinds of actionable misrepresentations specified by some UTPAs.  *See id.* at Instructions 4.041-.048.

Further, the UTPAs of Florida, Nevada and Oregon, where the Class representatives reside, are typical of most states' laws, so by resolving the three states' Class claims, the jury will concurrently resolve Class claims for many other states as well.  For example, finding AstraZeneca's conduct to be a deceptive practice under the UTPA in Florida, home to Class representatives Leroy Townsend and George Baker Thomson, will allow the jury to make the same finding under the same standard in 19 other states.  *See id.* at Instruction 4.02.

Further, as this Court has already ruled, only ***material*** variations of state law can affect the manageability of a multi-state class action.  *See AWP*, 230 F.R.D. at 84.  Here, many state-law variations are immaterial and can be disregarded.  All states require proof, for example, that a defendant's acts proximately cause the plaintiff's damages.  Class Plaintiffs will prove that AstraZeneca's acts artificially raised the price Class members paid for Zoladex, a prostate-cancer drug.  This evidence satisfies ***every*** test for causation, rendering variations for proving causation under the states' UTPAs of no moment.  *See infra* at 17-19.

The Court hence should approve Class Plaintiffs' proposed jury instructions and verdict form.

## II.     ROADMAP TO THE PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

### A.     The Structure of the Proposed Instructions and Verdict Form

Class Plaintiffs submit proposed jury instructions for the Consumer Class's claims for violation of the UTPAs of 37 jurisdictions (36 states and the District of Columbia).  The Court certified classes on behalf of consumer in 41 jurisdictions.  Of those, two states, Illinois and Nebraska, require a bench trial on UTPA claims.  Plaintiffs also do not propose jury instructions for the states of Ohio and Utah; due to uniquely onerous elements of those two states' unfair trade practices acts, we have concluded we cannot try class claims under those statutes.

We have organized the proposed instructions as follows:

**Part I:    Preliminary Instructions**.  These are general preliminary instructions.

**Part II:   General Instructions**.  These are the final general instructions.

**Part III:   Elements of Claims**.  Part III explains that the jury is being asked to make findings under consumer-fraud statutes in 37 states; introduces the concept of the Jury Verdict Form; and then sets forth the three over-riding elements that Plaintiffs must prove, namely, that (i) AstraZeneca engaged in an act or practice prohibited by state statute; (ii) the Plaintiffs suffered damage; and (iii) the challenged act or practice caused that damage.

**Part IV:   Prohibited Business Activities**.  Part IV lays out the different ways that AstraZeneca may have engaged in an act or practice prohibited by all of the relevant state statutes (corresponding to the first over-riding element noted in Part III) and directs the jury to make findings.  A separate set of instructions is not given for each of the statutes at issue.  There is substantial overlap among the statutes, making use of a "composite" instruction logical and efficient.

**Part V:   Causation**.  This Part provides the test for proximate causation and corresponds to the third over-riding element noted in Part III.

**Part VI:   Damages**.  Corresponding to the second over-riding element referenced in Part III, this Part explains the meaning of general damages, asks the jury to make reliance findings where required, and charges the jury with finding enhanced and punitive damages where relevant.

**Part VII:   Limitations Periods**.  Part VII instructs the jury with regard to issues relating to statutes of limitations and fraudulent concealment.

- 3 -

**Part VIII:   Deliberations and Verdict.**   This final Part provides general instructions relating to jury deliberations and the jury verdict.

Unless indicated otherwise, the instructions appearing in Parts I and VIII are derived from the Pattern Criminal Jury Instructions for the District Courts of the First Circuit.[1]  The instructions appearing in Parts II through VII are derived from comprehensive legal research into the elements of each relevant state UTPA statute.  Some of the instructions appearing in these parts were based on pattern jury instructions, where available.[2]

These 37 statutes contain many common elements.  Therefore, rather than having the jury make separate findings under each of the statutes, the proposed instructions guide the jury to make findings by applying common elements.  In those instances where a finding might apply only to certain state statutes, the instructions will make this clear.  *See, e.g.*, Instruction 4.07 ("Intent that Others Rely," applying to seven state UTPAs).

As legal support for the proposed instructions, Class Plaintiffs have prepared a Summary of State Unfair Trade Practice Law, which we attach hereto as Appendix C.  This document summarizes the relevant unfair trade practices laws of all 41 jurisdictions included in the Consumer Class originally certified by this Court.

Finally, we have distilled the proposed jury instructions down to a proposed Jury Verdict Form (Appendix B).  The verdict form guides the jury first through UTPA elements one and three (prohibited acts and causation, *see supra* at 3), then turns to element two (compensatory, enhanced and punitive damages).  Importantly, the form links every jury question to a specific jury instruction.  For example, the form's question regarding whether the jury will award

---

[1] *See* http://www.mad.uscourts.gov/LocPubs/Pattern2003/index.html.

[2] Annotations appearing in between double brackets ("[[  ]]") are references for the Court's use and should be removed before submitting the instructions to the jury.

enhanced damages for Class Members in Texas refers the jury to Instruction 6.03, entitled "Enhanced Damages."

**B.      The Court Must Make Some Findings of Fact**

There are some aspects of the trial for which the Court, and not the jury, will make findings.

A jury trial is not available under the relevant Illinois and Nebraska statutes, so the Court will determine liability and damages under these acts. *See Martin v. Heinold Commodities*, 643 N.E.2d 734, 751 (Ill. 1994); *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1004 (D. Neb. 1998). And in North Carolina, the jury determines damages and causation after the Court determines whether the conduct at issue is unfair or deceptive, *Barbee v. Atlantic Marine Sales & Serv., Inc.*, 446 S.E.2d 117, 121 (N.C. Ct. App. 1994), as the Jury Verdict Form reflects, *see* Verdict Form at 30 ¶ 23(a).

For a number of states, the Court, and not the jury, will determine an enhanced damages award. For Indiana, the Court, its discretion, ***may*** increase damages to the greater of $1000 or three times the actual damages if it finds that AstraZeneca performed its deceptive act willfully. IND. CODE § 24-5-0.5-4(a). For New York, the Court ***may*** multiply the damages by up to three times but not more than $1000 per Plaintiff and Class member if the Court finds that AstraZeneca willfully or knowingly violated the statute. N.Y. GEN. BUS. LAW § 349(h). In New Jersey, the Court ***must*** increase the damages award threefold. N.J. STAT. § 56:8-19. In South Carolina, the Court ***shall*** treble the damages if it finds the challenged conduct to have been done willingly or knowingly. S.C. CODE § 39-5-140(a). For that state, a "willful" violation means the party knew or should have known that its conduct was in violation. *Haley Nursery Co., Inc. v. Forrest*, 381 S.E.2d 906, 909 (S.C. 1989).

For Tennessee, the Court *may* treble the damage award if it finds that the use of the unfair or deceptive act or practice was willful or knowing.  TENN. CODE § 47-18-109(a)(3).  "Knowing" means "actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have had reason to know of the falsity or deception."  TENN. CODE § 47-18-103(6).  In determining a treble damage award, the Court should consider, "among other things:"

> (A) The competence of the consumer or other person;
>
> (B) The nature of the deception or coercion practiced upon the consumer or other person;
>
> (C) The damage to the consumer or other person; and
>
> (D) The good faith of the person found to have violated the provisions of this part.  [TENN. CODE § 47-18-109(a)(4).]

For some states, the Court will also determine whether to award punitive damages.  Connecticut is one such state.  *See* CONN. GEN. STAT. § 42-110g(g).  Punitive damages are warranted if there is reckless indifference to another's rights or wanton or intentional violation to another's rights.  *Nautilus LLC v. Langello*, 1998 Conn. Super. Lexis 1801, at *8 (Conn. Super. Ct. June 25, 1998).  For Idaho, the Court may award punitive damages in cases of "repeated or flagrant violations."  IDAHO CODE § 48-608(1).

## C.    The Jury Instructions Include Many Common Defined Terms

Many of the state UTPAs contain words that are defined in a similar and common manner, such as "advertisement," "good," "merchandise," "person," and "sale."  Many UTPAs prohibit unfair or deceptive trade practices conducted in "trade or commerce," which is commonly defined as offering or advertising something for sale.  *See, e.g.*, CONN. GEN. STAT. § 42-110a(4); FLA. STAT. § 501.203(8); IDAHO CODE § 48-602(2).

- 6 -

As another example, many statutes prohibit a "person" from engaging in certain activities. "Person" uniformly includes a corporation. *See, e.g.*, N.D. CENT. CODE § 51-15-01(4); OKLA. STAT. TIT. 15, § 752(1).

There should be no issue of fact about the application of certain definitions to this case. Consequently, Plaintiffs request that the Court find, as a matter of law, the following undisputed facts:

1.      AstraZeneca is a "**person**."[3]

2.      In selling or offering to sell Zoladex, or reporting and causing to be published AWPs for Zoladex (which serve as the benchmark upon which Plaintiffs and Class members made payments), AstraZeneca engaged in "**trade**" or "**commerce**" or "**business**."[4]

3.      In selling or offering to sell Zoladex, or reporting and causing to be published AWPs for Zoladex (which serve as the benchmark upon which Plaintiffs and Class members made payments), AstraZeneca engaged in a "**sale**."[5]

4.      By reporting and causing to be published AWPs for Zoladex (which serve as the benchmark upon which Plaintiffs and Class members made payments), AstraZeneca engaged in "**advertising**" or made an "**advertisement**."[6]

5.      "**Consumer transactions**" are at issue in this case.[7]

6.      Plaintiffs and the Class members are considered "**consumers**."[8]

---

[3] This finding is relevant to UTPAs in the following states:  AZ, AR, CA, CO, CT, DE, DC, IN, MD, MO, NH, NJ, ND, OK, OR, SD, and WY.

[4] This finding is relevant to UTPAs in the following states:  CO, CT, FL, HI, ID, IL, MA, MI, MO, NE, NV, NH, NM, NC, OR, RI, SC, TN, TX, WA, and WV.

[5] This finding is relevant to UTPAs in the following states:  AZ, DE, IL, MD, MO, NV, NJ, ND, and SD.

[6] This finding is relevant to UTPAs in the following states:  AZ, DE, MO, NV, NJ, ND, SD, WV, and WY.

[7] This finding is relevant to UTPAs in the following states:  CA, IN, KS, and OK.

[8] This finding is relevant to UTPAs in the following state:  CA, DC, MD, TX and VT.

- 7 -

7.      Zoladex is considered a "**good**" or "**merchandise**" or "**property**."[9]

8.      AstraZeneca is a "**supplier**."[10]

Having the Court make these findings before trial commences will reduce the number of instructions and findings submitted to the jury and, therefore, lead to a more efficient trial of the claims against AstraZeneca.  Below are tables setting forth the definitions of the foregoing words under the relevant UTPAs.

1.      **"Person"**

Under all of the relevant statutes, a "**person**" includes a corporation.  *See* ARIZ. REV. STAT. § 44-1521(6); ARK. CODE ANN. § 4-88-102(5); CAL. CIV. CODE § 1761(c); COLO. REV. STAT. § 6-1-102(6); CONN. GEN. STAT. § 42-110a(3); 6 DEL. CODE § 2511(7); D.C. CODE § 28-3901(a)(1); IND. CODE § 24-5-0.5-2(2); MD. COM. LAW CODE § 13-101(h); MO. REV. STAT. § 407.010(5); N.H. REV. STAT. § 358-A:1(I); N.J. STAT. § 56:8-1(d); N.D. CENT. CODE § 51-15-01(4); OKLA. STAT. TIT. 15, § 752(1); OR. REV. STAT. § 646.605(4); S.D. CODIFIED LAWS § 37-24-1(8); WYO. STAT. § 40-12-102(a)(i).

2.      **"Trade" or "Commerce" or "Business"**

Under the definitions of relevant state UTPAs, AstraZeneca has engaged in "**trade**" or "**commerce**" or "**business**" by selling or offering to sell Zoladex, or reporting and causing to be published AWPs for Zoladex (which serve as the benchmark upon which Plaintiffs and Class members made payments).

| Statute | Definition |
|---|---|
| COL. REV. STAT. § 6-1-105(1) | Prohibits deceptive trade practice "in the course of such person's business," but does not define business.  The plain meaning of |

---

[9] This finding is relevant to UTPAs in the following states:  AZ, AR, CA, DE, DC, IL, KS, MD, MN, MO, NV, NJ, ND, OR, SD, and WY.

[10] This finding is relevant to UTPAs in the following states:  IN and KS.

| | "business" includes commercial dealings. American Heritage Dictionary at 220 (2d coll. Ed. 1982). |
|---|---|
| CONN. GEN. STAT. § 42-110a(4) | "Trade" and "commerce" mean "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." |
| FLA. STAT. § 501.203(8) | "Trade or commerce" means "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated," and  "shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity." |
| HAW. REV. STAT. § 480-2(b) | Statute does not define "trade or commerce" but it is also be construed broadly, and courts look to the FTC Act. |
| 815 ILCS 505/1(f) | "Trade" and "commerce" mean "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." |
| IDAHO CODE § 48-602(2) | "Trade" and "commerce" mean "the advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services or distributing goods or services, either to or from locations within the state of Idaho, or directly or indirectly affecting the people of this state." |
| MASS. GEN. LAWS Ch. 93A, § 1(b) | "Trade" and "commerce" shall "include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed … and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall |

| | |
|---|---|
| | include any trade or commerce directly or indirectly affecting the people of this commonwealth." |
| MICH. COMP. LAWS § 445.902(1)(g) | "Trade or commerce" means "the conduct of a business providing goods … primarily for personal, family, or household purposes and includes the advertising … offering for sale … sale … or distribution of [an article.]" |
| MO. REV. STAT. § 407.010(7) | "Trade" or "commerce" means "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situation" and includes "any trade or commerce directly or indirectly affecting the people of this state." |
| NEB. REV. STAT. § 59-1601 | "Trade or commerce" means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." |
| NEV. REV. STAT. § 598.0915 | Prohibits deceptive trade practice "in the course of [person's] business," but does not define business.  The plain meaning of "business" includes commercial dealings. American Heritage Dictionary at 220 (2d coll. Ed. 1982) |
| N.H. REV. STAT. § 358-A:1(II) | "Trade" and "commerce" include "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state." |
| N.M. STAT. § 57-12-2(C) | "Trade" or "commerce" includes the offering for sale or distribution of any article or commodity, "including any trade or commerce directly or indirectly affecting the people of this state." |
| N.C. GEN. STAT. § 75-1.1(b) | "Commerce" includes "all business activities, however denominated …." |
| OR. REV. STAT. § 646.608(1) | Prohibits unlawful practices "in the course of the person's business," but the statute does not further define "business." |
| R.I. GEN. LAWS § 6-13.1- | "Trade" and "Commerce" mean "the |

- 10 -

| | |
|---|---|
| 1(5) | advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situate, and include any trade or commerce directly or indirectly affecting the people of this state." |
| S.C. CODE § 39-5-10(b) | "Trade" or "commerce" include "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State." |
| TENN. CODE § 47-18-103(11) | "Trade" or "commerce" or "consumer transaction" means "the advertising, offering for sale, lease or rental, or distribution of any goods, services or property, tangible or intangible, real, personal, or mixed, and other articles, commodities or things of value wherever situated." |
| TEX. BUS. & COM. CODE § 17.45(6) | "Trade" and "commerce" mean "the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state." |
| WASH. REV. CODE § 19.86.010(2) | "Trade" and "commerce" include "any commerce directly or indirectly affecting the people of the state of Washington." |
| W. VA. CODE § 46A-6-102(6) | "Trade" or "commerce" manes "the advertising, offering for sale, sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state." |

3.      **"Sale"**

Under the definitions of relevant state UTPAs, AstraZeneca has engaged in a "**sale**" by selling or offering to sell Zoladex, or reporting and causing to be published AWPs for Zoladex (which serve as the benchmark upon which Plaintiffs and Class members made payments).

| Statute | Definition |
|---|---|
| ARIZ. REV. STAT. § 44-1521(7) | "Sale" means "any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." |
| 6 DEL. CODE § 2511(8) | "Sale" means "any sale, offer for sale or attempt to sell any merchandise for any consideration." |
| 815 ILCS 505/1(d) | "Sale" includes "any sale, offer for sale, or attempt to sell any merchandise . . . ." |
| MD. COM. LAW CODE § 13-101(i)(1) | "Sale" includes any sale or offer or attempt to sell merchandise. |
| MO. REV. STAT. § 407.010(6) | "Sale" includes any sale, offer or attempt to sell. |
| NEV. REV. STAT. § 598.094 | "Sale" includes "any sale, offer for sale or attempt to sell any property for any consideration." |
| N.J. Stat. § 56:8-1(e) | "Sale" includes "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." |
| N.D. CENT. CODE § 51-15-01(5) | "Sale" includes any sale or offer for sale. |
| South Dakota | "Sale" undefined by statute but should be interpreted consistently with other similar statutes. |

4.      **"Advertising"**

By reporting and causing to be published AWPs for Zoladex (which serve as the benchmark upon which Plaintiffs and Class members made payments), AstraZeneca engaged in "**advertising**" or made an "**advertisement**" under the relevant UTPAs cited below.

- 12 -

| Statute | Definition |
|---|---|
| ARIZ. REV. STAT. § 44-1521(1) | "Advertisement" includes "the attempt by publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." |
| 6 DEL. CODE § 2511(1) | "Advertisement" means "the attempt by publication, dissemination, solicitation or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in, any merchandise." |
| MO. REV. STAT. § 407.010(1) | "Advertisement" means "the attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise." |
| NEV. REV. STAT. § 598.0905 | Advertisement" means "the attempt by publication, dissemination, solicitation or circulation to induce, directly or indirectly, any person to enter into any obligation to lease or to acquire any title or interest in any property." |
| N.J. Stat. § 56:8-1(a) | "Advertisement" means "the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." |
| N.D. CENT. CODE § 51-15-01(1) | "Advertisement" includes "the attempt by publication, dissemination, solicitation, or circulation, oral or written, to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise." |
| S.D. CODIFIED LAWS § 37-24-1(1) | "Advertisement" means "the attempt by publication, dissemination, solicitation, or circulation, whether oral, visual, written, or otherwise, and whether in person, by telephone, or by any other means, to induce directly or indirectly any person to enter into any obligation or to acquire any title or interest in any merchandise." |
| W. VA. CODE § 46A-6- | "Advertisement means the publication, |

| | |
|---|---|
| 102(1) | dissemination or circulation of any matter, oral or written, including labeling, which tends to induce, directly or indirectly, any person to enter into any obligation, sign any contract or acquire any title or interest in any goods or services and includes every word device to disguise any form of business solicitation by using such terms as 'renewal', 'invoice', 'bill', 'statement' or 'reminder' to create an impression of existing obligation when there is none or other language to mislead any person in relation to any sought-after commercial transaction." |
| WYO. STAT. § 40-12-102(a)(v) | "Advertisement" includes "the attempt by publication, dissemination, solicitation or circulation, whether oral, visual, written or otherwise, and whether in person, by telephone or by any other means to induce directly or indirectly any person to enter into any obligation or to acquire any title or interest in any merchandise." |

5.      **"Consumer Transaction"**

Plaintiffs, by making payments for Zoladex, engaged in consumer transactions as contemplated by the following UTPAs.

| Statute | Definition |
|---|---|
| CAL. CIV. CODE § 1761(d), (e) | "Transaction" means "an agreement between a consumer and any other person," and "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." |
| IND. CODE § 24-5-0.5-2(1) | A "consumer transaction" includes the sale of personal property for purposes that are primarily personal. |
| KAN. STAT. ANN. § 50-624(c) | "Consumer transaction" includes the sale of property to a consumer. |
| OKLA. STAT. TIT. 15, § 752(2) | "Consumer transaction" means "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or |

- 14 -

| | thing of value wherever located, for purposes that are personal, household or business oriented[.]" |

### 6.  "Consumers"

Plaintiffs and the Class members are considered "**consumers**" under the following

UTPAs:

| Statute | Definition |
|---------|------------|
| CAL. CIV. CODE § 1761(d) | "Consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." |
| D.C. CODE § 28-3901(a)(2) | "Consumer" means "a person who does or would purchase, lease (from), or receive consumer goods or services, including a co-obligor or surety, or a person who does or would provide the economic demand for a trade practice; as an adjective, 'consumer' describes anything, without exception, which is primarily for personal, household, or family use." |
| MD. COM. LAW CODE § 13-101(c)(1) | "Consumer" includes a recipient of consumer goods. |
| TEX. BUS. & COM. CODE § 17.45(4) | Consumer includes an individual who seeks or acquires by purchase goods. |
| VT. STAT. ANN. tit. 9, § 2451a(a) | "Consumer" includes any person who purchases goods for his or her use or benefit or the use or benefit of a member of this or her household. |

### 7.  "Good," "Merchandise" and "Property"

Zoladex is considered a "**good**," "**merchandise**," or "**property**" under the following

UTPAs.

| Statute | Definition |
|---------|------------|
| ARIZ. REV. STAT. § 44-1521(5) | Merchandise" means "any objects, wares, goods, commodities, intangibles, real estate, or services." |
| ARK. CODE ANN. § 4-88- | "Goods" means "any tangible property, |

- 15 -

| 102(4) | coupons, or certificates, whether bought or leased." |
|---|---|
| CAL. CIV. CODE § 1761(a) | "Goods" means "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." |
| 6 DEL. CODE § 2511(6) | "Merchandise" means "any objects, wares, goods, commodities, intangibles, real estate or services." |
| D.C. CODE § 28-3901(a)(7) | "Goods and services" means "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." |
| 815 ILCS 505/1(d) | Merchandise" includes "any objects, wares, goods, commodities, intangibles …." |
| KAN. STAT. ANN. § 50-624(h) | "Property" includes "goods." |
| MD. COM. LAW CODE § 13-101(f) | "Merchandise" includes any commodity, object or goods. |
| *Wexler v. Bros. Entertainment Group, Inc.*, 457 N.W.2d 218, 221 (Minn. Ct. App. 1990) | "Merchandise" under both statutes a issue includes any objects or goods. |
| MO. REV. STAT. § 407.010(4) | "Merchandise" includes any objects or goods. |
| NEV. REV. STAT. § 598.0937 | "Property" means "any real or personal property, or both real and personal property, intangible property or services." |
| N.J. Stat. § 56:8-1(c) | "Merchandise" includes any objects, goods and commodities offered, directly or indirectly, to the public for sale. |
| N.D. CENT. CODE § 51-15-01(3) | "Merchandise" includes any objects, goods or commodities. |
| OR. REV. STAT. § 646.605(6) | "Goods" means those which are or may be obtained primarily for personal family or household purposes. |
| S.D. CODIFIED LAWS § 37-24-1(7) | "Merchandise" includes any object, goods or commodity. |

| WYO. STAT. § 40-12-102(a)(vi) | "Merchandise" includes any object, good or commodity. |

### 8.      "Supplier"

AstraZeneca is a supplier under the Kansas unfair practices act and the relevant Indiana statute.  *See* KAN. STAT. ANN. § 50-624(j) ("supplier" includes a manufacturer who, in the ordinary course of business, engages in consumer transactions, "whether or not dealing directly with the consumer."); IND. CODE § 24-5-0.5-2(a)(3) (supplier is a seller or other person who regularly engages in or solicits consumer transactions and includes a manufacturer "whether or not the person deals directly with the consumer").

### D.      Variations in State Law Are Immaterial And Have No Effect on Manageability

True, there are variations among the UTPAs for the 37 states, but most are immaterial to Class Plaintiffs' evidence and claims.  As this Court already recognized, to have an impact on manageability, variations in state law must be material to the case:

> Courts should look at how issues are likely to play out in the context of the case to see what individual issues are likely to arise, and what state law differences are irrelevant and may be ignored.  See *Mowbray, 208 F.3d at 296-97* ("Under either [grouping's] rule, the factual proffer will be largely the same …."); *Relafen, 221 F.R.D. at 279 n.17* ("Yet with the exception of the variation discussed below, such differences [in state law] prove largely irrelevant.").

*AWP*, 230 F.R.D. at 84.

### 1.      Definitions of intent or knowledge

As AstraZeneca will surely spotlight, there are variations among the states' UTPAs as to whether a defendant's intent or knowledge of its wrongdoing is an element and, if so, whether lesser degrees of knowledge, such as recklessness, are culpable.  But these variations are immaterial here.  Of those nine UTPAs that require a jury to find some form of intent, ***all of them*** encompass knowledge or intentional misconduct.  *See* Instruction 4.08 (discussing Indiana,

- 17 -

Kansas, Nevada, New Mexico, Oklahoma, Oregon, Pennsylvania, South Dakota and Wyoming).

Here, Class Plaintiffs will prove that AstraZeneca acted with complete knowledge that its

published AWPs were false and that it fully intended to deceive the Class.  Whether AstraZeneca

could be liable for mere recklessness in some states but not others hence will be immaterial to

the Class's proof at trial.

And the fact that most state UTPAs require no showing of knowledge or intent does ***not***

render class treatment less manageable.  Rather, the absence of a mental-state element makes the

jury's job even more manageable for those states' UTPA claims.

### 2.      Variations in proving causation

For the same reasons, the variations in UTPAs causation standards are not material – as

this Court already recognized in certifying the Consumer Class:

> in this context, where consumers (elderly people with cancer or
> another serious disease) make a percentage co-payment based on
> the stated AWP, there is ***no indication that different definitions of
> reliance and causation will matter*** or cannot be resolved as a
> matter of law prior to trial.  Thus, the common legal and factual
> issues predominate over the individual ones.

*AWP*, 230 F.R.D. at 79 (emphasis added).

Some states' UTPAs require a Plaintiff to establish proximate causation via proof that the

unfair or deceptive practice directly produces the harm and without which the harm would not

occurred.  *See, e.g.,* Del. P.J. I. Civ. § 21.1 (2000); Washington Pattern Jury Instruction 310.07.

Other UTPAs require only that the practice be a substantial factor in bringing about the damage.

Mass. Superior Ct. Civil Prac. Jury Instruction § 16.5; Hawaii Civil Jury Instructions, Instruction

No. 7.1 (1999).  AstraZeneca misreported Zoladex's AWP and artificially inflated the price of

Zoladex, thereby overcharging the Consumer Class and causing them harm – under ***any*** of the

standards for proving causation.  For this reason, Class Plaintiffs' single proposed jury

- 18 -

instruction for causation reflects the strictest causation standard of any of the state UTPAs that require direct, "but for" causation."

### III.     CONCLUSION

AstraZeneca has showed its cards.  Moving to decertify the consumer class, AstraZeneca declares that no consumer class action is possible because, it states, no federal court has ever successfully approved a multi-state consumer-protection class action.  AstraZeneca's Brief in Support of Motion to Decertify (Dkt. No. 3897, filed March 22, 2007) at 6.  Yet this Court has already seen for itself evidence of AstraZeneca and the rest of the pharmaceutical industry's scheme to inflate pharmaceutical prices nationwide by misreporting drug AWPs.  Though plainly victimized by this deceptive practice, consumers across the country would be stripped of any remedy if AstraZeneca has its way.

And stripped of remedies they would be.  For consumers (and the Court), there is no viable alternative to this class action.  If the present multi-state class is unmanageable, as AstraZeneca insists, then separate trials on behalf of 41 consumer classes (including the District of Columbia), one for each state that permits CPA class actions, purports to be the next alternative.  But there could be no 41 separate trials.  In most states, consumers lack a class representative, without which there could be no trial.  And even if 41 trials could be held, they would consume far too much judicial time and resources to complete.

Furthermore, the consumer Class members are elderly, and many are ill.  Were this Court to attempt 41 trials, they would come too late for most Class members.  Though cheated by AstraZeneca or other AWP defendants, the elderly consumer Class would be denied the powerful tool for justice that is Rule 23.  Denied their class action, Class members' only hope for making defendants pay would be lost.

For this reason, this Court ruled that class treatment of the consumer claims is superior to other means of obtaining relief.  We confirm today via these proposed jury instructions and verdict form that class treatment is also manageable.  For the reasons set forth herein, the Court should adopt Class Plaintiffs' proposed jury instructions and form for use in the Consumer Class's upcoming trial against AstraZeneca.

Respectfully Submitted,

DATED:  April 6, 2007

By____/s/ Steve W. Berman_____
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
   Hagens Berman Sobol Shapiro LLP
   One Main Street, 4th Floor
   Cambridge, MA  02142
   Telephone: (617) 482-3700
   Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

001534-16  162303 V1

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  162303 V1

## <u>CERTIFICATE OF SERVICE BY LEXIS-NEXIS FILE & SERVE</u>

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of Plaintiffs' attorneys and that, on April 6, 2007, I caused copies of MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED JURY INSTRUCTIONS to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


<u>/s/ Steve W. Berman</u>
Steve W. Berman

001534-16  162303 V1