UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| CLASS 1 JURY TRIAL (ASTRAZENECA) | Judge Patti B. Saris |

**CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
ASTRAZENECA PHARMACEUTICAL LP'S MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY AND EVIDENCE CONCERNING AGGREGATE DAMAGES**

001534-16 162079 V1

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ...............................................................................................................1

II. PROCEDURAL BACKGROUND......................................................................................1

III. ARGUMENT.......................................................................................................................3

    A. AZ'S SUBSTANTIVE STATE LAW ARGUMENT LACKS MERIT......................................................................................................................3

    B. AZ'S NO FORMULAIC APPROACH ARGUMENT LACKS MERIT......................................................................................................................6

    C. THE USE OF AGGREGATE DAMAGES IS WELL RECOGNIZED AND APPROVED IN CLASS ACTIONS.............................6

    D. AZ'S CONFUSION ARGUMENT LACKS MERIT...........................................11

    E. AZ'S PROCEDURAL ARGUMENT LACKS MERIT.......................................12

001534-16 162079 V1

## TABLE OF AUTHORITIES

**PAGE**

### FEDERAL CASES

*Barr v. WUI/TAS, Inc.*,
    1976 U.S. Dist. Lexis 16817 (S.D.N.Y. Feb. 5, 1976) ........................................................8

*Bell Atl. Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) ...............................................................................................3

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
    36 F. Supp. 2d 560 (E.D.N.Y. 1999) .................................................................................10

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
    133 F. Supp. 2d 162 (E.D.N.Y. 2001) ...............................................................................10

*Dukes v. Wal-Mart, Inc.*,
    474 F.3d 1214 (9th Cir. 2007) .............................................................................................7

*Dumas v. Albers Med., Inc.*,
    2005 U.S. Dist. Lexis 35222 (W.D. Mo. Sept. 7, 2005) .....................................................6

*Eisen v. Carlisle & Jacquelin*,
    479 F.2d 1005 (2d Cir. 1973), *vacated*, 417 U.S. 156 (1974) ............................................6

*Falise v. American Tobacco Co.*,
    94 F. Supp. 2d 316 (E.D.N.Y. 2000) ..................................................................................8

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) .............................................................................................10

*In re Hotel Tel. Charges*,
    500 F.2d 86 (9th Cir. 1974) .................................................................................................6

*Lester v. Percudani*,
    217 F.R.D. 345 (M.D. Pa. 2003)..........................................................................................3

*Long v. Trans World Airlines, Inc.*,
    761 F. Supp. 1320 (N.D. Ill. 1991) .....................................................................................9

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2002) .............................................................................................9

*In re Mexico Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ...............................................................................................7

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    235 F.R.D. 127 (D. Me. 2006) .................................................................................... 7

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003) ......................................................................................... 6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005) ................................................................................ 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd in part, vacated in part
    on other grounds*, 148 F.3d 283 (3d Cir. 1998) ........................................................ 9

*Schwab v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 992 (E.D.N.Y. 2006) ............................................................ 7, 8, 10

*Simer v. Rios*,
    661 F.2d 655 (7th Cir. 1981) ..................................................................................... 8

*Van Gemert v. Boeing Co.*,
    553 F.2d 812 (2d Cir. 1977) ...................................................................................... 6

*Windham v. American Brands, Inc.*,
    565 F.2d 59 (4th Cir. 1977) ....................................................................................... 6

## STATE CASES

*Muise v. GPU, Inc.*,
    851 A.2d 799 (N.J. Super. App. Div. 2004) ............................................................ 10

*Peery v. Hansen*,
    585 P.2d 574 (Ariz. Ct. App. 1978) ........................................................................... 4

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
    752 A.2d 807 (N.J. App. 2000) .................................................................................. 9

*Wallis v. Ford Motor Co.*,
    208 S.W.3d 153 (Ark. 2005) ...................................................................................... 4

*Ziglin v Players MH, L.P.*,
    36 S.W.3d 786 (Mo. Ct. App. 2001) .......................................................................... 4

## I.     INTRODUCTION

Class Plaintiffs oppose the motion *in limine* filed by AstraZeneca Pharmaceuticals LP ("AZ") to exclude testimony and evidence concerning aggregate damages.  The motion, at bottom, is simply a late effort to have this Court reconsider class certification.  The grounds for the motion were all raised, and refuted, long ago.  The AWP trial for Classes 2 and 3 conducted in late 2006 demonstrated the ability to approach AWP liability, causation, and damages issues on a class-wide basis.  The authorities cited herein uniformly approve the use of aggregate damages in class actions.  AstraZeneca's apparent approach, that each elderly claimant who has been injured by AstraZeneca's misconduct, should have to prove their individual circumstances on a claim-by-claim basis, should be rejected.  The motion should be denied.

## II.    PROCEDURAL BACKGROUND

The issues presented in AZ's *in limine* motion regarding aggregate damages have been litigated, and re-litigated, numerous times in these proceedings.  The following is a short synopsis.

In September 2004 – a mere two and a half years ago – Plaintiffs' opening brief for class certification was filed.  Plaintiffs' Memorandum in Support of Class Certification (Dkt. No. 1026).  The memorandum outlined the manner for estimating aggregate damages.  *Id*. at 32 and 34-35; Declaration of Raymond S. Hartman in Support of Plaintiffs' Motion for Class Certification at ¶ 11(e) and Section IV, ¶¶ 20-38; and Attachment E.  In October 2004, Defendants opposed class certification.  Defendants' memorandum raised all of the essential issues regarding whether it was appropriate to estimate class-wide relief on an aggregate basis.  Track 1 Defendants' Memorandum in Opposition to Class Certification (Dkt. No. 1132) at 25-37 and 47-48.

On December 22, 2004, Plaintiffs filed the Corrected Plaintiffs' Reply Memorandum in Support of Class Certification (Dkt. No. 1271).  On January 21, 2005, Defendants filed a surreply, once again re-hashing arguments regarding variability in reimbursement levels as a basis upon which aggregate damages cannot be awarded in an AWP case.  Track One Defendants' Sur-Reply in Opposition to Class Certification (Dkt. No. 1329) at 6 and 12-14.  At that time, AZ also filed an individual surreply, in part arguing that aggregate damages were not appropriate.  AZ's Individual Surreply in Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 1331) at 7.

On August 16, 2005, this Court entered the first of its orders in connection with class certification.  Memorandum and Order re:  Motion for Class Certification (Dkt. No. 1648), also *In re Pharm. Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61 (D. Mass. 2005).  Among other things, this Court ruled:

> "Defendants have not identified any plausible individual issues that will arise with regard to these class members other than their proofs of damages, which may entail reviewing documents to determine whether each patient was required to pay a percentage-based co-pay and whether each has supplemental insurance.  These damages calculations will be largely formulaic.  Even if some corroboration and individualized attention is necessary, it is unrealistic to expect millions of beneficiaries across the nation to repeatedly prove these claims.  The number of drugs at issue in the Medicare part B context is limited to about seventeen, so even if deciding spreads by individual NDCs is necessary, it would not be unmanageable."  [*Id*. at 85.]

On January 30, 2006, a consolidated order regarding motion for class certification was entered certifying the various Class 1, 2, and 3 claims.

During the late fall of 2006, a trial was conducted in connection with the Massachusetts third-party payor claims under Classes 2 and 3.  During that trial, Plaintiffs adduced evidence regarding national and Massachusetts-only damages for third-party payors on an aggregate basis,

using two experts whose testimony was grounded in data acquired from Defendants and other sources.  Defendants, in turn, availed themselves of the opportunity to present numerous experts on various issues, including multiple critiques regarding the accuracy of the estimates that were presented by Dr. Hartman and Prof. Rosenthal.

Even though this Court has already conducted a class trial using aggregate damages, AZ now moves this Court for an order excluding any evidence of aggregate damages on behalf of Medicare beneficiaries nationwide.  As AZ would have it, each elderly or disabled person who allegedly has been injured by AZ's wrongful conduct by reason of its fraudulent pricing of an oncology drug should have to present each individual circumstance, claim-by-claim, for a full jury trial prior to any constitutional award of liability.  The argument lacks all merit.

### III.   ARGUMENT

**A.   AZ's Substantive State Law Argument Lacks Merit**

AZ argues that "many" state consumer protection statutes require individual consumers to demonstrate injury and damages as a prerequisite to recovery.  AZ's Memorandum in Support of Its Motion *in Limine* to Exclude Testimony and Evidence Concerning Aggregate Damages ("AZ Mem.") (Dkt. No. 3935) at 3-7.  AZ's argument fails.

First, although AZ argues that substantive state consumer protection laws require that the cases proceed on an individual basis, AZ fails to cite any statute or case law authority in support of this proposition.  Instead, AZ misapplies *Lester v. Percudani*, 217 F.R.D. 345, 352 (M.D. Pa. 2003), a federal district court decision that simply held that the unique facts of a particular mortgage scam required individualized hearings, and *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003), a federal predatory pricing claim under antitrust law.

- 3 -

Second, AZ proffers to string cite footnotes ostensibly for the proposition that substantive state consumer protection law requires individualized inquiries. AZ Mem. at 4 n.3 and n.4. However, the cases cited in each of those footnotes simply stand for the proposition that injury must be established for a consumer protection act case, not that the proof of such injury is required to be undertaken on an individualized as opposed to a class-wide basis.[1]

Third, AZ argues that because AZ's experts hypothesize that in "20% to 30% of cases the provider does not collect a co-payment," Dr. Hartman's model must account for such a reduction. However, AZ ignores that under the operative definition of the class, the injury suffered by claimants not only includes the actual outlay of cash but the incurrence of a debt. *See* Consolidated Order re: Motion for Class Certification (Dkt. No. 2097) at 1-2 ("All natural persons nationwide who made, or incurred an obligation enforceable at the time of judgment to make, a co-payment based on AWP for a Medicare Part B covered Subject Drug."). And in any event, if the finder of fact concludes that some portion of the aggregate damages should be reduced by reason of opinions accepted by defense expert testimony, adjustments in the aggregate damages can be made. And it is their burden to show on an admissible basis that such collection issues exist.

On this score, when AstraZeneca promoted its spread marketing and how much profit a doctor could make, it *always* included a patient's co-pay in the formula:

---

[1] *See*, *e.g.*, *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005) (simply concluding that a private cause of action must establish actual damage or injury); *Ziglin v Players MH, L.P.*, 36 S.W.3d 786, 790 (Mo. Ct. App. 2001) (establishing only that a person must purchase a product and suffer damages); *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) (same).

## 3-MONTH LHRH-A COST COMPARISON[2]

### ZOLADEX

| | | | | | | |
|---|---|---|---|---|---|---|
| Number of depots purchased | 34 | X | $748.77 | = | $ | 25,458.18 |
| 30 Day 2% Discount | | | | | $ | (509.16) |
| Total Acquisition Cost | | | | | $ | 24,949.02 |
| Medicare Allowable | $1,231.52 | X | 34 | = | $ | 41,871.68 |
| Medicare Reimbursement | $ 985.22 | X | 34 | = | $ | 33,497.48 |
| Net Profit | $ 235.45 | X | 34 | = | $ | 8,039.30 |
| Patient Co-Pay | $ 246.20 | X | 34 | = | $ | 8,374.20 |
| Total Return to Practice | | | | | $ | 16,922.68 |
| Total Profit per depot | $ 482.75 | | | | | |

Thus, although AstraZeneca's paid experts might now hypothesize collection issues, the document AstraZeneca created at the time did not.

Fourth, AZ repeatedly argues that Dr. Hartman simply "assumes" that there is injury in fact. However, during the Class 2 and 3 trial late last year, the opposite has shown – that the documentary and testimonial evidence, along with the opinion evidence experts (including Dr. Hartman and Prof. Rosenthal), establish proof of class-wide injury in fact due to inflated AWPs. This is not simple assumption, it is proof through evidence. In Class 1, where AWP was intended to be an average, the link is quite clear. If AWP was not ASP, as it should have been, injury is easily established.

Finally, AZ argues that proof through aggregate damages will somehow result in "greater liability or alter its substantive rights." AZ Mem. at 26. There is no legitimate concern here. AZ's wrongdoing resulted in an inflated AWP that impacted all Medicare beneficiaries' co-payments for Zoladex. Estimating the aggregate size of those damages is not only plausible, but the only legitimately expedient manner in which to determine with any accuracy the full and

---

[2] From Plaintiffs' Ex. 240. Dozens of similar examples are in the spread marketing documents without any reference to 20-30% uncollectible patient co-pays.

accurate scope of AZ's liability. AZ's truncated citations in support of its positions are simply inapposite.³

### B. AZ's "No Formulaic Approach" Argument Lacks Merit

AZ argues that the aggregate damages methodology is "improperly inflated", and requires "myriad individualized issues." AZ Mem. at 8-10. We do not rehash arguments made repeatedly before, we only address the new points.

First, AZ argues that Dr. Hartman's aggregate damages computations fail to take into account the possibility of state variations. AZ is wrong. Dr. Hartman's report specifically disaggregates damages among each of the states. *See* Report of Raymond S. Hartman Regarding AstraZeneca with Respect to Class 1 (Dkt. No. 3857) at Attachment F.1.b and RF.2.b; Plaintiffs' Exs. 275, 277 and 382.

Second, AZ argues that the computations currently ignore persons who have opted out of the class. However, that process is not complete and therefore whether, and if so to what extent, a minor adjustment is necessary cannot yet be determined. In any event, the size of that opt out will likely be deminimus compared to ultimate aggregate damages.

### C. The Use of Aggregate Damages is Well Recognized and Approved in Class Actions

Courts will routinely award aggregate damages, sometimes termed "fluid recovery," in cases in which liability to the class is established and the size of the class or nature of the fraud

---

³ *See*, *e.g.*, *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977); *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977); *In re Hotel Tel. Charges*, 500 F.2d 86 (9th Cir. 1974); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated*, 417 U.S. 156 (1974); *Dumas v. Albers Med., Inc.*, 2005 U.S. Dist. Lexis 35222 (W.D. Mo. Sept. 7, 2005); *Parker v. Time Warner Entm't. Co.*, 331 F.3d 13, 22 (2d Cir. 2003). In each case specific aspects of the facts prevented a formulaic approach. That is not an issue here. And even the *Eisen* decision AZ cites has been vacated.

- 7 -

means that individual damages calculations are impractical.[4]  Judge Hornby recently held that the use of aggregate damages is permissible.  *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 235 F.R.D. 127, 143 (D. Me. 2006).  As the leading treatise on class actions states, "[a]ggregate computation of class monetary relief is lawful and proper.  Challenges that such aggregate proof affects substantive law and otherwise violates the defendant's due process or jury trial rights to contest each members claim individually, will not withstand analysis….  Virtually all circuits that have considered this issue…. have expressly condoned aggregate proofs of damages in other contexts [than antitrust]."  3 NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS § 10.5, at 483-84 (4th ed. 2002).  This treatise also notes, "[w]hen proofs permit aggregate damages to be assessed for some members of the class, such aggregate proof should be allowed even though it is not available for all class members."  *Id*. at n.25.  *See also Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1241 (9th Cir. 2007) (citing Newberg treatise and finding that the analysis of aggregate data does not violate the defendant's due process rights).

   Fluid recovery furthers the policy interests behind collective litigation where exact damages determinations are not possible.  Judge Weinstein recently noted that "[w]ithout this use of fluid recovery, 'some class actions… would neither compensate nor deter… and would reward its foresight in stealing from the multitude in small amounts.'"  *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1254 (E.D.N.Y. 2006) (quoting *Bruno v. Superior Court*, 127 Cal. App. 3d 120, 127 (Cal. Ct. App. 1981)); *see also Dukes*, 474 F.3d at 1242 ("aggregate proof of the defendant's monetary liability promotes the deterrence objectives of the substantive laws

---

[4] Fluid recovery has been used in civil RICO actions.  *See In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001).

underlying the class actions…") (citation omitted).[5]  The Seventh Circuit has endorsed a case-by-case approach to the use of fluid recovery, directing courts to consider the goals of deterrence, disgorgement, and compensation in determining whether the fluid recovery device should be used.  *See Simer v. Rios*, 661 F.2d 655, 676-78 (7th Cir. 1981).  New Jersey's class action rule, R. 4:32-2(c), explicitly provides for the use of fluid recovery, stating, "[i]n any class action, the judgment may, consistent with due process of law, confer benefits upon a fluid class, whose members may be, but need not have been members of the class in suit."  The provision is intended to apply to cases in which "it would be highly impracticable, if not impossible, to allocate and distribute the judgment among persons who were members of the class at the time the action was brought or at the time the judgment was entered."  Pressler, *Current N.J. Court Rules*, comment one on R. 4-32, p. 1591 (2004).

Fluid recovery can be used even where there exists the possibility that certain class members may be over-compensated.  *See*, *e.g.*, *Barr v. WUI/TAS, Inc.*, 1976 U.S. Dist. Lexis 16817 (S.D.N.Y. Feb. 5, 1976) (approving settlement in a price-fixing case against telephone answering service, with equal monetary distribution to all class members because there was no method of determining the precise amount that any particular subscriber was overcharged); *see also Schwab*, 449 F. Supp. 2d at 1269 (permitting fluid recovery in case involving marketing of "light" cigarettes even though "[t]his form of fluid recovery tends – like almost all aggregate litigation – to overcompensate some and undercompensate other members of the class who may have relied differently on the 'lights' designation and may have acted differently and for

---

[5] *See also Falise v. American Tobacco Co.*, 94 F. Supp. 2d 316, 333 (E.D.N.Y. 2000) ("To require reliance on specific misrepresentations where indirect channels of communication were integral to the success of the scheme would produce the perverse result of having the most massive and sinister fraudulent schemes be the ones that must escape civil-RICO liability.").

different reasons relevant to damages…. While a court must be alert to issues of due process and must not value efficiency over fairness to both parties, illegally injured plaintiffs should not be fobbed off on the basis of real and imagined management problems that can be circumvented in a fair adjudication."). The possibility of overcompensation of some limited number of class members does not preclude class certification, even without resorting to the use of fluid recovery. *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d 807, 816-17 (N.J. App. 2000) (certifying class in case brought under New Jersey Consumer Fraud Act despite possibility of existence of superceding cause for policyholder loss). This is also not a case where there is a danger that AstraZeneca would be, through the use of an aggregate award, punished for behavior that would be legal where it occurred.

Further, the possibility of imprecision in the use of aggregate damages is no bar to their use. Damages awards in class actions "need not be 100 percent accurate." *Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320, 1327 (N.D. Ill. 1991); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 517 n.46 (D.N.J. 1997), *aff'd in part, vacated in part on other grounds*, 148 F.3d 283 (3d Cir. 1998) (aggregate damages may be estimated so long as "sufficient facts [are] introduced so that a court can arrive at an intelligent estimate without speculation or conjecture."); *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171 (9th Cir. 2002) ("[I]t is important to distinguish between uncertainty in the fact of damage and in the amount of damage.") (citing *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 811 (9th Cir. 1976) ("Different standards govern proof of the fact and proof of the amount of damages.")). As the *Long* court stated, a defendant "has no 'right' to an individualized determination of damages for each plaintiff; the desire for accuracy must be balanced against other factors such as the burdens of discovery in relation to the size of the individual claims." 761 F. Supp. at 1327.

Several methods are available to establish the amount of aggregate damages, and the Court must conclude only that the proffered expert methodology for calculating damages on an aggregate class-wide basis is "not so insubstantial as to preclude class certification." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 90 (D. Mass. 2005). These methods, including statistical analysis, can be used to make determinations even about reliance. *See Schwab*, 449 F. Supp. 2d at 1118 ("In this circuit variations in individual reliance may be adjusted in a variety of ways including averaging through statistical analysis and variations in damages awards."); and 1241 ("When, as in the case at bar, the plaintiffs are a widely spread group complaining of injury from a common course of conduct by defendants, statistical analysis may provide a more accurate and comprehensible form of evidence than would the testimony of millions of individual smokers.")[6] As Judge Weinstein noted in the recent *Schwab* opinion, statistical extrapolation can be conducted in a way that does not overly burden courts or litigants. *See Schwab*, 449 F. Supp. 2d at 1120-21 (citing cases in which relatively small samples were used); *see also Hilao v. Estate of Marcos*, 103 F.3d 767, 782-87 (9th Cir. 1996) (use of statistical sample of class claims in determining compensatory damages did not violate due process clause since adversarial resolution of each class member's not practicable); *see also* 3 Newberg, § 10.12 (endorsing pragmatic approach to distribution of damages, including use of averages, statistical samples, and extrapolation).[7]

---

[6] *Schwab* also cited *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 172 (E.D.N.Y. 2001) (explaining propriety of statistical extrapolation for entity suffering damages in aggregate); and *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 575 (E.D.N.Y. 1999) ("The aggregation of millions of alleged injuries in the instant suit can be expected to yield more accurate results with respect to the causation issue since projections based upon a large statistical base will be available, thus reducing the size of the possible error.").

[7] The use of mathematical models is particularly appropriate where there is a presumption of damage to every class member. *See Muise v. GPU, Inc.*, 851 A.2d 799, 822 (N.J. Super. App. Div. 2004). Assuming Plaintiffs' proffered formula for calculating class-wide damages is acceptable despite the possibility of over- or under-

**D.     AZ's Confusion Argument Lacks Merit**

AstraZeneca next argues that it would be confusing and unfair to permit an aggregate damages approach. AZ Mem. at 10-11. The argument lacks merit.

In arguing that it would be confusing and unfair to permit aggregate damages, AZ underestimates the ability of a jury to understand competing testimony of the parties' experts. Juries weigh competing testimony in numerous arguably complicated areas, and there is simply no reason to think that the aggregate damage estimates in this case are any more, or perhaps any less, complicated or difficult to understand than criminal RICO instructions, securities fraud matters, antitrust matters, complicated contract disputes or any of the other myriad issues that are tried to a jury. Indeed, both parties have the ability – which AZ certainly exercised at the bench trial – to cross-examine and call their own witnesses in support or in opposition to any of the issues applicable in the aggregate damages phase. Indeed, AstraZeneca has already listed four experts it would leave waiting in the wings to call on aggregate damage matters at the trial. There is simply no reason to think there would be any confusion or inability to address the aggregate damages matter on the merits.

The unfair prejudice, of course, would be if the Court *did not* approach the case through aggregate damages, but instead required each of the hundreds of thousands of Medicare beneficiaries to prove their own individual, and generally small claims. The position of AZ lacks any sense of justice.

---

compensation of certain class members, that concern is lessened where reliance on Defendants' misrepresentations is presumed, eliminating individual liability questions.

**E.     AZ's Procedural Argument Lacks Merit**

Finally, AstraZeneca argues that it has "never been contemplated" that an aggregate damages presentation would be made at the Class 1 trial.  AZ Mem. at 11-12.  On the contrary, in December 2005 Plaintiffs filed the merit reports of their experts, which outlined in detail the formulaic method by which Plaintiffs anticipated proving aggregate damages for Classes 1, 2 and 3.  Declaration of Raymond Hartman in Support of Plaintiffs' Claims of Liability and Calculation of Damages at 50-51.  ***In short, AZ has known for well over fifteen months the material that would provide the basis for an aggregate damages trial for Class 1.***

Moreover, during 2006 and in connection with the preparations for the Class 2 and Class 3 trial, this Court considered whether or not it made sense to  bifurcate liability/causation from the damages assessment at the Massachusetts-only Class 2 and 3 trial.  There was no bifurcation. As a result, the Class 2 and Class 3 trial proceeded forward on the basis of combined liability, causation and damages, and this Court has under submission all those matters.

The Class 2 and Class 3 trial demonstrated that issues involving liability, causation and damages for the AWP matters are inextricably intertwined with one another.  There has never been discussions regarding bifurcation of the Class 1 trial, and it is late in the game for AstraZeneca to backhandedly attempt to do so.

DATED:  April 6, 2007            By      /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 14 -

001534-16 162079 V1

- 15 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on April 6, 2007, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ASTRAZENECA PHARMACEUTICAL LPS MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE CONCERNING AGGREGATE DAMAGES** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

     /s/ Steve W. Berman
Steve W. Berman