# EXHIBIT 5, PART 2

JONES DAY

Renee Brooker
February 5, 2007
Page 2

production, which we understand will be quite limited in any event" – has no basis in anything I said during our call.

In terms of whether the materials Abbott produced on February 5 "complete any of the United States' document production requests," it is hard to say, as the United States' requests are virtually boundless in scope and so duplicative of one another that any given document will be responsive to numerous requests. We are continuing our investigation and will complete our production as soon as practicable.

Definition of Abbott

Your characterization of Abbott's position is false. The Government has sued Abbott for alleged fraud relating to four specifically enumerated drugs, all of which were marketed by Abbott's former Hospital Products Division (HPD) – a completely different line of business from Abbott's Pharmaceutical Products Division (PPD). We have made clear in any number of conferences and pleadings our view that documents and information related *exclusively* to PPD drugs are therefore irrelevant to this case. The Government's only response as to why such information is relevant is the notion that it might constitute or lead to "pattern and practice" or "other bad acts" evidence by Abbott with respect to products not at issue in the complaint. We set forth fully in our response to the Government's motion to compel (dated January 23, 2007) why this argument fails, and there is no need to reiterate the issue here.

As I have made clear in our calls, Abbott did not limit itself to "the four corners of the HPD" in defining "Abbott" for purposes of, or in responding to, the Government's first set of interrogatories or requests to admit. We recognize, however, that the second of Abbott's Objections to Definitions in those responses could be misconstrued. To clarify, in responding to the Government's First Set of Interrogatories and Requests for Admission, we defined "Abbott" to include Abbott Laboratories and Abbott Laboratories Inc. with respect to all matters concerning HPD, including the Subject Drugs.

PPD Documents

Your characterization of Abbott's position is false. At no time did I tell you that, if Abbott identified documents relevant to this case, it would refuse to produce them unless they came specifically from an HPD file. I did state, however, Abbott's position that documents relating exclusively to PPD drugs are not relevant to this case, and that Abbott should not be, and is not, required to review or produce such documents. Abbott is meeting its discovery obligations with respect to all documents relevant to this action.

CHI-1571958v1

JONES DAY

Renee Brooker
February 5, 2007
Page 3

Time Period for Production

In its complaint, the Government alleges that the supposed fraud by Abbott occurred between 1991 and 2001. Despite the fact that the Government investigated this case in secret for more than a decade Abbott has agreed to produce available documents and information for the entire period spanning January 1991 to December 31, 2001 and has, in fact, produced documents dating as far back as 1986 in response to the Government's subpoenas. There has to be some reasonable limitation on Abbott's search, and it seems to us that the timeline set forth in the Government's own complaint is a reasonable place to start. As stated in Abbott's response to the motion to compel, to the extent that Abbott has ever produced pre-1991 documents relating to the Subject Drugs in any other AWP case, we will provide those documents to the Government as well. We see no basis to search anew. However, in conducting any new searches for documents, Abbott does not intend to selectively withhold any pre-1991 documents based on our objections to the Government's discovery requests.

Deposition Transcripts from Other Litigation

You asked during our call whether Abbott would refuse to produce deposition transcripts from other AWP-related cases solely on the basis that Abbott (as opposed to some other party) had designated such transcripts as confidential pursuant to the terms of a protective order to which the United States is not a party. The answer to that question is "no." Subject to its other various objections (relevance, etc.), Abbott will produce to the Government relevant deposition transcripts of Abbott employees or representatives taken in other AWP cases. If any such transcripts were designated as confidential by some party other than Abbott under the terms of a protective order that that would not include the United States, we can discuss how to deal with that situation if and when it arises.

Customer Information

I am confused by this portion of your letter. When I related to you the information during our call about the number of Alternate Site customers, and how many of those customers would fall within the group accounting for the top 80% of Abbott's sales, you asked for time to consider this information and to get back to me. Your letter reads as though we had a discussion about the relevance of documents relating to customers outside that group; we did not. I will take your letter as a statement of the Government's position that all such documents are relevant and should be produced. We will consider this position and respond to you as soon as possible.

Hospira Documents

You are correct that Abbott is not objecting to producing relevant, responsive documents on the ground that such documents are currently in the possession of Hospira. I believe that you and Jim Daly had extensive discussions about this some time ago, and our position is unchanged.

CHI-1571958v1

JONES DAY

Renee Brooker
February 5, 2007
Page 4

To the extent Mr. Gobena understood our position differently (as expressed in his January 19 letter), I believe we are all now on the same page.

Compensation of Sales Force

We have agreed to provide the relevant Abbott policies relating to how sales persons are compensated, including bonuses and other incentives. We object to the Government's request that we go further and produce specific information about each sales person's individual performance evaluations and compensation figures, because we regard such a request as irrelevant, unduly burdensome, and harassing.

Production of Documents In Personal Files of Field Sales Force

We have agreed to produce relevant, responsive documents that would be located within Abbott's corporate headquarters. The Government has demanded that Abbott also search the personal files of all field sales personnel throughout the country. We are currently working to determine the size of the HPD field sales force. Until that number is determined, Abbott restates its objection to this request (i.e., irrelevant, unduly burdensome and harassing) and will not conduct a search of the personal files. To the extent we have produced sales files in other cases and such files relate to the Subject Drugs, we will produce those documents.

Sales/Transactional Data

We have produced transaction level sales data for the Subject Drugs in electronic format. We are of course willing to work with you to resolve any technical issues that you may have regarding this data.

Lobbying Documents

Our investigation continues. Since the Government has requested this information of Abbott, does it therefore concede that corollary discovery of the Government (i.e., any documents that relate to the Government's consideration of or response to any lobbying effort relating to pharmaceutical pricing) is also relevant?

Home Infusion Services Documents

As stated, Abbott began its production of responsive Home Infusion documents on February 5.

CHI-1571958v1

JONES DAY

Renee Brooker
February 5, 2007
Page 5

Average Manufacturer Price (AMP)

For reasons we have discussed at length, Abbott does not believe that documents relating to Abbott's underlying calculation of AMP have any relevance to this case. Documents relating to the calculation of AMP are voluminous and complex. The Government has asserted no claim relating to AMP.

There is no inconsistency in Abbott's position with respect to AMP as it relates to the Government's own knowledge of the fact that a spread exists between acquisition cost and reimbursement rates under Medicare and Medicaid. Abbott was required by statute to report AMP to the Government for its products, and it did so. This fact alone is relevant to show the Government's knowledge regardless of what the AMP figure was or how it was calculated.

TAP

We have yet to hear from the Government any basis for why documents relating to the criminal plea and civil settlement of TAP Pharmaceutical Products Inc. – a separate company – relating to the resolution of claims relating to Lupron®, a drug not at issue in this case, would be of any relevance here. Absent such a basis, we are in no position to change our view that such documents are wholly irrelevant.

$$*\qquad*\qquad*\qquad*$$

The last paragraph of your letter is troubling, as it appears to serve little purpose other than throwing in barbs that have no basis in fact. I spent more than 1.5 hours on our call on Monday, January 22, the latest in a series of meet and confers over the past several weeks that have spanned many more hours, so any attempt to suggest that Abbott has been at all dilatory in attempting to resolve any disputes regarding the Government's discovery requests is unwarranted and unsupportable.

Sincerely,

s/ Jason G. Winchester

cc:   James R. Daly
      Carol Geisler



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*                          *Telephone:  (202) 616-3797*
*Ninth Floor*                               *Telecopier:  (202) 616-3085*
*Washington, D.C. 20004*

March 7, 2007

<u>*Via Electronic Transmission*</u>

Mr. Jason G. Winchester
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

Re:    *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* 06–CV-11337-
      PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No.
      1456/Civil Action No. 01-12257

Dear Jason:

      This letter follows our correspondence of January 19, January 24, and February 1, 2007
regarding Abbott's document production in this case.  Abbott responded to these letters in a
single letter of February 5.  In that letter Abbott promised to follow-up with further responses or
production, but has not done so.  Other than its initial disclosures, Abbott has produced less than
2,000 pages of materials in this case.

      <u>Production Schedule</u>.  You stated in your February 5 letter "we are continuing our
investigation and will complete our production as soon as practicable."  We have received not a
single document since that letter.  Nor have you explained what investigation is being
undertaken.  Please provide your document production schedule this week.

      <u>Time Period</u>.  Abbott has unilaterally limited production to the time period spanning
January 1991 to January 2001, other than its alleged previous selective production of some
documents dating back to 1986.  Judge Saris made it clear at the hearing on February 27, 2007,
that the end cut-off should include through the end of 2003.  Transcript, Feb. 27 hearing, page
18-19, 31-32.  Please advise us of the date by which you propose that you will produce

-2-

documents created up to December 31, 2003.

Vancomycin.  We still do not understand what documents relating to vancomycin Abbott is withholding.  Therefore, we are not in a position to evaluate whether a motion to compel is appropriate.  Please state expressly whether Abbott plans to produce all documents related to the marketing and pricing of its drug vancomycin.  If Abbott is limiting in any way at all the search or production of these documents, please so state.

Other acts and pattern or practice documents.  In its February 5 letter (page 2), Abbott dismissed the United States' position that Abbott is required to produce all documents relating to non-Subject Drugs–PPD or HPD– that show a similar "pattern or practice" with respect to the drugs alleged in the Complaint.  Judge Saris agreed with the United States:  "You are entitled to do discovery beyond the four drugs to the extent it shows that there's some practice or pattern of conduct."  Transcript, Feb. 27 hearing, page 9.  We understand this ruling to mean that Abbott's objection is overruled.  Please state expressly whether Abbott will now produce documents in light of this ruling.

PPD Documents.  I do not know how you can reconcile your second and third sentences in your February 5 letter under the heading "PPD Documents".  You flip-flop in the same paragraph on whether you will or won't search for and produce responsive materials from the PPD.  Having been informed by Judge Saris's comments on February 27, please inform us whether Abbott intends to (1) search for, and/or (2) produce responsive PPD documents.  To simply conclude that "Abbott is meeting its discovery obligations" is insufficient to allow the United States to determine what materials it should move to compel.

Customer Information.  You have repeatedly promised to "consider [our] position and respond to [us] as soon as possible."  We have heard nothing back from Abbott.

Compensation of Sales Force.  Unless we hear otherwise, we understand your position that the United States is required to move to compel the production of any documents other than general "policy-only" documents relating to how sales persons are compensated.  We understand that Abbott refuses to produce any materials that demonstrate how the sales force was in fact compensated, and whether such "compensation policies" were followed.

Production of Documents in Personal Files of Field Sales Offices.  For months you have been promising to count heads in an effort to decide whether Abbott will have a basis to claim production of these materials is unduly burdensome.  You still have yet to provide us with Abbott's head count of sales persons or its final position.

Lobbying Documents.  Abbott only responded to these document requests by claiming "our investigation continues."  We have heard nothing further since that representation was made.  Please advise us of the date by which Abbott will produce these documents.

-3-

Home Infusion Service Documents.  You have represented that the less than 2,000 pages Abbott produced on or around February 5 are "responsive Home Infusion documents".  We believe that Abbott has withheld substantial responsive documents in this category.  Please confirm that additional Home Infusion documents will be produced, and advise of the production schedule, or we will have no choice but to pursue an appropriate motion.

Average Manufacturer Price (AMP).  We understand that Abbott is requiring the United States to move to compel documents relating to Abbott's calculation of AMP data in order to obtain this information.

TAP documents.  Please advise whether Abbott will reevaluate its position in light of Judge Saris's comments at the February 27 hearing.  We also understand that Jim Breen and Texas Assistant Attorney General Ray Winter have brought a specific category of responsive Abbott documents produced in the TAP cases to the attention of your colleague, Eric Berlin.  These are described as "Medicare Working Group" and "Corporate Planning and Development Department" documents.  Similarly, we understand that Abbott was compelled to produce the deposition of Thomas Hodgson in the Texas case and continues to withhold it from the United States.  If we do not receive these items immediately, we will pursue an appropriate motion.

We hope to hear from you by Friday of this week on all the outstanding issues as many weeks have gone by since your last correspondence on the matter where you promised to look into these issues.  Thank you for your attention.

Sincerely,

/s/

Renée Brooker

cc: James Breen

-----Original Message-----
From: Brooker, Renee (CIV)
Sent: Friday, March 09, 2007 1:07 PM
To: Brian Murray; Chris Cook; Dan Reidy; David Torborg; Jason Winchester; Jim Daly; Tina Tabacchi
Cc: Jbreen@breenlaw.com; Gobena, Gejaa (CIV); Draycott, Justin (CIV); 'Alison Simon'; Lavine, Mark (USAFLS); Martinez, Ana Maria (USAFLS); St.Peter-Griffith, Ann (USAFLS)
Subject: U.S. ex rel. Ven-A-Care v. Abbott Laboratories

Dave:  This is a reminder that we are waiting to hear back from Abbott on the following matters:

1.  A response to Mark Lavine's correspondence of February 23 and March 6 regarding Abbott's production of transactional data.

2.  The next draft of the proposed Joint Case Management Order to be submitted to the Court.

3.  A response to my March 7 letter pertaining to Abbott's document production schedule and other still outstanding document discovery issues.  In addition, we renew our request that Abbott produce its file source index for its productions made to date.

4.  A response to my March 4 email to you and Jim Daly regarding the applicability of paragraph 4(i) of the Protective Order to the New York Counties.

5.  Deposition dates per Gejaa Gobena's March 5 letter.  We would appreciate receiving dates on a rolling basis as soon as they become available.

Please let us know as soon as possible when we can expect to hear further about each of these matters.  We appreciate the volume of work on everyone's plate but we need to move expeditiously with these items.  Thank you.  --Renee

Renée Brooker
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
601 D Street NW
Suite 9004
Washington, DC  20004
ph:  (202) 616-3797
fax: (202) 616-3085

From: Brooker, Renee (CIV)
Sent: Monday, March 12, 2007 6:22 PM
To: 'Brian Murray'; 'Chris Cook'; 'Dan Reidy'; 'David Torborg'; 'Jason Winchester';
'Jim Daly'; 'Tina Tabacchi'
Cc: 'Jbreen@breenlaw.com'; Gobena, Gejaa (CIV); Draycott, Justin (CIV); 'Alison
Simon'; Lavine, Mark (USAFLS); Martinez, Ana Maria (USAFLS); St.Peter-Griffith, Ann
(USAFLS)
Subject: RE: U.S. ex rel. Ven-A-Care v. Abbott Laboratories


Dave, thank you for your voice mail message left about an hour ago regarding items 2
and 4 listed below.  From my understanding of the message, it appears that Jones Day
is discussing item 2 with the client and you expect to get back to us tomorrow.  As
for item 3, you indicated that Abbott does not agree that paragraphs 4(i) and 5(i)
of the Protective Order that governs this case apply to the NY Counties (although it
does apply to all of the states).  Your basis is that Abbott won some motion before
Judge Jenkins in Texas opposing sharing with the NY Counties.  Even assuming that to
be the case, how does that affect whether the Protective Order in this case allows
the United States to share information with NY Counties in the exact same way it
allows the United States to share information with the states?  When we were
litigating the Protective Order, we did not intend to limit law enforcement agencies
to the states where there are county law enforcement agencies in this same
litigation.  It was simply an oversight.  It does not seem to be a good use of the
parties' or the Court's time to litigate the same exact issue we have already won
over this distinction--state law enforcement versus county law enforcement.  We
would appreciate a further explanation as soon as possible so we can best understand
your position and determine whether a motion is necessary.

I understand someone else from Jones Day will be contacting us about items 1, 3 and
5.  Please let us know when.

With regard to item 3, we have been asking Abbott to produce a file source index for
its production for months now.  We would like to receive a copy tomorrow in time for
the Rule 30(b)(6) deposition that is taking place on Wednesday.  Abbott has already
indicated that it has created a file source index, so there should be no burden to
producing it.  Please advise tonight or tomorrow on your position.

Thank you.  --Renee

----------------------------------------

From: Brooker, Renee (CIV)
Sent: Friday, March 09, 2007 1:07 PM
To: 'Brian Murray'; 'Chris Cook'; 'Dan Reidy'; 'David Torborg'; 'Jason Winchester';
'Jim Daly'; 'Tina Tabacchi'
Cc: 'Jbreen@breenlaw.com'; Gobena, Gejaa (CIV); Draycott, Justin (CIV); 'Alison
Simon'; Lavine, Mark (USAFLS); Martinez, Ana Maria (USAFLS); St.Peter-Griffith, Ann
(USAFLS)
Subject: U.S. ex rel. Ven-A-Care v. Abbott Laboratories


Dave:  This is a reminder that we are waiting to hear back from Abbott on the
following matters:

1.  A response to Mark Lavine's correspondence of February 23 and March 6 regarding
Abbott's production of transactional data.

2.  The next draft of the proposed Joint Case Management Order to be submitted to
the Court.

3.  A response to my March 7 letter pertaining to Abbott's document production
schedule and other still outstanding document discovery issues.  In addition, we
renew our request that Abbott produce its file source index for its productions made
to date.

4. A response to my March 4 email to you and Jim Daly regarding the applicability of paragraph 4(i) of the Protective Order to the New York Counties.

5. Deposition dates per Gejaa Gobena's March 5 letter. We would appreciate receiving dates on a rolling basis as soon as they become available.

Please let us know as soon as possible when we can expect to hear further about each of these matters. We appreciate the volume of work on everyone's plate but we need to move expeditiously with these items. Thank you.  --Renee

Renée Brooker
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
601 D Street NW
Suite 9004
Washington, DC  20004
ph:  (202) 616-3797
fax: (202) 616-3085

**Brooker, Renee (CIV)**

| | |
|---|---|
| **From:** | Brooker, Renee (CIV) |
| **Sent:** | Monday, March 19, 2007 4:33 PM |
| **To:** | 'Jason Winchester'; 'Jim Daly'; 'Tina Tabacchi'; 'David S. Torborg' |
| **Cc:** | 'Jbreen@breenlaw.com'; St.Peter-Griffith, Ann (USAFLS); Lavine, Mark (USAFLS); Gobena, Gejaa (CIV); Ford, Rebecca (CIV) |

**Attachments:**    Doc Production Letter.030707.pdf



Doc Production
Letter.030707.p...

           Jason, we sent you another letter (attached) requesting a response by Friday,
March 9 relating to Abbott's document production in this case.  We still have not heard
back from you. We remind you that other than its initial disclosures, Abbott has produced
only a couple thousand pages of materials over the course of many months, notwithstanding
our numerous outstanding document requests and hours of follow-up meet and confers on the
subject.  We again request an immediate response concerning Abbott's document production
schedule.  If Abbott's production is complete with regard to some or all document
requests, then please provide us the courtesy of that information.  We would like to move
to compel as soon as possible given the tight discovery time frame and anticipated
depositions.  Thank you.  --Renee

| Tracking: | Recipient | Delivery | Read |
|---|---|---|---|
| | 'Jason Winchester' | | |
| | 'Jim Daly' | | |
| | 'Tina Tabacchi' | | |
| | 'David S. Torborg' | | |
| | 'Jbreen@breenlaw.com' | | |
| | St.Peter-Griffith, Ann (USAFLS) | | |
| | Lavine, Mark (USAFLS) | | |
| | Gobena, Gejaa (CIV) | Delivered: 03/19/2007 4:33 PM | Read: 03/19/2007 4:37 PM |
| | Ford, Rebecca (CIV) | Delivered: 03/19/2007 4:33 PM | Read: 03/19/2007 4:47 PM |
| | Brooker, Renee (CIV) | Delivered: 03/19/2007 4:33 PM | Read: 03/20/2007 7:58 AM |

**5-31**

-----Original Message-----
From: Brooker, Renee (CIV)
Sent: Friday, March 23, 2007 9:35 AM
To: 'Jason G. Winchester'
Subject: RE: Abbott's Document Production

Jason, I appreciate your schedule is busy.  I do.  But, I doubt that Abbott's entire document production in this case has rested or fallen on a single person's shoulders at Jones Day.  My understanding from past correspondence is that Abbott is refusing to produce certain categories of documents, and I have not heard to the contrary (as examples, AMP information, lobbying documents, TAP documents, any materials at all prior to January 1991 or after December 2001, and any materials from PPD).  However, if any of this has changed, please do let us know today.  We have no desire to waste the court's time with a premature motion to compel, but we feel that we may have no choice if Abbott is simply non-responsive to our requests over the course of months.
 Thanks, Jason.


Renée Brooker
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
601 D Street NW
Suite 9004
Washington, DC  20004
ph:  (202) 616-3797
fax: (202) 616-3085

-----Original Message-----
From: Jason G. Winchester [mailto:jgwinchester@JonesDay.com]
Sent: Friday, March 23, 2007 9:12 AM
To: Brooker, Renee (CIV)
Subject: Re: Abbott's Document Production

Renee -

I have received your letters but have been tied up in depositions. My plan is to have a response to you today, as well as deposition dates.  I do not believe a motion to compel is ripe, but am sure you will proceed as you see fit.
------------
Jason G. Winchester
Jones Day
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
312.782.3939 (phone)
312.782.8585 (fax)
------------------
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
------------------


----- Original Message -----
From: "Brooker, Renee \(CIV\)" [Renee.Brooker@usdoj.gov]
Sent: 03/23/2007 09:05 AM
To: "Jason Winchester" <jgwinchester@JonesDay.com>;"Jim Daly" <jrdaly@jonesday.com>;"Tina Tabacchi" <tmtabacchi@jonesday.com>;<dstorborg@JonesDay.com>
Cc: "Jim Breen" <jbreen@breenlaw.com>;<alisonsimon@breenlaw.com>;"St.Peter-Griffith,

Ann \(USAFLS\)" <Ann.St.Peter-Griffith@usdoj.gov>;"Lavine, Mark \(USAFLS\)"
<Mark.Lavine@usdoj.gov>;"Gobena, Gejaa \(CIV\)" <Gejaa.Gobena@usdoj.gov>;"Ford,
Rebecca \(CIV\)" <Rebecca.Ford@usdoj.gov>
Subject: Abbott's Document Production

Jason, we sent you letters on January 19, 24, and February 1, in follow up to
several meet and confers on Abbott's document production. Specifically, we asked
Abbott to confirm what documents it intends to produce and what is the schedule we
should expect. Other than a single February 5 letter, Abbott has not informed us
what documents it intends to produce or what is the schedule. On March 7 we sent
another letter requesting the same exact information. We asked Abbott to respond to
these inquiries by March 9. It is now Friday, March 23. We have not heard back.
Please put yourself in the government's position for a moment. We have only
received a couple thousand pages of materials since we served our document requests
months ago, deposition discovery is substantially underway, and the discovery clock
is ticking away. We take Abbott's silence to be a signal that we should now file a
motion to compel the various categories of documents set forth in our letters. We
will do so.  --Renee


Renée Brooker
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
601 D Street NW
Suite 9004
Washington, DC  20004
ph:  (202) 616-3797
fax: (202) 616-3085

-----Original Message-----
From: Brooker, Renee (CIV)
Sent: Monday, March 19, 2007 4:33 PM
To: 'Jason Winchester'; 'Jim Daly'; 'Tina Tabacchi'; 'David S. Torborg'
Cc: 'Jbreen@breenlaw.com'; St.Peter-Griffith, Ann (USAFLS); Lavine, Mark (USAFLS);
Gobena, Gejaa (CIV); Ford, Rebecca (CIV)
Subject:

Jason, we sent you another letter (attached) requesting a response by Friday, March
9 relating to Abbott's document production in this case. We still have not heard
back from you. We remind you that other than its initial disclosures, Abbott has
produced only a couple thousand pages of materials over the course of many months,
notwithstanding our numerous outstanding document requests and hours of follow-up
meet and confers on the subject.  We again request an immediate response concerning
Abbott's document production schedule. If Abbott's production is complete with
regard to some or all document requests, then please provide us the courtesy of that
information.  We would like to move to compel as soon as possible given the tight
discovery time frame and anticipated depositions. Thank you.  --Renee

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number:  (312) 269-4373
jgwinchester@jonesday.com

JP741122
080024-024348

March 23, 2007

VIA E-MAIL

Renee Brooker
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D Street N.W.
Ninth Floor
Washington, DC 20004

Re:   U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.; 06 CV-11337

Dear Renee:

I have reviewed your correspondence of March 7, 2007, as well as your follow-on communications raising the same issues. As part of our ongoing dialogue relating to discovery, and in an effort to respond to your concerns, I respond below.

Status of Abbott's Document Production

Your repeated efforts to characterize Abbott's document production in this case as minimal are unfounded. Abbott has produced nearly 250,000 pages of documents to the Government, as well as electronic data. As we have told you repeatedly, this represents the substantial majority of documents that we believe are relevant and responsive to DOJ's requests. The fact that Abbott produced most of these documents as part of its initial disclosures is something you seek to cast as a negative, but that argument simply will not hold. Would it have been better in DOJ's view for us to just parcel out the documents 10,000 pages a week? We believe that the case has been best served by all the effort that Abbott went to in order to get the majority of documents assembled and produced early in the case as part of its initial disclosures.

Abbott's current, ongoing efforts to investigate and assemble additional documents relating to the DOJ's pending requests was a subject that DOJ inquired about in great detail during the deposition of Ellen Klaus last week. There is no need for me to recount her testimony here.

Time Period

**5-34**

You are correct that Abbott initially objected to producing documents after January 2001, based on the allegations in the Government's complaint. During our meet and confer

CHI-1580751v1

JONES DAY

Renee Brooker
March 23, 2007
Page 2

conferences on this subject, however, the Government proposed a compromise position whereby Abbott would produce documents through December 31, 2001, and Abbott accepted this compromise as the good-faith resolution of our dispute. (*See* my letter to you of February 5, 2007). Your letter now asks for documents extending through 2003. Is DOJ reneging on our resolution of the timing issue?

Vancomycin

Although the Government's requests are so boundless as to make a reasoned analysis nearly impossible, Abbott recognizes that Vancomycin is one of the Subject Drugs, and we have agreed to produce documents relating to all Subject Drugs in accordance with our various objections as stated in our discovery responses and as described in my letter of February 5. You have not articulated a specific concern in your letter, so it is difficult for me to respond with any more specificity. If there is something in particular you want to know, I am happy to discuss it with you.

Non-Subject Drugs/PPD

I respectfully disagree with your view of the proceedings before Judge Saris on February 27, 2007. Far from overruling in blanket fashion Abbott's objections relating to discovery about non-subject drugs, as you suggest, Judge Saris made it perfectly clear on numerous occasions during the hearing that DOJ is "not entitled to documents on any single drug if you haven't charged it" (Transcript at 9) and that DOJ "can't use discovery as a fishing expedition" (*id.* at 15). *See also id.* (having sued on four drugs, DOJ "can't use the discovery . . . to get another fifteen drugs"); *id.* at 16 (instead, DOJ has "got to be able to have a good-faith basis for saying they were defrauded or there was false claims with respect to the other fifteen drugs"); *id.* at 25 ("You can't have a hundred documents relating to a hundred drugs when you're suing on four"); *id.* at 29 ("I'm not simply going to say you're across the board entitled to every document they produced in every suit, even if it involves drugs that have nothing to do with yours. That may be overly broad. It may be unreasonable.")

Abbott already has agreed to produce (i) responsive documents relating specifically to the Subject Drugs; (ii) documents that would apply to the Subject Drugs even if they are not named specifically, such as general HPD marketing plans; and (iii) documents that relate to other HPD drugs to the extent that such documents concern what the Government refers to as "marketing the spread." Based on the February 27, 2007 hearing, we also understand the Court to have determined that DOJ is entitled to any PPD documents that might concern "marketing the spread." (*E.g., id.* at 24.) Abbott will produce any such documents consistent with the Court's direction.

We also understand that there is some process that Mr. Breen may pursue with respect to presenting certain types of documents to the Court from the Texas litigation, for a determination

CHI-1580751v1

JONES DAY

Renee Brooker
March 23, 2007
Page 3

whether they ought be produced in this matter as well. (*Id.* at 12-13.) Abbott will of course abide by a final determination with respect to such documents.

Customer Information

Abbott offered to produce to you contracts relating to those customers that accounted for the top 80% of sales through Alternate Site. We also informed you that the remaining 20% of sales are attributable to a group comprised of literally thousands of smaller accounts. As we related, it would be a considerable burden to Abbott to search for and review documents for these thousands of customers. The Government has suggested no compromise, nor sought to identify what specific information it seeks from these accounts that might allow us to think creatively about alternative ways to get such information to you while minimizing the burden to Abbott to the greatest extent possible. For instance, if the Government wants to determine the pricing terms for these accounts, we might be able to investigate that issue in another way. Can the Government narrow or focus its request in any way, or are we at an impasse?

Compensation of Sales Force

Abbott has offered to produce documents that reflect its policies for compensation of employees. Abbott continues to assert, however, that the Government's request that Abbott produce the actual personnel files of all of its field sales force over the years showing the amount of each person's compensation and their employment reviews is unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence.

Field Sales Force Files

Ellen Klaus testified about the status of Abbott's investigation into this issue.

Lobbying Documents

Abbott has identified certain lobbying documents, which are being reviewed to determine whether they are relevant and responsive to the Government's requests. Once that review is complete, which we estimate will be in the next 2 to 3 weeks, we will produce any such relevant, responsive documents. Ellen Klaus also testified to Abbott's continuing investigation in this regard.

Home Infusion Services

Abbott has begun its production of HIS documents to the Government, and Ellen Klaus testified about Abbott's continuing investigation relating to this subject. We will produce additional HIS documents and data to DOJ. At this time, I cannot give you a precise date for this production, but we are moving as quickly as we can to gather this information.

CHI-1580751v1

**5-36**

JONES DAY

Renee Brooker
March 23, 2007
Page 4

<u>AMP Documents</u>

Abbott stands by its objections with respect to the Government's request for documents and information relating to the way in which Abbott calculates AMP.

<u>TAP Documents</u>

I do not see where in the transcript of the February 27, 2007 hearing that Judge Saris addressed Abbott's objections with respect to the production of TAP-related documents in this case, as your letter implies.  If you can point me to a passage of the transcript, I am happy to review it.  Otherwise, given that the Government has yet to articulate any basis upon which documents related to a separate company and about a product not at issue in this case are relevant here, Abbott's objections stand.

Sincerely,

s/ Jason G. Winchester

cc:    James R. Daly
       Carol Geisler
       Ann St. Peter-Griffith
       Mark LaVine
       Jim Breen
       Gejaa Gobena

CHI-1580751v1



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*                          Telephone:  (202) 616-3797
*Ninth Floor*                               Telecopier:  (202) 616-3085
*Washington, D.C. 20004*

March 28, 2007

*Via Electronic Transmission*

Mr. Jason G. Winchester
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* 06–CV-11337-
      PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No.
      1456/Civil Action No. 01-12257

Dear Jason:

        This responds to your letter of March 23 regarding Abbott's document production in this
case.  By way of summary, the United States and Relator have been attempting since early
December to obtain documents from Abbott.  In fact, since that time, Abbott has produced only a
couple thousand pages.  We held telephonic meet and confer sessions to narrow our requests on
December 15, 18 and 19.  We sent follow-up correspondence on January 19, January 24,
February 1, and March 7 to clarify our requests and to ascertain Abbott's positions.   In addition,
we sent emails on March 9, March 12, March 19, and March 23.  We have received only
correspondence from Abbott on February 5 and March 23 on these issues, and have not received
additional responsive documents.  As further set forth below, Abbott's document production
efforts have been inadequate, especially in light of the short discovery period in this case.

        In your letter of February 5, you stated "that the remainder of [Abbott's] production will
take place on a rolling basis, the first installment of which you should have received today."
That first installment you referred to consisted of only approximately 2,000 pages.  We have not
received a single additional page in the more than 50 days that have since elapsed.   You also

-2-

claim Abbott was "proactive" and took efforts to "get the majority of documents assembled and produced early in the case as part of its initial disclosures." See February 5 & March 23 letters from Winchester to Brooker & St. Peter-Griffith.  In fact, Abbott expended time to *remove* hundreds of thousands of pages of documents from its AWP collection before producing documents to the United States.  We now know that this involved extra effort on Abbott's part. As you recognize, that issue is the subject of a pending motion to compel and is being addressed by Relator and Abbott in a separate procedure as well.

In correspondence, you repeatedly characterize Abbott's production of its initial disclosures as the "substantial majority of documents we believe are relevant and responsive to DOJs requests."  That claim is dubious in light of the recent testimony of its corporate designee, Ellen Klaus, that Abbott has only begun its searches for many of the materials responsive to the United States' requests.  Ms. Klaus apparently also made clear in her testimony that Abbott was providing Jones Day with production on a rolling basis.  Your recent letter confirms that the delay in producing documents to the United States is ostensibly due to Jones Day engaging in a "responsiveness" review.  Please clarify by April 2, 2007, the exact status of the production.

As for the "timing issue," you misstate two points.  First, the United States did not *ever* withdraw its request for the production of documents created on or after December 31, 2001. See U.S. Motion to Compel Production of Documents still pending, and the United States' last letter on the timing issue dated January 24, 2007 from Brooker to Winchester.  Second, your February 5 letter, to which you refer, is devoid of any mention of this so-called "compromise position" because it simply did not occur.  Judge Saris made it clear at the hearing on February 27, 2007, that the end cut-off should extend at least through the end of 2003.  Transcript, Feb. 27 hearing, page 18-19, 31-32.  We ask that you directly respond to whether Abbott agrees to produce documents created up through at least December 31, 2003, as ordered by Judge Saris.

From the various correspondence on these issues, we understand that Abbott is now agreeing to search for and produce materials pertaining to:

(1)     all relevant documents from the files of its Alternate Site field sales force (we have not received a single page to date);

(2)     lobbying documents (we have not received a single page to date);

(3)     Home Infusion Services documents (we have so far received approximately 2,000 pages);

(4)     All contracts relating to those 100-150 national account customers that you represent accounted for 80% of sales through Alternate Site.  See January 24 Brooker & St. Peter-Griffith letter to Winchester, which you never directly addressed on this topic (we have not received a single page to date);

-3-

We also understand that on relevance grounds Abbott *refuses* to produce the following categories of documents:

(1)     AMP data (notwithstanding Abbott's assertion in its Memorandum of Law in Support of its Motion to Dismiss, at page 12, that the AMPs it reported to the Medicaid Bureau of the Center for Medicare and Medicaid Services were accurate and provide it a "government knowledge" defense; and its now withdrawn Requests for Admissions (e.g., ## 63-68) that ask the United States to admit that its reported AMP information was accurate);

(2)     documents that show how Abbott's compensation and employment review policies were applied to its Alternate Site sales force;

(3)     TAP documents called for by the United States' Second Set of Requests for Production of Documents served on November 16, 2006, #30, which narrowly requested "all documents relating to or otherwise reflecting communications regarding the impact of the 2001 TAP Pharmaceuticals criminal plea and civil settlement on the prices or pricing practices" for [Abbott] drugs;

(4)     *all* documents relating to Vancomycin, including those that pre-date January 1991. You remain unclear whether Abbott is searching for and producing *all* documents relating to vancomycin. See March 23 Winchester letter to Brooker ("...we have agreed to produce documents relating to [Vancomycin] *in accordance with our various objections*...."). In order to clarify, we ask once again that you state directly whether Abbott plans to produce *all* documents related to the marketing and pricing of its drug vancomycin *without limitation*. If Abbott has limited *in any way at all* the search for, or production of, these documents by date, location, or on any other basis, I request that you indicate Abbott's basis for such a limitation;

(5)     documents relating to the 20% of Alternate Site customers. See January 24 Brooker & St. Peter-Griffith letter to Winchester. In fact, the last correspondence on this matter was February 5 where you indicated that you would "consider [the government's] position and respond to you as soon as possible." Your only response after more than a 50 day delay is to ask us to narrow our request, which we have.

This is also to memorialize that Abbott has produced no information to support its conclusory allegations that production of any of these materials is unduly burdensome. For example, you have been promising for months, since our earliest meet and confer session, to perform a simple head count of the size of the HPD field sales force. See February 5, 2007 Winchester letter to Brooker. Surely, it does not take more than 60 days to provide this simple information. Moreover, according to one document Abbott has produced in this case, it had

-4-

approximately 41 sales representatives.  See ABT DOJE0008231 (Presentation to Omnicare by Dennis Walker).  Absent this basic information, the United States is unable to evaluate Abbott's contention that our requests are unduly burdensome.

Please let me know by the close of business on Thursday, March 29 whether you disagree with any of these items or have changed any of your positions regarding the same, so that the United States can consider any or all appropriate remedies.  Thank you for your attention to these issues.

Sincerely,

/s/

Renée Brooker

cc: James Breen

**Brooker, Renee (CIV)**

| | |
|---|---|
| **From:** | Brooker, Renee (CIV) |
| **Sent:** | Wednesday, March 28, 2007 5:49 PM |
| **To:** | 'Jason G. Winchester' |
| **Cc:** | St.Peter-Griffith, Ann (USAFLS); Brian Murray; Chris Cook; Dan Reidy; David Torborg; Gobena, Gejaa (CIV); Jim Breen; Jim Daly; Lavine, Mark (USAFLS); Tina Tabacchi |
| **Subject:** | Document Production Letter |

Jason, I understand that some of it you may have to take back to the client.  But I also suspect that some of my questions, which have been outstanding for some time now, you could respond to right away, which I why I asked you to respond tomorrow.  I am happy to take those responses you have now.  Thanks in advance.  --Renee

Renée Brooker
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
601 D Street NW
Suite 9004
Washington, DC  20004
ph:  (202) 616-3797
fax: (202) 616-3085

-----Original Message-----
From: Jason G. Winchester [mailto:jgwinchester@JonesDay.com]
Sent: Wednesday, March 28, 2007 5:43 PM
To: Brooker, Renee (CIV)
Cc: St.Peter-Griffith, Ann (USAFLS); Brian Murray; Chris Cook; Dan Reidy; David Torborg;
Gobena, Gejaa (CIV); Jim Breen; Jim Daly; Lavine, Mark (USAFLS); Tina Tabacchi
Subject: Re:


Renee -

I received your letter and will respond to it.  Due to other obligations, I may not be
able to meet your unilateral deadline of one business day, however.

J


Jason G. Winchester
Jones Day
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
312.782.3939 (phone)
312.782.8585 (fax)



|  |  |
|---|---|
| "Brooker, Renee \(CIV\)" <Renee.Brooker@usdoj.gov> | To |
| | "Brian Murray" <bjmurray@jonesday.com>, "Chris Cook" |
| 03/28/2007 02:36 PM | <christophercook@jonesday.com>, "Dan Reidy" <dereidy@jonesday.com>, "David Torborg" <dstorborg@jonesday.com>, "Jason Winchester" |

1

<jgwinchester@JonesDay.com>, "Jim
Daly" <jrdaly@jonesday.com>, "Tina
Tabacchi" <tmtabacchi@jonesday.com>
                                    cc
"Jim Breen" <jbreen@breenlaw.com>,
"Gobena, Gejaa \(CIV\)"
<Gejaa.Gobena@usdoj.gov>, "Lavine,
Mark \(USAFLS\)"
<Mark.Lavine@usdoj.gov>,
"St.Peter-Griffith, Ann \(USAFLS\)"
<Ann.St.Peter-Griffith@usdoj.gov>
                                Subject

Counsel:  We would appreciate a response to this letter by close of business tomorrow.
Thank you in advance.

Renée Brooker
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
601 D Street NW
Suite 9004
Washington, DC  20004
ph:  (202) 616-3797
fax: (202) 616-3085
  (See attached file: Doc Production Letter.032807.pdf)

==========
This e-mail (including any attachments) may contain information that is private,
confidential, or protected by attorney-client or other privilege.
If you received this e-mail in error, please delete it from your system without copying it
and notify sender by reply e-mail, so that our records can be corrected.
==========

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number:  (312) 269-4373
jgwinchester@jonesday.com

JP741122                          March 30, 2007
080024-024348

VIA E-MAIL

Renee Brooker
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D Street N.W.
Ninth Floor
Washington, DC 20004

Re:   U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.; 06 CV-
        11337

Dear Renee:

        This letter responds to your correspondence of March 28, 2007.

Status of Abbott's Document Production

        This is a fairly straightforward issue, confounded only by your apparent need to lace
letter after letter with groundless invective and innuendo.  Setting aside the rhetoric, the fact
remains that, quite unlike the situation with the Government's production to Abbott, Abbott has
made substantial progress in completing its document production, and has produced the majority
of relevant, responsive documents.  As I made clear in my letter of March 23, Jones Day is
currently reviewing certain additional documents that have been provided by Abbott, and our
plan is to complete that review within the next 2-3 weeks and make a supplemental production to
the Government.  My letter, and Ms. Klaus' deposition testimony, also outlined for you certain
additional areas where Abbott is conducting an ongoing search for any additional, responsive
materials that have not already been produced to the Government.

Time Period

        In an effort to refresh your recollection, during our meet and confer conference on
January 12, 2007, we talked specifically about Abbott's objection to producing documents dated
after January 2001, based on the time frame alleged in the Complaint.  The Government
proposed to resolve the issue if Abbott would agree to produce documents through December 31,
2001.  When we met and conferred again on January 22, 2007, I indicated that Abbott would
agree to this proposal.  We thus considered the issue to be resolved, as reflected in my letter to

**5-44**

CHI-1581468v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK  •  PARIS  •  PITTSBURGH
SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

JONES DAY

Renee Brooker
March 30, 2007
Page 2

you of February 5, 2007.  In light of these facts, I ask again whether the Government will stand by its earlier position.

<u>Vancomycin</u>

The only remaining dispute I am aware of regarding Abbott's production of documents relating to the marketing and pricing of Vancomycin concerns timeline.  As to pre-1991, we believe that is outside the scope of the Government's case and that Abbott should not be forced to conduct an entirely new search for such aged documents, particularly when Abbott already responded to the 1996 CID, which requested Vancomycin documents dating back to 1986.  As for documents after December 31, 2001, please see the discussion above.  It is also possible that certain documents relating to Vancomycin have been withheld on the grounds of some applicable privilege, but any such designation would be disclosed to the Government in our privilege log.  I am aware of no other basis on which Abbott is refusing to produce Vancomycin marketing/pricing documents.

<u>Alternate Site Sales Force</u>

As we told you during our meet and confer conferences, we are attempting to determine the numbers (and identities) of Alternate Site sales personnel as far back as we can through the relevant period.  Ms. Klaus testified to the status of that effort.  Once we complete that investigation, we will be able to better judge any issues of burdensomeness.

<u>Customer Information</u>

Your letter suggests that the Government has limited its request for documents relating to the thousands of customers that make up the bottom 20% of Alternate Site sales.  (See p. 3, item 5 of your letter.)  In what way has the request been limited?  I need to understand the Government's position in order to respond.

<u>Compensation of Sales Force</u>

Abbott stands by the position articulated in my letter to you of March 23, 2007.

<u>AMP Documents</u>

Abbott stands by its objections with respect to the Government's request for documents and information relating to the way in which Abbott calculates AMP.  There is no inconsistency in Abbott's position in this regard.  The fact that AMP was reported to the Government and is a figure clearly below AWP is directly relevant to the Government's knowledge of pharmaceutical pricing and undermines its allegations of fraud.  This is true without regard to the method by which any such AMP was calculated.

CHI-1581468v1

JONES DAY

Renee Brooker
March 30, 2007
Page 3

TAP Documents

     Despite my specific and repeated request, the Government still refuses to state any basis as to why documents relating to TAP's criminal and civil proceedings relating to Lupron® bear any relevance to this case.  Our objections stand.

IMS Data

     Abbott has IMS data that is responsive to one or more of the DOJ's requests (e.g., No. 55 in Second Request).  As stated in our formal responses, however, this information is proprietary to IMS, and the DOJ will need to reach an agreement with IMS and Abbott in order for us to grant access to the material.  We have not heard further from DOJ on this point.  Please let us know how you wish to proceed.

*    *    *    *

     Finally, the objections Abbott raised to burdensomeness were, and remain, well founded.  Thus, I disagree with the gratuitous statements made in the closing of your letter.  Please let me know if you would like to discuss any of these issues further.

                      Sincerely,

                      s/ Jason G. Winchester

cc:    James R. Daly
        Carol Geisler
        Ann St. Peter-Griffith
        Mark LaVine
        Jim Breen
        Gejaa Gobena

CHI-1581468v1



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*                                    *Telephone: (202) 616-3797*
*Ninth Floor*                                         *Telecopier: (202) 616-3085*
*Washington, D.C. 20004*

April 4, 2007

*Via Electronic Transmission*

Mr. Jason G. Winchester
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* 06–CV-11337-
       PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No.
       1456/Civil Action No. 01-12257

Dear Jason:

       This letter responds to your letter of March 30, 2007, pertaining to Abbott's document
production efforts in this case.  Abbott's initial disclosures were incomplete and omitted relevant
evidence to this case.  Our repeated requests directed at Abbott to produce additional relevant
materials in this case have been straightforward.  Abbott has produced only approximately 2,000
pages of materials in this case since the United States served its First and Second Requests for
the Production of Documents on July 19, 2006 and November 17, 2006.

       Asking Abbott for straight answers on when it will finally produce additional documents
pursuant to document requests that have been pending for eight and a half, and four and a half
months, respectively, does not constitute "invective or innuendo" as your letter claims.  Yet you
refuse to inform us what materials, or volume of materials, we are to expect in the upcoming 2-3
week time period alluded to in your letter.  All we have received from Abbott is a handful of
documents and rhetoric; it is now time to start producing documents.

       <u>Time Period: End Date</u>.  Your correspondence does not reflect any agreement between

-2-

the parties on this matter because there was no such agreement. As you know, Judge Saris made it clear at the hearing on February 27, 2007, that the end cut-off should include at least through the end of 2003.[1]  Transcript, Feb. 27 hearing, page 18-19, 31-32.  Please inform us whether Abbott will be producing documents at least through the end of 2003.

Time Period: Start Date and Vancomycin.  You stated: "As to pre-1991, we believe that is outside the scope of the Government's case and that Abbott should not be forced to conduct an entirely new search for such aged documents, particularly when Abbott already responded to the 1996 CID, which requested Vancomycin documents dating back to 1986."  Please inform us whether Abbott has conducted any new searches for documents relating to Vancomycin since the time the United States served its 1996 CID, and if so, the dates and extent of the searches.

Further, please let us know whether Abbott can represent that it has searched for and produced to the United States all documents relating to Vancomycin that are responsive to the United States' First and Second Requests for Production.

Alternate Site Sales Force.  You stated: "....we are attempting to determine the numbers (and identities) of Alternate Site sales personnel as far back as we can through the relevant period."  Abbott has been making this promise for months now.  Please inform the United States on Friday when it can expect the identities of all Alternate Site sales personnel during the relevant time period and a production date for documents Abbott plans to produce from those sales personnel's files.  Also inform us what documents falling within this category Abbott plans to withhold on relevance grounds.

AMP Documents.  We understand that Abbott will not produce its AMP data even though it places at issue the accuracy of its AMP data provided to HCFA/CMS, and has indicated that it will ask the United States to admit the accuracy of its AMP data.

Compensation of Sales Force.  We understand Abbott will not produce any documents that show how Abbott's compensation and employment review policies were applied to its Alternate Site sales force.

Customer Information.  We understand Abbott will not produce documents covering its relationship with 20% of Alternate Site's customers.

TAP documents.  Contrary to your statement that the United States has not provided Abbott with any indication of the relevance of these documents, the United States has done so in numerous meet and confer sessions on this subject.  We requested "all documents relating to or

---

[1]Depending upon the upcoming depositions of Abbott's witnesses, and Abbott's document production, the United States may have a basis to argue that certain documents or categories of documents created on or after 2003 should also be produced.  We reserve our rights in that regard.

**5-48**

-3-

otherwise reflecting communications regarding the impact of the 2001 TAP Pharmaceuticals criminal plea and civil settlement on the prices or pricing practices" for Abbott's drugs. The relevance of these materials should be obvious. They are relevant because Abbott changed its pricing policy for its Hospital Products Division ("HPD") drugs at the same time TAP – a joint venture between Abbott and Takeda Pharmaceuticals – was under investigation by the federal government for similar pricing fraud conduct.

In addition to these TAP-related documents, the United States asks that you collect and produce documents by Friday relating to or otherwise reflecting communications regarding the impact on the prices or pricing practices for Abbott drugs of the October 31, 2000 letter from Congressman Peter Stark to Miles White, then CEO of Abbott, raising concerns about Abbott's fraudulent pricing practices. As the letter is directed to Abbott's CEO, such documents are directly responsive to Request #26 of the United States' Second Request for Production. These requests have been pending since mid-November 2006, and presumably Abbott has collected the responsive documents. We ask that Abbott produce the documents by Friday or inform the United States that it will not be producing these clearly relevant documents.

IMS Data. The United States worked out similar issues with third parties before producing third party materials to Abbott. We expect Abbott to do the same. Please contact IMS and let us know the status of discussions you have with them on this issue as soon as possible.

Medicare Working Group Documents. We learned at the recent deposition of Virginia Tobiason of the existence of Abbott's Medicare Working Group ("MWG"), and that documents pertaining to the MWG were created, including but not limited to, meeting minutes. See TX Ex. 546, TXABT 673723-674367 ("Since Medicare seems to be 'heating up', our working group seems interested in continuing to meet, and others are becoming interested in what we are doing, Jim and I would like to find a way to communicate outside of our working group. To that end, we are thinking about documenting each of our working group meetings (via minutes) and using this as a communications tool.") We are troubled that Abbott has not produced to the United States any documents related to the MWG. Please inform us by Friday whether and when Abbott will be producing the universe of these clearly relevant documents.

We further request that Abbott produce on Friday a copy of the revenue sharing agreement entered into between Abbott and Baylor in October 1997, which is referenced in the Baylor Audit Report attached as an exhibit to Ms. Tobiason's deposition. See ABT-DOJ 0226598-599.

Lobbying Documents. We understand from your correspondence, and the deposition of Ms. Klaus, that Abbott is searching for documents that are responsive to Request ##66-68 of the United States' Second Request for Production. We ask that by Friday Abbott inform the United States when it will be producing these relevant materials, and the anticipated volume of documents. Please also inform us what documents falling within this category Abbott plans to withhold on relevance grounds.

-4-

Burdensomeness Objections.  You state: "...the objections Abbott raised to burdensomeness were, and remain, well founded.  Thus, I disagree with the gratuitous statements made in the closing of your letter."  I pointed out in the closing of my letter that Abbott has supplied no information to evaluate any claims that production would be unduly burdensome.  Your recent letter still does not provide any support.  Moreover, at the recent deposition of Abbott's corporate designee on its document production in this case, you repeatedly instructed Ms. Klaus not to respond to questions related to the burden associated with the document searches or production.  *See* Deposition of Ellen Klaus, March 15, 2007 at 280-292, 372-379.  As a result, Ms. Klaus could provide no information on the document searches in order to support Abbott's objection.  Had Abbott provided information in any format of the burdensome nature of the document searches, the United States would have been able to consider it.

We would appreciate a direct response to the issues in this letter no later than Friday, April 6 given the number of months they have been outstanding.

Sincerely,

/s/

Renée Brooker

cc: James Breen