# EXHIBIT 9

Page 187

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL | ) | |
| INDUSTRY AVERAGE WHOLESALE | ) | |
| PRICE LITIGATION | ) | |
| ............................ | ) | MDL DOCKET NO. |
| | ) | Civil Action |
| THIS DOCUMENT RELATES TO: | ) | 01CV12257-PBS |
| ALL ACTIONS | ) | |
| ............................ | ) | |

      The deposition of ELLEN TRACY KLAUS, called by the Defendants for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before ROBIN M. CHIMNIAK, a Notary Public within and for the County of DuPage, State of Illinois, and a Certified Shorthand Reporter of said State, taken at 77 West Wacker Drive, Suite 3500, Conference Room C, Chicago, Illinois, on the 15th day of March, 2007, at the hour of 9:39 a.m.

Page 280

1         (Witness examines
2           document.)
3  BY MS. ST. PETER-GRIFFITH:
4     Q. Okay. With regard to this second request
5  for production, has Abbott produced all documents
6  responsive to the second request for production?
7         MR. WINCHESTER: Object. It's been asked
8  and answered.
9         THE WITNESS: As -- as we had talked about
10 yesterday and a little bit today, Abbott is still
11 undergoing searching efforts in various categories
12 that I had tried to mention all of them, and those --
13 those collection efforts are ongoing.
14 BY MS. ST. PETER-GRJFFITH:
15    Q. Okay. Can you identify whether any of the
16 requests for production set forth in the second
17 request to produce have been fully produced subject to
18 Abbott's objection?
19        MR. WINCHESTER: Object to the form.
20        THE WITNESS: We have an ongoing document
21 search, and we -- anything that we have located that
22 was potentially responsive so far has been provided to

Page 281

1  Jones Day and we're continuing those collection
2  efforts. Anything that was not objected to and
3  responsive has been provided by Jones Day.
4  BY MS. ST. PETER-GRIFFITH:
5     Q. But can you identify whether there are any
6  requests for production for which Abbott has fully
7  responded, subject to objections?
8         MR. WINCHESTER: Object to the form.
9         THE WITNESS: I can't.
10 BY MS. ST. PETER-GRIFFITH:
11    Q. Okay. Do you know when your search is
12 going to be complete?
13        MR. WINCHESTER: Objection, asked and
14 answered.
15        THE WITNESS: I had mentioned yesterday I
16 can't guess.
17 BY MS. ST. PETER-GRIFFITH:
18    Q. Okay. We can move on to a different line.
19 If you could look at page -- I've put in front of you
20 Exhibit Klaus 001 -- oh, actually I've got one more
21 question with regard to the production request from
22 the United States under the first or second request

Page 282

1  for production.
2         What, if any, evaluation did Abbott
3  undertake concerning the burdensomeness of any of the
4  requests in Request For Production 1 and Request For
5  Production 2?
6         MR. WINCHESTER: I would instruct you not
7  to answer that question to the extent it would have to
8  reveal the contents of discussions you've had with
9  counsel for Abbott.
10        THE WITNESS: I -- I can't answer that
11 question.
12        MR. BREEN: Objection, nonresponsive.
13 BY MS. ST. PETER-GRIFFITH:
14    Q. Why can't you answer the question?
15    A. It involves conversations with counsel.
16    Q. Well, outside of your conversations with
17 counsel, what efforts did Abbott undertake, if any, to
18 evaluate the burdensomeness of any of the requests to
19 produce served in this case by the United States?
20        MR. WINCHESTER: I would again instruct you
21 not to answer the question to the extent it would
22 require you to reveal conversations with counsel or

Page 283

1  analyses you've conducted at the direct request of
2  counsel.
3         THE WITNESS: I can't answer that under
4  advice of counsel.
5  BY MS. ST. PETER-GRIFFITH:
6     Q. So you -- is it -- have you done any
7  evaluation as to the burdensomeness?
8         MR. WINCHESTER: It's the same instruction.
9         MS. ST. PETER-GRIFFITH: I'd like to find
10 out what the basis is for the instruction. We're here
11 on a 30(b)(6) for identifying what this -- what this
12 party has done with regard to their production.
13            (Discussion off the record
14             between cocounsel for the
15             plaintiff.)
16 BY MS. ST. PETER-GRIFFITH:
17    Q. In its responses to the requests for
18 production in this case, Abbott has asserted a
19 burdensomeness objection. Do you understand that?
20    A. Yes.
21    Q. Or is that your understanding?
22        Is Abbott prepared to or can Abbott provide

Page 284

1  any testimony concerning -- concerning that
2  assertion -- or supporting that assertion?
3      MR. WINCHESTER: Again, I would give you
4  the same instruction. These are legal objections that
5  have been made, and the evaluation of legal objections
6  and legal defenses and strategies in the case I
7  believe to be a matter of privilege and work product.
8      To the extent you can answer the question
9  without revealing conversations or discussions or
10 activities undertaken at the direct request of
11 counsel, you can answer the question, but I don't want
12 you to reveal any of that type of information.
13     THE WITNESS: I -- I can't answer the
14 question --
15 BY MS. ST. PETER-GRIFFITH:
16     Q. You can't --
17     A. (Continuing) -- on the direction of
18 counsel.
19     Q. You can't answer the question at all as to
20 what Abbott's burdensomeness evaluation was or what
21 anal- -- burdensome analysis it undertook in this
22 case?

Page 285

1      A. It involved conversations with counsel.
2      Q. Can you provide any testimony about the --
3  any operational burdensomeness associated with the
4  production -- the production requested by -- in the
5  United States's first and second request for
6  production?
7      MR. WINCHESTER: Object to the form.
8      THE WITNESS: I don't understand what you
9  mean by "operational burdensome."
10 BY MS. ST. PETER-GRIFFITH:
11     Q. Is there any business reason or operational
12 reason why undertaking the production that's requested
13 by the United States would be overburdensome?
14     A. I guess I just don't understand the
15 question.
16     MS. ST. PETER-GRIFFITH: Can you read it
17 back, please?
18     THE REPORTER: "Question: Is there any
19 business reason or operational reason why undertaking
20 the production that's requested by the United States
21 would be overburdensome?"
22     THE WITNESS: I -- I guess I just -- I

Page 286

1  don't know -- I don't know. I don't understand.
2  BY MS. ST. PETER-GRIFFITH:
3      Q. Is there any business reason why you can't
4  undertake the searches that are required to respond to
5  the first or second request for production from the
6  United States?
7      MR. WINCHESTER: Object to the form.
8      THE WITNESS: Well, I'm not -- I'm not sure
9  what you mean by "business reason," but as I had
10 testified before, we interview and have interviewed
11 many individuals searching for documents that are in
12 many different document requests, including these, and
13 we -- and locate potentially relevant documents and
14 have provided that to Jones Day.
15 BY MS. ST. PETER-GRIFFITH:
16     Q. Okay. But is there any business reason why
17 you can't respond to the request for production
18 propounded by the United States?
19     MR. WINCHESTER: Object to the form of the
20 question.
21     THE WITNESS: I'm still not understanding
22 "business reasons." We -- we have undergone

Page 287

1  interviews with individuals, as I had stated before,
2  document -- our collection process to locate any
3  potentially responsive documents --
4  BY MS. ST. PETER-GRIFFITH:
5      Q. Okay.
6      A. (Continuing) -- throughout the --
7  throughout the years.
8      Q. So you're undertaking that -- that review
9  at --
10     A. We are currently undertaking -- we are
11 currently searching for documents.
12     Q. And there are no business or operational
13 reasons as to why you can't undertake that -- that
14 search?
15     MR. WINCHESTER: Object to the form.
16     THE WITNESS: Again, I -- I'm still not
17 grasping "business reasons" or -- I guess I'm not
18 exactly sure -- I -- I don't know how to answer that.
19 I don't understand.
20 BY MS. ST. PETER-GRIFFITH:
21     Q. Okay. What don't you understand?
22     A. I mean, I've explained we have -- have

Page 288

1  interviewed many individuals throughout the years for
2  document collection purposes and locate -- any
3  potentially relevant documents have been located and
4  collected and sent to Jones Day, and we're still --
5  we're undergoing various, as I had mentioned before,
6  efforts to continue to search for documents.
7      Q.  Has there been any business or operational
8  -- operational impediment to your efforts in that
9  regard?
10         MR. WINCHESTER:  Object to the form.
11         THE WITNESS:  We're still undergoing
12  searches for documents, so . . .
13  BY MS. ST. PETER-GRTFFITH:
14     Q.  Is there any business -- business reason
15  why you can't undertake that search?
16     A.  We are continuing searching for documents
17  and continuing our search and interviewing
18  individuals.
19     Q.  But can you answer my question yes or no,
20  whether there is any business reason why you can't
21  undertake those searches?
22     A.  I can't work --

Page 289

1          MR. WINCHESTER:  I'd also object to the
2   form of the question.  It's been asked and answered.
3          You can answer again.
4          THE WITNESS:  We're continuing our search
5   and invest- -- and interviewing individuals.
6   BY MS. ST. PETER-GRIFFITH:
7      Q.  Okay.  Do you see anything that could
8   impede that -- that search?
9          MR. WINCHESTER:  Object to the form.
10         THE WITNESS:  I can't predict anything.
11  I -- we're continuing our search and speaking with
12  individuals and attempting to locate information.
13  BY MS. ST. PETER-GRIFFITH:
14     Q.  And is Abbott aware of any reason why --
15  why that search can't continue?
16     A.  We're currently undergoing searches.
17  They're in process --
18     Q.  Okay.
19     A.  (Continuing) -- for --
20     Q.  And there are no problems associated with
21  that for business or operational reasons?
22         MR. WINCHESTER:  Object to the form.  It's

Page 290

1  been asked and answered.
2          THE WITNESS:  We're currently undergoing
3  searches as we speak.  They're in progress.
4  BY MS. ST. PETER-GRTFFITH:
5      Q.  Okay.  And my question is -- it's pretty
6  straightforward, I think.
7          Are there any impediments to your doing
8  that?
9          MR. WINCHESTER:  Object to the form.
10         THE WITNESS:  I -- I -- we're currently
11  searching.  I can't -- you know, we're currently
12  investigating.  We're currently talking to people.
13  We're currently searching.  It's in progress.  I'm not
14  sure what more --
15  BY MS. ST. PETER-GRTFFITH:
16     Q.  As you're progressing through the process,
17  are there any -- any impediments that are causing, you
18  know, a hardship or a burden to Abbott in identifying
19  collecting, and preserving this information?
20         MR. WINCHESTER:  Object to the form.
21         THE WITNESS:  You know, we're currently
22  searching.  I'm -- and gathering information,

Page 291

1  gathering any documents and relevant information.
2  BY MS. ST. PETER-GRIFFITH:
3      Q.  Okay, but my question is, are there any
4  hardships or any problems associated with your doing
5  that?
6          MR. WINCHESTER:  Objection to the form.
7          THE WITNESS:  I -- I can't -- I can't -- I
8  don't -- at this point I can't answer that question.
9  BY MS. ST. PETER-GRTFFITH:
10     Q.  Okay.  Why not?
11     A.  Because we're currently searching and we're
12  currently investigating and we're currently talking to
13  people about the additional document requests.
14     Q.  Okay.
15     A.  So we're continuing our search.  We're
16  continuing to talk to people.
17     Q.  Do you know -- can you identify how
18  complete your search is?  Do you have a percentage
19  that you can assign to it?
20         MR. WINCHESTER:  Object to form.
21         THE WITNESS:  I can't.  As I had mentioned
22  yesterday, as we continue to talk to people and as we

**Page 292**

1  continue to get additional information, there's no way
2  to predict right now, as I sit here, how much more
3  time is left, what is -- you know, what -- you know,
4  for -- what more is out there, who else we have to
5  talk to.
6  BY MS. ST. PETER-GRIFFITH:
7      Q. But have you done the bulk of the work to
8  date?
9      A. We've collected documents since 1996
10 throughout all the -- all the years and have done --
11 have provided many documents to Jones Day.
12     Q. Okay.
13     A. And I -- I don't know -- we're continuing
14 to search for new requests that have come in, and I
15 don't know -- as we're continuing to search, I
16 don't -- I can't tell you what the volume of
17 information is going to be because we're continuing to
18 search and continuing to talk to people.
19     Q. Okay. If you could look at Exhibit Klaus
20 001, please. I'd like to go through this, this stack
21 with you, and let me ask you first -- and if you need
22 time to look through it, please, you know, feel free

**Page 293**

1  to take the time.
2          But is this the complete stack of memoranda
3  that has informed or controlled Abbott's document
4  collection, production, and retention that's
5  responsive to requests from the United States from '96
6  to the present?
7          MR. WINCHESTER: Object to the form.
8          THE WITNESS: These are all the document
9  preservation memos that have been sent out for 19- --
10 from 1996 to the present in this matter.
11 BY MS. ST. PETER-GRIFFITH:
12     Q. Okay. Are there any other memos out there?
13     A. In this matter?
14     Q. Yes.
15     A. No.
16     Q. And if we could look at the first -- the
17 first memo, which I believe goes from -- it's
18 Abbott-DOJ 0228265, and does it end at 0228268? Is
19 that the first memo? Or 26 -- yeah, 268.
20     A. No.
21     Q. Where does it end?
22     A. 267.

**Page 294**

1      Q. 267, okay. So the distribution list that's
2  268, that's -- that is for the next memo?
3      A. Correct.
4      Q. Okay. And can you tell me who drafted this
5  document?
6      A. I don't know who drafted it. It came from
7  Sharon Jones.
8      Q. Okay. Could Ms. Jones have drafted it?
9      A. She could have.
10     Q. And who is Ms. Jones?
11     A. She was an attorney in the Abbott
12 litigation department.
13     Q. Okay. Were you familiar with this document
14 in February of '96?
15     A. I may have been. I don't recall.
16     Q. Okay. The distribution list for this
17 particular memo, can you identify where it is on the
18 memo?
19     A. The distribution list is in the "TO" field
20 on the first page.
21     Q. Okay. And then the CC, would that person
22 have also received it?

**Page 295**

1      A. Yes.
2      Q. Okay. And can you identify why these
3  individuals were identified as being recipients of
4  this memorandum?
5      A. I don't know why Sharon picked these
6  individuals, but these individuals are, as I had
7  mentioned before, the top divisional managers within
8  the hospital products organization.
9      Q. Okay. And would they be responsible for
10 disseminating this memoranda to the employees that are
11 under them?
12     A. Yes, per the direction of the memo.
13     Q. Okay. And you have no reason -- do you
14 have any reason to believe that this memo was not --
15 the instructions in this memo were not followed?
16     A. I have no reason to believe that the
17 instructions were not followed.
18     Q. Is the -- was this memo generated in
19 response to the '96 CID?
20     A. Yes.
21     Q. And you testified earlier that -- that this
22 whole memo has never been lifted; correct?

Page 372

1   Jones Day that we have gone out and are pursuing some
2   additional information from the sales organization.
3       Q.   All right. But is it your testimony here
4   today that whatever you're looking for now is
5   different than what you were testifying to in an
6   affidavit in Texas back in 2005?
7       A.   Again, I don't recall. I don't have the
8   affidavit in front of me. I don't recall all the --
9   what information was collected specifically and for
10  what reason. So I can't -- I can't answer that
11  question.
12              (Whereupon Ms. Lyke reenters
13               the room.)
14  BY MR. BREEN:
15      Q.   What do you mean by it's different? You
16  just said something was different. What's different?
17      A.   Well, you had read a total of Abbott reps.
18      Q.   Right.
19      A.   We are not looking for a total of Abbott
20  reps.
21      Q.   You are looking for some subset of the
22  total of Abbott reps; right?

Page 373

1       A.   We have gone to the HPD organization or
2   former HPD organization seeking information.
3       Q.   Okay. And isn't the information you're
4   seeking the number of current or former HPD sales
5   reps?
6       A.   Partially.
7       Q.   Okay. And isn't that a subset of the total
8   number of Abbott sales reps that you testified to in
9   your affidavit back in 2005?
10      A.   It -- again, I don't know how that
11  information was collected. I don't recall how the
12  information was collected as I sit here today and what
13  the parameters were and what -- what purpose it was.
14  So I can't -- I can't answer that question.
15      Q.   What information would you review in order
16  to be able to answer the question as to whether or not
17  you're looking for a number of sales reps that is a
18  subset of the total number of 4,600 you testified to
19  the Texas court about in February of 2005?
20          MR. WINCHESTER: Object to the form.
21          THE WITNESS: Again, the information that
22  we're looking for now is related to the hospital

Page 374

1   products division only.
2   BY MR. BREEN:
3       Q.   My question is, what information do you
4   have to look at to determine whether that is a subset
5   of the total Abbott sales people, which you said were
6   4,600?
7           MR. WINCHESTER: Object to the question,
8   the form of the question.
9           THE WITNESS: I don't know. I mean, I --
10  I -- I don't know if we have any -- if I have any
11  information we could look at.
12  BY MR. BREEN:
13      Q.   Now, earlier Ms. St. Peter-Griffith asked
14  you about whether you're aware of any information --
15  other than your conversations with your lawyers, which
16  I don't want to hear about -- if you, Abbott, are
17  aware of any information that would indicate that the
18  government's requests for information, had it not yet
19  been answered, are somehow overly burdensome. Do you
20  remember that question?
21      A.   Yes.
22      Q.   And I believe you testified that you don't

Page 375

1   have any information, other than your discussions with
2   counsel, which you're not going to testify about, and
3   I'm not going to ask you to; is that correct?
4           MR. WINCHESTER: Objection,
5   mischaracterizes the testimony. It's also been asked
6   and answered.
7           THE WITNESS: Well, I believe I also said
8   that we are continuing to search for documents and
9   information and interviewing individuals. So it's --
10  I don't have anything more to -- to say.
11  BY MR. BREEN:
12      Q.   Okay.
13      A.   I don't know anything more.
14      Q.   All right. So --
15      A.   It's a continuing search.
16      Q.   Okay. From a factual perspective, then,
17  when Abbott Laboratories says it's overly burdensome
18  to respond to the government's discovery requests,
19  what it means is it's going to go interview people and
20  look for documents, and that's the only information
21  that you got as to how it's overly burdensome?
22          MR. WINCHESTER: Object to the form of the

Page 376

1  question. Also to the extent it's calling for a legal
2  interpretation of a burdensomeness objection made in a
3  lawsuit.
4       MR. BREEN: I will stipulate that I am not
5  asking for a legal determination. I'm asking for a
6  factual determination. If it's burdensome to this
7  company, I have a right to know how it's burdensome to
8  this company.
9       THE WITNESS: We are continuing our search
10 for information and documents and interviewing people,
11 and it's a -- a continued search that we've been
12 undergoing to respond to these -- or to look at these
13 requests.
14 BY MR. BREEN:
15   Q. And is -- is it Abbott Laboratories -- is
16 Abbott Laboratories saying -- you being Abbott
17 Laboratories -- that it's overly burdensome to have to
18 do that, what you just said you're doing?
19      MR. WINCHESTER: I'll object, again, on the
20 same basis. That there is no way to cleave this down
21 to a particular factual basis versus a legal basis.
22 These are legal objections that have been made.

Page 377

1  Through all these questions you're basically asking
2  her to interpret the bases of a legal objection that's
3  been made.
4       MR. BREEN: Well, let me try it this way.
5  BY MR. BREEN:
6    Q. Have you ever given an affidavit to a court
7  where you said under oath that responding to discovery
8  would be overly burdensome?
9       MR. WINCHESTER: Object to the question as
10 outside the scope of the notice.
11      THE WITNESS: I don't recall it verbatim,
12 the affidavits that I've signed in the past.
13 BY MR. BREEN:
14   Q. I'm not asking you to recall verbatim. I'm
15 asking if you've ever sworn under oath that responding
16 to a discovery request would be overly burdensome to
17 Abbott and explained why?
18   A. I don't --
19      MR. WINCHESTER: Same objection.
20      THE WITNESS: I don't recall.
21 BY MR. BREEN:
22   Q. Do you recall in the -- in the Texas case,

Page 378

1  in the same affidavit I was referring to earlier,
2  saying that -- with respect to these 4,600 sales
3  representatives that are counted in your affidavit
4  (reading):
5       "These sales representatives and their
6  files are located in hundreds of locations throughout
7  the United States. The process would be extremely
8  difficult, expensive, and time consuming. Based on my
9  prior experience, I estimate that if we hired five
10 temporary attorneys, it would take us over two months
11 to search the files of just 100 sales representatives
12 for information relating to the identified drugs.
13 Compliance with plaintiffs request that they have
14 required search the files of over 4,600 sales
15 representatives would be extremely disruptive to
16 Abbott's business operations."
17      Do you ever recall giving an affidavit
18 under oath and stating words to that effect?
19   A. I do recall that.
20      MR. WINCHESTER: Before you go on, object
21 to the question, again, as outside the scope of the
22 notice.

Page 379

1       Go ahead.
2       THE WITNESS: Sorry. I do recall that.
3  BY MR. BREEN:
4    Q. All right. Now, that was a response to the
5  discovery request that was provided by the Texas
6  attorney general; correct?
7       MR. WINCHESTER: Objection as outside the
8  scope of the notice.
9       THE WITNESS: I don't remember.
10 BY MR. BREEN:
11   Q. That was not in response to discovery
12 requests tendered by the United States of America
13 though, was it?
14   A. I -- I don't remember.
15   Q. Well, let me ask you this question. As
16 Abbott Laboratories' corporate designee today, are you
17 aware of any other factual information, other than
18 what you've testified to today and yesterday, that
19 would indicate that responding and complying with the
20 government's discovery requests, any of them that are
21 outstanding, would be overly burdensome to Abbott
22 Laboratories?