


UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Master File No. 01-CV-12257-PBS<br>Judge Patti B. Saris |
| This Document Relates to:<br>01-CV-12257-PBS | Chief Mag. Judge Marianne B. Bowler |

**DECLARATION OF STUART FULLERTON**

Stuart Fullerton declares and says:

1. I am Senior Litigation Counsel at AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "the Company"), 1800 Concord Pike, P.O. Box 15437, Wilmington, Delaware 19850. I make this declaration in support of AstraZeneca's Opposition to Plaintiffs' Motion to Compel and for Finding that Documents and Testimony Related to AstraZeneca's Pricing, Marketing and Sales of its Products Are Not Protected by the Attorney-Client Privilege. I am knowledgeable about the matters described below.

2. I joined one of AstraZeneca's predecessor companies, Zeneca Inc. ("Zeneca"), in July 1995. At that time, and continuing to this day, I was a member of the Litigation Section of the Legal Department. As was true at the time I joined Zeneca, and continuing to this day, the Legal Department was headed by the General Counsel, Glenn Engelmann. One of the Assistant General Counsels reporting to Mr.




Engelmann, Laura Davies, is the head of the Litigation Section. At all times during my employment by AstraZeneca or Zeneca, I reported to Laura Davies.

3. Also reporting to Mr. Engelmann are a number of additional Assistant General Counsels, each with responsibility for providing legal advice to certain therapeutic areas, products or functional areas. Reporting to these Assistant General Counsels are the "commercial" attorneys in the AstraZeneca Legal Department. As with the Assistant General Counsels they report to, these lawyers have responsibility to provide legal advice to the various product teams and other functional areas.

4. The lawyers in the Litigation Section are specifically responsible for handling litigation and claims for and against the Company, both existing and prospective. This is the case today and has been since I joined the Company in 1995.

5. My specific responsibilities within the Litigation Section involve the handling of government investigations and claims, internal investigations, and certain complex commercial disputes and claims, including the AWP cases.

6. Prior to joining Zeneca, I was similarly involved in government investigations and complex commercial litigation as an associate at various law firms. In addition, from 1990 through 1993, I was a Trial Attorney with the Civil Fraud Section at the U.S. Department of Justice in Washington D.C. In that capacity, I handled civil suits and investigations to recover funds fraudulently obtained from the federal government, typically involving claims under the False Claims Act.

7. Beginning in November 1997, with the receipt of the initial subpoena from the Office of Inspector General of the U.S. Department of Health and




Human Services, I was and continue to be the attorney at AstraZeneca with responsibility for handling the government's investigation into the marketing and sale of Zoladex (goserelin acetate implant). This is the investigation that ultimately led, in May 2003, to a global settlement with federal and state governments relating to Zoladex marketing and sales practices.

8. In addition, starting with the filing of the initial complaint in *Citizens for Consumer Justice v. Abbott Labs.*, 01CV-12257-PBS, in 2001, I was and continue to be the attorney at AstraZeneca with primary responsibility for handling the AWP MDL pending before this Court and related AWP litigations nationwide.

9. In my role as Senior Litigation Counsel at AstraZeneca, I do not sit on or regularly participate in any of the product or functional leadership teams. Unlike the commercial attorneys, I do not regularly provide legal advice to any product or functional team. Instead, any interactions I have with the product teams or functional business groups (outside of Legal) are in relation to a specific claim or investigation, or in anticipation of the same.

10. During the course of the government investigation into Zoladex marketing and sales practices, I have on various occasions provided advice or direction to various members of AstraZeneca product teams or functional business groups on matters specifically relating to the government investigation and related civil claims. These discussions included, from time to time, conversations with John Freeberry, AstraZeneca's Director of Pricing Strategy. Any such communications took place in the context of providing guidance and legal advice to the Company concerning the government investigation or the AWP litigation.




11. In addition to conversations with Mr. Freeberry, it is my understanding that plaintiffs have also inquired into any communications I have had with counsel for other pharmaceutical manufacturers relating to AWP or pharmaceutical pricing. Any discussions relating to AWP or pricing I have had took place in the context of defending the Company in the nationwide AWP litigation and were made pursuant to a joint defense agreement specifically protecting the communications as joint defense communications. The purpose of all such communications was to further the joint defense effort of the parties to that agreement.

12. It is also my understanding that plaintiffs have inquired into any internal group presentations I have made while at AstraZeneca. Apart from presentations to the Legal Department as well as, from time to time, training presentations to various groups of employees on Fraud & Abuse and pharmaceutical Compliance issues, any such presentations were related to specific, ongoing or potential claims or investigations.

13. Plaintiffs have also requested documents concerning any discussions or interactions I have had with external price reporting services. I have no such documents.

14. Finally, plaintiffs have requested documents relating to any presentations I have made to external audiences relating to pharmaceutical sales, marketing or pricing. I have on multiple occasions presented at various health care conferences. At each of these conferences, I was appearing in a personal capacity,




not as a representative, spokesman or agent of AstraZeneca. At each conference, as is typical, a disclaimer to this effect was made at the beginning of the presentation.

15. At no point during my employment with AstraZeneca have I intended my advice to violate, facilitate the violation of or conceal the violation of any law.

16. I declare under penalty of perjury that the foregoing is true and correct.

By: /s/ Stuart Fullerton
Stuart Fullerton

Dated: February 24, 2005