UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT TO RESPOND TO THE UNITED STATES' FIRST SET OF INTERROGATORIES**

The United States of America, through its undersigned counsel, respectfully files this

Motion to Compel Abbott to Respond to the United States' First Set of Interrogatories

("Interrogatories") and states:

## I.  PRELIMINARY STATEMENT

Abbott has continually asserted that discovery can be completed expeditiously in this

case.[1]  By asserting very broad-based general and specific objections to the United States'

Interrogatories, however, Abbott has largely failed to respond to these Interrogatories to date.

The discovery sought by the United States' Interrogatories is fundamental, especially in

this early stage of discovery and at a time when Abbott has yet to answer the Complaint.[2]  One

of the purposes of these requests is to define the breadth of Abbott's conduct.  Thus, it is

essential that the discovery not be limited by Abbott's self-serving and restricted view of

---

[1] The Court has ordered that discovery in this case be completed by December 31, 2007.

[2] Because a motion to dismiss is pending, Abbott has not yet filed an answer to the Complaint.

1

relevancy, its claims of burden or its other unfounded objections.  For these reasons, and those stated more fully below, the United States respectfully requests that the Court overrule Abbott's objections to the United States' Interrogatories and that it require Abbott to respond in full.

## II.  STATEMENT OF FACTS

The United States served its Interrogatories on November 17, 2006.  Ex. 1.  The Interrogatories seek basic factual information falling into three general categories:  (1) the identification of various persons with relevant information, (2) communications on specific issues with third-parties, including communications with pricing publications, third-party payors and Abbott employees; and (3) the identification of all facts upon which Abbott relied to support each denial or partial denial to the United States' First Requests For Admission.

Abbott served its Response to the Interrogatories on January 5, 2007, asserting substantially the same objections that it has asserted related to all of the discovery propounded by the United States upon Abbott to date.   Ex. 2 (Abbott Laboratories, Inc.'s Responses to the United States' First Set of Interrogatories ("Abbott's Responses")).

In connection with its Interrogatories and other pending discovery, the United States has attempted, unsuccessfully, to negotiate compromise positions on Abbott's numerous objections. The parties met and conferred on January 31, 2007 regarding Abbott's Responses to the United States Interrogatories.  Following the meet and confer, the United States and Abbott continued to attempt to resolve the areas of disagreement related to Abbott's Responses.  *See* Ex. 3 (February 8, 2007 Letter to Toni-Ann Citera and February 28, 2007 Letter to Mark A. Lavine) at 1-9. Having reached an impasse with Abbott, the United States now seeks the Court's assistance in compelling Abbott to respond in full to these Interrogatories.

## III.  ARGUMENT

This memorandum first addresses Abbott's general objections and then addresses the

2

specific objections made by Abbott to particular Interrogatories.

### A.      Abbott's General Objections

#### 1.      Relevancy and Burdensomeness

Abbott objects generally to the United States' Interrogatories on grounds that the requested discovery is "overly broad, unduly burdensome" and "not relevant to the subject matter of this action . . . .".  *See e.g.,* Ex. 2 (Abbott's Responses) at ¶¶ 1, 8, 9-12.  Abbott's relevancy objections are not well founded.  The standard for obtaining discovery is clear; parties may obtain discovery regarding any matter, not privileged, which is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); *Matthews v. Allen,* 2006 WL 2228845 at *1 (D. Mass. 2006).  "[R]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This is so because, "[M]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (quoting *Hickman*).  "As a general matter, relevancy must be broadly construed at the discovery stage, that is, information is discoverable if there is any possibility it might be relevant to the subject matter of the action . . . . 'Relevant information includes any matter that is or may become an issue in the litigation.'" *Whittingham v. Amherst College*, 164 F.R.D. 124, 126-27 (D. Mass. 1995) (internal citations omitted).  For these reasons, Abbott's relevancy objections should be overruled.

With respect to its burdensomeness objections, Abbott has identified no undue burden except in vague conclusory terms.  *See AAB Joint Venture v. United States*, 2007 WL 646158 at *11 (Ct. Fed. Cl. 2007) ("[A] mere statement that the interrogatory . . . is burdensome . . . has been held inadequate.  Some court[s] have even required the objecting party to produce affidavits or offer other evidence to show the nature of the burden."); *Josephs v. Harris Corp.*,

677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was . . . . 'burdensome'. . . is not adequate to voice a successful objection to an interrogatory.  On the contrary, the party resisting discovery 'must show specifically how . . . each question is overly broad, burdensome, or oppressive.'").  The party opposing discovery has the burden of demonstrating that the discovery is unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence.  *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 316, 325-26 (D. D.C. 2000) (the party objecting bears the burden of showing why relevant discovery should not be permitted); *Bennett v. La Pere,* 112 F.R.D. 136, 140 (D. R.I. 1986).  Abbott has failed to make any such showing and should, therefore, be compelled to fully respond to the United States' Interrogatories.

### 2.     Time Period

Abbott seeks to limit discovery to January 1991 through December 2001, the time period for which the United States alleges damages in the Complaint.   Abbott's objections, however, amount to nothing more than further objections based upon relevance, and derive from the incorrect premise that discovery must be limited to the precise parameters of the allegations of the complaint.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[D]iscovery is not limited to issues raised by the pleadings . . . .  Nor is discovery limited to the merits of a case . . . .").  As set forth in the United States' Memoranda in Support of its First and Second Motions to Compel Abbott to Produce Documents, dated January 9, 2007 (Dkt. No. 3530) at 9-10 and April 9, 2007 (Dkt. No. 4048)  at 15-16, respectively, there should be no such arbitrary time limit on discovery.  Clearly, events before and after the accrual of damages are reasonably likely to lead to the discovery of admissible evidence in this case.

Importantly, even if an arbitrary time limit is to be placed on discovery, that date should be both earlier and later in time than Abbott insists.  As previously set forth by the United States,

the beginning date for discovery, at least for the subject drug, Vancomycin, should include the period when Vancomycin was first marketed in August 1988, and the time period leading up to the drugs introduction  *Id*.  Further, the end date of discovery should extend through, at a minimum, 2003.  In fact, since the filing of the United States' First Motion to Compel, the Court has clarified that a discovery end date equivalent to the effective date of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub.L.No. 108-173 ("2003 Act") is appropriate.  Ex. 4 (Transcript, Feb. 27 hearing) at 18-19, 31-32.[3]

Because evidence before and after the time period for which the United States alleges damages are relevant, and Abbott has not shown that producing these documents would create an undue burden, Abbott's objections on relevance and burden grounds should be overruled.

### 3.   Abbott's Limitation in its Responses to Sales of Subject Drugs Made by Abbott's Hospital Products Division to Non-Hospital Providers

Abbott objects to the United States' Interrogatories to the extent they call for information beyond the "Subject Drugs" identified in the Complaint.  Ex. 2 (Abbott's Responses) at ¶¶ 4, 9.  Abbott also objects to the Interrogatories "to the extent they seek documents and information relating to sales to hospitals" and to "health insurance programs not at issue in this action."  Id. at ¶¶ 11-12.  Based upon these objections, Abbott has stated that it will only "search for information from the division [the Hospital Products Division] responsible for pricing, selling

---

[3]

THE COURT:  Let me just say, in one of my many other suits, I cut things off at 2003 because at that point the Medicare Modernization Act came through, so that's where I cut it off. I don't know where the -- that strikes me as a reasonable cutoff, at least for the time being.
[Transcript, Feb. 27, 2007 Hearing before Judge Saris, page 18-19]

THE COURT: ....  And then the temporal scope should at least be up to 2003 because that's when the MMA kicked in, right?  Is that right?
Mr. DALY:  Yes.
[Transcript, Feb. 27, 2007 Hearing before Judge Saris, pages 31-32]

and marketing the [Subject Drugs] to non-hospitals . . . .", and "to the Medicaid and Medicare programs". *Id.* at ¶¶ 4, 9, 11.

As previously set forth in the United States' Memorandum in Support of its First Motion to Compel (Dkt. No. 3530 at 8-10), Abbott's objections are based on the faulty reasoning that discovery should be limited based upon the precise wording of the Complaint.  The Court has already clarified, however, that a restriction of discovery to the four specific drugs named in the Complaint is too limited.  All information regarding marketing is relevant regardless of the drugs at issue: "That seems too narrow and too specific.  Anything coming out of the sales and marketing team talking about how you market stuff during the relevant time period should be produced."  Ex. 4 (Transcript, Feb. 27, 2007 hearing) at 31.

The same reasoning is fully applicable to Abbott's attempt to limit discovery to the Hospital Products Division, and to exclude discovery related to its sales to hospitals and to third-party payors.  The United States has recently learned that other Abbott divisions closely tracked, discussed and lobbied on the Government reimbursement issues being litigated in this case.   If the definition of "Abbott" is limited to the Hospital Products Division, as Abbott suggests, Abbott's current Responses, if allowed to stand, are at best inaccurate and at worst misleading.  For these reasons and the reasons previously stated relating to relevancy, Abbott's general objections on these grounds should be overruled.

### 4.     Abbott's Improper Use of Fed. R. Civ. P. 33(d) To Avoid Responding to Interrogatories

Another recurring deficiency in Abbott's Responses results from its blanket references to business records, pursuant to Fed R. Civ P. 33(d).  In responding in this manner, Abbott has failed to specify the relevant business records from which the requested information can be derived.  Instead, Abbott simply refers the United States to the volumes of documents it turned

over as part of its Initial Disclosures.  Rule 33(d) makes clear that the option to produce business records in response to an interrogatory may only be used where "the burden of deriving or ascertaining the answer is substantially that same for the party serving the interrogatory as for the party served."  Fed. R. Civ. P. 33(d).

Due to their blanket references to documents and lack of specificity, Abbott's responses fail to meet Rule 33(d)'s requirements.  *See In re G-I Holdings, Inc.*, 218 F.R.D. 428, 438-39 (D. N.J. 2003) (finding interrogatory responses that make "sweeping reference to . . .  document production . . . exceeding 200,000 pages, without specifying which documents, if any, are responsive to any particular interrogatory" inadequate).  The Rule requires that the documents be identified with "sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the information may be ascertained."  Fed. R. Civ. P. 33(d).  *See also Sabel v. Mead Johnson and Co.*, 110 F.R.D. 553, 556-57 (D. Mass. 1986) (finding that, where a company offered as a specification a 154,000 page document generated by the party opposing discovery and for which the index did not aid in locating the requested information, it was "simply absurd" to contend that it was equally burdensome for those seeking the documents to identify the information sought); *Lucero v. Valdez*, 2007 WL 737918 at *4 (D. N.M. 2007) ("Simply referring a party to a mass of records ... is not a sufficient response.")*.  See also AAB Joint Venture*, 2007 WL 646158 at *4 ("[F]ederal courts have strictly construed the rule to require a responding party to specifically direct the requesting party to the documents which contain the answer to the interrogatory. . . .  [A] general reference to a pile of documents will not suffice.").  Thus, the United States requests that Abbott be compelled to identify specific documents whenever it relies upon documents as an answer to an Interrogatory.

### B.      Objections Made by Abbott to Specific Interrogatories

In addition to Abbott's general objections to the United States' Interrogatories discussed

above and its specific objections to particular Interrogatories discussed in turn below, a critical

problem with Abbott's Responses is the potential for its answers to be misleading.  For example,

Abbott asserts in its objections to Interrogatories 12, 13 and 20 that it never determined or

reported an Average Wholesale Price ("AWP").  Abbott provides no indication in its objections

and response to Interrogatories 12 and 13 that its position is limited to the Subject Drugs.  Thus,

it appears that Abbott is defending this case, in part, on the basis that it never reported any AWP

for any drug, ever.

If Abbott is defending this case on such a basis, the United States is entitled to discover

facts bearing upon that position.  In fact, the United States is already in possession of at least one

document which flatly contradicts that position.  In a 1996 e-mail from one Abbott employee to

another regarding a non-Subject Drug, it is explained that Abbott set AWP.  Ex. 5.  In a single e-

mail, an Abbott employee admits to setting and reporting AWP's on every one of the drugs sold

by its Hospital Products Division, yet Abbott has asserted in Court documents that no such thing

ever happened.  Accordingly, discovery into this issue is fully appropriate both to resolve the

apparent discrepancy and to inform the parties of Abbott's role in setting, controlling or

manipulating AWP.

Abbott's specific objections to particular Interrogatories discussed in turn below.

**INTERROGATORY 1.**      Identify each occasion that You reported prices to the Price
Publications for the Pharmaceuticals at issue in this lawsuit that reflected their average or
estimated acquisition cost, and all related documents.

**Abbott's Answer:**      . . . . Abbott states that, on occasion during the Relevant Claim
Period, Abbott reported a Catalog/List Price to the pricing compendia for certain of the Subject
Drugs.  Abbott's Catalog/List Price for the Subject Drugs during the Relevant Claim Period
represented the price at which Abbott generally sold the product to customers without a contract.
Abbott further states that it has produced to Plaintiff Abbott's correspondence with pricing
compendia regarding the Subject Drugs during the Relevant Claim Period.

**United States' Position:**  Abbott's answer is non-responsive.  The Interrogatory requests

Abbott to identify each occasion on which it reported prices that reflected their average or

estimated acquisition cost.  Instead of providing the requested information, Abbott has provided

vague information regarding Catalog/Price Lists and prices to non-contract customers which

likely represent a fraction of the market rather than information about the average customer or

sale which is the focus of this Interrogatory.  Further, Abbott's imprecise referral to

"correspondence" from among a quarter of a million pages Abbott produced as part of its Initial

Disclosures is deficient under Rule 33(d).

**INTERROGATORY 2.**     Identify each occasion that the prices published in the Price
Publications for the Pharmaceuticals at issue in this lawsuit reflected their average or estimated
acquisition cost, and all related documents.

**Abbott's Answer:**    . . . . Abbott refers to and incorporates its Response to
Interrogatory No. 1.  Further answering, Abbott refers plaintiff to the text of the Price
Publications for the Relevant Claim Period, which documents can readily be obtained by
Plaintiff.   Further answering, Abbott has produced national direct and indirect sales data relating
to the Subject Drugs for the Relevant Claim Period.

**United States' Position**:     Interrogatory 2 seeks information regarding Abbott's

average or estimated acquisition cost, yet Abbott non-responsively incorporates its answer to

Interrogatory 1.  Further, Abbott's reliance upon its alleged data dump of every one of its retail

transactions as an answer to this Interrogatory is deficient under Rule 33(D).

**INTERROGATORY 3.**     Identify each occasion that You disclosed to Medicare and
Medicaid officials responsible for reimbursement for Your Pharmaceuticals the actual Spreads
on those products, and all related documents.

**Abbott's Answer:**     . . . . Abbott states that it accurately reported those prices for the
Subject Drugs that it was required by law to report during the Relevant Claim Period.  Further
answering, Abbott states that both Medicare and Medicaid officials were well aware for decades
that the published AWP exceeded the actual acquisition cost and yet chose to maintain AWP as
the basis for reimbursement. For a discussion of the government's longstanding knowledge of the
spread between AWP and acquisition cost, Abbott incorporates herein its Motion to Dismiss.
Furthermore, Abbott states that, since 1991, it has submitted Average Manufacturer Price to
CMS, and its predecessor, and further states that it has sold its products, including the Subject
Drugs, to the federal government at substantially discounted prices through the Federal Supply

Schedule and to various state entities. Abbott's investigation relating to the Government's knowledge continues.

**United States' Position**:      This answer is non-responsive.  The point of the

Interrogatory is to determine a basic fact about whether Abbott ever actually provided certain

information to Medicare and Medicaid officials and thereby allow the United States to make a

judgment as to whether further inquiry in this area is needed.  Abbott never answers this

question.  Instead, Abbott provides information regarding its opinion as to what information was

required of it and its opinion of the state of government knowledge and the legal effect thereof.

Abbott's contention that its AMP or its Federal Supply Schedule Prices contained spread

information is incorrect and therefore also non-responsive.

**INTERROGATORY 4.**      Identify each occasion where You disclosed to Medicare and Medicaid officials responsible for reimbursement for Your Pharmaceuticals that You marketed the Spreads on Your Pharmaceuticals, and all related documents.

**Abbott's Answer:**      . . . . Abbott states that, during the Relevant Claim Period, Abbott's practice was to promote the Subject Drugs on the basis of quality, clinical efficacy, Abbott's portfolio of products, method of administration and price to the purchaser.  *It was not Abbott's practice to promote or sell the Subject Drugs, during the Relevant Claim Period, on the basis of the amount of potential Medicare or Medicaid reimbursement or the published AWP associated with the Subject Drugs.*  [Emphasis added].  Indeed, all of the Subject Drugs were multi-source drugs during the entire Relevant Claim Period, whereby J-Code reimbursement was not based on the published AWP associated with any one manufacturer's drugs.

**United States' Position**:      This is another non-responsive answer.  Instead of

answering whether Abbott disclosed information about marketing the spread to Medicare and

Medicaid officials, Abbott has supplied a conclusory, uninformative statement regarding its

"practices."  If Abbott's answer is that it never marketed the spread and therefore there are no

occasions to identify in response to this Interrogatory, Abbott's answer should so state.

In fact, there is evidence to the contrary.  *See* Ex. 6 (August 7, 1996 Memorandum from

Dennis Walker to Abbott Sales Force and May 11, 2001 Letter from Abbott customer) at 1-3.  In

any event, Abbott is obligated to respond.

**INTERROGATORY 5.**     Identify each occasion that You disclosed to Medicare and Medicaid officials responsible for reimbursement for Your Pharmaceuticals the magnitude and size of the Spreads for the Pharmaceuticals at issue in the Complaint, and all related documents.

**Abbott's Answer:**    . . . . Abbott objects on the grounds that it is duplicative of Interrogatory No. 3. As a result, Abbott incorporates herein its Objections and Response to Interrogatory No. 3 as if set forth herein.

**United States' Position**:     Interrogatories 3 and 5 are not identical.  One asks for information regarding "actual" spreads and the other asks for information regarding the "magnitude and size" of the spreads.  To the extent that there is overlap between the two inquiries, Abbott can incorporate the answer for one into the other.  However, a blanket objection without a response for both is unacceptable.

**INTERROGATORY 6.**     Identify each occasion that You sought clarification or guidance from any Medicare or Medicaid (federal or state) agency regarding the meaning, intent or goal of any provision or term of any regulation, statute, or policy regarding the setting of reimbursement for Your Pharmaceuticals, and all related documents.

**Abbott's Answer:**     . . . . Abbott has produced or will produce any responsive communications, to the extent that they exist and are reasonably available, relating to or impacting reimbursement of the Subject Drugs during the Relevant Claim Period.

**United States' Position**:     This answer is clearly limited by Abbott's broad based objections regarding the "Subject Drugs" and the "Relevant Claim Period" and those objections should be overruled.  Although, not specifically mentioned, Abbott's objections based upon the Hospital Products Division, sales to hospitals and third-party payors also will limit the answer to this question because Abbott has stated that it will not produce such documents.  In addition, Abbott responds as if this Interrogatory can be answered fully and accurately solely by reference to documents.  That is unlikely.  Abbott needs to fully answer this Interrogatory, including information regarding clarification or guidance that was sought which may not be reflected in documents.

In addition, withholding information on any inquiry made by Abbott seeking clarification from Medicare or Medicaid officials is not sustainable.  Such information is highly relevant.  For example, if Abbott actually sought clarification from Medicare or Medicaid on any issue, it could demonstrate that Abbott knew how to seek such assistance and that its decision not to seek such guidance regarding the meaning of AWP was a purposeful way of remaining intentionally ignorant.  Under the False Claims Act, a defendant acts "knowingly" if they act "in deliberate ignorance" of the truth or falsity of the information.  31 U.S.C. §3729(b)(2).  The identity of the person(s) making any such inquiry would also be critically important to allow the United States to follow through with appropriate depositions.

**INTERROGATORY 7.**     . . . . Identify each occasion that You sought clarification or guidance from any Medicare or Medicaid (federal or state) agency regarding the meaning of AWP, WAC, Direct Price, List Price, Best Price, estimated acquisition cost, AMP or any term of any regulation, statute, or policy regarding the setting of reimbursement for any of the Pharmaceuticals at issue in the Complaint, and all related documents.

**Abbott's Answer:**     Abbott objects to this Interrogatory because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding AMP or Best Price and because it is duplicative of Interrogatory No. 6.  Further responding, Abbott incorporates its objections and response to Interrogatory No. 6 as if set forth herein.

**United States' Position**:     Abbott has agreed to provide some additional information in response to this Interrogatory, but still refuses to provide any information regarding AMP or Best Price.  The United States incorporates its position regarding Interrogatory 6 as further support for overruling Abbott's objections here.  To the extent that there is overlap between Interrogatories 6 and 7, Abbott can incorporate the answer for one into the other.  However, an incomplete answer or blanket objection is inconsistent with the requirements of Rule 33.

**INTERROGATORY 8.**     Identify all of Your employees who were involved in the sales of the Pharmaceuticals identified in the Complaint and the dates of their employment by You, including their positions at Abbott and any related organizational charts.

**Abbott's Answer:**     . . . . Abbott states that it has produced or will produce organizational charts for the sales department responsible for selling the Subject Drugs during the Relevant Claim Period.

**United States' Position**:      In large part, Abbott's answer to Interrogatory 8 is non-responsive.  Abbott should be required to identify those individuals responsible for the sale of Pharmaceuticals identified in the Complaint so that discovery can progress.  The conduct of the sales force employees, in part, goes to the heart of this case.  Reliance upon an organizational chart is not likely to name employees at all, and certainly not every employee.  Nor will organizational charts provide the dates of employment.  To date, Abbott has produced no such organizational charts or has failed to identify such charts as required by Rule 33(d).

**INTERROGATORY 9.**      Identify all firms, organizations and/or individuals hired by You to engage in any Congressional or other governmental lobbying or advocacy related to any of Your Pharmaceuticals.

**Abbott's Answer:**     . . . . Abbott objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Abbott further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

**United States' Position**:      This case is about Abbott's inflation of its AWP which Abbott knew was used in setting Medicare and Medicaid reimbursement.  Its reporting to the Government, as well as its initiatives to effect Medicare and Medicaid reimbursement policy is highly relevant to this case.

Interrogatory 9 seeks the identification of individuals, firms and organizations hired to perform lobbying functions.  The mere identification of those entities cannot be overly burdensome.  Abbott provides no detail, evidence or affidavit to support its unduly burdensomeness objection.  To date, Abbott has provided no information about a single lobbying firm or individual, nor has Abbott identified the numbers of related individuals.

Abbott's attorney-client privilege and work product doctrine objections also fail.  *See*

13

*AAB Joint Venture v. United States*, 2007 WL 646158, at *7, 9 (Ct. Fed. Cl. 2007) ("At stake here are interrogatories [which] only request facts such as . . . the identity of documents or schedules, and the names of individuals.  Such information is not protected under the work produce doctrine and is discoverable. . . [and] the attorney-client privilege surely does not apply.").  The United States seeks to identify lobbyists who may or may not be attorneys.  But the fact that a fact witness may also be an attorney does not necessarily shield the attorney from a deposition. Moreover, the attorney-client privilege does not shield the *identity* of lawyers. *Howell v. Jones*, 516 F.2d 53, 58 (5th Cir. 1975) ("The great weight of authority, however, refuses to extend the attorney-client privilege to the fact of consultation or employment, including the component facts of the identity of the client and the lawyer.") *cert. denied,* 424 U.S. 916 (1976).  This is especially so if the attorney serves in a lobbying capacity as opposed to serving as litigation counsel.[4]   Finally, Abbott's work-product doctrine objection should be overruled.  The work-product doctrine protects attorney work product in anticipation of litigation.[5]   There is no claim made by Abbott that its lobbyists assist in this litigation, and on that basis Abbott cannot disclose their identity.

---

[4]*United States Postal Service v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994) ("Lobbying conducted by attorneys does not necessarily constitute legal services for the purposes of the attorney-client privilege. . . [and] a letter from house counsel to [lobbyists] is not privileged since the letter simply describes the current status of certain matters."); *North Carolina Elec. Membership Corp v. Caroline Power & Light Co.*, 110 F.R.D. 511, (M.D.N.C. 1986) (finding that communications concerning "'lobbying' efforts. . . [seemingly] coordinated by the legal department" do not fall within the attorney-client privilege where their contents "do not refer to legal problems but instead are summaries of various town meetings or reports on the [project's] progress.")

[5] *See Colonial Gas Co. v. Aetna Casualty and Surety Co.*, 144 F.R.D. 600, 605 (D. Mass. 1992) (enumerating the test for whether a document was prepared in anticipation of litigation as when "the primary motivating purpose underlying the preparation of the [document] was to aid in future litigation") (citing *In re Atlantic Fin. Management Sec. Litig.*, 121 F.R.D. 141, 145 (D. Mass. 1988).

**INTERROGATORY 10.**    Identify all instances or occasions on which you contacted or otherwise communicated with any Congressional or other federal or state government office in connection with:

(a)    any of Your Pharmaceuticals, and

(b)    any legislation, rule-making or policies related to reimbursement for Your Pharmaceuticals.

**Abbott's Answer:**    . . . . Abbott objects to this Interrogatory because it is overly broad, unduly burdensome and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and to the extent it fails to identify any particular "Congressional or other federal or state government office." For instance, this Interrogatory, as stated, would require Abbott to catalogue every communication it has ever had with the U.S. Food and Drug Administration about any of its drug products - communications that number in the tens of thousands for just that one agency. Abbott further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

**United States' Position**: Abbott's response to this Interrogatory should be overruled for

the same reasons that its response to Interrogatory 9 should be overruled.  Abbott has failed to

identity any undue burden, and has asserted unsupported and unsubstantiated objections based

upon work product and attorney-client privileges.[6]

**INTERROGATORY 11.**    Identify all employees or outside firms, organizations or individuals involved in any lobbying or advocacy efforts on Your behalf related to a) HHS's 1991 Proposed Rule on Medicare reimbursement, b) President Clinton's 1996 proposal to use actual acquisition costs, c) HHS's 1997 proposed rule implementing the Balanced Budget Act of 1997, and d) the DOJ/NAMFCU prices provided to HHS in 2000.

**Abbott's Answer:**    . . . . Abbott objects to this Interrogatory because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Abbott further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client and/or the work-product doctrine.

**United States' Position**:    Abbott's response to this Interrogatory should be overruled

for the same reasons as set forth in the United States' positions as to response to Interrogatories 9

---

[6] In addition, the United States notes that it suggested various ways to modify this Interrogatory and solicited such suggestions from Abbott.  Abbott would not agree to any of the suggestions of the United States and had no proposals of its own. *See* Ex. 3 (February 8, 2007 Letter to Toni-Ann Citera) at 4.

and 10.

**INTERROGATORY 12.**     Identify all employees, agents or outside firms involved with the determination and/or reporting of the AWP, WAC, Direct Price, List Price, AMP or AMP for Your Pharmaceuticals to the Price Publications or any State Medicaid program.

**Abbott's Answer:**   . . . . Abbott further objects to the extent this Interrogatory suggests that Abbott determines and/or reports an AWP and to the extent it seeks information outside of Abbott's custody, care and/or control. Abbott further objects to this Interrogatory to the extent it seeks information regarding Abbott's calculation of AMP, which is not at issue in this case and is determined by federal law.  Abbott states that it has produced or will produce communications with the pricing compendia and with the Texas Vendor Drug Program relating to the Subject Drugs during the Relevant Claim Period.

**United States' Position**:     In contradiction of known evidence identified to Abbott, Abbott asserts in this objection that it never determined or reported an AWP.  Accordingly, the United States is entitled to discover facts bearing upon that position.  If Abbott has stated its position in reliance upon an artificial state of affairs created by its broad relevance objections, its position needs to be stated accurately.  *See supra*, at 7-8.

In addition, this answer suggests that Abbott is only willing to provide information regarding Texas.  It is unclear that a single state's information and the pricing compendia communication would be fully responsive to this Interrogatory.[7]  Moreover, to date, Abbott has failed to produce this information.

**INTERROGATORY 13.**     Identify all individuals, whether Abbott employees or not, involved with reporting or making any representations regarding the AWP, WAC, Direct Price, List Price, AMP or AMP or any other reported price for Your Pharmaceuticals to the State of Texas' Vendor Drug Program.

**Abbott's Answer:**     . . . . Abbott further objects to the extent this Interrogatory suggests that Abbott determines and/or reports an AWP and to the extent it is duplicative of Interrogatory

---

[7] *O'Connor v. Boeing N. Am. Inc.*, 185 F.R.D. 272, 278 n.7 (C.D. Cal. 1999) (identifying a 'representative sampling' of documents as a response to an interrogatory did not comply with Rule 33(d));  *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 307 (E.D.Pa. 1996) (Plaintiff's response was incomplete and insufficient where it "tend[ed] to show that the plaintiffs possess[ed] additional relevant information," including supplemental information on four of six favored buyers and two other involved products).

No. 12.  Abbott also objects to this Interrogatory to the extent it seeks information regarding Abbott's calculation of AMP, which is not at issue in this case and is determined by federal law. In addition to its General Objections, Abbott states that it has produced or will produce its communications to the Texas Vendor Drug Program relating to the Subject Drugs during the Relevant Claim Period.

**United States' Position**:       As was the case in connection with Interrogatory 12,

Abbott again asserts in this objection that it never determined or reported an AWP.  Accordingly,

the United States is entitled to discover facts bearing upon that position.  Likewise, this answer

again suggests that Abbott is only willing to provide information regarding Texas.  It is unclear

that a single state's information and the pricing compendia communication would be fully

responsive to this Interrogatory.

**INTERROGATORY 14.**      Identify all contracts, agreements or other arrangements You had with any purchasers of Your Pharmaceuticals whereby you would aid, assist or otherwise participate in the submission – on that purchaser's behalf – of reimbursement claims to Medicare, Medicaid or any other third party reimburser of drugs.

**Abbott's Answer:**     . . . . Abbott states that in response to this Interrogatory it will produce, to the extent they can reasonably be obtained and have not been produced already, contracts or agreements, if any, that are responsive to this Interrogatory and that relate to the Subject Drugs during the Relevant Claim Period.

**United States' Position**:       To date, Abbott has failed to produce this information.

Abbott should be required to identify these documents immediately in accordance with Rule

33(d), and to produce them forthwith.  The United States reserves the right to seek further relief

from the Court if the documents identified are not fully responsive to this Interrogatory.

**INTERROGATORY 15.**      Identify all employees in any way involved with any contracts, agreements or other arrangements You had with any purchasers of Your Pharmaceuticals whereby you would aid, assist or otherwise participate in the submission on that purchaser's behalf of reimbursement claims to Medicare, Medicaid or any other third party reimburser of drugs.

**Abbott's Answer:**     . . . . Abbott states that in response to this Interrogatory it has produced or will produce documents relating to the former Home Infusion Services department.

**United States' Position**:       To date, Abbott has failed to produce this information.

17

Abbott should be required to identify these documents immediately in accordance with Rule 33(d), and to produce them forthwith. The United States reserves the right to seek further relief from the Court if the documents identified are not fully responsive to this Interrogatory.

**INTERROGATORY 16.** Identify all facts on which you rely to support each denial or partial denial to the United States' First Requests for Admissions.

**Abbott's Answer:** . . . . Abbott initially directs Plaintiff to the documents produced as part of Abbott's initial disclosures, Abbott's Motion to Dismiss, including Appendix A (filed July 7,2006), Abbott's AMP submissions to CMS, Abbott's contracts with the government to sell the Subject Drugs at discounted FSS prices and Abbott's contracts with various State entities for the sale of the Subject Drugs during the Relevant Claim Period. Abbott's investigation into the Government's knowledge continues.

**United States' Position**: This answer is insufficient. To date, Abbott has failed to fully produce this information. Abbott should be required to identify these documents immediately in accordance with Rule 33(d), and to produce them forthwith. The United States reserves the right to seek further relief from the Court if the documents identified are not fully responsive to this Interrogatory.

**Interrogatory 17.** Did any of Your employees or representatives ever use the Spread or potential profit margins on Your Pharmaceuticals when selling or marketing those Pharmaceuticals, and, if so: (a) identify each such person, and (b) all documents reflecting, referring or relating to such practices.

**Abbott's Answer:** . . . . Abbott states that, during the Relevant Claim Period, Abbott's practice was to promote the Subject Drugs on the basis of quality, clinical efficacy, Abbott's portfolio of products, method of administration and price to the purchaser. It was not Abbott's practice to promote or sell the Subject Drugs, during the Relevant Claim Period, on the basis of the amount of potential Medicare or Medicaid reimbursement or the published AWP associated with the Subject Drugs. Indeed, all of the Subject Drugs were multi-source drugs during the entire Relevant Claim Period, whereby J-Code reimbursement was not based on the published AWP associated with any one manufacturer's drug.

**United States' Position**: This answer is not fully responsive to the Interrogatory. It does not deny that Abbott employees or representatives used the spread or potential profit margin when selling Abbott drugs, and it also identifies no individuals or documents specified in the Interrogatory. Abbott should be required to fully answer the Interrogatory.

**INTERROGATORY 18.**    Did You ever instruct any employee or representative of Abbott not to use the Spread or potential profit margins on Your Pharmaceuticals when selling or marketing those Pharmaceuticals, and, if so, identify:

(a)    all Abbott employees or representatives who gave such instruction,

(b)    all Abbott employees and representatives who were so instructed,

(c)    the time and content of such instruction, and

(d)    identify all documents reflecting, relating to or referring to such instruction.

**Abbott's Answer:**    . . . . Abbott objects to this Interrogatory because it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Abbott objects to the phrase "use the Spread" as vague and ambiguous. Abbott further objects to this Interrogatory to the extent it seeks information protected by the attorney client privilege and/or work product doctrine. Further responding, Abbott incorporates its objections and response to Interrogatory No. 17 as if set forth herein.

**United States' Position**:   The United States incorporates by reference herein its position in response to Interrogatory 17 above.  Abbott's objection is an attempt to avoid responding to questions about its conduct that goes to the very heart of this case.  "The Spread" is a term defined in the United States Interrogatories, in addition to being one of common usage in the pharmaceutical industry, and it is not vague or ambiguous.   In fact, Abbott witnesses have testified that they understand what the term "spread" means.  *See e.g.,* Ex. 7 (Transcript of the March 7, 2007 Deposition of Steve Kipperman) at 64:15-21; Ex. 8 (Transcript of the March 28, 2007 Deposition of Virginia Tobiason) at 122:4–22.  Abbott's attorney-client privilege and work product doctrine objections to this Interrogatory also fail.  Abbott cannot withhold information under an improper cloak of attorney-client privilege or work product doctrine where the question does not call for work prepared in anticipation of litigation.[8]

---

[8] *See City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000) ("'[a] corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel.'" (quoting *Phelps Dodge Ref. Corp.*, 852 F. Supp. at 163-64).  In addition, courts will not extend the work product doctrine to cover documents created in the ordinary course of business.  *See Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc.*, 720 F. Supp. 1165, 1186 (D. Mass. 1989) (finding that sketches, drawings, and other natural by-products of the creative processes of an artist would not receive work product protection where they were created in the ordinary course of business); *Fairbanks v. Am. Can Co., Inc.*, 110 F.R.D. 685, 688 (D. Mass. 1986) (holding that a statement and an investigative report were both

**INTERROGATORY 19.**     Identify the time, location, individuals involved and documents relating to Your reporting of AWP, WAC, Direct Price, or List Price to the Price Publications for the Pharmaceuticals listed in the Complaint.

**Abbott's Answer:**     . . . . Abbott objects to this Interrogatory on the grounds that it is duplicative of Interrogatory No. 12. As a result, Abbott incorporates its  Objections and Response to Interrogatory No. 12 as if set forth herein.

**United States' Position**:     On its face, this request is not duplicative of Interrogatory

12, which clearly seeks the identification of individuals involved in the determination of AWP,

WAC, Direct Price or List Price.  This request seeks the identification of time, location and

individuals and documents involved in each instance of *reporting* AWP, WAC, Direct Price, or

List Price as indicated.  The United States incorporates by reference herein its position in

response to Interrogatory 12 above to the extent that there is overlap, which is unknown to the

United States as Abbott has wholly failed to provide any responsive information to either

Interrogatory 12 or 19 to date.

**INTERROGATORY 20.**     Identify all meetings (including locations, dates and times), discussions (including locations, dates and times), individuals involved, and documents relating to Abbott's decision to report or submit lower AWPs, WACs,  Direct Prices, and/or List Prices for any of Your Pharmaceuticals to the Price Publications beginning in 2001.

**Abbott's Answer:**     . . . . Abbott states that it has produced or will produce responsive, non-privileged documents relating to the Subject Drugs for the Relevant Claim Period.

**United States' Position**:     This answer is clearly limited by Abbott's broad based

objections regarding the "Subject Drugs" and the "Relevant Claim Period".  For the reasons

discussed above, these objections should be overruled.  Further, although Abbott indicates in its

Response that it will produce "responsive, non-privileged documents", to date, Abbott has failed

---

subject to disclosure because they were part of an investigation into a worker's compensation claim, part of the ordinary course of business); *In re Pac. Enter., Ltd. v. Blasbalg,* 36 B.R. 426, 429 (Bankr. R.I, 1984) (requiring disclosure of bank diaries concerning loans, lines of credit, or accounts where the party resisting disclosure did not show that the entries "were made other than in the ordinary course of business, or that they were prepared solely or even primarily with an eye toward litigation").

to provide this responsive information or to seek additional time to do so.   Abbott has also failed

to produce a privilege log to the United States; making it impossible for the United States to

evaluate the completeness of any response Abbott may eventually make to this Interrogatory (or

for that matter, other discovery produced by Abbott).  It is also unlikely that documents alone

could be completely responsive to this Interrogatory.  At a minimum, Abbott should be

compelled to respond to Interrogatory 20 with a narrative response containing the non-privileged

information requested by this Interrogatory, including *identification of meetings, discussions*

*and, individuals involved* relating to specified pricing decisions made by Abbott.  So as to permit

discovery in this case to progress, the United States requests that Abbott be ordered to provide

the requested information immediately.

## IV. <u>CONCLUSION</u>

Wherefore, the United States respectfully requests that its Motion to Compel Abbott to

Respond to the United States' First Set of Interrogatories be granted, that Abbott's general and

specific objections be overruled, and that the Court grant such other and further relief as the

Court deems just and proper.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN                          PETER D. KEISLER
UNITED STATES ATTORNEY                       ASSISTANT ATTORNEY GENERAL

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley                           /s/ Rebecca A. Ford
U.S. Courthouse                              Joyce R. Branda
Suite 9200, 1 Courthouse Way                 Daniel R. Anderson
Boston, MA 02210                             Renée Brooker
Phone: (617) 748-3272                        Justin Draycott
Fax: (617) 748-3971                          Rebecca A. Ford
                                             Gejaa T. Gobena
                                             Civil Division
R. ALEXANDER ACOSTA                          Commercial Litigation Branch
UNITED STATES ATTORNEY                       P. O. Box 261
SOUTHERN DISTRICT OF                         Ben Franklin Station
FLORIDA                                      Washington, D.C.  20044
                                             Phone:  (202) 307-1088
/s/ Mark A. Lavine                           Fax: (202) 307-3852
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith                       For the relator, Ven-A-Care of the
Special Attorneys for the Attorney           Florida Keys, Inc.
General
99 N.E. 4th Street, 3rd Floor                /s/ James J. Breen
Miami, FL  33132                             James J. Breen
Phone:  (305) 961-9003                       The Breen Law Firm, P.A.
Fax: (305) 536-4101                          3350 S.W. 148th Avenue
                                             Suite 110
                                             Miramar, FL 33027
                                             Tel:  (954) 874-1635
                                             Fax: (954) 874-1705
Dated: April 16, 2007                        Email: jbreen@breenlaw.com

## CERTIFICATION

Undersigned counsel certifies pursuant to LR 7.1(a)(2) and 37.1(a) that counsel for the United States and the Relator, have conferred with counsel for the Defendant Abbott Laboratories, Inc. on the issues raised in this motion and have not been able to reach agreement.

|                          | /s/ Mark Lavine          |
| ------------------------ | ------------------------ |
| Dated: April 16, 2007    | Mark Lavine              |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the **UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT TO RESPOND TO THE UNITED STATES' FIRST SET OF INTERROGATORIES** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

|                          | /s/ Rebecca A. Ford       |
| ------------------------ | ------------------------- |
| Dated: April 16, 2007    | Rebecca A. Ford           |