# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) Civil Action No. 01-12257-PBS ) |
| **THIS DOCUMENT RELATES TO:** | ) Hon. Patti Saris ) |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.*<br>CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) ) |

## UNITED STATES' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure the United States hereby propounds the following interrogatories on Abbott Laboratories, Inc. (hereafter "Abbott" or "Defendant"). These interrogatories are to be answered by defendants separately and fully in writing, under oath. The United States requests that Defendants serve any objections to these requests and produce a copy of their answers within 30 days.

### I.  INSTRUCTIONS

A.     Consistent with Rule 26(e) of the Federal Rules of Civil Procedure, these interrogatories are continuing in character. Defendants are thus required to amend their responses to these interrogatories if they learn that their prior responses and production are in some material respect incomplete or incorrect.

B.     Information sought by these interrogatories shall include information within any defendant's knowledge, possession, custody or control, or within the knowledge, possession,

custody or control of any defendant's agents, officers, employees, attorneys or investigators, or any person acting as one or more defendants' representative or on one or more defendants' behalf, including, but not limited to, any otherwise independent attorneys, accountants, or consultants. Information sought by these requests includes information maintained at any local, regional, group, divisional or corporate office.

C.  Whenever appropriate, the singular form of a word shall be interpreted as plural, and the masculine gender shall be deemed to include the feminine.

D.  Although You may be reminded in certain interrogatories to answer in accordance with the Definitions and Instructions set forth herein, the absence of such a reminder should not be construed as an indication that those Definitions and Instructions do not apply. All interrogatories should be answered in accordance with the Definitions and Instructions set forth herein whether or not a reminder is provided.

E.  If, in answering any interrogatory, You encounter any ambiguity in construing either the interrogatory or definitions and instructions relevant to the inquiry contained in the interrogatory, set forth the matter deemed ambiguous and the construction of the ambiguity that you believe is most reasonable, and answer the interrogatory applying that construction.

F.  If in answering any interrogatory, You determine that the interrogatory calls for or would be more completely answered by reference to Documents or information no longer in the possession, knowledge or control of any defendant, identify the person(s) who you believe or speculate to now possess that information or document (i.e., if a former employee not available to defendants is believed to possess knowledge that may be responsive to an interrogatory, identify that former employee).

G.      If the contention is made that any responsive information, communication or Document is not subject to discovery, in whole or part, by reason of privilege or otherwise, identify each such communication or Document by date, author(s) or speaker(s), addressee(s), recipient(s), title, subject matter, purpose, and, if a document, present custody, and set forth the nature of the claimed privilege or other grounds for refusal to produce in a log consistent with the requirements of Fed. R. Civ. P. 26(b)(5).

H.      Relevant Time Period: Unless otherwise indicated in a specific interrogatory, the interrogatories herein cover the time period of January 1, 1985 to the present and documents or events relating to such period even though created or occurring before that period.

## II. DEFINITIONS

A.      As used herein, the term "Documents" is used in its broadest sense, as defined in the Federal Rules of Civil Procedure, and includes the original of each existing identical or non-identical copy or draft thereof, by whatever means made, of any writing of any kind. The term "Documents" includes writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file

3

folders, indices, and metadata, is also included in this definition.

  B. As used herein, the terms "You," "Your," "Abbott," and "Defendant" refer to Abbott; to its corporate predecessors, including all merged predecessor corporations; to any other past or present subsidiary, affiliate, spinoffs or d/b/a of Abbott; and to all entities currently or formerly owned, operated, or managed by Abbott, and all current and former directors, officers, principals, partners, employees, agents, representatives, or other persons acting for or on behalf thereof, including, but not limited to, any otherwise independent attorney, accountant, investigator or consultant.

  C. The term "affiliated" shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

  D. Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

  E. The terms "accuracy," "accurate" or "accurately," when used in reference to Price Representations or sales transactions, are used with reference to whether the information is reflective of the prices actually paid in the marketplace by any purchasers, including but not limited to prices paid by wholesalers, pharmacies, oncology supply houses, group purchasing organizations or physicians.

  F. The term "Price Representations" means any statement, assertion, representation or declaration of the price of any Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, List Price or Suggested Net Trade.

  G. The term "Pharmaceutical" means any drug or other product sold by You.

4

H.      The term "Spread" is used to refer to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid by purchasers of the Pharmaceuticals) and the price or cost determined, published or arranged by the manufacturer or the reimbursement rate paid by third party payors (to purchasers of the Pharmaceuticals). Third party payors include Medicare, Medicaid and private insurance. Thus, the Spread is the gross profit or margin actually or potentially realized by the purchasers of the Pharmaceuticals.

I.      The term "AWP" means the price that You report, advertise, market, publish or cause to be published, directly or indirectly, as the average wholesale price for any Pharmaceutical.

J.      The term "WAC" means the price that You report, advertise, market, publish or cause to be published, directly or indirectly, as the wholesale acquisition cost or wholesaler acquisition cost for any Pharmaceutical.

K.      The term "Direct Price" means the price You report, advertise, publish or cause to be published, directly or indirectly, as the "DP" or direct price for any Pharmaceutical.

L.      The term "List Price" means the price You report, advertise, publish or cause to be published, directly or indirectly, as the list or catalogue price for any Pharmaceutical.

M.      The term "Best Price" means the price You report or otherwise disseminate as the best price for any Pharmaceutical, including the price You report for purposes of the Medicaid Rebate Program.

N.      The term "AMP" means the price You report or otherwise disseminate as the average manufacturer's price for any Pharmaceutical, including the price You report for purposes of the Medicaid Rebate Program.

O.  The term "Price Publications" means (1) the *Red Book* published by Thomson Publishing, (2) the *Blue Book* published by First Databank, (3) the electronic or automated price service and the Hospital Formulary Pricing Guide published by Medi-Span, Inc., and any other pricing compendia published by those companies.

P.  The term "average or estimated acquisition cost" is the average or estimated – as those terms are defined in any commonly-available dictionary – amount that Your customers would pay to purchase Your Pharmaceuticals.

Q.  The terms "disclose," "disclosed" or "disclosure" as used below means to reveal, make known, make public or expose. It explicitly does <u>not</u> refer to the reporting of any AMPs by You as part of the Medicaid Drug Rebate Program.

R.  The term or phrase "marketed the Spread" means the use of Spreads or potential profit margins as one of the means of inducing or encouraging Your customers to buy Your Pharmaceuticals.

S.  The term "HHS" refers to the United States Department of Health and Human Services.

T.  The term "DOJ" refers to the United States Department of Justice.

U.  The term "NAMFCU" refers to the National Association of Medicaid Fraud Control Units.

V.  The term "the DOJ/NAMFCU prices" refers to "DOJ AWPs" referred to by Abbott counsel at the October 26, 2006 Motion to Dismiss hearing before the Court. *See* October 26, 2006 Hearing Transcript at 10-11.

W.  The phrase "facts on which you rely" refers to the factual basis for a proposition,

position, or response and the identification of all related documents that support that factual basis.

### III. INTERROGATORIES

1. Identify each occasion that You reported prices to the Price Publications for the Pharmaceuticals at issue in this lawsuit that reflected their average or estimated acquisition cost, and all related documents.

2. Identify each occasion that the prices published in the Price Publications for the Pharmaceuticals at issue in this lawsuit reflected their average or estimated acquisition cost, and all related documents.

3. Identify each occasion that You disclosed to Medicare and Medicaid officials responsible for reimbursement for Your Pharmaceuticals the actual Spreads on those products, and all related documents.

4. Identify each occasion where You disclosed to Medicare and Medicaid officials responsible for reimbursement for Your Pharmaceuticals that You marketed the Spreads on Your Pharmaceuticals, and all related documents.

5. Identify each occasion that You disclosed to Medicare and Medicaid officials responsible for reimbursement for Your Pharmaceuticals the magnitude and size of the Spreads for the Pharmaceuticals at issue in the Complaint, and all related documents.

6. Identify each occasion that You sought clarification or guidance from any Medicare or Medicaid (federal or state) agency regarding the meaning, intent or goal of any provision or term of any regulation, statute, or policy regarding the setting of reimbursement for Your Pharmaceuticals, and all related documents.

7. Identify each occasion that You sought clarification or guidance from any Medicare or Medicaid (federal or state) agency regarding the meaning of AWP, WAC, Direct Price, List Price, Best Price, estimated acquisition cost, AMP or any term of any regulation, statute, or policy regarding the setting of reimbursement for any of the Pharmaceuticals at issue in the Complaint, and all related documents.

8. Identify all of Your employees who were involved in the sales of the Pharmaceuticals identified in the Complaint and the dates of their employment by You, including their positions at Abbott and any related organizational charts.

9. Identify all firms, organizations and/or individuals hired by You to engage in any Congressional or other governmental lobbying or advocacy related to any of Your Pharmaceuticals.

10. Identify all instances or occasions on which you contacted or otherwise communicated with any Congressional or other federal or state government office in connection with:

   (a) any of Your Pharmaceuticals, and

   (b) any legislation, rule-making or policies related to reimbursement for Your Pharmaceuticals.

11. Identify all employees or outside firms, organizations or individuals involved in any lobbying or advocacy efforts on Your behalf related to a) HHS's 1991 Proposed Rule on Medicare reimbursement, b) President Clinton's 1996 proposal to use actual acquisition costs, c) HHS's 1997 proposed rule implementing the Balanced Budget Act of 1997, and d) the DOJ/NAMFCU prices provided to HHS in 2000.

12. Identify all employees, agents or outside firms involved with the determination and/or reporting of the AWP, WAC, Direct Price, List Price, AMP or AMP for Your Pharmaceuticals to the Price Publications or any State Medicaid program.

13. Identify all individuals, whether Abbott employees or not, involved with reporting or making any representations regarding the AWP, WAC, Direct Price, List Price, AMP or AMP or any other reported price for Your Pharmaceuticals to the State of Texas' Vendor Drug Program.

14. Identify all contracts, agreements or other arrangements You had with any purchasers of Your Pharmaceuticals whereby you would aid, assist or otherwise participate in the submission – on that purchaser's behalf – of reimbursement claims to Medicare, Medicaid or any other third party reimburser of drugs.

15. Identify all employees in any way involved with any contracts, agreements or other arrangements You had with any purchasers of Your Pharmaceuticals whereby you would aid, assist or otherwise participate in the submission on that purchaser's behalf of reimbursement claims to Medicare, Medicaid or any other third party reimburser of drugs.

16. Identify all facts on which you rely to support each denial or partial denial to the United States' First Requests for Admissions.

17. Did any of Your employees or representatives ever use the Spread or potential profit margins on Your Pharmaceuticals when selling or marketing those Pharmaceuticals, and, if so:

    (a) identify each such person, and

    (b) all documents reflecting, referring or relating to such practices.

18. Did You ever instruct any employee or representative of Abbott not to use the Spread or potential profit margins on Your Pharmaceuticals when selling or marketing those Pharmaceuticals, and, if so, identify:

    (a) all Abbott employees or representatives who gave such instruction,

    (b) all Abbott employees and representatives who were so instructed,

    (c) the time and content of such instruction, and

    (d) identify all documents reflecting, relating to or referring to such instruction.

19. Identify the time, location, individuals involved and documents relating to Your reporting of AWP, WAC, Direct Price, or List Price to the Price Publications for the Pharmaceuticals listed in the Complaint.

20. Identify all meetings (including locations, dates and times), discussions (including locations, dates and times), individuals involved, and documents relating to Abbott's decision to report or submit lower AWPs, WACs, Direct Prices, and/or List Prices for any of Your Pharmaceuticals to the Price Publications beginning in 2001.

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3398
Fax: (617) 748-3272

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
Phone: (305) 961-9003
Fax: (305) 536-4101

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL

/s/ Gejaa T. Gobena
Michael F. Hertz
Joyce R. Branda
Renée Brooker
Justin Draycott
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 307-1088
Fax: (202) 307-3852

Dated: November 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' FIRST SET OF INTERROGATORIES** to be served on the following counsel by electronic mail:

James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel: (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com
*Counsel for Relator*

Daniel Reidy, Esq.
James Daly, Esq.
Tina M. Tabacchi
Brian J. Murray
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: jrdaly@jonesday.com

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: christophercook@jonesday.com

Dated: November 17, 2006                     /s/ Gejaa T. Gobena
                                              Gejaa T. Gobena