# EXHIBIT 3



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

---

*99 N.E. 4 Street*

*Miami, FL 33132*
*(305) 961-9000*

February 8, 2007

<u>*Via Electronic Transmission*</u>

Toni-Ann Citera
Jason G. Winchester
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692
jgwinchester@JonesDay.com

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* MDL No. 1456/Civil
        Action No. 01-12257-PBS

Dear Ms. Citera and Mr. Winchester:

RE:   Follow-up Letter to January 31, 2007 Meet and Confer
        *United States of America, ex rel., Ven-A-Care of the Florida Keys, Inc., v. Abbott Laboratories,*
        *Inc.,* United States District Court, District of Massachusetts, MDL Docket No. 1456, *In re*
        *Pharmaceutical Industry Average Wholesale Price Litigation*

Dear Ms. Citera and Mr. Winchester:

        This letter summarizes where the parties stand subsequent to our Meet and Confer on the
morning of January 31, 2007, seeking responsive answers from Abbott to the United States' First Set of
Interrogatories ("Interrogatories") and First Set of Requests for Admission ("RFA"). The meeting was
attended by Toni-Ann Citera and Carol Geisler on behalf of Abbott. It was unfortunate that Mr.
Winchester could not participate given his first hand, more detailed knowledge of the current state of
Abbott's discovery efforts. If the following does not, in your view, reflect Abbott's discovery objections
and positions, please advise us immediately.

        Except as indicated on limited answers and issues, Abbott agreed to consider the Meet and
Confer as closed for both the Interrogatories and the RFA and we will file our motion accordingly. The
limited answers which will be supplemented by Abbott are Interrogatories 8, 12 and 16. You agreed to
provide the supplemented answers on or before February 15, 2007. You were not willing to reconsider
any answers to any RFA. For all other discovery issues we understand Abbott is resting on its

**3-1**

Toni-Ann Citera
Jason G. Winchester
February 8 , 2007
Page 2

objections.

General Issues Applicable to All RFA's and Interrogatories

Abbott's continued assertion of numerous broad based objections has led to misleading discovery
responses and has made it impossible to know whether any particular response is devoid of information
because there is no information to be had or whether the response is devoid of information because
responsive information is being withheld on the basis of objections.  The broad based objections at issue
include Abbott's objection to any discovery regarding any drugs Abbott deems not relevant, Abbott's
objection to any discovery outside the time frame that Abbott deems relevant, Abbott's objection to
discovery regarding any part of its operations that it deems irrelevant such as sales to hospitals or
operations other than its Hospital Products Division, Abbott's objection to discovery related to
reimbursement by third party payors which Abbott deems irrelevant and Abbott's objection to the
discovery regarding calculations of the Average Manufacturer Price ("AMP") upon which Abbott's
bases one of its alleged defenses.

Our position remains that Abbott's broad based objections are unsupportable.  Abbott's position
that these matters are not relevant or reasonably calculated to lead to the discovery of admissible
evidence is unreasonable and is not in compliance with the Federal Rules of Civil Procedure.  Rather,
Abbott's position in this regard appears to be nothing more than a transparent tactic designed to slow
down discovery.  Our repeatedly unsuccessful attempts to resolve these objections have continued to
make it ever more clear that Abbott will not withdraw or modify any of these objections unless
compelled to do so by the Court.

One particular problem caused by Abbott's reliance on these broad based objections are Abbott
statements that misrepresent the true facts.  For example, Abbott continues to state that it does not and
has never set any AWPs.  On that exact basis, you refused to provide a better answer with respect to
"AWP" on Abbott's answer to Interrogatory 12 even though you agreed to provide a better answer as to
Direct Price, List Price and WAC.  Other objections by Abbott take the same position.  However, we
know that Abbott internal documents and communications to Redbook and Bluebook specified the exact
AWP that Abbott desired to be published for certain drugs such as Calcijex.  If you have any doubt about
this, please review the letter written by Michael Heggie, Abbott's Reimbursement Manager, to Medispan
on January 16, 1996 wherein he states "will you please change the AWP for the following two list
numbers."  He then provides the exact AWP's that he wants published and concedes that he is overriding
Medispan's usual formula.  (ABT001114)

There seem to be two explanations for Abbott's statements that it does not set AWP even though
we see Abbott employees orchestrating the publication of specific AWPs.  One is Abbott's apparent
position that its objections regarding the "Subject Drugs" liberate Abbott to respond as if
Calcijex and Abbott's setting of the Calcijex AWPs has never existed.  The same holds true regarding
Abbott objections regarding sales to hospitals and the operation of its entire Pharmaceutical Products
Division.  The other possible explanation is Abbott's apparent semantics about the meaning of the word
"set."  Abbott seems to be arguing that even though it decides upon the AWP that it wants published and
then instructs (or asks) the pricing publications to publish that exact AWP in order to change

**3-2**

Toni-Ann Citera
Jason G. Winchester
February 8 , 2007
Page 3

reimbursement, Abbott still is not setting the AWP because only the pricing publications actually set the AWP via its publication. You refused our efforts to explore this issue further in our call on the basis that you didn't want to get into it.

In any event, neither of these rationales are acceptable. As discussed extensively, they are not legally sound. And more importantly, Abbott has responded to discovery in a way that makes it impossible to know whether the response is devoid of information because there is no information to be had or whether the response is devoid of information because responsive information is being withheld on the basis of objections. Although we explained this to you, Abbott is standing on its objections with just a few exceptions discussed below. Also, Abbott would not agree to identify which interrogatory answers it can say were complete, and which it would not complete because of its objections. As a result, our concerns with Abbott's broad based objections cut across all of Abbott's discovery responses.

<u>Sharing of Documents Produced in Other Litigations</u>

James Breen pursued this issue with you regarding the use of documents produced by Texas in the MDL. He has sent a separate letter summarizing that conversation.

<u>Fed.R.Civ.Pro. 33(d)</u>

Abbott's responses to the RFA and Interrogatories often refer the United States to the 260,000 pages of documents produced as Abbott's Initial Disclosures. We explained that this is inadequate under Fed.R.Civ.Pro. 33(d). Abbott indicated it did not intend to supplement its interrogatory answers to comply with Rule 33(d).

<u>Waiver as to Oral Communications or any Communications within the Scope of Objections</u>

Many of our discovery requests seek information that Abbott may have contended was exculpatory if it existed. However, only limited or no information was provided in Abbott's answers which often consisted in large part of a reference to documents. We explained our position that we will be prejudiced if any such information is withheld from us now only to be resurrected at some later date. Since Abbott has not identified any oral communications in any of its discovery responses and has potentially withheld substantial other information on the basis of Abbott's overly broad objections, we are moving forward with the expectation that Abbott will not be seeking to defend this case based on any such information not provided at this time because of the prejudice such an approach would cause to our preparation of this case.

<u>Abbott's General Objection 2 to the Interrogatories</u>

General Objection 2 to the Interrogatories contends that the Interrogatories ask Abbott to prove the negative. We noted that the objection seemed to be related to the RFA and may have been included as an objection to the Interrogatories as a scrivener's error. You refused to withdraw the objection. As an alternative approach, we asked you to identify to which interrogatories this objection pertained. You refused to do so.

R. Christopher Cook
Jason G. Winchester
January 25, 2007
Page 4

Abbott's Objection to the United States' Definition of Spread

        This objection contends that the United States' definition of spread is overly broad, vague, ambiguous and confusing.  We asked you to clarify and you stated that the definition should not include third party payors.  We asked if removing the reference to third party payors would allow Abbott to answer the Interrogatory.  You then added that the definition was also objectionable because it presumes there is a profit even though there could be a loss on the transaction.  We offered to amend the definition to include losses.  We also offered to allow Abbott to include its own definition of spread via qualifications or explanations included with the answer.  You still refused.

Abbott's Objection to the United States' Definition of Average or Estimated Acquisition Cost

        We asked for clarification for the basis of Abbott's objection that the United States' definition of Average or Estimated Acquisition Cost was overly broad, vague and ambiguous.  You mentioned that you weren't sure which classes of trade were included and that you were uncertain as to what we meant by average or estimated.  We asked if you had any suggestions regarding a definition that would allow Abbott to respond to this discovery.  We asked if Abbott uses a similar calculation in the ordinary course of business that we could embrace as part of the definition.  You insisted that we had to come up with a new definition.  We explained that such a hit or miss approach would be unproductive because we could offer to modify the definition a hundred different times only to be met by another Abbott rejection.  If Abbott purportedly needs to impose a particular meaning on "average" or "estimated" before it can respond to this discovery, Abbott is in the best position to help define that meaning.  You refused to change your position on this objection.

Sales Force and Organizational Charts

        Abbott's answers to several Interrogatories relied upon the information contained in organizational charts.  We explained that such reliance was insufficient because not all employees involved in many issues were listed in organizational charts.  Abbott explained that it was still trying to identify the number of people in its field sales force.  The size of the field sales force would then determine whether Abbott would provide us the names of those people as requested in Interrogatory 8.  An answer on this issue will be provided on or before February 15, 2007.  In all other respects, Abbott stands on its answers and objections as stated.

Interrogatory Number 10 Regarding Communications with Congress or other Government Offices

        You asked us to narrow this Interrogatory.  We offered to eliminate subpart (a) so that the Interrogatory was limited to reimbursement issues.  You declined.  Other discussions on this item were not fruitful.

Interrogatory Number 12 Regarding Determination and Reporting of Prices

        You explained that Abbott is still collecting documents responsive to this Interrogatory and you will provide an updated answer on or before February 15, 2007.  However, you will not provide any

R. Christopher Cook
Jason G. Winchester
January 25, 2007
Page 5

information regarding agents or outside firms, or regarding AWP or AMP.  We asked why this answer
was limited to Texas and didn't include other states.  We noted that it appeared that the other states were
omitted even though there may be responsive information regarding those other states.  You said that
there was not.  We asked that Abbott clarify its answer to make it clear that there was no information
about the other states and that no such information was being held back on the basis of any objection.
You refused.

Interrogatory Number 16

You agreed to supplement this answer to say in responding you also relied upon information
contained in Abbott's rule 26(a)(1) disclosures.  It does not appear that your proposed approach will
resolve the inadequacies of Abbott's answer to this interrogatory but we will wait to see it before taking
further action.

Request for Admission 14

We noted that Abbott's response to this request was solely dependent upon its Home Infusion
Services division, but that the request encompassed both direct and indirect participation in the
submission of claims.  We articulated the concern that Abbott has or had a reimbursement division
separate and apart from the Home Infusion Services division and that a broader answer seemed required
by this request.  You insisted that any reimbursement assistance was limited to the Home Infusion
Services division and that if there was a reimbursement department it had to have been a part of the
Home Infusion Services division.  In any event, our efforts to explore whether Abbott's response relied
upon semantics regarding the language of the request were unsuccessful and we reached an impasse on
this RFA as well.

Thank you for your attention to this matter.  If you have any questions, please feel free to contact
me.

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

Mark A. Lavine
Assistant U.S. Attorney
(305) 961-9303
(305) 536-4101 Fax
Mark.Lavine@usdoj.gov

Cltera 2 8 07.wpd

cc:     Carol Geisler
        James Breen

**3-5**

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number:  (212) 326-8376
tcitera@jonesday.com

JP177138                    February 28, 2007

VIA ELECTRONIC TRANSMISSION

Mark A. Lavine
Assistant U.S. Attorney
Southern District of Florida
99 N.E. 4 Street
Miami, FL 33132

Re:    United States of America, ex rel., Ven-A-Care of the Florida Keys, Inc. v. Abbott
       Laboratories, Inc., MDL 1456

Dear Mr. Lavine:

       This letter responds to your letter dated February 8, 2007 regarding our January 31, 2007
Meet and Confer on Abbott's Responses to the United States' First Set of Interrogatories and
Requests for Admission ("RFAs").  In your letter, you indicate that, with the exception of
Interrogatories 8, 12 and 16, the government will consider the meet and confer closed.  We
agree, except as to those issues identified below for which we have agreed to supplement, amend
or reconsider Abbott's responses.

       ## General Issues Applicable to All RFAs and Interrogatories

       The government continues to pursue a virtually-boundless fishing expedition about a
variety of topics (PPD drugs, etc.) that have no relation to the claims made in the complaint.  We
have invited you on numerous occasions to explain how the extraneous discovery you seek is
either relevant or reasonably calculated to lead to the discovery of admissible evidence.  In
response, the best the government has been able to offer is the notion that any supposed "bad
acts" it can uncover about Abbott will be admissible to prove the government's pending fraud
claims.  This is little more than "because I said so," and it is wrong as a matter of law in any
event, as we spelled out in our response to the government's recent motion to compel.  Absent
some better explanation, the government's refusal to tailor its discovery to this case strikes as
merely an effort to harass Abbott, delay the proceedings, and increase the burden and expense of
litigation.  Accordingly, Abbott stands by its general objections except as otherwise stated in
Jason Winchester's letter to Renee Brooker, dated February 5, 2007.

       As to Interrogatory 12, we agreed to supplement Abbott's answer as it relates to WAC
price, Direct Price and List Price.  We refused to supplement Abbott's response as to AMP on
the grounds stated in Jason's letter.  Further, I indicated that we could not supplement Abbott's
answer with respect to AWP, because Abbott did not set AWP for the drugs named in th

3-6

JONES DAY

Mark A. Lavine
February 28, 2007
Page 2

Complaint.  Your discussion of documents that relate to a drug not at issue in this case is misplaced.

> Sharing of Documents Produced in Other Litigation

I understand that Judge Saris spoke to this issue yesterday and that Jim Breen will be providing some additional information.  I further understand that Judge Saris recommended the parties present a proposed order that would outline a possible resolution to this matter.

> Waiver as to Oral Communications or any Communications within the Scope of
> Objections

We continue to investigate what, if any, additional communications Abbott had with the government regarding the issues identified in this case.  We will supplement our response as appropriate in accordance with the Rules.  We disagree with your suggestion that Abbott has somehow waived its right to introduce any such evidence at a later date.  Abbott has not only the right, but the duty, to supplement its responses under Rule 26(e) based upon the results of its continuing investigation.  The government has no authority to abrogate this rule by fiat.  Further, although we understand that the government will be sensitive to issues of prejudice, your categorical proclamation that the government will be unduly prejudiced by any supplemental disclosure is not credible.

> Abbott's General Objection 2 to the Interrogatories

Abbott will withdraw General Objection 2 to the Interrogatories.

> Abbott's Objection to the United States' Definition of Spread

During our meet and confer, we discussed the term "Spread" as used in the government's Interrogatories and RFAs.  We pointed out some of the many problems with the government's definition of that term, including the fact that, as defined, the term includes private insurance, which is not at issue in this case, and the fact that the definition does not take into account any costs associated with dispensing or administering the drugs.  The government agreed to take private insurance out of the definition.  We do not recall the government offering to correct the latter issue.  It appears that you are now doing so.

We have reviewed Abbott's answers to the interrogatories and our responses to the RFAs in light of the government's further revised definition.  We responded to interrogatories 3, 4, 5, 17 and 18 and RFA 10 and our answers stand.  As for RFAs 5, 6 and 7, your offer to change the definition makes no difference because these RFAs are stated in such a fashion that Abbott could not possibly admit or deny them.  Despite the absurdity of these requests, Abbott has done its best to respond accurately.

**3-7**

JONES DAY

Mark A. Lavine
February 28, 2007
Page 3

<u>Abbott's Objection to the United States' Definition of "Average or Estimated Acquisition
Cost"</u>

Several of the government's interrogatories and RFAs seek information regarding
"Average or Estimated Acquisition Cost." Abbott objected to those requests on numerous
grounds including the fact that the term is vague and ambiguous (cost to whom?, for example).
In response, you requested that *Abbott* undertake to define this term for the government in a way
that would meet the government's needs. As I explained, this is not a workable solution. Setting
aside the fact that Abbott ought not be asked to do the government's work, we cannot really be
asked to craft a definition without understanding exactly what the government wants –
knowledge that is exclusively in your control.   If the government has a revised definition,
Abbott will consider it, but we cannot define it for you. Further, I would note that Abbott did in
fact attempt to provide responses to several of the government's interrogatories and RFAs that
used this term and we stand by those responses.

<u>Sales Force and Organizational Charts</u>

We have determined that at any one time, there were approximately 48 sales
representatives in the Alternate Site group. Given the number of years for which the government
is seeking discovery, the total number of representatives will increase exponentially.
Nevertheless, we are trying to identify the sales representatives and will supplement our answer
as soon as we can.

<u>Interrogatory Number 10 Regarding Communications with Congress or other
Government Offices</u>

Interrogatory Number 10 seeks all communications that Abbott has had with any
Congressional or other federal or state government office regarding its pharmaceuticals and
regarding any legislation, rule-making or policies related to reimbursement for Abbott's
pharmaceuticals. This interrogatory is potentially boundless. In our discussions, you offered to
limit the interrogatory to part B – in other words you were no longer seeking every
communication that Abbott had with any government office regarding any of its pharmaceuticals
over a 22 year period, but rather every communication that Abbott had with any government
office regarding reimbursement of any of its pharmaceuticals over a 22 year period. We
continue to believe that your interrogatory is overbroad and problematic for the other reasons
identified in our response. Nevertheless, Abbott will review its response to the interrogatory in
light of the government's proposed compromise and determine whether it can supplement its
answer.

<u>Interrogatory Number 12 Regarding Determination and Reporting of Prices</u>

See above.

**3-8**

JONES DAY

Mark A. Lavine
February 28, 2007
Page 4

Interrogatory Number 16

As you noted, we will supplement our answer to Interrogatory Number 16.

Request for Admission 14

In connection with Abbott's response to RFA 14, you suggested that Abbott has or had a reimbursement division separate and apart from home infusion services. I responded that I was not aware of a separate group outside of home infusion services (nor am I currently aware of a separate group outside of home infusion services), but that I would look into it. I did not, as you suggest, insist that it did not exist. Nor do I agree that we reached an impasse on this issue. We will supplement Abbott's response if we determine there was a separate group. Further, it would appear that your supposition is based on either a document or some testimony. To the extent you can point us to any documents or testimony, perhaps we can clarify this issue for you or, in the alternative, focus our search.

Thank you for your attention to this matter. If you have any questions, please contact me.

Very truly yours,

Toni-Ann Citera

cc:    Jason G. Winchester
       Carol Geisler
       James Breen

**3-9**