# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 95-1354-CIV-GOLD

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. <br><br> VEN-A-CARE OF THE FLORIDA KEYS, INC. a Florida Corporation, by and through its principal officers and directors, ZACHARY T. BENTLEY and T. MARK JONES, <br>               Plaintiff, <br><br>vs. <br><br>ABBOTT LABORATORIES, INC., <br><br>               Defendant. | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730** |

## COMPLAINT

The United States brings this fraud action against Abbott Laboratories, Inc. and Hospira, Inc. (collectively "Abbott") to recover losses sustained by the Medicare and Medicaid programs. Over the course of several years, Abbott reported inflated pharmaceutical prices that it knew Medicare and Medicaid relied upon to set reimbursement rates for Abbott's pharmaceutical products. Abbott's actual sales prices for its pharmaceutical products were far less than the prices reported by Abbott. By knowingly reporting inflated prices – often 1000% higher than Abbott's actual prices – Abbott ensured its customers received inflated reimbursement and profits from Medicare and Medicaid. Abbott then used the public fisc as a marketing tool, actively promoting government-funded "spreads" between (1) its fraudulently inflated prices and (2) its actual sales prices as an inducement to its customers. These efforts allowed Abbott to increase its profits by boosting sales for its drugs.

CIVIL ACTION NO: 95-1354-CIV-GOLD

        C.     requiring the drug companies to certify prices directly in writing to the Medicaid program in response to state requests for particular pricing information.

        42.     AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient. WAC is used to refer to the price at which a pharmaceutical firm typically sells a drug to wholesalers who would then resell it to a retail Customer.

        43.     While the majority of states use published AWPs to calculate reimbursement, approximately nine states (Alabama, Arkansas, Colorado, Florida, Maryland, Massachusetts, Ohio, Rhode Island, and Texas) use the wholesale acquisition cost ("WAC") to set the EAC.

        44.     The AWPs and WACs relied upon by the State Medicaid programs have generally been those published by (1) Thomson Publishing, publisher of the *Red Book* and various other price publications, (2) First Databank, publisher of the *Blue Book* and other electronic price publications; or (3) Medi-Span, Inc., publisher of an electronic or automated price service and the Hospital Formulary Pricing Guide. Thompson Publishing, First Databank and Medi-Span, Inc. are hereafter referred to as the "Publishers" and their various publications and data services are hereinafter referred to as "Price Publications."

        45.     In addition to relying on the manufacturers' reported prices as published in the Price Publications, some State Medicaid programs also received price representations directly from manufacturers, and relied on these representations to confirm the accuracy of the figures they use to determine state reimbursement amounts. For example, the State of Texas required drug companies to submit their prices directly to the Texas Medicaid program in a signed

14

Abbott's LVPs when the typical acquisition costs for those Customers were a fraction of that amount.

## FIRST CAUSE OF ACTION

(False Claims Act: Presentation of False Claims)
(31 U.S.C. § 3729(a)(1))

102.  Plaintiff repeats and realleges ¶¶ 1 through 101 as if fully set forth herein.

103.  Abbott knowingly caused to be presented false or fraudulent claims for payment or approval to the United States for the Drugs for reimbursement that were substantially higher than providers' actual acquisition costs for the Drugs and based on reported prices that were fraudulently and artificially manipulated by Abbott. Abbott knowingly used the spread as an unlawful inducement in violation of the federal anti-kickback statute, causing resulting false and fraudulent claims to be submitted.

104.  By virtue of the false or fraudulent claims that Abbott caused to be made, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus civil penalties of not less than $5,000 and up to $10,000 for each violation occurring before September 29, 1999, and not less than $5,500 and up to $11,000 for each violation occurring on or after September 29, 1999.

CIVIL ACTION NO: 95-1354-CIV-GOLD

## SECOND CAUSE OF ACTION

(False Claims Act: Making or Using False
Records or Statements to Cause Claims to be Paid)
(31 U.S.C. § 3729(a)(2))

105.   Plaintiff repeats and realleges ¶¶ 1 through 101 as if fully set forth herein.

106.   Abbott knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false certifications and representations made or caused to be made by defendants to state Medicaid programs when seeking to ensure that the Medicaid programs would reimburse for the Drugs, and the false representations to the Publishers upon which Medicare and Medicaid relied – to cause false or fraudulent claims paid or approved by the United States.

107.   By virtue of the false records or false statements made by Abbott, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus civil penalties of not less than $5,000 and up to $10,000 for each violation occurring before September 29, 1999, and not less than $5,500 and up to $11,000 for each violation occurring on or after September 29, 1999.

## THIRD CAUSE OF ACTION

(Unjust Enrichment)

108.   Plaintiff repeats and realleges ¶¶ 1 through 101 as if fully set forth herein.

109.   This is a claim for the recovery of monies by which Abbott has been unjustly enriched, including profits earned by Abbott because of illegal inducements Abbott arranged to be paid to its Customers.

27

CIVIL ACTION NO: 95-1354-CIV-GOLD

110. By obtaining monies as a result of its violations of federal and state law, Abbott was unjustly enriched, and is liable to account for and pay such amounts, which are to be determined at trial, to the United States.

111. By this claim, the United States requests a full accounting of all revenues (and interest thereon) and costs incurred by Abbott on sales to Customers to whom it arranged for unlawful inducements, and disgorgement of all profits earned and/or imposition of a constructive trust in favor of the United States on those profits.

## FOURTH CAUSE OF ACTION

(Common Law Fraud)

112. Plaintiff repeats and realleges ¶¶ 1 through 101 as if fully set forth herein.

113. Abbott made material and false representations concerning the prices of the Drugs with knowledge of their falsity or reckless disregard for the truth, with the intention that the United States act upon the misrepresentations to its detriment. The United States acted in justifiable reliance upon Abbott's misrepresentations by making payments on the false claims.

114. Had the true facts of Abbott's false price reporting as set forth in this Complaint been known to the United States, the United States would not have paid for Abbott products.

115. By reason of these payments, the United States has been damaged in an as yet undetermined amount.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against Abbott, jointly and severally, as follows: