# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| *State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS (Nevada II), and | |
| *State of Montana v. Abbott Labs., Inc., et al.*, Cause No. CV-02-09-H-DWM (D. Mont.) | |

### MONTANA AND NEVADA'S JOINT OPPOSITION TO DEFENDANTS' MOTIONS TO STRIKE THE DECLARATIONS OF DOROTHY POULSEN, CHARLES DUARTE AND COLEEN LAWRENCE

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ...........................................................................................................1

    A.    A Party Opposing Summary Judgment May Submit Factual Statements That
Explain and Supplement a Witness's Deposition Testimony ..................................2

    B.    "The Meticulous Poulsen" did not "Manufacture" a Factual Dispute – the
Declaration Does Not "Contradict" Her Deposition Testimony; the Court
Should Allow the Declaration to Stand ...................................................................3

    C.    The Duarte and Lawrence Declarations Do Not "Contradict" Their
Deposition Testimony; the Court Should Allow the Declarations to Stand ...........6

        1.    The facts established by Court Order do not mandate changing
any portion of the Duarte and Lawrence Depositions .................................6

        2.    The Duarte and Lawrence Declarations do not contradict prior
deposition testimony in other ways.............................................................8

    D.    All Three Declarations Comply With Rule 56(e) Admissibility Requirements ....10

II.  CONCLUSION .............................................................................................................12

## I.    INTRODUCTION

Montana and Nevada ("States") jointly oppose Defendants' separate motions to strike the declaration of Dorothy Poulsen,[1] submitted by Montana in support of its opposition to Defendants' joint motion for summary judgment, and the declarations of Charles Duarte and Coleen Lawrence,[2] submitted by Nevada in support of its opposition to Defendants' joint motion for summary judgment.  Although the motions to strike were filed separately, the legal bases Defendants state are nearly identical.  And the outcome sought by the States is the same:  the declarations should be allowed.  Therefore, the States respond jointly.  The States identify factual differences where necessary.

The common grounds on which Defendants seek to strike the three declarations are: (i) Defendants' claims that the declarations contradict the witnesses' deposition testimony; and (ii) the assertion that the declarations are not based on personal knowledge.  The common grounds fail as to all declarations.  A comparison of the declarations to the testimony proffered by the Defendants shows that the declarations are not contradictory.  Defendants' arguments go to the weight the Court might give to the evidence, not its admissibility.  The alleged lack of personal knowledge on the part of the declarants is belied by the contents of the declarations themselves and also corroborated in each case by the declarant's role within the Medicaid pharmacy programs.

The Nevada Defendants submit an additional and unfair argument:  the Duarte and Lawrence declarations do not conform to the "established facts" set forth in Magistrate Bowler's Report and Recommendation Re:  Defendants' Joint Motion for Redress for Spoliation of

---

[1] The States refer to Dorothy Poulsen's declaration as "Poulsen declaration" or "Poulsen Decl."

[2] The States refer to Charles Duarte's declaration as "Duarte declaration" or "Duarte Decl."  The States refer to Coleen Lawrence's declaration as "Lawrence declaration" or "Lawrence Decl."  The States refer to the Duarte and Lawrence declarations collectively as "the Nevada declarations."

Evidence (Dkt. No. 3843) ("Magistrate's Report & Recommendation") and adopted with modifications by Electronic Order (Saris, J.) dated March 26, 2007.  Nev. Def. Mem. at 1, 2, 3, 5.  Arguments based on any such inconsistencies are unfair because of the respective timings of the Magistrate's Report & Recommendation (Mar. 14, 2007), the submission of the Nevada declarations (Mar. 22, 2007), the parties timely objections to the Magistrate's Report & Recommendation (Mar. 25, 2007), and the Court's Order adopting the Magistrate's Report & Recommendations with amendment (Mar. 29, 2007).  Neither party could have known the "established facts" ultimately entered by the Court at the time the Nevada declarations were filed.  Nevada submits that the Duarte and Lawrence declarations comport with the final "established facts," if the Court finds that this is not the case, the State respectfully requests the opportunity to cure any discrepancies between the Nevada declarations and the facts "established" by the Order.

## A.     A Party Opposing Summary Judgment May Submit Factual Statements That Explain and Supplement a Witness's Deposition Testimony

It is undisputed that "a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony is changed."  *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001).  Claims that a party has manufactured a dispute in this way should be treated very carefully.  In evaluating such a claim for purposes of striking an affidavit or declaration, federal courts exercise extreme caution.  "If a witness has made an affidavit and his deposition has also been taken, and the two in some way conflict, the court may not exclude the affidavit from consideration in the determination of the question whether there is a genuine issue as to any material fact."  *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (quoting 6 Moore, Federal Practice para. 56.22[1] at 2814 (2d ed. 1965); *see also Kennett-Murray Corp. v. Bone*, 622 F.2d

887, 893 (5th Cir. 1980) (["i]n considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition").

In evaluating affidavits or declarations challenged on grounds of "discrepancies" or "inconsistencies" or "contradictions" of deposition testimony, courts recognize that the challenge may be resolved short of striking the affidavit.  It is important to consider the weight accorded different sources of evidence as well as "the jury's role in resolving questions of credibility." *Id.* at 894.  A court, thus, should not reject the contents of a declaration even if it is at odds with statements made in earlier depositions. *Id.*

An affidavit may play an important role in clarifying deposition confusion, a witness's lack of access to material facts or other newly-discovered evidence. *Miller v. A.H  Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985).  It is common for a witness to supplement his or her deposition testimony with a declaration in connection with summary judgment or other briefing. It is a practice followed often in the AWP MDL case where defendant drug manufacturer employees have given depositions followed by declarations.  In addition, fact declarations may be necessary to submit evidence that was not elicited by the opposing party's examination. Opposing counsel's failure to ask questions that would elicit unfavorable testimony from a party's witness could be strategic.

**B.    "The Meticulous Poulsen" did not "Manufacture" a Factual Dispute – the Declaration Does Not "Contradict" Her Deposition Testimony; the Court Should Allow the Declaration to Stand**

The State denies that the Poulsen declaration "contradicts" Mrs. Poulsen's deposition testimony.  The State submitted the Poulsen declaration to supplement Mrs. Poulsen's February 2006 deposition testimony.  Poulsen Decl. at ¶ 4.  This became particularly important when

- 3 -

Defendants' joint briefing on summary judgment revealed how Defendants would manipulate Mrs. Poulsen's testimony to support their position.

The process undertaken to create Mrs. Poulsen's declaration is important given the defense's serious charge that the declaration "manufactur[es] issues of actual dispute."  Mont. Def. Mem. at 1.  It is insulting that Defendants would make the accusation that a woman Defendants themselves describe as "the meticulous Poulsen" would be willing to help "manufactur[e]" issues of factual dispute.  Mont. Def. Mem. at 4.  After Defendants' motions were filed, Montana counsel contacted Mrs. Poulsen to discuss Defendants' use of her testimony. Mrs. Poulsen did not agree with Defendants' interpretation of her words and was willing to explain what she meant via declaration.[3]  Over the course of two to three weeks, counsel reviewed Mrs. Poulsen's testimony with her and developed the Poulsen declaration. Breckenridge Decl., ¶ 3.

Mrs. Poulsen clearly states her reasons for filing the declaration:  to "supplement" her deposition testimony, Poulsen Decl. ¶ 1.  Mrs. Paulsen also carefully distinguishes her deposition testimony where necessary.  For example, Mrs. Poulsen puts her comment, "we understood that AWP didn't reflect the average wholesale price," into context:  "We believed that by applying a 10% discount to AWP we were approximating acquisition costs.  This is what I meant when at my deposition, I testified that 'we understood that AWP didn't reflect the average wholesale price.'"[4]

---

[3] *See* Declaration of Jeniphr Breckenridge in Support of Montana and Nevada's Joint Opposition to Defendants' Motions to Strike the Declarations of Dorothy Poulsen, Charles Duarte and Coleen Lawrence ("Breckenridge Decl."), ¶ 2.

[4] Defendants' complain that Poulsen Decl. ¶ 8 also "contradicts" her deposition testimony about understanding what an Arkansas Medicaid Director meant by the use of certain terms, but this is absurd.  Mrs. Poulsen's declaration does not refer to the Arkansas correspondence and there was no foundation laid for Mrs. Poulsen's "understanding" of what someone else meant.

Mrs. Poulsen was not asked during the course of her deposition about many of the points the Poulsen declaration raises.  For instance, neither Mrs. Poulsen nor any other witness was asked about specific inflationary spreads created by the drug manufacturers' practices.  Poulsen Decl. at ¶ 12.  Mrs. Poulsen was also not asked about the feasibility to the Medicaid program of alternatives to the AWP-based systems used.  Poulsen Decl. at ¶¶ 14-17.

The Poulsen declaration is inherently credible for several reasons.  As noted above, even Defendants denominate her "the meticulous Poulsen."  Mont. Def. Mem. at 4.  This careful *former Montana Medicaid* employee with a Ph.D, who has been retired from Montana government for six years has no incentive to "manufacture" the contents of her declaration.  Equally as important, numerous aspects of her declaration are corroborated by the testimony of other Montana Medicaid personnel, including Jeff Buska who filed a similar declaration which the Montana Defendants have not challenged.[5]

At best, Defendants have outlined challenges to the weight the ultimate trier of fact should give to the Poulsen testimony – not whether it should be considered in connection with Montana's opposition to the Defendants' joint summary judgment motion.  To the extent Defendants raise concerns about revisions to Poulsen testimony, the trier of fact can weigh the credibility of both sources of evidence.  The Poulsen declaration is valid evidence the contributes to the material fact questions raised by Defendants' motion and should be considered along with the other evidence submitted by both parties.  Defendants' motion as to the Poulsen declaration should be denied.

---

[5] *See* Declaration of Jeff Buska In Support of Montana's Opposition to Defendants' Joint Motion for Summary Judgment (Dkt. No. 3906-1).

**C.**     **The Duarte and Lawrence Declarations Do Not "Contradict" Their Deposition Testimony; the Court Should Allow the Declarations to Stand**

The Duarte and Lawrence declarations similarly do not "contradict" their extensive deposition testimony; rather, like the Poulsen declaration the Nevada declarations explain portions of their testimony or provide facts not elicited by Defendants' deposition examinations.

**1.**     **The facts established by Court Order do not mandate changing any portion of the Duarte and Lawrence Depositions**

Nevada accepts the "established facts" adopted by the Court, as it must. As described above, the declarations were drafted and submitted before Defendants' request to "establish facts" was resolved finally. To the extent the Duarte and Lawrence declarations contains facts that undermines facts now established by the Court's ruling, the State will revise the declaration at the Court's request.

For example, Mr. Duarte submits facts undermining Defendants' argument that Nevada Medicaid had knowledge of how other Nevada state pharmacy programs purchased or reimbursed for drugs. *See*, *e.g.*, Duarte Decl. at ¶ 50. As a result of the Court's March 29, 2007 Order, it is now established that "after May 2000, Nevada had information regarding how three other Nevada pharmacy programs, namely Mental Health, Public Employee Benefits, and Senior Rx, acquired and/or reimbursed drugs." The States are willing to withdraw Duarte Decl. ¶¶ 50-51 and 57 based on the Court's Order.

Nevada takes exception with Defendants' attempts to manufacture additional "contradictions" based on the Court's Order. Defendants go out of their way to manufacture a conflict regarding Duarte and Lawrence declaration statements regarding drug pricing – insinuating that the witnesses' general statements regarding the Medicaid program's inability to obtain manufacturer prices directly contradicts the "established fact" that four companies out of the scores of companies for whose drugs Nevada Medicaid reimbursed provided pricing

information to the program.  Defendants assert that the Court should strike Duarte Decl. ¶ 58 and Lawrence Decl. ¶ 24 on this basis.  But the Duarte and Lawrence declaration statements on drugs are much broader than the established fact involving just four defendants.  Nev. Def. Mem. at 7 n.7.  There is no "contradiction" or "inconsistency" substantial enough to justify striking the paragraphs, let alone the declarations altogether.  The additional basis Defendants cite – that the paragraphs are "irrelevant" – is not a recognized basis for striking fact declarations.

Defendants ask the Court to strike Duarte Decl. ¶ 58 and Lawrence Decl. ¶ 24 on the additional basis that the contents are "largely irrelevant."  Defendants are wrong; the statements are relevant.  The accessibility of true pricing information from the drug manufacturers goes directly to Defendants' "government knowledge defense" and whether the States had access to information that would have put the lie to the published AWPs earlier.

Defendants assert that Duarte Decl. ¶¶ 32-33 and Lawrence Decl. ¶ 37 statements are inconsistent "by virtue of established fact 1," but then continue by detailing the ways in which the "these assertions are contradicted by the OIG Reports themselves."  Duarte Decl. at ¶¶ 32-33 and Lawrence Decl. at ¶ 37.  Notably, Defendants do not suggest that the statements contradict Duarte and Lawrence testimony.  But the argument Defendants offer is neither accurate nor a standard for striking the declarations or any part thereof.  Whether or not the reports provided Nevada with notice of a systemic problem with drug pricing and the Medicaid program's reimbursement methodology is a material fact to be resolved by the fact-finder in this case.  Defendants say that the reports provided notice to the Nevada Medicaid program while Mr. Duarte, Ms. Lawrence and other Medicaid personnel insist that there was nothing within those reports that would have notified them of the systemic problems that were eventually revealed.  Assuming this is even relevant given the plain meaning of the statute.

- 7 -

"Established Fact 1" does not resolve this genuine issue of material fact.  "Fact 1" as adopted by the Court is:

> After May 2000, Nevada had a practice of maintaining OIG
> Reports relating to pharmacy reimbursement and circulating them
> among employees with responsibilities for the State's Medicaid
> pharmacy reimbursement rates.

Magistrate Report & Recommendations at 26.  This far less specific than Defendants' assertion that "***Mr. Duarte and Ms. Lawrence*** are deemed to have received ***and reviewed*** the fourteen OIG Reports relating to pharmacy reimbursement."  Nev. Def. Mem. at 3 (emphasis added).  The statements Defendants move to strike related to the reports do not contradict Established Fact 1; both witnesses acknowledge receiving OIG reports.  The witness statements also cover matters not established by the Court's order:  what – if anything – they concluded based on their receipt of reports.  There is no "established fact" covering this point.  Defendants did not elicit their understanding during the dozens of hours they spent deposing these individuals.  Thus, Defendants should not be allowed to chill these facts from being considered.

**2.      The Duarte and Lawrence Declarations do not contradict prior deposition testimony in other ways**

Neither Chuck Duarte's or Coleen Lawrence's declarations contradict their prior deposition testimony.  Nev. Def. Mem. at 9-18.  Comparing the declaration with the excerpts Defendants provide prove this.

Defendants argue, for example, that Mr. Duarte's declaration statements that he believed that AWP bore a reasonable relationship to actual acquisition cost contradict his deposition testimony.  At most, however, Mr. Duarte's deposition testimony establishes that he understood that AWP and actual acquisition costs were not the same, Nev. Def. Mem. at 11, a belief Mr. Duarte affirmed in his declaration.  Duarte Decl. at ¶ 25.  Defendants never asked Mr. Duarte the clear and simple question of what he understood the relationship between AWP

and actual acquisition cost to be.  If they had, they would have elicited the statements in the declaration.

As to Ms. Lawrence's declaration statements that she believe that there was a direct relationship between AWP and actual costs, again Defendants never asked Ms. Lawrence the clear and simple of question of what she believe was the relationship between AWP and actual acquisition cost and what she and her colleagues thought they were achieving by discounting AWP.  Again, if they had, they would have elicited the statements in the Lawrence declaration. Instead, Defendants are reduced to relying on two attenuated sources to "prove" a contradiction between the Lawrence declaration and Lawrence testimony:  exhibits from other witnesses depositions (Duarte and Hansen) and the fact that she received and reviewed OIG reports.  Nev. Def. Mem. at 12-14.  None of these sources of information create the contradiction federal courts look for before they take the drastic measure of striking affidavits.

Similarly, defendants claim that Duarte and Lawrence's statements that OIG reports put them on notice of the systemic spreads sued upon here contradict other evidence in the case. Nev. Def. Mem. at 14-16; Lawrence Decl. at ¶¶ 36-39, Duarte Decl. at ¶¶ 32-44, 46, 48.  The best evidence Defendants can adduce of these "contradictions" is the underpinnings of "established fact 1":  Nevada Medicaid's "receipt and circulation" of OIG reports.  *Id.*  As stated above, Nevada does not (and now cannot) challenge the receipt and circulation of the reports – but the conclusions Duarte and Lawrence and the Nevada Medicaid program as an institution drew from the receipt of the reports is an entirely different fact question, one that is in dispute and must be resolved by the trier of fact.  Defendants identify (without quoting) a number of deposition excerpts which could be construed as circumstantial evidence of Duarte and Lawrence "knowledge," but none of it rises to the level of the contradiction required to strike their

- 9 -

declaration testimony.  Duarte Decl. ¶¶ 30, 32-44, 46, 48 and Lawrence Decl. ¶¶ 36-39 should not be stricken.

Finally, Defendants argue that Duarte's declaration and deposition testimony contradict one another with respect to Nevada's approximation of EAC via the AWP -15 % formula.  Once again, at best, Defendants cite circumstantial evidence from which Defendants might argue that Duarte "did not believe that AWP -15% approximated acquisition costs," but they have not cited directly contradictory testimony.  Duarte was not asked the question at his deposition; Duarte Decl. ¶¶ 21-22 properly amplifies ***not contradicts*** testimony given.  Duarte Decl ¶¶ 21-22 should stand.

**D.     All Three Declarations Comply With Rule 56(e) Admissibility Requirements**

The Montana and Nevada Defendants challenge all three declarations on the grounds that the declarations "run afoul of"[6] or "fail to comply with"[7] the admissibility requirements of Rule 56(e).[8]  The First Circuit has admonished that "[t]he rule requires a scalpel, not a butcher knife." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001).  Courts must take a selective approach to the exclusion of affidavit portions on the basis of the rule, discrediting only those parts that are inadmissible.  *Id*.

Here, the Defendants identify the specific paragraphs they contend do not meet the Rule 56(e) standard, and they are numerous.  The Nevada Defendants draw the general conclusion that the paragraphs cited do not meet the standard and pair it with the same conclusory statement for each:  "Incompetent owing to lack of personal knowledge."  *See* Nev. Def. Mem. at Attachments A-B.  This makes it difficult to address the Nevada Defendants'

---

[6] Nev. Def. Mem. at 18.

[7] Mont. Def. Mem. at 9.

[8] Nev. Def. Mem. at 18; Mont. Def. Mem. at 9.

- 10 -

"concerns."  As to their only specific allegation that both Mr. Duarte and Ms. Lawrence lack personal knowledge because their tenures at Nevada Medicaid began in 2000 and 2001 respectively, Nevada replies that given their positions and responsibilities with Nevada Medicaid, Mr. Duarte and Ms. Lawrence are in unique positions to hold personal knowledge about virtually all aspects of the operation of the Medicaid pharmacy program.  Mr. Duarte has been the Medicaid Director since his arrival at Nevada Medicaid seven years ago.[9]  Inherent in the assumption of this leadership position is the development of historical knowledge.  The same is true for Ms. Lawrence.[10]  Ms. Lawrence has had authority for the pharmacy program since her arrival six years ago.[11]  Inherent in her position is the development of historical knowledge of the program and program operations.  Furthermore, both Mr. Duarte and Ms. Lawrence were Rule 30(b)(6) designees on behalf of Nevada on relevant topics covering the relevant time period of this lawsuit:  1991 to the present.  To prepare for the depositions, each witness had to develop their knowledge further.[12]

Unlike the Nevada Defendants, the Montana Defendants give exemplars of the statements for which they argue Mrs. Poulsen lacks personal knowledge, but they are no more convincing than the Nevada Defendants' conclusory statements.  The Montana Defendants cite to Mrs. Poulsen's use of the term "the State's assumption," Poulsen Decl. ¶ 7, or what "Montana Medicaid believed," Poulsen Decl. ¶ 10, and then criticize the declaration for not using what Defendants seem to accept as magic words:  "I believed" or "I was aware of."  Def. Mont. Mem. at 10.  Looking at the language of the paragraphs, however, show that the contents are based on

---

[9] Breckenridge Decl., Ex. 1 (Duarte Dep. at 43:3-6, 22).

[10] Breckenridge Decl., Ex. 2 (Lawrence Dep. at 18:8-20:1).

[11] *Id.* (Lawrence Dep. at 17:15-20:1).

[12] Breckenridge Decl., Ex. 1 (Duarte Dep. at 63-87) and Ex. 2 (Lawrence Dep. at 29-43).

Mrs. Poulsen's personal knowledge as the pharmacy program officer from 1996-2001 and is information she would have in that position. In Poulsen Decl. ¶ 7, she states "we assumed," two times. Similarly, Poulsen Decl. ¶ 10 states that because Montana Medicaid believed that they were approximately actual acquisition costs, they certified to the federal government that they were approaching EAC. Certainly Defendants cannot seriously contend that this was not within her personal knowledge as the pharmacy program officer or that the intent of these paragraphs is to convey anything other than Mrs. Poulsen's personal knowledge.

The Montana and Nevada Defendants' arguments regarding the requisite knowledge under Rule 56(e) do not dispose of the declarations. Each of the declarants has the requisite personal knowledge. To exclude the complete collection of paragraphs Defendants complain of would be to use a "butcher knife" rather than a "scalpel" and is not warranted under the limited evidence Defendants have adduced here and Rule 56(e).

## II.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions to strike and consider the declaration of Dorothy Poulsen, submitted in support of Montana's opposition to Defendants' joint motion for summary judgment, and the declarations of Charles Duarte and Coleen Lawrence, submitted in support of Nevada's opposition to Defendants' joint motion for summary judgment.

In the alternative, the Court should allow the States to cure any deficiencies the Court identifies and resubmit revised declarations for consideration.

By  /s/ Steve W. Berman                     DATED:  April 25, 2007
Steve W. Berman
Sean R. Matt
Jeniphr A.E. Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

COUNSEL FOR THE
STATES OF MONTANA AND NEVADA

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

COUNSEL FOR THE
STATE OF MONTANA

Catherine Cortez Masto
Attorney General of the State of Nevada
L. Timothy Terry
Deputy Attorney General
100 N. Carson Street
Carson City,  NV 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

- 13 -

**CERTIFICATE OF SERVICE**

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA AND NEVADA'S JOINT OPPOSITION TO DEFENDANTS' MOTIONS TO STRIKE THE DECLARATIONS OF DOROTHY POULSEN, CHARLES DUARTE AND COLEEN LAWRENCE,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 25, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By_____/s/ Steve W. Berman_____
    Steve W. Berman
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    (206) 623-7292

- 14 -