# EXHIBIT 1

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-oOo-

In Re: PHARMACEUTICAL

INDUSTRY AVERAGE WHOLESALE

PRICE LITIGATION

_____              MDL DOCKET NO.

                                            CIVIL ACTION

                                            01CV12257-PBS

THIS DOCUMENT RELATES TO:

ALL ACTIONS

_____/


VOLUME I

DEPOSITION OF CHARLES DUARTE

NOVEMBER 15, 2005

CARSON CITY, NEVADA




REPORTED BY:   STEPHANIE ZOLKOWSKI CCR 283

COMPUTER-ASSISTED TRANSCRIPTION BY:   caseCATalyst

Duarte, Charles - Vol. I                     November 15, 2005
                    Carson City, NV

Page 42

1   A   Charlotte Crawford.
2   Q   Who is Charlotte Crawford?
3   A   She was the former Director of the Department
4   Of Human Resources now called Department of Health and
5   Human Services.
6   Q   Was there a particular reason why you were
7   recruited to come here?
8   A   I'm not sure what her reasons for contacting
9   me were.
10  Q   Did she have any particular concerns about
11  the Nevada Medicaid Program that she thought you were
12  the right person to try and fix?
13      MS. BRECKENRIDGE:  Objection.
14      You can go ahead and answer.  It's unlikely
15  I'll instruct you not to answer anything today.  I do
16  need to preserve my objection.
17      THE WITNESS:  I'm not sure I understand the
18  question.  Could you repeat it.
19      MR. DOVE:  Reads it back, please.
20          (Record read.)
21      THE WITNESS:  She didn't communicate to me
22  any concerns that she had about the program that she

Page 43

1   wanted me to fix.
2   BY MR. DOVE:
3   Q   You stated this earlier but again what is
4   your official job title now?
5   A   I'm the Administrator for the Division of
6   Health Care Financing and Policy.
7       And if I may, I should probably go back to
8   the prior question about Miss Crawford's concerns.
9       She didn't have concerns per se but had asked
10  me to fully develop the capacity, the policy capacity,
11  of the Division, stabilize staffing and develop an
12  information technology infrastructure.
13      So she did provide me with some general
14  goals.
15  Q   What did you say she asked you to do with
16  regard to the policy side again?
17  A   To more fully develop the Division's policy
18  capacity.  We didn't formally have a responsibility
19  for policy development.  It was in the Director's
20  office.
21      In 1997, we were given the responsibility.
22  So when I came on board in 2000, she asked me to more

Page 44

1   fully develop that.
2   Q   What does that mean in practical terms,
3   developing a policy?
4   A   Well, what it means is that we needed to make
5   sure, I needed to make sure, that the Division had
6   operated under clear regulation which was consistent
7   with our State Plan for Medicaid.  That those policies
8   and regulations were communicated to the public and to
9   the providers.  And that we maintained compliance to
10  those policies and also reviewed them periodically for
11  revision.
12  Q   I believe you said one of her -- one of the
13  other issues she raised with you was to stabilize
14  staffing; is that correct?
15  A   Yes.
16  Q   Was there a problem with staff turnover?
17  A   Yes.
18  Q   What was the nature of that problem?
19  A   I don't know all the reasons why people were
20  leaving.  But we had a large amount of -- relatively
21  large amount of turnover.  I don't know their
22  individuals reasons for wanting to leave.

Page 45

1   Q   What have you done to try to stabilize
2   staffing since you've arrived?
3   A   Trying to make sure that individuals that we
4   recruit into middle management position actually have
5   an interest in staying with the Agency and developing
6   within the Agency, making clear in our recruitment
7   activities bringing people in that want to learn and
8   be involved with the Medicaid Program.
9   Q   You mentioned a third issue which I have
10  since forgotten.  If you remember it?
11  A   Information technology infrastructure.
12  Q   What did Miss Crawford want you to try to do
13  there?
14  A   Develop a federally certified Medicaid
15  management information system.
16  Q   Was there a problem in that area prior to
17  your arrival?
18  A   Yes.
19  Q   What was the nature of that problem?
20  A   One was that the system as it operated was
21  old technology, Legacy based technology, had limited
22  capacity for data analysis and was a fundamentally

Duarte, Charles - Vol. I                              November 15, 2005
                        Carson City, NV

Page 62

1   Q  Are there any email groups that encompass the
2   directors of the various agencies and entities that we
3   discussed earlier that have some responsibility for
4   the purchase or reimbursement of prescription drugs?
5   A  Can you define what an email group is?
6   Q  It's -- I guess what I am trying to get at is
7   whether there are -- there's a way for you on an
8   organized list of directors who are involved in
9   prescription drug policy and prescription drug issues,
10  that if you wanted to ask a question or wanted to
11  share a policy thought you could send an email to that
12  group of people.
13  A  I don't do it directly but the Division I
14  administer does participate in list servers with other
15  pharmacy staff and other states, other state Medicaid
16  agencies.
17      Miss Lawrence is primarily user of that list
18  serve.
19      MR. DOVE:  Off the record.
20          (Recess.)
21      MR. DOVE:  Back on the record.
22      I would like to mark as Exhibit Duarte 001

Page 63

1   Notice of 30(b)(6) Deposition to State of Nevada.
2       (Exhibit Duarte 001 marked for identification.)
3   Q  Mr. Duarte, have you reviewed this 30(b)(6)
4   Deposition Notice before?
5   A  I believe so.  But I saw some similar
6   document.  I'm not sure if this is the precise one
7   that I saw.  I believe I have.
8   Q  What I would like in the most efficient way
9   possible is to identify which of these topics and sub
10  topics you are knowledgeable about.
11  A  All right.
12  Q  What I think I would like to do is throw that
13  question out there.
14      Are you knowledgeable about each of the
15  topics on this Notice?
16  A  Can I ask that we go through them, please.
17  Q  We can do it that way.
18      Mr. Duarte, I'm going to go through each of
19  these topics and sub topics on this Notice and ask you
20  if are knowledgeable about that particular topic.
21  A  Okay.
22  Q  Are you knowledgeable about topic 1 (a) the

Page 64

1   existence, nature, and location of documents
2   responsive to Defendants' First Set of Interrogatories
3   and Requests For Production to the State of Nevada
4   including, but not limited to, documents relating to
5   Plaintiff's compliance with the statutory and
6   regulatory provisions that are listed in 1 (a)?
7   A  I am frankly not familiar with the statutory
8   provisions in 1(a).
9   Q  If I were to represent to you these
10  provisions relate to requirements of equal access or
11  access to care, would you be knowledgeable with regard
12  to regulations related to access of care?
13  A  Can you show me the specific statute and
14  regulations?
15  Q  I can.
16  A  I don't normally memorize these by their USC
17  or CFR codes.
18      Is that the USC?
19  Q  Yes.  I'm going to show you a copy of Title
20  42 Chapter 7 sub Chapter 19 section 1396 (a) state
21  plans for medical assistance, otherwise the Social
22  Security Act or a portion of the Social Security Act

Page 65

1   and see if this refreshes your recollection.
2       Actually, Mr. Litow has informed me there's
3   actually a typo on this notice.  It should be 42 USC
4   section 1396 (a) (30), not (a) (3).
5   A  I'll look up (a) (30) then.
6       Yes.  I am familiar 42 USC section 1396 (a)
7   (30).
8   Q  Are you familiar with 42 USC section 1396 (a)
9   (54)?
10  A  Let me look up (a) (54), please.
11      You wouldn't happen to have our subsection 8
12  with you, would you?  All 54 refers to are subsection
13  8.
14  Q  We will take that under advisement maybe
15  during a break.  Borrow a book from Mr. Terry's
16  library.
17      But for the time being at least you are
18  familiar with 42 USC section 1396 (a) (30); is that
19  correct?
20  A  That is correct.
21  Q  Mr. Duarte, are you familiar with the items
22  in 1 (b), any evaluations, audits, analyses or reviews

Henderson Legal Services
(202) 220-4158

**Page 66**

1  of any aspect of Plaintiff's Medicaid Program from
2  January 1985 to the present?
3     A  Not to the extent in terms of the time frames
4  and breadth of this particular area of inquiry. Not
5  in its entirety.
6     Q  What aspects of this area of inquiry are you
7  knowledgeable about?
8     A  I'm more knowledgeable with respect to my
9  areas of inquiry related to my tenure with the Nevada
10 State Medicaid Program.
11       There may be some documents that I reviewed
12 related to issues, program related issues, that
13 involve time frames prior to my tenure.
14       But most of my familiarity with audits,
15 analyses and evaluations are related to the time frame
16 of during my tenure.
17    Q  Are you knowledgeable about the items listed
18 in 1 (c)? Plaintiff's knowledge, understanding or use
19 of AWP, MAC, WAC, AMP, EAC, best price Federal Supply
20 Schedule, VA or any other possible price, cost or
21 reimbursement amount or benchmark, metric or
22 methodology for subject drugs from 1985 to present?

**Page 67**

1     A  Can I ask for clarification in this area of
2  inquiry? Are you specifically asking me about my
3  familiarity with these issues related to my current
4  position as Administrator of the Division of Health
5  Care Financing and Policy?
6     Q  In connection with this 30(b)(6) deposition
7  we're interested in your knowledge as a representative
8  of the State.
9     A  Okay. All right.
10       So with respect to 1 (c) I am familiar with
11 some aspects of this area but not the time frames that
12 are presented here in the inquiry. Not all the
13 entirety of the time frame suggested.
14    Q  When you say you're familiar with some
15 aspects during certain time frames, maybe if you could
16 explain what aspects you are knowledgeable about and
17 what time periods you are not knowledgeable about.
18    A  I'm more familiar with the terms and use of
19 AWP, MAC, best price, Federal Supply Schedule and VA
20 schedule.
21       I am not sure what is meant by price, cost or
22 benchmark specifically the term, how you're using the

**Page 68**

1  term, metric.
2        And, again, my familiarity with these issues
3  is probably more in depth related to the time frame of
4  my tenure as Nevada State Medicaid Administrator 2000,
5  to the current time.
6     Q  Are you knowledgeable regarding the items
7  listed in 1 (d), documents created by or received from
8  Federal agencies or the National Association of
9  Medicaid Fraud Control Units, National Association of
10 Attorneys General or PAL relating to prices, costs or
11 reimbursements for pharmaceutical products from
12 January 1985 to the present?
13    A  No. Not to any degree. I don't normally see
14 these publications.
15       I'm not sure what PAL means. Could you
16 define that for me?
17    Q  It's Prescription Access Litigation, I
18 believe.
19    A  No. I'm not familiar with it.
20    Q  Ms. Lawrence I believe had identified you as
21 the person most knowledgeable or at least she thought
22 was most knowledgeable related to the National

**Page 69**

1  Association or documents created by or received by the
2  National Association of Medicaid Fraud Control Units.
3        If that's not the case do you know who would
4  be a person who would be knowledgeable about that area
5  that we could talk to?
6     A  I believe that's Mr. Terry's area of purview.
7        Sorry, Mr. Terry.
8     Q  Other than Mr. Terry is there anyone else
9  that you think would have knowledge in this area?
10    A  In terms of?
11    Q  In terms of documents created by or
12 received --
13    A  For all of those associations?
14    Q  No. Just the National Association of
15 Medicaid Fraud Control Units.
16    A  Not to my knowledge.
17    Q  1 (e), are you knowledgeable regarding
18 Plaintiff's internal or external assessments, studies,
19 analyses, reviews or audits conducted by or on behalf
20 of Plaintiff regarding drug pricing or reimbursement
21 amounts or rates of subject drugs from January 1985 to
22 the present?

Page 70

1   A  In this case the Plaintiff being the State of
2   Nevada I'm familiar with some of the studies, analyses
3   and reviews and audits.
4          But again, with respect to time frames I'm
5   more familiar with those types of studies that
6   occurred during my tenure.
7   Q  Are you familiar with item 1 (f), documents
8   or data received from or published by a publisher and
9   relating to the State's reliance on such data or
10  documents?
11  A  Yes.  To some extent that's available to me.
12  Q  Turning to 1 (g), are you knowledgeable
13  regarding communications between Plaintiff and any
14  Defendant concerning the pricing of pharmaceutical
15  products?
16  A  Yes.  Again, to some degree.  It's a rather
17  broad question.
18  Q  Are you knowledgeable about the items listed
19  in 1 (h), Plaintiff's potential or actual contractual
20  relationships with PBM's, third party administrators,
21  wholesalers, manufacturers, group purchasing
22  organizations, insurers, independent practice

Page 71

1   associations, retailers, mail order pharmacies, trade
2   associations or lobbyists insofar as they cover
3   reimbursement, purchasing, rebates expenditures
4   concerning subjects drugs?
5   A  To some extent, yes.
6   Q  Are there certain aspects of this particular
7   item in 1 (h) that you are not knowledgeable about?
8   A  Again, depends on the depth of my knowledge.
9   And I have familiarity with each of these.
10         The one I would say where I'm not -- I am
11  least familiar are wholesalers.  But I have some
12  knowledge of each of these.
13  Q  Are you knowledgeable regarding the item
14  listed in 1 (i), Plaintiff's efforts to reduce or
15  limit expenditures for subject drugs?
16  A  Specifically can you -- can you clarify?
17  Q  Sure.
18  A  Related to the Medicaid Agency?  The Medicaid
19  Program?
20  Q  Plaintiff in this case is the State of
21  Nevada.  The question is:  Are you familiar with the
22  State of Nevada's efforts to reduce or limit

Page 72

1   expenditures for subject drugs?
2          By subject drugs we mean all drugs that were
3   listed in the Complaint as being at issue in the
4   litigation.
5   A  I am familiar with some aspects to limit or
6   reduce expenditures.  But I'm also familiar, most
7   familiar, with those initiatives related to the
8   Medicaid Program.
9   Q  Are you familiar with -- are you at least
10  partly familiar with initiatives relating to programs
11  other than the Medicaid Program?
12  A  To a limited extent.  Yes.
13  Q  Are you knowledgeable regarding the subject
14  of 1 (j), communications between Plaintiff and
15  participants or beneficiaries relating to the Medicaid
16  Program?
17  A  Yes.
18  Q  Are you knowledgeable regarding the item
19  listed in 1 (k), medical care advisory committees?
20  A  That would be medical care advisory
21  committees?  Yes.
22  Q  Are you knowledgeable regarding item 1 (l),

Page 73

1   documents reflecting losses or damages as a result of
2   Defendants alleged conduct from January 1985 to the
3   present?
4   A  No.
5   Q  Knowledgeable regarding --
6          Let me step back for a minute.
7          Do you know who would be knowledgeable about
8   the issue in 1 (l)?
9   A  Drop the dime on him again.  I would have to
10  defer to the Attorney General's office.
11  Q  Specifically Mr. Terry again?
12  A  I'm not sure.  I can't say.  I don't know.
13  Q  Are you knowledgeable regarding documents
14  reflecting Defendants' alleged misrepresentations,
15  omissions or manipulation of spreads from January 1985
16  to the present?
17  A  No.
18  Q  Do you know who would be knowledgeable about
19  that item 1 (m)?
20  A  Again, I would defer to the Attorney
21  General's office.
22  Q  Are you knowledgeable regarding item 1 (n),

Page 74

1  Defendants' alleged use of free goods, samples,
2  educational grants, off-invoice price inducements or
3  other incentives to providers to purchase Defendants'
4  drugs?
5     A  Not directly.
6     Q  Who would be knowledgeable about that topic?
7     A  I don't know for certain. I've heard it
8  discussed by physicians in the community, by
9  pharmacists.
10       But nothing that I can say is factual. Just
11 what they told me.
12    Q  Moving on to item 2 (a), are you familiar
13 with -- knowledgeable regarding the data concerning
14 reimbursements to providers for the purchase of
15 subjects drugs?
16    A  Yes.
17       Can I clarify something?
18    Q  Sure.
19    A  As Administrator I am responsible for policy
20 and overall administration of the Division. I'm not
21 the ID manager. I'm not the claims administrator for
22 pharmacy benefits. Those kind of detail levels of

Page 75

1  information probably is best sought from staff that do
2  that directly.
3     Q  In going through these questions if there's
4  an instance where, yes, you are knowledgeable at a
5  high level but you know in particular there is a
6  person who really knows this stuff, if you could let
7  me know that would be helpful.
8     A  I certainly will.
9        I just wanted to clarify my responsibilities
10 are at a policy and overall administrative level, not
11 at a claims or data base element level.
12    Q  Who would be the person most knowledgeable
13 regarding the data concerning reimbursements to
14 providers for purchase of subject drugs?
15    A  Colleen Lawrence.
16    Q  Are you knowledgeable with regard to the
17 items in 2 (b), data concerning the utilization of
18 subject drugs by patients covered by Plaintiff's
19 Medicaid Program?
20    A  Yes.
21    Q  Is this also an instance where Colleen
22 Lawrence would be more knowledgeable than you?

Page 76

1     A  Yes.
2     Q  Item 2 (c), data concerning manufacturer
3  rebates relating to subject drugs?
4     A  Not the specific rebate amounts. Just the
5  rebates in general.
6        Again, data concerning this would be --
7  questions regarding data concerning manufacturer
8  rebates would probably be best addressed to Colleen.
9     Q  Are you knowledgeable regarding item 2 (d),
10 data concerning numbers of Medicare and Medicaid dual
11 eligibles, reimbursement from Medicare co-payments,
12 and Medicaid rebates collected by the State with
13 respect to dual eligibles?
14    A  Yes.
15    Q  Would Colleen Lawrence be more knowledgeable
16 on this issue?
17    A  Yes.
18       With respect to third party collections which
19 Medicare is a third party to us as the primary care,
20 you may want to ask John Liveratti. He may be more
21 knowledgeable about certain TPL functions third party
22 functions and activities.

Page 77

1     Q  Are you knowledgeable regarding item 2 (e),
2  data provided to Federal government in connection with
3  the Plaintiff's Medicaid Program?
4     A  Yes.
5        Depending what that data is.
6     Q  Are there others who would be more
7  knowledgeable than you on this issue?
8     A  Depends what the data is specifically.
9     Q  For example?
10    A  Data on financial expenditures would be one
11 person. Data on overall recepient utilization and
12 recepient eligibility would be another data set.
13 There's a host of data sets we provide to CFS. Really
14 depends what specific data elements you're looking for
15 as to who may be the best person to ask.
16       I have general knowledge about that but
17 really depends. Mel Rosenberg, my ID Manager, may
18 have some information on particular data sets or data
19 elements as well depending on the question.
20    Q  Are you knowledgeable regarding item 2 (f),
21 data concerning payments made by State or other
22 entities, such as local agencies, to providers in

Page 78

1  connection with Plaintiff's Medicaid Program?
2      A   With respect to this question are you
3  specifically asking about -- because the example are
4  our local agencies.
5      Q   I know in some states local counties or
6  agencies may play a role in drug reimbursement. Not
7  sure if that's the case in Nevada or not.
8      A   We have a centralized Medicaid administration
9  at the State level. I am familiar with payments made
10 by the State to providers.
11         Again, Miss Lawrence would probably be more
12 familiar with the details. I have general knowledge.
13     Q   Are you knowledgeable regarding item 2 (g),
14 data concerning payments from the State to other
15 entities such as --
16     A   Yeah I got it.
17     Q   -- local agencies, in connection with
18 Plaintiff's Medicaid program?
19         Same answer?
20     A   Same answer. Thank you.
21     Q   Are you knowledgeable regarding item 2 (h),
22 data concerning Federal matching funds received

Page 79

1  relating to the subject drugs?
2      A   Generally, yes.
3          Again, details would be probably best
4  addressed to Miss Lawrence.
5      Q   This is actually one where she said you would
6  be the one most knowledgeable.
7      A   Considering federal matching funds?
8      Q   Yes.
9      A   Depends on the question and specific data
10 you're looking for. If you're looking for specific
11 information on Federal reimbursement I have knowledge
12 of that as does my administrative services officer, my
13 fiscal officer, Patrick Cates.
14         Details of submittal of the CMS 64, for
15 example, are in Patrick's purview. I'm familiar with
16 the documents.
17     Q   Are you knowledgeable regarding item 2 (i),
18 data concerning Plaintiff's net cost for subject drugs
19 under Plaintiff's Medicaid Program after rebates and
20 Federal matching funds?
21     A   To some extent, yes.
22     Q   Finally item 2 (j), are you familiar with

Page 80

1  data concerning the expense to pharmacies of obtaining
2  subject drugs?
3      A   To some extent, yes.
4      Q   Are you knowledgeable regarding item 3 (a),
5  the manner in which claims are submitted and verified?
6      A   To some extent, yes.
7      Q   Are you knowledgeable about item 3 (b),
8  Plaintiff's methods of calculation of reimbursement to
9  providers for subject drugs from January 1985 to the
10 present?
11     A   With respect to the calculation of
12 reimbursement I'm knowledgeable about that.
13         Colleen Lawrence would be more knowledgeable
14 with respect to specific products, modes of delivery,
15 et cetera.
16         I'm not, however, familiar with the entire
17 time frame presented here.
18     Q   Are you knowledgeable regarding item 3 (c),
19 Plaintiff's processing and payment of claims for
20 subject drugs?
21     A   Again, yes.
22         But the fine details of that are best

Page 81

1  addressed to Miss Lawrence.
2      Q   Are you knowledgeable regarding item 3 (d),
3  the source of the money used by Plaintiff to make
4  payments to providers for subject drugs?
5      A   Yes.
6      Q   Are you knowledgeable regarding item 3 (e),
7  entities other than Plaintiff which make payments to
8  providers in connection with Plaintiff's Medicaid
9  Program, if such entities exist?
10     A   I'm thinking. Yes.
11     Q   Are you knowledgeable regarding item 3 (f),
12 the manner in which the portion paid by Plaintiff and
13 portion paid by others is calculated in connection
14 with Plaintiff's Medicaid Program?
15     A   I don't understand the question.
16     Q   For various prescription drugs and various
17 services there may or may not be times when the State
18 has to pay a portion of the cost of a particular drug
19 and perhaps some other not at this time such as
20 Medicare.
21     A   Federal government?
22     Q   Federal government or --

Page 82

1   A  The answer is yes.
2   Q  Are you familiar with item 3, or, excuse me,
3   knowledgeable regarding item 3 (g), Plaintiff's
4   negotiation, authoring, or execution of any contract
5   or memorandum of understanding or agreement, or
6   contribution to any contract or memorandum of
7   understanding or agreement, between Plaintiff and any
8   provider relating to AWP's for subject drugs or the
9   reimbursement for subject drugs?
10  A  Yes.
11  Q  Knowledgeable regarding item 3 (h),
12  Plaintiff's establishment, consideration,
13  determination, calculation, or setting of the
14  dispensing fees or fees for other professional
15  services payable in connection with the supply or
16  administration of subject drugs?
17  A  To some extent, yes.
18  Q  Are you knowledgeable regarding item 3 (i),
19  the circumstances surrounding each change in
20  Plaintiff's Medicaid program's reimbursement rates for
21  subject drugs?
22  A  No.

Page 83

1      Can you tell me what you mean by
2   circumstances surrounding?
3   Q  I think what we're trying to get at here is
4   in connection with each change in Plaintiff's
5   reimbursement rates for subject drugs there would
6   certainly be all kinds of circumstances relating to
7   that. You know, complaints by providers perhaps. Or
8   policy concerns of the State. Policy concerns of the
9   Agency. Just a number of factors go into the decision
10  of whether or not to change a rate and how big that
11  change should be.
12     Are you familiar with that topic?
13  A  Again, in general, yes. To the extent those
14  issues come to my attention.
15  Q  Your familiarity with this particular topic
16  would be -- is your familiarity with this particular
17  topic limited to your time you have spent as
18  Administrator here in Nevada?
19  A  Actually, I think it probably precedes that
20  to the point I was involved with Queens Medical Center
21  and Kalihi-Palama.
22     Oh, excuse me. For subject drugs. Forget

Page 84

1   that. That's not correct. I forgot that.
2      Yeah. Would be more familiar with my term as
3   Medicaid Administrator here in Nevada and also in
4   Hawaii.
5   Q  Finally, are you knowledgeable regarding item
6   3 (j), the acquisition costs of subject drugs?
7   A  Acquisition cost by the Plaintiff? By whom?
8   Q  Could be by a pharmacy, could be by a doctor,
9   could be by a State agency. Depending whoever is
10  purchasing the drug from a manufacturer or wholesaler.
11  A  I'm more familiar with our actual
12  reimbursement of this and not necessarily the
13  acquisition costs. We have some general information
14  on general acquisition costs. But I'm not in any way
15  an expert as a pharmacist, for example, in the
16  commercial world would be.
17  Q  We are getting there.
18     Item 4. Are you knowledgeable regarding item
19  4 (a), the manner in which Plaintiff submits claims
20  for manufacturer rebates and Federal matching funds in
21  connection with Plaintiff's Medicaid Program?
22  A  Yes.

Page 85

1   Q  Are you familiar with item 4 (b), the manner
2   in which money received from manufacturer rebates and
3   Federal matching funds is directed, allocated or
4   distributed upon its receipt by Plaintiff?
5   A  Yes.
6      Can I add in terms of some of the fine
7   details Patrick Cates, my fiscal officer, could tell
8   you more detailed information about how we administer
9   rebate revenue and other financial transactions that
10  occur within our agency budget.
11  Q  How long has Patrick Cates been with Nevada
12  Medicaid?
13  A  Four years.
14  Q  Are you knowledgeable regarding item 4 (c),
15  any analyses or calculations of Plaintiff's net cost
16  for subject drugs under Plaintiff's Medicaid Program
17  after manufacturer rebates and Federal matching funds
18  January 1985 to the present?
19  A  I'm not familiar with the specific net costs
20  for the subject drugs and not the time frames listed
21  there. More during my tenure.
22  Q  Do you know who would be familiar with this

22 (Pages 82 to 85)

Duarte, Charles - Vol. I　　　　　　　　　　November 15, 2005
Carson City, NV

Page 86

1  issue?
2  　A　Actually, I'm not sure who would actually
3  know the net cost.  If not Miss Lawrence then there
4  might be individuals, third party administrators, who
5  might be able to address some of that if it's
6  allowable.
7  　　　I think when you start talking about net cost
8  you start getting into an area we may be precluded
9  from providing that information under Federal law.
10 　Q　Are you knowledgeable regarding item 4 (d),
11 Plaintiff's adoption, rejection, amendment to,
12 consideration, or negotiation of any State
13 supplemental rebate program?
14 　A　Yes.
15 　Q　Are you knowledgeable regarding item 5, the
16 existence, nature and location of documents relating
17 to any pending or threatened litigation, claims,
18 allegations, or charges that Plaintiff's Medicaid
19 Program is not in compliance with Federal or State law
20 or otherwise violates Federal or State law?
21 　A　I'm not aware that we are violating any
22 Federal or State law.

Page 87

1  　　　So to the extent that any documents that are
2  described here come to my attention, I would be
3  familiar with them.  But I've not seen anything that
4  would suggest that recently.
5  　Q　If there were such allegations or threatened
6  allegations you would be aware of those?
7  　A　I would be aware of it.
8  　Q　Finally, are you aware of -- are you
9  knowledgeable regarding item 6, the identity of
10 individuals with knowledge of the subjects that we
11 have discussed?
12 　A　Yes.
13 　Q　From this point forward, Mr. Duarte, when I
14 refer to you or ask for your knowledge on a particular
15 topic I'm seeking your testimony as to the full extent
16 of the knowledge of the State.
17 　　　Do you understand that?
18 　A　I understand.
19 　　　I'm not sure I could answer in terms of the
20 capacity of the entire State so I don't think I could
21 answer all of your questions as it relates to the
22 breadth of that question.

Page 88

1  　Q　What I am trying to get at, as a 30(b)(6)
2  witness, you're here representing the Plaintiff in
3  this case, the State of Nevada.
4  　　　There will be many times where I ask you what
5  is your knowledge of this or what is your knowledge of
6  some other topic.
7  　　　What I am looking for is your understanding
8  of the State's knowledge rather than your own personal
9  understanding unless I ask for your personal
10 understanding.
11 　A　To the extent I know what the State knows I
12 can answer and I'll have to probably limit my answers
13 to what I actually know and I'll tell you that.
14 　Q　If you can tell me that, if it's confusing or
15 you can say this is what I know but I don't know what
16 the State knows or whatever the situation is, let me
17 know in your answer.
18 　　　Which State department or agency is
19 responsible for administering the Nevada Medicaid
20 Program?
21 　A　The Department of Health and Human Services.
22 That's a Nevada -- that's the State of Nevada

Page 89

1  Department of Health and Human Services.
2  　　　Then specifically I have statutory authority
3  under the Director to administer the program in my
4  Division.
5  　　　So Mr. Wilden actually serves as the State
6  Medicaid Agency.  I work under his direction and
7  through statute have the authority to administer the
8  programs.
9  　Q　What is the general role of the Department of
10 Human Resources in the State of Nevada?
11 　A　The general role?
12 　Q　Yes.
13 　A　They have administrative responsibility for
14 Medicaid and the State Children's Health Insurance
15 Program.
16 　　　Do you want me to go down the list?  It's an
17 extensive list.
18 　Q　I'm really more interested in getting the
19 sense of their general coverage and then we're going
20 to focus in on your particular Division.
21 　A　They're responsible for administration of a
22 wide array of Federally funded, State funded -- and

23 (Pages 86 to 89)

Henderson Legal Services
(202) 220-4158

f2f1e4f2-1e09-4e88-8215-14efca5379bf