# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-oOo-

| | |
|---|---|
| In Re: Pharmaceutical Industry Average Wholesale Price Litigation | MDL No. 1456 Civil Action No. 01-CV-12257-PBS |
| This Document Relates to State of Nevada v. Abbott Laboratories, et al., (Nevada I), and | CA No. 02-CV-00260-ECR |
| State of Nevada v. American Home Products, et al., | CA No.02-CV-12086-PBS (Nevada II) |

VOLUME 1 OF THE DEPOSITION OF

COLEEN LAWRENCE

August 15, 2005

Carson City, Nevada

REPORTED BY:  DEBORAH MIDDLETON GRECO, CCR #113, RDR, CRR

Coleen Lawrence                                      August 15, 2005
Boca Raton, FL

Page 14
1   Q   And what did you discuss with Carol?
2   A   She was just asking about process and length of time
3   that it may take. I'm her direct supervisor.
4   Q   Miss Lawrence, are you familiar with the allegations
5   of the complaint in this case?
6   A   No, I'm not.
7   Q   Do you have a general idea of what this case is about?
8   A   Average wholesale price.
9   Q   Other than that, do you know the nature of the
10  allegations in the case?
11  A   No.
12  Q   Have you read the complaint?
13  A   No.
14  Q   Did you prepare any notes in preparation for this
15  deposition?
16  A   Just a few, yes.
17  Q   And what sorts of notes did you prepare?
18  A   Trying to remember when we changed the AWP pricing
19  methodology over in July and just implementation of our
20  different contracts.
21      MS. BRECKENRIDGE: I'd like to interject here to the
22  extent that the notes were prepared at the direction of counsel

Page 15
1   or associated with meetings with counsel, that they may be
2   privileged and kind of getting close to that territory.
3       I don't know what the notes are, but I just want to
4   raise that issue.
5   BY MR. DOVE:
6   Q   I would ask if the notes are not privileged, upon
7   review, that those notes be produced.
8       Just want to spend a moment explaining the process of
9   a deposition since you've not had your deposition taken.
10      I'm obviously going to ask the questions, and you'll
11  provide the answers.
12      There's a need to respond verbally so that the court
13  reporter will be able to transcribe your response.
14      And your attorney at times will object to my question,
15  and -- but unless you're instructed by your attorney not to
16  answer, then you need to answer the question, even if there's an
17  objection.
18      If you do not understand a question, just let me know,
19  and I'll try to rephrase it or clarify the question for you.
20      If you do not ask for clarification, I will assume
21  that you've understood what my question is, and that you're
22  responding to my question.

Page 16
1       Please let me know if you would like a break at any
2   time, and we would be happy to accommodate that. My only
3   request is that you finish answering the question that's been
4   asked before we take the break.
5       Do you understand these basic ground rules?
6   A   Yes.
7       MR. LITGOW: Should go off the record.
8       (Discussion off the record)
9       MR. DOVE: Let's go back on the record.
10  BY MR. DOVE:
11  Q   Miss Lawrence, if you could just, please, briefly
12  summarize your educational background.
13  A   I currently have a bachelor's degree in healthcare
14  administration.
15      And I've worked with the state for about four years
16  now.
17  Q   And where is that bachelor's degree from?
18  A   University of Nevada, Las Vegas.
19  Q   And if you could briefly summarize your employment
20  history.
21  A   For the last four years with the state of Nevada in my
22  current position.

Page 17
1       Previous to that, I was with Apria Healthcare, for a
2   durable medical equipment company, and I was the service center
3   supervisor for northern Nevada.
4       Previous to that, I was in an internship in employment
5   at Sierra Health Services on contract for the federal
6   government.
7   Q   What is Sierra Health Services?
8   A   It's a health insurance company in Las Vegas.
9   Q   And did the work you did there relate to drug
10  reimbursement issues?
11  A   No.
12  Q   And did the work at Apria Healthcare have anything to
13  do with drug reimbursement issues?
14  A   No.
15  Q   What is your current title?
16  A   Social Services Chief III.
17  Q   And what are your job responsibilities?
18  A   Oversight of the medical coverage programs for Nevada
19  Medicaid for multiple providers.
20      Do you want me to list them?
21  Q   Yes, please.
22  A   This is for statewide programs. It would be for

5 (Pages 14 to 17)

Coleen Lawrence                                     August 15, 2005
Boca Raton, FL

Page 18

1  physicians, hospitals, pharmacies, durable medical equipment,
2  outpatient providers, radiology, lab, therapists, the entire
3  behavioral health spectrum. I believe that's it.
4      Q   So how many other social services chiefs are there
5  that work in connection with Medicaid?
6      A   I have to count them.
7          I believe we have six right now.
8      Q   But you are the one who's tasked with issues relating
9  to drug reimbursement, whether that relates to pharmacies or
10 physician-administered drugs.
11         Would that be correct?
12     A   Yes. We actually have a unit that is our rates and
13 cost containment unit that also -- that sets the rates for our
14 state.
15         However, pharmacy has primarily been underneath my
16 direction for the rate side.
17     Q   To whom do you report?
18     A   Mary Wherry, deputy administrator.
19     Q   And who does Mary report to?
20     A   Charles Duarte. Our administrator.
21         (Discussion off the record)
22         MR. DOVE: Let's go back on the record.

Page 19

1  BY MR. DOVE:
2      Q   Miss Lawrence, who reports to you?
3      A   In just a range with pharmacy or with all staff?
4      Q   Just those who relate to pharmacy or anything relating
5  to drug reimbursement which may, I guess, go over into
6  physician-administered office clinics.
7          I'm not sure how it works, but anyone that would
8  report to you that would have anything to do with drug
9  reimbursement or rebates or anything like that.
10     A   Okay. Currently the physician-administered drugs do
11 go underneath the rates department that I was discussing.
12         And the pharmacy program only has one full-time
13 equivalent position, and that's Miss Vickie Langdon. But she
14 does not set the reimbursement for pharmacy. She works on the
15 medical coverage policies.
16     Q   Is there anyone else who works -- who reports to you
17 that would have any knowledge relating to the issues in this
18 case as you've seen in the document requests and
19 interrogatories?
20     A   No.
21     Q   I think you said you've been employed by the state for
22 four years; is that correct?

Page 20

1      A   Yes.
2      Q   Who was your predecessor in your position?
3      A   The actual position that I'm in now did not exist, but
4  the pharmacy consultant previous to me was Laurie Squartsoff.
5      Q   How do you spell her last name, if you remember?
6      A   I don't -- S-q-u-a-r-t-s-o-f-f.
7      Q   And for how long did she hold the position, if you
8  know?
9      A   I do not know.
10     Q   Do you have a general idea? Was it just a year or
11 two, or was it a longer period of time?
12     A   It was a longer period of time. Several years.
13     Q   Do you know where she is employed now?
14     A   I believe she is with Eli Lilly.
15     Q   Do you know what she does at Eli Lilly?
16     A   I just know she's a manufacturer representative.
17     Q   Are you aware of who held the equivalent position
18 prior to Ms. Squartsoff?
19     A   No.
20     Q   Have you always held the same position since you were
21 hired by the state?
22     A   No.

Page 21

1      Q   What was the first position you held?
2      A   I was originally hired on as a durable medical
3  equipment specialist for less than four months. Then I became
4  acting chief in the position I am now.
5          And I was acting for approximately about a year until
6  it went over to a full-time position because we re-classed it.
7      Q   So to the best of your ability, what month and year
8  did you begin working on pharmacy-related issues for the state
9  of Nevada?
10     A   I would have to see what Laurie's termination date
11 was, Laurie Squartsoff's termination date.
12     Q   Would it have been in 2001?
13     A   Yes.
14     Q   Did Laurie Squartsoff leave voluntarily, or was she
15 terminated by the state of Nevada?
16     A   Voluntarily.
17     Q   Have you ever attended any training or seminars on
18 Medicaid or Medicare reimbursement for prescription drugs?
19     A   Not specifically for the reimbursement.
20     Q   What sorts of training or seminars have you attended
21 that relate in general to reimbursement?
22     A   We have attended more or less peer conferences for

6 (Pages 18 to 21)

HENDERSON LEGAL SERVICES
(202) 220 - 4158

e7786b14-7181-4e4c-90ab-321692e6ade0

## Page 26

1  A   Not regarding drug reimbursement itself. I know of
2  the company. If it's the same company. Where is this company
3  from?
4  Q   I forget. I saw it on some of the documents that were
5  produced.
6  A   It was a previous contractor of ours, but not
7  regarding drug reimbursement.
8  Q   Do you review federal government studies and policy
9  statements about prescription drugs?
10 A   Yes.
11 Q   And how do you get those federal government studies?
12     Are they routed to you from Duarte, or do you get some
13 sort of publication that have them in -- the studies in there?
14 How does it work?
15 A   It depends on what the source of the study is. Some
16 do come from our administrator. Some may come from email links.
17 I don't have any specific email links.
18     And if we hear about a study, we can go onto the
19 Center for Medicaid and Medicare Services website to find them.
20 Q   Are you on any email newsletters that relate to, at
21 least in part, drug reimbursement issues?
22 A   No. They're very global to all my areas.

## Page 27

1  Q   What email groups are you involved in?
2  A   The only one I could think of, I would have to get the
3  actual name of what it is, it's one from CMS.
4  Q   Is this just an email group that whenever CMS has
5  something to report or something to say, they email everybody on
6  the list?
7  A   Right. We have, like some of their
8  Dear-State-Medicaid letters and those types of issues. Nothing
9  particular just for pharmacy.
10 Q   I'd like to take a few moments just to talk about your
11 status as a Rule 30(b)(6) designee.
12     Do you know why you have been designated to represent
13 the state of Nevada in this deposition?
14 A   My understanding is because of my current employment.
15 Q   Do you know who made the decision for you to represent
16 Nevada in today's deposition?
17 A   No, I do not.
18     MR. DOVE: I'd like to mark as Nevada Exhibit Lawrence 001
19 a document entitled Notice of Rule 30(b)(6) Deposition to State of
20 Nevada, served on June 10th, 2005.
21     (Exhibit Lawrence 001 marked for identification)
22     MR. DOVE: Off the record.

## Page 28

1      (Discussion off the record)
2      MS. PYZEL: This might be a good opportunity to take a
3  little bit of a break.
4      MR. DOVE: That would be fine. Sure.
5      (Discussion off the record)
6      MR. DOVE: Let's go back on the record.
7  BY MR. DOVE:
8  Q   Let's go back for a minute to earlier where we were
9  talking about other people in the department who deal with drug
10 reimbursement and rebate issues.
11     And I don't think you mentioned Carol Tilstra. I just
12 wanted -- I know that she was designated by the state of Nevada
13 as an additional 30(b)(6) witness, and I just wanted to ask you
14 what her job responsibility is?
15 A   Okay. Currently she oversees the therapists, which
16 would be the physical therapy, occupational therapy, speech
17 therapy.
18     She also oversees ambulatory surgical centers, and she
19 oversees a staff person who oversees inpatient hospitals, but
20 they do not set any pharmacy reimbursement methodologies. They
21 oversee the medical coverage policies.
22 Q   Does she do any work relating to

## Page 29

1  physician-administered drugs?
2  A   As far as the medical coverage policies, if they
3  happen to overlap into the ambulatory surgery centers or the
4  inpatient, but not so much the physician-administered. Our
5  pharmacy program oversees all of the pharmacy.
6  Q   Do you know why she has been designated as an
7  additional 30(b)(6) witness, what area she covers that you do
8  not?
9  A   She does not cover anything currently right now in her
10 history with the state of Nevada. She, again, oversaw some of
11 the medical coverage policies. And again, it was toward --
12 carried them through, such as for physician-administered and --
13 Q   And when did she oversee the medical coverage side and
14 physician-administered side, do you know?
15 A   It was before my time. I do not know.
16 Q   Do you know how long she has worked for the Nevada
17 Medicaid department?
18 A   I honestly do not know. I would have to look at her
19 personnel file.
20 Q   Miss Lawrence, have you had the opportunity to review
21 the Rule 30(b)(6) deposition notice?
22 A   I just briefly saw this right before today.

Page 30

1   Q   Are you the person -- are you the most knowledgeable
2   representative of the state of Nevada on each of the topics
3   listed in this 30(b)(6) notice?
4   A   I am not sure if I am on each of the topics.
5   Q   Let's take these one at a time.
6   A   Okay.
7   Q   That will be the easier way to do it.
8       Start with area of inquiry number one.
9       If you could review subtopics A through N, and let me
10  know when you've finished doing that, and then I'm going on to
11  ask you the same question about whether you're the person at
12  Medicaid most knowledgeable about these topics.
13  A   Okay.
14  Q   Miss Lawrence, as to the topics listed in area of
15  inquiry number one, are you the person, the most knowledgeable
16  representative of the state of Nevada on each of those topics?
17  A   For a majority of them. Not all of them.
18  Q   Which of the topics are you not the most knowledgeable
19  about?
20  A   Well, I would need reference to the CFR that's being
21  referenced here to know which CFR it's discussing.
22      I've only been here since 2001, so any of the

Page 31

1   evaluations or any of the items that are asked previous to 2001,
2   back to 1985, I would not have knowledge of.
3       Anything regarding the Medicaid Fraud Control Units.
4   We have a unit that is specifically for Medicaid fraud, which is
5   our SURS unit.
6       I am aware of the different contracts that we have
7   with our current PBMs and previous contractors. However, we do
8   have a staff person that is responsible for contracts for Nevada
9   Medicaid that would probably know more specifics.
10      I do not oversee the Medical Care Advisory Committee.
11      I am unaware of L.
12  Q   L being documents reflecting losses or damages as a
13  result of the defendants' alleged conduct from January 1985 to
14  the present?
15  A   Correct.
16  Q   When you say you're unaware of L, what do you mean?
17  A   I'm not sure what that's referencing, which documents
18  it's referencing.
19      That would be it.
20  Q   Let's go back, starting with area of inquiry 1-A,
21  plaintiff's compliance with a number of different statutory and
22  regulatory provisions.

Page 32

1       If I were to tell you that these provisions related in
2   large part to the Access to Care requirements of the Medicaid
3   statute, are you the person at the agency most knowledgeable
4   regarding the state's compliance with the Access to Care
5   provisions?
6       MS. BRECKENRIDGE: I'm going to object here because I
7   don't think that's what the deposition notice asks for.
8       What the deposition notice asks for is the existence,
9   nature and location of documents related to these statutory and
10  CFR provisions, which is different than whether Miss Lawrence is
11  the person most knowledgeable regarding the provisions
12  themselves.
13      So I think it's an ambiguous line of inquiry in that
14  respect.
15  BY MR. DOVE:
16  Q   Go ahead and answer the question.
17  A   Can you repeat the question?
18  Q   Sure. Let me rephrase it.
19      Are you the person at the Nevada state Medicaid agency
20  most knowledgeable about Nevada's adherence to the Access to
21  Care requirements of the Medicaid statute?
22  A   No.

Page 33

1   Q   Do you know who would be?
2   A   Most likely our administrator. Because Access to Care
3   is very broad.
4   Q   Mr. Duarte?
5   A   Yes.
6   Q   And I believe you said you were not the person most
7   knowledgeable regarding these topics prior to 2001 when you
8   arrived at the agency?
9   A   Correct.
10  Q   Do you know who would be the person most knowledgeable
11  on these topics prior to 2001?
12  A   If it's relating to pharmacy?
13  Q   Yes.
14  A   It would be Laurie Squartzoff.
15  Q   Who would be the person at the Medicaid agency most
16  knowledgeable regarding the Medicaid Fraud Control Unit?
17  A   Again, our administrator. And there are staff
18  responsible for that unit.
19  Q   Who are the staff responsible for that unit?
20  A   John Liveratti is the chief. He is my counterpart.
21  Q   In connection with area of inquiry 1-H, you mentioned
22  that there was a staff person who would know more about the PBM

Coleen Lawrence                                                August 15, 2005
Boca Raton, FL

Page 34

1  contracts and other contracts listed there.
2      Who is that staff person?
3  A  It would be Jeannie Trejo, T-r-e-j-o.
4  Q  Who would be the person most knowledgeable regarding
5  medical case advisory committees?
6  A  John Liveratti.
7  Q  Are you the person most knowledgeable relating to
8  areas of inquiry 1-M and 1-N?
9  A  In regards to 1-M, I would need clarification as to
10 which documents it would be.
11     And, yes, on 1-N.
12 Q  Moving on to area of inquiry number two, are you the
13 person most knowledgeable as to each of the topics A through J
14 in area inquiry number two?
15 A  And just for clarification, this is for where they are
16 located at?
17 Q  At this point, our view is that the request is broader
18 than that stated by your counsel.
19     It talks, in part, about, you know, the location of
20 documents and existence of documents, but also about the nature
21 of the documents, kind of what they say.
22     But for the purposes of my question here, I'm just --

Page 35

1  I want to take each of these subtopics as its own little topic,
2  and just ask you if you are the person most knowledgeable as to
3  each of those subject matter areas.
4      So, for example, are you the person most knowledgeable
5  with the Medicaid agency for the data concerning reimbursements
6  to providers for purchase of subject drugs?
7  MS. BRECKENRIDGE: I object.
8  THE WITNESS: In regards to 2-H, I would not be the
9  person who would know the data that is received from the federal
10 funds.
11 BY MR. DOVE:
12 Q  Who would that person be?
13 A  I would have to say our administrator, Charles Duarte.
14 Q  But as to all the other subtopics, you are the person
15 most knowledgeable?
16 A  At a very broad level.
17 Q  Ask the same question as to area of inquiry number
18 three.
19     Are you the person most knowledgeable as to each of
20 the subject matters listed in area of inquiry 3-A through 3-J?
21 A  In relation to 3-D, I need clarification as to what
22 source. Again, our administrator.

Page 36

1  Q  By source of the money, I mean, you know, kind of what
2  budget account.
3  A  Right. Okay. Then our administrator. I do not get
4  into the budget accounts.
5      I'm unclear as to what is being asked on 3-E.
6      Again, with 3-F, this is regarding the federal fund
7  match. I do not know how they acquire the source.
8  Q  And who is the person most knowledgeable in that?
9      That's Mr. Duarte?
10 A  Duarte, yes.
11     Letter 3-H, again, is only for things that I -- you
12 know, the entire thing is since 2001 forward. That's it for
13 that section.
14 Q  As to area of inquiry number four, are you the person
15 most knowledgeable on the subject matters listed in 4-A through
16 4-D?
17 A  It, again, would be the administrator and myself that
18 would be for D. But other than that, I would not.
19 Q  So you are the person most knowledgeable on 4-D?
20 A  Yes.
21 Q  But as to 4-A and C --
22 A  A, B and C.

Page 37

1  Q  A, B and C, Mr. Duarte would be the person most
2  knowledgeable?
3  A  Yes.
4  Q  Are you the person most knowledgeable as to area of
5  inquiry number five?
6  A  No.
7  Q  Who would be the person most knowledgeable in that
8  issue?
9  A  I do not know.
10 Q  Are you the person most knowledgeable in area of
11 inquiry number six?
12 A  Is it referencing five?
13 Q  Technically, yes, but it's -- more broadly, it's
14 referencing all the -- all the above requests.
15     So, you know, are you the person most knowledgeable
16 about the identity of individuals who could answer questions on
17 these topics, if need be?
18 A  Charles Duarte could be the specific person. I gave
19 you who I thought would be it.
20 Q  Are you the person at the Nevada Medicaid agency who's
21 most knowledgeable about the specific location of documents
22 responsive to each of these subject matters in this 30(b)(6)

Page 38

1  notice?
2     A  No. As we went through, there are certain areas that
3  other people are more responsible for, and they specifically
4  state specific documents such as 1-E.
5     Q  So basically, as I understand it, and tell me if my
6  understanding is incorrect, but as to those subject matter areas
7  where you know the most about the subject matter itself, you're
8  also the person who knows the most about the location of
9  documents, correct?
10    A  Correct.
11       But there will be some assistance from others within
12 the agency, depending on -- even some of the areas that I know
13 about, the location of the documents, I may need assistance on.
14    Q  But as to those areas where you're not the most
15 knowledgeable about the subject area, you're also not the most
16 knowledgeable about the location of documents for that subject
17 area; is that correct?
18    A  Correct.
19       MS. BRECKENRIDGE: Objection.
20       MR. DOVE: Basis?
21       MS. BRECKENRIDGE: Vague. I don't even understand
22 what you're asking.

Page 39

1  BY MR. DOVE:
2     Q  Okay. Let me try to rephrase it.
3        For those subject matter areas where you identified
4  another person in the agency who is most knowledgeable about
5  that area, is that person you've identified also the person most
6  knowledgeable about the location of documents and existence of
7  documents that relate to that particular subject matter area?
8        MS. BRECKENRIDGE: Objection.
9        THE WITNESS: I do not know. They're more
10 knowledgeable than I am, but I do not know what their scope of
11 their knowledge is regarding that part of the program.
12 BY MR. DOVE:
13    Q  I guess what I'm trying to get at is, that the state
14 of Nevada has put you forward as the 30(b)(6) witness, which
15 means that you are, from our perspective, the person most
16 knowledgeable about the subject matters, except for the subject
17 matters you've identified Carol Tilstra, you're the person most
18 knowledgeable about the subject areas, the existence, nature and
19 location of documents relating to the subject areas identified
20 in this notice.
21       And I'm just trying to get a sense if that's, in fact,
22 the case or not.

Page 40

1        MS. BRECKENRIDGE: Okay. I have an objection.
2        And just to clarify, the standard under Federal Rules
3  of Civil Procedure, 30(b)(6) is not the most knowledgeable.
4        And to that extent, you're sort of mischaracterizing
5  maybe what the scope of her knowledge is.
6        Further, she cannot testify as to the scope of other
7  people's knowledge, and she hasn't been asked to.
8        Finally, you've asked her about her knowledge
9  regarding all sorts of topics that weren't identified, other
10 than as subparts, in your deposition notice.
11       So this whole line of questioning needs to be
12 tightened up, I think. Because we do have an objection. You
13 asked about documents, their existence, their nature and their
14 location. You haven't asked her any questions about that.
15       MR. DOVE: This is obviously a preliminary question to
16 make sure that she is the appropriate witness for the state of
17 Nevada.
18       MS. BRECKENRIDGE: Shall we get the rule? It's not
19 most knowledgeable.
20       MR. DOVE: I understand.
21 BY MR. DOVE:
22    Q  I could ask a series of follow-up questions relating

Page 41

1  to whether you've actually undertaken to talk to the people with
2  the most knowledge to gain the knowledge necessary to answer the
3  questions in this deposition. We can go back and do that.
4        You know, in connection with those areas where you
5  mentioned a different person who was most knowledgeable about
6  the subject area, did you -- have you had conversations with
7  that person in preparation for this deposition, to give you
8  sufficient knowledge as to that area to respond to my questions
9  today?
10       MS. BRECKENRIDGE: Objection. We don't know which
11 issues you're talking about. It's a very broad question.
12       MR. DOVE: We're going to get into each of these
13 issues in more detail later, and then maybe we'll double-back
14 and ask questions, but I do have some concerns, for the record,
15 that we're not dealing with the witness most knowledgeable on
16 these subject areas or witness with knowledge as to --
17 sufficient knowledge as to the existence and location of
18 documents as to each of those subject areas.
19       But let's -- we'll go through the question and see if
20 that is, indeed, the case.
21 BY MR. DOVE:
22    Q  Do you understand, Miss Lawrence, that the state,

Coleen Lawrence                                                August 15, 2005
Boca Raton, FL

Page 42

1  after designating you as its 30(b)(6) designee, has the burden
2  of preparing you so that you give complete, knowledgeable and
3  binding answers on behalf of the state on the topics listed in
4  this 30(b)(6) notice?
5      MS. BRECKENRIDGE: Objection. You're asking about a
6  legal standard that the witness doesn't --
7      THE WITNESS: I do not.
8      MS. BRECKENRIDGE: -- profess to have any knowledge
9  about.
10 BY MR. DOVE:
11    Q  Okay. Your answer?
12    A  I'm not aware of that statement that you just said.
13    Q  In this deposition, when I refer to you or ask for
14 your knowledge or the like, I'm seeking your testimony as to the
15 full extent of the knowledge of the state of Nevada.
16       Do you understand?
17    A  Yes.
18    Q  Now, I want to go into a line of questioning about the
19 structure of the Medicaid department. I want to try to
20 understand how the Medicaid department works and how it's
21 organized.
22       Which state departments or agencies are responsible

Page 43

1  for administering the Nevada Medicaid program?
2     A  Department of Human Resources, Division of Healthcare
3  Financing and Policy.
4     Q  And the Division of Healthcare Financing and Policy is
5  a division of the Department of Human Resources?
6     A  Yes.
7     Q  Is there an audit department?
8     A  I do not know.
9     Q  Does the Division of Healthcare Financing and Policy
10 have a responsibility for auditing pharmacy reimbursement?
11    A  I do not know.
12    Q  Does the Division of Healthcare Financing and Policy
13 have a responsibility for auditing doctors and outpatient
14 clinics?
15    A  I do not know if they have a specific responsibility
16 for that.
17    Q  Do you know if they do, in fact, do that? Do, in
18 fact, conduct audits of either pharmacies or other providers?
19    A  I do not know.
20    Q  Are there organizational charts that demonstrate kind
21 of who reports to whom within the Department of Human Resources
22 and the Division of Healthcare Financing and Policy?

Page 44

1     A  There are for the Division of Healthcare Financing and
2  Policy. I have not seen who reports on the department level, an
3  actual chart.
4     Q  Do you know if that organizational chart or any
5  organizational charts have been produced in this case?
6     A  I do not know if they have been produced.
7     Q  We would ask for you to search for and to produce
8  those organizational charts.
9        What is the role of the Division of Healthcare
10 Financing and Policy? What are they responsible for?
11    A  That question is probably left best for my
12 administrator, what his role and responsibility is for
13 overseeing the division.
14    Q  Do you have a general idea of what --
15    A  We oversee the programs and policies for the Title 19
16 and Title 21 programs.
17    Q  And what are those programs?
18    A  Known as Nevada Medicaid and Nevada Checkup.
19    Q  What is Nevada Checkup? I saw that in some of the
20 documents, but I didn't understand what it was and how it
21 relates to Nevada Medicaid.
22    A  It's our Title 21 program.

Page 45

1     Q  And what does that mean?
2     A  It's a separate federal program from Nevada Medicaid.
3     Q  And who does Medicaid or -- excuse me -- Nevada
4  Checkup serve?
5     A  I am unaware of the actual population basis under
6  there. I do not oversee that program.
7     Q  Is pharmacy reimbursement part of the Nevada Checkup
8  program?
9     A  They adopt our Nevada Medicaid policies with few
10 exceptions.
11    Q  Who is in charge of that program?
12    A  The chief is vacant right now, so it would be Charles
13 Duarte, who is our administrator.
14    Q  So is it your understanding that things such as drug
15 reimbursement rates and rebates would be the same for Nevada
16 Medicaid and for Nevada Checkup?
17    A  The rebates aren't the same.
18    Q  The rebates are not the same?
19    A  No. I do not know the scope of their rebates offhand,
20 but their reimbursement methodologies are the same.
21    Q  Do you have -- just trying to get a sense of kind
22 of -- you've got the Nevada Medicaid program and Nevada Checkup