# EXHIBIT 2a

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES OF AMERICA
ex rel.

    VEN-A-CARE OF THE FLORIDA
KEYS, INC., a Florida corporation, by
and through its principal officers and
directors, ZACHARY T. BENTLEY and
T. MARK JONES,

              Plaintiff,

v.

ABBOTT LABORATORIES, INC., *et al.*

              Defendants.

Case No.: 95-1354-CIV-GOLD

Hon. Alan S. Gold

## ABBOTT LABORATORIES, INC.'S MOTION FOR PARTIAL UNSEALING OF THE RECORD TO ALLOW ABBOTT ACCESS TO DOCUMENTS FILED UNDER SEAL

Defendant Abbott Laboratories, Inc. ("Abbott") hereby moves for a partial unsealing of

the record in the above-captioned case that would allow Abbott access to all materials filed under

seal prior to the severance of claims against Abbott on May 16, 2006. Abbott's proposed order,

attached as Exhibit A, would 1) require Plaintiff United States of America ("United States" or

"Government") to produce all documents filed under seal prior to the severance of claims against

Abbott, 2) allow the United States to redact the names and identifying information of other

defendants still under investigation, and 3) require Abbott to treat as confidential any documents

so designated by the United States.

Because the United States has intervened against Abbott, there is no longer any statutory

basis to withhold these filings from Abbott. *See Under Seal v. Under Seal*, 326 F.3d 479, 486

(4th Cir. 2003) (stating "the government correctly notes that the FCA's purpose in initially sealing *qui tam* suits does not extend to the sealing appellants seek," and that "the purpose of the FCA does not support *continued* sealing, and only justifies sealing in order that the government may investigate") (citing *Lujan v. Hughes Aircraft Co.*, 67 F.3d 242 (9th Cir. 1995) (explaining that the purpose of § 3730(b)(2)'s sealing provision is to allow the government to study and evaluate, out of public view, the relator's information for possible intervention or overlapping criminal investigation)).

Abbott's request for access to the Court file is now governed by the strong presumption in favor of open and fair judicial proceedings. Conducting court proceedings in secret is inconsistent with our Constitutional system of government, and any litigant seeking to close the courthouse doors to the public bears a heavy burden. *See Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (to deny access to court filings in civil cases, "it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to that interest'") (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07 (1982)). The "appropriateness of making court files accessible is accentuated in cases where the government is a party."). *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). Indeed, Abbott's right of access to the Court file is further accentuated here because Abbott is a *defendant* in these proceedings.

Abbott's request is supported by the numerous courts that have "considered lifting the seal on the entire record to be appropriate" after the United States has made its intervention decision. *United States ex rel. Lee v. Horizon West, Inc.*, No. C 00-2921 SBA, 2006 WL 305966, *2 (N.D. Cal. Feb. 8, 2006). *See* Abbott Laboratories, Inc.'s Memorandum in Support of its Motion to Compel Production of *Ex Parte* Filings at 6-7 (attached as Ex. B) (citing cases).

## BACKGROUND

This case was filed by Relator Ven-a-Care of the Florida Keys, Inc. ("Ven-a-Care") on June 23, 1995. The case was filed under seal consistent with seal provisions of the False Claims Act, 31 U.S.C. § 3730(b). The pleadings in this case remain under a statutory seal presumably because the Government has not yet decided if it will intervene as to certain other defendants. However, this Court has previously granted at least one motion to partially lift the seal to allow disclosure of information under seal in this case to state attorneys general. *See* Excerpt from privilege log produced by Relator Ven-a-Care in Texas litigation (referring to a "SEALED Order Granting Lifting of the Seal to Disclose to State Attorneys General") (attached as Ex. C).

On March 17, 2006, the Government elected to intervene against Abbott. The claims against Abbott were severed from this case, assigned a new case number (06-21303-CV-ASG), and then, shortly thereafter, transferred to Judge Saris in the United States District Court for the District of Massachusetts. Although the Government has previously consented to a partial unsealing of the record as to certain third parties, the Government has steadfastly refused to allow Abbott access to materials filed under seal in the original *qui tam* case (Case No. 95-1354-CIV-GOLD).[1]

Abbott's ability to prepare its defense should not be prejudiced because the Government continues to delay its decision to move forward as to other potential defendants. Abbott's proposed order would allow the Government to redact the names and identifying information

---

[1] Abbott previously moved this Court to provide Abbott access to a filing made by the Government to the JPML *after* the Government intervened and the claims against Abbott had been severed. Abbott moved for this relief because it did not know if the filing related to Abbott in any way. This Court, having reviewed the Government's filing, denied the request and confirmed that the document "did not affect Defendant Abbott." Order Denying Abbott Laboratories, Inc.'s Motion to Compel at 3 (9/6/06). Here, by contrast, Abbott is requesting documents filed *prior* to the Government's intervention in the case. These filings, which presumably include, among other things, motions for leave to amend the complaint and motions for extensions, undoubtedly do relate to and affect Abbott.

3

(*e.g.*, product information) of other defendants that remain under seal and otherwise protect
confidential information consistent with the statutory seal. Abbott, like others as to whom the
seal has been lifted, would be required to maintain the confidentiality of the documents filed
under seal.

On December 1, 2006, Abbott moved the United States District Court for the District of
Massachusetts to compel the Government to produce documents filed under seal in this case
prior to the severance of claims against Abbott. Because the Plaintiffs' claims against Abbott
have been transferred to Massachusetts for pre-trial proceedings, Abbott filed its motion in that
court pursuant to Rule 37 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1407. The
Government opposed Abbott's motion, arguing that the materials Abbott sought remained filed
(and sealed) with this Court and that this Court was the proper forum to hear Abbott's motion.
At the hearing before the Massachusetts court, counsel for the DOJ argued:

> [T]his court doesn't have jurisdiction over those documents and
> those documents, the documents Abbott is seeking are sealed by
> order of another United State District Court. I don't know what
> position the government would take if Abbott were to move to
> transfer those documents up here for your consideration or Judge
> Saris' consideration. Our only point is they've got to do it down in
> Florida. They've got to file that motion down there, at which time
> the United States would determine how to respond to it.

Jan. 30, 2007 Hrg. Tr. at 21-22 (relevant excepts from the hearing are attached as Ex. D).

On January 31, 2007, Magistrate Judge Bowler of the Massachusetts court denied
Abbott's motion without prejudice to seek relief from this Court. *See* Electronic Order (1/31/07)
(attached as Ex. E).[2]

---

[2] When Abbott filed its motion to compel in the Massachusetts court on December 1, 2006, Abbott
assumed the Massachusetts court had received a copy of the materials sought by Abbott—materials filed under seal
in Case No. 95-1354-CIV-GOLD. Abbott's assumption was based upon Rule 1.6 of Rules of the Joint Panel on
Multidistrict Litigation, which provides that "the clerk of the transferor district court shall forward to the clerk of the
transferee district court the complete original file and a certified copy of the docket sheet for each transferred

4

Abbott now moves this Court for relief. In support of this motion, Abbott has attached the full briefing and argument of the parties before the Massachusetts court. Exhibit B contains the initial motion, supporting memorandum, and exhibits that Abbott filed in the District of Massachusetts on December 1, 2006. The arguments and authority set forth in Abbott's previously filed brief are equally applicable to this Court. Abbott has attached as Exhibit F the United States' opposition brief and related exhibits, filed on December 15, 2006. Abbott and the Government's reply briefs are attached as Exhibits G and H, respectively.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Abbott hereby requests oral argument on this motion. Abbott believes that the issues associated with this motion are complex and that oral argument would provide the Court with the opportunity to question counsel and clarify any issues associated with Abbott's request for relief. Abbott estimates that one hour would be needed for oral argument.

---

action." JPML Rule 1.6. In opposing Abbott's motion, the Government indicated that pleadings made in this case (Case No. 95-1354-CIV-GOLD) were *not* transferred to the Massachusetts court.

Dated:  February 23, 2007

Respectfully submitted,

  /s/Marty Steinberg             

James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Marty Steinberg
Hunton & Williams
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone:  (305) 810-2505
Facsimile:  (305) 810-2460

*Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2007, a true and correct copy of the foregoing

**ABBOTT LABORATORIES, INC.'S MOTION FOR PARTIAL UNSEALING OF THE**

**RECORD TO ALLOW ABBOTT ACCESS TO DOCUMENTS FILED UNDER SEAL** was

served upon:

Mark A. Lavine, Esq. **(By Hand)**
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

Gejaa T. Gobena, Esq. **(By U.S. Mail)**
United States Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

James J. Breen, Esq. **(By Fed Ex)**
Alison Simon, Esq.
The Breen Law Firm
3350 S. W. 148th Avenue, Suite 110
Miramar, FL 33029

/s/ Marty Steinberg
Marty Steinberg

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7.1(A)(3)

Counsel for Abbott has met and conferred with Plaintiffs' counsel in a good faith attempt

to resolve the issues set forth in this motion, but has been unable to do so.

R. Christopher Cook

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* VEN-A-CARE OF THE FLORIDA KEYS, INC., a Florida corporation, by and through its principal officers and directors, ZACHARY T. BENTLEY and T. MARK JONES, <br><br> Plaintiff, <br><br> v. <br><br> ABBOTT LABORATORIES, INC. and HOSPIRA, INC., <br><br> Defendants. | Case No.: 95-1354-CIV-GOLD <br><br> Hon. Alan S. Gold |

## [PROPOSED] PROTECTIVE ORDER AND ORDER GRANTING ABBOTT LABORATORIES, INC.'S MOTION FOR PARTIAL UNSEALING OF THE RECORD TO ALLOW ABBOTT ACCESS TO DOCUMENTS FILED UNDER SEAL

Upon consideration of Abbot Laboratories, Inc.'s Motion for Partial Unsealing of the Record to Allow Abbott Access to Documents Filed Under Seal, IT IS ORDERED that:

Within 14 days from the date of this Order and subject to the provisions of this Order, the United States shall produce to Abbott all materials that were filed under seal in the above-captioned case prior to the severance of Plaintiffs' claims against Abbott on May 16, 2006.

The United States may redact the names and identifying information (*e.g.*, product information) of other defendants that remain under seal. The United States shall provide Abbott with a log stating the basis for each redaction. The log shall be provided no later than 14 days from the date of this Order.

The United States may designate and mark as "confidential" any documents produced to Abbott that contain information, the disclosure of which would jeopardize ongoing investigations or harm third parties.

Any documents produced pursuant to this Order and marked "confidential" shall not be disclosed by Abbott except to: (a) counsel for Abbott in this case and such employees of their law firms as are acting under the supervision of counsel for Abbott; and (b) no more than three "in-house" counsel at Abbott who are responsible for assisting in the preparation of the defense of this action.

To the extent any document marked "confidential" and produced pursuant to this Order is attached to any papers filed with any court, it shall be submitted in a sealed envelope indicating that it is being filed pursuant to this Order.

SO ORDERED THIS \_\_\_ DAY OF _____, 2007

_____

United States District Judge

Case 1:01-cv-12257-PBS   Document 4080-3   Filed 04/26/07   Page 13 of 65

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S MOTION
## TO COMPEL PRODUCTION OF *EX PARTE* FILINGS

Defendant Abbott Laboratories, Inc. ("Abbott") respectfully seeks an Order compelling

Plaintiff the United States of America ("United States") to produce to Abbott all documents,

filings, and other *ex parte* communications in the above-captioned matter, including all motions,

orders, and affidavits that were filed under seal in the Southern District of Florida during the

eleven (11) years from the filing of the underlying *qui tam* and the United States' decision to

intervene and sever its claims as to Abbott.  Because the United States has intervened against

Abbott, there is no statutory basis to withhold these filings from Abbott, and the strong

presumption in favor of open and fair judicial proceedings governs Abbott's access to the

Government's *ex parte* filings.

To the extent the United States has legitimate concerns regarding confidential material in

the case file, Abbott's Proposed Order (attached as Ex. A) would allow the United States to

redact the names and identifying information of other defendants still under investigation and

require Abbott to treat as confidential any documents so designated by the United States.

The arguments and authority supporting these requests are set out in the accompanying

memorandum.

# <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1, Abbott hereby requests oral argument on this Motion.

Dated:  December 1, 2006           Respectfully submitted,

                                     /s/ R. Christopher Cook
                                     James R. Daly
                                     Tina M. Tabacchi
                                     Brian J. Murray
                                     JONES DAY
                                     77 West Wacker Drive, Suite 3500
                                     Chicago, Illinois  60601
                                     Telephone:  (312) 782-3939
                                     Facsimile:   (312) 782-8585

                                     R. Christopher Cook
                                     David S. Torborg
                                     JONES DAY
                                     51 Louisiana Avenue, N.W.
                                     Washington, D.C.  20001-2113
                                     Telephone:  (202) 879-3939
                                     Facsimile:  (202) 626-1700

                                     *Counsel for Defendant Abbott Laboratories, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF *EX PARTE* FILINGS

Defendant Abbott Laboratories, Inc. ("Abbott") has moved this Court to compel the

United States to produce to Abbott, subject to appropriate redactions and confidentiality

protections, all *ex parte* communications and documents that have been made or filed in the

above-captioned case, including all filings made under seal in the underlying *qui tam* in the

Southern District of Florida.[1] Providing Abbott access to the record is supported by the

numerous courts that have ordered the unsealing of *qui tam* case records under similar

circumstances, and is consistent with the policy favoring open judicial proceedings. Indeed, a

heavy burden lies with the United States, not Abbott, to keep secret the proceedings in this case.

During the eleven-plus years between the filing of a *qui tam* complaint in 1995 and the

United States' decision to intervene against Abbott in 2006, the United States had numerous *ex*

---

[1] Because all claims against Abbott were severed from the underlying *qui tam* and transferred to this Court pursuant to 28 U.S.C. § 1407, Abbott's request for relief is appropriately directed to this Court. *See* 28 U.S.C. § 1407(b); *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.12 (3d Cir. 2002) (noting 28 U.S.C. § 1407(b) "empowers the transferee judge in multidistrict cases to act not only on behalf of the transferee district, but also with 'the powers of a district judge in any district for the purpose of conducting pretrial depositions and such coordinated or consolidated proceedings'") (quoting 28 U.S.C. § 1407(b)). Moreover, Judge Gold of the Southern District of Florida issued an order administratively closing the case against Abbott. *See* Order Administratively Closing Case (7/31/06) (Ex. B).

Pursuant to Rule 1.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Abbott assumes that this Court has received copies of all filings made by the United States since the inception of this *qui tam* action. *See also* Letter from S. Jones (Clerk, D. Mass.) to C. Maddox (Clerk, S.D. Fla.) (8/2/06) (Ex. C) (requesting S.D. Fla. clerk to "please provide the original case file, along with a certified copy of the docket entries and a copy of the transfer order for the case now pending in your district as indicated above").

*parte* communications with the District Court for the Southern District of Florida (the "Florida

court"). Now that the United States has intervened, Abbott seeks to learn the substance of those

*ex parte* communications and to receive copies of all filings in the case against Abbott. That

information is potentially relevant to numerous issues in this matter, including:

- Whether the United States provided the "good cause" required by the False Claims Act when it repeatedly delayed its intervention decision;

- The extent and timing of the United States' knowledge regarding the alleged misconduct and why it took so long to decide whether to intervene;

- Whether the court file contains evidence supporting Abbott's defenses of government knowledge, estoppel, and laches; and

- Whether the United States or the relator made any misrepresentations to the Florida court or acted without candor in their *ex parte* communications with that court.

Abbott has requested these communications from the United States and explained their

relevance to this case. Abbott has indicated it would accept these communications in a form that

redacts the names and identifying information of other defendants, and that it would treat the

communications as confidential. Yet, with no justification, the United States continues to

withhold all of its *ex parte* communications with the Florida court. Because the United States

has flatly refused to disclose any of its *ex parte* communications, Abbott has no choice but to

seek relief from this Court.[2]

## **BACKGROUND**

A.   **The History Of This Case.**

1.   This case began as part of a *qui tam* complaint, which Ven-A-Care filed against

Abbott and several other defendants in the Southern District of Florida under the False Claims

Act on June 23, 1995.

---

[2] Because the United States has not yet decided whether to intervene as to all other defendants named in the *qui tam*, Abbott is not requesting that the Court unseal the record.

2.      For the next eleven years, the United States (presumably) filed under seal, among other things, numerous motions to extend the 60-day investigatory period provided by the False Claims Act to determine whether to intervene.  31 U.S.C. § 3730(b)(3).  These *ex parte* motions should have been accompanied by affidavits or other submissions establishing "good cause" for extending the 60-day decision period.  *Id.*

3.      During the eleven years in which it was deciding whether to intervene, the United States availed itself of extensive, one-sided discovery regarding this civil case.  Using its subpoena power, the United States sought and received documents from Abbott.  The United States collected potentially relevant documents and data from third parties, analyzed data, interviewed and possibly deposed critical witnesses while evidence was still fresh, and otherwise took steps to preserve evidence and build its case against Abbott.

4.      Finally, on March 17, 2006, the United States elected to intervene.  At that time, the United States requested the District Court for the Southern District of Florida to unseal "a redacted copy of the relator's complaint identifying all of its Medicaid and Medicare claims against Abbott, this Notice, and the attached proposed Order."  Notice of Election to Intervene, at 4 (3/17/06).  On that same date, the United States moved to sever all Abbott claims from the underlying *qui tam*.  *See* Motion to Sever as to Defendant Abbott Laboratories, Inc. (3/17/06).  The United States simultaneously filed its Complaint against Abbott, while Ven-A-Care amended its Fourth Amended Complaint against Abbott by adopting the United States' Complaint.  *See* Complaint (3/17/06); Plaintiff Ven-A-Care's Motion for Leave to Amend Complaint by Adopting United States' Complaint in Intervention (3/17/06).  The Florida court granted these motions on May 16, 2006.

5.      Also on March 17, 2006, the United States made an *ex parte* request to the Florida court that "*all other papers on file in this action remain under seal because . . . such papers are*

3

provided by law to the Court alone for the sole purpose of evaluating whether the seal and time

for making an election to intervene should be extended." Notice of Election to Intervene, at 4

(emphasis added). The Florida court granted the United States' *ex parte* request without hearing

from Abbott. *See* Order on Notice of Election to Intervene, at 2 (5/16/2006). Accordingly, all

other pleadings filed in the case against Abbott—including the United States' motions for

extensions—remain under seal in the Florida court even though no claims remain under seal

against Abbott.

6.      The litigation was transferred to this Court on July 27, 2006.

**B.      Abbott's Repeated Requests For The Government's *Ex Parte* Communications.**

7.      Upon being served with the United States' Complaint (the operative pleading in

this case), counsel for Abbott immediately asked the United States whether it would agree to

allow Abbott access to all documents that had been filed *ex parte* and under seal in the Florida

court. Abbott put this request in writing on July 13, 2006, asking for "all documents relating in

any way to claims asserted against Abbott . . . still under seal in this litigation . . . ." *See* Letter

from J. Daly to M. Lavine (7/13/06) (Ex. D). Abbott indicated that it would accept redaction of

information identifying other defendants to allay any concern about disrupting ongoing

investigations and to answer any objections that a disclosure of the Government's filings might

violate the seal. *Id*.

8.      Abbott has repeated its request for these documents several times over the last

few months. *See* Letter from C. Cook to M. Lavine (10/13/06) (Ex. E); Letter from C. Cook to

M. Lavine (10/30/06) (Ex. F); Letter from C. Cook to G. Gobena and J. Breen (11/3/06) (Ex. G).

For six months Abbott sought to secure an agreement to allow Abbott limited, redacted access to

the requested documents. During that time, the United States misled Abbott about its intentions

and failed to provide any legitimate reason to withhold all of its *ex parte* communications with the Court.

9.      At one point, the United States went so far as to state that it was reviewing the documents under seal to determine what it would agree to provide to Abbott.  *See, e.g.*, Letter from C. Cook to M. Lavine (10/13/06) (Ex. E).  From the parties' discussions on the issue, Abbott expected that the United States would conduct a good-faith review of the filings and determine what filings it would provide to Abbott without the need for intervention by the Court.

10.     To Abbott's surprise, the United States declared on November 8, 2006 that it would not agree to provide Abbott *any* of the documents that it had filed under seal.  *See* Letter from J. Draycott to C. Cook (11/8/06).  The United States offered no explanation for its refusal.

## **ARGUMENT**

### **I.      THE JUDICIAL RECORD SHOULD BE PRODUCED TO ABBOTT NOW THAT THE GOVERNMENT HAS INTERVENED.**

The False Claims Act allows materials to be filed under seal in a *qui tam* action only until the United States decides whether to intervene.  *See* 31 U.S.C. § 3730(b)(2)-(3).  Once the United States makes its intervention decision, however, "unsealing of the complaint is virtually automatic."  *United States ex rel. McCoy v. California Med. Review, Inc.*, 715 F. Supp. 967, 969 (N.D. Cal. 1989).

The rest of the court's docket, too, becomes public record once the United States intervenes.  Nothing in the False Claims Act or its legislative history authorizes keeping the judicial record under seal forever.  *See* 31 U.S.C. § 3730(b)(2)-(3); *United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228, 1230-31 (N.D. Ala. 2000) (noting the False Claims Act "'makes no mention of the [United States'] right to keep in camera information under seal indefinitely'" following intervention and finding "no authority under the [False

Claims Act] or elsewhere to hold information relating to this cause under seal") (citation omitted); *California Med. Review*, 715 F. Supp. at 969 ("neither [§3730(b)(2)] nor any other [section] in the FCA provides authority for retaining the civil action under seal once the Government has elected to intervene"). To the contrary, courts faced with a request to unseal documents once the United States has intervened have generally "considered lifting the seal on the entire record to be appropriate." *United States ex rel. Lee v. Horizon West, Inc.*, No. C 00-2921 SBA, 2006 WL 305966, *2 (N.D. Cal. Feb. 8, 2006) (citing *United States ex rel. Erickson v. Univ. of Washington Physicians*, 339 F. Supp. 2d 1124, 1126-7 (W.D. Wash. 2004); *United States ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1191 (N.D. Cal. 1997); *United States v. CACI Int'l. Inc.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995); *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994); *California Med. Review*, 715 F. Supp. at 967).

This is simple common sense: Once the Government has made its intervention decision and commenced litigation, there is no reason to deny the defendant access to the materials filed under seal, and the presumption again applies "that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). To the extent that the United States seeks to continue to shield from the public judicial records in a *qui tam* lawsuit after intervention, the Government bears the burden of explaining why that record should be sealed. *See, e.g.*, *Horizon West*, 2006 WL 305966 at *2. Moreover, the "appropriateness of making court files accessible is accentuated in cases where the government is a party," and "'[o]nly the most compelling reasons can justify non-disclosure of judicial records.'" *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (citation omitted).[3]

---

[3] Imposing confidentiality protections in the form of a protective order is consistent with this policy of open judicial records. The presumption that judicial records are open to the public does not apply to materials produced in civil discovery. *See In re Boston Herald, Inc.*, 321 F.3d 174, 194 (1st Cir. 2003); *United States v. Amodeo*, 71

Federal courts have repeatedly denied Government requests to keep False Claims Act litigation secret after the Government intervenes.  Even when the Government objects to such disclosure, courts order production if the Government fails to explain, with specifics, what harm would result.  *See Univ. of Washington Physicians*, 339 F. Supp. 2d at 1126-27 ("careful *in camera* examination of the court file in this case shows that the documents at issue, including those cited by the government as containing particularly sensitive information, merely describe routine investigative procedures"); *United States ex rel. Goodstein v. McLaren Reg. Med. Ctr.*, No. 97-CV-72992-DT, 2001 WL 34091259, *3 (E.D. Mich. 2001) (ordering production after *in camera* review, reasoning "[w]hile these documents generally mention an investigatorial plan, they set forth very little with respect to the details of this plan"); *Straus*, 846 F. Supp. at 23 (*in camera* review determined that United States' status report should be unsealed and made available to defendants because the report "describes routine investigative procedures which anyone with rudimentary knowledge of investigative procedures would assume would be utilized in the regular course of business"); *CACI Int'l*, 885 F. Supp. at 82-83.  Importantly, courts have ordered disclosure of documents filed under seal regardless of whether the documents would be useful to the defendants.  *See, e.g.*, *Straus*, 846 F. Supp. at 23 (noting the information "may be of some, albeit doubtless limited, use to the defense").

Indeed, documents originally filed under seal have been produced to Abbott in a related AWP case.  As the Court knows, the State of California and Ven-A-Care are plaintiffs in an AWP *qui tam* against Abbott.  That case has been consolidated into MDL 1456.  Before consolidation, however, the state court before which the case was pending ordered the plaintiffs

---

(continued…)

F.3d 1044, 1049 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on a different footing than a . . . document which is presented to the court to invoke its powers or affect its decisions.").

to provide, in redacted form, documents that had been filed with the court under seal pursuant to the California state false claims statute. *See* Protective Order and Partial Unsealing Order to Provide Defendants With Documents in the Court File and Stipulation to Entry Thereof (Ex. H). That order was the result of a court-mandated meeting among the parties "concerning a procedure to provide defendants with redacted and/or unredacted copies of documents in the Court's file." *Id*. at 1.

During the eight months since it elected to intervene, the United States has failed to identify any legitimate or compelling government interest that would be damaged by disclosing to Abbott the Government's *ex parte* submissions to the Court. To the extent, however, that any confidentiality concerns exist, they can be resolved by allowing the United States to redact the names and identifying information of other defendants and ordering Abbott to keep confidential material designated as "confidential" by the United States.

## II. THE JUDICIAL RECORD IS RELEVANT TO THE DEVELOPMENT OF ABBOTT'S DEFENSE.

Although Abbott bears no burden in requesting access to the files in this civil case, the Court should consider the importance of the United States' *ex parte* filings to the development of Abbott's defenses. For that additional reason, the Court should give Abbott complete access to the judicial record.

Under the statutory framework created by Congress in the False Claims Act, the United States is provided 60 days to determine whether to intervene in a *qui tam* action. 31 U.S.C. § 3730(b)(2). Only for "good cause shown" may the Government seek an extension of the 60-day period through a motion that "may be supported by affidavits or other submissions in camera." *Id*. at § 3730(b)(3). Congress did not envision that repeated prolonging of the seal would be necessary or commonplace. *See* S. Rep. No. 99-345, at 24-25 (1986), reprinted in 1986

U.S.C.C.A.N. 5266, 5289 ("The Committee feels that with the vast majority of cases, 60 days is

an adequate amount of time to allow United States coordination, review and decision.").

While some extension of the seal may be warranted in large and complex cases, courts

have increasingly recognized pragmatic and even Constitutional limits to the Government's

ability to keep cases in limbo for years or, in this case, for over a decade.  For example, the

Eastern District of Louisiana, in a case where it was "extremely concerned that the United States

has taken so much time [18 months] without being able to reach a decision," recognized that the

"'practice of conducting one-sided discovery for months or years while the case is under seal

was not contemplated by Congress and is not authorized by the statute'" and that "Defendants

have a legitimate interest in building their defense while the evidence is still fresh." *United

States ex rel. Lacorte  v. SmithKline Beecham Clinical Lab., Inc.*, No. CIV. A. 97-0942, 1998

WL 840012, *1 (E.D. La. 1998) (citations omitted).

Other courts, too, have taken a dim view of the Government's extended delay in

intervening in a *qui tam* case, especially when coupled with one-sided civil discovery during the

period of delay.  *See, e.g.*, *United States ex rel. Health Outcomes Techns., Inc. v. Hallmark

Health Sys., Inc.*, 409 F. Supp. 2d 43, 50-52 (D. Mass. 2006) (holding that Government's

complaint did not relate back to relator's *qui tam* complaint for statute of limitations purposes,

and noting "the government's investigation dragged on incessantly" (seven years) and that

statutes of limitation "'promote justice by preventing surprises through the revival of claims that

have been allowed to slumber until evidence has been lost, memories have faded, and witnesses

have disappeared'") (citation omitted); *Baker & Taylor,* 955 F. Supp. at 1190 ("In this case, the

government appears to be fully engaged in its discovery, without giving the defendants the

opportunity even to answer the complaint.  The government's return to the order to show cause

states that each of the defendants has been served with a subpoena, investigative interviews have

been conducted with numerous current and former B&T employees and government personnel have been criss-crossing the country to conduct interviews and audits.").

Here, the United States' *ex parte* communications with the court very well might support a challenge to whether the Government's purported reasons for delay, coupled with the extraordinary length of the delay (eleven years), were sufficient under the law to extend the seal and the Government's intervention decision. Those filings also may reveal that the Government sought to gain an unfair advantage against Abbott by delaying its intervention. Until Abbott actually sees these submissions, of course, it cannot assess whether they give rise to or support a claim for relief. Accordingly, the Government's *ex parte* communications, including the reasons articulated by the United States to establish the "good cause shown" to delay its intervention decision, are a proper subject of discovery.

Other courts have ordered disclosure based in part on the relevance of the judicial record to a defendant's defense. In *Horizon West*, for example, the court ordered disclosure of the documents because they "may shed light on the Government's knowledge of [defendant's] alleged wrongdoing and whether the Government was justified in delaying its prosecution [of defendant] for nearly five years." 2006 WL 305966 at *3. The Court explicitly rejected the Government's argument that the sealed documents were irrelevant because the relator's complaint allegedly tolled the statute of limitations, reasoning the defendant was "at least entitled to the disclosure of all pertinent facts relating to the Government's investigation and the reasons

for the Government's delay." *Id.*[4]  The result here should be no different:  The United States

should be forced to reveal to Abbott its *ex parte* communications with the Florida court.[5]

Similarly, declarations and affidavits submitted to the Court under seal may be relevant to

what the United States knew—and when—about the conduct at issue in the Complaint.  The

United States' knowledge is a key issue in discovery, as such knowledge is inconsistent with the

Government's claim that it was duped by Abbott into believing that AWPs reflected actual

acquisition cost.  In fact, the United States was put on notice of the "spreads" for the Abbott

drugs at issue in this case at least as early as June 1995, when Ven-A-Care filed its original *qui

tam* complaint.  Yet, the United States seeks damages through January of *2001*.  The documents

that remain under seal may contain admissions regarding the United States' knowledge and its

belated decision to intervene.  These documents could form a critical part of defenses based on

government knowledge and delay, such as laches and estoppel.

Finally, granting Abbott access is critical to verifying the accuracy in general of factual

representations made to the Court by the Relator and the United States between 1995 and 2006.

*Ex parte* submissions are not subject to the beneficial testing that is an important part of our

adversary system.  *See Health Outcomes*, 409 F. Supp.2d at 51-52 (the "government's *ex parte*

---

[4] The Government's lengthy, eight-year delay in prosecuting claims in another the False Claims Act case was highlighted in the Second Circuit's November 16, 2006 decision in *United States  v. The Baylor Univ. Med. Ctr.*, No. 05-2951-cv, 2006 WL 3317695, Slip Op. at 6-9, 11-17 (2d. Cir. Nov. 16, 2006) (Ex. I).  In that case, the Second Circuit granted defendants' motion to dismiss the Government's False Claims Act claims on statute of limitations grounds.  The Second Circuit held that the Government's complaint-in-intervention did not relate back to the date on which the relator filed its complaint.

[5] Recent decisions have rejected what Abbott anticipates will be the United States' argument in response—that the Florida court's decisions to allow the extensions constitute "law of the case."  *See, e.g.*, *United States ex rel. Health Outcomes Technologies, Inc. v. Hallmark Health Sys., Inc.*, 409 F. Supp.2d 43, 51-52 (D. Mass. 2006) (court was "underwhelmed" by Government's law-of-the-case argument, reasoning the "government's *ex parte* actions will not now be left unchallenged in a court that enjoys the benefit of an adversarial proceeding in order to give deference to judgments made by a court that did not"); *Baylor*, Slip Op. at 11-17 (2d. Cir. Nov. 16, 2006) (Ex. I) (overturning District Court decision applying the law-of-the-case doctrine and granting motion to dismiss under statute of limitations).  *See also Baker & Taylor*, 955 F. Supp. at 1191-92 ("The court notes with regret that when the earlier extensions were granted in this case, the effects of inertia and the lack of an opposing party may have resulted in a less searching inquiry regarding good cause than is appropriate.").

actions will not now be left unchallenged in a court that enjoys the benefit of an adversarial proceeding in order to give deference to judgments made by a court that did not"). Moreover, misrepresentation by the Relator or the United States may give rise to a claim for relief by Abbott. *See, e.g., United States ex rel. King v. Hillcrest Healthcare Ctr.*, 264 F.3d 1271, 1280-82 (10th Cir. 2001), *cert. denied*, 535 U.S. 905 (2002). In *King*, the court dismissed a Relator's claims for lack of subject matter jurisdiction because the Relator failed to disclose to the Government all necessary information upon the filing of his *qui tam* complaint.

In this case, Abbott is entitled to confirm that *ex parte* disclosures and factual representations made by the Plaintiffs have been accurate and complete. If any discrepancies exist in the record, Abbott should be permitted to decide whether a claim for relief is appropriate.

## CONCLUSION

For all these reasons, Abbott respectfully asks that the Court enter an Order requiring the United States to provide Abbott, subject to appropriate redactions and confidentiality provisions, with copies of all documents that have been filed under seal in this case, including all filings in *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*, Case No. 95-1354-CIV-GOLD, United States District Court for the Southern District of Florida, prior to the severance of Plaintiffs' claims against Abbott.

Dated: December 1, 2006

Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

Case 1:01-cv-12257-RBS Document 4980-3 Filed 04/26/07 Page 29 of 65

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

      I certify that the moving party communicated with counsel for Plaintiffs in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

                              /s/ R. Christopher Cook
                              R. Christopher Cook

Case 1:01-cv-12257-PBS Document 3454 Filed 12/08/2006 Page 18 of 74

## <u>CERTIFICATE OF SERVICE</u>

     I, R. Christopher Cook, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL PRODUCTION OF *EX PARTE* FILINGS, and memorandum and materials in support, be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 1st day of December, 2006.

                                  /s/ R. Christopher Cook

                                  R. Christopher Cook

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## [PROPOSED] PROTECTIVE ORDER AND ORDER TO PROVIDE DEFENDANT ABBOTT WITH DOCUMENTS IN THE COURT FILE

Upon consideration of Abbott Laboratories, Inc. Motion to Compel Production of *Ex Parte* Filings, IT IS ORDERED that:

Within 14 days from the date of this Order and subject to the provisions of this Order, the United States shall produce to Abbott all *ex parte* communications and all materials that were filed under seal in the above-captioned case and the underlying *qui tam* action, *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*, Case No. 95-1354-CIV-GOLD, United States District Court for the Southern District of Florida, prior to the severance of Plaintiffs' claims against Abbott.

The United States may redact the names and identifying information (*e.g.*, product information) of other defendants that remain under seal. The United States shall provide Abbott with a log stating the basis for each redaction. The log shall be provided no later than 14 days from the date of this Order.

The United States may designate and mark as "confidential" any documents produced to Abbott that contain information, the disclosure of which would jeopardize ongoing investigations or harm third parties.

Any documents produced pursuant to this Order and marked "confidential" shall not be disclosed by Abbott except to: (a) counsel for Abbott in this case and such employees of their law firms as are acting under the supervision of counsel for Abbott; and (b) no more than three "in-house" counsel at Abbott who are responsible for assisting in the preparation of the defense of this action.

To the extent any document marked "confidential" and produced pursuant to this Order is attached to any papers filed with any court, it shall be submitted in a sealed envelope indicating that it is being filed pursuant to this Order.

SO ORDERED THIS ___ DAY of _____, 2006:

_____

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.06-21303-CIV-GOLD/TURNOFF

UNITED STATES OF AMERICA, **ex rel.**

VEN-A-CARE, OF THE FLORIDA KEYS, INC.,
a Florida corporation, by and through its
principal officers and directors, ZACHARY
T. BENTLEY, and T. MARK JONES,

Plaintiff,

v.

ABBOTT LABORATORIES, INC., and
HOSPIRA, INC.,

Defendant. _____/



CLOSED
CIVIL
CASE

FILED by ___ D.C.

AUG 0 1 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER ADMINISTRATIVELY CLOSING CASE

THIS CAUSE is before the Court *sua sponte*. On July 11, 2006, the Judicial Panel

on Multidistrict Litigation issued a Conditional Transfer Order, transferring this case to the

Panel. According to the Conditional Transfer Order, the transfer becomes final after fifteen

days if no party has filed any opposition thereto. I held a telephonic status conference in

this matter on July 20, 2006. At that telephonic status conference, Plaintiffs, United States

of America and Relator Ven-A-Care of the Florida Keys, Inc., indicated that they intended

to object to the Conditional Transfer Order.

Subsequently, Plaintiffs filed a Notice Regarding Non-Opposition to the JPML's July

11 Conditional Transfer Order **[DE # 39]**. In the Notice, Plaintiffs indicate that "they will

not file an opposition to the July 11, 2006 Conditional Transfer Order". As a review of the

record reveals that no party has any opposition to the Conditional Transfer Order, it is

appropriate for the Court to enter an order administratively closing this action. It is hereby

**ORDERED AND ADJUDGED** that:

     1.     This action is ADMINISTRATIVELY CLOSED.

     2.     All pending motions, including Defendants Hospira, Inc.'s Motion to Dismiss **[DE # 26]** and Defendant Abbott Laboratories, Inc.'s Motion to Dismiss **[DE # 28]**, are DEEMED MOOT.

     3.     Plaintiffs are still required to comply with the requirements of the Court's July 24, 2006 **[DE # 38]** Order Following Telephonic Status Conference, however.

     **DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of July, 2006.

_____
**THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE**

Copies furnished:
**U.S. Magistrate Judge William Turnoff**
All Counsel of Record

-2-

EXHIBIT 2

**UNITED STATES DISTRICT COURT**
DISTRICT OF MASSACHUSETTS
OFFICE OF THE CLERK
1 COURTHOUSE WAY
BOSTON, MASSACHUSETTS 02210

**Sarah Allison Thornton**
CLERK OF COURT

August 2, 2006

Mr. Clarence G. Maddox II
Clerk/Court Administrator
United States District Court
150 Federal Courthouse Square
301 North Miami Avenue
Miami, FL 33128

IN RE: <u>MDL DOCKET No. 1456</u>   In Re: Pharmaceutical Industry Average
Wholesale Price Litigation
USDC - Massachusetts <u>Lead</u> Case No. 1:01-cv-12257-PBS
Your Case Civil Action No. 1:06-cv-21303
District of MA No.1:06-cv-11337-PBS

Dear Clerk:

Enclosed is a certified copy of the Order of the Judicial Panel on Multi-District Litigation,
transferring the cases on the attached listing to the U.S. District Court for the District of
Massachusetts for coordinated or consolidated pretrial proceedings pursuant to Title 28 United
States Code Section 1407. These cases have been assigned to the Honorable Patti B. Saris.

In accordance with the Rules concerning Multi-District Litigation, please forward the
original case file, along with a certified copy of the docket entries and a copy of the transfer order
for the case now pending in your district as indicated above. Also include a copy of this letter
when transmitting your records to the above address.

Your prompt attention to this matter is greatly appreciated. If you should have any
questions, please do not hesitate to contact the undersigned at 508-929-9901, Robert Alba,
Courtroom Clerk for Judge Saris at 617-748-9175 or Christine Patch, Docket Clerk for Judge
Saris, at 617-748-9178.

Sincerely,

Sherry Jones
Deputy Clerk

Information Copy to:   Michael Beck, Clerk of the Panel
Counsel of Record
Robert Alba
Christine Patch

Case 1:01-cv-12257-PBS   Document 4080-3   Filed 04/26/07   Page 38 of 65

# EXHIBIT 3

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number: 312.269.4141
jrdaly@jonesday.com

July 13, 2006

VIA E-MAIL & U.S. MAIL

Mark A. Lavine, Esq.
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

> Re:   *U.S. ex rel. Ven-A-Care v. Abbott Laboratories and Hospira, Inc.*,
>        Case No. 06-CV-21303-ASG

Dear Mark:

During our conversations this week you asked that we clarify our request that the Government agree, with the Court's permission, to provide us with those documents that remain under seal with the Court. We believe that all documents relating in any way to claims asserted against Abbott (though not limited to Abbott-specific pleadings) still under seal in this litigation should be immediately unsealed and provided to us. While we appreciate that the case remains sealed as to other defendants and have advised you that Abbott would not object to redaction of information that would identify other defendants.

The False Claims Act does not authorize the Government to keep the record under seal in this case forever. *See* 31 U.S.C.A. § 3730(b)(2)-(3); *U.S. ex rel. McCoy v. California Medical Review, Inc.*, 715 F. Supp. 967, 968 (N.D. Cal. 1989) ("neither [§3730(b)(2)] nor any other [section] in the FCA provides authority for retaining the civil action under seal once the Government has elected to intervene"); *United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228, 1230-31 (N.D. Ala. 2000) (noting that the act "makes no mention of the government's right to keep *in camera* information under seal indefinitely" and finding "no authority under the [FCA] or elsewhere to hold information relating to this cause under seal") (citation omitted); *U.S. ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1189-90 (N.D. Cal. 1997) (legislative history "makes it abundantly clear" that Congress did not intend to allow the Government to "prolong the period in which the file is sealed indefinitely"); *U.S. v. SmithKline Beecham Clinical Laboratories, Inc.*, 1998 WL 840012, at 1 (E.D. La. 1998).

Federal common law also recognizes a presumption that judicial records should be open to the public. *See Nixon v. Warner Comm'n, Inc.*, 435 U.S. 589, 597 (1978) ("courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents"); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985) (denying access to records of judicial proceedings must be "necessitated by a

JONES DAY

Mark A. Lavine, Esq.
July 12, 2006
Page 2

compelling governmental interest, and . . . narrowly tailored to that interest") (citation omitted); *U.S. ex rel. Alcohol Foundation, Inc. v. Kalmanovitz Charitable Foundation, Inc.*, 186 F. Supp. 2d 458, 465 (S.D.N.Y. 2002) ("The weight of the presumption . . . is at its strongest when the document . . . has been submitted as a basis for judicial decision making.") (citation omitted). This presumption may be overcome only if unsealing the documents would expose "confidential investigative techniques," "information which could jeopardize an ongoing investigation," or "matters which could injure non-parties." *See United States v. CACI Int'l, Inc.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995). We are aware of no such danger here. In its Notice of Election to Intervene, the only argument the Government put forth to justify maintaining the seal was that the information had been provided to the court "for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended." Notice of Election to Intervene, at 4 (March 17, 2006). This reason alone does not outweigh the long-standing judicial preference for openness with respect to court records. *See U.S. ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D. N.Y. 1994) (Government's status report did not disclose "specific techniques" of investigation). In any event, it is difficult to see how the argument retains any relevance whatsoever now that the Government has chosen to intervene.

Abbott is clearly entitled to the sealed materials in the defense of this case. For almost eleven years while the complaint was sealed, the United States has been able to participate in various *ex parte* proceedings and engage in fact discovery unbeknownst to Abbott. Gaining access to this information at last will help Abbott develop a discovery plan, locate witnesses and documents, determine whether any of the Government's claims are time barred, and clarify exactly what the Government knew—and when—about the allegedly actionable behavior at issue here. *See U.S. ex rel. Costa*, 955 F. Supp. at 1189 ("Defendants have a legitimate interest in building their defense while the evidence is still fresh.").

In addition, the Local Rules for the Southern District of Florida prohibit keeping a case under seal forever. These rules provide that "[a]bsent extraordinary circumstances, no matter sealed pursuant to this rule may remain sealed for longer than five (5) years from the date of filing." S.D. FLA. RULE 5.4(A)(2). This five year deadline expired long ago, and the Government has articulated no additional "extraordinary circumstances."

JONES DAY

Mark A. Lavine, Esq.
July 12, 2006
Page 3

For these reasons, we ask that you agree to an order lifting the seal and provide us with copies of all relevant documents still under seal, including but not limited to, all motion practice and orders in connection with extending the seal in this matter. If you believe you have some good faith basis for maintaining the seal with respect to an individual document or filing, please inform us of that specific reason so that we may evaluate whether to raise this issue with the Court. We appreciate your prompt attention to this matter, and look forward to hearing from you.

Sincerely,

James R. Daly / JB

Case 1:01-cv-12257-PBS   Document 4080-3   Filed 04/26/07   Page 42 of 65

EXHIBIT 4

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

October 13, 2006

<u>VIA EMAIL</u>

Mark A. Lavine, Esq.
Assistant United States Attorney
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

> Re:   *U.S. ex rel. Ven-A-Care v. Abbott Laboratories and Hospira, Inc.*,
>          Case No. 06-CV-21303-ASG

Dear Mark:

I write to follow up on the various discovery issues we discussed last Wednesday, October 3, 2006, and to summarize my understanding of where the parties stand on those issues.

### Plaintiffs' Production

***PSPS Data.***  You have reviewed the PSPS data on the CDs in your possession and believe, with the exception of J-Code 7051, that your CDs have the relevant PSPS information for J-Codes named in the Complaint for the years 1991 through 2004.  For each year, the relevant information is contained in a file named "ALPHAB."  Our disks for the years 1994 through 2004 do not contain an a file titled "ALPHAB."  You believe this was likely the result of a copying error.  You have agreed to send us corrected CDs for the years 1994 through 2004, as well as information for J-Code 7051.

*Status:*  We received today CDs from you in response to our request for corrected data. We will review the data and, if we still cannot access it, contact you further.

***Documents Redacted or Removed for Relevancy.***  You agreed to review those documents from the Government's initial disclosure production that have been redacted with the notation "removed for relevancy."  We previously identified the pages immediately preceding and following the six-page document numbered HHC001-0614 through HHC001-0619 as an example of such redactions.  Unless these documents are privileged, or the government can articulate some other legally sufficient reason not to produce them, we have asked that you produce unredacted copies of these documents.

*Status*:  You indicated that you could get us an answer to this question in approximately one week.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Mark A. Lavine, Esq.
October 13, 2006
Page 2

**First DataBank Documents.** You indicated that you would image and send all of the documents produced by First DataBank that related to Abbott, but that it would take some time to separate out the documents that do not relate to Abbott. We advised you that we are requesting the production of all documents produced by First Databank — including documents that do not relate specifically to Abbott products — and that you need not go through the effort of separating the documents. You agreed to take my request under advisement.

*Status*: You stated that we could expect to receive a CD of the First DataBank documents, at least those relating to Abbott, within two weeks.

**Wholesaler and Other Third Party Documents.** You noted that documents produced to you by wholesalers (which comprise approximately 100,000 pages from 15 to 20 companies) were produced in response to subpoenas from HHS, and that there may be confidentiality issues to consider before producing them. You are contacting these companies to determine whether they want to assert a confidentiality objection before producing these documents to us.

*Status*: You were unable to commit to a specific date to produce these documents. We are interested in expediting this process in order to gain access to all documents, data or information the government has in its possession or control as a result of its ten-year investigation. At the earliest possible time, we would like to determine whether that material is relevant to our case and, if it is, to decide how we can most efficiently review or copy the material. To speed that process, we respectfully ask that you provide us a description, including the source and volume, of all such documents, data and other information that the government gathered in the course of its investigation.

**File Source Index.** You did not know whether the Government would be able to provide a File Source Index for the Government's initial document production.

*Status*: You indicated you could determine whether the Government could provide a File Source Index for the documents produced fairly quickly, in any event within two weeks. We also will determine the extent to which Abbott can provide similar information for its productions to date.

**Production of Electronic Documents.** In order to facilitate the exchange of electronic documents in electronic format, you will forward a document that sets forth the guidelines the DOJ typically uses when requesting production in electronic format. We will share that document with our technical personnel when we get it.

*Status*: I received an email from you with DOJ electronic production guidelines, and I have forwarded that to the appropriate people here at Jones Day. I hope to have someone contact you shortly to negotiate a mutually agreeable format for electronic document exchanges.

JONES DAY

Mark A. Lavine, Esq.
October 13, 2006
Page 3

*Carriers and Fiscal Intermediaries.* We have again asked whether the Government, as Plaintiff in this action, will consider documents in the possession of Medicare carriers or Medicaid fiscal intermediaries to be in the possession of the "United States," such that document requests directed to the "United States" are sufficient to request production of responsive materials in the possession of such entities. If your position is that we must serve subpoenas on these carriers and intermediaries, we have asked you whether DOJ represents these entities and will accept service of these subpoenas. You did not yet know the answer to these questions.

*Status*: You stated you would have an answer for us on this issue within one to two weeks.

*Under-seal File.* We again asked you to produce all documents in any way related to Abbott that were filed under seal in the Southern District of Florida or elsewhere in connection with Ven-A-Care's *qui tam* lawsuit. This request has been outstanding for months, and we again ask you to provide a copy of the Abbott-related pleadings filed under seal in this lawsuit against our client. *See* Letter from J. Daly to M. Lavine dated July 13, 2006. Once the seal was lifted as to the allegations against Abbott, Abbott was entitled to receive those materials immediately. The current stay of *discovery* between the parties is irrelevant to Abbott's entitlement to view *pleadings* for which there is no longer any legitimate basis to be filed under seal. *See, e.g., U.S. ex rel. McCoy v. California Medical Review, Inc.*, 715 F. Supp. 967, 968 (N.D. Cal. 1989) ("neither [§3730(b)(2)] nor any other [section] in the FCA provides authority for retaining the civil action under seal once the Government has elected to intervene"); *United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228, 1230-31 (N.D. Ala. 2000) (noting that the act "makes no mention of the government's right to keep *in camera* information under seal indefinitely" and finding "no authority under the [FCA] or elsewhere to hold information relating to this cause under seal") (citation omitted). *See also Nixon v. Warner Comm'n, Inc.*, 435 U.S. 589, 597 (1978) ("courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents").

*Status*: You stated that you would let us know your position on this issue within a week. Please advise us immediately on this issue, so that we can determine whether to seek relief from the Court.

*Relator Statement.* We asked for production of the statement submitted to the government by Ven-A-Care pursuant to 31 U.S.C. § 3730(b)(2).

*Status*: You stated that you would let us know your position on this issue within a week.

*Privilege Logs.* We discussed whether we could agree on a time period in which to exchange privilege logs. Abbott proposes that the parties exchange privilege logs within 30 days after a document production is complete.

Mark A. Lavine, Esq.
October 13, 2006
Page 4

*Status:* You are going to determine whether the Government can agree to the production of a privilege log within 30 days from the date that a document production is completed. We plan to discuss the matter further within the next week.

**Damage Disclosures.** We expressed our belief that Abbott was entitled to more information relating to Plaintiffs' alternative damage theory, as discussed in my letters of August 29, 2006 and September 15, 2006. We continue to believe that the question of what the Medicare and Medicaid clients *would have paid* absent Abbott's alleged wrongdoing is not a question that relies upon expert testimony, but is a question that can be answered by your clients. My letter of September 15, 2006 sets forth the additional information that we believe Plaintiffs should provide.

*Status*: You stated that you would advise us in the coming week whether the Government will supplement its disclosure.

### Abbott's Production

**OCR Files.** You have asked for OCR load files for all documents produced by Abbott. We expressed our position that neither party is obligated to produce OCR load files for non-electronic documents that have been copied or scanned for production. The process of creating such OCR data from non-electronic documents is as much work product as bibliographical coding or other analysis. Also, as noted in previous correspondence, the OCR data previously produced by the Government is not compatible with the document database that we use in this case. In short, we do not believe that sharing of OCR load files is required or advisable in this litigation; each side should create OCR data at is own expense as it sees fit.

*Status:* Further discussion of this issue does not appear to be useful unless you provide additional information that Abbott is required to provide OCR data to you or you convince us that it is advisable to share the cost of such work.

**Bates Numbers.** You have asked about documents bearing multiple "Bates" numbers in Abbott's production. Documents produced by Abbott contain multiple "Bates" numbers to the extent that an earlier production was done with physical numbers. Documents that have been produced specifically for the Texas AG case or MDL 1456 contain the computer-generated Bates numbers from those productions. To the extent that prior productions in cases other than Texas or MDL 1456 contained computer-generated control numbers, the documents produced to you do not contain numbers from the prior productions. The absence of multiple numbers in this regard is not the result of Abbott removing earlier Bates numbers. You stated that the absence of prior production control numbers impedes your ability to compare Abbott's production in this case to the production of documents by Abbott to plaintiffs in other AWP-related actions. Accordingly, you asked whether we would provide a cross-walk between the control numbers from these other document productions.

Mark A. Lavine, Esq.
October 13, 2006
Page 5

    *Status:* We have considered your request and respectfully decline to create the cross-walk you have requested. Such a cross-walk does not currently exist and we are aware of no obligation for Abbott to expend the money and labor needed to create such a cross-walk, nor have you identified such an obligation.

    ***Redactions.*** I believe this is no longer an outstanding issue.

    ***Confidentiality Designations.*** You have asked Abbott to reconsider all of its confidentiality designations. As I stated on the phone and in my earlier letter, all of Abbott's confidentiality designations have been made in good faith, including the specific example cited in your letter. I have invited you to share your specific concerns with Beth O'Connor in our Chicago office at 312-269-1529, who is closer to that process and can address your specific concerns.

    *Status:* We decline your invitation to revisit all of Abbott's confidentiality designations. Beth O'Connor remains available to discuss individual designations.

Sincerely,

R. Christopher Cook

cc:    Gejaa Gobena
       James J. Breen
       Renee Brooker
       Ann St. Peter-Griffith

JONES DAY

Mark A. Lavine, Esq.
October 13, 2006
Page 6


bcc:   James R. Daly
        Tina M. Tabacchi
        David S. Torborg
        Laura A. Dahl
        Tara Fumerton
        Charma Dudley

Case 1:01-cv-12257-PBS   Document 4080-3   Filed 04/26/07   Page 49 of 65

# EXHIBIT 5

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

Direct Number: (202) 879-3734
christophercook@jonesday.com

October 30, 2006

<u>VIA EMAIL</u>

Mark A. Lavine, Esq.
Assistant United States Attorney
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

     Re:    *U.S. ex rel. Ven-A-Care v. Abbott Laboratories and Hospira, Inc.*,
              Case No. 06-CV-21303-ASG

Dear Mark:

     I write to follow-up on several open discovery issues.

     **PSPS Data.** Thank you for your letter of October 13, 2006 enclosing new CDs with the government's PSPS data.

     **Unsealed Pleadings.** As we have asked on numerous occasions before, will the DOJ provide Abbott with all documents that in any way relate to Abbott that were filed under seal in the Southern District of Florida or elsewhere in connection with Ven-A-Care's *qui tam* lawsuit? We first requested these documents in July, and have repeatedly provided case law and reasons why Abbott is entitled to this information. You have not explained why you believe Abbott is not entitled to see all of the government's *ex parte* communications with the Court. During our call of October 4, 2006, you stated you would provide us with DOJ's position within a week. We have not heard a response from you. Please advise us of your position on this matter.

     **File Source Index.** I am anxious to learn whether the DOJ will provide a File Source Index for the documents produced in Plaintiffs' initial disclosures. You stated during our October 4th call that you would provide your response on that issue within two weeks.

     **First DataBank Documents.** We are still awaiting your production of the First DataBank documents identified in your initial disclosures over two months ago. I believe you indicated during our October 4th call that we could expect to receive these documents within two weeks. When can Abbott expect to receive copies of these documents?

     **Wholesaler and Other Third Party Documents.** I understand that there are confidentiality issues relating to the wholesaler and other third-party documents identified in

JONES DAY

Mark A. Lavine, Esq.
October 30, 2006
Page 2

your initial disclosures.  In my letter of October 13, 2006, I requested that you provide us a description, including the source and volume, of these documents.  I respectfully repeat that request here.  We believe we are entitled to those documents, and we remain interested in receiving them as soon as possible.

**Documents "Removed for Relevancy."**  We have requested production of all documents within the Bates ranges of the United States' initial production that were "removed for relevancy."  We cited the documents preceding and following HHC001-0614  through HHC001-0619 as an example.  In addition to HHC001-0613 and HHC001-0620, other examples (but not an exhaustive list) can be found at HHC001-0707, HHC002-0158, HHC002-0493 – 96, HHC003-0581, HHC004-0055 – 58, HHC004-0267-70, HHC009-0022, HHC009-1367-68, HHC010-0786, HHC013-0510, HHC015-0170 – 72, and HHC015-0176 – 77.

You stated in your October 13, 2006 letter that you reviewed "those documents [referring to HHC001-0613 and HHC001-0620, I believe] and have confirmed that they were removed for relevancy."  I presume this "relevancy" decision was made in the context of responding to the Defendant's 2004 subpoena to HHS, and that any documents from the United States' initial production that have been "removed for relevancy" will not be produced in this case, either as part of your initial production or in response to any discovery request from Abbott.  Please advise me if I am wrong in that assumption.

**Medicare Carriers.**   On the issue of whether the DOJ will coordinate the production of materials from Medicare Part B Carriers, you stated in your October 13, 2006 letter that you will coordinate the search for and production of relevant Carrier documents "to the extent that these documents are within the United States' possession, custody and control pursuant to the government's rights under its contracts with Carriers."  Could you please provide us with a sample of such a contract so that we may evaluate "the extent that these documents are within the United States' possession, custody and control pursuant to the government's rights under its contracts with Carriers?"  As to Abbott's outstanding discovery requests, please also identify any that should be redirected to Carriers so that we may issues subpoenas promptly.

**Damages Disclosures.**  Finally, on the subject of Plaintiffs' damage disclosures, you have refused to provide more detail on your alternative damages theory.  You claim that "the United States' damages calculations and theories are data driven and we have very little data from Abbott or other third parties."  As stated in my previous letters, we are asking you to describe in narrative form what the Medicare and Medicaid programs would have paid for the Subject Drugs absent Abbott's alleged fraud.  You do not need additional data to answer that question.  In any event, you have had extensive sales data from Abbott for some time, including transaction-level sales to all U.S. customers for all NDCs identified in the United States' complaint.  You have not described the additional data you believe Plaintiffs need from Abbott to prepare reasonable damage disclosures.

JONES DAY

Mark A. Lavine, Esq.
October 30, 2006
Page 3


Furthermore, I do not understand why you cannot provide information on your alternative damages calculation now when you were able to share "overpayment" calculations (using Abbott's transactional data) for some 20 of the NDCs identified in the DOJ's complaint with us earlier this year in Washington, DC.  Under Rule 26(a), a "party must make its initial disclosures based on the information then reasonably available to it and is not excused from making the disclosures because it has not fully completed its investigation of the case . . . ."  Fed. R. Civ. P. 26(a)(1)(E); *see Dixon v. Bankhead*, No. 4:00CV344, 2000 WL 33175440, *1 (N.D. Fla. Dec. 20, 2000) ("If estimates are made which might be subject to revision with expert opinion, that is entirely permissible, but the requirements of Fed. R. Civ. P. 26(a)(1)(C) cannot be avoided if the opposing party insists on compliance.").


Sincerely,

/s/ R. Christopher Cook


R. Christopher Cook

cc:     Gejaa Gobena
        James J. Breen
        Renee Brooker
        Ann St. Peter-Griffith

Case 1:01-cv-12257-PBS   Document 4080-3   Filed 04/26/07   Page 53 of 65

EXHIBIT 6

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: 202-879-3734
christophercook@jonesday.com

November 3, 2006

<u>VIA EMAIL</u>

Gejaa Gobena
Patrick Henry Building
601 D Street, NW
Room 9028
Washington, DC 20004

James J. Breen
The Breen Law Firm
P. O. Box 297470
Pembroke Pines, Florida 33029-7470

Re:    *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.*

Dear Counsel:

I write to summarize my understanding of where the parties stand on the discovery issues discussed at this Wednesday's meet-and-confer in our offices in Washington, D.C. The meet-and-confer was held on November 1, 2006, six days after Judge Saris officially kicked off discovery on October 26, 2006.

**Discovery Limits.** The parties reached agreement on discovery limits for Interrogatories and Requests for Production: Each side in the above-referenced case is limited to 75 Interrogatories and seven (7) sets of Requests for Production. The parties were not able to reach agreement on the allowed number of Requests for Admission and believe Court intervention will eventually be necessary. As I understand, the parties agreed to hold in abeyance the RFAs Abbott served on July 12, 2006, pending the Court's resolution of this issue. If the Court limits the number of RFAs the parties may issue, Abbott will withdraw these RFAs and re-serve RFAs within the Court's limit.

Consistent with the practice in other cases consolidated in MDL 1456, we agreed that it was unnecessary at this point to set limits on the total number of depositions or deposition hours, or the allowed number of deposition hours per witness.

As you suggested, we will prepare a proposed CMO to submit to the Court on the number of Interrogatories and Requests for Production of Documents.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Gejaa Gobena
James J. Breen
November 3, 2006
Page 2

**Outstanding Discovery and the Scope of Discovery.** Putting aside Abbott's RFAs, Abbott expects that Plaintiffs will abide by Federal Rules 33 and 34 and provide written responses to the Requests for Production and Interrogatories that Abbott served on July 12, 2006 and August 4, 2006, respectively. Abbott previously provided Plaintiffs an extension to August 23, 2006 to answer the Requests for Production. The day before that deadline passed, Plaintiffs filed a motion to stay discovery. The Court granted that motion but officially opened discovery at the October 26, 2006 hearing. Accordingly, by our count, Plaintiffs' written responses to Abbott's Requests for Production of Documents were due on October 27, 2006. Plaintiffs' written responses to Abbott's Interrogatories are due no later than November 6, 2006, inasmuch as eleven days were left in Plaintiffs' time to respond when you filed your motion for a stay.

At the meet-and-confer, Abbott offered to allow Plaintiffs 14 additional days to provide written responses to this outstanding discovery. In making this offer, we stressed that such an extension would be contingent on Plaintiffs agreeing to provide written responses at the end of 14 days and committing to produce documents – particularly those documents that are indisputably responsive – in the very near future. We have no interest in giving Plaintiffs an extension on the time to respond only to receive instead yet another motion designed to delay discovery.

You did not offer a date when Plaintiffs would provide the written responses required under Rules 33 and 34. Instead, you reiterated your previously stated objections to the scope of Abbott's discovery and indicated Plaintiffs may seek a protective order in lieu of providing written responses.

As we stated in our meeting, Abbott is willing to discuss and negotiate about the scope of particular discovery requests. Notwithstanding our willingness to talk, Abbott is entitled to receive timely written responses under Rules 33 and 34. The exchange of such written responses is the only feasible way of moving forward with an effective and meaningful meet-and-confer about particular discovery requests. This is the process established by the Rules, and it should be followed here.

A motion for protective order is premature at this point. Plaintiffs cannot certify that they have met and conferred on Abbott's discovery, as required by Rule 26(c), before providing written responses to that discovery. In any event, Plaintiffs do not dispute that Abbott is entitled to many of the documents and answers sought in its discovery; and the filing of a protective order would have no impact on Plaintiffs' obligation to provide those documents and answers in the time provided by the rules.

**File Source Index.** We have repeatedly asked for an index that identifies the source of the documents produced as part of your initial document disclosures (which are in large part the same documents produced by HHS in 2004 in response to the Lupron MDL subpoena). We have

Gejaa Gobena
James J. Breen
November 3, 2006
Page 3

asked that the index identify specific individuals from whom documents were collected, and we have indicated that we could provide such an index for the majority of Abbott's documents. During an October 4, 2006 call, more than a month after we originally requested a file source index, Mr. Lavine indicated he would provide a response in two weeks. We never received a response.

You indicated on November 1, 2006 that the individual attorney responsible for the original production was on paternity leave, but that you would provide a response by Friday, November 10, 2006 regarding our request for a file source index. You indicated that any "reverse engineering" that may be required to produce such an index for HHS' documents could be completed in a relatively short period of time.

We have asked that the Plaintiffs keep track in the future of the individuals from whom all documents are gathered to facilitate the provision of an acceptable file source index.

**Sealed Documents.** Since at least July we have asked you to provide all documents that in any way relate to the Ven-A-Care *qui tam* against Abbott that were filed under seal in the Southern District of Florida. Mr. Lavine indicated during the October 4, 2006 call that he would provide us with the DOJ's position within a week. We did not receive a response. At the meet-and-confer on November 1, you stated that Abbott was not automatically entitled to any of the documents filed under seal and that you would need another 30 days to decide what, if anything, you would agree should be provided to Abbott.

**First DataBank Documents.** Abbott is still waiting for you to produce those documents from First DataBank that were identified in your initial disclosures nearly three months ago. To avoid the need to segregate documents relating to other manufacturers, you asked whether we could receive clearance from other manufacturers to produce those documents to us. November 1, 2006 was the first time that we were ever advised of any confidentiality issues relating to these documents. Thus, we asked that you provide us a list of the other manufacturers and a description of the documents for which such clearance is needed.

This dispute over First DataBank documents has gone on for too long. We ask that you immediately produce to us all such documents that relate to Abbott, as well as a log of all documents you are withholding based on perceived confidentiality restrictions. If you will not agree to such a production, please advise us promptly.

**Wholesaler and Other Third Party Documents.** We repeated our request for a description, including the source and volume, of these documents. Here also, you are withholding documents on a claim of confidentiality. As with the First DataBank documents, we demand that you produce immediately all documents as to which you have no confidentiality concerns and a log of those withheld.

Gejaa Gobena
James J. Breen
November 3, 2006
Page 4

**Documents "Removed for Relevancy."** We reiterated our request that you produce the relatively small number of documents identified in my letter of October 30, 2006 that were "removed for relevancy" from your initial disclosures. Again, those Bates ranges are HHC001-0613, HHC001-0620, HHC001-0707, HHC002-0158, HHC002-0493 -- 96, HHC003-0581, HHC004-0055 -- 58, HHC004-0267-70, HHC009-0022, HHC009-1367-68, HHC010-0786, HHC013-0510, HHC015-0170 -- 72, and HHC015-0176 -- 77. Unless these documents are privileged or you can articulate some legally sufficient reason not to produce them (*e.g.*, the documents are personal in nature), we ask that you simply produce them. If you will not produce these documents, please provide a log of all documents withheld.

**Documents Previously Withheld Under the Deliberative Process Privilege.** Abbott asked if the United States will continue to assert the deliberative process privilege on those documents withheld by HHS when it responded to the Lupron MDL subpoena. For the reasons discussed at the meeting, Abbott believes it has a very strong argument to overcome any deliberative process privilege that might apply to these documents. As you requested, we will follow up with a letter formally asking you to reconsider your position on these documents.

**Sharing and Bates Numbering Issues.** As Abbott has consistently stated in briefs and correspondence, Abbott believes its confidentiality designations are consistent with Judge Saris' prior CMOs, and that governmental plaintiffs are not automatically entitled to share all documents Abbott has produced in various cases. At the meet-and-confer, you stressed that differing Bates numbers across productions made it difficult for you to use the same database for documents produced in this case and the Texas litigation. It is my understanding that Abbott did take steps to produce documents to the DOJ that maintained the Bates numbers used in the Texas litigation. Jim Breen indicated that this was not the case in all instances. Jim agreed to send a computer file that may allow us to determine whether Abbott is able to provide a cross-walk for all documents produced in Texas and the DOJ case. Once we receive that file, I will undertake to get you the information we have regarding Bates numbers in other cases. I am confident that we can work this issue out to Jim's satisfaction.

**Damage Disclosures.** Regarding your alternative damages theory (the only theory we believe is legally valid), we have previously asked Plaintiffs to explain in narrative form what the Medicare and Medicaid programs would have paid for the Subject Drugs absent Abbott's alleged wrongdoing. We stressed that we are not requesting detailed numbers calculations. You refuse to supplement your initial damage disclosures, claiming the need for additional sales information from Abbott. You did not articulate what additional sales information you claim to need, however, beyond the direct and indirect sales data Abbott already has given the government.

Gejaa Gobena
James J. Breen
November 3, 2006
Page 5


I hope that we can work together to resolve each party's discovery needs, and I look forward to hearing your response to these issues on Monday.



Sincerely,

R. Christopher Cook

cc:    Renee Brooker
       Justin Draycott
       Mark A. Lavine
       Ana Maria Martinez
       Ann St. Peter-Griffith

Case 1:01-cv-12257-PBS    Document 4080-3    Filed 04/26/07    Page 59 of 65

# EXHIBIT 7

ORIGINAL FILED

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA MAR 20 2003

FOR THE COUNTY OF LOS ANGELES LOS ANGELES
SUPERIOR COURT

THE STATE OF CALIFORNIA ex rel.
VEN-A-CARE OF THE FLORIDA KEYS,
INC. a Florida Corporation, by and through
its principal officers and directors, ZACHARY
T. BENTLEY and T. MARK JONES,

Plaintiffs,

ABBOTT LABORATORIES, INC., WYETH,
INC., and WYETH PHARMACEUTICALS,
INC., and DOES 1-200,

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO. BC 287198 and
CASE NO. BC 287198 A

Assigned for all purposes to
Honorable Peter D. Lichtman,
Dept. 322, Central Civil West

[PROPOSED] PROTECTIVE
ORDER AND PARTIAL
UNSEALING ORDER TO
PROVIDE DEFENDANTS
WITH DOCUMENTS IN THE
COURT FILE AND
STIPULATION TO ENTRY
THEREOF

ORIGINALLY FILED UNDER
SEAL ON JULY 28, 1998

Complaint Filed: January 7, 2003
Originally Filed Under Seal
on: July 28, 1998
Trial Date: None Set

WHEREAS, defendant Abbott Laboratories, Inc. ("Abbott") and defendants Wyeth Inc. and Wyeth Pharmaceuticals Inc. (collectively, "Wyeth"), have filed motions to modify the February 4, 2003 order of this Court addressing the partial lifting of the seal as to documents in the Court's file;

WHEREAS, the Court conducted a status conference on March 3, 2003 during which (a) the parties agreed to meet and confer concerning a procedure to provide defendants with redacted and/or unredacted copies of documents in the Court's files, and (b) the Court continued the hearing of the motion to lift the seal to May 1, 2003; and

WHEREAS, the parties now have met and conferred and request entry of the following order:

IT IS HEREBY ORDERED as follows:

1.     The Court file in Case No. BC 287198 and BC 287198 A shall be partially unsealed

[Proposed] Stipulation/Protective Order And Partial Unsealing Order to Provide
Defendants With Documents In The Court File And Stipulation to Entry Thereof

1    as specified herein.

2         2.    As a service to the Court, counsel for plaintiffs shall review the Court file in Case

3    No. BC 287198 and Case No. BC 287198A and identify those documents to be disclosed either in

4    redacted form or without any redactions. The State of California reserves the right to object to the

5    disclosure of any document under seal which it deems to be confidential, privileged, or not subject

6    to disclosure by operation of law. As to any documents under seal which are objected to by the

7    State of California, the State will identify the document by Bate Stamp number and general

8    description and will provide written notice of same upon completion of the review as set forth in

9    Paragraph 3.

10        Subject to the State's reservation to object to disclosure of documents, Plaintiffs shall

11   review and redact those portions of documents that reflect (a) allegations against other defendants

12   that remain under seal and the names and number of other defendants who are or have been the

13   subject of investigation by the Attorney General for the State of California; (b) the identities of

14   other jurisdictions, governmental entities, and persons conducting non-public investigations, the

15   type of investigation being so conducted, and the content(s) of such investigation; (c) the names of

16   other individuals or entities who are the subject of non-public investigations; (d) the strategy and

17   resources of the California Attorney General's office or other government agencies in pursuing

18   their investigations against all defendants; (e) the existence and contents of any related litigation in

19   other jurisdictions that remains under seal; and (f) the existence and contents of any related

20   settlement or settlement documents with any defendant. Any redactions not evident from the

21   context of the document shall be clarified on request. Upon completing review of the Court file,

22   Plaintiffs will provide written notice to the Court and defendants of any new categories or

23   documents deemed necessary to protect the confidentiality of matters in the court file.

24        3.    Subject to the State's reservation and objections to disclosure as set forth above,

25   Plaintiffs shall provide a complete set of the court file with redactions to counsel for Abbott and

26   Wyeth. The court file shall be provided to counsel for Abbott and Wyeth in installments as

27   redactions are completed and the full file shall be delivered by no later than the morning of March

28   [Proposed] Stipulation/Protective Order And Partial Unsealing Order to Provide
     Defendants With Documents In The Court File And Stipulation to Entry Thereof

1  20, 2003.  Counsel for Plaintiffs shall provide defendants Abbott and Wyeth with a log describing

2  any withheld documents or identifying pages with redactions.  The log shall also state the basis for

3  each redaction or withholding of documents (i.e., (a) through (f) in Paragraph 2 or other basis, if

4  applicable).  The log shall be provided in installments and the final installment shall be delivered by

5  March 31, 2003.

6       4.     The Court file or portions thereof, provided to defendants pursuant to the Court's

7  order shall be deemed confidential and shall not be disclosed by defendants except as follows: (a)

8  to counsel for defendants Abbott and Wyeth in this case and such employees of their law firms as

9  are acting under the supervision of counsel for defendants; and (b) up to three "in-house" counsel

10  for each of Abbott and Wyeth who are responsible for assisting in the preparation of the defense of

11  this action, provided that counsel for Abbott and Wyeth obtained written assurance that such "in-

12  house" counsel will not disseminate copies of the documents to any other person in their

13  organization.

14       5.     To the extent any document subject to the disclosure restrictions in Paragraph 4 is

15  attached to any papers filed with the Court, it shall be submitted in a sealed envelope indicating

16  that it is being filed pursuant to a confidentiality order.  This Court's prior order sealing the record

17  satisfies the requirements of Rules 243.1 to 243.2 to the extent applicable to a file sealed pursuant

18  to section 126582(c) of the Government Code and no further showing shall be required in

19  connection with the filing under seal of any documents subject to this order.

20       6.     Defendants Abbott and Wyeth reserve their rights to challenge the seal and the

21  manner in which any document is treated pursuant to this order.  Defendants Abbott and Wyeth

22  may file motions with the Court challenging the appropriateness of redactions and the need for

23  disclosure restrictions as to any documents that are subject to this order.

24  SO ORDERED:

25                       PETER D. LICHTMAN

DATE: MAR 2 1 2003

26                       _____

                        PETER D. LICHTMAN

27                          JUDGE OF THE SUPERIOR COURT

28  [Proposed] Stipulation/Protective Order And Partial Unsealing Order to Provide
Defendants With Documents In The Court File And Stipulation to Entry Thereof

TOTAL P.05

1        By and through their counsel of record the parties HEREBY STIPULATE TO

2  ENTRY OF THE ABOVE ORDER.

3

4  Dated: March __7__,2003          BILL LOCKYER, Attorney General

5                              of the State of California
                              THOMAS A. TEMMERMAN, Senior

6                              Assistant Attorney General
                              ELISEO SISNEROS

7                              Supervision Deputy Attorney General
                              WILLIAM S. SCHNEIDER

8                              Deputy Attorney General

9                              By: _____

10                           WILLIAM S. SCHNEIDER
                             Deputy Attorney General

11                           On behalf of the State of California

12  Dated:  March ___,2003        ENGSTROM, LIPSCOMB & LACK
                              GIRARDI & KEESE

13                              COTCHETT, PITRE, SIMON &
                              McCARTHY

14                              THE BREEN LAW FIRM

15

16                              By: _____

17                             FRANK D. PITRE
                              On behalf of Qui Tam Plaintiff

18                             Ven-A-Care

19  Dated:  March 19 ,2003        JONES DAY

20

21                              By: _____

22                             DANIEL D. McMILLAN
                              Attorneys for Defendant Abbott

23

24  Dated:  March 19, 2003        ARNOLD AND PORTER
                              OBER, KALER, GRIMES & SHIVER

25

26                           By: S. Craig Holden for DDM
                              LAWRENCE A. COX  S. Craig Holden
                              Attorneys for Defendant Wyeth

27

28  [Proposed] Stipulation/Protective Order And Partial Unsealing Order to Provide
     Defendants With Documents In The Court File And Stipulation to Entry Thereof

1    By and through their counsel of record the parties HEREBY STIPULATE TO

2    ENTRY OF THE ABOVE ORDER.

3

4    Dated: March 7, 2003

            BILL LOCKYER, Attorney General
5            of the State of California
            THOMAS A. TEMMERMAN, Senior
6            Assistant Attorney General
            ELISEO SISNEROS
7            Supervision Deputy Attorney General
            WILLIAM S. SCHNEIDER
8            Deputy Attorney General

9            By: _____

10                WILLIAM S. SCHNEIDER
                Deputy Attorney General
11                On behalf of the State of California

12    Dated: March 19, 2003

            ENGSTROM, LIPSCOMB & LACK
13            GIRARDI & KEESE
            COTCHETT, PITRE, SIMON &
14            McCARTHY
            THE BREEN LAW FIRM
15

16            By: _____

17                FRANK D. PITRE
                On behalf of Qui Tam Plaintiff
18                Ven-A-Care

19    Dated: March ___, 2003        JONES DAY

20

21            By: _____

22                DANIEL D. McMILLAN
                Attorneys for Defendant Abbott
23

24    Dated: March ___, 2003        ARNOLD AND PORTER

25

26            By: _____

27                LAWRENCE A. COX
                Attorneys for Defendant Wyeth

28    [Proposed] Stipulation/Protective Order And Partial Unsealing Order to Provide
      Defendants With Documents In The Court File And Stipulation to Entry Thereof

1

## PROOF OF SERVICE BY MAIL

2
### State of California ex rel Ven-A-Care v. Abbott Laboratories, Inc., Wyeth, Inc., Wyeth Pharmaceuticals

3
### (LASC Case No. BC 287198A)

4

STATE OF CALIFORNIA        )      ss.

5
COUNTY OF LOS ANGELES     )

6
     I, the undersigned, declare that I am a resident of the county aforesaid; I am over the age

7
of eighteen years and not a party to the within entitled action; my business address is 555 West
Fifth Street, Suite 4600, Los Angeles, California 90013. On March 20, 2003, I served the

8
foregoing document described as, **[PROPOSED] PROTECTIVE ORDER AND PARTIAL
UNSEALING ORDER TO PROVIDE DEFENDANTS IN THE COURT FILE AND**

9
**STIPULATION TO ENTRY THEREOF,** by placing a true copy thereof enclosed in a sealed
envelope addressed as follows:

10

11
     **William S. Schneider, Esq.**        **Lawrence A. Cox**
     Deputy Attorney General           Arnold & Porter

12
     110 West "A" Street, Suite 1100    777 S. Figueroa Street, 44th Floor
     P.O. Box 85266                    Los Angeles, CA 90017-2513

13
     San Diego, CA 92186-5266

14
     **S. Craig Holden, Esq.**           **Frank M. Pitre, Esq.**
     Ober Kaler                      Cotchett, Pitre & Simon

15
     120 East Baltimore Street       840 Malcolm Road, Suite 200
     Baltimore, MD 21202           Burlingame, CA 94010-1413

16

17
     I caused such envelope with postage thereon fully prepaid to be placed in the United
States mail at Los Angeles, California.

18

19
     I am "readily familiar" with the firm's practice of collection and processing
correspondence for mailing. Under that practice it would be deposited with the U.S. postal

20
service on that same day with postage thereon fully prepaid at Los Angeles, California in the
ordinary course of business. I am aware that on motion of the party served, service is presumed

21
invalid if postal cancellation date or postage meter date is more than one day after date of deposit
for mailing affidavit.

22

23
     I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

24
     Executed on March 20, 2003, at Los Angeles, California.

25

26

27
                                    Tricia Grundl

28