# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 95-1354-CIV-GOLD/TURNOFF

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.*<br>    VEN-A-CARE OF THE<br>    FLORIDA KEYS, INC., *et al.*<br><br>                                Plaintiffs,<br>v.<br><br>ABBOTT LABORATORIES, *et al.*<br><br>                                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES, INC.'S MOTION FOR PARTIAL UNSEALING OF THE RECORD TO ALLOW ABBOTT ACCESS TO DOCUMENTS FILED UNDER SEAL**

The United States of America ("Plaintiff"), hereby files this brief in opposition to defendant Abbott Laboratories, Inc.'s ("Abbott's") Motion for Partial Unsealing of the Record to Allow Abbott Access to Documents Filed under Seal (Docket Entry 201), and states:

### I. PROCEDURAL BACKGROUND

On May 16, 2006, all proceedings against Abbott Laboratories, Inc were severed from this action and moved into a new action, *United States v. Abbott Laboratories*, 06-21303-CIV-GOLD (the "Abbott '06 case"). On July 11, 2006, the Judicial Panel on Multidistrict Litigation ("JPML") issued a Conditional Transfer Order which transferred the severed Abbott proceedings to MDL 1456 in the District of Massachusetts. On August 1, 2006, upon its transfer to MDL 1456 in the District of Massachusetts, the Court closed the Abbott '06 case.

## II. INTRODUCTION

This Court has already lifted the seal in this matter to provide Abbott with copies of all of the pleadings (in redacted form) which contain allegations against Abbott, all of the pleadings related to the intervention of the United States in the claims against Abbott and all of the pleadings filed subsequent to the United States' intervention. See Order dated May 16, 2006 attached hereto as Exhibit 1 (Docket Entry ("D.E.") 2 in *United States v. Abbott Laboratories*, 06-21303-CIV-GOLD (the "Abbott '06 case")). All of the pleadings relating to Abbott were moved from the sealed case (Case No. 95-1354-CIV-GOLD/TURNOFF) to the case file for the Abbott '06 case or were served upon Abbott with the original summons and complaint.

Although it has been in possession of all of the foregoing documents since the day it was served with the Complaint in the Abbott '06 case, Abbott has made three unsuccessful attempts to gain access to other sealed documents.[1] Abbott now files this fourth attempt. However, other than re-framing its motion as one seeking a "partial" lifting, Abbott has offered no new reasons to justify the disclosure of these documents. Applicable law and policy persuasively demonstrate that Abbott is not entitled to any additional documents. In sum, Abbott does not need and is not entitled to gain access to the documents remaining under seal in connection with the United

---

[1] Abbott petitioned this Court to compel the United States to produce a sealed filing made by the United States at this Court's direction to the MDL Panel in Washington, D.C. See Docket Entry ("D.E.") 41 in *U.S. v. Abbott*, 06-21303-CIV-GOLD. Abbott's motion was denied on the basis that it was "without merit." D.E. 43 in *U.S. v. Abbott*, 06-21303-CIV-GOLD.

Abbott also twice petitioned the Court in the District of Massachusetts. On December 1, 2006, Abbott filed its Motion to Compel Production of *Ex Parte* Filings (See D.E. 3436 in MDL 1456 attached to Abbott's current motion as Exhibit B) and on January 9, 2007, Abbott filed its Motion for Compliance with JPML Rule 1.6 (See D.E. 3532 to MDL 1456 attached to Abbott's current motion as Exhibit G). Both motions were denied, although the Motion to Compel (D.E. 2436) was denied without prejudice. *See* Electronic Order attached to Abbott's current motion as Exhibit E.

States' underlying investigation of this case.

### III. The Pleadings in the Pending Sealed Case in Florida Should Remain Sealed

There are significant reasons why pre-intervention filings by the United States remain sealed after intervention, even in the more typical situation where only one defendant has been sued. Here, where a sealed *qui tam* is still pending, those considerations carry even more weight, and Abbott has failed to present a single compelling reason why the seal on pre-intervention filings by the United States in a still pending matter should be lifted for Abbott's benefit. Abbott also effectively admits that its efforts to have this Court to lift the seal on pleadings in the original *qui tam* lawsuit are a "fishing expedition" for evidence of alleged government misconduct which have no bearing on this case. This is not a basis upon which to have the seal lifted in this case.

#### A. Because the FCA Provides for the Seal, There is No Presumption of Access

The general common law right to inspect and copy judicial records is not absolute and is limited by a court's supervisory authority over its own files. *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978). Contrary to Abbott's assertions, the case law does not support a presumption in favor of disclosure when the disputed documents have been properly submitted to the court under seal. As the Seventh Circuit has held:

> While this court has recognized that the common law right of access creates a "strong presumption" in favor of public access to materials submitted as evidence in open court, this presumption should not apply to materials properly submitted to the court under seal. Where judicial records are confidential, the party seeking disclosure may not rely on presumptions, but must instead make a specific showing of need for access to the document.

*United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989); *see also In re Boston Herald, Inc.*, 321 F.3d 174, 184 (1st Cir. 2003) ("the First Amendment does not grant the press or the public an

3

automatic constitutional right of access to every document connected to judicial activity."); *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83, 96 (2d Cir. 2004) (presumption of openness for court docket sheets rebuttable by showing that sealing is necessary and narrowly tailored). Thus, a court's discretionary decision to maintain documents properly filed under seal may outweigh the presumption of access, particularly when the materials under seal have no evidentiary value and when the court's decision is rooted in a recognition that the documents are under seal by operation of law, here the False Claims Act.

At the investigatory stage of a government fraud case, neither the public nor the defendant has a right of access to details of the government's efforts. *See In re Search of Office Suites for World & Islam Studies*, 925 F. Supp. 738, 741 (M.D. Fla. 1996) (no public right of access to warrant procedures at the pre-investigatory stage); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir. 1989) (same); *In Re Subpoena to Testify Before Grand Jury*, 864 F.2d 1559, 1562 (11th Cir. 1989) (historically grand jury proceedings have been closed to the press and public); *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997) (same). That analysis does not change merely because documents have been filed with the Court relating to that investigation. *In re Search of Office Suites, supra; Times Mirror Co., supra; Smith, supra*.

Under the FCA, a relator's complaint must be filed under seal, and the United States is explicitly permitted to file for extensions of the investigatory period and to submit such filings under seal and *in camera*. 31 U.S.C. § 3730(b)(3). The FCA specifically requires the unsealing of the complaint after the Government's intervention decision, but does not also require that the Government's *in camera* submissions should also be unsealed. See 31 U.S.C. § 3730(b)(2); *see also United States ex rel. Stephens v. Prabhu*, No. CV-S-92-653-LDG (LRL), 1994 WL 761236, at *1 (D. Nev. Dec. 9, 1998) ("Neither that section nor any other provision of the FCA ... directs

4

the court to unseal the motions for enlargement of time filed *in camera*."); *United States ex rel. Coughlin v. International Bus. Machs. Corp.*, 992 F. Supp. 137, 140 (N.D.N.Y. 1998) ("section 3730 only provides for the unsealing of the complaint and no other section of the False Claims Act references the unsealing of any other documents filed with the court."). Accordingly, the court is well within its discretion to maintain the seal on the filings submitted during the investigatory phase of this matter after intervention. *See United States v. Andreas*, 150 F.3d 766, 769-70 (7th Cir. 1998) (employing balancing test in determination as to whether documents filed under seal in a criminal prosecution should be disclosed to the media). Here, of course, the original case involving other defendants remains under seal. In addition, the United States has provided Abbott with copies of every version of the complaint in which it was named as a defendant.

  The *qui tam* seal is in place to protect the Government's investigation and is designed "to allow the Government an adequate opportunity fully to evaluate the private enforcement suit and to determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action." S. Rep. No. 345, 99th Cong., 2d Sess. 24 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5289, *cited in United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 244 (9th Cir. 1995) (the seal "allows the Government the opportunity to study and evaluate the relator's information for possible intervention in the *qui tam* action or in relation to an overlapping criminal investigation"). The seal is designed to make sure that the Government's investigation is not "harmed." *Lujan,* 67 F.3d at 245.

  Indeed, the FCA confers on the Attorney General absolute and unreviewable discretion and obligation to determine how to diligently investigate various allegations of fraud brought to

5

his attention. 31 U.S.C. § 3730(a). In fact, the investigatory subsection of the False Claims Act, 31 U.S.C. § 3730(a) does not confer any rights on a *qui tam* relator, much less a defendant, to enforce or challenge the actions taken pursuant to § 3730(a). Abbott's argument, therefore, that it is entitled to these pleadings to determine when the United States met the "good cause" standard is utterly meritless because Abbott has no standing to challenge that determination made earlier by this Court. Given that the Government's determination as to how to diligently investigate a relator's allegations is committed to agency discretion by law, *see* 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 834 (1985) (absent an intent to circumscribe agency enforcement discretion and defined limits of that discretion, courts should not review discretionary agency law enforcement action), there simply is no reason why Congress would have intended for defendants to have access to such sealed materials.

Notably, Congress made no explicit provision for unsealing the government's pleadings filed during the investigatory phase. Based on the stated purpose of the seal and the authority vested in the Attorney General to conduct investigations under the Act, however, Congress cannot have intended to compromise the government's investigative process by requiring it to reveal to the public the progress of its investigations, as set forth in applications for extensions of the seal period. The fact that the investigation has ended and litigation has begun makes the filings no more relevant or productive. Disclosure of the sealed applications for extensions would reveal *nothing but* information about the government's investigation, and can be of no value to Abbott in defending against the United States' claims pending in MDL 1456. Even after declination, such revelations could impair the government's anti-fraud efforts generally, a result that is manifestly contrary to the FCA's overarching purpose. Here, where the case is ongoing, the potential harm is obvious and real.

6

Abbott's suggestion that a partial lifting to allow disclosure of a sealed *qui tam* to State Attorneys General during the course of an underlying investigation supports disclosure to Abbott is incorrect. A disclosure to State Attorneys General of the existence of a sealed *qui tam* matter during an investigation is designed to advance the investigation and is quite different than a lifting of the seal to disclose all pleadings to a defendant or third party.

Abbott's attempt to raise the spectre of this case being a "secret" proceeding should be rejected. Abbott is in possession of every document which contains allegations against it. The existence of the lawsuit against Abbott is publicly known. The continuance of the seal on specific, underlying documents does not make this a secret case. Under Abbott's reasoning, no documents could ever be submitted for an *in camera* review by the court without the end result being public disclosure of every such item.

Thus, the FCA contemplates that applications for extension of time will remain under seal. Lifting the seal, even partially as Abbott suggests here, on the entire court file in a pending case, including documents that the FCA expressly permits the Department of Justice to file *in camera,* is unnecessary for Abbott to defend its case and is contrary to congressional intent.

B.     **The FCA Seal Serves Important Purposes.**

Under the False Claims Act, Congress charged the Attorney General with responsibility to "diligently [] investigate" suspected violations. 31 U.S.C. § 3730(a). In all but the simplest of *qui tam* cases, this duty requires the Department of Justice to seek one or more extensions of the investigatory period. It is the Department's practice, as contemplated by the statute, to file such requests under seal and to ask the court to retain the seal after the Government's election as to all documents pre-dating the election, except for the complaint(s) and the Government's notice. This practice is in accord with Congress' explicit recognition, in crafting the FCA's seal

7

provisions, that the Government's investigation is confidential and that disclosure of the Government's methods could harm not only pending, but future investigations. The Department of Justice's interpretation and practices concerning a statute within its enforcement jurisdiction are entitled to some deference. *See, e.g.*, *Massachusetts v. Federal Deposit Ins. Corp.*, 102 F.3d 615, 621 (1st Cir. 1996) ("An established administrative practice interpreting a statute may be entitled to deference even if not yet reduced to specific regulation.") (citing *FDIC v. Philadelphia Gear Corp.* 476 U.S. 426, 437 (1986)); *Pennington v. Didrickson*, 22 F.3d 1376, 1383 (7th Cir.), *cert. denied*, 513 U.S. 1032 (1994) ("We are mindful of our obligation to defer to the interpretation of the agency whenever that interpretation can be said to embody a deliberate and considered interpretation of the legislative intent.").

Disclosure of the documents sought by Abbott here is inappropriate because routine disclosure of the government's applications for extension of the seal period may interfere with the government's efforts to investigate and prosecute fraud against the United States. In addition, release of the materials contained in the sealed documents may intrude on the investigative and deliberative process privileges, and the protection properly afforded to the government's work product.

At the close of the investigatory period, the government either elects to intervene to conduct the action or declines to take over the action. 31 U.S.C. § 3730(b)(4)(A). At that point the seal is lifted and the complaint is served. The government agrees that, after its intervention decision, the public has a right of access to all proceedings in the case thereafter. Until the point of intervention or declination, however, the status of the case is no different from that of a pre-filing government fraud investigation.

The seal exists "to allow the Government an adequate opportunity fully to evaluate the

8

private enforcement suit and to determine . . . if . . . it is in the Government's interest to intervene and take over the civil action." S. Rep. at 24, *reprinted in* 1986 U.S.C.C.A.N. at 5289; *see United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245-47 (9th Cir. 1995). The seal not only permits the government to investigate possible violations of the FCA, but also guards against premature disclosure of sensitive criminal investigations that often are carried on in tandem with the civil inquiries. *See* S. Rep. at 24, *reprinted in* 1986 U.S.C.C.A.N. at 5289; *Erickson v. American Institute of Biological Sciences*, 716 F. Supp. 908, 912 (E.D. Va. 1989).

The FCA specifically requires that the government demonstrate good cause for extensions of the seal period. 31 U.S.C. § 3730(b)(3). To demonstrate good cause, the government must reveal, at least to some degree, information about its investigations. To hold that those details automatically become public at the end of the seal period creates a Catch-22, impairing the government's right to keep from the public eye documents and information that ordinarily would not be subject to review in any other civil enforcement action brought by the United States.

In fact, public access not only would play no positive role, it is likely to hinder and damage the investigatory process. *United States v. Smith*, 123 F.3d at 148; *Times Mirror Co. v. United States*, 873 F.2d at 1214. As the Court explained in *Times Mirror*, if investigatory processes were opened to the public "persons identified as being under suspicion . . . might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Times Mirror*, 873 F.2d at 1215. *See also Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979) ("if preindictment proceedings were made public many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony").

These concerns also are implicated where, as here, government agencies deal with

9

hundreds of similar cases in which they must decide whether and how to conduct enforcement litigation. *See Federal Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 30 (Brennan, J. concurring). Information filed under seal may reveal investigatory techniques that apply in hundreds of similar cases. Revealing the government's decision-making processes may aid defendants subject to fraud investigations, making the government's job of ferreting out and prosecuting fraud even more difficult. Defendants may obtain the benefit of the government's research and reasoning or even worse, "gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled." *Id.* Thus, disclosing the government's pre-election filings is detrimental to the Government's ability to conduct FCA investigations generally. Here, where the original case is ongoing, disclosure is even more potentially prejudicial to the United States.

When seeking an extension of time in a *qui tam* case under the FCA, defendant would place the Government on the horns of a dilemma: either include substantive information to justify an extension the seal period, and at the same time risk subsequent disclosure of investigatory details deemed by a court to be "routine" or submit insufficient requests for extensions of time and risk premature unsealing of cases that, if adequate time were allowed for investigation, could result in substantial recoveries for the United States. This Hobson's choice conflicts with the clear intent of the FCA and its *qui tam* provisions: to enhance the government's ability to recover funds lost due to fraud against the United States. Accordingly, the general rule should be that documents filed in the pre-election period should remain under seal, unless good cause is shown for their release. Here, of course, the original case remains under investigation.

Finally, the Department of Justice ("DOJ") typically seeks to protect sensitive law enforcement information contained in filings made under the seal provision, even after the

10

government's election decision. The need for protection of work product materials, for example, does not disappear once preparation for a particular case is over, or even if litigation never in fact commences. Because the government remains the real party in interest throughout all *qui tam* actions, it is proper for the United States to protect information contained in extensions that may impart information ordinarily subject to governmental privileges (law enforcement and deliberative process) or protected under the work product doctrine. Here, where the case is ongoing, the government's interests are even more significant.

The original case remains under seal and Abbott seeks access to the entire court file, albeit according to Abbott, "subject to appropriate redactions and confidentiality protections." The United States submits that simply redacting the names of other defendants from these sealed pleadings does not adequately protect the interests of the United States as discussed above. More complete redactions sufficient to protect the interests of the United States would render the documents unintelligible and unhelpful to Abbott. Marking materials as confidential in order to limit dissemination of the materials to a 2,200-attorney law firm which represents more than half of the Fortune 500 companies also does not adequately protect the interests of the United States. Even if knowledge of the specific factual matters in the documents were limited to the dozen or more attorneys defending Abbott in MDL 1456, the general knowledge of governmental investigative techniques could not be contained.

    **C.**    **Abbott Has Not Presented Any Compelling Reason to Unseal the Pleadings in the Original Pending Case**

As previously noted, where judicial records have properly been submitted to the court under seal, there is no presumption in favor of public access; rather, the party seeking disclosure must make a specific showing of need for access to the records. *Corbitt*, 879 F.2d at 228.

11

Abbott has failed to make the necessary showing here. Abbott's reasons for obtaining these documents boil down to the following. First, Abbott wants to improperly second-guess the judgment of this Court in granting seal extensions. Given that the seal is in place for the benefit of the United States and not the defendant, Abbott has absolutely no basis for such a challenge. The United States filed applications for extension of time prior to electing to intervene in the action against Abbott. Those applications have been considered by the Court and ruled on, as provided for in 31 U.S.C. § 3730(b)(3), and remain sealed in the original case. Thus, the previous applications are moot. There is simply nothing in those applications for Abbott to address. Moreover, any assertions made by the Government in such applications concerned the status of the United States' investigation. Defendant's argument that it should have an opportunity to review those materials has no basis in law or *qui tam* procedure.

Second, consistent with Abbott's attempt to divert attention from its own wrongdoing, Abbott argues that the government's "knowledge regarding the alleged misconduct and why it took so long to decide whether to intervene" is somehow relevant to this case. The latter is clearly covered by the government's deliberative process privilege, while the former is ludicrous insofar that the government's learning of fraud allegations via a *qui tam* complaint cannot possible constitute a defense for the defendant.

Third, Abbott contends that the court file may contain evidence to support its other defenses of estoppel and laches. It takes very little research to know that both of these defenses are not available with respect to the government under these circumstances[2].

---

[2] Courts have been extremely hesitant to apply the doctrine of equitable estoppel against the government, and have only considered applying the doctrine when there was evidence of some sort of affirmative misconduct by government agents that was reasonably relied upon by a party. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 421 (1990) (noting that some dicta in Supreme Court decisions "mention the possibility ... that some type of

Fourth, Abbott contends that the severance of the claims against it from another FCA qui tam suit has some sort of bearing on statute of limitations or relation back issues. Memorandum in Support of Motion at 3-4. It does not. Claims in amended complaints relate back to the original complaint if "(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim . . . arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . ." Fed R. Civ. P. 15(c). Claims do not stop arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the relator's original complaint when claims are technically severed from a larger action. Thus, the issue of severance is irrelevant to the issue of relation back. Similarly, Abbott has failed to explain how the sealed filings bear on whether the FCA permits relation back or whether the United States' Complaint arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth" in the relator's original complaint. Abbott already possesses

---

'affirmative misconduct' might give rise to estoppel against the government.") (emphasis added); *Frillz, Inc. v. Lader*, 104 F.3d 515, 518 (1st Cir. 1997) ("A party seeking to invoke equitable estoppel against the federal government at a minimum 'must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign.'"), *quoting, United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985).

It is well established that "[m]en must turn square corners when they deal with the government." *Heckler v. Community Health Services*, 467 U.S. 51, 63 (1984) (citation omitted) (rejecting estoppel argument in Medicare overpayment case). Openness and honesty are required if the Medicare system is "not to be turned into a cat and mouse game in which clever providers could, with impunity, practice fraud on the government." *United States v. Calhoon*, 97 F.3d 518, 529 (11th Cir. 1996) (affirming conviction for submitting false cost reports to Medicare). "Available time and resources do not permit audit of more than a fraction of the [claims] filed. [Defendant's] filing of reports ... while concealing or disguising their true nature was a deliberate gamble on the odds that they would not be questioned." Id. Because "'those who deal with the Government are expected to know the law,'" they "'may not rely on the conduct of Government agents contrary to law'" in order to escape liability under the FCA. *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1422 (9th Cir. 1991) (citing Heckler, 467 U.S. at 63). Accordingly, such defenses are inapplicable here and the sealed documents will not support Abbott's claims.

13

redacted copies all of the complaints filed in this matter; it has all the information necessary to raise any statute of limitations/relation back arguments it might choose to make.

Finally, Abbott wishes to embark on a fishing expedition for evidence of government misconduct. Abbott cannot cite a single case that permitted unsealing for that purpose. Instead, Abbott relies on a Tenth Circuit opinion where a *relator's* claims in a declined case were dismissed based on the public disclosure/original source bar in the FCA. Nowhere in the Tenth Circuit's opinion in *United States ex rel. King v. Hillcrest Healthcare Ctr.*, 264 F.3d 1271 (10th Cir. 2001) is the issue of unsealing anything even presented.

Contrary to its representations, denying Abbott access to the sealed documents creates no prejudice to defendant. Rather, Abbott has the same opportunity afforded any defendant in any other civil action to discover the factual underpinnings of the government's allegations through civil discovery under the Federal Rules of Civil Procedure. Abbott has failed to offer any cognizable need to review the Government's descriptions of its preliminary investigative efforts, as set forth in the applications for extension of time. In a case denying the defendants' motion to unseal, the district court noted:

> Contrary to the Defendants' speculation, Documents two through twelve do not contain "material . . . which would permit them to evaluate the basis for and credibility" of the Relators' allegations. Rather, as the Government correctly summarizes, the documents filed under seal "concern the diligence of the government's investigation, its investigative strategy, and its need for additional time to investigate."

*Stephens*, 1994 WL 761236, at *1. The documents under seal in this case are completely irrelevant to and cannot prove or disprove the allegations in the United States' complaint. The sealed extension requests have no evidentiary value. Asserting a wholly speculative need for access to filings under seal does not overcome the interests favoring maintaining the seal.

14

Accordingly, Abbott's motion should be denied.

## IV.  ORAL ARGUMENT

The United States notes that portions of oral argument in this matter may require *ex parte* discussions between the United States and the Court.

Dated: March 9, 2007　　　　　　　　　　　　Respectfully submitted,
　　　　　Miami, Florida

　　　　　　　　　　　　　　　　　　　　　　　PETER D. KEISLER
　　　　　　　　　　　　　　　　　　　　　　　ASSISTANT ATTORNEY GENERAL

　　　　　　　　　　　　　　　　　　　　　　　R. ALEXANDER ACOSTA
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES ATTORNEY


　　　　　　　　　　　　　　　　　　　　By:　　　s/ Mark Lavine
　　　　　　　　　　　　　　　　　　　　　　　MARK A. LAVINE
　　　　　　　　　　　　　　　　　　　　　　　Fla. Bar No. 648876
　　　　　　　　　　　　　　　　　　　　　　　mark.lavine@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　ANA MARIA MARTINEZ
　　　　　　　　　　　　　　　　　　　　　　　Fla. Bar No. 735167
　　　　　　　　　　　　　　　　　　　　　　　ana.maria.martinez@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　ANN ST. PETER-GRIFFITH
　　　　　　　　　　　　　　　　　　　　　　　Fla. Bar No. 0033154
　　　　　　　　　　　　　　　　　　　　　　　ann.st.peter-griffith@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorneys
　　　　　　　　　　　　　　　　　　　　　　　99 N.E. 4th Street, 3rd Floor
　　　　　　　　　　　　　　　　　　　　　　　Miami, FL  33132
　　　　　　　　　　　　　　　　　　　　　　　Phone:  (305) 961-9003
　　　　　　　　　　　　　　　　　　　　　　　Fax: (305) 536-4101
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for United States of America

Dated: March 9, 2007　　　　　　　　　　　　By:
　　　　　Washington, D.C.　　　　　　　　　　　MICHAEL F. HERTZ
　　　　　　　　　　　　　　　　　　　　　　　michael.hertz@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　JOYCE R. BRANDA
　　　　　　　　　　　　　　　　　　　　　　　joyce.branda@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　RENÉE BROOKER
　　　　　　　　　　　　　　　　　　　　　　　renee.brooker@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　JUSTIN DRAYCOTT
　　　　　　　　　　　　　　　　　　　　　　　justin.draycott@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　GEJAA T. GOBENA
　　　　　　　　　　　　　　　　　　　　　　　gejaa.gobena@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　Civil Division
　　　　　　　　　　　　　　　　　　　　　　　Commercial Litigation Branch
　　　　　　　　　　　　　　　　　　　　　　　P. O. Box 261
　　　　　　　　　　　　　　　　　　　　　　　Ben Franklin Station
　　　　　　　　　　　　　　　　　　　　　　　Washington, D.C.  20044
　　　　　　　　　　　　　　　　　　　　　　　Phone:  (202) 307-1088
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for the United States of America

## CERTIFICATE OF SERVICE

    IT IS HEREBY certified that a true and correct copy of the foregoing Opposition to Abbott Laboratories, Inc.'s Motion for Partial Unsealing of the Record to Allow Abbott Access to Documents Filed under Seal was served via __U.S. Mail_____ to those individuals identified on the attached Service List this __9th _ day of March, 2007:

        ___s/ Mark Lavine_____
        Mark A. Lavine
        Assistant United States Attorney

Or

        _____
        Gejaa T. Gobena
        Trial Attorney
        United States Department of Justice

**SERVICE LIST**

United States of America, ex rel Ven-A-Care of the Florida Keys, Inc.,
v.
Abbott Laboratories, et al.

Case No. 02-23609-CIV-GOLD/TURNOFF
(Case No. 95-1354-CIV-GOLD/TURNOFF)

| | |
|---|---|
| Marty Steinberg<br>Hunton & Williams<br>1111 Brickell Ave., Suite 2500<br>Miami, Fl 33131<br>Tel.  (305)810-2505<br>Fax  (305)810-2460<br><br>Daniel Reidy, Esq.<br>James Daly, Esq.<br>Jones, Day, Reavis & Pogue<br>77 West Wacker<br>Chicago, Illinois 60601-1692<br>Tel: (312) 782-3939<br>Fax: (312) 782-8585<br>Email: jrdaly@jonesday.com<br>*Counsel for Defendant*s | Mark A. Lavine<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>99 N.E. 4th Street<br>Miami, FL   33132<br>Tel:  (305) 961-9003<br>Fax: (305) 536-4101<br>E-mail: mark.lavine@usdoj.gov<br>*Counsel for Plaintiff*<br><br>Gejaa T. Gobena<br>Civil Division<br>Ben Franklin Station<br>Commercial Litigation Branch<br>Fraud Section<br>601 D Street NW<br>Suite 9028<br>Washington, DC  20004<br>Tel:  (202) 307-1088<br>Fax:  (202) 307-3852<br>Email: gejaa.gobena@usdoj.gov<br>*Counsel for Plaintiff*<br><br>James J. Breen<br>The Breen Law Firm, P.A.<br>3350 S.W. 148th Avenue<br>Suite 110<br>Miramar, FL 33027<br>Tel:  (954) 874-1635<br>Fax: (954) 874-1705<br>Email: jbreen@breenlaw.com<br>*Counsel for Relator* |