# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES OF AMERICA
ex rel.

    VEN-A-CARE OF THE FLORIDA
KEYS, INC., a Florida corporation, by
and through its principal officers and
directors, ZACHARY T. BENTLEY and
T. MARK JONES,

                Plaintiff,

v.

ABBOTT LABORATORIES, INC., *et al.*

              Defendants.

Case No.: 95-1354-CIV-GOLD

Hon. Alan S. Gold

**ABBOTT LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL UNSEALING OF THE RECORD TO ALLOW
ABBOTT ACCESS TO DOCUMENTS FILED UNDER SEAL**

James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Marty Steinberg
Hunton & Williams
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2505
Facsimile: (305) 810-2460

*Counsel for Defendant Abbott Laboratories, Inc.*

The Government's opposition to Abbott's motion fails to make any meaningful showing as to why, now that it has commenced litigation against Abbott, the Government should be permitted to continue to shield from Abbott whatever it was telling this Court (and its predecessors) over the last 12 years. The Government merely recycles its standard "practice" of opposing unsealing in all instances. That is not much of an argument, much less a justification.

Abbott acknowledges that unsealing this docket presents a unique situation arising from the Government's piecemeal unsealing of about one defendant every six months (with the first unsealing 11 years after the action was originally filed). But this challenge can be easily remedied with appropriate redactions and confidentiality provisions, which Abbott has suggested all along. Consistent with other FCA cases, though, Abbott is entitled to access now that the Government has intervened.

## ARGUMENT

### I.  THE GOVERNMENT MISSTATES WHAT UNDER-SEAL FILINGS HAVE BEEN PROVIDED TO ABBOTT, AS WELL AS ABBOTT'S PRIOR MOTIONS.

Badly mischaracterizing the proceedings to date, the Government suggests that nothing of import is at stake here and that the issues raised by Abbott's motion have already been decided. *First*, the Government contends that "[a]ll of the pleadings *relating to Abbott* were moved from the sealed case (Case No. 95-1354-CIV-GOLD/TURNOFF) to the case file for the Abbott '06 case or were served upon Abbott with the original summons and complaint." U.S. Opp. at 2 (Dkt. No. 203) (emphasis added). That recitation masks what has actually happened. *See* Dkt. No. 201-8, at 3-4. To be sure, Abbott was severed from the under-seal file and placed into a new case, and the Government has produced documents that were filed in the severed action since it was severed, including a few redacted complaints. But the Government has *not* provided Abbott any under-seal documents not separately filed in the severed case. While Abbott does not know

exactly what is under seal, presumably the Government's motion practice extending the statutory 60-day investigation period, for example, is included. Likewise, there appear to have been several amended complaints filed against Abbott (and others) and presumable those amendments were accompanied by motions for leave to amend. If those documents do not "relate to" Abbott, the Government had no basis to continue investigating Abbott while the case sealed.

*Second*, the Government's statement that "Abbott has made three unsuccessful attempts to gain access to the other sealed documents" is false. U.S. Opp. at 2 n.1. The first of these alleged attempts, before this Court, had nothing to do with the documents at issue in this motion.[1] The second and third alleged attempts were actually one request before the MDL Court in Massachusetts. Using its procedural severance artifice, the Government convinced that court that the proper forum for Abbott's motion was this Court; the MDL Court therefore denied Abbott's motion without prejudice pending the instant motion before this Court. In short, this is the first time Abbott's request for these documents will ever be heard on the merits.

## II. THE GOVERNMENT HAS NOT EXPLAINED HOW ALLOWING ABBOTT ACCESS TO THE REQUESTED DOCUMENTS WOULD HARM ANY SUBSTANTIAL GOVERNMENT INTEREST.

The Government makes no real effort to explain how providing Abbott access to the specific documents at issue here would harm a substantial government interest. Instead, the Government advances the broader notion that the Court should transform the FCA's temporary seal provisions into a perpetual seal cloaking the Government's investigative efforts. In support of this argument, the Government contends there is no presumption of access because the FCA provides for a seal in the first place. U.S. Opp. at 3-7. The Courts have explicitly rejected this

---

[1] The Court will recall that the first motion dealt with Abbott's request to see materials filed under seal, at the Court's direction, concerning transfer in this case by the JPML. This Court ruled that Abbott's motion was "without merit" only after reviewing the Government's filing, and satisfying itself that nothing in it pertained to Abbott. The same, of course, is not true here; by definition, the sealed documents that Abbott seeks in this case, where Abbott is named as a defendant, pertain to Abbott.

argument. *See Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003) ("the purpose of the FCA does not support *continued* sealing, and only justifies sealing in order that the government may investigate"); *United States ex rel. Tiesinga v. Dianon Systems, Inc.*, No. 3:02CV1573 (MRK), 2006 WL 2860606, * 1 (D. Conn. Oct. 3, 2006) (finding "unpersuasive" the argument that because "the Government was permitted to file the documents under seal under § 3730(b)(3), . . . the presumption of openness that ordinarily governs judicial proceedings does not apply," and ordering unsealing of Government's extension requests).

The only reason Case No. 95-1354 is still sealed is that the Government, after waiting over a decade to intervene against Abbott, is waiting still longer to (perhaps) intervene as to other defendants. In so doing, the Government attempts to parlay its one-sided use of the initial 60-day seal period into a perpetual seal. The materials have remained under seal for 12 years, and that is much more than enough.[2]

"In general, other courts faced with this issue have considered lifting the seal on the entire record to be appropriate *unless* the Government shows that such disclosure would: (1) reveal confidential investigative methods or techniques; (2) jeopardize an ongoing investigation; or (3) harm non-parties. . . . However, if the documents simply describe routine or general investigative procedures, without implicating specific people or providing substantive details, then the Government may not resist disclosure." *United States ex rel. Lee v. Horizon West, Inc.*, No. C 00-2921 SBA, 2006 WL 305966, *2 (N.D. Cal. Feb. 8, 2006) (internal citations omitted);

---

[2] *See, e.g., United States ex rel. Health Outcomes Techns., Inc. v. Hallmark Health Sys., Inc.*, 409 F. Supp. 2d 43, 50-52 (D. Mass. 2006) (noting that "the government's investigation dragged on incessantly" (seven years) and that statutes of limitation "'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared'") (citation omitted); *United States ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1190 (N.D. Cal. 1997) ("In this case, the government appears to be fully engaged in its discovery, without giving the defendants the opportunity even to answer the complaint. The government's return to the order to show cause states that each of the defendants has been served with a subpoena, investigative interviews have been conducted with numerous current and former B&T employees and government personnel have been criss-crossing the country to conduct interviews and audits.").

*see also United States ex rel. Yannacopolous v. General Dynamics*, 457 F. Supp 2d 854, 858 (N.D. Ill. 2006) (same). The Government makes no effort to explain how disclosure of the requested documents would do any of the three. To the contrary, the Government admits that it is simply the DOJ's "practice ... to file such [extension] requests under seal and to ask the court to retain the seal after the Government's election as to all documents pre-dating the election, except for the complaint(s) and the Government's notice." U.S. Opp. at 7. The Government takes this position not because disclosure of the information contained in the extension requests would reveal confidential investigatory techniques, jeopardize an investigation, or harm non-parties. Rather, the Government's "practice" is based on the premise that "the FCA contemplates applications for of time will remain under seal." *Id.* at 7. Numerous courts have rejected this argument and ordered the files to be unsealed.[3]

To the extent the Government even tries to state a harm that would result from allowing Abbott access to the documents, it offers only pure speculation. *See id.* at 8 ("Disclosure of documents sought by Abbott here . . . *may interfere* with the government's efforts to investigate and prosecute fraud against the United States . . . . and *may intrude* on the investigative and deliberative process privileges, and the protection properly afforded to the government's work product") (emphases added). These broad-based assertions are not nearly enough to justify continued sealing, and have been rejected by the courts. *See* Abbott's Mem. in Support of Mot. to Compel *Ex Parte* Filings (attached as Ex. B to Dkt. No. 201) at 7-8.[4] Certainly, if the Government has not put together a case in 12 years it has little chance of doing so now.

---

[3] *See e.g., Yannacopolous*, 457 F. Supp. 2d at 856; *Horizon West*, 2006 WL 205966 at *3; *United States ex rel. Health Outcomes Techns., Inc. v. Hallmark Health Sys., Inc.*, 349 F. Supp.2d 170, 173-74 (D. Mass. 2004).

[4] Pragmatically, too, the Government's argument is nonsensical. Even the Government recognizes that the seal is not sacred; at its request, this Court has already allowed partial lifting to allow States (who are not even parties) to see some documents in this case. Ven-A-Care apparently has seen all of these filings. Indeed, Abbott is the only interested party in the DOJ's suit against Abbott that has not seen the filings. Moreover, the documents

## III. THE UNDER SEAL DOCUMENTS ABBOTT SEEKS ARE LIKELY TO CONTAIN INFORMATION IMPORTANT TO ABBOTT'S CASE.

Importantly, courts have ordered disclosure of documents filed under seal even when it was not clear how useful the documents would be to the defendants. *See, e.g.*, *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994) (noting the information "may be of some, albeit doubtless limited, use to the defense"). While Abbott cannot know for sure (it has never seen the under seal documents it seeks), those documents likely contain information necessary to Abbott properly litigating its case. Among other things, Abbott needs to determine why it took so long for the Government to prosecute this case, and why the Government did not remedy the payment issues about which Ven-A-Care complaint in this lawsuit in 1995. *See Horizon West*, 2006 WL 305966 at *3 (ordering disclosure of sealed documents because they may shed light on the Government's knowledge of [defendant's] alleged wrongdoing and whether the Government was justified in delaying its prosecution [of defendant] for nearly five years.").[5]

To predict precisely why Abbott needs these documents would require near omniscience on the part of Abbott, but perhaps at least some of the contents of the under-seal documents can be reasonably assumed. For example, the requested documents likely have information relevant to what the Government was doing to investigate the claims and whether it was put on notice of

---

sought by Abbott eventually will be unsealed anyway. The Government will at some point have to make its intervention decisions as to other defendants and this Court's Local Rules provide that, "[a]bsent extraordinary circumstances, no matter sealed pursuant to this rule may remain sealed for longer than five (5) years from the date of filing." S.D. Fla. Rule 5.4(A)(2). There is no reason to keep these documents from Abbott in the meantime.

[5] To be clear, Abbott is not second-guessing this Court's granting of extension requests. Abbott is entitled to see what the Government told this Court as the basis for getting eleven years of extensions, and the Court's grant of extension requests in an *ex parte* setting does not immunize the Government from later challenges on this issue. *See, e.g.*, *United States ex rel. Health Outcomes Technologies, Inc. v. Hallmark Health Sys., Inc.*, 409 F. Supp.2d 43, 51-52 (D. Mass. 2006) (court was "underwhelmed" by Government's law-of-the-case argument, reasoning the "government's ex parte actions will not now be left unchallenged in a court that enjoys the benefit of an adversarial proceeding in order to give deference to judgments made by a court that did not"). Abbott needs access to ensure that the Government did not mislead the Court.

an obligation to preserve documents. Abbott is allowed to contrast what the Government was doing offensively to pursue its case with what it did *not* do to retain documents that might be helpful to Abbott's defense.[6] Moreover, Abbott does not even know if Ven-A-Care sought or received leave of this Court to file amended complaints.[7]

Relatedly, the Supreme Court has recently made clear that Ven-A-Care may not pursue claims that turn on information Ven-A-Care gained from the Government's 10-plus year investigation, rather than on information it brought to the table. *See Rockwell Intern. Corp. v. U.S.*, __ S. Ct. __ 2007 WL 89525, at *9-10 (2007). Abbott needs to be able to distinguish between the two, and there is reason to believe the under-seal papers provide a necessary and reliable means to do so.

Finally, these documents could be invaluable in demonstrating what the Government knew, and when it knew it. As the MDL Court has already recognized, the Government's knowledge about such matters is highly relevant to this lawsuit, in which the Government contends it was defrauded on these very subjects. That Court recently noted that it was "somewhat frustrated over the refusal of the U.S. government to produce witnesses in the big trial that I just went through," and that "[e]veryone has a right to understand what the government was doing during the time period." Feb. 27, 2007 Hrg. Tr. at 35 (attached as Ex. 1).

---

[6] For example, the 30(b)(6) designee of the Centers for Medicare and Medicaid Services ("CMS") on issues of document preservation recently testified that a litigation hold was not put in place for this case until January of 2007, that she was aware of no steps taken to preserve or collect documents at CMS relating to AWP issues until 2003, and that the Government *still* has *no litigation hold in place* for responsive documents in archives and the Federal Records Center. *See* V. Robey Dep. Tr. at 57-58, 61, 65-66, 73, 117-119 (Ex. 2).

[7] This issue is relevant because many of the drugs named in the currently operative U.S. Complaint were not included in the original complaint. If Ven-A-Care did not have such leave to amend, claims relating to those drugs might be barred. Ven-A-Care's counsel has not responded to letter from Abbott asking if Ven-A-Care obtained leave to file amended complaints. *See* Letter from Abbott counsel to J. Breen (1/29/07) (attached as Ex. 3).

6

Again, Abbott cannot know with certainty what is in the under-seal documents. Abbott

can only guess that there must be relevant, and likely helpful, information given how strongly the

Government is resisting production.

Dated: April 6, 2007                        Respectfully submitted,

                                            _/s/Marty Steinberg_____
James R. Daly                               Marty Steinberg
Tina M. Tabacchi                            Hunton & Williams
Brian J. Murray                             1111 Brickell Avenue, Suite 2500
JONES DAY                                   Miami, Florida 33131
77 West Wacker Drive, Suite 3500            Telephone: (305) 810-2505
Chicago, Illinois 60601                     Facsimile: (305) 810-2460
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700              *Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2007, a true and correct copy of the foregoing **ABBOTT**

**LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL**

**UNSEALING OF THE RECORD TO ALLOW ABBOTT ACCESS TO DOCUMENTS**

**FILED UNDER SEAL** was served upon:

Mark A. Lavine, Esq. **(By Hand)**
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

Gejaa T. Gobena, Esq. **(By U.S. Mail)**
United States Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

James J. Breen, Esq. **(By Fed Ex)**
Alison Simon, Esq.
The Breen Law Firm
3350 S. W. 148th Avenue, Suite 110
Miramar, FL 33029

    /s/Marty Steinberg
    Marty Steinberg

# EXHIBIT 1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


In Re:                              )
PHARMACEUTICAL INDUSTRY             ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE             ) MDL No. 1456
LITIGATION                          ) Pages 1 - 49



MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 27, 2007, 10:10 a.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787


514bf967-2d22-4082-baaa-b8173ddef2eb

Page 34

1   THE COURT: And with respect to Connolly, have her
2   move for an opening of the protective order with respect to
3   certain kinds of documents. You of course can talk to
4   whoever you want. No, you shouldn't be thrown out of a
5   deposition, and none of this is so super secret. On the
6   other hand, I have to say, it can't be a fishing expedition
7   to find a hundred more drugs to sue on. So that's sort of
8   where I'm trying to think about. Once I get into specifics,
9   I will get to specifics.
10  Now, let me get to Part B, which is, when are you
11  doing the depositions of the government people?
12  MS. BROOKER: We are doing them on an ongoing
13  basis. We're in the process of this right now.
14  MR. DALY: We've had a couple, your Honor. I think
15  we have four noticed.
16  THE COURT: Like who? Who?
17  MS. BROOKER: Well, Abbott has largely sought to
18  notice topics which they would call spoliation issues, your
19  Honor. There haven't been very many substantive depositions
20  that have taken place or that are noticed. They are seeking
21  to depose every individual that we put in an interrogatory to
22  find out whether their documents were preserved. For
23  example, there was a broad request for individuals who are
24  responsible or knowledgeable about the reimbursement process
25  in general; and then there are 30(b)(6) depositions going

Page 35

1   forward over where are their files, people who left years
2   ago. So there are not that many substantive government
3   depositions.
4   THE COURT: Let me say this on the flip side of
5   this issue, which is, I was somewhat frustrated over the
6   refusal of the U.S. government to produce witnesses in the
7   big trial that I just went through. It all came up sort of
8   too late, and it wasn't specific enough, at least for the
9   issues there. To the extent -- Abbott, you're in Class 2?
10  MR. DALY: Yes, your Honor.
11  THE COURT: To the extent there are depositions on
12  a substantive basis, they should be open to everyone.
13  Everyone has the right to understand what the government was
14  doing during the time period.
15  MS. BROOKER: Your Honor, we have actually been
16  doing that. In fact, more than that, and there hasn't been
17  an opposition to this, but we've been insisting that everyone
18  join the depositions so that we only need to offer a witness
19  one time. So when there is a deposition notice, it is served
20  on LexisNexis, and we encourage and almost insist that other
21  parties appear so that we don't have to recall over and over
22  again a government witness. That's just not been an issue.
23  THE COURT: Because at some point I anticipate in
24  this case under the False Claims Act -- and I don't remember,
25  I think there are very complicated legal issues, very

Page 36

1   complicated legal issues -- but, in any event, what Centers
2   for Medicare and Medicaid services understood and knew and
3   what they agreed to and what they didn't.
4   MS. BROOKER: And with respect to Abbott's conduct
5   and the Abbott drugs at issue in this case or the Dey drugs
6   and the Dey conduct.
7   THE COURT: Yes, and in general -- I mean, I'm
8   probably now more steeped in this than most people, but it
9   came -- the Office of the Inspector General was actually
10  quite persistent in trying to flag some of these issues. I
11  don't know if it's Abbott drugs or not. I just don't know.
12  And at some point, at least Mr. Scully and other people were
13  testifying on the Hill about this stuff. And so it's
14  relevant, not only to statute of limitations, but it's also
15  relevant to -- I think a very difficult area of the law is
16  when the government knows about a fraud, let's say, knows
17  about a fraud and it continues. I don't know what happens
18  when -- the solution is a very complicated one. In other
19  words, when the solution has to do with increasing
20  administrative fees and getting something through Congress, I
21  don't know what the answer is under False Claims Act, but at
22  least we need a factual record.
23  MS. BROOKER: Certainly, your Honor, and government
24  intends to be very open about the process. And I will remind
25  the Court that, you know, the United States has not sued the

Page 37

1   entire pharmaceutical industry, and we have not sued Abbott
2   on all of its drugs. We are really focused on very discrete
3   conduct of a very discrete company or, you know, an
4   additional two companies. So we believe that the proper
5   focus is on what the reimbursement officials at CMS knew
6   about these thousand plus percent spreads by Abbott on these
7   particular drugs.
8   THE COURT: Are they cancer drugs?
9   MS. BROOKER: Some of those are. There's a large
10  antibiotic and then there are water solubles that are
11  generally at issue.
12  THE COURT: Are they generics?
13  MR. DALY: Yes, they're all generics, Judge.
14  THE COURT: Are they part of Track 2?
15  MR. DALY: We're in Track 2, your Honor. Yes, what
16  we're hearing again is that they're suggesting without coming
17  out and saying it that they want to try to limit us, that we
18  can ask the CMS people and the OIG people what they knew and
19  understood, but only if they knew and understood about a
20  5-milliliter bag of saline solution. Our position, of
21  course, and we talked about this when we were here in the
22  fall, is much broader than that. And we need to find out
23  what the government knew about spreads and mega spreads and
24  cross-subsidization and all of this information. And counsel
25  is correct that, you know, we're going to go ahead and we're

10   (Pages 34 to 37)

# EXHIBIT 2

Rough Transcript of Bailey & Robey Depo.txt

1

```
              ROUGH DRAFT - UNEDITED TRANSCRIPT
  1           THE VIDEOGRAPHER:  GOOD MORNING.
  2    THIS IS THE VIDEOTAPE DEPOSITION OF VICKY ROBEY
  3    TAKEN BY THE DEFENDANT PARTY IN THE MATTER OF IN
  4    RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE
  5    PRICE LITIGATION MDL NUMBER 1456, CIVIL ACTION
  6    NUMBER 01-C V-12257-P B S BEFORE THE UNITED
  7    STATES DISTRICT COURT FOR THE DISTRICT OF
  8    MASSACHUSETTS.  THE DATE IS MARCH 20, 2007 AND
  9    THIS DEPOSITION IS BEING HELD AT HOGAN AND
 10    HARTSON, 111 SOUTH CALVERT STREET IN BALTIMORE,
 11    MARYLAND.  THE TIME ON THE MONITOR IS 9:20 A.M.
 12    MY NAME IS MICHAEL HUNLTERTON AND I AM THE
 13    CERTIFIED VIDEOGRAPHER ASSOCIATED WITH THE FIRM
 14    OF HENDERSON LEGAL SERVICES LOCATED AT 1015
 15    FIFTEENTH STREET, NORTHWEST IN WASHINGTON, D.C.
 16    THE COURT REPORTER IS CAROL ROBINSON ASSOCIATED
 17    WITH THE SAME FIRM.  WILL COUNSEL ON THE
 18    TELEPHONE PLEASE INTRODUCE THEMSELVES FOR THE
 19    RECORD?
 20           MR. HECK:  THIS IS JARED HECK.  I
 21    REPRESENT THE DEFENDANT ROXANNE LABORATORIES,
 22    INCORPORATED AND SEVERAL INDEPENDENT BOEHRINGER
```

♀

2

```
              ROUGH DRAFT - UNEDITED TRANSCRIPT
  1    ENTITIES NAMED AS DEFENDANTS IN CASE NUMBER
  2    07-01248.
  3
  4           MS. LIFESO:  THIS IS CATHLEEN LIFESO
  5    FROM DAVIS POLK AND WARDWELL REPRESENTING
```

Rough Transcript of Bailey & Robey Depo.txt

2    EXTENT THAT IT CALLS FOR PRIVILEGED

3    COMMUNICATION.

4         Q    I DON'T WANT YOU TO TALK ABOUT

5    CONVERSATIONS WITH YOUR LAWYERS BUT HOW DID YOU

6    COME TO THE UNDERSTANDING THAT IF THERE IS

7    LITIGATION, ON GOING AND YOU HAVE DOCUMENTS

8    RELATINGINGING TO THAT LITIGATION THAT ONE SHOULD

9    PRESERVE THOSE DOCUMENTS?

10              MS. THOMAS:   OBJECTION.   <!0>

11        Q    IF YOU REMEMBER.

12        A    I MEAN, THASES JUST COMMON SENSE.

13   YOU DON'T WANT TO THROW AWAY THINGS.

14        Q    ANYTHING OTHER THAN COMMON SENSE?

15        A    PARDON ME.

16        Q    ANYTHING OTHER THAN COMMON SENSE?

17        A    NO.

18        Q    NO?  JUST SELF-APPARENT?  EVERYBODY

19   SHOULD KNOW?

20              MS. THOMAS:  OBJECTION.

21        Q    I APOLOGIZE.  LET ME MOVE ON.  I'M

22   ASKING YOU ABOUT A MEMO YOU KNOW NOTHING ABOUT

⚇

57

          ROUGH DRAFT - UNEDITED TRANSCRIPT
1    AND I KNOW THAT'S HARD TO DO.  I'M AFRAID THIS

2    ONE MAYBE SIMILAR BUT I DO HAVE TO FIND OUT IF

3    YOU HAD ANY INVOLVEMENT OTHER THAN JUST RECEIVING

4    IT, MS. ROBEY.  THERE IS A NOVEMBER 18, 2003 MEM

5    ROW, FOR THE RECORD, IT IS DOCUMENTS 0003 THROUGH

6    0004.  IT IS FROM AGAIN GREGORY CAR SON.

7    DIRECTED THIS TIME NOT ONLY TO THE FISCAL

8    INTERMEDIARIES AND OLD CARRIERS BUT TO ALL

Rough Transcript of Bailey & Robey Depo.txt

```
 9   MILLION DOLLARS.

10              MEDICAL EQUIPMENT REGIONAL CARRIERS

11   AND THIS ALSO HAS A SIMILAR SUBJECT.  IT IS

12   COORDINATION OF RESPONSES TO SUBPOENA 1*7S AND

13   OTHER REQUESTS FROM OUTSIDE ENTITIES REGARDING T

14   A P PHARMACEUTICAL PRODUCTS, INC. AND L O P R O

15   N, PART I-I, RESERVATION OF DOCUMENTS AND CONTACT

16   IDENTIFICATION.  AS A PRELIMINARY MATTER, WERE

17   YOU ALSO NOT INVOLVED?

18        A    CORRECT.

19        Q    IN DRAFTING THIS ONE?

20        A    CORRECT.

21        Q    BUT YOU RECEIVED IT?

22        A    YES.
```

                                        58

```
                ROUGH DRAFT - UNEDITED TRANSCRIPT
 1        Q    IS IT FAIR TO SAY THIS DOCUMENT DOES

 2   DIRECT THE ADDRESSEES TO PRESERVE DOCUMENTS?

 3        A    YES.

 4        Q    AND IT INDICATES, AT LEAST AS OF

 5   NOVEMBER 18, 2003, THAT THE RECIPIENTS OF THE

 6   MEMORANDUM SHOULD PRESERVE DOCUMENTS THAT CONCERN

 7   T A P, L O P R O N, S O L A D E X, DRUG COMPANIES

 8   OTHER THAN T A P OR ANY OTHER DRUG REIMBURSED BY

 9   MEDICARE.?

10              MS. THOMAS:  OBJECTION.

11        Q    DID YOU HAVE ANY DOCUMENTS THAT YOU

12   PRESERVED IN RESPONSE TO THIS MEMORANDUM?

13        A    I MYSELF OR THE AGENCY?

14        Q    THAT IS A SILLY QUESTION.  YOU ARE

15   FROT A F I CARRIER OR A D M E REGION AM CARRIER,

16   ARE YOU?
```

Page 44

Rough Transcript of Bailey & Robey Depo.txt

17          A     NO.

18          Q     SO, YOU WOULDN'T PRESERVE ANYTHING IN

19   RESPONSE TO THIS.  I TAKE IT?

20          A     (SHAKING HEAD INDICATING NO).

21          Q     DID YOU HAVE ANY INVOLVEMENT WITH

22   THIS OTHER THAN RECEIVINGING IT AND PUTTING IN

                                                          59

                        ROUGH DRAFT - UNEDITED TRANSCRIPT
 1   YOUR FILE?

 2          A     NO.

 3          Q     IN WHAT CAPACITY DID YOU RECEIVE

 4   THIS?  WHY DID IT COME TO YOU?

 5          A     I AM HRAO*EUSED AS C C ON THE SECOND

 6   PAGE.

 7          Q     DO YOU HAVE ANY IDEA WHY YOU WOULD

 8   YOU BE A C C TO THIS MEMORY TO THE CARRIER ON THE

 9   F IS?

10          A     BECAUSE I'M THE AGENCIES RECORDINGS

11   OFFICER.

12          Q     SO, YOU WOULD KEEP A RECORD OF

13   DIRECTIONS TO THESE OUTSIDE ENTITIES TO PRESERVE

14   DOCUMENTS?

15          A     YES.

16          Q     TO THE BEST OF YOUR KNOWLEDGE, DID

17   THE RESIP YENTD OF THIS MEMO COMPLY WITH ITS

18   INSTRUCTIONS?

19                MS. THOMAS:  OBJECTION.

20                THE WITNESS:  I HAVE NO WAY OF

21   KNOWING.

22                BY MR. COOK:

                                                          60

Page 45

Rough Transcript of Bailey & Robey Depo.txt

ROUGH DRAFT - UNEDITED TRANSCRIPT

1       Q       YOU HAVEN'T HEARD THAT NOBODY DID NOT

2    COMPLY?

3       A       CORRECT.

4       Q       A DOUBLE NEGATIVE THERE.  THE NEXT

5    MEMO IS BATES NUMBERED 0005 THROUGH 0007.  FOR

6    THE RECORD, I'LL DESCRIBE IT.  IT IS DATED

7    FEBRUARY 19, 2004.  IT IS ADDRESSED TO ALL

8    CENTER AND OFFICE DIRECTORS AND REGIONAL STRAIR

9    ADMINISTRATORS.  IT IS FROM J A C Q U E L Y N,

10   WHITE, WHO APPEARS TO BE THE, OR PURPORTS TO BE

11   THE DIRECTOR, OFFICE OF STRATEGIC OPERATIONS AND

12   REGULATORY AFFAIRS.  THE SUBJECT IS DOCUMENT

13   PRESERVATION AND PRODUCTION, LIEU PRONE MARKETING

14   AND SALES PRACTICE LITIGATION AND PHARMACEUTICAL

15   INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION.  IT

16   HAS A PORTION OF THE SECOND PAGE REDACTED.  <!0>

17   MS. ROBEY, DO YOU RECOGNIZE BATES NUMBER, PAGES

18   BATES NUMBERED 5 THROUGH 7?

19       A       YES.

20       Q       WHAT IS IT?

21       A       IT'S A NOTICE THAT WAS SENT OUT TO

22   CMS CENTERS AND OFFICES ASKING THEM TO IDENTIFY A

61

ROUGH DRAFT - UNEDITED TRANSCRIPT

1    PERSON WHO IS GOING TO COORDINATE THE DISCOVER

2    REQUEST.

3       Q       OTHER THAN RECEIVINGING THIS MEMO,

4    WERE YOU INVOLVED AT ALL IN THE PREPARATION OF

5    THIS MEMO?

6       A       NO, I WAS NOT.

7       Q       PRIOR TO RECEIVING THIS MEMO ON

Page 46

Rough Transcript of Bailey & Robey Depo.txt

8      FEBRUARY 19, 2004, ARE YOU AWARE OF ANY STEPS

9      THAT WERE TAKEN TO PRESERVE DOCUMENTS AS

10     DESCRIBED IN THIS MEMORANDUM?

11          A     NO.

12                MS. THOMAS:   OBJECTION.

13          Q     SORRY.  WE SPOKE OVER EACH OTHER.

14     WAS THAT NO?

15          A     NO.

16          Q     THANK YOU.  AFTER RECEIVING THIS MEMO

17     IN FEBRUARY 2004, WHAT ROLE DID YOU HAVE IN THE

18     ACT IFERTDS DESCRIBED IN THIS MEMORANDUM

19     (ABILITYIVITIES)?

20                MS. MARTINEZ:   OBJECTION TO FORM.

21     <!0>

22          Q     IT WAS POORLY PHRASED.  I'LL TRY IT

                                                    62

                         ROUGH DRAFT - UNEDITED TRANSCRIPT
1      AGAIN.  MS. ROBEY, WERE YOU INVOLVED AT ALL

2      ACTIVELY IN THE PRESERVATION OF RECORDS AS

3      DIRECTED IN THIS MEMORANDUM?

4          A     NO BECAUSE I DID NOT KEEP THESE

5      RECORDS.

6          Q     AND DID YOU YOU GATHER ANY DOCUMENTS

7      RESPONSIVE TO THIS PARTICULAR REQUEST?

8          A     NO.

9                MS. MARTINEZ:   I JUST WANT STOB CLEAR

10     FOR THE RECORD THESE QUESTIONS YOU ARE ADDRESSING

11     TO VICKY ROBEY TO VICKY ROBEY, NOT VICKY ROBEY AT

12     C MS, FOR EXAMPLE, WHEN YOU ARE ASKING, DID

13     YOURSELF DISBEAR ANY DOCUMENTS, YOU ARE OBVIOUSLY

14     ASKING MS. ROBEY, NOT FOR HER TO ANSWER ON BEHALF

                         Page 47

Rough Transcript of Bailey & Robey Depo.txt
15    OF ALL O CMS WITH RESPECT TO THIS.

16        Q     WHEN I AM ASKING DID YOU GORE

17    DOCUMENTINGS, I'M NOT ASKING CMS TO TESTIFY ABOUT

18    WHAT YOU AND VICKY ROBEY TO O PRESERVE.

19              MS. MARTINEZ: SINCE THIS IS A 30 B 6

20    DEPO, I JUST WANT TO BE CLEAR ON THE RECORD <!O>

21    THAT WAS NOT THE ANSWER ON BEHALF OF CMS.

22        Q     THAT QUESTION AND ANSWER, YOU WERE

                                                    63

                    ROUGH DRAFT - UNEDITED TRANSCRIPT
1     TESTIFYINGING AS VICKY ROBEY, NOT AS THE DESIGNEE

2     OF THE #- O B 6.  I SHOULD HAVE MADE THAT CLOAR.

3     BACK INTO CHARACTER, THOUGH -- DO WE HAVE A COPY

4     OF THE COMPLAINT?  GAB GAB THE ORIGINAL?

5              MR. COOK:  YES.  <!O>

6              BY MR. COOK:

7        Q     I'D LIKE TO SHOW YOU REAL QUICKLY,

8     WE'LL SET THOSE ASIDE AND COME BACK IT, I'LL MARK

9     IT AS EXHIBIT ABBOTT 70.

10                       (                EXHIBIT

11                       NO.               ,

12                                       , W

13                       MARKED FOR IDENTIFICATION.)

14             MS. MARTINEZ:  COULD IT SEE IT BEFORE

15    YOU --

16             MR. COOK:  OH, ABSOLUTELY.  IT IS A

17    COPY OF -- THAT ONE IS THICKER BECAUSE IT IS TWO

18    OF THEM.  IT IS A COPY OF THE ORIGINAL COMPLAINT

19    TIMED BY VEN-A-CARE.  IT INDICATES ON THE COVER

20    SHEET THAT VEN-A-CARE PUT ON THE DOCUMENT

21    ORIGINALLAL COMPLAINT FILED ON ABOUT JUNE 2 #-,

22    1996.  I BELIEVE THAT'S INCORRECT FOR THE RECORD.
                          Page 48

Rough Transcript of Bailey & Robey Depo.txt

64

```
                    ROUGH DRAFT - UNEDITED TRANSCRIPT
 1   THAT IT IS 1995 IN AS MUCH AS THE CIVIL CASE

 2   NUMBER IS A '95 CASE NUMBER.

 3              MS. MARTINEZ:  DO YOU HAVE AN EXTRA

 4   COPY THAT COUNSEL FOR VEN-A-CARE COULD USE?

 5              MR. COOK:  ABSOLUTELY.

 6              MS. THOMAS:  THANK YOU.

 7              MR. COOK:  DOES ANYBODY ELSE NEED A

 8   COPY?  I WOULD LOVE TO GET RID OF THEM.

 9        Q     IF YOU COULD JUST TAKE A QUICK

10   MOMENT, I RECOGNIZE THAT IS A LENGTHY DOCUMENT

11   BUT TAKE A LOOK AT IT AND TELL ME WHETHER YOU'VE

12   EVER SEEN THAT DOCUMENT BEFORE?

13              MS. THOMAS:  YOU MIGHT WANT TO

14   CLARIFY WHETHER SHE HAS EVER SEEN THIS DOCUMENT,

15   THAT MAY OR MAY NOT HAVE HAD THESE REDACTIONS.

16              MR. COOK:  OKAY.

17              THE WITNESS:  NO.  I'VE NEVER SEEN

18   THIS BEFORE.

19        Q     EITHER WITH OR WITHOUT THE

20   REDACTIONS?

21        A     NO.

22        Q     AND JUST FOR THE RECORD, ON PAGE 69,
```

65

```
                    ROUGH DRAFT - UNEDITED TRANSCRIPT
 1   IT INDICATES THAT IT WAS SERVED ON JUNE 23 OF

 2   1995.  TO THE BEST OF YOUR KNOWLEDGE, MS. ROBEY,

 3   DID CMS INSTITUTE ANY DOCUMENT PRESERVATION

 4   INSTRUCTION IN CONNECTION WITH THIS COMPLAINT

 5   THAT WAS FILED ON JUNE 23, 1995?
```

Page 49

Rough Transcript of Bailey & Robey Depo.txt
6        A     NOT THAT I'M AWARE OF.

7        Q     GOING BACK TO THE FEBRUARY 19, 2004

8    MEMORANDUM, INCLUDED WITHIN EXHIBIT ABBOTT 69,

9    ARE YOU AWARE OF ANY SUBSEQUENT MEMORANDA THAT

10   WERE ISSUED RELATING TO THE LITIGATION DESCRIBED

11   IN THIS FEBRUARY 19, 2004 MEMORANDUM REGARDING

12   PRESERVATION OF DOCUMENTS?

13       A     THERE WAS ONE AFTER THIS IN JANUARY

14   OF 2007, I BELIEVE.

15       Q     AND WHAT DID THAT ONE -- AGAIN, IS

16   THAT A PRIVILEGED COMMUNICATION?

17             MS. MARTINEZ:  OBJECTION TO THE

18   EXTENT IT CALLS FOR PRIVILEGED COMMUNICATION.

19   YOU MAY BE ABLE TO ASK HER IF SHE HAS INFORMATION

20   FROM ANYBODY WHO IS A NONLAWYER REGARDING THAT.

21       Q     JUST STICKING WITH THE MEMORANDUM AND

22   THEN MOVING ON TO INFORMATION FROM A NONLAWYER,

                                                    66

                     ROUGH DRAFT - UNEDITED TRANSCRIPT
1    DO YOU REMEMBER FROM WHOM THE JANUARY 2007

2    MEMORANDUM WAS FROM?

3        A     IT WAS FROM OUR PROGRAM AREA -- I'M

4    TRYING TO REMEMBER THE LADY'S NAME, M A R Y B E T

5    H, JASON, I THINK.  I'M NOT SURE ABOUT THE LAST

6    NAME.

7        Q     IS SHE AN ATTORNEY?

8        A     NO.

9        Q     WITHOUT DESCRIBING THE CONTENS OF THE

10   MEMORANDUM, CAN YOU DESCRIBE GENERALLY WHAT THE

11   NATURE OF THE DOCUMENT WAS?

12             MS. THOMAS:  OBJECTION.

13             MS. MARTINEZ:  IF YOU WOULD FOCUS
                          Page 50

Rough Transcript of Bailey & Robey Depo.txt

```
14    YOUR QUESTION WITH RESPECT, IF SHE HAS ANY

15    INFORMATION FROM A NONLAWYER REGARDING WHETHER OR

16    NOT THAT DOCUMENT INSTRUCTED ANYONE TO PRESERVE,

17    YOU MIGHT BE ABLE TO GET AN ANSWER THAT IS

18    HELPFUL.

19        Q    DO YOU HAVE ANY INFORMATION FROM A

20    PHENOMENON LAWYER THAT WOULD INDICATE WHETHER

21    THAT DOCUMENT WAS INTENDED TO PRESERVE DOCUMENTS

22    RELATING TO LITIGATION?
```

♀

                                                                                67

```
                     ROUGH DRAFT – UNEDITED TRANSCRIPT
 1       A    YES, I DO.

 2       Q    FROM WHOM DO YOU HAVE THAT

 3    INFORMATION?

 4       A    IT IS FROM M A R Y B E T H, I THINK

 5    THE LAST NAME IS JASON.

 6       Q    SHE WAS THE AUTHOR OF THE MEMORANDUM?

 7       A    I BELIEVE SO, YES.

 8       Q    IS THIS A CONVERSATION YOU HAD WITH

 9    MS. JASON?

10       A    A CONVERSATION AS WELL AS A COPY OF

11    THE CORRESPONDENCE.

12       Q    DO YOU REMEMBER WHEN AND WHERE THIS

13    CONVERSATION TOOK PLACE, APPROXIMATELY?

14       A    I TALKED WITH HER YESTERDAY AS WELL

15    AS IN THE PAST WHERE SHE CONTACTED ME REGARDING

16    THE AGENCY'S POLICY ON RETENTION.

17       Q    AS BEST YOU CAN RECALL, WHAT DID YOU

18    SAY TO MS. JASON, WHAT DID SHE SAY TO YOU IN THE

19    EARLIER CONVERSATIONS?

20       A    I CAN'T REMEMBER.
```

Page 51

Rough Transcript of Bailey & Robey Depo.txt
```
21      Q      DO YOU REMEMBER THE NATURE OF THE

22   CONVERSATION?

                                                        68

                         ROUGH DRAFT - UNEDITED TRANSCRIPT
 1       A      IT WAS WITH REGARD TO PRESERVATION --

 2   NOT PRESERVATION BUT WHAT THE AGENCY'S POLICY WAS

 3   ON RETENTION AND THE APPROPRIATE WAY TO WORD

 4   RECORDS MANAGEMENT LANGUAGE IN NOTICE ABOUT

 5   PRESERVATION.

 6       Q      SO, SHE CALLED WITH A QUESTION?

 7       A      YES.

 8       Q      AND YOU ANSWERED HER QUESTION?

 9       A      YES.

10       Q      A LONG CONVERSATION?   SHORT

11   CONVERSATION?

12       A      I DON'T REMEMBER.   IT WAS BEFORE THE

13   HOLIDAYS.

14       Q      SHE CALLED TO ASK YOU ABOUT HOW ONE

15   WOULD GO ABOUT DRAFTS A DOCUMENT PRESERVATION OR

16   A HOLD MEMORANDUM?

17       A      SHE WANTED RECORDS MANAGEMENT

18   LANGUAGE TO USE.   SHE -- I DID DIDN'T GIVE HER

19   CONTENT.   I JUST TALKED WITH HER AND GAVE HER

20   INSTRUCTIONS.

21       Q      AND WHAT WAS YOUR UNDERSTANDING ABOUT

22   WHY SHE WAS ASKING THIS QUESTION OF YOU?

                                                        69

                         ROUGH DRAFT - UNEDITED TRANSCRIPT
 1       A      BECAUSE SHE WAS GOING TO BE PREPARING

 2   CORRESPONDENCE THAT WAS BEING RELEASED ABOUT

 3   PRESERVATION.

 4       Q      DO YOU KNOW WHY SHE WAS GOING TO SEND
                            Page 52
```

Rough Transcript of Bailey & Robey Depo.txt

20      Q      PRIOR TO THAT MEMORANDUM BEING
21  DISTRIBUTED, WITHOUT VOLUNTARILYING THE CONTENTS
22  OF THAT (REVEALING) OF THAT MEMORANDUM, HAD THERE

72

ROUGH DRAFT - UNEDITED TRANSCRIPT
1  EVER BEEN ANY PRIOR COMMUNICATIONS BETWEEN CMS
2  RELATING TO DOCUMENT PRESERVATIONS IN CONNECTION
3  TO THAT CASE?
4             MS. MARTINEZ:  OBJECTION TO THE
5  EXTENT THAT SHE KNOWS.
6             BY THE WITNESS:
7      Q      SURE.   TO THE EXTENT IS THAT YOU ARE
8  AWARE OF AS THE RECORDS OFFICER FOR CMS, HAD
9  THERE EVER BEEN ANY PRIOR RECORDS PRESERVATION
10  DIRECTIONS ISSUED RELATING TO THAT CASE THAT WAS
11  THE SUBJECT OF M A R Y B E T H'S MEMORANDUM?
12      A      YES.
13      Q      WHEN WAS THAT?
14      A      EARLY 2003, LATE 2004.
15      Q      SO, IT IS YOUR UNDERSTANDING THAT
16  THOSE TWO CASES WERE SOMEHOW CONNECTED?
17      A      YES.
18      Q      THE SAME CASE OR CONNECTED?
19      A      I JUST ASSOCIATED IT BECAUSE OF
20  INFORMATION THAT WAS PROVIDED IN THE SUBJECT
21  LINE.
22      Q      OKAY.

73

ROUGH DRAFT - UNEDITED TRANSCRIPT
1      A      I'M NOT AN EXPERT ON THAT.
2      Q      AND I UNDERSTAND COMPLETELY.  OTHER

Page 55

```
                Rough Transcript of Bailey & Robey Depo.txt
3    THAN THE 2003-2004 PRIOR PRESERVATION MEMO, AND
4    THAT IS THE ONE WE HAVE HERE AT PAGES 5 THROUGH
5    7, CORRECT -- YES, 5 THROUGH 7.
6        A    YES.
7        Q    OTHER THAN THAT FEBRUARY 19, 2004
8    COMMUNICATION, HAD THERE EVER, BEFORE THAT, BEEN
9    ANY PRESERVATION INSTRUCTIONS ISSUED IN
10   CONNECTION WITH THAT CASE?
11              MS. THOMAS:  OBJECTION.
12              THE WITNESS:  NOT THAT I'M AWARE OF.
13              THE VIDEOGRAPHER:  THE TIME IS
14   10:34 A.M.  WE ARE GOING OFF THE RECORD WORKERS'
15   COMPENSATION CONCLUDING TAPE NUMBER ONE IN THE
16   DEPOSITION OF VICKY ROBEY IN THE MATTER OF IN RE
17   RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE
18   PRICE LITIGATION.
19              (RECESS TAKEN.)
20              CMS NOW IS THE TIME FOR ALL GOOD
21   MEN.
22              THE VIDEOGRAPHER:  THE TIME IS
```

74

```
                ROUGH DRAFT - UNEDITED TRANSCRIPT
1    10:48 A.M.  WE ARE GOING BACK ON THE THE
2    RECORDING STARTING TAPE NUMBER TWO IN THE
3    DEPOSITION OF VICKY ROBEY IN THE MATTER OF IN RE
4    PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE
5    LITIGATION.
6        Q    MS. ROBEY, I'D LIKE TO HAND YOU WHAT
7    I HAVE MARKED AS EXHIBIT ABBOTT 71 AND ASK YOU TO
8    TAKE A LOOK AT THAT.  IT IS CAPTIONED ABBOTT
9    LABORATORIES, INC. NOTICE OF 30 B 6 DEPOSITION OF
10   PLAINTIFF, UNITED STATES OF AMERICA.  DO YOU
                     Page 56
```

Rough Transcript of Bailey & Robey Depo.txt

11    OWNER SENDS YOU A COMMUNICATION?

12         A    CORRECT, BECAUSE I'M NOT -- I AM NOT

13    A PROGRAM AREA PERSON.  THEY ARE THE EXPERTS, I'M

14    NOT.

15         Q    HOW ARE THOSE COMMUNICATIONS MADE TO

16    YOU?

17         A    VERBALLY, E-MAIL.

18         Q    DO YOU KEEP A RECORD OF THOSE

19    COMMUNICATIONS?

20         A    THE E-MAILS, I WOULD.  VERBAL

21    COMMUNICATIONS, I DON'T.

22         Q    WONINGS YOU RECEIVE A VERBAL E-MAIL

♀

                                                    117

                 ROUGH DRAFT - UNEDITED TRANSCRIPT
1     OR WRITTEN COMMUNICATION OF THIS SORT, WHAT DO

2     YOU THEN DO?

3          A    I GO INTO MY DATABASE AND I MARK THAT

4     THE RECORDINGS ARE FROZEN (RECORDS) BECAUSE THE

5     WAY MY DATABASE IS SET UP, I HAVE TO ASSIGN A

6     DISPOSAL DATE.  SO, I MARK IT OUT LIKE TEN YEARS

7     FROM THE DATE THAT THE DISPOSAL DATE ORIGINALLY

8     WAS.  THAT WAY, IN TEN YEARS, IF IT HAPPENS TO

9     COME UP AND THE CASE IS STILL ACTIVE OR THE

10    RECORDS ARE STILL FROZEN, THEN A NOTICE WOULD BE

11    GENERATED AGAIN TO THE RECORD OWNER, TELLING THEM

12    IT'S COME TIME OR BECAUSE OF THE FREEZE, CAN WE

13    LIFT THE FREEZE OR DO WE -- CAN WE DISPOSE OF

14    THEM.

15         Q    IN CONNECTION WITH THE (.

16              CAN YOU HAND ME EXHIBIT 69?  IN

17    CONNECTION WITH THE FEBRUARY 19, 2004 RECORD HOLD

                        Page 89

```
       Rough Transcript of Bailey & Robey Depo.txt
18   MEMORANDUM THAT WE LOOKED AT BEFORE AS PART OF

19   EXHIBIT 69, THIS WAS MEMORANDUM FROM JACQUELYN

20   WHITE, IF YOU'LL RECALL --

21        A    OKAY.

22        Q    DID YOU PLACE A HOLD ON ANY DOCUMENTS
```

                                                  118

```
                    ROUGH DRAFT - UNEDITED TRANSCRIPT
1    IN THE CMS WAREHOUSE?

2         A    NO, I DID NOT.

3         Q    IN CONNECTION WITH THE JANUARY 2007

4    MEMORANDUM ON THAT WAS ISSUED FOLLOWING YOUR

5    DISCUSSION WITH M A R Y B E T H JASON, DID YOU

6    PLACE A HOLD ON ANY DOCUMENTS IN THE CMS

7    WAREHOUSE?

8         A    NO.

9              MS. MARTINEZ:  I JUST WANT TO

10   CLARIFY, IF YOU ARE TRYING TO ASK WHETHER SHE

11   RECALLS WHETHER ANY OWNER SENT HER ANY KIND OF

12   NOTICE LIKE THAT, IS THAT WHAT YOU ARE ASKING OR

13   WHETHER SHE PERSONALLY DID.

14        Q    I AM ASKING WHETHER THE RECORDS

15   OFFICER PLACED A HOLD ON ANY DOCUMENTS?

16             MS. MARTINEZ:  THAT SHE RECALLS.

17             THE WITNESS:  IT WOULD BE HARD FOR ME

18   TO DO THAT BECAUSE A LOT OF TIMES IN THE SUBJECT

19   LINE THEY GIVE ME, THERE MAY NOT BE THE

20   DESCRIPTION I NEED TO BE ABLE TO APPLY SOMETHING.

21        Q    I MAY NOT HAVE BEEN CLEAR.  FOLLOWING

22   THE SEPTEMBER 2004 MEMORANDUM IN EXHIBIT ABBOTT
```

                                                  119

```
                    ROUGH DRAFT - UNEDITED TRANSCRIPT
1    69, THAT IS THE JACQUELYN WHITE MEMORANDUM ON
                        Page 90
```

Rough Transcript of Bailey & Robey Depo.txt

2   FEBRUARY 19, 2004, DID YOU RECEIVE ANY

3   INSTRUCTIONS FROM CMS EMPLOYEES TO PLACE HOLDS ON

4   DOCUMENTS IN THE CMS WAREHOUSE?

5       A    NO.

6       Q    AND SO, IS THERE ANYBODY ELSE THAT

7   WOULD HAVE INPUT OF RECORDS HOLD INTO THE CMS

8   DATABASE THAT YOU DESCRIBED OTHER THAN YOU?

9       A    I HAVE A PERSON WHO IS MY BACKUP BUT

10  SHE ONLY GOES INTO THE SYSTEM TO GENERATE

11  ACCESSION NUMBERS OR TO DO THE DISPOSAL PROCESS.

12      Q    AND SO TO THE BEST OF YOUR KNOWLEDGE,

13  WERE ANY DOCUMENTS IN THE CMS WAREHOUSE HELD AND

14  PRESERVED FROM DESTRUCTION AS A RESULT OF THE

15  FEBRUARY 19, 200 H MEMORANDUM FROM JACQUELYN

16  WHITE?

17            MS. MARTINEZ:  OBJECTION TO FORM.

18            MS. THOMAS:  OBJECTION.

19            THE WITNESS:  NOT THAT I'M AWARE OF.

20      Q    WOULD YOU KNOW WHETHER DOCUMENTS WERE

21  COLLECTED FROM THE CMS WAREHOUSE FOLLOWING THE

22  FEBRUARY 19, 2004 MEMORANDUM FROM JACQUELYN

120

            ROUGH DRAFT - UNEDITED TRANSCRIPT
1   WHITE?

2            MS. MARTINEZ:  OBJECTION TO FORM.

3            MS. THOMAS:  OBJECTION.

4            THE WITNESS:  WHEN BOXES ARE

5   REQUESTED FROM THE WAREHOUSE, THEY DON'T GIVE ME

6   THE REASON.  THEY'RE THE RECORD OWNERS THEY NEED

7   THE BOXES BACK TO BE ABLE TO ACCESS TEAR

8   INFORMATION AND FILES.  THEY DON'T GIVE ME A

Page 91

# EXHIBIT 3

# JONES DAY

51 LOUISIANA AVENUE, N.W. · WASHINGTON, D.C. 20001-2113
TELEPHONE: (202) 879-3939 · FACSIMILE: (202) 626-1700

Direct Number: (202) 879-5562
dstorborg@jonesday.com

January 29, 2007

VIA EMAIL

James J. Breen
The Breen Law Firm
P.O. Box 297470
Pembroke Pines, Florida 33029-7470

Re:     *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.,*
        *MDL No. 1456/Civil Action No. 01-12257-PBS*

Jim:

On April 13, 2006, Ven-a-Care filed a Notice of Filing Redacted Complaints as to Defendant Abbott Laboratories. The notice requested that redacted copies of Ven-a-Care's complaints be unsealed. The notice identified the redacted complaints as follows: "Original Complaint file[d] on or about June 23, 1996; Second Amended Complaint filed on or about August 13, 1997; Third Amended Complaint filed on our about December 9, 1999 and Fourth Amended Complaint filed or about December 11, 2002." We wanted to verify a few points regarding that filing.

First, while the Notice of Filing Redacted Complaints as to Defendant Abbott Laboratories indicates the Original Complaint was filed on or about June 23, 1996, the Certificate of Service for the Original Complaint is dated June 23, 1995. The case number also suggests the Original Complaint was filed in 1995. Can you verify that the original complaint was filed on June 23, 1995, not June 23, 1996?

Second, did Ven-a-Care file a First Amended Complaint between the Original Complaint and the Second Amended Complaint? If there is a First Amended Complaint, we would like a copy.

Third, did Ven-A-Care obtain leave of Court in connection with each of its amended complaints?

Very truly yours,

/s/ David S. Torborg

David S. Torborg

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MILAN · MOSCOW · MUNICH · NEW DELHI · NEW YORK · PARIS · PITTSBURGH
SAN DIEGO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

JONES DAY

James J. Breen
January 29, 2007
Page 2

cc:    Renée Brooker
        Gejaa Gobena
        Justin Draycott
        Ana Maria Martinez
        Ann St. Peter-Griffith
        John Neal
        James J. Breen
        Neil Merkl
        Sarah L. Reid