**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| *State of Montana v. Abbott Labs., Inc., et al.*, Cause No. CV-02-09-H-DWM (D. Mont.) | Judge Patti B. Saris |

**MONTANA'S MEMORANDUM IN OPPOSITION TO DEFENDANT**
**ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION .......................................................................................................... 1

II.    SUMMARY JUDGMENT STANDARDS ...................................................................... 1

III.   BACKGROUND ............................................................................................................ 2

IV.   ARGUMENT ................................................................................................................. 3

     A.    Montana Over-Reimbursed Providers for Abbott Subject Drugs
           Based on AWP ................................................................................................... 3

     B.    Abbott Subject Drugs Biaxin and Depakote Should Remain in
           the Case ............................................................................................................. 6

     C.    Abbott's "Government Knowledge" Defense Regarding Its HPD
           Products and Erythromycin Offers No New Evidence and Fails for
           the Reasons Montana Previously Submitted ...................................................... 8

     D.    Montana's Claims are Timely ........................................................................... 10

V.    CONCLUSION ............................................................................................................ 12

## TABLE OF AUTHORITIES

**PAGE**
### FEDERAL CASES

*Bibeau v. Pacific Northwest Resource Found., Inc.*,
  188 F.3d 1105 (9th Cir. 1999) ....................................................................................... 11

*In re Massachusetts Diet Drug Litig.*,
  338 F. Supp. 2d 198 (D. Mass. 2004)............................................................................. 11

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  412 F.3d 215 (1st Cir. 2005)........................................................................................... 12

*O'Connor v. Boeing N. Am., Inc.*,
  311 F.3d 1139 (9th Cir. 2002) ....................................................................................... 11

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  2007 U.S. Dist. Lexis 26601 (D. Mass. Mar. 22, 2007).................................................. 4

*In re Swine Flu Prods. Liab. Litig.*,
  764 F.2d 637 (9th Cir. 1985) ......................................................................................... 11

### STATE CASES

*Osterman v. Sears*,
  318 Mont. 342 (2003)..................................................................................................... 11

### STATE STATUTES

MONT. ADMIN. R. 37.86.1101 .................................................................................................. 4

MONT. CODE ANN. § 17-8-231 .................................................................................................. 3

MONT. CODE ANN. § 27-2-211 ................................................................................................ 10

MONT. CODE ANN. § 30-14-101 ................................................................................................ 3

MONT. CODE ANN. § 53-6-160 .................................................................................................. 3

- ii -

## I.   INTRODUCTION

Abbott Laboratories ("Abbott") seeks summary judgment on several bases in addition to those in which it joined in the Defendants' Joint Motion For Summary Judgment (Dkt. No. 3647) ("Defs' Jt. Mem."). These bases include Montana's use and disuse of Abbott direct price; claims that Abbott did not manipulate or market the spread for two of its drugs; and "government knowledge." In pursuit of individual judgment, Abbott purports to submit the best evidence distinguishing it from the other defendants for particular treatment. Abbott fails. Abbott's arguments raise numerous questions of material fact that should be resolved by the jury. Furthermore, the arguments are weakly supported by its expert's opinion rather than "undisputed fact."[1]

## II.   SUMMARY JUDGMENT STANDARDS

The State incorporates the summary judgment standards set forth in its Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment ("MT Opp. To Defs' Jt. Summ. J. Mot.") (Dkt. No. 3902) and the summary judgment standards well known to the Court and to the parties. The State also adopts and incorporates the submissions made on behalf of Nevada

---

[1] Abbott's motion is principally supported by the expert declaration of Steven J. Young on Behalf of Abbott Laboratories Relating to Montana. The State has not had the opportunity to probe Abbott expert Steven J. Young's opinion as Abbott has provided the State with none of Mr. Young's supporting data or other materials. *See generally* State of Montana's Response to Defendant Abbott Laboratories' Local Rule 56.1 Statement of Undisputed Material Facts In Support of Its Motion For Summary Judgment ("MT Resp. to Abbott L.R. 56.1 Stmt.") Abbott's Local Rule 56.1 statement ("Abbott L.R. 56.1 Stmt.") does not comply with the Rule 56.1 requirement that it contain only "the material facts of record." Instead the Abbott L.R. 56.1 Stmt. is composed principally of the unsupported opinion of its expert, Steven J. Young, with no support for the purported "facts." The State objects to the Abbott L.R. 56.1 Stmt. on this basis. As Defendants point out in their Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants ("Defs' Jt. Opp."), Abbott's failure to submit a proper L.R. 56.1 statement "flouts the rules and serves as an independent basis to deny its Motion." "*See Dale v. H.B. Smith Co.*, 910 F. Supp. 14, 20-21 (D. Mass. 1995); *In re Atlantic Fin. Mgmt., Inc. Sec. Litig.*, 718 F. Supp. 1003, 1007 (D. Mass. 1988)." Defs' Jt. Opp. at 2 n.1 (parentheticals omitted).

and Montana in opposition to each of the Defendants' individual motions for summary judgment.[2]

## III.   BACKGROUND

Attorney General Mike McGrath brought this action to enforce state laws and to protect the State's Medicaid program and the well-being of Montana citizens who make prescription drug payments or co-payments based on Average Wholesale Prices ("AWPs").

The claims and the scope of the lawsuit have been refined since its initial filing.  At this juncture, the State pursues monetary damages on behalf of the State Medicaid program only and only for the damages and penalties calculated by Ray Hartman, Ph.D, the State's expert, and set forth in the Hartman Declarations.  Breckenridge Decl., Exs. 1-2.  The damages the State claims constitute penalties for violations of Montana state statutes.  Dr. Hartman has calculated defendant-specific overcharges only for certain defendants because of the State's inability to obtain data from certain drug manufacturers.  *See* Breckenridge Decl., Ex. 1 Table 1. Dr. Hartman did not calculate overcharges for Abbott.  *Id.*  Abbott and its co-defendants have had this information since June 2006, when Dr. Hartman's declarations were submitted.  Abbott and its co-defendants had the opportunity to examine Dr. Hartman, in August 2006, on these and other issues at his deposition in the Montana and Nevada state cases.

The refinement of Montana's claim for damages does not alter the core allegations of the case:  the evidence shows that Abbott, and every other defendant, reported false AWPs for its Subject Drugs knowing that the Montana Medicaid program, among other payors, would rely on them as a basis for reimbursement and further knowing that Abbott's AWPs were not the

---

[2] Counter-designations of deposition transcripts and documents cited herein are attached to the Declaration of Jeniphr Breckenridge in Support of the States of Nevada and Montana's Memoranda In Opposition to Individual Defendants' Motions for Summary Judgment and are referred to as "Breckenridge Decl., Ex. __".

"average wholesale prices" Abbott purported them to be.  Abbott did this despite the plain and ordinary meaning of the term "average wholesale price," which this Court has found to mean "the average price at which wholesalers sell drugs to their customers, including physicians and pharmacies."  *In re Pharm. Indus. Average Wholesale Price Litig.*, (Nov. 2, 2006 Order at 1-2) (Dkt. No. 3299).  This Abbott conduct caused Montana harm in that all reimbursements made based on Abbott's inflated AWPs resulted in overpayments by the State Medicaid program.

The reporting of the false information alone violates the Montana Unfair Trade Practices Act, MONT. CODE ANN. §§ 30-14-101, *et seq.*, Montana's Medicaid fraud statute MONT. CODE ANN. §§ 53-6-160, *et seq.*, and the Montana False Claims Act, MONT. CODE ANN. §§ 17-8-231, *et seq.*  In addition, the evidence shows that Abbott manipulated the spread, but even if it did not for certain drugs – as Abbott contends with respect to Biaxin and Depakote[3] – it has violated the statutes sued upon by the reporting of false information in the form of inflated AWPs.  The reporting of the inflated AWPs caused the State to overpay for Subject Drugs, including the Abbott Subject Drugs.[4]  This misconduct subjects them to penalties under the Montana statutes.

## IV.   ARGUMENT

## A.   Montana Over-Reimbursed Providers for Abbott Subject Drugs Based on AWP

Abbott argues that judgment should be entered in its favor because Montana "rarely reimbursed based on AWP and when it did use AWP it violated its own rules," and because Montana "abandoned direct price . . . in favor of AWP based reimbursement."  Abbott Mem. at 4-7.  There is a genuine dispute as to the "facts" supporting Abbott's argument.  The state

---

[3] Defendant Abbott Laboratories' Memorandum in Support of Its Motion for Summary Judgment ("Abbott Mem.") at 2.

[4] "Subject Drugs" refers to the drugs sued upon in this case, as identified in Montana's Second Am. Compl., Ex. A (Breckenridge Decl., Ex. 5).

- 3 -

submits that it did base reimbursement on AWP during the relevant time period – even if it did

not do so for every transaction, it did so for all transactions after July 2001.  Mont. Resp. to

Abbott L.R. 56.1 Stmt. ¶¶ 25-27, 29-30.  And it never "abandoned" direct prices which the

evidence shows was never available to Montana providers in the first place.  *Id.*

Abbott's own arguments are inconsistent and undermine its request for summary

judgment based on direct price.  Abbott admits that Montana Medicaid reimbursed based on

AWP both prior to 2001 (but contends that it did so only rarely) and after 2001.  *Id.* at 5.  But,

Abbott contends Montana should have used Direct Price rather than AWP.

It is undisputed that regulations under which the Montana Medicaid pharmacy program

reimburses for pharmaceuticals define Estimated Acquisition Cost ("EAC") as:

> the cost of drugs for which no maximum allowable cost (MAC)
> price has been determined.  The EAC is the department's best
> estimate of what price providers are generally paying in the state
> for a drug in the package size providers buy most frequently.  The
> EAC for a drug is:
>
> (a) the direct price (DP) charged by manufacturers to retailers;
>
> (b) *if there is no available DP for a drug or the department
> determines that the DP is not available to providers in the state*,
> the EAC is the average wholesale price (AWP) less 15%; or
>
> (c) the department may set an allowable acquisition cost for
> specified drugs or drug categories when the department determines
> that acquisition cost is lower than 1(a) or (b) based on data
> provided by the drug pricing file contractor.

MONT. ADMIN. R. 37.86.1101 (2006) (emphasis added).  Direct Price issues from the same

source as AWP:  the drug's manufacturer.  As the Court recently held in upholding California's

complaint (in part) in *In re Pharm. Average Wholesale Price Litig.*, 2007 U.S. Dist. Lexis 26601,

at *22 (D. Mass. Mar. 22, 2007), the Direct Price for a drug, like the AWP and FUL, "is

published in various price reporting services, known as compendia, such as First DataBank."  *Id.*

- 4 -

Also like AWP, First DataBank compiles "drug pricing information from the manufacturers of the various drugs, and then bases its published pricing data on this information. . . . As a result, drug makers can effectively fix the AWP and DP of their own drugs." *Id.* The "if there is no available DP for a drug or the department determines that the DP is not available to providers in the state, the EAC is the average wholesale price (AWP) less 15%" is important to rebut Abbott's claim that Montana "should have used direct price." Extensive evidence on the record establishes that Direct Price was *not* generally available to Montana pharmacies and other providers. Dorothy Poulsen, the Medicaid pharmacy officer from 1996 to 2001, testified that she did not specifically recall Direct Price:

> 'b]ecause I never used direct price. It was not something . . . we used or referred to. . . . There would have been so few instances where there would have been a direct price from the manufacturer to the pharmacist.

Breckenridge Decl., Ex. 40 (Poulsen Dep. Tr. at 152). Montana Medicaid personnel testified about the unavailability of direct price in Montana. Montana Medicaid eventually discontinued its use of direct pricing as a reimbursement measure on July 1, 2002 which "enthused" pharmacies "[b]ecause the pharmacies were unable to acquire drugs at the direct price." *Id.* at 189. There is extensive additional evidence on the record of the unavailability of Direct Price to Montana providers. *See* Mont. Resp. to Abbott L.R. 56.1 Stmt. at ¶¶ 25-27, 29-30. Because Direct Price was not available in the State, the Medicaid program was used the discounted AWP price set by the Rule. MONT. ADMIN. R. 37.86.1101 (2006).

Abbott has offered no evidence that direct pricing was available to Montana providers participating in the Medicaid pharmacy program. Abbott states that "all of the Abbott Subject Drugs had a direct price," Abbott L.R. 56.1 Stmt. ¶ 25, yet the only support for this purported fact is expert witness Young's statement that direct pricing was available nationally to "large

- 5 -

chains." Young Abbott Mt. Rept. ¶¶ 40-41. This opinion is particularly irrelevant in Montana where it is undisputed that the pharmacy population is largely comprised of small retail pharmacies and chains.

Even Mr. Young's opinion on this point equivocates. Mr. Young is forced to concede that at best "other retail pharmacies, which purchased from wholesalers, ***likely*** paid at ***or above direct price***." Young Decl. at ¶ 43 (emphasis added). This limited opinion, unsupported by the submission of any extrinsic sources of fact or data, clearly does not meet the standard for judgment. Like Abbott, Mr. Young does not submit evidence that direct pricing for Abbott Subject Drugs in Montana, to Montana pharmacies or Montana Medicaid. Abbott does not submit any evidence showing ***which*** Abbott Subject Drugs were purportedly available at direct price or for what time period. And Mr. Young does not address Medicaid staff testimony regarding direct pricing which contradicts his general opinion with evidence specific to Montana and Montana Medicaid. *See* Young Decl. at ¶¶ 40-46.

**B.    Abbott Subject Drugs Biaxin and Depakote Should Remain in the Case**

Abbott submits two arguments it considers unique to its branded drugs –Biaxin and Depakote – suggesting that even if claims are maintained against it for other drugs, the Court should enter judgment as to Biaxin and Depakote. First, Abbott argues it did not manipulate the spread for these two drugs because it had no incentive to do so. Thus, Abbott, suggests without coming out and stating so – the State has no claim. But even if were true that Abbott did not manipulate the spreads for these two drugs, Abbott's argument does not lead to judgment. The State's claims against Abbott and other defendants are based on the reporting of false AWPs and the manipulation of the spread. Both the reporting of false information and the manipulation of

- 6 -

the spread represent actionable and punishable misconduct.  The two are not dependent; each

provides a basis for liability.

Abbott's second argument concerning Biaxin and Depakote fails for similar reasons.

Abbott argues that Montana actually paid less than the market price for Biaxin and Depakote due

to rebates Abbott paid.  Abbott does not submit any evidence of the rebates it paid, other than to

cite the federal statute setting up the rebate program and to characterize them as "substantial."

Defs' Jt. Mot. at 10.  The fact that Abbott was required by statute to pay rebates does not nullify

its misconduct in providing inflated AWPs in the first place.  Montana seeks ***penalties*** here.  If

the statutes have been violated, as Montana submits they have, the penalties apply irrespective of

the rebate program.  There is no authority for any argument that the amount of the rebates should

be used to offset any penalties.  Dr. Hartman discusses the role of rebates in assessing penalties

in the Hartman Montana Decl. at ¶ 32.  Because they are based on AMP and not AWP, the

rebates would be the same whether the AWPs were inflated or not.  In other words, Montana was

entitled to the rebates on top of uninflated average wholesale prices.  It would be unfair to allow

Abbott to take advantage of money it was obligated to pay the state by federal statute to avoid

penalties here.  Moreover, Abbott has not submitted any evidence that the amount of rebates paid

to Montana in connection with Biaxin and Depakote are equivalent to the amount by which the

AWPs for these two drugs were inflated.

Abbott, the moving party, bears the burden on summary judgment.  That burden has not

been met with respect to Biaxin and Depakote.

- 7 -

**C.    Abbott's "Government Knowledge" Defense Regarding Its HPD Products and Erythromycin Offers No New Evidence and Fails for the Reasons Montana Previously Submitted**

Abbott re-argues the government knowledge defense relied on by all defendants in their joint motion to defense.  Thus, each point will only be addressed briefly here.[5]

The State denies knowledge that "it could reimburse HPD products and erythromycin at less than AWP."  Abbott Mem. at 11.  After dozens of depositions and tens of thousands of pages of discovery and a significant electronic production, Abbott still can adduce no evidence that Montana Medicaid personnel had knowledge that the AWPs for Abbott subject drugs, including the HPD products and Erythromycin, were inflated.  Abbott relies solely on the opinion submitted by Mr. Young to support this argument.  Mr. Young's opinion is premised on the national availability of direct price, but Montana's evidence contradicts the availability of direct price in Montana.  *See supra* at § IV.A.  Further, Mr. Young's opinion is not supported by anything other than a sampling of data for *one HPD drug* (Sodium Chloride Bacteriostatic) for *one quarter* in 1997.  *See* Young Decl. at ¶¶ 62-63.  Mr. Young's opinion also misses the point when it comes to government knowledge, among other topics.  Young Decl. ¶¶ 59-67.
Mr. Young's opinion (and it is opinion, not fact) focuses on an analysis of a single Abbott drug and the availability of a published direct price for that drug in First DataBank and Red Book and the Abbott pricing catalog.  Abbott submits no evidence that this information was even in the hands of the Medicaid program where the program relied on an outside vendor to process its

---

[5] The only unique argument Abbott raises is that State expert Hartman calculates penalties for Abbott's HPD division drugs "well past April 2004," the date Abbott spun off its hospital products division.  The new company, Abbott claims, is separate and independent.  If this is the case and Abbott can offer evidence to support the contention other than Mr. Young's unsubstantiated opinion, the State will withdraw its claims for post-2004 HPD Subject Drugs.  This is not, however, a basis for judgment on any particular State claim.  Rather it is a potential basis for Dr. Hartman to recalculate damages.

- 8 -

pharmacy reimbursement/claims.  *Id.*  There is nothing in Mr. Young's opinion that demonstrates
Montana Medicaid knowledge that Abbott's AWPs were inflated.

The fact that certain non-Medicaid agencies in Montana may have purchased Subject
Drugs for less than the price at which Montana Medicaid reimbursed the same drugs is also not
dispositive of State knowledge.  Young Decl. ¶ 67.  Montana has previously briefed the
difference between drug *purchase* and *reimbursement*.  Montana Medicaid *reimbursed* for
drugs.  Importantly, there is no evidence that Montana Medicaid had knowledge of non-
Medicaid State entities' drug purchasing or reimbursement practices.  Mont. Resp. to Defs' Jt.
L.R. 56.1 Stmt. ¶ 7.  Moreover, no defendant has been able to cite any legal authority for
imputing the knowledge of one unrelated State agency to another.  Montana Medicaid personnel
have testified that they did not have a formal or informal process for exchanging drug pricing
information with other agencies.  *Id.*  Nor would they have had the time.  The drug pricing
practices of other agencies simply are not a source of Montana Medicaid knowledge.

At best, Abbott's individual government knowledge arguments reiterate earlier joint
submissions regarding the availability of federal reports describing AWP pricing discrepancies
for discrete drugs at specific times.  These reports did not give rise to the general notice required
to put the State and other payors on notice of systemic problems that extended to all Subject
Drugs – or even to all Abbott Subject Drugs.  Abbott cites the example of Vancomycin and
Leucovorin Calcium, which appeared in government reports.  Abbott submits no other evidence
related to its Subject Drugs.  And, Abbott submits no evidence that Medicaid personnel received
or reviewed these reports.  Abbott cites Abbott L.R. 56.1 Stmt. ¶ 39 [sic] for the proposition that
Montana Medicaid officials reviewed publications it received from OIG.  But this is not the
testimony.  Duane Preshinger, Acute Services Bureau Chief, whose testimony Abbott relies on,

testified that he receives OIG reports and may send them to be reviewed, but there is no testimony that every report ever issued by OIG was reviewed – and there is not testimony about how the reports were handled before.[6]

As for Abbott's argument that summary judgment should be granted because the volume of Abbott's HPD Subject Drugs to retail pharmacies is "inconsequential," if supported properly – this argument goes to the measure of penalties and does not provide an independent basis for summary judgment.

**D.      Montana's Claims are Timely**

All claims brought by the State are timely.  Abbott's argument concerning the statute of limitations is predicated on its government knowledge argument and offers nothing unique to Abbott.  The themes are identical to those in the Defendants' Joint Motion, in which Abbott joined.  Defs' Jt. Mem. at 40-42 (Dkt. No. 3647).  Thus, Montana only addresses them briefly here.

The original complaint in this action was filed in February 2002.  The two year statute of limitations under MONT. CODE ANN. § 27-2-211 (2005) covers claims that had accrued as of February 2000.  The statute of limitations for claims prior to this date was tolled by virtue of both the discovery rule and the doctrine of fraudulent concealment.  The State has submitted sufficient proof demonstrating that the State had neither actual nor constructive knowledge of facts giving rise to their claims prior to February 2000 and that Defendants fraudulently concealed facts that, if revealed earlier, would have given the State notice of those claims.

Under Montana law, as a general rule, the statue of limitations for actions based on fraud begins to run when the fraud occurs, unless the facts forming the basis for the alleged fraud are,

---

[6] *See* Mont. Resp. to Abbott L.R. 56.1 Stmt. ¶ 40.

by their nature, concealed, or the defendants takes affirmative action to prevent the plaintiff from discovering the injury. *Osterman v. Sears*, 318 Mont. 342, 350 (2003).

The defendant must take affirmative action to conceal the fraud in order to toll the statute of limitations. The proper inquiry is whether the aggrieved party "discovered, or reasonably should have discovered, the facts constituting the alleged fraud and deceptive practices more than two years prior to filing suit." *Id.* at 352. The answer in this case is no. This is not a case like *Osterman* where the facts constituting the fraud were laid out in a document that Mrs. Osterman received at the time she contracted for the home improvement. Here, the AWPs – ***average wholesale prices*** – were misleading by the very name. There is not evidence that the State knew or could have discovered that the entire AWP reimbursement scheme was flawed because the AWPs publicly reported were inflated. Each and every defendant acted to conceal the true prices from Montana Medicaid and the public. MT Resp. to Abbott's Jt. L.R. 56.1 Stmt. at 48.

The inquiry under the discovery rule is a fact-intensive one. Courts consider a number of factors in determining whether plaintiff received actual or constructive notice sufficient to trigger the statute of limitations: (i) evidence of actual knowledge; (ii) notoriety of publicly-available information; (iii) reasonable inferences to be drawn from any publicity; and (iv) whether a reasonable inquiry would have put plaintiffs on notice of their claims. *In re Massachusetts Diet Drug Litig.*, 338 F. Supp. 2d 198, 203 (D. Mass. 2004).[7] In evaluating the timing of plaintiff's knowledge, Massachusetts courts have made it clear that they do not "equate suspicion with knowledge"; suspicion alone will not put a plaintiff on notice of his or her claims.

---

[7] The court embraced Ninth Circuit precedent applying the same factors. *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139 (9th Cir. 2002); *Bibeau v. Pacific Northwest Res. Found., Inc.*, 188 F.3d 1105, 1110 (9th Cir. 1999); *In re Swine Flu Prods. Liab. Litig.*, 764 F.2d 637 (9th Cir. 1985).

- 11 -

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 240, (1st Cir. 2005).

The State alleges that Abbott fraudulently concealed its conduct from the State and others and despite all due diligence, the State did not and could not uncover the conduct. SAC ¶¶ 635-43. Abbott has admitted that its AWPs are based upon a certain formula and that formula is based on the product list which is determined by the manufacturer, but does not relate to the actual sales price. *See*, *e.g.*, Breckenridge Decl., Ex. 43 (1993 Abbott memorandum to *Red Book*, ABT AWP/MDL 044893); *Id.*, Ex. 44 (ABT AWP/MDL 044287-316).

This evidence reflects Abbott knowledge that Montana Medicaid and others used the AWPs reported by the national compendia as a basis for drug reimbursement. *See*, *e.g.*, Breckenridge Decl., Ex. 45 (ABT AWP/MDL 006499). But there is ***no*** evidence that Abbott made Montana Medicaid, other payors or the public aware of the truth about the "average wholesale prices" it published or caused to be published. Abbott took affirmative steps to conceal this conduct. Abbott did so by knowingly, willfully and intentionally concealing its "actual average price" for each Subject Drug by withholding data on actual sales prices and discounts each time it reported the AWP. *See*, *e.g.*, Breckenridge Decl., Exs. 46-49 (ABT AWP/MDL 071942-43, ABT AWP/MDL 072200, ABT AWP/MDL 006305-34 at 006333).

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment should be denied. On each issue raised by Defendants, material issues of fact exist for resolution by the jury.

By_____/s/ Steve W. Berman_____        DATED:  April 26, 2007
    Steve W. Berman
    Sean R. Matt
    Jeniphr A.E. Breckenridge
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Mike McGrath
    Attorney General of Montana
    Ali Bovingdon
    Assistant Attorney General
    Justice Building
    215 North Sanders
    P.O. Box 201401
    Helena, MT  56920-1402
    (406) 444-2026

    COUNSEL FOR PLAINTIFF
    STATE OF MONTANA

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA'S MEMORANDUM IN OPPOSITION TO DEFENDANT ABBOTT LABORATORIES' MOTION FOR SUMMARY JUDGMENT,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By_____/s/ Steve W. Berman_____
     Steve W. Berman
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
     1301 Fifth Avenue, Suite 2900
     Seattle, WA  98101
     (206) 623-7292

- 14 -

001534-15 162826 V1