## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| *State of Montana v. Abbott Labs., Inc., et al.*,<br>Cause No. CV-02-09-H-DWM (D. Mont.) | Judge Patti B. Saris |
| *State of Nevada v. American Home Prods. Corp.*, *et al.*,<br>Cause No. 02-CV-12086-PBS | |

## NEVADA AND MONTANA'S OPPOSITION TO AVENTIS PHARMACEUTICALS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     SUMMARY JUDGMENT STANDARDS ................................................................. 2

III.    BACKGROUND ........................................................................................................ 2

     A.      The Claims and the Scope of the States' Claims Have Been Refined Since the Lawsuits Were Filed ........................................................................................... 2

     B.      Aventis Submits Inadequate Evidence to Support Partial Summary Judgment ...... 3

IV.    ARGUMENT ............................................................................................................. 6

     A.      The Undisputed Material Facts Demonstrate That Aventis's Pricing and Price Reporting Were Deceptive and Unfair and Thus Violated the States' Statutes ...... 6

           1.      Aventis published or caused to be published AWPs during the entirety of the relevant time period ........................................................... 6

           2.      The publication of phony AWPs violates the States' consumer protection statutes ..................................................................................... 8

           3.      The same conduct violates the Medicaid fraud statutes and Montana's False Claims Act ................................................................................... 10

           4.      Aventis's other arguments do not nullify the unfair and deceptive nature of its conduct ............................................................................. 10

     B.      Aventis's Conduct Violates the States' Statutes Whether or Not it Marketed the Spread on Its Self-Administered Drugs ......................................... 11

V.      CONCLUSION ........................................................................................................ 12

001534-15  164132 V1

# I.  PRELIMINARY STATEMENT

Aventis Pharmaceuticals Inc. ("Aventis") seeks summary judgment on several bases in addition to those in which it joined in the Defendants' Joint Motion for Summary Judgment in the Montana matter (Dkt. No. 3646) (Defs' MT Jt. Mot."). Here, Aventis argues that it is entitled to partial summary judgment "on all claims relating to Aventis's self-administered drugs asserted by the States of Montana and Nevada."[1]  In pursuit of its individual motion, Aventis purports to submit the best evidence distinguishing it from the other defendants for particular treatment on summary judgment. Aventis fails. Aventis's arguments raise numerous questions of material fact that should be resolved by the jury, as demonstrated below. Furthermore, the arguments are weakly "supported" by its expert's *unsupported* opinions and testimony excerpts that do not stand for the propositions for which they are proffered.[2]

The Court should deny Aventis's motion for partial summary judgment for the following reasons:

> (i)  Aventis concedes that it reported AWPs for the drugs which are the subject of its motion for the first ten years of the time period for which the States seek damages;

> (ii)  After that time period, the evidence is disputed:  Aventis claims it stopped providing AWPs directly, but the States respond

---

[1] Aventis Pharamceuticals Inc.'s Memorandum of Law in Support of Its Motion for Partial Summary Judgment ("Aventis Mem.") at 1.

[2] *See generally* States of Montana and Nevada Response to Defendant Aventis Pharmaceuticals Inc.'s Local Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Partial Summary Judgment ("States Resp. to Aventis L.R. 56.1 Stmt."). In addition, the States note that Aventis's reliance on deposition testimony from other AWP cases is inconsistent with Aventis's joinder in the Defendants' Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants ("Defs' MT Jt. Opp.") (Dkt. No. 3884). There, Aventis and others strenuously objected to Montana's use of "[t]estimony from the MDL trial in which there has not yet been a decision, documents that are not communications or evidence related to the State, . . . and proposed findings of fact from different plaintiffs in another case." Defs' MT Jt. Opp. at 1 n.1. Aventis and their co-defendants state that the inclusion of such materials "flouts the rules and serves as an independent basis to deny its motion." *Id.* Aventis does not distinguish their use of materials from other forums from the States' use of the same. In any event, Aventis and others are wrong about the propriety of including materials from the MDL proceedings in these cases. It would be a waste of resources to expect every factual point to be re-established in every case consolidated before the Court.

that Aventis has not provided evidence sufficient to prove this *and* that even if Aventis did stop reporting the data directly, the evidence shows that Aventis continued to provide data it knew would be used by the publishers to calculate AWPs that would be provided to the States for use as a basis of reimbursement in their Medicaid programs;

(iii)  For all relevant times, Aventis reported or caused to be reported AWPs used by the States;

(iv)  The AWPs did not represent the average wholesale prices Aventis purported them to be; and

(v)  This conduct violated the state statutes under which the Attorneys General of Montana and Nevada have brought suit.

## II.    SUMMARY JUDGMENT STANDARDS

The States incorporate the summary judgment standards set forth in its Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment (Dkt. No. 3902) and the summary judgment standards well known to the Court and to the parties for particular treatment on summary judgment.[3]

## III.    BACKGROUND

### A.    The Claims and the Scope of the States' Claims Have Been Refined Since the Lawsuits Were Filed

The claims and the scope of the lawsuit have been refined since its initial filing.  At this juncture, the States pursue monetary damages, principally in the form of penalties, on behalf of their State Medicaid programs only and only for the damages and penalties calculated by Raymond Hartman, Ph.D, the State's expert, and set forth in the Hartman Declarations. Breckenridge Decl., Exs. 1-4.  The damages the States claim constitute penalties for violations of

---

[3] The State also incorporates its responses to the L.R. 56.1 statements filed by individual defendants other than Aventis and the fact statements set forth in Montana's opposition briefing to the individual summary judgment motions filed by individual defendants.  Deposition transcripts and documents cited herein are attached to the Declaration of Jeniphr Breckenridge In Support of the States of Nevada and Montana's Memoranda In Opposition to the Individual Defendants' Motions for Summary Judgment and are referred to as "Breckenridge Decl., Ex. ___".

- 2 -

Montana and Nevada state statutes.  Dr. Hartman has calculated defendant-specific overcharges only for certain defendants because of the State's inability to obtain data from certain drug manufacturers.  *See* Breckenridge Decl., Ex. 1, Table 1; *Id.*, Ex. 3 Table 1.[4]  Dr. Hartman has also not calculated damages of any type for physician-administered drugs.  *See id.*, Ex. 1 at ¶¶ 22(c), 28-30, 33(b); Ex. 3 at ¶¶ 23(c), 29-31, 34(b).  Aventis and its co-defendants have had this information since June 2006, when Dr. Hartman's declarations were submitted.  Aventis and its co-defendants had the opportunity to examine Dr. Hartman on these and other issues at his deposition in the Montana and Nevada state cases in August 2006.

The States offer the preceding detail to clarify their position which has been muddied by the arguments of Aventis and other defendants.  None of the above changes the core allegations of the case:  each and every defendant reported false AWPs.  The reporting of the false information alone violates the Montana Unfair Trade Practices Act, MONT. CODE ANN. § 30-14-101, *et seq.*; the Montana Medicaid fraud statute, MONT. CODE ANN. § 53-6-160, *et seq.*; the Montana False Claims Act, MONT. CODE ANN. § 17-8-231 *et seq.*; the Nevada Deceptive Trade Practices Act, NEV. REV. STAT. §§ 598.0903, *et seq.*; and the Nevada Medicaid fraud statute, NEV. REV. STAT. §§ 422.540 and 422.580.

**B.      Aventis Submits Inadequate Evidence to Support Partial Summary Judgment**

Importantly, here, much of the evidence Aventis submits to support its motion for partial summary judgment does not support the "facts" for which it is proffered.

Aventis admits that for the first ten years of the time period relevant to these lawsuits (1991 to 2001), it reported AWP to the pricing publications.  Aventis Mem. at 4-5.  These AWPs

---

[4] Dr. Hartman calculated overcharge damages for certain Aventis drugs: Anzemet and Taxotere.  Breckenridge Decl., Ex. 1, Table 1; *Id.*, Ex. 3, Table 1.  These drugs are physician-administered drugs and thus are not the subject of Aventis's motion for summary judgment which is limited to Aventis's self-administered Subject Drugs.  Aventis Mem. at 1.

"were calculated by adding either 20% or 25% to the product's WLP." *Id.* at 5.  Beginning in

August 2001, Aventis claims, it stopped reporting AWPs to publishers and beginning in 2000, it

included a disclaimer concerning the nature of its WLP.  *Id.*  The evidence Aventis offers to

prove these assertions does not.  Aventis submits a handful of "Dear Pharmaceutical Buyer"

letters from four dates – January 19, 1999, January 26, 2000, October 11, 2000 and August 2,

2001).  *See* Matye Decl. at Ex. C.  Alone they are not enough to establish Aventis's practice.

Moreover, there is absolutely no evidence that "Dear Pharmaceutical Buyer" letters were sent to

publishers or that state Medicaid programs, who were not "pharmaceutical buyers," would have

ever seen them.  The evidence that the State Medicaid programs reimbursed based on AWP is

uncontroverted.  Aventis understood that.  States' Resp. to Aventis L.R. 56.1 ¶ 19, Ex. 61.  Even

if Aventis itself ceased calculating AWP itself, it provided data to publishers it knew would be

used to calculate AWPs for Aventis products that would be provided to the States' Medicaid

programs and others to be used as a basis for reimbursement.[5]

Aventis's argument concerning its efforts to "insure that the company stays within the

CPI for its overall weighted averages of price increases across the entire portfolio of products" is

unavailing for a number of reasons.  Aventis Mem. at 3.  First, this "fact" is unsupported by

anything more than two witnesses' equivocal testimony about unwritten guidelines set ***not*** by the

Aventis Pricing Board, as Aventis states, but by some unspecified person or entity.  According to

the witnesses, the existence of guidelines did not "insure" anything with respect to particular

drugs – including those which are the subject of the Aventis motion for partial summary

---

[5] Internal documents from Aventis's files acknowledge Aventis's and other drug manufacturers' provision of data to the major publications (MediSpan, Red Book Drug Topics, and First DataBank) and the publication of "pharmaceutical product pricing information (average wholesale prices) by the publications.  Breckenridge Decl., Ex. 61 (ABAWP 000846-852 at 847).  It also acknowledged State Medicaid programs' use of the information.  *Id.* ("Both Red Book Drug Topics and First DataBank serve as data resources to all state Medicaid programs.").  The document originated with Centeon, an Aventis predecessor.  *Id.*

- 4 -

judgment – because any "one product could go above the CPI, but as long as the whole portfolio didn't [Aventis] felt [it was] within whatever [its] policy was." Matye Decl. Ex. B at 60:2-5. *See* States Resp. to Aventis L.R. 56.1 Stmt. at ¶¶ 10-11.

Second, Aventis fails to establish – or even adequately explain – any link between the CPI and AWP-based pricing. The issue regarding Aventis pricing in this case is whether Aventis's AWP reflected average wholesale costs, as its plain meaning suggests, or something else. Their relationship to the CPI, if any, is outright irrelevant. This "fact" does not go to the proof of any material point or defense in the case. The measure was intended, apparently, "to keep price increases at or below the CPI." Aventis Mem. at 3. So what? If the initial prices were false because they bore no relationship to average wholesale prices but were inflated (as the States allege and the evidence shows), ensuring that price increases did not exceed – the CPI would not remedy any fraud.

Aventis also argues that "the vast majority of Medicaid reimbursements for self-administered drugs at issue in these cases were made to retail pharmacies who did not receive discounted pricing from Aventis." Aventis Mem. at 4. Whether or not this is true (and the State submits that this is not what admissible evidence shows, *see* States Resp. to Aventis L.R. 56.1 Stmt. at ¶ 17), Aventis's focus is misplaced. The focus here should be on Aventis's conduct – *i.e.*, whether or not Aventis reported false prices to the States for use in Medicaid reimbursement. The States submit that Aventis did and that the provision of the information violated the State statutes under which the Attorneys General have brought suit. *See* Breckenridge Decl., Exs. 1-4 (Hartman Mont. and Nev. Declarations).

- 5 -

## IV.    ARGUMENT

### A.    The Undisputed Material Facts Demonstrate That Aventis's Pricing and Price Reporting Were Deceptive and Unfair and Thus Violated the States' Statutes

Aventis asserts that its pricing and price reporting were neither deceptive nor unfair nor fraudulent under the standards of the two cases it cites – one from New York and one from Hawaii.  Aventis fails to analyze its conduct under the clear and unambiguous language of the statutes on which the States have brought their claims.  The Montana Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices" in the conduct of business.  MONT. CODE ANN. § 30-14-103.  Similarly, the Nevada Deceptive Trade Practices Act, NEV. REV. STAT §§ 598.903 *et seq.*, prohibits "deceptive trade practices" which includes making "false or misleading statements of fact concerning the price of goods in services  *Id.* at 598.0915(12).  Both the Montana and Nevada Medicaid Fraud statutes prohibit the reporting of false information in connection with Medicaid claims.  MONT. CODE ANN. § 53-6-160, NEV. REV. STAT. § 422.540 and the Montana False Claims Act, MONT. CODE ANN. § 17-8-231.

### 1.    Aventis published or caused to be published AWPs during the entirety of the relevant time period

The lynchpin of each of the State's claims against Aventis is Aventis's creation and assistance in establishing AWP as a reimbursement benchmark.  This Court has already agreed in the context of the class case, finding that "[t]he AWP or its formulaic equivalent the WAC (Wholesale Acquisition Cost), is interpreted by industry as the signal for the underlying structure of list and transaction prices for almost all drugs."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 68 (D. Mass. 2005) (quoting Hartman Rebuttal at 3).[6]  And as Dr. Hartman has described:

---

[6] In the class case, so too does Dr. Berndt (Berndt report at 6) and even Abbott's expert Mr. Young (October 25, 2004 Young Rebuttal Report at ¶ 134).

- 6 -

> As a matter of economics, list prices are some of the most
> important signals that all drug manufacturers, particularly
> innovator drug manufacturers, use to strategically place drug
> products in the market.  The two most important list prices are the
> AWP and the WAC (or WLP). . . .  Since there is a well
> understood formulaic relationship between AWP and WAC,
> reporting *either* to the price reporting services implies that *the
> other list price is set automatically.*[7]

Evidence on the record here, including Aventis's own concession, establishes that

Aventis set the AWPs for most of the relevant time period (1991 to 2000).  Even if – as Aventis

claims – it discontinued the direct reporting of AWPs in August 2001, *see supra* at 3-4, Aventis

continued to supply data to the publishers which they knew would be used to set AWPs that

would be provided to Montana and Nevada to be used for reimbursement purposes.  Montana

and Nevada Medicaid personnel, like many other payors, reasonably took the AWPs to be a

signal of actual acquisition costs to pharmacies and other providers.  Buska Decl. ¶ 9 (Dkt.

No. 3906); Poulsen Decl. ¶ 7 (Dkt. No. 3905); Duarte Decl. ¶¶ 17-21 (Dkt. No. 3912); Lawrence

Decl. ¶ 20 (Dkt. No. 3913).  Not only were AWPs the only information most drug manufacturers

provided, based on their belief that there was a rational relationship between AWPs and

acquisition costs, the Medicaid personnel felt confident in using the AWPs to approximate EAC

as they were required to do by the federal government and their own regulations.  *Id.*

If Aventis's relationship to the AWPs was as attenuated as it suggests it would have

suspended the provision of any prices whatsoever to the publishers or would have directed the

publishers to stop using the Aventis name in connection with its publications.  Of course, it did

not and it could not – because providing prices was the only way Aventis could do business with

---

[7] Hartman Decl. Summ. J. Opp., ¶ 27 filed on April 7, 2006 (footnotes omitted; emphasis in original); *see also* Declaration of Raymond S. Hartman in Support of Plaintiffs' Motion for Class Certification filed on September 3, 2004, Attachment D, ¶ 1 (explaining that AWP and WAC are "interchangeable" since "the two list prices are usually related by a constant ratio [and] convey the same information to purchasers and other entities that rely on published price data").

the payors – and the only way Aventis could do business with State Medicaid programs was to cause AWPs for its Subject Drugs to be published.

>2.     **The publication of phony AWPs violates the States' consumer protection statutes**

There is little Montana or Nevada case law interpreting the terms "unfair" or "deceptive" under the States' consumer protection statutes.  Under the circumstances, then, attention turns to cases interpreting the Federal Trade Commission Act.  Disseminating list prices, or in this case AWPs, when fully aware that the list prices are not the usual and customary prices at which the products are sold constitutes unfair and deceptive practices under the Federal Trade Commission Act.

Aventis's conduct in causing the publication of AWPs – which it knew were not prices paid by any purchaser – falls within generally accepted concepts of "unfair and deceptive."  The States submit that Aventis's conduct in connection with the reporting of prices for each of the drugs on which Aventis now seeks summary judgment was deceptive, unfair and fraudulent, and violated the statutes.[8]

Aventis cites two cases – one from Hawaii and one from New York to support its argument that its list prices were neither unfair nor deceptive.  Aventis says that based on these cases – if it can show that it made any actual sales at the list price, its publication of the list prices cannot be deceptive "because the prices are still bona fide as to at least a substantial number of purchasers."  Aventis Mem. at 7.  But this is not the standard.  The standard is whether the conduct had the capacity to deceive or "mislead" the market.  It did.  As the court previously held "AWP means the average price at which wholesalers sell drugs to their

---

[8] Each of the statutory bases for liability were discussed at length in Montana's opposition to the defendants' joint motion for summary judgment and Nevada's opposition to the defendants' joint motion for summary judgment (Dkt. Nos. 3902 and 3910).  Thus, the bases will only be summarized here.

customers, including physicians and pharmacies." *In re Pharm. Ind. Average Wholesale Price Litig.*, Order (Nov. 2, 2006) at 1 (Dkt. No. 3299). This is not what Aventis AWPs for Subject Drugs represented. the Aventis's conduct was deceptive in the Montana and Nevada Medicaid context because it had the tendency to deceive the States.

Aventis's deliberate decision to report AWPs to national pharmaceutical industry publications or list prices with knowledge of how they would be marked up to result in AWPs – knowing that these published AWPs would form the basis of an industry-wide reimbursement system – obligated Aventis by law to ensure that these pricing benchmarks were not misleading. But the AWPs for the Subject Drugs were misleading.

It is axiomatic under statutes prohibiting misrepresentations that "a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 414 (1st Cir. 1985); *see also Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987) (RICO and securities claims). Indeed, the First Circuit has specifically held that "[w]hen a corporation does make a disclosure – whether it be voluntary or required – there is a duty to make it complete and accurate." *Roeder*, 814 F.2d at 26; *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 769-70 (1st Cir. 1996) (seller's failure to disclose that a critical component was missing from system it sold to buyer and its misdirection of the buyer's attention to operator error as the source of the system's problems supported the District Court's conclusion that the seller behaved both unfairly and deceptively under Chapter 93A). "'Fragmentary information may be as misleading . . . as active misrepresentation, and half-truths may be as actionable as whole lies . . . .'" *V.S.H. Realty*, 757 F.2d at 414-15 (quoting *Kannavos v. Annino*, 356 Mass. 42, 48, 247 N.E.2d 708 (1969)). Thus, if a drug manufacturer "chooses to reveal relevant, material information even though it had

- 9 -

no duty to do so, it must disclose the whole truth." *Roeder*, 814 F.2d at 26 (quoting *Grossman v. Waste Mgmt., Inc.*, 589 F. Supp. 395, 409 (N.D. Ill. 1984)); *see also Turner v. Johnson & Johnson*, 809 F.2d 90, 100 (1st Cir. 1986) (finding that "an incomplete or partial statement may be the basis for fraud when only full disclosure would avoid deception"); *Augat, Inc. v. Collier*, 1996 U.S. Dist. Lexis 2702, at *47 (D. Mass. Jan. 22, 1996) (noting that disclosure of partial information may be fraudulent); *Union Pac. Res. Group, Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 547, 586 (5th Cir. 2001) (finding disclosure of "some but less than all material facts" may be actionable where "partial disclosure convey[s] a false impression").

### 3.     The same conduct violates the Medicaid fraud statutes and Montana's False Claims Act

The same conduct by Aventis violates the Montana and Nevada Medicaid fraud statutes and the Montana False Claims Act.  As discussed more fully in the states' oppositions to the Defendants' joint motions for summary judgment, these statutes also prohibit false and misleading statements in connection with Medicaid transactions by persons (defined broadly) and not just "providers" as Aventis and its co-defendants would have it.

### 4.     Aventis's other arguments do not nullify the unfair and deceptive nature of its conduct

Aventis attempts to use Dr. Hartman's declarations against the States by mischaracterizing one statement taken out of context.  Aventis Mem. at 6.  To be clear: *Dr. Hartman found that the prices reported by Aventis for its Subject Drugs exceeded the ASPs or their equivalent for those drugs by margins that merited the imposition of penalties under the state statutes upon which the Attorneys General have brought suit.  See* Hartman Mont. Decl. and Mont. Supp. Decl. (Breckenridge Decl., Ex. 1-2) and Hartman Nev. Decl. And Nev. Supp. Decl. (Breckenridge Decl., Exs. 3-4).  Specifically, in Montana, Dr. Hartman calculated

- 10 -

overcharges and penalties in the amount of $283,000,000 - $353,000,000.  Ex. 1, Hartman Mont. Decl., Table 6.  In Nevada, Dr. Hartman calculated penalties in the amount of $581,317,500 to $583,387,500.  This takes into account the Hartman point Aventis cites.

Aventis, among certain other defendants, claim that the AWPs "were not 'inflated' under the standards for liability set forth by plaintiffs' own expert," Aventis Mem. at 8, attempting to invoke Dr. Hartman's 30% expectation theory from the class case in their favor.  But, as Aventis is forced to acknowledge, "Dr. Hartman does not apply his expectations analysis in the Montana and Nevada cases."  *Id.* at 8.  It is true:  the States do not rely on Dr. Hartman's MDL reports to support the State cases and the yardstick theory for the private reimbursement market is not mentioned in his State declarations.  Dr. Hartman's opinions relevant to the States' cases are set forth in four independent declarations.[9]  In essence, the discount the States applied to the AWP to reach what they believed to be a reasonable approximation of EAC is the equivalent of the 30% yardstick Dr. Hartman applied in the MDL cases.  The States did not expect a 30% spread, but a much more modest one, generally 10% to 15% and this is why they set their reimbursement methodologies for the relevant time periods within this range.

The relevant inquiry here is whether the AWPs were false and whether Aventis's conduct was deceptive.

## B.   Aventis's Conduct Violates the States' Statutes Whether or Not it Marketed the Spread on Its Self-Administered Drugs

Aventis's last argument in support of partial summary judgment is that the States can adduce no evidence to support the allegation that Aventis marketed the spread for its self-administered Subject Drugs.  Whether or not Aventis produced evidence of its marketing of self-administered drugs, its conduct in providing AWPs which do not reflect average wholesale

---

[9]  Breckenridge Decl., Exs. 1-4.

prices alone constitutes unfair and deceptive practices in violation of the statutes.  This is true
irrespective of Aventis's marketing practices and does not require the demonstration of market
share movement for liability.  It is adequate for the States to show that the AWPs Aventis
provided, or caused to be provided, to the States were not average wholesale prices, that Aventis
knew that this was the case and that the States would rely on them for reimbursement purposes.
Dr. Hartman's declarations support this finding that the AWPs differed from the ASPs and thus
were not true average wholesale prices.

## V.    CONCLUSION

For the reasons set forth above, Aventis Pharmaceutical Inc.'s Motion for Partial
Summary Judgment should be denied.  On each issue raised by Aventis, material issues of fact
exist for resolution by the jury.


By_____/s/ Steve W. Berman_____          DATED:  April 26, 2007
    Steve W. Berman
    Sean R. Matt
    Jeniphr A.E. Breckenridge
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    COUNSEL FOR THE
    STATES OF MONTANA AND NEVADA

    Mike McGrath
    Attorney General of Montana
    Ali Bovingdon
    Assistant Attorney General
    Justice Building
    215 North Sanders
    P.O. Box 201401
    Helena, MT  56920-1402
    (406) 444-2026

    COUNSEL FOR THE
    STATE OF MONTANA

001534-15  164132 V1

Catherine Cortez Masto
Attorney General of the State of Nevada
L. Timothy Terry
Deputy Attorney General
100 N. Carson Street
Carson City,  NV 89701-4714

COUNSEL FOR THE
STATE OF NEVADA

- 13 -

# CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **STATES OF NEVADA AND MONTANA'S OPPOSITION TO DEFENDANT AVENTIS PHARMACEUTICALS INC.S' MOTION FOR PARTIAL SUMMARY JUDGMENT,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.


By_____/s/ Steve W. Berman_____
    Steve W. Berman
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    (206) 623-7292

- 14 -