UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>    Cause No. CV-02-09-H-DWM (D. Mont.) | Judge Patti B. Saris |

## MONTANA'S OPPOSITION TO BAYER'S MOTION FOR SUMMARY JUDGMENT

The State of Montana, by its counsel, hereby responds to Bayer Corporation's motion for summary judgment.  Montana also adopts and incorporates the submissions made on its behalf in opposition to the defendants' joint motions for summary judgment and to each of the defendant's individual motions for summary judgment.

Bayer argues that judgment should be entered in its favor on all of the State's claims because "Bayer stands in a unique posture in this litigation."  Bayer Mot., ¶ 5.  In making this argument, Bayer painstakingly relates Bayer's history of misfeasance in drug pricing and marketing.  Bayer also discusses the 2001 and 2003 Settlement Agreements that resolved early charges against Bayer by various governmental entities for Bayer's fraudulent pricing and marketing practices.  Montana participated in both.[1]   In addition, Bayer submits extensive argument about the ASPs it submitted to Montana pursuant to the 2001 Agreement.  Although

---

[1] *See*  Bayer Appendix ("App.") A-1 (State Settlement Agreement between Bayer and the State of Montana (2001)); Bayer App. A-2 (State Settlement Agreement between Bayer and the State of Montana (2001)); Bayer App. A-3 (Corporate Integrity Agreement between OIG and Bayer Corp. (Jan. 23, 2001)).

- 1 -

evidence of Montana Medicaid's receipt of the ASPs is equivocal and there are questions within Medicaid as to whether Bayer's ASP submissions covered all Bayer drugs.[2] Montana earlier acknowledged that it does not pursue claims for Bayer drugs for which Bayer provided ASPs.[3] Furthermore, as a result of the Court's June 10, 2004 Memorandum Opinion and Order ("June 10, 2004 Order") (Dkt. No. 866) and other factors, Montana does not pursue its Best Price claims against Bayer.

Bayer's motion, then, focuses on points that Montana does not or cannot contest as reflected in the 2001 and 2003 Settlement Agreements, the June 10, 2004 Order, Montana's Opposition to Bayer's Motion to Compel Fed. R. Civ. P. 30(b)(6) Deposition (Dkt. No. 2461), and Montana's responses to Bayer-specific discovery.[4] Bayer's motion does not, however, resolve all of Montana's claims against the drug manufacturer. As Bayer itself concedes, Montana's claims against Bayer for its Cipro products pre-settlement remain. Bayer Mot., ¶ 7. These claims cover ten years: 1991 to 2001. And Bayer has stated no basis justifying the entry of judgment in its favor on these claims.

Bayer submits two arguments it says entitles it to summary judgment as to Cipro. The first is that "[the] 2001 Settlement did not include Cipro for a reason." *Id.* In essence, Bayer argues, "the 2001 Settlement was reached after a lengthy federal-state investigation in which Bayer fully cooperated." Bayer Mem. at 7. If there had been any reason to include Cipro in the settlement, Bayer says, the settling parties would have done so. *Id.* Bayer offers no evidence of

---

[2] Mont. Resp. to Bayer L.R. 56.1 at ¶ 102.

[3] *Id.* at ¶ 68.

[4] Bayer App. E.1 (Objections and Responses to Defendant Bayer Corp.'s First Set of Requests for Admission and Second Set of Interrogatories to the State of Montana (Mar. 31, 2006)); Bayer App. E.2 (Plaintiff's Objections and Reponses to Defendant Bayer Corp.'s First Set of Interrogatories and Requests for Production to the State of Montana (Mar. 2, 2006)).

this "fact."  There is nothing in the record of whether Cipro was considered as part of the investigation and settlement, why or why not.  There is certainly no evidence of Bayer's purported "undisputed facts demonstrat[ing] that Cipro's AWP always maintained a precise, formulaic relationship to the price at which Bayer actually sold the product."  *Id*. at 7-8 (Bayer intimates is why Cipro was not included in the 2001 settlement.).

Montana and the Court are not required to take Bayer's word for what led to the settlement in 2001.  Moreover, even if there was evidence that Bayer was considered for inclusion in the global settlement and rejected by one side or the other, it is axiomatic that parties settle claims for a myriad of reasons.  The considerations that go into a settlement are complex and cannot be implied by either the fact of a settlement or its contents.  Asking the Court and Montana to accept the ***absence*** of a drug from the settlement as proof that there was no Bayer misconduct associated with a settlement defies logic and summary-judgment standards.  Bayer's facts fail in this regard.  Bayer will have another opportunity to prove Cipro's status at trial.

Bayer's second argument for summary judgment with respect to Cipro is that the State's purported "admission" that would not have acted any differently if Bayer had provided ASPs to the State for the pre-settlement period.  Bayer Mem. at 8.  Bayer relies on the testimony of Jeff Buska, Montana Medicaid official, to support this argument.[5]  Mr. Buska testified that it "would be fair to say" that Montana Medicaid would have reimbursed Bayer products at the same level even if it had received ASPs during the pre-settlement period.[6]  It is important to put Mr. Buska's testimony in the context of his other testimony concerning the Bayer ASPs.  Mr. Buska testified

---

[5] Bayer's argument is difficult to follow, however, in part because it refers to Bayer's Statement of Undisputed Fact paragraphs that do not exist (BSUF ¶¶ 110-116).  Bayer Mem. at 8-9.  This evidence may not be considered.

[6] *See* Declaration of Jeniphr Breckenridge in Support of the States of Nevada and Montana's Memoranda in Opposition to Defendants' Individual Motions for Summary Judgment ("Breckenridge Decl."), Ex. 58 (Buska Dep. at 567-68).

that the Bayer ASPs (and those of other drug manufacturers) were not used by the Medicaid program because they were unusable.  According to Mr. Buska, Montana did not use the ASP data provided by Bayer because the State's reimbursement methodology formula was set to use AWP.[7]  It would have been difficult to incorporate ASP data for some drugs and AWP for others because Montana's pharmacy claims processing was an automated system run by an outside vendor.[8]  Montana Medicaid staff also raised questions about the Bayer ASP reliability and the frequency of updates Bayer provided.[9]

Nothing in Bayer's motion addresses the issues at the heart of Montana's claims that Bayer reported AWPs for Cipro and its other products, that it knew did not reflect average wholesale prices and thus did not comport with the plain and ordinary meaning of the term "average wholesale price," knowing that Montana and other payors would rely on the reported price as a basis for reimbursement.  The Court previously held that "AWP means the average price at which wholesalers sell drugs to their customers, including wholesalers and pharmacies." *In re Pharm. Indus. Average Wholesale Price Litig.,* 460 F. Supp. 2d 277, 278 (D. Mass. 2006).[10] Applying the same definition here, as Montana submits is appropriate,[11] demonstrates the unfair and deceptive nature of Bayer's Cipro AWPs which did not meet this definition.

For the reasons set forth above, Bayer's motion for summary judgment should be denied as to Cipro claims arising before the 2001 Settlement.

---

[7] Declaration of Jeff Buska In Support of the State of Montana's Opposition to Defendants' Joint Motion for Summary Judgment (Dkt. No. 3906), at ¶ 32.

[8] *Id*.; Buska Dep. at 513:10-18 (Breckenridge Decl., Ex. 58).

[9] *Id.*

[10] The State of Montana previously argued this point in its Motion for Partial Summary Judgment (Feb. 8, 2007) (Dkt. No. 3731).

[11] *See* State of Montana's Memorandum In Support of Motion for Partial Summary Judgment (Dkt. No. 3732) at 8-17.

- 5 -

By     /s/ Steve W. Berman                         DATED:  April 26, 2007.
    Steve W. Berman
    Sean R. Matt
    Jeniphr A.E. Breckenridge
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

COUNSEL FOR PLAINTIFF
STATE OF MONTANA

- 5 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA'S OPPOSITION TO BAYER'S MOTION FOR SUMMARY JUDGMENT,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By         **/s/ Steve W. Berman**
   Steve W. Berman
   **HAGENS BERMAN SOBOL SHAPIRO LLP**
   1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
   (206) 623-7292