UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>*State of Nevada v. American Home Products, et al.*,<br>    CA No. 02-CV-12086-PBS (Nevada II), and<br><br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>    Cause No. CV-02-09-H-DWM (D. Mont.) | CIVIL ACTION: 01-CV-12257-PBS |

**MONTANA AND NEVADA'S OPPOSITION TO FUJISAWA HEALTHCARE, INC.'S AND FUJISAWA USA, INC.'S INDIVIDUAL MOTION FOR SUMMARY JUDGMENT**

Montana and Nevada ("States"), by their counsel, hereby respond to Fujisawa Healthcare, Inc.'s and Fujisawa USA, Inc.'s (collectively "Fujisawa") motions for summary judgment in the Montana and Nevada cases.[1] The States also adopt and incorporate the submissions made on behalf of each of them in opposition to the Defendants' joint motions for summary judgment and their responses to each of the defendant's individual motions.

Fujisawa asks the Court to enter judgment in its favor on all of Montana and Nevada's claims because of its "poor fit in the Average Wholesale Price ('AWP') litigation." Fujisawa Mont. Mem. at 1; Fujisawa Nev. Mem. at 1. Numerous plaintiffs, Fujisawa argues, have dropped Fujisawa from its lawsuits.[2] This is, of course, not a legitimate basis for summary

---

[1] Fujisawa submitted separate motions on virtually identical briefs, expert and lawyer declarations and L.R. 56.1 statements in the Montana and Nevada cases. To preserve the time and resources of the Court and the parties, Montana and Nevada respond jointly to the motions and, where necessary, identify any differences by State. The States respond separately to Fujisawa's L.R. 56.1 Statements.

[2] Montana and Nevada have not fully verified Fujisawa's claims that it has been dropped from, or not named in numerous lawsuits, but note that the claim is misleading with respect to at least one of the lawsuits. Fujisawa Mont. Mem. at 1 n.1-2; Fujisawa Nev. Mem. at 1 n.1-2. Fujisawa *was* sued in the Nevada AWP case. For reasons not

- 1 -

judgment and particularly not under the circumstances here where the States' expert has calculated significant damages to the States based on Fujisawa unfair and deceptive conduct.[3]

Fujisawa further contends that the States have not made a case against Fujisawa because of (i) the nature of Fujisawa's drugs named in this litigation; (ii) the States' "reimbursement schemes as to the categories of drugs"; and (iii) "the operation and influences of the pharmaceutical industry as to those drugs."[4] At best, each of Fujisawa's arguments goes to the calculation of damages for its Subject Drugs – both by drug and time period – and is not a basis for summary judgment on the States' claims, as discussed below.

Finally, Fujisawa's motion does not address the heart of the States' claims against it: that Fujisawa published AWPs for its Subject Drugs knowing that the Montana and Nevada Medicaid programs, among other payors, would rely on them as a basis for reimbursement and further knowing that the Fujisawa AWPs were not the "average wholesale prices" Fujisawa purported them to be. This Fujisawa conduct misled the Montana and Nevada Medicaid programs and caused them harm in that all reimbursements made based on Fujisawa's inflated AWPs resulted in overpayments by the State Medicaid programs.

Fujisawa's motion for summary judgment should be denied.

## I.   BACKGROUND

The Attorneys General of Montana and Nevada originally brought these actions to enforce state laws and to protect the States' Medicaid programs and the well-being of the citizens who make prescription drug payments or co-payments based on Average Wholesale Prices

---

pertinent here, the case was bifurcated into a federal and a state branch (Nevada I and Nevada II). Mont. Resp. to Fujisawa L.R. 56.1 Stmt., ¶ 21; Nev. Resp. to Fujisawa L.R. 56.1 Stmt., ¶ 21. Fujisawa is a party.

[3] Dr. Hartman has calculated damages in the amount of $3,738,000 to Montana as a result of Fujisawa misconduct and damages in the amount of $3,502,000 to Nevada as a result of Fujisawa misconduct.

[4] Fujisawa Mont. Mem. at 5; Fujisawa Nev. Mem. at 5.

("AWPs"). The claims and the scope of the lawsuits have been refined since their initial filing. At this juncture, the States pursue monetary damages on behalf of the States' Medicaid programs only and only for the damages and penalties calculated by Dr. Hartman and set forth in his Declarations. *See* Breckenridge Decl., Exs. 1-4.[5] The damages the States claim constitute overcharges for select drugs and penalties for violations of Montana and Nevada state statutes. *Id.*[6] These are the only damages the States now pursue. Fujisawa and its co-defendants have had this information since June 2006, when Dr. Hartman's reports were submitted. Fujisawa and its co-defendants had the opportunity to examine Dr. Hartman on his calculations, the States' damages and other related issues at his deposition in the Montana and Nevada state cases in August 2006.

## II.   ARGUMENT

### A.   Fujisawa's Sale of Its Generics Business in 1998 Does Not Dictate the Outcome of Any Category of Fujisawa Drugs on Summary Judgment

Fujisawa asserts that it is entitled to judgment on all allegations relating to the sale and reporting of AWPs for generic drugs after May 31, 1998 because it sold its generic drug unit as of that date, Fujisawa Mont. Mem. at 6-7; Fujisawa Nev. Mem. at 6-7, and that the States' pre-sale claims against Fujisawa for the affected drugs are barred by the applicable statutes of limitations, Fujisawa Mont. Mem. at 7; Fujisawa Nev. Mem. at 7. Both arguments fail.

---

[5] All exhibits referenced herein unless otherwise indicated are attached to the Declaration of Jeniphr Breckenridge in Support of the States of Nevada and Montana's Memoranda in Opposition to the Individual Defendants' Motions for Summary Judgment ("Breckenridge Decl.").

[6] Dr. Hartman has calculated defendant-specific overcharges or restitution damages only for certain defendants because of the States' inability to obtain data from other drug manufacturers. *See* Ex. 1 (Hartman Mont. Decl. (June 13, 2006) Tables 1-2); Ex. 3 (Hartman Nev. Decl. (June 13, 2006) Table 1); Ex. 4 (Hartman Nev. Supp. Decl. (June 19, 2006)). Dr. Hartman did not calculate overcharge damages for Fujisawa. *See id*. Dr. Hartman has also not calculated damages of any type for physician-administered drugs in Nevada Ex. 3 (Hartman Nev. Decl., ¶¶ 23(c)).

### 1.     The 1998 sale may limit, but does not eliminate Fujisawa's liability for certain drugs

The States have no reason to dispute Fujisawa's representations regarding the corporate history of its generic unit. However, Fujisawa has submitted insufficient evidence to establish that the unit's purchaser assumed legal responsibility for Fujisawa's pre-sale conduct.[7] And that fact that Fujisawa submits an argument concerning the statute of limitations for the pre-1998 period suggests that it did not. *Id*. The States contend that Fujisawa set and/or reported prices for the generics it affected by the sale prior to the May 1998 sale and retained legal responsibility for those actions. Fujisawa submits no evidence to refute this assertion. In fact Fujisawa's arguments concede it.[8]

Even if Fujisawa shed legal responsibility for its generic drugs in May 1998, the relevant time period for the lawsuit is 1991 to the present. Fujisawa has liability exposure for its generic Subject Drugs for seven years prior to the sale. Fujisawa's argument at its most successful, then, does not resolve all of the States' claims; it goes to the calculation of damages. It does not state a basis for summary judgment. If Fujisawa is correct, at most it has established that Dr. Hartman should recalculate the Fujisawa damages to exclude the affected generic Subject Drugs for the post-1998 damages periods.

---

[7] The evidence is limited to these ambiguous statements: "Fujisawa did not retain any legal responsibility for transactions involving these drugs," Fujisawa Mont. Mem. at 6; Fujisawa Nev. Mem. at 6, and the similar and equally conclusory "[a]fter May 31, 1998, Fujisawa did not retain any authority or legal responsibility for transactions involving the drugs listed above." Knowles Mont. Decl. at ¶ 8; Knowles Nev. Decl. at ¶ 8.

[8] Fujisawa writes: that "APP [the purchaser] assumed legal responsibility for manufacturing, selling and setting/reporting prices for these generics and Fujisawa's rights and responsibilities as to these generic drugs terminated," implying that the responsibilities had been previously held by Fujisawa. Fujisawa Mont. Mem. at 6; Fujisawa Nev. Mem. at 6.

### 2. The States' claims are timely; pre-1998 Fujisawa Subject Drug sales are part of the lawsuits

Fujisawa incorporates the statute of limitations arguments from the Defendants' joint motions for summary judgment to avoid pre-1998 liability for its generic Subject Drugs. Fujisawa Mont. Mem. at 7; Fujisawa Nev. Mem. at 7.  Because the States have already rebutted the joint arguments in opposition to the joint motions, they will only summarize their position here.[9]

All of the States' claims are timely.  The applicable limitations periods were tolled by both the discovery rule recognized by each of the States and the doctrine of fraudulent concealment.[10]  Fujisawa does not even acknowledge the discovery rule or the States' fraudulent concealment claim, let alone submit any evidence to refute the States' assertions with respect to the tolling of the limitations periods and no evidence that either Montana or Nevada should have discovered Fujisawa's actionable misconduct earlier.

All of the States' claims are timely.  In both Montana and Nevada, applicable statutes of limitation are tolled by the discovery rule.  The limitations period is tolled until a putative plaintiff through reasonable diligence can discover the facts comprising the alleged actionable conduct.  *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441-43 (Mont. 2003); *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306-07 (9th Cir. 1992).  In these cases, that did not occur until shortly before the filing of the lawsuits.

Fujisawa has not met its burden on its statute of limitations argument.  The motion as to Fujisawa's pre-1998 conduct with respect to its generic drugs should be denied.

---

[9] *See* Montana's Opposition to the Defendants' Joint Motion for Summary Judgment (Dkt. No. 3902) ("Mont. Opp. to Def. Jt. SJ Mot.") at 37-38; Nevada's Opposition to the Defendants' Joint Motion for Summary Judgment (Dkt. No. 3910) (Nev. Opp. to Def. Jt. SJ Mot.") at 28-29.

[10] *Id.*

001534-15 165300 V1

**B.     Montana Based Reimbursement of Fujisawa Subject Drugs on AWP**

**1.     Whether Montana Medicaid reimbursed a transaction based on AWP less a discount or FUL, there was still actionable conduct on the part of Fujisawa**

Fujisawa argues that for 13 of the Fujisawa Subject Drugs the States could not have made overpayments based on the inflated AWPs Fujisawa provided because the drugs were multi-source or generic drugs and "Montana based many reimbursement for multi-source drugs on the drug's Federal Upper Limit ("FUL"), rather than AWP." Fujisawa Mont. Mem. at 9. This argument is redundant of the argument set forth in Defendants' Montana Joint Memorandum In Support of Summary Judgment at 36-37 and was addressed in Montana's opposition to the joint motion. *See* Mont. Opp. To Def. Jt. SJ Mot. at 33-35. In this individual iteration, Fujisawa again does not proffer any evidence to show that Montana reimbursed the Fujisawa Subject Drugs on any basis other than AWP. Moreover, even if Montana did reimburse some transactions based on FUL, as explained in the Montana Opposition to Defendants' Joint Motion for Summary Judgment, these transactions were affected by the inflated AWPs. *Id*. at 34. The FUL is a measure developed and set by CMS for use by state Medicaid programs in reimbursing drugs that have at least three generic equivalents or on the EAC for the drug.[11] The FUL has historically been no more than 150% of the AWP or the least costly therapeutic equivalent.[12]

Dr. Hartman discusses the direct link between FUL and the AWPs of the related drugs. *See* Ex. 1 (Hartman Mont. Decl. (June 13, 2006) at ¶ 8(b)). Dr. Hartman explains that the FUL price is set at an amount equal to 150 percent of the published price for the least costly generic

---

[11] 42 C.F.R. § 447.332 (upper limits for multiple source drugs; the FUL is "an amount established by CMS that is equal to 150 percent of the published price for the least costly therapeutic equivalent"). *See also* Jim Hahn, Ph.D, Health Economist, Domestic Social Policy Division, Congressional Research Service, RL33782-Federal Drug Price Negotiation: Implications for Medicare Part D (Jan. 7, 2007) (discussing historic calculation of FUL and recent changes as based on AWP).

[12] Beginning January 1, 2007, for reasons not pertinent to this motion, the AWP will no longer be used as the basis for calculating the FUL or the EAC but instead will be calculated to equal 250% of the "average manufacturer price" ("AMP").

substitute. *Id*. at n.10. Not only does this link FULs to inflated AWPs and result in damages in the form of overpayments to the States, it also demonstrates the incentives that remain for generic manufacturers to manipulate the AWPs such that the FUL itself becomes artificially inflated.

### 2. Fujisawa has not submitted adequate evidence to prove that Montana Medicaid reimbursed for Cyclocort on any basis other than AWP

Fujisawa makes one argument unique to Cyclocort. Fujisawa argues that Montana Medicaid did not reimburse Cyclocort based on AWP, but instead based reimbursement on something known as the "Montana Medicaid Fee Schedule." Fujisawa submits a copy of the 2003 fee schedule, claiming that the document proves this "fact" and making several other claims regarding the drug. Fujisawa Mont. Mem. at 10; Fujisawa Nev. Mem. at 10. In fact, the evidence Fujisawa submits does not match up with its claims. *See* Mont. Resp. to Fujisawa L.R. 56.1 at ¶ 26. Furthermore, when Montana Medicaid did a search for Cyclocort, its reimbursements were based on specific NDC numbers unique to Fujisawa. *Id*. Fujisawa has not met the burden on this claim. Summary judgment as to Cyclocort should be denied.

### C. Fujisawa's Arguments Concerning Physician-Administered Drugs are Immaterial

As Fujisawa knows, the States have refined the claims for which they claim damages. *See supra* at § I. If Dr. Hartman did not calculate damages for a particular category or claim, the States do not claim damages for that category or claim. With respect to the physician-administered drugs, Dr. Hartman did not "refuse[] to analyze liability for multi-source physician-administered drugs," as Fujisawa claims, but he did explain with respect to Montana:

> Given the time consuming process of performing the cross-walk
> for multi-source physician-administered drugs reimbursed by
> J-Code, I do not analyze liability for physician-administered drugs
> reimbursed by J-Code. I do not analyze liability for physician-
> administered drugs once they go generic, even if I have ASP data
> for a generic drug of a Defendant.

Mont. Resp. to Fujisawa L.R. 56.1, ¶¶ 13-14.  And with respect to Nevada, Dr. Hartman explained:

> Given the time consuming process of performing the cross-walk for multi-source physician-administered drugs reimbursed by J-Code, I would not analyze liability for physician-administered drugs once they go generic, even if I had ASP data for a generic drug of a Defendant.  This concern was not relevant for physician-administered drugs reimbursed by J-Code, because such data was not made available by Nevada.

Nev. Resp. to Fujisawa L.R. 56.1, ¶¶ 13-14.

Fujisawa and its co-defendants have had Dr. Hartman's reports since June 2006 and took the opportunity to examine Dr. Hartman on his opinions at his two day deposition in these cases in August 2006.  It is unclear why Fujisawa continues to raise the issues here.

### D. Fujisawa Engaged in Unfair and Deceptive Conduct Whether or Not It Marketed the Spreads for Certain Categories of Drugs

Montana and Nevada submit evidence that Fujisawa reported AWPs directly to Publishers knowing that they would be used by Montana and Nevada and other payors as the basis for reimbursement and also knowing that unbeknownst to these payors, the AWPs were inflated – that in actuality providers could obtain drugs at discounts unreflected in the so-called "average wholesale prices" Fujisawa provided.[13]

Contrary to Fujisawa's claims, evidence shows that Fujisawa engaged in unfair and deceptive conduct by setting and publishing AWPs it knew did not reflect average wholesale

---

[13] The Fujisawa Group controlled and set the AWPs for all of its drugs, including the Subject Drugs, through direct communications with industry compendia.  *See*, *e.g.*, Ex. 38 (BBMDL FJ-MDL 015152-159).  Fujisawa documents confirm Fujisawa knowledge of compendium pricing and concern about how to increase the prices published to even higher levels.  *See*, *e.g.*, Ex. 36 (FJ-MDL 8346-47 (Fujisawa acknowledges direct communications with publishers and others and expressed concern over boosting their spreads from 25% to 33%)); s*ee also generally* Mont. SAC at ¶¶ 410-22; Nev. Amended Complt. at ¶¶ 273-85 (and documents referenced therein).

prices, as that term's plain and ordinary meaning *In re Pharmaceutical Indus. Average Wholesale Price Litig.* (Nov. 2, 2006 Order) at 2.[14]

Together this conduct (reporting AWPs it knew to be false and marketing the spread) – this *misconduct* – on the part of Fujisawa constituted unfair and deceptive conduct that did in fact deceive the Montana and Nevada Medicaid programs.  Each prong of the conduct (the reporting and the marketing) alone satisfies the unfair and deceptive conduct requirements of the statutes under which the Attorneys General have brought their State's claims.  At a minimum, the evidence on the record creates a genuine issue of material fact.  Fujisawa's motion on this point should be denied.

**E.     Nevada Did Not Know the Difference Between AWP and Market Price**

Fujisawa's argument concerning Nevada knowledge of the difference between AWP and market price is confusing.  Fujisawa Nev. Mem. at 8-10 ("Nevada knew conclusively that there could be significant differences between AWP and market price.")  As best as Nevada can interpret Fujisawa's argument, it seems that the drug manufacturer contends that because Nevada used FUL as a basis for reimbursement for some generic drug transactions, Nevada had knowledge of the difference between AWP and other drug prices.  *Id*. at 9.  To support its argument, Fujisawa says that Nevada's comparison of a drug's FUL with discounts off of AWP "showed that AWP bore no formulaic relationship to FUL and, by implication, no formulaic relation to acquisition cost." *Id*. at 9.  But Fujisawa offers no evidence of such calculations by Nevada, no evidence that a comparison of FUL to AWP would show this and no evidence that Nevada Medicaid personnel reached this conclusion.  Fujisawa also misses an important link.  As

---

[14] *See*, *e.g.*, Ex. 33 (FJ-MDL 005072-5078 (marketing involving various drugs); Ex. 37 (FJ-MDL 13280-83 (Doxorubicin Hydro-chloride)); Ex. 32 (FJ-MDL 005667-69 (Vancomycin; adjusting AWP on product upwards should lead to more business)); Ex. 34 (FJ-MDL 005687-89 (Vancomycin)); Ex. 35 (FJ-MDL 008131-41(vendor bid response with AWP provided)).  *See also generally* Mont. SAC at ¶¶ 410-22 (and documents referenced therein); Nev. Amended Complt. at ¶¶ 273-85 (and documents referenced therein).

discussed above, FULs historically have often been calculated based on AWP. Therefore, any FUL is inflated to the same extent as any AWP for a drug.

At a minimum, Fujisawa's individual motion raises genuine issues as to material fact as to Nevada's use of FUL.

### III.   CONCLUSION

For the foregoing reasons, and the reasons set forth in the States' oppositions to Defendants' joint motions for summary judgment, Fujisawa's motions for summary judgment should be denied. The cases against Fujisawa should proceed to trial.

By    /s/ Steve W. Berman                            DATED: April 26, 2007
    Steve W. Berman
    Sean R. Matt
    Jeniphr A.E. Breckenridge
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    COUNSEL FOR PLAINTIFFS
    STATES OF MONTANA AND NEVADA

    Mike McGrath
    Attorney General of Montana
    Ali Bovingdon
    Assistant Attorney General
    Justice Building
    215 North Sanders
    P.O. Box 201401
    Helena, MT  56920-1402
    (406) 444-2026

    COUNSEL FOR PLAINTIFF
    STATE OF MONTANA

Catherine Cortez Masto
Attorney General of the State of Nevada
L. Timothy Terry
Deputy Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

- 12 -

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA AND NEVADA'S OPPOSITION TO FUJISAWA HEALTHCARE, INC.'S AND FUJISAWA USA, INC.'S INDIVIDUAL MOTION FOR SUMMARY JUDGMENT**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

                      By      **/s/ Steve W. Berman**
                         Steve W. Berman
                         **HAGENS BERMAN SOBOL SHAPIRO LLP**
                         1301 Fifth Avenue, Suite 2900
                         Seattle, WA  98101
                         (206) 623-7292