UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>    Cause No. CV-02-09-H-DWM (D. Mont.) | CIVIL ACTION: 01-CV-12257-PBS |

**MONTANA'S RESPONSE TO FUJISAWA HEALTHCARE, INC.'S AND FUJISAWA USA, INC.'S SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The State of Montana, by its counsel, hereby responds to Defendants Fujisawa USA, Inc's and Fujisawa Health Care, Inc.'s Supplemental Statement of Undisputed Material Facts In Support of Defendants' Motion for Summary Judgment ("Fujisawa Supp. L.R. 56.1 Stmt.") and where necessary counter-designates undisputed facts in opposition to the motion. Counter-designations of deposition transcripts and documents cited herein are attached to the Declaration of Jeniphr Breckenridge in Support of the States of Nevada and Montana's Memoranda in Opposition to the Individual Defendants' Motion for Summary Judgment ("Breckenridge Decl.").[1]

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit.

---

[1] The State also incorporates herein the exhibits to the State of Montana's Memorandum In Support of Motion For Partial Summary Judgment Against Certain Defendants (Dkt. No. 3731), the State of Montana's Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment (Dkt. No. 3902), and the State of Montana's Response to Statement of Undisputed Material Facts in Support of Defendants' Joint Motion for Summary Judgment (Dkt. No. 3903). The State further incorporates Plaintiffs' Post-Trial Proposed Findings of Fact (Dkt. No. 3553).

6. Admit.

7. Admit.

8. Admit.

9. Admit.

10. Admit.

11. Admit.

12. Deny.  Montana assumes that Fujisawa intended to cite to Wilhite Decl. Ex. D, although this is not specified.  The State counter-designates that the evidence submitted does not support the proposition that "most" of Fujisawa's physician-administered drugs have been multi-source since as late as 1995.  Montana has no way to know what Fujisawa means by "most" and cannot locate many of the Subject Drugs in the excerpt that constitutes Wilhite Decl. Ex. D.

13. Montana admits that Dr. Hartman's analysis of multi-source physician-administered drugs was limited as explained in the Hartman Montana Declaration (June 13, 2006) ¶ 22(c) (Breckenridge Decl. Ex. 1):  "Given the time consuming process of performing the cross-walk for multi-source physician-administered drugs reimbursed by J-Code, I do not analyze liability for physician-administered drugs reimbursed by J-Code.  I do not analyze liability for physician-administered drugs once they go generic, even if I have ASP data for a generic drug of a Defendant."  Otherwise deny.

14. Montana admits that Dr. Hartman's analysis of multi-source physician-administered drugs was limited as explained in the Hartman Montana Declaration (June 13, 2006) ¶ 22(c) (Breckenridge Decl. Ex. 1):  "Given the time consuming process of performing the cross-walk for multi-source physician-administered drugs reimbursed by J-Code, I do not analyze liability for physician-administered drugs reimbursed by J-Code.  I do not analyze

- 3 -

liability for physician-administered drugs once they go generic, even if I have ASP data for a generic drug of a Defendant." Otherwise deny. Dr. Hartman did not "refuse" to do anything.

15. Admit.

16. Admit.

17. Admit that a patient's doctor decides which self-administered drug to prescribe. Admit that the pharmacist pays for the drugs from manufacturers or wholesalers, and Medicaid then reimburses the pharmacist. Admit that "the person making the prescription decision does not obtain direct profit from the difference between drug acquisition cost and AWP."

18. Admit.

19. Admit that "providers must pay the price set by manufacturers" for every drug. Deny that pharmacies generally purchase the drugs at prices close to acquisition cost or provider list price; Montana counter-designates that the evidence shows that providers receive rebates and discounts not reflected in the AWP for Prograf and other Fujisawa Subject Drugs.

20. Admit that Fujisawa does not have a role in deciding which drugs should be prescribed to particular patients and that Fujisawa does not provide or dispense drugs directly to patients. Deny that Fujisawa "does not receive any reimbursement on the cost of drugs from States, the federal government, government programs or any other third-party payor." The State counter-designates that Fujisawa profits when the drugs are prescribed by providers, purchased by patients and reimbursed by Montana, the federal government, government programs or any other third-party payor.

21. Deny. Montana counter-designates that "*see generally* Complaints" is inadequate evidence of this proposition. Montana further counter-designates that this "fact" is misleading at least with respect to the reference to "Nevada state court." Fujisawa was sued in the Nevada

AWP case.  For reasons not pertinent here, the case was bifurcated into a federal and a state branch (Nevada I and Nevada II).  The State further counter-designates that this proposition is irrelevant here where Montana brings legitimate claims against Fujisawa, evidenced by Dr. Hartman's calculation of penalties of $3,738,000.  *See* Breckenridge Decl. Ex. 1 (Hartman Mont. Decl., Table 6).

22. Deny.  Montana counter-designates that general citations to cases is inadequate evidence of this proposition.  *See* Breckenridge Decl. Ex. 1 (Hartman Mont. Decl., Table 6).

23. Admit that neither Fujisawa nor any of its employees have ever been deposed in cases in which counsel to Montana is counsel.  Otherwise, Montana cannot admit nor deny.

24. Admit that Montana maintains a fee schedule for physician services.  The fees are for services, office and facility charges.

25. Admit.

26. Deny.  The State counter-designates that Cyclocort does not "share J Code J3940 with a number of drugs and manufacturers."  The State further counter-designates that J3940 does not appear on Exhibits G and H.  J Code J3490 does appear on the exhibits.  Exhibit G indicates that J3490 is *not* paid according to "fee schedule," but "by report."  Wilhite Ex. G 253.  The State also counter-designates that its research showed that Montana Medicaid made payments for Cyclocort based on the unique Fujisawa payments.

27. Montana adopts its response to ¶ 26.

- 5 -

By    /s/ Steve W. Berman                                         DATED: April 26, 2007
Steve W. Berman
Sean R. Matt
Jeniphr A.E. Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

COUNSEL FOR PLAINTIFF
STATE OF MONTANA

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT 56920-1402
(406) 444-2026

COUNSEL FOR PLAINTIFF
STATE OF MONTANA

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA'S RESPONSE TO FUJISAWA HEALTHCARE, INC.'S AND FUJISAWA USA, INC.'S SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By   **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292