## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| *State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS (Nevada II), and | |
| *State of Montana v. Abbott Labs., Inc., et al.*, Cause No. CV-02-09-H-DWM (D. Mont.) | |

## MONTANA AND NEVADA'S OPPOSITION TO DEFENDANT IMMUNEX CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Montana and Nevada ("States"), by their counsel, hereby respond to Defendant Immunex Corporation's ("Immunex") motion for summary judgment related to the Montana and Nevada cases.  The States also adopt and incorporate the submissions made on behalf of each of them in opposition to the Defendants' joint motions for summary judgment and to each of the Defendant's individual motions.

Immunex asks the Court to enter judgment in its favor on all claims on three grounds unique to it:  (i) Amgen Inc.'s 2002 acquisition of Immunex; (ii) Immunex's purported method for reporting its prices to Publishers between 1995 and the Amgen acquisition; and (iii) what Immunex characterizes as the States' lack of evidence on liability and damages with respect to Immunex.[1]  At best, Immunex's facts – if proved – go to the measure of Immunex's liability and are not dispositive of the States' claims on summary judgment.

---

[1] In addition, Immunex reiterates the statute of limitations, Montana and Nevada Medicaid fraud statute and Montana False Claims Act arguments raised in the Defendants' joint motions for summary judgment without submitting any evidence or arguments unique to Immunex.

Additionally, Immunex's motion avoids the heart of the States' claims:  that Immunex published AWPs for its Subject Drugs knowing that the Montana and Nevada Medicaid programs, among other payors, would rely on them as a basis for reimbursement and further knowing that Immunex's AWPs were not the "average wholesale prices" Immunex purported them to be.  Immunex did this despite the plain and ordinary meaning of the term "average wholesale price," which this Court has found to mean "the average price at which wholesalers sell drugs to their customers, including physicians and pharmacies."  *In re Pharmaceutical Indus. Average Wholesale Price Litig.* (Nov. 2, 2006 Order) at 2.  Immunex's conduct caused the States harm in that reimbursements made based on Immunex's inflated AWPs resulted in overpayments by the State Medicaid programs.

As described below, the arguments and evidence Immunex submits do not meet the standards for summary judgment.  Genuine issues of material fact remain.  Immunex's motion should be denied.

## I.  BACKGROUND

### A.  The States Have Refined Their Claims for Damages

The Attorneys General of Montana and Nevada originally brought this action to enforce state laws and to protect the States' Medicaid programs and the well-being of the citizens who make prescription drug payments or co-payments based on Average Wholesale Prices (AWPs).  The claims and the scope of the lawsuits have been refined since their initial filing.  At this juncture, the States pursue monetary damages on behalf of the State Medicaid programs only and only for the damages and penalties calculated by Dr. Hartman and set forth in his Declarations.

Breckenridge Decl., Exs. 1-4.[2]  The damages the States claim constitute penalties for violations

of Montana and Nevada state statutes.[3]  *Id*.  These are the only damages the States now pursue.

Immunex and its co-defendants have had this information since June 2006, when Dr. Hartman's

reports were submitted.  Immunex and its co-defendants had the opportunity to examine

Dr. Hartman on his calculations, the States' damages and other related issues at his deposition in

the Montana and Nevada state cases in August 2006.

**B.     Immunex's Conduct**

Internal Immunex documents reflect Immunex misconduct in reporting AWPs it knew

did not reflect average wholesale prices, knowing that the States and other payors would rely on

them as a basis for reimbursement is reflected in Immunex internal documents.  Immunex

acknowledges that it reported AWPs directly to Publishers up until 1995.  Immunex Mem. at 6-

7; MT/Nev. Resp. to Immunex L.R. 56.1 at ¶ 19; Ex. 23 (IAWP 058538-550).  Immunex also

provided Immunex Pricing Guides to the Publishers.  MT/Nev. Resp. to Immunex L.R. 56.1 at

¶ 21; Ex. 20 (IAWP002632, IAWP109286).  The relationship between Immunex and the

Publishers was active, not passive, when it came to AWPs.  At times, the Publishers contacted

Immunex to review and update AWPs.  Immunex complied.  *Id*. at ¶ 23; Ex. 22 (IAWP021102-

---

[2] *See* All exhibits referenced herein unless otherwise indicated are attached to the Declaration of Jeniphr Breckenridge in Support of the States of Nevada and Montana's Memoranda in Opposition to the Individual Defendants' Motions for Summary Judgment ("Breckenridge Decl.").

[3] Dr. Hartman has calculated defendant-specific overcharges or restitution damages only for certain defendants because of the States' inability to obtain data from other drug manufacturers.  *See* Ex. 1 (Hartman Mont. Decl., (Tables 1-2); Ex. 3 (Hartman Nev. Decl., Table 1); Ex. 4 (Hartman Nev. Supp. Decl.).  Dr. Hartman did not calculate overcharge damages for Immunex.  *See id*.  Dr. Hartman has also not calculated damages for multi-source physician-administered drugs.  *See* Ex. 1 (Hartman Mont. Decl., ¶¶ 22(c), 28-30, 33(b)); Ex. 3 (Hartman Nev. Decl., ¶¶ 23(c), 30).  This addresses points Immunex raises with respect to lecuovorin calcium, methotrexate sodium, and Thioplex.  Immunex Mem. at 8.  As noted above, Immunex and other Defendants have had this information since Dr. Hartman submitted his reports in June 2006.  Immunex and its co-defendants had the opportunity to examine Dr. Hartman on his calculations at Dr. Hartman's August 22-23, 2006 depositions in the Montana and Nevada cases. It is not clear why Immunex and other Defendants keep raising this argument.  *See*, *e.g.*, Immunex Mem. at 8.

- 3 -

04).  Immunex knew that "most" state Medicaid programs used AWPs published by First DataBank as a reimbursement benchmark.[4]

Immunex says that it stopped reporting the numbers directly in mid-1995, but the evidence is equivocal on this point.  MT/NV Resp. to Immunex L.R. 56.1 Stmt., ¶ 8.  Even if Immunex could adduce evidence to demonstrate that this is true (the letters submitted are inadequate evidence of the fact), other evidence shows that Immunex continued to control AWPs for its Subject Drugs even after it discontinued reporting AWPs directly to Publishers.  *Id.* Instead of calculating AWPs and providing them directly, Immunex provided list prices that it ***knew*** the Publishers would use to calculate AWPs and report them to the States and other payors in ways that were predictable and foreseeable.  *Id.*; Ex. 16 (IAWP012960).  In this way, Immunex continued to control its AWPs.

Throughout its tenure in the drug manufacturing and marketing business, Immunex used and marketed the spread itself in ways that reflected its appreciation of the fact that AWP was not an average wholesale price.  Immunex tracked competitors' AWPs and the relative profits available based on acquisition costs and AWPs.  *See, e.g.*, *id.* at ¶¶ 18, 24; Ex. 17 (IAWP002694); Ex. 31 (IAWP111520-22); Ex. 29 (IAWP111515-17, 111523, 109275-76).  Immunex also trained its sales force to use the spread in pushing its product on providers.  *See, e.g.*, *id.* at ¶ 24; Ex. 24 (IAWP086642, 86652, 86657); Ex. 25 (IAWP080507-509); Ex. 26 (IAWP111514); Ex. 27 (IAWP108782-84).

There is no evidence in the record that Montana or Nevada had any knowledge of the true prices for Immunex Subject Drugs or the actual spreads between acquisition cost and AWP for those Subject Drugs.

---

[4] Ex. 86 (Stamm Dep. at 23:16-19).

## II.     ANALYSIS

**A.     Immunex Continuously Controlled the Publication of AWP – Before and After 1995**

Immunex contends that judgment should be entered in its favor for any damage to the States "after mid-1995, when it ceased suggesting AWPs to the Publishers, or before 1995 when it reported both AWPs and Direct Price.  As an initial matter, the evidence is equivocal as to when Immunex actually stopped reporting AWPs to Publishers directly.  *See* MT/Nev. Resp. to Immunex L.R. 56.1 Stmt., ¶ 8.  Even if the 1995 date is accurate, however, the States submit evidence that Immunex continued to ***control*** the AWPs published for its Subject Drugs after it discontinued reporting AWPs directly to Publishers.  As described above, instead of AWPs, Immunex reported list prices which, the evidence shows, Immunex knew that the Publishers would use to calculate AWPs and report them to the States and other payors in ways that were predictable and foreseeable.  *Id*.; Ex. 16 ("Red Book and MediSPan set AWP based on list prices [so]. . .[i]n general, the databases need our pricing information by the 15th of each month.") (IAWP012960).

Immunex's claim that it did not control AWPs after 1995 is not credible.  At a minimum, the evidence reflects a genuine issue of material fact.  The motion should be denied.

**B.     The States Have Valid Damages Claims For Immunex Subject Drugs**

Immunex does its best to minimize its exposure to the States for damages by assailing Dr. Hartman's calculations.  To respond, the States submit that Dr. Hartman ***did*** calculate damages to Montana and Nevada which resulted from Immunex's misconduct, using the same methodologies applied to the other defendants.  Ex. 1 (Hartman Mont. Decl., Table 6); Ex. 3 (Hartman Nev. Decl., Table 4).  Dr. Hartman calculates damages in the amount of approximately

$138,000 for Montana[5] and $292,000 in Nevada.[6]  These damages are based on Dr. Hartman's thresholds as described in his declarations.  Ex. 1 (Hartman Mont. Decl. at ¶ 22); Ex. 3 (Hartman Nev. Decl. at ¶ 23).  Dr. Hartman attributes relatively modest damages to Immunex, but nevertheless Montana and Nevada were damaged.  There is no legal authority for entering summary judgment in a party's favor simply because its liability is *de minimus* compared to its co-defendants.  Summary judgment should be denied on this basis.

C.      **The States' Claims Are All Timely**

        Immunex repeats the statute of limitations argument from the Defendants' joint motions for summary judgment to avoid liability before February 2000 in Montana and March 1998 in Nevada.  Because the States have already rebutted the identical argument joined by Immunex in connection with the joint motions, the States abridge the discussion here.

        All of the States' claims are timely.  In both Montana and Nevada, applicable statutes of limitation are tolled by the discovery rule.  The limitations period is tolled until a putative plaintiff through reasonable diligence can discover the facts comprising the alleged actionable conduct.  *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441-43 (Mont. 2003); *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306-07 (9th Cir. 1992).  In these cases, that did not occur until shortly before the filing of the lawsuits.

        Contrary to Immunex's arguments, the States did not have adequate knowledge of the systemic industry-wide fraud that prevailed with respect to drug pricing and specifically the difference between acquisition costs and AWP until the months leading up to the filing of the lawsuits.  Medicaid personnel from both States have submitted testimony reflecting their programs' belief – ***until the filing of this lawsuit*** – that AWP and actual acquisition costs were

---

[5] Ex. 1 (Hartman Mont. Decl., Table 6).

[6] Ex. 3 (Hartman Nev. Decl., Table 4).

reasonably related.  *See, e.g.*, Buska Decl. at ¶ 9 ; Poulsen Decl. at ¶ 7; Duarte Decl. at ¶ 19;

Lawrence Decl. at ¶ 20.[7]

The principal evidence Immunex and its co-defendants have submitted to counter this

longstanding confidence in AWP held by Montana and Nevada Medicaid programs, among other

payors, consists of a series of federal reports regarding specific drugs for which gaps between

acquisition costs and AWPs had been uncovered.  At best, the reports establish discrete instances

of spreads and not the systemic industry-wide practice upon which these Attorneys General

eventually sued.  Even the state-specific information developed in the reports was confined to

certain drugs and based on limited information.  Importantly, with respect to the Defendants'

statute of limitations argument – the reports on their own would not have supported the bringing

of these lawsuits any earlier than they were filed.  In evaluating the timing of plaintiff's

knowledge, courts are careful to distinguish suspicion from knowledge.  *In re Massachusetts*

*Diet Drug. Litig.*, 338 F. Supp. 2d 198, 203 (D. Mass. 2004) (court will not "equate suspicion

with knowledge).  There are numerous cases addressing the public availability of information in

which the courts declined to find at the summary judgment stage that the information provided

plaintiff with sufficient knowledge to bring suit.  *See, e.g.*, *Cascone v. United States*, 370 F.3d 95

(1st Cir. 2004); *Sawyer v. Indevus Pharms., Inc.*, 2004 Mass. Super Lexis 274 (Super. Ct. 2004);

*Thomas v. Metropolitan Life Ins. Co.*, 149 F. Supp. 2d 38, 50-53 (S.D.N.Y. 2001).[8]

Here, the States did not have the evidence to sustain the filings of these lawsuits against

these Defendants on the Subject Drugs at issue here based on the reports alone.  ***If the States had***

***filed lawsuits against Immunex and its co-defendants based on the reports, Immunex would***

---

[7] These declarations were previously filed with the Court in connection with the States' Opposition to the Defendants' Joint Motions for Summary Judgment.  Their docket numbers are 3906, 3905, 3912 and 3913 respectively.

[8] These cases are treated more fully in Plaintiffs' Post-Trial Omnibus Trial Brief at § I(A) (Dkt. No. 3555).

*have used the same reports to argue that the States had not articulated specific enough claims regarding its drugs.*

Evaluation of when a plaintiff has developed enough information to bring suit is a fact-intensive inquiry resolved on summary judgment only under the most extraordinary facts. Immunex has not developed such extraordinary facts here.  Immunex's motion for summary judgment based on the statutes of limitation should be denied.

### D.     Immunex Violated the Montana and Nevada Medicaid Fraud Statutes and Montana's False Claims Act by Publishing Phony AWPs

Immunex again reiterates arguments identical to those raised in connection with Defendants' joint motions for summary judgment in which it joined in connection with the States' Medicaid fraud statute claims and Montana's false claims act claim without providing evidence unique to Immunex.  Therefore, the States summarize their counter-arguments here.

The States submit that Immunex's conduct in providing false AWPs, like that of its co-defendants, constitutes the "knowing or deliberate conduct on the part of the defendant" required for them to recover under their respective Medicaid fraud statutes.  Immunex Mem. at 9. The Montana False Claims Act similarly requires scienter.

The States submit that Immunex particularly met the scienter or "knowing and deliberate" standard when it directly reported AWPs to the Publishers, knowing that they were not what the plain and ordinary meaning of their label – "average wholesale price" – conveyed that they were.  MT/Nev. Resp. to L.R. 56.1 at ¶¶ 16-26.  Immunex reported these misleading prices knowing that the States and other payors would rely on them as a basis for reimbursement, *id*. at ¶ 17, and that providers would take advantage of spread between what they actually acquired the drugs for and the AWP to profit.  *Id*. at ¶¶ 18, 24-25.  As a result, the States overpaid for drugs.  *See* Hartman Reports (Exs. 1-4).

- 8 -

Finally, Immunex suggests that in order for Montana to prevail on its false claims act claim, "false claim form signed or submitted by Immunex" or direct communication between Immunex and the State regarding AWP is required.  Immunex Mem. at 100-11.  Immunex makes this argument without legal authority because there is no such requirement under the statute. Finally, Immunex recycles the argument that it is not a "provider" and thus cannot be liable under the States' Medicaid fraud statutes.  It is well-established in this case that the Medicaid fraud statutes are not interpreted so narrowly.  The statutes prohibit fraudulent actions by "persons," not just "providers" and this includes Immunex.

## III.    CONCLUSION

For all the foregoing reasons, Immunex's motion for summary judgment should be denied.


By_____/s/ Steve W. Berman_____                    DATED:  April 26, 2007
   Steve W. Berman
   Sean R. Matt
   Jeniphr A.E. Breckenridge
   HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
   Telephone: (206) 623-7292
   Facsimile: (206) 623-0594

   COUNSEL FOR PLAINTIFFS
   STATES OF MONTANA AND NEVADA

   Mike McGrath
   Attorney General of Montana
   Ali Bovingdon
   Assistant Attorney General
   Justice Building
   215 North Sanders
   P.O. Box 201401
   Helena, MT  56920-1402
   (406) 444-2026

   COUNSEL FOR PLAINTIFF
   STATE OF MONTANA

001534-15  165705 V1

Catherine Cortez Masto
Attorney General of the State of Nevada
L. Timothy Terry
Deputy Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

**CERTIFICATE OF SERVICE**

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA AND NEVADA'S OPPOSITION TO DEFENDANT IMMUNEX CORPORATION'S MOTION FOR SUMMARY JUDGMENT**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By **/s/ Steve W. Berman**

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292