UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| *State of Montana v. Abbott Labs., Inc., et al.*, Cause No. CV-02-09-H-DWM (D. Mont.) | Judge Patti B. Saris |

### MONTANA'S OPPOSITION TO PFIZER AND PHARMACIA'S MOTION FOR SUMMARY JUDGMENT

Pfizer Inc. ("Pfizer") and Pharmacia Corporation and Pharmacia & Upjohn (together "Pharmacia") seek summary judgment on the one ground that they contend distinguishes them from the rest of the defendants for particular treatment on summary judgment: the claim that the Montana Medicaid program reimbursed based on Direct Price, rather than AWP, for ***certain*** Pfizer and Upjohn Subject Drugs.[1]

In response, Montana acknowledges that Direct Price was specified as a basis for reimbursement as part of its pricing methodology, but evidence shows that it was not consistently used by the Medicaid program because the drug manufacturers did not make it available to Montana providers. Instances where Direct Price and not AWP was used as a basis for reimbursement for Pfizer or Pharmacia Subject Drugs could be a factor – but is not necessarily – a factor in calculating damages. As described below, Dr. Hartman's analysis of penalties is based on thresholds. If the reimbursement paid is greater than the threshold, Dr. Hartman concludes that the statutes have been violated. Pfizer and Pharmacia's submission does not address these points.

---

[1] Pfizer and Pharmacia also join in Defendants' Joint Motion For Summary Judgment (Dkt. No. 3647) (Def. Jt. Mot.").

-1-

A generalized claim that judgment should be entered in any party's favor just because Montana used Direct Price in some cases (in accordance with its Medicaid reimbursement rule) is not dispositive of any of the State's claims. Even if Direct Price were used for some Medicaid transactions included in the Hartman calculations, it would not be a basis to dismiss all claims. At best, Pfizer and Pharmacia's arguments that Dr. Hartman's calculations of penalties for Pfizer and Pharmacia improperly contain Direct Price transactions together with Montana's response creates a genuine issue of material fact that cannot be resolved on summary judgment. The motion should be denied.

Pfizer makes the additional argument that Montana's "Best Price" claim relating to Lipitor is unsupported – in part because of the State's participation in an earlier settlement related to Best Price claims for Pfizer drugs. Pfizer/Pharmacia Mem. at 9-10. After considering Pfizer's motion ***on this point alone***, Montana withdraws its Best Price claim related to Lipitor. In an earlier ruling, this Court held that Lipitor was the only Pfizer Subject Drug subject to the State's Medicaid Best Price claims (Count V). *State of Montana v. Abbott Labs, Inc.*, 321 F. Supp. 2d 187 (D. Mass. 2004). Thus, Montana's Best Price claims against Pfizer are resolved.

## I.     DISCUSSION

It is undisputed that regulations under which the Montana Medicaid pharmacy program reimburses for pharmaceuticals define Estimated Acquisition Cost ("EAC") as:

> [T]he cost of drugs for which no maximum allowable cost (MAC) price has been determined. The EAC is the department's best estimate of what price providers are generally paying in the state for a drug in the package size providers buy most frequently. The EAC for a drug is:
>
> (a) the direct price (DP) charged by manufacturers to retailers;
>
> (b) ***if there is no available DP for a drug or the department determines that the DP is not available to providers in the state***, the EAC is the average wholesale price (AWP) less 15%; or

>(c) the department may set an allowable acquisition cost for specified drugs or drug categories when the department determines that acquisition cost is lower than 1(a) or (b) based on data provided by the drug pricing file contractor.

MONT. ADMIN. R. 37.86.1101 (2006) (emphasis added).[2]

Direct Price issues from the same source as AWP: the drug's manufacturer. As the Court recently held in upholding California's complaint (in part) in *State of California, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott*, Memorandum & Order at 6 (Mar. 22, 2007), the Direct Price for a drug, like the AWP and FUL, "is published in various price reporting services, known as compendia, such as First DataBank." *Id.* Also like AWP, First DataBank compiles "drug pricing information from the manufacturers of the various drugs, and then bases its published pricing data on this information . . . . As a result, drug makers can effectively fix the AWP and DP of their own drugs." *Id.*

The "if there is no available DP for a drug or the department determines that the DP is not available to providers in the state, the EAC is the average wholesale price (AWP) less 15%" language in Montana's rule is important to Pfizer and Pharmacia's claims here because evidence in the record establishes that Direct Price was *not* generally available to Montana pharmacies and other providers. Dorothy Poulsen, Medicaid pharmacy program officer from 1996 to 2001, testified that she did not specifically recall Direct Price:

>Because I never used direct price . . . [I]t was not something we used or referred to . . . . There would have been so few instances

---

[2] The Pfizer/Pharmacia memorandum quotes outdated versions of the Rule incorrectly. Pfizer/Pharamcia Mem. at 2-3. Prior to 2002, the AWP-based reimbursement rate was AWP-10%; since 2002 it has been AWP-15%. Declaration of Jeff Buska in Support of State of Montana's Opposition to Defendants' Joint Motions for Summary Judgment ("Buska Decl.") (Dkt. No. 3906) at ¶¶ 11-12.

-3-

> where there would have been a direct price from the manufacturer to the pharmacist.[3]

Montana Medicaid eventually discontinued its use of direct pricing as a reimbursement measure in July 1, 2002 which "enthused" pharmacies "[b]ecause the pharmacies were unable to acquire drugs at the direct price." *Id*. at 189. There is extensive additional evidence in the record of the unavailability of Direct Price to Montana providers. *See* Mont. Resp. to Pfizer/Pharmacia L.R. 56.1 Stmt. at ¶ 15. Because Direct Price was not available in the State, the Medicaid program used the discounted AWP price set by the Rule. MONT. ADMIN. R. 37.86.1101 (2006); Pfizer/Pharmacia Mem. at 2-3.

The Pfizer/Pharmacia focus on the question of whether the State used Direct Price or AWP is misplaced. Montana's allegation relates to the difference between the discounted AWP and average sales prices (ASPs). Once it became clear that Direct Price was not available to providers in the State, as discussed above, the Rule directed Montana Medicaid to use one of the alternatives provided. MONT. ADMIN. R. 37.86.1101. Montana did so and continued to do so even after this lawsuit was filed for the reasons former Montana Medicaid chief Jeff Buska sets forth in the declaration submitted in support of Montana's Opposition to Defendants' Joint Motion For Summary Judgment ("Buska Decl.") (Dkt. No. 2906): "it was the ***only*** pricing consistently available from each and every drug manufacturer for all drugs and thus this was what the reimbursement methodology and the state system were based on." *Id*. at ¶¶ 12-14. Medicaid "deliberately chose," in Pfizer and Pharmacia's words, to use AWP only because Direct Price was not available and the Rule guided the program to use AWP. Pfizer/Pharmacia Mem. at 4. The basis for the State's claim, however, is ***not*** the inaccessible Direct Price and

---

[3] *See* Declaration of Jeniphr Breckenridge in Support of the States of Nevada and Montana's Memoranda in Opposition to the Individual Defendants' Motions for Summary Judgment ("Breckenridge Decl."), Ex. 40 (Poulsen Dep. at 152).

-4-

whether it was higher or lower than the AWP-based reimbursement.  *Id.*   The basis for Montana's claims is the Medicaid program's use of AWP and whether when it was used it was a true reflection of average wholesale price.  Pfizer and Pharmacia do not even address this claim. Montana has submitted evidence that the AWPs were not accurate and did not meet the plain meaning conveyed by their label – "average wholesale price" – or Montana Medicaid personnel's expectations.  *See* Buska Decl. at ¶¶ 8-15; Declaration of Dorothy Poulsen in Support of Montana's Opposition to Defendants' Summary Judgment (Dkt. No. 2905) at ¶¶ 5-11.  Montana's claims are based on the difference between AWP and ASP.  Where Pfizer and Pharmacia have reported AWPs that exceed ASP, Montana contends that Pfizer and Pharmacia have misled it and violated the State's consumer protection act, the Medicaid fraud statute and the False Claims Act.[4]

Dr. Hartman's calculations are consistent with this position.  Dr. Hartman used thresholds to determine whether a claim violated the Unfair Trade Practices Act, the Medicaid fraud statute or the False Claims Act.  Breckenridge Decl. Ex. 1 at ¶¶ 18-23.  One threshold consisted of the EAC for a given point in time.  In Montana, the EAC is approximated – usually by a formula which includes AWP less a discount.  In essence, Dr. Hartman used the EAC formula as a surrogate for ASP for the State calculations.  *Id*. at ¶ 8 n.8 ("Properly measured, the ASP to a particular group of providers is the EAC of that group of providers.").  This is consistent with Dr. Hartman's measures for non-Medicaid groups of providers.  If Medicaid's reimbursement for a claim exceeded the threshold, Dr. Hartman concluded that there was a violation.

---

[4] Montana only intends to make claims for transactions in which the Medicaid pharmacy program reimbursed based on AWP.  Montana is investigating Pfizer and Pharmacia's charge, raised for the first time on summary judgment, that Dr. Hartman's damages calculations include drugs reimbursed at Direct Price and assessed penalties for those claims.  Pfizer/Pharmacia Mem. at 6; Gaier Direct Price Decl. at ¶ 6.  If Direct Price was used as the basis of reimbursement and it did not meet threshold amounts, Montana acknowledges that Dr. Hartman's report should be revised.  The inclusion of Direct Price transactions in the Hartman calculations is not, however, by itself a basis for judgment in Pfizer and Pharmacia's favor.

Importantly, Pfizer and Pharmacia's sweeping "fact" conclusions regarding Direct Price occlude important facts precluding summary judgment: the Direct Price argument does not apply to all Pfizer and Pharmacia Subject Drugs for the entire relevant time period. Even if the claims regarding the use of Direct Price are correct, Pfizer and Pharmacia concede that AWP was used as a basis for reimbursement for some Subject Drugs for the entire relevant time period and for other Subject Drugs for at least portions of the relevant time period.[5] Montana agrees that it did not suffer damages for Subject Drugs reimbursed based on Direct Price, but the evidence does not support a judgment as to Subject Drugs that were reimbursed at Direct Price at some point during the relevant time period if those drugs were also reimbursed at AWP at other points during the relevant time period.

## II.  CONCLUSION

For all of these reasons, Pfizer and Pharmacia's motion for summary judgment on Direct Price issues should be denied. Judgment on Montana's Best Price claim related to Pfizer's Lipitor is appropriate.

By   /s/ Steve W. Berman                                    DATED: April 26, 2007
   Steve W. Berman
   Sean R. Matt
   Jeniphr A.E. Breckenridge
   HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
   Telephone: (206) 623-7292
   Facsimile: (206) 623-0594

---

[5] *See* Pfizer Pharmacia Mem. at 3 n.3 (drugs bearing Pfizer labeler code 00049 were reimbursed using AWP after June 2001, drugs bearing Pfizer labeler code 00069 were reimbursed based on AWP prior to January 1995 and after June 2001). *See id*. at n.4 (drugs bearing Upjohn labeler code 00009 were reimbursed based on AWP after June 1999, drugs bearing Parke-Davis labeler code 00071 were reimbursed based on AWP after June 1992). Moreover, if Montana did not reimburse for a Subject Drug during the relevant time period, the basis of reimbursement for that drug is immaterial because Montana is not claiming damages for the Subject Drug. *Id*. at n.6.

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

COUNSEL FOR PLAINTIFF
STATE OF MONTANA

-8-

## CERTIFICATE OF SERVICE

   I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA'S OPPOSITION TO PFIZER AND PHARMACIA'S MOTION FOR SUMMARY JUDGMENT,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.


          By   **/s/ Steve W. Berman**
            Steve W. Berman
            **HAGENS BERMAN SOBOL SHAPIRO LLP**
            1301 Fifth Avenue, Suite 2900
            Seattle, WA  98101
            (206) 623-7292