UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| *State of Montana v. Abbott Labs., Inc., et al.*, Cause No. CV-02-09-H-DWM (D. Mont.) | Judge Patti B. Saris |

**MONTANA'S RESPONSE TO LOCAL RULE 56.1
STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
PFIZER'S AND PHARMACIA'S MOTION FOR SUMMARY JUDGMENT**

The State of Montana, by its counsel, hereby respond to the Local Rule 56.1 Statement of Undisputed Material Facts In Support of Pfizer's and Pharmacia's Motion for Summary Judgment ("Pfizer/Pharmacia L.R. 56.1 Stmt.") and where necessary counter-designates undisputed facts in opposition to the motion.  Counter-designations of deposition transcripts and documents cited herein are attached to the Declaration of Jeniphr Breckenridge in Support of the States of Nevada and Montana's Memoranda in Opposition to the Individual Defendants' Motions for Summary Judgment ("Breckenridge Decl.").[1]

   1.    Admit.

   2.    Deny.  "EAC" is and has been defined in MONT. ADMIN. R. 37.86.1101 (2006). EAC is also defined in the document cited in this paragraph as "'Estimated Acquisition Cost' means the state agency's best estimate of what price providers generally pay for a particularly

---

[1] The State also incorporates herein the exhibits to the State of Montana's Memorandum In Support of Motion For Partial Summary Judgment Against Certain Defendants (Dkt. No. 3731), the State of Montana's Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment (Dkt. No. 3902), and the State of Montana's Response to Statement of Undisputed Material Facts in Support of Defendants' Joint Motion for Summary Judgment (Dkt. No. 3903).  The State further incorporates Plaintiffs' Post-Trial Proposed Findings of Fact (Dkt. No. 3553).

drug." Stempel Decl. Ex. 4.  The language quoted is the methodology used by Montana Medicaid to estimate the "price providers generally pay for a particular drug."

3. Deny.  "EAC" is and has been defined in MONT. ADMIN. R. 37.86.1101 (2006). EAC is also defined in the document cited in this paragraph as "'Estimated Acquisition Cost' means the state agency's best estimate of what price providers generally pay for a particularly drug." Stempel Decl. Ex. 3.  The language quoted is the methodology used by Montana Medicaid to estimate the "price providers generally pay for a particular drug."

4. Deny.  "EAC" is and has been defined in MONT. ADMIN. R. 37.86.1101 (2006). EAC is also defined in the document cited in this paragraph as "'Estimated Acquisition Cost' means the state agency's best estimate of what price providers generally pay for a particularly drug." Stempel Decl. Ex. 4.  The language quoted is the methodology used by Montana Medicaid to estimate the "price providers generally pay for a particular drug."

5. Admit.

6. Admit that this is a conclusion drawn by the Gaier Direct Price Declaration.

7. Admit that this is a conclusion drawn by the Gaier Direct Price Declaration.

8. Admit that this is a conclusion drawn by the Gaier Direct Price Declaration.

9. Admit that this is a conclusion drawn by the Gaier Direct Price Declaration.

10. Admit.

11. Deny.  The State counter-designates that the relevant time period at issue in this litigation is 1991 to the present.  No Subject Drug was reimbursed by Montana Medicaid at Direct Price at every point during the entire time period.

12. Admit.

13. Deny. The State counter-designates that the relevant time period at issue in this litigation is 1991 to the present; no Subject Drug was reimbursed by Montana Medicaid at Direct Price at every point during the entire time period.

14. Admit that this is a conclusion drawn by the Gaier Direct Price Declaration.

15. Admit. The State counter-designates that Direct Price was not available to Montana providers during the relevant time period at issue in this lawsuit. The State further counter-designates that Montana Medicaid personnel testified that Direct Price was *not* available to Montana pharmacies and this was why direct price was eventually discontinued altogether as a basis of reimbursement for Montana Medicaid's pharmacy program. Dorothy Poulsen testified that she did not specifically recall Direct Price:

> [b]ecause I never used direct price. . . . [I]t was not something we used or referred to. . . . There would have been so few instances where there would have been a direct price from the manufacturer to the pharmacist. [Breckenridge Decl. Ex. 40 (Poulsen Dep. at 151-52).]

Poulsen also testified that pharmacies were "enthused" over the discontinuation of Montana Medicaid's use of direct pricing as a reimbursement measure "[b]ecause the pharmacies were unable to acquire drugs at the direct price." *Id*. at 189. The State counter-designates documents from State Medicaid files confirming the unavailability of direct pricing to Montana pharmacies. Breckenridge Decl. Ex. 8 (MT 005440), Ex. 11 (MT 005370-71), Ex. 10 (MT 005358-59) (describing the reality of the use of Direct Price: "If the direct price is not available to providers in the state, the Department uses the average wholesale price (AWP) less 10 percent or the Department may set an allowable acquisition cost when the Department determines that acquisition cost is lower than either the direct price or AWP less 10 percent (this is the case for some 400 drugs that are assigned Medicaid AWP prices)."). The State further counter-designates that this was part of the rationale for discontinuing reimbursements based on direct

price.  *See also* Breckenridge Decl. Ex. 40 (Poulsen Dep. at 151:22-152:6, 152:11-13, 182:22-183:5, 189 (detailing the inability of Montana providers to obtain a direct price)).

16. Deny. The State counter-designates that the purpose of the survey is not specified on the document cited, but the documents states that "[t]he remaining 70 questionnaires were analyzed to determine the sources used by Montana pharmacies to obtain a selected list of medications that are reimbursed at a direct order rate." Stempel Decl. Ex. 6 (MT005413-5416).

17. It is undisputed that Montana providers could not acquire the drugs directly from manufacturers. Deny that the evidence proffered makes any meaningful showing with respect to "buying groups." Admit that of the 70 respondents, many were purchasing through wholesalers.

18. Admit that this is an accurate reproduction of the deposition transcript.

19. Admit that this is an accurate reproduction of the deposition transcript.

20. Admit.

21. Admit that Mrs. Poulsen wrote this.

22. Admit that Mrs. Poulsen wrote this.

23. Admit that Mrs. Poulsen wrote this.

24. Admit that Mrs. Poulsen wrote this.

25. Admit.

26. Admit that Mr. Smith wrote this.

27. Admit that this is a accurate reproduction of the deposition transcript.

28. Deny. The State counter-designates that the only change contemplated by the Notice of Amendment cited relates to the change in dispensing fee from $4.35 to $4.70. The State further counter-designates that the other matters are not a part of the Notice of Amendment. The State further designates that the document does not reflect that the measures cited were "in

- 5 -

response to public comments in opposition to the proposed change in reimbursement from AWP-10% to AWP-15%." The State further designates that the document states that the increase in the dispensing fee was taken after considering comments received regarding the dispensing fee.

29. Admit.

30. Admit that this is an accurate reproduction of the document.

31. Admit but deny that Mrs. Marr "apologized for under-reimbursing pharmacists for the purchases of Pfizer and Abbott drugs." The State counter-designates that Mrs. Marr "apologizes" for "the delay in getting this to you" and for "the inconvenience this has caused." The State further counter-designates that it is not even clear whether the recipient pharmacy had been under-reimbursed or reimbursed at all for the drugs mentioned.

32. Admit that Direct Price was and is a basis for reimbursement under the Montana Rule. MONT. ADMIN. R. 37.86.1101.

33. Deny. Pfizer and Pharmacia's own expert opines that this is not always the case. Gaier Direct Price Decl. at 3.

34. Admit that in July 2002 Montana Medicaid discontinued the use of Direct Price as a reimbursement method for prescription drugs.

35. Admit that this is a conclusion drawn in the Gaier Direct Price Decl. at ¶ 6. Montana is investigating this claim.

36. Montana has withdrawn it Best Price claim related to Pfizer's Lipitor. Therefore, it is not necessary to respond.

37. Montana has withdrawn it Best Price claim related to Pfizer's Lipitor. Therefore, it is not necessary to respond.

- 6 -

By     /s/ Steve W. Berman                                    DATED:  April 26, 2007
Steve W. Berman
Sean R. Matt
Jeniphr A.E. Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

COUNSEL FOR PLAINTIFF
STATE OF MONTANA

- 7 -

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA'S RESPONSE TO LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PFIZER'S AND PHARMACIA'S MOTION FOR SUMMARY JUDGMENT,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

      By      **/s/ Steve W. Berman**
      Steve W. Berman
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      (206) 623-7292