# Exhibit D



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

March 27, 2007

***<u>Via Certified Mail / Return Receipt Requested</u>***

Johnson & Johnson
501 George Street
New Brunswick, NJ  08901-1161

  Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
    *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

    <u>Amended Notice pursuant to:  California Civil Code § 1782; Georgia</u>
    <u>Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes,</u>
    <u>Title 5, § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3);</u>
    <u>Texas Business & Commercial Code § 17.505; West Virginia Code</u>
    <u>§ 46A-6-106(b); and, Wyoming Statutes § 40-12-109</u>

To Whom It May Concern:

  PLEASE TAKE NOTICE that it has come to the attention of a national putative
class of consumers, self-insured employers, health and welfare plans, health insurers
and other end-payors of prescription drugs that AstraZeneca, Inc. ("AstraZeneca"),
Bristol–Myers Squibb Co. and its subsidiaries, Oncology Therapeutics Network Corp.
and Apothecon, Inc. ("the BMS Group"), Johnson & Johnson and its subsidiaries,
Centocor, Inc., Janssen Pharmaceutical Products, L.P., McNeil-PPC, Inc., and Ortho
Biotech ("the J&J Group"), and Schering-Plough Corp. and its subsidiary, Warrick
Pharmaceuticals Corp. ("the SP Group"), implemented a scheme to unlawfully inflate
the "mark-up" factor between the so-called wholesale acquisition cost (or "WAC")
and the so-called average wholesale price (or "AWP") of a large number of
prescription pharmaceutical products thereby causing members of the proposed Class,
whose payments for those pharmaceuticals were tied to AWP, to make excess
payments for those pharmaceuticals.

  The pharmaceuticals at issue in this case which are manufactured by
AstraZeneca include Zoladex®.  The pharmaceuticals at issue in this case which are

ATTORNEYS AT LAW   SEATTLE LOS ANGELES CAMBRIDGE PHOENIX CHICAGO
206.623.7292  206.623.0594
www.hbsslaw.com

001534-16 161478 V1

Johnson & Johnson
March 27, 2007
Page 2

manufactured by the BMS Group include, but are not limited to, Blenoxane®, Paraplatin®, Cytoxan®, Rubex®, Etopophos®, Vepesid®, and Taxol. The pharmaceuticals at issue in this case which are manufactured by the J&J Group include Procrit® and Remicade®. The pharmaceuticals at issue in this case which are manufactured by the SP Group include, but are not limited to, Proventil®, Intron A®, and Temodar®. The details of the wrongdoing have been alleged in the AWP litigation.

The plaintiffs include third party payors like Blue Cross of Massachusetts and consumers who made co-payments.

Accordingly, AstraZeneca, the BMS Group, the J&J Group, and the SP Group have engaged in consumer fraud, and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of the California Deceptive Practices Act, Cal. Civ. Code § 1770, *et seq.*, the Georgia Fair Business Practices Act, Ga. Code. Ann. § 10-1-393, the Indiana Consumer Sales and Deceptive Practices Act, Ind. Code Ann. § 24-5-0.5-3, the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 205-A, *et seq.*, Mass. Gen. Laws Ch. 93A, § 1, *et seq.*, the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the West Virginia Consumer Protection Act, W.Va. Code § 46A-6-101 *et seq.*, and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.* This notice is being served on behalf of the above-referenced putative class.

Said putative class hereby demands that AstraZeneca, the BMS Group, the GSK Group, the J&J Group, and the SP Group correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the class will continue to seek recovery of damages, multiple damages, costs and fees through the courts under California Civil Code §§ 1780, 1781, Georgia Code § 10-1-399, Indiana Code § 24-5-0.5-3, Maine Revised Statutes, Title 5, § 213, Massachusetts General Laws Chapter 93A, § 9(1), § 11, Texas Business & Commercial Code § 17.50(a)(1), West Virginia Code § 46A-6-106(a)(1), and Wyoming Statutes § 40-12-108.

We have previously provided each of the Track 1 defendants with demand figures. And, we have done so in mediations with all of the defendants. If defendants pay those amounts, the injuries to the class would be cured. The exact amounts are as follows:

Johnson & Johnson
March 27, 2007
Page 3

| Manufacturer | Estimation of National Damages[1] to: | |
| | Medicare (TPP and Consumer) | Non-Medicare (TPP and Consumer Damages) |
| --- | --- | --- |
| AstraZeneca | REDACTED | |
| Bristol-Myers Squibb | | |
| Johnson & Johnson | | |
| Schering-Plough | | |

Notes:

1. Damages do not include any adjustment for pre-judgment interest.

The Massachusetts only damages can be calculated based on Massachusetts Share = 2.64%.

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. The specific amounts for each state can be calculated on a percentage basis.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you waive the 30 day period. At the end of the period an amended complaint will be filed.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

SWB:dld



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

March 27, 2007

***Via Certified Mail / Return Receipt Requested***

Abbott Laboratories, Inc.
c/o CT Corp.
101 Federal Street
Boston, MA  02110

   Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
     *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

     Second Notice pursuant to:  California Civil Code § 1782; Indiana Code
     § 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
     Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
     Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
     40-12-102(a)

To Whom It May Concern:

   Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

ATTORNEYS AT LAW         SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
206.623.7292  206.623.0594
www.hbsslaw.com
001514-16 161321 V1

Abbott Laboratories, Inc.
March 27, 2007
Page 2

price (or "AWP") of a large number of prescription pharmaceutical products thereby
causing members of the proposed class, whose payments for those pharmaceuticals
were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the
full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa
Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2
Defendants") have engaged in consumer fraud and unfair and deceptive practices in
connection with the sale of prescription pharmaceutical products in violation of Mass.
Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being
served on behalf of the above-referenced putative classes as defined in plaintiffs'
proposed order filed in the *AWP Litigation.*

Said classes hereby demand that the Track 2 Defendants correct or otherwise
rectify the damage caused by such unfair trade practices and return all excess monies
paid by putative class members. Otherwise, the classes will continue to seek recovery
of damages, multiple damages costs and fees through the courts under Massachusetts
General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer
protection statutes at issue. For any other state requiring a monetary demand, plaintiffs
can calculate such if requested.

As described above, the purpose of the demand letter requirement is to
encourage negotiation and settlement. In a case as novel and complex as ours and
where both parties are fully aware of all of the facts and figures involved and have been
litigating these issues for four years, the purpose of the demand letter requirement has
long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would
be cured. Damages do not include any adjustment for pre-judgment interest or trebling
and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|:---:|:---:|
| Abbott | |

REDACTED

Abbott Laboratories, Inc.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

SWB:dld

cc:    Toni-Ann Citera



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

March 27, 2007

***Via Certified Mail / Return Receipt Requested***

Baxter Healthcare Corp.
c/o CT Corp.
101 Federal Street
Boston, MA 02110

> Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
> *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*
>
> Amended Notice pursuant to: California Civil Code § 1782; Indiana Code
> § 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
> Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
> Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
> 40-12-102(a)

To Whom It May Concern:

Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required. However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Baxter Healthcare Corp.
March 27, 2007
Page 2

price (or "AWP") of a large number of prescription pharmaceutical products thereby causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Baxter | |

REDACTED

Baxter Healthcare Corp.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

cc:    Merle DeLancey



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

March 27, 2007

*<u>Via Certified Mail / Return Receipt Requested</u>*

Bristol-Myers Squibb
c/o C.T. Corporation System
1201 Peachtree St. NE
Atlanta, GA  30361

Re:  *In re Pharmaceutical Industry Average Wholesale Price Litigation,
MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

<u>Amended Notice pursuant to:  California Civil Code § 1782; Georgia
Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes,
Title 5, § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3);
Texas Business & Commercial Code § 17.505; West Virginia Code
§ 46A-6-106(b); and, Wyoming Statutes § 40-12-109</u>

To Whom It May Concern:

PLEASE TAKE NOTICE that it has come to the attention of a national putative
class of consumers, self-insured employers, health and welfare plans, health insurers
and other end-payors of prescription drugs that AstraZeneca, Inc. ("AstraZeneca"),
Bristol–Myers Squibb Co. and its subsidiaries, Oncology Therapeutics Network Corp.
and Apothecon, Inc. ("the BMS Group"), Johnson & Johnson and its subsidiaries,
Centocor, Inc., Janssen Pharmaceutical Products, L.P., McNeil-PPC, Inc., and Ortho
Biotech ("the J&J Group"), and Schering-Plough Corp. and its subsidiary, Warrick
Pharmaceuticals Corp. ("the SP Group"), implemented a scheme to unlawfully inflate
the "mark-up" factor between the so-called wholesale acquisition cost (or "WAC")
and the so-called average wholesale price (or "AWP") of a large number of
prescription pharmaceutical products thereby causing members of the proposed Class,
whose payments for those pharmaceuticals were tied to AWP, to make excess
payments for those pharmaceuticals.

Bristol-Myers Squibb
March 27, 2007
Page 2

The pharmaceuticals at issue in this case which are manufactured by AstraZeneca include Zoladex®. The pharmaceuticals at issue in this case which are manufactured by the BMS Group include, but are not limited to, Blenoxane®, Paraplatin®, Cytoxan®, Rubex®, Etopophos®, Vepesid®, and Taxol. The pharmaceuticals at issue in this case which are manufactured by the J&J Group include Procrit® and Remicade®. The pharmaceuticals at issue in this case which are manufactured by the SP Group include, but are not limited to, Proventil®, Intron A®, and Temodar®. The details of the wrongdoing have been alleged in the AWP litigation.

Accordingly, AstraZeneca, the BMS Group, the J&J Group, and the SP Group have engaged in consumer fraud and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of the California Deceptive Practices Act, Cal. Civ. Code § 1770, *et seq.*, the Georgia Fair Business Practices Act, Ga. Code. Ann. § 10-1-393, the Indiana Consumer Sales and Deceptive Practices Act, Ind. Code Ann. § 24-5-0.5-3, the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 205-A, *et seq.*, Mass. Gen. Laws Ch. 93A, § 1, *et seq.*, the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the West Virginia Consumer Protection Act, W.Va. Code § 46A-6-101 *et seq.*, and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.* This notice is being served on behalf of the above-referenced putative class.

Said putative class hereby demands that AstraZeneca, the BMS Group, the J&J Group, and the SP Group correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the class will continue to seek recovery of damages, multiple damages, costs and fees through the courts under California Civil Code §§ 1780, 1781, Georgia Code § 10-1-399, Indiana Code § 24-5-0.5-3, Maine Revised Statutes, Title 5, § 213, Massachusetts General Laws Chapter 93A, § 9(1), § 11, Texas Business & Commercial Code § 17.50(a)(1), West Virginia Code § 46A-6-106(a)(1), and Wyoming Statutes § 40-12-108.

We have previously provided each of the Track 1 defendants with demand figures. And, we have done so in mediations with all of the defendants. If defendants pay those amounts, the injuries to the class would be cured. The exact amounts are as follows:

Bristol-Myers Squibb
March 27, 2007
Page 3

| Manufacturer | Estimation of National Damages[1] to: | |
| --- | --- | --- |
| | Medicare (TPP and Consumer Damages Only) | Non-Medicare (TPP and Consumer Damages) |
| AstraZeneca | REDACTED | |
| Bristol-Myers Squibb | | |
| Johnson & Johnson | | |
| Schering-Plough | | |

Notes:

1. Damages do not include any adjustment for pre-judgment interest.

The Massachusetts only damages can be calculated based on Massachusetts Share = 2.64%.

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. You can calculate other states based on a percentage as well.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you waive the 30 day period. We intend to file a new complaint if the 30 days expires.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

SWB:dld



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

March 27, 2007

**_Via Certified Mail / Return Receipt Requested_**

Watson Pharmaceuticals, Inc.
311 Bonnie Circle
Corona, CA  92880

   Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
     *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

     <u>Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code</u>
     <u>§ 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas</u>
     <u>Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West</u>
     <u>Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,</u>
     <u>40-12-102(a)</u>

To Whom It May Concern:

   Given the history of the *Average Wholesale Price Litigation ("AWP Litigation"),*
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale
price (or "AWP") of a large number of prescription pharmaceutical products thereby

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Watson Pharmaceuticals, Inc.
March 27, 2007
Page 2


causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation.*

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Watson |  |

REDACTED

Watson Pharmaceuticals, Inc.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

cc:    Douglas Farquhar



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

March 27, 2007

**_Via Certified Mail / Return Receipt Requested_**

Sicor, Inc.
19 Hughes
Irvine, CA 92618

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
      *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

      Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
      § 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
      Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
      Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
      40-12-102(a)

To Whom It May Concern:

Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required. However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale
price (or "AWP") of a large number of prescription pharmaceutical products thereby

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Sicor, Inc.
March 27, 2007
Page 2

causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|--------------|-------------------------------------|
| Sicor        |                                     |

REDACTED

Sicor, Inc.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

cc:    Elizabeth Hack



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

March 27, 2007

**_Via Certified Mail / Return Receipt Requested_**

Astrazeneca Pharmaceuticals LP
1800 Concord Pike
Wilmington, DE 19850

     Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
             *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

            Amended Notice pursuant to:  California Civil Code § 1782; Georgia
            Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes,
            Title 5, § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3);
            Texas Business & Commercial Code § 17.505; West Virginia Code
            § 46A-6-106(b); and, Wyoming Statutes § 40-12-109

To Whom It May Concern:

     PLEASE TAKE NOTICE that it has come to the attention of a national putative class of consumers, self-insured employers, health and welfare plans, health insurers and other end-payors of prescription drugs that AstraZeneca, Inc. ("AstraZeneca"), Bristol–Myers Squibb Co. and its subsidiaries, Oncology Therapeutics Network Corp. and Apothecon, Inc. ("the BMS Group"), Johnson & Johnson and its subsidiaries, Centocor, Inc., Janssen Pharmaceutical Products, L.P., McNeil-PPC, Inc., and Ortho Biotech ("the J&J Group"), and Schering-Plough Corp. and its subsidiary, Warrick Pharmaceuticals Corp. ("the SP Group"), implemented a scheme to unlawfully inflate the "mark-up" factor between the so-called wholesale acquisition cost (or "WAC") and the so-called average wholesale price (or "AWP") of a large number of prescription pharmaceutical products thereby causing members of the proposed Class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

     The pharmaceuticals at issue in this case which are manufactured by AstraZeneca include Zoladex®.  The pharmaceuticals at issue in this case which are

ATTORNEYS AT LAW       SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
206.623.7292    206.623.0594
www.hbsslaw.com

001514.16 161484 V1

Astrazeneca Pharmaceuticals LP
March 27, 2007
Page 2

manufactured by the BMS Group include, but are not limited to, Blenoxane®, Paraplatin®, Cytoxan®, Rubex®, Etopophos®, Vepesid®, and Taxol. The pharmaceuticals at issue in this case which are manufactured by the J&J Group include Procrit® and Remicade®. The pharmaceuticals at issue in this case which are manufactured by the SP Group include, but are not limited to, Proventil®, Intron A®, and Temodar®. The details of the wrongdoing have been alleged in the AWP litigation.

The plaintiffs include BCBS of Massachusetts, Mr. Townsend and Mr. Howe, among others. Accordingly, AstraZeneca, the BMS Group, the J&J Group, and the SP Group have engaged in consumer fraud and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of the California Deceptive Practices Act, Cal. Civ. Code § 1770, *et seq.*, the Georgia Fair Business Practices Act, Ga. Code. Ann. § 10-1-393, the Indiana Consumer Sales and Deceptive Practices Act, Ind. Code Ann. § 24-5-0.5-3, the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 205-A, *et seq.*, Mass. Gen. Laws Ch. 93A, § 1, *et seq.*, the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the West Virginia Consumer Protection Act, W.Va. Code § 46A-6-101 *et seq.*, and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.* This notice is being served on behalf of the above-referenced putative class.

Said putative class hereby demands that AstraZeneca, the BMS Group, the J&J Group, and the SP Group correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the class will continue to seek recovery of damages, multiple damages, costs and fees through the courts under California Civil Code §§ 1780, 1781, Georgia Code § 10-1-399, Indiana Code § 24-5-0.5-3, Maine Revised Statutes, Title 5, § 213, Massachusetts General Laws Chapter 93A, § 9(1), § 11, Texas Business & Commercial Code § 17.50(a)(1), West Virginia Code § 46A-6-106(a)(1), and Wyoming Statutes § 40-12-108.

We have previously provided each of the Track 1 defendants with demand figures. And, we have done so in mediations with all of the defendants. If defendants pay those amounts, the injuries to the class would be cured. The exact amounts are as follows:

Astrazeneca Pharmaceuticals LP
March 27, 2007
Page 3

| Manufacturer | Estimation of National Damages[1] to: | |
| --- | --- | --- |
| | Medicare (Consumer and TPPs) | Non-Medicare (TPP and Consumer Damages) |
| AstraZeneca | | |
| Bristol-Myers Squibb | | |
| Johnson & Johnson | REDACTED | |
| Schering-Plough | | |

Notes:

1. Damages do not include any adjustment for pre-judgment interest.

The Massachusetts only damages can be calculated by applying 2.64% to the totals. Other state percentages can be calculated as well.

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. You can calculate other states based on a percentage as well.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you waive the 30 day period. We intend to file a new complaint if the 30 days expires. If after 30 days there is no cure, plaintiffs will proceed and seek damages, multiple damages and fees.

Astrazeneca Pharmaceuticals LP
March 27, 2007
Page 4


Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP


Steve W. Berman

SWB:dld



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

March 27, 2007

***Via Certified Mail / Return Receipt Requested***

Fujisawa USA, Inc.
c/o CT Corp.
101 Federal Street
Boston, MA 02110

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,
MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
§ 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
40-12-102(a)

To Whom It May Concern:

Given the history of the *Average Wholesale Price Litigation ("AWP Litigation")*,
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Fujisawa USA, Inc.
March 27, 2007
Page 2

price (or "AWP") of a large number of prescription pharmaceutical products thereby causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Fujisawa Group | |

REDACTED

Fujisawa USA, Inc.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

cc:    Andrew Hurst



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

March 27, 2007

**_Via Certified Mail / Return Receipt Requested_**

Fujisawa Healthcare, Inc.
c/o CT Corp.
101 Federal Street
Boston, MA  02110

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
      *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

      Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
      § 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
      Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
      Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
      40-12-102(a)

To Whom It May Concern:

      Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale

---

      [1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Fujisawa Healthcare, Inc.
March 27, 2007
Page 2

price (or "AWP") of a large number of prescription pharmaceutical products thereby causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Fujisawa Group | |

REDACTED

Fujisawa Healthcare, Inc.
March 27, 2007
Page 3


Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP


Steve W. Berman


cc:    Andrew Hurst



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

March 27, 2007

**_Via Certified Mail / Return Receipt Requested_**

Aventis Pharmaceuticals, Inc.
c/o Corporation Service Co.
84 State Street
Boston, MA  02109

> Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
>       *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*
>
> <u>Amended Notice pursuant to:  Massachusetts Gen. Laws Chapter 93A,
> § 9(3); California Civil Code § 1782; Georgia Code § 10-1-399; Indiana
> Code § 24-5-0.5-5(a); Texas Business & Commercial Code § 17.505; West
> Virginia Code § 45A-6-106(b); and Wyoming Statutes § 40-12-109,
> 40-12-102(a)</u>

To Whom It May Concern:

Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that is
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Aventis implemented a scheme commencing in 1991 and continuing to
2004 to inflate the average wholesale price (or "AWP") of a large number of
prescription pharmaceutical products thereby causing members of the proposed class,
whose payments for those pharmaceuticals were tied to AWP, to make excess payments
for those pharmaceuticals.

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Aventis Pharmaceuticals, Inc.
March 27, 2007
Page 2

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints. The plaintiffs and classes are identified in the Fourth Amended Complaint.

Accordingly, Aventis has engaged in consumer fraud and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages, costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Aventis Group | |

REDACTED

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

Aventis Pharmaceuticals, Inc.
March 27, 2007
Page 3

    In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. At the end of 30 days we will file an amended complaint and will seek multiple damages, fees and costs.

    PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

                                Sincerely,

                                HAGENS BERMAN SOBOL SHAPIRO LLP


                                Steve W. Berman

SWB:dld

cc:    Robert J. McCully



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

March 27, 2007

***Via Certified Mail / Return Receipt Requested***

Schering-Plough Corp.
c/o C T Corporation System
818 W. 7th Street
Los Angeles, CA  90017

> Re:  *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
> *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*
>
> Amended Notice pursuant to:  California Civil Code § 1782; Georgia
> Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes,
> Title 5, § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3);
> Texas Business & Commercial Code § 17.505; West Virginia Code
> § 46A-6-106(b); and, Wyoming Statutes § 40-12-109

To Whom It May Concern:

PLEASE TAKE NOTICE that it has come to the attention of a national putative
class of consumers, self-insured employers, health and welfare plans, health insurers
and other end-payors of prescription drugs that AstraZeneca, Inc. ("AstraZeneca"),
Bristol–Myers Squibb Co. and its subsidiaries, Oncology Therapeutics Network Corp.
and Apothecon, Inc. ("the BMS Group"), Johnson & Johnson and its subsidiaries,
Centocor, Inc., Janssen Pharmaceutical Products, L.P., McNeil-PPC, Inc., and Ortho
Biotech ("the J&J Group"), and Schering-Plough Corp. and its subsidiary, Warrick
Pharmaceuticals Corp. ("the SP Group"), implemented a scheme to unlawfully inflate
the "mark-up" factor between the so-called wholesale acquisition cost (or "WAC")
and the so-called average wholesale price (or "AWP") of a large number of
prescription pharmaceutical products thereby causing members of the proposed Class,
whose payments for those pharmaceuticals were tied to AWP, to make excess
payments for those pharmaceuticals.

Schering Plough Corp.
March 27, 2007
Page 2

The pharmaceuticals at issue in this case which are manufactured by
AstraZeneca include Zoladex®. The pharmaceuticals at issue in this case which are
manufactured by the BMS Group include Blenoxane®, Paraplatin®, Cytoxan®,
Rubex®, Etopophos®, Vepesid®, and Taxol. The pharmaceuticals at issue in this
case which are manufactured by the J&J Group include Procrit® and Remicade®.
The pharmaceuticals at issue in this case which are manufactured by the SP Group
include, but are not limited to, Proventil®, Intron A®, and Temodar®. The details of
the wrongdoing have been alleged in the AWP litigation.

The plaintiffs in this case include BCBS of Massachusetts and SheetMetals
Health and Welfare Fund. Accordingly, AstraZeneca, the BMS Group, the J&J
Group, and the SP Group have engaged in consumer fraud and unfair and deceptive
practices in connection with the sale of prescription pharmaceutical products in
violation of the California Deceptive Practices Act, Cal. Civ. Code § 1770, *et seq.*, the
Georgia Fair Business Practices Act, Ga. Code. Ann. § 10-1-393, the Indiana
Consumer Sales and Deceptive Practices Act, Ind. Code Ann. § 24-5-0.5-3, the Maine
Unfair Trade Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 205-A, *et seq.*, Mass. Gen.
Laws Ch. 93A, § 1, *et seq.*, the Texas Deceptive Trade Practices-Consumer Protection
Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the West Virginia Consumer
Protection Act, W.Va. Code § 46A-6-101 *et seq.*, and the Wyoming Consumer
Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.* This notice is being served on
behalf of the above-referenced putative class.

Said putative class hereby demands that AstraZeneca, the BMS Group, the J&J
Group, and the SP Group correct or otherwise rectify the damage caused by such
unfair trade practices and return all excess monies paid by putative class members.
Otherwise, the class will continue to seek recovery of damages, multiple damages
costs and fees through the courts under California Civil Code §§ 1780, 1781, Georgia
Code § 10-1-399, Indiana Code § 24-5-0.5-3, Maine Revised Statutes, Title 5, § 213,
Massachusetts General Laws Chapter 93A, § 9(1), § 11, Texas Business &
Commercial Code § 17.50(a)(1), West Virginia Code § 46A-6-106(a)(1), and
Wyoming Statutes § 40-12-108.

We have previously provided each of the Track 1 defendants with demand
figures. And, we have done so in mediations with all of the defendants. If
defendants pay those amounts, the injuries to the class would be cured. The exact
amounts are as follows:

Schering Plough Corp.
March 27, 2007
Page 3

| Manufacturer | Estimation of National Damages[1] to: | |
|---|---|---|
| | Medicare (TPP and Consumer) | Non-Medicare (TPP and Consumer Damages) |
| AstraZeneca | | |
| Bristol-Myers Squibb | | |
| Johnson & Johnson | REDACTED | |
| Schering-Plough | | |
| Total Damages | $ | $ |

Notes:

1. Damages do not include any adjustment for pre-judgment interest.

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. The Massachusetts share would be 2.64% of the total.

You have 30 days to remedy damages. We will seek multiple damages of this amount plus attorneys' fees at trial.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman



HAGENS BERMAN
SOBOL SHAPIRO LLP

STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

March 27, 2007

**_Via Certified Mail / Return Receipt Requested_**

Schering-Plough Corp.
c/o C.T. Corporation System
1201 Peachtree St. NE
Atlanta, GA  30361

      Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
              *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

              Amended Notice pursuant to:  California Civil Code § 1782; Georgia
              Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes,
              Title 5, § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3);
              Texas Business & Commercial Code § 17.505; West Virginia Code
              § 46A-6-106(b); and, Wyoming Statutes § 40-12-109

To Whom It May Concern:

      PLEASE TAKE NOTICE that it has come to the attention of a national putative
class of consumers, self-insured employers, health and welfare plans, health insurers
and other end-payors of prescription drugs that AstraZeneca, Inc. ("AstraZeneca"),
Bristol–Myers Squibb Co. and its subsidiaries, Oncology Therapeutics Network Corp.
and Apothecon, Inc. ("the BMS Group"), Johnson & Johnson and its subsidiaries,
Centocor, Inc., Janssen Pharmaceutical Products, L.P., McNeil-PPC, Inc., and Ortho
Biotech ("the J&J Group"), and Schering-Plough Corp. and its subsidiary, Warrick
Pharmaceuticals Corp. ("the SP Group"), implemented a scheme to unlawfully inflate
the "mark-up" factor between the so-called wholesale acquisition cost (or "WAC")
and the so-called average wholesale price (or "AWP") of a large number of
prescription pharmaceutical products thereby causing members of the proposed Class,
whose payments for those pharmaceuticals were tied to AWP, to make excess
payments for those pharmaceuticals.

ATTORNEYS AT LAW                    SEATTLE   LOS ANGELES  CAMBRIDGE  PHOENIX  CHICAGO
206.623.7292     206.623.0594
www.hbsslaw.com

001524 16 161475 V1

Schering-Plough Corp.
March 27, 2007
Page 2

The pharmaceuticals at issue in this case which are manufactured by AstraZeneca include Zoladex®. The pharmaceuticals at issue in this case which are manufactured by the BMS Group include Blenoxane®, Paraplatin®, Cytoxan®, Rubex®, Etopophos®, Vepesid®, and Taxol. The pharmaceuticals at issue in this case which are manufactured by the J&J Group include Procrit® and Remicade®. The pharmaceuticals at issue in this case which are manufactured by the SP Group include, but are not limited to, Proventil®, Intron A®, and Temodar®. The details of the wrongdoing have been alleged in the AWP litigation.

The plaintiffs in this case include BCBS of Massachusetts and SheetMetals Health and Welfare Fund. Accordingly, AstraZeneca, the BMS Group, the J&J Group, and the SP Group have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of the California Deceptive Practices Act, Cal. Civ. Code § 1770, *et seq.*, the Georgia Fair Business Practices Act, Ga. Code. Ann. § 10-1-393, the Indiana Consumer Sales and Deceptive Practices Act, Ind. Code Ann. § 24-5-0.5-3, the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 205-A, *et seq.*, Mass. Gen. Laws Ch. 93A, § 1, *et seq.*, the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the West Virginia Consumer Protection Act, W.Va. Code § 46A-6-101 *et seq.*, and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.* This notice is being served on behalf of the above-referenced putative class.

Said putative class hereby demands that AstraZeneca, the BMS Group, the J&J Group, and the SP Group correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the class will continue to seek recovery of damages, multiple damages costs and fees through the courts under California Civil Code §§ 1780, 1781, Georgia Code § 10-1-399, Indiana Code § 24-5-0.5-3, Maine Revised Statutes, Title 5, § 213, Massachusetts General Laws Chapter 93A, § 9(1), § 11, Texas Business & Commercial Code § 17.50(a)(1), West Virginia Code § 46A-6-106(a)(1), and Wyoming Statutes § 40-12-108.

We have previously provided each of the Track 1 defendants with demand figures. And, we have done so in mediations with all of the defendants. If defendants pay those amounts, the injuries to the class would be cured. The exact amounts are as follows:

Schering-Plough Corp.
March 27, 2007
Page 3

| Manufacturer | Estimation of National Damages[1] to: | |
|---|---|---|
| | Medicare (TPP and Consumer) | Non-Medicare (TPP and Consumer Damages) |
| AstraZeneca | REDACTED | |
| Bristol-Myers Squibb | | |
| Johnson & Johnson | | |
| Schering-Plough | | |
| **Total Damages** | $ | $ |

Notes:

1. Damages do not include any adjustment for pre-judgment interest.

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. The Massachusetts share would be 2.64% of the total.

You have 30 days to remedy damages. We will seek multiple damages of this amount plus attorneys' fees at trial.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

March 27, 2007

**_Via Certified Mail / Return Receipt Requested_**

Schering-Plough Corp.
1 Giralda Farms
Madison, NJ 07940-1027

> Re:  *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
> *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*
>
> Amended Notice pursuant to:  California Civil Code § 1782; Georgia
> Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes,
> Title 5, § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3);
> Texas Business & Commercial Code § 17.505; West Virginia Code
> § 46A-6-106(b); and, Wyoming Statutes § 40-12-109

To Whom It May Concern:

    PLEASE TAKE NOTICE that it has come to the attention of a national putative
class of consumers, self-insured employers, health and welfare plans, health insurers
and other end-payors of prescription drugs that AstraZeneca, Inc. ("AstraZeneca"),
Bristol–Myers Squibb Co. and its subsidiaries, Oncology Therapeutics Network Corp.
and Apothecon, Inc. ("the BMS Group"), Johnson & Johnson and its subsidiaries,
Centocor, Inc., Janssen Pharmaceutical Products, L.P., McNeil-PPC, Inc., and Ortho
Biotech ("the J&J Group"), and Schering-Plough Corp. and its subsidiary, Warrick
Pharmaceuticals Corp. ("the SP Group"), implemented a scheme to unlawfully inflate
the "mark-up" factor between the so-called wholesale acquisition cost (or "WAC")
and the so-called average wholesale price (or "AWP") of a large number of
prescription pharmaceutical products thereby causing members of the proposed Class,
whose payments for those pharmaceuticals were tied to AWP, to make excess
payments for those pharmaceuticals.

    The pharmaceuticals at issue in this case which are manufactured by
AstraZeneca include Zoladex®.  The pharmaceuticals at issue in this case which are

Schering-Plough Corp.
March 27, 2007
Page 2

manufactured by the BMS Group include Blenoxane®, Paraplatin®, Cytoxan®, Rubex®, Etopophos®, Vepesid®, and Taxol. The pharmaceuticals at issue in this case which are manufactured by the J&J Group include Procrit® and Remicade®. The pharmaceuticals at issue in this case which are manufactured by the SP Group include, but are not limited to, Proventil®, Intron A®, and Temodar®. The details of the wrongdoing have been alleged in the AWP litigation.

The plaintiffs in this case include BCBS of Massachusetts and SheetMetals Health and Welfare Fund. Accordingly, AstraZeneca, the BMS Group, the J&J Group, and the SP Group have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of the California Deceptive Practices Act, Cal. Civ. Code § 1770, *et seq.*, the Georgia Fair Business Practices Act, Ga. Code. Ann. § 10-1-393, the Indiana Consumer Sales and Deceptive Practices Act, Ind. Code Ann. § 24-5-0.5-3, the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 205-A, *et seq.*, Mass. Gen. Laws Ch. 93A, § 1, *et seq.*, the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the West Virginia Consumer Protection Act, W.Va. Code § 46A-6-101 *et seq.*, and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.* This notice is being served on behalf of the above-referenced putative class.

Said putative class hereby demands that AstraZeneca, the BMS Group, the J&J Group, and the SP Group correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the class will continue to seek recovery of damages, multiple damages costs and fees through the courts under California Civil Code §§ 1780, 1781, Georgia Code § 10-1-399, Indiana Code § 24-5-0.5-3, Maine Revised Statutes, Title 5, § 213, Massachusetts General Laws Chapter 93A, § 9(1), § 11, Texas Business & Commercial Code § 17.50(a)(1), West Virginia Code § 46A-6-106(a)(1), and Wyoming Statutes § 40-12-108.

We have previously provided each of the Track 1 defendants with demand figures. And, we have done so in mediations with all of the defendants. If defendants pay those amounts, the injuries to the class would be cured. The exact amounts are as follows:

Schering-Plough Corp.
March 27, 2007
Page 3

| Manufacturer | Estimation of National Damages[1] to: | |
| --- | --- | --- |
| | Medicare (TPP and Consumer) | Non-Medicare (TPP and Consumer Damages) |
| AstraZeneca | | |
| Bristol-Myers Squibb | REDACTED | |
| Johnson & Johnson | | |
| Schering-Plough | | |
| Total Damages | $ | $ |

Notes:

1. Damages do not include any adjustment for pre-judgment interest.

   Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. The Massachusetts share would be 2.64% of the total.

   You have 30 days to remedy damages. We will seek multiple damages of this amount plus attorneys' fees at trial.

                              Sincerely,

                              HAGENS BERMAN SOBOL SHAPIRO LLP


                              Steve W. Berman



STEVE W. BERMAN
DIRECT · (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

March 27, 2007

_**Via Certified Mail / Return Receipt Requested**_

Immunex Corp.
c/o National Registered Agents, Inc.
303 Congress Street, 2nd Floor
Boston, MA  02110

    Re:   _In re Pharmaceutical Industry Average Wholesale Price Litigation,_
             _MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)_

             Amended Notice pursuant to:  Massachusetts Gen. Laws Chapter 93A,
             § 9(3); California Civil Code § 1782; Georgia Code § 10-1-399; Indiana
             Code § 24-5-0.5-5(a); Texas Business & Commercial Code § 17.505; West
             Virginia Code § 45A-6-106(b); and Wyoming Statutes § 40-12-109,
             40-12-102(a)

To Whom It May Concern:

      Given the history of the _Average Wholesale Price Litigation_ ("_AWP Litigation_"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that is
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Immunex Corp. ("Immunex") implemented a scheme commencing in
1991 and continuing to 2004 to inflate the average wholesale price (or "AWP") of a
large number of prescription pharmaceutical products thereby causing members of the
proposed class, whose payments for those pharmaceuticals were tied to AWP, to make
excess payments for those pharmaceuticals.

---

    [1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Immunex Corp.
March 27, 2007
Page 2


The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints. The plaintiffs and classes are identified in the Fourth Amended Complaint.

Accordingly, Immunex has engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation.*

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Immunex | |

REDACTED

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

Immunex Corp.
March 27, 2007
Page 3

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We will file the amended complaint at the end of 30 days and will seek multiple damages plus fees.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

SWB:dld

cc:  Kathleen O'Sullivan



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

March 27, 2007

_**Via Certified Mail / Return Receipt Requested**_

Dey, Inc.
2751 Napa Valley Corporate Drive
Napa, CA 94558

Re:   _In re Pharmaceutical Industry Average Wholesale Price Litigation,_
_MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)_

Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
§ 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
40-12-102(a)

To Whom It May Concern:

Given the history of the _Average Wholesale Price Litigation_ ("_AWP Litigation_"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice is
not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it has
come to the attention of plaintiffs in the MDL, on behalf of all classes in the litigation,[1]
that Dey implemented a scheme commencing in 1991 and continuing to 2004 to inflate the
average wholesale price (or "AWP") of a large number of prescription pharmaceutical
products thereby causing members of the proposed class, whose payments for those
pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the _AWP Litigation_ and the full
identities of the drugs at issue are identified in the complaints.

Accordingly, Dey has engaged in consumer fraud and unfair and deceptive
practices in connection with the sale of prescription pharmaceutical products in violation

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Dey, Inc.
March 27, 2007
Page 2

of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that Dey correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|--------------|-------------------------------------|
| Dey          |                                     |

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

REDACTED

Dey, Inc.
March 27, 2007
Page 3

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

Steve W. Berman

cc:   Christopher Palermo

001534-16 161305 V1



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

March 27, 2007

_**Via Certified Mail / Return Receipt Requested**_

Bayer Corp.
c/o CT Corp.
101 Federal Street
Boston, MA  02110

> Re:  *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
> *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*
>
> Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
> § 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
> Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
> Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
> 40-12-102(a)

To Whom It May Concern:

Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Bayer Corp.
March 27, 2007
Page 2

price (or "AWP") of a large number of prescription pharmaceutical products thereby causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation.*

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Bayer | . . |

**REDACTED**

Bayer Corp.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

cc:   Richard Raskin

001514-16 161770 V1



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

March 27, 2007

***Via Certified Mail / Return Receipt Requested***

Pfizer, Inc.
c/o CT Corp.
101 Federal Street
Boston, MA 02110

> Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
> *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*
>
> Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
> § 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
> Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
> Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
> 40-12-102(a)

To Whom It May Concern:

Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required. However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Pfizer, Inc.
March 27, 2007
Page 2

scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale price (or "AWP") of a large number of prescription pharmaceutical products thereby

causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|--------------|-------------------------------------|
| Pfizer       |                                     |

REDACTED

Pfizer, Inc.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above. These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly. We intend to file an amended complaint at the end of the 30 day period.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

cc:    Scott A. Stempel



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

March 27, 2007

***Via Certified Mail / Return Receipt Requested***

Pharmacia Corp.
c/o CT Corp.
101 Federal Street
Boston, MA  02110

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,
MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
§ 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
40-12-102(a)

To Whom It May Concern:

Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale

---

[1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

Pharmacia Corp.
March 27, 2007
Page 2

price (or "AWP") of a large number of prescription pharmaceutical products thereby causing members of the proposed class, whose payments for those pharmaceuticals were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2 Defendants") have engaged in consumer fraud and unfair and deceptive practices in connection with the sale of prescription pharmaceutical products in violation of Mass. Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law. This notice is being served on behalf of the above-referenced putative classes as defined in plaintiffs' proposed order filed in the *AWP Litigation*.

Said classes hereby demand that the Track 2 Defendants correct or otherwise rectify the damage caused by such unfair trade practices and return all excess monies paid by putative class members. Otherwise, the classes will continue to seek recovery of damages, multiple damages costs and fees through the courts under Massachusetts General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer protection statutes at issue. For any other state requiring a monetary demand, plaintiffs can calculate such if requested.

As described above, the purpose of the demand letter requirement is to encourage negotiation and settlement. In a case as novel and complex as ours and where both parties are fully aware of all of the facts and figures involved and have been litigating these issues for four years, the purpose of the demand letter requirement has long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would be cured. Damages do not include any adjustment for pre-judgment interest or trebling and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of Massachusetts Damages |
|---|---|
| Pharmacia Group | |

REDACTED

Pharmacia Corp.
March 27, 2007
Page 3

Plaintiffs would accept a settlement in the amount of 80% of the damages amount set forth above.  These amounts assume that Massachusetts is 2.43% of total damages, so the same damages numbers would apply to other states based upon their size.  These numbers may change with litigation.

In light of the time you have had to make a cure, to the extent a pre-filing notice was required, which we believe it was not given the history of this matter, and should you continue to decline to cure the violations, we ask that you notify us of your refusal to do so promptly.

PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed class certification order contains more detailed allegations and is incorporated herein by this reference.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

cc:    Scott A. Stempel



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN**
SOBOL SHAPIRO LLP

March 27, 2007

***Via Certified Mail / Return Receipt Requested***

Amgen, Inc.
c/o CT Corp.
101 Federal Street
Boston, MA  02110

      Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
              *MDL No. 1456, Civil Action No.: 01-CV-12257-PBS (D. Mass.)*

              <u>Amended Notice pursuant to:  California Civil Code § 1782; Indiana Code
              § 24-5-0.5-5(a); Massachusetts General Laws Chapter 93A, § 9(3); Texas
              Business & Commercial Code § 17.505; Georgia Code § 10-1-399; West
              Virginia Code § 46A-6-106(b); and, Wyoming Statutes § 40-12-109,
              40-12-102(a)</u>

To Whom It May Concern:

      Given the history of the *Average Wholesale Price Litigation* ("*AWP Litigation*"),
MDL 1456, and the length of time it has, and the fact the federal court had jurisdiction
based on statutory claims that did not require a pre-suit demand, we believe this notice
is not required.  However, in an abundance of caution, PLEASE TAKE NOTICE that it
has come to the attention of plaintiffs in the MDL, on behalf of all classes in the
litigation,[1] that Track 2 Defendants Abbott Laboratories, Inc. ("Abbott"), Amgen, Inc.
("Amgen"), Aventis Pharmaceuticals Inc. and Aventis Behring L.L.C. ("Aventis
Group"), Baxter International, Inc. and its subsidiary Baxter Healthcare Corp.
("Baxter"), Bayer Corp. ("Bayer"), Dey, Inc., Fujisawa Healthcare Inc. and Fujisawa
USA, Inc. ("Fujisawa Group"), Immunex Corp. ("Immunex"), Pfizer, Inc. ("Pfizer"),
Pharmacia Corp. and its subsidiary Pharmacia & Upjohn, Inc. ("the Pharmacia Group"),
Sicor, Inc. ("Sicor"), and Watson Pharmaceuticals, Inc. ("Watson"), implemented a
scheme commencing in 1991 and continuing to 2004 to inflate the average wholesale

---

    [1] Plaintiffs do not believe that the 93A demand requirement applies to TPP's even if it applied to these
circumstances to begin with.

ATTORNEYS AT LAW         SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
206.623.7292    206.623.0594
www.hbsslaw.com

001534-16 161224 V1

Amgen, Inc.
March 27, 2007
Page 2

price (or "AWP") of a large number of prescription pharmaceutical products thereby
causing members of the proposed class, whose payments for those pharmaceuticals
were tied to AWP, to make excess payments for those pharmaceuticals.

The details of the wrongdoing have been alleged in the *AWP Litigation* and the
full identities of the drugs at issue are identified in the complaints.

Accordingly, Abbott, Amgen, Aventis Group, Baxter, Bayer, Dey, Fujisawa
Group, Immunex, Pfizer, Pharmacia Group, Sicor and Watson ("the Track 2
Defendants") have engaged in consumer fraud and unfair and deceptive practices in
connection with the sale of prescription pharmaceutical products in violation of Mass.
Gen. Laws, Ch. 93A, § 9(3), and in violation of other state's law.  This notice is being
served on behalf of the above-referenced putative classes as defined in plaintiffs'
proposed order filed in the *AWP Litigation.*

Said classes hereby demand that the Track 2 Defendants correct or otherwise
rectify the damage caused by such unfair trade practices and return all excess monies
paid by putative class members.  Otherwise, the classes will continue to seek recovery
of damages, multiple damages costs and fees through the courts under Massachusetts
General Laws Chapter 93A and § 9(3) and § 11, as well as the other state's consumer
protection statutes at issue.  For any other state requiring a monetary demand, plaintiffs
can calculate such if requested.

As described above, the purpose of the demand letter requirement is to
encourage negotiation and settlement.  In a case as novel and complex as ours and
where both parties are fully aware of all of the facts and figures involved and have been
litigating these issues for four years, the purpose of the demand letter requirement has
long since been served.

If defendants pay those amounts, the injuries to the Massachusetts classes would
be cured.  Damages do not include any adjustment for pre-judgment interest or trebling
and are based on the Massachusetts only damages calculated based on as follows:

| Manufacturer | Estimation of National Damages |
|:---:|:---:|
| Amgen | |



Amgen, Inc.
March 27, 2007
Page 3


        Plaintiffs would accept a settlement in the amount of 80% of the damages amount
set forth above.  Massachusetts only, is 2.43% of total damages, so the same damages
numbers would apply to other states based upon their size.

        In light of the time you have had to make a cure, to the extent a pre-filing notice
was required, which we believe it was not given the history of this matter, and should you
continue to decline to cure the violations, we ask that you notify us of your refusal to do
so promptly.  We intend to file an amended complaint after 30 days.  The amounts set
forth above may change in the litigation.

        PLEASE TAKE FURTHER NOTICE that the Complaint on file and proposed
class certification order contains more detailed allegations and is incorporated herein by
this reference.

                        Sincerely,

                        HAGENS BERMAN SOBOL SHAPIRO LLP



                        Steve W. Berman


cc:    Joseph Young