UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: *State of Montana v. Abbott Labs., Inc., et al.*, Cause No. CV-02-09-H-DWM (D. Mont.) | CIVIL ACTION:  01-CV-12257-PBS |

**MONTANA'S RESPONSE TO LOCAL RULE 56.1 STATEMENT OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY, ONCOLOGY THERAPEUTICS NETWORK COPRORATION AND APOTHECON, INC**.

The State  of Montana ("State"), by its counsel, hereby responds to the Local Rule 56.1 Statement of Defendants Bristol-Myers Squibb Company, Oncology Therapeutics Network Corporation and Apothecon, Inc. (collectively "BMS")[1] and where necessary counter-designates undisputed facts in opposition.  Counter-designations of deposition transcripts and documents cited herein are attached to the Declaration of Jeniphr Breckenridge in Support of the States of Montana's opposition to the BMS individual motion for summary judgment and are referred to as "Breckenridge Decl. Ex. __".  [2]

In general response to the BMS L.R. 56.1 Stmt., the State submits that BMS's reliance on MDL trial materials is inconsistent with their joinder in the Defendants' Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants (Dkt. No. 3732**)**.  There, BMS and others strenuously objected to Montana's use of "[t]estimony from the MDL trial in which there has not yet been a decision, documents that are not communications or

---

[1] Montana refers to the BMS Local Rule 56.1 Statement as "BMS L.R. 56.1 Stmt."

[2] The State also incorporates herein the exhibits to the State of Montana's Memorandum In Support of Motion For Partial Summary Judgment Against Certain Defendants (Dkt. No. 3731), the State of Montana's Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment (Dkt. No. 3902), and the State of Montana's Response to Statement of Undisputed Material Facts in Support of Defendants' Joint Motion for Summary Judgment (Dkt. No. 3903).  The State further incorporates Plaintiffs' Post-Trial Proposed Findings of Fact (Dkt. No. 3553).

evidence related to the State, . . . and proposed findings of fact from different plaintiffs in another case." Defendants' Joint Opposition to Montana's Motions For Partial Summary Judgment Against Certain Defendants at 1 n. 1. BMS and its co-defendants charged that Montana's inclusion of such materials "flouts the rules and serves as an independent basis to deny its motion." *Id.* BMS does not distinguish their use of materials from the same forum in connection with their motion for summary judgment. In any event, the State submits that BMS and others are wrong about the propriety of including materials from the MDL proceedings in these cases. It would be waste of resources to expect every factual point to be re-established in every case consolidated before the Court.

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit that the five BMS drugs identified are Subject Drugs in this litigation. The State counter-designates the Second Amended Complaint Ex. A.

6. Admit that the thirteen drugs identified are Subject Drugs in this litigation. The State counter-designates the Second Amended Complaint Ex. A.

7. Admit, but counter-designate that, at the time BMS established a WLP, it knew: (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers.

8. Deny. The State counter-designates that the evidence submitted does not establish the proposition.

9. Deny, except admit that BMS may sometimes raise the WLP for a drug while it is protected by patent.

10. Admit as a general proposition, but deny that no changes were ever made to the list price of a drug that lost its patent protection.

11. Admit to the extent that BMS offered discounts and rebates to downstream customers, but denied in all other respects, particularly the statement that such discounts were merely offered "[f]rom time to time" when discounts and rebates – indeed massive ones – were offered nearly all the time.

12. Admit to the extent that BMS offered discounts to customers such as physicians, hospitals or HMOs. No evidence offered to support the reference to contracts.

13. Admit, except deny with respect to direct sales.

14. Admit that this is the way in which BMS defines its use of the term "rebate."

15. Admit that Charles River Associates ("CRA") has performed an analysis. Otherwise deny. The State counter-designates that it has not received the data and other materials underlying the CRA analysis and has not had the opportunity to critique the work. However, if true, the State counter-designates that a substantial amount of sales near WLP would create marketplace expectations of small spreads.

16. Admit that Charles River Associates has performed an analysis. Otherwise deny. The State counter-designates that it has not received the data and other materials underlying the CRA analysis and has not had the opportunity to critique the work. However, if true, the State

counter-designates that a substantial amount of sales near WLP would create marketplace expectations of small spreads.

17. Admitted, but the State counter-designates that, at the time BMS established a WLP, it knew: (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers.

18. Deny. The State counter-designates that communicating WLPs to the publications is the formulaic equivalent of communicating AWPs, and that BMS directed the *Red Book* to use a 25 % markup factor, and the *Red Book* did so. The State further counter-designates the evidence cited in Montana's opposition to BMS's motion for summary judgment at §§ III.A and III.B.

19. Admit.

20. Deny.

21. Admit.

22. Deny.

23. Deny. The State counter-designates that the body of evidence demonstrates the opposite: that BMS controlled AWPs. *See, e.g.,* Mont. Opp. to BMS MSJ at § III.A and III.B (and evidence cited therein). The State also counter-designates that, at the time BMS established a WLP, it knew: (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers.

24. Deny.

25. Admit that the quotation is an accurate reproduction of that statement as it appears in the document. The State counter-designates that, at the time BMS transmitted these prices to *First DataBank*, BMS knew: (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers. The State also denies the last sentence of ¶ 25 as the question asked was objectionable and not cured.

26. The State assumes that by "Plaintiffs," BMS means the plaintiffs in the MDL class case in which case the State admits that they took the depositions of sales representatives in the MDL class action. Deny that any deposition of BMS sales representatives were taken in this action.

27. The State admits that the witnesses referenced gave carefully crafted and rehearsed testimony that the therapeutic attributes of BMS drugs were discussed in meetings with customers and that customers asked those witnesses about reimbursement. Denied in all other respects.

28. Deny.

29. Deny.

30. Admit.

31. Deny.

32. Admit.

33. Admit.

34. Deny. The State counter-designates that this proposition goes to a disputed issue that must be resolved by the trier of fact in the case and is not an "undisputed fact." Considerable material has been submitted by Montana refuting BMS and its co-defendants' allegations that the Montana Medicaid program was "aware of the spreads for specific BMS drugs." The State further counter-designates that BMS was not an active participant in the depositions of Montana Medicaid witnesses and no Montana Medicaid witnesses was ever asked about their "aware[ness] of the spreads for specific BMS drugs." When Jeff Buska, Montana Medicaid official, was recently shown a spreadsheet for specific BMS drugs reflecting spreads as high as 6621.9%, he stated that he had never before seen the information *and* that there had been "nothing in the federal OIG reports that suggested that spreads of this magnitude existed for drugs." Declaration of Jeff Buska in Support of State of Montana's Opposition to Defendants' Joint Motion for Summary Judgment (Dkt. No. 3906), ¶ 24.

35. Admit that Montana Medicaid received rebates. Deny that the rebates were "substantial" as this is not a defined term.

36. Admit that at various times Montana Medicaid received ASPs for various drugs from Bayer, TAP and AstraZeneca. Deny that Edwards Decl., Exs. J-K are evidence of anything other than the *receipt of a report on average sales price from Bayer. There is no reference to TAP or AstraZeneca and there is no reference to BMS.* The State counter-designates that it never received ASPs for BMS drugs from BMS or any other source. The State further counter-designates evidence concerning the problems the state experiences with the ASPs it did receive. Mont. Resp. to Def. Jt. L.R. 56.1 Stmt. at ¶ 117.

By   /s/ Steve W. Berman                DATED:  April 26, 2007
    Steve W. Berman
    Sean R. Matt
    Jeniphr A.E. Breckenridge
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Mike McGrath
    Attorney General of Montana
    Ali Bovingdon
    Assistant Attorney General
    Justice Building
    215 North Sanders
    P.O. Box 201401
    Helena, MT  56920-1402
    (406) 444-2026

    COUNSEL FOR PLAINTIFF
    STATE OF MONTANA

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **STATE OF MONTANA'S RESPONSE TO LOCAL RULE 56.1 STATEMENT OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY, ONCOLOGY THERAPEUTICS NETWORK COPRORATION AND APOTHECON, INC,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

                                By      **/s/ Steve W. Berman**
                                        Steve W. Berman
                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                        1301 Fifth Avenue, Suite 2900
                                        Seattle, WA  98101
                                        (206) 623-7292