## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>*State of Nevada v. American Home Products, et al.*,<br>    CA No. 02-CV-12086-PBS (Nevada II), and<br><br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>    Cause No. CV-02-09-H-DWM (D. Mont.) | CIVIL ACTION:  01-CV-12257-PBS |

**MONTANA AND NEVADA'S RESPONSE TO
STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
SCHERING-PLOUGH CORPORATION'S AND WARRICK PHARMACEUTICALS
CORPORATION'S MOTION FOR SUMMARY JUDGMENT
<u>AS TO NEVADA AND MONTANA ACTIONS</u>**

Montana and Nevada ("States"), by their counsel, hereby respond to the Local Rule 56.1 Statement of Undisputed Material Facts In Support Of Schering-Plough Corporation's and Warrick Pharmaceutical Corporation Motion for Summary Judgment ("SPW L.R. 56.1 Stmt.") and where necessary counter-designate undisputed facts in opposition to the motion.[1]  Counter-designations of deposition transcripts and documents cited herein are attached to the Declaration of Jeniphr Breckenridge In Support of The States of Nevada and Montana's Memoranda In Opposition To The Individual Defendants' Motions For Summary Judgment ("Breckenridge Decl.") and are referred to as "Breckenridge Decl., Ex. __".[2]

---

[1] Schering-Plough Corporation will be referred to as "Schering-Plough" or "Schering".  Warrick Corporation will be referred to as "Warrick."  Collectively the two will be referred to as "SPW."

[2] The States also incorporate the exhibits to the State of Montana's Memorandum In Support of Motion For Partial Summary Judgment Against Certain Defendants ("MT's Summ. J. Mem. Against Defs.") (Dkt. No. 3731), the State of Montana's L.R. 56.1 Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment against Certain Defendants ("MT's L.R. 56.1 Stmt.") (Dkt. No. 3737) and the State of Montana's Response to Defendants' L.R. 56.1 Statement of Material Facts In Support of Defendants' Joint Motion For

1. Admit that Harvey Weintraub made the statement, however, Weintraub also recognized that AWP was a "benchmark" used for reimbursement purposes by payors. Weintraub Dep. at 23 (Breckenridge Decl., Ex. 71).

2. Admit, however the States counter-designate that the statement is incomplete as written. Warrick understood AWP to be a benchmark for reimbursement calculations by various payors. Weintraub Dep. at 23 (Breckenridge Decl., Ex. 71); Sherman Dep. at 21-22 (Breckenridge Decl. Ex. 72).

3. Admit.

4. Admit.

5. Denied as written. There are too many market factors involved in the change and direction of generic products to say "presence of perfect product substitutes" as the reason for price changes. The States object to this statement of fact on the ground that it is misleading under Fed. R. Evid. 430.

6. Admit that this is Warrick's position; however, the statement fails to include the undisputed fact that Schering and Warrick priced albuterol products and other drugs in accordance with the Generic Strategy set forth in Breckenridge Decl., Ex. 80. That strategy includes using Warrick albuterol in combined Schering/Warrick market share discounts and bundling Warrick albuterol with both brand and generic products in the managed care contracts.

---

Summary Judgment ("MT's Resp. to Defs' L.R. 56.1 Stmt.") (Dkt. No. 3903), the Memorandum in Support of the State of Nevada's Opposition to Defendants' Motion for Summary Judgment ("Nev.'s Opp'n to Defs' Jt. Summ. J. Mot.") (Dkt. No. 3910), and the State of Nevada's Response to Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment ("Nev.'s Resp. to Defs' L.R. 56.1 Stmt.") (Dkt. No. 3909). The States further incorporate Plaintiffs' Post-Trial Proposed Findings of Fact dated Jan. 19, 2007 (Dkt. No. 3553) including all transcripts and exhibits referred to therein.

7. Admit that Weintraub and Sherman make the statement, but the States counter-designate that Sherman admitted that in discounting their product, Warrick increased the spread. Sherman Dep. at 123 (Breckenridge Decl., Ex. 72).

8. Deny. The States counter-designate the fact that Mr. Groth was the Fed. R. Civ. P. 30(b)(6) designee of Walgreens and testified on behalf of Walgreens only and not "major drug purchasers" generally; Defendants laid no foundation as to the witness's qualifications to testify about the purchase practices of "major drug purchasers." The States further counter-designate that the proposition proffered is not supported by Mr. Groth's testimony. In testimony SPW does not cite, Mr. Groth stated that on behalf of Walgreens he buys the "cheapest product available" to "maximize profitability at Walgreens." Supp. Diederich Decl. Ex. 1 (Groth Dep. at 62-63). Walgreens' drug purchase decisions are driven by **"*profitability*"**; the reimbursement rate is a necessary component of profitability.

9. Admit that Weintraub made this statement, but otherwise deny. The States counter-designate that this is opinion and not fact.

10. Admit that Weintraub made this statement.

11. Admit.

12. Admit that the Hartman report cited includes the statement in the context of Dr. Hartman refuting SPW expert Dr. Addanki's opinions. However, the States counter-designate that the statement is part of a much larger opinion proffered by Dr. Hartman in Decl. of Raymond S. Hartman in Opposition to Defendants' Motions for Summary Judgment and must be taken in that context.

13. Admit.

14. Deny.

15. Denied. This is one of the issues to be resolved in the case; it is not an "undisputed fact." The States counter-designate States' Opposition to SPW Mot. For Summ. J. at 20-22 (and evidence cited therein).

16. Admit that Weintraub made the statement, however, Weintraub did not make the statement as a Warrick 30(b)(6) representative and the States object to the use of the statement as misleading and on the ground of relevancy.

17. Admit that Mr. Weintraub states in his declaration: "As other generic manufacturers sought to gain share by offering a lower price to Warrick customers, Warrick would usually meet the competition by matching the price. Thus, customer-by-customer prices would change as Warrick met competitive conditions." Diederich Decl. Ex. 1 (Weintraub Decl.). The State counter-designates that this is not the only way in which Warrick market competed, as acknowledged by Mr. Weintraub's declaration. *See, e.g. id.* at ¶¶ 18-24.

18. Admit, but the States counter-designate that the statement is incomplete. The price notifications included offers of discounts and price-protected orders that increased the spread. *See* Breckenridge Decl., Exs. 73-79.

19. The State counter-designates that 42 C.F.R. § 447.332(b) and **not** SPW's interpretation of 42 C.F.R. § 447.332(b) is the best evidence of the FUL calculation.

20. The State counter-designates that 42 C.F.R. § 447.332(b) and **not** SPW's interpretation of 42 C.F.R. § 447.332(b) is the best evidence of the FUL calculation.

21. Admit that this is an accurate reproduction of Dennis Smith's statement. The States counter-designate other aspects of Mr. Smith's comments. Mr. Smith continued his testimony by describing the federally-established system whereby states "generally use published commercial compendia prices as the basis for establishing EAC. That is, states use average

wholesale price (AWP) and apply a discount (generally in the range 10 percent to 15 percent)" to estimate EAC.  Mr. Smith also testified that:

> Unfortunately, this statutorily established system results in inflated payment for Medicaid drugs.  ***AWP is a list price that is set by the manufacturer for their products*** and most states use AWP as a basis for establishing EAC.  ***Pharmacies acquire the drugs from the manufacturer for a cost that is usually much lower than the AWP.***  The difference between the pharmacy acquisition cost and the reimbursed amount is referred to as the "spread."  ***The larger the "spread" the more a pharmacy profits on the reimbursement from Medicaid.  This system has created an incentive for manufacturers to artificially raise the AWP to make their products more attractive to pharmacies because the profit will be larger with the higher AWP.***  Pharmacies will stock and fill generic prescriptions with products that have the widest spread, thus resulting in the greatest profit.  This has led to ever increasing AWPs and an ever increasing imbalance between what Medicaid pays and true market price.

Diederich Decl. Ex. 4 at 11-12 (emphasis added).

22. Deny.  The State counter-designates that MONT. ADMIN. R. 37.86.1105 is the best evidence of what it requires.  The text of MONT. ADMIN. R. 37.86.1105 provides:

> OUTPATIENT DRUGS, REIMBURSEMENT
>
> (1) Drugs will be paid for on the basis of the Montana "estimated acquisition cost" or the "maximum allowable cost", plus a dispensing fee established by the department, or the provider's "usual and customary charge", whichever is lower; except that the "maximum allowable cost" limitation shall not apply in those cases where a physician or other licensed practitioner who is authorized by law to prescribe drugs and is recognized by the medicaid program certifies in their own handwriting that in their medical judgment a specific brand name drug is medically necessary for a particular patient.  An example of an acceptable certification would be the notation "brand necessary" or "brand required".  A check-off box on a form or a rubber stamp is not acceptable.
>
> (2) The dispensing fee for filling prescriptions shall be determined for each pharmacy provider annually.
>
> (a) The dispensing fee is based on the pharmacy's average cost of filling a prescription. The average cost of filling a prescription will

- 5 -

be based on the direct and indirect costs that can be allocated to the cost of the prescription department and that of filling a prescription, as determined from the Montana dispensing fee questionnaire. A provider's failure to submit, upon request, the dispensing fee questionnaire properly completed will result in the assignment of the minimum dispensing fee offered. A copy of the Montana dispensing fee questionnaire is available upon request from the department.

(b) The dispensing fees assigned shall range between a minimum of $ 2.00 and a maximum of $ 4.70.

(c) Out-of-state providers will be assigned a $ 3.50 dispensing fee.

(d) If the individual provider's usual and customary average dispensing fee for filling prescription is less than the foregoing method of determining the dispensing fee, then the lesser dispensing fee shall be applied in the computation of the payment to the pharmacy provider.

(3) In-state pharmacy providers that are new to the Montana medicaid program will be assigned an interim $ 3.50 dispensing fee until a dispensing fee questionnaire, as provided in (2), can be completed for six months of operation. At that time, a new dispensing fee will be assigned which will be the lower of the dispensing fee calculated in accordance with (2) for the pharmacy or the $ 4.70 dispensing fee. Failure to comply with the six months dispensing fee questionnaire requirement will result in assignment of a dispensing fee of $ 2.00.

(4) "Unit dose" prescriptions will be paid by a separate dispensing fee of $ 0.75. This "unit dose" dispensing fee will offset the additional cost of packaging supplies and materials which are directly related to filling "unit dose" prescriptions by the individual pharmacy and is in addition to the regular dispensing fee allowed. Only one unit dose dispensing fee will be allowed each month for each prescribed medication. A dispensing fee will not be paid for a unit dose prescription packaged by the drug manufacturer.

(5) Reimbursement for outpatient drugs provided to medicaid recipients in state institutions shall be as follows:

(a) for institutions participating in the state contract for pharmacy services, the rates agreed to in that contract. Such reimbursement shall not exceed, in the aggregate, reimbursement under (1); or

> (b) for institutions not participating in the state contract for pharmacy services, the actual cost of the drug and dispensing fee. Such reimbursement shall not exceed, in the aggregate, reimbursement under (1).
>
> (6) Full-benefit dual eligible recipients qualify for pharmaceutical drug coverage under Medicare Part D prescription drug plans (PDPs) on January 1, 2006 under 42 USC 1302, 1395w-101 through 1395w-152 (2005), the Medicare Prescription Drug Improvement and Modernization Act of 2003 (MMA). For purposes of the MMA and this rule, the term full-benefit dual eligible has the same meaning as stated in 42 CFR 423.772.
>
> (7) The MMA allows PDPs to exclude from coverage the drug classes listed in 42 USC 1396r-8(d)(2) (2005). Montana Medicaid may also exclude these drugs and has chosen to do so except for the prescription and nonprescription drugs identified on the department's drug formulary. On January 1, 2006, Montana Medicaid's reimbursement for outpatient drugs provided to full-benefit dual eligible recipients, for whom third party payment is not available, will be limited to the excluded drugs identified on the department's drug formulary.

23. Admit that Dan Peterson testified that he considers MAC "to be the same as FUL."

24. Deny. The States counter-designates that this is an incomplete quotation of the exhibit (which also does not include a ¶ 51); SPW's paragraph also misidentifies the document which is First Health Services Corporation, Pharmacy Billing Manual for Nevada Medicaid and Nevada Check Up (May 20, 2005). The exhibit provides:

> 12.2 Payment Algorithms
>
> Medicaid pays for all drugs and supplies except diabetic supplies using the lowest cost algorithm from the list below:
>
> - Estimated Acquisition Cost (EAC) = Awverage Wholesale Price (AWP) + dispense fee
>
> - Federal Upper Limit + Dispensing fee
>
> - Maximum Allowable Cost (MAC) List price + Dispensing fee

- Department of Justice (DOJ) – 15 % + Dispensing fee
- Gross Amount Due (NCPDP field # 430-DU)(submitted)
- Usual and Customary (NCPDP field #426-DQ (submitted)

Diederich Decl. Ex. 6.

25. The States admit that these are HCFA publications.

26. The States counter-designate that 42 C.F.R § 405.517 is the best evidence of the maximum amount drugs are generally reimbursed under the Medicare program (which is not at issue in these lawsuits).

27. The States incorporate their response to SPW L.R. 56.1 Stmt. ¶ 26.

28. Diederich Decl. Ex. 3 is an excerpt of the Sherman deposition; it does not relate to this topic.

29. Dr. Addanki has not provided the States with enough information to evaluate this statement of "fact." SPW has not provided the States with the data or other material underlying Dr. Addanki's opinion. Furthermore, Dr. Addanki's opinions as set forth in ¶ 63 are too vague. In particular, the States' do not understand the following references which are subject to varying interpretations: "as in the case of albuterol," "relatively low compared to other [unidentified] generics," "compete in virtually every instance." Moreover, Dr. Addanki has given no verifiable evidence of the "therapeutic alternatives" he analyzed. Finally, the qualified "I would have expected" renders this an opinion and not an "undisputed fact" that may be admitted or denied.

30. Deny. The States counter-designate that Dr. Hartman did not make this statement in the 17 pages of testimony SPW designates. The States also counter-designate that the designation of 17 pages of Dr. Hartman testimony covering a variety of topics related to the median is overbroad and improper.

...

- 9 -

31. *See* States' Opp'n to SPW Mot. For Summ. J. at 1 n.2. The States will not pursue Medicare co-payment damages. Thus, there is no need to respond to this "undisputed fact."

32. Deny. This is one of the issues to be resolved in the case; it is not an "undisputed fact." The States counter-designate the States' Opposition to SPW Mot. For Summ. J. at 24-25 (and evidence cited therein).

33. Deny. This is one of the issues to be resolved in the case; it is not an "undisputed fact." The States counter-designate the States' Opposition to SPW Mot. For Summ. J. at 24-25 (and evidence cited therein).

34. Deny. This statement is unintelligible. The identity of the "customers" is not clear from the context or the deposition excerpts.

35. Deny. This is the *opposite* of what Dr. Addanki states.

36. Deny.


By    /s/ Steve W. Berman            DATED:  April 26, 2007
Steve W. Berman
Sean R. Matt
Jeniphr A.E. Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

COUNSEL FOR THE
STATES OF MONTANA AND NEVADA

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

COUNSEL FOR THE
STATE OF MONTANA

Catherine Cortez Masto
Attorney General of the State of Nevada
L. Timothy Terry
Deputy Attorney General
100 N. Carson Street
Carson City,  NV 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

- 11 -

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA AND NEVADA'S RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SCHERING-PLOUGH CORPORATION'S AND WARRICK PHARMACEUTICALS CORPORATION'S MOTION FOR SUMMARY JUDGMENT AS TO NEVADA AND MONTANA ACTIONS,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 26, 2007, a copy to LexisNexis File & Serve for Posting and notification to all parties.

      By     **/s/ Steve W. Berman**
      Steve W. Berman
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      (206) 623-7292