UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)   MDL No. 1456<br>)   Civil Action No. 01-12257-PBS<br>) |
| **THIS DOCUMENT RELATES TO:** | )   Hon. Patti B. Saris<br>) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.*,<br>CIVIL ACTION NO. 06–CV-11337-PBS | )   Chief Magistrate Judge Marianne B.<br>)   Bowler<br>)<br>) |

### RELATOR'S MEMORANDUM
### IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT
### TO PRODUCE OR CONSENT TO ACCESS TO AND SHARING OF ALL DISCOVERY PRODUCED BY ABBOTT IN OTHER FALSE PRICE REPORT LITIGATION

The Relator, Ven-A-Care of the Florida Keys, Inc., ("the Relator"), on its behalf and for the benefit of the United States of America, through its undersigned counsel, respectfully files this Memorandum of Law in Support of its Motion to Compel Abbott to Produce or Consent to Access to and Sharing of All Discovery Produced by Abbott in Other False Price Report Litigation.[1]

---

[1] The Court has specifically directed counsel for the Relator to provide any documents for review by this Court in connection with this Motion *in camera.* Accordingly, the undersigned counsel has prepared the Motion to Compel and the main body of this Memorandum in a manner that can be filed in the open Court record; however, has provided the sample documents and descriptive charts to the Court *in camera*, with a service copy of such items to Abbott's counsel only. The Relator has further sought leave to file these items under seal and will do so upon the appropriate order of this Court. See excerpt from hearing before this Court held on February 27, 2007 attached as Exhibit A.

1

# I.
# INTRODUCTION

The Relator files this motion in accordance with this Court's instructions at the hearing on February 27, 2007[2] and as later set forth at Paragraph 7 of CMO 29[3]. The Relator requests that the Manual for Complex Litigation provisions for coordinated discovery be applied to Abbott Laboratories, Inc.'s ("Abbott's") so that discovery will be expedited and so that the Relator is not required to re-litigate Abbott's many discovery objections that have already been disposed of in other cases. In Texas alone, Abbott has unsuccessfully resisted discovery for three years at the trial level, filed and was denied two petitions for writs of mandamus by the Texas Court of Appeals and sought and was denied two petitions for writs of mandamus by the Supreme Court of the State of Texas.[4] The Relator should not have to once again breach Abbott's "Stalingrad" type discovery defenses in order to perform its duty of assisting the United States Department of Justice and States' Attorneys General in their actions against Abbott. All of the cases in question involve "false price report litigation" which, for the purposes of this

---

[2] This Motion is filed in support of the United States Motion to Compel Abbott to Produce All Discovery Required by CMOs 5 and 10 (Document 3529) and as directed by this Court at the hearing on Motion of the United States and Relator for Entry of a Comprehensive Case Management Order (Document 3107). Accordingly, the Relator incorporates by reference the matters stated in those motions and supporting papers.

[3] The meet and confer process required more time than counsel initially anticipated and the parties agreed that the time to file this motion should be extended. The Relator filed its Agreed Motion to Extend Time Pursuant to Paragraph 7 of CMO 29, a copy of which is attached hereto as Exhibit B.

[4] See Exhibits C, to this Memorandum. Abbott's multitude of failed discovery battles covered much of the same terrain Abbott seeks to re-occupy here. Abbott has aggressively litigated meritless objections in Texas purportedly based on temporal scope, attorney-client and work product privileges, irrelevance of documents in files of high level corporate officials and burdensomeness of searching records of field sales force to name just a few. Abbott has lost each and every one of its writ petitions in Texas. The Relator already has the resulting discovery documents and deposition testimony from the Texas case in its possession and should be able to share it with the United States in this MDL proceeding.

2

motion, are proceedings wherein it has been alleged that Abbott reported or caused the reporting of prices that caused injury or damage to any government program that reimbursed for pharmaceutical products.

As directed by the Court, the Relator provided a sample of documents[5] to Abbott counsel that the Relator believes demonstrate Abbott should be required to consent to sharing or re-produce all documents previously produced in other false price report litigation.[6] Counsel then met and conferred and Abbott's counsel provided a letter setting forth Abbott's position with respect to each of the sample documents.[7] As discussed during the hearing on February 27, 2007, the Relator believes that the documents Abbott refuses to produce or permit shared fall into three basic categories: 1.) Those that are responsive to the United States' Discovery Requests and should have been produced, but were not. 2.) Those which Abbott contends were withheld because they fall outside of Abbott's arbitrary time scope.[8] 3.) Those that may not directly relate

---

[5] Abbott continues to object to the Relator showing confidential documents that Abbott has already produced to the Relator in other false price litigation, including even the sample documents, to counsel for the United States. As a result of Abbott's position, this Court directed Relator's counsel to present the sample documents to the Court, *in camera*. Accordingly, the Relator has prepared a **DVD Containing Sample Documents (In Camera Exhibit D)** containing the sample documents along with two Charts with links to the documents that should facilitate the Court's review. One Chart is organized in the order of the VAC Tracking Number for each document. **Relator's Chart Listing Documents Included in Sample, Abbott's Response/Objections And Relator's Comments (By VAC Reference Number) (In Camera Exhibit E)**. The second Chart contains the same information and links, but is grouped by Abbott's objections. **Relator's Chart Listing Documents Included in Sample, Abbott's Response/Objections And Relator's Comments (Grouped By Abbott Objection) (In Camera Exhibit E).** Links to the documents have been created on the Charts as well as on a copy of this Memorandum which will be included on the DVD provided to the Court *in camera*. This should facilitate the Court's review of the sample documents.

[6] Exhibit F is a copy of a letter dated March 20, 2007 from Relator's counsel transmitting the sample documents to Abbott Counsel.

[7] See Exhibit G, letter dated April 10, 2007 from Abbott Counsel.

[8] Abbott persists in its position that it can simply refuse to provide the United States with documents after the Abbott arbitrary imposed cut off date. First, that date was early 2001, now it is the end of 2001, notwithstanding the Court's stated inclination to extend it through 2003. However, it must be remembered that regardless of the Court's resolution of the temporal scope issue with respect to Abbott's production in the present case, the Relator merely wants to use and share with the United States documents it already has in its possession. The relief requested

to drugs the United States has brought claims for, but which show habit, routine and practice, or other acts evidence. This latter group may include documents which show or assist in discovering other documents showing that Abbott could report truthful prices when it was not in its economic interest to falsely inflate them. The latter group may also reveal other bad acts evidence of false price reports showing that Abbott knew exactly what it was doing when it reported the inflated prices in question.[9]

The Relator provided Abbott with a sample of approximately 180 documents.[10] Of these, Abbott correctly pointed out that 13 had been produced to the United States without objection.[11] Another 15 were documents that the United States only recently received from Abbott after they had been used in depositions taken in the Texas case and after Abbott decided it was time to turn over certain (not all) deposition exhibits and transcripts.[12] Abbott has, to date, refused to permit the Relator to provide the United States with Texas case deposition testimony of Abbott personnel and exhibits designated confidential, even once it becomes clear that Abbott has improperly failed to produce the items in the present case. (See Exhibits H, I and J.) Abbott also concedes that an additional 53 documents (including some large composites) from the sample should have been produced to the United States, but were not. Abbott insists that it should be

---

by the Relator will serve to significantly reduce the number and scope of discovery disputes that this Court will have to address as the parties have already fought these battles in Texas and in other courts.

[9]Abbott has at times insisted that its HPD division prices were set by personnel who had no motive to create an inflated spread and no awareness that they were doing so. However, other acts evidence and knowledge evidence from Abbott's PPD division and its higher corporate officials show otherwise.

[10]Most of these were produced by Abbott in the Texas action; some had been produced to California.

[11]Abbott has produced hundreds of thousands of pages of documents in the U.S., Texas and California cases; all under different bates labeling schemes. Determining which ones were and were not produced where has been, to say the least, a daunting task. This is one of the reasons the Relator should be permitted to share among its government co-parties.  As it stands now, the Relator must search for duplicates of each important document in each of the production databases and attempt to coordinate discussions so as not to violate any court order.

permitted to withhold the remaining 99 documents because, Abbott contends, they are outside the time scope, deal with drugs not plead or are otherwise unrelated to the issues. Accordingly, even by **Abbott's own admission**, after reducing the sample by the 13 documents actually timely produced, Abbott should have produced 68 of 167 documents.

## II.

### PRELIMINARY STATEMENT OF ARGUMENT

This is a *qui tam* action originally brought by the Relator pursuant to the federal False Claims Act, 31 U.S.C.§ 3729 et. seq.,  ("FCA") due to Abbott's fraudulent price reporting practices which have harmed the federal Medicare and the joint state and federal Medicaid Programs. The Relator and its counsel have also expended substantial time and resources pursuing companion state *qui tam* actions for the states' portion arising from Abbott's harm to the Medicaid Program. One of these cases, *California ex rel. Ven-A-Care*, is pending in this Multi-District Litigation proceeding and one*, Texas ex rel Ven-A-Care*, was remanded to Texas state court after Abbott  unsuccessfully sought removal, and is currently pending before the Honorable Scott Jenkins, District Court Judge, in Travis County, Texas . Discovery has been conducted in the Texas case over the last three years and it is set for trial in early 2008. As noted above, Abbott has resisted discovery in the Texas action and repeatedly and unsuccessfully sought writs of mandamus from the trial judge's discovery rulings before the Court of Appeals and the Supreme Court of the State of Texas. In order to expedite discovery in the instant action,

---

[12]Production of documents only after they are used in depositions does nothing to facilitate coordination of efforts before the depositions and may necessitate multiple depositions of the same witnesses.

the Relator has requested that Abbott agree that it may share with the United States documents it has received from Abbott which are subject to the Texas Court's Protective Order, however under which Abbott may consent to such use. Abbott has refused.[13] Moreover, Abbott has taken the surprising position that the Relator may not share, with the United States, protected documents produced to it and the State of California in this same MDL proceeding. Finally, Abbott insists that other states litigating against Abbott in other state courts about similar issues may not share Abbott documents with the United States or the Relator if protected under the orders entered by the other state courts.

Abbott may easily consent to the sharing of its documents or simply provide duplicate electronic copies of its other production at no additional burden. In appropriate cases, federal courts may compel a party to consent to the release of information over its objection. *Doe v. United States, 487 U.S. 201; 108 S. Ct. 2341; 101 L. Ed. 2d 184 (1988).* [14] A fundamental purpose of MDL proceedings is to streamline discovery and avoid unnecessary costs.[15] The Manual for Complex Litigation specifically suggests that state court discovery be utilized in a federal MDL action, particularly where the state action has progressed further.[16] Abbott has aggressively sought the benefits of these MDL proceedings through repeated removals and transfers to this Court. However, when it comes to coordination of discovery efforts, Abbott

---

[13]See Exhibit K, the Texas court's existing Protective Order, which provides at paragraph 20 that Abbott may agree to the use of the documents requested by the Relator.

[14]It is important to note that such compelled consent has been permitted even in criminal cases where difficult Fifth Amendment issues must be resolved. No such issue exists in this complex civil action where Abbott has already produced the documents at issue to one or more government litigants and to the Relator and is merely refusing to allow the Relator to share them with the United States. MDL courts have gone to far greater lengths to insure cooperation and coordination, even enjoining counsel in state court proceedings from taking action they may otherwise deem in the best interests of their clients. See Manual for Complex Litigation § 20. 313.

[15] Manual for Complex Litigation § 20

sings a different tune and insists that the Relator be required to repeatedly breach the "Stalingrade" type defenses it has chosen to erect.  It is the Relator's duty to assist the United States and its *qui tam* states, in the false pricing litigation against Abbott and each of the Relator's actions is directed at returning Medicaid funds to the federal and state fiscs.  However, Abbott's refusal to cooperate in the multi-tribunal discovery process has placed the Relator and its counsel in the absurd position of having access to documents produced by Abbott to the United States, to Texas and to California, but being unable to share documents from the state cases with the United States. This precludes effective cooperation in and coordination of discovery among the Relator's government co-litigants. The Relator respectfully submits that one would be hard pressed to fathom a complex case where discovery coordination and sharing would be more appropriate than the present one.

The meet and confer process directed by this Court thus resulted in Abbott conceding that it should have produced nearly half of the remaining documents from the sample. The Relator respectfully submits that this admission on Abbott's part should end the matter and the Relator should be permitted to use the documents already produced to it (and to other government litigants) by Abbott without being required to expend  time and money pursuing, and burden the Court with, repeated motions to compel.

Abbott's argument is simply that, if it is permitted to again litigate, in this Court,  all of the relevance, scope, burdensomeness and other objections it unsuccessfully asserted elsewhere, it might be forced to produce less documents than it has been required to produce in related

---

[16] Manual for Complex Litigation § 20.313

cases.[17] As will be discussed more fully below, the documents already produced elsewhere are properly responsive to the pending discovery requests and should be compelled in this Court.[18] That said, the entire purpose of the MDL process is to avoid the very kind of duplication of effort that Abbott insists should occur here. Abbott's primary contention is that certain documents may relate to drugs not sued on or a time scope outside of the damages period. While this may be Abbott's best argument it is woefully inadequate in the context of an MDL proceeding subject to the Manual for Complex Litigation. Such a contention would mean that discovery could never be shared or coordinated because any party may assert differences amongst similar proceedings in various courts. It would be like a defendant in an airline disaster action contending that discovery should not be shared because one plaintiff alleges an engineering defect while another relies more heavily on a severe maintenance error. Whichever scenario may prove to be true, the truth should come out in both cases and shared discovery makes a just outcome much more likely.

The Relator respectfully submits that Abbott should not be free to re-litigate discovery issues over and over in these related proceedings. Its admission that a material number of the sample documents should have produced, but were not, proves the wisdom of the MCL's preference for sharing discovery in multiple actions. Sharing presents no incremental burden to

---

[17]Abbott has stated that the United States merely has to sign and agree to be bound by the Texas State Court's protective order and it can then see the documents. However, this is a red herring. The Relator is a party to the Texas case and bound by the order, but can't really use the documents in this case without Abbott's consent or unless they are again produced subject to this Court's order. Indeed Abbott's refusal to allow the Relator to even show the United States its sample documents in conjunction with this motion is a case in point. The Relator cannot conduct joint deposition preparation if it cannot discuss the documents with the government litigants whose interests it must advance. It is no difference for the United States. Moreover, the United States has an absolute right to bring its claims before a United States Court, without subjecting itself to the jurisdiction of multiple state courts and having to comply with multiple state court orders that may or may not be consistent with this Court's orders.

Abbott while it relieves the Court and other parties of significant unnecessary burden. That said, the Relator will now discuss the specific sample documents and why they, and the universe of documents they represent should be shared.

## III.

### ARGUMENT AS TO SPECIFIC SAMPLE DOCUMENTS

In order to facilitate the Court's review and consideration of the sample documents, the Relator has prepared a DVD containing the documents as well as two Charts which have been marked as Exhibits C, D and E and provided to the court *in camera* only. The DVD also contains an additional copy of this Memorandum with links to the specific documents. The Charts contain additional descriptive information and argument about the specific documents and contains links to each document to facilitate the Court's review.  Limited argument is contained in this Memorandum about the specific documents because of the confidentiality issue. The DVD provided to the Court contains copies of the sample documents organized in two ways. One folder contains copy of all images and a separate folder is prepared for each of Abbott's objections and the documents are again copied to the folder for the objection applicable to the document.

### A. The Documents Abbott Concedes Should Have Been Produced.

As noted above, Abbott has conceded that many of the disputed documents from the Relator's sample should have been previously produced to the United States.  Importantly, although Abbott has long known of and opposed the Relator's position that it should be

---

[18]Abbott has repeatedly represented that it has already produced here all documents produced in other cases that it believes it has to.

permitted to share discovery with the United States, Abbott failed to produce these documents until pressed.  By way of example, they include documents which the Relator and the State of Texas successfully compelled Abbott to produce, over Abbott's attorney-client privilege objections,  and show that Abbott's Assistant General Counsel, in 2000, continued to provide false price information to the Texas Medicaid Program after a program official pleaded with Abbott to tell the truth about its prices.[19] These documents belie Abbott's contention that it merely did what it thought the government wanted it to do. These documents show that, although Abbott's lawyers finally insisted (due to the Relator's efforts)  that Abbott  stop reporting false inflated prices, certain Abbott employees still tried to convince First Data Bank to report inflated AWPs for some drugs.[20] These documents also show that Abbott was aggressively marketing the inflated spread it created to large customers because those customers reacted very negatively once it stopped. One of them even demanded nearly $10,000,000 to compensate it for the loss of the kickback remuneration it had relied on when agreeing to purchase Abbott's drugs. Abbott's internal documents show that it had to try to "dodge the issue".  Sample Document  23, Sample Document 98, Sample Document 99, Sample Document 159, Sample Document 160, .

---

[19] Email chains show that Abbott conducted in depth reviews of its actual prices about the time it received a letter in May 2000 from the Texas Medicaid Program requesting that it report truthful prices. Sample Document 242,  Sample Document 243 and Sample Document 244. . In depth analyses were run of Abbott's actual prices. Sample Document 240 yet Abbott chose to continue to report inflated false prices to Texas Medicaid.  Later analyses were run in November 2000, yet Abbott continued to report false prices. Sample Document 457.

[20] Sample Document 94 is an email chain that Abbott previously produced to the United States; however, shows that in early 2001 Abbott employees continued to attempt to persuade First data Bank to use Abbott's inflated list prices to calculate inflated AWPs for the drugs at issue in this case rather than the WAC prices which had been adjusted downward at the direction of counsel.  The documents withheld; however, are necessary to show the entire story of how in mid-2000, Abbott in-house counsel sent a deceptive letter to Texas Medicaid, other counsel apparently persuaded Abbott to begin to change its ways, some at Abbott resisted and tried to maintain the inflated AWP spreads and then Abbott ultimately reduced its reported AWPs and WACs for the drugs at issue.  (Sample Document 94) will be presented under seal and *in camera*.

10

Some of the documents are simple organization charts which enable the plaintiffs to identify important witnesses. (Sample Document 186, Sample Document 189, Sample Document 190 and Sample Document 192)  Some reveal how Abbott ran its own infusion pharmacies and joint ventured with its customers and directly billed for and profited from the inflated reimbursement spread. Sample Document 265, Sample Document 461 . Other documents produced to Texas recently on the eve of a sanctions hearing, show that the highest officials at Abbott were well aware of the inflated spreads and worked to perpetuate the opportunity to continue to deceive the government programs through the spreads. Medicare Working Group Documents. Still others show how the Relator's efforts forced Abbott to alter its behavior. Sample Document 167, Sample Document 170, Sample Document 202, Sample Document 213 and Sample Document 307.   Others reveal Abbott's sales training methods, records and related witnesses.  Sample Document 284, Sample Document 285, Sample Document 297, Sample Document 298 and Sample Document 299.   Some of these materials demonstrate that Abbott was well aware of the meaning its price representations would be given by government reimbursement programs. Sample Document PPD Strat Pricing Present.

**B. The Documents Abbott Refuses to Produce on the Basis of Temporal Scope**.

Abbott finally changed its false price reporting behavior in the early part of 2001.  Sales and marketing materials after that time show how Abbott's customers reacted negatively[21], how

---

[21] Sales reports about large customers' negative reactions to Abbott's change in price reporting behavior show that these customers bought Abbott's drugs during the damages period because Abbott created and marketed an inflated spread.  In light of the confidentiality designations on Abbott's documents, the Relator will not mention names; however, each of the following documents are examples of  information about such customer reaction to reduced spread and AWP issues and which Abbott refuses to produce to the United States.  Sample Document 3-02,

11

Abbott changed its policies and trained its sales force and how the efforts of the Relator have had a truly remedial effect on this large pharmaceutical manufacturer.  This is a *qui tam* case and the Relator will be compensated based upon the good that it has done. The change in Abbott's previously reprehensible corporate behavior is a story the Relator should be permitted to tell to the Court, when the time comes to determine the relator share, if not to the jury to show how Abbott did in fact control and exploit the false prices reported.[22]  Moreover, such evidence includes items such as sales reports, client marketing and planning materials and written policies.  Even if these items were not admissible at trial, they enable the Relator and the United States to identify witnesses, business record systems and practices that permit working back to find similar evidence during the earlier time period.  Again, it should be remembered that the Relator already has these documents and merely wants to share them with the United States in order to effectively complete discovery.

### C. The Documents Abbott Refuses to Produce on the Basis of Relevance.

The United States and the Relator should be permitted to discover evidence that will show that the inflated HPD prices alleged in the Intervention Complaint did not result from accident or ignorance on the part of a few misguided low level employees toiling far from the flag pole.  This will support the element of "knowledge" which the plaintiffs must prove and negate Abbott's promised defense that the government approved of its actions.  The Relator has

---

Sample Document 4-03, Sample Document 8-02 ("anger over the AWP issue".), Sample Document 122, Sample Document 124, Sample Document 151, Sample Document 179, Sample Document 203, Sample Document 280, Sample Document 309, Sample Document 327, Sample Document 180, Sample Document 580.

[22] Abbott's sales training materials are particularly probative of this important point.  Sample Document 350 (A 2003 document relating to "Reimbursement Information" training.); Sample Document 390, joint customer training presentation,

developed evidence in the Texas action which shows that Abbott created false inflated spreads for its PPD drug erythromycin ("ERY"), that its most senior management was aware of and participated in creating and marketing false price spreads at its TAP affiliate, that its reimbursement management personnel directly participated in industry lobbying efforts to perpetuate the opportunity to create and market inflated price spreads while directly submitting claims to Medicare and Medicaid for Abbott's own pharmacies that it actually owned and operated and well as those of customers for which Abbott processed the claims. The Court may recall Abbott's prior protestations that it did not directly receive the public funds that were paid as a result of Abbott's fraudulent conduct. Such assertions are themselves false as the documents show that Abbott directly received the funds or split profits from the inflated spreads with its customers.  The documents in this category also show Abbott's unified marketing approach and how the inflated spreads provided by HPD helped it sell drugs manufactured by other divisions. These documents further show that Abbott was fully capable of reporting truthful prices when it chose to, knew that WAC was known as a true price to the wholesaler and knew that there was an expected relationship of 20% between 25% between WAC and AWP. Abbott contends that explicit training materials discussing these very points with certain Abbott employees are somehow protected from discovery because they do not (as of yet) show that they were presented to other Abbott employees.[23] The Relator respectfully submits that Abbott's contention is meritless.

---

[23] Sample Document 176, Sample Document 350,

CO

It is also important to note that Abbott asserted such "relevance" objections with respect to a series of high level corporate documents known as the "Medicare Working Group" documents until the eve of a hearing seeking them in the Texas case. They are a treasure trove of knowledge documents that counter Abbott's "government knowledge" contentions. They are an excellent example of why the Relator and the United States should not be forced to re-litigate such motions to compel.

## IV.

## CONCLUSION

The Relator respectfully submits that it has made ample showing that Abbott should be required to cooperate in a coordinated discovery process in these MDL proceedings as contemplated by the Manual for Complex Litigation.  The Relator asks that Abbott be compelled to consent to sharing, among the Relator and all government litigants, of its discovery documents and depositions from this MDL and in related state court actions. In the alternative Abbott should be required to forthwith produce all such discovery items to the United States and other government litigants. The Relator requests that the Court consider and enter the Proposed Order submitted with this Memorandum.[24]

---

[24] See Exhibit L.

14

Respectfully submitted,

For the Relator, Ven-a-Care of the Florida Keys, Inc.,

/s/ Alison W. Simon
James J. Breen
Alison W. Simon
The Breen Law Firm
P. O. Box 297470
Pembroke Pines, FL 33029-7470
Phone: 954-874-1635
Fax: 954-874-1739
Email: jbreen@breenlaw.com
Email: alisonsimon@breenlaw.com

Dated: April 27, 2007

**CERTIFICATION**

The undersigned counsel certifies pursuant to LR 7.1(a)(2) that counsel for the Relator, Ven-A-Care of the Florida Keys, Inc. has conferred with counsel for the Defendant Abbott Laboratories, Inc. on the issues raised in this motion and have not been able to reach agreement.

/s/ Alison W. Simon

Dated: April 27, 2007

15

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above **RELATOR'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT TO PRODUCE OR CONSENT TO ACCESS TO AND SHARING OF ALL DISCOVERY PRODUCED BY ABBOTT IN OTHER FALSE PRICE REPORT LITIGATION** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                              <u>/s/ Alison W. Simon</u>

Dated: April 27, 2007