UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>_____<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,*<br>CIVIL ACTION NO. 06-CV-1337-PBS | )<br>)<br>)   MDL No. 1456<br>)   Civil Action No. 01-12257-PBS<br>)<br>)   Hon. Patti B. Saris<br>)<br>)   Magistrate Judge Marianne B.<br>)   Bowler<br>)<br>)<br>) |

# EXHIBIT I

## to

**RELATORS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT LABORATORIES, INC TO PRODUCE OR CONSENT TO ACCESS TO AND SHARING OF ALL DISCOVERY PRODUCED BY ABBOTT IN OTHER FALSE PRICE REPORT LITIGATION**

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number: (312) 269-4373
jgwinchester@jonesday.com

JP741122
080024-024348

February 5, 2007

VIA E-MAIL

Renee Brooker
Ann St. Peter-Griffith
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D Street N.W.
Ninth Floor
Washington, DC 20004

Re: U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.; 06 CV-11337

Dear Counsel:

I have reviewed your correspondence of January 24, 2007, which is effectively a restatement of points raised in Mr. Gobena's correspondence of January 19, 2007 (which was sent before we had our telephonic meet and confer earlier last week). Consider this my response to both letters.

Timing of Abbott's Rolling Production

As an initial matter, you are wrong to suggest that the Government has received no documents from Abbott responsive to its discovery requests in this matter. Abbott pro-actively produced a substantial number of documents as part of its 26(a)(1) disclosures, not to mention the documents Abbott produced in response to the Government's subpoenas, all of which are responsive to one or more of the requests you have served. We believe, in fact, that these productions represents the lion's share of relevant, responsive documents in Abbott's possession, custody or control. Your unilateral characterization of this production by Abbott as "minimal[]" is false, and, frankly, incredible in light of the Government's limited production in response to Abbott's requests.

I told you that the remainder of our production will take place on a rolling basis, the first installment of which you should have received today. I further described a number of specific items in this production, including documents and electronic data, and indicated that other items will be added as we continue to search for additional responsive documents. The conclusion in your letter – that Abbott "provided no information with respect to the details of its anticipated

CHI-1571958v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Renee Brooker
February 5, 2007
Page 2

production, which we understand will be quite limited in any event" – has no basis in anything I said during our call.

In terms of whether the materials Abbott produced on February 5 "complete any of the United States' document production requests," it is hard to say, as the United States' requests are virtually boundless in scope and so duplicative of one another that any given document will be responsive to numerous requests. We are continuing our investigation and will complete our production as soon as practicable.

<u>Definition of Abbott</u>

Your characterization of Abbott's position is false. The Government has sued Abbott for alleged fraud relating to four specifically enumerated drugs, all of which were marketed by Abbott's former Hospital Products Division (HPD) – a completely different line of business from Abbott's Pharmaceutical Products Division (PPD). We have made clear in any number of conferences and pleadings our view that documents and information related *exclusively* to PPD drugs are therefore irrelevant to this case. The Government's only response as to why such information is relevant is the notion that it might constitute or lead to "pattern and practice" or "other bad acts" evidence by Abbott with respect to products not at issue in the complaint. We set forth fully in our response to the Government's motion to compel (dated January 23, 2007) why this argument fails, and there is no need to reiterate the issue here.

As I have made clear in our calls, Abbott did not limit itself to "the four corners of the HPD" in defining "Abbott" for purposes of, or in responding to, the Government's first set of interrogatories or requests to admit. We recognize, however, that the second of Abbott's Objections to Definitions in those responses could be misconstrued. To clarify, in responding to the Government's First Set of Interrogatories and Requests for Admission, we defined "Abbott" to include Abbott Laboratories and Abbott Laboratories Inc. with respect to all matters concerning HPD, including the Subject Drugs.

<u>PPD Documents</u>

Your characterization of Abbott's position is false. At no time did I tell you that, if Abbott identified documents relevant to this case, it would refuse to produce them unless they came specifically from an HPD file. I did state, however, Abbott's position that documents relating exclusively to PPD drugs are not relevant to this case, and that Abbott should not be, and is not, required to review or produce such documents. Abbott is meeting its discovery obligations with respect to all documents relevant to this action.

CHI-1571958v1

JONES DAY

Renee Brooker
February 5, 2007
Page 3

Time Period for Production

In its complaint, the Government alleges that the supposed fraud by Abbott occurred between 1991 and 2001. Despite the fact that the Government investigated this case in secret for more than a decade Abbott has agreed to produce available documents and information for the entire period spanning January 1991 to December 31, 2001 and has, in fact, produced documents dating as far back as 1986 in response to the Government's subpoenas. There has to be some reasonable limitation on Abbott's search, and it seems to us that the timeline set forth in the Government's own complaint is a reasonable place to start. As stated in Abbott's response to the motion to compel, to the extent that Abbott has ever produced pre-1991 documents relating to the Subject Drugs in any other AWP case, we will provide those documents to the Government as well. We see no basis to search anew. However, in conducting any new searches for documents, Abbott does not intend to selectively withhold any pre-1991 documents based on our objections to the Government's discovery requests.

Deposition Transcripts from Other Litigation

You asked during our call whether Abbott would refuse to produce deposition transcripts from other AWP-related cases solely on the basis that Abbott (as opposed to some other party) had designated such transcripts as confidential pursuant to the terms of a protective order to which the United States is not a party. The answer to that question is "no." Subject to its other various objections (relevance, etc.), Abbott will produce to the Government relevant deposition transcripts of Abbott employees or representatives taken in other AWP cases. If any such transcripts were designated as confidential by some party other than Abbott under the terms of a protective order that that would not include the United States, we can discuss how to deal with that situation if and when it arises.

Customer Information

I am confused by this portion of your letter. When I related to you the information during our call about the number of Alternate Site customers, and how many of those customers would fall within the group accounting for the top 80% of Abbott's sales, you asked for time to consider this information and to get back to me. Your letter reads as though we had a discussion about the relevance of documents relating to customers outside that group; we did not. I will take your letter as a statement of the Government's position that all such documents are relevant and should be produced. We will consider this position and respond to you as soon as possible.

Hospira Documents

You are correct that Abbott is not objecting to producing relevant, responsive documents on the ground that such documents are currently in the possession of Hospira. I believe that you and Jim Daly had extensive discussions about this some time ago, and our position is unchanged.
CHI-1571958v1

Renee Brooker
February 5, 2007
Page 4


To the extent Mr. Gobena understood our position differently (as expressed in his January 19 letter), I believe we are all now on the same page.

Compensation of Sales Force

We have agreed to provide the relevant Abbott policies relating to how sales persons are compensated, including bonuses and other incentives. We object to the Government's request that we go further and produce specific information about each sales person's individual performance evaluations and compensation figures, because we regard such a request as irrelevant, unduly burdensome, and harassing.

Production of Documents In Personal Files of Field Sales Force

We have agreed to produce relevant, responsive documents that would be located within Abbott's corporate headquarters. The Government has demanded that Abbott also search the personal files of all field sales personnel throughout the country. We are currently working to determine the size of the HPD field sales force. Until that number is determined, Abbott restates its objection to this request (i.e., irrelevant, unduly burdensome and harassing) and will not conduct a search of the personal files. To the extent we have produced sales files in other cases and such files relate to the Subject Drugs, we will produce those documents.

Sales/Transactional Data

We have produced transaction level sales data for the Subject Drugs in electronic format. We are of course willing to work with you to resolve any technical issues that you may have regarding this data.

Lobbying Documents

Our investigation continues. Since the Government has requested this information of Abbott, does it therefore concede that corollary discovery of the Government (i.e., any documents that relate to the Government's consideration of or response to any lobbying effort relating to pharmaceutical pricing) is also relevant?

Home Infusion Services Documents

As stated, Abbott began its production of responsive Home Infusion documents on February 5.

CHI-1571958v1

JONES DAY

Renee Brooker
February 5, 2007
Page 5


Average Manufacturer Price (AMP)

      For reasons we have discussed at length, Abbott does not believe that documents relating to Abbott's underlying calculation of AMP have any relevance to this case. Documents relating to the calculation of AMP are voluminous and complex. The Government has asserted no claim relating to AMP.

      There is no inconsistency in Abbott's position with respect to AMP as it relates to the Government's own knowledge of the fact that a spread exists between acquisition cost and reimbursement rates under Medicare and Medicaid. Abbott was required by statute to report AMP to the Government for its products, and it did so. This fact alone is relevant to show the Government's knowledge regardless of what the AMP figure was or how it was calculated.

TAP

      We have yet to hear from the Government any basis for why documents relating to the criminal plea and civil settlement of TAP Pharmaceutical Products Inc. – a separate company – relating to the resolution of claims relating to Lupron®, a drug not at issue in this case, would be of any relevance here. Absent such a basis, we are in no position to change our view that such documents are wholly irrelevant.

      \*    \*    \*    \*

      The last paragraph of your letter is troubling, as it appears to serve little purpose other than throwing in barbs that have no basis in fact. I spent more than 1.5 hours on our call on Monday, January 22, the latest in a series of meet and confers over the past several weeks that have spanned many more hours, so any attempt to suggest that Abbott has been at all dilatory in attempting to resolve any disputes regarding the Government's discovery requests is unwarranted and unsupportable.

      Sincerely,

      s/ Jason G. Winchester

cc:    James R. Daly
        Carol Geisler

CHI-1571958v1