ON BEHALF OF BAYER CORPORATION

Paul R. Barry, Esq.
Vice President and Assistant
General Counsel for Bayer

1/19/01
DATE

Paul E. Kalb, Esq.
I. Scott Bass, Esq.
Robert Fabrikant, Esq.
Sidley & Austin
Counsel for Bayer

1/21/01
DATE

40

ON BEHALF OF THE OFFICE OF INSPECTOR GENERAL
OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES


D. McCarty Thornton                                    1/23/01
Chief Counsel to the Inspector General              DATE
Office of Inspector General
U.S. Department of Health and Human Services

41

**Attachment A**

**CERTIFICATION**

The undersigned, a high managerial agent of _____, hereby certifies that the attached average sale price information has been communicated to First DataBank and to the State Medicaid programs indicated below and that it has been calculated in accordance with the methodology described herein.  I further acknowledge that the average sale prices so reported will be filed with and used in the administration of the _____ State Medicaid program(s).

_____
Signature

_____
Title

_____
Date

## Attachment B

A. <u>Reported Prices Procedures</u>. The IRO shall perform Reported Prices Procedures to assist in assessing whether the average sale prices for Government Reimbursed Products reported pursuant to section III.D. of this CIA during the one year period covered by the Drug Price Reporting Engagement were determined and reported in accordance with the provisions set forth in that section of the CIA.

As described below, the IRO shall conduct the Reported Prices Procedures by testing samples of transactions (consisting of sales and sales-related activities with purchasers specifically included in or excluded from the average sale price calculation, as defined in section III.D.2.a. above, including cash disbursements to purchasers (hereafter "Transactions"))[1]. The IRO will test the samples of Transactions in accordance with the guidelines set forth in section A.1 of this Attachment B to the CIA.

In accordance with section A.2 of this Attachment B, the IRO will also test samples of the estimated rebate amounts used in the calculation of average sale prices in order to test whether Bayer followed its accrual methodologies as described in the certification referenced in section III.D.2.c. of the CIA.

### 1. Statistical Testing of Transactions

The IRO shall begin these procedures by grouping all like-kind Transactions that occurred during the twelve-month period covered by the Drug Price Reporting Engagement. The sum of all the Transactions in all the universes combined shall

---

[1]      For example, Transactions as used in this CIA would include, but not be limited to: sales; volume discounts; prompt pay discounts; cash discounts; chargebacks; short-dated product discounts; free goods; rebates paid to customers or credited to customers' accounts; replacement goods; cash disbursements to purchasers; and all other price concessions or incentives provided by Bayer to any relevant purchaser.

equal the sum of all Transactions which occurred during the twelve-month period covered by the Drug Price Reporting Engagement.

Each group of like-kind Transactions will be considered a separate universe from which the IRO will test a statistically valid random probe sample and, if required as set forth below, a statistically valid random full sample of Transactions.  With regard to all groupings of like-kind Transactions except Rebate Transactions[2], the IRO will test the statistically valid random samples in order to determine whether: 1) the correct prices for the Transactions were input into Bayer's system (e.g. - whether the Transaction prices are supported by source documents); and 2) Bayer properly included or excluded each Transaction in the calculation of average sale price under the definition of that term as set forth in section III.D.2.a.  With regard to the groupings of like-kind Rebate Transactions, the IRO will test statistically valid random samples to determine whether: 1) the correct prices for the Transactions were input into Bayer's system (e.g. - whether the Transaction prices are supported by source documents); and 2) the rebate Transaction amount calculated by Bayer was supported by Bayer's contract with the customer, the customer's purchasing history and Bayer's rebate policy.

Each full sample shall consist of a statistically valid sample of Transactions that can be projected to the corresponding universe of like-kind Transactions for the relevant period.  The sample size for each of the full samples shall be determined through the use of a probe sample.  A separate probe sample, comprised of at least 30 sampling units, shall be used for each universe.  The variable that will be tested in both the probe and full sample will be dollars that were improperly included/excluded in the calculation of average sale price.  At a minimum, the full samples will be designed with the objective of providing a statistical extrapolation

[2] As used herein, Rebate Transactions shall be defined to be those reductions in price the value of which is not known at the time of the sale.

-2-

of the results of the testing with a ninety (90) percent confidence level and a precision level of twenty-five (25) percent. In other words, each of the full samples will be designed with the objective of containing a sufficient number of items so that if the dollars included or excluded in error, if any, identified for each of the full samples were projected to the universe of all like-kind Transactions from which each full sample was drawn, the projection would provide a 90% confidence level and a maximum relative precision (i.e., semi-width of the confidence interval) of plus or minus 25% of the point estimate.

Both the probe samples and the full samples must be selected through use of the random number generator contained in OIG's Office of Audit Services Statistical Sampling Software, also known as "RAT-STATS," which is available through the Internet at www.hhs.gov/oas/ratstat.html. The number of Transactions to be tested in each full sample will be based on the results of each probe sample. The IRO shall use RAT-STATS to estimate the sample size for each full sample.

For each universe of like-kind Transactions described above, the IRO shall test a probe sample of at least thirty (30) Transactions. If no variances are noted in the initial probe sample, a second probe sample, of at least thirty (30) sampling units, will be randomly selected and tested. If no variances are found in the second probe sample, then no further testing of the universe of like-kind Transactions being tested will be required and the results of the two probe samples will be reported in lieu of the testing of the related full sample when preparing and submitting the Drug Price Reporting Engagement Report.

The IRO will have the option of selecting initial probe samples with at least fifty (50) sampling units for each universe of like-kind Transactions described above. If no variances are found in the 50-item probe sample, no further testing of the universe of like-kind Transactions from which the 50-item probe sample was

-3-

selected will be required and the results of the 50-item probe sample will be reported in lieu of the testing of the related full sample when preparing and submitting the Drug Price Reporting Engagement Report.

**2.  Testing of Estimated Rebate Amounts Used in Calculating Average sale price**

In order to test the estimated rebate amounts used in calculations of average sale price, the IRO shall randomly select a sample of the estimated rebate amounts determined through Bayer's accrual methodology and used in the calculation of average sale price for the lesser of thirty (30) NDCs (11 digits) from, or ten percent (10%) of, the universe of NDCs (11 digits) reported for Government Reimbursed Products.  For each of those sampled units, the IRO will determine whether Bayer: 1) made assumptions about those rebate amounts that were based upon commercial arrangements and supported by source documentation; 2) tested those assumptions in light of actual experience; and 3) made adjustments in light of actual experience.

B.  <u>Systems Procedures</u>.   The IRO shall also perform procedures with regard to Bayer's price calculation and reporting systems as they relate to Government Reimbursed Products and Bayer's obligations under the CIA ("the Systems Procedures").  The Systems Procedures shall consist of thorough inquiries, including queries of the client, analysis of relevant Bayer policies and procedures, and analysis of all other appropriate documentation of the following:

1.  Bayer's systems and operations relating to the calculation of average sale price and other information as required by the CIA, including, but not limited to, the computation of the average sale price in accordance with the specifications outlined in section III.D.2.a of the CIA;

2. Bayer's systems and operations relating to the reporting of average sale price and other information as required by the CIA, including, but not limited to, the transcription and reporting of the calculated average sale prices to the required entities;

3. Bayer's systems and operations relating to the identification and correction of any inaccurate pricing information, if any, provided to the State Medicaid Programs, the OIG, and all drug price reporting services on which government agencies rely; and

4. the steps Bayer has represented it has or is taking to bring its operations into compliance or to correct any problems identified by the most recent previous Drug Price Reporting Engagement.

C. **Drug Price Reporting Engagement Report.** The following information shall be included in each annual Drug Price Reporting Engagement Report:

    1. **Elements to Be Included:**

        a. Engagement Objectives:  A clear statement of the objectives intended to be achieved by the Drug Price Reporting Engagement.  A separate objective should be stated for each universe of like-kind Transactions; the testing of estimated rebate amounts used in calculating average sale price; and for each element of the Systems Procedures.

        b. Procedures Protocol:  A detailed description of how the Drug Price Reporting Engagement was conducted, the specific procedures performed, and a description of each sampling unit and universe utilized in performing the procedures.  The protocol should also include a detailed description of how the procedures were performed for each universe of like-kind Transactions and for each system.

        c. Sources of Data:  A full description of the types of information sources upon which the IRO based the findings of the Drug Price Reporting

Engagement, including, but not limited to, the professional standards applied and the documents, pricing and sales data, and/or any applicable contracts utilized in performing the procedures conducted pursuant to the Drug Price Reporting Engagement.

2. **Results of Drug Price Reporting Engagement.** The following results shall be included in each Drug Price Reporting Engagement Report:

a. for each universe of like-kind Transactions, the IRO shall state the findings, a description of the procedures performed, and the basis for the findings as to whether correct Transaction prices were input into Bayer's systems;

b. for each universe of like-kind Transactions except the Rebate Transactions, the IRO shall state the findings, a description of the procedures performed, and the basis for the findings as to as to whether the Transactions were properly included in or excluded from the calculations of average sale prices in accordance with the provisions of section III.D. of this CIA. If any sample Transaction was not properly calculated into the average sale price, the findings should also identify the dollar amount included or excluded in error for each such sample Transaction;

c. for each universe of like-kind Rebate Transactions, the IRO shall state the findings, a description of the procedures performed, and the basis for the findings as to whether the rebate amount calculated by Bayer was supported by Bayer's contract with the customer, the customer's purchasing history and Bayer's rebate policy;

d. for the sampled estimated rebate amounts included in the calculation of average sale price, the findings, a description of the procedures performed, and the basis for the findings as to whether Bayer: 1) made assumptions about those estimated rebate amounts that were based upon commercial

-6-

arrangements and supported by source documentation; 2) tested those assumptions in light of actual experience; and 3) made adjustments in light of actual experience;

e. the findings, a description of the procedures performed, and the basis for the findings as to Bayer's systems and operations relating to the calculation of average sale price information as required by the CIA;

f. the findings, a description of the procedures performed, and the basis for the findings as to Bayer's systems and operations relating to the reporting of average sale price information as required by the CIA;

g. the findings, a description of the procedures performed, and the basis for the findings as to Bayer's systems and operations relating to the identification and correction of any inaccurate pricing information provided to the State Medicaid Programs, to OIG and all drug price reporting services on which government agencies rely;

h. the findings, a description of the procedures performed, and the basis for the findings as to the steps Bayer has represented it has or is taking to bring its operations into compliance or to correct any problems identified by the most recent previous Drug Price Reporting Engagement; and

i. observations, as a result of the procedures performed with regard to Bayer's practices and systems for the reporting of average sale prices and other drug price information as defined in and required by the CIA (including, but not limited to, observed weaknesses, if any, in the operations of these practices and systems and Bayer's internal controls for such systems and any recommendations, if any, the IRO may have to improve any of these operations, practices, systems and related internal controls).