ADDENDUM TO CORPORATE INTEGRITY AGREEMENT
BETWEEN THE
OFFICE OF INSPECTOR GENERAL
OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND
BAYER CORPORATION

## I.   PREAMBLE

Bayer Corporation hereby enters into this Addendum to its Corporate Integrity Agreement ("CIA") with the Office of Inspector General ("OIG") of the United States Department of Health and Human Services ("HHS") that became effective January 23, 2001. Contemporaneously with this Addendum, Bayer Corporation is entering into a Settlement Agreement with the United States, and the CIA and this Addendum are incorporated by reference into that Settlement Agreement. Bayer Corporation shall also enter into related settlement agreements with various States, and Bayer Corporation's agreement to the CIA and this Addendum is a condition precedent to those agreements.

In early 2003, Bayer Corporation reorganized its business. The functions and operations of the Bayer Pharmaceutical Division (referenced in the CIA) now reside with Bayer Pharmaceuticals Corporation and the Biological Products Division of Bayer HealthCare LLC. Each and every reference to the Bayer Pharmaceutical Division in the CIA shall now refer to the Bayer Pharmaceuticals Corporation and the Biological Products Division of Bayer HealthCare LLC (collectively hereafter "Bayer").

For purposes of the CIA and this Addendum, the term "Covered Persons" shall continue to refer to officers, directors, employees, contractors (subject to Bayer's control) and agents of Bayer who are involved in the contracting for, or marketing, selling or reporting the price of products that are reimbursed by Medicare, Medicaid and all other Federal health care programs (as defined in 42 U.S.C. §1320a-7b(f)).[1] If during the term

---

[1] Specifically excluded from the definition of "Covered Persons" are the marketing, sales or other personnel of firms with which Bayer has agreements to co-promote its products. Bayer shall, however, in good faith seek to obtain assurances that such personnel have received appropriate training on proper marketing and sales techniques. The term "Covered Persons" specifically includes all other personnel, apart from those acting under co-promotion agreements,

of this Addendum, any Bayer division or affiliate (defined as an entity controlled by Bayer Corporation or its parent) besides, or in addition to, Bayer Pharmaceuticals Corporation or the Biological Products Division of Bayer HealthCare LLC becomes involved in the contracting for, marketing, selling or reporting the price of pharmaceutical or biological products that are reimbursed by Federal health care programs, the term Covered Persons shall also include the individuals in that division or affiliate, and all references to Bayer in this Addendum shall also be construed to include that other division or affiliate.

For purposes of the CIA and this Addendum, references in the CIA to HCFA ("Health Care Financing Administration") shall be construed to refer to the Centers for Medicare and Medicaid Services ("CMS").

## II.   TERM AND SCOPE OF THE CIA AND ADDENDUM

Unless otherwise specified herein, Bayer shall continue all of the obligations assumed under the CIA, and the period of the additional compliance obligations agreed to by Bayer under this Addendum shall be six years from the Effective Date of this Addendum.  The Effective Date of this Addendum shall be January 23, 2003.

## III.   CORPORATE INTEGRITY OBLIGATIONS

### A.   Compliance Officer and Committee.

The terms of Section III.A of the CIA remain in effect and Bayer shall continue its obligations under Section III.A through the term of this Addendum.

### B.   Written Standards.

1. *Code of Conduct.* The terms of Section III.B.1 of the CIA remain in effect and Bayer shall continue its obligations under Section III.B.1 through the term of this Addendum.

2. *Policies and Procedures.* The terms of Section III.B.2 of the CIA remain in effect and Bayer shall continue its obligations under Section III.B.2 as amended herein

---

who comprise Bayer's contract sales force.

through the term of this Addendum. To the extent not already accomplished, Bayer shall amend its Policies and Procedures to address the requirements of government contracts, including those entered into between Bayer and the HHS under the Medicaid Drug Rebate Program, 42 U.S.C. § 1396r-8, and the Drug Pricing Program under the Public Health Service (PHS) Act, 42 U.S.C. § 256b. Within 120 days of the date of the last signature on this Addendum ("Signing Date"), to the extent not already accomplished, Bayer shall distribute the relevant portions of its amended Policies and Procedures to all Covered Persons.

C. Training and Education.

1. *General Training.* The terms of Section III.C.1 of the CIA remain in effect and Bayer shall continue its obligations under Section III.C.1 through the term of this Addendum.

2. *Specific Training.* Section III.C.2 of the CIA shall be amended to read as follows and shall remain in effect through the term of this Addendum.

Within 120 days of the Signing Date of this Addendum, to the extent not already accomplished, each Covered Person who has direct responsibility for establishing or reporting pricing information for Government Reimbursed Products (including prices established and reported for purposes of the Medicaid Drug Rebate Program or the Drug Pricing Program) or sets policy for or supervises the marketing and sales of Government Reimbursed Products (hereafter collectively "Relevant Covered Persons") shall receive at least two hours of specific training in addition to the general training required above. This specific training shall include a discussion of:

a. the reporting of accurate pricing information to CMS, the State Medicaid Programs and drug price reporting services for Government Reimbursed Products (including a discussion of Bayer's systems for gathering relevant data and calculating, verifying and reporting Average Sale Price and information relating to the Medicaid Drug Rebate Program and the Drug Pricing Program);

b. the personal obligation of each individual involved in the drug price reporting process to ensure that prices are accurately reported;

c.  all applicable Federal health care program requirements relating to the Medicaid Drug Rebate Program and the Drug Pricing Program;

d.  the personal obligation of each individual involved to comply with the requirements of the Medicaid Drug Rebate Program and other government contracts (such as those under the Drug Pricing Program) to ensure that all obligations associated with those contracts are satisfied; and

e.  examples of proper and improper drug price reporting, government contracting, and marketing/sales practices.

New Relevant Covered Persons shall receive this specific training within 30 days after the beginning of their employment or becoming Relevant Covered Persons, or within 120 days after the Signing Date, whichever is later.  If a new Relevant Covered Person has any responsibility for establishing or reporting pricing information for, or setting the policy for or supervising the marketing/sales of, Government Reimbursed Products prior to completing this specific training, a Relevant Covered Person who has completed the specific training shall review all of the untrained person's work in these areas.  After receiving the initial specific training described in this section, every Relevant Covered Person shall receive at least two hours of specific training annually.

3.  *Certification.*  The terms of Section III.C.3 of the CIA remain in effect and Bayer shall continue its obligations under Section III.C.3 through the term of this Addendum.

4.  *Training Methodology.*  The terms of Section III.C.4 of the CIA remain in effect and Bayer shall continue its obligations under Section III.C.4 through the term of this Addendum.

D.  Reporting Requirements.

The terms of Section III.D of the CIA (including the certification set forth in Attachment A to the CIA) remain in effect and Bayer shall continue its obligations under Section III.D through the original term of the CIA.

Addendum to CIA
Bayer Corporation                                    4

E. <u>Review Procedures</u>.

Section III.E of the CIA shall be amended to read as follows and shall remain in effect through the term of this Addendum, except as specified below.

1. *General Description*.

a. <u>Retention of Independent Review Organization</u>.  Bayer shall continue to retain an entity (or entities), such as an accounting, auditing, or consulting firm (hereinafter "Independent Review Organization" or "IRO"), to perform reviews to assist Bayer in assessing and evaluating its drug price reporting and compliance practices pursuant to the CIA.  Pursuant to this Addendum, within 90 days after the Signing Date, Bayer shall retain an IRO to perform two additional reviews as specified below.

Bayer may select the same IRO for purposes of complying with this Addendum as it selected for the CIA provided two conditions are met.  First, each IRO retained by Bayer shall have expertise in auditing and the requirements of the Federal health care programs as they relate to the reimbursement, marketing/sales, and reporting of pricing information for Government Reimbursed Products (including the requirements of the Medicaid Drug Rebate Program).  Second, each IRO shall assess, along with Bayer, whether it can perform the IRO review(s) in a professionally independent and/or objective fashion, as appropriate to the nature of the engagement, taking into account any other business relationships or engagements that may exist, and must find that it can, in fact, perform the reviews in a professionally independent and/or objective fashion.

b. <u>Types and Frequency of Engagements</u>.

(i) Pursuant to the CIA, Bayer agreed to retain an IRO to conduct an engagement ("the Drug Price Reporting Engagement") with regard to Bayer's Average Sale Price reporting practices.  That engagement is composed of two separate sets of procedures, "Reported Prices Procedures" and "Systems Procedures," both of which are described in detail

Addendum to CIA
Bayer Corporation

5

in Attachment B to the CIA. Bayer shall continue to retain an IRO to perform the Drug Price Reporting Engagement as set forth in the CIA for the original term of the CIA.

(ii) In addition to the Drug Price Reporting Engagement outlined above, the IRO shall conduct two other types of reviews. First, as set forth more fully in Attachment A to this Addendum, the IRO shall perform Medicaid Rebate Systems Reviews that shall address Bayer's systems, processes, policies and practices (including inquiries made to CMS) associated with tracking, gathering, and accounting for all relevant data for purposes of appropriately calculating the Best Prices reported under the Medicaid Drug Rebate Program. Second, as described in Attachment A hereto, the IRO shall conduct Managed Care Transactions Reviews that shall address and analyze Bayer's systems, policies and practices with regard to non-rebate payments made to managed care entities.

(iii) If there are no material changes in Bayer's Medicaid Drug Rebate Program-related systems, processes, policies and practices during the term of the Addendum, the IRO shall perform the Medicaid Rebate Systems Reviews for the first and fifth Reporting Periods under this Addendum. If Bayer materially changes its systems, processes, policies and practices relating to the Medicaid Drug Rebate Program, then the IRO shall perform a Medicaid Rebate Systems Review for the Reporting Period in which such changes were made in addition to conducting the Medicaid Rebate Systems Review for the first and fifth Reporting Periods under this Addendum. The Managed Care Transactions Reviews shall be performed annually and shall cover each of the Reporting Periods under this Addendum. Unless as otherwise specified in Attachment A, the IRO shall perform all components of each of the engagements described in this Section III.E.1.b.

c. Retention of Records. The IRO and Bayer shall retain and make available to OIG, upon request, all work papers, supporting

documentation, correspondence, and draft reports (those exchanged between the IRO and Bayer) related to the reviews.

2. *Review Report(s)*. The IRO(s) shall prepare a report (or reports) based upon the Drug Price Reporting Engagements, the Medicaid Rebate Systems Reviews and the Managed Care Transactions Reviews performed (the "Review Reports"). Information to be included in the Review Reports is detailed in Appendix B to the CIA and in Attachment A to this Addendum.

3. *Validation Review*. In the event OIG has reason to believe that: (a) any of Bayer's Reviews or Engagements fail to conform to the requirements of this CIA; or (b) the IRO's findings or the Review or Engagement results are inaccurate, OIG may, at its sole discretion, conduct its own review to determine whether the Review or Engagement at issue complied with the requirements of the CIA and/or the findings or Review or Engagement results are inaccurate ("Validation Review"). Bayer shall pay for the reasonable cost of any such review performed by OIG or any of its designated agents so long as it is initiated within one year after Bayer's final submission (as described in Section II of the CIA) is received by OIG.

Prior to initiating a Validation Review, OIG shall notify Bayer of its intent to do so and provide a written explanation of why OIG believes such a review is necessary. To resolve any concerns raised by OIG, Bayer may request a meeting with OIG to discuss the results of any Engagement or Review submissions or findings; present any additional or relevant information to clarify the results of the Engagement or Review or to correct the inaccuracy of the Engagement or Review; or propose alternatives to the proposed Validation Review. Bayer shall provide any additional information as may be requested by OIG under this Section in an expedited manner. OIG will attempt in good faith to resolve any Engagement or Review issues with Bayer prior to conducting a Validation Review. However, the final determination as to whether or not to proceed with a Validation Review shall be made at the sole discretion of OIG.

4. *Independence/Objectivity Certification*. The IRO shall include in its report(s) to Bayer a certification or sworn affidavit that it has evaluated its professional independence and/or objectivity, as appropriate to the nature of the engagement, with regard to the Engagement or Review and that it has concluded that it is, in fact, independent and/or objective.

Addendum to CIA
Bayer Corporation                                      7

F. Confidential Disclosure Program.

The terms of Section III.F of the CIA remain in effect and Bayer shall continue its obligations under Section III.F through the term of this Addendum.

G. Ineligible Persons.

The terms of Section III.G of the CIA remain in effect and Bayer shall continue its obligations under Section III.G through the term of this Addendum.

H. Notification of Government Investigation or Legal Proceedings.

The terms of Section III.H of the CIA remain in effect and Bayer shall continue its obligations under Section III.H through the term of this Addendum.

I. Certification Regarding Medicaid Rebate Policies and Procedures.

For the term of this Addendum, Bayer's Compliance Officer shall complete the certification set forth at Attachment B hereto. Bayer shall include the certification in each of its Annual Reports to the OIG.

IV.   NEW BUSINESS UNITS OR LOCATIONS

The terms of Section IV of the CIA remain in effect and Bayer shall continue its obligations under Section IV through the term of this Addendum.

V.   IMPLEMENTATION AND ANNUAL REPORTS

Section V of the CIA, as amended herein, shall remain in effect and Bayer shall continue its obligations under Section V through the term of this Addendum.

A. Implementation Information. Within 90 days after the Signing Date, Bayer shall notify and provide to the OIG, in writing, the following information:

1. the identity of the IRO(s) and a summary/description of all current engagements between Bayer and the IRO, including, but not limited to, any outside financial audits or reimbursement consulting; and

Addendum to CIA
Bayer Corporation                                          8

2. a certification from each IRO regarding its professional independence and/or objectivity with respect to Bayer as required by Section III.E.4.

B. Annual Reports. Bayer shall submit to OIG Annual Reports with respect to the status of, and findings regarding, Bayer's compliance activities for each of the six one-year periods beginning on the Effective Date of this Addendum. (The one-year period covered by each Annual Report shall be referred to as the "Reporting Period.")

Each Annual Report shall include the same items and information as specified in Section V.B. of the CIA, with the following amendments/additions.

Section V.B.5 is amended to read: a complete copy of the reports prepared pursuant to the IRO's Drug Price Reporting Engagement, Medicaid Rebate Systems Review, and Managed Care Transactions Review, including a copy of the methodology used and a copy of the IRO's engagement letter(s);

A new Section V.B.14 is added that reads: the certification set forth as Attachment B to this Addendum (relating to the Medicaid Drug Rebate Program).

Annual Reports submitted pursuant to Section V.B must be received by the OIG no later than 75 days after the end of each Reporting Period under the Addendum.

C. Certifications. The terms of Section V.C of the CIA remain in effect and Bayer shall continue its obligations under Section V.C through the term of this Addendum.

VI.   NOTIFICATIONS AND SUBMISSION OF REPORTS

The terms of Section VI of the CIA remain in effect and Bayer shall continue its obligations under Section VI through the term of this Addendum with the following changes. Notifications and reports to the OIG shall be submitted to the "Administrative and Civil Remedies Branch" rather than to the "Civil Recoveries Branch – Compliance Unit." The Bayer Compliance Officer is now Jeffrey M. Greenman. The Bayer phone number is: (203) 812-2647. The Bayer fax number is: (203) 812-3143.

Addendum to CIA
Bayer Corporation                                    9

VII.   **OIG INSPECTION, AUDIT AND REVIEW RIGHTS**

The terms of Section VII of the CIA remain in effect and Bayer shall continue its obligations under Section VII through the term of this Addendum.

VIII.   **DOCUMENT AND RECORD RETENTION**

Bayer shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs, or to compliance with the CIA or this Addendum, for seven years (or longer if otherwise required by law) after the Effective Date of this Addendum.

IX.   **DISCLOSURES AND PRIVILEGES**

The terms of Section IX of the CIA remain in effect and Bayer shall continue its obligations under Section IX through the term of this Addendum.

X.   **BREACH AND DEFAULT PROVISIONS**

Section X of the CIA, as amended herein, shall remain in effect through the term of this Addendum.

Section X.A.4 is amended to read as follows:

4.   A Stipulated Penalty of $2,000 (which shall begin to accrue on the date the failure to comply began) for each day Bayer employs or engages an Ineligible Person as a Covered Person and that person: (a) has responsibility for, or involvement with, Bayer's business operations related to the Federal health care programs; or (b) is in a position for which the person's salary or the items or services rendered, ordered, or prescribed by the person are paid in whole or part, directly or indirectly, by Federal health care programs or otherwise with Federal funds (the Stipulated Penalty described in this Subsection shall not be demanded for any time period during which Bayer can demonstrate that it did not discover the person's exclusion or other ineligibility after making a reasonable inquiry (as described in Section III.G) as to the status of the person).

The following new item is added as Section X.A.6..

Addendum to CIA
Bayer Corporation                                    10

X.A.6.  A Stipulated Penalty of $5,000 for each false certification submitted by, or on behalf of, Bayer as part of its Implementation Information, Annual Report, additional documentation to a report (as requested by the OIG), or as otherwise required under this CIA.

Section X.A.6. of the CIA shall be renumbered as X.A.7., and the reference to "any obligation of this CIA not already covered in sections X.A.1-5" shall refer to "any obligation of this CIA not already covered in sections X.A.1-6."

## XI.   EFFECTIVE AND BINDING AGREEMENT

Section XI of the CIA shall be amended to read as follows and shall remain in effect through the term of this Addendum.

Consistent with the provisions in the Settlement Agreements pursuant to which the CIA and this Addendum are entered, and into which the CIA and Addendum are incorporated, Bayer Corporation, Bayer Pharmaceuticals Corporation and Bayer HealthCare LLC, and OIG agree as follows:

A.   The CIA and this Addendum shall be binding on the successors, assigns and transferees of Bayer Corporation, Bayer Pharmaceuticals Corporation and Bayer HealthCare LLC;

B.   This Addendum shall become final and binding on the Signing Date;

C.   Any modifications to the CIA or this Addendum or shall be made with the prior written consent of the parties to the CIA and Addendum; and

D.   The undersigned Bayer Corporation signatory represents and warrants that he is authorized by Bayer Corporation to execute this Addendum and that Bayer Corporation shall cause the Bayer Pharmaceuticals Corporation and the Biological Products Division of Bayer HealthCare LLC to fulfill its obligations under this Addendum. The undersigned OIG signatory represents that he is signing this Addendum in his official capacity and that he is authorized to execute this Addendum.

Addendum to CIA
Bayer Corporation                                    11

ON BEHALF OF BAYER CORPORATION

Jon R. Wyne

Senior Vice President and Treasurer
Bayer Corporation

DATE

Paul E. Kalb, Esq.
I. Scott Bass, Esq.
Nathan C. Sheers, Esq.
James C. Stansel, Esq.
Sidley Austin Brown & Wood LLP
Counsel for Bayer Corporation

DATE

Addendum to CIA
Bayer Corporation

12

## ON BEHALF OF BAYER CORPORATION

_____
Jon R. Wyne
Senior Vice President and Treasurer
Bayer Corporation

_____
DATE

_____
Paul E. Kalb, Esq.
I. Scott Bass, Esq.
Nathan C. Sheers, Esq.
James C. Stansel, Esq.
Sidley Austin Brown & Wood LLP
Counsel for Bayer Corporation

4/15/03
DATE

Addendum to CIA
Bayer Corporation

12

ON BEHALF OF THE OFFICE OF INSPECTOR GENERAL
OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES


Larry J. Goldberg
Assistant Inspector General for Legal Affairs
Office of Inspector General
U. S. Department of Health and Human Services

7/15/03
DATE

Addendum to CIA
Bayer Corporation

13

ADDENDUM TO CORPORATE INTEGRITY AGREEMENT BETWEEN
OFFICE OF INSPECTOR GENERAL AND BAYER CORPORATION
Attachment A

A.    Medicaid Rebate Systems Review

As specified more fully below, during the term of this Addendum to the
CIA between the OIG and Bayer Corporation, Bayer shall retain an IRO to
perform reviews that address Bayer's systems, processes, policies and practices
(including inquiries made to CMS) associated with tracking, gathering, and
accounting for all relevant data for purposes of appropriately calculating the Best
Price reported under the Medicaid Drug Rebate Program.

If there are no material changes in Bayer's Medicaid Drug Rebate Program-
related systems, processes, policies and practices during the term of this
Addendum, the IRO shall perform these reviews for the first and fifth Reporting
Periods under the Addendum.  If Bayer materially changes its systems, processes,
policies and practices relating to the Medicaid Drug Rebate Program, then the IRO
shall perform a Medicaid Rebate Systems Review for the Reporting Period in
which such changes were made in addition to conducting the Medicaid Rebate
Systems Review for the first and fifth Reporting Periods.

In order to conduct this review, the IRO shall undertake the following steps:

1.   The IRO shall interview the following Bayer personnel, as applicable, and
     any other appropriate personnel who are responsible for the quarterly
     calculation of Best Price for purposes of the Medicaid Drug Rebate
     Program:

             Director, Strategic Contracting and Contract Operations
             Manager, Strategic Contracting and Contract Operations
             IT Consultant
             Senior Contract Analyst, Rebate Operations
             Administrator, Rebate Operations
             Government Contract Analysts
             Administrator, Bids and Contracts
             Senior Financial Analyst
             Manager, Contract Analyst and Planning
             Manager, Internal Controls
             Contract Associate

2.   The IRO shall review Bayer's policies and procedures and practices as they
     relate to the quarterly calculation of Best Price for Government Reimbursed
     Products as the term is defined in the CIA. Based upon the information
     obtained from the management interviews, the review of Bayer's policies

*Attachment A to Addendum*

ATTACHMENT A TO ADDENDUM TO CIA
*BETWEEN OIG AND BAYER CORPORATION*

and procedures and other relevant document review, and the review of Bayer's practices, the IRO shall review and document the systems, policies, processes and controls associated with Bayer's calculation of Best Price for Government Reimbursed Products. In particular, the IRO shall review the following:

   a. Bayer's determination of which sales and other transactions to exclude from the calculation of the Best Price because the transactions are exempt from the calculation;

   b. Bayer's determination of which customers are considered for purposes of the calculation of Best Price;

   c. Where applicable, Bayer's treatment of all types of discounts; chargebacks; free goods; rebates and all other price concessions provided to any relevant purchaser;

   d. Any inquiries from Bayer to CMS in connection with calculation of the Best Price and any responses to those inquiries;

   e. Bayer's computer or accounting systems used in the calculation of Best Price, including the data or information flow process by which data about relevant sales and other transactions are included in the calculation of Best Price;

   f. Bayer's use of electronic and manual tools or other mechanisms to monitor or trend Best Price and identify any variations, exceptions or outliers in the calculated Best Price (including a review of the basis upon which variations, exceptions or outliers are identified and follow-up activities taken to identify the cause of the variations, exceptions or outliers); and

   g. Bayer's systems and practices for reporting Best Price to CMS and for reporting any adjustments in previously reported Best Price or Unit Rebate Amount.

3. For each relevant Reporting Period, the IRO shall prepare a report based upon the Medicaid Rebate Systems Review. (This report may be combined with the report for the Managed Care Transactions Review and/or the report for the Drug Price Reporting Engagement.) Each report shall include the following items:

ATTACHMENT A TO ADDENDUM TO CIA
*BETWEEN OIG AND BAYER CORPORATION*

a. a description of the systems, processes, policies, and practices in place to track, gather, and appropriately include or exclude relevant transactions in the calculation of Best Price;

b. a description of the documentation, information, practices and systems reviewed and the personnel interviewed, including a description of Bayer's inquiries to CMS regarding Medicaid Best Price and any responses to those inquiries; and

c. observations, findings, and recommendations on possible improvements to Bayer's systems, processes, policies, and practices.

**B.    Managed Care Transactions Review**

As specified more fully below, during the term of this Addendum to the CIA between the OIG and Bayer Corporation, the IRO shall annually perform reviews that shall address and analyze Bayer's systems, policies and practices with regard to non-rebate payments made to managed care entities.

1.  Testing Period and Testing Objective

a. For the first Reporting Period under this Addendum, the IRO shall test sample units consisting of non-rebate expenditures made to managed care customers during the period from October 2002 through September 2003 ("Testing Period"). For subsequent Reporting Periods, unless otherwise agreed to by the OIG, the IRO shall test sample units from the next consecutive one-year periods.

b. For purposes of this review, a managed care customer is a for-profit or not-for-profit entity (a) whose principle business is managing or providing pharmacy and/or other health care benefits, including, but not limited to, health maintenance organizations, preferred provider organizations and pharmacy benefit management companies; and (b) that has entered into some form of discount agreement with Bayer that was in effect during the relevant Testing Period. The term "managed care customer" does not include government entities, hospitals or health care providers.

2.  Review Scope – Sample Units and Sources of Documentation

a. For the Testing Period, the IRO will randomly identify 30 managed care customers based upon a listing of all managed care customers as provided by Bayer.

Page 3

ATTACHMENT A TO ADDENDUM TO CIA
*BETWEEN OIG AND BAYER CORPORATION*

b. Definition of the Sample Unit - for the purposes of this discovery sample, the IRO will define the sample unit as one non-rebate payment to a managed care customer in the Testing Period.[1]

c. From the universe of all payments related to the first 20 managed care customers randomly identified, the IRO will randomly identify 50 sample units for testing.[2]

d. Definition of Control Documentation – for purposes of this discovery sample, Bayer will provide the IRO with all applicable documentation as required by Bayer's policies and procedures to support the sample units randomly identified ("Control Documentation"). Examples of the types of expenditures and Control Documentation to be tested include, but may not be limited to, the following:

  (a) Speaker agreements;
  (b) Honoraria requests;
  (c) Consulting and other non-consulting arrangement agreements;
  (d) Educational grants requests;
  (e) CME agreements;
  (f) Clinical or research grant requests; and
  (g) Charitable contribution requests.

3. Testing Procedures

a. For the Testing Period, the IRO will test the randomly identified 50 sample units according to the following testing objectives:

  (a) The appropriate and required Control Documentation exists for the sample unit as per Bayer's policies and procedures as communicated in Bayer's *"Compliance Policies and Procedures," Revised July 1, 2002 Updated December 1, 2002*;

  (b) The Control Documentation was completed in accordance with the requirements set forth in Bayer's policies and procedures;

---

[1] The sample units will not contain rebates, chargebacks or administration fees.
[2] Should there be fewer than 50 sample units related to the first 20 managed care customers, the IRO will randomly select additional sample units from the remaining 10 managed care customers.

Page 4

ATTACHMENT A TO ADDENDUM TO CIA
BETWEEN OIG AND BAYER CORPORATION

(c) The description of the expenditure in the Control
Documentation provided is consistent with Bayer's policies and
procedures; and

(d) The Control Documentation reflects that all required written
or electronic approvals were obtained in accordance with Bayer's
policies and procedures.

b.  Any sample unit that does not satisfy the criteria set forth above in
item B.3.a shall be considered an exception and shall be noted by the
IRO.  The IRO will consider a sample unit to have a Material Error if
either of the following is identified:

(a) The appropriate and required Control Documentation does
not exist and no corrective action has been taken prior to the IRO
review; or

(b) Information or data is omitted from key fields in the Control
Documentation that prevents the IRO's ability to understand the
nature of the expenditure and/or assess compliance with Bayer's
policies and procedures.

c.  Additional Review if Material Errors are Discovered

If the IRO finds Material Errors, it shall conduct an additional review of
the expenditures or activities reflected in the Control Documentation at
issue.  The IRO shall perform this additional review in a manner designed
to determine the root cause of the Material Errors.  For instance, the IRO
may need to review additional documentation and/or conduct interviews
with appropriate personnel to identify the root cause of the Material
Errors.

4.  Managed Care Transactions Review Report

The IRO shall annually prepare a report based upon each Managed Care
Transaction Review performed.  Each report shall include the following:

a.  Elements to Be Included:

(a) Managed Care Transaction Review Objectives:  A clear
statement of the objectives intended to be achieved by the
review;

Page 5

ATTACHMENT A TO ADDENDUM TO CIA
*BETWEEN OIG AND BAYER CORPORATION*

(b) Engagement Protocol: A detailed narrative description of the procedures performed and a description of each sampling unit utilized in performing the procedures; and

(c) Sources of Data: A full description of documentation (and/or other information) relied upon by the IRO when performing the Managed Care Transactions Review.

b.  Results to Be Included:

The following results shall be included in each Managed Care Transactions Review Report:

(a) For each sample unit, the IRO shall describe, in general terms, the terms of any associated contract(s) and the types of expenditures made in connection with the managed care customer during the Testing Period;

(b) for each sample unit, the IRO shall describe the procedures performed and state its findings and supporting rationale as to whether: a) appropriate and requisite Control Documentation exists in connection with each expenditure under review; and b) the Control Documentation was completed in accordance with the requirements set forth in Bayer's Policies and Procedures;

(c) for each sample unit reviewed, the IRO shall identify all material errors and exceptions discovered. For the exceptions, the IRO shall describe in general terms what the errors were. The IRO shall describe those situations when corrective action was taken prior to IRO review, including a description of the circumstances requiring corrective action and the nature of the corrective action; and

(d) if any Material Errors were discovered, the IRO shall describe the Material Error and the additional review procedures it performed, and shall state its findings as to the root cause of the Material Errors.

**Addendum to Corporate Integrity Agreement**
**Between Office of Inspector General and Bayer Corporation**

**Attachment B – Medicaid Drug Rebate Certification**

## CERTIFICATION

In accordance with Section III.I of the Addendum to the Corporate Integrity Agreement ("CIA") entered between Bayer Corporation and the OIG, the undersigned hereby certifies the following to the best of my knowledge, information and belief:

1) Bayer has in place policies and procedures describing in all material respects the methods for gathering, calculating, verifying and reporting the data and information reported to the Centers for Medicare and Medicaid Services ("CMS") and/or the State Medicaid programs in connection with the Medicaid Drug Rebate program ("Medicaid Rebate Policies and Procedures");

2) the Medicaid Rebate Policies and Procedures have been designed to ensure compliance with Bayer's obligations under the Medicaid Drug Rebate Program; and

3) Bayer's Medicaid Rebate Policies and Procedures were followed in all material respects in connection with the calculation of Best Price for Bayer's products for each of the following four quarters: [identify each specific quarter.]

_____
Jeffrey M. Greenman
Compliance Officer

_____
Date

Attachment B to Addendum to Bayer CIA

## ACKNOWLEDGMENT OF AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement and attached Civil Settlement Agreement on behalf of Bayer Corporation. The Board has read this Plea Agreement, the attached criminal Information, and the Civil Settlement Agreement in their entirety and has discussed them fully in consultation with Bayer's attorney. The Board acknowledges that these documents fully set forth Bayer's agreement with the United States. The Board further states that no additional promises or representations have been made to Bayer by any officials of the United States in connection with the disposition of this matter, other than those set forth in the Plea Agreement and the attached Civil Settlement Agreement.

Dated:  4/14/03

JON R. WYNE
Senior Vice President and Treasurer
Bayer Corporation

Dated:  4/11/03

L. SCOTT BASS, ESQUIRE
Sidley Austin Brown & Wood LLP

Dated:  4/11/03

PAUL E. KALB, ESQUIRE
Sidley Austin Brown & Wood LLP

Dated:  4/9/03

NATHAN C. SHEERS, ESQUIRE
Sidley Austin Brown & Wood LLP

8

AMENDMENT TO THE CORPORATE INTEGRITY AGREEMENT
BETWEEN THE
OFFICE OF INSPECTOR GENERAL OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND
BAYER CORPORATION

The Office of Inspector General (OIG) of the Department of Health and Human Services
and Bayer Corporation entered into a Corporate Integrity Agreement (CIA) on January
23 2001  An Addendum to the Bayer CIA was executed on April 15, 2003 (Addendum).
The affected businesses of what was referred to in the CIA as Bayer Corporation are now
known as Bayer Pharmaceuticals Corporation and the Biological Products Division of
Bayer HealthCare LLC (collectively, "Bayer").

A.      Pursuant to section XI.C. of Bayer's CIA, any modifications to the CIA must be
made with the prior written consent of both OIG and Bayer. The OIG and Bayer hereby
agree that Bayer's CIA will be amended as follows:

Section III D.2.a of the CIA is hereby replaced with the following new section
III.D.2.a.

For purposes of this CIA, "average sale price" will have the meaning of and
will be calculated in accordance with Average Sales Price as defined in the
Medicare Prescription Drug, Improvement, and Modernization Act of 2003,
including any refinement of that definition that may be made by the
Secretary of the Department of Health and Human Services, through the
issuance of regulations or written directives. Bayer shall report the average
sale price by National Drug Code ("NDC") for each Government
Reimbursed Product identified by Bayer's NDC.

Section III.D 2.b of the CIA is hereby replaced with the following new section
III.D.2.b:

In addition to any reporting required by the Medicare Prescription Drug,
Improvement, and Modernization Act of 2003, Bayer shall report, in
accordance with Section III.D.2.a above, the average sale prices of each of
its Government Reimbursed Products identified by Bayer's NDC to: 1) the
Medicaid programs of those States that have executed a state settlement
agreement with Bayer; 2) to First DataBank, Inc [3] solely for the purpose of

---

[3] If appropriate to reflect changes in the sources from which the State Medicaid programs
receive their pricing information, Bayer agrees that, upon the receipt of a written request

reporting pricing information based on those average sale prices to the
Medicaid Programs of those States that have executed a State settlement
agreement; 3) and to the OIG. The first report of average sale price under
this definition shall be made by October 31, 2004. With respect to the Qui
Tam Drugs, Bayer shall not report an Average Wholesale Price ("AWP") to
First DataBank, or any other reporting service, to be used for purposes of
setting Medicaid reimbursement prices for the Qui Tam Drugs and Bayer
shall expressly inform such reporting services to this effect. This restriction
shall not limit Bayer's ability to report AWP information for the Qui Tam
Drugs to any price reporting service for uses unrelated to Medicaid, or
Bayer's ability to report AWP information for any purposes for drugs or
biologic products other than the Qui Tam Drugs.

Section III.D.2.c of the CIA is hereby replaced with the following new section
III.D.2.c:

A high managerial agent of Bayer will certify that the average sale prices
reported are calculated in accordance with the requirements of the Medicare
Prescription Drug, Improvement, and Modernization Act of 2003, as they
may be refined by the Secretary of the Department of Health and Human
Services through the issuance of regulations or written directives. Said
certifications shall be made in the form attached hereto as Attachment A
and shall include an acknowledgement that the average sale prices reported
will be filed with and used in the administration of the Medicaid programs.

Attachment A to the CIA (Certification) is hereby replaced with the following new
Attachment A (Certification).

The undersigned, a high managerial agent of _____, hereby
certifies that the attached average sale price information has been
communicated to First DataBank and to the State Medicaid programs
indicated below and that it has been calculated in accordance with the
requirements of the Medicare Prescription Drug, Improvement, and
Modernization Act of 2003, as they may be refined by the Secretary of the
Department of Health and Human Services through regulations or written
directives. I further acknowledge that the average sale prices so reported

---

by any of the States, it will report the required information to a drug price reporting
source other than, and in addition to, First DataBank, subject to reasonable provisions
equivalent to those agreed to by First DataBank to ensure the confidentiality of that
information.

will be filed with and used in the administration of the _____ State Medicaid program(s).

B.      The OIG and Bayer agree that all other sections of Bayer's CIA and Addendum will remain unchanged and in effect, unless specifically amended upon the prior written consent of OIG and Bayer.

C.      The undersigned Bayer signatory represents and warrants that he is authorized to execute this Amendment.  The undersigned OIG signatory represents that he is signing the Amendment in his official capacity and that he is authorized to execute this Amendment.

D.      The effective date of this Amendment will be the date on which the final signatory of this Amendment signs the Amendment.

### ON BEHALF OF BAYER PHARMACEUTICALS CORPORATION

_____          _____
Paul R. Berry                                                    Date
Vice President, General Counsel and Secretary
Bayer Pharmaceuticals Corporation

July 12 2004

### ON BEHALF OF THE BIOLOGICAL PRODUCTS DIVISION OF BAYER HEALTHCARE LLC

_____          _____
Paul R. Berry                                                    Date
Vice President, General Counsel and Secretary
Bayer Pharmaceuticals Corporation

July 12, 2004

ON BEHALF OF THE OFFICE OF INSPECTOR GENERAL OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES


Larry J. Goldberg
Assistant Inspector General for Legal Affairs
Office of Inspector General
U.S. Department of Health and Human Services

30 July 2004

Date

4