Tab D-3

```
 1                UNITED STATES DISTRICT COURT

 2                  DISTRICT OF MASSACHUSETTS

 3                     NO. 01CV12257-PBS

 4  _____

 5  In re: PHARMACEUTICAL            )

 6  INDUSTRY AVERAGE WHOLESALE       )

 7  PRICE LITIGATION                 )

 8  _____)

 9  THIS DOCUMENT RELATES TO:        )  VOLUME II

10  STATE OF MONTANA V. ABBOTT       )

11  LABS, INC., ET AL., D. MONT.     )

12  CAUSE NO. CV-02-09-H-DWM         )

13          -and-                    )

14  STATE OF NEVADA V. AMERICAN      )

15  HOME PRODUCTS, ET AL., CA NO.    )

16  02-CV-12086                      )

17  _____)

18                    HIGHLY CONFIDENTIAL

19           CONTINUED VIDEOTAPED DEPOSITION OF

20                 RAYMOND S. HARTMAN, Ph.D.

21               WEDNESDAY, 23 AUGUST, 2006

22                       9:32 AM
```

1     CONTINUED VIDEOTAPED DEPOSITION

2  of RAYMOND S. HARTMAN, Ph.D., called as a witness

3  by and on behalf of the Defendants, pursuant to the

4  applicable provisions of the Federal Rules of Civil

5  Procedure, before P. Jodi Ohnemus, Notary Public,

6  Certified Shorthand Reporter, Certified Realtime

7  Reporter, and Registered Merit Reporter, within and

8  for the Commonwealth of Massachusetts, at the

9  offices of Ropes & Gray, LLP, One International

10  Place, Boston, Massachusetts, on Wednesday, 23

11  August, 2006, commencing at 9:32 a.m.

12

13

14

15

16

17

18

19

20

21

22

279

1      A P P E A R A N C E S :

2

3      HAGENS, BERMAN, SOBOL & SHAPIRO

4      BY:  Edward Notargiacomo, Esq.

5      One Main Street, 4th Floor

6      Cambridge, MA  02142

7      617 402-3700

8      Hagens-berman.com

9      Ed@hbsslaw.com

10     For the Plaintiffs

11

12     HOGAN & HARTSON, L.L.P.

13     BY:  Steven M. Edwards, Esq.

14     Hoa T.T. Hoang, Esq.

15     875 Third Avenue

16     New York, NY  10022

17     212 918-3000

18     Smedwards@hhlaw.com

19     Htthoang@hhlaw.com

20     For Defendant Bristol-Myers

21     Squibb

22

1     A P P E A R A N C E S :   (CONT'D)

2

3          JONES DAY

4          BY: Carol P. Geisler, Esq.

5          James R. Daly, Esq.

6          77 West Wacker

7          Chicago, IL  60601-1692

8          312 782-3939

9          Cgeisler@jonesday.com

10         Jrdaly@jonesday.com

11         For Abbott Labs and

12         T.A.P. Pharmaceuticals

13

14         DAVIS, POLK & WARDWELL

15         BY: James J. Duffy, Esq.

16         450 Lexington Avenue

17         New York, NY  10017

18         212 450-4000

19         James.duffy@dpw.com

20         For Defendant AstraZeneca

21         Pharmaceuticals Corp.

22

1    A P P E A R A N C E S :   (CONT'D)

2

3        SIDLEY AUSTIN, LLP

4        BY:  Richard D. Raskin, Esq.

5        One South Dearborn

6        Chicago, IL   60603

7        312 853-7000

8        Rraskin@sidley.com

9        For Bayer Corp.

10

11       ROPES & GRAY, L.L.P.

12       BY:  Steven A. Kaufman, Esq.

13       Kim Nemirow, Esq.

14       One International Place

15       Boston, MA   02110-2624

16       617 951-7000

17       Steven.kaufman@ropesgray.com

18       For Defendant Shering Corporation/

19       Shering Plough and Warrick

20       Pharmaceuticals

21

22

```
 1        A P P E A R A N C E S :   (CONT'D)

 2

 3             SHOOK, HARDY & BACON, L.L.P.

 4             BY:  Joseph G. Matye, Esq.

 5             2555 Grand Boulevard

 6             Kansas City, MO  64108-2613

 7             816 474-6550

 8             For Defendant Aventis Pharmaceuticals

 9

10             MORGAN, LEWIS & BOCKIUS, L L P

11             BY:  J. Clayton Everett, Jr., Esq.

12             1111 Pennsylvania Avenue, N.W.

13             Washington, DC  20004

14             202 739-3000

15             Jeverett@morganlewis.com

16             For Pharmacia Corporation

17

18

19

20

21

22
```

A P P E A R A N C E S :  (CONT'D)

(Via Internet)

PERKINS COIE LLP

BY: Kathleen M. O'Sullivan, Esq.

1201 Third Avenue

Seattle, WA 98101-3099

206 359-8000

For Immunex Corporation



(Via telephone)

SONNENSCHEIN, NATH, ROSENTHAL, LLP

BY:  Geoffrey Repo, Esq.

7800 Sears Tower

233 S. Wacker Drive

Chicago, IL   60606-6409

312 876-8000

Grepo@sonnenschein.com

For Teva Pharmaceuticals

1    A P P E A R A N C E S :  (CONT'D)

2

3            KELLEY, DRYE & WARREN, LLP

4            BY:  Christopher C. Palermo, Esq.

5            101 Park Avenue

6            New York, NY  10178

7            212 808-7800

8            Cpalermo@kelleydrye.com

9            For Dey Pharmaceuticals

10

11   ALSO PRESENT:

12           Nauman Ilias, Ph.D.

13           The Brattle Group

14           44 Brattle Street

15           Cambridge, MA  02138-3736

16           617 864-7900

17

18

19

20

21

22

1  ALSO PRESENT: (CONTINUED)

2

3              Andrew B. Tepperman, Ph.D.

4              CRA International

5              John Hancock Tower

6              200 Clarendon Street, T-33

7              Boston, MA   02116-5092

8              617 425-3000

9

10             Christopher R. Stromberg, Ph.D.

11             Bates White

12             1300 Eye Street NW

13             Suite 600

14             Washington, DC   20005

15             202 408-6110

16

17             Dom Dalcielo, Videographer

18

19

20

21

22

286

1                    I N D E X

2

3  TESTIMONY OF:                                         PAGE

4

5  RAYMOND S. HARTMAN, Ph D............................ 288

6

7  (Cont'd by Mr Edwards) ............................. 288

8  (By Mr Daly) ....................................... 415

9  (By Mr Raskin) ..................................... 493

10 (By Mr Palermo) .................................... 528

11 (By Mr Duffy) ...................................... 555

12

13

14                  E X H I B I T S

15

16 EXHIBIT              DESCRIPTION                     PAGE

17 Exhibit Hartman 031 Attachment D, 9/3/04............ 298

18 Exhibit Hartman 032 Montana Penalty Claims.......... 328

19 Exhibit Hartman 033 Deposition Transcript........... 336

20 Exhibit Hartman 034 Sections 37.86.1101, 1105....... 340

21 Exhibit Hartman 035 Montana Regulation, 9/2000...... 346

22 Exhibit Hartman 036 OIG Report, 9/2004.............. 351

1       E X H I B I T S (CONTINUED)

2   EXHIBIT              DESCRIPTION                    PAGE

3   Exhibit Hartman 037 One-Page Calculation......... 362

4   Exhibit Hartman 038 Excerpts From Data Set....... 377

5   Exhibit Hartman 039 AWP Montana Claims

6                       Overcharges................. 391

7   Exhibit Hartman 040 Sample Records Tables 3, 4... 395

8   Exhibit Hartman 041 Bates NV 20831-36............ 543

9   Exhibit Hartman 042 Bates NV 20823............... 544

10

11

12

13

14

15

16

17

18

19

20

21

22

501

1  Q.  And you spoke about a lack of price
2  transparency as creating the concerns about fraud
3  that we're dealing with here, is that right?
4  A.  That's correct.
5  Q.  And I believe you also testified, too,
6  that your but-for world would perhaps look a lot
7  like what Medicare has done with the mandatory
8  reporting of ASPs, allowing for greater price
9  transparency, is that right?
10  A.  Well, what I've said was that I see the
11  OIG requesting that sufficient information be
12  released by the manufacturers so that there -- a
13  knowledge and ability to understand what ASP is
14  would be available to them in their reimbursement
15  decisions, which is what I see Medicare has
16  struggled mightily with for 15 years to get to, and
17  they finally have.
18      So in that sense, I've related the two.
19  Q.  I want to ask you to assume that a
20  manufacturer is reporting ASPs to a state, and that
21  it has been over time.  Would such reports, in your
22  view, alleviate the concerns about price

502

1  transparency that you've referred to?

2      A.   It would certainly provide the information

3  for the Medicaid agencies to make an informed

4  decision about the -- the lesser of the -- of a

5  variety of the alternative bases for reimbursement.

6      Q.   Well -- and, in fact, it would provide the

7  state with an average of actual sales prices from

8  the manufacturer, would it not?

9      A    To -- as a -- as a measure of the cost to

10 their -- to the providers, that's right.

11     Q.   This is, in fact, your but-for world,

12 isn't it?

13     A    The -- the but-for world -- what -- what I

14 have done in the overcharge analysis is pose a

15 but-for world that is -- that relied -- that takes

16 account of the ASPs.  In the fraudulent claims

17 analysis, there's not really a but-for world.  It's

18 just looking at the world as it is and what the

19 claimed amount was versus a -- a measure of what

20 the acquisition cost was.  It's not a but-for world

21 in the same way that it would be in a traditional

22 type of legal analysis or a counter-fact analysis

503

1  absent the violations. But the -- the ASP in the

2  overcharge analysis is the but-for world for the

3  drugs for which I was able to get ASPs.

4     Q.  In the situation that I have hypothesized

5  to you where a manufacturer is reporting its ASPs

6  routinely to a state, do you think it is still

7  reasonable to assume that fraud occurs and

8  statutory penalties are applied where the allowed

9  amount is greater than, say, AWP minus some

10 percentage?

11        MR. NOTARGIACOMO:  Objection.

12    A.  It's -- you're asking me a legal question

13 that is -- is a good one, but it's a legal one, and

14 so I -- I mean, my expertise has not gone to that

15 kind of calculation here or that kind of analysis

16 here and I haven't been asked to.

17    Q.  Well, you testified yesterday that you

18 made certain assumptions, and that, in particular,

19 you -- you adopted a trigger point, if you will,

20 where the allowed amount was greater than the

21 EAC -- penalties were to kick in. And you

22 testified further that you felt that that was a

506

1  the like. And for purposes of my hypothetical, I

2  -- I want you to assume that the ASPs that are

3  being reported are ASPs, as we've been using that

4  term, as Medicare uses that term, as you've been

5  using that term in your report, and then, in fact,

6  they are averages of real transactions with -- with

7  -- net of discounts and price concessions.

8       A    Everything that the OIG is asking for.

9       Q    Exactly.

10           MR. NOTARGIACOMO: Same objection.

11      A    The -- certainly the hypothetical that

12 you've given me says that if -- in that -- such a

13 world such a manufacturer would have -- would have

14 complied with the OIG guidelines, and, you know,

15 that's about as far, you know, as I can --

16           (Discussion off the record.)

17      A    So, you know I -- the -- that has -- the

18 -- the argument that there -- where the conjunction

19 of marketing on spread with a nontransparency of

20 pricing that the OIG is getting at in their -- in

21 their guidelines and they're worried about is

22 clearly that by supplying that information, that's

507

1  certainly gone to solving that aspect of what the
2  OIG is getting at. And as an economist, that would
3  provide the information, if communicated, to make
4  informed decisions.
5         Whether -- what that means about fraud and
6  nonfraud, that's now stepping -- you know, I -- the
7  -- I don't -- I'm not an expert of what's fraud and
8  nonfraud or whatever. And I'm just talking about
9  what information is there, what's reasonable, and
10 what informs people, and you've -- you've described
11 a market to me where all the information in the OIG
12 report that they're requesting is provided, and in
13 -- that's what has been requested, and that,
14 obviously, would mitigate the nontransparency.
15         Now, beyond that, you know, I -- I'd hate
16 to -- I feel like I'm being drawn into a legal
17 conclusion.
18         MR. NOTARGIACOMO: Just before you go --
19 continue with this, counsel for TAP and Abbott who
20 just finished questioning wanted me to get on the
21 record that Plaintiffs don't have any direct --
22 redirect of the witness based on his questions. I

```
 1  believe he wants to catch a plane.

 2          MR. DALY:  Thank you.

 3          MR. NOTARGIACOMO:  You can continue.

 4     Q.   Very good.  So you would allow then that

 5  the reporting of ASPs would cure any concern about

 6  price transparency?

 7     A.   It is certainly -- it is certainly what

 8  the OIG has asked for, and it would make -- a full

 9  understanding of those prices would make the

10  pricing transparent to the market if it were

11  provided to the market.

12     Q.   Now, looking at your reports in which you

13  calculate overcharges for some Defendant

14  manufacturers and penalties for, I believe, all

15  Defendant manufacturers --

16     A.   Are we in Montana now or in Nevada?

17     Q.   Well, for present purposes we're in both.

18     A.   Okay.

19     Q.   But let's take a look at Montana.  If you

20  were to learn that one of the manufacturers for

21  whom you calculated damages or penalties had, in

22  fact, been reporting ASPs to the State of Montana
```