# Tab E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: **PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*State of Montana v. Abbott Labs., Inc., et al.,*<br> CA No. 02-CV-12084-PBS | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Judge Patti B. Saris |

**DECLARATION OF MICHAEL DOSS IN SUPPORT OF BAYER CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

I, Michael Doss, hereby declare and state as follows:

1. I am an attorney admitted to practice in the State of Illinois and am a partner with the law firm of Sidley Austin LLP. I have been admitted pro hac vice to practice before this Court in the above-captioned action as one of the counsel for defendant Bayer Corporation ("Bayer"). I submit this declaration in connection with Bayer's Motion for Summary Judgment. I have knowledge of the facts stated below based on my personal knowledge and my review of discovery materials in this proceeding.

2. Attached hereto as Exhibit 1 is a true and correct copy of Plaintiff's Objections and Responses to Defendant Bayer Corp.'s First Set of Requests for Admission and Second Set of Interrogatories to the State of Montana, dated March 31, 2006.

3. Attached hereto as Exhibit 2 is a true and correct copy of Plaintiff's Objections and Responses to Defendant Bayer Corp.'s First Set of Interrogatories and Requests for Production to the State of Montana, dated March 2, 2006.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the following government report:   Office of Inspector General, U.S. Department of Health and Human Services, "Medicaid Rebates for Physician-Administered Drugs," (April 2004).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on February 8, 2007 at Chicago, Illinois.


_____/s/ Michael Doss_____
Michael Doss

Tab E-1



Mar 31 2006
4:41PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Montana v. Abbott Labs., Inc., et al.,*<br>Cause No. CV-02-09-H-DWM (D. Mont.) |  |

### OBJECTIONS AND RESPONSES TO DEFENDANT BAYER CORP.'S FIRST SET OF REQUESTS FOR ADMISSION AND SECOND SET OF INTERROGATORIES TO THE STATE OF MONTANA

Pursuant to the Federal Rules of Civil Procedure, the State of Montana submits these Objections and Responses to Defendant Bayer Corp.'s First Set of Requests for Admission and Second Set of Interrogatories to the State of Montana.

### PRELIMINARY STATEMENT

The State of Montana incorporates as if fully set forth herein the preliminary statement set forth in the Objections and Responses to Defendant Bayer Corp.'s First Set of Interrogatories and Requests for Production to the State of Montana.

### GENERAL OBJECTIONS

The State of Montana incorporates as if fully set forth herein its general objections included in the Objections and Responses to Defendant Bayer Corp.'s First Set of Interrogatories and Requests for Production to the State of Montana.

-1-

## REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1:

Plaintiffs State of Montana **does not contend** that Bayer has failed to comply with any of

Bayer's obligations under the Bayer 2001 Settlement Agreement.

ANSWER:

The State of Montana objects to this Request on the ground that it calls for a legal conclusion involving a settlement agreement ***unrelated to this lawsuit*** and subsequent conduct by Bayer. Without waiving this objection, the State of Montana states that it has conducted a reasonable inquiry and currently has insufficient information upon which to admit or deny this Request.

REQUEST FOR ADMISSION NO. 2:

Plaintiff State of Montana **does not contend** that Bayer has failed to comply with any of

Bayer's obligations under the Bayer 2003 Settlement Agreement.

ANSWER:

The State of Montana objects to this Request on the ground that it calls for a legal conclusion involving a settlement agreement ***unrelated to this lawsuit*** and subsequent conduct by Bayer. Without waiving this objection, the State of Montana states that it has conducted a reasonable inquiry and currently has insufficient information upon which to admit or deny this Request.

REQUEST FOR ADMISSION NO. 3:

Plaintiff State of Montana has received Bayer ASP Information for **all** Bayer prescription

medicines since the Bayer 2001 Settlement Agreement as required by the Bayer 2001 Settlement

Agreement.

ANSWER:

The State of Montana has conducted a reasonable inquiry and currently has insufficient information upon which to admit or deny this Request.

001534-15 99921 V1

REQUEST FOR ADMISSION NO. 4:

Following the District Court's ruling dismissing certain of Plaintiff State of Montana's claims against Bayer based on the 2001 and 2003 Settlement Agreements, the State's only remaining claims for damages against Bayer relate to only two of the Subject Drugs, Mithracin and DTIC-Dome.

ANSWER:

The State of Montana admits that the Memorandum and Order dated June 10, 2004 dismissed "all fraud claims concerning drugs covered by the 2001 and 2003 Settlement between Montana and Bayer, even those claims brought in a *parens patriae* capacity."

REQUEST FOR ADMISSION NO. 5:

You have **no record** of having made **any payments** under your Medicaid program to any Beneficiary or Provider during the Relevant Time Period for Mithracin, including Mithracin INJ 2500MCG.

ANSWER:

Admit.

REQUEST FOR ADMISSION NO. 6:

You made **no payments** under your Medicaid program to any Beneficiary or Provider during the Relevant Time Period for Mithracin, including Mithracin INJ 2500MCG.

ANSWER:

Admit.

-3-

REQUEST FOR ADMISSION NO. 7:

Your **total payments** under your Medicaid program to any Beneficiary or Provider

during the Relevant Time Period for DTIC-Dome, including DTIC-Dome INJ 200MG, were

under $1000.

ANSWER:

Deny.  Medicaid program records indicate that total payments under the Medicaid
program during the Relevant Time Period for DTIC -Dome, including DTIC-Dome INJ 200MG,
exceeded $145,000.

## INTERROGATORIES

INTERROGATORY NO. 1:

If You deny any Request for Admission, listed above, including any part thereof, describe

the factual basis for the denial.

ANSWER:

See above.

By /s/ Steve W. Berman ___                              DATED:       March 31, 2006.
    Steve W. Berman
    Sean R. Matt
    Jeniphr A. Breckenridge
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Thomas M. Sobol
    HAGENS BERMAN SOBOL SHAPIRO LLP
    One Main Street, 4th Floor
    Cambridge, MA  02142
    Telephone:  (617) 482-3700

Facsimile:  (617) 482-3003

COUNSEL FOR PLAINTIFFS STATE OF MONTANA

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

ADDITIONAL COUNSEL FOR PLAINTIFF
STATE OF MONTANA

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **OBJECTIONS AND RESPONSES TO DEFENDANT BAYER CORP.'S FIRST SET OF REQUESTS FOR ADMISSION AND SECOND SET OF INTERROGATORIES TO THE STATE OF MONTANA** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on March 31, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By     /s/ Steve W. Berman
    Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292

001534-15 99921 V1

# Tab E-2



Mar 2 2006
8:10PM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION,

THIS DOCUMENT RELATES TO:

*State of Montana v. Abbott Labs., Inc., et al.,*
Cause No. CV-02-09-H-DWM (D. Mont.)

MDL No. 1456

CIVIL ACTION:  01-CV-12257-PBS

Judge Patti B. Saris

## OBJECTIONS AND RESPONSES TO DEFENDANT BAYER CORP.'S
## FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION
## TO THE STATE OF MONTANA

Pursuant to the Federal Rules of Civil Procedure, Plaintiff, the State of Montana, submits

these objections and responses to Defendant Bayer's First Set of Interrogatories and Requests for

Production to the State of Montana.

## PRELIMINARY STATEMENT

1.      These responses and objections are made solely for the purposes of this action.

Each response is subject to all objections as to competence, relevance, materiality, propriety, and

admissibility, and to any and all other objections on any grounds that would require the exclusion

of any statements contained herein if such document requests were asked of, or statements

contained herein were made by, a witness present and testifying in court, all of which objections

and grounds are expressly reserved and may be interposed at the time of trial.  Any response to

an interrogatory shall not be deemed a waiver of any general or specific objection.

2.      Montana's responses shall not be deemed to constitute admissions:

      a.      that any particular document or thing exists, is relevant, non-privileged, or

           admissible in evidence; or

-1-

      b.    that any statement or characterization in Defendants' First Set of Interrogatories is accurate or complete.

3.    Montana's responses are made based upon reasonable and diligent investigation conducted to date.  Discovery and investigation in this matter are ongoing and Montana reserves the right to amend its responses and to raise any additional objections it may have in the future. These responses are made based upon the typical or usual interpretation of words contained in the discovery requests unless a specific definition or instruction has been provided.

4.    Montana's responses may contain information subject to the stipulated Protective Order in this matter and must be treated accordingly.

5.    Montana's responses are submitted without prejudice to Montana's right to produce evidence of any subsequently discovered facts.  Montana reserves its right to provide further responses and answers as additional facts are ascertained.

## GENERAL OBJECTIONS

Montana objects generally as follows:

1.    Montana objects to the "definitions" and to the "general instructions" to the extent they intend to expand upon or alter the Federal Rules of Civil Procedure or Montana's obligations under the Court's Local Rules in responding to these requests and interrogatories. Montana will comply with the Federal Rules of Civil Procedure and Local Rules in providing its responses to Defendant Bayer's First Set of Interrogatories and Requests for Production to the State of Montana.

2.    Montana objects to Defendants' definitions of "you," "your," "state," and "Plaintiff" because they are vague, ambiguous, overly broad, unduly burdensome, and encompass materials that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3.      Montana objects to general Instruction Nos. 5-10 and their various subsections because they are unduly burdensome, and impose burdens beyond the requirements of applicable rules of procedure.

4.      Montana objects to each interrogatory or request for production to the extent that it calls for the production of documents or information not relevant to the issues in this action or is not reasonably calculated to lead to the discovery of admissible evidence.

5.      Montana objects to the extent that any interrogatory or request for production seeks documents or information that is protected from disclosure by the work product doctrine, the attorney-client, accountant-client, consulting expert, or investigative privileges, or by any other applicable privilege or protection.  Montana agrees to prepare and provide Defendants with a listing or log of any documents withheld on the grounds of privilege, if applicable.

6.      Montana objects to each interrogatory or request for production to the extent that it calls for production of documents or information not within the possession, custody, or control of Montana.  The responses given herein are based upon documents and information within Montana's current possession, custody, or control.

7.      Montana objects to each interrogatory or request for production to the extent that it may be construed as calling for the production of confidential information relating to a patient. Montana will not produce any such material to the extent it is under any obligation to maintain the patient information as confidential and not to disclose it unless the patient grants permission to do so.

8.      Montana objects to each interrogatory or request for production to the extent that it seeks disclosure of information that is a matter of public record, is equally available to the Defendants, or is already in the possession of the Defendants.

9.      Montana incorporates the above General Objections into each specific response to the requests set forth below as if set forth in full therein.  The response to a request shall not operate as a waiver of any applicable specific or general objection to a request.

-3-

10.     Montana objects to the time period to the extent it goes beyond the time frame for which Defendants have agreed to produce information.

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

All Documents referred to or used in responding to the interrogatories posted below.

RESPONSE:

Without waiving any objections, Montana will produce any non-privileged documents.

REQUEST FOR PRODUCTION NO. 2:

All Documents related to the Bayer 2001 Settlement, including internal correspondence and memoranda that reference, discuss, or evaluate the Bayer 2001 Settlement or any investigation or inquiry that preceded it.

RESPONSE:

Montana objects to this request to the extent it seeks information protected by the attorney client privilege or information protected by the work product doctrine.  Montana further objects to this request to the extent that it seeks information otherwise within the possession of Defendant Bayer as a party to the Bayer 2001 Settlement.  Without waiving any objection, Montana states that it has searched and has been unable to locate any responsive documents.

REQUEST FOR PRODUCTION NO. 3:

All Documents related to the Bayer 2003 Settlement, including internal correspondence and memoranda that reference, discuss, or evaluate the Bayer 2003 Settlement or any investigation or inquiry that preceded it.

RESPONSE:

See response to Request for Production No. 2.

REQUEST FOR PRODUCTION NO. 4:

All Documents related to Bayer ASP Information, including Documents discussing, referencing, evaluating, or reporting Bayer ASP Information.

-4-

RESPONSE:

Montana objects to this request to the extent that it seeks information otherwise within the possession of Defendant Bayer without waiving any objection, Montana states that it has searched and the only responsive information it located is ASP data provided by Defendant Bayer to the State.

REQUEST FOR PRODUCTION NO. 5:

All Documents related to communications with the National Association of Medicaid

Fraud Control Units ("NAMFCU") concerning the Bayer 2001 Settlement or concerning the

Bayer 2003 Settlement (or any investigation or inquiry that preceded those Settlements),

including internal analysis, memoranda, reports, and reviews related to communications with

NAMFCU, any member of NAMFCU, or any representative of any State.

RESPONSE:

Montana objects to this request to the extent it seeks information protected by the attorney client privilege or information protected by the work product doctrine. Montana further objects to this request to the extent that it seeks information otherwise within the possession of Defendant Bayer as a party to the Bayer 2001 and 2003 Settlements. Without waiving any objection, Montana states that it has searched and has been unable to locate any responsive documents.

**INTERROGATORIES**

INTERROGATORY NO. 1:

Describe what use has been made by You of Bayer ASP Information, including how or if

such Bayer ASP Information has been used, relied upon, referenced, or considered in evaluating,

revising, or settling payments to Providers under Your Medicaid Program.

ANSWER:

The State of Montana receives Bayer ASP Information. The Bayer ASP Information is not used as a benchmark in evaluating, revising or settling payments to Providers under the Montana Medicaid program. The pricing logarithm for Montana Medicaid is delivered through First Data Bank. Incorporating the Bayer ASP information into the logarithm would require a manual process. Because Montana Medicaid is a relatively small program with limited resources, it is not able to incorporate the Bayer ASP Information into its system.

-5-

INTERROGATORY NO. 2:

State the basis for any claim in the Amended Complaint that You purport to pursue

against Bayer for any time period after Bayer began reporting ASP Information to Your

Medicaid Program pursuant to the Bayer 2001 Settlement.

ANSWER:

Montana makes no such claim.


By /s/ Steve W. Berman          DATED:      March 2, 2006.
  Steve W. Berman
  Sean R. Matt
  HAGENS BERMAN LLP
  1301 Fifth Avenue, Suite 2900
  Seattle, WA  98101
  Telephone: (206) 623-7292
  Facsimile: (206) 623-0594

  Thomas M. Sobol
  HAGENS BERMAN LLP
  One Main Street, 4th Floor
  Cambridge, MA  02142
  Telephone:  (617) 482-3700
  Facsimile:  (617) 482-3003

COUNSEL FOR PLAINTIFFS STATE OF MONTANA

Mike McGrath
Attorney General of Montana
Kathy Seeley
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

-6-

Joseph P. Mazurek
CROWLEY, HAUGHEY, HANSON,
 TOOLE & DIETRICH PLLP
100 North Park Avenue, Suite 300
P.O. Box 797
Helena, MT  59601-6263
(406) 449-4165

ADDITIONAL COUNSEL FOR PLAINTIFF
STATE OF MONTANA

001534-15  93134 V1

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **OBJECTIONS AND RESPONSES TO DEFENDANT BAYER CORP'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO THE STATE OF MONTANA** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on March 2, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By___/s/ Steve W. Berman_____
   Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292

001534-15 93134 V1

Tab E-3

Department of Health and Human Services

## OFFICE OF
## INSPECTOR GENERAL

# MEDICAID REBATES FOR
# PHYSICIAN-ADMINISTERED
# DRUGS

MT 031970



Inspector General
April 2004
OEI-03-02-00660

# Office of Inspector General
### http://oig.hhs.gov

The mission of the Office of Inspector General (OIG), as mandated by Public Law 95-452, as amended, is to protect the integrity of the Department of Health and Human Services (HHS) programs, as well as the health and welfare of beneficiaries served by those programs. This statutory mission is carried out through a nationwide network of audits, investigations, and inspections conducted by the following operating components:

## Office of Audit Services

The OIG's Office of Audit Services (OAS) provides all auditing services for HHS, either by conducting audits with its own audit resources or by overseeing audit work done by others. Audits examine the performance of HHS programs and/or its grantees and contractors in carrying out their respective responsibilities and are intended to provide independent assessments of HHS programs and operations in order to reduce waste, abuse, and mismanagement and to promote economy and efficiency throughout the department.

## Office of Evaluation and Inspections

The OIG's Office of Evaluation and Inspections (OEI) conducts short-term management and program evaluations (called inspections) that focus on issues of concern to the department, the Congress, and the public. The findings and recommendations contained in the inspections reports generate rapid, accurate, and up-to-date information on the efficiency, vulnerability, and effectiveness of departmental programs.

## Office of Investigations

The OIG's Office of Investigations (OI) conducts criminal, civil, and administrative investigations of allegations of wrongdoing in HHS programs or to HHS beneficiaries and of unjust enrichment by providers. The investigative efforts of OI lead to criminal convictions, administrative sanctions, or civil monetary penalties. The OI also oversees State Medicaid fraud control units, which investigate and prosecute fraud and patient abuse in the Medicaid program.

## Office of Counsel to the Inspector General

The Office of Counsel to the Inspector General (OCIG) provides general legal services to OIG, rendering advice and opinions on HHS programs and operations and providing all legal support in OIG's internal operations. The OCIG imposes program exclusions and civil monetary penalties on health care providers and litigates those actions within the department. The OCIG also represents OIG in the global settlement of cases arising under the Civil False Claims Act, develops and monitors corporate integrity agreements, develops model compliance plans, renders advisory opinions on OIG sanctions to the health care community, and issues fraud alerts and other industry guidance.

## ‡ A B S T R A C T

Under the Medicaid Drug Rebate Program, manufacturers are required to provide rebates on drugs paid for by a State. To receive rebates, States must identify the drugs by their national drug code. Most States, however, use procedure codes to identify physician-administered drugs. The States that match procedure codes to national drug codes do collect rebates on these drugs. We found that in 2001, Medicaid could have saved millions of additional rebate dollars if every State had collected rebates for all single-source physician-administered drugs and 40 multiple-source physician-administered drugs. As of March 2003, 24 States did not collect rebates on any physician-administered drugs. Our study indicates a State's savings in a single year could exceed the one-time cost of implementing system changes needed to collect rebates for these drugs. We recommend that the Centers for Medicare & Medicaid Services (CMS) continue to encourage all States to collect rebates on physician-administered drugs, especially single-source drugs. As part of this effort, CMS should encourage cooperation and the sharing of information between States that collect rebates for these drugs, and States that do not, in order to facilitate rebate collection. CMS concurred with our recommendation and is currently facilitating information sharing.

MT 031972

‡ E X E C U T I V E   S U M M A R Y

## OBJECTIVES

(1) To determine whether all State Medicaid agencies collect drug manufacturer rebates for all physician-administered drugs.

(2) To estimate the potential savings that would result if all State Medicaid agencies collected drug manufacturer rebates for physician-administered drugs.

## BACKGROUND

The Medicaid program, established under Title XIX of the Social Security Act, is administered by States and financed with State and Federal funds. Medicaid pays for medical and health-related assistance for certain vulnerable and needy individuals and families. All 50 States and the District of Columbia provide coverage for prescription drugs under the Medicaid program.

The Medicaid Drug Rebate Program was established in 1990 to reduce State and Federal Medicaid expenditures for prescription drugs. Under the rebate program, manufacturers are required to provide a rebate on drugs paid for by a State. Physician-administered drugs (drugs that a medical professional administers to a patient in a physician's office) are covered under this program. In order to collect the rebates, States must identify the drugs by their national drug codes and provide units-paid data to the drug company. Unlike self-administered drugs, which are typically billed to the State with national drug codes, physician-administered drugs are more often billed with procedure codes. States that use procedure codes to bill physician-administered drugs need a crosswalk to national drug codes in order to collect rebates on these drugs. A crosswalk is the identification of national drug codes for drugs represented by procedure codes.

We asked Medicaid directors from 48 States and the District of Columbia about their coding and rebate policies concerning physician-administered drugs. We also requested financial data, such as total payments and units paid for physician-administered drugs in calendar year 2001. Arizona and Tennessee did not participate in the rebate program that year. We estimated potential savings on all the single-source and 40

MT 031973

multiple-source, physician-administered drugs for which States made payments but did not receive rebates in 2001.

## FINDINGS

**In 2001, 17 States collected rebates for physician-administered drugs, and 31 States did not.** Of the 17 States that collected drug manufacturer rebates for physician-administered drugs in 2001, ~~3 collected rebates on all physician-administered drugs. These three States use national drug codes for billing.~~ The remaining 14 States use procedure codes. These 14 States crosswalk procedure codes to national drugs codes for single-source drugs and collect rebates on these drugs only. Thirty-one States did not collect rebates on any physician-administered drugs in 2001, and 1 additional State did not respond to our question about rebate collection.

**Medicaid could have saved millions of additional rebate dollars on physician-administered drugs in 2001.** If all States had collected rebates for all single-source and 40 multiple-source, physician-administered drugs, Medicaid could have added $37 million to its rebate savings for 2001. The majority of additional savings ($30 million) would have been on rebates for single-source drugs alone, and the remainder ($7 million) would have been on 40 multiple-source drugs.

**After 2001, 7 of 31 States that had not collected rebates on physician-administered drugs began to do so.** Of the 7 States that began collecting rebates after 2001, 6 States collect rebates on single-source, physician-administered drugs, and 1 State collects rebates on all physician-administered drugs billed by a targeted group of providers. (We estimated that the 2001 potential savings for these seven States was $14 million on all single-source and 40 multiple-source physician administered drugs.) As of March 2003, 24 States still did not collect rebates on any physician-administered drugs. These 24 States spent a total of $125 million on physician-administered drugs. Five of these 24 States said they have no plans to collect rebates for physician-administered drugs. While 19 of these 24 States said they plan to collect rebates for these drugs, 13 of the 19 States did not have specific plans to collect rebates.

**MT 031974**