## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL PLAINTIFFS UNITED STATES AND RELATOR TO PROVIDE ADEQUATE RESPONSES TO ABBOTT'S DISCOVERY REQUESTS

The Government unsealed the Complaint in this case more than a year ago, having postponed bringing suit against Abbott for more than a decade.  Now with only eight months remaining until the conclusion of fact discovery, Plaintiffs continue to delay and provide excuses in responding to discovery requests that are aimed at understanding their allegations.  The time for such obfuscation is long past.  Depositions have begun in earnest, and Abbott is entitled to immediate responses to its inquiries in order to develop defenses before summary judgment and trial.  Defending against Plaintiffs' allegations will require Abbott to take the depositions of numerous witnesses in the coming months, including federal and state government employees, financial intermediaries, and third parties such as providers and wholesalers.  Plaintiffs can no longer be permitted to conceal key evidence that purportedly justifies their claims.

Abbott served its First Request for Production of Documents on July 12, 2006, and its First Set of Interrogatories on August 4, 2006.  Nearly nine months later the Government's responses have been largely inadequate, and numerous requests remain outstanding, despite Abbott's good faith efforts to prioritize its requests and ease the Government's burden in responding.  *See* Torborg Ltr. of 12/13/06 (Exhibit 2); Torborg Ltr. of 3/29/07 (Exhibit 3).

Nevertheless, even though Abbott has been frustrated by the pace at which the Government has metered out its responses to Abbott's discovery requests, Abbott is moving for relief only in instances where the Government's failure to respond goes beyond needing more time, and where it appears that there is no possibility of reaching agreement between the parties.  With respect to other disputes, Abbott has postponed seeking judicial relief while the parties continue to negotiate.  Abbott has conferred at length with Plaintiffs' attorneys in an unsuccessful effort to resolve these particular disputes.

Abbott now asks that the Court compel Plaintiffs to fulfill their discovery responsibilities in four key areas:

*False Claims*.  Plaintiffs have sued Abbott under the False Claims Act.  Not unreasonably, Abbott has demanded that Plaintiffs produce copies of the "false claims" on which Plaintiffs rely.  Abbott also has requested any evidence establishing the alleged falsity of those claims, evidence of "false prices" submitted by Abbott, and all evidence that Abbott "marketed the spread" to its customers.  In contravention of case law and common sense, Plaintiffs have refused to identify a single specific false claim or price submitted by Abbott to the Government and have balked at providing a comprehensive description of the evidence they claim to have.

*Investigative Materials*.  After almost eleven years, Abbott deserves access to the materials related to and gathered during the Government's investigation of Ven-A-Care's *qui tam* complaint.  No privileges protect this information, it is relevant to Abbott's government knowledge defense, and Plaintiffs have no legal authority to withhold it.

*Ven-A-Care's Disclosure Statement*.  Now that this case has been unsealed for more than a year, there is likewise no legitimate reason for Ven-A-Care's eleven-year old disclosure statement to remain in the exclusive custody of Plaintiffs.  This statement contains facts, not

legal advice, and Ven-A-Care's disclosure to the Government waived any claim of privilege in any event.

*Preparers and Recipients of Government Drug Pricing Studies*.  Plaintiffs have refused to identify the individuals who were involved in, or received copies of, relevant Government drug pricing studies.  Beginning in the 1980s, many such studies documented the large differences between providers' acquisition costs and AWP.  Abbott has good reason to believe that numerous individuals at HCFA (now CMS) were aware of these studies before and during the relevant timeframe of this litigation.  Receipt of such reports or participation in the underlying studies constitutes powerful evidence supporting Abbott's contention that government policy-makers deliberately chose to reimburse drugs at AWP knowing that providers obtained drugs at prices significantly below AWP.  Accordingly, Abbott is entitled to know exactly which Government employees prepared the studies and which HCFA/CMS employees were made aware of them.

In this memorandum of law, Abbott explains why it is entitled to receive the information and documents it has requested on each of these topics.  In addition, to assist the Court in addressing specific interrogatories, Abbott has attached as Exhibit 1 a summary of the requests at issue, describing briefly the Plaintiffs' responses and Abbott's claim for relief.

## I.    PLAINTIFFS MUST IDENTIFY SPECIFIC ALLEGATIONS OF "FALSE CLAIMS" AND PRICES AND PRODUCE COPIES OF THE "FALSE CLAIMS" ON WHICH IT SUES

Plaintiffs have shirked their responsibility to respond to Abbott's contention interrogatories inquiring about elements of their False Claims Act claims.  Without a precise understanding of these allegations, Abbott cannot probe the Government's claims and develop its own defenses.

## A.     Abbott's Requests and Plaintiffs' Responses

In a series of related interrogatories, Abbott has tried to discern the nature and extent of

the accusations leveled by Plaintiffs.  Specifically, Abbott asked the Government to:

- Identify all allegedly false or fraudulent statements made by Abbott that gave rise to the
  Complaint, along with an explanation of why the statement or action was false or
  fraudulent (Interrog. No. 1).  *See* Abbott's First Set of Interrogatories Directed to Plaintiff
  United States of America and Relator Ven-A-Care of the Florida Keys, at 12 (Aug. 4,
  2006) ("Abbott's First Interrogs.") (Exhibit 4).

- Identify the specific false prices that the Government claims Abbott reported, as well as
  the specific prices Abbott should have reported, and on what basis it should have done so
  (Interrog. No. 6).  *Id.* at 8.

- Identify with precision Plaintiffs' damages, including the number of false or fraudulent
  claims, records or statements that Plaintiffs allege Abbott made (Interrog. No. 8).  *Id.* at
  10.

- Describe all instances in which the Government alleges that Abbott has "marketed the
  spread" to Providers, as described in Paragraph 3 of the Complaint (Interrog. No. 5).  *Id.*
  at 7.

In response, Plaintiffs did little more than recite portions of the Complaint.  Abbott, of

course, already has the Complaint.  What Abbott seeks—and what Plaintiffs are obligated to

provide—is a detailed and comprehensive description of the alleged ***false claims*** and ***false***

***statements*** at issue in this case.

Plaintiffs have brought a False Claims Act case against Abbott.  It therefore defies belief

that Plaintiffs have refused to identify a single specific false claim by Abbott.  Instead, in

responding to Interrogatory No. 1, the Government simply proclaimed that all of the prices

Abbott submitted to third-party publications regarding drugs at issue in this case were "inflated

and therefore false."  *See* U.S.' Objns. & Resps. to Def. Abbott's First Set of Interrogatories at

10-13 (Dec. 4, 2006) ("Gov.'s Inter. Resps.") (Exhibit 5).  In the same way, Ven-A-Care, which

filed this False Claims Act suit against Abbott back in 1995, could not identify a single specific

false claim in its response.  Answer and Objns. of Relator/Plaintiff Ven-A-Care of the Florida

Keys, Inc. to Def. Abbott's First Set of Interrogatories Propounded Jointly to the Plaintiffs, at 12-

14 ("Ven-A-Care's Inter. Resps.") (Exhibit 6).  Even after eleven years, it seems, Plaintiffs have

not had enough time to unearth one false claim submitted by Abbott.

Eventually Plaintiffs must disclose every false claim that they contend Abbott made.  *See*

Defendant Abbott Laboratories Inc.'s Second Set of Requests for the Production of Documents

and Tangible Things from Plaintiffs United States of America and Ven-A-Care, at 2 (Feb. 21,

2007) (Request No. 1) (Exhibit 7).  As an initial—but important—step, Abbott suggested that the

Government provide a representative sample of alleged false claims.  *See* Torborg Ltr. of 3/27/07

(Exhibit 8) (outlining Abbott's proposal).  Evidence indicates that Medicare carriers reimbursed

vastly different amounts for the J-Codes at issue in the case.  Moreover, state Medicaid programs

employed different reimbursement methods at different time periods for the NDCs at issue,

including some that did not even use published prices such as AWP or WAC.  In order for a

sample Medicaid claim to be appropriately representative, it should include an allegedly "false

claim" for each NDC at issue, for each year, and for each state Medicaid program.  A

representative sample of Medicare claims should include an allegedly "false claim" for each J-

Code at issue, for each year, and for each Medicare carrier.  The Government has refused to

provide such a sample.

Plaintiffs likewise fail to identify a single false price reported by Abbott, contending

broadly that Abbott should have reported "an average or estimated acquisition cost" because

"that was the amount at which Abbott was actually selling its pharmaceuticals."  Gov's. Inter.

Resps. at 29-32.   They also provided no substantive response to Abbott's request seeking the

number of false or fraudulent claims alleged.  Gov's. Inter. Resps. at 29, 37-40; Ven-A-Care's

Inter. Resps. at 23-24.

Abbott's requests for a comprehensive description of Plaintiffs' evidence fared no better.

Instead of listing all alleged instances of "marketing the spread" by Abbott, the Government

offered five bullet point "examples," protesting that it would be "unfeasible" to list all instances

of marketing the spread by Abbott.  Gov's. Inter. Resps. at 26-28.  Ven-A-Care did the same,

listing two instances "by way of example" but providing no other dates, times, or places, let

alone any information about whether such alleged marketing might have influenced a provider to

purchase a specific product.  Ven-A-Care's Inter. Resps. at 19-20.

### B.   Abbott Is Entitled to a Full Description of the Evidence and Claims Against It

Abbott has reasonably demanded to know precisely what Plaintiffs contend to be the

false claims, false statements, and other actions that are at issue in this case.  Plaintiffs have

refused to provide that detail, contending that all the evidence is not yet in.  This aversion to

specificity calls into question the seriousness of Plaintiffs allegations.  As the Court knows, Rule

9(b) requires Plaintiffs to know the specifics of their fraud case *before* it is filed.  Thus, the First

Circuit has held that in a False Claims Act matter:

> [A] relator must provide details that identify particular false claims
> for payment that were submitted to the government.  In a case such
> as this, details concerning the dates of the claims, the content of the
> forms or bills submitted, their identification numbers, the amount
> of money charged to the government, the particular goods or
> services for which the government was billed, the individuals
> involved in the billing, and the length of time between the alleged
> fraudulent practices and the submission of claims based on those
> practices are the types of information that may help a relator to
> state his or her claims with particularity.

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-33 (1st Cir. 2004); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727-728 (10th Cir. 2006) (quoting *Karvelas*).

Plaintiffs have provided ***none*** of this information with respect to the alleged false claims in this case. Their inability or refusal to cite even one allegedly false statement or claim by Abbott hamstrings Abbott's ability to take depositions and develop defenses. Abbott cannot question witnesses about vague recitations. Instead, Abbott is entitled to probe the specific statements, actions, and claims on which Plaintiffs rely. Abbott has elsewhere highlighted the conundrum the Government faces in trying to prove "falsity" in this case. *See*, *e.g.*, Abbott's Memorandum of Law in Support of its Motion to Dismiss, at 15-17 (July 7, 2006). Plaintiffs are attempting to impose False Claims Act liability even in instances when Abbott was not involved in filing claims. Indeed, the claims forms that were filed by providers did not even reflect Abbott's prices on them, but instead showed only the providers' charges. The difficulties and complexities inherent in Plaintiff's theory, however, provide no excuse for their complete failure to respond to discovery seeking the most basic information about their claims.

As to damages also, Plaintiffs are refusing to provide specific information that is vital to the defense of any False Claims Act case. The Government is seeking from Abbott penalties of between $5,000 and $11,000 per false claim. Abbott is therefore justified in requesting that Plaintiffs identify the "number of false or fraudulent claims that Abbott caused to be made" and the number of "false records or statements made by Abbott." Abbott's Inter. at 10 (subsection (f)).

Beyond specific false claims, Plaintiffs further accuse Abbott of "marketing the spread" for its drugs. Abbott has asked the Plaintiffs to describe every instance in which Abbott

personnel allegedly engaged in such conduct.  Instead of documenting all alleged instances, the Government and Ven-A-Care listed a handful of vague allegations "by way of example."  Gov.'s Inter. Resps. at 26-28; Ven-A-Care's Inter. Resps. at 19-20.  By definition, such a response is inadequate.  Plaintiffs should be ordered to disclose immediately each and every instance in which they believe Abbott "marketed the spread."  If they discover more as the case progresses, they can always supplement their responses.

All of these issues identify a common and troubling theme to Plaintiffs' approach to their case.  Having brought a False Claims Act case, Plaintiffs refuse to identify the specifics of their case—the claims at issue, the false statements alleged, the conduct of which Abbott is accused, and the evidence on which they rely.  The Court simply cannot permit this case to go forward without a comprehensive disclosure by Plaintiffs of every single false and fraudulent act that they content Abbott took.  Accordingly, the Court should order the Government and Ven-A-Care to provide complete responses to Abbott's Interrogatory Nos. 1, 5, 6, and 8.

## II.   THE GOVERNMENT SHOULD PRODUCE MATERIALS RELATED TO AND GATHERED DURING ITS INVESTIGATION OF VEN-A-CARE'S *QUI TAM* COMPLAINT

Plaintiffs have stonewalled Abbott's efforts to obtain information related to the Government's eleven-year investigation of Ven-A-Care's *qui tam* complaint.  Abbott is entitled to the subpoenas, affidavits, witness statements, and testimony that the Government collected over the years while this case was under seal.  It is unfair for the Government to have collected such evidence for more than a decade, yet now refuse to share it with Abbott when discovery at last moves forward.[1]

---

[1] For its part, Abbott has provided the Government with testimony taken in other cases in which Abbott was involved, as well as all documents from other cases regarding the Subject Drugs and other issues in this case.

### A.     Abbott's Requests and Plaintiffs' Responses

Abbott's requests for information about the Government's investigation are straightforward.  Abbott asked for a list of individuals interviewed by the Government or Ven-A-Care and documents received or generated by the Government during its investigation.  *See* Abbott's Interrogs. at 12 (Interrog. No. 10).  Similarly, Abbott has asked the Government for information about individuals who "received or were made aware of" the allegations in Ven-A-Care's complaint and disclosure statement before this complaint was severed on May 16, 2006. *Id.* at 6 (Interrog. No. 4).

Again, however, Plaintiffs have provided no substantive responses whatsoever, asserting instead numerous objections and privileges, including the "law enforcement investigative files privilege."  Gov.'s Inter. Resps. at 43-44; Ven-A-Care's Inter. Resps. at 25-26 (responding to Interrogatory No. 10); Gov.'s Inter. Resps. at 22-23; Ven-A-Care's Inter. Resps. at 17 (responding to Interrogatory No. 4).

### B.     Abbott Is Entitled To Information Regarding Plaintiffs' One-Sided Discovery

Abbott's Interrogatory Nos. 4 and 10 seek information obtained during the Government's investigation of Ven-A-Care's *qui tam* Complaint that is plainly relevant and important to Abbott's defense.  Plaintiffs' numerous objections to these interrogatories are meritless and should be overruled.

***First, the law enforcement investigative files privilege does not protect these materials***. This privilege shields only "investigatory files compiled for law enforcement purposes."  *R.C.O. Reforesting v. United States*, 42 Fed. Cl. 405, 408 (Fed. Cl. 1998).  Its purpose is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of

sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Id.* (citations omitted).

None of these concerns is implicated here.  As an initial matter, the investigation of Abbott is no longer ongoing and there is no reason to protect information gathered during that process.  *Morrissey v. City of New York*, 171 F.R.D. 85, 90-91 (S.D.N.Y. 1997) (privilege no longer applies once investigation has been completed and there is no danger of jeopardizing future investigations); *In Re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) (whether investigation is ongoing is a factor courts should consider when balancing competing interests affected by disclosure decision).  What is more, sources interviewed during the Government's investigation of Ven-A-Care's complaint are not confidential.  To withhold files that would reveal the identity of its sources, the Government would have to show that its sources "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *R.C.O. Reforesting*, 42 Fed. Cl. at 408 (citations omitted).  Factors supporting an inference of confidentiality include the danger of retaliation, reprisal or harassment, or "serious and damaging allegations of misconduct that could initiate criminal investigations or lead to other serious sanctions . . . ." *Id.* at 409 (citations omitted).  None of these factors are involved in this civil litigation.  Individuals who were interviewed about Ven-A-Care's allegations have no reasonable expectation that their identities will remain confidential.  And concerns about physical safety or reprisals are certainly not at stake here.

Plaintiffs have refused even to log documents withheld under the investigative files privilege.  This makes it impossible for Abbott to challenge specific assertions of the privilege.  Indeed, the First Circuit has held that failing to log allegedly privileged material can constitute a

waiver of the privilege.  *In Re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A

party that fails to submit a privilege log is deemed to waive the underlying privilege claim").

In any event, the government has failed to assert the law enforcement investigative files

privilege properly in the first place.  "[A] responsible government official must lodge a formal

claim of privilege, after actual personal consideration of the information sought."  *United States*

*ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 687 (S.D. Cal. 1996) (formal claim "must

specify with particularity the information for which the protection is sought, and explain why the

information falls within the scope of the privilege.").  The Government clearly has not done this.

***Second, Abbott's request for investigative materials is not precluded by the attorney-***

***client, work-product, or common-interest privileges***.  The specific information that Abbott has

requested from the Government is not covered by any of these privileges, and Abbott's right to

see these materials overrides any qualified privilege that might apply.  If any material were so

protected, the Government is obligated at least to explain why on a privilege log.  For example,

Abbott's request for copies of subpoenas sent to third parties and documents received from them

during the Government's eleven-year one-sided discovery campaign cannot be protected by the

attorney-client, or work-product, or common-interest privileges.  Abbott's request for these

materials is akin to receiving notice and a copy of subpoenas issued during litigation under

Federal Rule of Civil Procedure 45.  If the Government had unsealed this case in 1995, Abbott

would have automatically received information gathered through subpoenas under Rule 45.

***Third, the statutory seal does not prohibit production***.  Because the Government has

intervened as to Abbott, the False Claims Act's statutory seal provides no basis to withhold the

requested materials from Abbott.  *See Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir.

2003) ("the purpose of the FCA does not support *continued* sealing, and only justifies sealing in

order that the government may investigate"); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 402 (D. Colo. 1992) (finding the investigative files privilege was waived where the government "placed the protected information at issue" through its complaint and "application of the privilege would deny the opposing party access to information vital to its defense.").  As outlined below, Abbott's need for this information is great, and protected information "must be disclosed if a litigant's need for the information outweighs the public interest in nondisclosure."  *R.C.O. Reforesting*, 42 Fed. Cl. at 409; *In Re Sealed Case*, 856 F.2d at 272.

As the Court is aware, Abbott has sought access to materials filed under seal in the underlying *qui tam* case in the United States District Court for the Southern District of Florida. It has made motions to both this Court and Judge Alan Gold in the Southern District of Florida. After conferring with this Court, Judge Gold recently ordered the Government to provide copies of all filings made under seal in the underlying *qui tam* sought by Abbott, with the Government's proposed redactions.  Judge Gold's order indicates that the Government's wholesale attempt to withhold everything about its eleven-year investigation has been rejected.

Faced with an assertion of the privilege in a *qui tam* case, several courts have held that investigatory materials "must be unsealed unless the Government can make a compelling showing that the documents contain highly specific information, which, if disclosed, would reveal confidential investigative methods, jeopardize an ongoing investigation, or pose a threat of harm to certain non-parties."  *United States ex rel. Lee v. Horizon West, Inc.*, No. C 00-2921, 2006 WL 305966, at *2-3 (N.D. Cal. Feb. 8, 2006) (finding that given the "highly general nature" of the documents at issue, the Government's contention that unsealing them "would 'have a chilling effect on the future content of such requests'" was "not persuasive"); *see also*

*Alexander v. F.B.I.*, 186 F.R.D. 154, 167 (D.D.C. 1999) ("across-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice.").

The Government has not explained how limited disclosure here would adversely affect future investigations. In fact, it appears that the Government and Ven-A-Care may have conducted a joint investigation after 1995, begging the question of just how important and confidential are the investigative techniques allegedly in need of protection here. By contrast, defendants in criminal matters are entitled even to materials gathered by law enforcement through clandestine investigative techniques such as wiretapping. *See*, *e.g.*, 18 U.S.C.A. § 2518 (9) (West 2004) (evidence derived from wiretapping "shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved."). The civil lawyers' investigative techniques arguably at issue in this case certainly are not more confidential than the government activity revealed in wiretap applications.

The Government has made no effort to articulate how a limited disclosure of the information Abbott seeks will hinder future investigations in any way. If the Government were to identify a specific area where confidentiality is needed, a properly drafted protective order presumably would protect the Government's interests.

In short, the Government simply does not want Abbott to learn anything about its eleven-year clandestine investigation. It wants to retain its unfair head start in this civil case. The Court should not condone such gamesmanship.

***Finally, Abbott's need for these documents is great***.  In contrast to the Government's weak assertion of confidentiality, the information sought is vital to Abbott's defense. Information about the Government's investigation of Ven-A-Care's allegations is highly relevant to Abbott's government knowledge defense.  How can the Government claim to have been fooled by Abbott's alleged conduct even after receiving Ven-A-Care's Complaint in 1995?  To the extent that the investigatory documents prove that the Government had notice of Abbott's alleged conduct, that evidence undercuts claims of justifiable reliance, which is an element of common law fraud.  *See* Compl. ¶ 113.  In addition, Abbott is entitled to learn what evidence the Government has uncovered.  If it is inculpatory, Abbott is entitled to rebut it.  But if the evidence is exculpatory, fairness, as well as due process, require that the Government disclose it to Abbott. It is simply unfair for the Government to refuse to produce evidence that it gathered while it was fresh, leaving Abbott to reconstruct events eleven years later.[2]

The adversary system of civil discovery cannot function as a secret, one-sided process. This Court should therefore order the Government to respond fully to Abbott's discovery requests seeking the details of the Government's investigation.

## III.     PLAINTIFFS SHOULD PRODUCE VEN-A-CARE'S DISCLOSURE STATEMENT

### A.      Abbott's Requests and Plaintiffs' Responses

Abbott has requested the written disclosure statement presumably served by Ven-A-Care on the Government in support of its original complaint as required by law.  *See* Abbott's First Set of Requests for Production of Documents and Tangible Things to the United States, at 19-20 (Request No. 56) (Exhibit 9); Defendant Abbott Laboratories, Inc.'s First Set of Requests for

---

[2] In addition, the Supreme Court has recently made clear that Ven-A-Care may not pursue claims that turn on information Ven-A-Care gained from the Government's eleven year investigation, rather than on information it brought to the table.  *See Rockwell Int'l. Corp. v. U.S.*, 127 S. Ct. 1397, 1410 (2007).

Production of Documents and Tangible Things to Relator Ven-A-Care of the Florida Keys, Inc., at 9 (Request No. 2) (Exhibit 10).  This written disclosure statement is required by the False Claims Act.  31 U.S.C. § 3730(b)(2) ("[a] copy of the complaint and written disclosure of substantially all material evidence and information" must be served on the Government).  But Plaintiffs have refused to provide this information, citing the investigative files privilege and other privileges.  *See* Response by the United States to Abbott's First Set of Requests for Production of Documents and Tangible Things to the United States, at 42-43 (Exhibit 11); Response of Plaintiff Ven-A-Care of the Florida Keys, Inc. to Defendant Abbott Laboratories, Inc.'s First Set of Requests for Production of Documents and Tangible Things, at 10 (Exhibit 12).

> **B.   Abbott Is Entitled to Ven-A-Care's Disclosure Statement**

No claim of privilege protects the information in Ven-A-Care's disclosure statement for at least two reasons.  First, the information contained in this statement consists primarily of facts, not legal advice.  *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1346 (E.D. Mo. 1996).  As one district court explained:

> Once the government makes an election and the case goes forward, fundamental fairness dictates that the plaintiff must disclose to the defendant the factual basis for the suit.  At that point, no legitimate reason exists for preserving the confidentiality of the written disclosure statement, since it contains nothing more than the evidence and information which must come to light in any event once the case proceeds.

*United States ex rel. Stone*, 144 F.R.D. at 399.  Second, Ven-A-Care's disclosure to the Government of the information contained in its statement waived any claim of privilege.  *Id.* at 401 (no expectation of privacy in disclosure statement because relator knew it would be turned over to the government); *United States ex rel. Burns v. A.D. Roe Co., Inc.*, 904 F. Supp. 592, 594 (W.D. Ky. 1995); *United States ex rel. Robinson v. Northrop Corp.*, 824 F. Supp. 830, 838-39

(N.D. Ill. 1993).  Even if privileges did protect certain parts of Ven-A-Care's disclosure statement, they could be preserved through *in camera* inspection and redaction.  *United States ex rel. Stone*, 144 F.R.D. at 401; *United States ex rel Grand v. Northrop Corp*., 811 F. Supp. 333, 337 (S.D. Ohio 1992); *United States ex rel. Robinson*, 824 F. Supp. at 839, n.1.

The disclosure statement is necessary for Abbott to determine whether Ven-A-Care properly complied with the False Claims Act.  If Ven-A-Care's disclosure was inadequate, the Court may dismiss the complaint.  *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998-99 (2d. Cir. 1995); *United States ex rel. Made in the USA Foundation v. Billington*, 985 F. Supp. 604, 608 (D. Md. 1997) (disclosure statement "should, at a minimum, 'comprise much of what [relator] will rely upon to support the contentions in the case at bar'") (*citing United States ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 398-400 (D. Colo. 1992); *Foster v. Savannah Commc'n*, 140 Fed. Appx. 905, 908 (11th Cir. 2005); *White v. Apollo Group*, 241 F. Supp. 2d 710, 714 (W.D. Tex. 2003) (dismissal warranted where Plaintiff "failed to procedurally comply with the strict requirements of § 3730").  Indeed, failure to comply with certain of these statutory requirements will deprive the court of jurisdiction.  *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1159 (2d Cir.), *cert. denied*, 508 U.S. 973 (1993) (no subject matter jurisdiction where relator cannot satisfy requirement that it be the "original source" of publicly disclosed information underlying suit).

Of  course, the disclosure statement also is a statement made by Ven-A-Care.  Abbott is entitled to know what Ven-A-Care, as a party to this case, stated in 1995.  That information may permit Abbott attorneys to cross-examine Ven-A-Care witnesses.  It also may lead to the discovery of additional evidence useful to Abbott's defense.  Inasmuch as the disclosure statement is not privileged, therefore, production of the statement should be self-apparent.

**IV.   PLAINTIFFS MUST IDENTIFY THE PREPARERS AND RECIPIENTS OF GOVERNMENT DRUG PRICING STUDIES**

**A.   Abbott's Request and Plaintiffs' Response**

Abbott's Interrogatory No. 3 requested an identification of all Government studies concerning payment for prescription drugs and the differences between actual acquisition costs and published prices.   Abbott's Inter. Reqs. at 5.  This interrogatory also sought a list of the individuals involved in each study, a list of those who received the study or otherwise learned of its conclusions, the time periods covered by the study, and what was done with the results.  *Id.* The Government objected to this request and responded that such information was "publicly available" to Abbott.  Gov's. Inter. Resps. at 20-21.

Abbott has repeatedly followed up on its request, specifically asking the Government to identify who was involved in the studies and to whom they were distributed, while also offering to accommodate logistical difficulties.  *See* Torborg Ltr. of 4/19/07 ("I understand the Government probably does not know everyone who received the various reports prioritized by Abbott, but that does not mean the Government has no information on that issue.") (Exhibit 13); Torborg letter of 3/29/07 ("Despite repeated assurances that a response was in coming in the near future, we have received *no* information."); Torborg letter of 3/1/07 (Exhibit 14); Torborg letter of 2/2/07 (Exhibit 15); Torborg letter of 12/13/06.  Yet the Government has offered no explanation for failing to provide the information beyond what it articulated in its interrogatory responses.

**B.   Abbott Is Entitled to Know Who Prepared and Received Pricing Studies**

Abbott is particularly interested in drug pricing studies generated by the Government because they point out the large differences between providers' actual acquisition costs and Government reimbursement.  And because Abbott believes these studies were widely circulated

at HCFA and CMS in the 1980s and 1990s, they can provide important evidence substantiating Abbott's defenses by demonstrating that the Government employees responsible for federal drug reimbursement were aware of relevant facts as early as the 1980s—long before the Government chose to base reimbursement on published AWPs.  Abbott deserves to know exactly who was involved in the preparation of each of these reports so those individuals can be deposed, as well as where the reports went so that recipients at HCFA and CMS can be questioned about the reports' contents.

Contrary to the Government's assertion, this information cannot be ascertained from the publicly available documents themselves.  Many drug pricing studies do not even indicate who authored them, let alone who received them.  *See*, *e.g.*, Torborg Ltr. of 4/19/07 (listing six such studies).  In addition, Abbott is at a loss as to how the names of individuals who prepared these studies or received them are protected by any privilege.  The Government has no good reason for its nearly nine-month delay in providing this information.

## CONCLUSION

For the foregoing reasons, the Court should grant Abbott's Motion to Compel Plaintiffs United States and Relator to Provide Adequate Responses to Abbott's Discovery Requests. Abbott respectfully requests that the Court enter an order compelling Plaintiffs to make a full and complete response to Abbott's Interrogatory Numbers 1, 3, 4, 5, 6, 8, 10, and an order compelling Plaintiffs to make a full and complete disclosure of the documents sought by Abbott's Request for the Production of Documents from the United States No. 56 and Abbott's Request for the Production of Documents from Ven-A-Care No. 2.

Dated:  May 1, 2007                Respectfully submitted,

                              /s/ R. Christopher Cook
                              James R. Daly
                              Tina M. Tabacchi
                              Brian J. Murray
                              JONES DAY
                              77 West Wacker Drive, Suite 3500
                              Chicago, Illinois  60601
                              Telephone:  (312) 782-3939
                              Facsimile:   (312) 782-8585

                              R. Christopher Cook
                              David S. Torborg
                              JONES DAY
                              51 Louisiana Avenue, N.W.
                              Washington, D.C.  20001-2113
                              Telephone:  (202) 879-3939
                              Facsimile:  (202) 626-1700

                              *Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, R. Christopher Cook, an attorney, hereby certify that I caused a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL PLAINTIFFS UNITED STATES AND RELATOR TO PROVIDE ADEQUATE RESPONSES TO ABBOTT'S DISCOVERY REQUESTS to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 1st day of May, 2007.

/s/ R. Christopher Cook
R. Christopher Cook