# EXHIBIT 1

## SUMMARY OF ABBOTT'S MOTION TO COMPEL

**INTERROGATORY NO. 1**  Identify each and every allegedly false or fraudulent statement or action made or taken by Abbott that relates in any way to Your claims in the Complaint, including: (a) false or fraudulent statements made or caused to be made by Abbott and its agents; (b) false or fraudulent claims filed by Abbott and its agents; . . . (d) false or fraudulent price representations.

**Government's Response:**  (a) The false or fraudulent statements include the false prices reported by Abbott for the pharmaceuticals identified in the complaint . . .   (b) . . . Abbott's fraudulent acts caused the submission of false claims. . .  (d) . . . [A]ll the price representations to the Price Publications for the pharmaceuticals at issue in the Complaint were inflated and therefore false.

**Ven-A-Care's Response:**   At this point in these proceedings, it is premature to require the Plaintiffs to assemble a comprehensive explication of all of Abbott's false price reports and evidence and documents showing Abbott's ongoing and active use of the resulting inflated spreads to market the drugs at issue.

**Abbott's Position:**  Plaintiffs in this False Claims Act should be required to identify the false or fraudulent claims and statements at issue.  To satisfy Rule 9(b)'s particularity requirement, the First Circuit requires that a plaintiff identify and provide details about particular false claims for payment that were submitted to the government.  Plaintiffs have completely failed to provide this most basic information about their allegations.

**INTERROGATORY NO. 3**  For each [drug pricing] study, Identify . . .  all individual Persons who were involved in the study; . . .  each Person who received a report of the study or who otherwise learned of the study's conclusions . . . .

**Government's Response:**  [P]ublicly available reports contain the non-privileged information that Abbott asks the United States to identify and inventory.

**Ven-A-Care's Response**: [T]he United States will respond to this Interrogatory.

**Abbott's Position:** Much of the information Abbott seeks about the preparers and recipients of these drug pricing studies is not publicly available.  The Government continues to delay, despite its repeated assurances that information will be forthcoming and after nearly nine months of requests by Abbott.  Such evidence is crucial to Abbott's defenses.

1

**INTERROGATORY NO. 4**  Identify all Persons, including all current or former employees or agents of the U.S. Government, of any State Medicaid Program, of any Medicare Carrier, or of any Medicaid Intermediary, who received or were made aware of the Ven-A-Care Qui Tam Complaint, the disclosure statement filed by Ven-A-Care pursuant to 31 U.S.C. § 3730(b)(2), or any of the allegations contained in the Ven-A-Care Qui Tam Complaint or disclosure statement prior to May 16, 2006.  For each Person identified, state when and under what circumstances that Person became aware of Ven-A-Care's allegations and what information was provided to them.  Identify all Documents relating to the information provided in response to this Interrogatory.

**Plaintiffs' Response:**  Plaintiffs made no substantive response to this interrogatory, asserting a lengthy list of objections and privileges, including the law enforcement investigative files privilege.

**Abbott's Position:**  The law enforcement investigative files privilege no longer applies once an investigation has concluded and a *qui tam* action is unsealed.  No confidential investigative techniques, let alone any witness' well-being, would be jeopardized by disclosure here.  It is unfair for Plaintiffs to withhold information gathered eleven years ago, especially in light of the extensive spoliation that appears to have occurred in this case.  Also, because Ven-A-Care's *qui tam* complaint alerted the Government to Abbott's alleged conduct in 1995, information about the investigation supports Abbott's defense and undermines Plaintiffs' assertions of causation and justifiable reliance.

**INTERROGATORY NO. 5**  Identify and provide all facts in your possession relating to each and every instance in which Abbott marketed the "spread" to any Provider as alleged in paragraph 3 of the Complaint, and for each such instance, Identify: (a) the employee of Abbott who allegedly marketed the spread; (b) the Provider to whom the spread was marketed (and the individual employees of the Provider involved in the interaction); (c) the drug that was marketed; (d) the place and time of the alleged marketing; (e) the content of the alleged marketing (including the precise facts on which You base your assertion that the employee "marketed the spread"); (f) whether the Provider purchased or did not purchase the product; and (g) if applicable, all evidence that supports or refutes Your contention that the Provider purchased the product because of the spread between acquisition cost and reimbursement, as opposed to some

other reason.   Identify all Documents relating to the information provided in response to this Interrogatory.

**Government's Response:** The United States is unable at this early stage of the litigation to document every single time, place or Abbott individuals involved in marketing the spread on Abbott's pharmaceuticals. First, it is not feasible to list all specific acts of a scheme that spanned ten years and fifty states.  Second, the vast majority of that information still remains in Abbott's possession. . . .

**Ven-A-Care's Response:**  The inflated spread was marketed by Abbott and intermediaries such as wholesalers and GPOs, with Abbott's knowledge and active assistance, through sales and marketing systems that showed the Medicare and Medicaid providers their actual price, compared it with the false inflated reported price and conveyed the resultant inflated spread . . . .  By way of example,  Dennis Walker of Abbott's Alternate Site Product Sales marketed the spread to Ven-A-Care's Zach Bentley in a phone call supported by a fax correspondence on or about May 30, 1997.  Later in 1997, Mr. Bentley had a similar discussion with Abbott's Michael Heggie.

**Abbott's Position:**  Rather than documenting "each and every instance" of alleged marketing of the spread, the Government and Ven-A-Care have listed a handful of vague allegations "by way of example."  Examples by definition provide an incomplete picture of the Plaintiffs' alleged case against Abbott.  This is particularly unfair to Abbott given the tight discovery deadline in this case.

**INTERROGATORY NO. 6**  For each of the Subject Drugs . . . Identify: (a) the false price You allege Abbott reported or represented; (b) all circumstances of the Communication, including to whom and when; (c) the specific prices You contend Abbott should have reported to Publishers or others; (d) the basis for Your contention that Abbott should have reported each of those prices. . . .

**Government's Response:** (a) The false prices are the Direct Prices, WACS and AWPs Abbott reported to the Price Publications during the relevant time period of the Complaint for the following NDCs [listed in ¶31 of the Complaint] . . . . (b) The prices for these pharmaceuticals were communicated to Price Publications by Abbott personnel—including, but not limited to, Ms. Jerrie Cicerale—throughout the time period covered by the United States' Complaint. . . . (d) Abbott should have reported the average or estimated acquisition cost for the pharmaceuticals at issue because that was the amount at which Abbott was actually selling its pharmaceuticals.

**Ven-A-Care's Response:** The United States is the proper party to provide Answers and Objections to this Interrogatory.

**Abbott's Position:**  Plaintiffs have offered no evidence of specific false prices, as requested by Abbott and required by case law.  Instead, the Government has simply listed the NDC codes of the drugs listed in its Complaint.  NDC codes are identifying labels, not prices.  Ven-A-Care did not even answer, despite its repeated accusation over eleven years that Abbott reported prices falsely.

**INTERROGATORY NO. 8**   Identify all information necessary for Abbott to quantify the damages You seek . . . .  Identify the 'number of false or fraudulent claims that Abbott caused to be made' (Complaint, ¶104), the number of 'false records or statements made by Abbott' (*Id.* ¶106) . . . .

**Plaintiff's Response**:  Plaintiffs made no substantive response to this portion of the interrogatory.

**Abbott's Position:**  Because the Government is seeking damages of between $5,000 to $11,000 per false claim, Abbott is entitled to ascertain its potential liability by determining the precise number of false claims and statements the Government alleges it made.

**INTERROGATORY NO. 10**  During the over ten years between the filing of the Ven-A-Care Qui Tam Complaint and the U.S. Government's decision to intervene in the action, Identify:  (a) all Persons or organizations the U.S. Government or Ven-A-Care contacted in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint; (b) all Persons the U.S. Government interviewed or spoke with in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint; (c) all Persons the U.S. Government deposed or questioned in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint; (d) every subpoena or document request the U.S. Government issued in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint; (e) every response to any subpoena or document request the U.S. Government issued in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;  (f) all documents, transcripts, recordings (video or audio), or other materials that the U.S. Government received or that were generated in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint.

**Plaintiffs Response:**  Plaintiffs made no substantive response to this interrogatory, asserting a lengthy list of objections and privileges, including the law enforcement investigative files privilege.

**Abbott's Position:**  As with Interrogatory No. 4, the law enforcement investigative files privilege no longer applies when an investigation has concluded.  No confidential investigative techniques or witnesses must be protected from disclosure, and it is unfair for Plaintiffs to continue withholding information gathered years ago when it was fresh, particularly in light of the extensive evidence of spoliation in this case.

**REQUEST FOR PRODUCTION OF DOCUMENTS FROM U.S. NO. 56**   The disclosure statement filed by Ven-A-Care pursuant to 31 U.S.C. § 3730(b)(2), as well as Documents sufficient to identify which Persons within the U.S. Government, any State Medicaid Program, NAMFCU, any MFCU, any Medicare Carrier, and/or any Medicaid Intermediary received either that document or the Ven-A-Care Complaint, and when and under what circumstances such Persons received those documents.

**Government's Response:**  [A] relator's statement of material evidence is not a public document and is provided to the Government under seal to assist its investigation.

**REQUEST FOR PRODUCTION OF DOCUMENTS FROM VEN-A-CARE NO. 2**
The disclosure statement filed by Ven-A-Care pursuant to 31 U.S.C. § 3730(b)(2), and all Documents relating to the transmission or communication of that statement.

**Ven-A-Care's Response:**  [P]lease see documents and material provided as part of the Rule 26 Initial Disclosures served by Ven-A-Care . . . .   Ven-A-Care objects to the production of such documents in the form of its disclosures to the government or in a manner that will reveal its otherwise privileged or protected communications with the government.

**Abbott's Position:**  The disclosure statement contains facts that must come to light as the case proceeds to trial, not legal advice.  Now that the Government has intervened, basic fairness demands that Plaintiffs disclose the factual bases of their suit.  Furthermore, Abbott should be able to learn whether Ven-A-Care properly complied with the technical requirements of the False Claims Act and the Federal Rules of Civil Procedure.