UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL NO. 1456 Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) | Judge Patti B. Saris |
| *State of Nevada* v. *American Home Prods. Corp.*, *et al.*, D. Nev. Cause No. CV-N-02-0202-ECR | ) ) ) ) ) ) ) ) ) ) | Chief Magistrate Judge Marianne B. Bowler |

**JOINT REPLY IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO STRIKE THE DECLARATIONS OF CHARLES DUARTE AND COLEEN LAWRENCE**

The declarations of Charles Duarte and Coleen Lawrence were submitted to shore up Nevada's crumbling case, which had been undermined in part by their own deposition testimony and their documents, and in part by the Court's order establishing facts that Nevada's spoliation of evidence might otherwise have prevented the Defendants from proving.[1]  Because these declarations are inconsistent with the witnesses' prior deposition testimony and established facts and are based on speculation and assumptions about events beyond their personal knowledge, Defendants moved to strike them.  In opposition to that motion, Nevada *says* that the declarations are based on personal knowledge (of events predating the service of either witness with Nevada Medicaid), are consistent with prior testimony and documents, and are mostly, though admittedly not entirely, consistent with established facts; however, Nevada does not

---

[1] Defendants will file a separate reply with respect to their Motion to Strike the Declaration of Dorothy Poulsen in the Montana action.

10514417_1                                            1

address and therefore cannot resolve the actual inconsistencies pointed out by the Defendants in their opening brief and accompanying paragraph-by-paragraph demonstration of deficiencies in the declarations.

> A. The Declarations Are Contradicted By Facts Regarding Other Nevada Pharmacy Programs

Nevada concedes that established fact 4—"after May 2000, Nevada had information regarding how three other Nevada pharmacy programs, namely Mental Health, Public Employee Benefits, and Senior Rx, acquired and/or reimbursed drugs"—contradicts paragraphs 50-51 and 57 of Mr. Duarte's declaration, which it withdraws. Montana and Nevada's Joint Opposition to Defendants' Motions to Strike the Declarations of Dorothy Poulsen, Charles Duarte and Coleen Lawrence ("Opp.") at 6. Having conceded that Nevada Medicaid possessed this information about how other Nevada pharmacy programs purchased and reimbursed drugs, the State refuses to acknowledge the unavoidable consequences, that Nevada Medicaid knew, by virtue of this information, that there was no "direct and reasonable relationship between AWP and acquisition cost"; that its reimbursement rate of AWP-15% did not approximate pharmacy acquisition costs; and that spreads greater than 15% were systemic not sporadic. *See* Duarte Decl. ¶¶ 18-22, 30, 32-44, 46, 48; Lawrence Decl. ¶¶ 20, 36-39.

Since 2000, Nevada Medicaid is deemed to have known that:

- Since 1998, the Nevada public employee benefits program, PEBs, reimbursed mail order drugs at discounts of at least 20.5% for branded drugs and 55% for generics.

- From 1999 through 2004, the State's pharmacy program for senior citizens, Senior Rx, engaged an insurer, PRAM, which reimbursed mail order drugs at discounts of 20% for brands and 50% for generics; and in 2005, Senior Rx engaged a PBM, Catalyst Rx, which reimbursed mail order drugs at discounts of 55% for generics.

10514417_1                              2

- Since at least the early 1990s, Nevada's Department of Mental Health purchased drugs through a multi-state cooperative, MMCAP, which acquired drugs at discounts far greater than 15%; and, since May 2000, Mental Health has also reimbursed drugs through the PBM Catalyst Rx, at discounts comparable to Senior Rx.

*See* Memorandum in Support of Defendants' Joint Motion to Strike the Declarations of Charles Duarte and Coleen Lawrence Submitted in Support of State of Nevada's Opposition to Defendants' Joint Motion for Summary Judgment ("Joint Mem.") at 6. Charged with the knowledge that other Nevada pharmacy programs were reimbursing at a wide range of discounts of up to 20% for brands and 55% for generics, Mr. Duarte and Ms. Lawrence cannot testify that they believed there was "a direct and reasonable relationship between AWP and acquisition cost"; that AWP-15% approximated pharmacy acquisition cost for all drugs, brands and generics; or that they had been unaware of the systemic nature and magnitude of spreads greater than 15%.[2]

### B. The Declarations Are Contradicted By OIG Reports

The Court has ordered as established facts that "[a]fter May 2000, Nevada had a practice of maintaining [OIG, CCH and federal GAO publications] relating to pharmacy reimbursement issues and circulating them among employees with responsibilities for the State's Medicaid pharmacy reimbursement rate." *See* Rep. and Recs. re: Defs.' Joint M. for Redress for Spoliation of Evidence at 26 (Mar. 14, 2007) ("Spoliation Op.") (Docket No. 3843, adopted by the Court on March 29, 2007). The OIG reports that are subsumed by these established facts show without doubt that spreads between AWP and pharmacy acquisition costs were throughout the relevant period large, variable and systemic. Nevada does not deny this. Instead, Mr. Duarte and Ms. Lawrence attest to a subjective understanding of these reports that is different from the objective facts reported in them. The State relies on this subjective understanding on the part of

---

[2] In addition, as demonstrated at pages 9-18 of Defendants' initial brief and *infra* at Section D, Mr. Duarte's and Ms. Lawrence's own prior deposition testimony also contradicts these statements.

"employees with responsibilities for the State's Medicaid pharmacy reimbursement rate" to contradict the objective facts contained in the OIG reports that are attributed by Court order to those very same "employees with responsibilities for the State's Medicaid pharmacy reimbursement rate," including, of course, Mr. Duarte and Ms. Lawrence.

This incredible separation that Nevada attempts to create between the indisputable facts shown by multiple OIG reports over decades and the subjective understanding of those facts said to be held by Nevada Medicaid officials is precisely the gambit identified by Defendants in their spoliation motion, to prevent which the Court established facts that Nevada could not contradict. As Judge Bowler noted, "[w]hile defendants fear that Nevada can plausibly deny knowledge of the documents' contents, this fear is unfounded because it seems unlikely that Nevada can believably maintain that policymakers failed to consider the dozens of AWP related documents that the trier of fact will know were in Nevada's possession." Spoliation Op. at 26. Any person who read even the cover letter or executive summary of any one of these short reports would understand the systemic, industry-wide nature of the problems with AWP and the magnitude of spreads involved. For example, the first page of the cover letter for the August 2001 OIG Report, Medicaid Pharmacy—Actual Acquisition Cost of Brand Name Prescription Drug Products, reads "As part of our review, we obtained pricing information from 216 pharmacies in 8 States and obtained 16,204 invoice prices for brand name drug products. We estimated that nationally, pharmacy actual acquisition cost was an average of 21.84 percent below AWP." (Docket # 2900 Ex. E.19). Similarly, the first page of the cover letter for the March 2002 OIG Report, Medicaid Pharmacy—Actual Acquisition Cost of Generic Prescription Drug Products, reads "[W]e obtained pricing information from 217 pharmacies in 8 States and obtained 8,728

invoice prices for generic drug products. . . . We estimated that, nationally, actual drug acquisition cost was an average of 65.93 percent below AWP."  (Docket # 2900 Ex. E.28.)

In addition to being flatly contradicted by the OIG reports themselves, the subjective views of Mr. Duarte and Ms. Lawrence regarding the contents of these reports are irrelevant in part because they contradict established fact, and in part because they are unreasonable in view of the contents of the reports themselves.[3]

### C. The Declarations Are Contradicted By Pricing Information From Defendants

Mr. Duarte's and Ms. Lawrence's assertions in their declarations that Nevada Medicaid lacked access to drug manufacturers' actual pricing information are contradicted by the established fact that four Defendants—TAP, Bayer, Schering-Plough, and Warrick—provided that very information to Nevada Medicaid on scores of drugs (which Ms. Lawrence admits elsewhere having received; *see* Joint Mem. at 7, n. 5).  Nevada attempts to save these assertions in the Duarte and Lawrence declarations by arguing that "the Duarte and Lawrence declaration statements on drugs are much broader than the established fact involving just four defendants." Opp. at 7.  That argument is unavailing:  It is precisely the breadth of the challenged assertions that makes them inconsistent with the Court's established facts.  The declarants broadly assert that "no one gets [actual] prices" (Duarte Decl. ¶ 58) and "Nevada Medicaid was not privy to actual prices. . . . We would never know the actual prices because drug manufacturers did not provide them to us" (Lawrence Decl. ¶ 24), when, in truth and as a matter of established fact, since 2002 four Defendants have been reporting this exact information to Nevada Medicaid, all with no impact on reimbursement rates.

This actual pricing information on scores of drugs that Nevada Medicaid is established to have been receiving from four defendants for five years flatly contradicts Mr. Duarte's and Ms.

---

[3] They are in any event contradicted by the witnesses' prior deposition testimony.  *See* Joint Mem. at 9-18.

10514417_1                                        5

Lawrence's assertions that they were unaware of the magnitude of spreads on those drugs. Thus, at a minimum, the Court should strike Duarte Decl. ¶ 41 (Schering-Plough) and Lawrence Decl. ¶ 38 (as it relates to Schering-Plough).[4] This same information on the actual prices of scores of drugs over five years is also completely aligned with OIG reports, the State's varying reimbursement rates for its several different pharmacy programs and the State's own commissioned report from Myers & Stauffer in demonstrating that it is incredible for Mr. Duarte and Ms. Lawrence to assert that they were unaware of large and varying spreads on all of the Defendants' subject drugs throughout the relevant period. By virtue of facts already established by Court order, Nevada Medicaid simply may not make that incredible assertion.

        D.      <u>The Declarations Are Contradicted By Prior Deposition Testimony</u>

In their initial brief (at pp. 9-18) and accompanying Attachments A and B, Defendants set forth, paragraph by paragraph, the statements in the Duarte and Lawrence declarations that are contradicted by prior deposition testimony. Generally, these statements were to the effect that the declarants believed AWP bore a direct and reasonable relationship to actual acquisition cost (Duarte Decl. ¶¶ 18-20; Lawrence Decl. ¶ 20), that they were not aware of the systemic nature and magnitude of spreads between AWP and actual acquisition costs (Duarte Decl. ¶¶ 30, 32-44, 46, 48; Lawrence Decl. ¶¶ 36-39), and that Mr. Duarte believed that Nevada Medicaid's EAC formula accurately approximated acquisition costs (Duarte Decl. ¶¶ 21-22). Defendants then provided direct deposition extracts from the depositions of Mr. Duarte and Ms. Lawrence that reveal their true understanding of the relationship between AWP and actual acquisition costs, which is completely inconsistent with the one espoused in their declarations.

---

[4] To the extent Mr. Duarte and Ms. Lawrence disavow knowledge of the spreads for TAP, Bayer, and Warrick in their more general statements, they similarly should be prohibited from doing so.

Nevada denies any inconsistency on the ground that the witnesses were not asked at their depositions the precise questions that they answer in their declarations. *See* Opp. at 8-10. Mr. Duarte and Ms. Lawrence were asked at their depositions about their understanding of the relationship between AWP and pharamacy acquisition costs, and their answers to those general questions are inconsistent with their declarations. For example, Ms. Lawrence testified at her deposition that at the time of the 2002 rate change, she understood the Myers & Stauffer estimates of pharmacy acquisition cost to have been AWP-19.3% for brands, AWP-35.1% for generics without a FUL, and AWP-83.1% for generics with a FUL— a spread of 592% using Nevada's lawyers' calculation methods. Joint Mem. at 12-13. Mr. Duarte testified at his deposition that he understood OIG reports to have concluded that AWP "wasn't a very good surrogate" for estimated acquisition cost; that he understood that AWP and actual acquisition costs were two entirely separate concepts; and that he was "aware personally that there were spreads, and not insignificant ones, between actual acquisition costs and actual wholesale price." Joint Mem. at 9-11. This testimony leaves no room for the challenged assertions in the declarations of a lack of awareness of variable spreads far in excess of 15%.

  E. <u>The Declarants Lack Personal Knowledge And Otherwise Fail To Comport With Rule 56(e) Admissibility Requirements</u>

In their opening brief, at pp. 18-19 and Attachments A and B, Defendants identified specific paragraphs of the Duarte and Lawrence declarations that failed to comply with the admissibility requirements of Rule 56(e) because they were not based on personal knowledge, were based on hearsay, or were inadmissible conclusions, assumptions, or surmises. Specifically regarding personal knowledge, Defendants submitted that to the extent their declarations address statements or events at Nevada Medicaid prior to their tenure there, Mr. Duarte and Ms. Lawrence offer no basis for their competency to testify regarding those statements or events.

Moreover, Mr. Duarte and Ms. Lawrence cannot testify to the knowledge of "the State," "Nevada Medicaid," other employees of the State or Nevada Medicaid, or drug manufacturers. In its Opposition, Nevada states that Rule 56(e) requires a scalpel and not a butcher knife, *see* Opp. at 10, but ignores its own advice and responds to Defendants' paragraph-by-paragraph discussion only with the broad statement that "given their positions and responsibilities with Nevada Medicaid, Mr. Duarte and Ms. Lawrence are in unique positions to hold personal knowledge about virtually all aspects of the operation of the Medicaid pharmacy program" including "development of historical knowledge." Opp. at 11.  However, Nevada provides no basis for Mr. Duarte's or Ms. Lawrence's supposed personal knowledge regarding any of the particular statements or events identified prior to their tenure at Nevada Medicaid.  As set forth in Defendants' summary judgment papers, Nevada Medicaid employees from the 1980s and 1990s testified they did not share the views espoused in Mr. Duarte's and Ms. Lawrence's declarations.  The paragraphs identified in Defendants' opening papers should be stricken.

*Respectfully submitted,*

 /s/ Carisa A. Klemeyer
Steven A. Kaufman (BBO # 262230)
Brien T. O'Connor (BBO# 546767)
Christopher R. Dillon (BBO# 640896)
Carisa A. Klemeyer (BBO# 655045)
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

*Attorneys for Schering-Plough Corporation & Warrick Pharmaceuticals Corporation*

Dated:  May 2, 2007

**CERTIFICATE OF SERVICE**

    I, Carisa A. Klemeyer, hereby certify that a true copy of the foregoing document was served upon all counsel of record electronically pursuant to Fed. R. Civ. P. 5(b)(2)(D) and CMO No. 2 on this 2nd day of May, 2007, by causing a copy to be sent to LexisNexis File & Serve for posting and notification to all counsel of record.

                                                                  /s/ Carisa A. Klemeyer
                                                                   Carisa A. Klemeyer