# EXHIBIT A
# TAB 5

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 67:
## BACKGROUND ON MEDICARE PAYMENT STRUCTURE[1]

Under the Medicare Part B program, Medicare pays doctors who use Zoladex on Medicare Part B beneficiaries 80% of what the doctors are permitted to charge for Zoladex. The remaining 20% is often referred to as the Medicare beneficiary's "co-pay." The Medicare law, however, does not require Medicare Part B beneficiaries to pay 20%. Rather, the law permits, but does not require, doctors to bill patients up to 20% of what Medicare permits doctors to charge for Zoladex.

In 1997, Congress passed a new law. This law required that the most Medicare could pay doctors for giving Part B drugs, including Zoladex, to Medicare Part B beneficiaries was 80% of 95% of the "average wholesale price" of those drugs. Similarly, the law stated that the maximum amount that a doctor was permitted, but not required, to bill a Medicare Part B beneficiary for a Part B drug including Zoladex, was 20% of 95% of the average wholesale price of the drug.

[Note: At this point, it is unclear if the Court will provide an instruction regarding the construction of "average wholesale price" under the 1997 law. If the Court decides to do so, AstraZeneca reserves the right to comment on any proposed instruction and/or object to such proposed instruction and/or propose additional related instructions.]

## Authority:

42 U.S.C. § 1395cc(a)(2)(A); 42 U.S.C. § 1395u(o) (AWP Provision) ("a physician's, supplier's, or any other person's bill or request for payment for services includes a charge for a drug or biological for which payment may be made … the amount payable for the drug or biological is equal to… 95 percent of the average wholesale price"); 42 U.S.C. § 1395l(a)(1)(A) ("An organization which provides medical and other health services… on a prepayment basis (and either is sponsored by a union or employer, or does not provide, or arrange for the provision of, any inpatient hospital services) may elect to be paid 80 percent of the reasonable cost of services … if the organization undertakes to charge such individuals no more than 20 percent of such reasonable cost"); 42 U.S.C. § 1395l(a) ("Amounts. Except as provided in section 1876 and subject to the succeeding provisions of this section, there shall be paid from the Federal Supplementary Medical Insurance Trust Fund, in the case of each individual who is covered under the insurance program established by this part  and incurs expenses for services with respect to which benefits are payable under this part, amounts equal to… 80 percent of the reasonable charges for the services") (internal citations omitted); 42 U.S.C. § 1395cc (a)(2)(A) (Copayment Provision) ("A provider of services *may* charge such individual or other person… (ii) an amount equal to 20 per centum of the reasonable charges for such items and services (not

---

[1] As the Court is aware, AstraZeneca respectfully disagrees with the Court's ruling on the meaning of AWP in the 1997 law. In re Pharmaceutical Industry Average Wholesale Price Litig., 460 F.Supp. 2d 277 (D.Mass 2006) (Saris, J.). By addressing the possibility of the Court providing an instruction in this regard, AstraZeneca does not intend to suggest that a charge on the Court's construction of AWP is necessary in the trial of Plaintiffs' state law consumer protection claims.

in excess of 20 per centum of the amount customarily charged for such items and services by such provider) for which payment is made under Part B" (emphasis added)); In re Pharmaceutical Industry Average Wholesale Price Litig., 460 F. Supp. 2d 277 (D. Mass 2006) (Saris, J.).

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 68:**
**BACKGROUND ON MEDICARE PAYMENT STRUCTURE 2**

The Plaintiffs contend that Medicare used what the compendia published as the average wholesale price of Zoladex in performing the calculations required by federal law. Plaintiffs contend that the amount published in the pricing compendia was not the average wholesale price of Zoladex computed in the way that the 1997 law required Medicare to compute the maximum. If you determine that the Plaintiffs are correct, then Medicare did not comply with, and violated, the 1997 law.

Mr. Townsend and Mr. Howe contend that they paid their doctors the amounts that Medicare calculated and included on the EOMBs, which, according to Medicare, was the maximum amount their doctors could bill them for Zoladex.

If you determine that Mr. Townsend and Mr. Howe incurred a loss, you must determine what caused the loss. Plaintiffs contend that AstraZeneca caused Plaintiffs' loss. AstraZeneca contends that Medicare is responsible for and caused any loss. Medicare did not compute the so-called "co-pay" as the 1997 law required. AstraZeneca contends that any loss you determine was incurred by Mr. Howe or Mr. Townsend was caused by Medicare.

**Authority:**
Or. Rev. Stat. § 646.605, *et seq* (requiring causation as an essential element of a UTPA claim); Fla. Stat. § 501.201, *et seq* (same); 42 U.S.C. § 1395j-1395w-4.

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 69:**
**PRESUMPTION OF REGULARITY**

Plaintiffs' claims in this case concern the co-payment amounts paid by Medicare Part B beneficiaries. Plaintiffs claim that these co-payment amounts are determined by the Centers for Medicare and Medicaid Services ("CMS") which is part of the federal government of the United States. There exists a deeply rooted and well established rule in the law of the United States called the presumption of regularity. Under the presumption of regularity, the Supreme Court of the United States has recognized that the United States government's actions are presumed to be lawful and correct.

Under federal law, CMS calculates the maximum amount of money Medicare Part B beneficiaries may be charged by their doctors. AstraZeneca does not make this calculation. The CMS calculations were on the EOMB forms sent to beneficiaries. Plaintiffs assert that they paid their doctor's the amounts indicated on their EOMB forms.

In order to prevail, Plaintiffs must prove that CMS's calculations, as indicated on the EOMB forms, were wrong. Therefore, in order to prevail, Plaintiffs must prove that CMS, the federal government agency, did something wrong when calculating those co-payments.

Under the presumption of regularity, however, you must presume that CMS's calculations were correct. For example, the $__ on Mr. Townsend's EOMB is presumed correct. In order to prevail, Mr. Townsend has to prove how CMS calculated $__ and what steps were wrong. The only way you may find that the government did something wrong (and that the calculated co-payment amounts were, indeed, too high, if you determine that they were too high) is if Plaintiffs prove, with evidence, that the government's calculations were wrong. You must come to this conclusion taking into account the deeply entrenched presumption that if a statute gives a government agency responsibility to do something, the presumption is that the government agency acted in accordance with the law. If you find that Plaintiffs cannot prove that the government did something wrong when calculating co-payment amounts, then you must find for AstraZeneca.

**Authority:**
United States v. Chemical Foundation, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); United States Postal Service v. Gregory, 534 U.S. 1, 10 (2001); Citizens to Preserve Overton Park, Inc v. Volpe, 401 U.S. 402, 415 (1971); Hartman v. Moore, 126 S. Ct. 1695, 1705 (2006) (upholding the continued vitality of the doctrine in a private damages action).

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 70:**

The United States Government, through its chief attorney, agreed that the term "AWP" as used in the 1997 Act was not intended to refer to the published AWP contained in the pricing compendia you have heard about.  According to the U.S. Government, the 1997 Act charged CMS with determining the average wholesale price but did not intend that CMS adopt the published AWPs.

I also instruct you that the U.S. Government had information about the price of Zoladex. Specifically, from 1991 on, federal law required drug manufacturers, including AstraZeneca, to report the Average Manufacturer's Price, or AMP, to CMS.  AMP is the average unit price paid to manufacturers by wholesalers for drugs distributed to the retail class of trade (excluding direct sales to hospitals, health maintenance organizations and to wholesalers where the drug is relabeled under that distributor's national drug code number), after deducting customary prompt pay discounts.  AMP is statutorily defined and is calculated from actual sales transactions. Accordingly, the AMP reported to the federal government reflects all cash discounts and all other price reductions that lower the actual price paid by the customer, including, in the case of Zoladex, physician practices.  AstraZeneca has reported AMP data for Zoladex to CMS on a quarterly basis since the first quarter of 1991.

Also from 1991 on, federal law required drug manufacturers, including AstraZeneca, to report to the federal government data known as the "Best Price" of a drug.  The statute defines "Best Price" as "the lowest price available from the manufacturer during the [relevant] period to any wholesaler, retailer, provider, health maintenance organization, non-profit entity, or governmental entity within the United States."  Best Price data reflects all cash discounts, free goods contingent on any purchase requirement, volume discounts, and rebates.  Therefore, I instruct you that AstraZeneca did report this information to the federal government and therefore CMS had this information and could compare those "Best Prices" to the AWP published by third party publishers.

In considering whether Plaintiffs proved that CMS's calculation was wrong, you may consider: (1) that the government knew the statute; and (2) the government had the data AstraZeneca provided concerning AMP and Best Price.

**Authority**
In re Pharmaceutical Industry Average Wholesale Price Litig., 460 F. Supp. 2d 277 (D. Mass 2006) (Saris, J.); 42 U.S.C. § 1396r-8; Section 1927(k)(1) of the Social Security Act, 42 U.S.C. § 1396r-8(k)(1).

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 71:**
**1991-1997 TIME PERIOD**

Under federal law, CMS determines the maximum amount of money Medicare Part B beneficiaries may be charged by their doctors.  AstraZeneca does not make this determination.  Here, Plaintiffs' claims assume that the government's calculations of the co-payments owed by Medicare Part B beneficiaries were based on the average wholesale prices published by third party publications.

It is important for you to know the legal background of the term average wholesale price.  As you know, the Plaintiffs in this class assert claims as far back as 1991.  From 1991 until 1997, the statute directing CMS to calculate co-payment amounts physicians could bill patients for drugs like Zoladex did not use the term average wholesale price.  Instead, the statute instructed that Medicare generally pay a "reasonable charge" and left it up to the federal government agency, CMS, to determine how it would choose to make the calculation.  The federal agency passed regulations in accordance with federal laws instructing that payments for drugs like Zoladex should be based on the lower of the estimated acquisition cost or the average wholesale price of the drug.  The federal government had a variety of tools and resources to use in order to determine an estimated acquisition cost of drugs like Zoladex.

For the period of time between 1991 and 1997, Plaintiffs must prove that the federal government did something wrong in calculating co-payment amounts.  I instruct you that federal law prevails over any state laws which may say something that is different or in conflict with what federal law says.  I also remind you of the presumption of regularity – the doctrine whereby you are to assume that the government discharges its duties properly.  Therefore, for the 1991-1997 time period, Plaintiffs must overcome the presumption of regularity and also must show that in calculating co-payment amounts based on published AWP the government did something that was not permitted by the statute.

**Authority:**
42 U.S.C. §§ 1395*l*(a), 1395u(o); 42 C.F.R. § 405.517 (1992); In re Pharmaceutical Industry Average Wholesale Price Litig., 460 F. Supp. 2d 277 (D. Mass 2006) (Saris, J.); United States v. Chemical Foundation, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties"); United States Postal Service v. Gregory, 534 U.S. 1, 10 (2001); Citizens to Preserve Overton Park, Inc v. Volpe, 401 U.S. 402, 415 (1971); Hartman v. Moore, 126 S. Ct. 1695 (2006) (upholding the continued vitality of the doctrine in a private damages action).

### DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 72:
### TIME LIMIT TO CONTEST CMS'S CO-PAYMENT CALCULATION

Plaintiffs in this case were informed of their responsibility for co-payment amounts by invoices from their physicians and Explanation of Medicare Benefits ("EOMBs") forms sent to them by CMS.  EOMBs set forth CMS's calculation of what federal law allowed Plaintiffs' physicians to bill them for Zoladex.  These EOMBs, which are mailed to Medicare beneficiaries, inform beneficiaries that they may contest the calculations made by CMS if they believe those calculations to be incorrect.  A Medicare beneficiary has 6 months during which he or she may contest those calculations.  Federal law dictates that after this period of time has passed, if a beneficiary has not taken any action, the calculation made by CMS is deemed final and binding on the beneficiary.  Federal law prevails over any state law which may provide to the contrary.  Plaintiffs must prove that they each contested the calculation made by CMS during the period of time allowed by federal law.  If you find that Plaintiffs have not proved that Mr. Howe and Mr. Townsend contested the co-payment determined by CMS and communicated to them in their EOMBs within 60 days then CMS's determination is considered final and binding under federal law and you must find for AstraZeneca.

**Authority:**
42 C.F.R. § 405.517(b); 42 C.F.R. § 405.801; 42 C.F.R. § 405.806; 42 C.F.R. § 405.807(c) ("Time of filing request. (1) The carrier must provide a period of 6 months after the date of the notice of the initial determination within which the party to the initial determination may request a review. (2) The carrier may, upon request by the party, extend the period for requesting the review of the initial determination.").