**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) |
| | MDL DOCKET NO. 1456 |
| | Civil Action No. 06-CV-11337 |
| | Lead Case No. 01-CV-12257 |
| THIS DOCUMENT RELATES TO: *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc., et al., v. Abbott Laboratories, Inc., et al.* | Judge Patti B. Saris |
| | Chief Magistrate Judge Marianne B. Bowler |

**DEFENDANT ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF UNITED STATES OF AMERICA'S SECOND MOTION TO COMPEL**

The motion to compel filed by the Government, and joined by its co-plaintiff Ven-A-Care, should be denied. Despite enjoying more than 10-years of one-sided fact investigation before unsealing its complaint against Abbott (including serving subpoenas on Abbott in 1996, 1997 and 2000), the Government has pursued a shotgun approach to discovery in this case – blanketing Abbott with boundless demands for documents and other information that have no relation to the allegations in the complaint, without regard for the burden such requests place on Abbott. This motion is emblematic of the Plaintiffs' approach, as they move to compel Abbott to produce documents relating to, among other things, a plea agreement entered into by another company (TAP) about a drug (LUPRON®) that is not at issue in this case (never mentioning that Ven-A-Care lost its bid to obtain these same documents in its pending litigation against Abbott in Texas). There are more than enough points of legitimate dispute in this matter to keep both sides busy; the sort of discovery Plaintiffs seek here, however, is designed merely to heap burden and expense on Abbott and to strain the reasonable time limits set by this Court for the completion of discovery. It should not be allowed.

**I.      FACTUAL BACKGROUND**

In its complaint, the Government alleges that, from January 1, 1991 to January 2001, Abbott reported inflated drug prices for four drugs (dextrose solutions, sodium chloride solutions, sterile water, and vancomycin), in an effort to create a profit spread for customers, who would be reimbursed by Medicare and Medicaid for more than what they actually paid for the drugs.  (*See* Complaint).  Although the Government's complaint is, by its own terms, circumscribed with respect to the subject matter, operative time period, and the drugs at issue, the discovery requests the Government has propounded on Abbott have been anything but limited.  To date, the Government has served 97 requests for production that, individually and collectively, are so broad as to cover virtually *any* document in Abbott's possession about *any* of its drugs.

Abbott has cooperated fully in all legitimate discovery efforts.  Indeed, to keep the case moving forward as quickly as possible, Abbott made an extensive production of more than 250,000 documents as part of its Rule 26(a)(1) initial disclosures – going well beyond what the rule requires.  (*See* Winchester Ltr. 03/23/07, Ex. 1, at 1.)  In addition, Abbott has produced or offered to produce *all* responsive documents that specifically mention the four drugs named by the Government in its Complaint (the "Subject Drugs") during the claimed time period; *all* responsive documents that are related to the Subject Drugs, even if those drugs are not mentioned by name (*i.e.*, general sales or marketing information for classes of drug products that would include the Subject Drugs); and *all* responsive documents, if any, that would arguably establish the same pattern and practice alleged by the Government as to the Subject Drugs.  *See id*. at 2.  Far from frustrating discovery, as the Government falsely implies, Abbott has made its process transparent by producing a 30(b)(6) witness who testified for two days in response to Plaintiffs' questions about Abbott's various efforts to preserve, collect, and produce documents

over the past decade in response to this and other AWP-related matters.  No legitimate avenue has been foreclosed by Abbott, and its effort to locate and produce relevant documents continues.

What Abbott has refused to do, however, is accede to the Government's demands that Abbott search for and produce documents and information that have nothing to do with the allegations at issue in this case.  In several conferences over the past few months, Abbott has attempted, to little avail, to work with the Government to narrow the scope of these requests to ensure that relevant information is produced while minimizing the burden on Abbott.  Refusing to narrow, or even to discuss, the breadth of its requests, the Government elected instead to file the instant motion.

## II.  ARGUMENT

### A.  Standard of Review

Rule 26(b)(1) provides, in relevant part, that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  FED. R. CIV. P. 26(b)(1).  As noted by the First Circuit:

> Management of discovery is a largely empirical exercise, requiring judges to balance the inquirer's right to know against the responder's right to be free from unwarranted intrusions, and then to factor in systemic concerns. *Limits can best be set case by case.* Although judicial discretion is not unrestrained-courts must apply a set of general principles, see, e.g., Fed. R. Civ. P. 26-parties have a correlative obligation to tailor interrogatories to suit the particular exigencies of the litigation. *They ought not to be permitted to use broad swords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up.*

*Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) (emphasis added); s*ee also Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (Under Rule 26(b), "limitations come into existence when the inquiry touches upon the irrelevant").

It is axiomatic that relevancy under Rule 26 turns directly on the claims alleged in the complaint.  *See* FED. R. CIV. P. 26(b); *Mack*, 871 F.2d at 187.  Here, Plaintiffs' claims involve an alleged scheme to defraud the United States Government with respect to its reimbursement of certain enumerated drugs, over a certain delineated time frame, under Medicare Part B and Medicaid.  Plaintiffs' own claims thus give rise to Abbott's objections, because Plaintiffs seek discovery about a host of subjects that are neither pled in, nor relevant to, their Complaint.

> **B.    Plaintiffs Are Not Entitled to the Requested Information, and Their Motion to Compel Should Be Denied.**
>
> > **1.    Information Relating to Abbott's Calculation of Average Manufacturer's Price Is Irrelevant, As Plaintiffs Have Asserted No AMP Claims.**

Plaintiffs first claim that they are entitled to conduct discovery into how Abbott calculates the Average Manufacturer's Price ("AMP") that is reported to the Government as a requirement of the Medicaid Rebate Statute.  42 U.S.C. § 1396r-8.  (Mot. at 8-9.)  One thing should be clear from the outset – Plaintiffs have made *no claim* in their Complaint based on Abbott's reporting of AMP, or the Medicaid Rebate program.  Thus, one of two things must be true; either Plaintiffs are seeking to rifle through Abbott's corporate files purely to satisfy their boundless curiosity and thereby increase the burden and cost to Abbott, or they are using the discovery process to try to find evidence supporting new claims they have not alleged.  Neither reason can justify their motion to compel.  *See, e.g.,* Fed. R. Civ. P. 26(b)(1), Advisory Comm. Note (2000) (parties to a civil action "have no entitlement to discovery to develop new claims or defenses that are not already included in the pleadings").

Unwilling to admit their true aims, Plaintiffs instead suggest (*id.* at 9) that *Abbott* put AMP at issue by having the temerity to point out that the Government has, for years, had actual knowledge of the AMP's reported by Abbott for the very products at issue in this case – proving

beyond a doubt that the Government was aware that the actual pricing of these products was in every instance lower than the compendia-published AWP figure that the Government chose to erect and maintain for decades as the standard for reimbursement under Medicare and Medicaid. (*See* Abbott's Memorandum of Law in Support of its Motion to Dismiss at 12.)[1]  The fact that the Government had this information at its disposal is unquestionably relevant, as it undercuts the fundamental claim that Abbott somehow defrauded the Government into believing that the published AWP represented an actual acquisition cost.

Like a hearsay statement introduced to show its effect on the listener, however, the probative value of Abbott's reported AMP lies not in how that AMP was *calculated*, nor even if it was correct, but rather is derived from the fact that an AMP was reported and that AMP was always lower than the published AWP price that the Government now claims it relied upon.  The Government cannot and does not contest these facts, which can easily be established at trial through documents and information already in the Government's possession.  Thus, there is no reason to permit Plaintiffs to have wide-ranging discovery into how Abbott actually calculates its AMP.  At best, it is a fishing expedition; at worst, it is an impermissible effort by Plaintiffs to use discovery in this case to investigate other, unrelated claims that they have not asserted.

### 2. Plaintiffs Are Not Entitled to the Confidential Personnel Files of Abbott's Employees.

A similar example of Plaintiffs' abuse of the discovery process is their insistence on examining the private personnel records of every member of the Abbott Alternate Site sales force for more than a decade.  (Mot. at 10-11).  When Plaintiffs first articulated their desire to confirm

---

[1] The Government also points out that Abbott initially propounded a Request for Admission to the Government relating to Abbott's reported AMP's, and argues that this too makes the underlying AMP calculations relevant.  (Mot. at 9.)  As the Government also must concede, however, that request by Abbott was withdrawn and was never responded to by the Government.  This withdrawn request is far too thin a reed to support the Government's motion to compel.

whether Abbott rewarded its sales employees based on their success in "marketing the spread" or the like, Abbott offered to accommodate this request by producing documents detailing Abbott's policies for employee compensation, including incentives.  (*See* Winchester Ltr. 02/05/07, Ex. 2, at 4.)  Again showing their stripes, however, Plaintiffs refused to accept this, demanding instead that Abbott search for and produce the private personnel files of every employee over the years – including how much money they made and their workplace evaluations – based upon no more than Plaintiffs' say-so that these documents might contain relevant information.  (*Id*.)  Though it forms the exclusive basis for most of their requests, Plaintiffs' mere say-so is not enough to support a motion to compel.  *See, e.g., Caouette v. Officemax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005) ("[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance"); *Daniels v. Am. Power Conversion Corp.*, No. 05-459ML, 2007 U.S. Dist. LEXIS 10858, at *3-4 (D.R.I. 2007) (same).

Discovery is not limitless; it is instead a balancing act, pitting the likelihood that relevant, admissible evidence will be uncovered against the burden and expense to the party being tasked with production.  *E.g.*, *Briddell v. St. Gobain Abrasives, Inc.*, 223 F.R.D. 57, 60 (D. Mass. 2005) ("a plaintiff will not be permitted an open-ended review of corporate records" in order to establish its claims).  Where the burden outweighs the likely benefit, the discovery should not be had.  See FED. R. CIV. P. 26 (b)(2)(iii) (highlighting the limit on discovery when the burden or expense outweighs any likely benefit); see also *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 400  (1st Cir. 2005) (Rule 26 requires a balance of the burden of proposed discovery against the likely benefit.).  Such is the case here.

On the one hand, Plaintiffs state generically that they are entitled to know about the marketing of the drugs at issue, and in particular whether Abbott marketed its products based

upon the "spread" between a customer's acquisition cost and the published AWP selected by the Government for reimbursement. (Mot. at 10.) Yet this broad proclamation does not address the particular issue before the Court, which is whether Plaintiffs can justify a search of the private personnel files of Abbott's employees. For instance, Abbott believes it is entitled to discover exactly what the Government (in particular CMS and its predecessor HCFA) knew about AWP and how it related to actual acquisition cost, as these were the entities charged with administering the federal Medicare and Medicaid programs. Based on this broad interest, does Abbott have a right to review the personnel files of every CMS and HCFA employee over the years?

Even setting aside whether the Government would ever agree that corollary discovery of its own employees is appropriate, the fact is that Plaintiffs have more than adequate means to investigate whether Abbott "marketed the spread" without rifling through Abbott's personnel files. As it made clear during the hearing before this Court on February 27, 2007, Abbott has agreed to produce any documents from its corporate records during the relevant time period, regardless of division, that arguably relate to the supposed pattern or practice alleged by the Government. Abbott also has offered to produce to Plaintiffs the documents relating to Abbott's policies for the compensation of its employees. That is more than enough to satisfy any legitimate discovery interest Plaintiffs might have. To go further, and force Abbott to disclose the actual employee personnel records, is unwarranted, particularly when Plaintiffs cannot offer a shred of evidence to even suggest that an Abbott employee was compensated based on "marketing the spread."

The slim chance that employee records *might* contain or lead to relevant information is hardly sufficient to justify their disclosure when balanced against the clear burden to Abbott and, as important, to the employees themselves. In terms of burden, the Plaintiffs seek records

spanning more than a decade beginning in 1991.  Over time, that amounts to dozens, if not hundreds, of employees.  In addition, these files contain sensitive information about Abbott's employees, who are not parties to this case – including their finances and their private performance evaluations, which may disclose a host of personal information that the Plaintiffs have no business viewing.  Plaintiffs simply cannot justify the invasion of forcing Abbott also to produce personnel files.

### 3. Plaintiffs Are Not Entitled to Irrelevant Documents About TAP.

Plaintiffs seek to compel Abbott to produce "[a]ll documents relating to or otherwise regarding the impact of the 2001 TAP Pharmaceuticals criminal plea and civil settlement on the prices or pricing practices for [Abbott's] Pharmaceuticals." (Mot. at 12.)  One thing they conveniently fail to mention, however, is that the plaintiffs in the Texas action against Abbott (where Plaintiff Ven-A-Care is also the relator) sought this same information, but that this request was denied by the Texas court.  (*See* Defendant's Response to Plaintiff's First Amended Rule 199.2(b)(1) Deposition Notice, Ex. 3 at 16 and Order on Defendants' Responses and Objections to Plaintiff's First Amended Rule 199.2(b)(1) Deposition Notice with Document Request, Ex. 4, at 4.)  The result should be no different here.

First and foremost, the information at issue concerns allegations made against TAP Pharmaceutical Products Inc. and relates exclusively to TAP's drug LUPRON®.  Yet TAP is not a defendant in this case, nor have Plaintiffs asserted any claims relating to LUPRON®.  The mere fact that TAP is a joint venture co-owned by Abbott changes nothing, for as this Court aptly has noted, Plaintiffs' limited, four-drug complaint does not even entitle them to discovery about all of *Abbott's* drugs.  (02/27/07 Hearing Tr., Ex. 5 at 8-9.)  It certainly cannot be used to bootstrap discovery about another company's drugs.

Second, contrary to Plaintiffs' pat contentions, this request has nothing to do with discovering what actions Abbott may have taken with respect to its own pricing policies and practices at a point in time after TAP entered into its plea agreement. (Mot. at 13.) That factual information is covered by any number of other pending requests, and Abbott has agreed to provide all non-privileged documents relating to pricing of the subject drugs in the relevant time period. Since this information already is being provided, Plaintiffs' further request for "impact" documents (whatever that means) can only be directed to what if any evaluation Abbott may have undertaken with respect to its own legal rights and obligations in view of the resolution of charges made against TAP. As Plaintiffs well know, however, any such evaluation would be undertaken in conjunction with counsel in the provision of legal advice and would therefore constitute privileged communications that Plaintiffs have no right to discover.

Third, Plaintiffs are wrong to contend that such "impact" documents already have been produced by Abbott in other coordinated state cases. In the actions that Plaintiffs cite (*Walker* (NJ), *Stetser* (NC), and *Swanston* (AZ)), there were claims asserted in the respective complaints dealing directly with LUPRON®, TAP was actually a defendant (unlike here), and TAP – not Abbott – produced the documents relating to LUPRON®. Those cases did not deal with, and do not support Plaintiffs' request for, disclosure of documents by Abbott relating to any "impact" the TAP plea may have had on Abbott's business practices. Moreover, even if Abbott had produced such documents in other actions where LUPRON® was at issue, that would not mean that those documents should automatically be produced to the Plaintiffs here. To the contrary, the Court already has made clear that Plaintiffs are not entitled to broad discovery about drugs that are not asserted in their Complaint. (Ex. 5 at 8-9.)

### 4.        Plaintiffs' Motion With Respect to Vancomycin Is Misplaced.

In the section of their motion addressing Vancomycin, Plaintiffs offer a lot of smoke, but little if any fire. Vancomycin is one of the Subject Drugs charged in Plaintiffs' complaint, and Abbott therefore has agreed to produce all non-privileged documents during the relevant time period relating to the marketing, pricing, and sale of Vancomycin. (*See* Winchester Ltr. 03/30/07, Ex. 6, at 3.) Abbott's position has been stated clearly to Plaintiffs, so their claimed confusion on the issue can only be self-imposed.

The only real dispute that appears to remain with respect to these documents concerns the applicable timeline for discovery. The Government's complaint charges specifically that Abbott's alleged misconduct took place between January 1991 and January 2001. (*See* Cmplt.) Abbott has agreed to produce its non-privileged documents relating to the marketing, pricing and sale of Vancomycin during this period, and even agreed to extend the period for production through December 31, 2001 pursuant to what it believed was a negotiated resolution of this dispute over time period (the Government later reneged). The Government now asserts that, despite the clear allegations in its complaint, it is entitled to force Abbott to search anew for Vancomycin-related documents extending back to 1988. Abbott disagrees.

Critically, the Government has already put Abbott through this exercise once. In 1996, the Government served Abbott with a Civil Investigative Demand seeking, among other things, marketing and sales documents relating to Vancomycin dating back to 1986. (*See* Ex. 6, at 3.) Abbott responded to this CID in a timely manner and produced documents to the Government. Abbott also has agreed to provide Plaintiffs in this case with any pre-1991 Vancomycin documents that have been produced in other litigation matters. There is no reason, however, why Abbott should be compelled now, more than 10 years later, to go back and search again for decades-old information that pre-dates the start of the alleged misconduct charged by the

Government. The Government's request for Vancomycin documents before 1991 (which appears to be the only real Vancomycin dispute identified in the instant motion) should be denied.

### 5. Plaintiffs' Request for Documents Relating to Thousands of Small Alternate Site Customer Should Be Denied.

Finally, Plaintiffs have requested documents about the business relationship (contracts and the like) between Abbott and customers of the Alternate Site business unit of Abbott's former Hospital Products Division. (Mot. at 17.) This matter too was litigated by Plaintiff Ven-A-Care in the Texas litigation, and the court there ordered Abbott to produce the requested information only for customers in Texas and for Abbott's "national accounts" – the approximately 150 customers who collectively accounted for about 80% of Alternate Site sales. When Plaintiffs in this action raised the same request, Abbott proposed a compromise, based on the Texas ruling, whereby Abbott would provide all of the "national accounts" information to Plaintiffs, thereby giving them the contracts and other documents they would need to examine Abbott's business relationship with its key Alternate Site customers. (*Id.*) As is their custom, Plaintiffs refused this effort to reach a reasonable compromise, and now move to compel Abbott to produce this information for *all* Alternate Site customers, including those accounting for the bottom 20% of sales. This request should be denied.

Once again, the burden to Abbott from complying with this request greatly outweighs any potential benefit. The Government attempts to downplay the burden to Abbott by suggesting that their request only encompasses 450 additional customers beyond those 150 "national accounts" that Abbott already has agreed to produce. (*Id.*) In its race to the courthouse, however, the Government just did not get its facts straight. In the relevant time period, Alternate Site had approximately 18,000 total customers. The vast majority of these customers were part

of buying groups known as group purchasing organizations (GPO's), which would contract directly with Abbott on behalf of their members. Abbott Alternate Site contracted with a number of different GPO's (representing about 13,000 customers) and also contracted directly with about 6,000 individual customers that were not part of a GPO. (*Id.*)

As discussed above, the key "national account" customers that made up the top 80% of Alternate Site sales were a relatively small group of about 150 high-volume purchasers. (*Id.*) In stark contrast, the bottom 20% of Alternate Site sales were made to a very large group of low-volume purchasers. This number is not 450, as Plaintiffs incorrectly suggest in their motion, but is instead more like 6,000 customers scattered throughout the United States.[2]

Plaintiffs have offered no principled reason why Abbott should be forced to undertake the burden and expense of searching for and producing these thousands upon thousands of low-volume customer files. To the contrary, Plaintiffs state right in their motion that "these small purchasers would presumably be the buyers who pay the highest prices for the Subject Drugs, and for whom the spread, therefore, *would not likely be marketed*." (Mot. at 17 (emphasis added).) Given Plaintiffs' own expressed expectation that this exercise will *not* yield relevant evidence about Abbott's supposed efforts to "market the spread," their motion to compel must be denied.

## III.   CONCLUSION

For all of these reasons, Abbott respectfully requests that Plaintiffs' motion to compel be denied in its entirety.

---

[2] It seems that Plaintiffs may have been confused about the actual number of customers at issue. This confusion might have been avoided had the Plaintiffs been willing to discuss this issue before running to Court with their motion. Abbott made several attempts to determine the metes and bounds of the Plaintiffs' request and to discern whether any compromise could be made short of forcing Abbott to search for and produce thousands of customer files, but Plaintiffs would not even discuss it. (*See, e.g.,* Ex. 1; Ex.2; Ex.3.)

Dated: May 7, 2007                                  Respectfully submitted,

                                                               ABBOTT LABORATORIES INC.

By:  /s/ Jason G. Winchester

James R. Daly
Tina M. Tabacchi
Jason G. Winchester
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 7, 2007, the foregoing **ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF THE UNITED STATES OF AMERICA'S SECOND MOTION TO COMPEL** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Carol P. Geisler