# EXHIBIT 1

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number: (312) 269-4373
jgwinchester@jonesday.com

JP741122
080024-024348

March 23, 2007

<u>VIA E-MAIL</u>

Renee Brooker
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D Street N.W.
Ninth Floor
Washington, DC 20004

Re: U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.; 06 CV-11337

Dear Renee:

I have reviewed your correspondence of March 7, 2007, as well as your follow-on communications raising the same issues. As part of our ongoing dialogue relating to discovery, and in an effort to respond to your concerns, I respond below.

## Status of Abbott's Document Production

Your repeated efforts to characterize Abbott's document production in this case as minimal are unfounded. Abbott has produced nearly 250,000 pages of documents to the Government, as well as electronic data. As we have told you repeatedly, this represents the substantial majority of documents that we believe are relevant and responsive to DOJ's requests. The fact that Abbott produced most of these documents as part of its initial disclosures is something you seek to cast as a negative, but that argument simply will not hold. Would it have been better in DOJ's view for us to just parcel out the documents 10,000 pages a week? We believe that the case has been best served by all the effort that Abbott went to in order to get the majority of documents assembled and produced early in the case as part of its initial disclosures.

Abbott's current, ongoing efforts to investigate and assemble additional documents relating to the DOJ's pending requests was a subject that DOJ inquired about in great detail during the deposition of Ellen Klaus last week. There is no need for me to recount her testimony here.

## Time Period

You are correct that Abbott initially objected to producing documents after January 2001, based on the allegations in the Government's complaint. During our meet and confer

CHI-1580751v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Renee Brooker
March 23, 2007
Page 2

conferences on this subject, however, the Government proposed a compromise position whereby Abbott would produce documents through December 31, 2001, and Abbott accepted this compromise as the good-faith resolution of our dispute. (*See* my letter to you of February 5, 2007). Your letter now asks for documents extending through 2003. Is DOJ reneging on our resolution of the timing issue?

Vancomycin

Although the Government's requests are so boundless as to make a reasoned analysis nearly impossible, Abbott recognizes that Vancomycin is one of the Subject Drugs, and we have agreed to produce documents relating to all Subject Drugs in accordance with our various objections as stated in our discovery responses and as described in my letter of February 5. You have not articulated a specific concern in your letter, so it is difficult for me to respond with any more specificity. If there is something in particular you want to know, I am happy to discuss it with you.

Non-Subject Drugs/PPD

I respectfully disagree with your view of the proceedings before Judge Saris on February 27, 2007. Far from overruling in blanket fashion Abbott's objections relating to discovery about non-subject drugs, as you suggest, Judge Saris made it perfectly clear on numerous occasions during the hearing that DOJ is "not entitled to documents on any single drug if you haven't charged it" (Transcript at 9) and that DOJ "can't use discovery as a fishing expedition" (*id.* at 15). *See also id.* (having sued on four drugs, DOJ "can't use the discovery . . . to get another fifteen drugs"); *id.* at 16 (instead, DOJ has "got to be able to have a good-faith basis for saying they were defrauded or there was false claims with respect to the other fifteen drugs"); *id.* at 25 ("You can't have a hundred documents relating to a hundred drugs when you're suing on four"); *id.* at 29 ("I'm not simply going to say you're across the board entitled to every document they produced in every suit, even if it involves drugs that have nothing to do with yours. That may be overly broad. It may be unreasonable.")

Abbott already has agreed to produce (i) responsive documents relating specifically to the Subject Drugs; (ii) documents that would apply to the Subject Drugs even if they are not named specifically, such as general HPD marketing plans; and (iii) documents that relate to other HPD drugs to the extent that such documents concern what the Government refers to as "marketing the spread." Based on the February 27, 2007 hearing, we also understand the Court to have determined that DOJ is entitled to any PPD documents that might concern "marketing the spread." (*E.g., id.* at 24.) Abbott will produce any such documents consistent with the Court's direction.

We also understand that there is some process that Mr. Breen may pursue with respect to presenting certain types of documents to the Court from the Texas litigation, for a determination

CHI-1580751v1

JONES DAY

Renee Brooker
March 23, 2007
Page 3

whether they ought be produced in this matter as well. (*Id.* at 12-13.) Abbott will of course abide by a final determination with respect to such documents.

Customer Information

Abbott offered to produce to you contracts relating to those customers that accounted for the top 80% of sales through Alternate Site. We also informed you that the remaining 20% of sales are attributable to a group comprised of literally thousands of smaller accounts. As we related, it would be a considerable burden to Abbott to search for and review documents for these thousands of customers. The Government has suggested no compromise, nor sought to identify what specific information it seeks from these accounts that might allow us to think creatively about alternative ways to get such information to you while minimizing the burden to Abbott to the greatest extent possible. For instance, if the Government wants to determine the pricing terms for these accounts, we might be able to investigate that issue in another way. Can the Government narrow or focus its request in any way, or are we at an impasse?

Compensation of Sales Force

Abbott has offered to produce documents that reflect its policies for compensation of employees. Abbott continues to assert, however, that the Government's request that Abbott produce the actual personnel files of all of its field sales force over the years showing the amount of each person's compensation and their employment reviews is unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence.

Field Sales Force Files

Ellen Klaus testified about the status of Abbott's investigation into this issue.

Lobbying Documents

Abbott has identified certain lobbying documents, which are being reviewed to determine whether they are relevant and responsive to the Government's requests. Once that review is complete, which we estimate will be in the next 2 to 3 weeks, we will produce any such relevant, responsive documents. Ellen Klaus also testified to Abbott's continuing investigation in this regard.

Home Infusion Services

Abbott has begun its production of HIS documents to the Government, and Ellen Klaus testified about Abbott's continuing investigation relating to this subject. We will produce additional HIS documents and data to DOJ. At this time, I cannot give you a precise date for this production, but we are moving as quickly as we can to gather this information.

CHI-1580751v1

JONES DAY

Renee Brooker
March 23, 2007
Page 4

### AMP Documents

Abbott stands by its objections with respect to the Government's request for documents and information relating to the way in which Abbott calculates AMP.

### TAP Documents

I do not see where in the transcript of the February 27, 2007 hearing that Judge Saris addressed Abbott's objections with respect to the production of TAP-related documents in this case, as your letter implies. If you can point me to a passage of the transcript, I am happy to review it. Otherwise, given that the Government has yet to articulate any basis upon which documents related to a separate company and about a product not at issue in this case are relevant here, Abbott's objections stand.

Sincerely,

s/ Jason G. Winchester

cc:   James R. Daly
      Carol Geisler
      Ann St. Peter-Griffith
      Mark LaVine
      Jim Breen
      Gejaa Gobena

CHI-1580751v1