# EXHIBIT 6

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number: (312) 269-4373
jgwinchester@jonesday.com

JP741122
080024-024348

March 30, 2007

VIA E-MAIL

Renee Brooker
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D Street N.W.
Ninth Floor
Washington, DC 20004

    Re:    U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.; 06 CV-11337

Dear Renee:

This letter responds to your correspondence of March 28, 2007.

Status of Abbott's Document Production

    This is a fairly straightforward issue, confounded only by your apparent need to lace letter after letter with groundless invective and innuendo. Setting aside the rhetoric, the fact remains that, quite unlike the situation with the Government's production to Abbott, Abbott has made substantial progress in completing its document production, and has produced the majority of relevant, responsive documents. As I made clear in my letter of March 23, Jones Day is currently reviewing certain additional documents that have been provided by Abbott, and our plan is to complete that review within the next 2-3 weeks and make a supplemental production to the Government. My letter, and Ms. Klaus' deposition testimony, also outlined for you certain additional areas where Abbott is conducting an ongoing search for any additional, responsive materials that have not already been produced to the Government.

Time Period

    In an effort to refresh your recollection, during our meet and confer conference on January 12, 2007, we talked specifically about Abbott's objection to producing documents dated after January 2001, based on the time frame alleged in the Complaint. The Government proposed to resolve the issue if Abbott would agree to produce documents through December 31, 2001. When we met and conferred again on January 22, 2007, I indicated that Abbott would agree to this proposal. We thus considered the issue to be resolved, as reflected in my letter to

CHI-1581468v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Renee Brooker
March 30, 2007
Page 2

you of February 5, 2007. In light of these facts, I ask again whether the Government will stand by its earlier position.

Vancomycin

The only remaining dispute I am aware of regarding Abbott's production of documents relating to the marketing and pricing of Vancomycin concerns timeline. As to pre-1991, we believe that is outside the scope of the Government's case and that Abbott should not be forced to conduct an entirely new search for such aged documents, particularly when Abbott already responded to the 1996 CID, which requested Vancomycin documents dating back to 1986. As for documents after December 31, 2001, please see the discussion above. It is also possible that certain documents relating to Vancomycin have been withheld on the grounds of some applicable privilege, but any such designation would be disclosed to the Government in our privilege log. I am aware of no other basis on which Abbott is refusing to produce Vancomycin marketing/pricing documents.

Alternate Site Sales Force

As we told you during our meet and confer conferences, we are attempting to determine the numbers (and identities) of Alternate Site sales personnel as far back as we can through the relevant period. Ms. Klaus testified to the status of that effort. Once we complete that investigation, we will be able to better judge any issues of burdensomeness.

Customer Information

Your letter suggests that the Government has limited its request for documents relating to the thousands of customers that make up the bottom 20% of Alternate Site sales. (See p. 3, item 5 of your letter.) In what way has the request been limited? I need to understand the Government's position in order to respond.

Compensation of Sales Force

Abbott stands by the position articulated in my letter to you of March 23, 2007.

AMP Documents

Abbott stands by its objections with respect to the Government's request for documents and information relating to the way in which Abbott calculates AMP. There is no inconsistency in Abbott's position in this regard. The fact that AMP was reported to the Government and is a figure clearly below AWP is directly relevant to the Government's knowledge of pharmaceutical pricing and undermines its allegations of fraud. This is true without regard to the method by which any such AMP was calculated.

CHI-1581468v1

JONES DAY

Renee Brooker
March 30, 2007
Page 3

TAP Documents

     Despite my specific and repeated request, the Government still refuses to state any basis as to why documents relating to TAP's criminal and civil proceedings relating to Lupron® bear any relevance to this case. Our objections stand.

IMS Data

     Abbott has IMS data that is responsive to one or more of the DOJ's requests (e.g., No. 55 in Second Request). As stated in our formal responses, however, this information is proprietary to IMS, and the DOJ will need to reach an agreement with IMS and Abbott in order for us to grant access to the material. We have not heard further from DOJ on this point. Please let us know how you wish to proceed.

               \*    \*    \*    \*

     Finally, the objections Abbott raised to burdensomeness were, and remain, well founded. Thus, I disagree with the gratuitous statements made in the closing of your letter. Please let me know if you would like to discuss any of these issues further.

                        Sincerely,

                        s/ Jason G. Winchester

cc:    James R. Daly
        Carol Geisler
        Ann St. Peter-Griffith
        Mark LaVine
        Jim Breen
        Gejaa Gobena

CHI-1581468v1