**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| _____ | CIVIL ACTION NO. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| | |
| *State of Montana v. Abbott Labs Inc., et al.,*
*02-CV-12084-PBS* | |
| | |
| *State of Nevada v. American Home Prods.*
*Corp., et al.,*
*D. Nev. Cause No. CV-N-02-0202-ECR* | |

**DEFENDANT IMMUNEX CORPORATION'S REPLY IN SUPPORT**
**OF ITS INDIVIDUAL MOTION FOR SUMMARY JUDGMENT**
**AGAINST THE STATES OF NEVADA AND MONTANA**

The opposition brief of the States of Montana and Nevada offers no real proof to dispute the principal and dispositive facts established by Immunex Corporation's Individual Motion for Summary Judgment:  (1) Immunex made no representations to the States regarding its drug prices, much less misrepresent those prices to the States; (2) the States received AWPs from a third party publisher, First DataBank, to which Immunex ceased reporting AWPs in 1995, and (3) the States did not suffer any injury arising from Immunex's drugs, particularly Immunex's multi-source drugs.  Lacking evidence to genuinely dispute these points, the States' Opposition instead occupies itself with misleading statements of fact as to Immunex's drug pricing practices, and misstatements of law as to the standards for summary judgment under the statutes at issue.  The Court should

grant summary judgment in favor of Immunex on all claims, but at a minimum, on all claims relating to the Immunex multi-source medicines leucovorin calcium, methotrexate sodium, and Thioplex.

## I.     ARGUMENT

### A.     The States Offer No Evidence To Establish that Immunex Communicated With or Misled Montana or Nevada.

As set forth in Immunex's Individual Motion for Summary Judgment,[1] there is simply no evidence that Immunex communicated directly with the States, much less evidence that Immunex engaged in any deceptive communications with the States.  Mot. at 3, 6.  The States do not contend otherwise and certainly do not submit evidence of such communications from Immunex.  Instead, the States fall back on a vague allegation that the States' use of AWP was "foreseeable" to Immunex.  Opp. at 4.  But even the "proof" the States rely on to support this allegation is lacking.  The document offered indicates that "Medicare and other payors" used third-party publications for reimbursement and does nothing to show any Immunex involvement in the States' reimbursement methodologies or practices.  *See* MT/NV Resp. to Immunex 56.1 Stmt. ¶ 8, Ex. 16 (Docket No. 4096). Immunex's alleged deception of Montana and Nevada is the lynchpin of the States' theory of liability.  Mont. Compl. ¶¶ 7; 14-16; Nev. Compl ¶¶ 7; 14-16.  Yet, after five years of litigation, the States cannot offer a single relevant communication from Immunex to prove up that point.

More pertinently, the States offer nothing to dispute the fact that as of 1995, Immunex ceased reporting AWP to third-party publishers and instead reported only "list price."  *See* Immunex 56.1 Stmt. ¶ 8, Ex. D (Docket No. 3667).  The States admit that the evidence shows that Immunex reported only "list price" after 1995, but nonetheless claim that this evidence is "equivocal."  *See* MT/NV Resp. to Immunex 56.1 Stmt. ¶ 8, Ex. 16;

---

[1] Defendant Immunex Corporation's Individual Memorandum of Law in Support of Summary Judgment Against the States of Nevada and Montana, filed February 8, 2007 (Docket No. 3666).

Opp. at 4.  The States do not put in any evidence of their own to show that Immunex reported AWPs after 1995.  Instead, the States suggest that because third-party publishers that were not a source of AWPs for Montana or Nevada Medicaid – Red Book and MediSpan – may have based AWP on list price, that First DataBank also may have done so.  *Id.*  But that suggestion is not evidence.  And it does not rebut the now undisputed evidence that Immunex ceased making the allegedly deceptive communications (of AWP) in 1995.  As a result, under the statutes of limitations of both Montana and Nevada law, the States' statutory claims against Immunex expired long ago.

**B.      The States Provide No Relevant Authority or Credible Evidence to Rebut Immunex's Statute of Limitations Argument.**

The evidence is that Immunex stopped reporting AWPs in 1995.  The States must therefore show that, despite having waited until early 2002 to file their Complaints, the relevant statute of limitations allows the States to reach pre-1995 Immunex conduct.  The States cannot do so.[2]

The States concede that the "discovery rule" applies in both States for purposes of triggering the statute of limitations.  Opp. at 6.  This admission dooms the States' claims, because both States had sufficient knowledge of the relevant facts to satisfy the discovery rule well before the limitations period lapsed.  As explained in Defendants' joint reply briefing in support of their motions for summary judgment in Montana and Nevada, the law of both States is clear that a plaintiff does not need to have knowledge of the full extent of an injury for the statute of limitations to be triggered; inquiry notice is sufficient.  *See* Defs.' Joint. Repl. Supp. Summ. Judg. at 20-21 (Docket No. 4019); Defs.' Joint Repl. Supp. Summ. Judg. at 3-7 (Docket No. 4002).  Here, the States' knowledge of the extent of the

---

[2] In Nevada, the Complaint was filed on March 7, 2002, and the longest potential statute of limitations period is four years, requiring Nevada to have discovered no earlier than March 7, 1998, facts sufficient to enable it to learn of its causes of action.  *See* NRS § 11.190.  In Montana, the Complaint was filed on February 25, 2002 and the statue of limitations on all claims is two years, requiring Montana to have discovered no earlier than February 25, 2000, facts sufficient to enable it to learn of its causes of action. MONT. CODE. ANN. § 27-2-211(1)(c).

difference between AWP and actual acquisition cost was more than sufficient to put the States on notice of a potential claim that relies on Defendants' alleged deception regarding that disparity.  Defs.' Joint MT 56.1 Stmt. ¶¶ 21-36 (Docket No. 3648); Defs.' Joint NV 56.1 Stmt. ¶¶ 31-36 (Docket No. 3637).  The States' plea that they did not file because they failed to grasp the full extent of the differential between AWP and actual acquisition cost is inadequate under the law of both States.  *See Mobley v. Hall*, 657 P.2d 604, 606-07 (Mont. 1983) (plaintiff is not required to know the full extent of the injury to trigger statute of limitations); *Siragusa v. Brown*, 114 Nev. 1384, 1394 n. 7 (1998) (same).  Similarly, contrary to what is suggested by the States' reliance on out-of-state precedent, both Nevada and Montana law allow statute of limitations issues to be resolved on summary judgment. *Holman v. Hansen*, 773 P.2d 1200, 1203 (Mont. 1989); *Bank of Nevada v. Friedman*, 420 P.2d 1, 4 (Nev. 1966).

The States' attempt to evade some of the most powerful evidence establishing knowledge that triggers the statute of limitations is equally unavailing.  The States wishfully dismiss as too "discrete" reports from the Office of Inspector General ("OIG") that long ago confirmed for the States the differential between AWP and acquisition cost (including two Montana-specific OIG studies establishing that differential) and thus triggered the statute of limitations.  Opp. at 7.  The OIG report regarding Montana analyzed thousands of invoices in 1996 and reported *average* differentials of up to 48.5% (for multi-source drugs) between AWP and acquisition cost.  Defs.' Joint MT 56.1 Stmt. ¶ 26, Ex. 35 at 3.  The evidence in Nevada likewise put the State on notice as early as 1996 of an *average* nation-wide differential of up to 42.5% (for multi-source drugs) between acquisition cost and AWP. Defs.' Joint NV 56.1 Stmt. ¶ 35.[3]  Yet the States did not bring suit until six years after it had this knowledge, well after the statutes of limitations had lapsed.

---

[3] The "public information" cases the States rely on to distance themselves from these reports are inapposite.  In the States' cited cases, some genuine dispute existed as to whether all members of a plaintiffs' class were aware of the pertinent public information.  *See In re: Massachusetts Diet Drug Litig.*, 338 F. Supp. 2d 198, 208 (D. Mass. 2004) (examining the "geographic scope of the circulation of various publications, the

**C.** **The States Concede that They Have No Proof of Damages for Any Immunex Drug, and No Proof of Damages or Penalties for Immunex's Multi-Source Medicines.**

As the States acknowledge, Dr. Hartman has not established any *damages* accruing to the States tied to any Immunex medicine.  Opp. at 3, n3. ("Dr. Hartman did not calculate overcharge *damages* for Immunex.") (emphasis added); MT/NV Resp. to Immunex 56.1 Stmt. ¶ 11 (same).[4]  Rather, for certain Immunex drugs, Dr. Hartman has calculated statutory *penalties*, based on his assumption that liability exists.  *Id.* ("The State[s] counter-designate that Dr. Hartman calculated *penalties*[.]") (emphasis added).  What the States ignore is that damages and penalties are legally distinct.  Without *damage* the States' claims sounding in fraud cannot go forward.  *Sisler v. Bennett-Ames*, 149 P.3d 914 (Mont. 2006) ("[d]amages … [are] an essential element to a fraud claim"); *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992) (same).[5]

Likewise, the States concede that for a particular category of drugs – multi-source physician administered drugs – that they have no proof of either damages *or* penalties.  Opp.

---

level of saturation of each publication within the relevant communities, [and] the frequency with which articles [] appeared") (internal citation omitted); *Thompson v. Metropolitan Life Ins. Co.*, 149 F. Supp. 2d 38, 50-53 (S.D.N.Y. 2001) (describing contradictory public evidence of discriminatory practices and knowledge of those practices among widely dispersed class); *Sawyer v. Indevus Pharms., Inc.*, 2004 Mass. Super. Lexis 274 **6-13 (Super. Ct. 2004) (same).  Here, to the contrary, the States, and the State Medicaid programs on whose behalf these actions are brought, were well aware of these reports.  Montana Medicaid actively participated in the 1996 OIG study, and as Terry Krantz of Montana Medicaid explained in a 1995 memo to the Montana Medicaid Director,  "AWP … has little to do with the acquisition cost of pharmacy products." Defs.' MT Joint 56.1 Stmt. ¶ 24, Ex. 36.  Likewise, Nevada received the 1996 OIG studies identifying the substantial disparity between AWP and actual acquisition cost.  Defs. NV Joint 56.1 Stmt. ¶¶ 35; Defs.' Joint. Repl. Supp. Summ. Judg. at 21 n. 36.

[4] By contrast, the States' opposition brief later states, mistakenly, that "Dr. Hartman **did** calculate damages to Montana and Nevada which resulted from Immunex's misconduct."  Opp. at 5 (citing penalty calculations).  The States' opposition also claims that "Dr. Hartman has calculated defendant-specific overcharges or restitution damages only for certain Defendants because of the States' inability to obtain data from other drug manufacturers."  Opp. at 3 n. 3.  The States do not contend that Immunex is one of those "other drug manufacturers."  Nor could they, as Immunex produced to the States years ago the sales data that the States requested.

[5] In Montana, the statute authorizing penalties under the Montana Unfair Trade Practices Act is not a stand-alone damages remedy, but instead is an enhancement of damages if the plaintiff can show a "willful" violation of the Act.  MONT. CODE ANN. § 30-14-142(2).  *Damages* are required by and addressed in a separate portion of the Act.  MONT. CODE ANN. § 30-14-133(1).

at 3, n.3.[6]  The States are apparently baffled by why Immunex would bring this lack of proof to the Court's attention.  *Id.*  The answer is simple.  Without proof that they incurred any conceivable form of damages or penalties for these drugs, the States have failed to establish an essential element of proof and consequently their claims as to these drugs must be dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**D.     The States Offer No Proof to Show that Montana or Nevada Was Knowingly Deceived By Immunex.**

The States admit that they must prove scienter – that Immunex "knowingly," or "with intent to defraud" deceived the States – in order to prevail on their Medicaid fraud claims in each State as well as the Montana False Claims Act claim.  Opp. at 8; Mont. Code Ann. § 53-6-160(1), (3); NRS 422.540; Mont. Code Ann. § 17-8-231(1) (setting forth scienter standards for respective statutes).  The States assert that "Immunex particularly met the scienter or 'knowing and deliberate' standard when it directly reported AWPs to the Publishers."  Opp. at 8.  As established in Immunex's moving papers and above, Immunex ceased reporting AWPs to the third-party publishers in 1995.  Thus, the States have no proof of Immunex's scienter other than during a period precluded by Montana and Nevada statutes of limitations.

The States also say they have provided the Court with proof that Immunex's drug reporting practices were undertaken "knowing that the States [] would rely on them."  *Id.* But the Court will search in vain to find a single reference to Montana or Nevada Medicaid in the materials the States submitted.  *See* MT/NV Resp. to L.R. 56.1 ¶¶ 16-25.  The States' proof, at best, establishes that third-parties published AWPs for Immunex's drugs, and that there was a difference or "spread" between AWP and acquisition cost.  *Id.*  But this is hardly a revelation, as the evidence already conclusively establishes that both Nevada and Montana

---

[6] The States admit that three of the five Immunex drugs at issue in this case (leucovorin calcium, methotrexate sodium, and Thioplex) fall within this category.  *See* MT/NV Resp. to Immunex 56.1 Stmt. ¶ 3 ("Admit" that three of the five Immunex subject drugs at issue are multi-source physician-administered drugs).

were well aware of the differential between AWP and acquisition cost.  Defs.' Joint MT 56.1 Stmt. ¶¶ 21-40; Defs.' Joint NV 56.1 Stmt. ¶¶ 19-110.

In any event, the States make no legal argument connecting their erroneous factual arguments regarding scienter to liability.  Opp. at 8-9.  Indeed, the States fail to address the relevant legal standard for interpreting scienter here, which requires that the underlying behavior undisputedly violates some existing law or regulation before a defendant's conduct will be deemed "knowingly" false.  *United States v. Jamieson Science & Engineering*, 214 F.3d 1372, 1378 (D.C. Cir. 2000).  Without fact or law supporting scienter, the Montana and Nevada Medicaid Fraud Act and Montana False Claims Act claims against Immunex must be dismissed.[7]

## II.    CONCLUSION

For the foregoing reasons, those stated in Immunex's moving papers, and in the joint Defendants' summary judgment filings, the Court should grant summary judgment in favor of Immunex.

---

[7] As to the States' summary assertion that Immunex's reading of the remaining statutory requirements of the Montana Medicaid Fraud Act is too "narrow[]," Opp. at 9, Immunex refers to and incorporates by reference the Defendants' Opposition to the Montana's Motion for Summary Judgment on that claim.  *See* Defs.' Joint Opp. to State Mot. for Sum. Judg. (Docket No. 3731).

DATED:  May 10, 2007.

s/ *Kathleen M. O'Sullivan*
David J. Burman
Kathleen M. O'Sullivan
Charles C. Sipos
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000

Thomas J. Sartory
GOULSTON & STORRS LLP
400 Atlantic Avenue
Boston, MA 02110-3333
Telephone:  (617) 482-1776
Facsimile:  (617) 574-4112

Attorneys for Defendant Immunex Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2007, I caused a true and correct copy of the Defendant Immunex Corporation's Reply in Support of Its Individual Motion for Summary Judgment Against the States of Nevada and Montana to be served on all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending a copy to LexisNexis File and Service for posting and notification to all parties.

By  *s/ Kathleen M. O'Sullivan*
      Kathleen M. O'Sullivan