UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

MDL NO. 1456

Civil Action No. 01-CV-12257-PBS

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

*State of Montana v. Abbott Labs Inc., et al.,*
D. Mont. Cause No. CV-02-09-H-DWM


**DEFENDANT ABBOTT LABORATORIES'
REPLY IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**


Dated:  May 10, 2007

James R. Daly
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

**Counsel for Defendant
Abbott Laboratories**

**I.       INTRODUCTION**

Abbott's Motion for Summary Judgment ("Abbott's Brief" or "Abt. Br.") (Docket No. 3783) presents direct evidence that, prior to filing this lawsuit, Montana's reimbursements for Abbott's Subject Drugs were based on something *other than AWP* more than *97%* of the time. This is fatal to Montana's claims – that it suffered "harm" as a result of "reimbursements made based on Abbott's inflated AWPs" – as to that nearly complete set of Abbott Subject Drug reimbursements.  (Montana's Opposition to Abbott's Motion for Summary Judgment "Opp. Abt." (Docket No. 4083) at 3.)  Montana brings itself to admit elsewhere that this same defect is fatal as to other defendants, but, perhaps given the devastating effect a similar admission would have as to its case against Abbott, Montana is unable to officially let go of these claims as to Abbott.

Abbott's Brief also demonstrates the following, all of which warrant a grant of summary judgment as to Abbott:

- Because Montana in fact reimbursed nearly all of Abbott's Subject Drugs based on something other than AWP, it indisputably knew it did not need to reimburse based on AWP;

- Montana's theory of the case does not fit Abbott's branded pills;

- Montana's net cost for Abbott's branded PPD Drugs was actually below market price, defeating any claim of damage or harm;

- Montana had at its fingertips everything it needed to determine that the AWP of Abbott's multi-source Subject Drugs did not approximate acquisition cost; and

- Abbott did not conceal anything from Montana, and thus the statute of limitations has long since run.

In response, Montana presents a series of inconsequential quibbles, immaterial dissertations, and out-right sidestepping.  Montana's Opposition does not create a genuine issue of material fact, and therefore Abbott's Motion should be granted.

## II.  ARGUMENT

### A.  Montana Did Not Reimburse Abbott's Subject Drugs Based On AWP.

#### 1.  Abbott Is Indisputably Entitled To Summary Judgment As To Claims Reimbursed At Something Other Than AWP.

Abbott's Brief and supporting Statement of Undisputed Facts ("ASOF") (Docket No. 3785) establish that before Montana filed this lawsuit alleging fraud, Montana rarely reimbursed for Abbott's Subject Drugs based on AWP.  In fact, before filing this lawsuit, over *99%* of Abbott's PPD Subject Drugs were reimbursed based on something other than AWP.  (Abt. Br. at 5; ASOF ¶¶ 22; 23.)  And in about *97%* of cases, its HPD Subject Drugs were reimbursed based on something other than AWP.  (*Id*.)  As to other defendants, Montana forthrightly admitted that its claims should be dismissed as to non-AWP based reimbursements.  (*See*, *e.g.*, Opposition to TAP's Motion for Summary Judgment (Docket No. 4103) at 8) ("to the extent TAP can demonstrate that certain transactions were not based on AWP, they would not be included as part of the TAP damages"); Opposition to Pfizer's Motion for Summary Judgment (Docket No. 4101) at 5, n. 4 ("Montana only intends to make claims for transactions in which the Medicaid pharmacy program reimbursed based on AWP"); *Id.* at 6 ("Montana agrees that it did not suffer damages for Subject Drugs reimbursed based on Direct Price").  Why it cannot bring itself to be as forthright with respect to Abbott's motion is unclear.  But it does not matter – while continuing in form to oppose the motion, in substance, Montana is lacking.

In fact, to controvert the record evidence as to Abbott, Montana offers essentially nothing. Montana admits (as it must) that it did not reimburse every Abbott Subject Drug based on AWP. (Opp. Abt. at 4.)  It then tries a two-pronged procedural misdirection.  *First*, it purports to "counter-designate the claims data" – the very same data upon which Abbott's statistics are derived – without actually analyzing the data, as Abbott did, or otherwise refuting Abbott's

analysis of the data. (Montana Opposition to Abbott Statement of Fact ("Opp. ASOF") (Docket No. 4084) ¶¶ 22, 23.)[1] This does not create a genuine issue of material fact; the data says what it says, and as Abbott's motion makes clear, there is no factual dispute about it.

*Second*, Montana objects that Abbott presented the data through the affidavit of its expert, Dr. Steven J. Young. (Opp. Abt. at 1 and 1 n. 1.) This objection is both irrelevant and hypocritical. It is irrelevant because, at summary judgment, sworn expert evidence is unquestionably sufficient to establish undisputed facts. *See, e.g.,* Fed. R. Civ. P. 56(e); *see also Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 832 (9th Cir. 2001) (an expert report can be relied on in a Rule 56 motion if the expert "back[s] up his opinion with specific facts"). And it is hypocritical because Montana relies on its own "expert," Dr. Hartman, throughout its Rule 56 filings, including in its Opposition to Abbott's Statement of Undisputed Facts. (*See, e.g.,* Opp. ASOF at 1 n. 1, ¶¶ 33, 36; Montana's Memorandum in Support of its Motion for Partial Summary Judgment and Statement of Undisputed Facts (Docket No. 3732) at 5, 5 n. 7, 8, 8 n. 22, 13, 14 n. 27, and 17; Montana's Opposition to Defendant's Joint Statement of Undisputed Facts (Docket No. 3902) at 4, 5, and 10.) Montana must do more than desperately attack Abbott's assertions of fact for the sole reason that they are presented in the form of an expert affidavit – to defeat summary judgment, Montana is required to provide *evidence* of a specific factual dispute, which it has utterly failed to do. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (A party opposing summary judgment on an issue for which it bears the burden of proof "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute"); *Carreiro v. Rhodes Gill & Co.*, 68

---

[1] Indeed, Montana's Opposition to Abbott's Statement of Undisputed Facts is so riddled with deficiencies that Abbott has included an Appendix at the end of this brief to address them.

F.3d 1443, 1446 n.3 (1st Cir. 1995) ("Properly supported facts set forth by the moving party are deemed admitted unless controverted by the factual statement of the opposing party").

The bottom line:  Montana's claim that it suffered "harm" as a result of "reimbursements made based on Abbott's inflated AWPs," fails as a matter of law where there have been no reimbursements based on AWP.  Because there is no genuine issue of material fact that Abbott is entitled to summary judgment as to all reimbursements made by Montana based on something other than AWP, this Court should accordingly grant Abbott's motion.

         2.       *Montana's Decision To Reimburse The Small Number Of Remaining Claims Based On AWP Does Not Impose Liability On Abbott.*

Montana almost never used AWP when reimbursing Abbott's Subject Drugs.  That is unsurprising.  Indeed, as described in Abbott's Brief, Montana's own regulations *required* that Abbott's Subject Drugs be reimbursed at *direct price*, and not AWP.  (Abt. Br. at 5 – 7; ASOF ¶ 25.)

That Montana on very rare occasion ignored its own regulations, and chose for whatever reason to reimburse Abbott's Subject Drugs based on AWP, cannot subject Abbott to liability.  All of Montana's claims sound in fraud.  And it is black-letter law that, where there is no reliance (but instead, conduct undertaken with eyes wide open), there is no fraud either.  *See, e.g., Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1154 (9th Cir. 2005) (to establish a claim for fraud, a plaintiff must show that an alleged false representation played a material part in leading her to adopt a particular course of action); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1156 (9th Cir. 2000) (noting that fraudulent concealment under California law requires, among other things, that the plaintiff was unaware of a fact and would have acted differently had she known

of it).² Montana's rare use of AWP when reimbursing Abbott's Subject Drugs illustrates that Montana was *not* duped into over-reimbursing for Abbott's Subject Drugs based on AWP. Indeed, as described in Abbott's Brief, Montana made a conscious decision in 2002 – *after filing this lawsuit* – to move away from direct price reimbursement for Abbott's Subject Drugs *in favor of AWP*. (Abt. Br. at 6 – 7; ASOF ¶¶ 28 – 32.) Montana made this decision in response to numerous complaints from pharmacists that it had long been reimbursing pharmacists *below their cost* for Abbott's Subject Drugs. (Abt. Br. at 7; ASOF ¶ 30.) In response, Montana admits that it "discontinued its use of direct pricing as a reimbursement measure on July 1, 2002 which 'enthused' pharmacies." (Opp. Abt. at 5.) Of course, the reason that pharmacists were "enthused" was that prior to July 1, 2002, Montana had been *under-reimbursing* providers for Abbott's Subject Drugs. (Abt. Br. at 7; ASOF ¶ 30.)³

Montana's conscious decision to move away from direct price in favor of AWP in response to complaints from its constituents that they were being under-reimbursed for Abbott Subject Drugs – made after Montana filed this lawsuit alleging that the very same AWPs were fraudulently inflated – is indisputable evidence that Montana was not defrauded by Abbott. Rather, Montana chose to use AWP with full knowledge that it was not an approximation of acquisition cost. This, too, requires summary judgment for Abbott.

---

² Montana's lengthy discussion regarding the availability of direct price is beside the point. (Opp. Abt. at 5 – 6.) What matters is that Montana seldom reimbursed based on AWP. Again, that fact is undisputed. And in point of fact, Abbott's direct price for its Subject Drugs was available and published at all times. (ASOF ¶¶ 9, 10.)

³ This directly flies in the face of Montana's citation to the MDL California opinion (Docket No. 3299). (Opp. Abt. at 4 – 5.) If providers were being under-reimbursed when they were reimbursed based on direct price, then direct price cannot be an inflated or made-up price. (*See* Joint Opposition to Montana's Motion for Partial Summary Judgment (Docket No. 3884) at 4 n. 2.)

### B.     Abbott's Branded PPD Subject Drugs Do Not Fit The Paradigm Of Montana's Case.

Montana's case against Abbott fails for three additional reasons as to Abbott's PPD Subject Drugs, Biaxin® and Depakote® (self-administered branded pills). *First*, those Subject Drugs do not fit Montana's theory of the case, as they are marketed to doctors, not pharmacists. Thus, Montana's "marketing the spread" theory falls flat. (Abt. Br. at 8 – 9.) *Second*, Montana received substantial rebates for those Subject Drugs, such that its ultimate cost was *below market*. (Abt. Br. at 9 – 10.) This defeats Montana's claim that it was harmed based on its reimbursement for these branded pills. And *third*, Abbott's PPD Subject Drugs were sold at WAC, thereby making any "spread" at most 25%, a "spread" that Judge Saris has repeatedly found is not fraudulent as a matter of law.

Montana's Opposition does not seriously contest that its "marketing the spread" theory does not fit branded pills. Instead, Montana asks the Court to rewrite the law of fraud and find that, "even if [it] were true that Abbott did not manipulate the spread for these two drugs, Abbott's argument does not lead to judgment." (Opp. Abt. at 6.) According to Montana's novel theory, Abbott is still subject to liability in the form of penalties "based on the reporting of false AWPs," even if Abbott did not engage in any fraudulent conduct. (*Id*.) Thus, Montana essentially asks this Court to apply a *strict liability* standard to an action for fraud.

That is not the law. Fraud, by its very nature, requires proof of fraudulent *intent*. *See In re Estate of Kindsfather*, 108 P.3d 487, 490 (Mont. 2005) (fraud requires "the speaker's intent that the [allegedly fraudulent] representation should be acted upon by the person and in the manner reasonably calculated."); MONT. CODE ANN. § 53-6-155(7) (fraud is "conduct or activity prohibited by statute, regulation, or rule involving *purposeful or knowing conduct* or omission to perform a duty that results in or may result in Medicaid payments or benefits to which the

- 6 -

applicant, recipient, or provider is not entitled") (emphasis added).  This is especially true when awarding penalties.  In fact, MUTPA requires a showing of *willfulness* before penalties can be awarded, MONT. CODE ANN. § 30-14-142(2), and the Montana False Claims Act similarly only allows penalties where the defendant acted "knowingly." MONT. CODE ANN. § 17-8-231.  In the context of Abbott's branded PPD Subject Drugs, where Abbott has no incentive to market any alleged spreads, Montana has utterly failed to meet its burden of showing that Abbott acted willfully or with any fraudulent intent.  The claims as to these drugs fail.[4]

Montana also cannot dispute that, as a result of the Medicaid rebates, it actually paid less than market price for Abbott's branded PPD Subject Drugs.  (Abt. Br. at 10; ASOF ¶¶ 33, 34.)  As such, Montana cannot prove *damage or harm* as a result of any allegedly "false" AWP.  This is fatal to Montana's claims against Abbott as to these Subject Drugs.  *See* MONT. CODE ANN. § 30-14.133(1) ("for a plaintiff to recover on a MUTPA claim, it must establish that it "suffer[ed] any ascertainable loss of money or property"); *Sisler v. Bennett-Ames,* 149 P.3d 914 (Mont. 2006) ("Damages are an essential element to a fraud claim").  Montana responds by once again quibbling with the presentation of the data in the form of Abbott's expert report and arguing for the application of a strict liability standard – and for the imposition of penalties even where the elements of the claim cannot be met.  (Opp. Abt. at 7.)  However, absent injury, there is no fraud, and, absent fraud, Montana cannot recover penalties.  *See* MONT. CODE ANN. § 30-14.133(1); *Sisler,* 149 P.3d at 914.  Montana cannot simply point to a supposed "false" AWP and claim fraud.  It must provide evidence to support its case.  Here, it has not done so, and its claims against Abbott for its branded PPD Subject Drugs must fail.

---

[4] Abbott also fully incorporates as if set fully herein the Reply Briefs of its codefendants on this same issue. *See, e.g.,* (Johnson and Johnson Reply at 4 – 7, etc.)

Finally, Abbott's branded PPD Subject Drugs were sold to the retail class of trade at WAC (also known as direct price), a published price. (ASOF ¶ 8.) Montana does not contest that the "spread" between WAC and AWP for self-administered, brand name drugs (like Abbott's branded PPD Subject Drugs) is consistently between 20 and 25 percent. (*See e.g.* Montana Opposition to TAP Statement of Facts ¶ 7) (Docket No. 4103). Judge Saris has repeatedly noted that "spreads" of 20 to 25 percent are not actionable. *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, 2007 U.S. Dist. LEXIS 26242, at *126 n.9 ("Only those drugs for which the plaintiffs have alleged a spread greater than the 20-25% mark up between WAC and AWP survive."); Pre-Trial Conf. Tr. 22 (Apr. 11, 2007) (Saris, J.) ("everyone knew about a 20 to 25 percent spread, maybe 30 percent. Everyone knew, everyone"); *id.* at 24-25 (with respect to government knowledge specifically, the court observed that "they for sure knew . . . about spreads in the 30 percent range"). For this additional reason, Montana's claim as to Abbott's branded PPD Subject Drugs fails as a matter of law.

Because Montana has failed to prove the requisite elements of its case as to Abbott's branded PPD Subject Drugs, its claims as to these products fail.

### C. Montana Knew Or Should Have Known That AWP Did Not Approximate Acquisition Cost Of Abbott's Multi-Source Subject Drugs.

Montana had at its fingertips all the information it needed to determine that AWP was not an approximation of the acquisition cost of Abbott's HPD Subject Drugs (typically physician administered multi-source drugs (ASOF ¶ 15)) or Erythromycin (a multi-source PPD pill (ASOF ¶ 6)). Because Montana rarely reimbursed Abbott's multi-source Subject Drugs based on AWP, it knew it could reimburse providers for less than the AWP based amount. This is further demonstrated by Montana's receipt of, and actual use and discontinuance of, recommended AWPs from the federal government that were *lower than* the published AWPs. (ASOF ¶¶ 44, 45;

Opp. ASOF ¶ 46.) In addition, Montana itself made significant purchases of Abbott's multi-source Subject Drugs directly from Abbott, providing it direct knowledge of the acquisition cost of such drugs, and Montana was specifically informed of the difference between AWP and acquisition cost of certain of Abbott's multi-source Subject Drugs in OIG materials it received from the federal government. (ASOF ¶¶ 40 – 43.) Thus – in addition to Montana's general knowledge that AWP did not approximate acquisition cost as described in the Joint Brief – Montana was fully apprised that the AWP of Abbott's multi-source Subject Drugs did not approximate the acquisition cost.

### 1. *Montana Knew It Could Reimburse For Less Than AWP.*

Montana "denies knowledge" that it could reimburse Abbott's multi-source Subject Drugs at less than AWP. (Opp. Abt. at 8.) This is a remarkable denial indeed, considering that, prior to filing this lawsuit, nearly 97% of Montana's reimbursements of Abbott Subject HPD Drugs were at something *other than AWP*. (ASOF ¶¶ 22 – 24.) Because Montana generally did reimburse providers at less than AWP for Abbott's multi-source Subject Drugs, it indisputably knew it could do so. (*Id.*) As such, Montana's claims of deception, fraud, and damage caused by Abbott must fail as to these Abbott products.

### 2. *Montana Actually Implemented The Lower DOJ AWPs.*

In 2000, the DOJ provided a list of suggested AWPs to Montana for many of Abbott's multi-source Subject Drugs that were *lower than* the published AWPs for these Abbott Subject Drugs. (ASOF ¶¶ 44, 45.) Montana's Opposition totally ignores Abbott's arguments regarding the DOJ AWPs, but critically, its Opposition to Abbott's Statement of Undisputed Facts actually admits that Montana not only received the DOJ AWPs, but that it also took the next step and actually used them "until their use was ordered discontinued." (Opp. ASOF ¶ 46.) That

Montana did in fact use these lower recommended AWPs, and then ordered that they cease being used, is further evidence that Montana was aware that other options were available to it, that it considered the options (and here actually even implemented them), but ultimately the State nonetheless chose AWP for its own sound policy reasons with full knowledge that the AWPs did not approximate acquisition cost. Montana's use of, and discontinuance of, these lower federal government AWPs is further evidence that Montana was not defrauded by Abbott, and summary judgment is warranted.

### 3. *Montana Knew AWP Did Not Approximate Acquisition Cost.*

In response to Abbott's record evidence that Montana knew through various vehicles that AWP did not approximate the acquisition cost of its multi-source Subject Drugs, Montana employs the ostrich defense, claiming that its right hand (Medicaid) had no way of knowing what its left hand (government hospitals, prisons, and universities) was doing (Opp. Abt. at 9.); or in the alternative, Montana claims that its personnel did not actually review materials it indisputably received that laid out in detail the fact that AWP was not an approximation of acquisition cost. (*Id.*) However, the record is replete with evidence that Montana Medicaid officials, contrary to the claims of their lawyers, reviewed materials received from the government, and indeed made reasoned reimbursement decisions based on various policy agendas and concerns. (*See generally* Joint Br.) Thus, what is clear is that Montana, *at the very least*, should have known that AWP did not equal acquisition cost for Abbott's Subject Drugs. Moreover, the fact that the information was so widely available itself belies any claim of fraud or fraudulent intent on the part of Abbott.

Montana's claims that the agency blindly and ignorantly operated in a vacuum are not supported by the evidence, and even if true, could not subject Abbott to liability. *See Barrett v.*

*Holland & Hart*, 845 P.2d 714, 717 (Mont. 1992) (where plaintiff "chose not to use the means available to him to investigate the truth of the representations made to him, his claim for fraud must fail"). Indeed, Magistrate Judge Bowler has already ruled in the related Nevada case that state Medicaid agencies cannot "believably maintain that policymakers failed to consider the dozens of AWP related documents" that they would have received from the federal government. (Report and Recommendation re: Defendants' Joint Motion For Redress For Spoliation of Evidence, March 14, 2007 (Docket No. 2899) at 26.) Because Montana was fully aware that the AWP for Abbott's mutli-source Subject Drugs does not approximate acquisition cost, its claims fail.[5]

### D. Montana's Claims Are Barred By The Statute Of Limitations.

Montana's claims as to Abbott are barred by the statute of limitations for the reasons described in Abbott's Brief. (Abt. Br. at 14.) Montana has been on notice that it could reimburse for less than the AWP-based statutory amounts for Abbott Subject Drugs as far back as at least 1995. (*Id.*) Montana's response – that Abbott fraudulently concealed the truth – is belied by the evidence. As described at length, the truth regarding AWP was not only *not* concealed, but it has been well-known by Montana officials for years. (Abt. Br. at 11 – 15; *see also* Joint Reply at 3 – 6.) Moreover, any claim that Abbott "concealed" anything is completely destroyed by the indisputable fact that Montana purchased Abbott's Subject Drugs directly from Abbott.

---

[5] Montana's Opposition effectively concedes that its case only applies to the reimbursement of Abbott's HPD Subject Drugs dispensed by pharmacies and not hospitals. (Opp. Abt. at 10.) As such, all claims as to submissions from hospitals or other non-retail pharmacy settings should be summarily dismissed.

- 12 -

### III. CONCLUSION.

Summary Judgment should be granted to Abbott on all claims.

Dated:  May 10, 2007                                          Respectfully submitted,

 /s/ Toni-Ann Citera
Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

James R. Daly
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

**Counsel for Defendant
Abbott Laboratories**

# APPENDIX

**Appendix Concerning the State's Rule 56.1 Response**

Montana's Opposition to Abbott's Statement of Undisputed Facts is riddled with deficiencies for which the corresponding undisputed facts should be deemed admitted. This appendix describes certain of those deficiencies.

Facts Admitted

Paragraphs 1 – 7, 12, 18, 27, 28, 32, 34, and 41 – 44 of Abbott's Statement of Undisputed Facts are admitted without opposition.[6]

Facts Neither Admitted Nor Denied Thus Deemed Admitted

Paragraphs 8, 10, 11, 13, 16, 17, 20, 24, 35, and 39. Montana neither admits nor denies these facts. The reason given is that the statements are based on Abbott's expert affidavit. It is entirely appropriate to rely on an expert affidavit in summary judgment. *See, e.g.,* Fed. R. Civ. P. 56(e); *see also Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 832 (9th Cir. 2001) (an expert report can be relied on in a Rule 56 motion if the expert "back[s] up his opinion with specific facts"). As such, these paragraphs are deemed admitted. *See Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1446 (1st Cir. 1995) ("Properly supported facts set forth by the moving party are deemed admitted unless controverted by the factual statement of the opposing party").

Facts Denied But Deemed Admitted

Montana's denials come in three primary forms: (1) a flat-out denial without any other description or with simply a bald counter-designation; (2) a denial based on the premise that Abbott is not entitled to rely on its expert affidavit[7]; and (3) a denial with an explanation providing additional detail to Abbott's fact, but not actually refuting it. Such denials are insufficient and the facts at issue should be deemed admitted.[8] *See id*.

---

[6] For certain of the paragraphs admitted, Montana follows its admission with rhetoric regarding, among other things, Abbott's expert affidavit. This rhetoric does not change the admission of the fact.

[7] Such denials are not sufficient for the reasons identified in the preceding paragraph.

[8] Montana also denies Paragraph 45, stating that "DOJ AWPs were lower than the published AWPs for the Abbott Subject Drugs" because the citation given included a minor typo. The citation should be to Ex. 1, Young

Paragraphs 19, 22 – 23, 30, 33, 36 – 38.  Montana denies these paragraphs without supporting the denials with factual controversions.  These facts are therefore admitted.

For instance, Paragraph 19 is denied with no further explanation.  Similarly, Paragraphs 37 and 38 are denied with no citation to the record.  These denials are insufficient and the facts at issue should be deemed admitted.  *See id*.  In addition, by way of example, Paragraphs 22, 23, and 36 are essentially denied for the reason that the statements are based on Abbott's expert affidavit.  For these denials, Montana also "counter-designates the claims data."  Denying facts without evidentiary support does not satisfy Rule 56.1's requirements.  *See id.*  Similarly, announcing a counter-designation without referencing additional facts or explaining the basis for such counter-designation does not (i) change the nature of the undisputed facts or (ii) create a genuine issue of material fact.  *See id*; *see also* Local Rule 56.1 (Parties opposing summary judgment must provide a "concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation").

Paragraphs 9, 21, 25 – 26, 29, 31, and 40.  Montana's third basis for denial – denial by addition – is also a non-starter.  (*See, e.g.,* Opp. SOF ¶¶ 25, 29, 31.)  The State's reference to additional facts does not refute the truthfulness of Abbott's statements, but rather provides additional information.  Denials must be supported by factual statements that controvert the statements at issue.  *Id.*  These statements should also then be deemed admitted.

Montana's Opposition to Paragraph 21 highlights this deficiency.  That paragraph, stating that "Montana Medicaid did not pay a single claim for Calcijex under its pharmacy benefits

---

(continued…)

Abbott MT Rpt. at ¶ 40, n. 33, not n. 32.  This minor typo does not create a genuine issue of material fact, and because Montana submitted no evidence to the contrary, this fact should be deemed admitted.

- 15 -

program," is denied with a counter-designation to Exhibit 70. The exhibit designated purports to list a handful of Calcijex expenditures made by Montana since January, 1991. However, the Calcijex expenditures listed on Exhibit 70 are for NDC codes *not at issue in this litigation*. The undisputed fact is that Montana made no expenditures for the Calcijex NDC codes at issue, notwithstanding Montana's misleading citation to the contrary. This is further evidenced by the fact that Montana's expert claims no damage based on Calcijex reimbursements.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2007, I caused a true and correct copy of the foregoing **Defendant Abbott Laboratories, Inc.'s Reply In Support of Its Motion for Summary Judgment** to be served on all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2 in MDL No. 1456, a copy to LexisNexis File and Serve for Posting and notification to all parties..

      __/s/ Toni A. Citera_

      Toni A. Citera

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594