**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) MDL No. 1456<br><br>Civil Action No.<br>01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | ) ) ) ) Judge Patti B. Saris |
| *State of Montana v. Abbott Labs., Inc., et al..*<br>*02-CV-12084-PBS* | ) ) ) |
| *State of Nevada v. Abbott Labs., Inc., et al..*<br>*D. Nev. Cause No. CV-12086-PBS (Nevada II)* | ) ) ) |

**THE JOHNSON & JOHNSON DEFENDANTS'
INDIVIDUAL REPLY MEMORANDUM IN SUPPORT OF SUMMARY
JUDGMENT AGAINST THE STATES OF NEVADA AND MONTANA**

**TABLE OF CONTENTS**

Page

Introduction ..........................................................................................................................1

I.  Nevada and Montana Admit the Material Facts Needed to Grant Summary
    Judgment..................................................................................................................1

II. The States' *Per Se* Liability Theory Should Be Rejected Because the States
    Admit that Medicaid Agencies Set Reimbursement at a Discount From
    AWP Knowing and Expecting Spreads Up To 30%. ...............................................3

III. The States' Claims Must Be Dismissed Because the States Did Not Suffer
     any Injury with Respect to Johnson & Johnson's Drugs..........................................4

Conclusion ...........................................................................................................................9

Appendix Concerning the States' Rule 56.1 Response ................................................. A-1

**Introduction**

In responding to the J&J Defendants' motion for summary judgment, Nevada and Montana admit, or must be deemed to have admitted, all of the material facts needed to grant the motion. Hence, all that remains to be decided are two questions of law. First, does the fact that the States have not come forward with any evidence that the spreads on Johnson & Johnson's medicines ever exceeded 30% entitle the J&J Defendants to summary judgment based on Dr. Hartman's admission, and overwhelming record evidence, that Medicaid agencies understood and expected spreads up to 30%? And, second, does the fact that the rebates paid by the J&J Defendants' exceeded the States' alleged "overcharge damages" entitle the J&J Defendants to summary judgment on the grounds that the States did not sustain any injury? Both questions should be answered in the affirmative.[1]

**I.   NEVADA AND MONTANA ADMIT THE MATERIAL FACTS NEEDED TO GRANT SUMMARY JUDGMENT.**

Local Rule 56.1 sets forth the standard for determining whether facts are established for purposes of summary judgment. Parties opposing summary judgment must provide a "concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Where the facts alleged to be in dispute are not supported with citations to record evidence, they are "deemed for purposes of the motion to be admitted." *See Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1446 (1st Cir. 1995) ("Properly supported facts set forth by the

---

[1] The J&J Defendants do not concede that the States were unaware of spreads greater than 30%, or that there would be liability if rebates are excluded from the States' overcharge and penalty calculations. Rather, the J&J Defendants assert that they are entitled to summary judgment even assuming the States were unaware of spreads greater than 30%, and even assuming the legitimacy of Dr. Hartman's method for determining damages and penalties.

1365288v1

moving party are deemed admitted unless controverted by the factual statement of the opposing party.").

In opposing the J&J Defendants' motion, Nevada and Montana admit Facts 1, 2, 5, 9, 11 and 13.[2]  These admissions establish the identity of the parties (Fact 1), the identity of the Johnson & Johnson drugs at issue (Fact 2), the amount of the alleged "overcharge damages" incurred by Nevada and Montana with respect to Procrit® (Facts 5 and 9), the amount of the alleged "overcharge damages" incurred by Montana with respect to Remicade® (Fact 11), and the fact that Montana has not submitted a claim for "overcharge damages" with respect to any Johnson & Johnson medicine other than Procrit and Remicade (Fact 13).

Except for these admissions, the rest of the States' responses are deficient under Rule 56.1, because not one of them is supported by evidence in the form of affidavits, depositions or other documentation.  Thus, all of the facts supporting the J&J Defendants' motion for summary judgment are either admitted, or must be deemed admitted, including, most significantly, the following:

- That the States' expert, Dr. Hartman, testified that Medicaid Agencies set their reimbursement formulae knowing and expecting spreads up to 30% between AWP and provider acquisition cost (Fact 4);

- That there is no record evidence that any spread on any of the J&J Defendants' medicines ever exceeded 30% (Fact 3);

- That the rebates the J&J Defendants paid to the States exceeded the alleged "overcharge damages" on the drugs in issue (Facts 5-13); and

- That there is no record evidence that the States' net reimbursement costs, inclusive of rebates, were greater than Dr. Hartman's estimate of pharmacy acquisition costs (Facts 14-16).

---

[2] *See* Nevada and Montana's Response to the Johnson & Johnson Defendants' Individual L.R. 56.1 Statement of Undisputed Material Facts ("States' 56.1 Response").

For the Court's convenience, a statement-by-statement analysis of the deficiencies in the States' response to the J&J Defendants' Rule 56.1 Statement is provided as an Appendix to this Reply Memorandum.

## II. THE STATES' *PER SE* LIABILITY THEORY SHOULD BE REJECTED BECAUSE THE STATES ADMIT THAT MEDICAID AGENCIES SET REIMBURSEMENT AT A DISCOUNT FROM AWP KNOWING AND EXPECTING SPREADS UP TO 30%.

The States admit that their expert, Dr. Hartman, testified that Medicaid officials knew about and expected spreads up to 30%.[3] Further, the States are deemed to have admitted that there is no record evidence that the spreads on the Johnson & Johnson drugs at issue ever exceeded 30%.[4] In fact, the Complaints assert that the Johnson & Johnson drugs had spreads ranging from 13.4% to 20.8%.[5]

These facts are undisputed. Nevertheless, the States argue that "whether or not the spread for a given drug was under 30% does not determine whether J&J is subject to liability in these cases."[6] They say in their brief that they are not relying on Dr. Hartman's 30% liability yardstick because "[t]he measure in the state markets is different."[7]

These responses fall short of identifying any material facts to be tried. Rather, they are legal arguments by counsel. Indeed, Dr. Hartman concedes in his reports that, notwithstanding the fact that state Medicaid agencies understood and expected spreads up to 30%, he was "instructed by counsel" to find liability anytime there is *any* spread between the

---

[3] States' 56.1 Response, ¶ 4.

[4] States' 56.1 Response, ¶ 3.

[5] Montana Second Amended Complaint, ¶ 489; Nevada Amended Complaint, ¶ 310.

[6] States' 56.1 Response, ¶ 3.

[7] Nevada and Montana's Joint Opposition to the Johnson & Johnson Defendants' Motions for Summary Judgment ("States' Joint Opp.") at 3.

3

States' reimbursement payments and his estimate of the provider's acquisition cost, regardless of whether the spread was large or small.[8] In short, the States are advancing a *per se* liability theory which is nearly identical to the *per se* theory their attorneys urged the court to apply to Class 2 during the recently-completed Track 1 trial.

The States' *per se* liability theory -- which posits that, under Medicaid, *any* spread is unlawful -- does not turn on disputed issues of material fact and is, therefore, ripe for decision on summary judgment. As the MDL Court noted during the April 11, 2007 pre-trial conference, "everyone knew about a 20 to 25 percent spread, maybe 30 percent. Everyone knew, everyone." (4/11/07 Tr. at 22). With respect to government knowledge specifically, the court observed that "they for sure knew . . . about spreads in the 30 percent range." (*Id.* at 24-25). The record contains overwhelming proof that the Medicaid officials in Montana and Nevada knew that local Medicaid providers typically received more than their acquisition cost.[9]

The States' *per se* liability theory, therefore, is at odds with the uncontested facts and should be rejected.

### III. THE STATES' CLAIMS MUST BE DISMISSED BECAUSE THE STATES DID NOT SUFFER ANY INJURY WITH RESPECT TO JOHNSON & JOHNSON'S DRUGS.

As noted in the J&J Defendants' opening brief, in order to sustain their claims, Nevada and Montana must prove that they suffered injury due to the J&J Defendants' alleged misreporting of AWP. *Sisler v. Bennett-Ames,* 149 P.3d 914 (Mont. 2006) ("Damages are an essential element to a fraud claim."); *In re Estate of Kindsfather*, 108 P.3d. 487, 490 (Mont.

---

[8] Declaration of Raymond S. Hartman (Nevada) ¶¶ 21-22; Declaration of Raymond S. Hartman (Montana), ¶¶ 22-23.

[9] *See* Defendants' Joint Local Rule 56.1 Statement of Undisputed Material Facts in Support of their Joint Motion for Summary Judgment [Against the State of Nevada], ¶¶ 31-39, 46, 56, 57, 77-83; Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment [Against the State of Montana], ¶¶ 25-30, 53, 66.

4

2005) (fraud requires "consequent and proximate injury or damages"); *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588 (Nev. 1992); *Ideal Electric Co. v. Flowserve Corp.* No. CV-S-1092 DAE, 2006 WL 3434745 at *12 (D. Nev. 2006) (intentional misrepresentation claim dismissed where plaintiff "has not shown that it suffered any damages"); Mont. Code Ann. § 30-14-133(1). Thus, absent proof of injury or damages, a plaintiff fails to state a claim. *Id.*

In this case, Nevada either admits, or must be deemed to have admitted, that it does not claim overcharge damages for any Johnson & Johnson drug except Procrit, whereas Montana admits that it does not claim overcharge damages for any drugs other than Procrit and Remicade.[10] As to these drugs, however, the States' alleged overcharge damages are illusory, because, as the States concede, the rebate subsidies they received from the J&J Defendants exceeded the alleged overcharges by substantial margins.[11] The MDL Court previously noted that any damages allegedly incurred due to excessive payments to providers "will necessarily be reduced by the rebates the state received," and, therefore, "may play a role in determining the correct amount of damages in the case." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 457 F. Supp.2d 65, 74-75 (D. Mass. Sept. 6, 2006). Here, the rebates do not merely reduce the alleged damages, they actually exceed them.

The States do not deny that they were paid rebates in excess of their alleged overcharge damages. Rather, they argue that, to the extent they are seeking "penalties," the J&J Defendants should not be credited with these rebates, because the purpose of penalties is not to redress an alleged loss, but to punish an alleged wrong-doer.[12]

---

[10] States' 56.1 Response, ¶¶ 7, 8, 13.

[11] States' 56.1 Response, ¶¶ 5, 6, 9, 10, 11, 12.

[12] States' Joint Opp. at 5.

5

It is true that damages and penalties serve different purposes, but the distinction should not matter in this instance. The States cannot recover either damages or penalties unless they first establish liability. In order to establish liability the States must prove that they were injured, because injury is one of the elements needed to prove fraud. Absent injury, there is no fraud, and, absent fraud, the States cannot recover damages or penalties.

In any event, the States fail to raise a material issue of fact to be tried, even with respect to penalties. Dr. Hartman finds liability and imposes a penalty whenever he calculates that the State's reimbursement cost (the so-called "Allowed Amount") exceeds his estimate of pharmacy acquisition cost.[13] Significantly, however, Dr. Hartman calculates the State's reimbursement cost on a gross basis, rather than on a net basis, because he does not include the rebates paid to the State by the manufacturer.[14] Thus, Dr. Hartman's penalty calculations raise the same legal issue with respect to rebates as his damages calculations. In the one case, he does not include rebates in measuring the State's reimbursement costs; in the other case, he does not include rebates in measuring whether the State incurred damages. As a result, Dr. Hartman's penalty calculations, no less than his damages calculations, are tainted by his failure to account for the rebates the States receive pursuant to their rebate contracts with the manufacturers.

To illustrate the effect of this failure, the J&J Defendants showed that Montana's *net* reimbursement cost, *inclusive of rebates*, for one top-selling Johnson & Johnson drug (Risperdal®), was below Dr. Hartman's estimate of what pharmacies were paying to acquire Risperdal, and further noted that there is no record evidence that Montana and Nevada ever

---

[13] *See* Declaration of Eric M. Gaier, Ph.D., in Support of Defendants' Joint Motion for Summary Judgment in the States of Nevada and Montana, Feb. 8, 2007 ("Gaier Decl."), ¶ 12; *see also* Hartman Nevada Declaration, ¶¶ 22-23; Hartman Montana Declaration, ¶¶ 21-22.

[14] *See* Hartman Nevada Declaration, ¶¶ 22-23 (defining the State's reimbursement cost as the "Allowed Amount" without reference to rebates); Hartman Montana Declaration, ¶¶ 21-22 (same).

incurred net reimbursement costs greater than Dr. Hartman's estimate of pharmacy acquisition costs for any Johnson & Johnson drug.[15] Montana and Nevada do not cite any record evidence to counter these assertions and, as such, they are deemed admitted under Rule 56.1.[16]

This leaves only the legal issue of whether rebates should be included in measuring the reimbursement costs (for purposes of calculating penalties) and alleged overcharge damages (for purposes of determining whether the States were injured). The undisputed factual record establishes that if rebates are included, there is no liability, no penalties, and no injury.

The States' final argument is that the rebate payments raise a "battle of the experts" because Dr. Hartman says they "net out of the damages calculation."[17] This argument is misleading at best. Dr. Hartman is not saying that the J&J Defendants' rebates do not, in fact, exceed the States' alleged overcharge damages, or that the rebates do not, in fact, reduce the State's net reimbursement costs to the point where they are less than the pharmacies' cost of acquiring Johnson & Johnson's medicines. Those facts are admitted or deemed admitted. All Dr. Hartman means when he says that the rebates "net out" of his calculations is that the rebates would be the same even if the AWPs were lower, because the formula used to calculate rebates is not based on AWP.[18] That is true, but it is not responsive to the point the J&J Defendants are making, which is that the States' reimbursement costs are being subsidized by the rebates they receive from manufacturers, and, in the case of the J&J Defendants, the rebates exceed the

---

[15] The Johnson & Johnson Defendants' Individual L.R. 56.1 Statement of Undisputed Facts, ¶¶ 14, 15, 16; Gaier Decl., ¶ 14, Ex. 3.

[16] States' Rule 56.1 Response, ¶¶ 14, 15, 16.

[17] States' Joint Opp. Br. at 6.

[18] Hartman Nevada Declaration, ¶ 33; Hartman Montana Declaration, ¶ 32.

7

8

alleged overcharges.  It is no answer to say that the rebates would be the same even if the States' reimbursement costs were lower, because in either case, the States are not being injured.

## Conclusion

The J&J Defendants' individual motion for summary judgment should be granted.

Dated:  May 10, 2007               Respectfully submitted,


                                   /s/ William F. Cavanaugh, Jr.
                                   William F. Cavanaugh, Jr.
                                   Andrew D. Schau
                                   Erik Haas
                                   Adeel A. Mangi
                                   **PATTERSON BELKNAP WEBB & TYLER** LLP
                                   1133 Avenue of the Americas
                                   New York, New York  10036-6710
                                   (212) 336-2000

                                   Attorneys for the Johnson & Johnson Defendants

# Appendix

**Appendix Concerning the States' Rule 56.1 Response**

This appendix describes the deficiencies in the States' response to the Johnson & Johnson Defendants' Individual L.R. 56.1 Statement of Undisputed Facts.

**A.     The Admitted Facts**

Facts 1, 2, 4, 5, 9, 11 and 13 are admitted outright.  These admissions establish the identity of the parties (Fact 1), the identity of the Johnson & Johnson drugs at issue (Fact 2), the amount of the alleged "overcharges" incurred by Nevada and Montana with respect to Procrit® (Facts 5 and 9), the amount of the alleged "overcharge" incurred by Montana with respect to Remicade® (Fact 11), and the fact that Montana does not claim "overcharge" damages for any Johnson & Johnson medicine other than Procrit and Remicade (Fact 13).

The States also admit that their expert, Dr. Hartman, testified that state Medicaid agencies set their reimbursement formulae with the "expectation" and "understanding" that there were spreads up to 30%, a figure which he termed his "liability yardstick," *i.e.*, his measure for whether a spread is lawful or unlawful (Fact 4).

**B.     The Facts Deemed To Be Admitted**

Although the States do not expressly admit the other facts set forth in the J&J Defendants' Rule 56.1 Statement, their failure to comply with Rule 56.1 means that these other facts must be deemed to be admitted.  Thus, Nevada and Montana must be deemed to have admitted that none of the spreads on any of the J&J medicines at issue ever exceeded Dr. Hartman's 30% liability yardstick (Fact 3), because the States' only response is that they can "neither deny nor admit" this fact based on the evidence in the record.  This response does not constitute a denial, let alone a denial that comports with Rule 56.1.

Nevada also says it cannot admit or deny the fact that it was paid $267,568 in rebates with respect to Procrit (Fact 6), so this fact too is deemed admitted.  In addition, Nevada

1365288v1

must be deemed to have admitted that it did not incur "overcharge damages" with respect to Remicade (Fact 7), because, notwithstanding its statement that it "claims" overcharge damages as to Remicade, its cites no record evidence to support its claim.  Nevada admits outright that it has not calculated "overcharge damages" with respect to "any drugs other than those identified in Dr. Hartman's declarations" (Fact 8), which declarations reference Procrit but none of the other Johnson & Johnson drugs in issue.

Montana denies that it was paid $146,474 in rebates with respect to Procrit, but only because it admits it received an even larger rebate of $164,006 (Fact 10).  This means that the rebate payments to Montana exceeded the alleged "overcharge" by an amount greater than the J&J Defendants thought (Fact 9).  Montana purports to "deny" that it was paid $33,566 in rebates on Remicade (Fact 12), but then says it was paid rebates of $33,566, which is exactly the same amount.  Thus, the rebates paid to Montana on Remicade admittedly exceeded the alleged overcharge damages (Fact 11).

Montana does not deny the fact that its net reimbursement for Risperdal®, inclusive of rebates, is less than Dr. Hartman's estimate of pharmacy acquisition cost (Fact 14), but says merely that the testimony cited by the J&J Defendants in support of this contention does not support it.  Because the State neither explains why it believes the evidence does not support Johnson & Johnson's assertion, nor cites any evidence that conflicts with that assertion, this statement must be deemed admitted.  That Nevada and Montana's net reimbursement costs for Johnson & Johnson's other drugs are also less than pharmacy acquisition costs must also be deemed admitted (Facts 15 and 16), because the paragraph in Dr. Hartman's declaration that the States cite in opposition does not even mention the J&J Defendants or their drugs, let alone set forth any calculations of net reimbursement costs or pharmacy acquisition costs.

The States effectively admit that the amount that Nevada paid Walgreens in reimbursement for Risperdal was lower than Walgreen's cost of acquiring and dispensing Risperdal (Fact 17), stating only that "this is Dr. Gaier's opinion testimony." The States purport to deny that Nevada's reimbursement for Levaquin was approximately the same as Walgreen's cost of acquiring and dispensing Levaquin (Fact 18), but they do not cite any evidence to support their denial, which means that the statement is deemed admitted.

Finally, the States' do not deny that their calculations of alleged "overcharge damages" are based on outdated figures that Dr. Hartman corrected in subsequent proceedings (Facts 19-22). The States merely say that their damages calculations are "inconclusive" because Dr. Hartman "has not had the opportunity" to recalculate damages in this proceeding. This response is deficient under Rule 56.1 because it is not a denial supported by affidavits, depositions or other documentation.

In sum, the States' Response to the Johnson & Johnson Defendants' Individual L.R. 56.1 Statement of Undisputed Facts is deficient under Rule 56.1. Accordingly, all of the facts cited in support of the J&J Defendants' motion for summary judgment are admitted or must be deemed to be admitted.

**Certificate of Service**

I certify that a true and correct copy of the foregoing was served on all parties on May 10, 2007 via LexisNexis File & Serve.

/s/ Andrew D. Schau
Andrew D. Schau

1365288v1