UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | ) ) Master File No. 01-CV-12257-PBS |
| | ) ) |
| *State of Nevada v. American Home Products corp., et al.*, Civil Action No. 02-12086-PBS | ) Judge Patti B. Saris ) ) ) |

### INDIVIDUAL REPLY OF DEFENDANT
### ASTRAZENECA PHARMACEUTICALS LP
### IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................3

    A.    AstraZeneca Should be Granted Summary Judgment on All of the State's Claims Because the State Cannot Establish That It was Deceived ........................3

    B.    The Spreads Between Acquisition Costs and AWPs for AstraZeneca's Products Are Within Plaintiff's Expert's Expectation Yardstick...........................6

    C.    AstraZeneca Should be Granted Summary Judgment on All of the State's Claims Because the State Cannot Prove That It Suffered an Ascertainable Loss...........................................................................................................9

    D.    AstraZeneca Should be Granted Summary Judgment on the State's Best Price Claims Related to Zoladex ......................................................................12

CONCLUSION ........................................................................................................................13

i

# TABLE OF AUTHORITIES

PAGE

## Cases

*Arzoomanian v. British Telecom., Plc.*, No. 03-374 (PGS), 2007 U.S. Dist. LEXIS 2715
(D.N.J. Jan. 11, 2007) ..................................................................................... 11

*Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443 (1st Cir. 1995) ......................................... 10, 12

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).......................................................................... 12

*Graffam v. Town of Harpswell*, 250 F. Supp. 2d 1 (D. Me. 2003)................................... 10, 12

*In re Agent Orange Prod. Liab. Litig.*, 597 F.Supp. 740 (E.D.N.Y. 1984) .............................. 5

*In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005) ............. 6

*In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, CIV. A. No. 01-
12257-PBS,  2007 U.S. Dist. LEXIS 26242 (D. Mass. April 2, 2007).............................. 8

*Nevada Power Co. v. Monsanto Co.*, CV-S-89-555-DAE (LRL), 1994 U.S. Dist. LEXIS
20507 (D. Nev. Nov. 9, 1994) ........................................................................... 3

*United States v. Various Slot Machines*, 658 F.2d 697 (9th Cir. 1981).................................. 11

## Statutes and Rules

42 C.F.R. § 447.333(c)................................................................................................................. 9

42 U.S.C. § 1396a(a)(30)(A) ...................................................................................................... 12

## PRELIMINARY STATEMENT

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submits this individual reply in further support of its motion for summary judgment.  As set forth in the Defendants' Joint Memorandum of Law in Support of Their Motion for Summary Judgment, February 8, 2007 (Docket No. 3631) ("Joint Memorandum" or "Joint Mem.") and Defendants' Joint Reply in Further Support of Their Motion for Summary Judgment, April 5, 2007 (Docket No. 4019) ("Joint Reply"), Defendants are entitled to summary judgment on all claims brought by the State of Nevada (the "State" or "Plaintiff") in its Amended Complaint.[1]

In its opposition to AstraZeneca's motion for summary judgment, Nevada does nothing more than repeat its unsupported theory of liability and the allegations in its Amended Complaint:  "[AstraZeneca] reported average wholesale prices that were neither averages nor prices charged to any customer, knowing that the Nevada … state Medicaid program[] and other payors would rely on them as a basis for reimbursement and thus pay more than they should have out of the public coffers."  Montana and Nevada's Joint Opposition to Defendant AstraZeneca Pharmaceuticals LP's Motions for Summary Judgment ("Pls.' Opp.") at 1.  The State goes on to assert that "[r]eporting prices that differed from the plain meaning of 'average wholesale price' under the label of AWP would mislead a reasonable payor."  *Id.* at 2.  Finally,

---

[1] AstraZeneca incorporates by reference (1) Defendants' Joint Local Rule 56.1 Statement of Undisputed Material Facts in Support of Their Joint Motion for Summary Judgment, February 8, 2007 (Docket No. 3637) ("Joint 56.1 Stmt."); (2) Defendants' Joint 56.1 Reply to Additional Facts Relied Upon by Nevada In Response to Defendants' Motion for Summary Judgment, April 5, 2007 (Docket No. 4020) ("Joint Reply 56.1 Stmt."); (3) Local Rule 56.1 Statement of Undisputed Material Facts in Further Support of Defendant AstraZeneca Pharmaceutical LP's Motion for Summary Judgment, February 8, 2007 (Docket No. 3705) ("AstraZeneca 56.1 Stmt."); and (4) Defendant AstraZeneca Pharmaceuticals LP's Individual Rule 56.1 Response to the Additional Facts Relied Upon by the State of Nevada in Response to Defendants' Motion for Summary Judgment, April 5, 2007 (Docket No. 4016) ("AstraZeneca Reply 56.1 Stmt.").

the State concludes that such purported actions by AstraZeneca "demonstrate[] the unfair and deceptive nature of [AstraZeneca's] subject drug prices." *Id.*

Whatever the import may be of merely parroting conclusory allegations in connection with a motion to dismiss, the summary judgment stage is different. It requires proof and support in the factual record. The State's allegations do not suffice. Indeed, the record does not establish basic elements of the State's claims against AstraZeneca; for example, that (1) the AWPs for AstraZeneca's products reported in various pricing compendia were false; deceptive, or misleading; (2) AstraZeneca was responsible for the publication of AWPs in these pricing compendia; and (3) the State set its Medicaid reimbursement formula based on the plain meaning of AWP.

To the contrary, there is an abundance of evidence in the record demonstrating that the State knew for many years that AWP was a pricing benchmark, rather than an *actual* average of wholesale prices for prescription drugs. In addition, the spreads between acquisition costs and AWPs for AstraZeneca's products were within the State's expert's expectation yardstick. Finally, the record does not establish that the State suffered, or that AstraZeneca caused, any ascertainable losses as is required in order for the State's claims to proceed.

## ARGUMENT

A.   **AstraZeneca Should be Granted Summary Judgment on All of the State's Claims Because the State Cannot Establish That It was Deceived.**

The State does not dispute—nor can it—that AstraZeneca is entitled to summary judgment on all of the State's claims as a matter of Nevada law if the State is unable to establish that it was deceived by AstraZeneca's purported misconduct.  *See* Individual Memorandum of Law in Further Support of Defendant AstraZeneca Pharmaceuticals LP's Motion for Summary Judgment, February 8, 2007 (Docket No. 3704) ("AstraZeneca Mem."), at 5.  Moreover, the State is deemed to have been aware of this supposed misconduct at the point where it had the means to ascertain the truth of any supposedly fraudulent or deceptive representation.  *See Nevada Power Co. v. Monsanto Co.*, CV-S-89-555-DAE (LRL), 1994 U.S. Dist. LEXIS 20507, *20-*21 (D. Nev. Nov. 9, 1994) (explaining that at the summary judgment stage a "plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud") (citations omitted).

As discussed in Defendants' Joint Memorandum and Joint Reply, the State was not deceived regarding AWP.  The record establishes that AWP was known to be a pricing benchmark or sticker price, rather than an *actual* average of wholesale prices.  *See* Joint Mem. at 12-30; Joint Reply at 2, 11-14.  Indeed, the evidence is overwhelming that Nevada Medicaid knew that its reimbursement formula and calculation of an estimated acquisition cost ("EAC") for prescription drugs resulted in payments to providers well above their acquisition costs, but it chose to reimburse at these levels to compensate providers for the State's persistent under-payment of dispensing fees and to ensure that enough providers would remain in its pharmacy

network to meet its federal statutory obligations.  *See* Joint Mem. at 20-22; Joint Reply at 13.

Moreover, Nevada Medicaid officials have testified that they received the numerous government

reports distributed to state Medicaid programs over the last thirty years concerning the

relationship between AWP and the actual acquisition costs of providers.  *See* Joint Mem. at 15-

18; Joint Reply at 13-14.  As Magistrate Judge Bowler has already ruled, Nevada Medicaid

agencies cannot "believably maintain that policymakers failed to consider the dozens of AWP

related documents" that they would have received from the federal government.  Report and

Recommendation re: Defendants' Joint Motion For Redress For Spoliation of Evidence, March

14, 2007  (Docket No. 3843) ("March 14 Report and Recommendation"), at 26, Declaration of

James J. Duffy in Support of the Individual Reply of Defendant AstraZeneca Pharmaceutical LP

in Further Support of Its Motion for Summary Judgment ("Nevada Duffy Decl.") ¶ 2, Ex 1.  In

addition, she determined that due to the State's failure to preserve documents, Defendants are

entitled to an inference that, as of May 2000, Nevada Medicaid had a practice of maintaining

federal reports related to AWP and circulating them among state employees responsible for

setting Nevada's reimbursement rate.  *See id.*  Thus, because the State's essential allegation of

deception cannot be established through evidence, summary judgment is warranted for all

Defendants on all of Nevada's claims.

With respect to AstraZeneca's drugs, the record also establishes that the State could not

have been deceived into believing that the published AWPs for AstraZeneca products were the

equivalent of the actual acquisition costs for those products because Nevada state agencies were

purchasing significant quantities of various AstraZeneca drugs at prices *below* the Nevada

Medicaid ingredient cost reimbursement rate.  *See* AstraZeneca 56.1 Stmt. ¶ 15.  As a matter of

4

law, Magistrate Judge Bowler ruled that Defendants are entitled to an inference that, after May 2000, the State Medicaid agency had information regarding the prices at which three non-Medicaid State entities purchased Defendants' drugs, including AstraZeneca's products. *See* March 14 Report and Recommendation at 27. Moreover, given that other Nevada non-Medicaid entities were purchasing AstraZeneca drugs at prices below their AWPs, the knowledge of these other State agencies should be imputed to Nevada Medicaid. *See In re Agent Orange Prod. Liab. Litig.*, 597 F.Supp. 740, 796 (E.D.N.Y. 1984) ( finding that knowledge of one state agency can be imputed to other state agencies).

In addition, the record demonstrates that the underlying economics and distribution mechanics for AstraZeneca's drugs render the State's theory of liability nugatory as to AstraZeneca's branded pharmacy-dispensed products, which are at the core of the State's claims against AstraZeneca. As discussed in AstraZeneca's opening brief, *see* AstraZeneca Mem. at 2, 6-7, a spread on branded outpatient drugs could not result in additional sales or expanded market share for a manufacturer because pharmacists have no power to influence the prescribing decisions of doctors.

In its opposition, the State attempts to refute such an argument by creating a purported issue of material fact with respect to whether AstraZeneca had an incentive to manipulate the spread on its self-administered drugs ("SADs"). *See* Pls.' Opp. at 13-14. The internal AstraZeneca documents cited by the State, however, create no such issue of fact.[2] To the

---

[2] The internal AstraZeneca documents cited by the State do not establish any rationale for why AstraZeneca would endeavor to manipulate the spreads on its branded outpatient drugs that are compensated for under the Nevada Medicaid program. The State relies primarily on a pricing strategy document for a single drug (Atacand) that, in fact, concludes that "rewarding [retailers] with an increase in AWP is *illogical*" given their marginal influence on prescribing decisions and the impact that such a change would have on other market participants. Breckenridge Decl., Ex. 54 at AZ0463900 (emphasis added). The State also cites to a document that states that

contrary, it is evident—as the MDL Court has recognized—that retail pharmacies cannot impact market share for branded outpatient drugs. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 74 (D. Mass. 2005).

B. **The Spreads Between Acquisition Costs and AWPs for AstraZeneca's Products Are Within Plaintiff's Expert's Expectation Yardstick.**

As discussed in AstraZeneca's opening brief, the State's own expert—Dr. Raymond Hartman—has concluded that payers are aware that AWPs are greater than average sales prices ("ASPs"), and these payers rely on AWPs to bear a predictable relationship to ASPs. *See* AstraZeneca 56.1 Stmt. ¶ 17. Dr. Hartman went on to determine what the expectation was for that relationship, finding a reasonable expectation to be a 30 percent spread between AWP and ASP, which he described in the class case as a liability threshold. *See id.* ¶ 18.

The spreads on AstraZeneca's self-administered drugs that are the subject of this case are well within the 30 percent threshold identified by Dr. Hartman. Indeed, over the period of the State's allegations, the spread between AWP and WAC for all of AstraZeneca's Medicaid-covered drugs was either 20 or 25 percent. *See id.* ¶ 7. Because the spreads between the AWPs and the actual acquisition costs (using WAC as a proxy) of AstraZeneca's drugs were within the bounds of what would have been expected by the State—as acknowledged by the State's own expert—the State cannot establish that it has been deceived or that the AWPs for AstraZeneca's drugs caused the State any loss.

---

altering the relationship between AWP and Wholesale Acquisition Cost ("WAC") would economically benefit pharmacists, *see* Breckenridge Decl., Ex 50 at AZ0565612, but this document fails to provide a reason why AstraZeneca would have an economic incentive to create such a spread on its products. Finally, the State cites to a document that instructs AstraZeneca's sales representatives on how to interact with pharmacists with respect to the drug Entocort EC, including remembering to inquire as to whether pharmacists are stocking the drug and how to review patient education information. *See* Breckenridge Decl., Ex. 55 at AZ0619990-93. Again, this document is irrelevant to the issue of whether AstraZeneca had an incentive to manipulate and market the spread on its branded outpatient drugs.

The State responds that Dr. Hartman's 30 percent "expectation yardstick" is not applicable in this case because "[t]he Medicaid market at issue here is different from the private payor market about which Dr. Hartman opined in the class case," and that "[t]he measurement in the Medicaid markets, according to Dr. Hartman, is the calculation used to approximate EAC." Pls.' Opp. at 16.

Such unsupported allegations by the State, however, are directly contrary to the testimony of Dr. Hartman himself in this case.[3]  As acknowledged by the State, Dr. Hartman testified that not only would his 30 percent "expectation yardstick" apply to third-party payers, but he specifically testified that state Medicaid agencies are market participants and would have such an expectation.  *See* AstraZeneca 56.1 Stmt. ¶ 19.  Moreover, as the MDL Court noted during the April 11, 2007 pre-trial conference, "everyone knew about a 20 to 25 percent spread, maybe 30 percent.  *Everyone* knew, *everyone*."  April 11, 2007 Pre-Trial Conference Transcript, *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, CIV. A. No. 01-12257-PBS (Saris, J.), at 22, Nevada Duffy Decl. ¶ 3, Ex 2.  Specifically with respect to government knowledge, the Court observed that "they for sure knew … about spreads in the 30 percent range."  *Id.*  Thus, the record contains overwhelming proof, as the State's own expert explicitly acknowledges, that Nevada Medicaid must have known that AWPs were substantially higher than pharmacies' actual acquisition costs.

---

[3] Furthermore, the State's calculation of EAC is clearly not a reliable proxy for its expectations of this relationship because the State has continued to use the same EAC, even after it initiated this lawsuit and was certainly aware that its EAC significantly understates the relationship between AWP and WAC.  In addition, under the Medicaid regulations, EAC should be based on provider cost studies, *see* 42 C.F.R. § 447.333(c), which the State has failed to undertake.

Plaintiff also argues that, "[e]ven if Dr. Hartman's 30% expectation theory for the private payor markets applied here, the evidence is in dispute as to whether [AstraZeneca's] spreads fall below this level." Pls.' Opp. at 16. The State, however, cites to no credible facts or evidence to support this proposition and, therefore, it should not be accepted by this Court.

The State first contends that the conclusion of AstraZeneca's expert Joel Winterton that the spread between AWP and WAC for all of AstraZeneca's Medicaid-covered drugs was either 20 or 25 percent "is based on his analysis of just five of [AstraZeneca's] Medicaid products for the period 1991 to 2004." *Id.* As an initial matter, this is not true. Over the period of Plaintiff's allegations, the spread between AWP and WAC for *all* of AstraZeneca's Medicaid-covered outpatient drugs was either 20 or 25 percent. *See* AstraZeneca 56.1 Stmt. ¶ 7. Moreover, the five AstraZeneca drugs that Mr. Winterton focuses on in his expert report comprised over 80 percent of the State's total Medicaid expenditures for AstraZeneca drugs from 1991 to 2004. *See id.* ¶ 5.

Plaintiff secondly argues that "Mr. Winterton applied rebates to the State's reimbursements to achieve the price. Only through the offset of rebates does Mr. Winterton reach the sub-30% levels." Pls.' Opp. at 16. Again, this unsupported claim by the State is not true. In finding that the spread between AWP and WAC for *all* of AstraZeneca's Medicaid-covered outpatient drugs was either 20 or 25 percent, Mr. Winterton did *not* apply rebates. *See* AstraZeneca 56.1 Stmt. ¶ 7; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, CIV. A. No. 01-12257-PBS, 2007 U.S. Dist. LEXIS 26242, at *126 (D. Mass. April 2, 2007) (noting that there is a standard 20 or 25 percent mark-up from WAC to AWP for brand

name prescription drugs).  The assertions of the State's lawyers to the contrary are not sufficient to create an issue of fact and defeat a motion for summary judgment.

Finally, in attempting to refute Mr. Winterton's conclusion that, over the period of Plaintiff's allegations, the spread between AWP and WAC for *all* of AstraZeneca's Medicaid-covered drugs was either 20 or 25 percent, the State cites to competing spreads calculated by Dr. Hartman that purportedly show that "the actual [AstraZeneca] spreads for the relevant time period were 20.89% -169.31%."  Pls.' Opp. at 17.  As an initial matter, the spreads cited to by the State pertain only to the physician-administered drug Zoladex, which represents less than 1 percent of Nevada's total Medicaid expenditures for AstraZeneca drugs from 1991 to 2004.  *See* Defendant AstraZeneca Pharmaceuticals LP's 56.1 Statement of Additional Facts in Support of Its Reply to Montana and Nevada's Joint Opposition to Its Motion for Summary Judgment ("AstraZeneca Reply II 56.1 Stmt.") ¶ 1.  Further, the spreads contained in Dr. Hartman's table are inflated and based upon a faulty methodology and, therefore, should be stricken by the Court. In calculating these spreads, Dr. Hartman calculated the ASP for Zoladex by incorporating 50 percent of the units of all Zoladex samples distributed by AstraZeneca in the relevant time period.  *See* AstraZeneca Reply 56.1 Stmt. ¶ 144.  When asked how he derived this 50 percent assumption, Dr. Hartman responded it was the product of "a coin toss."  *Id.*  Based on this unsupported assumption and faulty methodology, the MDL Court struck the spreads calculated by Dr. Hartman for Zoladex, *see id.*, which the State now seeks to reply upon.

C.     **AstraZeneca Should be Granted Summary Judgment on All of the State's Claims Because the State Cannot Prove That It Suffered an Ascertainable Loss.**

The State acknowledges that "[l]oss is a material element of all of the State's causes of action."  Pls.' Opp. at 17.  Notwithstanding such an acknowledgement, the State neglects to

9

provide any support for its unsubstantiated conclusion that it has satisfied this element.  Instead, the State's sole response to the numerous points raised by AstraZeneca regarding the State's failure to demonstrate loss is to cite to, in conclusory fashion, Dr. Hartman's calculation of damages.[4]  *See id.*

Dr. Hartman's report, however, is a purposefully circumscribed analysis of damages that is focused on the penalty provisions of the Nevada statutes in question.  Dr. Hartman specifically acknowledges that he is basing liability upon instructions from counsel:  "I have been instructed by Counsel that liability occurs as a matter of law if AA [amount allowed as reimbursement] [is greater than] EAC [estimated acquisition cost]."  AstraZeneca Reply II 56.1 Stmt. ¶ 2. Under such circumstances, where the parameters for establishing liability are predetermined by counsel, it is not surprising that Dr. Hartman arrived at a damages calculation that cannot be supported by any facts in the record.

The State has always claimed that the basis for its claims is that it was overpaying pharmacies and, thus, it should be able to demonstrate that Nevada pharmacies were making large, unwarranted profits on the sale of AstraZeneca's drugs.  Similarly, because the State has acknowledged that loss is a necessary element of all of its claims, it must be able to prove that— absent AstraZeneca's purported misconduct—it would have paid pharmacies less.  Dr. Hartman's damages calculation, however, does not demonstrate either that pharmacies were

---

[4] Thus, the State's failure to substantively address any of AstraZeneca's arguments regarding loss merits summary judgment on all of the State's claims.  *See Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1446 (1st Cir. 1995) ("Properly supported facts set forth by the moving party are deemed admitted unless controverted by the factual statement of the opposing party."); *Graffam v. Town of Harpswell*, 250 F. Supp. 2d 1, 7 (D. Me. 2003)  ("The plaintiff does not respond to [defendant]'s argument on this claim and accordingly is deemed to have waived opposition."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial).

being overpaid as a result of Defendants' misconduct or that Nevada could have reimbursed pharmacies at a lower rate.

Moreover, a fundamental flaw in Dr. Hartman's analysis is that he fails to consider the effects of the dispensing costs incurred by Nevada pharmacies in arriving at a damages calculation. *See* AstraZeneca Reply II 56.1 Stmt. ¶ 3.  He also fails to consider the State's obligations under federal law, which sets a floor on the amount the State can reimburse for pharmaceutical drugs.  *See id.*  Indeed, the State completely ignores these crucial points in its opposition papers and—given these deficiencies—Dr. Hartman's expert opinion cannot serve as a proxy for the State's demonstration of loss.  *See, e.g.*, *United States v. Various Slot Machines*, 658 F.2d 697, 699 (9th Cir. 1981) (holding that an expert opinion that is contrary to the facts of the case should not be given weight at summary judgment); *Arzoomanian v. British Telecom., Plc.*, No. 03-374 (PGS), 2007 U.S. Dist. LEXIS 2715, at *52 (D.N.J. Jan. 11, 2007) (same).

As discussed in AstraZeneca's opening brief, AstraZeneca's alleged misconduct could not have caused the State to suffer injury because, taking into account Medicaid rebates, the State's net costs for AstraZeneca's drugs were actually less than the acquisition costs of Montana pharmacies.  *See* AstraZeneca Mem. at 10-11.  In addition, AstraZeneca's expert, Mr. Winterton, demonstrates that, in most instances, pharmacies actually lost money in dispensing AstraZeneca's drugs to Nevada Medicaid beneficiaries, and would have suffered substantial losses dispensing these drugs in Dr. Hartman's "but-for" world.  *See* AstraZeneca 56.1 Stmt. ¶¶ 13-14, 22.  Because the State could not have realistically lowered its reimbursement rates for these products—without Nevada pharmacies suffering a loss each time they dispensed an AstraZeneca product—there is no ascertainable loss suffered by the State.  The State of Montana

11

fails to address either of these arguments in its opposition to AstraZeneca's motion for summary judgment.

In sum, the State cannot adequately support its claims that it has suffered ascertainable losses as a result of AstraZeneca's alleged misconduct.  The State presents no evidence whatsoever to demonstrate proof of loss, provides no explanation as to why Dr. Hartman failed to consider dispensing costs in his damages calculations, and simply ignores the mandates of the equal access provision of the Medicaid Act.  *See* 42 U.S.C. § 1396a(a)(30)(A).  As a result, AstraZeneca is entitled to summary judgment on all of the State's claims.

D.     **AstraZeneca Should be Granted Summary Judgment on the State's Best Price Claims Related to Zoladex.**

As discussed in AstraZeneca's opening brief, there are no facts or evidence in the record to support the State's Best Price claims related to Zoladex.  *See* AstraZeneca Mem. at 15-16. The State's complete failure to address AstraZeneca's arguments regarding its Best Price claims means that these claims are deemed waived.  *See Rhodes Gill & Co.*, 68 F.3d at 1446; *Town of Harpswell*, 250 F. Supp. 2d at 7. Moreover, the State acknowledges that it can only proceed on claims for which it has demonstrated the existence of damages, *see* Pls. Opp. at 17 n. 50 ("the States only pursue those damages calculated by Dr. Hartman"), and, since the State has not demonstrated the existence of ascertainable losses for its Best Price claims, AstraZeneca is entitled to summary judgment on these claims.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in AstraZeneca's opening brief,

Defendants' Joint Memorandum, and Defendants' Joint Reply, AstraZeneca is entitled to

summary judgment on all of the State of Nevada 's claims.


Dated:   Boston, Massachusetts
         May 10, 2007
                              Respectfully Submitted,


                              By:   /s/ Katherine B. Schmeckpeper

                                    Nicholas C. Theodorou (BBO # 496730)
                                    Katherine B. Schmeckpeper (BBO #663200)
                                    FOLEY HOAG LLP
                                    155 Seaport Blvd.
                                    Boston, Massachusetts 02210
                                    Telephone:  (617) 832-1000

                                    D. Scott Wise (admitted *pro hac vice*)
                                    Michael S. Flynn (admitted *pro hac vice*)
                                    James J. Duffy (admitted *pro hac vice*)
                                    DAVIS POLK & WARDWELL
                                    450 Lexington Avenue
                                    New York, New York  10017
                                    Telephone:  (212) 450-4000
                                    Facsimile:  (212)-450-3800

                                    *Attorneys for Defendant AstraZeneca*
                                    *Pharmaceuticals LP*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2007, I caused a true and correct copy of the foregoing, the Individual Reply of Defendant AstraZeneca Pharmaceuticals LP in Further Support of Its Motion for Summary Judgment, to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 in MDL No. 1456.


/s/ Katherine B. Schmeckpeper
Katherine B. Schmeckpeper

14