THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | ) ) ) ) ) ) ) | MDL NO. 1456 <br> Civil Action No. 01-12257-PBS <br> Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | |
| *State of Montana v. Abbott Labs., Inc., et al.,* <br> CA No. 02-CV-12084-PBS | ) ) ) | REQUEST FOR ORAL ARGUMENT |

**REPLY MEMORANDUM IN SUPPORT OF BAYER'S
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In its Opposition, the State of Montana confirms that it has walked away from nearly its entire case against Bayer. Gone are the State's claims relating to the drugs involved in the 2001 Settlement, both for the pre-settlement time period and the post-settlement period. (Opp'n at 2, 4). Gone too are the State's best price claims and its claims relating to DTIC-Dome and Mithracin. (*Id.*) All that remains are the AWP fraud claims relating to Cipro—and even those are limited to "Cipro claims arising before the 2001 Settlement." (Opp'n at 4).

But the State's pre-settlement Cipro claims are every bit as meritless as those claims that the State expressly abandons. The undisputed evidence establishes that throughout the relevant time period Cipro's AWP was always precisely 20% above Wholesale Price ("WP") and that WP was a real price—*i.e.*, the vast majority of Cipro sales occurred at WP. (BSUF ¶¶ 98–101).[1] The State does not contest these facts. Indeed, when compelled by the Local Rules to respond to these facts, the State *admits* them. (*See* Montana's Resp. to Bayer's Local Rule 56.1 Statement (Docket No. 4091) ¶¶ 98–101). The State's inability to contest the dispositive facts concerning Cipro, together with its abandonment of all other claims against Bayer, requires the Court to grant Bayer's motion for summary judgment.

---

[1] Citations to "BSUF" and "BAYAPP" refer to Bayer's Local Rule 56.1 Statement of Undisputed Facts in Support of Motion for Summary Judgment ("BSUF") and Bayer's Appendix of Documents in support thereof ("BAYAPP").

# ARGUMENT

I. **THE UNDISPUTED FACTS REQUIRE JUDGMENT AS A MATTER OF LAW ON THE STATE'S SOLE REMAINING CLAIM AS TO CIPRO IN THE PRE-SETTLEMENT PERIOD**

   A. **The State's Admission that Cipro's AWP Has Always Been Pegged at 20% above Its Selling Price Compels Summary Judgment**

In its opening memorandum, Bayer explained that "Cipro's AWP always maintained a precise, formulaic relationship to the price at which Bayer actually sold the product." (Mem. at 7–8). Specifically, Bayer sold the "vast majority" of Cipro at Wholesale Price ("WP"), which was Bayer's term for Wholesale Acquisition Cost. (Rosenberg Decl. ¶ 12, BAYAPP Tab C; BSUF ¶ 98). Throughout the period relevant here, the AWP for Cipro products was—without exception—precisely 20% above its WP. (Rosenberg Decl. ¶ 14–15; BSUF ¶¶ 100–01).

In response, the State does not dispute the dispositive legal significance of these facts. Instead, the State makes the remarkable assertion that "[t]here is certainly no evidence" of a fixed relationship between Cipro's AWP and its selling price. (Opp'n at 3). This statement willfully ignores the Declaration of Gerald Rosenberg, who from 1987 to 2001 was personally involved in Bayer pricing decisions. (Rosenberg Decl. ¶ 2). The Rosenberg Declaration establishes as an undisputed fact that, over the course of more than a decade prior to 2001, Cipro's WP reflected its true selling price and that Cipro's AWP never exceeded 1.20 times its WP. (*Id.* ¶ 15).

The State cannot manufacture an issue for trial by blinding itself to reality. Indeed, in its response to Bayer's Local Rule 56.1 Statement—where the State had no choice but to confront these facts head-on—the State *admits* them unconditionally. (*See*

Montana's Resp. to Bayer's Local Rule 56.1 Statement (Docket No. 4091) ¶¶ 98–101) (hereafter "Montana's 56.1 Response").  These admissions are binding and require summary judgment in favor of Bayer.

The Court's prior rulings leave no room for the State to contend that a fixed 20% "spread" between selling price and AWP can constitute fraud.  The Court has noted that "spreads" of 20% or 25% are well within established industry norms and are not deceptive or fraudulent.  *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, 2007 U.S. Dist. LEXIS 26242, at *126 n.9 ("Only those drugs for which the plaintiffs have alleged a spread greater than the 20–25% mark up between WAC and AWP survive."); Pre-Trial Conf. Tr. 22 (Apr. 11, 2007) (Saris, J.) ("everyone knew about a 20 to 25 percent spread, maybe 30 percent.  Everyone knew, everyone") (attached as Ex. G to Supp'l Doss Decl.); *id.* at 24–25 (with respect to government knowledge specifically, the court observed that "they for sure knew . . . about spreads in the 30 percent range").  Likewise, Montana's own expert, Raymond S. Hartman, testified that Montana Medicaid officials knew about and expected "spreads" of up to 30% over selling price.[2]

In these circumstances, it is no surprise that at the time of Bayer's 2001 settlement State and federal officials saw no issue with Cipro pricing or "spreads." (Bayer's Mem. at 7–8; BSUF ¶¶ 17–18).  There was then and there is now no evidence to support any claim relating to Cipro.

---

[2] Deposition of Raymond S. Hartman, August 22, 2006 Vol. 1, 31:9–32:21, attached as Ex. E to the Supp'l Doss Decl.

### B.  Mr. Buska's Declaration Does Not Create Any Genuine Issue As to Causation-in-Fact

As Bayer demonstrated in its opening brief, summary judgment should be granted for Bayer on the State's pre-settlement Cipro claims for the additional reason that Montana cannot show causation-in-fact. (Mem. at 8–9). In this regard, the State is bound by the admission of its designated 30(b)(6) witness, Jeff Buska, who testified that Montana would have made the same payments to providers during the pre-settlement period "regardless of whether Bayer provided ASP information." (BSUF ¶115). This admission remains unrebutted and compels summary judgment in Bayer's favor.

In its opposition, Montana purports to provide "context" for this admission by suggesting that Bayer's post-2001 ASP reporting was somehow incomplete, unreliable, or unusable. (Opp'n at 3–4). In support, the State submits a new declaration of Mr. Buska, which directly contradicts his prior deposition testimony. At his deposition, Mr. Buska testified without qualification that Bayer provided Montana the ASP reports every quarter for all Bayer drugs;[3] that no one from Montana Medicaid ever raised concerns about the ASP reports with Bayer;[4] and that Montana never even considered what it would take to incorporate the Bayer's ASP information

---

[3] *See* Montana 30(b)(6) Dep., Vol. III, Dec. 15, 2006, at 501:18–502:2, 515:6–10, 517:5–14, 553:11–554:1 (hereafter "Montana 30(b)(6) Dep.") (attached as Ex. F to the Supp'l Doss Decl.). Exhibits D-1 to D-22 to the accompanying Supplemental Doss Declaration include copies of signed certified mail receipts demonstrating that Montana timely received each quarterly report.

[4] *See* Montana 30(b)(6) Dep., at 513:19–514:18; *see also* Affidavit of Jeffrey M. Greenman in Support of Bayer Corporation's Motion for Summary Judgment ¶ 9, BAYAPP Tab A (Document 3738-3).

into the State's reimbursement system.[5]  Mr. Buska's newly-concocted declaration casts doubt on each of these propositions, without providing any explanation why he previously told a different story under oath.

This tactic does not create a genuine issue of material fact.  The law is clear that Montana cannot manufacture a factual dispute by submitting a declaration that, without explanation, contradicts a deponent's prior sworn testimony.  *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001) (federal courts "have repeatedly held that a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony is changed"); *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001) ("We have refused to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit."); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir. 1991) (holding that a party cannot avoid summary judgment by submitting a contradictory affidavit that is a sham, as opposed to an affidavit that contradicts deposition testimony as a result of an honest discrepancy, mistake, or newly discovered evidence).  The Court should therefore ignore Mr. Buska's declaration, which does nothing to undermine his earlier sworn admission.

In yet another diversionary tactic, Montana attempts to question whether Bayer fully complied with the requirements of the 2001 Settlement and associated Corporate Integrity Agreement ("CIA") by claiming that some of the evidence Bayer submitted on this point is hearsay.  (*See* Montana's 56.1 Resp. ¶¶ 37, 40–42, 44, 50–54,

---

[5] *See* Montana 30(b)(6) Dep., at 558:15–559:16, 561:9–18.

60).  But the evidence in question—the Affidavit of Jeffrey Greenman—is not hearsay at all.  Mr. Greenman's testimony is based on his personal observations and first-hand experience as Bayer's Compliance Officer since 2002.  As Compliance Officer, a position created by the CIA, Mr. Greenman has been personally responsible for ensuring that Bayer fully complies with the terms of the 2001 Settlement and CIA.  (Greenman Aff. ¶ 1-2, 5, BAYAPP Tab A (Document 3738-3)).  Thus, he testifies from his own experience and observation that Bayer sent Montana Medicaid each ASP report, that no state or federal governmental body has questioned the accuracy of Bayer's ASP reporting or invoked its right to review the supporting work papers, and that Bayer's ASPs have been vetted annually by an independent auditor.  (Greenman Aff. ¶¶ 7-9).

In sum, despite the State's best efforts to muddy the waters, there is no real dispute that Bayer did not cause any injury to the State.  The State's critical admission that earlier provision of ASPs to the State by Bayer would have made no difference in the State's payment practices supplies an additional and wholly sufficient reason to grant summary judgment for Bayer on the State's remaining claims.

## CONCLUSION

For the reasons stated above, Bayer respectfully requests that the Court grant its Motion and enter summary judgment against Montana on all counts of the State's Complaint.

May 10, 2007

        /s/ Richard D. Raskin
Richard D. Raskin
Michael Doss
Ben J. Keith
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
312-853-7000 (tel.)
312-853-7036 (facsimile)

- 8 -

## CERTIFICATE OF SERVICE

      I hereby certify that on May 10, 2007, I caused a true and correct copy of the Reply Memorandum in Support of Bayer's Motion for Summary Judgment to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 in MDL No. 1456.

                        /s/ Michael Doss

CH1 3869004v.1