# Exhibit G

1                    IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF MASSACHUSETTS

2

3

         In Re:                          )

4        PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS

         AVERAGE WHOLESALE PRICE         ) MDL No. 1456

5        LITIGATION                      ) Pages 1 - 68

6

7

8                        PRETRIAL CONFERENCE

9              BEFORE THE HONORABLE PATTI B. SARIS

                    UNITED STATES DISTRICT JUDGE

10

11

12

13

                              United States District Court

14                            1 Courthouse Way, Courtroom 19

                              Boston, Massachusetts

15                            April 11, 2007, 3:05 p.m.

16

17

18

19

20

21

22

                         LEE A. MARZILLI

23                   OFFICIAL COURT REPORTER

                  United States District Court

24                1 Courthouse Way, Room 3205

                     Boston, MA  02210

25                     (617)345-6787

```
1                 THE COURT:  Tell me what "it" is.

2                 MR. BOUDETT:  Spreads, that the spreads were

3       secret.

4                 THE COURT:  Let me tell you, having just been

5       through this, everyone knew about a 20 to 25 percent spread,

6       maybe 30 percent.  Everyone knew, everyone.  This is why I

7       found your papers so difficult to follow.  If all he's going

8       to say is everyone knew about a spread, for want of a better

9       word, within the speed limit, if that's all he's going to

10      say, that's not a problem because it would almost be

11      stipulated to.

12                MR. BOUDETT:  No, your Honor.

13                THE COURT:  All right, what will he say?

14                MR. BOUDETT:  He will testify as to knowledge of

15      discounting off of WAC creating spreads larger than the

16      Hartman speed limit.

17                THE COURT:  What were the Zoladex spreads?  I don't

18      remember.

19                MR. BOUDETT:  Well, it depends what year you ask

20      about.  At their height, they were, I think, 142 percent,

21      according to the Hartman calculation, 140 to 150 percent.

22                THE COURT:  Is he going to say the government knew

23      that?

24                MR. BOUDETT:  He is going to say the government

25      knew of spreads well in excess of the Hartman speed limit.
```

```
1    His testimony would not be specific to Zoladex.  It was not

2    one of the top five blockbuster, budget-buster drugs that the

3    regulators were paying attention to, which --

4            THE COURT:  So as I understand it, the OIG reports,

5    were any of them referencing Zoladex?

6            MR. BOUDETT:  Yes, your Honor.

7            THE COURT:  Which ones?

8            MR. BOUDETT:  The '92 certainly listed Zoladex

9    among the 30 drugs that was listed and gave a spread in

10   excess of 30 percent, if I recall correctly.

11           THE COURT:  What was it, Zoladex?  I remember

12   Hartman saying that all the 1992 ones were roughly in the

13   speed limit zone.

14           MR. BOUDETT:  I don't believe that's the case.

15           MR. BERMAN:  It was within the speed limit.

16           THE COURT:  What?

17           MR. BERMAN:  It was within the speed limit.

18           MR. BOUDETT:  I would have to follow up on that

19   one, your Honor.

20           MR. BERMAN:  We have an exhibit that shows that

21   from the trial.

22           THE COURT:  Let me put it this way:  Why don't you

23   make me a proffer as to what he would say in writing.  They

24   are very hot and bothered by the notion that the government

25   approved the mega spreads.  My sense is that to the extent
```

1   that he is going to testify about what he knew, it would be

2   relevant but only as it affected AstraZeneca.  That's why I

3   needed a proffer.  I don't know why, if he knew about some

4   other company's spread, why that would be so relevant.  I'm

5   not saying I'm not.  I was going to say here today, yes, if

6   he knew about the spreads, if he was told specifically about

7   the Zoladex spreads or about the battle going on, that might

8   be relevant to lack of intent to deceive.  I don't know that

9   I'll let you say that the government "approved" it unless you

10  say specifically he has letters or he said, "That's okay, go

11  ahead, guys, do the 600 percent spread."  I don't think you

12  have that, right?

13          MR. BOUDETT:  Not with regard to AstraZeneca

14  specifically, but can I make two quick points in response to

15  what you just said?  We will make the proffer, and I know

16  you're going to think about this issue more, but my two

17  points are these:  First of all, the approval issue that the

18  plaintiffs are trying to set up is a straw man, I would

19  suggest.  Our case is not that the government approved of

20  mega spreads, endorsed them, liked them.  Some people in the

21  government may have done so, others didn't, but that's not

22  our burden.  Our case is that the government knew of the

23  spreads and didn't change the system until 2003.  That's

24  different than approval, so --

25          THE COURT:  Let me just say, they for sure knew,

1    and I would allow it to come in, about spreads in the

2    30 percent range.

3            MR. BOUDETT:  We will prove well beyond the

4    30 percent, they knew and didn't change the system.

5            THE COURT:  But you can only put it in if it

6    affects Zoladex, or possibly, possibly Lupron, I mean,

7    because that's part of the same tale; but not if it's about

8    albuterol sulfate because that everyone knew, right?  Because

9    that was a multi-source and it was a different animal.  I

10   mean, I've been struggling with them one by one.  Each one

11   has a different story.  Each drug within the company has a

12   different story.  So you make the proffer, but I'm not saying

13   "no" in general.  And he's not going to say the government

14   approved it.  I think that would be wrong.  He's not here as

15   a spokesman for the government, and he's not been designated

16   as such.

17           MR. BOUDETT:  Correct.

18           THE COURT:  What he knew might be relevant but only

19   if it's about this company and these drugs.

20           MR. BOUDETT:  This is my second point.  It's very

21   brief, your Honor.  I would urge your Honor to wait to make

22   that ruling until you hear the plaintiffs' expert testimony

23   and rule on this during cross, and we can have a side bar on

24   this issue before cross --

25           THE COURT:  Okay.