UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL NO. 1456 <br> ) ) CIVIL ACTION NO. 01-CV-12257-PBS ) |
| THIS DOCUMENT RELATES TO | ) ) Judge Patti B. Saris ) |
| *State of Montana v. Abbott Labs. Inc., et al.*, <br>  CA No. 02-CV-12084-PBS <br>  D. Mont. Cause No. CV-02-09-H-DWM | ) ) ) ) |
| *State of Nevada v. Abbott Labs., Inc., et al.* <br>  CA No. 02-CV-12086-PBS (Nevada II) <br>  D. Nev. Cause No. CV-N-02-0202-ECR | ) ) ) ) |

**REPLY IN SUPPORT OF FUJISAWA HEALTHCARE, INC. AND FUJISAWA USA, INC.'S INDIVIDUAL MOTIONS FOR SUMMARY JUDGMENT[1]**

**I.   INTRODUCTION**

Fujisawa Healthcare Inc. and Fujisawa USA, Inc.'s ("Fujisawa") summary judgment motions firmly establish that there are no material facts in dispute in the cases captioned above, and that Fujisawa is entitled to judgment as a matter of law on the undisputed facts of each case.[2] The State of Montana and the State of Nevada's ("States") Opposition to Fujisawa's memoranda does not controvert Fujisawa's arguments. Contrary to the States' contention, Fujisawa's memoranda directly attack and refute the States' allegation that Fujisawa knowingly published AWPs that

---

[1] Fujisawa joins in the Defendants' Reply to the State of Montana's Opposition to Defendants' Joint Motion for Summary Judgment ("Defendants' MT Joint Reply") [Docket No. 4002] and Defendants' Joint Reply in Further Support of Their Motion for Summary Judgment ("Defendants' NV Joint Reply") [Docket No. 4019], filed on April 5, 2007. Fujisawa fully incorporates those arguments herein. The instant Reply supplements Defendants' joint replies, and addresses Plaintiff Montana and Plaintiff Nevada's arguments in opposition to Fujisawa's individual motions for summary judgment.

[2] Fujisawa filed separate summary judgment motions in the *Montana* and *Nevada* actions, to address particular issues unique to each State. *See* Fujisawa MT SJ Mem. [Docket No. 3748]; Fujisawa NV SJ Mem. [Docket No. 3749]. The States have filed a single Opposition to Fujisawa's two motions. Accordingly, Fujisawa submits a single Reply brief to address the States' Opposition; yet, the Reply is in further support of both of Fujisawa's motions for summary judgment. Fujisawa specifies herein when addressing an argument particular to either *Montana* or *Nevada*.

misled the States' Medicaid programs and caused harm to the States. Fujisawa demonstrates that there is no support for the States' allegations because of the States' knowledge about and use of AWPs, and Fujisawa's unique position in these cases.

The States assert that Fujisawa's poor fit in the AWP litigation is not a legitimate argument for summary judgment. *See* States' Opp'n at 1-2. Fujisawa need not "argue" that Fujisawa is a poor fit in the AWP litigation; the *facts* demonstrate Fujisawa's unique history and position in the industry, and the nature of Fujisawa's drugs; they establish beyond dispute that Fujisawa is an inappropriate defendant in these cases. The undisputed facts show that the States cannot prove the essential elements of their causes of action against Fujisawa. Namely, the States cannot establish (i) the deception element of their Unfair[3]/Deceptive[4] Trade Practices Act claims; (ii) that the States reimbursed multi-source drugs based on AWPs for Fujisawa drugs, (iii) that AWP was the basis for reimbursement of multi-source drugs in Montana; (iv) that Fujisawa "marketed the spread" for its single-source drugs or self-administered drugs; or (v) any injury from physician-administered drugs.

Perhaps recognizing the inescapable truth of Fujisawa's arguments – and avoiding even an attempt at refuting many of Fujisawa's points – the States try to persuade the Court that Fujisawa's arguments go to "the calculation of damages for its Subject Drugs ... and [are] not a basis for summary judgment." States' Opp'n at 2. On the contrary, Fujisawa's summary judgment memoranda show that the undisputed facts do not support the States' claims, and Fujisawa is entitled to judgment as a matter of law.

---

[3] Plaintiff Montana alleges violations of the Montana Unfair Trade Practices Act ("MUTPA"). *See* MT Sec. Am. Compl. ¶¶ 656, 663; *see, e.g.,* Mont. Code Ann. §§ 30-14-101, -103.

[4] Plaintiff Nevada alleges violations of the Nevada Deceptive Trade Practices Act. ("DTPA"). *See* NV Am. Compl. at 118-125; Nev. Rev. Stat. §§ 598.0915, -.0923, -.0973.

## II.   ARGUMENT

### A.   Plaintiffs Admit All Material Facts Needed to Grant Summary Judgment for Fujisawa.

Rule 56 of the Federal Rules of Civil Procedure sets forth the standard for determining whether facts are established for purposes of summary judgment. Parties opposing summary judgment must provide by affidavit "specific facts" essential to justifying the opposing parties' position that there exists a genuine issue for trial. *See* Fed. R. Civ. P. 56(e), (f). The opposing parties may not rest on mere allegations or denials of the summary judgment pleadings. *See id.* Where the facts alleged to be in dispute are not supported with citations to record evidence, they are deemed admitted for purposes of the motion. *See Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1446 (1st Cir. 1995) ("Properly supported facts set forth by the moving party are deemed admitted unless controverted by the factual statement of the opposing party.").

In opposing Fujisawa's motions, the States admit Facts 1-11 and 15-18. *See* Montana's Response to Fujisawa's Supplemental Statement of Undisp. Material Facts ("MT SOF Response") [Docket No. 4094]; Nevada's Response to Fujisawa's Supplemental Statement of Undisp. Material Facts ("NV SOF Response") [Docket No. 4093]. The States also substantially admit Facts 13-14 and 23. *See id.* Montana admits Facts 24-25.[5] *See* MT SOF Resp. Montana denies Fujisawa's last two facts, Facts 26 and 27, due only to a minor typographical error that transposed the J Code for the referenced Fujisawa drug. *See id.* ¶¶ 26-27. The States' admissions establish the nature and history of Fujisawa's drug sales, the nature of Fujisawa's Subject Drugs, that Plaintiffs' damages expert failed to analyze multi-source physician administered drugs, that Fujisawa had no role in deciding the drugs prescribed to patients, Fujisawa does not prescribe or dispense drugs to patients, that the person making prescription decisions obtains no profit from alleged "spreads" for self-

---

[5] Fujisawa's statement of undisputed facts for Nevada number through Fact 23 only; while the undisputed facts for Montana number through Fact 27.

3

administered drugs, and Montana reimbursed Fujisawa's drug Cyclocort® according to a fee schedule that reimbursed according to a percentage of "billed charges," not AWP. *See* Fujisawa MT SOF [Docket No. 3748, Attach. 1]; MT SOF Resp.; Fujisawa NV SOF [Docket No. 3749, Attach. 1]; NV SOF Resp.

The States' remaining responses are deficient under Rule 56.1, because none of the States' denials are supported by evidence in the form of affidavits, depositions or other documentation. For instance, the States deny that pharmacies generally purchased single-source drugs like Fujisawa's Prograf® at prices close to acquisition cost or list price (Fact 19). However, the States cite no evidence to contest the declaration that Fujisawa cites to support this fact. For Fact 20, the States change the Fact cited so that they can deny it. The States contend that Fujisawa "profits" when providers prescribe Fujisawa drugs, which the States later reimburse. *See* MT SOF Resp. ¶ 20; NV SOF Resp. ¶ 20. But the States do not – and cannot – dispute the fact that Fujisawa "does not receive any reimbursement on the cost of drugs from states, the federal government, government programs or any other third-party payor." *See* MT SOF Resp. ¶ 20; NV SOF Resp. ¶ 20; Fujisawa MT SOF ¶ 20; Fujisawa NV SOF ¶ 20. In addition, the States deny that Fujisawa has been sued in only a handful of cases (Fact 21), and that several plaintiffs have dropped or dismissed Fujisawa from their suits (Fact 22). However, Plaintiffs cite nothing that refutes these facts. The States contend only that a general citation to the relevant complaints is insufficient. *See* MT SOF Resp. ¶¶ 21-22; NV SOF Resp. ¶¶ 21-22. Yet, the cited complaints show that Fujisawa is not a named party in the referenced actions.

Thus, all of the facts supporting Fujisawa's motions for summary judgment are either admitted, or must be deemed admitted. *See Carreiro*, 68 F.3d at 1446. Fujisawa's Reply to the States' Response to Fujisawa's Supplemental Statement of Undisputed Material Facts, also filed

4

this day, provides a statement-by-statement analysis of the deficiencies in the States' response to Fujisawa's Rule 56.1 statement.

### B. Plaintiffs Present No Evidence to Dispute the Fact that Fujisawa Has No Liability for the Generic Drugs.

Plaintiffs have not refuted the facts establishing that Fujisawa is entitled to judgment on all claims related to the sale and reporting of AWPs for Fujisawa's generic drugs. Fujisawa sold its generics business in May 1998. The States admit this fact. *See* States' Opp'n at 4; MT SOF Resp. ¶¶ 6-8; NV SOF Resp. ¶¶ 6-8. The States also admit that Fujisawa did not retain any authority or responsibility for transactions involving the [generic] drugs" after May 31, 1998, and is not subject to suit for such transactions. *See* MT SOF Resp. ¶ 8; NV SOF Resp. ¶ 8. Thus the undisputed facts – as admitted by the States – show that Fujisawa is not subject to liability for any price reporting as to generic drugs undertaken after May 1998. Accordingly, Fujisawa is entitled to judgment as a matter of law that Fujisawa is not liable for claims concerning the sale, marketing or price reporting of any generic drugs after May 1998.

Fujisawa is also entitled to a judgment holding that Fujisawa is not liable for the sale, marketing or price reporting of any generic drugs *before* May 1998. The States amended their complaints to name Fujisawa in August 2003. As detailed in Fujisawa's summary judgment memoranda, the applicable statute of limitations bars claims prior to August 2001 for Montana's claims and for Nevada's claims seeking civil penalties. *See* Fujisawa MT Mem. at 7; Fujisawa NV Mem. at 7. The applicable statute of limitations bars Nevada's claims based on deceptive trade practices and Medicaid fraud prior to August 1999. *See* Fujisawa NV Mem. at 7. At most, Fujisawa would be liable for generic drug claims after August 1999 for Nevada and after August 2001 for Montana.[6] Because Fujisawa was not subject to suit for any claims concerning generic

---

[6] Fujisawa maintains that all claims on every drug by every manufacturer, including Fujisawa, are barred by the statute of limitations. *See* Fujisawa MT. Mem. at 7 n.7; Fujisawa NV Mem. at 7 n.7.

5

drugs accruing after 1998, Fujisawa is not subject to liability in this action on any claims concerning generic drugs.

Neither the discovery rule nor the doctrine of fraudulent concealment tolls the statute of limitations. There was no "concealment" of the relevant facts, and the States discovered, or should have discovered, their injury by 1996 at the latest. As detailed in the Defendants' Nevada Joint Reply, Plaintiff Nevada discovered or should have discovered the damages asserted in the complaints since as early as the 1980's. *See* Defs.' NV Joint Reply at 20-21 (citing *Siragusa v. Brown*, 114 Nev. 1384, 1394 n.7 (1998) ("[a]n action accrues when the litigant discovers, or should have discovered, the existence of damages, not the exact numerical extent of those damages.")). Due to the OIG report that was finalized in 1996, both States knew or should have known all of the facts constituting the alleged offenses since no later than 1996. *See id.* at 21; Defs.' MT Joint Reply at 3-6 (citing, *inter alia*, *Mobley v. Hall*, 657 P.2d 604, 606-07 (Mont. 1983) (inquiry notice does not require complete information about the extent of the alleged injury, but requires only information sufficient to prompt further inquiry into that injury)). Consequently, the States' claims are untimely.

Thus, Fujisawa is entitled to judgment as a matter of law on all claims related to the Fujisawa generic drugs listed in the States' appendices.

### C. Plaintiffs' Arguments Do Not Establish that Montana Based Reimbursements on Fujisawa AWPs.

Plaintiff Montana misunderstands its burden in proving its claims and surviving summary judgment. Montana wants to shift its burden to Fujisawa; Montana improperly argues that Fujisawa must show that reimbursement was based on a standard "other than AWP." *See* Opp'n at 6-7. However, in order to establish that Fujisawa caused Montana's injury, Montana must at the very least establish affirmatively that Montana reimbursed Fujisawa subject drugs on the basis of AWP. *See In re Spiegel*, 260 F.3d 27, 31 (1st Cir. 2001) (non-moving party has burden of proof on

6

essential elements of its claim); *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1459 (9th Cir. 1985) (same). At this important summary judgment juncture, Montana continues to fail to adduce facts to support its claims. The undisputed facts instead establish Montana's inability to tie Montana's reimbursements to Fujisawa AWPs.

### 1. Where Reimbursement Was Based on FUL, There Is No Factual Support for the States' Claims.

Confronted with the undisputed fact that Montana often based reimbursement for multi-source drugs on drugs' Federal Upper Limit ("FUL"), rather than AWP, Montana argues that FUL is linked to AWP. *See* States' Opp'n at 6-7. Montana argues that FUL is set at an amount no more than 150% of the published price for the least costly generic substitute. *See id.* at 6. This argument does not tie FUL to AWP. The federal regulation states that FUL is "150 percent of the published price for the least costly therapeutic equivalent (using all available national compendia)…" 42 C.F.R. § 447.332(b). That "price" is not necessarily an AWP; it could be WAC, List Price, or some other price set out in the compendia. Montana's only evidence that "price" means AWP alone comes from Dr. Hartman, but he can only speculate that, as a general matter, there is "conflicting information as to whether FUL is set at 150% of the lowest AWP or 150% of other prices that are published in national compendia." Hartman MT Decl. ¶ 8(b) (June 13, 2006) (Breckenridge Decl. Ex. 1) [Docket No. 4113]. Montana simply has no evidence that any FUL used for reimbursement in Montana was based on AWP. Therefore, summary judgment is required on claims reimbursed based on FUL.

### 2. Montana Presents No Evidence to Dispute that Montana Did Not Reimburse Cyclocort® Based on AWP.

Fujisawa has provided decisive evidence demonstrating that Montana reimbursed Fujisawa's drug Cyclocort® based on a formula of 51% of a provider's billed charges, rather than AWP. *See* Fujisawa MT Mem. at 10 (citing Montana Medicaid Fee Schedule (Wilhite Decl. Ex. G), and

7

Fujisawa J Code List (Wilhite Decl. Ex. H) [Docket No. 3750]). Montana's only defense to Fujisawa's argument is to take refuge in the fact that Fujisawa's argument bore a minor typographical error.[7] Yet, Montana admits that the Montana Fee Schedule lists the J Code assigned to Cyclocort®: J3490. *See* MT SOF Resp. ¶ 26. Montana further admits that drugs with J Code J3490 were paid "by report." *See id.* Montana does not dispute that since March 1, 1998 through 2003, reimbursements for drugs reimbursed "by report" have been calculated as 51% of a provider's billed charges. *See id.*; States' Opp'n at 7. Further, Montana does not dispute that there is no evidence linking AWP and "51% of billed charges." *See* States' Opp'n at 7. In short, Montana presents nothing to dispute the fact that it did not base reimbursements for Cyclocort® on AWP.[8]

### 3. The States Concede that Summary Judgment is Warranted on Fujisawa's Physician-Administered Drugs.

The States note in their Opposition that "[i]f Hartman did not calculate damages for a particular category or claim, the States do not claim damages for that category or claim." States' Opp'n at 7. Dr. Hartman did not calculate damages for any physician-administered drugs, and Nevada did not even produce claims data for such drugs. Aside from both States' complete lack of proof on physician-administered drug claims, without any claim of injury there is no valid cause of action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (all other facts are immaterial where there's a complete failure of proof on an essential element of the party's claim); *Sisler v. Bennett-Ames*, 149 P.3d 914 (Mont. 2006) (damages are an essential element to fraud claims); *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588 (Nev. 1992) (plaintiff has to show damages). Therefore, the States

---

[7] Fujisawa's memorandum cited the J Code for Cyclocort® as J3940 instead of J3490.

[8] The only supposed evidence Montana provides is a statement that Montana Medicaid "did a search" for Cyclocort® and found reimbursements based on NDC numbers. *See* Opp'n at 7. Montana provides no documented proof of this search; this supposed evidence is not supported by affidavit, and Montana does not even try to establish that the "search" occurred between 1988 and 2003. An unverified search performed in 2007 is hardly probative of Montana's claims for alleged injuries that pre-date its Opposition.

8

concede that Fujisawa is entitled to judgment as a matter of law on all claims related to Fujisawa's physician-administered drugs.

### D. The States Cannot Establish that They Were Deceived, Or that Fujisawa Engaged in Unfair or Deceptive Conduct.

Apparently conceding Fujisawa's arguments that Fujisawa did not "market the spread" for its drugs, the States change their tactic and argue that, regardless, Fujisawa engaged in unfair and deceptive conduct because Fujisawa allegedly reported "inflated" AWPs to unwitting State payors. *See* States' Opp'n at 8-9. The States do nothing to dispute Fujisawa's evidence that Fujisawa had no incentive to "market the spread" to providers, and would receive no reimbursement reward for doing so. *See id.* at 1-10. Instead, the States argue above all that Fujisawa set and reported AWPs knowing that they did not reflect "average wholesale price" as defined recently by the MDL Court in the context of the federal Medicare statute, and that such AWPs deceived the States. *See* Opp'n at 8-9 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, CA No. 01-CV-12257-PBS, Order, at 2 (Nov. 2, 2006)). The facts do not support the States' argument.

First and foremost, the States were not deceived by the AWPs published in industry compendia. The evidence shows overwhelmingly that neither Montana nor Nevada subscribed to the "plain and ordinary meaning" of "AWP" as described by the MDL Court.[9] *See, e.g.,* Defs.' Joint Opp'n to MT Mot. for Part. Summ. J. at 9-16[10] (demonstrating that "[Montana Medicaid] understood that AWP didn't reflect the average wholesale price") (citations omitted); Defs.' NV Joint Reply at 8-13, 20-21 (demonstrating that Nevada has been aware that drug manufacturers' AWPs were not actual averages of wholesale prices since as early as 1986). Officials of both States

---

[9] Notably, the MDL court did not define AWP in the context of the States' Medicaid regulations, but in the context of the federal Medicare statute. *See Pharm. Indus. Average Wholesale Price Litig.*, Order, at 2.

[10] To avoid redundancy, Fujisawa fully incorporates herein Defendants' Joint Opposition to Montana's Motion for Partial Summary Judgment Against Certain Defendants, filed 3/22/07 [Docket No. 3884].

9

were well aware of the significant difference between AWP and acquisition costs for drugs. *See id.* (both cites *supra*).[11] The Court should not accept the States' unsupported allegations to the contrary. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991) ("We need not, however, give credence to 'mere allegations,' or draw inferences where they are implausible or not supported by 'specific facts.... [W]e cannot accept, in lieu of documented facts, conclusory assertions....").

Secondly, the States cite FJ-MDL 015152-59 and FJ-MDL 8346, and assert that these documents show that "[t]he Fujisawa Group controlled and set the AWPs for all of its drugs...through direct communications with industry compendia." Opp'n at 8 n.13. However, as detailed in the Memorandum in Support of Defendants' Joint Opposition to the State of Montana's Motion for Partial Summary Judgment Against Certain Defendants and Fujisawa's Individual Opposition to Montana's Motion for Partial Summary Judgment, the cited documents demonstrate that drug pricing compendia influenced figures published as AWPs. *See* Defs' Joint Opp'n to MT Mot. Part. Summ. J. at 5-6; Fujisawa Opp'n to MT Mot. Part. Summ. J. at 2-4 [Docket No. 3879].[12]

The Court should reject as contrary to fact the States' allegations that Fujisawa set inflated AWPs that deceived payors, and grant summary judgment for Fujisawa.

E.   **Fujisawa is Entitled to Judgment on All Prograf® Claims.**

The States do not even acknowledge in their Opposition Fujisawa's argument regarding Prograf®, Fujisawa's single-source drug for which there is no therapeutic equivalent. *See* Fujisawa

---

[11] *See also* Defs.' Joint Local Rule 56.1 Statement of Undisp. Material Facts in Supp. of Joint Mot. for Summ. J. [Against the State of Nevada] ¶¶ 31-39, 46, 56, 57, 77-83 [Docket No. 3637]; Statement of Undisp. Material Facts in Supp. of Defs.' Mot. for Summ. J. [Against the State of Montana] ¶¶ 25-30, 53, 66 [Docket No. 3648]. Fujisawa fully incorporates herein the facts set forth in these documents.

[12] For instance, First DataBank witnesses have testified that First DataBank, not the pharmaceutical companies, set First DataBank's AWPs. *See* Defs' Joint Opp'n to MT Mot. Summ. J. at 5-6 (citing Dep. of Kay Morgan at 26:11-27:6, 36:3-19). First DataBank controlled the published AWPs by controlling the "markup" from Wholesale Acquisition Cost ("WAC"). *See id.* at 6. Document No. FJ-MDL 8346 confirms that drug pricing databases used Fujisawa's figures only as "suggested" AWPs. Document No. FJ-MDL 015152-59 demonstrates that First DataBank, Inc. had multiple price figures upon which to calculate the AWP for each drug, and was not constrained by any AWP figure provided by Fujisawa.

MT SJ Mem. at 10-12; Fujisawa NV SJ Mem. at 13-15. This is remarkable, considering that Prograf® is the primary drug for which the State claims its monetary award. *See* Hartman MT Decl. Table 3 – Single Source Drugs; Hartman NV Decl. Table 2 – Single Source Drugs. The States' silence evinces that they cannot dispute that there is no need to promote a "spread" or report "inflated AWPs" for Prograf® to obtain additional market share. Providers must pay the manufacturer's price, because there is no competitor that can offer the drug at any other price. *See* Fujisawa MT SJ Mem. at 10-12; Fujisawa NV SJ Mem. at 13-15. The States also fail to dispute that Prograf® has a low "spread" that has been deemed within the acceptable range by the liability expert that Plaintiffs rely upon in this case. *See Pharm. Indus. Average Wholesale Price Litig.*, Hartman Decl. in Supp. of Pls.' Mot. for Class Certification at 24 (D. Mass. Sept. 3, 2004) (Filed under Seal).

Because the States cannot support their allegations for liability as to Prograf®, the Court must grant Fujisawa judgment as a matter of law on all claims related to the sale or price reporting of Prograf®.

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in the documents incorporated by reference herein, Fujisawa respectfully requests that the Court deny the State of Montana's motion for partial summary judgment.

Respectfully submitted,

REED SMITH LLP

By:   /s/ *Andrew L. Hurst*

     Douglas K. Spaulding
     Andrew L. Hurst
     1301 K Street NW
     Suite 1100 – East Tower
     Washington, DC 20005
     (202) 414-9200
     (202) 414-9299 (fax)

*Attorneys for Defendants Fujisawa USA, Inc. and Fujisawa Healthcare, Inc.*

Dated: May 10, 2007

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Reply in Support of Fujisawa Healthcare, Inc. and Fujisawa USA, Inc.'s Individual Motions for Summary Judgment was delivered to all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending, on May 10, 2007, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ *Andrew L. Hurst*
Andrew L. Hurst