**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) |
| THIS DOCUMENT RELATES TO *State of Nevada v. American Home Prods., Corp., et al,* D. Nev. Cause No. CV-N-02-0202-ECR | ) Civil Action No. 01-CV-12257-PBS ) ) Judge Patti B. Saris ) ) ) ) ) ) |

**LOCAL RULE 56.1 SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS**
**IN FURTHER SUPPORT OF NOVARTIS PHARMACEUTICALS CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Novartis Pharmaceuticals Corporation ("NPC") respectfully submits the following Supplemental Statement of Undisputed Facts as to NPC pursuant to Local Rule 56.1 in further support of its motion for summary judgment in the above-captioned case. These undisputed facts, and the undisputed facts in Local Rule 56.1 Statement of Undisputed Facts in Support of Novartis Pharmaceuticals Corporation's Motion for Summary Judgment, filed with this Court on February 8, 2007, demonstrate that NPC is entitled to summary judgment on all claims as a matter of law.

A.   **NPC's New Product Introduction Letters to State Medicaid Agencies**

1.   When NPC launched a new pharmaceutical product, it communicated to state Medicaid agencies, including the Medicaid agency of the State of Nevada, certain information about the new product. (*See* Declaration of Richard Knapp, ¶ 4, attached as Ex. 1 to Supplemental Declaration of Samuel N. Lonergan ("Lonergan Supp. Decl.").) NPC did so by transmitting letters to these Medicaid agencies that provided the product's National Drug Code, strength, package size if applicable, wholesale price (referred to in some letters as "cost to wholesaler" or "wholesaler cost"), and the benchmark known as "Average Wholesale Price" ("AWP"). (*Id.*)

2.   In addition to the product-specific data identified above, new product introduction letters generally also included a statement relating to AWP (the "AWP disclosure") that was the same as, or similar to, the statement relating to AWP that appeared on NPC broadcast faxes to wholesalers and price reporting agencies. (*Id.* ¶ 5.) Although the exact wording changed slightly over the years, the substance remained the same. (*Id.*) Each AWP disclosure provided that AWP is not intended to represent an actual price charged by NPC to any

customer. (*Id.*) For example, the October 28, 1999, letter introducing Comtan, an NPC product at issue in these lawsuits, states:

> As used in this letter, the term AWP or Average Wholesale Price constitutes a reference for each Novartis product, and in keeping with current industry practices, is set as a percentage above the price at which each product is offered generally to wholesalers. Notwithstanding the inclusion of the term price, in Average Wholesale Price, AWP is not intended to be a price charged by Novartis for any product to any customer.

(*Id.*)

**B.    McKesson Corporation's Markups on Manufacturers' Products and its Communication of These Markups to First DataBank**

3.    Ramon Crusit, a former business analyst for the pharmaceutical wholesaler McKesson Corporation ("McKesson"), testified that Kay Morgan of First DataBank ("FDB") called him twice per month and e-mailed him three to four times per month to determine the markups that McKesson was applying to manufacturers' products. (Crusit Dep. at 20:7-21:5, attached as Ex. 2 to Lonergan Supp. Decl.) Crusit testified:

> Q. Okay. Has anyone at First Databank ever called to inquire about what markups were for various products or for a manufacturer's product line?
> 
> A. Yes.
> 
> Q. Who is that person who contacted you?
> 
> A. That's Kaye [sic] Morgan.
> 
> Q. And what did Ms. Morgan call to ask you?
> 
> A. She asked me mostly on our markup.
> 
> Q. And does she ask you for a markup for a specific product or for a manufacturer --
> 
> A. Both.
> 
> Q. -- or some other -- both?
> 
> A. (Witness nods head.)
> 
> Q. How often does Ms. Morgan call to ask you for this information?

3

> A. Maybe twice a month or -- twice a month and about three or four times a month e-mail.
>
> Q. So she calls you about twice a month and then e-mails you about an additional three or four times a month?
>
> A. Yeah.

(Crusit Dep. at 20:7-21:5.)

4.  Robert James, Vice President of Brand Rx Pharmaceutical Product Management for McKesson, testified that the markups McKesson provided to FDB were not based on AWPs listed by manufacturers. (James Dep. at 76:4-21, attached as Ex. 3 to Lonergan Supp. Decl.)  James testified:

> Q. I did want to ask you about the second sentence in the first paragraph of this first page that starts:  However, please note that the suggested AWPs by JOM [Johnson & Johnson] are only their suggestion and the actuals in most cases have been updated at First Databank to reflect a 25 percent markup rather than the suggested 20 percent markup . . . Can you explain to me what you mean by that sentence?
>
> A. I think that gets down to manufacturers suggesting the wholesale price.  It's just a suggestion.  In our case, we don't use that suggestion.  We calculate all brand product at a 25 percent markup to get our suggested sell [price].

(James Dep. at 76:4-21.)

C.  **Dismissal of the Together Rx Claims in Citizens for Consumer Justice and Subsequent Suit Against FDB**

5.  In *Citizens for Consumer Justice* (*i.e.*, the private payor class in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, Civil Action No. 01-CV-12257-PBS (D. Mass.)), plaintiffs sued Together Rx LLC and its members, including NPC, alleging that they conspired to raise the "spread" between Wholesale Acquisition Cost ("WAC") and AWP to WAC plus 25 percent for drugs in the Together Rx program (a discount program for the indigent elderly) ("the Together Rx claim").  (*See* Second Amended Master Consolidated Class Action

4

Complaint in *In Re Pharm. Indus. Average Wholesale Price Litig.,* filed under seal on February 24, 2004, at ¶¶ 542-46, 590-92.)

6.  In connection with the Together Rx claim, Defendants took discovery of FDB. (*See*, *e.g.*, deposition of Patricia Kay Morgan, Manager, Product Knowledge-based Services at FDB, taken on January 11-12, 2005, in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, Civil Action No. 01-CV-12257-PBS (D. Mass.).)

7.  After discovery was taken of FDB, the *Citizens for Consumer Justice* plaintiffs dismissed the Together Rx claim by filing an amended complaint that did not include the Together Rx claim (*See* Third Amended Master Consolidated Class Action Complaint in *In Re Pharm. Indus. Average Wholesale Price Litig.,* MDL No. 1456, Civil Action No. 01-CV-12257-PBS (D. Mass.), filed on October 17, 2005; Consolidated Order re: Motion for Class Certification in *In re Pharm. Indus. Average Wholesale Price Litig.*, dated January 30, 2006, at p. 8.)

8.  Plaintiff Nevada's outside counsel in *State of Nevada v. American Home Prods., Corp., et al* is the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). (*See* Nevada and Montana's Opposition to Novartis Pharmaceuticals Corporation's Motions for Summary Judgment, at p. 12.) Hagens Berman is one of the law firms representing plaintiffs in *New England Carpenters Health Benefits Fund, et al v. First DataBank, Inc. and McKesson Corp.* (*See* Complaint in *New England Carpenters Health Benefits Fund, et al v. First DataBank, Inc. and McKesson Corp.*, Civ. Action No. 1:05-CV-11148-PBS (D. Mass.) at p. 70, attached as Ex. 4 to Lonergan Supp. Decl.)

Dated: Boston, Massachusetts
       May 10, 2007

                              Respectfully submitted,

                              /s/ Karen F. Green
                              Karen F. Green, BBO # 209050
                              WILMER CUTLER PICKERING HALE AND DORR LLP
                              60 State Street
                              Boston, Massachusetts 02109
                              (617) 526-6000

                              Jane W. Parver (admitted *pro hac vice*)
                              Saul P. Morgenstern (admitted *pro hac vice*)
                              Samuel Lonergan (admitted *pro hac vice*)
                              Charles Graybow (admitted *pro hac vice*)
                              KAYE SCHOLER LLP
                              425 Park Avenue
                              New York, New York 10022
                              (212) 836-8000

                              *Attorneys for Defendant*
                                  *Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2007, a true and accurate copy of Local Rule 56.1 Supplemental Statement of Undisputed Facts in Further Support of Novartis Pharmaceuticals Corporation's Motion For Summary Judgment was served via the Lexis-Nexis Filing System:

Dated: Boston, Massachusetts
       May 10, 2007

                                              /s/ Brett Budzinski
                                              Brett Budzinski