# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL DOCKET NO. 1456<br><br>Civil Action No. 06-CV-11337<br>Lead Case No. 01-CV-12257 |
| ———————————————— | ) | |
| THIS DOCUMENT RELATES TO:<br>*U.S. ex rel. Ven-A-Care of the Florida Keys, Inc., et al., v. Abbott Laboratories, Inc., et al.* | ) ) ) | Judge Patti B. Saris<br><br>Chief Magistrate Judge Marianne B. Bowler |

## DEFENDANT ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO RELATOR'S MOTION TO COMPEL TO PRODUCE OR CONSENT TO ACCESS TO ALL DISCOVERY PRODUCED IN OTHER FALSE PRICE REPORT LITIGATION

The motion to compel filed by Relator Ven-A-Care should be denied. Ven-a-Care's motion, at its core, asks this Court to declare that all documents that Abbott ever produced in the Texas and California litigation are relevant to this case. However, the Government drew its complaint-in-intervention narrowly, limiting its allegations to four families of hospital products (sterile water, Vancomycin, sodium chloride, and dextrose), produced by the Hospital Products Division of Abbott ("HPD") over a ten-year period (January 1, 1991 through January 31, 2001). Nevertheless, the Relator asks this Court to permit it to share any and all documents produced in the Texas litigation, even though the Texas litigation covers an entirely different time period and involves 188 additional NDCs, most of which were produced and marketed by an entirely different division of Abbott. Apparently, under Relator's theory, "relevance" has nothing to do with the terms of the complaint in a given case; instead it is defined by whether the Relator knows that the document exists and whether the document has been produced in related litigation. The Federal Rules of Civil Procedure do not permit such "discovery by association," as this Court recognized in the Feb. 27, 2007, hearing on this matter. (Hrg. Tr., Feb. 27, 2007, at p. 29

("I'm not simply going to say you're across the board entitled to every document they produced in every suit, even if it involves drugs that have nothing to do with yours.") (Attached as Ex. 1).)

## BACKGROUND

Relator Ven-a-Care is involved in multiple *qui tam* suits involving Abbott Laboratories' pricing practices. In the suit at issue here, the Government alleges that, from January 1, 1991 to January 31, 2001, Abbott reported inflated drug prices for four drugs (dextrose solutions, sodium chloride solutions, sterile water, and vancomycin), all of which were marketed and sold by HPD, in an effort to create a profit spread for customers, who would be reimbursed by Medicare and Medicaid for more than what they actually paid for the drugs. (*See* Complaint).

Ven-a-Care is also involved in a separate suit alleging that Abbott falsely reported its prices to Texas for Medicaid reimbursement purposes. That lawsuit alleges that Abbott falsely reported prices for a long list of drugs, comprising 234 separate National Drug Codes ("NDCs"), many of which were marketed and sold by Abbott's Pharmaceutical Products Division ("PPD"). The Texas suit alleges that the fraud under *Texas law* (which materially differs from the Federal False Claims Act) began in 1993 and continues through the present. The Texas lawsuit is actually so different from the Government's suit that Texas fought vigorously *not* to become part of the MDL action currently before this Court. Texas was successful in its argument to remain distinct from the MDL; thus, contrary to the Relator's implication, the Texas suit is not a coordinated state action.

Abbott has cooperated fully in all legitimate discovery efforts in both actions. Although the Government has received more limited discovery than parties in related litigation, this is not the result of unfair play on Abbott's part; it is instead the direct result of the fact that the Government's claims are more limited than in the other litigation. Far from conducting

"Stalingrad type discovery" (Mot. at 2, 7) (which cryptic allegation Abbott can only assume is an insult), to keep this case moving forward as quickly as possible, Abbott made an extensive production of more than 250,000 documents as part of its Rule 26(a)(1) initial disclosures – going well beyond what the rule requires. In addition, Abbott has produced or offered to produce *all* responsive documents that specifically mention the four drugs named by the Government in its Complaint (the "Subject Drugs") during the claimed time period; *all* responsive documents that are related to the Subject Drugs, even if those drugs are not mentioned by name (*i.e.*, general sales or marketing information for classes of drug products that would include the Subject Drugs); and *all* responsive documents, if any, for *any* drug within Abbott that would reflect any alleged effort by Abbott to "manipulate AWP," or that might arguably show a pattern or practice of the conduct alleged in the complaint. Far from frustrating discovery, as the Relator falsely implies, Abbott has made its process transparent by producing a 30(b)(6) witness who testified for two days in response to Plaintiffs' questions about Abbott's various efforts to preserve, collect, and produce documents over the past decade in response to this and other AWP-related matters. No legitimate avenue has been foreclosed by Abbott, and its effort to locate and produce relevant documents continues.

What Abbott has refused to do, however, is accede to the Relator's demands that Abbott produce documents and information that have nothing to do with the allegations in this case. In several conferences over the past few months, Abbott has attempted, to little avail, to work with the Government and Relator to ensure that relevant information is produced while protecting its privilege not to produce information that is not relevant to the Government's claim. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any matter . . . relevant to the claim . . . of any party[.]") Abbott has diligently reviewed the documents that Relator has requested to

share with the Government, and as even Relator admits, has agreed to produce a significant portion of those documents, many of which had been produced to Texas only a week before the Relator's request.

Relator, on the other hand, has refused to meaningfully discuss its position. It has instead continually and repeatedly insisted that it should not be limited by the temporal and drug-specific restrictions of the Government's complaint, contending that it is entitled to share information from the Texas and California actions that have no relevance to the allegations in the Government's complaint. This motion represents the Relator's request for this Court to endorse that position, and that request should be denied.

## ARGUMENT

### I. STANDARD OF REVIEW

Rule 26(b)(1) provides, in relevant part, that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1); s*ee also Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (Under Rule 26(b), "limitations come into existence when the inquiry touches upon the irrelevant"). It is axiomatic that relevancy under Rule 26 turns directly on the claims alleged in the complaint. *See* FED. R. CIV. P. 26(b); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989). Here, Plaintiffs' claims involve an alleged scheme to defraud the United States Government with respect to its reimbursement of certain enumerated drugs, over a certain delineated time frame, under Medicare Part B and Medicaid. Plaintiffs' own claims thus give rise to Abbott's objections, because the Relator now seeks to share discovery about a host of subjects that are neither pled in, nor relevant to, their Complaint.

It is black-letter law that "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Caouette v. Officemax, Inc.*, 352

F. Supp. 2d 134, 136 (D.N.H. 2005); *Daniels v. Am. Power Conversion Corp.*, No. 05-459ML, 2007 U.S. Dist. LEXIS 10858, at *3-4 (D.R.I. 2007) (same).  Moreover, the Federal Rules, as amended in 2000, delineate a much narrower scope of appropriate discovery than the Relator seeks.  Parties to a civil action "have no entitlement to discovery to develop new claims or defenses that are not already included in the pleadings."  FED. R. CIV. P. 26(b)(1), Advisory Comm. Note (2000).  Instead, discovery is limited *only* to those matters that are "relevant to the claim or defense of any party."  FED. R. CIV. P. 26(b)(1).  Here, the Government's complaint is limited to *four enumerated products*, marketed and sold by Abbott's HPD, and seeks damages only for conduct spanning from 1991 to 2001.  That is the universe of relevance under the Rules, against which the Relator's current motion must be measured.

## II.  THE DOCUMENTS THAT RELATOR WISHES TO SHARE WITH THE GOVERNMENT ARE NOT RELEVANT TO THIS ACTION

Although Relator implies that Texas is a related action, and thus discovery in that action should be consolidated with this one, that is simply not the case.  As Texas has repeatedly stated, its case involves different law, different alleged fraud, different drugs, and a different time frame.  Indeed, due to Texas's vehement opposition, that case is completely separate from the MDL litigation.  Despite these differences, Relator is asking this Court to rule that discovery in the Texas action is automatically relevant to the DOJ action.  Relator repeatedly asserts that it would not be difficult for Abbott to produce the discovery, since Abbott has already produced it to Texas.  This argument completely misses the mark, however, since the Federal Rules of Civil Procedure allow for discovery of *relevant* information, not *easily attained* information.  FED. R. CIV. P. 26(b)(1).  And this Court has already made perfectly clear that the Government is *not* automatically entitled to every document produced in other cases, so this fundamental argument by Ven-a-Care is a non-starter.

In fact, the only convincing relevance argument in the Relator's motion relates to documents that Abbott has already agreed to produce to the DOJ. For almost three pages of its motion (Mot. at 9-11), the Relator argues that documents that Abbott has already agreed to produce are relevant. Abbott agrees, which is why it produced the documents.

Since there is little point in arguing about documents Abbott already has agreed to produce, Abbott will confine its response to the only two arguments the Relator has even attempted to make with regard to the relevance of documents that Abbott has not agreed to produce: (1) whether documents created after Dec. 31, 2001, are relevant to the Government's action; and (2) whether documents relating exclusively to drugs not charged in the Government's complaint are relevant. The answer to both questions is no, and therefore the Relator should not be allowed to share those documents with the Government.

### A.     Documents Created After December 31, 2001, Are Irrelevant to the Plaintiffs' Claims.

Plaintiffs' complaint alleges that Abbott perpetrated a fraud from 1991 to January 31, 2001. Abbott has agreed to produce its non-privileged documents relating to the marketing, pricing and sale of the drugs listed in the Plaintiffs' complaint during this period, and has even agreed to extend the period for production through December 31, 2001. Yet Relator now boldly asserts that documents from years later are relevant to this action, with no explanation for what specific, relevant information the post-2001 documents could provide.

Abbott has already provided the Government with a decade's worth of information. Any discovery allowed beyond 2001 will not provide any relevant information to any alleged damages occurring before January 2001, which is where the Government's claims cut off – nor has the Relator explained how it could. The Government itself alleges that AWPs at issue here declined dramatically after 2001. (*See* Cmplt. ¶¶ 84, 88.) And, as important, the Government's

own actions show that it could not possibly have been relying upon the pricing-compendia published AWPs in 2001, when the Government published a list of "true" AWP prices for various drugs, including the Subject Drugs at issue here.  (Dep't of Health and Human Serv., Health Care Financing Admin., *Program Memorandum: An Additional Source of Average Wholesale Price Data in Pricing Drugs and Biologicals Covered by the Medicare Program* (Sept. 8, 2000), attached as Ex. 2.).[1]

Notably, the Relator has not pointed to a *single document* that is not already produced that falls outside of the temporal scope and relates to the one topic that the Court indicated might be relevant to the Government's claim: documents from the sales and marketing team discussing specific marketing practices.  (Hg. Tr., Feb. 27, 2007, at pp. 31-32, attached as Ex. 1.)  Instead, Relator has offered this Court documents that instruct HPD representatives *not* to attempt to woo customers by using the so-called "spread," (*see* Sample Doc. 350 at p. 6) and a presentation given *to* Abbott by a company that is not a party to this lawsuit (Sample Doc 390).

Relator's failure to offer a single piece of relevant information that could uniquely be gleaned from the post-2001 documents produced in the Texas litigation should be fatal to its claim that all such documents should be freely shared with the Government.  *See Briddell v. St. Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (relevant information, which is otherwise discoverable, may be limited "temporally in order to avoid overly broad . . . requests . . . a plaintiff will not be permitted an open-ended review of corporate records" in order to establish unlawful corporate practices) (citing *Glenn v. Williams*, 209 F.R.D. 279, 281-82 (D.D.C. 2002)).

---

[1] And, to the extent that Relator seeks information of "how Abbott's customers reacted negatively" to the change in reported prices, Abbott has already produced the small group of documents in which the customers directly express such reactions; further discovery would be cumulative.

### B. As This Court Has Already Observed, the Government Is Not Entitled to Documents that Relate Exclusively to Drugs Outside Of The Four in the Complaint.

Finally, Relator offers no justification for its request to share with the Government discovery relating *exclusively* to products marketed by Abbott's Pharmaceutical Products Division ("PPD"), beyond those Abbott has already agreed to provide. This Court made clear at a hearing on February 27, 2007, that, having brought a claim based on four drugs, the Government is *not* authorized to conduct discovery about all of Abbott's other drugs. (Hrg. Tr., Feb. 27, 2007, at pp. 8-9 ("But you're not entitled to every drug if you haven't sued on it. . . . You're not entitled to documents on any single drug if you haven't charged it.") (Attached as Ex. 1)). This is unquestionably the correct ruling, and it dooms Relator's current request.

It is important to keep in mind that *none* of the subject drugs at issue are PPD products, and there are critical differences between the HPD products that the Government has charged in its complaint and the PPD products that Relator now seeks to add to the discovery in this matter. For instance, products marketed and sold by Abbott's PPD are almost exclusively single-source, self-administered drugs (*e.g.*, branded pills) that are prescribed by a physician to an eligible patient, who then takes the prescription to be filled by a third-party (typically a pharmacist who has no discretion to alter the physician's prescription). Medicare Part B does not cover PPD drugs, and to the extent Medicaid reimburses third-party pharmacists for PPD drugs, such reimbursement occurs only *after* the third-party pharmacist fills the physician's *binding* prescription. Thus, these PPD drugs were not, indeed could not have been, sold, marketed, and/or reimbursed in a way consistent with the Government's alleged scheme. For single-source, self-administered drugs (like Abbott's PPD drugs), it was not Abbott's customer – the administering physician – that received reimbursement under Medicaid. It was instead the third-

party pharmacist, with whom Abbott had no dealings, and who has little or no discretion regarding what products to dispense in any event.

Simply put, the Government's theory that Abbott attempted to get its existing and potential customers to administer or use Abbott drugs by relying on inflated reimbursement rates through the Medicare or Medicaid programs fails on its face with respect to PPD drugs, because Abbott's customers neither sought nor received reimbursement from any Government program. Hence, material exclusively relating to PPD drugs could never reap "pattern or practice" evidence.[2] Accordingly, none of the Relator's arguments are sufficient to carry the burden to establish why additional discovery exclusively relating to PPD drugs would either be admissible evidence or be reasonably calculated to lead to admissible evidence.

Moreover, although the Relator makes sweeping statements about how documents produced in other actions and relating to drugs not at issue in the Government's suit show supposedly "unified" fraudulent marketing schemes, high-level executive knowledge of false pricing, and a scheme to split profits from inflated spreads, it only identifies two such documents: Sample Documents 176 and 350 – neither of which remotely supports Relator's claims. Interestingly, those documents do not relate to *any* specific drug, but are instead related to a presentation given to HPD employees instructing them *not* to use the "spread" as a method of gaining customers. *See* Sample Doc. 350 at p. 6. Given that this Court instructed the Relator to include its "best documents" in the sample (Hrg. Tr., Feb. 27, 2007, at p. 14, attached as Ex. 1), this omission speaks volumes about the evidence underlying the Relator's bald assertions.

---

[2] Indeed, the Court's own expert doubts that any alleged "spread" with respect to PPD drugs was the result of *any* unlawful conduct. (*See* Berndt Report, Dkt. No. 1384 at ¶ 23 ("The evolution of the AWP – WAC "spread" for branded self-administered pharmaceuticals is therefore, as best I can tell, quite understandable, and apparently not the result of any sinister or nefarious conspiracies.").)

### III.   CONCLUSION

For all these reasons, Abbott requests that the Relator's Motion to Compel be denied in its entirety.

Dated:  May 14, 2007

Respectfully submitted,

ABBOTT LABORATORIES INC.

By:  /s/ Jason G. Winchester

James R. Daly
Tina M. Tabacchi
Jason G. Winchester
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

CHI-1587397v1

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 14, 2007, the foregoing **DEFENDANT ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO RELATOR'S MOTION TO COMPEL TO PRODUCE OR CONSENT TO ACCESS TO ALL DISCOVERY PRODUCED IN OTHER FALSE PRICE REPORT LITIGATION** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Carol P. Geisler