# EXHIBIT A



**U.S. Department of Justice**

Civil Division

JRB:DA:GTGobena
46-18-1921

Tel. (202) 307-1088

*Post Office Box 261*
*Benjamin Franklin Station*
*Washington, D.C. 20044*

April 17, 2007

**BY EMAIL**

James R. Daly, Esq.
Jason G. Winchester, Esq.
Jones Day
77 West Wacker
Chicago, Illinois  60601-1692

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories,* MDL No. 1456/Civil Action No. 01-12257-PBS

Dear Jim and Jason:

      I am writing to you to memorialize our discussion yesterday, April 16, regarding our written request for proposed deposition dates for Miles White.

      As I mentioned yesterday, Abbott Laboratories, Inc.'s (Abbott) defense has focused mostly on the issue of government knowledge.  Under the False Claims Act (FCA), to negate scienter, Abbott must show (1) that the Government was fully informed by Abbott of the conduct at issue and (2) that the Government approved of the conduct at issue.  *See In re Pharmaceutical Industry Average Wholesale Price Litigation,* Docket Entry 4056 at p. 17 (J. Saris March 22, 2007) (denying motion to dismiss California FCA claim, noting that government approval of the particulars is necessary for a government knowledge defense).  Mere acquiescence is not enough to constitute the kind of government approval that negates FCA scienter. *See United States ex rel. Tyson v. Amerigroup,* Slip Copy at 8, 2007 WL 781729 (N.D. Ill. March 13, 2007) (denying defendant's motion for new trial, noting that the proper test is whether the government knew and approved the particulars of defendant's conduct, and that mere acquiescence, rather than approval, by government employees is not sufficient to avoid FCA liability).

      To date, Abbott has not produced any evidence that it fully disclosed to the Government the specific conduct set forth in the United States' complaint nor pointed to any evidence that the Government approved the conduct at issue.  Nevertheless, Abbott has pressed for the depositions of three former Centers for Medicare and Medicaid Services' (CMS) Administrators.  As you know, the Administrators are the highest ranking officials at CMS.  Notwithstanding the fact that Abbott has not established that these officials knew anything about the Abbott-specific conduct at issue in this matter, the United States has gone to lengths to make these witnesses available and to coordinate

-2-

deposition logistics.

As we stated yesterday, we believe Mr. White – by contrast – has direct and unique knowledge of the specific Abbott conduct and issues in this case. You did not contest our statements, other than to state that you believed the deposition is being taken for purposes of harassment. That is wrong.

The case law is clear: the deposition of high-level corporate officials is permitted when those officials have some unique knowledge of the issues in the case. *See, e.g., Travelers Rental Co., Inc. V. Ford Motor Company*, 116 F.R.D. 140 (D. Mass 1981); *Six West Retail Acquisition, Inc. V. Sony Theatre Management Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001).

It is evident that Mr. White has unique knowledge of the issues and conduct implicated in this case. For example:

- He was the recipient of a October 1999 litigation hold memorandum related to the Government's investigation of Abbott's pricing and marketing conduct. We have a right to ask him about what he did in response to receiving that litigation hold memorandum and discussions he had related to the investigation that prompted his receipt of the hold memorandum.

- Abbott was being investigated by the Government and was the subject of Congressional inquiries as of late 2000. The Congressional inquiry sparked press coverage. Mr. White was briefed and/or received briefing materials related to the inquiry and the related press coverage in or around October 2000. We have never received these briefing materials which are clearly responsive to our document requests. That notwithstanding, we are entitled to question Mr. White about these briefings and/or briefing materials.

- Abbott has argued that the Government, both CMS and Congress, knew of and effectively approved the conduct set forth in the Government's complaint. The Government's complaint in this case is *prima facie* evidence that CMS and the Department of Health and Human Services did not approve the conduct alleged in the complaint. Congressman Peter Stark's October 31, 2000 letter is evidence that Congress did not approve and tolerate the conduct set forth in the Government's complaint. That letter was addressed to Mr. White, and we have a right to inquire of Mr. Mr. White what occurred after he received the letter.

- The letter from Congressman Stark asked Mr. White to consult with Abbott's Board of Directors about Abbott pharmaceutical pricing conduct and to change Abbott's price reporting practices. Several months after Mr. White received the letter, Abbott began reporting reduced prices for certain of its drugs to the price compendia relied upon by Medicare and Medicaid to set drug reimbursement levels. We are entitled to ask Mr. White directly what his role was in coming to this corporate decision to report reduced prices to the pricing compendia.

-3-

- Based on Ms. Virginia Tobiason's deposition, Mr. White oversaw Abbott's ethics and corporate compliance programs. We understand that at the same time Abbott began reporting reduced prices (the middle of 2001), Abbott began implementing expanded corporate compliance programs. We have a right to ask Mr. White about his involvement in such efforts and the extent to which they related to the concerns raised by Congressman Stark and governmental investigations of Abbott price reporting conduct.

- In the summer and fall of 2001, Abbott was in the process of resolving the TAP Pharmaceuticals matter involving the drug Lupron. That case, specifically the civil portion, involved spread marketing allegations. Given the size of the civil settlement, Mr. White and Abbott's board of directors were likely involved in analyzing the allegations and settlement amount. This would have been another instance where Mr. White would have discussed issues similar to those involved in the Government's price fraud case against Abbott. We have a right to inquire into his involvement in the resolution of the TAP Pharmaceuticals case.

In short, starting in October 1999 and definitely by 2000, Mr. White was squarely involved in the deliberations and decision-making related to the specific conduct and issues in this case. As noted above, you did not deny yesterday that he has knowledge of these issues. If our understanding is incorrect, please clarify precisely why that understanding is wrong.

Under CMO 29, you are to provide dates for Mr. White's deposition by Wednesday, April 18. We look forward to receiving proposed dates at that time. If you choose to file a motion for a protective order, we will expect to receive that by Wednesday, April 25.

If you have any further questions, do not hesitate to give me a call.

Sincerely,

/s/ Gejaa T. Gobena

GEJAA T. GOBENA
Trial Attorney
Commercial Litigation Branch
Counsel for the United States

-4-

cc: Chris Cook
 Tina Tabacchi
 Renee Brooker
 Rebecca Ford
 Mark Lavine
 Raymond Winter
 James Breen