UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | Judge Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' SUR-REPLY TO DEFENDANT ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL A SUPPLEMENTAL RESPONSE TO ABBOTT'S INTERROGATORY NO. 7**

Defendant Abbott Laboratories, Inc's Reply Brief, filed in response the United States' Opposition to Abbott's Motion to Compel a Supplemental Response to Abbott's Interrogatory Number 7, fails to rebut the United States' Opposition to the this Motion. Abbott continues to misread the United States' complaint, as is evidenced in its description of the purported import of paragraph 42 to the Government's allegations. Abbott also continues to misconstrue the fundamental nature of the allegations that it faces in this case. The United States has answered Abbott's Interrogatory 7 adequately and completely. Furthermore, the United States' objections to the interrogatory are valid because Abbott seeks information that would be unduly burdensome to produce, that is irrelevant to any of the disputed issues in the case, and that is not likely to lead to the discovery of admissible evidence. Abbott's Motion should be denied in its entirety.

A.      **The United States has Answered Abbott's Interrogatory 7 Adequately**.

The premise of Abbott's entire motion is that "the gravamen of the Government's case is that CMS officials were misled about published AWPs."  Abbott Reply at p. 2.  That is wrong.  The gravamen of the Government's case is not that CMS officials were misled about published AWPs in some general sense. The gravamen of the Government's case is laid out in the paragraph 3 of the United States' complaint (emphasis added):

> . . . Abbott engaged in a fraudulent scheme that caused the Medicare and Medicaid programs to pay excessive reimbursement to Abbott's customers, *e.g.*, pharmacies, physicians, hospitals, home health agencies, nursing homes, home infusion companies, clinics and physicians (hereafter referred to collectively as "Customers").  In furtherance of this scheme, Abbott reported false, fraudulent and inflated drug prices for *certain* drugs (listed in ¶¶ 31 and 35 below) to several price reporting compendia that the Medicare and Medicaid programs relied upon to set reimbursement rates for Abbott's customers . . . Abbott knew that the Medicare and Medicaid programs relied on Abbott's reported prices to those compendia to set reimbursement rates for claims submitted for Abbott's drugs.  *Abbott then sold the drugs for far lower prices, and marketed to existing and potential Customers the government-funded "spread" between the inflated reimbursement amounts and the actual acquisition costs of the drugs to boost its sales and profits*.

This case is an action against Abbott for Abbott's particular price reporting and Abbott's marketing of the spread on certain of its drugs to its customers; this case is not about the AWP-based reimbursement systems in place during the relevant reporting period.  The assertion that the Government's case is about AWP prices *generally* is a caricature of the United States' argument that is not rooted in the actual allegations in the complaint.  This case is not about AWP reporting generally – this case is about what Abbott did.

Much as Abbott has mischaracterized the gravamen of the United States' complaint, so too has it mischaracterized the purpose of paragraph 42.  Paragraph 42 is not a factual contention

about the beliefs of government officials, pharmaceutical employees, or anyone else.[1]  It is simply a description of the legal term "average wholesale price (AWP)," in a section of the complaint setting forth the statutory and regulatory background of the Medicare and Medicaid programs.  The United States has provided Abbott with a list of sources that use the term "AWP" in a manner consistent with the description in paragraph 42.  *See United States' Supplemental Response*, Ex. 1, at pp. 5-6.   Most importantly, the United States noted in its supplemental response that the description of AWP found in paragraph 42 is completely consistent with the Court's November 2, 2006 Order construing the term AWP under the "plain meaning" doctrine of statutory construction.  *See Id.*; *compare* United States' Complaint, ¶ 42, and *In re Pharmaceutical Indus. Average Wholesale Price Litigation*, 460 F. Supp.2d 277, 287-88 (D. Mass. 2006) (construing AWP using a plain meaning approach).   The United States has thus identified several bases, including the citation of legal authority, for its description of AWP in its complaint.  This suffices to respond to an interrogatory requesting that the United States "state the basis" for its description of AWP in paragraph 42 of its complaint.

Abbott nonetheless protests the United States' response, and it does so by misconstruing the United States' complaint.   Abbott insists that there are factual contentions about the beliefs of individual government officials *implicit* in paragraph 42 of the complaint.  This is simply not the purpose of paragraph 42, and no amount of tortured textual exegesis (as Abbott offers on pages 5-6) can make it so.  The relevant sentence in paragraph 42 is simply the articulation of a

---

[1] As a general matter, the Government does not contend that the beliefs of Government officials are relevant in this case except as it goes to the specific Abbott conduct alleged in the complaint, and the extent to which such Government officials were fully knowledgeable of Abbott's conduct and approved of that conduct.

legal term that the Court already has defined, and the Government can answer the interrogatory

only in accord with its understanding of that legal term and the *Government's* intention in placing

that sentence in the *Government's* complaint.  Abbott's protestations aside, nothing more can be

required of the United States in responding to this Interrogatory.

**B.       The United States' Objections to Interrogatory 7 Are Well-Founded.**

The United States' objections to Abbott's interrogatory are appropriate, particularly given

the true intent of paragraph 42.  It is unduly burdensome for the government to identify all

"persons," including government employees, who interpreted the term "AWP" in a particular

way.  Querying all "persons," or even all HHS employees, about their personal understanding of

a legal term is a massive and heavily burdensome undertaking.   Furthermore, the identities or

existence of such "persons" are completely irrelevant to the live, disputed issues pending in the

case against Abbott.   The personal opinions of individual agency officials or other "persons"

concerning the meaning of the legal term AWP are irrelevant to the term's legal definition, and

also are irrelevant to any defenses that Abbott may raise to the United States' allegations in this

case.

First, it is a matter of settled law that agency interpretations of statutory or regulatory

terms are only relevant to the judicial construction of those terms "when the statute or regulation

remains ambiguous after we have employed the traditional tools of construction."  *United States

v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004).  In the instant case, the Court has construed the

meaning of the legal term AWP using the foremost traditional tool of statutory construction – a

plain language analysis.  *See Average Wholesale Price Litig.*, 460 F. Supp.2d at 287-88.  Abbott

evidently hopes to re-litigate the question of the meaning of AWP as a statutory and regulatory

term, arguing in its reply that "the Court's [November 2, 2006] ruling applied only to the parties

before it." *Abbott Reply* at p. 11.   Abbott's position is puzzling.   This Court's ruling held that

the statutory and regulatory term "average wholesale price" was unambiguous and construed it in

a manner consistent with its plain meaning, and, given that ruling, it is more than a leap of logic

to now argue that this holding would not apply in a subsequent case involving the same term in

the same set of statutes and regulations.[2]   An unambiguous statutory and regulatory term does not

become ambiguous on subsequent readings.

        As the Supreme Court has recently noted, "an isolated opinion of an agency official does

not authorize a court to read a regulation inconsistently with its language." *Environmental*

*Defense v. Duke Energy Corp.*, U.S. No. 05-848 (April 2, 2007).   Even if the legal term AWP

were held to be ambiguous as a matter of law, the only agency interpretation of the term that

would be relevant to its legal definition would be an interpretation contained in public, published

agency statements.   *See Lachman*, 387 F.3d at 54 ("agency interpretations are only relevant if

they are reflected in public documents.").   The informal, personal views or understandings of

individual agency officials are *completely irrelevant* in determining the meaning of a statutory or

regulatory term.   *See Id*. ("the non-public or informal understandings of agency officials

concerning the meaning of a regulation are thus not relevant.").   Abbott's interrogatory asks the

United States to identify agency officials (or other "persons") with a particular set of personal

views concerning the meaning of a statutory and regulatory term.   These views are irrelevant, as a

---

        [2] Indeed, the Court has already stated that it would apply the November 2, 2006 holding
concerning the legal meaning of AWP to the jury instructions in the upcoming Track 2 trial in the
instant MDL.   *See* Ex. 2, *Pretrial Conference Transcript* , pp. 28-29.

matter of law, to the judicial interpretation of that term, and the United States' objection to

Abbott's interrogatory on this basis is sound.

Abbott contends that "what CMS Officials understood about published AWPs is relevant

to the issues of reliance and causation." Abbott Reply at pp. 11-12.  Again, this case is not about

what particular government officials knew or understood about "published AWPs" generally or

about AWP-based reimbursement systems.[3]  This case is about Abbott's specific conduct in

reporting inflated prices for particular drugs to third-party compendia, and about Abbott's

scienter in reporting those fraudulent prices.   A defense based in part on "government

knowledge" could only be relevant to the United States' allegations in this case under certain

specific circumstances.  In determining liability under  the False Claims Act, "government

knowledge" is only relevant insofar as it relates to Abbott's scienter.  In order for its scienter to

be negated, Abbott must show that it fully disclosed its pricing practices to the government and

that the United States *approved* of those practices.  *See In re Pharmaceutical Indus. Average*

*Wholesale Price Litig.*, Docket Entry 4056 at p. 17.   Under the common-law fraud cause of

action, "government knowledge" is relevant only if it implicates whether the United States

justifiably relied on *Abbott*'s reported prices for *Abbott*'s drugs given the statutory and regulatory

system in place.  The generalized understanding of government officials concerning the meaning

---

[3] Abbott improperly cites to selective portions of the open depositions of David Tawes and Bruce Vladeck (at which the United States has not yet had the opportunity to conduct re-direct examination) to support its argument that agency officials construed the AWP in a manner allegedly inconsistent with paragraph 42 of the Government's complaint.  Abbott knows these depositions are not closed, and indeed, Dr. Vladeck's deposition is already scheduled to resume in June.  It is worth noting that, while the United States is not seeking a protective order blocking Abbott's discovery of the personal views of current and formal agency officials at depositions, such views are utterly irrelevant to any of the issues pending in this litigation.

of a legal term the Court has already defined are simply irrelevant to either of these potential defenses.  The United States' objections to Abbott's Interrogatory 7 are thus meritorious and should be upheld.

C.      **Conclusion**

For the foregoing reasons, Abbott's Motion to Compel a Supplemental Response to Interrogatory 7 should be denied.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN                         PETER D. KEISLER
UNITED STATES ATTORNEY                      ASSISTANT ATTORNEY GENERAL


 /s/ George B. Henderson, II                 /s/ John K. Neal
George B. Henderson, II                     Joyce R. Branda
Assistant U.S. Attorney                     Daniel R. Anderson
John Joseph Moakley U.S. Courthouse         Renée Brooker
Suite 9200, 1 Courthouse Way                Justin Draycott
Boston, MA 02210                            Gejaa T. Gobena
(617) 748-3398                              John K. Neal
(617) 748-3272                              Civil Division
                                            Commercial Litigation Branch
R. ALEXANDER ACOSTA                         P. O. Box 261
UNITED STATES ATTORNEY                      Ben Franklin Station
SOUTHERN DISTRICT OF FLORIDA                Washington, D.C.  20044
                                            Phone:  (202) 307-1088
/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101



Dated: May 14, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above "**UNITED STATES' SUR-REPLY TO DEFENDANT ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL A SUPPLEMENTAL RESPONSE TO ABBOTT'S INTERROGATORY NO. 7**" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                       /s/ John K. Neal

Dated: May 14, 2007                        John K. Neal