- 3 -

# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

In Re:                              )
PHARMACEUTICAL INDUSTRY              ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE              ) MDL No. 1456
LITIGATION                           ) Pages 1 - 49


MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE



United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 27, 2007, 10:10 a.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

Page 34

1   THE COURT: And with respect to Connolly, have her
2   move for an opening of the protective order with respect to
3   certain kinds of documents. You of course can talk to
4   whoever you want. No, you shouldn't be thrown out of a
5   deposition, and none of this is so super secret. On the
6   other hand, I have to say, it can't be a fishing expedition
7   to find a hundred more drugs to sue on. So that's sort of
8   where I'm trying to think about. Once I get into specifics,
9   I will get to specifics.
10   Now, let me get to Part B, which is, when are you
11   doing the depositions of the government people?
12   MS. BROOKER: We are doing them on an ongoing
13   basis. We're in the process of this right now.
14   MR. DALY: We've had a couple, your Honor. I think
15   we have four noticed.
16   THE COURT: Like who? Who?
17   MS. BROOKER: Well, Abbott has largely sought to
18   notice topics which they would call spoliation issues, your
19   Honor. There haven't been very many substantive depositions
20   that have taken place or that are noticed. They are seeking
21   to depose every individual that we put in an interrogatory to
22   find out whether their documents were preserved. For
23   example, there was a broad request for individuals who are
24   responsible or knowledgeable about the reimbursement process
25   in general; and then there are 30(b)(6) depositions going

Page 35

1   forward over where are their files, people who left years
2   ago. So there are not that many substantive government
3   depositions.
4   THE COURT: Let me say this on the flip side of
5   this issue, which is, I was somewhat frustrated over the
6   refusal of the U.S. government to produce witnesses in the
7   big trial that I just went through. It all came up sort of
8   too late, and it wasn't specific enough, at least for the
9   issues there. To the extent -- Abbott, you're in Class 2?
10   MR. DALY: Yes, your Honor.
11   THE COURT: To the extent there are depositions on
12   a substantive basis, they should be open to everyone.
13   Everyone has the right to understand what the government was
14   doing during the time period.
15   MS. BROOKER: Your Honor, we have actually been
16   doing that. In fact, more than that, and there hasn't been
17   an opposition to this, but we've been insisting that everyone
18   join the depositions so that we only need to offer a witness
19   one time. So when there is a deposition notice, it is served
20   on LexisNexis, and we encourage and almost insist that other
21   parties appear so that we don't have to recall over and over
22   again a government witness. That's just not been an issue.
23   THE COURT: Because at some point I anticipate in
24   this case under the False Claims Act -- and I don't remember,
25   I think there are very complicated legal issues, very

Page 36

1   complicated legal issues -- but, in any event, what Centers
2   for Medicare and Medicaid services understood and knew and
3   what they agreed to and what they didn't.
4   MS. BROOKER: And with respect to Abbott's conduct
5   and the Abbott drugs at issue in this case or the Dey drugs
6   and the Dey conduct.
7   THE COURT: Yes, and in general -- I mean, I'm
8   probably now more steeped in this than most people, but it
9   came -- the Office of the Inspector General was actually
10   quite persistent in trying to flag some of these issues. I
11   don't know if it's Abbott drugs or not. I just don't know.
12   And at some point, at least Mr. Scully and other people were
13   testifying on the Hill about this stuff. And so it's
14   relevant, not only to statute of limitations, but it's also
15   relevant to -- I think a very difficult area of the law is
16   when the government knows about a fraud, let's say, knows
17   about a fraud and it continues. I don't know what happens
18   when -- the solution is a very complicated one. In other
19   words, when the solution has to do with increasing
20   administrative fees and getting something through Congress, I
21   don't know what the answer is under False Claims Act, but at
22   least we need a factual record.
23   MS. BROOKER: Certainly, your Honor, and government
24   intends to be very open about the process. And I will remind
25   the Court that, you know, the United States has not sued the

Page 37

1   entire pharmaceutical industry, and we have not sued Abbott
2   on all of its drugs. We are really focused on very discrete
3   conduct of a very discrete company or, you know, an
4   additional two companies. So we believe that the proper
5   focus is on what the reimbursement officials at CMS knew
6   about these thousand plus percent spreads by Abbott on these
7   particular drugs.
8   THE COURT: Are they cancer drugs?
9   MS. BROOKER: Some of those are. There's a large
10   antibiotic and then there are water solubles that are
11   generally at issue.
12   THE COURT: Are they generics?
13   MR. DALY: Yes, they're all generics, Judge.
14   THE COURT: Are they part of Track 2?
15   MR. DALY: We're in Track 2, your Honor. Yes, what
16   we're hearing again is that they're suggesting without coming
17   out and saying it that they want to try to limit us, that we
18   can ask the CMS people and the OIG people what they knew and
19   understood, but only if they knew and understood about a
20   5-milliliter bag of saline solution. Our position, of
21   course, and we talked about this when we were here in the
22   fall, is much broader than that. And we need to find out
23   what the government knew about spreads and mega spreads and
24   cross-subsidization and all of this information. And counsel
25   is correct that, you know, we're going to go ahead and we're