# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

## CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF THE ASTRAZENECA CLASS 1 SETTLEMENT AND APPROVING THE FORM AND METHOD OF NOTICE TO THE CLASS

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ................................................................................................1

II.  BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS ...........................1

III.  DESCRIPTION OF THE PROPOSED SETTLEMENT ....................................2

    A.  The Proposed Settlement Class.................................................................2

    B.  Total Settlement Amount and Distribution...............................................3

        1.  This Agreement is consumer friendly...........................................3

        2.  A consumer is eligible to obtain double damages – an incentive to file claims........................................................................................3

        3.  The cy pres floor ..........................................................................5

    C.  Attorney's Fees and Expenses and Incentive Awards .............................6

    D.  The Proposed Notice Plan.........................................................................6

IV.  ARGUMENT .....................................................................................................8

    A.  The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement...................................................9

        1.  The Requirements of Rule 23(a) have been satisfied ..................9

    B.  Preliminary Approval is Appropriate.....................................................10

        1.  The proposed Settlement is sufficiently fair, reasonable and adequate for preliminary approval ............................................12

        2.  The proposed Settlement is the result of arduous, arms-length negotiations conducted by highly experienced counsel.............14

        3.  Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues ...........15

    C.  The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing .........................................................16

V.  CONCLUSION................................................................................................19

C:\DOCUMENTS AND SETTINGS\CORINNE\LOCAL SETTINGS\TEMPORARY INTERNET FILES\OLK3B\WORKSITE_172256

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................15

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*,
    455 F.2d 101 (7th Cir. 1972) ..............................................................17

*Alliance to End Repression v. City of Chicago*,
    91 F.R.D. 182 (N.D. Ill. 1981) ...........................................................13

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................8, 9, 16

*Argo v. Harris*,
    84 F.R.D. 646 (E.D.N.Y. 1979) ..........................................................13

*Carlough v. Amchem Prods., Inc.*,
    158 F.R.D. 314 (E.D. Pa. 1993) .........................................................16

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) .....................................................9, 14, 15

*In re Compact Discount Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ...........................................................10

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) ............................................................11

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    183 F.3d 1 (1st Cir. 1999) .............................................................10

*Durrett v. Housing Auth. of Providence*,
    896 F.2d 600 (1st Cir. 1990) .......................................................10, 16

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ............................................................13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)......................................................................................................17

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ......................................................................................14

*In re General Motors Corp. Pick-Up Truck Fuel Tank*,
    55 F.3d 768 (3d Cir. 1995)...........................................................................................15

*Greenspun v. Bogan*,
    492 F.2d 375 (1st Cir. 1974).........................................................................................17

*Grunin v. International House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ........................................................................................17

*Hawkins v. Commissioner of New Hampshire Dep't of Health & Human Servs.*,
    2004 U.S. Dist. Lexis 807 (D.N.H. Jan. 23, 2004) .................................................. *passim*

*Henry v. Sears Roebuck & Co.*,
    1999 WL 33496080 (N.D. Ill. July 23, 1999)...............................................................18

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..................................................................................13, 14

*Lake v. First Nationwide Bank*,
    156 F.R.D. 615 (E.D. Pa. 1994)....................................................................................17

*Levell v. Monsanto Research Corp.*,
    191 F.R.D. 543 (S.D. Ohio 2000) ...................................................................................9

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ....................................................................................18

*Maritimes Steel v. Continental Ill. Nat'l Bank & Trust Co.*,
    834 F.2d 677 (7th Cir. 1987) ........................................................................................15

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................................18

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ...........................................................................18

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
    189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000)..............................10

C:\DOCUMENTS AND SETTINGS\CORINNE\LOCAL SETTINGS\TEMPORARY INTERNET FILES\OLK3B\WORKSITE_172256

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..................................................................................................17, 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................................11

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*,
  546 F. Supp. 1 (N.D. Ohio 1982) ............................................................................13

*Patterson v. Stovall*,
  528 F.2d 108 (7th Cir. 1976) ...................................................................................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)...........................13, 19

*Reppert v. Marvin Lumber & Cedar Co.*,
  359 F.3d 53 (1st Cir. 2004).....................................................................................16

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000)..................................................................................15

*In re Screws Antitrust Litig.*,
  91 F.R.D. 52 (D. Mass. 1981)..................................................................................10

*Smilow v. Southwestern Bell Mobile Sys.*,
  323 F.3d 32 (1st Cir. 2003)......................................................................................9

*South Carolina Nat'l Bank v. Stone*,
  749 F. Supp. 1419 (D.S.C. 1990).............................................................................9

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*,
  447 F.2d 647 (7th Cir. 1971) ...................................................................................13

*White v. National Football League*,
  822 F. Supp. 1389 (D. Minn. 1993).....................................................................11, 17

*Whitford v. First Nationwide Bank*,
  147 F.R.D. 135 (W.D. Ky. 1992)..............................................................................13

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ...................................................................................12

## I.    INTRODUCTION

The Class Plaintiffs respectfully submit this Memorandum in support of the Joint Motion for Entry of an Order Granting Preliminary Approval of the AstraZeneca Class 1 Settlement and Approving the Form and Method of Notice to the Class (the "Joint Motion").  The Settlement encompassed by the parties' Settlement Agreement provides for AstraZeneca to pay Class Members who file valid claims up to an aggregate total of $24,000,000, with up to $10,000,000 going to mutually acceptable charitable organizations funding cancer research or patient care if valid claims total less than $24,000,000.  In addition to the foregoing, AstraZeneca will pay the full costs of notice and administration of the Settlement, as well as attorneys' fees and costs of $6,500,000 and $2,100,000, respectively, and incentive awards to the two Class Representatives of $5,000 each.

Class Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable and adequate.  It has been reached after months of arms-length, intensely fought negotiation, all of which were conducted under the auspices of the Court appointed mediator, Eric Green. Accordingly, this Joint Motion seeks preliminary approval of the Settlement and certification of the Class for settlement purposes and requests, *inter alia*, that the Court order that notice of the Settlement be disseminated to the Class, and schedule a hearing to determine whether final approval of the Settlement should be granted.

## II.    BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS

The settlement negotiations among the parties, although always courteous, were long and contentious.  At least two mediation sessions were held prior to the Class 2 and 3 trial.  As the Court is aware, these attempts at settlement with AstraZeneca were unsuccessful.  Thereafter, Eric Green periodically made inquiries in an attempt to restart a dialogue, but these efforts were unfruitful.  In March 2007, and as the AstraZeneca Class 1 trial drew nearer, renewed efforts at

mediation began to gain traction.  Many negotiations via telephone transpired, leading up to daily

calls during the first week of May.  The negotiations continued in a formal mediation session in

Boston on May 4, where an agreement was finally made.

     Throughout this entire process, the parties exchanged information and debated the other's

evidence and interpretations.  Both sides made detailed presentations to Eric Green and presented

extensive analysis and conclusions of experts, and noted their positions on legal theories,

evidence and possible damages

## III.    DESCRIPTION OF THE PROPOSED SETTLEMENT

### A.    The Proposed Settlement Class

     Consistent with the Court's January 30, 2006, Consolidated Order Re:  Motion for Class

Certification, the proposed Settlement Class is as follows:

> All natural persons nationwide who made a co-payment based on
> AWP for Zoladex® under the Medicare Part B Program during the
> period from January 1, 1991 through December 31, 2004.
> Excluded from the Class are those who made flat co-payments,
> who were reimbursed fully for any co-payments, or who have the
> right to be fully reimbursed, as well as AstraZeneca and its
> officers, directors, management, employees, subsidiaries, and
> affiliates.

     The proposed Settlement Class differs in one respect from the litigation Class 1

previously certified by the Court, in that the Settlement Class includes residents of the states of

Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia, who

were not included in the certified class.  Class Members in these states only will be provided

with an opportunity to request exclusion.

**B.      Total Settlement Amount and Distribution**

**1.      This Agreement is consumer friendly**

AstraZeneca will pay out up to an aggregate amount of $24,000,000 in a claims-based

settlement process administered by a third-party administrator (the "Settlement Amount").

Agreement, ¶ 4.  Class Members will be required to complete a Claim Form that will be included

with the settlement Notice and submit proof of a Zoladex® payment.  Submission of just one of

the following items will satisfy this proof:

> (1) a receipt, cancelled check, or credit card statement that shows a
> payment for Zoladex®;
>
> (2) a letter from a doctor saying that he or she prescribed
> Zoladex® and the class member paid part of the cost of Zoladex®
> at least once;
>
> (3) a statement under penalty of perjury saying that he or she made
> a co-pay or cash payment for Zoladex® during the Class Period; or

Agreement, ¶ 10.  If the Class Member has died, any of the foregoing may be executed by a

spouse of a deceased Class Member or a legal representative of a deceased Class Member's

estate.

Each Class Member must specify on the Claim Form the time period during which they

took Zoladex®, as well as any time period during which the Class Member had supplemental

insurance, if any.

**2.      A consumer is eligible to obtain double damages – an incentive to file claims**

The amount that a Class Member will be eligible to receive will be based on the number

of months that he or she was prescribed Zoladex®.  Dr. Hartman has calculated estimated

overcharges associated with the alleged price inflation for Zoladex®.  The alleged overcharge

varies based on the year and whether the Class Member had supplemental insurance that paid

part of the Medicare Part B co-pay.  The amount to which a Class Member who filed a valid

Claim Form will be entitled to receive is to be calculated by taking the number of months that the Class Member took Zoladex® and multiplying that number by the alleged overcharge that applies for that year. ***The total amount would then be doubled***.  Agreement, ¶ 10.

The tables below, with data extracted from the April 23, 2007 Hartman Analysis of Consumer Damages as set forth in Exhibit D to the Settlement Agreement, will be used in the foregoing calculation:

**Table 1:  Monthly Amounts, Including Interest, by Year for Class Members Who Made Medicare Part B Co-Payments for Zoladex and Did Not Have Private Third-Party Supplemental Insurance**

| | | | |
|---|---|---|---|
| 1991: $23.88 | 1992: $22.92 | 1993: $18.97 | 1994: $19.41 |
| 1995: $32.86 | 1996: $37.89 | 1997: $50.48 | 1998: $67.43 |
| 1999: $72.15 | 2000: $67.94 | 2001: $65.56 | 2002: $62.81 |
| 2003: $61.30 | 2004: $59.73 | | |

**Table 2:  Monthly Amounts, Including Interest, by Year for Class Members Who Made Partial Medicare Part B Co-Payments because They had Private Supplemental Insurance Polices that Covered Part of the Co-Payment**

| | | | |
|---|---|---|---|
| 1991: $4.78 | 1992: $4.58 | 1993: $3.79 | 1994: $3.88 |
| 1995: $6.57 | 1996: $7.58 | 1997: $10.10 | 1998: $13.49 |
| 1999: $14.43 | 2000: $13.59 | 2001: $13.11 | 2002: $12.56 |
| 2003: $12.26 | 2004: $11.95 | | |

By way of example, a Class Member without MediGap insurance who took Zoladex® for the entirety of 2002, 2003 and 2004 would be eligible to receive $4,408 calculated as follows:

| | | | |
|---|---|---|---|
| 2002 overcharge per month | $62.81 | = | $753 annually |
| 2003 overcharge per month | $61.30 | = | $735 annually |

| | | | |
|---|---|---|---|
| 2004 overcharge per month | $59.73 | = | $716 annually |
| Total Recognized Claim | | = | $2,204 |
| Total Claim Would be Doubled | | = | $4,408 |

Another, "real life" example is provided by Class Representative Leroy Townsend.  Mr. Townsend received Zoladex injections every three months from January 1997 to March 2004.  He had supplemental insurance but is unable to identify the months during which supplemental insurance covered a co-payment.  This means that Table 1 will govern the calculation used to determine Mr. Townsend's payout for each year.  If $24 million is sufficient to cover all class claims (meaning no pro rata reduction), Mr. Townsend is projected to receive $11,102.46, calculated as follows:

```
1997 $50.48 * 12 = $ 605.76
1998 $67.43 * 12 = $ 809.16
1999 $72.15 * 12 = $ 865.80
2000 $67.94 * 12 = $ 815.28
2001 $65.56 * 12 = $ 786.72
2002 $62.81 * 12 = $ 753.72
2003 $61.30 * 12 = $ 735.60
2004 $59.73 * 3  = $ 179.19
               $5551.23 * 2 = $11,102.46
```

These payouts are far better than the recoveries in other cases.

**3.     The cy pres floor**

If the total amount of valid claims exceeds $24,000,000, payments to Class Members will be reduced proportionately.  Agreement, ¶ 4.  If $10,000,000 or less of the Settlement Amount remains after all authorized claims of Class Members are paid, AstraZeneca shall pay such remaining amount to mutually acceptable charitable organizations funding cancer research or patient care (the "Cy Pres Amount").  If the Parties are unable to agree on an acceptable organization or organizations, Eric Green will mediate the issue, subject to the Court's final determination and approval.  If more than $10,000,000 of the Settlement Amount remains after

all authorized claims of Class Members are paid, AstraZeneca will pay the $10,000,000 Cy Pres

Amount, and the amount of valid claims, but will not be obligated to make any further payments

to Class Members or in Cy Pres.  Agreement, ¶ 5.

## C.    Attorney's Fees and Expenses and Incentive Awards

Class Plaintiffs' Counsel will submit a fee petition for an award of fees, reimbursement

of costs and expenses, and award of incentive payments to appropriate Plaintiffs or Class

Representatives.  Understanding that the award of attorneys' fees is a matter committed to the

sole discretion of this Court, subject to Court approval AstraZeneca has agreed to pay attorneys'

fees of $6,500,000 and costs of $2,100,000.  ***These amounts will not come out of the***

***$24,000,000 Settlement Amount***.  Agreement, ¶ 3(d).  Attorneys' fees and costs were negotiated

only after agreement on the Settlement Amount was obtained.

The Settlement Agreement also provides for incentive awards in the amount of $5,000 to

Class Representatives Mr. Townsend and Mr. Howe, if approved by the Court for services

rendered to the Class by these Class Representatives.  Agreement, ¶ 3(c).  These payments also

will not serve to reduce the $24,000,000 Settlement Amount.

## D.    The Proposed Notice Plan

AstraZeneca has also agreed to pay the full costs of the Notice Plan and of the

administration of the Settlement, including the claims process.  Agreement, ¶ 3(b).

The Notice Plan is summarized as follows.  Lead Counsel will seek, with the Court's

assistance if necessary, CMS information, including last known address and payment

information, of beneficiaries who may have made a payment, or incurred a currently enforceable

obligation to make a payment, under Medicare Part B for the Zoladex J-Codes during the Class

Period.  Agreement, ¶ 9(b).  A detailed Notice and Claim Form, substantially in the form of that

appearing at Exhibit B-1 to the Settlement Agreement, will be mailed to the Class Members

identified by CMS.  Among other things, the Notice describes why the Class Member received the Notice, what the lawsuit is about; advises that the recipient is probably a member of the Class; describes the terms and benefits of the Settlement and gives instructions for making a claim by completing a Claim Form, which will be included with the Notice; and provides instructions for commenting on the Settlement and appearing at the final Fairness Hearing. There is a second version of the Notice found at Exhibit B-1 that will be mailed only to Class Members residing in the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia.  Residents in these states were not included in the litigation Class 1 initially certified by the Court and, therefore, were never previously given an opportunity to request exclusion.  The version of the Notice for residents of these states advises them of their rights to opt-out of the Settlement Class and provides instructions for doing so.

The Claim Form asks the Class Member for basic information, including name and address; relationship to the Class Member if the Claim Form is being submitted by someone on behalf of the Class Member; Zoladex® purchase information, including month and year; and whether the Class Member had supplemental insurance and, if so, during what time period.  The Claim Form also instructs the Class Member to sign under penalty of perjury.

The Summary Notice, intended for publication, appears at Exhibit B-2 of the Settlement Agreement.  Among other things, the Summary Notice provides the salient terms of the Settlement, describes the definition of the Settlement Class and directs the reader to obtain more information from the Claims Administrator by calling a toll-free line, visiting the Web site, or sending a letter.

The plan for publishing the Summary Notice appears at Exhibit B-3 of the Settlement Agreement (the "Notice Plan").  Kinsella/Novak Communications ("Kinsella"), who assisted

with the Notice of Pendency and the GSK Settlement Notice, has crafted a media plan intended

to target potential Medicare Part B beneficiaries who have taken Zoladex®.  Based on the firm's

substantial experience in designing media programs to reach the broadest possible number of

Class Members, as well as utilization of a sophisticated software program identifying which

publications provide the optimal reach to a target audience, Kinsella has selected a wide array of

newspapers, newspaper supplements and magazines frequently read by the Medicare Part B

target demographic.  And because 90 percent of Zoladex® users are older men, publications read

by older men are included as well.  Notice Plan at 14-21.  Kinsella estimates that this paid media

program will reach 78.6% of Medicare beneficiaries and 81.7% of Prostate drug users.  Notice

Plan at 24.

In addition, the Summary Notice will be published on the Claims Administrator's Web

site.

## IV.    ARGUMENT

A class action cannot be compromised or settled without the approval of the Court.  FED.

R. CIV. P. 23(e).  Prior to addressing the adequacy of a proposed Settlement, however, the Court

must determine whether the Class, as agreed to by the parties, may be certified for purposes of

the Settlement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Hawkins v.*

*Commissioner of New Hampshire Dept. of Health & Human Servs.*, 2004 U.S. Dist. Lexis 807

(D.N.H. Jan. 23, 2004).

A court may grant conditional approval of a class action where, as here, the Class

proposed satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and

adequacy), as well as one of the three subsections of Rule 23(b).  *See Amchem*, 521 U.S. at 613;

*see also South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990).

If the Court determines that a Settlement Class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000). First, the Court must preliminarily approve the proposed settlement. *Id.* at 547. Second, members of the Class must then be given notice of the proposed settlement. *Id.* Third, a hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the Class as a whole, and consistent with the public interest. *Id.* This protects the Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian for the Class's interests. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996).

## A. The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement

Preliminary certification of the Settlement Class is appropriate in this case because the four requirements of Fed. R. Civ. P. 23(a) and a part of Rule 23(b) are satisfied.

### 1. The Requirements of Rule 23(a) have been satisfied

Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation. *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing *Amchem*, 521 U.S. at 613). These issues have been addressed in the Court's January 30, 2006, Consolidated Order Re: Motion for Class Certification and will not be repeated here. All Rule 23(a) requirements have been satisfied.

In addition to having satisfied the prerequisites of Rule 23(a), the Class also satisfies those of Rule 23(b)(3): namely, (1) questions of law or fact common to Class Members predominate over any questions affecting only individual members; and (2) the Class action is

superior to other available methods for the fair and efficient adjudication of this matter.

*Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 196-97 (D. Mass. 1999), *aff'd*, 208

F.3d 288 (1st Cir. 2000); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 55 (D. Mass. 1981); *In re*

*Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003).

These issues have also been addressed by the Court's January 30, 2006, Consolidated Order Re:

Motion for Class Certification.

**B.      Preliminary Approval is Appropriate**

Plaintiffs respectfully submit, as they will demonstrate at the Fairness Hearing, that:

(i) the Settlement is in all respects fair, reasonable and adequate to the Class; (ii) they have

investigated the pertinent legal and factual issues; (iii) continued litigation will consume

enormous resources of the parties and the Court; and (iv) there is no hint of collusion between or

among the parties in the Settlement negotiations.  At the Fairness Hearing the Court must

undertake a detailed assessment of the terms of the Settlement, the interests of the Class

Members as well as any third parties that might be affected by the Settlement, and the

circumstances of the litigation and the proposed Settlement.  *See Duhaime v. John Hancock Mut.*

*Life Ins. Co.*, 183 F.3d 1, 2, 7 (1st Cir. 1999); *Durrett v. Housing Auth. of Providence*, 896 F.2d

600, 604 (1st Cir. 1990); *Hawkins*, 2004 U.S. Dist. Lexis 807, at *14.

However, at this stage of the Settlement process, the Court conducts only a preliminary

evaluation to determine whether the proposed Settlement is within the range of possible final

approval, and thus whether Notice to the Class of the terms and conditions of the proposed

Settlement, and the scheduling of a formal Fairness Hearing, are appropriate.  *White v. National*

*Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Thus, the MANUAL FOR COMPLEX

LITIGATION, THIRD ("MANUAL") characterizes the preliminary approval inquiry as a court's

"initial assessment" of the fairness of the proposed settlement, made on the basis of written submissions and informal presentation from the settling parties, and summarizes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of Class representatives or of segments of the Class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the Class Members of a formal Fairness Hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

MANUAL § 30.41; *see also* 2 NEWBERG § 1.25.

As detailed below, the proposed Settlement falls well within the range of reasonableness, and thus merits preliminary approval.

Initially, Class Plaintiffs note that the law has long favored settlement of litigations.  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation.  In addition, there is an overriding public interest in favor of settlement of complex class action suits, especially where the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established."  *See*, *e.g.*, *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985).  By supporting the settlement of complex, class action disputes, the judicial system can help minimize litigation expenses on both sides, reduce the strain on scarce judicial resources, and avoid the risk of trial to both parties.  MANUAL, §§ 23, 30.4 (Fed. 1995).

These concerns apply with particular force in a case such as this, where thousands of Medicare beneficiaries throughout the country were subject to allegedly deceptive and unfair practices in connection with the marketing and sale of Zoladex®.  Individual litigation would

clog the courts of this and many other states; would take years to resolve; and, given the relatively modest amount of damages suffered by each individual consumer, it likely would be available only to those wealthy and sophisticated enough to retain their own lawyers. The proposed Settlement is the best and only vehicle to assure that all Class Members, regardless of their means, receive the relief to which they are entitled in a prompt and efficient manner.

1.     **The proposed Settlement is sufficiently fair, reasonable and adequate for preliminary approval**

In determining whether the Settlement is fair, reasonable and adequate to the Class as a whole, several factors should be considered, including: (1) the complexity of the litigation, (2) the posture of the case at the time settlement was proposed, (3) the extent of discovery conducted in the case, (4) the circumstances of the settlement negotiations, (5) the experience of counsel, (6) the relative strength of the plaintiffs' case on the merits, the possible defenses, and other risks in the litigation, (7) the anticipated duration and expense of further litigation, and (8) the reaction of the Class and opposition to the settlement. *Hawkins*, 2004 U.S. Dist. Lexis 807, at *15 (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 785 (3d Cir. 1995); *Kovacs v. Ernst & Young*, 927 F.2d 155, 158 (4th Cir. 1991)); *Williams v. Vukovich*, 720 F.2d 909, 922-24 (6th Cir. 1983). Some of these factors are not yet relevant at the preliminary approval stage, but others can be used to guide the preliminary approval process.

While the foregoing criteria will guide the Court's analysis, "[a] class action settlement cannot be measured precisely against any particular set of factors." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6-7 (N.D. Ohio 1982)). Therefore the relevance of the factors set forth above "will vary from case to case." *Ohio Public Interest Campaign*, 546 F. Supp. at 6-7.

As a general rule, courts will not substitute their own thoughts for the parties' business judgment in arriving at a settlement.[1] *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976); *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971).  Accordingly, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether Class Members will receive as much from a settlement as they might have recovered from victory at trial.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).  It is not the Court's function to reopen and enter into negotiations with the litigants in the hope of improving the terms of the settlement or to substitute its business judgment for that of the parties who worked out the settlement.  *Argo v. Harris*, 84 F.R.D. 646, 648 (E.D.N.Y. 1979) (quoting *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 361 (S.D.N.Y 1973), *aff'd on op. below sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112 (1973)).  Courts challenged with evaluating a proposed class action settlement recognize that the "essence of settlement is compromise" and will not represent a total win for either side.  *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dir.*, 616 F.2d 305, 315 (7th Cir. 1980)).

Evaluation of the aforementioned factors in this case weigh heavily in favor of ***preliminary approval***.  Coming on the heels of the Class 2 and 3 trial, and on the eve of the Class 1 trial, Plaintiffs were very well acquainted with the prospective strengths and risks of the

---

[1] Judge Getzendanner explained in *Alliance to End Repression v. City of Chicago*, 91 F.R.D. 182, 201 (N.D. Ill. 1981):  "Some objectors argue that both settlement agreements are fatally defective because they lack more extensive admissions or finding of wrongdoing by the Court.  As the Court stated at the March 13 hearing: ... 'the whole purpose of the settlement is to avoid adjudication with respect to the activity which is the basis of the complaint.  I think the parties would be stunned if in submitting a class action settlement to the Court, the Court started to decide the issues.  That's why people enter into settlements and I am not going to interfere in the settlement process.'"

case.  Notwithstanding these risks, with which the Court is also well acquainted, Plaintiffs were

able to garner a Settlement Amount of $24,000,000, with AstraZeneca's agreement to pay notice

and administration costs and attorneys' fees and costs on top of the Settlement Amount, in a case

with estimated damages, including pre-judgment interest, of approximately $57,000,000.  *See*

Exhibit D to the Settlement Agreement, Row 8 for each Table ($39,089,780 plus $18,581,809).

The Settlement Amount thus represents approximately 42% of total damages, and about 62% if

estimated Notice and administration costs and attorneys' fees and costs are included (Notice and

administration costs are estimated to be about $3,000,000).

### 2.  The proposed Settlement is the result of arduous, arms-length negotiations conducted by highly experienced counsel

There is a presumption of correctness attached to a Class settlement reached in arms-

length negotiations between experienced, capable counsel.  *City P'ship Co. v. Atlantic*, 100 F.3d

at 1043; *see also Hawkins*, 2004 U.S. Dist. Lexis 807, at *15; *Flinn v. FMC Corp.*, 528 F.2d

1169, 1173 (4th Cir. 1975) ("While opinion and recommendation of experienced counsel is not

to be blindly followed by the trial court, such opinion should be given weight in evaluating the

proposed settlement."); *see also* NEWBERG § 11.41, at 87-89.

The United States Court of Appeals for the Seventh Circuit, in approving a class action

settlement, noted that "[r]ather than attempt to prescribe the modalities of negotiation, the district

judge permissibly focused on the end result of the negotiation. . . .  The proof of the pudding was

indeed in the eating."  *Maritimes Steel v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677,

684 (7th Cir. 1987); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984) (most important concern for the court in reviewing a settlement of a class action

is the strength of the plaintiffs' case if it were fully litigated).

In the instant action, the parties actively engaged in many rounds of negotiations, for many months.  The parties negotiated arduously and at arms-length with the Court-appointed Mediator.  The negotiations involved submissions of proposals, counter-proposals, evaluation of all discovery and factual arguments.  The parties have worked long and hard to reach a resolution of this matter, and Plaintiffs submit it is fair, appropriate, and in the best interests of the Class Members.

     **3.**     **Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues**

A presumption in favor of the proposed Settlement arises when sufficient discovery has been provided and counsel have experience in similar cases.  *See Hawkins*, 2004 U.S. Dist. Lexis 807, at *15; *see also City P'ship Co. v. Atlantic*, 100 F.3d 1043; *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000).  This factor directs the trial court to consider whether the attorney participating in the settlement negotiations had access to sufficient information to appreciate the merits of the class's case.  *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 783 (3d Cir. 1995).

In this case, the parties exchanged written discovery, conducted over hundreds of depositions, and obtained extensive discovery from third-party sources such as other pending litigation, trade associations, physicians and the federal government.  Defendants produced millions of documents and Plaintiffs' counsel spent more than four years reviewing said documents, organizing documents for use, creating an electronic database and making determinations on utilization of important documents, additional discovery and general assistance in the litigation of this matter.  Trial was held on two Classes, and trial was imminent for Class 1.

**C.**     **The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing**

Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement.  *See Durrett*, 896 F.2d at 604.  Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs."  In a settlement Class maintained under Rule 23(b)(3), Class notice must meet the requirements of both the Federal Rules of Civil Procedure 23(c)(2) and 23(e).  *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (stating that requirements of Rule 23(c)(2) are stricter than requirements of Rule 23(e) and arguably stricter than the due process clause).  Under Rule 23(c)(2), notice to the Class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617; *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).

The MANUAL sets forth several elements of the "proper" content of notice.  If these requirements are met, a notice satisfies Fed. R. Civ. P. 23(c)(2); Fed. R. Civ. P. 23(e); and due process, and binds all members of the Class.  The Notice must:

    1.      Describe the essential terms of the Settlement;

    2.      Disclose any special benefits or incentives to the Class Representatives;

    3.      Provide information regarding attorneys' fees;

    4.      Indicate the time and place of the hearing to consider approval of the Settlement, and the method for objection to and/or opting out of the Settlement;

    5.      Explain the procedures for allocating and distributing Settlement funds; and

    6.      Prominently display the address of Class counsel and the procedure for making inquiries.

MANUAL, ¶ 30.212 (3d ed. 1995).  *See*, *e.g.*, *Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of

proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at the hearing satisfied due process); *accord Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

The proposed Notice program clearly meets this standard. The proposed Notice is clear, precise, informative, and satisfies the requirements governing notice. As reflected in the proposed Notice Plan created by a recognized expert, individual Notice will be mailed to all Class Members whose addresses can be reasonably ascertained and who can be reached reasonably economically. A website will allow Class Members to reach the Administrator, request Notices and ask questions. An extensive publication of a Summary Notice will take place in a variety of publications directed to the target demographic. The Notice, the Settlement Agreement and possibly other documents will also be published on the website established for purposes of this Settlement.

Notice via first class mail, publication in nationwide papers and magazines and website publication are all avenues for notice that have been approved by various courts. *See*, *e.g.*, *White v. National Football League*, 822 F. Supp. at 1400 (notice by mail to identified Class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third class mail to identified Class members and publication two times in the national edition of USA Today); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice by mail to identified Class members and publication in USA Today);

*Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669-70 (E.D. Va. 2001) (approving publication of summary notice in nationwide newspapers and posting full notice on websites maintained by co-lead counsel); *Henry v. Sears Roebuck & Co.*, 1999 WL 33496080 (N.D. Ill. July 23, 1999) (the Court directed that the class Action Settlement Notice be mailed by first class mail to all identified Class members, and the Summary Notice be published twice in the national edition of USA Today); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) (the Court approved Class Notice mailed to the last known address of all Class Members identified through reasonable effort by Defendant, published a Summary Notice on three separate days in a nationally published newspaper, *USA Today*, published the Class Notice and other pertinent information on the internet). Indeed, the Court has already approved this method of notice with the Notice of Pendency and the GSK Settlement Notice.

The proposed Notice clearly meets the requirements of Rule 23(c)(2) and 23(e), in so much as it meets the new requirements of plain English and ease of reading and includes: (1) the case caption; (2) a description of the Class; (3) a description of the claims; (4) a description of the Settlement; (5) the names of counsel for the Class; (6) a statement of the maximum amount of attorneys' fees that may be sought by Plaintiffs' Counsel; (7) the Fairness Hearing date; (8) a description of Class Members' opportunity to appear at the hearing; (9) a statement of the procedure and deadline for filing objections to the Settlement; (10) a statement of the procedure and deadline for filing requests for exclusion (for residents in the nine states who had not been previously provided an opportunity to opt out); (11) a statement of the consequences of

exclusion; (12) a statement of the consequences of remaining in the Class; and (13) the manner in which to obtain further information.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 496.  *See also* MANUAL § 30.212 (Rule 23(e) notice designed to be only a summary of the litigation and settlement to apprise Class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation).

Plaintiffs have retained an experienced Notice Administrator to administer notice, have carefully crafted a detailed Notice Plan and have taken all necessary steps to ensure that the proposed Notice Plan meets the requisite due process requirements.  Plaintiffs believe that the proposed Notice will fairly apprise Class Members of the Settlement and their options, and therefore should be approved by the Court.

## V.      CONCLUSION

For all the above-stated reasons, it is respectfully requested that the Joint Motion be granted and the Court enter an order:  (a) granting Preliminary Approval of the Settlement; (b) certifying the Settlement Class; (c) appointing Settlement Class counsel; (d) scheduling a Fairness Hearing and establishing all related deadlines; (e) directing that Notice be provided to the Class in accordance with the Notice Plan, and (f) ordering a stay of all proceedings in this and other class actions vis-à-vis Class 1 and AstraZeneca until the Court renders a final decision regarding the approval of this Settlement.

DATED:  May 21, 2007.                    By___**/s/ Steve W. Berman**_____
                                              Thomas M. Sobol (BBO#471770)
                                              Edward Notargiacomo (BBO#567636)
                                         Hagens Berman Sobol Shapiro LLP
                                         One Main Street, 4th Floor
                                         Cambridge, MA  02142
                                         Telephone: (617) 482-3700
                                         Facsimile: (617) 482-3003

                                         **LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

  I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on May 21, 2007, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF THE ASTRAZENECA CLASS 1 SETTLEMENT AND APPROVING THE FORM AND METHOD OF NOTICE TO THE CLASS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


        **/s/ Steve W. Berman**
        Steve W. Berman