# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## SETTLEMENT AGREEMENT AND RELEASE OF ASTRAZENECA

This Settlement Agreement and Release of AstraZeneca ("this Agreement" or this "Settlement") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Subject to the approval of the MDL Court, this Agreement is entered into between and among the Class 1 Plaintiffs and Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca");

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a multi-district litigation captioned, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, comprised of putative class actions that were transferred to and/or coordinated with or consolidated in MDL 1456 (the "MDL Class Actions");

WHEREAS, the complaints filed in the MDL Class Actions, including the consolidated complaints filed by the Class 1 Plaintiffs in MDL 1456 ("MDL Class Complaints"), allege, *inter alia*, that AstraZeneca (among others) has engaged in unlawful inflation and misrepresentation of the published Average Wholesale Prices ("AWPs") for Zoladex®, which is covered by Medicare Part B, and the unlawful use of AWPs in the marketing of Zoladex®;

WHEREAS, AstraZeneca has asserted a number of legal and factual defenses to the claims alleged in the MDL Class Actions and denies any liability to the Class 1 Plaintiffs;

172797

WHEREAS, the Class 1 Plaintiffs and AstraZeneca agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by AstraZeneca or of the truth of any of the claims or allegations alleged in the MDL Class Actions or as a waiver of any defenses thereto;

WHEREAS, Class 1 Plaintiffs' Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the MDL Class Actions, including the claims asserted in the complaints filed in the MDL Class Actions and the possible legal and factual defenses thereto, and the trial of claims involving Classes 2 and 3, that it would be in the best interests of the Class 1 Plaintiffs to enter into this Agreement in order to avoid the uncertainties of trial and to assure that the benefits reflected herein are obtained for the members of Class 1 herein defined; and, further, that counsel representing the Class 1 Plaintiffs consider the settlement set forth in this Agreement to be fair, reasonable and adequate and in the best interests of Class 1;

WHEREAS, Defendant AstraZeneca, through its counsel, and the Class 1 Plaintiffs, through their counsel, after vigorous, arms-length negotiations, have conditionally agreed herein to payment by AstraZeneca of up to Twenty-Four Million Dollars ($24,000,000) (the "Settlement Amount") to settle the claims of Class 1 on a nationwide basis;

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of AstraZeneca and the Class 1 Plaintiffs that the Class 1 claims be settled, compromised and dismissed on the merits and with prejudice, subject to the approval of the MDL Court, on the following terms and conditions:

1.    Class Definition.  Class 1 is comprised of all natural persons nationwide who made a co-payment based on AWP for Zoladex® under the Medicare Part B Program during the period from January 1, 1991 through December 31, 2004.  Excluded from Class 1 are those who

172797

made flat co-payments, who were reimbursed fully for any co-payments, or who have the right to be fully reimbursed, as well as AstraZeneca and its officers, directors, management, employees, subsidiaries, and affiliates.  This class is referred to herein as "Class 1" or the "Class."

2.     Definitions.  As used in this Agreement, the following terms shall have the indicated meanings:

(a)     "Class Counsel" means all attorneys and law firms that have appeared in the MDL Class Actions on behalf of Class Plaintiffs.

(b)     "Class 1 Member" means any natural person falling within the definition of Class 1 as defined in Paragraph 1 above.

(c)     "Class Period" means January 1, 1991 through December 31, 2004, inclusive.

(d)     "Class 1 Representatives" means Leroy Townsend, or in the event of Mr. Townsend's death, his spouse or a legal representative of Mr. Townsend's estate, and Joyce Howe, on behalf of the Estate of Robert Howe.

(e)     "Class Releasors" means each Class 1 Member, including a Class 1 Members' successors, heirs, executors, trustees, administrators, legal representatives and assigns.

(f)     "Claims Administrator" means the entity chosen pursuant to the procedure described in Paragraph 10(a) below.

(g)     "CMS" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services.

(h)     "Effective Date" is the date defined in Paragraph 11 below.

(i)     "AstraZeneca" means AstraZeneca Pharmaceuticals LP.

172797

(j)     "AstraZeneca Releasees" means AstraZeneca and its present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and its respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, and its predecessors, successors, heirs, executors, trustees, administrators and assigns as of the date of this Agreement.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with AstraZeneca.

(k)     "Lead Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, Wexler Toriseva Wallace LLP, Edelson & Associates LLC and The Haviland Law Firm, LLC.

(l)     "MDL Court" means the Honorable Patti B. Saris, or if she is unavailable, another judge of the United States District Court for the District of Massachusetts, presiding over *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(m)     "MDL Class Actions" means all putative class actions in which any AstraZeneca Releasees are named as defendants and which have been transferred to and/or coordinated with or consolidated in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(n)     "MDL Class Complaints" means all of the putative class action complaints filed in MDL Class Actions that were transferred to and/or coordinated with or consolidated in MDL 1456, including all of the Master Consolidated Class Action Complaints (through and including the Fourth Amended Master Consolidated Class Action Complaint) filed in the MDL Class Actions, including all counts of such complaints that were previously dismissed by the MDL Court (e.g. putative class RICO claims).

(o)     "MDL Mediator" means Eric Green of Resolutions, LLC of Boston, Massachusetts.

(p)     "Named Plaintiff" means all persons and entities that have been named plaintiffs in the Fourth Amended Master Consolidated Class Action Complaint filed with the MDL Court.

(q)     "Released Class Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Class Releasor who has not timely excluded himself or herself from Class 1, whether or not they object to the settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly or indirectly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to the marketing, sale, purchase, cost, reimbursement amount or price of Zoladex® during the Class Period.  "Released Class Claims" shall not include any claim against any person or entity that is not an AstraZeneca Releasee, any claim arising out of this Agreement, or any claim between any Class 1 Member and any AstraZeneca Releasee that is unrelated to the allegations of the MDL Complaints and/or the marketing, sale, purchase, cost, reimbursement amount or price of Zoladex®, and any claim relating to the efficacy or safety of Zoladex®.

(r)     "Released Claims" means any and all claims released by this Agreement.

(s)     "Settlement Amount" means the sum of Twenty Four Million Dollars ($24,000,000).

(t)      "Settlement Notice" means the Notice of Proposed Settlement of

Class Action, Motion for Attorneys' Fees and Settlement Hearing substantially in the form

annexed hereto as <u>Exhibit B-1</u> and the Summary Notice for publication annexed hereto as

<u>Exhibit B-2</u>, as the same may be modified in accordance with the Court's rulings with

respect to the motion for preliminary approval of this settlement.

3.      <u>Settlement Consideration</u>.

(a)      <u>Settlement Amount for Class 1 Members</u>.  Subject to the provisions

hereof, and in full, complete and final settlement of the claims of the Class 1 Members as

provided herein, AstraZeneca shall pay up to $24,000,000 in the aggregate to satisfy valid

claims submitted pursuant to this Agreement.

(b)      <u>Settlement Notice and Administration Costs</u>.  AstraZeneca shall pay

the full and complete costs of settlement notice and administration of this Settlement

separately from, and in addition to, the $24,000,000.  AstraZeneca shall have the right of

prior approval for any costs relating to settlement notice and administration.

(c)      <u>Class Representatives</u>.  Subject to Court approval, AstraZeneca shall

pay $5,000 each to the two Class Representatives (such payment to be made separately

from, and in addition to, the $24,000,000).  These payments shall be made to the Class

Representatives upon final approval by the MDL Court of this Class Settlement.

(d)      <u>Attorneys' Fees and Costs</u>.  Subject to the approval of the MDL

Court, AstraZeneca shall pay attorneys' fees and costs in the amount of $6,500,000 in fees

and $2,100,000 in costs (such payments to be made separately from, and in addition to, the

$24,000,000 and the payments to the Class Representatives set forth above).  These fees

and costs will be paid to Lead Counsel upon final approval by the MDL Court of this Class

Settlement, following notice to members of Class 1 and a hearing, as prescribed by Rule 23

of the Federal Rules of Civil Procedure, subject to repayment if so required by an appeal or later event (it is intended that this be a "Quick Pay" provision).  If repayment is required, the entire amount shall be repaid, with interest, within 90 days of the appeal or later event requiring repayment.  Each law firm designated as Lead Class Counsel shall have joint and several liability for the entire amount.

4.      <u>Distribution of the Settlement Amount</u>.

AstraZeneca will pay the authorized claims of Class Members as such claims are approved by the Claims Administrator, up to an aggregate total of $24,000,000 and subject to Paragraph 10(d).  If the total amount of authorized claims to be paid exceeds $24,000,000, payments to Class 1 Members will be reduced proportionately.

5.      <u>Distribution of Cy Pres</u>.

(a)      If $10,000,000 or less of the Settlement Amount remains after all authorized claims of Class Members are paid, AstraZeneca shall pay such remaining amount to mutually acceptable charitable organizations funding cancer research or patient care (the "Cy Pres Amount").  If the Parties are unable to agree on acceptable organizations, the MDL Mediator will mediate the issue, subject to the Court's final determination and approval.

(b)      If more than $10,000,000 of the Settlement Amount remains after all authorized claims of Class Members are paid, AstraZeneca shall only be required to pay the $10,000,000 Cy Pres Amount as provided in subsection (a) immediately above and no more.

6.      <u>Motion for Preliminary Approval</u>.  Concurrent with the submission of this Agreement for consideration by the MDL Court, Lead Class Counsel shall submit to the MDL Court a motion for preliminary approval of the settlement set forth in this Agreement, which

requests entry of the Preliminary Approval Order substantially in the form annexed hereto as <u>Exhibit A</u>, and which includes a provision that enjoins Class 1 Members from litigating Released Claims pending final approval of the settlement.

7.      <u>Settlement Fairness Hearing; Report of the MDL Mediator</u>.  In connection with the Settlement Fairness Hearing, the MDL Mediator shall provide to the Court his opinion regarding the arms-length nature of the settlement negotiations and process, the fairness of the settlement and the zealousness of class counsel in representing Class 1.

8.      <u>Entry of Final Judgment</u>.  If, following the Settlement Fairness Hearing scheduled by the MDL Court pursuant to the Preliminary Approval Order, the MDL Court approves this Agreement, then counsel for the parties shall request that the MDL Court enter an Order and Final Judgment substantially in the form annexed hereto as <u>Exhibit C</u>.

9.      <u>Notice to Class 1 Members</u>.

(a)      In the event the MDL Court preliminarily approves the Settlement set forth in this Agreement, Lead Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order, provide all those members of the Class 1 who can be identified by reasonable means, and who have not previously elected to opt-out of Class 1, with the best notice practicable under the circumstances, as ordered by the MDL Court, in substantially the form annexed hereto as <u>Exhibits B-1 and B-2</u> or as otherwise ordered by the MDL Court, which shall include publication on a web site established by Lead Class Counsel or the Claims Administrator. The Proposed Settlement Notice Plan is set forth in <u>Exhibit B-3</u>.

(b)      As part of the class notice program referenced above, Lead Class Counsel will seek, through the MDL Court if necessary, information from CMS concerning the identity, contact (including last known address) and payment information of individuals

who may be members of Class 1 as defined in Paragraph 1 above.  This information will be utilized to provide notice to such individuals during the class notice period and to assist in the class claims administration process.

(c)     All costs of notice to Class 1 shall be paid by AstraZeneca in addition to, and separate from, the Settlement Amount, subject to the right of prior approval referenced in Paragraph 3(b) above.

10.     <u>Class Claims Process</u>.

(a)     The Claims Administrator shall be chosen by mutual agreement of the parties within 14 days of the entry of an order granting preliminary approval of the Settlement.  Any disputes regarding the selection of the Claims Administrator shall be mediated by the MDL Mediator.

(b)     Class 1 Members will be required to submit to the Claims Administrator proof of a co-payment based on AWP for Zoladex® under the Medicare Part B Program.  Submission of one of the following items will satisfy this proof:  (1) a receipt, cancelled check, or credit card statement that shows a payment for Zoladex® (other than a flat co-payment); (2) a letter from a doctor saying that he or she prescribed Zoladex® and the class member paid part of the cost of Zoladex® (other than a flat co-payment) at least once; (3) a statement under penalty of perjury saying that he or she made a percentage co-payment for Zoladex® during the Class Period; or (4) any of the foregoing executed by a spouse of a deceased class member or a legal representative of a deceased class member's estate.  Each class member must specify on the form the time period during which they paid for Zoladex®.  Notwithstanding the above, a Medicare Part B beneficiary who, <u>after</u> receiving notice of this Settlement, makes a percentage co-payment for Zoladex® based on a bill received for an administration of Zoladex® during the Class Period may submit a

claim, but must submit a receipt, cancelled check or credit card statement, as well as proof that the payment was for an administration of Zoladex® during the Class Period, in order for the claim to be valid.

(c)      Class 1 Members will be paid according to the April 23, 2007 Hartman Analysis of Consumer Damages as set forth in Exhibit D.  Table 1, Row 6, of Exhibit D provides Dr. Hartman's calculation of the alleged monthly overcharge, including interest, for each year in the Class Period for Class 1 Members who paid the full 20% co-payment for Zoladex® under the Medicare Part B program:

| Year | Overcharge |
|------|------------|
| 1991 | $23.88 |
| 1992 | $22.92 |
| 1993 | $18.97 |
| 1994 | $19.41 |
| 1995 | $32.86 |
| 1996 | $37.89 |
| 1997 | $50.48 |
| 1998 | $67.43 |
| 1999 | $72.15 |
| 2000 | $67.94 |
| 2001 | $65.56 |
| 2002 | $62.81 |
| 2003 | $61.30 |
| 2004 | $59.73 |

172797

Table 2, Row 6, of Exhibit D provides the alleged monthly overcharge, including interest, for each year in the Class Period for Class 1 Members who had private third party supplemental insurance requiring a percentage co-payment and therefore paid only 20% of the 20% co-payment under the Medicare Part B program:

| Year | Overcharge |
|------|------------|
| 1991 | $4.78 |
| 1992 | $4.58 |
| 1993 | $3.79 |
| 1994 | $3.88 |
| 1995 | $6.57 |
| 1996 | $7.58 |
| 1997 | $10.10 |
| 1998 | $13.49 |
| 1999 | $14.43 |
| 2000 | $13.59 |
| 2001 | $13.11 |
| 2002 | $12.56 |
| 2003 | $12.26 |
| 2004 | $11.95 |

The amount that a Class 1 Member will be eligible to receive will be based on the number of months that he or she took and paid for Zoladex® and whether he or she was uninsured or had private third-party supplemental insurance during some or all of that time period. The total amount would then be doubled.  For example, an uninsured Class 1 Member who took Zoladex® for the entirety of 2002 and 2003 and paid the full 20% co-payment under

the Medicare Part B program for each administration of Zoladex® during that time period

would be eligible to receive $2976 calculated as follows:

| | | | |
|---|---|---|---|
| 2002 overcharge per month | $62.81 | = | $753 annually |
| 2003 overcharge per month | $61.30 | = | $735 annually |
| Total Recognized Claim | | = | $1488 |
| Total Claim Would be Doubled | | = | $2976 |

      (d)      All claims forms received by the Claims Administrator from members of Class 1 shall be available at reasonable times for inspection and copying by AstraZeneca's counsel prior to any payments being mailed to Class 1 members.  AstraZeneca shall have the right to dispute the validity of any claim that it believes in good faith does not meet the requirements set forth on the Claim Form, is not tendered by a Medicare Part B beneficiary or the spouse or legal representative of a Medicare Part B beneficiary, and/or represents an attempt to fraudulently obtain payment.  Any disputes regarding the validity of a claim shall, in the first instance, be decided by the Claims Administrator, with a right to seek review by the MDL Mediator and ultimately the MDL Court.  AstraZeneca will not contact any Class Member in connection with the audit process, and neither AstraZeneca nor Class Counsel will contact any Class 1 Member's provider in connection with the audit process.

      11.      <u>Effective Date</u>.  The settlement detailed in this Agreement shall be effective on the first date after all of the following events have occurred:

      (a)      entry of the Preliminary Approval Order substantially in the form annexed hereto as <u>Exhibit A</u>, or entry of a Preliminary Approval Order not substantially in the form of annexed hereto with respect to which neither party invokes any rights of termination pursuant to Paragraph 12 below;

172797

(b)      final approval by the MDL Court of this Class Settlement, following notice to members of Class 1 and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(c)      entry by the MDL Court of an Order and Final Judgment, substantially in the form set forth in Exhibit C annexed hereto, and the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the MDL Court enters an order and final judgment in form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Class Settlement as permitted by Paragraph 12, the date that such Alternative Judgment becomes final and no longer subject to appeal or review.

12.     Termination.  AstraZeneca's Counsel and Lead Class Counsel shall each have the right to terminate the Settlement and this Agreement by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of:  (a) the MDL Court declining to enter the Preliminary Approval Order substantially in the form annexed hereto as Exhibit A; (b) a decision by the MDL Court declining to approve this Agreement or any material part of it; (c) the MDL Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as Exhibit C; (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (e) the date upon which an Alternative Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.

13.     <u>All Class Claims Satisfied by Settlement</u>.  Each Class 1 Member shall look solely to the Settlement Amount for settlement and satisfaction, as provided herein, of all Released Class Claims.

14.     <u>Class Releases</u>.  Upon the Effective Date of this Agreement in accordance with Paragraph 11 above, the AstraZeneca Releasees (as defined in Paragraph 2(j) above) shall be released and forever discharged by the Class Releasors from all Released Class Claims, as defined in Paragraph 2(q) above.  All Class Releasors hereby covenant and agree that they shall not hereafter seek to establish liability against any AstraZeneca Releasee based, in whole or in part, on any of the Released Class Claims.  In addition, each Class Releasor hereby expressly waives and releases, upon the Settlement Agreement becoming effective, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  <u>General Release; extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Class Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 14, but each Class Releasor hereby expressly waives and fully, finally and forever settles and releases, upon this Agreement becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Class Claims with respect to the subject matter of this Paragraph 14 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Releasee also hereby expressly waives and fully, finally and forever settles and releases any and all Released Class Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and

172797

Professions Code relating to the marketing, sale, purchase, cost, reimbursement amount or price of Zoladex® during the Class Period, which claims are expressly incorporated into this Paragraph 14.

15.     Reservation of Claims.  Notwithstanding Paragraph 14 above, "Released Class Claims" shall not include any claim against any person or entity that is not an AstraZeneca Releasee, any claim arising out of this Agreement, any claim between any Class 1 Member or and any AstraZeneca Releasee that is unrelated to the allegations of the MDL Complaints and/or the marketing, sale, purchase, cost, reimbursement amount or price of Zoladex®, and any claim relating to the efficacy or safety of Zoladex®.

16.     Preservation of Rights.  The parties hereto agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party (other than those that have been compromised herein), and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by AstraZeneca or of the truth of any of the claims or allegations contained in any complaint or any other pleading, whether in the MDL Class Actions or in any other action or proceeding.  The parties expressly reserve all their rights if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement.

17.     Effect of Termination.  If this Agreement is terminated pursuant to Paragraph 12 hereto, or the Effective Date is prevented from occurring for any reason, then (a) this Agreement shall be of no force or effect, except for payment of notice and administrative fees and costs or refunds as referenced herein; (b) any release by Class Members or Named Class Representatives pursuant hereto shall be of no force or effect; and (c) the parties shall request the MDL Court to

set the Class 1 claims for trial.  The parties expressly reserve all of their rights if this Agreement is terminated or does not become final and effective.

18.    <u>No Admission</u>.  Nothing in this Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by any AstraZeneca Releasee including, without limitation, that any AstraZeneca Releasee has engaged in any conduct or practice that violates any unfair and deceptive trade practices statute or other law.  Neither this Agreement, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by any AstraZeneca Releasee as to the validity of any claim that the Named Plaintiffs or Class 1 Members have or could have asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by the AstraZeneca Releasees.  Neither this Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith nor the fact of this Agreement, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in connection with (a) settlement discussions in other matters; (b) the parties' application for approval or enforcement of this Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the Class; and (c) any other disputes arising from this Agreement.

19.    <u>Stay and Resumption of Proceedings</u>.  The parties agree, subject to the preliminary approval of the MDL Court of the Settlement, that all Class 1 proceedings in the MDL Class Actions as relate to any AstraZeneca Releasee, other than proceedings relating to the Settlement contemplated herein, shall be stayed.  In the event that this Agreement is not approved by the MDL Court or the settlement is terminated or the Effective Date is prevented

from occurring, all such stayed proceedings in the MDL Class Actions as relate to any

AstraZeneca Releasee will resume in a reasonable manner to be approved by the MDL Court.

20.     <u>Dismissal of Claims</u>.  The parties agree that upon the Effective Date of this

Agreement in accordance with Paragraph 11 above, all Released Class Claims shall be released

pursuant to the terms of this Agreement and shall be dismissed with prejudice pursuant to the

Final Order of Approval.

21.     <u>Consent to Jurisdiction</u>.  AstraZeneca and the Class Plaintiffs hereby irrevocably

submit to the exclusive jurisdiction of the MDL Court only for the specific purpose of any suit,

action, proceeding or dispute arising out of or relating to this Agreement or the applicability of

this Agreement.

22.     <u>Resolution of Disputes; Retention of Jurisdiction</u>.  Any disputes between or

among AstraZeneca and any Class 1 Members concerning matters contained in this Agreement

shall, if they cannot be resolved by negotiation and agreement, be submitted to the MDL

Mediator, and then, if they cannot be resolved by the MDL Mediator, to the MDL Court.  The

MDL Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

23.     <u>Enforcement of Agreement</u>.  Notwithstanding Paragraph 18 above, this

Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding

that has been or may be instituted, prosecuted or attempted with respect to any of the Released

Class Claims and may be filed, offered and received into evidence and otherwise used for such

defense.

24.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit

of, the successors and assigns of the parties hereto.

25.     <u>Authorization to Enter Agreement</u>.  The undersigned representatives of

AstraZeneca represent that they are fully authorized to enter into and to execute this Agreement

172797

on behalf of AstraZeneca.  Lead Class Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the Class Representatives and Class 1 Members and to enter into, and to execute, this Agreement on behalf of the Class Representatives and Class 1 Members, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

26.     No Party Is the Drafter.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

27.     Choice of Law.  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of Massachusetts without regard to its choice of law or conflict of laws principles.

28.     Amendment or Waiver.  This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

29.     Execution in Counterparts.  This Agreement may be executed in counterparts. Facsimile or PDF signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the MDL Court.

30.     Integrated Agreement.  This Agreement, including the exhibits hereto, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto.

172797

31.     Construction.  This Agreement shall be construed and interpreted to effectuate the

intent of the parties, which is to provide, through this Agreement, for a complete resolution of

the Released Claims with respect to the AstraZeneca Releasees.


IN WITNESS WHEREOF, the parties hereto, through their fully authorized

representatives, have executed this Agreement as of the date first herein above written.


DATED:  May 21, 2007                    By _Steve W. Berman_
                                            Thomas M. Sobol (BBO#471770)
                                            Edward Notargiacomo (BBO#567636)
                                            Hagens Berman Sobol Shapiro LLP
                                            One Main Street, 4th Floor
                                            Cambridge, MA  02142
                                            Telephone: (617) 482-3700
                                            Facsimile: (617) 482-3003

                                        **LIAISON COUNSEL**

                                        Steve W. Berman
                                        Sean R. Matt
                                        Robert F. Lopez
                                        Hagens Berman Sobol Shapiro LLP
                                        1301 Fifth Avenue, Suite 2900
                                        Seattle, WA  98101
                                        Telephone: (206) 623-7292
                                        Facsimile: (206) 623-0594

                                        Elizabeth A. Fegan
                                        Hagens Berman Sobol Shapiro LLP
                                        60 W. Randolph Street, Suite 200
                                        Chicago, IL  60601
                                        Telephone: (312) 762-9235
                                        Facsimile: (312) 762-9286

172797

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

**COUNSEL FOR DEFENDANT
ASTRAZENECA
PHARMACEUTICALS LP**

By _____

D. Scott Wise
Michael S. Flynn
Kimberley D. Harris
DAVIS POLK & WARDELL
450 Lexington Avenue
New York, NY  10017

Nicholas C. Theodorou (BBO #496730)
Michael B. Keating (BBO #263360)
Michael P. Boudett (BBO #558757)
Katherine B. Schmeckpeper (BBO #663200)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  022110

172797

- 21 -