# Exhibit 1, Part 1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


In Re:                        )
PHARMACEUTICAL INDUSTRY        ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE        ) MDL No. 1456
LITIGATION                     ) Pages 1 - 49


MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 27, 2007, 10:10 a.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

1    A P P E A R A N C E S:

2    For the Plaintiffs:

3        RENEE' BROOKER, ESQ. and GEJAA T. GOBENA, ESQ., United
     States Department of Justice, Civil Division, Commercial
4    Litigation, Fraud, 601 D Street, N.W., Washington, D.C.,
     20004.

5

6        JAMES J. BREEN, ESQ., 3562 Old Milton Parkway,
     Alpharetta, Georgia, 30005, for the Relator, Ven-A-Care of
     the Florida Keys.

7

8    For the Defendants:

9        JAMES R. DALY, ESQ., Jones Day,
     77 West Wacker, Chicago, Illinois, 60601-1692, for Abbott
10   Laboratories.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE CLERK:  In re:  Pharmaceutical Industry Average

3    Wholesale Price Litigation, Civil Action 01-12257, will now

4    be heard before this Court.  Will counsel please identify

5    themselves for the record.

6              MS. BROOKER:  Good morning, your Honor.  Renee'

7    Brooker on behalf of the United States.  I'm from the

8    Commercial Litigation Branch in Washington, D.C. at Main

9    Justice.

10             MR. BREEN:  Jim Breen on behalf of the Relator,

11   Ven-A-Care of the Florida Keys.

12             MR. GOBENA:  Gejaa Gobena on behalf of the United

13   States.

14             MR. DALY:  Good morning, your Honor.  Jim Daly on

15   behalf of Abbott Laboratories.

16             THE COURT:  Now, this is just against Abbott?

17             MR. DALY:  Yes, your Honor.

18             MS. BROOKER:  This particular case, yes, your

19   Honor.

20             THE COURT:  That sends chills down my spine.  So

21   are there others?  I know I've got a couple of other

22   intervenor cases.

23             MS. BROOKER:  That's right, your Honor.

24             THE COURT:  And what do those involve?

25             MS. BROOKER:  They involve the same issues,

Page 4

1   obviously different pharmaceutical manufacturers, different

2   drugs, but those are Dey and Roxane, and I do not believe

3   that Roxane is before the Court.  The United States did file

4   an unopposed motion -- I believe it may have been Friday --

5   to transfer a third case before your Honor.

6           THE COURT:  Now, does it make some sense -- how old

7   are those other two cases?

8           MS. BROOKER:  They're about the same age, your

9   Honor, as the Abbott case.

10           THE COURT:  Does it make some sense to put you all

11   into some sort of a lockstep?

12           MS. BROOKER:  It does make sense to us, your Honor,

13   yes.

14           MR. DALY:  From our perspective, it does not,

15   Judge, for the following main reason:  I mean, we've been at

16   this since the spring.  We have a discovery cutoff of the end

17   of this year to 12/31/07.  My understanding, although I'm not

18   directly privy to the conversations that the United States

19   has had with the other defendants, but I believe they are

20   agreeing to much longer time periods to deal with their case.

21           THE COURT:  So you think it's -- so bring me up

22   to -- this is why I brought you all in here.

23           MR. DALY:  Right.

24           THE COURT:  This is somewhat, I have to say I'm

25   sorry, a court mistake.  This somehow ended up in purgatory

1   between the United States Magistrate Judge and me, with me

2   thinking she was going to handle it and she thinking that I

3   was going to handle it.  And the reality is that we both

4   talked, and I brought it back up here because I understood it

5   was part of a bigger picture, so --

6           MS. BROOKER:  It is, your Honor.

7           THE COURT:  So I probably should hear what's been

8   happening so far, you know, like, what needs to happen to

9   bring this case to the point where --

10          MS. BROOKER:  Yes, your Honor, and I think I can

11  give you a brief overview of where the parties are at.

12          The United States and Abbott and relator Ven-A-Care

13  have been proceeding with discovery in this case.  A couple

14  depositions have been taken.  There are deposition notices

15  outstanding, document requests, interrogatories.  Requests

16  for admissions have been served.  At the time that Dey joined

17  a few months ago, we have been attempting to, and Dey has

18  been cooperative, in trying to coordinate at least with

19  respect to the deposition discovery that's being taken

20  against the United States.

21          THE COURT:  Let me stop you right there.  When you

22  say Dey joined, it's a separate action against Dey?

23          MS. BROOKER:  Yes, it is.

24          THE COURT:  So you just mean sort of informal

25  coordination?

1          MS. BROOKER:  Yes, we have been coordinating.  Dey

2     has been coordinating.  We have been notifying Dey about

3     depositions against government witnesses.  They have

4     appeared, I believe, at the first two depositions.  We also,

5     the United States, whenever we serve documents pursuant to

6     document requests upon Abbott, we also send a copy to Dey,

7     and so there has been some coordination going on.

8          Now, I will tell the Court that the parties, Abbott

9     and the United States and relator, came here this morning

10    with the intent of informing the Court in the first instance

11    that we believe we have substantially, although I want to

12    carve out a big significant issue, but we have substantially

13    agreed upon a case management order.  We've been working on

14    this for the last several months.  We were working on it all

15    the way up until the time, you know, ten minutes outside of

16    the courthouse.  I think that we, again, carving out one

17    issue that we would like to raise, we can present the Court

18    with a proposed CMO that does just apply to this case.

19          THE COURT:  Okay.

20          MR. DALY:  That's correct, your Honor.

21          THE COURT:  So what's the big remaining issue?

22          MS. BROOKER:  Okay, this is the big remaining

23    issue, your Honor.

24          THE COURT:  Of course, without knowing the rest of

25    what you agreed on, it might be --

1        MR. DALY:  We'll walk through that with your Honor

2   and make sure your Honor agrees.

3        MS. BROOKER:  Yes, basically just to summarize, we

4   have largely agreed to parameters for discovery; you know,

5   discovery limitations, numerical limitations largely.  We've

6   agreed to deposition protocols, document production protocols

7   primarily.

8        The significant issue that we would like to bring

9   to the Court's attention today is an issue that has prevented

10  the United States from moving forward with discovery.  Abbott

11  has served initially in this case a set of initial

12  disclosures.  The United States has been attempting for

13  months now, since we appeared before your Honor on

14  August 26 when your Honor said, "I'm going to open up

15  everything that's happened in the MDL proceeding," we served

16  document requests, and we've asked repeatedly Abbott to

17  provide to us a set of materials that it has produced in

18  other AWP cases, including in this case pursuant to CMO 5 and

19  pursuant to CMO 7.  We have a small subset of those

20  materials.  Abbott has obstructed us from --

21       THE COURT:  Well, without using the verbs, why

22  don't you produce them?

23       MR. DALY:  Your Honor, the reason for it is that

24  the United States has only sued us for four drugs.  This

25  court has -- they talk about CMO 5 and 10, but they never

1   talk about CMO 9 which the Court entered, which very clearly

2   states in Paragraph 3 that any governmental plaintiff that

3   comes into these cases gets what has been produced in other

4   cases to the extent they relate to the drugs that the

5   governmental entity has sued upon.  Our problem with this is

6   that if you take Texas, for example, the state court action

7   in Texas, they've sued Abbott for all kinds of drugs, branded

8   drugs.  The government suit is only four generics.  Texas has

9   sued for hundreds of drugs.

10          THE COURT:  Well, I suppose you both have a good

11  point, but what about what I would call crosscutting

12  documents about, you know, like mode of operation and

13  marketing techniques or something?

14          MR. DALY:  Right, and your order provides for that,

15  Judge.  I didn't mean that -- I wasn't done, but it talks

16  about drugs that have been sued on or otherwise relevant to

17  the complaint, and we have not withheld the kind of documents

18  that the Court just described.

19          MS. BROOKER:  We take great issue with that, your

20  Honor.  If I may --

21          THE COURT:  But you're not entitled to every drug

22  if you haven't sued on it.

23          MS. BROOKER:  Well, your Honor, two points I would

24  like to make.  First, I'd like to address that.  I'd also

25  like to say that Mr. Breen, who is the relator in a Texas

1   state action, would like to address the Court on this issue

2   because he has information that he needs to provide the Court

3   on this.  But we do believe, your Honor, we have two problems

4   with this.  Number one, the MDL private plaintiffs in this

5   case have a set of documents that we know are relevant in

6   this litigation.  All Abbott has to do is burn a copy of the

7   CD-ROMs and provide it to us.

8           THE COURT:  Well, like what?  What do you know

9   you --

10          MS. BROOKER:  Well, I would allow Mr. Breen to

11   address that because he is also in the Texas case.  And in

12   the Texas case, the relator and the State of Texas had to

13   move to compel Abbott to produce documents on numerous

14   occasions.  Abbott attempted to vacate the trial court's

15   order by seeking several writs of mandamus that went all the

16   way up to the Supreme Court of Texas on two occasions.

17   That's how much --

18          THE COURT:  What are the documents?  In other

19   words, let me put it this way.  I generally believe the

20   following:  You're not entitled to documents on any single

21   drug if you haven't charged it.  You are entitled to do

22   discovery beyond the four drugs to the extent it shows that

23   there's some practice or pattern of conduct.

24          MS. BROOKER:  That's right.

25          THE COURT:  Now, where it falls in between, I'm not

1   sure how to do that.  Perhaps one thing would be --

2          Yes?  You're in the other case?

3          MR. BREEN:  Yes, your Honor, and that's why I think

4   it might be helpful if I can just go over a couple of points.

5          THE COURT:  All right.

6          MR. BREEN:  Mr. Daly is one of lead counsels for

7   Abbott in the Texas litigation.  We've been litigating it --

8          THE COURT:  In state court, is that it?

9          MR. BREEN:  State court, Judge.  We've been

10  litigating it for three years now?

11         MR. DALY:  It seems.

12         MR. BREEN:  It seems longer?  It seems longer, and

13  it is for more drugs.  But the documents -- and I'm kind of

14  in a unique position because I see both sides, and I've

15  got --

16         THE COURT:  The documents do what?

17         MR. BREEN:  Pardon me, your Honor?

18         THE COURT:  What do the documents do?  What do they

19  say?

20         MR. BREEN:  A number of things.  There's about

21  three times more documents that have been produced in the

22  Texas case than have been produced here.

23         THE COURT:  Sure, because there are more drugs, but

24  what are the crosscutting issues?

25         MR. BREEN:  But that's not why.

1           THE COURT:  Why?

2           MR. BREEN:  Number one, the crosscutting issues

3    are -- and there's, like, categories, if I can just break

4    them down.  One is, Abbott has taken a position regarding

5    temporal scope in this case.  It tried to take a similar

6    position in Texas, lost at the trial level, lost at the

7    appellate level, lost at the Supreme Court level.  And so

8    we've got a broader temporal scope that covers the drugs at

9    issue in this case.  So that's number one.  And there's lots

10   of documents, and when I say "lots" --

11          THE COURT:  So you're saying that it relates to

12   these drugs?

13          MR. BREEN:  These drugs, and I've already got the

14   documents, so there's no burden whatsoever.

15          THE COURT:  Have you conferred with him on those?

16          MR. BREEN:  Your Honor, we have, and we've made

17   some progress on temporal scope but not -- but it's still the

18   same issue.  What Abbott says is --

19          THE COURT:  All right, so temporal scope.  What's

20   the next one?

21          MR. BREEN:  The next issue, your Honor, is, there's

22   just flat-out held-back documents.  And I'm not going to

23   suggest it's by intent.  We're talking about millions of

24   documents here.

25          THE COURT:  All right, and what's --

460ee1f0-cf84-45cd-99ad-fa6fb0ad7437

Page 12

1      MR. DALY:  Not that they have been held back but

2   millions of documents.

3      MR. BREEN:  Right.  I'm saying -- I'm not saying --

4      THE COURT:  So what's the third one?  Just held

5   back.  And they may relate to these drugs?

6      MR. BREEN:  These drugs that we've used as recently

7   as two weeks ago in a 30(b)(6) deposition in Texas to make

8   critical points.

9      THE COURT:  And what's the third one?

10      MR. BREEN:  The third issue, your Honor, is other

11   drugs but either the same practice, or it demonstrates

12   Abbott's overall business practice in how it reports its

13   prices.  And so Texas has sued on more drugs, but to the

14   extent that Abbott's --

15      THE COURT:  I tell you what, why don't we do this.

16   This is a unique situation.

17      MR. BREEN:  And I've already got the documents.

18      THE COURT:  Why don't you take fifty, a hundred

19   representative documents from each of those categories.  You

20   gave me three:  A, temporal scope, B, just plain old didn't

21   produce them, and, C, sort of they show business practice

22   during a relevant time period.  You confer with him, show

23   him, because you luckily have two hats, so I don't have to

24   operate off of some blinders.  You take those.  You show it

25   to Mr. Daly.  If he's persuaded, then you'll produce.

Page 13

1    Otherwise you're going to submit them in camera to me or

2    Magistrate -- is Judge Bowler involved in this case?

3            MR. DALY:  Yes.

4            THE COURT:  And if you win on the fifty documents

5    apiece you choose, I'm just going to say "Produce the CD."

6    So, in other words, if you're not being reasonable about

7    this, you're just going to lose.  I'm not going to look at

8    millions of documents.

9            MR. BREEN:  And, your Honor, may I just add one

10   request?

11           THE COURT:  Yes.

12           MR. BREEN:  Because understand that these documents

13   are subject to the Texas protective order.  I can see them, I

14   can use them, but I cannot show them to my co- --

15           THE COURT:  I understand you can.

16           MR. BREEN:  But hold on, your Honor.  Mr. Daly has

17   got to consent to my showing them to your Honor in camera,

18   and I just need their consent.

19           MR. DALY:  I consent, your Honor.

20           MR. BREEN:  And I've asked that before and have not

21   gotten an answer yet.  That's the first time I got that

22   answer.

23           THE COURT:  And it may be, just out of respect to

24   the Texas court, you may need to sort of file some sort of

25   a --

1    MR. BREEN:  Not without his consent, Judge.  And

2  that's the critical point.  All he has to do is say

3  "I consent" and --

4    THE COURT:  So he's consented.  So what you need to

5  do is just -- I can't rule off the cuff on this.  That's

6  going to be impossible.  What you need to do is, you have

7  three categories you've very neatly, succinctly set out.  You

8  show him representative documents from -- you've seen them --

9  from each of those categories by yourself as intervenor.  You

10  try and confer and see what you can work out.  If you can't,

11  come up with a timetable, briefing timetable, motion to

12  compel, response.  You probably need to file it under seal,

13  right?

14    MR. DALY:  I think that's probably appropriate,

15  Judge.

16    THE COURT:  And I'll either refer it to

17  Judge Bowler or take it myself, likely refer to

18  Judge Bowler.  And because neither Judge Bowler nor I with

19  all these cases have time to go through a million documents

20  apiece, I'll look at the representative ones; and if you win

21  most of them, I'll just say "Turn over the CD."  If you only

22  win a small fraction and I think you're overreaching, I'm

23  just going to say "Denied."  So it's in everybody's interest

24  to try and work this out.  Take your best documents.

25    MR. BREEN:  But, your Honor, we will do that

1   exactly as you say, but I just want to emphasize, the whole

2   point here is to streamline discovery.  We've got a

3   December 7 deadline.  We have been involved in years of --

4   we've already fought this battle, and it's done.  This is an

5   MDL.

6           THE COURT:  I understand, but neither can you use a

7   lawsuit as a fishing expedition for ten more drugs that

8   you're interested in.  So one possibility would be an

9   agreement that you're not going to sue for the other drugs,

10  and I'll order you to turn over all the CDs right now.  But

11  you can't use discovery as a fishing expedition.  That's the

12  big bottom line.  On the other hand, you can't barnstorm and

13  just say it's just the four drugs, if in fact they show some

14  overarching business principle, and I -- because they get to

15  prove their case as to what management was thinking and

16  doing, you know, prior bad acts kind of evidence.

17          MR. BREEN:  Your Honor, can I respectfully address

18  the fishing expedition issue and we can't prove our case

19  through fishing for the drugs, just very briefly?  I just

20  want to emphasize that this is an intervening case by the

21  United States.  And we're not fishing.  I've got the boat.

22  The boat's got the fish in it.  I just want to bring it to

23  the dock.

24          THE COURT:  With those four drugs, but what you

25  can't use the discovery for is to get another fifteen drugs.

1       MR. BREEN:  Your Honor, a relator can't, and I

2    wouldn't.

3       THE COURT:  But neither can they.  Unless they want

4    to do it under the auspices of administrative subpoenas,

5    neither can they.  They've got to be able to have a

6    good-faith basis for saying they were defrauded or there was

7    false claims with respect to the other fifteen drugs.  If

8    they do, amend your complaint.  And you might already have

9    that.  Do you?  I don't know.

10       MS. BROOKER:  Your Honor, can I just briefly

11   address your Honor's two points about the fishing

12   expedition?  And, also, I don't want to leave the Court with

13   the impression that this is just unique to Texas.  So the

14   solution that your Honor has proposed is not going to solve

15   the issue, and the problem is --

16       THE COURT:  I can't rule off the bench like this,

17   so that's unrealistic.  You haven't filed a motion to

18   compel.  He hasn't filed an opposition.  It's a huge issue.

19   I'm trying to cut through it right now thinking out loud.  So

20   if you feel really strongly, you file a motion to compel, but

21   I can't resolve it.  Right now I'll -- do you have a typed-up

22   scheduling order that I can look at?

23       MS. BROOKER:  We don't, your Honor, because we just

24   agreed to some things in the hallway.

25       THE COURT:  Frankly, if you agree, I'm

1    overwhelmingly likely to agree unless it essentially taxes my

2    resources too much, given the other cases that I'm trying to

3    handle here.

4            MS. BROOKER:  But just a couple issues, your

5    Honor.  With respect to -- we are just talking about the

6    state of Texas.  In your Honor's CMOs 5 and 7, you made

7    available to the plaintiffs, the MDL plaintiffs, all

8    materials without respect to the subject drugs, all materials

9    that any defendant provided in any investigation, any prior

10   state court proceeding.  The United States for some reason is

11   getting less discovery than a private commercial plaintiff.

12   We don't understand why that is.

13           THE COURT:  Maybe it wasn't opposed.  I don't

14   remember.  They tended to come in by agreement as well.  I

15   don't remember if this was opposed.  I don't remember what

16   the debate was.  I don't remember what the drugs were.  You

17   cite my CMOs as if I've got them memorized.  Between the

18   Neurontin case and this case, I have no memory, no present

19   memory of what the debate was, so that's why I can't rule off

20   the bat.  If you want to move to compel, move to compel.

21   This is going to be a shortcut in this case.

22           MS. BROOKER:  I do understand, your Honor.  And let

23   say, first of all, we have, in addition to raising this issue

24   in the CMO, since it wasn't being addressed, we also filed a

25   motion to compel.  That motion to compel is still pending.

Page 18

1   It's been fully briefed.

2   　　　　THE COURT:  Oh, well, I didn't know that.

3   　　　　MS. BROOKER:  Yes.

4   　　　　MR. DALY:  It's before Judge Magistrate Bowler,

5   your Honor.

6   　　　　THE COURT:  So why don't you just let her decide?

7   Why am I even ruling on it?

8   　　　　MR. BREEN:  Your Honor, without the suggestion you

9   made, I can't file the documents, and this is an important

10  point.  Let me just add -- can I ask one question to make

11  sure I -- can I serve the government with this motion and

12  including the sealed documents?

13  　　　　MR. DALY:  You know, it's hard for me to say in

14  terms of whatever it is that you're doing, Mr. Breen.  I

15  mean, our problem is this, Judge:  I mean, there are temporal

16  problems.  The government is only suing us up until 2001.

17  They cut off their complaint thereafter.  Mr. Breen in Texas

18  is suing us up to the present day.  Every hour that goes by

19  is part of Mr. Breen's suit there.

20  　　　　THE COURT:  Is this based on AWP?

21  　　　　MR. BREEN:  Yes, your Honor, the same case.

22  　　　　THE COURT:  Let me just say, in one of my many

23  other suits, I cut things off at 2003 because at that point

24  the Medicare Modernization Act came through, so that's where

25  I cut it off.  I don't know where the -- that strikes me as a

1   reasonable cutoff, at least for the time being.  That's when

2   the ASP came into play and the whole world knew about

3   inflated AWPs, or at least anyone who was part of this world

4   knew probably by 2001, but certainly by the time Congress

5   passed the statute, right, everybody knew?  So that would be

6   one compromise date, a couple of years after the ending of

7   your class.  I mean, some of this should just be worked out.

8           MS. BROOKER:  Judge, we have been trying to work

9   this out for three months, and let me just explain.  Here's

10  the problem:  The government, we are just standing still.  We

11  are prevented from moving further.  Here's what we cannot do.

12          THE COURT:  What do you want me to do now?  I

13  haven't read these motions to compel?  I walked in here

14  thinking I was just going to set deadlines.  You may be right

15  or wrong.  I'm trying to cut through this, okay?

16          MS. BROOKER:  Yes, your Honor.  We're just asking

17  for, frankly, what all the CMOs have said, even your most

18  recent --

19          THE COURT:  I can't rule off the bench.  I haven't

20  even read my CMOs.  I don't remember what the debate was.  I

21  don't know.  So I'm happy to rule.  I can't do it right this

22  second, that's all.  I think this compromise will get you

23  through a lot.  And so I am suggesting that what -- you may

24  win.  You may win.  I haven't read anything.  I don't know

25  about you; I don't know how you rule off the bench when you

Page 20

1   haven't read anything.  I don't remember the CMOs.  I don't

2   know what the issues are.  I haven't read your full-blown

3   recent complaint.  I don't know the case.  This is my fault

4   that I thought the CMO had been entered a millennia ago.

5   I'll enter your agreed-upon CMO.  Then I promise to get to

6   your issues as soon as I read the briefs.  I just don't know.

7           What I do know is, I can cut through a fair amount

8   of this if I'm going to have you show to the other side the

9   documents that you -- I'm sure you're a fine attorney, and I

10  don't know whether at this point we need to get agreement to

11  show it to the government or not.  And if in fact you can't

12  resolve it based on that, then what I'm going to do is, I

13  will either -- I will forward all the documents over to

14  Judge Bowler, and hopefully she'll rule on it.  Does she

15  know -- when was it fully joined, the motion to compel?

16          MS. BROOKER:  The last time we had appeared before

17  Judge Bowler it had already been fully briefed.  Do you

18  recall --

19          MR. DALY:  It was in January.

20          THE COURT:  She's away now, I think.

21          MS. BROOKER:  Yes, that's partly the reason, I

22  believe, for the delay.

23          THE COURT:  She's been away for a couple of weeks,

24  so --

25          MS. BROOKER:  Yes, but in the meantime, just

1   providing the status, we just wanted the Court to know that

2   the discovery clock is ticking, and we can't speak with

3   plaintiff's counsel in this case about this case.  We can't

4   speak with our own co-plaintiff in this case about any

5   documents or any discovery in the case.  Abbott has told us

6   that when we cross-notice depositions in this MDL proceeding

7   or in other cases, they're probably going to kick us out

8   whenever they deem something irrelevant.

9           MR. DALY:  I haven't said that, your Honor.

10          MR. BREEN:  Counsel, your cocounsel has said that

11  on a couple of occasions.

12          MS. BROOKER:  Repeatedly.

13          THE COURT:  Let me say this, that you're precluded

14  from doing that.  Okay, so we're going to go through this.

15  We're not going to stop depositions.  We're going to keep

16  this thing going.  Nothing is so sacrosanct that --

17          MR. DALY:  Judge, we haven't thrown anybody out.

18          THE COURT:  Everybody can stay in.

19          MS. BROOKER:  We don't have the documents is the

20  problem.

21          THE COURT:  All right, you don't have the

22  documents.  We need to proceed with discovery.  You need to

23  put together all the documents that you think -- do you have

24  some team of paralegals or someone --

25          MR. BREEN:  Your Honor, we put so much money into

1   this.  I've got two huge databases of the federal documents

2   that they produced, the Texas documents.  I've cross-walked

3   them.  If I can show you that chart, you'll see that they're

4   providing -- you know, but my point is, my question is,

5   because this is not just Texas:  Do you want me to include --

6   for example, you've got the state of Pennsylvania, and

7   they've got documents.  Can I include some of their documents

8   in this too so you'll see the whole picture?  Because there's

9   a lot of folks doing discovery --

10          THE COURT:  I don't know enough is the thing.  You

11  can include what you think you need to include.  I am telling

12  you I am working -- I have thousands of documents right now

13  that I'm reviewing based on the bench trial that I've done.

14  I have the Neurontin case.  I have twelve state Attorney

15  General cases.  I have the second stage of the AWP case.

16  I've got these.  I know the issues, so in some sense it makes

17  sense, but I can't sit and go through thousands of

18  documents.  That's what I can't do.

19          MR. BREEN:  I know, Judge.  That's what we're

20  trying to prevent, and that's the point.  That is the point.

21  We're trying to prevent that from ever happening because

22  these plaintiffs have done all this discovery.  It's there.

23  Rather than be moving to compel every week to get these

24  documents --

25          THE COURT:  I tell you what, you two confer.

460ee1f0-cf84-45cd-99ad-fa6fb0ad7437

Page 23

1       MR. BREEN:  We will.

2       THE COURT:  And give him a hundred of your best

3   documents from all the categories.  And then if you can't

4   agree on what should be produced, either I or Judge Bowler

5   will go through it as soon as possible and jump-start this.

6   I will simply say this:  If the issue is temporal, produce

7   them.  I don't know what the big issue is.  If the issue is

8   it's the drugs in issue in this, produce them.  The problem

9   for me is, if it's unique to some individual drug that's

10  another drug -- and how many other drugs involved in the

11  other litigation?

12      MR. DALY:  Over a hundred, Judge.

13      MR. BREEN:  Well, there's multiple indices, but,

14  Judge --

15      THE COURT:  So you need to be reasonable.  You need

16  to do the crosscutting documents, and maybe you can come up

17  with a thousand that you think are crosscutting as opposed to

18  every -- I've seen these documents on Zoladex and -- you go

19  thousands and thousands of pages that would not have

20  relevance to your issues.

21      MS. BROOKER:  We can't do that, your Honor, because

22  we don't have access to the documents, so we don't know

23  what's relevant.

24      THE COURT:  I know.  I'm simply saying there's

25  something called overly burdensome and overly broad.  Overly

1   burdensome does not apply because it's already on a CD.

2   Overly broad might.  So I think what needs to happen is any

3   sales and marketing documents that relate to other drugs in

4   the time period which basically talk about marketing the

5   spread -- is that your big issue right now?

6          MR. BREEN:  That's it.

7          THE COURT:  Okay.  I've seen these documents in my

8   other litigation.  There are documents that are put out by

9   sales teams:  "This is how you put together the spread.  This

10  is how you put together --"  That should come out, but not

11  every internal document about every drug.  I mean, that's

12  overly broad.

13         Now, I've seen these kinds of documents, not from

14  Abbott, in fairness, from Glaxo, Bristol, Johnson & Johnson,

15  AstraZeneca, and Schering-Plough.  I've seen the differences

16  in the kinds of documents, and there are crosscutting, you

17  know, message-to-sales-team kinds of documents, which in

18  general should be produced.  There's very specific stuff to

19  each document which doesn't need to be; you know, debates

20  about the --

21         MS. BROOKER:  We understand.  I think we

22  understand, your Honor.  Our concern is just, again, the

23  discovery clock is ticking.  All the motions to compel have

24  already happened, and now the documents are just waiting for

25  us to use.  And we are going to reinvent the wheel.  We are

Page 25

1    going to be filing, I can tell you now, based on Abbott's

2    conduct in Texas and in this case, we are going to be filing

3    motion to compel after motion to compel to get the same exact

4    set of documents that they've already produced.

5              THE COURT:  Do you feel like you now have a

6    good-faith basis for amending your complaint to add any

7    drugs?

8              MS. BROOKER:  Well, your Honor, I think the problem

9    is that we're not necessarily using some of those documents

10   to amend the complaint.  That's not the issue.  Abbott, and

11   particularly even with the drugs at issue here, Abbott

12   markets drugs in a broad way.  There are no carved-out subset

13   of documents on marketing, for example, that only talk about

14   this drug or that.  It's a broad-based set of marketing

15   documents.

16             THE COURT:  And to the extent that there are, you

17   should have them produced.  To the extent that they're very

18   unique to a particular drug and a particular doctor in a

19   particular location, it may be overly broad if it's not one

20   of the drugs you're suing about.

21             MS. BROOKER:  I understand, but this will require

22   motion, motions practice.

23             THE COURT:  I can't help that.  What can I do?  You

24   can't have a hundred documents relating to a hundred drugs

25   when you're suing on four.  But if there are crosscutting