# EXHIBIT A

| Plaintiffs' Groupings | Drug Name | Plaintiffs' Groupings | Drug Name |
|---|---|---|---|
| ABBOTT | Adenopsine | BAYER | Dexamethasone acetate (Bayer does not manufacture or distribute this drug) |
| ABBOTT | Bupivacaine | BAYER | Moxifloxacin Injectable (Avelox) |
| ABBOTT | Ciprofloxacin Hydrochloride | | |
| ABBOTT | Dexamethasone Acetate | FUJISAWA GROUP | Adenosine |
| ABBOTT | Diltiazem Hydrochloride Inj | FUJISAWA GROUP | Methylsulfate |
| ABBOTT | Dopamine Hydrochloride | | |
| ABBOTT | Enalaprilat Inj | PFIZER | Bacitracin |
| ABBOTT | Epinephrine | PFIZER | Cytoxan |
| ABBOTT | Famotidine | PFIZER | Depo-Provera |
| ABBOTT | Glycopyrrolate | PFIZER | Diphenhydramine Inj |
| ABBOTT | Hydromorphone Inj | PFIZER | Doxycycline |
| ABBOTT | Ketorolac | PFIZER | Epirubicin |
| ABBOTT | Labetalol Inj | PFIZER | Heparin Sodium |
| ABBOTT | Lavofloxacin | PFIZER | Hydrocortisone Sodium Succinate |
| ABBOTT | Lidocaine Hydrochloride | PFIZER | Potassium Chloride |
| ABBOTT | Magnesium Sulfate | PFIZER | Propofol Injectable |
| ABBOTT | Midazolam Hydrochloride | PFIZER | Triptoreline Pamoate |
| ABBOTT | Morphine Sulfate Inj | | |
| ABBOTT | Potassium Chloride | PHARMACIA GROUP | Cytoxan |
| ABBOTT | Promethazine Inj | PHARMACIA GROUP | Diphenhydramine Injectable |
| ABBOTT | Propotol Injectable | PHARMACIA GROUP | Epirubicin |
| ABBOTT | Ringer's Lactated with Dextrose Inj | PHARMACIA GROUP | Etoposide Phosphate |
| ABBOTT | Succinylcholine Chloride Inj | PHARMACIA GROUP | Heparin Sodium |
| ABBOTT | Vercuronium Bromide | PHARMACIA GROUP | Hydrocortisone Sodium Succinate |
| | | PHARMACIA GROUP | Triptoreline Pamoate |
| AVENTIS GROUP | Albumin | | |
| AVENTIS GROUP | Eligard | SICOR GROUP | Cisplantin |
| AVENTIS GROUP | Enoxaparin Sodium | SICOR GROUP | Dexamethasone Sodium Phosphate |
| AVENTIS GROUP | Furosemide | SICOR GROUP | Diltiazem Hydrochloride Injectable |
| AVENTIS GROUP | Sodium Chloride | SICOR GROUP | Epinephrine |
| | | SICOR GROUP | Enalaprilat Injectable |
| BAXTER | Carboplatin | SICOR GROUP | Glycopyrrolate Injectable |
| BAXTER | Cefazolin | SICOR GROUP | Magnesium Sulfate Injectable |
| BAXTER | Cefazolin Sodium | SICOR GROUP | Neostigmine Methylsulfate |
| BAXTER | Cefuroxime | SICOR GROUP | Phenylephrine |
| BAXTER | Ciprofloxacin Hydrochloride | SICOR GROUP | Promethazine Injectable |
| BAXTER | Dexamethasone Sodium Phosphate | SICOR GROUP | Propofol Injectable |
| BAXTER | Diazepam | SICOR GROUP | Sodium Chloride |
| BAXTER | Diltiazem Hydrochloride | SICOR GROUP | Vercuronium Bromide Injectable |
| BAXTER | Diphenhydramine | SICOR GROUP | Vincristine Sulfate |
| BAXTER | Dopamine Hydrochloride | | |
| BAXTER | Enalaprilat | WATSON | Lorazepam Injectable |
| BAXTER | Famotidine | WATSON | Ketorolac Tablets |
| BAXTER | Fentanyl Citrate | WATSON | Promoethazine |
| BAXTER | Furosemide | WATSON | Trelstar |
| BAXTER | Gentamicin Sulfate | | |
| BAXTER | Glycopyrrolate | | |
| BAXTER | Hetastartch Sodium Chloride | | |
| BAXTER | Hydromorphone Injectable | | |
| BAXTER | Ketorolac Tromethamine | | |
| BAXTER | Labetalol Injectable | | |
| BAXTER | Lidocaine Hydrochloride | | |
| BAXTER | Methotrexate Sodium | | |
| BAXTER | Midazolam | | |
| BAXTER | Midazolam Hydrochloride | | |
| BAXTER | Neostigmine Methysulfate | | |
| BAXTER | Phenylephrine | | |
| BAXTER | Potassium Chloride | | |
| BAXTER | Promethazine | | |
| BAXTER | Ringers Lactated With Dextrose Injectable | | |
| BAXTER | Propofol | | |
| BAXTER | Vancomycin Sulfate | | |
| BAXTER | Vercuronium Bromide | | |

# EXHIBIT B



**Kirkpatrick & Lockhart Nicholson Graham** LLP

State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
617 261 3100
Fax 617 261 3175
www.klng.com

Aug 9 2006
10:13AM

August 9, 2006

Michael DeMarco
617.951.9111
Fax: 617.261.3175
mdemarco@klng.com

**By E-Mail and Facsimile**

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Steve W. Berman, Esq.
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

Re:   In re Pharmaceutical Industry Average Wholesale Price Litigation
      MDL 1456

Dear Steve:

We are writing in response to your purported 93A demand letter to Aventis Pharmaceuticals Inc. ("Aventis") dated July 10, 2006. From the outset, we note that by responding to your letter we are not acknowledging the sufficiency of your demand letter, nor are we waiving any of the requirements or defenses of M.G.L. ch. 93A sec. 9.

As you are aware, Aventis filed a Motion for Summary Judgment and Judgment on the Pleadings ("Motion for Summary Judgment") on the grounds that plaintiffs failed to comply with the clear requirements of M.G.L. ch. 93A. In response to our Motion for Summary Judgment, you filed an Opposition and Motion for Leave to File an Amended Complaint ("Motion for Leave"). We have opposed your Motion for Leave on the grounds that your proposed amendment would be futile (the "Opposition to Motion for Leave").

The provisions of M.G.L. ch. 93A sec. 9 are clear—an M.G.L. ch. 93A sec. 9 demand letter must be sent thirty days before filing suit.

> [a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.

M.G.L. ch. 93A sec. 9(3) (emphasis added). You are aware, and have in fact acknowledged, that plaintiffs failed to comply with the law. As you and your local Massachusetts colleagues are familiar with Massachusetts law, you should know that the demand letter requirement of section 9 is jurisdictional and the failure to comply with the requirement is fatal to the claim. See Thorpe v. Mutual of Omaha Ins. Co., 984 F.2d 541, 543-44 (1st Cir. 1993); Linton v. New



Kirkpatrick & Lockhart Nicholson Graham LLP

Steve W. Berman, Esq.
August 9, 2006
Page 2

York Life Ins. and Annuity Corp., 392 F. Supp. 2d 39, 42 (D. Mass. 2005); McMahon v. Digital Equipment Corp., 944 F. Supp. 70, 76 (D. Mass. 1996); City of Boston v. Aetna Life Ins. Co., 399 Mass. 569, 574 (1987); Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 285 (1985); Wall v. Altenhof, No. 99-P-1542, 2003 WL 18757630, at *3 (Mass. App. Ct. Apr. 10, 2003); Spilios v. Cohen, 38 Mass. App. Ct. 338, 342-43 (1995).

In addition to not complying with the statute's jurisdictional prerequisite that a demand letter be sent thirty days prior to bringing suit, your attempted 93A demand falls woefully short of the substantive requirements for 93A demand letters. While the letter states that it is sent on behalf of "all classes in the litigation," no "class" exists as to Aventis. As you are aware, Baldassari v. Public Finance Trust, 369 Mass. 33 (1975) held that at least one putative class representative must provide a proper, pre-suit demand letter "identifying him as the claimant and reasonably describing the act or practice relied on and the injury suffered by him." Baldassari, 369 Mass. at 42. None of the named consumer plaintiffs have ever provided a pre-suit demand letter under chapter 93A, nor does your belated purported demand letter identify "the claimant." M.G.L. ch. 93A sec. 9(3). Indeed, there is no named Massachusetts plaintiff for whom such a demand letter could be provided.

In light of the government reports, testimony, and other information we have brought to your attention since you filed this lawsuit, we are also surprised that you continue to pursue your AWP claim. As you know, your initial complaint said that Average Wholesale Price or "AWP" was intended to be a literal term; an actual average of wholesale prices. We brought to your attention the testimony of Mr. Pennebaker, who testified that the term "AWP" was invented in 1969 by State of California pharmacists who were responsible for reimbursing providers for prescription medicines under California's Medicaid program. We also provided you with government reports and articles stating that AWP is a term of art and merely a pricing benchmark invented by government officials, and later used by private payors, to reimburse for prescription medicines. These same articles also say that, at least since the 1990s, the term AWP has been commonly characterized by government officials and other knowledgeable persons in the healthcare industry as "Ain't What's Paid."

After considering this information, you changed your theory in your complaint that AWP was a literal term, to yet another unfounded theory – that the term AWP was a pricing "signal," which everyone in the industry allegedly viewed as representing a price fixed at 30% above yet another pricing term, Wholesale Acquisition Cost or "WAC." We then provided you with additional information, testimony, and reports demonstrating that this fallback theory was as incorrect as your first.

In addition, we've also informed you that Aventis does not establish the AWP for its medicines, nor does it "inflate" the AWP for these medicines. As the testimony of our employees and



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Steve W. Berman, Esq.
August 9, 2006
Page 3

company documents we have given you make clear, since 2001 Aventis has provided to the independent pricing companies a Wholesale List Price only, which Aventis has told the pricing companies "does not include discounts, rebates, charge-backs, or other terms or distribution arrangements that may reduce actual sales price." As you also know, since you have filed a separate lawsuit against them, pricing companies unilaterally set the AWP for prescription medicines, which they then publish and sell to their subscribers. In fact, you allege in your separate lawsuit against these pricing companies that this conduct subjects them to liability because you allege that the pricing companies "inflated" the AWP pricing benchmark. Even before 2001, when Aventis suggested an AWP to the pricing companies, all such suggestions followed industry standard mark-ups of 20-25%.

Finally, we've also demonstrated that Aventis followed a formula that insured that its weighted average price increases for its medicines did not exceed the Consumer Price Index ("CPI"). The list price increases for Anzemet® and Taxotere® were also consistent with those that Aventis made for the remainder of medicines. With regard to Anzemet®, after taking a series of modest price increases (4% to 6% annually) between 1999 and 2001, Aventis made no pricing changes from 2001 through mid-2004, at which time it *lowered* the list price. Taxotere® followed a similar pricing pattern, averaging annual 5% price increases from 1997 through 2003.

In sum, we assert that your purported demand letter is both untimely and insufficient, reject your request to cure alleged violations and stand by the arguments set forth in our Motion for Summary Judgment and Opposition to your Motion for Leave to File an Amended Complaint.

Very truly yours,

Michael DeMarco

cc:   Thomas M. Sobol, Esq. (By Certified Mail, E-Mail and Facsimile)
      All Counsel of Record (via LexisNexis)