

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION:  01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**RESPONSE OF CLASS 1 REPRESENTATIVE SUSAN AND DAVID AARONSON TO PURPORTED "NOTICE OF LACK OF CLASS 1 REPRESENTATIVE AS TO DEFENDANTS BRISTOL MYERS SQUIBB CO. AND ONCOLOGY <u>THERAPEUTICS NETWORK CORP</u>."**

In response to the purported "Notice of Lack of Class 1 Representative As To Defendants Bristol Myers Squibb Co. and Oncology Therapeutics Network Corp," Class 1 Representatives Susan and the Reverend David Aaronson ("the Aaronsons") state as follows:

1.      Pursuant to the Court's January 30, 2006 "Consolidated Order Re: Motion for Class Certification," the Aaronsons were the only individual persons certified as Representatives of the Class 1 subclass as to the BMS Group for BMS Subject Drugs.

2.      Ms. Aaronson was prescribed, and paid part of the Medicare Part B co-payment for, a BMS Subject Drug beginning in 2004.

3.      In its November 2, 2006 Memorandum and Order, this Court adjudicated "cross motions for summary judgment on the meaning of the term AWP in the Medicare statute, 42 U.S.C. § 1395u(o) (West 1998)." November 2, 2006 Order at 1.  This Court described the subject of its ruling, and the positions of the parties, as follows:




> The parties ask the Court to construe the term "average wholesale price" in the Medicare statute as a matter of law. Plaintiffs assert that Congress intended AWP to mean some actual average of wholesale prices to customers. Defendants assert that AWP is a term of art and means a reference price or benchmark used for price negotiations, rather than an average of actual prices.

November 2, 2006 Order at 15.

4.     This Court construed the statutory term according to its plain meaning and held that "AWP" means the average price at which wholesalers sell drugs to their customers. November 2, 2006 Order at 23. The Court concluded, however, that by 2003, the term "AWP" had become a "term of art" and was understood by Congress not to reflect actual prices in the marketplace. The Court found that Congress reduced reimbursement to 85% of AWP to account for the fact that AWPs were inflated, until the new "average sale price" reimbursement system was implemented in 2005. *Id.* Therefore, the Court denied Defendants' motion for summary judgment on the meaning of AWP for the time period prior to 2004, but granted Defendants' motion for summary judgment on the meaning of AWP from January 1, 2004 to the present. *Id*. at 24. The Court reserved all other issues raised in the summary judgment papers for trial. *Id*.

5.     Contrary to the assertions of the BMS Group, the Court's November 2, 2006 order did not fully adjudicate or otherwise dispose of the Aaronson's claim. The Court construed "average wholesale price" in the context of summary judgment motions brought against a Massachusetts subclass with claims governed by Massachusetts law. The applicable law on the Aaronsons' claims, however, is that of North Carolina, since the Aaronsons purchased Subject Drugs in North Carolina, and still reside there. *See*




August 16, 2005 Memorandum and Order Re: Class Certification at 49-52; Fourth Amended Master Consolidated Complaint at ¶ 15.

6. The primary purpose of N.C. GEN. STAT. § 75-1.1 (2000) is to provide a "private cause of action for consumers." *Gray v. N.C. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). "[A] successful claim under G.S. § 75-1.1 requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused actual injury to the claimant." *Durling v. King*, 146 N.C. App. 483, 487, 554 S.E.2d 1, 4 (2001) (citing cases). North Carolina courts have held that a particular act or practice may be found to be "deceptive" under the Act if it "has the capacity or tendency to deceive." *See Furr v. Fonville Morisey Realty, Inc.*, 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998).

7. Notably, North Carolina law provides that it is an unfair trade practice within the meaning of N.C. GEN. STAT. § 75-1.1 (2000) for a "person, firm or corporation [to] advertise the sale of its merchandise using the term "wholesale" with regard to its sale prices, ...unless the wholesale price is established by an independent agency not engaged in the manufacture, distribution or sale of such merchandise." N.C. GEN. STAT. § 75-29 (2000). Whatever Congress thought about the meaning of AWP in 2004, the evidence at trial will show that the AWPs of the BMS Group were not established in a manner consistent with North Carolina law. The evidence will also show that the 85% reimbursement system did not mitigate all of the damage caused by Defendants' scheme, which the Aaronsons will show inflated the prices of Subject Drugs in excess of 20%.

8. There was no reason for the Court to construe the meaning of AWP under North Carolina law in its November 2, 2006 Order. Neither co-lead counsel or defense

3



counsel briefed the issue. Instead, the parties focused on how to construe AWP for purposes of claims brought by Massachusetts third party payors that were about to be tried under Massachusetts law. After the Court issued its November 2, 2006 Order, the BMS Group did not move to dismiss or decertify the class. Furthermore, no party moved to decertify the Class 1 portion of the GlaxoSmithKline settlement class, for which Mrs. Aaronson is the only Class 1 Representative (despite having made all of her purchases of GlaxoSmithKline Subject Drugs in 2004).

9. Moreover, even if the Court had ruled that there was no actionable AWP inflation after 2003 as a matter of law for all Class 1 class members nationwide, Class 1 class members can still recover for the financial harm caused by defendants' unfair and deceptive practice of inducing sales of their Subject Drugs by manipulating the profit medical providers made on the Subject Drugs. *See* Fourth Amended Master Consolidated Complaint at ¶¶ 174-75, 180. As alleged in the Complaint, to stimulate sales at the expense of class members, Defendants secretly provided inducements like discounts, rebates, off-invoice pricing, free goods, credit memos, consulting fees, debt forgiveness, and grants. Id. at ¶ 180. This lowered the net cost of Subject Drugs to medical providers and enabled them to make a substantial profit on the "spread" between what medical providers actually paid and what they charged for Subject Drugs. *Id.* at ¶¶ 174, 180. BMS Group documents specifically reported that spreads influenced medical providers to choose the products that provided them with the greatest profit. *Id.* at ¶ 335. Indeed, Defendants capitalized upon this by encouraging medical providers to purchase and prescribe relatively expensive courses of treatment for their own financial reasons, rather than prescribe courses of treatment solely for medical reasons. *Id*. at ¶ 582(e). As such,



Defendants' scheme has inflicted, and continues to inflict, financial harm on class members. *Id.* at ¶ 584.

10. Thus, regardless of whether Congress thought AWP was a true representation of Defendant's wholesale prices, Defendants' unfair and deceptive marketing of the spread on their drugs violated the consumer protection laws of North Carolina and other states. Had Defendants not offered medical providers a profit on the Subject Drugs, medical providers would have prescribed drugs and other courses of treatment for medical rather than financial reasons, and resold the Subject Drugs at prices equivalent to their actual acquisition cost. This would have meant that discounts and the like would have been passed on to the financial benefit of class members, rather than medical providers.

11. None of these issues were addressed in the Court's November 2, 2006 Order, even if they were raised by the parties. Per the Court's November 2, 2006 Order, these issues are reserved for trial. Consequently, the purported "Notice" of the BMS Group should be rejected.

Dated:  May 30, 2007                              /s/ Donald E. Haviland, Esquire
                                                  Donald E. Haviland, Esquire
                                                  The Haviland Law Firm
                                                  740 South Third Street
                                                  Third Floor
                                                  Philadelphia, PA 19147
                                                  Telephone: (215) 609-4661
                                                  Facsimile: (215) 392-4400

                                                  **ATTORNEYS FOR THE
                                                  REVEREND AND MRS. DAVID
                                           AARONSON AND THE CLASS**



## CERTIFICATE OF SERVICE

I, Donald E. Haviland, Jr., Esquire, hereby certify that on May 30, 2007, I electronically filed the foregoing  Response of Class 1 Representative Susan and David Aaronson to Purported "Notice of Lack of Class 1 Representative as to Defendants Bristol Myers Squibb Co. and Oncology Therapeutics Network Corp." with the Clerk of this Court, using the CM/ECF system which will send notification of such filing to all registered person(s) and that those person(s) not registered with CM/ECF system were served by U.S. mail.

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr.
The Haviland Law Firm
740 South Third Street
Third Floor
Philadelphia, PA 19147