# EXHIBIT 5 (a)



**U.S. Department of Justice**

Civil Division, Fraud Section

---

*601 D Street, NW*  *Telephone: (202) 305-9300*
*Ninth Floor*  *Telecopier: (202) 616-3085*
*Washington, D.C. 20004*

January 5, 2007

<u>Via Electronic Transmission</u>

David Torborg                  Martin F. Murphy
Jones Day                      Foley Hoag LLP
51 Louisiana Ave., N.W.        155 Seaport Blvd
Washington, DC 20001-2113      Boston, MA 02210-2600

Neil Merkl, Esq.
Paul F. Doyle, Esq.
William A. Escobar, Esq.
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178

      Re:    *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* MDL No. 1456/Civil Action No. 01-12257-PBS; *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Dey, Inc.,* MDL No. 1456/Civil Action No. 01-12257-PBS

Dear Counsel:

    I am writing in regard to topics in Mr. Torborg's correspondence of December 13, 2006, which is based on numerous telephone conferences during November and December. I will address the points raised therein in the order set out in the letter from Abbott's counsel. I will also cover a few other items that have come up during these discussions between counsel for the parties.

    **Scope of Search**. Mr. Torborg's letter identifies particular offices within HHS that he believes are likely to have responsive information. We appreciate the consideration which appears to have been given to the issue of how the scope of discovery can reasonably be focused. At this juncture, we do not take issue with the proposal as it relates to CMS, OIG and OPA - subject to and without waiving any of the objections made in response to individual discovery requests. We have conveyed your request about the other HHS offices that could be searched for responsive material to the victim agency and will further confer with you after we receive feedback from these offices.

**Documents Which are Not Specific to Payment Codes in the Complaint.** Both in correspondence and during phone conferences, Mr. Torborg has requested that the United States produce documents relating to payment for pharmaceutical products even if such documents, on their face, do not explicitly refer to the "Subject Drugs" covered by the claims of the United States. I believe we are generally in agreement with you - but need to state a clarification. As we indicated in a previous conversation, if CMS gave instructions to carriers regarding payment methods to be used, for example, for large volume parenterals or other instructions with broad application, we will consider documents reflecting or referencing those instructions to be responsive to the discovery requests even if they do not specifically mention any of the Subject Drugs. With respect to Mr. Torborg's reference to documents relating to "policy in the area of drug reimbursement generally," we continue to reserve our general and specific objections previously stated in response to individual discovery requests. We agreed to work with defendants going forward to identify materials that are responsive, not unduly burdensome to locate and produce, or which are not covered by privilege or subject to other protection.

**Time Period.** Mr. Torborg questions whether the production of documents created prior to 1991 would necessarily create more burden than restricting the scope of the production to post 1990. As I stated in discussions, when searching for responsive material, in the event we identify a file with responsive information and it contains documents created both before and after January 1991, we do not intend, for production purposes, to selectively withhold pre-1991 material based on our objection to the temporal scope of defendants' discovery requests. We will consult further with you over the course of the Government's production regarding any burdensomeness issues associated with the scope of the search which are attributable to the time-frame specified in the requests.

**Publically Available Documents.** It appears that we may generally be in agreement with respect to this item. For example, our response to Abbott's Requests for Production, in certain instances, specifies where responsive information is available on a CMS site. My concern about unreservedly agreeing with Mr. Torborg with respect to this item relates to those discovery requests to which the Government objected as overly vague or broad, and, therefore, as to which the difficulty in specifically identifying publicly-available material may stem from the overbreadth or vagueness of a request. In short, in instances where the Government is aware of a particular public source for material or information responsive to a discovery request, I do not anticipate that we will withhold that information from defendants. That said, it probably makes sense to further discuss this issue in reference to particular discovery requests or responses, as the need arises.

**Documents Withheld on Relevancy Grounds.** Mr. Torborg's letter notes that the United States has objected to some of Abbott's discovery requests as neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The letter further requests that we provide a description of the material that the Government will not produce based on these grounds. We have spent several days in conference with defense counsel discussing the scope of the Government's document production on a category-by-category basis. In response to extensive questions regarding specific discovery requests we have provided explicit answers regarding the search that the Government has been engaged in and will continue to undertake. Material withheld based on privilege or doctrine will be identified in a privilege log. Again, it may make more sense to further discuss this issue in reference to particular material as the need arises while

the Government's production is underway.

**Carriers and State Medicaid Agencies.** We concur with Mr. Torborg's statements regarding these two sources of material and information. We agree that coordination among the parties is advisable.

**Production Time-Frame.** We recognize all parties' willingness to be flexible with regard to a time-frame for production on both sides. The Government's search for responsive material has been on-going. However, the search for and scanning and production of this material is requiring substantial effort such that the deadlines in your letter may not be feasible. Generally, we expect to begin a rolling production this month. Complete processing (i.e., scanning) and production of documents in some of the categories which you have designated may take us through February. Because we do not yet have a comprehensive assessment of the probable volume of material, it is difficult to estimate how long our contractor will require to process the production. We should be able to update you on this issue as the production gets more fully underway. You particularly inquired about the status of the following items.

 * Documents relating to Program Memo 00-86 – This material is being retrieved from an archived storage location. We expect to produce non-privileged documents responsive to this category by January 31. Any material withheld based on privilege will be recorded on a privilege log.

 * Public comments on proposed regulations (RFP 37) – CMS has identified 105 banker's boxes of material relating to 56 Fed. Reg. 25792 (June 5, 1991) (proposed rule); 56 Fed. Reg. 59502 (Nov. 25, 1991) (final rule). CMS has indicated that it must retain physical custody of the original documents to safeguard the integrity of the record relating to its rule-making. Accordingly, we propose to make the documents available for review at CMS headquarters in Baltimore. Please contact me to make arrangements for your review of this material. Given the volume of material relating to other rule-makings, we believe that it makes sense to phase production of these materials and will further confer with you to this end. Please advise concerning the particular rules as to which you want us to give priority.

 * Litigation with state Medicaid agencies (RFPs 43-47) – We have already given you Bates ranges for some of these documents. We expect additional documents responsive to this category to be part of the rolling production that will begin later this month and continue through February.

 * Documents from a revised list of agency personnel (RFP 25) – Mr. Torborg's letter pares down the list of individuals covered by RFP 25 to ten names. It appears that documents from the files of many of these individuals were produced in response to previous MDL subpoenas. That said, we are confirming that searches of the files of Neiman, Weintraub, Booth, Burney, Ault, and Patashnek were covered by the subpoena productions and will confirm that to you by January 31. We will contact you later this month regarding a production date for documents from the remaining four individuals – that is,Vladeck, Shalala, Scully, and DePerle. Because these four people are all former employees who held political appointments, their files implicate distinct retrieval and search steps from those of the other employees on Abbott's list.

    \*    State Medicaid plans –  We recognize that both sides need this material and are actively working to assemble a comprehensive set of documents in this category –  a process complicated by the fact that the plans are subject to amendment.  We understand that these materials are spread throughout ten regional HHS offices.  We have started the process to collect them.  In order to avoid burdening the states and make the process most efficient, we propose that we complete this process of collecting the documents from the regional offices before going to the states for the information.

    \*    File Source Index relating to the previous subpoena productions – As I have previously indicated, we provided the only one we have with the initial disclosures.  Abbott did not request a file source index at the time of the production in 2004.  I is extraordinarily burdensome to retrace in detail the steps undertaken sufficiently to complete the file source index requested by Abbott.  We are working to expand the section of the index which relates to documents produced by CMS with as much additional information as possible.  This is turning out to be a labor-intensive exercise.  We plan to provide you with a supplemental index by January 31.

    \*    FSS schedules –  This does not appear to be a category of documents that CMS has in its possession.  We do not object to producing these items.  However, we need to further confer with you in order to obtain and produce documents in this category.

    \*    OIG Reports and Responsive documents – Abbott has requested that we give priority to this item and we are so doing.  We are locating material in this category.  Once we have completed our review we will contact you and advise to what extent the Government will produce documents from this category.  We hope to provide you with a plan by January 31.  With respect to the separate request for documents relating to reports that Nancy Molyneaux worked on, we expect to be able to produce non-privileged documents relating to this request by January 19, 2007.

    \*    Document Preservation Directives – The parties discussed this topic during our phone conversation on December 14, 2006.  We agreed that the mutual exchange of directives is one that all parties must resolve.  The Abbott attorneys indicated that they would let us know whether they would be providing the United States and Relators with details regarding the directions given by Abbott's in-house or outside counsel regarding the preservation of evidence, including the dates, contents, and identity of all persons participating in discussions or communications regarding the preservation of evidence.  We also need to hear from counsel for Dey on this point.  Please advise as to when defense counsel will be ready to take up this topic again.  This is an issue that should be jointly resolved by both sides.

    \*    Identities of persons with access to AMP data – We are working to obtain this information and expect to produce it by January 31.

    \*    Documents from First DataBank, Wholesalers, and Gerimed – The FDB materials were sent to you last month.  The confidentiality issues regarding most of the wholesaler documents have been resolved and we expect to be able to produce those materials soon.  The Gerimed documents are also subject to confidentiality concerns and those materials relating to defendants will be made available as soon as those issues are resolved.  Furthermore, and as we

have indicated previously, we will produce documents in our custody which we have obtained from third parties (subject to appropriate protective orders and agreements for any confidential proprietary information contained therein) which are responsive to defendants' discovery requests.

During our last teleconference, Christopher Cook inquired whether the Government would agree to provide a narrative answer to Interrogatory number 10 which pertains to the Government's investigation of the *qui tam* allegations or whether we would stand on our objections. Mr. Cook's question overlaps with several of the items in Mr. Torborg's letter regarding the *qui tam* case. The Government will produce non-privileged documents in its possession which are responsive to defendants' discovery requests (subject to appropriate protective orders for proprietary information contained therein) regardless of how the Government obtained the documents. The Government will not describe or otherwise disclose the investigative steps it employed to analyze, verify, evaluate or investigate the allegations involved in this litigation.

Thank you for your attention. I am certain that there will be ample opportunity to discuss the foregoing over the next several weeks.

Very Truly Yours,

/s/
Justin Draycott
Trial Attorney
Commercial Litigation Branch


cc:     James Breen