# EXHIBIT 8



APR 2 3 1992

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES ex rel. LEONARD WEBER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>HUGHES AIRCRAFT COMPANY,<br><br>　　　　　　Defendant. | CASE NO. CV 89-6517 JGD<br><br>ORDER DENYING DEFENDANT'S MOTION FOR REVIEW AND RECONSIDERATION OF DENIAL OF MOTION TO COMPEL |

On April 13, 1992, the defendant's motion for review and reconsideration of denial of motion to compel came on for hearing. The Court ordered an in camera review of the disclosure statement and took the motion under submission. Having considered the papers, oral arguments of counsel, and the content of the disclosure statement, the Court HEREBY DENIES the motion for review and reconsideration.

### Facts

On November 8, 1989, the relator filed a Complaint for Violation of the False Claims Act (31 U.S.C. § 3729-3733) ("the Act"). The Complaint alleges that Hughes Aircraft Company

("Hughes") and other defendants engaged in fraudulent misrepresentation of the data surrounding a project for the government. Hughes was the prime contractor for the Advanced Medium Range Air-to-Air Missile (AMRAAM). Relator alleges that Hughes made "knowing misrepresentations of 'technical problems'" to more than double the price of the missiles to the government. Relator alleges that Hughes regularly misrepresented the true reasons for the rising price tag, which was connected with defective pricing by Hughes, as well as below-specification quality components which were fraudulently procured and priced.

On February 1, 1990, the Court issued an Order Sealing Complaint Under the False Claims Act. Because the case was a "qui tam" § 3730 case, the government was given 60 days in which to inform the Court whether it wished to take over prosecution of the action pursuant to § 3730(b)(2). On June 6, 1990, the government filed an Ex Parte Application for Enlargement of Time to Make Election Pursuant to 31 U.S.C. § 3730(b). On June 12, 1990, the Court issued an Order granting the government 60 additional days to make an election. On July 18, 1990, the government filed another Ex Parte Application for an Enlargement of Time. On July 23, 1990, the Court again granted the government 60 additional days. On October 5, 1990, the government yet again filed an Ex Parte Application for an Enlargement of Time. On October 12, 1990, the Court granted the government another 60 days. On December 10, 1990, the government filed another Ex Parte Application for Enlargement of Time, asking for 90 additional days. The Court

granted the request on December 10, 1990.

On June 7, 1991, the government gave notice of its election not to intervene. On June 20, 1991, the Court issued an Order (1) Unsealing Complaint and (2) Allowing Service Upon Defendants. The Order provided for the unsealing of the complaint, but specifically ordered that the remainder of the file remain sealed. On October 16, 1991, relator served on Hughes Aircraft Company a First Amended Complaint for Violations of the False Claims Act.[1] Hughes answered the First Amended Complaint on November 6, 1990. Hughes filed the Motion to Unseal Court File on December 9, 1990. On January 13, 1992, the Court granted the motion to unseal. On March 9, 1992, Judge Magistrate Kronenberg denied defendant's motion to compel production of relator Leonard Weber's disclosure statement. On March 19, 1992, defendant filed a motion for review and reconsideration of this denial.

On April 17, 1992, the motion came on for hearing. The Court ordered Weber to produce the disclosure statement for review by the Court, and took the motion under submission. On April 20, 1992, Weber produced the disclosure statement to the Court and filed Plaintiff's Additional Brief to the Court Regarding Privilege of False Claims Disclosure Statements and Evidence. On April 21, 1992, Hughes filed a Reply Memo of Points and Authorities in Opposition to Plaintiff's Additional Brief to the Court in which Hughes protested the additional filing by plaintiff, and accused

---

[1] The original Complaint named several defendants in the action, but the First Amended Complaint names only Hughes Aircraft Company.

3

plaintiff of misrepresenting to the Court that Weber was still employed by Hughes. Hughes requests that the Court impose sanctions for said misrepresentation. On April 22, 1992, Weber filed a Supplemental Brief in Support of Additional Brief in which Weber asserts that the lawyer who prepared the additional brief had erroneously relied upon outdated information regarding Weber's employment by Hughes. Weber asks that the Court not impose sanctions for the mistake.

## Discussion

### I. Standard

The authority of a magistrate to impose any order turns on whether the order is construed as non-dispositive or dispositive. Fed. R. Civ. P. 72(a) provides that if the order is not dispositive of a claim or defense of a party, a magistrate may enter "a written order setting forth [its] disposition." The district court shall defer to the magistrate's order unless it is clearly erroneous or contrary to law. Id. However, if the matter is dispositive, a magistrate shall confine himself to entering "a recommendation for the disposition of the matter." Fed. R. Civ. P. 72(b); Grimes v. City and County of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991).

The present discovery matter is clearly non-dispositive. Therefore, this Court must defer to the magistrate's denial of the motion to compel unless the ruling was clearly erroneous or contrary to law.

\\

4

II. The Attorney-Client Privilege and Work Product Doctrine

Weber asserts the attorney-client privilege, and also argues that the disclosure statement is protected by the work product doctrine.

A. The Attorney-Client Privilege

The attorney-client privilege applies to communications between a client and a lawyer undertaken for the primary purpose of seeking advice. United States v. Gurtner, 474 F.2d 297, 298 (9th Cir. 1987). A straight application of the attorney-client privilege is a little difficult in this case, because although Weber certainly communicated his disclosure statement to the U.S. Attorney General, the U.S. Attorney General was not at that time nor any other time Weber's own attorney. Nor did Weber ever anticipate that the U.S. Attorney General would act as Weber's own lawyer. The policy concern underlying the attorney-client privilege is the promotion of free communication between an attorney and his client. Expansion of the attorney-client privilege to a third party's lawyer is generally inappropriate.

However, the Supreme Court has held in Upjohn v. United States, 449 U.S. 383, 395-96 (1981) that statements made by employees of a company to in-house counsel in furtherance of a company-wide investigation were privileged as attorney-client communications. An analogy could certainly be drawn to the present case. Comments by Weber made to government lawyers in furtherance of an investigation could arguably be privileged under Upjohn. Nonetheless, the attorney-client privilege does not appear to apply

5

in the present of

B. The Work Product Doctrine

The work product doctrine is a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. Work product materials may be ordered produced upon the adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3); Admiral Insurance Co. v. United States Dist. Court for the Dist. of Arizona, 881 F.2d 1486 (9th Cir. 1989).

While there may be problems with a straight application of the attorney-client privilege to the facts of this case, the work product doctrine is easily applied. The disclosure statement was clearly prepared by a party in anticipation of litigation. The Act itself requires the preparation of a disclosure statement in order to further a qui tam lawsuit. See 31 U.S.C. § 3730(b)(2). Further, Hughes cannot demonstrate a substantial need for the disclosure statement, or an inability to obtain the equivalent without due hardship. The complaint and file have been unsealed in the case, and Hughes has all it needs to know about the allegations against it. It does not have a substantial need to know what further information the disclosure statement provides. Hughes also cannot demonstrate an inability to obtain the information provided in the disclosure statement without undue hardship.

\\

Case 1:01-cv-12257-PBS   Document 4272-12   Filed 06/01/07   Page 8 of 8

This Court can only overturn the magistrate's denial of the motion to compel if it is clearly erroneous or contrary to law. The denial of the motion to compel was neither erroneous nor contrary to law. While the attorney-client privilege may not apply, the work product doctrine does. Discovery of the disclosure statement is precluded. The disclosure statement was prepared in anticipation of litigation. Hughes cannot establish that it has a substantial need for the disclosure statement. Moreover, Hughes cannot demonstrate an inability to obtain the information provided in the disclosure statement without undue hardship. Hughes can consult its own business records. Finally, while the False Claims Act does not address production of the disclosure statement, the underlying policy concerns would support a conclusion that the disclosure statement should be confidential in order to encourage reporting of fraudulent schemes. For all of the above reasons, the Court DENIES the motion for reconsideration or review of the magistrate's order denying the defendant's motion to compel. The Court also DENIES Hughes' request for sanctions.

IT IS SO ORDERED.

Dated: APR 22 1992

JOHN G. DAVIES
United States District Judge

7