UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| BMS CLASS 1 TRIAL | Judge Patti B. Saris |

**PLAINTIFFS' RESPONSE TO BMS's NOTICE OF LACK OF CLASS 1 REPRESENTATIVE AS TO DEFENDANTS BRISTOL-MYERS SQUIBB CO. AND ONCOLOGY THERAPEUTICS NETWORK CORP.**

On the eve of the Class 1 trial against Defendant BMS, and six months after the Court issued its November 2, 2006 order (the "Order") denying the Track 1 Defendants' motion for summary judgment "except with respect to Medicare Part B drugs furnished in 2004," BMS now claims that Ms. Aaronson, who received treatment with BMS Subject Drugs beginning in 2004, is no longer eligible to represent Class 1 in the BMS trial. Therefore, BMS argues, there should be no trial against it. BMS is wrong for a number of reasons, including the fact that the Court's Order did not extinguish Class 1 claims for the time period after 2003.

## I.     ARGUMENT

### A.     The Court's Order Does Not Bar Class 1 Claims Post-2003

It is doubtful that the Court intended to dismiss the claims of the Class 1 Medicare beneficiaries for drugs furnished after 2003. The Order, issued on the eve of the Class 2 and 3 trial, is silent on this issue, which is notable because the Class Period for Class 1 extends to January 1, 2005. Jan. 30, 2006 Consolidated Order Re: Motion for Class Certification at 6.[1]

---

[1] The Proposed Settlement with AstraZeneca also covers claims through the end of 2004.

In the Order, the Court found that, by 2003, "Congress clearly did understand AWP was different than average sales price and was not reflective of actual prices in the marketplace. Therefore, it reduced reimbursement to 85 percent of AWP to account for the overstatement while the new pricing system was being phased in."  Order at 23-24.  The Order did not expressly dismiss post-2003 *Class 1* claims and, indeed, recognized that "[t]he Court will address the remaining issues raised by the summary judgment papers at trial."  *Id.* at 24.

Further, the Court has recognized a critical distinction between the purported knowledge of the federal government and knowledge of Class 1 Medicare beneficiaries.  For example, during the AstraZeneca pretrial conference, the Court acknowledged Class Counsel's argument that the trial would focus primarily on whether a defendant intended to defraud consumers.  In other words, the issue is whether *consumers* were deceived and whether defendants intended to deceive *consumers*.  The following exchange took place between the Court and Class Counsel relating to Plaintiffs' motion *in limine* to exclude the introduction of evidence relating to purported government knowledge:

> MR. BERMAN:  But don't they have to show to make this relevant that the TPP [Medicare Carrier] would somehow be in communication with the beneficiary?  Because you stated, your Honor – and this is where I'm going to for the first time today quarrel with something you said, and I apologize in advance for doing so – but you said that the intent instruction that you're going to issue is whether AstraZeneca intended to defraud the government.  Well, the trial here is whether they intended to defraud consumers who were also part of the scheme.

> THE COURT:  All right, so that's a good push-back point, so –

> MR. BERMAN:  So if we start from that premise, that the issue here is whether consumers were deceived and whether they intended to deceive consumers, then the question is, how does government knowledge play into this?

> *             *             *

> THE COURT:  Well, wouldn't it be intent to deceive both?  I'm
> thinking out loud through all these issues, so this is why we're
> doing this because you were all off in 42 different states and boats
> and unfair practice.  So once I'm focused on intent to deceive --
> …..

April 11, 2007 Pretrial Conference Transcript at 31-32.

Moreover, it is beyond dispute that *no* Class 1 member knew about the Medicare reimbursement change in 2003, let alone about BMS's AWP inflation and spread marketing activity.  As the Court recognized in the context of reliance:

> [W]e're dealing with poor sick people here.  So, as a practical
> matter, we're not going to have an issue of, should they have
> known about the violation, unlike the third-party payor?  I mean,
> I'd never heard of it until it unfortunately got assigned to me, so
> we're not going to have those issues with this class.

April 11, 2007 Pretrial Conference Transcript at 10.  Given this undisputed fact, and the upcoming trial's focus on whether BMS intended to deceive consumers, it makes no sense for the Court's Order to be interpreted as dismissing Class 1 claims post-2003 because Congress modified the reimbursement formula to increase the discount off of AWP.  From the standpoint of a Medicare beneficiary, the likelihood of deception did not diminish as a result of Congress's action in making a small adjustment to the reimbursement regime.

Ms. Aronson was and is an adequate and typical representative of Class 1, and she should be permitted to have her trial "day in Court" against BMS, especially after such a long wait.

**B.     There Are Other Class Representatives Ready And Willing To Prosecute The Class
1 Claims Against BMS**

Even if the Court agrees with Plaintiffs and rejects BMS's attempt to apply the Order to bar Ms. Aaronson's claim, Plaintiffs respectfully submit that two additional Plaintiffs, discussed below, should be appointed as Class 1 named plaintiffs in order to bolster Class 1 representation and thereby protect the Class.  Attorney Don Haviland has taken the position in a filing before

this Court that he represents Ms. Aaronson and was free to file a brief on this issue without

consulting with appointed Lead Counsel.  As the Court may recall, Mr. Haviland has also

objected to the proposed settlement with AstraZeneca, a settlement that he actually supported at

the conclusion of the AstraZeneca mediation.  Additional class representatives would protect

Class 1 from Mr. Haviland's unsupported attempts to hijack control of the litigation.

> **1.      Ms. Agnes B. Swayze**

Ms. Agnes B. Swayze, of Lancaster, California, is ready and willing to join this case as a

class representative.  Ms. Swayze is a 72 year-old widow, who, before her retirement, worked for

the County of Los Angeles as a social worker.

Among Ms. Swayze's several medical conditions, she has ovarian cancer.  She was

treated extensively for this cancer 1994 and again in 2002-2003.  In 2002-03 she received

chemotherapy, including injections of BMS's Paraplatin.  Ms. Swayze received her

chemotherapy treatments at both Lancaster Community Hospital and through Valley Tumor

Medical Group, at their infusion clinic.  Attached as Exhibit 1 is a Medicare EOB evidencing

Ms. Swayze's treatment with Paraplatin at the Valley Tumor Medical Group in March 2003, and

indicating payment by Medicare Part B for the Paraplatin treatment.

Ms. Swayze is covered by Medicare, but has no private supplemental insurance and will

testify that, since she has been receiving Medicare, she has had no other source of medical

insurance.  Ms. Swayze paid her portion of any bills for her medical care either by cash, check or

credit card, including payments to Valley Tumor Medical Group for outpatient cancer

treatments.

Class Counsel has visited with Ms. Swayze and obtained relevant medical records in her

possession.  Counsel has also requested records from both her oncologist and her local hospital.

Ms. Swayze has reviewed the complaint and various other documents from this litigation.  She

has discussed the litigation, her claims and her treatment in detail with counsel.  Ms. Swayze understands the role of a class representative and is willing to serve, to the best of her abilities, as a representative for the BMS consumer class.[2]

> **2.      Sheet Metal Workers' National Health Fund**

Plaintiffs submit that the Sheet Metal Workers' National Health Fund ("SMW") should also be added as a representative of Class 1.  SMW is a Taft-Hartley trust administered pursuant to the requirements of 29 U.S.C. § 186 by an equal number of trustees appointed by labor representatives and union representatives.  Its Fund Office is in Goodlettsville, Tennessee.  SMW provides a Supplemental Medicare Wraparound Plus ("SMW+") program that covers the Medicare Part B co-payments of its beneficiaries.  There are over 15,000 retirees and covered beneficiaries who receive benefits under the SMW+ program.

SMW, which is already a representative of Class 2, has made numerous Medicare Part B co-pay reimbursements for BMS Subject Drugs, including co-pays for Paraplatin and Taxol made on behalf of SMW beneficiaries at a time when both drugs enjoyed exclusivity.  *See, e.g.*, Class 2/3 Trial Exhibit No. 4012.  SMW also made Medicare Part B co-pay reimbursements for Taxol and Rubex after both drugs faced generic competition.  *Id.*  SMW has already provided BMS and the other defendants with voluminous records evidencing these payments.  *See* SMWMASS 000343-46; 000603-05; 000873-77; 001015--37; 001041-48; 001204-07; 001240-47; 001299-1301.

As the Court may recall, Glenn Randle, who has been on the Board of Trustees for the SMW for over twenty years and presently serves as its Chairman of the Board, testified at the

---

[2] In addition to Ms. Swayze, another individual Medicare Part B beneficiary who made co-payments for a BMS Subject Drug has indicated a willingness to serve as a class representative, and Class Counsel are awaiting the receipt of billing records before also proffering to the Court this additional class representative.

Class 2 and 3 trial.  Mr. Randle explained how the interests of the SMW are aligned with the

Medicare Part B beneficiaries that it serves:

> [I]n the case of the Supplemental Medicare Wraparound Plus
> ("SMW+") program for retirees, for which Sheet Metals seeks
> recovery in this litigation, because our payments are directly tied to
> what Medicare pays, we have little control over the cost of
> benefits.[3]  Therefore, though the retirees enrolled in the SMW+
> Plan are usually on fixed incomes, in reality we have no power
> over the cost of benefits; for example, if drug costs increase and
> are paid by Medicare, we pay our portion.  This means the
> increased cost may be passed on to the retiree who will be required
> to pay a higher amount to maintain SMW+ coverage.

Trial Affidavit of Glenn Randle, ¶ 3.  Thus, SMW is impacted exactly like a Medicare Part B

beneficiary when AWPs are inflated:  both make greater payments.

The SMW also has the same goals as a Class 1 member in this litigation:  to recover

overcharges resulting from BMS's AWP scheme.  As Mr. Randle testified:

> The Fund learned about this litigation through our attorneys in
> December 2004 and later that month decided to join the lawsuit.
> Although we obviously wanted to recover the money we overpaid
> for Defendants' drugs, we also wanted to represent other payors
> who were overcharged as we were.

Trial Affidavit of Glenn Randle, ¶ 7.

And, like your typical Class 1 member, Mr. Randle has no expertise in drug pricing or the

pharmaceutical market and, until this lawsuit was filed, was unaware of BMS's scheme:

> Other than my service to the Fund, I have no background in
> healthcare or the pharmaceutical industry.  Aside from what I have
> learned during this case, I do not know what "WAC" or "AWP"
> mean.  Instead, since 1996, the Fund has relied on its Third Party
> Administrator, Southern Benefits Administrators, Inc. ("Southern
> Benefits"), to handle the processing of claims.  I am certain that
> Southern Benefits did not know and therefore did not tell us that
> Defendants were deliberately inflating their AWPs.  Therefore, I

---

[3] The SMW+ program provides coverage for 20% of Medicare's allowable amount.  Trial Affidavit of Glenn
Randle, ¶ 4.

had not idea that was occurring or that the Fund was so
significantly overpaying for Defendants' drugs.

I am aware that the complaint alleges that, in order to help
their customers make more money, and thus make money
themselves, each of the defendants used AWP and the Medicare
reimbursement payment process to create spreads between the cost
at which a drug is acquired and the cost at which it is reimbursed.
I am aware that the effect of this was to cause the AWP we use as a
reimbursement benchmark to be inflated, *i.e.*, it was not a real
number or a real average.  No one at the Fund was aware of those
practices and I think it was unfair for the drug companies to take
advantage of us in this fashion.

Trial Affidavit of Glenn Randle, ¶¶ 9-10.

The claims of the SMW, which made AWP-based reimbursements for BMS Subject

Drugs on behalf of SMW beneficiaries, are typical of the claims of Class 1 Medicare co-payers

under Rule 23(a)(3)'s straightforward test.  Typicality is met when the claims of the

representative plaintiffs (i) arise from the same course of conduct that gives rise to the claims of

the other class members, and (ii) are based on similar legal theories.  *Priest v. Zayre Corp.*, 118

F.R.D. 552, 553 (D. Mass. 1988) (quoting *In re Elscint, Ltd. Sec. Litig.*, Civ. No. 85-2622-K, slip

op. at 18 (D. Mass. June 22, 1987)); *Randle v. SpecTran*, 129 F.R.D. 386, 391 (D. Mass. 1988);

*Fraser v. Major League Soccer, L.L.C.*, 180 F.R.D. 178, 181 (D. Mass. 1998); *Burstein v.*

*Applied Extrusion Techs.*, 153 F.R.D. 488, 491 (D. Mass. 1994); *see also* 1 A. Conte and

H. Newberg, NEWBERG ON CLASS ACTIONS § 3.13 (4th ed. 2002) (the typicality requirement is

usually met "when it is alleged that the same unlawful conduct was directed at or affected both

the named Plaintiffs and the class sought to be represented").  As the court in *M. Berenson* noted,

"[t]ypicality refers to the nature of the claim of the class representatives, and not to the specific

facts from which the claim arose or relief is sought."  *M. Berenson Co. v. Faneuil Hall*

*Marketplace, Inc.*, 100 F.R.D. 468, 470 (D. Mass. 1984) (citation omitted); *see also Duhaime v.*

*John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (finding typicality in case

involving deceptive scheme to induce plaintiffs to purchase life insurance policies even though

plaintiffs were deceived by different members of the sales force in slightly different ways,

because, as a general matter, plaintiffs were subjected to the same deceptive sales techniques).

The claims of the SMW and individual Class 1 Medicare beneficiaries arise from the

***same*** course of conduct and are based on ***similar*** legal theories:

- Both SMW and Class 1 members made co-pays on the basis of a statutorirly-mandated reimbursement formulas incorporating AWP.

- Both SMW and Class 1 members suffered the same damage:  paying inflated co-pays as a direct and proximate result of BMS's AWP scheme.

- Both SMW and Class 1 can pursue the same legal claims against BMS, *i.e.*, violations of state consumer protection acts.

*See also General Tel. Co. v. Falcon*, 457 U.S. 147, 159 n.15 (1982) (proof that an employer

operated under a general policy of discrimination may justify a class including ***both*** applicants

and current employees if the discrimination manifested itself in hiring and promotion practices in

the same general fashion); *Almenares v. Wyman*, 453 F.2d 1075, 1080 n.7 (2d Cir. 1971) (AFDC

recipients had claims typical of the claims of Aid to the Aged, Blind and Disabled recipients

because the same hearing regulations applied equally to both programs); *Ortiz v. Eichler*, 616 F.

Supp. 1046, 1056-57 (D. Del. 1985) (benefit recipients were proper representatives of both

recipients of, and applicants for, benefits because the hearing procedures that allegedly harmed

recipients are the same procedures that allegedly harmed applicants; the claims are coextensive).

The SMW has the same incentive to pursue its claims as do Medicare Part B beneficiaries

who made inflated co-pays.  SMW, in pursuing its own self-interest in the litigation, will also

necessarily advance the interests of the members of Class 1 because those interests coalesce.

Indeed, the interests of the SMW and the Class 1 members are perfectly aligned.  This is the

essence of Rule 23(a)(3)'s typicality test.  Moreover, the SMW may actually be a superior

- 8 -

representative than an individual Medicare beneficiary given that the SMW has made a broad

array of AWP-based reimbursements for BMS Subject Drugs and, unlike an individual plaintiff,

will not get sick.  In short, the burden of representation is more easily borne by SMW.  Finally,

the Court has found another Taft-Hartley Fund – the Pipefitters Local 537 – to be an adequate

and typical representative of **both** TPPs and consumers for purposes of representing Class 3.

Jan. 30, 2006 Consolidated Order Re: Motion for Class Certification at 6.  The Court should

make the same finding vis-à-vis SMW for Class 1.

## II.    CONCLUSION

For the foregoing reasons, the trial against BMS should go forward with Ms. Aaronson,

Ms. Swayze and SMW as adequate and typical Class 1 representatives.


DATED:  June 5, 2007                        By      /s/ Steve W. Berman
                                               Thomas M. Sobol (BBO#471770)
                                               Edward Notargiacomo (BBO#567636)
                                            Hagens Berman Sobol Shapiro LLP
                                            One Main Street, 4th Floor
                                            Cambridge, MA  02142
                                            Telephone: (617) 482-3700
                                            Facsimile: (617) 482-3003

                                            **LIAISON COUNSEL**

                                            Steve W. Berman
                                            Sean R. Matt
                                            Hagens Berman Sobol Shapiro LLP
                                            1301 Fifth Avenue, Suite 2900
                                            Seattle, WA  98101
                                            Telephone: (206) 623-7292
                                            Facsimile: (206) 623-0594

                                            Elizabeth A. Fegan
                                            Hagens Berman Sobol Shapiro LLP
                                            60 W. Randolph Street, Suite 200
                                            Chicago, IL  60601
                                            Telephone: (312) 762-9235
                                            Facsimile: (312) 762-9286

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR PLAINTIFFS**

001534-16  175703 V1

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on June 5, 2007, I caused copies of **PLAINTIFFS' RESPONSE TO BMS'S NOTICE OF LACK OF CLASS 1 REPRESENTATIVE AS TO DEFENDANTS BRISTOL-MYERS SQUIBB CO. AND ONCOLOGY THERAPEUTICS NETWORK CORP**. to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

    /s/ Steve W. Berman
Steve W. Berman

001534-16  175703 V1

# Exhibit 1



# Medicare Summary Notice

2 of 7

392214239
Page 1 of 3

March 28, 2007



ADD75    00000258



AGNES  SWAYZE
1016 W NEWGROVE ST
LANCASTER CA  93534-3310

**BE INFORMED:** Protect your Medicare number as you would a credit card number.

<table>
<tr><td colspan="2">

**CUSTOMER SERVICE INFORMATION**

**Your Medicare Number: 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A**

If you have questions, write or call:
  NHIC, Corp. (#31146)
  P.O. Box 272857
  Chico, CA 95927-2857

**Call: 1-800-MEDICARE (1-800-633-4227)**
  **Ask For Doctor Services**
TTY for Hearing Impaired: 1-877-486-2048
</td></tr>
</table>

This is a summary of claims processed on 02/26/2007.

## PART B MEDICAL INSURANCE - ASSIGNED CLAIMS

| Dates of Service | Services Provided | Amount Charged | Medicare Approved | Medicare Paid Provider | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| | Claim number 13-07039-901-902 | | | | | b,c,d |
| | **Valley Tumor Med Grp,** | | | | | e |
| | 44105 15Th St West Ste 207, | | | | | |
| | **Lancaster, CA 93534-4088** | | | | | |
| | Referred by: Dr. Yeganeh, Jehanguir, M.D. | | | | | |
| | Dr. Shamasunder, Hesaragha K. | | | | | |
| 03/07/03 | 1 Office/outpatient visit, est (99211) | $40.00 | $22.88 | $18.30 | $4.58 | |
| 03/07/03 | 1 Chemotherapy, infusion method (96410) | 150.00 | 0.00 | 0.00 | 0.00 | a |
| 03/07/03 | 3 Dexamethasone sodium phos (J1100) | 18.00 | 0.30 | 0.24 | 0.06 | |
| 03/07/03 | 32 Ondansetron hcl injection (J2405) | 256.00 | 194.88 | 155.90 | 38.98 | |
| 03/07/03 | 16 Carboplatin injection (J9045) | 2,400.00 | 2,175.52 | 1,740.42 | 435.10 | |
| 03/07/03 | 1 IV infusion therapy, 1 hour (90780-59) | 100.00 | 0.00 | 0.00 | 0.00 | a |
| | **Claim Total** | **$2,964.00** | **$2,393.58** | **$1,914.86** | **$478.72** | |

**THIS IS NOT A BILL - Keep this notice for your records.**

PMED52
070103