UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE ) <br> LITIGATION ) <br> ) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> ALL ACTIONS ) <br> ) | MDL No. 1456 <br><br> CIVIL ACTION: 01-CV-12257-PBS |

## DECLARATION OF LEROY TOWNSEND

I, Leroy Townsend declare as follows:

1. My name is Leroy Townsend. I am 84 years-old and I live in Naples, Florida. The Court has appointed me as a representative of a class of consumers who paid Medicare Part B co-payments for AstraZeneca's drug Zoladex.

2. I took Zoladex from 1997 through March 2004. Prior to that time I took a competing drug, Lupron. I typically received an injection of Zoladex every 3 months. During that time Medicare Part B paid for 80% of the cost of my Zoladex injections. I was billed for and paid for the remaining 20% myself, with a few exceptions.

3. My lawyers in this case are Jeffrey Kodroff and John Macoretta of the firm of Spector, Roseman & Kodroff, P.C. in Philadelphia. I first spoke to and retained my lawyers in 2001, in connection with the *Lupron* case.

4. Since this case was filed I have been in regular contact with my lawyers. We have discussed my claims; the progress of the litigation; discovery issues; the potential trial and the potential settlement of the case.

5. My lawyers have always answered my questions and kept me advised of the progress of this case. Mr. Macoretta traveled to Florida to meet with me and prepare me for my deposition, where he represented me.

6. Throughout 2007 I have spoken on the phone with Mr. Macoretta to discuss the upcoming jury trial and my participation in it. In April, Mr. Macoretta advised me of possible settlement discussions with AstraZeneca relating to the class of people I represent. Mr. Macoretta and I had several phone calls to discuss the progress of settlement negotiations, and our options for settlement. During all of our calls, Mr. Macoretta always asked me if I had any objections to the way my lawyers wanted to proceed. I did not.

7. I understood that AstraZeneca was proposing a settlement whereby they would only pay money to people who actually made claims for their Zoladex overcharges. Mr. Macoretta and I discussed the risks and rewards of going to trial against AstraZeneca. We also discussed the benefits of settlement, including insuring that the Class receives some compensation, and that the Class would receive payment much sooner under a settlement.

8. Mr. Macoretta and I also discussed the benefits and risks of a claims-made settlement. After these discussions I had no objection to reaching a settlement based on the number of claims actually made. We discussed ways to encourage class members to file claims, including making the settlement forms as easy to understand as possible and providing class members double the amount of money they were overcharged.

9. During our discussions Mr. Macoretta advised me that part of any settlement would include a provision for attorney fees and costs, which I understand are substantial.

10. I believe my attorneys have worked hard and provided good service to me and the Class, therefore I do not object to the provision for attorney fees in the Settlement Agreement.

3

11.     I understand that the claims of persons like myself under the settlement will entitle us to double the amount we were overcharged for Zoladex. In my case, my lawyers have calculated that my claim amount would be over $11,000.00. I believe this is an excellent result for myself and all other class members.

12.     I understand that the settlement with AstraZeneca is the result of years of litigation and many hours of negotiations. I believe my lawyers did an excellent job in negotiating the settlement.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  May 30, 2007

_____
Leroy Townsend