# EXHIBIT B

Page 1

```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS


In Re:                              )
PHARMACEUTICAL INDUSTRY              ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE              ) MDL No. 1456
LITIGATION                           ) Pages 1 - 49




                      MOTION HEARING

          BEFORE THE HONORABLE PATTI B. SARIS
             UNITED STATES DISTRICT JUDGE




                    United States District Court
                    1 Courthouse Way, Courtroom 19
                    Boston, Massachusetts
                    February 27, 2007, 10:10 a.m.
```

```
                     LEE A. MARZILLI
                  OFFICIAL COURT REPORTER
                United States District Court
                1 Courthouse Way, Room 3205
                     Boston, MA  02210
                       (617)345-6787
```

Page 22

1  this. I've got two huge databases of the federal documents
2  that they produced, the Texas documents. I've cross-walked
3  them. If I can show you that chart, you'll see that they're
4  providing -- you know, but my point is, my question is,
5  because this is not just Texas: Do you want me to include --
6  for example, you've got the state of Pennsylvania, and
7  they've got documents. Can I include some of their documents
8  in this too so you'll see the whole picture? Because there's
9  a lot of folks doing discovery --
10      THE COURT: I don't know enough is the thing. You
11  can include what you think you need to include. I am telling
12  you I am working -- I have thousands of documents right now
13  that I'm reviewing based on the bench trial that I've done.
14  I have the Neurontin case. I have twelve state Attorney
15  General cases. I have the second stage of the AWP case.
16  I've got these. I know the issues, so in some sense it makes
17  sense, but I can't sit and go through thousands of
18  documents. That's what I can't do.
19      MR. BREEN: I know, Judge. That's what we're
20  trying to prevent, and that's the point. That is the point.
21  We're trying to prevent that from ever happening because
22  these plaintiffs have done all this discovery. It's there.
23  Rather than be moving to compel every week to get these
24  documents --
25      THE COURT: I tell you what, you two confer.

Page 23

1       MR. BREEN: We will.
2       THE COURT: And give him a hundred of your best
3  documents from all the categories. And then if you can't
4  agree on what should be produced, either I or Judge Bowler
5  will go through it as soon as possible and jump-start this.
6  I will simply say this: If the issue is temporal, produce
7  them. I don't know what the big issue is. If the issue is
8  it's the drugs in issue in this, produce them. The problem
9  for me is, if it's unique to some individual drug that's
10 another drug -- and how many other drugs involved in the
11 other litigation?
12      MR. DALY: Over a hundred, Judge.
13      MR. BREEN: Well, there's multiple indices, but,
14 Judge --
15      THE COURT: So you need to be reasonable. You need
16 to do the crosscutting documents, and maybe you can come up
17 with a thousand that you think are crosscutting as opposed to
18 every -- I've seen these documents on Zoladex and -- you go
19 thousands and thousands of pages that would not have
20 relevance to your issues.
21      MS. BROOKER: We can't do that, your Honor, because
22 we don't have access to the documents, so we don't know
23 what's relevant.
24      THE COURT: I know. I'm simply saying there's
25 something called overly burdensome and overly broad. Overly

Page 24

1  burdensome does not apply because it's already on a CD.
2  Overly broad might. So I think what needs to happen is any
3  sales and marketing documents that relate to other drugs in
4  the time period which basically talk about marketing the
5  spread -- is that your big issue right now?
6       MR. BREEN: That's it.
7       THE COURT: Okay. I've seen these documents in my
8  other litigation. There are documents that are put out by
9  sales teams: "This is how you put together the spread. This
10 is how you put together --" That should come out, but not
11 every internal document about every drug. I mean, that's
12 overly broad.
13      Now, I've seen these kinds of documents, not from
14 Abbott, in fairness, from Glaxo, Bristol, Johnson & Johnson,
15 AstraZeneca, and Schering-Plough. I've seen the differences
16 in the kinds of documents, and there are crosscutting, you
17 know, message-to-sales-team kinds of documents, which in
18 general should be produced. There's very specific stuff to
19 each document which doesn't need to be; you know, debates
20 about the --
21      MS. BROOKER: We understand. I think we
22 understand, your Honor. Our concern is just, again, the
23 discovery clock is ticking. All the motions to compel have
24 already happened, and now the documents are just waiting for
25 us to use. And we are going to reinvent the wheel. We are

Page 25

1  going to be filing, I can tell you now, based on Abbott's
2  conduct in Texas and in this case, we are going to be filing
3  motion to compel after motion to compel to get the same exact
4  set of documents that they've already produced.
5       THE COURT: Do you feel like you now have a
6  good-faith basis for amending your complaint to add any
7  drugs?
8       MS. BROOKER: Well, your Honor, I think the problem
9  is that we're not necessarily using some of those documents
10 to amend the complaint. That's not the issue. Abbott, and
11 particularly even with the drugs at issue here, Abbott
12 markets drugs in a broad way. There are no carved-out subset
13 of documents on marketing, for example, that only talk about
14 this drug or that. It's a broad-based set of marketing
15 documents.
16      THE COURT: And to the extent that there are, you
17 should have them produced. To the extent that they're very
18 unique to a particular drug and a particular doctor in a
19 particular location, it may be overly broad if it's not one
20 of the drugs you're suing about.
21      MS. BROOKER: I understand, but this will require
22 motion, motions practice.
23      THE COURT: I can't help that. What can I do? You
24 can't have a hundred documents relating to a hundred drugs
25 when you're suing on four. But if there are crosscutting