**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| *In re:* PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| | ) |
| **THIS DOCUMENT RELATES TO:** | ) ) |
| *United States ex rel. Edward West, et al., v. Ortho-McNeil Pharmaceutical, Inc. and Johnson & Johnson.* | ) ) ) ) |
| CIVIL ACTION NO. 06-12299-PBS | ) ) |

MDL No. 1456

Civil Action No. 01-12257-PBS

Hon. Patti B. Saris

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE**
**COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff/Relator Edward West alleges that defendant Ortho-McNeil Pharmaceutical, Inc. ("OMP"), and its parent company, defendant Johnson & Johnson, Inc. ("J&J"), reported or caused to be reported "inflated" AWPs for two drugs, Levaquin and Ultram. The AWPs are alleged to have been "inflated" because they did not reflect discounts, rebates, and other remuneration to purchasers of those drugs, and therefore did not accurately reflect an actual average of wholesale prices, i.e., were not a literal reflection of the prices at which drugs were sold by wholesalers in the market. West contends that the defendants violated the federal False Claims Act, 31 U.S.C. §3729 *et seq*., and similar statutes enacted by the states of California, Delaware, Florida, Hawaii, Massachusetts, Nevada, Tennessee, Texas, and Virginia, and the District of Columbia, on whose behalf West purports to bring this action.

As we explain below, the Court lacks subject matter jurisdiction over West's claims, for three reasons. First, West's claim that the defendants caused "inflated" AWPs to be reported (*i.e.*, that AWPs that were not a literal reflection of the prices at which drugs were sold

by wholesalers in the market) were publicly disclosed before West filed this lawsuit in

November 2003.  *See, e.g.,* 31 U.S.C. §3730(e)(4).  Second, West's claims on behalf of the State

of Nevada are barred because Nevada is pursuing identical claims against these defendants in

another lawsuit pending in this same MDL proceeding.  Finally, West's claims on behalf of the

State of Hawaii are barred because Hawaii also is pursuing claims identical to West's in its own

lawsuit.

## BACKGROUND

**A.      West's Allegations And Procedural History In The Northern District of Illinois.**

Plaintiff/Relator Edward West, a former Ortho-McNeil sales representative, was

fired in 2000 for engaging in improper marketing activities – activities that another federal judge

characterized as "an extremely serious violation of several [OMP] policies."  *West v. Ortho-*

*McNeil Pharm. Corp.*, 2003 WL 260710, at *8 (N.D. Ill. January 29, 2003) (Exhibit 1).  After

being fired, West sued OMP, alleging that he was terminated on account of his race, his age,

and/or his gender.  On August 28, 2003, the Court issued a directed verdict on West's

discrimination claims.[1]

Less than three months later, on November 17, 2003, West filed this lawsuit in the

United States District Court for the Northern District of Illinois, alleging violations of the federal

False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), and the virtually-identical statutes enacted

by the states of California, Delaware, Florida, Hawaii, Illinois, Massachusetts, Nevada,

---

[1] In February 2005, the Seventh Circuit remanded West's race discrimination claim for a new
trial.  *See West v. Ortho-McNeil Pharmaceutical, Inc.*, 405 F.3d 578 (7th Cir. 2005).  The case
subsequently settled, without any acknowledgement of wrongdoing by OMP.

Tennessee, Texas, Virginia, and the District of Columbia.[2]  As required by the FCA, West's complaint was filed under seal while the governments on whose behalf West purports to bring this action investigated his claims.  In the summer of 2006, each of the governments on whose behalf West filed this lawsuit notified the Court that they would not intervene on West's behalf. In June 2006, the First Amended Complaint (which had been filed under seal in March 2004) was unsealed and served on the defendants.

West alleges that since "at least 1997," OMP has engaged in an "unlawful marketing strategy" designed to induce hospitals and physicians to prescribe two medications, Levaquin and Ultram, for patients who are insured by federal healthcare programs.  First Amended Complaint (hereafter, the "Complaint") ¶¶ 1-2.  This "unlawful marketing strategy" is alleged to have had two distinct components.

First, West contends that the defendants marketed Levaquin and Ultram for "off-label" (non-FDA-approved) indications.  As we explain below, those allegations are not before this Court.

The second unlawful marketing scheme alleged by West is the misrepresentation of the AWP of Levaquin and Ultram.  Specifically, West contends that OMP "lowered the actual price" paid by purchasers of Levaquin and Ultram through the use of discounts and rebates, which were not reflected in AWPs that the defendants allegedly caused to be published.  *See* West's Opposition to Defendants' Motion to Vacate CTO 31 (Exhibit 2) at 6-7; Complaint ¶¶

---

[2] West has since voluntarily dismissed his claims on behalf of the State of Illinois (Count VII). As the Court is aware, Illinois, like Nevada and Hawaii, is pursuing its own AWP-related claims against these defendants and others.  *The People of the State of Illinois v. Abbott Laboratories, et al.*, Case No. 1:06-5528 (N.D. Ill.), MDL No. 1456.

72-77.  In perpetuating "inflated" AWPs, West contends that the defendants made "false

statements" and caused "false claims" to be submitted to Medicare and Medicaid.  Complaint ¶¶

104-05, 113, 119-21, 127-29, 135-37, 142-44, 150-52, 158-60, 166-68, 174-76, 182-84, 190-92,

198-200.

**B.     West's Request For Transfer To This MDL Proceeding.**

On August 22, 2006, West filed a notice of related action with the Clerk of the

Judicial Panel on Multidistrict Litigation ("JPML").  *See* Exhibit 3.  In support of his request for

transfer, West emphasized the similarity between his allegations and those in the other cases

pending in this MDL proceeding:

> This is a 'tag-along' action per Panel Rule 1.1 because it involves
> common questions of fact with actions previously transferred in
> this MDL . . . .
>
> [West] alleges that Ortho-McNeil used fraudulent marketing and
> billing schemes to inflate the average wholesale price that hospitals
> could charge to government programs, including Medicare and
> Medicaid, including hidden kickbacks, "grants" and "speakers
> fees."  He also alleges that Ortho-McNeil sales representatives
> were instructed on how to advise the hospital to hide rebates and to
> alter their billing methods on Levaquin in order to bill Medicare at
> a higher AWP than they should have.  *See* Amended Complaint
> paragraphs 67, 71, 72-77, 79-87.

*Id.*

Eventually, the JPML issued Conditional Transfer Order 31, which the defendants

moved to vacate.  On December 20, 2006, the JPML granted in part and denied in part

defendants' motion.  Specifically, the JPML transferred the case to this Court for inclusion in

this MDL, but "the claims related to off-label marketing [were] simultaneously separated and

remanded to the Northern District of Illinois."  *See* JPML December 20, 2006 Transfer Order at

4

2 (Exhibit 4).  Thus, the only claims currently pending before this Court are West's False Claims Act causes of action premised on the misrepresentation or "inflation" of AWP.

## C.    Defendants' Other Pending Motion To Dismiss

While this case was still pending in the Northern District of Illinois (and before West filed his notice of related action), the defendants moved to dismiss the Complaint for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b). Defendants also argued that West's allegations do not support a cause of action under the False Claims Act, pursuant to Rule 12(b)(6).

Defendants' motion to dismiss was fully briefed, but not yet decided, when the JPML issued its transfer order.  The net effect of the JPML's order transferring and severing West's AWP claims from his off-label marketing claims is that defendants' motion to dismiss West's AWP claims pursuant to Rules 9(b) and 12(b)(6) is now pending before this Court.  At the same time, the portion of the motion to dismiss directed to West's allegations of off-label marketing remains pending before Judge Virginia Kendall in the Northern District of Illinois, who has not yet ruled on that portion of the motion.

## <u>ARGUMENT</u>

## I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER WEST'S CLAIMS BECAUSE THEY ARE BASED ON PUBLICLY DISCLOSED ALLEGATIONS.

The False Claims Act is unique in that it allows private citizens to assert claims on behalf of the United States.  However, Section 3730(e) of the FCA deprives the Court of subject matter jurisdiction over a *qui tam* action that is "based upon the public disclosure of allegations or transactions . . . unless . . . the person bringing the action is an original source of

5

the information." *United States ex rel. O'Keeffe v. Sverdup Corp.*, 131 F. Supp. 2d 87, 90-91 (D. Mass. 2001) (Saris, J.) (*citing* 31 U.S.C. § 3730(e)(4)(A)).[3]  This provision, referred to as the "public disclosure" bar, is intended to balance "the 'golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own.'"  *Id.*

　　　　As this Court previously has explained, deciding whether a claim is precluded by the public disclosure bar entails a three-step analysis:

　　　1.　　Has there been a "public disclosure" within the meaning of the FCA?

　　　2.　　If so, are the plaintiff's claims are "based on" the public disclosure?

　　　3.　　If so, is the relator an "original source?"

*Id.* at 91.

　　　　As we explain below, application of this analysis to West's allegations leads to the conclusion that the Court lacks jurisdiction over his AWP claims.  The crux of those claims is that the defendants caused to be reported AWPs that were "inflated" because they did not accurately reflect the prices actually paid for the drugs by providers.  Those allegations, against these same defendants, were made and publicly disclosed well before West filed his lawsuit.

---

[3] The state and D.C. statutes under which West asserts claims are identical in all pertinent respects to the FCA.  *See* West's Ann.Cal.Gov.Code §  12652(d)(3)(A) (California); 6 Del.C. § 1206(c) (Delaware); West's F.S.A. §  68.087(3) (Florida); H.R.S. § 661-28 (Hawaii); M.G.L.A. 12 §  5G(3) (Massachusetts); N.R.S. § 357.100(1) (Nevada); T.C.A. § 71-5-183(3)(2)(A) (Tennessee); V.T.C.A., Human Resources Code § 36.113(b) (Texas); Va. Code Ann. §  8.01-216.8 (Virginia); DC St. § 2-308.15(b)(2)(A) (D.C.)  For simplicity sake, we refer only to the provisions of the FCA.

**A.**     **The Allegations Underlying West's Complaint Were "Publicly Disclosed" Before West Filed His Lawsuit in November 2003.**

The public disclosure bar applies to "allegations or transactions" made in a "criminal, civil, or administrative hearing, in a congressional, administrative, or Government [sic] Accounting Office report, hearing, audit, or investigation, or [in] the news media . . . ." *O'Keefe*, 131 F.Supp.2d at 91 (citing 31 U.S.C. § 3730(e)(4)(A)).[4]  Here, the relevant "allegations or transactions" that were publicly disclosed include the following:

*The Master Amended Class Action Complaint and Related Media Coverage*

- As West argued in seeking transfer of his case to this MDL, his allegations are virtually identical to those in previously-filed cases.  *See* Exhibit 3.

- The original lawsuits filed in 2001 and 2002 that eventually became the backbone of this MDL were reported on extensively in the major media – including the allegations that J&J had caused "inflated AWPs" to be reported.  *See* articles attached as Exhibit 5.

- The Master Amended Class Action Complaint (MACC), filed on September 6, 2002 (over a year before West filed his Complaint) alleged that J&J and OMP "engaged in an ongoing scheme to inflate AWPs and to market the spread to increase the sales of its products."  *See* MDL 1456 Docket No. 148., ¶ 294.  One manner in which AWPs were "inflated" was that they failed to include "rebates, hidden price discounts and/or other unlawful financial inducements" to purchasers.  *Id.* ¶ 4.  *See also id.* ¶¶ 160, 165, 340(g), 361.

- The Amended MACC filed on June 18, 2003 (five months before West filed his Complaint) confirmed that these allegations relate to specifically to Levaquin and Ultram, which are the only two drugs at issue in West's Complaint.  *See* Amended MACC ¶ 436.

*The State of Nevada's Complaint*

- In 2001 (a year and a half before West filed his Complaint) the State of Nevada filed suit alleging that J&J caused false or inflated AWPs to be reported for

---

[4] The phrase "civil hearing" has been interpreted to encompass civil litigation generally.  *See, e.g., United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 744-746 (3rd Cir. 1997).

CH1 3893414v.1

Levaquin and Ultram, the two drugs at issue in West's Complaint. *See* State of Nevada's Amended Complaint ¶ 302 (MDL 1456 Docket No. 922).

- Nevada alleges that J&J has "utilized other improper inducements to stimulate sales of its drugs," such as "off-invoice inducements" and "substantial discounts" to purchasers, which were "designed to result in a lower net cost to the provider while concealing the actual wholesale price beneath a high invoice price. *Id.* ¶ 12. As a result, Nevada contends, J&J misrepresented AWP and "Best Price," and caused providers to submit false claims to federal healthcare programs. *Id.* ¶¶ 467-477.

### *Government Reports and Investigations*

- The Court's appointed expert, Dr. Berndt, has catalogued the numerous GAO, Congressional, and other reports dating back to 1992, which acknowledged and discussed the disparity between AWP and the actual prices paid by purchasers, net of discounts and rebates. *See* Exhibit 6 (Attachment B to the February 9, 2005 Report of Independent Expert Professor Ernst R. Berndt, MDL 1456 Docket No. 1384).

- As noted in the MACC, numerous federal agencies and Congress had been investigating what plaintiffs referred to as "questionable practices regarding the industry's calculations of AWPs and for offering illegal incentives to providers" for years before West filed his Complaint. MACC ¶ 151.

### *The Medicare Modernization Act*

- In June 2003, five months before West filed his Complaint, the Medicare Modernization Act was introduced in Congress.

- As this Court noted, "[t]he statute and the legislative history [of the Medicare Modernization Act] indicate that by 2003, [AWP] had become a term of art. At that point, Congress clearly did understand AWP was different than average sales price and was not reflective of actual prices in the marketplace." *See* November 2, 2006 Memorandum and Order at 23-24 (MDL 1456 Docket No. 3299). "[A]s soon as that Medicare bill went through, the world was on notice [that AWP was not a literal reflection of the prices at which drugs were sold by wholesalers in the market]. The gig was up." *See* November 7, 2006 Transcript of Proceedings at 201:15-16 (Exhibit 7).

Each of these allegations qualifies as a "public disclosure" within the meaning of

the FCA. 31 U.S.C. § 3730(e)(4)(A).

**B.**     **West's Claims Are "Based Upon" The Public Disclosures.**

Although the First Circuit has not had occasion to interpret the phrase "based upon," this Court has held that allegations or transactions are "based upon" public disclosures where the relator's allegations are "similar to or the same as those that have been publicly disclosed . . . regardless of where the relator obtained his information." *O'Keeffe*, 131 F. Supp. 2d at 92.  Under this standard, it does not matter whether West was subjectively aware of the public disclosures referenced above -- only whether his allegations are "similar to" the publicly disclosed allegations. *See United States ex rel. Foundation Aging the Elderly v. Horizon West, Inc.*, 265 F.3d 1011, 1015 (9th Cir. 2001).

West's allegations indisputably are "similar to" (if not "the same as") those contained in the public disclosures.  Indeed, West emphasized the identity of his allegations with those in previously-filed cases in his pleadings before the JPML.  *See* Exhibits 2 and 3.  Specifically, West argued that his case and those already in this MDL involve "the same common set of facts, *viz.*, whether the defendant pharmaceutical companies engaged in fraudulent marketing practices designed to inflate the AWP of their products."  Opposition at 3-4 (Exhibit 2).  As he further explained, "the activities described and enumerated by Judge Saris . . . could hardly be more consistent with the allegations set forth in West's complaint.  The AWP MDL and West's complaint are both focused on illegal and fraudulent marketing schemes designed to increase market share or sales, while allowing the Defendants to maintain an artificially high AWP."  *Id.* at 10.  *See also id.* at 12 (characterizing his allegations as "squarely on point with the issues surrounding the litigation that has been transferred to the AWP MDL.")

9

Accordingly, West's AWP claims are "based upon" the public disclosures described in the previous section.

      C.      **West Is Not An "Original Source."**

      Because West's allegations of fraud are based upon public disclosures, the Court lacks subject matter jurisdiction over his claims unless West proves that he is an "original source." *United States ex rel. Bahrani*, 465 F.3d 1189, 1207 (8th Cir. 2003).  The FCA defines an "original source" as an individual who: (1) has direct and independent knowledge of the information on which the allegations are based, and (2) has voluntarily provided the information to the Government before filing an action under this section which is based on the information. 31 U.S.C. §3730(e)(4)(B).[5]

      In *Rockwell Intl. Corp. v. United States*, 127 S.Ct. 1397, 1408 (2007), the Supreme Court held that the term "allegations" in the original source provision refers to the relator's allegations, not the "publicly disclosed" allegations.  Thus, to establish that he is an "original source" under the FCA, West must prove that he has direct and independent knowledge that the defendants reported false or inflated AWPs.  As we explain below, West cannot prove that he is an "original source."

---

[5] Those same two requirements also are incorporated into each of the state and D.C. statutes under which West's other claims are asserted.  *See* West's Ann.Cal.Gov.Code § 12652(d)(3)(B) (California); 6 Del.C. § 1206(c) (Delaware); West's F.S.A. § 68.087(3) (Florida); H.R.S. § 661-28 (Hawaii); M.G.L.A. 12 § 5G(3) (Massachusetts); N.R.S. § 357.100(2) (Nevada); T.C.A. § 71-5-183(e)(2)(B) (Tennessee); V.T.C.A., Human Resources Code § 36.113(b) (Texas); Va. Code Ann. § 8.01-216.8 (Virginia); DC St. § 2-308.15(b)(2)(B) (D.C.)

10

1.      **West Does Not Have Direct and Independent Knowledge
        That The Defendants Caused To Be Reported "Inflated" AWPs.**

To be deemed to have both "direct" and "independent" knowledge of wrongdoing, as required by the FCA's original source provision, the relator's knowledge must be acquired "through her own efforts without an intervening agency" (direct) and not dependent upon information contained in any public disclosures (independent).  *O'Keeffe*, 131 F. Supp. 2d at 93.  "A relator has direct knowledge when he sees it with his own eyes."  *United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003).

West's allegations relating to discounts and gratuities are largely second-hand or speculative.  For example, while West alleges that sales representatives "were instructed" to encourage hospitals not to report rebates from OMP (Complaint ¶ 75), he does not allege that he (or anyone else) actually did so.  *See also id.* ¶ 84 ("sales representatives were instructed . . .").

To be sure, West claims to have participated directly in the provision of at least some forms of "remuneration" to purchasers of Levaquin and Ultram.  But that does not establish that West is an "original source."  The crux of the claims before this Court is not that the defendants paid kickbacks, but that they caused "inflated" AWPs to be reported.  *See* Exhibit 3. The allegations regarding discounts, rebates, and other remuneration are the means by which the defendants lowered the purchase price of Levaquin and Ultram to providers.  But to prevail on the AWP claims pending before this Court, West must <u>also</u> prove that the alleged discounts, rebates, or other remuneration, should have been, but actually were not, reflected in AWPs that he contends the defendants caused to be reported.  *See Rockwell Intl.*, 127 S.Ct. at 1410.  By his own admission, however, West has no direct or independent knowledge of any "inflated" AWPs that the defendants allegedly reported or caused to be reported.  Rather, he simply asserts that

11

"*on information and belief* Ortho-McNeil did not accurately and fully report the lower prices resulting from Ortho-McNeil's hospital rebate program as required by the Medicaid and other government funded programs."  Complaint ¶ 77.  Thus, the Complaint does not identify a single allegedly "false" or "inflated" AWP, and West offers no first-hand indication that the defendants' alleged conduct had *any* impact on the AWP of either Levaquin or Ultram.[6] West's admissions belie any claim of "direct and independent knowledge" that the defendants reported "inflated" AWPs that caused the submission of "false claims."  *See Rockwell Intl.*, 127 S.Ct. at 1410; *In re: Natural Gas Royalties* Qui Tam *Litig.*, No. 99-MD-1293, 2006 WL 3589009, at *19 (D. Wy. Oct. 20, 2006)).

### 2.     West Was Not The Source Of The Public Disclosures.

In addition to satisfying the "direct and independent knowledge" requirement, the False Claims Acts of California, Hawaii, Nevada, and D.C. require a relator whose allegations are based upon public disclosures to prove that he is the person "whose information provided the basis or caused the making of the investigation, hearing, audit or report that led to the public disclosure" in order to qualify as an original source.[7]  West cannot prove that he was the person whose information provided the basis for the public disclosures identified in Section I(A) above, such as the allegations in the MACC, the complaint filed by the State of Nevada, the media articles attached as Exhibit 5, or any of the GAO or other Congressional reports referenced in Exhibit 6.  This provides a separate basis for dismissing West's claims under the False Claims

---

[6] Similarly, West does not identify a single "false claim" that the defendants caused to be submitted, conceding that he requires discovery to obtain evidence to establish this fundamental aspect of his claims.  *Id.* ¶ 108.

[7] West's Ann.Cal.Gov.Code §  12652(d)(3)(B) (California); H.R.S. § 661-28 (Hawaii); N.R.S. § 357.100(2) (Nevada); DC St. § 2-308.15(b)(2)(B) (D.C.)

Acts of California (Count III), Hawaii (Count VI), Nevada (Count IX), and the District of Columbia (Count XIII).

## II. WEST'S CLAIMS ON BEHALF OF THE STATE OF NEVADA (COUNT IX) ARE BARRED BECAUSE NEVADA IS PURSUING ITS OWN LAWSUIT.

The Nevada False Claims Act states that "[a]n action may not be maintained by a private plaintiff pursuant to this chapter . . . [i]f the action is based upon allegations or transactions that are the subject of a civil action or an administrative proceeding for a monetary penalty to which the state or political subdivision is already a party."  N.R.S. § 357.080(3)(b). This provision is virtually identical to Section 3730(e)(3) of the federal FCA, which has been held to be a jurisdictional requirement.  *See United States ex rel. Prawer & Co. v. Fleet Bank of Maine*, 24 F.3d 320, 326 (1st Cir. 1994).  Nevada courts have held that the provisions of the Nevada statute should be interpreted in accordance with the corresponding provisions of the federal False Claims Act.  *Simonian v. Univ. and Cmty. Coll. Sys. of Nevada*, 128 P.3d 1057, 1060 (Nev. 2006).

West's claims on behalf of the State of Nevada (Count IX) are barred by the Nevada statute.  As explained above, the State of Nevada is pursuing its own lawsuit against OMP and J&J alleging that they caused AWPs to be reported that were "inflated" because they failed to take into account discounts, rebates, and other forms of remuneration to purchasers. *Supra*, page 7.  In its lawsuit, Nevada contends that the defendants "stated fraudulent AWPs" – including for Levaquin and Ultram specifically – by providing "impermissible inducements" to providers that were "designed to result in lower net cost to the provider while concealing the actual wholesale price beneath a high invoice price."  *See* Amended Complaint in *State of Nevada v. American Home Products Corp., et al.*. MDL 1456, Docket No. 922-1, ¶ 312.  The

CH1 3893414v.1

State of Nevada also alleges that this conduct resulted in the under-reporting of "Best Price" to the State's Medicaid program. *Id.* ¶¶ 383-412. Because West's claims are based on the same "allegations or transactions" as the claims being pursued by the State of Nevada, Count VI is barred by N.R.S. § 357.080(3)(b).

## III.    WEST'S CLAIMS ON BEHALF OF THE STATE OF HAWAII (COUNT VI) ARE BARRED BECAUSE HAWAII IS PURSUING ITS OWN LAWSUIT.

Like the Nevada False Claims Act, the Hawaii False Claims Act bars private citizens from pursuing claims where the allegations or transactions are also "the subject of a civil or criminal investigation by the State, civil suit, or an administrative civil money penalty proceeding in which the State is already a party." HI ST § 661-27(e)(3). Like Nevada, the State of Hawaii is pursuing its own AWP-related claims against J&J and OMP. *See* Amended Complaint in *State of Hawaii v. Abbott Laboratories Inc., et al.*. MDL 1456, Civil Action No. 06-1-0730-04, ¶¶ 23, 41-50, 55, 58, 86-88 (Exhibit 11). Hawaii alleges that the defendants caused AWPs to be reported that were "inflated" because they failed to take into account discounts, rebates, and other forms of remuneration to purchasers. *Id.* ¶¶ 55, 88. Hawaii also has alleged that the defendants' inflation of AWPs resulted in the under-reporting of the appropriate price for the drugs to the State's Medicaid program. *Id.* ¶¶ 72-78. Because West's claims on behalf of the State of Hawaii are based on the same allegations as those in the suit filed by the State of Hawaii, Count VI should be dismissed pursuant to HI ST § 661-27(e)(3).

14

## CONCLUSION

WHEREFORE, defendants Johnson & Johnson, Inc. and Ortho-McNeil

Pharmaceutical, Inc. respectfully request that the Court dismiss West's claims with prejudice for

lack of subject matter jurisdiction.


Date:  June 11, 2007                    Respectfully submitted,

                                        ORTHO-MCNEIL PHARMACEUTICAL,
                                        INC. and JOHNSON AND JOHNSON, INC.

                                        By: /s/  Scott D. Stein
                                            One of Their Attorneys

                                        Scott R. Lassar
                                        Scott D. Stein
                                        Jordan S. Ginsberg
                                        SIDLEY AUSTIN LLP
                                        One South Dearborn Street
                                        Chicago, Illinois  60603
                                        (312) 853-7000

15

## <u>CERTIFICATE OF SERVICE</u>

I, Jordan S. Ginsberg, certify that on June 11, 2007, I electronically filed the

foregoing document with the Clerk of the Court for the District of Massachusetts using the

court's CM/ECF system.

A copy of the foregoing also has been served on the following individuals by

depositing a copy in the U.S. mail, first-class postage pre-paid:

George A. Zelcs
Korein Tillery, LLC
205 N. Michigan Plaza
Suite 1950
Chicago, IL 60601


Samuel S. Miller
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604


John Bruegger
Simmons Cooper LLC
707 Berkshire Blvd.
East Alton, IL 62024

Mary Louise Cohen
Phillips & Cohen LLP
2000 Massachusetts Ave N.W.
Washington, DC 20036

Erika A. Kelton
Phillips & Cohen LLP
2000 Massachusetts Ave, N.W.
Washington, DC 20036

Timothy D. Nimrod
Gregory Hooggasian, Esq.

16

Medicaid Fraud Control Unit
100 W. Randolph St.
12th Floor
Chicago, IL 60601

Lisa Madigan
Attorney General of Illinois
100 West Randolph Street
12th Floor
Chicago, IL 60601

Charles J Crist, Jr.
The Capitol PL-01
Tallahassee, FL 32399-1050

M. Jane Brady
Carvel State Office Building
Consumer Protection - 5th Floor
820 North French Street
Wilmington, DE 19801

Collin Wong
Bureau of Medi-Cal Fraud
Office of the Attorney General
1425 River Park Drive
Ste. 300
Sacramento, CA 95815

L Timothy Terry
Office of the Attorney General,
100 North Carson Street
Carson City, NV 89701

Randall L Clouse
Medicaid Fraud Control Unit
900 East Main St.,
5th Fl
Richmond, VA 23219

Steven Fermon
Medicaid Fraud Control Unit Illinois State Police
200 Isles Park Place
Ste 230

Springfield, IL 62703

Robert Spagnoletti
District of Columbia Attorney 's Office
Office of Corporation Counsel
441 4th St., NW
Washington, DC 20001

W Rick Copeland
Medicaid Fraud Control Unit
Office of the Attorney General
Austin, TX 78711

Jerry Kilgore
Virginia Attorney General
Office of the Attorney General
900E. Main St
5th FL
Richmond, VA 23219

Susan Kennedy
Medicaid Fraud Control Unit
Office of DC Inspector General
Washington, DC 20005

Robert Schlafly
Medicaid Fraud Control Unit Bureau of Investigations
901 R.S. Gass Blvd.
Nashville, TN 37216

Paul G Summers
Tennessee Attorney General
500 Charlotte Avenue
Nashville, TN 37243

Bill Lockyear
Office of the Attorney General
1300 I Street
Ste. 1740
Sacramento, CA 95814

Gary K Senega
Deputy Attorney General State of Hawaii
333 Queen Street

18

10th Floor
Honolulu, HI 96813

Greg Abbott
Texas Attorney General
Office of the Attorney General
Capitol Station, PO Box 12548
Austin, TX 78711

/s/  Jordan S. Ginsberg

CH1 3893414v.1