**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                                )
IN RE PHARMACEUTICAL INDUSTRY    )        MDL No. 1456
AVERAGE WHOLESALE PRICE            )
LITIGATION                                       )
                                                )
_____  )        Judge Patti B. Saris
                                                )
THIS DOCUMENT RELATES TO          )
01-CV-12257-PBS and 01-CV-339          )
_____  )

**TRIAL OF CLASS 1 CLAIMS**

## <u>BRISTOL-MYERS SQUIBB COMPANY'S MOTION FOR USE OF THE ATTACHED JUROR QUESTIONNAIRE</u>

Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network, Inc. (together "BMS") move this Court to approve the use of the attached written juror questionnaire (Tab A) to be completed by the jurors prior to the beginning of oral voir dire.

This case presents a difficult task in selecting a fair and impartial jury. When one considers the core issues in this case, it inevitably raises highly emotional issues that cut across all segments of our society.  First, we are presented with the issue of pharmaceutical company pricing techniques.  Second, we are dealing with the issue of co-pays for pharmaceutical products which affects every person with insurance.  Third, we are presented with the co-pay issue in the context of one of the most dreaded diseases: cancer.  Fourth, the plaintiffs in this case are elderly individuals suffering from cancer.  Fifth, we have the significant issue of the economics of a doctor-patient chemotherapy treatment as opposed to a hospital treatment. Lastly, all of these factors play out in the context interactions between and among several government actors: HHS, HCFA, the Clinton and Bush Administrations, Congress and the DOJ; as well as between an among medical oncology providers, ASCO and patient advocacy groups.

The questions above illustrate the monumental nature of the potential bias against our client- a bias that, in our view, will be very difficult to ascertain.  For example, we know the following from recent opinion research:

- Accordingly to a 2004 survey, 66% percent of all adults believed that prescription drug prices were unreasonably high, and 55% percent thought that doctor bills were unreasonable high. 74% say drug company profit margins or marketing costs are the largest contributors to the price of prescription drugs and 81% say that drug costs are not justified because the companies charge more for the medications that necessary. *Harris Interactive Survey on Prescription Drug Prices, Hospital Costs and Doctor's Fees* (September 2004).

- 43% said that paying for prescriptions was a major financial problem and 26% said it was a minor financial problem. *AARP Election Watch: Pulse of a Generation Survey* (August, 2006).

- 70% of those polled agreed that drug companies put profits ahead of people.  69% of adults stated that high profits made by drug companies are a very important reason behind rising healthcare costs and about 24% believe drug company profits are the most important reason. 62% thought that the amount of greed and waste that occurs in the healthcare system was a very important factor in causing higher healthcare costs. Kaiser Family Foundation, *Health Poll Report Survey* (conducted October 14-17, 2004).

- The public view of prescription companies has declined significantly over time. In 1997, 19% thought that pharmaceutical and drug companies generally did a bad

job serving there consumers; in 2004, 48% thought that they did a bad job. Harris
Interactive Polls 2000-2004; Louis Harris & Associates 1997-1999.

- In February 2007, in a poll by AARP, 87% supported a proposal to allow
  Medicare to negotiate a prescription drug price with the manufacturers. 85% of
  the respondents stated that the cost of prescription drugs was too high. AARP
  Knowledge Management, *Medicare Price Negotiation of Prescription Drugs- A
  National Poll* (February 12, 2007).

Resulting from our knowledge with respect to the biases against the defendants in this
case, we submit the attached proposed questionnaire.  The questionnaire has been designed to
elicit relevant background information and potential bias rather than to educate the jurors or
attempt to pre-condition them to one side's perspective.  *See United States v. Thai*, 29 F.3d 785,
801 (2nd Cir. 1994) (sixty eight question questionnaire developed to elicit pertinent information
about bias in a criminal case.)  Further, the questionnaire is designed to increase juror candor.
Because the jurors can write their responses in private rather than speak out in public, they are
more likely to answer all of the questions than to omit an answer or color a response because of
embarrassment.  Additionally, this case requires that the Court and counsel are aware of sensitive
information.  The use of the proposed juror questionnaire will better protect the privacy of the
individual jurors than oral voir dire; the potential juror can relay the important sensitive
information to the attorneys and the Court without revealing it to the rest of the panel.  Finally,
the juror questionnaire submitted contains questions designed to elicit obvious knowledge or bias
that would preclude those individuals from serving on the jury in this case.

We recommend that the questionnaire be completed before the voir dire questions.  Once completed, we recommend a brief period of time for counsel to examine the questionnaires and then conference in camera with the Court.  This conference will afford an opportunity to measure the gravity of these issues before the Court asks the voir dire questions, and provide an opportunity for the parties and the Court to agree to strike certain jurors for cause thus increasing the efficiency of the voir dire process..  The questionnaire will establish a baseline of knowledge that the Court can build on during the oral voir dire so that the jury selected is fair and impartial.

For these reasons, BMS hereby moves this Court to approve the use the attached jury questionnaire.  BMS further requests oral argument on this motion at the status conference scheduled for July 10, 2007.

Dated:   June 11, 2007

Respectfully Submitted,

By:   /s/ Jennifer M. Ryan
Thomas E. Dwyer (BBO No. 139660)
Jennifer M. Ryan (BBO No. 661498)
**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, MA  02210
Tel:   (617) 371-1000
Fax:   (617) 371-1037
tdwyer@dwyercollora.com
jryan@dwyercollora.com

Steven M. Edwards (SE 2773)
Lyndon M. Tretter ((LT 4031)
Thomas J. Sweeney, III (TS 6557)
Admitted *pro hac vice*
**HOGAN & HARTSON L.L.P.**
875 Third Avenue
New York, NY  10022
Tel:     (212) 918-3000

*Attorneys for Defendants Bristol     -Myers Squibb Company,  and  Oncology Therapeutics Network, Corp.*

## CERTIFICATE OF SERVICE

I, Lyndon M. Tretter, certify that a true and correct copy of Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network Corp.'s Motion to Approve Use of Supplemental Jury Questionnaire was served upon all counsel of record on June 11, 2007 by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending copies to Lexis-Nexis for posting and notification to all parties.

/s/ Lyndon M. Tretter
Lyndon M. Tretter