UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY <br> AVERAGE WHOLESALE PRICE LITIGATION | ) <br> ) MDL No. 1456 <br> ) <br> ) Civil Action No. 01-CV-12257 PBS <br> ) |
| THIS DOCUMENT RELATES TO <br> CLASS 1 JURY TRIAL (BMS) | ) Judge Patti B. Saris <br> ) Chief Magistrate Judge Marianne B. Bowler |

# BMS'S MEMORANDUM OF LAW IN SUPPORT
# OF ITS MOTION IN LIMINE TO EXCLUDE
# ALL EVIDENCE RELATING TO APOTHECON INC.

**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, Massachusetts
(617) 371-1000

*Of Counsel:*
  Thomas E. Dwyer, Jr., Esq.
  Jennifer M. Ryan, Esq.

**HOGAN & HARTSON L.L.P.**
875 Third Avenue
New York, New York   10022
(212) 918-3000

*Of Counsel:*
  Steven M. Edwards, Esq.
  Lyndon M. Tretter, Esq.
  Thomas J. Sweeney, III, Esq.

*Attorneys for Defendants Bristol-Myers Squibb*
*Co. and Oncology Therapeutics Network Corp.*

Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network (together "BMS") respectfully submit this memorandum of law in support of their motion in limine to exclude all evidence relating to Apothecon, Inc. ("Apothecon").

## Preliminary Statement

Plaintiffs' case against BMS relates exclusively to seven branded physician-administered oncology products that BMS itself manufactured and sold. Apothecon is a separate BMS subsidiary that manufactured and sold mostly self-administered, generic products. BMS sold Apothecon's assets in 2000.

As the Court is aware from the report of its independent expert, Professor Berndt, the economics of branded injectables are very different from those of oral generics. That difference is especially pronounced in the case of BMS and Apothecon because BMS plans to defend this case on the ground, inter alia, that there were substantial sales at list price, and some Apothecon products – unlike the BMS drugs at issue here – did not have substantial sales at list price. In connection with the Class 2 and 3 trial, the Court denied a similar motion but recognized that evidence related to Apothecon "has limited weight" and doesn't get that much weight." (10/31/06 Pretrial Conference Tr. 51-52.) In this case, which involves a jury, the marginal value of admitting that evidence is demonstrably outweighed by its unfair prejudice to BMS and its tendency to confuse and mislead the jury in a case devoted to BMS physician-administered cancer drugs. Accordingly, the evidence should be excluded.

## Statement of Facts

Seven BMS drugs are at issue in this case: Blenoxane, Cytoxan, Etopophos, Paraplatin, Rubex, Taxol and Vepesid. (1/30/06 Class Certification Order, Attach. 1, 11-12.)

All of these drugs are brand-name cancer drugs that are manufactured and sold primarily in injectible form.[1]

For oncology drugs such as those at issue in this case, BMS establishes and reports to industry publications a wholesale list price, or "WLP," when the product is launched. (Szabo Decl. ¶ 2.)[2] The WLP appears on invoices to wholesalers, and most of the sales by wholesalers to customers while a product is protected by a patent are within 5% of WLP. (Szabo Decl. ¶¶ 2-3; Bell BMS Decl. Exh. D.) During that time, BMS may periodically raise the WLP for a drug; but it does not do so unless it believes that it can obtain sales at a new price. (Szabo Decl. ¶ 3.) After a drug goes off patent, BMS generally does not make further changes to its list price. (Id.) At all times between 1993 and 2002, the period for which data was available and produced, BMS achieved significant percentages of its revenues on the drugs at issue in this case in sale transactions at or around list price. (Bell BMS Decl. ¶ 6, Ex. E.)

The strategy for Apothecon drugs was to specify a sales price that would be competitive with other generics. (8/18/05 Kaszuba Dep. 213.) In this regard, Apothecon had something it called a "Wholesale Special Offer List Price" which was "significantly lower than wholesale list price" that was published. (See Pl. Ex. 188.)[3] In other words, certain Apothecon products were actually sold to wholesalers in "special offers" other than the published WLP. The BMS drugs at issue, on the other hand, were never subject to special offer pricing. (8/18/05 Kaszuba Dep. 210-16.)

---

[1] BMS also manufactured and sold oral forms of Vepesid and Cytoxan.

[2] Parenthetical citations refer to the Declaration of Zoltan Szabo, dated October 25, 2004 and Declaration of Gregory Bell, dated March 15, 2006, both filed in support of BMS's motion for summary judgment.

[3] Cites to Plaintiffs' Exhibits are to those in the Class 2 and 3 trial.

2

BMS contends that the list prices for the drugs at issue in this case were not false or misleading because BMS had substantial sales at or near list price. While the list prices of Apothecon drugs were not false or misleading for other reasons, a number of those drugs did not have substantial sales at or near list price. Evidence relating to those Apothecon drugs is irrelevant and may cause prejudice or confuse the jury.

## Argument

### I.

### THE EVIDENCE RELATING TO APOTHECON'S PRICING PRACTICES IS IRRELEVANT

Only relevant evidence is admissible at trial; evidence that is irrelevant must be excluded by the court. Fed. R. Evid. 401, 402. Evidence is relevant if it tends to prove or disprove a material issue of fact in the case. Fed. R. Evid. 401; Jack B. Weinstein & Margaret Berger, Weinstein's Federal Evidence § 401.02[1] (Joseph M. McLaughlin ed. 2006); see Achille Bayart & Cie v. Crowe, 238 F.3d 44, 49 (1st Cir. 2001). The Apothecon documents fail to meet this standard because they do not address any material issue before the court. The material issues with respect to BMS are whether BMS committed fraud with respect to seven oncology drugs by, among other things, engaging in a scheme to inflate their reported AWPs. The gist of plaintiffs' claim is that BMS adopted phony list prices in order to inflate AWPs. Nothing in the documents relating to Apothecon "Special Offer" list prices for self-administered drugs can affect or change the fact that BMS had substantial sales at list price for the physician-administered oncology drugs at issue in this case. See Ahlberg v. Chrysler Corp., 481 F.3d 630, 633 (8th Cir. 2007) (evidence of retrofit of different car model excluded as irrelevant).

Where the relevance of proffered evidence is not apparent, it is incumbent on counsel to lay an evidentiary foundation connecting the documents to issues material to the

3

litigation. United States v. Valentine, 820 F.2d 565, 572 (2d Cir. 1987). In Valentine, the First Circuit held that documents proffered by the government would not be admitted without a foundation linking the documents to claims at issue. Id.; see Richards v. Relentless, Inc., 341 F.3d 35, 50 (1st Cir. 2003) (medical testimony that plaintiff had a neurological disorder related to an injury suffered on a commercial fishing boat was not relevant to the issue of the validity of the release executed by the plaintiff, where there was no proof linking that testimony to the question of whether plaintiff had been receiving adequate medical advice at the time he signed the release). Similarly, plaintiffs here have adduced no proof connecting the Apothecon documents, which relate to pricing practices with respect to Apothecon generic drugs, to the BMS pricing practices regarding the oncology drugs at issue here. In short, plaintiffs have failed to establish the relevance of the Apothecon documents. Clearly, the Apothecon evidence will not advance the inquiry at hand and therefore must be excluded as irrelevant.

II

**ANY PROBATIVE VALUE OF APOTHECON DOCUMENTS IS SUBSTANTIALLY OUTWEIGHED BY THEIR UNFAIR PREJUDICE TO BMS AND THEIR TENDENCY TO MISLEAD THE JURY**

Rule 403 requires the trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the fact-finder, or by considerations of undue delay, waste of time or presentation of cumulative evidence. Fed. R. Evid. 403. Thus, even if Apothecon documents could be viewed as marginally relevant in this case, they are still inadmissible because their probative value is vastly outweighed by the mischief that the evidence may cause. Fed. R. Evid. 403.

Under the Rule, the Court is charged with striking a sensible balance between probative force and potential prejudice. United States v. Saccoccia, 58 F.3d 754, 773 (1st Cir. 1995). With respect to the probative force prong of the balancing test, this Court has already

ruled, pursuant to BMS's motion to exclude Apothecon documents from the trial of Class 2 and 3 claims, that evidence related to Apothecon "has limited weight because it doesn't involve the drugs charged here" and involves "a different drug, so it doesn't get that much weight." (10/31/06 Pre-Trial Conference Tr. 51-52.)  Thus, there can be no debate as to the probative value of Apothecon-related evidence, as it has already been deemed "limited" at best by this Court.

Conversely, the prejudice that BMS will suffer if plaintiffs are permitted to introduce evidence related to Apothecon is substantial.  Unfair prejudice in the context of Rule 403 means the "capacity of concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997).  Exclusion under Rule 403 is especially appropriate where, as here, the proffered evidence relates to different products or factual circumstances than are at issue at trial.  See Ahlberg, 481 F.3d at 633-34 (In Dodge RAM case, minimal probative value of retrofit evidence in different vehicle model "was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury."); Bizzle v. McKesson Corp., 961 F.2d 719, 721-22 (8th Cir. 1992) (In case regarding alleged injury due to breaking of cane, minimal probative value of evidence regarding another cane model was "easily outweighed by the dangers of unfair prejudice to [defendant] and of misleading the jury); Cameron v. Otto Bock Orthopedic Indus., Inc., 43 F.3d 14, 17 (1st Cir. 1994) (lack of similarity in circumstances of failure of artificial limbs "reinforces any decision to exclude under Rule 403").[4]

---

[4] See generally United States Fid. & Guar. Co. v. Baker Material Handling Corp., 62 F.3d 24, 26-28 (1st Cir. 1995) (affirming exclusion of evidence showing installation of safety parts in a subsequently designed forklift as unduly prejudicial in a wrongful death case on behalf of a worker killed while operating earlier designed forklift without safety posts); see also Haskell v. Kaman Corp., 743 F.2d 113, 121-22 (2d Cir. 1984) (in an age discrimination action, testimony by six former employees, not parties to the suit, as to the circumstances of their departure from defendant company excluded as unfairly prejudicial).

5

Wholly apart from the unfair prejudice that BMS would suffer, were the Apothecon evidence admitted, the evidence should be excluded because it is likely to confuse and mislead the jury. In seeking to admit the Apothecon documents, plaintiffs must implicitly be inviting the jury to speculate that "somehow" the documents relate to BMS drugs at issue in this case. This invitation to speculation is reason enough to exclude them. In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 555-56 (S.D.N.Y. 2004) (evidence of physicians' general practices of reading labels and package inserts for prescription drugs excluded as speculative). At the end of the day, the probative value of the Apothecon documents, if any, is so negligible and their tendency to mislead and confuse is so strong that the evidence must be excluded under Rule 403. See United States v. Nelson-Rodriguez, 319 F.3d 12, 34-35 (1st Cir. 2003) (conduct of informant unrelated to the charges before the court excluded as confusing); Raymond v. Raymond Corp., 938 F.2d 1518, 1524 (1st Cir. 1991) (evidence of pre-accident design modification not instituted until after the manufacture of the defective product would be misleading to fact-finder in determining whether that product was unreasonably dangerous at the time of manufacture and sale); Byrne v. Liquid Asphalt Sys., Inc., 238 F. Supp. 2d 491, 492-93 (E.D.N.Y. 2002) (in products liability case, evidence of OSHA standards excluded as to defendant; standards were not meant to impose duties on manufacturer and their introduction would create confusion).

Finally, it is important to note that Rule 403 is not simply a vehicle for sifting out evidence that a jury should not hear, but also a tool for the court to limit evidence in protracted cases. See United States v. IBM Corp., 87 F.R.D. 411, 415-16 (S.D.N.Y. 1980); see Manual For Complex Litigation § 11.644 (4th ed. 2004). The need for the court to police evidence is especially intense in cases such as this where the court has imposed strict time limitations on the parties. As the court in SCM Corp. v. Xerox Corp. stated:

6

> It has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited by his own judgment and whim.

77 F.R.D. 10, 14 (D. Conn. 1977) (citations omitted). Including Apothecon documents in an already hefty record will impose significant burdens on the court and jury. When the burdens of including this evidence are weighed against its slight and largely speculative probative value, the scales tip decidedly in favor of exclusion. For that reason alone, the Apothecon evidence is inadmissible under Rule 403. See United States v. Beauchamp, 986 F.2d 1, 3-4 (1st Cir. 1993) (evidence that government witness had lied about his home address properly excluded; cost of presenting testimony outweighed its marginal value); Northside Mercury Sales & Serv., Inc. v. Ford Motor Co., 871 F.2d 758, 760 (8th Cir. 1989) (in suit involving dealership termination, exclusion of financial statements from other area dealers upheld; possibility of delay outweighed probative value); Poling v. Morgan, 829 F.2d 882, 887-88 (9th Cir. 1987) (in action by mobile home owner whose homes had been repossessed by defendants, the court properly excluded evidence of other schemes in which defendants defrauded mobile home buyers because admitting the evidence would have caused undue delay).

In sum, the Apothecon evidence would introduce into this litigation unwanted baggage which outweighs its marginal probative value and will cause prejudice to BMS. It therefore must be excluded. Staniewicz v. Beecham, Inc., 687 F.2d 526, 530 (1st Cir. 1982).

**Conclusion**

For the foregoing reasons, BMS respectfully requests that the court grant its motion in limine to exclude Apothecon evidence.

Dated:  Boston, Massachusetts
        June 11, 2007

Respectfully submitted,

By:  /s/ Jennifer M. Ryan
     Thomas E. Dwyer (BBO No. 139660)
     Jennifer M. Ryan (BBO No. 661498)
     **DWYER & COLLORA, LLP**
     600 Atlantic Avenue
     Boston, MA  02210
     Tel: (617) 371-1000
     Fax: (617) 371-1037
     tdwyer@dwyercollora.com
     jryan@dwyercollora.com

     Steven M. Edwards (SE 2773)
     Lyndon M. Tretter (LT 4031)
     Thomas J. Sweeney, III (TS 6557)
     Admitted *pro hac vice*
     **HOGAN & HARTSON LLP**
     875 Third Avenue
     New York, NY  10022
     Tel: (212) 918- 3640

     *Attorneys for Defendant Bristol -Myers Squibb Company and Oncology Therapeutics Network Corp.*

## CERTIFICATE OF SERVICE

      I, Lyndon M. Tretter, hereby certify that I am one of Bristol-Myers Squibb Co. and Oncology Therapeutics Network Corp.'s attorneys and that, on June 11, 2007, I caused a copy of **BMS'S MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE RELATING TO APOTHECON INC.** and **MEMORANDUM OF LAW IN SUPPORTOF ITS MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE RELATING TO APOTHECON INC.** to be served on all counsel of record by electronic service pursuant to Paragraph 11 of CMO No. 2 by sending a copy to Lexis-Nexis File & Serve for posting and notification to all parties.

                                                                    /s/ Lyndon M. Tretter
                                                                       Lyndon M. Tretter