UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | Civil Action No. 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO CLASS 1 JURY TRIAL (BMS) | Hon. Patti B. Saris |

**BMS'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION <u>IN LIMINE</u> TO EXCLUDE THE 2003 OFFICE OF INSPECTOR GENERAL GUIDANCE**

Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network Corporation (collectively, "BMS") respectfully submit this memorandum of law in support of their motion <u>in limine</u>, pursuant to Rules 402 and 403 of the Federal Rules of Evidence, for an Order excluding plaintiffs from introducing at trial all documents and testimony relating to the 2003 Office of Inspector General Compliance Program Guidance for Pharmaceutical Manufacturers, 68 Fed. Reg. 23731 (May 5, 2003) (hereinafter "OIG Guidance"). BMS expects plaintiffs to include in their disclosures (as they did with their AstraZeneca disclosures) several exhibits related to the OIG Guidance,[1] all of which should be excluded. BMS also moves to exclude, on the same basis, all additional documents, testimony, and argument related to the OIG Guidance. Moreover, plaintiffs' counsel should be instructed not to refer to the OIG Guidance in their opening statement.

**Background**

The claims at issue in this case involve the pricing and Medicare reimbursement of seven BMS oncology products from 1991 until the end of 2003. The OIG Guidance BMS

---

[1] <u>See, e.g.</u>, Pls.' AZ Exs. 83, 182, 220.

seeks to exclude was not promulgated until May 5, 2003, eleven and one-half years into a twelve-year class period and two years after this suit was filed.[2]

Nonetheless, in the Class 2 and Class 3 trial, plaintiffs relied heavily on the contents of the OIG Guidance to support their claim that defendants' pricing and marketing activities were unfair or deceptive throughout the class period. (See, e.g., 1/26/07 Trial Tr. 95-96, 98-99; Pls.' Post Trial Br. 3-4.) Plaintiffs furthermore misleadingly referred to the OIG Guidance as the "OIG Guidelines," which implies some sort of rule, as opposed to advice, and have, in fact, stated that the OIG Guidance are "regulations." (11/28/06 Trial Tr. 35-36; 1/26/07 Trial Tr. 95; see also Pls.' Post Trial Br. 3-4; Bell 12/7/06 Tr. 74-75.) The OIG Guidance is simply not relevant to the jury's decision in this case.

First, the OIG Guidance was not published until May 2003, at the end of the class period which began in 1991. As the Court said in ruling on AstraZeneca's in limine motion, the OIG Guidance became effective "when it was all over." (4/11/07 AstraZenca Pretrial Hr'g Tr. 39.) Accordingly, the Court instructed plaintiffs' counsel not to refer to the OIG Guidance in their opening statement. (Id. at 39.) The Court should do the same thing here.

Second, the OIG has no statutory authority to make binding pronouncements. The OIG Guidance was not promulgated by CMS, HCFA, HHS, or Congress, who alone are responsible for the meaning of "AWP" and its use in the operative statute and regulations. The authority to promulgate rules and regulations relating to the Medicare statute resides solely with the Secretary of HHS.[3] See 42 U.S.C. § 1302 (2006). Where, as here, an administrative body

---

[2] The OIG first published a solicitation notice seeking input for a proposed compliance program in June, 2001. A draft compliance program guidance was published on October 3, 2002. OIG Guidance, 68 Fed. Reg. at 23731. Even if the OIG Guidance was binding on BMS (and it is not), it could not have been binding prior to its effective date.

[3] The Secretary of HHS has delegated its rulemaking authority to HCFA/CMS. See Stmt. of Org., Functions, and Delegations of Auth. for the Dep't of Health and Human Servs., Pt. F, 46 Fed. Reg. 56911 (1981).

has not been granted any rule-making power, "its interpretive guidance is certainly not entitled to deference." Navarro v. Pfizer Corp., 261 F.3d 90, 99 (1st Cir. 2001). Indeed, the OIG Guidance itself states that it is only "guidance" and is "not to represent binding standards for pharmaceutical manufacturers." 68 Fed. Reg. 23731.

Third, even if the OIG had rule-making authority, the OIG Guidance explicitly states that it is not intended to be a statement of the law, and it is ambiguous in many respects. This trial should not be about what the OIG meant in a document issued at the end of the class period. Admission of the OIG Guidance will cause confusion and prejudice.

Thus, given the OIG Guidance's lack of relevance to BMS's conduct, and the substantial possibility that reference to the Guidance will confuse and mislead the jury, the OIG Guidance and any reference thereto should be excluded from evidence.

## Argument

### I.

### THE OIG GUIDANCE IS NOT RELEVANT TO BMS'S CONDUCT IN THIS ACTION

This action involves the issue of whether BMS committed intentional misrepresentations that caused plaintiffs to suffer a loss. The OIG Guidance is not relevant to that issue.[4] The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The core principle of evidence law which follows is that "evidence which is not relevant is not admissible." Fed. R. Evid. 402. See also Achille Bayart & Cie v. Crowe, 238 F.3d 44, 49 (1st Cir. 2001) (affirming exclusion of memorandum that would not have assisted jury in calculating

---

[4] The OIG Guidance explicitly recognizes that "pharmaceutical manufacturers should be mindful that many states have fraud and abuse statutes – including false claims, anti-kickback and other statutes – that are not addressed in this guidance." 68 Fed. Reg. at 23733 n.6.

3

value of business's assets); Merrill v. County Stores, Inc., 699 F. Supp. 1164, 1169 (D.N.H. 1987).  To determine relevance, a court must consider the connection between the evidence sought to be admitted and the elements of the claims made or the defenses offered.  Feliciano v. Rullan, 378 F.3d 42, 58-59 (1st Cir. 2004) (affirming court's decision to exclude appellant's proffered evidence where appellant failed to demonstrate how evidence was related to his claim); United States v. Smith, 940 F.2d 710, 715-16 (1st Cir. 1991) (same).

### A.  The OIG Guidance Is Too Remote In Time

To prevail at trial, Plaintiffs must prove, inter alia, that BMS made intentional misrepresentations about the pricing for its drugs to consumers from the period of 1991 until the end of 2003.[5]  As stated above, the OIG Guidance was not even promulgated until May 5, 2003, two years after this case was filed.  There is no logical connection between any advice contained in the OIG Guidance and BMS's alleged intent during the almost-twelve years between the start of the class period and the publication of the final OIG Guidance.  As the Court has observed, the OIG Guidance became effective "when it was all over."  (4/11/07 AstraZeneca Pretrial Hr'g Tr. 39.)

It is an accepted proposition that "evidence, though otherwise relevant, may be excluded because it is too remote in space or time from the proposition being proved."  Weinstein & Berger, *supra* at § 401.02[2][e]401-29 (citations omitted); see also Benford v. Richards Med. Co., 792 F.2d 1537 (11th Cir. 1986).  In Benford, a case based on the failure of a hip prosthesis, "the relevance of [a] 1981 [safety] standard was in issue because the events material to Benford's claims occurred in the early 1970s."  Id. at 1539-41.  The Eleventh Circuit upheld the District Court's ultimate decision not to admit the evidence.  Id.  Other courts have

---

[5]  The Court's class certification order limited Plaintiffs to "only the theory that defendants intentionally made fraudulent misrepresentations of AWP."  In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 85 (D. Mass. 2005).

4

also excluded government standards that are remote in time from the events at issue.  See Fortune Funding, LLC v. Ceridian Corp., 368 F.3d 985, 990 (8th Cir. 2004) (affirming exclusion of evidence regarding the condition of a building from 1997-2000 as irrelevant to proving whether appellee misrepresented the condition of the building in 1985); Nachtscheim v. Beech Aircraft Corp., 847 F.2d 1261, 1275 (7th Cir. 1988) (upholding district court's decision to exclude an FAA bulletin that had been cancelled "almost ten years preceding the manufacture of the plane at issue in this case"); Haynes v. Am. Motors Corp., 691 F.2d 1268, 1272-73 (8th Cir. 1982) (finding no error in exclusion of federal regulation that was rescinded before the manufacture of the Jeep at issue or of owners' manual issued after manufacture and accident).  In this case, as in the cases above, a standard announced after the conduct at issue occurred is simply not relevant to determine the legality of that conduct.[6]

### B. OIG Does Not Have The Authority To Make Pronouncements Binding On BMS

The OIG is an independent unit within the Department of Health and Human Services with responsibility for conducting and supervising audits and investigations, recommending policies, and keeping the head of the agency informed.  Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101.  The OIG does not have the power to make or interpret rules or regulations.  The OIG's inability to promulgate rules flows from the purpose of its office, which is investigatory in nature.  See Winters Ranch P'ship v. Viadero, 123 F.3d 327, 333 (5th Cir. 1997) (reversing district court decision, which had been based on the district court's erroneous interpretation of the IG's actions as "regulatory, rather than oversight" in nature, which would have made them unenforceable); see also U.S. Nuclear Regulatory Comm'n v. Fed. Labor

---

[6] To the extent that Plaintiffs argue that the OIG Guidance is merely a statement of existing law that predates its issuance, they should be able to and must be required to demonstrate such governing standards in the absence of reference to the Guidance.  Any other result would permit Plaintiffs to circumvent their burden of proof and do so in a misleading and unduly prejudicial manner.

5

Relations Auth., 25 F.3d 229, 232-36 (4th Cir. 1994) (discussing the history and purpose of the office of Inspector General, which is responsible for "conducting and supervising audits and civil and criminal investigations relating to [an] agency's operations").  Indeed, the Inspector General Act prohibits Congressionally delegated program operating responsibilities from being transferred to Inspectors General.  See Section 9(a)(2) of the Act; Winters Ranch P'ship, 123 F.3d at 333; Burlington N. RR. Co. v. Office of Inspector General, 983 F.2d 631, 642 (5th Cir. 1993).

In addition, the OIG's interpretation of a rule or regulation is not entitled to legal deference.  An agency's acts are only entitled to Chevron deference where the agency is acting pursuant to formal rule-making authority.  United States v. Mead Corp., 533 U.S. 218, 226-27 (2001).  Otherwise, its interpretation is entitled to respect only to the extent that it has the power to persuade.  Gonzales v. Oregon, 126 S. Ct. 904, 915 (2006).  In this case, the OIG was not performing a rulemaking role and its views in 2003 are hardly persuasive evidence of what Medicare or Congress believed during the period 1991 through 2002.

The Supreme Court has recognized that "interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant Chevron-style deference." Christensen v. Harris County, 529 U.S. 576, 586-87 (2000) (affording Department of Labor's opinion letter only "respect" to the extent it has "the power to persuade" under Skidmore v. Swift & Co., 323 U.S. 134 (1944) (emphasis added); see also Navarro, 261 F.3d at 99 (applying Skidmore standard to determine persuasiveness of EEOC interpretive guidance where the EEOC "never had any authority to promulgate regulations pursuant to the FMLA").[7]

---

[7] Plaintiffs have cited Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 157 (1991) claiming it holds that enforcement guidelines such as the OIG Guidance are "entitled to 'some weight on judicial

Thus, the OIG guidance is simply not authoritative on the question of whether BMS violated the anti-kickback statute, False Claims Act, and other "statutes, regulations and other rules governing Medicare, Medicaid and all other federal health care programs." 68 Fed. Reg. at 23731 n.1. It is, therefore, yet one further step removed from the question in this case – intentional deception under 42 states consumer protection laws, and has no relevance to this trial.

### C. By Its Terms, The OIG "Guidance" Is Not Binding

Plaintiffs ignore the fact that the OIG Guidance expressly states that it is "voluntary guidance" for pharmaceutical manufacturers and does not "represent binding standards." 68 Fed. Reg. at 23731. Thus, the OIG Guidance states:

- "As with previously issued guidances, this compliance program guidance represents the <u>OIG's suggestions</u> on how pharmaceutical manufacturers can establish internal controls to ensure adherence to applicable rules and program requirements. <u>The contents of this guidance should not be viewed as mandatory</u> or as an exclusive discussion of the advisable elements of a compliance program. <u>The document is intended to present voluntary guidance to the industry and not to represent binding standards for pharmaceutical manufacturers.</u>" Id. at 23731 (emphasis added).

- "The identification of a given practice or activity as "suspect" or as an area of "risk" does <u>not mean it is necessarily illegal or unlawful</u>, or that it cannot be properly structured to fit in a safe harbor." Id. at 23734-23735 (emphasis added).

- "Importantly, the identification of a particular practice or activity in this section is <u>not intended to imply that the practice or activity is necessarily illegal in all circumstances</u> or that it may not have a valid or lawful purpose underlying it." Id. at 23733 (emphasis added).

---

review.'" (4/6/07 Pls.' Opp'n to AstraZeneca's Mot. In Limine to Exclude the 2003 OIG Guidelines 5.) The issue in Martin was whether the Court should defer to the Secretary of Labor or the Occupational Safety and Health Review Commission in interpreting health and safety regulations. The court found the Secretary, who had issued the regulations, was entitled to deference and that a court could look to "informal interpretations" by the Secretary such as "agency enforcement guidelines" on judicial review. Id. at 157. Here, OIG had no authority to interpret the regulations, as the Secretary did in Martin, and its guidance is not binding or authoritative.

Rather than creating any rules, the OIG Guidance advises pharmaceutical manufacturers about how adequate compliance programs may help prevent investigations into violations of federal health care statutes and regulations. Id. It has no binding effect.

## II.

### ADMISSION OF THE OIG GUIDANCE WOULD UNFAIRLY PREJUDICE BMS

Even under the most generous determination of the relevance of the OIG Guidance – i.e., that they are relevant to the last approximately six months of the class period – such minimal relevance is far outweighed by the risk of confusion and unfair prejudice. Relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 "constitutes a tool that a trial judge can use to keep a jury's attention riveted on the Dispositive issues." Williams v. Drake, 146 F.3d 44, 47-48 (1st Cir. 1998) (affirming exclusion of guilty plea and other "inflammatory" references); Patten v. Wal-Mart Stores E., Inc., 300 F.3d 21, 27 (1st Cir. 2002) (finding no abuse of discretion where court excluded Maine Human Rights Commission's Finding of Discrimination as more prejudicial than probative).

Here, the danger of jury confusion is obvious. First, a jury may give undue weight to guidance issued by the Office of the Inspector General, a governmental body, failing to comprehend the distinction between such guidance and an administrative rule or legislative statute. Williams, 146 F.3d at 48 ("The procedural and substantive differences between a prison disciplinary board hearing and a jury trial easily could have led to confusion."); Byrne v. Liquid Asphalt Sys., Inc., 238 F. Supp. 2d 491, 492-93 (E.D.N.Y. 2002) (in products liability case, evidence of OSHA standards excluded as to defendant; standards were not meant to impose duties on manufacturer and their introduction would "likely confuse or mislead the jury.")

8

To demonstrate the legality of its conduct under these contrasting provisions, BMS would have to expend considerable time explaining the OIG Guidance to the jury, thus distracting the jury from the real issues.  Courts have held that such considerations justify exclusion under Rule 403.  See United States v. Beauchamp, 986 F.2d 1, 3-4 (1st Cir. 1993) (evidence that government witness had lied about his home address properly excluded; cost of presenting testimony outweighed its marginal value); Northside Mercury Sales & Serv., Inc. v. Ford Motor Co., 871 F.2d 758, 760 (8th Cir. 1989) (in suit involving dealership termination, exclusion of financial statements from other area dealers upheld; possibility of delay outweighed probative value); Poling v. Morgan, 829 F.2d 882, 887-88 (9th Cir. 1987) (in action by mobile home owner whose homes had been repossessed by defendants, the court properly excluded evidence of other schemes in which defendants defrauded mobile home buyers because admitting the evidence would have caused undue delay).  This would be especially prejudicial here, where the Court has limited the amount of time the parties have to present their cases to the jury.

In addition, the OIG Guidance itself is far from clear in defining the conduct it discourages.  The OIG Guidance states that "importantly, the identification of a particular practice or activity in this section is not intended to imply that the practice or activity is necessarily illegal in all circumstances or that it may not have a valid or lawful purpose underlying it."  OIG Guidance, 68 Fed. Reg. at 23733.  Furthermore, recognizing that "public policy favors open and legitimate price competition in health care," the OIG Guidance refers to the fact that Congress has created an exception to the anti-kickback statute for certain discounts. Id. at 23735.  And in another discussion of pricing, the OIG Guidance states that "where appropriate, manufacturers' reported prices should accurately take into account price reductions,

cash discounts, free goods contingent on a purchase agreement, rebates, up-front payments, coupons, goods in kind, free or reduced-price services, grants, or other price concessions or similar benefits offered to some or all purchasers." Id. at 23734-35.  However, the OIG Guidance fails to define "where," exactly, inclusion of such discounts or rebates is "appropriate" in reporting prices.

Allowing the admission of the OIG Guidance would also shift the issue before the jury from an analysis of state consumer protection laws to a presentation of the federal anti-kickback statute, the False Claims Act, and discounting safe-harbors.  Determining whether a discounting or marketing practice would be legal under the relevant federal statutory scheme is outside the scope of the factual issues the jury should properly determine in this case.  And the lack of clarity of the OIG Guidance would serve to mislead the jury as to the propriety of BMS's conduct and encourage the jury to decide the case on an incorrect basis.

## **Conclusion**

Accordingly, the Court should grant BMS's motion in limine and exclude from evidence any reference to the OIG Guidance.  Plaintiffs' counsel should also be instructed not to refer to the OIG Guidance at trial.

Dated:    June 11, 2007

                        Respectfully submitted,

By:   /s/ Jennifer M. Ryan (BBO No. 661498)
Thomas E. Dwyer (BBO No. 139660)
Jennifer M. Ryan (BBO No. (BBO No. 661498)
**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, MA  02210
Tel: (617) 371-1000
Fax: (617) 371-1037
tdwyer@dwyercollora.com
jryan@dwyercollora.com

Steven M. Edwards (SE 2773)
Lyndon M. Tretter (LT 4031)
Thomas J. Sweeney, III (TS 6557)
Admitted *pro hac vice*
**HOGAN & HARTSON LLP**
875 Third Avenue
New York, NY  10022
Tel: (212) 918- 3000

*Attorneys for Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network Corporation*

**CERTIFICATE OF SERVICE BY LEXIS-NEXIS FILE & SERVE**

      I, Lyndon M. Tretter, hereby certify that I am one of Bristol-Myers Squibb Co. and Oncology Therapeutics Network Corp.'s attorneys and that, on June 11, 2007, I caused a copy of **BMS'S MOTION IN LIMINE TO EXCLUDE THE 2003 OFFICE OF INSPECTOR GENERAL GUIDANCE** and **MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE 2003 OFFICE OF INSPECTOR GENERAL GUIDANCE** to be served on all counsel of record by electronic service pursuant to Paragraph 11 of CMO No. 2 by sending a copy to Lexis-Nexis File & Serve for posting and notification to all parties.

                                            /s/ Lyndon M. Tretter
                                            Lyndon M. Tretter