# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) MDL No. 1456 |
| | ) Civil Action No. 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO CLASS 1 JURY TRIAL (BMS) | ) ) ) Hon. Patti B. Saris |

## BMS'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION <u>IN LIMINE</u> TO EXCLUDE EVIDENCE RELATING TO SETTLEMENTS OR GUILTY PLEAS IN OTHER CASES

Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network Corporation (collectively, "BMS") respectfully submit this memorandum of law in support of their motion in limine, pursuant to Rules 402, 403 and 408 of the Federal Rules of Evidence, for an Order excluding from evidence at trial documents, testimony, or any reference by counsel to a civil settlement between BMS and the United States Department of Justice announced in December 2006. BMS also moves to exclude any reference to the recent guilty plea by BMS in connection with completely unrelated issues involving the drug Plavix. In addition, BMS seeks to exclude evidence of guilty pleas or settlements of companies other than BMS.

## Background

In December 2006, BMS announced an agreement in principle with the Department of Justice to settle several investigations involving BMS's drug pricing, sales and marketing activities. No criminal charges were brought against BMS relating to this civil settlement. (See PX 4108.) The settlement was contingent on the parties' agreement to the terms of a final settlement agreement, which has not yet occurred. That settlement includes an agreement with the government concerning some of the drugs at issue in this case.

In the Class 2 and 3 trial, plaintiffs sought to admit a BMS press release relating to the settlement.  (PX 4108.)  BMS objected to the admission of PX 4108, and the Court has not ruled.  BMS anticipates that plaintiffs will offer PX 4108 and, perhaps, other evidence related to the settlement in the forthcoming Class 1 trial.  This evidence should be excluded under Fed. R. Evid. 408.

In a completely unrelated matter, on May 10, 2007, BMS announced that it had agreed to plead guilty for allegedly making false statements to the government in connection with a settlement of a patent dispute involving the drug Plavix.  (See Press Release, BMS, Bristol-Myers Squibb Announces Agreement in Principle to Resolve Federal Antitrust Investigation (May 10, 2007) (attached hereto as Exhibit A.)  The Plavix settlement had been submitted to the Federal Trade Commission ("FTC") for approval.  In the course of BMS's discussions with the FTC, BMS allegedly withheld material information.  Those charges are not relevant to the drugs or issues involved in this case.

In other cases, plaintiffs have also threatened to use the guilty pleas of other companies such as TAP.  BMS had no involvement in the TAP matter, and its conduct differed markedly from that of TAP.  The settlements and guilty pleas of other companies such as AstraZeneca are also irrelevant to the conduct of BMS at issue in this case.

## Argument

### I.

### EVIDENCE CONCERNING BMS'S CIVIL SETTLEMENT WITH THE GOVERNMENT SHOULD BE EXCLUDED

In December of last year, BMS announced that it had reached an agreement in principle with the government to settle a number of civil claims.  Included in that settlement is any claim that the government might have relating to certain of the oncology drugs at issue here.

While the settlement is not final, it is anticipated that the agreement will say it is not an admission of liability.

BMS anticipates that plaintiffs, as they did in the Class 2 and 3 trial, will claim that evidence related to the civil settlement "confirms that the DOJ has been investigating BMS for at least several years and serves as additional evidence to rebut the notion, advanced by BMS and its experts at trial, that the federal government somehow condoned BMS's unlawful conduct." (1/7/07 Pls.' Req. for Admis. of Trial Exs. at 2.)  There are a number of reasons why the civil settlement should be excluded.

First, evidence of settlement agreements is barred by Fed. R. Evid. 408.  Rule 408 explicitly bars the admission of settlement agreements or negotiations in federal trials to prove the validity or invalidity of any claim.  Id.  As the Court stated at the April 11, 2007 conference, "generally civil settlements are not admissible." (4/11/07 AstraZeneca Pretrial Hr'g Tr. 39.)  The Rule applies to settlement agreements between the parties, or between one of the litigants and a third party, as in the instant case.  McInnis v. A.M.F., Inc., 765 F.2d 240, 247 (1st Cir. 1985) (granting new trial because district court erred in admitting evidence of plaintiff's settlement); Vincent v. Louis Marx & Co., 874 F.2d 36, 42 (1st Cir. 1989) (settlement evidence not admissible); Alexander v. City of Evansville, Inc., 120 F.3d 723, 728 (7th Cir. 1997) (affirming trial court's decision not to admit settlement agreement); McHann v. Firestone Tire & Rubber Co., 713 F.2d 161, 166-67 (5th Cir. 1983) (holding exclusion of settlement was required by Fed. R. Evid. 408).  The rationale for the rule is twofold:  (1) it promotes a public policy favoring settlement; and (2) evidence of settlement "is of questionable relevance on the issue of liability or the value of a claim, since settlement may well reflect a desire for peaceful dispute resolution,

rather than the litigants' perceptions of the strength or weakness of their relative positions."
<u>McInnis</u>, 765 F.2d at 247 (citing Rule 408 advisory committee note).

Second, evidence of the settlement is inherently misleading and prejudicial under
Rule 403.  BMS is not admitting liability.  The government did not initiate the investigation on
its own; it arose out of several <u>qui</u> <u>tam</u> actions by private parties.

Furthermore, plaintiffs' reason for offering this evidence is based on a straw man:
neither BMS, nor its expert, Dr. Bell, ever said that the government "condoned" BMS's conduct.
Rather, BMS argued at trial that Medicare was aware of the spreads on BMS's drugs, but never
asked BMS to change the way it reported its pricing information to industry publications or
directed its carriers to reimburse for those drugs based on anything but published AWPs.
Nothing in the press release or other documents relating to the settlement is relevant to these core
facts.

Accordingly, no evidence related to the civil settlement should be admitted.

## II.

### THE PLAVIX GUILTY PLEA AND RELATED MATERIALS
### ARE IRRELEVANT AND SHOULD BE EXCLUDED

Evidence is relevant only if it makes the existence of a fact of consequence to the
determination of an action more or less probable.  Fed. R. Evid. 401; <u>see</u> <u>also</u> <u>United States v.</u>
<u>Smith</u>, 940 F.2d 710, 713 (1st Cir. 1991); Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's</u>
<u>Federal Evidence</u> § 401.04 (2d ed. 2007) ("Relevance is not inherent in any item of evidence but
exists only as a relation between an item of evidence and a matter properly provable in the
case.").  BMS's plea related to the Plavix matter has no relevance to whether BMS engaged in the
AWP inflation and marketing activities that plaintiffs assert violated the 37 state consumer
protection laws for the oncology drugs at issue in this case.  Where a party seeks to introduce

evidence that does not bear a logical connection to a fact at issue, the court should exclude it under Federal Rule of Evidence 402. Smith, 940 F.2d at 713-14 (holding evidence properly excluded as irrelevant because defendant's belief in the legality of his conduct was not a defense to statute prohibiting gun possession by convicted felon).

These materials should also be excluded because their probative value, if any (and BMS believes there is none), is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; Williams v. Drake, 146 F.3d 44, 48 (1st Cir. 1998) ("Rule 403 allows the exclusion of evidence which, though relevant, carries unwanted baggage, such as unfair prejudice or potential juror confusion."). Under Rule 403, a court must balance "the probative value of and the need for the evidence against the harm likely to result from its admission." Fed. R. Evid. 403 advisory committee's note. In this case, the unfair prejudice that would accompany admission of any plea-related materials far exceeds any arguable probative value. The admission of this evidence would result in substantial and manifestly unfair prejudice to BMS and may result in a jury verdict that is not based upon "the legitimate probative force of the evidence," but rather, "the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5215 (2d ed. 2005).

Courts have expressed heightened concern over the prejudice attendant to the admission of prior findings. As the First Circuit has explained, "[a] lay jury is quite likely to give special weight to judicial findings merely because they are judicial findings. . . . Consequently, courts, recognizing the attendant danger of jury confusion and unfair prejudice, frequently have approved the exclusion of judicial findings, convictions, and similar evidence on Rule 403 grounds." Faigin v. Kelly, 184 F.3d 67, 80 (1st Cir. 1999) (upholding trial court's

exclusion of Rule 11 sanction issued against plaintiff in former litigation between the parties);

Coleman Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351 (3d Cir. 1975) ("A jury is likely to

give a prior verdict against the same defendant more weight than it warrants."); see also

PharmaStem Therapeutics, Inc. v. Viacell Inc., No. 02-148, 2003 WL 22244704, at *3 (D. Del.

Sept. 30, 2003) (excluding decision under Fed. R. Evid. 403 of the European Patent Office from

evidence because "[a]n opinion, although of a quasi-judicial or administrative body and albeit

that of a foreign jurisdiction, carries with it a certain imprimatur, which creates a substantial risk

that the jury will give its conclusions undue deference").

       The risk of unfair prejudice is particularly acute when prior criminal convictions

or guilty pleas are admitted in a civil suit.  The First Circuit has warned of the danger of unfair

prejudice because of "evidence of a judicial determination of prior illegal conduct on the part of

the defendant cannot help but have a great emotive effect on a jury."  Int'l Shoe Mach. Corp. v.

United Shoe Mach. Corp., 315 F.2d 449, 459 (1st Cir. 1963) (noting the "well settled" principle

that "evidence that a defendant had, in the past, committed illegal acts is not admissible to show

that he has a proclivity towards similar wrongs in a subsequent proceeding");[1] see also Williams,

146 F.3d at 48 (affirming, in a related civil suit, exclusion of guilty plea previously entered by

plaintiff before prison disciplinary board because "[t]he jury might have been tempted to find

against Williams solely on the basis that he admitted guilt to the Board" rather than focusing on

the central issue of whether the correctional officer used excessive force).

---

[1]    See also Gil-De-Rebollo v. Miami Heat Ass'ns, Inc., 137 F.3d 56, 64 (1st Cir. 1998)
(approving the trial court's exclusion of the conviction from plaintiff's subsequent civil tort action
because, "[u]nder the circumstances, admission of [plaintiff's] criminal conviction would have
allowed the jury to substitute the judgment reached in the criminal proceeding for its own"); Diaz
v. Cianci, 737 F.2d 138, 139-40 (1st Cir. 1984) (excluding, in related civil suit, plaintiff's
conviction for assaulting police officer during same event because of great possibility of
prejudice).

In addition, admission of the guilty plea in connection with an antitrust investigation will distract and possibly mislead the jury.  Ahlberg v. Chrysler Corp., 481 F.3d 630, 633-34 (8th Cir. 2007) (In Dodge RAM case, minimal probative value of retrofit evidence in different vehicle model "was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury."); Bizzle v. McKesson Corp., 961 F.2d 719, 721-22 (8th Cir. 1992) (In case regarding alleged injury due to breaking of cane, minimal probative value of evidence regarding another cane model was "easily outweighed by the dangers of unfair prejudice to [defendant] and of misleading the jury . . .").

Finally, because the guilty plea relates to matters (and a drug) not relevant to the issues in the Class 1 trial, the jury likely will be confused as to how it applies to this case.  Thus, BMS will be required to delve into the circumstances of the plea to correct any misimpressions. This would be inefficient and wasteful of the Court and jury's time and provides another reason under Rule 403 why there should be no reference to the plea.  See United States v. Beauchamp, 986 F.2d 1, 3-4 (1st Cir. 1993) (evidence that government witness had lied about his home address properly excluded; cost of presenting testimony outweighed its marginal value); Northside Mercury Sales & Serv., Inc. v. Ford Motor Co., 871 F.2d 758, 760 (8th Cir. 1989) (in suit involving dealership termination, exclusion of financial statements from other area dealers upheld; possibility of delay outweighed probative value); Poling v. Morgan, 829 F.2d 882, 887-88 (9th Cir. 1987) (in action by mobile home owner whose homes had been repossessed by defendants, the court properly excluded evidence of other schemes in which defendants defrauded mobile home buyers because admitting the evidence would have caused undue delay). BMS would also be prejudiced because its limited time to present its case to the jury would be impacted by having to respond to this irrelevant evidence.

### III.

### THE SETTLEMENTS AND GUILTY PLEAS OF
### OTHER COMPANIES ARE IRRELEVANT

Plaintiffs love to trumpet the TAP guilty plea in an effort to suggest to the Court -- and ultimately to the jury -- that all pharmaceutical manufacturers are the same.  BMS is very different from TAP: (1) it did not report AWPs; (2) it did not raise AWPs or list prices to create spread;[2] (3) it did not market the spread -- indeed, corporate policy prohibited marketing the spread and the words "return to practice" do not appear in BMS's communications with customers; and (4) it did not encourage doctors to bill for free samples (the crime of which TAP was actually convicted).  BMS is also different from AstraZeneca and GSK on a number of these issues.

This case should be about BMS, not TAP, AstraZeneca or GSK.  BMS should not have to defend the conduct of other companies in addition to its own.  Nor should the jury be exposed to the settlements and guilty pleas of other companies.

---

[2] Any spreads on BMS's drugs were created by discounting.

8

## <u>Conclusion</u>

BMS respectfully requests that the Court grant it's <u>in limine</u> motion excluding from evidence any reference to the BMS agreement to plead guilty, guilty pleas by other defendants and BMS's civil settlement with the Department of Justice.

Dated:    June 11, 2007

Respectfully Submitted,


By:    /s/ Jennifer M. Ryan (BBO No. 661498)
　　　　Thomas E. Dwyer (BBO No. 139660)
　　　　Jennifer M. Ryan (BBO No. 661498)
　　　　**DWYER & COLLORA, LLP**
　　　　600 Atlantic Avenue
　　　　Boston, MA  02210
　　　　Tel: (617) 371-1000
　　　　Fax: (617) 371-1037
　　　　tdwyer@dwyercollora.com
　　　　jryan@dwyercollora.com

　　　　Steven M. Edwards (SE 2773)
　　　　Lyndon M. Tretter (LT 4031)
　　　　Thomas J. Sweeney, III (TS 6557)
　　　　Admitted *pro hac vice*
　　　　**HOGAN & HARTSON LLP**
　　　　875 Third Avenue
　　　　New York, NY  10022
　　　　Tel: (212) 918- 3000

　　　　*Attorneys for Defendants Bristol-Myers Squibb*
　　　　*Company and Oncology Therapeutics Network*
　　　　*Corporation*

## <u>CERTIFICATE OF SERVICE BY LEXIS-NEXIS FILE & SERVE</u>

   I, Lyndon M. Tretter, hereby certify that I am one of Bristol-Myers Squibb Co. and Oncology Therapeutics Network Corp.'s attorneys and that, on June 11, 2007, I caused a copy of **BMS'S MOTION <u>IN LIMINE</u> TO EXCLUDE EVIDENCE RELATING TO SETTLEMENTLEMENTS OR GUILTY PLEAS IN OTHER CASES** and **MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION <u>IN LIMINE</u> TO EXCLUDE EVIDENCE RELATING TO SETTLEMENTLEMENTS OR GUILTY PLEAS IN OTHER CASES** to be served on all counsel of record by electronic service pursuant to Paragraph 11 of CMO No. 2 by sending a copy to Lexis-Nexis File & Serve for posting and notification to all parties.

           <u>  /s/ Lyndon M. Tretter  </u>
              Lyndon M. Tretter