UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS | MDL No. 1456 <br> Master File No. 01-CV-12257-PBS <br><br> Hon. Patti B. Saris |

**JOINT MOTION FOR THE ENTRY OF A CASE MANAGEMENT ORDER**

Plaintiffs, the United States of America, together with Relator, Ven-A-Care of the Florida Keys, Inc., and Defendants, Dey, Inc., Dey L.P., and Dey L.P., Inc. (collectively, the "Parties"), by and through their undersigned counsel, hereby submit this Joint Motion for the Entry of a Case Management Order.

**PRELIMINARY STATEMENT**

The United States filed its complaint in this case on August 23, 2006, and Ven-A-Care of the Florida Keys, Inc. (the "Relator") filed a separate pleading joining the United States' Complaint on October 31, 2006. Dey, Inc., Dey L.P., and Dey L.P., Inc. (collectively, "Dey") subsequently filed their motion to dismiss both complaints on December 22, 2006.

Argument on the motion to dismiss was held in this Court on May 17, 2007. During that argument, the Parties agreed that they would work together to submit a case management order ("CMO") to the Court. On May 31, 2007, the Parties submitted a Joint Motion for an Extension of Time to Submit a Case Management Order, which is pending before this Court. In an effort to

comply with the Court's request, the Parties have extensively negotiated a CMO and have conducted several meet and confer calls.

As a result of the Parties' negotiations and conferences, the Parties have been able to agree to the majority of the terms of a comprehensive CMO for this case.  However, the Parties have been unable to resolve a few limited issues, namely the issues of what limits should be imposed on interrogatories and depositions, and the appropriate treatment of depositions previously taken in certain related state court cases.

Attached hereto as Exhibit A is the Parties' proposed CMO, in which two discovery limits have been left blank:  the limit for interrogatories and the limit on total deposition hours. The Parties have agreed in all other respects to the remainder of Exhibit A.  Through this motion, the Parties request the Court's assistance in determining what discovery limits should be established for interrogatories and depositions as provided in Paragraphs 2(a) and 2(d) of Exhibit A.  In an effort to aid the Court in that determination, both sides have included a brief summary of their position below.

## POSITION STATEMENTS

**A.     United States' and Relator's Position Statement**

The United States and Relator propose that Dey be limited to fifty (50) interrogatories, with the plaintiffs permitted 75 interrogatories.  Plaintiffs also propose that each side be limited to 525 hours of depositions in this case.

The United States believes that this proposal takes into account the ongoing benefit to Dey of (1) interrogatories served on the United States and Relator by defendant Abbott Laboratories Inc. ("Abbott"), in *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, No. 06-CV-11337-PBS; and (2) depositions taken by Abbott of

current and former government employees.  The majority of interrogatories and depositions pursued by Abbott to date have covered general topics that apply equally to Abbott and Dey.  The United States also believes that one of the purposes of the multi-district litigation proceeding is to avoid excessive discovery against one party.  Consistent with that principle, it makes little sense to permit Dey the same amount of discovery against the government given to Abbott.  If that approach were taken here with respect to Dey and then Roxane, the United States would be subject to a combined total of 225 interrogatories and 2,325 hours of depositions – numbers that are far beyond any realm of reason.  By contrast, discovery taken by the United States against Abbott has no utility in the Dey or Roxane cases since there is no relationship between the companies.

      The numbers proposed here also reflect the specific reality of the case against Dey.  Dey is a much smaller company than Abbott, with fewer employees and fewer drugs at issue.  In addition, there have been scores of depositions of current and former Dey employees in state cases in Texas and Florida brought by relator, in which relator and Dey counsel participated.[1]  Where relevant, the United States intends to introduce those depositions as if taken in this case, and thereby obviate the need for repetitive depositions.  The Court expressed a strong preference for this approach in CMO #9 (Dkt. #612) in MDL No. 1456, which expressly covered the use of state court discovery in the MDL, stating, "The Court's objective is to avoid duplicative depositions of any person or party."  CMO #9 (Dkt. #612) at 5.  The United States requests that the Court, consistent with the approach set forth in CMO #9, rule that such depositions may be used as if taken in this matter.  The issues in the Florida and Texas cases are substantially

---

[1] See *State of Florida ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corporation, et al.*, Civil Action No. 4:06cv476-SPM/WCS (N.D. Fla.) (ongoing litigation); and *State of Texas ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc.*, Cause No. GV002327, District Court of Travis County, Texas (claims against Dey were settled in 2003).

3

similar; the Florida and Texas complaints cover the very same drugs alleged in the United States' complaint; and Dey and Relator have been represented by competent counsel in those cases. Exhibit B hereto is a list of the drugs alleged in the United States' complaint against Dey and also alleged in the Florida and Texas cases. Attached as Exhibit C is a list of the depositions in the Florida and Texas cases that the United States requests be deemed as if taken in this case.

      The United States disagrees with Dey's proposal that the CMO include a provision for the parties to revisit the discovery limits after a period of time, such as a year. The United States believes that discovery limits force parties to be more efficient and direct in their discovery, and that building in an automatic procedure to seek additional time after one year will undercut that goal. Obviously, even in the absence of such a provision, the Parties retain the right to revisit the limits if appropriate. Enshrining such a procedure in the CMO is thus unnecessary.

**B.**     **Dey's Position Statement**

      The United States and Relator ("Plaintiffs") have proposed that they be allowed 75 interrogatories but that Dey be limited to fifty (50) interrogatories. In addition, the Plaintiffs propose that each side be limited to 525 hours of depositions in this case. Both positions are based on the ground that Dey has the advantage of the discovery currently being conducted by Abbott Laboratories Inc. ("Abbott"), in *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, No. 06-CV-11337-PBS. While Dey acknowledges that it has been attending the discovery of the United States conducted by Abbott, Dey disagrees that the discovery conducted in the Abbott case should limit the discovery in this case, given the early stage of the case and the fact that there is no history of abuse, undue burden, or duplication of discovery by Dey. Furthermore, Dey disagrees with the Plaintiffs' position that a combined total of 225 interrogatories and 2,325 hours of depositions for three separate cases which address

major issues and hundreds of millions of dollars is unreasonable. The Plaintiffs have chosen to bring these actions in the order that they have been brought, and should not be allowed to limit discovery based on an argument of hypothetical burden.

### 1.     The Abbott CMO

The United States has already agreed to a CMO in the Abbott case. In that order, both parties are allowed 75 interrogatories and 775 hours of depositions each.

### 2.     The Limit on Interrogatories

With respect to the limits on interrogatories contained in Paragraph 2(a) of Exhibit A, Dey's position is that such limits should apply equally to the Plaintiffs and Dey. While Plaintiffs have proposed lower limits on interrogatories for Dey than for Plaintiffs because of the discovery taking place in the Abbott case, such a discrepancy is not warranted by the history of this case. The Plaintiffs have the unique benefit of discovery that has been conducted for the last ten (10) years while the case against Dey was sealed. Any benefit to Dey from the discovery taking place in the Abbott case does not outweigh the benefit to the Plaintiffs from this prior discovery. Therefore, Dey proposes that any discovery limit be imposed equally on Plaintiffs and on Dey.

It is also Dey's position that the number of interrogatories should not be automatically lowered because the Abbott case was unsealed first and because discovery is currently taking place in the Abbott case. The case against Abbott and the case against Dey are two separate cases, with distinct facts, including the drugs at issue, that are unique to each corporation. Therefore, to arbitrarily limit Dey's interrogatories at this early stage of the case because of the interrogatories served in the Abbott case puts Dey at a procedural disadvantage. Plaintiffs and Dey should therefore be allowed to each serve 75 interrogatories.

### 3. The Limit on Deposition Hours

With respect to the limitations on depositions contained in Paragraph 2(d) of Exhibit A, Plaintiffs have proposed the sharp reduction on deposition hours to from the 775 hours contained in the Abbott CMO to 525 hours. Dey should not be asked to agree to 250 fewer hours of depositions than Abbott at this early point in the litigation, when initial disclosures are only now being made. The unreasonableness of the Plaintiffs' proposed limitation is exacerbated by the Plaintiffs' request that they be allowed the benefit of depositions taken in the Florida and Texas actions. It is Dey's position that it should be allowed to take 775 hours of depositions, the same number as allotted to Abbott. In the alternative, Dey proposes that if the limit on deposition hours be initially set at a lower number, the case management order should contain an explicit provision requiring the Parties to revisit the deposition limit after a reasonable period of discovery, such as a year, has taken place.

Dey does not intend to duplicate the depositions noticed by Abbott, and has been coordinating with the United States and Abbott so as to avoid undue burden to the government's witnesses. However, given that Dey has many issues that are specific to the Dey case that will involve the depositions of individuals not noticed by Abbott, it is unreasonable to set an artificial limit below that contained in the Plaintiffs' case management order with Abbott. This is a massive case alleging fraud in fifty (50) states. Because of the nature of this case, it may well be necessary to depose witnesses from each of the fifty (50) states. While Dey can hope that deposing a single witness from each state will be sufficient, at this point in time, it is impossible for any of the Parties to know how many state-specific witnesses it will be necessary to depose. That in itself could be well over 525 hours before even looking to third-party witnesses, Relator witnesses, or additional Government witnesses.

Therefore, Dey proposes that if a lower limit of deposition hours (such as the 525 hours proposed by Plaintiffs) be set, that the limit apply to the first year of discovery only.  After a year of discovery has been completed, (1) fact discovery in the Abbott case will be complete, (2) the Parties will have a more realistic view of the number of hours of additional depositions which will be needed, if any, to complete discovery in this case, and (3) the Parties will have had sufficient experience to identify specific problems of burden or duplication, if such ever arise.  A provision which requires the Parties to revisit the deposition limit at a later time is in the best interest of all Parties.  Such a provision in the CMO is necessary to ensure that the parties do in fact revisit the issue once the litigation is underway.

### 4.     Use of Texas and Florida Depositions

Finally, the United States asks that the Court rule that the depositions taken of Dey employees in Florida and Texas may be used "as if taken" in this matter.  These depositions were taken between the years 2001 and 2003 in the Texas action and between 2004 and 2006 in the Florida action.  Each involves state-specific claims and neither obviously assert federal qui tam claims.  In the Texas case, Dey's former counsel defended the depositions.  The use of these depositions is a completely inappropriate subject for inclusion in this CMO.  This Court should not be asked to grandfather unspecified depositions taken some years ago into this case without knowing the specific depositions and circumstances surrounding those depositions.[2]  The Texas and Florida cases involve more drugs than at issue in this case[3], different allegations, different

---

[2]   Plaintiffs have submitted a list of deposition transcripts, including at least one non-party deposition, which they request to be used as if taken in this case.  Plaintiffs first provided Exhibit C to Defendants on the afternoon of the day this motion was to be filed, and therefore Plaintiffs have not had the opportunity to meaningfully review and analyze the list contained in Exhibit C, and object to its inclusion in this motion at the eleventh-hour.

[3]   Plaintiffs have submitted Exhibit B, which lists all of the drugs at issue in this case.  What Exhibit B does not show is that the Florida action also involved six varieties of Acetylcysteine Solution and that the Texas action involved seven varieties of Acetylcysteine Solution.  Because the Texas

time periods, and some were taken prior to Dey's representation by current counsel, and therefore a blanket provision as to their use should not be included in this CMO.

Plaintiffs' reliance on CMO No. 9 is misplaced. A copy of CMO No. 9 is attached hereto as Exhibit D. The provision cited is contained in a section inviting state courts to coordinate discovery, and the provision envisions coordination of depositions as they go forward, and does not the suggest that previous depositions be used in future cases, which is what is proposed by Plaintiffs here.

## CONCLUSION

The Parties acknowledge the importance of agreeing to a case management order and have attempted to negotiate such an order. While the majority of the order has been agreed upon without the assistance of the Court, the Parties request that the Court finalize the proposed CMO attached hereto as Exhibit A. Accordingly, the Parties request that after considering this motion, the Court enter discovery limitations in Paragraphs 2(a) and 2(d) and that the Court issue the order as modified. The Parties are available at the Court's convenience if the Court wishes to hear argument on this joint motion.

---

and Florida actions involved additional subject drugs not a part of this action, those actions, and depositions in those actions, are necessarily broader than the scope of this litigation.

8

Respectfully submitted,

| | |
|---|---|
| *For Plaintiff the United States of America* | *For Relator Ven-A-Care of the Florida Keys, Inc.* |
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | /s/ Gary Azorsky<br>Gary Azorsky, Esq.<br>Berger & Montague, P.C. |
| By: /s/ George B. Henderson, II<br>George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>Telephone:  (617) 748-3272 | 1622 Locust St.<br>Philadelphia, PA 19103<br><br>James J. Breen<br>Alison W. Simon<br>THE BREEN LAW FIRM<br>P.O. Box 297470<br>Pembroke Pines, FL 33029-7470<br>Telephone:  (954) 874-1635<br>Facsimile:  (954) 874-1739 |
| -and-<br><br>PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL | Jonathan Shapiro<br>BBO No. 454220 |
| By: /s/ Laurie A. Oberembt<br>Joyce R. Branda<br>Daniel R. Anderson<br>John K. Neal<br>Laurie A. Oberembt<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone:  (202) 514-3345 | Stern, Shapiro, Weissberg & Garin, LLP<br>90 Canal Street<br>Boston, MA 02114-2022<br>Telephone:  (617) 742-5800<br><br>*For Defendants Dey, Inc., Dey L.P., Inc. and Dey L.P.*<br><br>By:     /s/ Neil Merkl<br>Paul F. Doyle (BBO # 133460)<br>William Escobar (*pro hac vice*)<br>Neil Merkl (*pro hac vice*)<br>Christopher C. Palermo (*pro hac vice*)<br>KELLEY DRYE & WARREN LLP<br>101 Park Avenue<br>New York, NY 10178<br>Telephone:  (212) 808-7800<br>Facsimile:  (212) 808-7897 |

June 14, 2007

9