UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )<br>)<br>)<br>) | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| ) | |
| **THIS DOCUMENT RELATES TO:** ) | Hon. Patti B. Saris |
| ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS )<br>)<br>)<br>) | Magistrate Judge Marianne B. Bowler |

### UNITED STATES' RESPONSE TO THIRD-PARTY TAP PHARMACEUTICAL PRODUCT, INC.'S MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFF'S THIRD PARTY SUBPOENAS

The United States of America, through its undersigned counsel, respectfully files this Response to Third-Party TAP Pharmaceutical Product, Inc.'s ("TAP's") Motion for a Protective Order and Motion to Quash Plaintiff's Third Party Subpoenas (Docket Entry 4295 hereinafter referred to as "TAP's Motion to Quash") and states:

### I. PRELIMINARY STATEMENT

TAP has filed a Motion to Quash that contains numerous misrepresentations, omits crucial information and is legally incorrect. For example, contrary to the assertions in TAP's motion, the United States has not directly targeted TAP documents and drug prices in its subpoenas. *TAP Motion to Quash*, p.1 and p. 3, para. 5. In fact, **there is no mention whatsoever of TAP in any of the subpoenas.** Accordingly, TAP's only stated concern is based upon a misrepresentation of the terms of the subpoenas. Further, for the following reasons, TAP's motion should be denied:

First, TAP did not timely raise objections to the United States' subpoenas and has therefore waived its right to its requested relief.  In fact, TAP did not raise objections at all until **after the return date of the subpoenas**; a fact TAP fails to mention, much yet address, in its motion.  As TAP's counsel – Jones Day – is well aware, the United States has already negotiated the parameters of the subpoenas and has started receiving documents responsive to those subpoenas (ten of which were issued over two and one-half months ago) from the third parties.  Accordingly, TAP's failure to timely object will substantially prejudice the United States.  TAP's failure to timely object will also prejudice the third parties.  Over the past two and one-half months, the United States has engaged in extensive discussions with the third parties to narrow the focus of the subpoenas.  The third parties have already expended considerable effort searching for and responding to the subpoenas upon the terms discussed with the United States.

Second, TAP lacks standing to challenge the subpoenas issued to third-parties.

Third, the information sought by the United States from third parties is relevant and discoverable.

Fourth, TAP's claim that the protective orders in the MDL do not protect third parties is completely incorrect.  The protective orders apply to "all other information exchanged by the parties **or by any third party** in response to discovery requests or subpoenas."

Finally, the relief TAP is requesting is extraordinarily restrictive and would obstruct essential discovery.

## II.  STATEMENT OF FACTS

The United States issued ten subpoenas to Abbott customers (the "Customer Subpoenas") on March 30, 2007 and promptly served notice of the same upon Abbott.  *See* LexisNexis Transaction:  14313107 - Notification of Service attached as Exhibit A.  The United States

2

issued three subpoenas to industry trade groups (the "Trade Group Subpoenas") on April 27, 2007 and one on May 11, 2007, and promptly served notice upon Abbott.  *See* LexisNexis Transactions 14642605, 14642730, 14642851 and 14807726, and courtesy e-mails sent directly to Abbott Counsel on the same day each of those subpoenas were issued, attached hereto as Exhibit B.

The Customer Subpoenas sought 13 categories of documents generally relating to the marketing and purchase of the drugs at issue in this case, the business that they conduct with the defendants, along with related communications and analyses of purchase prices and spreads. TAP is never mentioned in the Customer Subpoenas.

The Trade Group Subpoenas sought 20 categories of documents generally relating to the membership of the Defendants in the trade group, communications with the price reporting publications and government officials, and analyses of drug reimbursement policy and spreads. TAP is never mentioned in the Trade Group Subpoenas.

"Defendant" is defined in the subpoenas as "Abbott Laboratories, Inc." and related entities.  In order to minimize the potential burden on the third parties by allowing for the collection of all pertinent documents at the same time, a cover letter accompanying the subpoenas explained that subsequent subpoenas would likely be issued in connection with Dey, Inc., Dey L.P., Inc. and Dey L.P. (collectively the "Dey Defendants"), and Boehringer Ingelheim Corp., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Roxane, Inc. and Roxane Laboratories, Inc. (collectively the "Roxane Defendants").  In case the third parties desired to perform a single search for all documents, they could do so.

After the service of the subpoenas, the United States embarked upon a continuous and extensive course of negotiations and discussions with many of the subpoena recipients relating to

3

the scope of the subpoenas and the third parties' responses. Other subpoena recipients simply collected the documents and transmitted them to the United States without discussion.

TAP's Motion fails to articulate what documents it seeks to bar from production. Accordingly, it is impossible for the United States to ascertain the specific basis for TAP's requested relief. Importantly, the United States is aware of only two circumstances where TAP documents might be produced. In one case, the only TAP documents that might be produced would be those relevant to the substantive provisions of a given Customer Subpoena. For example, one particular third party routinely distributes reports to its member pharmacies entitled "**Top Current Spread Increases**" and "**Top AWP Spread Potential Impact**." It is completely speculative as to whether TAP products might show up on such an integrated report, but even if they did, such materials would be highly relevant to the importance of spread to the marketplace and would be discoverable.

In the second case, another third party, the American Society of Clinical Oncology ("ASCO"), suggested that its prior production in response to a subpoena issued in earlier cases against TAP[1] was substantially responsive to the United States' subpoena because, in response to the earlier subpoena, it had searched for AWP related materials. Thus, ASCO asked if providing the United States with a copy of the earlier production could constitute compliance with the United States' subpoena. The United States responded that additional documents would likely be necessary, but that it was receptive to considering the prior production to determine whether it would satisfy or at least minimize the burden on ASCO in connection with the current subpoena.

---

[1] *Walker v. TAP Pharm. Prod. Inc.*, No. CPM-L-682-01 (N.J. Super. Ct. May County Law Div.) and *Stetser v. TAP Pharm. Prod. Inc.*, No. 1-CVS-5268 (N.C. Super. Ct. New Hanover County).

On May 30, 2007, ASCO provided approximately 500 pages of documents to the United States. Although those documents have not yet been reviewed in detail, a quick review revealed only a handful of pages that pertained to TAP. The TAP documents that have been produced primarily relate to communications between ASCO and various government entities and employees on drug reimbursement and AWP related issues.

### III.  ARGUMENT

A.  **TAP'S MOTION TO QUASH IS UNTIMELY AND SHOULD BE DENIED**

    1.  **TAP'S MOTION TO QUASH IS UNTIMELY BECAUSE IT WAS NOT BROUGHT WITHIN 14 DAYS**

TAP's Motion to Quash is untimely because under Rule 45(c)(2)(B), "a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials . . . ." Fed. R. Civ. P. 45(c)(2)(B). Rule 45(c)(3)(A) states that, "on timely motion," the court may grant a motion to quash or modify a subpoena. *Id.* at 45(c)(3)(A). The failure to object to a subpoena within the specified time frame constitutes a waiver of the right to challenge the subpoena later, with limited exceptions. *See Minnesota School Boards Assoc. Insurance Trust v. Employers Insurance Co. of Wausau,* 183 F.R.D. 627, 629-30 (N.D. Ill. 1999) *(*party with standing to file a motion to quash a subpoena had to comply with the fourteen day deadline set forth in Rule 45); *Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir. 1990); *In re DG Acquisition Group*, 151 F.3d 75, 81 (2d Cir. 1998); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D. N.M. 1998); *In re Motorsports Merchandise Antitrust Litigation*, 186 F.R.D. 344, 349 (W.D. Va. 1999).

Only "in unusual circumstances and for good cause," will courts look past the failure of a subpoenaed party to comply with the deadline. *In re Motorsports Merchandise Antitrust Litigation*, 186 F.R.D. 344 at 349. In this case, TAP has utterly failed to proffer any explanation for its failure to object or move for relief on a timely basis. Importantly, TAP's counsel did not even contact the Government to raise objections until May 25, 2007; nearly one month after the return date of the ten Customer Subpoenas, and just days before the return date of three of the four Trade Group Subpoenas. The fourth Trade Group Subpoena, issued to National Home Infusion Association, had a response date of June 8th; two days after the filing of TAP's Motion to Quash.

TAP's motion inappropriately proceeds as if its timeliness was wholly inapplicable to this case, even though, after TAP's objections were belatedly brought to the Government's attention, it was the subject of substantial discussion between counsel during efforts to resolve this discovery dispute. Thus, TAP has failed to demonstrate any unusual circumstances or good cause for its delay. Moreover, some of the third parties served with the subpoenas have objected to protect their rights but they have not sought relief and they (like the third parties who have not served objections) are amicably working in good faith directly with the United States to resolve any concerns.

2. **TAP'S MOTION TO QUASH IS UNTIMELY BECAUSE IT WAS NOT BROUGHT PRIOR TO THE RETURN DATE OF THE SUBPOENAS**

TAP's Motion to Quash is also untimely because any relief to preclude discovery must be made before the date set for production in the subpoena. TAP's Motion to Quash was not made until after the return date of 13 of the 14 subpoenas, and therefore, TAP has failed to meet this obligation. Accordingly, any objections raised should be precluded on those subpoenas on this

6

basis alone.

A motion for a protective order "must be timely." *Anderson v. Avco Embassy Pictures, Corp.*, 1984 U.S. Dist. LEXIS 17663 (D. Mass. 1984) (motion for protective order was not seasonably made when filed one day before deposition, when notice of deposition had been filed seven weeks prior); *Baker v. Standard Industries*, 55 F.R.D. 178, 180 (D. P.R. 1972) (protective order was not timely when filed two days before deposition). As a general rule, "the order should ordinarily be obtained before the date set for the discovery, and failure to move at that time has been held to preclude objection later." 8 *Wright & Miller*, FEDERAL PRACTICE AND PROCEDURE § 2035.

The failure to bring an objection prior to the date set for production precludes the opportunity to bring those objections later. *See e.g.*, *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 2001) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections."); *In re Air Crash Disaster*, 130 F.R.D. 627, 630 (E.D. Mich. 1989) ("Failure to seek judicial relief prior to [the date set for production] will preclude a later objection.").

> 3. **TAP'S MOTION TO QUASH IS UNTIMELY BECAUSE IT HAS BEEN BROUGHT SO LATE THAT IT WILL PREJUDICE THE THIRD PARTIES AND THE UNITED STATES**

TAP's Motion to Quash should also be denied as untimely because it will prejudice the third parties and the United States. Substantial effort already has been expended both by the United States and by the third parties in connection with these subpoenas. Dozens of meetings have been held with many of the third parties in order to work through the nuances and scope of the subpoenas. Litigation hold memoranda have been issued. Employees have been asked to gather documents and some third parties have completed that process. Some of the materials are

in the process of being copied.  Some of the materials have already been produced.  Specialized computer hard drives and/or search databases are in the process of being created to allow for electronic searches, and in some cases the search for and review of electronic data is underway.  TAP's belated effort to close the barn door after the horse is gone would cause a significant amount of the foregoing work to be repeated causing harm to the third parties and to the United States.  The third parties and the United States would be harmed and prejudiced by having to redo a significant amount of work at considerable cost to the Government and third parties.  The United States would be additionally harmed by having lost a substantial portion (two and one-half months) of its discovery period.  By contrast, there would be no discernable prejudice to TAP as any third party information produced that related to TAP would be protected by the protective orders in place in this case.

    **4.**    **TAP'S MOTION TO QUASH SHOULD BE DENIED AS UNTIMELY AND BECAUSE IT IS MOOT TO THE EXTENT DOCUMENTS HAVE ALREADY BEEN PRODUCED**

The discovery deadline in this case is fast approaching.  Although the United States has agreed to allow additional time beyond the initial return date of the subpoenas, responses to the subpoenas are being produced by several of the third parties on a rolling basis.  The United States has begun to process and analyze the documents on a similar basis.  It would be extraordinarily wasteful to undo the work that has already been done over the past two and one-half months (representing over 20 percent of the entire discovery period in this case).

**B.**    **TAP'S MOTION TO QUASH SHOULD BE DENIED BECAUSE TAP LACKS STANDING TO CHALLENGE A SUBPOENA ISSUED TO A THIRD-PARTY**

It is well-settled that a party generally lacks standing to challenge a subpoena issued to a non-party via a motion to quash, unless the party can make a showing of privilege or personal

interest.  *See* 9A Federal Practice & Procedure, § 2459, at 41 (2d Ed. 1995); *In re Stone & Webster, Inc. Securities Litigation*, 2006 U.S. Dist. LEXIS 71288, *10-11 (D. Mass. 2006) (quoting *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975)); *United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir. 2005) (unpublished) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought in the subpoena."); *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21-22 (D. D.C. 2005) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter."); *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty.").

Although TAP is not a party to the case, the underlying reasoning is fully applicable. TAP is not being asked to produce any documents or suffer any burden at all.  If it intends to insert itself into a matter between a litigant and a third party, it must make a showing of privilege or personal interest in the information that has been sought by the United States.

As noted above, courts have found standing to challenge a subpoena to third parties when the information relates to a work product, confidential information, and private records.  *See e.g., Minnesota School Boards Ass. Insurance Trust*, 183 F.R.D. at 629 (defendant had standing to quash subpoena when information was work product); *Syposs v. United States*, 181 F.R.D. 224, 226-27 (W.D.N.Y. 1998) (defendant had standing to quash subpoena for cell phone records, because they were "confidential commercial information"); *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (party-defendant had standing to quash subpoena seeking bank records); *Nova Prods., Inc, v. Kisma Video*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (information on

9

defendants' private dispute in arbitration was not "meant to be private or confidential in any manner").

TAP's claims that the subpoenas seek confidential information are unsupported and incorrect. First, TAP's confidentiality argument is premised on a misrepresentation of the terms of the subpoena. Specifically, TAP quotes specification B contained in the Customer Subpoenas which requests "[D]ocuments sufficient to show the price paid by you for any drug that you purchased from the Defendant . . . ." TAP then claims that specification B directly applies to TAP. However, it fails to note that TAP is <u>not</u> included in the definition of "Defendant." Thus, TAP's primary basis for its claim of confidentiality is plainly wrong.

TAP has also completely failed to articulate the manner in which the subpoenas, although not actually applicable to TAP, would result in the production of confidential TAP documents.[2] As a result, it is impossible to evaluate whether any relief is necessary at all because the Motion to Quash never sufficiently explains what documents are at issue. Rather, the only information in the motion regarding the documents alleged to be at issue is both vague and wrong. In these circumstances it is not even possible for the United States to properly respond to the alleged concerns. Likewise, evaluating whether any relief is necessary or effectuating the appropriate tailoring of any relief is impossible.

The motion also claims that TAP makes "every effort" to maintain the confidentiality of its prices. This type of vague, unsupported contention is insufficient to support the requested

---

[2] The documents that have been produced that pertain in anyway to TAP are letters to or from public officials relating to HCFA's coverage policy for the drug Lupron. The documents to public officials were not even sent by TAP, but by a third-party, ASCO. Accordingly, TAP cannot claim that such documents are privileged or relate to a proprietary or personal interest.

relief. The insufficiency is especially obvious in this case where TAP's counsel has claimed confidentiality regarding practically every piece of paper it has ever produced in this case, including correspondence mailed **to** Abbott by United States Senators, and materials mailed by Abbott to publishers for the express purpose of having the information published.[3] Thus, TAP's vague, unsupported claims of confidentiality should be given no weight whatsoever.

C. **THE DOCUMENTS SOUGHT BY THE SUBPOENAS ARE RELEVANT TO THE CLAIMS OF THE UNITED STATES EVEN IF THEY MIGHT RELATE TO TAP**

TAP documents about AWP price manipulation, including marketing the spread, are highly relevant to the Government's case. Further, discussions about the spread between and among Abbott personnel, especially at the corporate level, were not limited to one division, and in fact, is the same conduct that was at issue in the Government's investigation into TAP, a joint venture between Abbott and Takeda Pharmaceutical Company, Ltd. Finally, there could be great prejudice to the third party recipients if forced to have to undertake a "TAP" redaction review, while there is little if any prejudice to TAP resulting from the production of documents from third parities that those third parties deem relevant to the Government's subpoena.

1. **TAP DOCUMENTS ARE RELEVANT AND DISCOVERABLE**

TAP's assumption that any document which happens to mention it could not possibly be relevant to the claims of the United States is wrong. Fed. R. Civ. P. 26(b)(1) permits discovery of any matter relevant to the claim or defense of any party as well as discovery reasonably calculated to lead to the discovery of admissible evidence. The 2000 Committee Notes further explain that a variety of types of information not "directly" relevant to the claims in the suit

---

[3] The United States will submit copies of these materials to the Court if requested, but has not done so at this time in order to avoid the need for yet another unnecessary motion for leave to file documents under seal.

could be relevant, including "other incidents of the same type, or involving the same product . . . ." The use of the term "or" shows that discovery is <u>not</u> limited to the exact same products. On the contrary, there are many potential TAP documents that could be relevant. A broad prohibition on ever seeing any TAP document is inappropriate. TAP is a joint venture of Abbott. If in the judgment of the third party there are materials from TAP that are responsive to the subpoena they should be subject to review by the United States.

Neither Defendant Abbott nor non-party TAP, can substitute their own judgment for the third party's judgment in ascertaining which documents, if any, are responsive to the United States' subpoenas. Notably, the TAP litigation involved civil claims against TAP related, in part, to inflated price manipulation. TAP was also indicted and entered into a criminal plea agreement and paid in excess of $290 million for, among other conduct, the marketing, sale, and pricing of a TAP injectable product. Incident to that criminal plea, TAP agreed to a limited waiver of attorney-client privilege over its documents and agreed to cooperate with the Government in the Government's investigation of other s concerning the conduct, including price manipulation, at issue in the TAP case.[4]

TAP ultimately settled the civil claims for over $585 million in September of 2001. TAP also entered into a Corporate Integrity Agreement with the United States Department of Health and Human Services Office of Inspector General ("CIA"). Abbott similarly signed a letter

---

[4] TAP's criminal plea agreement included the following: "TAP agrees to cooperate completely and truthfully with the U.S. Attorney in connection with his on-going investigation and prosecution of others for alleged violations of federal criminal law arising out of his investigation. TAP understands and agrees that such cooperation shall include the following, if requested by the U.S. Attorney: . . .
    (a)    prompt production to the U.S. Attorney of any document or record in the possession, custody or control of TAP relating to the subject matter of the investigation."

agreement with the United States with regard to the TAP civil claims, agreeing to cooperate with the Government's investigations in September 2001.  The Government is not in a position to rule out at this time that some of the conduct at issue in this case and the conduct at issue in the TAP case are unrelated or did not overlap.  One very open question in this case is what Abbott was doing, *if anything,* with regard to remedying its on-going illegal conduct set forth in the Amended Complaint at the same time it was entering into a letter agreement with the Government in the TAP case, and settling TAP civil claims relating to the same conduct.

>     2.      **THE AWP PRICE AND SPREAD MARKETING ISSUES CROSS ABBOTT DIVISIONS**

Discussions about the spread between and among Abbott personnel, especially at the corporate level, were not limited to one division, and in fact, was the same conduct at issue in the Governments' investigation into TAP, Abbott's joint venture with Takeda.  Further, some of the same individuals who were involved in or referenced in the TAP matter, including those responsible for government compliance, may also be involved in this case.  By way of example, in evaluating proposed Medicare and Medicaid policy and rule changes, Virginia Tobiason, who routinely worked with outside third parties, including trade groups, included in her evaluation memo discussing the proposed Medicare AWP injectables pricing policy changes some suggestions relating to Abbott's Hospital Products Division ("HPD"), as well as *TAP*, and Abbott's Renal division.  (*See* Exhibit 757 to Deposition of Virginia Tobiason, attached hereto as Exhibit C).  This memo was directed to senior officials at Abbott.  Ms. Tobiason currently holds a position as  second in command in Abbott's Compliance Division, and for 12 years served as a "reimbursement" expert in the Home Infusion business unit of HPD.  Documents such as Exhibit C clearly show why and how documents that pertain to TAP are highly relevant to the

Government's case.

### 3. THE BURDEN ON THIRD PARTIES TO SORT DOCUMENTS OUTWEIGHS ANY POTENTIAL PREJUDICE TO TAP

Further, many third parties who have information responsive to the Government's subpoenas may not have categorized their responsive documents into neat categories such as "TAP" only documents, or "Abbott HPD" drug documents. Rather, not unlike Ms. Tobiason, third parties may have documents that include references to TAP, and Abbott HPD, or may simply more generally refer to their Abbott and TAP relationships collectively. The United States already has advised Abbott of its willingness to keep TAP related documents as confidential documents under the protective orders governing this case.

Given the potential for intermingled references to TAP and Abbott in the third party documents, this Court would be placing an enormous burden upon the third parties to review and redact the documents for TAP references. At worst, the TAP information in those documents could be irrelevant – which is a question reserved for trial or pre-trial motion in limine practice. In sum, while there could be great prejudice to the third party recipients if forced to have to undertake a "TAP" redaction review, there is little prejudice to Abbott or TAP as the TAP documents will be treated as confidential and Abbott can always elect to seek their exclusion, if Abbott believes that they are not relevant to this case after they are reviewed. However, in order to review the documents, they must be produced if responsive to the Government's subpoenas in this case.

### D. TAP'S CLAIM THAT THE PROTECTIVE ORDER IN THIS CASE DOES NOT COVER THIRD PARTIES IS FALSE

TAP attempts to strengthen its position by claiming in its introductory paragraph that the "protective order in place in this litigation does not cover non-party TAP." This statement is

14

inexplicable and simply wrong. Paragraph 2 of the Protective Orders issued by this Court on February 16, 2007 (Exhibit D) and on December 13, 2002 (Exhibit E) both directly state they are fully applicable to discovery produced by third parties:

> The terms and conditions of this Order shall govern initial disclosures, the production and handling of documents, answers to interrogatories, responses to requests for admissions, depositions, pleadings, exhibits, other discovery taken pursuant to the Federal Rules of Civil Procedure, and all other information exchanged by the parties **or by any third party** in response to discovery requests or subpoenas.

Moreover, at least two of the subpoenaed third parties have executed protective order certifications in order to address their confidentiality concerns. The executed certifications were then served on TAP's counsel, Jones Day. *See* Attached Certifications and LexisNexis Transactions 15105702 and 15132796 attached as Exhibit F. Thus, TAP's claim that the protective orders will not be applicable to the third party discovery is completely erroneous and should be disregarded.

### E.   TAP'S REQUESTED RELIEF IS EXTRAORDINARILY RESTRICTIVE AND WOULD OBSTRUCT ESSENTIAL DISCOVERY

TAP's Motion to Quash seeks a complete prohibition on producing any document or information "pertaining to TAP." Such relief is extraordinarily restrictive and would obstruct the ability of the United States to conduct routine discovery. For example, the United States has already discovered letters written by Abbott to Red Book regarding published prices with the salutation of "Dear Abbott/Ross Data Vendor." *See* Exhibit G. If such a letter had instead been directed to an "Abbott/Tap Data Vendor," TAP's requested relief would bar its production even though it might be directly relevant to the claims in this case. Thus, TAP's requested relief is unfair and unnecessary, and could place third parties in the position of having to unnecessarily redact information. Abbott always has the option of objecting to the admission of TAP

15

information at trial, and TAP has identified no prejudice that it will suffer from the production of documents by third parties in discovery.

TAP's alternative requested relief of "limiting disclosure of TAP's confidential information" is reasonable, but is unnecessary because, if any confidential information actually exists and is produced, the current protective orders already provide such protections.

## IV. CONCLUSION

Wherefore, the United States respectfully requests that Third Party TAP Pharmaceutical Product, Inc.'s Motion for a Protective Order and Motion to Quash Plaintiff's Third Party Subpoenas (Docket Entry 4295) be denied in its entirety, and that the Court grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley
U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3272
Fax: (617) 748-3971

/s/ Rebecca A. Ford
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 307-1088
Fax: (202) 307-3852

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF
FLORIDA

For the relator, Ven-A-Care of the
Florida Keys, Inc.

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Attorneys for the Attorney
General
99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
Phone: (305) 961-9003
Fax: (305) 536-4101

_____
James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel: (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com

Dated: June 20, 2007

**CERTIFICATE OF SERVICE**

      I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' RESPONSE TO THIRD-PARTY TAP PHARMACEUTICAL PRODUCT, INC.'S MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFF'S THIRD PARTY SUBPOENAS** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.


Dated:  June 20, 2007
                                                        /s/ Rebecca A. Ford
                                                        Rebecca A. Ford