UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) ) |
| | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) |
| | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' RESPONSE TO:  (1) THIRD PARTY HOSPIRA, INC.'S MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFF'S THIRD PARTY SUBPOENAS AND (2) DEFENDANT ABBOTT LABORATORIES INC.'S MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFF'S THIRD PARTY SUBPOENAS**

The United States of America, through its undersigned counsel, respectfully files this

Response to:  (1) Third Party Hospira, Inc.'s Motion for a Protective Order and Motion to

Quash Plaintiff's Third Party Subpoenas (Docket Entry 4294, hereinafter referred to as

"Hospira's Motion to Quash") and (2) Defendant Abbott Laboratories Inc.'s Motion for a

Protective Order and Motion to Quash Plaintiff's Third Party Subpoenas (Docket Entry 4296,

hereinafter referred to as "Abbott's Motion to Quash") and states:

## I.  PRELIMINARY STATEMENT

For all of the reasons set forth below, Abbott's and Hospira's Motions to Quash should

be denied.[1]

---

[1]    The United States tried to explore whether a compromise position could be reached with Abbott and Hospira on the issues raised in their motions.  Counsel for the United States specifically asked whether Abbott and Hospira would compromise any of their positions if the United States agreed to certain changes in the scope of the subpoenas.  However, Abbott and Hospira categorically refused to modify or withdraw any objections regardless of any compromise suggested by the United States.

A.    **Abbott and Hospira's Motions to Quash Are Factually and Legally Incorrect, and Omit Crucial Information**

First, Hospira and Abbott did not timely raise objections to the United States' subpoenas. Therefore, they have waived their right to the requested relief.  In fact, neither Abbott nor Hospira raised any objections until *after the return date of the subpoenas*; a fact they fail to mention, much less address, in their Motions to Quash.  As Abbott's and Hospira's counsel is well aware, the United States already has negotiated the parameters of the subpoenas and has started receiving documents responsive to those subpoenas (ten of which were issued over two and one-half months ago) from the third parties.  Accordingly, their failure to timely object will substantially prejudice the United States.  Abbott's and Hospira's failure to timely object will also prejudice the third parties.  Over the past two and one-half months, the United States has engaged in extensive discussions with the third parties to narrow the focus of the subpoenas. The third parties, who are ably represented by counsel, have already expended considerable effort searching for and responding to the subpoenas upon the terms discussed with the United States.  Abbott's and Hospira's motions call for third parties to do additional work, beyond what would be necessary for the third parties to comply with the subpoenas, to conceal evidence from the United States.

Second, Abbott and Hospira lack standing to challenge the subpoenas issued to third-parties.

Third, the information sought by the United States from third parties is relevant and discoverable.

Fourth, neither Abbott nor Hospira have shown any burden to them which should prevent the Government's third party discovery from proceeding.

2

Finally, the relief Abbott and Hospira are requesting is extraordinarily restrictive and would obstruct essential discovery.

**B.    Abbott's Complaints about the Breadth of Discovery Should Be Given No Weight**

Abbott's complaints about the breadth of discovery should be given no weight because Abbott has sought even broader discovery from the United States and from third parties, and because Abbott has no knowledge of the details of the extensive discussions the United States has had with the third parties to tailor the requested discovery.

**1.    Abbott Has Consistently Pursued Wide Ranging Discovery**

Abbott has consistently pursued incredibly wide ranging discovery in this case while simultaneously attempting to place extreme restrictions on discovery pursued by the United States.  Abbott has demanded discovery without any limits whatsoever on time, drugs, manufacturer or litigation.[2]  For example:

> a.    Abbott has demanded discovery on information about every drug of every drug manufacturer.[3]
>
> b.    Abbott has specifically demanded discovery not just of the drugs sued upon by the United States but also for **any other drug that contains the same chemical or can be used to treat the same diseases.**[4]

---

[2]     Dozens of demands in Abbott's First Set of Requests For Production of Documents and Tangible Things to Plaintiff United States of America seek information in the hands of the Government about every drug ever made by every drug manufacturer in the world. *See* excerpts, attached as Exhibit A.  Similarly broad requests are included in the subpoenas served by Abbott on the Medicaid Programs of California, Hawaii, Idaho, Maryland, Montana, Ohio, South Carolina, Utah and Washington.  *See e.g.,* Subpoena to Utah, attached as Exhibit B.

[3]     *See e.g.,* Abbott's First Set of Requests For Production of Documents and Tangible Things to Plaintiff United States of America, ¶¶ 22, 24, 25, 26 and 32, and Abbott's Third Party Subpoena, ¶¶ 2, 5, 8, 9, 10, 11, 15, 16 and 26.

[4]     *See e.g.,* Abbott's First Set of Requests For Production of Documents and Tangible Things to Plaintiff United States of America, ¶¶ 6, 8, 10, 13,17, 18, 52, 53, 89 and 102.

c.      Abbott has demanded discovery pertaining to **every drug pricing litigation matter in the country without regard to whether it is even a defendant in those matters**.[5]

d.      Abbott has demanded discovery for periods ranging more than 40 years, and has even demanded discovery without any limit whatsoever as to time periods.[6]

As shown by the above examples, Abbott has sought wide ranging discovery, regardless of time period, drugs or manufacturer.  Unlike the discovery sought by Abbott, which is exceedingly broad, the Government's discovery, including the discovery sought from third parties, is conceptually much more narrow, focusing on the conduct of Abbott.  For these reasons, Abbott's objections ring hollow.

**2.      Abbott Has No Knowledge of the United States' Agreements to Tailor the Requested Discovery to Limit the Burden to Third Parties**

Further, Abbott's complaints about the breadth of discovery should be given no weight because it has no knowledge of the details of the extensive discussions the United States has had with the third parties to tailor the requested discovery.  This point further underscores the reason why the law generally holds that those in the position of Abbott and Hospira have no standing to challenge subpoenas to third parties.  The United States has been negotiating the details of the productions directly with those third parties, who are ably represented by capable counsel of their choosing.  Neither the United States nor the third parties should be saddled with the obligation to negotiate issues impacting the third parties with interlopers who seek to obstruct

---

[5]      *See e.g.,* Abbott's First Set of Requests For Production of Documents and Tangible Things to Plaintiff United States of America, ¶ 58, 112, and 115, and Abbott's Third Party Subpoena, ¶¶ 23, 24 and 25.

[6]      *See e.g.,* Abbott's First Set of Requests For Production of Documents and Tangible Things to Plaintiff United States of America, ¶¶ 12, 18, 19, 20, 25, 57, 58, 59, 60, 63 and 64 and Abbott's Third Party Subpoena, ¶¶ 5 and 26.

rather than facilitate the discovery process.

**C.      Abbott's and Hospira's Motions to Quash Completely Fail to Identify Any Objectionable Portions in the Trade Group Subpoenas**

Although the United States disagrees with its reasons, Abbott and Hospira have at least articulated a theory as to the basis for their objections to the subpoenas the United States issued to ten of Abbott's customers (the "Customer Subpoenas").  Conversely, Abbott and Hospira have wholly failed in their burden of showing that the four subpoenas issued by the United States to industry trade groups (the "Trade Group Subpoenas") are objectionable.  In fact, they have failed to point to a single objectionable paragraph in those four subpoenas, but instead rely upon an approach of lumping into one category the Trade Group Subpoenas and the Customer Subpoenas, even though the two groups are dissimilar and the subpoenas call for completely different types of records.

## II.   STATEMENT OF FACTS

The United States issued ten subpoenas to Abbott customers on March 30, 2007 and promptly served notice of the same upon Abbott.  *See* LexisNexis Transaction:  14313107 - Notification of Service, attached as Exhibit C.  The United States issued three subpoenas to industry trade groups on April 27, 2007 and one Trade Group Subpoena on May 11, 2007, and promptly served notice upon Abbott.  *See* LexisNexis Transactions 14642605, 14642730, 14642851 and14807726, and courtesy e-mails sent directly to Abbott Counsel, attached hereto as Exhibit D.

The Customer Subpoenas sought 13 categories of documents generally relating to the marketing and purchase of the drugs at issue in this case, the business that they conduct with the Defendant, along with related communications and analyses of purchase prices and spreads.

5

The Trade Group Subpoenas sought 20 categories of documents generally relating to the membership of the Defendant in the trade group, communications with the price reporting publications and government officials, and analyses of drug reimbursement policy and spreads.

The term "Defendant" is defined in the subpoenas as "Abbott Laboratories, Inc." and related entities, including, but not limited to, Hospira.  In order to minimize the potential burden on the third parties by allowing for the collection of all pertinent documents at the same time, a cover letter accompanying the subpoenas explained that subsequent subpoenas would likely be issued in connection with Dey, Inc., Dey L.P., Inc. and Dey L.P. (collectively the "Dey Defendants"), and Boehringer Ingelheim Corp., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Roxane, Inc. and Roxane Laboratories, Inc. (collectively the "Roxane Defendants").  In case the third parties desired to perform a single search for all documents, they could do so.

After the service of the subpoenas, the United States embarked upon a continuous and extensive course of negotiations and discussions with many of the subpoena recipients relating to the scope of the subpoenas and the third parties' responses.  Other subpoena recipients simply collected the documents and transmitted them to the United States without discussion.

Abbott's and Hospira's Motions to Quash were not made until after the return date of 13 of the 14 subpoenas.  In fact, TAP's counsel did not even contact the Government to raise objections until May 25, 2007; nearly one month after the return date of the ten Customer Subpoenas, and just days before the return date of three of the four Trade Group Subpoenas. When Abbott and Hospira filed their Motions to Quash on June 6th, the return dates on all of the Customer Subpoenas and three of the Trade Group Subpoenas had past.  The fourth Trade Group Subpoena, issued to National Home Infusion Association ("NHIA"), had a response date of June

8th; two days after the filing of TAP's Motion to Quash.  Prior to the filing of Abbott's and Hospira's Motions, the United States had engaged in discussions on two separate occasions with counsel for NHIA regarding NHIA's response to the subpoena.

## III.  ARGUMENT

### A.  Abbott's and Hospira's Motions To Quash Should Be Denied Because They Are Untimely

#### 1.  Abbott's and Hospira's Motions to Quash are Untimely Because They Were Not Brought Within the Time Permitted by Rule 45

Abbott's and Hospira's Motions to Quash are untimely because under Rule 45(c)(2)(B), "a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials . . . ."  Fed. R. Civ. P. 45(c)(2)(B).  Rule 45(c)(3)(A) states that, "on timely motion," the court may grant a motion to quash or modify a subpoena.  *Id.* at 45(c)(3)(A).  The failure to object to a subpoena within the specified time frame constitutes a waiver of the right to challenge the subpoena later, with limited exceptions.  *See Minnesota School Boards Assoc. Insurance Trust v. Employers Insurance Co. of Wausau,* 183 F.R.D. 627, 629-30 (N.D. Ill. 1999) *(*party with standing to file a motion to quash a subpoena had to comply with the fourteen day deadline set forth in Rule 45)*; Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir. 1990); *In re DG Acquisition Group*, 151 F.3d 75, 81 (2d Cir. 1998); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D. N.M. 1998); *In re Motorsports Merchandise Antitrust Litigation*, 186 F.R.D. 344, 349 (W.D. Va. 1999).

Only "in unusual circumstances and for good cause," will courts look past the failure of a subpoenaed party to comply with the deadline.  *In re Motorsports Merchandise Antitrust*

*Litigation*, 186 F.R.D. at 349.  In this case, Abbott and Hospira have utterly failed to proffer any explanation for their failure to object or to move for relief on a timely basis.  Their motions inappropriately proceed as if their failure to timely object was wholly inapplicable to this case, even though, once Abbott and Hospira belatedly raised their objections, their failure to timely object was the subject of substantial discussion between counsel during efforts to resolve this discovery dispute.[7]  Thus, Abbott and Hospira have failed to demonstrate any unusual circumstances or good cause for their delay.  Moreover, some of the third parties served with the subpoenas have objected to protect their rights but they have not sought relief and they (like the third parties who have not served objections) are amicably working in good faith directly with the United States to resolve any concerns.

### 2.    Abbott's and Hospira's Motions to Quash are Untimely Because They Were Not Brought Prior to the Return Date of the Subpoenas

Abbott's and Hospira's Motions to Quash are also untimely because any relief to preclude discovery must be made before the date set for production in the subpoena.  Abbott and Hospira have failed to meet this obligation for 13 of the 14 subpoenas.[8]  Therefore, any objections raised should be precluded on those subpoenas on this basis alone.

A motion for a protective order "must be timely."  *Anderson v. Avco Embassy Pictures*, Corp., 1984 U.S. Dist. LEXIS 17663 (D. Mass 1984) (motion for protective order was not

---

[7]    Although counsel for Abbott and Hospira did not contact the Government to raise objections until May 25, 2007; nearly one month after the return date of the ten Customer Subpoenas, and just days before the return date of three of the four Trade Group Subpoenas, during the discussions that ensued prior to Abbott and Hospira filing their Motions to Quash on June 6, 2007, counsel for the United States raised Abbott's and Hospira's failure to timely object and the resulting prejudice several times.

[8]    The subpoena issued to NHIA had a response date of June 8th, two days after Abbott and Hospira filed their Motions to Quash.

seasonably made when filed one day before deposition, when notice of deposition had been filed seven weeks prior); *Baker v. Standard Industries*, 55 F.R.D. 178, 180 (D. P.R. 1972) (protective order was not timely when filed two days before deposition).  As a general rule, "the order should ordinarily be obtained before the date set for the discovery, and failure to move at that time has been held to preclude objection later." 8 *Wright & Miller*, FEDERAL PRACTICE AND PROCEDURE § 2035.

The failure to bring an objection prior to the date set for production precludes the opportunity to bring those objections later.  *See, e.g.*, *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 2001) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections."); *In re Air Crash Disaster*, 130 F.R.D. 627, 630 (E.D. Mich. 1989) ("Failure to seek judicial relief prior to [the date set for production] will preclude a later objection.").

### 3.  Abbott's and Hospira's Motions to Quash are Untimely Because They Have Been Brought So Late that Third Parties and the United States Will Be Prejudiced

Abbott's and Hospira's Motions to Quash should also be denied as untimely because they would cause prejudice to the third parties and the United States.  Substantial effort already has been expended both by the United States and by the third parties in connection with these subpoenas.  Dozens of meetings have been held with many of the third parties in order to work through the nuances and scope of the subpoenas.  Litigation hold memoranda have been issued. Employees have been asked to gather documents and some third parties have completed that process.  Some of the materials are in the process of being copied.  Some of the materials have already been produced.  Specialized computer hard drives are in the process of being created to allow for electronic searches and, in some cases, the search for and review of electronic data is

underway.  Abbott's and Hospira's belated efforts to close the barn door after the horse is gone would cause a significant amount of the foregoing work to be repeated causing harm to the third parties and to the United States.  The third parties and the United States would be harmed and prejudiced by having to redo a significant amount of work at considerable cost to the Government and third parties.  The United States would be additionally harmed by having lost a substantial portion (two and one-half months) of its discovery period.  By contrast, there would be no discernable prejudice to Abbott or Hospira as the third party information would be protected by the applicable protective orders.

>    **4.    Abbott's and Hospira's Motions to Quash are Moot to the Extent Documents Have Already Been Produced**

The discovery deadline in this case is fast approaching.  Although the United States has agreed to allow additional time beyond the initial return date of the subpoenas, responses to the subpoenas have been produced on a rolling basis.  The United States has begun to process and analyze the documents on a similar basis.  It would be extraordinarily wasteful to undo the work that already has been done over the past two and one-half months (representing over 20 percent of the entire discovery period in this case).

**B.    Abbott's and Hospira's Motion to Quash Should be Denied Because Abbott and Hospira Lack Standing to Challenge Subpoenas Issued to Third Parties**

It is well-settled that a party generally lacks standing to challenge a subpoena issued to a non-party via a motion to quash, unless the party can make a showing of privilege or personal interest.  *See* 9A Federal Practice & Procedure, § 2459 at 41 (2d Ed. 1995); *In re Stone & Webster, Inc. Securities Litigation*, 2006 U.S. Dist. LEXIS 71288, *10-11 (D. Mass. 2006) (quoting *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975)); *United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir. 2005) (unpublished) ("Ordinarily, a party does not

have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought in the subpoena."); *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21-22 (D. D.C. 2005) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter."); *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty.").

Although Hospira is not a party to the case, the underlying reasoning is fully applicable. Hospira is not being asked to produce any documents or suffer any burden at all.  If it intends to insert itself into a matter between a litigant and a third party, it must make a showing of privilege or personal interest in the information that has been sought by the United States.  It has not done so.

Courts have found standing to challenge a subpoena to third parties when the information relates to a work product, confidential information, and private records.  *See, e.g., Minnesota School Boards Ass. Insurance Trust*, 183 F.R.D. at 629 (defendant had standing when information was "work product"); *Syposs v. United States*, 181 F.R.D. 224, 226-27 (W.D.N.Y. 1998) (defendant had standing to quash subpoena for cell phone records, because they were "confidential commercial information"); *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (party-defendant had standing to quash subpoena seeking bank records); *Nova Prods., Inc, v. Kisma Video*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (information on defendants' private dispute in arbitration was not "meant to be private or confidential in any manner").

Hospira's claim that the subpoenas require disclosure of sensitive commercial information is unsupported.  A careful reading of the motion reveals copious reference to this

general issue, but not a single word to actually explain how the release of information called for by the Customer Subpoenas would cause Hospira harm.  Hospira cannot rely on vague allusions to support its claim.  Without a simple articulation of the harm or the support of an affidavit, the motion is woefully short of meetings its burden.  After all, Hospira's prices are in the possession of thousands of customers, wholesalers, patients, insurance companies and publishers.  Further, all of the information is easily protected by existing protective orders in place in this case.

The insufficiency of Hospira's argument is especially obvious in this case where Abbott's counsel – which is the same counsel that represents Hospira – has claimed confidentiality regarding practically every piece of paper it has ever produced in this case, including correspondence mailed **to** Abbott by United States Senators, and materials mailed by Abbott to publishers for the express purpose of having the information published.[9]  Thus, Hospira's vague, unsupported claims of confidentiality should be given no weight whatsoever.

**C.**  **The Documents Sought by the Subpoenas are Relevant to the Claims of the United States, Even if Some Relate to Hospira, Other Drugs or the Post-2001 Time Period**

**1.**  **Abbott's Motion Attacks Discovery Identical to Discovery Abbott has Sought From Third Parties**

First, Abbott's one-sided approach to discovery is sufficient basis for denying its motion.  For example, Abbott argues that the United States' subpoenas are objectionable because they seek documents "reflecting reimbursement rates or methodologies published by any third party affecting marketing sale or utilization of any drug."  Abbott Motion to Quash, p. 3, bullet three.  Compare that to the language of the ten third party subpoenas served in this case by Abbott

---

[9]  The United States will submit copies of these materials to the Court if requested, but has not done so at this time in order to avoid the need for yet another unnecessary motion for leave to file documents under seal.

which demand, "[F]rom 1985 to the present, any data, report, testimony, audit study, analysis or survey relating to the methodologies or formulas used to determine reimbursement for drugs, or the administration or dispensing of drugs. . . ."  Exhibit B, ¶ 8.  The only difference between Abbott's own request and the request Abbott seeks to quash is that one applies "to drugs" and the other applies to "any drug."  Clearly, Abbott has made its own determination that such documents are relevant to the issues in this litigation.

### 2.    Many Materials Concerning Other Drugs are Directly Relevant to the Claims of the United States

Evidence of the manner in which Abbott treats products other than those for which damages are sought in the Complaint are directly relevant to the claims of the United States and to the defenses asserted by Abbott.  In terms of proving up the case of the United States, any evidence, especially documentary evidence, that demonstrates Abbott's conduct, understanding, knowledge and manipulation of the AWP on any drug is relevant and discoverable in this case where the claims of the United States depend, in part, on AWP manipulation and spreads.  Thus, some discovery into other drugs is necessary.  In fact, this Court has previously ruled that, with respect to the Government's discovery against Abbott, such evidence must be produced.  *See* Docket Entry 4244, May 22, 2007 Order stating, "The motion to compel filed by plaintiff the United States . . . is allowed inasmuch as defendant Abbott . . . represents and agrees to produce . . . all documents that reflect any alleged effort on the part of Abbott to market the spread or manipulate the published Average Wholesale Price ("AWP") for any drug within Abbott's former hospital products division."

In addition, discovery into this issue is necessary to rebut defenses already asserted by Abbott.  A clear example of the need for this evidence to rebut Abbott's defenses is found in

Abbott's setting of AWPs on other drugs.  One of Abbott's key defenses in this case is that it

never set AWPs.  Abbott has asserted this in a blanket fashion, essentially implying that it is a

corporate policy that applies to the entire Company for all drugs.  For example, United States'

Interrogatory 12 asked Abbott to identify employees involved with reporting AWPs.  Abbott

refused to answer the interrogatory because it "suggests that Abbott determines and/or reports an

AWP."  *See* Abbott's Response to United States' First Set of Interrogatories, p. 12, attached as

Exhibit E.  Abbott's objection was not limited to the drugs in the Complaint.  As a result, Abbott

has opened the door to discovery on this issue because it will be a defense in the case.  Abbott

cannot be allowed to defend the case on the basis that it never set AWPs on any drug but object

to the discovery by the United States on this very issue.

Moreover, the United States already knows of the existence of some evidence that

contradicts Abbott's defense.  For example, the United States has obtained copies of several

transmittals from Abbott to various publishing companies which command them to publish

specific AWPs on several different drugs.  Following are examples of Abbott setting AWPs on

drugs other than those specifically alleged in the Complaint:

a.  Michael Heggie, Abbott's Reimbursement Manager, writes an internal e-mail dated January 16, 1996 stating that he wants to change the AWP for Calcijex.  **"I have reported for the past several years the AWP for Calcijex to both Red Book and Blue Book/First Data Bank** . . . . The reason this is important is that dialysis clinic are paid by Medicare for Calcijex.  The Medicare Intermediaries get their pricing from the published AWP's of the three reporting agencies.  Medicare pays 80% of published AWP.  **We purposely set the AWP to be about 125% of the published single case price.**  All other HPD products are reported with an AWP of 120%  of list" to make the customer whole for reimbursement."  *See* attached Exhibit F.

b.  Michael Heggie, Abbott's Reimbursement Manager, writes to Medispan on January 16, 1996 and states "will you please change the AWP for the following two list numbers."  He then provides the exact AWP's that he

wants published for Calcijex and concedes that he is overriding Medispan's usual formula. *See* attached Exhibit F.

c.    Michael Heggie, Abbott's Reimbursement Manager, writes to Medispan on September 19, 1997 and states, "Would you please adjust the price of our product Calcijex . . . . The New AWP will be $1323.69 per case" and on a second version of Calcijex states " The New AWP will be $2419.83 per case." *See* attached Exhibit F.

d.    An unsigned letter on Abbott letterhead was sent to Red Book on March 31, 1998 enclosing a list of AWP's on 11 different products including Biaxin Oral Suspension, Gabitril Tablets and PCE. *See* attached Exhibit F.

e.    Tena Brown, Abbott Renal Care, writes to Red Book on April 21, 1998 and specifies for Abbott's "new product ZEMPLAR" that "[t]he AWP to be included in the may publication are [sic] as follows: . . . $2648.00 . . . $5296.00". *See* attached Exhibit F.

f.    Tena Brown, Abbott Renal Care, writes to Red Book on January 3, 2000 and states, "Would you please adjust the price of our product Calcijex . . . The New AWP will be $1390.66 per case" and on a second version of Calcijex states " The New AWP will be $2452.02 per case." *See* attached Exhibit F.

In sum, the continued use of Abbott's approach will result in a deception to the Court and the jury regarding Abbott's actual conduct. Abbott cannot be allowed to defend the case on the basis that it never set AWPs for any drugs at any time and deny any and all discovery into this issue unless it is on the exact drugs in the Complaint, at the same time that the evidence already discovered shows otherwise. Additional discovery of Abbott's role in setting AWPs is appropriate regardless of the drug. Otherwise, the United States will be severely prejudiced in overcoming Abbott's defense. Such discovery is also relevant to showing that Abbott knew how to set AWPs, that Abbott knew that Medicare relied on AWPs, and that Abbott set AWPs in amounts designed to game the Medicare Program. All of this evidence is highly relevant and discoverable.

3.      **Many Materials Beyond 2001 Are Directly Relevant to the Claims of the United States and to the Defenses of Abbott**

Evidence of Abbott's conduct after 2001 is also relevant.  The fact that damages are not alleged past 2001 or that Medicare stopped relying on AWP after 2003 is not determinative of this issue.  Conduct occurring after the conclusion of a scheme can be very probative.  For example, the various letters quoted above show that Abbott was quite willing to set an AWP in at least some circumstances prior to 2003.  However, if evidence from 2004 is considered, a question of whether there was some change in corporate policy immediately becomes evident.  Specifically, on April 22, 2004, an Abbott employee sent an e-mail to Red Book declaring, "[W]e do not establish or provide AWP."  *See* Exhibit G.  That e-mail is in stark contrast to the several letters sent to Red Book which told them what AWP to publish on several different drugs over the course of several years.  Thus, the United States is entitled to conduct discovery into Abbott's corporate policy and any changes thereto regarding AWPs reported to Red Book.  The letters attached to this pleading demonstrate that there was a time when Abbott reported AWPs to Red Book and then there was a time when Abbott told Red Book it would not do so.  The United States is entitled to gather evidence of the change and then to pursue the evidence to determine when, why and by whom the policy was changed.

In addition, the damages relating to the Dey defendants and the Roxane Defendants extend past 2001 or 2003.  A single, consistent approach to the discovery requested from third parties may very well lessen the burden on them in complying with third party discovery requests.

4.      **Many Hospira Materials are Relevant to this Case**

Hospira's assumption that any document which happens to mention it could not possibly

16

be relevant to the claims of the United States is wrong.  Fed. R. Civ. P. 26(b)(1) permits

discovery of any matter relevant to the claim or defense of any party as well as discovery

reasonably calculated to lead to the discovery of admissible evidence.  The 2000 Committee

Notes further explain a variety of types of information not "directly" relevant to the claims in the

suit could be relevant, including "other incidents of the same type, or involving the same product

. . . ."  The use of the term "or" shows that discovery is <u>not</u> limited to the exact same products.

Hospira was a spinoff corporation of Abbott's Hospital Products Division ("HPD"),

which sold the drugs and products that are the subject of this lawsuit.  Accordingly, there are

many potential Hospira documents that could be relevant.  A broad prohibition on ever seeing

any Hospira document is inappropriate.  If, in the judgment of the third party, there are materials

from Hospira that are responsive to the subpoena, those materials should be subject to review by

the United States.  Neither Defendant Abbott nor non-party Hospira  can substitute their own

judgment for the third party's judgment in ascertaining which documents, if any, are responsive

to the United States' subpoenas.

At the time of the spinoff, Hospira simply assumed Abbott HPD's sales contracts for the

sales of these drugs and continued to fulfill Abbott's obligations thereunder.  Some of these

existing contracts extended for years and spanned both the operative period of the case and the

period after the Hospira spinoff.

To the extent that Hospira continued Abbott HPD's existing contracts in dealing with

third parties, third parties may have Hospira related information that is germane to the facts and

issues in this case concerning those former Abbott HPD relationships, or marketing and pricing

practices.  Critically, how Hospira dealt with those existing Abbott HPD contractual

arrangements and third parties after the spinoff could be highly significant in showing Hospira's

17

subsequent remedial measures and/or changes to the assumed existing Abbott HPD long term
contractual arrangements.  The Government is entitled to third party documents to identify
Abbott HPD's course of conduct with regard to course of dealings, marketing, pricing and sales,
and any changes that may have resulted at the time of or after the spinoff.

Seeking information from third parties concerning Hospira is also important in view of
Abbott's discovery failures to date.[10]  Hospira took over Abbott's HPD office space.  Most or all
of Abbott's HPD's records *were not relocated to an Abbott location* at the time that Hospira
assumed occupancy of the Abbott HPD office space.  Possession, custody and control of those
historic Abbott HPD documents were also assumed by Hospira, including all or most of Abbott's
HPD's books, records and computer data concerning Abbott HPD's sales activities for the drugs
at issue in the Amended Complaint.  Despite the Government's long outstanding discovery
requests, to the best of the Government's knowledge, Abbott has not produced additional Abbott
HPD documents maintained by Hospira or located it Hospira's offices to date.

According to the March 2007 testimony of Abbott's 30(b)(6) witness, Abbott was going
to undertake a search at Hospira for some Abbott HPD documents. Since that deposition, the
Government has been given little information that Abbott has undertaken such a search or the
level of progress to date.  As a result, the Government is entitled to see if third parties have such
documents, at a minimum, in view of Hospira's and Abbott's production failures to date.

**D.      Abbott Has Shown No Burden To Itself**

Abbott included a section in its Motion to Quash which discusses whether the burden of

---

[10]      The Government agreed to dismiss Hospira from its original suit only after
Abbott and Hospira agreed that Abbott, on Hospira's behalf, would produce relevant documents
in Hospira's possession custody or control.  No such production has taken place to date and it is
impeding the Government's discovery initiatives in this case.  *See* Exhibit H.

18

reviewing  discovery obtained from third parties should be a factor in this matter.  However, a close reading of the motion demonstrates that Abbott never actually states that reviewing these documents would be a burden and certainly never asserts that reviewing the documents would be an undue burden.  And, of course, there is no support in Abbott's motion for granting its requested relief based upon a claim of burden, let alone upon an unsupported claim of burden. Abbott fails to address the scope of the discovery or its own resources, probably because it is not familiar with the scope of the expected production and because its own resources are vast (in another context Abbott counsel has conceded that 25 contract attorneys have been hired to review documents).

Abbott cites to *Auto-owners Ins. Co. v. Southeast Floating Docks*, 231 F.R.D. 426 (M.D. Fla. 2005) to support its motion, but fails to include the sentences immediately following the portion it quoted, which is highly probative on this issue:  "Defendants, however, have made no showing of undue burden.  Further, Defendants do not have standing to quash the subpoenas on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds."  The other case cited by Abbott, *Grider v. Keystone Health Plan Central, Inc.*, 2005 WL 2030456 (M.D. Pa. 2005) was addressing a motion filed by the third party and is not pertinent to the matter presented.

**E.**      **Abbott's and Hospira's Requested Relief is Extraordinarily Restrictive and Would Obstruct Essential Discovery**

Abbott's and Hospira's Motions to Quash seek a complete prohibition on producing any document or information "pertaining to Hospira."  Such relief is extraordinarily restrictive and would obstruct the ability of the United States to conduct routine discovery.  For example, the United States already has discovered letters written by Abbott to Red Book regarding published

prices with the salutation of "Dear Abbott/Ross Data Vendor."  *See* Exhibit I.  If such a letter had instead been directed to an "Abbott/Hospira Data Vendor," Abbott's requested relief would bar its production even though it might be directly relevant to the claims in this case.  Thus, Abbott's requested relief is unfair and unnecessary, and could place third parties in the position of having to unnecessarily redact information.  Abbott always has the option of objecting to the admission of Hospira information at trial, and neither Abbott nor Hospira have identified any prejudice that either will suffer by allowing the Government's third party discovery to proceed.

Abbott's alternative requested relief of "limiting disclosure of Hospira's confidential information" is reasonable, but is unnecessary because, "if any confidential information actually exists and is produced, the current protective orders already provide such protections.

## IV. <u>CONCLUSION</u>

Wherefore, the United States respectfully requests that Third Party Hospira, Inc.'s Motion for a Protective Order and Motion to Quash Plaintiff's Third Party Subpoenas (Docket Entry 4294) and Defendant Abbott Laboratories Inc.'s Motion for a Protective Order and Motion to Quash Plaintiff's Third Party Subpoenas (Docket Entry 4296) be denied in their entirety, and that the Court grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN                    PETER D. KEISLER
UNITED STATES ATTORNEY                 ASSISTANT ATTORNEY GENERAL

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley                    /s/ Rebecca A. Ford
U.S. Courthouse                        Joyce R. Branda
Suite 9200, 1 Courthouse Way           Daniel R. Anderson
Boston, MA 02210                       Renée Brooker
Phone: (617) 748-3272                  Justin Draycott
Fax: (617) 748-3971                    Rebecca A. Ford
                                       Gejaa T. Gobena
                                       Civil Division
R. ALEXANDER ACOSTA                    Commercial Litigation Branch
UNITED STATES ATTORNEY                 P. O. Box 261
SOUTHERN DISTRICT OF                   Ben Franklin Station
FLORIDA                                Washington, D.C.  20044
                                       Phone:  (202) 307-1088
/s/ Mark A. Lavine                     Fax: (202) 307-3852
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith                 For the relator, Ven-A-Care of the
Special Attorneys for the Attorney     Florida Keys, Inc.
General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003                 James J. Breen
Fax: (305) 536-4101                    The Breen Law Firm, P.A.
                                       3350 S.W. 148th Avenue
                                       Suite 110
                                       Miramar, FL 33027
                                       Tel:  (954) 874-1635
                                       Fax: (954) 874-1705
Dated:  June 20, 2007                  Email: jbreen@breenlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' RESPONSE TO THIRD PARTY HOSPIRA'S AND DEFENDANT ABBOTT PHARMACEUTICAL PRODUCT, INC.'S MOTIONS FOR PROTECTIVE ORDER AND MOTIONS TO QUASH PLAINTIFF'S THIRD PARTY SUBPOENAS** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

<span style="margin-left:40%">/s/ Rebecca A. Ford</span>

Dated:  June 20, 2007                    Rebecca A. Ford