UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) Civil Action No. 01-12257-PBS ) |
| THIS DOCUMENT RELATES TO: | ) Hon. Patti B. Saris ) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.*, CIVIL ACTION NO. 06–CV-11337-PBS | ) Magistrate Judge Marianne B. Bowler ) ) ) ) |

# EXHIBIT A

**To the United States' Response to: (1) Third Party Hospira, Inc.'s Motion for a Protective Order and Motion to Quash Plaintiff's Third Party Subpoenas and (2) Defendant Abbott Laboratories, Inc.'s Motion for a Protective Order and Motion to Quash Plaintiff's Third Party Subpoenas**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel.<br><br>VEN-A-CARE OF THE FLORIDA KEYS, INC., a Florida corporation, by and through its principal officers and directors, ZACHARY T. BENTLEY and T. MARK JONES,<br><br>                     Plaintiff,<br>v.<br><br>ABBOTT LABORATORIES, INC. and HOSPIRA, INC.,<br><br>                     Defendants. | Case No.: 06-CV-21303-ASG<br><br>Hon. Alan S. Gold |

**DEFENDANT ABBOTT LABORATORIES INC.'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND TANGIBLE
THINGS TO PLAINTIFF UNITED STATES OF AMERICA**

Defendant Abbott Laboratories, Inc. ("Abbott"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, requests that Plaintiff the United States of America produce the documents requested herein by making them available for inspection and copying at the offices of Jones Day, 51 Louisiana Ave., NW, Washington, DC 20001, or at such other place and in such manner as may be mutually agreed upon between counsel for the parties, within thirty (30) days from the date of service of these Requests.

**DEFINITIONS**

1.      "Abbott" means Abbott Laboratories, Inc. and Abbott Laboratories and any of their past or present officials, officers, representatives, agents, assigns, attorneys, employees, divisions, departments, agencies, affiliates, subsidiaries, and all other persons or entities acting or purporting to act on their behalf or under their control.

1

**DOCUMENTS REQUESTED**

*Category 1:  General*

1. All Documents mentioned in or referred to in preparing Your response to any set of interrogatories or requests for admission served by Abbott in this case.

2. For the period January 1, 1980 to the end of the Relevant Claim Period, Documents, such as current or historical organizational charts, sufficient to identify all individuals involved in establishing the methodologies, policies, and procedures used in determining payment of drugs under Medicare Part B.

3. For the period January 1, 1980 to the end of the Relevant Claim Period, Documents, such as current or historical organizational charts, sufficient to identify all individuals involved in establishing the methodologies, policies, and procedures used in determining payment of drugs under Medicaid.

4. For the period January 1, 1980 to the end of the Relevant Claim Period, Documents, such as current or historical organizational charts, sufficient to identify all individuals involved in establishing the price at which the U.S. Government (*e.g.*, VA, Department of Defense) purchased drugs directly or indirectly from Manufacturers, distributors, or wholesalers.

5. For the period January 1, 1980 to the end of the Relevant Claim Period, Documents, such as current or historical organizational charts, sufficient to identify all individuals involved in establishing the price at which state governments purchased drugs directly or indirectly from Manufacturers, distributors, or wholesalers.

*Category 2:  Claims Data and Processing*

6. For each Medicare and Medicaid transaction during the Relevant Claim Period relating to the Subject Drugs and Equivalent Drugs, complete claims data with related field definitions, data dictionaries, source tables, relationship tables, and business rules for all populations for which damages are being alleged. This data is requested in electronic form used by SQL Server, Microsoft Access, Microsoft Excel, or a delimited file that can be readily uploaded into one of those programs. The complete claims data requested includes all fields, other than individual patient identifiers, contained on the Provider's claim submission and all additional fields added to process the claim, including:

    (a)   *Identifier*: claim number, sequence number representing each line item of the claim, and other identifying information;

    (b)   *Claim Type*: physician supplier, outpatient hospital, physician crossover, etc.;

(c) *Transaction Type*: all available transaction type information, such as correction, cancellation, etc., identifiers, and source transaction information (*e.g.*, if one claim corrects another claim, information about which claim is being corrected);

(d) *Status*: all status information, including the payment code indicating whether the claim has been accepted, processed, and/or paid and the type of program the claim will be processed under (*e.g.*, Medicaid, Managed Care, etc.);

(e) *Dates*: all available dates, including the date service was provided, the date the claim was received, and the date the claim was paid;

(f) *Basis of payment*: coding within the claim payment transaction which identifies the reference point from which the claim payment amount is determined (*e.g.*, AWP, usual & customary);

(g) *Provider*: all information for all relevant Providers, including Provider type (*e.g.*, hospital, retail pharmacy, etc.), number, name, address, contact information, and area/field of practice (where relevant);

(h) *Product*: all product information, including:

  (i) HCPCS code where applicable;

  (ii) NDC whenever available, including where available for non-pharmacy claims (*e.g.*, from memo field, supplemental provider submissions and/or HCPCS code translations). Provide all 11 digits (do not drop leading or trailing 0's) and ideally in three separate fields – labeler (first five digits), product (next four digits) and package size (final two digits);

  (iii) Name;

  (iv) Type (*e.g.*, single source, multi-source);

  (v) Therapeutic class; and

  (vi) Related items like diagnosis codes, place of service, and type of service (where relevant).

(i) *Units*: all units information with decimals in the correct position, including submitted units, allowed units, and unit of measure (*e.g.*, capsule vs. bottle, milliliter, etc.);

(j) *Other Data for Payment*: any other data used to determine the amount of the payment not listed above (*e.g.*, channel of procurement, etc.);

(k)  *Payments*: all fields related to billed amounts, payment limit amounts, allowed amount, and actual amounts paid along with the bases for the payment, all with decimals in the correct position, including:

    (i)  Drug cost (basis of payment might include EAC, FUL, MAC, Billed Amount, Charges, Cost, AWP, WAC, etc.);

    (ii)  Dispensing fee;

    (iii)  Service administration fee (*e.g.*, provider service fees);

    (iv)  Any other payment amount (*e.g.*, inventory management fee/profit factor, delivery fee, generic incentive fee, etc.); and

    (v)  Any amounts used to reduce amount paid (*e.g.*, payments received from other payors and the number, name, and other information associated with such payors).

(l)  *Comments*: all other memo or free-form fields (*e.g.*, Item 19 of the HCFA-1500).

7. For each year and for each time within each year that a calculation was made, all Documents concerning how each Medicare Carrier calculated the median AWP or, when applicable, the "lowest branded AWP" for the Subject Drugs. *See* 42 C.F.R. 405.517(c).

8. For each year and for each time within each year that a calculation was made, all Documents concerning how each Medicare Carrier and Medicaid Intermediary determined payment amounts for the Subject Drugs and the Equivalent Drugs.

9. For each Medicare and Medicaid claim You allege to have been inflated and for which You are seeking damages or statutory penalties, all Documents concerning how You determined the Provider's actual acquisition cost and/or the amount by which the claim was inflated.

10. All drug fee schedules concerning the Subject Drugs and the Equivalent Drugs, including all updates, revisions, or corrections.

11. To the extent not requested above, all Documents that reflect the losses, damages, or alleged overpayments made by the U.S. Government as a result of Abbott's alleged conduct.

12. From January 1, 1965 to the end of the Relevant Claim Period, all Documents relating to any Communications between the U.S. Government and Medicare Carriers, State Medicaid Programs, Medicaid Intermediaries, NAMFCU, MFCUs, the National Association of State Medicaid Directors, or the National Governors Association concerning the methodologies, policies, and procedures to be used in determining payment for drugs under Medicare Part B or

Medicaid, including but not limited to Medicare Part B Newsletters, Program Memoranda, National Coverage Decisions, Local Medical Review Policies, Bulletins, meetings, seminars, circulars, governmental reports, or any transmission of data.

13. All State Medicaid Program plans, under 42 U.S.C. § 1396(a), and other documents concerning how Medicaid Intermediaries or State Medicaid Programs calculated or determined payment amounts for the Subject Drugs or the Equivalent Drugs, including all policy and procedure manuals, proposals, drafts, and working papers.

14. To the extent not requested above, all Documents concerning the methodologies, policies, and procedures to be used in determining payment for drugs under Medicare Part B or Medicaid. Such documents should include the source (*e.g.*, Red Book, Blue Book, Medispan) of AWP, WAC, or other figure if reimbursement was based on such figures.

15. All Documents concerning how State Medicaid Programs paid 340B Providers for supplying or administering drugs to Medicaid beneficiaries.

16. For each quarter during the Relevant Claim Period, Documents sufficient to identify the Federal Medical Assistance Percentage ("FMAP") applicable to each State Medicaid Program.

17. For each quarter during the Relevant Claim Period, Documents sufficient to show how Medicare Carriers or Medicaid Intermediaries calculated any FUL applicable for the Subject Drugs or the Equivalent Drugs.

18. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning any audit, report, study, analysis, or survey (whether completed or not) concerning the differences in the amounts that Medicare Carriers or Medicaid Intermediaries paid for the Subject Drugs or Equivalent Drugs under Medicare Part B or Medicaid, including but not limited to all Documents concerning differences in how Medicare Carriers or Medicaid Intermediaries calculated the median AWP or "lowest branded AWP." *See* 42 C.F.R. 405.517(c).

*Category 3: Government Drug Payment Analyses and Contracts*

19. From January 1, 1965 to the end of the Relevant Claim Period, all Communications involving any Person working for or on behalf of the U.S. Government, any state government or State Medicaid Program, MedPac, NAMFCU or any MFCU, any Provider, any Publisher, or any Manufacturer concerning (i) the methodologies, policies, and procedures to be used in determining payment for drugs under Medicare Part B or Medicaid, (ii) drug pricing, or (iii) the acquisition costs of Providers for drugs.

20. From January 1, 1965 to the end of the Relevant Claim Period, all Documents relating to any report, memorandum, audit, study, analysis, or survey (whether completed or not) concerning (i) the methodologies, policies, and procedures to be used in determining

reimbursement for drugs under Medicare Part B or Medicaid, (ii) drug pricing, or (iii) the acquisition costs of Providers for drugs, including but not limited to the reports included on the attached Schedule A.

21. Documents, such as distribution lists, sufficient to show every Person who was sent or received any of the reports identified in response to Request No. 20, including but not limited to those listed on Schedule A.

22. From January 1, 1965 to the end of the Relevant Claim Period, all Documents that mention, refer to, or discuss the relationship between AWP, WAC, List Price, Direct Price or any other figure and (i) the actual or average acquisition cost of Providers and/or (ii) the amount paid by Medicare Part B or Medicaid.

23. All Documents identified in Attachment B to Joan M. Hollenbach's February 20, 2004 letter to Joshua T. Buchman, Esq. (copy attached at Tab 1).

24. All Documents concerning the revised AWP data referred to in Program Memorandum AB-00-86, *An Additional Source of Average Wholesale Price Data in Pricing Drugs and Biologicals Covered by the Medicare Program*, including all drafts, working papers, transmittal letters, notes, edits, and supporting data.

25. From any time period, all Documents from the files of the following individuals concerning drug pricing, drug reimbursement under Medicare or Medicaid, or the actual or average acquisition costs of Providers:

    (a) Dr. Bruce Vladeck (CMS);
    (b) Dr. Donna E. Shalala (CMS);
    (c) Thomas A. Scully (CMS);
    (d) Robert Neiman (CMS/HCFA);
    (e) Gail Wilensky (CMS/HCFA);
    (f) Kathleen Buto (CMS/HCFA);
    (g) Bernie Patashnek (CMS/HCFA);
    (h) Stanley Weintraub (CMS/HCFA);
    (i) Tom Ault (CMS/HCFA);
    (j) Charles Booth (CMS/HCFA);
    (k) Ira Burney (CMS/HCFA);
    (l) Mike Hash (CMS/HCFA);
    (m) Richard Kucerow (HHS-OIG);
    (n) Dr. Barton McCann (HHS-OIG);
    (o) June Gibbs Brown (HHS-OIG);
    (p) Dr. Jack Hoadley (HHS/HCFA);
    (q) Mark B. McClellan (CMS);
    (r) Peter Rodler (CMS/HCFA);
    (s) Robert Helms (HHS);
    (t) Don Hearn (CMS/HCFA);

(u)  J.D. Sconce (CMS/HCFA);
(v)  Nancy Saltzman (CMS/HCFA);
(w)  Lawrence L. McDonough (CMS/HCFA);
(x)  Loius B. Hays (CMS/HCFA);
(y)  Carol Walton (CMS/HCFA);
(z)  Frank J. Camozzi (CMS/HCFA);
(aa) Dr. Grant E. Steffen (CMS/HCFA);
(bb) Grace Witles (CMS/HCFA); and
(cc) Nancy-Ann Min DePerle (HHS).

26. All Documents concerning or referring to December 13, 1997 remarks by President William Jefferson Clinton regarding the systematic overpayment for prescription drugs, including but not limited to all Documents relied upon or referenced in Mr. Clinton's remarks. *See* White House Office of Press Secretary, Remarks by the President in Radio Address to the Nation (Dec. 13, 1997).

27. To the extent not requested above, from January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning the meaning and calculation of AWP, WAC, EAC, List Price or Direct Price and/or the decision of whether to use AWP, WAC, EAC, List Price or Direct Price in calculating payment under Medicare Part B or Medicaid.

28. All Documents concerning the meaning of AMP; the calculation of AMP; the relationship of AMP to AWP, WAC, EAC, List Price or Direct Price; and/or the decision of whether to use AMP in calculating reimbursement under Medicare Part B or Medicaid.

29. To the extent not requested above, from January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning why Medicare Part B and Medicaid did not use Providers' actual acquisition cost in calculating payment under Medicare Part B and/or Medicaid.

30. From January 1, 1965 to the end of the Relevant Claim Period, all Communications between HCFA/CMS, HHS, or HHS-OIG and VA, CHAMPUS/Tricare Department of Defense, or any 340B Provider concerning the payment, purchase price, or expenditure of VA, CHAMPUS/Tricare, Department of Defense, or any 340B Provider for the Subject Drugs.

31. To the extent not requested above, copies of all Federal Supply Schedules listing the Subject Drugs.

32. To the extent not requested above, all pricing data received or calculated by the U.S. Government or its agents concerning AMP, Best Price, Medicaid Unit Rebate Amount, Non-Federal Average Manufacturers Price, Federal Ceiling Price, Medicare Average Selling Price, or Average Selling Price Provided Under a Corporate Integrity Agreement.

Medicaid plan or plan amendment, or disallow federal financial participation, due to provisions regarding drug payment.

48.  All Documents concerning any decision to approve or disapprove a State Medicaid plan using a managed care program to control the cost of Medicaid payments for drugs.

49.  To the extent not requested above, all Documents concerning any administrative or judicial proceeding regarding the use of AWP or WAC in a methodology for drug payment under Medicare B or Medicaid.

50.  All Documents relating to a town hall-style meeting held in Bucks County, Pennsylvania in September 2002 involving Representative James C. Greenwood (R-PA) and CMS Administrator Thomas A. Sculley at which the topic of drug payment under Medicare was discussed, including but not limited to any recordings, attendance lists, agendas, notes, or data.

### *Category 5: Medicaid Drug Rebate Program*

51.  All Documents concerning the purpose, motive, or policy behind establishing the Medicaid Drug Rebate Program.

52.  For the Subject Drugs and Equivalent Drugs, all Communications concerning the reporting of AMP in connection with the Medicaid Drug Rebate Program between and among Manufacturers, the U.S. Government, any State Medicaid Program, or any Medicare Carrier or Medicaid Intermediary, as well as Documents sufficient to identify which Persons within the U.S. Government received AMP information for the Subject Drugs and Equivalent Drugs.

53.  Documents sufficient to identify the amounts received each year by each state under the Medicaid Drug Rebate Program for the Subject Drugs and Equivalent Drugs.

54.  Documents sufficient to identify all Persons who had access to or actual knowledge of the AMPs for the Subject Drugs.

55.  All Documents that reflect any supplemental or additional rebates (*i.e.*, a rebate other than provided for under the Medicaid Drug Rebate Program) requested or received from any Manufacturer, including any legislative or regulatory proposal regarding supplemental or additional rebates from any Manufacturer.

### *Category 6: Relator/Ven-A-Care*

56.  The disclosure statement filed by Ven-A-Care pursuant to 31 U.S.C. § 3730(b)(2), as well as Documents sufficient to identify which Persons within the U.S. Government, any State Medicaid Program, NAMFCU, any MFCU, any Medicare Carrier, and/or any Medicaid

Intermediary received either that document or the Ven-A-Care Complaint, and when and under what circumstances such Persons received those documents.

57. From any time period, all disclosure statements filed by Ven-A-Care in any state or federal qui tam action.

58. From any time period, all qui tam complaints or disclosure statements pursuant to 31 U.S.C. § 3730(b)(2) provided to the U.S. Government or any state government relating to payment of drugs under Medicare Part B or Medicaid, as well as Documents sufficient to identify which Persons within the U.S. Government, state governments, Medicare Carriers, and Medicaid Intermediaries received those documents, and when and under what circumstances such Persons received those documents.

59. From any time period, all Communications between Ven-A-Care and the U.S. Government concerning the prices paid by Providers for drugs and/or payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

60. From any time period, all Communications between Ven-A-Care and the U.S. Government concerning Ven-A-Care's efforts to persuade the U.S. Government to intervene in any drug pricing litigation.

61. All Communications referenced in an October 2, 1996 letter from Ven-A-Care to Dr. Bruce Vladeck (attached at Tab 6), and all Documents relating to that document and to those Communications.

62. Documents sufficient to identify which Persons, including Persons within the U.S. Government, any state government, or any Medicare Carrier or Medicaid Intermediary, received the October 2, 1996 letter from Ven-A-Care to Dr. Bruce Vladeck (attached at Tab 6) or any similar letter provided to a different addressee.

63. From any time period, all Communications between Ven-A-Care and any State Medicaid Program, any MFCU, any Medicare Carrier or Medicaid Intermediary, or any state governmental agency, entity, employee, consultant, or attorney concerning the prices paid by Providers for drugs and/or payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

64. From any time period, all Communications between Ven-A-Care and any Publisher concerning the prices paid by Providers for drugs and/or the payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

65. All pleadings or other Documents filed in *United States ex rel. Ven-A-Care vs. Abbott Labs., et al.*, Case No. 95-1354-CIV-GOLD, United States District Court for the Southern District of Florida.

reimbursement rates for Abbott's customers." Produce all Documents that support, concern, or refute your contention.

85. In paragraph 3 of the Complaint, Plaintiff states that Abbott "marketed to existing and potential Customers the government-funded 'spread' between the inflated reimbursement amounts and the actual acquisition costs of the drugs to boost its sales and profits." Produce all Documents that support, concern, or refute your contention.

86. In paragraph 6 of the Complaint, Plaintiff states that "Abbott also routinely made false statements directly to state Medicaid programs by reporting these same fraudulently inflated prices to the states." Produce all Documents that support, concern, or refute your contention.

87. In paragraph 37 of the Complaint, Plaintiff states: "The information contained in the published pricing compendia was used by most third party payor insurance companies, including the Medicare and Medicaid programs, in determining reimbursement rates for prescription drugs." Produce all Documents relating to instances where third party payor insurance companies did not use information contained in the published pricing compendia in determining reimbursement rates for prescription drugs.

88. In paragraph 37 of the Complaint, Plaintiff states that "Abbott documents show that Abbott knew of the impact of its price representations on government reimbursement on claims submitted by its Customers for its drugs." Produce all Documents that support, concern, or refute your contention.

89. As to the Subject Drugs and Equivalent Drugs, produce all Documents relating to the use of MAC or the "providers' usual and customary charges" in determining the amount of reimbursement under Medicaid. *See* paragraph 40 of the Complaint.

90. In paragraph 42 of the Complaint, Plaintiff states that "AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient." Produce all Documents that support, concern, or refute your contention.

91. In paragraph 42 of the Complaint, Plaintiff states that "WAC is used to refer to the price at which a pharmaceutical firm typically sells a drug to wholesalers who would then resell it to a retail customer." Produce all Documents that support, concern, or refute your contention.

92. In paragraph 45 of the Complaint, Plaintiff states that "some State Medicaid programs also received price representations directly from manufacturers, and relied upon these representations to confirm the accuracy of the figures they use to determine state reimbursement amounts." Produce all Documents that support, concern, or refute your contention.

23

93. In paragraph 46 of the Complaint, Plaintiff states: "In general, Medicare relied on median AWPs to set reimbursement rates." Produce all Documents relating to instances where Medicare did not rely on median AWPs to set reimbursement rates.

94. In paragraph 56 of the Complaint, Plaintiff states: "The Customers purchased the products directly from Abbott, through a GPO contract or through wholesalers." Produce all Documents concerning the amounts that Customers actually paid for the Subject Drugs.

95. In paragraph 59 of the Complaint, Plaintiff states that a "DP is supposed to reflect the price paid by a Customer that buys drugs directly from Abbott and not through a wholesaler." Produce all Documents that support, concern, or refute your contention.

96. In paragraph 60 of the Complaint, Plaintiff states: "Abbott was aware of how the Price Publications set its AWPs and knew (1) that the markup remained constant and (2) that its DPs ultimately controlled the AWP reported by the Price Publications for many of its products." Produce all Documents that support, concern, or refute your contention.

97. In paragraph 61 of the Complaint, Plaintiff states: "In some circumstances, Abbott itself calculated and supplied the AWP which it sought to have published." Produce all Documents that support, concern, or refute your contention.

98. In paragraph 65 of the Complaint, Plaintiff states: "Abbott reported increasingly higher prices for the Drugs from at least on or before January 1, 1991 through 2001. At the same time, the prices Abbott actually charged to its Customers decreased or remained the same." Produce all Documents that support, concern, or refute your contention.

99. In paragraph 69 of the Complaint, Plaintiff states: "Over that time period [1989 through 2001], Medicare and Medicaid paid in excess of $75 million for Abbott's Vancomycin." Produce all Documents that support, concern, or refute your contention, including all documents indicating the U.S. Government paid over $75 million for Abbott's Vancomycin.

100. For the time period 1989 through 2001, all Documents concerning the actual acquisition costs that Abbott's Customers paid for Vancomycin that were reimbursed by Medicare or Medicaid.

101. In paragraph 74 of the Complaint, Plaintiff states that "the percentage of Abbott's Vancomycin sales reimbursed by Medicaid increased from less than 10% in 1991 to approximately 70% in 2000." Produce all Documents that support, concern, or refute your contention.

102. Paragraphs 75 through 79 contain contentions regarding Abbott's pricing of Vancomycin. Produce all Documents from other Manufacturers concerning the pricing of Equivalent Drugs to Vancomycin.

### *Category 9: Other*

112. All recordings (video or audio), transcripts, interview memoranda, depositions, notes, or other record of Communications made in the course of any investigation regarding drug pricing.

113. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning Communications between the U.S. Government and any Manufacturer, lobbying firm, Provider, professional or trade group, patients' rights group, law firm, or any other non-government organization relating to the payment of drugs or professional services associated with the dispensing or administration of drugs under Medicare Part B or Medicaid and/or the cost of Providers to acquire and/or dispense drugs.

114. All Documents concerning any settlements with Manufacturers relating to the pricing of drugs and payment for drugs by Medicare Part B or Medicaid.

115. All Documents concerning any actual or proposed action, investigation, lawsuit, or judicial proceeding on Your behalf to recover alleged overpayments from Providers who received alleged overpayments for drugs under Medicare Part B or Medicaid.

116. All Documents concerning any effort by the U.S. Government, any state government, or any Medicare Carrier or Medicaid Intermediary to recover from Providers any alleged overpayment made by Medicare Part B or Medicaid relating to drugs.

117. All Documents relating to any decision to seek or not seek recovery from Providers any alleged overpayment made by Medicare Part B or Medicaid relating to drugs.

118. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning efforts by the U.S. Government, any State Medicaid Program, or any Medicare Carrier or Medicaid Intermediary to change the methodology for paying for drugs under Medicare Part B or Medicaid.

119. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning efforts by the U.S. Government, any State Medicaid Program, or any Medicare Carrier or Medicaid Intermediary to base payment for drugs under Medicare Part B or Medicaid on a methodology that did not in any way rely upon AWP.

120. All Documents concerning any request by the U.S. Government to any Manufacturer, wholesaler, distributor, Publisher, or Provider for information concerning the prices, costs, or reimbursement for drugs eligible for payment by Medicare Part B or Medicaid.

121. Such Documents as will show whether the U.S. Government, any State Medicaid Program, or any Medicare Carrier or Medicaid Intermediary ever questioned or complained to