UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

In Re BROADCOM CORP. SECURITIES LITIGATION

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

CASE NO. SACV 01-275 DT (MLGx)

(Consolidated Cases)

<u>CLASS ACTION</u>

ORDER **GRANTING** LEAD COUNSEL'S MOTION FOR APPROVAL OF LEAD COUNSEL'S APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## I. Background

On June 27, 2005, the Honorable Gary Taylor, who presided over this case since its filing, granted preliminary approval of a settlement reached by the parties in this securities fraud class action (the "Settlement"). Obtained on behalf of the Class by the Minnesota State Board of Investment ("Lead Plaintiff"), the Settlement culminates four years of litigation and nearly a year of mediation. Defendants have agreed to pay $150 million in cash. Under the Stipulation of Settlement of Class Action signed by the parties and filed with the Court (the "Settlement Agreement"), Defendant Broadcom Corp. ("Broadcom" or "Company"), has already paid $108 million into an escrow account, where it is

EXHIBIT 6

supported by the fact that this case was litigated virtually all the way to trial. As such, a lodestar analysis supports the reasonableness of the requested fee award.

### b. Other relevant factors militate against a departure from the 25% benchmark

Class Counsel also contend that other factors strongly militate against a departure from the 25% benchmark. Other factors to be considered in deciding whether the benchmark should be adjusted include: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; and (7) the reaction of the class. See In re Quintus Sec. Litig., 148 F. Supp. 2d 967, 973-74 (N.D. Cal. 2001); In re Oracle Sec. Lit., 852 F. Supp. 1437, 1449 (N.D. Cal. 1994). This Court agrees with Class Counsel that these factors weigh against any adjustment of the 25% benchmark.

#### (1) The result obtained for the class

The recovery of $150 million, which is already earning interest, is an exceptional result given the complexity of the case, and despite keenly contested and very complex facts. For example, although the SEC inquired into Broadcom's accounting practices, it did not launch a formal investigation. In addition, the claims are predicated in significant part on technical accounting rules, regression studies, sophisticated damages models and other arcane testimony. Because of these challenges, the large and immediate benefit for the Class supports the requested fee.

#### (2) The effort expended by counsel

As detailed in the Mills Declaration (¶¶ 25-61), Lead Counsel coordinated teams of lawyers and paralegals, litigation-support software, expert witnesses and jury consultants to prosecute this case. To develop their case, Class

11

Counsel reviewed hundreds of thousands of pages of documents, interviewed numerous witnesses, took or defended more than 90 depositions in the United States and abroad, researched and drafted thousands of pages of briefs, declarations, trial submissions and other documents, fought dozens of motions, consulted with a team of experts, analyzed numerous dense, highly technical expert reports, and spent thousands of hours preparing for trial. After extensive investigation in order to build a compelling case, Class Counsel spent four years in litigation against Defendants' aggressive lawyers, and then they engaged in difficult settlement negotiations. This enormous effort supports the benchmark fee award.

### (3) Counsel's experience

As described in the firm biography, Lead Counsel and the team are among the most experienced in the field of securities litigation. (Mills Decl., Exh. 8.) The firm has successfully prosecuted class actions across the nation, including many securities fraud cases.

### (4) Counsel's skill

Judge Taylor commented favorably on the skill of Class Counsel and their adversaries, noting that they demonstrated "an extremely high level of lawyering." (Mills Decl., Exh. 7 at p. 18.) He recognized that "[a] great deal of hard work went into it over quite a period of time. Some fascinating motions and a great deal of good lawyer work." (Id. at 19.) Class Counsel's ability to obtain a favorable settlement despite formidable opposition confirms their immense skill.

### (5) Complexity of the issues

This case presented both legal issues of first impression and complex factual issues turning in great part on expert testimony about highly technical accounting issues and the application of obscure economic theory to intricate sets

of factual permutations. Much of the law governing the parties' claims and defenses is sparse, unsettled and still evolving. Adding to the complexity was the sophistication of Defendants' alleged scheme, its complicated implementation, and the application of technical and emerging GAAP standards to the creative accounting used to report Broadcom's revenue. Pleading adequate facts to describe Defendants' scheme and marshaling the evidence to respond to numerous summary judgment motions and for trial demanded a monumental and coordinated effort.

### (6)   Risks of non-payment assumed by counsel

Lead Counsel assumed a substantial risk that there would be no recovery when it took the case on a contingent fee basis. Given the demanding standards for pleading securities fraud, many cases are dismissed at the threshold. A case that survives motions to dismiss later confronts summary judgment motions, Daubert challenges and the uncertainty of trial. The complexity and subtlety of Defendants' scheme and the quality of the opposition added to the uncertainty of success. Despite this, Class Counsel devoted a massive number of hours and incurred over $3.74 million in expenses over four years with no compensation.

### 3.   Public policy considerations also support the requested fee award

Finally, as Class Counsel contend, important public policy considerations also support the requested fee award. Recognizing that the federal securities laws are remedial in nature, the courts have encouraged fee awards that fairly reward attorneys who have served the Congressional purpose of enforcing the laws with private lawsuits. See, e.g., Basic Inc. v. Levinson, 485 U.S. 224 (1988). "Filing of contingent lawsuits . . . should not be chilled by the imposition

13