UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
COUNSEL'S PETITION FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND COMPENSATION TO THE NAME PLAINTIFFS**

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ..................................................................................................1

II.  HISTORY OF THE LITIGATION ......................................................................4

    A.  Investigation, Pleading, and Discovery ...................................................4

    B.  The GSK Defendants' Response to Litigation.........................................6

    C.  Settlement Negotiations ...........................................................................6

    D.  Notice Plan Design ..................................................................................7

    E.  Preliminary Approval and Notice ............................................................7

III.  THE COURT SHOULD APPROVE THE FEE PETITION  AS FAIR AND REASONABLE ....................................................................................................8

    A.  Class Counsel are Entitled to Compensation Based Upon the Benefits Created by the Litigation .........................................................................8

    B.  The Percentage-of-the-Fund Method is the Appropriate Method for Calculating Attorneys' Fees in this Circuit.............................................9

    C.  The Requested 33 Percent Fee and Expense Award is Fair and Reasonable as a Percentage of the Benefits Achieved for the Class........................................11

        1.  The 33 percent award is within the normal range of awards ....................11

        2.  The requested 33 percent fee and expense request reflects the market rate in other complex, contingent litigation .............................12

    D.  Various Factors Applied by This Circuit and Others Support Class Counsel's Request for a 33 Percent Fee and Expense Award ................................13

        1.  The size of the fund created and the number of people who benefit .........14

        2.  The time and labor expended by counsel.....................................14

        3.  The complexity and duration of the litigation...........................16

        4.  The risk of nonpayment ...............................................................17

        5.  The skill and efficiency of the attorneys involved.....................18

      E.      A Cross-Check with the Lodestar Confirms the Reasonableness of the Requested Percentage Fee and Expense Award ....................................................19

IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD  BE FACTORED IN THE COURT'S CONSIDERATION OF THE 33 PERCENT FEE AND EXPENSE AWARD ........................................................................................................21

V.     COMPENSATION TO THE NAMED PLAINTIFFS IS APPROPRIATE.....................22

VI.    CONCLUSION.............................................................................................................24

001534-16  179710 V1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ...........................................................................11

*In re Aetna Inc. Sec. Litig.*,
   2001 WL 20928 (E.D. Pa. 2001) ..............................................................................14

*Bebchick v. Washington Metro. Area Transit Comm'n*,
   805 F.2d 396 (D.C. Cir. 1986) ...................................................................................8

*Behrens v. Wometco Enter., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ......................17

*Blum v. Stenson*,
   465 U.S. 886 (1984)......................................................................................................9

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)......................................................................................................8

*Branch v. FDIC*,
   1998 WL 151249 (D. Mass. 1998) ..............................................................................9

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 907 (S.D. Ohio 2001) ......................................................................23

*In re Buspirone Antitrust Litig.*,
   Case No. 01-CV-7951, MDL Docket No. 1413 (Apr. 17, 2003) ...........................11, 12

*Bussie v. Allamerica Fin. Corp.*,
   1999 WL 342042 (D. Mass. 1999) ............................................................................22

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...................................................................................10

*Central R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)......................................................................................................9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003).........................................................................9, 11, 19

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   292 F. Supp. 2d 184 (D. Me. 2003) ...........................................................................22

*Conley v. Sears, Roebuck & Co.*,
  222 B.R. 181 (D. Mass. 1998) ...........................................................................9, 10, 11

*In re Continental Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .......................................................................................10

*In re Copley Pharm., Inc.*,
  1 F. Supp. 2d 1407 (D. Wyo. 1998).......................................................................20, 21

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*,
  108 F.R.D. 237 (1985) ........................................................................................11, 13, 20

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  989 F. Supp. 375 (D. Mass. 1997) ..............................................................................9, 10

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) ...............................................................................23

*Eisen v. Carlisle & Jacquelin*,
  479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974)...............17

*In re Fidelity/Micron Secs. Litig.*,
  167 F.3d 735 (1st Cir. 1999)...................................................................................8, 9, 21

*In re Fidelity/Micron Secs. Litig.*,
  1998 WL 313735 (D. Mass. 1998) ...............................................................................9, 10

*In re Fleet/Norstar Secs. Litig.*,
  935 F. Supp. 99 (D.R.I. 1996) ...............................................................................10, 11

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)......................................................................................10, 13

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) .....................................................................................11

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)....................................................................................14, 17

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) ...................................................................................10

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)......................................................................................13

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ...............................................................................13

*Lipsett v. Blanco*,
975 F.2d 934 (1st Cir. 1992)................................................................................20

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002)..............................................................................22

*In re Lorazepam & Clorazepate Antitrust Litig.*,
2003 WL 22037741 (D.D.C. 2003) .......................................................................12

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 U.S. Dist. Lexis 17456 (D. Mass. Aug. 17, 2005)........................................9

*MCI Commc'ns Corp. v. American Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983) ..............................................................................17

*Mashburn v. National Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) .......................................................................8

*In re Merry-Go Round Enters., Inc.*,
244 B.R. 327 (D. Md. 2000) .................................................................................12

*Newbridge Networks Sec. Litig.*,
1998 WL 765724 (D.D.C. 1998) ...........................................................................15

*In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*,
982 F.2d 603 (1st Cir. 1992).................................................................................21

*In re Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..................................................................................11

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005)..............................................................................4

*In re Pharm. Indus. Average Wholesale Price Litig.*,
233 F.R.D. 229 (D. Mass. 2006)............................................................................4

*In re Pharm. Indus. Average Wholesale Price Litig.*,
263 F. Supp. 2d 172 (D. Mass. 2003) ....................................................................4

*In re Pharm. Indus. Average Wholesale Price Litig.*,
431 F. Supp. 2d 98 (D. Mass. 2006) ......................................................................4

*In re RJR Nabisco Inc. Sec. Litig.*,
  1992 WL 210138 (S.D.N.Y. 1992)......................................................................13

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ...............................................................................10

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005).......................................................................9, 11

*In re Revco Litig.*,
  1992 WL 118800 (N.D. Ohio 1992)..................................................................23

*In re RiteAid Corp. Secs. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................20

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997)....................................................................23

*Rosenbaum v. MacAllister*,
  64 F.3d 1439 (10th Cir. 1995) ..........................................................................18

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..........................................................................10

*In re Southern Ohio Corr. Facility*,
  175 F.R.D. 270 (S.D. Ohio 1997)......................................................................22

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)............................................................................................9

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ............................................................................10

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)......................................................................8, 9, 19

*Trustee v. Greenough*,
  105 U.S. 527 (1882)............................................................................................9

*United States Football League v. National Football League*,
  644 F. Supp. 1040 (S.D.N.Y. 1986)..................................................................17

*In re Vitamins Antitrust Litig.*,
  2001 WL 37312839 (D.D.C. 2001) ...............................................................12, 21

001534-16  179710 V1

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................12

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)................................................................18

## STATUTES

18 U.S.C. § 1964 ...........................................................................................................4

001534-16  179710 V1

## I.     INTRODUCTION

Counsel for the Class Plaintiffs David Aaronson, Ruth Aaronson, Cynthia Byrski, Cheryl Barreca, Anna Choice, Donna Kendall, Constance Nelson, Andrea Palencia, Scott Tell, Joseph Miller, UFCW, Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund, Teamsters Health & Welfare Fund of Philadelphia and Vicinity, Philadelphia Federal to Teachers Health and Welfare Fund, Man-U Service Contract Trust Fund, Twin Cities Bakery Workers Health and Welfare Fund, Pipefitters Local 537, Blue Cross/Blue Shield of Massachusetts and Sheet Metal Workers National Health Fund, (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Petition for an Award of Attorney Fees, Reimbursement of Expenses, and Compensation to the Named Plaintiffs.  More specifically, and as set forth below, Class Counsel asks that this Court to award fees and expenses in the amount of $21,615,000.00.  This figure represents 33% of the amount of the settlement set aside for the Class.  Although contemplated by the Settlement, Class Counsel is not requesting the Court approve a separate award of their litigation expenses in this matter.

Class Counsel also request that the Court approve compensation from the Settlement Fund in the total amount of $100,000 to all Third-Party Payor ("TPP") Named Plaintiffs, and $25,000.00 in total for all named Consumer Plaintiffs.  Pursuant to the terms of the Settlement, Defendant SmithKlineBeecham Corporation d/b/a GlaxoSmithKline ("GSK Defendants"), do not oppose these requests.

The settlement of this ground breaking litigation provides real, immediate, and substantial cash benefits to the Class, totaling $65.5 million.[1]  Under the terms of the settlement,

---

[1] This settlement was reached as part of a global settlement between the GSK Defendants, the Class Plaintiffs, the ISHP Group, a group of health insurance companies and health plans, and certain States Attorneys General.  All parties, through their respective counsel, engaged in months of vigorous, arms-length negotiations and conditionally

and subject to this Court's approval, Class Counsel may seek reasonable attorney fees to be paid

from the Class Settlement Fund (with an obligation to return any fees paid as percentage of an

amount that the GSK Defendants receive back as a result of any TPP exclusions pursuant to § 17

of the Settlement Agreement), as well as a separate reimbursement of litigation expenses as well

as compensation to the named plaintiffs' participation in the litigation.  As of August 10, 2006,

the date the GSK Settlement was filed for preliminary approval by the Court, Class Counsel had

expended a total of 176,534.88 hours in this case, a lodestar totaling $57,279,201.05 at historical

billing rates, as well as $5,561,128.12 in total expenses.[2]

An award of 33% of the Class Settlement Fund is eminently reasonable in light not only

of the excellent result achieved for the Class (which is described in the Memorandum in Support

of Plaintiffs' Motion for Approval of Settlement), but also the risks involved in undertaking this

unique, groundbreaking and highly complex matter as well as the immense effort required in

litigating the claims and the subsequent settlement negotiations.  From its inception, this case has

been intensely litigated, as the GSK Defendants challenged discovery, class certification and

liability.  The parties fought each other virtually every step of the way.  Litigating this case,

therefore, has required immense time, energy and resources from Class Counsel.  Furthermore,

as the Court is well aware, this case involved extremely complex and challenging issues of fact

and law.  In addition, negotiation and achievement of a settlement between parties so far apart on

liability and damages was a daunting task requiring further time, energy and resources.  The

---

agreed to payment by the GSK Defendants of $70,000,000 to settle the litigation, including all claims of the
Plaintiffs, the ISHP Group and certain Participating States.

[2] The Declaration Of Marc H. Edelson In Support Of Class Plaintiffs' Joint Petition For Attorneys' Fees And
Reimbursement Of Expenses In Relation To Settlement With GSK, submitted herewith, sets forth the breakdown of
total unaudited attorney hours, fees and expenses incurred from inception through August 10, 2006, the date the
parties filed their Motion for Preliminary Approval of the Settlement with GSK.  Class Counsel will provide back-
up for all attorney fees and expenses sought for reimbursement, if the Court wishes.

settlement was reached only after many months of arduous negotiations which were conducted in person, by telephone, and in writing.

Class Counsel faced considerable risk in litigating this case on a wholly contingent-fee basis.  To date, Class Counsel have received no compensation of any kind in the nearly six years this action has been pending.  They have foregone other opportunities and devoted their time to this matter instead of others.  In total, Class Counsel have expended 176,534.88 hours over a five year period since their investigation of the facts underlying this litigation first began in 2001.  In addition, Class Counsel have expended $5,561,128.12 to pay for expenses such as experts, copying, travel, and other expenses necessary to successful prosecution of the Class' claims.[3]  In order to simplify its request Class Counsel does not seek a separate award for litigation expenses, but seeks a single 33 percent award of the Class Settlement Fund for both fees and expenses.

The result in this complex litigation and the effort required well supports the requested attorney fee and expense award of 33% of the Settlement Fund.  As explained below, this percentage has been approved by federal courts throughout the United States, is justified by relevant factors considered by courts in this Circuit and others, and is in line with the fees that Class Counsel could have obtained at arm's length in the open market.  Therefore, Class Counsel respectfully request that the Court grant this petition.

---

[3] The hours and expenses quoted above are cumulative for the entire AWP litigation against all Defendants from the inception of this case in 2001 through August 10, 2006.  As the Court is well aware the MDL includes multiple Defendants in two separate tracks and this settlement involves a resolution of claims against only the GSK Defendants.  Due to the nature of the allegations it is not possible to attribute each attorney hour or particular expenditure to litigation against a particular Defendant.  Some items could be allocated to specific Defendants, but many more, for example discovery from third parties and research on particular legal or factual issues that apply to all Defendants, could not be separately attributed to a particular Defendant.  Class Counsel has therefore provided the Court with its total loadstar up to the date of the GSK Settlement.  These figures do not include loadstar and expenses incurred in the trial against the remaining Track I Defendants that concluded in December 2006 or the loadstar and expenses incurred in the Settlement with GSK subsequent to the filing of the Settlement.

- 3 -

## II.        HISTORY OF THE LITIGATION

Class Counsel's representation of the Classes, comprised of consumers and third-party payors, presented unique challenges to the litigation, coordination, and settlement of the claims against the GSK Defendants.  Class Counsel successfully addressed and resolved these challenges throughout the prosecution and settlement of this litigation, resulting in an excellent recovery for the Class.

### A.        Investigation, Pleading, and Discovery

In this litigation, Plaintiffs allege that GSK implemented a fraudulent scheme used to manipulate and inflate the monetary spread between the Average Wholesale Price ("AWP") and the cost to doctors and other providers of various drugs ("Subject Drugs" or "Covered Drugs") in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO"), and various state consumer protection laws.[4]  Prior to filing suit Plaintiffs' counsel undertook months of extensive investigation of the facts by obtaining and reviewing publicly available materials, analyzing and consulting with industry analysts and experts.

Plaintiffs allege that GSK illegally manipulated the AWPs of its Subject Drugs during the relevant period, in order to increase profits and market share, at the expense of patients, their insurers, and the Medicare program.  The AWPs that GSK caused to be published – and upon which Plaintiffs and the Class Members based their payments as required by statute for payments by Class 1 and Class 2 members, were fictional.  Those allegedly fictional AWPs created a larger profit spread that funneled hidden profits to doctors to prescribe GSK drugs over less expensive

---

[4] The Court is aware of the extensive facts and claims alleged in this action.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 98 (D. Mass. 2006); *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229 (D. Mass. 2006); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003).  The Class Plaintiffs respectfully will not repeat all of those allegations here.

alternatives.  GSK's strategy targeted Plaintiffs and members of the Class, who continued to pay more and more for a drug that should have cost less and less.

Class Plaintiffs have aggressively prosecuted their claims since the initial complaint was filed in 2001.  Numerous cases were subsequently consolidated before this Court by the Judicial Panel on Multi-District Litigation on April 30, 2002.

Class Plaintiffs overcame motions to dismiss and briefed and argued dozens of discovery motions and multiple motions for class certification.

In discovery, Class Plaintiffs reviewed, analyzed, coded and loaded into a database over 2.8 million pages of documents produced by GSK and third parties.  The selected documents were analyzed and coded by a team of attorneys over a period of 18 months.  Through that review, the Class Plaintiffs created a detailed, computerized, searchable database of relevant documents.  Through negotiation and motion practice, Plaintiffs pressed GSK for additional relevant documents and data, resulting in GSK producing additional information after the close of discovery.  Plaintiffs also undertook detailed analysis of GSK transactional data on dozens of GSK products.  For most of the drugs, the analysis covered a period of time in excess of ten years.

Class Plaintiffs also took over 45 depositions of GSK's current and former employees, including senior managers, consultants, and contractors.  The depositions resulted in nearly 1000 marked deposition exhibits.

At the same time, Plaintiffs were issuing subpoenas to physicians, trade associations and other third parties to obtain additional evidence.  Third-party witnesses with knowledge of GSK activities or the effects of GSK's conduct were also sought out, interviewed, and in some cases deposed.

**B.      The GSK Defendants' Response to Litigation**

GSK has denied, and continues to deny, that it has committed any violation of law or any

wrongdoing, and further deny that they have any liability with respect to any claims asserted in

the Complaint, and deny all liability to Plaintiffs and the Class.  They litigated extensive Motions

to Dismiss, and vigorously opposed Plaintiffs' Motion for Class Certification of a litigation

Class.  They have indicated that if the case proceeds, they would continue to vigorously oppose

Plaintiffs' claims through summary judgment and trial.

Defendants also engaged in extensive defensive discovery.  Defendants took the

depositions of all named Plaintiffs, including multiple depositions of the corporate Plaintiffs.

Plaintiffs responded to interrogatories from the Defendants and produced voluminous documents

and (for the health plan Plaintiffs) electronic transactional and claims data.

**C.      Settlement Negotiations**

The settlement negotiations among the parties, although always courteous, were long,

detailed, and contentious.  Over a two-year period, in separate series of meetings, each of which

extended over several months, the parties met, conferred, exchanged information and debated the

other's evidence and interpretations.  Both sides made detailed presentations to each other,

presented extensive analysis and conclusions of experts, and noted their positions on legal

theories, evidence, and possible damages.  In addition to many face-to-face negotiations, there

were a significant number of additional discussions by phone.  The negotiating sessions often

spanned many hours, and always involved considerable back-and-forth between counsel for the

several parties.  The court-appointed mediator, Eric Green, was involved in many of these

sessions.  Eventually, the overall sum of $70 million was reached which represents a substantial

recovery.

**D.     Notice Plan Design**

The Settlement Agreement and Plaintiffs' Motion for Preliminary Approval were filed on

August 10, 2006.  After a series of hearings in the September of 2006 in which the Court and the

parties explored the potential for use of data obtained from CMS in effectuating direct mail

notice, Plaintiffs submitted a Notice Plan designed by Katherine Kinsella of Kinsella Novak

Communications, one of the leading experts on class notice.  The Notice Plan called for direct

mail to the approximately 2.5 million individual Medicare Part B recipients who were identified

by CMS as having been administered one or more of the Covered Drugs as well as placement of

the Notice in multiple national publications and newspapers, the establishment of a settlement

telephone hotline to take calls and answer questions by class members and the establishment of a

settlement website to provide both consumers and TPPs another avenue to gain information

about the settlement.

**E.     Preliminary Approval and Notice**

On November 11, 2006, the Court entered an Order granting preliminary approval of the

Settlement, certifying three separate subclasses for settlement purposes and approving the Notice

Plan, including direct mail to consumers.  As detailed in the Declaration of Katherine Kinsella

and the Declaration of Thomas R. Glenn of Complete Claims Solutions ("CCS"), both filed

herewith, the Notice Plan was effectuated as approved by the Court.  Additionally, pursuant to

the results of a telephone survey commissioned by Prof. McGovern and approved by the Court

by Order dated May 17, 2007 (Dkt. No. 4245), CCS is in the process of sending each consumer

who filed a request for exclusion a letter confirming their intention to exclude themselves and

giving them another opportunity to file a claim if they so desire.

- 7 -

### III.   THE COURT SHOULD APPROVE THE FEE PETITION AS FAIR AND REASONABLE

**A.   Class Counsel are Entitled to Compensation Based Upon the Benefits Created by the Litigation**

Courts have long recognized that a lawyer who recovers a "common fund" is entitled to reasonable attorney fees from the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995) ("[t]he common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs"); *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax").  "The 'common fund' doctrine is designed to spread the costs of litigation among all the beneficiaries of an identifiable fund over which a court can exercise legitimate control, in effect guarding against the unjust enrichment of passive beneficiaries at the expense of the active beneficiary."  *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and promote private enforcement of, and compliance with, various RICO and consumer protection laws.  Moreover, awards of attorney fees help to ensure adequate enforcement of class members' legal rights.  "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."  *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).

**B.      The Percentage-of-the-Fund Method is the Appropriate Method for Calculating Attorneys' Fees in this Circuit**

The Supreme Court has repeatedly held in cases involving the computation of a common fund fee award that it is appropriate for the fee to be determined as a percentage-of-the-fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the common fund doctrine . . . a reasonable fee is based on a percentage of the fund bestowed on the class"); *see also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Trustee v. Greenough*, 105 U.S. 527, 532 (1882).  In a percentage fee award, the fee is measured by the benefit conferred upon the class.

Although the First Circuit has left it to the trial court's discretion as to whether to apply the lodestar or percentage-of-the-fund ("POF") method to award attorneys' fees, it has also recognized that the POF method is the prevailing approach used in common fund cases and that there are distinct advantages to using it in such cases.  For example, it is less burdensome to administer, reduces the possibility of collateral disputes, enhances efficiency throughout the litigation, and better approximates the workings of the marketplace.  *See In re Thirteen Appeals*, 56 F.3d at 307-08; *see also In re Fidelity/Micron*, 167 F.3d at 737.  Furthermore, district courts within the First Circuit have indicated their preference for the POF method over the lodestar method.  *See*, *e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist Lexis 17456, at *9 (D. Mass. Aug. 17, 2005); *In re Fidelity/Micron Secs. Litig.*, 1998 WL 313735 (D. Mass. 1998) (reversed on other grounds); *Branch v. FDIC*, 1998 WL 151249, at *2-4 (D. Mass. 1998); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003) (describing the method as determining whether the "total fee [is] reasonable when examined as a percentage of recovery"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass.

1997); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998); *In re Fleet/Norstar Secs. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996).  In selecting the POF method in awarding attorney fees in *In re Fidelity/Micron Securities Litig.,* the Court summarized the reasons for applying it:  "Using the POF method in a common fund case enhances efficiency. . . .  Another not inconsiderable argument favoring the POF method is that it relieves courts of the burden of wading through stacks of bills attempting to parse the value of the lawyers' time and effort." 1998 WL 313735, at *2.  In this case in particular, where there are multiple Defendants and the Court is considering only the fee related to settlement of a single Defendant, use of the POF method saves the Court and the parties from the near impossible task of allocating the particular hours of the many attorneys involved to a particular Defendant.

The trend in this Circuit is consistent with the decisions nationwide awarding fees in common fund cases based on a percentage of the total recovery.  *See* MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004) ("The vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases").  In addition to this Circuit, at least nine other circuits – the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia-have accepted the POF method as an appropriate method for awarding attorneys' fees.[5]

---

[5] *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55.F.3d 768, 822 (3d Cir. 1995) ("[i]n common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered," and in prior cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993) (noting "the recent trend toward adoption of a percentage of the fund method," and permitting use of the "percentage of the fund method" in common fund cases); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (fee award should not be based on "individual hours," but rather on the percentage that counsel "would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 744-45 (11th Cir. 1991) (percentage method mandatory in common fund cases); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund

**C.     The Requested 33 Percent Fee and Expense Award is Fair and Reasonable as a Percentage of the Benefits Achieved for the Class**

**1.     The 33 percent award is within the normal range of awards**

Courts in this Circuit have recognized that fee awards in common fund cases are commensurate with the 33 percent fee request of Class Counsel.  *See*, *e.g.*, *In Re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (awarding class counsel $22,311,000 in fees or 33% of class fund of $67,000,000, plus a separate award of litigation expenses in the amount of $1,297,301); *In re Fleet/Norstar*, 935 F. Supp. at 109; *Conley*, 222 B.R. at 187; *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. at 216 n.45; *see also* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III:  What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (finding that "[r]egardless of case size, fees average approximately 32 percent of the settlement"); *see also* MANUAL FOR COMPLEX LITIGATION § 14.121 ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund.").  In her influential class action fee award decision *In re Activision Sec. Litig.*, 723 F. Supp 1373 (N.D. Cal. 1989), Judge Patel of the Northern District of California awarded a 32.8% fee and adopted a "policy of awarding approximately 30% of the fund as attorneys' fees in the ordinary case," as "well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable…"  *Id.* at 1375.

In fact, the requested fee award is commensurate with or in some instances falls below awards by other federal courts in complex cases such as this.  *See*, *e.g.*, *Gaskill v. Gordon*, 160 F.3d 361, 363-64 (7th Cir. 1998) (affirming award of 38% of class action settlement fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common settlement fund); *In re Buspirone Antitrust Litig.*, Case No. 01-CV-7951, MDL Dkt.

doctrine is calculated as a percentage of the recovery"); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985).

No. 1413 (Apr. 17, 2003) (awarding fees of 33⅓% of $220 million common fund to Direct

Purchaser Plaintiff's Class Counsel); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003

WL 22037741, at *8 (D.D.C. 2003) (awarding class counsel 30% of the common fund);  *In re*

*Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839, at *12 (D.D.C. 2001) (determining

that the one-third award was reasonable and granting class counsel fee petition in the amount of

$123,188,032 plus interest, or approximately 34% of the total estimated settlement amount, in

antitrust price fixing litigation).

Although some argue that a "POF award ordinarily decreases as the size of a common

fund increases," a 2002 Ninth Circuit decision which analyzed prevailing fee methodology in the

context to common fund cases in the $50-200 million range found this to be empirically untrue.

*See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002).  There, the court

included an exhaustive table of 34 cases generating revenues ranging from $54 million to

$185 million, all of which generated fees of 30% or more, including the case at the high end of

the scale (45%), the $185 million settlement in *In re Merry-Go Round Enters., Inc.*, 244 B.R.

327 (Bnkr. D. Md. 2000).

In light of the percentages often awarded in common fund cases, 33 percent of the

Settlement Fund for both fees as well as litigation expenses is well within the acceptable range of

reasonable attorneys' fees recoverable in common fund cases.

     **2.**     **The requested 33 percent fee and expense request reflects the market rate in other complex, contingent litigation**

The requested 33 percent fee is commensurate with the market rate in other complex,

contingent litigation.  As Judge Posner observed in the matter of *Continental Illinois Secs. Litig.*,

the objective of awarding a reasonable attorney fee is "to give the lawyer what he would have

gotten in the way of a fee in an arm's length negotiation, had one been feasible.  In other words

001534-16  179710 V1

the object is to simulate the market where a direct market determination is infeasible." 962 F.2d at 572. Or as put more strongly by another district court, "[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *In re RJR Nabisco Inc. Sec. Litig.*, 1992 WL 210138, at \*7 (S.D.N.Y. 1992).

If this were a non-class litigation, the customary contingent fee would likely range between thirty and forty percent of the recovery. *See*, *e.g.*, *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation," and noting with approval a contract providing for a one-third contingent fee if case settled prior to trial). If this were a non-class litigation, the customary contingent fee arrangement would also provide for a reimbursement of litigation expenses separate and apart from the fee percentage.

**D.  Various Factors Applied by This Circuit and Others Support Class Counsel's Request for a 33 Percent Fee and Expense Award**

The First Circuit has not required that lower courts use a particular set of factors to determine the reasonableness of the fee request. However, the Third Circuit Task Force Report approved certain factors to assist courts in this analysis: Among other things, these factors include: (1) the size of the fund created and the number of persons benefited; (2) the skill and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risk of nonpayment; (5) the amount of time devoted to the case by plaintiffs' counsel; and (6) the awards in similar cases. *See Third Circuit Task Force*, 108 F.R.D. at 245; *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (applying factors); *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 819-22 (same). The Second Circuit has adopted a similar list of factors: the time and labor expended by Class Counsel, the complexities of the litigation, the risks borne by Class Counsel in litigating this case on a contingency fee

- 13 -

basis, the quality of the representation provided, the fee request in relation to the settlement, public policy considerations and the reaction of the Class to the settlement.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Applying these factors, a 33 percent award for both fees and litigation expenses in this case is fair and reasonable.

### 1.      The size of the fund created and the number of people who benefit

The total fund here is $65,500,000 and will benefit countless consumers and TPPs.[6]  The settlement is described at length in Class Counsel's Memorandum in Support of Motion for Final Approval of Proposed Settlement, filed simultaneously herewith.  To avoid duplication, Class Counsel hereby incorporates that description by reference.

### 2.      The time and labor expended by counsel

Class Counsel have been investigating and litigating this case intensely and thoroughly over a period of almost six years.  Class Counsel have devoted considerable time, energy, and resources from the beginning of this case through discovery and motion practice until settlement.

From the very beginning, "Defendants mounted an aggressive and vigorous defense throughout the course of this litigation."  *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *15 (E.D. Pa. 2001).  Indeed, the GSK Defendants still vigorously dispute that they engaged in any wrongful conduct or violation of law.

---

[6] It should be noted that although a portion of the $65.5 million (50% of the 70% set aside for TPPs or 35% of the total class fund) is set aside for the benefit of ISHP Group members.  ISHP Group counsel has agreed to forgo any fee from these funds in connection with their work for ISHPs and to accept an amount from the total fees awarded to Class Counsel as negotiated between Class Counsel and ISHP Group counsel.  *See* Agreement ¶ 18(b). If the Court awards a POF on just the funds set aside for the consumers and TPP class members, the ISHP Group has agreed to pay Class Counsel the same percentage on funds paid out to ISHP Group members as awarded by the Court on funds paid to the Class, minus a negotiated fee amount to ISHP Group counsel.  So whether the Court considers the "class fund" the total $65,500,000 or an amount less than that based on payments ultimately made to ISHP Group members, Class Counsel's total fee with respect to the GSK Settlement remains unchanged.

- 14 -

Therefore, this litigation required an all-out effort by Class Counsel.  First, the motion practice in this case has in and of itself required enormous work, as the case raised many complex and difficult legal and factual issues.  This required Class Counsel to oppose more than one round of substantial motions to dismiss as well as class certification motions.  Second, discovery in this case was extensive.  Class Counsel had to devote substantial energy and thousands of hours in obtaining, inventorying, and examining the 2.8 million documents the GSK Defendants produced.  Even more time and effort was necessary to cull those documents and create a useful database – an invaluable tool for identifying key issues and evidence for depositions and possible trial.  Additionally Class Counsel conducted approximately 45 depositions of GSK personnel and related third parties.

Beyond document production, written discovery, and depositions, motion practice took additional time and effort.  Moreover, Class Counsel also spent considerable time consulting with economic experts concerning the economic impact of Defendants' scheme on the Class and the measure and amount of damages to the Class.  Finally, Class Counsel spent many hours researching and briefing complex legal issues for more than one round of motions to dismiss and class certification motions.  These "efforts in posturing this case for trial . . . played a role in spurring the settlement [and] produced a substantial payout to the class." *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *3 (D.D.C. 1998).

As for settlement, Class Counsel expended a considerable amount of time and effort in coordinating various litigation and settlement strategies with the ISHPs, TPPs, consumer representatives as well as various Attorneys General while engaging in intensive and laborious settlement negotiations with the GSK Defendants.  In addition, since the settlement has been preliminarily approved, Class Counsel has devoted considerable time and expense in

- 15 -

investigating, promoting, and monitoring notice activities, including coordination with the Court appointed Master, Professor Francis McGovern.

Throughout this entire process, Class Counsel has litigated this case with extreme efficiency.  The bulk of the work was handled by a small number of experienced attorneys.  Assignments were allocated so that work was performed expeditiously, efficiently and in an organized manner.  Review and repetition was completely avoided.

Moreover, the significant investment of time required by this action necessarily precluded Class Counsel from working on other matters.  Class Counsel expended hours and incurred expenses in prosecuting this case, and were prepared to put at risk more time and money had the litigation not settled.

Based on all of the above factors, the percentage fee and expense award requested by Class Counsel is reasonable in light of the risk, quantity, and quality of work expended by Class Counsel over the last six years.

### 3.      The complexity and duration of the litigation

The complexity of the issues and the duration of the litigation support the 33 percent award requested.  Class actions alleging violations of RICO and fraud, particularly in the pharmaceutical reimbursement context, are arguably the most complex class actions to prosecute because the legal and factual issues are inherently complicated and uncertain.  In fact, in addition to the legal issues involved in overcoming the GSK Defendants' motions to dismiss, this case involved some highly technical and complex issues with regard to pharmaceutical reimbursement systems, pharmacy benefit manager contracting, health insurance, federal regulation, and preemption.  These legal issues required exhaustive research and briefing.

4.　　　**The risk of nonpayment**

A determination of a fair fee must include consideration of the uncertain nature of the fee, the wholly contingent outlay of large out-of-pocket sums by Plaintiffs' counsel, and the fact that the risks of failure and nonpayment are extremely high.　Many cases recognize that attorneys' risk is "perhaps the foremost' factor" in determining an appropriate fee award.　*Goldberger*, 209 F.3d at 54 (citation omitted).　In *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), the court noted that:

> Generally, the contingency arrangement must be promoted to
> assure representation when a person could not otherwise afford the
> services of a lawyer…　A contingency fee arrangement often
> justifies an increase in the award of attorneys' fees.　This rule helps
> assure that the contingency fee arrangement endures.　If this
> 'bonus' methodology did not exist, very few lawyers could take on
> the representation of a class client given the investment of
> substantial time, effort, and money, especially in light of the risks
> of recovering nothing.　[*Id*. (citations omitted).]

The history of complex litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages or very small damages at trial or after appeal.　*See*, *e.g.*, *United States Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"); *MCI Commc'ns Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983) (remanding antitrust judgment for new trial and damages); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) (following two trips to the Court of Appeals and one to the U.S. Supreme Court, plaintiffs, the putative class, and their counsel recovered nothing), *vacated on other grounds*, 417 U.S. 156 (1974).

Indeed, when Class Counsel undertook representation of the Class, there were no assurances that any fees would ever be received.　Class Counsel were aware that they would likely have to overcome the daunting difficulties, and would have to expend thousands of hours

- 17 -

and millions of dollars, in prosecuting this case over an extended period of time before having

even a possibility of recovering fees and expenses. Class Counsel alone bore the risk of the case

being dismissed at the pretrial stage, of not prevailing at trial, or even losing on appeal.

To date, Class Counsel have received no compensation during the course of this

proceeding.  Because of the risk undertaken by Class Counsel, the requested fee award is

reasonable.

### 5.      The skill and efficiency of the attorneys involved

The experience, reputation, and ability of plaintiff's counsel has often been noted as a key

factor in a court's consideration of counsel's fee request.  *See*, *e.g.*, *In re Warner Commc'ns Sec.

Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985); *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445

n.3 (10th Cir. 1995).

The Settlement Fund here was not easily achieved.  The settlement negotiations were

hard-fought and protracted, spanning a period of years.  The GSK Defendants are represented by

experienced and highly-regarded counsel, and they contested this litigation at every stage.

Therefore, settlement negotiations required persistence, negotiating skill, and a willingness to

take this case to trial.  Class Counsel employed all of these, and obtained a settlement agreement.

Class Counsel here are among the country's leading firms in prosecuting and trying

complex actions and class actions in particular, with particular expertise in actions involving the

pharmaceutical industry, and a demonstrated track record of accepting difficult cases and taking

them to trial.  *See also Plaintiffs' Memorandum in Support of Preliminary Approval* submitted

therewith.

Due to the quality of representation and the significant results achieved by Class Counsel,

the requested fee and expense award is reasonable.

E.     **A Cross-Check with the Lodestar Confirms the Reasonableness of the Requested Percentage Fee and Expense Award**

In the First Circuit, "[t]he lodestar approach (reasonable hours spent times reasonable hourly rated, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee, but is not required." *In re Thirteen Appeals*, 56 F.3d at 307; *In re Compact Disc*, 216 F.R.D. at 215-16; *see also* MANUAL FOR COMPLEX LITIGATION § 14.122 ("the lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant.  The total lodestar estimate is then divided into the proposed fee calculated under the percentage method.  The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.").

The total lodestar accumulated by plaintiffs' counsel as of August 10, 2006 was $57,279,201.05.  Additionally, Class Counsel has expended $5,561,128.12 in litigation related expenses.  Class Counsel has submitted an affidavits with this motion that detail the number of hours spent on the litigation, as well as loadstar and expenses for each firm.  Dividing the total loadstar of $57,279,201.05 into the requested fee award of $21,615,000.00 yields a multiplier of approximately 0.38.  If the Court also considers the fact that Counsel is forgoing any separate award of litigation expenses and adds those out-of-pocket expenses to the total loadstar, the multiplier goes down further to 0.34.  Obviously, the lodestar may well grow with additional work by counsel in implementing the settlement, and hence the multiplier will shrink.  Yet, without spending one additional hour, the existing facts are sufficient to find this multiplier well within the reasonable range.

Furthermore, the lodestar calculation here is based on each law firm's historic rate (those in effect when the work was done, over the five and a half years this case has been pending). Class Counsel are providing this historic rate calculation because it is more conservative, even though the First Circuit have noted the appropriateness of calculating the lodestar on current hourly rates (i.e. in this case, those in effect in 2007 at each firm) because of the delay in payment of the fees to the firms performing the work, as well as other factors. *See Lipsett v. Blanco*, 975 F.2d 934, 942-43 (1st Cir. 1992). Given this precedent, it would be appropriate to calculate the lodestar of all firms at current rates, which would yield a higher total lodestar and a correspondingly lower multiplier.

The multiplier of 0.38 is a result of the fact that the Settlement at issue involves only one of multiple Defendants. However it underscores the risks undertaken by Class Counsel in this matter and the fact that an enormous amount of time and money has been invested in this important and ground breaking litigation. Even today, with a significant settlement with the GSK Defendants, there is no guarantee that Class Counsel will recover the time and money invested, let alone receive a multiplier greater than 1 for the entire litigation. Given the multipliers approved in many other cases, Class Counsel's request here is more than reasonable. *See In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1415 (D. Wyo. 1998) (finding a multiplier of two to be reasonable based on these factors); *see also In re RiteAid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (concluding that, under the cross-check approach, a lodestar multiple in the range of 4.5 to 8.5 is "unquestionably reasonable"); *Third Circuit Task Force*, 108 F.R.D. at 265 (suggesting that courts consider the "contingency factor" in all common fund cases). This case entailed a significant risk for Class Counsel. "Any fee to be recovered as compensation by class counsel in this matter was contingent upon obtaining an

award for the class, and counsel performed this enormous task, working almost full-time on this case, with the expectation of receiving their fee solely out of the award in an amount to be determined by the Court.  Despite their vigorous and competent efforts, success in contingent litigation is never assured. . . . "  *In re Copley*, 1 F. Supp. 2d at 1414-15.

The lodestar crosscheck confirms the reasonableness of Class Counsel's requested fee and expense award of 33 percent of the common fund.

## IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE FACTORED IN THE COURT'S CONSIDERATION OF THE 33 PERCENT FEE AND EXPENSE AWARD

In addition to being entitled to reasonable attorney fees, it is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."  *In re Fidelity/Micron Secs. Litig*, 167 F.3d at 737; *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig*., 982 F.2d 603, 606 (1st Cir. 1992); *In re Vitamins Antitrust Litig.*, 2001 WL 37312839, at *13 (holding that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund") (citations omitted). "[B]ecause each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms."  *In re Fidelity/Micron Secs. Litig.*, 167 F.3d at 737.

The expenses incurred in this litigation in the amount of $5,561,128.12 are described in the accompanying affidavit of Marc Edelson filed herewith.  They are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, computerized research and other services, and travel in connection with this litigation until April 10, 2006.  These expenses were reasonable and necessary for the

- 21 -

prosecution of this litigation.  However, Class Counsel has agreed to forgo a request for any reimbursement of these expenses and instead asks the Court to grant its request for 33 percent of fund for both fees and expenses.

## V.      COMPENSATION TO THE NAMED PLAINTIFFS IS APPROPRIATE

Class Counsel request that the Court approve compensation in the amount of $100,000.00 in total for all eleven named TPP representatives, and $25,000.00 in total for all ten named consumer representatives, for their efforts in prosecuting this litigation on behalf of the class.  In total, Class Counsel requests $125,000.000 in such compensation to be distributed by Co-Lead Class Counsel.

Compensation to named plaintiffs "are not uncommon in class action litigation . . . particularly where a common fund has been created for the benefit of the entire class. . . .  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *see also In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997) (collecting cases in which awards to named representatives approved).  A district court in the First Circuit has stated that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."  *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003). Further, in determining whether such compensation is warranted, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves.  *Bussie v. Allamerica Fin. Corp.*, 1999 WL 342042, at *34 (D. Mass. 1999).

- 22 -

The named Plaintiffs here actively and effectively fulfilled their obligations as representatives for the Class.  The Plaintiffs went above and beyond the call of duty in complying with demands placed upon them during this litigation.  Of crucial importance is the willingness of the Plaintiffs to bring this action in the first place.  The case involved novel claims spanning more than a decade against a well healed industry.  Moreover, Plaintiffs offered invaluable assistance in the investigation and prosecution of this matter.  The TPPs were particularly helpful, providing documents and information in response to discovery requests, prepared for depositions, and aided Class Counsel evaluating the case.  As noted, TPPs were required to examine, organize and produce a significant amount of data and other material regarding their purchases of the Covered Drugs.  This work required substantial time and energy beyond the significant responsibilities of operating a health fund.  Furthermore, each of the named Plaintiffs also monitored the case and discussed its progress with counsel.  Each named Plaintiff also consulted with counsel concerning the settlement.

The requested compensation is more than justified, because of the named plaintiffs' active and prominent role in this litigation.  In such situations, courts have awarded compensation of the requested amount and larger.  S*ee*, *e.g.*, *In re Revco Litig.*, 1992 WL 118800, at *7 (N.D. Ohio 1992) (awarding $200,000 to a named plaintiff); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 203-04 (S.D.N.Y. 1997) (awarding $85,000 to a named plaintiff); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding $55,000 each to two named plaintiffs); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (awarding $50,000 to the class representative).

Finally, the Notice to the Class advised Class members that Class Counsel would apply for such compensation, and no Class member has to date objected to such an award.

For these reasons, Class Counsel submit that the requested compensation to the named Plaintiffs are both appropriate and reasonable.

## VI.    CONCLUSION

For the reasons set forth above, Class Counsel respectfully request that the Court approve the fee and expense petition and enter an order awarding Class Counsel attorney fees and expenses in the amount of $21,615,000.00.  Class Counsel also request that the named Plaintiffs be awarded a total of $125,000.00 as compensation for their participation in the prosecution of this action.

DATED:  June 22, 2007

By____/s/ Steve W. Berman_____
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
820 North Blvd., Suite B
Oak Park, IL  60302
Chicago, IL  60601
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

- 24 -

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on June 22, 2007, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF COUNSEL'S PETITION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATION TO THE NAME PLAINTIFFS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


   /s/ Steve W. Berman
Steve W. Berman

001534-16  179710 V1