UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) DOCKET NO. 01-CV-12257-PBS<br>)<br>) MDL NO. 1456<br>) |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | ) Hon. Patti B. Saris<br>) |

### HEALTH CARE SERVICE CORPORATION'S STATEMENT OF OBJECTIONS TO TERMS OF THE PROPOSED SETTLEMENT

Health Care Service Corporation, a Mutual Legal Reserve Company, ("HCSC") hereby files this Statement of objections to the terms of the proposed class settlement (the "Settlement") with Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline in the *In re: Pharmaceutical Industry Average Wholesale Price Litigation* before this Court. As one of the largest Third-Party Payors (as defined by the Settlement) in the country and in the proposed class, HCSC objects to the adequacy, fairness, and reasonableness of the settlement. Most importantly, HCSC objects to the unreasonable deadlines set forth for providing claims data for, objecting to, and/or opting-out of the proposed class.

### I. OVERVIEW OF OBJECTIONS

HCSC is an organization that encompasses Blue Cross Blue Shield of Texas, Blue Cross Blue Shield of New Mexico, Blue Cross Blue Shield of Oklahoma, and Blue Cross Blue Shield of Illinois. HCSC administers hundreds of smaller plans as well. HCSC is one of the class members with the most to lose or gain in any settlement and should be heard. HCSC serves approximately 1 out of every 35 Americans. HCSC and the plans it administers expended

enormous resources in providing coverage for Alkeran (Melphalan), Kytril Tablets and Kytril Injectables (Granisetron HCL), Myleran (Busulfan), Retrovir (Zidovudine), Zofran Orals and Zofran Injectables (Ondanestron HCL), Zantac (Ranitidine HCL), Imitrex (Sumatriptan), Lanoxin (Digoxin), Navelbine (Vinorelbine Tartrate), Ventolin (Albuterol), and Zovirax (Acyclovir). Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline has driven up the costs of health care by reporting false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs. Such reporting caused higher rates to be set for the outpatient drug prices paid or co-paid by HCSC.

Although HCSC believes that resolution of this dispute with Defendant for an adequate settlement would be desirable, the Settlement as it is currently configured does not sufficiently address basic questions of fairness, reasonableness and adequacy vis-à-vis potential class members like HCSC. Furthermore, HCSC requests a reasonable extension of the opt-out period and claims submission period to permit potential class members like HCSC to marshal their data, evaluate their options, and determine whether pursuit of independent litigation against the Defendant makes sense.

### Inappropriate Timing and Inadequate Information

Although the settlement negotiations stretched over a period of two years and a settlement was reached in principle in early 2006, with the next several months were spent "papering" the deal and negotiating the finer points, class counsel seem to have believed that "time was of the essence" in its notice plan and framework.[1] The Settlement has at least three inappropriate aspects with regard to timing. First, it did not provide sufficient time to third-party payor class members to obtain their claims information and evaluate the merits of the class's

---

[1] See Class Plaintiffs' Memorandum of Law in Support of Joint Motion for Preliminary Approval of Proposed Nationwide GSK Settlement, Certification of Settlement Class and Approval of Notice Plan (Docket Entry 2971) at 4.

case to determine whether to opt out or not. Second, the opt-in procedure – with its request to provide data on or before the date of the opt-in deadline, and the ambiguity about what would happen to a request to remain in the class if all such data was not provided, inappropriately discouraged informed choice about opting in. Third, class counsel have not provided their briefing and materials in support of the final approval of settlement to the Court (and therefore to the class members who are monitoring this litigation) yet! We are now just weeks from the final fairness hearing. This is problematic because the objections to the settlement are due in total under the notice plan on or before June 22, 2007. There now is insufficient time for informed class members to obtain the briefing and other supporting materials and evaluate whether to provide a Statement in support or opposition to the settlement. In addition, HCSC objects to the distribution plan given the lack of evidence supporting the distribution (particularly capping the third-party payor amount at 70% of the "remaining" settlement proceeds). Further, it appears that consumers in the class (and counsel for the consumers and the States) have a better chance of being made whole for the claims that they submit. HCSC notes that third-party payors in similar litigation (see *In re Warafarin Sodium Antitrust* MDL 98-1232) have had the potential to obtain as much as 82% of settlement proceeds.

## II. STANDARD OF REVIEW

When a class action settlement is submitted for approval, a district court must perform an independent and objective analysis to determine whether the settlement is in the best interest of those whose claims will be adjudicated. *See Airline Stewards v. American Airlines*, 763 F.2d 875 (7th Cir. 1985); *Cf. In re Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11 (1st Cir. 1980) (addressing notice issues). In performing an objective analysis in the present settlement agreement, this Court must decide whether its fair, reasonable and adequate under the

circumstances. *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956 (3rd Cir. 1983); *Manual for Complex Litigation, 3rd Ed.* §30.42 at 264.

If the settlement is recommended by class counsel after arm's length negotiations, then typically there is an initial presumption of fairness involved. *Wellman v. Dickinson*, 497 F.Supp 824 (S.D.N.Y. 1980), *aff'd*, 682 F.2d 355 (2nd Cir. 1982). However, when lawyers for both sides have agreed on terms of settlement, the typical adversarial setting is distorted and courts must be aware of the potential for collusion between class counsel and defense counsel. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3rd Cir. 1995); *Cf. Wortley v. Camplin*, 333 F.3d 284 (1st Cir. 2003) (noting risk of collusion and conflict of interest among counsel).

Class counsel has not provided as of this date sufficient evidence that this Settlement is fair, reasonable, or adequate as it pertains to the class of third-party payors. As discussed below, the provisions of the Settlement relating to the distribution of how third-party payor claims (and the other two groups' claims) leave important questions about the fairness of the Settlement pursuant to Rule 23. Furthermore, the <u>structure</u> of the settlement and the timelines for decision-making are unreasonable and do not afford class members sufficient information or time to make decisions about whether to file a statement of objections and/or whether to opt-out. These timing problems coupled with the types of documentation purportedly required to remain in the settlement class are also unreasonable.

### III. DISCUSSION OF OBJECTIONS TO THE SETTLEMENT

In or around February 20, 2007 – almost a full year after the settlement had been reached in principle, class counsel through Complete Claim Solutions, Inc. sent out notice documents to class members that required third-party payors to decide whether to opt-out of the settlement on

or before June 22, 2007, and apparently to do so with an extensive amount of data relating to payment of claims. To date, HCSC is not aware that class counsel has provided the class the factual underpinnings of the distribution plan or specifically what amount of the alleged are associated with members of the class who are third-party payors.

### A. The Settlement Unreasonably and Unfairly Pressures Potential Class Members with an Unreasonable and Unnecessarily Short Timeframe to Make Decisions Whether to Opt-Out or Object.

HCSC objects to the clear attempt to discourage and reduce the number of opt-outs to the class settlement through a series of unfair and unreasonable timelines for opting-out. The settlement purported to require opt-outs to make such an election on or before May 28, 2007 – just weeks after the notice of the settlement was mailed. Purported class members received notice – at earliest – in mid February 2007. To request purported class members to evaluate the terms of the settlement agreement, the merits of their claims, and the possible outcomes in such a short period of time is unreasonable.

Such an abbreviated timeline when the settlement in principle had been reached a full year earlier is absurd and obviously calculated to reduce informed choice. HCSC requests that the opt-out deadline be extended a reasonable period of time so that potential class members have an objectively reasonable period of time to evaluate the potential settlement and if the Court believes it still necessary then to marshal documentation for opting-out.

HCSC objects to the proposed settlement as the settlement record and the unreasonable deadlines forbid anyone who thinks the settlement is fundamentally-flawed to be heard by this Court. As a way of example, potential claimants are forced to elect whether to opt-out (by May 28, 2007) prior to obtaining the full basis for the fairness or adequacy of the settlement. If in fact, class counsel believed that all the information was available earlier in the year for final

approval of the settlement – then why have they not filed it (so that potential opt-out parties or class members could evaluate such information – particularly in regard to damages and distribution). Perhaps more troubling, <u>in order to voice concern over the settlement (i.e. object), potential class members are purportedly required to waive their rights to opt-out and agree to be a potential class member</u>. Potential class members are required to file their formal objections in a time frame that was inadequate given the timing of notice. Objectors were also made to elect whether or not to seek permission to travel to Massachusetts to present their objections **prior** to having access to the full bases for the final settlement and distribution plan.

The parties may well have muted the voices of potential class members by gagging the opt-outs (those who are so strongly against the terms of the settlement that they risk recovery in order to avoid the settlement) from presenting objections to the Court. Furthermore, there was no legitimate reason given the pendency of the settlement in principle existing since early to mid-2006, to require opt-outs to act by May 28, 2007 (given that notice was not sent out until February 2007). Although the low number of opt-outs may be used by class counsel as an indication of the fairness of the settlement, it is just as likely to have been a result of the rushed-timeframe and ambiguity of the consequences of "incorrectly" opting-out. The clear impact of this framework is a reduction in the number and variety of reasonable and informed objections and/or opt outs. This framework should not be countenanced.

**B.   The Settlement Record Fails to Provide Support for the Distribution Percentage and Amounts in Light of the Damages to Third-Party Payors and Counsel Fees.**

HCSC objects to the utter lack of support provided to potential class members as of February 2007 (when decisions on objections and opting-out need purportedly to be made) for the settlement amount and the distribution percentages among third-party payors, the states, and

consumers. As of May 2007, the time when potential class members have to decide to object or opt-out, neither class counsel nor Defendants have provided any evidence to this Court regarding the fairness of the Settlement and/or distribution plan. Furthermore, whether 70% is fair, reasonable, or adequate has not been supported with any evidence.[2] Although class counsel might argue that not many class members actually submit claims (in arguing that it is fathomable that class members receive their single damages if 80 – 90% of the class fails to make claims), this does not address (1) whether the distribution tracks the actual damages to third-party payors (or any subgroup) and (2) whether the 65.5 million dollars is reasonable in and of itself on the merits of the case (it is unimportant that those who take affirmative acts of filing a proof of claim are likely to get more because most members of the class do not act – the issue is whether the class is getting a reasonable settlement from the defendants). In fact, in analyzing the distribution plan, the Court may find that consumers making a claim are paid in full, while third-party payors who make claims are not being compensated for their entire loss. The Court should evaluate whether third-party payors are being treated fairly with regard to the distribution and the respective losses of each of the groups that do make claims.

The bald statements in the request for preliminary approval do not constitute evidence. Class counsel simply wants the Court to approve the Settlement because it is alleged to have been negotiated at arms-length. HCSC respectfully requests that the Court undertake the duty to independently evaluate the fairness of the Settlement. Likewise, potential class members deserve more of a showing than this to evaluate whether they should remain in the class or opt-

---

[2] From gksettlement.com website, the following discusses how the distribution will occur of the net settlement funds between third party payors and consumers: "Seventy percent (70%) of the remaining fund will be set aside to pay the claims of insurer Class Members who submit a valid claim and other insurers who are members of a separate and independent group of Third-Party Payors (referred to as the "Independent Settling Health Plans" or "ISHPs") who have agreed to settle their claims against GSK for a portion of the Settlement funds. Thirty percent (30%) of the remaining fund will be distributed in cash to individual consumers who make valid claims."

out. Class counsel and Defendant request some $23,000,000 in attorneys fees should be taken from the class fund to compensate class counsel for their hard work, while failing to show the Court and class the favorable evidence that the hard work adduced or the economic reports they generated regarding damages, liability, and class distribution percentages. HCSC has no reason to believe that the State Attorney Generals have not provided a great service to the class; however, there is no support for the time spent by the private law firms or the expenses they have incurred, and what contribution they made to the settlement process.

It is a fundamental requirement that to bind any party to the provisions of a class action settlement, that purported class member must be a party to the suit and have had its interests adequately represented. *Amchem Products, Inc. v. Windsor*, 521 U.S.591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (stating that in order to bind absent members, the class representative must be part of the same class, possess the same interests, and suffer the same injury as those sought to be bound) (emphasis added); *General Telephone Co. v. Falcon*, 457 U.S.147, 102 S.Ct. 2364, 7 L.Ed.2d 740 (1982); *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed.22 (1940). Yet there has not been any showing that HCSC's interests have been adequately represented here as a third-party payor when no rhyme or reason is presented for settlement amount vis-à-vis third-party payers or in relation to the other two groups of the class. The entire settlement process is unfair and must be reworked with the right to opt-out and/or object in mind and more evidence presented reflecting the distribution plan and its fairness and reasonableness.

## IV. PRAYER

Based on the foregoing, this Court should withhold final approval of the Settlement. Because HCSC is one of the largest third-party payors in the United States it has a particular interest in monitoring health care fraud and abuse such as that Defendants committed. There has

been a lack of transparency in the proceedings from the putative class members with regard to the justification for the distribution. Also, HCSC would request that the Court permit a reasonable extension for opting-out, permit HCSC to be heard at the fairness hearing through the undersigned counsel, and order class counsel to present its evidence for why the settlement amount is adequate to cover the damage caused by Defendants to third-party payors.

Respectfully submitted,

SCOTT YUNG LLP

_____
Andrew W. Yung
State Bar No. 00794899
John B. Scott
State Bar No. 17901500
The Awalt Building
208 N. Market St., Suite 200
Dallas, Texas 75202
Telephone:   214-220-9955
Facsimile:    214-220-9932

**COUNSEL FOR HEALTH CARE SERVICE CORPORATION**

## CERTIFICATE OF SERVICE

On this 21st day of June, 2007, a true and correct copy of the above and foregoing was forwarded to all counsel of record as indicated below.

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
**COUNSEL FOR NATIONWIDE AWP PAYOR CLASSES**

Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, California 94304
**COUNSEL FOR GLAXOSMITHKLINE**

Andrew W. Yung