## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **In re: Pharmaceutical Industry Average** ) | |
| **Wholesale Price Litigation** ) | |
| ) | MDL No. 1456 |
| ) | |
| **This Document Relates to:** ) | Civil Action No. 01-12257-PBS |
| ) | |
| *U.S. ex rel. West v, Ortho-McNeil* ) | Hon. Patti B. Saris |
| *Pharmaceutical, Inc. et al.*, No. 03-8239 ) | |
| (N.D. Ill.) ) | |
| _____ ) | |

### PLAINTIFF'S MEMORANDUM IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE
### COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

I.      INTRODUCTION

This Court has subject matter jurisdiction over the federal claims in this *qui tam* False

Claims Act action pursuant to 28 U.S.C. §§ 1331 and 1345 (the federal-question and United-

States-as-plaintiff provisions of the Judicial Code).  Defendants claim the public disclosure bar

found in the False Claims Act at 31 U.S.C. § 3730 (e)(4)(A) (hereafter, the "public disclosure

bar"), which withdraws federal subject matter jurisdiction over any False Claims Act *qui tam*

"action . . . based upon the public disclosure of allegations or transactions . . . , unless . . . the

person bringing the action is an original source of the information," eliminates federal subject

matter jurisdiction over this action. Defendants' Motion is not well taken because (i) the bribery

allegations and transactions in this action have not been publicly disclosed, (ii) none of the

allegations in this action are "based upon" any public disclosure, and (iii) even if they were,

Relator-Plaintiff Ed West (hereafter "Relator" or "West") is an original source of the

information.

## II.  FACTS AND PRIOR PROCEEDINGS

Relator Ed West began working for Defendant Ortho-McNeil in 1997 as a contract sales representative through Innovex.  Exhibit A, Affidavit of Ed West ¶ 2.  In January 1999, Defendant Ortho-McNeil, a wholly owned subsidiary of Defendant Johnson & Johnson, hired West as a sales representative, a position West held until the Summer of 2000 when his employment was terminated.  *Id*. at ¶ 3.  As a contract sales representative and employee, West acquired firsthand knowledge of the Defendants' misconduct alleged in the First Amended Complaint.  In that pleading West alleges, with particularity, the circumstances of the Defendants' scheme to bribe hospitals in order to induce prescriptions of Levaquin, their manipulation of the average wholesale price of Ultram and Levaquin and "marketing of the spread" to hospitals, and their off label marketing of Ultram and Levaquin.

West commenced this False Claims Act *qui tam* action by filing a complaint in the United States District Court for the Northern District of Illinois.  After the case was unsealed, the Defendants filed a motion to dismiss the First Amended Complaint pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P.  That motion is fully briefed and pending.  After the parties briefed the Defendants' first motion to dismiss, the Joint Panel on Multidistrict Litigation transferred this case to this Court, but simultaneously separated and remanded Relator's off label marketing claims to the Northern District of Illinois.  Defendants have now filed a second motion to dismiss, this time arguing this Court lacks the power to entertain the portion of the action pending before this Court.  For the reasons set forth below, the Defendants' motion has no merit and should be denied.

### III.    ARGUMENT

The public disclosure bar does not eliminate federal subject matter jurisdiction over this action because (i) there has not been a public disclosure of the bribery-related "allegations or transactions" in this action; (ii) even with respect to the allegations or transactions for which there has been a public disclosure, this action is not "based upon" the public disclosure, and (iii) even if this action were based in any part upon a public disclosure, West is an original source of all the information upon which his allegations are based.

> i.    There Was No Public Disclosure of the Defendants' Bribery Scheme and Violation of the Anti-Kickback Statute Before the Relator Commenced this Action

The public disclosure bar applies to the public disclosure of  "…allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media…" 31 U.S.C. §3730(e)(4)(A).  A "public disclosure" is information that someone has exposed, made known, or at least made accessible, to all members of the community or, in other words, the general public.  *U.S.* ex rel. *Rost v. Pfizer, Inc.* 446 F.Supp.2d 6, 17 (D.Mass. 2006). Defendants' fraudulent manipulation of the average wholesale price ("AWP") of their pharmaceuticals was publicly disclosed before West commenced this action.  Indeed, this Court recently found that Johnson & Johnson's conduct with respect to Procrit was "troubling," and, with respect to Remicade, this Court found a "close call" as to whether its conduct was "outrageous or egregious."  *In re Pharm. Indus. Average Wholesale Price Litig.,* 2007 WL 1774644, * 67-68  (D.Mass.).

In addition to alleging AWP fraud, the First Amended Complaint alleges the Defendants violated the federal Anti-Kickback statute, 42 U.S.C. 1320a-7b(b)(2), by paying cash bribes to

hospitals in order to induce hospitals to prescribe Levequin.  First Amended Complaint ¶¶ 63-69. The bribes contributed to the AWP fraud, and therefore are properly within this MDL.[1] However, they also support a completely separate fraudulent scheme – not merely a separate theory of liability.  The fact the bribes were part of two separate schemes, i.e., transactions, in no way means that the Defendants' scheme to bribe hospitals in order to keep Levequin on hospital formularies was publicly disclosed by virtue of the public disclosure of Defendants' AWP fraud. *Compare In re Pharmaceutical Industry Average Wholesale Price Litigation*, --- F.Supp.2d ----, 2007 WL 1334496, * 5 (D.Mass.) ("The novel legal question is whether reporting a fraudulent AWP to publishers, without more, is an offer or payment of remuneration under the Anti-Kickback Statute").  In the foregoing opinion, the "more" would have been the act of "marketing the spread," *id.*, which could be construed as part and parcel of the AWP-related fraud.  In the case at bar, the "more" is the cash payment of bribes to induce providers to prescribe Levequin – a different transaction entirely.  The Defendants have not pointed to a public disclosure of their alleged bribery scheme.

   ii. The Public Disclosure Bar Does Not Withdraw Jurisdiction Over This Action Because The Allegations in West's First Amended Complaint Are Not "Based Upon" Such Public Disclosure

   Some of the allegations or transactions in the First Amended Complaint were the subject of prior public disclosure, others were not.  However, none of the allegations in the First Amended Complaint were "based upon," i.e., "derived from," the public disclosure, and therefore, the public disclosure bar does not eliminate federal subject matter jurisdiction over this action.

---

[1] The Defendants imply in their Motion that West obtained transfer to this MDL by contending this action, other than the off label marketing allegations that remain pending in the Northern District of Illinois, relates *solely* to AWP violations.  The term "solely" renders this implication false.  This implication is belied by the papers Relator filed in the MDL and the MDL Order of Transfer, which asserts that the existence of common questions of fact supported transfer.

Six years ago this Court held that "an action is 'based upon' a public disclosure when the allegations supporting the action are similar to or '*the same as* those that have been publicly disclosed . . . *regardless of where the relator obtained his information*." *U.S. ex rel. O'Keefe v. Sverdup Corp.*, 131 F.Supp.2d 87, 92 (D. Mass 2001) (citations omitted, emphasis and ellipsis added in *O'Keeffe*). This holding is at odds with a significant minority of courts (including a majority in this District who have addressed the issue) which hold that an action is "based upon" a public disclosure only when the allegations supporting that action are "derived from" the public disclosure. Under this minority view, "a relator may bring a claim for which the supporting allegations are the very same as those already publicly disclosed, so long as the relator can demonstrate that he had 'independent knowledge' of the wrongdoing." *O'Keeffe*, 131 F.Supp.2d at 92. The United State Supreme Court's recent decision in *Rockwell International Corp. v. U.S.,* 127 S.Ct. 1397 (2007), has undermined this Court's reading of the term "based upon." Relator respectfully requests this Court re-visit the issue in light of *Rockwell*.

The foundation of this Court's holding in *O'Keeffe* is that "statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *O'Keeffe*, 131 F.Supp.2d at 92. However, in *Rockwell*, the Supreme Court explained that the public disclosure bar does not *confer* federal subject matter jurisdiction over False Claims Act *qui tam* actions, but rather *withdraws* federal subject matter jurisdiction that is conferred by other statutes, namely, 28 U.S.C. §§ 1331 and 1345 (the federal-question and United-States-as-plaintiff provisions of the Judicial Code). *Rockwell*, 127 S.Ct. at 1404. The Court rejected the Relator's argument that the public disclosure bar does not implicate subject matter jurisdiction and thus can be waived. In doing so, the Court explained that "the issue is not whether casting the creation of a cause of action in jurisdictional terms somehow limits the general grant of

jurisdiction under which that cause of action would normally be brought, but rather whether a clear and explicit *withdrawal* of jurisdiction withdraws jurisdiction." *Id.* at 1405 (emphasis in original).  The Court referred to the public disclosure bar as a "jurisdiction-removing provision," *id.* at 1406, and explained that it "eliminates federal-court jurisdiction over" certain False Claims Act *qui tam* actions.  *Id.* at 1401.

Because the public disclosure bar withdraws otherwise extant subject matter jurisdiction, the canon employed in *O'Keeffe* calling for a construction of statutes *conferring* subject matter in a manner that limits federal subject matter jurisdiction does not apply.  Instead, the Court must apply the corollary canon, namely, that laws withdrawing subject matter jurisdiction must be construed narrowly and in favor of the exercise of subject matter jurisdiction.  *See Kobler v. Central Life Assur. Co.*, 2001 WL 79156, * 3 (N.D.Ill.) (holding 28 U.S.C. § 1332(c), which "was intended to eliminate diversity jurisdiction for 'suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant" "is to be construed narrowly"); *Hudson News Co. v. Federal Ins. Co.*, 258 F.Supp.2d 382, 388 (D.N.J. 2003) (narrowly construing Air Safety Act provision which divests all federal courts except the Southern District of New York of subject matter jurisdiction over actions resulting from or relating to the aircraft crashes of September 11 and explaining that "most, if not all courts addressing the jurisdictional effect of the Air Safety Act have narrowly construed the scope of" the jurisdiction limiting provisions); *Rice v. Rice Foundation*, 610 F.2d 471 (7th Cir. 1979) (narrowly construing probate exception to federal subject matter jurisdiction and writing, "[T]he federal courts construe the meaning of 'probate' quite narrowly to limit the scope of the exception"); a*ccord Community Ins. Co. v. Rowe*, 85 F.Supp.2d 800 (S.D.Ohio 1999).

In *Rockwell*, the Supreme Court resolved a circuit split over whether the term "information" in the public disclosure bar refers to the information in the relator's complaint (a construction narrowly construing the withdrawal of federal subject matter jurisdiction) or to the information that is publicly disclosed (a construction broadly construing the withdrawal of federal subject matter jurisdiction).  The Court resolved its doubt about the reach of the public disclosure bar by construing it in favor of subject matter jurisdiction.  The Court wrote, "*Though the question is hardly free from doubt*, we agree that the 'information' to which subparagraph (B) speaks is the information upon which the relators' allegations are based."  *Id.* at 1407.

As was the case with the term information pre-*Rockwell*, the circuits have split over the meaning of the term "based upon." *See O'Keeffe*, 131 F.Supp.2d at 92.  And even courts adopting the majority view recognize the question is close. *See Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032 (8th Cir. 2002) ("We also conclude that the majority view, *though not free of strain*, gives a more coherent meaning to the confusing language of the section than the minority view does") (emphasis added).  *O'Keeffe*, 131 F.Supp.2d at 92 ("Recognizing that 'statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction' . . .").  In light of these doubts, *O'Keeffe* and the majority view it adopted cannot survive the obligation made clear in *Rockwell* to construe the public disclosure bar in favor of federal subject matter jurisdiction. *See U.S. ex rel. Prawler*, 24 F.3d 320, 328 (1st Cir. 1994) ("[C]ourts should proceed with caution before applying the statutory bar of § 3730(e)(3) in ambiguous circumstances").

Viewed in light of *Rockwell*, each rationale underlying *O'Keeffe* and the majority rule is overshadowed by an equally or more compelling contrary rationale.  First, the plain language of the statute is more consistent with the minority view.  As the Fourth Circuit explained, "Section

3730(e)(4)(A)'s use of the phrase 'based upon' is ... susceptible of a straightforward textual exegesis. To 'base upon' means to 'use as a basis for.'" *Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994) (quoting *Webster's Third New International Dictionary* 180 (1986)); *U.S. v. Bank of Farmington*, 166 F.3d 853, 863 (7th Cir. 1999) ("'based upon' is not synonymous with 'identical to' or 'similar to,' but can be substituted for 'derived from' wherever it occurs'"). *See also O'Keeffe*, 131 F.Supp.2d at 93 (rejecting the "literal meaning" of "based upon" in connection with adoption of the majority view).

Second, construing "based upon" as meaning "derived from" better serves the policies underlying the False Claims Act of encouraging whistleblowers to come forward while discouraging parasitic actions.  In *O'Keeffe*, this Court wrote that construing "based upon" [as meaning 'derived from'] would contravene the congressional policy of prohibiting *qui tam* actions where the government has sufficient information to pursue the false claim itself." *Id.* This view goes too far.  Judge Tauro recently critiqued this rationale in *U.S.* ex rel. *Rost v. Pfizer, Inc.*, 446 F.Supp.2d 6 (D.Mass. 2006), observing that :

> *Qui tam* actions that contain allegations similar, or even identical, to publicly disclosed information are not necessarily parasitic. Such actions are parasitic only when the plaintiff's allegations are actually derived from, or leeched off, the public disclosures. The majority view's interpretation strikes too broadly and effectively prohibits actions that have not "fed off" public disclosures and are thus not parasitic. The "derived from" interpretation, on the other hand, serves to filter out only those *qui tam* actions which are truly parasitic.

*Id.* at 20.

Next, in adopting the majority view, this Court wrote that "allowing a relator suit after the same allegations or transactions have entered the public domain may have the perverse effect of 'either pressur[ing] the government to prosecute cases when it has good reasons not to or

reduc[ing] the government's ultimate recovery.'" *O'Keeffe*, 131 F.Supp.2d at 92.  Yet the First

Circuit has unequivocally rejected the contention that *qui tam* actions "were to be avoided once

the government had notice of the transactions or allegations giving rise to the actions." *Prawer*,

24 F.3d at 329.

 The final leg of this Court's reading of "based upon" in *O'Keeffe* is that a "literal reading

of the statute that places separate emphasis on the words 'based upon' would essentially render

the public disclosure bar's 'original source' exception superfluous." *O'Keeffe*, 131 F.Supp.2d at

92.  This is not correct.  In his dissent in *U.S. ex rel. Mistick PBT v. Housing Authority of City of*

*Pittsburgh*, 186 F.3d 376 (3rd Cir. 1999), Chief Judge Becker posited two scenarios where

Congress might have viewed the original source provision as helpful to a relator whose

allegations were derived from a public disclosure: one, where a relator who is barred because he

has derived some of his fraud information from a public disclosure may still bring the claim as

an original source if he has direct and independent knowledge of some other essential element of

the claim; two, a  relator with a claim that is not technically derived from public disclosures, but

that is difficult to separate from those disclosures, could more easily prove himself to be an

original source than to prove whether his action was derived from the public disclosure.  *Id.* at

399-400.  *See also Rost*, 446 F.Supp.2d at 21 (describing various circumstances under which one

could potentially need to demonstrate original source status where allegations in his complaint

are derived from a public disclosure).

 The arguments in favor of the minority view are compelling.  To the extent this Court

harbors any doubts about the meaning of based upon (*O'Keeffe* strongly suggests such doubt by

invoking a canon employed to resolve doubt), *Rockwell* makes clear that such doubt must be

resolved in favor of finding federal subject matter jurisdiction.  The majority view is no longer

tenable and should be rejected.

     iii.  <u>The Public Disclosure Bar Does Not Withdraw Jurisdiction Over This Action Because Relator is an Original Source of the Allegations in the First Amended Complaint</u>

Even if West's allegations were "based upon" a public disclosure, this action would not

be barred because West is an "original source" of the information underlying this action.  To

qualify as an "original source," West must (1) have direct and independent knowledge of his

allegations, and (2) have voluntarily provided that information to the Government before filing

his action.  31 U.S.C. § 3730(e)(4)(B).  As we explain below, West meets both requirements –

which the Defendants do not really dispute - and therefore West is an original source.

*1.  Relator has Direct and Independent Knowledge of the Allegations in the First Amended Complaint*

West has direct and independent knowledge of the information in the First Amended

Complaint.  The Defendants acknowledge this.  See Defendants' Memorandum in Support of

Motion to Dismiss For Lack of Subject Matter Jurisdiction, Docket Entry 4308, p. 11 ("To be

sure, West claims to have participated directly in the provision of at least some forms of

'remuneration' to purchases of Levaquin and Ultram").  While they discount *some* of the

information as "second hand or speculative" because West alleges the Defendants encouraged

sales representatives to perpetrate the fraud but not than anyone actually did so, the Defendants

are really attacking the sufficiency of the pleading, discussed *supra*, not West's claim to have

direct and independent knowledge of the information in the First Amended Complaint.

West's knowledge of the information upon which this action is based necessarily pre-

dated any public disclosure because West's relationship with the Defendants terminated before

any such public disclosure.  West began working for Ortho-McNeil in 1997 as a contract sales

representative through Innovex.  Exhibit A, Affidavit of Ed West ¶ 2.  In January 1999, Ortho-

McNeil hired West as a sales representative, a position West held until the summer of 2000 when

his employment was terminated by Ortho-McNeil.  *Id.* at ¶ 3. As a contract sales representative

and employee, West acquired firsthand knowledge of Defendants' misconduct.  The information

contained in West's pleading was obtained during the course of his employment with the

Defendants which was **prior to** the public disclosures referenced by Defendants.  Thus his

knowledge is necessarily independent.  *U.S. ex rel. Aflatooni v. Kitsap Physicians Services*, 163

F.3d 516, 525 (9th Cir. 1998) (noting that the relator's knowledge of the alleged fraud preceded

the public disclosure and, therefore, the relator's knowledge "would be considered 'independent'

for purposes of the FCA.").  The law is clear: an employee obtains direct and independent

knowledge when he or she witnesses a fraud against the government during the course of his

employment.  *U.S. ex rel. Jones v. Horizon Healthcare Corporation,* 160 F.3d 326, 333 (6th Cir.

1998) (stating that "Appellent has 'direct and independent knowledge' of the allegations or

transactions that are the subject of the FCA complaint.  Her knowledge of the facts regarding the

alleged fraud clearly is the result of her employment with Appellee and the information she

acquired and witnessed as a result of her position.").  West as both an employee and contract

sales representative witnessed Defendants' fraudulent marketing activities "with his own eyes"

obtaining direct and independent knowledge "unmediated by anything but [his] own labor."

*Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992).  *See also U.S. ex rel. Barajas v.*

*Northrop Corp.*, 5 F.3d 407, 411 (9th Cir. 1993) (holding that an employee of a government

subcontractor who brought a qui tam action alleging falsified testing had "direct and independent

[knowledge] because he acquired it during the course of his employment.").  The Supreme Court

implicitly recognized this standard in *Rockwell*, noting that "[b]ecause Stone was no longer

employed by Rockwell at the time" he did not have direct and independent knowledge about the insolid pondcrete at issue. *Rockwell International Corp. v. U.S.* 127 S.Ct. 1397, 1411 (2007).

After essentially conceding West has direct and independent knowledge of the allegations in the First Amended Complaint, the Defendants reach the thrust of their (unsound) argument against West's status as an original source, i.e., that the First Amended Complaint fails to satisfy Rule 9(b), Fed.R.Civ.P., and therefore is an insufficient pleading.  Specifically, they claim this Court lacks subject matter jurisdiction because the First Amended Complaint does not plead with particularity that their scheme resulted in incorrect reporting of AWP.  This argument fails as well.  Relator's First Amended Complaint states a claim for relief under the False Claims Act and satisfies Rule 9(b).  Relator's memorandum filed in opposition to the Defendants' first motion to dismiss makes that clear.  Even if this were not the case, "[i]t is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (U.S. 1998) (parenthesis in original). In *Steel* the Court explained, subject-matter jurisdiction exists "if the right . . . to recover . . . will be sustained under one reading of the Constitution and laws and defeated under another."  *Id.* Accordingly, so long as West has direct and independent knowledge of the allegations on which his action is based (he does) and he voluntarily provided that information to the government before filing his action (he did, as explained supra), subject matter jurisdiction exists unless his "claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.*, *quoting Oneida Indian Nation of N. Y. State v. Oneida County, New York*, 414 U.S. 661, 666 (1974).  The Defendants do not contend West's claim is frivolous.  Rather, they assert it fails to plead the circumstances of

the fraud with particularity.  Here, because West prevails under one reading of Rule 9(b), the public disclosure bar does not divest this Court of subject matter jurisdiction.

> ### 2.  *Relator Voluntarily Provided to the Government the Information this Action is Based on Before Filing This Action*

West voluntarily provided to the government the information upon which this action is based before he commended this action.   Exhibit A, Affidavit of Ed West ¶¶ 5-12.  The Defendants do not dispute this.

> ### 3.  *State Notification Requirement*

Finally, the Defendants argue that West does not qualify as an original source with respect to claims for California, Hawaii, Nevada and D.C. for the additional reason that those jurisdictions' false claims acts require that "a relator whose allegations are based upon public disclosures to prove that he is the person 'whose information provided the basis or caused the making of the investigation, hearing, audit, or report that led to the public disclosure" in order to qualify as an original source.  Because the allegations in this action are not "based upon" public disclosures, the separate requirement under these jurisdictions' acts has no bearing on this action.

## IV.    CONCLUSION

For the foregoing reasons, Relator prays this Court deny Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Respectfully submitted,


EDWARD WEST ex rel.
UNITED STATES OF AMERICA



By:  /s/John A. Bruegger
     John A. Bruegger - #6278821
     SIMMONSCOOPER LLC
     707 Berkshire Blvd.
     East Alton, Illinois  62024
     (618) 259-2222 ~ Ext. 506
     (618) 259-2251 ~ Fax
     Email: jbruegger@simmonscooper.com

     George A. Zelcs - #3123738
     KOREIN TILLERY
     205 North Michigan Ave.
     Chicago, Illinois 60601
     (312) 641-9750 tel
     (312) 641-9751 fax
     Email: gzelcs@koreintillery.com

     Donald M. Flack
     KOREIN TILLERY
     505 North 7th Street, Suite 3600
     St. Louis, Missouri  63101
     (314) 241-4844
     (314) 241-3525 ~ Fax
     dflack@koreintillery.com

     ATTORNEYS FOR RELATOR ED WEST

## <u>CERTIFICATE OF SERVICE</u>

John A. Bruegger, an attorney, hereby certifies that on July 9, 2007, he electronically served the foregoing document on the following counsel of record by electronic mail:

Scott R. Lassar, SLassar@Sidley.com
Scott D. Stein, sstein@Sidley.com
Charles J. Biro, cbiro@sidley.com
Jordan S. Ginsburg, jginsberg@sidley.com

John A. Bruegger, an attorney, hereby certifies that on July 10, 2007, he electronically filed the foregoing documents with the Clerk of the Court for the District of Massachusetts using the court's CM/ECF system.

A copy of the foregoing also has been served on July 10, 2007 on the following individuals by depositing a copy in the U.S. mail, first-class postage pre-paid:

Scott R. Lassar
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL  60603

Scott D. Stein
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL  60603

Jordan S. Ginsberg
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL  60603

George A. Zelcs
Korein Tillery, LLC
205 N. Michigan Plaza
Suite 1950
Chicago, IL  60601

Samuel S. Miller
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL  60604

Mary Louise Cohen
Phillips & Cohen LLP
2000 Massachusetts Ave., N.W.
Washington, DC  20036

Erika A. Kelton
Phillips & Cohen LLP
2000 Massachusetts Ave., N.W.
Washington, DC  20036

Timothy D. Nimrod
Gregory Hooggasian, Esq.
Medicaid Fraud Control Unit
100 W. Randolph St.
12th Floor
Chicago, IL  60601

Lisa Madigan
Attorney General of Illinois
100 West Randolph Street
12th Floor
Chicago, IL  60601

Charles J. Crist, Jr.
The Capitol PL-01
Tallahassee, FL  32399-1050

M Jane Brady
Carvel State Office Building
Consumer Protection-5[th] Floor
820 North French Street
Wilmington, DE  19801

Collin Wong
Bureau of  Medi-Cal Fraud
Office of the Attorney General
1425 River Park Drive
Ste. 300
Sacramento, CA  95815

L Timothy Terry
Office of the Attorney General
100 North Carson Street
Carson City, NV  89701

Randall L. Clouse
Medicaid Fraud Control Unit
900 East Main St.
5th Floor
Richmond, VA  23219

Steven Fermon
Medicaid Fraud Control Unit Illinois State Police
200 Isles Park Place
Ste. 230
Springfield, IL  62703

Robert Spagnoletti
District of Columbia Attorney's Office
Office of Corporation Counsel
441 4th St., NW
Washington, DC  20001

W Rick Copeland
Medicaid Fraud Control Unit
Office of the Attorney General
Austin, TX  78711

Jerry Kilgore
Virginia Attorney General
Office of the Attorney General
900 E. Main St.
5th Floor
Richmond, VA  23219

Susan Kennedy
Medicaid Fraud Control Unit
Office of DC Inspector General
Washington, DC  20005

Robert Schlafly
Medicaid Fraud Control Unit Bureau of Investigations
901 R.S. Gass Blvd.
Nashville, TN  37216

Paul G. Summers
Tennessee Attorney General
500 Charlotte Avenue
Nashville, TN  37243

Bill Lockyear
Office of the Attorney General
1300 I Street
Ste. 1740
Sacramento, CA  95814

Gary K. Senega
Deputy Attorney General State of Hawaii
333 Queen Street
10th Floor
Honolulu, HI  96813

Greg Abbott
Texas Attorney General
Office of the Attorney General
Capital Station, PO BOX 12548
Austin, TX  78711


                                        /s/ John A. Bruegger