# EXHIBIT A

# **STATE SETTLEMENT AGREEMENT AND RELEASE**

## I.     PARTIES

This Settlement Agreement ("This Agreement") is entered into between the Commonwealth of Pennsylvania, through Thomas W. Corbett, Jr., Attorney General of the Commonwealth of Pennsylvania, and SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), hereinafter referred to as "the Parties."

## II.    PREAMBLE

A.     On or about March 10, 2004, the Commonwealth of Pennsylvania initiated a lawsuit against GSK, GlaxoSmithKline, plc and Glaxo Wellcome, Inc. (hereinafter the "GSK Defendants"), and against other pharmaceutical company defendants, in the Commonwealth Court of Pennsylvania, captioned *Commonwealth of Pennsylvania v. TAP Pharmaceuticals., et. al.*, No. 212 M.D. 2004 (hereinafter referred to as the "State Lawsuit").  On or about March 10, 2005, the Commonwealth of Pennsylvania filed a Corrected Amended Civil Action Complaint in the State Lawsuit, which named GSK and other pharmaceutical companies as Defendants.  GSK was served with the Corrected Amended Civil Action Complaint (hereinafter referred to as the "Complaint in the State Lawsuit"), and the Parties have been litigating the State Lawsuit.

B.     The Complaint in the State Lawsuit makes certain allegations and claims concerning pharmaceutical prices for GSK products, including that GSK caused certain published "Average Wholesale Prices" ("AWPs") for Zofran and Kytril injectibles, as well as for multiple other GSK products, to be artificially inflated.  The Commonwealth claims that GSK caused the Pennsylvania Medicaid Program, as well as other state-funded and/or state

administered medical assistance programs such as the Pharmaceutical Assistance Contract for the Elderly ("PACE") Program and the Pennsylvania Employees Benefit Trust Fund ("PEBTF"), to make excessive net reimbursements for GSK pharmaceuticals. The Commonwealth further claims that GSK caused persons in the Commonwealth of Pennsylvania who made co-payments (including Medicare Part B co-payments) for GSK pharmaceuticals based on published AWPs to pay excessive amounts for those products (the "Parens Patriae/Consumer Restitution and Penalty Claims"). The Commonwealth seeks various forms of relief against GSK, including restitution, damages, injunctive relief, civil forfeiture, civil penalties, costs and/or attorneys' fees.

C. GSK denies the Commonwealth's allegations as set forth in the Complaint in the State Lawsuit.

D. To avoid the delay, expense, inconvenience and uncertainty of protracted litigation of the Commonwealth's claims, the Parties hereto mutually desire to reach a full and final settlement, including a settlement and dismissal of the State Lawsuit, as set forth below.

E. On or about September 2, 2005, GSK entered into a Settlement Agreement with the United States of America, acting through the United States Department of Justice (the "DOJ/GSK AWP Agreement"), which resolved certain claims and potential claims relating to payments by Medicare and Medicaid for Zofran and Kytril injectibles (which, following a lengthy federal government investigation, were the only products for which settlement payments were made by GSK under the DOJ/GSK AWP Agreement). That settlement fully resolved, among other things, the federal portion of claims relating to Medicaid's AWP-based payments for Zofran and Kytril Injectibles provided to Pennsylvania Medicaid beneficiaries. In connection with that settlement, GSK also entered into an Addendum to its Corporate Integrity Agreement ("CIA") with the Department of Health and Human Services, Office of Inspector General

("HHS/OIG"), referred to hereinafter as the "CIA Addendum." As described more fully below, the Parties hereto have agreed that as part of This Agreement, GSK will provide the Commonwealth of Pennsylvania with certain Pricing Information described in the CIA Addendum, which is incorporated herein by reference.

    F.    On or about August 10, 2006, GSK and the plaintiffs representing certain putative classes in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass) (the "MDL No. 1456 Class Litigation") entered into a $70,000,000 settlement of certain claims relating to payments made on the basis of reported AWPs for certain GSK pharmaceutical products by persons and entities throughout the country, including in the Commonwealth of Pennsylvania (hereinafter the "MDL No. 1456 GSK Class Settlement Agreement," which is incorporated herein by reference). An Order preliminarily approving the MDL No. 1456 GSK Class Settlement Agreement was entered by the United States District Court for the District of Massachusetts on or about November 15, 2006. As more fully described in the MDL No. 1456 GSK Class Settlement Agreement, that settlement provides for, among other things, (1) settlement payments to a nationwide class of individual consumers (including Pennsylvania consumers) who made co-payments for certain GSK drugs on the basis of their reported AWPs, (2) payments to certain States that filed *Parens Patriae*/Consumer Restitution and Penalty Claims and that elect to participate in the settlement, and (3) payments to certain State medical assistance programs that make valid claims under the settlement claims process. As more fully described below, by entering into This Agreement and thereby electing to participate in the MDL No. 1456 GSK Class Settlement Agreement, the Commonwealth of Pennsylvania and certain of its State medical assistance programs will become eligible for certain benefits provided by the MDL No. 1456 GSK Class Settlement Agreement.

### III.   TERMS AND CONDITIONS

NOW THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants and obligations in This Agreement, and for good and valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

1. Within ten business days from the Effective Date of This Agreement, GSK shall pay the Commonwealth of Pennsylvania the sum of $1,346,472.00 (One million three-hundred forty six thousand four hundred and seventy two dollars), by electronic funds transfer pursuant to signed written instructions on Commonwealth of Pennsylvania stationary to be provided to GSK by the Commonwealth promptly after This Agreement is executed by the Commonwealth. This payment, together with the other consideration set forth in This Agreement, is intended to and does fully resolve all claims set forth in the Complaint in the State Lawsuit (including any claim for attorneys fees and litigation costs attributable to the litigation of those claims).

2. GSK agrees that, pursuant to Section III. I of the CIA Addendum, within 35 days after the end of the first full calendar quarter following the Effective Date of This Agreement and continuing until the expiration of the CIA Addendum, GSK will provide certified Pricing Information to the Commonwealth of Pennsylvania Medicaid Program, and to a national commercial drug price reporting service designated by the Commonwealth of Pennsylvania through an Addendum to This Agreement (subject to execution of a confidentiality agreement by such price reporting service), on a confidential basis as if the Commonwealth of Pennsylvania had entered into a Related State Settlement Agreement with GlaxoSmithKline as described in Section III.I of the CIA Addendum. The Commonwealth of Pennsylvania at its discretion shall be permitted to use the Pricing Information to set an amount for reimbursement of

pharmaceuticals for the Pennsylvania Medicaid Program. In accordance with Sections III.I.1 and III.I.2.e. of the CIA Addendum, the Commonwealth of Pennsylvania hereby agrees that the GSK Pricing Information reported to the Pennsylvania Medicaid Program pursuant to those sections of the CIA Addendum, whether received directly from GSK or indirectly through a national drug price reporting service, shall be considered to be confidential commercial or financial information and proprietary trade secrets and shall be afforded the maximum degree of confidentiality permitted by state law (unless otherwise agreed by the Parties hereto, in writing, in a separate agreement due to changed circumstances).

3. The Parties specifically agree that This Agreement resolves, among other things, all of the Parens Patriae/Consumer Restitution and Penalty Claims against the GSK Defendants in the State Lawsuit, and that the Commonwealth of Pennsylvania and its citizens are now entitled to certain settlement payments that are specifically set forth in the MDL No. 1456 GSK Class Settlement Agreement, subject to the specific terms, conditions and required approvals set forth therein, as follows:

> (a) First, pursuant to Paragraphs 3(c) and 6 of the MDL No 1456 GSK Class Settlement Agreement, the Commonwealth of Pennsylvania shall be entitled to payment of approximately $804,000.00 from the Litigating States Escrow Account ("LSEA"); that is, to a payment of 40.2% of the Litigating States' Allocation amount of $2,000,000.00 plus the Commonwealth's share of interest in the LSEA and minus escrow fees and taxes (if any), to be made within One-hundred (100) days of the November 15, 2006 date on which a preliminary approval order of the MDL No. 1456 GSK Class Settlement Agreement was entered by the Court in the MDL No. 1456 Class Litigation. The undersigned counsel for GSK agrees that promptly after the Effective Date of This Agreement he

will provide notice of This Agreement to Lead Class Counsel and the Escrow Agent for the LSEA, as set forth in Paragraph 6(b) of the MDL No. 1456 GSK Class Settlement Agreement, so that the Commonwealth of Pennsylvania will become an "Additional Participating State" thereunder.

(b) Second, a portion of the $70,000,000 MDL No. 1456 GSK Class Settlement shall be set aside in a Consumer Settlement Pool to provide settlement payments to individual consumer class members, including those who are Pennsylvania citizens. The manner in which individual consumer claims against the Consumer Settlement Pool shall be paid is set forth in the MDL No. 1456 GSK Class Settlement Agreement.

(c) Third, pursuant to the MDL No. 1456 GSK Class Settlement Agreement (including in particular Paragraphs 6(d) and 22(b)(vii) b.), the Commonwealth of Pennsylvania shall be entitled to receive an additional payment thereunder provided that (i) there are unclaimed monies in the Consumer Settlement Pool described therein, and (ii) the Commonwealth is awarded such an additional payment by the MDL Mediator following a binding mediation as described therein. In accordance with the provisions of Paragraphs 6(d) and 22(b)(vii) b., only the Participating State Plaintiffs and Additional Participating State as of February 13, 2007 will be entitled to participate in the mediation for any State's share.

4. The Parties agree that under the terms of This Agreement and the MDL No. 1456 GSK Class Settlement Agreement, PEBTF and PACE meet the definition of TPP Class Members set forth in the MDL No. 1456 GSK Class Settlement Agreement, and as such are eligible to file claims for settlement payments from the TPP Settlement Pool established by the MDL No. 1456 GSK Class Settlement Agreement, as set forth more fully in that agreement.

5.	Within three business days following receipt by the Commonwealth of Pennsylvania of the payments set forth in both Paragraphs III. 1 and III. 3 (a) above, the Commonwealth of Pennsylvania will inform the Court in the State Lawsuit that the Parties have reached a Settlement Agreement, and will take all steps necessary to cause the prompt dismissal with prejudice of all claims against GSK in the State Lawsuit.

6.	In consideration of This Agreement, at the time the Commonwealth of Pennsylvania receives the payments set forth in Paragraphs III. 1 and III. 3 (a) above, and subject to the exceptions from release set forth in Paragraph III. 7 below, the Commonwealth of Pennsylvania on behalf of itself, its officers, agents, agencies and departments shall release and forever discharge the GSK Defendants, their predecessors, subsidiaries, joint venture owners, corporate parents and affiliates, successors and assigns, and their current and former directors, officers and employees, from any and all civil or administrative claims for restitution, damages, injunctive relief, civil forfeiture, civil penalties, fines, costs, attorneys' fees and other relief that the Commonwealth of Pennsylvania has or may have relating to the conduct set forth in the Complaint in the State Lawsuit, up to the Effective Date of This Agreement.

7.	Notwithstanding any term of This Agreement, the Commonwealth of Pennsylvania specifically does not herein release the GSK Defendants, their predecessors, subsidiaries, joint venture owners, corporate parents or affiliates, successors or assigns, or their current and former directors, officers, and employees from any and all of the following: (a) any potential criminal, civil or administrative claims arising under the Commonwealth of Pennsylvania revenue codes; (b) any criminal liability; (c) any civil or administrative liability that GSK has or may have under any state statute, regulation or rule not expressly covered by the releases set forth in Paragraphs III.6 and III.8 of This Agreement; (d) except as explicitly stated

in Paragraphs III.6 or III. 8 of This Agreement, any administrative liability, including mandatory exclusion from the Commonwealth of Pennsylvania's Medicaid program; (e) any liability to the Commonwealth of Pennsylvania (or its agencies) for any conduct other than the conduct set forth in the allegations of the State Lawsuit; (f) any claims based upon such obligations as are created by This Agreement, (g) any express or implied warranty claims, claims for product liability, or other claims for defective or deficient products or services, including quality of goods and services; (h) any claims for personal injury or property damage or for other consequential damage; or (i) any claims based on a failure to deliver items or services due, including such claims for breach of contract. Nothing in This Agreement shall be deemed to prohibit the Commonwealth of Pennsylvania from commenting on the MDL No. 1456 GSK Class Settlement or from using documents produced by GSK in the prosecution of the Commonwealth's claims against other parties.

8. In consideration of the obligations of GSK set forth in This Agreement, conditioned upon GSK's payment of the amount set forth in Paragraph III. 1 above, and except as reserved in Paragraph III. 7 above, the Commonwealth of Pennsylvania agrees to release and refrain from instituting, directing or maintaining any administrative claim or any action seeking exclusion from the Commonwealth of Pennsylvania's Medicaid Program against any of the GSK Defendants, their predecessors, subsidiaries, joint venture owners, corporate parents or affiliates, successors or assigns, for the conduct set forth in the allegations of the State Lawsuit. Nothing in This Agreement precludes the Commonwealth of Pennsylvania from taking action against GSK in the event that GSK is excluded by the federal government, or for conduct and practices other than the conduct set forth in the allegations of the State Lawsuit.

9. At the time the release set forth in Paragraph III. 6 above becomes effective as to the GSK Defendants, the GSK Defendants shall fully and finally release the Commonwealth of Pennsylvania, its agencies, employees, servants, and agents from any claims (including attorneys fees, costs, and expenses of every kind and however denominated) which GSK has asserted, could have asserted, or may assert in the future against the Commonwealth of Pennsylvania, its agencies, employees, servants, or agents that are related to or arising from the investigation and prosecution of the conduct set forth in the Complaint in the State Lawsuit, up to the Effective Date of This Agreement.

10. GSK waives and will not assert any defenses it may have to any criminal prosecution or administrative action relating to the conduct set forth in the allegations of the State Lawsuit, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause of the Fifth Amendment of the Constitution or Excessive Fines Clause of the Eighth Amendment of the Constitution, This Agreement bars a remedy sought in such criminal prosecution or administrative action.

11 Nothing in any provision of This Agreement constitutes an agreement by the Commonwealth of Pennsylvania concerning the characterization of any payment for purposes of the state internal revenue laws.

12. This Agreement does not constitute an admission by any person or entity, and shall not be construed as an admission by any person or entity, with respect to any issues of law or fact.

13. GSK represents that This Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

14. The undersigned GSK signatory represents and warrants that he is duly authorized as a result of appropriate corporate action to execute This Agreement. The undersigned Commonwealth of Pennsylvania signatory represents that he/she is signing This Agreement in his/her official capacity and that he/she is authorized to execute This Agreement on behalf of the Commonwealth of Pennsylvania through his/her respective agency and department.

15. This Agreement is governed by the laws of the Commonwealth of Pennsylvania.

16. The Effective Date of This Agreement is the date of signature of the last signatory to This Agreement, which shall not be later than February 12, 2007.

17. This Agreement shall be binding on all successors, transferees, heirs and assigns of the Parties.

18. This Agreement, including the references herein to portions of the MDL No. 1456 GSK Class Settlement Agreement and the CIA Addendum, constitutes the complete agreement between the Parties with regard to the settlement and dismissal of the State Lawsuit. This Agreement may not be amended except by written consent of the Parties.

19. Each Party agrees to perform any further acts and to execute and deliver any further documents reasonably necessary to carry out This Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement.

20. This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that This Agreement is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of This Agreement.

21. Nothing in this agreement shall be construed to be a waiver of the sovereign immunity of the Commonwealth of Pennsylvania.

FOR THE COMMONWEALTH OF PENNSYLVANIA

By. _[signature]_  Dated: 2/12/07
Alexis L. Barbieri
Executive Deputy Attorney General
Commonwealth of Pennsylvania
Office of Attorney General
Public Protection Division
Strawberry Square, 14th Floor
Harrisburg, PA 17120

By. _[signature]_  Dated: 2/12/07
Donald E. Haviland, Esquire
The Haviland Law Firm, LLC
740 South Third Street
Third Floor
Philadelphia, PA 19147

Counsel for the Commonwealth of Pennsylvania

**FOR SMITHKLINE BEECHAM CORPORATION**
**d/b/a GLAXOSMITHKLINE**

By: _____   Dated: _____
Name: Christopher Viehbacher
Position: President, US Pharmaceuticals
SmithKline Beecham Corporation d/b/a GlaxoSmithKline


By: _____   Dated: _____
FREDERICK G. HEROLD
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106

THOMAS H. LEE, II
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

12

**FOR SMITHKLINE BEECHAM CORPORATION**
**d/b/a GLAXOSMITHKLINE**

By: _____   Dated: _____

    Name:
    Position:
    SmithKline Beecham Corporation d/b/a GlaxoSmithKline

By: *[signature]*   Dated: 2/12/07
    FREDERICK G. HEROLD
    Dechert LLP
    1117 California Avenue
    Palo Alto, CA 94304-1106

    THOMAS H. LEE, II
    Dechert LLP
    Cira Centre
    2929 Arch Street
    Philadelphia, PA 19104-2808

    Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

## **ADDENDUM**

### Designation of Reporting Service

1) The Commonwealth of Pennsylvania requests that the Pricing Information referred to in Section III, Paragraph 2 of This Agreement and the sections of the CIA Addendum referenced therein be sent to _____ (a national commercial drug price reporting service).

If during the time period covered by the CIA Addendum (5 years from the effective date thereof) the state changes or supplements its commercial drug price reporting service, the state may notify GSK in writing of said change and the effective date. GSK shall then promptly commence reporting the Pricing Information to the subsequent commercial drug price reporting service in accordance with Sections III.I.1 and III.I.2.e of the CIA Addendum.

GSK contact information is as follows:

| | |
|---|---|
| David B. Brown, (with a copy to Elizabeth J. Hallyburton, Esq.). <br> Director, Government Contracts/Pricing Programs <br> GlaxoSmithKline <br> 5 Moore Drive -- Bide Building <br> Location: B-2156 <br> P.O. Box 13398 <br> Research Triangle Park, <br> North Carolina 27709 <br> Phone: 919-483- 2353 <br> Fax: 919-315-3198 <br> e-mail: david.b.brown@gsk.com | Elizabeth J. Hallyburton, Esq. <br> Assistant General Counsel <br> GlaxoSmithKline <br> 5 Moore Drive -- Bide Building <br> Location: C-4160 <br> P.O. Box 13398 <br> Research Triangle Park, <br> North Carolina 27709 <br> Phone: 919-483-2212 <br> Fax: 704-899-9234 <br> e-mail: beth.j.hallyburton@gsk.com |

### Designation of State Medicaid Contact

2) The Commonwealth of Pennsylvania requests that the Pricing Information referred to in Section III, Paragraph 3 of This Agreement and the sections of the CIA Addendum referenced therein be sent to the Pennsylvania Medicaid program c/o:

_____
Name

_____
Address

_____
Phone/fax/email

13