higher amount than would be the case if the DEFENDANT provided truthful prices. The

Government attempt to limit amounts paid for claims is thus circumvented.

170.   HCFA's description of  the FUL program in its current web site states the

applicable government claims  policy :

> "In 1987, regulations limited the amount which Medicaid could reimburse for
> drugs with available generic drugs under the federal upper limit program.
> These limits are intended to assure that the Federal government acts as a
> prudent buyer of drugs. The concept of the upper limits program is to
> achieve savings by taking advantage of the current market prices. Until the
> passage of the Omnibus Budget Reconciliation Act of 1990 (OBRA '90), the
> Federal Upper Limit (FUL) could be established only if all generic versions
> of a drug product had been classified as therapeutically equivalent (A-rate)
> by the FDA in its publication "Approved Drug Products with Therapeutic
> Equivalence Evaluations" and at least three suppliers were listed in the
> current editions of published national compendia. OBRA '90 expanded that
> criteria and permitted the establishment of a FUL for a drug product if there
> are three (or more) generic versions of the product rated therapeutically
> equivalent (A-rated) regardless of the ratings of other versions (B-rated) and
> at least three suppliers are listed in the current editions of published national
> compendia."

171.   A representative  example  of  the  DEFENDANTS'  efforts  to  deprive  the

Government of the benefit of the Federal Upper Limit involves the drug ███████. ████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

162

CIVIL ACTION NO. 95-1354-CIV-GOLD

172.

173.

163

ABT008-2714

**CIVIL ACTION NO. 95-1354-CIV-GOLD**



174. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████

175. ████████████████████████████████

████████████████████████

176.    The DEFENDANTS' continued exploitation of false claim scheme to impede Government efforts to estimate costs is evidenced by pricing representations made for the generic injectable drug████████ The Brand name for ██████████████ manufactured by ████████████████████████ reported 1996 sales of $529,300,000.00 for ██████. On April 22, 1997 ██████████████████████ patent expired. ██████████ is ████████ drug that is widely prescribed to persons who are suffering with the HIV disease.  Prior to the patent expiration, VAC's wholesale cost for 1 gm of ██████ was $103.67 and its AWP was $113.20 (a difference of 9%).  Defendant ABBOTT was one of the first companies to announce distribution of a generic injectable Acyclovir.  On or about February 19, 1997, Defendant ABBOTT set a true pre distribution price of $70.00 for 1 gm which was approximately 30% less than ██████████████████ brand ██████. However

164

ABBOTT fraudulently and falsely reported to Medical Economics and First Data Bank a Direct Price of $160.00 for 1 gm which caused Medical Economics and First Data Bank to set a false and fraudulent AWP of $190.00 for 1 gm or approximately 70% more than the Brand. Before ABBOTT could begin distribution of its generic injectable Acyclovir, another drug manufacturer announced distribution of a competing generic injectable Acyclovir at an initial price less than ABBOTT's. On or about April 28, 1997, ABBOTT reacted to the market conditions of price competition by lowering its true price to providers from $70.00 to $60.00 for 1 gm. Despite ABBOTT's reduction in prices to providers, ABBOTT continued to publish its original grossly inflated false and fraudulent representations of cost and price. During a telephone conversation between VAC's Bentley and an ABBOTT marketing/sales representative, on or about May 30, 1997, Bentley was informed that ABBOTT was committed to capturing market share by "widening the spread for providers" by lowering the true price while inflating the price represented to Medicare and Medicaid. The following charts contain the specific allegations demonstrating the Acyclovir fraud:

165

ABT008-2716

CIVIL ACTION NO. 95-1354-CIV-GOLD

| BRAND | | | | | |
|---|---|---|---|---|---|
| **COMPANY** | **DRUG** | **NDC** | **RED BOOK AWP** | **VEN-A-CARE COST** | **FLORIDA MEDICAID** |
| ██████ | ████ | ████████ | $ 56.60 | $ 47.20 | $ 50.47083 |
| ████ | ████ | ████████ | $113.20 | $103.67 | $100.94059 |

*VERSUS*

| GENERIC | | | | | | |
|---|---|---|---|---|---|---|
| **COMPANY** | **DRUG** | **NDC** | **RED BOOK "AWP"** | **"DP"** | **VEN-A-CARE COST** | **FLORIDA MEDICAID** |
| Abbott | Acyclovir Sodium 500 mg | 00074-4427-01 | $95.00 | $80.00 | ~~$35.00~~ $30.00 | $ 84.5500 |
| Abbott | Acyclovir Sodium 1,000 mg (1 gm) | 00074-4452-01 | $190.00 | $160.00 | ~~$70.00~~ $60.00 | $169.1000 |

177.   The DEFENDANTS' actions have also, in many instances, deprived the Government of the full benefit of the Medicaid rebate program mandated by the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90").   OBRA 90 was implemented after numerous Congressional hearings. Congress concluded that the Medicaid Program, as the largest single purchaser of prescription drugs in the United States should be entitled to the same discounts that were routinely given by the drug manufacturers to large purchasers (See Skyrocketing Drug Prices: Hearings Before the Special Committee on Aging, United

166

ABT008-2717

States Senate, 101st Congress, 290-297 (1989). As a result, Congress, in the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), established the Medicaid Rebate Program PL-101-508,104 Stat. 1388 (1990) to give the State Medicaid Programs the "benefit of the best price (emphasis added) for which a manufacturer [sold] a prescription drug to any....private purchaser." H.R. Rep. No. 101-881, at 96 (1990). The Rebate Program requires all manufacturers, as a condition to their drugs being paid for (covered) by Medicaid, to enter into a Rebate Agreement with the Secretary of the Department of Health and Human Services and pay a rebate amount to each State on a quarterly basis based on the following formula:

a)    Basic rebate for single source drugs and innovator multiple source drugs (Brand drugs) shall be equal to the product of-

(i) the total number of units

(ii) the difference between the average manufacturer price and the best price with minimum rebate percentages ranging from 12.5% (12/31/1990-09/30/1992) to 15.1% after December 31, 1995.

b)    Basic rebate other drugs (generic drugs) shall be equal to the product of-

(i) the total number of units

(ii) the average manufacturer price

(iii) 10% (before January 1, 1994)

(iv) 11% (after December 31, 1993)

167

ABT008-2718

Best price ("BP") is generally defined as the lowest price (inclusive of cash discounts, free goods volume discounts etc.) available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, etc excluding direct government purchases.

178.   Average manufacturer price ("AMP") is generally defined as the average price paid to the manufacturer during the rebate period by wholesalers for drugs distributed to the retail pharmacy class of trade, after deducting customary prompt pay discounts. Manufacturers report their BP and AMP to HCFA on a quarterly basis. HCFA, in turn, calculates the rebate amount either AMP minus BP (or the 15.1% minimum) for Brand drugs or AMP multiplied by 11% for generic drugs and forwards the figures by NDC number to the States. The States multiply the rebate amount by the number of units that the State paid for during the quarter to determine the rebate amount due and submit the requested amount to the manufacturer. The manufacturers remit this payment on a quarterly basis, withholding any disputed amount.

179.   The DEFENDANTS have each participated in the Medicaid Rebate Program and as such were required to calculate their drugs BP and/or AMP. The DEFENDANTS have additionally calculated other various representations of prices such as AWP, WAC, DP and list prices that are the industry benchmarks used for establishing reimbursements for the Medicare and Medicaid Programs.   The DEFENDANTS reported their representations of prices such as AWP, WAC, DP and list prices to First Data Bank and Red Book with the knowledge that First Data Bank and Red Book were providing the

168

ABT008-2719

DEFENDANTS representations to the State Medicaid Programs and the Medicare Carriers for the purpose of establishing Medicaid and Medicare reimbursements.

180.   WAC is defined as wholesaler acquisition cost.   AMP is defined as the average price paid to the manufacturer by wholesalers for drugs distributed to the retail pharmacy class of trade, after deducting customary prompt pay discounts. Therefore if a manufacturer honestly reports its AMP and WAC they should be very close to, if not the same, amount. However, for Medicaid and Medicare reimbursement purposes the DEFENDANTS have in many instances falsely and fraudulently represented inflated (or caused to be inflated) AWP's and WAC's that are in some cases more than 500% over their AMP's, thus causing the States' Medicaid Programs after rebate net cost to be many times greater then the DEFENDANTS' Best Price. The false pricing scheme by the DEFENDANTS has fraudulently thwarted the Congressional intent of providing the States with the benefit of the DEFENDANTS' best prices. The following Subparagraphs a through d provide examples of how the false price representations of DEFENDANTS ABBOTT, ████████████████████████ have caused Medicaid reimbursement to be based on WAC's that substantially exceed AMP's used for Medicaid rebate purposes. As a result, the State's Medicaid programs have been deprived of the substantial fiscal benefits intended and required by the Medicaid Rebate Statute:

169

ABT008-2720

CIVIL ACTION NO. 95-1354-CIV-GOLD

**a.) Abbott's false prices affect Medicaid Rebate calculation.**



**EXAMPLE 1 ABBOTT'S FALSE AND FRAUDULENT STATEMENTS**
**Abbott's Vancomycin HCL**
NDC # 00074-6533-01, 1998 "AWP" = $69.31 1998 "WAC" = $60.24
**1998 REBATE AMOUNT = $0.66 ea.**
In this example, the States reimburse at the false and fraudulent prices represented by Abbott,
either through AWP minus a percentage or WAC plus a percentage.

**Reimbursement**          **Rebate**          **Net Cost to State**

*States Reimburse*
AWP - 10%    $63.57 = Average
or           of AWP-10%= $62.38
WAC + 7%     and WAC +7%= $64.77

*Abbott Rebates*
AMP times 11% = $0.66

*Net Cost = $62.91*
Reimbursement Minus Rebate = $62.91
$63.57- $0.66= $62.91



**EXAMPLE 2          IF STATES USED TRUE PRICES**
**Abbott's Vancomycin HCL**
NDC # 00074-6533-01, 1998 WHOLESALE PRICE = $7.40 (Florida Infusion)
**1998 REBATE AMOUNT =$0.66 ea.**
In this example, the States reimburse at a truthful estimated acquisition cost as illustrated by
Florida Infusion prices, pursuant to 42 CFR 447.331.

**Reimbursement**          **Rebate**          **Net Cost to State**

*States Reimburse*
at True Provider Acquisition Cost
Pursuant to 42 CFR 447.331

*Abbott Rebates*
AMP Times 11% = $0.66

*Net Cost =$6.74*
Reimbursement Minus Rebate = $6.74
$7.40-$0.66 = $6.74

170

ABT008-2721

CIVIL ACTION No. 95-1354-CIV-GOLD

# PAGES 171 THROUGH 173

# HAVE BEEN COMPLETELY REDACTED

ABT008-2722

181.   Drug manufacturers who wish to sell their products to the Federal Government healthcare providers such as the Department of Defense Hospitals  and the Veterans Administration, are required by law to sell at or below their lowest prices to their best commercial customers. The law is implemented through the Federal Supply Schedule ("FSS"). The DEFENDANTS' representations about their lowest prices are included on the FSS for each of the drugs.

182.   The DEFENDANTS' prices to some customers, after reduction for concealed financial inducements, resulted in true prices that were below the prices reported for inclusion on the FSS  resulting in a false FSS price. This caused the Government to pay FSS based claims at inflated amounts. Accordingly, the DEFENDANTS who reported false FSS prices are liable for additional false claims damages in the amount by which their FSS price representations exceeded their true prices .

183.   For many of the specified drugs, the DEFENDANTS' false representations of price and cost caused the Medicare Program to pay and approve claims at such exorbitant amounts that the 20% co-payment paid by the patient exceeded the true price of the drugs. A representative example is alleged in Table No. 5 below lists some of the specified drugs, the amount approved in 1996 by Florida Medicare, the 20% co-payment paid by the patient, and the true price paid by the Relator:

174

## TABLE NO. 5

### DRUGS WHERE THE MEDICARE PROGRAM'S
### 20% CO-PAYMENT
### EXCEEDS THE TOTAL PRICE OF THE DRUG

| Drug | HCPCS Code | 1996 Florida Medicare Allowable | 20% Co-Payment | 1996 Relator's Cost |
|------|------------|--------------------------------|----------------|---------------------|
| Leucovorin 50 mg | J0640 | $ 21.53 | $ 4.36 | $ 1.89 |
| ██████ | ████ | $ 3.05 | $ 0.61 | $ 0.22 |
| ██████ | ████ | $ 8.56 | $ 1.72 | $ 0.79 |
| Sodium Chloride 0.9% 1000 ml | J7030 | $ 11.06 | $ 2.21 | $ 0.95 |
| Sodium Chloride 0.9% 500 ml | J7040 | $ 10.14 | $ 2.03 | $ 0.79 |
| 5% Dextrose/ Sodium Chloride 0.9% 500 ml | J7042 | $ 10.24 | $ 2.05 | $ 0.78 |
| Sodium Chloride 0.9% 250 ml | J7050 | $ 9.43 | $ 1.89 | $ 0.78 |
| 5% Dextrose in Water 500 ml | J7060 | $ 9.98 | $ 1.99 | $ 0.75 |
| 5% Dextrose in Water 1000 ml | J7070 | $ 11.23 | $ 2.25 | $ 0.95 |
| Lactated Ringers 1000 ml | J7120 | $ 12.43 | $ 2.48 | $ 1.02 |
| ██████ | ████ | $ 1.37 | $ 0.27 | $ 0.26 |
| ██████ | ████ | $ 1.23 | $ 0.25 | $ 0.10 |

175

ABT008-2724

CIVIL ACTION NO. 95-1354-CIV-GOLD

| Drug | HCPCS Code | 1996 Florida Medicare Allowable | 20% Co-Payment | 1996 Relator's Cost |
|---|---|---|---|---|
| ███████ | ███ | $   1.23 | $ 0 .25 | $ 0.10 |
| ███████ | ███ | $ 45.08 | $ 9.02 | $ 9.00 |
| ███████ | ███ | $225.40 | $45.08 | $45.00 |
| ███████ | ███ | $ 51.43 | $10.29 | $10.00 |
| ███████ | ███ | $102.89 | $20.58 | $20.00 |
| Etoposide 10 mg | J9181 | $ 14.20 | $ 2.84 | $ 1.65 |
| Etoposide 100 mg | J9182 | $141.97 | $28.35 | $16.50 |
| ███████ | ███ | $ 40.04 | $ 8.01 | $ 6.85 |
| ███████ | ███ | $ 31.75 | $ 6.35 | $ 3.75 |
| ███████ | ███ | $ 38.25 | $ 7.65 | $ 7.27 |

184.   In many cases the DEFENDANTS' false claims scheme have caused the Government to pay claims for generic equivalents of the specified dugs in amounts greater than the band name version of the drug and the DEFENDANTS have thus deprived the Government of the expected savings arising from utilization of generics. The following Table 6 contains some examples of this significant impact of the DEFENDANTS' false claim scheme:

176

CIVIL ACTION NO. 95-1354-CIV-GOLD

## TABLE NO. 6

### THE MEDICARE AND MEDICAID PROGRAMS
### DUPED INTO PAYING AS MUCH OR MORE
### FOR GENERIC DRUGS THAN THEIR EQUIVALENT BRAND

ABT008-2726

CIVIL ACTION Nᴏ. 95-1354-CIV-GOLD



| DRUG: VANCOMYCIN, HCPCS J3370 | | | | |
|---|---|---|---|---|
| BRAND:   VANCOCIN | | | | |
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| ███ | 500 mg | ██████████ | $7.80 | $6.50 |
| ███ | 1 gm | ██████████ | $15.61 | $14.13 |

| GENERIC:   VANCOMYCIN | | | | |
|---|---|---|---|---|
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| Abbott | 500 mg | 00074-4332-01 | $31.44 | $3.51 |
| Abbott | 1 gm | 00074-6533-01 | $62.86 | $7.01 |

178

CIVIL ACTION No. 95-1354-CIV-GOLD

| DRUG: PENTAMIDINE | | | | |
|---|---|---|---|---|
| BRAND: PENTAM 300 | | | | |
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| ▮▮▮▮ | 300 mg | ▮▮▮▮▮▮ | $98.75 | $49.00 |

| GENERIC: PENTAMIDINE | | | | |
|---|---|---|---|---|
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| Abbott | 300 mg | 00074-4548-01 | $113.54 | $43.00 |

| DRUG: TOBRAMYCIN SULFATE, HCPCS J3260 | | | | |
|---|---|---|---|---|
| BRAND: NEBCIN | | | | |
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| ▮▮▮ | 40 mg/ml 80 mg | ▮▮▮▮▮▮ | $7.28 | $6.07 |

| GENERIC: TOBRAMYCIN SULFATE | | | | |
|---|---|---|---|---|
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| Abbott | 40 mg/ml 80 mg | 00074-3578-01 | $9.83 | $3.63 |

179

CIVIL ACTION NO. 95-1354-CIV-GOLD

| DRUG: AMIKACIN SULFATE | | | | |
|---|---|---|---|---|
| BRAND: AMIKIN | | | | |
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| ███████ | 250 mg/ml 2 ml | ████████ | $46.99 | $13.25 |

| GENERIC: AMIKACIN SULFATE | | | | |
|---|---|---|---|---|
| COMPANY | SIZE | NDC # | AWP 1996 Red Book | RELATOR'S COST |
| Abbott | 250 mg/ml 2 ml | 00074-1956-01 | $99.25 | $12.00 |
| ██████ | 500 mg/ml 2 ml | ████████ | $63.75 | $14.00 |

185.    The DEFENDANTS' false claims scheme has also deprived the Government of the benefits of normal price competition causing it in some cases to pay thousands of percent above the price that would be set by normal market forces, but for the DEFENDANTS' false price and cost representations.

186.    The Government and its health program beneficiaries are damaged when the DEFENDANTS create a financial inducement for providers to order patented  drugs by continually increasing the spread over time. This is the case with DEFENDANTS' ████ ████████████ as exhibited by the following Table No. 7.

180

CIVIL ACTION NO. 95-1354-CIV-GOLD

**TABLE NO. 7**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ▬ | ▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ |
| ▬ | ▬ | ▬ | ▬ | | ▬ | ▬ | ▬ |
| ▬ | ▬ | ▬▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| ▬ | ▬ | ▬▬ | ▬ | | ▬ | ▬ | ▬ |
| ▬ | ▬ | ▬▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| ▬ | ▬ | ▬▬ | ▬ | | ▬ | ▬ | ▬ |

187.   The DEFENDANTS also deprive the Government of the benefits of price competition when generic versions of a drug become available and compete with the "brand". ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

181

ABT008-2730

**TABLE NO. 8**

| ████████ | ████ | ████ | ███ | ████ | ███████ |
|---|---|---|---|---|---|
| | | | | | ███ |
| ████ | ████ | ██████ | ██ | ████ | ████ |
| ████ | ████ | ██████ | ████ | ████ | ████ |
| ████ | ████ | ██████ | ██ | ████ | ████ |
| ████ | ████ | ██████ | ████ | ████ | ████ |
| ████ | ████ | ██████ | ████ | ████ | ████ |
| ████ | ████ | ██████ | ████ | ████ | ████ |

188.   The actions of the DEFENDANTS alleged herein result in grossly excessive amounts being paid to their customers by the Medicare and States' Medicaid Programs for claims submitted for the specified drugs. The exorbitant payments induce physicians, clinics and specialty pharmacies to increase utilization of the specified drugs  The financial inducement was so great for many of the specified pharmaceuticals at issue in this Third Amended Complaint that the profits derived from the provision of the specified drugs greatly exceeded the physicians' professional fees and provided what can only be characterized as "windfall profits."   In many markets, including the Relator's, specialty pharmacies and clinics are often unable to compete unless they enter financial arrangements with prescribing physicians whereby the grossly excessive amounts paid by the Medicare and States' Medicaid Programs are split with the prescribing physicians.  Over the last six (6) years, the Relator's business has all but been extinguished because of the Relator's refusal

182

ABT008-2731

to benefit from the false and fraudulent claims schemes specified herein. The Relator has been unable to effectively compete with those physicians, clinics and specialty pharmacies who benefit from the DEFENDANTS' false claims scheme because the financial inducement to the prescribing physicians often exceeds their compensation from the practice of medicine.

### SECTION NO. 8

### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### ABBOTT

189.   At various times from on or after June 23, 1989 and continuing through the present date, Defendant ABBOTT knowingly caused the Medicare program and the States' Medicaid programs throughout the United States and its territories to pay false or fraudulent claims for drugs specified in this Section and further made or used false or fraudulent records and/or statements to get such claims paid or approved. As a result of the said actions of Defendant ABBOTT and those persons and entities acting directly or indirectly in concert with Defendant ABBOTT the Medicare and States' Medicaid Programs paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section. The acts committed by Defendant ABBOTT that caused the Medicare and States' Medicaid Programs to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about prices and costs of the drugs specified in this Section which Defendant ABBOTT knew or should have known would be relied upon by the Medicare and States' Medicaid Programs

183

in paying or approving claims for the drugs specified in this Section.   Each of said representations were material and were relied upon by the Medicare and States' Medicaid Programs in paying or approving claims for the drugs specified in this Section.

190.   Defendant ABBOTT knowingly caused its false or fraudulent price and cost representations to be published in the years specified in this Section in the Red Book, the Blue Book  and the First Data Bank's Automated Services and further made or used false records or statements regarding its prices and costs of the drugs specified in this Section and submitted same to the Medicare and States' Medicaid Programs continuously throughout the years specified in this Section. For the purposes of specificity and particularity, the said false price and cost representations as they were reflected in the Red Book and Blue Book have been organized into a chart form for each drug in question and for each NDC Number assigned to each drug in question. The information provided under the columns for Defendant's Published Price, and Red Book and Blue Book "AWP" and "DP" reflects the false price and cost representations made by the Defendant ABBOTT. The information under the Relator's Cost columns reflects the true price that Defendant ABBOTT charged the Relator for the drug or caused another entity to charge the Relator for the drug.  As a very small infusion pharmacy, the Relator does not always receive the lowest prices available to volume purchasers.  Accordingly, a comparison of the Relator's costs with the price and cost representations made by the Defendant ABBOTT establishes the falsity of ABBOTT's representations for the drugs and years specified as follows:

184

ABT008-2733

CIVIL ACTION NO. 95-1354-CIV-GOLD

## a. DRUG: SODIUM CHLORIDE 0.9%
## 250 ML

MEDICAID                                                                    MEDICARE
NDC NO.: 00074-7983-02                                              HCPCS J7050

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | BLUE BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|------|------|
| | | "AWP" | "DP" | "AWP" | "DP" | | |
| 1993 | $7.59 | $8.59 | | $8.59 | $7.23 | $1.50 | $1.07 |
| 1994 | $7.82 | $9.01 | | $9.01 | $7.59 | $1.33 | $0.95 |
| 1995 | $8.05 | $9.29 | | $9.29 | $7.82 | $1.33 | $0.95 |
| 1996 | | $9.56 | | $9.56 | $8.05 | $1.33 | $0.95 |
| 1997 | | $10.03 | | | | $1.33 | $0.95 |

Defendant, ABBOTT caused the payment or approval of false or fraudulent claims during the years specified in the above chart by the Medicare and/or States' Medicaid Programs for the following additional size(s) of Sodium Chloride:

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|------|------|------|
| 50 ml | 00074-7101-13 | ------- |
| 100 ml | 00074-7101-23 | ------- |
| 500 ml | 00074-7983-03 | J7040 |
| 1,000 ml | 00074-7983-09 | J7030 |

185

ABT008-2734

CIVIL ACTION NO. 95-1354-CIV-GOLD

## b.  DRUG: 5% DEXTROSE IN WATER
## 500 ML

MEDICAID

NDC NO.: 00074-7922-03

MEDICARE

HCPCS J7060

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | BLUE BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|------|------|
| | | "AWP" | "DP" | "AWP" | "DP" | | |
| 1993 | $7.71 | $8.72 | | $8.72 | $7.34 | $1.80 | $0.97 |
| 1994 | $7.94 | $9.16 | | $9.16 | $7.71 | $1.50 | $0.96 |
| 1995 | $8.18 | $9.43 | | $9.43 | $7.94 | $1.50 | $0.96 |
| 1996 | | $9.71 | | $9.71 | $8.18 | $1.50 | $0.96 |
| 1997 | | $10.20 | | | | $1.50 | $0.96 |

Defendant, ABBOTT caused the payment or approval of false or fraudulent claims during the years specified in the above chart by the Medicare and/or States' Medicaid Programs for the following additional size(s) of 5% Dextrose in Water:

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|------|------|------|
| 50 ml | 00074-7100-13 | --------- |
| 100 ml | 00074-7100-23 | -------- |
| 250 ml | 00074-7100-02 | -------- |
| 1,000 ml | 00074-7922-09 | J7070 |

186

ABT008-2735

CIVIL ACTION NO. 95-1354-CIV-GOLD

### c.  DRUG: DEXTROSE 5% WITH SODIUM CHLORIDE 0.9%
### 500 ML

MEDICAID                                                         MEDICARE
NDC NO.: 00074-7941-03                             HCPCS J7042

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK "AWP" | "DP" | BLUE BOOK "AWP" | "DP" | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|------|------|
| 1993 | $8.28 | $9.37 | | $9.37 | $7.89 | $1.15 | $1.04 |
| 1994 | $8.53 | $9.83 | | $9.83 | $8.28 | $1.15 | $1.03 |
| 1995 | $8.79 | $10.13 | | $10.13 | $8.53 | $1.15 | $1.03 |
| 1996 | | $10.44 | | $10.44 | $8.79 | $1.15 | $1.03 |
| 1997 | | $10.96 | | | | $1.15 | $1.03 |

Defendant, ABBOTT caused the payment or approval of false or fraudulent claims during the years specified in the above chart by the Medicare and/or States' Medicaid Programs for the following additional size(s) of Dextrose 5% with Sodium Chloride 0.9%:

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|------|------|------|
| 250 ml | 00074-7941-02 | ------- |
| 1,000 ml | 00074-7941-09 | ------ |

### d.  DRUG: RINGERS LACTATE
### 1,000 ML

MEDICAID                                                         MEDICARE
NDC NO.: 00074-7953-09                             HCPCS J7120

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK "AWP" | "DP" | BLUE BOOK "AWP" | "DP" | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|------|------|
| 1993 | $10.30 | | | $11.64 | $9.81 | $1.36 | $1.30 |
| 1994 | $10.61 | $12.23 | | $12.23 | $10.30 | $1.36 | $1.14 |
| 1995 | $10.93 | $12.60 | | $12.59 | $10.61 | $1.36 | $1.14 |
| 1996 | | $12.98 | | $12.97 | $10.93 | $1.36 | $1.14 |
| 1997 | | $13.63 | | | | $1.36 | $1.14 |

187

ABT008-2736

CIVIL ACTION Nᴏ. 95-1354-CIV-GOLD

Defendant, ABBOTT caused the payment or approval of false or fraudulent claims during the years specified in the above chart by the Medicare and/or States' Medicaid Programs for the following additional size(s) of Ringers Lactate:

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|------|---------------|----------------|
| 250 ml | 00074-7953-02 | ------ |
| 500 ml | 00074-7953-03 | ------ |

## e. DRUG: VANCOMYCIN HCL
## 500 MG

MEDICAID                                                                MEDICARE
NDC NO.: 00074-4332-01                                          HCPCS J3370

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK "AWP" | RED BOOK "DP" | BLUE BOOK "AWP" | BLUE BOOK "DP" | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|------|------|
| 1993 | $24.72 | $27.95 | | $27.95 | $23.54 | | $3.76 |
| 1994 | $25.46 | $29.35 | | $29.36 | $24.72 | | $3.51 |
| 1995 | $26.48 | $30.23 | | $29.36 | $24.72 | $4.20 | $3.51 |
| 1996 | | $31.44 | | | | $3.95 | $3.51 |
| 1997 | | | | | | $3.75 | $3.51 |

Defendant, ABBOTT caused the payment or approval of false or fraudulent claims during the years specified in the above chart by the Medicare and/or States' Medicaid Programs for the following additional size(s) of Vancomycin HCL:

188

ABT008-2737

CIVIL ACTION NO. 95-1354-CIV-GOLD

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|---|---|---|
| 500 mg Advantage | 00074-6535-01 | ------- |
| 1 gm | 00074-6533-01 | -------- |
| 5.0 gm | 00074-6509-01 | ------- |

## f. DRUG: TOBRAMYCIN SULFATE
## 80 MG

MEDICAID                                                                          MEDICARE
NDC NO.:00074-3578-01                                              HCPCS J3260

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | BLUE BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|---|---|---|---|---|---|---|---|
| | | "AWP" | "DP" | "AWP" | "DP" | | |
| 1993 | | $8.74 | | $8.74 | $7.36 | $4.92 | |
| 1994 | | $9.18 | | $9.18 | $7.73 | $4.92 | $3.63 |
| 1995 | | $9.45 | | $9.45 | $7.96 | $4.92 | $3.63 |
| 1996 | | $9.83 | | $9.83 | $8.28 | $4.92 | $3.63 |
| 1997 | | $10.32 | | | | $4.92 | $3.63 |

Defendant, ABBOTT caused the payment or approval of false or fraudulent claims during the years specified in the above chart by the Medicare and/or States' Medicaid Programs for the following additional size(s) of Tobramycin Sulfate:

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|---|---|---|
| 20 mg | 00074-3577-01 | -------- |
| 60 mg | 00074-3582-01 | -------- |
| 60 mg | 00074-3469-13 | -------- |
| 60 mg | 00074-3254-03 | -------- |
| 80 mg | 00074-3255-03 | -------- |

189

ABT008-2738

CIVIL ACTION NO. 95-1354-CIV-GOLD

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|------|---------------|----------------|
| 80 mg | 00074-3470-23 | -------- |
| 80 mg | 00074-3583-01 | -------- |
| 2,000 mg | 00074-3590-02 | -------- |

## g.  DRUG: PENTAMIDINE ISETHIONATE
### 300 MG

MEDICAID                                                                    MEDICARE
NDC NO.: 00074-4548-01                                                      HCPCS

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | BLUE BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|------|------|
| | | "AWP" | "DP" | "AWP" | "DP" | | |
| 1993 | $89.25 | $85.00 | | $100.94 | $85.00 | $75.00 | |
| 1994 | $91.93 | $105.98 | | $105.98 | $89.25 | | |
| 1995 | $95.61 | $109.17 | | $109.17 | $91.93 | $59.00 | $43.00 |
| 1996 | | $113.54 | | $113.54 | $95.61 | | $43.00 |
| 1997 | | $119.21 | | | | | |

## h.  DRUG: CLINDAMYCIN PHOSPHATE
### 900 MG

MEDICAID                                                                    MEDICARE
NDC NO.: 00074-4052-01

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | BLUE BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|------|------|
| | | "AWP" | "DP" | "AWP" | "DP" | | |
| 1993 | $20.62 | $23.32 | | $23.32 | $19.64 | $3.25 | $7.25 |
| 1994 | $21.24 | $24.49 | | $24.49 | $20.62 | $3.25 | $3.20 |
| 1995 | $22.09 | $25.22 | | $25.22 | $21.24 | $3.25 | $3.20 |
| 1996 | | $26.23 | | $26.23 | $22.09 | $3.25 | $3.20 |
| 1997 | | $27.54 | | | | $3.25 | $3.20 |

ABT008-2739

CIVIL ACTION NO. 95-1354-CIV-GOLD

Defendant, ABBOTT caused the payment or approval of false or fraudulent claims during the years specified in the above chart by the Medicare and/or States' Medicaid Programs for the following additional size(s) of Clindamycin Phosphate:

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|------|---------------|----------------|
| 300 mg | 00074-4053-03 | -------- |
| 300 mg | 00074-4050-01 | -------- |
| 600 mg | 00074-4054-03 | ------- |
| 600 mg | 00074-4051-01 | ------- |
| 9,000 mg | 00074-4197-01 | ------- |

As a direct and proximate result of the actions of the Defendant ABBOTT alleged herein, the United States has sustained damages recoverable under the False Claims Act, together with triple damages, penalties, attorneys' fees and costs.

## SECTION NO. 9

### THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT ███

191.     ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

191

ABT008-2740

CIVIL ACTION NO. 95-1354-CIV-GOLD

# PAGES 192 THROUGH 298

# HAVE BEEN COMPLETELY REDACTED

# WHICH INCLUDES THE END OF

# PARAGRAPH 191 THROUGH

# PARAGRAPH 238

192

ABT008-2741

CIVIL ACTION NO. 95-1354-CIV-GOLD

| SIZE | MEDICAID NDC# | MEDICARE HCPCS |
|------|---------------|----------------|
| ███ | █████ | ███ |
| ███ | █████ | ███ |
| ███ | █████ | ███ |
| ███ | █████ | ███ |
| █████ | █████ | ███ |
| ███ | █████ | ███ |
| ███ | █████ | ███ |
| ███ | █████ | ███ |
| ███ | █████ | ███ |
| ███ | █████ | ███ |
| ███ | █████ | ███ |

As a direct and proximate result of the actions of the Defendant ███ alleged herein, the United States has sustained damages recoverable under the False Claims Act, together with triple damages, penalties, attorneys' fees and costs.

## COUNT I

### FALSE CLAIMS ACT;
### CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS

239.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants:  ABBOTT  LABORATORIES,  INC.;  ███████

299

ABT008-2742

CIVIL ACTION No. 95-1354-CIV-GOLD

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████, under the False

Claims Act, **31 U.S.C. §§3729-3732.**

240.   Relator realleges and incorporates by reference paragraphs 1 through 238 as if fully set forth herein and further alleges as follows:

241.   The DEFENDANTS from a date on or before June 23, 1989 to the present date, knowingly [as defined in 31 USC, §3729(b)] caused to be presented to officers or employees of the UNITED STATES GOVERNMENT and STATE GOVERNMENTS false or fraudulent claims [as explained in **United States v. Neifert-White, 390 US 228, 232-233 (1968)**] for payment or approval, in that the DEFENDANTS caused to be presented to officers or employees of the UNITED STATES GOVERNMENT and STATE GOVERNMENTS false or fraudulent price and cost information for the drugs specified

300

CIVIL ACTION NO. 95-1354-CIV-GOLD

herein and caused the UNITED STATES and STATE GOVERNMENTS to pay out sums

of money to the providers and suppliers of the DEFENDANTS' specified drugs, grossly in

excess of the amounts permitted by law, resulting in great financial loss to the UNITED

STATES and STATE GOVERNMENTS.

242.    Because of the DEFENDANT PHARMACEUTICAL MANUFACTURERS'

conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess

of One Billion Dollars ($1,000,000,000.00), all in violation of **31 U.S.C. §3729(a)(1)**

## COUNT II

**FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT
TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT
CLAIM PAID OR APPROVED BY THE GOVERNMENT**

243.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-

A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the

Defendants:  ABBOTT  LABORATORIES,  INC.; ███████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

301

ABT008-2744

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████, under the **False Claims Act, 31 U.S.C. §§3729-3732**.

244.   Relator realleges and incorporates by reference paragraphs 1 through 238 as if fully set forth herein and further alleges as follows:

245.   The DEFENDANTS, from a date on or before June 23, 1989 to the present date, knowingly [as defined in **§3729(b)**] caused false records or statements to be made or used to get false or fraudulent claims [as explained in **United States v. Neifert-White, 390 US 228, 232-233 (1968)**] to be paid or approved by the GOVERNMENT, in that the DEFENDANTS, caused false records or statements of prices and costs of the DEFENDANTS' drugs specified herein to be used by the GOVERNMENT to pay or approve claims presented by the providers and suppliers of the DEFENDANTS' specified drugs, which claims were grossly in excess of the amounts permitted by law, resulting in great financial loss to the UNITED STATES and STATE GOVERNMENTS.

246.   Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of One Billion Dollars ($1,000,000,000.00), all in violation of **31 U.S.C. §3729(a)(2)**.

302

CIVIL ACTION NO. 95-1354-CIV-GOLD

## COUNT III

### FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR STATEMENTS TO BE USED TO CONCEAL AN OBLIGATION TO PAY MONEY TO THE GOVERNMENT

247.   This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants:  ABBOTT  LABORATORIES,  INC.; ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████, under the **False Claims Act, 31 U.S.C. §§3729-3732.**

248.   Relator realleges and incorporates by reference paragraphs 1 through 238 as if fully set forth herein and further alleges as follows:

303

249.    The DEFENDANTS, from a date on or before June 23, 1989 to the present date, knowingly [as defined in **§3729(b)**] caused false records or statements to be made or used to conceal obligations to pay money to the GOVERNMENT, in that: the DEFENDANTS knew that the UNITED STATES' Medicare Program and the States' Medicaid Programs were using the DEFENDANTS' false price and cost representations for purposes of paying or approving claims of the providers and suppliers of the DEFENDANTS' specified drugs; the DEFENDANTS knew that sums of money paid by the UNITED STATES and States' Governments to the providers and suppliers of the DEFENDANTS' specified drugs were grossly in excess of the amounts permitted by law; the DEFENDANTS knew it was the obligation of the UNITED STATES Medicare Part B carriers and State Governments to recoup governments' funds paid in excess of the amounts permitted by law; the DEFENDANTS, nevertheless, continued to cause the using and making of false records or statements of prices and costs for the specified drugs that were grossly in excess of the reasonable amounts permitted by law; and the DEFENDANTS thus concealed from the UNITED STATES Medicare Part B carriers and State Governments an obligation of the providers and suppliers of the DEFENDANTS' specified drugs  to pay recoupment monies to the UNITED STATES and State Governments, resulting in great financial loss to the UNITED STATES and State Governments.

304

CIVIL ACTION NO. 95-1354-CIV-GOLD

250.    Because of the DEFENDANTS' conduct as set forth in this Count, the

UNITED STATES suffered actual damages in excess of One Billion Dollars

($1,000,000,000.00), all in violation of **31 U.S.C. §3729(a)(7)**.

## COUNT IV

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF
### FALSE OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION

251.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-

A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the

Defendants:    ABBOTT LABORATORIES, INC.; ███████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████, under the **False Claims Act, 31 U.S.C. §§3729-3732.**

305

252. Relator realleges and incorporates by reference paragraphs 1 through 238 as if fully set forth herein and further alleges as follows:

253. The DEFENDANTS, from on or about June 23, 1989 to the present date, knew that the prices charged to their customers for the specified drugs were significantly reduced in amount from the prices and costs represented by the DEFENDANTS and upon which the DEFENDANTS knew Medicare and Medicaid claims would be approved and paid. Accordingly, the DEFENDANTS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from the Medicare and/or States' Medicaid Programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which the DEFENDANTS knew that payment would be made, in whole or in part, by the Medicare and States' Medicaid Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2.

254. The DEFENDANTS knew that the Medicare and States' Medicaid Programs would not pay or approve claims for the specified drugs if it were disclosed to the Medicare and States' Medicaid Programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

255. The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to the Medicare and States' Medicaid Programs, would not and did not

306

CIVIL ACTION No. 95-1354-CIV-GOLD

disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

256. The DEFENDANTS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2), in causing the omission of material information from the claims, and in causing the failure to properly disclose and appropriately reflect the remuneration in the claims, caused the claims for the specified drugs to be false and fraudulent claims and caused the claims to be presented to the Medicare and States' Medicaid Programs for payment and approval in violation of 31 U.S.C §3729(a)(1).

257. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of One Billion Dollars ($1,000,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

## COUNT V

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT; ILLEGAL REMUNERATION

258. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC.; ███████████████

███████████████████████████████

███████████████████████████████

307

ABT008-2750

CIVIL ACTION NO. 95-1354-CIV-GOLD

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████, under the **False**

**Claims Act, 31 U.S.C. §§3729-3732**.

259.   Relator realleges and incorporates by reference paragraphs 1 through 238 as if fully set forth herein and further alleges as follows:

260.   The DEFENDANTS, from on or before June 23, 1989 to the present date, knew that the prices charged to their customers for the specified drugs were significantly reduced in amount from the prices and costs represented by the DEFENDANTS and upon which the DEFENDANTS knew Medicare and Medicaid claims would be approved and paid.  Accordingly, the DEFENDANTS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind,  remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from the Medicare and/or States' Medicaid Programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which

308

the DEFENDANTS knew that payment would be made, in whole or in part, by the Medicare and States' Medicaid Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2.

261.   The DEFENDANTS knew that the Medicare and States' Medicaid Programs would not pay or approve claims for the specified drugs if it were disclosed to the Medicare and States' Medicaid Programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

262.   The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to the Medicare and States' Medicaid Programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

263.   The DEFENDANTS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)2, in causing the omission of material information from the claims, and in causing the failure to properly disclose and appropriately reflect the remuneration in the claims, caused the claims for the specified drugs to the false records or statements that were made and used to get a false or fraudulent claim paid or approved by the Government.   The DEFENDANTS' actions herein caused said false records or statements to be made and used as prohibited by 31 U.S.C. §3729(a)(2).

ABT008-2752

CIVIL ACTION NO. 95-1354-CIV-GOLD

264.   Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of One Billion Dollars ($1,000,000,000.00) all in violation of 31 U.S.C. §3729(a)(2).

## COUNT VI

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS; PROHIBITED REFERRALS, CLAIMS AND COMPENSATION ARRANGEMENTS

265.   This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTS: ABBOTT LABORATORIES, INC.; ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████, under the **False Claims Act, 31 U.S.C. §§3729-3732.**

310

ABT008-2753

CIVIL ACTION Nu. 95-1354-CIV-GOLD

266.   Relator realleges and incorporates by reference paragraphs 1 through 238 as if fully set forth herein and further alleges as follows:

267.   The DEFENDANTS, from on or before January 1, 1995 to the present date, knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services [outpatient prescription drugs] furnished pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS had financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by the Medicare and/or States' Medicaid Programs.   Such prohibited referrals, claims, bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C §2.

268.   The DEFENDANTS knew that the Medicare and/or States' Medicaid Programs would not pay or approve claims for the outpatient prescription drugs to the Medicare and/or States' Medicaid Programs that said claims were for amounts that included claims or bills prohibited by 42 U.S.C.  §1395nn(a)(1)(B).

269.   The DEFENDANTS knowingly presented or caused their referring physicians, physician groups and outpatient clinics to present claims or bills for the DEFENDANTS' outpatient prescription drugs to the Medicare and/or States' Medicaid Programs for payment or approval that were false or fraudulent.

270.   The DEFENDANTS' knowing actions in having compensation arrangements for its referring physicians, physician groups and outpatient clinics prohibited by 42 U.S.C. §1395nn(a)(1)(B) and in  presenting  or causing the presentment of prohibited claims in

311

CIVIL ACTION NO. 95-1354-CIV-GOLD

violation of 42 U.S.C. §1395nn(a)(1)(B) for payment or approval caused the claims for the outpatient prescription drugs presented to the Medicare and States' Medicaid Programs to be false or fraudulent claims in violation of 31 U.S.C §3729(a)(1).

271.   Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of One Billion Dollars ($1,000,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

**COUNT VII**

**FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
STATEMENT TO BE MADE OR USED TO GET
A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE
GOVERNMENT; PROHIBITED REFERRALS,
CLAIMS AND COMPENSATION ARRANGEMENTS**

272.   This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTS: ABBOTT LABORATORIES, INC.; ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

312

ABT008-2755

CIVIL ACTION NO. 95-1354-CIV-GOLD

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████, under the **False Claims Act, 31 U.S.C. §§3729-3732**.

273.    Relator realleges and incorporates by reference paragraphs 1 through 238 as if fully set forth herein and further alleges as follows:

274.    The DEFENDANTS, from on or before January 1, 1995 to the present date, knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services [outpatient prescription drugs] furnished pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS had financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by the Medicare and/or States' Programs.  Such prohibited referrals, claims, bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C §2.

275.    The DEFENDANTS knew that the Medicare and/or States' Medicaid Programs would not pay or approve claims for the outpatient prescription drugs if it were disclosed to the Medicare and/or States' Medicaid Programs that said claims were for amounts that included claims or bills prohibited by 42 U.S.C. §1395nn(a)(1)(B).

276.    The DEFENDANTS knowingly made or used or caused their referring physicians, physician groups or outpatient clinics to make or use false records or statements to get false or fraudulent claims and bills for the DEFENDANTS' outpatient

313

ABT008-2756

CIVIL ACTION NO. 95-1354-CIV-GOLD

prescription drugs to be paid or approved by the Medicare and/or States' Medicaid Programs.

277.   The DEFENDANTS' knowing presentment or causing others to present, claims or bills to the Medicare and/or States' Medicaid Programs in violation of 42 U.S.C. §1395nn(a)(1)(B) without disclosing facts revealing said violations constituted the making or using, or the causing others to make or use, false records or statements to get a false or fraudulent claims paid or approved in violation of 31 U.S.C. §3729(a)(2).

278.   Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of One Billion Dollars ($1,000,000,000.00) all in violation of 31 U.S.C. §3729(a)(2).

REQUESTS FOR RELIEF

WHEREFORE, the Relator, on behalf of the UNITED STATES, demands that judgment be entered in its favor and against Defendants: ABBOTT LABORATORIES, INC.;

314

ABT008-2757

CIVIL ACTION NO. 95-1354-CIV-GOLD

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████, with judgment to

be entered against each defendant for the amount of damages: (1) to the States' Medicaid

Programs arising from claims for each Defendant's respective specified drugs; and (2) to

the Medicare Program arising from claims for those drugs classified under the HCPCS

codes covering their specified drugs, jointly and severally with such other defendants whose

drugs fall under said HCPCS codes, as follows:

1.    On Count I (False Claims Act; Causing Presentation of False Claims) for triple

the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN

THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS

($5,000.00) for each false claim;

2.    On Count II (False Claims Act; Causing False Statements To Be Used To Get

False Claims Paid By The GOVERNMENT) for triple the amount of UNITED STATES'

damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00)

and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

3.    On Count III (False Claims Act; causing False Statements To Be Used To

conceal An Obligation To Pay Money To The GOVERNMENT) for triple the amount of the

UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND

315

ABT008-2758

DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false or fraudulent claim paid;

    4.    On Count IV (False Claims Act; Causing Presentation of False and Fraudulent Claims; Illegal Remuneration) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false claim;

    5.    On Count V (False Claims Act; Causing A False Record Or Statement To Be Made Or Used To Get A False Or Fraudulent Claim Paid Or Approved by the Government; Illegal Remuneration) for triple the amount of UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

    6.    On Count VI (False Claims Act; Causing Presentation of False or Fraudulent Claims; Prohibited Referrals, Claims and Compensation Arrangements) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

    7.    On Count VII (False Claims Act; Causing a False Record or Statement to be Made or Used to get a False or Fraudulent Claim Paid or Approved by the Government; Prohibited Referrals, Claims and Compensation Arrangements) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND

316

CIVIL ACTION NO. 95-1354-CIV-GOLD

DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

8.  For all fees and costs of this civil action; and

9.  For such other and further relief as the Court deems just and equitable.

Further, the Relator, on its behalf, requests that it receive thirty percent (30%), [twenty-five percent (25%) if the United States Government intervenes and proceeds with this case]  or such other maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the UNITED STATES, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Relator requests that its percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

### DEMAND FOR JURY TRIAL

A jury trial is demanded in this case.

Respectfully submitted,

Atlee W. Wampler, III
Florida Bar No. 311227

James J. Breen
Florida Bar No. 297178
WAMPLER, BUCHANAN & BREEN, P.A.
900 Sun Trust Building
777 Brickell Avenue
Miami, Florida  33131
Telephone:   (305) 577-0044
Facsimile:   (305) 577-8545

317

ABT008-2760

CIVIL ACTION NO. 95-1354-CIV-GOLD

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of December, 1999, I caused an original and a copy of this Third Amended Complaint to be filed under seal and in camera for sixty (60) days and not to be served on the Defendants named herein or until further order of this Honorable Court.

I HEREBY CERTIFY that prior to this _____ day of December, 1999, I caused a copy of this Third Amended Complaint and written disclosure of substantially all material evidence and information the Relator, VEN-A-CARE possesses to be served on the Government pursuant to Rule 4(i), Fed.R.Civ.P., prior to the filing of this Third Amended Complaint by delivering a copy of the Summons, Third Amended Complaint, material evidence and information to the United States Attorney for the Southern District of Florida, and by sending a copy of the Summons, Third Amended Complaint, material evidence and information by Certified Mail, Return Receipt Requested, to the Attorney General of the United States in Washington, D.C.

Respectfully submitted,

Atlee W. Wampler, III
Florida Bar No. 311227

James J. Breen
Florida Bar No. 297178
WAMPLER, BUCHANAN & BREEN, P.A.
900 Sun Trust Building
777 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 577-0044
Facsimile:   (305) 577-8545

F:\CLIENTS\00273\RDAMD\FIN-3CMP.I

318

ABT008-2761