# Exhibit Q

Booth, Charles R.                                          April 23, 2007

Washington, DC

Page 1

      UNITED STATES DISTRICT COURT

    FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -x

| | |
|---|---|
| IN RE: PHARMACEUTICAL | : MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | : CIVIL ACTION: |
| PRICE LITIGATION | : 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | : |
| U.S. ex rel. Ven-a-Care of | : Judge Patti B. Saris |
| the Florida Keys, Inc. v. | : |
| Abbott Laboratories, Inc., | : Chief Magistrate |
| No. 06-CV-11337-PBS | : Judge Marianne B. |

- - - - - - - - - - - - - - -x    Bowler

       IN THE CIRCUIT COURT OF

     MONTGOMERY COUNTY, ALABAMA

- - - - - - - - - - - - - - -x

| | |
|---|---|
| STATE OF ALABAMA, | : |
|       Plaintiff, | : |
|     vs. | : Case No.: CV-05-219 |
| ABBOTT LABORATORIES, INC., | : Judge Charles Price |
| et al., | : |
|       Defendants. | : |

- - - - - - - - - - - - - - -x

Page 2

```
 1    IN THE COURT OF THE SECOND JUDICIAL CIRCUIT
 2        IN AND FOR LEON COUNTY, FLORIDA
 3
 4   THE STATE OF FLORIDA
 5   ex rel.
 6   -----------------x
 7   VEN-A-CARE OF THE FLORIDA      :
 8   KEYS, INC., a Florida          :
 9   Corporation, by and through its :
10   principal officers and directors, :
11   ZACHARY T. BENTLEY and         :
12   T. MARK JONES,                 :
13          Plaintiffs,             :
14      vs.              : Civil Action
15   MYLAN LABORATORIES INC.; MYLAN  : No.: 98-3032G
16   PHARMACEUTICALS INC.; NOVOPHARM : Judge: William
17   LTD., SCHEIN PHARMACEUTICAL, INC.;:    L. Gary
18   TEVA PHARMACEUTICAL INDUSTRIES  :
19   LTD., TEVA PHARMACEUTICAL USA;  :
20   and WATSON PHARMACEUTICALS, INC., :
21          Defendants.     :
22   -----------------x
```

Page 3

```
 1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
 2            STATE OF MISSOURI
 3
 4   -----------------x
 5   STATE OF MISSOURI, ex rel.,    :
 6   JEREMIAH W. (JAY) NIXON,       :
 7   Attorney General,              :
 8   and                            :
 9   MISSOURI DEPARTMENT OF SOCIAL  :
10   SERVICES, DIVISION OF MEDICAL  : Case No.:
11   SERVICES,              : 054-1216
12          Plaintiffs,  : Division No. 31
13      vs.              :
14   DEY INC., DEY, L.P., MERCK KGaA, :
15   EMD, INC., WARRICK              :
16   PHARMACEUTICALS CORPORATION,    :
17   SCHERING-PLOUGH CORPORATION, and :
18   SCHERING CORPORATION,           :
19          Defendants.     :
20   -----------------x
21
22
```

Page 4

```
 1                Washington, D.C.
 2                Monday, April 23, 2007
 3
 4       Videotaped Deposition of CHARLES R. BOOTH,
 5   a witness herein, called for examination by counsel
 6   for Abbott Laboratories in the above-entitled
 7   matter, pursuant to notice, the witness being duly
 8   sworn by KAREN YOUNG, a Notary Public in and for the
 9   District of Columbia, taken at the offices of Jones
10   Day, 51 Louisiana Avenue, Northwest, Washington,
11   D.C., at 9:41 a.m. on Monday, April 23, 2007, and
12   the proceedings being taken down by Stenotype by
13   KAREN YOUNG, and transcribed under her direction.
```

Page 5

```
 1   APPEARANCES:
 2      On Behalf of the United States of America:
 3
 4          GEJAA T. GOBENA, ESQ.
 5          LAURIE A. OBEREMBT, ESQ.
 6          U.S. Department of Justice
 7          Civil Division
 8          601 D Street, Northwest
 9          PHB - 9028/P.O. Box 261
10          Washington, D.C. 20044
11          Gejaa.Gobena@usdoj.gov
12          (202) 307-1088
13            (by telephone)
14
15          ANA MARIA MARTINEZ, ESQ.
16          Assistant United States Attorney
17          Southern District of Florida
18          99 N.E. Fourth Street
19          Miami, Florida 33132
20          Ana.Maria.Martinez@usdoj.gov
21          (305) 961-9431
22
```

2 (Pages 2 to 5)

Booth, Charles R.         April 23, 2007
Washington, DC

**Page 98**

1 continue to believe that AWP is not a reliable price
2 to be used as a basis for making reimbursements for
3 either the Medicaid or Medicare programs." Do you
4 see that?
5    A. Yes.
6    Q. Would you agree with me that in October of
7 1989, the Office of Inspector General advised HCFA
8 that the Office of Inspector General believed that
9 AWP was not a reliable price to be used as a basis
10 for making reimbursements for either the Medicaid or
11 Medicare programs?
12    A. Assuming this is an accurate reflection of
13 their report.
14    Q. If you could turn to page 5 of this
15 particular printout?
16    A. The page numbered 5?
17    Q. Yes, sir. In the middle of the page,
18 you'll see that there are quotes from wholesaler A,
19 B and C, and in the paragraph above, OIG describes
20 how it interviewed four wholesalers. The quote from
21 wholesaler B reads, quote, "AWP is a meaningless
22 figure." Do you see that?

**Page 99**

1    A. Yes.
2    Q. Assuming this is an accurate printout from
3 Lexis-Nexis, would you agree with me that on October
4 3rd, 1989 or thereabouts, OIG advised HCFA that at
5 least one wholesaler of drugs believed that AWP was
6 a meaningless figure?
7    A. Yes.
8    Q. Mr. Booth, you've reviewed the complaint
9 in this case, correct?
10    A. Quite a while ago.
11    Q. I'll hand you what we previously marked as
12 Exhibit Abbott 019, ask if you recognize that
13 document. That's the complaint in the case brought
14 by Ven-a-Care of the Florida Keys and the United
15 States against Abbott Laboratories under the False
16 Claims Act. Have you seen that before?
17    A. I don't know.
18    Q. If you could turn to the very back,
19 Exhibit 1, it's the second to the last and the last
20 pages, it's a chart listing along the left-hand
21 column a number of drugs. The first drug is
22 solution 5 percent, and later down, it shows sodium

**Page 100**

1 chloride. Do you know what sodium chloride solution
2 is as a drug, Mr. Booth?
3    A. No.
4    Q. And dextrose solution five percent, do you
5 know what kind of a drug that is?
6    A. I believe it's a sugar solution, but I'm
7 not sure.
8    Q. And at the very bottom of the page, it
9 refers to vancomycin. Do you know what kind of a
10 drug vancomycin is?
11    A. No.
12    Q. And at the very bottom of the second page,
13 water for injection, do you know what kind of a drug
14 that is?
15    A. No.
16    Q. If you notice in the chart, it has several
17 columns and purports to describe a price to relater.
18 Do you see that, for solution five percent of 1492?
19    A. Yes.
20    Q. And an average AWP of 165.54?
21    A. Yes.
22    Q. And the relater has purported to calculate

**Page 101**

1 a profit margin spread of a thousand percent in the
2 far right column?
3    MR. GOBENA: Object to the form.
4    A. I see what's printed there.
5    Q. Right. To the extent that this has been
6 filed in court, would you agree with me, Mr. Booth,
7 that it is publicly available knowledge that
8 published AWPs can exceed prices in the marketplace
9 by as much as ten times?
10    MR. GOBENA: Object to the form.
11    A. I have no idea.
12    Q. You'd agree with me to the extent that
13 that document is filed in open court, that anybody
14 who read that would at least know that the relater
15 and the government purport to find a ratio of ten to
16 one between AWPs and prices paid by providers,
17 correct?
18    MR. GOBENA: Object to the form.
19    MR. BREEN: Objection.
20    A. I assume that somebody who read this would
21 understand that there's an allegation to that.
22    Q. I hand you what's been marked Exhibit

Henderson Legal Services
202-220-4158

5570917b-ccec-4522-964a-1aa1ed72506d

Page 138

1  and Vancocin slash vancomycin. Now, do you know
2  what Calcijex is?
3     A.  No.
4     Q.  Do you know what Imferon is?
5     A.  No.
6     Q.  Do you know what Vancocin or vancomycin
7  is?
8     A.  No.
9     Q.  There's a footnote that says, as to
10 vancomycin, "This drug is a multiple-source drug.
11 We used the median AWP for the generic drug."
12 What's your understanding of what a multiple-source
13 drug is?
14    A.  It's a drug that's available from more
15 than one manufacturer.
16    Q.  This table indicates an EAC and an AWP for
17 Calcijex, Imferon and vancomycin. Do you see that?
18    A.  Yes.
19    Q.  You'll see that this chart reports that
20 the AWP for Calcijex is $9.18 while the EAC is
21 $7.34. Do you see that?
22    A.  Yes.

Page 139

1     Q.  Is that consistent with your understanding
2  in October 20, 1992 of the relationship of AWP to
3  estimated acquisition cost for a single-source drug?
4         MR. GOBENA: Object to form.
5     A.  I don't know that I had a specific
6  understanding of the payment difference or the
7  relationship in 1992 for any particular drug.
8     Q.  But you had a general understanding of the
9  relationship between AWP and acquisition cost for
10 brand names in general, correct?
11        MR. GOBENA: Object to the form.
12    A.  No.
13    Q.  None whatsoever?
14    A.  No.
15    Q.  The third line is vancomycin. The
16 footnote indicates that it's a multiple-source drug?
17    A.  Yes.
18    Q.  The report indicates that the EAC is $5
19 and the AWP is $19.17?
20    A.  Uh-huh.
21    Q.  Is that consistent with your understanding
22 of the relationship of acquisition cost to AWP in

Page 140

1  1992 for multiple-source drugs?
2         MR. GOBENA: Object to form.
3         MR. BREEN: Object to form.
4         MS. MILLER: Object to form.
5         MR. BATES: Object to form, Roger Bates
6  from Alabama.
7         MR. COOK: I think we can agree that one
8  objection to form will count for everybody hence
9  forward. Does everybody agree?
10        MR. BREEN: That's fine.
11        MS. MILLER: Fine with me. So stipulated.
12        MR. BREEN: Unless the question is really
13 really bad. Then we can object more than once.
14        BY MR. COOK:
15    Q.  You just have to object more loudly.
16 Mr. Booth, is the relationship of $19.17 for the AWP
17 to $5 for the EAC for vancomycin consistent with
18 your understanding of the relationship of AWP to
19 acquisition cost in 1992 for multiple-source drugs?
20        MR. GOBENA: Same objection.
21    A.  No.
22    Q.  What was your understanding?

Page 141

1     A.  I didn't have one.
2     Q.  If you could turn to Appendix 2 to this
3  report, it's a chart entitled "Invoice Price for
4  Selected Drugs at the Dialysis Facilities Reviewed."
5  Down the left side, it lists the three drugs that we
6  talked about before, to the right has a matrix
7  showing the per-unit costs of various facilities,
8  and on the right-hand column, it has a column for
9  the EAC and for the AWP. If you look at the very
10 bottom, the OIG has defined EAC as being calculated
11 using the median invoice price, and the AWP being
12 the average wholesale price in the Red Book and the
13 median for the generic form of the drug. Do you see
14 that?
15    A.  I see what it says here.
16    Q.  And also on the left side of the chart,
17 Calcijex has an S below it, Imferon has an S below
18 it, and vancomycin has an M below it. Do you see
19 that?
20    A.  Yes.
21    Q.  And again, in the notes, S indicates that,
22 according to the OIG at least, Calcijex and Imferon

Booth, Charles R. April 23, 2007
Washington, DC

### Page 154

1  Q. And according to this chart prepared by
2  OIG, there were various price points in between
3  $3.45 and $26.61, correct?
4      MR. GOBENA: Object to the form.
5  A. There appear to be.
6  Q. Is that consistent with your understanding
7  that it's impossible to determine a single
8  percentage discount from AWP that would give you
9  provider acquisition cost?
10     MR. GOBENA: Object to the form.
11 A. I would conclude that for an individual
12 dosage of an individual drug, it could be difficult
13 to set a uniform discounted price on AWP.
14 Q. And is it fair to say that there was no
15 predictable relationship between AWP and acquisition
16 cost?
17     MR. GOBENA: Object to the form.
18 A. I have no idea.
19 Q. Well, let me ask you this. In November
20 1992, did you believe that there was a predictable
21 relationship between AWP and provider acquisition
22 cost?

### Page 155

1      MR. GOBENA: Object to the form, asked and
2  answered.
3  A. I don't recall having such a belief.
4  Q. Returning again to Exhibit Abbott 079
5  please, there's a conclusions page on page 11, and
6  the first conclusion is that for the physicians
7  surveyed, OIG found that the 13 high dollar volume
8  chemotherapy drugs can be purchased at amounts below
9  AWP. Would you agree with me that as of November
10 1992, individuals within the Office for Payment
11 Policy were aware of OIG findings that these 13 high
12 dollar volume chemotherapy drugs could be purchased
13 at amounts below AWP?
14     MR. GOBENA: Object to the form.
15 A. No.
16 Q. You would not agree that this conclusion
17 was communicated to someone within the Office of
18 Payment Policy?
19 A. In the paragraph above, the second
20 sentence says, "The conclusions reached may not
21 apply in all cases."
22 Q. That wasn't my question.

### Page 156

1  A. Well, it's my answer.
2  Q. Fair enough. Would you agree that for the
3  physicians surveyed, this report advised officials
4  within the Office of Payment Policy that for these
5  physicians, these chemotherapy drugs could be
6  purchased at amounts below AWP?
7      MR. BREEN: Objection, form.
8  A. My answer would be the same because I
9  don't -- I don't understand what the IG is really
10 trying to say here.
11 Q. Well, can you understand what the IG is
12 trying to say in the next bullet point, AWP is not a
13 reliable indicator of the cost of a drug to
14 physicians? Did you understand that?
15 A. Yes. That doesn't mean it's too high, it
16 doesn't mean it's too low, it doesn't mean it's just
17 right. It just means it's not reliable.
18 Q. Did you believe that AWP was a reliable
19 indicator of the cost of a drug to a physician in
20 November of 1992?
21     MR. GOBENA: Object to the form.
22 A. I actually I think in 1992 thought it was

### Page 157

1  a relatively reliable indicator, though it was
2  certainly not a consistent indicator.
3  Q. And in October of 1992 when your office
4  was advised that vancomycin could be purchased at
5  $3.45 and the median AWP was $19.17, you still
6  believed that AWP could be a reliable indicator of
7  acquisition cost?
8  A. In certain cases, yes.
9  Q. In which cases is that?
10 A. Well, I'm not prepared to be specific.
11 It's been too long since I've been involved with
12 this.
13 Q. How did you determine at the time in which
14 cases --
15 A. I have no idea. I do not remember. I'm
16 sorry, I'm 70 years old. I have not dealt with
17 these issues for at least 13 years, and when I dealt
18 with these issues, they were very minor in the
19 scheme of things. I spent extremely little time
20 during my career in payment policy on drugs because
21 we did not have a drug benefit.
22 Q. But you were the person responsible within

40 (Pages 154 to 157)