# Exhibit V

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------X

IN RE: PHARMACEUTICAL         : MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE    : CIVIL ACTION:

PRICE LITIGATION              : 01-CV-12257-PBS

THIS DOCUMENT RELATES TO      :

U.S. ex rel. Ven-A-Care of    : Judge Patti B. Saris

the Florida Keys, Inc. v.     :

Abbott Laboratories, Inc.,    : Chief Magistrate

No. 06-CV-11337-PBS           : Judge Marianne B.

                              : Bowler

---------------------------X

HIGHLY CONFIDENTIAL

Tuesday, March 20, 2007

The video 30(b)(6) deposition of VICTORIA ROBEY,

called for oral examination by Counsel for the

Defendant Abbott Laboratories, Inc., pursuant to

notice, held in the law offices of Hogan &

Hartson, 111 South Calvert Street, Baltimore,

Maryland 21202, beginning at 9:20 a.m., before

126bfa54-4e4e-49ff-85e7-999d676a1331

Page 70

```
 1     A    No.
 2     Q    So, you wouldn't preserve anything in
 3  response to this, I take it?
 4     A    (Witness shakes head.)
 5     Q    Did you have any involvement with
 6  this other than receiving it and putting in your
 7  file?
 8     A    No.
 9     Q    In what capacity did you receive
10  this?  Why did it come to you?
11     A    I'm listed as a cc on the second
12  page.
13     Q    Do you have any idea why you would
14  you be a cc to this memo to the carrier and the
15  FIs?
16     A    Because I'm the agency records
17  officer.
18     Q    So, you would keep a record of
19  directions to these outside entities to preserve
20  documents?
21     A    Yes.
22     Q    To the best of your knowledge, did
```

Page 71

```
 1  the recipients of this memo comply with its
 2  instructions?
 3          MS. THOMAS:  Objection.
 4          THE WITNESS:  I have no way of
 5  knowing.
 6          BY MR. COOK:
 7     Q    You haven't heard that nobody did not
 8  comply?
 9     A    Correct.
10     Q    A double negative there.
11          The next memo is Bates numbered 0005
12  through 0007.  For the record, I'll describe it.
13  It is dated February 19, 2004.  It is addressed
14  to all center and office directors and regional
15  administrators.  It is from Jacquelyn,
16  J-A-C-Q-U-E-L-Y-N, Y. White, who appears to be
17  the or purports to be, at least, the director,
18  Office of Strategic Operations and Regulatory
19  Affairs.  The subject is Document Preservation
20  and Production, Lupron Marketing and Sales
21  Practice Litigation, and Pharmaceutical Industry
22  Average Wholesale Price Litigation.  It has a
```

Page 72

```
 1  portion of the second page redacted.
 2          Ms. Robey, do you recognize Bates
 3  numbered -- pages Bates numbered 5 through 7?
 4     A    Yes.
 5     Q    What is it?
 6     A    It's a notice that was sent out to
 7  CMS centers and offices asking them to identify a
 8  person who is going to coordinate the discovery
 9  request.
10     Q    Other than receiving this memo, were
11  you involved at all in the preparation of this
12  memo?
13     A    No, I was not.
14     Q    Prior to receiving this memo on
15  February 19, 2004, are you aware of any steps
16  that were taken to preserve documents as
17  described in this memorandum?
18     A    No.
19          MS. THOMAS:  Objection.
20          BY MR. COOK:
21     Q    Sorry.  We spoke over each other.
22  Was that no?
```

Page 73

```
 1     A    No.
 2     Q    Thank you.  After receiving this memo
 3  in February 2004, what role did you have in the
 4  activities described in this memorandum?
 5          MS. MARTINEZ:  Objection to form.
 6          BY MR. COOK:
 7     Q    It was poorly phrased.  I'll try it
 8  again.
 9          Ms. Robey, were you involved at all
10  actively in the preservation of records as
11  directed in this memorandum?
12     A    No because I did not keep these
13  records.
14     Q    And did you gather any documents
15  responsive to this particular request?
16     A    No.
17          MS. MARTINEZ:  I just want to be
18  clear for the record that these questions you are
19  addressing to Vicky Robey as Vicky Robey, not
20  Vicky Robey at CMS; for example, when you ask her
21  did yourself gather any documents, I mean, you're
22  obviously asking Ms. Robey, not for her to answer
```

Page 74

1  on behalf of all of CMS with respect to this.
2          MR. COOK: Oh, sure.
3          BY MR. COOK:
4      Q   Oh, sure. We're not asking you what
5  you've done to gather documents. I'm not asking
6  for CMS to testify about what you, Vicky Robey,
7  did to preserve the documents.
8          MS. MARTINEZ: No, no. What I mean
9  is that you were not asking -- since this is a
10 30(b)(6) depo, I just want to be clear on the
11 record that that was not the answer on behalf of
12 CMS.
13         BY MR. COOK:
14     Q   Correct. That question and answer,
15 you were testifying as Vicky Robey, not as the
16 designee of the 30(b)(6). I should have made
17 that clear.
18         Back into character, though -- do we
19 have a copy of the complaint?
20         MR. GABEL: The original?
21         MR. COOK: Yes.
22         BY MR. COOK:

Page 75

1      Q   I'd like to show you real quickly --
2  we'll set those aside and come back it -- a copy,
3  I'll mark it as Exhibit Abbott 070.
4              (Exhibit Abbott 070,
5              document entitled Original
6              Complaint, was marked for
7              identification.)
8          MS. MARTINEZ: Could I see it before
9  you --
10         MR. COOK: Oh, absolutely. It is a
11 copy of -- that one is thicker because it is two
12 of them. It is a copy of the original complaint
13 filed by Ven-a-Care. It indicates on the cover
14 sheet that Ven-a-Care put on the document
15 Original Complaint filed on about June 23, 1996.
16 I believe that's incorrect for the record, that
17 it is 1995, inasmuch as the civil case number is
18 a '95 case number.
19         MS. MARTINEZ: Do you have an extra
20 copy that counsel for Ven-a-Care could use?
21         MR. COOK: Absolutely. Absolutely.
22         MS. THOMAS: Thank you.

Page 76

1          MR. COOK: Does anybody else need a
2  copy? I would love to get rid of them so I don't
3  have to carry them back.
4          BY MR. COOK:
5      Q   If you could just take a quick
6  moment, I realize that's a lengthy document but
7  take a look at it and tell me whether you've ever
8  seen that document before?
9          MS. THOMAS: You might want to
10 clarify whether you mean, whether she's ever seen
11 this document that may or may not have had these
12 redactions.
13         MR. COOK: Okay.
14         THE WITNESS: No. I've never seen
15 this before.
16         BY MR. COOK:
17     Q   Either with or without the
18 redactions?
19     A   No.
20     Q   And just for the record, on page 69,
21 it indicates that it was served on June 23 of
22 1995.

Page 77

1          To the best of your knowledge,
2  Ms. Robey, did CMS institute any document
3  preservation instruction in connection with this
4  complaint that was filed on June 23, 1995?
5      A   Not that I'm aware of.
6      Q   Going back to the February 19, 2004
7  memorandum included within Exhibit Abbott 069, are
8  you aware of any subsequent memoranda that were
9  issued relating to the litigation described in
10 this February 19, 2004 memorandum regarding
11 preservation of documents?
12     A   There was one after this in January
13 of 2007, I believe.
14     Q   And what did that one -- again, is
15 that a privileged communication?
16         MS. MARTINEZ: Objection to the
17 extent it calls for privileged communication.
18 You may be able to ask her if she has information
19 from anybody who is a nonlawyer regarding that.
20         BY MR. COOK:
21     Q   Just sticking with the memorandum and
22 then moving on to information from a nonlawyer,

Page 78

1  do you remember from whom the January 2007
2  memorandum was from?
3      A    It was from our program area -- I'm
4  trying to remember the lady's name, Mary Beth --
5  Mary Beth Jason, I think. I'm not sure about the
6  last name.
7      Q    Is she an attorney?
8      A    No.
9      Q    Without describing the contents of
10 the memorandum, can you describe generally what
11 the nature of the document was?
12          MS. THOMAS: Objection.
13          MS. MARTINEZ: If you would focus
14 your question with respect, if she has any
15 information from a nonlawyer regarding whether or
16 not that document instructed anyone to preserve,
17 you might be able to get an answer that is
18 helpful.
19          BY MR. COOK:
20     Q    Do you have any information from a
21 nonlawyer that would indicate whether that
22 document was intended to preserve documents

Page 79

1  relating to litigation?
2      A    Yes, I do.
3      Q    From whom do you have that
4  information?
5      A    It is from Mary Beth, I think the
6  last name is Jason.
7      Q    She was the author of the memorandum?
8      A    I believe so, yes.
9      Q    Is this a conversation you had with
10 Ms. Jason?
11     A    A conversation as well as a copy of
12 the correspondence.
13     Q    Do you remember when and where this
14 conversation took place, approximately?
15     A    I talked with her yesterday as well
16 as in the past where she contacted me regarding
17 the agency's policy on retention.
18     Q    As best you can recall, what did you
19 say to Ms. Jason, what did she say to you in the
20 earlier conversations?
21     A    I can't remember.
22     Q    Do you remember the nature of the

Page 80

1  conversation?
2      A    It was with regard to preservation --
3  not preservation but what the agency's policy was
4  on retention and the appropriate way to word
5  records management language in notice about
6  preservation.
7      Q    So, she called with a question?
8      A    Yes.
9      Q    And you answered her question?
10     A    Yes.
11     Q    A long conversation? Short
12 conversation?
13     A    I can't remember. It was before the
14 holidays.
15     Q    But she called to ask you about how
16 one would go about drafting a document
17 preservation or a hold memorandum?
18     A    She wanted records management
19 language to use. She didn't -- I did not -- I --
20 I didn't give her content. I just talked with
21 her and gave her instructions.
22     Q    And what was your understanding about

Page 81

1  why she was asking this question of you?
2      A    Because she was going to be preparing
3  correspondence that was being released about
4  preservation.
5      Q    Do you know why she was going to send
6  out correspondence relating to preservation at
7  that time?
8      A    She did not go into that with me.
9      Q    You say just before the holidays.
10 This would have been December of '96?
11         MS. THOMAS: Objection.
12         THE WITNESS: Oh. I'm talking -- no.
13         BY MR. COOK:
14     Q    You said January of 2007. That's why
15 I had my dates off. About when was this
16 conversation, I should ask you?
17     A    It was before the holidays in 2006.
18     Q    Okay. So, before the Christmas
19 holidays of 2006?
20     A    I believe, yes.
21     Q    So, it would have been November,
22 December of 2006?

21 (Pages 78 to 81)

126bfa54-4e4e-49ff-85e7-999d676a1331

Page 82

1   A   I can't remember.
2   Q   But within the last five months, six
3   months?
4   A   Maybe.
5   Q   Okay. I just wanted to make sure I
6   had the right year, that I wasn't off by 12
7   months.
8   A   You just said '96 before that.
9   Q   Right. So, before the holidays,
10  December of --
11  A   But you said 1996.
12  Q   I'm so old that '96 and 2006 seem
13  like the same year. I apologize. I didn't even
14  understand it when you told me I had it wrong.
15  So, 2006.
16  A   Okay.
17  Q   Within the last half a year?
18  A   (Witness nods head.)
19  Q   Is there any way you would figure out
20  when that conversation took place?
21  A   No.
22  Q   As the records management officer for

Page 83

1   the CMS home office had -- let me strike that and
2   step one step back. Do you know what litigation
3   she was asking in connection with?
4   A   I can't remember. I get hundreds of
5   calls.
6   Q   The case about which Ms. Jason --
7   A   Mary Beth, I think the last name is
8   Jason. The first name is Mary Beth.
9   Q   The case about which Mary Beth
10  contacted you before the holidays in 2006, was
11  that a case about which anybody, to your memory,
12  had contacted you before?
13      MS. THOMAS: Objection.
14      THE WITNESS: I can't remember.
15      BY MR. COOK:
16  Q   And without revealing any of the
17  substance of it, did a memorandum subsequently
18  come out from Mary Beth?
19  A   Yes.
20  Q   To whom was it addressed?
21  A   I can't remember.
22  Q   Did it describe -- did it relate

Page 84

1   specifically to a particular litigation?
2   A   Yes.
3   Q   Prior to that memorandum being
4   distributed, without revealing the contents of
5   that of that memorandum, had there ever been any
6   prior communications within CMS relating to
7   document preservations in connection to that
8   case?
9       MS. MARTINEZ: Objection to the
10  extent that she knows.
11      MR. COOK: Sure.
12      BY MR. COOK:
13  Q   To the extent that you are aware of
14  as the records officer for CMS, had there ever
15  been any prior records preservation directions
16  issued relating to that case that was the subject
17  of Mary Beth's memorandum?
18  A   Yes.
19  Q   When was that?
20  A   Early 2003, late 2004.
21  Q   So, it is your understanding that
22  those two cases were somehow connected?

Page 85

1   A   Yes.
2   Q   The same case or connected?
3   A   I just associated it because of
4   information that was provided in the subject
5   line.
6   Q   Okay.
7   A   I'm not an expert on that.
8   Q   And I understand completely. Other
9   than the 2003-2004 prior preservation memo, and
10  that's the one we have here at pages 5 through 7,
11  correct -- yes, 5 through 7.
12  A   Yes.
13  Q   Other than that February 19, 2004
14  communication, had there ever, before that, been
15  any preservation instructions issued in
16  connection with that case?
17  A   Not that I'm --
18      MS. THOMAS: Objection.
19      THE WITNESS: Not that I'm aware of.
20      THE REPORTER: Counsel, is this a
21  good time to take a recess?
22      MR. COOK: I'd be happy to. Thank

22 (Pages 82 to 85)

Page 134

1    MS. MARTINEZ: That she recalls.
2    THE WITNESS: And it would be hard
3  for me to do that because a lot of times in the
4  subject line they give me, there may not be the
5  description that I need to be able to apply
6  something.
7    Q   I may not have been clear. Following
8  the September 2004 memorandum in Exhibit Abbott
9  069, that's the Jacquelyn White memorandum on
10 February 19, 2004, did you receive any
11 instructions from CMS employees to place holds on
12 documents in the CMS warehouse?
13   A   No.
14   Q   And so is there anybody else that
15 would have input of records holds into the CMS
16 database that you described other than you?
17   A   I have a person who is my backup but
18 that's only -- she only goes into the system to
19 generate accession numbers or to do the disposal
20 process.
21   Q   And so to the best of your knowledge,
22 were any documents in the CMS warehouse held and

Page 135

1  preserved from destruction as a result of the
2  February 19, 2004 memorandum from Jacquelyn
3  White?
4    MS. MARTINEZ: Objection to form.
5    MS. THOMAS: Objection.
6    THE WITNESS: Not that I'm aware of.
7    BY MR. COOK:
8    Q   Would you know whether documents were
9  collected from the CMS warehouse following the
10 February 19, 2004 memorandum from Jacquelyn
11 White?
12   MS. MARTINEZ: Objection to form.
13   MS. THOMAS: Objection.
14   THE WITNESS: When boxes are
15 requested from the warehouse, they don't give me
16 the reason. They're the record owners. They
17 need the boxes back to be able to access their
18 information and files. They don't give me a
19 reason why.
20   BY MR. COOK:
21   Q   So, it could be that boxes were
22 requested from the warehouse as a result of this

Page 136

1  memorandum, sent back to the record owner and you
2  simply facilitated the delivery of the box?
3    A   Correct.
4    Q   Without knowing the reason?
5    A   Yes.
6    Q   Was there an increase in the number
7  of requests following the September 2004 memo, if
8  you recall?
9    A   I don't know.
10   Q   Do you know of any specific requests
11 that actually did relate to the September 2004
12 memorandum and collection effort that followed
13 it?
14   A   No.
15   Q   When someone requests a box back from
16 the warehouse and removes documents from it,
17 sends it back to the warehouse, is any notation
18 made of the fact the documents were removed from
19 the box?
20   MS. MARTINEZ: Objection to form.
21   THE WITNESS: If they tell me that
22 they're taking something out, I will then go back

Page 137

1  to my copy of the transmittal sheet or inventory
2  and make a notation.
3    Q   It's always a big if. So, if policy
4  is followed, there would be a notation on the
5  index that some files were removed before the box
6  was returned to the warehouse?
7    MS. THOMAS: Objection.
8    THE WITNESS: Yes.
9    BY MR. COOK:
10   Q   But obviously, people don't always
11 follow policy so there is no way to tell.
12   A   I have no --
13   MS. MARTINEZ: Objection to form.
14   BY MR. COOK:
15   Q   You didn't independently verify it
16 because you don't go through the box --
17   A   Absolutely --
18   Q   -- to make sure that it matches up to
19 the index?
20   A   No.
21   Q   With respect to the January 2007,
22 just so we're clear, are you aware of any

35 (Pages 134 to 137)

Page 138

```
 1  litigation hold being placed on any boxes in the
 2  warehouse as a result of the January 2007 memo
 3  from Mary Beth Jason?
 4      A    No.
 5      Q    Are any boxes in the warehouse
 6  currently subject to a litigation hold?
 7          MS. THOMAS:  Objection.
 8          THE WITNESS:  Yes, MSP.
 9          BY MR. COOK:
10      Q    Other than MSP, are there any
11  litigation holds currently in place in the
12  warehouse?
13          MS. THOMAS:  Objection.
14          THE WITNESS:  There may be.  I won't
15  -- don't know without looking at my records.
16          BY MR. COOK:
17      Q    But not that you remember right now?
18      A    No.
19      Q    I'd like to turn to the Federal
20  Records Center.
21      A    Okay.
22      Q    What is the manual process of sending
```

Page 139

```
 1  records to the Federal Records Center?
 2      A    The record owner has eligible records
 3  in accordance with the record schedule that they
 4  want to send to storage that are no longer active
 5  files.  They request the storage boxes from me.
 6  I provide them the boxes.  They box up their
 7  files.  They do an inventory of what is in each
 8  box.  They prepare a record transmittal receipt
 9  for that to me electronically.  I send that to
10  the Records Center for approval.
11          Once they send back an approved copy
12  of the transmittal sheet, I put that in box
13  number one and then the records are sent to the
14  Federal Records Center.
15      Q    What information is sent to the
16  Federal Records Center along with the physical
17  box of documents?
18      A    The records transmittal receipt which
19  provides contact information, who the record
20  owner is, our agency information, the accession
21  number, the number of boxes that are being sent,
22  a description, the disposition authority, as well
```

Page 140

```
 1  as the disposal date and then attached to that is
 2  the box inventory.
 3      Q    If that box -- if you or someone at
 4  CMS want to retrieve that box, how would you go
 5  about doing it?
 6      A    Electronically, I am hooked into a
 7  server where I can order the boxes.  They process
 8  it within 24 hours, and the Records Center
 9  receives the request, pulls the box, and then
10  ships it to me.
11      Q    Are you -- do you have access to a
12  record of all boxes sent to the Federal Records
13  Center by CMS and all boxes retrieved from the
14  Federal Records Center at CMS?
15      A    I have -- not retrieved.  I have a
16  record of everything that is at the Federal
17  Records Center.  I'm sorry.  I'm wrong.  I have
18  my -- I keep an internal log of records that have
19  been requested from the Records Center and then
20  returned.
21      Q    Okay.  So, you have your own traffic
22  log of what went out, what came back, what went
```

Page 141

```
 1  back?
 2      A    Yes.
 3      Q    And similar to -- step back a
 4  minute -- the warehouse, do you keep a similar
 5  log of retrieval requests and returns for the CMS
 6  warehouse?
 7      A    It's maintained in the database.
 8      Q    It is?  Okay.  So, if I have a line
 9  with accession box number one from Louie Gabel,
10  disposition date, given to me on stuff and such a
11  date, retrieved on another date and returned back
12  to me on the following date?
13      A    That information is available but
14  it's not in one report.  You would have to go
15  into several different screens to get it.
16      Q    Okay.  At the Federal Records Center,
17  do you know if the Federal Records Center keeps
18  also a log of comings and goings of the boxes for
19  which it maintains custody?
20      A    I don't know.
21      Q    Do you have any way of knowing what
22  happens to a box at the Federal Records Center
```

36 (Pages 138 to 141)