## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

### ABBOTT LABORATORIES INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF ITS CEO, MILES WHITE

Rather than address the unbroken line of cases cited in Abbott's opening brief – which collectively establish beyond a doubt that Plaintiffs should not be allowed to depose Abbott's CEO, Miles White – the Government devotes its response to obfuscating the facts and attempting to recast the controlling legal standard to something more to its liking.  These tactics fail.  In order to justify the deposition of Mr. White, the Government must show that: (1) he has *unique* and *personal* knowledge of matters relevant to this litigation; and (2) the Government has first exhausted other, less burdensome means of acquiring this information.  Neither showing has been, or can be, made here.  Abbott's motion for a protective order should be granted.

## I.   THE GOVERNMENT HAS NOT SHOWN AND CANNOT SHOW THAT MR. WHITE HAS UNIQUE PERSONAL KNOWLEDGE OF RELEVANT ISSUES

Mr. White has been Abbott's CEO and Chairman of its Board of Directors since 1999. (*See* Affidavit of Miles D. White ("White Aff."), attached as Ex. C to Abbott's original motion, ¶ 1.)  The majority of his career with Abbott was spent in the Diagnostics Division, which was separate from the Hospital Products Division – the division that was responsible for the manufacture, pricing, marketing and sale of the Subject Drugs at issue in this case.  (*Id.* ¶ 1.)  As made clear in his sworn affidavit, Mr. White is advised by others as necessary about matters such

as the pricing, marketing and sale of Abbott's drugs around the world, but he has no unique

personal knowledge about such matters within the organization.  (*Id.* ¶ 2.)  This testimony alone

should end the inquiry, since Mr. White's deposition cannot be compelled absent some showing

by the Government that he has "unique personal knowledge . . . unavailable from less intrusive

discovery, including interrogatories and the depositions of lower-level employees."  *See Celerity,*

*Inc. v. UltraClean Holding, Inc.*, 2007 WL 205067, *3 (N.D. Cal. Jan. 25, 2007) (denying

defendant's bid to depose plaintiff's CEO and former CEO); *see also Porter v. Eli Lilly & Co.*,

2007 WL 1630697, *3 (N.D. Ga. June 1, 2007) ("a plaintiff must show that the executive would

have personal knowledge of the events in question and a plaintiff has no other means of

obtaining the information"); *Marisco v. Sears Holding*, 2007 WL 1006168, *2 (E.D. Mich. Mar.

29, 2007) (party seeking deposition bears the burden of showing that the proposed deponent has

unique personal knowledge); *Cf.* cases collected in Abbott's opening memorandum at 5-6.[1]

Unable to meet this standard or otherwise to rebut Mr. White's testimony with any record

evidence, the Government seeks to support its extraordinary request with nothing but inference

and innuendo.  The Court should require much more.

### A.      Press Snippets Prove Nothing

The Government suggests that Mr. White must have unique knowledge of issues relevant

to this case because he responded to a few media inquiries about a House Ways and Means

_____

[1] The Government argues that it should be Abbott's burden to prove the negative – that Mr. White does *not* have unique personal knowledge – in order to prevent his deposition.  (Resp. at 13.)  Abbott has more than met any burden it might have by submitting the sworn affidavit of Mr. White, attesting that he has no unique personal knowledge about matters relevant to this case.  It now falls to the Government to rebut that showing with record evidence demonstrating that Mr. White does in fact have unique personal knowledge of relevant issues that cannot be obtained in any less intrusive manner.  *See Consolidated Rail Corp. v. Primary Indust. Corp.*, 1993 WL 364471 at *1 (S.D.N.Y. Sept. 10, 1993) (where executive submitted affidavit stating he had no personal knowledge of the facts underlying the claims in the case except for what he may have learned from other employees, it had not been demonstrated that the executives had unique knowledge pertinent to the issues in the case); *Cf. Liberty Mutual Ins. Co. v. The Superior Court of San Mateo County*, 10 Cal. App. 4th 1282, 1290 (Cal. App. 1992) ("In the case of an official at the head of corporate operations . . . expressions of ignorance of a specific case or claim are not implausible.").  The Government cannot meet its burden.

Committee investigation of the pharmaceutical industry and drug pricing.  (Resp. at 5-6.)  Not so.  Like every other CEO, Mr. White is occasionally interviewed by members of the press about issues facing the company he leads.  In this case, when questioned about the House investigation, Mr. White is merely quoted as saying that the issues were "nothing new" and that the concerns identified by Congress stem from the failure of the agencies charged with administering Medicare to appropriately define their pricing policies.  (*Id.*)  In addition to these cursory statements, the Government asserts that Mr. White may have reviewed an "issues brief" prepared by other Abbott employees (who therefore have greater knowledge regarding its contents) relating to Vancomycin.  (*Id.* at 6-7.)

At best, the matters highlighted by the Government could only show that Mr. White has some general knowledge about drug pricing issues and governmental investigations.  This, of course, is exactly what Mr. White stated in his affidavit – that, in his capacity as CEO, he is advised by others as necessary about matters such as pharmaceutical pricing.  (White Aff. ¶ 2.)[2] But the case law makes clear that "some knowledge" is not enough; indeed, if it "were enough, the apex deposition guidelines would be meaningless; they would be virtually indistinguishable from the scope of general discovery." *In re Alcatel USA, Inc.*, 11 S.W.3d at 179; *see also Baine v. General Motors Corp.*, 141 F.R.D. at 334; *Consol. Rail Corp.*, 1993 WL 364471 at *1.  In order to meet the required standard of unique personal knowledge, "there must be some showing beyond mere relevance, such as evidence that a high-level executive is the *only* person with

---

[2] The Government misconstrues Mr. White's affidavit – suggesting that Mr. White claims to have knowledge of drug pricing and other related issues solely through discussions with counsel.  (Resp. at 6.)  A simple review of the affidavit gives the lie to this argument by the Government.  Mr. White states plainly that he is advised about matters such as drug pricing as needed by others within Abbott, not just attorneys.  (White Aff. ¶ 2.)  His only knowledge of the specific allegations and legal theories raised in this and other AWP cases, however, is from discussions with legal counsel.  (*Id.* ¶ 3.)  This is not the sort of "remember-nothing" affidavit that the court rejected in *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987).  Unlike the *Travelers* case, the Government has not produced a scrap of evidence that would indicate that Mr. White had personal involvement with respect to any topic relevant to this lawsuit.  *See id.*

personal knowledge of the information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources." *Alcatel*, 11 S.W.3d at 179 (emphasis added). A few press snippets and the possibility of a briefing by other employees hardly qualify.

### B.    The Fact that Congressman Stark Addressed a Letter to Mr. White Cannot Justify the Government's Requested Deposition

As anticipated, the Government devotes a substantial portion of its response to the fact that, in 2000, Congressman Stark chose to send a letter to Mr. White raising many of the same AWP-related allegations that are at issue in this and other similar cases. (Resp. at 7-9.) According to the Government, because this letter came from a Congressman, it is "likely" that Mr. White had some role in formulating Abbott's response. (*Id.* at 13.) The Government's supposition cannot take the place of facts, however, and the uncontested fact is that Abbott never responded to Congressman Stark. Indeed, the Government offers no evidence that Mr. White ever even saw this letter, only that it was addressed to him. Yet the case law specifically instructs that merely being the addressee of a letter is not enough to show that an apex executive such as Mr. White has unique personal knowledge regarding the subject of that letter. *See Liberty Mutual*, 10 Cal. App. 4th at 1286 (rejecting argument that simply being copied on two letters regarding the case was enough to warrant a deposition of defendant's president and chief executive officer in a fraud case); *Alcatel*, 11 S.W.3d at 179 (receipt of a document does not mean that an individual has unique knowledge related to that document).

The fact that Abbott lowered certain prices for its products at some point in time after 2000 does not change this analysis. The Government has not established any link between this pricing action and the letter from Congressman Stark, and it certainly has not offered any evidence to show that Mr. White has unique personal knowledge within the company about this

issue.  No document connects Mr. White to the Stark letter or any response to it, and no witness

has even been *asked* by the Government what role Mr. White may have had with respect to the

Stark letter or to the pricing actions that took place after 2000.  The best the Government can

offer is the speculation that the "decision to make such a significant corporate change would

*likely* have been made at the top corporate level." (Resp. at 13.)  As the court in *In re Alcatel*

*USA, Inc.* aptly noted, however, "proof of the importance of [a] project to [a company],

combined with the allegation that the issue in this case 'smacks of chairman-level importance,' at

most tends to show that the chairman-level official whose deposition is sought may possess

discoverable information.  It does not, however, arguably show that the official's knowledge is

unique or superior."  11 S.W.3d. at 177.  In the face of Mr. White's sworn affidavit, the

Government's speculation is unavailing.

### C.   The Government Should Not Be Allowed to Depose Mr. White Regarding the Settlement of Lupron-Related Claims Against TAP

Equally flimsy is the Government's argument that it should be allowed to depose Mr.

White about the details of a settlement entered into by TAP in 2001 to resolve various allegations

made against it with respect to the marketing and sale of the prescription drug Lupron®.  (Resp.

at 9-10.)  TAP is not a defendant in this case, and Lupron® is not one of the Subject Drugs.  For

these reasons, the Court already has ruled that the Government is not entitled to any documents

from Abbott relating to the settlement in question.  (*See* Transcript of Motion Hearing, May 16,

2007, at 61-62.).  Given this ruling, there is no way that the Government can be allowed to

compel Abbott's CEO to submit to questioning about the same settlement.[3]

---

[3] The Government also mischaracterizes the nature of the TAP settlement, suggesting that the settlement directly addressed issues of marketing the spread.  (Resp. at 15-16.)  As the Court well knows, however, TAP did not plead guilty to any charge of marketing the spread.  Instead, TAP (not Abbott) pled guilty to a single count relating to billing for free samples of Lupron® and TAP (not Abbott) paid a fine in conjunction with that settlement.

**D.     Mr. White's Role as the Top Compliance Officer at Abbott Is Not Sufficient Grounds to Compel His Deposition**

The fact that Mr. White is the top official at Abbott responsible for corporate ethics and compliance is touted by the Government as some evidence of his unique personal knowledge of issues relevant to the case.  (Resp. at 16-17.)  To the contrary, the Government's assertion ultimately "amounts to nothing more than the simple, obvious recognition that the highest-ranking corporate officer of any corporation has the ultimate responsibility for all corporate decisions[.]"  *In re Alcatel USA, Inc.*, 11 S.W.3d at 177 (quoting *AMR Corp. v. Enlow*, 926 S.W.2d 640 (Tex. App. 1996)).  Yet, "[t]estimony that a corporate executive possesses knowledge of company policies does not, by itself, . . . show that the executive has unique or superior knowledge" about such issues.  *Id.  See also Thomas*, 48 F.3d at 483 (even where an apex executive personally authored the policy in question, deposition will not be allowed unless plaintiff first demonstrates that relevant information cannot be obtained from other employees or sources).  The Government has had ample opportunity to depose Abbott personnel regarding the ethical policies that were issued concerning AWP and related topics, but it has not shown in any way that Mr. White has unique personal knowledge about these issues.

**II.     THE GOVERNMENT HAS NOT EVEN ATTEMPTED TO EXHAUST LESS INTRUSIVE DISCOVERY METHODS**

The case law recognizes that a top corporate official, such as a CEO, is "a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse."  *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985).  For this reason, before such a top official can be subjected to a deposition, federal courts require that the party seeking the deposition establish not only that the official has unique personal knowledge, but also that the party has exhausted all other, less burdensome means to discover that information – such as by serving interrogatories or deposing lower-ranking employees.  *See* cases collected in Abbott's

opening memorandum at 5-7.  Again unable to meet this standard, the Government attempts to change the rules by fiat, contending that it ought not be required to exhaust any alternative discovery paths before deposing Mr. White.  (Resp. at 11-12, 17-18.)

The Government offers only two cases to support this faulty proposition, and neither is up to the task.  The first case, *In re Alcatel USA, Inc.*, was decided under Texas state law, and the court instructed that "[t]he party seeking the apex deposition is required to pursue less intrusive means of discovering the information only when that party cannot make the requisite showing concerning unique or superior knowledge."  11 S.W.3d at 176.  This case can be no help to the Government because, as shown above, the Government has not come close to establishing that Mr. White has any unique personal knowledge relevant to this case.

Moreover, even if *Alcatel* could be read to conflate the two prongs of the apex standard (unique, personal knowledge and exhaustion of other avenues) under Texas law, it is federal law that applies here.  And federal law holds unequivocally that a party must exhaust less burdensome discovery before taking an apex deposition, regardless of the knowledge possessed by the proposed deponent.  *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (noting that "failure to take advantage of [an] inexpensive, convenient method of discovery, *i.e.* interrogatories, casts serious doubt over [the] claim that [the executive] possessed information that was more than marginally relevant to [the] civil action."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (deposition of Upjohn president properly barred where plaintiff had not first taken depositions of lower-level employees who could provide the same information); *Stone v. Morton Int'l*, 170 F.R.D. 498, 504 (D. Utah 1997) (requiring 30(b)(6) deposition and exhaustion of other discovery methods before corporate officer could be deposed, even though request could be construed as reasonably calculated to lead to the discovery of

admissible evidence); *Mulvey*, 106 F.R.D. at 366 (quashing deposition notice of CEO because less intrusive discovery methods should be pursued first, noting that the "orderly discovery process will best be served" through a less burdensome method). The only federal case cited by the Government does not disagree. In *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98 (2001), the court ultimately allowed an apex deposition, but only after explicitly finding that the executive had unique knowledge *and* that that the plaintiff had taken numerous depositions of lower-level employees before making the request to depose the executive. *Id.* at 105. In sum, there can be no doubt that the Government is required to demonstrate that it has exhausted all less burdensome methods of discovery before seeking Mr. White's deposition.[4]

There can also be no doubt that the Government has failed to meet this requirement. Indeed, the Government's position is – as ever – that it is entitled to conduct discovery in whatever way it sees fit, and so should not be required to pursue any other, less intrusive methods. Thus, the Government has not even *tried* to suggest that all alternative discovery paths have been exhausted here. Nor could it, for despite all of the depositions that have been taken in this case, the Government has made no effort to inquire of any deponent about Mr. White's involvement (or lack thereof) in matters such as the 2001 price changes, Abbott's response to the Stark letter, or Abbott's issuance of corporate ethical guidelines relating to AWP. *Celerity, Inc.*,

---

[4] The Government also makes a flimsy "quid pro quo"-type argument throughout its brief, claiming that it should be entitled to depose Mr. White simply because Abbott has deposed several former officials who worked at CMS and who were involved in administering the Medicare and Medicaid programs. (*E.g.*, Resp. at 1, 3-4, 15.) Of course, there is no "quid pro quo" element in any of the case law governing apex depositions. Moreover, the Government's point is inapt. Abbott deposed the former CMS administrators in part because the Government's own complaint alleges (and it has stated in briefing filed on behalf of CMS) that the persons charged with operation of the Medicare and Medicaid programs believed that AWP was an actual price at which drug companies sold products to customers. (*E.g.*, Cmplt. ¶ 42.) Each of the former administrators deposed to date has denied that he or she, or anyone else he or she knew at CMS, ever actually understood AWP to be a price charged to customers, as the Government alleges. Thus, in sharp contrast to the Government's bid to depose Mr. White, Abbott's efforts to depose former CMS administrators are aimed at uncovering relevant evidence from persons with unique personal knowledge.

2007 WL 205067 at *5 ("UCT seems to believe that as long as it schedules the depositions of [apex executives] after the depositions of the lower level employees, that it has met its burden to justify these apex depositions according to the case law. This is not the law. . . . It must make a good faith effort to extract the information it seeks from interrogatories and depositions of lower-level Celerity employees.")  Having failed utterly to even seek discovery about these matters through other avenues – much less to establish why such alternative methods of discovery would be insufficient or inadequate – the Government should not now be allowed to harass Abbott and Mr. White by pursuing his deposition.

## CONCLUSION

Because the Government has not shown that Mr. White has unique or superior personal knowledge of any issue relevant to this litigation, and because it has not even attempted to exhaust other, less-burdensome means to gather relevant discovery, this Court should grant Abbott's motion, and should enter an order prohibiting the deposition of Mr. White.

Dated:  July 17, 2007

Respectfully submitted,

ABBOTT LABORATORIES INC.


By:  /s/ Brian J. Murray


James R. Daly
Tina M. Tabacchi
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on July 17, 2007, the foregoing **ABBOTT LABORATORIES INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF ITS CEO, MILES WHITE** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Brian J. Murray

CHI-1590990v2