# Exhibit L



**U.S. Department of Justice**

Civil Division, Fraud Section

---

*601 D Street, NW*  
*Ninth Floor*  
*Washington, D.C. 20004*

*Telephone: (202) 305-9300*  
*Telecopier: (202) 616-3085*

July 12, 2007

*Via Electronic Transmission*

Christopher Cook  
Jones Day  
51 Louisiana Ave., N.W.  
Washington, DC 20001-2113

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories*  
*U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Dey, Inc.*  
*U.S. ex rel. Ven-a-Care of the Florida Keys Inc. v. Roxane Laboratories, Inc.*  
MDL No. 1456/Civil Action No. 01-12257-PBS

Dear Chris:

Thank you for your letter of June 29, 2007. As always, we appreciate hearing your views on issues arising in the above-noted cases. That said, we find some of the assertions in your letter quite troubling and require further explanation from you. I am also writing with regard to the items raised in my letter to David Torborg of June 27, 2007.

Your letter contains serious, but unsupportable, allegations against the Government. For example, on page one of your letter you assert that "the Government has repeatedly made inaccurate assertions to the litigants and the Court regarding CMS's knowledge of drug prices..." You do not identify the assertions which you are claiming were inaccurate. Please do so. Without more from you, we can only respond that we obviously disagree with your statement.

On page two of the letter, you assert that the "the Government has steadfastly opposed [your] attempts to depose CMS employees." Other than the motion for a protective order relating to the deposition of agency counsel (a motion that was granted), I am unaware of any opposition mounted by the Government, to date, to any deposition you have noticed. One other deposition notice comes to mind (relating to the drafting of a pass-through regulation), but your firm suggested deferring the deposition until after the Court rules on the applicability of the deliberative process privilege in this case. Please advise us as to what specific conduct the above-quoted assertion pertains and how any Government attorney on this case has opposed your attempt to depose a CMS employee other than by virtue of the motion for a protective order relating to the preparation of a Government *amicus* brief – which, as noted above, was granted – or by agreeing with attorneys from your firm that a given deposition should be deferred.

-2-

With respect to documents from CMS's Rulemaking Support files and from the Office of Legislation, you still have not explained how this material has any bearing on Abbott's liability in this case. Much of your letter is spent arguing in broad terms that Government knowledge may be relevant in this case. However, your letter never addresses the discrete items noted in my letter of June 27th which were (1) your need for the particular material in question which relates to proposed regulations and legislation and (2) the current relevance of that material to the causes of action pled against Abbott and the remaining defenses thereto.

Your assertion that the holding set out in Judge Saris's November 2006 summary judgment ruling was based "on misstatements by the Government," such that the issue which the Court ruled upon is deemed to remain open and discovery should be taken on matters which have plainly been dispositively decided, is inexplicable. The subject addressed in the Government's *amicus* brief – the meaning of the term "AWP" – was briefed by the United States as a legal question and the arguments regarding how the term should be construed were made in accordance with *United States v. Lachman*, 387 F.3d 42 (1st Cir. 2004), a decision which clearly identifies the appropriate sources for resolving statutory or regulatory intent as a legal issue. The holding set out in the Court's November order was simply not based in any way on a factual assertion by the United States.

You further assert that Abbott needs discovery regarding what the Government knew about the fraud committed by manufacturers in connection with AWP-based pharmaceutical reimbursement. With respect to this issue, the Government has produced and is continuing to produce substantial material, for example, from HHS-OIG's Office of Evaluations and Inspection and from the Office of Audit Services. Your letter fails to offer any rationale for producing legislative and regulatory material that not only does not involve the Subject Drugs, but in several instances, does not even pertain to pharmaceutical reimbursement. This failing is significant in light of (a) the privilege which covers the documents in question and (b) the rulings the Court has made regarding key legal issues in this case.

As for Judge Saris's views on the scope of discovery, it is important to consider the full record on this point. There is no support in the record for the position that the Court has simply thrown open all the Government's files and will countenance any fishing trip on which Abbott wishes to proceed. When the issue of the appropriate scope for Abbott's discovery came up at a hearing on October 26, 2006, Judge Saris clearly expressed that issues concerning scope would be resolved via motions for protective orders. *See* Oct. 26, 2006 Transcript at 44-45. While Judge Saris, at early stages in this case expressed some general views about broad discovery themes, at the same time she was careful to refrain from ruling on the contours of the scope of the discovery that will be permitted against the Government. Over the ensuing months, there have been clear indications that the Court has acquired a more precise understanding of the elements of the defenses which may pertain in this case. For example, when denying Abbott's motion to dismiss the complaint by the State of California, Judge Saris noted the fact that the "Government knows <u>and approves</u> of the particulars of a claim for payment" may be relevant to whether there was a knowing presentation of a false claim or information. *See* Order of March 22, 2007 cite (emphasis in the original). She essentially repeated this observation during a during

-3-

a pretrial conference on April 11, 2007 and explained that the Government's approval must be explicit. *See* Transcript of April 11, 2007 at 24 (*i.e.* "go ahead guys, do the 600 percent spread"). At that hearing, the Court also indicated that she would only allow Government knowledge testimony from one of defendants' witnesses if it related to particular drugs at issue in that trial. *See id.* at 25. Finally, the scaled-back CMO in the Dey matter is a further indication that the Court recognizes that the potential defenses in this case are actually fairly narrow.

In light of the Court's very specific rulings and statements in this and other MDL cases on key legal questions and evidentiary issues, your over-broad, inchoate statements about potential relevance, and attempts to conflate discrete, and even unrelated, issues are of little help if the effort here is to analyze and narrow the matters upon which we disagree.

Thank you for your attention. I look forward to a further discussion of these issues.

Very Truly Yours,

/s/
Justin Draycott
Trial Attorney
Commercial Litigation Branch

cc:
James Breen
The Breen Law Firm

Eric Gortner
Kirkland Ellis
200 East Randolph Drive
Chicago, Illinois 60601-6636

Martin F. Murphy
Foley Hoag LLP
155 Seaport Blvd
Boston, MA 02210-2600

Neil Merkl,
Paul F. Doyle
William A. Escobar
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178