# Exhibit M

| Deponent | Position | Testimony |
|---|---|---|
| Vladeck, Bruce | Health Care Financing Administration, Administrator (1993-1997) | Q. If you could look to Part B of – of this particular regulation, 405.517, it reads that: "Payment for a drug described in Paragraph A should be based on the lower of two measurements." Correct?<br><br>A. That's correct.<br><br>MS. BROOKER: Objection. Form.<br><br>Q. Could you tell me what are the two measurements that this regulation provided for as the alternatives for paying for Part B drugs?<br><br>MS. BROOKER: Objection. Form.<br><br>A. The alternatives were either actual acquisition cost or average wholesale price.<br><br>Q. The phrase here "national average wholesale price of the drug," do you see that?<br><br>A. Yes, sir.<br><br>Q. Is it your understanding that during the approximately four years, or just over four years that you were administrator of HCFA, that to the extent that Medicare Part B paid for drugs based upon the average wholesale price of the drugs, that they did so based upon published average wholesale prices?<br><br>A. Yes, that was my understanding.<br><br>B. Vladeck Dep. Tr. at 112-13<br><br>--------------------------------------------<br><br>Q. I guess to put it another way, you understood, between 1993 and 1997, that AWP did not represent the average acquisition cost for a pharmaceutical?<br><br>A. That's correct. We -- |

| Deponent | Position | Testimony |
|---|---|---|
| | | MS. BROOKER: Objection. Form.<br><br>MR. BREEN: Form.<br><br>A. -- we distinguished acquisition cost from average wholesale price, and believed that, in general, it was likely to be lower.<br><br>B. Vladeck Dep. Tr. at 152<br><br>--------------------------------------------<br><br>Q. And the AWP in that legislation [Balanced Budget Act of 1997] did you understand that in the same way you understood AWP in the regulation from 1992?<br><br>A. Yes.<br><br>MS. BROOKER: Objection. Form.<br><br>Q. And so that would refer to a published average wholesale price. Correct?<br><br>A. That was our understanding of it, yes.<br><br>B. Vladeck Dep. Tr. at 278-79 |
| Booth, Charles | Health Care Financing Administration, Director of Financial Services in the Office of Financial Management (1966 - 2001); Director of the Office of Hospital Policy in the Bureau of Policy Development (1994 -1997); Director of Office of | Q. It says, "The AWP is reported in the Red Book and other pricing publications and databases used by the pharmaceutical industry." Is that consistent with your understanding of what AWP was in -- prior to December 1997?<br><br>MR. GOBENA: Object to the form, asked and answered.<br><br>A. It was my understanding in 1996 and 1997.<br><br>Q. And the next sentence states, "Historically, it has been the AWP that carriers have used to |

| Deponent | Position | Testimony |
| --- | --- | --- |
| | Payment Policy (1984-1994); Positions Regarding Medicare Billing Practices and Computer Claims Processing (1966 -1983) | develop Medicare reimbursement for prescription drugs." Was it your understanding in 1997 that historically, carriers had used the AWP published in the Red Book and other pricing publications and databases to develop Medicare reimbursement for prescription drugs?<br><br>A. Well, I would quibble with "historically," because I believe that was only from 1992 on.<br><br>C. Booth Dep. Tr. at 103-104 |
| Ragone, Linda | Office of the Inspector General, Deputy Regional Inspector General (1998 – Present); Program Analyst (1989-1998) | Q. Okay. Did you understand Congress to be directing HCFA to pay 95 percent of the published AWP?<br><br>MR. DRAYCOTT: Objection.<br><br>THE WITNESS: I believe when I read that that -- well, I don't -- I don't have it in front of me, so I believe that it was supposed to be 95 percent of average wholesale price.<br><br>BY MR. COOK: And you understood that to be what is published in Red Book, Blue Book, Medispan, right?<br><br>A. That's what I took it to mean.<br><br>L. Ragone Dep. Tr. at 552 |
| Tawes, David | Office of the Inspector General, Director of the Medicare and Medicaid Drug Pricing Unit (2005- Present); Program Analyst (1995 - 2005) | THE WITNESS: I don't remember any specific conversations about EAC. The conversations would have been just that Medicare is required to pay 95 percent of AWP.<br><br>BY MR. TORBORG: And your understanding of that [AWP] relates to what was published in Red Book or other price listings, right?<br><br>MR. NEAL: Objection as to form. You can answer.<br><br>THE WITNESS: Yes. |

| Deponent | Position | Testimony |
| --- | --- | --- |
| | | D. Tawes 4/24/07 Dep. Tr. at 141-142<br>--------------------------------------------<br><br>BY MR. TORBORG : . . . Did you believe that the term "average wholesale price" was commonly understood in the industry?<br><br>MR. NEAL: Objection as to form.<br><br>THE WITNESS: Yes.<br><br>BY MR. TORBORG: And how was it commonly understood in the industry?<br><br>MR. NEAL: The same objection.<br><br>THE WITNESS: I'm not sure that I knew the exact definition that the industry would use. However, I believe that the industry obviously knew that AWPs were not based on -- on wholesale prices; that it was simply a -- a price for their products that they wanted to list in compendia.<br><br>BY MR. TORBORG: So it was your understanding that it was commonly understood in the industry that the term "average wholesale price" referred to prices published in pricing compendia such as Red Book or Blue Book?<br><br>MR. NEAL: Objection as to form.<br><br>THE WITNESS: Yes.<br><br>D. Tawes 4/25/07 Dep. Tr. at 481-82. |
| Molyneaux, Nancy | Office of the Inspector General, Program Analyst (1987-Present) | Q. What did you mean when you used the word average wholesale price in that sentence?<br><br>A. That's just the published wholesale price, average wholesale price. |

| Deponent | Position | Testimony |
|---|---|---|
| | | Q. And published in publications such as Red Book?<br><br>A. Yes.<br><br>Q. When you use the term average wholesale price in your work at OIG, did it mean to refer to the price published?<br><br>A. As far as I recall.<br><br>N. Molyneaux Dep. Tr. at 158-59. |
| Sernyak, Amy | Office of the Inspector General, Program Analyst (1995-Present) | BY MR. TORBORG: Is the language of this --<br><br>A. That sentence?<br><br>Q. That sentence consistent with your understanding that the term average wholesale price referred to prices published in books like Red Book?<br><br>MR. NEAL: Same objection.<br><br>MR. WINGET-HERNANDEZ: Objection to form.<br><br>THE WITNESS: Yeah, I mean, it says in parentheses, average wholesale price as published in Red Book and similar price listings.<br><br>BY MR. TORBORG: Do you recall there being any discussion during your time at OIG about what the term average wholesale price meant?<br><br>A. No, I mean, just that it is average wholesale price.<br><br>Q. As published in Red Book and other price listings?<br><br>A. Right. |

| Deponent | Position | Testimony |
|---|---|---|
| | | Q. No dispute about that at all?<br><br>MR. WINGET-HERNANDEZ: Objection.<br><br>MS. POLLACK: Objection.<br><br>BY MR. TORBORG: That you are aware of?<br><br>MR. NEAL: Objection as to form. You can answer.<br><br>THE WITNESS: No.<br><br>BY MR. TORBORG: Have you ever heard anyone suggest that the term average wholesale price meant something other than prices published in Red Book or other price listings?<br><br>MR. NEAL: Objection as to form. You can answer.<br><br>THE WITNESS: Meant something other than that, no.<br><br>A. Sernyak Dep. Tr. at 121-123 |
| Vito, Robert | Office of the Inspector General, Regional Inspector General (1995- Present), Deputy Regional Inspector General (1990-1995), Office of Audit Services (1978-1990) | Q. . . . When you used the term "average wholesale price" in your work at OIG, did you equate it with the prices that were published in Red Book and other price listings?<br><br>MR. AZORSKY: Objection to form --<br><br>MR. NEAL: Objection as to form; asked and answered.<br><br>THE WITNESS: I -- I -- I -- I have said that AWP is what the Medicare program based its reimbursement on and they were in the Blue – Blue Book and Red Book.<br><br>Q. Can you answer my question, yes or no?<br><br>MR. AZORSKY: Objection to -- |

| Deponent | Position | Testimony |
| --- | --- | --- |
| | | BY MR. TORBORG: And just tell me if you can't. If you can't, that's fine –<br><br>MR. AZORSKY: Objection to form.<br><br>MR. NEAL: Same objection.<br><br>THE WITNESS: I'd like to hear the question one more time.<br><br>BY MR. TORBORG: When you use the term "average wholesale price" or "AWP" in your work at OIG, did you equate it with what was published in Red Book and similar price listings?<br><br>MR. AZORSKY: Objection to form.<br><br>MR. NEAL: Objection as to form.<br><br>MR. WINGET-HERNANDEZ: Objection.<br><br>THE WITNESS: I -- I -- I -- I -- I guess the answer's yes.<br><br>Vito Dep. at 145-47. |

Vladeck, Ph.D., Bruce C. May 4, 2007
New York, NY

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ----------------------------------X | MDL NO. 1456 |
| IN RE: PHARMACEUTICAL INDUSTRY : | CIVIL ACTION: |
| AVERAGE WHOLESALE PRICE LITIGATION : | 01-CV-12257-PBS |
| ----------------------------------X | |
| THIS DOCUMENT RELATES TO: : | |
| U.S. ex rel. Ven-A-Care of the : | CIVIL ACTION: |
| Florida Keys, Inc. v. Abbott : | 06-CV-11337-PBS |
| Laboratories, Inc. : | |
| ----------------------------------X | |

IN THE CIRCUIT COURT OF

MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| ----------------------------------X | |
| STATE OF ALABAMA, : | CASE NO. |
| Plaintiff, : | CV-05-219 |
| v. : | |
| ABBOTT LABORATORIES, INC., : | JUDGE |
| et al., : | CHARLES PRICE |
| Defendants. : | |
| ----------------------------------X | |

Henderson Legal Services
202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9

STATE OF WISCONSIN CIRCUIT COURT DANE COUNTY
---------------------------------X
STATE OF WISCONSIN, : CASE NO.
Plaintiff, : 04-CV-1709
v. :
AMGEN INC., et al., :
Defendants. :
---------------------------------X

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT
---------------------------------X
STATE OF SOUTH CAROLINA, and : STATE OF
HENRY D. McMASTER, in his official : SOUTH CAROLINA
capacity as Attorney General for : COUNTY OF
the State of South Carolina, : RICHLAND
Plaintiff, :
v. : CIVIL ACTION:
MYLAN LABORATORIES, INC. : 07-CP-40-0283
Defendant. :
---------------------------------X

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA
THE STATE OF FLORIDA
ex rel.
------------------x
VEN-A-CARE OF THE FLORIDA :
KEYS, INC., a Florida :
Corporation, by and through its :
principal officers and directors, :
ZACHARY T. BENTLEY and :
T. MARK JONES, :
Plaintiffs, :
vs. : Civil Action
MYLAN LABORATORIES, INC.; MYLAN : No.: 98-3032G
PHARMACEUTICALS INC.; NOVOPHARM : Judge:
LTD., SCHEIN PHARMACEUTICAL, INC.; : William L.
TEVA PHARMACEUTICAL INDUSTRIES : Gary
LTD., TEVA PHARMACEUTICAL USA; :
and WATSON PHARMACEUTICALS, INC. :
Defendants. :
------------------x

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
------------------x
STATE OF MISSOURI, ex rel., :
JEREMIAH W. (JAY) NIXON, :
Attorney General, :
and :
MISSOURI DEPARTMENT OF SOCIAL :
SERVICES, DIVISION OF MEDICAL : Case No.:
SERVICES, : 054-1216
Plaintiffs, : Division
: No. 31
vs. :
DEY INC., DEY, L.P., MERCK KGaA, :
EMD, INC., WARRICK :
PHARMACEUTICALS CORPORATION, :
SCHERING-PLOUGH CORPORATION, and :
SCHERING CORPORATION, :
Defendants. :
------------------x

New York, New York
Friday, May 4, 2007

Videotaped Deposition of BRUCE C. VLADECK, Ph.D., a witness herein, called for examination by counsel for Abbott Laboratories in the above-entitled matter, pursuant to Subpoena, the witness being duly sworn by JOMANNA DEROSA, a Notary Public in and for New York, taken at the offices of Jones Day, 222 East 41st Street, New York, New York, at 8:38 a.m. on Friday, May 4, 2007, and the proceedings being taken down by Stenotype by JOMANNA DEROSA, and transcribed under her direction.

a005168d-477f-4afb-97fe-d27a3af7b9a9

the methodology for paying for Part B drugs that was in place from after the implementing regulations for over 90 were adopted until the regulations implementing the relevant provisions of the Balanced Budget Act were adopted in 1998.

Q. And so, for the entire time that you were administrator of HCFA, from May of 1993 until September of 1997, this regulation would have described how Medicare Part B reimbursed providers for certain drugs that were reimbursable under Medicare Part B. Correct?

A. That's -- that's my --

MS. BROOKER: Objection. Form. Sorry. Go ahead.

THE WITNESS: Sorry.

A. That -- that's my understanding, yes.

Q. If you could look to Part B of -- of this particular regulation, 405.517, it reads that:

"Payment for a drug described in Paragraph A should be based on the lower of two measurements."

Correct?

A. That's correct.

MS. BROOKER: Objection. Form.

Q. Could you tell me what are the two measurements that this regulation provided for as the alternatives for paying for Part B drugs?

MS. BROOKER: Objection. Form.

A. The alternatives were either actual acquisition cost or average wholesale price.

Q. The phrase here "national average wholesale price of the drug," do you see that?

A. Yes, sir.

Q. Is it your understanding that during the approximately four years, or just over four years that you were administrator of HCFA, that to the extent that Medicare Part B paid for drugs based upon the average wholesale price of the drugs, that they did so based upon published average wholesale prices?

A. Yes, that was my understanding.

Q. And just some -- some basics of -- of -- of how this regulation works. To whom is this

a005168d-477f-4afb-97fe-d27a3af7b9a9

customer?

MS. BROOKER: Objection. Form.

MR. BREEN: Objection. Form.

A. Again, I would have expected there were some customers who, in fact, paid the average wholesale price, but I didn't not believe that it was an accurate reflection of the average revenue received by the manufacturer for -- or the wholesaler for a particular product.

Q. I guess to put it another way, you understood, between 1993 and 1997, that AWP did not represent the average acquisition cost for a pharmaceutical?

A. That's correct. We --

MS. BROOKER: Objection. Form.

MR. BREEN: Form.

A. -- we distinguished acquisition cost from average wholesale price, and believed that, in general, it was likely to be lower.

Q. I would like to get back a bit to the -- we were talking a bit about the relationship between published average wholesale prices and

make it through the House legislative process. Whether at the committee level or at the full House level I don't recall.

Q. And that would be for the proposed 1998 budget?

A. That would be in the Balanced Budget Act which addressed the Fiscal 1998 budget.

Q. And that would be the legislation that legislated that Medicare Part B reimbursement would be at 95 percent of AWP. Correct?

A. I don't recall what our original proposal was, and I don't recall the details of the legislative process. I think it came out the other end at 95 percent.

Q. Right. The ultimate legislation.

A. The ultimate legislation called for 95 percent of AWP, yes.

Q. And the AWP in that legislation, did you understand that in the same way you understood AWP in the regulation from 1992?

A. Yes.

MS. BROOKER: Objection. Form.

Q. And so that would refer to a published average wholesale price. Correct?

A. That was our understanding of it, yes.

Q. And the next cc is Teruni, T-E-R-U-N-I, Rosengren, R-O-S-E-N-G-R-E-N, with the GAO. Do you know who Mr. or Ms. Rosengren is?

A. No, I do not.

Q. There is Michael Hertz, United States Department of Justice. Do you know who Mr. Hertz is?

A. Mr. Hertz was a senior person in the civil litigation side of the Department of Justice, from my understanding. I, in fact, had met Mr. Hertz and worked with him on an other number of occasions.

Q. And the next are Mr. Breen and Mr. Wampler from the Wampler, Buchanan and Breen firm, Mr. Breen here in the flesh, and Mr. Wampler. Do you -- and at the time did you know who Mr. Wampler and Mr. Breen were?

A. No. I had not had the pleasure.

Q. Okay. I'd like to show you one last

a005168d-477f-4afb-97fe-d27a3af7b9a9

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL | : | MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | : | CIVIL ACTION: |
| PRICE LITIGATION | : | 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | : | |
| U.S. ex rel. Ven-a-Care of | : | Judge Patti B. Saris |
| the Florida Keys, Inc. v. | : | |
| Abbott Laboratories, Inc., | : | Chief Magistrate |
| No. 06-CV-11337-PBS | : | Judge Marianne B. |
| - - - - - - - - - - - - - - - - -x | | Bowler |

IN THE CIRCUIT COURT OF

MONTGOMERY COUNTY, ALABAMA

- - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| STATE OF ALABAMA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No.: CV-05-219 |
| ABBOTT LABORATORIES, INC., | : | Judge Charles Price |
| et al., | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - -x

bd14de97-b1b2-417d-8ba1-2a1c3fba062a

Page 2

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

THE STATE OF FLORIDA
ex rel.
------------------x
VEN-A-CARE OF THE FLORIDA :
KEYS, INC., a Florida :
Corporation, by and through its :
principal officers and directors, :
ZACHARY T. BENTLEY and :
T. MARK JONES, :
Plaintiffs, :
vs. : Civil Action
MYLAN LABORATORIES INC.; MYLAN : No.: 98-3032G
PHARMACEUTICALS INC.; NOVOPHARM : Judge: William
LTD., SCHEIN PHARMACEUTICAL, INC.;: L. Gary
TEVA PHARMACEUTICAL INDUSTRIES :
LTD., TEVA PHARMACEUTICAL USA; :
and WATSON PHARMACEUTICALS, INC., :
Defendants. :
------------------x

Page 3

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

------------------x
STATE OF MISSOURI, ex rel., :
JEREMIAH W. (JAY) NIXON, :
Attorney General, :
and :
MISSOURI DEPARTMENT OF SOCIAL :
SERVICES, DIVISION OF MEDICAL : Case No.:
SERVICES, : 054-1216
Plaintiffs, : Division No. 31
vs. :
DEY INC., DEY, L.P., MERCK KGaA, :
EMD, INC., WARRICK :
PHARMACEUTICALS CORPORATION, :
SCHERING-PLOUGH CORPORATION, and :
SCHERING CORPORATION, :
Defendants. :
------------------x

Page 4

Washington, D.C.
Monday, April 23, 2007

Videotaped Deposition of CHARLES R. BOOTH, a witness herein, called for examination by counsel for Abbott Laboratories in the above-entitled matter, pursuant to notice, the witness being duly sworn by KAREN YOUNG, a Notary Public in and for the District of Columbia, taken at the offices of Jones Day, 51 Louisiana Avenue, Northwest, Washington, D.C., at 9:41 a.m. on Monday, April 23, 2007, and the proceedings being taken down by Stenotype by KAREN YOUNG, and transcribed under her direction.

Page 5

APPEARANCES:
On Behalf of the United States of America:

GEJAA T. GOBENA, ESQ.
LAURIE A. OBEREMBT, ESQ.
U.S. Department of Justice
Civil Division
601 D Street, Northwest
PHB - 9028/P.O. Box 261
Washington, D.C. 20044
Gejaa.Gobena@usdoj.gov
(202) 307-1088
(by telephone)

ANA MARIA MARTINEZ, ESQ.
Assistant United States Attorney
Southern District of Florida
99 N.E. Fourth Street
Miami, Florida 33132
Ana.Maria.Martinez@usdoj.gov
(305) 961-9431

with respect to hospitals, between, again, 1984 and 1997.

Q. If you could turn please to the executive summary of this particular Office of Inspector General report, just so the record's clear, the report at least purports to state a purpose as follows: To compare Medicare allowances for prescription drugs and drug acquisition prices currently available to the physician and supplier communities. Do you see that?

A. Yes.

Q. The third paragraph down that begins, "On January 1, 1998" --

A. Yes.

Q. The sixth line down, the sentence begins, "The AWP"?

A. Okay.

Q. It says, "The AWP is reported in the Red Book and other pricing publications and databases used by the pharmaceutical industry." Is that consistent with your understanding of what AWP was in -- prior to December 1997?

bd14de97-b1b2-417d-8ba1-2a1c3fba062a

MR. GOBENA: Object to the form, asked and answered.

A. It was my understanding in 1996 and 1997.

Q. And the next sentence states, "Historically, it has been the AWP that carriers have used to develop Medicare reimbursement for prescription drugs." Was it your understanding in 1997 that historically, carriers had used the AWP published in the Red Book and other pricing publications and databases to develop Medicare reimbursement for prescription drugs?

A. Well, I would quibble with "historically," because I believe that was only from 1992 on.

Q. Prior to 1992, do you know what it is that carriers used to calculate Medicare reimbursement for prescription drugs?

A. They were supposed to use reasonable charge.

Q. If you turn the page to page Roman numeral small 2 in bold, in the first -- sorry, the second finding of this particular report reads, "For more than one-third of the 22 drugs reviewed, Medicare

bd14de97-b1b2-417d-8ba1-2a1c3fba062a

Ragone, Linda - Vol. II April 18, 2007
Philadelphia, PA

Page 412

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

VOLUME II

-----------------------------------X MDL NO. 1456

IN RE: PHARMACEUTICAL INDUSTRY : CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION : 01-CV-12257-PBS

-----------------------------------X

THIS DOCUMENT RELATES TO: :

U.S. ex rel. Ven-A-Care of the : CIVIL ACTION:

Florida Keys, Inc. v. Abbott : 06-CV-11337-PBS

Laboratories, Inc. :

-----------------------------------X

IN THE CIRCUIT COURT OF

MONTGOMERY COUNTY, ALABAMA

-----------------------------------X

STATE OF ALABAMA, : CASE NO.

Plaintiff, : CV-05-219

v. :

ABBOTT LABORATORIES, INC., : JUDGE

et al., : CHARLES PRICE

Defendants. :

-----------------------------------X

Henderson Legal Services
202-220-4158

cca9fdc6-9c6f-42ee-a6a6-cbbe658fa4b8

Page 413

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
----------------------------------X
THE COMMONWEALTH OF MASSACHUSETTS : CIVIL ACTION NO
Plaintiff, : 03-CV-11865-PBS
v. :
MYLAN LABORATORIES, INC., et al. :
Defendants. :
----------------------------------X
IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
----------------------------------X
STATE OF MISSOURI, ex rel. : CASE NO.
JEREMIAH W. (JAY) NIXON, Attorney : 054-1216
General, and MISSOURI DEPT. OF : DIVISION
SOCIAL SVCS, DIV. OF MEDICAL SVCS.,: NO. 31
Plaintiffs, :
v. :
DEY INC., et al. :
Defendants. :
----------------------------------X.

Page 414

SUPERIOR COURT OF NEW JERSEY
UNION COUNTY
----------------------------------X
CLIFFSIDE NURSING HOME, INC., on : LAW DIVISION
behalf of itself and all others : DOCKET NO.
similarly situated, as defined : UNN-L-2329-04
herein, :
Plaintiffs, :
v. :
DEY, INC., et al. :
Defendants. :
----------------------------------X

STATE OF WISCONSIN CIRCUIT COURT DANE COUNTY
----------------------------------X
STATE OF WISCONSIN, : CASE NO.
Plaintiff, : 04-CV-1709
v. :
AMGEN INC., et al., :
Defendants. :
----------------------------------X

Page 415

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT
----------------------------------X
STATE OF SOUTH CAROLINA, and : STATE OF
HENRY D. McMASTER, in his official : SOUTH CAROLINA
capacity as Attorney General for : COUNTY OF
the State of South Carolina, : RICHLAND
Plaintiff, :
v. : CIVIL ACTION NO.
WARRICK PHARMACEUTICALS : 2006-CP-40-4390
CORPORATION, et al. : 2006-CP-40-4399
Defendants. :
----------------------------------X
STATE OF SOUTH CAROLINA, and : STATE OF
HENRY D. McMASTER, in his official : SOUTH CAROLINA
capacity as Attorney General for : COUNTY OF
the State of South Carolina, : RICHLAND
Plaintiff, :
v. : CASE NO.
ABBOTT LABORATORIES, INC. : 2006-CP-40-4394
Defendant. :
----------------------------------X

Page 416

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII
----------------------------------X
STATE OF HAWAII, : CASE NO.
Plaintiff, : 06-1-0720-04 EEH
v. :
ABBOTT LABORATORIES, INC., et al. : JUDGE EDEN
Defendants. : ELIZABETH HIFO
----------------------------------X

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA
----------------------------------X
ROBERT J. SWANSTON, individually : CIVIL ACTION NO.
and on behalf of himself and all : CV 2002-004988
others similarly situated, :
Plaintiff, :
v. :
TAP PHARMACEUTICAL PRODUCTS, INC., :
et al., :
Defendants. :
----------------------------------X

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT - DIV. II
----------------------------------X
COMMONWEALTH OF KENTUCKY, : CIVIL ACTION NO.
Plaintiff, : 03-CI-1134
v. :
ABBOTT LABORATORIES, INC., et al. :
Defendants. :
----------------------------------X

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT - DIV. I
----------------------------------X
COMMONWEALTH OF KENTUCKY, ex rel. : CIVIL ACTION NO
GREGORY D. STUMBO, Attorney General: 03-CI-1487
Plaintiff, :
v. :
ALPHAPHARMA, INC., et al. :
Defendants. :
- - -

Continuation of the videotaped deposition of LINDA RAGONE was taken, pursuant

to notice, at MORGAN LEWIS & BOCKIUS, LLP, 1701 Market Street, Philadelphia, Pennsylvania, on Wednesday, April 18, 2007, beginning at 9:04 a.m., before M. Kathleen Muino, Professional Shorthand Reporter, Notary Public; Richard Kanzinger, Jr., Videographer, there being present:

APPEARANCES:

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
BY: JOHN K. NEAL, ESQUIRE
601 D Street, N.W.
Washington, D.C. 20004
Phone: (202) 307-0405
John.Neal2@usdoj.gov
Representing the United States

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
BY: JUSTIN DRAYCOTT, ESQUIRE
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-9300
justin.draycott@usdoj.gov
Representing the United States

APPEARANCES: (CONTINUED)

APPEARANCES: (CONTINUED)
U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES
Office of Counsel to the Inspector General
Administrative and Civil Remedies Branch
BY: NANCY W. BROWN, ESQUIRE
Room 5527, Cohen Building
330 Independence Avenue, S.W.
Washington, D.C. 20201
Phone: (202) 205-9430
Nancy.Brown@oig.hhs.gov
Representing the United States

BERGER & MONTAGUE, P.C.
BY: ROSLYN G. POLLACK, ESQUIRE
1622 Locust Street
Philadelphia, Pennsylvania 19103-6305
Phone: (215) 875-3000
rpollack@bm.net
Representing Ven-A-Care

APPEARANCES: (CONTINUED)

cca9fdc6-9c6f-42ee-a6a6-cbbe658fa4b8

her feel worse.

Q. In the first line: I guess you guys already know the sad truth. Right?

A. Yes, that's what she wrote.

Q. Were you disappointed that Congress reimbursed [sic] Medicare reimbursement by only 5 percent?

MR. DRAYCOTT: Objection.

THE WITNESS: I remember being happy that something had happened, and in our position, it -- that doesn't always happen. So I remember being happy that some change had been made. I'm not sure that -- I think I probably felt at the time that linking it to AWP may not be a good idea either. But I think it -- I believe -- I thought -- I remember being happy that something had happened.

BY MR. COOK:

Q. And when you heard -- did you review -- by the way, did you review the statute; did you read the statute when it came out?

A. I believe I did when it came out.

Q. Okay. Did you understand Congress to be

directing HCFA to pay 95 percent of the published AWP?

MR. DRAYCOTT: Objection.

THE WITNESS: I believe when I read that that -- well, I don't -- I don't have it in front of me, so I believe that it was supposed to be 95 percent of average wholesale price.

BY MR. COOK:

Q. And you understood that to be what is published in Red Book, Blue Book, Medispan, right?

A. That's what I took it to mean.

Q. Do you recall having any conversations with Mary Beth Clarke or Robert Vito about the legislation?

A. I don't remember them.

Q. If you could go back very quickly to, I don't have the exhibit number, I apologize, the very, very large document.

A. The big pile, yeah.

Q. That's Exhibit Abbott 089. Do you recall whether you passed on that underlying information to anybody at HCFA?

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------X MDL NO. 1456

IN RE: PHARMACEUTICAL INDUSTRY : CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION : 01-CV-12257-PBS

-----------------------------------X

THIS DOCUMENT RELATES TO: :

U.S. ex rel. Ven-A-Care of the : CIVIL ACTION:

Florida Keys, Inc. v. Abbott : 06-CV-11337-PBS

Laboratories, Inc. :

-----------------------------------X

IN THE CIRCUIT COURT OF

MONTGOMERY COUNTY, ALABAMA

-----------------------------------X

STATE OF ALABAMA, : CASE NO.

Plaintiff, : CV-05-219

v. :

ABBOTT LABORATORIES, INC., : JUDGE

et al., : CHARLES PRICE

Defendants. :

-----------------------------------X

bcab4204-38f1-4b48-ab34-7037316b0f5a

Page 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
----------------------------------X
THE COMMONWEALTH OF MASSACHUSETTS : CIVIL ACTION NO
Plaintiff, : 03-CV-11865-PBS
v. :
MYLAN LABORATORIES, INC., et al. :
Defendants. :
----------------------------------X

SUPERIOR COURT OF NEW JERSEY
UNION COUNTY
----------------------------------X
CLIFFSIDE NURSING HOME, INC., on : LAW DIVISION
behalf of itself and all others : DOCKET NO.
similarly situated, as defined : UNN-L-2329-04
herein, :
Plaintiffs, :
v. :
DEY, INC., et al. :
Defendants. :
----------------------------------X

Page 3

STATE OF WISCONSIN CIRCUIT COURT DANE COUNTY
----------------------------------X
STATE OF WISCONSIN, : CASE NO.
Plaintiff, : 04-CV-1709
v. :
AMGEN INC., et al., :
Defendants. :
----------------------------------X

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT
----------------------------------X
STATE OF SOUTH CAROLINA, and : STATE OF
HENRY D. McMASTER, in his official : SOUTH CAROLINA
capacity as Attorney General for : COUNTY OF
the State of South Carolina, : RICHLAND
Plaintiff, :
v. : CASE NO.
ABBOTT LABORATORIES, INC. : 2006-CP-40-4394
Defendant. :
----------------------------------X

Page 4

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII
----------------------------------X
STATE OF HAWAII, : CASE NO.
Plaintiff, : 06-1-0720-04 EEH
v. :
ABBOTT LABORATORIES, INC., et al. : JUDGE EDEN
Defendants. : ELIZABETH HIFO
----------------------------------X

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT - DIV. II
----------------------------------X
COMMONWEALTH OF KENTUCKY, : CIVIL ACTION NO.
Plaintiff, : 03-CI-1134
v. :
ABBOTT LABORATORIES, INC., et al. :
Defendants. :
----------------------------------X

Page 5

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT - DIV. I
----------------------------------X
COMMONWEALTH OF KENTUCKY, ex rel. : CIVIL ACTION NO
GREGORY D. STUMBO, Attorney General: 03-CI-1487
Plaintiff, :
v. :
ALPHAPHARMA, INC., et al. :
Defendants. :
----------------------------------X
---

Videotaped deposition of DAVID TAWES was taken, pursuant to notice, at MORGAN LEWIS & BOCKIUS, LLP, 1701 Market Street, Philadelphia, Pennsylvania, on Tuesday, April 24, 2007, beginning at 8:45 a.m., before M. Kathleen Muino, Professional Shorthand Reporter, Notary Public; Richard Kanzinger, Jr., Videographer, there being present:

You can answer.

THE WITNESS: That however, whether it's a state or Medicare, choose to calculate -- or choose to estimate what providers are paying for drugs.

BY MR. TORBORG:

Q. Do you recall any discussions at OIG about the fact that after the Balanced Budget Act of 1997, Medicare Part B was required to pay AWP and could no longer use EAC?

MR. WINGET-HERNANDEZ: Objection to form.

MR. NEAL: Object to the form.

You can answer.

THE WITNESS: I don't remember any specific conversations about EAC. The conversations would have been just that Medicare is required to pay 95 percent of AWP.

BY MR. TORBORG:

Q. And your understanding of that relates to what was published in Red Book or other price listings, right?

MR. NEAL: Objection as to form.

bcab4204-38f1-4b48-ab34-7037316b0f5a

You can answer.

THE WITNESS: Yes.

BY MR. TORBORG:

Q. Are you familiar with any law, statute, regulation that requires manufacturers to cause AWPs to be reported for their products in any -- any particular way?

MR. NEAL: Objection as to form.

MS. POLLACK: Object to form.

MR. NEAL: It calls for a legal conclusion.

You can answer.

THE WITNESS: No.

BY MR. TORBORG:

Q. Have you ever had discussions about the fact that there is no law or regulation governing how AWPs should be reported?

MR. NEAL: The same objection.

MR. WINGET-HERNANDEZ: Objection.

THE WITNESS: Yes.

BY MR. TORBORG:

Q. What do you recall about those

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

VOLUME II

-----------------------------------X MDL NO. 1456

IN RE: PHARMACEUTICAL INDUSTRY : CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION : 01-CV-12257-PBS

-----------------------------------X

THIS DOCUMENT RELATES TO: :

U.S. ex rel. Ven-A-Care of the : CIVIL ACTION:

Florida Keys, Inc. v. Abbott : 06-CV-11337-PBS

Laboratories, Inc. :

-----------------------------------X

IN THE CIRCUIT COURT OF

MONTGOMERY COUNTY, ALABAMA

-----------------------------------X

STATE OF ALABAMA, : CASE NO.

Plaintiff, : CV-05-219

v. :

ABBOTT LABORATORIES, INC., : JUDGE

et al., : CHARLES PRICE

Defendants. :

-----------------------------------X

58feec2f-99ac-42be-8c4e-803a680a2c55

Page 297

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
----------------------------------X
THE COMMONWEALTH OF MASSACHUSETTS : CIVIL ACTION NO
Plaintiff, : 03-CV-11865-PBS
v. :
MYLAN LABORATORIES, INC., et al. :
Defendants. :
----------------------------------X

SUPERIOR COURT OF NEW JERSEY
UNION COUNTY
----------------------------------X
CLIFFSIDE NURSING HOME, INC., on : LAW DIVISION
behalf of itself and all others : DOCKET NO.
similarly situated, as defined : UNN-L-2329-04
herein, :
Plaintiffs, :
v. :
DEY, INC., et al. :
Defendants. :
----------------------------------X

Page 298

STATE OF WISCONSIN CIRCUIT COURT DANE COUNTY
----------------------------------X
STATE OF WISCONSIN, : CASE NO.
Plaintiff, : 04-CV-1709
v. :
AMGEN INC., et al., :
Defendants. :
----------------------------------X

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT
----------------------------------X
STATE OF SOUTH CAROLINA, and : STATE OF
HENRY D. McMASTER, in his official : SOUTH CAROLINA
capacity as Attorney General for : COUNTY OF
the State of South Carolina, : RICHLAND
Plaintiff, :
v. : CASE NO.
ABBOTT LABORATORIES, INC. : 2006-CP-40-4394
Defendant. :
----------------------------------X

Page 299

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII
----------------------------------X
STATE OF HAWAII, : CASE NO.
Plaintiff, : 06-1-0720-04 EEH
v. :
ABBOTT LABORATORIES, INC., et al. : JUDGE EDEN
Defendants. : ELIZABETH HIFO
----------------------------------X

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT - DIV. II
----------------------------------X
COMMONWEALTH OF KENTUCKY, : CIVIL ACTION NO.
Plaintiff, : 03-CI-1134
v. :
ABBOTT LABORATORIES, INC., et al. :
Defendants. :
----------------------------------X

Page 300

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT - DIV. I
----------------------------------X
COMMONWEALTH OF KENTUCKY, ex rel. : CIVIL ACTION NO
GREGORY D. STUMBO, Attorney General: 03-CI-1487
Plaintiff, :
v. :
ALPHAPHARMA, INC., et al. :
Defendants. :
----------------------------------X
---

Continuation of the videotaped deposition of DAVID TAWES was taken, pursuant to notice, at MORGAN LEWIS & BOCKIUS, LLP, 1701 Market Street, Philadelphia, Pennsylvania, on Wednesday, April 25, 2007, beginning at 8:09 a.m., before M. Kathleen Muino, Professional Shorthand Reporter, Notary Public; Richard Kanzinger, Jr., Videographer, there being present:

58feec2f-99ac-42be-8c4e-803a680a2c55

published, quote, Medicaid, end quote, AWP, even as First DataBank continues to publish the, quote, regular, end quote, AWP data. We believe that the industry standard definition of the term AWP is well-understood as a single published benchmark of the price of a given manufacturer's product in a given compendia. For a compendium to publish two different AWPs is a serious change to the concept of using AWP as a single benchmark price for a product.

Mr. Tawes, do you recall any discussions -- well, let me -- let me strike that.

Did you believe that the term "average wholesale price" was commonly understood in the industry?

MR. NEAL: Objection as to form.

THE WITNESS: Yes.

BY MR. TORBORG:

Q. And how was it commonly understood in the industry?

MR. NEAL: The same objection.

THE WITNESS: I'm not sure that I knew

the exact definition that the industry would use. However, I believe that the industry obviously knew that AWPs were not based on -- on wholesale prices; that it was simply a -- a price for their products that they wanted to list in compendia.

BY MR. TORBORG:

Q. So it was your understanding that it was commonly understood in the industry that the term "average wholesale price" referred to prices published in pricing compendia such as Red Book or Blue Book?

MR. NEAL: Objection as to form.

THE WITNESS: Yes.

BY MR. TORBORG:

Q. Do you agree with the statement made in this form letter, that changing the definition of average wholesale price away from what was ever in the pricing compendia to something else was a change in Medicare statutes?

MR. NEAL: I'll object to the form.

THE WITNESS: No.

BY MR. TORBORG:

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------x

IN RE: PHARMACEUTICAL : MDL NO. 1456
INDUSTRY AVERAGE WHOLESALE : CIVIL ACTION
PRICE LITIGATION : 01-CV-12257-PBS
vs. :
THIS DOCUMENT RELATES TO : HIGHLY
U.S. ex rel. Ven-A-Care of : CONFIDENTIAL
The Florida Keys, Inc. :
v. Abbott Laboratories, :
Inc., No. 06-CV-11337-PBS :

---------------------------x

Oral Deposition of NANCY MOLYNEAUX, was taken pursuant to notice at the Law Offices of Morgan Lewis, 1701 Market Street, Philadelphia, Pennsylvania, on Thursday, January 11, 2007, beginning at 10:00 a.m., before Jeanne Christian, Court Reporter-Notary Public, there being present.

d35eef33-262d-44a5-ba27-3955dc624463

costs; (3), fee schedules; (4), global rates; and (5), previous Medicare rates.

Do you see that?

A. Yes, I do.

Q. And this is a report that you wrote; correct?

A. Yes.

Q. What did you mean when you used the word average wholesale price in that sentence?

A. That's just the published wholesale price, average wholesale price.

Q. And published in publications such as Red Book?

A. Yes.

Q. When you use the term average wholesale price in your work at OIG, did it mean to refer to the price published?

A. As far as I recall.

Q. You did not -- when you used the term average wholesale price or AWP, you did not use it to refer to some actual calculated average of provider acquisition cost, did you?

d35eef33-262d-44a5-ba27-3955dc624463

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------x

IN RE: PHARMACEUTICAL : MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE : CIVIL ACTION

PRICE LITIGATION : 01-CV-12257-PBS

vs. :

THIS DOCUMENT RELATES TO :

U.S. ex rel. Ven-A-Care of :

The Florida Keys, Inc. :

v. Abbott Laboratories, :

Inc., No. 06-CV-11337-PBS :

---------------------------x

Video Tape Deposition of AMY JANE SERNYAK was taken pursuant to notice at the Law Offices of Morgan Lewis, 1701 Market Street, Philadelphia, Pennsylvania, on Tuesday, March 6, 2007, beginning at 9:00 a.m., before Jeanne Christian, Court Reporter-Notary Public and Michael Mullen, Video Tape Operator, there being present.

the drug, or (2), the national average wholesale price of the drug (as published in The Red Book and similar price listings.)

Did I read that right?

A. Yes.

Q. Is that language consistent with your understanding that the term average wholesale price referred to price listings contained in Red Book or similar price listings?

MR. WINGET-HERNANDEZ: Objection as to form.

MR. NEAL: Objection as to form. You can answer.

THE WITNESS: I misunderstood the question.

BY MR. TORBORG:

Q. Is the language of this --

A. That sentence?

Q. That sentence consistent with your understanding that the term average wholesale price referred to prices published in books like Red Book?

Sernyak, Amy Jane March 6, 2007
Philadelphia, PA

Page 122

MR. NEAL: Same objection.

MR. WINGET-HERNANDEZ: Objection to form.

THE WITNESS: Yeah, I mean, it says in parentheses, average wholesale price as published in Red Book and similar price listings.

BY MR. TORBORG:

Q. Do you recall there being any discussion during your time at OIG about what the term average wholesale price meant?

A. No, I mean, just that it is average wholesale price.

Q. As published in Red Book and other price listings?

A. Right.

Q. No dispute about that at all?

MR. WINGET-HERNANDEZ: Objection.

MS. POLLACK: Objection.

BY MR. TORBORG:

Q. That you are aware of?

Henderson Legal Services
(202) 220-4158

27e88f91-f4b0-48c2-9ad0-10a59f83887e

MR. NEAL: Objection as to form. You can answer.

THE WITNESS: No.

BY MR. TORBORG:

Q. Have you ever heard anyone suggest that the term average wholesale price meant something other than prices published in Red Book or other price listings?

MR. NEAL: Objection as to form. You can answer.

THE WITNESS: Meant something other than that, no.

BY MR. TORBORG:

Q. If I can ask you to go back to the 1996 report?

A. Sure. The acquisition cost?

Q. Yes, suppliers acquisition cost.

A. Okay.

Q. Specifically, to page little i, so you will be going back in the report, or forward in the report, I guess, from where you were.

Under the section findings,

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - -

IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION : MDL NO. 1456 : CIVIL ACTION: : 01-CV-12257-PBS

THIS DOCUMENT RELATES TO U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc. No. 06-CV-11337-PBS

- - -

Videotaped deposition of ROBERT VITO was taken, pursuant to notice, at MORGAN LEWIS & BOCKIUS, LLP, 1701 Market Street, Philadelphia, Pennsylvania, on Tuesday, June 19, 2007, beginning at 9:10 a.m., before M. Kathleen Muino, Professional Shorthand Reporter, Notary Public; Michael Hunterton, Certified Legal Video Specialist, there being present:

0cfa4ef9-679b-48aa-88d6-df3d22db9f34

Page 142

December 1997. The second page indicates it was prepared under your direction. Is that right?
A. That is correct.
Q. Do you recall this report?
A. Yes, I do.
Q. If you go to the section under Background, see the third paragraph, starting with, on January 1; do you see that?
A. Yep.
Q. On January 1, 1998, Medicare Part B will begin -- begin to reimburse covered drugs at 95 percent of the average wholesale price. Currently, Medicare couriers may -- Medicare carriers may determine the amounts that Medicare will pay for these drugs based on either the lower of the estimated acquisition cost or the national average wholesale price.
A. Uh-huh.
Q. The EAC is determined based on surveys of the actual invoice prices paid for the drug. The AWP is reported in the Red Book and other pricing publications and databases used by the

Page 143

pharmaceutical industry. Historically, it has been the AWP that carriers have used to develop Medicare reimbursement for prescriptions drugs.
Did I read that correctly?
A. Yes.
Q. And is that consistent with what your understanding of what the term "AWP" meant in the regulations prior -- that were in effect prior to 1998?
MR. NEAL: Objection as to form.
You can answer.
THE WITNESS: We -- we understood that the AWP was the information that Medicare used to set the prices and it did come out of the Red Book and the Blue Book.
BY MR. TORBORG:
Q. Did you equate the term "AWP" with the prices that were in Red Book and other price listings?
MR. AZORSKY: Objection to form.
MR. NEAL: Join the objection.
THE WITNESS: When we asked CMS how they

Page 144

calculated it, they told us they used the AWP and then if there was a percentage off, then they did that. They told us they took a percentage off of that.
BY MR. TORBORG:
Q. When you used the term "average wholesale price," did you equate it to the prices that were in Red Book and other price listings?
MR. AZORSKY: Objection to the form.
MR. NEAL: Join the objection.
THE WITNESS: I believe it was listed in the Red Book and the Blue Book, yes.
BY MR. TORBORG:
Q. Did you equate it; yes --
MR. AZORSKY: Objection --
BY MR. TORBORG:
Q. -- or no?
MR. AZORSKY: -- to form. Objection to --
THE WITNESS: I -- I -- I -- I --
BY MR. TORBORG:
Q. It's a yes or no question.
MR. AZORSKY: How many times you going to

Page 145

ask him?
MR. TORBORG: Until -- until I get an answer.
MR. AZORSKY: You (unintelligible) --
MR. TORBORG: Until I get an answer.
MR. AZORSKY: -- answered ten times.
MR. NEAL: You're -- you're -- you're dissatisfied with --
MR. TORBORG: You can object.
MR. NEAL: You're dissatisfied with the answer, but you've gotten an answer.
MR. TORBORG: Well, I haven't gotten --
MR. NEAL: And the question's --
MR. TORBORG: -- an answer.
MR. NEAL: -- been asked and answered a number of times now. You can ask it again.
BY MR. TORBORG:
Q. It's a yes or no question, Mr. Vito. When you used the term "average wholesale price" in your work at OIG, did you equate it with the prices that were published in Red Book and other price

0cfa4ef9-679b-48aa-88d6-df3d22db9f34

Page 146

listings?
MR. AZORSKY: Objection to form --
MR. NEAL: Objection as to form; asked and answered.
THE WITNESS: I -- I -- I -- I have said that AWP is what the Medicare program based its reimbursement on and they were in the Blue -- Blue Book and Red Book.
BY MR. TORBORG:
Q. Can you answer my question, yes or no?
MR. AZORSKY: Objection to --
BY MR. TORBORG:
Q. And just tell me if you can't. If you can't, that's fine --
MR. AZORSKY: Objection to form.
MR. NEAL: Same objection.
THE WITNESS: I'd like to hear the question one more time.
BY MR. TORBORG:
Q. When you use the term "average wholesale price" or "AWP" in your work at OIG, did you equate it with what was published in Red Book and similar

Page 147

price listings?
MR. AZORSKY: Objection to form.
MR. NEAL: Objection as to form.
MR. WINGET-HERNANDEZ: Objection.
THE WITNESS: I -- I -- I -- I -- I guess the answer's yes.
MR. TORBORG: I want to mark this as the next one.
- - -
(Whereupon, Exhibit Abbott 232 was marked for Identification.)
- - -
MR. TORBORG: For the record, what I've marked as Abbott Exhibit 132 bears the Bates -- Exhibit Abbott 232 bears the Bates Nos. HHD042-0018 --
MR. AZORSKY: What's the exhibit number?
MR. TORBORG: Exhibit Abbott 232. -- 20. It is a memo from Mary Beth Clarke at OIG to Shana Olshan at HCFA.
BY MR. TORBORG:
Q. Mr. Vito, this was a document that was

Page 148

produced out of the working files for one of the OIG reports that your team worked on, and my question is whether or not you recall this document?
A. I do not recall this document.
Q. And do you see there's a section, Definitions?
A. Yes.
Q. And the first definition is for average wholesale price, AWP in parens, and Ms. Clarke wrote, or at least it's in this memo that she sent: Define -- defines average wholesale price as the pharmaceutical version of manufacturer's list price. It is determined by the manufacturer of a given product and listed in several commercial publications available to the health care community. AWP does not represent the actual average of invoice or purchase price, as very few purchasers actually pay this amount. It is a standard -- it is used as a standard benchmark with negotiated prices often expressed in terms of AWP minus a given percentage.

Page 149

Mr. Vito, is this definition of average wholesale price consistent with your understanding of average wholesale price?
MR. AZORSKY: Objection to form.
MR. NEAL: Object to the form.
MR. WINGET-HERNANDEZ: Objection.
THE WITNESS: I -- I -- I don't know that I agree with everything that was said in there.
BY MR. TORBORG:
Q. What aspects of the definition here of average wholesale price are you not sure that you agree with?
A. I -- I don't know that very few purchasers actually pay this amount. Now, I -- I -- I -- I -- I never actually did the -- the reviews, but I guess what we found is that when -- when -- when we looked at the pricing, that it wasn't the price that was available to the physicians and other suppliers, but I don't know -- I don't know the exact percentages of who does -- who's getting it, who's not getting it at that price.

0cfa4ef9-679b-48aa-88d6-df3d22db9f34