```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                              )
IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE       )   MDL NO. 1456
LITIGATION                    )   CIVIL ACTION NO.
_____)   01-12257-PBS
```

THIS DOCUMENT RELATES TO:

United States of America, ex rel. Ven-a-Care
of the Florida Keys, Inc. v. Abbott
Laboratories, Inc.,
Civil Action No. 06-11337-PBS


                              **ORDER RE:**
  **THIRD-PARTY TAP PHARMACEUTICAL PRODUCTS INC.'S MOTION FOR
   A PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFFS' THIRD
    PARTY SUBPOENAS (DOCKET ENTRY # 4295); THIRD-PARTY HOSPIRA,
INC.'S MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH
PLAINTIFFS' THIRD PARTY SUBPOENAS (DOCKET ENTRY # 4294);
DEFENDANT ABBOTT LABORATORIES INC.'S MOTION FOR PROTECTIVE
    ORDER AND MOTION TO QUASH PLAINTIFFS' THIRD PARTY SUBPOENAS
 (DOCKET ENTRY # 4296); REALTOR'S MOTION TO COMPEL ABBOTT
LABORATORIES, INC. TO PRODUCE OR CONSENT TO ACCESS TO AND
    SHARING OF ALL DISCOVERY PRODUCED BY ABBOTT IN OTHER FALSE
                   PRICE REPORTING LITIGATION
                      (DOCKET ENTRY # 4121)**

                          **July 19, 2007**

**BOWLER, U.S.M.J.**

   After conducting a hearing on July 2, 2007, on the above styled motions, this court took the motions (Docket Entry ## 4294, 4295, 4296 & 4121) under advisement.  This ruling follows.


I.  <u>MOTIONS FOR A PROTECTIVE ORDER AND TO QUASH THIRD PARTY
    SUBPOENAS (DOCKET ENTRY ## 4294, 4295 & 4296)</u>

   Defendant Abbott Laboratories, Inc. ("Abbott") and non-

parties Hospira, Inc. ("Hospira") and TAP Pharmaceuticals, Inc. ("TAP") move to quash 14 third party subpoenas issued by plaintiff the United States of America ("the United States"). (Docket Entry ## 4294, 4295 & 4296).  The United States issued ten of the subpoenas to Abbott customers on March 30, 2007.  The United States issued three more subpoenas to industry trade groups on April 27, 2007, and the remaining subpoena to an industry trade group on May 11, 2007.

Rule 26(c), Fed. R. Civ. P., gives a party to litigation such as Abbott, who may lack standing under Rule 45, Fed. R. Civ. P., the ability "to challenge a non-party subpoena . . . under Rule 26."  Manufacturer Direct, LLC v. Directbuy, Inc., 2007 WL 496382 at * 3 (N.D.Ind. Feb. 12, 2007).  The case cited by the United States from this district, In re Stone & Webster, Inc. Securities Litigation, 2006 WL 2818489 at * 3 (D.Mass. Sept. 26, 2006), is distinguishable.  There, the court quashed the third party subpoena because the defendant "failed to provide a detailed explanation of why the requested documents [were] irrelevant."  Id.  Abbott fully details the purported lack of relevance as to the requested documents.  As to timeliness, Abbott stated at the hearing that the various deadlines had been extended.

"Whether a subpoena imposes an undue burden upon a witness is a case specific inquiry that turns on such factors as

relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc., 211 F.R.D. 658, 662 (D.Kan. 2003); accord Manufacturer Direct, LLC v. Directbuy, Inc., 2007 WL 496382 at * 3 (N.D.Ind. Feb. 12, 2007) (same).  The subpoenas, which seek discovery from January 1990 to the present and extend to drugs not charged in the complaint, are overly broad and burdensome.  The relevance of documents created after 2003, even corrective documents regarding the marketing of the spread and the setting of the average wholesale price ("AWP"), is also highly questionable.  See Briddell v. Saint Gobain Abrasives Inc., 233 F.R.D. 57, 60 (D.Mass. 2005) ("relevant information, which is otherwise discoverable, may be limited both 'geographically' and 'temporally' in order to avoid overly broad and unduly burdensome requests").

On May 22, 2007, this court prescribed production by Abbott to the following in light of the complaint's 1991 to 2001 time period with respect to four charged drugs:  (1) all documents that mention the four charged drugs; (2) all documents that relate to the four charged drugs including general sales, across the board marketing information that would encompass the four charged drugs, documents involving how Abbott "'put together the

3

spread'" and cross cutting sales documents; and (3) all documents that reflect any alleged effort on the part of Abbott to market the spread or manipulate the published AWP for any drug within Abbott's former hospital products division.  This court additionally limited the time period to the end of 2003.  (Docket Entry # 4244).

Discovery against a non-party should not extend beyond the foregoing parameters albeit the scope and content of a request may be tailored to the third party recipient, the nature of its business and its relationship to Abbott.  The present third party subpoenas are therefore quashed and the United States is directed to narrow the subpoenas consistent with this Order.

The motions are denied, however, with respect to documents already produced or documents to which the recipients have agreed to produce in the future notwithstanding the allegations of irrelevance and confidentiality.[1]  Production may continue as to the latter category.  It is also unduly burdensome for a recipient to redact all references in a multitude of documents that refer to TAP or Hospira or that contain information related to these entities.

II.   REALTORS' MOTION TO COMPEL ABBOTT LABORATORIES, INC. TO

---

[1]  The protective order extends to documents produced "by any third party in response to discovery requests or subpoenas . . .."  (Docket Entry ## 4350 & 4417, ¶¶ 2).

<u>PRODUCE OR CONSENT TO ACCESS TO AND SHARING OF ALL DISCOVERY PRODUCED BY ABBOTT IN OTHER FALSE PRICE REPORTING LITIGATION (DOCKET ENTRY # 4121)</u>

On April 27, 2007, relator Ven-A-Care of the Florida Keys, Inc. ("the relator") filed the above motion seeking to compel Abbott to produce documents already produced in certain state court cases, including those filed in Texas and California ("the state cases"), concerning Abbott's purported fraudulent pricing of a multitude of drugs reimbursed by federal and state Medicare and Medicaid programs.  (Docket Entry # 4121).  Notable differences exist, however, between the state cases and the present action.  In particular, this action involves four charged drugs during the 1991 to 2001 time period.

In 2003, Congress passed the Medicare Prescription Drug, Improvement and Modernization Act of 2003 ("the MMA"), <u>see</u> Pub.L. No. 108-173, 117 Stat. 2066, with an effective date of December 8, 2003.  Accordingly, it was readily apparent by that time that AWP did not accurately reflect the average wholesale price of reported drugs.  <u>See</u> <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>, 2007 WL 1774644 at * 15 (D.Mass. 2007); (Docket Entry # 4153, Ex. 6, pp. 18-19) (by the time of the passage of MMA, "the whole world knew about inflated AWPs").

The present motion to compel (Docket Entry # 4121), filed on April 27, 2007 ("the second motion" or "the present motion"), is

similar to a prior motion to compel (Docket Entry # 3529), filed on January 9, 2007, that sought discovery purportedly required by case management orders five and ten ("the first motion").[2] The May 22, 2007 ruling on the first motion, detailed above, prescribed production to a certain time period and, as to drugs not charged in the complaint, certain across the board practices concerning how Abbott put together and/or marketed the spread. That ruling stands and provides the framework to review the documents subject to production in the present motion. A review of the procedural history of both motions, however, explains the reason for the overlap and the production by the relator of the sample documents.

In brief, at the February 27, 2007 hearing, the district judge suggested that the relator produce a sample of documents in three different categories and engage in a meet and confer process with Abbott. If unable to agree, the district judge indicated that the next step might be an in camera review. (Docket Entry # 4153, Ex. 6, pp. 11-14 & 23). Adhering to this process, the relator filed the second motion on April 27, 2007.

Two days before the relator filed the second motion, this court set a May 16, 2007 hearing date for the first motion. At the May 16, 2007 hearing, this court took the first motion under

---

[2] The relator acknowledges the similarity. (Docket Entry # 4122, n. 2).

advisement and issued the ruling on May 22, 2007.  Meanwhile, the parties jointly sought and obtained an extension until May 14, 2007, for Abbott to file a response to the second motion.  On May 16, 2007, this court set a June 16, 2007 hearing date for the second motion.

Although the relator complied with the instructions of the district judge, the review of the samples shall be governed by the previously issued parameters in the May 22, 2007 Order.  The relator fails to provide an adequate reason to reconsider the May 22, 2007 Order.  See generally United States v. Rivera-Martinez, 931 F.2d 148, 150-152 (1st Cir. 1991); NPR, Inc. v. American International Insurance Co. of Puerto Rico, 262 F.Supp.2d 3, 5 (D.P.R. 2003) ("to justify a reconsideration of an order, a party must show that there has been some intervening development in the law, some new evidence not previously available, or that the prior order is in clear error or would operate to create a manifest injustice").  Accordingly, the relator is not entitled to the requested broad based sharing with the United States of all of the discovery produced by Abbott in the state cases.

In the context of the second motion, the relator submits the "sample" documents for in camera review to which this court now turns.  As a result of the meet and confer process, Abbott produced, will produce or produced in the context of a prior

deposition a number of the sample documents.[3]  Production of these documents is therefore moot notwithstanding the relator's complaint regarding the untimely production at a deposition.  The parties should confer as to production of any underlying documents which the sample documents represent.[4]

The remaining documents fall into groups depending upon the nature of Abbott's objection.  The objections fall into the following categories: (1) not responsive;[5] (2) not relevant; and (3) temporally remote.  Accordingly, this court turns to the foregoing categories in sequential order.[6]

1. Not Responsive Category

Abbott is ordered to produce the following documents but may

---

[3]  The relator designates these categories as "A" for already provided, "D" for provided only with a deposition previously taken and "W" for will provide.

[4]  The second motion does not clarify the category of sample the documents represent.  As noted at the February 27, 2007 hearing, the district judge suggested three categories.  (Docket Entry # 4153, Ex. 6, pp. 11-13).

[5]  As explained in Abbott's April 10, 2007 letter, a document is "not responsive" if it "does not apply to the drugs at issue" and does "not in any way relate to 'marketing the spread' or 'manipulating AWP.'"  (Docket Entry # 4122, Benchbook, Ex. 3).

[6]  Redacting by Abbott is permissible within the guidelines of the May 22, 2007 Order.  That Order recognized the separate nature of the hospital products division but left room for production of cross cutting sales and marketing documents involving other drugs.

redact them consistent with the parameters set in the May 22, 2007 Order: sample documents 130, 131, 132 and 325. Sample documents 133, 211, 261, 301, 302, 492 and 693 are not subject to production. By way of a partial explanation, sample documents 302 and 492 were too narrow and specific. See (Docket Entry # 4153, Ex. 6, p. 31).

2. Not Relevant Category

Abbott is ordered to produce the following documents but may redact them consistent with the parameters set in the May 22, 2007 Order: sample documents 361; 368 notwithstanding that it involves the pharmaceutical products division; 440; 549; 550; 551; 575; 635 and 638 inasmuch as they contain columns of trade prices and wholesale prices for a multitude of drugs;[7] and TXABT 672974-79, which is not identified by a separate number. Sample documents 173, 209, 292, 293, 310, 333, 376,[8] 480, 488, 490, 494, 508, 548, 554, 558, 559, 576, 587, 597, 605, 617, 620, 621, 622, 632, 633, 665, 668, 669, 675, 678 and 680 are not subject to production. The following sample documents, which are not identified by number, are also not subject to production: TXABT

---

[7] Sample document 292 does not appear to contain this differential and, absent a further showing, is therefore not subject to production at this time.

[8] Sample document 376 (TXABT 370566-8), although placed in the "R" category whereas the April 10, 2007 letter places it in the "T" category, is not subject to production.

244714-17, TXABT 244717-812, TXABT-E 0068742-74, TXTABT-E 0064956-87, TXABT 245225-66, TXABT 596107-14 and TXTABT-E 0057113-18.

By way of a partial explanation, sample documents TXABT 244714-17 and 209 (TXABT 196937-196961), which concern the same pharmaceutical products division drug, are too narrow and specific and therefore not subject to production. <u>See</u> (Docket Entry # 4153, Ex. 6, p. 31).  Sample document 310 (TXABT-E 0013451-9) is irrelevant inasmuch as it concerns a separate Abbott division, drugs not charged in the complaint and little, if any, information about fraudulent pricing.  Sample document 494, dated in 2004, involves a separate Abbott division.  Sample document TXTABT-E 0057113-18 is not subject to production because it primarily targets one drug which is not charged in the complaint.

As a final matter with respect to this category, the relator places sample document 135 (TXABT 097036-37) under the "R" category, i.e., Abbott refusing to produce the document on the basis of relevancy.  Abbott's April 10, 2007 letter, however, states that Abbott agrees to produce this document.  The issue is therefore moot.  The relator also categorizes sample documents 165 (TXABT 145700-01), 275 (TXABT 453662-3) and 685 (TXABT 453311-453321) under the "R" category when, in fact, Abbott's April 10, 2007 letter categorizes the documents under the "T"

category, i.e., refusal to produce because the documents fall outside the temporal period. The parties are directed to confer regarding these sample documents and, if unable to agree, submit the documents for a second in camera review with the basis of the objection correctly identified.

3. <u>Temporal Category</u>

In the April 10, 2007 letter, Abbott submits that the documents in this category fall outside the January 1, 1991 through December 31, 2001 time period. The relevant time period, however, extends to the end of 2003. On the other hand, Abbott raises additional objections in the opposition (Docket Entry # 4200) which, accordingly, this court will consider.

Having reviewed all of the documents in this category, Abbott is ordered to produce the following documents but may redact them consistent with the parameters set in the May 22, 2007 Order: sample documents 123, 124, 126, 163, 164, 176, 180, 194, 203, 309, 327, 350 and 390. The following sample documents, which are not identified by number, are also subject to production: TXABT-E 0000004-05, TXABT 135767-68 and TXABT 135759-60. Sample documents 118, 121,[9] 122, 151, 179, 195 inasmuch as the organizational chart purportedly applies to 2004,

---

[9] Sample document 121 (TXABT 136177) falls within the larger sample document 205 (TXABT 136172-136177).

205, 280, 282, 289, 336, 375, 439, 443, 538, 580 and 641 are not subject to production.

By way of a partial explanation, sample document 390 and, in particular, documents TXABT 453409 and TXABT 453413, include AWP and spread figures for a number of drugs for the December 2001 time period.  Dated June 23, 2003, sample document 164 includes information relative to losses in Vancomycin sales attributable to reimbursement issues.

As a final matter with respect to this category, the relator places sample document 403 (TXABT 143030-35) under the "T" category, i.e., refusal to produce because the document falls outside the relevant time period.  Abbott's April 10, 2007 letter, however, states that Abbott already produced this document to the Department of Justice.  The issue is therefore moot.

As to sample documents subject to production as a result of this Order, the parties should confer as to production of any underlying documents which the sample represents.

## CONCLUSION

The motions for a protective order and to quash the third party subpoenas (Docket Entry ## 4294, 4295 & 4296) are **ALLOWED** in part and **DENIED** in part.  The motion to compel (Docket Entry # 4121) is **ALLOWED** in part and **DENIED** in part.  Abbott is ordered

to produce the sample documents identified above that are subject to production within ten days.  Alternatively, Abbott may consent to have the relator share the sample documents with the United States.

                                        /s/ Marianne B. Bowler
                                       **MARIANNE B. BOWLER**
                                       United States Magistrate Judge