UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————— ) | |
| In re Pharmaceutical Industry ) | |
| Average Wholesale Price ) | |
| Litigation ) | MDL No. 1456 |
| ) | Master File No. 01-12257-PBS |
| This document relates to: ) | |
| UNITED STATES OF AMERICA ) | |
| *ex rel.* VEN-A-CARE OF THE ) | |
| FLORIDA KEYS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DEY, INC., *et al.* ) | |
| ) | |
| Defendant. ) | |
| ) | |
| CIVIL ACTION NO. 05-11084-PBS ) | |
| ) | |
| ———————————————— ) | |

**MEMORANDUM AND ORDER**

July 17, 2007

Saris, U.S.D.J.

**<u>INTRODUCTION</u>**

The United States brings this action under the False Claims Act, 31 U.S.C. § 3729 <u>et seq.</u>, seeking to recover losses to the Medicare and Medicaid programs caused by allegedly fraudulent average wholesale prices for generic drugs reported by defendants Dey, Inc., Dey L.P., Inc., and Dey L.P. (collectively "Dey").

Relator Ven-A-Care filed its *qui tam* complaint against Dey in the Southern District of Florida on August 13, 1997. Nine years later, after seeking numerous sixty day extensions from the

court, the government elected to intervene.  On August 24, 2006, the government filed a "complaint-in-intervention" against the defendants, which was unsealed on September 7, 2006, and served Dey with this unsealed complaint.[1]  The factual basis for the complaint is set forth in this Court's prior opinion in United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc., __ F Supp. 2d __, 2007 WL 1334496, at *2-3 (D. Mass. 2007), with which the Court assumes familiarity.

Among other things, Dey argues that all causes of action accruing in connection with claims submitted for payment more than 6 years before the government intervened are barred by the statute of limitations, 31 U.S.C. § 3731(b)(1).  Citing United States v. The Baylor Univ. Med. Ctr., 469 F.3d 263, 268 (2d Cir. 2006) ("Baylor"), Dey argues that the action is deemed to have been commenced against Dey for statute of limitations purposes when the complaint-in-intervention was filed by the government on August 24, 2006.

After oral argument, the Court **ALLOWS**, in part, and **DENIES**, in part, Dey's motion to dismiss.

―――――――――――――――

[1] The government's complaint-in-intervention states four causes of action against Dey.  Count 1 alleges that Dey violated the False Claims Act, 31 U.S.C. § 3729(a)(1), by presenting or causing to be presented a false claim to the federal government. In addition, Count 1 asserts that Dey contravened the FCA by violating the Anti-Kickback Statute.  Count 2 alleges that Dey violated 31 U.S.C. § 3729(a)(2) by making or using false records and statements to cause claims to be paid.  Count 3 alleges a cause of action for unjust enrichment.  Count 4 alleges a claim for common law fraud.

## PROCEDURAL BACKGROUND[2]

Relator filed its initial complaint in 1995, and an amended complaint against Dey on August 13, 1997, in the United States District Court for the Southern District of Florida.  Relator filed a separate complaint against Dey in this district on April 10, 2000.  On December 22, 2004, the United States and relator moved to sever and transfer the claims against Dey in Florida to Massachusetts.  Those claims were transferred to this district and assigned Case No. 05-11084.  On June 26, 2006, in response to the United States' and relator's request, the related claims originally filed against Dey in the District of Massachusetts were severed from the remainder of that case and consolidated with the claims transferred from Florida.  On August 23, 2006, this case finally saw the light of Dey when the United States filed its notice of intervention and complaint-in-intervention in the consolidated case.  The complaint was formally unsealed on September 7, 2006.  On October 31, 2006, relator Ven-A-Care filed an amended complaint, which adopted the United States' complaint. On November 20, 2006, the case was consolidated with this Court's Average Wholesale Price Multi-District Litigation ("MDL") proceeding.

## DISCUSSION

## A. The FCA

---

[2] Many of the documents were sealed in Florida.  The Court has ordered all documents relating to Dey to be unsealed.

3

The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." United States v. Neifert-White Co., 390 U.S. 228, 232 (1968). It permits private entities, called relators, to enforce the civil provisions of the act on behalf of the government. See 31 U.S.C. § 3730(b). When a relator files suit, the FCA provides that the "action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1). Consequently, "[t]he relator in a *qui tam* FCA action, while having a stake in the lawsuit, represents the interests of the United States." United States ex rel. Rockefeller v. Westinghouse Elec. Co., 274 F. Supp. 2d 10, 16 (D.D.C. 2004).

When a private relator, such as Ven-A-Care, brings a claim against a defendant, the statute mandates that a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government" under Fed. R. Civ. P. 4(d)(4). See 31 U.S.C. § 3730(b)(2). Furthermore, the FCA requires, "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." Id. This sixty day provision does not limit the number of extensions that the government may obtain in order to investigate the relator's complaint, provided the government can establish "good cause" before the court presiding over the case. Id.; see also United States v. Stella Perez, 956 F. Supp. 1046, 1052 (D.P.R. 1997) (holding that the FCA "imposes a duty of

4

diligence on the part of the government to ascertain facts material to its right of action").

Ultimately, the government elects either to intervene in the case or to allow the relator to pursue the action alone on behalf of the United States.  If the government chooses to intervene in a relator's suit pursuant to 31 U.S.C. § 3730(b)(4)(A),[3] the FCA provides that "the action shall be conducted by the Government."  This takeover provision dictates, "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action."  See 31 U.S.C. § 3730(c)(1).

A defendant is not required to respond to any *qui tam* complaint until 20 days after the complaint is unsealed and served upon it.  31 U.S.C. § 3730(b)(3).

## B. Statute of Limitations

Dey moves to dismiss the government's complaint-in-intervention on the ground that it is time-barred.  The FCA provides:

> (b) A civil action under section 3730 [providing a right
> of action for FCA] may not be brought--
>     (1) more than 6 years after the date on which the
>     violation of section 3729 [the FCA] is committed,

---

[3] 31 U.S.C. § 3730(b)(4) provides:
(4) Before the expiration of the 60-day period or any
extensions obtained under paragraph (3), the Government
shall--
    (A) proceed with the action, in which case the action
    shall be conducted by the Government; or
    (B) notify the court that it declines to take over the
    action, in which case the person bringing the action
    shall have the right to conduct the action.

```
              or
              (2) more than 3 years after the date when facts
              material to the right of action are known or
              reasonably should have been known by the official
              of the United States charged with responsibility to
              act in the circumstances, but in no event more than
              10 years after the date on which the violation is
              committed, whichever occurs last.
```

31 U.S.C.A. § 3731(b).  "Granting a motion to dismiss based on a

limitations defense is entirely appropriate when the pleader's

allegations leave no doubt that an asserted claim is

time-barred."  <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d

507, 509 (1st Cir. 1998).

<u>1. When did the action commence?</u>

     The critical question is when the instant action commenced

for statute of limitations purposes.  Dey relies primarily on

<u>Baylor</u> to support its argument that the present suit commenced

for purposes of the statute of limitations when the government

filed its complaint-in-intervention.  In <u>Baylor</u>, where the *qui*

*tam* action was filed by the relator eight years before the

government intervened, the Second Circuit held that the date the

"Government's actions commenced (for statute of limitations

purposes) was the date on which the complaints-in-intervention

were filed."  <u>Id.</u> at 268.  Moreover, it held that the

government's complaint-in-intervention could not relate back to

the date of the initial complaint by the relator pursuant to Fed.

R. Civ. P. 15(c)(2) because:

```
              The secrecy required by § 3730(b) is incompatible
         with Rule 15(c)(2), because (as is well-settled) the
         touchstone for relation back pursuant to Rule 15(c)(2) is
         notice, i.e., whether the original pleading gave a party
```

> "adequate notice of the conduct, transaction, or
> occurrence that forms the basis of the claim or defense
> .... The rationale of Rule 15(c) is that a party who has
> been notified of litigation concerning a particular
> occurrence has been given all the notice that statutes of
> limitations were intended to provide.  By design, the
> seal provision of § 3730(b) deprives the defendant in an
> FCA suit of the notice usually given by a complaint.
> Because any relation back of subsequent filings to the
> original complaint is incompatible with the core
> requirement of notice under Rule 15(c)(2), continued
> running of the statute of limitations is warranted.

Id. at 270 (citations and internal quotation marks omitted).  The

Second Circuit specifically declined to address whether relation

back under Fed. R. Civ. P. 15(c)(1) would be permitted because

the parties did not brief that issue.  However, the Second

Circuit, in dicta, did suggest there was "a colorable argument

that the FCA implicitly 'permit[s]' a form of relation back that

dispenses with the requirement of notice" under Rule 15(c)(1).

Baylor, 469 F.3d at 270.

    Defendant argues that under Baylor, this Court should look

to when the government filed its unsealed complaint-in-

intervention against Dey - August 24, 2006 - as the date the

action "commenced."  Under this approach, all causes of action

based on claims made more than six years before the filing of the

complaint-in-intervention would be time-barred.

    Disagreeing with Baylor, the government replies that this

FCA action commenced when the relator filed its complaint against

Dey in August 1997.  The government argues that the statute of

limitations provision in the FCA provides that the period of

limitations is measured against when the action is "brought," not

when it is unsealed.  See 31 U.S.C. § 3731(b).  The government's
view is consistent with the holdings of trial courts that an FCA
commences when the relator filed suit.[4]  See, e.g., United States
ex rel. Miller v. Bill Harbert Int'l. Const., Inc., 2007 WL
851855, at *2 (D.D.C. March 14, 2007) (rejecting Baylor holding)
(citations omitted); see also United States ex rel. Downy v.
Corning, Inc., 118 F. Supp. 2d 1160 (D.N.M. 2000), overruled on
other grounds, United States ex rel. Sikkenga v. Regence
Bluecross Blueshield of Utah, 472 F.3d 702 (10th Cir. 2006)
(rejecting argument that FCA action commences when government
unseals the complaint and files a complaint-in-intervention);
accord United States ex rel. Parikh v. Premera Blue Cross, 2007
WL 1031724, at *3-4 (W.D. Wash. April 3, 2007) (finding that an
FCA action commences, and the statute of limitations is tolled,
when relator files initial complaint).

        Second, the government argues that the FCA permits the
government to seek extensions upon a showing that it has been
diligently investigating the case without requiring the
extensions to be cabined within the six-year limitations period;
thus, the statute of limitations is "tolled" during these
extensions.  See 31 U.S.C. § 3730(b)(3).  Dey responds that no
provision in the FCA provides for such a "tolling" of the statute
of limitations pending government investigation.  Rather, it
contends, § 3731(b)(2) contains the only "tolling provision"

------

        [4] Indeed, the relator goes so far as to describe Baylor as a
a "renegade" opinion.

found in the FCA, and it runs three years from when "facts material to the right of action are known or reasonably should have been known" by the appropriate "official of the United States."

The government has the better argument that the action is commenced when the relator files its complaint. <u>See</u> Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); <u>see also</u> 4 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1056 (2d ed. 2006) (suggesting that courts look to Rule 3 to determine how to commence an action unless the statute provides otherwise). Dey objects that an action cannot be "commenced" for purposes of the statute of limitations unless the defendant receives notice of the complaint under Fed. R. Civ. P. 4. This argument contravenes the well established rule that "[F]iling a complaint suffices to satisfy the statute of limitations." <u>Henderson v. United States</u>, 517 U.S. 654, 657 n. 2 (1996) (citing <u>West v. Conrail</u>, 481 U.S. 35, 39 (1987)); <u>see also</u> <u>McIntosh v. Antonino</u>, 71 F.3d 29, 36 (1st Cir. 1995) ("Rule 3 adequately covers the mechanics of commencing an action in a federal district court, and the rule makes it transpicuously clear that an action is commenced when the papers are filed."). It is true that "the tolling of the statute contemplates that service is effected within a reasonable time period after filing the complaint." <u>Novak v. Nat'l Broad. Co.</u>, 131 F.R.D. 44, 45 (S.D.N.Y. 1990) (citing <u>Maxwell v. Swain</u>, 833 F.2d 1177, 1178 (5th Cir. 1987)). However, reasonableness must be evaluated

within the context of the FCA's statutory scheme.  The FCA
provides specific rules for service of the complaint once it has
been unsealed.  Thus, in most situations, if a district court has
granted the extensions for "good cause," and the complaint is
served in a timely way once it has been unsealed, this
reasonableness requirement is met.

Although there may be some ambiguity in the statutory scheme
created by the FCA, "no statute of limitations will block federal
government actions unless Congress clearly and specifically says
so."  Capozzi v. United States, 980 F.2d 872, 875 (2d Cir. 1992).
"[S]tatutes of limitations sought to be applied to bar rights of
the Government, must receive a strict construction in favor of
the Government."  Badaracco v. Comm'r, 464 U.S. 386, 391 (1984)
(quoting E.I. Dupont de Nemours & Co. v. Davis, 264 U.S. 456
(1924)).  "This canon is rooted in the traditional rule *quod
nullum tempus occurrit regi* — time does not run against the King.
A corollary of this rule is that when the sovereign elects to
subject itself to a statute of limitations, the sovereign is
given the benefit of the doubt if the scope of the statute is
ambiguous."  BP Am. Prod. Co. v. Burton, 127 S. Ct. 638, 646
(2006) (internal citations omitted).  Thus, in determining the
breadth of the statute of limitations, this Court must only ask
"simply how far Congress meant to go when it enacted the statute
of limitations in question."  Id. at 649.

Looking to the language, purpose, and structure of the FCA,
this Court concludes that the action commences, for purposes of

10

the statute of limitation, when the relator files its sealed complaint against a defendant and otherwise meets the strictures of 31 U.S.C. §3730(b).

2. Relation Back

The next question is whether a so-called "complaint-in-intervention" should be treated as an amended complaint that relates back to the relator's initial complaint under Fed. R. Civ. P. 15(c).  Rule 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...

Fed. R. Civ. P. 15(c).  Generally, "the rationale of the relation back rule is to ameliorate the effect of the statute of limitations."  6A Wright, Miller & Kane, Federal Practice and Procedure § 1497 (2d ed. 2006).  In this manner, Rule 15(c) "provide[s] [a] maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."  Siegel v. Converters Transp., Inc., 714 F.2d 213, 216 (2d Cir. 1983) (citations omitted).

Once the government decides to intervene, it has the primary responsibility for prosecuting the action and is not bound by the actions of the relator.  See 31 U.S.C. § 3730(c)(1).  As such, once the government is in the driver's seat, it has the statutory right to amend the complaint, and usually does so.  See 1 John T.

Boese, Civil False Claims and Qui tam Actions, §4.05[B] at 4-173
(3d 3d. 2006).  It is the practice in this district that when the
government elects to intervene in qui tam cases, it files a
pleading styled as a "complaint-in-intervention."  See, e.g.,
California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott
Labs., Inc., 478 F. Supp. 2d 164 (D. Mass. 2007).  A review of
the caselaw suggests that the government's practice of filing a
complaint-in-intervention is nationwide.

    Many courts have taken the view that a complaint-in-
intervention should be treated as an amended complaint under Fed.
R. Civ. P. 15.  See, e.g., United States ex rel. Purcell v. MWI
Corp., 254 F. Supp. 2d 69, 75 (D.D.C. 2003) (stating that "the
government's complaint in intervention is an amendment of the
relator's complaint" under Rule 15).  Although the United States
typically files its own complaint-in-intervention, nothing in the
FCA requires a complaint-in-intervention.  Instead, the United
States could elect to intervene by simply using the relator's
complaint.

    The key dispute (left open by Baylor) is whether the FCA
provides a principle of relation back under Rule 15(c)(1) that
would allow the government's 2006 complaint-in-intervention to
utilize the earlier date of commencement provided by the
relator's 1997 suit.  This provision, added to the Federal Rules
of Civil Procedure in 1991, was intended to make clear "that the
rule [of general relation back] does not apply to preclude any
relation back that may be permitted under the applicable

limitations law." Nelson v. County of Allegheny, 60 F.3d 1010,
1014 n.4 (3d Cir. 1995) (citing 1991 Advisory Committee Note);
accord Saxton v. ACF Indus., Inc, 254 F.3d 959, 962-63 (11th Cir.
2001).  According to the Advisory Committee Note to Rule 15, if
the law providing the limitation "affords a more forgiving
principle of relation back than the one provided in this rule, it
should be available to save the claim."  See 6A Wright, Miller &
Kane, Federal Practice and Procedure § 1503 (2d ed. Supp. 2001)
(noting that "[i]n 1991, Rule 15(c) was amended to clarify that
relation back may be permitted even if it does not meet the
standards of the federal rule if it would be permitted under the
applicable limitations law").

     As is well established, the FCA contemplates a direct link
between the interest of the relator, who is always acting "in the
name of the Government," and the government in every *qui tam*
suit.  See 31 U.S.C. § 3730(b)(1).  Indeed, a Latin scholar might
recognize the phrase "*qui tam*" as "an abbreviation for '*qui tam
pro domino rege quam pro seipso*,' which literally means 'he who
as much for the king as for himself.'"  United States ex rel. S.
Prawer & Co. v. Fleet Bank of Maine, 24 F.3d 320, 324 n.7 (1st
Cir. 1994) (citations omitted); see also United States ex rel.
Rockefeller, 274 F. Supp. 2d at 16 ("The relator in a *qui tam* FCA
action, while having a stake in the lawsuit, represents the
interests of the United States"); see United States ex rel.
Zissler v. Regents of Univ. of Minn., 154 F.3d 870, 872 (8th Cir.
1998) ("Even in cases where the United States has declined to

intervene, the structure of the *qui tam* procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation have been held to weigh heavily for holding that it remains the real party in interest").

The unique structure of the FCA supports the government's position that the government's complaint should be treated as an amended complaint that relates back to the relator's complaint under Rule 15(c)(1).  See United States ex rel. Kaplan v. Metro. Ambulance & First-Aid Corp., No. 00-Civ. 3010 (ERK) (JMA), unpublished slip op. (E.D.N.Y. July 5, 2007) (citing Rockwell Int'l Corp. v. United States ex rel. Stone, 127 S. Ct. 1397, 1411 (2007)) (holding that Rule 15(c)(1) relation back was authorized by FCA).  Rule 15(c)(1), unlike Rule 15(c)(2), does not contain a specific requirement that the amended complaint be related to the same "conduct, transaction or occurrence" in the original complaint.  Nonetheless, the government concedes, relation back under Rule 15 (c)(1) is limited.  Thus, if the government's complaint contains new claims unrelated to those asserted in the original complaint, then the original complaint cannot serve as a proper placeholder under Rule 15(c)(1).  For example, the government agrees it cannot bring claims against new parties which would be untimely under the six-year bar.[5]

_____

[5] The parties have not briefed the standard for evaluating whether new claims against the initial defendant are time-barred. According to the relator, the 1997 complaint only involved

14

Dey objects that relation back under Rule 15(c)(1) is impermissible even when the claims and parties are substantially the same because the defendants lacked proper notice of the suit until the government unsealed its complaint-in-intervention in 2006.  Unlike Fed. R. Civ. P. 15(c)(2) and Fed. R. Civ. P. 15(c)(3), notice is not a specific prerequisite of relation back in the 15(c)(1) context.  <u>See</u> <u>Baylor</u>, 469 F.3d at 270 ("the touchstone for relation back pursuant to Rule 15(c)(2) is notice."); <u>see also</u> Fed. R. Civ. P. 15(c)(3) (allowing relation back only if party "has received notice of the institution of the action").  Although notice may be the lighthouse of Rules 15(c)(2) and 15(c)(3), Dey points to no caselaw, and this Court finds none, to support the contention that a rule of relation back created by statute cannot be permitted under Rule 15(c)(1) without notice, especially since the statute at issue mandates such secrecy.  <u>See</u> 31 U.S.C.A. § 3730(b)(2).

Dey next objects to the sufficiency of Ven-A-Care's 1997 complaint on the grounds that the relator's initial complaint remained sealed for a significant period of time and that the government did not act with proper diligence in investigating Ven-A-Care's claims.  (Def.'s Mem. Supp. Mot. Dismiss 17 (citing <u>United States v. St. Joseph's Reg'l Health Ctr.</u>, 240 F. Supp. 2d 882, 888 (W.D. Ark. 2002)) (frowning upon "the multiple

---

physician administered infusion drugs, but the later complaint involved different drugs.  The Court does not address that issue here.

15

interventions [by the government] ... [which] appear to the Court to have no other justification than to allow the government to investigate and settle the multiple claims at its own pace, selectively carving out those claims that were easiest to settle while keeping the remaining defendants in limbo until it chose to act against them")).  In this case, the government investigated the case for nearly a decade before ultimately deciding to enter the fray and allowing the case to surface.[6]

While the number of extensions is worrisome, here, Dey has not produced any evidence that these extensions were improper, in bad faith, or prejudicial.  The court originally in charge of this litigation permitted the government a number of lawful extensions to the sixty day seal deadline.  Indeed, the government contends that Dey had notice of the action virtually from the time it was filed and engaged in considerable efforts to persuade the government not to intervene.  Thus, prejudice is unlikely.  While in some circumstances egregious delay may be sufficiently prejudicial to trigger due process concerns, this record is insufficient to address any constitutional concerns.

3. Sufficiency

---

[6] These long delays are quite troubling.  Evidence spoils, memories fade, and prejudice may result. In my experience, the government routinely files for multiple extensions of time, frequently citing as the reason the size of the case and lack of resources to investigate adequately.  At some point, though, the government must fish or cut bait.  See, e.g., United States ex rel. Franklin v. Parke-Davis, No. 1:96-cv-11651-PBS, (requiring the government to decide whether or not to intervene after approximately three years of investigation).

Having determined that the FCA allows relation back under Rule 15(c)(1), this Court turns to the factual issue of "whether the relator's *qui tam* complaint, as drafted and filed, could serve as a sufficient placeholder to achieve relation back in the *qui tam* context." <u>Baylor</u>, 469 F.3d at 270.  The determination of whether Ven-A-Care's initial complaint could serve as a Rule 15 placeholder requires this Court to "evaluat[e] the sufficiency of [the] relator's complaint," viewed against the backdrop of "the FCA itself, [including] its structure and purposes." <u>Id.</u> (citing <u>Campbell v. Redding Med. Ctr.</u>, 421 F.3d 817 (9th Cir. 2005)). Some courts have held that if the relator's initial complaint were "egregiously defective," it neither commences the action for purposes of the statute of limitations nor serves as a relation back placeholder. <u>Id.</u> at 270 n.10 (citing <u>Biby v. Kansas City Life Ins. Co.</u>, 629 F.2d 1289, 1294 (8th Cir. 1980)); <u>see also United States ex rel. Health Outcomes Techs. v. Hallmark Health Sys., Inc.</u>, 409 F. Supp. 2d 43, 49-50 (D. Mass. 2006) (finding that a complaint could not relate back to the date relator originally filed the complaint in a plainly improper venue).

Dey argues that the relator's complaint is defective because this Court lacked subject matter jurisdiction over Ven-A-Care's initial complaint.[7]   If the Court did not have jurisdiction over

---

[7] Normally, this Court would not consider arguments first raised in a reply brief.  However, I have decided to address Dey's challenge because it goes to this Court's subject matter jurisdiction and because the government had an opportunity to rebut Dey's argument in its sur-reply.

Ven-A-Care's first pleading, the government's complaint-in-intervention cannot properly relate back.  Dey contends that this Court lacks subject matter jurisdiction because Ven-A-Care filed two *qui tam* actions: one in 1997 in Florida and one in 2000 in Massachusetts.  31 U.S.C. § 3730(b)(5) provides that "[w]hen a person brings an action under this subsection [i.e., the Florida suit], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  All subsequent actions, therefore, are precluded.  <u>See United States ex rel. Lujan v. Hughes Aircraft Co.</u>, 243 F.3d 1181, 1186 (9th Cir. 2001) (holding that if an FCA action is based on the same facts underlying a pending case, the court must dismiss the later-filed case for lack of jurisdiction).

If the 2000 complaint were based on the same facts as the initial 1997 complaint, then the Court would not have jurisdiction over the 2000 Massachusetts complaint.[8]  However, this Court still would have jurisdiction over the original 1997 Florida complaint because the Florida case was properly transferred to this district as part of the overarching AWP multi-district litigation.  Consequently, Dey's jurisdictional challenge, which assumes this Court's power flows from the 2000 Massachusetts complaint, is flawed.  At very least, this Court has jurisdiction over the 1997 complaint; therefore, it may serve

---

[8] Dey also contends that the facts on which the 1997 Florida complaint relies were publicly disclosed in 1996.  The government disagrees, stating that the government report involved other manufacturers.

as a relation back placeholder for the government's complaint-in-intervention.

4. The Triggering Date

Dey argues that the relevant date for purposes of the statute of limitations is when the defendant first launched the scheme to submit false claims in 1992.  Dey, citing to United States v. Bornstein, 423 U.S. 303, 313 (1976), argues that it cannot be held liable for each false price because it initially published the allegedly false price in 1992 and never changed it.[9]  The First Circuit has roundly rejected this proposition.  An FCA claim accrues each time a false claim is submitted.  See United States v. Rivera, 55 F.3d 703, 707 (1st Cir. 1995) (stating that an FCA violation "was 'committed,' for statute of limitation purposes, whenever [defendant] can properly be said to have presented its [false] insurance claim to the government") (citations omitted).  Indeed, Dey's publication of false price data, which involves the regular quarterly republication of false AWP figures with knowledge that these figures would be used to set reimbursement figures for subsequent claims, is distinguishable from the case in Bornstein, where the submission of multiple claims "was, so far as [defendant] was concerned, wholly irrelevant completely fortuitous and beyond [defendant's] knowledge or control."  Bornstein, 423 U.S. at 312.  As such, in

_____

[9] According to the MDL record, a drug manufacturer typically reports drug pricing on a quarterly basis to the compendia.  Any fact dispute about the frequency with which Dey reported its prices can be addressed during discovery.

this case a claim accrued each time a false claim was presented. See Rivera, 55 F.3d at 7007.

## C. Unjust Enrichment and Fraud

The parties agree that 28 U.S.C. § 2415(a),[10] which provides a six-year limitations period, controls the government's claim of unjust enrichment, whereas 28 U.S.C. § 2415(b),[11] which provides a three-year limitations period, applies to the government's fraud claim, which sounds in tort. See United States v. Intrados/Int'l Mgmt. Group, 265 F. Supp. 2d 1, 13-14 (D.D.C. 2002) (applying § 2415 to unjust enrichment and common law claims brought by United States). Although the government's complaint-in-intervention relates back to the date of Ven-A-Care's original filing on August 13, 1997 under the FCA, the government points to no legal basis for applying Fed. R. Civ. P. 15(c)(1) to the common law claims. For the reasons explained in Baylor, there is no relation back under Fed. R. Civ. P. 15(c)(2) because no notice was given of the complaint. Baylor, 469 F.3d at 270. Thus, the

---

[10] This statute provides, in pertinent part, that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later ...."  28 U.S.C. § 2415(a).

[11] This statute provides, in pertinent part, that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues ...."  28 U.S.C. § 2415(b)

government cannot recover on a theory of unjust enrichment for claims that accrued prior to August 23, 2000; similarly, the government cannot recover on its action for fraud for any claims that accrued prior to August 23, 2003.

## D. Rebate Agreements and 42 U.S.C. § 1396r-8

42 U.S.C. § 1396r-8 states that in order for a drug manufacturer to receive payments from the Medicaid program, the manufacturer must have first "entered into and have in effect a rebate agreement" with the federal government.  On February 28, 1991, Dey entered into such a rebate agreement with the government pursuant to this statute.  Dey argues in its motion to dismiss that this rebate agreement, because it is an express contract that controls the subject matter of the government's claims, precludes the government from recovering on its claims under the FCA and common law - including fraud and unjust enrichment.

Each Rebate Agreement specifies that "nothing in this Agreement shall be construed as a waiver of relinquishment of any legal rights of the Manufacturer or the Secretary under the Constitution, the Act, other federal laws, or state laws." Rebate Agreement § IX(d).  As this provision in the agreement makes clear, the federal government retains its ability to exercise its rights under the common law and under the FCA, notwithstanding this agreement.

21

**E. Miscellaneous**

The Court **DENIES** the motion to dismiss the claims under Rule 9(b) because the allegedly fraudulent AWP and spread for each drug was pleaded with particularity, see <u>California ex rel. Ven-A-Care</u>, 478 F. Supp. 2d at 171-72; **DENIES** the motion to dismiss based on the government's knowledge of the fraud, see <u>id.</u> at 174-75; **DENIES** the motion to dismiss because there was no false claim, see <u>id.</u> at 172-77; **DENIES** the motion to dismiss the fraud claim, see <u>id.</u>; **DENIES** the motion to dismiss the unjust enrichment claim, see <u>Massachusetts v. Mylan Labs.</u>, 357 F. Supp. 2d 314, 324 (D. Mass. 2005); **DENIES** the motion to dismiss based on the failure to allege that the defendants presented or caused to be presented a false claim, see <u>United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc.</u>, __ F Supp. 2d __, 2007 WL 1334496, at *2-3; **DENIES** the motion to dismiss for failure to plead sufficient facts to state an anti-kickback claim, see <u>id.</u> at *3-6; and **DENIES** the motion to dismiss based on the argument that the defendants rendered no implied certification under the False Claims Act, see <u>id.</u>

**ORDER**

Defendants' motion to dismiss [Docket No. 3507] is **ALLOWED**, in part, and **DENIED**, in part.  The unjust enrichment claim is dismissed for all claims that accrued prior to August 23, 2000. The action for fraud is also dismissed for all claims that

accrued prior to August 23, 2003.  In all other respects, the motion to dismiss is denied.

The government shall produce forthwith all pleadings in this case that relate to Dey, but may redact those portions specifically related to another company.  The clerk shall unseal all pleadings in this case except those specifically related to another defendant.

S/PATTI B. SARIS
United States District Judge
