# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| ALL ACTIONS | |

**NOTICE OF FILING MDL PLAINTIFFS' PRESENTATION PURSUANT TO THE ORAL REQUEST OF THE COURT DURING THE GSK SETTLEMENT FINAL APPROVAL HEARING ON JULY 19, 2007**

Pursuant to the oral request of the Court at the GSK Settlement Final Approval hearing conducted on July 19, 2007, MDL Co-Lead Counsel hereby submit the presentation relied upon at the hearing.  The presentation is attached hereto as Exhibit A.

DATED:  July 23, 2007

By____**/s/ Steve W. Berman**_____
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
820 North Blvd., Suite B
Oak Park, IL  60302
Chicago, IL  60601
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>

Docket No. MDL 1456

  I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on July 23, 2007, I caused copies of **NOTICE OF FILING MDL PLAINTIFFS' PRESENTATION PURSUANT TO THE ORAL REQUEST OF THE COURT DURING THE GSK SETTLEMENT FINAL APPROVAL HEARING ON JULY 19, 2007** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

               /s/ Steve W. Berman
             Steve W. Berman

# EXHIBIT A

# AWP GSK MDL SETTTLEMENT

# MDL Plaintiffs' Presentation

## Final Approval Hearing

1

# An Overview of the

# GSK Settlement





**$65.8 Million**
**($65.5M + $300K)**

 

**CONSUMERS**

**30% ($19.74 Million)**

**TPPS**

**70% ($46.06 Million)**

4

# Recovery Relative to Damages

<u>Consumers</u>

- Consumers are recovering <u>more than 62%</u> of their total damages
- Consumers damages $31.7 Million
- Consumer recovery $19.74 Million plus $900K for notice or $20.65 Million
- $20.65 Million / $31.7 Million = 62%

# What Do Consumers Get?

- After massive notice program, there are 12,895 consumer claims

- Every consumer will receive at least their single damage and some will receive more

- The total pot available to consumers is more than 62% of all consumer damages

6

# Recovery Relative to Damages

<u>TPPs</u>

- TPPs are recovering 12% of their total damages
- TPP damages $384 Million
- TPP recovery $46.06 Million
- $46.06 Million / $384 Million = 12%

# $46.06 Million for All TPP Claims

"True Up" Between TPPs and ISHP Group Funds

50% ($23.03 Million)

Initial Allocation to Satisfy TPP Class Claims

50% ($23.03 Million)

Initial Allocation to Satisfy all ISHP Group Member Claims

$11 Million Paid to ISHP Group as "Quick Pay"

$12.03 Million Remaining Subject to "True Up"

# ISHP Quick Pay

- Other than the $11 Million in Quick Pay, ISHP Group Members are treated identical to TPP Class Members in process as well as substance

- Must submit the same claim documentation as Class TPPs

- Subject to an identical audit process from Claims Administrator as Class TPPs

- Share equally in all expenses, including attorneys fees, notice and claims administration with all Class TPPs

9

# True Up Between TPP Class and ISHP Group Members

TPP Class % of total TPP Pot    =    $$\frac{\text{Total Class TPP Recognized Claims}}{\text{TPP Class Recognized Claims + ISHP Group Recognized Claims + TPP Opt-Out Recognized Claims}}$$

ISHP Group % of total TPP Pot    =    $$\frac{\text{Total ISHP Group Recognized Claims}}{\text{TPP Class Recognized Claims + ISHP Group Recognized Claims + TPP Opt-Out Recognized Claims}}$$

10

# GSK Refund

- No refund to GSK based on Consumer Opt-outs

- GSK refund results only from TPP Opt-outs

- Calculated to equal the amount the TPP Opt-Out would have received from the Settlement if they filed a claim

# TPP True Up Example

| Assumptions: | TPP Recognized Claim Total | = | $39 Million |
|---|---|---|---|
| | ISHP Recognized Claim Total | = | $59 Million |
| | TPP Opt-Out Recognized Claim Total | = | $2 Million |

TPP% = $\dfrac{\$39\ \text{Million}}{\$39M + \$59M + \$2M}$  = 39%   x  $46.06 Million  =  $17,963,400

ISHP% =     $59 Million/$100M          = 59%   x  $46.06 Million   =  $27,175,400

TPP Opt-Out =     $2 Million/$100M        = 2%   x  $46.06 Million   =  $921,200

ISHP Group Reversion Payment = $27,175,400 – $11M Quick Pay = $16,175,400

# Class Claim Amount Calculations

• Claims for all class members and ISHP Group members calculated by multiplying the total "Out of Pocket" expenditure multiplied by a "Recognized Claim Percentage" for each GSK Drug

Group A (Kytril + Zofran) RCP = 50%

Group B (all other drugs) RCP = 5%

13

# Class Claims Amount Calculations

- Consumer Claims Subject to a $100 Minimum Payment

- Consumer will be paid the <u>greater</u> of his/her recognized claim or $100

# Disposition of Excess Funds Not Distributed to Class Members

- Disposition of any funds remaining in the consumer pot after distribution subject to a binding mediation with MDL Mediator Eric Green

- All parties are entitled to participate, including States, Consumers, TPPs, ISHP Group

- Cannot be awarded to GSK

- Eric Green's decision subject to review by this Court

# Payment of Expenses

•Expenses related to notice to consumers & TPPs to date $3.2 Million.  Over $3.1 Million related to Consumer Notice.

• Total Expenses to complete administration & settlement (phone bank, website, claims processing) estimated to be approx $3M.

•All expenses are shared by each constituency in proportion to the relative amount of funds designated to that constituency.

Consumers 30% of all expenses

TPPs        35% of all expenses (50% of 70%)

ISHPs       35% of all expenses (50% of 70%)

16

# What is Being Released?

<u>Includes</u>: All claims related to drug price published (AWP, SLP, WAC, NWP, WWP, and Direct Price) and any marketing related to such price, that were or could have been alleged in the MDL Complaints as they relate to the drugs subject in the Settlement.

<u>Excludes:</u> breach of contract, economic injury claims, product liability, breach of warranty, personal physical injury, intellectual property, and any claim related to efficacy, safety, or manufacture of GSK drugs.

17

# How was Settlement Accomplished?

18

# Complex Litigation

- Review 2.8 Million pages produced by GSK
- Creation of a coded database of documents
- Analyze transactional data
- Expert analysis & review
- 45 GSK specific depositions
- Non-Party Discovery
- Motion Practice (Discovery)
- Motion Practice (Dispositive Motions / Class Certification)

# Global Settlement Discussions

- Span a total of 2 years

- Detailed exchange of factual & legal arguments

- Detailed analysis & discussion of damages

- Involved expert analysis on both sides

-  Extensive use of MDL Mediator Eric Green

- Interim phone calls back and forth in-between mediation sessions

# Global Settlement Discussions

Process included not just Co-Leads and GSK Counsel, but also included:

- Attorneys General of Participating States

- In-House council for BCBS of Massachusetts

- Representative of Pipefitters Health & Welfare Fund

- Lead Counsel for ISHP Group

- Representatives of consumer groups

# Allocation of Global Fund

- Each constituency represented by separate counsel
- Co-Leads did not participate
- Consumers represented by Dianne Nast of Rhoda Nast and Kent Williams of Williams Law Firm
- TPPs represented by Jonathan  Karmel of The Karmel Law Firm assisted by ISHP group counsel Richard Cohen of Lowey Dannenberg.

22

# Allocation of Global Fund

- Once allocation between States, Consumer and TPPs accomplished, TPPs and ISHPs negotiated the split of TPP funds
- Co-Lead counsel helped to structure the True Up process based on past experience

# What Has Happened Since Preliminary Approval of the Settlement?

I.   Notice to the Class

II.   Survey of Consumer Opt-Outs

III.   Objections to the Settlement

24

# Notice to the Class

• Notice to consumers and TPPs by direct mail and publication

• Web page (www.gsksettlement.com) established to disseminate information and forms to class members

• Call center established to answer class member's questions about the Settlement

25

# Notice to Consumers

- <u>Direct Mail</u>: 2.5 Million letters to Part B Consumers enclosing Notice, Claim Form and Opt-out Form at cost of $1.3 Million

- <u>Publication</u>: Approximately $1.8 Million spent on publication of notice in national media from February to March, 2007 including:

| | |
|---|---|
| • Parade Magazine<br>• USA Weekend<br>• Better H&G<br>• Jet Magazine<br>• Sports Illustrated | • National Geographic<br>• People<br>• Reader's Digest<br>• Selecciones (Spanish)<br>• Time<br>• US News & World Rpt |

26

# Notice to TPPs

- <u>Direct Mail</u>:  43,000+ letters to TPPs nationally enclosing notice and claim form

- <u>Publication</u>: Noticed published in national TPP trade magazines in February 2007 including:

•National Underwriter Life & Health

• Human Resources Magazine

27

# TPP Claims/Opt-Outs

- 2,028 claims from TPP class members

- Processing/auditing of claims underway.  Process includes:

  - Verifying receipt of correct data

  - Notification of claim deficiency/time to cure

  - Elimination of any overlap in claims between TTPs or among TTPs & ISHPs

  - Calculation of recognized claims for each TTP

- Based on past experience 9-12 months before checks mailed

# TPP Claims/Opt-Outs

- 12 TPP Opt-Outs

- Listed on <u>Exhibit 4</u> to Declaration of Thomas Glenn

- Each Opt-Out relatively small in size

- Will not result in a large refund to GSK

# Consumer Claims/Opt-Outs

- To date 12,895 claims filed by Consumer Class Members
- Processing/Auditing of claims underway. Process includes:
  - Verifying receipt of valid proof of  payment
  - Notification of deficiency/ time to cure
  - Audit of sample of claims and outliers
  - Calculation of recognized claim for each consumer
- Class counsel has requested that <u>CCS prioritize processing of consumer claims</u>
- Based on past experience checks mailed in 5-6 months

30

# Consumer Claims/Opt-Outs

- CCS has entered approximately 2000 consumer claims into its database to date

- Based on these *unaudited* claims to date the average consumer claim is $209

- Based on this preliminary average, total of 12,895 claims results in total payment to consumer claimants of $2.7 Million

# Consumer Claims/Opt-Outs

• 21,365 Consumers filed requests for exclusion

• Evidence that some consumers inadvertently filed for exclusion while intending to file a claim

• Suspicion that many consumers who opted out were not in fact class members (did not pay out of pocket)

# Opt-Out Survey Results

- 15.65% of survey sample determined to be actual class members

- Of this group, 16% indicated they intended to file a claim by submitting opt-out form

- Another 18% of the group contacted indicated that if given the chance they would file a claim and withdraw their opt-out

- Court approved the mailing of another claim form mailed to everyone who filed an exclusion, returnable by <u>July 31st, 2007</u>

33

# Opt-Out Survey Results

- 21,365 consumer Opt-Out forms

15.65%   of   21,365        =        3,343

minus 16%  of 3,343        =        2,809

2,809 true Consumer Class Members intended to exclude themselves from the Settlement

# Opt-Out Survey Results

• Those surveyed gave a number of reasons for decision to Opt-Out

> • 30% could not find their proof of payment

> • 28% did not understand terms or whether they were eligible

• Only 2.5% said they wanted the preserve their right to sue on their own

# Objections to the Settlement

- 1 TPP objection from Health Care Services Corporation (Docket No. 4416).  Withdrawn.

- 1 Consumer objection from Demra Jordan (Docket No. 4403).

- 1 objection from Commonwealth of PA (Docket No. 4427).

# Objections to the Settlement

• Demra Jordan provides no substantive basis for objection other than an unsupported statement that the settlement class cannot be certified "due to a lack of predominance of common issues."

• This Court has addressed all aspects of class certification, including issues related to predominance under Rule 23 in its August 16, 2005 Order.

# Objections to the Settlement

• Commonwealth of PA objects to the participation by TPPs and ISHPs in any mediation over excess consumer funds

• PA entered into its' agreement with GSK on 2/12/07, <u>six months</u> after the Settlement Agreement was made public

• PA's separate settlement agreement expressly acknowledges the terms set forth in the Settlement Agreement regarding the mediation

• PA accepted those terms and $809,000 as a participating state under the terms of the Settlement Agreement

38

# Why is the Settlement Fair, Adequate and Reasonable?

# Factors to Consider

- Comparison of Settlement with likely results of litigation
- Stage of the litigation at settlement
- Quality of Counsel
- Conduct of the Negotiations
- Risk, complexity, expense and duration of the litigation

*In re Compact Disc.*, 216 F.R.D. at 206

# Comparison of Settlement to Likely Results of Litigation

- Damages Estimates from Declaration of Raymond Hartman in Support of Plaintiffs' Claims of Liability and Calculation of Damages (Filed Under Seal on 12/15/05)

- Dr. Hartman used a zero threshold for liability and damages for Class 1 and Class 2 (But for AWP=ASP)

- Class 1 (Part B Consumers)     = $7.7 Million
- Class 2 (MediGap TPPs)            = $38  Million
- Class 3 (TPPs and Consumers)  = $370 Million

Total Single Damages = $415 Million

41

# Comparison of Settlement to Likely Result of Litigation

Total Recovery = $65.5M + $1.2M from Litigating State Fund = $66.7 Million

$66.7M / $415M = Total Recovery of 16% of Damages

# Comparison of Settlement to Likely Result of Litigation

<u>Consumer Damages</u>

Class 1 =  $7.7 Million

Class 3 damages to consumers approx 6.5% of total or 6.5% of $370M = $24 Million

Total Consumer Damages = $31.7 Million

Total Consumer Damages = 7.6% of total damages yet they receive 30% of the Fund

43

# Comparison of Settlement to Likely Result of Litigation

<u>TPP Damages</u>

Class 2 =  $38 Million

Class 3 damages to TPPs approx 93.5% of total or 93.5% of $370M = $346 Million

Total TPP Damages = $384 Million

Total TPP Damages = 92.5% of total damages yet they receive 70% of the Fund

# Damages vs. Recovery



# Factors to Consider

- Stage of the litigation at settlement
- Quality of Counsel
- Conduct of the Negotiations
- Risk, complexity, expense and duration of the litigation

# Attorneys′ Fees

# Aggregate Loadstar Crosscheck

$$\frac{\$52{,}279{,}201 \text{ (total loadstar)}}{\$21{,}615{,}000 \text{ (fee request)}} = .38 \text{ multiplier}$$

$$\frac{\$52{,}279{,}201 + \$5{,}561{,}128 \text{ (expenses)}}{\$21{,}615{,}000} = .34 \text{ multiplier}$$

48

# "GSK Only" Crosscheck

- Assume 75% of work done for Track I
- 5 Track I Defendants (20% each)

$57M loadstar x 75% x 20% = $8.55M

$5.6M expenses x 75% x 20% = $840K

$21,615,000 fees - $840K GSK expenses = $20.77M

$$\frac{\$8.55M}{\$20.77M} = 2.4 \text{ multiplier}$$

49