# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Master File No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

**DECLARATION OF DANIEL W. RYAN**

I, Daniel W. Ryan, pursuant to 28 U.S.C. §1746, on oath, depose and state as follows:

1. I am the Fund Administrator of United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UFCW"). I have personal knowledge of the matters stated herein and would testify in court to the same if called upon to do so. I submit this Declaration in response to the Court's request that class representatives for Plaintiffs' Settlement with Defendant GlaxoSmithKline ("GSK") itemize the time they spent assisting class counsel with prosecuting their claims against GSK.

2. I began discussing the possibility of UFCW becoming a plaintiff in this case with UFCW's attorneys and attorneys for the plaintiffs in the fall of 2001. I spent an estimated five hours discussing possible standing issues, the availability of relevant documents and the responsibilities UFCW would take on if it became a plaintiff in this case.

3. UFCW's claims data resides in various electronic databases. To determine if UFCW paid for the drugs at issue in this case, in the spring of 2002 I or employees working under my direction spent an estimated 6.5 hours meeting with a medical consultant, computer consultant and attorneys for the plaintiffs to devise and carry out a plan for identifying and locating proof of such payments in UFCW's databases. In December 2002 I spent

approximately two hours with attorneys for the plaintiffs drafting, editing and locating exhibits for my affidavit, which attested to the existence of this data.

4. Over the course of two years, throughout 2003 and 2004, I spent an estimated 22.5 hours communicating with attorneys for the plaintiffs regarding discovery requests and document production issues. I corresponded by mail and e-mail, teleconferenced and attended meetings, making myself constantly available to answer questions concerning Medicare reimbursement, beneficiary co-pays, and the nature of UFCW's business and methods of collecting and storing data. I worked with an IT consultant to search and collect documents from UFCW's purchase data, and assisted attorneys for the plaintiffs in retrieving responsive documents held by third parties, like UFCW's PBM consultant, The Segal Company. I met with attorneys for the plaintiffs on several occasions at UFCW's facilities to give them access to documents contained in its files or on the computer systems of its employees. During this time I also spent an additional 1.5 hours consulting with attorneys for the plaintiffs regarding amendments made to the complaint and an estimated two hours receiving various status updates.

5. I was deposed twice in this matter, on March 16, 2004 and again on April 30, 2004. I spent an estimated 24.5 hours scheduling, traveling to, preparing for and attending these depositions, as well as an additional 2 hours reviewing my transcripts.

6. In the fall of 2004 I worked with attorneys for the plaintiffs for approximately two hours to draft, edit and locate exhibits for my affidavit in support of class certification.

7. In the fall and winter of 2004 I also communicated frequently with my attorneys regarding a motion to compel additional documents from UFCW. In the wake of this motion I met with my attorneys to discuss electronic discovery issues and the logistics of producing

2

supplemental claims data. I spent an estimated seven hours on this aspect of the case and the subsequent supplemental production.

8.      In September and October 2005, I assisted attorneys for the plaintiffs in their effort to identify and contact individual UFCW beneficiaries in response to this Court's order requesting the addition of individual Class 3 plaintiffs. I spent an estimated four hours running searches in UFCW's database to locate such individuals, conferring with attorneys for the plaintiffs and working with them to draft and send letters to the large number of beneficiaries identified.

9.      I continued to work with attorneys for the plaintiffs in the coming months by spending an estimated three hours in further searches of UFCW's databases for supporting documentation that these Class 3 plaintiffs had taken and paid co-pays for the drugs at issue in this case.

10.     In August and September 2005 I spent 1.5 hours meeting with attorneys for the plaintiffs to discuss the status of the case in light of the Court's class certification decision.

11.     Finally, in the spring of 2005, I spent an estimated three hours receiving status updates and meeting with attorneys for the plaintiffs to discuss and review the draft GSK settlement.

12.     Throughout this litigation, I have always stayed in contact with my attorneys on a regular basis, receiving information about the status of the case, answering any questions they had, and generally being available to assist with the lawsuit in any way possible.

13.     I have not made contemporaneous records of my time as an attorney would; however, I have provided my best estimates of the time I expended to my attorneys, who then

3

cross-checked my numbers against their own time records to make the estimates as accurate as possible.

14. The total number of hours UFCW, as opposed to and not including its attorneys, has spent on activities related to the litigation of this case is 86.5 hours.

15. I understand from Co-Lead Counsel the Court indicated at the final approval hearing that a fair rate for reimbursement for time spent on the litigation might be $100.00 per hour. I also understand from Co-Lead Counsel that they intend to ask the Court to reimburse 20% of the total time from the GSK Settlement given that GSK was one of a total of five Track I Defendants. Using those figures as a guide, I calculate UFCW's requested reimbursement from the GSK Settlement fund to be $1,730.00. The calculation of this amount is set forth below:

86.5 hours x $100 = $8,650.00 x .20 = $1,730.00

I declare under penalty of perjury that the foregoing is true and correct.

Date: July 25, 2007

Daniel W. Ryan