UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF CLASS 1
ASTRAZENECA SETTLEMENT AND IN RESPONSE TO THE
<u>HAVILAND DECLARATION</u>**

001821-13  185815 V1

I, Steve W. Berman, affirm under penalty of perjury as follows:

**A.     Background**

1.     I am one of the Co-Lead Counsel for plaintiffs. I have acted as the chairperson for the Co-Lead group and Lead Trial Counsel. I was also the principal contact with the mediator Eric Green with respect to the AstraZeneca settlement.

2.     I begin this declaration by stating what a shame it is that one has to respond to the assertions of Mr. Haviland. This case has been pending since 2001. Judge Saris has remarked on many occasions how pleased she has been with respect to the exemplary conduct of counsel. Until recently, there has been no bickering between plaintiffs and defense counsel or among plaintiffs' counsel. Enter Mr. Haviland.

3.     The Co-Lead Counsel, Messrs. Wexler, Kodroff, myself, Sobol and Edelson have been vigorously prosecuting this case since 2001. We have spent over $40 million in attorneys' time, and over $10 million in costs. I have personally devoted a great deal of my practice to this case. I tried the Class 2 and 3 trial as Lead Trial Counsel and was prepared to try the Class 1 case against AstraZeneca. My trial team consisted of Sean Matt and Thomas Sobol of Hagens Berman Sobol Shapiro, Jennifer Connolly of The Wexler Firm, and John Macoretta of Spector, Roseman & Kodroff. Mr. Haviland was included to a slight degree.

4.     The effort to prosecute this case has been truly monumental. Nonetheless, Mr. Haviland has made a negligible financial contribution as well as a negligible contribution to the work required.

5.     Co-Lead Counsel are typically proposed by counsel and selected by the court if they have a demonstrated a track record of leadership and an ability to listen to others and forge a consensus. In this case, Co-Lead Counsel have voted on how to proceed on hundreds of occasions, even where one or more of us may not have agreed with the decision. We have been

able to move the case forward even when there were differences in viewpoints.  At all times, any lead can independently present a view to the Court.

6. Several years into the case, Mr. Haviland's former firm Kline & Specter raised the issue of becoming an additional Co-Lead Counsel.  His firm offered to contribute financially on a going forward basis equal to the other lead counsel.  In addition, Shannin Specter is an experienced trial lawyer, and he offered to help try the case.

7. For these reasons, we agreed to his firm being a Co-Lead and worked together well until shortly before trial his firm withdrew from the case when Mr. Haviland departed from the firm.

**B.    Trial Preparation for Class 2/3 and AstraZeneca Class 1**

8. The plaintiffs' damage experts are Drs. Hartman and Rosenthal.  I have spent in excess of 1,000 hours working with these experts.

9. At some point in the last year Mr. Haviland has had some disputes with Dr. Hartman's opinions.  At my encouragement, at one point, he aired those disputes with both Dr. Hartman and Dr. Rosenthal.  Eventually, Drs. Hartman and Rosenthal indicated they wished no further communications with Mr. Haviland as they disagreed with his comments and found the dialogue was not productive and was distracting them from what needed to be done.

10. I circulated drafts of Dr. Hartman and Dr. Rosenthal's proposed direct testimony and/or opinions for the Class 2 and 3 trial and the AstraZeneca Class 1 trial.  Mr. Haviland did not provide input or suggestions other than his original comments.  Those documents were filed with the Court, and Mr. Haviland did not file his own objection.  We proceeded to put Drs. Hartman and Rosenthal on the stand at trial, and Mr. Haviland expressed no objections.  The point is that Mr. Haviland quarrels with our experts' methodology.  Yet, that is the methodology

he was prepared to let be used at trial.  He did not offer his own expert or offer any expert analysis to support his contentions.

11. Before the AstraZeneca mediation, I prepared for trial.  This including conducting a focus group trial, preparing opening statements and exhibits, witness outlines, and the multitude of tasks required to ready a case for trial.  I personally reviewed every exhibit offered by both sides.  Mr. Haviland did not attend the mock trial, nor did he participate in any of the pretrial tasks in a meaningful fashion.

**C.      Settlement Negotiations**

12. At the time we started the settled negotiations with AstraZeneca, I felt that as a result of the work outlined above, I was intimately familiar with the case and its strengths and weaknesses.

13. Out of a concern over consumer payouts and claims rates in prior cases, I canvassed how consumers had fared in *Lupron* and other drug settlements.  It seemed to me the payouts to Class Members could be improved.

14. Therefore, I developed with Dr. Hartman a claims methodology based on monthly use of Zoladex and suggested we double that so that a consumer would be incentivized to claim and would obtain a substantial recovery if he or she made a claim.  I spent many hours on this formula, and it became a lynchpin of our settlement strategy.  Thus, a Class Member who began to use Zoladex in 2002, for example, could recover $4,400.  This far exceeds any payment in the *Lupron* settlement that Mr. Haviland was involved in and ultimately supported.

15. In connection with this novel payout/claims approach, Mr. Haviland contributed nothing to the process.  At one point I challenged him when he began complaining about the formula and asked how he could oppose double damages based on a single damage figure that by

itself far exceeds the payouts in *Lupron*, a case in which liability was stronger. He did not respond and has never done so.

16. Mr. Haviland claims that I attempted to make the claim form scary. This is a sad distortion of the facts. During the negotiations, AstraZeneca was insisting that the claim form be an affidavit. We (excluding Mr. Haviland who made no contribution on this effort) refused to force elderly Class Members to find a notary and to make a claim under affidavit. AstraZeneca was concerned that, if all they had to do was sign a form stating that they took Zoladex, fraud could occur. I thus passed that concern on to my Co-Lead Counsel in an e-mail that Mr. Haviland makes much of. Attached as Exhibit A is the proposed claim form we sent to Eric Green in our original demand. You can see it is quite simple, and its simplicity is what AstraZeneca was reacting to. AstraZeneca wanted to do something to make the Class Members think carefully about being truthful. We thus advocated a simple form that states that it is made under penalty of perjury. I used the word "scary" as a short-hand reference to this. The claim form is attached hereto as Exhibit B and the Court can decide if it is scary. It is similar to the claim form in *Lupron*.

17. Though Mr. Haviland claims we are not concerned about consumers, we also injected a clause allowing those who had not paid the co-pay they were obligated to pay to do so and be reimbursed under the settlement, thus clearing their debt. This was quite pro-consumer. Mr. Haviland did not assist in making or developing this proposal.

18. Mr. Haviland advocated that we simply send checks out and not require any claim form. However, the CMS data listing Class Members who took Zoladex does not tell us which Class Members were out of pocket and if so by how much. It does not distinguish between those with a full co-pay obligation and those with partial co-pay insurance. If we simply paid

everyone, we could be prejudicing those who paid a full co-pay. The difference between Class Members making full payment and those with partial insurance is significant.

19. Mr. Haviland claims that we capitulated to AstraZeneca. The Court knows how much we have fought, has seen us try the Class 2 and 3 case for six weeks and knows that capitulation is a foreign concept to us. This settlement, which may result in double or almost treble damages to claimants (in light of the Court's subsequent ruling on the 30% threshold applying to Class 1), is an excellent result and on the high end of acceptable settlement ranges. Given the Court's 30% ruling Class Members could obtain *in excess* of double damages. I am unaware of many settlements where that is possible.

20. On the day of the mediation sessions with Professor Green, Mr. Haviland left before it was completed. Prior to his leaving Messrs. Edelson and Kodroff communicated to me that Mr. Haviland indicated that his client had signed off on the settlement. I was surprised he left before the work was complete (he also arrived late), but had no clue he was not in accord with the result.

21. Even if I had known that Mr. Haviland was not in agreement with the settlement, I would have still proceeded. Mr. Townsend, the other named plaintiff, was in full agreement with the settlement. The settlement, which will fully compensate those who make a claim, is in my view certainly fair. And given the age of Class Members, it is in their interests to get this done rather than to have a trial and await a certain appeal.

22. In addition to the settlement issues, Mr. Haviland has asked to be a Co-Lead Counsel. I do not believe that it is in the best interests of the Class to appoint him as such. Mr. Haviland has become a flame thrower, not a team member. He does not contribute in a meaningful way to the work and often his work is incomplete. I also believe he cannot

meaningfully co-lead this case, as he has not done so to date either financially or on a performance basis.

 Executed this 27th day of July, 2007.

<u>/s/ Steve W. Berman</u><br>
STEVE W. BERMAN

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on July 27, 2007, I caused copies of **DECLARATION OF STEVE W. BERMAN IN SUPPORT OF CLASS 1 ASTRAZENECA SETTLEMENT AND IN RESPONSE TO THE HAVILAND DECLARATION** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

     /s/ Steve W. Berman
    Steve W. Berman

# Exhibit A

1.  **Proposed Claim Form and How It Could Work**

    Class member starts Zoladex in 2002.

    Claim Form:

    > Did you make out of pocket payments for the 20% co-pay portion for Zoladex?
    >
    > A.   Yes ☐   No ☐
    >
    > Where did you start treatment?
    >
    > Write Year _____

2.  **How a Claim Would be Calculated**

    Assume a class member started treatment in 2002.

    | | | | |
    |---|---|---|---|
    | 2002 overcharge per month | $62.81 x 12 | = | $ 753 |
    | 2003 overcharge per month | $61.30 x 12 | = | $ 735 |
    | 2004 overcharge per month | $59.73 x 12 | = | $ 716 |
    | | Total Recognized Claim | = | $2,204 |
    | | Total Claim Would be Doubled | = | $4,408 |

# Exhibit B

# ZOLADEX® SETTLEMENT CLAIM FORM

## How to Apply For a Payment from the Settlement.

If you would like to submit a claim in the Settlement, complete this form and mail it to the address below, along with proof of payment for Zoladex® (see Section D below). You may be asked for more information at a later time.

*<u>Your claim must be postmarked by Month 00, 0000.</u>*

<u>It should be mailed to:</u>     AstraZeneca AWP Settlement Administrator
                              P.O. Box 000000
                              City, ST 000000

## Section A – Claimant Identification

Please indicate whether you are claiming on your own behalf as a Class Member or on behalf of someone else who is a Class Member:

 __  I am a Class Member

 __  I am the spouse of a deceased Class Member

 __  I am the legal representative of a deceased Class Member's estate

## Section B – Contact Information

_____
*Class Member's Name*                              *Class Member's Birth Date*

_____
*Applicant Name (if different)*

_____
*Street Address*                                   *Apartment*

_____
*City*                     *State*                          *Zip Code*

_____
*Name of provider(s) who administered Zoladex®*

## Section C – Purchase Information

In the box below, please specify the time period(s) during which you made a percentage co-payment for Zoladex®, including the starting month and ending month.

I made a percentage co-payment for Zoladex® during the following period (specify in the box):

---

I made a percentage co-payment for Zoladex® in _____ / _____ (month/year) and I stopped making a percentage co-payment for Zoladex® in _____ / _____ (month/year).

If there are additional periods of time during which you made a percentage co-payment for Zoladex, please specify the beginning and end of those time periods here:

---

If you had supplemental insurance that made part of your co-pay for Zoladex® at any time, but you still paid a percentage co-pay as well, specify the time period(s) in the box below:

---

Supplemental insurance made part of my co-pay for Zoladex® during the following period: _____ / ____ (month/year) to _____ / _____ (month/year)

If supplemental insurance made part of the co-pay during multiple periods, please describe here:

---

**Section D – Proof of Payment**

As part of your claim, you must provide proof that you made a percentage co-payment for Zoladex® under Medicare Part B.

**Any** of the following are acceptable as proof of a percentage co-payment for Zoladex®:

(1) A receipt, cancelled check, or credit card statement that shows a payment for Zoladex® (other than a flat co-payment); or

(2) A letter from a doctor saying that he or she prescribed Zoladex® and you paid part of the cost of Zoladex® (other than a flat co-payment) at least once; or

(3) A statement signed by you under penalty of perjury in the form supplied (see Section E below) that you paid a percentage co-payment for Zoladex during the period from January 1, 1991 through December 31, 2004; or

(4) Any of the above executed by a spouse of a deceased class member or a legal representative of the deceased class member's estate.

To the extent that you can obtain any of the aforementioned information as proof of payment for Zoladex®, please do so and include it with this Claim Form.

If, **after** receiving this Notice, you make a percentage co-pay for Zoladex® under Medicare Part B based on a bill that you received from a doctor or clinic related to taking Zoladex® from January 1, 1991 through December 31, 2004, you may submit a claim but **must** submit a receipt, cancelled check, or credit card statement evidencing the payment and proof that the payment was for Zoladex taken between January 1, 1991 and December 31, 2004 in order to be eligible to participate in the Settlement.

## Section E – Sworn Statement Regarding Payments Made

**I declare under penalty of perjury that the information provided here is, to the best of my knowledge, correct. I also declare under penalty of perjury that I paid a percentage co-pay for Zoladex® at some time during the period from January 1, 1991 through December 31, 2004. If not submitting this for myself, I am authorized to submit this form on behalf of the Class Member identified above because I am the spouse of a deceased Class Member or the legal representative of a deceased Class Member's estate.[1]**

_____

*Signature*                                                                 *Date*

---

[1] Please note that your signature on this Claim Form indicates that you declare, under penalty of perjury, that you (or someone on whose behalf you are acting) made a percentage co-payment for Zoladex® at some time during the Class Period. As a result, providing false information on this Claim Form could constitute perjury.