UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**DECLARATION OF JEFFREY L. KODROFF IN SUPPORT
OF CLASS 1 ASTRAZENECA SETTLEMENT
AND IN RESPONSE TO HAVILAND DECLARATION**

I, Jeffrey L. Kodroff, being duly sworn state as follows:

1. I am co-lead counsel in this case. I submit this Declaration in support of Class Counsel's Response to the Declaration of Donald Haviland, Jr. in response to the Court's directive concerning the AstraZeneca settlement.

2. I was present at the Friday, May 4, 2007 mediation with Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca). I also participated in numerous telephone calls and email distributions concerning all settlement discussions dealing with AstraZeneca that ultimately led to the proposed settlement.

3. During the course of the mediation Mr. Haviland was actively involved with all aspects of the negotiations. Based on both my discussions with Mr. Haviland and his actions, it was my understanding that Mr. Haviland and his client approved the settlement. In fact, Mr. Haviland ardently argued that his client should receive an incentive award of $25,000. There is no reason to actively argue for plaintiff incentive awards if you intend to object to the substantive terms of the settlement. Mr. Haviland never informed me or indicated in any way that he would not ultimately sign the memorandum of understanding or that he intended to object to the settlement.

4. Mr. Haviland, along with Mr. Edelson, left the mediation before the memorandum of understanding was finalized and signed in order to catch a flight back to Philadelphia. When I signed the memorandum of understanding I did not notice that Mr. Haviland's name was not included. The only names I noted at that time were my own and counsel for defendant. I also was unaware of any private discussions between Mr. Haviland and Mr. Green prior to reviewing Mr. Haviland's declaration.

5.  The claims process and recovery obtained in the AstraZeneca settlement – to which Mr. Haviland currently objects – are significantly better for consumer class members than the claims process and recovery obtained in the Lupron settlement – to which Mr. Haviland and his prior firm supported. While Mr. Haviland initially objected to the Lupron settlement and even filed two appeals to Judge Stearns' orders, Mr. Haviland and his prior firm ultimately supported the settlement, withdrew their appellate papers, actively endeavored to encourage all consumers to participate in the settlement and sought a fee. See the Joint Motion Relating to Implementation Agreement filed on June 10, 2005.

6.  The claims process, in the settlement with TAP Pharmaceuticals regarding the drug Lupron that Mr. Haviland and his prior firm ultimately supported, was more involved than the claims process being objected to now as part of the AstraZeneca settlement. In the Lupron settlement a consumer class member was required to have their claims form notarized. A consumer in the AstraZeneca settlement only needs to sign a declaration without the need for any additional notarization. The elimination of the need for notarization was a negotiation point during settlement discussions and sought based on what we learned from the Lupron settlement process.

7.  Consumer class members' recovery in the AstraZeneca settlement is significantly better than in the Lupron settlement. In the Lupron settlement consumer class members received full recovery of their single damages estimated at 50% of their out of pocket expenditures. In the AstraZeneca settlement consumer class members are entitled to receive double their damages, including interest, based on Dr. Hartman's calculated overcharges associated with the price inflation of Zoladex. Thus, consumer class member are getting two times their damages from AstraZeneca compared to just single damages from TAP. Moreover, based on the Court's

- 3 -

subsequent orders that damages for Class 1 only start after the 30% speed bump, the effective recovery for consumers from AstraZeneca becomes even greater that double their actual damages. This is especially telling considering that Lupron was a much more expensive drug that AstraZeneca's Zoladex. In fact, the average payment to consumers in the Lupron case is $1,065.66. While we do not know what the average payment will be in the AstraZeneca case we have estimated that named plaintiff Leroy Townsend is entitled to $11,102.46 under the current methodology.

8. The total AstraZeneca settlement is also comparable to the Lupron settlement Mr. Haviland and his prior firm supported. In Lupron, the net settlement fund available for distribution was $27.4 million. In the AstraZeneca settlement the net settlement fund is $24 million. It is my understanding that after distribution there is approximately $11 million of the Lupron consumer settlement fund that remains for cy pres distribution. If more than $10 million of the settlement fund remains after all authorized claims are paid, AstraZeneca wil pay $10 million for a cy pres distribution.

Executed this 27th day of July, 2007.

_____
JEFFREY L. KODROFF

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**
Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on July 27, 2007, I caused copies of **DECLARATION OF JEFFREY L. KODROFF IN SUPPORT OF CLASS 1 ASTRAZENECA SETTLEMENT AND IN RESPONSE TO THE HAVILAND DECLARATION** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                            **/s/ Steve W. Berman**
                                            Steve W. Berman