# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | MDL No. 1456 |
| LITIGATION | ) | |
| | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | Judge Patti B. Saris |
| | ) | |
| BRISTOL-MYERS SQUIBB TRIAL | ) | Chief Magistrate Judge Marianne B. Bowler |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF RAYMOND S. HARTMAN
## REVISED DAMAGES FOR TRACK I DEFENDANTS:
## CLASSES 2 AND 3

## I.    OVERVIEW

1.      Plaintiff's Counsel has instructed me to revise my damage calculations to incorporate the rulings set forth by Judge Saris in her "Findings of Fact and Conclusions of Law," filed June 21, 2007. [1]

2.      The methodology I use to recalculate damages here is identical to that used in my original declaration and court testimony.  However, I make the following adjustments for all Defendants:

   a.   I incorporate Judge Saris' drug by drug ruling for each Defendant.  I further discuss this in Section II below.

   b.   I incorporate Judge Saris' ruling to apply the 30% threshold to Class 2 damages.

   c.   In preparing for the Class 1 trial, Counsel asked that I move a portion of the damages calculated for Class 2 to Class 1.  Specifically, the copayment

---

[1] Findings of Fact and Conclusions of Law, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS, filed June 21, 2007.

amounts paid by consumers who participated in employer-sponsored plans were moved to Class 1.[2]

d.   In calculating prejudgment interest, I have been advised by Counsel to use a 12% compounded rate beginning in December 20, 2001 through August 1, 2007.

3.   Based on my original methodology and the changes outlined above, damages to the Track 1 Defendants are as follows (see Tables 1 – 3):

|  | **Class 2** | **Class 3** |
|---|---|---|
| **AstraZeneca** | | |
| Nominal through 2002 | $2,090,103 | $4,451,429 |
| With Prejudgment Interest | $3,901,892 | $8,310,176 |
| Nominal through 2003 | $2,609,466 | $5,556,047 |
| With Prejudgment Interest | $4,727,292 | $10,665,696 |
| **Bristol-Myers Squibb** | | |
| Nominal through 2002 | $187,789 | $183,454 |
| With Prejudgment Interest | $346,549 | $347,306 |
| Nominal through 2003 | $266,848 | $183,454 |
| With Prejudgment Interest | $472,194 | $347,306 |
| **Warrick** | | |
| Nominal through 2003 | $5,752 | |
| With Prejudgment Interest | $10,890 | |
| Nominal through 2003-Competitive Price | $2,288,848 | |
| With Prejudgment Interest | $4,223,337 | |

## II.   IMPLEMENTATION OF JUDGE SARIS' RULING

4.   I incorporate the following rulings into my recalculations

a.   The Class Period

i.   "The statute of limitations bars all claims by Classes 2 and 3 before December 1997.  When Congress passed the Balanced Budget Act of 1997, it put third party payors on inquiry notice that many AWPs were not true prices paid by physicians and pharmacies to acquire the pharmaceuticals.  The class period ends in 2003 when

---

[2]  It is assumed that six in ten (60%) of employer-sponsored supplemental insurance plans require beneficiaries to pay a 20% coinsurance.  See McArdle *et al.*, "Large Firms' Retiree Health Benefits Before Medicare Reform 2003 Survey Results," *Health Affairs*, January 14, 2004.

Congress passed the Medicare statute setting new reimbursement benchmarks. Thus, Classes 2 and 3 will include payments from December 1997 to December 2003."[3]

    ii. I have been directed by Counsel to implement this ruling for a Class Period from 1998 through 2003.

b. The 30% Threshold

    i. "The Court rejects plaintiffs' position with respect to the Medicare Class 2, that defendants acted unfairly and deceptively by having any spread between the published AWP and the true average of prices charged to providers, because the government and industry were well aware by the late 1990's that there was a 20 to 25 percent spread. This discrepancy was tolerated, in part, because of the need to cross-subsidize physician administration costs. Thus, while the spread violated the plain meaning of the Medicare statute; defendants' actions cannot be said to be unfair or deceptive within the meaning of Chapter 93A so long as the spread stayed generally within that expected range. Damages to Class 2 cannot be determined from the current trial record. The Court needs a breakdown of the damages for each drug, using the 30% threshold, for each of the years from 1998 until 2003 for which liability has been found."[4]

    ii. I recalculate Class 2 damages based on a 30% threshold.

c. For AstraZeneca,

    i. Judge Saris has found liability for Zoladex from 1998 through 2002 and accordingly I recalculate damages for Zoladex (see Table 1).[5]

    ii. Plaintiffs' Counsel has asked that I also present damages through 2003. Plaintiffs only received data requested from AstraZeneca through 2002; consequently, I was forced to extrapolate in order to determine 2003 damages. Had AstraZeneca submitted data through 2003, as I requested, I would have used those data to calculate 2003 damages using my damage methodology.

d. For Johnson & Johnson,

    i. Judge Saris has found no liability for any of the Johnson & Johnson drugs.[6]

---

[3] Findings of Fact, p. 6.

[4] Findings of Fact, p. 7.

[5] Findings of Fact, p. 164.

[6] Findings of Fact, p. 165.

      ii.  I do not present damages for Johnson & Johnson in this Declaration.

   e.  For Bristol-Myers Squibb,

      i.  For Class 2, Judge Saris has found:

- no liability for Etopophos;
- no liability for Paraplatin;
- liability for Taxol during 2001 and 2002;
- liability for Vepesid from 1998-1999 and 2001-2002,
- no liability for Vepesid tablets,
- liability for Cytoxan from 1998 through 2002,
- no liability for Cytoxan tablets,
- liability for Blenoxane from 1998 through 2002; and
- liability for Rubex 1998 through 2000 and 2002.[7]

      ii.  Judge Saris' finds that only Taxol has damages in Class 3 and only for 2001.

     iii.  Counsel has advised me that BMS and Plaintiffs have stipulated to nominal damages. I report these nominal damages and calculate prejudgment interest based on these stipulated numbers. (See Table 2).

     iv.  Plaintiffs' Counsel has asked that I also present damages through 2003. Plaintiffs only received data from BMS through 2002, and I consequently was forced to extrapolate in order to determine 2003 damages. Had BMS submitted data through 2003, which I requested, I would have used those data to calculate 2003 damages.

   f.  For Schering-Plough

      i.  Judge Saris has found no liability for any of the Schering-Plough drugs (aside from Warrick's albuterol sulfate).[8]

      ii.  I do not present damages for Schering-Plough in this Declaration.

   g.  For Warrick

      i.  Judge Saris has found Class 2 liability for Warrick's albuterol sulfate only in those years where Warrick's AWP, had it been reported accurately, would have affected the median price for the applicable J code. She found liability for 1998 and 1999 for the 5% solution and indicated that "the basis for damage calculations

---

[7] Findings of Fact, pp. 167-175.

[8] Findings of Fact, pp. 175-176.

is limited to the difference between the actual median AWP and the 'but for' median AWP had Warrick reported a true AWP."[9]

ii. I recalculate damages for Class 2, using Judge Saris' definition of damages; i.e., by taking the difference in the median price for the applicable NDC (see Table 3.a).

iii. Counsel has asked me to also calculate damages for albuterol sulfate based on a competitively determined AWP. I define the competitive (AWP) price to be ASP * 1.30. This is the benchmark that I use to calculate these damages (see Table 3.b).

- The calculation of economic damages generally compares actual prices with competitive prices.

- In this case, had the generic manufacturers behaved competitively, they would have driven their prices to cost, which is essentially the same for these manufacturers. As a result, the ASPs of these manufacturers would have been essentially the same.

- Assuming non-fraudulent reporting of AWPs by these manufacturers and using my threshold spread, the reported AWPs for all manufacturers would be at most 1.3 * the common ASP.

- Because the median AWP is less than or equal to this AWP, the estimate of damages using this method is conservative.

- I note that the cluster of AWPs resulting from this competitive paradigm is substantially different from the Nash Equilibrium that I presented in my Declaration. Specifically, all actual AWPs clustering in the Nash Equilibrium are substantially inflated relative to the cluster of AWPs resulting from the competitive paradigm.


  /s/ **Raymond S. Hartman**
Raymond S. Hartman
August 1, 2007

---

[9] Findings of Fact, pp. 176-177.

## Table 1: AZ Summary of Class 2 and 3 Damages Following the Saris Opinion (Massachusetts)

**CLASS 2**

**Nominal Damages**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 | Total Thru 2003 |
|------|------|------|------|------|------|------|-----------------|-----------------|
| Zoladex | $351,279 | $376,298 | $402,812 | $473,968 | $485,746 | $519,363 | $2,090,103 | $2,609,466 |
| **Total** | **$351,279** | **$376,298** | **$402,812** | **$473,968** | **$485,746** | **$519,363** | **$2,090,103** | **$2,609,466** |

**Damages with Prejudgment Interest (Through August 1, 2007)**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 | Total Thru 2003 |
|------|------|------|------|------|------|------|-----------------|-----------------|
| Zoladex | $665,021 | $712,387 | $762,582 | $897,290 | $864,611 | $825,400 | $3,901,892 | $4,727,292 |
| **Total** | **$665,021** | **$712,387** | **$762,582** | **$897,290** | **$864,611** | **$825,400** | **$3,901,892** | **$4,727,292** |

**CLASS 3**

**Nominal Damages**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 | Total Thru 2003 |
|------|------|------|------|------|------|------|-----------------|-----------------|
| Zoladex | $751,338 | $799,284 | $858,145 | $1,008,700 | $1,033,962 | $1,104,619 | $4,451,429 | $5,556,047 |
| **Total** | **$751,338** | **$799,284** | **$858,145** | **$1,008,700** | **$1,033,962** | **$1,104,619** | **$4,451,429** | **$5,556,047** |

**Damages with Prejudgment Interest (Through August 1, 2007)**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 | Total Thru 2003 |
|------|------|------|------|------|------|------|-----------------|-----------------|
| Zoladex | $1,422,391 | $1,513,160 | $1,624,592 | $1,909,615 | $1,840,417 | $1,755,520 | $8,310,176 | $10,065,696 |
| **Total** | **$1,422,391** | **$1,513,160** | **$1,624,592** | **$1,909,615** | **$1,840,417** | **$1,755,520** | **$8,310,176** | **$10,065,696** |

**Table 2: BMS Summary of Class 2 and 3 Damages Following the Saris Opinion (Massachusetts)**

**CLASS 2**

**Nominal Damages**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 | Total Thru 2003 |
|------|------|------|------|------|------|------|------|------|
| Blenoxane | | | | | | | | |
| Cytoxan | $14,141 | $14,401 | $12,886 | $8,856 | $8,603 | $10,115 | $58,886 | $69,001 |
| Rubex | $275 | $191 | $371 | | $13 | | $850 | $850 |
| Taxol | | | | | $55,745 | $55,745 | $55,745 | $111,489 |
| Vepesid | $23,814 | $22,096 | | $11,565 | $14,834 | $13,199 | $72,308 | $85,508 |
| **Total** | **$38,230** | **$36,688** | **$13,256** | **$20,421** | **$79,194** | **$79,059** | **$187,789** | **$266,848** |

**Damages with Prejudgment Interest (Through August 1, 2007)**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 | Total Thru 2003 |
|------|------|------|------|------|------|------|------|------|
| Blenoxane | | | | | | | | |
| Cytoxan | $26,770 | $27,264 | $24,394 | $16,766 | $15,313 | $16,075 | $110,507 | $126,582 |
| Rubex | $521 | $361 | $702 | | $24 | | $1,608 | $1,608 |
| Taxol | | | | | $99,223 | $88,592 | $99,223 | $187,816 |
| Vepesid | $45,084 | $41,830 | | $21,894 | $26,403 | $20,977 | $135,211 | $156,188 |
| **Total** | **$72,374** | **$69,455** | **$25,096** | **$38,660** | **$140,963** | **$125,644** | **$346,549** | **$472,194** |

**CLASS 3**

**Nominal Damages**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 |
|------|------|------|------|------|------|------|------|
| Blenoxane | | | | | | | |
| Cytoxan | | | | | | | |
| Rubex | | | | | | | |
| Taxol | | | | $183,454 | | | $183,454 |
| Vepesid | | | | | | | |
| **Total** | | | | **$183,454** | | | **$183,454** |

**Damages with Prejudgment Interest (Through August 1, 2007)**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total Thru 2002 |
|------|------|------|------|------|------|------|------|
| Blenoxane | | | | | | | |
| Cytoxan | | | | | | | |
| Rubex | | | | | | | |
| Taxol | | | | $347,306 | | | $347,306 |
| Vepesid | | | | | | | |
| **Total** | | | | **$347,306** | | | **$347,306** |

**Table 3.a: Warrick Summary of Class 2 Damages (Massachusetts)**
**Based on the Difference Between Warrick's AWP and the "But-For" Median AWP**

**CLASS 2**

**Nominal Damages**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total |
|------|------|------|------|------|------|------|-------|
| Albuterol | $2,899 | $2,854 | | | | | $5,752 |
| | | | | | | | |
| **Total** | **$2,899** | **$2,854** | | | | | **$5,752** |

**Damages with Prejudgment Interest (Through August 1, 2007)**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total |
|------|------|------|------|------|------|------|-------|
| Albuterol | $5,488 | $5,402 | | | | | $10,890 |
| | | | | | | | |
| **Total** | **$5,488** | **$5,402** | | | | | **$10,890** |

**Table 3.b: Warrick Summary of Class 2 Damages (Massachusetts)**
**Based on the Difference Between the Median AWP and Warrick's ASP*1.3**

**CLASS 2**

**Nominal Damages**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total |
|------|------|------|------|------|------|------|-------|
| Albuterol | $377,040 | $457,798 | $481,185 | $390,317 | $352,546 | $229,962 | $2,288,848 |
| **Total** | **$377,040** | **$457,798** | **$481,185** | **$390,317** | **$352,546** | **$229,962** | **$2,288,848** |

**Damages with Prejudgment Interest (Through August 1, 2007)**

| Drug | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total |
|------|------|------|------|------|------|------|-------|
| Albuterol | $713,791 | $866,678 | $910,952 | $738,927 | $627,520 | $365,468 | $4,223,337 |
| **Total** | **$713,791** | **$866,678** | **$910,952** | **$738,927** | **$627,520** | **$365,468** | **$4,223,337** |