**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                    )
IN RE PHARMACEUTICAL INDUSTRY          )
AVERAGE WHOLESALE PRICE                   )
LITIGATION                                            )   MDL No. 1456
                                                    )
_____ )   Civil Action No. 01-12257-PBS
                                                    )
THIS DOCUMENT RELATES TO:             )   Judge Patti B. Saris
ALL CLASS ACTIONS                           )
                                                    )
                                                    )
_____ )

**DECLARATION OF SUMANTH ADDANKI, PH.D.**

**August 1, 2007**

# I.   Introduction

## A.   Qualifications

1.   I am an economist and a Senior Vice President at National Economic Research Associates, Inc. (NERA).  I testified earlier during the liability proceeding and my qualifications were detailed for the Court at that time.

## B.   Scope of the Engagement

2.   Counsel for Warrick Pharmaceuticals Corporation ("Warrick") have asked me to quantify the damages caused by Warrick, if any, in light of the Court's recent findings on liability.[1]  Specifically, I was asked to assess these damages based on the Court's finding that Warrick's "…reporting a true AWP would have resulted in the median shifting slightly downward." [2]

## C.   Overview of Findings

3.   Based on my analysis, described in more detail below, I find that even if the AWPs identified by the Court had been different in the manner identified by the Court that would not have resulted in any damages to Class 2 on Warrick's albuterol 0.5% in 1998 or in 1999.

## D.   Information Relied Upon

4.   In preparing this report, I (and economists working under my direction) have reviewed information from a variety of sources, including portions of the record in this proceeding and information publicly available from CMS.  In addition, I have relied on my experience and training as an applied microeconomist and my

---

[1] Findings of Fact and Conclusions of Law, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (June 21, 2007).

[2] Findings of Fact and Conclusions of Law, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (June 21, 2007) p. 155.

experience in analyzing the pharmaceutical industry.  A complete list of materials that have been relied upon in preparing this report is attached as Exhibit 2.

## II.   Background

5.   As I have noted in my previous submissions, median prices are, by their very nature, extremely difficult to manipulate or otherwise affect by any party acting unilaterally.  The Court has identified two specific instances in which it found that a median AWP would have "shifted slightly downward" if Warrick's AWP had been lower.[3]  Specifically, the Court held, in connection with 0.5% albuterol sulfate, that:

> In 1998, reporting a true AWP would have shifted the median from Warrick's AWP of $0.7495 to Aligen's AWP of $0.7325. …
> In 1999, reporting a true AWP would have shifted the median from $0.7410 to $0.7325.[4]

## III. Damages

### A.   Approach

6.   Based on the foregoing findings by the Court, evaluating the damages caused by Warrick is a straightforward matter and breaks down into the following two questions: first, by what amount would the reimbursement under Medicare for 0.5% albuterol sulfate have been lowered had the median AWP been lower, as found by the Court for each of the years 1998 and 1999?  Second, how many

---

[3] Findings of Fact and Conclusions of Law, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (June 21, 2007) p. 155.

[4] Findings of Fact and Conclusions of Law, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (June 21, 2007) n. 78, p. 155.

units of 0.5% albuterol sulfate were reimbursed to members of Class 2 in those years and might, therefore, have been affected?

7. The answers to these questions require more detailed analysis of the mechanisms by which CMS reimbursed for the product at issue, as well as detailed analysis of reimbursement data from CMS. I will deal with each of these in turn.

**B.    Medicare Reimbursement for 0.5% in 1998 and 1999 under K0504**

8. Pharmaceutical manufacturers typically report AWPs for their products on a package basis—in dollars and cents per bottle or other standard packaging; these numbers may be converted by the compendia, for comparison purposes, into a unit basis (such as price per milliliter or milligram).[5] CMS, too, expresses its reimbursement on a unit basis. For example, before 1997, CMS's reimbursement code for albuterol 0.5% solution (J7625) was expressed in milliliters. From 1997 forward, CMS's reimbursement codes for albuterol 0.5% (K0504 and J7618) were expressed in milligrams. The albuterol 0.5% AWPs discussed by the Court in its findings, on the other hand, are uniformly expressed on a milliliter basis— which is sufficient for analysis of medians and relative comparisons of different manufacturers' AWPs. However, in translating AWPs and median AWPs into CMS reimbursement rates, one must remember to re-express the AWPs in the units in which the reimbursement code is expressed (among other adjustments that must be made).

9. In 1997, CMS deleted J7625, the existing code for reimbursement of albuterol 0.5% on a milliliter basis and instituted K0504, a new reimbursement code

---

[5] For example, the last reported package price in Medispan for Warrick's albuterol 0.5% as of June 30, 1998, and in the Red Book, was $14.99 for a container of 20 ml. Medispan also provided a unit AWP for 1998 of $0.7495, which equals 1/20th of the package price of $14.99. "Comprehensive Price History File," 2005 Wolters Kluwer Health (Medispan), and 1999 Annual Red Book, p. 162. See Appendix A.

specified on a milligram basis.[6]  The overwhelming majority—over 99 percent—
of Medicare units for 1998 and 1999 were reimbursed under this code.

10.  Based on publicly available information about CMS's reimbursement
mechanisms, the steps involved in converting median AWPs to reimbursement
rates for K0504 are simple enough in principle.  As noted above, because the
AWPs for albuterol 0.5% discussed by the Court are expressed in cents per
milliliter, we must convert them first to a milligram basis.  This is a simple matter:
divide the AWP by 5, as there are 5 milligrams per milliliter in the albuterol 0.5%
solution.[7]

11.  Second, as the Court noted among its findings, beginning on January 1, 1998,
Medicare reimbursements were based on 95 percent of AWP, rather than the full
AWP.[8]

---

[6] See, e.g., DMERC Region A Service Office, DMERC Medicare News, No. 35 (December 1997) ("K0504 Albuterol, inhalation solution administered through DME, concentrated form, per milligram") (see Appendix B) and Office of the Inspector General, Department of Health and Human Services, "Are Medicare Allowances for Albuterol Sulfate Reasonable?", August 1998, OEI-03-97-00292, p. 2 ("Currently, suppliers bill Medicare for albuterol sulfate using HCFA Common Procedure Coding System (HCPCS) codes K0504 and K0505. Code K0504 represents 1 milligram (mg) of albuterol sulfate in concentrated form.") http://oig.hhs.gov/oei/reports/oei-03-97-00292.pdf.  See Appendix C.  There had been a Medicare reimbursement code in terms of milliliters; however, this code was deleted as of March 31, 1997, the day before the K0504 began.  Region D Supplier Manual, Winter 2003 Update, Ch. 16, Table 1.  See Appendix D. See also, Region B DMERC Supplier Manual, Rev. 20, December 1999, Ch. 16, p. 5-3.  See Appendix E.  See also, DME Region A Service Office, DME Medicare News,  No. 3, December 1993, p. 16.  See Appendix F. See also, Memorandum to All Medicare Dialysis Centers, #MED-ESRD-95-13, July 28, 1995, "Alert 6 - Nebulizer Drugs, http://www.kansasmedicare.com/part_A/news/1995/9507289513FraudAbuse.htm.  See Appendix G.

[7] See, e.g., Region B DMERC Supplier Manual, Rev. 21, March 2000, p. 196 (which includes instructions for pharmacists on how to determine the number of milligrams dispensed for different concentrations of albuterol, i.e., how to convert milliliters to milligrams).  See Appendix H.  See also PX 4097, Region A DMERC Supplier Manual Rev. 21, March 2002, §14.28-8.  See Appendix I.

[8] Findings of Fact and Conclusions of Law, p. 12 ("Effective January 1, 1998, pursuant to a statutory change, the Medicare regulations were amended so that the allowed amount would be based on the lower of the billed charge or 95 percent of AWP.").

12. Finally, under the CMS methodology, median AWPs are rounded to the nearest penny in arriving at the actual reimbursement rate.[9]  Medicare's provision that the reimbursement be in whole cents for each unit of reimbursement is a sensible one that will ensure that reimbursement amounts will always be in whole cents, regardless of the package size.[10]  Rounding to whole cents, of course, means that a small change in the median AWP may or may not have an effect on the actual reimbursement rate.[11]

13. The foregoing steps can be expressed in the following simple equation. Reimbursement per mg = [ AWP per ml ÷ 5 ] × 0.95, rounded to the nearest cent.

14. In Exhibit 3, I have applied these steps to calculate the reimbursement rates that would be implied by the actual median AWPs identified in the Court's findings. Each value is converted into an AWP per milligram to correspond with the unit of reimbursement for the K0504.  For example, the AWP of $0.7495 cited by the Court for 1998 is divided by 5 to express it in milligrams, yielding $0.1499 per milligram.  It is then discounted by 5 percent (yielding $0.1424 in 1998).  Then, the discounted median AWPs per milligram are rounded to the nearest penny.

---

[9] See, e.g., Medicare Claims Processing Manual, Chapter 17, § 20.4 Calculation of the AWP, Rev. 1211, March 30, 2007, http://www.cms.hhs.gov/manuals/downloads/clm104c17.pdf; see Appendix J.  Department of Health & Human Services, Centers for Medicare and Medicaid, CMS Manual System, Pub. 100-04 Medicare Claims Processing,  § 20.2 Calculation of the AWP, Transmittal 54, December 24, 2003, http://cms.hhs.gov/transmittals/downloads/R54CP.pdf;  see Appendix K  and Department of Health & Human Services, Centers for Medicare and Medicaid Services, The Carrier's Manual, Chapter V, § 5202.1, May 2003. Appendix L.   See also, "Declaration of Raymond S. Hartman in Support of Plaintiffs' Claims of Liability and Calculation of Damages," *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation*, Attachment D. pp. 5-6.  See Appendix M.

[10] I note also that, in Medispan, package AWPs are also reported in whole cents. However, when converted into unit AWPs for comparison, such values can include fractions of cents.  Wolters Kluwer (Medispan), Comprehensive Price History File Data Elements, p. 3-4.  Appendix N.

[11] Note that the AWPs cited by the Court, apart from being expressed on a milliliter basis, also are *not* subject to this rounding but, rather, are reported to four significant digits.

The resulting reimbursement per unit of $0.14 corresponds to reimbursement rates reported in DMERC publications.[12]

15. I also calculate the reimbursement rate, following the same steps, based on the median AWP that the Court found would have obtained had Warrick reported lower AWPs. On carrying out these calculations, I find that the "but for" median AWPs would have yielded exactly the same reimbursement rate. For example, the "but for" median of $0.7325 per ml found by the Court for 1998 converts to $0.1465 per mg; adjusting downward by 5 percent yields $0.1392 which, again, rounds to $0.14. Because of the practical effects of rounding, the small amounts by which the Court found that median AWPs would have differed in the "but for" world would have had no impact on reimbursement rates. Each of the roughly 23 million milligrams of albuterol that the CMS data show were reimbursed in 1998 and 1999 under K0504 would have been reimbursed at $0.14 per milligram in either case.

## C.   Medicare Reimbursement under the Old Code

16. As I noted above, a new reimbursement code, K0504, was introduced in 1997 for albuterol 0.5%. The previous code, J7625, had been in terms of milliliters of albuterol and was deleted on March 31, 1997. Notwithstanding the deletion of this reimbursement code, CMS data record a trickle of reimbursements continuing for some time after 1997. Compared with reimbursements under K0504, those under J7625 in 1998 and 1999 are *de minimis*; CMS data show that there were 15,892 and 17,603 milliliters reimbursed under J7625 in 1998 and 1999, respectively, accounting for much less than one percent of the total reimbursements for albuterol concentrate in those years.

---

[12] See, e.g., DMERC Medicare Advisory, Autumn 1998, Issue 26, p. 110 (K0504 at $0.14 as of July 1, 1998) (see Appendix O) and DMERC Medicare Advisory, Winter 1999, Issue 31, pp. 126-127 (K0504 at $0.14 as of

(continued...)

17.  Nevertheless, I apply the same methodology described above to assess whether there would be any damages associated with reimbursements under J7625 using the median AWP values identified by the court.  Because these AWPs are already expressed in terms of milliliters, no unit conversions are necessary.  As shown in Exhibit 4, using the Court's AWP findings, there would have been a one-cent change for any reimbursements under J7625 in 1998.

18. The next step is to identify the units to which that one-cent change should be applied; to begin with, these are limited to reimbursements to Massachusetts beneficiaries.  The publicly available CMS reimbursement data enable one to identify actual or potential Massachusetts Medicare beneficiaries.  First, the data directly identify certain reimbursements made by state carriers.  Second, the data also identify reimbursements through regional Medicare carriers, whose territories span multiple states.  Massachusetts falls in Region A, so Massachusetts beneficiaries could, potentially, be found directly as part of reimbursements made through either the state carrier for Massachusetts or the Region A carrier for beneficiaries located in Massachusetts.

19. I examined CMS data for reimbursements under J7625 for 1998, and found that there were *no* reimbursements either by the Massachusetts state carrier or by the carrier for Region A (which includes Massachusetts) as shown in Exhibit 5.[13] Thus, even though the Court's findings imply that reimbursement under J7625 may have been lower by one cent per ml in the "but for" world in 1998, because

---

(...continued)

October 1, 1999) (see Appendix P).  See also, PX 4101 (see Appendix Q) and PX 4102 (Appendix R).

[13] The carrier for railroad workers also covers multiple states; however, no such beneficiaries were found located in Massachusetts for the J7625 in 1998 either.

there were no reimbursements to Massachusetts beneficiaries under that code in that year, there are no damages to Class 2 for 1998.

20. In carrying out the same exercises for 1999, I find (as reported in Exhibits 4 and 5), that the changed median—because of the effects of rounding—would have had *no* impact on reimbursement rates for 1999, although the CMS data indicate that a total of 149 units were reimbursed to Massachusetts beneficiaries under J7625 in 1999.  Again, damages for Class 2 are zero, because the changed median in 1999—due to the effects of rounding—would not have had an impact on reimbursement rates.[14]

_/s/  Sumanth Addanki_

Sumanth Addanki

_August 1, 2007_

Date

---

[14] Had there been a change in reimbursement rates and/or non-zero units reimbursed in Massachusetts, then these units would need to be adjusted to meet the definition of Class 2, which is limited to copayments made by third-party payors and to Warrick's share of Medicare reimbursement in Massachusetts.  Using IMS data, Warrick sales accounted for approximately 50 percent of the national sales revenues for albuterol 0.5% in 2000 and 2001.  See Appendix S.  In Medicaid, where crosswalking between a general HCPCS code and an NDC is not an issue, as the reimbursement is on the basis of NDCs, the share of reimbursement for 0.5% products is approximately 70 percent.  See Appendix S.  Given these market shares, it is unlikely that Warrick's product would have accounted for more than 70 precent of the CMS reimbursement for 0.5% albuterol in 1998 and 1999, and was more likely on the order of 50 percent.

EXHIBIT 1

## NERA
### Economic Consulting

**Sumanth Addanki**
Senior Vice President

National Economic Research Associates, Inc.
50 Main Street
White Plains, New York 10606
+1 914 448 4000 Fax +1 914 448 4040
Direct dial: +1 914 448 4060
sumanth.addanki@nera.com
www.nera.com

# SUMANTH ADDANKI
## SENIOR VICE PRESIDENT

## Education

**Harvard University**
Ph.D., Economics, 1986
A.M., Economics, 1982

**Birla Institute of Technology and Science, India**
M.A. (Hons.), Economics, 1980

## Professional Experience

**NERA Economic Consulting**
1986-        Senior Vice President (current position)

**New York University, Robert F. Wagner Graduate School of Public Service**
1997         Adjunct Assistant Professor of Public and Health Administration

**National Bureau of Economic Research Inc.**
1981-1986    Research Associate and Computer Manager

**Harvard University**
1981-1985    Instructor in Economics, Teaching Fellow, and Assistant Head Tutor

**National Council of Applied Economic Research, India**
1980         Research Associate

Sumanth Addanki

## Testimony

*In re Pharmaceutical Industry Average Wholesale Price Litigation (MDL 1456)*, U.S. District Court for the District of Massachusetts, Civil Action No. 01-12257-PBS.

*State of Colorado,* et al. *v. Warner Chilcott Holdings Company III, Ltd,* et al., U.S. District Court for the District of Columbia, Civil Action No 1:05CV02182 (CKK) (Deposition Testimony).

*Novartis Corporation, Novartis Pharmaceuticals Corporation, and Novartis International AG v. Teva Pharmaceuticals USA, Inc.*, U.S. District Court for the District of New Jersey, Civil Action Nos. 04-4473 and 06-1130 (HAA)(MF) (Deposition Testimony).

*Dynax Corporation v. Chemguard, Inc.*, U.S. District Court for the Southern District of New York, Index:  06-CIV-5143 (CM)(ECF CASE) (Deposition Testimony).

*Briant Chun-Hoon and Carlo Guglielmino v. McKee Foods Corporation, a Tennessee corporation; and Does 1 through 100, inclusive,* U.S. District Court for the Northern District of California, Case No. C05-00620 VRW (Deposition Testimony).

*XIOtech Corporation v. Compellent Technologies, Inc., Michael Markovich, Russell B. Taddiken, Scott A. Winslow, Kristofer M. Zuber,* District Court for the State of Minnesota, Fourth Judicial District, Court File No.: 04-5065 (Deposition Testimony).

*Medtronic Minimed, Inc., v. Smiths Medical MD, Inc.,* U. S. District Court for the District of Delaware, Civil Action No. 03-776-KAJ (Deposition Testimony).

*Symbol Technologies, Inc. v. Proxim Incorporated,* U.S. District Court for the District of Delaware, Civil Action No. 01-801 (SLR).

*Sievers Instruments, Inc. v. Hach Company, et al.,* U. S. District Court for the District of Colorado Civil Action No. 02-K-775 (Deposition Testimony).

*Sunny Fresh Foods, Inc. v. Michael Foods, Inc., et al.,* U.S. District Court of Minnesota Case No. 4-92-635 (Deposition Testimony)

*Jerry A. Workman, Workman AG Consultants, Inc., v. Terra International, Inc.; David E. Schramm; and James Corder, III,* In the Superior Court of the State of Arizona in and for the County of Maricopa, No. CV 99-03543

*Fusion Lighting, Inc., v. Westinghouse Electric Corporation, Northrop Grumman Corporation and Edward H. Hooper,* Circuit Court of Montgomery County, State of Maryland, Civil Action No. 209848V.

*Spear Pharmaceuticals, Inc., v. Geneva Pharmaceuticals, Inc., Novartis Consumer Health, Inc., Novartis Pharma Canada, Inc., and Novartis AG,* U.S. District Court, Middle District of Florida, Fort Myers Division, Civil Action No. 2:01-CV-372-FTM-29DNF (Deposition Testimony).

*TI Group Automotive Systems (North America), Inc., v. VDO North America L.L.C., et al.,* U.S. District Court for the District of Delaware, Civil Action No. 00-432-GMS.

*Rodolfo Di Massa, M.D., and Karl Nigg, individually and on behalf of Stenticor International Inc., v. Simon Stertzer, M.D., Michael Boneau, and Medtronic Arterial Vascular Engineering, Inc.,* Superior Court of Sonoma County, State of California, Case No. 222363 (Deposition Testimony).

In the Matter of Schering-Plough Corporation, Upsher Smith Laboratories, Inc. and America Home Products Corporation, Federal Trade Commission, Docket No. 9297.

## Papers and Publications

"*Schering-Plough* and the Antitrust Analysis of Patent Settlement Agreements in Pharmaceutical Markets," *Antitrust Insights*, National Economic Research Associates, Inc., 2005.

"Market Definitions Using Econometrics: An Apparent Paradox Explained," *Antitrust Insights*, National Economic Research Associates, Inc., 2001.

"Presenting Complex Technical and Economic Evidence: Lessons From The Trenches," *Antitrust and Intellectual Property:  The Crossroads,* American Bar Association, 2000.

"The Relevant Market in Intellectual Property Antitrust: An Economist's Overview," Practising Law Institute, Intellectual Property Antitrust, June 1998.

 "The Timing of Patent Infringement Damages: When do they Begin and When do they End?" National Economic Research Associates, White Plains, May 1997.

"The Changing Nature of Competition -- Innovation and Technology Issues," American Bar Association Section of Antitrust Law, CLE Institute, November 7-8, 1996.

7/31/07

# Exhibit 2

**Case Materials:**

"Declaration of Raymond S. Hartman in Support of Plaintiffs' Claims of Liability and Calculation of Damages," *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation*, December 15, 2005.

"Direct Testimony of Raymond S. Hartman," November 1, 2006, and GMA backup materials, November 20, 2006.

Findings of Fact and Conclusions of Law, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*, M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.

"Rebuttal Testimony of Raymond S. Hartman," December 15, 2006 and electronic backup materials.

Plaintiffs' "Warrick Summary of Class 2 Damages (Massachusetts)," July 20, 2007 and electronic backup materials.

PX 4097, Region A DMERC Supplier Manual Rev. 21, March 2002, §14.28.

PX 4101, 2002 Fourth Quarter Drug Fee Update, Palmetto GBA.

PX 4102, 2003 Fourth Quarter Drug Fee Update, Palmetto GBA.

**Data and Documentation:**

1999 Drug Topics Red Book, Thomson PDR, Montvale, NJ, 1999.

2003 Limitations for the Physican/Supplier Procedure Summary Master File (PSPSMF), Produced by Members of the: Division of Data Systems Provider Billing Group Centers for Medicare Management, August 2004.

CMS Medicare Reimbursement Data, Physician/Supplier Procedure Summary Master File (PSPSMF).

"Comprehensive Price History File," 2005 Wolters Kluwer Health (Medispan).

"Comprehensive Price History File Data Elements," 2005 Wolters Kluwer Health (Medispan).

**Public Reports:**

Office of the Inspector General, Department of Health and Human Services, "Are Medicare Allowances for Albuterol Sulfate Reasonable?," August 1998, OEI-03-97-00292 (http://oig.hhs.gov/oei/reports/oei-03-97-00292.pdf).

**Government:**

Department of Health & Human Services, Centers for Medicare and Medicaid, CMS Manual System, Pub. 100-04 Medicare Claims Processing, § 20.2 Calculation of the AWP, Transmittal 54, December 24, 2003  (http://cms.hhs.gov/transmittals/downloads/R54CP.pdf).

Department of Health & Human Services, Centers for Medicare and Medicaid, Medicare Claims Processing Manual, "Chapter 17 - Drugs and Biologicals," § 20.4 – Calculation of the AWP, Rev. 1211, 03-30-07 (http://www.cms.hhs.gov/manuals/downloads/clm104c17.pdf).

Department of Health & Human Services, Centers for Medicare and Medicaid, State Operations Manual, "Chapter 2 – The Certification Process," § 2779A1 – Provider Identification Numbers (p. 390 of 421), Rev. 6, Issued 4/29/05 (http://www.cms.hhs.gov/manuals/downloads/som107c02.pdf).

Department of Health & Human Services, Centers for Medicare and Medicaid Services, The Carrier's Manual, Chapter V, § 5202.1, May 2003.

DME Region A Service Office, DME Medicare News, No. 3, December 1993 (http://www.medicarenhic.com/dme/dme03.pdf).

DMERC Medicare Advisory, Issue 26, Autumn 1998 (http://www.cignamedicare.com/jc/pubs/adv/pdf/1998/Autumn%201998.pdf).

DMERC Medicare Advisory, Issue 31, Winter 1999 (http://www.cignamedicare.com/jc/pubs/adv/pdf/1999/Winter%201999.pdf).

DMERC Region A Service Office, DMERC Medicare News, No. 35 (December 1997).

DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.

Memorandum to All Medicare Dialysis Centers, #MED-ESRD-95-13, July 28, 1995, "Alert 6 - Nebulizer Drugs," (http://www.kansasmedicare.com/part_A/news/1995/9507289513FraudAbuse.htm).

Region B DMERC Supplier Manual, Rev. 20, December 1999, Ch. 16 (http://www.adminastar.com/Providers/DMERC/MedicareManuals/files/9912revisions.pdf).

Region B DMERC Supplier Manual, Rev. 21, March 2000 (http://www.adminastar.com/providers/dmerc/MedicareManuals/files/0003revisions.pdf).

**Exhibit 3**

**Effect on Reimbursement of Changes in Median AWPs**
**(Using AWP Values from Judge Saris's Opinion)**

**K0504 - "Albuterol, inhalation solution administered through DME,**
**concentrated form, per milligram"[1]**

**1998 - 1999**

|     |                                                                | 1998 | 1999 |
| --- | -------------------------------------------------------------- | ---- | ---- |
|     | **Median AWPs as Provided in Judge Saris's Findings[2]**        |      |      |
| (a) | Median AWP (ml)                                                | $ 0.7495 | $ 0.7410 |
| (b) | "But-for" Median AWP (ml)                                      | $ 0.7325 | $ 0.7325 |
|     | **Median AWPs Converted to Milligrams[3]**                      |      |      |
| (c) | Conversion to Milligrams [(a) / 5]                             | $ 0.1499 | $ 0.1482 |
| (d) | Conversion to Milligrams [(b) / 5]                             | $ 0.1465 | $ 0.1465 |
|     | **Median AWPs (mg) Adjusted for Medicare Discount**            |      |      |
| (e) | Adjusted for Medicare Discount Off AWP [(c) * 0.95]            | $ 0.1424 | $ 0.1408 |
| (f) | Adjusted for Medicare Discount Off AWP [(d) * 0.95]            | $ 0.1392 | $ 0.1392 |
|     | **Discounted Median AWPs (mg) Rounded to the Nearest Cent[4]**  |      |      |
| (g) | [(c) * 0.95] (rounded to the nearest cent)                    | $ 0.14 | $ 0.14 |
| (h) | [(d) * 0.95] (rounded to the nearest cent)                    | - $ 0.14 | - $ 0.14 |
| **(i)** | **Resulting Change in Reimbursement, per mg [(g) - (h)]**  | $ - | $ - |

Notes: [1] See, e.g., DMERC Region D Supplier Manual, Winter 2003 Update, Chapter 16, HCPCS K - Page 10 (Rev. 4/2002).  See also,
DMERC Medicare Advisory, Autumn 1998, Issue 26, p. 110 (K0504 at $0.14 as of July 1, 1998) and DMERC Medicare Advisory,
Winter 1999, Issue 31, pp. 126-127 (K0504 at $0.14 as of October 1, 1999).  There was a HCPCS code in milliliters that was deleted
in 1997.  See, e.g., DMERC Region D Supplier Manual, Winter 2003 Update, January 2003, Ch. 16, Table 1.

[2] Values are those cited by Judge Saris in her Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry
Average Wholesale Price Litigation*, June 21, 2007, n. 78, p. 155.

[3] These median AWPs were converted from milliliters to milligrams using the conversion for 0.5% albuterol sulfate of
5 mg/1 ml.  See, e.g, Region B DMERC Supplier Manual, Rev. 21, March 2001, pp. 195-196.

[4] Discounted median AWPs are rounded to the nearest penny.  See, e.g., "Chapter 17 - Drugs and Biologicals," Medicare
Claims Processing Manual, § 20.4 - Calculation of the AWP, Rev. 1211, 03-30-07 ("After determining the AWP,
carriers multiply it by 0.85 or 0.95, or other percentage, as applicable, and round to the nearest penny");  see also Department of
Health & Human Services, Centers for Medicare and Medicaid, CMS Manual System, Pub. 100-04 Medicare Claims Processing,
§ 20.2 Calculation of the AWP, Transmittal 54, December 24, 2003;  see also Department of Health & Human Services,
Centers for Medicare and Medicaid Services, The Carrier's Manual, Chapter V, § 5202.1, May 2003.

Sources:  - Region B DMERC Supplier Manual, Rev. 21, March 2000
  (http://www.adminastar.com/providers/dmerc/MedicareManuals/files/0003revisions.pdf).
- Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, M.D.L. No. 1456
  Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.
- Department of Health & Human Services, Centers for Medicare and Medicaid, Medicare Claims Processing Manual, "Chapter 17 -
  Drugs and Biologicals," § 20.4 – Calculation of the AWP, Rev. 1211, 03-30-07 (http://www.cms.hhs.gov/manuals/downloads/clm104c17.pdf).
- Department of Health & Human Services, Centers for Medicare and Medicaid, CMS Manual System,
  Pub. 100-04 Medicare Claims Processing,  § 20.2 Calculation of the AWP, Transmittal 54, December 24, 2003,
  (http://cms.hhs.gov/transmittals/downloads/R54CP.pdf).
- Department of Health & Human Services, Centers for Medicare and Medicaid Services, The Carrier's Manual, Chapter V, § 5202.1, May 2003.
- DMERC Medicare Advisory, Autumn 1998, Issue 26
  (http://www.cignamedicare.com/jc/pubs/adv/pdf/1998/Autumn%201998.pdf).
- DMERC Medicare Advisory, Winter 1999, Issue 31
  (http://www.cignamedicare.com/jc/pubs/adv/pdf/1999/Winter%201999.pdf).
- DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.

**Exhibit 4**

**Effect on Reimbursement of Changes in Median AWPs**
**(Using AWP Values from Judge Saris's Opinion)**

**J7625 - "Albuterol sulfate, 0.5%, per ml,**
**inhalation solution administered through DME"[1]**

**1998 - 1999**

|  |  | 1998 | 1999 |
|---|---|---|---|
| **Median AWPs as Provided in Judge Saris's Findings[2]** | | | |
| **(a)** | Median AWP (ml) | $ 0.7495 | $ 0.7410 |
| **(b)** | "But-for" Median AWP (ml) | $ 0.7325 | $ 0.7325 |
| | | | |
| **Median AWPs (ml) Adjusted for Medicare Discount** | | | |
| **(c)** | Adjusted for Medicare Discount Off AWP [(a) * 0.95] | $ 0.7120 | $ 0.7040 |
| **(d)** | Adjusted for Medicare Discount Off AWP [(b) * 0.95] | $ 0.6959 | $ 0.6959 |
| | | | |
| **Discounted Median AWPs (ml) Rounded to the Nearest Cent[3]** | | | |
| **(e)** | [(a) * 0.95] (rounded to the nearest cent) | $ 0.71 | $ 0.70 |
| **(f)** | [(b) * 0.95] (rounded to the nearest cent) | - $ 0.70 | - $ 0.70 |
| | | | |
| **(g)** | **Resulting Change in Reimbursement, per ml [(e) - (f)]** | **$ 0.01** | **$ -** |

Notes:   [1] See, e.g., DMERC Region D Supplier Manual, Winter 2003 Update, Chapter 16, HCPCS J - Page 10 (Rev. 1/2003).

[2] Values are those cited by Judge Saris in her Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , June 21, 2007, n. 78, p. 155.

[3] Discounted median AWPs are rounded to the nearest penny.  See, e.g., "Chapter 17 - Drugs and Biologicals," Medicare Claims Processing Manual, § 20.4 - Calculation of the AWP, Rev. 1211, 03-30-07 ("After determining the AWP, carriers multiply it by 0.85 or 0.95, or other percentage, as applicable, and round to the nearest penny"); see also Department of Health & Human Services, Centers for Medicare and Medicaid, CMS Manual System, Pub. 100-04 Medicare Claims Processing, § 20.2 Calculation of the AWP, Transmittal 54, December 24, 2003;  see also Department of Health & Human Services, Centers for Medicare and Medicaid Services, The Carrier's Manual, Chapter V, § 5202.1, May 2003.

Sources:  - Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.
- Department of Health & Human Services, Centers for Medicare and Medicaid, Medicare Claims Processing Manual, "Chapter 17 - Drugs and Biologicals," § 20.4 – Calculation of the AWP, Rev. 1211, 03-30-07 (http://www.cms.hhs.gov/manuals/downloads/clm104c17.pdf).
- Department of Health & Human Services, Centers for Medicare and Medicaid, CMS Manual System, Pub. 100-04 Medicare Claims Processing,  § 20.2 Calculation of the AWP, Transmittal 54, December 24, 2003, (http://cms.hhs.gov/transmittals/downloads/R54CP.pdf).
- Department of Health & Human Services, Centers for Medicare and Medicaid Services, The Carrier's Manual, Chapter V, § 5202.1, May 2003.
- DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.

**Exhibit 5**

**CMS Reimbursement of Albuterol 0.5%[1]**

**1998 - 1999[2]**

|  | J7625 (ml)[3] | | K0504 (mg)[3] | |
|---|---|---|---|---|
|  | **1998** | **1999** | **1998** | **1999** |
| Total Units Reimbursed by Medicare (National) | 15,892 | 17,603 | 23,304,181 | 24,737,768 |
| Total Units Reimbursed by Medicare in Massachusetts[4] | - | 149 | 87,367 | 128,829 |

Notes: - All units displayed are rounded to the nearest whole unit.
- The conversion rate between milligrams and milliliters for albuterol sulfate 0.5% is equal to 5 mg / 1 ml.  Applying this conversion rate to HCPCS code J7625, 79,460 milligrams were reimbursed in 1998 and 88,015 milligrams were reimbursed in 1999.  Applying this conversion rate to HCPCS code K0504, 4,660,836.2 milliliters were reimbursed in 1998 and 4,947,553.6 milliliters were reimbursed in 1999.  The shares in units of total reimbursement under HCPCS code J7625 by Medicare are 0.34 percent in 1998 and 0.35 percent in 1999.
- Because the changes in the reimbursement per unit and/or the units of reimbursement in Massachusetts are zero, the damages are zero and no further adjustments are needed.  Had there been a change in reimbursement rates and/or non-zero units reimbursed in Massachusetts, then these units would need to be adjusted to meet the definition of Class 2, which is limited to copayments made by third-party payors and to Warrick's share of Medicare reimbursement in Massachusetts.  The substantial reduction in units that these adjustments would bring about can be demonstrated using estimates of market factors used by plaintiffs and Dr. Hartman.  For example, using the Massachusetts units for 1999 for J7625 and following the order described above, (149 ml) * (0.20) * ((0.69) * (0.943)) * (0.7176) = 13.91 ml.  Note that plaintiffs adjust their estimate of the third-party payor percentage for what they refer to as "Class 2 Share Excluding Class 1 Coinsurance Payers", i.e., the third-party payor share is 69 percent, adjusted by a factor of 94.3 percent.  This calculation assumes that Warrick's share of Medicare reimbursement for third-party payors is no greater than that in Medicaid.  Dr. Hartman estimates the share of the copayment paid by private TPPs as 69 percent in the backup to his December 15, 2006 Rebuttal Testimony.  Plaintiffs estimate the Class 2 share excluding Class 1 coinsurance payors as 94.3 percent in the backup to their July 20, 2007 damages.

[1]  Albuterol 0.5% products were reimbursed under HCPCS codes J7625 and K0504 during the years 1998 and 1999.

[2]  Judge Saris only finds liability for albuterol 0.5% in 1998 and 1999: "In both those years, reporting a true AWP would have resulted in the median shifting slightly downward.  Therefore, there is liability for albuterol in both 1998 and 1999.  For all other years, legal causation has not been proven" (Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , June 21, 2007, p. 155).

[3]  CMS Medicare reimbursement data are defined in terms of the unit measurement used in the respective HCPCS code descriptions.  The description for J7625 is "Albuterol sulfate, 0.5%, per ml, inhalation solution administered through DME" (DMERC Region D Supplier Manual, Winter 2003 Update, Chapter 16, HCPCS J - Page 10 (Rev. 1/2003)).  The description for K0504 is "Albuterol, inhalation solution administered through DME, concentrated form, per milligram" (DMERC Region D Supplier Manual, Winter 2003 Update, Chapter 16, HCPCS K - Page 10 (Rev. 4/2002)).

[4]  Units reimbursed in Massachusetts were calculated using the carrier codes for Massachusetts (00700 and 31143), as listed in "Appendix 2 - History of Part B Carriers" of the 2003 Limitations for the Physican/Supplier Procedure Summary Master File (PSPSMF).  See Appendix T.  For claims processed by a regional DMERC or the railroad Medicare carrier, the locality code field, which contains the beneficiary residence State code, was used to identify Massachusetts beneficiaries.  The beneficiary residence State code for Massachusetts (22) was taken from Chapter 2 of the State Operations Manual (State Operations Manual, "Chapter 2 – The Certification Process," § 2779A1 – Provider Identification Numbers (p. 390 of 421), Rev. 6, Issued 4/29/05).  See Appendix U.

Sources: - Region B DMERC Supplier Manual, Rev. 21, March 2000 (http://www.adminastar.com/providers/dmerc/MedicareManuals/files/0003revisions.pdf).
- CMS Medicare Reimbursement Data, Physician/Supplier Procedure Summary Master File (PSPSMF).
- Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.
- 2003 Limitations for the Physician/Supplier Procedure Summary Master File (PSPSMF), Produced by Members of the: Division of Data Systems Provider Billing Group Centers for Medicare Management, August 2004.
- Department of Health & Human Services, Centers for Medicare and Medicaid, State Operations Manual, "Chapter 2 – The Certification Process," § 2779A1 – Provider Identification Numbers (p. 390 of 421), Rev. 6, Issued 4/29/05 (http://www.cms.hhs.gov/manuals/downloads/som107c02.pdf).
- DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.
- Electronic backup materials to Plaintiffs' "Warrick Summary of Class 2 Damages (Massachusetts)," July 20, 2007.
- Electronic backup materials to "Rebuttal Testimony of Raymond S. Hartman," December 15, 2006.

**Exhibit 6**
**Implied CMS Albuterol 0.5% Units Using Plaintiffs' Damages Figures**
**1998 - 1999[1]**

**Based on Plaintiffs' July 20, 2007 Damages Figures**

| | | | 1998 | | 1999 | |
|---|---|---|---|---|---|---|
| (a) | **Plaintiffs' Massachusetts Damages Estimate for Warrick for the Alleged Change in TPP Copayments** | | | $2,899 | | $2,854 [2] |
| (b) | Plaintiffs' Massachusetts Share of Medicare Reimbursement | ÷ | | 2.64% | | 2.64% [3,8] |
| (c) | Plaintiffs' Implied Estimate of National Damages for Warrick for TPP Copayments | $ | | 109,664 | $ | 107,959 |
| (d) | Copayment Percentage | ÷ | | 20.00% | | 20.00% |
| (e) | Plaintiffs' Implied Estimate of Total Change in Reimbursement for Warrick for TPP Payments | $ | | 548,319 | $ | 539,794 |
| (f) | Plaintiffs' Share of Class 2 That Excludes "Class 1 Coinsurance Payers" | ÷ | | 94.3% | | 94.3% [4] |
| (g) | Plaintiffs' Implied Estimate of National Damages for Warrick for TPP Payments Excluding Class 1 Coinsurance Payors | $ | | 581,489 | $ | 572,448 |
| (h) | Plaintiffs' Estimate of the Share of Copayments Made by TPPs | ÷ | | 69.00% | | 69.00% [3,8] |
| (i) | Plaintiffs' Implied Estimate of the Change in Total Reimbursements Across All Payors | $ | | 842,738 | $ | 829,635 |
| (j) | Difference Between Plaintiffs' "Warrick per-unit AWP" and "But-For Median per-unit AWP" ($/ml) | ÷ $ | | 0.0170 | $ | 0.0170 [5] |
| (k) | | | | 49,572,827 | | 48,802,080 |
| (l) | Medicare Discounted AWP | ÷ | | 95% | | 95% [8] |
| (m) | Plaintiffs' Underlying Estimate of the Total Number of Units (ml) Reimbursed by CMS (assuming Warrick's market share is 100 percent) | | | 52,181,924 | | 51,370,611 |
| (n) | Milliliter to milligram conversion | × | | 5 | | 5 [6] |
| (o) | **Plaintiffs' Underlying Estimate of the Total Number of Units (mg) Reimbursed by CMS (assuming Warrick's market share is 100 percent)** | | | 260,909,618 | | 256,853,054 [9] |
| (p) | **Total National Units (mg) Reimbursed by Medicare (actual) HCPCS codes J7625 and K0504** | | | 23,383,641 | | 24,825,783 [7] |

Notes:  -  Dollars are displayed rounded to the nearest dollar and units are displayed rounded to the nearest whole unit.
         -  TPP is an abbreviation for "third-party payors".

[1] Judge Saris only finds liability for albuterol 0.5% in 1998 and 1999: "In both those years, reporting a true AWP would have resulted in the median shifting slightly downward.  Therefore, there is liability for albuterol in both 1998 and 1999.  For all other years, legal causation has not been proven" (Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, June 21, 2007, p. 155).

[2] Damages are taken from the Nominal Damages in Plaintiffs' "Warrick Summary of Class 2 Damages (Massachusetts) Based on the Difference Between Warrick's AWP and the 'But-For' Median AWP", July 20, 2007.

[3] 'Plaintiffs' Massachusetts Share of Medicare Reimbursement' is the value calculated by Dr. Hartman from Vector One(TM):National by Verispan, L.L.C.; 'Plaintiffs' Estimate of the Share of Copayments Made by TPPs' is from F.J. Eppig and G.S. Chulis, "Trends in Medicare Supplementary Insurance: 1992-1996," Health Care Financing Review, Vol. 19(1), Fall 1997, as cited by Dr. Hartman in his November 1, 2006 Direct Testimony, p. 68, footnote 112.

[4] 'Plaintiffs' Share of Class 2 That Excludes "Class 1 Coinsurance Payers'" comes from Plaintiffs'  'Class 2 Share Excluding Class 1 Coinsurance Payers', which is calculated as, [1 - 20% * ('Employer Sponsored Medicare Copay Share' / 'Private Third Party Payors Medicare Copay Share') * 'Percent of Employer Sponsored Beneficiaries Paying Coinsurance'].  All the values used in the calculation are taken from the worksheet 'Coeff' of workbook "SP MA Damages.xls" of the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."

[5] 'Difference Between Plaintiffs' "Warrick per-unit AWP" and "But-For Median per-unit AWP" ($/ml)' is calculated from Plaintiffs' "Worksheet for Warrick Class 2 Damages Calculations for Albuterol Based on the Difference Between Warrick's AWP and the "But-For" Median AWP," from the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."

[6] Milliliters were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1 ml.  See Region B DMERC Supplier Manual, Rev. 21, March 2000, pp. 195-6.

[7] Albuterol 0.5% products are reimbursed uder HCPCS codes J7625 and K0504 in 1998 and 1999. CMS Medicare reimbursement data are defined in terms of the unit measurement used in the respective HCPCS code descriptions (per milligram (mg) in the case of K0504 and per milliliter (ml) in the case of J7625).  All HCPCS codes were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1ml.

[8] Values match the values used by Dr. Hartman in the backup materials to his December 15, 2006 Rebuttal Testimony.

[9] These figures are approximately 11 times greater than those in CMS, i.e., (260,909,618 + 256,853,054) / (23,383,641 + 24,825,783) = 10.74.

Sources:  -  Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.
           -  "Direct Testimony of Raymond S. Hartman," November 1, 2006.
           -  Electronic backup materials ("SP MA Damages.xls") to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."
           -  Region B DMERC Supplier Manual, Rev. 21, March 2000 (http://www.adminastar.com/providers/dmerc/MedicareManuals/files/0003revisions.pdf).
           -  DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.
           -  CMS Medicare Reimbursement Data, Physician/Supplier Procedure Summary Master File (PSPSMF).
           -  "Comprehensive Price History File," 2005 Wolters Kluwer Health (Medispan).
           -  Electronic backup materials to "Rebuttal Testimony of Dr. Raymond Hartman", filed December 15, 2006.

**Exhibit 7**
**Implied CMS Albuterol 0.5% Units Using Plaintiffs' Calculated Warrick Units**
**1998 - 1999[1]**

Based on Plaintiffs' July 20, 2007 Damages Figures

|  |  |  | 1998 | 1999 |  |
|---|---|---|---|---|---|
| (a) | **Plaintiffs' Calculation of Total Warrick National Units (Packages)** |  | **4,494,341** | **4,424,464** | [2] |
| (b) | Package size | × | 20 | 20 | [2] |
| (c) | Plaintiffs' Calculation of Total Warrick National Units (milliliters) |  | 89,886,820 | 88,489,280 |  |
| (d) | Milliliter to milligram conversion | × | 5 | 5 | [3] |
| (e) | Plaintiffs' Calculation of Total Warrick National Units Coverted to Milligrams |  | 449,434,100 | 442,446,400 |  |
| (f) | Warrick Albuterol NAMCS Share | × | 58.05% | 58.05% | [4] |
| (g) | **Plaintiffs' Implied Estimate of the Total Number of Units (mg) Reimbursed** |  | **260,909,618** | **256,853,054** | [6] |
| (h) | **Total National Units (mg) Reimbursed by Medicare (actual)** **HCPCS codes J7625 and K0504** |  | **23,383,641** | **24,825,783** | [5] |

Notes: - Units are displayed rounded to the nearest whole unit.

[1] Judge Saris only finds liability for albuterol 0.5% in 1998 and 1999: "In both those years, reporting a true AWP would have resulted in the median shifting slightly downward.  Therefore, there is liability for albuterol in both 1998 and 1999.  For all other years, legal causation has not been proven" (Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , June 21, 2007, p. 155).

[2] Units and package size are taken from Plaintiffs' "Worksheet for Warrick Class 2 Damages Calculations for Albuterol Based on the Difference Between Warrick's AWP and the "But-For" Median AWP," from the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."  The package size is equal to the value used by Dr. Hartman in the November 20, 2006 GMA backup documents to his November 1, 2006 Direct Testimony.

[3] Milliliters were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1 ml.  See Region B DMERC Supplier Manual, Rev. 21, March 2000, pp. 195-6.

[4] 'Warrick Albuterol NAMCS Share' is the Warrick Albuterol share from NAMCS, as taken from the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."  This value is equal to the value calculated by Dr. Hartman in the backup materials to his December 15, 2006 Rebuttal Testimony.

[5] Albuterol 0.5% products are reimbursed uder HCPCS codes J7625 and K0504 in 1998 and 1999. CMS Medicare reimbursement data are defined in terms of the unit measurement used in the respective HCPCS code descriptions (per milligram (mg) in the case of K0504 and per milliliter (ml) in the case of J7625).  All HCPCS codes were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1ml.

[6] These figures are approximately 11 times greater than those in CMS, i.e., (260,909,618 + 256,853,054) / (23,383,641 + 24,825,783) = 10.74.

Sources: - Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.
- Electronic backup materials ("SP MA Damages.xls") to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."
- Region B DMERC Supplier Manual, Rev. 21, March 2000 (http://www.adminastar.com/providers/dmerc/MedicareManuals/files/0003revisions.pdf).
- DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.
- CMS Medicare Reimbursement Data, Physician/Supplier Procedure Summary Master File (PSPSMF).
- Electronic backup materials to "Rebuttal Testimony of Dr. Raymond Hartman", filed December 15, 2006.
- November 20, 2006 GMA electronic backup materials to "Direct Testimony of Raymond S. Hartman", November 1, 2006.