# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

*[PROPOSED]*
**ABBOTT LABORATORIES, INC.'S POST-HEARING NOTICE OF
SUPPLEMENTAL AUTHORITY IN SUPPORT OF ABBOTT'S MOTION TO COMPEL
ADEQUATE RESPONSE TO ITS DISCOVERY REQUESTS**

Abbott Laboratories, Inc. ("Abbott") makes this submission in response to the Government's Post-Hearing Notice of Supplemental Authority in Support of the Opposition to Abbott's Motion to Compel Adequate Responses to Abbott's Discovery Requests (July 24, 2007).  Abbott respectfully asks that the Court consider the following authorities in deciding Abbott's pending discovery motion (Dkt. No. 4135).

The work product doctrine does not automatically cover or prevent the disclosure of the names of witnesses interviewed by counsel.  Many decisions, based on the particular facts at issue in those cases, have required disclosure of the names and addresses of individuals interviewed by counsel.  These decisions typically reason that a mere identification of names and addresses does not reveal the core mental impressions, conclusions, opinions, or legal theories of opposing counsel.  *See Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984) (although one party failed to request the names and addresses of witnesses interviewed by opposing counsel, "[t]he law is clear that such information is subject to discovery"); *U.S. v. Amerada Hess Corp.*, 619 F.2d. 980, 988 (3d Cir. 1980) (identities of individuals on a list of those interviewed by counsel were discoverable because the list's work product content was

1

minimal and its production would not jeopardize any of the policy reasons behind the protection of work product); *id.* at 987 (finding that application of the work product rule depends upon "the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness' statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources."); *id.* at 987-88 ("In this case the list of interviewees is just that, a list.  It does not directly or indirectly reveal the mental processes of [opposing counsel].  It furnishes no information as to the content of any statement.  There is no realistic possibility that its production will convert any member of the [opposing law firm] from advocate to witness."); *Norflet v. John Hancock Financial Services, Inc.*, No. 3:04cv1099 (JBA), 2007 WL 433332, at *3 (D. Conn. Feb. 5, 2007) ("Numerous other courts have consistently held that the names and addresses of individuals interviewed by counsel 'who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine.'") (citation omitted); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631, 634-36 (N.D. Ga. 2002) ("The disclosure of the names and addresses of those individuals interviewed by Plaintiffs' counsel will not reveal the 'mental impressions, conclusions, opinions, or legal theories of [Plaintiffs'] attorneys.'") (quotation omitted); *id.* ("Numerous courts since *Hickman v. Taylor* have recognized that names and addresses of witnesses interviewed by counsel who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine."); *Alexander v. Federal Bureau of Investigation*, 192 F.R.D. 12, 19 (D.D.C. 2000) (quoting *Amerada Hess Corp.*, 619 F.2d at 987-88)); *Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n.*, 107 F.R.D. 258, 260-61 (N.D. Ill. 1985) ("the mere identification of persons who know facts bearing on [plaintiff's] claim tells [defendant] nothing new about the mental processes of [plaintiff's]

lawyers"); *In re Dayco Corp. Derivative Sec. Litig.*, 99 F.R.D. 616, 624 (S.D. Ohio 1983) ("Defendants may discover the *facts* upon which Plaintiffs, and/or their counsel, base their allegations.  Such facts include the names of witnesses from whom counsel obtained the information . . . .") (emphasis in original) (citations omitted); *id.* ("Defendants are merely seeking (as the Court understands it) a list of 'occurrence witnesses,' which are discoverable at any time.") (citing Wright & Miller, Federal Practice and Procedure, § 2013 ("A distinction has traditionally been drawn between witnesses to the events in question and witnesses who will be called for trial by the adverse party.  The names of occurrence witnesses could always be obtained by discovery.")); *Roberson v. Ryder Truck Lines, Inc.*, 41 F.R.D. 166, 167 (N.D. Miss. 1966) ("It is inconceivable that any court would say that the names and addresses of prospective witnesses could be classified as the work product of an attorney."); *Butler v. U.S.*, 226 F. Supp. 341, 343 (W.D. Mo. 1964) ("The work product privilege . . . does not apply to the names and addresses of persons having knowledge of the relevant facts"); Wright & Miller, Federal Practice and Procedure, § 2013 (2d ed. 1994) ("[C]ourts have repeatedly allowed discovery of the names and locations of persons with knowledge of the facts . . . .  The thought is that when a party has learned who the witnesses are and where they may be found that it can then interview the witnesses, take their depositions, or otherwise find out what information they may have. . . .[T]he occasions in which there is reason to bar discovery of the names and addresses of witnesses are few indeed and ordinarily this kind of discovery should be regarded as a matter of right."); *id.* at § 2023 ("Before 1970, the courts consistently held that the work product concept furnished no shield against discovery . . . of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts. . . .  This has continued to be true under Rule 26(b)(3).").

In any event, even if the Court finds the work product doctrine applicable to the identities of individuals interviewed during the Government's investigation, Abbott can demonstrate "substantial need" for this information, and that it "is unable without undue hardship to obtain the substantial equivalent" of the information by other means. *See* Fed. R. Civ. Proc. 26(b)(3); *Miller v. Ventro Corp.*, 2004 WL 868202, No. C01-01287 SBA (EDL) at *2 (N.D. Cal. Apr. 21, 2004 at *2 (a list of confidential witnesses did not constitute work product, but even if it did, defendant's need for the information outweighed any minimal protection).

Abbott does not request this information to determine counsel's mental impressions or strategy in prosecuting or defending an active litigation—the issue raised in the cases cited by the Government. Nor does Abbott contend that the identify of witnesses interviewed by counsel should never be protected under the work product privilege. Instead, Abbott submits that the ability to discover this information depends on the specific facts of the case. Here, Abbott's request is directed to issues of separate factual importance to the case, such as who (*e.g.*, federal and state Medicare and Medicaid officials) was made aware of the allegations against Abbott— and when—during the United States' lengthy, eleven-year investigation.[1] It would be exceedingly difficult, if not impossible, to obtain this information absent obtaining a list of individuals that the United States' interviewed during its protracted investigation. Moreover, here the Government took advantage of the False Claims Act's statutory seal to conduct a one-sided investigation for eleven years before providing its initial disclosures. Fairness dictates that Abbott now should be entitled to a complete list of all individuals with potentially discoverable

---

[1] It appears that the Government did have communications about the allegations made in this case with several state Medicaid officials. *See* Government's Aug. 20, 1997 Status Report ("[M]any meetings and conferences have been held with the representatives of the Medicaid programs of the states of Florida, Texas and New Jersey. Another meeting is scheduled for August 21, 1997 with representatives of the Medicaid program for Alabama. Preliminary discussions have been held with representatives of the Medicaid programs of other states as well. The meetings have been productive, particularly with regard to enlisting the aid of each state in searching for relevant information and data.") (copy attached as Ex. 1).

knowledge in this case, not merely a list of individuals that the Government cherry-picked for disclosure following its eleven-year, *ex parte* investigation.

Dated:  August 2, 2007

Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## **CERTIFICATE OF SERVICE**

    I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S POST-HEARING NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION TO COMPEL ADEQUATE RESPONSE TO ABBOTT'S DISCOVERY REQUESTS to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 2nd day of August, 2007.

    /s/ David S. Torborg
    David S. Torborg