# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) |
|  | MDL No. 1456 |
|  | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | ) ) ) ) ) ) |
|  | Judge Patti B. Saris |

**REBUTTAL DECLARATION OF SUMANTH ADDANKI, PH.D.**

**August 2, 2007**

- 2 -

# I.    Introduction

## A.    Qualifications

1. I have previously testified in this matter and my qualifications were discussed in detail in previous submissions to this court.

## B.    Scope of the Engagement

2. Counsel for Warrick Pharmaceuticals Corporation ("Warrick") have asked me to review and comment upon the damage calculation submitted by Dr. Hartman.[1]

## C.    Overview of Findings

3. Based on my analysis, described in more detail below, I find that the primary damage calculations submitted by the plaintiffs are based on a fundamentally flawed approach, resulting in greatly overstated damages. Indeed, the damages Dr. Hartman calculates are several times greater than the amount that CMS data indicated was even reimbursed. I have pointed out these flaws in Dr. Hartman's approach in the past and have described the overstatement of damages that they engender.[2]

4. The "alternative" damages calculations that he offers are even more egregious in their overstatement and are based on an approach and methodology that are entirely at odds with the underlying economics (as I explained in my testimony

---

[1] Declaration of Raymond S. Hartman Revised Damages for Track 1 Defendants: Classes 2 and 3, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation* (August 1, 2007). No backup materials were submitted with the report; however, tables with the same damages and backup materials were supplied by the plaintiffs on or about July 20, 2007. These are attached in Appendix A.

[2] Report of Sumanth Addanki, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation* (March 21, 2006) §VII.B, ¶73 (I note, in part, that analysis of the CMS data revealed that "… even if one further assumed that Warrick enjoyed 100 percent of the generic perphenazine market, Dr. Hartman's national damages figures for combined co-payments are about 43 times as large as a conservative estimate of the maximum of total co-payments." ).

- 3 -

and previous submissions during the liability phase of this proceeding).  They also fly in the face of the Court's findings.

### D.   Information Relied Upon

5.   In preparing this report, I (and economists working under my direction) have reviewed information from a variety of sources.  In addition, I have relied on my experience and training as an applied microeconomist and my experience in analyzing the pharmaceutical industry.  A complete list of materials that have been relied upon in preparing this report is attached as Exhibit 2.

## II.   Implausibility of the Plaintiffs' Damages Calculation:  Dr. Hartman's Disaggregation of Sales

6.   The plaintiffs have provided a calculation of damages of $5,752 for Class 2 in the State of Massachusetts.  Using only this damages figure of the plaintiffs and estimates of market factors provided by the plaintiffs and Dr. Hartman, one can work backward to a value that should represent the units reimbursed by CMS nationally.  I perform just such a calculation in Exhibit 3.

7.   In Exhibit 3, I begin with the damages calculated by the plaintiffs for Massachusetts and, using Dr. Hartman's estimate of Massachusetts' share of Medicare reimbursement (i.e., 2.64 percent), scale up to a national level.  Then, using the copayment percentage of 20 percent, I scale up the total to be all national reimbursement, rather than only the copayment portion.  Next, using the plaintiffs' and Dr. Hartman's estimates, the share of copayments made by third-party payors adjusted for "Class 1 Coinsurance Payers" (i.e., 69 percent multiplied by 94.3 percent) is used to add these excluded reimbursements back into the total amount of reimbursement.  Then, using the same estimated change in reimbursement as the plaintiffs did in their calculations (i.e., $0.017 per ml (notwithstanding that the court found the change to be $0.0085 (= $0.7410 -

- 4 -

$0.7325)), the reimbursement is converted from dollars to milliliters.[3]  Finally, I remove Medicare's AWP discount of 5 percent and multiply by 5 to convert to milligrams.  The results indicate that CMS would have to have reimbursed over 250 million milligrams of albuterol 0.5% for Warrick alone in both 1998 and 1999.  However, these amounts are more than 10 times the roughly 23 or 25 million milligrams that were actually reimbursed by CMS in these years.  The same result can be observed by using the number of 0.5% 20ml bottles from the plaintiffs' calculations, multiplying by 20 to convert to milliliters, multiplying by 5 to convert to milligrams, and then applying Dr. Hartman's estimate of the share of Warrick sales that are reimbursed by Medicare.  This calculation, which is shown in Exhibit 4, again, results in over 250 million milligrams of albuterol 0.5% that would have had to have been reimbursed by CMS, when, as noted before, less than 25 million milligrams were actually reimbursed by CMS.  The difference between these figures demonstrates again that the plaintiffs' approach is hopelessly flawed and cannot be relied upon for determining economic damages.

## III. Dr. Hartman's "Alternative" Calculation of Damages

8.  In addition to the recalculation of Class 2 damages "using Judge Saris' definition of damages", which, as noted above, does not use the difference in the medians found by the Court, Dr. Hartman has provided another damage calculation.[4]  This calculation, which is simply a restatement of Dr. Hartman's "tacit Nash equilibrium", essentially sets aside the Court's findings and apparently interposes in their place Dr. Hartman's own view of the "but for" world.  This is easily seen,

---

[3] Findings of Fact and Conclusions of Law, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (June 21, 2007), n. 78, p. 155.

[4] Declaration of Raymond S. Hartman Revised Damages for Track 1 Defendants:  Classes 2 and 3, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation* (August 1, 2007) p. 5.

- 5 -

for instance, in his statement that he "defines" the "competitive (AWP) price to be ASP*1.30…" rather than implementing the Court's findings regarding the actual and "but for" median AWPs.[5]

9.  There is simply no basis for such an assumption.  As I have stated, and as the Court noted in its findings, because the "spread" of a self-administered drug, such as albuterol 0.5%, cannot influence the prescribing behavior of physicians, manufacturers have no incentive to inflate the median or reimbursement.[6]  The Court has already found that "there are no claims or evidence of conspiracy or joint enterprise…."[7]  Thus, the measure of the change in reimbursement used in these calculations is without any economic basis and completely at odds with the findings of the Court.

10. Moreover, although the Court's findings were "[f]or the 0.5% solution" in 1998 and 1999, Dr. Hartman has included both albuterol 0.5% and albuterol 0.083% solution products in his damages calculations.[8]  Limiting Dr. Hartman's nominal damages to just those for the albuterol 0.5% products substantially reduces his damages.[9]

---

[5] Declaration of Raymond S. Hartman Revised Damages for Track 1 Defendants:  Classes 2 and 3, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation* (August 1, 2007) p. 5.

[6] Amended Declaration of Direct Testimony of Dr. Sumanth Addanki, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (December 1, 2006) §VI.D.

[7] Findings of Fact and Conclusions of Law, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (June 21, 2007), p. 154.

[8] Findings of Fact and Conclusions of Law, *In Re:  Pharmaceutical Industry Average Wholesale Price Litigation* (June 21, 2007), p. 155.

[9] See Appendix A at the printout of the worksheet titled "Attachment J.5.e: Schering-Plough Medicare Damages: Massachusetts Third-Party Payors (Sub-Class 2) by NDC:  30% Yardstick".

- 6 -

_____/s/ Sumanth Addanki_____

Sumanth Addanki

_____August 2, 2007_____

Date

**EXHIBIT 1**

# NERA
Economic Consulting

**Sumanth Addanki**
Senior Vice President

National Economic Research Associates, Inc.
50 Main Street
White Plains, New York 10606
+1 914 448 4000 Fax +1 914 448 4040
Direct dial: +1 914 448 4060
sumanth.addanki@nera.com
www.nera.com

# SUMANTH ADDANKI
## SENIOR VICE PRESIDENT

## Education

**Harvard University**
Ph.D., Economics, 1986
A.M., Economics, 1982

**Birla Institute of Technology and Science, India**
M.A. (Hons.), Economics, 1980

## Professional Experience

| | |
|---|---|
| 1986- | **NERA Economic Consulting**<br>Senior Vice President (current position) |
| 1997 | **New York University, Robert F. Wagner Graduate School of Public Service**<br>Adjunct Assistant Professor of Public and Health Administration |
| 1981-1986 | **National Bureau of Economic Research Inc.**<br>Research Associate and Computer Manager |
| 1981-1985 | **Harvard University**<br>Instructor in Economics, Teaching Fellow, and Assistant Head Tutor |
| 1980 | **National Council of Applied Economic Research, India**<br>Research Associate |

**MMC** Marsh & McLennan Companies

Sumanth Addanki

## Testimony

*In re Pharmaceutical Industry Average Wholesale Price Litigation (MDL 1456)*, U.S. District Court for the District of Massachusetts, Civil Action No. 01-12257-PBS.

*State of Colorado*, et al. *v. Warner Chilcott Holdings Company III, Ltd*, et al., U.S. District Court for the District of Columbia, Civil Action No 1:05CV02182 (CKK) (Deposition Testimony).

*Novartis Corporation, Novartis Pharmaceuticals Corporation, and Novartis International AG v. Teva Pharmaceuticals USA, Inc.*, U.S. District Court for the District of New Jersey, Civil Action Nos. 04-4473 and 06-1130 (HAA)(MF) (Deposition Testimony).

*Dynax Corporation v. Chemguard, Inc.*, U.S. District Court for the Southern District of New York, Index:  06-CIV-5143 (CM)(ECF CASE) (Deposition Testimony).

*Briant Chun-Hoon and Carlo Guglielmino v. McKee Foods Corporation, a Tennessee corporation; and Does 1 through 100, inclusive*, U.S. District Court for the Northern District of California, Case No. C05-00620 VRW (Deposition Testimony).

*XIOtech Corporation v. Compellent Technologies, Inc., Michael Markovich, Russell B. Taddiken, Scott A. Winslow, Kristofer M. Zuber*, District Court for the State of Minnesota, Fourth Judicial District, Court File No.: 04-5065 (Deposition Testimony).

*Medtronic Minimed, Inc., v. Smiths Medical MD, Inc.*, U. S. District Court for the District of Delaware, Civil Action No. 03-776-KAJ (Deposition Testimony).

*Symbol Technologies, Inc. v. Proxim Incorporated*, U.S. District Court for the District of Delaware, Civil Action No. 01-801 (SLR).

*Sievers Instruments, Inc. v. Hach Company, et al.*, U. S. District Court for the District of Colorado Civil Action No. 02-K-775 (Deposition Testimony).

*Sunny Fresh Foods, Inc. v. Michael Foods, Inc., et al.*, U.S. District Court of Minnesota Case No. 4-92-635 (Deposition Testimony)

*Jerry A. Workman, Workman AG Consultants, Inc., v. Terra International, Inc.; David E. Schramm; and James Corder, III*, In the Superior Court of the State of Arizona in and for the County of Maricopa, No. CV 99-03543

*Fusion Lighting, Inc., v. Westinghouse Electric Corporation, Northrop Grumman Corporation and Edward H. Hooper*, Circuit Court of Montgomery County, State of Maryland, Civil Action No. 209848V.

*Spear Pharmaceuticals, Inc., v. Geneva Pharmaceuticals, Inc., Novartis Consumer Health, Inc., Novartis Pharma Canada, Inc., and Novartis AG*, U.S. District Court, Middle District of Florida, Fort Myers Division, Civil Action No. 2:01-CV-372-FTM-29DNF (Deposition Testimony).

Sumanth Addanki

*TI Group Automotive Systems (North America), Inc., v. VDO North America L.L.C., et al.,* U.S. District Court for the District of Delaware, Civil Action No. 00-432-GMS.

*Rodolfo Di Massa, M.D., and Karl Nigg, individually and on behalf of Stenticor International Inc., v. Simon Stertzer, M.D., Michael Boneau, and Medtronic Arterial Vascular Engineering, Inc.,* Superior Court of Sonoma County, State of California, Case No. 222363 (Deposition Testimony).

In the Matter of Schering-Plough Corporation, Upsher Smith Laboratories, Inc. and America Home Products Corporation, Federal Trade Commission, Docket No. 9297.

## Papers and Publications

"*Schering-Plough* and the Antitrust Analysis of Patent Settlement Agreements in Pharmaceutical Markets," *Antitrust Insights*, National Economic Research Associates, Inc., 2005.

"Market Definitions Using Econometrics: An Apparent Paradox Explained," *Antitrust Insights*, National Economic Research Associates, Inc., 2001.

"Presenting Complex Technical and Economic Evidence: Lessons From The Trenches," *Antitrust and Intellectual Property:  The Crossroads,* American Bar Association, 2000.

"The Relevant Market in Intellectual Property Antitrust: An Economist's Overview," Practising Law Institute, Intellectual Property Antitrust, June 1998.

"The Timing of Patent Infringement Damages: When do they Begin and When do they End?" National Economic Research Associates, White Plains, May 1997.

"The Changing Nature of Competition -- Innovation and Technology Issues," American Bar Association Section of Antitrust Law, CLE Institute, November 7-8, 1996.

7/31/07

# Exhibit 2

**Case Materials:**

Amended Declaration of Direct Testimony of Dr. Sumanth Addanki, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation* (December 1, 2006).

Declaration of Raymond S. Hartman Revised Damages for Track 1 Defendants: Classes 2 and 3, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation* (August 1, 2007).

"Direct Testimony of Raymond S. Hartman," November 1, 2006, and GMA backup materials, November 20, 2006.

Findings of Fact and Conclusions of Law, *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*, M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.

"Rebuttal Testimony of Raymond S. Hartman," December 15, 2006 and electronic backup materials.

"Report of Sumanth Addanki, Ph.D.," March 21, 2006.

Plaintiffs' "Warrick Summary of Class 2 Damages (Massachusetts)," July 20, 2007 and electronic backup materials.


**Data and Documentation:**

CMS Medicare Reimbursement Data, Physician/Supplier Procedure Summary Master File (PSPSMF).

"Comprehensive Price History File," 2005 Wolters Kluwer Health (Medispan).


**Government:**

DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.

Region B DMERC Supplier Manual, Rev. 21, March 2000 (http://www.adminastar.com/providers/dmerc/MedicareManuals/files/0003revisions.pdf).

Exhibit 3

**Implied CMS Albuterol 0.5% Units Using Plaintiffs' Damages Figures**

**1998 - 1999[1]**

Based on Plaintiffs' July 20, 2007 Damages Figures

|     |     |     | 1998 | 1999 |
| --- | --- | --- | --- | --- |
| (a) | Plaintiffs' Massachusetts Damages Estimate for Warrick for the Alleged Change in TPP Copayments | | $2,899 | $2,854 [2] |
| (b) | Plaintiffs' Massachusetts Share of Medicare Reimbursement | + | 2.64% | 2.64% [3,8] |
| (c) | Plaintiffs' Implied Estimate of National Damages for Warrick for TPP Copayments | $ | 109,664 | 107,959 |
| (d) | Copayment Percentage | + | 20.00% | 20.00% |
| (e) | Plaintiffs' Implied Estimate of Total Change in Reimbursement for Warrick for TPP Payments | $ | 548,319 | 539,794 |
| (f) | Plaintiffs' Share of Class 2 That Excludes "Class 1 Coinsurance Payers" | + | 94.3% | 94.3% [4] |
| (g) | Plaintiffs' Implied Estimate of National Damages for Warrick for TPP Payments Excluding Class 1 Coinsurance Payors | $ | 581,489 | 572,448 |
| (h) | Plaintiffs' Estimate of the Share of Copayments Made by TPPs | + | 69.00% | 69.00% [3,8] |
| (i) | Plaintiffs' Implied Estimate of the Change in Total Reimbursements Across All Payers | $ | 842,738 | 829,635 |
| (j) | Difference Between Plaintiffs' "Warrick per-unit AWP" and "But-For Median per-unit AWP" ($/ml) | ÷ $ | 0.0170 | 0.0170 [5] |
| (k) |  | | 49,572,827 | 48,802,080 |
| (l) | Medicare Discounted AWP | ÷ | 95% | 95% [8] |
| (m) | Plaintiffs' Underlying Estimate of the Total Number of Units (ml) Reimbursed by CMS (assuming Warrick's market share is 100 percent) | | 52,181,924 | 51,370,611 |
| (n) | Milliliter to milligram conversion | × | 5 | 5 [6] |
| (o) | Plaintiffs' Underlying Estimate of the Total Number of Units (mg) Reimbursed by CMS (assuming Warrick's market share is 100 percent) | | 260,909,618 | 256,853,054 [9] |
| (p) | Total National Units (mg) Reimbursed by Medicare (actual) HCPCS codes J7625 and K0504 | | 23,383,641 | 24,825,783 [7] |

Notes:  - Dollars are displayed rounded to the nearest dollar and units are displayed rounded to the nearest whole unit.
- "TPP is an abbreviation for "third-party payors".

[1] Judge Saris only finds liability for albuterol 0.5% in 1998 and 1999. "In both those years, reporting a true AWP would have resulted in the median shifting slightly downward. Therefore, there is liability for albuterol in both 1998 and 1999. For all other years, legal causation has not been proven" (Findings of Fact and Conclusions of Law, In Re Pharmaceutical Industry Average Wholesale Price Litigation, June 21, 2007, p 155).

[2] Damages are taken from the Nominal Damages in Plaintiffs' "Warrick Summary of Class 2 Damages (Massachusetts) Based on the Difference Between Warrick's AWP and the 'But-For Median AWP'" July 20, 2007.

[3] Plaintiffs' Massachusetts Share of Medicare Reimbursement" is the value calculated by Dr. Hartman from Vector One(TM)/National by Verispan, L.L.C.; Plaintiffs' Estimate of the Share of Copayments Made by TPP's is from F.J. Eppig and G.S. Chulis, "Trends in Medicare Supplementary Insurance: 1992-1996," Health Care Financing Review, Vol. 19(1), Fall 1997, as cited by Dr. Hartman in his November 1, 2006 Direct Testimony, p 68, footnote 112.

[4] Plaintiffs' Share of Class 2 That Excludes "Class 1 Coinsurance Payers" comes from Plaintiffs' "Class 2 Share Excluding Class 1 Coinsurance Payers', which is calculated as, [1 - 20% * ('Employer Sponsored Medicare Copay Share' / 'Private Third Party Payors Medicare Copay Share') * 'Percent of Employer Sponsored Beneficiaries Paying Coinsurance']. All the values used in the calculation are taken from the worksheet 'Coeff' of workbook "SP MA Damages.xls" of the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."

[5] 'Difference Between Plaintiffs' Warrick per-unit AWP' and 'But-For Median per-unit AWP' ($/ml)" is calculated from Plaintiffs' "Worksheet for Warrick Class 2 Damages Calculations for Albuterol Based on the Difference Between Warrick's AWP and the 'But-For' Median AWP", from the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."

[6] Milliliters were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1 ml.  See Region B DMERC Supplier Manual, Rev. 21, March 2000, pp 195-6.  See Appendix B.

[7] Albuterol 0.5% products are reimbursed uder HCPCS codes J7625 and K0504 in 1998 and 1999. CMS Medicare reimbursement data are defined in terms of the unit measurement used in the respective HCPCS code descriptions (per milligram (mg) in the case of J7625 and per milliliter (ml) in the case of J7625). All HCPCS codes were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1ml.

[8] Values match the values used by Dr. Hartman in the backup materials to his December 15, 2006 Rebuttal Testimony.

[9] These figures are approximately 11 times greater than those in CMS, i.e., (260,909,618 + 256,853,054) / (23,383,641 + 24,825,783) = 10.74.

Sources:  - Findings of Fact and Conclusions of Law, In Re Pharmaceutical Industry Average Wholesale Price Litigation, M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.
- "Direct Testimony of Raymond S. Hartman," November 1, 2006.
- Electronic backup materials ("SP MA Damages.xls") to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."
- Region B DMERC Supplier Manual, Rev. 21, March 2000 (http://www.adminastar.com/providers/drmerc/MedicareManuals/files/2003revisions.pdf)
- DMERC Region D Supplier Manual, Winter 2003 Update, January 2003.  See Appendix C.
- CMS Medicare Reimbursement Data, Physician/Supplier Procedure Summary Master File (PSPSMF).
- "Comprehensive Price History File," 2005 Wolters Kluwer Health (Medispan).
- Electronic backup materials to "Rebuttal Testimony of Dr. Raymond Hartman," filed December 15, 2006.

Exhibit 4

Implied CMS Albuterol 0.5% Units Using Plaintiffs' Calculated Warrick Units

1998 - 1999[1]

Based on Plaintiffs' July 20, 2007 Damages Figures

| | | 1998 | 1999 |
|---|---|---|---|
| (a) | Plaintiffs' Calculation of Total Warrick National Units (Packages) | 4,494,341 | 4,424,464 [2] |
| (b) | Package size | × 20 | 20 [2] |
| (c) | Plaintiffs' Calculation of Total Warrick National Units (milliliters) | 89,886,820 | 88,489,280 |
| (d) | Milliliter to milligram conversion | × 5 | 5 [3] |
| (e) | Plaintiffs' Calculation of Total Warrick National Units Converted to Milligrams | 449,434,100 | 442,446,400 |
| (f) | Warrick Albuterol NAMCS Share | × 58.05% | 58.05% [4] |
| (g) | Plaintiffs' Implied Estimate of the Total Number of Units (mg) Reimbursed | 260,909,618 | 256,853,054 [6] |
| (h) | Total National Units (mg) Reimbursed by Medicare (actual) HCPCS codes J7625 and K0504 | 23,383,641 | 24,825,783 [5] |

Notes - Units are displayed rounded to the nearest whole unit.

[1] Judge Saris only finds liability for albuterol 0.5% in 1998 and 1999: "In both those years, reporting a true AWP would have resulted in the median shifting slightly downward. Therefore, there is liability for albuterol in both 1998 and 1999. For all other years, legal causation has not been proven" (Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, June 21, 2007, p 155).

[2] Units and package size are taken from Plaintiffs' "Worksheet for Warrick Class 2 Damages Calculations for the Difference Between Warrick's AWP and the "Bur-For" Median AWP," from the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)." The package size is equal to the value used by Dr. Hartman in the November 20, 2006 GMA backup documents to his November 1, 2006 Direct Testimony.

[3] Milliliters were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1 ml. See Region B DMERC Supplier Manual, Rev. 21, March 2000, pp 195-6.

[4] "Warrick Albuterol NAMCS Share" is the Warrick Albuterol share from NAMCS, as taken from the backup materials to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)." This value is equal to the value calculated by Dr. Hartman in the backup materials to his December 15, 2006 Rebuttal Testimony.

[5] Albuterol 0.5% products are reimbursed uder HCPCS codes J7625 and K0504 in 1998 and 1999. CMS Medicare reimbursement data are defined in terms of the unit measurement used in the respective HCPCS code descriptions (per milligram (mg) in the case of K0504 and per milliliter (ml) in the case of J7625). All HCPCS codes were converted to milligrams using the conversion for 0.5% albuterol sulfate of 5 mg / 1 ml.

[6] These figures are approximately 11 times greater than those in CMS, i.e., (260,909,618 + 256,853,054) / (23,383,641 + 24,825,783) = 10.74.

Sources: - Findings of Fact and Conclusions of Law, *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, M.D.L. No. 1456 Civil Action No. 01-12257-PBS (Saris, U.S.D.J.), June 21, 2007.
- Electronic backup materials ("SP MA Damages.xls") to Plaintiffs' July 20, 2007 "Warrick Summary of Class 2 Damages (Massachusetts)."
- Region B DMERC Supplier Manual, Rev. 21, March 2000 (http://www.adminastar.com/providers/dmerc/MedicareManuals/RbscRb00sversions.pdf).
- DMERC Region D Supplier Manual, Rev. 21, March 2000.
- CMS Medicare Reimbursement Data, Physician/Supplier Procedure Summary Master File (PSPSMF).
- Electronic backup materials to "Rebuttal Testimony of Dr. Raymond Hartman," filed December 15, 2006.
- November 20, 2006 GMA electronic backup materials to "Direct Testimony of Raymond S. Hartman," November 1, 2006.