UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>TRACK 2 TRIAL | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS PLAINTIFFS' RESPONSE TO AMGEN AND WATSON'S
SUPPLEMENTAL OPPOSITION TO CLASS CERTIFICATION**

Amgen claims that Plaintiffs have no Class 1 or Class 2 representatives. Amgen is wrong. As to Class 2 Sheet Metals without question purchased on numerous occasions in transactions simply ignored by Defendants and Mr. Young. The same holds true for Watson.

Amgen asserts that because the class representative paid for his drug in 2004 he or she cannot represent the Class. Plaintiffs Class 1 representatives for Amgen are adequate because in 2004 they had no knowledge that AWP was inflated and the payment in 2004 was still based on AWP. Plaintiff was still subject to an unfair and deceptive practice and harmed exactly as any other patient was who paid for Amgen's drugs in an earlier time frame.

## I.   SHEET METAL IS AN ADEQUATE CLASS 2 REPRESENTATIVE

Amgen claims that Sheet Metal Workers National Health Fund ("Sheet Metals") lacks standing to pursue claims against Amgen. Amgen's claim is incorrect for several reasons. First, Amgen relies on the Declaration of Steven J. Young (July 25, 2007) in support of its claim.[1] As

---

[1] Interestingly, Mr. Young who has been both the Track 1 and Track 2 Defendants' principal expert in opposition to class certification, did not appear at trial or as a trial witness on any list submitted by any Defendant.

Mr. Young did in analyzing Sheet Metals' claims data in connection with Plaintiffs' original Track 2 motion for class certification (filed back on May 8, 2006), Mr. Young only analyzed the *sample* claims data attached to the Declaration of Glenn Randle.  *See* Affidavit of Glenn Randle ¶ 7 ("Attached as Exhibit 3 is *a sample* of the Health Fund's documentation showing proof of payment for the single-source and multi-source drugs manufactured by Track 2 Defendants for which the Health Fund has paid reimbursements based on AWP.") (emphasis added) (filed under seal with Dkt. No. 2521).  Had Mr. Young analyzed Sheet Metals' full claims data, which was made available to Defendants, he would have learned that Sheet Metals does indeed have standing to pursue claims against Amgen.[2]  Second, because Mr. Young only looked at the representative sample attached to the Randle Affidavit, Amgen likewise did not consider the Sheet Metals' extensive coverage of Amgen drugs in states other than Massachusetts.  *See* Ex. 1 (chart) and Ex. 2 (claims data supporting chart).

## II.  CLASS 1 SHOULD BE CERTIFIED AND THE PROPOSED REPRESENTATIVE IS ADEQUATE

Even if Plaintiffs could only produce Class 1 representatives who paid for Amgen's products in 2004 at the earliest, the Court should nonetheless certify the requested class.

Amgen argues that the Court's November 2, 2006 ruling on the Track 1 Defendants' motion for summary judgment, as well as the Court's June 21, 2007 Findings of Fact and Conclusions of law issued in the Track 1 case, preclude class certification against it if Plaintiffs'

---

Thus, he remains hidden from the Court's scrutiny and Plaintiffs continue to question his qualifications and methods.

[2] To the extent there was a Massachusetts only trial, Sheet Metals also has paid for the administration of two Amgen drugs in Massachusetts, Epogen (Q4055) and Aranesp (J0880).  For Epogen, Sheet Metals' payment was made in mid-2004.  However, that payment was for an administration that occurred in 2003.  *See* Ex. 3 (SMWMASS 000865-67).  As Plaintiffs explained in their original Reply Brief in support of their motion for class certification, because Epogen has a shelf-life of two years, the fact that Sheet Metals' reimbursements occurred in mid-2004 mean that Sheet Metals was reimbursing for a drug manufactured in 2003 – or earlier.  For Aranesp, Sheet Metals' payment was made for an administration made in 2003.  *See* Ex. 4 (SMWMASS 000572-75).  All exhibits referenced herein are attached to the Declaration of Steve W. Berman in Support of Class Plaintiffs' Response to Amgen and Watson's Supplemental Opposition to Class Certification.

proposed Class 1 representatives can point only to drug encounters that took place in 2004. But close analysis reveals that neither ruling is availing to Amgen.

First, with regard to the Court's November 2, 2006 ruling on the Track 1 Defendants' motion for summary judgment, that decision was based on the Court's finding that as of December 2003, when the MMA was passed, "AWP" had become a term of art *to Congress*. *In re Pharm. Indus. Average Wholesale Price Litig.*, 460 F. Supp. 2d 277, 288 (D. Mass. 2006) ("At that point, Congress clearly did understand AWP was different than average sales price and was not reflective of actual prices in the marketplace.").

In an attempt to justify imputing this knowledge to elderly cancer patients such as Plaintiffs' proposed Class 1 representatives, Amgen points to part of a colloquy between the Court and counsel for Plaintiffs in which the Court indicated that it would not accept the position that consumers should be treated differently because, in the words of counsel, "there's no evidence that they had any knowledge of the so-called industry norm of 20, 25 percent." Amgen Br. at 5 (citing July 3, 2007 transcript of hearing). It is one thing, however, to decline to treat consumers differently with regard to co-payment standards that are a mathematical function of federal law but quite another to impute to consumers knowledge of the meaning of an esoteric "term of art." Simply put, the Court's November 2006 ruling dealt with the meaning of AWP, and nowhere in it did the Court hold that consumers understood what that term meant by the end of 2003, or at any time. In fact, in the June 21, 2007 Order the Court found "not surprisingly, none of the cancer patients who testified ever heard of AWP and trusted their doctors to pick drugs for them based on effective treatment, not profitability." Order at 21. Thus, nowhere has the Court held that because of its ruling in the Track 1 case on the meaning of AWP are

consumers who were administered Amgen products in 2004 precluded from serving as Class 1 representatives in the Track 2 case.

As to the second supposed rationale for precluding such individuals from serving as Class 1 representatives, Amgen points to this Court's ruling in the Track 1 Class 2/3 trial that the Class 2/3 class period ended in December 2003.  But what the Court stated in its June 2007 Findings and Conclusions is that "[t]he class [2/3] period ends in 2003 when Congress passed the Medicare statute *setting new reimbursement benchmarks*."  Findings and Conclusions at 6 n.5 (emphasis added).  Those new reimbursement benchmarks, however, continued to use AWP as a basis for reimbursement as to the Amgen products at issue *through 2004*.  *E.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 460 F. Supp. 2d at 284.  Amgen has acknowledged as much.  *E.g.*, Berman Decl. Ex. 6 (Amgen document entitled "Medicare Payment and Coding Changes for 2004," setting forth "2004 Reimbursement Mechanism" for subject drugs as being based on percentages of AWP).  So the Court's June 2007 rulings should not preclude consumers who were administered Amgen products in 2004 from serving as Class 1 representatives because during the year 2004, they were still incurring liability to make co-pays based on AWP pricing.[3] And, to reiterate, the Court has never ruled that any knowledge of the government as to the meaning of the term of art "AWP" as of December 2003 should be imputed to consumers.

---

[3] Nor could Amgen make the cynical argument that AstraZeneca and BMS made in opposition to Plaintiffs' motion for partial reconsideration of Class 2/3 damages.  In the opposition, those Track 1 Defendants argued that the Court's decision should be sustained because they had refused to produce data and documents that would have allowed Plaintiffs to perform more precise damages calculations for the year 2003 (and, by extension, for 2004) and Plaintiffs had supposedly not done enough to overcome their refusal.  Regarding Amgen's time-scope objections to production, however, Plaintiffs moved to compel, and on March 29, 2006, Judge Bowler ruled that the presumptive time frame for discoverable documents and data would run through 2004, to January 1, 2005.  Thus, Amgen has been, and is, under a duty to produce materials in response to Plaintiffs' discovery requests that would enable Plaintiffs to calculate with precision damages through 2004.

- 5 -

### III.  WATSON'S OPPOSITION TO CLASS PLAINTIFFS' PROPOSED ROAD MAP IS MISPLACED

Watson claims that Plaintiffs have no class representative for Ferrlecit because the only two reimbursements by Class 2 representative Sheet Metals were in January 2005.  Although Watson provides no support for it, its assertion is apparently based on its analysis of the *sample* Massachusetts-only Sheet Metals claims data that was attached to the Affidavit of Glenn Randle submitted with Plaintiffs' motion for Track 2 class certification.  Sheet Metals does indeed have coverage for Ferrlecit in California, Georgia, Illinois, Louisiana, Missouri, New Jersey, Ohio, Pennsylvania, Texas and Wisconsin.  Sheet Metals likewise has Massachusetts coverage for Dexamethasone Sodium in 2003, giving Plaintiffs coverage against Watson for Class 2 under this Court's prior rulings.  *See* Ex. 5 (SMWMASS000383-88).

### IV.  CONCLUSION

The Court has certified the claims of all three classes in Track 1.  The Court has seen the class mechanism work in both a trial and settlement context.  There is no new and valid reason put forth by Amgen or Watson against certification.

DATED:  August 8, 2007

By     /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 7 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 8, 2007, I caused copies of **CLASS PLAINTIFFS' RESPONSE TO AMGEN AND WATSON'S SUPPLEMENTAL OPPOSITION TO CLASS CERTIFICATION** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis file & serve.

                                                                                                                         /s/ Steve W. Berman
                                                                                                      Steve W. Berman

001534-16 188824 V1