UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) **THIS DOCUMENT RELATES TO:** ) ) *United States of America, ex rel.* ) *Ven-a-Care of the Florida Keys, Inc.*, ) *v. Abbott Laboratories, Inc.*, ) CIVIL ACTION NO. 06-CV-11337-PBS ) | MDL No. 1456<br>Civil Action No. 01-12257-PBS<br><br>Hon. Patti B. Saris<br><br><br>Chief Magistrate Judge<br>Marianne B. Bowler |

### RELATOR'S OBJECTIONS TO THE JULY 19, 2007 ORDER BY THE MAGISTRATE ON RELATOR'S MOTION TO COMPEL ABBOTT LABORATORIES TO PRODUCE OR CONSENT TO ACCESS TO AND SHARING OF ALL DISCOVERY PRODUCED BY ABBOTT IN OTHER FALSE PRICE LITIGATION AND MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS

The Relator, Ven-A-Care of the Florida Keys, Inc., ("the Relator"), on its behalf and for the benefit of the United States of America, through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 72, respectfully files this its Objections to the July 19, 2007 Order by the Magistrate on Relator's Motion to Compel Abbott Laboratories to Produce or Consent to Access to and Sharing of All Discovery Produced by Abbott in Other False Price Report Litigation and Memorandum of Law in Support of Objections, and states as follows:

### I. PROCEDURAL HISTORY

The instant litigation was initiated by the filing of a qui tam action by the Relator, Ven-A-Care of the Florida Keys, Inc.  The United States intervened in the Relator's action against Abbott and filed its Complaint in Intervention on March 17, 2006 in the

Southern District of Florida and then the case was transferred to this MDL. The United States is primarily litigating the matter pursuant to 31 U.S.C. §3730 with the Relator as a joint Plaintiff. The Relator is also the Relator in several state qui tam actions related to false price AWP litigation including two against Abbott: State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al., Case No. D-1-GV-04-001286, District Court of Travis County, Texas (the "Texas Action"); and State of California ex rel. Ven-A-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc., et al., Case No. 03-CV-2238 (the "California Action"). The California Action was removed to federal court and transferred to this Court as part of the MDL No. 1456 proceedings. The Texas Action remains in state court in Travis County, Texas.

In the interest of coordinating and sharing discovery in this and other false price litigation, as contemplated by this Court's case management orders (See CMO 5, paragraph 2 (b); CMO 10, paragraph 1) and the Manual for Complex Litigation, the Relator requested Abbott to permit the United States to have access to documents and depositions already produced to the States and the Relator in on-going false price AWP litigation pending in the Texas and California actions. Abbott objected. During oral argument at hearing on February 27, 2007 and in CMO 29, Paragraph 7, this Court established the following procedure to resolve the dispute: 1) The Relator was to produce a sample of documents produced by Abbott in state court AWP litigation that Abbott has not produced to the United States in this litigation and provide that sample to Abbott; and 2) If after a meet and confer the dispute is not resolved, then the Relator may file a motion to compel. At the February 27, 2007 hearing, the District Court Judge

requested the Relator identify the sample documents by category[1] and stated the remedy the Court contemplated for the dispute. The Court stated that if the Motion to Compel resulted in fifty percent of the documents or more being produced, then it would grant the Relator's Motion to Compel and require Abbott to permit the Relator to "produce the CD" meaning that Abbott must produce to the United States all documents Abbott previously produced to the Relator in state AWP pricing litigation. The Court specifically stated:

> . . . if you win on the fifty documents apiece you choose, I'm just going to say "Produce the CD." So, in other words, if you're not being reasonable about this, you're just going to lose. I'm not going to look at millions of documents.

(February 27, 2007, Hearing Transcript pp12-13).

> . . . because neither Judge Bowler nor I with all these cases have time to go through a million documents apiece, I'll look at the representative ones; and if you win most of them, I'll just say "Turn over the CD". If you only win a small fraction and I think you're overreaching, I'm just going to say "Denied".

February 27, 2007, Hearing Transcript p.14, Lines 18-23. Portions of the transcript are attached as Exhibit A.

Per paragraph 7 of CMO 29, the Relator produced a sample of a total of 167 documents to Abbott that Abbott had not produced to the United States. After the Relator met and conferred with Abbott, Abbott agreed that 53 of those documents should be produced.[2] Abbott also agreed that 15 additional documents could be

---

[1] The Relator categorized the documents as either objected to on the basis of relevance, not responsive or time frame.

[2] The original sample of 180 documents provided to Abbott contained 13 that had been produced to the United States without objections. Therefore the number of

viewed by the United States, after they were used as exhibits in cross-noticed deposition testimony.  Therefore a total of 68 of the 167 documents were originally and wrongfully held back by Abbott, but ultimately voluntarily produced prior to the filing of the Relator's Motion to Compel.

On April 27, 2007, in accordance with this Court's instructions at the hearing on Feb. 27, 2007, the Relator filed its Motion and Memorandum in Support of its Motion to Compel Abbott to Produce or Consent to Access to and Sharing of all Discovery Produced by Abbott in Other False Price Litigation.[3] (Documents 4121, 4122)  Relator also provided a DVD of the Sample documents and exhibit summarizing those documents for *in camera* inspection and requested that the Court file them under seal.

---

documents in the final sample submitted to the Court was 167.   Abbott has produced hundreds of thousands of pages in the United States, Texas and California cases, all under different labeling schemes.  As it stands now the Relator must search for duplicates of each important document in the production databases and attempt to co-ordinate discussions with the United States so as to not violate any court orders.  Considering these difficulties, it was likely that Abbott had in fact produced some of the documents in the sample under a different labeling scheme.  These difficulties are another example of how the Relator's inability to share documents with the United States complicates discovery and greatly hinders its ability to coordinate the litigation with its co-counsel.

[3]The Relator's Motion to Compel was separate from, but related to, the United States Motion to Compel Abbott to Produce All Discovery Required by CMOs 5 and 10 (Document 3529) in that the material sought in the United States' Motion would have largely been produced if sharing between the Relator and the United States were permitted.  Because of the timing of the filing of the Motion to Compel on the sharing issue and the meet and confers and the filing of the United States Motion to Compel, the Relator's Motion was treated as one for reconsideration when the issues presented involved whether the Relator and the United States should benefit from sharing discovery along the lines of the provisions of the Manual for Complex Litigation.

(Document 4123) The Court granted the Relator's Motion to file the sample documents under seal on May 15, 2007.

An Order on the Relator's Motion to Compel and on Motions by Abbott Laboratories, Inc. and non- parties Hospira, Inc. and Tap Pharmaceuticals, Inc. to quash 14 third party subpoenas issued by the United States to 10 Abbott customer actions and 4 trade groups was issued on July 19, 2007. (Document 4483)  With respect to the Relator's Motion to Compel, the Order compelled Abbott to produce an additional 30 documents from the sample.  Since the Relator produced the sample as per the Court's Order, Abbott either voluntarily or by Court order produced 98, or approximately 59%, of the 167 documents in the sample.

The Order required Abbott to produce the 30 sample documents within 10 days of the date of the Order, or in the alternative Abbott may consent to have the Relator share the sample documents with the United States.  The Relator has asked Abbott's counsel whether it has complied with the Court's Order or whether it will give consent, but has not received a response as of the filing of these Objections.

The Relator objects to portions of the July 19, 2007 Order, but does not object to the portions requiring production of the documents (and similar documents) Abbott originally claimed were not relevant but later agreed to produce.

## II. ARGUMENT

Federal Rule of Civil Procedure 72 provides that for nondispositive matters the district judge shall consider objections to a magistrate's order of a moving party and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law".  The Relator asserts that the Order of July 19, 2007 was

clearly erroneous in that: 1) the ruling did not follow the procedure and remedy originally contemplated by the Court at the February 22, 2007 hearing and in CMO 29, paragraph 7; and 2) The Relator's Motion was misconstrued as one for reconsideration of its May 22, 2007 Order rather than one for the Court to order Abbott to allow the sharing between the Relator and the United States of discovery already produced in related litigation.[4]

### A.     The July 19, 2007 Order Applied the Incorrect Remedy

The Magistrate reviewed 99 sample documents and correctly ordered Abbott to produce 30 of those wrongfully withheld documents to the United States.  The 30 documents ordered to be produced contain valuable information which will assist the Relator and the United States in the litigation of the case.  The Magistrate's Order as to those 30 documents was correct, but the remedy ordered was not the remedy originally contemplated by the Court.  It is respectfully submitted that the Court's directions concerning the procedure and remedy contemplated for the filing of the Relator's Motion to Compel were misapprehended and the incorrect remedy was applied.  As set forth above, on February 27, 2007, the Court set forth a procedure to streamline the Relator's dispute with Abbott and prohibit continuous Motions to Compel and *in camera*

---

[4] The Relator incorporates the arguments it made in its original Motion to Compel and Memorandum of Law (Document Numbers 4121 and 4122) herein by reference.  The Relator also prepared a DVD containing the Sample Documents as *In Camera* Exhibit D along with two Charts with links to the documents in order to facilitate the Court's review.  The Relator's Memorandum of Law was also placed on the DVD with links to the documents discussed.  The DVD containing the Sample Documents and the interactive Memorandum was previously provided *in camera* to both the District Court Judge and Magistrate Judge.  The Relator is prepared to submit the previously provided materials to the Court again for *in camera* review.

inspections of documents wrongfully withheld from production by Abbott.  The Court, wishing to avoid an endless process of reviewing documents *in camera* that had been previously produced or ordered produced in state court AWP litigation, stated, in sum, that if the Relator was able to prove most of the sample documents should have been produced to the United States, Abbott would be ordered to permit sharing of documents previously produced in state AWP litigation.

The Relator, per the Court's Order, created a sample of documents that should have been produced to the United States and submitted it to Abbott.  Prior to the Relator's filing of the Motion to Compel, Abbott conceded that 68 of the 167 documents in the sample should have been produced.  Abbott's admission that it should have produced approximately 40% of the documents from the sample before the Relator filed the Motion to Compel at issue, in and of itself, substantially demonstrates that Abbott should allow sharing of documents it produced to the Relator (and to other government litigants) with the United States without burdening the Court with repeated motions to compel.[5]

The July 19, 2007 Order provides that Abbott shall produce an additional 30 documents to the United States.[6]  The Order denies production of the sample

---

[5] Many of these documents have previously been produced only after motions to compel were filed in state court and after the Relator expended substantial time and money.

[6] The documents were reviewed in light of the three categories of objection to their production that had been raised by Abbott, time frame, responsiveness and relevance.

documents listed in Exhibit B.[7]  All in all, Abbott produced voluntarily or by Court Order 98, or approximately 59%, of the 167 documents in the sample.  Clearly, the Relator proved that most of the documents were appropriate for production, and therefore the remedy contemplated by the Court on February 27, 2007 should be applied.[8]  The Order should have, as contemplated by the Court's statements at the February 27, 2007 hearing, ordered Abbott to produce to the United States or permit the Relator to share with the United States all documents produced to the Relator in state AWP pricing litigation.

> **B. The Relator's Motion was Treated as a Motion for Reconsideration of the May 22, 2007 Order Setting the Parameters for Discovery, But Should Have Been Treated As an Independent Motion to Compel Directed at Sharing Discovery Among Co-counsel**

---

[7] Simultaneously with its Objections, the Relator is submitting a Motion for Leave to File Exhibit B to Relator's Objections to July 19, 2007 Order by Magistrate on Relator's Motion to Compel Abbott Laboratories to Produce or Consent to Access to and Sharing of All Discovery Produced by Abbott in Other False Price Report Litigation.  The Relator's Motion and Exhibit B will be produced to the Court *in camera* and to Defendant Abbott in accordance with the previous procedure as to these issues.  Exhibit B is a listing of all the documents that were not compelled to be produced along with a detailed explanation of why the Order should have compelled production. There were several sample documents that were not specifically addressed in the Court's Order.  The Relator has construed the Court's silence as to those documents as a denial of the Motion as to these documents.

[8] Additionally, the Order's denial of the Relator's request to share at least 9 additional documents with the Government is incorrect.  The Order denies the Relator's Motion as to 17 documents on the grounds that they were outside the temporal scope set forth in her May 22, 2007 Order.  (Document 3849) The May 22, 2007 Order permits discovery of documents between January 1, 1991 and Dec. 31, 2003.  Nine of the 17 documents in the sample were not ordered to be produced based on temporal scope, but are clearly dated within the time frame prior to December 31, 2003.  Therefore, 64% of the sample documents are discoverable in this action.

The July 19, 2007 Order states that the Relator's Motion to Compel was construed as a request for reconsideration of the order dated May 22, 2007 on the parameters of discovery. However, the Relator's Motion to Compel was misconstrued, because of the timing of the filing of the Motion to Compel at issue and the hearing on another Motion to Compel filed by the United States. The Motion to Compel was reviewed as a request to compel production of the specific documents in the sample applying parameters such as temporal scope or relevance rather than used as a method to determine the appropriateness of the Relator sharing a greater, more expansive, group of documents previously produced in related litigation with the United States.

The Relator's Motion to Compel requested that the Manual for Complex Litigation provisions for coordinated discovery be applied to Abbott so that discovery will be expedited and so that the Relator is not required to re-litigate Abbott's many discovery objections that have already been disposed of in other cases. Ven-A-Care's motion is directed at discovery in all similar false pricing litigation. While this includes the Texas Action, where discovery has proceeded the farthest, it also includes the California Action, a state false claims act case pending before this Court in the current MDL proceedings.[9] The Motion is also directed at other state court actions, such as that brought by the State of Pennsylvania. The fact that the Order ignores these other proceedings in the context of whether the Manual for Complex Litigation applies,

---

[9]None of the sample documents were documents produced in the California Action. However, the Relator's Motion requests the Court permit sharing of documents produced in the California Action with the United States.

9

especially the Ven-A-Care California action pending in this very MDL, underscores its departure from the Court's earlier guidance encouraging joint discovery wherever possible. (See CMO 5, paragraph 2 (b); CMO 10, paragraph 1).

A fundamental purpose of MDL proceedings is to share discovery and avoid unnecessary costs. Manual for Complex Litigation §20. The Manual for Complex Litigation specifically suggests that state court discovery be utilized in a federal MDL action, particularly where the state action has progressed further. Manual for Complex Litigation §20.313. Abbott, from the beginning, aggressively sought the benefits of these MDL proceedings through repeated removals and transfers to this Court. However, Abbott is not willing to allow the Relator and the United States the benefit of the MDL proceedings and is blocking plaintiffs' ability to coordinate discovery efforts.

As will be discussed more fully below, Ven-A-Care respectfully submits that certain statements made by the Court during prior proceedings were mis-apprehended as setting unmalleable limits on the scope of discovery to which the United States will be entitled in this case. The Court's limits on discovery should be applied to limit the burden of discovery rather than to tie the hands of the Relator and prohibit the Relator from coordinating the litigation of the case with the United States and other states. There is no burden upon Abbott to allow the Relator to share documents with the United States and other plaintiffs in this MDL litigation. The limits on the scope of discovery designed to decrease the burden on discovery in this case should not trump the efficiency of allowing the parties to share discovery produced in related litigation when no burden exists.

This Court's reference to a general latter temporal limit of December 2003 as well as other parameters, for example, were applied to mean that the United States may not have access to any document that falls outside the scope of any one parameter, even if there is absolutely no incremental burden to Abbott.  As an example of the incorrect application of the parameters of discovery, the sample document bates TXABT 672974-79 named PPD - 2004 Procedures, is a written Abbott policy adopted in 2004 for the Pharmaceutical Products Division which appears to prohibit Abbott employees from discussing the spread on Abbott drugs with customers and marketing Abbott drugs based upon the spread.  This is clearly a document which is either relevant, or likely to lead to the discovery of relevant evidence: 1) It shows that Abbott was quite capable of instructing its personnel to not market the spread;  2) It will lead to discovery of evidence as to why such a policy was not put into effect sooner;  3)  It will lead to discovery of evidence as to why such a policy was never put in place for the Hospital Products Division; and 4)  It will lead to discovery of evidence as to why such a written  policy did not extend to Abbott's price reporting behavior, since that was how Abbott created its inflated spreads which, by 2004, were clearly "self marketing".  This 2004 document also shows how the Relator's efforts have lead to positive change, a factor uniquely important to a qui tam False Claims Action.  However, the Court would not order Sample Document bates number TXABT 672974-79 to be produced because it is outside the temporal scope.

    Abbott should have been ordered to produce the 2004 written policy document because it would be in accordance with the fundamental purpose of the discovery sharing provisions of the Manual for Complex Litigation and this Court's prior

instructions that counsel shall endeavor to coordinate discovery in the MDL with the related state court cases whenever possible.  Assume, for argument sake, that this Court's guidelines regarding the temporal scope of discovery demands in the instant case are forever and exclusively fixed such that Abbott would never be required to provide Sample Document bates numbered TXABT 672974-79 to the United States despite that it had already been produced in related litigation to the Relator because it is outside the temporal scope. The Relator's discovery sharing motion was apparently significantly denied because it was determined that just such an unyielding limitation should be imposed.

　　　As another example, the Order denied production of documents relating to other drugs, even though they touched on cross-cutting issues.  Documents showing Abbott's knowledge that it was reporting false prices, even though the particular drug may not relate directly to drugs for which the United States has brought claims, are relevant to show Abbott's knowledge that it was reporting false prices and its pattern, routine and practice of doing so.  Other acts evidence include documents that show or assist in showing that Abbott reported truthful prices when an economic interest in falsely inflating the drug didn't exist.  The other acts evidence and knowledge evidence from Abbotts' PPD division and from Abbotts' high corporate officials show that its HPD division personnel also had a motive to create an inflated spread and were aware that they were doing so.  Particularly because there is no burden on Abbott, sharing should be allowed for these types of documents previously produced in related litigation. Specific documents that the Order should have compelled Abbott to produce include but are not limited to Sample Document numbers 118 and 122.

Although Abbott has not filed an answer in the instant case, it is likely that it will assert broad defenses relating to knowledge and causation such as the one stated in open court by counsel for Abbott: " . . . Abbott does not set the AWP.  They keep trying to do that.  They keep trying to put that on us.  We're not going to be able to give them anybody at Abbott who set AWP because we don't set AWP.  That is the pricing compendia." June 19, 2007 hearing transcript, p. 46, lines 18-21.  Documents produced in Texas, but withheld from discovery in this case, show that Abbott did in fact set the AWP and that Abbott employees were aware of this fact.  Since these specific documents uncovered in the Texas Action do not refer to the HPD or marketing, under the Court's order, they would not need to be produced even though they relate directly to the claim or defense of a party.

Additionally, Abbott has already produced in Texas documents that show spread marketing by other Abbott divisions.  These divisions often market to the same customers as the HPD division.  Once a customer is alerted to the impact on its profits of a spread for one drug, the customer does not have to be told for each Abbott drug it purchases about the spread, it already knows.  Therefore, documents that demonstrate spread marketing for other divisions are highly relevant.  They show that Abbott was focused on reimbursement and how the spread worked.   Specific documents the Order should have compelled Abbott to produce include but are not limited to Sample Document numbers 133, 302 and 492.

Accordingly, the standard applied is a "Catch 22":  The Relator shall not be allowed to share discovery from other Abbott cases unless the discovery would expressly be permitted in the present case.  If the discovery would be permitted in the

13

present case, there is no real need for sharing as Abbott will just produce it. The Relator respectfully submits that such a standard would mean that sharing would never be allowed because the scope of discovery and individual discovery rulings are going to differ from case to case. The whole idea of sharing of discovery is to expedite and streamline the process by permitting the parties access to that which has already been produced in a manner that in no way increases the burden on the producing party. Moreover, as is clear from the exercise with the sample, Abbott will not voluntarily produce all that it is required to produce absent vigilant enforcement efforts by the plaintiffs.

Finally, the sharing of discovery enables parties to efficiently prepare for and take joint depositions. Here, the Relator is a party to most of the actions from which sharing is requested and must prepare with its State and federal counterparts. However, it is allowed to share documents with some of the plaintiffs participating in the deposition, but not with others such as the United States. Inevitably, many of the documents which the Relator has not been allowed to share with the United States prior to a deposition have been ultimately produced as an exhibit in a deposition in at least 15 cases.[10] This process has hindered the ability of the Relator and United States to prepare for the depositions and serves no legitimate interest of the Defendant. The Court's July 19, 2007 Order permits this illogical and arbitrary process to continue.

Abbott's refusal to cooperate in the multi-tribunal discovery process has placed

---

[10] As recorded in Exhibit E to the Relator's original Motion to Compel, Abbott has conceded during depositions a document's relevance or responsiveness and allowed the United States to view the document.

the Relator and its counsel in the absurd position of having access to documents produced by Abbott to the United States, to Texas and to California, but being unable to share documents from the state cases with the United States.  This precludes effective cooperation in and coordination of discovery with the Relator's government co-litigants, hampers the ability to prepare for depositions and leads to unnecessary motions to compel.  It complicates the ability of the plaintiffs to prepare their experts, and also consequently also will complicate communications with a mediator and hinder the ability to appropriately conduct a mediation. For example, Texas and the relator could show a document to a mediator who could not then use it in discussions with the United States. One would be hard pressed to fathom a complex case where discovery coordination and sharing would be more appropriate than the present one.

### III.  CONCLUSION

Abbott's refusal to produce documents to the United States that it has already produced to the Relator and state governments in related AWP litigation is an outrageous attempt to block discovery of relevant evidence to the United States' case. Abbott refuses to produce the materials despite that no burden exists as to the production of documents already produced in state cases and/or to the Relator.  The directions and guidance of the District Court Judge were misapprehended regarding this dispute and the incorrect remedy was imposed in the July 19, 2007 Order.  The parameters of discovery issued in the May 22, 2007 Order should not serve to trump the efficiency of allowing co-plaintiffs to share documents.  Since the Relator proved that at least 59% of the documents in the sample were discoverable, all documents produced by Abbott in related state court litigation to the states, and in some cases,

directly to the Relator should be produced to the United States or in the alternative sharing should be allowed amongst the United States, plaintiffs in the related state AWP litigation and the Relator.

WHEREFORE, the Relator respectfully requests, pursuant to Rule 72(a), that this Court modify the July 19, 2007 Order and compel Abbott to produce all documents it has produced in related state court litigation including but not limited to documents produced in the Texas Action and the California Action.

Respectfully submitted,

For the Relator, Ven-a-Care of the Florida Keys, Inc.,

**/s/ Alison W. Simon**
James. J. Breen
Alison W. Simon
The Breen Law Firm
3350 S.W. 148th Avenue, Suite 110
Miramar, FL 33027
Tel: (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com

Sherrie R. Savett
Susan Schneider Thomas
Gary L. Azorsky
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

Jonathan Shapiro
Stern, Shapiro, Weissberg & Grain LLP
90 Canal Street
Boston, MA 02114-5800
Tel: (617) 742-5800
Fax: (617) 742-5858

Dated: August 9, 2007

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have this day caused an electronic copy of the above Relator's' Objections to July 19, 2007 Order by Magistrate on Relator's Motion to Compel Abbott Laboratories to Produce or Consent to Access to and Sharing of all Discovery Produced by Abbott in Other False Price Litigation and Memorandum of Law in Support of Objections to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: August 9, 2007

                                                           **/s/ Alison W. Simon**