UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| ALL ACTIONS | |

[PROPOSED] FINAL ORDER AND JUDGMENT GRANTING
FINAL APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT WITH THE
GLAXOSMITHKLINE DEFENDANTS, APPROVING PROPOSED ALLOCATION OF
SETTLEMENT FUNDS, AND APPROVING CLASS COUNSEL'S APPLICATION FOR
ATTORNEYS FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND
COMPENSATION TO CLASS REPRESENTATIVES

This Court having considered: (a) the Settlement Agreement and Release of the GlaxoSmithKline Defendants dated August 10, 2006, including all Exhibits thereto (as amended) (the "Agreement"), between the Plaintiffs and Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), which is, along with GlaxoSmithKline, plc and Glaxo Wellcome, Inc., a named defendant in the above-captioned matter (collectively the "GSK Defendants"); (b) the proposed allocation and distribution of the Settlement Fund; and (c) Class Counsel's application for attorneys' fees, reimbursement of litigation expenses and compensation to the Class Representatives; and having held a hearing on July 19, 2007, and having considered all of the submissions and arguments with respect thereto, and otherwise being fully informed, and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

- 1 -

1.      This Final Order and Judgment incorporates herein and makes a part hereof, the Agreement, including the Exhibits thereto. Unless otherwise provided herein, the terms defined in the Agreement shall have the same meanings for purposes of this Final Order and Judgment.

2.      The Court has personal jurisdiction over all Class Representatives, AWP Payor Class Members and Defendant GSK for purposes of this settlement only, and has subject matter jurisdiction to approve the Agreement.

3.      Based on the record before the Court, including all submissions in support of the Settlement set forth in the Agreement ("Settlement"), the lack of any objections to the Settlement, as well as the Agreement, the Court hereby incorporates the findings of its August 16, 2005 and January 30, 2006 *Order Re: Motion for Class Certification* and further certifies the following nationwide Classes (the "AWP Payor Classes") for settlement purposes only:

>   A.   Medicare Part B Co-Payment Class ("Medicare Co-Payment Class")
>
>   All natural persons in the United States who made, or who incurred a currently enforceable obligation to make, a co-payment based on AWP for a Medicare Part B covered drug manufactured by GSK set forth on Exhibit A hereto. Excluded from the Class are persons who made flat co-payments, who were reimbursed in full for any co-payments, or who have the right to be fully reimbursed for any co-payments.
>
>   B.   Third-Party Payor MediGap Supplemental Insurance ("MediGap TPP Class")
>
>   All Third-Party Payors in the United States who made reimbursements for a Medicare Part B covered drug manufactured by GSK and set forth on Exhibit A hereto, based on AWP, during the Class Period.
>
>   C.   Consumer and Third-Party Payor Class for Payments Made for Medicare Part B Drugs Outside the Medicare Context

("Private Payor Class")

> All natural persons in the United States who made, or who incurred a currently enforceable obligation to make, a payment for, and all Third Party Payors in the United States who made reimbursements based on contracts expressly using AWP as a pricing standard for purchases of, a physician administered drug manufactured by GSK set forth on Exhibit A hereto, during the Class Period. Excluded from the Class are natural persons who made flat co-payments, who were reimbursed in full for any payments or co-payments, or who have the right to be fully reimbursed for any payments or co-payments.

The Class Period for the Medicare Co-Payment Class and the MediGap TPP Class is January 1, 1991 through January 1, 2005. The Class Period for the Private Payor Class is January 1, 1991 through August 10, 2005. Excluded from each of the AWP Payor Classes are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates. Excluded from the MediGap TPP Class and the Private Payor Class are: (1) the United States government and its agencies and departments, and all other governmental entities that made payments pursuant to any state's Medicaid program; (2) the Independent Settling Health Plans (ISHPs), as defined in Paragraph 2(w) of the Agreement; and (3) all federal, state or local governmental entities, *except for* the following, which are *not* excluded from the MediGap TPP or Private Payor Classes: (a) non-Medicaid state or local government entities that made AWP-based prescription drug payments as part of a health benefit plan for their employees, but only with respect to such payments, and (b) other non-Medicaid state government agencies or programs of the Participating States and of the Additional Participating States, if any, *except that* such agencies and programs in New York and Connecticut *are* excluded.

In so holding, the Court finds that the prerequisites of Rule 23(a) and (b)(3) have been satisfied for certification of the nationwide AWP Payor Classes for settlement purposes only:

members of the nationwide AWP Payor Classes, numbering in the hundreds of thousands, are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the nationwide AWP Payor Classes, such as whether Class Members were overcharged for GSK Covered Drugs; the claims and defenses of the Class Representatives are typical of the claims and defenses of the members of the nationwide AWP Payor Classes; the Class Representatives have fairly and adequately protected the interests of the nationwide AWP Payor Classes with regard to the consolidated claims of the nationwide AWP Payor Classes; the common questions of law and fact predominate over questions affecting only individual nationwide AWP Payor Class Members, rendering the nationwide AWP Payor Classes sufficiently cohesive to warrant a nationwide class settlement; and the certification of the nationwide AWP Payor Classes is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of the MDL Class Actions.

In making all of the foregoing findings, the Court has exercised its discretion in certifying nationwide settlement classes.

4.   The record shows that Notice has been given to the nationwide AWP Payor Classes in the manner approved by the Court in its Preliminary Approval Order of November 15, 2006 [Docket No. 3401]. The Court finds that such Notice: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise members of the nationwide AWP Payor Classes of the pendency of the MDL Class Actions, the terms of the Settlement, and nationwide AWP Payor Class Members' right to object to or exclude themselves from the nationwide AWP Payor Classes and to appear at the settlement fairness hearing held on July 19, 2007 (the "Fairness Hearing"); (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and

(iv) meets the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

5. No individuals or entities, other than those listed on Exhibit B hereto, have excluded themselves from the nationwide AWP Payor Classes. This Order shall have no force or effect on the persons or entities listed on Exhibit B hereto.

6. The Court finds that extensive arm's-length negotiations have taken place in good faith between Lead Class Counsel and Defendant GSK's Counsel resulting in the Agreement. Additionally, the Court finds that extensive arm's-length negotiations have taken place on behalf of separate counsel appointed by Lead Class Counsel to represent the interests of Consumer Class Members and TPP Class Members in order to apportion the Settlement Fund between these constituencies and that these arm's-length negotiations afforded the structural protection required to ensure adequate representation of these constituencies.

7. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby finally approves in all respects the Settlement set forth in the Agreement ("the Settlement") and finds that the Settlement, the Agreement, and the plan of distribution of the Settlement Fund as set forth in Paragraph 22 of the Agreement and Exhibit G to the Agreement, are, in all respects, fair, reasonable and adequate, and in the best interest of the nationwide AWP Payor Classes.

8. The Court further approves the establishment of the Settlement Fund under the terms and conditions set forth in the Agreement and the Class Escrow Agreement submitted by the parties. The parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Agreement. In addition, the parties are authorized to agree to and adopt such amendments and modifications to the Agreement as (i) shall be consistent in all material respects with this Final Order and Judgment, and (ii) do not limit the rights of nationwide AWP Payor Classes.

9. The claims against the GSK Defendants in the MDL Class Actions are hereby dismissed with prejudice and without costs to any party, except as otherwise provided herein.

10. Upon the Effective Date of the Agreement, the Class Releasors (as defined in Paragraph 2(g) of the Agreement) shall release and forever discharge the GSK Releasees (as defined in Paragraph 2(v) of the Agreement) from the Released Class Claims (as defined in Paragraph 2(oo) of the Agreement).

11. The Court finds that the Class Escrow Account is a "Qualified Settlement Fund" as defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the following requirements:

   (a) The Class Escrow Account is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

   (b) The Class Escrow Account is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

   (c) The assets of the Class Escrow Account are segregated from other assets of GSK, the transferor of payments to the Settlement Fund, and from the assets of persons related to GSK.

12. Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

   (a) The Class Escrow Account met the requirements of paragraphs 12(b) and 12(c) of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

(b) GSK and the "administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Class Escrow Account as coming into existence as a "Qualified Settlement Fund" on the later of the date the Class Escrow Account met the requirements of paragraphs 11(b) and 11(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 11 of this Order are met. If such relation-back election is made, the assets held by the Class Escrow Account on such date shall be treated as having been transferred to the Class Escrow Account on that date.

13. Nothing in this Final Order and Judgment, the Settlement, or the Agreement is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any of the Defendants.

14. Class Counsel have moved pursuant to Rules 23(h), 54(d) and 52(a) of the Federal Rules of Civil Procedure for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rule 23(h)(3) and 52(a) this Court makes the following findings of fact and conclusions of law:

(a) that the Settlement confers a substantial benefit on the nationwide AWP Payor Classes;

(b) that the value conferred on the nationwide AWP Payor Classes is immediate and readily quantifiable. Upon this Judgment becoming final, each nationwide AWP Payor Class Member who has submitted a valid proof of claim will receive a cash payment that represents a significant portion of the alleged financial harm alleged to have been incurred as a result of the GSK Defendants' alleged conduct;

(c) that Class Counsel vigorously and effectively pursued the nationwide AWP Payor Class Members' claims before this Court in this highly complex case;

(d) that the Settlement was obtained as a direct result of Class Counsel's skillful advocacy;

(e) that the Settlement was reached following extensive negotiation between Lead Class Counsel and Defendant GSK's Counsel, and was negotiated in good-faith and in the absence of collusion;

(f) that during the prosecution of the MDL Class Actions up to the date of the GSK Settlement on August 10, 2005, Class Counsel incurred expenses in the amount of $5,561,128.12, which included costs for expert witnesses and other expenses which the Court finds to be reasonable and necessary to the representation of the nationwide AWP Payor Classes;

(g) that nationwide AWP Payor Class Members were advised in the "Notice of Pendency of Class Action, Proposed Settlement and Class Certification for the Settlement" approved by the Court that Class Counsel intended to apply for an award of attorneys' fees in an amount up to 33 1/3% of the Settlement Fund (plus interest thereon), plus the opportunity to petition the Court for a fee on any amounts refunded to GSK as a result of TPP Opt Outs under the circumstances described in Paragraph 17 of the Agreement, plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action;

(h) that no member(s) of the nationwide AWP Payor Classes has (have) submitted written objection(s) to the award of attorneys' fees and expenses;

(i) that counsel who recover a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1984);

(j) that use of the percentage of the fund method in common fund cases is the

prevailing practice in this Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefit on a class resulted from the lawyers' efforts. *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); and

    (k)    the requested fee award of 33% of the Fund for both fees and litigation expenses is ~~well~~ within the applicable range of percentage awards in this Circuit; *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. April 9, 2004) [Doc. No. 297]; *Mowbray v. Waste Management Holdings*, No. 98-11534-WGY (D. Mass. Aug. 2, 2001); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996); *Wilensky v. Digital Equipment Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001). Accordingly, Class Counsel are hereby awarded $21,615,000 from the balance of the Settlement Fund as their fee award which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Agreement, with interest from November 29, 2006 (the date of the funding of the Settlement Fund) to the date of payment, at the same net interest rate earned by the Settlement Fund. Further, this amount is also meant to compensate Class Counsel for the litigation expenses as requested by Class Counsel in the fee petition. Co-Lead Settlement Class Counsel shall allocate fees to themselves and other Plaintiffs Class Counsel in their sole discretion, as appropriate.

    15.    ~~The Class Representatives and other appropriate parties, as identified in the Order Granting Preliminary Approval of the GlaxoSmithKline Settlement, Certifying Class for Purposes of Settlement dated November 15, 2006, are hereby granted an compensation totaling $25,000 for all Consumer Class Representatives and $100,000 for all TPP Class Representatives, to be divided among them by Lead Class Counsel, which amount is in addition to whatever~~

[Handwritten:] 15. The Class Representatives are compensated in the amounts set forth in their declarations to the consent of time spent on this case. (Document 4509)

001534-16 177564 V1

monies the Class Representatives will receive from the Settlement Fund pursuant to the Agreement as members of the AWP Payor Classes.

16. Without affecting the finality of this Final Order and Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement and interpretation of the Agreement and of this Final Order and Judgment, to protect and effectuate this Final Order and Judgment, and for any other necessary purpose. Defendant GSK, Class Representatives and each member of the nationwide AWP Payor Classes are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Agreement or the applicability of the Agreement, including the Exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Final Order and Judgment, the Court retains exclusive jurisdiction over any such suit, action or proceeding. Solely for purposes of such suit, action or proceeding, to the fullest extent they may effectively do so under applicable law, the parties hereto are deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

17. In the event that the Settlement does not become effective according to the terms of the Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

18. No nationwide AWP Payor Class Member, either directly, representatively, or in any other capacity (other than a nationwide AWP Payor Class Member who validly and timely

elected to be excluded from the Class), shall commence, continue or prosecute against any or all GSK Releasees any action or proceeding in any court or tribunal asserting any of the Released Claims defined in the Agreement, and are hereby permanently enjoined from so proceeding.

DATED:  8/7/07

_____
Hon. Patti B. Saris