UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) Civil Action No. 01-12257-PBS ) |
| **THIS DOCUMENT RELATES TO:** | ) Hon. Patti B. Saris ) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06–CV-11337-PBS | ) Magistrate Judge Marianne B. Bowler ) ) ) |

# EXHIBIT C

## TO THE UNITED STATES' OBJECTIONS TO JULY 19, 2007 ORDER BY MAGISTRATE JUDGE BOWLER

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br>**THIS DOCUMENT RELATES TO:**<br><br>United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.<br>CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) ) ) ) ) | **SUBPOENA IN A CIVIL ACTION**<br><br>MDL No. 1456<br>Civil Action No. 01-12257-PBS<br>Hon. Patti Saris<br>Magistrate Judge Marianne B. Bowler |

TO: American Society of Clinical Oncology (ASCO)
1900 Duke Street, Suite 200
Alexandria, VA 22314

___ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

___ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

✔ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See attached Exhibits A and B

| PLACE<br>Civil Division, Commercial Litigation Branch<br>U.S. Department of Justice<br>Patrick Henry Building<br>601 D Street, N.W.<br>Washington, D.C. 20004 | DATE AND TIME<br>May 30, 2007 |
|---|---|

___ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (Indicate if Attorney for Plaintiff or Defendant)<br><br>*Rebecca A. Ford*<br>Rebecca A. Ford, Trial Attorney<br>(Attorney for the United States) | DATE<br><br>April 27, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Rebecca A. Ford
Civil Division, Commercial Litigation Branch
U.S. Department of Justice
Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20004
(202) 514-1511

## PROOF OF SERVICE

|  | Date | Place |
|---|---|---|
| SERVED | | |

| SERVED ON (Print Name) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (Print Name) | TITLE |
|---|---|
| | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　Date

_____
Signature of Server

_____
Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph of (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SUBPOENA EXHIBIT A: INSTRUCTIONS, DEFINITIONS & REQUESTS

1. DEFINITIONS

As used in Subpoena Exhibits A and B, the following terms include the meanings set forth below:

    A. The term "Defendant" refers to Abbott Laboratories, Inc. and any of its predecessors, successors, parents, subsidiaries, offices (including, but not limited to, local, regional, national, executive and/or foreign offices), affiliates (including, but not limited to, Hospira, Inc.), divisions (including, but not limited to, Abbott's Hospital Products and Corporate Marketing Divisions), business units (including, but not limited to, Abbott's Alternate Site Product Sales, Renal Care and Home Infusion Services business units) or branches thereof, and any present or former officers, directors, employees or agents. The term "Defendant" also includes all attorneys, accountants, advisors and all other persons or entities acting or purporting to act on its behalf.

    B. The term "you" or "your" means the American Society of Clinical Oncology ("ASCO") and its predecessors, and employees, officers, directors, agents, attorneys, affiliates or any person or entity acting on ASCO's behalf.

    C. The term "entity" means an individual, corporation, partnership, proprietorship, professional corporation, association, group, governmental agency or agent, municipal corporation, state government, local government, political subdivision, or any other legal entity of any kind, whether for profit or not for profit.

    D. The term "document" includes, without limitation, the originals of all writings of every kind, including but not limited to letters, telegrams, memoranda, reports, studies, legal pleadings, speeches, calendars, diary entries, travel records and vouchers, promotional materials, pamphlets, handwritten notes, drafts, lists directives, reports, tabulations, minutes and records of meetings, and telephone records, which are now or formerly were in the actual or constructive possession and control of you, your officers, directors, employees, attorneys or other agents. The term "document" further includes data processing and computer printouts, tapes, disks, and data stored in computers or data processing equipment, together with programs and program documentation necessary to retrieve, read and utilize such data, and all other mechanical or electronic means of storing or recording data, as well as tape, film or cassette sound and/or visual recordings, and reproductions or film impressions of any of the aforementioned writings. The term "document" also includes copies of all documents which are not identical duplicates of the originals and copies of documents if the originals of documents are not in the possession, custody or control of you, your officers, directors, employees, attorneys or other agents. Alteration of documents includes, without limitation, any modification, censorship, redaction, addition to or changing, which obscures, removes, amends, changes or obliterates any part of the original language, information, or meaning.

    E. The term "communication" means any act, action, oral speech, written

1

correspondence, contact, expression of words, thoughts, or ideas or transmission of exchange of data or other information to another person or entity, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, facsimile or any other process, whether it be by electronic means or otherwise. All such communications in writing shall include, without limitation, printed, typed, handwritten, electronic, or other readable documents.

    F.    "Relating to" or "related to" shall include mentioning, evidencing, reflecting, describing, discussing, constituting, referring to, pertaining to, concerning, involving, memorializing, dealing with and bearing on, whether legally, factually, or otherwise.

    G.    The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope, and are not to be interpreted in such a manner as to exclude any information within the scope of this request.

    H.    The term "Subject Drugs" means the drugs listed in Exhibit B.

    I.    "AWP" means average wholesale price.

    J.    "WAC" means wholesale acquisition cost.

    K.    The term "Price Publications" means (1) the *Red Book* published by Thomson Publishing, (2) the *Blue Book*, Price Alert, National Drug Data File and any electronic or automated price service published by First Databank, (3) the electronic or automated price service and the Hospital Formulary Pricing Guide published by Medi-Span, Inc., and (4) any other pricing compendia published by those companies or by Medical Economics, Inc. or the Hearst Corporation.

    L.    The term "Published Price" means any price published, disseminated or offered in any form by Thomson Publishing, Medical Economics, Inc., Hearst Corporation, First DataBank, Inc., or Medispan, Inc., including any prices published in the Drug Topics Red Book, First Databank's Blue Book, Price Alert or National Drug Data File, the Hospital Formulary Pricing Guide or any other printed, electronic or automated price service or publication.

    M.    "Third-party payor" means Medicare, Medicaid and private insurance companies.

    N.    The term "Spread" refers to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid by purchasers of the Pharmaceuticals) and the price or cost set, published or arranged by the manufacturer or the reimbursement rate paid by third-party payors (to purchasers of the Pharmaceuticals). Thus, the Spread is the gross profit actually or potentially realized by the purchasers of the Pharmaceuticals.

2. INSTRUCTIONS

   A. The time period covered by each of these requests and for which you must provide all responsive documents extends from January 1, 1990 to the date of your response, and includes documents relating to such time period even though created before January 1, 1990.

   B. All responsive documents should be produced in the order in which you maintain them in the usual course of your business, or organized and labeled to correspond with the categories of this request.

   C. You should produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof, and should be eligible and bound or stapled in the same manner as the original.

   D. Documents not otherwise responsive to these requests should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by these requests or if such documents are attached to documents called for by these requests and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials. Documents attached at the time of the receipt of this Subpoena and accompanying Exhibits or that are attached as they are kept in the ordinary course of business should not be separated.

   E. If you claim privilege as a ground for not providing documents in response to any request, describe the factual basis for said claim or privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim, including the date the document was prepared, the author, the addressees, all recipients and the general subject matter.

   F. If the response to any request consists, in whole or in part, of an objection(s), state with specificity the full objection(s) and the particularized basis for each said objection.

3. REQUESTS

**General**

   A. All contracts, membership agreements, or other agreements or terms relating to the association between you and the Defendant.

   B. Documents sufficient to show all payments made to you by or on behalf of the Defendant including documents showing amounts and the basis for each payment.

   C. All organizational charts and telephone directories for you from 1990 to the

3

present.

D. All documents relating to (including mentioning, evidencing, reflecting, . . ., pursuant to Definition F., *supra*) participation by the Defendant in any committees, boards, operating groups and other components of your organization (hereinafter collectively referred to as "committees"), the membership and responsibilities of each such committee, and all attendance lists, notes, minutes, summaries or other records of the activities of such committees.

**Price Reporting**

E. All correspondence between you and the Price Publications.

F. All correspondence between you and the Defendant relating to Published Prices, reimbursement methodologies, cross subsidization, spreads or kickbacks.

G. All documents relating to the accuracy, usefulness or reliability of the prices provided or disseminated by drug manufacturers.

H. All complaints or inquiries received by you regarding the accuracy, usefulness or reliability of any prices provided, published or disseminated by drug manufacturers, as well as all internal memoranda relating to the foregoing items or responses thereto.

I. All complaints or inquiries made by you to anyone regarding the accuracy of any prices obtained or received by you from any drug manufacturer, as well as all internal memoranda which mention, evidence or reflect the foregoing items or responses thereto.

J. All documents relating to any difference in the drug price information collected or published by First Data Bank, Blue Book, Medispan or Medical Economics/ Redbook and the actual selling price of drugs.

**Communications with Federal or State Legislators**

K. All documents relating to communications between you and the United States Congress (including all committees and staff members) regarding government reimbursement for drugs or drug pricing. Your production should include, but not be limited to, communications in connection with: (a) the Centers for Medicare and Medicaid Services' ("CMS") Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991), (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal

4

AB-00-86 (September 8, 2000), and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

L. All documents relating to communications between you and state legislatures (including all committees and staff members) regarding government reimbursement for drugs or drug pricing. Your production should include, but not be limited to, communications in connection with: (a) CMS's Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991), (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000), and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

M. All documents relating to any explanation or definition of any term commonly used to describe pharmaceutical prices or Published Prices, including "AWP," "WAC," "Direct Price," "List Price," "Net Wholesale Price," "Wholesale Net," or "charge-back" sent or provided by you or on your behalf to any elected official of any state or the United States.

**Communications with Federal and State Medicare and Medicaid Officials**

N. All documents relating to communications between you and the Department of Health and Human Services and all of its components (including the Office of Inspector General, and CMS, formerly the Health Care Financing Administration) regarding government reimbursement for drugs or drug pricing. Your production should include, but not be limited to, communications in connection with: (a) CMS's Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991), (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000), and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

O. All documents relating to communications between you – and any state Medicaid agency regarding government reimbursement for drugs or drug pricing. Your production should include, but not be limited to, communications in connection with: (a) CMS's Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991), (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000), and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

P. All documents which mention, evidence, reflect, compare, contrast or analyze the prices of any of the products of any drug manufacturer in comparison to or in connection with the reimbursement rates of any state's Medicaid program, the Medicare program, or any private health insurance plan.

Q. All documents sent by you to a drug manufacturer that mention, evidence or reflect upon the reliance of state or federal Medicaid or Medicare agencies or any private insurance company upon the prices provided, published or disseminated by a drug manufacturer.

**Marketing Reimbursement Spreads**

R. All documents, including, but not limited to, agendas, handouts, slides, PowerPoints and educational materials relating to presentations made by you on the topics of drug pricing, reimbursement, Medicare or Medicaid.

S. All documents relating to the reimbursement rates set by any Medicaid program, the Medicare program or any private health insurance plan and/or how those reimbursement rates affect the marketing or sale of any of your members' products.

T. All documents relating to any proposed or actual arrangement whereby the customers of a drug manufacturer were offered or received any payment in cash or in kind, directly or indirectly, in connection with the purchase of any of the Subject Drugs, including rebates, discounts, free pharmaceuticals or other goods, free equipment or supplies, educational grants, data collection services, administrative fees, conversion incentives and/or "off invoice pricing".

6

## SUBPOENA EXHIBIT B: SUBJECT DRUGS SOLD BY DEFENDANT

Sodium Chloride Injection

Sodium Chloride Irrigation

Water for Injection

Sterile Water for Injection

Sterile Water for Irrigation

Vancomycin HCl

Vancomycin HCl Add-Vantage

Vancomycin HCL

Vancomycin HCL Add-Vantage

Dextrose Injection

5% Dextrose in Water

Dextrose 5%/ Kcl/NaCl

Dextrose 5% and 0.225% NaCL Injection

5% Dextrose/ NaCl 0.9%

Sodium Chloride 0.9%

1

## SUBJECT DRUGS SOLD BY DEY, INC., DEY L.P., INC. AND DEY L.P. (COLLECTIVELY THE "DEY DEFENDANTS")

Albuterol Inhalation Aerosol Metered-Dose Inhaler

Albuterol Inhalation Aerosol MDI Refill

Albuterol Sulfate Inhalation Solution .5%

Albuterol Sulfate .5% (Sterile)

Albuterol Sulfate Unit Dose, 0.083% Inhalation Solution

Cromolyn Sodium Inhalation Solution

Ipratropium Bromide Inhalation Solution .02%

## SUBJECT DRUGS SOLD BY BOEHRINGER INGELHEIM CORP., BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., BOEHRINGER INGELHEIM ROXANE, INC., AND ROXANE LABORATORIES, INC. (COLLECTIVELY THE "ROXANE DEFENDANTS")

Azathioprine

Diclofenac Solution

Furosemide

Hydromorphone

Ipatropium Bromide

Oramorph SR

Roxanol

Roxicodone

Sodium Polystyrene Sulfonate

# CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **SUBPOENA** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: April 27, 2007

/s/ Rebecca A. Ford
<u>Rebecca A. Ford</u>