UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

**MEMORANDUM OF PLAINTIFFS AND CERTIFIED CLASS 1 REPRESENTATIVES JOYCE HOWE, TERESA SHEPLEY, LARRY YOUNG, AND REV. DAVID AARONSON; PROPOSED CLASS 1 REPRESENTATIVES HAROLD CARTER, DAVID CLARK, HUNTER WALTERS, AND HAROLD BEAN; AND PROPOSED CLASS 3 CONSUMER REPRESENTATIVE REBECCA HOPKINS, IN OPPOSITION TO ENTRY OF A JUDGMENT REGARDING CLASSES 2 AND 3 THAT BINDS <u>CLASS 1 AND CLASS 3 CONSUMERS</u>**

Consumer Plaintiffs Joyce Howe, Teresa Shepley, Larry Young, Rev. David Aaronson, Harold Carter, David Clark, Hunted Walters, Harold Bean, and Rebecca Hopkins ("the Consumer Plaintiffs") hereby oppose the motion of the Track 1 Defendants to have this Court enter the proposed Findings and Order on Motion of Track 1 Defendants For the Entry of Judgments Pursuant to Federal Rule of Civil Procedure 54(b) [Docket Nos. 4616 and 4617] ("Proposed Findings and Order"). As styled, and as the Track 1 Defendants indicate they intend to do, the Proposed Findings and Order would be used as part of an effort to unfairly and inappropriately limit the rights of Class 1 and Class 3 consumers to adjudicate their claims fully.[1]

---

[1] For the sake of brevity, the Consumer Plaintiffs incorporate by reference as if fully stated herein the Response of Class 1 Representatives Susan and David Aaronson to Purported "Notice of Lack of Class 1 Representative As To Defendants Bristol Myers Squibb Co. and Oncology Therapeutics Network Corp" ("Aaronson Response to BMS") [Docket No. 4261] and the Memorandum of Plaintiffs and Class 1 Representatives Harold Carter, Rev. David Aaronson, and Harold Bean In Response to Defendants Amgen's Supplemental Memorandum In Opposition to Class Certification ("Class 1 Representatives' Response to Amgen") being filed contemporaneously herewith.

Paragraph 5 of the Proposed Findings and Order states that, in its November 2, 2006 Order, this Court "denied the Track 1 defendants' claims for summary judgment as to the Class 1 and Class 2 claims, except with respect to Medicare Part B drugs furnished in 2004 and thereafter." Proposed Findings and Order at ¶ 5. Paragraph 17 further states that "there are no unadjudicated claims or counterclaims pending in the district court with respect to the Track 1 defendants." *Id*. at ¶ 17. These statements by the Track 1 Defendants are incorrect. As was previously explained in the Aaronson Response to BMS, the Court's November 2, 2006 order adjudicated cross motions for summary judgment governed by Massachusetts law, involving only Massachusetts plaintiffs. As such, the Court's November 2, 2006 Order did not fully adjudicate or otherwise dispose of the claims of Class 1 consumers whose claims are governed by state laws other than Massachusetts, and whose claims were not even briefed in connection with the summary judgment motions. *See* Aaronson Response to BMS at ¶¶ 5-8.[2]

Nor should the Court's November 2, 2006 ruling be applied to Class 1 consumers under the doctrine of defensive collateral estoppel. As explained in the Class 1 Representatives' Response to Amgen, Class 1 consumers are still entitled to have their claims adjudicated fully. Among other things, Class 1 consumers are not in privity with Class 2 TPPs; many Class 1 consumers have claims governed by consumer fraud laws that provide a right to a jury trial; and the parties did not brief the issue of whether consumers should be bound by congressional knowledge of the meaning of "AWP" or whether AWP should be construed differently after 2003. *See* Class 1 Representatives' Response to Amgen at 3-8.

---

[2] Indeed, at a recent hearing after the Aaronson Response to BMS was filed, the Court acknowledged that Class 1 consumers who bought Subject Drugs in 2004 still can sue: "Well, let me say this: There's a very serious legal question here. So if I don't have [Mrs. Aaronson] as a part of the class, that doesn't mean that they can't still sue. It just means it's a separate legal question that's not common to the class." Transcript of Status Conference Hearing at 37:25-38:9, *In re AWP* (D.Mass. June 6, 2007).

Moreover, even if the Court's November 2, 2006 ruling about the post-2003 meaning of "AWP" were applied to Class 1 consumers, this would not dispose of their claims. As explained in both the Aaronson Response to BMS and the Class 1 Representatives' Response to Amgen, as well as this Court's June 21, 2007 Findings of Fact and Conclusions of Law, AWP inflation only accounts for part of the fraud committed by the Track 1 Defendants. Class 1 consumers still can recover for the financial harm caused by defendants' unfair and deceptive practice of inducing sales of their Subject Drugs by manipulating the "spread" doctors made on the Subject Drugs, and marketing that spread to doctors. *See* Aaronson Response to BMS at ¶¶ 9-10; Class 1 Representatives' Response to Amgen at 9-10; June 21, 2007 Findings of Fact and Conclusions of Law at 13-19, 146.

The Johnson & Johnson Defendants make clear that they intend to try to bind Class 1 consumers to not only the November 2, 2006 ruling, but also the Court's determination that the Johnson & Johnson Defendants are not liable. The Proposed Findings and Order state that the Court's rejection of the "zero tolerance approach" advocated by Class 2 has been applied equally to Class 1. Proposed Findings and Order at ¶ 13. But this portion of the Court's ruling draws an important distinction between what Congress knew, what the industry knew, and what less sophisticated market participants knew. *See* June 21, 2007 Findings of Fact and Conclusions of Law at 150.[3] The Court determined only that *Class 2* could not recover under a strict liability theory

---

[3]In its recent post-Class 2/3 trial submission, AstraZeneca suggests that the discussion of damages for consumers as a result of the Class 2/3 verdict is "irrelevant" because consumers in Class 3 have no right to recover damages as they were not part of the judgment. *See* Defendant AstraZeneca Pharmaceuticals L.P.'s Memorandum of Law In Response to Plaintiffs' August 1, 2007 Damages Submission [Docket # 4602] at p.4, n.1 ("Here, Plaintiffs are seeking damages for members of Classes 2 and 3, which are *institutional entities*, not individuals.")(emphasis in original). Defendants can not have it both ways. Indeed, AstraZeneca's rationale is premised upon the same important distinctions between what Congress/industry knew and what consumers did not know that render the effort to bind consumers to the TPP judgment ineffective: "The Court's findings demonstrate that these institutional entities are differently situated than individuals. These institutions not only had greater access to information, but also failed to eliminate AWP as the basis for reimbursement even after it was clear that AWPs exceeded acquisition costs. As the Court noted, 'Remarkably, BCBSMA, the behemoth insurer in the Massachusetts market, and other large TPPs, were not proactive in adjusting to cost data once Medicare did the legwork for them in devising more reasonable drug pricing and service fees.'" *Id.*

under Chapter 93A because "information about the 20 to 25 percent spread was widespread in the industry." *Id*.  The Court did not rule that *Class 1 consumers* (i.e., "less sophisticated market participants") could not recover on such a theory under Chapter 93A (in the case of Massachusetts consumers) or other state laws (in the case of consumers from the other thirty-nine states covered by Class One).  This is because the claims of Class 1 consumers (whom the Defendants have conceded had no knowledge of AWP inflation or spread marketing) were not adjudicated in the Class 2/3 trial.

In their reply memorandum, however, the Johnson & Johnson Defendants state that this Court has ruled "the J&J Defendants are not liable to Classes 1, 2 and 3 because the spreads on Procrit and Remicade are within the range of spreads plaintiffs themselves contend was generally expected by the industry and government." *See* The Johnson & Johnson Defendants' Reply to Plaintiffs' "Response" to defendants' Motion for Entry of Judgment Pursuant to Federal Rule of Civil Procedure 54(b) at 1-2.  The sole basis for this statement is an exchange between this Court and Steve Berman (who participated by telephone) on July 3, 2007.  For the Court's convenience, following is the entire exchange between the Court and Mr. Berman:

> MR. BERMAN:  There's one issue on Track 1, your Honor.
>
> THE COURT:  Yeah?
>
> MR. BERMAN:  And, that is Johnson & Johnson.  I know that you said that their drugs didn't exceed the 30 percent rule for the purposes of Class 2 and 3.  But, it's our position -- and we would like the opportunity to present this or maybe you've already decided -- that that 30 percent would not apply to Track 1 [sic].
>
> THE COURT:  I thought I ruled that.  The 30 percent did apply to Track -- to Class 1.

4

MR. BERMAN: Well, you have a footnote that talks about -- implies that, but you did not rule in that way. That's your ruling, that we have no J & J Class 1 trial.

THE COURT: I thought it was not a footnote. I thought I went on and on about it. I think I went on and on about everything. So, maybe I ought to look at it again.

MR. BERMAN: I don't think you did –

THE COURT: I think I said that I rejected plaintiffs' position that the per se liability for Class 1 and that I thought that the 30 percent speed limit should apply to Class 1 as well. And, that would be, I thought applicable to all of the defendants. So, why is that not clear?

MR. BERMAN: Well, I didn't see that in the order, your Honor.

THE COURT: They've got it.

MR. BERMAN: At the time we negotiated the -- via that settlement [with BMS], both sides thought that was a risk that could go either way. And, we discussed that with the mediator. The mediator didn't think it was clear either.

THE COURT: Well –

MR. BERMAN: It's clear now.

THE COURT: It's clear now. And, I will look at it again. If it wasn't clear, it is clear. The 30 percent speed limit applies to Class 1. I rejected a per se position. And, I have to go look through it again, because I thought it was clear. That's why I essentially had the expert go back and calculate the damages again. Because, the way he did it was he aggregated all the years when he did it with the 30 percent speed limit. He didn't back out the -- it might have been statute of limitations and on the specific NDCs. That's why I needed a root calculation. Otherwise, I could have done it. Right? On the per se. Because, he did it year by year.

MR. BERMAN: Correct, you could have, yeah.

THE COURT: I could have done that. I mean ...

5

>MR. BERMAN: But, we felt it was a different issue with the consumers, because there's no evidence that they had any knowledge of the so-called industry norm of 20, 25 percent.
>
>THE COURT: Well, I ruled to the contrary and I don't accept that position. And, I thought it was clear. If not, I'm making it clear now.

July 3, 2007 Tr. at 9:19 – 11:3.

With all due respect to this Court, during this exchange the Court appeared to recall having ruled definitively that the June 21, 2007 Findings of Fact and Conclusions of Law applied equally to Class 1, when in fact no such ruling had been made. Indeed, such a ruling would have been error, since Class 1 consumers were not part of the trial (which was limited to Classes 2 and 3, covered only persons and entities within Massachusetts, and was governed solely by Massachusetts law). In any event, Class 1 consumers respectfully submit that it would be error to apply the Court's findings to Class 1 without allowing Class 1 consumers an opportunity to present evidence on their claims, or even to submit briefing on whether the Court's verdict can or should be used against them defensively by the Johnson & Johnson defendants.

As for Class 3 consumers, the Court's verdict in the Class 2 and Class 3 trial cannot be applied to non-Massachusetts consumers under the doctrine of defensive collateral estoppel for essentially the same reasons the Court's verdict cannot be applied to Class 1 consumers. Moreover, as explained in Class 1 Representatives' Response to Amgen, a conflict exists between consumers and TPPs as to whether Defendants should be enjoined from continuing to publish fraudulently inflated AWPs. TPPs, who continue to use inflated AWPs as a basis for reimbursement, would be forced to either switch to a different reimbursement benchmark or employ revised (and accurate) AWPs if Defendants were forced to stop publishing inflated AWPs. Such changes would inure to the substantial benefit of Class 3 consumers who continue to overpay for drugs as a result of TPPs'

ongoing use of inflated AWPs. *See supra*. n. 3.  While TPPs would presumably be reluctant to incur the cost of implementing a new reimbursement system (something it took Medicare years to accomplish), or lowering their reimbursement rates to accurate AWPs, consumers would welcome such changes, since they would pay less for their drugs.  This conflict is perhaps best exemplified by the fact that, while the Class 3 representatives (all of them, TPPs) have pressed this Court for a treble damages award, they have abandoned the request in their Prayer for Relief that "Defendants be enjoined from continuing the illegal activities alleged herein." Indeed, nowhere has there been a resolution of the claims of the Class 3 consumers for declaratory and injunctive relief certified by the Court under Rule 23(b)(2).  *See* Consolidated Order Re: Motion for Class Certification date January 30, 2006 [Docket No. 2097-1] at 6.

Finally, even if the Court's November 2, 2006 ruling and June 21 Findings of Fact and Conclusions of Law were applied to Class 1 and Class 3 consumers, this would not necessarily dispose of the consumer claims.  Consumers have an interest that TPPs do not: namely, they have an interest in having their physicians choose drugs for them based on effective treatment criteria, rather than profitability or inducements from drug companies.  *See* June 21, 2007 Findings of Fact and Conclusions of Law at 21.  As the Court determined, however, the Track 1 Defendants created "perverse incentives" for doctors to violate this trust by manipulating the "spread" between a doctor's acquisition cost for a drug and the amount the doctor could receive for the drug. *See id.* at 13-19.  Drug companies further invaded this trust by marketing spreads to doctors, which the Court found to be "particularly outrageous and unethical." *Id*. at 146.  Class 1 and Class 3 consumers (most of whom are cancer patients) have a right to present this evidence to a jury, regardless of whether insurance companies (including the largest insurer, Medicare) knew about AWP inflation or not.

In the case of Johnson & Johnson, this evidence would be relevant to not only compensatory damages, but punitive damages.

## CONCLUSION

For the foregoing reasons, Track 1 Defendants' Motion for the Entry of Judgment should be denied as against Class 1 or Class 3 consumers.

Dated: August 23, 2007

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr., Esquire
Adam S. Levy, Esquire, Of Counsel
Michael J. Lorusso, Esquire
THE HAVILAND LAW FIRM LLC
740 S. Third Street, Third Floor
Philadelphia, PA 19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400
haviland@havilandlaw.com

*Counsel for Consumer Class Representatives,
Joyce Howe, Teresa Shepley,
Larry Young, Rev. David Aaronson,
Harold Carter, David Clark, Hunter Walters,
Harold Bean, and Rebecca Hopkins*

**CERTIFICATE OF SERVICE**

I, Donald E. Haviland, Jr., Esquire, hereby certify that on August 23, 2007, I filed the foregoing Memorandum of Plaintiffs and Certified Class 1 Representatives Joyce Howe, Teresa Shepley, Larry Young, and Rev. David Aaronson; Proposed Class 1 Representatives Harold Carter, David Clark, Hunter Walters, and Harold Bean; and Proposed Class 3 Consumer Representative Rebecca Hopkins, in Opposition to Entry of a Judgment Regarding Classes 2 and 3 that Binds Class 1 and Class 3 Consumers, with the Clerk of this Court via the CM/ECF system.

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr., Esquire
THE HAVILAND LAW FIRM LLC
740 S. Third Street, Third Floor
Philadelphia, PA 19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400
haviland@havilandlaw.com