# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: | ) |
| PHARMACEUTICAL INDUSTRY | ) CA No. 01-12257-PBS |
| AVERAGE WHOLESALE PRICE | ) MDL No. 1456 |
| LITIGATION | ) Pages 1 - 49 |

MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 27, 2007, 10:10 a.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA 02210
(617)345-6787

Page 6

MS. BROOKER: Yes, we have been coordinating. Dey has been coordinating. We have been notifying Dey about depositions against government witnesses. They have appeared, I believe, at the first two depositions. We also, the United States, whenever we serve documents pursuant to document requests upon Abbott, we also send a copy to Dey, and so there has been some coordination going on.

Now, I will tell the Court that the parties, Abbott and the United States and relator, came here this morning with the intent of informing the Court in the first instance that we believe we have substantially, although I want to carve out a big significant issue, but we have substantially agreed upon a case management order. We've been working on this for the last several months. We were working on it all the way up until the time, you know, ten minutes outside of the courthouse. I think that we, again, carving out one issue that we would like to raise, we can present the Court with a proposed CMO that does just apply to this case.

THE COURT: Okay.

MR. DALY: That's correct, your Honor.

THE COURT: So what's the big remaining issue?

MS. BROOKER: Okay, this is the big remaining issue, your Honor.

THE COURT: Of course, without knowing the rest of what you agreed on, it might be --

Page 7

MR. DALY: We'll walk through that with your Honor and make sure your Honor agrees.

MS. BROOKER: Yes, basically just to summarize, we have largely agreed to parameters for discovery; you know, discovery limitations, numerical limitations largely. We've agreed to deposition protocols, document production protocols primarily.

The significant issue that we would like to bring to the Court's attention today is an issue that has prevented the United States from moving forward with discovery. Abbott has served initially in this case a set of initial disclosures. The United States has been attempting for months now, since we appeared before your Honor on August 26 when your Honor said, "I'm going to open up everything that's happened in the MDL proceeding," we served document requests, and we've asked repeatedly Abbott to provide to us a set of materials that it has produced in other AWP cases, including in this case pursuant to CMO 5 and pursuant to CMO 7. We have a small subset of those materials. Abbott has obstructed us from --

THE COURT: Well, without using the verbs, why don't you produce them?

MR. DALY: Your Honor, the reason for it is that the United States has only sued us for four drugs. This court has -- they talk about CMO 5 and 10, but they never

Page 8

talk about CMO 9 which the Court entered, which very clearly states in Paragraph 3 that any governmental plaintiff that comes into these cases gets what has been produced in other cases to the extent they relate to the drugs that the governmental entity has sued upon. Our problem with this is that if you take Texas, for example, the state court action in Texas, they've sued Abbott for all kinds of drugs, branded drugs. The government suit is only four generics. Texas has sued for hundreds of drugs.

THE COURT: Well, I suppose you both have a good point, but what about what I would call crosscutting documents about, you know, like mode of operation and marketing techniques or something?

MR. DALY: Right, and your order provides for that, Judge. I didn't mean that -- I wasn't done, but it talks about drugs that have been sued on or otherwise relevant to the complaint, and we have not withheld the kind of documents that the Court just described.

MS. BROOKER: We take great issue with that, your Honor. If I may --

THE COURT: But you're not entitled to every drug if you haven't sued on it.

MS. BROOKER: Well, your Honor, two points I would like to make. First, I'd like to address that. I'd also like to say that Mr. Breen, who is the relator in a Texas

Page 9

state action, would like to address the Court on this issue because he has information that he needs to provide the Court on this. But we do believe, your Honor, we have two problems with this. Number one, the MDL private plaintiffs in this case have a set of documents that we know are relevant in this litigation. All Abbott has to do is burn a copy of the CD-ROMs and provide it to us.

THE COURT: Well, like what? What do you know you --

MS. BROOKER: Well, I would allow Mr. Breen to address that because he is also in the Texas case. And in the Texas case, the relator and the State of Texas had to move to compel Abbott to produce documents on numerous occasions. Abbott attempted to vacate the trial court's order by seeking several writs of mandamus that went all the way up to the Supreme Court of Texas on two occasions. That's how much --

THE COURT: What are the documents? In other words, let me put it this way. I generally believe the following: You're not entitled to documents on any single drug if you haven't charged it. You are entitled to do discovery beyond the four drugs to the extent it shows that there's some practice or pattern of conduct.

MS. BROOKER: That's right.

THE COURT: Now, where it falls in between, I'm not



514bf967-2d22-4082-baaa-b8173ddef2eb

Page 10

sure how to do that. Perhaps one thing would be --

Yes? You're in the other case?

MR. BREEN: Yes, your Honor, and that's why I think it might be helpful if I can just go over a couple of points.

THE COURT: All right.

MR. BREEN: Mr. Daly is one of lead counsels for Abbott in the Texas litigation. We've been litigating it --

THE COURT: In state court, is that it?

MR. BREEN: State court, Judge. We've been litigating it for three years now?

MR. DALY: It seems.

MR. BREEN: It seems longer? It seems longer, and it is for more drugs. But the documents -- and I'm kind of in a unique position because I see both sides, and I've got --

THE COURT: The documents do what?

MR. BREEN: Pardon me, your Honor?

THE COURT: What do the documents do? What do they say?

MR. BREEN: A number of things. There's about three times more documents that have been produced in the Texas case than have been produced here.

THE COURT: Sure, because there are more drugs, but what are the crosscutting issues?

MR. BREEN: But that's not why.

Page 11

THE COURT: Why?

MR. BREEN: Number one, the crosscutting issues are -- and there's, like, categories, if I can just break them down. One is, Abbott has taken a position regarding temporal scope in this case. It tried to take a similar position in Texas, lost at the trial level, lost at the appellate level, lost at the Supreme Court level. And so we've got a broader temporal scope that covers the drugs at issue in this case. So that's number one. And there's lots of documents, and when I say "lots" --

THE COURT: So you're saying that it relates to these drugs?

MR. BREEN: These drugs, and I've already got the documents, so there's no burden whatsoever.

THE COURT: Have you conferred with him on those?

MR. BREEN: Your Honor, we have, and we've made some progress on temporal scope but not -- but it's still the same issue. What Abbott says is --

THE COURT: All right, so temporal scope. What's the next one?

MR. BREEN: The next issue, your Honor, is, there's just flat-out held-back documents. And I'm not going to suggest it's by intent. We're talking about millions of documents here.

THE COURT: All right, and what's --

Page 12

MR. DALY: Not that they have been held back but millions of documents.

MR. BREEN: Right. I'm saying -- I'm not saying --

THE COURT: So what's the third one? Just held back. And they may relate to these drugs?

MR. BREEN: These drugs that we've used as recently as two weeks ago in a 30(b)(6) deposition in Texas to make critical points.

THE COURT: And what's the third one?

MR. BREEN: The third issue, your Honor, is other drugs but either the same practice, or it demonstrates Abbott's overall business practice in how it reports its prices. And so Texas has sued on more drugs, but to the extent that Abbott's --

THE COURT: I tell you what, why don't we do this. This is a unique situation.

MR. BREEN: And I've already got the documents.

THE COURT: Why don't you take fifty, a hundred representative documents from each of those categories. You gave me three: A, temporal scope, B, just plain old didn't produce them, and, C, sort of they show business practice during a relevant time period. You confer with him, show him, because you luckily have two hats, so I don't have to operate off of some blinders. You take those. You show it to Mr. Daly. If he's persuaded, then you'll produce.

Page 13

Otherwise you're going to submit them in camera to me or Magistrate -- is Judge Bowler involved in this case?

MR. DALY: Yes.

THE COURT: And if you win on the fifty documents apiece you choose, I'm just going to say "Produce the CD." So, in other words, if you're not being reasonable about this, you're just going to lose. I'm not going to look at millions of documents.

MR. BREEN: And, your Honor, may I just add one request?

THE COURT: Yes.

MR. BREEN: Because understand that these documents are subject to the Texas protective order. I can see them, I can use them, but I cannot show them to my co- --

THE COURT: I understand you can.

MR. BREEN: But hold on, your Honor. Mr. Daly has got to consent to my showing them to your Honor in camera, and I just need their consent.

MR. DALY: I consent, your Honor.

MR. BREEN: And I've asked that before and have not gotten an answer yet. That's the first time I got that answer.

THE COURT: And it may be, just out of respect to the Texas court, you may need to sort of file some sort of a --



514bf967-2d22-4082-baaa-b8173ddef2eb

Page 14

MR. BREEN: Not without his consent, Judge. And that's the critical point. All he has to do is say "I consent" and --

THE COURT: So he's consented. So what you need to do is just -- I can't rule off the cuff on this. That's going to be impossible. What you need to do is, you have three categories you've very neatly, succinctly set out. You show him representative documents from -- you've seen them -- from each of those categories by yourself as intervenor. You try and confer and see what you can work out. If you can't, come up with a timetable, briefing timetable, motion to compel, response. You probably need to file it under seal, right?

MR. DALY: I think that's probably appropriate, Judge.

THE COURT: And I'll either refer it to Judge Bowler or take it myself, likely refer to Judge Bowler. And because neither Judge Bowler nor I with all these cases have time to go through a million documents apiece, I'll look at the representative ones; and if you win most of them, I'll just say "Turn over the CD." If you only win a small fraction and I think you're overreaching, I'm just going to say "Denied." So it's in everybody's interest to try and work this out. Take your best documents.

MR. BREEN: But, your Honor, we will do that

Page 15

exactly as you say, but I just want to emphasize, the whole point here is to streamline discovery. We've got a December 7 deadline. We have been involved in years of -- we've already fought this battle, and it's done. This is an MDL.

THE COURT: I understand, but neither can you use a lawsuit as a fishing expedition for ten more drugs that you're interested in. So one possibility would be an agreement that you're not going to sue for the other drugs, and I'll order you to turn over all the CDs right now. But you can't use discovery as a fishing expedition. That's the big bottom line. On the other hand, you can't barnstorm and just say it's just the four drugs, if in fact they show some overarching business principle, and I -- because they get to prove their case as to what management was thinking and doing, you know, prior bad acts kind of evidence.

MR. BREEN: Your Honor, can I respectfully address the fishing expedition issue and we can't prove our case through fishing for the drugs, just very briefly? I just want to emphasize that this is an intervening case by the United States. And we're not fishing. I've got the boat. The boat's got the fish in it. I just want to bring it to the dock.

THE COURT: With those four drugs, but what you can't use the discovery for is to get another fifteen drugs.

Page 16

MR. BREEN: Your Honor, a relator can't, and I wouldn't.

THE COURT: But neither can they. Unless they want to do it under the auspices of administrative subpoenas, neither can they. They've got to be able to have a good-faith basis for saying they were defrauded or there was false claims with respect to the other fifteen drugs. If they do, amend your complaint. And you might already have that. Do you? I don't know.

MS. BROOKER: Your Honor, can I just briefly address your Honor's two points about the fishing expedition? And, also, I don't want to leave the Court with the impression that this is just unique to Texas. So the solution that your Honor has proposed is not going to solve the issue, and the problem is --

THE COURT: I can't rule off the bench like this, so that's unrealistic. You haven't filed a motion to compel. He hasn't filed an opposition. It's a huge issue. I'm trying to cut through it right now thinking out loud. So if you feel really strongly, you file a motion to compel, but I can't resolve it. Right now I'll -- do you have a typed-up scheduling order that I can look at?

MS. BROOKER: We don't, your Honor, because we just agreed to some things in the hallway.

THE COURT: Frankly, if you agree, I'm

Page 17

overwhelmingly likely to agree unless it essentially taxes my resources too much, given the other cases that I'm trying to handle here.

MS. BROOKER: But just a couple issues, your Honor. With respect to -- we are just talking about the state of Texas. In your Honor's CMOs 5 and 7, you made available to the plaintiffs, the MDL plaintiffs, all materials without respect to the subject drugs, all materials that any defendant provided in any investigation, any prior state court proceeding. The United States for some reason is getting less discovery than a private commercial plaintiff. We don't understand why that is.

THE COURT: Maybe it wasn't opposed. I don't remember. They tended to come in by agreement as well. I don't remember if this was opposed. I don't remember what the debate was. I don't remember what the drugs were. You cite my CMOs as if I've got them memorized. Between the Neurontin case and this case, I have no memory, no present memory of what the debate was, so that's why I can't rule off the bat. If you want to move to compel, move to compel. This is going to be a shortcut in this case.

MS. BROOKER: I do understand, your Honor. And let say, first of all, we have, in addition to raising this issue in the CMO, since it wasn't being addressed, we also filed a motion to compel. That motion to compel is still pending.

Page 18

It's been fully briefed.

THE COURT: Oh, well, I didn't know that.

MS. BROOKER: Yes.

MR. DALY: It's before Judge Magistrate Bowler, your Honor.

THE COURT: So why don't you just let her decide? Why am I even ruling on it?

MR. BREEN: Your Honor, without the suggestion you made, I can't file the documents, and this is an important point. Let me just add -- can I ask one question to make sure I -- can I serve the government with this motion and including the sealed documents?

MR. DALY: You know, it's hard for me to say in terms of whatever it is that you're doing, Mr. Breen. I mean, our problem is this, Judge: I mean, there are temporal problems. The government is only suing us up until 2001. They cut off their complaint thereafter. Mr. Breen in Texas is suing us up to the present day. Every hour that goes by is part of Mr. Breen's suit there.

THE COURT: Is this based on AWP?

MR. BREEN: Yes, your Honor, the same case.

THE COURT: Let me just say, in one of my many other suits, I cut things off at 2003 because at that point the Medicare Modernization Act came through, so that's where I cut it off. I don't know where the -- that strikes me as a

Page 19

reasonable cutoff, at least for the time being. That's when the ASP came into play and the whole world knew about inflated AWPs, or at least anyone who was part of this world knew probably by 2001, but certainly by the time Congress passed the statute, right, everybody knew? So that would be one compromise date, a couple of years after the ending of your class. I mean, some of this should just be worked out.

MS. BROOKER: Judge, we have been trying to work this out for three months, and let me just explain. Here's the problem: The government, we are just standing still. We are prevented from moving further. Here's what we cannot do.

THE COURT: What do you want me to do now? I haven't read these motions to compel? I walked in here thinking I was just going to set deadlines. You may be right or wrong. I'm trying to cut through this, okay?

MS. BROOKER: Yes, your Honor. We're just asking for, frankly, what all the CMOs have said, even your most recent --

THE COURT: I can't rule off the bench. I haven't even read my CMOs. I don't remember what the debate was. I don't know. So I'm happy to rule. I can't do it right this second, that's all. I think this compromise will get you through a lot. And so I am suggesting that what -- you may win. You may win. I haven't read anything. I don't know about you; I don't know how you rule off the bench when you

Page 20

haven't read anything. I don't remember the CMOs. I don't know what the issues are. I haven't read your full-blown recent complaint. I don't know the case. This is my fault that I thought the CMO had been entered a millennia ago. I'll enter your agreed-upon CMO. Then I promise to get to your issues as soon as I read the briefs. I just don't know.

What I do know is, I can cut through a fair amount of this if I'm going to have you show to the other side the documents that you -- I'm sure you're a fine attorney, and I don't know whether at this point we need to get agreement to show it to the government or not. And if in fact you can't resolve it based on that, then what I'm going to do is, I will either -- I will forward all the documents over to Judge Bowler, and hopefully she'll rule on it. Does she know -- when was it fully joined, the motion to compel?

MS. BROOKER: The last time we had appeared before Judge Bowler it had already been fully briefed. Do you recall --

MR. DALY: It was in January.

THE COURT: She's away now, I think.

MS. BROOKER: Yes, that's partly the reason, I believe, for the delay.

THE COURT: She's been away for a couple of weeks, so --

MS. BROOKER: Yes, but in the meantime, just

Page 21

providing the status, we just wanted the Court to know that the discovery clock is ticking, and we can't speak with plaintiff's counsel in this case about this case. We can't speak with our own co-plaintiff in this case about any documents or any discovery in the case. Abbott has told us that when we cross-notice depositions in this MDL proceeding or in other cases, they're probably going to kick us out whenever they deem something irrelevant.

MR. DALY: I haven't said that, your Honor.

MR. BREEN: Counsel, your cocounsel has said that on a couple of occasions.

MS. BROOKER: Repeatedly.

THE COURT: Let me say this, that you're precluded from doing that. Okay, so we're going to go through this. We're not going to stop depositions. We're going to keep this thing going. Nothing is so sacrosanct that --

MR. DALY: Judge, we haven't thrown anybody out.

THE COURT: Everybody can stay in.

MS. BROOKER: We don't have the documents is the problem.

THE COURT: All right, you don't have the documents. We need to proceed with discovery. You need to put together all the documents that you think -- do you have some team of paralegals or someone --

MR. BREEN: Your Honor, we put so much money into



514bf967-2d22-4082-baaa-b8173ddef2eb

sales documents, they should all be produced.

MR. DALY: That's the effort we've made, Judge. If we missed a few, and I believe that Mr. Breen -- well, you laugh, but you brought forward a hundred documents that you said weren't produced. We showed you that about half of them in fact had been produced, and we're still talking about the other half of them. Isn't that correct?

MR. BREEN: I don't think that's --

MR. DALY: I mean, it's not like we're not working through this. And one thing I want to correct, Judge, is any misimpression that they are stymied in their discovery. We produced -- we've made our 26(a)(1) disclosures. We've produced our other documents.

THE COURT: I tell you what, since you have them, we actually have a way of breaking through this. You come up with every document you want to produce and show it to them. To the extent there are disagreements -- I mean, this is actually easier than most of my cases; you actually have them. Put them together, show them to him, and to the extent there are objections, you'll see what you really care about, and then we'll have a debate over it.

MS. BROOKER: Your Honor, that's just the Texas set. There are 650,000 of them that were produced. There's also the MDL set. We cannot contact Jennifer Connolly. In fact, Abbott has threatened sanctions if we speak with them



about what documents they have. They've already gone through a set of documents. We can't coordinate --

THE COURT: You can call up Jennifer Connolly and ask her, "What documents do you have relating to your drugs or to general sales practices?"

MR. BREEN: Can we see them?

MS. BROOKER: Can she provide those to us? I mean, that's what we're asking for.

THE COURT: Have her file a motion to open the protective order. Is she the -- who's she? She's the --

MR. BREEN: Class.

MS. BROOKER: We're all under a protective order in this case. The issue is --

THE COURT: So have her file a motion to allow you to see the documents which she believes -- you tell her what the issues are in your case which you believe are crosscutting and apply to your case. She works for the U.S. Attorney's office, doesn't she?

MS. BROOKER: Oh, no. I'm referring to plaintiffs' class counsel.

THE COURT: Who's Jennifer Connolly?

MS. BROOKER: She represents the private plaintiffs in the class action suit, and all I'm saying is, we can't even coordinate --

THE COURT: Which firm is she with?



MR. BREEN: The Chicago firm, Wexler's firm.

MS. BROOKER: But it's just an example, your Honor. We thought we were in an MDL proceeding when we got here, and we thought we understood your Honor's October 26 ruling from the bench.

THE COURT: You are in an MDL, which is why I can do these things. If she wants to show you documents relating to their sales marketing efforts that are across the board, all she needs to do is -- that's why I'm here, that's exactly -- bingo, file a motion to allow her to show you the documents. Of course you can call her.

MR. BREEN: Your Honor, I know this is frustrating, but we're getting somewhere. If I can just ask one more question.

THE COURT: Yes.

MR. BREEN: The problem is, if I call Jennifer Connolly and I say, "I need these documents," then I've got to take the working set of documents, the hottest documents. Do I have to go to Mr. Daly and say, "Can we have these documents?" That's part of the problem because we're taking our work product and taking our --

THE COURT: You can go one of two ways: You can move to open the protective order so that you can see them.

MR. BREEN: Okay.

THE COURT: And have her gather what's relevant to



your claims, which is some work on her part, so you may have to pay her for the work, I mean, it's not part of -- or you can go and get consent from him. But you can come directly to me. That's why you are here. But I can't -- I'm not simply going to say you're across the board entitled to every document they produced in every suit, even if it involves drugs that have nothing to do with yours. I can't say that across the board. That may be overly broad. It may be unreasonable. And, as you know, for example, the Rules of Civil Procedure have been changed, so it's got to be likely to lead to relevant evidence.

On the other hand, I don't know why it isn't just simpler for you to hand over the CDs.

MR. BREEN: Let me do it. I've got them. Just let me show them to the government. He doesn't have to do anything but say "OK," two letters, O-K.

MR. DALY: There have to be limits, Judge. I mean, even if they ask the MDL plaintiffs, I mean, they can't ask them for stuff that they're not entitled to that go beyond even the temporal limits that your Honor is suggesting or drugs. We agree that if there are documents relating to general marketing practices that would apply, that we should be producing those, and we made a good-faith effort to do that.

THE COURT: For example, so it's not too narrow on



514bf967-2d22-4082-baaa-b8173ddef2eb