UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT PERTAINS TO:<br>ALL CLASS ACTIONS | Judge Patti B. Saris |

### DECLARATION OF M. JOYCE HOWE

I, M. Joyce Howe, hereby declare as follows:

1. This Declaration is submitted in support of the Motion for Appointment as Class Counsel submitted by attorney Donald E. Haviland, Jr. and The Haviland Law Firm, LLC.

2. I am a resident of the State of Oregon and reside in Mapleton, Oregon.

3. My husband, Robert ("Bob"), was diagnosed with prostate cancer, and was prescribed several physician-administered drugs as part of his treatment for his cancer: dexamethosone sodium phosphate; docetaxel; gentamicin sulfate; goserelin acetate; granisetron; novatrone; darbepoetin alfa, filgrastim and pegfilgrastim.

4. My husband and I paid for a portion of the cost of these physician-administered prescription medications which Bob received.

5. We retained Attorney Donald E. Haviland, Jr. and his firm to represent our interests in the class action case against the manufacturers of the above drugs.

6. Mr. Haviland had previously represented us in the litigation against TAP Pharmaceuticals for unlawful conduct respecting TAP's marketing and sale of the drug, Lupron. Because of Mr. Haviland's direct efforts on our behalf, we were able to recover 50% of our out-of-pocket costs for

the Lupron I took, which was substantially greater than the 30% that had been originally negotiated by the class action attorneys in the case who settled the case with TAP.

7. I understand that some of the same attorneys from the Lupron case seek to represent the Class of consumers in this case. I don't know these attorneys, and I have never spoken to any of them.

8. Mr. Haviland and the members of The Haviland Law Firm and its associated counsel have always kept my husband and I apprised of the progress of this case. Our only contacts about the litigation have been with Mr. Haviland, his firm and his associated counsel.

9. Because I rely exclusively on Mr. Haviland to tell me about the litigation, and I trust Mr. Haviland to represent the best interests of consumers like me in the lawsuit, I respectfully submit that Mr. Haviland and his firm should be appointed Class Counsel to represent the Class of consumers in this case. If Mr. Haviland and his firm cannot serve as Class Counsel, I would like to withdraw as a class representative.

10. I understand that a question has arisen as to whether Mr. Haviland acted appropriately with respect to the settlement of the case against AstraZeneca, to which I have objected.

11. Mr. Haviland kept me apprised about the settlement negotiations with AstraZeneca before there was any agreement. Before my husband passed, Bob had made it clear that he would not agree to any settlement that did not treat all consumers like him fairly. When I agreed to assume Bob's role as the representative of the Class against AstraZeneca, I told Mr. Haviland that I intended to act as Bob would have wanted.

12. Mr. Haviland told me about the desire of the other lawyers for plaintiffs in the case to settle with AstraZeneca for an amount that assumed that all consumers paid a 20% share of their of Medicare co-pay. Since Bob and I paid 50% of the Medicare co-pay, presumably along with others who were insured under a similar policy with United Healthcare, our carrier, I told Mr. Haviland the

2

night before he left for Boston to meet with the other lawyers that I would not agree to a settlement that did not treat all consumers fairly based upon what they paid for the Zoladex.

13. Mr. Haviland called me the following afternoon to tell me that the other lawyers wanted to agree to a settlement that did not account for the differences among consumers with private insurance. I told him that I did not agree to the settlement. Mr. Haviland told me he would advise the other lawyers and the Mediator, Mr. Green, about our position. He also said he would call me the following week to discuss what we could do about the situation.

14. Mr. Haviland did call me the following week and advised me that he had told the other lawyers and Mr. Green that we did not agree to the settlement. He also said he had directed Mr. Green to remove his name from the settlement document. Mr. Haviland said he was going to speak to Mr. Green later in the week to discuss our options.

15. After he spoke with Mr. Green, Mr. Haviland called me back to advise that we would have to file an objection with the Court explaining why we disagreed with the settlement. I authorized Mr. Haviland to file such objection to ensure that the Court was aware of the fact that I did not consent to the settlement and the reasons for my disagreement.

16. I hereby declare under penalty of perjury that all of the foregoing statements made by me are true and correct to the best of my knowledge, information and belief.

This the _3rd_ day of August, 2007.

_____
M. JOYCE HOWE