UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
PORTLAND, MAINE
RECEIVED AND FILED

2003 AUG 21 ⌐ 3: 55

BY‾‾‾‾‾‾‾‾‾‾‾‾‾‾
      DEPUTY CLERK

GLENWOOD FARMS, INC., and
CARRABASSETT SPRING WATER
COMPANY, INC.

        Plaintiff.

        v.

GARVE IVEY, THOMAS M. SOBOL, IVEY
& RAGSDALE (a partnership), and HAGENS
BERMAN, LLP,

        Defendants.

Civil Docket No.: CV-03- ⌐7 - PS

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs and complain against the Defendants as follows:

### PARTIES

1.    Glenwood Farms, Inc. (hereinafter referred to as "Glenwood") is a corporation with a principle place of business in St. Albans, County of Somerset, Maine.

2.    Plaintiff Carrabassett Spring Water Company, Inc. (hereinafter referred to as "Carrabassett") is a corporation with a principle place of business in Gorham, County of Cumberland, Maine.

3.    Defendant Garve Ivey is an adult and an attorney, residing in Alabama.

4.    Defendant Thomas M. Sobol is an adult and an attorney residing in Essex County, Massachusetts.

5.    Defendant Ivey & Ragsdale is a law partnership with usual places of business in Jasper and Birmingham, Alabama.

6.   Defendant Hagens Berman, LLP is a limited liability partnership based in Seattle, Washington, with branch offices in Suffolk County, Massachusetts, California, and Arizona.

## FACTS

### JURISDICTION AND VENUE

7.   Jurisdiction is properly brought in this Court pursuant to 28 USC § 1332 based upon diversity of citizenship and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.   Jurisdiction is properly established in that the cause of action arose within the State of Maine and each of the Defendants has sufficient minimum contacts within the State of Maine to satisfy the basic due process requirements under the United States Constitution.

9.   Venue is appropriate within the United States District Court, District of Maine in Portland pursuant to Local Rule 3(b), in that the case arises in Cumberland County.

Relevant Background Facts Common To All Counts

**A.   The Attorney Representation Agreements**

10.  On December 24, 2002, Glenwood entered into an agreement with Hagens, I&R, and Jan R. Schlichtmann, Esq. ("Attorney Schlichtmann") [hereinafter the "Glenwood Representation Agreement"]. Attorney Sobol and Attorney Ivey executed the Glenwood Representation Agreement on behalf of Hagens and I&R, respectively. By way of the Glenwood Representation Agreement, the Defendants and Attorney Schlichtmann became counsel to Glenwood for the purposes of representing Glenwood with "potential and/or actual litigation relating to 'Poland Spring Natural Spring Water'. . . ." [hereinafter, the "Poland Spring Matter"]. In doing so, the Defendants agreed to "devote

such time and resources as is necessary to effectively and zealously represent" Glenwood in the Poland Spring Matter. In addition, as co-counsel with Attorney Schlichtmann, the Defendants, among other things, agreed to "jointly prosecute" the Poland Spring Matter and that the "interests of the plaintiffs and the putative or actual classes" in the Poland Spring Matter would "be governed by an executive committee comprised" of Attorney Schlichtmann and designees of I&R and Hagens (the "Co-counsel Agreement").

11.     On March 17 and then again on May 23, 2003, Carrabassett entered into an agreement with Hagens, I&R, and Attorney Schlichtmann [hereinafter the "Carrabassett Representation Agreement"].     Attorney Sobol and Attorney Ivey executed the Carrabassett Representation Agreement on behalf of Hagens and I&R, respectively. By way of the Carrabassett Representation Agreement, the Defendants became counsel to Carrabassett for the purposes of representing Carrabassett with respect to the Poland Spring Matter. In doing so, the Defendants agreed to "devote such time and resources as is necessary to effectively and zealously represent" Carrabassett in the Poland Springs Matter.   In addition, the parties to the agreement recognized and agreed that the Defendants could not represent any other party with conflicting interests without Carrabassett's approval.

12.     In both the Glenwood Representation Agreement and the Carrabassett Representation Agreement, the Defendants acknowledged that "a similarity of interests" existed between the Plaintiffs and any other similarly situated businesses or persons who may have claims arising from the Poland Spring Matter.

-3--

**B.**   **The Joint Litigation and Confidentiality Agreement**

13.   On April 2, 2003, Glenwood entered into a Joint Litigation and Confidentiality Agreement with various parties, including the Defendants and Attorney Schlichtmann [hereinafter, the "Joint Litigation and Confidentiality Agreement"]. Attorney Sobol and Attorney Ivey executed the Joint Litigation and Confidentiality Agreement on behalf of Hagens and I&R, respectively.  The Joint Litigation and Confidentiality Agreement dealt specifically with the Defendants' joint representation of the Plaintiffs in the Poland Spring Matter.

14.   On May 23, 2003, Carrabassett entered into an Addendum to the Joint Litigation and Confidentiality Agreement, which effectively added Carrabassett as a signatory to that agreement.  Attorney Sobol and Attorney Ivey executed the Addendum on behalf of Hagens and I&R, respectively.

15.   The  Joint Litigation and Confidentiality Agreement contains the following relevant clauses and provisions:

> **WHEREAS**, the undersigned counsel wish to continue to pursue their separate but common interests, and **to avoid any suggestion** of waiver of the confidentiality or immunity of communications and documents protected by the attorney-client privilege, the attorney's work product doctrine or any other privilege or immunity vis á vis potentially adverse parties; and

> **WHEREAS**, in order to pursue a joint prosecution effectively, the undersigned have also each concluded that, from time to time, their interests will be best served by sharing documents, factual material, mental impressions, memoranda, interview reports, litigation strategies and other information, including the confidences of each client – **all of which will hereafter be referred to as the "Common Interest Materials"** (but only to the extent that such material and/or information was not already in the possession of the recipient before the communication of such material and/or information by a signatory to this Agreement or was thereafter independently obtained); and

> **WHEREAS**, it is the purpose of this Agreement to ensure that any exchange and/or disclosure of the Common Interest Materials contemplated

herein **does not diminish in any way the confidentiality of the Common Interest Materials and does not constitute a waiver of any privilege or immunity otherwise available**;

**NOW, THEREFORE**, Counsel and Claimants do hereby agree as follows:

6.     **Except as expressly stated in writing to the contrary, any and all Common Interest Materials obtained by any of the undersigned counsel from each other and/or each other's client are being provided solely for internal use of the clients and their counsel and shall remain confidential and shall be protected from disclosure to any third party by the joint-defense privilege, the clients' attorney-client privilege, the attorneys' work product doctrine and other applicable privileges and immunities.  All Common Interest Materials shall be used solely in connection with this Matter.**

7.     **Neither the undersigned counsel nor their respective clients shall disclose Common Interest Materials or the contents thereof to anyone not a signatory to this Agreement (except the undersigned counsel's firms, or undersigned counsel's employees or agents) without first obtaining the written consent of all counsel who are parties to this Agreement.**  It is expressly understood that nothing contained in this Agreement shall limit the right of any of the undersigned to disclose to anyone as they see fit any of their own documents or information, or any documents or information obtained independently and not pursuant to this Agreement, by the undersigned.

## C.     The Common Interest Materials

16.     Specifically with regard to the Poland Spring Matter, the Plaintiffs, by and through their counsel (mostly Attorney Schlichtmann) undertook an extensive investigation concerning Poland Spring Natural Spring Water products and/or the source waters for those products (together, "Poland Spring Matter").

17.     The investigation undertaken on behalf of the clients included, without limitation, the following:

(A)          the review and analysis of private information and material generated, obtained, and/or organized by attorney Schlichtmann and others, including, without limitation, (i) private test results of Poland Spring Water taken in the 1990's; (ii) historic photographs documenting certain past conditions

relating to the sources of Poland Spring brand spring water (the "Poland Spring Photographs"); and (iii) documents including private correspondence from a private investigation into Poland Spring Water that began in the mid-1990's and continued until the fall and winter of 2002-03.

(B)       the results and analysis of a 2002 field work investigation and a report by an expert environmental engineer, created in connection with several other qualified experts in geology and hydrology.

(C)       the results and analysis of additional field work investigation and reports by qualified experts in geology and hydrology conducted in the winter and Spring of 2003 that included the identification of and collection and examination of information from various witnesses concerning historic practices and conditions related to the matter.

(D)       a critical analysis of the materials generated and gathered in (A) (B) and (C) above with information and documents obtained from the public records of various state and federal regulators and other industry information.

(E)       the preparation of a Claimants' Position Statement submitted as a confidential document in the mediation, dated February 14, 2003 (the "Position Statement"), which included the detailed factual and legal analysis of the Poland Spring Matter that contained a summary of the investigative work described in (A)-(D) above.

(F)       A videotape concerning the Poland Spring matter (the "Poland Spring Video") summarizing the results of the investigation described above that was intended to be used solely for mediation purposes and not for dissemination to the public and which was produced on the express representation to people appearing in the Video that it would only be used for mediation purposes and would not be disseminated to the public

[hereinafter, separately and/or collectively, the "Common Interest Materials"].

18.    Attorney Schlichtmann had conducted and completed a significant amount of the

investigation and had obtained and developed the essential factual record comprising

the Common Interest Materials prior to Attorney Ivey and Attorney Sobol becoming

co-counsel.  Moreover, after the defendants joined as co-counsel, attorney

Schlichtmann was the attorney primarily responsible for the factual investigation of

the matter.

19.  The factual and expert opinion basis for the "Claimants' Position Statement and the Video described above were primarily the result of attorney Schlichtmann's work product and the Common Interest Materials obtained and developed prior to defendants joining as co-counsel.   Although Attorney Schlichtmann had prepared the vast majority of the Common Interests Materials prior to approaching the Defendants to suggest establishing their co-counsel relationship, he agreed to share those materials with the Defendants in the context of their joint representation. Attorney Schlichtmann, however, premised his agreement to enter into such relations on the Defendants' agreement that Attorney Schlichtmann be allowed to attempt to settle the Poland Spring Matter without resort to filing a lawsuit.

**D.    Negotiations and the Proposed Settlement of the Poland Spring Matter**

20.  After the extensive investigation and organization and/or creation of the Common Interest Materials detailed above, the Plaintiffs, by and through their counsel (the Defendants and Attorney Schlichtmann), approached Nestle Waters North America, the company that owns Poland Spring Water ("Nestle").

21.  In an effort to resolve the Poland Spring Matter prior to litigation, the Plaintiffs agreed to attempt to mediate their dispute with Nestle. That mediation involved the Plaintiffs' and other corporations' claims against Nestle, as well as the claims of a potential nationwide class of consumers using Poland Spring Water and customers of Home and Office products, with Lori Ehrlich designated as the potential class representative. The class representative and the putative class also were represented in the Poland Spring Matter jointly by Attorney Schlichtmann and the Defendants.

22.   To that end, the parties to the mediation hired Rodney A. Max, Esq. (the "Mediator")

of Upchurch Watson White & Max Mediation Group as a mediator.

23.   The parties premised the mediation on various parameters, including the following:

2.   All communication from January 22, 2003, through the conclusion of this process **will be considered part of a mediation process for the purposes of confidentiality and protection of evidence. In other words, all communications either verbal or written will be confidential and will not be made known outside of those parties participating in the mediation**. In addition, all parties will take all appropriate steps to protect evidence including documents and witnesses' statements under the same rules as if a complaint had been filed and served as of January 22, 2003.

4.   No party will file a formal complaint in any court **until the conclusion of this process and five working days thereafter**. Said conclusion will be determined by my receipt of a written request by either party to terminate the mediation and my written announcement consistent therewith. **The standstill agreement will remain in effect for five working days after receipt of my termination notice (which notice shall be sent out immediately upon my receipt of either request).** The notice from me will be sent by facsimile as well as regular mail and the date of my letter will be determinative of the date of receipt.

In addition, the Plaintiffs agreed to use the Poland Spring Video **only** for the purposes of

mediation and that it would not be disseminated and would be kept confidential regardless of the

outcome of the mediation.

24.   With the above and other parameters in place, the parties scheduled the mediation to

commence on February 28, 2003, in Roseland, New Jersey, at the offices of Orloff,

Lowenbach, Stifelman & Siegel. The parties scheduled and attended additional

mediation sessions during the following months in New Jersey, Massachusetts, and

Connecticut.  The Defendants participated in all of the mediation sessions including

the one in Massachusetts.

25.     On Wednesday and Thursday, May 28 and 29, 2003, during the mediation session in
        Connecticut, a schism became evident between Attorney Schlichtmann, on one hand,
        and Attorney Ivey and Attorney Sobol, on the other hand.  At the time, it was clear to
        Attorney Schlichtmann that Attorney Ivey and Attorney Sobol were taking actions to
        interfere with the mediation process.

26.     When the mediation came to a seeming impasse on Thursday, May 29, 2003, Nestle
        inquired whether or not the five day standstill period mandated in the Mediation
        Agreement would apply. Attorney Schlichtmann confirmed that it would, although it
        had not begun to run because neither party had given notice to the Mediator that the
        mediation had terminated and the Mediator had not so notified the parties pursuant to
        the terms of the Mediation Agreement.  That same day, however, Attorney Ivey and
        Attorney Sobol countermanded attorney Schlichtmann's assurances on this point and
        Defendants informed Nestle that the five day standstill period was inapplicable and
        that they could file a lawsuit as soon as the next day. The Defendants' action was not
        authorized by the Plaintiffs or any other party to the mediation.

27.     Immediately upon learning what Attorney Ivey and Attorney Sobol had done,
        Attorney Schlichtmann informed them that their conduct was not acceptable and in
        direct violation of the express terms of the mediation agreement.   With the
        authorization of the Plaintiffs and Ms. Ehrlich attorney Schlichtmann assured Nestle
        that the five day standstill period would apply, and that no lawsuits would be filed
        against Nestle, while the parties were still following the mediation process..
        Moreover, Attorney Schlichtmann confirmed with Nestle that it was still committed

to the mediation process if all of the parties to the mediation wanted to continue with the same.

28.  Considering the divide that existed between Attorney Schlichtmann, Attorney Ivey, and Attorney Sobol, the Plaintiffs, along with the other clients, held a conference call on Monday, June 2, 2003, to determine what action to take.  Prior to that meeting, Attorney Sobol sent an e-mail to the group, including Attorney Ivey, outlining his understanding of the meeting and the disagreement between co-counsel.  In that e-mail, Attorney Sobol recognized that if co-counsel could not agree which strategy to follow that "**client direction ultimately prevails in any event** . . . (emphasis added).

29.  Thereafter, all of the parties conferred by telephone to determine which strategy to follow and, after discussion, authorized Attorney Schlichtmann to inform Nestle that they would not file any lawsuits and that they wanted to continue with the mediation process.

30.  On Wednesday, June 4, 2003, the parties attended another mediation session in New Jersey. The Defendants, however, refused to participate in the mediation process. As a result of their conduct, the Defendants' services were terminated by the potential class representative. Thereafter, all of the parties including the potential class representative authorized Attorney Schlichtmann to continue with the mediation process and for the Defendants not to interfere with the same. The Defendants again attempted to interfere with the mediation process by telling counsel for Nestle that they were going to file a class action lawsuit and that Attorney Schlichtmann did not have appropriate authority to continue with the mediation.

31.   Despite the Defendants' attempts, the mediation discussions with Nestle continued through Wednesday, June 4, 2003. By late that night, counsel for the parties to the mediation came to an understanding on financial terms of a settlement that might be acceptable to their respective clients (the "Wednesday Night Deal").

32.   On Thursday, June 5, 2003, Attorney Schlichtmann presented the terms to all of the parties to the mediation represented by Attorney Schlichtmann and the Defendants and obtained **full** approval to go forward on those terms. After consultation with their client, however, Nestle's counsel indicated that the terms were not acceptable.

33.   On Monday, June 9, 2003, the parties to the mediation represented by Attorney Schlichtmann and the Defendants participated in a conference call. The purpose of the call was to determine whether or not to continue with the mediation process in light of Nestle's position. After discussion, all parties to the mediation represented by Attorney Schlichtmann and the Defendants decided to authorize Attorney Schlichtmann to continue to participate in the mediation process.

34.   On Friday, June 13, 2003, attorney Schlichtmann informed the parties that progress was being made and that Nestle needed until Monday to give its final response to the Wednesday Night Deal.  All of the parties gave their consent to wait until Monday and Attorney Ivey and Attorney Sobol were specifically instructed by Plaintiffs **not** to take any action inconsistent with that directive.

35.   On Monday, June 16, 2003, attorney Schlichtmann informed the parties that Nestle had agreed to accept the Wednesday Night Deal and now it was necessary to continue the mediation process to complete the terms of a potential settlement of all claims.

36.   Almost immediately Defendants engaged in conduct intended to interfere with and shutdown the mediation process.  These acts included among other things: At 1:05 p.m. on Monday, June 16, 2003, Attorney Ivey, by e-mail, unequivocally stated that the "terms proposed for the class are not acceptable to Tom and I [sic], and if they are pursued we will object."  **At the time, Attorney Ivey and Attorney Sobol did not represent the sole putative class representative due to their conduct, but, along with Attorney Schlichtmann, still represented the other parties, including Plaintiffs.**

37.   In addition, that same day, Attorney Ivey informed the parties that Defendants had provided CBS News with the Poland Spring Matter story but that it was "embargoed" waiting Defendants' order to release it to the public unless within the next "10 minutes" unless Defendants got an agreement to their demands.  The demands included: (1) that attorney Schlichtmann immediately agree to waive any rights he may have to dispute the division of any fees received in a settlement of the non-class claims, and (2) that Nestle agree to settle the non-class claims independently of whether or not a class claim settlement obtained Judicial approval. Despite feverish attempts to negotiate with Defendants regarding their demands in order to forestall a breakdown in the mediation process, Defendants went through with their threats and CBS News called Nestle twice on June 16, 2003, and once on June 17, 2003, for comment on the fact that "a lawsuit was about to filed" against Nestle regarding the Poland Spring Matter.

38.   In response, the Plaintiffs, via letter, expressly demanded Attorney Ivey and Attorney Sobol to:

**[T]ake whatever steps are required to preserve and facilitate the settlement agreement with Nestle. Under no circumstance are you to take other action which might undermine the settlement agreement. Glenwood and Carrabassett would consider any such actions to be adverse to their interests.**

**Glenwood and Carrabassett would consider the commencement of any legal action relating Nestle, whether or not they are named as parties, as an action adverse to their interests. Further, they would consider the involvement of you and your firms in any action relating to Nestle without the consent of Glenwood and Carrabassett to be a conflict of interest. Glenwood and Carrabassett do not consent to any such involvement and they do not waive any conflict of interest.**

Furthermore, the class representative reaffirmed that she also had accepted the terms of the proposed settlement.

39.    On June 17, 2003 Defendant Sobol sent a letter to all the parties except attorney Schlichtmann and Ms. Ehrlich in which he detailed why he believed that the terms were a "bad settlement" for all the parties. In that letter Defendant Sobol stated that Defendants intended to go "forward" with litigation against Nestle and were not bound by any "conflict of interest" duty and encouraged the parties to join with them in such litigation. The Plaintiffs and Ms. Ehrlich informed Defendants that they wished to go forward with the mediation and specifically instructed Defendants not to interfere by filing any actions and that such conduct would be considered to be directly adverse to their interests. The morning of Wednesday, June 18, 2003, **all** parties to the mediation represented by Attorney Schlichtmann and the Defendants had agreed they wanted to go forward with the settlement and mediation process. The Defendants were well aware of the parties' positions on those subjects.

40.    On June 18, 2003 Nestle's counsel informed attorney Schlichtmann that Defendant Sobol had just called him to demand that Nestle immediately agree to settle the class

claims by paying to Defendants a substantial sum of money and agreeing to other terms or Defendants would be filing class actions in several jurisdictions. Shortly after that telephone call Nestle informed attorney Schlichtmann that the mediation had to be suspended because three class action lawsuits had been filed against Nestle **by Attorney Ivey and Attorney Sobol** on behalf of parties who were not a party to the mediation on matters directly arising out of the Poland Spring Matter, that there was a website on the Internet posting information on the subject, and that the story had been given to the "wire services".

41.     The Defendants wrongful, unilateral, and intentional actions caused Nestle to suspend the mediation process.

E.      **The Defendants' Use and Disclosure of the Common Interest Materials**

42.     In addition to (i) the blatant disregard to their clients' instructions to settle the Poland Spring Matter and not to take any actions adverse to the Plaintiffs' interests, (ii) the provisions contained in the Glenwood Representation Agreement, the Carrabassett Representation Agreement, the Joint Litigation and Confidentiality Agreement, and the Mediation Agreement, and (iii) their ethical duties to their clients, on June 16, 2003, the Defendants created a website located at *http://www.bottledwaterfraud.com* (the "Website"). The Website boasts the title "Bottled Water Fraud" on its "Home Page" and provides extensive details of the Poland Spring Matter. **The Website was created while the Defendants were representing the Plaintiffs and when they should have been representing the parties' interests to the mediation.**

43.   **In clear and blatant contravention of their contractual and ethical obligations, the Defendants made the Poland Spring Photographs and the Poland Spring Video available to the world on the Website.**

44.   Moreover, on June 18, 2003, the Defendants filed <u>three</u> class action lawsuits in Connecticut, Massachusetts, and New Jersey state court against Nestle arising out of the Poland Spring Matter.   The Defendants never informed the Plaintiffs or Attorney Schlichtmann that they had been retained by other similarly situated parties. The Defendants never obtained the Plaintiffs' consent to such representation or approval to file lawsuits arising from the Poland Spring Matter. Rather, the Defendants expressly were instructed not to take such actions that were in direct contravention to their demands and interests, as described above.

**43.** As soon as the Plaintiffs informed the Defendants to settle the Poland Spring Matter and not to take any actions adverse to their interests, such as filing lawsuits against Nestle arising out of the Poland Spring Matter, there existed a non-waivable conflict of interest which continues to exist to this day.

**44.** Moreover, Common Interest Materials were used to create the Complaint filed in the Middlesex Superior Court, styled <u>Lisa McGonagle, *et al.* v. Nestle Waters North America, Inc.</u>

**45.** The Defendants' wrongful conduct has caused and will continue to cause the Plaintiffs substantial harm.

**46.** The above described acts of Defendants Sobol and Ivey were performed while said attorneys were employed by or acting as agents for their respective defendant law firms, and were performed within the scope of employment and/or agency with said respective

law firms, and therefore the defendant law firms are vicariously liable to the Plaintiffs for any damages sustained as a result of the wrongful conduct of Defendant Sobol and/or Defendant Ivey.

## GLENWOOD'S COUNT 1

### DEFENDANT SOBOL and HAGENS-BERMAN, LLP:  PUNITIVE DAMAGES

49.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50.    The acts of Defendant Sobol and Defendant Hagens-Berman, LLP, were committed with malice or were so outrageous that malice toward Glenwood can be implied.

WHEREFORE, Plaintiff Glenwood demands punitive damages against Defendant Sobol and Defendant Hagens-Berman, LLP, jointly and severally, for such amount as is reasonable, and for costs, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 2

### DEFENDANTS SOBOL and HAGENS-BERMAN, LLP:  NEGLIGENCE

51.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

52.     Defendant Sobol owed to the Plaintiff Glenwood a duty to conduct himself in a reasonably prudent fashion such that he would not cause injury to the Plaintiff.

53.    The acts of Defendant Sobol as described constitute a breach of the Defendant's duty of reasonable care.

54.    As a result of Defendant Sobol's negligence, Plaintiff Glenwood sustained damage.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Sobol and Defendant Hagens-Berman, LLP, jointly and severally, for such amount as is reasonable, and for costs, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 3

## DEFENDANTS SOBOL and HAGENS-BERMAN, LLP:   BREACH OF CONTRACT

55.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

56.    The Glenwood Representation Agreement, the Carrabassett Representation Agreement, the Joint Litigation and Confidentiality Agreement, and the Mediation Agreement constitute contracts.

57.    Plaintiff Glenwood has fully performed all of its obligations under those contacts.

58.    Defendant Sobol has failed to perform their obligations under those contacts and, further, has breached those contracts by his unlawful conduct.

59.    Defendant Sobol has no lawful justification for his conduct.

60.    Defendant Sobol's breaches of those contracts have caused, and will continue to cause, damages to Plaintiff Glenwood.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Sobol and Defendant Hagens-Berman, LLP, jointly and severally, for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

### GLENWOOD'S COUNT 4

### DEFENDANT SOBOL and DEFENDANT HAGENS-BERMANS, LLP:  BREACH OF

### THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

61.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein .

62.    The Glenwood Representation Agreement, the Carrabassett Representation Agreement, the Joint Litigation and Confidentiality Agreement, and the Mediation Agreement constitute contracts.

63.    Plaintiff Glenwood has fully performed all of its obligations under those contracts.

64.    There exists an implied covenant of good faith and fair dealing in every contract.

65.    Defendant Sobol's wrongful conduct has destroyed or injured Glenwood right to receive the fruits of those contracts and, as a result, Defendant Sobol has materially breached the implied covenant of good faith and fair dealing.

66.    Defendant Sobol's breach has caused, and will continue to cause, the damages to Glenwood.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Sobol and Defendant Hagens-Berman, LLP, jointly and severally, for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

### GLENWOOD'S COUNT 5

### DEFENDANT SOBOL and DEFENDANT HAGENS-BERMAN, LLP:

### MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

67.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

68. Defendant Sobol has already used and disclosed, and will continue to use and disclose to others Glenwood confidential information.

69. The disclosure or use of the Glenwood confidential information by Defendant Sobol constitutes a tortious misappropriation of confidential information in violation of common law.

70. As a direct and proximate result of the Defendant Sobol's wrongful conduct, Glenwood has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Sobol for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 6

## DEFENDANT SOBOL and DEFENDANT HAGENS-BERMAN, LLP:  BREACH OF FIDUCIARY DUTY

71. Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

72. As counsel to Glenwood, Defendant Sobol had and owed Glenwood a fiduciary duty to maintain in confidence all confidential information of Glenwood and not to take actions adverse to the interests of Glenwood.

73. By way of his conduct, Defendant Sobol has breached and continue to breach his fiduciary duties owed to Glenwood.

74. Defendant Sobol's breaches of duty have been willful, intentional, malicious, and without lawful justification and have caused and will continue to cause damages to Glenwood.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Sobol and Defendant Hagens-Berman, LLP, jointly and severally, for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

**GLENWOOD'S COUNT 7**

**CONVERSION BY DEFENDANTS SOBOL and DEFENDANT HAGENS-BERMAN, LLP**

75.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

76.    Glenwood is, and during all times alleged herein was, the owner of certain confidential information.

77.    Glenwood had possession, or the right to immediate possession, of that confidential information at the time of the Defendants' unlawful conduct.

78.    Defendant Sobol interfered with the Glenwood right to possession or right to immediate possession by intentionally exercising dominion over the confidential and proprietary information.

79.    Defendant Sobol's  exercise of dominion was substantial and done without lawful justification.

80.    Glenwood has suffered damages as a result of Defendant Sobol's unlawful conduct.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Sobol and Defendant Hagens-Berman, LLP, jointly and severally, for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 8

## DEFENDANT SOBOL and DEFENDANT HAGENS-BERMAN, LLP:  TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

81.     Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein

82.     Defendant Sobol's conduct amounted to substantial interference with Glenwood ongoing settlement discussions, and said interference was accomplished via the use of fraud, deceit, intimidation and breach of fiduciary duty owed by Sobol to Glenwood.

83.     As a result of Defendant Sobol's unlawful conduct, Glenwood sustained damages.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Sobol and Defendant Hagens-Berman, LLP, jointly and severally, for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 9

## DEFENDANT IVEY and IVEY & RAGSDALE:  PUNITIVE DAMAGES

84.     Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

85.     The acts of Defendant Ivey were committed with malice or were so outrageous that malice toward Glenwood can be implied.

WHEREFORE, Plaintiff  demands punitive damages against Defendant Ivey and Defendant Ivey & Ragsdale, jointly and severally, for such amount as is reasonable, and for costs, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 10

### DEFENDANT IVEY and IVEY & RAGSDALE:   NEGLIGENCE

86.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

87.    Defendant Ivey owed to the Plaintiff Glenwood a duty to conduct himself in a reasonably prudent fashion such that he would not cause injury to the Plaintiff.

88.    The acts of Defendant Ivey as described constitute a breach of the Defendant's duty of reasonable care.

89.    As a result of Defendant Ivey's negligence, Plaintiff Glenwood sustained damage.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Ivey and Defendant Ivey & Ragsdale, jointly and severally, for such amount as is reasonable, and for costs, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 11

### DEFENDANT IVEY and IVEY & RAGSDALE:   BREACH OF CONTRACT

90.    Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

91.    The Glenwood Representation Agreement, the Glenwood Representation Agreement, the Joint Litigation and Confidentiality Agreement, and the Mediation Agreement constitute contracts.

92.    Plaintiff Glenwood has fully performed all of its obligations under those contacts.

93.    Defendant Ivey has failed to perform his obligations under those contacts and, further, has breached those contracts by his unlawful conduct.

94.    Defendant Ivey has no lawful justification for hia conduct.

95.     Defendant Ivey's breaches of those contracts have caused, and will continue to cause, damages to Plaintiff Glenwood.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Ivey and Defendant Ivey & Ragsdale, jointly and severally,   for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

### GLENWOOD'S COUNT 12

### DEFENDANT IVEY and IVEY & RAGSDALE:     BREACH OF THE IMPLIED
### COVENANT OF GOOD FAITH AND FAIR DEALING

96.     Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein .

97.     The Glenwood Representation Agreement, the Carrabassett Representation Agreement, the Joint Litigation and Confidentiality Agreement, and the Mediation Agreement constitute contracts.

98.     Plaintiff Glenwood has fully performed all of its obligations under those contracts.

99.     There exists an implied covenant of good faith and fair dealing in every contract.

100.    Defendant Ivey's wrongful conduct has destroyed or injured Glenwood right to receive the fruits of those contracts and, as a result, Defendant Ivey has materially breached the implied covenant of good faith and fair dealing.

101.    Defendant Ivey's breach has caused, and will continue to cause, the damages to Glenwood.

WHEREFORE, Plaintiff Glenwood and Defendant Ivey & Ragsdale, jointly and severally, demands judgment against Defendant Ivey for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 13

## DEFENDANT IVEY and IVEY & RAGSDALE:   MISAPPROPRIATION OF

## CONFIDENTIAL INFORMATION

102.   Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

103.   Defendant Ivey has already used and disclosed, and will continue to use and disclose to others Glenwood 's confidential information.

104.   The disclosure or use of the Glenwood confidential information by Defendant Ivey constitutes a tortious misappropriation of confidential information in violation of common law.

105.   As a direct and proximate result of the Defendant Ivey's wrongful conduct, Glenwood suffered and will continue to suffer damages.

WHEREFORE, Plaintiff Glenwood demands judgment against Defendant Ivey and Defendant Ivey & Ragsdale, jointly and severally, for such amount as is reasonable, and for costs, attorney fees, and for such other relief as this Court deems just.

## GLENWOOD'S COUNT 14

## DEFENDANT IVEY and IVEY & RAGSDALE:

## BREACH OF FIDUCIARY DUTY

106.   Plaintiff Glenwood repeats and realleges the facts contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

107.    As counsel to Glenwood, Defendant Ivey had and owed Glenwood a fiduciary duty to maintain in confidence all confidential information of Glenwood and not to take actions adverse to the interests of Glenwood.