UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti Saris |
| | ) | |
| *United States of America, ex rel. Ven-a-Care* | ) | Magistrate Judge Marianne B. Bowler |
| *of the Florida Keys, Inc. v. Abbott* | ) | |
| *Laboratories, Inc.* | ) | |
| CIVIL ACTION NO. 06-11337-PBS | ) | |

**THE UNITED STATES' OPPOSITION TO
ABBOTT LABORATORIES INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................................ 1

II.    ARGUMENT ................................................................................................................... 2

       A.     The Amendment Of The United States' Compliant Was Proper ........................... 3

              1.     The United States can amend its original Complaint
                     as a matter of right. ................................................................................... 3

              2.     Even if leave of the Court was required, leave
                     should be granted. ...................................................................................... 5

                     a.     The Court should allow amendment to add claims
                            about Abbott's home infusion pharmacy business. ....................... 5

                     b.     The Court should allow amendment to add the
                            Acyclovir claims. ......................................................................... 6

                     c.     Abbott is not prejudiced by these amendments. ........................... 7

       B.     The Government's Claims Are Not Time Barred. ................................................. 8

              1.     The Court has already ruled that the FCA claims in
                     The United States' Complaint relate back to relator's
                     *qui tam* complaint. ..................................................................................... 8

              2.     The Court should allow the United States' common
                     law claims to relate back to the relator's complaints. ................................ 9

              3.     None of relator's pre-intervention pleadings broke
                     the relation-back chain. ............................................................................ 11

              4.     A specific NDC or J-Code need not be identified in
                     the relator's complaint to relate back for statute
                     of limitations purposes. ........................................................................... 13

a.     The scheme at issue in the relator's and the United States's complaints is the same..................................................... 15

b.     The relator's complaints identify the drugs at issue...................... 16

C.     The United States' Acyclovir Claims Are Properly Pled...................................... 18

III.     CONCLUSION. .......................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Allen v. McCurry,*
    449 U.S. 90, 94 (1980*).* ................................................................ 10

*Confederate Mem'l Ass'n v. Hines,*
    995 F.2d 295 (D.C.Cir.1993). ........................................................ 3

*Crum v. Circus Circus Enters.,*
    231 F.3d 1129 (9th Cir.2000). ....................................................... 3

*Dade County v. Rohr Indus., Inc.,*
    826 F.2d 983 (11th Cir. 1987). ...................................................... 11

*Harbor Ins. Co. v. Essman,*
    918 F.2d 734 (8th Cir. 1990). ........................................................ 11

*In re Pharmaceutical Indus. Average Wholesale Price Litig.,*
    491 F. Supp 2d 12 (D. Mass 2007). ............................................... 2

*In re Pharmaceutical Indus. Average Wholesale Price Litig.,*
    2007 WL 2058731 (D. Mass. July 17, 2007). ........................... *passim*

*Jorge v. Rumsfeld,*
    404 F.3d 556 (1st Cir. 2005). ....................................................... 11

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,*
    142 F.3d 26 (1998). ....................................................................... 10

*LaChapelle v. Berkshire Life Ins. Co.,*
    142 F.3d 507 (1st Cir. 1998). ......................................................... 2

*O'Connell v. Hyatt Hotels of Puerto Rico,*
    357 F.3d 152 (1st Cir.2004). .......................................................... 5

*Oja v. U.S. Army Corps of Eng'rs,*
    440 F. 3d 1122 (9th Cir. 2006). ..................................................... 16

*TAG/ICIB Services, Inc. v. Pan Am. Grain Co., Inc.,*
    215 F.3d 172 (1st Cir. 2000). ......................................................... 2

*United States ex rel. Borges v. Doctor's Care Med. Ctr.*,
    No. 01-8112 (S.D. Fla. Jan. 25, 2007). ............................................................. 9

*United States ex rel. Campbell v. Lockheed Martin Corp.*,
    282 F. Supp.2d 1324 (M.D. Fla. 2003). ............................................................. 9

*United States v. Eastman Kodak Co.*,
    98 F. Supp. 2d 141 (D. Mass. 2000). ............................................................. 10

*United States ex rel. Flanagan v. Baptist Health Sys., Inc.*,
    No. 97-B-3070-S (N.D. Ala. Mar. 30, 2001). ............................................................. 9

*United States ex. rel Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*,
    No. 99 C 06313, 2001 WL 40807 (N.D. Ill. Jan. 16, 2001). ............................................ 10

*United States ex rel. Jordan v. Northrop Grumman Corp.*,
    No. CV 95-2985 ABC (Ex) (C.D. Cal Aug. 6, 2002). .................................................. 9

*United States ex. rel Mayman v. Martin Marietta Corp.*,
    894 F. Supp. 218 (D. Md. 1995). ............................................................. 10

*United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*,
    152 F. Supp. 2d 443 (S.D.N.Y. 2001). ............................................................. 10

*United States ex rel. Purcell v. MWI Corp.*,
    254 F. Supp 2d 69 (D.D.C. 2003). ............................................................. 9

## STATUTES

31 U.S.C. § 3730(b). ............................................................................. 12, 19
31 U.S.C. § 3730(c). ............................................................................. *passim*
31 U.S.C. § 3730(c)(3). ........................................................................... 19
31 U.S.C. § 3730(d). ................................................................................ 4

## RULES

Fed. R. Civ. P. 15(a). ............................................................................. *passim*
Fed. R. Civ. P. 15(c). ............................................................................. *passim*
Fed. R. Civ. P. 60(b). ................................................................................ 9

## MISCELLANEOUS

6A Charles A. Wright et al., Federal Practice & Procedure § 1497 (2d ed. 1990). ..................... 16

## I.  INTRODUCTION

Abbott Laboratories Inc.'s (Abbott) first motion to dismiss argued, in essence, that Abbott's manipulation of government reimbursement for its drugs and marketing of reimbursement spreads was justified because (1) the creation of inflated spreads was a commonly understood industry practice and (2) there is no harm to Medicare and Medicaid because the spreads are cross-subsidies needed to keep providers sufficiently compensated, otherwise the providers might not continue participating in the Medicare and Medicaid programs.  Indeed, the vast majority of Abbott's discovery of the government in this case has been directed towards developing support for those arguments.

Abbott's assertion of these defenses, however, contradicts directives it gave to its own employees regarding the conduct at issue in this case.  In Abbott's contract marketing manual, there is a section titled "Medicare/Medicaid Fraud and Abuse."  The manual identifies common types of fraud, including "false billing," "kickbacks," and "falsifying documents to justify payments."  Exhibit 1, Contract Marketing Manual at 208.  The manual goes on to instruct employees to refrain from such conduct and cautions that defenses such as "'*common industry practice*' *or 'no harm to the Medicare or Medicaid*' [sic] *will not hold-up in court.*" *Id.* at 209 (emphasis added).  This candid internal Abbott assessment – which obviously conflicts with Abbott's asserted defenses and litigation strategy in this matter – is correct.

 Regardless, the Court denied Abbott's first motion to dismiss.  Abbott now urges this Court to dismiss all or large parts of the United States' First Amended Complaint relying on erroneous procedural and statute of limitations arguments, some of which this Court has already rejected.  As discussed below, the motion and these arguments are without merit.

The United States' First Amended Complaint reflects an enhanced understanding of the broad scope of Abbott's fraudulent conduct.  Since the filing of the original Complaint, the United States has

obtained additional evidence regarding Abbott's drug pricing conduct, evidence that had not been produced to the United States in response to prior investigative subpoenas and civil investigative demands.  Some of the new evidence is reflected in the United States' First Amended Complaint and shows: (1) that Abbott operated a home infusion pharmacy business that allowed Abbott to profit *directly* from Abbott's drug pricing scheme and (2) actionable fraudulent conduct involving the marketing of a megaspread Abbott drug, Acyclovir Sodium (Acyclovir).  In short, not only was the United States' pre-Answer amendment of its original Complaint procedurally correct, but it is justified in light of this newly obtained evidence.

## II. ARGUMENT

In evaluating a motion to dismiss for failure to state a claim, a court must accept the facts alleged in a complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory. *TAG/ICIB Services, Inc. v. Pan American Grain Co., Inc.*, 215 F.3d 172, 175 (1st Cir. 2000); *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998).  Only if there is no theory on which a plaintiff could prevail should the Complaint be dismissed.  *TAG/ICIB Services, Inc.*, 215 F.3d at 175.

This Court has already held that the United States' original Complaint amply sets forth facts to support theories on which the United States may prevail.  *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, 491 F. Supp 2d 12 (D. Mass 2007).  The Court has also already rejected many of the relation back/statute of limitations arguments advanced by Abbott in this renewed motion to dismiss.  *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 2007 WL 2058731 (D. Mass. July 17, 2007) (finding that the United States' False Claims Act claims relate back to the relator's original complaint).  Abbott provides no basis for disturbing those rulings.  The United

2

States does request, however, that the Court reconsider its ruling regarding the relation back of the United States' common law claims.

Abbott's additional arguments are without merit. The United States was entitled to amend as a matter of right, Abbott's alternative statute of limitations arguments are invalid, and the government's amendment to add Acyclovir was proper. This Court should deny Abbott's renewed motion to dismiss, and Abbott should finally answer the United States' First Amended Complaint, admitting or denying the allegations and identifying its affirmative defenses, if any.

**A.    The Amendment Of The United States' Complaint Was Proper.**

**1.    The United States can amend its original Complaint as a matter of right.**

Rule 15(a) of the Federal Rules of Civil Procedure states: "A *party* may amend the *party*'s pleading once as a matter of course at any time before a responsive pleading is served." (Emphasis added). Abbott chose to file a motion to dismiss rather than file an Answer to the United States' original Complaint. The case law is clear that, for Rule 15(a) purposes, a motion to dismiss is not a responsive pleading, and the United States can amend its original complaint as a matter of right. *See, e.g., Confederate Memorial Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir.1993) ("As a motion to dismiss is not ordinarily considered a 'responsive pleading' ... under Rule 15(a), appellants could have amended their complaint as of right prior to the court's decision on the motions."); *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1130 n.3 (9th Cir. 2000).

Abbott asks this Court to read an exception into this rule: in an False Claims Act (FCA) case, the relator and the government are considered one party for Rule 15(a) purposes. Abbott Memorandum of Law at 9-12. Abbott argues that since the United States is the real party in interest in a *qui tam* action, the relator and the United States must be treated as one party for pleading purposes. *Id*. at 9. There is no case law to support this proposed judicial exception to the plain language of Rule

3

15(a).  The United States and the relator are separate parties with potentially separate interests.  This rather obvious distinction is reflected in numerous provisions of the FCA.  *See, e.g.,* 31 U.S.C. § 3730© and (d) (outlining various individual rights the government, relators and defendants have in FCA cases).   The United States' status as the ultimate beneficiary of the FCA does not fuse the relator and the United States into a single party for Rule 15(a) purposes.

Abbott further argues that the United States' original Complaint was a Rule15(a) amendment of the relator's complaint because the lawsuit commenced with the filing of relator's original, separate complaint.  Abbott Memorandum of Law at 10.  Abbott is correct that it is the relator's complaint that is the operative complaint for statute of limitations purposes.  *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, 2007 WL 2058731 at *6 (noting that "the unique structure of the FCA supports the" conclusion that the United States' original complaint "should be *treated* as an amended complaint that relates back to the relator's complaint under Rule 15(c)(1)"). (emphasis added).

Yet, the issue here is the government's right to amend its own pleadings, not statute of limitations or relation back.  In its prior ruling, the Court was careful to note that the United States' Complaint should be *treated* as an amended complaint for relation back purposes.  The Court did not conclude, however, that the relator and the United States are one party and, therefore, the United States is prohibited from filing a pre-Answer amendment of its complaint-in-intervention as a matter of right.  The government's right – as a separate litigating party – to amend its own pleadings under Rule 15(a) is unrelated to any issues regarding relation back or statute of limitations.

Therefore, the relator's prior pleadings have no impact on the United States' ability to amend its own pleadings.  The fact that a government fraud statute, the FCA, allows for (1) relation back to

4

a relator's complaint and (2) the government to exercise its rights under 15(a)(1) to amend its original Complaint before the filing of an answer represents no injustice to Abbott.

> 2.    **Even if leave of the Court was required, leave should be granted**.

If a party cannot amend a pleading as a matter of right, it may amend "by leave of the court or by written consent of the adverse party." Fed. R. Civ. P. 15(a).  Should the Court conclude that amendment is not permitted as a matter of right, the Court should exercise its discretion and allow the United States to amend its original Complaint.

There is a "'liberal' amendment policy underlying Rule 15." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004); Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires").  The United States' First Amended Complaint contains allegations that (1) incorporate information Abbott concealed from the government during its investigation of the *qui tam* suit and (2) show the scope of Abbott's fraudulent conduct to be much broader than originally understood.  Accordingly, amendment of the United States' original Complaint was justified.

> a.    **The Court should allow amendment to add claims about Abbott's home infusion pharmacy business.**

The principal addition to the United States' First Amended Complaint is the inclusion of 27 paragraphs of factual allegations regarding home infusion pharmacies owned and operated by Abbott. These home infusion pharmacies submitted reimbursement claims to federal and state governments seeking reimbursement for drugs, including drugs manufactured by Abbott.  First Amended Complaint at ¶¶ 111-138.  Thus, Abbott operated Medicare and Medicaid providers and directly received inflated reimbursement spreads for its own drugs.  *Id*. at ¶¶ 118-121, 126-131.

Abbott never provided information regarding this business to the United States prior to the filing of the United States' original Complaint.  Further, Abbott has omitted references to this business

when addressing the claims in this case to the Court.  On October 26, 2006, this Court held oral

argument on Abbott's first motion to dismiss.  Abbott counsel provided the Court a demonstrative

exhibit regarding a hypothetical megaspread Abbott drug and argued as follows:

> MR. DALY: I just want to put the claim in context. What we've got, Judge, they allege
> a 1,000 percent spread, and what I've done here is created an illustration of a 1,000
> percent spread. We've got one of Abbott's drugs, the AWP is 10. The average sale
> price is a dollar, and Abbott's profit on that is about 10 cents. We're getting sued for
> the [$9 spread].  The $9 is the $9 that goes to the providers.

Exhibit 2, October 26, 2006 Oral Argument Transcript at 7:21-8:2.

Abbott did not reveal to the Court that it operated a home pharmacy business where it

submitted or administered reimbursement claims for its own drugs and directly earned reimbursement

spreads.  *Id.*  Thus, in some instances, Abbott actually submitted a claim to Medicare and Medicaid

and earned the $9 spread from Abbott's counsel's example, or part of that $9 spread.  When Abbott

contemplated reducing the prices it reported to price compendia used by government programs to set

reimbursement levels, Abbott calculated the annual loss to its home infusion pharmacy business from

this change to be in the millions of dollars.  Exhibit 3, January 18, 2001 Catalog Price Adjustment

Memorandum at 2.  Justice requires allowing the United States to include these additional allegations

in its case against Abbott, particularly as they arise from previously concealed evidence.

### b.  The Court should allow amendment to add the Acyclovir claims.

The other notable addition to the United States' First Amended Complaint is claims regarding

Acyclovir.  Abbott dramatically describes the United States' addition of these claims as a last minute

attempt to "raise the stakes" in this litigation because of Abbott discovery into generalized government

awareness of issues related to AWP-based drug reimbursement.  Abbott Memorandum of Law at 1.

This misconstrues the purpose behind the addition of Acyclovir to the case.  The United States added this megaspread drug to its First Amended Complaint because it collected evidence showing that Abbott directly marketed the megaspread on this drug, a fact testified to by an Abbott National Account Manager during a deposition in April 2007.  Exhibit 4, April 8, 2007 Deposition of Dennis Walker at 286:4-290:21.  The evidence of Abbott's marketing of this drug's megaspreads as an inducement prompted the United States to add the drug to its First Amended Complaint, not Abbott's questioning of witnesses about AWP-based reimbursement generally.

> **c.      Abbott is not prejudiced by these amendments.**

Abbott argues that it would be unjust to allow the government to amend its Complaint because: (1) prior discovery has taken place without reference to the "new theory," (2) the allegations were previously abandoned, and (3) Abbott would be prejudiced if the amendment were allowed because Abbott has focused its discovery in this particular suit on the NDCs and J-Codes at issue.  All of these arguments lack merit.

First, the United States' additional claims do not involve new theories; they involve an additional drug and allegations regarding a previously-concealed Abbott business venture that profited directly from inflated government reimbursements.  Second, as discussed in Section II © below, the Acyclovir allegations were never properly dismissed so they are still operative.  Finally, Acyclovir is at issue in other law suits involving the same or similar claims, including a suit currently pending in this Court brought by New York City and the New York Counties against Abbott.  Abbott has or will have an obligation to engage in discovery on Acyclovir regardless of its existence in the United States First Amended Complaint.[1]

---

[1] The United States is already in the process of gathering and producing material in its possession that relates to Abbott's Acyclovir. Of course, the vast majority of the relevant discovery

**B.     The Government's Claims Are Not Time Barred**.

Abbott argues that (1) all pre-March 17, 2000 claims are time barred and do not relate back to the relator's *qui tam* complaints or, in the alternative, (2) relation back for a particular NDC or J-Code should be limited to the relator's complaint in which that specific NDC or J-Code first appeared. These statute of limitations arguments lack merit.  Further, the United States asks this Court to reconsider whether its common law claims relate back to the relator's original complaint.

**1.     The Court has already ruled that the FCA claims in the United States' Complaint relate back to relator's *qui tam* complaint**.

Abbott argues that relation-back to Ven-A-Care's *qui tam* complaint is not permitted under Rule 15(c)(2) because Abbott did not receive a copy of the sealed *qui tam* complaint prior to the government's intervention in this matter.  Abbott Memorandum of Law at 14-18.  Abbott omits mention of the multiple, detailed discussions and correspondence between the United States and Abbott regarding investigative subpoenas and the issues involved in this matter.  *See, e.g.,* Exhibit 5, September 30, 1999 Letter from Department of Justice to Abbott.  Instead, Abbott focuses on the unremarkable fact that certain witnesses could not remember the answer to questions of undemonstrated materiality and/or relevance.  *Id.* at 16-17.

Regardless, this argument is largely moot.  The Court has already determined that the FCA claims in the government's complaint-in-intervention relate back to the relator's *qui tam* complaint pursuant to Fed. R. Civ. P. 15(c)(1), which does not require notice.  *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 2007 WL 2058731 at *5-7.  Therefore, the FCA claims in the

---

information regarding Acyclovir (*e.g.*, the setting of the list price, the sales price, the drug's marketing plan and evidence of spread marketing) will be in Abbott's possession.

United States' First Amended Complaint relate back to the relator's *qui tam* complaint for statute of limitations purposes.

> **2.**     **The Court should allow the United States' common law claims to relate back to the relator's complaints.**

The United States respectfully asks this Court to reconsider its July 17, 2007 ruling that the government's unjust enrichment and fraud claims cannot relate back to the relator's complaint under Fed. R. Civ. P. 15(c)(2).  *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, 2007 WL 2058731 at 8; *see also* Fed R. Civ. P. 60(b).  If the Court's ruling were applied to this case, it would eliminate the government's common law fraud claims and limit the government's unjust enrichment claims to March 17, 2000 through 2001.  The Rule 15(c)(1)-based relation back contemplated by the FCA should cover both FCA claims and related claims arising from the same transaction, conduct or occurrence.

First, numerous other courts have ruled that common law claims brought by the government relate back to a relator's *qui tam* complaint.[2]  These courts have generally permitted this relation back because the additional common law causes of action arose out of the same conduct, transactions or occurrences as the FCA claims.   These courts recognized that Fed. R. Civ. P. 15(c)(2) does not distinguish between types of legal claims, but rather permits relation back, where appropriate, of any legal claims arising out of the same conduct.  Fed. R. Civ. P.  15(c)(1) should be interpreted similarly

---

[2] *See United States ex rel. Flanagan v. Baptist Health System, Inc.*, No. 97-B-3070-S (N.D. Ala. Mar. 30, 2001); *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC (Ex) (C.D. Cal. Aug. 6, 2002); *United States ex rel. Purcell v. MWI Corp.*, 2003 WL 1498382 (D.D.C. Mar. 25, 2003); *United States ex rel. Campbell v. Lockheed Martin Corp.*, 282 F. Supp.2d 1324 (M.D. Fla. 2003); *United States ex rel. Borges v. Doctor's Care Medical Center*, No. 01-8112 (S.D. Fla. Jan. 25, 2007). Unpublished slip opinions are attached hereto as Exhibit 7.

to permit, where appropriate, relation back of any legal claims arising out of the same conduct set forth in the prior pleading.

Permitting such relation back is with good reason; only the United States could have brought common law claims on behalf of the government for the conduct, transactions or occurrences described in the relator's complaints.[3] *See United States ex rel. Phipps v. Comprehensive Community Development Corp.,* 152 F. Supp. 2d 443, 451-52 (S.D.N.Y. 2001) ("While the FCA gives a relator the right to bring an action for a violation of the FCA, the FCA 'does not give relators the right to assert common law claims on behalf of the United States.'"), *citing United States v. Eastman Kodak Co.*, 98 F. Supp. 2d 141 (D. Mass. 2000); *see also United States ex. rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*, 2001 WL 40807, at *6 (N.D. Ill. Jan. 16, 2001); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 225-26 (D. Md. 1995).

If the Court's decision stands, the United States would begin to lose potential common law claims immediately upon service of the relator's complaint. For example, assume a relator files a *qui tam* complaint on September 1, 2007, and the government investigates and files an complaint-in-intervention on October 31, 2007. Under the Court's July 17, 2007 ruling, the United States would only have actionable common law claims extending back to October 31, 2004. During the statutorily-mandated FCA investigation, the government lost the ability to assert claims arising between September 1, 2004 and October 30, 2004. There is nothing in the FCA that suggests that the United States should lose claims that only the United States could bring during the pre-intervention investigation of a *qui tam* complaint.

---

[3] Under *res judicata* principles, the United States is required to assert in the same action any common law fraud claims that arise out of the same conduct as its FCA claims. *See generally Allen v. McCurry*, 449 U.S. 90, 94 (1980)*; Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1998).

Finally, it is impossible for a relator or the government to anticipate every cause of action that may arise at the end of a *qui tam* investigation.  With respect to AWP cases, the government was required to investigate complex allegations of drug pricing fraud involving multiple companies.  The pace of the government's investigation was determined, in part, by how cooperative companies, such as Abbott, were during the investigation.  As previously discussed, Abbott withheld relevant evidence of the conduct at issue from the government during its investigation.  By not affording the government's non-FCA claims the benefit of relation back, the Court would be rewarding defendants who delay or impede government *qui tam* investigations.  It is unlikely Congress envisioned that result when enacting the current version of the FCA.

**3.      None of relator's pre-intervention pleadings broke the relation-back chain.**

A relator cannot unilaterally break the statute of limitations relation back chain in an FCA case.  The relation back chain can only be broken if an FCA complaint or claims are properly dismissed.  The language of the FCA is very clear that an FCA "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  31 U.S.C. § 3730(b)(1).  Thus, dismissal – and any break in the relation back chain – can only occur with the written assent of (1) the court *and* (2) the Attorney General of the United States.

The relator made its first claims against Abbott in its original complaint filed on June 23, 1995.  In that complaint, the relator described the drug pricing and spread marketing scheme perpetrated by Abbott that defrauded both the Medicare and Medicaid programs.  Abbott Memorandum of Law, Exhibit C at 2-4, 19-27.  The relator's original complaint identified some drugs that it knew were involved in the scheme, including: sodium chloride, dextrose, and Vancomycin. *Id*.

On March 28, 1997, the relator sought to unilaterally dismiss Abbott from the complaint.  Abbott argues that the relator's pleading broke the relation back link to relator's original complaint.

11

Abbott Memorandum of Law at 19, *citing Jorge v. Rumsfeld*, 404 F.3d 556, 563 (1st Cir. 2005);

*Harbor Ins. Co. v. Essman*, 918 F.2d 734, 737 n.3 (8th Cir. 1990); *Dade County v. Rohr Indus., Inc.*,

826 F.2d 983, 989 (11th Cir. 1987).

Abbott's argument is ill-founded, and the cases it cites are inapposite given the unique structure

of the FCA.  The United States never gave written consent to the March 28, 1997 dismissal pleading

as required under the FCA. 31 U.S.C. § 3730(b)(1).  Further, there is no court order consenting to the

alleged dismissal.  The lack of an objection from the United States to the relator's notice of dismissal

does not satisfy the express requirement for written consent set forth in the statute.  The relator's

Abbott claims were not properly dismissed, and the relator's March 24, 1997 pleading did not break

the relation back chain.

Nor were the claims against Abbott abandoned.[4]  On August 12, 1997, Ven-A-Care amended

its complaint and expanded its allegations against Abbott.  The relator's second amended complaint

included both the drugs identified in its original complaint and several additional Abbott drugs,

including sterile water and Acyclovir.[5]  Thus, by August 1997, all the drugs were identified in the

relator's complaint.

This Court should not rule that the relator's defective dismissal attempt ruptured the relation

back chain.  However, even if the Court so rules, the United States would still be entitled to assert

claims for all the drugs identified in the United States' First Amended Complaint from August 12,

---

[4] Indeed, the United States continued to investigate Abbott even after the flawed dismissal.

[5] Abbott's generic version of Acyclovir came on the market on April 22, 1997.  That product
introduction postdated the two prior versions of the relator's complaint.  The relator could not have pled
the drug in those complaints.  As Abbott's fraudulent drug pricing scheme continued, certain Abbott
drugs came on the market and they too became implicated in the scheme.

1991 – six years before the filing of relator's second amended complaint – through the appropriate end of the claims period.[6]

### 4.    A specific NDC or J-Code need not be identified in the relator's complaint to relate back for statute of limitations purposes.

Abbott also contends that a claim for damages for a particular NDC or J-Code should relate back (1) only if identified by the relator in one of its complaints and, even then, (2) only to the first complaint in which such NDC or J-Code was identified.  Abbott Memorandum of Law at 18.  Abbott asks then for the following:

- The 28 claims raised for the first time in [the relator's Second Amended Complaint] were not alleged until August 12, 1997; because they may relate back only to that complaint, all claims accruing prior to August 12, 1991 are time barred.

- The 25 claims first raised in [the relator's Fourth Amended Complaint] were not alleged until December 11, 2002; because they may relate back only to that complaint, and thus all claims prior to December 11, 1996 are time barred.

- Finally, assuming that the four HCPCS codes not contained in any qui tam complaint are properly in this case (and they are not), they were first alleged in [the United States' original complaint], filed March 17, 2006; because they may relate back only to that complaint, all claims prior to March 17, 2000 are time-barred.

Abbott Memorandum of Law at 20; *see also* Exhibit A.

The "claims" Abbott refers to in its Memorandum of Law are not the actual claims submitted to the Medicare and Medicaid programs for reimbursement.  It is a misnomer.  What Abbott calls "claims" are NDCs or J-Codes assigned to the Abbott drugs identified in the United States'

---

[6]  Abbott contends the claims period ends on April 30, 2001, referencing ¶ 114 of the United States'. The complaint never alleges that, and Abbott's unilateral assertion of the end of the claims period should be ignored. The paragraph Abbott references merely alleges that Abbott transmitted revised price information on April 30, 2001. It does not cap the claims period. The United States never alleges that claims were instantaneously reimbursed based on the new price information. Moreover, the United States has a right to discover whether Abbott reversed this decision over time.

Complaints.  Millions of claims have been submitted for the NDCs or J-Codes at issue in this case.

Dropping any one NDC or J-Code for any period of time  – as suggested by Abbott – would result

in the elimination of a large number of Medicare and Medicaid claims from this case.  As discussed

below, the technical arguments Abbott advances are not supported by the law and certainly do not

justify carving out large swaths of claims from this action.

Abbott's complex efforts to parse out these thousands of claims are based on an erroneous

overarching legal premise: that a specific NDC or J-Code in the United States' complaint-in-

intervention must be identified in a relator complaint for relation back purposes.  As discussed

below, Abbott too narrowly construes when subsequent claims relate back under Rule 15(c)(1).

Rule 15(c)(1) – which this Court held is the foundation for relation back of the government's

FCA claims to the relator's complaint – does not limit relation back to new claims arising out of the

conduct, transaction or occurrence set forth in the original pleading.  That notwithstanding, this

Court has stated that Rule (c)(1) is limited, and that if "the government's complaint contains new

claims unrelated to those asserted in the original complaint, then the original complaint cannot serve

as a proper placeholder under Rule 15(c)(1)."  *In re Pharmaceutical Industry Average Wholesale*

*Price Litigation*, 2007 WL 2058731 at 6.  The Court left open whether new claims against the initial

defendant would be time-barred.[7]  *Id*. at n.5.

Since that decision, the Court has allowed other plaintiffs in this multi-district litigation to

amend their complaint to add additional NDCs related to drugs pled in their initial complaint. *See*

Exhibit 6, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, July 30, 2007 Order

---

[7] The Court's ultimate conclusion in this regard is substantially different than the language
Abbott cites in the preceding hearing where the Court was considering various arguments on the scope
of the relation back issue.  *See* Abbott Memorandum of Law at 18, n. 16.

at 1-2 (allowing amendment of New York City and Counties' complaint to add NDCs relating to drugs pled in those plaintiffs' first complaint.)  The Court correctly declined to distinguish between NDCs or J-Codes when ruling whether claims related to a drug are actionable.

The Court's decision is consistent with Rule 15©, which does not contemplate the rigid adherence to the contents of the relator's original pleadings suggested by Abbott when evaluating the relation back of subsequent claims.  Rule 15(c)(2) states that such relation back is permitted when the additional claim arises out of the conduct, transaction, or occurrence "set forth *or attempted to be set forth in the original pleading*." (Emphasis added).  Notably, Rule 15(c)(2) does not require that the claims added through amendment relate back to the "exact same" conduct, transactions, or occurrences.  Since the relator's complaints allege both (1) the scheme from which the United States' claims arise and (2) the drugs to which the United States' claims relate, neither the J-Code/NDC-specific claims limitations or the related temporal limitations sought by Abbott are appropriate.

> **a.    The scheme at issue in the relator's and the United States' complaints is the same.**

In its original complaint, the relator alleged:

> . . . Defendant ABBOTT knowingly and fraudulently caused the Medicare program and the states' Medicaid programs throughout the United States and its territories to pay grossly excessive and unreasonable reimbursement for certain pharmaceuticals . . . the action committed by Defendant ABBOTT that caused the Medicare and Medicaid programs to pay grossly unreasonable and excessive reimbursement included, but were not limited to, presenting false and fraudulent price information which Defendant ABBOTT knew would be relied upon by Medicare and Medicaid programs in setting reimbursement amounts for the pharmaceuticals manufactured and distributed by Defendant Abbott.

Abbott Memorandum of Law, Exhibit C at 19-20, ¶ 48.  Elsewhere in its original complaint, the relator explains, "[t]he grossly excessive Medicare and Medicaid reimbursement rates available to

suppliers and physicians for the pharmaceuticals in question acted as an inducement to suppliers and physicians to purchase said pharmaceuticals from the manufacturers" who caused Medicare and Medicaid to overpay for their drugs. *Id.* at 17, ¶ 44.

The scheme described in the relator's original complaint is the same scheme at issue in the United States' original and First Amended Complaints:

> Over the course of several years, Abbott reported inflated pharmaceutical prices that it knew Medicare and Medicaid relied upon to set reimbursement rates for Abbott's pharmaceutical products. Abbott's actual sales prices for its pharmaceutical products were far less than the prices reported by Abbott. By knowingly reporting inflated prices – often 1000% higher than Abbott's actual prices – Abbott ensured its customers received inflated reimbursement and profits from Medicare and Medicaid. Abbott then used the public fisc as a marketing tool, actively promoting government-funded "spreads" between (1) its fraudulently inflated prices and (2) its actual sales prices as an inducement to its customers.

United States' Amended Complaint at 1.

Abbott relies on several cases that stand for the proposition that entirely new factual allegations do not relate back to an original complaint simply because the new causes of action arise from the same statutory basis. *See* Abbott Memorandum of Law at 16, *citing, e.g., Oja v. U.S. Army Corps of Eng'rs*, 440 F. 3d 1122 (9th Cir. 2006); 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1497 (2d ed. 1990). Since the United States' allegations arise out of the same conduct set forth in the relator's original complaint, the cases Abbott cites are inapposite.

### b. The relator's complaints identify the drugs at issue.

The drugs at issue in the United States' First Amended Complaint are: (1) sodium chloride, (2) dextrose, (3) sterile water, (4) Vancomycin, and (5) Acyclovir. The relator's original complaint mentioned (1) sodium chloride, (2) dextrose, and (3) Vancomycin as examples of Abbott drugs implicated in the AWP fraud scheme. Abbott Memorandum of Law, Exhibit C at 19-21. At a

16

minimum, there should be no dispute that any NDCs or J-Codes related to these drugs and identified in the United States' First Amended Complaint relate back to the relator's original complaint filed in June 1995; the claims period for these drugs could extend back to June 1989.   In light of this Court's recent ruling in the New York Counties action, there is no real dispute that any NDCs or J-Codes in the United States' First Amended Complaint for the drugs identified in the relator's original complaint relate back and are well within the statute of limitations.  *See* Exhibit 5, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, July 30, 2007 Order at 1-2.  Thirty-four (34) of the NDCs and all eleven (11) J-Codes in the United States' First Amended Complaint cover the drugs identified in the relator's original complaint.[8]  The only colorable dispute relates to the remaining twelve (12) NDCs at issue in the United States' First Amended Complaint relating to (1) sterile water and (2) Acyclovir.

As the relator's original complaint made clear, the list of drugs in that complaint was never intended to be an exhaustive list of every drug that might be implicated in the fraudulent scheme. *See Id*. at 20 ("The Relator has not yet determined all of the pharmaceuticals for which Defendant ABBOTT published false price and cost information . . . The Relator's investigation has, however, established the specific facts alleged in the following paragraphs . . . the Relator reserves the right to amend this complaint to add information gathered in the discovery process and through further investigation.").

Abbott contends that relation back should be limited to the identification of specific NDCs or J-Codes in a *qui tam* relator's original complaint.  Neither the relator nor the United States could

---

[8] The four J-Codes Abbott identifies as appearing for the first time in the government's original complaint cover dextrose (J7110) and saline solution (J2912, J7051 and J7130).  Both drugs were identified in relator's original complaint.

have been expected to know at that stage all the claims for all Abbott drugs (whether NDC or J-Code-based) that may have been implicated in the drug pricing and spread marketing scheme; neither had full information about the scope of the scheme perpetrated by Abbott.   Indeed, Abbott's arguments for NDC or J-Code-specific damages presumes that the relator should have known every NDC or J-Code for the Abbott drugs at issue before filing its complaint.

The relator's August 12, 1997 second amended complaint included the drugs from the original complaint – sodium chloride, dextrose and sodium chloride –  while adding two more found in the United States' First Amended Complaint: sterile water and Acyclovir.[9]   Again, only twelve (12) of the NDCs in the United States' First Amended Complaint cover sterile water and Acyclovir. Even if the Court concluded that relation back was drug-specific – as opposed to scheme-specific – the only NDCs for which any limitation would be appropriate are these twelve NDCs relating to sterile water and Acyclovir, with the claims period for the twelve NDCs beginning August 12, 1991.

## C.       The United States' Acyclovir Claims Are Properly Pled.

Abbott asks this Court to dismiss the Acyclovir claims because the relator supposedly dropped them when it adopted the contents of the United States original Complaint.  *See* Abbott Memorandum of Law at 6-9, Exhibit K.  In support of this argument, Abbott relies on numerous cases analyzing intervention under Fed. R. Civ. P. 24 which have absolutely no relevance to intervention under the FCA.  *See* Abbott Memorandum of Law at 7.

---

[9]  Abbott's Acyclovir came on the market on April 22, 1997; accordingly, it could not have been added to this action before the relator's second amended complaint.

As noted above, 31 U.S.C. § 3730(b)(1) sets forth the requirements for dismissal of claims from an FCA action: *written* consent from (1) the court *and* (2) the Attorney General of the United States, with any reasons for the consent to the dismissal.  31 U.S.C. 3730(b)(1).  As Abbott tacitly admits, the United States never gave its written consent to the dismissal of the Acyclovir claims in the relator's fourth amended complaint.  Abbott Memorandum of Law at 8.

Abbott argues by not objecting to the relator's adoption of the government's complaint-in-intervention, the United States consented to the dismissal.  In addition Abbott argues that the United States' prior declination of the Acyclovir claims amounted to consent to the relator's dismissal of the Acyclovir claims.  On the former point, the FCA is clear that the United States' consent (1) must be affirmative and written and (2) must set forth reasoning as to why the consent is being granted.  31 U.S.C. § 3730(b)(1).  No such consent was given and, therefore, the claims were never properly dismissed.

On the latter point, Abbott fundamentally misapprehends the effect of the United States declining to intervene in a case.  It is not a commentary on the merits of the case, nor is it the functional equivalent of a dismissal.  By the mere act of declining, the government is not granting approval for a relator to dismiss an FCA case.  Indeed, the notice of intervention the United States did file in this case expressly stated that the United States' consent should be obtained prior to any dismissal.  Abbott Memorandum of Law, Exhibit I at 3. Under the FCA, if the United States declines intervention, the relator may proceed with the action, and the government may intervene at a later date for good cause. *See* 31 U.S.C. § 3730(c)(3).

Absent a proper dismissal, the Acyclovir claims were still in the case, and the United States is permitted to assert them in its own amended complaint.

19

## III. CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny Abbott's Motion to Dismiss.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3398
Fax: (617) 748-3272

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

 /s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL

 /s/ Gejaa T. Gobena
Joyce R. Branda
Daniel Anderson
Renée Brooker
Justin Draycott
Rebecca Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088
Fax: (202) 307-3852

Dated: August 24, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S MOTION TO DISMISS** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Gejaa T. Gobena

Dated: August 24, 2007                    Gejaa T. Gobena