UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti B. Saris |
| | ) | |
| *United States of America, ex rel. Ven-a-Care* | ) | Magistrate Judge Marianne B. Bowler |
| *of the Florida Keys, Inc., v. Abbott* | ) | |
| *Laboratories, Inc.,* | ) | |
| CIVIL ACTION NO. 06–CV-11337-PBS | ) | |

# EXHIBIT 7, PART 3 TO THE UNITED STATES'OPPOSITION TO ABBOTT LABORATORIES INC.'S MOTION TO DISMISS

for identical services provided to inpatients and outpatients, in violation of Medicare/Medicaid regulations." (*Id.*) Relator further alleges that these "practices resulted in higher-than-authorized reimbursements from Medicare/Medicaid and higher-than-accurate hospital cost reports." (*Id.*) As to defendant Cullman Regional Baptist Medical Center, Relator merely alleges that "[d]uring a review of the billing systems, Relator was told by Ms. Becky Miller (Corporate Director of Business Office Services for Defendant Baptist Health) that this problem was widespread and that the worst problem existed at Defendant Cullman Regional." (*Id.* at ¶ 31.)

The court is of the opinion that Relator has failed to allege sufficient detail supporting these allegations. Relator makes no mention of the services, codes, or procedures allegedly involved. Further, Relator makes no mention of the patients or claims affected by the allegedly fraudulent practice. Relator also fails to mention the period of time for which she reviewed the charging and billing system. Finally, Relator's claim against Cullman Regional Medical Center for fraudulent billing practices is based entirely on hearsay and is completely devoid of specific facts. For the reasons noted above, the court is of the opinion that Relator has failed to provide sufficient particularity under Rule 9(b) as to her claims against defendants Cullman Regional Baptist Medical Center and Citizens Baptist Medical Center for fraudulent billing practices, (Relator's Compl. at ¶¶ 29-31). As to the claims against these defendants, Relator has merely alleged a scheme of fraud, and no specific occurrences or facts which support this general scheme. Further, Relator has failed to adduce specific facts supporting a strong inference of fraud committed by these defendants, and Relator has failed to provide these defendants with sufficient notice of these allegedly fraudulent acts about which she complains. Thus, defendants' Motion to Dismiss is due to granted as to the claims against defendants Citizens

Baptist Medical Center for fraudulent laboratory billing and fraudulent billing practices and against Cullman Regional Baptist Medical Center for fraudulent billing practices.

Relator's claims against Coosa Valley Baptist Medical Center regarding failure to collect co-payments and deductibles, (Relator's Compl. at ¶ 24); failure to take appropriate remedial measures, (*id.* at ¶¶ 25-26); the "72 hour rule," (*id.* at ¶¶ 27-28); and fraudulent billing practices,[10] (*id.* at ¶ 30); and against Coosa Valley Home Health for failure to collect co-payments and deductibles, (*id.* at ¶ 24); and failure to take appropriate remedial measures, (*id.* at ¶¶ 25-26), are not sufficient under Fed. R. Civ. P. 9(b). These claims appear to be based on rumor and speculation. Relator has failed to provide sufficient, if any, details regarding how these allegedly fraudulent acts occurred and who engaged in them. As to these claims, Relator has merely alleged general fraudulent schemes, and no specific occurrences or facts supporting these schemes. Further, with regard to these allegations, Relator has failed to adduce specific facts supporting a strong inference of fraud, and Relator has failed to provide defendants with sufficient notice regarding these allegedly fraudulent acts. Thus, defendants' Motion to Dismiss is due to be granted as to the claims against Coosa Valley Baptist Medical Center for failure to collect co-payments and deductibles, failure to take appropriate remedial measures, violations of the "72 hour rule," and fraudulent billing practices, and against Coosa Valley Home Health for failure to collect co-payments and deductibles and failure to take appropriate remedial measures.

---

[10] Relator makes the same allegations regarding fraudulent billing practices against Coosa Valley Baptist Medical Center that she made against Citizens Baptist Medical Center. (See Relator's Compl. at ¶ 30.) These claims are due to be dismissed as against Coosa Valley Baptist Medical Center for the same reasons they are due to be dismissed as against Citizens Baptist Medical Center.

As to Relator's Conspiracy Claim in Count III, defendants assert that Relator's
conspiracy pleadings failed to provide the specificity required under the FCA because the FCA
"seems to require the specific intent to defraud." (defs.' Mot. at 26 (quoting *United States ex rel.
Johnson v. Shell*, 183 F.R.D. 204, 209 (E.D. Tex. 1998).)   Defendants also assert that "[a]nother
failing of Count III is the absence of any allegation of any agreement among the parties allegedly
involved in this conspiracy." *(Id.)*

Relator contends that even if the court concludes that she is required to show specific
intent to defraud, her Complaint "meets this heightened pleading requirement, since her
Complaint establishes that the Defendants acted with the specific intent to submit false and
fraudulent claims for reimbursement to the government." (Relator's Response at 33.)   Further,
Relator asserts that she has alleged the following agreements: (1) an agreement between
representatives of defendants Coosa Valley Baptist Medical Center and Citizens Baptist Medical
Center (through Nancy Ellis and Katie Powell) to supply missing information on patient forms in
order to improperly obtain Medicare and Medicaid reimbursements; (2) an agreement between
defendants Coosa Valley Baptist Medical Center and Citizens Baptist Medical Center (through
Nancy Ellis and Katie Powell) to create an internal document entitled "Outpatient Billing
Information" to support the submission of fraudulent Medicare and Medicaid reimbursement
claims; (3) an agreement between representatives of defendants Coosa Valley Home Health and
Citizens Baptist Medical Center (through Theresa Jackson, Margaret Hamm, Connie Bowen, and
Julie Tidwell) to obtain Medicare and Medicaid reimbursements from rehabilitative services for
patients which were no longer medically necessary; (4) an agreement between representatives of
defendants Coosa Valley Home Health, Citizens Baptist Medical Center, and Coosa Valley
Baptist Medical Center (through Theresa Jackson, Margaret Hamm, and Nancy Ellis) to continue

22

to treat patients who no longer required treatment simply because it was profitable; and (5) an agreement between representatives of defendants Coosa Valley Baptist Medical Center, Coosa Valley Home Health, and Citizens Baptist Medical Center (through Steven Johnson, Mary Tienney, Christie Brewer, and Nancy Ellis) to conceal from the government the fraudulent practices that were occurring at these institutions so as not to jeopardize a pending business transaction. (*See* Relator's Response at 34-37 (citing Relator's Compl. at ¶¶ 16, 17, 19, 20, 26).) Upon review of Relator's Complaint, the court disagrees with Relator's assertion that she has adequately alleged the agreements recited above.

To satisfy the elements of a conspiracy to defraud claim under 31 U.S.C. § 3729(a)(3) of the FCA, a plaintiff is required to demonstrate that: (1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) the United States has suffered damages as a result of the false or fraudulent claim. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.,* 721 F. Supp. 1247, 1259 (S.D. Fla. 1989). The majority view is that Rule 9(b) applies to conspiracies under the FCA as well as to substantive violations. *See Gericare,* 2000 WL 33156443, at *9 (collecting cases). "The essence of a conspiracy under the Act is an agreement between two or more persons to commit a fraud." *Stinson,* 721 F. Supp at 1259. However, "[w]hile intent to defraud apparently is an element of a conspiracy claim under the FCA, intent is a mental state that may be pleaded generally, Fed. R. Civ. P. 9(b)." *Gericare,* 2000 WL 33156443, at * 10 (citing *Johnson* 183 F.R.D. at 206). As noted by the court in *Johnson,* "a plaintiff cannot be expected to have personal knowledge of the details of corporate internal affairs," including who physically completed the false forms." *Johnson,* 183 F.R.D. at 206.

23

Relator has failed to allege an agreement with a sufficient degree of particularity. The paragraphs cited by Relator merely assert that allegedly fraudulent practices were being undertaken; that upper management knew of, encouraged, and commanded such practices; and that these practices were overlooked because of their profitability.[11] Relator's Complaint is devoid of any allegations of an agreement to defraud. Even if Relator's Complaint is viewed as alluding to an agreement between employees, it does not allege the particulars of who exactly entered into the conspiracy or how and when the conspiracy arose. In fact, Relator merely alleges in her conspiracy count that the defendants named in her Complaint "conspired with numerous individuals and entities identified within this Complaint to defraud the Government by getting false or fraudulent claims allowed or paid and by getting improper per diem payments to Defendants in violation of 31 U.S.C. §§ 3729(a)(1) and (a)(2), all in violation of 31 U.S.C. §

---

[11] Paragraph sixteen merely alleges that Relator and others were ordered to supply "missing" information in order to obtain Medicare and Medicaid reimbursement and in an effort to conceal violations of Medicare and Medicaid regulations. (*See* Relator's Compl. at ¶ 16.) Paragraph seventeen merely alleges that Relator and others were ordered to complete allegedly fraudulent forms to submit to Medicare and Medicaid for reimbursement. (*See id.* at ¶ 17.) Paragraph nineteen merely alleges that hospital administrators "ordered unqualified individuals to complete the necessary documentation to recertify patients and to order additional physical therapy, skilled nursing, and other rehabilitation treatments after Relator had decertified or discharged said patients," and that certain employees "put pressure on various PTA's . . . to provide treatment to patients which would be submitted for Medicare/Medicaid reimbursement, even though Relator and other physical therapists had decertified said patients." (*See id.* at ¶ 19.) Paragraph twenty alleges defendants continued to order services that were no longer medically necessary, that certain administrators and nurses, who were not licensed, overruled Relator's decertifications because of the "need to keep the referring physician and patient's family happy" in order to continue "get[ting] additional referrals," that if patients were decertified, defendants "were not going to make any money" and would have to "lay off" employees, that these improper practices should be overlooked because of their profitability, and that administrators encouraged employees to perform services that were no longer medically necessary. (*See id.* at ¶ 20.) Paragraph twenty-six alleges that directors, including Relator, who tried to correct these allegedly fraudulent practices were ignored and ultimately resigned or were fired. (*See id.* at ¶ 26.)

24

3729(a)(3). (Relator's Compl. at ¶ 41.) Because Relator's Complaint lacks sufficient allegations to support an agreement to defraud the government, Relator's claim for conspiracy is due to be dismissed. *See United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 2000 WL 1207162, at * 11-12 (E.D. Pa. Aug. 24, 2000) (dismissing conspiracy claims against defendants because plaintiff failed to allege an illegal or fraudulent agreement); *United States ex rel. Capella v. Norden Systems, Inc.*, 2000 WL 1336487, at * 11 (D. Conn. Aug 24, 2000) (holding that general and conclusory allegations of conspiracy do not meet the particularity requirements of Rule 9(b) where the complaint did "not specify the particulars of how and when [the] alleged conspiracy arose, who entered into it, or what act was committed in furtherance of the conspiracy"); *Sanders*, 953 F. Supp. at 1410 (Conspiracy claim due to be dismissed for failure to state a claim because plaintiff failed to allege an agreement among the parties allegedly involved in the conspiracy); *Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055, 1063 (S. D. Ohio 1995) (Plaintiff failed to establish a claim for conspiracy where plaintiff alleged in "conclusory terms that the defendants conspired to defraud the United States," but failed to plead any "facts showing the existence of an agreement between two or more of the defendants to defraud the government."); *Stinson*, 721 F. Supp at 1259 (dismissing conspiracy claim because plaintiff's complaint was "void of any allegations of an agreement and thus fail[ed] to state a claim under section 3729(a)(3)"). Thus, defendants' Motion to Dismiss is due to be granted as to Relator's conspiracy claim.

  b.    The Government's Complaint

Defendants assert that the government omitted the particulars regarding any claim submitted for reimbursement, the process used to prepare and send those claims, and the procedures employed in preparing and submitting those claims. (Defs.' Reply at 4.) Defendants

also point out that there are no details regarding how the claims are reviewed, analyzed, and

relied upon by the government or its fiscal intermediaries. (*Id.*) Defendants assert:

> Even the Government's allegations about errors in the patient files are nebulous
> and confusing. Its claim of fraud is premised on an extrapolated "error rate"
> purportedly arising from data in some patient files. As found in Exhibit 1 to its
> complaint, the Government claims not just one kind of error, but several
> completely different sorts of alleged problems that all contribute to the
> Government's "error rate."

(*Id.*) Therefore, defendants contend that the government's Complaint fails under Rule 9(b)

because the government

> does not try to explain how such errors occurred or who committed them or
> whether they were the result of a state of mind sufficient to trigger liability under
> the FCA. No details about the kinds of fraud are provided, and there is no
> explanation that these unspecified problems can be lumped together to form an
> "error rate" of any significance. Nor does the Addendum to Exhibit 1 help. Even
> if the data in that Addendum could be readily deciphered, the Government has
> made no effort to explain how those data correct the ambiguities of Exhibit 1.

(*Id.* at 5.)[12]

The government contends that "the complaint and exhibits go into detail to identify the

type of claims at issue; the statutes and regulations which deal most relevantly with those claims;

---

[12] Defendants further contend that the government makes no allegations regarding the
requisite state of mind. (*See* Defs.' Mot. at 12-14.) Defendants allege that "there must be both
pleading and proof of *knowing* misconduct." (*Id.* at 13.) The knowledge requirement under the
FCA is defined as either "actual knowledge of the information" or "deliberate ignorance of the
truth or falsity of the information" or "reckless disregard of the truth or falsity of the
information." *See* 31 U.S.C. § 3729(b). Further, Rule 9(b) explicitly states that intent and
knowledge may be averred generally. Fed. R. Civ. P. 9(b). Thus, allegations regarding
knowledge are not subject to the particularity requirements of Rule 9(b). The government
alleged in its Complaint that defendants "knowingly presented . . . false claims and certifications
to Medicare," defendants "knew that these claims were false, fraudulent or fictitious, were
deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of the
truth of [these] claims," and defendants "knowingly made, used, or caused to be made or used,
false records or statements to get false or fraudulent claims allowed or paid to defendants by the
Medicare program." (Government's Compl. at ¶¶ 26, 29, 33.) Thus, defendants' argument that
the government failed to plead the requisite state of mind is without merit.

and the fact that defendants wrongfully certified in submitting those claims that the requirements
of physician certification, re-certification, and plan of care as set forth in the identified
regulations had been complied with when, in fact, such certifications were false in a large
percentage of the claims reviewed." (Government's Response at 2.)  The government further
notes:

> In "Exhibit 1" attached to the complaint, and the subsequent "Addendum to
> Exhibit 1" which was filed under seal, the United States has specifically identified
> the patient files which it reviewed prior to making its election to intervene.  Not
> only does that exhibit and addendum specifically show the problems and issues
> related to each of the specific patient files and claims reviewed, but the complaint
> specifically identifies which requirements as set out in 42 C.F.R. §§ 410.61,
> 424.24, and 424.11 were not complied with by defendants in submitting each of
> those claims (see paragraphs 14, 15, 16, 17, 18, 19, and 22 of complaint).

(*Id.* at 3.)  Finally, the government notes:

> To identify each such claim, the patient records must be reviewed.  Those records
> are in the exclusive possession of the defendants and would have required the
> United States to subpoena thousands of patient files at the start of its investigation
> and before the United States had even determined there was any merit to the
> relator's allegations. . . . Rule 9(b) was never intended to place such an arbitrary
> and unreasonable requirement on either the United States or the defendants.

(*Id.* at 3-4.)

The court agrees with the government's assertions.  The government referenced 305
claims in Exhibit 1 and Addendum to Exhibit 1 which specifically identify the patient files and
the specific problems with each file.  (*See* Government's Compl. at ¶ 21, Ex. 1 attached thereto,
and Addendum to Ex. 1 filed under seal on April 25, 2000; *see also* government's Response at 3
n.1.)  The government has sufficiently identified the circumstances of the challenged conduct to
place defendants on notice of the claims against them so that they can prepare a defense.  The
government has also provided a factual basis for its belief that defendants violated the Medicare
regulations which adequately apprises defendants of the nature and scope of its allegations.

Thus, the court is of the opinion that the government has plead its claims with sufficient particularity under Rule 9(b). Thus, defendants' Motion to Dismiss as to the government's claims under the FCA is due to be denied.[13]

## B.   The Government's Common Law Claims

Defendants assert that Rule 9(b) applies to the government's common law claims and that these claims are barred by the applicable statute of limitations. (Defs.' Mot. at 14-16; *see also* Defs.' Reply at 16.) The court disagrees.

### 1.   Rule 9(b)

The court is of the opinion that the government's claims for unjust enrichment and payment by mistake have been adequately plead. "By its terms, Rule 9(b) extends to assertions of 'mistake,' but its applicability to claims of unjust enrichment is less clear. It appears to be the rule that a claim for unjust enrichment is subject to Rule 9(b) only if it is 'premised on fraud.'" *Gericare*, 2000 WL 33156443 at *10 (quoting *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998); *Ramapo Land Co. v. Consolidated Rail Corp.*, 918 F. Supp. 123, 128 (S.D.N.Y. 1996); *Krieger v. Gast*, 2000 WL 288442, at *6 (W.D. Mich. 2000)). Further "[wh]ile the plaintiff may establish unjust enrichment if the defendants obtained monies by fraud, it presumably may establish unjust enrichment even if the defendants obtained such monies innocently." *Gericare*, 2000 WL 33156443 at *10 (citing *United States v. Mead*, 426 F.2d 118, 125 n.6 (9th Cir. 1970) ("Knowledge of falsity is not a requisite for recovery under the mistake doctrine.")). However, the court is of the opinion that the government's common law claims are

---

[13] This does not include claims against defendant Cherokee Baptist Medical Center. As noted above, the government failed to obtain records from this defendant, and, accordingly, all claims against Cherokee Baptist Medical Center are due to be dismissed.

28

sufficient even under the heightened pleading standard of Rule 9(b). As the claims for unjust enrichment and payment by mistake are alternative theories of liability for the fraud claims alleged under the FCA, these claims are sufficient for the same reasons that the FCA claims are sufficient.

2.      *Statute of Limitations*

The court is also of the opinion that the common law claims are not barred by the applicable statute of limitations. Defendants argue that the two-year statute of limitations under Alabama Code § 6-2-38 applies, and that the statute of limitations began to run when Relator filed her complaint. (*See* Motion to Dismiss at 15-16; Defs' Reply at 16-17.) However, under the United States Code, claims by the United States based on contract must be filed "within six years after the right of action accrues," 28 U.S.C. § 2415(a), and claims grounded in tort must be filed within three years. 28 U.S.C. § 2415(b).

28 U.S.C. § 2415 applies to the government's claims of unjust enrichment and payment by mistake. *See Gericare,* 2000 WL 33156443, at *2-3, 12 (applying 28 U.S.C. § 2415 to plaintiff's claims of unjust enrichment and mistake of fact in a Medicare fraud case). Further, 28 U.S.C. § 2416(c) provides: "For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which – . . . (c) facts material to the right of the action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." Thus, 28 U.S.C. § 2416(c) tolled the statute of limitations until the Relator filed her Complaint because the government could not have reasonably known of the facts material to the right of action until the filing of Relator's complaint. Therefore, whether these claims sound in tort or contract, they are not barred by the applicable statute of limitations.

29

As to the government's claim of misrepresentation under Alabama Code § 6-5-101, a two-year statute of limitations applies. *See* Ala. Code § 6-2-38; *see also Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 417 (Ala. 1997). This two year statute of limitations began to run when the government discovered the fraud or should have discovered the fraud in the exercise of reasonable care. *Foremost,* 693 So. 2d at 417-21. Relator filed her Complaint on November 24, 1997, thereby putting the government on notice of the claims involved in this action. The government filed its Complaint more than two years after Relator filed her Complaint.

The government contends that "[t]he United States' common law and equitable claims are alternative theories of liability for the frauds alleged in the FCA claims. As they rely on the same underlying facts and fraudulent claims, they relate back to the date of relator's filing." (Supplemental Reply of United States to Defendants' Motion to Dismiss Common Law Claims Regarding Statute of Limitations Issue ("Government's Supp. Reply") at 5.) However, defendants argue:

> Defendants find no provision of law that would permit the Government's state law claims to relate back to the filing of the Relator's complaint. Where Congress (or the Supreme Court in promulgating the Federal Rules of Civil Procedure) has intended to effect a relation back provision, it has done so by clear and express language. Rule 15 of the Federal Rules of Civil Procedure, for example, explicitly provides that amendments to a pleading relate back to the original pleading under certain specified conditions. No such provisions are found in the FCA, or in Rule 24, which deals more generally with intervenors.

(defs.' Mot. at 16.)

Federal Rule of Civil Procedure Rule 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be

set forth in the original pleading, or
(3)    the amendment changes the party or the naming of the party
against whom a claim is asserted if the foregoing provision (2) is
satisfied and, within the period provided by Rule 4(m) for service
of the summons and complaint, the party to be brought in by the
amendment (A) has received such notice of the institution of the
action that the party will not be prejudiced in maintaining a
defense on the merits, and (B) knew or should have known that,
but for a mistake concerning the identity of the proper party, the
action would have been brought against the party.

Fed. R. Civ. P. 15(c). The rationale for this rule is that "once litigation involving particular

conduct or a given transaction has been instituted, the parties are not entitled to the protection of

the statute of limitations against the later assertion by amendment of defenses or claims that

arose out of the same conduct, transaction or occurrence as set forth in the original pleading."

*United States ex rel. Koch v. Koch Industries, Inc.*, 188 F.R.D. 617, 620 (N.D. Okla. 1999)

(citing 6A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and*

*Procedure* § 1496 at 64 (2d ed. 1990) (quotation marks omitted)). Further, the very purpose of

the relation back doctrine set forth in Rule 15(c) is to circumvent the rule that new parties cannot

be added to an action by amendment after the applicable limitations period has expired. *See* 6A

Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §

1498 at 103-05 (2d ed. 1990). The critical issue in Rule 15(c) determinations is whether the

original complaint gave notice to the defendant of the claim now being asserted. *Davenport v.*

*United States*, 217 F.3d 1341, 1345 n.8 (11th Cir. 2000).

The first instance in which relation back is allowed has no application to this case

because the FCA does not authorize a relation back.[14] However, as noted above, the *qui tam*

_____

[14] This provision, added in 1991, was "intended to make it clear that the rule does not
apply to preclude any relation back that may be permitted under the applicable limitations law."
Fed. R. Civ. P. 15(c)(1) Advisory Committee's Note. The Advisory Committee Notes also

provision of the FCA allows certain private parties to sue on behalf of the government. Further, the government has a statutory right to intervene in a *qui tam* action and is also entitled to move for extensions on the time in which it has to intervene. *See* 31 U.S.C. 3730 (b)(2), (b)(3). Thus, the additional claims alleged in the government's complaint, including the government's state law claim, is an amendment to the complaint originally filed by the Relator. Because the government's state law claim arose out of the same alleged conduct as the claims set out in Relator's Complaint, it relates back to the date on which Relator filed her Complaint.[15] *Accord Foster v. Peddicord*, 826 F.2d 1370, 1373 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988) (finding that where intervention was premised on a subrogation interest in the plaintiff's claim, "there was a community of interest between the claims of [intervenor-plaintiff] and [plaintiff] sufficient to allow [intervenor-plaintiff's] filing to 'relate back' to the claim intitiated by [plaintiff]." *Cummings v. United States*, 704 F.2d 437, 439-40 (9th Cir. 1983) (concluding that the intervention of an insurer-subrogee was essentially equivalent to a *pro tanto* substitution of the real party in interest, and thus, relation back to the original complaint was appropriate); *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1095-98 (3rd Cir. 1975) (reversing district court's grant of partial summary judgment and finding that the amended complaint, which added a nominal plaintiff who had a claim against one bank related back to the filing of the initial complaint by the one who did not have a claim against that bank so as to toll the statute of limitations on the

---

provide that, "[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." *Id.*

[15] The court notes that the government's common law claims for unjust enrichment and payment by mistake also arise out of the same conduct and would relate back if they too were outside the applicable statute of limitations.

32

date of the filing of the original complaint); *Brauer v. Republic Steel Corp.*, 460 F.2d 801, 804 (10th Cir. 1972) (intervening plaintiff's claim allowed under doctrine of relation back where (1) claim arose out of the same transaction and occurrence as the original claim, (2) close identity of interest existed between intervenor and original plaintiff, and (3) defendant made no showing of prejudice or surprise). Thus, defendants' Motion to Dismiss is due to be denied as to the government's common law claims.

## III. CONCLUSION

For the foregoing reasons, the court is of the opinion that Defendants' Motion to Dismiss Complaint of the United States in Intervention and Relator's *Qui Tam* Complaint is due to be granted in part and denied in part. Defendants' Motion is due to be denied as to the following claims:

1.  Relator's claims under Counts I and II against defendants Coosa Valley Baptist Medical Center, Coosa Valley Home Health, and BHS:

    (a)  patients were seen by unlicensed and unsupervised service providers in violation of the Medicare/Medicaid regs, (*see* Relator's Compl. at ¶¶ 13-14);

    (b)  patient medical records and forms contained incomplete, inaccurate, and fraudulent documentation when submitted for Medicare and Medicaid reimbursement, (*see id.* at ¶¶15-18); and

    (c)  patient medical records and forms contained incomplete, inaccurate, and fraudulent documentation to support re-certification and medical necessity for additional treatment and services, (*see id.* at ¶¶ 19-23).

2.  Relator's claim against Coosa Valley Baptist Medical Center for wrongful termination under Count IV pursuant to 31 U.S.C. § 3730(h), (*see id.* at ¶¶ 43-45).

3.  The government's entire Complaint, except as to defendant Cherokee Baptist Medical Center.

Defendants' Motion to Dismiss is due to be granted as to the following claims:

1.  Relators' claims under Counts I and II against Coosa Valley Baptist Medical Center and BHS regarding:

33

     (a)    failure to collect co-payments and deductibles, (*see* Relator's Compl. at ¶ 24);

     (b)    failure to take appropriate remedial measures, (*see id.* at ¶¶ 25-26);

     (c)    the "72 hour rule," (*see id.* at ¶¶ 27-28); and

     (d)    fraudulent billing practices, (*see id.* at ¶ 30).

2.    Relator's claims under Counts I and II against Coosa Valley Home Health and BHS regarding:

     (a)    failure to collect co-payments and deductibles (*see id.* at ¶ 24); and

     (b)    failure to take appropriate remedial measures, (*see id.* at ¶¶ 25-26).

3.    All claims under Counts I and II against defendants Citizens Baptist Medical Center, Cullman Regional Medical Center, and BHS for fraudulent billing practices, (*see id.* at ¶¶ 29-31).

4.    Relator's conspiracy claim under Count III pursuant to 31 U.S.C. § 3729(a)(3), (*see id.* at ¶¶ 41-42).

5.    All claims in the government's Complaint relating to defendant Cherokee Baptist Medical Center.

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this ⟨30th⟩ day of March, 2001.


SHARON LOVELACE BLACKBURN
United States District Judge


34