UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK 2 TRIAL | Judge Patti B. Saris |

**PLAINTIFFS' SUPPLEMENTAL SUBMISSION REGARDING STATE CONSUMER PROTECTION ACT PRE-SUIT DEMAND REQUIREMENTS**

At the August 27 hearing on various Track 2-related issues, the Court announced its intention to dismiss Plaintiffs' claims brought under state consumer protection statutes where *Defendants asserted* that Plaintiffs had failed to comply with those statutes. The Court estimated the states to number three and referred the parties to Defendants' briefing. Reference to the Track Two Defendants' Opposition to Class Plaintiffs' Motion for Leave to File an Amended Complaint (Dkt. No. 4276) reveals that Defendants claim that Plaintiffs failed to comply with the pre-suit demand provisions of six states: California, Georgia, Indiana, Texas, West Virginia and Wyoming. *Significantly, the Court is now contemplating the application of the law of California, the state in which Defendants Amgen and Watson are headquartered, to a putative nationwide class*.

With all due respect to the Court, Plaintiffs request the Court consider this short response. As they were under Massachusetts law, Defendants are for the most part wrong that Plaintiffs'

- 1 -

purported failure to comply with notice provisions in certain states mandates dismissal of their claims under those state consumer protection statutes, including California.[1]

**California**

A plaintiff may initiate proceedings for injunctive or equitable relief under the California Consumer Legal Remedies Act ("CLRA") without pre-suit notice to the defendant. CAL. CIV. CODE § 1782(d). For damages, the CLRA requires that, thirty or more days before adding a damages claim, the plaintiff provide written notice of the alleged violation and demand that the defendant rectify the violation. CAL. CIV. CODE § 1782(a). Plaintiffs have satisfied this requirement.

To review, the original complaint in this litigation was brought only under federal law. Plaintiffs later amended to allege violations of various state laws, including the CLRA. This Count was a "composite" one, referencing the various state laws where Defendants had their various headquarters and containing a damages request. The Court later dismissed the Fourth Amended Complaint on lack of pre-suit demand grounds and provided Plaintiffs with an opportunity to cure. *Plaintiffs did so by, inter alia, sending demand letters under various statutes and expressly referencing CAL. CIV. CODE § 1782*. Defendants declined Plaintiffs' demands, and Plaintiffs filed a new complaint called the Fifth Amended Complaint. Thus, the pre-suit demand requirements of the CLRA have been satisfied for California just as they have for Massachusetts, *i.e.*, Plaintiffs cured any previous defect.

Although some courts strictly construe the demand requirements before adding damages claims, including *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005) (cited by Defendants), at least one California court has held that Section 1780(d) suggests that it is

---

[1] Plaintiffs will not address pre-suit demand requirements under Georgia law, as the Court has already found that no class action is available under the Georgia act.

inappropriate to dismiss a CLRA claim with prejudice where the plaintiff fails to comply with Section 1782. In *Deitz v. Comcast Corp.*, 2006 U.S. Dist. Lexis 94333, at *15-16 (N.D. Cal. Dec. 21, 2006), the court explained:

> The Court is aware that Judge Sabraw of the Southern District of California has dismissed a Section 1782 claim with prejudice where the complaint requested damages prematurely. *See Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181 (S.D. Cal. 2005). The undersigned believes this draconian sanction is unwarranted. Given that the legislature specifically contemplated that an action seeking injunctions can be amended to include a damages claim after the thirty days have run, the goal of the legislature would best be served by allowing amendment in the circumstances of this case.

*See also Kennedy v. Natural Balance Pet Foods, Inc.*, 2007 U.S. Dist. Lexis 57766, at *7-8 (S.D. Cal. Aug. 7, 2007) (noting split in California courts of whether Section 1782 requires dismissal with or without prejudice).

Plaintiffs respectfully submit that *Deitz* supports Plaintiffs' maintenance of the CLRA damages claim, especially given the facts that (i) the original CLRA count was part of a composite claim involving statutes that did not contain pre-suit demand provisions; (ii) **Plaintiffs did ultimately give the required demand under the CLRA and waited 30 days prior to seeking leave to file the Fifth Amended Complaint**; (iii) every Defendant in this litigation has been well acquainted with Plaintiffs' claims for relief for years; and (iv) no Defendant in this litigation has ever elected to cure the alleged law violations in response to a demand letter, including the Track 2 Defendants in response to the letter sent to them prior to moving for permission to file the Fifth Amended Complaint. In light of the foregoing, it is a farce to believe that Defendants' behavior would have been different – that is, they would have willingly agreed to pay the damages sought – given the hard line, scorched-earth defense that they have waged in this six-year litigation.

- 3 -

**Indiana**

Although Indiana's statute contains a notice provision, Defendants fail to point the Court to an important exception to this provision. Indiana Code § 24-5-0.5-5(a), the section cited by Defendants, provides:

> No action may be brought under this chapter, except under Section 4(c) of this chapter, unless *(1) the deceptive act is incurable* or (2) the consumer bringing the action shall have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act.

Importantly, Indiana Code § 24-5-0.5-2(8) defines an "incurable deceptive act" as: "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Although the Indiana Supreme Court has not precisely defined the term, it has held that an "incurable deceptive act" requires intent. *See McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998) ("We hold that intent on the part of the violator is required under the Act for 'incurable' deceptive acts,' but is not required for most other 'deceptive acts.'"). This is the type of conduct Plaintiffs have alleged – and this Court found with respect to Track 1 Defendants – in this case.[2] Therefore, Plaintiffs were not required to comply with that statute's notice provision.

**Texas**

Texas law, which Defendants likewise fail to cite in full, provides that a plaintiff must provide notice at least sixty days before filing suit. TEXAS BUS. & COMM. CODE ANN. § 17.505(a). ***However***, that statute does not provide for dismissal if a plaintiff fails to comply with

---

[2] Defendants rely on *Lehman v. Shroyer*, 721 N.E.2d 365 (Ind. Ct. App. 1999), but that decision dealt with the parties' disputes over the installation of a pool and therefore did not involve a larger scheme to defraud as Plaintiffs have alleged here.

- 4 -

001534-16 193791 V1

that section; rather, it provides that the Court abate the proceeding until the plaintiff complies with it. Specifically, subsections (c), (d) and (e) provide:

> (c) A person against whom a suit is pending who does not receive written notice, as required by Subsection (a), may file a plea in abatement *not later than the 30th day after the date the person files an original answer in the court in which the suit is pending.* This subsection does not apply if Subsection (b) applies.
>
> (d) The court shall abate the suit if the court, after a hearing, finds that the person is entitled to an abatement because notice was not provided as required by this section. A suit is automatically abated without the order of the court beginning on the 11th day after the date a plea in abatement is filed under Subsection (c) if the plea in abatement:
>
>> (1) is verified and alleges that the person against whom the suit is pending did not receive the written notice as required by Subsection (a); and
>>
>> (2) is not controverted by an affidavit filed by the consumer before the 11th day after the date on which the plea in abatement is filed.
>
> (e) An abatement under Subsection (d) continues until the 60th day after the date that written notice is served in compliance with Subsection (a).

(Emphasis added).

Here, not only did Defendants fail to request an abatement, but even if Defendants were to request one it would only provide Plaintiffs time to comply with the notice demand and would not require dismissal. The Texas Supreme Court made this clear in *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex. 1992). In that case, after noting that "[t]he issue is not whether notice is a prerequisite to a DTPA action for damages – clearly, it is – but what the effect of lack of notice is," the Court held that:

> The purpose of the DTPA notice provision is the same as that of the Medical Liability and Insurance Improvement Act: "to discourage litigation and encourage settlements of consumer complaints." *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239,

- 5 -

242 (Tex. 1985). ***When a plaintiff fails to comply with the requirement, abatement of the action for the statutory notice period is more consistent with the purpose of notice than dismissal***. While the action is abated, the parties may discuss their positions as they would have done during the period for pre-suit notice. Hash argues that this result allows a plaintiff to ignore the notice requirement with virtual impunity, the only penalty being a slight delay in the litigation. But the consequence of noncompliance is not necessarily punishment. It may be limited, as we think it is here, to enforcement of the purpose of notice. The initiation of litigation without notice may have effects other than denying the parties a pre-suit opportunity to negotiate. It may polarize the parties and prejudice their discussions. It may also result in expense to the defendant in filing an answer, requesting abatement, and otherwise responding to the litigation. If such effects actually occur, the trial court is empowered to remedy them by appropriate sanctions under Rule 13, TEX. R. CIV. P. ***But it is not necessary to the purpose of notice in these circumstances to dismiss plaintiff's action if notice is not given.***

*Id.* at 468-69 (emphasis added). *See also Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601 (N.D. Tex. 2006) (following *Hash* and refusing to abate action where defendant did not timely request abatement).[3] Therefore, Plaintiffs' failure to comply with that notice section likewise does not mandate dismissal.

### West Virginia

Section 46A-6-106(b) of the West Virginia code provides:

> (b) Notwithstanding the provisions of subsection (a) of this section, no action may be brought pursuant to the provisions of this section *until* the consumer has informed the seller or lessor in writing and by certified mail of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation to make a cure offer: Provided, That the consumer shall have ten days from receipt of the cure offer to accept the cure offer or it is deemed refused and withdrawn.

---

[3] Defendants' reliance on *America Online, Inc. v. Williams*, 958 S.W.2d 268 (Tex. App. 1997), mandates no different result. In that case the Court held that the trial court had erred in certifying a class during the abatement period. However, the defendant in that case had properly requested an abatement. Defendants did not do so here.

- 6 -

The plain language of the statute does not mandate dismissal if a plaintiff has not complied with this section.

Research has not located any cases interpreting this subsection of the statute.  However, in a decision decided three months ago, the West Virginia Supreme Court held that notice before filing suit against a governmental entity was jurisdictional and therefore noncompliance required dismissal.  *See Motto v. CSX Transp., Inc.*, 647 S.E.2d 848 (W. Va. 2007).  But the language of the statute the West Virginia Supreme Court was interpreting, found in West Virginia Code Section 55-17-3(a), differed ***significantly*** from the language in Section 46A-6-106(b).  The language of *that* statute provided:

> Notwithstanding any provision of law to the contrary**, *at least thirty days prior to the institution of an action*** against a government agency, the complaining party or parties ***must*** provide the chief officer of the government agency and the attorney general written notice, by certified mail, return receipt requested, of the alleged claim and the relief desired.

(Emphasis added).

In addition, and perhaps more importantly, the *Motto* court held that dismissal was mandatory given the purpose of governmental immunity statutes.  But, here, the statute at issue is far more like the statute the West Virginia Supreme Court analyzed two years ago in *Hinchman v. Gillette*, 618 S.E.2d 387 (W. Va. 2005).  In *Hinchman*, the Court refused to dismiss a medical malpractice action for failure to respond to defendant's pre-filing complaints about the purportedly insufficiency of the plaintiff's pre-filing notice.  Thus, even though that statute provided (and still provides) that "no person may file a medical professional liability action against any health care provider without complying with the provisions of this section" (*id.* at 390, *see* W. VA. CODE § 55-7B-6), the West Virginia Supreme Court still held that "to the extent possible, under modern concepts of jurisprudence, legal contests should be devoid of those

sporting characteristics which gave law the quality of a game of forfeits or trial by ambush." *Id.* at 394. It therefore read into the statute a requirement that, should a defendant challenge the sufficiency of a pre-filing certificate given under the statute, the defendant had to challenge it within 30 days of its submission. In so holding, it instructed lower courts that:

> We also hold that in determining whether a notice of claim and certificate are legally sufficient, a reviewing court should apply W.Va. Code, 55-7B-6 [2003] in light of the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims. Therefore, a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes.

*Id.* at 395.

Likewise, here, Plaintiffs respectfully submit that the West Virginia Supreme Court would not require dismissal of Plaintiffs' claims because the purpose of pre-filing demands, to encourage and facilitate settlement discussions, has been served regardless of Defendants' insistence upon technical compliance of serving of a formal pre-filing notice under Title 46A.

### **Wyoming**

"A person relying upon an uncured unlawful deceptive trade practice" can recover damages "actually suffered as a consumer as a result of such unlawful deceptive trade practice." WYO. STAT. § 40-12-108(a). "Uncured unlawful deceptive trade practice" refers to one in which the consumer has given notice to the defendant, and the defendant has failed to cure. WYO. STAT. § 40-12-102(a)(ix). Again, Plaintiffs gave the required notice prior to filing the Fifth Amended Complaint.

- 8 -

DATED:  August 30, 2007.                    By    /s/ Steve W. Berman
                                                   Thomas M. Sobol (BBO#471770)
                                                   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

        Marc H. Edelson
        Hoffman & Edelson LLC
        45 West Court Street
        Doylestown, PA  18901
        Telephone: (215) 230-8043
        Facsimile: (215) 230-8735

        **CO-LEAD COUNSEL FOR PLAINTIFFS**

- 11 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 30 2007, I caused copies of **PLAINTIFFS' SUPPLEMENTAL SUBMISSION REGARDING STATE CONSUMER PROTECTION ACT PRE-SUIT DEMAND REQUIREMENTS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

       /s/ Steve W. Berman
Steve W. Berman