UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK 2 TRIALS | Judge Patti B. Saris |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
TRACK 2 CLASS CERTIFICATION REGARDING STATE LAW ISSUES**

# TABLE OF CONTENTS

**PAGE**

I.   THE COURT SHOULD CERTIFY A NATIONWIDE CLASS BASED ON
     THE LAWS OF THE THREE DEFENDANTS' "HOME" STATES ...............................1

     A.   The Restatement Factors Favor Applying "Home" State Law...............................1

     B.   Application of "Home" State Law Comports With Judicial Efficiency
          And The MDL Process .......................................................................................4

     C.   California Law Should Apply To All Class Claims Against Defendants
          Amgen And Watson...........................................................................................5

          1.   California Law Claims.................................................................................5

          2.   The Court Should Apply California Law to the Nationwide Claims
               of Class Members against Amgen and Watson ...........................................6

     D.   New Jersey Law Should Apply To All Class Claims Against
          Defendant Aventis ...........................................................................................10

          1.   New Jersey Law Claims............................................................................10

          2.   The Court Should Apply New Jersey Law to the Nationwide
               Claims of Class Members against Aventis ................................................11

     E.   Defendants' Arguments Will Not Prevail............................................................14

II.  IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THE
     CLASSES BY APPLYING MULTI-STATE LAW........................................................18

     A.   Proposed Jury Instructions And Groupings ........................................................18

     B.   Groupings For TPP Claims Under State Statutes .................................................21

# TABLE OF AUTHORITIES

## CASES

**PAGE**

*Ascension Tech. Corp. v. McDonald Invs., Inc.*,
  327 F. Supp. 2d 271 (D. Vt. 2003)...................................................................22

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (4th Dist. 2006)..........................................................6

*In re Bendectin Litig.*,
  857 F.2d 290 (6th Cir. 1988) ......................................................................3, 16

*Bernhard v. Harrah's Club*,
  16 Cal. 3d 313 (1976) .................................................................................7, 9

*Blakemore v. Superior Court*,
  129 Cal. App. 4th 36 (2d Dist. 2005)................................................................6

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
  288 F.3d 1012 (7th Cir. 2002) .........................................................................15

*Bushkin Assocs., Inc. v. Raytheon Co.*,
  393 Mass. 622 (1985) .......................................................................................15

*Cel-Tech. Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .......................................................................................5

*Clark v. TAP Pharm. Prods., Inc.*,
  798 N.E.2d 123 (Ill. App. Ct. 2003) ................................................................13

*Clothesrigger, Inc. v. GTE Corp.*,
  191 Cal. App. 3d 605 (4th Dist. 1987)......................................................7, 8, 9

*CollegeNET, Inc. v. Embark.com, Inc.*,
  230 F. Supp. 2d 1167 (D. Or. 2001) ................................................................22

*Cosme v. Whitin Machine Works*,
  417 Mass. 643 (1994) .....................................................................................1, 2

*Cox v. Sears Roebuck & Co.*,
  647 A.2d 454 (N.J. 1994).................................................................................10

*D'Agostino v. Johnson & Johnson, Inc.*,
  628 A.2d 305 (N.J. 1993).................................................................................11

*Deitz v. Comcast Corp.*,
   2006 U.S. Dist. Lexis 94333 (N.D. Cal. Dec. 21, 2006) ...................................................17

*Dunfey v. Roger Williams Univ.*,
   824 F. Supp. 18 (D. Mass. 1993) .......................................................................................2

*Fenwick v. Kay Am. Jeep, Inc.*,
   371 A.2d 13 (N.J. 1977)...................................................................................................10

*Gantes v. Kason Corp.*,
   679 A.2d 106 (N.J. 1996)..................................................................................................11

*Grace v. Perception Tech. Corp.*,
   128 F.R.D. 165 (D. Mass. 1989)..................................................................................15, 16

*International Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.*,
   894 A.2d 1136 (N.J. App. Ct. 2006)..........................................................................11, 12, 13

*J. P. Morgan & Co., Inc. v. Superior Court*,
   113 Cal. App. 4th 195 (4th Dist. 2003).................................................................................9

*Kennedy v. Natural Balance Pet Foods, Inc.*,
   2007 U.S. Dist. Lexis 57766 (S.D. Cal. Aug. 7, 2007).......................................................17

*Lamphere Enters. v. Jiffy Lube Int'l, Inc.*,
   2003 U.S. Dist. Lexis 16204 (D. Or. Sept. 9, 2003) ..........................................................22

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005)..............................................................................17

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*,
   2004 U.S. Dist. Lexis 7789 (D. Minn. Apr. 28, 2004) .....................................................16

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (4th Dist. 1999)...........................................................................7, 9

*Offshore Rental Co. v. Continental Oil Co.*,
   22 Cal. 3d 157 (1978) .......................................................................................................9

*Okura & Co. v. Careau Group*,
   783 F. Supp. 482 (C.D. Cal. 1991) .....................................................................................5

*Pastoria v. Nationwide Ins.*,
   112 Cal. App. 4th 1490 (2d Dist. 2003)...............................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005)................................................................1, 20

*Randle v. SpecTran*,
    129 F.R.D. 386 (D. Mass. 1988)...............................................................15

*In re Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass. 2004)...........................................................14, 15

*Romani v. Cramer, Inc.*,
    992 F. Supp. 74 (D. Mass. 1998) ...............................................................3

*Shields v. Singleton*,
    15 Cal. App. 4th 1611 (2d Dist. 1993)........................................................7

*State Farm Fire & Cas. Co. v. Superior Court*,
    45 Cal. App. 4th 1093 (2d Dist. 1996)........................................................6

*State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*,
    417 A.2d 488 (1980)................................................................................11

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
    17 Cal. 4th 553 (1998) ..............................................................................5

*In re Title U.S.A. Ins. Corp.*,
    36 Cal. App. 4th 363 (4th Dist. 1995).........................................................7

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ..................15

*Washington Mut. Bank v. Superior Court*,
    24 Cal. 4th 906 (2001) .......................................................................6, 7, 8

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (6th Dist. 2001).....................................................7, 8, 9

## STATUTES

CAL. BUS. & PROF. CODE § 17200 .............................................................5, 16

CAL. BUS. & PROF. CODE § 17203 ..................................................................6

CAL. BUS. & PROF. CODE § 17500 ..................................................................6

CAL. CIV. CODE § 1770(a) .........................................................................5, 21

CAL. CIV. CODE § 1780(a) .................................................................................................5

CAL. CIV. CODE § 1782 ....................................................................................................16

MICH. COMP. LAWS § 445.902 .........................................................................................21

MICH. COMP. LAWS § 445.911 .........................................................................................21

MINN. STAT. § 8.31(3a) ...................................................................................................22

N.J. STAT. § 56:8-1 .........................................................................................................10

N.J. STAT. § 56:8-2 .........................................................................................................10

N.J. STAT. § 56:8-19 .......................................................................................................10

O.R.S. § 646.605(4) .......................................................................................................22

O.R.S. § 646.638(1) .......................................................................................................22

TEX. BUS. & COM. CODE § 17.45(4) ...............................................................................22

In response to the Court's request at the August 27, 2007, hearing relating to the Track 2 class certification, Plaintiffs submit this supplemental brief addressing the state law issues flagged by the Court during the hearing.  This submission pertains only to proposed Classes 2 and 3, and only to the three Track 2 Defendants with brand-name drugs at issue – Amgen, Aventis and Watson.

## I.   THE COURT SHOULD CERTIFY A NATIONWIDE CLASS BASED ON THE LAWS OF THE THREE DEFENDANTS' "HOME" STATES

### A.   The Restatement Factors Favor Applying "Home" State Law

In deciding Class 1 certification in Track 1, the Court declined to certify a class based on the laws of the states where the Track 1 Defendants had their principal places of business. Employing Massachusetts' "functional approach" to the choice of law decision and citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS ("RESTATEMENT") § 148, the Court placed the greatest emphasis on where the consumer resided and chose a multi-state approach.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005).[1]  The Court has indicated that a different result may be in order for Classes 2 and 3.  Plaintiffs agree.

In addition to RESTATEMENT § 148, the general factors of RESTATEMENT § 145 also apply.  They are:  (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  *Cosme v. Whitin Mach. Works*, 417 Mass. 643, 646 & n.3 (1994);

---

[1] The factors considered by the Court included:  (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations; (b) the place where the plaintiff received the representations; (c) the place where the defendant made the representations; (d) the domicil, residence, nationality, place of incorporation and place of business of the parties; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.  *Id.* at 83 n.20 (citing RESTATEMENT, § 148 (1971)).

RESTATEMENT § 145(2).  Section 145 disclaims any intent that these factors be rigidly or dogmatically applied:  "These contacts are to be evaluated according to their relative importance with respect to the particular issue."  RESTATEMENT § 145(2); *Cosme*, 417 Mass. at 647 & n.3 (quoting the RESTATEMENT).

"If the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship."  § 145, comment c.  The base of operations for Defendants' illegal activities – including marketing and pricing decisions – is where they are principally located.  *See Cosme*, 417 Mass. at 649 (Massachusetts has dominant interest in applying its law, where the defendant resided in Massachusetts and engaged in the conduct giving rise to plaintiff's injury in Massachusetts).

Section 6 of the RESTATEMENT also demonstrates that home state law should apply.  *See Cosme*, 417 Mass. at 647 (RESTATEMENT § 145 "require[s] an examination of the relevant issue in accordance with the principles provided in § 6 of the RESTATEMENT"); *Dunfey v. Roger Williams Univ.*, 824 F. Supp. 18, 20 (D. Mass. 1993) (applying § 188 and § 6 in contract-based dispute).  Section 6, incorporated by reference into RESTATEMENT §§ 145 and 188, sets forth a fundamental cannon of choice of law analysis:  the goal of achieving "certainty, predictability, and uniformity of result."  RESTATEMENT §§ 6(2)(f), 145, 188.[2]

---

[2] As the comments to § 148(2) make clear, the general and overriding principles embodied in § 6 of the RESTATEMENT take precedence over subsequent sections.  The relative importance of contacts enumerated in § 148(2) "should be determined in the light of the choice-of-law principles stated in § 6 with emphasis upon the purpose sought to be achieved by the relevant tort rules of the potentially interested states, the particular issue and the tort involved."  *See* Comment *e*.  This is only logical because § 6, appearing in the Introductory chapter of the RESTATEMENT and titled "Choice-of-Law Principles," provides the overriding principles that govern all succeeding sections.  Similarly, § 145 sets forth "The General Principle" that applies to all wrongs organized in Chapter 7 of the RESTATEMENT.

Applying home state law here best facilitates certain, predictable, and uniform resolution of the claims asserted.  Indeed, the Defendants' own interests in certainty, predictability and uniformity are best served by applying the law of their home state, where they chose to center their operations, and is the nexus for the misconduct underlying this lawsuit.  Additionally, Defendants have every reason to expect that the law of their home states, where they maintain their headquarters and principal places of business, governs their conduct.  *See* RESTATEMENT § 6(d) (courts may consider "the protection of justified expectations" in resolving choice of law issues).  Moreover, applying home state law facilitates class certification, thereby ensuring a certain and uniform result for all Plaintiffs and Class members.

Additional factors set forth in RESTATEMENT § 6 also militate in favor of applying home state law.  These include "the relevant policies of other interested states and the relative interests of those states," and the "ease in the determination and application of the law to be applied." RESTATEMENT §§ 6(c), (g).  It is a fundamental policy of every state to protect its citizens from the alleged wrongdoing.  But a state's generalized interest in protecting its citizens is insufficient to outweigh another state's superior interest – such as that of each home state here – in regulating the conduct of resident defendants whose actions affect others both within and outside that state's border.  *Romani v. Cramer, Inc.*, 992 F. Supp. 74, 79 (D. Mass. 1998).  This approach was also adopted by the Court in *In re Bendectin Litig.*, 857 F.2d 290, 303-05 (6th Cir. 1988), where the court approved use of the defendants' home state law as a more logical result than the law of plaintiff's domicile which may be transitory:

> We, however, see the law of the state of manufacture of the
> product as being more significant in this type of case than that of
> the state where an individual plaintiff happens to live.  Merrell
> Dow manufactured and distributed a uniform drug internationally.
> The company issued a uniform set of warnings and instructions for
> use.  The regulations governing the labeling, research, and

> distribution of the drug were governed either by Ohio law or by the
> federal Food, Drug and Cosmetic Act.  Standards against which
> defendant's wrongful or negligent conduct may be measured are
> also set by Ohio and federal law.

The *Bendectin* logic applies here where each home state has a significant interest in regulating corporate acts that originate in its state.

Amgen and Watson have their principal places of business in California.  Aventis's principal place of business is New Jersey.  Both of these states strongly favor the application of their state laws to regulate the conduct of businesses within the state such that out-of-state plaintiffs have the protection of California and New Jersey law.

**B.    Application of "Home" State Law Comports With Judicial Efficiency And The MDL Process**

The application of the law of the defendant corporation's home state also serves the interests of judicial economy and fairness under the current regime of the Class Action Fairness Act ("CAFA") and the MDL process.  Pre-CAFA there would be multiple cases pending in various state courts.  Each of these would be certified on a state-by-state basis.  Now under CAFA, the cases wind up in federal court and then are consolidated in one federal court pursuant to the MDL process.  Defendants now claim, as they do here, that the court must apply the law of the 50 states and that doing so makes the case unmanageable for certification purposes.  So classes that would have been certified on a one-state basis now purportedly cannot be.  These manageability problems disappear if the home state law is applied, thus making sure that class actions involving multiple states or a nationwide scheme can proceed as a class as they should when they involve a common issue that impacts thousands of persons or entities.

C.     **California Law Should Apply To All Class Claims Against Defendants Amgen And Watson**

1.     **California Law Claims**

Plaintiffs bring claims under three California statutes:  (i) the California Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1770(a), *et seq.*; (ii) the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200; and (iii) prohibitions against false advertising, CAL. BUS. & PROF. CODE § 17200.

The CLRA prohibits unfair or deceptive acts or practices, which include representing that goods have characteristics which they do not have; representing that goods are of a particular standard if they are of another; advertising goods with intent not to sell them as advertised; and making false or misleading statements of fact concerning existence or amounts of price reductions.  CAL. CIV. CODE § 1770(a).  Actual and punitive damages are recoverable.  CAL. CIV. CODE § 1780(a).

The Unfair Competition Law, or "UCL," broadly prohibits "unlawful, unfair or fraudulent" business acts or practices.[3]  "Unlawful" refers to practices that are forbidden by law. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal. 4th 553, 559-60 (1998) (holding that plaintiff stated cause of action under UCL's unlawful prong for defendant's alleged sale of cigarettes to minors in violation of Penal Code section 308).  "Unfair" is determined under either the "*Cel-Tech*" test or a balancing test.  Under the decision in *Cel-Tech. Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999), conduct is "unfair" if it "threatens an incipient violation of a [] law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Id.* at 186-87.  An alternative test for unfairness is to assess

---

[3] There is no right to a jury trial under the UCL.  *See, e.g., Okura & Co. v. Careau Group*, 783 F. Supp. 482, 491 (C.D. Cal. 1991).

whether the "[p]ractice offends an established public policy" or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the "gravity of the harm to the victim outweighs the utility of the defendant's conduct." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268-69 (4th Dist. 2006). Omissions can be unfair under either test, *see Pastoria v. Nationwide Ins.,* 112 Cal. App. 4th 1490, 1498 (2d Dist. 2003), and this prong of the UCL is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (2d Dist. 1996).

A business act or practice is "fraudulent" if members of the public are likely to be deceived. *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 49 (2d Dist. 2005). A violation of the UCL can be shown even in the absence of actual deception, reasonable reliance and damage. *Id.* Under the UCL, the court may "make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." CAL. BUS. & PROF. CODE § 17203.

CAL. BUS. & PROF. CODE § 17500 prohibits false and misleading advertising. Its remedial provisions are governed by the UCL.

### 2. The Court Should Apply California Law to the Nationwide Claims of Class Members against Amgen and Watson

Absent a choice of law provision (and one does not exist here), a forum state may constitutionally apply its own law to the claims of nonresident class members if the state has a "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum's] law is not arbitrary or unfair." *Washington Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-822 (1985)).

Accordingly, once the class action proponent demonstrates the requisite significant contacts with California, the burden shifts to the party opposing certification to demonstrate that foreign law, rather than California law, should apply to class claims. *Id.*

As a matter of law, a sufficient aggregate of contacts exists if the defendant does business in California, has its principal office there, a significant number of class members are California residents, and/or the conduct giving rise to the claims emanated from California. *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (4th Dist. 1987). Consequently, California courts have routinely applied California's consumer protection laws to out-of-state residents. *See*, *e.g.*, *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (6th Dist. 2001) (decision made in California corporate headquarters to deny class members benefit of contract supports application of California law); *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 317-18 (1976) (Defendant who advertises and solicits business in California is subject to California law); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (4th Dist. 1999) (UCL provides a remedy to non-California residents for unfair business practices that occur entirely outside California); *Shields v. Singleton*, 15 Cal. App. 4th 1611 (2d Dist. 1993) (California law applied to shareholder derivative lawsuit on behalf of company whose headquarters and substantially all of its business were within California); *In re Title U.S.A. Ins. Corp.*, 36 Cal. App. 4th 363 (4th Dist. 1995) (California law applied to liquidation proceeding of insurer with offices in California).

Here, there should be no question that California has significant contacts to the claims asserted by each member of Classes 2 and 3. Both Amgen and Watson have their headquarters in California. Amgen's principal place of business is at One Amgen Center Drive, Thousand Oaks, California.[4] Watson's principal place of business is at 311 Bonnie Circle, Corona,

---

[4] *See* http://www.amgen.com/contact_us/amgen_contact.html.

California.[5]  Both companies do substantial business in California, and, given the substantial size of both California's economy and population, a substantial number of Class members reside there.[6]

The burden now shifts to Amgen and Watson to demonstrate that the law of the other states should trump California law here.  To do this, they must establish the following three elements:  (i) potentially concerned states have different laws; (ii) each of those states has an interest in having its law applied to the case; and (iii) if the first two elements are present (such that a "true" conflict exists), other states' interests would be impaired if their policies were subordinated to the policy of California such that their interests should outweigh California's interests.  *Washington Mut. Bank*, 24 Cal. 4th at 924; *Clothesrigger*, 191 Cal. App. 3d at 609.  These defendants will not be able to shoulder this burden.

Other states' unfair and deceptive trade practice laws do not differ materially from those here.  For instance, "[s]tate consumer protection laws are relatively homogeneous:  'the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims' and do not preclude certification of a nationwide settlement class.'"  *Wershba*, 91 Cal. App. 4th at 244 (quoting *Hanlon v. Chrysler*, 150 F.3d at 1022-23)).

Even if Amgen and Watson could show that the consumer protection laws in other states differ in material respects from corollary California law, they still could not demonstrate that the interests under-pinning the out-of-state laws ***outweigh*** California's interest.[7]  "California's

---

[5] *See* http://www.watson.com/contactus.asp.

[6] California has over 36 million residents.  *See* http://quickfacts.census.gov/qfd/states/06000.html.  In 2004, it was the world's sixth largest economy, outranking many countries.  *See* http://www.lao.ca.gov/2004/cal_facts/2004_calfacts_econ.htm.

[7] Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of

consumer protection laws are among the strongest in the country."  *Wershba*, 91 Cal. App. 4th at

242.  Further, "California has a 'clear and substantial interest in preventing fraudulent practices

in this state… [and] a legitimate and compelling interest in preserving a business climate free of

fraud and deceptive practices,' and for that reason has a legitimate interest in 'extending state-

created remedies to out-of-state parties harmed by wrongful conduct occurring in California.'"

*Norwest Mortgage*, 72 Cal. App. 4th at 224 (citing *Diamond Multimedia Sys. Inc. v. Superior

Court*, 19 Cal. 4th 1036, 1063-64 (1999) (applying California securities statute)); *see also J. P.

Morgan & Co., Inc. v. Superior Court*, 113 Cal. App. 4th 195, 221 (4th Dist. 2003) (California

has "an interest in deterring fraudulent conduct by businesses headquartered within its borders

and protecting consumers from fraudulent misrepresentations emanating from California.")

(quotation, citation omitted).

   Thus, in order to satisfy the third "comparative impairment" prong of the choice-of-law

test, Amgen and Watson will have to demonstrate that the class members' home states have

(i) less favorable laws, (ii) an identifiable interest in denying its residents full recovery, and

(iii) that this interest trumps California's interest in providing maximum protection.

*Clothesrigger*, 191 Cal. App. 3d at 616; *see also id.* at 614 (remarking upon "California's interest

in deterring fraudulent conduct by businesses headquartered within its borders and protecting

consumers from fraudulent misrepresentations emanating from California . . . .").  Defendants

will be unable to cite a single consumer protection law from another state that has this effect.

---

the state whose interests would be "more impaired" if its law were not applied.  *Bernhard v. Harrah's Club*, 16 Cal.
3d at 320; *see also Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157, 164-65 (1978).

**D.      New Jersey Law Should Apply To All Class Claims Against Defendant Aventis**

**1.      New Jersey Law Claims**

Plaintiffs bring claims under the New Jersey Consumer Fraud Act ("CFA"), N.J. STAT.

ANN. §§ 56:8-1, *et seq.*  The CFA declares:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing, concealment,
> suppression, or omission of any material fact with intent that others
> rely upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any merchandise or
> real estate . . . whether or not any person has in fact been misled,
> deceived or damaged thereby, is declared to be an unlawful
> practice. . . .

N.J. STAT. § 56:8-2.  "Person" includes a corporation.  N.J. STAT. § 56:8-1(d).  "Sale" includes

"any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or

indirectly to sell, rent or distribute."  N.J. STAT. § 56:8-1(e).  "Unconscionable" implies a "lack

of 'good faith, honesty in fact and observance of fair dealing.'"  *Id*. (quoting *Kugler v. Romain*,

279 A.2d 640 (1971)).

The requirement that knowledge and intent be shown is limited to the concealment,

suppression or omission of any material fact" prong of the statute.  *Fenwick v. Kay Am. Jeep,

Inc.*, 371 A.2d 13, 16 (N.J. 1977).  It is not necessary to show that any person was in fact misled

or deceived; all that is required is that the conduct has the capacity to mislead.  *Cox v. Sears

Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).  Any person who suffers "ascertainable loss of

moneys" as a result of a prohibited act is entitled to recover treble damages.  N.J. STAT. § 56:8-

19; *Cox*, 647 A.2d at 464.

2. **The Court Should Apply New Jersey Law to the Nationwide Claims of Class Members against Aventis**

New Jersey applies "a flexible 'governmental-interest' standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996). This analysis looks to the "connection of the parties to the respective states, the nature of pertinent events that have transpired within each state, and the character of each state's policy preferences relevant to the particular litigation." *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 417 A.2d 488, 492 (1980). "[T]he 'qualitative, not quantitative, nature of the state's contacts ultimately determines whether its law should apply." *D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305, 310 (N.J. 1993) (quoting *Veazey v. Doremus*, 103 N.J. 244, 248, 510 A.2d 1187 (1986)).

In a recent case in which the plaintiffs alleged that drug company Merck committed consumer fraud in marketing and advertising Vioxx thereby causing loss to third-party payors, the New Jersey Court of Appeals upheld the trial court's certification of a nationwide class of TPPs under New Jersey CFA. *International Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136 (N.J. App. Ct. 2006). Employing the flexible governmental interest analysis, the court found that there was sufficient variation in state consumer protection laws to trigger an analysis of the governmental policies underlying the law of each state and how those policies are affected by each state's contact to the litigation and parties. *Id*. at 1147. The court applied the factors set forth in Restatement §§ 6, 145 and 148, noting that "[W]hen the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." *Id*. at 1148 (quoting RESTATEMENT § 145 comment e). In such a case, "the state where the conduct took place may be the state of dominant interest

and thus that of the most significant relationship." *Id.* (quoting RESTATEMENT § 145 comment c).

The court found that the CFA had three main purposes: (i) to compensate the victim; (ii) to punish the wrongdoer through awards of treble damages; and (iii) to attract competent counsel "to counteract the community scourge of fraud." *Id.* at 1143 (quoting *Lettenmaier v. Lube Conn.*, 741 A.2d 591 (1999)). Thus, the court explained, the CFA seeks "not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar fraudulent practices." *Id.* (quoting *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435 (2004)). The CFA is intended to be one of the strongest consumer protection laws in the country, and there is "little doubt" that the legislature intended the Act to apply to conduct of New Jersey sellers even if the plaintiff is an out-of-state resident and some aspect of the transaction occurred outside of New Jersey. *Id.*

The court found that New Jersey's contacts were "both extensive and weighty." *Id.* at 1148. Among other things, Merck was located in New Jersey, and the activities giving rise to the Plaintiffs' claims, including the alleged misrepresentations, originated in New Jersey. *Id.* at 1148-49. Although the various class members made reimbursements for Vioxx in other states, the court found that the TPPs largely had no choice but to pay the reimbursements since "[t]he prescription process was controlled by health care providers who are not part of this litigation." *Id.* at 1149.[8] Thus, even though Merck "sent representatives and various communications from New Jersey, and perhaps elsewhere, to the states of various third-party payors," the focus of the fraud was still on the New Jersey headquarters, and New Jersey still had a paramount interest in enforcing its law. *Id.* As the court summarized:

---

[8] This is analogous to this Court's finding in the AWP trial that "defendants knew that neither the government nor the TPPs could do much to change the AWP reimbursement benchmark because they were locked into the nationwide reimbursement scheme established by statute or contract." Trial Ruling at 144-45.

> New Jersey's interests in this litigation, in our opinion, far outweigh the interests of all other states.  All consumer fraud laws in the nation are designed to protect consumers to some degree.  "Their differences do not represent competing or conflicting resolutions of a particular policy issue.  Rather [the laws] reflect a legislative determination to attack the same evil." . . .
>
> This litigation seeks to place no obligations on any other state's businesses.  Instead, third-party payors from other states may be compensated for losses suffered allegedly because of Merck's fraud.  No state has an interest in denying its own citizens recovery while protecting a foreign New Jersey corporation when the conduct at issue took place, to a significant degree, in New Jersey.  "Application of New Jersey law will not undermine [other states'] interest[s] in compensating [their] injured residents because that interest is not actually implicated or compromised by allowing a [consumer fraud] action brought by [non-residents of New Jersey] to proceed against" a New Jersey corporation. . . .  In short, Merck has not established how denying a putative plaintiff relief against a New Jersey corporation would further the concerns of any given state's consumer protection law.

*Id*. (citations omitted).

Notably, the court cited various California decisions cited by Plaintiffs *supra* in Section I.C.2.  *Id.* at 1152-53 (citing *Wershba*, 91 Cal. App 4th 224; *Clothesrigger*, 191 Cal. App. 3d 605).  It also referenced another AWP inflation case involving the drug Lupron, *Clark v. TAP Pharm. Prods., Inc.*, 798 N.E.2d 123 (Ill. App. Ct. 2003).  As the court described *Clark*:

> The Illinois appellate court affirmed certification of a nationwide class of "[a]ll individuals or non-ERISA third-party payor entities in the United States who paid any portion of the 20% co-payment or deductible amount for beneficiaries under the Medicare Part B for Lupron during the period 1993 through the present." . . .
>
> The court noted that "[t]he practical effect of applying Illinois law to the present case is to control conduct within the boundaries of Illinois, namely, the reporting by the defendants, headquartered in Illinois, of a deceptively inflated price for Lupron to uniformly defraud Medicare and its beneficiaries." . . .

*Merck*, 894 A.2d at 1153 (citations omitted).

Employing the foregoing analysis compels the application of the CFA to nationwide classes here.  Aventis's principal place of business in North America is located at 55 Corporate Drive, Bridgewater, New Jersey.  Its U.S. corporate headquarters and research and development facilities are located in New Jersey.  The AWP inflation scheme was hatched and implemented from this headquarters.  Aventis announced price changes, including inflated AWP changes, from New Jersey.  *See, e.g.,* March 20, 2001 memo and price change announcement, from Bridgewater, NJ, attached as Exhibit C, and Redbook Product Verification form, including AWP pricing, from October 2000 directed to Aventis in New Jersey, attached as Exhibit D.

Aventis's Pricing Board, made up of senior executives, met in New Jersey to consider how to further manipulate the prices of its products, including Anzemet.  *See* June 20, 2002 memo attached as Exhibit E.  And Aventis worked to conceal the truth and continue its fraud from headquarters in New Jersey.  The best example of this is an August 11, 2000 letter from Aventis's President, Gerald Belle, to Donna Shalala, then Secretary of the Department of Health and Human Services.  In that letter, attached as Exhibit F, Aventis tries to discourage HHS from reducing reimbursement for Anzemet by falsely suggesting that HHS's proposed price was inaccurate and based on old data.  The reality was that HHS's proposed price was accurate, as several Aventis senior executives in New Jersey had discussed less than 2 months earlier.  *See* e-mail chain of June 20, 2000, attached as Exhibit G.  Belle's misleading letter to HHS came from Aventis's headquarters in Parsippany, New Jersey.

The New Jersey CFA affords all class members a liberally-construed remedy for this conduct, and the Court should apply the CFA.

**E.    Defendants' Arguments Will Not Prevail**

Plaintiffs anticipate that the Track 2 Defendants will raise the same arguments invoked by the Track 1 Defendants earlier.  For instance, Defendants will likely rely heavily on *In re*

*Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004), yet – with all due respect to Judge Young – the court erred by misapplying *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002), and otherwise failing to give due consideration to all of the § 6 factors. *Relafen*, 221 F.R.D. at 276-77. *Bridgestone* applied Indiana choice of law rules, but Indiana is one of the last remaining states that still focus on the place where the harm occurred. Massachusetts has explicitly rejected this rule – known as *lex loci delicti* – as being too strict and rigid in application and now uses the "functional analysis" advocated by Plaintiffs in its place. *See Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631-32 (1985). Unfortunately, the *Relafen* court relied heavily, and errantly, upon *Bridgestone* without noticing this crucial distinction – *lex loci* versus the Massachusetts approach – in its choice of law analysis.

The *Relafen* court did mention the "functional choice of law approach," but only fleetingly, 221 F.R.D. at 277-78, and ignored other cases from this District in which the Court applied the law of a defendant's home state where the misconduct emanated from that state. *See Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988). Plaintiffs respectfully submit that the court in *Relafen* should have placed a greater focus on each home state's interest in regulating the conduct of resident defendants whose actions affect consumers nationwide.

The approach that Plaintiffs suggest here is far from novel. Many courts choose to apply the substantive law of the defendant's headquarters or principal place of business to a nationwide class despite variances in state law, as Judge Keeton observed in certifying pendent state law claims on behalf of a nationwide class. *See Randle*, 129 F.R.D. at 393. Judge Keeton's rationale applies with equal force here.[9]

---

[9] *See also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002) ("Where the defendant's headquarters are located in Delaware and the alleged deceptive acts originated in Delaware, it is proper to apply the

Defendants will also argue, as they have previously, that Plaintiffs did not give sufficient pre-suit notice under California law.  As an initial matter, there is no pre-suit notice requirement under two of the three California laws at issue, CAL. BUS. & PROF. CODE § 17200, *et seq.* and 17500, *et seq.*

A plaintiff may initiate proceedings for injunctive or equitable relief under the California Consumer Legal Remedies Act ("CLRA") without pre-suit notice to the defendant.  CAL. CIV. CODE § 1782(d).  For damages, the CLRA requires that, thirty or more days before adding a damages claim, the plaintiff provide written notice of the alleged violation and demand that the defendant rectify the violation.  CAL. CIV. CODE § 1782(a).  Plaintiffs have satisfied this requirement.

To review, the original complaint in this litigation was brought only under federal law. Plaintiffs later amended to allege violations of various state laws, including the CLRA.  This Count was a "composite" one, referencing the various state laws where Defendants had their various headquarters and containing a damages request.  The Court later dismissed the Fourth Amended Complaint on lack of pre-suit demand grounds and provided Plaintiffs with an opportunity to cure.  Plaintiffs did so by, *inter alia*, sending demand letters under various statutes and expressly referencing CAL. CIV. CODE § 1782.  Defendants declined Plaintiffs' demands, and Plaintiffs filed a new complaint called the Fifth Amended Complaint.  Thus, the pre-suit demand requirements of the CLRA have been satisfied for California just as they have for Massachusetts, *i.e.*, plaintiffs cured any previous defect.

---

Delaware consumer fraud statute to a nationwide class."), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *Grace v. Perception Tech. Corp.*, 128 F.R.D. at 171 (application of Massachusetts law proper because defendants were headquartered in Massachusetts, and the alleged misrepresentations emanated from Massachusetts); *In re Bendectin Litig.*, 857 F.2d at 303-05 (applying Ohio law to plaintiffs nationwide based on the location of defendant's principal place of business); *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, 2004 U.S. Dist. Lexis 7789, at *15-16 (D. Minn. Apr. 28, 2004) (certifying nationwide class under Minnesota Consumer Fraud Act where defendant was headquartered in Minnesota, and misrepresentations at issue were made from those headquarters).

Although some courts strictly construe the demand requirements before adding damages claims, including *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005) (cited by Defendants), at least one California court has held that Section 1780(d) suggests that it is inappropriate to dismiss a CLRA claim with prejudice where the plaintiff fails to comply with Section 1782.  In *Deitz v. Comcast Corp.*, 2006 U.S. Dist. Lexis 94333, at *15-16 (N.D. Cal. Dec. 21, 2006), the court explained:

> The Court is aware that Judge Sabraw of the Southern District of California has dismissed a Section 1782 claim with prejudice where the complaint requested damages prematurely.  *See Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181 (S.D. Cal. 2005).  The undersigned believes this draconian sanction is unwarranted.  Given that the legislature specifically contemplated that an action seeking injunctions can be amended to include a damages claim after the thirty days have run, the goal of the legislature would best be served by allowing amendment in the circumstances of this case.

*See also Kennedy v. Natural Balance Pet Foods, Inc.*, 2007 U.S. Dist. Lexis 57766, at *7-8 (S.D. Cal. Aug. 7, 2007) (noting split in California courts of whether Section 1782 requires dismissal with or without prejudice).

*Deitz* supports Plaintiffs' maintenance of the CLRA damages claim, especially given the facts that (i) the original CLRA count was part of a composite claim involving statutes that did not contain pre-suit demand provisions; (ii) Plaintiffs did ultimately give the required demand under the CLRA and waited 30 days prior to seeking leave to file the Fifth Amended Complaint; (iii) every Defendant in this litigation has been well acquainted with Plaintiffs' claims for relief for years; and (iv) no Defendant in this litigation has ever elected to cure the alleged law violations in response to a demand letter, including the Track 2 Defendants in response to the letter sent to them prior to moving for permission to file the Fifth Amended Complaint.  In light of the foregoing, it is a farce to believe that Defendants' behavior would have been different –

- 17 -

that is, they would have willingly agreed to pay the damages sought – given the hard line, scorched-earth defense that they have waged in this six-year litigation.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THE CLASSES BY APPLYING MULTI-STATE LAW

If the Court elects not to apply Defendants' home state law to a nationwide class, the Court should still certify but take a multi-state approach as it did for Class 1 in Track 1.  In Track 1, the Court certified classes on behalf of consumers in 41 jurisdictions, and these are eligible for inclusion in the Track 2 classes now at issue.[10]  Ohio and Utah should be removed from consideration; due to uniquely onerous elements of those two states' unfair trade practices acts, we have concluded we cannot try class claims under those statutes.  Thus, Plaintiffs seek certification of a 39 jurisdiction class (38 states and the District of Columbia).

### A.    Proposed Jury Instructions And Groupings

Plaintiffs' comprehensive Summary of State Unfair Trade Practice Law, first submitted to the Court in support of proposed jury instructions in association with the AstraZeneca Class 1 trial, is attached as Exhibit A.  This supports certification of a 39 jurisdiction class.  Attached as Exhibit B is a sample set of truncated jury instructions, taken in part from the proposed instructions submitted by Plaintiffs in connection with the BMS Class 1 trial,[11] that Plaintiffs believe encompass all 39 statutes.[12]

First, Plaintiffs propose a broad intent to deceive instruction because, as the Court has already observed, a finding of fraud will also constitute a violation of most state unfair trade

---

[10] The 41 jurisdictions are:  AZ, AR, CA, CO, CT, DE, DC, FL, HI, ID, IL, IN, KS, MD, MA, MI, MN, MO, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VT, WA, WV, WI, and WY. The Court excluded AL, AK, GA, IA, KY, LS, MS, MT, and VA for the reason that their UDTPAs do not permit class actions (respectfully, the Court erred with regard to the Alaska act).

[11] This set is "truncated" in the sense that, for present purposes, Plaintiffs are not repeating instructions relating to fraudulent concealment, statute of limitations and enhanced damages.

[12] The instructions will not apply to claims under the Illinois and Nebraska acts, which require a bench trial on UTDPA claims.  However, they will encompass the Court's deliberations under these two statutes.

practice statutes, and this is confirmed by the state law review in Exhibit A.[13]  The fraud

instruction contains nine elements and encompasses the pattern jury instructions of many states

for fraud or deceit.[14]  It also encompasses RESTATEMENT (SECOND) OF THE LAW OF TORTS, § 525,

which provides:  "One who fraudulently makes a misrepresentation of fact, opinion, intention or

law for the purpose of inducing another to act or to refrain from action in reliance upon it, is

subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable

reliance upon the misrepresentation."  The jury should report their findings on each element,

because, even if the jury does not find that Plaintiffs proved the existence of all nine elements of

common law fraud, a subset of those elements may nonetheless constitute a violation of a state

UDTPA.  For example, reliance is not an element of most UDTPAs, even though Plaintiffs

believe that reliance is manifest here, ***since Plaintiffs and Class members made payments based***

***on AWP***.  Indeed, Plaintiffs request that the Court find as a matter of law that the elements

relating to reliance and reasonable and justifiable reliance are satisfied such that these factors

need not be decided by the jury.[15]

---

[13] A broad fraud instruction will encompass unfair acts or practices statutes (CA, CT, FL, HI, MD, MA, MO, NH, OK, RI, SC, TN, VT, WA, WV, and WY); deceptive acts or practices (AR, CA, CT, FL, HI, ID, KS, MD, MA, MO, NH, NY, ND, OK, RI, SC, TN, VT, WA, WV, and WY); unconscionable acts or practices (AR, ID, NJ, NM and TX); misrepresentations or omissions generally (AZ, AR, DE, DC, KS, MI, MN, MO, NV, NJ, NM, ND, PA, SD, and WV); misrepresentations regarding price (CO, DE, NV, NM, OK, OR, and WY); misrepresentations regarding the characteristics of goods (CA, CO, DE, DC, IN, MI, NV, OR, and PA); misrepresentations regarding the standards of goods (CA, CO, DE, DC, IN, MI, NV, OR, and PA); and false advertising (CA, DE, NV, OR, PA, RI, TX, and WY).  Ancillary findings – such as whether misrepresenting AWP is a misrepresentation of price or of characteristics of goods, for example – can be made by the Court as a matter of law if necessary.

[14] *See* REVISED ARIZONA JURY INSTRUCTIONS (CIVIL), *Commercial Torts* § 24 (4th ed. 2005); CONNECTICUT CIVIL JURY INSTRUCTIONS § 7.19 (April 30, 2002); CALIFORNIA JURY INSTRUCTIONS, CIVIL § 12.31 (9th ed.); DEL. P.J.I. CIV. § 1.6.1 (2000); FLORIDA STANDARD JURY INSTRUCTIONS IN CIVIL CASES § MI 8.1(a); 2-44 ILLINOIS FORMS OF JURY INSTRUCTION § 44.02; 1-31 INDIANA PATTERN JURY INSTRUCTIONS – Civil Instr. 31.63; MARYLAND CIVIL PATTERN JURY INSTRUCTIONS 11:1; MASSACHUSETTS JURY INSTRUCTIONS, CIVIL § 6.1 (1999); 1-22 NEW HAMPSHIRE CIVIL JURY INSTRUCTION § 22.1; OKLAHOMA UNIFORM JURY INSTRUCTIONS – CIVIL § 18.1; PENNSYLVANIA SUGGESTED STANDARD CIVIL JURY INSTRUCTIONS 13.14; 1-8 TENNESSEE CIVIL JURY INSTRUCTIONS 8.35; WASHINGTON PATTERN JURY INSTRUCTIONS, CIVIL 160.01 (5th ed. 2005).

[15] For this reason, Plaintiffs have included proposed findings and instructions relating to the reliance factors as alternative matters only.

Second, Plaintiffs propose a broad instruction each for unfair acts or practices and deceptive acts or practices. The ***unfair*** acts or practices instruction will pertain to Plaintiffs in the following 16 states: California, Connecticut, Florida, Hawaii, Maryland, Massachusetts, Missouri, New Hampshire, Oklahoma, Rhode Island, South Carolina, Tennessee, Vermont, Washington, West Virginia and Wyoming. The ***deceptive*** acts or practices instruction will pertain to Plaintiffs in the following 21 states: Arkansas, California, Connecticut, Florida, Hawaii, Idaho, Kansas, Maryland, Massachusetts, Missouri, New Hampshire, New York, North Dakota, Oklahoma, Rhode Island, South Carolina, Tennessee, Vermont, Washington, West Virginia and Wyoming.

Third, to establish a violation of statutes in Colorado, South Carolina, Washington and West Virginia, the challenged practice must affect the public or the public interest. Plaintiffs believe that the Court should order this as a matter of law (there can be no material issue of fact that the public or public interest is affected – it is). Nonetheless, Plaintiffs include a proposed instruction in case it is needed on this issue.

Fourth, regarding causation, the Court has already recognized that variations in state UDTPA causation standards are not material:

> in this context, where consumers (elderly people with cancer or another serious disease) make a percentage co-payment based on the stated AWP, there is ***no indication that different definitions of reliance and causation will matter*** or cannot be resolved as a matter of law prior to trial. Thus, the common legal and factual issues predominate over the individual ones.

*In re Pharm. Average Wholesale Price Litig.*, 230 F.R.D. 61, 85 (D. Mass. 2005) (emphasis added).

Some states' UDTPAs require a plaintiff to establish proximate causation via proof that the unfair or deceptive practice directly produces the harm and without which the harm would

not occurred.  *See, e.g.,* DEL. P.J. I. CIV. § 21.1 (2000); WASHINGTON PATTERN JURY

INSTRUCTION 310.07.  Other UDTPAs require only that the practice be a substantial factor in

bringing about the damage.  MASS. SUPERIOR CT. CIVIL PRAC. JURY INSTRUCTION § 16.5;

HAWAII CIVIL JURY INSTRUCTIONS, Instruction No. 7.1 (1999).  Defendants' AWP scheme

directly led to overcharges for Subject Drugs thereby causing harm under any of the standards

for proving causation.  For this reason, Plaintiffs' single proposed jury instruction for causation

reflects the strictest causation standard of any of the state UDTPAs that require direct, "but for"

causation.

**B.      Groupings For TPP Claims Under State Statutes**

Just as the Track 1 Defendants did, the Track 2 Defendants will assert that TPPs cannot

bring claims under various UDTPAs.  As before, Defendants will exclude more jurisdictions

than is warranted by law.

In their Memorandum in Opposition to Class Certification, Appendix A, the Track 1

Defendants claimed that the following relevant jurisdictions have statutes that would foreclose

claims by a TPP:  California (CLRA claim only), District of Columbia, Hawaii, Indiana, Kansas,

Maryland, Michigan, Minnesota, Missouri, Oklahoma, Oregon, Pennsylvania, Rhode Island,

Texas, Vermont, and West Virginia.  This list is overbroad.  For the following states, Defendants

are incorrect:

- California:  The CLRA only requires that the transaction at issue be intended to result or does result in the sale or lease of goods to a "consumer."  CAL. CIV. CODE § 1770(a).  Given that the drugs at issue are produced for consumption by consumers, TPPs can avail themselves of the CLRA.

- Michigan:  Although the trade or commerce nexus means the conduct of a business providing goods primarily for personal, family or household purposes, MICH. COMP. LAWS § 445.902(g), drugs clearly falls within the nexus.  Moreover, a "person" who suffers loss may bring an action, MICH. COMP. LAWS § 445.911, and the Act defines "person" to include corporations.  MICH. COMP. LAWS § 445.902(g).  No case law prohibits a corporation from bringing a claim.

- Minnesota:  Any person can bring an action for damages.  MINN. STAT. § 8.31(3a).  No case law prohibits a corporation from bringing a claim, and there is no consumer requirement.

- Oregon.  The statute does not limit recovery to consumers.  Any "person" suffering ascertainable loss is entitled to bring an action.  O.R.S. § 646.638(1).  A "person" includes corporations.  O.R.S. § 646.605(4).  The cases cited by Defendants are inapposite.  *Lamphere Enters., Inc. v. Jiffy Lube Int'l Inc.*, 2003 U.S. Dist. Lexis 16204 (D. Or. Sept. 9, 2003), was a business vs. business case for alleged misrepresentations made in advertising that purportedly interfered with the plaintiffs' business.  It was not a case involving consumer purposes, and the Court did not cite the statute in rendering its decision.  The same is true of Defendants' other case citation, *CollegeNET, Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d 1167 (D. Or. 2001).  It, too, was a competitor vs. competitor case not involving consumer transactions such as the purchase of drugs.

- Texas:  The limit only applies to TPPs with assets equal to or greater than $25 million.  Tex. Bus. & Com. Code § 17.45(4).

- Vermont:  *Ascension Tech. Corp. v. McDonald Inv., Inc.*, 327 F. Supp. 2d 271, 276 (D. Vt. 2003) expressly ruled that corporations, as "persons" covered by the statute, may sue under the consumer act as long as goods or services were not purchased for resale (which, here, they are not; the TPPs make reimbursements for consumer goods).

Thus, only the following states should be carved out of a nationwide Class 2 and the nationwide TPP portion of Class 3:  District of Columbia, Hawaii, Indiana, Kansas, Maryland, Missouri, Oklahoma, Pennsylvania, Rhode Island, Texas (but only to the extent the TPP has assets equal to or greater than $25 million), and West Virginia.

DATED:  August 31, 2007.

By____/s/ Steve W. Berman_____
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 31, 2007, I caused copies of **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF TRACK 2 CLASS CERTIFICATION REGARDING STATE LAW ISSUES** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


  **/s/ Steve W. Berman**
Steve W. Berman