# EXHIBIT 4

```
00001
  1                    IN THE DISTRICT COURT OF
  2                       TRAVIS COUNTY, TEXAS
  3                       201st JUDICIAL DISTRICT
  4
  5    THE STATE OF TEXAS
  6          ex rel.
  7
  8    VEN-A-CARE OF THE
       FLORIDA KEYS, INC.,
  9
                    Plaintiffs,
 10       v.                          Cause No. GV401286
       ABBOTT LABORATORIES,
 11    INC., et al.,

 12                 Defendants.
 13    ~~~~~~~~~~~~~~~~~~~~~~~~~
 14
 15                    VIDEOTAPED DEPOSITION OF
 16                         MATTHEW PERRI
 17                           VOLUME I
 18
                          August 20, 2007
 19                         8:06 a.m.
 20
 21                 1420 Peachtree Street, N.E.
 22                          Suite 800
 23                       Atlanta, Georgia
 24
 25                    Lee Ann Barnes, RPR
```

```
00002
  1                   APPEARANCES OF COUNSEL
  2
  3   On behalf of the State of Texas:
  4   RAYMOND C. WINTER, ESQUIRE
  5   ATTORNEY GENERAL'S OFFICE
  6   STATE OF TEXAS
  7        P.O. Box 12548
  8        300 West 15th Street
  9        Austin, Texas   78711
 10        Telephone:   (512)936-1709
 11        Facsimile:   (512)499-0712
 12        E-mail:   Raymond.Winter@oag.state.tx.us
 13
 14   On behalf of Ven-A-Care of the Florida Keys:
 15   JAMES J. BREEN, ESQUIRE
 16   THE BREEN LAW FIRM
 17        5755 North Point Parkway
 18        Suite 39
 19        Alpharetta, Georgia   30022
 20        Telephone:   (770)740-0008
 21        Facsimile:   (770)740-9109
 22        E-mail: jbreen@breenlaw.com
 23
 24
 25
```

```
00003
  1            APPEARANCES OF COUNSEL (Continued)
  2
  3   On behalf of the United States:
  4   RENEE BROOKER, ESQUIRE
  5   United States Department of Justice
  6        Civil Division
  7        Commercial Litigation Branch
  8        601 D Street, NW
  9        Washington, D.C.   20003
 10        Telephone:   (202)616-37987
 11
 12   On behalf of Abbott Laboratories:
 13   R. CHRISTOPHER COOK, ESQUIRE
 14   HILARY A. RAMSEY, ATTORNEY AT LAW
 15        JONES DAY
 16        51 Louisiana Avenue, N.W.
 17        Washington, D.C.   20001-2113
 18        Telephone:   (202)879-3939
 19        Facsimile:   (202)626-1700
 20        E-mail:   Christophercook@jonesday.com
 21
 22   Also Present:
 23   Keith Neal, Videographer
 24
 25
```

00290

1    opinion is -- is based primarily on my
2    review of the documents that focused
3    heavily on the multisource products.
4         Other products were included that
5    were not necessarily multisource generic
6    products.  I looked through carefully
7    many, many pages of documents where
8    prices for other products were concerned,
9    and in some cases I found and some cases
10   I did not find large discrepancies in the
11   list price.
12        Again, I think that -- it's
13   consistent with what I've been saying,
14   that not all products had list prices
15   that were much higher and created high
16   AWPs.
17        Q.   (By Mr. Cook)  So are you expressing
18   an opinion in this case regarding the purpose
19   for which Abbott set list prices for
20   non-multiple-source drugs?
21             MR. WINTER:  Objection; form.
22             THE WITNESS:  I don't want to
23        exclude them if -- if there are documents
24        I can go to to formulate that opinion.
25             But I do not have a specific

00291

1  recollection of the exact pricing levels
2  for drugs like Depakote and Biaxin and
3  Synthroid presently.
4  Q.  (By Mr. Cook)  What is your
5  opinion -- you may review whatever documents
6  you would like.  What is your opinion
7  regarding the reason for which Abbott reported
8  list prices for its non-multiple-source drugs?
9       MR. BREEN:  Objection; form.
10      THE WITNESS:  I think one reason --
11      and again, I -- I do not have a specific
12      recollection of the levels of these
13      prices as we sit here right now -- but,
14      for example, a product like Biaxin or
15      Synthroid, to leverage the full breadth
16      of your product line, if you make those
17      products even slightly more appealing by
18      virtue of a larger spread or whatever the
19      mechanism you -- you're employing to make
20      them more appealing, that would be a
21      benefit to your ultimate customers.
22      Whether they were benefiting as much
23      as they were on a multisource product, I
24      don't know.  But that would make the full
25      product line more attractive to those

00292

```
 1        customers.
 2              And one of the things we talked
 3        about earlier was that Abbott valued its
 4        ability to market a full product line.
 5        Q.  (By Mr. Cook)  You would agree with
 6   me that your report and its conclusions are
 7   stated in the affirmative; correct?
 8              MR. BREEN:  Objection; form.
 9        Q.  (By Mr. Cook)  Please feel free to
10   refer to the conclusions in your report.
11        A.  Yes, I think that's true.
12        Q.  You don't say what might be;
13   correct?
14        A.  Correct.
15        Q.  So I'm asking:  The opinions in your
16   report, can you tell me the extent to which
17   those opinions apply to non-multiple-source
18   drugs?
19        A.  To the extent that any of those
20   drugs might have had an inflated AWP reported.
21        Q.  Again, your conclusion on page 38
22   contains the expressed opinion that Abbott
23   established, quote, artificially high WACs,
24   list prices, and AWPs to create large spreads,
25   closed quote, and you opine that Abbott
```

00293

1   marketed the spread.

2          My question to you is:  Do those

3   opinions apply to the non-multiple-source

4   drugs at issue in this case?

5          MR. WINTER:  Objection; form.

6          THE WITNESS:  I think I have to

7      answer that, again, the way I just did,

8      is to the extent that those products,

9      when I reviewed the documents, were found

10     to have a large spread, that then that

11     opinion would apply to that -- that

12     product.

13     Q.   (By Mr. Cook)  You testified earlier

14  that it was part of your opinion that you

15  concluded that Abbott reported high list

16  prices, high WACs, and high AWPs; correct?

17     A.   Yes.

18     Q.   For which non-multiple-source drugs

19  did you conclude Abbott reported high WACs,

20  high list prices, and high AWPs?

21     A.   Some of their branded erythromycin

22  products.

23     Q.   Could you please give me a

24  comprehensive list of the non-multiple-source

25  drugs for which you concluded Abbott reported

00294

```
 1   a high WAC, a high list price, or a high AWP?
 2        A.   The best list I can give you right
 3   now would include erythromycin, EDS products,
 4   I think Synthroid.
 5             And the reason I say Synthroid is
 6   because I've seen contract pricing for
 7   Synthroid and am aware that there is a generic
 8   competitor in the marketplace.  So I'm not
 9   sure if you're considering Synthroid or
10   erythromycin a single-source product or not.
11   They -- they are branded products, but there
12   are competitors available.
13             And other than that, I'm going to --
14   I'm going to leave that as my list.
15        Q.   Thank you.
16             A little while ago, we were talking
17   about the spread between high list price, at
18   which a multiple drug may have very few sales,
19   and the lower price, the contract price, at
20   which the vast majority of sales might occur.
21             Do you recall that?
22        A.   Yes.
23        Q.   This is largely the subject of your
24   report; correct?
25        A.   Right.
```