UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL DOCKET NO. 1456<br><br>Civil Action No. 06-CV-11337<br>Lead Case No. 01-CV-12257 |
| _____ THIS DOCUMENT RELATES TO: *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc., et al., v. Abbott Laboratories, Inc., et al.* | ) ) ) ) | Judge Patti B. Saris<br><br>Magistrate Judge Marianne B. Bowler |

### DEFENDANT ABBOTT LABORATORIES INC.'S
### RESPONSE TO THE UNITED STATES' OBJECTIONS TO JULY 19, 2007 ORDER
### BY MAGISTRATE JUDGE BOWLER

A series of rulings by Magistrate Judge Bowler, dating back to March through May 2007, define clear boundaries for permissible discovery against Abbott. The United States never objected to these orders, and they are now the law of the case. Instead, the United States simply served 14 subpoenas to third-parties, including ten Abbott customers and four pharmaceutical industry associations, seeking the very information that that this Court and Magistrate Judge Bowler have ruled that Plaintiffs cannot obtain from Abbott itself.

Because "[d]iscovery against a non-party should not extend beyond" the parameters established for parties, in a ruling dated July 19, 2007, Magistrate Judge Bowler correctly ordered these "third party subpoenas . . . quashed," and "directed" "the United States . . . to narrow the subpoenas." (*See* Dkt. 4483 at 4.) In response, the United States filed the instant Objections to Magistrate Judge Bowler's July 19, 2007 Order. (Dkt. 4622.) These objections, however, are little more than a thinly-disguised collateral attack on (or untimely objection to) Magistrate Judge Bowler's prior orders setting the parameters of discovery. It is far too late to challenge those orders. And even if that jurisdictional defect could be overlooked (and it cannot), the United States' complaints about the discovery parameters in this case are not only meritless,

they are hypocritical – since the United States would limit Abbott to the same "rigid[]" rules by which the United States itself refuses to abide. (*Id.* at 1.)

For these reasons, as set forth more fully below, the United States' objections should be overruled, and Magistrate Judge Bowler's July 19, 2007 Order quashing the 14 third-party subpoenas should be sustained.[1]

## BACKGROUND

### A. Magistrate Judge Bowler Set The Appropriate Boundaries For Party Discovery Consistent With This Court's Directives.

This *qui tam* suit, in which the United States has now intervened, concerns only four drugs (dextrose solutions, sodium chloride solutions, sterile water, and vancomycin)[2] over a limited time frame – January 1, 1991 to April 30, 2001. (Dkt. 4281 ¶ 110; *see also* Dkt. 4622 at 13 (admitting that "damages are not alleged past 2001 at this time").) All of these drugs were marketed and sold by Abbott's former Hospital Products Division ("HPD").

Throughout this protracted litigation, the Government has consistently refused to acknowledge that its entitlement to discovery is limited to the scope of the allegations in its complaint. Instead, the Government has claimed that it is entitled to discovery on *all* Abbott drugs, even those manufactured by entirely separate divisions of Abbott, over an unlimited time frame, including present-day. The Government has also demanded documents pertaining to non-

---

[1] Although Abbott believes that this Court should affirm Magistrate Judge Bowler's July 19, 2007 Order, Abbott does request that the Court clarify that the order had the effect of quashing the subpoenas entirely, with leave to serve new, narrower subpoenas. Because Magistrate Judge Bowler indicated that production *could* continue as to documents that third parties had agreed to produce by the date of the order, (Dkt. 4244 at 4) the United States has erroneously represented to the third parties that they are *required* to produce whatever they had contemplating producing prior to the issuance of that order – essentially rendering that order a nullity. This Court's clarification that there is no such requirement is therefore needed.

[2] Although the United States claims to have amended its complaint to include a fifth drug, acyclovir, the United States failed to seek leave to add that drug – nor is there any basis to grant such leave. For these reasons, as set out more fully in Abbott Laboratories' Motion to Dismiss or Partially Dismiss the United States' Amended Complaint (Dkt. No. 4469), acyclovir is not properly in this case, nor should it be.

party TAP Pharmaceutical Products Inc. ("TAP"), under the theory that Abbott's ownership interest in TAP (a joint venture between Abbott and Takeda Pharmaceutical Company Ltd.) make TAP's actions relevant to the instant suit.

This Court clearly rejected these positions during a hearing on February 27, 2007. (*See* 2/27/2007 Hr'g Tr. (attached as Ex. A) at 9, 15, 29 ("You're not entitled to documents on any single drug if you haven't charged it. . . . [N]either can you use a lawsuit as a fishing expedition for ten more drugs that you're interested in. . . . [W]hat you can't use the discovery for is to get another fifteen drugs. . . . I'm not simply going to say you're across the board entitled to every document they produced in every suit, even if it involves drugs that have nothing to do with yours.").) Further, the Court confirmed, consistent with other rulings in this MDL, that any post-2003 documents are not relevant to this dispute. (*Id.* at 19 (indicating that 2003 is the last possible potentially relevant discovery date, because by that time "the whole world knew about inflated AWPs. . .").)

Magistrate Judge Bowler's discovery rulings have followed this Court's guidance. For instance, the United States tried to end-run this Court's February instructions in a motion to compel Abbott to produce all documents that it produced in other AWP pricing cases – regardless of drugs implicated or timeframe. In that motion, the Government argued that Abbott's relevance objections regarding drugs and time frame were unfounded, and that the production would not unduly burden Abbott. (Dkt. 3530.) Then, as now, Abbott had already agreed to produce (1) all documents that mention the four drugs that are the subject of the DOJ complaint; (2) all documents that relate to those drugs, including "general sales and across the board marketing information"; (3) all documents that reflect any alleged effort on Abbott's part to market the spread or manipulate the published AWPs for any drug within Abbott's HPD; and

- 3 -

(4) all documents that could arguably show a pattern or practice of such conduct, regardless of drug or division.  (Dkt. 4244 at 2.)  Nevertheless, the Government claimed, as it does now, that it was entitled to even more.

Magistrate Judge Bowler, however, would have none of it; she followed this Court's directives.  By order dated May 22, 2007, she rejected the Government's position and confirmed that Abbott's discovery obligations in this action did not extend to documents relating exclusively to drugs that are not named in the Government's complaint.  (Dkt. 4244 at 1-3.)  She also made clear, again consistent with this Court's statements from the bench, that Abbott's discovery obligations did not extend to any documents created after 2003.  (*Id.* at 2.)  She therefore denied the Government's motion to compel such documents on relevance grounds.  (*Id.* at 2-3.)[3]

### B. Rather Than Object To Magistrate Judge Bowler's Rulings, The United States Attempted To End Run Them Through Third-Party Discovery.

Under Federal Rule of Civil Procedure 72(a) and this Court's Rule 2(b) of the Rules for the United States Magistrate Judges, a losing party has 10 days to object to a magistrate judge's order.  The United States did not object to Magistrate Judge Bowler's discovery rulings setting the limits for party discovery.  Thus, the United States "may not . . . assign as error a defect in" any of these orders.  FED. R. CIV. P. 72(a); D. Mass. Mag. J. L.R. 2(b).

Rather than objecting to Magistrate Judge Bowler's rulings, the United States  attempted by sidestep them by issuing subpoenas to fourteen third parties, including ten former customers of Abbott and four industry associations.[4]  These subpoenas seek information extending far

---

[3] Magistrate Judge Bowler also confirmed at a March 16, 2007 hearing that the Government was not entitled to discovery relating to non-party TAP.  (3/16/2007 Hr'g Tr. (attached as Ex. B) at I-62.)

[4] The ten subpoenaed third-party customers are Apria Healthcare, Chartwell Home Care, Coram Health Care, Florida Infusion Services, Gerimed, Inc., Lincare Holdings, Inc. (later re-issued to Lincare, Inc. with the same compliance date), Managed Health Care Associates, Inc., Omnicare, Inc., Optioncare, Inc., and Ultra Care, Inc.

beyond the parameters set by Magistrate Judge Bowler. Among other things – and despite this Court's specific admonishment that they are not entitled to such documents – the Government's subpoenas demand documents relating to *any* Abbott drug (not just the 4 drugs at issue). Moreover, the subpoenas seek to compel the production of documents through the present day, despite the fact that the time period alleged in the Government's complaint ends in 2001, and Magistrate Judge Bowler set the discovery cutoff at 2003. They also sought information pertaining to Hospira, Inc. ("Hospira") (which was dismissed from this suit as a defendant, and which was not even created until 2004) and TAP. The United States kept secrets its coversations with these third parties; it was only well after they were served that Abbott learned – through happenstance – the egregious positions that the United States was taking, despite this Court's clear guidance, on the scope of the responding parties' obligations.

> C.  **Abbott, Hospira, and TAP Move To Quash The Subpoenas, And Magistrate Judge Bowler Orders Them Quashed.**

Abbott, along with Hospira and TAP, moved to quash the 14 non-party subpoenas, pointing out the myriad ways in which they sought broader discovery from *non-parties* than this Court and Magistrate Judge Bowler had permitted of *parties*. In her July 19, 2007 Order, Magistrate Judge Bowler ruled that the subpoenas were "overly broad and burdensome," and stated that "the relevance of documents created after 2003, even corrective documents regarding the marketing of the spread and the setting of the [AWP] is . . . highly questionable." (Dkt. 4483 at 3.) Magistrate Judge Bowler then reiterated the discovery parameters of the May 22 Order, and held that discovery against a non-party should not exceed them. (*Id.* at 4.) Thus, Magistrate

---

(continued…)

Plaintiffs issued the subpoenas on March 30, 2007 and set the date for compliance at April 30, 2007. The four industry associations are the American Society of Clinical Oncology, Pharmaceutical Research and Manufacturers of America, and Generic Pharmaceutical Association (all issued April 27, 2007 with a return date of May 30, 2007), and National Home Infusion Association (issued May 11, 2007 with a return date of June 8, 2007).

Judge Bowler quashed the United States' subpoenas, and directed the United States to narrow them consistent with her May 22 Order.  (*Id.*)

### D. The United States Is Still Trying To End-Run The Discovery Limits.

Since the July 19, 2007 Order issued, rather than abide by it (or at least await the outcome of the instant Objections), the United States has persisted in trying to evade both it and the discovery limitations it confirms.  In response to the Government's representation that some parties would actually rather comply with the overbroad subpoenas as written (the Government offered one example, *see* 7/2/2007 Hr'g Tr. (attached as Ex. C) at 49-51), Magistrate Judge Bowler ruled that parties who "have agreed to produce in the future notwithstanding the allegations of irrelevance and confidentiality" could "continue" production.  (Dkt. 4483 at 4.)

Abbott has communicated with several subpoena recipients since then, who have indicated that the Government is now trying to use that language to escape the obvious import of the order.  First, the Government is telling these subpoena recipients that the subpoenas are not, in fact, quashed – despite the clear language of the order.  Second, the Government is telling the receipients that this language means that whatever they were negotiating to produce before the order issued – no matter how burdensome – is now their continued obligation to produce, essentially rendering the order a nullity.

For these reasons, the Government's blithe assertion that "the subpoena recipients have been cooperating with the United States" is deceptive.  (Dkt. 4622 at 3 n.2.)  Of course, if a third party is faced with the choice between "playing nicely" with the DOJ or being sued, the choice is an easy one.  For DOJ to not only ignore the discovery limits, but indeed, use its position to compel improper discovery from non-parties, cannot be countenanced.

**APPLICABLE STANDARD**

Under the Federal Rules of Civil Procedure, a district judge shall only "modify or set aside any portion of the magistrate judge's order" if it is "found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A magistrate judge's order is "clearly erroneous" when, "although there is evidence to support it, the court, after reviewing all the evidence, is left with the definite and firm conviction that the magistrate judge made a mistake." *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 6 (D.R.I. 2004). In conducting its clear error review, the district court must refrain from second-guessing the magistrate judge's pre-trial discovery rulings. *Id.*

**ARGUMENT**

It is only common sense that a non-party's discovery obligations should not exceed those of the parties. *See Grider v. Keystone Health Plan Cent., Inc.*, 2005 WL 2030456,*7 (M.D. Pa. 2005) ("Moreover, in cases where a non-party is the subject of discovery requests, courts may impose broader restrictions."). The Government does not argue to the contrary. Instead, the majority of the Government's objections to the July 19 Order seem to be aimed at general discovery limits that Magistrate Judge Bowler established in the May 22 Order. (Dkt. 4622 at 8-13.) This Court should not even consider these arguments, as they are barred by the Federal Rules of Civil Procedure, this Court's Magistrates' Rules, and the law of the case doctrine. However, even taken at face value, these arguments are not only meritless, but hypocritical.

**I.    THE GOVERNMENT'S OBJECTIONS TO THE DISCOVERY LIMITS ESTABLISHED BY MAGISTRATE JUDGE BOWLER'S PRIOR DISCOVERY ORDERS ARE UNTIMELY AND VIOLATE THE LAW OF THE CASE DOCTRINE.**

**A.    Any Arguments Regarding The General Scope Of Discovery Should Not Be Considered Under Federal Rule Of Civil Procedure 72(A) And This Court's Magistrates' Rule 2(b).**

Under Federal Rule of Civil Procedure 72(a), "[w]ithin 10 days of being served a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." *Id.*; *see also* D. Mass. Mag. J. L.R. 2(b). The substance of the Government's motion is aimed almost exclusively at attacking Magistrate Judge Bowler's prior discovery rulings, most significantly those contained in the May 22, 2007 Order. By not objecting to the May 22 order within 10 days, however, the Government "effectively waiv[ed] objection on that order." *Lowell v. Drummond, Woodsum, & MacMahon Employee Medical Plan*, 2004 WL 1571793 at *5 (D. Me. July 13, 2004); *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1168 (C.D. Cal. 1998); *see also Schartz v. Unified Sch. Dist. No. 512*, 963 F. Supp. 1067, 1070 (D. Kan. 1997) (refusing to consider Plaintiff's "newfound objections" to magistrate judge's order where plaintiff waited to object until after losing subsequent motion).

Moreover, the Government never once argues that any of Magistrate Judge Bowler's discovery rulings are clearly erroneous, a tacit admission that they are not. Indeed, as discussed below, Magistrate Judge Bowler's discovery orders to date are consistent with this Court's prior statements and are correct as a matter of law. Therefore, even if this Court could consider the Government's untimely objections, they do not meet the standards set forth in Rule 72(a).

### B.    Under the Law of The Case Doctrine, The Established Discovery Limits Should Not Be Altered.

Revisiting Magistrate Judge Bowler's prior discovery rulings would also violate the law of the case doctrine. That doctrine provides that " a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation. This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002) (internal citations and quotation marks omitted). This doctrine "affords litigants a high degree of certainty as to what claims are – and are not – still open for adjudication," and "promotes efficiency; a party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay." *Id.* at 647.

As outlined above, both this Court and Magistrate Judge Bowler have clearly indicated to all parties that discovery relating solely to drugs not at issue in the Government's complaint, a company not charged in the complaint, or a time not at issue in the complaint, is inappropriate. These distinctions have been litigated for almost seven months at this point, and each argument that the Government makes in this motion it has made (and lost) before. Allowing the Government to usurp a series of carefully-crafted discovery orders by burdening third parties instead of Abbott should not be permitted.

## II.   EVEN ON THEIR MERITS, THE GOVERNMENT'S ARGUMENTS FAIL.

Even if this Court chooses to consider the merits of the Government's objections to Magistrate Judge Bowler's relevancy rulings (which it need not), the Court should conclude that the objections are meritless. Magistrate Judge Bowler's rulings cannot fairly be characterized as incorrect, let alone clearly erroneous. Indeed, the Government's attempt to evade the discovery

limits that it consistently seeks to impose on Abbott is not only wrong, it is inconsistent with the Government's own express views on the proper scope of discovery.

### A. The Case's Discovery Limits Should Not Be Reconsidered Because They Were Rightly Decided (And Certainly Are Not Clearly Erroneous).

Each objection must be analyzed under the rubric of the Federal Rules of Civil Procedure. Rule 26(b)(1) provides, in relevant part, that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1); s*ee also Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (Under Rule 26(b), "limitations come into existence when the inquiry touches upon the irrelevant"). It is axiomatic that relevancy under Rule 26 turns directly on the claims alleged in the complaint. *See* FED. R. CIV. P. 26(b); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989). Parties to a civil action "have no entitlement to discovery to develop new claims or defenses that are not already included in the pleadings." FED. R. CIV. P. 26(b)(1), Advisory Comm. Note (2000).

#### 1. Discovery Relating to Drugs that Are Not At Issue in the Complaint Is Not Relevant.

The Government's complaint is narrowly drawn to include claims related to *four* drugs only – not every drug Abbott sells. This complaint sets the metes and bounds of permissible discovery in the case, for the Federal Rules could not be more clear in instructing that discovery is limited *only* to those matters that are "relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1); *see also* Advisory Comm. Note (2000) (parties to a civil action "have no entitlement to discovery to develop new claims or defenses that are not already included in the pleadings"). Consistent with Rule 26, this Court also has made clear that the Government "can't have a hundred documents relating to a hundred drugs when you're suing for four." (2/27/2007 Hr'g Tr. at 25.) Magistrate Judge Bowler agreed in her May 22 Order. (Dkt. 4244 at 2.)

The Government attempts to skirt these rulings by arguing that documents regarding other drugs might show a pattern or practice on Abbott's part. That argument fails, because to the extent that documents concerning other drugs establish a "pattern or practice" that is relevant to the Government's four-drug claim, those documents are already considered relevant under Magistrate Judge Bowler's May 22 Order. That order provided that, in addition to any documents relating directly to the products in the complaint, the following documents are also subject to discovery: (1) documents that reflect "general sales and across the board marketing information that would encompass the four charged drugs," (2) "all documents that reflect any alleged effort on the part of Abbott to market the spread or manipulate the published [AWP] for any drug within [HPD]," and (3) "all documents that show a pattern or practice with respect to the four charged drugs." (Dkt. 4244 at 2.) Anything else is a fishing expedition.[5]

According to both this Court and Magistrate Judge Bowler, the Government has no viable argument that documents related solely to drugs it did not mention in its complaint are relevant to its case. There can be no possible justification for forcing *non-parties* (who are entitled to greater protection than parties) to incur the burden of producing such documents. *See Grider v. Keystone Health Plan Cent., Inc.*, 2005 WL 2030456,*7 (M.D. Pa. 2005) ("Moreover, in cases where a non-party is the subject of discover requests, courts may impose broader restrictions, particularly where a non-party is requested to produce documents of another non-party."). The Government therefore has not even come close to showing that the May 22 Order or the July 19 Order were clearly erroneous.

---

[5] The Government spends page after page of its brief arguing about "evidence" concerning drugs on which it has not sued. (Dkt. 4622 at 8-11.) The Government recently tried (futilely) to amend its complaint to include a new drug, acyclovir. That the Government has not charged any of these other drugs indicates that its arguments about them are intended to shed more heat than light on the issues here.

### 2.     Discovery Relating to Abbott Divisions That Never Marketed or Sold the Drugs At Issue In the Complaint Is Not Relevant.

Because documents relating solely to drugs not at issue in the complaint are not relevant, it necessarily follows that documents relating to the divisions that marketed or sold such drugs are also not relevant. Abbott has only one division under which it marketed and sold drugs relevant to the complaint, and that is its former HPD.[6] To the extent the Government seeks discovery of material *exclusively* relating to an altogether different division, the Pharmaceuticals Products Division ("PPD"), and the different drugs made and marketed by that group, it fails to articulate even an arguable basis to receive such discovery.

By way of background, drugs marketed and sold by Abbott's PPD are almost exclusively single-source, self-administered drugs (*e.g.*, branded pills) that are prescribed by a physician to an eligible patient, who then takes the prescription to be filled by a third-party (typically a pharmacist who has no discretion to alter the physician's prescription). Medicare Part B does not cover PPD drugs, and to the extent Medicaid reimburses third-party pharmacists for PPD drugs, such reimbursement occurs only *after* the pharmacist fills the physician's *binding* prescription.

With no basis to contest these differences between HPD and PPD products, the Government nonetheless argues that discovery of material exclusively relating to PPD drugs might lead to evidence of a pattern or practice of Abbott's allegedly fraudulent activity (or at least constitute knowledge) with respect to marketing and selling an alleged "spread" on the drugs at issue in its complaint. (Dkt. No. 4622 at 12.) However, PPD drugs, as single-source, self-administered pills, were *never* reimbursed by Medicare Part B, and were *never* sold, marketed, and/or reimbursed by Medicaid in a way consistent with the Government's alleged scheme. For single-source, self-administering drugs (like Abbott's PPD drugs), it was the *third-*

---

[6] On April 1, 2004, Abbott divested itself of its Hospital Products Division.

*party* pharmacist, rather than the administering physician or hospital, who received reimbursement.

Simply, the Government's theory that Abbott unlawfully marketed a "spread" to its existing and potential customers in an effort to get those customers to administer/use Abbott drugs because of the potential "spread" fails on its face with respect to PPD drugs. Hence, material exclusively relating to PPD drugs could never reap the "pattern or practice" evidence sought by the Government. Accordingly, none of the Government's arguments sufficiently articulate why material exclusively relating to PPD drugs would either be admissible evidence or be reasonably calculated to lead to admissible evidence. Limiting discovery to HPD drugs is only logical—and is certainly not clearly erroneous.

### 3. Discovery Relating to Documents Created After 2003 Is Not Relevant.

The Government's subpoenas are similarly flawed because they are temporally far too broad. Even though its complaint is limited on its face to a time frame of January 1991 through April 2001, the Government demands that the third parties responding to these subpoenas produce materials dating from "January 1, 1990 to the date of your response, and [including] documents relating to such time period even though created before January 1, 1990." (Dkt. No. 4622, Ex. B at 2.) That broad temporal scope cannot be justified.

Discovery beyond 2001, let alone 2003, is unlikely to produce relevant evidence. The claims at issue in this case cut off at April 2001, and the Government's own allegations state that the AWPs at issue declined dramatically after 2001. (*See* Dkt. 4281 ¶¶ 84, 88.) And the Government's own actions show that it could not possibly have been relying upon the pricing-compendia-published AWPs in 2001, when the Government published a list of "true" AWP prices for various drugs, including the Subject Drugs at issue here. (Dep't of Health and Human Serv., Health Care Financing Admin., *Program Memorandum: An Additional Source of Average*

*Wholesale Price Data in Pricing Drugs and Biologicals Covered by the Medicare Program* (Sept. 8, 2000).)

Even so, Abbott has accepted Magistrate Judge Bowler's ruling that an additional two years of evidence after 2001 are discoverable. The relevance of discovery beyond 2003 is, as Magistrate Judge Bowler charitably put it, "highly questionable." (Dkt. 4244 at 2.) Even this Court has noted that discovery beyond that time period is suspect. 2/27/2007 Hr'g Tr. at 19 (indicating that 2003 is the last possible potentially relevant discovery date, because by that time "the whole world knew about inflated AWPs").) There is no way to justify the temporal breadth of the Government's subpoenas to a party, let alone a non-party. *See Briddell v. St. Govain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (relevant information, which is otherwise discoverable, may be limited "temporally" in order to avoid overly broad and unduly burdensome requests); *Grider*, 2005 WL 2030456,*7 (M.D. Pa. 2005). Therefore, the May 22 and July 19 Orders are not clearly erroneous.

### 4. Discovery Relating to Hospira Is Not Relevant.

For similar reasons, it would defy logic to force non-parties to collect and produce information regarding non-party Hospira. Inexplicably, the Government's subpoena defines Hospira, Inc. as an "affiliate" of Abbott, in effect requiring that the recipients produce documents relating to their business relationship with Hospira as well as with Abbott. Yet, Hospira is not a defendant in this case and was not even created until 2004; any information related to it is completely irrelevant here. The Government desperately attempts to shore up the relevance of Hospira-related documents by slinging unfounded accusations that Abbott is not being forthcoming with its search of Hospira's facilities for HPD-related documents. (Dkt. 4622 at 15). But that argument is completely illogical, as the July 19 Order still allows the Government to subpoena relevant (*i.e.* pre-2003) *HPD* documents from third parties. Hospira is not a party to

this litigation, and given that it has only existed since 2004 (three years after the damages period alleged in the Government's complaint ended), there is no basis to permit the Government to force third-parties to produce documents relating to their business transactions with Hospira. It was not clearly erroneous for Magistrate Judge Bowler to forbid the Government from doing so.

### 5. Discovery Relating to TAP is Not Relevant.

Discovery related to non-party TAP is similarly irrelevant. TAP is an independent joint venture of Abbott Laboratories and Takeda Pharmaceutical Company Ltd. TAP has never marketed, produced, or sold the four drugs at issue in this case.

The Government's position on TAP is inconsistent. At one point, the Government contends that "TAP is never mentioned" in the subpoenas. (Dkt. No. 4622 at 4.) Yet later, the Government contends that documents relating to TAP are relevant to this case because: (1) TAP settled a civil claim regarding the marketing of a specific drug, Lupron®; and (2) "some" of the individuals involved in the Lupron® matter "may" also be involved in this case. (*Id.* at 16-17.) Neither argument justifies a burdensome subpoena to a third party.

Information about the TAP litigation and settlement is wholly irrelevant to this case, and the Government's flimsy assertion that both matters involve alleged "spread marketing" does not change that fact. TAP is a separate company, and the allegations in that case related exclusively to Lupron®, a drug not at issue in this case. As this Court has already made clear, the Government is entitled to discovery about the four drugs that it elected to charge in its complaint, but that in no way gives the Government license to conduct a freewheeling fishing expedition into other Abbott drugs, much less those of another company. (2/27/07 Hrg. Tr. at 9).

Moreover, that "some" of the same employees "may" have been involved in both the TAP case and the current case does not suddenly make an irrelevant matter relevant. If the Government truly wishes to know the mindset of those few employees, it may depose them. (In

fact, it already has deposed Virginia Tobiason, the one employee the Government specifically names in its objections.)  That is a far more direct and less burdensome route than attempting to glean motivation from documents in third parties' possession relating to (at best) a tangentially related matter.  The Government's proposed fishing expedition should not be allowed; stopping it was certainly not clear error.

### B.     The Government's Position Is Not Only Wrong, But Hypocritical.

The Government's complaint that the established discovery parameters in this case are too "rigid[]" (Dkt. 4622 at 1) rings especially hollow in light of Plaintiffs' own conduct.  Repeatedly, Abbott has argued, in this fraud case, that what the Government did and thought in purported "reliance" on Abbott must be produced.  At every turn, however, the Government has resisted, trying to tie Abbott to the four drugs in its complaint – in ways that are themselves plainly preposterous.

For example, Abbott is seeking information on how the Government chose to pay what it did in reimbursement for drugs.  It is ludicrous to think that the Government had special thoughts about Abbott; the likely course is that it thought about drug reimbursement generally, and made decisions accordingly.  Nonetheless, the Government has resisted Abbott's discovery, arguing:

> The government's complaint focuses on very specific pricing and marketing conduct related to drugs comprising 45 NDCs and is based on facts uncovered during a fraud investigation. Government documents containing macro-level discussions about the Medicare and Medicaid reimbursement systems for generic drugs between 1991 and 2003 are not relevant to Abbott's defense of the United States' common law fraud claim.

(Dkt. 4076 at 11.)

Similarly, in response to Abbott's interrogatories, Relator Ven-A-Care objected:

> To the extent that these questions and requests are not limited to the specific drugs which are at issue in the latest active pleadings then the requests are inherently unreasonable, vague and unduly burdensome in scope because of the enormous amount of drugs which are the subject of Medicare and Medicaid claims.  The

>responses will be limited to the specific drugs at issue in this litigation referred to in the United States' Complaint.

(Response Of Plaintiff Ven-A-Care Of The Florida Keys, Inc. To Defendant Abbott Laboratories, Inc.'s First Set Of Requests For Production Of Documents And Tangible Things (attached as Ex. D), at 1-2.)  The inconsistency here is palpable.

### III. BECAUSE THE DOCUMENTS LIMITED BY THE JULY 19 ORDER ARE NOT RELEVANT, IT IS UNDULY BURDENSOME TO FORCE NON-PARTIES TO PRODUCE THEM.

The Government's final argument is that Abbott has not met its "burden of demonstrating undue burden to [itself] or a third party . . . through affidavits or record evidence."  (Dkt. 4622 at 7.)  This argument is curious indeed, since the subpoenas are burdensome on their face, requesting information about *any Abbott, TAP, or Hospira drug* for a period of *seventeen years*.

Even worse, the argument conveniently ignores the Government's burden of showing the relevance of the requested discovery.  *Caouette v. Officemax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005) ("The party seeking information in discovery over an adversary's objection has the burden of showing its relevance."); *Daniels v. Am. Power Conversion Corp.*, 2007 WL 539643 at *1 (D.R.I. Feb. 15, 2007) (same).  The Government has not met that burden, so it should hardly be heard to complain that its requests are not unduly burdensome—any burden to collect irrelevant information to which a party is not entitled is undue.  *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (when determining whether a subpoena is unduly burdensome, court should consider factors including relevance and need of the party for the documents).

Finally, this argument fails because the subpoenas impose an undue burden on Abbott itself.  Abbott would have to review the entire production from each of these fourteen third-parties, even though they would largely be duplicative of each other as well as Abbott's ongoing

document production to the Government. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("To the extent that Defendants would be required to incur third party discovery costs that rise to the level of an undue burden for Defendants, Defendants have standing to quash on those grounds."). The Government's "lack of undue burden" argument simply can't turn an impermissibly-broad subpoena into a valid one. Magistrate Judge Bowler's ruling was not incorrect, let alone clearly erroneous.

## CONCLUSION

For all these reasons, the Government's Objections to the July 19, 2007 Order should be overruled. Further, Abbott requests that this Court clarify that the Order quashes the current subpoenas and ends all third parties' obligations until the Government serves them with subpoenas that comply with the previously-established scope of discovery.

Dated: September 5, 2007

Respectfully submitted,

ABBOTT LABORATORIES INC.

By: /s/ Jason G. Winchester

James R. Daly
Tina M. Tabacchi
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on September 5, 2007, the foregoing **DEFENDANT ABBOTT LABORATORIES INC.'S RESPONSE TO THE UNITED STATES' OBJECTIONS TO JULY 19, 2007 ORDER BY MAGISTRATE JUDGE BOWLER** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Brian J. Murray

CHI-1604916v1