## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS. | Judge Patti B. Saris |

### AFFIDAVIT OF GLENN RANDLE

I am Glenn Randle, a citizen and resident of the State of Texas. I have personal knowledge of the facts stated below, would so testify in court if called upon to do so, and am competent to provide testimony.

1.     I serve as a member of the Board of Trustees of the Sheet Metal Workers National Health Fund ("Health Fund") and presently act as Chairman of the Board. I am familiar with the records and documents maintained in the ordinary course of business by the Health Fund, and am familiar with the document governing the operation of the Health Fund. I hereby incorporate my Affidavit of Glenn Randle and its attachments, submitted to this Court on December 17, 2004 in connection with Plaintiffs' Amended Motion for Class Certification, attached hereto as Exhibit 1.

2.     The Health Fund was found to be an adequate class representative for Class 2 in this Court's January 30, 2006 Consolidated Order Re: Motion for Class Certification relating to Track I Defendants. I have been advised that other defendants, referred to as Track II Defendants, include: Abbott, Amgen, Aventis, Baxter, Bayer, Dey Labs, Fujisawa, Gensia (a member of the Sicor Group), Immunex, Pfizer, Pharmacia, Sicor, and Watson.

3.     After first learning of the above-referenced action, the Board of Trustees authorized Fund counsel to survey records of the Health Fund. This search confirmed that the Health Fund made payments on behalf of Massachusetts residents based on AWP for those

single-source and multi-source drugs manufactured by Track II Defendants reflected in the chart attached as Exhibit 2.

5.      Specifically, the Health Fund made payments for single-source drugs purchased by Massachusetts-resident beneficiaries that were manufactured by the following Track II defendants: Amgen, Aventis, Baxter, Fujisawa, Immunex, and Pfizer. *See* Exhibit 2.

6.      SMW Health Fund also made payments for multi-source drugs purchased by Massachusetts-resident beneficiaries that may have been manufactured and sold by the following defendants: Abbot, Baxter, Dey Labs, Fujisawa, Gensia (a member of the Sicor Group), Immunex, Pharmacia, Sicor, and Watson. *See* Exhibit 2.

7.      Attached as Exhibit 3 is a sample of the Health Fund's documentation showing proof of payment for the single-source and multi-source drugs manufactured by Track II Defendants for which the Health Fund has paid reimbursements based on AWP. The complete data set is voluminous; however, all documentation can be made available to the Court if necessary.

I make the foregoing statements under penalty of perjury on the date written next to my name below.

Date: MAY 4, 2006

Glenn Randle

**RANDLE AFFIDAVIT EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE LITIGATION | ) | MDL No. 1456 |
| | ) | |
| | ) | Civil Action 01-CV-12257-PBS |
| | ) | |
| | ) | *Judge Patti B. Saris* |
| THIS DOCUMENT RELATES TO ALL | ) | |
| ACTIONS | ) | |

## AFFIDAVIT OF GLENN RANDLE

I am Glenn Randle, a citizen and resident of the State of Texas. I have personal

knowledge of the facts stated below, would so testify in court if called upon to do so, and am

competent to provide testimony.

　　1.　　I serve as a member of the Board of Trustees of the Sheet Metal Workers National

Health Fund (Heath Fund), and presently act as Chairman of the Board. I am familiar with the

records and documents maintained in the ordinary course of business by the Health Fund, and I

am familiar with documents governing the operation of the Health Fund. I am attaching a true

and accurate copy of the Summary Plan Description which describes a Supplemental Medicare

Wraparound Plus (SMW+) program provided and maintained by the Health Fund.

　　2.　　The SMW+ program is administered as follows. Most Medicare Part B expenses

are subject to an annual Medicare deductible of $100. After the deductible, Medicare pays 80%

of most remaining approved charges. The SMW+ program does not reimburse the $100

deductible, but does provide coverage for the remaining 20% of Medicare-approved charges.

This can include physician-administered drugs and other pharmaceuticals that are covered in the

first instance by Medicare Part B.

3. The Health Fund is a Taft-Hartley trust administered pursuant to the requirements of that act [29 U.S.C. § 186] by an equal number of trustees appointed by labor representatives and union representatives. The Health Fund is also a multiemployer welfare fund subject to the Employee Retirement Income Security Act (ERISA)[29 U.S.C. § 1001 et seq.] and provides the SMW+ program to retirees and their covered beneficiaries, with the retirees having previously worked for an employer associated with the sheet metal industry in the United States. There are over 15,000 retirees and covered beneficiaries who receive benefits under the SMW+ program.

4. I have been advised there is a period of time referred to as the "class period" applicable in the above-referenced civil action, and which commences in approximately 1991 and continues to the present. I have also been advised that some of the defendants were referred to as Track I Defendants and include the following manufacturers: Astra-Zeneca (AZ), Bristol-Myers-Squibb (BMS), Glaxo-Smith-Kline (GSK), and Johnson & Johnson (JJ). During the class period, the Health Fund has paid for portions of pharmaceutical bills that were covered in the first instance by Medicare Part B. Numerous drugs fall into this category. After first learning of the above-referenced action, the Board of Trustees authorized Fund counsel to survey records of the Health Fund to determine some of the drugs which had been paid for by the Health Fund as a portion of pharmaceutical bills that were covered in the first instance by Medicare Part B and had been manufactured by Track I Defendants. The following drugs were identified as having been paid in this category: Cytoxan (BMS), Etopophos (BMS), Kytril (GSK), Levaquin (JJ), Nevelbine (GSK), Paraplatin (BMS), Procrit (JJ), Remicade (JJ), Rubex (BMS), Taxol (BMS), Vepesid (BMS), and Zoladex (AZ). I am certain other drugs have been paid for in similar fashion, and with more time, the Health Fund can determine the names of those drugs.

2

5.      The Health Fund through its Board of Trustees did not learn of the above-referenced civil action until December 9, 2004 when Fund counsel inquired of the Board of Trustees to determine whether a survey of records of the Health Fund should be conducted to identify whether the drugs mentioned in the preceding paragraph had been paid for by the Health Fund.  Having determined the drugs were paid for by the Health Fund, the Board of Trustees has approved involving the Health Fund in the above-referenced civil action either by seeking to intervene as a class representative or to file a civil action on its own behalf.

       I make the foregoing statements under penalty of perjury on the date written next to my name below.

Date: 12-14-04

Glenn Randle



SUPPLEMENTAL MEDICARE WRAPAROUND PLUS (SMW+) PROGRAM OF THE SHEET METAL WORKERS' NATIONAL HEALTH FUND

SUMMARY PLAN DESCRIPTION

EFFECTIVE JANUARY 1, 2003

## BE SURE TO NOTIFY THE FUND OFFICE
## OF YOUR CURRENT ADDRESS

Most information about your Plan and changes to it are sent to you by mail. To ensure that you receive this information, the Fund Office must have your correct address on file at all times.

Included in the rear of this booklet are two change of address forms. If you move, you should complete one of these cards and mail it to the Fund office.

Failure to keep the Fund Office advised of any change in your address may jeopardize your eligibility for benefits because the Trustees may be unable to advise you of any changes in the Plan.

After the attached cards have been used, you may notify the Fund office of a change in address by writing to:

SMW+
P.O. Box 1449
Goodlettsville, Tennessee 37070-1449
Toll-Free Phone: (866) SMW-PLUS
(866-769-7587)
Local Phone: (615) 859-0131

## IDENTIFICATION CARDS AVAILABLE

If you have not previously been furnished with a card identifying you as a participant in the Plan, or if you have lost yours or need additional cards, please contact the Fund office and cards will be mailed to you.

BRANSTETTER KILGORE     Fax:615-255-5419          Dec 14 2004  17:49    P.07

## SMW+ PROGRAM OF THE SHEET METAL WORKERS' NATIONAL HEALTH FUND

To All Retirees and their Covered Beneficiaries:

We are pleased to present to you at this time a revised booklet describing the benefits available under the Supplemental Medicare Wraparound Plus (SMW+) Program of the Sheet Metal Workers' National Health Fund. SMW+ is a voluntary program which can provide supplemental Medicare benefits to you and, if applicable, your eligible spouse and disabled children. Several changes have been made since your last booklet was printed. Please review this booklet very carefully to become familiar with the current eligibility and benefit provisions.

Please remember that there is a claim filing deadline for all benefit claims filed with the Fund office. All such claims must be received by the Fund no later than one year from the date on which the claim is incurred. Remember that it is your responsibility to follow up with your health care providers to ensure that claims are filed with this office on a timely basis.

Change of address forms are inserted in the rear of this booklet. You may use them to inform the Fund office of your new address should you move. If any of the other enrollment information changes, you should contact the Fund office for a new enrollment form.

Please retain this booklet in a place of safekeeping for future reference. Do not hesitate to contact the Fund office with any questions regarding this booklet or any other matter pertaining to your benefits.

Best Regards,

Your Board of Trustees

BRANSTETTER KILGORE      Fax:615-255-5419          Dec 14 2004  17:49   P.08

# INDEX

Fund Administrator - Board of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Summary of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
What is SMW+ Coverage? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Who is Eligible to Participate in SMW+? . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
May I Enroll in SMW+ if I am Covered Under a
    Non-Traditional Medicare Plan? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Is Dependent Coverage Available? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
What About Coverage for my Spouse if I Should Die? . . . . . . . . . . . . . . . . . . 6
How Do I Enroll in SMW+? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
How Do I Pay for this Coverage? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Termination of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
A Word About Medicare. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
What Benefits are Provided by SMW+? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Part A Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Part B Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Excluded Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    Benefits Limited to Allowable Charges . . . . . . . . . . . . . . . . . . . . . . . . . . 11
A Word About Medicare's Outpatient Prospective Payment System . . . . . . . 12
Claims Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Appeal Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Rights of Plan Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Information Required by the Employee Retirement Income Security Act:
    Name of Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Type of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Name and Address of Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . 21
    Type of Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    Collective Bargaining Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    Plan Sponsors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    Source of Contributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    Funding Medium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    Agent for Service of Legal Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    Plan Identification Numbers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    Fiscal Year. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    Termination of Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Additional information:
    This Booklet is Only a Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    The Trustees Interpret the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    The Plan May Be Changed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    Statement of Rights Under the Women's Health and Cancer Rights Act . . 25

## THE SUPPLEMENTAL MEDICARE WRAPAROUND PLUS (SMW+) PROGRAM IS ADMINISTERED BY:

### THE BOARD OF TRUSTEES OF THE
### SHEET METAL WORKERS' NATIONAL HEALTH FUND

### THE TRUSTEES ARE:

**Union Trustees:**

**Mr. Thomas J. Kelly**
General Secretary-Treasurer
Sheet Metal Workers'
    International Association
1750 New York Avenue, N.W.
Sixth Floor
Washington, D.C. 20006

**Mr. Tommy Fuller**
Business Manager
Sheet Metal Workers' Local Union No. 5
112 Hillcrest Drive
P.O. Box 18740
Knoxville, TN 37928-2740

**Mr. John Wilson**
Business Manager
Sheet Metal Workers' Local Union No. 67
130 Ave Del Rey
San Antonio, TX 78216

**Employer Trustees:**

**Mr. Henry A. Keller, Jr.**
Rio Poco
10680 Rio Hermoso
Delray Beach, FL 33446

**Mr. Bill W. King, Jr.**
President
King Mechanical Contractors,
    Incorporated
P.O. Box 16608
Chattanooga, TN 37416

**Mr. Glenn Randle**
President
YPS, Incorporated
P.O. Box 2142
Austin, TX 78768-2142

### ADMINISTRATIVE SERVICES ARE PROVIDED BY:

**Southern Benefit Administrators, Incorporated**
P.O. Box 1449
Goodlettsville, Tennessee 37070-1449
Phone: (615) 859-0131
Toll-Free: (866) SMW-PLUS
Fax: (800) 859-0818

(1)

BRANSTETTER KILGORE    Fax:615-255-5419         Dec 14 2004  17:49    P.10

## SUMMARY OF BENEFITS
## MEDICARE PART A: 2003

| SERVICES | BENEFIT | MEDICARE PAYS | SMW+ PAYS |
|---|---|---|---|
| **HOSPITALIZATION** Semiprivate room and board, general nursing and other hospital services and supplies. | First 60 days | All but $840 deductible | $840 |
| | 61st to 90th day | All but $210 a day | $210 a day |
| | 91st to 150th day[1] | All but $420 a day | Up to $420 a day |
| | Beyond 150 days | $0 | $0 |
| **SKILLED NURSING FACILITY CARE** Semiprivate room and board, skilled nursing and rehabilitative services and other services and supplies.[2] | First 20 days | 100% of approved amount | $0 |
| | Additional 80 days | All but $105.50 a day | Up to $105.50 a day |
| | Additional 265 days | $0 | Up to $211 a day |
| **HOME HEALTH CARE** Part-time or intermittent skilled care, home health aide services, durable medical equipment and supplies and other services. | Unlimited as long as Medicare conditions are met. | 100% of approved amount; 80% of approved amount for durable medical equipment. | Nothing paid under Part A (see Part B). |
| **HOSPICE CARE** Pain relief, symptom management and support services for the terminally ill. | For as long as doctor certifies need. | All but limited costs for outpatient drugs and inpatient respite care. | $0 |

[1] This 60-reserve-days benefit may be used only once in a lifetime.
[2] Neither Medicare nor SMW+ will pay for nursing home care.

NOTE: Unless the Fund office notifies you otherwise, the amounts reimbursed by SMW+ will be adjusted automatically when Medicare deductibles and co-payments are adjusted

## SUMMARY OF BENEFITS
## MEDICARE PART B: 2003

| SERVICES | MEDICARE PAYS (After $100 Deductible) | SMW+ PAYS[1] |
|---|---|---|
| **MEDICAL EXPENSES** Doctors' services, inpatient and outpatient medical and surgical services and supplies, physical and speech therapy, diagnostic tests, durable medical equipment, ambulance services and other services. | 80% of approved amount (except 50% for most outpatient mental health services). | 20% of approved amount (after deductible). |
| **CLINICAL LABORATORY SERVICES** Blood tests, urinalyses, etc. | Generally 100% of approved amount. | $0 |
| **HOME HEALTH CARE** Part-time or intermittent skilled care, home health aides services, durable medical equipment and supplies or other services. | 100% of approved amount; 80% of approved amount for durable medical equipment. | Nothing for services; 20% of approved amount for durable medical equipment (after deductible). |
| **OUTPATIENT HOSPITAL TREATMENT** Services for the diagnosis or treatment of illness or injury. | Medicare payment to hospital based on hospital cost. | 20% of billed amount (after deductible). |
| **BLOOD** | 80% of approved amount starting with 4th pint. | 20% of approved amount (after deductible and starting with 4th pint). |

[1]SMW+ does not reimburse the $100 Medicare Part B annual deductible.

(3)

## WHAT IS SMW+ COVERAGE?

The Supplemental Medicare Wraparound Plus (SMW+) program is designed to offer supplemental health coverage to certain retired or disabled sheet metal workers and their spouses. Participants who qualify must be enrolled for traditional Medicare benefits. This coverage will supplement the coverage provided by Medicare. This means that many of the deductibles and co-insurance amounts that you pay out of your own pocket may be covered under SMW+. This coverage is not designed to supplement non-traditional Medicare + Choice plans, such as Medicare HMOs.

SMW+ provides benefits for Medicare covered hospitalizations and medical and surgical benefits. SMW+ does not provide coverage for prescription drug benefits and other services which are excluded by Medicare. For a complete listing of the benefits and coverages available, please refer to the section of this booklet entitled "What Benefits are Provided by SMW+?".

SMW+ is intended to provide you and, if applicable, your spouse with important protection when illness or injury occurs. This booklet will describe in detail your SMW+ benefits, and how they complement the benefits available under Medicare.

## WHO IS ELIGIBLE TO PARTICIPATE IN SMW+?

If you retire or become disabled, you may participate under the SMW+ program by meeting the following requirements:

1.   You must be eligible for and enrolled in both Parts A and B of Medicare; and

2.   You must be paying the minimum retiree dues to your local union, unless you are ineligible for membership in a local union; and

3.   You must be a member of one of the following categories:

   • Employees who are eligible for benefits under the Sheet Metal Workers' National Health Fund on the date they retire and begin participation under the SMW+ Program; or

   • Employees who qualify for the monthly contribution subsidy offered by the Sheet Metal Workers National Pension Fund; or

   • Employees who qualify for the monthly contribution subsidy offered by the Sheet Metal Workers Local Unions and Councils Pension Fund; or

   • Employees who are enrolled in this program through a health and wel-

fare fund sponsored by a local union under a funding agreement with this Fund; or

- Employees who were enrolled under this program on or before November 1, 1995.

Of course, in order to become and continue to be eligible for these benefits, you must make the appropriate monthly contributions on a timely basis.

## MAY I ENROLL IN SMW+ IF I AM COVERED UNDER A NON-TRADITIONAL MEDICARE PLAN?

The benefits provided under the SMW+ program are offered as a supplement to standard Medicare Part A and Part B benefits. If you are enrolled in a Medicare + Choice Plan, such as a Medicare HMO, or if you change your coverage to such a plan, you are not eligible for SMW+ benefits.

The benefits outlined in this booklet have been structured to supplement traditional Medicare benefits. If you should join a Medicare + Choice plan, please contact the Fund office so that your coverage under this program can be terminated. **If you incur claims and are enrolled under a Medicare + Choice plan, those claims will not be covered under SMW+.**

If you are covered under this Plan and cancel your SMW+ coverage to join a Medicare + Choice plan, you may re-enroll for SMW+ coverage if you return to traditional Medicare coverage. However, you must re-enroll under SMW+ coverage immediately and you will be required to furnish proof of the dates of your Medicare + Choice participation.

## IS DEPENDENT COVERAGE AVAILABLE?

If you are covered under SMW+ , this coverage is also available for your spouse, provided he or she is eligible for and enrolled in both Parts A and B of Medicare. Likewise, if you should die while you are covered under the SMW+ Program, and you have a spouse who is also covered, your surviving spouse may choose to continue this coverage.

A disabled dependent child of an employee will also be eligible to participate in this program. In order for your child to continue coverage under this program, the following requirements must be met:

1. You or your surviving spouse must be participating under this program at the time your dependent child's coverage commences;

(5)

2.  Your child must have become disabled prior to reaching age twenty-two; and

3.  Your child must be eligible for and enrolled under both Parts A and B of Medicare.

Your disabled dependent child will be entitled to continue coverage under this program after your death, or the death of your surviving spouse, provided your child's participation began prior to the death of you or your spouse. Coverage for a disabled child will be provided at no cost.

## WHAT ABOUT COVERAGE FOR MY SPOUSE IF I SHOULD DIE?

If you should die, and you and your spouse are both covered under SMW+ on the date of your death, your spouse may continue coverage under this program. If you have a disabled dependent child who is covered on the date of your death, coverage for that child will also be continued so long as your surviving spouse maintains coverage under the SMW+ program. If you should die, it is important that your spouse notify the health fund office as soon as possible, and furnish the office with a copy of your death certificate. This is important so that the office can arrange for a timely change in the monthly payment amount and make arrangements for any changes in pension check deductions, if such should be necessary.

## HOW DO I ENROLL IN SMW+?

If you, or you and your spouse, meet the requirements outlined above, and you are not already enrolled under the SMW+ program, there are several ways in which you might become covered under this program. If you are covered under the Sheet Metal Workers' National Health Fund on the day you retire, or if you are not covered under the National Health Fund but you qualify for the subsidy from the Sheet Metal Workers National Pension Fund or from the Sheet Metal Workers Local Unions and Councils Pension Plan, you should contact the health fund office at 1-866-SMW-PLUS for an enrollment form. If you do not qualify under the preceding, but your local health and welfare fund has a funding agreement with the National Health Fund, you may enroll for SMW+ coverage by contacting your local fund office. You will be required to complete an enrollment form for the SMW+ Program even if you participate through your local health and welfare fund. If you are not sure whether your health fund has a funding agreement with the National Health Fund, you may contact either health fund office for that information.

(6)

If you are eligible to enroll for SMW+ coverage, you will be required to complete an application form in advance of your retirement. Additionally, you will of course be required to make the appropriate monthly payments to the Fund office.

If you are in a group of participants who are subsidized by the National Pension Fund, or if you receive a monthly pension benefit from that fund, you may qualify for an automatic pension deduction to pay for this benefit. You should contact the National Health Fund office to see whether you qualify for this automatic deduction.

You must enroll under the SMW+ program when you first become eligible to do so, and you must do so on a timely basis. If you enroll and later elect to discontinue your coverage, whether by giving notice or by failing to make a timely monthly contribution, you may not later re-enroll in the program. However, see page 5 for an explanation of what happens if you leave the program to enroll in a Medicare + Choice plan.

## HOW DO I PAY FOR THIS COVERAGE?

As mentioned above, certain retirees may be eligible for an automatic deduction from their National Pension Fund monthly benefit check in order to pay for this coverage. Some categories of participants may also qualify for a subsidy paid by the National Pension Fund or by the Local Unions and Councils Pension Plan. Additionally, some groups of retirees may qualify by making their payments direct to their local health and welfare fund, if that fund has a written agreement with the National Health Fund. All other retirees must make timely monthly payments direct to the Fund.

At the time you enroll for coverage, you will be informed of the monthly cost of the program. This amount is subject to review and periodic adjustment by the trustees of the Sheet Metal Workers' National Health Fund. You will be notified in advance of any changes in the monthly payment amount.

## TERMINATION OF COVERAGE

Coverage under the SMW+ Program, or eligibility to participate under the program, will terminate as follows:

1. Coverage for you and your covered spouse and disabled children will terminate on the date on which you cease to make the appropriate payments to the Fund or on the date you cease to meet the qualifications outlined on pages 4 and 5 of this booklet.

(7)

2.  Coverage for your spouse will cease on the day on which you and your spouse are divorced.

3.  Coverage for your surviving spouse will cease on the day on which he or she remarries.

4.  Coverage for your disabled child will terminate on the date on which the child ceases to be disabled.

5.  Coverage for any covered individual will cease on the date on which the individual ceases to be enrolled for both Parts A and B of Medicare or on the date on which the individual joins a Medicare + Choice Plan.

## A WORD ABOUT MEDICARE

As you know, Medicare is a federal health insurance program for people age sixty-five and older, and for disabled people, which provides coverage for hospital and other medical care. Medicare covers expenses that it considers reasonable and customary for the diagnosis and treatment of an illness or injury. However, it does not pay the full cost of most covered services.

The SMW+ program is designed to supplement this Medicare coverage. Most of the Medicare co-payment amounts and some of the deductible amounts are covered by SMW+. Certain charges processed under Medicare's outpatient prospective payment system may not be paid in full. See page 12.

Part A of Medicare, generally referred to as hospital benefits, is provided to you at no cost, although you must enroll for that coverage. You must also enroll for Part B (medical) coverage and pay a monthly premium for that coverage. For a complete description of your Medicare benefits, please contact your nearest Social Security office.

# WHAT BENEFITS ARE PROVIDED BY SMW+?

SMW+ supplements Medicare benefits. It pays Part A hospital deductible and co-payments, and the Part B 20% co-payments. SMW+ does not provide coverage for the Part B annual deductible. In general, SMW+ provides supplemental coverage for the following types of services:

- hospitalization
- surgery, whether inpatient or outpatient
- anesthesia, whether inpatient or outpatient
- physicians' visits, whether in a hospital, office or home
- ambulance services
- hospital emergency room services
- second surgical opinions
- x-ray and laboratory tests, whether inpatient or outpatient
- skilled nursing facility care
- durable medical equipment

These benefits are described in greater detail in the following sections.

# PART A BENEFITS

Benefits are provided for necessary confinement to a hospital or skilled nursing facility in each benefit period. A benefit period starts when you enter a covered facility and ends 60 days after you are discharged. Benefits are limited to the facility's semi-private room rate unless a private room is medically necessary.

## HOSPITAL BENEFITS

Medicare pays for semi-private room and board, general nursing and other hospital services and supplies. For the first 60 days of a confinement, Medicare pays everything except the per confinement deductible. SMW+ reimburses this deductible in full. For the 61st through the 90th day of a hospitalization, Medicare pays benefits after charging a daily co-payment. SMW+ pays this co-payment in full. Medicare also has a 60 day lifetime reserve for hospitalizations. Medicare pays for these days subject to a daily co-pay. SMW+ pays the co-payment in full. SMW+ makes no payment for days of hospital confinement not covered by Medicare.

(9)

## SKILLED NURSING FACILITY CARE

Medicare pays for skilled nursing facility care provided it is connected with an illness for which you were originally hospitalized, and for which Medicare hospital benefits were payable. For the first 20 days of skilled nursing care, Medicare pays everything in full. For the 21st through 100th day, Medicare pays benefits after charging a daily co-payment. SMW+ pays this co-payment in full. For the 101st day through the 365th day of a confinement, Medicare makes no payment, but SMW+ provides a daily benefit of up to $211. This is the benefit amount in effect during 2002, and the figure is adjusted annually as Medicare benefits are adjusted. SMW+ skilled nursing facility care benefits cease after the 365th day of confinement.

# PART B BENEFITS

Part B of Medicare pays for physicians' services, including services rendered by a surgeon. In addition, necessary ambulance transportation, emergency room care, certain types of durable medical equipment, second surgical opinions, x-ray and laboratory tests, home health care and certain other necessary services are covered. SMW+ provides supplemental coverage for these services.

Most Part B charges are subject to an annual Medicare deductible of $100. After the deductible, Medicare pays 80% of most remaining approved charges. SMW+ does not reimburse the $100 deductible, but does provide coverage for the remaining 20% of Medicare approved charges. Neither Medicare nor SMW+ will provide coverage for charges which are not approved as reasonable and customary by Medicare.

The following services are generally covered by Medicare at 80% after application of the $100 deductible. SMW+ picks up the remaining 20% of approved charges:

- physician charges for medical and surgical treatment, whether on an inpatient or an outpatient basis.
- anesthesia services
- ambulance services for transportation to or from a hospital or skilled nursing facility
- hospital emergency room services
- approved physical and speech therapy
- x-ray and laboratory tests
- approved durable medical equipment

(10)

- second surgical opinions
- blood, beginning with the fourth pint

Outpatient charges incurred in connection with the treatment of a mental illness are generally paid by Medicare at 50% of approved charges rather than at 80%. For such charges, SMW+ reimburses only 20% of the Medicare approved amount. The remainder of those expenses will be your responsibility.

## EXCLUDED CHARGES

SMW+ is designed to supplement your Medicare Part A and part B coverage. Although SMW+ does not pay all of the charges not paid by Medicare, in most cases, it pays all or a significant portion of the approved charges. However, some charges are not covered by SMW+. Charges not covered under SMW+ include:

1. Services and supplies not covered by Medicare as well as charges that exceed the Medicare approved reasonable and customary charge. This means, among other things, that no coverage is provided under SMW+ for take home prescription drugs or most eyeglasses, contact lenses, hearing aids, dental care or other routine charges. To be considered covered under SMW+, a service or supply must also be considered an allowable charge under Part A or Part B of Medicare.

2. Charges submitted past the filing deadline. To be covered under SMW+, each charge must be submitted within 365 days of the date on which it was incurred.

3. Any charges incurred in a nursing care facility when the patient is not actively receiving skilled nursing treatment which can be expected to result in an improvement in the patient's condition.

4. The Medicare Part B deductible. This deductible of $100 per calendar year for Part B benefits is not covered under SMW+.

## BENEFITS LIMITED TO ALLOWABLE CHARGES

The benefits provided under the SMW+ program are based on the allowable charges established by Medicare. Most physicians and other health care providers do not collect charges in excess of the amount allowed under Medicare. However, if your doctor does not accept Medicare assignment, he may actually charge you up to 15% above the Medicare approved charge. Any charges in excess of the approved amount will be excluded from coverage under

(11)

Medicare as well as under the SMW+ program. It is your responsibility to deter-
mine whether your physician accepts Medicare assignment. If he does not, you
should be aware that you may be responsible for a larger portion of your med-
ical expenses.

## A WORD ABOUT MEDICARE'S OUTPATIENT PROSPECTIVE PAYMENT SYSTEM

In the summer of 2000, Medicare began a new payment system for certain out-
patient charges. This new method of processing covered charges is referred to by
Medicare as the Outpatient Prospective Payment System (OPPS). Charges
processed under that system are paid differently than most Part A and Part B
charges. A brief description of the type of charges covered under OPPS is as fol-
lows:

- Some hospital outpatient and preventive services provided in a hospital
  which are covered under Part B of the original Medicare Plan.

- Certain services provided by community mental health centers.

- Certain preventive shots, antigens, casts and splints rendered by home
  health agencies and comprehensive outpatient rehabilitation facilities or
  given to hospice patients for treatment of non-terminal illnesses.

- Certain outpatient services received in a skilled nursing facility.

Medicare does not pay for these services at 80% of the allowed charge. In fact,
it is sometimes difficult to calculate the amount that Medicare has allowed for
these services. However the Fund office will determine a total allowable charge,
and will reimburse 20% of that amount, but only up to the actual outstanding bal-
ance. In some instances, this means that you will be responsible for a portion of
the bill.

(12)

BRANSTETTER KILGORE    Fax:615-255-5419         Dec 14 2004 17:52    P.21

# CLAIMS PROCEDURES

Certain rules and procedures have been established by the Trustees to be followed by you when you incur a claim, as explained below. You are encouraged to become familiar with these rules before you incur a claim which you anticipate will be covered by the Plan.

## PRE-APPROVAL OF A CLAIM

This Fund has no pre-certification or pre-approval requirements for treatments. In addition, there are very few exclusions. Generally, only those charges which are not approved by Medicare are excluded under this plan. If there is any question as to whether your anticipated treatment will be covered under the plan, you may contact the Fund office in advance. Once appropriate information is received, the Fund office staff will let you know whether your expected treatment will be covered under the plan. Again, charges covered by Medicare are generally covered under the plan, and Medicare approval will generally be required before treatment can be considered covered under the plan. If you receive an adverse decision from this plan regarding planned treatment, you may appeal that decision as explained on the following pages.

## THE PLAN'S RESPONSIBILITIES TO RESPOND TO YOUR REQUESTS FOR PRE-APPROVAL

As explained in the preceding section, even though the plan does not have any pre-certification or pre-approval requirements, you may want to request pre-approval of treatment to ensure that it will be covered under the plan. The Fund office staff will respond to all such requests in a timely manner, as outlined below. However, please remember that charges will be covered only if they are approved by Medicare.

1.  Urgent Care Claims – If proposed treatment is determined to be **urgent** in nature, as defined below, a decision on your request for pre-approval will be made and communicated to you within 72 hours of receipt of your request. If it is determined that additional information is necessary to make a decision on your claim, you will be notified of such as soon as possible but in no instance more than 24 hours after receipt of the request. You will then be given not less than 48 hours to provide the required information.

    An **Urgent Care Claim** is a claim which, if treated as a claim for non-urgent care:

    (a)  Could seriously jeopardize the life or health of the claimant or the ability of the claimant to regain maximum function, or

(13)

     (b) In the opinion of a Physician with knowledge of the claimant's medical condition, would subject the claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim.

2.   <u>Non-Urgent Care Claims</u> – If proposed treatment is determined to be of a **non-urgent** nature, a decision on your request for pre-approval will be made and communicated to you within 15 days of receipt of your request. If it is determined that additional information is necessary to make a decision on your claim, the plan may require up to an additional 15 days to make a decision on your request. If such an extension is required, you will be notified within 15 days of receipt of your request regarding the extension and a decision will be made as soon as possible. If the extension is required because it is necessary for you to provide additional information; you will be given at least 45 days to provide the requested information.

These procedures for processing requests for pre-approval of both urgent and non-urgent care claims have been adopted to assure compliance with applicable federal law.

## HOW TO FILE YOUR CLAIMS

Generally, your covered medical expenses must be submitted first to Medicare for their payment. Your doctor or other provider of health care services will usually submit this claim for you. However you are responsible for ensuring that the claim is submitted properly. Once Medicare has processed the claim, you should submit the Explanation of Benefits Form (EOB) that you receive from Medicare to the SMW+ program. Benefits will then be calculated and paid based on that form.

If you wish to assign your benefits directly to a doctor or hospital, you should follow the above procedure, but you must also include a billing from the doctor or hospital which shows your assignment to the health care provider. Without this additional document, the Fund office will not be able to honor an assignment, and will pay the benefits directly to you.

If you fail to include **all** requested information with your claim you will be notified as soon as a determination has been made that requested information is missing, but in no event more than 30 days after the claim was initially received from you.

It is your responsibility to provide the attending physician/surgeon, the hospital and any other medical service providers with information about your coverage under the plan and about their responsibility to file all claims with the Fund

(14)

office. The information necessary for filing claims appears on the identification card which has been provided to you.

## DEADLINE FOR FILING CLAIMS

All claims for benefits under the SMW+ program must be received in the Fund office no later than one year from the date on which the claim is incurred. Claims received past this deadline will not be eligible for benefits. It is important that you follow up with your health care providers to ensure that claims are filed in your behalf in a timely manner.

## PAYMENT OF CLAIMS BY FUND OFFICE

All claims received by the Fund office will be processed for payment as soon as possible. However, no claim can be paid until all information necessary to process the claim has been received.

Once the information required to make a determination as to whether a claim is payable has been received, a decision will be made promptly by the Fund office staff and you will be notified regarding any benefit payments. However, in no event will the decision regarding payment be made more than 30 days after the claim has been fully and properly filed.

If the Fund office determines that additional information is required from you or in your behalf, you will be given 45 days in which to provide any missing information necessary to process the claim.

# APPEAL PROCEDURES

## YOUR RIGHT TO APPEAL AN ADVERSE BENEFIT DETERMINATION

A person whose claim for benefits has been denied under the terms of the plan and to whom a notice of adverse benefit determination has been issued in accordance with the preceding section will have the right to appeal the adverse benefit determination and will be entitled to a full and fair review of the decision by the Board of Trustees, or by a committee appointed by them. The procedures by which you may appeal the adverse benefit determination and receive a full and fair review of the claim are as described below. The procedures will:

1. Provide you at least 180 days following receipt of a notification of an adverse benefit determination in which to appeal the determination;

2. Provide for an independent review by the Board of Trustees, or their committee. The review will not be conducted by the individual who made the

(15)

adverse benefit determination that is the subject of the appeal, nor by the subordinate of such individual; and

3. Provide, in the case of a claim involving urgent care, for an expedited review process under which —

    (a) a request for an expedited appeal of an adverse benefit determination may be submitted orally or in writing by you, and

    (b) all necessary information, including the Plan's benefit determination on review, will be transmitted between the plan and you by telephone, facsimile or other available similarly expeditious method.

## NOTICE OF TRUSTEES' DECISION

The Board of Trustees, or their committee, will review all appeals in accordance with the following and will notify you as indicated:

1. Urgent Care Claims — When the appeal of a claim involving urgent care, as that term is defined on pages 14 and 15 of this booklet, is received as provided by the Plan, a decision on the appeal will be communicated in writing (and otherwise as appropriate) within 72 hours of receipt of your request for review of an adverse benefit determination. Appeals of adverse benefit determinations involving urgent care will be addressed promptly by the Trustees, or their committee, taking into account the urgent nature of the claim, but in no instance will the decision be made later than 72 hours after receipt of your request.

2. Non-Urgent Care Claims — Appeals of adverse benefit determinations received from claimants which are of a non-urgent care nature will be reviewed by the Trustees, or their committee, in accordance with the following guidelines, and notification of the decision will be communicated to you in writing within the time period prescribed:

    (a) Pre-Service Claims — If the appeal involves a request for review of an adverse benefit determination for medical services which have not yet been provided, the Trustees or their committee will make a decision on the appeal and the decision will be communicated in writing to you not later than 30 days after receipt of your request for review.

    (b) Post-Service Claims — If your request for review of an adverse benefit determination involves a claim for medical services which have already been provided, a decision on your appeal will be made by the Trustees or their committee and communicated in writing to you within five days of the decision. The appeal will be reviewed at the meeting of the Trustees or the committee which immediately follows the Plan's receipt

(16)

of a request for review, unless the request for review is filed within 30 days preceding the date of such meeting. In such case, a benefit determination will be made no later than the date of the second meeting following the plan's receipt of the request for review, but in no instance more than 120 days following receipt of the appeal.

3. Notwithstanding the statements set forth above, notice of every appeals determination will be given to you within 5 days of the determination.

## ACCESS TO PLAN DOCUMENTS

At any time during the course of these appeal proceedings you will be granted access to, and copies of, documents, records and other information relied upon by the Trustees or the committee in making their decision, as requested by you.

## NOTIFICATION OF DECISION ON APPEAL

Each person whose adverse benefit determination has been appealed to the Trustees will receive notification in writing, within the time period outlined above, of the Trustees' or the committee's decision. Such notification will set forth, in a manner calculated to be understood by you:

1. The specific reason or reasons for the adverse determination;

2. Reference to the specific plan provisions on which the benefit determination is based;

3. A statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim for benefits;

4. A statement describing any additional voluntary appeal procedures offered by the plan and your right to obtain information about such procedures, should the Board of Trustees adopt such procedures, and a statement of your right to bring an action under section 502(a) of the Employee Retirement Income Security Act of 1974, as amended; and

5. The following information where applicable –

   (a) If an internal rule, guideline, practice or procedure was relied upon in making the adverse determination, a statement that such rule, guideline, practice or procedure was relied upon in making the adverse determination and that a copy of the rule, guideline, practice or procedure will be provided to you free of charge upon request;

   (b) A statement that you and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor

(17)

Office and your State Insurance Regulatory Agency. While the Plan does not currently offer voluntary alternative dispute resolution options to the procedures set forth above, you may contact the local U.S. Department of Labor Office and your State Insurance Regulatory Agency to determine what options might be available to the Plan.

# RIGHTS OF PLAN PARTICIPANTS

As a participant in this Fund you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

## RECEIVE INFORMATION ABOUT YOUR PLAN AND BENEFITS

Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefits Administration.

Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

## PRUDENT ACTIONS BY PLAN FIDUCIARIES

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

## ENFORCE YOUR RIGHTS

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from

(19)

the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

## ASSISTANCE WITH YOUR QUESTIONS

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

(20)

## INFORMATION OF INTEREST AS REQUIRED BY THE
## EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)

You most likely have heard about ERISA. ERISA stands for the Employee Retirement Income Security Act which was signed into law in 1974.

This federal law establishes certain minimum standards for the operation of employee benefit plans including this one. The Trustees of your Plan, in consultation with their professional advisors, have reviewed these standards carefully and have taken whatever steps are necessary to assure full compliance with ERISA.

ERISA requires that plan participants and beneficiaries be provided with certain information about their benefits, how they may qualify for benefits, and the procedure to follow when filing a claim for benefits. This information is presented to you in this booklet.

ERISA also requires that participants and beneficiaries be furnished with certain information about the operation of the Plan and about their rights under the Plan. This information follows:

### NAME OF THIS PLAN

The legal and common name of this Plan is the Sheet Metal Workers' National Health Fund.

### TYPE OF PLAN

This program provides coverage which supplements Medicare benefits. For specific coverage, see the Summary of Benefits section of this booklet.

### NAME AND ADDRESS OF THE PLAN ADMINISTRATOR AS DEFINED BY ERISA

Your Health Plan is maintained and administered by a Board of Trustees on which labor and management are equally represented.

There are currently six Trustees serving on the Board. A list of all the Trustees as of the date this booklet was prepared is contained in the front of this booklet.

This Board has the primary responsibility for decisions regarding eligibility rules, types of benefits, administrative policies, management of Plan assets and interpretation of Plan provisions.

Any communication with the Board of Trustees should be addressed to the Fund Office at:

Board of Trustees
SMW+
P.O. Box 1449
Goodlettsville, Tennessee 37070-1449

## TYPE OF ADMINISTRATION

Although the Trustees are legally designated as the Plan Administrator, they have delegated the performance of the day-to-day administrative duties to a professional Administrative Manager, Southern Benefit Administrators, Incorporated.

The Fund Office staff maintains the eligibility records, accounts for contributions, processes claims, informs participants of Plan changes, and performs other routine administrative functions in accordance with Trustee decisions.

## COLLECTIVE BARGAINING AGREEMENTS

This Plan is maintained pursuant to one or more collective bargaining agreements. Copies of any or all of these agreements will be made available to you for your inspection and a copy of any or all of these agreements may be examined at the Plan Office during normal business hours or at your Local Union Office during normal business hours. If you request a copy of the agreements, a reasonable charge for them will be made by the administrator, the amount of which will be stated to you before you order.

## PLAN SPONSORS

This Plan is maintained under the terms of collective bargaining agreements negotiated by the Union with participating Employers. Employers who sign or become party to an agreement are considered "plan sponsors."

## SOURCE OF CONTRIBUTIONS

The primary source of financing for the benefits provided under the Plan is contributions from employers and participants. A portion of the plan assets are invested and this also produces additional fund income.

(22)

BRANSTETTER KILGORE    Fax:615-255-5419         Dec 14 2004 17:54    P.31

## FUNDING MEDIUM FOR THE ACCUMULATION OF PLAN ASSETS

All contributions and investment earnings are accumulated in a Trust Fund. Benefits are provided by the Trust Fund. Some plan assets are invested, primarily in fixed income vehicles.

## AGENT FOR SERVICE OF LEGAL PROCESS

Every effort will be made by the Trustees of this Plan to resolve any disagreements with participants promptly and equitably. It is recognized, however, that on occasion, some participants may feel that it is necessary for them to take legal action. Be advised that the following has been designated as agent for service of legal process:

Southern Benefit Administrators, Incorporated
P. O. Box 1449
Goodlettsville, Tennessee 37070-1449

Or legal papers may also be served on the Board of Trustees collectively or individually.

## PLAN IDENTIFICATION NUMBERS

When filing various reports with the Department of Labor and the Internal Revenue Service, certain numbers are used to properly identify the Fund including:

Employer Identification Number (EIN)
assigned by the Internal Revenue Service ...........................52-1466749
Plan Number ...............................................................................501

## FISCAL YEAR

The accounting records of this Plan are kept on the basis of a fiscal year which ends on December 31.

## TERMINATION OF FUND

This information regarding the conditions under which the Fund may be terminated, and disposition of the assets of the Fund on termination, are furnished in accordance with Federal Laws and Regulations.

The Fund will be terminated upon the termination of the Trust Agreement establishing the Fund. The Trust Agreement will terminate upon the occurrence of any of the following events:

- In the event the union and employers establishing the Trust agree in writing to terminate the Trust.

- In the event there is no one living who qualifies as an eligible participant.

- In the event the Trust Fund is no longer adequate to carry out the intent and purpose of the Trust Agreement, or to meet the payments due or to become due under the Trust Agreement and Plan to eligible participants and their dependents already drawing benefits.

- In the event of termination as may be otherwise required by law.

In the event of termination, the Trustees will:

- Make provision out of the Trust Fund for the payment of expenses incurred up to the date of termination of the Trust and the expenses incidental to such termination.

- Arrange for a final audit and report of their transactions and accounts, for the purpose of termination of their Trusteeship.

- Apply the Trust Fund to pay any and all obligations of the Trust and distribute and apply any remaining surplus in such manner as will, in their opinion, best effectuate the purposes of the Trust and the requirements of law.

- Give any notices and prepare and file any reports which may be required by law

## ADDITIONAL INFORMATION

### THIS BOOKLET IS ONLY A SUMMARY

Although this booklet contains a great deal of information about your plan, it is not the purpose of this booklet to cover every detail or every situation that might arise under your health plan.

However, there is a complete set of Rules and Regulations which governs the operation and administration of this plan. These Rules and Regulations are set forth in a legal document referred to as the Plan Document.

The Rules and Regulations set forth in the Plan Document are final and binding. Nothing in this booklet is meant to interpret or extend or change in any way the provisions expressed in the Plan Document itself. If there is any difference between the Plan Document and the summary in this booklet, the Plan Document will control.

### THE TRUSTEES INTERPRET THE PLAN

Any interpretation of the plan's provisions rests with the Board of Trustees. However, the Board of Trustees has authorized the Administrative Manager and the Fund office staff to handle routine requests from participants regarding eligibility, benefits, and claims procedures. But, if there are questions involving interpretation of any plan provisions, the Board of Trustees will make a final determination for you. No person other than a Trustee or a member of the Fund office staff, acting with the consent of the full Board of Trustees, may provide interpretations of plan provisions.

### THE PLAN MAY BE CHANGED

The Trustees have the authority to change the provisions of the plan. Although the Trustees expect to maintain benefits, they may make whatever changes are necessary to assure the financial stability of the plan. Any such revisions may include changes in the payment amounts, benefits or categories of eligible participants.

### STATEMENT OF RIGHTS UNDER THE WOMEN'S HEALTH AND CANCER RIGHTS ACT

Under federal law, group health plans and insurance issuers offering group health insurance coverage that includes medical and surgical benefits with respect to a mastectomy shall include medical and surgical benefits for breast reconstructive surgery as part of a mastectomy procedure. Breast reconstructive surgery in con-

(25)

nection with a mastectomy shall at a minimum provide for: (1) reconstruction of the breast on which the mastectomy has been performed; (2) surgery and reconstruction of the other breast to produce a symmetrical appearance; and (3) prostheses and physical complications for all stages of mastectomy, including lymphedemas, in a manner determined in consultation with the attending physician and the patient.

**RANDLE AFFIDAVIT EXHIBIT 2**

## Sheet Metal Workers' National Health Fund
## Summary of Track 2 Drug Coverage

| Manufacturer | Drug | CPT/ HCPC Code | Drug Source |
|---|---|---|---|
| **Abbott** | A-Methapred | J2930 | Multi-Source |
| | Calcijex | J0635, J0636 | Multi-Source |
| | Diazepam | J3360 | Multi-Source |
| | Fentanyl Citrate | J3010 | Multi-Source |
| | Furosemide | J1940 | Multi-Source |
| | Gentamicin | J1580 | Multi-Source |
| | Heparin | J1642, J1644 | Multi-Source |
| | Leucovor Calcium | J0640 | Multi-Source |
| | Vancomycin | J3370 | Multi-Source |
| **Amgen** | Aranesp | J0880 Q0137 Q4054 | Single-Source |
| | Epogen | Q4055 | Single-Source |
| | Neulasta | J2505 | Single-Source |
| | Neupogen | J1440 J1441 | Single-Source |
| **Aventis** | Anzemet | J1260 Q0180 | Single-Source |
| | Taxotere | J9170 | Single-Source |
| **Baxter** | Brevibloc | J3490 | Single-Source |
| | Cisplatin | J9060, J9062 | Single-Source |
| | Doxorubicin | J9000 | Multi-Source |
| | Heparin | J1642, J1644 | Multi-Source |
| | Travasol | J3490 | Multi-Source |
| | Vancocin | J3370 | Multi-Source |
| **Dey Labs** | Albuterol Nebulizer | J7613 | Multi-Source |
| | Ipratropium | J7644 | Multi-Source |
| **Fujisawa** | Aristocort | J3302 | Multi-Source |
| | Aristospan | J3303 | Multi-Source |
| | Lyphocin | J3370 | Multi-Source |
| | Prograf | J7507 | Single-Source |
| | Dexamethasone Sodium | J1100 J7637 J7638 | Multi-Source |
| | Doxorubicin Hydrochloride | J9000 | Multi-Source |
| | Fluorouracil | J9190 | Multi-Source |
| | Gentamicin Sulfate | J1580 | Multi-Source |

| | | | |
|---|---|---|---|
| **Gensia (a member of the Sicor Group)** | Leucovorin Calcium | J0640 | Multi-Source |
| **Immunex** | Leucovor CA Inj | J0640 | Multi-Source |
| | Methotrexate | J8610 J9250 J9260 | Multi-Source |
| | Novatrone | J9293 | Single-Source |
| **Pfizer** | Zithromax | J0456 | Single-Source |
| **Pharmacia** | Adriamycin | J9000 | Multi-Source |
| | Adrucil | J9190 | Multi-Source |
| | Neosar | J8530 J9070 J9080 J9090 J9097 | Multi-Source |
| **Sicor** | Doxorubicin HCl | J9000 | Multi-Source |
| | Leucovorin Calcium | J0640 | Multi-Source |
| **Watson** | Dexamethasone Acetate | J1094 | Multi-Source |
| | Dexamethasone Sodium | J1100 J7637 J7638 | Multi-Source |
| | Diazepam IV | J3360 | Multi-Source |
| | Ferrlecit | J2916 | Multi-Source |
| | Gentamicin | J1580 | Multi-Source |
| | Infed | J1750 | Multi-Source |
| | Vancomycin | J3370 | Multi-Source |