UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Pharmaceutical Industry Average Wholesale Price Litigation | )<br>)<br>)<br>)  MDL No. 1456<br>)  Master File No. 01-12257-PBS |
| This document relates to:<br>STATE OF CALIFORNIA, *ex rel.*<br>VEN-A-CARE OF THE FLORIDA KEYS,<br>INC. | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  (Original Central District of<br>)   California No. 03-CV-2238) |
| ABBOTT LABORATORIES, INC.,<br>*et. al.* | )<br>)<br>) |
| Defendants. | )<br>) |
| CIVIL ACTION NO. 03-11226-PBS | )<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

August 30, 2007

Saris, U.S.D.J.

**INTRODUCTION**

B. Braun of America, Inc. ("BBA") moves pursuant to Fed. R.
Civ. P. 12(b)(2) for dismissal of the First Amended Complaint in
Intervention ("FAC") for lack of personal jurisdiction.  BBA also
moves to dismiss McGaw, Inc., a company that was merged into
BBA's wholly owned subsidiary B. Braun Medical, Inc. ("BBM"),
because it no longer exists as an entity.

As it relates to this defendant, the FAC alleges:

> Defendant McGAW, INC. ("McGAW") was a Delaware corporation with its principal offices in Irvine, California. In 1997, McGAW, INC. was acquired by Defendants B. BRAUN OF AMERICA, INC. and its wholly owned subsidiary, B. BRAUN MEDICAL, INC., both Pennsylvania corporations with their principal offices located in Bethlehem, Pennsylvania. Defendants B. BRAUN OF AMERICA, INC. and B. BRAUN MEDICAL, INC. are part of a global organization, B. Braun Melsungen AG of Germany. Defendants McGAW INC., B. BRAUN OF AMERICA, INC. and B. BRAUN MEDICAL, INC. are referred to herein collectively as "McGAW." At all times material to this action, McGAW transacted business in California by, including but not limited to, selling and distributing its prescription drugs, including those identified in this First Amended Complaint in Intervention, to purchasers within California.

(FAC ¶ 15.)

Twice before, this Court has dismissed BBA from AWP cases for lack of personal jurisdiction. I now do so a third time.

## THE STANDARD

Plaintiff bears the burden of proving the facts necessary to sustain jurisdiction. Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 904 (1st Cir. 1980). To meet the burden of establishing a prima facie showing of personal jurisdiction, the plaintiff may not rely on unsupported allegations in the pleadings. Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); Am. Express Int'l, Inc. v. Mendez-Capellan, 889 F.2d 1175, 1178 (1st Cir. 1989). The parties agree that this Court must apply the law of the transferor Court - California - to determine whether this Court can properly exercise personal

2

jurisdiction over the defendant. Cal. Code Civ. Proc. § 410.10
provides that "[a] court of this state may exercise jurisdiction
on any basis not inconsistent with the Constitution of this state
or of the United States." Analyzing and applying this long arm
statute, courts have remarked that "[t]his is indeed a long arm."
Republic Int'l Corp. v. Amco Eng'rs, Inc., 516 F.2d 161, 167 (9th
Cir. 1975). Nevertheless, the scope of this statute is limited
by the requirements of due process. Id. "The jurisdiction of
the California courts is therefore coextensive with the outer
limits of due process under the state and federal constitutions,
as those limits have been defined by the United States Supreme
Court." Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir.
1974).

    The Constitution permits a state to exercise personal
jurisdiction over a non-resident defendant like BBA if the
defendant has sufficient "minimum contacts" with the forum such
that "maintenance of the suit does not offend traditional notions
of fair play and substantial justice." Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945) (internal quotations and
citations omitted). "The 'substantial connection,' between the
defendant and the forum State necessary for a finding of minimum
contacts must come about by an action of the defendant
purposefully directed toward the forum State." Asahi Metal

3

Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987) (citations omitted).

A nonresident defendant will be subject to the general jurisdiction of California courts where the defendant's contacts are "'substantial...continuous and systematic.'" Vons Cos., Inc. V. Seabest Foods, Inc., 926 P.2d 1085, 1092 (Cal. 1997) (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952)). If the nonresident defendant does not have substantial and systematic contacts with the forum state to warrant the exercise of general personal jurisdiction, the defendant may be subject to specific personal jurisdiction if (1) "the defendant has purposefully availed himself or herself of forum benefits," (2) "the controversy is related to or arises out of [the] defendant's contacts with the forum," and (3) the exercise of jurisdiction would comport with notions of fair play and substantial justice. Pavlovich v. Superior Court, 127 Cal. Rptr. 2d 329, 335 (Cal. 2002) (citations omitted); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

## DISCUSSION

Plaintiff argues that this Court can exercise jurisdiction over BBA for three reasons. First, it contends that this Court can exert specific personal jurisdiction over defendant because BBA allegedly purchased McGaw. Second, plaintiff suggests that the Court has jurisdiction over BBA given its principal-agent

4

relationship with BBM. Finally, plaintiff argues that BBA's actions have had substantial effects within California. Each argument will be addressed separately.

## A.   **Purchase of McGaw**

The parties agree that McGaw, when it was still in existence, manufactured and marketed drugs that were sold in California and for which California reimbursed Medi-Cal users. These drug sales, which are at the heart of the FAC, would permit this Court to exercise personal jurisdiction over McGaw, if it were still a functioning entity. Therefore, the first question this Court must confront is whether BBA purchased McGaw.

Plaintiff and defendant bitterly dispute whether or not BBA, a holding company, purchased McGaw. BBA steadfastly maintains that it never purchased McGaw, and that its wholly-owned subsidiary BBM purchased it. In support of this contention, BBA submits the sworn affidavit of Charles DiNardo, the Senior Vice President, Chief Corporate Officer, and Secretary of BBA. See Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (stating that for purposes of a motion to dismiss for lack of personal jurisdiction, the Court may look beyond the pleadings where the factual basis of jurisdiction is in question). DiNardo states that "BBA did not acquire McGaw, Inc. in 1997 as alleged. Rather, McGaw, Inc. was acquired by and merged into a separate corporate entity, B. Braun Medical Inc. McGaw, Inc. no longer

5

exists as a legal entity." (BBA Mem. Supp. Mot. Dismiss Ex. A.)

In a second affidavit, DiNardo elaborates:

> By agreement dated May 30, 1997, BBA and Ivax Corporation
> ("Ivax") entered into a Stock Purchase Agreement for the
> purchase of McGaw, Inc. ("McGaw"). Subsequent to that
> Stock Purchase Agreement, by a document entitled
> "Assignment and Assumption Agreement and Amendment No. 1
> to Stock Purchase Agreement," dated June 17, 1997, BBA
> transferred and assigned to BBM all of BBA's rights,
> interests and obligations under the Stock Purchase
> Agreement. Thereafter, on June 24, 1997, Ivax sold,
> assigned, and transferred the stock of McGaw to BBM. At
> no time did BBA own stock or hold assets of McGaw.

(BBA Reply Mem. Supp. Mot. Dismiss Ex. A.)

Plaintiff, however, contends that BBA did in fact buy McGaw

based on an opinion of the Eleventh Circuit, which stated in an

unrelated case:

> [BBA] is the entity that initially entered into the
> stock-purchase agreement at issue in this case [with
> McGaw], and [BBM] is [BBA's] wholly-owned subsidiary.
> Because [BBA] subsequently assigned all of its rights and
> interests under the stock-purchase agreement to [BBM],
> and [BBM] assumed all of [BBA's] duties and obligations
> under that agreement, we hereinafter refer to the two
> Braun entities bound by the agreement as "Braun."

Ivax Corp. v. B. Braun of America, Inc., 286 F.3d 1309, 1310 n.1

(11th Cir. 2002). In addition, the plaintiff presents a filing

with the Securities and Exchange Commission, which stated that

"IVAX sold McGaw, Inc. ("McGaw"), its intravenous division, to B.

Braun of America, Inc. ("B. Braun"), a subsidiary of B. Braun

Melsungen AG, for $320,000 in cash (subject to certain

post-closing adjustments), additional payments of up to $80,000

contingent upon the combined operating results of McGaw and B.

Braun's principal United States operating subsidiary, and certain royalties based on sales of the Duplex(TM) drug delivery system." (Pl.'s Mem. Opp. BBA Mot. Dismiss Ex. B at 11.)

Although BBA initially entered into the Stock Purchase Agreement, the record demonstrates that BBA assigned its interest to BBM, which acquired the stock of McGaw from Ivax. See Escude Cruz, 619 F.2d at 904 (holding that burden of proof rests with plaintiff for personal jurisdiction issues). As a fall back, plaintiff asserts that BBA's involvement in negotiating the original purchase agreement provides sufficient minimum contacts with California to establish jurisdiction because BBA officers must have traveled to California as part of its corporate due diligence. Conjectures are insufficient to establish minimum contacts. Boit, 967 F.2d at 675.

## B. **Principal-Agent Relationship**

The plaintiff argues that this Court can exert personal jurisdiction over BBA because BBM is the agent of BBA, and BBM's extensive contacts with California should be imputed to BBA.

The exercise of general jurisdiction through agency requires this Court to determine whether "the principal is held for the acts of the agent." N. Natural Gas Co. of Omaha, Nebraska v. Superior Court, 64 Cal. App. 3d 983, 994 (Cal. Ct. App. 1976). "An agency is proved by evidence that the [entity] for whom the work was performed had the right to control the activities of the

7

alleged agent." Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 983
(Cal. Ct. App. 1993). Therefore, "the hallmark of agency is the
exercise of control over the agent by the principal." F.
Hoffman-La Roche v. Superior Court, 30 Cal. Rptr. 3d 407, 418
(Cal. Ct. App. 2005).

    In conducting this inquiry, California courts have cautioned
that the analysis begins with the "firm proposition that neither
ownership nor control of a subsidiary corporation by a foreign
parent corporation, without more, subjects the parent to the
jurisdiction of the state where the subsidiary does business."
Id. Clarifying this proposition, courts have determined that

    "Control" in this context means the degree of direction
    and oversight normal and expected from the status of
    ownership; it comprehends such common characteristics as
    interlocking directors and officers, consolidated
    reporting, and shared professional services. The
    relationship of owner to owned contemplates a close
    financial connection between parent and subsidiary and a
    certain degree of direction and management exercised by
    the former over the latter.

Id. (citations omitted).

    Thus, in order to establish that this Court has personal
jurisdiction over BBA based on agency, plaintiff must prove by a
preponderance of the evidence that BBA "exercise[d] a degree of
control over the local entity [BBM] that is more pervasive than
these common features signal." Id. BBA must exert control over
the internal affairs of BBM and determine precisely how the
company will operate on a day-to-day basis. See Sammons Enters.,

8

Inc. v. Superior Court, 205 Cal. App. 3d 1427, 1434 (Cal. Ct. App. 1988). Without a showing of fraud or injustice, California courts tend to honor the presumption of corporate separateness in a jurisdictional analysis. Calvert v. Huckins, 875 F. Supp. 674, 678 (E.D. Cal. 1995); see also DVI, Inc. v. Superior Court, 128 Cal. App. 4th 1080, 1094 (Cal. Ct. App. 2002) ("The nature of the parent's control over the subsidiary must 'be over and above that to be expected as an incident of the parent's ownership of the subsidiary,' but must 'reflect the parent's purposeful disregard of the subsidiary's independent corporate existence.'").

California contends that jurisdiction is proper because the two companies share some corporate officers, conduct business with one another, and operate from the same facilities. Moreover, it is a holding company whose direct holdings consist exclusively of BBM stock. Under California law, these facts, without something further, are insufficient to establish jurisdiction. See Sonora Diamond Corp. v. Superior Court, 99 Cal. Rptr. 2d 824, 839-41 (Cal. Ct. App. 2000) (holding that financial support of the subsidiary, shared management, and consolidated financial reporting were insufficient, even in the aggregate, to find jurisdiction over the parent).

Second, plaintiff argues that California's representative services doctrine would permit personal jurisdiction over the defendant BBA. California courts have held:

9

> Under the representative services doctrine, as a species of agency, general jurisdiction may be exercised over a related foreign defendant principal, where the local entity as agent essentially exists only to further the business of the foreign entity, and but for the domestic entity's existence, the foreign entity would be performing those functions in the forum itself.

F. Hoffman-La Roche, 30 Cal. Rptr. 3d at 419 (citing Sonora Diamond, 99 Cal. Rptr. 2d at 839-41 (Cal. Ct. App. 2000)). This doctrine will permit a court to exercise jurisdiction "when the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business." Id. However, "jurisdiction will not lie where the parent is a true holding company the business of which is not operations but passive investment." Id. "In this setting," the Court opined, "application of the doctrine is limited to the circumstance in which the parent uses a subsidiary to do what it otherwise would do itself in the operational sense." Id.

Plaintiff offers no proof that BBA is not acting as a holding company.[1]  Indeed, in a related case in this MDL, this Court has explicitly found that BBA has acted as a holding company for BBM, "operating no business of its own, which provides financing to BBM." See Memorandum and Order, Docket No.

---

[1] Plaintiff seeks jurisdictional discovery as an alternative to dismissal. However, the Court has already permitted jurisdictional discovery in this MDL, and plaintiff has not alleged a lack of access to that discovery or that the discovery was inadequate. If plaintiff can make such a showing, this Court may be willing to reconsider.

10

1337 (Feb. 4, 2005). As such, this Court finds that the representative services doctrine does not apply to BBA.

## C.  **Substantial Effects**

Plaintiff argues that this Court may exert personal jurisdiction over BBA because BBA has acted in a manner that causes a substantial effect in California. A nonresident defendant may be subject to personal jurisdiction if, through out-of-state actions, it causes an effect in California. See Burger King, 471 U.S. at 476; see also St. Joe Paper v. Superior Court, 120 Cal. App. 3d 991, 996 (Cal. Ct. App. 1981) ("A state has power to exercise judicial jurisdiction over a foreign corporation which has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from such act...unless the nature of the act and of the corporation's relationship to the state make the exercise of such jurisdiction unreasonable."). There is no allegation that BBA committed any act or omission that created a substantial effect in California.

### ORDER

B. Braun of America's motion to dismiss [Document 2045] is **ALLOWED**.

PATTI B. SARIS
United States District Judge

11