UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| SETTLEMENT WITH DEFENDANT GLAXOSMITHKLINE ("GSK") | Judge Patti B. Saris |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR IMPOSITION OF APPEAL BOND UNDER FEDERAL RULE OF APPELLATE PROCEDURE 7**

Plaintiffs, by Class Counsel, respectfully submit this Memorandum in Support of their Motion for Imposition of an Appeal Bond in the amount of $131,700 under Federal Rule of Appellate Procedure 7. Such a bond is appropriate under established case law to discourage frivolous objections. *See Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991) (finding that trial courts always have inherent powers to assess fees and costs when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (citation omitted). The objection lodged by Demra Jordan against Plaintiffs' settlement with Defendant GlaxoSmithKline ("GSK") is frivolous and will serve no purpose but to delay the distribution of benefits to a class that includes old and sick people who have waited six (6) years for relief. In fact, to date, several named class representatives have already passed away during the course of this litigation. The court should therefore order Ms. Jordan ("Objector") to post the bond requested in Plaintiffs' motion.

## I.      INTRODUCTION

On August 10, 2006, Plaintiffs and GSK presented the Court with a $70 million settlement of the AWP litigation with respect to GSK (the "Settlement"). After preliminary approval, an extensive notice program and independent evaluation of the Settlement by a Court-

appointed expert, the Court granted final approval to the Settlement on July 19, 2007.  While

Objector filed the only objection to the Settlement, both the Objector and her counsel failed to

appear at the Final Settlement Hearing or even inform the Court of their inability to attend,

indicating their lack of good faith.[1]

Good cause exists for this Court to require Objector to post an appeal bond in the amount

of $131,700.[2]  As set forth herein, Objector lacks standing to pursue her appeal because, even if

she is victorious, there is no redress available for Objector or for the Class as a whole.

Objector's sole objection is that the Court should not have certified the Settlement Class.  She

does not assert that the settlement terms are unfair or that they are deficient in any way.

Certification of that Class, however, caused Objector no injury.  Objector had notice of the right

to opt-out of the Class and not be bound by the Settlement.  Therefore, if successful on appeal,

Objector will achieve merely what she had to begin with, the right to not be in the Class.  The

only difference is she will deny $70 million of relief to class members who decided not to opt-

out of the Class as well as the thousands of class members who submitted claims.  No one forced

Objector to remain in the Class.  Having elected to do so, she cannot now claim she was injured

by certification of the Settlement Class.

As more fully discussed below, the objection is without merit and the appeal, at a

minimum, "might be frivolous."  *See In re Compact Disc Minimum Advertised Price Antitrust

Litig.*, MDL No. 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (citing *Sckolnick v.

Harlow*, 820 F.2d 13, 15 (1st Cir. 1987)).  Despite its clear lack of merit, the appeal will delay

---

[1] One of Objector's counsel appear to be the Boston law firm of Goodwin Proctor (who currently represents TAP Pharmaceuticals in this litigation) and certainly would suffer no inconvenience to appear at the Final Settlement Hearing.

[2] As set forth below, this figure includes extremely conservative estimates of $61,000 in administrative costs attributable to delay in distribution; $70,000 in attorneys' fees; and $700 in costs.  *See* Declaration of Thomas R. Glenn ¶ 13 ("Glenn Declaration"), Ex. A.

distribution of settlement proceeds and otherwise result in costs and expenses that should not be borne by the Class.  *See* Glenn Declaration ¶¶ 8-9, 11-12.  For these reasons the Court should order Objector to post an appeal bond.

## II.      BACKGROUND

### A.      Objection to the Settlement

Objector filed an objection to the Settlement on the sole basis that the Court purportedly should not have certified the Settlement Class because of "a lack of predominance of common issues pursuant to Federal Rule of Civil Procedure 23(b)(3)."  *See* Doc. No. 4403 ¶ 3, Ex. B. Despite having notice of the opportunity to do so, Objector failed to appear at the final approval hearing.  At the time this Court overruled her objection, the Court made it clear that her objection, to the extent it was comprehensible, lacked merit, stating that:

> THE COURT:  [L]et me begin by whether there are any people who are objectors who are sitting out in the audience.  I don't see anybody raising his or her hand.
>
> We did get one from Healthcare South, which has now withdrawn its objection.  We also had one from an individual, I guess a Ms. Jordan?  Does that ring a bell to anybody?  Is anyone representing her?  I think Deutsch Williams is representing her. Has anyone heard from her at all?
>
> MR. NOTARGIACOMO:  The plaintiffs have not heard from her, your Honor.
>
> THE COURT:  ***It's a very, very bare-bones objection***, and as far as I could tell, she – oh, her name is Demra Jordan, and it's Objection 4403.  Let me just ask you.  She's apparently not a Medicare beneficiary but did pay for some of these drugs and had health insurance.  What kind of relief will she be getting under the settlement?
>
> MR. NOTARGIACOMO:  Your Honor, she would be entitled to the same relief as all consumers.  All consumers are treated equally in the settlement.

THE COURT:  And you had said somewhere in these vast pile of materials that all consumers were likely to be able to get a hundred percent reimbursement.  Is that correct still?

MR. NOTARGIACOMO:  All consumers who have filed a claim will be entitled to, given the amount of money that's been set aside, will receive a hundred percent of their claim amount.  And in some instances, because there's enough money to provide a $100 minimum payment, those consumers whose recognized claim falls below $100 will actually receive $100, so they'll get more than their actual claim.

THE COURT:  *She has not elected to opt out, and she says she has standing to present the objection, and she is taking a legal position that the settlement class can't be properly certified. Since she's not here, I have no idea where this is coming from. She could collect fully her amount.  I don't even know if she's a claimant.*  Do you happen to know?

MR. NOTARGIACOMO:  I don't know actually, your Honor, whether she's – I believe her papers say she has.

THE COURT:  All right, I overrule that objection.

Transcript of final approval hearing (July 19, 2007) at 3:15 to 5:6, Ex. C (emphasis added).

## B.      Additional Administrative Costs

As outlined in the Glenn Declaration, the filing of Objector's appeal will delay

distribution to the Class, and that delay in and of itself will cost the Class money.  For each

additional month that the Settlement Fund remains open, the claims administrator incurs

significant costs and expenses, including such items as maintaining the post office box and the

toll-free number, updating the website and responding to class member inquiries (which become

more and more numerous as time passes).

Based on the claims administrator's own experience in *In re Warfarin Sodium Antitrust*

*Litig.*, a settlement administration similar to this one, additional incremental administrative costs

caused by the delay will run in the range of approximately $7,500 – 10,500 per month.  *See*

Glenn Decl. ¶ 10.  These costs will be borne by the Settlement Fund and will be paid out of the

- 4 -

monies that would otherwise be distributed to the Class.  Assuming that the appeal can be resolved in eight months, an extremely optimistic estimate, delay costs at the lowest end of the range would amount to at least $61,000.[3]  *Cf. In re Cardizem CD Antitrust Litig.,* No. 99-md-1278, 2005 WL 2179383 (E.D. Mich. Sept. 9, 2005) (appeal dismissed 14 months after final approval; administration costs attributable to delay amounted to $255,683.10).

In addition, as this Court has repeatedly observed, members of the Class include people who are old and sick people, who have already waited six years to receive any type of payment. Objector should not be permitted to engage in an exercise of intellectual futility at the expense of these people.

## C.    Attorneys' Fees and Costs

In addition, Objector's appeal, if rejected, will cost the Class attorneys' fees and costs, both of which, because the Settlement created a common fund, must come from the Class. Attorneys' fees incurred with respect to Objector's appeal are conservatively estimated to be at least $70,000, a figure that assumes an expedited resolution, while expenses would approximate $700.00.

## III.    ARGUMENT

## A.    Requiring an Appeal Bond is Appropriate

Rule 7 of the Federal Rules of Appellate Procedure provides in pertinent part as follows: "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  "[T]he nature and amount of the bond is a matter left to the sound discretion of the district court."  *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *see also Adsani v. Miller,* 139 F.3d 67, 79 (2d Cir.

---

[3] This optimistic estimate presumes that Plaintiffs will succeed in expediting or dismissing the appeals. Plaintiffs intend to file motions to dismiss the appeals, expedite briefing and/or for summary disposition pursuant to First Circuit Local Rule 27(c).

1998) ("A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal.").

Costs on appeal include those costs itemized in Rule 39 of the Federal Rules of Appellate Procedure, such as the costs to prepare and reproduce the briefs and appendices.  As will be discussed more fully below, however, a Rule 7 appeal bond may also include attorneys' fees and other "damages" where the appeal is frivolous and sanctions are likely to be imposed under Rule 38 of the Federal Rule of Appellate Procedure.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.,* No. MDL 1361, 2003 WL 22417252, at *3 (D. Me. Oct. 7, 2003). "Damages" in such a case may include both reasonable attorneys' fees and administrative costs occasioned by the delay.  *Id.* (damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond); *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278, Corrected Order No, 82 (E.D. Mich. Dec. 18, 2003) (Ex. D) (attorney fees are also properly included as costs in the request Rule 7 appeal bond."), *aff'd*, 391 F.3d 812 (6th Cir. 2004).  As discussed below, substantial authority exists to support the assessment of an appeal bond here.

## B.    Objector's Appeal is Frivolous and May Subject Her to Sanctions Under Rule 38 of the Federal Rules of Appellate Procedure

Objector's appeal is frivolous within the meaning of Rule 38 of the Federal Rules of Appellate Procedure.

### 1.    Objector lacks standing to appeal

First, Objector lacks standing to pursue her appeal because, even if her appeal is denied and the final approval of the Settlement is affirmed, she has not suffered an injury-in-fact.  "The burden of stating facts sufficient to support standing rests with the party seeking to assert federal jurisdiction.  This burden applies to a party seeking to assert federal jurisdiction on appeal."  *Sea*

*Shore Corp. v. Sullivan*, 158 F.3d 51, 54 (1st Cir. 1998) (citations omitted).  To satisfy the "case" or "controversy" requirement of Article III, which is the irreducible constitutional minimum of standing, Objector must demonstrate that she has suffered "(1) an 'injury-in-fact'; (2) that is 'fairly traceable' to the proceeding below; and (3) is 'likely' to be redressed by a favorable decision.'"  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  In order for there to be standing, it must "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Bennett v. Spear*, 520 U.S. 154, 167 (1997).  "The aim is to determine whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.  The standing issue must therefore be resolved irrespective of the merits of the substantive claims."  *United States v. Vasquez*, 145 F. 3d 74, 80-81 (2d Cir. 1998) (internal quotations and citations omitted).

Here Objector lacks standing to pursue her appeal because she has suffered no injury.  Even if the First Circuit were to reverse this Court's order granting final approval of the Settlement, Objector would be in no different position than she would be today, having not filed a claim, or had she chosen to opt-out of the Settlement.[4]  She will have succeeded only in denying thousands of class members often desperately-needed relief.  Having no personal stake in the outcome of the appeal, she has no Article III standing.  *See Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005) ("The plaintiff's plight falls squarely within the compass of this admonition. Although offended by the Policy, she has sustained no injury in fact. Thus, she has no sufficient personal stake in this litigation to ground a determination that she has standing to sue.").

---

[4] Objector would have been in a better position had she opted out because she would have preserved her individual claims, if she had any.  Ironically, by staying in the Class to assert her frivolous objection, Objector inflicted whatever injury she suffered on herself.

Plaintiffs recognize that *Devlin v. Scardelletti,* 536 U.S. 1 (2002), as a general proposition, grants class members standing to object to the proposed settlement of a class action and to file an appeal therefrom.  But implicit in *Devlin* is the understanding that there is some adverse impact to the rights of the objector for, as the *Devlin* court explained, the objection must "fall[] within the zone of interests of the requirement that a settlement be fair to all class members."  536 U.S. at 7.  No such interests are implicated by the objection here.  Again, Objector does not claim that the settlement is unfair, nor does she claim that it is deficient in any way.  Objector merely asserts that no class should have been certified.  She did not and should not now be permitted to assert a purely ideological hostility to class action litigation generally; Objector simply has no injury.

Indeed, the Supreme Court in *Devlin* anticipated that objectors who have nothing to gain by appeal would not have standing at the appellate level.  When addressing amici curiae's arguments that class members should be required to intervene for purposes of appealing in order to, in part, weed out objectors who are not entitled to relief from the settlement, the court explained:

> This seems to us, however, of limited benefit.  In the first two of these situations, the objector stands to gain nothing by appeal, so it is unlikely such situations will arise with any frequency.  Justice Scalia argues that if such objectors were undeterred by this fact at the time they filed their original objections, they will be undeterred at the appellate level.  See *post*, at 7.  This misunderstands the point.  As to the first group – those who are not actually entitled to relief – one would not expect them to have filed objections in the district court in the first place.  ***The few irrational persons who wish to pursue one round of meaningless relief will, I agree, probably be irrational enough to pursue a second.  But there should not be many of such persons in any case***.  As for the second – those whose objections were successful at the district court level – they were far from irrational in the filing of their initial objections, and they should not generally be expected to lose this level of sensibility when faced with the prospect of a

> meaningless appeal.  Moreover, even if such cases did arise with
> any frequency, ***such concerns could be addressed by a standing
> inquiry at the appellate level***.

536 U.S. at 13 (emphasis added).  Objector here is the embodiment of the Supreme Court's

hypothetical "irrational person" pursuing "meaningless relief" and, therefore, does not have

standing to pursue this appeal.  ***Not one*** Class member has anything to gain by Objector's

successful appeal.

> **2.      Objector's one-sentence objection is baseless and was inadequate as a matter
> of law to preserve her objection for appeal**

Second, even if Objector could establish standing to appeal this Court's certification of

the Settlement Class, it should be dismissed because she has failed, as a matter of law, to set

forth the grounds of her objection in order to preserve the issue for appeal.  *See Grella v. Salem*

*Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994):

> "[W]e agree . . . [that appellant] has not properly presented or
> argued this issue on appeal**.**  We have warned litigants that issues
> averted to in a perfunctory manner, unaccompanied by some effort
> at developed argumentation, are deemed waived for purposes of
> appeal**. . . .**  Parties must spell out their arguments squarely and
> distinctly, or 'forever hold their peace.'. . .  In his 50-page brief,
> [appellant] did not raise or address the issue of the other sixteen
> notes at any point except for the one-sentence statement,
> unsupported by any argument or case law, in his conclusion. . . .
> This is simply insufficient presentation and argumentation of the
> issue for any meaningful analysis, and we therefore deem it
> waived."  [internal citations omitted].

*Willhauk v. Halpin*, 953 F.2d 689, 700 (1st Cir. 1991) ("[I]ssues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . .  It

is not enough merely to mention a possible argument in the most skeletal way, leaving the court

to do counsel's work. . . .  Judges are not expected to be mindreaders.  Consequently, a litigant

has an obligation 'to spell out its arguments squarely and distinctly, or else forever hold [her]

peace.'").  Objector's objection states "[t]he proposed Settlement Class cannot be properly

- 9 -

certified due to a lack of predominance of common issues pursuant to the Federal Rule of Civil

Procedure 23(b)(3), as evidenced by this Court's prior rulings in this case." *See* Doc. No. 4403

¶ 3, Ex. B.  This is precisely the type of objection that federal courts have routinely found to be

deficient.  As most recently explained by the First Circuit:

> Few principles are more a part of the warp and woof of appellate
> practice than the principle that "issues adverted to in a perfunctory
> manner, unaccompanied by some effort at developed
> argumentation, are deemed waived." . . .  We have parroted this
> principle with a regularity bordering on the monotonous. . . .  These
> reiterations are not meant to be regarded as empty words: our
> adherence to this principle imposes on litigants an unflagging
> obligation to spell out their contentions 'squarely and distinctly, or
> else forever hold [their] peace.' . . . "[I]t is not enough merely to
> mention a possible argument in the most skeletal way, leaving the
> court to do counsel's work."
>
>             * * *
>
> The same holds true in this case.  The defendants grouse about the
> size of the compensatory damage awards but then, in effect, invite
> us to rummage through the record, unassisted by any semblance of
> developed argumentation, in order to evaluate their claim of
> excessiveness.  As we have explained above, sound practice
> demands that we decline this unattractive invitation: if a party does
> not put enough stock in an argument to flesh it out, a reviewing
> court should normally dismiss the argument out of hand. . . .  To do
> otherwise would be unfair both to the adverse party and to the
> court itself.  ***We therefore treat the claim as waived.***

*Casilla-Diaz v. Officer Romualdo Palau*, 463 F.3d 77, 83 (1st Cir. 2006) (emphasis added)

(internal citations omitted).

Even if Objector had properly preserved her objection for appeal, the substance of her

objection is baseless.  Under Fed. R. Civ. P. 23(e), a district court has broad discretion to

determine whether a class action settlement is fair, adequate, and reasonable, based on the law,

facts and circumstances of the case.  Moreover, it is well-established that the standard for

appellate review of the Court's final approval of a settlement is abuse of discretion.  *See City*

*P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996) ("Upon review, our role, 'is not to decide whose assertions are correct, but merely to ascertain whether the district court clearly abused its discretion in approving the settlement.' . . . Great deference is given to the trial court. 'It is only when one side is so obviously correct in its assertions of law and fact that it would be clearly unreasonable to require it to compromise to the extent of the settlement, that to approve the settlement would be an abuse of discretion.'") (internal citations omitted).  This Court acted well within its discretion in rejecting Objector's unsupported objection.

Moreover, "[f]ederal courts are increasingly weary of professional objectors."  *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).  The objection (Exhibit B) must be regarded as "generic unhelpful protests," some of which are lodged by "professional objectors."  *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) ("some of the objections were obviously 'canned' objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests").  Objector's law firm, Goodwin Proctor, is counsel to TAP Pharmaceuticals, Inc. in this case.  *See* Objection, Ex. E.[5]  The benefit Objector seeks to gain here is a tactical one on behalf of the remaining Defendants, not on behalf of the Class of which Objector is a member and on whose behalf she purports to act.

Given Objector's clear motivation in filing her objection, she must be regarded as a "spoiler" most concerned with exercising leverage to prevent others from benefiting from the settlement.  *Cf. Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (characterizing objectors as "spoilers" when only twenty of 113,000 class members objected and

---

[5] This version of the objection, which contains a signature block for Goodwin Proctor, is different from the version publicly filed on this Court's docket.  It therefore appears that, upon reflection, Objector wished to hide from the Court her affiliation with counsel for one of the MDL defendants.

only two appealed the settlement's approval).  She now compounds the abuse by taking appeals, which will delay distribution of settlement proceeds to more thousands of consumers, notwithstanding this Court's exercise of discretion well within the bounds of applicable authority.

**C.      Where, as Here, the Appeal is Frivolous, Rule 38 Provides the Basis for an Appeal Bond covering Double Costs and Other Damages, including Attorneys' Fees**

An appeal bond under Rule 7 may include attorneys' fees and administrative costs where the award of such fees is authorized by statute.  In this case, Rule 38 of the Federal Rules of Appellate Procedure provides the basis for the award of fees and other damages caused by a frivolous appeal.  Rule 38 provides as follows:

> If a court appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R. App. P. 38.

Where a district court believes that the recovery of fees and sanctions is possible under Rule 38, such amounts should be considered in the assessment of an appeal bond.  In *Sckolnick v. Harlow*, the First Circuit ruled that a bond for sanctions that might be awarded under Rule 38 of the Federal Rules of Appellate Procedure may be appropriate.

> [T]he district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility. . . .  We note, also, that the defendants introduced evidence below that a plaintiff is a litigious pro se who has filed numerous lawsuits in state court.

820 F.2d at 15.  Similarly, in *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, *3 (D. Me. Oct. 7, 2003), the district court addressed the propriety of an appeal bond that included both attorneys' fees and additional costs in the context of a frivolous appeal.  There the court found that the appeal "might be frivolous" and that an

award of sanctions on appeal pursuant to Rule 38 was "a real probability."  It therefore concluded under those circumstances that a bond for "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond."  *Id.* The court believed the probability of sanctions being awarded under Rule 38 was high enough to justify consideration of that fact for purposes of calculating the appropriate appeal bond.

A similar conclusion is warranted here.  Rule 38 expressly permits an award of damages including single or double costs upon determination that the appeal is frivolous.  Fed. R. Civ. P. 38.  Damages awardable under Rule 28 include attorneys' fees.  *See Maher v. Hyde*, 272 F.3d 83, 87 (1st Cir. 2001) (The purpose of Rule 38 penalties "is to discourage litigants from wasting the time and monetary resources of both their opponents and the nation's judicial system with legal arguments that do not merit consideration.") (citation omitted); *Ramirez v. Debs-Elias*, 407 F.3d 444, 450 (1st Cir. 2005) ("We have imposed sanctions under Federal Rule of Appellate Procedure 38 where the overwhelming weight of precedent was against appellant's position, where appellant could set forth no facts to support its position, or where, in short, there simply was no legitimate basis for pursuing an appeal.") (citation and internal quotation marks omitted).  Given the fact that the Objector lacks standing to pursue her appeal, and given the fact that that her appeal is otherwise groundless, this Court may justifiably conclude that Rule 38 provides for the recovery of damages, including attorneys' fees.  As set forth above, attorneys' fees for the appeals are conservatively estimated at $70,000  Recoverable damages also include the costs of disruption and delay in settlement administration, estimated here to be at least $61,000.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.,* No. MDL 1361, 2003 WL 22417252, at *3 (D. Me. Oct. 7, 2003); *In re Cardizem CD Antitrust Litig.*, No 99-md-1278 Corrected Order No. 82 at 11-12 (same).

Finally, pursuant to Rule 38, the bond may also cover costs taxable on appeal, including the costs of reproduction, filing and brief and appendix preparation, as addressed in Rule 39. Plaintiffs estimate these costs to be approximately $700.  They are clearly assessable in an appeal bond, *see O'Keefe v. Mercedes-Benz USA, LLC*, No. Civ. A. 01-CV-2902, 2003 WL 22097451 (E.D. Pa. June 4, 2003) (ordering $13,467 appeal bond), and may be doubled pursuant to Rule 38.

### IV.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court enter an order under Federal Rule of Appellate Procedure 7 to require Objector to post an appeal bond in an amount sufficient to cover costs for her frivolous appeal, including the damages likely to result from the delay in settlement administration and reasonable attorneys' fees.  The amount of such bond should be $131,700.


DATED:  September 7, 2007                    By____ **/s/ Steve W. Berman**_____
                                             Thomas M. Sobol (BBO#471770)
                                             Edward Notargiacomo (BBO#567636)
                                             Hagens Berman Sobol Shapiro LLP
                                             One Main Street, 4th Floor
                                             Cambridge, MA  02142
                                             Telephone: (617) 482-3700
                                             Facsimile: (617) 482-3003

                                             **LIAISON COUNSEL**

                                             Steve W. Berman
                                             Sean R. Matt
                                             Hagens Berman Sobol Shapiro LLP
                                             1301 Fifth Avenue, Suite 2900
                                             Seattle, WA  98101
                                             Telephone: (206) 623-7292
                                             Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on September 7, 2007, I caused copies of **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR IMPOSITION OF APPEAL BOND UNDER FEDERAL RULE OF APPELLATE PROCEDURE 7** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


 **/s/ Steve W. Berman**
Steve W. Berman

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

## DECLARATION OF THOMAS R. GLENN

## REGARDING STATUS OF CLAIMS ADMINISTRATION ACTIVITIES RELATED TO SETTLEMENT WITH DEFENDANT GLAXOSMITHKLINE

**THOMAS R. GLENN**, being sworn, hereby states under pains and penalties of perjury as follows:

1.  I am the Senior Vice President and Chief Operating Officer of Complete Claim Solutions, Inc. ("CCS"), the settlement administrator in the above-captioned litigation (the "Action"). I am over 21 years of age and am not a party to the Action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.  I submit this Declaration to provide the Court with (a) the status of claims processing to date; (b) testimony that no claim has been filed by objector/appellant; and (c) an estimate of unanticipated settlement administration costs which will likely be incurred due to the appeal.

## STATUS OF CLAIMS PROCESSING

3.  As of September 6, 2007, CCS has received a total of 13,180 Consumer claims, including 366 claims postmarked after the May 28, 2007, deadline. To date, CCS has entered

1

13,150 of these claims into a segregated database (the "GSK-AWP Consumer Database") with aggregate purchases of approximately $121,450,905.86 (comprised of $29,612,958.91 in Medicare Part B Class claimed purchases and $91,837,946.95 in Private Payor Class claimed purchases).  This number is subject to CCS's claims administration review process and, based upon similar settlements, typically would be reduced once this process is complete.

4.     As of September 6, 2007, CCS received a total of 2,081 Third-Party Payor ("TPP") claims, including 23 claims postmarked after the May 28, 2007, deadline. TPP claims have not yet been entered into the segregated GSK-AWP TPP Database, so I cannot advise the Court as to the aggregate of claimed TPP purchases.

## NO CLAIM FILED BY OBJECTOR/APPELLANT

5.     At the request of Class Counsel, on or about August 24, 2007, CCS researched the GSK-AWP Consumer Database to determine if a claim had been submitted by Demra Jordan who had filed an objection to the Settlement.  In preparing for this declaration, on September 6, 2007, CCS researched the database again and also manually reviewed the 30 claims not yet entered into the GSK-AWP Consumer Database (referenced in ¶3, above).  To date, no one named Demra Jordan has filed a claim. Furthermore, no one by that name filed a Request for Exclusion either.

6.     In addition, to be thorough, CCS also performed a search of the TPP claims and Requests for Exclusion.  To date, no one named Demra Jordan has filed a claim or a Request for Exclusion that may have been inadvertently filed by the claimant or processed by CCS's mailroom staff as if either document were a TPP document.

## UNANTICIPATED SETTLEMENT ADMINISTRATION COSTS

7.      Class Counsel requested CCS to describe unanticipated settlement administration costs that may be incurred in the event the administration process is disrupted and delayed due to the objection/appeal.  By way of explanation, in a similar case, *In re Warfarin Sodium Antitrust Litigation,* 391 F. 3d 516 (3rd Cir. 2004) ("Warfarin Settlement"), an appeal was filed delaying the claims administration activities and, therefore, final distribution to the consumers.

8.      Based on CCS's experience in the Warfarin Settlement, unanticipated costs (fees and out-of-pocket expenses) were incurred from the time between the Final Settlement Approval Order and the date the Order became final.  Such costs included maintaining a Post Office Box, maintaining a toll-free number for claimants to call with questions, answering additional telephone calls, processing additional, unanticipated correspondence (such as change-of-address forms and status requests from Class Members), responding to e-mails, keeping the Settlement website (www.gsksettlement.com) up and running, revising the website and telephone Frequently Asked Questions (FAQ's) and pre-recorded, toll-free telephone hotline script as necessary, warehousing documents, and performing various administrative tasks.

9.      The single most significant cost component listed in ¶9, above, relates to telephone charges.  Even though claims-processing operations could cease, CCS would continue its call-center operations.  Indeed, the pendency of the appeal would make the continuation of this service all the more necessary as many claimants, particularly those who are elderly, naturally would have questions concerning the status of the Settlement during the period it might be on hold.

10.      As a result of the delay in the Warfarin Settlement, additional unanticipated costs (fees and out-of-pocket expenses) ran approximately $7,500 to $10,500 per month.

11.     In addition, should CCS be instructed to stop all activities relating to the processing of claims while the appeal is pending, there would also be additional unanticipated costs associated both with winding down operations when the stop-work instruction comes in and with ramping up operations once the Final Order and Judgment Granting Final Approval to Proposed Class Action Settlement with the GlaxoSmithKline Defendants, Approving Proposed Allocation of Settlement Funds, and Approving Class Counsel's Application for Attorneys Fees, Reimbursement of Litigation Expenses and Compensation to Class Representatives is affirmed.

12.     As a result of stopping claims administration activities and ramping up operations, as referred to in ¶12 above, there will be additional unanticipated costs (fees and out-of-pocket expenses) incurred for activities and items such as: answering additional telephone calls from Consumer Class Members; processing an increased number of undeliverable deficiency letters and award checks returned by the United States Postal Service; researching updated addresses for Consumer Class Members; incurring additional postage fees to re-mail deficiency letters and checks to updated addresses; reissuing a greater number of checks due to Consumer Class Members having moved or reissuing checks to next of kin for Consumer Class Members who will have died; performing additional audit and quality assurance activities; and, in general, performing additional claim administration tasks.

13.     Assuming an 8-month time period between when the stop-work instruction comes in and when CCS is instructed to ramp up operations, I estimate that the unanticipated costs for all additional work as described in ¶¶9-13, above, to be approximately $61,000 to $85,000, including time spent by CCS staff in preparing this declaration.

14.     I declare under penalty of perjury that the foregoing is true and correct.

_____/s/ Thomas R. Glenn_____
Thomas R. Glenn

4

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------

IN RE: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION      **MDL No. 1456**

-------------------------------------------------------------     **CIVIL ACTION: 01-CV-12257-PBS**

THIS DOCUMENT RELATES TO:

ALL ACTIONS                   **Judge Patti B. Saris**

-------------------------------------------------------------

## <u>OBJECTION OF DEMRA JORDAN</u>

COMES NOW, DEMRA JORDAN, who is a member of the proposed settlement class and objects to the certification of this class and the final approval of this settlement and would respectfully show:

1.    Demra Jordan is a member of the proposed settlement class. *See* <u>Affidavit of Demra Jordan</u>, attached as "Exhibit A" and incorporated herein, in its entirety, by reference. Specifically,

- Demra Jordan is a member of the "Private Payor Class";

- Demra Jordan paid for Zantac (Ranitidine HCL), a GlaxoSmithKline "Covered Drug" from January 1, 1991 through the mid-1990s;

- Demra Jordan paid the full amount out-of-pocket for the Zantac (Ranitidine HCL) from January 1, 1991 through the mid-1990s;

- On several occasions, from January 1, 1991 through the mid-1990s, when

Demra Jordan had health insurance, she made a percentage co-payment for Zantac (Ranitidine HCL). *Id.*

2.      Since Demra Jordan has not elected to opt out of this proposed settlement, Demra Jordan has standing to bring this objection.

3.      The proposed Settlement Class cannot be properly certified due to a lack of predominance of common issues pursuant to Federal Rule of Civil Procedure 23(b)(3), as evidenced by this Court's prior rulings in this case.

Respectfully Submitted,

DEMRA JORDAN

By her attorney,

*/s/ Robert D. Hillman*

Robert D. Hillman/BBO# 552637
Deutsch Williams Brooks DeRensis & Holland, P.C.
99 Summer Street
Boston, MA 02110-1213
Tel: (617) 951-2300
Fax:(617-951-2323

Scott Kinsel
MOORE, LANDREY, L.L.P.
1609 Shoal Creek Boulevard, Suite 100
Austin, Texas 78701-1054
Ph:  (512) 499-8900
Fax: (512) 628-3285

## CERTIFICATE OF SERVICE

I, Robert Hillman certify that I understand that all counsel of record will receive electronic notice of the electronic filing of this pleading.

*/s/ Robert D. Hillman*
Robert D. Hillman

## AFFIDAVIT

**STATE OF TEXAS**

**COUNTY TRAVIS**

"My name is Demra Jordan, I am over eighteen years of age, and am fully competent to make this affidavit.  I have personal knowledge of the matters discussed herein and they are true and correct.

- I was prescribed and took Zantac (Ranitidine HCL), a GlaxoSmithKline drug, on or after January 1, 1991 through the mid-1990s;
- I paid the full amount out-of-pocket for Zantac (Ranitidine HCL) I was prescribed and took on or after January 1, 1991 through the mid-1990s;
- On several occasions, from January 1, 1991 through the mid-1990s, when I had health insurance, I made a percentage co-payment for Zantac (Ranitidine HCL).

**FURTHER, AFFIANT SAYETH NOT."**


**Demra Jordan**


**SUBSCRIBED** and **SWORN TO BEFORE ME**, the undersigned authority, on this the 21 day of ____June____, 2007, to certify which witness my hand and seal.

RENATE JEAN OWENS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 10, 2009

Notary Public in and for the State of Texas
My commission Expires:  5-10-09

# EXHIBIT C

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


In Re:                      )
PHARMACEUTICAL INDUSTRY      ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE      ) MDL No. 1456
LITIGATION                   ) Pages 1 - 38




             SETTLEMENT HEARING

     BEFORE THE HONORABLE PATTI B. SARIS
          UNITED STATES DISTRICT JUDGE






               United States District Court
               1 Courthouse Way, Courtroom 19
               Boston, Massachusetts
               July 19, 2007, 2:15 p.m.
```

```
            LEE A. MARZILLI
         OFFICIAL COURT REPORTER
      United States District Court
      1 Courthouse Way, Room 3205
          Boston, MA  02210
           (617)345-6787
```

```
1    A P P E A R A N C E S:

2    For the Plaintiffs:

3         THOMAS M. SOBOL, ESQ. and EDWARD NOTARGIACOMO, ESQ.,
     Hagens Berman Sobol Shapiro LLP, One Main Street, Cambridge,
4    Massachusetts, 02142.

5         KENNETH A. WEXLER, ESQ., Wexler Toriseva Wallace,
     55 West Monroe Street, Suite 3300, Chicago, Illinois, 60603.
6

7         JEFFREY L. KODROFF, ESQ., Spector Roseman & Kodroff,
     1818 Market Street, Suite 2500, Philadelphia, Pennsylvania,
     19103.
8

9         MARC H. EDELSON, ESQ., Hoffman & Edelson,
     45 West Court Street, Doylestown, Pennsylvania, 18901.

10        DONALD E. HAVILAND, ESQ., The Haviland Law Firm, LLC,
     740 S. Third Street, Third Floor, Philadelphia, Pennsylvania,
11   19102.

12

     For the Defendants:
13
          FREDERICK G. HEROLD, ESQ., Dechert, LLP,
14   2440 West El Camino Real, Suite 700, Mountain View,
     California, 94040-1499.
15
          MARK H. LYNCH, ESQ., Covington & Burling, LLP,
16   1201 Pennsylvania Avenue, N.W., Washington, D.C., 20004-2401.

17   ALSO PRESENT:  JAMES A. DONAHUE, III, ESQ., Office of
     Attorney General, Commonwealth of Pennsylvania.
18

19

20

21

22

23

24

25
```

1                P R O C E E D I N G S

2            THE CLERK:  In Re:  Pharmaceutical Industry Average

3    Wholesale Price Litigation, Civil Action No. 01-12257, will

4    now be heard before this Court.  Will counsel please identify

5    themselves for the record.

6            MR. SOBOL:  Good afternoon, your Honor.  Thomas

7    Sobol for the class plaintiffs.

8            MR. KODROFF:  Jeffrey Kodroff for the plaintiffs.

9            MR. NOTARGIACOMO:  Ed Notargiacomo for the

10   plaintiffs.

11           MR. WEXLER:  Ken Wexler, your Honor.

12           MR. EDELSON:  Mark Edelson for the plaintiffs.

13           MR. HEROLD:  Fred Herold for GlaxoSmithKline.

14           MR. LYNCH:  Mark Lynch for GlaxoSmithKline.

15           THE COURT:  Thank you.  There are a number of

16   things that we need to discuss today, so let me begin by

17   asking whether there are any people who are objectors who are

18   sitting out in the audience.  I don't see anybody raising his

19   or her hand.

20           We did get one from Healthcare South, which has now

21   withdrawn its objection.  We also had one from an individual,

22   I guess a Ms. Jordan?  Does that ring a bell to anybody?  Is

23   anyone representing her?  I think Deutsch Williams is

24   representing her.  Has anyone heard from her at all?

25           MR. NOTARGIACOMO:  The plaintiffs have not heard

1   from her, your Honor.

2            THE COURT:  It's a very, very bare-bones objection,

3   and as far as I could tell, she -- oh, her name is Demra

4   Jordan, and it's Objection 4403.  Let me just ask you.  She's

5   apparently not a Medicare beneficiary but did pay for some of

6   these drugs and had health insurance.  What kind of relief

7   will she be getting under the settlement?

8            MR. NOTARGIACOMO:  Your Honor, she would be

9   entitled to the same relief as all consumers.  All consumers

10  are treated equally in the settlement.

11           THE COURT:  And you had said somewhere in these

12  vast pile of materials that all consumers were likely to be

13  able to get a hundred percent reimbursement.  Is that correct

14  still?

15           MR. NOTARGIACOMO:  All consumers who have filed a

16  claim will be entitled to, given the amount of money that's

17  been set aside, will receive a hundred percent of their claim

18  amount.  And in some instances, because there's enough money

19  to provide a $100 minimum payment, those consumers whose

20  recognized claim falls below $100 will actually receive $100,

21  so they'll get more than their actual claim.

22           THE COURT:  She has not elected to opt out, and she

23  says she has standing to present the objection, and she is

24  taking a legal position that the settlement class can't be

25  properly certified.  Since she's not here, I have no idea

1    where this is coming from.  She could collect fully her

2    amount.  I don't even know if she's a claimant.  Do you

3    happen to know?

4              MR. NOTARGIACOMO:  I don't know actually, your

5    Honor, whether she's -- I believe her papers say she has.

6              THE COURT:  All right, I overrule that objection.

7              Second, I understand that the Commonwealth of

8    Pennsylvania -- is somebody here from the Commonwealth?

9              MR. DONAHUE:  Yes, your Honor.

10             THE COURT:  Well, welcome to Massachusetts.

11             MR. DONAHUE:  Thank you.

12             THE COURT:  Let me ask you this:  Your objection

13   really has to do more about if there's money left over from

14   the consumer fund, how that's divvied up, and you object to

15   the third-party payors getting anything.  As this works out,

16   this is subject to mediation before Professor Green with an

17   appeal to me.  Why wouldn't that be the appropriate point at

18   which to say, "I don't agree with what's happened"?

19             MR. DONAHUE:  I guess I have two points.  One is

20   that I think we wanted to simplify the process.  There's been

21   a lot of mediations in this case that have been very

22   complicated amongst the different parties.  We don't think

23   it's appropriate for the third-party payors to participate in

24   this fund.  You know, we have agreed to the agreement.  We

25   haven't objected to the agreement.  We've agreed to the way

1aa0e117-1101-46ae-ac75-92f5ce09e822

EXHIBIT D

## 1147

-15/2003   12:59   ELWOOD S. SIMON & ASSOCIATES                    NO.607   P02

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CARDIZEM CD ANTITRUST
LITIGATION,

Master File No. 99-md-1278
MDL No. 1278

THIS DOCUMENT RELATES TO:
Case Nos.  99-75070 (Lightner)
           99-73422 (Betnor)
           99-73412 (Aetna)
           99-73871 (Galloway)
           99-74262 (Aetna)
           99-73667 (Gabriel)
           98-74043 (Zuccarini)
           99-73239 (Aetna)
           99-73845 (Sunshine)
           99-73713 (D'Esposito)
           99-74377 (Glover)
           99-73190 (Sams)
           99-73345 (Sizemore)
           99-73981 (Eirich)
           99-73666 (United Wisc.)
           01-70490 (Ross)
           01-71835 (State of
                     New York,
                     et al. )

Honorable Nancy G. Edmunds

### CORRECTED ORDER NO. 82
### (CORRECTING CLERICAL ERROR ON PAGE 2 RE: AMOUNT OF BOND AND ADDING DATE BOND IS TO BE POSTED ON PAGE 12)

### GRANTING PLAINTIFFS' MOTION FOR IMPOSITION OF AN APPEAL BOND UNDER FEDERAL RULE OF APPELLATE PROCEDURE 7

On October 21, 2003, this Court entered final judgment approving the settlement of

Plaintiffs' class action against Defendants   (Order No. 78.)  On November 5, 2003, Ms.

Sams, the sole objector to the settlement, filed a notice of appeal from this Court's order

granting final approval.  Plaintiffs now move this Court for an order requiring Appellant

# 1148

Eugenia Wynne Sams to post an appeal bond, pursuant to Fed. R. App. P. 7, in the amount of $427,743.00. Defendants do not oppose this motion. Ms. Sams opposes Plaintiffs' motion and asserts that an appeal bond, if any, cannot exceed $1,000.00. For the reasons stated below, this Court GRANTS Plaintiffs' motion for imposition of an appeal bond but in a lower amount, $174,429.00.

Ms. Sams' appeal of this Court's decision that the settlement was fair, adequate, and reasonable, as well as consistent with the public interest, is not objectively reasonable, and imposition of a Rule 7 appeal bond that includes administrative costs made necessary by a meritless appeal and a portion of projected attorney fees is appropriate under circumstances where many of the underlying substantive statutes at issue in this nationwide class action settlement include reasonable attorney fees within the definition of recoverable costs.

i.    Facts

In its opinion granting final approval of the class action settlement, this Court carefully considered and rejected Ms. Sams' objections as being meritless and bordering on frivolousness. (Order No. 76 at 40.) To place her objections in context, the Court first examined Ms. Sams' background and her role in this multidistrict litigation. That history and the Court's conclusions are restated here.

> Ms. Sams took Cardizem CD from June 8, 1993 through August 28, 1998. Sams estimates that she paid approximately $35/month for Cardizem CD. As to her Cardizem CD purchases from June of 1993 through December 1997, Sams testified that after she satisfied her $200 medical deductible, her insurer, BCBS, paid 80% of her prescription costs and she was responsible for the remaining 20%. In January 1998, Sams switched insurers, paying only a $15 co-pay. Sometimes she purchased a one-month supply of Cardizem CD, other times she purchased a three-month supply. Sams has

2

**1149**

12/15/2005   12:59   ELWOOD S. SIMON & ASSOCIATES                    NO.607   P04

5

never taken a generic version of Cardizem CD. (Sams' 1/8/02 Dep. at 16-17, 21, 22-25, 33-34, 36, 42-56, 76-78, 86-93.)

At the fairness hearing and at her deposition, Ms. Sams testified that, after Attorney Ball first contacted her in 1998 and asked her if she took Cardizem, and she agreed to file suit against Defendants, she has not taken an active interest in this litigation. Other than reviewing her Initial complaint, gathering her personal paperwork concerning her Cardizem CD purchases, appearing at a deposition requested by Defendant HMRI (now Aventis), Ms. Sams has been content to let her attorney, Mr Ball, monitor this litigation. (Sams' 1/8/02 Dep. at 67, 71, 73-75.)

Sams' action has never been certified as a class. Accordingly, she represents only herself. Her action, along with the others described above, were transferred to this Court by the Judicial Panel on Multidistrict Litigation in June 1999. Pursuant to this Court's Case Management Orders coordinating pretrial proceedings in all the State Law Actions involved in this multidistrict litigation, Co-Lead Counsel was designated for the State Law Plaintiffs and given responsibility for handling all pretrial litigation, discovery, and settlement negotiations. (Case Management Order Nos. 1-8.) Mr. Ball is not one of the counsel so designated by the Court.

After settlement negotiations began, Mr. Ball filed a motion for a suggestion of a remand on behalf of Ms. Sams, arguing that pretrial proceedings had been completed and a remand was required, or, alternatively, Mr. Ball should be allowed to participate in pretrial settlement negotiations. Mr. Ball's motion was denied. In Order No. 45, this Court observed that Mr. Ball's request was contrary to the procedures set forth in this Court's Case Management Order No. 7, ¶ 14 and would frustrate a recognized purpose for consolidating multidistrict litigation for pretrial proceedings. *See Manual for Complex Litigation (Third)* § 31.132 at 254 (1995) (observing that "[o]ne of the values of multidistrict proceedings is that they bring before a single judge all of the cases, parties, and counsel comprising the litigation" and "therefore afford a unique opportunity for the negotiation of a global settlement. . . . In managing the litigation, therefore, the transferee judge should take appropriate steps to make the most of this opportunity and facilitate the settlement. . . ."). This Court observed that this is an accepted method for creating order out of what would otherwise be chaos if each individual plaintiff's counsel were allowed to engage in uncoordinated discovery and fractured settlement negotiations. *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1365 (2d Cir. 1991) (approving the practice of appointing lead counsel for settlement negotiations in complex multidistrict litigation because "[c]ompelling defendants to negotiate with a single negotiator authorized to speak for all the classes eliminates opportunities for divisive settlement shopping", "promotes fair and

3

# 1150

comprehensive resolutions", and "diminishes the costs that multilateral bargaining would impose on each class."). (Order No. 45 filed 10/30/02.)

While settlement negotiations were proceeding, Mr. Ball filed a renewed motion for suggestion of remand on behalf of Ms. Sams. In Order No. 55, this Court denied Mr. Ball's renewed motion, finding that it provided no reason for the Court to depart from the reasoning set forth in Order No. 45. The Court reiterated that coordinated pretrial proceedings were not completed, that Co-Lead Counsel had sole responsibility for pretrial discovery and settlement negotiations, and that this was an accepted method of pretrial management. The Court further observed that, contrary to Sams' arguments, discovery relevant to her claim had been pursued, received, and considered in settlement negotiations between Co-Lead Counsel for the State Law Plaintiffs, the Plaintiff States (including the Attorney General of Tennessee), and Defendants. (Order No. 55 filed 1/29/03.)

Mr. Ball then filed a motion to remand on behalf of Ms. Sams before the Judicial Panel on Multidistrict Litigation ("JPML"). In an Order dated June 17, 2003, the JPML denied Mr. Ball's motion, agreeing with this Court's assessment that a remand of the *Sams* action would be premature because coordinated pretrial proceedings were ongoing.

Sams' first objection merely reargues the remand issue previously rejected twice by this Court and once by the JPML. The objection does not address the fairness, adequacy, or reasonableness of the Proposed Settlement. Accordingly, it is overruled. The second objection is likewise overruled because it fails to address the fairness, adequacy, and reasonableness of the Proposed Settlement and merely restates a legal argument previously rejected by this Court; *i.e.*, that the Tennessee Attorney General lacks authority to represent Tennessee consumers in this action. (Order No. 68.)

Ms. Sams' final two objections do raise fairness concerns. Both address the Proposed Allocation Plan for disbursement of the Settlement Funds and argue that the distribution formula is not fair because it (1) fails to distinguish between states that allow indirect purchasers to recover antitrust damages and those that do not, and (2) fails to distinguish between Tennessee, which Sams' argues allows recovery for full consideration paid by the consumer, and states that do not allow such recovery. Both objections are overruled.

Class Counsel convincingly argued that the Proposed Allocation Plan is fair, adequate, and reasonable. Distinctions between states' laws were considered during settlement negotiations. It was decided, however, that the Proposed Plan was the best way to get the most cash to consumers. Applying a cost/benefit analysis, it was decided that the increased administration costs necessarily incurred in connection with screening so as

4

## 1151

to distinguish between consumers of states conferring arguably greater or lesser benefits would result in decreased benefits to consumers. It was also determined that the increased complexity necessarily required on claims forms would decrease the number of consumers taking advantage of this settlement.    Settlement always involves a cost/benefit analysis and compromise. This settlement is no different.

Objector Sams does not offer an alternative plan. Moreover, her fairness arguments fail to address the fact that indirect purchaser recovery in Tennessee was not a settled issue at the time the Settlement Agreement was entered into and likewise fail to address the fact that her "full consideration" argument may be more difficult to prove than she portrays. *See Sherwood v. Microsoft Corp*, No. M2000-01850, 2003 WL 21780975 (Tenn. Ct. App. July 31, 2003); *Orlando's Bakery v. Nutrinova Nutrition Specialities & Food Ingredients ("Sorbates Antitrust Litig.")*, No. 99-560-11, Slip Op. at 14-15 (20th Judicial Dist., Davidson County, Tenn. Feb. 6, 2002) (Memorandum and Final Order approving proposed settlement and plan of distribution in class action antitrust suit). Ms. Sams' objections also fail to consider the additional litigation risks, expenses and delay avoided by the Proposed Settlement and Allocation Plan. Finally, this Court observes that, despite her complaints, Objector Sams has chosen not to opt-out of the Settlement Class.    Rather, she has chosen to object and file an appeal despite knowledge that, pursuant to the Settlement Agreement, an appeal will delay disbursement of Settlement Funds to consumers who are typically elderly and ill and at risk of dying before her appeal is heard or decided.

This Court finds that the overwhelming positive Class response to the Proposed Settlement weighs heavily in favor of approval. *See Kogan*, 193 F.R.D. at 502.

Order No. 76 at 40-44.

Ms. Sams, through her attorney Gordon Ball, filed a notice of appeal challenging this Court's final approval of this class action settlement. This matter is presently before the Court on a motion brought by the Plaintiff States, represented by the Attorneys General of all fifty states, the District of Columbia and Puerto Rico, and Co-Lead Counsel for the State Law Plaintiffs (collectively "Plaintiffs"), for an order requiring Appellant Eugenia Wynne Sams to post an appeal bond, pursuant to Fed. R. App. P 7, in the amount of $427,743.00. Plaintiffs argue that the bond is appropriate because Ms. Sams' meritless

# 1152

12/15/2003    12:59    ELWOOD S. SIMON & ASSOCIATES                          NO.607    P07

appeal is the only thing standing between the implementation of the class action settlement and distribution of tens of millions of dollars to nearly 80,000 consumers, as well as third party payers and governmental agencies. Without adequate security, Plaintiffs assert, Ms. Sams' appeal will substantially reduce the settlement amount available to consumers who tend to be elderly and sick. Plaintiffs present the Court with an affidavit from a retired senior citizen living on a fixed income who attests that she needs her portion of the settlement money to help pay for prescription drug costs and that any delay presents a financial burden. (Shirla McLarty Aff. ¶ 5.) Plaintiffs also present affidavits attesting that several class members have died while this action was being prosecuted. (Cohen Aff. ¶ 3; Novak Aff. ¶ 2.)

## II.    Analysis

Federal Rule of Appellate Procedure 7 provides:

> In a civil case, the district court may require an appellant to file a bond or provide other security in any form and <u>amount necessary to ensure payment of costs on appeal</u>. . . .

Fed. R. App. P 7 (emphasis added).[1] "A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) (citing *Sckoinick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987)). "The power to impose an appeal

---

[1] Appeal bonds are distinguishable from *supersedeas* bonds "which [are] available only when a stay has been requested and granted in the district court." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, *1 (D. Me. Oct. 7, 2003). No request has been made for a stay of the Orders at issue in Ms. Sams' appeal.

**1153**

bond under Rule 7 has been specifically given to the discretion of the district court."
*Adsani*, 139 F.3d at 79 (citing Rule 7, Fed. R. App. P.).

Plaintiffs request an appeal bond in the amount of $427,743.00, broken down as
follows: (1) $1,000.00 for reproduction and other brief preparation costs taxable under
Fed. R. App. P. 39, (2) assuming a 16 month delay attributed to Ms. Sams' appeal,
$276,743.00 in claims administration costs, and (3) $150,000.00 in projected attorney fees
attributable to the appeal. Ms. Sams does not contest Plaintiffs right to $1,000.00 in
appeal costs for reproduction and brief preparation under Rule 7. At issue here are the
second and third components of Plaintiffs' requested appeal bond. Ms. Sams argues that
Fed. R. App. P. 7 does not permit damages caused by the delay incident to appeal or the
recovery of attorney fees in connection with an appeal. This Court disagrees.

Although the Sixth Circuit has not considered whether delay costs or projected
attorney fees may be included in an appeal bond under Rule 7, other Circuit Courts of
Appeal have considered these issues. In recent decisions considering whether potential
attorney fees may be included in a Rule 7 appeal bond, both the Second and Eleventh
Circuit Courts of Appeal have held that such fees may be included if the substantive
underlying statute at issue in the litigation authorizes the recovery of attorney fees as part
of recoverable costs. See *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998), *Pedraza v. United
Guar. Corp.*, 313 F.3d 1323 (11ᵗʰ Cir. 2002). Like the Eleventh Circuit in *Pedraza*, this
Court finds the Second Circuit's reasoning and decision in *Adsani* to be persuasive.

The *Adsani* court rejected the plaintiff's argument that "Rule 39 supplies the definition
of 'costs,' as that term is used in Rule 7" and the *Pedraza* court found this analysis to be

7

# 1154

"plainly correct. Under no fair reading of the simple, unambiguous language of Rule 39 can an exportable definition of 'costs' be perceived in the language of that provision." *Pedraza*, 313 F.3d at 1329-30. The Eleventh Circuit found this conclusion persuasive "despite the contrary conclusions of several treatises and the two circuit level decisions other than *Adsani* to address this issue." *Id.* at 1330 (citing *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 118 F.3d 1575 (3d Cir. June 10, 1997); *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985), 20 James Wm. Moore et al., *Moore's Federal Practice* ¶ 307.10[s], at 307-6 (3d ed. 2002); 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3953, at 293 (3d ed. 1999)). Ms. Sams relies on same contrary authority cited in *Pedraza*. Both the *Pedraza* and *Adsani* courts rejected this contrary authority because neither the *Hirschensohn* nor the *In re Am. President Lines* case "arose in the context of an underlying statute that provides for the shifting of attorneys' fees." *Pedraza*, 313 F.3d at 1330 (citing *Adsani*, 139 F.3d at 73-74).

Rather than defining allowable costs under Rule 7 from Rule 39 of the Fed. R. App. P., "the *Adsani* court determined that the definition of that term (as it is used in Rule 7) should be derived from the statutory fee shifting provision that attends the plaintiff's underlying cause of action. In support of this conclusion, the Second Circuit relied heavily on the Supreme Court's decision in *Marek v. Chesny*, 473 U.S. 1, 105 S. Ct. 3012, 87 L.Ed.2d 1 (1985)." *Pedraza*, 313 F.3d at 1331.

In *Marek*, the Supreme Court concluded that costs under Fed. R. Civ. P. 68 included attorney fees. *Id.* The Court observed that, although under the American Rule each party generally pays its own attorney's fees, Congress has the authority to change that rule, and

8

## 1155

LLWOOD J. SIIRAT & ASSOCIATES                                      NO. 667   P16

has done so in numerous statutes that permit attorney fees to be awarded as costs. *Id.*
(citing *Marek*, 473 U.S. at 8). The Court further observed that the drafters of Fed. R. Civ.
P. 68 were aware of these statutory exceptions to the American Rule and thus held that
"the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the
relevant substantive statute or other authority. In other words, all costs properly awardable
in an action are to be considered within the scope of Rule 68 'costs.'" *Id.* at 1331-32
(quoting *Marek*, 473 U.S. at 8-9). The Court elaborated, "absent congressional
expressions to the contrary, where the underlying statute defines 'costs' to include
attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule
68." *Id.* at 1332 (quoting *Marek*, 473 U.S. at 8-9).

The *Pedraza* court agreed with the *Adsani* court, finding that "Federal Rule of
Appellate Procedure 7 does not differ from Federal Rule of Civil Procedure 68 in any way
that would lead us to adopt a different interpretive approach in this case than was
embraced by the Supreme Court in *Marek*." *Id.* at 1332. In fact, the Eleventh Circuit found
"several substantive and linguistic parallels between Rule 68 and Rule 7" and concluded
that "the reasoning that guided the *Marek* Court's determination that Rule 68 'costs' are to
be defined with reference to the underlying cause of action is equally applicable in the
context of Rule 7." *Id.*

The United States District Court for the District of Maine also recently observed that
the First Circuit allows the inclusion of attorney fees in Rule 7 appeal bonds. *See In re
Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL
22417252, *1 (D. Me. Oct. 7, 2003) (citing *Sckolnick v. Harlow*, 820 F.2d 12 (1st Cir. 1987)

9

**1156**

12/19/2003    12:59    ELWOOD S. SIMON & ASSOCIATES                         NO.607    P11

and *Maher v. Hyde*, 272 F.3d 83, 87 (1st Cir. 2001)). It further observed that, although there is some disagreement among the courts on the issue whether a Rule 7 appeal bond may include costs of delay, in the First Circuit Court of Appeals "a Rule 7 bond can cover damages assessed under Fed. R. App. P. 38. . . ."    *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, *1 (comparing *In re Diet Drugs Prods. Liab. Litig.*, MDL 1203, 2000 WL 1665134, **4-5 (E.D. Pa. Nov. 6, 2000) with *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D. N.Y. 1999)). The *Compact Disc* court thus agreed with the decision in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 128, and held "that damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, *1.

The Court finds this authority persuasive. Ms. Sams' reliance on 28 U.S.C. § 1920 for a contrary result is misplaced. As Plaintiffs pointed out in oral argument, § 1920(6) includes compensation for court-appointed experts as taxable costs. In Order No. 59, ¶ 23, this Court appointed Rust Consulting, Inc. to serve as the Settlement Administrator of the Consumer Settlement Fund. Thus, Rust Consulting was appointed as an expert to administer the Settlement Fund.

In light of the above, the Court grants Plaintiffs' motion and will include in the Rule 7 appeal bond projected costs in the amount of $72,099.00 for the initial mailing and any required re-delivery to each of an estimated 80,000 consumer class claimants who have filed a claim registration to inform them that distribution of settlement proceeds has been

10

**1157**

12/19/2003    12:59    ELWOOD S. SIMON & ASSOCIATES                    NO.607    D12

delayed as a result from Ms. Sams' appeal and to request notification of any change of address that may occur during the delay. (Potter Aff., Ex. 1, p. 1.) Mindful that Plaintiffs have filed a motion for an expedited appeal that Ms. Sams assures the Court she will not oppose (Resp. at 2), this Court will include additional costs of delay attributable to an anticipated 6-month delay for decision on the expedited appeal rather than the 16-month delay projected by Plaintiffs. The additional administrative costs for this 6-month delay total $51,330.00, for a total of $123,429.00. (Potter Aff., Ex. 1.)

Attorney fees are also properly included as costs in the requested Rule 7 appeal bond. Many of the statutes invoked in this litigation contain language that qualifies under the *Adsani* and *Pedraza* test for inclusion of attorney fees as costs. *See, inter alia*, La. Rev. Stat. Ann. Title 51 § 136 (providing that counsel "shall be paid a reasonable attorneys fee, as the court may fix, out of the property of the defendant and this fee taxed as costs of court"); Mass. Gen. Laws ch. 93A, § 4 (allowing recovery of the costs of suit, "including reasonable attorneys' fees"); Minn. Stat. § 325D.57; 10 Me. Rev. Stat. Ann. § 1104; Wis. Stat. § 133.18(1)(a); and N.C. Gen. Stat. § 75-16.1.[2] Mindful of Plaintiffs' motion for an expedited appeal, this Court will include $50,000, a portion of the projected attorney fees, in the Rule 7 appeal bond. (Cohen Aff. ¶ 2.)

---

[2]Ms. Sams' argument that the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109 (2003) does not allow the recovery of attorney fees fails for a number of reasons. First, it ignores the fact that the substantive law underlying Plaintiffs' litigation involves the substantive laws of all fifty states, the District of Columbia, and Puerto Rico; not just Tennessee. Furthermore, the statutory language cited by Ms. Sams does not apply to the facts presented here. The statutory language she cites permits the court to award damages, reasonable attorney fees and costs to the defendant if the court finds that the plaintiff's private action against the defendant is frivolous, without legal or factual merit, or brought for the purpose of harassment.

11

## 1158

III.   **Conclusion**

Taking all circumstances into account, this Court GRANTS Plaintiffs motion for an appeal bond, but in a lower amount of $174,429.00 reflecting (1) $1,000.00 in filing and brief preparation costs (Cohen Aff. ¶ 2); (2) $123,429.00 in incremental administration costs incurred as a result of Ms. Sams' appeal (see Potter Aff , Ex. 1, p. 1); and (3) $50,000.00 for projected attorneys fees (Cohen Aff. ¶ 2). Ms. Sams is to post her bond by Monday, January 5, 2004.


Nancy G. Edmunds
U.S. District Judge

Dated:   18 DEC 2003

12

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


RECEIVED

JUN 2 2007

HAGENS

--------------------------------------------------------------

IN RE: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION     MDL No. 1456

--------------------------------------------------------------     CIVIL ACTION: 01-CV-12257-PBS

THIS DOCUMENT RELATES TO:

ALL ACTIONS                                        Judge Patti B. Saris

--------------------------------------------------------------

## <u>OBJECTION OF DEMRA JORDAN</u>

COMES NOW, DEMRA JORDAN, who is a member of the proposed settlement class and objects to the certification of this class and the final approval of this settlement and would respectfully show:

1.  Demra Jordan is a member of the proposed settlement class. *See* <u>Affidavit of Demra Jordan</u>, attached as "Exhibit A" and incorporated herein, in its entirety, by reference. Specifically,

    • Demra Jordan is a member of the "Private Payor Class";

    • Demra Jordan paid for Zantac (Ranitidine HCL), a GlaxoSmithKline "Covered Drug" from January 1, 1991 through the mid-1990s;

    • Demra Jordan paid the full amount out-of-pocket for the Zantac (Ranitidine HCL) from January 1, 1991 through the mid-1990s;

    • On several occasions, from January 1, 1991 through the mid-1990s, when Demra Jordan had health insurance, she made a percentage co-payment for Zantac (Ranitidine HCL). *Id.*

2.  Since Demra Jordan has not elected to opt out of this proposed settlement, Demra Jordan

<u>OBJECTION OF DEMRA JORDAN</u> - Page 1

has standing to bring this objection.

3.      The proposed Settlement Class cannot be properly certified due to a lack of

predominance of common issues pursuant to Federal Rule of Civil Procedure 23(b)(3), as evidenced by

this Court's prior rulings in this case.

Respectfully submitted,

Scott Kinsel
Texas Bar: 24038662
MOORE, LANDREY, L.L.P.
1609 Shoal Creek Boulevard, Suite 100
Austin, Texas 78701-1054
Ph:     (512) 499-8900
Fax:    (512) 628-3285

Lana Shvartsman
BBO# 648164
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
Ph: 617-570-1273
Fax: 617-523-1231

OBJECTION OF DEMRA JORDAN - Page 2

## CERTIFICATE OF SERVICE

This is to certify that on this $\underline{2\,/\,{}^{s\,t}}$ day of June, 2007, a true and correct copy of the foregoing has been forwarded by Federal Express, fax, e-mail and certified mail, return receipt requested to the following:

Steve W. Berman
Hagens, Berman, Sobol & Shapiro
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Email – steve@hbsslaw.com
Fax – 206.623.0594

Frederick G. Herold
Dechert, L.L.P.
1117 California Avenue
Palo Alto, CA 94304
Email – Frederick.herold@dechert.com
Fax – 650.813.4848

Scott Kinsel

# "EXHIBIT A"

# A F F I D A V I T

**STATE OF TEXAS**

**COUNTY TRAVIS**

   "My name is Demra Jordan, I am over eighteen years of age, and am fully competent to make this affidavit.  I have personal knowledge of the matters discussed herein and they are true and correct.

- I was prescribed and took Zantac (Ranitidine HCL), a GlaxoSmithKline drug, on or after January 1, 1991 through the mid-1990s;
- I paid the full amount out-of-pocket for Zantac (Ranitidine HCL) I was prescribed and took on or after January 1, 1991 through the mid-1990s;
- On several occasions, from January 1, 1991 through the mid-1990s, when I had health insurance, I made a percentage co-payment for Zantac (Ranitidine HCL).

**FURTHER, AFFIANT SAYETH NOT."**


_____
**Demra Jordan**


**SUBSCRIBED** and **SWORN TO BEFORE ME**, the undersigned authority, on this the 21 day of _June_, 2007, to certify which witness my hand and seal.

RENATE JEAN OWENS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 10, 2009

Notary Public in and for the State of Texas
My commission Expires: 5-10-09