UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| ) | |
| **THIS DOCUMENT RELATES TO:** ) | Hon. Patti Saris |
| ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06-11337-PBS ) ) ) ) | |

**UNITED STATES' OBJECTIONS TO AUGUST 13, 2007 ORDER BY MAGISTRATE JUDGE BOWLER**

Pursuant to Fed R. Civ. P. 72(a) and Rule 2(b) of the Rules for United States Magistrates in the District of Massachusetts, the United States respectfully files its objections to Magistrate Judge Bowler's Order of August 13, 2007, concerning Defendant Abbott Laboratories Inc.'s Renewed Motion to Compel Evidence Withheld under the Deliberative Process Privilege. The Magistrate Judge's Order affirmed the United States' assertion of the deliberative process privilege over the documents listed on the relevant privilege logs, and denied Abbott's motion to compel production with respect to a substantial majority of the documents on the logs. However, the Magistrate Judge held that Abbott's need for two specific categories of privileged documents outweighed the Government's interest in the protection of its deliberative processes with respect to this material, and thus ordered the United States to produce the documents on its logs that fell into one of these two categories. The United States respectfully submits that this latter holding is erroneous, and should be set aside by this Court.

## PROCEDURAL BACKGROUND

In late 2003, the United States received several subpoenas from the defendants in this and another multi-district litigation pending in this district: MDL Nos. 1456 and 1430. The subpoenas were directed to both the Department of Health and Human Services (HHS) and to several regional Medicare carriers that HHS uses to administer the Medicare program. In response to these subpoenas, in 2004, the United States produced approximately 95,000 pages of documents from the Carriers, and approximately 22,000 pages of documents from HHS itself. After discussions between the United States and the defendant manufacturers, the United States later produced privilege logs, both from the Carriers and from the Centers for Medicare and Medicaid Services (CMS), and asserted a claim of privilege over 600 documents from this production, many of which were withheld on the basis of the deliberative process privilege. These privilege assertions were never challenged in Court by any of the parties in the two MDL proceedings.

After the United States intervened in the instant case as to Abbott, Abbott propounded a Request for Production (RFP) seeking all of the documents the government withheld from its response to the 2003 subpoenas on the grounds of the deliberative process privilege. *See* Ex. 1, *Abbott's First Set of Requests for Production*, p. 27, RFP No. 126. In response to Abbott's request, the United States undertook an additional review of the documents withheld from its earlier production. After completing this review, the United States agreed to release all or part of approximately 200 documents from the 2004 Carrier and CMS privilege logs. The updated CMS and Carrier privilege logs contain entries for 451 documents, a substantial majority of which

have been withheld on the basis of the deliberative process privilege.  Abbott moved to compel production of all of the documents on these logs that were withheld solely on this basis.

In addition, Abbott issued a number of RFPs seeking documents maintained by the HHS Office of Inspector General (OIG).  Specifically, Abbott has sought the underlying work papers and files associated with a set of Inspection Reports and Audits that various OIG offices have published over the last 35 years.  See Ex. 1, *Abbott's First Set of Requests for Production* at pp. 13-14, RFP No. 20, Schedule.  The United States produced a substantial number of responsive documents in response to Abbott's requests, but asserted the deliberative process privilege over approximately 240 responsive documents.[1]  Abbott's Motion to Compel sought all of the documents from this log as well.

Abbott advanced several arguments in its Renewed Motion to Compel.  First, Abbott argued that the United States had waived its rights to assert the privilege because the government is the plaintiff in this case.  Alternatively, Abbott asserted that its need for the specific documents on the privilege logs, in light of the relevant issues in the case, outweighed any possible governmental interest in protecting its deliberative processes from disclosure.  Abbott further contended that the United States failed to assert the deliberative process privilege in a procedurally and substantively appropriate manner.

After hearing oral argument on July 20, Magistrate Judge Bowler ruled on Abbott's Motion on August 13, 2007.  In her ruling, the Magistrate Judge correctly rejected the two broader arguments that Abbott raised in its motion – namely, that the United States had 'waived"

---

[1] At this point, the United States has produced over 50,000 pages of OIG documents in response to Abbott's expansive RFPs.

the privilege by bringing this action against Abbott, and that the United States had asserted the privilege in an improper manner.  Magistrate Judge Bowler thus denied Abbott's request for a sweeping, prospective ruling barring the United States from asserting the deliberative process privilege in this case, and also stated that her review of the agency declarations attached to the United States' Opposition was sufficient to "convince this court that the documents are both predecisional and deliberative," thereby rejecting Abbott's contention that the United States had asserted the privilege improperly.  *See* August 13, 2007 Order.

However, the August 13, 2007 Order held that Abbott's need for certain categories of documents outweighed the government's interests in protecting these categories of documents from disclosure.  The Order denied Abbott's Motion to Compel, "except to the extent that the approximately 60 documents that expressly reference Abbott Laboratories, Inc. and/or the subject drugs as well as those documents that concern the government's knowledge of the common use of spreads with respect to published AWPs shall be produced." August 13, 2007 Order.  In so holding, the Court held that Abbott's need for the foregoing categories of documents was "substantial . . . in light of their relevance." August 13, 2007 Order.   As detailed below, the United States respectfully objects to the Magistrate Judge's Order to disclose these two categories of documents.

## OBJECTIONS AND PROPOSED RELIEF

The United States objects to the Order of Magistrate Judge Bowler in the following respects:

    1.    The Order requires the United States to disclose approximately 41 documents simply because they refer to Abbott Laboratories, Inc. or to the

        subject drugs.[2]  These documents are not relevant to this case.  Indeed, many of the references to Abbott or to the subject drugs in these documents are completely tangential, a fact which could be confirmed through an *in camera* review of the documents.  Furthermore, Abbott has access to information substantially similar to that contained in these documents from other sources.  Pursuant to the principles of the balancing test, it is clear that the United States' interest in preserving its deliberative processes outweighs Abbott's need for these materials.

    2.    The Order requires the United States to disclose approximately 3 documents that "concern the government's knowledge of the common use of spreads with respect to published AWPs."  These documents are similarly tangential to the issues relevant to the case, and the information that Abbott claims to need from such documents is available from numerous other, nonprivileged sources.  To the extent that the language of the Order is read more broadly, it would obligate the United States to disclose additional documents of even more limited relevance to the issues in the instant case.  Abbott's need for any of these documents in light of the issues in this case is outweighed by the government's interest in preserving the vital privilege that attaches to these documents.

With respect to proposed relief, the United States respectfully requests that this Court hold that Abbott's need for the approximately 44 documents, in light of the relevant issues in this case and the discovery that has already been conducted, is outweighed by the United States' interest in keeping the contents of these documents confidential pursuant to the deliberative process privilege.  The United States is willing to proffer these 44 documents for an *in camera* review if such a review would assist in the Court's resolution of the United States' objections to the August 13, 2007 order.

---

    [2] The Magistrate Judge's reference to "the approximately 60 documents that reference Abbott Laboratories, Inc. and/or the subject drugs," is based on a rough estimate of the number of such documents that Government Counsel made at oral argument.  *See* Transcript of Motion Hearing of July 20, 2007, Docket No. 4521, at p. 14.  Following the issuance of the August 13, 2007 Order, personnel from the Department of Justice reviewed each of the 699 underlying documents listed on the three logs, and found 41 documents that expressly reference Abbott and/or the subject drugs.

**STANDARD OF REVIEW**

The standard of review by a district court of a Magistrate Judge's nondispositive discovery ruling is set forth in 28 U.S.C. § 636(b)(1)(A). Pursuant to this provision, a Magistrate Judge's discovery ruling will be set aside if it is "clearly erroneous or contrary to law." *Id*; *In re Administrative Subpoena Blue Cross Blue Shield of Massachusetts*, 400 F.Supp.2d 386, 388 (D. Mass. 2005).

**ARGUMENT**

The Magistrate Judge correctly ascertained that the documents listed on the United States' three privilege logs were "predecisional and deliberative," and hence covered by the deliberative process privilege. However, the Magistrate Judge erred in her application of the requisite "balancing test" to the documents at issue. By ordering the disclosure of (1) any document that mentions "Abbott Laboratories, Inc. and/or the subject drugs," and (2) any document that "concern(s) the government's knowledge of the common use of spreads with respect to published AWPs," the Magistrate Judge has required the United States to disclose a number of privileged documents that go to the very heart of the deliberations protected by the deliberative process privilege, and has done so in a context where Abbott can articulate no compelling need for the privileged documents. An appropriate application of the relevant balancing test to these documents mandates a different result.

I.  Principles of the Balancing Test

After rejecting Abbott's argument that the United States had asserted the privilege improperly, the Magistrate Judge turned to an evaluation of the parties' "competing interests" with respect to the documents at issue. *See* August 13, 2007 Order. Such an evaluation of the

relevant "competing interests" is appropriate, because the deliberative process privilege is not an absolute one. Once a court concludes that the privilege has been properly invoked, that court must balance the public interest in the protection of the deliberative process against the movant's particularized need for the information as evidence in the case before it. *See, e.g., Comm. for Nuclear Responsibility, Inc. v. Seaborg,* 463 F.2d 788, 791 (D.C. Cir. 1971); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 327 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967); *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 294 (N.D. W. Va. 1992). To compel disclosure, the movant must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender." *Carl Zeiss*, 40 F.R.D. at 328-29.

One of the most oft-cited statements of the factors to be considered in balancing the competing interests in this context is found in *In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp 577, 583 (E.D.N.Y. 1979). When balancing the Government's interest in protecting its deliberative processes against the defendant's need for the evidence, Judge Weinstein articulated the following considerations:

> (I) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v)the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* (internal citations omitted).

In applying these principles to the documents that the Magistrate Judge has compelled the United States to produce, it is clear that the Magistrate Judge erred in ordering disclosure of the two categories of privileged documents identified in her Order. The privileged documents are irrelevant to the specific allegations lodged against Abbott in this case, the information that

Abbott contends that it needs from these privileged documents can (and often has) been obtained from other sources, and the internal debate necessary to effective governmental decision making will suffer real and tangible consequences if these two categories of documents are disclosed. We begin this analysis by looking at the first prong of Judge Weinstein's well-established balancing test.

II.   The "Relevance of the Evidence Sought to be Protected"

The forty-four privileged documents that would be subject to disclosure under the August 13, 2007 Order are at best collateral, and at worst utterly irrelevant, to the specific issues presented in this case. Several of the United States' exhibits to this set of objections make this obvious, and serve to clarify the overbreadth of the Magistrate Judge's August 13, 2007 Order.

For example, the privileged document bearing the bates numbers HHC903-0520-0523 (*See* Ex. 2, filed under seal) is a draft of an HHS policy document concerning coverage of infusion pumps. The document contains numerous handwritten edits and marginalia. The only reference to Abbott or an Abbott drug anywhere in this document is a reference to Vancomycin, a subject drug, on the bottom of page 903-0521. The Magistrate Judge's Order does not appear to contemplate redaction; it simply orders the United States to disclose any documents that reference Abbott or the subject drugs. Despite its stray reference to Abbott, this document has absolutely no relevance to any of the issues in dispute in this case. The Magistrate Judge's Order, when coupled with the enormous breadth of Abbott's document requests, necessarily leads to situations such as this one, where privileged documents have to be disclosed because of stray references to Abbott or a subject drug, notwithstanding the fact that they have no pertinence to the relevant issues in this case. The fact that a document references Abbott or a subject drug is

not a reliable indicator that the document is sufficiently relevant to the case against Abbott so as to vitiate the privilege.

The second clause of the Magistrate Judge's Order requires production of all documents "that concern the government's knowledge of the common use of spreads with respect to published AWPs." The language of this portion of the Order appears straightforward; the Order refers to documents reflecting government knowledge of the "use of spreads," a phrase which has clear import in the context of this MDL. The improper "use of spreads" by manufacturers to market their drug products has formed a key component of the allegations of numerous plaintiffs, including the United States in the instant case, and the Order's reference to this concept is clear and understandable. Nonetheless, it appears that Abbott will interpret this portion of the Order as obligating the United States to disclose any documents that reflect government knowledge of "spreads" between the AWP and the acquisition costs of drugs. Such an interpretation of the Order would be tortured; had the Magistrate Judge wished to order disclosure of such a broad category of documents, she could have used the term "existence of spreads" rather than the term "use of spreads." Indeed, reading the Order in such a manner implies that the Magistrate Judge used obtuse language to express a simple concept, as opposed to the likelihood that the Magistrate Judge simply meant what she stated in the Order. However, regardless of how this portion of the Order is interpreted, it is objectionable, because, among other reasons, it obligates the United States to disclose documents of minimal to no relevance to this case.

Properly interpreted, the Order requires the United States to disclose only three documents, as there are few documents on the logs reflecting government deliberations concerning manufacturer "use" of the spread, as in marketing efforts. Despite the limited impact

of this portion of the Magistrate Judge's Order on the United States' privileged documents, it too requires disclosure of documents of no substantive relevance to the case. For example, the document bates-labeled HHC906-0001-0002 (Ex. 3, filed under seal), is an internal, 2002 memorandum discussing carrier investigations of payment for Lupron. The document mentions TAP's (Lupron's manufacturer) 2001 criminal plea for its drug pricing and marketing conduct with respect to Lupron. Under the terms of the Magistrate Judge's Order, the reference to TAP's fraudulent marketing conduct could be construed as "concerning the government's knowledge of the common use of spreads with respect to AWP price reporting," and thus would arguably have to be disclosed. However, this document is outside the time frame of the United States' First Amended Complaint, does not contain any discussion of Abbott-specific conduct, and contains no reference to any of the drugs at issue in the case. Indeed, Abbott itself has affirmatively argued that TAP documents are of no relevance to this case. *See Def's Response to United States' Objections to July 19, 2007 Order by Magistrate Judge Bowler*, Docket No. 4683, at 15. The document is simply not relevant to any of the government's claims or Abbott's defenses to the specific allegations at issue.

      To the extent that this second portion of the Magistrate Judge's Order is interpreted more broadly, to include documents that refer to the "existence of spreads," the Order would necessarily implicate a broader set of documents on the logs. A larger number of the documents on the logs reflect internal deliberations among government employees regarding drug prices generally, and many reflect some knowledge of the existence of spreads on certain drugs. In its prior pleadings, Abbott has argued that such evidence of generalized "government knowledge and deliberations" in the area of drug reimbursement is critical to its defenses. *See Def's*

*Memorandum in Support of its Renewed Motion to Compel*, Docket No. 3960, at 4-6.  More specifically, Abbott contends that deliberations that reflect knowledge of the existence of "spreads" between reported AWPs and the acquisition costs of drugs in general, regardless of whether the drugs are the subject of this case, are relevant, and that what the HHS "knew and understood and agreed to" is of great importance to its case.  *See id.* at 8-9.  Contrary to Abbott's assertions, this sort of generalized "government knowledge" is irrelevant to this case, rendering documents that contain such information similarly irrelevant to the issues before this Court.

As was articulated in some detail in the *United States' Opposition to Abbott's Motion to Compel*, evidence of generalized knowledge of problems with AWP-based reimbursement systems affords Abbott no defense under the False Claims Act (FCA), nor is such evidence relevant to a defense under the Government's common-law causes of action.  *See United States' Opposition to Defendant's Renewed Motion to Compel*, Docket No. 4076, at 7-12.  Under the FCA, government knowledge of the defendant's fraudulent conduct affords no defense unless the defendant (1) fully informed the government of the conduct at issue and (2) the Government expressly *approved* of the conduct at issue, in which case the government knowledge and approval could undermine the defendant's scienter.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 2007 WL 861178, at *7 (D. Mass. March 22, 2007) (denying motion to dismiss California False Claims Act claim, noting that government approval of the particulars is necessary to negate scienter).  Under the common law fraud count, Abbott would need to show (to address the justifiable reliance prong of the common-law fraud cause of action) that the government made a specific decision to rely upon Abbott's reported prices despite the ability, under the system as it currently existed, to make a different choice.  Documents reflecting

11

macro-level discussions of the AWP-based reimbursement system that reference the existence of spreads are simply not relevant to any defense Abbott can proffer to the specific allegations its faces in this case.  This case is <u>not</u> about whether AWP-based reimbursement systems were flawed, or about awareness of those flaws on the part of particular government employees, or about the opinions of individual agency employees concerning the merits or demerits of the AWP-based system.   This case is about whether Abbott abused the system that was in place by reporting mega-spreads and using those spreads as a marketing tool to maintain utilization of its products.

Earlier in this MDL, this Court articulated the extent to which relevant issues in these cases have to be resolved through reference to specific defendants and specific conduct.   In an April 11, 2007 pretrial conference the Court held in a case on a different track in this MDL, the Court was advised that defendant AstraZeneca sought to introduce the testimony of an ex-HHS employee, Stanley Weintraub.   Counsel for AstraZeneca represented that Weintraub would testify as to government "knowledge of spreads and the AWP system," and not specifically as to spreads on AstraZeneca drugs.  *See Pretrial Conference Transcript*, April 11, 2007, Ex. 4, at 21. This Court stated that it was unclear how general testimony about the existence of spreads could be relevant to the allegations against AstraZeneca, noting that "it's not clear to me that knowledge of spreads in other companies is going to be relevant either.  One thing I learned from the bench trial is how specific this is company by company. Each company has a different tale." *Id*.  AstraZeneca eventually withdrew Mr. Weintraub as a witness after acknowledging that his testimony about "government knowledge" of spreads was not specific to AstraZeneca or the

drugs at issue in that case. *See Defendant Astrazeneca's Response to Request for Proffer*, Docket No. 4143, at 2.

In the instant case, the relevance of generalized government knowledge of spreads is similarly divorced from the actual issues in play. Documents that refer to spreads on other drugs or that reflect macro-level debates on drug reimbursement cannot afford Abbott any defense to the specific allegations the United States has lodged against the company.

In sum, the first clause of the Magistrate Judge's Order compelling production of documents that reference Abbott or the subject drugs is flawed, because references to Abbott or a subject drug are not adequate proxies for relevance in this case (something that the Court could confirm through *in camera* review). The second clause of the Magistrate Judge's Order, properly interpreted, is nonetheless erroneous as it too requires the disclosure of irrelevant privileged documents. If the second clause of the Order is interpreted more broadly, the Order is even more obviously flawed, because such a reading would require the production of a broader set of privileged documents with an even more pronounced lack of relevance to the instant case.

III. "The Availability of Other Evidence"

The second prong of the balancing test requires courts to assess the availability of "other evidence" that the movant can use to assert its claims or defenses. One striking feature of the instant case is the fact that the very evidence that Abbott claims to be seeking from these privileged documents – namely, generalized information reflecting government knowledge of the existence of spreads on drugs – is in fact readily available from other sources. The United States has not blocked Abbott's discovery into what individual government employees knew, believed, understood, or agreed to in the area of drug reimbursement. On the contrary, despite the

fundamental irrelevance of this sort of evidence, the United States has produced a wealth of material that reflects such information, and will continue to produce similar non-privileged material responsive to Abbott's broad discovery requests. Abbott does not need to vitiate a critical governmental privilege in order to obtain access to information about what government officials knew or believed about drug reimbursement.

For example, the OIG privilege log contains a number of internal OIG drafts and iterations of the 1997 Report *Excessive Medicare Reimbursement for Prescription Drugs*. *See Declaration of Robert A. Vito*, Ex. 5, at p. 9 of attached privilege log. Pursuant to the Magistrate Judge's Order, the United States would be obligated to disclose all of these drafts, because a subject drug, Vancomycin, is one of the 23 drugs studied in this report and thus is among the drugs referred to in the drafts.

Already, Abbott has the final copy of the report, the formal CMS comments upon the report's findings, and OIG's formal response to CMS's comments. The United States has also produced over 4,000 pages from the internal OIG work paper file for this report, including background material relevant to the preparation of the report, OIG's communications with outside sources of data and information, non-privileged internal OIG communications about the report and its methodology, and, most critically, the underlying data upon which the report was based. Abbott has also deposed the principal author of the report, Linda Ragone, and has had the opportunity to ask her (and other OIG personnel that participated in the drafting process, such as Robert Vito and David Tawes) what facts she relied upon in drafting the report, what methodology she used, and what she knew or thought about drug reimbursement generally or

Vancomycin specifically while she prepared this report.[3]  What has been withheld from Abbott on the OIG log is a remarkably narrow band of documents that go to the core of OIG's deliberative processes – namely, the non-public, internal discussion within the agency about how the published report should be drafted, worded, and finalized.  To the extent Abbott wants to know what OIG officials understood, knew, or believed when assembling this report, they have it, and they do not need to invade a privilege to obtain other iterations of it.

In sum, Abbott already has precisely the kind of information that it claims to need from the documents that are implicated by the Magistrate Judge's Order.  Providing Abbott with these privileged documents would accomplish nothing beyond the disclosure of redundant, cumulative, and irrelevant information at the expense of a vital governmental privilege.   The Magistrate Judge clearly erred in ordering the disclosure of such information in light of Abbott's extensive access to similar information from other sources.

IV.     "The Role of the Government in the Litigation" and the "Seriousness of the Litigation"

The third and fourth prongs of the balancing test are of limited relevance to the United States' instant objections to the August 13, 2007 Order.  The United States is indeed the plaintiff in this litigation; however, the government does not waive its right to protect its deliberative processes simply because it is a plaintiff in an enforcement action.  *See, e.g., Landry v. FDIC*, 204 F3d 1125, 1136 (D.C. Cir. 2000); *United States v. Hooker Chemicals and Plastics*, 114 F.R.D. 100, 103 (W.D.N.Y. 1987).   As to the "seriousness" of the litigation and the issues involved, the Government readily concedes that the issues involved here are serious.  Abbott's

---

[3] The depositions of OIG employees Vito, Tawes, and Ragone have not yet concluded. Dates for continuing their depositions are presently being scheduled.

practice of reporting false prices created a series of megaspreads on several Abbott products, costing the taxpayers a substantial sum over a ten-year period. The United States does not object to the Magistrate Judge's Order on the grounds that the litigation is insufficiently serious to warrant interference with the government's deliberative processes. The United States does contend that Abbott's *need* for the documents at issue in this case is insufficiently serious to warrant interference with the government's deliberative processes, and seeks relief from the Magistrate Judge's Order on this and other bases.

V.     Harm to the Government if the Documents Are Disclosed

Pursuant to the balancing test, Abbott's need for the documents must be weighed against the public interest in protecting the deliberative process privilege. In formally asserting the privilege in its opposition to Abbott's Motion to Compel, the United States obtained declarations from Leslie Norwalk, the Acting Administrator of CMS, and Robert Vito, a Regional Inspector General from the OIG. The declarants, both senior officials within their respective agencies, articulated the harm likely to come if the documents contained on the logs were subject to disclosure in future litigation.

For example, the Vito declaration sets forth the nature of the inspection work conducted by the OIG, and discusses the importance of candid and internal discussion, deliberation, and analysis to process of conducting and publishing inspection reports. *See, e.g.*, *Declaration of Robert A. Vito*, Ex. 5 at ¶ 20. A critical part of the agency's work comes in the drafting phase, in which the agency engages in substantial internal deliberation about a given report's conclusions, recommendations, and wording. *See id.* at ¶¶ 12-14. Mr. Vito – who has worked with OIG since 1978 – goes on to state that "I have no doubt that if my staff and other or others within the OIG

expected that their comments, criticisms, suggestions, or proposed edits made during our report process to be publicly displayed in the context of a lawsuit, this would stifle much of the very necessary candid dialogue among us.  The OIG's work would suffer as a result, to the detriment of HHS programs and the public." *Id*. At ¶ 24.

The Norwalk declaration similarly identifies the concern within that agency about the possibility of a chilling effect upon agency deliberations if these documents are to be released.  Ms. Norwalk's declaration articulates the key role that candid internal discussion plays in CMS's efforts to set policy consistent with the agency's controlling statutes, regulations, and objectives, and similarly notes that her belief that CMS employees would feel constrained in offering candid advice if they lacked confidence that their views would be treated as confidential.  *See* Ex. 6, *Declaration of Leslie V. Norwalk*, at pp. 17-21.

These declarations, from senior personnel within their respective agencies, clearly set forth the potential harm to the agency's internal deliberative processes if these sorts of materials are released.  When weighed against Abbott's underwhelming need for the documents at issue, the balancing test tilts heavily in the United States' favor.

VI.   Summary

An appropriate application of the balancing test to the documents affected by the Magistrate Judge's order makes it plain that the Magistrate Judge's order is erroneous.  The requirement that the United States disclose any document that references Abbott or a subject drug will lead to the disclosure of a number of privileged documents for which Abbott has no need; the requirement that the United States disclose any documents reflecting "government knowledge of the common use of spreads with respect to published AWPs" will have a smaller, but similar

effect.  The evidence that Abbott claims to need from these documents is widely available elsewhere, and indeed, much of this information has been produced in this case.  The Magistrate Judge's Order takes an excessively broad view of what documents are relevant to the case, fails to consider the availability of evidence from other sources to which Abbott has access, and improperly holds that Abbott's need for several categories of documents outweighs the important governmental interest in preserving the privilege in this case.  The infirmity of this Order amounts to clear error that should be modified by this Court.

## CONCLUSION

For the foregoing reasons, the United States requests that its objections to the Magistrate Judge's August 13, 2007 Order be sustained, and that the Court set aside the portion of that Order obligating the United States to disclose two categories of privileged documents to Abbott.  The United States will provide the approximately 44 documents implicated by the August 13, 2007 Order for an *in camera* review if such a review would assist the Court in evaluating the United States' objections.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |

 /s/ George B. Henderson, II                                     /s/ John K. Neal
George B. Henderson, II                                    Joyce R. Branda
Assistant U.S. Attorney                                      Daniel R. Anderson
John Joseph Moakley U.S. Courthouse        Renée Brooker
Suite 9200, 1 Courthouse Way                       Justin Draycott
Boston, MA 02210                                              Gejaa T. Gobena
(617) 748-3398                                                     John K. Neal
(617) 748-3272                                                     Civil Division
                                                                               Commercial Litigation Branch
R. ALEXANDER ACOSTA                             P. O. Box 261
UNITED STATES ATTORNEY                      Ben Franklin Station
SOUTHERN DISTRICT OF FLORIDA    Washington, D.C.  20044
                                                                               Phone:  (202) 307-1088

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101


Dated: September 10, 2007

## CERTIFICATE OF SERVICE

     I hereby certify that I have this day caused an electronic copy of the above "UNITED STATES' OBJECTIONS TO AUGUST 13, 2007 ORDER BY MAGISTRATE JUDGE BOWLER" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: September 10, 2007

                      /s/ John K. Neal
                      John K. Neal