## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

### ABBOTT LABORATORIES, INC.'S OBJECTIONS TO
### MAGISTRATE JUDGE BOWLER'S AUGUST 13, 2007 ORDER

Pursuant to Fed. R. Civ. P. Rule 72(a) and Rule 2(b) of the Rules for the United States

Magistrates in the United States District Court for the District of Massachusetts, Defendant

Abbott Laboratories, Inc. respectfully files these objections to Magistrate Judge Bowler's August

13, 2007 Order (the "August 13 Order").

### PRELIMINARY STATEMENT

Since the inception of discovery nearly one year ago, Abbott has diligently sought to

obtain discovery of tantalizing, relevant evidence that the Government has withheld from this

and other AWP cases under the deliberative process privilege.  On the basis of this privilege, the

Government has withheld approximately 600 documents responsive to Abbott's discovery

requests, has refused to even log what are likely hundreds more, and has instructed key witnesses

from the federal government not to answer important, probing questions at deposition.  The

Government has thwarted this non-burdensome discovery even though (1) by its own actions, it

has indisputably put its knowledge and deliberations in the area of Medicare and Medicaid drug

reimbursement policy squarely at issue in this fraud-based action, and (2) it has presented no

credible explanation of how disclosure of the withheld evidence under a protective order would

harm any Governmental interest.

Since December 2006, the parties have filed six memoranda, attended multiple, lengthy meet-and-confers, and participated in two hearings relating to the deliberative process privilege. On August 13, 1997, more than two-thirds of the way through fact discovery, Magistrate Judge Bowler issued the following ruling on Abbott's motion to compel:

> Electronic ORDER entered denying [3959] Motion to Compel, at this time without prejudice except to the extent that the approximately 60 documents that expressly reference Abbott Laboratories, Inc. ("Abbott") and/or the subject drugs as well as those documents that concern the government's knowledge of the common use of spreads with respect to published AWPs shall be produced. The declarations of Robert A. Vito and Leslie V. Norwalk convince this court that the documents are both predecisional and deliberative. *See Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs*, 60 F. 3d 867, 884-885 (1st Cir. 1995). Having weighed all of "the competing interests," *id.* at 885 (citing *Fire Eastern Corp. v. Mainwaring*, 21 F. 3d 465, 468 n. 5 (D.C. 1994); *Fire Eastern*, 21 F.3d at 468 n. 5 (listing the competing interests the court should consider), Abbott's need for the foregoing documents is substantial particularly in light of their relevance and the showing that memories have faded with the passage of time. Abbott shall, as stated, "keep [the documents] strictly confidential" (Dkt. No. 3960, p.11) (Bowler, Marianne) (Entered 8/13/2007).

On its face, Judge Bowler's ruling seems to represent an effort to find some middle ground. But the compromise it settles upon is flawed, unworkable, and unclear. The August 13 Order incorrectly rejected Abbott's argument that the deliberative process privilege has no application where the Government puts its knowledge at issue by asserting fraud-based claims. It also offered the parties little guidance on how to handle the Government's assertions of the privilege to suppress deposition testimony. Moreover, in describing which documents the Government is required to produce, Judge Bowler used an ambiguous phrase: "those documents that concern the government's knowledge of the common use of spreads with respect to published AWPs shall be produced." This ruling has only invited further disagreement. Finally,

and perhaps most importantly, it appears that Judge Bowler did not conduct an *in camera* review of *any* of the documents withheld by the Government.

The issues raised in Abbott's motion are vitally important to a full and fair resolution of this dispute. Denying Abbott access to these documents and testimony undermines the credibility of these proceedings and very well could constitute reversible error.

### OBJECTIONS

1.      For the reasons set forth more fully in Abbott's prior briefing,[1] Judge Bowler erred by not requiring the Government to produce all of the documents it has withheld solely on the basis of the deliberative process privilege and by not overruling the Government's instructions not to answer. There can be no reasonable dispute that the Government *has* put its knowledge and deliberations in the area of Medicare and Medicaid drug reimbursement at issue in this case. The plaintiff should not be permitted to make allegations regarding what it knew and didn't know, and what it "would have done" with different information, but at the same time withhold evidence that likely contradicts those allegations.

2.      The August 13 Order is unclear and impossible to apply to particular documents and lines of deposition questioning, especially in its use of the phrase, "those documents that concern the government's knowledge of the common use of spreads with respect to published AWPs shall be produced." In addition, the Order, particularly as interpreted by the Government, would allow the Government to withhold evidence vital to Abbott's defenses, including evidence relating to the real reasons the Government continued to use published AWPs despite extensive knowledge of so-called "mega-spreads."

---

[1] For the Court's convenience, the parties' prior briefing is attached chronologically as Exhibits 1 (Dkt. No. 3513), 2 (Dkt. No. 3534), 3 (Dkt. No. 3594), 4 (Dkt. No. 3960), 5 (Dkt. No. 4076), 6 (Dkt. No. 4474). The privilege logs on which the documents in dispute are listed are attached as Exhibits 7, 8, and 9.

3.      It is evident that Judge Bowler did not conduct an *in camera* review of *any* of the disputed documents or deposition questions.  An individualized determination about each assertion of the privilege is required under the balancing test the Magistrate Judge apparently employed.  This failure is particularly troubling because it is evident that no one but Government lawyers has actually reviewed all of the documents, and no one—not even the Government lawyers—has made an evaluation of their relevance to this litigation and the specific harm that would be caused if they were disclosed under a protective order.

## REQUESTED RELIEF

1.      The Court should direct the Government to produce all documents previously withheld solely under the deliberative process privilege.  They are not burdensome to produce, as they have already been collected and Bates numbered.  In addition, the Court should order that the Government cannot instruct witnesses not to answer deposition questions solely on the basis of the deliberative process privilege.

2.      In the alternative, the Court should explain the meaning of the phrase, "documents that concern the government's knowledge of the common use of spreads with respect to published AWPs."  The parties need to know exactly which documents the Government must produce and which of Abbott's deposition questions are permissible.  The Could should issue a ruling that would not allow the Government to withhold any relevant documents or impede any areas of questioning solely on the basis of the deliberative process privilege.

3.      The Court should conduct an *in camera* review of the documents that have been withheld.  If the Court does not have the time to conduct the *in camera* review, it should direct a special master to do so, or at least conduct an *in camera* review of a selected sample of the documents and provide some guidance to the parties as to what categories of documents should

be produced.  Otherwise, the Government's lawyer-driven assertion of the deliberative process privilege will have gone completely unchecked by our adversarial legal system.

## **PROCEDURAL HISTORY**

Abbott's efforts to obtain documents and testimony withheld by the Government on the basis of the deliberative process privilege are chronicled in greater detail by Abbott's four previous memoranda.  A summary of the pertinent facts follows.

1.     In 2003, in responding to a third-party subpoena issued by the defendants in MDL 1456, the Government asserted the deliberative process privilege over hundreds of responsive documents.  The document descriptions contained on privilege logs indicate that many, if not most, of the documents are relevant to this litigation.  *See* Dkt. No. 3513 at 3-5.

2.     Shortly after the Government filed its "Complaint in Intervention" against Abbott in this case on March 17, 2006, Abbott issued a document request asking that the documents withheld from the MDL production solely under the deliberative process privilege be produced.  Abbott argued that the Government's role as a plaintiff in this litigation made it fundamentally unfair for it to withhold these responsive documents from Abbott.  Abbott outlined the relevant legal authority supporting its position and asked the Government to assert the privilege properly —including an explanation of what harm would result if the documents were disclosed.  The Government refused to assert the privilege through a non-lawyer agency official, and refused to explain what harm would result if the documents were disclosed.  *See id.* at 5-6.

3.     On November 29 and December 4, 2006, the Government asserted the deliberative process privilege in its written responses to Abbott's first set of document requests and interrogatories.  *See id.* at 6-7.  The Government cited the privilege in refusing to answer questions about, among other things, the Government's knowledge of the relationship between AWP and provider acquisition cost, the Government's decision not to establish federal upper

limits for the reimbursement of Abbott Subject Drugs, the meaning and calculation of AWP and other reported prices, the Government's efforts to establish reimbursement methodologies that did not rely on AWP, and the adequacy of reimbursement for professional services associated with administering or dispensing drugs, and whether payment formulae for ingredient cost could subsidize under-reimbursement for professional services. *Id.*

4.     Abbott filed a Memorandum in Support of its Motion to Compel Evidence Withheld Under the Deliberative Process Privilege on December 27, 2006 (Ex. 1). Abbott argued that the privilege does not apply where the Government is the plaintiff in litigation. *See id.* at 8-12. Abbott also argued that the Government had made no showing of any harm that would result from the disclosure of the documents, failed to properly assert the privilege, and failed to show that the documents were pre-decisional and deliberative. *See id.* at 12-18. In response, the Government argued, disingenuously, that Abbott's motion was not ripe because the Government had not yet decided whether to assert the privilege in this litigation. *See* Ex. 2.

5.     On January 30, 2007, Judge Bowler briefly heard oral argument on Abbott's motion. Based on the Government's representation that it was "presently determining whether to continue to invoke that privilege" and would make "a final decision on those documents by February 9th," Judge Bowler denied the motion without prejudice. *See* Ex. 4 at 3. Of surprise to no one, on February 9, the Government chose to assert the privilege. It thereafter provided revised privilege logs for documents in the possession of CMS, OIG, and the Medicare carriers (attached hereto as Exs. 7, 8, and 9). *See id.* Once again, however, the Government failed to assert the privilege through an appropriate non-lawyer agency official, as required by the law.

6.     Subsequent to Judge Bowler's January 30, 2007 hearing, the parties once again corresponded and met-and-conferred at length regarding the hundreds of documents the Government maintained were privileged. *See id.* at 3-4. Through those discussions, counsel for

Abbott obtained a better understanding of just how overbroad, wooden, and unfair the Government's assertion of the deliberative process privilege is in this case. The Government admitted that it made no effort to identify and produce documents that concern the Government's knowledge, deliberations, and policies about published drug prices such as AWP and whether the Government was defrauded into believing those prices were something that they were not. Ex. 10 (Letter from D. Torborg to J. Neal (3/20/07)). Similarly, in connection with a meet-and-confer relating to documents withheld from OIG, Abbott learned that the agency treated Abbott's request for documents in this case no differently than any other FOIA request. Ex. 11 (Letter from D. Torborg to J. Draycott (3/22/07)).

6.      Abbott renewed its motion to compel on March 28, 2007, restating many of the arguments articulated in its original motion and adding key supporting facts that had come to light through the many depositions that had taken place by this point. Ex. 4 at 5-9. Abbott pointed out that the Government's assertion of the privilege was further undermined by the fading memories of witnesses deposed to date (*id.* at 8-9), that lawyers alone appeared to have made decisions about producing documents (*id.* at 11), and that rather than making individualized determinations on whether documents should be produced and articulating specific harm that would result from disclosure, the Government had chosen to withhold all drafts as a matter of principle. *Id.* at 5-9, 11-12.

7.      On April 20, 2007, the Government filed its opposition to Abbott's renewed motion to compel. Ex. 5. The Government's opposition was accompanied by declarations from OIG's Robert Vito and CMS's Leslie Norwalk, which, for the most part, purported to support the threshold showing that the documents were predecisional or deliberative. The declarations also contained some vague, conclusory language regarding what harm would purportedly result from disclosure of the documents. *See* Ex. 6 at 15-16. Abbott deposed Mr. Vito regarding, among

other things, his affidavit on June 19 and 20, 2007.  Mr. Vito's deposition was very telling.  *See
infra* at 23.

8.      On June 27, 2007, the DOJ responded to Abbott's repeated requests for
production of responsive documents from the official Rulemaking Support files for nine specific
HCFA regulations and from CMS's Office of Legislation.  Ex. 12 (Letter from J. Draycott to D.
Torborg (6/27/07)).  The Government claimed that the information was irrelevant and that much
of it would be covered by the deliberative process privilege.  *Id.*  To date, the Government has
failed to log this material.

9.      Abbott's reply brief in support of its renewed motion, filed July 17, 2007,
provided examples of deposition questions that the Government had instructed witnesses not to
answer on the basis of the deliberative process privilege.  *See* Ex. 6 (Dkt. No. 4474) at 8-10.
While the prolonged brief-writing battle has taken its course over the past nine months, the
Government has continued to instruct witnesses not to answer key questions that obviously go to
the heart of this case.

10.     Subsequent to the August 13, 2007 Order, the parties have discussed their
respective understandings of the Order.  It has become clear that the parties have a very different
understanding of the Order.  Abbott believes the Order requires the production of all documents
showing that the Government knew about the AWP "spread" generally, while the Government
contends that the Order requires production only of documents that specifically relate to their
knowledge of "marketing the spread."

## ARGUMENT

**I.    BY PUTTING ITS KNOWLEDGE AND DELIBERATIONS AT ISSUE IN THIS FRAUD CASE, THE GOVERNMENT HAS WAIVED ITS RIGHT TO ASSERT THE DELIBERATIVE PROCESS PRIVILEGE TO WITHHOLD EVIDENCE RELEVANT TO ABBOTT'S DEFENSES.**

On March 17, 2006, nearly eleven years after Ven-A-Care filed its *qui tam* case against

Abbott and other defendants, the Government filed its complaint-in-intervention against Abbott.

Among other things, the Complaint alleges the following facts (emphasis added):

- "*No government payor knew* of or sanctioned Abbott's conduct as set forth in this Complaint, *i.e.*, its deliberate manipulation of its published prices for certain of its products to induce its Customers to purchase those products."  Complaint ¶ 38;

- "Had the true facts of Abbott's false price reporting as set forth in this Complaint been known to the United States, *the United States would not have paid for Abbott products*."  *Id*. ¶ 114; and

- "The United States *acted in justifiable reliance* upon Abbott's misrepresentations by making payments on the false claims."  *Id*. ¶ 113.

The Government has further contended that Abbott "*with[eld] information* and/or

purposely provid[ed] misleading information *that was critical to government decisions* regarding

amounts to pay on claims for Abbott's products."  Dkt. No. 3103 (U.S. Opp. to Abbott's Mot. to

Dismiss) at 1 (emphasis added).  In short, the Government claims that it did not know, and

should not have known, that prices published for certain generic Abbott drugs (the "Subject

Drugs") did not reflect or approximate average market prices—and, as a result, the Government

was defrauded into paying more than it otherwise would have paid for those drugs.

The False Claims Act is a fraud statute.  *See United States ex rel. Karvelas v. Melrose-*

*Wakefield Hosp.*, 360 F.3d 220, 227 (1st Cir. 2004) ("We do not agree with [plaintiff] that 'the

False Claims Act is not a "fraud" statue' and therefore does not fall within the scope of Rule

9(b).").  The Government's common law fraud claims require proof of justifiable reliance.  To

prevail, the Government must show that it was misled or deceived about the prices reported in

the compendia for the Subject Drugs.[2]  By the same token, if Abbott proves the Government was

*not* misled about the Subject Drugs, Abbott should prevail in this case.  Even if the

Government's knowledge is not itself dispositive in this case, that knowledge is probative of the

Government's true intentions.  One cannot separate the Government's knowledge—and its

reaction to that knowledge—from its intentions.  The Government does not get a free pass to

exclude certain elements of its fraud claim, namely, justifiable reliance, materiality, and

causation, simply because it is the Government.  *See, e.g.*, *Am. Heritage Bancorp v. United*

*States*, 56 Fed. Cl. 596, 607 (2003) (government must prove the traditional elements of fraud

claim by clear and convincing evidence).

Where the Government seeks relief that puts its knowledge and deliberations at issue,

"courts have severely restricted the use of the privilege by government agencies."  *United States*

*v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998).  This is particularly true in fraud cases like this

one.  The Court in *Department of Economic Development v. Arthur Andersen & Co.*, 139 F.R.D.

295, 299 (S.D.N.Y. 1991), recognized the inevitable connection between claims of fraud—

including issues of knowledge, reliance, and causation—and documents bearing on the

governmental plaintiff's knowledge and deliberations:

> [B]y asserting claims of fraud against AA, the British Government
> *necessarily places at issue questions of knowledge, justifiable*
> *reliance and causation*.  Specifically, at issue is the British
> Government's knowledge of DeLorean's activities, the extent of

---

[2] *See United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 461 (5th Cir. (Fla.) 1977) (noting plaintiff in FCA case "must demonstrate that the government was misled by Equifax's application for the reporting business," and concluding "Equifax's application did not make a material misrepresentation, did not mislead the government, and did not defraud the government within the meaning of the False Claims Act").  *See also United States ex rel. Gudur v. Deloitte Consulting LLP*, No. H-00-1169, 2007 WL 836935, at *11 (S.D. Tex. March 15, 2007) ("no violation exists where relevant government officials are informed of the alleged falsity, thus precluding a determination that the government has been deceived"); *United States ex rel. Englund v. Los Angeles County*, No. Civ. S-04-282 LKK/JFM, 2006 WL 3097941, at *8 (E.D. Cal. Oct. 31, 2006) (same); *United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 988 (E.D. Wis. 1998) ("no violation [of the FCA] exists where the government has not been deceived"), *aff'd*, 168 F.3d 1013 (7th Cir. 1999); *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 809 (D. Utah 1988) ("Only if the government gets something less than or different from that which it expected can it be said to have suffered the kind of injury necessary to invoke FCA liability.").

> that knowledge, whether they justifiably relied upon AA's reports
> *or whether, as the defendants contend, the government chose to
> ignore certain information it had before it and nonetheless
> approve the grants for political issues*.
>
>           * * *
>
> *Where the adjudication of fraud claims turns upon issues of
> knowledge, reliance, and causation, direct evidence of the
> deliberative process is irreplaceable*.

*Id*. at 299 (emphasis added).

This district in particular has recognized that "the great weight of authority holds that fairness to the defendant requires the government to make available all information relevant to the defense." *Ghana Supply Comm'n v. New Eng. Power Co.*, 83 F.R.D. 586, 593-94 (D. Mass. 1979) (collecting cases rejecting assertion of deliberative process privilege in cases where Government is plaintiff). Even those courts that employ a balancing test to adjudicate assertions of the deliberative process privilege view the Government's role in the litigation as an important factor strongly favoring disclosure in circumstances such as those presented here. *See Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 605 at n.7 (S.D.N.Y. 1991) (FTC's role as plaintiff "tends to open the door to discovery of RTC's decision-making processes"); *United States v. Hooker Chems. & Plastics Corp.*, 123 F.R.D. 3, 12 (W.D.N.Y. 1988) ("Perhaps most importantly, the government asserting the privilege in this case is a party to the litigation."). Moreover, the Court itself has recognized that the importance of the Government's knowledge and deliberations regarding the use of published prices in its drug reimbursement schemes at issue in this case. Feb. 27, 2007 Hrg. Tr. at 35-36; Nov. 21, 2006 Trial Tr. at 5-6 ("there's a very strong case to be made for having the [federal] government testify" and "it's important to hear" what federal government witnesses "have to say").

Even a cursory examination of the Government's privilege logs reveals descriptions that are clearly relevant to this case. *See* Dkt. No. 3513 at 3-5; Dkt. No. 3960 at 6-7 (examples of privilege log entries). The Government, through its meet-and-confers with Abbott and at deposition, has admitted that it made no effort whatsoever to consider the relevance of the withheld evidence to Abbott's defenses. Ex. 10 (Letter from D. Torborg to J. Neal (3/20/07)). Indeed, the agency has treated Abbott's request for documents no differently than it would an ordinary FOIA request. Ex. 11 (Letter from D. Torborg to J. Draycott (3/22/07)).

The Government does not distinguish the *Department of Economic Development* and *Ghana Supply* line of cases that strictly restrict the Government's ability to invoke the deliberative process privilege when it is a plaintiff. The Government's only response is the unsupported refrain that evidence about the government's knowledge and deliberations is relevant only as it relates to a defendant's *scienter*. The Government has not cited a single case that stands for this proposition, and the Court has already indicated such evidence *is* relevant and should be subjected to the "crucible of trial." *See In re Pharm. Indus. Average Wholesale Price Litig.*, 478 F. Supp. 2d 164, 174-75 (D. Mass. 2007). The cases cited by the Government merely discuss how government knowledge may be relevant to *scienter*; they do not hold that such evidence is relevant *exclusively* to that issue.

Contrary to the Government's argument, numerous courts have evaluated the importance of government knowledge and decision-making on core issues in FCA cases, such as reliance, materiality, and causation, and even falsity. [3] Indeed, the FCA case the Government cites,

---

[3] *See United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 445 (6th Cir.) (if "plaintiff cannot show that the government agency would have acted differently had it known of the omission, 'there is no false claim because [the agency's action] would have occurred regardless of [the defendant's] actions'") (quoting *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 563 (8th Cir. 1997)) (alterations in original), *cert. denied*, 546 U.S. 1063 (2005); *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001) ("Since the [False Claims] Act is restitutionary and aimed at retrieving ill-begotten funds, it would be anomalous to find liability when the alleged noncompliance would not have influenced the government's decision to pay."); *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 770 (N.D. Tex. 2003) ("[t]he juxtaposition of the word 'false' with the word

*United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719 (N.D. Ill. March 13, 2007), discussed issues of reliance, materiality, and causation in detail, and it is clear from the opinion that "government knowledge" evidence *was* featured prominently at trial in ways that had nothing to do with the *scienter* issue:  "The jury heard evidence that [defendant's] promises not to discriminate were material because [defendant] would not have been awarded the contracts without them."  *Id.* at 726.  Abbott's attempt to obtain evidence in this motion reflects an effort to provide the jury with precisely the same type of evidence as the jury heard in the *Amerigroup Illinois* case.

Finally, the Government's position on the limited relevance of government knowledge and deliberations would lead to absurd results.  Under the Government's view, the jury would never hear testimony from former CMS Administrators who have described the real reasons the Government continued to use published prices, knowing full well that they far exceeded actual acquisition costs.  The jury would not hear Thomas Scully recall the political backlash that arose when various Presidential administrations tried to reform the AWP system from 1990 through 2003; nor would they hear him state that "politics is politics and that's what drove this issue for 10 years."  *See* Ex. 13 at 141-42, 173.  The jury would not hear Bruce Vladeck state:  "I had a growing feeling – again, I would put this in a period probably beginning about 1995 through the time I left the government – of frustration that we were significantly overpaying for Part B drugs, and that because of some combination, frankly, of political and legal constraints, we were unable to change it."  Ex. 14 at 189-90.  In short, the Government would prevent the jury from learning *why* CMS used AWP and continues to use it to this day.

_____

(continued…)

'fraudulent,' plus the meanings of the words comprising the phrase 'false claim,' suggest an improper claim is aimed at extracting money the government otherwise would not have paid").

The Government cannot sensibly argue that testimony at CMS's deliberations is irrelevant or that there is no possibility that documents with privilege log descriptions like "Options for AWP" and "Re Calculation of the Average Wholesale Price (AWP) for Drugs" could lead to the discovery of admissible evidence in a case *about* the Government's use of AWP in drug reimbursement.  That is true even if the withheld documents do not expressly reference Abbott or the subject drugs.

Not only are the documents being withheld undoubtedly relevant, but thanks to the Government's long delay in bringing suit, they are likely to be the only reliable, objective evidence of "what Centers for Medicare and Medicaid [S]ervices understood and knew and what they agreed to and what they didn't."  Feb. 27, 2007 Hrg. Tr. at 36 (comments by Judge Saris).  Depositions of Government witnesses have shown that "evidence has been lost, memories have faded, and witnesses have disappeared.'"  *United States ex rel. Health Outcomes Techs., Inc. v. Hallmark Health Sys., Inc.*, 409 F. Supp. 2d 43, 52 (D. Mass. 2006) (internal quotation marks omitted).  Repeatedly, Abbott's attempts to reconstruct through depositions what the state and federal Medicare and Medicaid officials knew about published drug prices, when they knew it, and why they continued to use those prices despite extensive evidence of contemporaneous knowledge that the compendia-published AWP was substantially higher than the real market prices, have been met by answers that witnesses simply cannot recall much of anything given the passage of time.  *See* Dkt. No. 4474 at 8-9; Dkt. No. 4470 at 17-18 (Abbott's Motion to Dismiss the Government's First Amended Complaint).  Moreover, it is abundantly clear that the Government shirked its obligation to preserve evidence that might be relevant to Abbott's defense.  *See id.* at 16-17.

Abbott submits that there is no need for the Court to conduct an exhaustive *in camera* review of the approximately 600 documents the Government has withheld (thus far), or for the

Court to parse the Government's inadequate privilege logs. *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (entries—consisting "almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter— will not do") (footnote omitted). All of the documents withheld are responsive to prior requests and are potentially relevant to this case. And, as discussed *infra*, despite repeated invitations, the Government has failed to articulate any burden or harm that would result if the withheld documents were produced and depositions allowed to go forth unimpeded.

## II.    MAGISTRATE JUDGE BOWLER'S RULING DOES NOT MAKE CLEAR WHICH DOCUMENTS SHOULD BE PRODUCED AND WHICH DEPOSITION QUESTIONS ARE PERMISSIBLE.

Judge Bowler's August 13 Order is unclear, unworkable, and incomplete. The Order is subject to differing interpretations because it fails to indicate clearly which documents the Government should produce and offers no guidance on the propriety of the Government's instructions to its witnesses not to answer questions.

Not surprisingly, the parties have vastly different understandings of what the August 13 Order means in its application. At a minimum, Abbott believes that the language, "those documents that concern the Government's knowledge of the common use of spreads with respect to published AWPs," should be understood to include all evidence of the Government's knowledge of differences between published AWPs and provider acquisition costs. Ex. 15 (Letter from D. Torborg to J. Draycott and J. Neal (8/24/07)). Judge Bowler's ruling refers to Abbott's "substantial" need for such documents and its "showing that memories have faded with the passage of time." *Id.* The Government argues this language requires it to produce only those documents that concern its knowledge of "marketing the spread." *Id.*

The Government's interpretation of the Order is irrational. Regardless of how many times the Government says Abbott engaged in a "scheme to defraud" and exaggerates the

evidence that Abbott "marketed the spread," at its core this is a case about overpayment. The Government's alleged damages stem from the assertion that it would have paid less in drug reimbursement if only it had known about the difference between prices prevailing in the market and reported prices. Thus, it is the Government's knowledge of the spread between those prices that lies at the heart of its claims that it was defrauded into overpaying for drugs. Judge Bowler's ruling should be read in a way that reflects that reality.

The Government's flawed interpretation would permit the plaintiff to withhold important evidence regarding CMS's knowledge of, and response to, so-called mega-spreads.[4] For instance, the Government has confirmed that it will continue to withhold documents related to the "entrance" and "exit" conferences between OIG and HCFA relating to key OIG reports that showed mega-spreads for many drugs, including specifically one of the Subject Drugs here (Vancomycin). *See id.* These documents offer an unbiased and contemporaneous insight into the reasons why CMS continued to allow use of published prices despite knowledge of their unreliability.[5] These minutes may also assist in reminding Government witnesses of facts and decision-making that time has caused them to forget. As in the *Department of Economic Development*, the documents may lend further support to evidence already gathered that CMS was not misled but, rather, "chose to ignore certain information it had before it and nonetheless approve" the continuing use of published drug prices "for political reasons." 139 F.R.D. at 299.

Judge Bowler's ruling would allow the Government to withhold many other categories of documents that are vital to Abbott's defenses but may not squarely fit within the August 13 Order. For example, the Government's Medicare claims are based upon the notion that those

---

[4] While Plaintiffs often express the spreads for the Subject Drugs as a percentage—so as to suggest no Government policy-maker could ever knowingly countenance them—that is misleading here. The Subject Drugs are primarily commodity drugs like saline solutions, dextrose solutions, and sterile water that do not have spreads in the hundreds of dollars that result in huge windfalls to providers.

[5] If it reviews nothing else, Abbott respectfully suggests that the Court should require the Government to produce each of these minutes for the Court's *in camera* review.

claims are "false" because the AWPs reported for the Subject Drugs did not equal the true average price paid by wholesalers for those drugs.  The Government's position relies upon this Court's order that the term "average wholesale price" in Medicare statutes and regulations must be construed in accordance with is plain meaning—that is, a true average wholesale price.  Every federal government witness deposed to date, including three former CMS Administrators, has testified unequivocally that he or she understood the term "average wholesale price," including as used in Medicare statutes and regulations, to refer to prices reported in the pricing compendia. That was the term's understanding in the industry.[6]  The August 13 Order has allowed the Government to withhold documents—such as the Official Rulemaking Files—that in all likelihood flatly contradict the DOJ's representations about what AWP meant in the law.

Relatedly, the evidence has shown that, despite extensive knowledge of mega-spreads for the Subject Drugs and other drugs, CMS believed it was required by law and/or political reasons to continue using published AWPs.  *See, e.g.*, Ex. 14 at 182-83 (former Administrator Bruce Vladeck: despite knowing that provider groups negotiated discounts of up to 99% for products like sodium chloride, agreeing it was his "understanding . . . that pursuant to regulation [42 C.F.R. § 405.517, his] only alternative between '93 and '97, while [he was] administrator of HCFA, was to pay based upon the published average wholesale price"); Ex. 16 at 379 (OIG team leader David Tawes: even though CMS knew published AWPs were many times higher than acquisition costs, "the law [Balanced Budget Act of 1997] didn't allow [CMS] to pay based on acquisition cost").  Abbott should be entitled to develop the full and accurate story about why

---

[6] The testimony from federal government witness deposed to date on the meaning of AWP is quoted in the chart attached as Exhibit 18.  Abbott respectfully submits that the Court's determination of the meaning of AWP may have been different had the Government provided what this Court specifically requested: *CMS*'s views on the matter.  *See* Aug. 3, 2006 Hrg. Tr. at 29-30 ("[I]t's a statutory issue and they're the agency . . . [s]o I would like to know what CMS's position is.").

CMS continued using published drug prices, and present those facts to the jury during the crucible of trial.

Judge Bowler's vague ruling invites the Government to continue withholding evidence in other important areas that are clearly relevant to Abbott's defense.  Abbott's reply brief in support of its renewed motion cited a number of instances where the Government has asserted the deliberative process privilege to impede deposition questioning on important and relevant topics.  Dkt. No. 4474 at 8-10.  While of critical importance to this case, many of these lines of questioning would not fit squarely within Judge Bowler's ruling—meaning the Government will continue to obstruct the search for truth by instructing witnesses not to answer important questions. The Government should not be permitted to do so.

Moreover, Judge Bowler's language requiring production of documents that "expressly reference Abbott Laboratories, Inc. ("Abbott") and/or the subject drugs" is too narrow.  As the DOJ well knows, many of the documents on the privilege logs—such as documents relating to the "DOJ AWPs"—likely do not "expressly reference" Abbott or the Subject Drugs, yet nonetheless affect the Subject Drugs because those drugs fall within the categories of products mentioned in the documents.

## III. EVEN UNDER A BALANCING TEST, THE BALANCE TIPS DECIDEDLY IN FAVOR OF DISCLOSURE.

Judge Bowler's ruling purported to balance the interests of the parties at stake in disclosing information protected by the deliberative process privilege.  *See* August 13 Order ("Having weighed all of 'the competing interests,' *id.* at 885 (citing *Fire* [sic] *Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n. 5 (D.C. 1994); *Fire* [sic] *Eastern*, 21 F.3d at 468 n.5 (listing the competing interests the court should consider) . . . .").  This balancing test was superficial and incomplete.  Judge Bowler did not review *any* of the documents, and there is no evidence to

suggest that she performed any sort of balancing test on a question-by-question basis of the deposition testimony.

Such a balancing test demands an individualized review of each piece of evidence.  *See Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405 (1976) ("In light of the potential seriousness of these considerations and in light of the fact that the weight to be accorded them *will inevitably vary with the nature of the specific documents in question*, it would seem that an *in camera* review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of irrelevance and privilege and plaintiffs' asserted need for the documents is correctly struck.") (emphasis added); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("Each time the deliberative process privilege is asserted the district court must undertake a fresh balancing of the competing interests.") (internal quotation marks and brackets omitted); *Scott Paper Co. v. United States*, 943 F. Supp. 489, 498 n.8 (E.D. Pa. 1996) (noting the deliberative process privilege "usually requires examination of the documents *in camera*").[7]

To the best of Abbott's knowledge, no documents were produced to Judge Bowler for her *in camera* review.  Her ruling mentions "the approximately 60 documents that expressly reference Abbott Laboratories, Inc. ('Abbott') and/or the subject drugs."  This number arose from an exchange between the Court and counsel for the Government at the most recent oral argument on Abbott's motion to compel.  Counsel for the Government expressed a willingness to produce 60 documents, floating the idea as "one sort of compromise step that I think we could take here that might facilitate this."  July 20, 2007 Hrg. Tr. at 14 ("Of the more than 600

---

[7] The Government itself has repeatedly argued as much.  *See* Ex. 5 at 14 ("The balancing test clearly envisions a well-defined, individualized review of *each assertion* of the deliberative process privilege . . . .  This Court should assess the merits of the United States' privilege assertions on a document-by-document basis . . .") (emphasis added) (citing *In re Sealed Case*).  Abbott has acknowledged this as well, despite arguing that the balancing test is inapposite here.  *See* Ex. 4 at 12.

documents on the three logs, a very, very rough calculation that I did, . . . I counted about 60 documents that even mentioned Abbott in any way."). Judge Bowler seemed amenable to such a short cut. *See id.* ("You know, the two least favorite words for Judges are *in camera* and *pro se*.").[8]

As a consequence of Judge Bowler's decision not to review any documents *in camera*, no one has yet examined the Government's specific assertions of the privilege by actually considering the individual documents and deposition questions at issue. This problem is compounded by the fact that the Government's affiants themselves did not review all of the allegedly privileged documents. *See infra* at 23. Thus, Government lawyers who are litigating this case alongside attorneys with a direct financial interest at stake have been entrusted with deciding whether to produce documents that contain information potentially damaging to their clients. It is long past time to have an impartial decision-maker review this evidence.

Even under a global, non-document-specific balancing test, the balance tips decidedly in favor of disclosure. The Government's application of the balancing test (*see* Dkt. No. 4076 at 15-18) is flawed and incomplete. When each factor is given full consideration, it becomes clear that the vague deliberative process claims made by the Government's lawyers are insufficient.

The first factor of the balancing test, the relevance of the material sought, is addressed above and in Abbott's prior briefing. In short, the Government is withholding evidence that sheds light on why Government officials continued to rely on published drug prices despite extensive knowledge that they did not represent a reliable indication of acquisition costs.

---

[8] Abbott is sensitive to the burden that an *in camera* review of the approximately 600 documents and multiple lines of deposition questioning poses to the Court, and recognizes the Court's prior statements that regarding the burden of *in camera* review of individual documents in this case. *See* Dkt. No. 4645 (9/6/07 denying Abbott's Emergency Motion to Stay the Effect of and Motion to Reconsider the Court's August 21, 2007 Order: "After discussion with Magistrate Judge Bowler, I conclude that it is too burdensome for the Court to review all the disputed documents in camera."). However, it must be noted that it is the Government which has brought suit putting its knowledge and deliberations at issue. It is also the Government that has been completely unwilling to negotiate in good faith to require production of documents of particular relevance to this case. The Government has instead treated Abbott's request for these documents no differently than a run-of-the-mill FOIA request.

The second consideration, the availability of other evidence, also supports disclosure.  As discussed above, the Government's delay in prosecuting this case has resulted in the loss of key evidence due to fading memories and the destruction of documents.  *See supra* at 13.  Abbott should be entitled to full discovery of what evidence remains.

Tellingly, the Government relegates the third and fourth factors of the balancing test to a footnote, baldly asserting that these factors "are less relevant to the instant case."  Dkt. No. 4076 at 16 n.2.  The Government glosses over these factors in hopes of minimizing their significance.  But in reality, these two factors—the seriousness of the litigation and the role of the government in the litigation—are perhaps the most important factors for the Court to consider in this dispute.  *See Hooker*, 123 F.R.D. at 12.  The Government's role as plaintiff comes with certain costs, including the obligation to turn over documents that disprove its claims or prove Abbott's defenses.

Finally, with respect to the fifth factor, the Government has failed to articulate any harm that would be caused if the documents were disclosed.  The Government instead relies upon vague statements contained in after-the-fact, lawyer-drafted declarations that simply track the rationale for the privilege.  That is insufficient.  *See Diamond*, 773 F. Supp. at 604 (rejecting assertion of deliberative process privilege when Government's affidavits provide "merely a paraphrase of the rationale for the deliberative-process privilege described in the case law").

This case presents the textbook example of the Government abusing the deliberative process privilege for tactical advantage and to the detriment (and frustration) of the courts.  "[T]he time to make the showing that certain information is privileged is at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel."  *Anderson v. Marion County Sheriff's Dep't*, 220 F.R.D. 555, 562 n.5 (S.D. Ind. 2004).  *See also United States v. Salemme*, Nos. 94-10287-MLW, 97-10009-MLW, 1997 WL 810057, at *6 n.6

(D. Mass. Dec. 29, 1997) ("Before the deliberative process privilege may be invoked, 'there must be a formal claim of privilege, lodged by the head of the department which has control over the matter after actual consideration by that officer.'") (citation omitted); *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987) ("To properly support each such objection the party also must submit, *at the time it files and serves its response to the discovery request*, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration.") (emphasis added).

The procedural requirements of asserting the privilege are important.  *See, e.g.*, *Revelle v. Trigg*, No. 95-5885, 1999 WL 80283, at *2 (E.D. Pa. Feb. 2, 1999) ("the Court carefully scrutinizes the manner of assertion of the [deliberative process] privilege").  Unless these procedural prerequisites are enforced, government agencies are encouraged "'automatically to claim the broadest possible grounds for exemption for the greatest amount of information.'" *Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 7 (N.D.N.Y. 1983) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).  When that happens (as it has here), the courts are forced into conducting a burdensome and unnecessary *in camera* review.

The Government's actions here are very similar to the facts that recently caused the United States Court of Federal Claims to reject the Government's assertion of the privilege:

> [T]he Court's conclusion is based on the fact that defendant has failed to meet the procedural requirements for invoking the deliberative process privilege:  first, defendant has failed to demonstrate that the privilege was properly invoked by an appropriate official; second, defendant has failed to "supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested documents[s]," . . . and third, defendant's affidavits supporting its assertions of the deliberative process privilege have been belatedly executed.

*Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 136-37 (2006) (internal citation omitted). In a follow-up opinion, the *Pacific Gas* court made clear that it "disagrees that, at the time the deliberative process privilege is asserted by the government, it need not obtain affidavits from appropriate government officials in support of its assertion." *Pac. Gas & Elec. Co. v. United States*, 71 Fed. Cl. 205, 208 (2006). The court clarified that it did not find the Government's failure to automatically "waive" the privilege. Still, the court found the Government's after-the-fact affidavits to be "'procedurally deficient,' thereby eroding the credibility of defendant's claim of the privilege." *Id.* The same should be true here: the Court should pay little credence to the after-the-fact, lawyer-driven declarations signed by Mr. Vito and Ms. Norwalk.

Moreover, the declarations fail to identify any concrete harm that would be occasioned by the disclosure of particular documents on the Government's privilege logs, especially if that disclosure were made under a protective order.[9] The lack of any claim of particularized harm is not surprising since the declarants appeared to have had little input into their declarations. For instance, Mr. Vito testified that the declaration was drafted by the Government's lawyers and that he made very few edits. Ex. 17 at 229-30. He admitted that the lawyers selected the particular documents to be withheld. *Id.* at 231. He admitted that he "flipped through" only a sampling of the withheld documents and, because of his workload, "did not spend a great amount of time" reviewing even the sample he did review. *Id.* at 243-44, 256. Even for those documents discussed in his declaration, Mr. Vito was unable to articulate any particular harm that would result from disclosing the documents under a protective order. *Id.* at 252-63. And he made no effort to consider if the documents withheld were relevant to the litigation. *Id.* at 265-66.

---

[9] If the documents are truly irrelevant, as the Government appears to contend, then the documents will be reviewed by counsel for Abbott and forgotten. Only if the documents are particularly relevant will there be any possible chance of any "chilling effect." But if the documents are relevant to Abbott's defense, they should be turned over regardless of any "chilling effect."

The failure to articulate "precise and certain reasons for preserving the confidentiality of the requested information" is a fatal flaw in the Government's assertion of privilege.  *See Mobil Oil*, 102 F.R.D. at 6 (internal quotation marks omitted); *see also Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 320 (1990) (government must "supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document").

In *Haus v. City of New York*, No. 03-4915, 2004 WL 3019762 (S.D.N.Y. Dec. 29, 2004), the City of New York submitted an affidavit from the Commanding Officer of the Patrol Borough Manhattan South in support of its efforts to resist discovery into the department's critiques of tactics and police performance under the deliberative process privilege.  The affidavit in that case was substantially similar to the declarations filed by the Government here:

> [The affiant] observe[d] in a conclusory fashion, that [i]t [was his] belief that disclosure of these documents would inhibit the frank and candid exchange of opinions that is part of the deliberative process and that best informs final department decisions.  Disclosure of comments and recommendations concerning department course of action and strategy would inhibit ongoing and future consultations and deliberations that take place in the Department's review of its procedures.

*Id.* at *3 (internal quotation marks omitted).  The court ruled that "[t]his formulaic assertion, taken almost word-for-word from innumerable other such agency submissions, plainly fails to offer a persuasive basis for believing that production under the governing confidentiality order would pose any harm to the public interest."  *Id.* at *4.  Similarly, in *Pacific Gas*, the court ruled that the government's "vague, general and conclusory statement[s] as to why the confidentiality of the listed documents should be maintained" were insufficient.  71 Fed. Cl. at 209 (internal quotation marks omitted).  Rather, the court ruled that the deliberative process privilege could be invoked "only if the proponent of the privilege explains *with particularity* how or why disclosures of the substance of the documents would harm an identified deliberative function."  *Id.* (emphasis in original; internal quotation marks omitted).

The after-the-fact, lawyer-drafted declarations that the Government submits in support of its current assertion of the privilege are even more vague and conclusory than those considered in *Haus* and *Pacific Gas & Electric Company*, and they should be rejected.

## CONCLUSION

Abbott respectfully requests that its objections be sustained and that the Court issue a ruling stating that the Government cannot assert the deliberative process privilege in this case, given its position as the plaintiff and its failure to adhere to procedural requirements in articulating the privilege.  In the alternative, Abbott respectfully requests that the Court clarify which documents cannot be withheld under the deliberative process privilege and which deposition questions are permissible despite objections on deliberative process grounds.  Abbott respectfully requests that an *in camera* review be made of at least a sampling of documents before such a ruling is made.

Dated:  September 10, 2007         Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S OBJECTIONS TO MAGISTRATE JUDGE BOWLER'S AUGUST 13, 2007 ORDER to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 10th day of September, 2007.

/s/ David S. Torborg
David S. Torborg