

13292168

Dec 27 2006
7:11PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL EVIDENCE WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE

Defendant Abbott Laboratories, Inc. ("Abbott") respectfully seeks an Order compelling Plaintiff the United States of America ("United States" or "Government") to produce to Abbott all documents that have previously been withheld under the "deliberative process privilege." This request includes over 500 responsive documents the Government did not produce in response to subpoenas issued to the United States Department of Health and Human Services ("HHS") and various Medicare carriers in MDL 1456, documents which bear Government-provided descriptions like "Options for AWP."  The Government's assertion of fraud-based claims against Abbott and other manufacturers negates any qualified deliberative process privilege that might have applied to these documents.  Moreover, the Government has failed to assert the privilege properly, and it has provided no explanation of what harm would result if documents relating to now-discarded payment methodologies were disclosed in this case.

In addition, this Court should prohibit the Government from continuing to withhold evidence and otherwise obstructing ongoing discovery through assertion of the deliberative process privilege.  The Government's responses to Abbott's written discovery requests and notices of deposition indicate that the Government continues, under the guise of the deliberative process privilege, to prevent discovery of information vitally important to Abbott's defenses.

The arguments and authority supporting these requests are set out in the accompanying memorandum.  A proposed order is attached.

### <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1, Abbott hereby requests oral argument on this Motion.


Dated:  December 27, 2006               Respectfully submitted,

                                      <u>/s/ R. Christopher Cook</u>
                                      James R. Daly
                                      Tina M. Tabacchi
                                      Brian J. Murray
                                      JONES DAY
                                      77 West Wacker Drive, Suite 3500
                                      Chicago, Illinois  60601
                                      Telephone:  (312) 782-3939
                                      Facsimile:  (312) 782-8585

                                      R. Christopher Cook
                                      David S. Torborg
                                      JONES DAY
                                      51 Louisiana Avenue, N.W.
                                      Washington, D.C.  20001-2113
                                      Telephone:  (202) 879-3939
                                      Facsimile:  (202) 626-1700

                                      *Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

I certify that the moving party communicated with counsel for Plaintiffs in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

/s/ R. Christopher Cook
R. Christopher Cook

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

# ABBOTT LABORATORIES, INC.'S MEMORANDUM IN
## SUPPORT OF ITS MOTION TO COMPEL EVIDENCE
## <u>WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE</u>

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Daniel E. Reidy
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

*Counsel for Defendant*
*ABBOTT LABORATORIES, INC.*

## PRELIMINARY STATEMENT

Defendant Abbott Laboratories, Inc. ("Abbott") respectfully requests that this Court:

- Compel production of documents the Government has withheld under the deliberative process privilege; and

- Prohibit the Government from withholding evidence and otherwise obstructing ongoing discovery through assertion of the deliberative process privilege.

Under guise of the deliberative process privilege, the Government has withheld over 500 documents (thousands of pages) from discovery—denying Abbott, other defendants and this Court access to evidence that is vital to a proper resolution of this case and crucial to Abbott's defenses. Disturbingly, many of these withheld documents may be inconsistent with factual positions already asserted by the Government in submissions to this Court. These include documents with Government-provided descriptions such as "Options for AWP" and "Re Proposed Methodology for Determining Average Wholesale Price (AWP)." In addition, the Government has preemptively asserted the deliberative process privilege to cancel an entire deposition and to refuse to respond to numerous written discovery requests.

The deliberative process privilege, a qualified privilege to begin with, has no place in this case. By asserting fraud-based claims against Abbott, the Government voluntarily put at issue, among other things, its knowledge, deliberations, and policies about published drug prices (including AWP) and its use of those published prices in drug reimbursement schemes that ***the Government*** unilaterally created and implemented. "Where the adjudication of fraud claims turns upon issues of knowledge, reliance, and causation, direct evidence of the deliberative process is irreplaceable." *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 139 F.R.D. 295, 299 (S.D.N.Y. 1991).

The Government cannot sensibly argue that there is ***no possibility*** that documents with descriptions like "Options for AWP" and "Re Calculation of the Average Wholesale Price

(AWP) for Drugs" could lead to the discovery of admissible evidence in a case ***about*** the Government's use of AWP in drug reimbursement.  "It is not the function of . . . counsel to rule with finality on the relevancy or irrelevancy of documents in their exclusive possession and thereby deprive both Court and opposing counsel of an opportunity to evaluate their contentions."  *Radio Corp. of Am. v. Rauland Corp.*, 18 F.R.D. 440, 444 (N.D. Ill. 1955).  Yet, in arguing that documents and other evidence relating to its knowledge and deliberations about published AWPs are "irrelevant" to this case, the Government apparently seeks to decide for itself whether it reasonably relied, or relied at all, on alleged misinformation.  The adversary system does not work that way, and the Court should put an end to the Government's games.

## BACKGROUND

A.      **The Government's Claims Against Abbott.**

On March 17, 2006, nearly eleven years after Ven-A-Care of the Florida Keys, Inc. ("Ven-a-Care") filed its *qui tam* case against Abbott and other defendants, the Government filed its complaint-in-intervention ("Complaint") against Abbott.  The Complaint asserts four causes of action against Abbott—two claims under the False Claims Act, and one claim each for Unjust Enrichment and Common Law Fraud.  Among other things, the Complaint alleges (emphasis added):

- "***No government payor knew*** of or sanctioned Abbott's conduct as set forth in this Complaint, *i.e.*, its deliberate manipulation of its published prices for certain of its products to induce its Customers to purchase those products."  Complaint, ¶ 38;

- "Had the true facts of Abbott's false price reporting as set forth in this Complaint been known to the United States, ***the United States would not have paid for Abbott products***."  *Id.*, ¶ 114; and

- "The United States ***acted in justifiable reliance*** upon Abbott's misrepresentations by making payments on the false claims."  *Id.*, ¶ 113.

The Government further contends that Abbott "***with[eld] information*** and/or purposely

provid[ed] misleading information ***that was critical to government decisions*** regarding amounts

to pay on claims for Abbott's products."  U.S. Opp. to Abbott's Mot. to Dismiss at 1 (9/15/06)

(emphasis added).  In short, the Government claims that it did not know, and should not have

known, that prices published for certain generic Abbott drugs (the "Subject Drugs") did not

reflect average market prices—and, as a result, the Government was defrauded into paying more

than it otherwise would have paid for those drugs.

### B.     The Government's Assertions Of The Deliberative Process Privilege.

### 1.     Documents Withheld In Response To MDL 1456 Subpoenas.

On December 18, 2003, the defendants in MDL 1456 served a subpoena on the

Department of Health and Human Services ("HHS"), seeking the production of documents

relevant to issues that go to the core of this case:  The Government's purposeful adoption,

continuation, and implementation of a reimbursement formula that used published "average

wholesale prices" (AWPs), despite knowing or being provided with overwhelming evidence that

such prices were not a reliable indication of acquisition costs for many drugs.  The MDL 1456

defendants issued subpoenas seeking similar information from several Medicare carriers.[1]

In response to the subpoenas to HHS and the Medicare carriers, the Government initially

produced approximately 26,000 and 95,000 pages of documents, respectively.  (The Government

coordinated the response to the Medicare carrier subpoenas.)[2]  Thirteen months after the

---

[1] A copy of the subpoena issued to HHS and sample subpoena to a Medicare carrier are attached as Exhibits 1 and 2, respectively.  Defendants in MDL 1430, involving Lupron, issued similar subpoenas to HHS and Medicare carriers.

[2] While defendants' subpoenas to HHS requested documents from the entirety of HHS, including the Office of Inspector General ("OIG"), the DOJ confirmed in a recent meet-and-confer that documents from OIG were ***not*** searched in response to defendants' subpoenas.  Documents from OIG are vitally important to Abbott's defense.  As the Court knows, OIG has issued over the years numerous reports advising HHS of the often huge gap between published prices (including AWP) and market prices.  The DOJ also indicated that it intended to withhold documents from OIG under the deliberative process privilege.

subpoenas were issued, the Government provided privilege logs listing documents that had been withheld from production (attached hereto as Exhibits 3 and 4).

The privilege logs indicate the Government withheld hundreds of otherwise responsive documents, primarily under an assertion of the deliberative process privilege.[3]  The privilege log descriptions, bare as they are, strongly suggest that all or nearly all of the withheld documents bear directly on the government's actual and/or constructive knowledge, decision-making, and policy in the area of drug reimbursement.  This includes the Government's knowledge and use of the published AWPs that are the basis of the Government's claims.  The following descriptions from the Government's privilege logs are illustrative:

- A "Note," no date provided, described as "Options for AWP" (HHC901-1014, HHS Log at 8);

- A 12/11/95 "Draft" described as "Re: Options for Drug Payment Under Medicare Part B (with handwritten notes)" (HHC902-0100 – 02, HHS Log at 9);

- A 8/12/92 "Memo and Attachment" described as "Re Calculation of the Average Wholesale Price (AWP) for Drugs" (HHC902-0132 – 35, HHS Log at 10);

- A "Draft," no date provided, described as "Re Proposed Methodology for Determining Average Wholesale Price (AWP)" (HHC902-0370 – 75, HHS Log at 12);

- A "Draft Regulation," no date provided, described as "Re Implementation of the Balanced Budget Act of 1997" (HHC902-0376 – 81, HHS Log 12);

- A 5/23/95 "Note" described as "May 18 Meeting with OPTIVITA representatives and their recommendations regarding Vancomycin and coverage of external infusion pumps" (HHC903-0524-25, HHS Log at 22).[4]

---

[3] In the summer of 2005, after discussions between the Government and defendants (including a threatened motion to compel from the defendants), the Government agreed to produce 197 of the 720 HHS documents and 22 of the 96 carrier documents originally withheld solely under the deliberative process privilege.  The examples cited in this brief and accompanying appendices refer exclusively to documents that the Government continues to withhold.

[4] Vancomycin is one of the Subject Drugs.  Several other documents withheld under the deliberative process privilege are described as specifically involving Vancomycin.  *See* HHS Log at 22-23.

The privilege logs do not indicate who within the Government made the decisions to assert the deliberative process privilege to withhold these and hundreds of other responsive documents.  Moreover, as discussed in greater detail in Section II below, many of the descriptions contained in the privilege logs include cryptic references that amount to no description at all (*e.g.*, an undated "Note" regarding "AWP," HHS Log. at 8), and that fail to articulate any basis for asserting the privilege.  Nor do the privilege logs explain the specific harms that would result if documents were disclosed, nor why that harm could not be mitigated by a protective order, as required by controlling authority.

Abbott asked the Government during a November 1, 2006 meet-and-confer if it would continue withholding documents under the deliberative process privilege in light of its March 17, 2006 intervention against Abbott.  Whatever the merits of the Government's position in MDL 1456, Abbott explained, the situation was now quite different:  The Government is now a litigating party, claiming that it did not know about spreads and asserting causation and reliance-dependent claims.  At the DOJ's request, Abbott sent a formal letter to the Government outlining relevant authority and requesting that it reconsider its decision not to produce documents.  *See* Letter from C. Cook to G. Gobena and J. Draycott (11/19/06) (Ex. 5).  Abbott further asked the Government to assert its privilege properly, including an explanation of the specific harm that would result if documents were disclosed.  *Id.*

The DOJ's November 28, 2006 response did not address Abbott's authority, did not indicate if the Government would produce the documents, and did not make the requisite showing for assertion of the privilege.  *See* Letter from J. Draycott to C. Cook (11/28/06) (Ex. 6). Nor did the Government explain what specific harm would result from disclosing the documents. Instead, the DOJ insisted that Abbott explain how documents it has never seen—but which contain descriptions like "Re Proposed Methodology for Determining Average Wholesale Price

(AWP)"—are "relevant" to this case.  Abbott reminded the Government that the parties'

positions on relevance had been discussed extensively at their November 1st meeting.  *See* Letter

from C. Cook to J. Draycott (11/29/06) (Ex. 7).  In response, the DOJ simply asserted that

documents regarding "government knowledge" were irrelevant.  *See* Letter from J. Draycott to

C. Cook (11/30/06) (Ex. 8).  According to the DOJ, "[t]he issue of government knowledge only

goes to a defendant's scienter."  *Id.*  The letter concluded by stating Abbott's letter was being

"reviewed," but that the Government would not be producing any documents on December 1,

2006, as Abbott requested.  *See id.*  Abbott has heard nothing further.

### 2.    Abbott's Requests For Production And Interrogatories

On November 29 and December 4, 2006, the Government served its written responses to

Abbott's Requests for Production of Documents ("RFPs") and Interrogatories (attached as Exs. 9

and 10, respectively).  In those responses the Government continued its practice of withholding

relevant evidence under the deliberative process privilege, including evidence relating to the

following important areas of inquiry:

- The Government's knowledge of the relationship between AWP, WAC, and other price figures with provider acquisition costs (RFP 22; Inter. 3);

- The Government's decision not to establish Federal Upper Limits for reimbursement of the Abbott Subject Drugs (RFPs 17, 39-40);

- The Government's creation and use of revised AWP drug information developed by the DOJ and the National Association of Medicare Fraud Control Units ("NAMFCU"), including why HHS did not mandate use of the data and later directed Medicare Carriers to cease using the information altogether (RFP 24; Inter. 15);

- President Clinton's 1997 remarks that "[s]ometimes the waste and abuse aren't even illegal; they're just embedded in the practices of the system," and that "these overpayments occur because Medicare reimburses doctors according to the published average wholesale price – the so-called sticker price – for drugs" even though "some [doctors] pay just one tenth of the published price" (RFP 27);

- The meaning and calculation of AWP, WAC, and other reported prices (RFP 26);

- The approval or disapproval of state Medicaid methodologies for reimbursement of drugs (RFPs 43-47);

- Efforts to establish a drug reimbursement methodology that did not rely on published AWP figures, such as through using AMP or actual provider acquisition cost information, or by changing the way manufacturers or price reporting services like Red Book reported prices (RFPs 28-29, 37; Inter. 14); and

- The adequacy of Medicare and Medicaid reimbursement for professional services associated with the administering or dispensing drugs, and whether the payment formula for ingredient cost could subsidize under-reimbursement for professional services (RFPs 33-35).

### 3.    Abbott's Notices of Deposition.

The Government has also asserted the deliberative process privilege to thwart the discovery of relevant evidence through deposition testimony.

On December 7, 2006, the DOJ responded to Abbott's deposition notice for Nancy Molyneaux, an HHS-OIG Program Analyst involved in OIG's 1997 comparison of published AWPs with provider acquisition costs.  *See* Letter from J. Neal to C. Cook, et al. (12/7/06) (Ex. 11); HHS-OIG, *Excessive Medicare Payments for Prescription Drugs* (OEI-O3-97-00290, Dec. 1997).  The DOJ indicated that it was "concerned that much of Ms. Molyneaux's prospective testimony will be covered by the deliberative process privilege," and requested Abbott to "advise us of the topics that you intend to cover with Ms. Molyneaux."  *Id.*  Abbott declined to supply the DOJ an advance copy of its outline, and intends to depose Ms. Molyneaux to the full extent permitted by the Federal Rules of Civil Procedure.

The DOJ further informed Abbott on December 8, 2006 that it would not produce a witness in response to an Abbott notice of deposition seeking testimony from the individual(s) at HHS "principally responsible for drafting the regulation that implemented transitional pass-through payments for certain classes of drugs, biologicals and devices."  Letter from J. Draycott to C. Cook, et al. (12/8/06) (Ex. 12).  The DOJ claimed that the information sought was "wholly

protected from disclosure by the deliberative process privilege" and "completely irrelevant." *Id.* In addition, the DOJ has asserted the deliberative process privilege in connection with Abbott's notice of deposition of the employee or employees at HHS who reviewed or approved the factual representations made in the amicus brief filed on behalf of HHS regarding the meaning of AWP. *See* Letter from J. Draycott to C. Cook, et al. (12/12/06) (Ex. 13).

Thus, it is now clear that, unless ordered otherwise, the Government will continue to withhold relevant evidence under a spurious claim of the "deliberative process privilege" or a unilateral (and biased) determination of what the Government deems "relevant" to this case. This Court's intervention and corrective action is needed.

## ARGUMENT

I.  **THE GOVERNMENT'S CLAIMS AGAINST ABBOTT NEGATE ANY DELIBERATIVE PROCESS PRIVILEGE THAT MIGHT HAVE APPLIED TO SHIELD DOCUMENTS AND OTHER EVIDENCE FROM DISCOVERY.**

A.  **The Government's Claims Against Abbott Negate Any Deliberative Process Privilege That Might Have Applied In This Case.**

When applicable, the common law deliberative process privilege allows governmental entities to "withhold documents and other materials that would reveal to others 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss,* 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd,* 384 F.2d 979 (D.C. Cir. 1967)).  The deliberative process privilege is a ***qualified*** privilege and, "at bottom," "'a discretionary one.'" *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995) (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979)).  "[C]ourts narrowly construe this privilege." *Fed. Deposit Ins. Corp. v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998).

In cases where the Government seeks relief that puts its knowledge and deliberations at issue, "courts have severely restricted the use of the privilege by government agencies that are seeking affirmative judicial relief," reasoning that "'it is fundamentally unfair to allow [the Government] to evade discovery of materials that a private plaintiff would have to turn over.'" *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998) (quoting *Hatziyannis*, 180 F.R.D. at 293-94). Many courts hold that a governmental entity waives ***any*** deliberative process privilege it might assert when it brings suit, particularly when evidence withheld under the privilege might be relevant. *See Ghana Supply Comm'n v. New Eng. Power Co.*, 83 F.R.D. 586, 593-94 (D. Mass. 1979) ("By far the great weight of authority holds that fairness to the defendant requires the government to make available all information relevant to the defense.") (collecting cases); *Dep't of Econ. Dev.*, 139 F.R.D. at 298 ("When a plaintiff files an action it may be said that he automatically waives certain privileges by 'implied intention.'") (internal citation omitted); Charles Alan Wright & Kenneth W. Graham, Jr., *Fed. Prac. & Proc.* § 5690 (2006) (noting some cases, "taking the position that the government cannot 'have its cake and eat it too,' have held that by initiating a civil action the government waives its privileges for any information necessary to resolve the case").

This rule makes complete sense in cases like this one, when (as here) the Government brings fraud-based claims contending it was duped into doing something it (allegedly) would otherwise not have done. The Southern District of New York's decision in *Dep't of Econ. Dev.*, involving fraud-based RICO claims brought by a department of the British Government against Arthur Andersen, is particularly instructive here. The court rejected plaintiffs' assertion of an executive privilege to withhold documents, reasoning the government cannot fairly bring suit "while at the same time seeking under the guise of privilege to deprive the defendant of evidence useful to the defense of the action." *Id.* at 298. The decision recognized the inevitable

connection between claims of fraud—including issues of knowledge, reliance, and causation—

and documents bearing on the governmental plaintiff's knowledge and deliberations:

> [B]y asserting claims of fraud against AA, the British Government
> ***necessarily places at issue questions of knowledge, justifiable
> reliance and causation***.  Specifically, at issue is the British
> Government's knowledge of DeLorean's activities, the extent of
> that knowledge, whether they justifiably relied upon AA's reports
> ***or whether, as the defendants contend, the government chose to
> ignore certain information it had before it and nonetheless
> approve the grants for political issues***.
>
> * * *
>
> ***Where the adjudication of fraud claims turns upon issues of
> knowledge, reliance, and causation, direct evidence of the
> deliberative process is irreplaceable***.

*Id*. at 299 (emphasis added) (internal citations omitted).

Courts have also overwhelmingly held that when "the 'decision-making process [of a

government entity] itself is the subject of the litigation,' it is inappropriate to allow the

deliberative process privilege to preclude discovery of relevant information." *Williams v. City of

Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) (quoting *Burka v. NYC Transit Auth.*, 110 F.R.D.

660, 667

(S.D.N.Y. 1986)).[5]  Courts view the Government's role in the litigation as an important factor

favoring disclosure.  *See Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 605 n.7

(S.D.N.Y. 1991) (FTC's role as plaintiff "tends to open the door to discovery of RTC's decision-

---

[5] *See also Tri-State Hosp. Supply Corp. v. United States*, Civ. A. No. 00-1463, 2005 U.S. Dist. LEXIS
33156, *24-25 (D.D.C. Dec. 16, 2005) ("where the government's intent is squarely at issue, there is no need for the
court to engage in the tests applied in deliberative process privilege cases because 'the privilege does not come into
the picture'") (quoting *In re Subpoena Duces Tecum Served on the Comptroller of the Currency*, 145 F.3d 1422,
1425 (D.C. Cir. 1998)); *United States v. Lake County Bd. of Comm'rs*, 233 F.R.D. 523, 526 (N.D. Ind. 2005)
(agreeing with decisions holding deliberative process privilege "is vitiated entirely at step one when the
government's decision-making process is central to the plaintiff's case"); *Mitchell v. Fishbein*, 227 F.R.D. 239, 250
(S.D.N.Y. 2005) ("the deliberative process privilege is not applicable '[w]here the decision-making process itself is
the subject of the litigation'") (citations omitted); *New York v. Oneida Indian Nation of New York*, No. 95-CV-0554,
2001 U.S. Dist. LEXIS 21616, *20 (N.D.N.Y. 2001) ("If the party's cause of action is directed at the government's
intent . . . and closely tied to the underlying litigation then the privilege cannot be permitted, and must 'evaporate.'")
(internal citations omitted).

making processes"); *United States v. Hooker Chemicals  & Plastics Corp.*, 123 F.R.D. 3, 12 (W.D.N.Y. 1988) ("Perhaps most importantly, the government asserting the privilege in this case is a party to the litigation.").

In its recent oral and written correspondence with Abbott, the DOJ has offered no response to this well-established law.  Instead, the DOJ apparently takes the untenable position that the withheld documents are "irrelevant" because "the issue of government knowledge only goes to a defendant's scienter."  Letter from J. Draycott to C. Cook (11/30/06) (Ex. 8).

Abbott has already addressed in prior briefing the fallacy of the DOJ's position.  *See* Mem. in Opp. to U.S.' and Relator's Mot. for a Compr. Case Mgt. Order at 7-20 (10/6/06).  As recognized in *Dep't of Econ. Dev.*, "where the adjudication of fraud claims turns upon issues of knowledge, reliance, and causation, direct evidence of the deliberative process is irreplaceable." 139 F.R.D. at 299.  These are the same issues that Abbott discussed at length in its prior brief. Even on the evidence available at this early date, the Government's position on relevance can be rejected out of hand.

It is hornbook law that "[r]elevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action."  *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984).  The law does not permit the DOJ "to rule with finality on the relevancy or irrelevancy of documents in their exclusive possession and thereby to deprive both Court and opposing counsel of an opportunity to evaluate their contentions."  *Radio Corp.*, 18 F.R.D. at 444.

The descriptions contained in the privilege logs (samples cited *supra* and *infra*) strongly suggest that the Government is withholding documents that are relevant to—and certainly discoverable in—this case.  Many of these withheld documents obviously bear directly on the

Government's understanding about published AWPs, the implications of using those prices in Medicare and Medicaid reimbursement, and the efforts of some in the Government to cease using them.  All of these facts suggest contemporaneous knowledge that the Government has explicitly denied in Court filings.  Still, because neither Abbott nor the Court has seen these documents, it is impossible to articulate precisely how the documents are be relevant to Abbott's defenses.  *See* Wright & Graham, *Fed. Prac. & Proc.* § 5690 ("It will usually be impossible to determine the relevance and importance of the evidence without an in camera review of the information claimed to be privileged.")

The Government's responses to Abbott's discovery further demonstrate that it seeks to withhold evidence bearing directly on issues of knowledge, justifiable reliance, materiality, causation, and damages.  Thus, under a claim of the deliberative process privilege, the Government has refused to provide discovery into its knowledge about how published AWPs compared with acquisition costs; why HHS did not mandate use of more accurate pricing in its possession; why HHS approved state Medicaid reimbursement methodologies that were inconsistent with the Government's own findings about actual acquisition costs; efforts to establish a drug reimbursement methodology that did not rely on published AWPs; and whether the Medicare and Medicaid programs permitted the AWP-based payment formula for ingredient cost to subsidize under-reimbursement for professional services.  *See supra* at 6-7.

**B.     There Is No Legitimate Reason To Withhold Relevant Evidence Under The Deliberative Process Privilege.**

The Government has completely failed to show "'*what interests* would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be.'" *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) (quoting *Kelly v. San Jose*, 114 F.R.D. 653, 669) (N.D. Cal. 1987)) (emphasis in original).  *See also Mobil Oil Corp. v. Dep't of*

*Energy*, 102 F.R.D. 1, 6-8 (N.D.N.Y. 1983) (holding agency must provide "'precise and certain' reasons for preserving the confidentiality of the information," otherwise courts are forced to "to become mindreaders-to discern without guidance what privilege claims an agency is asserting, the reasons for those claims, and then using those assumptions to determine whether the documents may be justifiably withheld").  The Government refusal is not surprising; HHS has little, if any, continuing need to protect the confidentiality of deliberative processes relating to drug reimbursement under now-discarded payment methodologies.

The primary concern of the courts in assessing the government's need to protect deliberative processes is "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *First E. Corp. v. Mainwaring,* 21 F.3d 465, 468 (D.C. Cir. 1994).  That concern is not valid here.  Many of the documents in the HHS privilege log relate solely to decisions that have since been superseded by legislation, regulation and agency policies, and HHS has no reasonable fear that disclosure will dissuade employees from being candid in their future opinions and recommendations.  For instance, documents HHC901-09950995, described as "Concerns with Using Department of Justice/First Data Bank (FDB) Data in Medicare" (HHS Log at 7), and HHC901-09990999, described as "DOJ Drug Prices" (HHS Log at 7), presumably relate to HHS's failed effort ***six years ago*** to require Medicare carriers to base reimbursement on lower "AWPs" calculated by the DOJ.  *See* HCFA Transmittal No. AB-00-86 (Sept. 8, 2000) and No. AB-00-115 (Nov. 17, 2000).  Other documents, such as HHC903-01030110 "Drug Reimbursement Reform Regulations (FUL)" (HHS Log at 20), relate to discussions of a superseded or never-adopted drug payment policy nearly two decades ago.

The Government's privilege logs contain dozens of other documents relating to policies that were never adopted, never implemented, or no longer form the basis for governmental drug

reimbursement.  Because the Government's claims against Abbott extend only to 2001, virtually

all of the documents at issue here are at least five years old.  Many documents on the privilege

logs are over 20 years old.  HHS cannot seriously contend that it has a strong interest in shielding

these documents from review and cannot reasonably argue that they should be withheld from

Abbott given that they will shed light on the core issues of this case.

>   **C.**      **The Court Should Compel The Government To Produce All Documents Previously Withheld.**

For the foregoing reasons, the Court should compel the Government to produce all of the

documents previously withheld under the deliberative process privilege.  There is no need for the

Court to conduct an exhaustive *in camera* review of the over 500 documents the Government has

withheld (thus far), or for the Court to parse the Government's completely inadequate privilege

logs.  All of the documents withheld are responsive to prior requests and are potentially relevant

to claims in this case.

**II.**      **THE GOVERNMENT HAS NOT ADEQUATELY SUPPORTED ITS ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE.**

For the deliberative process privilege to apply, the document must be ***both*** predecisional

***and*** deliberative.  *See Texaco Puerto Rico*, 60 F.3d at 884 (citing *EPA v. Mink,* 410 U.S. 73, 88

(1973)).  A document is predecisional when it is "'antecedent to the adoption of agency policy,'"

and deliberative if it is "'actually related to the process by which policies are formulated.'"  *Id.*

The deliberative process privilege does ***not*** apply to "factual statements or post-decisional

documents explaining or justifying a decision already made," or materials related to

"interpretation or application of an existing policy."  *Id.* at 885; *Resolution Trust Corp. v.*

*Diamond*, 137  F.R.D. 634, 641 (S.D.N.Y. 1991).  Moreover, "segregable factual portions of the

document might still be subject to compelled disclosure if, for example, they are not so

'inextricably intertwined' with the deliberative material that their disclosure would compromise

the private remainder of the documents." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 559 (1st Cir. 1992) (citing *Mink,* 410 U.S. at 92).

The burden of establishing that a document is protected from disclosure by the deliberative process privilege rests exclusively with the entity asserting it. *Providence Journal Co.,* 981 F.2d at 557. The deliberative process privilege "must ordinarily be invoked by a department head or other responsible agency official, after a personal review of the documents, in an affidavit stating a factual basis for the claim of injury to legitimate government interests flowing from disclosure." *Grossman*, 125 F.R.D. at 381 (internal citations omitted). "Assertion of privilege by the attorney for the [government agency] or by the author of the document is insufficient." *Id*. For this reason alone, the Court should overrule the Government's assertion of the privilege here.

Even if the Government's privilege logs had been submitted in the form of an affidavit from the responsible official, however, they would be inadequate in their particulars. The agency asserting the privilege is required to "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document 'precedes, in temporal sequence, the 'decision' to which it relates." *Providence Journal Co.,* 981 F.2d at 557 (citations omitted). Similarly, the agency bears the burden of establishing "'what deliberative process is involved, and the role played by the documents in the course of that process.'" *Providence Journal Co.,* 981 F.2d at 559 (quoting *Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 585-86 (D.C. Cir. 1987)). Apart from failing to explain what specific harms would be caused by disclosure, the Government's bare bones privilege logs, presumably prepared by Government attorneys, fail to satisfy ***any*** of these requirements.

*First*, many of the log entries are so scant that they amount to no description at all, much less a description sufficiently particular to demonstrate that the deliberative process privilege applies.  The following document descriptions are illustrative:

- An "Appendix I" described simply as "Sample Description" (HHC003-0418 – 19, HHS Log at 1);

- A "List" described as "Response to Recent Communication" (HHC901-0221 – 22, HHS Log at 2);

- A "Memo" described as "Medicare AWP Drug Pricing" (HHC901-0788 – 89, HHS Log at 4);

- A "Note" tantalizingly described as "AWP" (HHC901-1016, HHS Log at 8); and

- A "Handwritten Notes" described as "Handwritten Notes" (HHC908-0395 – 99, HHS Log at 43).

These are only a few examples.  Attached as Exhibit 14 is a chart containing additional entries from HHS' privilege log that are wholly insufficient.

*Second*, the privilege logs repeatedly fail to "verify that the document 'precedes, in temporal sequence, the 'decision' to which it relates.'"  *Providence Journal Co.,* 981 F.2d at 557 (citing *Senate of Puerto Rico,* 823 F.2d at 585).  In fact, no dates are provided for a large numbers of documents listed on the privilege log, constituting an abject failure to demonstrate the predecisional nature of the documents.  *See Wilderness Soc. v. U.S. Dept. of Interior*, 344 F. Supp. 2d 1, 12 (D.D.C. 2004) (holding privilege log that failed to provide dates for several entries was inadequate).

*Third*, even where HHS's privilege log does contain dates, many of the document descriptions are inadequate to demonstrate the document's predecisional nature because the privilege log fails to specify the relevant final decision to which the document relates.  *See Senate of Puerto Rico*, 823 F.2d at 584-585 (entries — consisting "almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its

subject matter— will not do.").  Attached as Exhibit 15 is a chart containing entries from the

HHS privilege log for specific documents that clearly are not predecisional or for which HHS

has not sustained its burden of showing that they are predecisional.

     ***Fourth***, many of the documents are either entirely factual in nature or contain factual

material that is segregable from any arguably deliberative material.  Such documents include, but

are certainly not limited to:

- A "chart" described as "CY 1999 Data (95%) Complete" (HHC901-0682, HHS Log at 3);

- An "appendix" described as "Nationwide Sample Results Brand Name Drugs" (HHC003-04200421, HHS Log at 1);

- A "list" of "Wholesaler Contact Information" (HHC901-0767, HHS Log at 3);

- A "report" described as "Appendix II Top 60 Drug Data, Final Report on the 'Prices Established by the Private and Public Sectors for Drugs Also Covered Under Medicare Part B'" (HHC905-10831599, HHS Log at 31);

- A fax described as "Medicaid Drug Cost Schedule" (HHC902-0058, HHS Log at 9); and

- A "Draft Program Memorandum with Attachment" described as having attachment "Intermediaries/Carriers – Another Source of Average Wholesale Price DAta (sic) (attached)" (HHC901-0729 – 35, HHS Log at 3).

     ***Finally***, and perhaps most prevalently, many document descriptions demonstrate on their

face that they are merely communications explaining, interpreting, implementing, or applying

already-established policies and, therefore, are not protected by the privilege.  *See Resolution*

*Trust Corp.,* 137 F.R.D. at 641.  For example, the privilege log lists a memorandum dated

October 1, 1996, described as "Calculation of Payment Amount for Multi-dosage Drug -- Policy

Clarification."  HHC902-0327 – 28, HHS Log at 12.  According to HHS's own description of the

document, this memorandum is not a predecisional communication regarding policy formulation,

but is a "clarification" of existing policy.  Similarly, a document dated January 29, 1999, is

17

described as a "Clarification of HCFA Policy Regarding Dispensing Physicians."  HHC902-0849, HHS Log at 16.  In addition, the HHS privilege log lists several requests for policy clarifications as well as responses, neither of which is covered by the deliberative process privilege.  *See e.g.,* HHC902-0739, HHS Log at 15; HHC903-0661 – 72, HHS Log at 24.

Other descriptions make clear that the document involves merely the implementation or application of an existing law or policy.  Some documents are in fact described as "implementations."  For example, the log describes one document as "Notes" regarding "Implementation – DOJ AWP PM AB-0086."  HHC901-0829, HHS Log at 4.  *See also* HHC902-0361 – 68, HHS Log at 12) ("Implementation of the Balanced Budget Act"); HHC903-0056 – 58, HHS Log at 19 ("Notifications to States Regarding Drug Items Subject to Specific Federal Upper Limits").  These examples are similar to documents specifically found not to be privileged in *Diamond,* 773 F. Supp. at 602 ("mere instructions to subordinate officials as to the implementation of policy" were not privileged).

In sum, even if the deliberative process privilege applied in some way to some materials (and it does not), the Government's privilege logs do more to undermine than support the Government's assertion of the privilege.  For that reason, as well, the Court should order the Government to produce all documents that have been withheld under the deliberative process privilege.

## III.   ABBOTT IS ENTITLED TO COSTS BECAUSE THE GOVERNMENT LACKED A SUBSTANTIAL BASIS TO WITHHOLD THE DOCUMENTS.

Rule 37 of the Federal Rules of Civil Procedure expressly provides for an award of the "reasonable expenses incurred in making the motion [to compel], including attorney's fees."  Fed. R. Civ. P. 37(a)(4)(A).  Rule 37(a)(4)(A) provides that the Court "shall" award the party whose motion to compel is granted unless the Court finds that "the opposing party's

nondisclosure, response, or objection was substantially justified." *Id.*  This means the reason provided is "'justified to a degree that could satisfy a reasonable person.'"  *Notice v. DuBois*, 187 F.R.D. 19, 20 (D. Mass. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

The Government's refusal to produce documents withheld under the deliberative process privilege is not substantially justified.  For one thing, the Government has utterly failed to assert the deliberative process privilege properly.  The Government provided no showing from appropriate officials at HHS, but instead had government lawyers prepare privilege logs. *Grossman*, 125 F.R.D. at 381 ("Assertion of privilege by the attorney for the [government agency] or by the author of the document is insufficient.").  For another thing, the privilege logs fail to establish any of the prerequisites to assert the privilege—they contain insufficient detail, no indication of how the withheld documents are predecisional or deliberative, and no connection to relevant decisions.  Indeed, many of the documents withheld reflect unprivileged factual material.  There has been no showing of *"'what interests* would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be.'" *Id.* (emphasis added) (internal citation omitted).[6]

Instead, in an attempt to continue hiding from discovery what could be very important documents, the DOJ now tries to backfill with its *ipse dixit* assertion that the documents are "irrelevant."  *See* Letter from J. Draycott to C. Cook (11/28/06) (Ex. 6); Letter from J. Draycott to C. Cook (11/30/06) (Ex. 8).  For the reasons discussed above and in Abbott's Memorandum in Opposition to the United States' and Relators' Motion for a Comprehensive Case Management Order at 7-20 (10/6/06), no reasonable person trained in the law could, in good faith and with

---

[6] Any post-hoc showing the Government might make in response to this brief is insufficient.  *See Kelly*, 114 F.R.D. at 669-70 ("Another reason to require a situation specific affidavit is to provide the [party seeking discovery] with a fair opportunity to challenge the bases for the assertion of the privilege.  Providing that opportunity is important to the court as well because in our adversary system the court looks to opposing parties to help it probe and measure the strength of submissions such as these.").

substantial justification, believe evidence about the plaintiff's knowledge and deliberations could be "irrelevant" to a claim of fraud.  The Government's own Complaint asserts a claim of reasonable reliance.  Complaint ¶ 113.

Refusals to produce documents on "relevance" grounds are fertile grounds for discovery misbehavior and commonly warrant the sanctions contemplated in Rule 37.  As the court in *Notice* observed:

> What I do not find substantially justified is the refusal to provide any evidence which *might* be admissible pursuant to Rule 404(b), Fed. R. Evid.  Defendants consistently confuse admissibility with discoverability.  Evidence does not have to be admissible to be discoverable. . . . How can [opposing] counsel know whether the evidence would be admissible under these tests until he or she knew what the evidence is?  There would be no way of knowing.

187 F.R.D. at 22.  The situation here is no different, and Abbott should be awarded its costs.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should compel the Government to produce to Abbott all documents it has previously withheld under the deliberative process privilege and prohibit the Government from obstructing ongoing discovery through assertion of that privilege.

Dated:  December 27, 2006

Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

     I, R. Christopher Cook, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL EVIDENCE WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE, and memorandum and materials in support, be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 27th day of December, 2006.

                                   /s/ R. Christopher Cook      
                                   R. Christopher Cook

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## [PROPOSED] ORDER REGARDING DELIBERATIVE PROCESS PRIVILEGE

Upon consideration of Abbott Laboratories, Inc.'s Motion to Compel Evidence Withheld Under the Deliberative Process Privilege, IT IS ORDERED that:

1.      Within seven (7) days from the date of this Order, the United States shall produce to Abbott all documents contained on the privilege logs prepared in connection with subpoenas issued by defendants to the United States Department of Health and Human Services and various Medicare carriers in MDL 1456.

2.      Absent an order from the Court, in connection with the above-referenced litigation and any other litigation to which the United States is the plaintiff, the United States shall not assert the deliberative process privilege as a basis to withhold documents, refuse to answer interrogatories, or instruct a witness not to answer at any deposition.

SO ORDERED THIS ___ DAY of _____, 2006:

_____