UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) | MDL NO. 1456 CIVIL ACTION:  01-CV-12257-PBS Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, No. 06-CV-11337-PBS | ) ) ) ) | Magistrate Judge Marianne B. Bowler |

### ABBOTT LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION TO COMPEL EVIDENCE WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE

### INTRODUCTION

Defendant Abbott Laboratories, Inc. ("Abbott") respectfully renews its motion to compel Plaintiff the United States of America ("United States" or "Government") to produce to Abbott all documents that the Government continues to withhold under an improperly asserted "deliberative process privilege."  Abbott's motion also seeks a ruling from this Court that the Government can no longer shield evidence responsive to Abbott's discovery efforts in this case under that qualified privilege.

The Government's assertion of fraud-based claims against Abbott negates any qualified deliberative process privilege that might have applied in this case.  The Court has made it abundantly clear that the Government's knowledge about published drug prices and deliberations in the area of drug reimbursement policy are relevant to a lawsuit in which the Government contends it was defrauded on these very subjects.  The Court recently noted that it was "somewhat frustrated over the refusal of the U.S. government to produce witnesses in the big trial that I just went through," and that "[e]veryone has a right to understand what the government was doing during the time period."  Feb. 27, 2007 Hrg. Tr. at 35 (attached as Ex. 1).

The Court specifically identified the importance of "what Centers for Medicare and Medicaid [S]ervices understood and knew and what they agreed to and what they didn't." *Id*. at 36.

In response to the Court's comments, counsel for the Government claimed that the "government intends to be very open about the process." *Id*. at 36. The Government's continued, broad assertion of the deliberative process privilege to shield responsive evidence—completely without regard to any relevance that evidence might have to these proceedings—is inconsistent with the Government's assurances to the Court. Indeed, the Government's withholding of relevant evidence undermines the credibility of these proceedings, raises issues of Constitutional due process, and is irresponsible. Abbott shares the Court's frustration with the Government's unwillingness to produce evidence of central relevance to AWP cases.

Moreover, the Government has repeatedly failed to assert the privilege in the appropriate manner and has broadly asserted the privilege to withhold documents—such as all "drafts"—regardless of whether they are predecisional or deliberative. In fact, before a responsible, non-lawyer Government official considers or explains what specific harm would result if evidence relating to now-discarded payment methodologies was provided to Abbott, the Government wants to burden this Court with an extensive and ongoing *in camera* review process involving a growing list of hundreds of documents. The law does not allow the Government to shift to this Court its responsibility to review the evidence meaningfully. Instead, the Court should rule that the Government has lost any right it might have had to withhold evidence under the deliberative process privilege in this case, just as other courts have done in similar circumstances.

## BACKGROUND

On December 27, 2006, Abbott moved to compel the Government to produce documents the Government was withholding under the deliberative process privilege. In its supporting memorandum, Abbott outlined the various ways in which the Government had already asserted

the deliberative process privilege to withhold documents and refuse to answer interrogatories. *See* Abbott Lab. Mem. in Supp. of Mot. to Compel Evidence Withheld Under the Deliberative Process Privilege at 5-8 (12/27/06) (Dkt. No. 3513) ("Abbott 12/27/06 Mem."). The Government did not address the merits of Abbott's motion in its opposition. Although it continued to withhold overdue documents from Abbott and had already asserted the deliberative process privilege in responding to 33 of Abbott's 126 document requests and 15 of Abbott's 17 interrogatories, the Government argued it had "yet to assert the deliberative process privilege" and was "presently determining whether to continue to invoke that privilege in the instant case." U.S.' Opp. to Def. Abbott Laboratories, Inc.'s Mot. to Compel Evidence Withheld Under the Deliberative Process Privilege at 2 (1/10/07) (Dkt. No. 3534) ("Gov't Mem."). The Government offered—only after Abbott filed its motion to compel—to produce the withheld documents or provide an updated privilege log by February 9, 2007.

On January 30, 2007, Magistrate Judge Bowler briefly heard oral argument on Abbott's motion. *See* Jan. 30, 2007 Hrg. Tr. at 22-27 (attached as Ex. 2). Based on the Government's representations that it would make "a final decision on those documents by February 9th" and was "presently determining whether to continue to invoke that privilege in the instant case," the Court denied Abbott's motion without prejudice to renew the motion after 14 days. *Id.* at 26-27; Gov't Mem. at 2.

On February 9, 2007, the Government provided a new privilege log for documents being withheld from the files of CMS. *See* Letter from J. Neal to Abbott counsel (2/9/07) & Amd. CMS Priv. Log (attached as Ex. 3). An updated privilege for documents withheld from Medicare carriers followed on February 26, 2007. *See* Letter from J. Neal to Abbott counsel (2/26/07) & Amd. Carrier Priv. Log (attached as Ex. 4). In addition, in response to Abbott's document

requests relating to a subset of OIG reports, the Government has withheld another 200 some documents from the files of OIG.  *See* Letter from J. Draycott to D. Torborg, N. Merkl, M. Murphy & H. Witt (3/12/07) & OIG Priv. Log (attached as Ex. 5).  Despite numerous meet-and-confers among counsel, the Government has continued to withhold these documents.  Thus, the Government is already withholding over 600 individual documents, mostly under the deliberative process privilege.  As the Government has not yet responded to many of Abbott's outstanding documents requests, the Government likely will assert the privilege to withhold hundreds of additional documents.

Accordingly, although it still has made no effort to assert the privilege in the procedurally appropriate manner (*see infra* at 10-13), there is no longer any dispute that the Government *has* made a "final decision" to assert the deliberative process privilege in this case.  This motion is therefore undeniably ripe for judicial review.

## ARGUMENT

**I.  THE GOVERNMENT'S CLAIMS AGAINST ABBOTT NEGATE ANY DELIBERATIVE PROCESS PRIVILEGE THAT MIGHT HAVE APPLIED TO SHIELD DOCUMENTS AND OTHER EVIDENCE FROM DISCOVERY.**

Abbott's initial December 27, 2006 memorandum (at 8-14) discussed a well-developed body of case law holding that, when the Government seeks relief that puts its knowledge and deliberations at issue, "courts have severely restricted the use of the privilege by government agencies." *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998).  This precedent is particularly apt here.  As the Southern District of New York observed, "[w]here the adjudication of fraud claims turns upon issues of knowledge, reliance, and causation, direct evidence of the deliberative process is irreplaceable." *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 139 F.R.D. 295, 299 (S.D.N.Y. 1991).  The Government's claims in this case are based in fraud; direct evidence of Government knowledge and deliberations is crucial to Abbott's defense.

This district in particular has recognized that "the great weight of authority holds that fairness to the defendant requires the government to make available all information relevant to the defense." *Ghana Supply Comm'n v. New Eng. Power Co.*, 83 F.R.D. 586, 593-94 (D. Mass. 1979) (collecting cases). And this Court has recognized the importance of the Government's knowledge and deliberations regarding the use of published drug prices in the reimbursement schemes that it implemented and maintained. *See* Nov. 21, 2006 Trial Tr. at 5-6 (attached as Ex. 6) (stating "there's a very strong case to be made for having the [federal] government testify" and that "it's important to hear" what federal government witnesses "have to say"); Feb. 27, 2007 Hrg. Tr. at 35-36. Even those courts that employ a balancing test to determine whether the deliberative process privilege can be used to withhold documents view the Government's role in the litigation as an important factor strongly favoring disclosure in circumstances such as those presented here. *See Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 605 n.7 (S.D.N.Y. 1991) (FTC's role as plaintiff "tends to open the door to discovery of RTC's decision-making processes"); *United States v. Hooker Chemicals & Plastics Corp.*, 123 F.R.D. 3, 12 (W.D.N.Y. 1988) ("Perhaps most importantly, the government asserting the privilege in this case is a party to the litigation.").

The Government's blanket assertion of the deliberative process privilege in this case disregards this precedent. Since February 9, 2007, counsel for the parties have met extensively regarding the Government's continued withholding of documents. Through those conferences, counsel for Abbott has obtained a better understanding of just how overbroad, wooden, and unfair the Government's assertion of the deliberative process privilege is in this case. As an initial matter, Abbott asked the DOJ a fundamental question: Had the Government made any effort to identify and produce documents that concern the Government's knowledge,

deliberations, and policies about published drug prices such as AWP and whether the Government was defrauded into believing those prices were something that they were not?  The DOJ admitted it has made no such effort to identify and produce such documents.  *See* Letter from D. Torborg to J. Neal (3/20/07) (attached as Ex. 7).  Rather, the DOJ reiterated its unsupported contention that evidence relating to "government knowledge" is relevant only to the defendant's *scienter*.  *See id.*  Similarly, in connection with a meet-and-confer relating to documents withheld from OIG, Abbott learned that the agency has treated Abbott's request for documents in this case no differently than any other FOIA request.  *See* Letter from D. Torborg to J. Draycott (3/22/07) (attached as Ex. 8).

In short, the Government continues to ignore the Court's clear message that the Government's knowledge about spreads and its deliberations about using published AWPs despite knowing of large spreads is obviously relevant to a fraud case.  Instead, the Government has taken a remarkably simplistic view of what documents it should be allowed to withhold from Abbott.  For example, the Government has withheld from production any "draft" document whatsoever created by CMS and the carriers, no matter who was involved, regardless of whether it relates to the deliberations that led to a final agency decision, and regardless of how relevant it might be to this case.  *See id.*  As discussed below (*infra* at 15), HHS' "all drafts" policy has been squarely rejected by at least one court, and is inconsistent with the law in this Circuit.

The Government's updated privilege logs make clear that it is withholding documents that are directly relevant to this case.  Many of these documents appear to contain evidence that contradicts statements the Government has made in its Complaint and other submissions to the Court.  To mention just a few examples, the privilege logs contain descriptions such as "calculating the percentage of spread" (HHC901-0767, Amd. CMS Priv. Log at 3) (Ex. 3),

"Explaining question as to the use of AWP maintained in [First Databank]" (HHC901-0994, *id*. at 5), consideration of "alternative Medicare part B reimbursement mechanisms and the pros/cons/potential impact of each" (HHC902-0094 – 97, *id*. at 8), an HHS report to Congress "on the average wholesale price of drugs as mandated by Section 4556 of the Balanced Budget Act of 1997" (HHC902-0795 – 800, *id*. at 16), and a memo regarding "a story on ABC Evening News" regarding "payment differences on prescription drugs between Medicare beneficiaries and other health care consumers" (HHC902-0080, *id*. at 7). The Government has also withheld a number of documents from CMS' files regarding a key early 1990s OIG report showing large spreads for drugs. *See id*. at 9-10.

Making matters worse, it appears we are seeing just the tip of the iceberg of the Government's abuse of the deliberative process privilege to withhold and/or delay production of relevant evidence in this case and burden this Court. The Government has finally started producing documents in response to Abbott's first set of document requests, served last July. Because the files of OIG were not searched in response to previous third-party subpoenas, Abbott asked the Government to prioritize the search for those files.[1] Here, too, the Government has withheld documents that appear highly relevant to its knowledge about drug spreads and the reasons behind its decisions of what, if anything, to do about those spreads. For example, the Government has withheld documents relating to the "entrance" and "exit" conferences between OIG and HCFA relating to key OIG reports. *See, e.g.*, HHD900-0729 – 39, HHD900-0906 – 15 & HHD900-1065 – 67 (OIG Priv. Log at 6-7) (Ex. 5). In short, the Government withheld

---

[1] The Court is well aware of the relevance of documents from OIG, having recently commented that "the Office of Inspector General was actually quite persistent in trying to flag some of these issues." Feb. 27, 2007 Hrg. Tr. at 36 (Ex. 1). Despite the obvious relevance of OIG documents to this case, the Government initially tried to avoid producing documents from OIG altogether. In the proposed case management order it filed with the Court on September 15, 2006, the Government included a provision which would have limited "[a]ll of Defendants' discovery directed at the 'United States' . . . specifically to the U.S. Department of Health and Human Services ("HHS"), including the Centers for Medicare and Medicaid Services ('CMS'), the victim agency, and its agents." United States' and Relator's Motion for a Comprehensive Case Management Order, Ex. 1 (9/15/06) (Dkt. No. 3108).

documents likely to show how CMS reacted to being advised about the difference between AWP and acquisition cost.

The case for requiring production of the withheld documents is particularly strong here. In fact, the withheld the documents might provide the only reliable, non-biased evidence of "what Centers for Medicare and Medicaid [S]ervices understood and knew and what they agreed to and what they didn't." Feb. 27, 2007 Hrg. Tr. at 36 (comments by Judge Saris) (Ex. 1). Early depositions of Government witnesses have shown that, because of the Government's inordinate delay in prosecuting this case, "evidence has been lost, memories have faded, and witnesses have disappeared.'" *United States ex rel. Health Outcomes Techns., Inc. v. Hallmark Health Sys., Inc.*, 409 F. Supp. 2d 43, 50-52 (D. Mass. 2006) (internal citation omitted). CMS' 30(b)(6) designee on issues of document preservation recently testified that a litigation hold was not put in place for this case until January of *2007* (over a month after Abbott sent a deposition notice to the United States seeking a witness on the topic of document preservation), that she was aware of no steps taken to preserve or collect documents at CMS relating to AWP issues until 2003, and that the Government still has no litigation hold in place for responsive documents in archives and the Federal Records Center. *See* V. Robey Dep. Tr. at 57-58, 61, 65-66, 73, 117-119 (rough transcript) (excerpts attached as Ex. 9). *See also* J. Boughn Dep. Tr. at 206-09 (CMO information officer testified that she was not aware of any general document litigation hold policies or any specific hold policy relating to this case) (excerpts attached as Ex. 10).[2]

These depositions have also made clear that memories have faded, and that it may be impossible to reconstruct what HHS knew and understood and what HHS agreed to in the area of

---

[2] OIG witnesses have similarly been unaware of any document litigation holds. *See* N. Molyneaux Dep. Tr. at 29-32, 102-04 (witness testified that she was not aware of any direction to retain documents, that she "cleaned house" by destroying documents she was no longer working with, and that working paper files for government reports were routinely destroyed after five or ten years) (excepts attached as Ex. 11); A. Sernyak Dep. Tr. at 54-56 (excerpts attached as Ex. 12) (not aware of any direction to retain documents or emails).

drug reimbursement. For example, Ms. Molyneaux, who worked on OIG reports in the drug reimbursement area in the 1990s, answered "I don't remember" or "I don't recall" to most of the substantive questions posed at her deposition. She was very candid in admitting her inability to provide answers resulted from passage of time. N. Molyneaux Dep. Tr. at 175-76 (Ex. 11). The same was true of the two other OIG witnesses thus far deposed. *See also* A. Sernyak Dep. Tr. at 294 ("I don't know. I don't remember. Again, this would have been like ten years ago, probably.") (Ex. 12); C. Hansford Dep. Tr. at 69 (rough transcript) (excerpts attached as Ex. 13). Under these circumstances, it is fundamentally unfair for the Government to withhold any existing evidence that might survive today that sheds light on what HHS knew, understood, and agreed to in the area of drug reimbursement. Abbott should be allowed full, unfettered, and immediate access to any such documents. *See In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) ("availability of other evidence" is one factor to consider in determining applicability of qualified deliberative process privilege) (internal citation omitted).

Fact discovery closes in this case on December 31, 1997. Many of the documents withheld involve key federal government witnesses, and Abbott has the right to question witnesses about these documents. Key federal government witnesses, including three past CMS Administrators (Messrs. Vladeck and Scully and Ms. DeParle), are scheduled to be deposed in this case over the next two months (Mr. Scully's deposition is scheduled for May 1, 2007). This Court's immediate intervention is needed so that Abbott can proceed with depositions in an orderly and timely fashion.[3]

---

[3] To the extent that any depositions go forward without relevant documents that are later produced, Abbott is reserving the right to take additional testimony from those witnesses.

**II.     THE GOVERNMENT HAS LOST ANY DELIBERATIVE PROCESS PRIVILEGE THAT MIGHT HAVE APPLIED IN THIS CASE BY FAILING TO ASSERT THE PRIVILEGE APPROPRIATELY.**

The weight of authority, including in the District of Massachusetts, requires that the deliberative process privilege "must ordinarily be invoked by a department head or other responsible agency official, after a personal review of the documents, in an affidavit stating a factual basis for the claim of injury to legitimate government interests flowing from disclosure." *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989).  "Assertion of privilege by the attorney for the [government agency] or by the author of the document is insufficient." *Id*.  *See also Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 6 (N.D.N.Y. 1983) (outlining the "specific procedure to be followed" to assert the deliberative process privilege after an "exhaustive study on the case law," which includes personal consideration by the head of the agency or a high-ranking subordinate with expertise of agency's functions and an identification of "'precise and certain' reasons for preserving the confidentiality of the requested information") (internal citations omitted).

"[T]he time to make the showing that certain information is privileged is at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel." *See Anderson v. Marion County Sheriff's Dep't*, 220 F.R.D. 555, 562 n.5 (S.D. Ind. 2004).  *See also Kelly v. San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987) ("To properly support each such objection the party also must submit, *at the time it files and serves its response to the discovery request*, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration.") (emphasis added).

The Government has refused to assert the deliberative process privilege in this case in the procedurally appropriate manner despite explicit and repeated demands by Abbott that it do so.

During the parties' conferences, Abbott counsel asked the DOJ *who* within the Government made decisions to withhold the documents in question. The DOJ responded that individuals "at the agency" made the decisions. Letter from D. Torborg to J. Neal (3/20/07) (Ex. 7). When counsel for Abbott described the law requiring non-lawyers to assert the privilege, the DOJ pointedly would not tell Abbott whether the individuals making the decisions here were lawyers. *See id*. When Abbott asked the DOJ why the Government had failed to assert the privilege consistent with the standards outlined above, the Government claimed that Massachusetts district courts do not require affidavits until the agency asserts the privilege "in Court." *See id*. Abbott has found no case law consistent with that position in the First Circuit or the District of Massachusetts. Indeed, the case law Abbott found indicated otherwise. *See United States v. Salemme*, No. 94-10287-MLW, 97-10009-MLW, 1997 WL 810057, *6 (D. Mass. Dec. 29, 1997) ("Before the deliberative process privilege may be invoked, 'there must be a formal claim of privilege, lodged by the head of the department which has control over the matter after actual consideration by that officer.'") (citing *Scott Paper Co. v. United States*, 943 F. Supp. 489, 496-497 (E.D. Pa. 1996); *United v. Reynolds*, 345 U.S. 1, 7-8 (1953); *Matter of Nelson*, 131 F.R.D. 161, 164 (D. Neb. 1989); *N.O. v. Callahan*, 110 F.R.D. 637, 641 (D. Mass. 1986)).

      The DOJ has been unable in its meetings with Abbott to enunciate any particular harm that would result from producing the withheld documents, particularly if Abbott agreed to keep them strictly confidential. Counsel instead merely indicated that protection of the deliberative process privilege was "a matter of principle" for the agency and continually recited the general purpose of the deliberative process privilege, without specifics. Letter from D. Torborg to J. Neal (3/20/07) (Ex. 7). The courts, however, have made clear that agency policy is not a sufficient basis on which to assert the privilege. *See Resolution Trust Corp. v. Diamond*, 773 F.

Supp. 597, 604 (S.D.N.Y. 1991) (rejecting assertion of deliberative process privilege when Government's affidavits provide "merely a paraphrase of the rational for the deliberative-process privilege described in the case law").  The Government's continued failure to explain what harm would result from disclosure of these documents has inhibited any meaningful consideration of its position.

The Government and the DOJ may view Abbott's focus on a proper assertion of the privilege as unimportant procedural maneuvering.  They would be wrong.  The procedural requirements of asserting the privilege are important to courts.  *See, e.g.*, *Revelle v. Trigg*, No. 95-5885, 1999 WL 80283, * 2 (E.D. Pa. Feb. 2, 1999) ("the Court carefully scrutinizes the manner of assertion of the [deliberative process] privilege").  Unless these procedural prerequisites are enforced, government agencies are encouraged "automatically to claim the broadest possible grounds for exemption for the greatest amount of information." *Mobil Oil*, 102 F.R.D. at 7 (citing *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).  When that happens (as it has here), the courts are forced into conducting a burdensome and unnecessary *in camera* review.  Indeed, the DOJ anticipates that the Court will have to conduct an *in camera*, document-by-document review of the thousands of pages Abbott seeks in its motion to compel.  *See* Letter from D. Torborg to J. Neal (3/20/07) (Ex. 7).  The district court in *Mobil Oil* specifically cautioned against this approach, noting that such an approach "would shift the burden of proving the necessity of such claims away from the agency and on to the already heavily burdened court system." *Mobil Oil*, 102 F.R.D. at 7.  The court in *Mobil Oil* further observed that "courts would be forced to review privilege claims by any agency staff member solely because the agency member was willing to submit the withheld documents for *in camera* inspection." *Id*.

Here, as in *Mobil Oil*, the Government's "failure to comply with the first procedural requirement that the agency's head or a high level subordinate assert the claim is fatal to its predecisional privilege claim." *Id*. The Government's actions here are very similar to the procedural failings that recently caused the United States Court of Federal Claims to reject the deliberative process privilege assertions in *Pacific Gas & Elec. Co. v. U.S.*, 70 Fed. Cl. 128 (Fed. Cl. 2006). There, because of the Government's procedural failures, the court held that it "need not decide whether these documents meet the legal standards of the privilege by being 'pre-decisional' and 'deliberative,'" or "'balance the competing interests of the parties.'" *Id*. at 136 (internal citations omitted). The Court reasoned:

> [T]he Court's conclusion is based on the fact that defendant has failed to meet the procedural requirements for invoking the deliberative process privilege: first, defendant has failed to demonstrate that the privilege was properly invoked by the appropriate official; second, defendant has failed to 'supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested documents[s],' . . . and third, defendant's affidavits supporting its assertions of the deliberative process privilege have been belatedly executed.

*Id*. at 136-37 (internal citations omitted). Similarly, this Court should overrule the Government's assertion of the deliberative process privilege, with prejudice, for failure to assert it properly.

Such a result would not be unfair to the Government. In letters, meetings, and filings with the Court, Abbott has described to the Government the requirements of the law and the shortcomings of their existing privilege logs. Abbott has been demanding a document-by-document assertion of the privilege by a senior CMS official since November 19, 2006. *See* Letter from C. Cook to G. Gobena and J. Draycott (11/19/06) at 5 (attached as Ex. 14). Indeed, Abbott filed its initial motion to compel three months ago. Because the Government still has refused to assert the privilege appropriately, it can fairly be said to have forfeited its right to assert the privilege. *Mobil Oil*, 102 F.R.D. at 7; *Pacific Gas & Elec.*, 70 Fed. Cl. at 142-44.

### III. THE GOVERNMENT IS WITHHOLDING DOCUMENTS THAT ARE NOT COVERED BY THE DELIBERATIVE PROCESS PRIVILEGE.

Finally, the Government's privilege logs are full of documents that, on their face, are not protected by the deliberative process privilege. *See* Abbott 12/27/06 Mem. (Dkt. No. 3513) at 14-18. For the reasons explained above, the Court need not engage in an exhaustive *in camera* review of the thousands of pages that Government lawyers have unilaterally withheld under the deliberative process privilege. But it is nonetheless instructive to review some of the ways in which the Government has stretched the deliberative process privilege to hide documents that fall well outside of the interests the privilege was designed to protect.

In order to assert the deliberative process privilege in the First Circuit, the agency is required to "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document 'precedes, in temporal sequence, the 'decision' to which it relates.'" *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992) (internal citations omitted). A document "is predecisional if it was 'prepared in order to assist an agency decision-maker in arriving at this decision,' rather than to support a decision already made." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp.2d 1, 10 (D.D.C. 2004) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)). The Government's bare bones privilege logs do not satisfy these requirements as applied in the typical FOIA context, let alone in a case where the withheld evidence is relevant to the defense of a lawsuit initiated by the Government. *See Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 584-85 (D.C. Cir. 1987) (entries — consisting "almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter — will not do.").

The startling breadth of the Government's privilege assertion is best demonstrated by its approach to "drafts":  The Government has explicitly withheld any document it considers to be a "draft," without regard to the subject matter, who was involved, or whether it relates to the deliberations that led to a final agency decision.  *See* Letter from D. Torborg to J. Neal (3/20/07) (Ex. 7); *See Animal Legal Def. Fund v. Dep't of the Air Force*, 44 F. Supp.2d 295, 300 (D.D.C. 1999) (in determining applicability of the privilege, courts often look at "the 'nature of the decision making authority vested in the officer or person issuing the disputed document,' and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient") (internal citations omitted).

The Government's simplistic position to withhold all drafts is not consistent with the law and has been rejected by the courts.  Indeed, the Western District of Pennsylvania explicitly rejected this very approach employed *by HHS* just last December:  "[S]imply because a document has been designated as a 'draft' does not automatically entitle the [Department of Health and Human Services] to withhold it based on the deliberative process privilege."  *Commonwealth of Pa. Dep't of Public Welfare v. U.S.*, No. CIVA 05-1285, 2006 WL 3792628, *25 (W.D. Pa. Dec. 21, 2006) (attached as Ex. 15) (citing *Wilderness Soc'y*, 344 F. Supp.2d at 14; *Arthur Andersen & Co. v. I.R.S.*, 679 F.2d 254, 257 (D.C. Cir. 1982)).[4]  Chief Judge Ambrose held that "draft" documents withheld by HHS "do not fall within the deliberative process privilege because [the agency had] fail[ed] to articulate with the required detail any particular agency decision or correlate the facts with the elements of the privilege."

---

[4] *Wilderness* stated that "the District of Columbia has made clear that simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege."  *Id*. (citing *Arthur Anderson & Co. v. Internal Revenue Serv.*, 679 F.2d 254, 257 (D.C. Cir. 1982)).  Like all other documents withheld under the deliberative process privilege, the court held that the Government must "identify the 'function and significance . . . in the agency's decision making process' of all redacted and withheld documents to qualify them as exempt under the deliberative process privilege."  *Id*.

*Commonwealth of Pa. Dep't of Public Welfare*, 2006 WL 3792628 at *27.  Judge Ambrose's decision is consistent with the law of the First Circuit.  *See Providence Journal*, 981 F.2d at 557.

HHS' privilege logs here are flawed for the same reasons.  Many of the draft documents listed on the amended CMS privilege log appear to have nothing to do with deliberations leading to a final policy, but instead concern the interpretation, clarification, explanation, or implementation of existing policy.  *See, e.g.,* HHC002-0383 (Amd. CMS Priv. Log at 1) (Ex. 3) ("Contains discussion of interpretation of the Medicaid drug rebate statute"), HHC901-0994 (*id*. at 5) ("Explaining question as to use of AWP maintained in FDB"); HHC902-0109 – 11 (*id*. at 9) ("Instructions regarding how to determine the acquisition cost of drugs pursuant to 42 CFR 405.517"); HHC902-0646 – 51 (*id*. at 15) ("Memorandum in response to request for clarification of HCFA policy relating to Estimated Acquisition Cost ('EAC') and rebates from manufacturers"); HHC902-1071 (*id*. at 19) ("Proposed text of letter to be sent to state Medicaid directors from Bill Roper to clarify two issues in Medicaid drug reimbursement").  The Government has withheld a number of documents from CMS files relating to "implementing the BBA" of 1997.  *See id*. at 12-13.  It has withheld these documents even though it has not been able to pinpoint any final agency decision to which the documents relate (other than finalizing a draft) or any of the other requirements outlined by the First Circuit in *Providence Journal*.  *See* 981 F.2d at 557.

In short, the Government ignores the fact that, in the First Circuit, the deliberative process privilege simply does not apply to "factual statements or post-decisional documents explaining or justifying a decision already made," or materials related to "interpretation or application of an existing policy."  *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995); *see also Resolution Trust Corp. v. Diamond*, 137  F.R.D. 634, 641

(S.D.N.Y. 1991).  The Government's disregard for the proper scope of the deliberative process privilege is another powerful reason for the Court to issue the relief Abbott seeks in its motion.

## CONCLUSION

For the foregoing reasons, the Court should grant Abbott's Renewed Motion to Compel Production of Evidence Withheld Under the Deliberative Process Privilege and order that the Government immediately produce all documents previously withheld under the deliberative process privilege, both because the assertion of the privilege is inconsistent with the Government's claims in this case and because the Government has deliberately refused to assert the privilege in the appropriate manner.

Dated:  March 28, 2007                                Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## **CERTIFICATE OF SERVICE**

     I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S RENEWED MOTION TO COMPEL EVIDENCE WITHHELD UNDER THE DELIBERATIVE PROCESS, and supporting memorandum and exhibits, to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 28th day of March, 2007.

                                            /s/ David S. Torborg
                                            David S. Torborg