| Deponent | Position | Testimony |
|---|---|---|
| Vladeck, Bruce | Health Care Financing Administration, Administrator (1993-1997) | Q. If you could look to Part B of – of this particular regulation, 405.517, it reads that: "Payment for a drug described in Paragraph A should be based on the lower of two measurements." Correct? |
| | | A. That's correct. |
| | | MS. BROOKER: Objection. Form. |
| | | Q. Could you tell me what are the two measurements that this regulation provided for as the alternatives for paying for Part B drugs? |
| | | MS. BROOKER: Objection. Form. |
| | | A. The alternatives were either actual acquisition cost or average wholesale price. |
| | | Q. The phrase here "national average wholesale price of the drug," do you see that? |
| | | A. Yes, sir. |
| | | Q. Is it your understanding that during the approximately four years, or just over four years that you were administrator of HCFA, that to the extent that Medicare Part B paid for drugs based upon the average wholesale price of the drugs, that they did so based upon published average wholesale prices? |
| | | A. Yes, that was my understanding. |
| | | B. Vladeck Dep. Tr. at 112-13 |
| | | ------------------------------- |
| | | Q. I guess to put it another way, you understood, between 1993 and 1997, that AWP did not represent the average acquisition cost for a pharmaceutical? |
| | | A. That's correct. We -- |

| Deponent | Position | Testimony |
|---|---|---|
| | | MS. BROOKER: Objection. Form. |
| | | MR. BREEN: Form. |
| | | A. -- we distinguished acquisition cost from average wholesale price, and believed that, in general, it was likely to be lower. |
| | | B. Vladeck Dep. Tr. at 152 |
| | | Q. And the AWP in that legislation [Balanced Budget Act of 1997] did you understand that in the same way you understood AWP in the regulation from 1992? |
| | | A. Yes. |
| | | MS. BROOKER: Objection. Form. |
| | | Q. And so that would refer to a published average wholesale price.  Correct? |
| | | A. That was our understanding of it, yes. |
| | | B. Vladeck Dep. Tr. at 278-79 |
| Booth, Charles | Health Care Financing Administration, Director of Financial Services in the Office of Financial Management (1966 - 2001); Director of the Office of Hospital Policy in the Bureau of Policy Development (1994 -1997); Director of Office of | Q. It says, "The AWP is reported in the Red Book and other pricing publications and databases used by the pharmaceutical industry."  Is that consistent with your understanding of what AWP was in -- prior to December 1997? |
| | | MR. GOBENA: Object to the form, asked and answered. |
| | | A. It was my understanding in 1996 and 1997. |
| | | Q. And the next sentence states, "Historically, it has been the AWP that carriers have used to |

- 2 -

| Deponent | Position | Testimony |
|---|---|---|
| | Payment Policy (1984-1994); Positions Regarding Medicare Billing Practices and Computer Claims Processing (1966-1983) | develop Medicare reimbursement for prescription drugs." Was it your understanding in 1997 that historically, carriers had used the AWP published in the Red Book and other pricing publications and databases to develop Medicare reimbursement for prescription drugs?<br><br>A. Well, I would quibble with "historically," because I believe that was only from 1992 on.<br><br>C. Booth Dep. Tr. at 103-104 |
| Ragone, Linda | Office of the Inspector General, Deputy Regional Inspector General (1998 – Present); Program Analyst (1989-1998) | Q. Okay. Did you understand Congress to be directing HCFA to pay 95 percent of the published AWP?<br><br>MR. DRAYCOTT: Objection.<br><br>THE WITNESS: I believe when I read that that -- well, I don't -- I don't have it in front of me, so I believe that it was supposed to be 95 percent of average wholesale price.<br><br>BY MR. COOK: And you understood that to be what is published in Red Book, Blue Book, Medispan, right?<br><br>A. That's what I took it to mean.<br><br>L. Ragone Dep. Tr. at 552 |
| Tawes, David | Office of the Inspector General, Director of the Medicare and Medicaid Drug Pricing Unit (2005- Present); Program Analyst (1995 - 2005) | THE WITNESS: I don't remember any specific conversations about EAC. The conversations would have been just that Medicare is required to pay 95 percent of AWP.<br><br>BY MR. TORBORG: And your understanding of that [AWP] relates to what was published in Red Book or other price listings, right?<br><br>MR. NEAL: Objection as to form. You can answer.<br><br>THE WITNESS: Yes. |

| Deponent | Position | Testimony |
|---|---|---|
| | | D. Tawes 4/24/07 Dep. Tr. at 141-142 |
| | | BY MR. TORBORG: . . . Did you believe that the term "average wholesale price" was commonly understood in the industry? |
| | | MR. NEAL:  Objection as to form. |
| | | THE WITNESS:  Yes. |
| | | BY MR. TORBORG:  And how was it commonly understood in the industry? |
| | | MR. NEAL:  The same objection. |
| | | THE WITNESS:  I'm not sure that I knew the exact definition that the industry would use.  However, I believe that the industry obviously knew that AWPs were not based on -- on wholesale prices; that it was simply a -- a price for their products that they wanted to list in compendia. |
| | | BY MR. TORBORG:  So it was your understanding that it was commonly understood in the industry that the term "average wholesale price" referred to prices published in pricing compendia such as Red Book or Blue Book? |
| | | MR. NEAL:  Objection as to form. |
| | | THE WITNESS:  Yes. |
| | | D. Tawes 4/25/07 Dep. Tr. at 481-82. |
| Molyneaux, Nancy | Office of the Inspector General, Program Analyst (1987-Present) | Q.    What did you mean when you used the word average wholesale price in that sentence? |
| | | A.    That's just the published wholesale price, average wholesale price. |

- 4 -

| Deponent | Position | Testimony |
|----------|----------|-----------|
| | | Q.   And published in publications such as Red Book? |
| | | A.   Yes. |
| | | Q.   When you use the term average wholesale price in your work at OIG, did it mean to refer to the price published? |
| | | A.   As far as I recall. |
| | | N. Molyneaux Dep. Tr. at 158-59. |
| Semyak, Amy | Office of the Inspector General, Program Analyst (1995-Present) | BY MR. TORBORG:  Is the language of this -- |
| | | A.   That sentence? |
| | | Q.   That sentence consistent with your understanding that the term average wholesale price referred to prices published in books like Red Book? |
| | | MR. NEAL:  Same objection. |
| | | MR. WINGET-HERNANDEZ:  Objection to form. |
| | | THE WITNESS:  Yeah, I mean, it says in parentheses, average wholesale price as published in Red Book and similar price listings. |
| | | BY MR. TORBORG:  Do you recall there being any discussion during your time at OIG about what the term average wholesale price meant? |
| | | A.   No, I mean, just that it is average wholesale price. |
| | | Q.   As published in Red Book and other price listings? |
| | | A.   Right. |

| Deponent | Position | Testimony |
|---|---|---|
| | | Q.   No dispute about that at all? |
| | | MR. WINGET-HERNANDEZ: Objection. |
| | | MS. POLLACK: Objection. |
| | | BY MR. TORBORG:  That you are aware of? |
| | | MR. NEAL:  Objection as to form. You can answer. |
| | | THE WITNESS:  No. |
| | | BY MR. TORBORG:  Have you ever heard anyone suggest that the term average wholesale price meant something other than prices published in Red Book or other price listings? |
| | | MR. NEAL:  Objection as to form. You can answer. |
| | | THE WITNESS:  Meant something other than that, no. |
| | | A. Sernyak Dep. Tr. at 121-123 |
| Vito, Robert | Office of the Inspector General, Regional Inspector General (1995- Present), Deputy Regional Inspector General (1990-1995), Office of Audit Services (1978-1990) | Q.   . . . When you used the term "average wholesale price" in your work at OIG, did you equate it with the prices that were published in Red Book and other price listings? |
| | | MR. AZORSKY: Objection to form -- |
| | | MR. NEAL:  Objection as to form; asked and answered. |
| | | THE WITNESS: I -- I -- I -- I have said that AWP is what the Medicare program based its reimbursement on and they were in the Blue -- Blue Book and Red Book. |
| | | Q.   Can you answer my question, yes or no? |
| | | MR. AZORSKY: Objection to -- |

| Deponent | Position | Testimony |
|---|---|---|
| | | BY MR. TORBORG:  And just tell me if you can't.  If you can't, that's fine – |
| | | MR. AZORSKY: Objection to form. |
| | | MR. NEAL: Same objection. |
| | | THE WITNESS: I'd like to hear the question one more time. |
| | | BY MR. TORBORG:  When you use the term "average wholesale price" or "AWP" in your work at OIG, did you equate it with what was published in Red Book and similar price listings? |
| | | MR. AZORSKY: Objection to form. |
| | | MR. NEAL: Objection as to form. |
| | | MR. WINGET-HERNANDEZ: Objection. |
| | | THE WITNESS: I -- I -- I -- I -- I guess the answer's yes. |
| | | Vito Dep. at 145-47. |

Vladeck, Ph.D., Bruce C.                    May 4, 2007
                    New York, NY

                    UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------X  MDL NO. 1456

IN RE:  PHARMACEUTICAL INDUSTRY      :  CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION :  01-CV-12257-PBS

-----------------------------------X

THIS DOCUMENT RELATES TO:            :

U.S. ex rel. Ven-A-Care of the       :  CIVIL ACTION:

Florida Keys, Inc. v. Abbott         :  06-CV-11337-PBS

Laboratories, Inc.                   :

-----------------------------------X


                    IN THE CIRCUIT COURT OF

                 MONTGOMERY COUNTY, ALABAMA

-----------------------------------X

STATE OF ALABAMA,                    :  CASE NO.

          Plaintiff,                 :  CV-05-219

     v.                              :

ABBOTT LABORATORIES, INC.,           :  JUDGE

et al.,                              :  CHARLES PRICE

          Defendants.                :

-----------------------------------X

Henderson Legal Services
202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9

Vladeck, Ph.D., Bruce C.                    May 4, 2007
              New York, NY

---

Page 2

1  STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
2  --------------------------------X
3  STATE OF WISCONSIN,          : CASE NO.
4       Plaintiff,         : 04-CV-1709
5    v.                :
6  AMGEN INC., et al.,          :
7       Defendants.        :
8  --------------------------------X
9
10      IN THE COURT OF COMMON PLEAS
11        FIFTH JUDICIAL CIRCUIT
12  --------------------------------X
13  STATE OF SOUTH CAROLINA, and    : STATE OF
14  HENRY D. McMASTER, in his official : SOUTH CAROLINA
15  capacity as Attorney General for  : COUNTY OF
16  the State of South Carolina,     : RICHLAND
17       Plaintiff,       :
18    v.         : CIVIL ACTION:
19  MYLAN LABORATORIES, INC.    : 07-CP-40-0283
20       Defendant.        :
21  --------------------------------X
22

---

Page 3

1    IN THE COURT OF THE SECOND JUDICIAL CIRCUIT
2      IN AND FOR LEON COUNTY, FLORIDA
3  THE STATE OF FLORIDA
4  ex rel.
5  - - - - - - - - - - - - - - -x
6  VEN-A-CARE OF THE FLORIDA       :
7  KEYS, INC., a Florida        :
8  Corporation, by and through its  :
9  principal officers and directors, :
10  ZACHARY T. BENTLEY and       :
11  T. MARK JONES,         :
12       Plaintiffs,      :
13       vs.         : Civil Action
14  MYLAN LABORATORIES, INC.; MYLAN  : No.: 98-3032G
15  PHARMACEUTICALS INC.; NOVOPHARM  : Judge:
16  LTD., SCHEIN PHARMACEUTICAL, INC.; : William L.
17  TEVA PHARMACEUTICAL INDUSTRIES  : Gary
18  LTD., TEVA PHARMACEUTICAL USA;   :
19  and WATSON PHARMACEUTICALS, INC. :
20       Defendants.       :
21  - - - - - - - - - - - - - - -x
22

---

Page 4

1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
2          STATE OF MISSOURI
3  - - - - - - - - - - - - - - -x
4  STATE OF MISSOURI, ex rel.,    :
5  JEREMIAH W. (JAY) NIXON,      :
6  Attorney General,       :
7  and          :
8  MISSOURI DEPARTMENT OF SOCIAL    :
9  SERVICES, DIVISION OF MEDICAL    : Case No.:
10  SERVICES,         : 054-1216
11       Plaintiffs,    : Division
12          : No. 31
13       vs.         :
14  DEY INC., DEY, L.P., MERCK KGaA,  :
15  EMD, INC., WARRICK        :
16  PHARMACEUTICALS CORPORATION,    :
17  SCHERING-PLOUGH CORPORATION, and  :
18  SCHERING CORPORATION,       :
19       Defendants.      :
20  - - - - - - - - - - - - - - -x
21
22

---

Page 5

1          New York, New York
2          Friday, May 4, 2007
3
4
5      Videotaped Deposition of BRUCE C.
6  VLADECK, Ph.D., a witness herein, called for
7  examination by counsel for Abbott Laboratories in
8  the above-entitled matter, pursuant to Subpoena,
9  the witness being duly sworn by JOMANNA DEROSA, a
10  Notary Public in and for New York, taken at the
11  offices of Jones Day, 222 East 41st Street, New
12  York, New York, at 8:38 a.m. on Friday, May 4,
13  2007, and the proceedings being taken down by
14  Stenotype by JOMANNA DEROSA, and transcribed under
15  her direction.
16
17
18
19
20
21
22

---

Henderson Legal Services
        202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9

Vladeck, Ph.D., Bruce C.                        May 4, 2007
                     New York, NY

Page 112

1   the methodology for paying for Part B drugs that

2   was in place from after the implementing

3   regulations for over 90 were adopted until the

4   regulations implementing the relevant provisions

5   of the Balanced Budget Act were adopted in 1998.

6        Q.   And so, for the entire time that you

7   were administrator of HCFA, from May of 1993

8   until September of 1997, this regulation would

9   have described how Medicare Part B reimbursed

10  providers for certain drugs that were

11  reimbursable under Medicare Part B. Correct?

12       A.   That's -- that's my --

13            MS. BROOKER:  Objection.  Form.  Sorry.

14  Go ahead.

15            THE WITNESS:  Sorry.

16       A.   That -- that's my understanding, yes.

17       Q.   If you could look to Part B of -- of

18  this particular regulation, 405.517, it reads

19  that:

20            "Payment for a drug described in

21  Paragraph A should be based on the lower of two

22  measurements."

Henderson Legal Services
202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9

Vladeck, Ph.D., Bruce C.                    May 4, 2007
                        New York, NY

Page 113

1          Correct?

2     A.    That's correct.

3          MS. BROOKER:  Objection.  Form.

4     Q.    Could you tell me what are the two

5  measurements that this regulation provided for as

6  the alternatives for paying for Part B drugs?

7          MS. BROOKER:  Objection.  Form.

8     A.    The alternatives were either actual

9  acquisition cost or average wholesale price.

10     Q.    The phrase here "national average

11  wholesale price of the drug," do you see that?

12     A.    Yes, sir.

13     Q.    Is it your understanding that during

14  the approximately four years, or just over four

15  years that you were administrator of HCFA, that

16  to the extent that Medicare Part B paid for drugs

17  based upon the average wholesale price of the

18  drugs, that they did so based upon published

19  average wholesale prices?

20     A.    Yes, that was my understanding.

21     Q.    And just some -- some basics of -- of -

22  - of how this regulation works.  To whom is this

Henderson Legal Services
202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9

Vladeck, Ph.D., Bruce C.                         May 4, 2007
                    New York, NY

Page 152

1    customer?

2              MS. BROOKER:  Objection.  Form.

3              MR. BREEN:  Objection.  Form.

4        A.    Again, I would have expected there were

5    some customers who, in fact, paid the average

6    wholesale price, but I didn't not believe that it

7    was an accurate reflection of the average revenue

8    received by the manufacturer for -- or the

9    wholesaler for a particular product.

10       Q.    I guess to put it another way, you

11   understood, between 1993 and 1997, that AWP did

12   not represent the average acquisition cost for a

13   pharmaceutical?

14       A.    That's correct.  We --

15             MS. BROOKER:  Objection.  Form.

16             MR. BREEN:  Form.

17       A.    -- we distinguished acquisition cost

18   from average wholesale price, and believed that,

19   in general, it was likely to be lower.

20       Q.    I would like to get back a bit to the -

21   - we were talking a bit about the relationship

22   between published average wholesale prices and

a005168d-477f-4afb-97fe-d27a3af7b9a9

Vladeck, Ph.D., Bruce C.                          May 4, 2007
                        New York, NY

1  make it through the House legislative process.

2  Whether at the committee level or at the full

3  House level I don't recall.

4       Q.   And that would be for the proposed 1998

5  budget?

6       A.   That would be in the Balanced Budget

7  Act which addressed the Fiscal 1998 budget.

8       Q.   And that would be the legislation that

9  legislated that Medicare Part B reimbursement

10 would be at 95 percent of AWP.  Correct?

11      A.   I don't recall what our original

12 proposal was, and I don't recall the details of

13 the legislative process.  I think it came out the

14 other end at 95 percent.

15      Q.   Right.  The ultimate legislation.

16      A.   The ultimate legislation called for 95

17 percent of AWP, yes.

18      Q.   And the AWP in that legislation, did

19 you understand that in the same way you

20 understood AWP in the regulation from 1992?

21      A.   Yes.

22           MS. BROOKER:  Objection.  Form.

Henderson Legal Services
202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9

Vladeck, Ph.D., Bruce C.                    May 4, 2007
                     New York, NY

Page 279

1      Q.   And so that would refer to a published

2   average wholesale price.  Correct?

3      A.   That was our understanding of it, yes.

4      Q.   And the next cc is Teruni, T-E-R-U-N-I,

5   Rosengren, R-O-S-E-N-G-R-E-N, with the GAO.  Do

6   you know who Mr. or Ms. Rosengren is?

7      A.   No, I do not.

8      Q.   There is Michael Hertz, United States

9   Department of Justice.  Do you know who Mr. Hertz

10  is?

11     A.   Mr. Hertz was a senior person in the

12  civil litigation side of the Department of

13  Justice, from my understanding.  I, in fact, had

14  met Mr. Hertz and worked with him on an other

15  number of occasions.

16     Q.   And the next are Mr. Breen and Mr.

17  Wampler from the Wampler, Buchanan and Breen

18  firm, Mr. Breen here in the flesh, and Mr.

19  Wampler.  Do you -- and at the time did you know

20  who Mr. Wampler and Mr. Breen were?

21     A.   No.  I had not had the pleasure.

22     Q.   Okay.  I'd like to show you one last

Henderson Legal Services
202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9

Booth, Charles R.                               April 23, 2007
                    Washington, DC

```
                                                      Page 1

                UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF MASSACHUSETTS

        - - - - - - - - - - - - - - -x

IN RE:  PHARMACEUTICAL        :  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE    :  CIVIL ACTION:

PRICE LITIGATION              :  01-CV-12257-PBS

THIS DOCUMENT RELATES TO      :

U.S. ex rel. Ven-a-Care of    :  Judge Patti B. Saris

the Florida Keys, Inc. v.     :

Abbott Laboratories, Inc.,    :  Chief Magistrate

No. 06-CV-11337-PBS           :  Judge Marianne B.

- - - - - - - - - - - - - -x    Bowler

              IN THE CIRCUIT COURT OF

              MONTGOMERY COUNTY, ALABAMA

        - - - - - - - - - - - - - - -x

STATE OF ALABAMA,             :

              Plaintiff,      :

              vs.             :  Case No.: CV-05-219

ABBOTT LABORATORIES, INC.,    :  Judge Charles Price

et al.,                       :

              Defendants. :

        - - - - - - - - - - - - - - -x
```

Henderson Legal Services
202-220-4158

bd14de97-b1b2-417d-8ba1-2a1c3fba062a

Booth, Charles R.
Washington, DC

April 23, 2007

---

**Page 2**

1   IN THE COURT OF THE SECOND JUDICIAL CIRCUIT
2         IN AND FOR LEON COUNTY, FLORIDA
3
4   THE STATE OF FLORIDA
5   ex rel.
6   - - - - - - - - - - - - - - - - - x
7   VEN-A-CARE OF THE FLORIDA        :
8   KEYS, INC., a Florida            :
9   Corporation, by and through its  :
10  principal officers and directors, :
11  ZACHARY T. BENTLEY and           :
12  T. MARK JONES,                   :
13         Plaintiffs,               :
14      vs.          : Civil Action
15  MYLAN LABORATORIES INC.; MYLAN   : No.: 98-3032G
16  PHARMACEUTICALS INC.; NOVOPHARM  : Judge: William
17  LTD., SCHEIN PHARMACEUTICAL, INC.,:   L. Gary
18  TEVA PHARMACEUTICAL INDUSTRIES   :
19  LTD., TEVA PHARMACEUTICAL USA;   :
20  and WATSON PHARMACEUTICALS, INC., :
21         Defendants.              :
22  - - - - - - - - - - - - - - - - - x

---

**Page 3**

1   IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
2            STATE OF MISSOURI
3
4   - - - - - - - - - - - - - - - x
5   STATE OF MISSOURI, ex rel.,      :
6   JEREMIAH W. (JAY) NIXON,         :
7   Attorney General,               :
8   and                   :
9   MISSOURI DEPARTMENT OF SOCIAL    :
10  SERVICES, DIVISION OF MEDICAL    : Case No.:
11  SERVICES,              : 054-1216
12         Plaintiffs,    : Division No. 31
13      vs.          :
14  DEY INC., DEY, L.P., MERCK KGaA, :
15  EMD, INC., WARRICK              :
16  PHARMACEUTICALS CORPORATION,     :
17  SCHERING-PLOUGH CORPORATION, and :
18  SCHERING CORPORATION,            :
19         Defendants.    :
20  - - - - - - - - - - - - - - - x
21
22

---

**Page 4**

1                  Washington, D.C.
2                Monday, April 23, 2007
3
4        Videotaped Deposition of CHARLES R. BOOTH,
5   a witness herein, called for examination by counsel
6   for Abbott Laboratories in the above-entitled
7   matter, pursuant to notice, the witness being duly
8   sworn by KAREN YOUNG, a Notary Public in and for the
9   District of Columbia, taken at the offices of Jones
10  Day, 51 Louisiana Avenue, Northwest, Washington,
11  D.C., at 9:41 a.m. on Monday, April 23, 2007, and
12  the proceedings being taken down by Stenotype by
13  KAREN YOUNG, and transcribed under her direction.
14
15
16
17
18
19
20
21
22

---

**Page 5**

1   APPEARANCES:
2      On Behalf of the United States of America:
3
4        GEJAA T. GOBENA, ESQ.
5        LAURIE A. OBEREMBT, ESQ.
6        U.S. Department of Justice
7        Civil Division
8        601 D Street, Northwest
9        PHB - 9028/P.O. Box 261
10       Washington, D.C. 20044
11       Gejaa.Gobena@usdoj.gov
12       (202) 307-1088
13        (by telephone)
14
15       ANA MARIA MARTINEZ, ESQ.
16       Assistant United States Attorney
17       Southern District of Florida
18       99 N.E. Fourth Street
19       Miami, Florida 33132
20       Ana.Maria.Martinez@usdoj.gov
21       (305) 961-9431
22

---

2 (Pages 2 to 5)

bd14de97-b1b2-417d-8ba1-2a1c3fba062a

Booth, Charles R.                                    April 23, 2007
                        Washington, DC

Page 103

1    with respect to hospitals, between, again, 1984 and

2    1997.

3        Q.    If you could turn please to the executive

4    summary of this particular Office of Inspector

5    General report, just so the record's clear, the

6    report at least purports to state a purpose as

7    follows:  To compare Medicare allowances for

8    prescription drugs and drug acquisition prices

9    currently available to the physician and supplier

10   communities.  Do you see that?

11       A.    Yes.

12       Q.    The third paragraph down that begins, "On

13   January 1, 1998" --

14       A.    Yes.

15       Q.    The sixth line down, the sentence begins,

16   "The AWP"?

17       A.    Okay.

18       Q.    It says, "The AWP is reported in the Red

19   Book and other pricing publications and databases

20   used by the pharmaceutical industry."  Is that

21   consistent with your understanding of what AWP was

22   in -- prior to December 1997?

bd14de97-b1b2-417d-8ba1-2a1c3fba062a

Booth, Charles R.
Washington, DC
April 23, 2007

1      MR. GOBENA:  Object to the form, asked and
2  answered.
3      A.    It was my understanding in 1996 and 1997.
4      Q.    And the next sentence states,
5  "Historically, it has been the AWP that carriers
6  have used to develop Medicare reimbursement for
7  prescription drugs."  Was it your understanding in
8  1997 that historically, carriers had used the AWP
9  published in the Red Book and other pricing
10  publications and databases to develop Medicare
11  reimbursement for prescription drugs?
12      A.    Well, I would quibble with "historically,"
13  because I believe that was only from 1992 on.
14      Q.    Prior to 1992, do you know what it is that
15  carriers used to calculate Medicare reimbursement
16  for prescription drugs?
17      A.    They were supposed to use reasonable
18  charge.
19      Q.    If you turn the page to page Roman numeral
20  small 2 in bold, in the first -- sorry, the second
21  finding of this particular report reads, "For more
22  than one-third of the 22 drugs reviewed, Medicare

Henderson Legal Services
202-220-4158

bd14de97-b1b2-417d-8ba1-2a1c3fba062a

Ragone, Linda - Vol. II                    April 18, 2007
                    Philadelphia, PA

                    UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF MASSACHUSETTS

                        VOLUME II

-----------------------------------X  MDL NO. 1456

IN RE:  PHARMACEUTICAL INDUSTRY    :  CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION :  01-CV-12257-PBS

-----------------------------------X

THIS DOCUMENT RELATES TO:          :

U.S. ex rel. Ven-A-Care of the     :  CIVIL ACTION:

Florida Keys, Inc. v. Abbott       :  06-CV-11337-PBS

Laboratories, Inc.                 :

-----------------------------------X

                    IN THE CIRCUIT COURT OF

                MONTGOMERY COUNTY, ALABAMA

-----------------------------------X

STATE OF ALABAMA,                  :  CASE NO.

            Plaintiff,             :  CV-05-219

        v.                         :

ABBOTT LABORATORIES, INC.,         :  JUDGE

et al.,                            :  CHARLES PRICE

            Defendants.            :

-----------------------------------X

                Henderson Legal Services
                    202-220-4158

cca9fdc6-9c6f-42ee-a6a6-cbbe658fa4b8

Ragone, Linda - Vol. II                    April 18, 2007
                    Philadelphia, PA

Page 413

```
 1          UNITED STATES DISTRICT COURT
 2            DISTRICT OF MASSACHUSETTS
 3    -------------------------------X
 4    THE COMMONWEALTH OF MASSACHUSETTS : CIVIL ACTION NO.
 5        Plaintiff,         : 03-CV-11865-PBS
 6        v.                 :
 7    MYLAN LABORATORIES, INC., et al. :
 8        Defendants.        :
 9    -------------------------------X
10    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
11            STATE OF MISSOURI
12    -------------------------------X
13    STATE OF MISSOURI, ex rel.    : CASE NO.
14    JEREMIAH W. (JAY) NIXON, Attorney : 054-1216
15    General, and MISSOURI DEPT. OF   : DIVISION
16    SOCIAL SVCS, DIV. OF MEDICAL SVCS.: NO. 31
17        Plaintiffs,        :
18        v.                 :
19    DEY INC., et al.        :
20        Defendants.        :
21    -------------------------------X.
22
```

Page 414

```
 1        SUPERIOR COURT OF NEW JERSEY
 2              UNION COUNTY
 3    -------------------------------X
 4    CLIFFSIDE NURSING HOME, INC., on : LAW DIVISION
 5    behalf of itself and all others  : DOCKET NO.
 6    similarly situated, as defined   : UNN-L-2329-04
 7    herein,                          :
 8        Plaintiffs,        :
 9        v.                 :
10    DEY, INC., et al.       :
11        Defendants.        :
12    -------------------------------X
13
14    STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
15    -------------------------------X
16    STATE OF WISCONSIN,       : CASE NO.
17        Plaintiff,         : 04-CV-1709
18        v.                 :
19    AMGEN INC., et al.,     :
20        Defendants.        :
21    -------------------------------X
22
```

Page 415

```
 1        IN THE COURT OF COMMON PLEAS
 2            FIFTH JUDICIAL CIRCUIT
 3    -------------------------------X
 4    STATE OF SOUTH CAROLINA, and    : STATE OF
 5    HENRY D. McMASTER, in his official : SOUTH CAROLINA
 6    capacity as Attorney General for   : COUNTY OF
 7    the State of South Carolina,     : RICHLAND
 8        Plaintiff,         :
 9        v.                 : CIVIL ACTION NO.
10    WARRICK PHARMACEUTICALS       : 2006-CP-40-4390
11    CORPORATION, et al.         : 2006-CP-40-4399
12        Defendants.        :
13    -------------------------------X
14    STATE OF SOUTH CAROLINA, and    : STATE OF
15    HENRY D. McMASTER, in his official : SOUTH CAROLINA
16    capacity as Attorney General for   : COUNTY OF
17    the State of South Carolina,     : RICHLAND
18        Plaintiff,         :
19        v.                 : CASE NO.
20    ABBOTT LABORATORIES, INC.       : 2006-CP-40-4394
21        Defendant.         :
22    -------------------------------X
```

Page 416

```
 1    IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
 2                STATE OF HAWAII
 3    -------------------------------X
 4    STATE OF HAWAII,          : CASE NO.
 5        Plaintiff,         : 06-1-0720-04 EEH
 6        v.                 :
 7    ABBOTT LABORATORIES, INC., et al. : JUDGE EDEN
 8        Defendants.        : ELIZABETH HIFO
 9    -------------------------------X
10
11    IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
12        IN AND FOR THE COUNTY OF MARICOPA
13    -------------------------------X
14    ROBERT J. SWANSTON, individually : CIVIL ACTION NO.
15    and on behalf of himself and all  : CV 2002-004988
16    others similarly situated,       :
17        Plaintiff,         :
18        v.                 :
19    TAP PHARMACEUTICAL PRODUCTS, INC., :
20    et al.,                 :
21        Defendants.        :
22    -------------------------------X
```

2 (Pages 413 to 416)

cca9fdc6-9c6f-42ee-a6a6-cbbe658fa4b8

Ragone, Linda - Vol. II                April 18, 2007
                   Philadelphia, PA

Page 417

```
1        COMMONWEALTH OF KENTUCKY
2        FRANKLIN CIRCUIT COURT - DIV. II
3    --------------------------X
4   COMMONWEALTH OF KENTUCKY,      : CIVIL ACTION NO.
5       Plaintiff,        : 03-CI-1134
6       v.                :
7   ABBOTT LABORATORIES, INC., et al. :
8       Defendants.       :
9   --------------------------X
10
11      COMMONWEALTH OF KENTUCKY
12      FRANKLIN CIRCUIT COURT - DIV. I
13  --------------------------X
14  COMMONWEALTH OF KENTUCKY, ex rel. : CIVIL ACTION NO.
15  GREGORY D. STUMBO, Attorney General: 03-CI-1487
16      Plaintiff,        :
17      v.                :
18  ALPHAPHARMA, INC., et al.   :
19      Defendants.       :
20          - - -
21      Continuation of the videotaped
22  deposition of LINDA RAGONE was taken, pursuant
```

Page 418

```
1   to notice, at MORGAN LEWIS & BOCKIUS, LLP,
2   1701 Market Street, Philadelphia,
3   Pennsylvania, on Wednesday, April 18, 2007,
4   beginning at 9:04 a.m., before M. Kathleen
5   Muino, Professional Shorthand Reporter, Notary
6   Public; Richard Kanzinger, Jr., Videographer,
7   there being present:
```

Page 419

```
1   APPEARANCES:
2
3       UNITED STATES DEPARTMENT OF JUSTICE
4       CIVIL DIVISION
5       BY: JOHN K. NEAL, ESQUIRE
6       601 D Street, N.W.
7       Washington, D.C. 20004
8       Phone: (202) 307-0405
9       John.Neal2@usdoj.gov
10         Representing the United States
11
12      U.S. DEPARTMENT OF JUSTICE
13      CIVIL DIVISION
14      BY: JUSTIN DRAYCOTT, ESQUIRE
15      P.O. Box 261
16      Ben Franklin Station
17      Washington, D.C. 20044
18      Phone: (202) 305-9300
19      justin.draycott@usdoj.gov
20         Representing the United States
21
22  APPEARANCES: (CONTINUED)
```

Page 420

```
1   APPEARANCES: (CONTINUED)
2   U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES
3   Office of Counsel to the Inspector General
4   Administrative and Civil Remedies Branch
5   BY: NANCY W. BROWN, ESQUIRE
6   Room 5527, Cohen Building
7   330 Independence Avenue, S.W.
8   Washington, D.C. 20201
9   Phone: (202) 205-9430
10  Nancy.Brown@oig.hhs.gov
11     Representing the United States
12
13  BERGER & MONTAGUE, P.C.
14  BY: ROSLYN G. POLLACK, ESQUIRE
15  1622 Locust Street
16  Philadelphia, Pennsylvania 19103-6305
17  Phone: (215) 875-3000
18  rpollack@bm.net
19     Representing Ven-A-Care
20
21
22  APPEARANCES: (CONTINUED)
```

3 (Pages 417 to 420)

Henderson Legal Services
202-220-4158

cca9fdc6-9c6f-42ee-a6a6-cbbe658fa4b8

Ragone, Linda - Vol. II                    April 18, 2007
                    Philadelphia, PA

Page 551

1  her feel worse.

2       Q.    In the first line:  I guess you guys

3  already know the sad truth.  Right?

4       A.    Yes, that's what she wrote.

5       Q.    Were you disappointed that Congress

6  reimbursed [sic] Medicare reimbursement by only 5

7  percent?

8            MR. DRAYCOTT:  Objection.

9            THE WITNESS:  I remember being happy that

10  something had happened, and in our position, it --

11  that doesn't always happen. So I remember being

12  happy that some change had been made.  I'm not sure

13  that -- I think I probably felt at the time that

14  linking it to AWP may not be a good idea either.

15  But I think it -- I believe -- I thought -- I

16  remember being happy that something had happened.

17  BY MR. COOK:

18       Q.    And when you heard -- did you review --

19  by the way, did you review the statute; did you

20  read the statute when it came out?

21       A.    I believe I did when it came out.

22       Q.    Okay.  Did you understand Congress to be

Ragone, Linda - Vol. II                              April 18, 2007
                        Philadelphia, PA

Page 552

1    directing HCFA to pay 95 percent of the published

2    AWP?

3                    MR. DRAYCOTT:  Objection.

4                    THE WITNESS:  I believe when I read that

5    that -- well, I don't -- I don't have it in front

6    of me, so I believe that it was supposed to be 95

7    percent of average wholesale price.

8    BY MR. COOK:

9        Q.    And you understood that to be what is

10   published in Red Book, Blue Book, Medispan, right?

11       A.    That's what I took it to mean.

12       Q.    Do you recall having any conversations

13   with Mary Beth Clarke or Robert Vito about the

14   legislation?

15       A.    I don't remember them.

16       Q.    If you could go back very quickly to, I

17   don't have the exhibit number, I apologize, the

18   very, very large document.

19       A.    The big pile, yeah.

20       Q.    That's Exhibit Abbott 089.  Do you

21   recall whether you passed on that underlying

22   information to anybody at HCFA?

cca9fdc6-9c6f-42ee-a6a6-cbbe658fa4b8

Tawes, David - Vol. I                    April 24, 2007
                    Philadelphia, PA

                UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------X  MDL NO. 1456

IN RE:  PHARMACEUTICAL INDUSTRY     :  CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION :  01-CV-12257-PBS

---------------------------------X

THIS DOCUMENT RELATES TO:           :

U.S. ex rel. Ven-A-Care of the      :  CIVIL ACTION:

Florida Keys, Inc. v. Abbott        :  06-CV-11337-PBS

Laboratories, Inc.                  :

---------------------------------X


                IN THE CIRCUIT COURT OF

            MONTGOMERY COUNTY, ALABAMA

---------------------------------X

STATE OF ALABAMA,                   :  CASE NO.

          Plaintiff,                :  CV-05-219

      v.                            :

ABBOTT LABORATORIES, INC.,          :  JUDGE

et al.,                             :  CHARLES PRICE

          Defendants.               :

---------------------------------X

bcab4204-38f1-4b48-ab34-7037316b0f5a

Tawes, David - Vol. I                    April 24, 2007
                 Philadelphia, PA

| | |
|---|---|
| **Page 2** | **Page 4** |

**Page 2**

1   UNITED STATES DISTRICT COURT
2   DISTRICT OF MASSACHUSETTS
3   ------------------------------X
4   THE COMMONWEALTH OF MASSACHUSETTS : CIVIL ACTION NO
5        Plaintiff,        : 03-CV-11865-PBS
6        v.                :
7   MYLAN LABORATORIES, INC., et al. :
8        Defendants.       :
9   ------------------------------X
10
11       SUPERIOR COURT OF NEW JERSEY
12            UNION COUNTY
13   ------------------------------X
14   CLIFFSIDE NURSING HOME, INC., on : LAW DIVISION
15   behalf of itself and all others : DOCKET NO.
16   similarly situated, as defined   : UNN-L-2329-04
17   herein,              :
18        Plaintiffs,     :
19        v.              :
20   DEY, INC., et al.    :
21        Defendants.     :
22   ------------------------------X

**Page 3**

1   STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
2   ------------------------------X
3   STATE OF WISCONSIN,    : CASE NO.
4        Plaintiff,        : 04-CV-1709
5        v.                :
6   AMGEN INC., et al.,    :
7        Defendants.       :
8   ------------------------------X
9
10      IN THE COURT OF COMMON PLEAS
11        FIFTH JUDICIAL CIRCUIT
12   ------------------------------X
13   STATE OF SOUTH CAROLINA, and   : STATE OF
14   HENRY D. McMASTER, in his official : SOUTH CAROLINA
15   capacity as Attorney General for : COUNTY OF
16   the State of South Carolina,   : RICHLAND
17        Plaintiff,       :
18        v.               : CASE NO.
19   ABBOTT LABORATORIES, INC.  : 2006-CP-40-4394
20        Defendant.       :
21   ------------------------------X
22

**Page 4**

1   IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
2            STATE OF HAWAII
3   ------------------------------X
4   STATE OF HAWAII,       : CASE NO.
5        Plaintiff,        : 06-1-0720-04 EEH
6        v.                :
7   ABBOTT LABORATORIES, INC., et al. : JUDGE EDEN
8        Defendants.       : ELIZABETH HIFO
9   ------------------------------X
10
11       COMMONWEALTH OF KENTUCKY
12   FRANKLIN CIRCUIT COURT - DIV. II
13   ------------------------------X
14   COMMONWEALTH OF KENTUCKY,    : CIVIL ACTION NO.
15        Plaintiff,        : 03-CI-1134
16        v.                :
17   ABBOTT LABORATORIES, INC., et al. :
18        Defendants.       :
19   ------------------------------X
20
21
22

**Page 5**

1       COMMONWEALTH OF KENTUCKY
2   FRANKLIN CIRCUIT COURT - DIV. I
3   ------------------------------X
4   COMMONWEALTH OF KENTUCKY, ex rel. : CIVIL ACTION NO
5   GREGORY D. STUMBO, Attorney General: 03-CI-1487
6        Plaintiff,        :
7        v.                :
8   ALPHAPHARMA, INC., et al.  :
9        Defendants.       :
10   ------------------------------X
11            - - -
12       Videotaped deposition of DAVID
13   TAWES was taken, pursuant to notice, at MORGAN
14   LEWIS & BOCKIUS, LLP, 1701 Market Street,
15   Philadelphia, Pennsylvania, on Tuesday, April
16   24, 2007, beginning at 8:45 a.m., before M.
17   Kathleen Muino, Professional Shorthand
18   Reporter, Notary Public; Richard Kanzinger,
19   Jr., Videographer, there being present:
20
21
22

2 (Pages 2 to 5)

Henderson Legal Services
202-220-4158

bcab4204-38f1-4b48-ab34-7037316b0f5a

Tawes, David - Vol. I                          April 24, 2007
                    Philadelphia, PA

Page 141

1              You can answer.

2              THE WITNESS:  That however, whether it's

3    a state or Medicare, choose to calculate -- or

4    choose to estimate what providers are paying for

5    drugs.

6    BY MR. TORBORG:

7         Q.   Do you recall any discussions at OIG

8    about the fact that after the Balanced Budget Act

9    of 1997, Medicare Part B was required to pay AWP

10   and could no longer use EAC?

11             MR. WINGET-HERNANDEZ:  Objection to form.

12             MR. NEAL:  Object to the form.

13             You can answer.

14             THE WITNESS:  I don't remember any

15   specific conversations about EAC.  The

16   conversations would have been just that Medicare is

17   required to pay 95 percent of AWP.

18   BY MR. TORBORG:

19        Q.   And your understanding of that relates

20   to what was published in Red Book or other price

21   listings, right?

22             MR. NEAL:  Objection as to form.

bcab4204-38f1-4b48-ab34-7037316b0f5a

Tawes, David - Vol. I                          April 24, 2007
                     Philadelphia, PA

                                                     Page 142

1              You can answer.

2              THE WITNESS:  Yes.

3     BY MR. TORBORG:

4         Q.   Are you familiar with any law, statute,

5     regulation that requires manufacturers to cause

6     AWPs to be reported for their products in any --

7     any particular way?

8              MR. NEAL:  Objection as to form.

9              MS. POLLACK:  Object to form.

10             MR. NEAL:  It calls for a legal

11    conclusion.

12             You can answer.

13             THE WITNESS:  No.

14    BY MR. TORBORG:

15        Q.   Have you ever had discussions about the

16    fact that there is no law or regulation governing

17    how AWPs should be reported?

18             MR. NEAL:  The same objection.

19             MR. WINGET-HERNANDEZ:  Objection.

20             THE WITNESS:  Yes.

21    BY MR. TORBORG:

22        Q.   What do you recall about those

bcab4204-38f1-4b48-ab34-7037316b0f5a

Tawes, David - Vol. II                          April 25, 2007
                        Philadelphia, PA

                                                          Page 296

              UNITED STATES DISTRICT COURT

          FOR THE DISTRICT OF MASSACHUSETTS

                  VOLUME II

---------------------------------X  MDL NO. 1456

IN RE:  PHARMACEUTICAL INDUSTRY     :  CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION  :  01-CV-12257-PBS

---------------------------------X

THIS DOCUMENT RELATES TO:           :

U.S. ex rel. Ven-A-Care of the      :  CIVIL ACTION:

Florida Keys, Inc. v. Abbott        :  06-CV-11337-PBS

Laboratories, Inc.                  :

---------------------------------X

            IN THE CIRCUIT COURT OF

         MONTGOMERY COUNTY, ALABAMA

---------------------------------X

STATE OF ALABAMA,                   :  CASE NO.

        Plaintiff,                  :  CV-05-219

    v.                              :

ABBOTT LABORATORIES, INC.,          :  JUDGE

et al.,                             :  CHARLES PRICE

        Defendants.                 :

---------------------------------X

                Henderson Legal Services
                    202-220-4158

58feec2f-99ac-42be-8c4e-803a680a2c55

Tawes, David - Vol. II                    April 25, 2007
                Philadelphia, PA

Page 297

1       UNITED STATES DISTRICT COURT
2         DISTRICT OF MASSACHUSETTS
3    ----------------------------------X
4    THE COMMONWEALTH OF MASSACHUSETTS : CIVIL ACTION NO
5         Plaintiff,        : 03-CV-11865-PBS
6         v.                :
7    MYLAN LABORATORIES, INC., et al. :
8         Defendants.       :
9    ----------------------------------X
10
11        SUPERIOR COURT OF NEW JERSEY
12              UNION COUNTY
13   ----------------------------------X
14   CLIFFSIDE NURSING HOME, INC., on  : LAW DIVISION
15   behalf of itself and all others  : DOCKET NO.
16   similarly situated, as defined    : UNN-L-2329-04
17   herein,              :
18        Plaintiffs,     :
19        v.              :
20   DEY, INC., et al.     :
21        Defendants.      :
22   ----------------------------------X

Page 298

1    STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
2    ----------------------------------X
3    STATE OF WISCONSIN,       : CASE NO.
4         Plaintiff,           : 04-CV-1709
5         v.                   :
6    AMGEN INC., et al.,       :
7         Defendants.          :
8    ----------------------------------X
9
10        IN THE COURT OF COMMON PLEAS
11             FIFTH JUDICIAL CIRCUIT
12   ----------------------------------X
13   STATE OF SOUTH CAROLINA, and     : STATE OF
14   HENRY D. McMASTER, in his official : SOUTH CAROLINA
15   capacity as Attorney General for  : COUNTY OF
16   the State of South Carolina,      : RICHLAND
17        Plaintiff,               :
18        v.                 : CASE NO.
19   ABBOTT LABORATORIES, INC.     : 2006-CP-40-4394
20        Defendant.           :
21   ----------------------------------X
22

Page 299

1      IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
2                STATE OF HAWAII
3    ----------------------------------X
4    STATE OF HAWAII,          : CASE NO.
5         Plaintiff,          : 06-1-0720-04 EEH
6         v.                 :
7    ABBOTT LABORATORIES, INC., et al. : JUDGE EDEN
8         Defendants.        : ELIZABETH HIFO
9    ----------------------------------X
10
11        COMMONWEALTH OF KENTUCKY
12      FRANKLIN CIRCUIT COURT - DIV. II
13   ----------------------------------X
14   COMMONWEALTH OF KENTUCKY,     : CIVIL ACTION NO
15        Plaintiff,          : 03-CI-1134
16        v.                 :
17   ABBOTT LABORATORIES, INC., et al. :
18        Defendants.         :
19   ----------------------------------X
20
21
22

Page 300

1        COMMONWEALTH OF KENTUCKY
2      FRANKLIN CIRCUIT COURT - DIV. I
3    ----------------------------------X
4    COMMONWEALTH OF KENTUCKY, ex rel. : CIVIL ACTION NO
5    GREGORY D. STUMBO, Attorney General: 03-CI-1487
6         Plaintiff,           :
7         v.                  :
8    ALPHAPHARMA, INC., et al.     :
9         Defendants.          :
10   ----------------------------------X
11              - - -
12
13        Continuation of the videotaped
14   deposition of DAVID TAWES was taken, pursuant
15   to notice, at MORGAN LEWIS & BOCKIUS, LLP,
16   1701 Market Street, Philadelphia,
17   Pennsylvania, on Wednesday, April 25, 2007,
18   beginning at 8:09 a.m., before M. Kathleen
19   Muino, Professional Shorthand Reporter, Notary
20   Public; Richard Kanzinger, Jr., Videographer,
21   there being present:
22

                         2  (Pages 297 to 300)

58feec2f-99ac-42be-8c4e-803a680a2c55

Tawes, David - Vol. II                           April 25, 2007
                        Philadelphia, PA

Page 481

1    published, quote, Medicaid, end quote, AWP, even as

2    First DataBank continues to publish the, quote,

3    regular, end quote, AWP data.  We believe that the

4    industry standard definition of the term AWP is

5    well-understood as a single published benchmark of

6    the price of a given manufacturer's product in a

7    given compendia. For a compendium to publish two

8    different AWPs is a serious change to the concept

9    of using AWP as a single benchmark price for a

10   product.

11        Mr. Tawes, do you recall any discussions --

12   well, let me -- let me strike that.

13        Did you believe that the term "average

14   wholesale price" was commonly understood in the

15   industry?

16             MR. NEAL:  Objection as to form.

17             THE WITNESS:  Yes.

18   BY MR. TORBORG:

19        Q.   And how was it commonly understood in

20   the industry?

21             MR. NEAL:  The same objection.

22             THE WITNESS:  I'm not sure that I knew

Henderson Legal Services
202-220-4158

58feec2f-99ac-42be-8c4e-803a680a2c55

Tawes, David - Vol. II
Philadelphia, PA
April 25, 2007

Page 482

1    the exact definition that the industry would use.

2    However, I believe that the industry obviously knew

3    that AWPs were not based on -- on wholesale prices;

4    that it was simply a -- a price for their products

5    that they wanted to list in compendia.

6    BY MR. TORBORG:

7         Q.   So it was your understanding that it was

8    commonly understood in the industry that the term

9    "average wholesale price" referred to prices

10   published in pricing compendia such as Red Book or

11   Blue Book?

12             MR. NEAL:  Objection as to form.

13             THE WITNESS:  Yes.

14   BY MR. TORBORG:

15        Q.   Do you agree with the statement made in

16   this form letter, that changing the definition of

17   average wholesale price away from what was ever in

18   the pricing compendia to something else was a

19   change in Medicare statutes?

20             MR. NEAL:  I'll object to the form.

21             THE WITNESS:  No.

22   BY MR. TORBORG:

Henderson Legal Services
202-220-4158

58feec2f-99ac-42be-8c4e-803a680a2c55

Molyneaux, Nancy    HIGHLY CONFIDENTIAL    January 11, 2007
Philadelphia, PA

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-------------------------x

IN RE:  PHARMACEUTICAL        :  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE :  CIVIL ACTION

PRICE LITIGATION              :  01-CV-12257-PBS

              vs.             :

THIS DOCUMENT RELATES TO   :  HIGHLY

U.S. ex rel. Ven-A-Care of :  CONFIDENTIAL

The Florida Keys, Inc.   :

v. Abbott Laboratories,    :

Inc., No. 06-CV-11337-PBS  :

-------------------------x


        Oral Deposition of NANCY MOLYNEAUX, was

taken pursuant to notice at the Law Offices of Morgan

Lewis, 1701 Market Street, Philadelphia,

Pennsylvania, on Thursday, January 11, 2007,

beginning at 10:00 a.m., before Jeanne Christian,

Court Reporter-Notary Public, there being present.

d35eef33-262d-44a5-ba27-3955dc624463

Molyneaux, Nancy   HIGHLY CONFIDENTIAL   January 11, 2007
Philadelphia, PA

Page 158

1    costs; (3), fee schedules; (4), global rates; and

2    (5), previous Medicare rates.

3              Do you see that?

4        A.    Yes, I do.

5        Q.    And this is a report that you wrote;

6    correct?

7        A.    Yes.

8        Q.    What did you mean when you used the word

9    average wholesale price in that sentence?

10       A.    That's just the published wholesale

11   price, average wholesale price.

12       Q.    And published in publications such as

13   Red Book?

14       A.    Yes.

15       Q.    When you use the term average wholesale

16   price in your work at OIG, did it mean to refer to

17   the price published?

18       A.    As far as I recall.

19       Q.    You did not -- when you used the term

20   average wholesale price or AWP, you did not use it

21   to refer to some actual calculated average of

22   provider acquisition cost, did you?

Henderson Legal Services, Inc.
(202) 220-4158

d35eef33-262d-44a5-ba27-3955dc624463

Sernyak, Amy Jane                March 6, 2007
Philadelphia, PA

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

--------------------------x

IN RE:  PHARMACEUTICAL       : MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE : CIVIL ACTION

PRICE LITIGATION             : 01-CV-12257-PBS

            vs.          :

THIS DOCUMENT RELATES TO  :

U.S. ex rel. Ven-A-Care of :

The Florida Keys, Inc.    :

v. Abbott Laboratories,   :

Inc., No. 06-CV-11337-PBS  :

--------------------------x

Video Tape Deposition of AMY JANE SERNYAK was taken
pursuant to notice at the Law Offices of Morgan
Lewis, 1701 Market Street, Philadelphia,
Pennsylvania, on Tuesday, March 6, 2007, beginning at
9:00 a.m., before Jeanne Christian, Court
Reporter-Notary Public and Michael Mullen, Video Tape
Operator, there being present.

27e88f91-f4b0-48c2-9ad0-10a59f83887e

Sernyak, Amy Jane                          March 6, 2007
                    Philadelphia, PA

Page 121

1    the drug, or (2), the national average wholesale

2    price of the drug (as published in The Red Book

3    and similar price listings.)

4                        Did I read that right?

5    A.    Yes.

6    Q.    Is that language consistent with your

7    understanding that the term average wholesale

8    price referred to price listings contained in

9    Red Book or similar price listings?

10                       MR. WINGET-HERNANDEZ:

11   Objection as to form.

12                       MR. NEAL:   Objection as to

13   form.  You can answer.

14                       THE WITNESS:   I misunderstood

15   the question.

16   BY MR. TORBORG:

17   Q.    Is the language of this --

18   A.    That sentence?

19   Q.    That sentence consistent with your

20   understanding that the term average wholesale

21   price referred to prices published in books like

22   Red Book?

27e88f91-f4b0-48c2-9ad0-10a59f83887e

Sernyak, Amy Jane                                    March 6, 2007
                        Philadelphia, PA

Page 122

1                        MR. NEAL:  Same objection.

2                        MR. WINGET-HERNANDEZ:

3        Objection to form.

4                        THE WITNESS:  Yeah, I mean,

5        it says in parentheses, average wholesale price

6        as published in Red Book and similar price

7        listings.

8        BY MR. TORBORG:

9        Q.     Do you recall there being any discussion

10       during your time at OIG about what the term

11       average wholesale price meant?

12       A.     No, I mean, just that it is average

13       wholesale price.

14       Q.     As published in Red Book and other price

15       listings?

16       A.     Right.

17       Q.     No dispute about that at all?

18                        MR. WINGET-HERNANDEZ:

19       Objection.

20                        MS. POLLACK:  Objection.

21       BY MR. TORBORG:

22       Q.     That you are aware of?

27e88f91-f4b0-48c2-9ad0-10a59f83887e

Sernyak, Amy Jane                                        March 6, 2007
                        Philadelphia, PA

Page 123

1          MR. NEAL:  Objection as to

2     form.  You can answer.

3          THE WITNESS:  No.

4     BY MR. TORBORG:

5     Q.     Have you ever heard anyone suggest that

6     the term average wholesale price meant something

7     other than prices published in Red Book or other

8     price listings?

9          MR. NEAL:  Objection as to

10    form.  You can answer.

11         THE WITNESS:  Meant something

12    other than that, no.

13    BY MR. TORBORG:

14    Q.     If I can ask you to go back to the 1996

15    report?

16    A.     Sure.  The acquisition cost?

17    Q.     Yes, suppliers acquisition cost.

18    A.     Okay.

19    Q.     Specifically, to page little i, so you

20    will be going back in the report, or forward in

21    the report, I guess, from where you were.

22              Under the section findings,

27e88f91-f4b0-48c2-9ad0-10a59f83887e

Vito, Robert

Philadelphia, PA

June 19, 2007

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - -

IN RE: PHARMACEUTICAL          : MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE  : CIVIL ACTION:

PRICE LITIGATION               : 01-CV-12257-PBS

                                         :

THIS DOCUMENT RELATES TO       :

U.S. ex rel. Ven-A-Care of  :

the Florida Keys, Inc. v.   :

Abbott Laboratories, Inc.   :

No. 06-CV-11337-PBS             :

- - -

Videotaped deposition of ROBERT

VITO was taken, pursuant to notice, at MORGAN

LEWIS & BOCKIUS, LLP, 1701 Market Street,

Philadelphia, Pennsylvania, on Tuesday, June

19, 2007, beginning at 9:10 a.m., before M.

Kathleen Muino, Professional Shorthand

Reporter, Notary Public; Michael Hunterton,

Certified Legal Video Specialist, there being

present:

0cfa4ef9-679b-48aa-88d6-df3d22db9f34

Vito, Robert

Philadelphia, PA

June 19, 2007

Page 142

1  December 1997. The second page indicates it was
2  prepared under your direction. Is that right?
3      A.  That is correct.
4      Q.  Do you recall this report?
5      A.  Yes, I do.
6      Q.  If you go to the section under
7  Background, see the third paragraph, starting with,
8  on January 1; do you see that?
9      A.  Yep.
10     Q.  On January 1, 1998, Medicare Part B will
11  begin -- begin to reimburse covered drugs at 95
12  percent of the average wholesale price. Currently,
13  Medicare couriers may -- Medicare carriers may
14  determine the amounts that Medicare will pay for
15  these drugs based on either the lower of the
16  estimated acquisition cost or the national average
17  wholesale price.
18     A.  Uh-huh.
19     Q.  The EAC is determined based on surveys
20  of the actual invoice prices paid for the drug.
21  The AWP is reported in the Red Book and other
22  pricing publications and databases used by the

Page 143

1  pharmaceutical industry. Historically, it has been
2  the AWP that carriers have used to develop Medicare
3  reimbursement for prescriptions drugs.
4      Did I read that correctly?
5      A.  Yes.
6      Q.  And is that consistent with what your
7  understanding of what the term "AWP" meant in the
8  regulations prior -- that were in effect prior to
9  1998?
10         MR. NEAL:  Objection as to form.
11         You can answer.
12         THE WITNESS:  We -- we understood that
13  the AWP was the information that Medicare used to
14  set the prices and it did come out of the Red Book
15  and the Blue Book.
16  BY MR. TORBORG:
17     Q.  Did you equate the term "AWP" with the
18  prices that were in Red Book and other price
19  listings?
20         MR. AZORSKY:  Objection to form.
21         MR. NEAL:  Join the objection.
22         THE WITNESS:  When we asked CMS how they

Page 144

1  calculated it, they told us they used the AWP and
2  then if there was a percentage off, then they did
3  that. They told us they took a percentage off of
4  that.
5  BY MR. TORBORG:
6      Q.  When you used the term "average
7  wholesale price," did you equate it to the prices
8  that were in Red Book and other price listings?
9         MR. AZORSKY:  Objection to the form.
10         MR. NEAL:  Join the objection.
11         THE WITNESS:  I believe it was listed in
12  the Red Book and the Blue Book, yes.
13  BY MR. TORBORG:
14     Q.  Did you equate it; yes --
15         MR. AZORSKY:  Objection --
16  BY MR. TORBORG:
17     Q.  -- or no?
18         MR. AZORSKY:  -- to form. Objection to --
19         THE WITNESS:  I -- I -- I -- I --
20  BY MR. TORBORG:
21     Q.  It's a yes or no question.
22         MR. AZORSKY:  How many times you going to

Page 145

1  ask him?
2         MR. TORBORG:  Until -- until I get an
3  answer.
4         MR. AZORSKY:  You
5         (unintelligible) --
6         MR. TORBORG:  Until I get an answer.
7         MR. AZORSKY:  -- answered ten times.
8         MR. NEAL:  You're -- you're -- you're
9  dissatisfied with --
10         MR. TORBORG:  You can object.
11         MR. NEAL:  You're dissatisfied with the
12  answer, but you've gotten an answer.
13         MR. TORBORG:  Well, I haven't gotten --
14         MR. NEAL:  And the question's --
15         MR. TORBORG:  -- an answer.
16         MR. NEAL:  -- been asked and answered a
17  number of times now. You can ask it again.
18  BY MR. TORBORG:
19     Q.  It's a yes or no question, Mr. Vito.
20  When you used the term "average wholesale price" in
21  your work at OIG, did you equate it with the prices
22  that were published in Red Book and other price

37  (Pages 142 to 145)

Henderson Legal Services
202-220-4158

0cfa4ef9-679b-48aa-88d6-df3d22db9f34

Vito, Robert

June 19, 2007

Philadelphia, PA

---

Page 146

1  listings?
2       MR. AZORSKY: Objection to form --
3       MR. NEAL: Objection as to form; asked
4  and answered.
5       THE WITNESS: I -- I -- I -- I have said
6  that AWP is what the Medicare program based its
7  reimbursement on and they were in the Blue -- Blue
8  Book and Red Book.
9  BY MR. TORBORG:
10      Q.  Can you answer my question, yes or no?
11      MR. AZORSKY: Objection to --
12  BY MR. TORBORG:
13      Q.  And just tell me if you can't.  If you
14  can't, that's fine --
15      MR. AZORSKY: Objection to form.
16      MR. NEAL: Same objection.
17      THE WITNESS: I'd like to hear the
18  question one more time.
19  BY MR. TORBORG:
20      Q.  When you use the term "average wholesale
21  price" or "AWP" in your work at OIG, did you equate
22  it with what was published in Red Book and similar

---

Page 147

1  price listings?
2       MR. AZORSKY: Objection to form.
3       MR. NEAL: Objection as to form.
4       MR. WINGET-HERNANDEZ: Objection.
5       THE WITNESS: I -- I -- I -- I guess
6  the answer's yes.
7       MR. TORBORG: I want to mark this as the
8  next one.
9           - - -
10      (Whereupon, Exhibit Abbott 232 was marked
11  for Identification.)
12          - - -
13      MR. TORBORG: For the record, what I've
14  marked as Abbott Exhibit 132 bears the Bates --
15  Exhibit Abbott 232 bears the Bates Nos. HHD042-0018
16  --
17      MR. AZORSKY: What's the exhibit number?
18      MR. TORBORG: Exhibit Abbott 232. -- 20.
19  It is a memo from Mary Beth Clarke at OIG to Shana
20  Olshan at HCFA.
21  BY MR. TORBORG:
22      Q.  Mr. Vito, this was a document that was

---

Page 148

1  produced out of the working files for one of the
2  OIG reports that your team worked on, and my
3  question is whether or not you recall this
4  document?
5       A.  I do not recall this document.
6       Q.  And do you see there's a section,
7  Definitions?
8       A.  Yes.
9       Q.  And the first definition is for average
10  wholesale price, AWP in parens, and Ms. Clarke
11  wrote, or at least it's in this memo that she sent:
12  Define -- defines average wholesale price as the
13  pharmaceutical version of manufacturer's list
14  price.  It is determined by the manufacturer of a
15  given product and listed in several commercial
16  publications available to the health care
17  community.  AWP does not represent the actual
18  average of invoice or purchase price, as very few
19  purchasers actually pay this amount.  It is a
20  standard -- it is used as a standard benchmark with
21  negotiated prices often expressed in terms of AWP
22  minus a given percentage.

---

Page 149

1       Mr. Vito, is this definition of average
2  wholesale price consistent with your understanding
3  of average wholesale price?
4       MR. AZORSKY: Objection to form.
5       MR. NEAL: Object to the form.
6       MR. WINGET-HERNANDEZ: Objection.
7       THE WITNESS: I -- I -- I don't know that
8  I agree with everything that was said in there.
9  BY MR. TORBORG:
10      Q.  What aspects of the definition here of
11  average wholesale price are you not sure that you
12  agree with?
13      A.  I -- I don't know that very few
14  purchasers actually pay this amount.  Now, I -- I
15  -- I -- I -- I never actually did the -- the
16  reviews, but I guess what we found is that when --
17  when -- when we looked at the pricing, that it
18  wasn't the price that was available to the
19  physicians and other suppliers, but I don't know --
20  I don't know the exact percentages of who does --
21  who's getting it, who's not getting it at that
22  price.

38 (Pages 146 to 149)

Henderson Legal Services
202-220-4158

0cfa4ef9-679b-48aa-88d6-df3d22db9f34