# EXHIBIT A

# HOGAN & HARTSON

Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
+1.212.918.3000 Tel
+1.212.918.3100 Fax

www.hhlaw.com

December 11, 2006

Lyndon M. Tretter
Partner
212-918-3528
lmtretter@hhlaw.com

*BY HAND AND E-MAIL*

Steve W. Berman, Esq.
Sean R. Matt, Esq.
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:   **AWP MDL Class 2 and Class 3 Trial**

Dear Steve and Sean:

This is to address certain "housekeeping" issues relevant to the close of the case of defendants BMS and OTN. This letter does not address issues relevant to the "joint" or "common" case of the Track 1 defendants or those relevant to any other individual defendant.

I.   Written Directs & Exhibits of Persons Not Called By Agreement With Plaintiffs

We did not call the following persons to testify pursuant to agreements with you: Zoltan Szabo, David Rogers, Richard Hammerstone and Tim Snail. Please confirm that you have no objection to the admission of their written directs and any attached documents. Please note that, for Snail, you objected to Attachment I, DX-1227, document during our examination of Dr. Haegele. We believe that Snail's affidavit provides the necessary foundation.

The only other documents besides DX-1227 that would be introduced under this scenario are (1) the documents not yet admitted through Denise Kaszuba that are attached to Mr. Szabo's written direct ( DX-2591, DX-2623, DX-2624, DX-2625), (2) additional documents agreed between Sean and Steve Edwards in connection with the agreement not to call Mr. Szabo live (DX-2588 (same as PX-187), DX-2589 (same as PX-189) and DX-2545) and (3) DX-2587 (same as PX 196).

Steve W. Berman, Esq.
Sean R. Matt, Esq.
December 11, 2006
Page 2

II.        Documents Identified During the Bell "BMS" Individual Direct

We have offered into evidence the following documents used during our direct examination of Greg Bell: DX-2632, DX-2642-DX-2643, DX-2644, and DX-2645. Judge Saris has given you an opportunity to cross-examine Dr. Bell on these documents before deciding on whether they will be admitted. Please let me know if and when you wish to conduct that cross-examination or whether we can stipulate to the admission of the documents.

III.       Miscellaneous Documents

We also wish to move into evidence the following documents: DX-1076, DX-1137, DX-2440, DX-2566, DX-2604, DX-2616, DX-2626, DX-2653, DX-2657, PX-4019 and DX-1268. For the last document, I enclose an affidavit of the custodian of business records of U.S. Oncology, Inc. Please let me know if you have any objections to the introduction by BMS of any of these documents.

Finally, we would also like to introduce into evidence several charts created by Eric Gaier that compare the prices on BMS drugs paid by staff model HMOs of various payors to the AWPs and ASPs for those drugs as calculated by Dr. Hartman. Those charts are: DX-1418, DX-1419, DX-1429, DX-1430, DX-1431, DX-1442, DX-1443, DX-1444, DX-1445, DX-1456, DX-1457, DX-1458. DX-1459, DX-1460, DX-1472, DX-1473, DX-1474, DX-1475 and DX-1476. Again, let me know if you have any objections.

IV.       Deposition Designations

    A.    BMS Witnesses Who Testified At Trial (Or Submitted A Written Direct)

Our deposition transcript designations of BMS witnesses who testified at trial will be admitted as counter-designations to that which plaintiffs decide to designate. Please advise me as to which deposition transcript excerpts of which witnesses you intend to seek to introduce so that I may make the proper counter-designations.

    B.    BMS Witnesses Who Did Not Testify At Trial (Or Submit A Written Direct)

The witnesses in this category are Diane Ihling and the BMS sales representatives (R. Armand, G. Cook, D. Faulkner, G. Keighley, T. Liptak, F. Morrison and J. Petrella). You have not objected to any Ihling excerpts; accordingly, we will move those into evidence along with your requested counter-designations. You have withdrawn the hearsay objections to the

Steve W. Berman, Esq.
Sean R. Matt, Esq.
December 11, 2006
Page 3

other transcripts (based on our memo of law concerning Fed. R. Civ. P. 32(a)), but you do list a handful of objections on relevance or non-responsiveness grounds to some of the excerpts. I suggest that Sean and I try to hammer these out so that we do not have to bother Judge Saris with such trivialities.

    I look forward to working with you on the above issues over the next week.

Very truly yours,

Lyndon M. Tretter

Enclosure

## AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

I, B. Scott Aitken, being first duly sworn, on oath, depose and say that: I am a duly authorized custodian of the business records of US Oncology, Inc. (the "Company") and have the authority to certify those records. The letter marked as Exhibit 1268 attached to this affidavit is a true and correct copy of a letter received by the Company and kept in business records of the Company. The records were maintained by the personnel or staff of the Company, or persons acting under their control, in the regular course of the business at or about the time of the act, condition or event recorded.

B. Scott Aitken
Associate General Counsel

Subscribed and sworn to before the undersigned on the 11th day of December, 2006

Name:
Notary Public

MELISA JACOBS
Notary Public, State of Texas
My Commission Expires
January 17, 2010

My appointment Expires: /-17-2010

viewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2242257&DocID=0&ItableID=11831]   Page 1

# TRIGON.

January 5, 2000

Ms. Karen Ford Manza
Regional Director, Managed Care
US Oncology
16825 Northchase Drive
Suite 1300
Houston, TX 77060

Dear Ms. Manza:

It was a pleasure speaking with you regarding the new Trigon Services, Inc. Agreements. I also want to thank you for forwarding your suggested changes to the agreement language. As we discussed, the Agreements have undergone significant revisions that are beneficial to your practice. However, you still have a number of concerns regarding the contract language. At this time, I would like to address your concerns in an attempt to further clarify Trigon Services, Inc.'s position on certain issues.

Exhibit H - Bundling

Further clarification necessary.

History Edits - Oncology

Further clarification necessary.

Non-Covered Oncology Services

Further clarification necessary.

Medical Necessity

As defined in the Agreements, Medical Necessity determinations are based upon the following criteria: consistent with the symptom or diagnosis and treatment of the Covered Person's condition; in keeping with standards of generally accepted medical practice; not mainly for the convenience of the patient, the patient's family, or the provider; and the most suitable supply or level of service that can be safely provided. Economic factors are not a component of Medical Necessity determinations. Determination of Medical Necessity is based upon sound clinical evidence and outcomes information. Trigon uses national medical necessity standards for these determinations.

If you disagree with a Medical Necessity determination made by Trigon and feel that it is based purely on economic factors, you should appeal the insurance claims in accordance with Virginia Code Section 32.1-137.7 *et. seq*

Experimental/Investigational

See Medical Necessity section.

Defendants' Exhibit
1268
01-12257 - PBS

A-VA 03010065
Highly Confidential

Trigon Services, Inc., a subsidiary of Trigon Healthcare, Inc.
3800 Concorde Parkway • Suite 2000 • Chantilly, Virginia 20151 • Tel 703-227-5300 • Fax 703-227-5355

111559

viewItem https://www.lextranet.com/lcs/search/prodDocs/viewItem.lcs?docID=2242267&DocID=0&tableID=1163]

### PAR/PPO Modifiers

Further clarification necessary.

### Drug Pricing According to Exhibit H

Trigon recognizes that your acquisition cost for drugs is highly variable when expressed as a percent of the AWP. Ninety percent of AWP should provide you with substantial margins for some drugs and nearly zero margins for others. As you know, acquisition cost as a percent of AWP is much lower for the older and more established generics and multi-source brands. These relatively low-cost drugs provide substantial margins and are prominent in the established combination regimens for common malignancies. Therefore, on balance, providing drugs to Trigon insureds at ninety percent of AWP provides you with a positive margin, even when inventory costs are considered. At the time of future fee schedule updates, Trigon might introduce new or different allowances for drugs. It is possible that new allowances might not be based upon a constant percent of AWP. However, any fee schedule changes may be many months in the future.

### Medical Documentation

Further clarification necessary.

### CPT Coding and Medicare Processing Guidelines

Trigon updates its fee schedules yearly, according to Medicare's Relative Value Units, competitor payments and changes in medical technology that affect specific allowances.

### General Contractual Issues

1. Although the Fair Business Practices Act only applies to insured business, you will see some changes in processes and procedures across all lines of business as a result of the changes we are making relative to the new law. For example, we will provide voluntary pre-authorization with eligibility determinations across all lines of business, and we will provide information about policies and payments consistently across all lines of business. And we will, of course, continue to strive to pay all claims promptly and accurately. However, we have only changed the procedures for requesting additional information and tracking and paying claims for our insured lines of business, as required by the law. All Covered Services provided to fully insured and self-insured Covered Persons of Affiliates listed in Exhibit A of the Agreement will be reimbursed in accordance with the applicable Schedule of Allowances in Exhibit H. Trigon's adjudication logic is consistent with industry standards and is similar to logic applied by most payors. Often, Trigon's adjudication logic is consistent with Medicare and AMA CPT methodology, but at times Trigon's logic may conflict with these guidelines. Upon request, Trigon will address any specific questions regarding rebundling, downcoding, or reduction of claims containing certain combinations of codes.
2. While the Fair Business Practices Act requires that physicians have fifteen (15) business days from receipt of an amendment to consider and provide written objection to any contract amendment, Trigon provides twenty (20) business days from postmark date to review any amendment and notify us of any objection. Amendments will become effective ninety (90)

2

A-VA 03010066
Highly Confidential

calendar days after the review period. Likewise, any termination that results from your failure to accept an amendment will not take place until ninety (90) calendar days after the twenty (20) business day period. This timing helps ensure continuity of care and a smooth transition for our members and your patients.

3. The new Trigon Services, Inc. agreements do not contain the "most favored nations" clause. While we remain committed to ensuring the best reimbursement available for our members, we will achieve this, as we always have, by considering Medicare's Relative Value Units, competitor payments and changes in medical technology that affect specific allowances.

4. Trigon has always reserved the right to share information with its customers, network providers, and Covered Persons. In fact, some of the language in this section is taken verbatim from the previous agreement. In an improvement from the previous agreement, Trigon has added language to this section to protect physicians. Trigon has committed to including statements that notify recipients of potential data limitation that could affect interpretation of the information and has provided the physician with the opportunity to review economic profiling information 30 days in advance of any external publication. As stated in Section III.K., you may provide comments and questions to us for our consideration by telephoning our Health Economics Unit at 1-800-447-2345.

5. Trigon's determination that certain health care services are not Medically Necessary represents a denial of payment, not a denial of treatment. Only if Trigon deems the provision of certain health care service to be not Medically Necessary and thus a non-Covered Service, the physician is responsible for making the decision to provide or not to provide treatment based upon his/her professional judgement. If based upon his/her professional judgement, the physician wishes to provide the non-Covered Service to the Covered Person, or if the Covered Person is adamant about receiving such services, the physician can bill the Covered Person directly provided that an appropriate Patient Waiver form has been completed. Trigon does not assume liability for payment of non-Covered Services on behalf of Covered Persons. This practice, along with the definition of Medical Necessity and Covered Services are supported by the Covered Person's Evidence of Coverage.

6. See number 1.

7. Further clarification necessary.

8. Under the Trigon Services, Inc. agreement, all Affiliates are obligated to pay clean claims for Covered Services in accordance with the timeframe imposed by the Fair Business Practices Act.

9. All Affiliates listed on Exhibit A of the Agreement are, per Section I.A the definition of Affiliate, party to the Agreement and are subject to the terms and conditions expressed in the Agreement. Also, the definition of Plan refers to Blue Cross Blue Shield plans participating in the BlueCard Program. Likewise, these Plans are subject to the terms and conditions expressed in the Agreement including Exhibit H. Section III.P states that the Provider will comply with the utilization review policies of such Plan in lieu of the utilization review policies in Exhibit F. A list of Plans participating in the BlueCard Program will be mailed to you upon request.

10. Further clarification necessary.

11. In this instance, please call your Provider Network Consultant and he/she will serve as the liaison to the Trigon corporate office to resolve the issue.

12. The Trigon Reference Guide will be mailed to providers in late January 2000. This Reference Guide will have updated information and include provisions from the Ethics and Fairness in Carrier Business Practices Act.

13. Trigon does not publish or disseminate distinct medical record consent forms.

14. All self-insured plans administered by Affiliates are required to comply with the obligations in Section II, Trigon Services, Inc. and Affiliate Obligations, which include Ethics and Fairness in

A-VA 03010067
Highly Confidential

viewItem [https://www.lexisnexis.com/lnsearch/prodDocs/viewItem.jcs?docID=2242257eDocID=0&ableID=1183]   Page 4

Carrier Business Practices Act provisions. Self-insured plans are also subject to Section III.M and thus, in certain situations, may be liable for payment.

15. If a non-participating provider has provided services to a Covered Person, Trigon will pay the claim directly to the Covered Person. The reimbursement varies according to the benefit structure of the Covered Person.

I hope that this information addresses some of your concerns regarding contract language. If you require further explanation or wish to discuss these issues in greater depth, please notify me upon review of this letter. I am also researching your concerns that were not addressed in this letter and will notify you once completed. If you have any questions, please contact me at 703-227-5316.

Sincerely,

*Keane Ch*

Keane Chan
Provider Network Consultant – Northern Region

cc:   Sara D. Bajkowski, Network Contracting Representative, Fairfax-Prince William Hem/Onc
      Gary Miller, Director, Provider Networks – Northern Region

A-VA 03010068
Highly Confidential

4