UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) MDL No. 1456 ) |
| THIS DOCUMENT RELATES TO: *State of Nevada v. American Home Products, et al.,* Civil Action No. 02-CV-12086-PBS  *State of Montana v. Abbott Labs., Inc., et al.,* Civil Action No. 02-CV-12084-PBS | ) CIVIL ACTION NO. ) 01-CV-12257 ) ) ) ) ) ) ) ) |

**MEMORANDUM AND ORDER**

September 12, 2007

Saris, U.S.D.J.

**I. INTRODUCTION**

The states of Nevada and Montana allege that pharmaceutical manufacturers fraudulently overstate the published "average wholesale prices" ("AWPs") of many of their prescription drugs to the detriment of the states, which reimburse providers based on AWPs. The Judicial Panel on Multidistrict Litigation ("JPML") transferred the cases to this Court for pretrial proceedings, as part of the major multidistrict litigation ("MDL") on pharmaceutical pricing. Defendants move the Court to suggest transfer of the cases back to the Federal courts in their home states to decide summary judgment motions. After hearing oral argument, the defendants' motion is **ALLOWED**. The Court suggests that the Montana and Nevada cases be remanded to their Federal courts of origin.

## II. PROCEDURAL HISTORY

In 2002, Montana filed a single complaint, <u>Montana v. Abbott Laboratories, et. al.</u>, 02-CV-12084-PBS (<u>Montana</u>), and Nevada filed two complaints against two different sets of defendants, <u>Nevada v. Abbott Laboratories, et. al.</u>, CV-2-00260 ("<u>Nevada I</u>"), and <u>Nevada v. American Home Products, et. al.</u>, 02-CV-12086-PBS ("<u>Nevada II</u>").  Defendants removed all three cases to federal court and the JPML transferred the cases to this Court.  The states then moved to remand the cases, arguing that there were no federal issues substantial enough to confer federal jurisdiction.  In 2003, this Court denied the motions to remand the <u>Montana</u> and <u>Nevada II</u> cases, but remanded <u>Nevada I</u>.  See <u>Montana v. Abbott Labs</u>, 266 F. Supp. 2d 250 (D. Mass. 2003).  After the states filed amended complaints, the defendants moved to dismiss.  In 2004, this Court allowed in part and denied in part the motions to dismiss.  See <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 321 F. Supp. 2d 187 (D. Mass. 2004).  The official cut-off for pretrial discovery was March 31, 2006, though some discovery was conducted through last summer as to defendant Baxter Healthcare Corporations and Baxter International, Inc.[1]

---

[1] On March 5, 2007, the Court allowed plaintiffs' motion to stay, with respect to Baxter, the Montana and Nevada cases (Docket No. 3806) for 120 days to allow the parties to develop an alternative schedule to deal with the remaining discovery issues for that defendant.  On June 21, 2007, plaintiffs filed an another motion to continue the stay which was denied by the Court on July 2, 2007.  The magistrate judge has reported there are no pending matters involving Baxter.  Accordingly, all discovery

and two third party depositions.  On February 8, 2007 the defendants filed a joint motion for summary judgment in both the Montana and Nevada II cases, as well as individual motions on behalf of many of the over twenty defendants.  Montana also filed a motion for partial summary judgment against certain defendants.  On the same date, defendants filed a motion to suggest transfer of the Montana and Nevada II cases to their Federal courts of origin.

### III. DISCUSSION

The defendants argue that the most efficient and practical course is for this Court to suggest transfer now, rather than to decide multiple summary judgment motions which address primarily state law claims.[2]  Plaintiffs contend that the summary judgment motions should be decided here, because this Court has experience interpreting common issues including the meaning of AWP and the imputation of knowledge based on government reports and other documents that have been presented to this Court in several proceedings.  Plaintiffs contend that remanding the cases now would invite inefficiencies and inconsistencies that the MDL referral was meant to diminish.

Under the statute governing MDL actions, "[e]ach action so

---

should now be finished.

[2] The Court has denied without prejudice any pending motions for summary judgment so that they may be refiled in the transferor Districts in light of my recent rulings.  See Docket # 4707.

transferred shall be remanded by the panel at <u>or before</u> the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."  28 U.S.C. § 1407(a)(emphasis added).  While the MDL panel makes the ultimate decision of whether remand is appropriate, the panel looks to the transferee court to "suggest when it should order remand."  Fed. Judicial Ctr., <u>Manual for Complex Litigation Fourth</u> § 20.13 (2004).  "Whether Section 1407 remand is appropriate for an action in any particular multidistrict docket is based upon the totality of circumstances involved in that docket."  <u>In re Managed Care Litig.</u>, 2006 U.S. Dist. LEXIS 26561 at *2 (J.P.M.L. 2006).  One key factor in making this determination is "when remand will best serve the expeditious disposition of the litigation."  <u>Manual for Complex Litigation Fourth</u> § 20.13.  Thus, it is not necessary that the transferee court complete all pretrial proceedings before suggesting remand.  <u>See</u> <u>In re Multidistrict Civil Actions Involving Air Crash Disaster Near Dayton</u>, 386 F. Supp. 908, 909 (J.P.M.L. 1975) ("It is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel, but rather that the transferee judge in his discretion will conduct the common pretrial proceedings with respect to the various actions and any additional pretrial proceedings as he deems otherwise appropriate.").

4

A section from the Manual for Complex Litigation Fourth is particularly instructive[3] in this situation:

> If summary judgment motions are pending, the transferee judge must consider whether to decide the motions or to transfer the cases back to the transferor districts. If the summary judgment motion pertains to one or few cases, or rests on application of the transferor court's conflicts-of-law and substantive law rules, the transferor judge may be able to decide the motions most efficiently. If the summary judgment motions involve issues common to all the cases centralized before the MDL court, however, the transferee judge may be in the best position to rule.

Manual for Complex Litigation Fourth § 22.36.

After reviewing the issues presented in the summary judgment motions, I believe it is appropriate to transfer the cases back to their home states at this time. This Court, as the MDL transferee court, has served several important functions for handling these pharmaceutical pricing cases. I have issued numerous extensive opinions to help transferor Federal courts and state courts to understand the complex world of drug pricing. In the class certification order, with the aid of an independent expert, I explained in detail the pharmaceutical industry and the reimbursement systems under private contracts, federal statutes and regulations, and state laws. See In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, (D. Mass. 2005). This

---

[3] This text is found in section 2 of the Manual for Complex Litigation Fourth, which deals with mass torts. While the AWP litigation does not necessarily fit the definition of a mass tort, the section is nonetheless instructive for its guidance to an MDL court dealing with summary judgment motions in an MDL action involving plaintiffs in a substantial number of states.

included an analysis of the many parties involved, the interactions between those parties, and the different systems for physician administered drugs versus self administered drugs. See id. After careful review of the relevant legislative history, I also defined the meaning of "average wholesale price" in the federal Medicare statute to accord with the plain meaning of those terms. See In re Pharm. Indus. Average Wholesale Price Litig., 460 F. Supp. 2d 277 (2006). Most recently, after a twenty day bench trial, I found that three defendant pharmaceutical companies unfairly and deceptively inflated drug prices in violation of Massachusetts consumer protection laws. See In re Pharm. Indus. Average Wholesale Price Litig., 491 F. Supp. 2d 20 (D. Mass. June 21, 2007). In that decision, I made numerous factual findings regarding the conduct of the particular defendant manufacturers and ruled on various legal issues raised on summary judgment before trial, as well as the Daubert challenge. Finally, in the Montana and Nevada II cases specifically, the magistrate judge and I have dealt with a multitude of discovery matters and dismissal motions that have prepared these cases for summary judgment proceedings.

The remaining issues in the Nevada II and Montana cases depend almost exclusively upon the application and interpretation of substantive state laws, primarily relating to state Medicaid benefits. Neither Nevada nor Montana is seeking to recover

damages on behalf of Medicare Part B beneficiaries.[4]  (<u>See</u> Nevada Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J. at 23; Montana Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J.  at 22.)  The main issues in the summary judgment motions are the knowledge and expectations of each state regarding acquisition costs and spreads, and the meaning of AWP as used in certain state laws or administrative rules.  These issues are specific to their respective states and do not require the benefit of my experience grappling with the complexities of drug reimbursement under Medicare, although many of the issues are similar.

Furthermore, given the heavy burden on this docket, due in great part to various stages of this MDL, the <u>Montana</u> and <u>Nevada II</u> cases may be significantly delayed if they remain in this Court.  The federal government has entered with a storm of qui tam cases and there are related cases that have been removed from state court, or that involve generic drugs, wholesalers or publication companies.  It is in the interests of justice to return the cases to their home districts, so that the Federal courts in Montana and Nevada can begin dealing with the claims

---

[4] Nevada is still bringing a parens patriae claim on behalf of Nevada citizens in which it seeks only "civil penalties incurred by the Nevada Medicaid Program."  (Nevada Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J. (Docket No. 3910) at 23.) The state is not pursuing "claims on behalf of non-Medicaid state entities."  (<u>Id.</u> at 29.)  Similarly, Montana continues to press its parens patriae claims, but notes that damages are limited to those "incurred by the Montana Medicaid Program."  (Montana Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J. (Docket No. 3902) at 22.)

and theories of the cases based on the Medicaid laws in the states in which they sit.  See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34 (1998) (Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course.").

The Court had originally deferred ruling on the motion to transfer until the Court issued its decision in the bellwether trial and because of pending mediation sessions with Eric Green.  However, the decision has now been issued and there is no reason that a transfer would disrupt the mediation discussions, which I believe all parties have agreed to.

**ORDER**

The defendants' motion to suggest transfer of the <u>Montana</u> and <u>Nevada II</u> cases to their Federal courts of origin (Docket No. 3685) is **ALLOWED**.

<pre>
                                    S/PATTI B. SARIS
                                    United States District Judge
</pre>