# EXHIBIT J

Booth, Charles R.                          April 23, 2007
                      Washington, DC

Page 1

```
         UNITED STATES DISTRICT COURT

       FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -x

IN RE:  PHARMACEUTICAL         : MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE     : CIVIL ACTION:

PRICE LITIGATION               : 01-CV-12257-PBS

THIS DOCUMENT RELATES TO       :

U.S. ex rel. Ven-a-Care of     : Judge Patti B. Saris

the Florida Keys, Inc. v.      :

Abbott Laboratories, Inc.,     : Chief Magistrate

No. 06-CV-11337-PBS            : Judge Marianne B.

- - - - - - - - - - - - - - -x   Bowler

           IN THE CIRCUIT COURT OF

         MONTGOMERY COUNTY, ALABAMA

- - - - - - - - - - - - - - -x

STATE OF ALABAMA,              :

            Plaintiff,         :

         vs.                   : Case No.: CV-05-219

ABBOTT LABORATORIES, INC.,     : Judge Charles Price

et al.,                        :

            Defendants.        :

- - - - - - - - - - - - - - -x
```

Henderson Legal Services
202-220-4158

5570917b-ccec-4522-964a-1aa1ed72506d

```
                                           Page 2                                              Page 4
 1    IN THE COURT OF THE SECOND JUDICIAL CIRCUIT         1           Washington, D.C.
 2       IN AND FOR LEON COUNTY, FLORIDA                  2           Monday, April 23, 2007
 3                                                        3
 4   THE STATE OF FLORIDA                                 4       Videotaped Deposition of CHARLES R. BOOTH,
 5   ex rel.                                              5   a witness herein, called for examination by counsel
 6   ----------------x                                    6   for Abbott Laboratories in the above-entitled
 7   VEN-A-CARE OF THE FLORIDA       :                    7   matter, pursuant to notice, the witness being duly
 8   KEYS, INC., a Florida           :                    8   sworn by KAREN YOUNG, a Notary Public in and for the
 9   Corporation, by and through its :                    9   District of Columbia, taken at the offices of Jones
10   principal officers and directors, :                 10   Day, 51 Louisiana Avenue, Northwest, Washington,
11   ZACHARY T. BENTLEY and          :                   11   D.C., at 9:41 a.m. on Monday, April 23, 2007, and
12   T. MARK JONES,                  :                   12   the proceedings being taken down by Stenotype by
13         Plaintiffs,               :                   13   KAREN YOUNG, and transcribed under her direction.
14       vs.              : Civil Action                 14
15   MYLAN LABORATORIES INC.; MYLAN   : No.: 98-3032G    15
16   PHARMACEUTICALS INC.; NOVOPHARM : Judge: William    16
17   LTD., SCHEIN PHARMACEUTICAL, INC.;:  L. Gary        17
18   TEVA PHARMACEUTICAL INDUSTRIES  :                   18
19   LTD., TEVA PHARMACEUTICAL USA;  :                   19
20   and WATSON PHARMACEUTICALS, INC., :                 20
21         Defendants.               :                   21
22   ----------------x                                   22

                                           Page 3                                              Page 5
 1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS       1   APPEARANCES:
 2              STATE OF MISSOURI                         2      On Behalf of the United States of America:
 3                                                        3
 4   ----------------x                                    4        GEJAA T. GOBENA, ESQ.
 5   STATE OF MISSOURI, ex rel.,     :                    5        LAURIE A. OBEREMBT, ESQ.
 6   JEREMIAH W. (JAY) NIXON,        :                    6        U.S. Department of Justice
 7   Attorney General,               :                    7        Civil Division
 8   and                             :                    8        601 D Street, Northwest
 9   MISSOURI DEPARTMENT OF SOCIAL   :                    9        PHB - 9028/P.O. Box 261
10   SERVICES, DIVISION OF MEDICAL   : Case No.:         10        Washington, D.C. 20044
11   SERVICES,                       : 054-1216          11        Gejaa.Gobena@usdoj.gov
12         Plaintiffs,    : Division No. 31              12        (202) 307-1088
13       vs.                         :                   13          (by telephone)
14   DEY INC., DEY, L.P., MERCK KGaA, :                  14
15   EMD, INC., WARRICK              :                   15        ANA MARIA MARTINEZ, ESQ.
16   PHARMACEUTICALS CORPORATION,    :                   16        Assistant United States Attorney
17   SCHERING-PLOUGH CORPORATION, and :                  17        Southern District of Florida
18   SCHERING CORPORATION,           :                   18        99 N.E. Fourth Street
19         Defendants.               :                   19        Miami, Florida 33132
20   ----------------x                                   20        Ana.Maria.Martinez@usdoj.gov
21                                                       21        (305) 961-9431
22                                                       22
```

2 (Pages 2 to 5)

Booth, Charles R.                                                April 23, 2007
Washington, DC

Page 154

1    Q.   And according to this chart prepared by
2  OIG, there were various price points in between
3  $3.45 and $26.61, correct?
4       MR. GOBENA:  Object to the form.
5    A.   There appear to be.
6    Q.   Is that consistent with your understanding
7  that it's impossible to determine a single
8  percentage discount from AWP that would give you
9  provider acquisition cost?
10      MR. GOBENA:  Object to the form.
11   A.   I would conclude that for an individual
12 dosage of an individual drug, it could be difficult
13 to set a uniform discounted price on AWP.
14   Q.   And is it fair to say that there was no
15 predictable relationship between AWP and acquisition
16 cost?
17      MR. GOBENA:  Object to the form.
18   A.   I have no idea.
19   Q.   Well, let me ask you this.  In November
20 1992, did you believe that there was a predictable
21 relationship between AWP and provider acquisition
22 cost?

Page 155

1       MR. GOBENA:  Object to the form, asked and
2  answered.
3    A.   I don't recall having such a belief.
4    Q.   Returning again to Exhibit Abbott 079
5  please, there's a conclusions page on page 11, and
6  the first conclusion is that for the physicians
7  surveyed, OIG found that the 13 high dollar volume
8  chemotherapy drugs can be purchased at amounts below
9  AWP.  Would you agree with me that as of November
10 1992, individuals within the Office for Payment
11 Policy were aware of OIG findings that these 13 high
12 dollar volume chemotherapy drugs could be purchased
13 at amounts below AWP?
14      MR. GOBENA:  Object to the form.
15   A.   No.
16   Q.   You would not agree that this conclusion
17 was communicated to someone within the Office of
18 Payment Policy?
19   A.   In the paragraph above, the second
20 sentence says, "The conclusions reached may not
21 apply in all cases."
22   Q.   That wasn't my question.

Page 156

1    A.   Well, it's my answer.
2    Q.   Fair enough.  Would you agree that for the
3  physicians surveyed, this report advised officials
4  within the Office of Payment Policy that for these
5  physicians, these chemotherapy drugs could be
6  purchased at amounts below AWP?
7       MR. BREEN:  Objection, form.
8    A.   My answer would be the same because I
9  don't -- I don't understand what the IG is really
10 trying to say here.
11   Q.   Well, can you understand what the IG is
12 trying to say in the next bullet point, AWP is not a
13 reliable indicator of the cost of a drug to
14 physicians?  Did you understand that?
15   A.   Yes.  That doesn't mean it's too high, it
16 doesn't mean it's too low, it doesn't mean it's just
17 right.  It just means it's not reliable.
18   Q.   Did you believe that AWP was a reliable
19 indicator of the cost of a drug to a physician in
20 November of 1992?
21      MR. GOBENA:  Object to the form.
22   A.   I actually I think in 1992 thought it was

Page 157

1  a relatively reliable indicator, though it was
2  certainly not a consistent indicator.
3    Q.   And in October of 1992 when your office
4  was advised that vancomycin could be purchased at
5  $3.45 and the median AWP was $19.17, you still
6  believed that AWP could be a reliable indicator of
7  acquisition cost?
8    A.   In certain cases, yes.
9    Q.   In which cases is that?
10   A.   Well, I'm not prepared to be specific.
11 It's been too long since I've been involved with
12 this.
13   Q.   How did you determine at the time in which
14 cases --
15   A.   I have no idea.  I do not remember.  I'm
16 sorry, I'm 70 years old.  I have not dealt with
17 these issues for at least 13 years, and when I dealt
18 with these issues, they were very minor in the
19 scheme of things.  I spent extremely little time
20 during my career in payment policy on drugs because
21 we did not have a drug benefit.
22   Q.   But you were the person responsible within

40 (Pages 154 to 157)

Henderson Legal Services
202-220-4158

5570917b-ccec-4522-964a-1aa1ed72506d