# EXHIBIT K

```
                                                                Page 1
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
     In Re:                          )
 4   PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS
     AVERAGE WHOLESALE PRICE         ) MDL No. 1456
 5   LITIGATION                      ) Pages 1 - 57
 6
 7
 8                          MOTION HEARING
 9             BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
10
11
12
13
                                  United States District Court
14                                1 Courthouse Way, Courtroom 19
                                  Boston, Massachusetts
15                                May 17, 2007, 2:45 p.m.
16
17
18
19
20
21
22
                            LEE A. MARZILLI
23                       OFFICIAL COURT REPORTER
                       United States District Court
24                     1 Courthouse Way, Room 3205
                           Boston, MA  02210
25                            (617)345-6787
```

Page 2

1  A P P E A R A N C E S:
2  For the Plaintiffs:
3      LAURIE A. OBEREMBT, ESQ., United States Department of Justice, P.O. Box 261, Ben Franklin Station, Washington,
4  D.C., 20004.
5      GEORGE B. HENDERSON, ESQ., Assistant United States Attorney, Office of the United States Attorney,
6  1 Courthouse Way, Boston, Massachusetts, 02210.
7      JAMES JOSEPH BREEN, ESQ., 5755 North Point Parkway, Suite 39, Alpharetta, Georgia, 30022, for the Relator,
8  Ven-A-Care of the Florida Keys.
9  For the Defendants:
10     NEIL MERKL, ESQ. and PAUL F. DOYLE, ESQ., Kelley Drye & Warren, LP, 101 Park Avenue, New York,
11 New York, 10178, for the Defendant, Dey, LP.
12     MARTIN F. MURPHY, ESQ., Foley Hoag, LLP, Seaport World Trade Center West, 155 Seaport Boulevard,
13 Boston, Massachusetts, 02210-2600, for the Defendant, Dey, LP.
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1              P R O C E E D I N G S
2       THE CLERK:  In Re:  Pharmaceutical Industry Average
3  Wholesale Price Litigation, Civil Action No. 01-12257,
4  MDL 1456, will now be heard before this Court.  Will counsel
5  please identify themselves for the record.
6       MR. HENDERSON:  Good afternoon, your Honor.  George
7  Henderson, Assistant U.S. Attorney, and Laurie Oberembt for
8  the Department of Justice, who will argue the government's
9  case today.
10      MS. OBEREMBT:  Good afternoon, your Honor.
11      THE COURT:  All right, thank you.
12      MR. BREEN:  Jim Breen.  I represent the relator,
13 Ven-A-Care of the Florida Keys.  Good afternoon.
14      MR. MURPHY:  Good afternoon, your Honor.  Martin
15 Murphy for the Defendant Dey with Neil Merkl from Kelly Drye
16 and Paul Doyle with Kelly Drye, and Mr. Merkl is going to
17 argue the case for Dey today.
18      THE COURT:  Sounds good.
19      MR. MERKL:  May I proceed?
20      THE COURT:  Yes.
21      MR. MERKL:  Thank you.  Your Honor --
22      THE COURT:  Before you do, I realize I just issued
23 it, but I actually issued an opinion about a week ago --
24      MR. MERKL:  Yes, your Honor.
25      THE COURT:  -- resolving some of these issues but

Page 4

1  obviously not the new one, which was the statute of
2  limitations point.
3       MR. MERKL:  Yes, your Honor, given the reality of
4  your decision, and also I am sensitive that the Court has
5  heard and decided many of these similar issues before, I
6  really plan to address the statute of limitations.
7       THE COURT:  So while I'm assuming you want to
8  preserve these objections on some of these issues for the
9  record should there ever be an appellate need, I don't know
10 that we need to spend a huge amount of time here unless you
11 think I'm dead wrong and missed something.  I often find that
12 these drug cases are so complicated.  For example, the
13 question arose in my mind, I realized I didn't know whether
14 there was ever a certification filed in the Medicaid context,
15 you know, and I was searching through the briefs to see
16 whether just as a factual matter that was required, either as
17 a matter of law or fact.  So I resolved that in the way that
18 I did, and there may be just things I'm wrong on, and I had
19 to do it in the context of the four corners of the
20 complaint.  So short of that, though, I don't want you to
21 reargue the cause to be presented.  I've heard it in every
22 single case, and I'm not in your court on that.
23      MR. MERKL:  Yes, your Honor.  I guess I assume that
24 everything in the papers is preserved.
25      THE COURT:  Right.

Page 5

1       MR. MERKL:  And what you'd like to hear about is
2  perhaps something you haven't heard about before.
3       THE COURT:  Unless you think I was just dead wrong
4  literally factually kind of thing; you know, as it turns out,
5  there in fact is no certification at all in Medicaid, and it
6  isn't required as a matter of law, you know, or -- you know,
7  something that's just so basic to the decision.
8       MR. MERKL:  Okay, I think I have it.
9       THE COURT:  Okay.
10      MR. MERKL:  We may have a wrinkle like that on some
11 of the issues but not many, but really I think the statute of
12 limitations --
13      THE COURT:  The statute seems like a big new issue,
14 and we should resolve it because I read with interest the
15 Second Circuit opinion.  I hadn't seen it before you flagged
16 it for me.  And I've read two or three follow-on District
17 Court cases, the District of Columbia and the State of
18 Washington.  I think those were the two major ones.
19      MR. MERKL:  Those are the two that I've seen, your
20 Honor.  Well, then let me start there.
21      THE COURT:  Okay.
22      MR. MERKL:  The case against Dey was unsealed in
23 August of '06 and served in September, and our contention is
24 that any claim arising under the False Claims Act is barred
25 by the six-year statute, which means anything prior to August

Page 46

 1  and marshal this information, and the complexion it took once
 2  the judges in Miami said, "Go out and pursue the state
 3  cases," one of which was against Dey Laboratories, and
 4  they've had every one of their witnesses deposed in the 2000
 5  Texas case, so it's just been a monster, is the best way I
 6  can describe it.
 7       THE COURT:  But the government is doing it now, so
 8  I don't even know why you're standing.  No, I'm serious
 9  here.  I mean, you're in control of this case now, right?
10  It's only your case?
11       MS. OBEREMBT:  Right.  And I think, focusing back
12  on your issue about having this issue go up to the First
13  Circuit, the Second Circuit did not consider relation back
14  under Rule 15(c)(1).
15       THE COURT:  Right.
16       MS. OBEREMBT:  They said it was a colorable
17  argument, but it wasn't presented to them.  And I think your
18  Honor could rule in our favor with respect to 15(c)(1).  I
19  believe it would make sense here given the statute.  The way
20  the statute is written, I believe it definitely provides for
21  the tolling once the relator's complaint has been filed.
22       THE COURT:  And you would say forever?  In other
23  words, this is a pretty extreme example.
24       MS. OBEREMBT:  Well, your Honor, the statute
25  provides that the District Court judge is the bulwark against

Page 47

 1  cases going on forever, and you yourself have pointed out
 2  that you ask lawyers questions about these cases, that you
 3  don't let them go on forever.  You're not alone in that
 4  approach.  Congress specifically provided that we didn't have
 5  the right to have unlimited amounts of time.  We have to
 6  report to a District Court judge, and we have to demonstrate
 7  good cause for whatever it is we do.
 8       THE COURT:  At some point, though, at the end of
 9  the day, it's ex parte.
10       MS. OBEREMBT:  It is, absolutely.
11       THE COURT:  So you're a busy judge, and I sort of
12  allow, you know, a certain number of free bites at the apple,
13  and then I start reeling people in and saying, you know, "No
14  more extensions after this date."  And then you get these
15  screams of, "You don't know, Judge, how many thousands of
16  documents, and I can't possibly get through these," and then
17  you take pity and give them another extension.  But that's
18  all without them having a chance to know what's going on, and
19  at some point, isn't there some due process concern if it
20  goes on and on and on?
21       MS. OBEREMBT:  You know, your Honor, I think we
22  could all come up with a hypothetical where at the end of the
23  day, we felt, my gosh, this might rise to the level of due
24  process.  You know, Congress could have passed the statute
25  without any statute of limitations, and it would have been

Page 48

 1  constitutional.  Statute of limitations are construed very
 2  narrowly against the government, and the Supreme Court has
 3  recently upheld that principle yet again.  I mean,
 4  notwithstanding the concerns about passage of time,
 5  et cetera, those aren't valid reasons to put in place a
 6  statute of limitations against the government that doesn't
 7  exist, that Congress didn't give it.
 8       THE COURT:  Under 15(a), you know, motions to amend
 9  must be liberally construed, and one of the things you think
10  about is prejudice to the defendants.  It just seems like
11  that's being ruled out of this.
12       MS. OBEREMBT:  I think also the facts in this
13  particular case don't lend themselves to a prejudice
14  argument.  Dey received a subpoena within several months of
15  the first complaint being filed in Florida.  They received
16  several subpoenas thereafter.  The department obtained a
17  partial list and disclosed the allegations to them I believe
18  as early as 1998.  They've been on notice for many years
19  about the issues.  They've had lengthy discussions with the
20  department.
21       THE COURT:  Sure, but what about his point that you
22  can't -- I've actually had this debate with some members of
23  my local U.S. Attorney's office:  What about witness
24  memories?  People forget.  Documents get lost, right?
25       MS. OBEREMBT:  Well, that's a risk in any case with

Page 49

 1  the passage of time.  The False Claims Act permits --
 2       THE COURT:  But don't they bear the brunt of it,
 3  though, a bit?
 4       MS. OBEREMBT:  They do in some respects, but the
 5  statute itself permits us to go back a full ten years under
 6  the three-year provision that they're relying on.
 7       THE COURT:  Nine years, right?
 8       MS. OBEREMBT:  No.  It's ten years from the date
 9  that -- if we file suit within three years after we knew or
10  should have known, we're allowed to go back for claims dating
11  back ten years.  So Congress contemplated --
12       THE COURT:  Well, where did I get six years?
13       MS. OBEREMBT:  There are two provisions in the
14  statute, the six-year one which we contend is tolled once the
15  relator's complaint is filed.  There's also one which we
16  believe was envisioned to encompass situations where an
17  informant comes in, does not file a lawsuit, so there's no
18  District Court judge overseeing anything.  An informant comes
19  in, provides us with information, and then we have three
20  years from the date that we knew or should have known the
21  information, and we're allowed to go back ten years.  So
22  Congress envisioned --
23       THE COURT:  So that doesn't apply to me here.
24       MS. OBEREMBT:  In this case, because the relator
25  filed suit.  But my point is, Congress envisioned that these

13 (Pages 46 to 49)