24

# What Has Happened Since Preliminary Approval of the Settlement?

I.   Notice to the Class

II.  Survey of Consumer Opt-Outs

III. Objections to the Settlement

# Notice to the Class

- Notice to consumers and TPPs by direct mail and publication

- Web page (www.gsksettlement.com) established to disseminate information and forms to class members

- Call center established to answer class member's questions about the Settlement

25

# Notice to Consumers

- **Direct Mail**: 2.5 Million letters to Part B Consumers enclosing Notice, Claim Form and Opt-out Form at cost of $1.3 Million

- **Publication**: Approximately $1.8 Million spent on publication of notice in national media from February to March, 2007 including:

- National Geographic
- People
- Reader's Digest
- Selecciones (Spanish)
- Time
- US News & World Rpt

- Parade Magazine
- USA Weekend
- Better H&G
- Jet Magazine
- Sports Illustrated

26

# Notice to TPPs

- **Direct Mail:** 43,000+ letters to TPPs nationally enclosing notice and claim form

- **Publication:** Noticed published in national TPP trade magazines in February 2007 including:

  - National Underwriter Life & Health

  - Human Resources Magazine

27

# TPP Claims/Opt-Outs

- 2,028 claims from TPP class members

- Processing/auditing of claims underway. Process includes:

  - Verifying receipt of correct data

  - Notification of claim deficiency/time to cure

  - Elimination of any overlap in claims between TTPs or among TTPs & ISHPs

  - Calculation of recognized claims for each TTP

- Based on past experience 9-12 months before checks mailed

28

# TPP Claims/Opt-Outs

- 12 TPP Opt-Outs

- Listed on <u>Exhibit 4</u> to Declaration of Thomas Glenn

- Each Opt-Out relatively small in size

- Will not result in a large refund to GSK

# Consumer Claims/Opt-Outs

- To date 12,895 claims filed by Consumer Class Members

- Processing/Auditing of claims underway. Process includes:

  - Verifying receipt of valid proof of payment
  - Notification of deficiency/ time to cure
  - Audit of sample of claims and outliers
  - Calculation of recognized claim for each consumer

- Class counsel has requested that <u>CCS prioritize processing of consumer claims</u>

- Based on past experience checks mailed in 5-6 months

30

# Consumer Claims/Opt-Outs

- CCS has entered approximately 2000 consumer claims into its database to date

- Based on these *unaudited* claims to date the average consumer claim is $209

- Based on this preliminary average, total of 12,895 claims results in total payment to consumer claimants of $2.7 Million

31

# Consumer Claims/Opt-Outs

- 21,365 Consumers filed requests for exclusion

- Evidence that some consumers inadvertently filed for exclusion while intending to file a claim

- Suspicion that many consumers who opted out were not in fact class members (did not pay out of pocket)

32

# Opt-Out Survey Results

- 15.65% of survey sample determined to be actual class members

- Of this group, 16% indicated they intended to file a claim by submitting opt-out form

- Another 18% of the group contacted indicated that if given the chance they would file a claim and withdraw their opt-out

- Court approved the mailing of another claim form mailed to everyone who filed an exclusion, returnable by <u>July 31st, 2007</u>

33

# Opt-Out Survey Results

- 21,365 consumer Opt-Out forms

  15.65% of 21,365    =    3,343

  minus 16% of 3,343    =    2,809

2,809 true Consumer Class Members intended to exclude themselves from the Settlement

34

# Opt-Out Survey Results

- Those surveyed gave a number of reasons for decision to Opt-Out

  - 30% could not find their proof of payment

  - 28% did not understand terms or whether they were eligible

- Only 2.5% said they wanted the preserve their right to sue on their own

35

# Objections to the Settlement

- 1 TPP objection from Health Care Services Corporation (Docket No. 4416). Withdrawn.

- 1 Consumer objection from Demra Jordan (Docket No. 4403).

- 1 objection from Commonwealth of PA (Docket No. 4427).

# Objections to the Settlement

- Demra Jordan provides no substantive basis for objection other than an unsupported statement that the settlement class cannot be certified "due to a lack of predominance of common issues."

- This Court has addressed all aspects of class certification, including issues related to predominance under Rule 23 in its August 16, 2005 Order.

37

# Objections to the Settlement

- Commonwealth of PA objects to the participation by TPPs and ISHPs in any mediation over excess consumer funds

- PA entered into its' agreement with GSK on 2/12/07, <u>six months</u> after the Settlement Agreement was made public

- PA's separate settlement agreement expressly acknowledges the terms set forth in the Settlement Agreement regarding the mediation

- PA accepted those terms and $809,000 as a participating state under the terms of the Settlement Agreement

38

# Why is the Settlement Fair, Adequate and Reasonable?

# Factors to Consider

- Comparison of Settlement with likely results of litigation
- Stage of the litigation at settlement
- Quality of Counsel
- Conduct of the Negotiations
- Risk, complexity, expense and duration of the litigation

*In re Compact Disc.*, 216 F.R.D. at 206

40

# Comparison of Settlement to Likely Results of Litigation

- Damages Estimates from Declaration of Raymond Hartman in Support of Plaintiffs' Claims of Liability and Calculation of Damages (Filed Under Seal on 12/15/05)

- Dr. Hartman used a zero threshold for liability and damages for Class 1 and Class 2 (But for AWP=ASP)

- Class 1 (Part B Consumers)      = $7.7 Million
- Class 2 (MediGap TPPs)          = $38  Million
- Class 3 (TPPs and Consumers)  = $370 Million

  Total Single Damages = $415 Million

41

# Comparison of Settlement to Likely Result of Litigation

Total Recovery = $65.5M + $1.2M from Litigating State Fund = $66.7 Million

$66.7M / $415M = Total Recovery of 16% of Damages

42

# Comparison of Settlement to Likely Result of Litigation

<u>Consumer Damages</u>

Class 1 = $7.7 Million

Class 3 damages to consumers approx 6.5% of total or 6.5% of $370M = $24 Million

Total Consumer Damages = $31.7 Million

Total Consumer Damages = 7.6% of total damages yet they receive 30% of the Fund

43

# Comparison of Settlement to Likely Result of Litigation

TPP Damages

Class 2 = $38 Million

Class 3 damages to TPPs approx 93.5% of total or 93.5% of $370M = $346 Million

Total TPP Damages = $384 Million

Total TPP Damages = 92.5% of total damages yet they receive 70% of the Fund

44



Damages vs. Recovery

DAMAGES

7.7%

92.5%

Consumers
TPPs

SETTLEMENT FUND

70%

30%

# Factors to Consider

- Stage of the litigation at settlement
- Quality of Counsel
- Conduct of the Negotiations
- Risk, complexity, expense and duration of the litigation

Attorneys' Fees

47

# Aggregate Loadstar Crosscheck

$$\frac{\$52,279,201 \text{ (total loadstar)}}{\$21,615,000 \text{ (fee request)}} = .38 \text{ multiplier}$$

$$\frac{\$52,279,201 + \$5,561,128 \text{ (expenses)}}{\$21,615,000} = .34 \text{ multiplier}$$

48

# "GSK Only" Crosscheck

- Assume 75% of work done for Track I

- 5 Track I Defendants (20% each)

$57M loadstar x 75% x 20% = $8.55M

$5.6M expenses x 75% x 20% = $840K

$21,615,000 fees - $840K GSK expenses = $20.77M

<u>$8.55M</u>
$20.77M        = 2.4 multiplier

49