# EXHIBIT C

```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS


In re:  PHARMACEUTICAL           )
INDUSTRY AVERAGE WHOLESALE       ) MDL No. 1456
PRICE LITIGATION                 ) Civil Action No.
                                 )     01-12257-PBS
                                 )
THIS DOCUMENT RELATES TO:        )
                                 )
United States of America,        ) Hon. Patti Saris
ex rel. Ven-a-Care of the        )
Florida Keys, Inc., v.           )
Abbott Laboratories, Inc.,       )
and Hospira, Inc.                )
CIVIL ACTION NO. 06-11337-PBS    )


*******************************************************

                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS


IN RE:  PHARMACEUTICAL           )
INDUSTRY AVERAGE WHOLESALE       ) MDL No. 1456
PRICE LITIGATION                 ) Civil Action No.
                                 )     01-CV-12257-PBS
                                 )
THIS DOCUMENT RELATES TO:        )
                                 ) Judge Patti B. Saris
State of Arizona v. Abbott       )
Labs., et al.                    )
Civil Action No. 06-CV-11069-PBS )



*******************************************************

              ORAL AND VIDEOTAPED DEPOSITION OF
                      DENNIS WALKER
                     April 5th, 2007

                    HIGHLY CONFIDENTIAL

*******************************************************
```

FREDERICKS-CARROLL REPORTING
AUSTIN (512) 477-9911 - HOUSTON (713) 572-8897 - SAN ANTONIO (210) 222-9161

6b6fd377-d555-4b03-acc2-6f7cb6849e23

## Page 2

```
 1           UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
 2
 3   IN RE:  PHARMACEUTICAL       )
     INDUSTRY AVERAGE WHOLESALE   ) MDL No. 1456
 4   PRICE LITIGATION             ) Civil Action No.
                                  )   01-CV-12257-PBS
 5                                )
     THIS DOCUMENT RELATES TO:    ) Judge Patti B. Saris
 6   ALL CASES                    )
 7   *****************************************************
 8            NO. D-1-GV-04-001286
 9   THE STATE OF TEXAS         ) IN THE DISTRICT COURT
                                )
10   ex rel.                    )
       VEN-A-CARE OF THE        )
11     FLORIDA KEYS, INC.,      )
          Plaintiffs,           )
12                              )
     VS.                        ) TRAVIS COUNTY, TEXAS
13                              )
     ABBOTT LABORATORIES INC.,  )
14   ABBOTT LABORATORIES, and   )
     HOSPIRA, INC.,             )
15       Defendant(s).          ) 201ST JUDICIAL DISTRICT
16   *****************************************************
17       IN THE COMMONWEALTH COURT OF PENNSYLVANIA
18
     COMMONWEALTH OF PENNSYLVANIA  )
19   by Thomas W. Corbett, Jr.,    )
     in his capacity as Attorney   )
20   General of the Commonwealth   )
     of Pennsylvania,              ) Dkt. No. 212 MD 2004
21        Plaintiff,               )
                                   )
22   VS.                           )
                                   )
23   TAP PHARMACEUTICAL PRODUCTS,  )
     INC., et al.,                 )
24        Defendants.              )
25
```

## Page 3

```
 1        ORAL AND VIDEOTAPED DEPOSITION OF DENNIS WALKER,
 2   produced as a witness at the instance of the
 3   Plaintiffs, and duly sworn, was taken in the
 4   above-styled and numbered causes on the 5th of April,
 5   2007, from 8:34 a.m. to 6:10 p.m., before CYNTHIA
 6   VOHLKEN, CSR in and for the State of Texas, reported
 7   by machine shorthand, at the offices of Stetler &
 8   Duffy, Ltd., 11 S. LaSalle Street, Suite 1200,
 9   Chicago, Illinois, pursuant to the Texas Rules of
10   Civil Procedure and the provisions attached
11   previously.
```

## Page 4

```
 1                     A P P E A R A N C E S
 2   FOR THE PLAINTIFF THE STATE OF TEXAS:
 3       Mr. Raymond C. Winter
         Assistant Attorney General
 4       Office of the Attorney General
         State of Texas
 5       Post Office Box 12548  (78711-2548)
         300 W. 15th Street, 9th Floor
 6       Austin, Texas  78701
 7   FOR THE PLAINTIFF UNITED STATES OF AMERICA:
 8
         Mr. Gejaa Gobena
 9       Trial Attorneys
         Commercial Litigation, Fraud
10       U.S. Department of Justice
         Civil Division
11       601 D Street, N.W.
         Patrick Henry Building - 9133
12       Washington, D.C.  20004
13
     FOR THE PLAINTIFF THE STATE OF ARIZONA AND MDL
14   PLAINTIFFS:
15       Ms. Amber M. Nesbitt
         Wexler Toriseva Wallace LLP
16       One North LaSalle Street, Suite 2000
         Chicago, Illinois  60602
17
18   FOR THE RELATOR:
19       Mr. James Joseph Breen
         The Breen Law Firm, P.A.
20       P. O. Box 297470
         Pembroke Pines, Florida 33029-7470
21
22   FOR THE DEFENDANTS ABBOTT LABORATORIES INC. AND
     HOSPIRA, INC.:
23
         Ms. Tina M. Tabacchi
24       Jones Day
         77 West Wacker, Suite 3500
25       Chicago, Illinois  60601-1692
```

## Page 5

```
 1   FOR THE WITNESS:
 2       MR. DAVID J. STETLER
         Stetler & Duffy, Ltd.
 3       11 South LaSalle Street, Suite 1200
         Chicago, Illinois  60603
 4
     ALSO PRESENT:
 5
         John Maloy Lockwood, M.D.
 6          Ven-A-Care of the Florida Keys
         Mr. Bruce Witty, Videographer
 7
 8
 9             *-*-*-*-*
```

Page 282

1  customer with the information they needed.
2      Q.  All right.  So if a customer asked you, "I
3  want to figure out what the spread is, so give me the
4  average wholesale price and the contract price so I
5  can figure out what the spread is," you would just
6  give the customer the information?
7          MS. TABACCHI:  Object to the form.
8      A.  No.
9      Q.  (BY MR. BREEN)  Okay.  Because that would
10 violate what Mr. Ward had instructed you?
11         MS. TABACCHI:  Object --
12     A.  Yes.
13     Q.  (BY MR. BREEN)  Okay.  So this follow-up
14 conversation you had with Mr. Ward, what additional
15 information did he provide to you that he had not
16 provided following your memo of August 7th, 1996?
17     A.  Well, that -- things that elevate it to the
18 point where there were -- there was an actual request
19 for document production and was related to this issue
20 of spread between AWP and contract price.
21     Q.  Now, when he said there was a request for
22 documents, did he -- did you have any idea what he
23 meant by a request for documents?  Request by who, for
24 example?  Did you have any idea?
25         MS. TABACCHI:  Object to the form.

Page 283

1      A.  Yeah.  The request was from corporate.
2      Q.  (BY MR. BREEN)  From corporate.
3      A.  Yes.
4      Q.  Okay.  And you had -- you had no idea --
5  strike that.
6          Did you have any idea from your
7  conversation with Mr. Ward at that time that the
8  request originated from some entity or authority
9  outside of Abbott?
10     A.  No.
11     Q.  All right.  So what did he explain to you
12 other than corporate wants -- wants documents?
13     A.  I think I -- he said that corporate wanted
14 documents that had anything that related to the issue
15 of AWP -- spread between AWP and contract price.
16     Q.  And did he tell you why?
17     A.  That it was -- it was a hot or -- or -- it
18 was a current topic that there was -- that was being
19 looked into.  Something to that effect.  I don't know.
20     Q.  And did you -- did you have -- were you at
21 all curious about what -- what -- what -- what the
22 issue was or what the problem was?
23     A.  No.
24     Q.  Okay.  Now, let me show you what's going to
25 be marked as Exhibit 577.  Appears to be dated

Page 284

1  February 14, 1997 on Abbott stationary to Michael
2  Fabrizi, Division Vice President, Automated Health
3  Technologies.  Do you see that?
4      A.  Yes.
5      Q.  Appears to be sent by you.  Is that your
6  signature on this document?
7      A.  It appears to be, yes.
8      Q.  Do you recall entering into an agreement with
9  Automated Health Technologies?
10     A.  Yes.
11     Q.  Regarding two new product lines of your
12 FirstChoice injectable drugs?
13     A.  Yes.
14     Q.  Do you recall entering an agreement to sell
15 Acyclovir to -- or through Automated Health
16 Technologies?
17     A.  Yes.
18     Q.  Was Automated Health Technologies a group
19 purchasing organization?
20     A.  Yes.
21         MR. BREEN:  Okay.  Now, let's have this
22 one marked as the next exhibit.
23         MR. WINTER:  578.
24     Q.  (BY MR. BREEN)  This is going to be 578.  And
25 can you tell us what Exhibit 578 is?  It appears to be

Page 285

1  dated April 28, 1997.
2      A.  It's just a contract.  As it says, revision
3  or -- or contract notice.
4      Q.  Okay.  Are they lowering your prices on
5  Acyclovir to Automated Health Technologies' members?
6      A.  Yes, that appears to be the case.
7      Q.  Okay.  Now --
8          MR. WINTER:  579.
9      Q.  (BY MR. BREEN)  Let me show you what's been
10 marked as Exhibit 579.  It appears to be a facsimile
11 cover -- two-page document dated -- Bates labeled
12 TXABT 15585 and 15586.  It appears to be a two-page
13 fax that purports to be from you to Michael Fabrizi.
14 Do you see that?
15     A.  Yes.
16     Q.  Now, do you recall -- do you recall ever
17 seeing this document before?
18     A.  Yes.  I created it, so, yes, I would have
19 seen it before.
20     Q.  And you see under comments there, "F.Y.I.,
21 Zack from Venacare Pharmacy (305) 292-1635 requested
22 this information.  Please call if you have any
23 questions."  Do you see that?
24     A.  Yes.
25     Q.  Why would you be telling Mr. Fabrizi that

Page 286

1  Zack from Ven-A-Care Pharmacy requested information?
2      A.  Because Ven-A-Care was -- my understanding,
3  anyway, was a member of Automated Health Technologies.
4      Q.  Okay.  Do you recall having a conversation
5  with Zack from Ven-A-Care Pharmacy?
6      A.  Yes.  Well, I don't recall the conversation,
7  but I'm referencing here that he did call and request
8  this information.
9      Q.  Okay.  Now -- and then if you go to the next
10 page, a copy of the fax that -- a copy of the document
11 that you faxed to Mr. Fabrizi and appears to be
12 another facsimile cover sheet.  Do you see that?
13     A.  Yes.
14     Q.  This one is to Zack, Ven-A-Care Pharmacy,
15 from Dennis Walker.  Do you see that?
16     A.  Yes.
17     Q.  Dated 5/30/1997.  And if you go down a little
18 bit further it says, "Comments: Listed below is your
19 Automated Health Technologies price for Acyclovir and
20 the A.W.P. information you requested.  Please call if
21 you have any questions."  Do you see that?
22     A.  Yes.
23     Q.  And so did you communicate to Mr. Bentley
24 that his price for Acyclovir 500 milligrams was $30
25 and the AWP was $95?

Page 287

1          MS. TABACCHI:  Object to the form.
2      A.  I don't know Mr. Bentley.
3      Q.  (BY MR. BREEN)  Did you communicate to Zack
4  at Ven-A-Care Pharmacy on or about May 30th, 1997 that
5  Ven-A-Care's price for Acyclovir 500 milligrams was
6  $30 when the AWP was $95?
7      A.  Yes.  I sent him the information he
8  requested.
9      Q.  Okay.  Did you communicate on that same fax
10 that the price for Acyclovir one gram was $60 and the
11 AWP was $190?
12     A.  Yes.  That's additional information he
13 requested.
14     Q.  What is the spread on the 500 milligram?
15         MS. TABACCHI:  Object to the form.
16     A.  What is the spread on the 500 milligram?
17     Q.  (BY MR. BREEN)  Yes.  Of Acyclovir on the
18 document in front of you.
19         MS. TABACCHI:  Object to the form.
20     A.  You're asking me what is the difference
21 between the contract price and the AWP price?
22     Q.  (BY MR. BREEN)  Was that your understanding
23 of what the AWP spread was in May of 1997, the
24 difference between AWP and the contract price?
25     A.  That's my understanding.

Page 288

1      Q.  Okay.  So based upon your understanding, what
2  was the spread on the Acyclovir 500 milligram based on
3  the information you communicated to Zack at Ven-A-Care
4  Pharmacy on May -- on or about May 30, 1997?
5          MS. TABACCHI:  Object to the form.
6      A.  Well, the difference between the numbers here
7  would be $65.
8      Q.  (BY MR. BREEN)  Okay.  And what was the
9  spread on the Acyclovir one gram?
10         MS. TABACCHI:  Object to the form.
11     A.  The difference between the numbers here would
12 be $130.
13     Q.  (BY MR. BREEN)  Okay.  Now, would you agree
14 that the price reduction on Acyclovir provided to
15 Automated Health Technologies' customers that appears
16 in Exhibits -- that appears in Exhibit 578, would you
17 agree that price reduction widened the spread for
18 Automated Health Technologies' members?
19         MS. TABACCHI:  Object to the form.
20     Q.  (BY MR. BREEN)  Correction.  Automated
21 Healthcare Technologies' members?
22         MS. TABACCHI:  Still object to the form.
23     A.  The price reduction does -- does improve the
24 math.
25     Q.  (BY MR. BREEN)  Right.

Page 289

1      A.  Yes.
2      Q.  Makes the spread bigger.
3          MS. TABACCHI:  Object to the form.
4      A.  The mathematical difference is -- is greater
5  with this price reduction.
6      Q.  (BY MR. BREEN)  Okay.  So do you recall
7  telling Mr. Bentley in a telephone conversation on May
8  30, 1997 that --
9          MR. STETLER:  Counsel, not to quibble,
10 but I think he said he doesn't know Bentley.  So maybe
11 if you say Zack.
12     Q.  (BY MR. BREEN)  I'm sorry.  Do you recall
13 telling Zack --
14         MR. STETLER:  We're assuming.
15     Q.  (BY MR. BREEN)  -- at Ven-A-Care?
16         MR. BREEN:  Thank you, Counsel.
17         MR. STETLER:  That's all right.
18         MR. BREEN:  That was --
19         MR. STETLER:  I just didn't want to
20 start over again.
21         MR. BREEN:  I know.
22     Q.  (BY MR. BREEN)  Do you recall -- let me
23 rewind.
24         Do you recall telling Zack at Ven-A-Care
25 on May 30, 1997 in a telephone conversation that

Page 290

1  Abbott's price reduction for Acyclovir was, quote,
2  widening the spread for providers?
3     A.  No.
4     Q.  You don't recall that or -- or -- I mean, do
5  you even recall having a conversation with Zack from
6  Ven-A-Care on May 30, 1997?
7         MS. TABACCHI:  Object to the form.
8     A.  Well, this fax refreshed my memory to the
9  fact that I did have a conversation with him, but
10 under -- I do not recall saying anything with regard
11 to widening the spread on any products --
12    Q.  (BY MR. BREEN)  Okay.
13    A.  -- in that conversation or any subsequent
14 conversations.
15    Q.  What do you recall about the conversation
16 with Mr. Bentley on May 30, 1997?
17        MS. TABACCHI:  Object to the form.
18    A.  From what this -- this fax tells me, he
19 requested the information, list number, the product,
20 the each price and the AWP each, and I provided him
21 with that information.
22    Q.  (BY MR. BREEN)  Okay.  Let me ask -- let me
23 ask the question this way.  And I understand you've
24 got the document in front of you, which is -- I can't
25 remember exhibit numbers.  What exhibit is that?

Page 291

1     A.  579.
2     Q.  579.  Okay.  But my -- and I will represent
3  to you that document was provided by Abbott,
4  apparently from Abbott's business records, to us in
5  this -- in this litigation.  And do you have a present
6  recollection of ever seeing Exhibit 579 before today?
7  In other words, sitting here today, do you have a
8  recollection of having seen that document before?
9         MS. TABACCHI:  Object to the form.
10    A.  I can vaguely recall around this time
11 sending -- sending a fax to Mr. Fabrizi and to this
12 person called Zack.
13    Q.  (BY MR. BREEN)  Okay.  Do you have a present
14 recollection of ever having produced Exhibit 579, that
15 document, that two-page document, in response to
16 Mr. Ward's request that you assemble information at
17 some time after August of 1996?
18    A.  No.
19    Q.  Okay.  So before today when was the last time
20 you saw Exhibit 579?
21    A.  Whenever I sent this fax.
22    Q.  Okay.
23    A.  Or whenever I produced this document.
24    Q.  When you produced this document.
25    A.  Assuming that I did produce it, yes.

Page 292

1     Q.  Do you have a recollection of ever having
2  produced it?
3         MS. TABACCHI:  Object to the form.
4     A.  You said it -- it came from Abbott and that's
5  by the Bates number, Bates stamp number.  My guess
6  would be that Abbott received it when I tendered all
7  the documents that were requested.
8     Q.  (BY MR. BREEN)  Okay.  But you recall
9  tendering documents only one time when you were a
10 national account manager, correct?
11    A.  Yes.
12    Q.  And then would that mean that if you had been
13 the one that tendered Exhibit 579 when Abbott
14 requested documents, would that mean that Mr. Ward
15 asked for those documents from you at some point after
16 May 30, 1997?
17        MS. TABACCHI:  Object to the form.
18    A.  If I were the one that tendered this, yes.
19    Q.  (BY MR. BREEN)  Okay.  Because that -- would
20 Exhibit 579 be the kind of document you would have
21 taken with you to your new job?
22    A.  No.
23    Q.  Okay.  So if you tendered it, that would mean
24 that you were never asked for documents until sometime
25 after May 30, 1997, correct?

Page 293

1         MS. TABACCHI:  Object to the form.
2     A.  That would be an implication, yes.
3     Q.  (BY MR. BREEN)  Well, I want to make sure
4  about this because you testified earlier that you were
5  asked for documents one time when you were a national
6  account manager.  Do you recall that?
7     A.  Yes.
8     Q.  Okay.  And you know that that was at some
9  point in time after August 6th of 1996, correct?
10    A.  Yes.
11    Q.  All right.  Because that was the date that
12 Mister -- of your memo where Mr. Ward said, "Don't
13 discuss this anymore," right?
14    A.  Yes.
15    Q.  Okay.  You -- but sitting here today, you
16 can't recall how long -- how much time after August of
17 1996 you were asked to produce documents, do you?
18    A.  I believe I said it was in late '96 or '97.
19    Q.  Okay.
20    A.  Yeah.
21    Q.  But you have -- sitting here today, you have
22 no way of knowing if it was before or after May 30,
23 1997, do you?
24    A.  No.
25    Q.  Are there any records you could look at or

74 (Pages 290 to 293)