# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL CLASS CASES | Judge Patti B. Saris |

## CLASS COUNSEL'S SUBMISSION REGARDING MR. HAVILAND'S PARTICIPATION AS CO-LEAD COUNSEL

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ....................................................................................................1

II.     RELEVANT FACT CHRONOLOGY ....................................................................2

        A.      Mr. Haviland Made Misrepresentations To The Court In The
                *Lupron* Proceedings ..................................................................................2

        B.      Mr. Haviland Made Misrepresentations To The Court During AWP MDL
                Remand Proceedings....................................................................................3

        C.      Class Counsel Agreed To The Participation Of Kline & Specter In The AWP
                MDL Class Actions, And Not Don Haviland Independently ..................................4

        D.      Mr. Haviland Left The Employ Of K&S And Sought Appointment As An
                Independent Co-Lead.................................................................................5

        E.      Mr. Haviland Made Misrepresentations To The Court In Association With
                The AstraZeneca Proposed Settlement ...................................................6

        F.      Another Court Recently Enjoined Mr. Haviland From Engaging In Further
                Attempts To Disrupt A Pending Class Action.........................................9

        G.      In An Attempt To Force An Election Of Counsel Here, Mr. Haviland
                Once Again Employed Misrepresentations And Made A Final Bid To
                Take Over As Sole Lead "Consumer" Counsel......................................13

        H.      At A Time When Mr. Haviland's Lead Counsel Petition Was Pending
                With This Court, He Decided To Seek A Nationwide Class In A
                Competing New Jersey Action .............................................................15

III.    MR. HAVILAND IS UNFIT TO SERVE AS CO-LEAD COUNSEL............................18

IV.     CONCLUSION...................................................................................................21

# I.      INTRODUCTION

During the hearing on September 11, 2007, the Court requested Class Counsel to submit

a memorandum regarding the conduct of Mr. Haviland and how it reflects on Mr. Haviland's

fitness to serve as Co-Lead Counsel in this consolidated action.  The Court expressed concerns

about whether Mr. Haviland can be trusted.  In this memorandum, Class Counsel submit factual

evidence bearing on this issue.  This evidence reveals, among other things, that Mr. Haviland

has:

- Made "***deliberate*** misrepresentations and falsehoods" in the *Lupron* proceedings before Judge Stearns and otherwise failed to respect Judge Stearns' authority to manage that case.

- Misrepresented during remand proceedings in this Court that he had never spoken with the individual defendants about consent to removal, when the record demonstrated and the Court found that he clearly had.

- Attempted to force a Class Counsel election in the *Bridgeport Fire* class action and was enjoined from doing so.

- Misrepresented to Class Counsel during the AstraZeneca mediation that his client had finally agreed to the terms of the Proposed Settlement and then engaged in an elaborate cover-up afterward.

- In an affront to this Court's authority, Class Counsel and the Classes themselves, manipulated his clients into signing nearly identical declarations threatening to withdraw as class representatives unless the Court appointed Mr. Haviland as Co-Lead Counsel.

- Misrepresented to the *Bridgestone Fire* court that Mr. Haviland was Lead Counsel in this action at a time when he was not, in addition to making various other misrepresentations in the *Bridgestone Fire* contested class counsel hearings.

- Fraudulently accrued time and expenses to the AWP case that should have been assigned to potential cases that Mr. Haviland was hiding from his employer, Kline & Specter.

- Misrepresented to the New Jersey court that Mr. Haviland was Lead Counsel in this action at a time when he was not and, in fact, the issue was one of heated controversy in this Court.

- Misrepresented to the Court that Mr. Haviland's original complaint in the New Jersey action sought a nationwide class when it did not.

- Sought certification of a competing, national TPP class in the New Jersey action against overlapping defendants in this consolidated AWP action, and at a time when he had a motion pending to become Co-Lead Counsel.

- Publicly disclosed information that contained confidential, attorney-client privileged communications, as well as confidential information about the AstraZeneca mediation proceedings.

## II.    RELEVANT FACT CHRONOLOGY

### A.    Mr. Haviland Made Misrepresentations To The Court In The *Lupron* Proceedings

1.    In *In re Lupron® Mktg. & Sales Practices Litig.*, Judge Stearns had to enjoin Mr. Haviland and his prior law firm, Kline & Specter ("K&S"), from engaging in deceptive conduct detrimental to the class.  Mr. Haviland, who had state cases pending in New Jersey and North Carolina, intervened in the *Lupron®* action for purposes of filing objections to a proposed settlement.  Judge Stearns granted preliminary approval and authorized notice to the class, after which Mr. Haviland set up a website that he then used, through the deployment of deceptive tactics, to encourage class members to opt-out of the settlement.  As Judge Stearns explained:

> The court has undertaken its own review of the K&S websites, www.lupronlaw.com and www.lupronclass.com.  The court finds that the banner welcoming potential members to "the class" and inviting Lupron(R) purchasers "to register for the Lupron class action," is blatantly misleading and deliberately intended to deceive potential plaintiffs into believing that the websites are either court-sanctioned or sponsored by the MDL plaintiffs. . . .  K&S and Attorney Haviland are perfectly free to criticize the proposed settlement agreement. However, they are not privileged to engage in deceptive conduct manipulating the very consumers they claim to protect.

2004 U.S. Dist. Lexis 26461, at *5-6 (D. Mass. Dec. 21, 2004).  Judge Stearns ordered Haviland to modify the website.  *Id.* at *6.

2.    Mr. Haviland had also sent "Dear Client" letters to every person that had registered on the website, seeking their agreement to have Haviland represent them by, among

other things, "present[ing] a distorted picture of the MDL settlement, including the patently false statement that MDL claimants would be paid only 3 cents for each dollar of their actual damages." *In re Lupron® Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 83 (D. Mass. 2005). "Having found the 'Dear Client' letter to contain a number of ***deliberate*** misrepresentations and falsehoods," Judge Stearns then ordered that K&S send a curative notice correcting the misinformation. *Id.* (emphasis added). Judge Stearns also sent letters to the presiding judges in Mr. Haviland's state court actions, advising those judges of the proposed settlement and notice campaign in the MDL action and of "the misinformation disseminated by [K&S]," and requesting that the judges, as a matter of comity, defer ruling on pending motions until Judge Stearns could rule on the fairness of the proposed MDL settlement. *Id.*

3.     Mr. Haviland then filed a motion to disqualify Judge Stearns, claiming that he had "become fully engaged with the MDL litigants in their efforts to deprive [Haviland's clients] of their timely day in court." *Id.* Judge Stearns denied the motion and ultimately approved the settlement after considering all objections thereto. *Id.* at 98. Mr. Haviland and his prior firm agreed to become part of the overall settlement and did not appeal this order.

**B.     Mr. Haviland Made Misrepresentations To The Court During AWP MDL Remand Proceedings**

4.     As the Court may recall, Mr. Haviland's AWP New Jersey action was once before the Court on a motion to remand. One of the central issues associated with that motion was whether the plaintiff had fraudulently joined individual doctor defendants in order to preclude federal jurisdiction over the action. The defendants had accused Mr. Haviland of, during settlement talks with the doctor defendants, encouraging the doctors to object to removal.

5.     In response, Mr. Haviland submitted a sworn declaration stating that "the subject matter of any defendants' consent to removal (or lack thereof) was never discussed as part of any

- 3 -

settlement negotiation on behalf of either the Plaintiff or the Class." Affidavit of Donald E. Haviland, Jr. in Support of Supplemental Brief in Support of Remand by Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, in Response to Court's Directives of January 27, 2006, and in Response to Order of February 2, 2006, ¶ 8 (Dkt. No. 2130) (attached as Exh. 1 to the Declaration of Steve W. Berman in Support of Class Counsel's Submission Regarding Mr. Haviland's Participation as Co-Lead Counsel ("Berman Decl.")).

6.      However, as the Court found, the record in the case revealed that Mr. Haviland in fact had such discussions:

> ***It is true that Local 68 tried to persuade the physician defendants to refuse to consent***. Before the notice of removal, Local 68's counsel sent Antoun's counsel and Hopkin's counsel a proposed memorandum of understanding; discouraged Hopkin's counsel from letting this case get sucked into the vortex of federal MDL jurisdiction; and proposed language opposing removal, which Berkman's attorney used in his July 16, 2003 letter to the district court for the District of New Jersey.

April 14, 2006 Memorandum and Order at 18-19 (Dkt. No. 2423) (emphasis added); *see also id.* at 10-11 (describing discussions between Mr. Haviland and counsel for individual physician defendants with respect to lack of consent to federal jurisdiction, including citation to a July 8, 2003 letter from Haviland suggesting "language we would propose to be put in a letter to the federal court and plaintiff's counsel indicating your lack of consent to federal jurisdiction . . . .").

7.      Although the Court ultimately found that the plaintiff had not fraudulently joined the individual physician defendants, this serves as perhaps the first example of Mr. Haviland being less than candid with this Court in sworn testimony.

**C.      Class Counsel Agreed To The Participation Of Kline & Specter In The AWP MDL Class Actions, And Not Don Haviland Independently**

8.      Several years into the MDL class action, Kline & Specter ("K&S"), where Mr. Haviland was an associate, asked to join the case and become an additional Co-Lead Counsel.

K&S offered to contribute financially on a going forward basis equal to the other Co-Lead Counsel.  It was also represented that K&S had a large number of consumer plaintiffs willing to serve as named class representatives.  In addition, partner Shannin Specter, an experienced trial lawyer, offered to help try the case.  For these reasons, as well as trying to avoid the morass created in the *Lupron* proceeding, Class Counsel agreed to K&S's participation as a Co-Lead. *See* Declaration of Steve W. Berman in Support of Class 1 AstraZeneca Settlement and in Response to the Haviland Declaration ("Berman Settlement Decl."), ¶¶ 6-7 (Dkt. No. 4511).

9.      In its January 30, 2006 class certification order (Dkt. No. 2097-1), the Court appointed Kline & Specter Co-Lead Counsel, along with Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, P.C.; Hoffman & Edelson; and the Wexler Firm.

10.     K&S and other Co-Counsel worked reasonably well together until shortly before trial when K&S withdrew from the case after K&S terminated Mr. Haviland's employment. Berman Settlement Decl., ¶ 7.

**D.      Mr. Haviland Left The Employ Of K&S And Sought Appointment As An Independent Co-Lead**

11.     On September 7, 2006, K&S terminated Mr. Haviland's employ with K&S.  Oct. 11, 2006, Declaration of Thomas R. Kline, Esquire, submitted in the *Lupron* proceeding ("Kline Decl."), ¶ 11 (attached as Exh. 2 to the Berman Decl.).

12.     Mr. Haviland then began negotiating with Co-Lead Counsel to assume K&S's role as a Co-Lead.  During the pendency of negotiations, and without Class Counsel's authorization, Mr. Haviland filed a Motion for Amendment of Case Management Order No. 1 and Consolidated Order Re: Motion for Class Certification (Dkt. No. 3947-1).  In the motion, Hr. Haviland misleadingly purported to speak for all of the Plaintiffs and requested that CMO No. 1 be amended to reflect the Haviland Law Firm as a Chair of the Lead Counsel Committee.

13.     Class Counsel opposed the motion, explaining that Mr. Haviland had not offered to fund the case at the same level as Co-Leads, had not invested the years that each Co-Lead had to gathering evidence from millions of documents and hundreds of witnesses via discovery and, consequently, did not deserve the position.  *See* Class Counsels' Response to Motion for Amendment of Case Management Order No. 1 and Consolidated Order Re: Motion for Class Certification (Dkt. No. 3993).

14.     By this time, Mr. Haviland had stopped contributing to the meaningful prosecution of these cases.  For instance, Haviland contributed little to the Class 2/3 trial when compared with the efforts of Co-Lead Counsel.  Berman Settlement Decl., ¶¶ 3-4, 22. Furthermore, Mr. Haviland did little substantive pre-trial work for the AstraZeneca trial.  While Class Counsel was busy designating trial exhibits and deposition testimony, preparing the opening statement and witness outlines, and preparing the proposed jury instructions and associated briefing, Haviland did little.  *Id.*, ¶ 11.  Despite making a big effort to attend as many Court hearings as possible in Boston and lodge an appearance to make it ***appear*** like he was a key member of the prosecution, Mr. Haviland had not been pulling his weight either with substantive work or in shouldering the burden of cost sharing.  *Id.*, ¶ 4.[1]

**E.     Mr. Haviland Made Misrepresentations To The Court In Association With The AstraZeneca Proposed Settlement**

15.     In the negotiations leading up to the Proposed AstraZeneca Settlement, Mr. Haviland expressed concerns on certain issues.  However, as three members of the Co-Lead Counsel team have repeatedly testified under oath, as the AstraZeneca mediation on May 5th was

---

[1] Emblematic of the games that Mr. Haviland is fond of playing, Mr. Haviland sought to begin remedying his firm's failure to shoulder the financial burdens of this case by sending a substantial cost-sharing check to Co-Lead Counsel only ***after*** the Court questioned Mr. Haviland's fitness to serve as a Co-Lead at the September 11 hearing.

winding down and at a time when it appeared that an agreement to settle was close, Mr. Haviland *declared that his client, Joyce Howe, had approved of the settlement terms*.[2]

16.     On the morning of the preliminary approval hearing on May 22, 2007, without any prior notice to Class Counsel, and despite possessing since May 4th the Memorandum of Understanding containing the essential terms of the proposed settlement, Mr. Haviland filed an objection to preliminary approval of the AstraZeneca Settlement (Dkt. No. 4243).  Without the support of a sworn declaration, Mr. Haviland represented, *inter alia*, that Ms. Howe never approved of the Proposed Settlement.  On the next day, May 23, 2007, that objection was filed as a motion for reconsideration of the preliminary approval order (Dkt. No. 4250).  The Court requested that Mr. Haviland support his averments by sworn declaration.

17.     Several weeks later, and after the Court during the BMS status hearing on July 3 once again requested that Mr. Haviland support his statements by sworn declaration (*see* July 3, 2007, Hearing Tr. at 38), Mr. Haviland submitted to the Court on July 13 the Declaration of Donald E. Haviland, Jr., in Response to Court Directive Concerning the AstraZeneca Settlement ("Haviland Decl. I") (Dkt. No. 4460).  This Declaration, which contained confidential, attorney-client privileged communications, as well as confidential information about the mediation proceedings, was filed under seal along with a Notice of Submission to Court of Declaration and Request for Determination of Proprietary Filing Under Seal (Dkt. No. 4460).  Disclaiming that

---

[2] *See* Declaration of Marc H. Edelson in Support of Class Counsel's Opposition to Motion of Named Class Representative M. Joyce Howe for Reconsideration of Preliminary Approval of Proposed Nationwide Settlement With AstraZeneca ("Edelson Decl."), ¶¶ 4-5 (Dkt. No. 4288); Declaration of Kenneth A. Wexler in Support of Class Counsel's Opposition to Motion of Named Class Representative M. Joyce Howe for Reconsideration of Preliminary Approval of Proposed Nationwide Settlement With AstraZeneca ("Wexler Decl."), ¶ 5 (Dkt. No. 4287); Declaration of Jeffrey L. Kodroff in Support of Class Counsel's Opposition to Motion of Named Class Representative M. Joyce Howe for Reconsideration of Preliminary Approval of Proposed Nationwide Settlement With AstraZeneca ("Kodroff Decl."), ¶ 5 (Dkt. No. 4286); *see also* Declaration of Marc H. Edelson in Support of Class 1 AstraZeneca Settlement and in Response to the Haviland Declaration ("Edelson Decl. II"), ¶ 6 (Dkt. No. 4514); Declaration of Jeffrey Kodroff in Support of Class 1 AstraZeneca Settlement and in Response to the Haviland Declaration ("Kodroff Decl. II"), ¶ 4 (Dkt. No. 4512); Declaration of Kenneth A. Wexler in Support of Class 1 AstraZeneca Settlement and in Response to the Haviland Declaration ("Wexler Decl. II"), ¶ 4 (Dkt. No. 4513).

he ever conveyed to Class Counsel his client's approval to the settlement terms at the end of the mediation, Mr. Haviland's Declaration contradicts the sworn testimony *of no less than three lawyers serving as Co-Lead Counsel*.

18.    Mr. Haviland also called the claims-made aspect of the Proposed Settlement "unprecedented in similar drug pricing litigation . . . ."  Haviland Decl. I, ¶ 8.  This is false.  As the Court is aware, a very similar claims process is being employed for the GSK settlement.  And as Special Master McGovern recently concluded in reporting to the Court on the fairness of the GSK settlement, a claims process involving proof of payment is "typical of this type of consumer settlement."  Report of the Special Master to the Court at 5; *see also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 236 F. Supp. 2d 445 (E.D. Pa. 2002) (utilizing claims process in which claim had to be certified by a cardiologist or cardiothoracic surgeon); MANUAL FOR COMPLEX LITIGATION, FOURTH at 331 (2004) ("Class members must usually file claims forms providing details about their claims and other information needed to administer the settlement. . . .  Verification of claims forms by oath or affirmation under 28 U.S.C. § 1746 may be required, and it may be appropriate to require substantiation of the claims (*e.g.*, through invoices, confirmations, or brokers' records).").  Indeed, even the Court itself envisioned that a claims process would follow any trial judgment in favor of the class.  *See* April 11 Pre-Trial Conference Hearing Tr. at 14-15.

19.    Because of the possibility of a reverter, Mr. Haviland insists that the AstraZeneca claims-made settlement proposal is "completely different from the process of 'claims administration'" that he previously supported for GSK.  Haviland Decl. I at 4 n.6.  It is not "completely different;" in both settlements, the Class Member is required to file a claim form in order to participate in the monetary benefits provided by the settlement.  Further, the

- 8 -

AstraZeneca Settlement is similar to that used in *Lupron*, but simplified, and Mr. Haviland ultimately accepted the claims process and reversion in *Lupron*.  Thus, Haviland supported a claims-made settlement in this very litigation and in a related case before and is now taking an inconsistent position.

20.     Mr. Haviland's newly-found position is that much more vexing given the excellent benefits of the Proposed AstraZeneca Settlement.  At the time that it was negotiated, the Proposed Settlement was structured so that all Class Members making claims would receive at least their out-of-pocket damages if not double their damages, including prejudgment interest. Now, against the 30% yardstick backdrop, most Class Members could very well receive **triple** the actual damages that they have sustained, depending on the aggregate claims rate.

21.     Mr. Haviland's quest for Co-Lead Counsel status since being asked to leave Kline & Specter has colored Haviland's arguments.  When the GSK settlement was consummated at a time when Haviland was part of the Lead Counsel structure under the umbrella of Kline & Specter, he did not assert the type of objections that he now brings.  Mr. Haviland's change of course was effected only after he was asked to leave Kline & Specter, failed to carry the weights and burdens of Class Counsel leadership and then, consequently, realized that he was no longer welcome as a Co-Lead.

**F.     Another Court Recently Enjoined Mr. Haviland From Engaging In Further Attempts To Disrupt A Pending Class Action**

22.     According to Kline & Specter, Mr. Haviland engaged in unethical activity in association with a certified class in the *Bridgeport Fire Class Action Litigation* pending before Judge Steve T. O'Neill in the Court of Common Pleas of Montgomery County, Pennsylvania. Mr. Haviland, while a K&S employee, allegedly sent a solicitation letter to the class representatives on Haviland Law Firm ("HLF") stationery containing "false and misleading

- 9 -

information" in violation of Mr. Haviland's duties to the class and his employment contract with

Kline & Specter.  Kline Decl., ¶ 11 (attached as Exh. 2 to the Berman Decl.).

23.     After an emergency hearing on September 8, 2006, the court issued an order

decreeing that "Donald Haviland, Esquire and members of his firm shall not solicit Class

Members nor shall they attempt to have Class Members make an election of Class Counsel."

Kline Decl., ¶ 12 & Exh. A thereto.  Judge O'Neill also issued a letter "To Whom It May

Concern" stating:

> Please be advised that in the above referenced Bridgeport Fire
> Litigation Class Action, the firm of Kline & Specter and High Swartz
> Roberts & Seidel remain as Class Counsel.  No "election" of new class
> counsel should be occurring or permitted.  No changes in Class
> Counsel can occur without Order of this Court.

Kline Decl., ¶ 12 & Exh. B thereto.[3]

24.     Undeterred by the Court's rejection of his "election" forms, Mr. Haviland then

promptly tried to enter his Appearance as counsel on behalf of the lead plaintiffs and filed a

motion to be appointed Lead Counsel.  That motion resulted in a four day hearing before the

court, in which Mr. Haviland attacked Kline & Specter's ability to lead the Class and offered

himself as the best choice to be class counsel.  During those proceedings, various

misrepresentations by Mr. Haviland were revealed.

25.     In a November 2006 filing, Mr. Haviland misrepresented that his new firm was

already Co-Lead Counsel in the AWP MDL at a time when he was most definitely not:  "HLF is

Co-Lead Counsel to a certified nationwide class action case of over 8 million Medicare

beneficiaries in the *In re: AWP Litigation* pending in Boston federal court."  Memorandum in

Support of Petition of Donald E. Haviland, Jr., Esquire and the Haviland Law Firm, LLC for

---

[3] It appears that Mr. Haviland's departure from K&S has been marked by a fair degree of acrimony, and K&S
has brought suit against Mr. Haviland.  Kline Decl., ¶ 13.

Appointment as Lead Counsel for the Class or in the Alternative, Class Counsel at 5 (attached as

Exh. 3 to the Berman Decl.).

26.     In Exhibit 1 to that submission, as part of HLF's Firm Biography, Haviland

grossly overstated his role in the AWP litigation:

> A portion of the case involving only Massachusetts purchasers is
> currently being tried in a bench trial by Mr. Haviland and other Lead
> Counsel lawyers.  (*See, e.g.,* Pretrial Order dated August 11, 2006
> [attached hereto as Exhibit "A"]; *see also* excerpts of trial transcript
> [attached hereto as Exhibit "B"]).  A second trial, involving the
> certified nationwide class of over 8 million consumers, is set to begin
> March 7, 2007 with Mr. Haviland serving as one of the principal Lead
> trial counsel.

*Id.* at Exh. 1.  As the Court knows, Mr. Haviland did not try the bench proceeding and played but

a negligible role.  The Pretrial Order attached as Exhibit A to the HLF Firm Biography does not

mention Mr. Haviland or his firm, and the document appearing at Exhibit B thereto is the cover

page from Day Four's proceedings merely listing appearances by counsel.  Moreover, there was

simply no plan existing outside of Mr. Haviland's own head for Mr. Haviland to be principal trial

counsel after conclusion of the bench trial.  Indeed, Mr. Haviland is not qualified to be any sort

of a lead trial counsel in this case and did not participate in AstraZeneca and BMS trial

preparations.

27.     In addition, evidence was introduced demonstrating that, while an associate at

Kline & Specter, ***Mr. Haviland inappropriately billed attorney time and numerous expenses to***

***the AWP case (among others) while he was actually engaged in personal matters or***

***investigating potential new cases***.  This was apparently discovered when Mr. Haviland's time

and billing records were reviewed after his departure from K&S.  *See* Dec. 5, 2006 *Bridgeport*

Tr. at 134-157 and Class Counsel Exhibit 16 thereto (attached as Exh. 4 to the Berman Decl.).

- 11 -

28.     The *Bridgeport Fire* hearings also produced evidence of misrepresentations that Mr. Haviland has made about other topics.  Thus, it came to light that Mr. Haviland's claims, on his website, that he was admitted to the Bar In the State of North Carolina and the District of Massachusetts were false, as Haviland was only admitted *pro hac vice* in those jurisdictions.  *See* Dec. 1, 2006 *Bridgeport* Tr. at 256-58 (attached as Exh. 4 to the Berman Decl.).  Mr. Haviland's claim to be a lead counsel in the New Jersey state court *Vioxx* litigation was also revealed to be incorrect.  *Id.* at 260-61.  And Mr. Haviland incorrectly stated that he was a partner at his former firm, Levin Fishbein Sedran & Berman.  *See* Dec 5, 2006 *Bridgeport* Tr. at 48-49 and Class Counsel Exhibit 8 thereto.  Similarly, Mr. Haviland misrepresented himself as a partner at K&S (he was an associate) in proposals made to the Attorneys General of Arizona and Connecticut to obtain legal work.  *Id.* at 82-83.

29.     In the Bridgeport hearing, Mr. Haviland also demonstrated his disregard for the authority of the court.  One of the factors for determining adequacy of lead counsel is counsel's financial wherewithal to fund the litigation.  As part of this inquiry, the Haviland Law Firm's financial records were sought.  Mr. Haviland told the Court he had such records in his car, but was unwilling to produce them.  In open court, Judge O'Neill ordered Mr. Haviland to produce his records over a break.  Mr. Haviland directly refused the Court's order to do so.  Dec. 1, 2006 *Bridgeport* Tr. at 200-211.  The Court then allowed Mr. Haviland to be questioned about his firm's finances.  Incredibly, even though the Haviland Law Firm had been in existence for only a few months, Mr. Haviland, under oath in open Court, claimed that he could not remember who any of his office vendors were; how much he had paid to start his firm; how much cash the firm had on hand; any of the several banks with which the Haviland Firm had lines of credit; or the amounts of such lines of credit.  *Id.* at 213, 225-26 and 231-33.

- 12 -

30.     Mr. Haviland apparently withdrew his petition in the *Bridgeport Fire* matter before written findings could be made against him, but not before Judge O'Neill mused about why he would "subject the class to what has been demonstrated over the last three days as a complete inability to cooperate on anything, even the time of day."  Dec. 5, 2006 *Bridgeport* Tr. at 18-20.

**G.     In An Attempt To Force An Election Of Counsel Here, Mr. Haviland Once Again Employed Misrepresentations And Made A Final Bid To Take Over As Sole Lead "Consumer" Counsel**

31.     On August 24, 2007, Mr. Haviland filed a Motion for Appointment of Class Counsel for the Track 2 Consumer Sub-Classes Pursuant to Fed. R. Civ. Proc. 23(g) and supporting memorandum (Dkt. No. 4658).  This motion was filed on the Friday afternoon before the Court hearing on Monday, August 27, thereby intentionally depriving Class Counsel of an opportunity to respond in another filing.

32.      While falsely and misleadingly referring to Class Counsel as "***Interim*** Class Counsel" in the filing (*see*, *e.g.*, *id*. at 3, emphasis added), Mr. Haviland sought to displace Class Counsel's representations of consumers and substitute Mr. Haviland in their stead.  Taking a page from his *Bridgeport Fire* playbook, Mr. Haviland attempted to manufacture a conflict of interest by producing nearly identical class declarations stating that each class representative threatened to withdraw unless the Court appointed Mr. Haviland as Co-Lead Counsel.  Haviland asserted that, as a result of these trumped up declarations, a conflict existed between TPPs and consumers that could only be resolved by the appointment of Haviland as sole Lead Counsel for the consumers.  *Id*. at 5.  Not only did Haviland attempt to force an unseemly election of Class Counsel, *he failed to disclose to the Court that, in the New Jersey action where he was seeking a nationwide class, he represented TPPs and not consumers*.

33.     Mr. Haviland also accused Class Counsel of "duplicity and shoddy work that has typified the representation of consumers by Interim Class Counsel." *Id*. at 7.  This falsehood flies in the face of what the Court can note has been Class Counsel's diligent, unwavering and thoughtful commitment to pursuing the Class claims in this complex and lengthy MDL action.

34.     Mr. Haviland also re-filed on ECF/Pacer his Declaration earlier assigned Docket No. 4460, which was originally filed under seal.  Mr. Haviland failed to prepare a motion to place the identical August 24 declaration filing under seal, and not a single cover page in the filing says "filed under seal" as required by the protective order in this case.  ***By this act, Mr. Haviland publicly disclosed information that contained confidential, attorney-client privileged communications, as well as confidential information about the mediation proceedings***.  The Court subsequently ordered the filing sealed and its image removed from ECF/Pacer.  When challenged by the Court at the September 11, 2007 hearing, Haviland claimed that the public filing was a clerical mistake.  Sept. 11, 2007, Hearing Tr. at 22.  This is yet another Haviland fabrication to suit the exigencies of the moment, as Haviland's own filing demonstrates that the declaration was purposefully filed as part of the public record:  "Because there has been no objection to the filing of the Haviland Declaration, and given the relevancy of the factual record contained therein to the instant dispute, the same is being filed of record today in conjunction with this Memorandum and supporting documentation."  Dkt. No. 4658 at 30 n.32.  And this sentence itself is yet another Haviland misrepresentation, as the Court had not yet ruled on Haviland's Notice of Submission to Court of Declaration and Request for Determination of Proprietary Filing Under Seal; Haviland just unilaterally decided to reveal it to the world.

- 14 -

**H.**     **At A Time When Mr. Haviland's Lead Counsel Petition Was Pending With This Court, He Decided To Seek A Nationwide Class In A Competing New Jersey Action**

35.     During the pendency of Mr. Haviland's quest to displace Class Counsel in this litigation, unbeknownst to Class Counsel and this Court, Haviland was seeking an expansion of the New Jersey action to encompass a national class.

36.     On July 27, 2007, Mr. Haviland sent a letter to Judge Bassler confirming that he was seeking certification of a nationwide class.  As the letter stated:

> On the strength of the recent *Vioxx* decision, . . . involving this same representative Plaintiff, Plaintiff seeks certification of a nationwide Class defined as follows:
>
> All persons and entities in New Jersey and throughout the country who, during the period beginning at least 1991 through the present, paid any portion of the cost of cancer, inhalant and miscellaneous other drugs manufactured, marketed, distributed and sold by Defendants, which cost was based, in whole or in part, upon the published AWPs for such drugs. . . .

July 27, 2007, Letter from Don Haviland to The Honorable William G. Bassler at 3 (attached as Exh. 5 to the Berman Decl.).

37.     Notably, and notwithstanding Mr. Haviland's representation to this Court that "there has never been any effort to overlap or interfere with this Court's jurisdiction" vis-à-vis the New Jersey action (*see* September 11, 2007, Hearing Tr. at 4), ***the letter contains no limitations on the scope of this proposed class***.  For example, the letter does not limit the putative nationwide class to defendants that are not also in the AWP MDL action, and, indeed, the letter highlights the Massachusetts-only nature of the bench trial.  Nor did Mr. Haviland place any such limitations on the competing, nationwide scope of the class that he sought in New Jersey when he and co-counsel told the New Jersey court that they were seeking a nationwide class:

SPECIAL MASTER BASSLER:  Why is that so difficult to answer [the question about the scope of the proposed class]?

MR. HAVILAND:  Your Honor, it's in the complaint.  It says a half a dozen times, it [sic] an nationwide class, New Jersey and the country.  It has only come up in recent pleadings because there was one comment made at one hearing by one lawyer about the status of the case as it existed on remand.

SPECIAL MASTER BASSLER:  Well, it was a statement to a federal judge as to why the case should not be part of the MDL.

\*       \*       \*

SPECIAL MASTER BASSLER:  All right.  So I guess we've answered the question, it's the plaintiff's position that they want a nationwide class?

MR. WILLIAMS:  Yes, Your Honor.

Aug. 29, 2007, Hearing Tr. at 38-39, 127 (attached as Exh. 6 to the Berman Decl.).

38.     As the foregoing demonstrates, Mr. Haviland was seeking the certification of a competing, nationwide TPP class that would interfere with proceedings before this Court in the AWP MDL and in conflict with his duties to the certified and proposed Classes here.  His newly minted position that defendants that are common to both actions should be carved out of any putative New Jersey class is being made only after he had his "hand caught in the cookie jar" when the Court called Mr. Haviland to account for the conflict.

39.     As the Court has already recognized (see Sept. 11, 2007, Hearing Tr. at 25), in this letter Mr. Haviland also misrepresented that this Court had recognized him as "one of the Co-Lead Counsel for Class Plaintiffs in MDL 1456."  Letter at 4 (attached as Exh. 5 to the Berman Decl.).  This is false.  Mr. Haviland's motion was pending, and the Court had not recognized him as a Co-Lead.

40.     In the September 11, 2007, hearing, Mr. Haviland also represented to this Court that, in the New Jersey action, "the original complaint filed in 2003 against 56 companies sought

a nationwide class action." Sept. 11, 2007, Hearing Tr. at 5. This is false. The original

complaint in the New Jersey action, filed more than two years after the instant case, sought a

class limited to only New Jersey:

> Plaintiff seek [sic] to bring this case as a class action pursuant to
> Rule 4:32-1 of the New Jersey Rules Governing the Courts, on behalf
> themselves and all others similarly situated *in New Jersey* as members
> of a proposed class, defined as follows (the "Class"):
>
>> All persons and entities in New Jersey and throughout the
>> county who, during the period beginning at least 1991 through
>> the present, paid any portion of the cost of cancer, inhalant and
>> miscellaneous other drugs manufactured, marketed, distributed
>> and sold by Defendants, which cost was based, in whole or in
>> part, upon the published AWPs for such drugs. . . .

Class Action Complaint, Super. Court of New Jersey Civil Action No. C 193-03, ¶ 99 (attached

at Exh. 7 to the Berman Decl.) (emphasis added).

41.     Indeed, during remand proceedings before this Court when Mr. Haviland was

present in Court, Mr. Haviland's New Jersey co-counsel told Your Honor that the New Jersey

case was limited to a putative, New Jersey-only class:

> The class itself is *a state action for state limited claim. We are
> only seeking to represent those persons in New Jersey. We've not
> filed a national class action, we've not filed a multiple state class
> action* . . . .

Feb. 10, 2005, Hearing Tr. at 90 (attached at Exh. 8 to the Berman Decl.) (emphasis added).

42.     This representation conformed to the manner in which the class was pled in the

complaint and was also consistent with the letter that the plaintiff in that action submitted to the

Court on the day prior to the hearing:

> As Your Honor is aware, Local 68 filed its putative *New
> Jersey-only class action in state court in June of 2003*. Defendants
> removed our case to federal court, where it was transferred to Your
> Court as part of MDL No. 1456. We moved to remand back to state
> court because *inter alia*, our claims raise no federal question, and are

- 17 -

> otherwise not co-extensive with the claims brought by the MDL
> plaintiffs.

Feb. 9, 2005 letter from John E. Keefe, Jr. to The Honorable Patti B. Saris (attached at Exh. 9 to

the Berman Decl.) (emphasis added).

43.      During the September 11 hearing before this Court, Mr. Haviland attempted to

explain away the discrepancy between the representations made to this Court in 2005 and those

Haviland is making now by saying that his co-counsel's comments from the February 10, 2005

remand hearing were "inconsistent with the complaint" (Sept. 11, 2007, Hearing Tr. at 7), but

they were clearly not; as shown above, the complaint at the time sought only a New Jersey class,

as counsel highlighted in his letter to the Court.

### III.      MR. HAVILAND IS UNFIT TO SERVE AS CO-LEAD COUNSEL

In appointing Class Counsel, the Court is to consider "the work counsel has done in

identifying or investigating potential claims in the action, counsel's experience in handling class

actions, other complex litigation, and claims of the type asserted in the action, counsel's

knowledge of the applicable law, and the resources counsel will commit to representing the

class" and "any other matter pertinent to counsel's ability to fairly and adequately represent the

interests of the class." FED. R. CIV. P. 23(g)(1)(C).   "[T]he court must appoint the applicant best

able to represent the interests of the class." FED. R. CIV. P. 23(g)(2)(B).   "[O]ther considerations

come into play, including among others the attorneys' ability to command the respect of their

colleagues and work cooperatively with opposing counsel and the court. . . .   Ultimately,

the court's goal is 'achieving efficiency and economy without jeopardizing fairness to the

parties.'"   *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57-58 (E.D.N.Y.

2006) (citing MANUAL FOR COMPLEX LITIGATION, THIRD, § 10.224 (2004)).

Courts are encouraged to "look to the performance of counsel in the present litigation" in assessing the adequacy of class counsel. *In re Organogenesis Secs. Litig.*, 241 F.R.D. 397, 406 (D. Mass. 2007). The court should also satisfy itself that it can trust the representations being made by counsel. *Id*. at 408-09 (noting that failures to be fully candid with the court "can erode confidence of the court and opposing counsel in the lawyer making such statements, and this reduced trust can, in turn, impede the efficient progress of a  complex case."). As Mr. Haviland himself has stated, "This Court needs to know that the lawyers representing consumers – or for that matter, any party in this litigation – are ***trustworthy***." Motion for Appointment of Class counsel for the Track 2 Consumer Sub-Classes Pursuant to Fed. R. Civ. Proc. 23(g) and supporting memorandum at 4 (emphasis added) (Dkt. No. 4658). Class Counsel couldn't agree more.

As the forgoing amply reveals, by his repeated actions in this and other litigation, Mr. Haviland has demonstrated that he is not trustworthy and is not fit to serve as Co-Lead Counsel. In his zeal to put his own interests ahead of his clients and classes, Mr. Haviland has made numerous misrepresentations to numerous courts, including this Honorable Court. Some of this information has been brought to the Court's attention by Class Counsel, and there already exists a record relating to some of Class Counsel's disputes with Mr. Haviland, revealing his contempt for majority consensus building. In an attempt to put the Haviland distraction behind us, save the Court from having to deal with these issues and to move forward "on a clean slate," at the August 27 hearing Class Counsel acceded to Mr. Haviland's participation as a Co-Lead provided that he agreed to abide by super-majority vote. But, at the time, Class Counsel were not aware that Mr. Haviland was seeking to certify a nationwide class in the New Jersey case. Nor were we aware of the record developed in the *Bridgeport Fire* proceedings of Mr. Haviland's all-too-

familiar disruptions and the allegations that Mr. Haviland was fraudulently billing time and expenses to the AWP litigation.  From our viewpoint, these are the "last straws."

Class Counsel respectfully submit that the above chronology confirms the Court's assessment that Mr. Haviland cannot be trusted.  As the Court poignantly noted when addressing Mr. Haviland:  "[T]ruthfully, at this point, I don't trust you."  Sept. 11, 2007, Hearing Tr. at 18.  If the Court does not trust a member of Co-Lead Counsel, that person simply cannot serve as Co-Lead Counsel for any class.

Class Counsel oppose Mr. Haviland's further participation in this litigation as Co-Lead Counsel.  In addition to the prevailing crisis of trust that Mr. Haviland's words and deeds have engendered, responding to "Haviland issues" alone has become distracting and time consuming to both the Court and Class Counsel.  Although Mr. Haviland has repeatedly defended his actions in this litigation and others as being made for the benefit of the classes he sought to represent, the record reveals that Mr. Haviland seeks to manipulate his clients, class members and courts in the pursuit of his own self-interest.  Given this record, the Classes' interests are best served without Mr. Haviland's high-level participation.  Like many other lawyers, Mr. Haviland can still participate in the case and be paid for his endeavors, even though it appears that he no longer has any Track 2 clients with viable standing given the Court's prior orders.

In contrast to Mr. Haviland, Class Counsel have diligently and faithfully discharged their duties to the Classes in this long-running litigation.  We have worked hard and done almost all of the discovery and trial work in this case.  Furthermore, Class Counsel have the resources to shoulder the burdens of representing the Classes for the long run and, collectively, have decades more experience than Mr. Haviland in prosecuting complex class cases.  In short, Class Counsel

do not need Mr. Haviland and his firm in order to continue their capable and zealous representation.

## IV.    CONCLUSION

The record reveals that reigning-in Mr. Haviland's duplicity is difficult.  Minor admonitions from multiple courts have not successfully tempered Mr. Haviland's unbridled ambition to achieve co-lead positions in class action litigation through the employment of misrepresentations and bad-faith maneuvering.  Class Counsel respectfully suggest that nothing short of a written order finding Mr. Haviland to be unfit to serve as Co-Lead Counsel in this litigation will suffice.


DATED:  September 18, 2007

By    **/s/ Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

001534-16  196002 V1

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  196002 V1

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on September 18, 2007, I caused copies of **CLASS COUNSEL'S SUBMISSION REGARDING MR. HAVILAND'S PARTICIPATION AS CO-LEAD COUNSEL** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


　　　**/s/ Steve W. Berman**　　　　　
Steve W. Berman

001534-16  196002 V1