# EXHIBIT 3

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Esquire
Michael J. Lorusso, Esquire
**The Haviland Law Firm, LLC**
740 South Third Street, Third Floor
Philadelphia, PA 19147
215•609•4661 telephone
215•392•4400 facsimile

COUNSEL FOR CERTAIN CLASS PLAINTIFFS,
PROFESSIONAL FLOORING, CO., INC.,
LIMERICK CARPET & FLOORING, INC.,
ROSE LINE INC., SALMONS INDUSTRIES,
INC. A/T/A MILLIE SWITCH, AND RENU
ELECTRONICS, INC.

IN RE:  BRIDGEPORT FIRE LITIGATION

MASTER FILE NO.:  05-20924

THIS DOCUMENT RELATES TO: ALL
ACTIONS

## MEMORANDUM IN SUPPORT OF PETITION OF DONALD E. HAVILAND, JR., ESQUIRE AND THE HAVILAND LAW FIRM, LLC FOR APPOINTMENT AS LEAD COUNSEL FOR THE CLASS OR IN THE ALTERNATIVE, CLASS COUNSEL

### I.     Introduction

_____Counsel for Plaintiffs, Professional Flooring, Co., Inc., Limerick Carpet & Flooring, Inc.,

Rose Line Inc., Salmons Industries, Inc. a/t/a Millie Switch, and Renu Electronics, Inc. ("Certain

Class Plaintiffs"), Don Haviland and The Haviland Law Firm LLC ("HLF"), respectively submit

this Memorandum in Support of their Petition for Appointment as Lead Counsel for the Class, or

in the Alternative, Class Counsel.  This Memorandum is necessitated by the Response filed by

the lone objectors to the Petition, existing class counsel.  However, because the bulk of the

Response represents an irrelevant, *ad hominem* attack on Mr. Haviland personally – likely driven

by Mr. Haviland's decision to leave Kline & Specter ("K&S") – it will be ignored.  As the Court

observed at the hearing on September 8, such intra-mural disputes should be left at the door of

the courthouse.

Instead, this Memorandum seeks to re-focus the Court's attention back to what matters most – the clients' interests as well as the interests of the Class, adequate representation of the clients and the Class going forward, and due process – all of which, we respectfully submit, will be addressed and restored by the Court's favorable decision to grant the Petition. In support of the Petition, the undersigned commend to the Court the Firm Bio of the Haviland Law Firm LLC [attached hereto as Exhibit "1"], and respectfully request that the Petition be granted.

## II.      Argument

### A. The Standards for Lead Counsel in Class Actions

The concept of having "one overall master of litigation" in consolidated litigation far predates the modern rules and can be traced back to the late nineteenth century, with the court in *Manning v. Mercantile Trust* finding appointment of lead counsel necessary by comparing the ease of conducting litigation with separate independent actions by various plaintiffs to that of driving a "span of horses pulling in diverging directions." 57 N.Y.S. 467, 468 (1899). After over a century of state and federal jurisprudence in consolidated litigation, and in response "to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action,"[1] that time-honored concept has been codified in the 2003 amendments to the Federal Rules of Civil Procedure.  Federal Rule of Procedure 23(g) now provides "unless a statute provides otherwise, a court that certifies a class must appoint class counsel."  In appointing class counsel, the court, acting as a fiduciary to the class, has the profound duty to select such counsel that will fairly and adequately represent the interests of the

---

[1] Fed. R. Civ. P. 23(g) committee note

class.[2] Once appointed by the court, lead counsel selected from among the class counsel has the responsibility to formulate and present procedural and substantive issues throughout the litigation,[3] to act for the class "in presenting oral and written arguments and suggestions to the court, to work with opposing counsel in developing and implementing a litigation plan, to initiate and organize discovery requests and responses, to conduct the principal examination of deponents, to employ experts, to arrange for support services, and to see that schedules are met."[4] The factors the court must consider in appointing class counsel–as distinct from "Lead Counsel" and as discussed below–are enumerated in the Federal Rules of Civil Procedure, Rule 23(g)[5], and the Pennsylvania Rules of Civil Procedure, Rule 1709.

As this Court is well aware, having decided class certification twice in this case, in deciding whether the class action criteria are satisfied, "the Court is clearly vested with broad discretion." *O'Neill v Sovereign Bank*, 1998 WL 1543498 (Dec. 15, 1998) at *3 (attached hereto as Exhibit "2"). However, such decisions should be "liberally made" in favor of finding the prerequisites satisfied, especially were, as here, the opposing parties have not challenged the plaintiffs' proffer. *Id.* at *3, *7 (noting generally the lack of opposition interposed by the defendant as to the Rule 1702(4) and 1709 prerequisites).

---

[2] Fed. R. Civ. P. 23(g)(1)(b)
[3] Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 9:340 (4 ed. 2002)
[4] *Manual for Complex Litigation* (3d ed.) § 20.221
[5] It is not contended by Petitioners that this Court necessarily must follow the test set forth in Rule 23(g) for the appointment of Class Counsel, since Pennsylvania Rule 1709 provides the exclusive test in this Commonwealth; however, the courts of this Commonwealth generally recognize that the Federal Rules and precedent are informative. *See*, e.g., *Janicik v. Prudential Ins. Co.*, 305 Pa.Super. 120, 127, 451 A.2d 451, 454, n. 3 (1982).

### 1.    Selection of Lead Counsel

The selection of lead counsel often follows individual agreement by all participating lawyers, however, sometimes it is the case that lawyers are unable to agree on a lead class counsel and they compete for appointment. *See Manual for Complex Litigation, Fourth* §10.22 (agreement among counsel is preferred). When lawyers cannot agree on selection of lead counsel, as here, the responsibility to appoint lead counsel from the competing lawyers rests on the court, acting as a fiduciary to the class. The court has a responsibility to select the applicant best able to fairly and adequately represent the interests of the class.[6]  In making the appointment, the court must consider "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class."[7]  Pursuant to Pennsylvania Rule of Civil Procedure 1709, in appointing class counsel the court also must assure that the attorneys for the representative parties have no conflicts of interest.[8]  The court may consider any other factors that bear on the attorney's ability to represent the class fairly,[9] including, but not limited to, "involvement in parallel cases in other courts; any existing attorney-client relationship with a named party; and fee and expense arrangements that may accompany the proposed appointment."[10]

In this case, HLF satisfies all these prerequisites. *See* generally, HLF Firm Bio at Exhibit "1".

---

[6] *See, e.g.*, Fed. R. Civ. P. 23(g)(1)(b)
[7] Fed. R. Civ. P. 23(g)(1)(c)(i).  *See also McCall v. Drive Financial Services, L.P.* 236 F.R.D. 246 (E.D.Pa.,2006); *Grunewald v. Kasperbauer* 235 F.R.D. 599 (E.D.Pa.,2006); *Pichler v. UNITE,* 228 F.R.D. 230 (E.D.Pa.,2005)
[8] Pa. R. Civ. P. 1709(2)
[9] Fed. R. Civ. P. 23(g)(1)(c)(ii)
[10] *Manual for Complex Litigation,* (4th ed.) §21.271

At the outset, no challenge has been interposed by any defendant. This lack of opposition speaks volumes about the awareness by defense counsel of the integral role Don Haviland has played in this case. *See O'Neill,* 1998 WL 1543498 at *7 (noting lack of defendant opposition in finding Rule 1709 prerequisites satisfied) (*See* Exhibit "2"). The lone opposition to the Petition comes from existing class counsel. Their opposition - chock full of invective and attempted impeachment on collateral matters - represents nothing more than a collateral skirmish that ignores completely the standards for class counsel or lead counsel appointment. Accordingly, the lone opposition should be disregarded by the Court and the Petition should be granted on its merits.

### 3.    Involvement in Other Litigation.

Class counsel have invited this Court to examine the "involvement in parallel cases in other courts" of the lawyers for the class in charging that HLF "does not have the capacity to undertake representation here ...in light of [its] professed intention to represent 'millions of aggrieved individuals'." Response to Petition, at p.4. Whether it is being obtuse or intentionally misleading, K&S well knows that HLF is Co-Lead Counsel to a certified nationwide class action case of over 8 million Medicare beneficiaries in the *In re: AWP Litigation* pending in Boston federal court. *See* Tabs "A" and "B" to Exhibit "1" hereto. But, that case is just <u>one case</u>, with just <u>5 named representative plaintiffs</u>, similar to this case. The burdens of that more than five-year old case do not, as charged, impact negatively on the capacity of HLF to represent its clients and the Class here. To the contrary, the case underscores the unique qualifications of HLF serve as Lead Counsel to the Class here. Mr. Haviland managed both cases – *In re AWP* and this case – during his entire tenure as the head of K&S' Class Action Department without incident.

In contrast, K&S has demonstrated to this Court that its involvement in cases in other courts has the potential to impact significantly on its ability to prosecute this case. Not once, but twice, in the last month K&S has sought to cancel judicial proceedings previously scheduled and ordered by the Court long in advance.. *See* letters attached hereto as Exhibit "3" (seeking continuances of the October 20 status conference and the November 17 evidentiary hearing because of conflicts in Mr. Specter's individual schedule). Despite the fact that dozens of other counsel and parties in this case were able to make themselves available, one lawyer at K&S repeatedly has sought to have conflicts in his schedule due to his thriving personal injury practice override the schedules of all others in this case. Greater cause for concern of this Court perhaps lies in the fat that K&S is involved in the sprawling Vioxx mass tort case involving thousands of individual cases with no end in side. The defendant in this case has declared "it will fight each case in court individually rather than consider a large-scale settlement." S*ee* Exhibit "4" (Reuters article: "Merck CEO says any Vioxx settlements years away"). K&S is in for a long, arduous battle in Vioxx with no easy out - a fight which will only further consume the massive resources the firm had to commit to the litigation. Such a weighty endeavor, costing tens of millions of dollars without immediate prospect for success is a palpable concern about the impact of "other cases"on this case that this Court should explore in considering class counsel "adequacy."

**B.      Application of Lead Counsel Selection Standards to this Case**

**1.      Material Change in Representation**

Upon class certification, the court must determine adequacy of counsel by weighing all of the above factors. That said, barring a challenge to adequacy of counsel, there is a presumption that applicants for class counsel are capable of fairly and adequately representing the interests of

the class.[11]

In this case, pursuant to an April 14, 2003 Court Order, the law firms of Kline & Specter and High, Swartz, Roberts & Seidel were designated co-class counsel for the representative plaintiffs and the Class. They were not designated "Lead Counsel," as has been contended by these firms only recently in filings and in open court.. At the time of their appointment as class counsel there was no challenge interposed by anyone to their adequacy to or to their ability to fairly and adequately represent the interests of the Class. However, since that time, there have been a number of developments that have resulted in a material change in the representation of the named Class representatives and the Class. In view of these changes, the Court, as a fiduciary to the Class, is obligated to re-assess the adequacy of existing counsel to rule on whether the interests of the Class would be better protected by either changing class counsel or by selecting an additional firm to join the existing class counsel as co-class counsel or as Lead..[12]

Since the firm's appointment as class counsel, Kline & Specter has undergone substantial changes that have resulted in a material change in representation of the Class. Most significantly for this case is the departure from the firm of the director of its now-defunct Class Action Department, Don Haviland. In addition, four (4) other attorneys from the Class Action Department have left the firm,[13] causing the Department that Mr. Haviland founded and headed for nearly five (5) years to be disbanded. (The departure of these five (5) lawyers is in addition to

---

[11] *See Newberg on Class Action,* § 7:24.

[12] *See, e.g., In re Terayon Communications Systems Inc. Securities Litigation,* No. 00-01967, 2004 U.S. Dist. LEXIS 3131, at 20 (N.D. Cal. Feb. 23, 2004). ("The court has a continuing responsibility to determine whether lead plaintiffs meet the typicality and adequacy prongs of Rule 23 such that interests of the class are protected."

[13] These four (4) lawyers include: Louis Ricciardi, TerriAnne Benedetto, Kila Baldwin and Roberta Golden. All of these lawyers had substantial class action experience. The remaining lawyers of Kline & Specter have none.

the departure of highly talented lawyers from the firm's personal injury practice).[14]  Kline &

Specter is out of the class action business, as evidenced most clearly by the removal from its firm

website of any trace that it ever worked in class actions or that it ever had a Class Action

Department. *See* www.klinespecter.com.  At the present time, the only lawyer remaining at Kline

& Specter who had involvement in this litigation up to the point of class certification is Mr.

Specter.

     Mr. Haviland chose to follow the flood of talented lawyers out the front doors of Kline &

Specter and start a new firm, The Haviland Law Firm. The Firm entered a Notice of Appearance

on behalf of five of the six Lead Plaintiffs in this case on September 11, 2006.[15]

     High, Swartz, Roberts & Seidel also has experienced changes in the composition of its

firm that has cast doubt on its ability to fairly and adequately represent the interests of the Class

going forward. All of  the lawyers who worked the case up until class certification have left, save

Mr. Bartle.

     **2.**     **Existing attorney-client relationship**

     Pursuant to the advisory committee notes on Rule 23(g), an important consideration for

the court in determining an applicant's qualifications to serve as class counsel is the applicant's

existing attorney-client relationship with the proposed class representatives.

     K&S has no "existing attorney-client relationship" with any named party.  Indeed, K&S

has no attorney-client relationship with any plaintiff member of the Class.  K&S has never had a

signed retainer agreement with any plaintiff in this case.  Instead, K&S grounds its ability to

---

[14] In the last six (6) months alone, the firm has lost Robert Ross, Joel Feller, Matthew Casey, and Beth Freeman.

[15] Professional Flooring Co., Inc., Limerick Carpet and Flooring, Inc., Roseline Inc., Salmons Industries, Inc. A/T/A Millie Switch, and Renu Electronics, Inc.  all have elected to retain The Haviland Law Firm as counsel.

continue to act as class counsel in the wake of Mr. Haviland's departure from the firm, and the named representative plaintiffs' selection of him as their counsel, on the slender reed of an unsupported argument to this Court that it can be "class counsel" without a client. *See* Transcript of Sept. 8, 2006 Hearing at 4 ("This is a class action case, which has special annal in the law...Only the Court can appoint class counsel..."); at 56 ("Now in this situation, it's not for the client to make an election... ; the Court makes the election."). This is wrong. Class actions are no different from any other area of the practice of law. *See* generally, *Huber v Taylor, et. al.,* 2006 WL 3071394 (3d Cir. Oct. 31, 2006) at *12-13.  In civil cases, the client gets to choose counsel, and that choice must be honored by a court of law. *See* Concise Statement of Matters Complained on Appeal, at paragraph 2(b); *See also*, American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Opinion 99-414 ("Ethical Obligations When a Lawyer Changes Firms") [at Exhibit "5"]; Philadelphia Bar Association Ethics Opinion 99-100 [at Exhibit "6"]. K&S urges this Court to adopt an unprecedented standard for the appointment of class counsel so that it may hang onto its status as "class counsel" in the absence of any "existing attorney-client relationship with a named party." To do so would be error.  Class counsel would become free to litigate a civil class action case untethered by the strictures of professional ethics, that bind all who practice law, such as the requirement to timely communicate with the clients about the proposed course of conduct for the litigation and obtaining informed consent to the same. *See* Pennsylvania Rules of Professional Conduct, Rules 1.0(e), 1.2, 1.4. Under K&S' view of the "annals of class actions", it is free, *inter alia*, to ignore client elections of their chosen counsel, to serve expert reports without consulting clients, and to dismiss defendants without notifying clients (seeking their consent).  It

9

begs the question whether K&S would check with clients before seeking to settle or try the case. To whom would they turn?

### 3.   Work done in identifying or investigating potential claims.

Only Mr. Haviland, both when he was at Levin, Fishbein, Sedran & Berman at the onset of this litigation, and in the course of his employment with Kline & Specter, was involved in identifying and investigating potential claims in the action leading to the filing of the 2001 and 2003 class action complaints.  Messrs. Specter and Bartle were not.

### 4.   Experience in handling class actions

Only Mr. Haviland has experience in handling class actions. *See* HLF Firm Bio at Exhibit "1". Messrs. Specter and Bartle do not.

### 5.   Resources able to commit to representation

Kline & Specter charges that HLF "does not have the capacity to undertake representation here in light of the expense and time associated with this case." Response to Petition at 4.  Even in Federal Court, under new Rule 23(g), although relevant to the appointment process, "the resources counsel will commit to the case must be appropriate to its needs, but the court should be careful not to limit the consideration to lawyers with the greatest resources."[16] Here in Pennsylvania state court, it is the resources of the clients that matter, not the resources of the lawyers.

---

[16] Fed. R. Civ. P. 23(g)(1)(c) committee note.

Pa. R.C.P. 1709(3) looks to whether "the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed." Though initial funding by the class representative's attorney is common in class actions, and in many cases provides the only opportunities for relatively small claims to be litigated, the representative parties seeking class certification nevertheless bear the burden of satisfying all the Rule 1702 prerequisites, including proving that they have, or can acquire, adequate financial resources. *Janicik v. Prudential Insurance Co. of America,* 451 A.2d 451, 454 (Pa. Super. 1982).

In this case, that burden lies with the Certain Class Representatives. It has been satisfied twice in this case and will continue to be satisfied by these parties, and not the lawyers. With the passage of Rule 1.8(e) of the Model Rules of Professional Conduct, cost advancement on a contingent basis by attorneys became appropriate. While this signaled a change in the rule for most contingent fee litigation, it did not alter the requirement of Rule 1709(3) which has remained in force through the present day. Due to the unambiguous and unchanged language of Rule 1709(3), it is apparent that the representative parties themselves bear ultimate responsibility to acquire the financial resources necessary to promote the class' interests without hindrance, even if the counsel advances the litigation costs as an initial matter.

*In Miller v. Federal Kemper Ins. Co.,* the court affirmed the denial of class certification in part based on the class representative's failure to prove the 1709(3) requirement of adequate financial resources. 352 Pa.Super. 581, 508 A.2d 1222 (Pa. Super 1986). In that case, although evidence was presented that "suggested that counsel's law firm possessed adequate financial

11

resources to conduct the class action, no evidence was offered to demonstrate that the Millers had the financial ability to prosecute the claim adequately on behalf of the entire class." *Id.* at 1233.

Similarly, in *Klusman v. Bucks County Court of Common Pleas,* the court held that for a party to represent the interests of the purported class, the party must have some financial stake in the action.  128 Pa. Cmwlth. 616, 564 A.2d 526 (Pa.Cmwlth.1989).  In that case, class certification was denied in part because of petitioner's lack of financial responsibility in the outcome of the case.  The court stated "[I] If the client is not financially responsible, the attorneys have a free rein over the prosecution of the action which is tantamount to the unacceptable situation of the attorney being a member of the class of litigants while serving as class counsel." *Id.* at 628-629 (*citing Golub v. Mid-Atlantic Toyota Distributors, Inc.*, 516 F.Supp.1287 (D.C.Md.1981)).  The Court contrasted the situation in that case to that of *Janicik* wherein, despite counsel's initial funding of the lawsuit, the financial burden remained ultimately upon the named-plaintiff.[17]  Here, class counsel would have this Court engaged in a beauty contest that pits the named class representatives and their chosen counsel against the economic power of one of the richest plaintiff law firms in the City of Philadelphia, if not the State.  To wage such a contest would turn the clock back decades on the advancements in class action jurisprudence that have divested powerful law firms of their dominance in class actions in favor equitable tests that put the clients' interests ahead of the lawyers'.

---

[17]This Court acknowledged the importance of Janicik. in class action jurisprudence in Pennsylvania, having cited the case in both of the Court's class certification decisions.

\\192.168.1.100\havilandlawdata\ACTIVE FILES\Bridgeport Fire - (200100)\Pleadings\Memo in Support of Lead Counsel Peition_Electronic Signature.wpd

12

6.     **Conflicts of Interest**

As will be explored further at the evidentiary hearing, several issues have arisen regarding

possible conflicts of interest which may impact on the ability of class counsel to continue to act

for the Class without change in the existing representation.

C.     **The Haviland Law Firm Should be Appointed Lead Counsel, or in the Alternative, Class Counsel.**

Class counsels' statements to this Court, both in recent filings ["this is a class action"]

and in court ["These class members and these class representative, they are not sophisticated

people..."] demonstrate their skewed view that the named class representatives in a class action,

and particularly this action, are of minimal consequence to the litigation. Current class counsel

seek to preclude Mr. Haviland and HLF from serving as either Lead counsel or co-class counsel

in this case, and are attempting to place their own desires and litigation agenda over that of the

named class representatives who previously hired, and who now have unabashedly reaffirmed

their decision to hire, Mr. Haviland and HLF as their attorneys to represent their individual

claims (and, by extension the claims of the Class they have been appointed by this Court to

represent). Class counsel's disregard for and subordination of the named class representatives is

improper and should not be countenanced by the Court. The law is clear that named class

representatives – the actual parties in the case[18] – play an indispensable role in supporting,

maintaining and pursuing both their individual claims and the claims of absent class members

---

[18] *See American Pipe & Construction v Utah*, 414 U.S. 535, 552 (1974) (describing absent class members as "passive parties"); *See also Philips Petroleum Co. v Shutts*, 472 U.S.797, 810 (1985) (noting that absent class members have the right to "sit back and allow the litigation to run its course" without having to participate)

who ultimately will be bound by the representatives' actions and the outcome of the case.[19]  As

the law recognizes, successful litigation of a class action requires nothing less than their vigorous

participation and guidance.  In short, a class action, first and foremost, is about the individual

named class representative clients and the absent class members they represent.  Accordingly, the

named class representatives' wishes to have Mr. Haviland and HLF serve as their class counsel

are a paramount consideration and should not be disregarded.

It is a class representative's duty to take an active role in the litigation to ensure that class

counsel is performing its job properly and not to blindly rely on class counsel in the prosecution

of the case.  The Pennsylvania Superior Court, quoting federal case law, perhaps put it best when

it stated:

> "[t]he class is entitled ... to more than competent counsel.  It must
> also be assured that it will have an adequate representative, one
> who will check the otherwise unfettered discretion of counsel in
> prosecuting the suit and who will provide his personal knowledge
> of the facts underlying the complaint.  The class is entitled to a
> representative who is more than 'a key to the courthouse door
> dispensable once entry has been effected.' *Saylor v. Lindsley*, 456
> F.2d 896, 900 (2d Cir. 1972). [A] plaintiff's evident willingness to
> rely on counsel's ability to protect the interests of the class is
> inconsistent with the participation required of an adequate class
> representative. *Weisman v. Darneille*, 78 F.R.D. 669, 671
> (S.D.N.Y. 1978)."

*Miller v. Federal Kemper Ins. Co.*, 508 A.2d 1222, 1233 (Pa. Super. 1986) (also citing *Janicik v.*

*Prudential Ins. Co. of Am.*, 451 A.2d 451, 461 (Pa. Super. 1982) (evidence of a named class

---

[19] *Hansberry v Lee*, 311 U.S. 32, 42-43 (1940) ("It is familiar doctrine of the federal courts that members of class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present").

representative's disregard of duties or abdication to the unfettered discretion of class counsel, among other matters, weighs against the class representative's adequacy of representation, whereas evidence of a named class representative's willingness to pursue the matter, knowledge of the facts underlying the action, and understanding of the essence of the legal claim, among other matters, all weigh in favor of adequacy of representation).

Adequacy of the named class representative, and hence the necessity of his undertaking an active role in the litigation as a check on the otherwise unfettered discretion of class counsel, is essential and required at all times. Adequate representation is an essential part of the minimal due process requirements that exists in order for a forum state to bind absent class members with respect to a claim for damages at law, since "the Due Process Clause of course requires that the named plaintiff *at all times* adequately represent the interests of the absent class members,'" without which the law suit has no class action effect". *Goldstein DDS v. Doral Dental Service of PA*, 2004 WL 2979757 at *3 (C.C.P. Phila. Cty. 2004) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (emphasis added))..

Counsel, of course, plays an extremely important part in any class action case, since it is generally class counsel that directs and manages the case. *Klusman v. Bucks County Court of Common Pleas*, 564 A.2d 526, 533 n.23 (Pa. Cmwlth. 1989). The procedural rules governing class actions require class counsel to adequately represent the interests of the class, and class counsel's failures or incompetence in the case can keep an action from becoming or continuing as a class action. *See id.* at 528-529, 531-32, 533, 535 (discussing the various failures of counsel in that case upon which the court based its refusal to grant plaintiffs' motion for class certification,

15

notwithstanding counsel's apparent "experience and successes ... in litigating class actions," *id.* at 531).

If anything, the *Klusman* case shows that the important function of class counsel magnifies, rather than diminishes, the role of the named class representative, since a class representative's failure to demonstrate concern over, or otherwise to take measures to help protect against, class counsel's failures or incompetence may also lead to the conclusion that the class representative has not properly performed his duty of staying actively involved in the case and has simply relied on class counsel's abilities, all to the potential detriment of absent class members. *Cf. id.* at 533 ("Petitioners never demonstrated concern as to their counsel's failure to comply with court ordered deadlines or an improperly filed motion for summary judgment.") Thus, a named class representative who actively participates in all aspects of his class action case, and who helps navigate the action throughout the course of the proceedings, will be the best protector of the absent class members he represents and will have fulfilled his duties as an adequate representative. This would certainly comport with the requirement that a class representative "pursue a resolution of the controversy with the requisite vigor and in the interest of the class." *Janicik*, 451 A.2d at 140.

For a named class representative to be adequate and for him to fulfill his necessary functions, it is fundamental that he trust and respect the class counsel working for him. His trust in and respect for the counsel that will represent him and the class is secured by effectuating his selection of class counsel, not by having class counsel that he did not select foisted upon him. Indeed, there is nothing more fundamental in any case than the right of a party to choose his or her own counsel. In a class action, it is that much more important because the

16

class representative is duty-bound not to simply rely on his class counsel to protect the class.

This point was made patently clear recently by the Court of Appeals for Third Circuit in a case brought by the class representative plaintiffs against class counsel alleging breach of fidiciary duty:

> The fiduciary duty that an attorney owes clients is not a matter to be taken lightly. The duty may not be dispensed with or modified simply for the conveniences and economies of class action. As then Judge Cardozo observed in In the Matter of Rous, "[m]embership in the bar is a privilege burdened with conditions." 221 N.Y. 81, 84 (1917) (Cardozo, J.). Among those conditions are the ethical obligations of giving clients full and meaningful disclosure of conflicts of interest so that the client may decide if the representation is in his or her best interest and of the terms of proposed settlement agreements, as it is the client's, not the attorney's, decision whether to settle a case. TEX DISCIPLINARY R. PROF'L CONDUCT 1.03 (duty to keep client informed); 1.04(f) (fee division); 1.08(f) (disclosure of aggregate settlements). Even when clients are viewed as mere "inventory", they are still owed the renowned "punctilio of an honor the most sensitive." Meinhard v. Salmon. 249 N.Y. 458, 464 (N.Y. 1928) (Cardozo, J.).

> \*     \*     \*

> This is the cost of doing business as an attorney at law, and we will not countenance shortcuts. Disclosures to clients must be meaningful, by which we mean something beyond form disclosures, as clients must understand a conflict to give their informed consent to an intelligible waiver. Indeed, we are embarrassed to have to explain a matter so elementary to the legal profession that it speaks for itself: all attorneys in a co-counsel relationship individually owe each and every client the duty of loyalty. For it to be otherwise is inconceivable. There is no question that defendant attorneys owed Plaintiffs fiduciary duties.

_Huber v Taylor, et.al,_ 2006 WL 3071394 (3d Cir. Oct. 31, 2006) at \*12-13.

Here, the named class representatives, who are both parties to this action as well as the face of the absent class members, have expressly chosen their counsel. They did so initially, prior to commencement this case and well before class certification, and they have reaffirmed that choice today. To be adequate representatives, and therefore to bind absent class members to the

17

claims and results in this case, the named class representatives are charged with the duty of

pursuing the case with vigor and actively involving themselves in the litigation in support of their

individual and class-wide claims. They have done that throughout this case and, as they must,

continue to do so today. However, recent actions and events have caused the class representatives

to lose the one attorney they chose at the outset and whom they wish to continue to serve at the

helm of their class action case, leaving them instead with current class counsel they do not desire

without HLF. This has occurred not by any desire or fault of their own, but rather by the

unwelcome, self-serving, forceful acts of current class counsel. To command these

representatives that they must now work exclusively with attorneys not of their choosing is not

conducive to the role they are required to undertake. The class representatives, in active support

of their individual claims and the claims of the absent class members, have not only worked

closely with Mr. Haviland throughout this case, but have witnessed first-hand both current class

counsel and Mr. Haviland in proceedings before this Court. They fully understand the capabilities

of these attorneys as well as the recent events that have caused them to lose their class counsel.

Thus, they have reaffirmed their wishes to have Mr. Haviland serve as their counsel and as class

counsel based on the totality of the circumstances, including recent events, and on the totality of

their own experiences and involvement in this case for more than half a decade. Upon all of this,

they resoundingly place their trust and faith in Mr. Haviland.

   The named class representatives are not, as demeaningly charged by current

class counsel, "unsophisticated" clients. Such self-serving hyperbole is employed as a means of

manipulating this Court into permitting current class counsel to retain its class counsel status

untethered by any client and as a means to block the class representatives from having their

18

chosen counsel continue to work on behalf of themselves and the class. However, in this case, the class representatives know better than the lawyers what the case is about, having experienced firsthand the devastating fire that destroyed their businesses on May 15, 2001. They have very real and valid opinions about their claims, the prosecution of this case, and the lawyers they wish to have represent their claims (and, by extension, those of the class they represent). Contrary to current class counsel's view, the class representatives are astute, active participants in the case, who request that their selection of counsel be honored by this Court. To maintain their vigor and to fulfill their duties as adequate class representatives, it is fundamental that they be able to lead this class with their chosen attorneys. Anything less would not only extinguish their fundamental, constitutional right to counsel, but would call into question their ability to serve as adequate representatives and, hence, to lead this certified Class.

WHEREFORE, counsel for certain class plaintiffs, Professional Flooring, Co., Inc., Limerick Carpet & Flooring, Inc., Rose Line Inc., Salmons Industries, Inc. a/t/a Millie Switch, and Renu Electronics, Inc. respectively request that this Honorable Court grant their Petition for Appointment as Lead Counsel for the Class, or in the Alternative, Class Counsel.

Dated: November 16, 2006                    ___/s/Donald E. Haviland Jr., Esquire____

Donald E. Haviland, Jr., Esquire (I.D. No.66615)
Adam S. Levy, Esquire
Michael J. Lorusso, Esquire
**The Haviland Law Firm, LLC**
740 South Third Street, Third Floor
Philadelphia, PA  19147
215-609-4661 telephone
215-392-4400 facsimile

19

COUNSEL FOR CERTAIN CLASS PLAINTIFFS, PROFESSIONAL
FLOORING, CO., INC., LIMERICK CARPET & FLOORING, INC.,
ROSE LINE INC., SALMONS INDUSTRIES, INC. A/T/A MILLIE
SWITCH, AND RENU ELECTRONICS, INC.

20

# EXHIBIT "1"



## THE
# HAVILAND
### LAW FIRM
WWW.HAVILANDLAW.COM

---

**FIRM BIOGRAPHY**

## 1.   General:

THE HAVILAND LAW FIRM, LLC is a boutique law firm that represents individuals, businesses, non-profit organizations and governmental entities in complex commercial, antitrust, and consumer class action matters.

THE HAVILAND LAW FIRM, LLC has been appointed Co-Lead Counsel along with four (4) other prominent class action firms in a massive nationwide class action on behalf of millions of consumers and insurance companies located throughout the country. The case, *In re Average Wholesale Price Litig*, MDL 1456, is pending in the Federal District Court for the District of Massachusetts and involves dozens of drugs companies who are alleged to have engaged in a fraudulent sales and marketing sales scheme with respect to their drugs. A portion of the case involving only Massachusetts purchasers is currently being tried in a bench trial by Mr. Haviland and other Lead Counsel lawyers. (*See, e.g.*, Pretrial Order dated August 11, 2006 [attached hereto as Exhibit "A"]; *see also* excerpts of trial transcript [attached hereto as Exhibit "B"]). A second trial, involving the certified nationwide class of over 8 million consumers, is set to begin March 7, 2007 with Mr. Haviland serving as one of the principal Lead trial counsel.

THE HAVILAND LAW FIRM, LLC also presently represents the Office of Attorney General for the Commonwealth of Pennsylvania in two pending cases. The first case, a federal antitrust case involving sales of the prescription drug K-Dur 20, is pending in the Federal District Court for the District of New Jersey. The Court in that case has appointed Mr. Haviland to act as "Coordinating Counsel for the Non-Class Governmental Purchasers" which requires him to act as Liaison Counsel to the states to protect the interests of all Attorneys General in the action. *See* Order dated March 1, 2002 [at Exhibit "C"]. The second case involves claims by the Commonwealth for losses suffered by its three largest health benefits programs, Medicaid, PACE and PEPTF, arising out of the same sales and marketing scheme involved in the MDL 1456 action. Through his work in that case, Mr. Haviland has established a number of groundbreaking precedents in both state and federal court. *See, e.g., Commonwealth of PA v TAP Pharmaceutical Products, Inc.*, 885 A.2d 1127 (Cmmwlth Ct. 2006) (expanding the standing of the Office of the Attorney General to prosecute consumer claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.9.2 *et seq.*) [attached hereto at Exhibit "D"]; *Commonwealth of PA v TAP Pharmaceutical Products, Inc.* 415 F.Supp.2d 516 (E.D.P.A. 2005) (rejecting, for the first time in this District, the "three-step approach" to removal jurisdiction set forth in

*Meyers v Bayer AG,* 43F. Supp 2d 1044 (E.D.Wis.2001), and setting forth a new test for jurisdiction in the context of federal multi-district litigation) [attached hereto at Exhibit "E"].[1]

**2.    Litigation Practice/Department:**

Through representation in numerous precedent-setting cases, jury verdicts, and settlements, Mr. Haviland has earned a national reputation in the area of complex commercial and class action litigation. He has been recognized for his professional accomplishments in many ways, including his current appointments in large commercial and class action matters, and his selection as among "The Best Lawyers in Pennsylvania" by the *Pennsylvania Super Lawyers* magazine for the last two years and as among "The Best Lawyers in New Jersey" by the *New Jersey Super Lawyers* magazine.

---

[1]*See Law and Motion, Multidistrict Litigation–Remand Motion–Stay,* August 2006, 21 No. 8 Federal Litigation 5 (acknowledging that the *Meyers* test was "widely accepted" and citing the Pennsylvania case as the lone contrary precedent) [attached at Exhibit "E"].

**The Haviland Law Firm, LLC**                                            **Page 2**

**DONALD E. HAVILAND, JR.**, Managing Partner

Mr. Haviland concentrates his practice in the area of complex commercial and class action litigation, including antitrust, securities, consumer protection and product liability litigation.

He received a B.A. from Rutgers College, Rutgers University in 1987, *magna cum laude*. He received a J.D. from the Villanova University School of Law in 1992. Mr. Haviland is admitted to practice before the Supreme Court of New Jersey, the Supreme Court of Pennsylvania, the United States District Courts for the District of New Jersey, the Eastern District of Pennsylvania, and the Eastern District of Wisconsin, as well as the United States Court of Appeals for the Third Circuit. He has been admitted to practice *pro hac vice* in a number of state and federal courts as part of his national practice.

Mr. Haviland has been practicing in the area of complex commercial and class action litigation for the last 15 years. He began his career with the renowned class action litigation advocate and scholar, Herbert B. Newberg, the author of the seminal treatise, *Newberg on Class Actions*. *See* Acknowledgment to the *March 1992 Cumulative Supplement* to *Newberg on Class Actions*, Second Edition. Previously, Mr. Haviland was a partner at a nationally recognized complex litigation/class action law firm where he participated in dozens of successfully litigated class action cases and trials in the areas of antitrust, securities, consumer protection and product liability. Before founding The Haviland Law Firm, Mr. Haviland started the Complex Litigation/Class Action Department at Kline & Specter and ran the Department for five years. After he left in September of this year, the Department was disbanded.

Mr. Haviland has been involved in numerous class action trials and settlements resulting in multi-million and billion dollar awards. Among these, Mr. Haviland has participated in the following actions: *In re Asbestos School Litigation*, No. 83-0268 (E.D. Pa.); *In re Travel Agency Commission Antitrust Litigation*, Master File No. 4-95-107 (D. Minn.); *In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.); *In re Commercial Explosives Antitrust Litigation*, MDL No. 1093 (D. Utah); *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa); *In re Thermal Fax Antitrust Litigation*, C.A. No. 96-C-0959 (E.D. Wis.); *In re Isostatic Graphite Antitrust Litigation*, Master File No. 00-1857 (E.D. Pa.); and *Shaw, et al. v. Dallas Cowboys Football Club, Ltd.*, No. 97-5184 (E.D. Pa.). In addition, Mr. Haviland has been involved in numerous state court class actions, including the multi-state class action cases involving a range of commercial and consumer products.

Mr. Haviland takes great pride in having availed himself of every trial opportunity that has presented itself to him–opportunities are perhaps more scarce in class actions than in any other area of the law given the tremendous stakes involved. For example, Mr. Haviland was an integral member of the trial team that litigated successfully the infant formula cases in multiple state courts in the mid-1990's, and his work in the *In re Travel Agency Commission Antitrust* trial in Minnesota federal court is largely credited with having brought about the settlement of the case at trial. He became a core member of the trial team in the North Carolina state class action involving residential stucco–that trial led to a global settlement with all defendant manufacturers on the eve of trial. In early 2001, Mr. Haviland was one of four lead trial counsel in the class action trial in Wisconsin involving purchasers of thermal fax paper. In the Spring of 2005, Mr. Haviland was the principal architect of the litigation strategy and was Co-Lead trial counsel in a New Jersey trial that brought about the global resolution of the nationwide litigation involving unlawful sales and marketing practices with respect to the prescription drug, Lupron. Currently, Mr. Haviland is trying a Massachusetts state class action case in a bench trial in MDL 1456 and is set to try the nationwide consumer case in a jury trial beginning in March 2007.

## ADAM S. LEVY

Adam S. Levy, Esquire, of Counsel to The Haviland Law Firm, concentrates his national practice in the area of complex commercial and class action litigation, including antitrust, consumer protection, product liability, fire litigation, and other matters involving large-scale or catastrophic injuries and damages.

Mr. Levy received his Bachelor of Arts in Political Science from Dickinson College in 1989, and his law degree from the University of Dayton School of Law in 1992. While at the University of Dayton School of Law, Mr. Levy served as a member and editor on *The University of Dayton Law Review*, was a finalist in the Honorable Walter Rice Moot Court Competition, and received the American Jurisprudence Award in Legal Professions. He has had articles published both as a member of the law review and as a practicing attorney. Mr. Levy is admitted to practice in the courts of the Commonwealth of Pennsylvania and the State of New Jersey as well as the United States District Courts for the Eastern and Middle Districts of Pennsylvania and the District of New Jersey, and the United States Court of Appeals for the Third Circuit. He also has been admitted to practice *pro hac vice* in a number of state and federal courts as part of his national practice.

Mr. Levy currently participates in the handling of class action and related matters on behalf of plaintiffs involving pricing of prescription drugs. Plaintiffs in these cases, including consumers, insurers, governmental entities and others that paid for numerous prescription drugs, allege that pharmaceutical manufacturers defrauded them by manipulating and illegally inflating the Average Wholesale Prices upon which payments for such drugs are based. Along with Mr. Haviland, Mr. Levy is currently involved in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass), and before that appeared in *In re Lupron® Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass), involving fraudulent pricing of the prostate cancer medication Lupron®. Mr. Levy also recently represented one of several class representatives in the *In re Isostatic Graphite Antitrust Litigation*, Master File No. 00-1857 (E.D. Pa).

Previously, Mr. Levy was a partner at the main office of Nelson, Levine, de Luca and Horst, LLC ("NLdH"), located in suburban Philadelphia, Pennsylvania. At NLdH, Mr. Levy led a team of attorneys in the firm's Complex Litigation Department where he focused primarily on defending one of the country's largest automobile insurance carriers in significant class action cases throughout the nation. As one of the department's national coordinating counsel for this insurance carrier, Mr. Levy managed the defense of complex and class action litigation countrywide in cases attacking the insurer's most important and valuable programs and business practices.

Mr. Levy's trial experience includes several fire cases. In 1999, he served as co-trial counsel for several businesses and their subrogating insurance carriers in a product liability case arising from a massive fire that resulted in a $4 million settlement of his clients' claims following a unanimous liability verdict in favor of his clients. At the time, the settlement represented one of the largest of its kind in the history of the county in which the case was tried. This litigation was featured in both the *Philadelphia Legal Intelligencer* and *Pennsylvania Jury Verdict Review & Analysis*. At NLdH, Mr. Levy continued to represent plaintiffs in fire cases involving large losses, including his representation of a large waste management company to recover losses sustained as a result of a massive fire in Philadelphia, Pennsylvania in which Mr. Levy obtained a large settlement for his clients.

## MICHAEL J. LORUSSO

Michael J. Lorusso, Esquire, a lawyer at The Haviland Law Firm, practices in the areas of complex commercial and class action litigation, including antitrust, securities, consumer protection and product liability litigation.

He received a B.S. from Georgetown University in Washington, D.C. in 2002, majoring in finance. He received a J.D. from the Villanova University School of Law in 2006. He has been recommended by the Pennsylvania Board of Law Examiners for admission to the Pennsylvania Bar and the New Jersey Bar, and is currently in the process of being admitted.

With Messrs. Haviland and Levy, Mr. Lorusso currently is involved in various aspects of the firm's complex and class action litigation. He is active in the firm's representation of the national class of consumer purchasers of prescription drugs certified in the *In re Average Wholesale Price Litigation*, pending in Boston Federal Court, as well as representation of the firm's tenant-clients who lost property and suffered business interruption as a result of the catastrophic fire that occurred at the Continental Business Center in Bridgeport, Pennsylvania. He is also involved in several other commercial and consumer class action cases on behalf of the firm, involving, among other things, prescription drug marketing and sales.

## KAREN L. SZAJDECKI

Karen L. Szajdecki, a legal assistant at The Haviland Law Firm, provides legal support to the firm's attorneys in all areas of the firm's complex litigation and class action practice.

She received a B.A. in English from Arcadia University in 2005, *magna cum laude*. Ms. Szajdecki is a member of The Honor Society of Phi Kappa Phi. Before joining The Haviland Law Firm, Ms. Szajdecki was a legal assistant at the law firm of Dechert LLP.

With Messrs. Haviland and Levy, Ms. Szajdecki currently is involved in various aspects of the firm's complex litigation and class action cases. She provides legal support for the class action trial being conducted in Boston Federal Court in the case of *In re Average Wholesale Price Litigation*. She works directly with the firm's tenant-clients who lost property and suffered business interruption as a result of the Bridgeport Fire. She also is involved in several other consumer class action cases on behalf of the firm, involving, among other things, prescription drug marketing and sales.

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
IN RE PHARMACEUTICAL INDUSTRY       )
AVERAGE WHOLESALE PRICE             )
LITIGATION                          )   M.D.L. No. 1456
                                    )
                                    )   CIVIL ACTION NO. 01-12257-PBS
THIS DOCUMENT RELATES TO:           )
                                    )
    ALL ACTIONS REGARDING           )
    CLASS TWO OF TRACK ONE          )
                                    )
```

## PRETRIAL ORDER

August 11, 2006

Saris, U.S.D.J.

The above action has been set down for a NON-JURY TRIAL on 11/6/2006, at 9:00 a.m.  The plaintiffs will have 10 trial days (about 35 trial hours); each defendant will have 3 trial days (about 10 trial hours apiece).  The parties shall use affidavits or depositions in lieu of direct testimony.

A FINAL PRETRIAL CONFERENCE ("FTPC") has been scheduled for 10/31/2006, at 2:00 p.m.

By 9/1/2006, the parties shall make all expert disclosures as required by Fed. R. Civ. P. 26(a)(2).

By 10/2/2006, the plaintiffs shall make pretrial disclosures

(e.g., witnesses, designations of testimony,[1] and exhibits[2]) as required by Fed. R. Civ. P. 26(a)(3) and serve and file motions in limine.

By 10/9/2006, the defendants shall make pretrial disclosures (e.g., witnesses, designations of testimony, and exhibits) as required by Fed. R. Civ. P. 26(a)(3) and serve and file motions in limine.

By 10/16/2006, the parties shall serve and file objections to pretrial disclosures, oppositions to motions in limine, and any counter-designations of testimony.

By 10/27/2006, the parties shall serve and file trial briefs, proposed findings of fact and conclusions of law, and any witness affidavits that will be used in lieu of direct testimony.

---

[1] It is helpful if designations and counter-designations are submitted on the same copy, with designations highlighted in one color and counter-designations highlighted in another.

[2] Exhibits shall be premarked with one set of exhibit numbers. There should be no duplicative exhibit numbers. For example, if the plaintiff's exhibits are premarked ## 1 - 100, the defendant's exhibits should be premarked ## 101, 102, etc. At trial, counsel shall file with the Court an original and two (2) copies of the exhibits, ideally in binders.

NOTE: IF THIS COURT RESCHEDULES THE TRIAL AND FINAL PRETRIAL CONFERENCE DATES, COUNSEL ARE TO CONFER AND ADJUST ALL OTHER DATES IN THIS ORDER COMMENSURATE WITH THE NEW TRIAL DATE.

PATTI B. SARIS
United States District Judge

3

# EXHIBIT "B"

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


In Re:                          )
PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE         ) MDL No. 1456
LITIGATION                      ) Pages 4-1 -- 4-137


BENCH TRIAL - DAY FOUR

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
November 13, 2006, 9:15 a.m.




LEE A. MARZILLI and TIMOTHY J. WILLETTE
OFFICIAL COURT REPORTERS
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617) 345-6787

1 A P P E A R A N C E S:

2 For the Plaintiffs:

3      STEVE W. BERMAN, ESQ. and SEAN R. MATT, ESQ., Hagens
Berman Sobol Shapiro LLP, 1301 5th Avenue, Suite 2900,
4 Seattle, Washington, 98101-1090.

5      THOMAS M. SOBOL, ESQ. and EDWARD NOTARGIACOMO, ESQ.,
Hagens Berman Sobol Shapiro LLP, One Main Street, Cambridge,
6 Massachusetts, 02142.

7      JENNIFER FOUNTAIN CONNOLLY, ESQ., Wexler Toriseva
Wallace, One North LaSalle Street, Suite 2000, Chicago,
8 Illinois, 60602.

9      DONALD E. HAVILAND, ESQ., The Haviland Law Firm, LLC,
740 S. Third Street, Third Floor, Philadelphia, Pennsylvania,
10 19102.

11 For the Defendants:

12      JOHN T. MONTGOMERY, ESQ., Ropes & Gray, LLP, One
International Place, Boston, Massachusetts, 02210, appearing
13 for Schering and Warrick.

14      STEVEN A. KAUFMAN, ESQ., Ropes & Gray, LLP, One
International Place, Boston, Massachusetts, 02210, appearing
15 for Schering-Plough Corporation.

16      D. SCOTT WISE, ESQ. and KIMBERLEY D. HARRIS, ESQ.,
Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New
17 York, 10017, appearing for AstraZeneca.

18      NICHOLAS C. THEODOROU, ESQ., Foley Hoag, LLP, 155
Seaport Boulevard, Seaport World Trade Center West, Boston,
19 Massachusetts, 02210, appearing for Astra Zeneca.

20      WILLIAM F. CAVANAUGH, JR., ESQ., ADEEL A. MANGI, ESQ.,
Patterson, Belknap, Webb & Tyler, LLP, 1133 Avenue of the
21 Americas, New York, New York, 10036-6710, appearing for
Johnson & Johnson.
22
        STEVEN J. EDWARDS, ESQ., LYNDON M. TRETTER, ESQ.,
23 Hogan & Hartson, 875 Third Avenue, New York, New York, 10022,
appearing for Bristol-Myers Squibb.
24
Also present:   George B. Henderson
25              Assistant U.S. Attorney

# EXHIBIT "C"

MAR 1 2 2002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY WILLIAM T. WALSH, CLERK

RECEIVED

2002 MAR -4 A 11: 31

UNITED STATES
DISTRICT COURT

IN RE K-DUR 20 ANTITRUST LITIGATION

ENTERED
ON
THE DOCKET

CIVIL ACTION NO. 01-1652
(Hon. Joseph A. Greenaway, Jr.)

This Document Relates to:
ALL ACTIONS

FILED    3-7-02

WILLIAM T. WALSH, CLERK

By_____

01-1652

MAR 4 2002

WILLIAM T. WALSH
CLERK

ORDER

AND NOW, this _____ 1st _____ day of _____ March _____, 2002, upon

consideration of the following:

1.    Joint Motion For Reconsideration and Amendment of the Case Management Order

filed by Plaintiffs Walgreen Co., Eckerd Corporation, Albertson's, Inc., The Kroger Co., Safeway,

Inc., and Hy-Vee, Inc. (Plaintiffs in the *Walgreen* action), and Plaintiffs CVS Meridian, Inc. and Rite

Aid Corporation (Plaintiffs in the *CVS Meridian* action), and

2.    Plaintiff Commonwealth of Pennsylvania's Motion To Clarify and/or Amend the

Case Management Order,

IT IS HEREBY ORDERED, as follows:

1.    That the Motions are granted,

2.    That the Case Management Order entered in the above-captioned case on December

12, 2001 is hereby amended as follows:

a.    Paragraph 10(C) shall be amended as follows:

Douglas Patton, Esquire, of Dewsnup, King & Olsen
shall be "Coordinating Counsel for the Non-Class
Pharmacy Purchasers."

b. Paragraph 10(D) shall be inserted as follows:

D) For the Non-Class Governmental Purchasers:

1) Donald E. Haviland, Jr., Esquire, of Kline & Specter, P.C.
shall be "Coordinating Counsel for the Non-Class
Governmental Purchasers."

3. That the Clerk shall include a copy of this Order in the file of any subsequently
transferred action and serve a copy of this Order along with the Case Management Order entered on
December 13, 2001 as set forth in Paragraphs 6 (b) and (c) thereof.

JOSEPH A. GREENAWAY, JR.
UNITED STATES DISTRICT JUDGE

U S MAGISTRATE
JUDGE

2