# EXHIBIT "E"

Westlaw

415 F.Supp.2d 516                                                                                      Page 1
415 F.Supp.2d 516
(Cite as: 415 F.Supp.2d 516)

▷
Briefs and Other Related Documents
Pennsylvania v. Tap Pharmaceutical Products, Inc.E.D.Pa.,2005.
United States District Court,E.D. Pennsylvania.
Commonwealth of PENNSYLVANIA
v.
TAP PHARMACEUTICAL PRODUCTS, INC., et al.
No. Civ.A. 2:05-CV-03604.

Sept. 9, 2005.

**Background:** State sued pharmaceutical companies that allegedly engaged in unlawful sales and marketing scheme to artificially inflate average wholesale price (AWP) of drugs, asserting claims for unjust enrichment, misrepresentation or fraud, violations of Pennsylvania's Unfair Trade Practice and Consumer Protection Law (UTPCPL), and civil conspiracy. Companies removed action, and state moved to remand.

**Holdings:** The District Court, Sanchez, J., held that:

(1) state's parens patriae claim to recover Medicare copayments made by its citizens did not support federal question jurisdiction, and

(2) removal was not timely.

Motion granted.

Opinion on remand, 885 A.2d 1127.
West Headnotes
[1] Federal Courts 170B ⊂⟹1148

170B Federal Courts
    170BXIII Concurrent and Conflicting Jurisdiction and Comity as Between Federal Courts
        170Bk1148 k. Suspension or Stay of Proceedings. Most Cited Cases
District court could not stay state's motion to remand its removed civil action against pharmaceutical companies pending possible transfer of case to factually-related multi-district litigation proceedings, but rather was required to undertake individualized analysis of court's subject matter jurisdiction over action. Judicial Panel on Multidistrict Litigation, Rule 1.5, 28 U.S.C.A. foll. § 1407.

[2] Action 13 ⊂⟹68

13 Action
    13IV Commencement, Prosecution, and Termination
        13k67 Stay of Proceedings
            13k68 k. In General. Most Cited Cases
Power to grant a stay is subject to the existence of subject matter jurisdiction.

[3] Action 13 ⊂⟹68

13 Action
    13IV Commencement, Prosecution, and Termination
        13k67 Stay of Proceedings
            13k68 k. In General. Most Cited Cases
Federal court has the inherent power to stay a proceeding.

[4] Federal Courts 170B ⊂⟹29.1

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk29 Objections to Jurisdiction, Determination and Waiver
                170Bk29.1 k. In General. Most Cited Cases
Determinations of subject matter jurisdiction should be made on an individualized basis.

[5] Removal of Cases 334 ⊂⟹95

334 Removal of Cases
    334VI Proceedings to Procure and Effect of Removal
        334k95 k. Transfer of Jurisdiction and Effect of Removal in General. Most Cited Cases
Failure to establish subject matter jurisdiction over removed action and to comply with statutory procedural requirements for removal, including timeliness,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

415 F.Supp.2d 516
415 F.Supp.2d 516
(Cite as: 415 F.Supp.2d 516)

Page 2

renders removal ineffective. 28 U.S.C.A. § 1446(b).

[6] Removal of Cases 334 €==>11

334 Removal of Cases
    334I Power to Remove and Right of Removal in General
        334k11 k. Original Jurisdiction of United States Court. Most Cited Cases
Statutory right to remove extends to cases pending in state court that could have originally been brought in federal court. 28 U.S.C.A. § 1441(b).

[7] Federal Courts 170B €==>241

170B Federal Courts
    170BIII Federal Question Jurisdiction
        170BIII(D) Pleading
            170Bk241 k. Allegations in Pleadings in General. Most Cited Cases
Threshold issue of federal question jurisdiction begins with application of the "well-pleaded complaint rule," pursuant to which federal question jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint.

[8] Federal Courts 170B €==>241

170B Federal Courts
    170BIII Federal Question Jurisdiction
        170BIII(D) Pleading
            170Bk241 k. Allegations in Pleadings in General. Most Cited Cases
Federal jurisdiction cannot be created by anticipating a defense based on federal law.

[9] Federal Courts 170B €==>241

170B Federal Courts
    170BIII Federal Question Jurisdiction
        170BIII(D) Pleading
            170Bk241 k. Allegations in Pleadings in General. Most Cited Cases
Issue of federal question jurisdiction does not end with a facial review of the complaint.

[10] Removal of Cases 334 €==>19(1)

334 Removal of Cases
    334II Origin, Nature, and Subject of Controversy

        334k19 Cases Arising Under Laws of United States
            334k19(1) k. In General. Most Cited Cases
Pennsylvania's parens patriae claim to recover Medicare copayments which had been made by its citizens from pharmaceutical companies that allegedly engaged in unlawful sales and marketing scheme to inflate artificially the average wholesale price (AWP) of drugs did not present actually disputed and substantial issue of federal law, and therefore federal question jurisdiction did not exist to support companies' removal of action, which raised only state-law claims. 28 U.S.C.A. § 1441(b).

[11] Federal Courts 170B €==>161

170B Federal Courts
    170BIII Federal Question Jurisdiction
        170BIII(A) In General
            170Bk161 k. Federal Question Jurisdiction in General. Most Cited Cases
Only federal issues that are actually disputed and substantial can give rise to federal question jurisdiction.

[12] Antitrust and Trade Regulation 29T €==>132

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk132 k. Preemption. Most Cited Cases
(Formerly 92Hk2.1 Consumer Protection)

States 360 €==>18.15

360 States
    360I Political Status and Relations
        360I(B) Federal Supremacy; Preemption
            360k18.15 k. Particular Cases, Preemption or Supersession. Most Cited Cases
Federal Medicare law does not preempt a state's ability to regulate fraudulent billing practices under state consumer protection statutes. Social Security Act, § 1802, 42 U.S.C.A. § 1395.

[13] Removal of Cases 334 €==>79(1)

334 Removal of Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

334VI Proceedings to Procure and Effect of Removal
    334k78 Time for Taking Proceedings
        334k79 In General
            334k79(1) k. In General. Most Cited Cases

Unrelated opinion which was rendered by United States Supreme Court following state's commencement of fraud action against pharmaceutical companies and which was not directed at companies did not qualify as "order or other paper" under statute governing removal, so as to make removal of action timely, despite companies' contention that opinion provided basis for their good-faith removal of action. 28 U.S.C.A. § 1446(b).

*518 James A. Donohue, III, Thomas W. Corbett, Jr., Office of the Attorney General, Harrisburg, PA, Shanin Specter, Kline & Specter, P.C., Philadelphia, PA, for Commonwealth of Pennsylvania.

Stacey L. Gregory, Pepper Hamilton LLP, James J. Rodgers, Dilworth Paxson L.L.P., David W. Engstrom, Harkins Cunningham, Lisa A. Mathewson, Welsh & Recker, P.C., Brennan J. Torregrossa, Dechert Price & Rhoads, Joseph R. Heffern, Dechert, LLP, Erica Smith-Klocek, John C. Dodds, Morgan Lewis & Bockius LLP, Frank R. Emmerich, Jr., Conrad O'Brien Gellman & Rohn, PC, Lawrence D. Berger, Ballard Spahr Andrews and Ingersoll, LLP, David Newmann, Hogan & Hartson L.L.P., Joseph G. Derespino, Derespino & Dougher PC, Brian T. Feeney, Greenberg Traurig, LLP, Alan Klein, Duane Morris LLP, Richard L. Scheff, Montgomery McCracken Walker & Rhoads LLP, Beth Lillian Domenick, Fox Rothschild, LLP, Philadelphia, PA, John W. Boyle, John D. Goetz, Jones, Day, Reavis & Pogue, Pittsburgh, PA, Jack M. Stover, Jayson R. Wolfgang, Buchanan Ingersoll P.C. Harrisburg, PA, Joseph H. Young, Steven F. Barley, Hogan & Hartson LLP, Baltimore, MD, Maria Colsey Heard, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for Tap Pharmaceutical Products, Inc., et al.

## OPINION

SANCHEZ, District Judge.

The Commonwealth of Pennsylvania is suing thirty-eight pharmaceutical companies, alleging price-setting fraud. The pharmaceutical companies would like to remove the case to federal court. Because I find the lawsuit sounds solely in state law, I will grant the Commonwealth's motion to remand.

In their unified notice of removal, the Defendants assert the Commonwealth's lawsuit arises under federal law because recovery is predicated on the meaning of "average wholesale price," a term, which until recently, governed reimbursement for certain prescription drugs under Medicare. The Commonwealth argues its pleading raises purely state-law causes of action not dependent on the meaning of "average wholesale price" as the term was used in the Medicare statute. Alternatively, the Commonwealth argues even if federal-question jurisdiction exists, the Defendants failed to remove this case in a timely manner. The Defendants also ask this Court to stay its consideration of the motion to remand because they have sought transfer of this lawsuit to multi-district litigation underway in the District of Massachusetts, a request I will deny.

## *519 BACKGROUND

In March, 2004, the Commonwealth of Pennsylvania filed a lawsuit against thirteen pharmaceutical companies in Commonwealth Court of Pennsylvania, alleging violations of state law. The Commonwealth Court dismissed the complaint without prejudice on February 1, 2005 based upon the pharmaceutical companies' preliminary objections. Undeterred, on March 10, 2005, the Commonwealth, through its Attorney General, filed a Corrected Amended Civil Action Complaint ("Amended Complaint") that names thirty-eight pharmaceutical companies as defendants. Many of the thirty-eight entities identified in the caption are subsidiaries or affiliates of one another, so the allegations in the Amended Complaint are essentially directed against fourteen pharmaceutical defendants. Specifically, each Defendant faces a count for unjust enrichment, misrepresentation/fraud, and violations of the Commonwealth's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). There is also a count against the Defendants collectively for civil conspiracy, and the Commonwealth invokes its ability to proceed *parens patriae* (as "parent of the state") for those citizens who were adversely affected by Defendants' allegedly wrongful conduct.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Commonwealth complains the pharmaceutical companies have engaged in an unlawful sales and marketing scheme to artificially inflate the average wholesale price ("AWP") of drugs since 1991. Accordingly, the Amended Complaint prays for compensatory and punitive damages, as well as injunctive relief.

The AWP for a prescription drug is a number generated by the pharmaceutical company that manufactures the drug. AWP is the standard for reimbursement under many of the Commonwealth's social welfare programs.[FN1] Simply stated, the Commonwealth reimburses beneficiaries of various social welfare programs, such as Medicaid, for their purchase of prescription drugs. The price at which these beneficiaries purchase and receive reimbursement is based upon AWP data promulgated by the Defendants. Until recently, Medicare reimbursed health-care providers in the Commonwealth up to eighty percent of the AWP for prescriber-dispensed drugs used to treat Medicare beneficiaries.

> FN1. The three largest programs through which the Commonwealth reimburses its citizens for prescription drugs are Medicaid, the Pharmaceutical Contract with the Elderly Program ("PACE"), and the Pennsylvania Employees Benefit Trust Fund ("PEBTF"). Reimbursement is determined by statute for Medicaid, 55 Pa.Code §§ 1121.55-56, and PACE beneficiaries, 72 P.S. § 3761-509(6) (relying on the "average wholesale cost of the prescription drug dispensed"). The starting point for computation of benefits under both provisions is based on a drug's AWP. Pharmacy benefit managers administer reimbursement under the PEBTF program, and the contracts with these firms require the Commonwealth to provide reimbursement for prescription medication using a figure derived from AWP.

A substantial portion of the Amended Complaint is devoted to the recovery the Commonwealth seeks for itself, and the Defendants do not assert the meaning of AWP as it pertains to reimbursement at the state level implicates a federal issue. The Defendants also do not claim the Commonwealth's *parens patriae* claim to recover inflated copayments or direct purchases made by its citizens gives rise to federal-question jurisdiction. The only claim the Defendants assert confers federal-question jurisdiction is the Commonwealth's *parens patriae* claim to recover Medicare copayments based on allegedly inflated AWPs. The Defendants argue the Commonwealth must prove a discrepancy between reported AWPs and the meaning *520 of AWP as it was once used in the Medicare statute.

When Medicare based reimbursement for prescriber-dispensed drugs on AWP, there were no federal regulations for calculating a drug's "average wholesale price." Additionally, neither Medicare nor the Department of Health and Human Services established a process whereby AWPs could be accurately ascertained for federal Medicare purposes. Medicare beneficiaries in the Commonwealth who received prescriber-dispensed drugs paid the remaining twenty-percent of the drug's cost in the form of a copayment. These copayments were based on the AWP figures generated by the pharmaceutical manufacturers.

Pharmaceutical companies do not report AWP information directly to Medicare or the Commonwealth. Instead, drug manufacturers report AWP data to independent publishers of pharmaceutical-trade compendia designed to disseminate this information. The independent publishers do not verify the accuracy of AWP data. The Commonwealth claims the Defendants used the lack of government and private oversight of AWP data to their advantage by creating a "spread" between the price at which they sold prescription drugs to providers (e.g., physicians, pharmacies, and pharmacy benefit managers) and the AWP figure reported to the independent publishers. Defendants allegedly made their respective drug products more attractive to these providers because they could profit from reimbursements the Commonwealth and federal government paid on the spread. According to the Commonwealth, Medicare beneficiaries in Pennsylvania paid more for prescriber-dispensed prescription drugs as a result of inflated AWPs. To recover these overpayments, the Commonwealth's Attorney General is proceeding *parens patriae* against the Defendants. Defendants assert the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

415 F.Supp.2d 516                                                                                                    Page 5
415 F.Supp.2d 516
**(Cite as: 415 F.Supp.2d 516)**

definition of AWP raises a substantial question of federal law.

On July 13, 2005, Defendants filed a unified notice of removal with this Court pursuant to 28 U.S.C. § 1441(b), which permits cases to be removed to federal court if the plaintiff's cause of action arises under federal law. Two days later, Defendants submitted a Notice of Related Action (otherwise known as a "Tag-Along Notice") to the Joint Panel for Multi-district Litigation ("JPML") requesting this case, as well as ten others brought by Attorneys General from Alabama, Illinois, Kentucky, Minnesota, New York, and Wisconsin against many of the same defendants here, be transferred to MDL 1456, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, underway in the District of Massachusetts. The JPML issued a conditional transfer order as a matter of course on August 9, 2005, to which the Commonwealth filed a notice of opposition. As a result, the conditional transfer order is stayed until further order from the JPML pursuant to Rule 7.4(c).

### DISCUSSION

[1][2][3] Defendants' motion to stay is a request to have the jurisdictional issue decided in MDL 1456. They argue it would be an inefficient use of judicial resources for this Court to consider the motion to remand. As Defendants' brief states, "this lawsuit raises many of the same legal and factual issues that are present in dozens of average wholesale price ('AWP') actions that have already been transferred to the Honorable Judge Patti B. Saris in Boston for consolidated and coordinated pretrial proceedings." Def.'s Br. Stay 1. They argue the conservation of judicial resources and consistency of decision at the federal level outweigh any potential prejudice to the Commonwealth because Judge Saris, given her experience dealing with AWP *521 litigation thus far, is uniquely qualified to rule on the motion to remand. In response, the Commonwealth insists this Court should (and must) decide the threshold issue of jurisdiction. This Court agrees with the Commonwealth's position and concludes the power to grant a stay is subject to an important limitation: the existence of subject matter jurisdiction.[FN2]

> FN2. A federal court has the inherent power to stay a proceeding, but this opinion does not actually adjudicate the Defendants' motion to stay (by balancing competing interests) because subject matter jurisdiction is lacking.

[4] If this Court is to adjudicate any pretrial matters, it must satisfy itself that it has the power to do so. The reasons for this are straightforward: determinations of subject matter jurisdiction should be made on an individualized basis. *Illinois Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 851 (7th Cir.2004). Even when a final transfer order is pending, as is the case here, "Congress has indicated a preference for remands based on such individualized jurisdictional evaluations and a tolerance for inconsistency." *Id.* (holding district court had unfettered power to remand case while final transfer order was pending). A conditional transfer order from the JPML "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." JPML Rule 1.5. Therefore, granting a stay solely based on the existence of a factually-related MDL proceeding, without undertaking an individualized analysis of subject matter jurisdiction, would run counter to established case law, congressional intent, and JPML Rule 1.5, all of which contemplate a district court will act to resolve threshold jurisdictional concerns.[FN3]

> FN3. Defendants recognize the existence of subject matter jurisdiction is fundamental to a district court's ability to act. In support of their motion to stay, they request this Court to make a "preliminary assessment" of jurisdiction, determine if there are similar issues between this and other cases about to be (or already) transferred to MDL 1456, and then balance the competing interests to determine if a stay is appropriate. This was the approach developed in *Meyers v. Bayer AG*, 143 F.Supp.2d 1044 (E.D.Wis.2001). While the *Meyers* three-step approach is facially appealing, its application is not as clear as the methodology may appear at first glance. For example, there are no guidelines on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

415 F.Supp.2d 516
415 F.Supp.2d 516
(Cite as: 415 F.Supp.2d 516)

Page 6

what constitutes a "preliminary analysis" of jurisdiction, and the task of determining similarities between the case before the court and others awaiting transfer (or already transferred) is collateral to the issue of subject matter jurisdiction. Moreover, a faithful undertaking to determine such similarities would undermine any notion of judicial efficiency. Accordingly, this Court declines Defendants' invitation to follow *Meyers.*

Defendants' judicial efficiency and uniformity arguments overlook this critical point. Here, either this Court or Judge Saris must make an *independent* review of the notice of removal, the Amended Complaint, and the motion to remand to determine whether a federal question is present. The same degree of judicial resources must be expended here or in the District of Massachusetts to make an assessment of which party should prevail. Therefore, the existence of subject matter jurisdiction cannot be resolved more efficiently or uniformly in MDL 1456 because it is undisputed that one federal court must make an individualized assessment of the jurisdictional issues in this case. Multi-district litigation undoubtedly conserves judicial resources in many respects, but, in determining the threshold issue of jurisdiction, this Court concludes such an inquiry is fundamental to its purpose.

[5] Removal of a case to federal court is permitted if there is a basis for subject matter jurisdiction. The removal statute *522 also sets forth procedural requirements, including timeliness. 28 U.S.C. § 1446(b). Failure to satisfy either of these prerequisites renders removal ineffective.

Here, the parties disagree sharply on the substantive basis for removal, as well as whether Defendants filed their notice in a timely manner. Therefore, this opinion discusses both aspects, and the analysis tracks the order in which the governing provisions are set forth in the removal statute. Specifically, the first issue to resolve is whether, as Defendants assert, a federal question is present permitting removal under 28 U.S.C. § 1441(b).[FN4] Secondly, because the parties devoted substantial portions of their briefs to the timeliness issue, this opinion evaluates whether the removal comports with 28 U.S.C. § 1446(b).

> FN4. This subsection of the removal statute states, in relevant part: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

[6] The statutory right to remove extends to cases pending in state court that could have originally been brought in federal court. Defendants' unified notice of removal predicates subject matter jurisdiction solely on the theory that the Commonwealth's *parens patriae* claim "to recover Medicare Part B co-payments raises a substantial federal question in that it requires the resolution of issues of federal law relating to the federal Medicare program." Defs.' Not. Rmvl. ¶ 9. More specifically, Defendants maintain the Commonwealth's claim requires "proof of a discrepancy between the AWPs reported by [Defendants] and the meaning of AWP under the Medicare statute." Defs.' Mot. Stay (quoting *Montana v. Abbot Labs., 266 F.Supp.2d 250, 255 (D.Mass.2003)*). Defendants rely heavily on the language in *Abbot Laboratories,* an opinion dealing, in part, with Minnesota's attempt to recover Medicare co-payments using its *parens patriae* authority. The district court in *Abbot Laboratories* would have permitted removal, concluding the meaning of AWP presents a federal-question, however, First Circuit precedent required it to remand the case because no private remedy exists to seek redress for inflated AWPs. Here, Defendants contend a Supreme Court case from last term, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, ---U.S. ----, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)* ("*Grable*"), removes this prerequisite, making this case removable in light of the reasoning in *Abbot Laboratories.* Therefore, "the propriety of removal [here] turns on whether the case falls within the original 'federal question' jurisdiction of the United States district courts." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).* As Justice Brennan's opinion in *Franchise*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

415 F.Supp.2d 516  
415 F.Supp.2d 516  
**(Cite as: 415 F.Supp.2d 516)**

Page 7

*Tax Board* indicates, there is no "single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Id.*

[7][8][9] The threshold question of federal jurisdiction begins with application of the "well-pleaded complaint rule." According to this rule, "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Goepel v. Nat'l Postal Mail Handlers Union,* 36 F.3d 306, 309 (3d Cir.1994). Equally settled is the principle that "federal jurisdiction cannot be created by anticipating a defense based on federal law." *United Jersey Banks v. Parell,* 783 F.2d 360, 365 (3d Cir.1986) (citing *\*523Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). For example, in *Goepel,* the Third Circuit concluded the plaintiffs' complaint did not raise a federal question merely because it alluded to a federal contract. *Goepel,* 36 F.3d at 310. Similarly, in *United Jersey Banks,* the plaintiff's reliance on state-law causes of action signified the claim is not one arising under federal law. *United Jersey Banks,* 783 F.2d at 366. Both opinions appropriately noted, however, the issue of federal-question jurisdiction does not end with a facial review of the complaint.

The most recent guidance in completing this endeavor comes from the Supreme Court's opinion last term in *Grable,* which refines the approach a district court should follow to ascertain whether a removed case is within its original federal-question jurisdiction. In fact, the opinion does not refer to the well-pleaded complaint rule at all, but instead, is directed at those "less frequently encountered" situations where "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable,* 125 S.Ct. at 2367. Additionally, the opinion in *Grable* reveals the Court granted certiorari "to resolve a split within the Courts of Appeals on whether *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), always requires a federal cause of action as a condition for exercising federal-question jurisdiction." *Id.* at 2366 (footnote omitted). Thus, the Court was only concerned with the propriety of removal.

Grable brought a quiet title action in state court against Darue Engineering over real property the latter acquired from the IRS, which seized Grable's property to satisfy a tax deficiency. Grable's theory for invalidating Darue's title was based on the IRS's failure to provide notification of the seizure "in the exact manner required by [Internal Revenue Code] § 6335(a), which provides that written notice must be 'given by the Secretary to the owner of the property [or] left at his usual place of abode.' " *Id.* Grable insisted this provision necessitates personal service; not notification by certified mail. "Darue removed the case to federal court as presenting a federal issue, because the claim of title depended on the interpretation of the notice statute in the federal tax law." *Id.* Grable argued the lack of a federal right to enforce IRC § 6335(a) rendered removal improvident.

In affirming the propriety of removal, the Supreme Court held the absence of a federal cause of action was not a bar to the existence of federal-question jurisdiction. The Court emphasized, though, its holding in *Merrell Dow* was not to the contrary because the absence of a federal right of action is "relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Id.* at 2369. To summarize, the Court in *Merrell Dow* held that a negligence action, which was based upon an alleged violation of a federal labeling standard contained in the Food, Drug, and Cosmetics Act, did not raise an issue of federal law. Considering the intersection of congressional intent, judicial power, and federalism, the Court concluded the mere presence of a federal standard embedded in a state-law cause of action was not enough to warrant federal-question jurisdiction. *Merrell Dow,* 478 U.S. at 810-12, 106 S.Ct. 3229. Thus, granting federal-question jurisdiction over the plaintiff's state-law claim in *Merrell Dow,* without an accompanying federal cause of action, would have clearly upset the balance between the federal and state judicial spheres of responsibility because any state-law claim that referred to a federal standard would confer subject matter jurisdiction-a result the Supreme Court deemed untenable. *Grable* recognizes the *524 need to maintain this balance by emphasizing the appropriate test centers on whether

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

415 F.Supp.2d 516                                                                                    Page 8
415 F.Supp.2d 516
(Cite as: 415 F.Supp.2d 516)

*"a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."* Grable, 125 S.Ct. at 2368 (emphasis added).

As applied, the Court reasoned there was an actual dispute over the meaning of the Internal Revenue Code provision upon which Grable premised its claim to superior title. The dispute was substantial in that "the meaning of the federal tax provision" directly impacted the IRS's ability to fulfill its mission in collecting tax deficiencies because proper notice plays a critical role in seizing property from delinquents. *Id.* The opinion also directs district courts to proceed with caution in determining the propriety of removal because "even when a state action discloses a contested and substantial federal question, the exercise of jurisdiction is subject to a possible veto" after appropriate consideration of the "sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 2367. Upon consideration of this factor, the Court concluded "it will be the rare state quiet title case that raises a contested matter of federal law, [so] federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.* at 2368. The *Grable* analysis is completely consistent with the notion expressed by Justice Brennan in *Franchise Tax Board*: there are no bright-line rules to ascertain the existence of federal-question jurisdiction.

[10] Here, the Amended Complaint sets forth exclusively state-law causes of action against the Defendants for unjust enrichment, misrepresentation/fraud, violations of Pennsylvania's UTPCPL, as well as civil conspiracy. A facial assessment of the Commonwealth's Amended Complaint precludes removal based on federal-question jurisdiction because there is no suggestion anywhere in the pleading the Commonwealth is suing to vindicate a federal right or seek redress for a violation of federal law. Defendants, though, argue this case fits within the *Grable* framework as one where federal-question jurisdiction exists because the Commonwealth's state-law claims implicate significant federal issues. Although I agree with Defendants' proposition that *Grable* controls, its application here leads me to conclude the Commonwealth's *parens patriae* claim does not present an issue arising under federal law.

The first step under *Grable* is to assess whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial." *Id.* To reiterate, plaintiff Grable premised its quiet title action on the meaning of IRC § 6335(a), and to prevail, Grable needed to demonstrate this provision required the IRS to provide personal notification of the seizure, not service by certified mail. An alternative construction of the statute would defeat Grable's state-law claim. Here, the term "average wholesale price" is not "actually disputed" because the Commonwealth does not premise its *parens patriae* claim on the construction of these words as they appear in the applicable Medicare statute and regulations. Neither Congress nor Medicare ever defined "average wholesale price," and there were no regulations in place to approve AWP or verify the accuracy of the reported figures. Faithful adherence to the plain language of these words does not reveal an aspect of federal law that is "actually disputed." More importantly, a court (be it federal or state) does not need to ascribe any meaning to *525 the words "average wholesale price" for the Commonwealth to prevail. Instead, the Commonwealth must prove the Defendants' conduct was in derogation of state law. Provided the Commonwealth adduces evidence to support its allegations, Defendants must counter by marshaling facts to suggest their conduct did not violate state law. Like the federal labeling provision at issue in *Merrell Dow*, AWP was no more than a federal standard.[FN5] AWP governed the amount a healthcare professional would be paid for prescriber-dispensed prescription drugs. That is the only purpose it served and its meaning in that regard is not in dispute.

> FN5. In *Merrell Dow*, the plaintiff, to prevail, would have to demonstrate the federal labeling standard was violated. Here, though, the Commonwealth is not even alleging Defendants violated the Medicare reimbursement provision, so the relation of a federal law to the Commonwealth's claim is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

415 F.Supp.2d 516
415 F.Supp.2d 516
(Cite as: 415 F.Supp.2d 516)

Page 9

even more tangential than the situation in *Merrell Dow.*

[11] As part of their contention that subject matter jurisdiction exists, Defendants maintain the interpretation of the federal Medicare statute presents a substantial question of federal law. Under *Grable,* though, only federal issues that are "actually disputed and substantial" can give rise to federal-question jurisdiction. (The word "substantial" in *Grable* is linked, by the conjunction "and," to the language requiring the federal issue be "actually disputed.") Thus, the absence of an "actually disputed" issue of federal law, as is the case here, renders any discussion of substantiality superfluous. Rather than dismiss Defendants' argument on grammatical construction, this opinion briefly analyzes whether a substantial issue of federal law exists.

[12] In *Grable,* the meaning of the IRC provision directly impacted the ability of the IRS to fulfill its mission. Federal court adjudication served the national interest because of the need for uniform interpretation of the tax law provision at issue. *Grable,* 125 S.Ct. at 2368. Here, the administration of Medicare would be unaffected by a state-court adjudication of this matter for two reasons. First, AWP is no longer the standard for reimbursement under Medicare. Secondly, even if it were, a court would not need to construe the term "average wholesale price" beyond its plain meaning. Simply put, the method for reimbursement would be unaltered. At oral arguments, defense counsel posited a federal interest exists in retrospective claims to recover inflated co-payments because a state-court judgment finding the Defendants artificially raised AWP would mean the federal government also overpaid for Defendants' products. Counsel suggested this figure would be enormous. This argument, though, focuses on Defendants' conduct, not how the meaning of AWP in the Medicare statute affects that conduct. Furthermore, the amount of potential damages, if the federal government were to seek restitution, is collateral to the assessment of federal jurisdiction here because, as previously indicated, the result of this lawsuit would have no impact on Medicare's ability to perform its mission.[FN6] *526 Therefore, the Commonwealth's *parens patriae* claim to recover Medicare co-payments does not present a substantial issue of federal law.

FN6. Medicare does not preempt a state's ability to regulate fraudulent billing practices under state consumer protection statutes. *In re Pharm. Indus. Average Wholesale Price Litig.,* 263 F.Supp.2d 172, 188 (D.Mass.2003) (noting "there was no legislative intent to preempt supervision of the compensation of a person providing health services"); *see also* 42 U.S.C. § 1395 (precluding the exercise of federal control over administration of medical services or compensation to health-care providers). Thus, Congress anticipated states would be free to regulate and police conduct that causes detriment to its citizens without substantially affecting the administration of Medicare benefits. *In re Pharm. Indus. Average Wholesale Price Litig.,* 263 F.Supp.2d at 187 (explaining there is no "evidence of a clear and manifest intent to preempt the entire field of state regulation of fraudulent medical billing practices"); *see also Hofler v. Aetna U.S. Healthcare of Cal., Inc.,* 296 F.3d 764, 768 (9th Cir.2002) (remanding, in part, "[b]ecause Congress clearly did not manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions"). Here, the Commonwealth is proceeding *parens patriae* on its state-law causes of action, one of which is a violation of Pennsylvania's consumer protection law. This claim does not implicate a substantial federal interest because the Medicare statute, as structured and construed, authorizes states to supervise conduct that adversely affects Medicare beneficiaries without federal oversight.

Given the absence of an "actually disputed and substantial" issue of federal law, the need to assess the balance between federal and state spheres of judicial responsibilities is obviated. In closing, the general concern expressed in both *Grable* and *Merrell Dow* over the extent to which federal-state judicial roles could be disrupted if federal-question jurisdiction could be triggered with mere reference to federal law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

415 F.Supp.2d 516                                                                                          Page 10
415 F.Supp.2d 516
(Cite as: 415 F.Supp.2d 516)

applies here. Opening this Court to the Commonwealth's state-law *parens patriae* claim would be improvident because the reference to AWP is ancillary to the recovery sought. As the previous analysis demonstrates, removal under 28 U.S.C. § 1441(b) requires at a minimum, that the plaintiff's cause of action rely on a particular construction of federal law. Moreover, federal court adjudication of the disputed issue must serve the national interest in a substantial manner, without serious impact to our federalist system. To conclude, this Court is without jurisdiction.

The parties also differ sharply on the timeliness of removal and devoted a substantial portion of their briefs to the issue. Although the lack of federal-question jurisdiction is dispositive, this Court wishes to succinctly indicate the reasons for which it concludes the removal did not comport with 28 U.S.C. § 1446(b).

[13] Defendants argue the removal was timely because the Supreme Court's *Grable* opinion constitutes an "order or other paper" under section 1446(b) from which it first could be ascertained this case was removable. Not until the Supreme Court issued its *Grable* opinion, Defendants assert, could they have removed this case in good faith because Third Circuit precedent [FN7] and the holding in *Abbot Laboratories* required a private right of action for the existence of federal-question jurisdiction.[FN8] To assess Defendants' argument requires applying existing case law to the language in the second paragraph of section 1446(b), which reads as follows:

> FN7. *Smith v. Indus. Valley Title Ins. Co.,* 957 F.2d 90 (3d Cir.1992) (holding a private right of action is a prerequisite to federal-question jurisdiction).
>
> FN8. Defendants offer a second basis upon which they claim removal was timely. Specifically, they argue the complete lack of service upon ZLB Behring, one of the defendants named in the Amended Complaint, tolls the thirty day period for removal under section 1446(b) for all defendants. Under this theory, the thirty day period has not even begun to run for any defendant in this case. The Court, though, dismisses this argument as without adequate support.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, *order or other paper* from which it may be first ascertained*527 that the case is one which is or has become removable....
28 U.S.C. § 1446(b) (emphasis added).

To begin, the *Grable* opinion cannot be considered an "order" upon evaluation of Third Circuit precedent in *Doe v. American Red Cross,* 14 F.3d 196 (3d Cir.1993). In *American Red Cross,* the panel affirmed removal based on federal-question jurisdiction because the defendant, the Red Cross, was also a party to a factually-related Supreme Court case that resulted in an opinion expressly permitting the Red Cross to remove the case it was defending in state court.[FN9] The Third Circuit explained its holding in *American Red Cross* was a narrow one, and set forth the following test for a district court to determine if a subsequent court opinion is an "order":

> FN9. The Supreme Court's subsequent opinion was "not simply an order emanating from an unrelated action but rather ... an unequivocal order directed to a party to the pending litigation, explicitly authorizing it to remove any cases it is defending." *American Red Cross,* 14 F.3d at 202.

An order is sufficiently related when, as here, the order in the case came from a court superior in the same judicial hierarchy, was directed at a particular defendant and expressly authorized that same defendant to remove an action against it in another case involving similar facts and legal issues.
*Id.* at 203. Application of this test here readily reveals only the first element is satisfied. The Supreme Court did not direct its *Grable* opinion at the Defendants in this case, and the factual issues here are completely unrelated to those in *Grable.* Accordingly, *Grable* is not an order for purposes of section 1446(b). Although the Third Circuit has not considered whether a subsequent Supreme Court opinion constitutes an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"other paper" under section 1446(b), the majority rule from other district courts is that unrelated opinions fall outside this language.[FN10] "The plain language of the statute, referring to the 'receipt by the defendant, though service or otherwise,' implies the occurrence of an event within the proceeding itself; defendants do not ordinarily 'receive' decisions entered in unrelated cases." *Morsani v. Major League Baseball*, 79 F.Supp.2d 1331, 1333 (M.D.Fla.1999) (holding Supreme Court opinion was not an "order or other paper" for purposes of 1446(b)). This rationale for this rule is to preclude potentially disruptive effects at both the state and federal level.

> FN10. *See Metropolitan Dade County v. TCI TKR of S. Fla.*, 936 F.Supp. 958 (S.D.Fla.1996) (holding Federal Communications opinion was not "other paper" to trigger thirty-day period); *Kocaj v. Chrysler Corp.*, 794 F.Supp. 234 (E.D.Mich.1992) (holding Sixth Circuit opinion on ERISA preemption was not "other paper"); *Holiday v. Travelers Ins. Co.*, 666 F.Supp. 1286 (W.D.Ark.1987) (holding recent Supreme Court decisions were not "other paper[s]" under removal statute).

For the foregoing reasons, removal in this case was not timely. I will enter an order consistent with this opinion.

### *ORDER*

AND NOW, this 9th day of September, 2005, it is hereby ORDERED Plaintiff's Motion to Remand (Document 17) is GRANTED, Defendants' Motion to Stay Consideration of the Motion to Remand (Document 19) is DENIED; and Plaintiff's Motion for an Award of Fees and Costs (Document 17) is DENIED. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir.1996).

E.D.Pa.,2005.
Pennsylvania v. Tap Pharmaceutical Products, Inc.
415 F.Supp.2d 516

Briefs and Other Related Documents (Back to top)

• 2:05cv03604 (Docket) (Jul. 13, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT "F"



21 NO. 8 FEDLIT 5                                                                                                                    Page 1
21 No. 8 Federal Litigator 5
(Publication page references are not available for this document.)

**Federal Litigator**
Don Zupanec
**August 2006**
**LAW AND MOTION**
Multidistrict Litigation -- Remand Motion -- Stay

Betts v. Eli Lilly and Co.

2006 WL 1523060 (S.D.Ala. 2006)

**Case at a Glance**

Faced with both a remand motion and a motion for a stay pending a possible MDL transfer, a district court should preliminarily scrutinize the remand motion to determine whether removal was clearly improper.

**Summary of Decision**

Plaintiff sued Eli Lilly and Company, manufacturer of the prescription drug Zyprexa, in Alabama state court. Also named a defendant was a physician who prescribed Zyprexa for plaintiff. Plaintiff and the physician were both Alabama citizens. Lilly nevertheless removed the action to federal court on the basis of diversity jurisdiction. Lilly argued that the physician had been fraudulently joined, so his citizenship could be ignored in determining whether diversity was complete. Plaintiff moved for remand.

Multidistrict Zyprexa litigation was underway in the District Court for the Eastern District of New York. Lilly moved for a stay of proceedings, including plaintiff's remand motion, pending a request to transfer the case to the MDL court. The parties agreed that the removal court had authority to rule on the motion whatever the likelihood that the Multidistrict Litigation Panel would order a transfer. They differed on whether the court should exercise that authority or stay proceedings pending transfer.

Lilly argued that a stay would be in the interest of judicial economy, would avoid inconsistent rulings by different courts, and would prevent prejudice. District court took the position that when a request is made to defer a ruling on a remand motion pending a possible MDL transfer, the appropriate approach for the court is to give "preliminary scrutiny" to the merits of the motion. If this review makes clear that removal was improper, the action should be remanded rather than deferring a ruling on the motion. See Meyers v. Bayer AG, 143 F.Supp.2d 1044 (E.D.Wis. 2001).

The court considered this approach preferable to a "reflexive rule" that automatically defers a decision on a remand motion whenever it appears that a jurisdictional issue with at least superficial similarity will be raised in other actions that have been or may be transferred to an MDL court.

The economy and efficiency of the removal court is presumably always enhanced by deferring a ruling, since no effort is required to do nothing. But accurately assessing judicial economy requires that consideration be given to all courts that may be involved -- a deferral that saves one court time and effort but requires other courts to spend additional time and effort does not conserve judicial resources. Giving preliminary scrutiny to a remand motion and sending a case back to state court if removal clearly was improper eliminates any need for the MDL Panel to review and hear arguments on transfer requests, objections, and post-transfer matters. If a remand motion is straightforward and easily resolved, the court believed it makes no sense to defer a ruling.

When preliminary scrutiny leads to a determination that remand is required, time spent scrutinizing the remand motion is recaptured in disposition of the motion. However, if the court concludes that deferral is appropriate, it can-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-12257-PBS   Document 4726-6   Filed 09/18/07   Page 15 of 16

21 NO. 8 FEDLIT 5                                                                                          Page 2
21 No. 8 Federal Litigator 5
(Publication page references are not available for this document.)

not directly recapture the time and effort expended in reaching this conclusion. This arguably results in loss of judicial economy.

The court did not consider this possibility to warrant rejection of its approach. Scrutinizing jurisdictional issues when litigation is at an early stage is "highly economical," regardless of the outcome. Scrutiny almost always can be completed in a short amount of time, and therefore does not have a significant effect on overall judicial economy. More important, the expenditure of time is much less than what would be required of the MDL Panel and MDL courts if rulings on even obvious remand motions were automatically deferred.

As for possible inconsistent rulings, the court said that because removal courts will rule on only obvious remand motions, the possibility of inconsistent results on jurisdictional issues that are truly indistinguishable is largely theoretical. Parties have no right to remain in federal court when subject matter jurisdiction is plainly lacking. Thus, a defendant who has improperly removed a case to federal court is not prejudiced in any meaningful sense by an early rather than late remand.

**Litigation Tips**

This approach has been widely accepted since its express articulation in *Meyers v. Bayer AG*, 143 F.Supp.2d 1044 (E.D.Wis. 2001). See, e.g., *Rutherford v. Merck & Co.*, 428 F.Supp.2d 842 (S.D.Ill. 2006); *Edsall v. Merck & Co.*, 2005 WL 1867730 (N.D.Cal. 2005); *Nekritz v. Canary Capital Partners, LLC*, 2004 WL 1462035 (D.N.J. 2004). Cf. *Pennsylvania v. Tap Pharmaceutical Products, Inc.*, 415 F.Supp.2d 516 (E.D.Pa. 2005) (declining to follow *Meyers*).

When a plaintiff moves for remand to state court and a defendant seeks a stay pending a ruling by the MDL panel on a transfer motion, *Meyers* calls for a three-step analysis. Step one is a preliminary analysis of the merits of the remand motion. If, based on this, it is clear that removal was improper, the motion should be granted and the action remanded.

If the remand motion raises a jurisdictional issue that appears factually or legally difficult, step two calls for the court to determine whether identical, or at least similar, issues have been raised in other actions that have been or may be transferred by the MDL panel. If they have not, *i.e.*, the issue is specific to the case before the court, it should rule on the remand motion.

If the issue is both difficult and identical or similar to jurisdictional issues in cases that have been or are likely to be transferred, the court proceeds to step three: consideration of the stay request. This requires assessing interests of judicial economy and balancing hardship to the moving party if a stay is not granted against potential prejudice to the nonmoving party if it is. See *Meyers, supra*.

Given the post-*Meyers* acceptance of this approach, it should be no surprise if a court faced with both a remand motion and a motion to stay proceedings pending a possible MDL transfer utilizes the same approach in deciding how to proceed.

**Research Leads**

*Federal Procedure, L.Ed.* §§ 55:8, 55:23

Wright, Miller, & Cooper, *Federal Practice & Procedure* § 3866

*Business and Commercial Litigation in Federal Courts* § 11.13 (Robert L. Haig ed.) (West Group & ABA 1998)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Rutter Group Practice Guide: Federal Civil Procedure Before Trial* 4:930

Herr, *Annotated Manual for Complex Litigation, Fourth Edition* § 20.13

West's Key Number Digest, Removal of Cases ⚷36, 107(.5), 107(7), 303

© 2006 Thomson/West

21 NO. 8 FEDLIT 5
END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.