# EXHIBIT 5



# THE
# HAVILAND
## LAW FIRM
WWW.HAVILANDLAW.COM

July 27, 2007

The Honorable William G. Bassler
130 Bodman Place, No. 15
Red Bank, NJ 07701

    Re:    **International Union of Operating Engineers, Local No 68 Welfare Fund v. AstraZeneca Pharmaceuticals, L.P., et al.**

Dear Judge Bassler:

    I am writing to you, per our telephone conference Monday, July 23, 2007, to provide you with a quick overview of the case, as well as a brief statement as to Class Plaintiffs' view of how the case should proceed from now until trial next year.

## Nature of the *Local 68* Case:  Plaintiff's Allegations

    Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, ("Plaintiff") filed this class action case in the Superior Court of New Jersey, Monmouth County on June 30, 2003. *See* Complaint on the "Special Master CD" included herewith.[1] The Complaint named over forty (40) pharmaceutical drug companies ("Defendants"), as well as three (3) physicians ("physician-defendants") who pleaded guilty to conspiring with Defendant AstraZeneca to violate of the federal Prescription Drug Marketing Act ("PDMA").[2] The Complaint alleges an overarching

---

[1] We have included with this letter a CD entitled "Special Master CD" including all the relevant pleadings and Orders of the Court, as requested by the Special Master. Reference to these exhibits is made throughout this letter.

[2] The physician-defendants pleaded guilty to conspiring with AstraZeneca to violate the PDMA by knowingly and deliberately causing claims for payment to be made for free samples of AstraZeneca's prostate cancer drug, Zoladex®. AstraZeneca similarly pleaded guilty to conspiring with physicians by providing them with free samples of Zoladex® knowing and expecting that the physicians would make illegal claims for reimbursement for those free samples in violation of the PDMA. AstraZeneca also paid hundreds of millions of dollars in criminal fines and as part of a civil settlement with the federal government and state Medicaid programs. Some of the other Defendants have likewise pleaded guilty to federal crimes and/or paid criminal fines and moneys under civil settlements with the federal government and state Medicaid Programs.

fraudulent scheme and conspiracy involving the sales, distribution and marketing of prescription drugs manufactured, distributed and sold by the Defendants. Specifically, the Complaint alleges the following five (5) causes of action: (1) unjust enrichment; (2) fraud; (3) civil conspiracy; (4) concert of action; and (5) violation of the New Jersey Consumer Fraud Act ("CFA"). Each of these causes of action has survived Defendants' joint and several motions to dismiss. *See* Transcript of April 5, 2007 Hearing (denying Defendants' Motions to Dismiss).

Plaintiffs' case focuses on an industry benchmark utilized throughout the healthcare industry known as "Average Wholesale Price," or "AWP" for short. Plaintiffs allege, among other things, that the Defendants deliberately overstated or inflated the true average wholesale prices for their drugs by reporting fraudulent AWPs for their cancer, inhalant and miscellaneous other drugs to well-known industry drug pricing publications, such as the *Red Book*, which was based in Montvale, New Jersey for most of the Class period. Various public and private assistance programs rely upon the reported AWPs, as inflated by Defendants, for determining their reimbursement rates for drugs, including the co-payment portions paid by private assistance patients and their carriers. Private assistance patients, including members of the Class, paid co-payments and/or deductibles based on the inflated AWPs, as did members of the Class without any assistance who paid the full price for their drugs.

The reliance by Plaintiffs and the Class on artificially inflated prices as established and reported by Defendants for their drugs caused the Plaintiffs and the Class to overpay. Plaintiffs allege that Defendants intentionally inflated their AWPs in order to create a "spread" for their drugs between the inflated prices paid by Plaintiffs and the Class and the actual acquisition costs paid by doctors and pharmacists, who provide the drugs to members of the Class. Doctors and pharmacists profited from these spreads which, for certain drugs, meant thousands of dollars in profits per drug. Certain Defendants labeled their scheme "Return to Practice" or "RTP", which was simply a euphemism for plying doctors with illegal bribes in the form of inflated billings for expensive cancer agents. The Complaint alleges that the Defendants and physicians, like the physician-defendants specifically named in the Complaint, conspired to conceal their unlawful conduct from Plaintiffs and the Class, which concealment allowed the fraud to continue throughout the 1990s and into the new millenium.

Plaintiffs further allege that Defendants distributed free samples of their drugs to medical providers "knowing and expecting" that the providers would bill for the free drugs in violation of federal laws. Several Defendants, such as TAP Pharmaceuticals and AstraZeneca, have pleaded guilty to federal crimes for such conduct, and several others, such as Schering and Amgen, have had federal allegations levied against them [and/or their agents] concerning such unlawful "sampling" conduct. In such instances, where the drugs are provided for free with the expectation that Plaintiffs and the Class would be billed at the inflated AWPs, the "spread" is effectively the full amount of the inflated AWP, *i.e.* the difference between $0 and the AWP.

Plaintiffs also allege that Defendants provided various "other inducements" to implement their scheme and conspiracy to promote sales of their drugs at inflated prices over the sales of

competitor drugs and/or over the implementation of alternative treatment regimens that might be prescribed to cancer patients, such as radiation, surgery, or other recognized, alternative remedies. These "other inducements" included kickbacks to medical providers consisting of cash payments, lavish trips to resorts, free consulting services, golf outings and other free entertainment, free continuing medical education courses, and debt forgiveness, among other things.

The Complaint alleges a number of acts and practices employed by the Defendants in furtherance of their scheme and conspiracy to defraud Plaintiff and the Class, which included creation of centralized and national marketing, distribution and sales plans implemented through their employees and agents.

On the strength of the recent *Vioxx* decision,[3] involving this same representative Plaintiff, Plaintiff seeks certification of a nationwide Class defined as follows:

> All persons and entities in New Jersey and throughout the country who, during the period beginning at least 1991 through the present, paid any portion of the cost of cancer, inhalant and miscellaneous other drugs manufactured, marketed, distributed and sold by Defendants, which cost was based, in whole or in part, upon the published AWPs for such drugs. Excluded from the Class are Defendants, any entity in which a Defendant has a controlling interest, and their legal representatives, heirs, successors, any governmental entities, and any person or entity seeking to make a claim under ERISA, Medicare, or federal law.

**Other AWP Lawsuits and Counsel Representing Plaintiffs in This Case**

Various AWP lawsuits are pending against Defendants throughout the country. By far, the largest of these cases is the centralized multi-district litigation pending in Boston Federal Court before the Honorable Patti B. Saris, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Master File No. 01-CV-12257-PBS. Judge Saris has successfully presided over the consolidated cases – numbering over 200 in all, for over 6 years. In January 2006, Judge Saris certified a near-nationwide Class of all consumer Medicare beneficiaries, and a Massachusetts-only, statewide Class of private third party payors ("TPPs") and consumers. She recently held a bench trial in a parallel statewide class case, involving Massachusetts purchasers only,[4] against four (4) Defendants, AstraZeneca, Bristol-Myers Squibb, Johnson & Johnson and Schering, and rendered a lengthy verdict. *See* Verdict at Special Master CD. Various AWP lawsuits have been brought by individual consumers, third-party payors, States, the U.S. Department of Justice and *Qui Tam* Relators. A class action was certified in MDL 1456 on behalf individual Medicare consumers nationally (Class 1); Medicare third-party payors in Massachusetts only (Class

---

[3] *See* International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., 2004 WL 376338 (N.J. Super. 2004) (on Special Master CD).
[4] *See* January 2006 Class certification decision in *In re: Pharmaceutical Industry Average Wholesale Price Litig.* on Special Master CD (certifying a near-nationwide Class of consumer Medicare beneficiaries, and a Massachusetts-only Class of private consumers and third party payors.)

3

2); and non-Medicare individual consumers and third-party payors in Massachusetts only (Class 3). Over twenty (20) actions have been brought by State Attorneys General in their home state courts and were removed to federal court by the defendants. Many of these are now awaiting a decision on pending motions to remand to state court. Some state cases have already been remanded to state court. As discussed below, the instant action was remanded to New Jersey by Judge Saris after an improper attempt by the Defendants to remove it to federal court. *See* Remand Decision.

Recently, a bench trial of the two Massachusetts-only Classes occurred before Judge Saris. This trial involved Defendants that are designated by Judge Saris as "Track 1 Defendants" (consisting of just four (4) of the many Defendants in the case) and resulted in a finding of liability and damages as to some of them and conduct that was "of concern" to the Court as to all of them.

The undersigned, Lead Counsel for Plaintiffs in this action, has been recognized by the Boston Court as one of the Co-Lead Counsel for Class Plaintiffs in MDL 1456. I am also counsel to the Commonwealth of Pennsylvania in its separate AWP action (currently awaiting a decision by Judge Saris on its remand motion). And, I am Lead Counsel for a class of consumer plaintiffs in a class action brought in Arizona state court, entitled *Swantson v. TAP Pharmaceuticals, et al.* I was previously appointed as Lead Counsel for the certified classes in prior AWP-related litigation in the State of New Jersey (before the Honorable Joseph C. Visalli in Cape May County) and in the State of North Carolina brought against three (3) defendants here, TAP Pharmaceuticals, Abbott Laboratories and Takeda Chemical Industries, Ltd., for the unlawful conduct involving the sales and marketing of the prostate cancer drug, Lupron.

**Procedural History of the *Local 68* Case**

Plaintiff filed its Complaint in this case on June 30, 2003. On July 3, 2003, Defendant AstraZeneca filed a Notice of Removal in which the other Defendants joined. On July 9, 2003, Plaintiff moved to remand the case to the Superior Court of New Jersey. The motion to remand was denied by the District Court for the District of New Jersey without prejudice for reconsideration by the MDL court. Nearly three years later, on April 14, 2006, Judge Saris in MDL 1456 issued an Order granting Plaintiff's motion to remand. As part of that Order, Judge Saris found that national counsel for AstraZeneca made a material misrepresentation in the notice of removal in violation of Rule 11 with respect to whether the physician defendants would consent to removal and join in the removal motion following service of process. *See* Remand Decision.

**Current Posture of This Case**

Since remand and reinstatement of the case, Case Management Order 2 was entered; the parties have litigated motions to dismiss the substantive claims of the Plaintiff (with the Court denying those motions to dismiss); stipulated consent orders have been entered permitting the exercise of personal jurisdiction over several foreign Defendants who first contested personal jurisdiction; and substantive discovery requests have been exchanged by the parties. Some discovery responses (namely, to general requests for production of documents served by Plaintiffs on all of the

4

Defendants) already have come due, while others will come due shortly. But, those Defendants that have "responded" to Plaintiffs' request for production have not yet provided any substantive responses, due primarily to the lack of a governing protective order. Plaintiff and Defendants have been able to agree to some of the language of a "joint" protective order, but have not been able to agree on some significant issues. The lack of a protective order is holding up substantive discovery from the Defendants and stalling this case in its tracks. This is an issue that requires immediate attention to get this case moving in earnest. The parties intend to formally bring this issue to Your Honor's attention in short order.

As we suggested to you on our call, Class Plaintiffs expect to resolve their Motion for Class Certification, seeking a nationwide class against at least the in-state Defendants, by early Fall 2007, with substantive discovery (documents and depositions) to proceed forthwith. Since there has been one bench trial in this matter already, and trials are slated to take in various state courts beginning in early 2008, we fully expect to be in a position to try this case by Fall of 2008, with the assistance of the Court and the Special Master.

While we have not have need of any outside assistance in this case to date, we look forward to working with Your Honor and to the assistance that you will provide the parties in moving this action towards an expeditious resolution.

                                              Respectfully,

                                              DONALD E. HAVILAND, JR.

DEH:qhd
Enclosure

cc:     John Keefe, Jr., Esquire (w/o encl.)
        Andrew Jackson, Esquire (w/o encl.)
        Michael Rosenberg, Esquire (/o encl.)