UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | 
| | MDL No. 1456 |
| | Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc.*, CIVIL ACTION NO. 06-11337-PBS | Magistrate Judge Marianne B. Bowler |

**THE UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S MOTION FOR A PROTECTIVE ORDER RELATING TO THE DEPOSITION OF DUANE BURNHAM AND THOMAS HODGSON**

# EXHIBIT 4



## ABBOTT LABORATORIES

1710 Rhode Island Avenue, N.W. #300  
Washington, DC 20036

Phone: 202/659-8524  
Fax:   202/466-8386

### FACSIMILE COVER SHEET



TO: Mark Barmak          DATE: 4/4/97

FR:  David W. Landsidle         No. of Pages: 2
     Cynthia Sensibaugh   X
     Rosemary Haas
     Sandie Preiss
     Lee Harp
     Lorna Huff

**Additional Comments:**

Mark, enclosed is the position paper on the President's acquisition cost proposal that is being used by the American Society of Clinical Oncology. The renal providers will use this as a guide in drafting their position paper.

In response to your question as to why the Docs oppose acquisition costs, under the proposal the Docs would only get 80% of what they paid for the drugs. If they don't recover the 20% from the patient, then they would not cover the drug cost. Docs are currently paid 80% of AWP, a larger figure, which allows them to cover their drug cost even if they are unable to recover the 20%.

Cindi

Highly Confidential                                          ABT-DOJ 296152



## ABBOTT LABORATORIES

1710 Rhode Island Avenue, N.W. #300  
Washington, DC 20036

Phone: 202/659-8524  
Fax:   202/466-8386

### FACSIMILE COVER SHEET

TO: Chris Lockett, Guest        DATE: 4/0/97

FR: David W. Landsidle  
    Cynthia Sensibaugh ✓  
    Rosemary Haas  
    Sandie Preiss  
    Lee Harp  
    Lorna Huff

No. of Pages: 2

**Additional Comments:**

Chris, As we discussed, this is what the oncologists are using. They are opposing the President's acquisition cost proposal and not offering any alternative. The renal community plans to use this as a guide for drafting their position paper.

Cindi

Highly Confidential

ABT-DOJ 296153

## ADMINISTRATION PROPOSAL ON MEDICARE DRUG REIMBURSEMENT

The President's budget proposes to reduce the amount that Medicare pays for drugs administered in physician offices. Instead of paying 80% of the average wholesale price of a drug (with the patient paying the remaining 20%), Medicare would pay 80% of what the proposal misleadingly calls the physician's actual acquisition cost. The proposal is unworkable and unfair, may make it impossible for physicians to carry on their practices, and should not be adopted.

**The Proposal Is Not Based on True Acquisition Cost** – Although ostensibly basing Medicare payment on a physician's acquisition cost, the proposal would actually establish arbitrary rules that are only remotely connected to the acquisition cost of the drug being reimbursed. Actual acquisition cost would be deemed to be the lowest price paid by the physician for the drug in the past 6 months regardless of the cost of the drug administered to the Medicare patient. Acquisition cost would be capped by a national median based on prices 6-18 months old regardless of current market conditions. These rules would result in out-of-pocket losses by physicians.

**The Proposal Ignores Certain Costs Incurred by Physicians** – Even if acquisition cost were accurately computed, reimbursement on that basis would not cover all the costs. Additional costs include staff time in procuring and storing the drug; the opportunity cost of the capital tied up in drug inventory; wastage and spillage; sales tax in several states; and unpaid coinsurance.

**The Proposal Would Create an Accounting Nightmare for Physicians** – Drug companies may offer pricing that covers more than one product; there may be year-end rebates based on the amount of drug purchased; the purchase of one product may earn a discount on another product; free vials may accompany a number of purchased vials, etc. Physician practices are in no position to sort through these complexities and determine the cost of each drug, but if they make any errors in calculating the cost of a particular drug, they may be charged with making false claims.

**The Proposal Would Lead to Overall Inadequate Reimbursement** – The current payment system for drugs compensates for Medicare's gross underpayment for the administration service. Currently, the Medicare payment for the basic infusion service is only about $53 even though the direct costs (staff, supplies) of the service have been determined by Medicare to be $102 and total costs (including rent, utilities, etc.) may be about $185. Until Medicare rectifies the payment amount for the administration service, physicians rely on the drug payments to cover their costs. If their costs are not covered, physicians cannot carry on their practices.

**The Proposal Would Be Anti-competitive** – Under the proposal, physicians would have no incentive to seek lower drug prices and manufacturers would have no incentive to compete on the basis of price. Drug prices could rise as a result. Because of the adverse incentives of cost reimbursement, Medicare is moving away from it for other services.

Highly Confidential

ABT-DOJ 296154