UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 <br><br> CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL CONSOLIDATED PRIVATE CLASS ACTIONS | JUDGE PATTI B. SARIS |

**INDIVIDUAL MEMORANDUM OF AVENTIS PHARMACEUTICALS INC.
IN OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF TRACK 2 CLASS CERTIFICATION
REGARDING STATE LAW ISSUES**

Aventis submits this individual memorandum to address additional and unique company-specific issues that preclude plaintiffs' requested certification of Classes 2 and 3 against Aventis.[1]

This Court previously rejected plaintiffs' argument that the law of the state where a defendant has its principal place of business should control; that decision should remain undisturbed for all of the reasons set forth in the Amgen/Watson submission. Were the Court now to reverse itself, however, the law of Missouri – and not New Jersey – would apply to Aventis and preclude third-party payor ("TPP") claims for the majority of the class period. In addition, to the extent it applies here, recent case law developments in New Jersey provide further support for the denial of class certification against Aventis.

---

[1] Aventis Pharmaceuticals Inc. ("Aventis") joins in the Response filed by Amgen and Watson to Plaintiffs' Supplemental Memorandum in Support of Track 2 Class Certification Regarding State Law Issues ("Supp. Mem."), which is being filed concurrently herewith and is incorporated herein by reference.

2621560v5

1

**I.     Under Plaintiffs' Analysis, Missouri Law Would Apply To Plaintiffs' Claims For Most Of The Proposed Class Period**

Aventis Pharmaceuticals Inc. was formed on December 15, 1999, when Rhone-Poulenc Rorer, Inc. merged with Hoechst Marion Roussel, Inc. ("HMR").  HMR developed and launched Anzemet – the only Aventis drug that remains at issue – from its principal place of business in Kansas City, Missouri.[2]  From Anzemet's launch in September 1997 through March 20, 2001, all Anzemet price reporting originated from HMR's headquarters in Missouri.  *See id.*  Moreover, Pipefitters bases its purported Article III standing on Anzemet's 1999 price[3] – and all 1999 Anzemet pricing decisions were made by HMR in Missouri.  Indeed, plaintiffs separately sued HMR in this action, and Aventis's liability, if any, for Anzemet marketing prior to Aventis's creation are premised on Aventis's status as a successor-in-interest to HMR.

Adopting *arguendo* plaintiffs' assertion that "[d]efendants have every reason to expect that the law of their home states, where they maintain their headquarters and principal places of business, governs their conduct," (Supp. Mem. at 3), HMR, and Aventis as its successor, would have expected that *Missouri* law would apply to plaintiffs' claims arising out of pricing decisions made in Missouri.  Those Missouri pricing decisions were in place through March 2001 – over one-half of the proposed class period.  Under plaintiffs' new choice-of-law

---

[2] *See, e.g.*, October 17, 1997 Letter to Pricing Compendia (attached as Ex. A to Decl. of David M. Glynn in Supp. of Individual Mem. of Aventis Pharmaceuticals Inc. in Opp'n to Pls.' Supplemental Mem. in Supp. of Track 2 Class Certification Regarding State Law Issues ("Glynn Decl."), filed concurrently herewith); *see also* 1999 Annual Registration (attached as Ex. B to Glynn Decl.); January 26, 2000 Letter to Pharmaceutical Buyers (attached as Ex. C to Glynn Decl.).

[3] In Class Plaintiffs' Submission Regarding Reimbursements For Anzamet [sic] by Pipefitters Local 537 Trust Fund (Dkt. 4677), plaintiffs state that "the Fund paid for Anzamet [sic] based upon the 1999 AWP for the drug."

analysis, therefore, the Court would be obligated to apply Missouri law to plaintiffs' claims from September 1997 through at least March 2001.[4]

## II. Third-Party Payors Have No Standing To Sue Under Missouri's Merchandising Practices Act

Under Missouri's Merchandising Practices Act,[5] TPPs have no standing to sue, a point which plaintiffs concede. *See* (Supp. Mem. at 21-22) (conceding that Missouri law does not allow TPP actions and stating that Missouri "should be carved out of a nationwide Class 2 and the nationwide TPP portion of Class 3"). The Missouri Merchandising Practices Act ("MMPA") grants standing only to "person[s] who purchase[] or lease[] merchandise *primarily for personal, family, or household purposes* and thereby suffer[] an ascertainable loss of money or property from a violation of the statute." *Id.* (emphasis added). Under Missouri law, union health and welfare plans and other TPPs purchase drugs for "a business purpose: to serve the Plan's clients." *In re Express Scripts, Inc., Pharmacy Benefit Management Litigation*, MDL No. 1672, 2006 WL 2632328, *10 (E.D. Mo. Sept. 13, 2006). Accordingly, were the Court to adopt plaintiffs' home state proposal, Missouri law would preclude Class 2 and Class 3 TPP claims prior to at least March 2001 and the named Class 3 plaintiff would lack standing to sue Aventis.

## III. The Recent Vioxx Decision Plaintiffs Cite Suggests That It Would Be Improper For The Court To Certify Any Third-Party-Payor Class

Plaintiffs cite *Int'l Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co.* (*Vioxx I*) 894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006), *rev'd*, ___ A.2d ___,

---

[4] Plaintiffs argue that Aventis's misconduct in pricing and marketing Anzemet amount to a continuing scheme that traces its origins back to the original setting of pricing and marketing strategy – all actions that took place in Missouri.

[5] *See* Mo. Rev. Stat. §407.025(1) (cited in plaintiffs' Fifth Amended Master Consolidated Class Action Complaint at 249, ¶594(r)).

2007 WL 2493917 (N.J. Sept. 6, 2007) in support of their argument.[6]  The New Jersey Supreme Court, however, has reversed *Vioxx I*, and *Vioxx I* does not support plaintiffs choice-of-law arguments for three reasons.  *See Int'l Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co.*, ___ A.2d ___, 2007 WL 2493917 (N.J. Sept. 6, 2007) (*Vioxx II*).

First, the New Jersey Supreme Court recently curtailed the extraterritorial application of New Jersey law in *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767 (N.J. 2007) (*Rowe II*).  In *Rowe II*, the New Jersey Supreme Court rejected the application of New Jersey law to the claims of an out-of-state resident.  917 A.2d at 772-776.  In so doing, the New Jersey Supreme Court reversed the same court that decided *Vioxx I*, reversed the decision[7] (*Rowe I*) on which *Vioxx I* relied, and distinguished[8] a prior decision that the *Vioxx I* court relied upon in concluding that New Jersey law could apply to the claims of all putative class members.  In fact, the Appellate Division recently stated that *Rowe I*'s choice-of-law holding has *no* precedential value.  *See In re Vioxx Litigation*, 928 A.2d 935, 946 n.9 (N.J. Super. Ct. App. Div. 2007).  By rejecting the authorities upon which *Vioxx I* relies, the New Jersey Supreme Court has removed the basis for giving *Vioxx I* any precedential value.

---

[6] Although plaintiffs previously "agreed on the application of Massachusetts choice of law rules," plaintiffs now reverse themselves and argue that New Jersey's choice-of-law rules should apply.  *Compare In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005) *with* (Supp. Mem. at 11-14).  New Jersey's choice-of-law rules would lead to the same result as Massachusetts.  *See Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *Beegal v. Park West Gallery*, 925 A.2d 684, 698-701 (N.J. Super. Ct. App. Div. 2007); *Fink v. Ricoh Corp.*, 839 A.2d 942, 987 (N.J. Super. Ct. Law Div. 2003).

[7] *See Vioxx I*, 894 A.2d at 1151 (discussing its own decision in *Rowe v. Hoffman-La Roche, Inc.*, 892 A.2d 694 (N.J. Super. Ct. App. Div. 2006) (*Rowe I*)).

[8] *See Rowe II*, 917 A.2d at 773 (discussing *Gantes v. Kason Corp.*, 679 A.2d 106 (N.J. 1996); *see also Vioxx I*, 894 A.2d at 1149-51 (discussing *Gantes*).

2621560v5

Second, in reversing *Vioxx I*, the New Jersey Supreme Court just this month stated that "certification of a nationwide class is 'rare,'…and application of the law of a single state to all members of such class is even more rare." *Vioxx II*, 2007 WL 2493917, at *8 n.3. Concentrating primarily on the plaintiffs' "individualized decisions" regarding the defendants representations, the court held that: (1) common issues would not predominate; and (2) a "fraud on the market" damage theory is not appropriate in any context other than federal securities fraud litigation. *Vioxx II*, 2007 WL 2493917, at *8-*12. Because the court held that lack of predominance and superiority defeated the Appellate Division's class certification ruling, the conflict-of-law issue was moot and the court did not address it. *Vioxx II*, 2007 WL 2493917, at *8 n.3.

Third, under New Jersey law, class treatment is particularly inappropriate for TPPs because those entities cannot meet the superiority or predominance requirements of Rule 23. In *Vioxx II*, the New Jersey Supreme Court stated that "third-party payors are well-organized institutional entities with considerable resources." *Id.* at *12. The court recognized that TPP classes cannot meet the superiority test required to certify a class, as they have "no disparity in bargaining power and no likelihood that the[ir] claims are individually so small that they will not be pursued." *Id.* Because TPPs are sophisticated entities that have the ability to file individual actions to protect their interests, those entities do not meet the superiority test required for the Court to certify a TPP class.

Further, the *Vioxx II* court held that because each TPP in the putative class made individualized decisions regarding the drugs to be included in each of their formularies, individual issues as to each TPP's knowledge and actions with respect to each of their formularies predominated over common issues. The court's reasoning in *Vioxx II* is equally

applicable here, since: (1) individual issues exist as to TPP knowledge regarding differences between published AWPs and actual prices; (2) the prices each TPP paid for drugs were the result of individualized negotiations; and (3) TPPs had individual reasons for adopting AWP as a benchmark.

Finally, the Court in *Vioxx II* questioned whether a TPP qualified as a "consumer" under the New Jersey Consumer Fraud Act ("NJCFA"), noting that "the relationship between [a TPP] and [a pharmaceutical company] is more attenuated than the traditional consumer role as contemplated by the Consumer Fraud Act." 2007 WL 2493917, at *1 n.1; *see also In re Express Scripts,* 2006 WL 2632328, at *9-*10 (TPP transactions did not qualify as "consumer transactions" under NJCFA). The fact that the Court would be required to make yet another "*Erie* guess" to determine the rights of TPPs further illustrates that class treatment is inappropriate for TPPs under New Jersey law. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 749 (5th Cir. 1996); *Moskowitz v. Lopp*, 128 F.R.D. 624, 632 (E.D. Pa. 1989).

### IV. Individual Proof Of Causation Will Be A Necessary Element Of Plaintiffs' NJCFA Claims

To prevail on their NJCFA claims, plaintiffs must prove an "ascertainable loss of money or property *as a result of* " defendants' purported misrepresentations. N.J. Stat. Ann. § 56:8-19 (emphasis added). "While reliance need not be proven under the NJCFA, plaintiffs must nevertheless demonstrate that each class member read one or more of the [alleged misrepresentations] upon which the plaintiffs rely and that one or more of the false advertising and material factual concealments which they allege were contained therein constituted a proximate cause of 'an ascertainable loss' of money or property." *Fink v. Ricoh Corp.*, 839 A.2d 942, 958 (N.J. Super. Ct. Law Div. 2003).

The New Jersey Supreme Court has specifically rejected the use of a "fraud on the market" theory to prove causation for NJCFA claims, as well as "the use of a single expert to establish th[e] critical [causation] CFA proof element so as to create a common question of fact or law that would bear on the predominance analysis." *See Int'l Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co.*, ___ A.2d ___, 2007 WL 2493917, at *10-*11 (N.J. Sept. 6, 2007).  To prove causation, plaintiffs will be required to prove that each individual class member was induced into action as the result of an alleged misrepresentation by Aventis. Consequently, plaintiffs' proposed classes fail to satisfy the requisite predominance requirement.

## CONCLUSION

For the reasons set forth above, as well as those in the Amgen/Watson Response to the Plaintiffs' Supplemental Memorandum, plaintiffs' Motion for Class Certification should be denied.

2621560v5

Dated:  September 21, 2007

      /s/ David M. Glynn
      Michael DeMarco (BBO #119960)
        michael.demarco@klgates.com
      Aimée E. Bierman (BBO #640385)
        aimee.bierman@klgates.com
      David M. Glynn (BBO #650964)
        david.glynn@klgates.com
      KIRKPATRICK & LOCKHART
      PRESTON GATES ELLIS LLP
      State Street Financial Center
      One Lincoln Street
      Boston, MA  02111-2950
      (617) 261-3100

      Michael L. Koon
      James P. Muehlberger
      Nicholas P. Mizell
      SHOOK, HARDY & BACON L.L.P.
      2555 Grand Blvd.
      Kansas City, Missouri  64108-2613
      (816) 474-6550
      Attorneys for Aventis Pharmaceuticals Inc. and
      Hoechst Marion Roussel, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 21, 2007 I served a true and correct copy of the foregoing on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

      /s/ David M. Glynn
      David M. Glynn

2621560v5