UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-12257-PBS |
| TRACK 2 TRIALS | Judge Patti B. Saris |

RESPONSE OF DEFENDANTS AMGEN INC. AND
WATSON PHARMACEUTICALS, INC. TO PLAINTIFFS'
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF TRACK 2
CLASS CERTIFICATION REGARDING STATE LAW ISSUES

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

ARGUMENT .......................................................................................................................1

I.    This Court Correctly Rejected Plaintiffs' Previous Argument that the Law of the
      State of the Defendants' Principal Places of Business Should Control this
      Litigation ..................................................................................................................1

      A.    Plaintiffs' Arguments Are Inconsistent with Massachusetts Choice-of-Law
            Principles ........................................................................................................3

      B.    Application of the Law of a Single State to a Nationwide Class in this
            Case Would Be Unconstitutional ..........................................................................7

II.   Plaintiffs Have Not Shown that State Laws Can Be Grouped So that the Jury Can
      Be Properly Instructed ..................................................................................................9

III.  California Law May Not Be Applied to Nationwide Claims Against Amgen and
      Watson ....................................................................................................................13

IV.   The Court Should Not Consider Certifying Pirelli and UFCW as Class
      Representatives ........................................................................................................19

CONCLUSION ..................................................................................................................20

CERTIFICATE OF SERVICE ..............................................................................................21

<u>TABLE OF AUTHORITIES</u>

CASES

*Allstate Insurance Co. v. Hague*, 449 U.S. 302 (1981) ........................................................ 8

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 6

*In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996) ................................ 6, 12

*Andrews v. American Telephone & Telegraph Co.*, 95 F.3d 1014 (11th Cir. 1996) ................ 12

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ............................................... 7-9

*Baker v. Pidgeon Thomas Co.*, 422 F.2d 744 (6th Cir. 1970) ............................................. 12

*Bank of the West v. Superior Court*, 833 P.2d 545 (Cal. 1992) ......................................... 17

*Beardshall v. Minuteman Press International, Inc.*, 664 F.2d 23 (3d Cir. 1981) .................... 12

*In re Bendctin Litigation*, 857 F.2d 290 (6th Cir. 1988) .................................................... 6

*Bernhard v. Harrah's Club*, 546 P.2d 719 (Cal. 1976) ..................................................... 15

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) ....................................... 4

*Bristow v. Lycoming Engines*, No. CIV. S-06-1947, 2007 WL 1752602 (E.D. Cal. June 15, 2007) .......................................................................................................................... 17

*Bushkin Associates, Inc. v. Raytheon Co.*, 473 N.E.2d 662 (Mass. 1985) ............................ 3-4

*California Grocers Association, Inc. v. Bank of America, National Trust & Savings Association*, 27 Cal. Rptr. 2d 396 (Ct. App. 1994) .................................................................. 16

*Carpenter v. BMW of North America, Inc.*, No. Civ. A. 99-CV-214, 1999 WL 415390 (E.D. Pa. June 21, 1999) ................................................................................................... 10

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) ......................................... 13

*Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998) ......................................... 4, 10, 12

*Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999) ........................................ 11

*Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605 (Ct. App. 1987) ............................... 14

*Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) ............................................. 10

*Committee on Children's Television, Inc. v. General Foods Corp.*, 673 P.2d 660 (Cal. 1983) ................................................................................................................17-18

*Computer System Engineering, Inc. v. Qantel Corp.*, 571 F. Supp. 1365 (D. Mass. 1983) ............4

*Cosme v. Whitin Machine Works, Inc.*, 632 N.E.2d 832 (Mass. 1994) ...........................................3

*Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383 (Pa. 1991) .....................................................12

*Day v. AT&T*, 74 Cal. Rptr. 2d 55 (Cal. App. 1998) ...................................................................17

*Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir. 1999) ............................................................9

*Dunfey v. Roger Williams University*, 824 F. Supp. 18 (D. Mass. 1993).........................................5

*FTC v. Travelers Health Association*, 362 U.S. 293 (1960) ..........................................................8

*Fink v. Ricoh Corp.*, 839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) .........................................12

*In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 174 F.R.D. 332 (D.N.J. 1997) ...................................................................................................................4, 13

*In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 194 F.R.D. 484 (D.N.J.  2000) ......................................................................................................................9

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ...................................................19

*Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989) ......................................................................8-9

*Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675 (Tex. 2002) .....................................................4

*Kaczmarek v. International Bus. Machines Corp.*, 186 F.R.D. 307 (S.D.N.Y. 1999) ....................4

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)....................................13

*Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650 (C.D. Cal. May 23, 2007) ...................................................................................................16-17

*Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000) ..................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 934 (Cal. 2003)..................................17, 18

*Lee v. General Nutrition Cos.*, No. CV 00-13550LGB, 2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) .................................................................................................................17

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228 (S.D.N.Y. 2002) .............................. 4

*Luscher v. Empkey*, 293 N.W.2d 866 (Neb. 1980) ........................................................ 11

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000) ........................................... 4, 10

*Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210 (Ct. App. 2005) ................................ 18

*Matis v. Golden*, 228 S.W.3d 301 (Tex. App. 2007) .................................................... 11

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) .................... 15

*In re Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. 2003) ......................................... 10-11

*In re Pharmaceutical Industrial Average Wholesale Price Litigation*, 230 F.R.D. 61
  (D. Mass. 2005) ........................................................................................... 1-2, 14-15

*In re Pharmaceutical Industrial Average Wholesale Price Litigation*, 491 F. Supp. 2d 20
  (D. Mass. 2007) ...................................................................................................... 2

*In re Propulsid Products Liability Litigation*, 208 F.R.D. 133 (E.D. La. 2002) ............. 4

*Pfizer Inc. v. Superior Court*, 45 Cal. Rptr. 3d 840, 844 (Ct. App. 2006) .................... 18

*Pfizer, Inc. v. S.C. (Galfano) Steve*, 146 P.3d 1250 (Cal. 2006) .................................. 18

*Reicher v. Berkshire Life Insurance Co. of America*, 360 F.3d 1 (1st Cir. 2004) ......... 4-5

*In re Relafen Antitrust Litigation*, 221 F.R.D. 260 (D. Mass. 2004) .............................. 4

*In re Rezulin Products Liability Litigation*, 210 F.R.D. 61 (S.D.N.Y. 2002) ................. 4

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) .................................. 11

*Romani v. Cramer, Inc.*, 992 F. Supp. 74 (D. Mass. 1998) ......................................... 5

*Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233 (Ct. App. 2005) ......... 16

*In re School Asbestos Litigation*, 977 F.2d 764 (3d Cir. 1992) ............................... 12-13

*Shields v. Singleton*, 19 Cal. Rptr. 2d 459 (Ct. App. 1993) ....................................... 15

*Phillips Petroleum Co. v. Shutts*, 472 U.S.797 (1985) .............................................. 6-8

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) ...... 8-9

*In re Stucco Litigation*, 175 F.R.D. 210 (E.D.N.C. 1997)........................................10-11

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006)..........................19

*Thornton v. Equifax, Inc.*, 619 F.2d 700 (8th Cir. 1980)........................................12

*Tidemark Bank for Saving v. Morris*, 57 F.3d 1061, 1995 WL 368418 (1st Cir. June 19, 1995)........................................3

*Tidemark Bank for Saving. v. Morris*, No. 91-13214-MA, 1993 U.S. Dist. LEXIS 15307 (D. Mass. Oct. 21, 1993)........................................3-4

*In re Title U.S.A. Insurance Corp.*, 42 Cal. Rptr. 2d 498 (Ct. App. 1995)..................15

*In re Tobacco II Cases*, 47 Cal. Rptr. 3d 917, 920 (Ct. App. 2006)........................18

*In re Tobacco II Cases*, 146 P.3d 1250 (Cal. 2006)........................................18

*Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349 (Tex. App. 2003)........................5

*Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33 (1st Cir. 2005)..................3

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)........................7

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004)..................15

*Washington Mutual Bank v. Superior Court*, 15 P.3d 1071 (Cal. 2001)..................14

*Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145 (Ct. App. 2001)..................15

*Younger v. Harris*, 401 U.S. 37 (1971)........................................7

## STATUTES AND OTHER AUTHORITIES

Cal. Civ. Code § 1761 ........................................16

Cal. Civ. Code § 1780(a)........................................16

Cal. Bus. & Prof. Code § 17200 ........................................17

Cal. Bus. & Prof. Code § 17500 ........................................17

SA 4, 151 Cong. Rec. S1215 (Feb. 9, 2005) ........................................6

Restatement (Second) of Conflict of Laws § 148 (1971)........................................3-4

Amgen Inc. ("Amgen") and Watson Pharmaceuticals, Inc. ("Watson") submit this response to Plaintiffs' Supplemental Memorandum in Support of Track 2 Class Certification Regarding State Law Issues (Plaintiffs' "Supplemental Memorandum" or "Pl. Mem."). For the reasons stated below, this Court should reject Plaintiffs' request to certify a multi-state class action by applying the law of a single state to the entire class. Further, numerous material and outcome-determinative variations in state law preclude certification of a multi-state class action as to proposed Classes 2 and 3. Finally, the Court cannot certify United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UCFW") or Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ("Pirelli") as class representatives.[1]

ARGUMENT

I.     This Court Correctly Rejected Plaintiffs' Previous Argument that the Law of the State of the Defendants' Principal Places of Business Should Control this Litigation

By their Supplemental Memorandum, Plaintiffs ask this Court to reach a different choice-of-law decision as to these Defendants than it did with respect to the Track One Defendants. However, the Court previously rejected the Plaintiffs' arguments. Specifically, this Court held:

> Even though the defendants made the alleged misrepresentations in the states of their principal places of business when sending the AWPs to publishers, the Restatement § 148 factors point to applying the laws of the home states of the class members. The class members purchased physician-administered drugs in reliance on the published AWPs in states where they were receiving treatments from their physicians, typically their places of residence. Three of the significant contacts in § 148 – the place of action in reliance, the place where misrepresentations were received, and the place of plaintiff's domicile – call for application of the law of the home state of each consumer. The conclusion that the home state of the consumer has a more significant relationship to the alleged fraud than the place of business of the defendant is in accordance with the principles of Restatement § 6, since state consumer protection statutes are designed to protect consumers rather than to regulate corporate conduct.

---

[1] Defendants incorporate by reference all of their prior arguments in opposition to class certification as set out in the Track Two Defendants' Memorandum in Opposition to Class Certification (June 15, 2006) and other submissions to this Court. Defendants also incorporate by reference the memorandum filed today by Aventis, to the extent arguments made there apply to Watson and Amgen.

*In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) ("*In re AWP I*") (citations and footnotes omitted).   This Court further observed that "[c]ourts have generally rejected application of the law of a defendant's principal place of business to a nationwide class."   *Id.*   Accordingly, the Court held:   "[W]hile it is tempting to apply the consumer protection laws of the states where defendants have their principal places of business to promote uniform results and the ease of managing a class, under the Restatement, the laws of the home states of the consumers govern."   *Id.*

Following this reasoning, the Court correctly applied Massachusetts law to the claims of Blue Cross Blue Shield of Massachusetts ("BCBSMA") during the Track One, Classes 2 and 3 bench trial.   Within Massachusetts, BCBSMA provided health insurance to residents of the Commonwealth, decided to base reimbursement on AWP, received AWP fee updates from Medicare via the Internet, set its health insurance premiums, owned a staff-model HMO with several clinics in Massachusetts, purchased drugs, negotiated pharmaceutical reimbursement contracts with health care providers, performed a study regarding the cost-savings shifting away from AWP, and made the decision to continue using AWP as a basis for drug reimbursement. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 45-49 (D. Mass. 2007) ("*In re AWP II*").   Given these contacts, the Court correctly applied Massachusetts law to BCBSMA's claims.

Like BCBSMA, other TPP class member claims have extensive contacts with their respective home states, and not the states where these Defendants have their principal places of business.   After having tried Class 2 and 3 claims against Track One Defendants based upon this Court's prior choice-of-law rulings, Plaintiffs seek to have this Court now reach a different result. However, Plaintiffs raise no new arguments and their analysis of the Massachusetts choice-of-law principles is as flawed as it was when this issue was first considered.

A.    Plaintiffs' Arguments Are Inconsistent with
      Massachusetts Choice-of-Law Principles

Massachusetts has adopted a functional approach to choice-of-law, that responds to the interests of the parties, the States involved and the interstate commerce system. *See Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985). In doing so, Massachusetts courts consider, *inter alia*, the factors identified in the Restatement (Second) of Conflict of Laws. *See Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834 (Mass. 1994); *Tidemark Bank for Sav. v. Morris*, No. 91-13214-MA, 1993 U.S. Dist. LEXIS 15307, at *10 (D. Mass. Oct. 21, 1993), *aff'd*, 57 F.3d 1061 (1st Cir. 1995).

Essentially, Plaintiffs argue that this Court erred when it looked to the factors to set forth in Section 148, arguing – without authority – that principles embodied in section 6 take precedence over Section 148. (Pl. Mem. at 2 n.2.) Plaintiffs are wrong. Section 6 states the relevant principles in general terms. Section 148 provides the specific rule applicable to "actions brought to recover pecuniary damages suffered on account of false representations, whether fraudulent, negligent or innocent." Restatement (Second) of Conflict of Laws § 148 cmt. a (1971). Under the Restatement approach, the more specific principles set forth in § 148 *inform the application of the general principles of § 6* to fraud and misrepresentation claims.

As the First Circuit has stated, section "148(2) of the Restatement is most directly applicable to [plaintiff's] claims since that section governs choice-of-law issues where the defendant's misrepresentation and the plaintiff's reliance occurred in different states." *Tidemark Bank for Sav. v. Morris*, 57 F.3d 1061, *text available at* No. 94-1598, 1995 WL 368418, at *2 (1st Cir. June 19, 1995). In *Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33 (1st Cir. 2005), the First Circuit, applying Maine choice-of-law principles, again recognized that section 148 is the Restatement section most applicable to claims for fraud and misrepresentation. *See id.* at 42. Thus, where the representations were received by the plaintiff in Maine, the plaintiff acted upon the representations in Maine, the plaintiff was located and did business in Maine, and the contract that Plaintiff entered into based upon the representations would be performed in Maine, Maine law governed. *See id.* at 42. According to the First Circuit, the fact that the defendant

3

made the alleged misrepresentations in Massachusetts did "not significantly alter the balance." *See id.*

In fraud and misrepresentation actions, "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." Restatement (Second) of Conflict of Laws § 148 cmt. i; *accord Tidemark Bank*, 1993 U.S. Dist. Lexis 15307, at *12-13; *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1368-69 (D. Mass. 1983), *aff'd*, 740 F.2d 59 (1st Cir. 1984); *see also Bushkin*, 473 N.E.2d at 672 (suggesting that choice-of-law factors would not favor application of Massachusetts' consumer protection statute to a transaction between a Massachusetts defendant and New York plaintiff). Thus, it is the state of the plaintiff's residence or where the plaintiff took action based upon the alleged fraudulent practice that has the most significant relationship. *See also Computer Sys.*, 571 F. Supp. at 1369 ("The place of business of the plaintiff is significant because any financial loss is likely to be of greatest concern to the state having the closest relationship to the person or entity harmed."); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997) ("Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws."); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004) (states have a strong interest in protecting their residents with respect to transactions within their borders, but a relatively weak interest, if any, in protecting the residents of other states or applying their laws to transactions in other states).[2]

Indeed, the First Circuit has rejected the precise argument made by Plaintiffs here. *See Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 1 (1st Cir. 2004). In *Reicher*, a Maryland

---

[2]Numerous courts have rejected the argument that the place of a defendant's business should be applied to statutory consumer fraud claims brought on behalf of a nationwide class. *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015-18 (7th Cir. 2002); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 233 (S.D.N.Y. 2002); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70-71 (S.D.N.Y. 2002); *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 147 (E.D. La. 2002); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 698 (Tex. 2002).

plaintiff attempted to sue a Massachusetts insurance company for violations of Massachusetts' consumer protection statute.  Notwithstanding the fact that the defendant "had its headquarters in Massachusetts and the allegedly unfair claims settlement practices were initiated from its Massachusetts offices," the court held that Maryland law applied.   *Id.* at 5.   To apply Massachusetts law would have undermined legitimate policy decisions made by Maryland regarding regulation of the transactions at issue. *See id.* at 6.

Plaintiffs assert, without any meaningful support, that application of California law would promote predictability and uniformity and protect the justified expectations of the parties. In fact, the contrary is true.  This lawsuit concerns transactions that occurred all over the country. Where the plaintiff resides, was injured, received the representation and acted upon the representation in the same state, established choice-of-law principles favor application of the law of that state.   Plaintiffs' contortion of these principles to achieve an outcome in a specific case undermines, rather than promotes, the goals of uniformity and fulfillment of expectations. Indeed, courts applying the Restatement test have consistently recognized that the interests of predictability, uniformity, and the needs of the interstate system are best met by adhering to the straightforward principle that the law of each state applies to transactions involving its own citizens that occur within its own boundaries.  *See, e.g., Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 358 (Tex. App. 2003).

In none of the cases relied upon by Plaintiffs were the courts presented with the constellation of factors presented here.  In *Romani v. Cramer, Inc.*, 992 F. Supp. 74 (D. Mass. 1998), although the plaintiff resided in Massachusetts, the injury occurred at his place of employment in Connecticut and his injuries were treated in Connecticut.  *See id.* at 78.  The *Romani* court specifically rejected an outcome determinative approach; it did not apply the state's laws most favorable to plaintiff based upon some deterrence theory, as Plaintiffs advocate. Instead, it applied the law of the state with the most significant contacts, notwithstanding that such a result made it more difficult for Plaintiff to recover. *See id.*  In *Dunfey v. Roger Williams Univ.*, 824 F. Supp. 18 (D. Mass. 1993), an action for breach of an employment contract and

5

wrongful discharge case, the plaintiff was employed in Rhode Island and all of the events surrounding his discharge occurred in Rhode Island. *See id.* at 18-21. *In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988) is likewise inapposite. In *Bendectin*, which was not a class action, the court conducted a trial of a single issue – generic causation. Plaintiffs transferring to the MDL were required to consent to the trial of this single issue under the law of Ohio. *See id.* at 302. The "plaintiffs themselves urged the district judge to apply the law of Ohio . . . and never argued that any other law should apply." *Id.* at 303. If plaintiffs objected to Ohio law, they could have requested remand of their cases to the transferor court. *See id.* As a result, the Sixth Circuit found that plaintiffs' objections to application of Ohio law were waived. *See id.* The discussion in *Bendectin* that Plaintiffs rely upon is pure dictum and contrary to established principles of law that have developed in the almost 20 years since *Bendectin* was decided. Indeed, the Sixth Circuit would not have needed to reverse nationwide class certification in *In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996) based, in part, upon a district court's failed to consider variations in state law if this thorny issue could be avoided simply by applying the law of the place of manufacture. *Id.* at 1085.

Finally, Plaintiffs' judicial economy argument must be rejected. As the United States Supreme Court has held, choice-of-law restrictions are "not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985). Thus, a court may not rule that a different state's law applies in a class action than in a suit brought only by the named plaintiffs. Substantive law does not change to accommodate a class; rather, a class action is proper only if it is demonstrated that the substantive law applicable to each class member's claim can be appropriately addressed within the class context. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 622 (1997). Enactment of the Class Action Fairness Act ("CAFA") does not change the analysis. Prior to CAFA, in cases founded on diversity jurisdiction, federal courts had repeatedly rejected the arguments made by Plaintiffs. Further,

6

when Congress enacted CAFA, it specifically rejected a proposal that would allow nationwide class actions to be certified notwithstanding state law variations.[3]

> B.    Application of the Law of a Single State to a
>        Nationwide Class in this Case Would Be Unconstitutional

Application of the law of a single state to consumer transactions that occurred throughout the nation would also offend constitutional limits on choice of law.  One of the basic tenets underlying the nation's federal system of government is that each state should be permitted to make important substantive policy choices for its residents.  This fundamental legal and democratic principle is embodied specifically within the Constitution itself,[4] as well as general notions of equity, comity, and federalism. *See, e.g., Younger v. Harris*, 401 U.S. 37, 44 (1971) ("[T]he notion of 'comity'" encompasses "a proper respect for state functions").  As recognized by the First Circuit in *Reicher*, each state's consumer protection laws reflect the policy decisions of that state.  Such state specific legal and regulatory issues are best resolved by each state individually, not only as a matter of interstate comity and justifiable expectations, but also because the parties would be able to obtain "a surer-footed reading of applicable law" if each state were allowed to decide these important substantive legal issues on an individual basis. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Thus, in *Shutts*, the Supreme Court squarely held that the Due Process and Full Faith and Credit clauses prohibit application of a single state's law in a nationwide class action where the state does not have "'significant contact or significant aggregation of contacts' to the claims asserted by *each member* of the plaintiff class."  472 U.S. at 821 (emphasis added) (citation omitted).  Here, as in *Shutts*, applying a single state's laws to every claim against a particular defendant would be "sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822.

---

[3]*See* SA 4, 151 Cong. Rec. S1215 (Feb. 9, 2005) (providing text of proposed choice-of-law amendment). The choice-of-law amendment was not included in CAFA.

[4]*See, e.g., BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) ("[I]t is clear that no single State [sh]ould . . . impose its own policy choice on neighboring States.").

7

The requirement that the Court respect the independent sovereignty of other States to make and enforce their own regulatory regimes also derives from the Commerce Clause. Recognizing the value of independent state autonomy, the Supreme Court has held that the Commerce Clause prevents one state from interfering with the "legitimate regulatory regimes of other States," *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989), from attempting "to control conduct beyond the boundaries of the State," *id.* (citation omitted), and from "project[ing its] regulatory regime into the jurisdiction of another State," *id.* at 337.   These fundamental principles of independent state sovereignty also require that "no single State . . . impose its own policy choice on neighboring States" and direct that State courts must be "constrained by the need to respect the interests of other States" in adjudicating matters that affect commerce outside their borders.  *BMW of N. Am., Inc.*, 517 U.S. 571; *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003).

These constitutional hurdles cannot be overcome by the convenient expedient of applying the law of the state where the defendant's business is located.  A State's contacts must be measured not simply by the defendant's contacts with the forum, but against "the claims asserted by each member of the plaintiff class," and the expectations of the parties.  *See Shutts*, 472 U.S. at 821-22.[5]  For example, in *Shutts*, the Kansas Supreme Court reasoned that the defendant "owns property and conducts substantial business in the State, so Kansas certainly has an interest in regulating petitioner's conduct in Kansas."  *Shutts*, 472 U.S. at 819 (citation omitted). Nonetheless, the U.S. Supreme Court held that application of Kansas law to a nationwide class was unconstitutional.  *See id.* at 822-23.  Likewise, in *FTC v. Travelers Health Association*, 362 U.S. 293 (1960), the Supreme Court observed, notwithstanding the defendant's Nebraska citizenship, that "the applicability of the Nebraska statute to misrepresentations made to residents of other States" raised serious "constitutional questions." *Id.* at 302.

---

[5]Similarly the Court in *Hague* looked at the "contact[s] with the parties *and the occurrence or transaction.*" *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981) (emphasis added); *see also id.* at 310 (examining "[t]he relationship of the forum State to the parties *and the transaction*" (emphasis added)).

Further, the wholesale application of one state's policy choices on commerce nationwide would negate the reasoned policy decisions of each sovereign state's legislature. As the Supreme Court stated in *BMW*:

> We may assume, *arguendo*, that it would be wise for every State to adopt [Plaintiff's] preferred rule . . . . But while we do not doubt that Congress has ample authority to enact such a policy for the entire Nation, it is clear that no single State could do so, or even impose its own policy choice on neighboring States. . . . Similarly, one State's power to impose burdens on the interstate market . . . is not only subordinate to the federal power over interstate commerce, but is also constrained by the need to respect the interests of other States . . . .

517 U.S. at 570-71 (citations omitted); *accord Campbell*, 538 U.S. at 422; *Healy*, 491 U.S. at 336-37.[6]

II.   Plaintiffs Have Not Shown that State Laws Can Be
      <u>Grouped So that the Jury Can Be Properly Instructed</u>

When the Court decides, as it did before, that the law of each state where a class member resides must be applied to each class members' claims, Plaintiffs suggest that this case may nevertheless be tried as a multi-state class action. However, as numerous courts have recognized, variations in state deceptive practice statutes are too significant and numerous to permit superficial groupings. For example, in *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484 (D.N.J. 2000), the plaintiffs attempted to limit class membership to states with allegedly similar consumer protection statutes and proposed several subclasses based upon whether scienter, another aggravating factor or reliance was required. *See id.* at 487. Denying class certification, the court observed: "The chief difficulty in finding a predominance of common legal issues within the proposed deceptive trade subclass is that the statutory protections vary greatly from state to state." *Id.* at 489. Likewise, another court has explained:

> [T]he "'almost universal reluctance to certify such class actions [based on the various states' consumer fraud acts] stems not only from the exponential multiplication of individual issues . . . but also from a practical recognition that

---

[6]Significantly, none of the California cases relied upon by Plaintiffs (discussed *infra* at 14-15), considered commerce clause constraints on the extra-territorial application of California law to transactions that took place in other states.

distilling the laws of the fifty states . . . on the causes of action brought by consumer fraud plaintiffs would be an impossibly difficult task.'"

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 219 (E.D. Pa. 2000) (citation omitted, second and third alteration in original).[7]  In addition, there is a significant risk that states will be grouped based upon superficial indications and differences among state law will be compromised.  *See In re Paxil Litig.*, 212 F.R.D. 539, 544-45 (C.D. Cal. 2003).  As the Fifth Circuit recently explained:

> Plaintiffs' assertion of predominance relied primarily on the textual similarities of each jurisdiction's applicable law and on the general availability of legal protection in each jurisdiction for express and implied warranties.  Plaintiffs' largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction.

*Cole v. General Motors Corp.*, 484 F.3d 717, 725-26 (5th Cir. 2007).

Indeed, Plaintiffs have not proposed meaningful groupings of state laws; instead, they propose simply that the Court ignore state law differences.  For example, Plaintiffs suggest that "reliance is manifest here, *since Plaintiffs and Class members made payments based on AWP.*" (Pl. Mem. at 19 (emphasis in original).)  First, whether Plaintiffs or class members made payments based on AWP is disputed, for reasons previously stated in the Track Two Defendants' Memorandum in Opposition to Class Certification.  More importantly, Plaintiffs have not identified *any* state that defines reliance as "made payment based on."  For example, under Texas law, "[r]eliance is established by showing that the defendant's actions and representations induced the plaintiff 'to act or to refrain from action.'"  *Matis v. Golden*, 228 S.W.3d 301, 311 (Tex. App. 2007) (citation omitted).  "Actual knowledge of false representations is 'inconsistent with the claim that the allegedly defrauded party has been deceived, and it negatives the essential element of reliance upon the truth of the representations.'"  *Id.* (citation omitted).  Under Nebraska law, the test of reliance is "generally whether [the plaintiff] would have acted in the

---

[7] *See also Carpenter v. BMW of N. Am., Inc.*, No. Civ. A. 99-CV-214, 1999 WL 415390, *3 (E.D. Pa. June 21, 1999) (rejecting Plaintiffs' proposal to group state consumer protection statutes into three subclasses as overly simplistic); *Chrysler Corp.*, 182 F.R.D. at 463 ("While Plaintiffs do present the Court with an analysis of the laws of each of the 50 states for each of their causes of action, they fail to meet their burden of setting forth a workable plan for dealing with these issues at trial"); *In re Stucco Litig.*, 175 F.R.D. 210, 217 (E.D.N.C. 1997) (observing the plaintiffs' proposed subclasses failed to account for all variations in state consumer protection statutes).

absence of the representations.  If he would have acted in the same way even in the absence of the representation, then he has not relied thereon."  *Luscher v. Empkey*, 293 N.W.2d 866, 868 (Neb. 1980)  One of the most hotly disputed issues in this litigation is whether Plaintiffs and class members had knowledge that AWP did not represent actual acquisition costs and whether they were knowledgeable regarding margins, including the size and extent of margins.  It is also a disputed issue in this litigation whether Plaintiffs and class members would have behaved any differently had they possessed additional or different knowledge, or whether their decisions were driven by factors other then AWP and margins.  These disputed issues cannot be decided unless the jury is correctly instructed as to the controlling law.

Nor can the jury be instructed according to a composite "legal standard that does not actually exist anywhere in the world."  *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).  As the Seventh Circuit explained over 20 years ago:

> [U]nder the district judge's plan the thousands of members of the plaintiff class will have their rights determined, and the four defendant manufacturers will have their duties determined, under a law that is merely an amalgam, an averaging, of the nonidentical negligence laws of 51 jurisdictions.  No one doubts that Congress could constitutionally prescribe a uniform standard of liability for manufacturers of blood solids. It might we suppose promulgate pertinent provisions of the *Restatement (Second) of Torts*. The point of *Erie* is that Article III of the Constitution does not empower the federal courts to create such a regime for diversity cases.

*Id.* at 1302.  Moreover, even though state laws may appear superficially similar, there may still be variations in nuance, and "nuance can be important."  *Id.* at 1300.[8]  Just as "'[t]he common law is not a brooding omnipresence in the sky,' *id.* at 1301, the Restatement does not represent the law of any specific jurisdiction.  *See Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383, 1385 (Pa. 1991); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 502 (S.D. Ill. 1999).

---

[8]*Accord In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1024 (11th Cir. 1996); *see also In re Stucco Litig.*, 175 F.R.D. 210, 217 (E.D.N.C. 1997) (observing that "the court must give effect to the variations in state law, however minor they may be")

Both class members and Defendants are entitled to have the disputed issues in this case decided by a jury correctly instructed in the applicable law.[9]   Jury instructions that misstate the basic principles of state law constitute prejudicial and fundamental error.[10]   Indeed, based on only nuanced variations, courts have reversed verdicts where the jury was instructed based upon an incorrect legal standard.[11]

It is no answer for Plaintiffs to suggest that their proposed instructions encompass the "strictest" standard under state law.   (Pl. Mem. at 21.)   Plaintiffs' proposal for addressing differences in state law is essentially the same as that proposed by the plaintiffs in the *School Asbestos* litigation when, eight years after initial class certification, they had still not been able to develop a plan for managing state law variations.[12]   Rejecting their proposal that the court instruct a jury based upon the "strictest" standard employed by the various states, the Third Circuit explained: "*Shutts* suggests that each plaintiff in this case has the right to have its claims judged according to the law of its jurisdiction, not according to that of a putative or imaginary strictest state."   *In re School Asbestos Litig.*, 977 F.2d 764, 797 (3d Cir. 1992).   For example, when Defendants prevail on the merits in this action, class members from states where intent is

---

[9] *See Chrysler Corp.*, 182 F.R.D. at 457 (observing that "[t]he parties . . . have a due process right to have their claims governed by the state law applicable to their dispute"); *Fink v. Ricoh Corp.*, 839 A.2d 942, 987 (N.J. Super. Ct. Law Div. 2003) (noting that incorrect choice of law "would deprive the parties adversely affected of due process of law").

[10] *See, e.g.*, *Koch v. Koch Indus.*, 203 F.3d 1202, 1233 (10th Cir. 2000) (holding that jury instructions defining materiality under objective rather than subjective standard for fraud claims under Texas law was prejudicial error); *Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 25-27 (3d Cir. 1981) (holding that jury instruction that plaintiffs had to prove their fraud claim by a preponderance of the evidence, rather than the higher standard of clear and convincing evidence required by Pennsylvania law, was plain error and required reversal despite trial defense counsel's failure to preserve the record).

[11] *See, e.g.*, *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705 (8th Cir. 1980) (in a case requiring plaintiff to prove "malice or willful intent to injure," jury instruction "broaden[ing] the standard by adding maliciously, or wantonly or oppressively to the adjectives describing the act proximately causing the damage" held to be sufficient basis for a new trial); *Baker v. Pidgeon Thomas Co.*, 422 F.2d 744, 747-48 (6th Cir. 1970) (instruction presenting the two negligence definitions required by Arkansas law nonetheless held inadequate because of the possibility that the second overshadowed the first in the eyes of the jury).

[12] *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 751 n.33 (5th Cir. 1996).

12

not required will argue that the verdict is not binding as to them.[13]  Thus, instructing the jury as to an element that is not required under applicable law exposes a defendant to an impermissible fail safe class.  *See id.*

Moreover, it is not a simple question of whether "intent" is required under a state consumer protection statute, but how the requisite state of mind for recovery of either actual or multiple/punitive damages is defined by statute and/or relevant case law.  The fact that Plaintiffs claim that they will show "intent," does not mean that the jury will find "intent."  And, to get to a verdict, the jury must first be instructed "in a way that fairly represents the law of the fifty states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac."  *See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 350 (D.N.J. 1997).

Thus, the jury must be instructed as to each and every element of a class member's claim under the relevant consumer protection statute and class members must be held to their precise burden under the relevant statutes, no more and no less.  It is equally erroneous to fail to instruct the jury regarding reliance, where it is required by state law, as it is to instruct a jury regarding a level of scienter that is not applicable in a particular state.

III.   California Law May Not Be Applied to
       Nationwide Claims Against Amgen and Watson

For the reasons discussed above, California law may not be applied to the claims of class members across the country.   The California cases cited by Plaintiffs do not support a different outcome.  First, because this Court is sitting in Massachusetts, Massachusetts choice-of-law rules apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity should apply the conflict-of-law rules of the state where it sits);

---

[13] *See, e.g.*, Joint Memorandum of the Attorneys General of Illinois, Kentucky, Wisconsin and Idaho Regarding Plaintiffs' Motion for Class Certification at 5 (Feb. 7, 2005) (arguing that claims asserted by the Attorneys General do not require proof of reliance or intent).

*see also In re AWP I*, 230 F.R.D. at 82. And, as discussed above, analysis of choice-of-law principles under Massachusetts law would not result in the application of California law.

Further, the California cases relied upon by Plaintiffs do not support their argument. In *Washington Mutual Bank v. Superior Court*, 15 P.3d 1071 (Cal. 2001), the California Supreme Court held as follows. First, courts may not refuse to give effect to contractual choice-of-law provisions merely to facilitate a class action. "'Class actions are provided only as a means to enforce substantive law. Altering substantive law to accommodate procedure would be to confuse the means with the ends – to sacrifice the goal for the going.'" *Id.* at 1079-80 (citation omitted). Second, courts must analyze the relevant contacts in accordance with both state choice-of-law principles and dictates of the United States Supreme Court in *Shutts. See Wash. Mut.*, 15 P.3d at 1080-82. Third, before a nationwide class action may be certified, "a class action proponent must credibly demonstrate, through a thorough analysis of the applicable state laws, that state law variations will not swamp common issues and defeat predominance." *See id.* at 1085. The court, therefore, concluded that "certification of a nationwide class was premised upon the faulty legal assumption that choice-of-law issues need not be resolved as part of the certification process." *Id.* at 1086. As discussed above, analysis of these factors does not support application of California law to a multi-state class action in this case.

In *Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605 (Ct. App. 1987), the court held only that the trial court failed to conduct an appropriate analysis of choice-of-law factors. *Id.* at 610. It does not stand for the proposition that California's consumer protection statutes may be applied to a nationwide class any time a defendant has its principal place of business in California. *See id.* at 610 (noting that a proper choice-of-law analysis may also demonstrate that California's "interest may be minimal and outweighed by other states' interests"). In contrast to *Clothesrigger*, this Court has already engaged in a thorough analysis of the relevant choice-of-law factors under Massachusetts law. Moreover, it has now been 20 years since *Clothesrigger* was decided. In the interim, there have been scores, if not hundreds, of cases with a California defendant and conduct that plaintiff asserted emanated from California. Still, Plaintiffs fail to

14

cite a single reported California appellate decision upholding certification of a nationwide *liability* (as opposed to *settlement-only*) class, let alone one that applies California law across the board.[14] *Wershba v. Apple Computer, Inc.,* 110 Cal. Rptr. 2d 145 (Ct. App. 2001), involved a settlement, not a liability class, minimizing the significance of choice-of-law issues. As federal courts have noted, with respect to state law variations, the difference between a settlement class and a litigation class "is key." *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 529 (3d Cir. 2004). *Norwest Mortgage, Inc. v. Superior Court,* 72 Cal. App. 4th 214, 225 (1999), involved the reversal of a multi-state certification order on the grounds that the UCL does not extend to "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California." The decision nowhere suggests, let alone holds, that California law is automatically applicable to non-California residents who are injured outside of California by a company with offices in California.

Plaintiffs' remaining arguments fail as well. First, because this is a class action, there is no shifting of the burden. The burden of demonstrating that class action requirements are met, including the burden of showing that state law variations do not preclude class certification, rests on Plaintiffs' shoulders. *See In re AWP I,* 230 F.R.D. at 82. Further, the substantive variations in state law have been thoroughly documented for this Court.[15] Indeed, prior to the AstraZeneca

---

[14] Instead, Plaintiffs cite three patently inapposite cases: *Bernhard v. Harrah's Club,* 546 P.2d 719, 725 (Cal. 1976) (California law applied in personal injury action where the plaintiff was a resident of California and injured in California); *In re Title U.S.A. Ins. Corp.,* 42 Cal. Rptr. 2d 498, 504 (Ct. App. 1995) (California law applied to liquidation proceedings); *Shields v. Singleton,* 19 Cal. Rptr. 2d 459, 465 (Ct. App. 1993) (in shareholder derivative action, where choice was only between California and Delaware law, California law was applied where neither party argued that the laws were in conflict).

[15] *See* Defendant Glaxosmithkline's Individual Memorandum in Opposition to Class Certification (Oct. 25, 2004); Appendix A to Track 1 Defendants' Memorandum in Opposition to Class Certification (Oct. 25, 2004); Track One Defendants' Sur-Reply in Opposition to Class Certification (Jan. 21, 2005); Track Two Defendants' Memorandum in Opposition to Class Certification (June 15, 2006); Defendant Astrazeneca's Response to Plaintiffs' Memorandum Concerning the Start of the Class 1 Jury Trial and Request for Plaintiffs to Present a Fair and Manageable Trial Plan (May 1, 2007); Defendant Astrazeneca's Motion to Decertify Class 1 (May 22, 2007) Defendant AstraZeneca Pharmaceuticals LP's Memorandum of Law: (A) Regarding Class 1 Jury Instructions and (B) In Response to the Court's Request to Identify States That Should Be Excluded From the Class 1 Trial, with Proposed Jury Instructions (Apr. 6, 2007); Memorandum Accompanying AstraZeneca Pharmaceuticals LP's *(cont'd)*

Class I trial, Plaintiffs submitted over 100 pages of proposed jury instructions and questions. (*See* April 11, 2007 Transcript at 8 (noting the impracticality of instructing the jury based upon the lengthy form proposed by the Plaintiffs), July 27, 2007 Transcript at 27 (stating that the Court couldn't possibly instruct the jury based on Plaintiffs' proposal).)   AstraZeneca, in turn, proposed jury instructions that were almost 500 pages long.  The overly simplified summary that Plaintiffs attach to their supplemental submission is over 100 pages long.  Thus, it is apparent that there are material differences among state consumer protection statutes.  However, with respect to California's statutes, Amgen and Watson also note the following.

First, this Court has previously correctly found that Plaintiffs cannot proceed with Class I claims as to these Defendants because there is no Class I representative who acquired drugs from these Defendants prior to 2004.  (August 27, 2007 Transcript at 19-24.)  Thus, Plaintiffs are left with only classes of Third Party Payors; however, contrary to Plaintiffs' representation to the Court (Pl. Mem. at 21), such plaintiffs have no standing under the California Consumer Legal Remedies Act ("CLRA").  The CLRA provides a private right of action only to consumers.  *See* Cal. Civ. Code § 1780(a).  Consumer is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  *Id.* § 1761(d).  Thus, courts applying California law have repeatedly held that persons who did not purchase a good or service for their own personal, family or household use have no standing to sue under the CLRA.  *See, e.g., Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233, 241 (Ct. App. 2005) (plaintiff lacked standing to sue where here "ownership of the ring was not acquired as a result of her own consumer transaction with defendant");[16] *Cal. Grocers Ass'n, Inc. v. Bank of Am., Nat'l Trust & Sav. Ass'n*, 27 Cal. Rptr. 2d 396, 404 (Ct. App. 1994) (trade group of retail and wholesale grocers lacked standing to sue under the CLRA); *Kleffman v. Vonage*

---

(cont'd from previous page)
Proposed Jury Charges Concerning Common Law Intentional Misrepresentation (May 2, 2007).   Additional discussion of these variations in response to Plaintiffs' most recent submission is provided in Exhibit A.

[16] The transaction requirement recognized in *Schauer* would also preclude Medicare beneficiaries from suing under the CLRA, since their purchase of drugs did not result from a transaction with the defendant.

*Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650, at *4 (C.D. Cal. May 23, 2007) ("[T]he plaintiff must have acquired or attempted to acquire the goods or services in the transaction at issue."); *Bristow v. Lycoming Engines*, No. CIV. S-06-1947, 2007 WL 1752602, at *5 (E.D. Cal. June 15, 2007) ("A corporation . . . cannot seek or acquire a plane for 'personal, family, or household purposes,' and the language of the statute clearly envisions a person as the 'individual' permitted to bring suit."); *Lee v. Gen. Nutrition Cos.*, No. CV 00-13550LGB, 2001 WL 34032651, at *10 (C.D. Cal. Nov. 26, 2001) (holding that owners of retail stores were not consumers).

Plaintiffs also seek to recover under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.   However, the UCL differs significantly from the consumer protection statutes of other states in that the *only* monetary remedy available to private plaintiffs under the UCL is restitution.   *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 934, 946 (Cal. 2003).   No damages of any kind, or punitive measures of any kind, are permitted.   *See id.* at 946; *see also Bank of the West v. Superior Court*, 833 P.2d 545, 545-46 (Cal. 1992).

The remedial limitations of the UCL are significant in the context of this litigation.   To obtain restitution under the UCL a plaintiff must show that it gave money or property to the defendant, and that such money or property was actually *acquired by defendant* by means of a prohibited practice.   *Korea Supply*, 63 P.3d at 947.   The defendant's acquisition of the money or property sought to be returned is critical.   *Id.*; *see also Day v. AT&T*, 74 Cal. Rptr. 2d 55, 64 (Cal. App. 1998) (to obtain restitution, "[t]he offending party must have obtained something to which it was not entitled").   Indeed, this was the determinative factor considered by the California Supreme Court in *Korea Supply* in concluding that no restitution was available to the plaintiff: "*KSC has not given any money to Lockheed Martin*; instead, it was from the Republic of Korea that Lockheed Martin received its profits.   Any award that plaintiff would recover from

defendants would *not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff.*" *Korea Supply,* 29 Cal. 4th at 947 (emphasis added).[17]

In this case, Plaintiffs do not seek to recover money that they maintain was paid to the Defendants. Instead, Plaintiffs seek to recover money that they claim was paid to physicians. Plaintiffs do not even allege that the money they seek to recover was passed through to the Defendants. To the contrary, Plaintiffs' entire theory of the case is based upon allegedly excess margins charged by physicians; that is, amounts charged by physicians over and above what they paid to acquire the drugs at issue from the Defendants. Under such a theory, restitution is not available. *See Madrid v. Perot Sys. Corp.,* 30 Cal. Rptr. 3d 210, 222 (Ct. App. 2005) (holding that plaintiffs could not recover under the UCL "money from a defendant who never received it on a theory that the defendant conspired with or aided someone else who did receive it").

In addition, it is unclear whether reliance is required under the UCL. On November 2, 2004, the UCL was amended by Proposition 64, which imposed a new standing requirement, limiting UCL actions to persons who could show that they had actually been harmed by an unfair business practice. Proposition 64 applies to all pending cases. *See In re Tobacco II Cases,* 47 Cal. Rptr. 3d 917, 920 (Ct. App. 2006). At least two California appellate courts have interpreted Proposition 64 to require a showing of reliance upon an alleged misrepresentation by plaintiffs. *See id.* at 925; *see also Pfizer Inc. v. Superior Court,* 45 Cal. Rptr. 3d 840, 844 (Ct. App. 2006) ("[I]nherent in Proposition 64's requirement that a plaintiff suffered 'injury in fact . . . *as a result of* the fraudulent business practice . . . is that a plaintiff actually *relied* on the false or misleading misrepresentation or advertisement in entering into the transaction at issue."). The California Supreme Court has granted review in both of these cases, superseding the appellate decisions; so this issue remains undecided. *See Tobacco II Cases,* 146 P.3d 1250 (Cal. 2006); *Pfizer, Inc. v. S.C. (Galfano) Steve,* 146 P.3d 1250 (Cal. 2006).

---

[17] Plaintiffs' claim under the False Advertising Act ("FAA"), Cal. Bus. & Prof. Code § 17500, suffers from the same deficiency. The FAA does not create a private right of action. Instead, claims for violations of the FAA must be pursued under the UCL. *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.,* 673 P.2d 660, 668 (Cal. 1983).

Plaintiffs' mistaken interpretation of California law is representative of the ways in which differences in relevant state law have been glossed over in an attempt to show that material variations can somehow be overcome.  However, even reducing state law variations to the oversimplified version proposed by Plaintiffs, this Court is still faced with single-spaced jury instructions, over 100 pages long.

IV.     The Court Should Not Consider Certifying
        Pirelli and UFCW as Class Representatives

As discussed in detail in Watson's recent class certification pleading (Doc. 4716) ("Watson's Response"), which is incorporated herein by reference, the Court would commit a serious error if it were to certify UFCW or Pirelli for *any* proposed class.

Plaintiffs have neither moved nor submitted a proposed order for Pirelli or UFCW to be certified as class representatives.  However, Plaintiffs recently submitted materials that indicate that Plaintiffs hope the Court will nonetheless certify such classes.  But Plaintiffs' latest tactic has foreclosed the possibility of appropriate discovery of these entities by Defendants.

Moreover, Plaintiffs cannot rely on the filing of the Fifth Amended Complaint to support class certification for these entities.  As discussed in Watson's Response, inclusion of UFCW and Pirelli in the Fifth Amended Complaint did nothing to alert the Track Two Defendants that they needed to secure discovery as to UFCW or Pirelli.  These entities were also included in the Third Amended Complaint, which was filed well before Plaintiffs filed their Motion for Class Certification as to Track Two Defendants – a motion that did not include UFCW or Pirelli. "[A]ctual, not presumed conformance with Rule 23(a) remains . . . indispensable." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).  And such conformance must be proved by Plaintiffs, not Defendants. *E.g.*, *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) ("[W]e have stressed in case after case that it is not the defendant who bears the burden of showing that the proposed class does not comply with Rule 23, but that it is the plaintiff who bears the burden of showing that the class does comply with Rule 23.") (collecting cases).

19

Accordingly, where Plaintiffs have not even moved that the Court certify UFCW or Pirelli for any proposed class for any Track Two Defendant, the Court may not proceed to consider doing so.

CONCLUSION

For all the foregoing reasons, Plaintiffs' request for certification of multi-state classes as to proposed Classes 2 and 3 should be denied, and Pirelli and UCFW should not be considered for certification as class representatives.

Dated:  September 21, 2007.

/s/ Douglas S. Brooks
Frank A. Libby, Jr. (BBO No. 29910)
Douglas S. Brooks (BBO No. 636697)
Kelly, Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, Massachusetts  02110
Telephone:  (617) 338-9300
Facsimile:  (617) 338-9911

Joseph H. Young (*pro hac vice*)
Steven F. Barley (*pro hac vice*)
Hogan & Hartson L.L.P.
111 S. Calvert St., Suite 1600
Baltimore, Maryland  21202
Telephone:  (410) 659-2700
Facsimile:  (410) 539-6981


/s/ Douglas B. Farquar
Douglas B. Farquar (*pro hac vice*)
Hyman, Phelps & McNamara, P.C.
700 13th Street, N.W., Suite 1200
Washington, D.C.  20005
Telephone:  (202) 737-5600
Facsimile:  (202) 737-9329

<u>CERTIFICATE OF SERVICE</u>

I, Jennifer A. Walker, certify that a true and correct copy of the foregoing, was delivered to all counsel of record by electronic service pursuant to Case Management Order No. 2, by sending on September 21, 2007, copies to Lexis-Nexis for posting and notification to all parties.

/s/ Jennifer A. Walker

21