# EXHIBIT A

EXHIBIT A

APPENDIX OF STATE LAW VARIATIONS

STANDING

As noted in Defendants' response to Plaintiffs' supplemental submission, there is no Class One representative as to these defendants.  As to Classes Two and Three, Plaintiffs concede that Third Party Payors ("TPPs") would not have standing to sue under the deceptive trade practices statutes of the following states:  District of Columbia, Hawaii, Indiana, Kansas, Maryland, Missouri, Oklahoma, Pennsylvania, Rhode Island, and West Virginia.  (Pl. Mem. at 22.)  Plaintiffs also concede that TPPs with assets equal or greater to $25 million would be excluded under Texas' deceptive trade practices statute.  The Texas exclusion is actually broader. It would exclude TPPs with "assets of $25 million or more, *or that [are] owned or controlled by a corporation or entity with assets of $25 million or more*."  Tex. Bus. & Com. Code § 17.45(4) (emphasis added).[1]

There are additional states that must be excluded.[2]  For example, as discussed in Defendants' response, TPPs do not have standing under California's Consumer Legal Remedies Act ("CLRA").  Significantly, the definition of "consumer" under the CLRA is identical or nearly identical to the definition of consumers in states that Plaintiffs concede exclude TPPs, that is, someone who purchases goods or services primarily for personal, family or household purposes.  *See* D.C. Code § 28-3901(a)(2); Haw. Rev. Stat. §§ 480-1 & 480-2(d); Ind. Code. Ann.

---

[1]The Texas Supreme Court has also held that its statute does not reach non-privity defendants "when their misrepresentations are not communicated to the consumer."  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  Thus, even if Class I was still viable as to these Defendants, the members of that class, most of whom never heard of AWP, could not recover under Texas law.  AstraZeneca has previously identified for this Court other states with similar transactional requirements.  *See* Defendant AstraZeneca Pharmacuetical LP's Memorandum of Law:  (A) Regarding Class 1 Jury Instructions and (B) In Response to the Court's Request to Identify the States that Should Be Excluded from the Class 1 Trial, at 15-17 (Apr. 6, 2007).

[2]Defendants also maintain that plaintiffs have not and can not provide "evidence of compliance" with the "special notice provisions for bringing consumer protection claims" in California, Georgia, Indiana, Massachusetts, Texas, West Virginia and Wyoming and that these states must therefore be excluded from any multi-state class action in this case.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005); *see also* Track Two Defendants' Opposition to Plaintiffs' Motion to Amend (Dkt. 4181).

§ 24-5-0.5-2(a); Kan. Stat. Ann. § 50-624(b); Md. Code Ann., Com. Law § 13-101; Mo. Ann. Stat. § 407.025(1); Okla. Stat. Ann. tit. 15, §§ 752(2), 753, 761.1(A); 73 Pa. Cons. Stat. Ann. § 201-9.2(a); R.I. Gen. Laws § 6-13.1-5.2.   In addition, as discussed in Defendants' response, California's Unfair Competition Law does not permit recovery of the damages sought in this litigation.

As to Oregon, Plaintiffs attempt to distinguish the cases that have limited its consumer protection statute to consumers (Pl. Mem. at 22); however, Plaintiffs do not cite any contrary authority.   In *CollegeNET, Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d 1167 (D. Or. 2001), the court conducted a thorough review of the legislative history and purpose of the statute and stated: "[T]his court has little difficulty in concluding that the UTPA provides a cause of action only for consumers." *Id.* at 1174; *see also Lanphere Enters., Inc. v. Jiffy Lube Int'l, Inc.*, 2003 U.S. Dist Lexis 16204, at *3 (D. Or. Sept. 9, 2003).   Plaintiffs also argue that Michigan's consumer protection statute does not limit standing to consumers (Pl. Mem. at 21); however, Michigan courts have interpreted the transaction and materiality requirements of the Michigan consumer protection statute in a way that would exclude the transactions at issue here. *See Zine v. Chrysler Corp.*, 600 N.W.2d 384, 397 (Mich. Ct. App. 1999) (holding that "transaction" means "the business conducted between the parties" and that the statute extends only to representations or omissions made "during the negotiations and up to the time of the transaction").   Plaintiffs' theory of liability in this case does not rest upon representations made during the course of negotiations or a transaction between class members and these Defendants.

While businesses may sue under North Carolina's statute, "one business is permitted to assert an UTPA claim against another business only when the businesses are competitors (or potential competitors) or are engaged in commercial dealings with each other." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 520 (4th Cir. 1999); *accord Williams v. Charlotte Copy Data, Inc.*, 591 S.E.2d 598 (N.C. App. 2004) (text available at 2004 WL 193887, at *2). Here, Plaintiffs' claims do not arise from their competitive relationship with the Defendants or commercial dealings between the Defendants and class members.

Exhibit A – page 2

The standing of TPPs to sue under New York's statute on the facts of this case is, at best, questionable. *See New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 71 (N.Y. 1995) (holding that selling non-standard insurance policy to sophisticated party was not consumer oriented); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1145 (2004) (holding that a "third-party payor has no standing to bring an action under [New York's consumer protection act] because its claims are too remote").

Finally, South Carolina and Tennessee must be excluded because they do not permit class actions. *See* S.C. Code Ann. § 39-5-140(a); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 n.9 (Tenn. Ct. App. 2005). As Plaintiffs admit, Ohio and Utah also must be excluded because they do not permit class actions where no rule or decision issued before the transactions at issue declared that the alleged conduct is deceptive. *See* Ohio Rev. Code Ann. § 1345.09(B); Utah Code Ann. § 13-11-19(4)(a). Wisconsin would bar a class action for the same reason. *See* Wis. Stat. § 100.20(5).

Therefore, of the 39 jurisdictions that Plaintiffs seek to include in this class action, the following must be excluded at the outset:   California, District of Columbia; Hawaii, Indiana, Kansas, Maryland, Michigan, Missouri, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, West Virginia and Wisconsin.[3]

<u>RELIANCE AND CAUSATION</u>

While Plaintiffs have continuously attempted to minimize differences in state law regarding reliance and causation; it is, in fact, with respect to these two elements, as well as related concepts such as materiality, where state law varies so widely that any attempt to instruct

---

[3]Because the following states provide exemptions for acts authorized or regulated by state or federal authorities, they should also be excluded from any multi-state class proposed for Class 2:  Colorado, Connecticut, Illinois, Indiana, Massachusetts, Michigan, Minnesota, New Mexico, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Washington and Wyoming.  See Col. Rev. Stat. 6-1-106(1); Conn. Gen. Stat. § 42-110c(a); 815 Ill. Comp. Stat. 505/10B(1); Ind. Code Ann. § 24-5-0.5-6; Mich. Comp. Laws § 445.904; Mass. Gen. Laws Ch. 93A, § 3; Minn. Stat. § 325D.46; N.M. Stat. Ann. § 57-12-7; Okla. Stat. Ann. Tit. 15, § 754; Or. Rev. Stat. § 646.612; R.I. Gen Laws § 6-13.1-4; S.C. Code Ann § 39-5-40; S.D. Codified Laws § 37-24-10; Tenn. Code Ann. § 47-18-111(a); Wash. Rev. Code § 19.86.170; Wyo. Stat. § 40-12-110(a); see also Track Two Defendants' Joint Opposition to Class Certification (Dkt. 3020) at 26 (citing *Flanagan v. Altria Group, Inc.*, No. 05-71697, 2005 WL 2769010, at *7 (E.D. Mich. Oct. 25, 2005)).

the jury in a way that actually reflects state law would be hopelessly confusing. Initially, the following states expressly require reliance, either explicitly in the statute or as a result of state law interpreting the statute: Arizona, Hawaii, Indiana, Kansas, Maryland, North Carolina, Oregon, Pennsylvania, South Dakota, Texas, Vermont, Washington, Wisconsin and Wyoming.[4] As noted in Defendants' response, it is an open question whether California's Unfair Competition Law now requires reliance, as a result of a recent amendment that applies to all pending cases. Because there is a strong possibility that reliance is not an element under California law, it should also be included with this group.

Merely identifying the states that require reliance, however, does not end the inquiry. As the Supreme Court instructed in *Field v. Mans*, 516 U.S. 59 (1995), states have adopted at least three *distinctly different* standards on the question of reliance: actual (or unmodified) reliance,[5] justifiable reliance,[6] and reasonable reliance.[7] Other courts have also recognized that material

---

[4] *See Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. App. 2004); *Cocca v. Philip Morris Inc.*, 2001 WL 34090200, at *3 (Ariz. Super. Ct. July 24, 2001); *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992); *Flagstaff Med. Ctr., Inc. v. Sullivan*, 773 F. Supp. 1325, 1362 (D. Ariz. 1991), *aff'd in part, rev'd in part on other grounds*, 962 F.2d 879 (9th Cir. 1992); *Martinez v. Lewis*, 969 P.2d 213, 220-21 (Colo. 1998); *Zanakis-Pico v. Cutter Dodge, Inc.*, 47 P.3d 1222, 1230 (Haw. 2002); *Wiginton v. Pac. Credit Corp.*, 634 P.2d 111, 119 (Haw. Ct. App. 1981); Ind. Code Ann. § 24-5-0.5-4(a); *Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 690-92 (Kan. 1993); *Benedict v. Altria Group, Inc.*, 241 F.R.D. 668, 679 (D. Kan. 2007); *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 235 (Md. 2000); *Hoffman v. Stamper*, 843 A.2d 153, 191 (Md. Ct. Spec. App. 2004), *aff'd in part, rev'd in part on other grounds*, 867 A.2d 276 (Md. 2005); *Howerton v. Arai Helmet, Ltd.*, 581 S.E.2d 816, 830 (N.C. Ct. App. 2003), *rev'd on other grounds*, 597 S.E.2d 674 (N.C. 2004); *Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1977); *Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1050 (Or. Ct. App. 2000); *Pearson v. Philip Morris, Inc.*, No. 0211-11819, 2006 WL 663004, at *3-5 (Or. Cit. Ct. Feb. 23, 2006); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001); *Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005 (applying Pennsylvania law); *Northwestern Pub. Serv. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 973-74 (D.S.D. 2002); *Brookings Municipal Utilities, Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1178 (D.S.D. 2000); Tex. Bus. & Com. Code Ann. §17.50(a); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3 d 675, 685-86 (Tex. 2002); Vt. Stat. Ann. tit. 9 § 2461(b); *Smith v. Olympic Bank*, 693 P.2d 92, 96 (Wash. 1985); *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d 818, 823 (Wash. Ct. App. 2001); *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 720 N.W.2d 507, 521 (Wis. App. 2006), *aff'd*, 732 N.W.2d 792 (Wis. 2007); *Valenti v. Hewlett-Packard Co.*, No. 03-2257, 2004 WL 1277490, at *1 (Wis. Ct. App. June 3, 2004); Wyo. Stat. § 40-12-108(a).

[5] *See, e.g., Kuehn*, 91 P.3d at 351.

[6] *See, e.g., Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 141 (3d Cir. 2005) (applying Pennsylvania law).

[7] *See, e.g., Baxter v. I.S.T.A. Ins. Trust*, 749 N.E.2d 47, 52 (Ind. App. 2001); *Hoffman*, 843 A.2d at 191; *McClain v. Walker*, 478 S.E.2d 670, 673 (N.C. App., 1996); *Kane v. Nxcess Motorcars, Inc.*, 2005 WL 497484, at *4 n.5 (Tex. App. Mar. 3, 2005).

differences exist between the standards of reliance.[8]  For example, California, to the extent it requires reliance, requires only actual reliance, defined as follows:

> Actual reliance occurs when a misrepresentation is '"an immediate cause of [a plaintiff's] conduct, which alters his legal relations,"' and when, absent such representation, '"he would not, in all reasonable probability, have entered into the contract or other transaction."' . . . 'It is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . .  It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.'

*Whiteley v. Philip Morris Inc.*, 11 Cal. Rptr. 3d 807, 842-43 (Cal. App. 2004) (citations omitted).

Wisconsin uses an actual reliance standard, but has adopted an approach different from California's.  In Wisconsin,

> the unreasonableness of a purchaser's reliance on a representation may be relevant to whether the purchaser in fact relied, or . . . whether the purchaser would have "acted in its absence."  That is, evidence that reliance would be unreasonable may lead a jury to conclude that the purchaser did not in fact rely on the representation but would have made the purchase without it.

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 720 N.W.2d 507, 522 (Wis. App. 2006), *aff'd*, 732 N.W.2d 792 (Wis. 2007).  Thus, while the reasonableness of the plaintiff's reliance is not an absolute requirement, it is a factor that the jury can consider.

The foregoing actually oversimplifies the difficulties that the Court would face in crafting a unified jury instruction simply on the reliance issues.[9]  Inevitably, the Court would confront uncertainty as to the reliance standard to be applied in various jurisdictions.  To the extent that Plaintiffs are allowed to assert an action for common law fraud, or to borrow from common law fraud precepts for their proposed jury instructions, state law variations become even more profound.  For example, a review of the law of common law fraud reveals that states have either

---

[8]*See Rich Food Servs., Inc. v. Rich Plan Corp.*, 2001 U.S. Dist. LEXIS 25955, at *30 (E.D.N.C. Nov. 19, 2001) ("Justifiable reliance differs from reasonable reliance and is a fact-intensive inquiry."); *Baker v. Metro. Life Ins. Co.*, 907 So. 2d 419, 420-21 (Ala. 2005) (analyzing the difference between justifiable and reasonable reliance).

[9]*See In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 224 (E.D. La. 1998) ("[A]n accurate jury charge would have to reflect the proper definition and tests for each type of reliance under each state's laws.").

not articulated precise definitions for reliance or have conflicting decisional law.[10]  While some courts have left the issue unresolved, other courts applying the law of the same jurisdiction are in conflict. [11]   Moreover, jurisdictions have applied the same nominal standard differently. [12]  Common sense dictates that it would be impossible to determine, much less properly instruct the jury on, the entire range of variations.

Further, in recent years, an increasing number of courts have more carefully examined the injury (e.g., "ascertainable loss") and causation (e.g., "as a result of") components of their states' deceptive trade practices statutes and interpreted them in a way that requires plaintiffs to prove that they were actually deceived by the alleged deceptive practice and, as a result, changed their behavior.  Thus, though reliance may not be expressly required in such states, they have essentially imposed a de facto reliance requirement as a component of causation.  For example, in *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002), the Illinois Supreme Court rejected the plaintiff's causation theory that the defendant's deceptive conduct created an artificially inflated price for its product by increasing demand.  *See id.* 155-56, 164.  As the court observed:

> Plaintiff does not allege that he was, in any manner, deceived by defendant's advertisements.  Plaintiff does not allege that he received anything other than

---

[10]*See, e.g., Shatford v. Smallbusiness.com*, 2005 Tenn. App. LEXIS 346, at *12 (Tenn. Ct. App. June 13, 2005) (declining to decide whether the element of reliance in Tennessee required a showing of justifiable or reasonable reliance).

[11]*Compare H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003) (requiring justifiable reliance), *with DeBakery Corp. v. Raytheon Serv. Co.*, 2000 Del. Ch. LEXIS 129, at *79 (Del. Ch. Aug. 25, 2000) (requiring either justifiable or reasonable reliance); *compare Gilcreast v. Jarrett*, 1997 WL 33354310, at *1 (Mich. Ct. App. Jan. 28, 1997) (non-precedential) ("[T]his Court has expressly approved the use of the word 'reliance,' unmodified by the adjectives reasonable or justifiable."), *with Cormack v. Am. Underwriters Corp.*, 288 N.W.2d 634, 637 (Mich. Ct. App. 1979) (requiring a showing of justifiable reliance); *compare Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n.45 (Tex. 2002) (setting out unmodified reliance as the appropriate standard), *with Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (requiring proof that the plaintiff "actually and justifiably relied"), *and Wil-Roye Inv. Co. II v. Wash. Mut. Bank, F.A.*, 142 S.W.3d 393, 412 (Tex. Ct. App. 2004) (adopting a justifiable reliance standard), *and Herod v. Baptist Found. of Tex.*, 89 S.W.3d 689, 695 (Tex. Ct. App. 2002) (adopting a justifiable and reasonable reliance standard), *and TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 674 (Tex. Ct. App. 2002) (adopting a justifiable or reasonable standard).

[12]In Minnesota, the jury applies a subjective test.  4 Minn. PJI, Civil 4th § 57.10 (2005) (comments) ("various factors may be considered, including the relationship between the parties, as well as the opportunity the parties have for knowledge.").  Other states employ an objective standard.  *See, e.g., Fellows, Read & Assocs. v. Rieder*, 194 B.R. 734, 737 (S.D.N.Y. 1996) (reasonable reliance is an objective standard), *aff'd mem.*, 116 F.3d 465 (2d Cir. 1997).

what he expected to receive when he purchased defendant's gasoline, *i.e.*, a certain amount of gasoline, with a certain octane level, for the price listed on the pump. . . . Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefited the environment or improved engine performance.

*Id.* at 163. Accordingly, plaintiff could not establish proximate causation under the act. *Id.* at 164. The Illinois Supreme Court has repeatedly reiterated its holding in *Oliveira*. For example, in *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213 (Ill. 2004), the court stated:

The teaching of *Oliveira* . . . is that deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff. Plaintiffs' complaint in this case does not allege that any deceptive advertising by [the defendant] was received by any plaintiff, or that it was received by any builder, architect, engineer, or other like person somehow connected with a plaintiff. Instead, plaintiffs claim that [the defendant's] alleged deceptions created a market for their product that would not otherwise exist, thus resulting in its use on their homes and the plaintiffs' ultimate damages.

*See id.* at 217. Without evidence that the defendant's alleged deception induced the plaintiffs to accept its product "the alleged deception is simply too remote from the claimed damages to satisfy the element of proximate cause." *Id.* at 218.

Moreover, the Illinois Supreme Court has made clear that, while "but for" causation may be a necessary component of proximate causation under its deceptive trade practices statute, more is required. A plaintiff must still prove that he was actually deceived. For example, in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005), the plaintiff's insurance company would not pay for "Original Equipment Manufacturer" parts to be used in the repair of his vehicle. While the insurance company's adherence to its policy might have *caused* the plaintiff to accept the parts that his insurer would pay for, the court held that plaintiff could not establish proximate cause when he was not deceived by anything the manufacturer said or did. *See id.* at 862-63. Even more recently, the Illinois Supreme Court has explained that the injury and causation elements of its deceptive trade practices statute can create individual issues of fact that preclude class certification. *See Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 51-52 (Ill. 2005), *cert. denied*, 127 S. Ct. 685 (2006).

Although Tennessee has not addressed the issues as explicitly as Illinois, Tennessee courts have placed great reliance on Illinois decisions when construing Tennessee's consumer

protection statute. *See Harvey v. Ford Motor Credit Co.*, 1999 WL 486894, at *2 (Tenn. App. July 13, 1999). Tennessee courts have held that "[a]lthough the [TCPA] does not require reliance, plaintiffs are required to show that the defendant's wrongful conduct proximately caused their injury." *Id.*; *accord Land v. Dixon*, 2005 WL 1618743, at *4 (Tenn. App. July 12, 2005); *Roberson v. West Nashville Diesel, Inc.*, 2006 WL 287389, at *4-5 (Tenn. App. Feb. 3, 2006). Finding no causation or injury in *Harvey*, the court noted that "the plaintiff does not allege that he would have refused to engage in the transaction had he known" of the information allegedly withheld. *See Harvey*, 1999 WL 486894, at *2. Likewise, knowledge of an alleged misrepresentation defeats causation. *See Land*, 2005 WL 1618743, at *4.

The Minnesota Supreme Court has also recognized that reliance is a functional component of causation. As the court explained: "[W]here, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of [Minnesota's] misrepresentations in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes." *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001).[13]

Similarly, "[w]hile reliance need not be proven under the [New Jersey deceptive trade practices statute], plaintiffs must nevertheless demonstrate that each class member read one or more of the [alleged misrepresentations] upon which plaintiffs rely and that one or more of the false advertising and material factual concealments which they allege were contained therein constituted a proximate cause of 'an ascertainable loss' of money or property." *Fink v. Ricoh Corp.*, 839 A.2d 942, 958 (N.J. Super. Ct. Law Div. 2003).

The law in Connecticut is similar. In *Collins v. Anthem Health Plans, Inc.*, 880 A.2d 106 (Conn. 2005), the Connecticut Supreme Court reversed a class action certified for claims under

---

[13]*Group Health Plan* was not a class action and, therefore, does not stand for the proposition that, in a class action, individual class members do not have to prove reliance, as Plaintiffs suggest.

that state's deceptive trade practices statute, explaining that evidence of the defendant's general practices was insufficient to establish injury and causation as to each class member. *See id.* at 120-21. In *Agrella v. Ford Motor Co.*, 2006 WL 1493823 (Conn. Super. Ct. May 18, 2006), the court held that causation required a showing that the advertising at issue actually reached class members. In addition, because analysis of causation would require consideration of all the information known and considered by class members, a class could not be certified. *See id.* at *6.

Similarly, while the Michigan Supreme Court has indicated that only objective reliance is required under the statute,[14] a Michigan appellate court has more recently ruled that the lack of subjective reliance negates proof of injury caused by the allegedly deceptive act. *See Vandermale v. Harvey Auto., Inc.*, 2005 WL 1459610, at *1 (Mich. App. June 21, 2005). Courts construing Nebraska's and the District of Columbia's statutes have reached similar conclusions. *See Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1016 n.10 (D. Neb. 1998) (noting that the plaintiff could not have been "deceived" because he knew the truth); *Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12, 19 (D.D.C. 2000) (holding that plaintiff "must show that defendants' allegedly deceptive trade practices caused her injuries, whether by virtue of her reliance on those practices or by virtue of some other reason").

The following states, therefore, have interpreted the causation prong of their deceptive trade practices statutes to require reliance or something closely resembling reliance: Connecticut, District of Columbia, Illinois, Michigan, Minnesota, Nebraska, New Jersey, and Tennessee.

A number of states have not even decided whether reliance is required under their states' deceptive trade practices statutes, either directly or through the causation requirement.[15] To the extent that Plaintiffs argue that reliance or causation can be shown by reliance or a change in behavior by a third-party (such as the government), state law is even more unclear. In the common law fraud context, a complex and varied body of law has developed regarding the

---

[14]*See Dix v. Am. Bankers Life Ass. Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987).

[15] *See* Appendix A to Track 1 Defendants' Memorandum in Opposition to Class Certification.

sufficiency of third-party reliance, with some states rejecting it outright. *See, e.g., Ark. Carpenters' Health & Welfare Fund v. Philip Morris, Inc.*, 75 F. Supp. 2d 936, 943 (E.D. Ark. 1999) (observing that "Arkansas follows the traditional, and prevailing, rule that a plaintiff may not recover for fraud and misrepresentation directed to a third party"); *Parks v. Danek Med., Inc.*, 1999 WL 1129706, at *8 (N.D. Ind. June 17, 1999) (holding, under Indiana law, that a plaintiff "must show *personal* reliance on an alleged concealment or misrepresentation to assert a fraud claim") (emphasis in original). The law regarding these concepts under statutory consumer protection acts is even more uncertain.

Further, many states have expressly rejected the "fraud on the market" as a theory of reliance or causation. *See Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 561 (5th Cir. 2000) (observing that "fraud-on-the-market" has never been recognized outside the context of efficient securities markets or applied to sales of consumer goods); *see also Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363-64 (11th Cir. 2002).[16] The high courts of both Illinois and New Jersey have now explicitly held that the causation requirement of their states' deceptive trade practices statutes cannot be proven through fraud-on-the-market. *See Oliveira*, 776 N.E.2d at 155-56, 164; *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, __ A.2d __, 2007 WL 2493917, at *10 (N.J. Sept. 6, 2007) (hereafter "*Vioxx*").

The New Jersey Supreme Court's recent decision in *Vioxx* illustrates the significance of this issue. In *Vioxx*, third party payors sought to recover for amounts allegedly overpaid for a pain medication. *See id.* at *1. Plaintiffs alleged that the defendant aggressively marketed Vioxx as a safer and more effective alternative to other pain medication, driving up the price for Vioxx, even though defendant was allegedly aware that their were significant health risks associated with Vioxx. *See id.* at *1-2. In support of class certification, the plaintiff argued "that the common facts surrounding defendant's marketing scheme created an effect on the price of Vioxx

---

[16]*See, e.g., Frelin v. Oakwood Homes Corp.*, 2002 WL 31863487, at *10 n.45 (Ark. Cir. Ct. Nov. 25, 2002); *Benning v. Wit Capital Group, Inc.*, 2004 WL 3030005, at *4 (Del. Super. Ct. Nov. 30, 2004); *Constantine v. Miller Indus., Inc.*, 33 S.W.3d 809, 814 (Tenn. Ct. App. 2000).

such that the ascertainable loss element of [New Jersey's deceptive trade practices statute] may be proven, on a class-wide basis, by reliance on expert analysis alone." *See id.* at *10. The New Jersey Supreme Court rejected this argument, explaining:

> Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover. In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs demonstrate that they have sustained an ascertainable loss. . . .
>
> Fraud on the market is essentially a creature of federal securities litigation. In that context, plaintiffs who purchased securities are permitted to demonstrate that they were damaged simply because defendant engaged in behavior otherwise prohibited and there was a change in price. The theory therefore presumes reliance. . . .
>
> We have rejected the fraud on the market theory as being inappropriate in any context other than federal securities fraud litigation. Therefore, to the extent that plaintiff seeks to prove only that the price charged for Vioxx was higher than it should have been as a result of defendant's fraudulent marketing campaign, and seeks thereby to be relieved of the usual requirements that plaintiff prove an ascertainable loss, the theory must fail.

*Id.* at *10.

There is no escaping the fact that, in this case, Plaintiffs are also relying upon a fraud-on-the-market theory. Plaintiffs' theory of liability is not based upon the knowledge, reliance or ascertainable loss sustained by any individual class member. Plaintiffs' theory of both liability and damages is inherently dependent upon Dr. Hartman's "speed limit," which is nothing more than his analysis of market expectations. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 86-89 (D. Mass. 2007). As this Court explained: "Dr. Raymond S. Hartman, a healthcare economist, testified that *the marketplace* had an expectation that AWP did not exceed the average sales price by more than 30 percent." *Id.* at 40 (emphasis added). "Dr. Hartman refers to this expectation that AWP exceeded ASP by 30 percent as his 'expectations yardstick.' Dr. Hartman uses the yardstick to find liability whenever a drug exceeds that threshold." *Id.* at 40 n.20. A similarly theory was expressly rejected by the New Jersey Supreme Court in *Vioxx*. There, the court held:

> Plaintiff argues that it should be permitted to demonstrate class-wide damages through use of a single expert who would opine about the effect on pricing of the marketing campaign in which defendant engaged. To the extent that plaintiff

> intends to rely on a single expert to establish a price effect in place of a demonstration of an ascertainable loss or in place of proof of a causal nexus between defendant's acts and the claimed damages, however, plaintiff's proofs would fail. That proof theory would indeed be the equivalent of fraud on the market, a theory we have not extended to [statutory consumer fraud] claims.

*Vioxx*, 2007 WL 2493917, at *10.  This Court is *Erie*-bound to adhere to the New Jersey Supreme Court's holding on this issue.  Thus, the lesson to be learned from *Vioxx* is this: Acceptance of Dr. Hartman's speed limit depends not merely upon federal evidentiary standards regarding the reliability of expert testimony or Rule 23 criteria for class certification. ***Dr. Hartman's theory implicates state substantive law and variations in state law must be accounted for.***

In addition, the standard for causation also differs materially from state to state.[17]  Even if in states where privity is not required, the indirect nature of the relationship between the parties may make it difficult for a class member to demonstrate causation.[18]  In this regard, it is important to remember that proximate cause is not the same as cause-in-fact.  *See Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 120-21 (Conn. 2001);[19] *cf. id.* at 133-34 (holding that proof of an "ascertainable loss," in itself, was insufficient to confer standing under Connecticut's consumer protection act); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1144 (N.Y. 2004) (holding that "by reason of" language of New York's deceptive trade practices statute did not permit recovery for indirect injuries).  Nuanced variations in state

---

[17]*Compare, e.g., Duphily v. Delaware Elec. Coop., Inc.*, 662 A.2d 821, 828-29 (Del. 1995) (defining proximate causation as "but for" causation), with *American Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1444 (E.D.N.C. 1986) (defining proximate cause as "substantial cause"); *accord Adas v. Ames Color-File*, 407 N.W.2d 640, 642 (Mich. Ct. App. 1987) (noting the "countless variations on the definition of proximate causation").

[18]*See, e.g., Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1064 65 (Conn. 2002) (holding that, although privity is not a requirement, an indirect purchaser may be too remote from the alleged conduct to satisfy causation); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 650 (Tex. 1996) (holding that a "defendant's deceptive trade act or practice is not actionable under the DTPA unless it was committed *in connection with* the plaintiff's transaction in goods or services").

[19]*See also Port Auth. Of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 317 (3d cir. 1999) ("Utilization of [the] term [proximate cause] to draw judicial lines beyond which liability will not be extended is fundamentally . . . an instrument of fairness and policy, . . . based 'upon mixed considerations of logic, common sense, justice, policy and precedent.'").

law are also reflected in differing jury instructions on causation.  California courts instruct juries that "[t]he law defines cause in its own particular way.  A cause ... is something that is a substantial factor in bringing about an [injury] ...."  California Civil Jury Instructions (BAJI) 3.76.  Colorado uses the following instruction:  "The word 'cause' as used in these instructions means an act or failure to act which in natural and probable sequence produced the claimed injury.  It is a cause without which the claimed injury would not have happened."  Colorado Jury Instructions, 4th – 9:18.  In New York, juries are instructed that "[a]n act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury."  N.Y. Pattern Jury Instructions – Civil 2:70.  Some states use the phrase "legal cause," while others use the term "proximate cause."  *Compare* Fla. Standard Jury Instructions in Civil Cases 5.1, *with* Ill. Pattern Jury Instruction – Civil 15.01.

All of these variations in state law, both major and minor, must be accounted for when instructing the jury.

## SCIENTER AND INTENT/PUNITIVE DAMAGES AND PENALTIES

The varying standards governing intent and scienter have been so well established at this point in the litigation that they have been essentially conceded by Plaintiffs, who propose that the Court instruct the jury based upon a composite intent standard.  For the reasons discussed in Defendants' response, such an instruction would constitute error.  Further, it must be remembered that, at issue is not only the requisite willfulness for actual damages, but the *mens rea* required for multiple or punitive damages.[20]  For example, Massachusetts courts have made

---

[20]The availability of punitive damages also varies by state.  States permitting recovery of punitive damages include Connecticut, Delaware, the District of Columbia, Idaho, Missouri, Oregon, and Rhode Island, *See* Conn. Gen. Stat. § 42-110g(a); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076-77 (Del. 1983); *Dist. Cablevision Ltd. P'Ship v. Bassin*, 828 A.2d 714, 726 (D.C. 2003); Idaho Code § 48-608(1); Mo. Ann. Stat. § 407.025(1); Or. Rev. Stat. § 646.638(1); R.I. Gen. Laws § 6-13.1-5.2(a).  Some states permit only the elderly and disabled to recover punitive damages.  *See, e.g.*, Ark. Code Ann. § 4-88-204; Nev. Rev. Stat. Ann. § 598.0977.  In Pennsylvania, punitive damages are not recoverable, but in deciding whether to award treble damages, courts should be guided by the law governing punitive damages.  *Samuel-Bassett v. Kia Motors Afm, Inc.*, 357 F.3d 392, 401-02 (3d Cir. 2004); *Patterson v. Chrysler Fin'l Co.*, 263 B.R. 82, 98 (Bankr. E.D. Pa. 2001).  Other states do not permit recovery of punitive damages.  *See, e.g.*, Colo. Rev. Stat. § 6-1-113(2)(a) (only actual damages permitted in a class action); Md. Code Ann., Com. Law § 13-408(a); Mich. Comp. Laws Ann. § 445.911(6); *Wyman v. Terry Schulte Chevrolet, Inc.*, *(cont'd)*

plain that multiple damages are to be awarded under chapter 93A only for "'callous and intentional violations'" amounting to "'intentional fraud.'"  *See VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 623, 642 N.E.2d 587, 596 (1994) (citations omitted).

In addition to diverse standards of wrongdoing necessary to support a claim for punitive damages,[21] the burden of proof varies.[22]  *See generally* Kimberly A. Pace, *Recalibrating the Scales of Justice through National Punitive Damage Reform*, 46 Am. U. L. Rev. 1573, 1618 (1997) ("[E]very state has a different way of characterizing and defining what form of conduct gives rise to the imposition of punitive damage awards.").  As a result, courts have repeatedly refused to certify nationwide class actions where varying state standards governing punitive damages would have to be applied.  *See, e.g., In re N. Dist. of Cal. "Dalkon Shield" IUD Prods. Liab. Litig.*, 693 F.2d 847, 850 (9th Cir. 1982) (observing that "the 50 jurisdictions in which these cases arise do not apply the same punitive damages standards"); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (observing that "[i]n our federal system, States necessarily have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case")

Indeed, courts have repeatedly refused to certify nationwide class actions where varying state standards governing punitive damages would have to be applied.  *See, e.g., In re Baycol Prods. Litig.*, 218 F.R.D. 197, 215 (D. Minn. 2003) (" [T]he law of punitive damages among the states is varied; from the procedures utilized to impose punitive damages to the conduct and proof necessary for the recovery of punitive damages."); *Ilhardt v. A.O. Smith Corp.*, 168 F.R.D.

---

*(cont'd from previous page)*
584 N.W.2d 103, 107 (S.D. 1998); *Virden v. Altria Group, Inc.*, 304 F. Supp. 2d 832, 850 (D. W. Va. 2004) (applying West Virginia law).  Some states provide for damage multipliers under some circumstances, but not punitive damages.  *See, e.g., Paty v. Herb Adcox Chevrolet Co.*, 756 S.W.2d 697, 699 (Tenn. Ct. App. 1988).

[21] *See, e.g., Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986) (evil mind); *Stephenson*, 462 A.2d 1076-77 (Delaware law requires gross, oppressive or aggravated conduct); *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 247 (Mo. 2001) ("complete indifference to or conscious disregard for the safety of others"); *McFarland v. Brier*, 769 A.2d 605, 612 (R.I. 2001) (willfulness, recklessness or wickedness as amounts to criminality).

[22] *See, e.g.,, Freeman v. Alamo Mgmt. Co.*, 607 A.2d 370, 374-75 (Conn. 1992) (preponderance of the evidence); *Dist. Cablevision Ltd. P'Ship v. Bassin*, 828 A.2d 714, 726 (D.C. 2003) (clear and convincing);.

613 (S.D. Ohio 1996) ("[T]he jury . . . would need to determine whether to award punitive damages under state laws which impose varying burdens and inconsistent standards of proof and which maintain different approaches to the issue of bifurcation of the punitive damages question."); *In re Stucco Litig.*, 175 F.R.D. 210, 216 (E.D.N.C. 1997) ("State punitive damages law varies not only in terms of the conduct required to obtain punitives, but also in terms of the burden of proof required.  Any instructions attempting to account for these variations would surely baffle a jury." [cite] (citations omitted); *accord Carpenter v. BMW of N. Am., Inc.*, No. Civ. A. 99-CV-214, 1999 WL 415390, at *6 (E.D. Pa. 1999); *Poe v. Sears, Roebuck & Co.*, No. CivA 1:96-CV-358-RLV, 1998 WL 113561, at *3 (N.D. Ga. Feb. 13, 1998); *Dubose v. First Sec. Savings Bank*, 183 F.R.D. 583, 588 (M.D. Ala. 1997).

## STATUTES OF LIMITATIONS

Plaintiffs are seeking to avoid the preclusive effect of applicable statutes of limitations by asserting that the doctrines of fraudulent concealment, the discovery rule, and equitable tolling save their claims and those of all the members of the putative class.  However, the applicability of these doctrines to statutes of limitations cannot be adjudicated on a classwide basis because substantial variation exists among both statutes of limitations and the tolling laws of the different jurisdictions.

In fact, courts have recognized that even where the varying statutes of limitations of only a few states are at issue, this alone presents insurmountable manageability problems and defeats predominance.  *See Corley v. Entergy Corp.*, 220 F.R.D. 478, 488 (E.D. Tex. 2004) ("In short, Louisiana, Mississippi, and Texas have widely varying statutes of limitations on each of Plaintiffs' claims. . . .  [T]hese varying statutes of limitations, as well as their differing effects on Plaintiffs' claims, slay predominance.").   Where differing limitation periods across 39 jurisdictions come into play, the difficulties are magnified exponentially.  *See Block v. Abbott*, U.S. Dist. LEXIS 5453, at *17-18 (N.D. Ill. March 28, 2002) (differences in statutes of limitations, among other issues, would make certification "a logistical and procedural nightmare.").

The individual issues of law raised by Plaintiffs' claims in this case are compounded exponentially by the Plaintiffs' reliance on different states' tolling doctrines to salvage their time-barred claims.   Initially, as even Plaintiffs concede, in several jurisdictions it is unclear whether tolling provisions apply to statutes of limitations.   Some states do not apply the discovery rule to claims brought under their deceptive trade practices statutes.[23]  Other states have not yet addressed whether the discovery rule or tolling doctrines are applicable to their statutes.[24]  And, at least one state's deceptive trade practices statute contains a statute of repose that is not subject to any tolling doctrine.[25]  Assuming that such doctrines are available, they introduces a diverse set of material differences in state laws that exist with respect to those doctrines making class treatment all the more improper.   As the Utah Supreme Court has explained, there are manifest differences in state law regarding tolling of a statute of limitations: "Although deceptively simple in theory, the rule *has led to disarray* as courts have attempted to articulate and apply hard and fixed subrules to determine whether a statute of limitations should be tolled as a matter of law on the particular facts of specific cases." *Berenda v. Langford*, 914 P.2d 45, 52 (Utah 1996) (emphasis added).   This disarray arises from the fact that tolling focuses on both the defendant's and the *plaintiff's* conduct. *See id.* at 52-53 (noting that there are clear-cut differences in tolling jurisprudence regarding a plaintiff's affirmative obligation to

---

[23]*See Fichera v. Mine Hill Corp.*, 541 A.2d 472, 476 (Conn. 1988) (holding that discovery rule does not apply to Connecticut's statute); *Yusaf Mohammad Excavation, Inc. v. Ringhaver Equip. Co.*, 723 So. 2d 1127, 1128 (Fla. Dist. Ct. App. 2001) (holding that discovery rule did not apply to Florida's statute); *A.J.'s Auto. Sales v. Freet*, 725 N.E.2d 955, 965 (Ind. Ct. App. 2000) (holding that discovery rule did not apply to Indiana's statute); *Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419, 422 (La. Ct. App. 2000) (holding that Louisiana's one-year statute begins running at the time of the transaction, without regard to plaintiff's knowledge).

[24]Idaho courts, for example, have not addressed the applicability of the discovery rule to their consumer protection statutes.  Likewise, California has not addressed whether the discovery rule applies to the statutory period provided for in Cal. Civ. Code § 1783.  On the other hand, courts have held that the discovery rule does not apply to Cal. Bus. & Prof. Code § 17208. *See Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 861 (N.D. Cal. 2000).

[25]*See, e.g.*, Tenn. Code Ann. § 47-18-109 (2004) (five year statute of repose); *see also Penley v. Honda Motor Co.*, 31 S.W.3d 181, 184 (Tenn. 2000) (holding that fraudulent concealment does not toll a statute of repose unless the statute expressly so provides).

investigate the facts underlying his claim); *Plain v. Flicker*, 645 F. Supp. 898, 902 (D.N.J. 1986) (same).

Indeed, the Oklahoma Supreme Court held that the task of interpreting and applying different states' limitations statutes and tolling provisions precluded class certification. *KMC Leasing Inc. v. Rockwell-Standard Corp.*, 9 P.3d 683, 690 (Okla. 2000) (holding that the need to apply many states' statutes of limitations and tolling provisions supported denial of class certification).

At its core, tolling a statute of limitations requires a plaintiff to prove some type of fraudulent concealment. *See O'Mara v. Dykema*, 942 S.W.2d 854, 858 (Ark. 1997) ("[N]o mere ignorance of the plaintiff of his rights nor the mere silence of one who is under [no] obligation to speak, will prevent the statutory bar . . . .   There must be some positive act of fraud . . . .") (internal quotation and citation omitted).   This, in turn, injects into the case both additional significant variations in the law *and* individualized factual inquiries.   For example, while Arkansas and other states apply the general civil preponderance of the evidence test to tolling issues,[26] a number of other states require a heightened standard of proof.[27]   States also differ with respect to whether they require tolling issues to be decided by the judge or the jury.[28]

---

[26]*See, e.g., Curry v. Thornsberry*, 128 S.W.3d 438, 441 (Ark. 2003) (plaintiff has burden "to prove by a preponderance of the evidence that the statute of limitations was in fact tolled.")

[27]*See Montanya v. McGonegal, 757* A.2d 947, 951 (Pa. Super. Ct. 2000) ("The plaintiff has the burden of proving active concealment through clear and convincing evidence.") (internal quotation omitted); *see also Bartone v. Robert L. Day Co., Inc.*, 656 A.2d 221, 224 (Conn. 1995) ("[T]he plaintiffs had to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence."); *Lutheran Hosp. of Md. v. Levy*, 482 A.2d 23, 30 (Md. Ct. Spec. App. 1984) ("Such fraud must be established by clear and convincing evidence."); *Dakota Truck Underwriters v. S.D. Subsequent Injury Fund*, 689 N.W.2d 196, 204 (S.D. 2004) ("Estoppel cannot exist if any of these elements are lacking, or if any of them have not been proven by clear and convincing evidence.") (citation omitted); *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 938 (4th Cir. 1991) (under Virginia law, estoppel of application of statute of limitations must be proven by "clear, precise, and unequivocal evidence.") (citation omitted).

[28]*Compare Lopez v. Swyer*, 300 A.2d 563, 567 (N.J. 1973) ("It is true that the time of discovery is a question of fact, and so could be left to a jury . . . .   The decision requires more than a simple factual determination; it should be made by a judge conscious of the equitable nature of the issue before him."), *Decker v. Fink*, 422 A.2d 389, 394 (Md. Ct. Spec. App. 1980) (judge weighs equitable claims of opposing parties in applying discovery rule), *and Shillady v. Elliot Cmty. Hosp.*, 320 A.2d 637, 639 (N.H. 1974) (holding that issues relating to discovery rule and fraudulent concealment were for the court), *with Fager v. Hundt*, 610 N.E.2d 246, 253 n.5 (Ind. 1993) ("[W]hen the applicability of the statute of limitations rests upon questions of fact, it is generally an issue for jury determination."), *(cont'd)*

In addition, there is a substantial split among the states regarding whether justifiable or reasonable reliance is the standard to be applied in the tolling context.[29] As noted above, the United States Supreme Court has stated that the "contrast between a justifiable and reasonable reliance is clear." *Field v. Mans*, 516 U.S. 59, 70 (1995). The Court explained that while the former standard requires the plaintiff's reliance to be justifiable, "'this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" *Id.* at 70-71 (quoting Restatement (Second) of Torts § 545A, cmt. *b* (1977)).

Other variations also exist. For example, in Tennessee "affirmative action" required to establish fraudulent concealment must constitute "something more than mere silence or a mere failure to disclose known facts." *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992). Rather, "[t]here must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id.* The Tennessee Supreme Court has made clear that this trick or contrivance necessarily requires active conduct by a defendant – *above and beyond the wrongdoing upon which the underlying cause of action is based* – to prevent the plaintiff from suing in time. *See Fahrner v.*

---

(*cont'd from previous page*)
*Monti v. Granite Sav. Bank and Trust Co.*, 333 A.2d 106, 109 (Vt. 1975) ("Whether or not the defendants claim of a bar of the action by the statute of limitations had merit, as well as whether or not there was actual or constructive fraud, were both questions of fact which would have to be decided by the jury."), *and Patsos v. First Albany Corp.*, 741 N.E.2d 841, 847 (Mass. 2001) ("Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.'") (quoting *Riley v. Presnell*, 565 N.E.2d 780, 786-87 (Mass. 1991) (collecting cases going both ways)).

[29] *Compare Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App. 1997) ("The plaintiff asserting fraudulent concealment must have reasonably relied on the defendant's lies or improper silence. Once a plaintiff knows or should know of the deceit, reliance is no longer reasonable, and the tolling effect ends."), *and W.L. Miller Co. v. Zehnder*, 734 N.E.2d 502, 507 (Ill. App. Ct. 4th Dist. 2000) ("The doctrine of equitable estoppel may be invoked when a party reasonably and detrimentally relies on the words or conduct of another."), *with Baselice, III v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278 (Pa. Super Ct. 2005) ("[F]or fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied.") (internal quotation omitted), *Villalobos v. Heidelberger Druckmaschien Aktiengesellschaft*, 859 F. Supp. 1355, 1359 (D. Colo. 1994) (to toll the statute of repose, plaintiff must show that "the reliance was justified."), *and Smith v. O'Connell*, 997 F. Supp. 226, 238 (D.R.I. 1998) ("[I]n order to establish that a misrepresentation was 'fraudulent,' there must be a showing that the plaintiff justifiably relied upon that misrepresentation in concluding that no cause of action existed.").

*SW Mfg., Inc.*, 48 S.W.3d 141, 147 (Tenn. 2001) ("The problem with [the plaintiff's fraudulent concealment] argument is that it simply restates the central issue of his underlying claims.").

State law also varies with respect to when statutes of limitations begin to run.  In some states, the limitation period begins at the time the plaintiff becomes aware, or should become aware, of facts giving rise to his cause of action.[30]  In other states, the period begins to run earlier, when the plaintiff learns of facts that put him on notice that he should begin inquiring as to whether he has a cause of action.[31]

Also, to the extent that Plaintiffs rely upon the doctrine of "equitable tolling" in addition to the doctrines of fraudulent concealment and the discovery rule, some states either do not recognize a separate "equitable tolling" doctrine,[32] or have not decided whether to adopt the doctrine.[33]  Many other states that do recognize such a doctrine require proof of elements that Plaintiffs do not allege in this case.[34]

---

[30]*See Micale v. Bank One N.A. (Chicago)*, 382 F. Supp. 2d 1207, 1225 (D. Colo. 2005) ("A claim for relief does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action. Inquiry notice does not trigger the discovery rule."); *see also Soutiere v. Betzdearborn, Inc.*, 189 F. Supp. 2d 183, 193 (D. Vt. 2002) (Vermont law) ("The appeals court rejected the contention that inquiry notice, the possibility of a claim, triggered accrual under the discovery rule . . . .").

[31]*See Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1184 (C.D. Cal. 2005) (California law) ("However, 'under the delayed discovery rule, the statute begins to run when a reasonable person in the plaintiff's position is on 'inquiry notice' of 'potential wrongdoing.'") (quoting *Jolly v. Eli Lilly & Co.*, 245 Cal. Rptr. 658 (Cal. 1988)); *Healy v. Owens-Illinois, Inc.*, 833 N.E.2d 906, 913 (Ill. Ct. App. 2005) ("The statute of limitations commences when the plaintiff possesses sufficient knowledge of his injury and its cause such that would place a reasonable person on notice to ascertain its source and whether legally actionable conduct was involved."); *Christensen v. Philip Morris USA Inc.*, 875 A.2d 823, 851 (Md. Ct. App. 2005) ("Elucidating the concept of inquiry notice in *Pennwalt Corp.*, a product liability case, the Court of Appeals explained: [I]n simple terms, a plaintiff is only on inquiry notice, and thus the statute of limitations will begin to run, when the plaintiff has 'knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort].'").

[32]*See Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 n.2 (Tenn. 2001) (noting that the doctrine of equitable tolling is not recognized under Tennessee law); *see also Johnson v. Marcheta Investors Limited Partnership*, 711 A.2d 109, 112 (D.C. 1998) ("District of Columbia law does not recognize an equitable tolling exception to the statute of limitations").

[33]*See Reid v. Cuprum SA, de C.U.*, 611 N.W.2d 187, 191 (N.D. 2000) (leaving open the question of whether the doctrine of equitable tolling is available in North Dakota).

[34]*See, e.g., Arthur v. Pierre Ltd.*, 100 P.3d 987, 996 (Mont. 2004) (the doctrine of equitable tolling is applicable where "a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria [including] . . . timely notice to the defendant within the applicable statute of limitations in filing the first claim") (internal quotation omitted); *Kaiser v. Umialik Ins.*, 108 P.3d 876, 881-82
*(cont'd)*

## ACTIONABLE CONDUCT

As in the case of varying state of mind requirements, the varying standards regarding conduct that is actionable under the different statutes has been extensively briefed for this court. Although some statutes broadly declare any unfair or deceptive practice unlawful,[35] contary to Plaintiffs' suggestion, not all states use the Federal Trade Commission's criteria to guide their interpretation of their own statutes.[36]  Some states require falsity or misrepresentation.[37]  Several states itemize specific types of conduct actionable.[38]  And as discussed above, states have varying transactional requirements. (*See supra* at 1, 12.)  Some states, such as Michigan, exempt conduct that is authorized by state or federal authority.  Mich. Comp. Laws Ann. § 445.904(1)(a). "Specifically authorized" has been interpreted to mean that the conduct is regulated.  As one court has explained:  "[T]he relevant inquiry is not whether the specific misconduct by the plaintiffs is 'specifically authorize.'  Rather it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Flanagan v. Altria Group, Inc.*, 2005 WL 27691010, at *2 (E.D. Mich. 2005) (citing *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999)).[39]

---

*(cont'd from previous page)*
(Alaska 2005) (similar); *Dakota Truck Underwriters v. S.D. Subsequent Injury Fund*, 689 N.W.2d 196, 202 (S.D. 2004) (similar); *Harrison v. Chance*, 797 P.2d 200, 208 (Mont. 1990) (similar).

[35]*See, e.g.*, Fla. Stat. Ann. § 501.204(1) (West 2002); Wash. Rev. Code Ann. § 19.86.020 (West 1999).

[36]*See Tucker v. Sierra Builders*, 180 S.W.3d 109, 117 n.11 (Tenn. App. 2005).

[37]*See, e.g.*, Del. Code. Ann. tit. 6, § 2513(a) (1999); *Griffin v. Universal Cas. Co.*, 654 N.E.2d 694, 700-01 (Ill. App. Ct. 1995); Minn. Stat. Ann. § 325F.67 (West 2004); N.J. Stat. Ann. § 56:8 2 (West 2001).

[38]*See*, Cal. Civ. Code § 1770(a) (listing 23 acts); Colo. Rev. Stat. Ann. § 6-1-1-6 (listing 48 acts); Ind. Code Cann. § 24-5-0.5-3 (listing 19 acts); N.H. Rev. Stat. Ann. § 358-A:2 (listing 15 acts); Or. Rev. Stat. § 646.608 (listing 56 acts); Tex. Bus. & Com. Code §§ 17.46(d) (listing 27 acts).

[39]*See also* Colo. Rev. Stat. § 6-1-106(1) (exempting "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency"); Conn. Gen. Stat. § 42-110c(a) (exempting "transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States"); 815 Ill. Comp. Stat. 505/10b(1) (exempting actions "authorized by laws administered by any regulatory body . . . of this State or the United States"); Ind. Code. Ann. § 24-5-0.5-6 (exempting "act or practice required or expressly permitted by federal law, rule or regulation or . . . by state law, regulation or local ordinance"); Mass. Gen. Laws. ch. 93A, § 3 (exempting "actions otherwise permitted under laws as administered by any regulatory board . . . of the commonwealth or of the United States"); Minn. Stat. § 325D.461 (exempting "conduct in compliance with the orders or rules of, or a statute administered by, a federal,
*(cont'd)*

States impose other limitations on actionable conduct. Some statutes, for example, have materiality requirements.[40] How materiality is defined, however, is far from uniform throughout different jurisdictions. In some cases, these different definitions are inconsistent with each other and cannot be reconciled. For example, Arkansas's jury instructions define materiality as a fact that was a "substantial factor in influencing" the plaintiff's decision. Ark. MJI, Civil AMI § 402 (2005). In contrast, Pennsylvania's jury instructions state that a fact "need *not* be . . . a substantial factor" in influencing the plaintiff's decision. Pa. SSJI, Civil § 13.14 (2003) (emphasis added). Quite clearly, there is no way to craft a single jury instruction that encompasses these two definitions.

Any "composite" jury instruction would further be impossible because different jurisdictions require the jury to evaluate materiality in different ways. For example, in Minnesota something is material if the plaintiff would *subjectively* find it to be important. 4 Minn. PJI, Civil 4th § 57.10 (2005). In contrast, the test in Massachusetts is whether "a

---

*(cont'd from previous page)*
state, or local governmental agency"); N.M. Stat. Ann. § 57-12-7 (exempting "actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States"); Okla. Stat. Ann. tit. 15, § 754(2) (exempting actions "regulated under laws administered by . . . any . . . regulatory body . . . under statutory authority of this state or the United States"); Or. Rev. Stat. § 646.612(1) (exempting "[c]onduct in compliance with the orders or rules of, or a statute administered by a federal, state or local governmental agency"); R.I. Gen. Laws § 6-13.1-4 (exempting "actions or transactions permitted under laws administered by the department of business regulation or other regulatory body . . . under statutory authority of this state or the United States"); S.C. Code Ann. § 39-5-40(a) (exempting actions "permitted under laws administered by any regulatory body . . . acting under statutory authority of this State or the United States"); S.D. Codified Laws § 37-24-10 (exempting "acts or practices permitted under laws of this state or the United States or under rules, regulations, or decisions interpreting such laws"); Tenn. Code Ann. § 47-18-111 (exempting "[a]cts . . . required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory bodies . . . of this state or of the United States"); Wyo. Stat. Ann. § 40-12-110(a) ("exempting [a]cts or practices required or permitted by state or federal law, rule or regulation").

[40] *See, e.g,* Ariz. Rev. Stat. §44-1522(A); Ark. Code Ann. § 4-88-108; *Caro v. Procter & Gamble Co.*, 22 Cal. Rptr. 2d 419, 432 (Cal. Ct. App. 1993); Colo. Rev. Stat. § 6-1-105(1)(u); 6 Del. C. § 2513(a); D.C. Code § 28-3904 (e); *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53-54 (7th Cir. 1995); Kan. Stat. Ann. § 50-626(b)(2)-(4); *Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 713 (Md. 1999); *Nordale, Inc. v. Samsco, Inc.*, 830 F. Supp. 1263, 1272 (D. Minn. 1993), *aff'd mem.*, 86 F.3d 1179 (Fed Cir. 1996); Mo. Ann. Stat. § 407.020(1); Nev. Rev. Stat. Ann. § 598.0923(2); *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611 (N.Y. 2000); *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. Ct. 2000); *Groff v. America Online, Inc.*, 1998 WL 307001, at *5 (R.I. Super. Ct. May 27, 1998); *Wingard v. Exxon Co., USA*, 819 F. Supp. 497, 506 (D.S.C. 1992); S.D. Codified Laws § 37-24-6(1); *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997); *Church & Dwight Co. v. Huey*, 961 S.W.2d 560, 567 (Tex. App. 1997); *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998); *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d 818, 824 (Wash. Ct. App. 2001); W. Va. Code Ann. § 46A-6-102(f)(13).

*reasonable person* would attach importance" to the fact.  Mass. PJI, Civil § 20.1 n.1 (2001) (emphasis added).  Once again, these differences are of significant consequence.  The Tenth Circuit, for example, held that a jury instruction defining materiality under an objective rather than subjective standard for claims under Texas law was prejudicial error.  *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1233 (10th Cir. 2000).

OTHER VARIATIONS

Even as to such a fundamental concept as burden of proof, states have developed varying jury instructions.  In Illinois, juries are instructed that "you must be persuaded, considering all the evidence in the case, that the proposition on which [a party] has the burden of proof in more probably true than not true."  Ill. Pattern Jury Instruction 21.00.  In adopting this instruction, the Illinois committed expressly rejected statements regarding the "preponderance" or "greater weight" of the evidence.  In contrast, Florida standard jury instructions recommend the following: "If the greater weight of the evidence does not support the claim of (claimant) on [this issue] [these issues], then your verdict on the claim of (claimant) . . . should be for (defendant).  Florida Standard Jury Instructions in Civil Cases 3.4.  And, while the notes to Florida's instruction specifically counsel against using the phrases "preponderance of the evidence" and "burden of proof," *see id.* note 2, New York juries are instructed that "[t]he burden of proof rests on the plaintiff.  That means that it must be established by a fair preponderance of the credible evidence that the claim plaintiff makes is true."  New York Pattern Jury Instructions-Civil 1:23.

Moreover, to the extent that Plaintiffs are allowed to pursue, at this late date, a cause of action for fraud, differences in state law will be even more overwhelming.  It is well recognized that "the common law of fraud is materially different in the fifty states" and that "[t]he elements of fraud vary greatly from state to state."  *Lewis Tree Serv., Inc. v. Lucent Tech., Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002).  For example, in addition to varying standards governing reliance, intent, materiality, causation, and punitive damages, as discussed above, states differ widely regarding a plaintiff's burden of proof to sustain a fraud claim.  Many states allow for recovery if

fraud is proven by a "preponderance of the evidence."[41]  Many other jurisdictions, however, require proof by the heightened standard of "clear and convincing evidence."[42]  Two states (South Carolina and Washington) apply a "clear, cogent and convincing" standard.[43]

To muddy the waters even further, at least three states (Connecticut, Maryland and Oregon) require that the *elements* of fraud be proven by clear and convincing evidence; whereas *damages* need be proven only by a preponderance of the evidence.[44]  But many, if not most, states have yet to specifically address what burden of proof applies to the damages element of a

---

[41] *Compagnie de Reassurance d'Ile de France v. New England Reins. Corp.*, 57 F.3d 56, 72 (1st Cir. 1995) (applying Massachusetts law); *Denuptiis v. Unocal Corp.*, 63 P.3d 272, 277 (Alaska 2003); *Tyson Foods, Inc. v. Davis*, 66 S.W.3d 568, 580 (Ark. 2002); *Liodas v. Sahadi*, 562 P.2d 316, 322 (Cal. 1977); *Caldwell v. Armstrong*, 642 P.2d 47, 50 (Colo. 1982); *In re IBP, Inc. Shareholders Litig.*, 789 A.2d 14, 54 (Del. Ch. 2001); *Wieczoreck v. H & H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985); *Terre Haute Reg'l Hosp., Inc. v. Basden*, 524 N.E.2d 1306, 1311 (Ind. Ct. App. 1988); *Artilla Cove Resort, Inc. v. Hartley*, 72 S.W.3d 291, 295-96 (Mo. Ct. App. 2002); *Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 791 (Minn. 1993); *Bulbman v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992); *Poe v. Lennon*, 89 S.E. 1003, 1005 (N.C. 1916); *Ostalkiewicz v. Guardian Alarm, Div. of Colbert's Sec. Servs., Inc.*, 520 A.2d 563, 569 (R.I. 1987); *Speck v. Anderson*, 349 N.W.2d 49, 50 (S.D. 1984); *Capital Mgmt. Partners v. Eggleston, III*, 2005 WL 1606066, at *7-9 (Tenn. Ct. App. July 7, 2005); *Browder v. H.V. Eicher, Jr.*, 841 S.W.2d 500, 502-03 (Tex. Ct. App. 1992).

[42] *See Rhoads v. Harvey Publ'ns, Inc.*, 700 P.2d 840, 844 (Ariz. Ct. App. 1985); *Black v. Goodwin, Loomis & Britton, Inc.*, 681 A.2d 293, 303 (Conn. 1996); *Virginia Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005); *Shoppe v. Gucci Am., Inc.*, 14 P.3d 1049, 1067 (Haw. 2000); *Lindberg v. Roseth*, 46 P.3d 518, 521-22 (Idaho 2002); *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004); *Gorman v. Soble*, 328 N.W.2d 119, 124 (Mich. Ct. App. 1982); *Snow v. Am. Morgan Horse Assoc.*, 686 A.2d 1168, 1170 (N.H. 2002); *Barsotti v. Merced*, 788 A.2d 802, 811 (N.J. Super. Ct. App. Div. 2002); *Golden Cone Concepts v. Villa Linda Mall, Ltd.*, 820 P.2d 1323, 1328 (N.M. 1991); *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 607 (N.Y. 1999); *Heart River Partners v. Goetzfried*, 703 N.W.2d 330, 339 (N.D. 2005); *Rogers v. Meiser*, 68 P.3d 967, 977 (Okla. 2003); *Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1179 (Pa. 2001); *Hardwick-Morrison Co. v. Albertson*, 605 A.2d 529, 531 (Vt. 1992); *Bowling v. Ansted Chrysler-Plymouth-Dodge*, 425 S.E.2d 144, 148 (W. Va. 1992); *Lundin v. Shimanski*, 368 N.W.2d 676, 680-81 (Wis. 1985); *Bitker v. First Nat'l Bank in Evanston*, 98 P.3d 853, 856 (Wyo. 2004).

[43] *See Cowburn v. Leventis*, 2005 WL 1219057, at *6 (S.C. Ct. App. May 16, 2005) ("'Each and every element [of fraud] must be proven by clear, cogent, and convincing evidence.'") (citation omitted); *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (en banc) ("Each element of fraud must be established by 'clear, cogent and convincing evidence.'") (citation omitted).

[44] *See Kilduff v. Adams, Inc.*, 593 A.2d 478, 487 (Conn. 1991) ("[T]he trial court properly instructed the jury that the plaintiffs were required to prove their damages by a preponderance of the evidence and to prove all the other elements of fraud by clear and satisfactory evidence."); *Hoffman v. Stamper*, 867 A.2d 276, 285 (Md. 2005) (applying clear and convincing standard to the elements of fraud but preponderance standard to the measure of damages); *Dizick v. Umpqua Cmty. Coll.*, 599 P.2d 444, 448 (Or. 1979) ("This Court has repeatedly stated that fraud must be proven by clear and convincing evidence . . . .  Once that presumption has been overcome, however . . . there is no reason why the burden of proof of damages in fraud should be different from proof of damages caused by any other tort.").

fraud claim, making any adjudication of this issue by a foreign court little more than guesswork.[45] The burden of proof applicable to a fraud claim is plainly not an academic issue. As the Third Circuit cautioned, charging the jury with the wrong burden of proof in a fraud action is fundamental error. *See Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 27 (3d Cir. 1981) ("[A] new trial is necessary because of fundamental error committed in the charge on the burden of proving fraud.").

---

[45]*See Kilduff*, 593 A.2d at 487 ("[W]e are aware of only one court that has addressed specifically whether it is appropriate to apply a higher burden of proof on *damages* to a plaintiff in a fraud action than that usually applicable in civil actions.") (emphasis added) (citing *Dizick*, 599 P.2d 444).