# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Civil Action: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>SETTLEMENT WITH DEFENDANT GLAXOSMITHKLINE ("GSK") | Judge Patti B. Saris<br>Magistrate Judge Marianne B. Bowler |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR IMPOSITION OF APPEAL BOND UNDER FEDERAL RULE OF APPELLATE PROCEDURE 7**

In their opening Memorandum Plaintiffs established that Objector Demra Jordan ("Objector") should be required, under Federal Rule of Appellate Procedure 7, to post an appeal bond in the amount of $131,700. Plaintiffs showed that Objector's objection to Plaintiffs' settlement with GSK was likely frivolous and would serve no purpose but to delay the distribution of substantial benefits to the remainder of the Class.

Nothing in Objector's Opposition to Plaintiffs' motion changes these fundamental facts. Indeed, her Opposition, including the flimsy legal arguments within it, make even clearer the frivolous nature of her objection. Importantly, buried at the end of her 18-page brief is an admission that Objector is filing her objection because *she failed to opt out of the settlement on a timely basis.* Not only is this assertion completely *the opposite* of what she claimed in her objection (*see id.* ¶ 2 ("Since Demra Jordan *has not elected* to opt out of this proposed settlement, Demra Jordan has standing to bring this objection.") (emphasis added)), but Objector's or Objector's counsel's negligence in failing to timely opt out are not grounds to subject the entire Class to Objector's apparently ideological objection to the settlement. Nor does Objector's Opposition do anything to flesh out her one-sentence objection other than to state that she is somehow "entitled" to object.

Further, in arguing that this Court cannot use a bond to suppress her "right" to object, Objector relies entirely on cases outside of the First Circuit that have expressly rejected the reasoning of the leading First Circuit case on this issue. *See Sckolnick v. Harlow,* 820 F.2d 13, 15 (1st Cir. 1987). Likewise, in claiming that this Court cannot award attorneys' fees as part of costs under Rule 7 of the Federal Rules of Appellate Procedure, Objector again not only relies on cases decided outside the First Circuit, but also fails to disclose to this Court the well-recognized Circuit-split on this specific issue. Objector likewise wholly ignores controlling First Circuit authority on this Court's ability to impose a bond that includes costs for the delay sanctioned by Objector's frivolous appeal.

This Court should reject Objector's portrayal of herself as a class member somehow unjustly abused by class counsel. Her objection, apparently only filed to cure her own failures, will significantly delay meaningful relief to thousands of old and sick people and, if granted, will give no one any additional or better relief. She should not be permitted to pursue her callous appeal without consequence.

## I.    A Rule 7 Bond Does Not Deny Objector Her "Right" To Appeal

Contrary to Objector's claim, a bond issued under Rule 7 does not limit Objector's "right" to appeal. Objector's cases cited in support of the broad proposition that a district court cannot in any way limit a right to appeal are not on point. In *Lindsey v. Normet*, 405 U.S. 56 (1972), the Supreme Court held that a *double* bond violated the Equal Protection Clause because it required more of claimants under Oregon's forcible entry and detainer statute than it did of normal litigants appealing other types of orders in civil cases. Importantly, the Court distinguished the problems with that double bond from the type of bond required here, covering "all damages, costs and disbursements which may be awarded against him on appeal." 405 U.S. at 74. Similarly, in *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir.), *cert. denied*,

419 U.S. 1070 (1974), cited by Objector for the broad proposition that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated" (Opposition at 3), the district court entered an order allowing defendants to reinstate their dismissed counterclaim in the event plaintiffs appealed the court's entry of a directed verdict. That extreme discouragement of the right to appeal has nothing to do with the facts here.[1]

In addition, the First Circuit has explicitly rejected the line of cases relied on by Objector, beginning with *In re American President Lines, Inc.*, 779 F.2d 714 (D.C. Cir. 1985),[2] that state that a district court must rely on a court of appeals' ability to dismiss an appeal in order to deter frivolous objections. In *Sckolnick*, the First Circuit specifically noted that "the district court's decision to set the [bond] amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility." 820 F.2d at 15.

## II.   A Rule 7 Bond Can Include Attorneys' Fees

In arguing that this Court cannot require the posting of a bond that includes attorneys' fees, Objector again ignores First Circuit authority. Indeed, as acknowledged by the decision in *Azizian v. Federated Dep't Stores, Inc.*, No. 05-15847, 2007 U.S. App. LEXIS 20070 (9th Cir. Aug. 23, 2007), heavily relied on by Objector, but not disclosed by Objector to the Court, there is a Circuit-split on this issue pursuant to which the First Circuit takes precisely the opposite position that Objector has advocated. *See id.*, 2007 U.S. App. LEXIS 20070, at *6 ("The district court noted that a split in circuit authority exists regarding whether attorney's fees are 'costs on appeal' securable under Rule 7.") *Azizian* discussed but specifically rejected the First Circuit's

---

[1] This is precisely the point about *Clark* made by the Second Circuit in *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("Unlike the district court in Clark, the imposition of trial costs were not conditioned upon whether or not appeal was taken." [and was therefore upheld]).

[2] In *Azizian v. Federated Dep't Stores, Inc.*, No. 05-15847, 2007 U.S. App. LEXIS 20070 (9th Cir. Aug. 23, 2007), on which Objector relies, the Court noted that the First Circuit's *Sckolnick* decision did not discuss *In re American President Lines* at all. *See id.* at *12.

3

decision in *Sckolnick*, and instead followed the District of Columbia Circuit's decision in *In re American President Lines, Inc.,* 779 F.2d 714 (D.C. Cir. 1985). In fact, **<u>all</u>** of the cases cited by Objector are by Circuits that adopt the position advocated by Plaintiffs. *See Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793 (3d Cir. June 10, 1997) (following *McDonald* and *American President Lines*); *McDonald v. McCarthy*, 996 F.2d 112 (3d Cir. 1992); *Gerstein v. Micron Tech., Inc.*, Civil No. 89-1262, 1993 U.S. Dist. LEXIS 21213 (D. Idaho Dec. 6, 1993) (relying on decision of District of Columbia Circuit in *American President Lines*); *Donaldson v. Imperial Cas. & Indem. Co.*, File No. G88-52 CA, 1989 U.S. Dist. LEXIS 17920 (W.D. Mich. Sept. 20, 1989) (following *American President Lines*) (all cited at Opposition at 4).

Objector concludes that because *Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) was decided on an abuse of discretion standard, that decision "has limited precedential value." Opposition, at 5. Unfortunately for Objector, this is not the way that courts analyzing that decision, including courts within the First Circuit, have viewed the value of that decision. *See Azizian*, 2007 U.S. App. LEXIS 20070, at *9 ("[T]he First Circuit has held that a district court may require a Rule 7 bond covering appellate attorney's fees if it concludes that the court of appeal might award attorney's fees as costs under Rule 38 because the appeal is frivolous.") (citing *Sckolnick*); *Barnes v. FleetBoston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71071 (D. Mass. Aug. 22, 2006) ("First Circuit case law indicates that 'costs,' as contemplated in Rule 7, include the costs attendant to the delay associated with an appeal, ***and attorneys' fees***, as well as double costs under Fed. R. App. P. 38.") (citing *Sckolnick*) (emphasis added) (Gertner, J.); *Capizzi v. States Res. Corp.*, 02-12319-DPW, 2005 U.S. Dist. LEXIS 7338

(D. Mass. Apr. 26, 2005), at *4 ("In particular, attorney's fees, where provided for, may also be included in fashioning a bond.") (Woodlock, J.)[3]

Finally, Objector falsely states that Plaintiffs have only sought $700 in costs and that the remainder of the $131,700 bond requested is for attorneys' fees. As a cursory review of Plaintiffs' Memorandum and the Glenn Declaration, reveal, this is false. Paragraph 13 of the Glenn Declaration makes clear that figure includes extremely conservative estimates of $61,000 in administrative costs attributable to delay in distribution; $70,000 in attorneys' fees; and $700 in costs.

### III.    A Rule 7 Bond Can Include Costs for Delay

A Rule 7 bond can likewise include costs for delay. Objector claims this is not the case because one case relied on by Plaintiffs for the proposition that a bond can include costs for delay, *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* MDL No. 1361, 2003 WL 22417252, *2 (D. Me. Oct. 7, 2003), relied on a case that relied on two other cases that "overlooked the subtle but important difference between cost bonds and supersedeas bonds." Opposition, at 7. Objector's argument is a fantasy. The *Compact Disc* Court expressly noted the difference between costs and supersedeas bonds in the third paragraph of its opinion (*id.* at *1); therefore, it seems highly unlikely that it was "confused" as Objector imagines. Most importantly, although the *Compact Disc* court relied on *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 138 (S.D.N.Y. 1999), the court Objector claims relied on two other confused courts, the *Compact Disc* Court also relied on the First Circuit's controlling decision in

---

[3]   Objector also claims that Plaintiffs have provided no "proof" of their attorneys' fees. Opposition, at 6. While Objector has not – and cannot claim – that the $70,000 in fees is excessive or unreasonable, Plaintiffs will submit a declaration in support of this request should the Court require it.

5

*Sckolnick* decision. Thus, Objector's attenuated argument has no basis in the text of the *Compact Disc* decision.

Objector likewise claims that the *Compact Disc* Court's reduction of plaintiffs' requested bond amount in that case indicates that Plaintiffs' request for a bond in the amount of $131,700 in this case is excessive. But Plaintiffs' here seek imposition of a bond nearly one-third the amount of the bond sought in *Compact Disc*: the plaintiffs in that case sought imposition of a $350,300 bond, including $110,000 in attorneys' fees. Therefore, the *Compact Disc* reduction is not persuasive in evaluating the amount of the bond sought here. Indeed, as made clear in Plaintiffs' Memorandum, the amounts sought here are extremely conservative.

## IV.     Objector Lacks Standing To Pursue Her Appeal

Objector claims that Plaintiffs' "novel theory" that she lacks standing to pursue her appeal should be rejected. However, buried toward the end of her Opposition, Objector in essence admits Plaintiffs' argument. In explaining why she is objecting to the GSK settlement, she says:

> In addition and alternatively, Jordan has incurred an injury-in-fact caused by the certification of this settlement class and approval of this settlement. ***By the time Jordan filed her objection, the deadlines to opt out (May 27, 2007) or to file a claim (May 28, 2007) had passed. The deadline to object had not passed.*** Jordan is now bound by a settlement that pays her nothing, while releasing any claims she has against GlaxoSmithKline. If Jordan prevails on appeal, she and all others similarly situated retain their legal rights. That certainly satisfies any Article III standing requirement.

6

*Id.* at 13.  (emphasis added)  However, this claim does not establish injury-in-fact under Article III:  rather, it merely establishes that, either to cure her own negligence or the negligence of her counsel, Objector is pursuing this objection *because she failed to opt out.*[4]

In essence, Objector poses the wrong question.  She asks:  "if Jordan – class member and objector – cannot challenge the final order approving the GSK Settlement, who can?"  Opposition at 13-14.  However, it is not Objector's status that determines whether she has standing; it is whether she has suffered injury-in-fact.  As her above admission makes clear, Objector has not.

In arguing to the contrary, Objector bases her argument almost entirely on the Supreme Court's decision in *Devlin v. Scardelletti*, 536 U.S. 1 (2005), but fails to address language in that decision that is contrary to Objector's position.  Objector relies wholly on the Court's language stating that the *Devlin* objector had standing.  However, that language did not state, as Objector implies, that every objector to a class action settlement will have standing to challenge that settlement.  Indeed, the *Devlin* Court specifically noted that "[p]articularly in light of the fact that petitioner had no ability to opt out of the settlement, see Fed. Rule Civ. Proc. 23(b)(1), appealing the approval of the settlement is petitioner's only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court may find legally inadequate."  *Id.* at 10-11.  Here, in contrast, Objector not only had the ability to opt out, but

---

[4] Prior to filing this Reply Brief, Plaintiffs' counsel contacted Objector's counsel to inform him that Plaintiffs would not object to Objector filing an untimely opt out.  Objector declined Plaintiffs' offer.  Objector could also have sought leave to file an untimely opt out, but elected not to do so.

failed to do so and now sees her only remedy as appealing the Court's denial of her objection to the settlement. No language in the *Devlin* decision creates standing for Objector here.[5,6]

## V. Plaintiffs Have Established – And This Court Has Agreed – That the Objection Is Baseless

Objector characterizes Plaintiffs' bond motion as name-calling and alleges that it provides no basis for concluding that Objector's objection may be frivolous. On the contrary, Plaintiffs' Memorandum explains that Objector's objection may be frivolous because she lacks standing to pursue it and because it is so vague as to have failed to preserve Objector's complaints for appeal. Plaintiffs' Memorandum also made clear that even this Court, which has been presiding over this case for six years, could not make sense of the objection. Other than claiming that her one-sentence objection is "very specific," Objector does nothing to further illuminate the alleged basis for her objection.

Notably, Objector has made no meaningful effort to respond to Plaintiffs' arguments that her objection is so vague that it has not been properly preserved for appeal. Objector suggests that the standard is whether Plaintiffs have been put "on notice" of the nature of her objection. The First Circuit, however, requires far more than a notice pleading standard to preserve an issue for appeal. *See Casilla-Diaz v. Officer Romualdo Palace*, 463 F.3d 77, 83 (1st Cir. 2006) (emphasis added) (internal citations omitted) ("Few principles are more a part of the warp and woof of appellate practice than the principle that "issues adverted to in a perfunctory manner,

---

[5] Further, Objector merely dismisses, as she did the First Circuit's controlling decision in *Sckolnick* when discussing the type of costs that may be included in a bond, Plaintiffs' discussion of *Devlin*, describing that discussion as a list of cherry-picked words "aimed at Justice Scalia's dissent." Opposition, at 11. The text from *Devlin* quoted in Plaintiffs' Memorandum was actually addressing a suggestion raised in an amicus brief filed by the United States.

[6] Objector also relies on the Supreme Court's decision in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), which stands for the unremarkable proposition that predominance must be satisfied in certifying a settlement class.

8

unaccompanied by some effort at developed argumentation, are deemed waived." . . . "[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994) ("In his 50-page brief, [appellant] did not raise or address the issue of the other sixteen notes at any point except for the one-sentence statement, unsupported by any argument or case law, in his conclusion. . . . This is simply insufficient presentation and argumentation of the issue for any meaningful analysis, and we therefore deem it waived.") (internal citations omitted); *Willhauk v. Halpin*, 953 F.2d 689, 700 (1st Cir. 1991) (" Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.  Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold his or her peace."). Objector's one-sentence is so skeletal as to be frivolous.

## VI.   Conclusion

While Objector's Opposition seems to suggest that Plaintiffs' request for a bond is about mudslinging and acrimony, a bond is appropriate here because of the baseless nature of her objection as well as the very real costs of delay her gamesmanship will cause.  Numerous class members have already contacted Class Counsel asking when they will receive desperately-needed payments under the terms of the settlement.  Since Objector is bent on pursuing an appeal merely to cure her own failure to timely opt out, that action should have a price.  Therefore, Plaintiffs respectfully request that this Court enter an order under Federal Rule of Appellate Procedure 7 requiring Objector to post a bond in the amount of $131,700.

DATED:  September 27, 2007    By: /s/ Jennifer Fountain Connolly
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

*Liaison Counsel*

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

                                        Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

***Co-Lead Counsel For Plaintiffs***

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**
Docket No. MDL 1456

    I, Jennifer Fountain Connolly, hereby certify that I am one of plaintiffs' attorneys and that, on September 27, 2007, I caused copies of ***Reply Brief in Support of Plaintiffs' Motion for Imposition of Appeal Bond Under Federal Rule of Appellate Procedure 7*** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

    /s/ Jennifer Fountain Connolly
    Jennifer Fountain Connolly
    Wexler Toriseva Wallace LLP
    55 W. Monroe Street, Suite 3300
    Chicago, IL  60603
    (312) 346-2222 – Telephone
    (312) 346-0022 – Facsimile
    jfc@wtwlaw.com