UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' RESPONSE TO THIRD-PARTY TAP
PHARMACEUTICAL PRODUCT, INC.'S MOTION TO CLARIFY
PARAGRAPH SIX OF THE COURT'S SEPTEMBER 7, 2007 ORDER**

The United States of America, through its undersigned counsel, respectfully files this

Response to Third-Party TAP Pharmaceutical Product, Inc.'s ("TAP's") Motion to Clarify

Paragraph Six of the Court's September 7, 2007 Order (Dkt. No. 4719, hereinafter referred to as

"TAP's Motion to Clarify") and states:

The United States has sued Abbott for creating large reimbursement spreads on five of its

products. Some of the spreads exceed 1,700%, with the smallest spread exceeding 200%.

Abbott created "mega-spreads"[1] on approximately half of the National Drug Codes named in the

United States' Amended Complaint and almost all of the spreads exceed 500%.

**I.  Procedural History**

The United States issued ten subpoenas to Abbott customers (the "Customer Subpoenas")

on March 30, 2007, and promptly served notice of the same upon Abbott. The United States

---

[1]      *See generally*, Judge Saris's Findings of Fact and Conclusions of Law in Trial of
Class 2 and Class 3 Claims, Dkt. No. 4366.

issued three subpoenas to industry trade groups on April 27, 2007, and one subpoena to an industry trade group on May 11, 2007 (collectively, the "Trade Group Subpoenas"), and promptly served notice of those subpoenas upon Abbott.  TAP is never mentioned in any of the Customer or Trade Group Subpoenas.

On June 6, 2007, more than two months after the issuance of the first round of subpoenas, TAP filed its Motion to Quash all of the subpoenas.  Dkt. 4292.  On June 20, 2007, the United States filed a Response to TAP's Motion to Quash.  Dkt. No. 4362.  A hearing on TAP's Motion to Quash, and nearly identical motions filed by Hospira, Inc. and Abbott, was held before Magistrate Judge Bowler on July 2, 2007.  On July 19, 2007, Magistrate Bowler issued an Order regarding the TAP, Hospira and Abbott Motions to Quash.  Dkt. No. 4483.

On August 15, 2007, the United States filed Objections to Magistrate Bowler's July 19, 2007, Order (Dkt. Nos. 4622/4627), to which Abbott responded on September 5, 2007 (Dkt. No. 4683).  On September 7, 2007, this Court ruled on the United States' Objections.  The Court's Order clarified the categories of documents to be produced by the third party Customers and Trade Groups subpoenaed by the United States, and ordered third party TAP to produce the documents set forth in paragraph 6 of the Court's Order.  Dkt. No. 4701 (Paragraph 6 ordered TAP to produce "[A]ll documents expressly referencing Abbott or directly involving Abbott personnel relating to AWP/government reimbursement issues or marketing a spread involving AWP during the 1991 to 2003 time period.").  Subsequently, on September 17, 2007, the United States sent a subpoena to counsel for TAP for the documents this Court ordered TAP to produce.  Later that day, TAP filed its Motion to Clarify.  On September 21, 2007, counsel for TAP notified the United States that, while not waiving its objections to the subpoena, TAP agreed to waive formal service of the subpoena and to permit TAP's counsel to accept service of the

2

subpoena on its behalf via electronic and First Class Mail.  The subpoena was then formally served on TAP that day.

## II.  Preliminary Statement

In TAP's Motion to Clarify, it argues that paragraph 6 of the Court's Order should be amended because "(1) TAP is not a party to this case; (2) no third party discovery has been served on TAP; and (3) as a joint venture, a separate corporate entity, TAP is not subject to discovery requests served on Abbott."  TAP Motion to Clarify, p. 2, ¶ 6.

TAP has been served a third party subpoena in this matter.  In an abundance of caution, before TAP had even filed its Motion to Clarify, the United States had delivered a subpoena to TAP's counsel which demanded the production of the documents at issue.  *See* Exhibit A.  The subpoena has a single specification drawn verbatim from the Court's Order:  "[A]ll documents expressly referencing Abbott or directly involving Abbott personnel relating to AWP/government reimbursement issues or marketing a spread involving AWP during the 1991 to 2003 time period."  Accordingly, TAP's motion is moot.  Since TAP's argument is reducible to the technicality that no formal discovery device had previously been served directly upon it (TAP Motion to Clarify, p. 2, ¶ 6), TAP's motion is fatally undermined and should be denied.

## IV.  Argument

Regardless of the fact (while an important one) that the United States never mentioned TAP in its subpoenas to third parties,[2] TAP documents are relevant and should be produced in

---

[2]       TAP's Motion to Clarify advocates relief based on serious misrepresentations and omissions that distort the record and malign the government.  Most egregiously, TAP has portrayed the service of the government's subpoenas to Trade Groups and Abbott Customers as a purposeful "end run" by the government designed to "sidestep" an order of Magistrate Bowler.  TAP's Motion to Clarify, p. 2, ¶ 5.  First, *the hearing to which TAP refers did not occur until May 16, 2007.  (See* Transcript of May 16, 2007 Hearing before Magistrate Bowler attached *by*

this case by TAP.  TAP essentially contends that its technical status as a separate legal entity

from Abbott somehow ends the inquiry regarding whether TAP materials are relevant to the

claims against Abbott.  However, as previously set forth (*see* the United States' Response to

TAP's Motion to Quash, Dkt. No. 4362, pp. 11-13, and the United States' Objections to

Magistrate Bowler's July 19, 2007 Order, Dkt. Nos. 4622/4627, pp. 16-18), the parallel nature of

the fraud and the deep connections between Abbott and TAP reveal the relevance of the

discovery.  Accordingly, the Court should not disturb paragraph 6 of its September 7, 2007,

Order requiring TAP to produce responsive documents to the United States.

## 1.     TAP Documents Are Relevant and Discoverable

TAP, Abbott's joint venture with Takeda Pharmaceutical Company, Ltd., paid a hefty

civil settlement in connection with spread-marketing conduct.  Moreover, TAP was indicted and

entered into a criminal plea agreement and paid in excess of $290 million for, among other

conduct, the marketing, sale, and pricing of a TAP injectable product - Lupron.  Incident to that

criminal plea, TAP agreed to a limited waiver of attorney-client privilege over its documents and

---

*TAP* as the only exhibit to its Motion to Clarify.  In contrast, all of the Customer and Trade
Group Subpoenas were issued by the government between March 30, 2007, and May 11, 2007,
*before* Magistrate Bowler ever issued the ruling upon which TAP relies.  It is, of course, not
possible to sidestep an event that has yet to occur.  Second, TAP has also failed to note that the
ruling by Magistrate Bowler relating to TAP at the May 16, 2007, Hearing was *without
prejudice*, and that she expressly ruled that such discovery could be renewed upon  a "further
showing down the road".  *See* 05/16/07 Hearing Transcript, p. 62.  In the United States'
Response to TAP's Motion to Quash, and in the United States' Objections to Magistrate
Bowler's July 19, 2007, Order, the United States made such a showing.  Third, TAP also
wrongly asserts that the government subpoenas directly requested TAP pricing and marketing
information when TAP is never even mentioned in any of the subpoenas at issue here.  In fact,
the government's Response to TAP's Motion to Quash (Dkt. No. 4362) already addressed this
issue, where it noted that *there is no mention whatsoever of TAP in any of the subpoenas.*  If the
subpoenas never even mentioned TAP, it is difficult to fathom how they could be trying to
sidestep any discovery rulings regarding TAP.

agreed to cooperate with the government in the government's investigation of others concerning the conduct at issue in the TAP case, such as price manipulation.[3]

TAP ultimately settled the civil claims for over $585 million in September of 2001.  TAP also entered into a Corporate Integrity Agreement with the United States Department of Health and Human Services, Office of Inspector General.  In September 2001, Abbott similarly signed a letter agreement with the United States regarding the TAP criminal claims, agreeing to cooperate with the government's investigations.  As noted in prior pleadings on this issue, the government is not in a position to rule out at this time that some of the conduct at issue in this case and the conduct at issue in the TAP case are unrelated, or that the respective conduct is not part of an overall scheme.  It is still an open question in this case what Abbott was doing, *if anything,* with regard to remedying its on-going illegal conduct set forth in the Amended Complaint in this matter at the same time it was entering into a letter agreement with the government in the TAP case, and settling TAP civil claims relating to the same type of conduct.

As third party discovery to date has adduced, Abbott's Home Infusion Unit appears to have distributed the TAP drug Lupron during the operative period of the TAP criminal scheme. As former Abbott employee Bruce Rodman testified, Abbott's Home Infusion pharmacies

---

[3]  TAP's criminal plea agreement included the following: "TAP agrees to cooperate completely and truthfully with the U.S. Attorney in connection with his on-going investigation and prosecution of others for alleged violations of federal criminal law arising out of his investigation.  TAP understands and agrees that such cooperation shall include the following, if requested by the U.S. Attorney:  . . .

    (a)    prompt production to the U.S. Attorney of any document or record in the possession, custody or control of TAP relating to the subject matter of the investigation. . . ."

As evidenced by the dispute before the Court today, the conflict between TAP's plea agreement obligation to make its documents available to the United States and Abbott's desire to avoid the production of any such documents is quickly crystalizing as a very troublesome matter.

distributed Lupron and serviced some of Abbott's home infusion patients with Lupron.  *See* excerpts of Aug. 29, 2007, Dep. of Bruce Rodman, pp. 130-132), attached as Exhibit B.

Lupron is an injectable product used in conjunction with some of the Abbott drug products that were heavily distributed by the Home Infusion Unit, and that are at issue in this lawsuit.  Moreover, as set forth in the Amended Complaint, in connection with the Abbott Home Infusion pharmacies and consignment contracts, Abbott itself *directly* submitted false claims to Medicare or Medicaid through the Home Infusion Unit, *directly* collected for drug products from these programs, and received and/or shared in the AWP spreads.  The exact conduct that TAP was engaged in with respect to Lupron that gave rise to its criminal plea, civil settlement and Corporate Integrity Agreement, was the same conduct that Abbott appears to have been engaged in when it sold Lupron, as well as the drugs at issue in this case.

### 2. The Parallel Nature of the Wrongful Conduct and the Intertwined Operations of TAP and Abbott justifies discovery of TAP

Abbott's discussions about the spread within the Company and its discussions about Medicare reimbursement policy with members of Congress were not limited to one corporate division.  Indeed, much of the same conduct was at issue in the governments' investigation into TAP.   Further, some of the same individuals who were involved in or referenced in the TAP matter, including those responsible for government compliance, may also be involved in this case.

The extent of TAP's connection to Abbott is well illustrated.  *See e.g.*, United States' Response to TAP's Motion to Quash, pp. 11-13.  Abbott owns 50% of TAP.  *See* excerpts of July 30, 2007 Dep. of James E. Miller, p. 232, attached as Exhibit C.  Additionally, TAP was and continues to be represented by the same counsel as the counsel that now represents Abbott, not

just in connection with the Lupron civil settlement, but also in this MDL.  Abbott witnesses have testified that TAP personnel were involved in Abbott working groups regarding government reimbursement issues.  *Id.*  Further, Abbott employees have testified that Abbott engaged in lobbying efforts on TAP's behalf regarding government drug reimbursement issues for Lupron.  *See* excerpts of July 12, 2007 Dep. of Cynthia Sensibaugh, pp. 54-75, and May 15, 2007 Dep. of Virginia Tobiason, pp. 267-273, 311-313, 340-343, attached as Exhibits D and E.

Abbott documentation has also shown that sales of TAP products were processed by Abbott on the same computers used to process Abbott sales on issues ranging from sales and use taxes, to billing and inventory codes for common warehouses, to calculation of chargebacks, to the assignment of an Abbott division code for TAP transactions.  *See* documents attached as Exhibit F (ABT 072-4068 - 072-4069, ABT 072-4076, ABT 072-4115 - 072-4116, and ABT 061-1668 - 061-1669).  TAP also relied upon Abbott's computer systems for the processing of salaries, fringe benefits, and retirement plans with employees seamlessly moving from Abbott to TAP and back again.  *See* excerpts of Aug. 9, 2007 Dep. of Richard Rieger, pp. 289- 292 and 298-299, attached as Exhibit G.  Similarly, Abbott employee Virginia Tobiason, who routinely worked with outside third parties, including trade groups, prepared a memo discussing proposed changes to Medicare's reimbursement policy with suggestions relating to Abbott's Hospital Products Division ("HPD"), as well as *TAP*, and Abbott's Renal Division.  *See* Exhibit 757 to Dep. of Virginia Tobiason, attached hereto as Exhibit H.  That memo was directed to senior officials at Abbott.  Documents such as Exhibits C, D, F and G clearly show why and how documents that pertain to TAP are highly relevant to the government's case.

In sum, the parallel nature of the wrongful conduct and the intertwined operations of TAP and Abbott justifies discovery into the relationship between TAP and Abbott on

government drug reimbursement issues, as already ordered by the Court.  The discovery ordered by the Court is narrowly tailored and will assist the United States in identifying information that TAP may have regarding its co-owner's AWP conduct, and remedial initiatives, if any, Abbott may have taken during or after the TAP criminal case.

### 3.  TAP's Unsupported Claims of Burden Should Be Ignored

TAP's final argument is that it could not "imagine that the Court meant to enter an order that would require TAP itself to review millions of pages of its own documents."  This type of conclusory, unsupported claim of burden fails to establish a basis upon which to limit discovery.  A movant seeking to avoid discovery on the basis of burden must demonstrate an *undue* burden; this requires the movant to provide affirmative proof of such burden through affidavits or record evidence.  *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351 (N.D. Ill. 2005); *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001); *Cliffstar Corp. v. Sunsweet Growers, Inc.*, 2003 WL 22350642 (W.D.N.Y. 2003) (a burdensomeness objection must be supported by an affidavit explaining in reasonable detail the factual basis for such an objection); *Tequila Centinela, S.A. de C. I4 v. Bacardi & Co. Ltd.*, 242 F.R.D. 1 (D.D.C. 2007) (objecting party must submit affidavits or evidence which reveals the nature of the burden).  The objecting party also must show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.  *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, 2007 WL 950282, * 22 (D. Kan. 2007).  In this case, where the evidence is relevant and the claims of undue burden are essentially non-existent, the discovery should proceed as previously ordered.

### IV. Conclusion

In sum, TAP has incredibly close ties to Abbott, engaged in the same fraudulent conduct, and has engaged the same counsel.  Likewise, the operations of the two companies overlap in

many important ways including lobbying, personnel, and computer systems.  Accordingly, the Court should not disturb its Order compelling TAP to produce documents that expressly reference Abbott or directly involve Abbott personnel relating to AWP/government reimbursement issues or marketing a spread involving AWP during the 1991 to 2003 time period.

Wherefore, the United States respectfully requests that Third-Party TAP Pharmaceutical Product, Inc.'s Motion to Clarify Paragraph Six of the Court's September 7, 2007 Order (Dkt. No. 4719) be denied.  In the alternative, the United States requests that the Court issue an Order that TAP complete the production of the documents within 30 days, and that the Court grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

For the United States of America,


MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley
U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA  02210
Phone: (617) 748-3272
Fax: (617) 748-3971

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF
FLORIDA

 /s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Attorneys for the Attorney
General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101



Dated: October 1, 2007

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL


 /s/ Rebecca A. Ford
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Gejaa T. Gobena
Rebecca A. Ford
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088
Fax: (202) 307-3852

For the relator, Ven-A-Care of the
Florida Keys, Inc.,


James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Phone:  (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com

10

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' RESPONSE TO THIRD-PARTY TAP PHARMACEUTICAL PRODUCT, INC.'S MOTION TO CLARIFY PARAGRAPH SIX OF THE COURT'S SEPTEMBER 7, 2007 ORDER** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.


                                                            /s/ Rebecca A. Ford
Dated:  October 1, 2007                        Rebecca A. Ford

11