# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
CITIZENS FOR CONSUME, et al. CIVIL ACTION NO. 01-12257-PBS
   Plaintiffs              .
                           .
  V.                       . BOSTON, MASSACHUSETTS
                           . JULY 20, 2007
ABBOTT LABORATORIES, et al .
   Defendants              .
. . . . . . . . . . . . . .
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the United States:  John Neil, Esquire
                        Justin Draycott, Esquire
                        United States
                        Department of Justice
                        601 D Street, NW
                        Patrick Henry Building, Room 9028
                        Washington, DC  20004
                        202-307-1088

                        Gejaa T. Gobena, Esquire
                        United States Department of
                        Justice
                        601 D Street NW
                        Patrick Henry Building, Room 9028
                        Washington, DC 20004
                        202-307-1088

For Abbott Labs.:       James R. Daly, Esquire
                        Jones, Day, Reavis & Pogue
                        77 West Wacker Drive
                        Chicago, IL 60601-1692
                        312-782-3939

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

36

1  taking against Abbott to get those statements.  But that's
2  going to be the core statement.  With respect to the claim then
3  that, the claim which is rendered false by that statement of an
4  inflated AWP is the one that's paid for the beneficiary and
5  that's the claims data we're trying to produce and we are in
6  the process of producing.  And I think the other part of this
7  is, is again the falsity is--
8          THE COURT:  All right, I'm going to wait until
9  everything's produced.  Denied without prejudice.  You can
10 renew it after you get a look at everything.
11         MR. DALY:  I understand, Your Honor.  Judge, that's
12 all that there is on that motion.
13         THE COURT:  All right.  So the final motion is the
14 motion for a protective order.
15         MR. DALY:  Yes, Your Honor.
16         THE COURT:  4135.
17         MR. DALY:  And that I believe is ours as well, Judge.
18         THE COURT:  Yep.
19         MR. DALY:  This is the argument concerning the
20 government's notice for a deposition of Myles White--
21         THE COURT:  Right.
22         MR. DALY:  --who is the chief executive officer and
23 the chairman of the board of my client, Abbott Laboratories.
24 As the CEO and chairman, Mr. White is protected from potential
25 harassment and abuse by the law that the Court's seen in the

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

37

1  briefs about what a party has to do in order to get an APEX
2  deposition.  The standard is clear that Mr. White must possess
3  what the cases call unique personal knowledge of the subjects
4  relevant to the case and the government must show that they
5  have attempted less burdensome means to get the same
6  information that they are seeking from the senior officer and
7  we've cited a variety of cases for those two points.
8  　　　　　As to the second point about trying to exhaust other
9  means to get the information that they seek, the government
10 hasn't done anything.  They haven't said, they haven't argued
11 the point.  They say they don't have to.  Well, in fact, under
12 the case law they do because it makes sense to do it because,
13 you know, the law is there for a reason.  The law is there, you
14 only get these people when you have a real need to do it.  And
15 so we didn't even confer about this.  We attached the letter
16 that the government wrote to us following our meet and confer.
17 And this is the government's letter and they gave us four
18 reasons why they say that they want to take Mr. White's
19 deposition.
20 　　　　　The first reason that they give in their letter is
21 that Mr. White was the recipient of a litigation hold memo that
22 went to about 70 other people.  You know, your typical form,
23 you know, there's litigation or there's an investigation,
24 please maintain your files.
25 　　　　　THE COURT:  And has the letter been produced?

38

1       MR. DALY:  Yes, Your Honor.

2       THE COURT:  It has.

3       MR. DALY:  But the fact that somebody got a
4  litigation hold memo doesn't get you to take the deposition of
5  the CEO and chairman of the board of a company.  Unless the
6  Court has any questions, I don't have anything left to say
7  about that particular reason.

8       Reason number two, they say they want to inquire of
9  Mr. White about briefings that he may have gotten about
10 congressional inquiries or other investigations.  Well, by
11 defining it in that way about briefings is Mr. White is being
12 told things by other people.  By definition therefore he
13 doesn't have unique personal knowledge of the subject that he's
14 being briefed by others.  So I think that topic is outside the
15 scope of what they can do because it's not unique.  It's by
16 definition not unique.  And we've filed also a short affidavit
17 from Mr. White that confirms that.

18      The next reason given is that he was the addressee of
19 a letter written by Congressman Stark several years ago.  We've
20 cited the cases that indicate that getting a letter in the
21 course of a litigation or pre-litigation isn't something that's
22 subjects an APEX executive to a deposition.  Mr. White's
23 affidavit addresses this by saying that he, you know, he's
24 advised by others from time-to-time about, you know, pricing,
25 marketing, issues like that relating to the price of drugs and

39

1  so I think we've addressed that in the sense that there's no
2  indication that he has any unique knowledge about this and
3  getting a letter from a congressman in and of itself is not
4  reason to put somebody out for a deposition.
5          THE COURT:  And has the letter been produced?
6          MR. DALY:  Yes.  The government sent it so they have
7  it.
8          THE COURT:  Yeah.
9          MR. DALY:  It's out there.  It's something that's
10 been around for a number – I think it's a, I want to say it's a
11 2000 letter, Your Honor.
12         The final reason given is that they say that because
13 Mr. White is the CEO he's responsible for everything and,
14 therefore, he's responsible for Abbott's ethics and compliance
15 policy and we want to talk to him because he's the CEO.  If
16 that were true the CEO being responsible ultimately for
17 everything that goes on in a corporation they would be deposed
18 everyday, all day in any case against these sorts of companies,
19 and I don't think that that's reason enough.
20         I guess there was one more reason, Judge, and that is
21 they wanted to ask him about the TAP settlement, that's in
22 their letter which we attached.  The Court's already ruled that
23 out of the case in terms of discovery so I don't have anything
24 more to say about that particular issue.
25         So we had a meet and confer.  They gave us a letter,

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

40

1  it's attached.  That's what they say they want to do.  I don't
2  think that those fall within any categories.  They've done
3  nothing on any of those categories to see if, you know, by
4  written interrogatories or some other means, they can't get the
5  information that they are seeking.  They say they don't have to
6  do that, that they can just go right to the top.  I think the
7  law is to the contrary.
8         THE COURT:  All right, who's going to address that?
9         MR. NEIL:  It's me, Your Honor, thank you.  First of
10 all you might have been wondering why the state of Texas was
11 here, and my colleague Ray Winter from the state AG's office is
12 here because they've also noticed the deposition of Mr. White
13 in connection with their state case against Abbott.  In fact if
14 the Court grants this, I'm sorry, if the Court denies the
15 motion and Mr. White is deposed there will be several
16 plaintiffs and we'll obviously work with them to coordinate as
17 necessary any deposition.  But I don't want to be presumptuous.
18 Let me argue the merits first.
19        As Your Honor's well aware you've already allowed the
20 deposition of the CEO's in these cases.  I think AstraZeneca
21 attempted to get a protective order or didn't produce a CEO for
22 a deposition.  In the course of that there's a motion to compel
23 by the MDL plaintiff's and you recognized that there are very
24 important issues at stake in these cases and that corporate
25 wide knowledge about how the company decided the price of

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

41

1  spreads is something that's very important and is relevant to
2  this case.  So you allowed the deposition of AstraZeneca's CEO
3  when they didn't want to produce it.  And it's my understanding
4  also that you allowed the deposition of Bristol Myers Squibb or
5  if you didn't allow it they didn't fight it necessarily.  But
6  CEO's have been deposed in these cases cause they're very
7  significant cases.  And in fact on the government's side we've
8  allowed the deposition of three CMS administrators.  CMS
9  administrators are the equivalent of a CEO.  They run obviously
10 multi, hundreds of millions of dollars for federal program of
11 health care.  You know that.  And that's cause there are
12 important issues at stake and the government didn't try and
13 block those depositions, although Abbott's, you know, if you
14 try, it we tried to establish whether Abbott had shown the
15 specific knowledge of Abbott's conduct and possession of those
16 CMS people I think it'd be hard to do.
17        But more importantly let me go through the reasons.
18 Mr. Daly discussed the reasons that we articulated for taking
19 Mr. White's deposition and he didn't quite do them 100%
20 justice.
21        In September of 2000 the House Ways and Means
22 Committee was investigating Abbott at the same time the
23 government was and news broke.  And when the news broke of that
24 Abbott's CEO, Mr. White, was questioned about it and he made
25 various public statements.  He talked about how if there are

42

1  abuses in the system, they need to be fixed, the AWP system.
2  He talked about the structure of the regulations.  He talked
3  about the, you know, some of these allegations from the Ways
4  and Means Committee in 2000 might have been politically
5  motivated.  He displayed a deep knowledge of the issues that
6  were involved in terms of AWP pricing and the government
7  reimbursement for drugs.  That's not where the story ends
8  obviously.
9           In October of 2000 Congressman Stark, the ranking
10 democrat on the House Ways and Means Committee sent a letter to
11 Mr. White.  It wasn't just any letter, Your Honor.  Congressman
12 Stark basically went through and wrote a seven-page letter with
13 11 exhibits, it's an attachment to Abbott's motion for a
14 protective order as well as our opposition, where he went
15 through and systematically described what he thought was a
16 fraud that was being committed against the United States, the
17 same fraud that we're now suing Abbott on.  He went through and
18 he pointed out that none of this was sanctioned by any
19 governmental entity whether it was the executive branch or the
20 legislative branch.  And he also pointed out the public health
21 concerns that are arising from it cause one of the drugs that
22 we sued on is Vancomycin and there's over prescription of
23 Vancomycin which led to a real problem cause it's an antibiotic
24 last resort.  He wrote that letter in October of 2000.  It's
25 not everyday that a CEO gets a letter from a congressman

43

1  accusing the company of fraud.  And I think the United States
2  is entitled to ask Mr. White what he did when he received that
3  letter.
4       Now in the briefings Abbott writes that, you know,
5  there's no evidence that Mr. White got the letter.  Well, if he
6  didn't get the letter why did he put it in the affidavit he
7  submitted to the Court?  You know, there is a lot of factual
8  background that we need to find out what happened when that
9  letter was received.  Now something did happen when that letter
10 was received, Your Honor.  Abbott ended the fraud.  The
11 fraudulent scheme in this case ends in May of 2001.  And it
12 ends in May of 2001 and there are documents that we finally
13 received from Abbott that indicate that reason why the fraud
14 ended in May of 2001 was in part because the public scrutiny
15 that was coming from Congress and the press related to Abbott's
16 pricing policies could not justify, was not justified by the
17 amount of profit the company is earning.  And there's a
18 memorandum that discusses it that we have with our materials
19 that we submitted in our opposition.  But there's a direct link
20 between the letter from Congressman Stark to Mr. White to a
21 major corporate decision to end the way that Abbott was pricing
22 its drugs in our view ends the fraudulent scheme here.
23      In some respects Mr. White may very well be the hero
24 of the story for us in terms of being the one who decided that
25 as a corporate matter I'm the CEO, I'm tired of Congress coming

44

1  in and accusing us of fraud, we need to change what's going on
2  here.  And they did ultimately change it.  So he's at the core
3  of the end, the end of the fraud in this case.  And there's
4  nothing in the affidavit that he submitted that indicates
5  otherwise.  The only thing you have in the affidavit is a know
6  nothing affidavit, I don't know anything, what I knew I knew
7  from secondary sources.  Well as Your Honor knows from the
8  *Traveler's* decision in this district where Judge Collings said
9  that these kinds of know nothing affidavits, you know, are
10 subject to discovery, are subject to questioning because if
11 they didn't know anything it could be telling.  If Mr. White
12 got a letter from a congressmen accusing him of fraud and
13 throws it in the trash can well that actually goes to the
14 company's scienter cause under the False Claims Act if a
15 company CEO is deliberately ignorant when put on notice of a
16 fraud that's relevant to scienter.  And based on the
17 evidentiary record that we've seen he didn't just throw it
18 away.  Someone, Mr. White, and we'll find out from Mr. White
19 whether he was the hero of the story, ended the fraud and
20 that's what we want to get to the bottom of.  Thank you, Your
21 Honor.
22          THE COURT:  Briefly, Mr. Daly.
23          MR. DALY:  Yes, Your Honor.
24          THE COURT:  I'll get to you.
25          THE COURT:  Your Honor, the Stark letter as the

45

1  affidavits to the attached state was never responded to first
2  of all.  Second of all, as Mr. White says in his affidavit, you
3  know, events surrounding that would have been discussions with
4  counsel and they would be privileged.  One of the things that
5  you don't hear in the argument from the government is that any
6  suggestion that this individual's knowledge is unique, if they
7  want to know, and they do want to know and they have been
8  asking questions of others, you know, what happened?  Did you
9  get the Stark letter?  You know, what changes did you make, why
10 did you make them, et cetera, et cetera, et cetera, go ahead
11 and ask away.  But what they have to do to get Mr. White is
12 show that there's something unique about his knowledge because
13 the cases make clear that at most I think my brother, Mr.
14 Gobena, his argument would suggest that Mr. White might have
15 discoverable information.  The cases make clear that that's not
16 enough.  You need to have unique personal knowledge that you
17 can't get from anybody else and we've heard nothing that
18 remotely suggests that there's something that they can only get
19 from Mr. White.
20         THE COURT:  What's your response to that?
21         MR. NEIL:  My response is that a letter was sent from
22 a congress person to Mr. White, the CEO of the company.  The
23 only person who's going to know whether he received it, how he
24 reacted to it, the way he directed to do firsthand is going to
25 be Mr. White.  It's not going to be anyone else.  I don't think

46

1   the United States should be required to go and get hearsay
2   testimony--
3           THE COURT:  All right, you can ask him that in
4   written deposition questions, three written deposition
5   questions, and then you can renew this motion.
6           MR. NEIL:  Okay.
7           MR. GOBENA:  I take it then, Your Honor, that you
8   wouldn't want to hear from me on this?
9           THE COURT:  Well, if you'd like to speak I'll always
10  let you speak but I think that's going to be my approach.
11  Unless you have some further information beyond what's in your
12  papers as to his specific knowledge.
13          MR. GOBENA:  I do, Your Honor, I'll be brief.
14          THE COURT:  All right then.
15          MR. GOBENA:  First, I would ask that the Court review
16  the *Travelers'* opinion that came out of this district.
17          THE COURT:  I know the *Travelers'* opinion.
18          MR. GOBENA:  And I think it sets forth a standard
19  that is slightly different in significant ways than my brother,
20  Mr. Daly, set forth.  I think in pertinent part it does not
21  state that this knowledge has to be at the level that he
22  requires, but furthermore I want to say specifically that I
23  personally have taken the deposition of several witnesses and
24  this memo where pricing changes are instituted by Abbott and
25  explicitly mention the Stark letter, the 2000 Stark letter

47

1  addressed to Myles White individually, that is specifically
2  mentioned in the memo as a part of the reason why these changes
3  are being instituted.  That has been marked as Exhibit 940.  We
4  have asked several witnesses if they have seen that.  Do they
5  know anything about that memo and they all say no.
6          Now, the reason why I mention that is because this
7  letter from Congressman Stark went to Myles White.  However it
8  was delegated by Mr. White a response was provided.  The
9  response was not in a written response to Congressman Stark.  A
10 response was in the form of a change in their price reporting
11 and price setting conduct.  That I think is very pertinent.
12 And the *Travelers'* opinion says that when you have a case that
13 involves motive and intent getting testimony from the APEX
14 individual is critical because ultimately that has far more
15 probative value about what the corporation intended, what the
16 corporation motives were.
17          THE COURT:  Well, I'm not saying that you're not
18 going to be permitted to have that deposition, but what I'm
19 saying is as a preliminary matter I will allow three written
20 deposition questions on this limited area, and you can renew
21 the motion after that if you're not satisfied with the
22 information you get and you think you need then to have this
23 live deposition.  So it's a start.
24          MR. GRABINO:  I understand.  Thank you, Your Honor.
25          THE COURT:  All right.  So as to docket entry 3959,

48

1  the motion on deliberative process, I'm going to take that
2  under advisement and give you a short ruling.  As to 4135,
3  allowed in part and denied in part as set froth in the record
4  in open court.  And as to 4202, it's denied except to the
5  extent that you may file three written deposition questions as
6  set forth specifically in court.
7            All right, hearing nothing else – all right and I
8  appreciate counsel accommodating the change in the Court's
9  schedule.
10           MR. DALY:  Thank you very much, Judge.
11           MR. NEIL:  Thank you, Your Honor.
12           THE COURT:  You're welcome.
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

49

1        CERTIFICATION

2        I, Maryann V. Young, court approved transcriber, certify

3   that the foregoing is a correct transcript from the official

4   digital sound recording of the proceedings in the

5   above-entitled matter.

6

7   /s/ Maryann V. Young                    July 30, 2007

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**