# EXHIBIT B



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) Hon. Patti Saris ) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS | ) Magistrate Judge Marianne B. Bowler ) ) ) ) |

**UNITED STATES' DEPOSITION UPON WRITTEN QUESTIONS OF MILES WHITE**

Pursuant to Rule 31 of the Federal Rules of Civil Procedure and Magistrate Judge Marianne Bowler's July 20, 2007 order, Plaintiff, the United States of America, propounds the following written deposition questions of:

> Miles White, Chief Executive Officer and Chairman of the Board
> Abbott Laboratories Inc. (hereafter "Abbott" or "Defendant")
> C/o Jones Day
> 77 West Wacker Drive, Suite 3500
> Chicago, Illinois 60601-1692

The United States requests that Mr. White provide responses and Defendant serve any objections to these questions within 30 days.

## I.  INSTRUCTIONS

A.   Information sought by this deposition shall include information within Mr. Whites's knowledge, possession, custody or control, or within the knowledge, possession, custody or control of any of Mr. White's agents, officers, employees, attorneys or investigators,

or any person acting as Mr. White's representative or Mr. White's behalf, including, but not limited to, any otherwise independent attorneys, accountants, or consultants.

  B. Whenever appropriate, the singular form of a word shall be interpreted as plural, and the masculine gender shall be deemed to include the feminine.

  C. Although the witness may be reminded in certain questions to answer in accordance with the Definitions and Instructions set forth herein, the absence of such a reminder should not be construed as an indication that those Definitions and Instructions do not apply. All questions should be answered in accordance with the Definitions and Instructions set forth herein whether or not a reminder is provided.

  D. If, in answering any question, the witness encounters any ambiguity in construing either the question or definitions and instructions relevant to the inquiry contained in the question, set forth the matter deemed ambiguous and the construction of the ambiguity that the witness believes is most reasonable, and answer the question applying that construction.

  E. If, in answering any question, the witness determines that the question calls for or would be more completely answered by reference to documents or information no longer in the possession, knowledge or control of the Defendant, identify the person(s) who the witness believes to now possess that information or document (i.e., if a former employee not available to defendants is believed to possess knowledge that may be responsive to an question, identify that former employee).

  F. If the contention is made that any responsive information is not subject to discovery, in whole or part, by reason of privilege or otherwise, identify each such piece of information by date, author(s) or speaker(s), addressee(s), recipient(s), title, subject matter,

purpose, and/or, if a document, present custody, and set forth the nature of the claimed privilege or other grounds for refusal to produce in a log consistent with the requirements of Fed. R. Civ. P. 26(b)(5).

G. Relevant Time Period: Unless otherwise indicated in a specific question, the questions herein refer to the time period from January 1, 1991 to December 31, 2003.

## II. DEFINITIONS

A. As used herein, the term "Documents" is used in its broadest sense, as defined in the Federal Rules of Civil Procedure, and includes the original of each existing identical or non-identical copy or draft thereof, by whatever means made, of any writing of any kind. The term "Documents" includes writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

B. As used herein, the terms "You" and "Your" or "the witness" refer to Miles White, Chief Executive Officer and Chairman of the Board of Abbott Laboratories Inc. and

3

agents, representatives, or other persons acting for or on behalf of Mr. White, including, but not limited to, any otherwise independent attorney, accountant, investigator or consultant.

  C. The term "affiliated" shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

  D. Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

  E. The terms "accuracy," "accurate" or "accurately," when used in reference to Price Representations or sales transactions, are used with reference to whether the information is reflective of the prices actually paid in the marketplace by any purchasers, including but not limited to prices paid by wholesalers, pharmacies, oncology supply houses, group purchasing organizations or physicians.

  F. The term "Price Representations" means any statement, assertion, representation or declaration of the price of any Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, List Price or Suggested Net Trade.

  G. The term "Pharmaceutical" means any drug or other product sold by You.

  H. The term "Spread" is used to refer to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid by purchasers of the Pharmaceuticals) and the price or cost determined, published or arranged by the manufacturer or the reimbursement rate paid by third party payors (to purchasers of the Pharmaceuticals). Third party payors include Medicare, Medicaid and private insurance. Thus, the Spread is the gross profit or margin actually or potentially realized by the purchasers of the Pharmaceuticals.

I.  The term "AWP" means the price that You report, advertise, market, publish or cause to be published, directly or indirectly, as the average wholesale price for any Pharmaceutical.

J.  The term "WAC" means the price that You report, advertise, market, publish or cause to be published, directly or indirectly, as the wholesale acquisition cost or wholesaler acquisition cost for any Pharmaceutical.

K.  The term "Direct Price" means the price You report, advertise, publish or cause to be published, directly or indirectly, as the "DP" or direct price for any Pharmaceutical.

L.  The term "List Price" means the price You report, advertise, publish or cause to be published, directly or indirectly, as the list or catalogue price for any Pharmaceutical.

M.  The term "Best Price" means the price You report or otherwise disseminate as the best price for any Pharmaceutical, including the price You report for purposes of the Medicaid Rebate Program.

N.  The term "AMP" means the price You report or otherwise disseminate as the average manufacturer's price for any Pharmaceutical, including the price You report for purposes of the Medicaid Rebate Program.

O.  The term "Price Publications" means (1) the *Red Book* published by Thomson Publishing, (2) the *Blue Book* published by First Databank, (3) the electronic or automated price service and the Hospital Formulary Pricing Guide published by Medi-Span, Inc., and any other pricing compendia published by those companies.

P.   The term "average or estimated acquisition cost" is the average or estimated – as those terms are defined in any commonly-available dictionary – amount that Your customers would pay to purchase Your Pharmaceuticals.

Q.   The terms "disclose," "disclosed" or "disclosure" as used below means to reveal, make known, make public or expose.  It explicitly does not refer to the reporting of any AMPs by You as part of the Medicaid Drug Rebate Program.

R.   The term or phrase "marketed the Spread" means the use of Spreads or potential profit margins as one of the means of inducing or encouraging Your customers to buy Your Pharmaceuticals.

S.   The term "HHS" refers to the United States Department of Health and Human Services.

T.   The term "DOJ" refers to the United States Department of Justice.

U.   The term "NAMFCU" refers to the National Association of Medicaid Fraud Control Units.

V.   The term "the DOJ/NAMFCU prices " refers to "DOJ AWPs" referred to by Abbott counsel at the October 26, 2006 Motion to Dismiss hearing before the Court.  *See* October 26, 2006 Hearing Transcript at 10-11.

W.   The phrase "facts on which you rely" refers to the factual basis for a proposition, position, or response and the identification of all related documents that support that factual basis.

## Questions

1. Describe in detail all the circumstances surrounding your receipt of Congressman Fortney "Pete" Stark's October 31, 2000 letter and its related attachments (hereinafter the Letter) to you (*see* **Exhibit 1**), including but not limited to:

    a. when you first became aware of the Letter;

    b. how you first became aware of the Letter;

    c. to whom you or anyone in your office (*e.g.*, your secretary or other subordinates) distributed the Letter, both before and after your review of the Letter; and

    d. whether you distributed the Letter to the Board of Directors as requested by Congressman Stark.

2. Describe in detail your reaction to the Letter, including but not limited to:

    a. your personal reaction to the allegations;

    b. any efforts you undertook or directed to be undertaken to investigate the claims in the Letter;

    c. the names and titles of the personnel you directed to be involved in such efforts to assess or analyze the contents of the Letter;

    d. a detailed description of any and all communications, in any format, you had with any other Abbott employees or officials regarding the contents of the Letter, both what you said to each employee or official and what each such employee and official said to you;

    e. a detailed description of any discussions held by the Board of Directors, whether by the entire board or any subcommittees, regarding the contents of the Letter;

7

3. Describe in detail all actions you and/or Abbott took in response to or as a result of your/Abbott's receipt, review and/or consideration of the Letter, including but not limited to:

   a. whether you or anyone else at Abbott wrote or otherwise communicated a response to Congressman Stark's Letter;

   b. if you did not respond to Congressman Stark's Letter, why not;

   c. a description of all procedures or protocols in place at Abbott to respond to correspondence from members of Congress and an explanation of whether or how Abbott's response varied from those procedures or protocols;

   d. any decisions made to revise, change or cease any and all pricing and/or price reporting practices (including, but not limited to, the way Abbott calculated and reported its wholesale acquisition cost and list or catalogue price information) for products manufactured by Abbott's Hospital Products Division (HPD), as reflected in the attached January 18, 2001 Catalog Price Adjustment Memo (**Exhibit 2**)

   e. a detailed description of discussions you had with any Abbott employees regarding Abbott's reporting of its wholesale acquisition cost, list or catalogue prices for HPD products and any changes in that price reporting after Abbott received the Letter;

   f. any approval or authority you personally granted with respect to any changes in Abbott pricing and/or price reporting practices in 2000 or 2001;

   g. the names of the persons to whom you granted such approval or authority; and

    h.    details regarding any instructions or guidance you gave to anyone with respect to the implementation of changes in Abbott pricing and/or price reporting practices in 2000 or 2001.

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |
| George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>Phone: (617) 748-3398<br>Fax: (617) 748-3272 | /s/ Gejaa T. Gobena<br>Michael F. Hertz<br>Joyce R. Branda<br>Renée Brooker<br>Justin Draycott<br>Gejaa T. Gobena<br>Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Phone: (202) 307-1088<br>Fax: (202) 307-3852 |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA | |
| /s/ Mark A. Lavine<br>Mark A. Lavine<br>Ana Maria Martinez<br>Ann St.Peter-Griffith<br>Special Assistant U.S. Attorneys<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL 33132<br>Phone: (305) 961-9003<br>Fax: (305) 536-4101 | |

For the relator, Ven-A-Care of the Florida Keys, Inc.,

Dated: August 7, 2007

9

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' DEPOSITION UPON WRITTEN QUESTIONS OF MILES WHITE** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

|  |  |
|---|---|
|  | /s/ Gejaa T. Gobena |
| Dated: August 7, 2007 | Gejaa T. Gobena |