## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## MOTION FOR A PROTECTIVE ORDER RELATING TO THE
## PROPOSED DEPOSITION OF RICHARD A. GONZALEZ

Plaintiff United States of America has notified Abbott that it wishes to conduct the deposition of Richard A. Gonzalez, Abbott's recently-retired President and Chief Operating Officer.  (*See* Declaration of Richard A. Gonzalez, Ex. A, at ¶ 1; *see also* Declaration of Jason G. Winchester, Ex. B, at ¶ 2.)  Until his retirement a few days ago, Mr. Gonzalez was the second highest ranking corporate officer of Abbott.  As such, Mr. Gonzalez is considered an "apex" witness, and ought only be subject to deposition if the Government first (i) demonstrates that he has "unique personal knowledge" of an issue relevant to this litigation; and (ii) attempts first to obtain any such information through less-intrusive methods of discovery.  As discussed below, the Government cannot satisfy either prong of this standard.  Under Federal Rule of Civil Procedure 26(c), the Court is entitled to, and should, enter a protective order barring the proposed deposition of Mr. Gonzalez.

## FACTUAL BACKGROUND

In this action, the Government alleges that, from January 1, 1991, to January 2001, Abbott reported inflated drug prices for four drugs that were marketed by Abbott's former Hospital Products Division (dextrose solutions, sodium chloride solutions, sterile water, and

Vancomycin), in an effort to create a profit spread for customers, who would be reimbursed by Medicare and Medicaid for more than what they actually paid for the drugs.  (*See* Complaint.)[1] The Government has served extensive written discovery, and it has deposed and/or requested the depositions of a host of Abbott employees who were directly involved in matters such as drug pricing, price reporting to various outside entities (including the federal and state governments and third-party publishing compendia), product marketing, product sales, and other issues relevant to this case.

Not content simply to depose the persons who were directly involved in (and therefore have the greatest knowledge about) these issues, however, the Government has lately turned its attention to seeking the depositions of Abbott's top corporate officers.  From Abbott's perspective, this strategy is designed much more to "turn the heat up" on Abbott than to serve any legitimate need for fact investigation – a fact made manifest by the Government's refusal to narrow the subject matter of these apex depositions in any way.  Yet, the controlling law recognizes that senior corporate officials are particularly susceptible to, and entitled to protection from, such harassment.  *E.g.*, *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985). Heeding this precedent, the Court recently considered and denied the Government's request to depose Abbott CEO Miles White, finding that the parties' respective interests could be better served by the submission of three, narrowly-focused questions to Mr. White in writing. Undeterred, the Government has sought the deposition of a host of other current and former Abbott senior executives, including:

- ♦    Cathy Babington – Current Vice President of Public Affairs

---

[1] The Government has sought to add allegations relating to a fifth drug – acyclovir (also an HPD product) – in its First Amended Complaint.  Abbott has moved to dismiss that complaint, however, and that motion is presently pending before Judge Saris.  (Dkt. Nos. 4469, 4470.)

- ♦     Duane Burnham – Former CEO and Chairman of the Board of Directors

- ♦     Richard Gonzalez – Former President and COO

- ♦     Rosemary Haas – Senior Director, Federal Government Affairs

- ♦     Thomas Hodgson – Former President and COO

- ♦     Peter Karas – Former HPD Divisional Vice President of Sales

- ♦     David Landsidle – Former Divisional Vice President, Government Affairs

- ♦     Loreen Mershimer – Current Vice President of Integrated Health Care Marketing

- ♦     Donald Robertson – Former Vice President of the Alternate Site business unit in HPD

- ♦     Cynthia Sensibaugh – Senior Director, Federal Government Affairs

Abbott has not taken the position that no corporate executive should ever be deposed.  To the contrary, where it is apparent that such persons may have been directly involved in, or have directly supervised, matters that are potentially relevant to this litigation, Abbott has agreed to make them available for deposition – despite the substantial inconvenience that such depositions entail for the witnesses and the organization.  For example, Abbott has agreed to the depositions of Ms. Babington, Ms. Mershimer, Ms. Haas, Ms. Sensibaugh, and Messrs. Karas, Robertson, and Landsidle.

Abbott cannot agree, however, to the Government's request as to Mr. Gonzalez.[2]  Abbott met and conferred with the Government on July 17, July 27, and August 8 regarding these depositions.  During these discussions, the Government had a full opportunity (several, in fact) to articulate why, consistent with the apex standards, Mr. Gonzalez should be deposed.  As discussed below, the Government's proffered reasons, individually or collectively, are not

---

[2] Abbott has separately moved for a protective order as to Messrs. Burnham and Hodgson as well.  (Dkt. No. 4692.)

enough to clear the high bar that the law sets for apex depositions.  The Government's request should therefore be denied.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(2)(C) gives courts the discretion to prevent discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."  Courts have been especially willing to apply this rule when parties involved in litigation against a large corporation demand the deposition of the opponent's senior corporate officers – commonly referred to as "apex" depositions.  *See, e.g., Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003).  A top corporate official is "a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse."  *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985).  In light of the "tremendous potential for discovery abuse and harassment," *Liberty Mutual Ins. Co. v. Superior Ct. of San Mateo County*, 10 Cal. App. 4th 1282, 1287 (1st Dist. 1992), both state and federal courts have long disfavored such depositions.  *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991).  Indeed, it has been said that "courts have a duty to recognize [the] vulnerability" of such persons to harassment, and to protect them from it.  *Mulvey*, 106 F.R.D. at 366; *see also Consol. Rail Corp. v. Primary Coal, Inc.*, 1993 WL 364471 at *1 (S.D.N.Y. Sept. 10, 1993) ("permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation").  This same protection also applies to retired executives.  *See, e.g., WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, 11-12 (D. Cal. 2007); *In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987, 29 (D.N.Y. 2006).

In order to justify the deposition of high-ranking corporate executives, like Mr. Gonzalez, the party seeking the deposition has to overcome two major hurdles. *First,* the party must show that the executive in question has "unique personal knowledge" of an issue relevant to the case. *See, e.g.*, *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 483 (10th Cir. 1995) (protective order proper where plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the executive] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome"); *Evans,* 216 F.R.D. at 518 (denying depositions of three high-level executives of Allstate because "the information can . . . be obtained from other sources without deposing these 'apex' officers"); *Baine,* 141 F.R.D. at 334 (denying deposition of GM vice president, noting that "when a party seeks to depose high-level decisionmakers who are removed from the daily subjects of the litigation, the party much first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter in issue."); *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383, 383 (S.D.N.Y. 1951) (denying deposition of vice president because the same information could be gained from a lower-level employee); *Cardenas v. The Prudential Ins. Co. of Am.*, 2003 WL 21293757 at *2 (D. Minn. May 16, 2003) (denying depositions of several Prudential executives, finding that the plaintiffs had not shown that the executives "possess any information that could not be obtained from lower-level employees or other sources, much less that their knowledge of plaintiffs' allegations is 'unique.'"); *Consol. Rail Corp.*, 1993 WL 364471 at *1 (deferring depositions of three executives until "it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases."); *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 179 (Tex. 2000) (trial court abused its discretion by allowing depositions of two Samsung executives, in part because they had no unique knowledge); *Liberty Mutual*, 10 Cal. App. 4th at 1289 ("when a plaintiff seeks to depose a

corporate president . . . the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information.").

*Second,* courts have insisted that all avenues of less-burdensome discovery, such as written interrogatories and depositions of more easily-accessible witnesses who might be able to reveal the same information, be exhausted before allowing a high-level executive to be deposed. *See, e.g.,* FED. R. CIV. P. 26(b)(2)(C) (giving courts discretion to prevent discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."); *In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987, 29 (D.N.Y. 2006) (directing plaintiff to submit interrogatories or pursue a 30(b)(6) witness in lieu of deposing the former CEO of defendant's subsidiary); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (noting that "failure to take advantage of [an] inexpensive, convenient method of discovery, *i.e.* interrogatories, casts serious doubt over [the] claim that [the executive] possessed information that was more than marginally relevant to [the] civil action."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (deposition of Upjohn president properly barred where plaintiff had not first taken depositions of lower-level employees who could provide the same information); *Stone v. Morton Int'l*, 170 F.R.D. 498, 504 (D. Utah 1997) (requiring 30(b)(6) deposition and exhaustion of other discovery methods before corporate officer could be deposed); *Mulvey*, 106 F.R.D. at 366 (quashing deposition notice of CEO because less intrusive discovery methods should be pursued first); *In re Alcatel USA, Inc.*, 11 S.W.3d at 180-81 (holding that trial court abused its discretion by allowing deposition of two Samsung apex executives in part because Plaintiff had been given opportunity to depose other employees who arguably possess the same information and had declined); *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("We conclude it

amounts to an abuse of discretion to withhold a protective order when a plaintiff seeks to depose a corporate president . . . absent exhaustion of less intrusive discovery methods.").

The result should be no different here. Mr. Gonzalez retired just a few days ago, after a long and distinguished career. The Government has not made and cannot make any showing that Mr. Gonzalez has unique personal knowledge of any issue relevant to this case. As important, the Government has made no effort to exhaust fully other, less intrusive, means to discover any relevant information, such as deposing other Abbott employees or serving written discovery (as this Court directed with respect to Mr. White). Failing both prongs of the applicable legal standard, the Government's request to depose Mr. Gonzalez must be denied.

## I.   PLAINTIFFS HAVE MADE NO SHOWING THAT MR. GONZALEZ HAS "UNIQUE PERSONAL KNOWLEDGE" OF ANY TOPIC RELEVANT TO THE CASE

The "unique and personal knowledge" standard cannot be satisfied merely by asserting that the executive might have some knowledge of relevant information. "If 'some knowledge' were enough, the apex deposition guidelines would be meaningless; they would be virtually indistinguishable from the scope of general discovery." *In re Alcatel USA, Inc.*, 11 S.W.3d at 179; *see also Baine v. General Motors Corp.*, 141 F.R.D. at 334; *Consol. Rail Corp.*, 1993 WL 364471 at *1. Although the "unique personal knowledge" standard is not rigidly defined, in order to have any meaning at all, "there must be some showing beyond mere relevance, such as evidence that a high-level executive is the *only* person with personal knowledge of the information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources." *Alcatel*, 11 S.W.3d at 179 (emphasis added). The Government cannot make that showing here.

### 1.        Receipt of a Document Preservation Memorandum

Plaintiffs have suggested that they should be allowed to depose Mr. Gonzalez because he was copied on a document preservation memorandum from Abbott's in-house counsel.  (*See* Ex. B at ¶ 6.)  The document preservation memo in question was distributed to more than 70 people within Abbott, including Mr. Gonzalez, Abbott CEO Miles White, and Abbott's General Counsel, Jose deLasa.  (*See* Ex. C.)  The Government's contention that it can show that Mr. Gonzalez has "unique and personal" knowledge of any matter relevant to this litigation because he was one of about 70 people at Abbott who were copied on a litigation hold memorandum is ridiculous on its face.  If the Government really wants to know about Mr. Gonzalez's compliance with this document preservation notice, it surely can seek this information through some means (such as written discovery) that is far less burdensome than a deposition.

### 2.        Knowledge About Pricing of HPD Products

The Government's remaining justifications for deposing Mr. Gonzalez are equally groundless.  Moving on from his receipt of a litigation hold notice, the Government next claims that, because Mr. Gonzalez served for a brief period as the head of HPD, he must possess relevant information regarding the pricing of HPD products.  (Ex. B at ¶ 6.)

After spending the bulk of his career in Abbott's Diagnostics Division (where the business focus is on diagnostic mechanisms and other instruments, rather than pharmaceutical drug products), Mr. Gonzalez served as the President of the former HPD from March 1998 to July 2000.  (Ex. A at ¶ 2.)  He then transferred from HPD to Abbott's Medical Products Division, where he served until his elevation to President and COO of Abbott in 2006.  (*Id.* at ¶ 1-2.)  The time that Mr. Gonzalez spent nearly a decade ago as the head of HPD appears to be the focus of the Government's interest in seeking his deposition.

Yet, Mr. Gonzalez has made clear that, during his time as the President of HPD, he had no unique knowledge about the pricing of HPD products. (*Id.* at ¶ 5.) Other persons within HPD were directly responsible for pricing determinations, and those persons would keep Mr. Gonzalez advised as necessary about pricing issues. (*Id.*) Because others within HPD were more directly responsible for product pricing than Mr. Gonzalez, he cannot possibly have the sort of unique personal knowledge necessary to justify his deposition; the mere fact that he was the head of HPD is not enough. *See In re Alcatel USA, Inc.*, 11 S.W.3d. at 177; *see also id.* at 179 (noting that if "some knowledge" was the equivalent of "unique" knowledge, the standards for apex executives would be "virtually indistinguishable from the scope of general discovery"). [3]

### 3.    Meeting with Coram Executives

The Government next argues that Mr. Gonzalez should be deposed because he allegedly met with executives of Coram, a client of the Alternate Site business unit within HPD, to discuss contract negotiations. (Ex. B at ¶ 6.) Mr. Gonzalez has attested, however, that he has no memory of any such meeting with Coram, nor of ever being involved in contract negotiations with Coram or any other Alternate Site customer. (Ex. A at ¶ 6.) That should end the inquiry.

---

[3] Thus, this case stands in stark contrast to cases where courts have been willing to find that a corporate executive possesses unique and personal knowledge, such as *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987). In that case, the plaintiff made a strong factual showing that the corporate executives at issue had unique personal knowledge of the discrete policy that was the topic of the requested deposition. *Id.* at 143 (executive was "significantly involved in the administration and implementation" of program central to the parties' dispute); *see also Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 104 (S.D.N.Y. 2001) (allowing deposition of Sony's CEO where plaintiff offered evidence showing that the executive had unique knowledge about the subject of the suit and plaintiff had already exhausted other, less-intrusive means to obtain the discovery). Although apex depositions may be appropriate when the focus is narrowly-defined, and substantial evidence demonstrates that the executive has unique insight into the relevant topics, this case presents the polar opposite situation. Here, the Government wishes to take a scattershot deposition of Abbott's former President and COO about AWP-related issues, yet it has offered no showing whatsoever that Mr. Gonzalez has any unique or superior personal knowledge about these issues within the company.

### 4.      The DOJ "True AWP's" Publication

Similarly, Mr. Gonzalez has averred that he has no memory of any publication in or about 2000 concerning a list of so-called "true AWP's" that was issued by the U.S. Department of Justice.  (*Id.* at ¶ 7.)  Mr. Gonzalez has no unique knowledge within Abbott about reimbursement issues.  (*Id.* at ¶ 8.)  The Government has deposed more than 60 witnesses already in this case, and has asked every one of them about reimbursement; there can be no doubt that the Government knows who the most knowledgeable witnesses are within Abbott about this issue, and that Mr. Gonzalez is not among them.  The mere fact that Mr. Gonzalez may have been sent a publication that he no longer remembers cannot justify his deposition.

### 5.      Involvement in HPD Operational Decisions

Finally, the Government claims that Mr. Gonzalez should be deposed because he allegedly was involved in Abbott's decisions (i) to discontinue the Home Infusion Services business; and (ii) to merge together the contract marketing groups of the Hospital and Alternate Site business units within HPD.  (Ex. B at ¶ 6.)  As with each of the Government's other rationales, however, these are wide of the mark because Mr. Gonzalez does not possess any unique information that would justify his deposition.

For instance, Mr. Gonzalez has averred that he has no unique personal knowledge about these issues.  (Ex. A at ¶ 9, 10.)  As to the decision to discontinue the Home Infusion Services business, the Government recently has requested the deposition of Michael Sellers (who served as the head of Home Infusion Services at the time it was discontinued).  Mr. Sellers, not Mr. Gonzalez, is clearly the best source for information on this subject.  Similarly, the persons with the greatest knowledge about the merger of the two contract marketing groups within HPD would be those persons who worked in and managed those groups at the time.  Mr. Gonzalez's knowledge of this subject is in no way unique or superior within Abbott.  (*Id.*)

-10-

\*　　　\*　　　\*　　　\*

None of the Government's arguments establish that Mr. Gonzalez has unique or superior personal knowledge of any matter relevant to this litigation.  Case law, including this district's own, is clear that such a showing is a necessary precursor to allowing an apex deposition. Because this showing has not been, and cannot be, made here, this court should grant a protective order barring plaintiffs from deposing this witness.

## II.   ANY ARGUABLY RELEVANT DISCOVERY FROM MR. GONZALEZ COULD BE ACQUIRED THROUGH LESS BURDENSOME MEANS THAN A DEPOSITION

Although the Court need not reach this issue in order to grant Abbott's motion, a protective order is also warranted here because the Government has not exhausted other, less-intrusive means of gathering discovery before seeking the deposition of Mr. Gonzalez.  The case law uniformly instructs that, before a party is permitted to conduct an apex deposition, it must first pursue other avenues, such as (i) depositions of lower-level employees or corporate 30(b)(6) designees; or (ii) written discovery.  *Patterson,* 281 F.3d at 682 (failure to utilize such alternative discovery "casts serious doubt over [plaintiff's] claim that [the executive] possessed information that was more than marginally relevant to her civil action."); *Salter v. Upjohn Co.*, 593 F.2d at 651; *Stone*, 170 F.R.D. at 504; *Mulvey*, 106 F.R.D. at 366; *Baine,* 141 F.R.D. at 335; *In re Alcatel USA, Inc.*, 11 S.W.3d at 176; *Liberty Mutual*, 10 Cal. App. 4th at 1289.

The rationale for this rule is simple.  Often, lower-level employees have the greatest and most direct knowledge of the relevant facts.  *Upjohn*, 593 F.2d at 651.  It is "very likely that, after taking the other employees' depositions, plaintiff would be satisfied and abandon [its] requests to depose [the apex executive.]" *Id.*  That is almost surely the case here, as Mr. Gonzalez was at the very top of the organization.  His knowledge, if any, about such issues as the pricing, marketing or sale of the subject drugs will in no way be unique within the organization,

or superior to the knowledge held by lower-level employees who were more directly involved
with these matters.  The Government can access any relevant evidence about topics germane to
this litigation by deposing lower-level employees – a process that is currently underway, but far
from complete.

At a minimum, therefore, the Government should be required to defer its request to
depose Mr. Gonzalez until the end of the discovery process, after the lower-level employees with
the greatest knowledge about topics relevant to the litigation have been deposed.  Then, the
Government can reassess whether, in light of all of the discovery conducted, it still believes that
this deposition is necessary.  If it does, then the Court can determine, based on a full record,
whether there is a proper basis for the deposition to go forward, and on what terms.  "At the very
least, [further discovery] would aid in developing and refining a line of questioning [for the apex
executive]," and should result in less duplicative, inconvenient, and burdensome discovery.
*Baine*, 141 F.R.D. at 335;  *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("it would seem sensible to
prevent a plaintiff from leap-frogging to the apex of the corporate hierarchy in the first instance,
without the intermediate steps of seeking discovery from lower-level employees more involved
in everyday corporate operations").[4]

In addition, as this Court recognized with respect to Mr. White, written interrogatories
provide another, less-burdensome alternative to deposing a high-level executive.  Such
interrogatories allow "plaintiffs' rights [to] be fully protected as well as those of [the executive],"

---

[4] Were the Court to order that the deposition of Mr. Gonzalez go forward now, there clearly should be strict
limitations on the time period for the deposition and the scope of permissible topics.  During the meet and confer
process, the Government agreed only that it would attempt to complete this deposition in one full day, but it would
not agree to any limitation as to topics.  (Ex. B at ¶ 7.)  That is unreasonable on both fronts.  There is no reason that
this deposition could not be completed in an hour or two at most.  In addition, in order to protect against inefficiency
and harassment, the topics to be covered with Mr. Gonzalez in the event a deposition is ever allowed should be
limited, and should be set forth in advance.  *See, e.g., WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS
20481, 17 (D. Cal. 2007) (limiting deposition of former executive to certain enumerated topics).

and allow "an orderly discovery process [to] be best served[.]" *Mulvey*, 106 F.R.D. at 366; *see also Patterson*, 281 F.3d at 682; *Baine*, 141 F.R.D. at 334-35; *Liberty Mutual*, 10 Cal. App. 4th 1289-90; *Colonial Capital Co. v. General Motors*, 29 F.R.D. 514, 518 (D. Conn. 1961) (granting CEO of General Motors's request to answer interrogatories in lieu of deposition "to minimize the amount of time he must take from his duties").

Rather than pursue any of these options, the Government instead seeks the "unreasonable" option of forcing the deposition of Mr. Gonzalez, a retired senior Abbott executive. *Liberty Mutual*, 10 Cal. App. 4th at 1287. This would impose a substantial burden upon Mr. Gonzalez (Ex. A at ¶ 11), and should not be allowed.

## CONCLUSION

Because the Government has not shown that Mr. Gonzalez has unique or superior personal knowledge of any issue relevant to this litigation, and because it has not exhausted other, less-burdensome means to gather relevant discovery, the Court should grant this motion, and should enter an order prohibiting this proposed deposition. Alternatively, the Court at a minimum should order that the Government defer its request to depose Mr. Gonzalez until the end of the fact discovery period, at which time the parties and, if necessary, the Court can reassess any perceived need for this deposition based upon a more fully-developed record.

Dated:  October 5, 2007

Respectfully submitted,

ABBOTT LABORATORIES INC.


By:  /s/ Brian J. Murray



James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on October 5, 2007, the foregoing **ABBOTT LABORATORIES INC.'S MOTION FOR A PROTECTIVE ORDER RELATING TO THE PROPOSED DEPOSITION OF RICHARD A. GONZALEZ** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.


/s/ Brian J. Murray
_____

CHI-1605473v1