UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK 2 TRIAL | Judge Patti B. Saris |

**PLAINTIFFS' RESPONSE TO THE HAVILAND MEMORANDUM CONCERNING THE APPOINTMENT OF CLASS COUNSEL FOR THE TRACK 2 CLASSES PURSUANT TO FED. R. CIV. P. 23(g), AND CLASS COUNSEL'S <u>SUBMISSION DATED SEPTEMBER 18, 2007</u>**

## I.      INTRODUCTION

It is often said that desperate times require desperate measures, and Don Haviland's filing of October 1, 2007, fully embodies the cliché.  It is an affront to this Court and the very people that he purports to represent.  Challenged by this Court to account for his improper behavior, and having been caught making misrepresentations to the Court, Mr. Haviland has chosen to withdraw as class counsel in a bid to foreclose judicial review of his actions.  Simultaneously, he has filed a 57-page, unsubstantiated rant that is more befitting of the *National Enquirer* than a court of law.[1]  Having engaged in improper conduct damaging to the Classes, having challenged this Court's authority to manage the course of this complex MDL action, having made numerous misrepresentations in signed pleadings and oral statements to this and other Courts, and causing the Court and the parties to invest valuable resources in what has become the "Don Haviland Sideshow," Haviland should not now be permitted to simply drift away before the Court can rule

---

[1] *See* Docket No. 4769.

on his veracity and fitness to serve.  If allowed to do so, this will be the second time that Mr. Haviland has attacked a class counsel group and then withdrawn before a court ruling.[2] Moreover, Mr. Haviland will be back in the role of objector, as he already is doing with respect to the proposed AstraZeneca settlement.  And he will pursue appeals to the First Circuit, which will unnecessarily delay the distribution of settlement funds to the Classes.  Consequently, it is imperative that the Court issue a ruling finding Mr. Haviland unfit to serve as Co-Lead Counsel and finding that Haviland violated the confidentiality provisions of the mediation agreement. The First Circuit should have the benefit of the full record relating to Haviland's misdeeds, including findings from this Court, when it evaluates arguments that Haviland will undoubtedly advance in that forum.

## II.   HAVILAND MUST MOVE FOR LEAVE TO WITHDRAW

During the September 11, 2007 hearing, the Court called into question Mr. Haviland's veracity, advised that it was considering whether Mr. Haviland's continuing presence would "serve the best interests of the class," and invited submissions on the issue.  Sept. 11, 2007, Hearing Tr. at 18, 24-25, 28.  Class Counsel filed a factual response focusing on evidence bearing on Mr. Haviland's fitness to serve as Co-Lead Counsel.  *See* Docket No. 4723.  Mr. Haviland filed a pleading containing misrepresentations about the scope of the class sought in the New Jersey action.  *See* Docket No. 4727.  Class Counsel pointed out these misrepresentations in a filing dated September 20.  *See* Docket No. 4735.

Mr. Haviland has now filed a Notice of Withdrawal As Class Counsel.  *See* Docket No. 4762.  Although claiming that his withdrawal is predicated on the mooting of his client's standing and conflicts with Class Counsel, as recently as September 18 – and even in the wake of

---

[2] Haviland has pulled off this maneuver before in the *Bridgeport Fire* litigation, initiating a class counsel contest only to withdraw after a multi-day hearing into the matter, which revealed misconduct by Mr. Haviland, and before the court could rule.

the Court's concerns expressed on September 11 – Mr. Haviland was still seeking to maintain his position.  It is thus clear that Mr. Haviland's attempt to withdraw is motivated by a desire to avoid having to account to the Court for his misrepresentations and other wrongful conduct.

Mr. Haviland cannot moot the Court's review of his fitness by simply filing a notice of withdrawal as class counsel.  A motion is necessary.  *See*, *e.g.,* Dist. Mass. Local Rule 83.5.2(c) (providing that leave to withdraw must be sought when, among other things, a motion is pending, a trial date is set or a hearing or conference is scheduled); *Cobell v. Norton*, 213 F.R.D. 43, 44-46 (D.D.C. 2003) (discussing class counsel motion to withdraw from representing a class representative); *Merriweather v. Sherwood*, 2002 U.S. Dist. Lexis 9423, at *3-4 (S.D.N.Y. May 28, 2002) (discussing class counsel motion to withdraw from representing entire class).  To be sure, Class Counsel support removing Haviland from representation of the Classes in this case. However, given Mr. Haviland's improper behavior and misrepresentations, the Court should convert the notice of withdrawal into a motion to withdraw and then issue findings.

### III.   HAVILAND SEEKS TO EVADE RESPONSIBILITY FOR MAKING MISREPRESENTATIONS TO THE COURT

The central issue highlighted by the Court in association with Mr. Haviland's lead counsel motion is his conduct in the New Jersey AWP action and whether he has been forthright with this Court with respect to the scope of the class certification sought in that case. Remarkably, Haviland expends 40 pages of briefing before he even touches the topic.  And once he gets there, true to form (and as predicted), Mr. Haviland dedicates a single clause to the issue, claiming "one typographical error in the June 2003 *Local 68* Complaint."  Haviland Br. at 41. Tellingly, Haviland does not even bother to explain precisely where the typographical error is found.  Nor can he; the record clearly demonstrates that there was no typographical error in that complaint.

As Class Counsel previously explained, paragraph 99 of that complaint limits the proposed class in *Local 68* to New Jersey persons and entities.[3]  This limited scope of the New Jersey class was reiterated to this Court during February 10, 2005 remand proceedings when Mr. Haviland was present[4] and in a letter that the *Local 68* plaintiffs delivered to this Court on February 9, 2005.[5]

Haviland has no rebuttal to these inconvenient facts, because none exists.  Haviland simply misled the Court and did so intentionally in order to protect his quest for a competing class in the New Jersey action.  And he has no explanation for representing to the New Jersey Court that he was Lead Counsel in this MDL litigation at a time when he was not and when the issue was one of heated controversy in this Court.

As a parachute, Haviland continues to cling to an oblique reference made to a national class during one of the remand hearings in the middle of an exchange with the Court on the topic of whether three doctors who had pled guilty to federal criminal charges had made any sales to the *Local 68* plaintiff.  Haviland Br. at 41.  This passing reference is simply insufficient to put this Court and Class Counsel on notice of the radical change in the scope of the New Jersey class sought by Haviland given the prior representations.  Nor do the two e-mails cited by Haviland at Exhibits AA and BB to his declaration, which again confirm that the New Jersey case was

---

[3] "Plaintiff seek [sic] to bring this case as a class action pursuant to Rule 4:32-1 of the New Jersey Rules Governing the Courts, on behalf of themselves and all others similarly situated *in New Jersey* as members of a proposed class, defined as follows (the "Class"):   All persons and entities in New Jersey and throughout the ***county*** who . . . ."  (Emphasis added.)

[4] Feb. 10, 2005, Hearing Tr. at 90  ("The class itself is *a state action for state limited claim.  We are only seeking to represent those persons in New Jersey.  We've not filed a national class action, we've not filed a multiple state class action* . . . .) (emphasis added).

[5] Feb. 9, 2005 letter from John E. Keefe, Jr. to The Honorable Patti B. Saris ("As Your Honor is aware, Local 68 filed its putative ***New Jersey-only class action in state court in June of 2003***.  Defendants removed our case to federal court, where it was transferred to Your Court as part of MDL No. 1456.  We moved to remand back to state court because *inter alia*, our claims raise no federal question, and are otherwise not co-extensive with the claims brought by the MDL plaintiffs.") (emphasis added).

limited to a New Jersey-only class and otherwise reflect nothing more than the coordination that

the Court would expect to occur between Class Counsel in the MDL and counsel to *Local 68* in

the New Jersey action.  To reiterate, Class Counsel simply were not aware that Haviland had

decided to seek a nationwide class in the New Jersey action and would never have assented to

such a challenge to this Court's authority.

### IV.      HAVILAND SEEKS TO EVADE RESPONSIBILITY FOR DISCLOSING DETAILS OF CONFIDENTIAL SETTLEMENT NEGOTIATIONS

At the time he participated in the AstraZeneca mediation, Mr. Haviland agreed – as did

all other participating counsel – to maintain the confidentiality of negotiations.  This is

something that the mediator, Eric Green, insisted on in order to preserve the integrity of the

process.  Haviland now refers to this as "some undefined duty of confidentiality" that he could

choose to ignore as he saw fit (Haviland Br. at 49), but it was neither undefined nor non-binding.

Each participant in the mediation signed a confidentiality agreement.  Haviland was under an

obligation to treat the negotiations confidential, and he breached that obligation.  Haviland must

be called to account for placing into the public record details from the negotiations, as well as

attorney-client privileged material that he knowingly revealed at the time that a motion to seal

was pending with the Court.

### V.      THE *BRIDGEPORT FIRE* LITIGATION *IS* RELEVANT TO MR. HAVILAND'S FITNESS TO SERVE AS COUNSEL HERE

Mr. Haviland contends that the proceedings in *Bridgeport Fire* are not relevant to this

Court's inquiry into Haviland's fitness (Haviland Br. at 42-48), but they are.  Class Counsel do

not invoke those proceedings in an effort to "trash" Haviland as he contends.  Nor do we seek to

"re-litigate" the class counsel election that Haviland attempted to force in that case, where we

were not involved.  Rather, Class Counsel believe that it is their duty to highlight for the Court

legitimate, record evidence in another proceeding that casts serious doubt on Haviland's fitness to serve as Class Counsel here.   That evidence includes the following:

- Haviland tried to force an election of class counsel, compelling the *Bridgeport Fire* court to issue an order after emergency hearing decreeing that "Donald Haviland, Esquire and members of his firm shall not solicit Class Members nor shall they attempt to have Class Members make an election of Class Counsel." This is eerily reminiscent of Haviland's attempt to hijack this case by having his clients sign trumped-up declarations threatening to withdraw.[6]

- In seeking lead counsel status, Haviland made misrepresentations to the *Bridgeport Fire* court, including that he was Co-Lead Counsel here when he was not, and that he tried the bench trial in AWP when he did not.

- Haviland defied the court's request that Haviland produce financial records demonstrating that he had the financial wherewithal to shoulder the burdens of serving as lead counsel.

- Haviland inappropriately billed time and expenses to the AWP case.[7]

The *Bridgeport Fire* proceeding is also relevant for another reason:  after demanding that the court there revisit its appointment of class counsel, Haviland put the parties, the class and the court through a multiple day hearing on the issue, only to withdraw his petition after misrepresentations that he made to the court were revealed.  ***Haviland has done the same exact thing here***.  This highlights the need for this Court to put a stop to Haviland's games.  Absent an

---

[6] Haviland quibbles over whether this order was an official "injunction," Haviland Br. at 43 n.66, but that is immaterial because it certainly was a mandatory order.  This again demonstrates Haviland's lack of candor generally and disrespect for court rulings in particular.  Whether technically termed an "injunction" or otherwise, the fact remains that Haviland was affirmatively ordered to cease and desist from engaging in such solicitations, and it speaks volumes about Haviland that he feels the need to finesse the issue with this Court.

[7] In our September 18 filing, Class Counsel brought to the Court's attention evidence that Haviland had inappropriately billed attorney time and numerous expenses to the AWP case while he was actually engaged in personal matters or investigating new cases.  *See* Docket No. 4723 at ¶ 27.  Class Counsel discovered this evidence in reviewing the record in the *Bridgeport Fire Class Action Litigation*.  The evidence consists of the sworn, in-court testimony of Mr. Haviland's former assistant, which went un-rebutted by Haviland's ineffective cross examination in that hearing.  Haviland argues that this is just a misunderstanding – that the charges were posted to the AWP case by other attorneys working under Mr. Haviland at his former firm (Haviland Br. at 47-48) – but this argument is not ***evidence***.  To our knowledge, no such evidence was presented in the *Bridgeport Fire* case.  Nor is any supporting evidence presented here, only Mr. Haviland's unsworn assertion that the errant billing was a misunderstanding. Given Haviland's penchant for lying to this Court (and others), we can hardly accept his word on the matter.

order finding him unfit, Haviland will continue to defy courts, make misrepresentations, and

disregard the rights of class members.

## VI.    CLASS COUNSEL HAVE VIGOROUSLY REPRESENTED THE INTERESTS OF ALL CLASS MEMBERS IN THIS CASE

Mr. Haviland expends 40 pages of briefing attacking the credibility of Class Counsel and

their management of this six-year old litigation.  The accusations that Mr. Haviland levies are

preposterous and untrue.

As for Class Counsel's management of this litigation, we respectfully submit the

following:

- We have litigated this case for almost six years, engaged in intensive discovery and motion practice, tried the Track 1 bench trial, prepared for the Class 1 trials of the consumer claims against AstraZeneca and BMS and carried the substantial financial burden of all of this work.  In addition, we are continuing to press ahead with the claims against the Track 2 Defendants and will be litigating appeals in the First Circuit.  The Court has witnessed first hand the sincere effort and skill put forth by Class Counsel.  In contrast, Haviland's contribution to this endeavor has been minimal and his presence often disruptive.

- At all times, we have vigorously advanced the interests of all class members – consumers and TPPs alike.

- Mr. Haviland portrays himself as the only true advocate for consumers.  This is false.  Class Counsel have consumer clients in addition to TPP clients.  We have never compromised one group's interests over another.  Indeed, in the one context in which there was potential for conflict – to wit, allocation of the GSK settlement proceeds across the two groups – we sought the appointment of separate counsel to work these issues, and the Court approved the arrangement.  Furthermore, it should be noted that Haviland also represents TPPs in the New Jersey action.  Moreover, Haviland is not the "consumer crusader" that he portrays himself to be, having demonstrated quite clearly that he puts his interests in achieving lead counsel positions ahead of the interests of his clients.

- The $67.7 million GSK settlement that the Court appropriately approved was a strong settlement for both consumers and TPPs, and Mr. Haviland's firm agreed to it.

- Class Counsel negotiated two fabulous settlements of the claims of Class 1 members against AstraZeneca and BMS.  The recoveries that will be provided to these Medicare beneficiaries, should the Court approve the proposed settlements,

will very likely approximate double each class member's damage, if not more – a result nearly unheard of in the class action litigation generally.

If Class Counsel were as incompetent and dishonest as Mr. Haviland portrays them, they would not have prevailed in a class trial against such well-heeled Defendants with such talented defense counsel.  If what Haviland says is all true, Class Counsel could not have garnered consumer settlements against AstraZeneca and BMS for double damages or more.

As for the role played by members of Class Counsel in other litigation, we respectfully submit the following:

- Members of the Class Counsel team have, collectively, been responsible for collecting over $1 billion on behalf of consumers, property owners and investors in a wide variety of class actions.

- Courts have appointed members of Class Counsel to lead- and co-lead counsel positions in class actions too numerous to count.

- Members of the Class Counsel team have dedicated their careers to serving the interests of consumers and investors, as well as citizens in actions against governments.  Collectively, we have spent decades representing these groups against politically and economically entrenched corporate interests.

- Members of the Class Counsel team are battle- and trial-hardened, having actually tried claims against some of our country's most powerful interests, including Big Tobacco, the oil and pharmaceutical industries.

If Class Counsel were as incompetent and dishonest as Mr. Haviland portrays them, courts would not have appointed them *so many times* to lead roles, often in contested counsel proceedings.  Clients would not, as they have, consistently retained Class Counsel's services in order to pursue difficult and complex class litigation.  Courts would not have vindicated the claims of consumers and individuals and otherwise protected their rights as a result of the work of members of the Class Counsel team, and defendants would not have paid out so much money over the years to the classes that members of Class Counsel represented.  But they did.

001534-16  199670 V1

Class Counsel will defer from engaging in a step-by-step rebuttal of Haviland's lengthy and false fusillade. ***Nonetheless, if the Court wishes Class Counsel to provide a detailed rebuttal to each and every accusation made by Mr. Haviland, we will do so, and we will do so with compelling evidence***.[8]   At this juncture, however, Class Counsel will not belabor these points further absent the Court's request.

## VII.   CONCLUSION

Don Haviland once ***demanded*** that the Court revisit its appointment of Class Counsel under FED. R. CIV. P. 23(g).  Now that Haviland is "on the run" due to his unprofessional and unethical conduct in this litigation (and others), he no longer wants his motion considered.  Class Counsel respectfully submit that, in light of Haviland's misrepresentations and improper conduct, the scurrilous accusations lobbed at Class Counsel, and the valuable time that Haviland has caused us all to spend in response to his filings, the Court should issue an order (i) finding Haviland unfit to serve as Class Counsel and (ii) once again endorsing the law firms of Hagens Berman Sobol Shapiro, LLP, Spector, Roseman & Kodroff, P.C., Wexler Toriseva Wallace LLP, and Hoffman & Edelson LLC as adequate counsel to the Class.  Such an order is necessary to protect the certified and putative Classes in this case, the integrity of the approved and proposed class settlements, and the fair and efficient resolution – through trial or otherwise – of the MDL class claims.

---

[8] The rebuttal will expose the contorted interpretations – if not outright misrepresentations – that Haviland has presented with respect to internal Class Counsel deliberations in this litigation.  It will also detail how Haviland has misrepresented the nature of the *Poland Springs* and *I-Pod Nano* proceedings against Hagens Berman Sobol & Shapiro LLP.  And we will present evidence that, once again, Haviland is lying about the record and his conduct in other cases, including statements that he had nothing to do with the motion to recuse Judge Stearns in *Lupron* when the evidence will show that we was a central protagonist in that effort.

DATED:  October 4, 2007

By    **/s/ Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

001534-16  199670 V1

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  199670 V1

<u>**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**</u>

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on October 4, 2007, I caused copies of **PLAINTIFFS' RESPONSE TO THE HAVILAND MEMORANDUM CONCERNING THE APPOINTMENT OF CLASS COUNSEL FOR THE TRACK 2 CLASSES PURSUANT TO FED. R. CIV. P. 23(g), AND CLASS COUNSEL'S SUBMISSION DATED SEPTEMBER 18, 2007** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


 **/s/ Steve W. Berman**
Steve W. Berman

001534-16  199670 V1