UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc.* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) | Magistrate Judge Marianne B. Bowler |

# THE UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S RENEWED MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF MILES WHITE

Abbott Laboratories Inc. ("Abbott") has filed a Renewed Motion for a Protective Order Barring the Deposition of its CEO, Miles White ("Renewed White MPO"). On July 20, Magistrate Judge Bowler ordered that Mr. White answer three written deposition questions. Renewed White MPO, Ex. A at 46. The United States issued the written deposition questions pursuant to Fed. R. Civ. P. 31 on August 7, 2007. Renewed White MPO, Exhibit B. Instead of providing his own testimony, Mr. White provided responses crafted all or in part by Abbott's lawyers. *See* Exhibit 1, Abbott's Responses to United States' Second Set of Interrogatories at 1. Mr. White and his lawyers' answers are non-responsive and evade the subject matter addressed by the deposition questions. As described below, Mr. White is a witness to events in this case with personal and unique knowledge and information about the conduct at issue. The time for his deposition is now.

# BACKGROUND

Mr. White is a witness with direct knowledge and involvement in key events at issue in this case. When Abbott was accused by members of Congress of committing drug pricing fraud in September 2000 – the same conduct that Abbott now claims Congress approved of – Mr. White acted as the company's spokesman, providing knowledgeable, if incorrect, statements on the company's behalf:

- "'[The allegations by Congress] is really nothing new,' White said in Chicago earlier Wednesday in a brief interview after he addressed a luncheon of business executives on the company's e-commerce strategies. 'There's nothing new here.'" Docket No. 4252, Opposition to First White Motion for a Protective Order (First White MPO Opposition), Exhibit 2, September 28, 2000 Chicago Tribune, "Abbott, Baxter Fight Back."

- "Any concerns [Congressman] Bliley may have result from the fact that Congress and the Health Care Financing Administration, which runs Medicare, 'have never defined the pricing' policies clearly, White said." *Id.*

- "Abbott Chief Executive Miles White also said he supports changing the system to curb abuses." *Id*.

- "Congressman Bliley has an interest in this issue," White said. "But I think you need to look at the structure of the regulations." *Id*.

- "The chairman and CEO of Abbott Laboratories hinted Wednesday that election-year politics are playing a role in investigations into whether drugmakers inflate their average wholesale prices to boost profits on their products. 'The election is only four to six weeks away,' said Miles D. White, CEO of North Chicago-based Abbott, referring to the Nov. 7 presidential election." Exhibit 3, September 28, 2000 Chicago Sun Times, "Abbott Chief Downplays Drug Probe"

The United States has a right to examine Mr. White on the personal knowledge upon which these public statements about AWP and government reimbursement are based.

In addition, Mr. White was involved in Abbott's 2001 decision to report lower prices. Congressman Fortney "Pete" Stark wrote a letter to Mr. White refuting Mr. White's September

2000 statements to the press and accusing Abbott of fraud and jeopardizing the public's health in the process. Congressman Stark wrote, among other things:

- "You should by now be aware of Congressional investigations revealing that Abbott has for many years reported and published inflated and misleading price data and has engaged in other deceptive business practices. **This letter is a call for your company to immediately cease overcharging taxpayers and jeopardizing the public health**." Docket No. 4252, First White MPO Opposition, Exhibit 6, Stark 10/31/00 Letter to Miles White ("Stark/White Letter") at 1. (emphasis added)

- "The evidence amassed by Congress clearly shows that Abbott has intentionally reported inflated prices and has engaged in other improper business practices in order to cause its customers to receive windfall profits from Medicare and Medicaid when submitting claims for certain drugs." *Id*.

- "**Contrary to Abbott's recent assertions in the national media, the price manipulation conduct was in no way required by or consistent with existing reimbursement laws or policies**. Indeed, Abbott did not falsify published prices in connection with other drugs, where sales and market penetration strategies did not include arranging financial 'kickbacks' to health care providers." *Id.* (emphasis added)

After Mr. White's receipt of the letter, Abbott reduced its reported prices; draft memorandum explaining the reduction noted that Congressman Stark's letter to Mr. White was an impetus. Docket No. 4252, First White MPO Opposition, Exhibit 8 ("The wide disparity in [Abbott's] catalogue prices and average market prices as currently configured is not supported by sufficient financial or market factors to survive scrutiny of public opinion. This was voiced in December 2000 (sic) in a letter from U.S. Representative Pete Stark to Miles White.")

Mr. White was at the center of Abbott's efforts to respond to public accusations of fraud and to reform its price reporting practices. Thus, he has direct, personal knowledge of several important issues and events in this case. In the answers Mr. White and/or his lawyers drafted to the United States' deposition questions about these events, however, they claim that Mr. White

3

does not recall receiving the letter.  Renewed White MPO, Exhibit C, *passim*; *see also* Exhibit 1 (the answers to the deposition questions were drafted by "Miles White, in conjunction with legal counsel").

Yet, this answer is non-responsive and reflects more lawyering than candor from the witness.  It avoids the purpose of the questioning on the letter identifying Abbott's fraud sent by the member of Congress.  The United States does not simply want to ask Mr. White whether he recalls receiving the specific letter on or around the specific date it was sent to him.  Rather, the United States seeks to ask Mr. White about the issues raised in and related to the letter sent to him by Congressman Stark.  There are multiple documents and statements that relate to the subject matter of the letter that the United States could use to elicit more meaningful testimony about (1) Mr. White being notified by Congressman Stark of fraud allegations in October 2000 and (2) Abbott's decision to end its fraudulent price reporting conduct several months later in mid 2001.[1]

---

[1] There are additional issues upon which to question Mr. White, including but not limited to:

- Mr. White's involvement in Justice Department and Congressional investigations of possible drug pricing fraud committed by Abbott in late 2000 generally.

- Mr. White's involvement in enhancements to Abbott's corporate compliance program at the time Abbott made a corporate decision to report reduced prices for its drugs in 2001.

- Mr. White's involvement in the decision to resolve criminal charges and civil claims in 2001 involving Abbott's joint venture TAP Pharmaceuticals.  That matter, specifically the civil portion, involved the exact same type of AWP price inflation and spread marketing allegations at issue in this action.

- The circumstances surrounding Mr. White's receipt of an October 1999 litigation hold memorandum related to the government's investigation of Abbott's pricing

In ruling on the First White MPO, Magistrate Judge Bowler stated:

> I'm not saying that you're not going to be permitted to have that deposition, but what I'm saying is as a preliminary matter I will allow three written deposition questions on this limited area, and you can renew the motion after that if you're not satisfied with the information you get and you think you need then to have this live deposition. So it's a start.

Renewed White MPO, Exhibit A at 47.

Unfortunately, the responses crafted by Abbott counsel and Mr. White are completely unsatisfactory and mandate live testimony from this important witness. Indeed, the level of Mr. White's involvement in the preparation of these sworn answers to the United States' written deposition is an issue in and of itself in this matter. In an oral deposition, Mr. White would be less able to evade the questions being posed and rely on lawyer-crafted answers. Further, a live deposition would permit the United States' lawyers – not Abbott's lawyers – to control their questioning of this important witness, as is envisioned by the Federal Rules of Civil Procedure generally.

## ARGUMENT

**I.      The Law Requires That Mr. White Submit to a Deposition.**

The United States "may obtain discovery regarding any matter, not privileged, that is relevant to [a] claim or defense," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Further, "[h]ighly-placed executives are not immune from discovery[, and] 'the fact that [an executive] has a busy schedule'" does not exempt them from being deposed. *Consolidated Rail Corp. v. Primary Industries Corp.*, No. 92 Civ. 4927, 1993 WL 364471, at * 1 (S.D.N.Y. Sept. 10, 1993)

---

and marketing conduct.

(*quoting CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984)). "Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case." *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002).

As one court has noted, "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567 (S.D. Ca. April 6, 2007) at *2; *see also, Travelers Rental Co., Inc. v. Ford Motor Company*, 116 F.R.D. 140 (D. Mass 1981); *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001) (deposition of high-level corporate officials permitted when officials have some unique or superior knowledge of the issues in the case ). That sentiment is echoed in the *In re Sky Train Fire* decision as well, which noted that courts allow apex depositions where "they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action." 2006 WL 1328259 (S.D.N.Y. May 16, 2006) at *10.

As detailed above and discussed below, Mr. White has direct, personal and unique knowledge of relevant, critical issues in this case. It is Mr. White's burden to prove that he does not possess information relevant to the issues in the case or that his knowledge of particular issues in a case is completely duplicative of other witnesses. *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002). Mr. White's declaration and written deposition answers are vague, conclusory and wholly insufficient to support a motion for a protective order. *Rolscreen*, 145 F.R.D. at 96 ("party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative

statements about the need for a protective order and the harm which will be suffered without one.") (citations omitted.)

In the *Travelers* case, several high level Ford employees filed similar "know nothing" declarations in a failed attempt to evade being deposed. *Id*. at 143. As that court noted, "[t]he plaintiff is entitled to 'test' the claim of lack of knowledge or lack of recollection by deposing the witness." *Id*. at 143, *citing Amherst Leasing Corp. v. Emhart Corp*., 65 F.R.D. 121, 121-23 (D. Conn., 1974) (citations omitted). *Travelers* further noted:

> [T]here is nothing in the law which would indicate that Travelers has to accept the claimed failures on their face or rely on whatever efforts Ford's counsel may have undertaken to refresh recollections. Considering that Travelers has demonstrated that these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle the deponent to an order quashing the deposition.

*Travelers*, 116 F.R.D. at 143; *see also Six West* 203 F.R.D. at 102. This conclusion is especially apt here where Mr. White and his lawyers reframed the United States' deposition questions from (1) covering the events and circumstances surrounding his being notified by a congressman of fraud by his company to (2) a query about whether he specifically recalled when he first saw the letter from Congressman Stark. This is unfortunately the harm that can result when a party's questions are filtered through opposing counsel.

Further, Mr. White does not deny or address whether he would have had to authorize the 2001 price change that came after the receipt of the letter from Congressman Stark. As a court in this district noted, "[w]hen the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and/or administered the particular action." *Travelers*, 116 F.R.D. at 142; *see also Rolscreen Co. v. Pella Products of St.*

*Louis Inc.*, 145 F.R.D. 92, 97 (S.D. Iowa 1992). Mr. White's claim to not recall a major price reporting decision that had a major impact on one of Abbott's divisions – while also generating customer complaints and news accounts (Exhibit 2) – is not credible; further, direct inquiry by the United States is required.

## II.   The United States Need Not Exhaust Other Means of Discovery Before Deposing Mr. White

For almost six months now, Abbott has fought vigorously to block Mr. White from testifying live and under oath and discovery in this case is rapidly coming to a close; with less than three months left in discovery in this case, there is no time to waste insofar as scheduling Mr. White's deposition. Since the United States has shown clearly that both Mr. White is a witness with unique and personal knowledge of key issues in this matter, the United States need not depose lower-level employees or pursue written discovery before taking his deposition.[2] *See WebSideStory*, 2007 WL 1120567 at *2. His subordinates' testimony cannot substitute for his direct testimony about his knowledge and actions.

---

[2] In some cases, courts have directed that lower-level employees be deposed before the opposing party can ask for discovery from the apex officials. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Baine v General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991). Those courts sought to protect these officials from repetitive and harassing depositions where unique or direct knowledge cannot be shown. These cases are easily distinguishable. Many of these decisions involve personal injury, employment or contract disputes where the upper-level officials had no personal involvement. *Bridgestone/Firestone*, 205 F.R.D. at 536 ("Nearly every decision Ford has cited [in support of its protective order] involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement."), citing *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995) (individual employment case); *Salter*, 593 F.2d 649 (individual negligence case); *Baine*, 141 F.R.D. 332 (individual personal injury case); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) (individual personal injury case). In the present case, the claims involve conduct and knowledge at the highest corporate level; thus, the justification for apex official protection is lacking. *See* Fed. R. Civ. P. 26 (b)(2) (in weighing whether to limit discovery, courts take into consideration the importance of the issues).

## CONCLUSION

For the reasons set forth herein, Abbott's Renewed Motion for a Protective Order Barring the Deposition of Mr. White should be denied.  Abbott should be ordered to produce Mr. White for deposition within 15 business days of the Court's order.

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |
| George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley<br>U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>Phone: (617) 748-3272<br>Fax: (617) 748-3971 | /s/ Gejaa T. Gobena<br>Joyce R. Branda<br>Daniel R. Anderson<br>Renée Brooker<br>Justin Draycott<br>Rebecca A. Ford<br>Gejaa T. Gobena<br>Civil Division<br>Commercial Litigation Branch |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF<br>FLORIDA | P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C.  20044<br>Phone:  (202) 307-1088<br>Fax: (202) 307-3852 |
| /s/ Mark A. Lavine<br>Mark A. Lavine<br>Ana Maria Martinez<br>Ann St.Peter-Griffith<br>Special Attorneys for the Attorney General<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL  33132<br>Phone:  (305) 961-9003<br>Fax: (305) 536-4101 | |

Dated: October 9, 2007

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above **THE UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S RENEWED MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF MILES WHITE** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                            /s/ Gejaa T. Gobena

Dated: October 9, 2007                  Gejaa T. Gobena