# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| *In re*: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne Bowler |

## [*PROPOSED*] MEMORANDUM BY THE UNITED STATES IN RESPONSE TO ABBOTT'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF ITS OBJECTIONS TO MAGISTRATE JUDGE BOWLER'S AUGUST 13, 2007 ORDER

This memorandum responds to the (proposed) submission by Abbott Laboratories, Inc. (Abbott) filed on October 1, 2007 (Dkt. No. 4720) ("the Supplemental Submission"). Abbott's latest filing relates to a document which had been inadvertently produced by the Government at an earlier point in this litigation notwithstanding that it was subject to withholding based on privilege. According to Abbott, the fact that the Government deems the document in question privileged should be considered by the Court in the context of the objections filed by Abbott with respect to Magistrate Bowler's August 13, 2007 Order – which, for the most part, upheld the Government's assertion of the deliberative process privilege for certain material that could otherwise be deemed responsive to defendant's discovery requests.

The Government is filing this response to Abbott's submission to (1) clarify the action taken by Government attorneys at a recent deposition, (2) advise the Court and parties that the United States has elected to refrain from recalling the document, and (3) respond to two assertions in Abbott's supplemental submission. As will be explained below, Abbott's latest

filing demonstrates that the assertion of deliberative process protection for documents similar to the one in question is entirely appropriate and, indeed, well-advised.

      I.      <u>Background</u>

    A.  <u>The Draft Memorandum and the Tentative Recall</u>

The document in question is an undated and unsigned draft memorandum which lays out options and recommendations that were under consideration by CMS officials regarding criteria that would be considered when reviewing State Plan Amendments ("SPAs") relating to Medicaid payments for drugs.  *See* Exhibit One to Abbott's Supplemental Submission (the "draft memorandum").  Although the document is undated, by conferring with agency personnel and based on information contained within the draft memorandum itself, Government counsel have determined that it was created in mid-2002.[1]  (A date that, incidently, falls outside of the relevant claim period covered by the Complaint of the United States against Abbott, which is 1991-2001.)

The draft memorandum was first produced by the United States in this litigation in 2004 in response to a subpoena served on the Government prior to its intervention against Abbott and prior to transfer of the Ven-A-Care *qui tam* action from the Southern District of Florida to this Court.  As noted in Abbott's supplemental submission, counsel for defendant marked the draft memorandum as an exhibit and showed it to CMS official Larry Reed at his deposition last month.  When handed the document by defense counsel, Mr. Reed, entirely on his own initiative, raised privilege concerns and asked to confer in private with Department of Justice counsel.

---

[1] For example, the draft memorandum references an unnamed OIG report which estimated that the actual acquisition cost for generic prescription drugs nationally, at the time of the report, was an average of AWP less 65.93 percent.  *See* Abbott Ex. 1 at 2.  The OIG audit report which contained this particular finding (A-06-01-00053) was issued in March 2002.

Based on that conferral, Department of Justice counsel advised the defense attorneys that the draft memorandum would be tentatively recalled while the document was discussed further with officials at CMS and that a decision whether to formally and finally recall the document based on the deliberative process privilege would be made in advance of the resumption of Mr. Reed's deposition – which all counsel present recognized would not be concluded within the two days that had been allotted for it.

B.  The Government's Election to Refrain from Recalling the Document

Although the document at issue is a pre-decisional draft which lays out options and recommendations that, in final form, would be subject to approval by the Administrator of CMS and is thus patently the type of deliberative communication that the deliberative process privilege protects from disclosure, in this instance the Government has elected not to recall the document in light of the practical considerations which derive from the fact that the document was released generally to all litigants in the MDL in 2004 and also prior to the parties here being subject to the recall provisions in the protective orders entered this year in the transferred *qui tam* cases. Notwithstanding the Government's ultimate decision regarding recall of the draft memorandum, the Government vigorously disputes the contention that the tentative recall asserted at Mr. Reed's deposition militates in any way against the legitimacy of the Government's assertion of the deliberative process privilege for similar documents.

II.   Abbott's Submission Demonstrates that Assertion of
      Deliberative Process Privilege for Draft
      Recommendations Was Well-Advised

The following assertion is at the center of Abbott's Supplemental Submission regarding the draft memorandum and its effect on the agency's consideration of State Plan Amendments:

3

"The document recognizes that CMS had made the decision simply to stop seeking to enforce the EAC [Estimated Acquisition Cost] requirement."  *See* Abbott Supplemental Submission at 6. There are two problems with Abbott's assertion.  First, as a factual matter, it is refuted by the actual content of the draft memorandum.  Second, but more significantly, the assertion demonstrates that Abbott is fundamentally confused about the role that an unsigned, unapproved draft memorandum has in both the articulation and promulgation of agency policy.  A draft document simply does not and cannot establish, or even describe any policy on behalf of a federal agency.  The latter point, which is of greater significance to the objections now under consideration by the Court, will be addressed first.

A.     Pre-decisional Deliberative Documents Do Not Establish Agency
       Policy and Their Release Can and Has Resulted in Confusion

It is black letter law that a statute or regulation should not be "construed on an agency's informal non-public understanding."  *U.S. v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004).  Simply put, a draft document does not and cannot constitute, as Abbott asserts, a "decision" by a federal agency.  Indeed, the concern stated by the Acting Administrator of CMS when explaining her reasons for asserting the deliberative process privilege for draft documents is directly on point:

> It is ... very important to bear in mind that unpublished drafts reflecting the opinions or suggestions of the author(s) and the comments from other CMS staff directed at or relating to those draft documents do not constitute the final position of the agency on any matter unless and until they are embodied or adopted in a final decision by an official with authority to speak for the agency on a given topic or question.  I also believe that the release of documents which contain statements or opinions by personnel which were then rejected or revised during later discussions and the deliberations among agency decision-makers could disrupt and even harm the agency's mission from the dissemination of inaccurate and incomplete information.  **The overarching purpose of all reviews, considerations, and deliberations undertaken by**

4

> **the agency at every level is to ensure that the agency issue final statements regarding its policies and decisions and that they are in accordance with controlling statutes, regulations, and objectives.  Consistent with that purpose the agency must be careful that every statement which it releases accurately articulates the agency's position on any given issue or question.** Effective policy-making requires the consideration of alternative and even competing goals and ways to accomplish the agency's mission.  **The suggestions and alternatives which are the subject of the deliberations should never be confused with actual, final, agency policy or procedure adopted at the conclusion of the deliberations.**

*See* Declaration of Leslie Norwalk, ¶ 17 (emphasis supplied) (Exhibit 5 to United States' Opposition to Defendant Abbott Laboratories, Inc.'s Renewed Motion to Compel Evidence Withheld Under the Deliberative Process Privilege (Doc. 4076)).  Abbott's confusion about the status of the draft memorandum and the statements in Abbott's submission describing "the decision" purportedly reflected in that document demonstrate that the need for caution expressed in the Administrator's declaration was well-founded.

Moreover and significantly, the Government has never instructed a witness not to answer any question about the decisions or policies reflected in final publicly-issued documents.  In fact, Abbott has engaged in extensive questioning of agency personnel regarding final agency decisions to disapprove state plan amendments.  To the extent the fact that the Government temporarily recalled the draft memorandum has any bearing on the objections filed by Abbott relating to the Magistrate's deliberative process privilege decision, Abbott's latest submission militates against overturning that decision given the erroneous assertions stated by Abbott regarding the import and legal effect of the draft memorandum.

B.     Abbott's Description of the Policies Referenced in the Draft
       Memorandum is Refuted by the Actual Content of the Document

As noted above, the content of a draft document from 2002 which makes

recommendations concerning options the agency should consider regarding review of SPAs is

not relevant to the issue of Abbott's liability in this case.  Moreover, the assertions in Abbott's

Supplemental Submission about the document go to issues regarding AWP-based reimbursement

mechanisms which have already been decided by the Court.  That said, the Government believes

it is necessary to correct the record with respect to the actual contents of the draft memorandum.

As noted above, Abbott asserts that the draft document establishes that CMS had

somehow elected to refrain from enforcing the requirement that states use estimated acquisition

cost as a payment limit for drugs covered by the Medicaid program.  This assertion is

inexplicable in light of the actual text of the document.  A fair reading of the *entire* document

shows that its author, based on reports by DHHS's Office of Inspector General, was concerned

about the developing evidence that the actual acquisition costs of both generic and brand name

drugs were well below published AWPs.  *See* Draft Memorandum at 1.  However, there is

nothing in the draft memorandum to suggest that the agency was at that point throwing up its

hands and planning to abandon EAC as a reimbursement criterion.  To the contrary, the author

recommends that CMS continue to make empirical evidence relating to actual prices its primary

focus when reviewing state plans. *See id*. at 2 ("We think the first part of our review should be

continuing to rely on the existing review criteria (i.e. survey and rates in other states").  Indeed,

the "longer-range" consideration noted in the draft memorandum related to broadening the search

for empirical pricing information: "If, in fact, there needs to be another basis, such as nationwide

surveys that can establish these [payment] rates, we need to look at the feasibility and impact of

doing so." *See id.*

The Court already has an in-depth understanding of AWP-based drug payment systems and the use of pricing "spreads" as marketing tools that emerged over time and the Court has made holdings and findings based on that understanding. *See e.g. In re Pharmaceutical Pricing Litigation*, Findings of Fact and Conclusions of Law (6/21/2007). The Court has articulated its understanding of the "opaque" nature of pharmaceutical pricing information for physician-administered drugs such as those sold by Abbott (*id.* at 25), the difficulties in devising payment systems that did not rely on published AWPs (*id.* at 136), and the Government's emerging recognition of the vulnerability of its payment systems and its efforts to develop an alternative "pragmatic pricing methodology" (*id.* at 25-38, 136-137). The recommendations and options described in the draft memorandum – read in its entirety and against the factual backdrop laid out in decisions by the Court over the last year – express a viewpoint and approach entirely consistent with the understanding articulated by the Court.

The proper focus of discovery in this litigation at this time should be the decision-making at Abbott which led to the company's exploitation and abuse of conceptually reasonable, but ultimately vulnerable, payment systems. Abbott's motion for access to non-public deliberative material appears to be another step in its continuing attempt to divert attention and resources from that subject.

For the United States,

MICHAEL J. SULLIVAN                    PETER D. KEISLER
UNITED STATES ATTORNEY                 ASSISTANT ATTORNEY GENERAL

George B. Henderson, II                 /s/ Justin Draycott
Assistant U.S. Attorney                Joyce R. Branda
John Joseph Moakley U.S. Courthouse    Daniel Anderson
Suite 9200, 1 Courthouse Way           Renée Brooker
Boston, MA 02210                       Justin Draycott
Phone: (617) 748-3272                  Gejaa T. Gobena
Fax: (617) 748-3971                    Rebecca A. Ford
                                       Civil Division
R. ALEXANDER ACOSTA                    Commercial Litigation Branch
UNITED STATES ATTORNEY                 P. O. Box 261
SOUTHERN DISTRICT OF FLORIDA           Ben Franklin Station
                                       Washington, D.C.  20044
/s/ Mark A. Lavine                     Phone:  (202) 305-9300
Mark A. Lavine                         Fax: (202) 307-3852
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for
  the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101


Dated: October 10, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above [*PROPOSED*] **MEMORANDUM BY THE UNITED STATES IN RESPONSE TO ABBOTT'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF ITS OBJECTIONS TO MAGISTRATE JUDGE BOWLER'S AUGUST 13, 2007 ORDER** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Justin Draycott

Dated: October 10, 2007                     Justin Draycott