# EXHIBIT J

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL | : | MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | : | CIVIL ACTION |
| PRICE LITIGATION | : | 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | : | |
| U.S. ex rel. Ven-a-Care of | : | Judge Patti B. Saris |
| the Florida Keys, Inc. | : | |
| v. | : | |
| Abbott Laboratories, Inc., | : | Chief Magistrate |
| No. 06-CV-11337-PBS | : | Judge Marianne B. |

- - - - - - - - - - - - - - -x    Bowler

934268fd-66d9-4c40-b8d6-725605bc72fb

## Page 2

```
 1         IN THE CIRCUIT COURT OF
 2         MONTGOMERY COUNTY, ALABAMA
 3  ---------------x
 4  STATE OF ALABAMA,        :
 5      Plaintiff,           :
 6      vs.                  : Case No.: CV-05-219
 7  ABBOTT LABORATORIES, INC.,  : Judge Charles Price
 8  et al.                   :
 9      Defendants.          :
10  ---------------x
11
12  STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
13  ---------------------------X
14  STATE OF WISCONSIN,      : CASE NO.
15      Plaintiff,           : 04-CV-1709
16      v.                   :
17  AMGEN INC., et al.,      :
18      Defendants.          :
19  ---------------------------X
20
21
22
```

## Page 3

```
 1       UNITED STATES DISTRICT COURT
 2         DISTRICT OF MASSACHUSETTS
 3  --------------------------------X
 4  THE COMMONWEALTH OF MASSACHUSETTS : CIVIL ACTION NO
 5      Plaintiff,           : 03-CV-11865-PBS
 6      v.                   :
 7  MYLAN LABORATORIES, INC., et al. :
 8      Defendants.          :
 9  --------------------------------X
10
11       SUPERIOR COURT OF NEW JERSEY
12              UNION COUNTY
13  --------------------------------X
14  CLIFFSIDE NURSING HOME, INC., on : LAW DIVISION
15  behalf of itself and all others  : DOCKET NO.
16  similarly situated, as defined   : UNN-L-2329-04
17  herein,                  :
18      Plaintiffs,          :
19      v.                   :
20  DEY, INC., et al.        :
21      Defendants.          :
22  --------------------------------X
```

## Page 4

```
 1       IN THE COURT OF COMMON PLEAS
 2          FIFTH JUDICIAL CIRCUIT
 3  --------------------------------X
 4  STATE OF SOUTH CAROLINA, and   :  STATE OF
 5  HENRY D. McMASTER, in his official : SOUTH CAROLINA
 6  capacity as Attorney General for  :  COUNTY OF
 7  the State of South Carolina,   :  RICHLAND
 8      Plaintiff,           :
 9      v.                   : CIVIL ACTION NO.
10  WARRICK PHARMACEUTICALS    : 2006-CP-40-4390
11  CORPORATION, et al.        : 2006-CP-40-4399
12      Defendants.          :
13  --------------------------------X
14  STATE OF SOUTH CAROLINA, and   :  STATE OF
15  HENRY D. McMASTER, in his official : SOUTH CAROLINA
16  capacity as Attorney General for  :  COUNTY OF
17  the State of South Carolina,   :  RICHLAND
18      Plaintiff,           :
19      v.                   : CASE NO.
20  ABBOTT LABORATORIES, INC.  : 2006-CP-40-4394
21      Defendant.           :
22  --------------------------------X
```

## Page 5

```
 1       IN THE COURT OF COMMON PLEAS
 2          FIFTH JUDICIAL CIRCUIT
 3  --------------------------------X
 4  STATE OF SOUTH CAROLINA, and   :  STATE OF
 5  HENRY D. McMASTER, in his official : SOUTH CAROLINA
 6  capacity as Attorney General for  :  COUNTY OF
 7  the State of South Carolina,   :  RICHLAND
 8      Plaintiff,           :
 9      v.                   : CIVIL ACTION NO.
10  PAR PHARMACEUTICALS COMPANIES, : 2006-CP-40-7151
11  INC.,                    : 2006-CP-40-7153
12      Defendant.           :
13  --------------------------------X
14  STATE OF SOUTH CAROLINA, and   :  STATE OF
15  HENRY D. McMASTER, in his official : SOUTH CAROLINA
16  capacity as Attorney General for  :  COUNTY OF
17  the State of South Carolina,   :  RICHLAND
18      Plaintiff,           :
19      v.                   : CIVIL ACTION NO.
20  MYLAN LABORATORIES INC.,   : 2007-CP-40-0282
21      Defendant.           : 2007-CP-40-0283
22  --------------------------------X
```

2 (Pages 2 to 5)

934268fd-66d9-4c40-b8d6-725605bc72fb

```
                                          Page 6                                              Page 8
 1        IN THE COURT OF COMMON PLEAS             1      IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
 2            FIFTH JUDICIAL CIRCUIT               2              STATE OF MISSOURI
 3   ---------------------------------X            3   - - - - - - - - - - - - - - - - x
 4   STATE OF SOUTH CAROLINA, and    :  STATE OF   4   STATE OF MISSOURI, ex rel,     :
 5   HENRY D. McMASTER, in his official : SOUTH CAROLINA 5 JEREMIAH W. (JAY) NIXON,   :
 6   capacity as Attorney General for  :  COUNTY OF 6   Attorney General,             :
 7   the State of South Carolina,   :   RICHLAND   7   and                            :
 8          Plaintiff,           :                 8   MISSOURI DEPARTMENT OF SOCIAL  :
 9       v.                 :  CIVIL ACTION NO.    9   SERVICES, DIVISION OF MEDICAL  : Case No.
10   BARR PHARMACEUTICALS, INC.      : 2007-CP-40-0280 10  SERVICES,                  : 054-1216
11          Defendant.         : 2007-CP-40-0286   11         Plaintiffs,      : Division No. 31
12   ---------------------------------X           12       vs.                 :
13                                                13   DEY INC., DEY, L.P., MERCK KGaA, :
14       IN THE CIRCUIT COURT OF THE FIRST CIRCUIT 14  EMD, INC., WARRICK             :
15              STATE OF HAWAII                   15   PHARMACEUTICALS CORPORATION,   :
16   ---------------------------------X           16   SCHERING-PLOUGH CORPORATION, and :
17   STATE OF HAWAII,           :  CASE NO.       17   SCHERING CORPORATION,          :
18          Plaintiff,       : 06-1-0720-04 EEH   18          Defendants.           :
19       v.                :                      19   - - - - - - - - - - - - - - - - x
20   ABBOTT LABORATORIES, INC., et al. : JUDGE EDEN 20
21          Defendants.      : ELIZABETH HIFO     21
22   ---------------------------------X           22

                                          Page 7                                              Page 9
 1       IN THE COURT OF THE SECOND JUDICIAL CIRCUIT 1          COMMONWEALTH OF KENTUCKY
 2          IN AND FOR LEON COUNTY, FLORIDA        2        FRANKLIN CIRCUIT COURT - DIV. II
 3   THE STATE OF FLORIDA                          3   ---------------------------------X
 4   ex rel.                                       4   COMMONWEALTH OF KENTUCKY,    : CIVIL ACTION NO.
 5   - - - - - - - - - - - - - - - - x             5          Plaintiff,     : 03-CI-1134
 6   VEN-A-CARE OF THE FLORIDA    :                6        v.             :
 7   KEYS, INC., a Florida      :                  7   ABBOTT LABORATORIES, INC., et al. :
 8   Corporation, by and through its :             8          Defendants.          :
 9   principal officers and directors, :           9   ---------------------------------X
10   ZACHARY T. BENTLEY and       :               10
11   T. MARK JONES,            :                  11          COMMONWEALTH OF KENTUCKY
12         Plaintiffs,      :                     12        FRANKLIN CIRCUIT COURT - DIV. I
13       vs.                :  Civil Action       13   ---------------------------------X
14   MYLAN LABORATORIES INC.; MYLAN  : No.: 98-3032G 14 COMMONWEALTH OF KENTUCKY, ex rel. : CIVIL ACTION NO.
15   PHARMACEUTICALS INC.; NOVOPHARM : Judge: William 15 GREGORY D. STUMBO, Attorney General: 04-CI-1487
16   LTD., SCHEIN PHARMACEUTICAL, INC.;:   L. Gary 16         Plaintiff,       :
17   TEVA PHARMACEUTICAL INDUSTRIES  :            17        v.             :
18   LTD., TEVA PHARMACEUTICAL USA;  :            18   ALPHAPHARMA, INC., et al.   :
19   and WATSON PHARMACEUTICALS, INC., :          19          Defendants.         :
20         Defendants.       :                    20   ---------------------------------X
21   - - - - - - - - - - - - - - - - x            21              Washington, D.C.
22                                                22              Tuesday, May 15, 2007
```

                                                                    3 (Pages 6 to 9)

934268fd-66d9-4c40-b8d6-725605bc72fb

Page 10

1     Videotaped Deposition of THOMAS A.
2  SCULLY, a witness herein, called for examination by
3  counsel for Abbott Laboratories in the above-entitled
4  matter, pursuant to subpoena, the witness being duly
5  sworn by SUSAN L. CIMINELLI, a Notary Public in and
6  for the District of Columbia, taken at the offices of
7  Jones Day, 51 Louisiana Avenue, Northwest,
8  Washington, D.C., at 8:49 a.m. on Tuesday, May 15,
9  2007, and the proceedings being taken down by
10 Stenotype by SUSAN L. CIMINELLI, CRR, RPR, and
11 transcribed under her direction.

Page 11

1  APPEARANCES:
2
3     On behalf of the United States of America:
4         GEJAA T. GOBENA, ESQ.
5         JOHN K. NEAL, ESQ.
6         ANDREW MAO, ESQ.
7         U.S. Department of Justice
8         Civil Division
9         601 D Street, Northwest
10        PHB - 9028/P.O. Box 261
11        Washington, D.C. 20044
12        Gejaa.Gobena@usdoj.gov
13        (202) 307-1088

Page 12

1  APPEARANCES (continued):
2
3     On behalf of the U.S. Department of
4     Health and Human Services:
5         TROY A. BARSKY, ESQ.
6         U.S. Department of Health and Human Services
7         CMS Division
8         C2-05-23
9         7500 Security Boulevard
10        Baltimore, MD  21244-1850
11        (410) 786-8873
12        troy.barsky@hhs.gov
13
14    On behalf of the State of California:
15        NICHOLAS N. PAUL, ESQ.
16        Supervising Deputy Attorney General
17        Civil Prosecutions Unit
18        P.O. Box 85266
19        110 West A Street, #1100
20        San Diego, CA  82186
21        (619) 688-6099
22        nicholas.paul@doj.ca.gov

Page 13

1  APPEARANCES (continued):
2
3     On behalf of the State of Alabama:
4         ROGER BATES, ESQ.
5         Hand Arendall, L.L.C.
6         1200 Park Place Tower
7         2001 Park Place North
8         Birmingham, AL  35203
9         (205) 502-0105
10        Rbates@handarendall.com
11
12    On behalf of the State of Florida:
13        MARY S. MILLER, ESQ.
14        Office of the Attorney General of Florida
15        PL-01, The Capitol
16        Tallahassee, FL 32399-1050
17        (850) 414-3600
18        Mary_Miller@oag.state.fl.us

4 (Pages 10 to 13)

934268fd-66d9-4c40-b8d6-725605bc72fb

Scully, Thomas A.                                              May 15, 2007
                        Washington, DC

Page 358

```
 1   there was a carveout.  If it was, they probably
 2   carved it out for the reasons I discussed because
 3   there was no dispensing fee.
 4       Q.   Because of what?
 5       A.   I'm assuming if there is a carveout for
 6   home infusion drugs, it was done largely for that
 7   reason.
 8       Q.   Because there was no dispensing fee is
 9   that what you said?
10       A.   But I was not aware of that until you
11   showed it to me.  If I was -- I may have been aware
12   at the time, but I had forgotten.  It's not something
13   that I discussed widely with the staff at the time.
14           MR. GOBENA:  I'm going to object to this
15   line of questioning, to the extent you're saying
16   there was a carveout beyond December 31st, 2004.  If
17   you look at the second page, it covers the time
18   period for which this memorandum is operative.
19           BY MR. DALY:
20       Q.   When did you leave?
21       A.   January 4th was my last day, 2004.
22       Q.   That's when you left CMS.  Correct?
```

Page 359

```
 1       A.   Yes.  I believe that's the right final
 2   day.
 3       Q.   And if you look at the, if you look at the
 4   attachments, there is the addendum F, which is the
 5   list of drugs, are you saying you have no
 6   recollection of this during your tenure with CMS?
 7       A.   It's vaguely coming back to me that we did
 8   some carveouts for blood -- for clotting factors.  I
 9   wasn't aware we did it for home infusion drugs.  If
10   there is a home infusion carveout in the bill, I have
11   just forgotten it.  There may have been.  I knew we
12   did one for clotting factors, and just looking at
13   this rule, it was largely Senator Grassley's staff
14   that was doing this.  So I should be aware of it, but
15   I just -- was it a one-year provision or a permanent
16   one?  I just don't remember.
17       Q.   Well, I mean, I think this thing changed
18   over time, but certainly this is talking about it
19   being in effect for -- effective January 1, 2004
20   according to the addendum.
21       A.   Yes.
22           MR. GOBENA:  Through December 31, 2004.
```

Page 360

```
 1           BY MR. DALY:
 2       Q.   Well, at least for a year.
 3       A.   I think there was a one-year transition
 4   for a few things.  I just don't remember which --
 5   clotting factor, I know, was one.  If we did it for
 6   home infusion drugs, I forgot.
 7       Q.   And it would appear based on Exhibit
 8   Abbott 193 that it was also at least a one-year
 9   carveout for infusion drugs that are delivered
10   through DME, correct?
11           MR. GOBENA:  Object to the form.
12           THE WITNESS:  If I remember for that
13   entire one year, we also had 85 percent of AWP.  We
14   didn't get ASP plus 6 until a year later either.
15           BY MR. DALY:
16       Q.   Right.
17       A.   Right?  So there was a one-year modest cut
18   from AWP and then a transition to ASP plus 6, right?
19       Q.   I believe that was the sequence.  And so
20   for this first year, according to this, these drugs
21   issued in a home care setting through a DME, durable
22   medical equipment, would stay at 95 percent of AWP
```

Page 361

```
 1   for the reimbursement, correct?
 2       A.   As the clotting factor and the rest went
 3   to 85?  You remember -- I had forgotten, but I guess
 4   that's right.
 5       Q.   Okay.  And that would be with knowledge
 6   that the ASP for these drugs was much lower than 95
 7   percent of AWP, correct?
 8           MR. GOBENA:  Object to the form.
 9           THE WITNESS:  Obviously, I don't have a
10   great recollection of this particular issue and how
11   it was treated legislatively.  It was not -- it was
12   not one of the top 200 issues I was dealing with.
13           BY MR. DALY:
14       Q.   But you knew, for example, that -- you
15   know, I think you use it in your -- as an example in
16   some of your testimony, that the AWP for Vancomycin,
17   for example, was higher than the ASP for Vancomycin,
18   correct?
19       A.   Yes.
20       Q.   And so if this exception was going to
21   treat Vancomycin and allow it to be reimbursed at 95
22   percent, it would -- of AWP, it would be, that would
```

                                       91 (Pages 358 to 361)

Henderson Legal Services
202-220-4158

934268fd-66d9-4c40-b8d6-725605bc72fb

Scully, Thomas A.  May 15, 2007
Washington, DC

Page 362

1  be a level that was much higher than the ASP for
2  Vancomycin, correct?
3       MR. GOBENA: Objection. Form. Also going
4  to object to the previous question. I didn't get a
5  chance to get in there. Object to the form on that.
6  You can answer the question.
7       THE WITNESS: Yes. My guess would be
8  obviously it was a transition for one year to 85
9  percent of AWP for all drugs, 95 percent for clotting
10 factor and some other drugs. And I'm sure they
11 didn't go through drug by drug and look at the
12 margins. I assume there were other home health
13 infusion drugs, for which they felt the margins for
14 that one year may have been sensitively narrow, and
15 so they kept it at 95 percent.
16      I'm just guessing -- just remember, my
17 testimony for Vancomycin, the spread was pretty big
18 and there probably wasn't a whole lot of worry about
19 85 percent not being big enough to cover it, so it's
20 probably not the reason that drove the policy.
21      (Exhibit Abbott 194 was
22      marked for identification.)

Page 363

1       BY MR. DALY:
2   Q.  And Mr. Scully, I've handed you what the
3  court reporter has marked as Exhibit Abbott 194,
4  which is a copy of at least portions of the MMA
5  itself. And I would ask you to turn to page 23 of
6  that document. And you had asked whether this was a
7  carveout in the legislation itself, and I just want
8  to direct you to page 23 at the bottom, subparagraphs
9  D-1 and 2.
10  A.  Okay.
11  Q.  And does that appear to be the legislative
12 carveout for the rule that we were just looking at?
13  A.  Refreshing my memory, I had forgotten we
14 did that. Yes.
15      MR. GOBENA: While Mr. Daly is getting his
16 exhibit out, I'll note the first page, it says that
17 this piece of legislation was effective December 8,
18 2003 to December 31, 2004.
19      MR. DALY: Anything else you want to point
20 out?
21      THE WITNESS: Yes. This was a one-year
22 transition. It went to ASP plus 6 in 2004, is that

Page 364

1  right?
2       BY MR. DALY:
3   Q.  I believe that's right.
4       (Exhibit Abbott 195 was
5       marked for identification.)
6       THE WITNESS: Good heavy one. I can take
7  care of the rest of those if you like.
8       BY MR. DALY:
9   Q.  And you mentioned that, you know, this
10 might have been a one-year carveout. And Mr. Gobena
11 seems anxious to point that out. Taking a look at
12 Exhibit Abbott 195, which I've handed you, this is
13 certain amendments that went into effect with respect
14 to the MMA effective December 20, 2006. Do you see,
15 do you see that?
16  A.  Yes.
17  Q.  And if you would turn to page 21 of this
18 document, and subparagraphs D-1 and D-2. Do you see
19 that the carveout that we identified that was in
20 effect for 2004 remains in effect today?
21      MR. GOBENA: Object to the form. Excuse
22 me.

Page 365

1       THE WITNESS: Yes. I wasn't aware of
2  that, so there is still -- they're still 95 percent
3  of AWP today?
4       BY MR. DALY:
5   Q.  That's what the statute says, isn't it?
6   A.  Yes. I wasn't aware of that. That's what
7  the statute says.
8       MR. BREEN: Just for clarification,
9  Mr. Daly, are you referring to subparagraph D little
10 I, which ends with 95 percent of the average
11 wholesale price for such drug in effect on October 1,
12 2003?
13      MR. DALY: And D-2.
14      MR. BREEN: Say again?
15      MR. DALY: And the next paragraph, D
16 Romanette i and D Romanette ii.
17      THE WITNESS: Until they froze it at the
18 date of passage, October -- they picked the -- 95
19 percent of the AWP in place in October 2003, and
20 froze it. I had forgotten that.
21      BY MR. DALY:
22  Q.  And so at least for the drugs that are

92 (Pages 362 to 365)

Henderson Legal Services
202-220-4158

934268fd-66d9-4c40-b8d6-725605bc72fb