# EXHIBIT L



**DEPARTMENT OF HEALTH & HUMAN SERVICES**  Health Care Financing Administration

**NOV 2 1 2000**

The Administrator
Washington, D.C. 20201

The Honorable Pete Stark
House of Representatives
Washington, DC 20515

Dear Mr. Stark:

I am responding to your letter to Nancy-Ann Min DeParle concerning the average wholesale price (AWP) of a pharmaceutical manufactured by Nycomed Amersham (Amersham). I regret the delay in this response.

In your letter, you ask that the Health Care Financing Administration (HCFA) take immediate action to address an issue raised by the DuPont Pharmaceuticals Company (DuPont) in a July 14, 2000, letter to Ms. DeParle. In that July 14 letter, which you enclose, DuPont showed that Amersham increased the 2000 AWP for technetium tc99m tetrofosmin (Myoview) by 31 percent relative to the 1999 AWP. Technetium Tc99 tetrofosmin competes with technetium Tc sestamibi (Cardiolite), a product made by DuPont.

Both drugs are used in hospital outpatient settings. By statute, under the newly implemented hospital outpatient prospective payment system (OPPS), Medicare pays hospitals 95 percent of the AWP for these drugs. Thus, when a drug manufacturer raises the AWP, the price increase is automatically reflected in Medicare payments to hospitals as well as in Medicare beneficiary coinsurance payments, irrespective of whether the price actually paid by the hospital also increases.

Because the statutory payment formula is based on the AWP, which many studies have shown to be susceptible to manipulation by manufacturers, manufacturers can create incentives for hospitals to use certain drugs. For example, a manufacturer can increase the AWP for Drug A without affecting the actual price paid by hospitals. In such a situation, a hospital would gain financially because Medicare's payment, by statute, would automatically increase for Drug A. Thus, as you note in your letter, the hospital could have an incentive to use that drug as opposed to a competing drug, Drug B, whose AWP was not increased by its manufacturer. This would leave Drug B at a competitive disadvantage relative to Drug A. DuPont asserts that because of Amersham's actions, it now finds itself in such a situation. Consequently, DuPont asked that HCFA use the 1999 published AWP for Myoview instead of the 2000 AWP that we have used for all drugs under the OPPS.

Our longstanding practice has been to use the most recent AWP in determining payment rates for drugs. To change our current practice, we would most likely have to do so through the notice and comment process; that is, propose a change, review comments, and issue a final rule. Therefore, we cannot use the 1999 AWP for Myoview while using 2000 average wholesale prices for all

HHC003-0405

Page 2 - The Honorable Pete Stark

other drugs under the OPPS. However, as you know, we have been actively working to address drug payment issues, both legislatively and through administrative actions, for many years.

This Administration has repeatedly proposed legislation to Congress to change the manner in which outpatient drugs are paid. In 1997, HCFA proposed that payments in settings other than outpatient hospital departments would be based on actual acquisition costs, but Congress enacted legislation to pay 95 percent of the AWP instead. Knowing that such a policy would correct only a small fraction of the excessive payments, HCFA once again proposed actual acquisition costs in 1998. Congress let the 95 percent of the AWP stand. With so far to go, and believing that Congress would not abandon AWP, in 1999 and again in 2000, HCFA proposed that outpatient drugs be paid at a rate of 83 percent of the AWP. Yet, Congress has not made any changes to the reimbursement rate of 95 percent of AWP to date.

Further, the Balanced Budget Refinement Act of 1999 extended the effects of this system to drugs and radiopharmaceuticals receiving pass-through payments under OPPS. Prior to OPPS, Medicare payment for drugs furnished in hospital outpatient departments was based on reasonable costs. Because OPPS now requires pass-through payments for certain drugs and radiopharmaceuticals, we make an additional payment above and beyond reasonable costs so that in the end, hospitals also receive 95 percent of AWP for certain drugs and radiopharmaceuticals in the outpatient setting.

We are reviewing the specific issue you raise. We have had discussions about this issue with representatives from Amersham and DuPont over the past several months. We are continuing to gather additional information and will take appropriate action based upon the results of these discussions. We will keep you informed of any actions we take.

We agree that Medicare beneficiaries and taxpayers should not be forced to pay excessive prices for drugs. Achieving reductions in inflated drug prices is a priority, and we stand ready to work with Congress to achieve this important goal. We look forward to continuing our work with you and other Members of Congress to meet the needs of Medicare beneficiaries and the taxpayers.

Sincerely,

Michael M. Hash
Acting Administrator