# EXHIBIT P

Vladeck, Ph.D., Bruce C.                                        May 4, 2007
                              New York, NY

Page 1

```
         UNITED STATES DISTRICT COURT

       FOR THE DISTRICT OF MASSACHUSETTS

----------------------------------X  MDL NO. 1456

IN RE:  PHARMACEUTICAL INDUSTRY   :  CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION : 01-CV-12257-PBS

----------------------------------X

THIS DOCUMENT RELATES TO:         :

U.S. ex rel. Ven-A-Care of the    :  CIVIL ACTION:

Florida Keys, Inc. v. Abbott      :  06-CV-11337-PBS

Laboratories, Inc.                :

----------------------------------X


         IN THE CIRCUIT COURT OF

        MONTGOMERY COUNTY, ALABAMA

----------------------------------X

STATE OF ALABAMA,                 :  CASE NO.

        Plaintiff,                :  CV-05-219

    v.                            :

ABBOTT LABORATORIES, INC.,        :  JUDGE

et al.,                           :  CHARLES PRICE

        Defendants.               :

----------------------------------X
```

a005168d-477f-4afb-97fe-d27a3af7b9a9

Vladeck, Ph.D., Bruce C.                                         May 4, 2007
                                New York, NY

|  | Page 2 |
|---|---|
| 1 | STATE OF WISCONSIN    CIRCUIT COURT    DANE COUNTY |
| 2 | ----------------------------------X |
| 3 | STATE OF WISCONSIN,            : CASE NO. |
| 4 |      Plaintiff,           : 04-CV-1709 |
| 5 |   v.                      : |
| 6 | AMGEN INC., et al.,            : |
| 7 |      Defendants.          : |
| 8 | ----------------------------------X |
| 9 |  |
| 10 |       IN THE COURT OF COMMON PLEAS |
| 11 |          FIFTH JUDICIAL CIRCUIT |
| 12 | ----------------------------------X |
| 13 | STATE OF SOUTH CAROLINA, and   :    STATE OF |
| 14 | HENRY D. McMASTER, in his official :  SOUTH CAROLINA |
| 15 | capacity as Attorney General for  :    COUNTY OF |
| 16 | the State of South Carolina,   :    RICHLAND |
| 17 |      Plaintiff,           : |
| 18 |   v.                 : CIVIL ACTION: |
| 19 | MYLAN LABORATORIES, INC.       : 07-CP-40-0283 |
| 20 |      Defendant.           : |
| 21 | ----------------------------------X |
| 22 |  |

|  | Page 4 |
|---|---|
| 1 | IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS |
| 2 |          STATE OF MISSOURI |
| 3 | ------------------x |
| 4 | STATE OF MISSOURI, ex rel.,    : |
| 5 | JEREMIAH W. (JAY) NIXON,       : |
| 6 | Attorney General,              : |
| 7 | and                            : |
| 8 | MISSOURI DEPARTMENT OF SOCIAL  : |
| 9 | SERVICES, DIVISION OF MEDICAL  : Case No.: |
| 10 | SERVICES,                    : 054-1216 |
| 11 |      Plaintiffs,    : Division |
| 12 |                     : No. 31 |
| 13 |    vs.              : |
| 14 | DEY INC., DEY, L.P., MERCK KGaA,  : |
| 15 | EMD, INC., WARRICK             : |
| 16 | PHARMACEUTICALS CORPORATION,   : |
| 17 | SCHERING-PLOUGH CORPORATION, and  : |
| 18 | SCHERING CORPORATION,          : |
| 19 |      Defendants.    : |
| 20 | ------------------x |
| 21 |  |
| 22 |  |

|  | Page 3 |
|---|---|
| 1 |    IN THE COURT OF THE SECOND JUDICIAL CIRCUIT |
| 2 |       IN AND FOR LEON COUNTY, FLORIDA |
| 3 | THE STATE OF FLORIDA |
| 4 | ex rel. |
| 5 | -----------------x |
| 6 | VEN-A-CARE OF THE FLORIDA     : |
| 7 | KEYS, INC., a Florida         : |
| 8 | Corporation, by and through its   : |
| 9 | principal officers and directors,  : |
| 10 | ZACHARY T. BENTLEY and         : |
| 11 | T. MARK JONES,                 : |
| 12 |        Plaintiffs,    : |
| 13 |    vs.         : Civil Action |
| 14 | MYLAN LABORATORIES, INC.; MYLAN    : No.: 98-3032G |
| 15 | PHARMACEUTICALS INC.; NOVOPHARM   : Judge: |
| 16 | LTD., SCHEIN PHARMACEUTICAL, INC.; : William L. |
| 17 | TEVA PHARMACEUTICAL INDUSTRIES    : Gary |
| 18 | LTD., TEVA PHARMACEUTICAL USA;    : |
| 19 | and WATSON PHARMACEUTICALS, INC.  : |
| 20 |        Defendants.    : |
| 21 | -----------------x |
| 22 |  |

|  | Page 5 |
|---|---|
| 1 |          New York, New York |
| 2 |          Friday, May 4, 2007 |
| 3 |  |
| 4 |  |
| 5 |     Videotaped Deposition of BRUCE C. |
| 6 | VLADECK, Ph.D., a witness herein, called for |
| 7 | examination by counsel for Abbott Laboratories in |
| 8 | the above-entitled matter, pursuant to Subpoena, |
| 9 | the witness being duly sworn by JOMANNA DEROSA, a |
| 10 | Notary Public in and for New York, taken at the |
| 11 | offices of Jones Day, 222 East 41st Street, New |
| 12 | York, New York, at 8:38 a.m. on Friday, May 4, |
| 13 | 2007, and the proceedings being taken down by |
| 14 | Stenotype by JOMANNA DEROSA, and transcribed under |
| 15 | her direction. |
| 16 |  |
| 17 |  |
| 18 |  |
| 19 |  |
| 20 |  |
| 21 |  |
| 22 |  |

                                                   2 (Pages 2 to 5)

Vladeck, Ph.D., Bruce C.  May 4, 2007
New York, NY

Page 190

1  were unable to change it.
2         Again, whether that was a matter of law
3  or a matter of political judgment, whether I was
4  clear then, I'm not clear now, but it was
5  certainly a source of very great frustration to
6  me that we continued to pay what I believed was
7  excessive amounts for the drugs.
8     Q.  And so, "choose" was a bad choice of
9  words?
10    A.  Yes.
11    Q.  Okay.  Did not, in fact, change the way
12 in which it reimbursed it, for several reasons?
13        MS. BROOKER:  Objection.  Form.
14    A.  Those methods were not, in fact,
15 changed until 2004, I believe.
16    Q.  You indicated that political
17 considerations were one of the bases -- let me
18 rephrase that.
19        You indicated the political pressures
20 were one of the reasons why the methodology was
21 not changed.  Correct?
22    A.  I did, yes.  That's correct.

Page 191

1     Q.  And it's possible that legislative
2  impediments were one of the reasons why the
3  methodology was not changed.  Correct?
4         MS. BROOKER:  Objection.  Form.
5     A.  Again, I would -- I would restate it.
6  What I was trying to say was that we believed
7  that -- there's sort of two parts to this -- that
8  any effort to change it through any mechanism
9  would create political objections and might well
10 prevent us from moving forward.  Some of those
11 barriers might have been legislative, but whether
12 we actually required legislation to make changes,
13 again, is something I'm a little bit unclear
14 about.
15    Q.  It is fair to say that one of -- it was
16 not a reason for the lack of a change in
17 methodology that you were relying upon average
18 wholesale price to represent an average of
19 acquisition prices?
20        MS. BROOKER:  Objection.  Form.
21    A.  Please restate that.
22    Q.  You're right.  That has way too many

Page 192

1  negatives in it.  I'm not even going to try to
2  clean that one up.  I apologize.
3         You had communications with Congress
4  during this time period about the issue of
5  Medicare Part B reimbursement for prescription
6  drugs?
7     A.  I don't know the extent to which I did
8  personally, but certainly at the staff level
9  there was continual conversation about this
10 issue.
11    Q.  Do you know the extent to which the
12 facts underlying these policy decisions were
13 communicated by your staff to Congress?
14        MS. BROOKER:  Objection.  Form.
15    A.  I don't know the extent to which I am a
16 reliable source of information in this regard,
17 but it is my perception, again, that the general
18 sense of a 15, 20 percent spread between average
19 wholesale price and actual acquisition or actual
20 market cost was very widespread within the policy
21 community in Washington, so that the
22 Congressional staff and the HCFA staff and other

Page 193

1  HHF staff and, frankly, industry representatives,
2  would have all seen the same documents, would all
3  have shared the same sort of gossip and
4  perceptions.
5         In addition to which certainly at the
6  time of the President's speech, I'm almost
7  certain in 1996, and it's possible in 1995 there
8  were official savings estimates from OMB and the
9  Congressional budget office of what an adoption
10 of, say, a proposal to go to 85 percent of AWP
11 would save the Medicare program.
12        So, there were numbers, quantitative
13 estimates, of the effect of this change that were
14 blessed by the official numbers blessers, so
15 there was sort of a common set of parlance
16 expectation and understanding about the magnitude
17 of these issues.
18    Q.  And from -- you mentioned political
19 pressures that -- that prevented changes, and a
20 change to methodology.
21        From where did those political
22 pressures come, in your experience?

49 (Pages 190 to 193)

Henderson Legal Services
202-220-4158

a005168d-477f-4afb-97fe-d27a3af7b9a9