# EXHIBIT 4, PART 1

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number:  202/879-5562
dstorborg@jonesday.com

JP259120:ber
080024-024348

August 10, 2006

VIA HAND DELIVERY

Gejaa Gobena
Patrick Henry Building
601 D Street, NW
Room 9028
Washington, DC 20004

Re:   U.S. ex rel. Ven-A-Care of the Florida Keys, et al. v. Abbott Laboratories, Inc. et al.

Dear Gejaa:

Accompanying this letter are the following documents served pursuant to Rule 26(a):

- Three DVDs labeled ABT-DOJ 0000026 – ABT-DOJ 0185464. These DVDs include TIFF images of documents produced by Abbott in various AWP cases;

- Three CD-ROM's containing documents labeled ABT-DOJ 0197803 – ABT-DOJ 0224819, which were produced by Abbott in various AWP cases;

- One CD-ROM containing electronic documents and e-mails labeled ABT-DOJ-E 0000001 – ABT-DOJ-E 0008371 produced by Abbott in various AWP cases; and

- Five and a half boxes of paper documents labeled ABT-DOJ 0185465 – ABT-DOJ 0197802.  These documents consist of deposition transcripts of Abbott witnesses from other AWP cases (ABT-DOJ 0187092 – ABT-DOJ 0190430), documents produced by Abbott in the West Virginia AG AWP case (ABT-DOJ 0191193 – ABT-DOJ 0197802), and documents produced by Abbott in other AWP cases (ABT-DOJ 0185465 – ABT-DOJ 0187091; ABT-DOJ 0190431 – ABT-DOJ 0191192).

**4-1**

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Gejaa Gobena
August 10, 2006
Page 2

Where possible, we have included a bates number reference to other cases.  In addition, these documents have been designated confidential as appropriate in accordance with the protective order entered in *In Re: Pharmaceutical Industry Average Wholesale Price Litigation,* MDL No. 1456.  While we have agreed to discuss possible modifications to that Order, this information should be treated in accordance with the Order, which currently governs the parties obligations in this case.

Sincerely,

David S. Torborg

Enclosures

cc:     James J. Breen
        Mark A. Lavine
        James R. Daly
        R. Christopher Cook
        Tina M. Tabacchi



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*                                              *Telephone: (202) 616-3797*
*Ninth Floor*                                                       *Telecopier: (202) 616-3085*
*Washington, D.C. 20004*

December 22, 2006

*Via Electronic Transmission*

Jason G. Winchester
77 West Wacker
Chicago, Illinois  60601-1692

R. Christopher Cook
Jones Day
51 Louisiana Ave., N.W.
Washington, DC 20001-2113

Re:     *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* MDL No.
      1456/Civil Action No. 01-12257-PBS

Dear Messrs:

      This letter is to memorialize the discussions held on December 15, 18, and 19 concerning the United States' First Request for the Production of Documents to Abbott, and to respond to your letter of December 21, 2006 regarding the same.

      "Non-Subject Drugs"[1] Relevance Objection.  Abbott stated that it "will not produce documents that relate exclusively to drugs that are not the Subject Drugs" (unless it's a document regarding an HPD drug that relates to marketing the spread or manipulating AWP.)  See Abbott Response to U.S. First RFPs, Gen'l Obj. # 9.  As we stated, these materials are relevant, or reasonably calculated to lead to the discovery of admissible evidence, for at least the following

---

     [1]Abbott refers to drugs not specifically identified in Exhibit A to the Complaint as the "non-subject drugs".  We will use that term in this letter for ease, notwithstanding our position that the marketing conduct allegations in the Complaint are not limited to the specific drugs mentioned in the Complaint.

**4-3**

-2-

reasons. First, Abbott's sale of drugs on which there is no spread or no AWP manipulation may very well constitute evidence in our case, if for example, it demonstrated that Abbott only engaged in spread manipulation in certain defined situations. Second, as you confirmed on our call, Abbott claims in this litigation that it does not report, advertise, publish, or cause to be published, directly or indirectly, the average wholesale price for *any* of its drugs. See, e.g., Abbott Response to U.S. First RFP, Objs. to Defin. #3 & #7. Third, Abbott claims in this litigation that it has "no role [in the] 'creation or existence' of any so-called spread". See e.g., Abbott Response to U.S. First RFP #4. We know from even the evidence we have to date that these assertions are untrue. At the least, we are entitled to explore both of these contentions through discovery of information relevant to Abbott's marketing of drugs which are not specifically identified in the Complaint. As you know, we are not insisting upon discovery of every one of the thousands of products sold by Abbott. Our quite reasonable starting point is that we are at a minimum entitled to discovery regarding drugs not mentioned specifically in the Complaint when the burden on Abbott is relatively inconsequential, as is the case when the documents have already been produced to other parties.

Plaintiffs' Request for CMO-5 Materials. Abbott has acknowledged that it has produced materials in numerous other AWP-related matters.[2] Please let us know in what other AWP-related litigation and investigations Abbott has produced materials or plans to produce materials. We are trying to secure Abbott's compliance with the United States' First Request For Production, and also coordinate discovery between the various cases and investigations directed at Abbott's conduct regarding AWP. In large part, our efforts are directed at managing discovery in an efficient, fair, and expeditious manner.

In order to ease the burden of the production of relevant materials related to Abbott's marketing of its drugs, and to expedite the discovery process in this case, the United States and Relator have repeatedly requested since the commencement of discovery that Abbott provide

---

[2]Abbott produced documents in these AWP-related matters: (1) *State of West Virginia v. Warrick Pharmaceuticals Corp., et al.*, Case No. 01 -C-3011, Circuit Court of Kanawha County, WV; (2) *Peralta v. Abbott Laboratories Inc.*, Case No. BC 259587, Superior Court for the State of California, Los Angeles County; (3) *State of Nevada v. Abbott Laboratories Inc., et al.*, Case No. CV-N-02-0080-ECR-RAM, Second Judicial District Court, Washoe County, NV; (4) *Commonwealth of Kentucky v. Abbott Laboratories Inc.*, Civil Action No. 03-CI-1134, Franklin Circuit Court, KY; (5) Commonwealth of Pennsylvania, filed in March 2004 in the Commonwealth Court of Pennsylvania; (6) *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc., et al.*, Cause No. GV401286, District Court, Travis County, TX ; (7) *State of Wisconsin v. Abbott Laboratories Inc., et al.*, Case No. 04 CV 1709 Unclassified- Civil: 30703, Circuit Court of Dane County, WI; (8) *Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc., et al.*, No. 21 2 MD 2004, Commonwealth Court of Pennsylvania; and, (9) *In re Pharmaceutical Industry Average Wholesale Price Litigation (MDL 1456)* Civil Action No. 01-CV-12257 PBS, D. Mass, including actions transferred to MDL 1456.

**4-4**

-3-

copies of the identical sets of materials it has previously produced in other AWP-related litigation and investigations. See e.g., U.S. First RFP #2. In the alternative, to eliminate altogether the burden of Abbott re-copying any materials or CD-Roms on several of the prior productions, we offered Abbott the option of allowing us to obtain these materials from Relator and/or other Plaintiffs under the terms of the Protective Order in this case. We believe our request is non-controversial, non-objectionable and required by the Court under CMO No. 5, ¶¶2(a) & (b).[3]

Abbott has refused to provide us an identical set of copies, and has refused to allow us to obtain the same from other Plaintiffs to AWP litigation that have already received these materials. Abbott's sole objection is relevance. We have stated why these materials are relevant, or reasonably calculated to lead to the discovery of admissible evidence. The parties agree that there is little to no burdensomeness to Abbott's production of these materials. Abbott has already provided these materials to numerous other litigants. The idea that the materials can be made available to private litigants but not to the United States is insupportable. We ask that Abbott provide the same electronic copy (with the same Bates-stamped numbers from the respective cases) to us under the terms of the Protective Order entered in this MDL proceeding, which we are entitled to receive since the materials are relevant to this case and responsive to our document requests. If Abbott wants to reduce the burdensomeness of this request to zero in many cases, it always has the option to allow plaintiffs in the other matters to simply provide the copies to us. However, any production in this case is subject to the terms of this Court's Protective Order.

Abbott's Counter-Proposal. As you know, the Relator in this case is also the Plaintiff-Relator in the Texas AWP case. In order to avoid providing the United States direct access to all of the documents Abbott produced to Relator and Texas in the Texas AWP litigation, Abbott offers to provide us a list that compares the Bates numbers of documents it produced in Texas to the Bates numbers of documents that it claims we already have in this case (i.e., a cross-walk). The offer of a cross-walk is as a result of Abbott's attempts to sustain the position described above. While we gladly accept Abbott's cross-walk of Bates numbers between cases because it may assist with expediting some discovery, that solution alone is insufficient. First, the cross-walk you offer only relates to Texas documents. Second, it would take an unnecessarily lengthy period of time for the United States and Relator to reconcile the productions on case by case basis. The discovery clock that you have insisted upon is ticking, and we still are in no better position to take depositions of Abbott witnesses than we were when discovery first commenced.

---

[3]Abbott represents that it is not obligated to produce to the United States the materials identified in CMO-5, and that CMO-9 operates as a bar to the United States' Request for Production number two. As far as we can tell, the briefing that led to CMO-9 arose in the context of a situation where Plaintiffs for whom discovery was stayed pending motions to dismiss were seeking to take discovery, and appears to be limited to facts that are inapplicable in this case. Moreover, we have stated a legitimate need for the discovery in this case where there is admittedly no burden to Abbott.

**4-5**

-4-

Essentially, Abbott has taken the position that rather than simply turning over copies of pre-existing discovery it would prefer to take the time and effort for the parties to cull through the pre-existing discovery to identify a subset to be made available to the United States. We find Abbott's entrenched position to be both untenable and contrary to its insistence that discovery can be completed in the 12 remaining months of discovery. The only justification Abbott has for this wasteful exercise is that it does not want the United States Government "mucking around" in its documents. That is not a legitimate objection.

The United States' position remains that not only should all of the pre-existing discovery be made available, pursuant to CMO-5 and this Court's Protective Order, but that it must also include the Bates numbers from all prior productions.

Other Discovery Requests. As you know, the United States seeks documents, as well as access to deposition transcripts, in several other matters, including but not limited to, documents turned over to the MDL class action plaintiffs and the State of California. When we spoke Tuesday you said you would check to see if that could be done for other productions as well. Please let us know.

We also pointed out in a separate call yesterday, that the Court's CMO dated October 21, 2004, which appears to apply to the parties in this case, requires that "the parties....shall attempt to minimize litigation burdens by stipulating to the admissibility of testimony and documents derived from similar pricing litigation." We requested that, sufficiently in advance of the upcoming first cross-noticed depositions with the State of Texas in mid- January, Abbott inform us of its position on allowing the United States to be present for the entire deposition, notwithstanding its objection on relevance.

Time period Objection. Abbott objected to the Plaintiffs' definition of "relevant time period" and stated that it would only "produce responsive documents to the extent they exist from "1991 through January 31, 2001, the period of time specifically referenced in the Complaint.[4] We informed you that we do not believe Abbott is entitled to so limit its search for or production of relevant documents in this manner for at least several reasons. First, as we informed you, according to our information, vancomycin entered the market around August 1988. We believe there are likely to be marketing-related documents concerning vancomycin that predate 1991. Second, Abbott's marketing conduct with respect to its drugs before and after the specific time period identified in the Complaint is relevant to our claims on Abbott's marketing the spread conduct with respect to the drugs in the Complaint.

To follow up, we requested as an initial matter, that Abbott search for and produce all

---

[4]The United States' Complaint alleges that "from at least on or before January 1, 1991, and continuing through January 2001, Abbott defrauded the United States by knowingly causing the Medicare and Medicaid programs to pay false or fraudulent claims for dextrose solutions, sodium chloride solutions, sterile water, and Vancomycin."

-5-

documents related to vancomycin without regard to time frame, including but not limited to, documents discussing the launch of vancomycin and documents that relate to the marketing or potential marketing of vancomycin that predate its launch. We also asked that Abbott not limit its search by time period for marketing-related documents that discuss any spread marketing (even if those specific terms are not used in any document), particularly given Abbott's broad contention in this litigation that it "had no role [in the] 'creation or existence' of any so-called 'spread'." See Abbott Response to U.S. First RFP #4. Abbott agreed to ascertain what, if any, additional burden is involved in the search for (and production) of these documents. Please inform us of that burden, and whether Abbott will agree to produce these documents. Abbott also agreed to propose a comprehensive approach to defining the relevant time period for both parties.

We also want to confirm that you represented to us that there are no marketing related materials specifically for the other drugs (dextrose solutions, sodium chloride solutions, sterile water) referenced in the Complaint. We discussed that Abbott markets these and other generic drugs on a non-specific drug basis. Abbott agreed that its searches and production would capture these general marketing materials.

Hospital versus non-hospitals. In its objections, Abbott represented that it would only search for and produce documents from divisions responsible for selling and marketing to non-hospitals on the assumption that Medicare and Medicaid did not reimburse hospitals based on average wholesale prices. We discussed the fact that Medicare and Medicare reimburse many hospitals for outpatient services based on average wholesale prices. We requested that for starters Abbott agree to produce all documents from its Hospital Products Division and relating to outpatient services. We are also waiting for Abbott to get back to us on PPD drugs.

Miscellaneous Objections. We understand that Abbott withdraws its objections to the following definitions in our Requests: WAC, Direct Price, Best Price, and AMP, but that Abbott continues to object to the term AWP because Abbott denies that it "reports, advertises, publishes or causes to be published, directly or indirectly, the average wholesale price for any pharmaceutical." In addition, Abbott has represented that it will not produce any documents relating to third-party payors that do not encompass the Medicaid and/or Medicare programs. We further understand that Abbott's primary objections to the document Requests pertain to the time period, production of documents regarding hospital customers, production of non-Medicare and non-Medicaid related documents and production of documents maintained outside Abbott's home office. The remaining objections are asserted to preserve Abbott's position on the meaning of certain terms but will not limit the documents actually produced and Abbott will not refuse to search for, or produce, any documents on the basis of those other objections.

Previously Subpoenaed Documents. Pursuant to our Request for Production number one, we asked that Abbott produce all documents not previously produced pursuant to our earlier subpoenas as set forth in the attachments to the Requests. You represented to us that to the extent that Abbott searched for materials responsive to the subpoenas, at or near the time the

**4-7**

-6-

subpoenas were issued, those materials were produced to the United States at that time. Abbott admittedly produced no materials in response to the 2000 subpoena. There are a total of 38 specifications in the earlier subpoenas. After conferring, we agree that Abbott could treat each of the 38 specifications as an individual document request. We also agreed that Abbott could ignore the definitions and instructions in the subpoenas and apply the definitions and instructions from the United States' First Request for Production of Documents. We request that Abbott respond to those 38 document requests by January 5, 2007, along with its other discovery responses on which we agreed to an extension of time.

Production and Privilege Logs. Abbott has represented that, beginning in January, it will produce any additional documents on a rolling basis without a more specific time frame, and that we will receive a privilege log by early January. We have not demanded that Abbott produce on a more expedited basis than what was represented to us.

Missing CD-Rom. Finally, we asked Abbott to produce the missing CD-Rom from its earlier production of sales data which apparently was inadvertently omitted. The missing CD-Rom is likely to be the Direct National Sales Data for 1995 (ABT-DOJ 000016).

We have attempted to be accurate as possible about the parties discussions over the course of several days. Please let us know if you disagree about the content of these discussions as memorialized in this letter. We are happy to correct any misunderstandings.

Very Truly Yours,

/s/

Renée Brooker

/s/

Mark Lavine

cc: James Breen

**4-8**



**U.S. Department of Justice**

Civil Division

MFH:JRB:GTGobena
46-18-1921

Tel. (202) 307-1088

_Post Office Box 261_
_Benjamin Franklin Station_
_Washington, D.C. 20044_

January 19, 2007

**BY EMAIL**

Jason G. Winchester, Esq.
Jones Day
77 West Wacker
Chicago, Illinois  60601-1692

Re:    _U.S. ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories,_ MDL No.
      1456/Civil Action No. 01-12257-PBS

Dear Jason:

     This letter is to summarize the discussions held on Friday, January 12, 2007 concerning Abbott's discovery responses to the United States' requests for admissions, interrogatories and second set of document requests.  We look forward to continuing our discussion on January 22 at 10:30 AM EST.  The below are matters on which we asked you to provide a prompt response.

     <u>Production Schedule</u>.  We have been told repeatedly that Abbott will be producing documents on a rolling production "as soon as possible."  We first heard this in reference to our first request for production first served in July 2006 and re-served in October 2006; we have not received one document to date.  You have not given us any dates or time frames as to when any production responsive to either the United States' first or second request for production will begin, nor have you indicated what types of documents will be included in any such production.

     As you know, discovery ends on December 31, 2007.  And, it was Abbott that insisted on an accelerated discovery schedule in this matter, assuring the Court that discovery can be completed in a year.  Yet, Abbott has not provided any assurances that its document production will begin or be completed any time soon.

     We need to have a more refined and specific production schedule from Abbott (e.g., whether Abbott can begin the production of some materials by the first week in February).

     <u>Scope of Production</u>. In Abbott's discovery responses, Abbott stated that it would only be searching files at "Abbott's Corporate Headquarters as well as the corporate records department for Abbott's Hospital Productions Division." United States' Second Request for Documents (Second RFP), General Objection ¶ 15.   This falls well short of what is called for in the requests

**4-9**

-2-

for production and would omit many discoverable, highly relevant documents.

As we stated to you, we are seeking discovery into the working files of field sales people at Abbott. How Abbott marketed and sold its drugs are directly at issue in this case, and those files are a natural source of evidence relevant to that issue. To the extent those files were not transferred to and stored at Abbott Corporate or Hospital Products Division (HPD) headquarters, the search you propose in your discovery responses is inadequate. We have asked that you reconsider, focusing the search initially on the individual files for the sales force for Abbott HPD's Alternate Site group. As we discussed on January 12, you are to identify how many sales personnel there were for Alternate Site from January 1, 1988 through December 31, 2001 so that we can reassess any burden concerns you raised. Please let us know this information either during the call on January 22 or by January 26 at the latest.

We also wish to know the extent to which individual non-sales force employees' office files at Abbott Corporate and HPD's headquarters were searched. This is information you obviously already have for searches already completed. Please be prepared to discuss that information on the January 22 call.

In addition, our discovery requests were not limited to HPD. We need to get a yes or no answer on whether Abbott will produce Pharmaceutical Products Division (PPD) documents responsive to our requests. Frankly, we are troubled by Abbott's decision to withhold PPD evidence that will likely have some bearing on the conduct at issue or refute some of Abbott defenses. For example, Abbott has claimed in its briefs in this case that Abbott Laboratories, Inc. never reported AWPs. *See* Memorandum in Support of Motion to Dismiss at 5 ("The AWP for pharmaceutical products is separately calculated and published by independent third-party compendia after they obtain the product's list price or Wholesale Acquisition Cost and apply their own formula to it.") Yet, we have seen evidence where an Abbott PPD senior pricing analyst sent to Red Book pricing for several PPD products. In those documents, Abbott asked Red Book to publish both specific list prices and specific AWPs for those drugs. We are deeply concerned by the contradiction between (1) the representations Abbott has made before the court about its corporate price reporting practices (i.e., not reporting AWPs) and (2) what may be reflected in PPD documents Abbott refuses to produce. We ask that you give us your final position on whether you will continue to withhold PPD documents.

Finally, as we discussed the time period limitation Abbott proposes – January 1, 1991 through January 31, 2001 – is unacceptable. Vancomycin was first introduced onto the market in 1988. There are numerous documents related to the introduction of that product (e.g., marketing plans and training materials for the sales force) that pre-date the January 1, 1991 time constraining Abbott has unilaterally imposed on its productions.

Furthermore, there are also numerous relevant documents that post-date January 31, 2001 that Abbott has not produced. For example, there is a May 2001 letter from Omnicare to Abbott complaining about the reduction in Abbott's AWPs earlier that year and demanding $10 million

**4-10**

-3-

in restitution. That document is highly relevant to the case, and there is absolutely no basis for Abbott withholding that evidence from production. Since Abbott actually had to undergo additional burden to segregate and withhold documents that post-date January 31, 2001, we have serious concerns about Abbott's motives for withholding from the government this type of highly relevant evidence. Regardless of whether damages accrued after a certain date, the United States is certainly entitled to all evidence related to the conduct set forth in its Complaint.

We asked Abbott to drop the arbitrary time limit in our December 22, 2006 letter (p. 4-5), but Abbott never responded. Please let us know whether Abbott will be producing responsive documents from at least January 1, 1988 to the present.

Deposition Transcripts. We ask you to state whether Abbott will change its position and agree to produce copies of transcripts of Abbott corporate designees, employees, former employees, and agents in depositions or trials in all AWP proceedings, including on a rolling basis throughout discovery. Doing so would not only get Abbott in compliance with our discovery requests, but it may have the practical advantage of lessening the need for some depositions. The result would be decreased costs and burden for all the parties.

Customers. In response to the second set of document requests, Abbott states that it "will make available documents relating to National Customers as defined by the Texas Court." It is our understanding that the term "customers" is defined in that case as Texas-based customers and customers whose purchasing volume represents 80% of the sales for Abbott's HPD's Alternate Site group. This case is national in scope, and we need discovery on Abbott customers nationwide. As an initial matter, we are willing to narrow our request to cover production of documents related to 100% of the customers at Abbott's Alternate Site group, and not the entire company or the entire HPD. We believe this is a reasonable accommodation that lessens the production burden on Abbott considerably. Please let us know whether you will continue to limit production as noted in your discovery responses or will produce as per our suggestion.

Definition of "Abbott." We provided a definition of "Abbott" in our discovery requests. Abbott changed that definition in their responses. For example, in responses to our requests for admission, Abbott responded to them as if they were narrowly directed at Abbott's HPD and only the Abbott employees who communicate directly with Medicare and Medicaid. RFA Response, Objections to Definitions., ¶2. Changing the definition materially altered the discovery requests, especially the requests for admission and interrogatories. Abbott has not answered the interrogatories and requests for admission as propounded, nor has Abbott agreed to produce all the documents requested in the Second RFP. We disagree with Abbott's redefining our requests. You have agreed to restate and clarify Abbott's re-characterization of the definition of "Abbott" in the requests as an initial step before the parties resume discussions on this issue.

Hospira. It appears that Abbott has objected on grounds of burdensomeness in response to any requests to produce Hospira documents responsive to the United States' document requests. However, you also admitted that you did not check with Hospira to determine whether

**4-11**

–4–

our requests were in fact burdensome or the extent of any burdensomeness.

This troubles us deeply. We remind you of the parties' prior correspondence on this issue. *See* 8/2/06 Email from James R. Daly to Gejaa T. Gobena. Abbott agreed to produce documents on behalf of Hospira at the time we agreed to dismiss Hospira without prejudice. You have agreed to determine the location of the Hospira files and to respond further to our request to include Hospira in Abbott's document searches.

Lobbying Documents. We inquired about whether you would be producing documents responsive to RFPs 66 through 68 of the United States' Second RFP. Abbott claims that the government fully knew about its specific pricing conduct; we are entitled to discovery reflecting communications between Abbott and/or its representatives and any governmental entities about its price reporting practices. Abbott objected to these document requests and did not commit to producing the requested documents. During our January 12 call, you stated that you needed to investigate further the amount and nature of these documents. We expect to hear from you soon about a production schedule for such documents.

AMP. Abbott has claimed that its AMPs are an accurate reflection of the actual acquisition costs for its drugs. Abbott further claims that the government's knowledge of AMP data constitutes government knowledge sufficient to negate the effect of its manipulation of the AWPs for certain of its drugs. We believe we are entitled to the data, calculations and work product related to Abbott's AMPs. You told us on the January 12, 2006 call that Abbott will not provide the AMP data asked for in the United States' document requests.

Incentives to the Sales Force. We asked for documents reflecting pay, incentives and evaluations given to the sales force who sold the Abbott drugs at issue in the case. We even agreed to limit the production at this time to Alternate Site sales personnel, and to sales personnel who worked for Alt Site. From January 1, 1988 through December 31, 2001. You have stated that this request would require Abbott to produce the entire personnel file for those employees. We are not asking for the entire personnel file at this time, just the documents in those files responsive to RFPs 41, 43, 50-51 of the United States' Second RFP. You stated that you were going to review the files to get a better grasp of the number of files at issue and whether you would produce those documents.

Abbott Discovery Documents in the Possession of the Relator, Other MDL Plaintiffs and State Attorneys General. Abbott continues to take the position that Ven-A-Care may not share with the United States its database of documents produced by Abbott in the Texas litigation, that States pursuing similar state actions against Abbott may not share their documents with the United States and that other plaintiffs in this MDL may not provide access to documents Abbott has already produced to other plaintiffs in the MDL. We again ask that Abbott to reconsider this position so that we can avoid further motions practice on the issue.

**4-12**

–5–

We look forward to hearing from you on the above matters.  Please provide an answer to the questions and issues raised above either during the January 22 call or by January 26.


Sincerely,

/s/ Gejaa T. Gobena

GEJAA T. GOBENA
Trial Attorney
Commercial Litigation Branch
Counsel for the United States

cc:    Chris Cook
       James Daly
       Renee Brooker
       Mark Lavine
       James Breen

**4-13**



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*                                    *Telephone: (202) 616-3797*
*Ninth Floor*                                         *Telecopier: (202) 616-3085*
*Washington, D.C. 20004*

January 24, 2007

*Via Electronic Transmission*

Mr. Jason G. Winchester
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

Re:    *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* 06–CV–11337-
       PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL No.
       1456/Civil Action No. 01-12257

Dear Jason:

    This letter is to summarize the second part of discussions held January 22, 2007,
concerning Abbott's discovery responses to the United States' Second Set of Requests for the
Production of Documents.

Timing of Abbott's Rolling Production

    To date the United States has not received any documents incident to its first or second
requests for production, other than what was minimally produced as part of Abbott's Rule
26(a)(1) initial disclosures. This letter will confirm that Abbott's first installment of its rolling
production will begin February 5, 2007. We request that you identify whether the February 5,
2007 production will complete any of the United States' document production requests. Given
the short discovery time frame that Abbott insisted upon over the United States' objection, we
need to have a general understanding of your production schedule and anticipated volume of
production. Please advise as to the general course of your production plan.

Definition of Abbott

**4-14**

-2-

You have made it clear that Abbott defines itself for purposes of document searches and production as the Hospital Products Division (HPD). Abbott will agree to search only the four corners of the HPD and no other divisions. From the United States' perspective, that is unreasonable and prejudicial to the United States' case. As we have pointed out in previous correspondence, Abbott continues to represent in this lawsuit that it plays no role in the setting of average wholesale prices. Any materials that demonstrate, for example, that any Abbott employee reported average wholesale prices, created spreads or marketed spreads are therefore relevant and discoverable regardless of the division in which the conduct occurred. That some Abbott employees acted on behalf of both the HPD and the PPD further highlights the arbitrary nature of Abbott's position on this point.

You have indicated for the second time that you would refine Abbott's definition of itself for purposes of this lawsuit. We expect that you will provide that information this week.

Pharmaceutical Products Division (PPD) Documents

You emphatically stated that Abbott will not search for any documents that may be responsive to any document production request made by the United States from any individual, office or corporate files within the entire Pharmaceutical Products Division ("PPD"). According to you, even if Abbott identifies or discovers relevant information from the files of this division, Abbott will not produce such documents to the United States.

The United States obviously disagrees with Abbott's position and its decision to arbitrarily conclude that no documents from this Division are relevant to this case. As our January 19, 2007 letter makes clear, the United States' requests do not limit the production to documents concerning the Hospital Products Division. Abbott is not meeting its discovery obligations by its decision to unilaterally exclude this division from document searches or production.

Time Period for Production (January 1991 Through December 2001)

We understand from you that Abbott plans to limit its document search and production to materials created between January 1991 through December 2001. You stated that even if Abbott identifies responsive documents pre-dating January 1991, or post-dating December 2001 that Abbott will withhold those documents based upon Abbott's own relevancy determination. You further stated that this applied to documents related to the drug, Vancomycin, one of the Subject Drugs identified in the Complaint. You were emphatic on this point. That position appears to be contrary to the position that Abbott represented to the Court in its Response to the United States' Motion to Compel Abbott to Produce All Discovery Required by CMOs 5 and 10 at page 6: "Plaintiffs' other assertion, regarding any marketing-related documents for vancomycin that predate 1991, is a non-issue for purposes of this motion. Abbott has produced or agreed to produce any such documents that have been produced in other AWP cases." Please explain the apparent discrepancies in these two positions.

**4-15**

-3-

The United States obviously disagrees with Abbott's position and its decision to draw an arbitrary conclusion that no documents dated prior to January 1, 1991 or after December 31, 2001 are relevant to this case. This is particularly true given the level of production, sales, pricing and marketing development concerning Vancomycin prior to January 1, 1991. As we have discussed in the past, vancomycin entered the market in 1988, and we believe that there are marketing-relating documents concerning vancomycin that predate 1991. See our prior letters to Abbott of December 22, 2006 (pgs. 4-5) and January 19, 2007 (p. 2). Additionally, Abbott's market conduct with respect to its drugs that is outside of the time period of the Complaint is also relevant to our claims concerning Abbot's conduct in marketing the spread for the drugs in the Complaint.

Finally, you cited us to an argument or decision in an Alabama case involving Abbott on this issue of the timing of document searches and production. Please provide us a copy of the pleadings, orders or other information on which you relied.

Deposition Transcripts From Other Litigation

We asked again whether Abbott would produce under the Protective Order applicable to this case, all deposition transcripts of Abbott's corporate designees, former and current employees, and agents in all AWP related matters–all of which we understand Abbott has marked as confidential or highly confidential. We understand that you cannot produce transcripts of third parties that have marked depositions as confidential under the terms of other court's protective orders. However, we note that the objective of a consolidated MDL proceeding such as this one is to consolidate discovery as efficiently as possible in order to avoid unnecessary duplication and expenditures of resources. Indeed, Judge Saris's orders hold to that effect. If the disclosure of deposition transcripts means that the parties in this case may be able to avoid re-deposing a prior witness in whole or part, both party and judicial resources can be conserved.

You stated that you would get us an answer this week.

Customer Information

In our conversation, you stated that Abbott will only review documents for approximately 100-150 of Abbott's customers out of a total customer base of 19,000 customers purchasing the drugs named in the United States' Complaint. Your stated basis for limiting the review in this fashion is that those 100-150 customers were the "national account" customers representing approximately 80% the volume of Abbott's sales. You indicated that, in total, Abbott's customer base includes roughly 17,000 to 18,000 individual purchasers who participate in 5,400 group purchasing organizations (GPOs), and approximately 500 to 1,000 customers not affiliated with or purchasing through a GPO. You indicated that the bottom 20% of purchasers are comprised of approximately 450 individual purchasers, and other customers purchasing the approximately 100 other GPOs.

**4-16**

-4-

You did not indicate any reason or objection for not searching for and producing records concerning the remaining 20%. Indeed, these are the very individual purchasers whose purchasing information might be most relevant as Abbott's smaller accounts presumably would not reap the benefits of high volume purchasing discounts. That is, we suspect that the bottom 20% of Abbott's customer base may be the consumers paying the highest prices. Information pertaining to these customers is highly relevant. The United States is entitled to the requested production concerning 100% of Abbott's customers. Abbott has articulated no legitimate objection that would limit its discovery obligations to only its top 80% of purchasers.

Hospira Documents

You represented that Abbott is not asserting any objections to producing Hospira documents and information on the basis that they are or were in the possession, custody or control of Hospira. We understand from you that Abbott has possession, custody or control of those Abbott files that became Hospira's files, and that you are searching Hospira's files for responsive documents and information, subject to Abbott's other objections, such as those based upon time period and Subject Drugs.

Compensation of Sales Force (RFPs 41, 43, 50-51)

We covered this issue in our last discussion and our letter of January 19, 2007 at page 4. In response to these requests (41, 43, 50-51), Abbott has agreed to produce only the sales policies concerning how its sales force is compensated ("compensation policies"), and general information concerning implementation of, or changes to, its compensation policies. However, Abbott refuses to produce any information that shows how the compensation policies were applied to individuals within the sales force. For example, Abbott will not agree to produce the performance evaluations of its salespeople. Abbott also will not search for, or produce, information from the files of individuals relating to its compensation policies, or any documents that identify any specific salesperson, including salesperson's supervisors.

We explained that the United States is not seeking the wholesale turnover of each sales employee's personnel file. To the extent a file may contain personnel information unrelated to compensation, or sales and marketing conduct (e.g., health insurance information), we have not asked that Abbott produce that irrelevant information. To the extent that privacy concerns are an issue, we have a Protective Order. In any event, Abbott stamps virtually every page in production as "confidential" or "highly confidential", so that is clearly not Abbott's concern. The compensation paid to Abbott's salespeople is relevant because, among other things, it will show what incentives they were provided in marketing Abbott's drugs, whether spread marketing was compensated or encouraged, and whether any changes to practice or policy were made as a result. In addition, production of these individual salesperson's files will assist the United States with identifying potentially relevant witnesses.

Abbott claims that these materials are irrelevant and unduly to burdensome to produce.

-5-

However, Abbott has not undertaken due diligence, so it does not know how many salespersons' files must be searched, and it could not so inform the United States. We also asked you whether the files of supervisors of salespersons were among the individual files that Abbott would not search for or produce responsive documents. You agreed to respond further to this question once adequate due diligence had been undertaken. Please confirm the number of Abbott's sales force within the week. Even presuming that there are good number of files to be searched, this is still an insufficient basis upon which to refuse to produce information which is relevant to this lawsuit and reasonably calculated to lead to the discovery of admissible evidence.

<u>Preservation and Production of Documents Outside of Corporate Headquarters</u>

More globally than the specific document requests identified above, we have repeatedly asked for more information concerning Abbott's unduly burdensome objection to searching for and producing responsive materials even if limited to the Alternate Sales Site. <u>See</u> January 19 letter at page 4. Once again, you said you will get back to us.

You represented in our call that during the 1991-2001 time period Abbott did not have a policy regarding the retention of documents generated by, or contained in the files of, its sales force, with the exception of documents that are reported up through the command chain to corporate headquarters and maintained in the files at corporate headquarters. Therefore, salespersons were permitted to delete or destroy electronic or hard copy documents at their choosing. You did not indicate that there was an exception made for a litigation hold in this case at any time. Please confirm if any of this is inaccurate. We expect that the Abbott corporate designee will be prepared to fully address this issue at the upcoming deposition later this month.

Additionally, please confirm whether it is Abbott's position that any documents retained or preserved by its current or former sales force employees, but not reported up the chain of command, are documents that Abbott considers to be within its possession, custody or control. We understand that Abbott will not be searching for or producing any of these documents in any event. Please confirm whether this is inaccurate.

<u>Sales/Transactional Data</u>

You represented that Abbott will produce on February 5, 2007, information related to its national sales data previously provided to the United States, including but not necessarily limited to, back-up date, technical data, look up data, flow drag, knowledge transfer information and data dictionaries. Please let us know whether we can expect to have full production of this information on February 5, or whether Abbott intends to make the production a rolling one. We expect to receive these materials in a user friendly electronic format.

<u>Lobbying Materials (RFPs 66-68)</u>

On our teleconference on January 12, we asked you about Abbott's position on

**4-18**

-6-

production of lobbying materials responsive to document requests 66 through 68. We memorialized our conversations in our letter of January 19 (p. 4). We had hoped to receive an answer from you at our meeting earlier this week. Instead, you reported that you did not yet have a sense of Abbott's position and still needed additional time to check with your client.

You stated that you would look into that this week.

## Home Infusion Services' Documents

You stated that Abbott would begin producing on February 5, 2007, and unknown volume of documents related to the former Home Infusion Services Group. We asked for more specific information including the volume of anticipated materials and a production schedule.

## Average Manufacturer Price (AMP)

You confirmed that Abbott's position has not changed with respect to this issue as set forth in our letter of January 19, 2007.

## TAP

We asked whether Abbott planned to produce internal communications regarding the impact of Abbott's joint venture–TAP–criminal plea and settlement. You stated that you would look further into this matter.

We were disappointed that we could not resolve the many matters that are still outstanding, and that Abbott provided no information with respect to the details of its anticipated production, which we understand will be quite limited in any event. Given your time limitations on the January 22 teleconference, we were not able to discuss Abbott's objections and responses to the United States' First Sets of Interrogatories and Requests for Admissions. At Abbott's request, we will resume the meet and confer next week on those items. We look forward to continuing our discussions and to your prompt response to this letter.

Sincerely,

/s/
Renée Brooker

/s/
Ann St. Peter-Griffith

cc: James Breen

**4-19**

----

-----Original Message-----
From: Lavine, Mark (USAFLS)
Sent: Monday, January 29, 2007 5:16 PM
To: 'Jason G. Winchester'; 'R. Christopher Cook'; Tina M. Tabacchi
Cc: Martinez, Ana Maria (USAFLS); St.Peter-Griffith, Ann (USAFLS); Gobena, Gejaa (CIV);
Prager, Irene (USAFLS); Draycott, Justin (CIV); Brooker, Renee (CIV); Tina Tabacchi
Subject: RE: Direct National Sales Data for 1995 (ABT-DOJ 000016)

We have received the CDROM, but it appears to contain only 6 months of data.  Please check.
Thanks.

Mark A. Lavine
Tel. (305) 961-9303
Fax (305) 536-4101

-

**4-20**



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*                      Telephone: (202) 616-3797
*Ninth Floor*                           Telecopier: (202) 616-3085
*Washington, D.C. 20004*

February 1, 2007

<u>*Via Electronic Transmission*</u>

Mr. Jason G. Winchester
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories,* 06–CV-11337-
      PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL No.
      1456/Civil Action No. 01-12257

Dear Jason:

      We are awaiting your responses to our letters of January 19 and January 24, which
addressed our meet and confer discussions on Abbott's responses to our discovery held on
January 12 and 22. We had expected to hear from you on many issues by now. In our meet and
confer discussions on December 15, 18 and 19, which we memorialized in a letter of December
22, Abbott represented that it would begin document production in January and produce a
privilege log in early January. See U.S. letter to Abbott, December 22, 2006, p. 6. We have
received nothing to date. The close of discovery is fast approaching and we have yet to receive a
single document since Abbott produced its initial Rule 26(a)(1) disclosures, notwithstanding its
representations before Judge Saris on October 26 that it was ready to proceed expeditiously with
discovery.

      For example, we have asked Abbott repeatedly whether it will agree to produce all
deposition transcripts of Abbott's corporate designees, former and current employees, and agents
in all AWP related matters (including in the Texas case and this AWP MDL proceeding) under
the terms of the Amended Protective Order applicable to this case. The last time we spoke you
promised to provide us an answer by last week. If the answer is yes, please produce those

**4-21**

-2-

transcripts immediately.  We are aware that a number of depositions of Abbott employees, former employees and corporate designees have taken place since Abbott served its initial disclosures.  As you well know, under Rule 26(e), Abbott is obligated to supplement these disclosures on a continuing basis.

We hope to hear from you tomorrow on all the outstanding issues.

Sincerely,

/s/

Renée Brooker

cc: James Breen

4-22

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1676
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number:  (312) 269-4174
cgeisler@jonesday.com

JP003466
080024-024348

February 3, 2007

<u>CONFIDENTIAL</u>

<u>VIA FEDERAL EXPRESS</u>

Renee Brooker
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D Street N.W.
Ninth Floor
Washington, DC 20004

Re:     Re:   U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.; 06
CV-11337

Dear Renee:

I am enclosing a CD containing documents bates labeled ABT-DOJ 0224821-0226374.
In addition, I am enclosing a CD containing electronic information bates labeled ABT-DOJ
0226375.  Finally, I enclose documents bates labeled ABT-DOJ 0226376-0227337.  All of the
documents are marked Highly Confidential.

Very truly yours,

Carol P. Geisler

Carol P. Geisler

Enclosures

cc:     Jason Winchester

**4-23**

CHI-1573194v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

----

"Lavine, Mark
\(USAFLS\)"
&lt;Mark.Lavine@usdo                              To
j.gov&gt;                    "Jason G. Winchester"
                          &lt;jgwinchester@JonesDay.com&gt;, "R.
                          Christopher Cook"
02/05/2007 02:04          &lt;christophercook@JonesDay.com&gt;,
PM                        "Tina M. Tabacchi"
                          &lt;tmtabacchi@JonesDay.com&gt;
                                        cc
                          "Martinez, Ana Maria \(USAFLS\)"
                          &lt;Ana.Maria.Martinez@usdoj.gov&gt;,
                          "St.Peter-Griffith, Ann \(USAFLS\)"
                          &lt;Ann.St.Peter-Griffith@usdoj.gov&gt;,
                          "Gobena, Gejaa \(CIV\)"
                          &lt;Gejaa.Gobena@usdoj.gov&gt;, "Prager,
                          Irene \(USAFLS\)"
                          &lt;Irene.Prager@usdoj.gov&gt;,
                          "Draycott, Justin \(CIV\)"
                          &lt;Justin.Draycott@usdoj.gov&gt;,
                          "Brooker, Renee \(CIV\)"
                          &lt;Renee.Brooker@usdoj.gov&gt;, "Tina
                          Tabacchi" &lt;tmtabacchi@jonesday.com&gt;
                                     Subject
                          RE: Direct National Sales Data for
                          1995 (ABT-DOJ 000016)

Please let me know when you will provide us with a complete set of the Direct National Sales
Data for 1995.  Thank you.

Mark A. Lavine
Tel. (305) 961-9303
Fax (305) 536-4101

**4-24**