UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | |
| | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti Saris |
| | ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc.*, CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**THE UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S
MOTION FOR A PROTECTIVE ORDER RELATING TO THE
DEPOSITION OF RICHARD A. GONZALEZ**

Abbott Laboratories Inc. (Abbott) has filed a Motion for a Protective Order on behalf of

one of its retired executives, Richard Gonzalez, (Gonzalez MPO) to bar his deposition.  In

particular, Abbott seeks apex witness protection on Mr. Gonzalez's behalf.  Since Mr. Gonzalez

is retired, he is not entitled to the same legal protections from depositions that an apex

government or corporate witness might have.

Regardless, there is absolutely no merit to the Gonzalez MPO even if he were considered

an apex witness.  As Mr. Gonzalez concedes, he was the President of the Hospital Products

Division (HPD) – the division whose drugs and conduct are at the core of this matter –  during

the claims period in this case. Gonzalez MPO, Exhibit A at 2.  He was later promoted to

Executive Vice President and Chief Operating Officer, Medical Products; in that capacity, he still

oversaw the activities of HPD and was involved in the 2001 deliberations where Abbott decided

to end its fraudulent price reporting conduct. *Id*.; *see also* Exhibits 2 and 5.  He was one of the

ultimate decision-makers for the conduct that is at the core of this litigation.  As discussed below,

Mr. Gonzalez was directly involved with HPD's operations, including participating in major

contract negotiations, assessing government drug reimbursement developments and decision-

making regarding the prices Abbott reported to the compendia relied upon by the government.  In

short, Mr. Gonzalez is a witness in this case whose deposition is not only appropriate, but

necessary.

The Court should deny the motion and reject Abbott's wasteful and – certainly in this

instance – frivolous effort to shield high level Abbott witnesses with relevant knowledge from

testifying in this matter.  With discovery coming rapidly to a close, it is imperative that

depositions of witnesses with personal knowledge of the issues in this case be scheduled without

unnecessary delay.

## BACKGROUND

### I.      Meet and Confer Efforts

The United States requested Mr. Gonzalez's deposition on June 28, 2007.  *See* Exhibit 1,

June 28, 2007 email from G. Gobena to J. Winchester.  A meet and confer about numerous

proposed depositions, including Mr. Gonzalez's, was held on July 17, 2007.  Gonzalez MPO,

Exhibit B, ¶ 4.  Subsequent meet and confer calls were held on July 27, 2007 and August 8,

2007.  *Id*.  Abbott counsel is correct that the United States is willing to discuss ways to

accommodate the now-retired Mr. Gonzalez's schedule.  *Id*. at ¶ 7.  Despite this overture,

Abbott[1] has refused to make its former employee available for deposition.

---

[1] Mr. Gonzalez is not represented by individual counsel.  It is unclear whether Mr.
Gonzalez is filing the motion for a protective order or whether Abbott is filing one on his behalf.
Since Abbott counsel has filed the motion, the United States assumes it is the latter.

**II.      Mr. Gonzalez's Current Status and Knowledge of the Issues in This Case**

Richard Gonzalez retired from both Abbott and Abbott's board of directors on September

28, 2007.  Gonzalez MPO, Exhibit A, ¶ 1.  In the declaration he submitted with his MPO,  Mr.

Gonzalez does not indicate that he is currently employed in any capacity.  Mr. Gonzalez states

his deposition will be a burden, *id.* At ¶ 11, but that burden is not evidenced in the three page,

eleven paragraph declaration he has provided this Court.

Mr. Gonzalez seeks apex protection because prior to his retirement he served as Abbott's

President and Chief Operating Officer.  However, prior to serving in that capacity, Mr. Gonzalez

was president of HPD (1998-2000).  Gonzalez MPO, Exhibit A, ¶ 2.  As HPD president, he had

oversight responsibility for Abbott HPD's Alternate Site Group; it is the marketing activities of

this group while selling HPD drugs that is at the core of this case.  Mr. Gonzalez was promoted

in August 2000 to Executive Vice President and Chief Operating Officer, Medical Products and

continued in that job through March 2006; in that capacity, he continued to oversee HPD's

operations and, as discussed below, was involved in the deliberations in 2001 that led to the end

of Abbott's fraudulent price reporting scheme.  *Id.*; *see also* Exhibit 2, December 2001 Abbott

Organizational Chart.

It is self-evident that Mr. Gonzalez is a witness with personal, unique knowledge of the

conduct at issue in this case.  It is unnecessary to engage in a detailed discourse of the relevance

of Mr. Gonzalez's testimony to this case.  Nevertheless, documents illustrate that Mr. Gonzalez

was routinely involved in key decision-making at HPD regarding the conduct at issue, including

but not limited to:

- **Negotiation of major contracts**.  Mr. Gonzalez was involved in major Alternate Site Contract negotiations, even before he became the president of HPD.  For example, he was a participant with negotiations with a home infusion company called Coram in June 1995.  *See* Exhibit 3.  Coram was a major HPD customer who came to rely on the spreads Abbott created and marketed.

- **Deliberations about government reimbursement issues**.  Mr. Gonzalez was involved in HPD discussions regarding government reimbursement for Abbott drugs.  In the spring of 2000, First DataBank (FDB) announced that it was going to use pricing information from Department of Justice investigations.  Abbott HPD drugs constituted almost a quarter of the products affected by the FDB proposal.   Mr. Gonzalez was part of the team of senior HPD executives that analyzed and discussed the impact of the FDB proposal.  *See* Exhibit 4.

- **Deliberations regarding the 2001 catalogue/list price reductions**.  Abbott wound down its fraudulent scheme in mid-2001, when it chose to report reduced prices to the pricing compendia.  Despite the fact that Mr. Gonzalez had left HPD, he still oversaw HPD's operations and was involved in discussions pertaining to Abbott's decision to report lower prices in 2001.  Exhibit 5 are materials for a March 7, 2001 meeting with between Mr. Gonzalez and others to discuss Abbott's "price adjustment" project; included in the materials are documents proposing revised definitions for Abbott pricing terms and analysis of the financial impact of reporting lower, more accurate prices to the compendia.

Mr. Gonzalez's involvement in these discussions and decision-making processes at HPD renders obvious the need and appropriateness for his deposition in this matter.

ARGUMENT

**I.**      **Mr. Gonzalez Is Not An Apex Witness and Is Not Shielded from Being Deposed.**

Mr. Gonzalez is retired from Abbott.  He is not currently a high level corporate officer at Abbott or elsewhere.  There is no case law to suggest that protections afforded current high level apex witnesses – whether government or corporate – apply to corporate retirees.  *Cf. State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 608 (Mo. 2002) (court concludes that arguments for

apex protection of executive were moot in light of his retirement).  Considerations such as

harassment or business disruption that normally inform a court's decision making regarding the

permissibility of apex depositions do not apply to retired executives.  *See generally*, *Six West*

*Retail Acquisition, Inc. v. Sony Theatre Management Corp*., 203 F.R.D. 98, 102 (S.D.N.Y.

2001).  Indeed, broadening apex protections to impede the depositions of a long retired corporate

executive would be inconsistent with the well recognized notion that notwithstanding the

protections that may be afforded an apex witness, "it is very unusual . . . for a court to prohibit

the taking of a deposition altogether absent extraordinary circumstances, as such an order would

likely be in error."  *WebSideStory, Inc. v. NetRatings, Inc*., 2007 WL 1120567 (S.D. Ca. April 6,

2007) at *2.

Abbott contends that apex witness protection does indeed apply to all retired senior

corporate executives, citing *In re Ski Train Fire of November 11, 2000*, 2006 WL 1328259

(S.D.N.Y. May 16, 2006) and the *WebSideStory* case noted immediately above.  These cases are

easily distinguishable and do not stand for that extraordinarily broad proposition.  In *In re Ski*

*Train Fire*, the only apex witness in that case remotely analogous to the retired executive in this

litigation was the "recently" retired CEO of the defendant, who still continued as the chairman of

its board of directors.  Mr. Gonzalez has not only retired as a corporate executive but is no longer

a member of Abbott's Board of Directors.  *See* Exhibit 6, Current Listing of Abbott Laboratories

Inc.'s Board of Directors.  The case is factually inapposite.  Regardless, that Court did not

consider the effect of the board chairman's retirement from his CEO position on his status as an

apex witness, perhaps due to his continued role as a senior corporate board member.

The deponent in the *WebSideStory* case was also a current chairman of the board who had retired from his CEO position at the plaintiff corporation.   The court in *WebSideStory* considered the deponent an apex witness was because he (1) continued to be a top executive for the plaintiff corporation and (2) was also the CEO and chairman of the board of a new company.  2007 WL 1120567 at *3 ("since Mr. Lunsford is currently the CEO and Chairman of the Board of Directors for another company, Limelight Networks, as well as a member of the Board of Directors for WebSideStory and its former CEO, Mr. Lunsford is an official at the highest level or "apex" of a corporation, and while he may not possess the celebrity status of apex deponents in other cases, the Court finds his responsibilities to current and prior employers to be of similar proportions.")

Mr. Gonzalez does not hold any top corporate positions at Abbott or elsewhere nor is he still on Abbott's board of directors.  Therefore, apex witness protection does not apply to Mr. Gonzalez.  Since this was the only rationale advanced for blocking his testimony, the motion should be summarily denied.

**II.      The Deposition of Mr. Gonzalez Is Permissible Even Under the Rules Governing Apex Witnesses.**

Even if the Court were to afford Mr. Gonzalez apex status, his depositions should be permitted.  The United States "may obtain discovery regarding any matter, not privileged, that is relevant to [a] claim or defense," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).  Further, "[h]ighly-placed executives are not immune from discovery[, and] 'the fact that [an executive] has a busy schedule'" does not exempt them from being deposed. *Consolidated Rail Corp. v.*

*Primary Industries Corp.*, No. 92 Civ. 4927, 1993 WL 364471, at * 1 (S.D.N.Y. Sept. 10, 1993) (*quoting CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984)).  "Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case."  *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002).

As the *WebSideStory* decision cited by Abbott notes, "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."  2007 WL 1120567 at *2; *see also, Travelers Rental Co., Inc. v. Ford Motor Company*, 116 F.R.D. 140 (D. Mass 1981);  *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001) (deposition of high-level corporate officials permitted when officials have some unique or superior knowledge of the issues in the case. ). That sentiment is echoed in the *In re Sky Train Fire* decision as well, which noted that courts allow apex depositions where "they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action."  2006 WL 1328259 at *10.

As detailed above and discussed below, Mr. Gonzalez had oversight and decision-making responsibilities for HPD from March 1998 through March 2006; HPD is the division whose conduct is directly at issue in this case.  He clearly has personal and unique knowledge of relevant, critical issues in this case.  Indeed, Mr. Gonzalez's knowledge and conduct as the president of HPD and in his subsequent oversight capacity bear directly on Abbott's scienter in this matter; his deposition is imperative. *See generally*, *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 F.R.D. at 536.

**A.     Mr. Gonzalez Has Failed to Meet His Burden to Show That a Protective Order Is Warranted.**

It is the burden of the party seeking a protective order to prove that an apex official does not possess information relevant to the issues in the case or that his knowledge of particular issues in a case is completely duplicative of other witnesses. *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002).  Mr. Gonzalez submitted a "know nothing" declaration claiming that he has no unique or superior knowledge on the issues in this litigation.  The declaration is hardly credible, vague, conclusory and wholly insufficient to support a motion for a protective order.  *See Rolscreen Co. v. Pella Products of St. Louis Inc.*, 145 F.R.D. 92, 96 (S.D. Iowa 1992) ("party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.") (citations omitted.)

Regardless, in the *Travelers* case, several high level Ford employees filed similar "know nothing" declarations in a failed attempt to evade being deposed.  *Id*. at 143.  As that court noted, "[t]he plaintiff is entitled to 'test' the claim of lack of knowledge or lack of recollection by deposing the witness." *Id*. at 143, *citing  Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 121-23 (D. Conn., 1974) (citations omitted).  *Travelers* further noted:

> [T]here is nothing in the law which would indicate that Travelers has to accept the claimed failures on their face or rely on whatever efforts Ford's counsel may have undertaken to refresh recollections.  Considering that Travelers has demonstrated that these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle the deponent to an order quashing the deposition.

*Travelers*, 116 F.R.D. at 143; *see also Six West* 203 F.R.D. at 102.

This reasoning is especially apt in Mr. Gonzalez's case, where his declaration lacks credibility in light of the documentary record.  As discussed above, Mr. Gonzalez was personally ran in HPD's operations during the claims period, the division whose drugs and marketing conduct is at issue in this case.  His "know nothing" declaration is ripe for challenge, and the United States is entitled to direct testimony about his work overseeing and running HPD's operations.  *See Travelers*, 116 F.R.D. at 146 ("[T]hose with greater authority may have the last word on why [the company] formulated and/or administered the plan in the manner which the lower-level executives described it as being formulated and/or administered.  And as the ultimate authority, their views as to why may be of far greater probative value on the issue of intent and motive than the views of the lower-level executives.")  In particular, the United States should be able to fully explore Mr. Gonzalez's efforts in connection with: (1) contract negotiations with major customers, (2) deliberations in 2000 as to the FDB proposal to use information other than that from Abbott to determine the AWP for numerous HPD drugs, and (3) Mr. Gonzalez's direct role in Abbott's decision to report lower prices to the pricing compendia in 2001.  As a court in this district noted, "[w]hen the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and/or administered the particular action."  *Travelers*, 116 F.R.D. at 142; *see also Rolscreen Co.*, 145 F.R.D. at 97.

**B.      The United States Need Not Exhaust Other Means of Discovery Before Deposing Mr. Gonzalez.**

Abbott asserts, "[t]he case law uniformly instructs that, before a party is permitted to conduct an apex deposition, it must first pursue other avenues, such as (i) depositions of lower-level employees or corporate 30(b)(6) designees; or (ii) written discovery."  Gonzalez

MPO at 11.  Even if the Court considered Mr. Gonzalez an apex witnesses, these lesser means of

discovery are not required when an apex witness has personal knowledge.  Since the United

States has shown clearly that Mr. Gonzalez has unique or personal knowledge of key issues in

this matter, the United States need not depose lower-level employees or pursue written discovery

before taking his deposition.  *See WebSideStory*, 2007 WL 1120567 at *2.  The evidence of that

personal and/or unique knowledge has been set forth above.[2]

As Abbott notes, the United States has deposed several of Mr. Gonzalez's subordinates at

Abbott.  Their testimony cannot substitute for direct testimony from Mr. Gonzalez about his

knowledge and actions.  Fact discovery in this matter ends soon, and there is no time for

additional delays for interrogatories or written deposition questions that yield vague and

incomplete responses drafted by Abbott's counsel.

## CONCLUSION

For the reasons set forth herein, the Gonzalez MPO should be denied.

---

[2] In some cases, courts have directed that lower-level employees be deposed before the opposing party can ask for discovery from the apex officials. *See, e.g.,  Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Baine v General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991).   Those courts sought to protect these officials from repetitive and harassing depositions where unique or direct knowledge cannot be shown.  These cases are easily distinguishable. Many of these decisions involve personal injury, employment or contract disputes where the upper-level officials had no personal involvement.  *Bridgestone/Firestone*, 205 F.R.D. at 536 ("Nearly every decision Ford has cited [in support of its protective order] involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement."), citing *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995) (individual employment case); *Salter*, 593 F.2d 649 (individual negligence case); *Baine*, 141 F.R.D. 332 (individual personal injury case); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) (individual personal injury case).  In the present case, the claims involve conduct and knowledge at the highest corporate level; thus, the justification for apex official protection is lacking.  *See* Fed. R. Civ. P. 26 (b)(2) (in weighing whether to limit discovery, courts take into consideration the importance of the issues).

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN | PETER D. KEISLER |
| UNITED STATES ATTORNEY | ASSISTANT ATTORNEY GENERAL |

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley
U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3272
Fax: (617) 748-3971


R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF
FLORIDA

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney
General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101

 /s/ Gejaa T. Gobena
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088
Fax: (202) 307-3852

Dated: October 19, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **THE UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF RICHARD A. GONZALEZ** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                     /s/ Gejaa T. Gobena

Dated: October 19, 2007                  Gejaa T. Gobena