UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) | MDL No. 1456<br><br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:**<br>*United States of America ex rel.*<br>*Ven-a-Care of the Florida Keys, Inc., v.*<br>*Abbott Laboratories, Inc.*<br>CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

<u>**UNITED STATES' RESPONSE TO**
**DEFENDANT ABBOTT'S MOTION FOR A PRESERVATION ORDER**</u>

**INTRODUCTION**

The United States of America respectfully submits this response to defendant Abbott Laboratories Inc.'s (Abbott) motion for a preservation order (Preservation Motion). Abbott claims that a preservation order is necessary to prohibit the government from "destroying evidence critical" to Abbott's defenses.[1] Abbott fails to specify what the critical evidence is, or may be. Rather, Abbott avers that the government invited it to submit inflated pricing information and to market the reimbursement spreads on Abbott's drugs to its customers. Preservation Motion at 1, Docket Entry 4712. Abbott contends that the Department of Health and Human Services (HHS) had an official policy of encouraging overpayments to providers to advance certain policy goals. *Id*. Abbott makes this argument despite the fact that (1) HHS has

---

[1] Abbott has not filed an Answer to the United States' First Amended Complaint, so the United States is unaware what the defenses might ultimately be.

expressly rejected Abbott's contention in the September 15, 2006 *amicus* brief it filed with this Court, and (2) for years HHS has actually struggled to eliminate Medicare and Medicaid drug overpayments, a struggle that was made more difficult due to lobbying by pharmaceutical companies, including lobbying by Abbott.

Not surprisingly, Abbott does not cite any evidence to support its contention that HHS made a policy decision to overpay Abbott's customers. Regardless, as discussed below, the government has taken numerous steps to preserve relevant documents in this case; it cannot destroy or preserve which does not exist.

## ARGUMENT

I. **CMS Is Preserving Relevant Evidence and Abbott Cannot Make the Required Showing for the Relief Sought Here**.

Abbott omits important information about CMS's preservation efforts, and makes a series of unfounded, sweeping assertions about CMS's conduct that are inconsistent with the facts. CMS has actually preserved considerably more material than is relevant to the issues in this case. Indeed, CMS has already produced a substantial quantity of the types of evidence that Abbott claims to have been denied, evidence which the United States maintains is patently irrelevant to the issues in this case.

    A. **CMS Has Preserved and Continues to Preserve Relevant Evidence**.

At this stage in the litigation, Abbott has taken multiple depositions regarding CMS's efforts to search for, collect, and preserve documents. Abbott is fully aware that CMS has issued a series of preservation orders over the years that have ensured the retention of information that is the subject of Abbott's voluminous discovery requests. For example, Abbott is aware that,

pursuant to a 1992 preservation instruction, CMS and its contractors have preserved claims records dating to 1986. Ex. A at 24-34; Ex. B at 8-10. In addition, Abbott knows that CMS has long had in place record retention policies, which provide that large portions of the records of the agency are maintained in perpetuity. Ex. C at 55-56, 62-65, 83-89.

Abbott makes much of the notion that individual emails from certain former CMS employees have not been preserved. For one thing, most CMS employees did not even have email until after the mid-1990s, a fact of which Abbott is fully aware. Ex. A at 104, 133; Ex. D at 62-64. Even assuming (which the United States certainly does not) that emails relevant to the issues here were lost, the period within which such emails could have been generated is limited. Also, CMS had record retention policies in place that emphasized the preservation of hard copy records, including print-outs of documents created electronically. Abbott is aware that CMS always instructed its employees to print and safeguard emails that would constitute "agency records." Ex. A 102-05, 113; Ex. D 57, 67. When employees left CMS, the agency had a process in place for supervisors and others within a division to retain necessary electronic documents of former employees, but not under the name of the former employee. Ex. D at 175-78, 223-25. For this and other reasons, many CMS employees preserved hard copies of emails, and the United States has already produced responsive emails to Abbott. Abbott has used those very emails in the depositions it has chosen to take.

Abbott is also aware of more recent preservation directives issued by CMS. After CMS contractors received the Lupron and AWP MDL third party subpoenas, CMS issued a broad preservation instruction to its Medicare contractors. Ex. A 68-71; Ex. B at 1-4. Also, after CMS received similar third party subpoenas in early 2004, CMS issued agency-wide preservation

instructions. Ex. A at 71-74; Ex. B at 5-7. Abbott is further aware that after the United States filed its case against Abbott, additional preservation instructions were issued again early in 2007. Ex. A at 77-85; Ex. C at 50-51, 62; Ex. E at 161-62. The effectiveness of these preservation instructions are apparent given the substantial volume of material (hard copy and electronic) produced by the government thus far in the litigation.

### B. Abbott Has Not Met the Required Standard for the Order It Seeks.

CMO No. 2 in this MDL states: "All parties acknowledges their responsibilities to take reasonable steps to comply with the law regarding preservation of documents." Docket Entry 135 at p. 4. CMS acknowledges its responsibilities. Abbott has failed to show that any other order is necessary. Moreover, the order Abbott seeks is vague, unworkable, and unduly burdensome.

Courts have used varying balancing tests to determine whether to issue a preservation order. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 369-71 (S.D.N.Y. 2006). A balancing test that has been used by courts has three factors: (1) the level of concern about the maintenance of the evidence absent an order; (2) irreparable harm likely to result absent an order; and (3) the burden that would be created by the proposed order. *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-34 (W.D. Pa. 2004). "In weighing all three of these factors, the Court concludes that a preservation order as requested by the Defendant is not justified or necessary under the present circumstances. . . . the Court's level of concern for the loss or degradation of the evidence in question is not sufficiently elevated based upon the lack of the presence of a specific, imminent threat supported by the record." *Id*. at 437-48. Here, Abbott cannot meet this test.

Abbott's brief contains numerous sweeping and baseless assertions that cannot withstand scrutiny.[2] In any event, Abbott's claim that absent an order there is a future risk of loss and irreparable harm is unfounded. Abbott itself acknowledges that CMS imaged the electronic records of Tom Gustafson who left CMS in 2007. Abbott also acknowledges that CMS has issued preservation instructions. CMS has already taken steps to preserve records, including the electronic records of current employees involved with drug reimbursement. Thus, Abbott has not shown that an order is necessary under the first two prongs cited above. Furthermore, Abbott has not approached the United States to request any further specific action by CMS with respect to preservation.

Finally, as to the third prong cited above, Abbott's proposed order is vague, unworkable and unduly burdensome. The order is vague to the extent that is not clear what is meant by "all steps" or "centralized electronic storage repositories." The proposed order is also vague, overly broad, and burdensome if it is interpreted according to Abbott's view of what is "relevant." The United States respectfully submits that Abbott's view of what is relevant is wrong under the applicable case law.

Abbott has not shown that any further order regarding preservation is necessary and the order it proposes is unworkable. Abbott's request for a preservation order should be denied. *See Treppel*, 233 F.R.D. at 372-73 (denying motion for preservation where there was no showing that

---

[2] Abbott goes so far as to allege without any basis that the government destroyed critical evidence "even as it was engaged in one-sided discovery against Abbott in an effort to establish its own case." As stated before, Abbott knows that CMS simply did not keep the electronic records of former employees in accounts under their names. Furthermore, Abbott incorrectly describes the United States' obligation to investigate fraud allegations by a whistle blower as "one-sided discovery." Abbott also omits the fact that Abbott did not provide many relevant documents until after the United States sued Abbott.

the steps that were being taken were inadequate, and the order that had been proposed was sweeping).

### C. Abbott Has Not Shown that There Is Any Need for the Affidavit It Seeks.

Abbott's request for an affidavit is not supported by the case law it cites. More importantly, an affidavit is simply unnecessary under the circumstances here.

In support of its request for a sworn affidavit, Abbott relies on *Chavannes v. Protective Life Ins. Co.*, 232 F.R.D. 698 (S.D. Fla. 2006). The plaintiff in the case sought to recover the proceeds of a life insurance policy issued to a woman who was allegedly the plaintiff's wife. When the insurance company sought proof of the alleged wife's death in Haiti, the plaintiff then made conflicting statements about claiming to have a video of the funeral, but refused to produce the video, despite repeated requests by the insurance company. In addition to ordering the plaintiff to produce any such videos, the court also required him to provide an affidavit attesting to whether such a video ever existed and its current whereabouts.

In *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257 (2007), the plaintiff alleged that the United States had failed to abide by a supply contract and had purchased items from other suppliers. The United States informed the court that specific pieces of evidence directly related to the conduct at issue had been destroyed, even after discovery was ongoing. Not surprisingly, the court sought details from the government regarding the destruction.

Similarly, in *Webb v. United States*, 840 F. Supp. 1484 (D. Ut. 1994), plaintiff sued the United States for alleged negligence by FAA controllers in connection with a plane crash. The evidence at issue was the FAA investigator's investigation file, which the United States initially

6

thought was destroyed but was then located and disclosed to the plaintiff. Again, not surprisingly, the court sought an explanation for the file's chain of custody.

In each of these cases cited by Abbott, the Court was confronted with allegations of spoliation of very specific, identified evidence. In contrast, in this case no evidence relevant to the claims and defenses at issue has been destroyed. The facts here do not remotely resemble those set forth in the cases cited by Abbott, and none of these decisions can be read as support for imposing such a requirement on the United States.

Furthermore, the request for the affidavit appears to ask for information that Abbott has already obtained through Rule 30(b)(6) and Rule 30(b)(1) depositions. This is unduly burdensome, harassing, and unnecessary.[3] Abbott has taken many depositions of CMS employees and in those depositions, Abbott has always asked about the employees' records. In addition, Abbott has taken multiple depositions related to the topic for which it now seeks an affidavit. Abbott has deposed: (1) Vickie Robey, the CMS records custodian, regarding preservation; (2) Julie Boughn, the head of IT at CMS, regarding general IT issues; (3) Marianne Bowen, an IT employee, again regarding general IT issues, including the history of IT at CMS, and specifically about the electronic records of current and former employees; (4) Glenda Bailey, regarding the 2004 search and production in response to third party subpoenas; (5) David Timus,

---

[3] Abbott requests that the United States also provide with the affidavit "unredacted" copies of its formal preservation instructions. Most of these instructions are privileged. *See Gibson v. Ford Motor Company*, ___ F.Supp.2d ___, 2007 WL 41954 (N.D. Ga. 2007). The United States has already provided some non-privileged instructions and other instructions with privileged portions redacted. As Abbott itself recognizes, one of the concerns is preserving the privilege and avoiding claims of subject matter waiver. Still, the United States has provided testimony through witnesses regarding the fact that these additional instructions were issued. Abbott's request should be denied. *See id.* at p. 6.

regarding the 2004 search and production in response to third party subpoenas; (6) Claire Hardwick, regarding the 2004 search and production in response to third party subpoenas; (7) Lisa Parker, regarding the 2004 and 2007 productions and regarding the maintenance of rulemaking files and rulemaking support files; and (8) Reagan O'Brien, regarding the 2004 and 2007 productions by one of the Medicare carriers, TrailBlazer.  In addition, Abbott will be taking a 9th deposition on these issues:  an additional Rule 30(b)(6) deposition regarding CMS's 2007 search and production in response to Abbott's requests to produce.  Despite its discovery efforts, Abbott remains unable to specify any specific relevant evidence that has been destroyed by the United States.

Abbott's request for an affidavit is vague, cumulative, harassing and unnecessary.  The United States respectfully requests that it be denied.

**II.   The Materials Sought in Abbott's Motion Are Irrelevant**.

    **A.   This Case Is About Abbott's Conduct**.

In assessing document preservation motions, Courts have emphasized that what type of evidence is relevant and what may need to be preserved will "change from case to case." *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 434 (W.D. Pa. 2004) (denying motion for a preservation order).  The cases cited by Abbott serve only to underscore this point and illustrate the weakness of Abbott's claim that the alleged failure to keep hypothetical emails warrants the relief sought here.

For example, in *Townsend v. American Insulated Panel Co.*, 174 F.R.D. 1 (D. Mass. 1997), the evidence in dispute was the freezer which was the allegedly defective product in a product liability action.  Also, in *Ameripride Servs., Inc. v. Valley Indus. Serv., Inc.*, 2006 WL

2308442 (E.D. Cal. 2006), the claim concerned contaminated groundwater and the evidence destroyed consisted of contaminated soil and pipes. These cases illustrate the fact that the nature of the claims and the legal basis for determining liability determine the relevance of any piece of evidence. It is therefore essential to focus on what the claims in this case actually are to determine what documents are relevant and merit preservation.

Abbott's motion is based on its oft-repeated, yet plainly wrong, recitation of the government's claims against Abbott. This case is not about how the Medicare and Medicaid reimbursement systems operated generally. Nor is it about the existence of spreads in the abstract. If the government's fraud case was simply premised on the existence of spreads, it would have sued many more companies than Abbott; indeed, it would have sued Abbott for far more of the products Abbott manufactures and sells than those identified in the First Amended Complaint. The case Abbott seeks to defend against is not the case the United States has actually brought.

The case as pled and as will be tried by the United States is about Abbott's manipulation of prices that Abbott reported for several specific drugs, and Abbott's marketing of those particular spreads. In short, it is Abbott's conduct in abusing government reimbursement systems that is the focus of the case. Abbott controlled the fraudulent conduct at issue; the scheme stopped in 2001 when Abbott reported lower, more accurate prices. Abbott corrected its price reporting without the Government initiating any changes to government reimbursement systems. Thus, Abbott cannot claim that any generalized government information about spreads played any role in the beginning or end of the Abbott drug pricing scheme. The fraud flows from

inflated pricing information Abbott chose to supply as part of its effort to use inflated government reimbursements as a way to market its drugs to Medicare and Medicaid providers.

This case is fundamentally a False Claims Act (FCA) case.  Under the FCA, it is the company's scienter – not the government's – that is at issue.  "Government knowledge," as such, is simply not a defense to an FCA action.  Government knowledge -- no matter how extensive -- of the falsity of a claim or statement, standing alone, does not defeat a claim under the FCA.  *See Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d at 534-35 (holding that 1986 amendments to FCA make clear that government knowledge of a contractor's wrongdoing is not an automatic defense); *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1996) ("[t]hat the relevant government officials know of the falsity is not in itself a defense")*; United States v. Ehrlich*, 643 F.2d 634, 638-39 (9th Cir. 1981).  This follows from the incontestable fact that the focus of the FCA is on the *defendant's* knowledge of falsehood, not on the government's knowledge, a fact that can be ascertained from a review of the statute's plain language.  *See* 31 U.S.C. § 3729(a), (b).  The statute says nothing whatsoever about the government's knowledge.

Government knowledge is relevant solely on the issue of the *defendant's* scienter, inasmuch as the defendant may have an argument that he or she has not "knowingly" submitted a false claim if the government had *full knowledge* of and *approved* the defendant's conduct.  *In re Pharmaceutical Industry Average Wholesale Price Litigation,* Docket Entry 4056 at p. 17 (J. Saris March 22, 2007) (In assessing claims under the California False Claims Act, Court noted that "government knowledge" defense would require that the government *approve* the particulars in advance.).  This Court explained that in such an instance, this prior approval would be relevant

10

to the state of mind of the defendant, that is, to the question of whether the defendant "knowingly" caused a false claim to be presented.  *See id.; see also, United States ex rel. Oliver v. Parsons Co.,* 195 F.3d 457, 464-65 (9th Cir. 1999) ("'[i]nnocent mistakes' and 'negligence' are not offenses under the Act"; *United States ex rel. Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1991).  The cases correctly recognize that the central question is whether the defendant knew that it caused false claims to be submitted, and that the existence of government knowledge of falsity does not vitiate the existence of the defendant's knowledge.

Thus, the vast majority of relevant evidence will be documents and testimony from Abbott, Abbott witnesses and Abbott's customers to whom Abbott marketed the spread on these drugs.  The only relevant government documents would be any documents showing that Abbott fully informed the government about the spreads on the Abbott drugs at issue and about Abbott's spread marketing activities, and that the government approved Abbott's conduct.  Even with respect to the government's common law fraud claim, the reasonable reliance will turn on whether it was reasonable for the government to rely on Abbott's price representations for the drugs at issue here, not whether the government reasonably relied on AWP-base reimbursement system that was subject to potential abuse by Abbott and/or other drug manufacturers.

Abbott also seeks to defend this case on the notion that pricing information it supplied to the compendia relied upon by the government to set reimbursement levels was inherently unreliable.  Whether Abbott is correct that it supplied inherently unreliable pricing information to the government is an issue that is being explored in fact discovery.  However, the relevant evidence on this point is Abbott's reported prices, Abbott's true sales prices, and what Abbott

told the government about its reported and actual prices. Nothing relevant to this could be found in the email files of a government employee.

> **B.     The Discovery Sought by Abbott in the Motion Has No Material Bearing on the Legal and Factual Issues in This Case.**

With a broad brush, Abbott claims that the United States has lost "relevant" or "critical" evidence. However, there is no support for Abbott's conclusory assertions. From the beginning of discovery, Abbott has worked to identify something that was not retained by CMS so that it could raise spoliation issues as part of its defense strategy. Despite countless hours spent deposing government witnesses and pouring over thousands of pages of documents, all that Abbott has been able to identify is material that is not relevant and that Abbott does not need – namely, the electronic versions of documents and information from certain ex-CMS employees.[4]

The fact that a particular government employee's email is not kept does not inherently give rise to a viable spoliation claim. The government does not have an obligation to preserve every document or email in the possession of every current or former employee who at some point or in some way worked on drug reimbursement matters. The documents have to bear materially on the claims and legal issues at stake in the case.

The documents Abbott has sought in discovery, for the most part have simply no bearing on Abbott's FCA or common law liability for its reporting of inflated pricing information and marketing government-funded spreads to its customers. From the outset, the United States has

---

[4] Abbott's sweeping arguments also ignore the relevant time periods. Some of the former employees left CMS or stopped working on drug reimbursement in the early 1990's. At that time most of CMS did not have email, and the few who did had an old system that would be unreadable because the technology is no longer available. Other former employees worked at CMS after the period of Abbott's scheme, so the relevance of their records is even more remote.

objected to the bulk of the discovery sought by Abbott as irrelevant, overly broad and unduly burdensome.  Nevertheless, the United States has produced tens of thousands of documents and numerous witnesses.  The discovery sought by Abbott does not relate to government approval of Abbott's particular conduct, which is what would be required for a "government knowledge" defense.  Instead, Abbott is seeking additional, cumulative information of generalized government knowledge of the existence of spreads that is irrelevant to any claim or defense in this case.

To the extent Abbott wants to identify HHS drug payment policies, all relevant regulations and statutes are publicly available.  In addition, all reports regarding the use of AWP as a basis for drug reimbursements are also publicly available.  In addition, the government has provided Abbott all non-privileged documents relating to those regulations, statutes and reports.

Abbott's principal basis for claiming that relevant material has been lost is the fact that, prior to 2007, CMS did not keep electronic records in drives or email accounts assigned to specific former employees.  Abbott argues that the electronic records of certain former employees are relevant to its defenses because at some point in time these employees had something to do with drug reimbursement policy at CMS.   Abbott's claim is specious, both as a factual and legal matter, and should be rejected by this Court.

First, as was described above, the CMS had record retention policies in place that emphasized the preservation of hard copy records, including print-outs of documents created electronically.  When employees left CMS, the agency had a process in place for supervisors and others within a division to retain necessary electronic documents of former employees, but not under the name of the former employee.  The fact that the United States has not retained the

computer hard drives of ex-CMS employees hardly constitutes evidence that records relevant to this case have been destroyed.

Second, and perhaps more critically, the non-public, internal communications of these employees are irrelevant in any event. Abbott's claim that such communications and documents contain evidence of "government knowledge and decision making" that could demonstrate a "lack of falsity" is without merit. It is well-settled law that the informal opinions or understandings of agency employees have no bearing on the legal interpretation of a statutory or regulatory term. *See United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004) (non-public or informal understandings of agency officials are not relevant). The information sought by Abbott is irrelevant because it was not publicly available or otherwise communicated to Abbott. Thus, such information has no bearing on Abbott's state of mind from 1991 to 2001 while it was engaged in the pricing scheme. Indeed, courts have limited such irrelevant discovery. *See United States ex rel. Wright v. Agip, et al.*, No. 03-CV-264 (E.D. Tx. June 29, 2007) (attached as Ex. F)(denying discovery regarding the views of government auditors that had not been communicated to defendants).

In any event, the United States has produced to Abbott numerous records and documents. The production includes many hard copy documents relating to the named former employees, including emails. Abbott has used those emails in the depositions it has chosen to take. Moreover, Abbott's claim that it needs the electronic version of these employees' records is groundless. The Rules of Civil Procedure were amended in December of 2006 to make explicit that parties could request discovery in "native format;" however, the rules and this Court have allowed the parties to enter into mutual agreements regarding the format to be exchanged. In this

14

case, the parties have agreed that the parties do not need to produce discovery in "native format."[5] Abbott cannot show that the "native format" or "metadata" of government documents would have any relevance in this case.

Abbott further argues that it needed the electronic version of the records of three former employees: Tom Scully and Bruce Vladeck, both former administrators of CMS, and Charles Booth, a supervisor who worked in different parts of CMS. However, Abbott's arguments with respect to these former employees are also meritless. Abbott's arguments fail for the same reasons stated above as to the other former employees. In addition, a closer look at these former employees reveals the lack of merit in Abbott's claim that the electronic version of their records would be relevant.

Tom Scully was the CMS administrator from approximately May 2001 to December of 2003. After engaging in its pricing scheme for ten years, Abbott reduced its reported prices approximately in May of 2001. Mr. Scully's tenure at CMS was almost entirely outside of the time period of Abbott's scheme. Mr. Scully's non-public statements within CMS have no relevance to Abbott's fraudulent pricing scheme or to this case. Moreover, Abbott has deposed Mr. Scully and has obtained testimony regarding the issues that Abbott claims are relevant.

In its brief, Abbott argues that Mr. Scully would have been able to answer questions about policy more accurately had he been asked questions about it in 1995. This is another example of Abbott's assertions that have no bearing on this case. As stated above, Mr. Scully

---

[5] For example, Abbott's production has not been in native format even when it had the documents in that form.

was at CMS only from mid 2001 to the end of 2003.  There is nothing from 1995 relating to Mr. Scully that CMS could have preserved because Mr. Scully did not work there.

Bruce Vladeck was the CMS administrator from approximately May 1993 to September 1997.  Dr. Vladeck's non-public emails within CMS would not be relevant to Abbott's fraudulent conduct or any legally valid defense.  They would not have affected Abbott's state of mind at the time.  Moreover, Dr. Vladeck was deposed by Abbott for two days and his testimony shows that CMS did not and would not have approved Abbott's pricing scheme.[6]

Dr. Vladeck testified that he was not aware of specific pricing information with respect to the Abbott drugs in this Complaint.  Ex. G at 604.  He testified that it was his understanding that drug manufacturers endeavored to keep their prices confidential.  *Id*. at 584-90.  Dr. Vladeck also said no manufacturer ever contacted him to advise him of spread marketing.  *Id*. at 580.  Dr. Vladeck testified he had only two discussions with drug manufacturers and they did not relate to Abbott or to the fraud involved in this case.  *Id*. at 576-77.  Dr. Vladeck further testified that he was not aware of anyone at CMS authorizing or condoning the conduct involved in this case: marketing drugs based on the difference between reported AWP and acquisition costs.  *Id*. at 573.  Dr. Vladeck testified that "we assumed that the manufacturers knew that prices published in the Red Book or the AWP prices that were publicly reported affected Medicare reimbursement."  *Id*. at 572.

---

[6] Dr. Vladeck also testified that although Ven-A-Care, a small pharmacy in Key West, Florida and the relator in this case, wrote him a letter as the CMS administrator, such a letter would have been addressed by others at CMS.  Ex. G at 265-68.  Dr. Vladeck said he had no knowledge of anything about Ven-A-Care.  *Id*. at 269-71.


Charles Booth was the Director of the Office of Payment Policy from approximately 1984 to 1994. This is the time period when some of his work related to drug reimbursement under Medicare Part B and Medicaid. Thereafter Mr. Booth worked on issues relating to hospitals (Medicare Part A) and issues relating to administrative budgets and costs at CMS. As explained above, most of CMS did not have email during the period when Mr. Booth's work had some focus on drug reimbursement. In addition, Abbott has deposed Mr. Booth, and is scheduled to depose him for a second day on October 29, 2007. Abbott has obtained extensive testimony on the topics it claims to be relevant.

In sum, Abbott's claim that CMS lost relevant evidence is wrong. The non-public and informal views of CMS' employees are not relevant to this case. Also, Abbott has not and cannot show that the electronic version of their records are somehow relevant or needed here.

## CONCLUSION

The relief requested by Abbott is not warranted. First, both the order and the affidavit requested are unnecessary. Far from having destroyed relevant evidence, CMS has preserved and produced far more than what would be relevant to the claims and defenses in this case. Also, Abbott has asked all CMS witnesses about their records and has taken eight depositions regarding records, and will shortly be taking a ninth deposition on these issues. Abbott's assertions about what is relevant are contrary to the applicable law. This motion was unwarranted and appears to be an attempt to distract the Court from the central issue in this case – Abbott's wrongdoing.

Therefore, the United States respectfully requests that the Court deny Abbott's motion.

Respectfully submitted,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | PETER D. KEISLER<br>ASSISTANT ATTORNEY GENERAL |
| George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>Phone: (617) 748-3272<br>Fax:   (617) 748-3373 | /s/ Justin Draycott<br>Joyce R. Branda<br>Daniel R. Anderson<br>Renée Brooker<br>Justin Draycott<br>Rebecca A. Ford<br>Gejaa T. Gobena<br>Civil Division |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA | Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C.  20044 |
| /s/ Ana Maria Martinez<br>Mark A. Lavine<br>Ana Maria Martinez<br>Ann St.Peter-Griffith<br>Special Attorneys for<br> the Attorney General<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL  33132<br>Phone:  (305) 961-9003<br>Fax: (305) 536-4101 | Phone: (202) 307-1088<br>Fax: (202) 307-3852 |

Dated: October 19, 2007

**CERTIFICATE OF SERVICE**

      I hereby certify that I have this day caused an electronic copy of the above United States' Response To Defendant Abbott's Motion for a Preservation Order to be served on all counsel of record via electronic service by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Date: October 19, 2007

                                                           /s/ Ana Maria Martinez
                                                           Ana Maria Martinez