# EXHIBIT E

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - -

IN RE: PHARMACEUTICAL           : MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE      : CIVIL ACTION

PRICE LITIGATION                : 01-CV-12257-PBS

----------------------------:

THIS DOCUMENT RELATES TO        :

State of Texas ex rel.          :

Ven-A-Care of the Florida       :

Keys, Inc. vs. Abbott           :

Laboratories, et al.            :

Case No. D-1-GV-04-001286       :


*********************************************

ORAL VIDEOTAPED DEPOSITION

REAGAN O'BRIEN

MAY 8, 2007

*********************************************


ORAL VIDEOTAPED DEPOSITION OF REAGAN O'BRIEN,
produced as a witness at the instance of the

### Page 2

Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 8th day of May, 2007, from 9:03 a.m. to 2:49 p.m., before Tim Fails, CSR in and for the State of Texas, reported stenographically, at the offices of Jones Day, 2727 N. Harwood Street, Dallas, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.

### Page 3

APPEARANCES

FOR THE STATE OF TEXAS:
   Ms. Diane S. Jacobs
   ATTORNEY GENERAL OF TEXAS
   Assistant Attorney General
   P.O. Box 12548
   Austin, Texas  78711-2548

FOR VEN-A-CARE OF THE FLORIDA KEYS, INC.:
   Mr. John E. Clark
   GOODE, CASSEB, JONES, RIKLIN, CHOATE & WATSON
   2122 North Main Avenue
   P.O. Box 120480
   San Antonio, Texas  78212-9680

### Page 4

APPEARANCES (continued)

FOR ABBOTT LABORATORIES:
   Mr. Louis P. Gabel
   JONES DAY
   51 Louisiana Avenue, N.W.
   Washington D.C.  20001-2113

   Ms. Tara Fumerton (Via Telephone)
   JONES DAY
   77 Wacker Drive
   Chicago, Illinois  60601

### Page 5

APPEARANCES (continued)

FOR UNITED STATES DEPARTMENT OF JUSTICE:
   Ms. Ana Maria Martinez
   UNITED STATES DEPARTMENT OF JUSTICE
   Assistant United States Attorney
   Southern District of Florida
   99 N.E. 4th Street
   Miami, Florida  33132

   Mr. Justin Draycott
   UNITED STATES DEPARTMENT OF JUSTICE
   601 D. Street, N.W.
   Box 261, Ben Franklin Station
   Washington, D.C.  20004

Page 6

```
 1           APPEARANCES (continued)
 2
 3  FOR BLUECROSS BLUESHIELD OF SOUTH CAROLINA:
 4    Mr. Kendall R. Walker
 5    BLUECROSS BLUESHIELD OF SOUTH CAROLINA
 6    Associate General Counsel Law Department
 7    1-20 at Alpine Road AA-270
 8    Columbia, South Carolina  29219
 9
10
11  FOR ROXANE LABORATORIES AND THE BOEHRINGER ENTITIES:
12    Mr. Jared Heck (Via Telephone)
13    KIRKLAND & ELLIS, L.L.P.
14    200 E. Randolph Drive
15    Chicago, Illinois  60601
```

Page 7

```
 1           APPEARANCES (continued)
 2
 3  FOR DEY:
 4     Mr. Cliff Katz (Via Telephone)
 5     KELLEY, DRYE & WARREN, L.L.P.
 6     101 Park Avenue
 7     New York, New York  10178
 8
 9  ALSO PRESENT:
10     Mr. Anthony Marlar (Videographer)
11     Mr. Troy Barsky, Law Office of General Counsel
12     for CMS (Via Telephone)
```

Page 8

```
                    INDEX
WITNESS                                     PAGE
REAGAN O'BRIEN
    Examination by Mr. Gabel .................  12
    Examination by Mr. Katz ..................  229

                EXHIBITS INDEX
NUMBER        DESCRIPTION                   PAGE
Exhibit Abbott 166  Plaintiffs' 1st Amended    38
                    Notice of Intention to
                    Take Oral Deposition
Exhibit Abbott 167  Letter dated March 27,
                    2003 from Beth A. O'Connor
                    to TrailBlazer Health
                    Enterprises, LLC with
                    enclosures                 69
Exhibit Abbott 168  Letter dated March 26, 2003
                    from Kelly P. Glauberman to
                    TrailBlazer Health Enterprises,
                    LLC c/o CT Corporation System
                    with enclosures            69
```

Page 9

```
              EXHIBITS INDEX (Continued)
NUMBER        DESCRIPTION                   PAGE
Exhibit Abbott 169  Collection of organization
                    charts, AWQ001-1300 through
                    1318                       95
Exhibit Abbott 170  TrailBlazer Staff Involved
                    In Document Production    126
Exhibit Abbott 171  Memorandum dated November 18,
                    2003 from Gregory G. Carson
                    to All Fiscal Intermediaries,
                    All Carriers, All Durable
                    Medical Equipment Regional 150
                    Carriers, HHD043-0003 and 0004
Exhibit Abbott 172  Memorandum dated August 14, 2003
                    from Gregory G. Carson to All
                    Fiscal Intermediaries, All
                    Carriers, HHD043-0001 and 0002 156
Exhibit Abbott 173  Response by the United States to
                    Abbotts First Set of Requests for
                    Production of Documents and
                    Tangible Things to the United
                    States                    180
```

3 (Pages 6 to 9)

Page 154

1  A. -- falls within the purview of the
2  department.
3  Q. So each department would --
4  A. Would maintain those records.
5  Q. Was there any documentation sent to
6  TrailBlazer employees informing them to halt the --
7  the destruction policies under CMS's guidelines for
8  document retention or destruction?
9      MS. MARTINEZ: Objection to form.
10 A. The department would have communicated
11 that within their own areas.
12 Q. (By Mr. Gabel) Would they have done so
13 by e-mail?
14 A. Possibly. I can't speak to that.
15 Q. Do you know if there is any
16 documentation showing TrailBlazer's communications
17 to its employees regarding the retention of
18 documents in connection with Exhibit Abbott 171?
19 A. Not to my knowledge.
20 Q. With respect to offsite storage, do you
21 know if any efforts were made to retain documents
22 in connection with Exhibit Abbott 171?

Page 155

1  A. This information would have been
2  communicated throughout the department in regards
3  to on-site and offsite storage.
4  Q. Do you know what efforts individuals in
5  each department took to ensure the retention of
6  documents in offsite storage locations?
7  A. Each individual I -- I can assume that
8  they would go by their department management
9  telling them not to destroy documents at CMS's
10 requests.
11 Q. And was -- do you know if that was
12 communicated to Iron Mountain?
13 A. I -- I don't have an awareness of that.
14 Q. Do you know if any documents exist
15 showing communication to Iron Mountain with respect
16 to the retention of documents in connection with
17 Exhibit Abbott 171?
18 A. Not to my knowledge.
19 Q. Do you know if any efforts were taken at
20 Iron Mountain to not destroy any documents in
21 connection with the instructions set forth in
22 Exhibit Abbott 171?

Page 156

1      MS. MARTINEZ: Objection to form.
2  A. Not to my knowledge.
3  Q. (By Mr. Gabel) And you see in the final
4  paragraph it mentions Troy Barsky of health and
5  human services office of general counsel.
6      Does that refresh your recollection
7  on whether he was the individual who was in contact
8  with TrailBlazer regarding the 2003 subpoenas?
9      MS. MARTINEZ: Objection to form.
10     MR. WALKER: Same objection.
11 A. I personally would not have been in
12 contact with him, so I can't speak to that.
13 Q. (By Mr. Gabel) Okay. I'm going to mark
14 Exhibit Abbott 172. And that is Bates No.
15 HHD043-0001. It's an August 14th, 2003 memo.
16     (Exhibit Abbott 172 marked)
17 Q. (By Mr. Gabel) It's a memo from the
18 director of Medicare contract management group from
19 the center for Medicare management to all fiscal
20 intermediaries and all carriers.
21     Have you seen this document before?
22 A. No.

Page 157

1  Q. Not in 2004 or 2007?
2  A. No.
3  Q. Okay. Set that aside.
4      Back to Exhibit Abbott 171, were
5  there any other instructions subsequent to November
6  2003 from CMS to TrailBlazer regarding the
7  retention of documents in connection with
8  prescription drug reimbursement?
9  A. In 2003?
10 Q. After the November 2003 notice, was
11 there a follow-up --
12     MS. MARTINEZ: Objection --
13 Q. (By Mr. Gabel) -- notice?
14     MS. MARTINEZ: -- to form.
15 A. My understanding there were additional
16 requests in January and February of 2004 in which
17 related to this document and retention policies.
18 Q. (By Mr. Gabel) Were there additional
19 instructions regarding retention?
20 A. The request --
21     MS. MARTINEZ: I'm going to object
22 to form.

**Page 158**

1  MR. WALKER: Same objection.
2  MS. MARTINEZ: You know, on your CMS
3  guidelines the -- the carrier retains all kind of
4  documents and has retention policies and all that
5  stuff. I believe that you're trying to ask about
6  preservation.
7  MR. GABEL: I --
8  MS. MARTINEZ: I'm trying
9  distinguish because retention could comply to
10 anything. I'm just saying --
11 Q. (By Mr. Gabel) Yeah. When I say
12 retention, I mean preserving documents, i.e., not
13 destroying documents that may be relevant to the
14 drug reimbursement cases.
15         Do you understand --
16 A. Uh-huh.
17 Q. -- that? I just want --
18 A. Yes.
19 Q. -- to make sure that it's clear.
20         Were there any other instructions to
21 preserve or retain documents that were related to
22 drug reimbursement?

**Page 159**

1  A. The subsequent requests in 2004 were
2  related to the 2003 requests. They were an
3  exception of that.
4  Q. Any other preservation instructions that
5  have been issued since 2004?
6  A. Not to --
7  MR. WALKER: Object to --
8  A. -- my knowledge.
9  MR. WALKER: -- the form.
10 MS. MARTINEZ: Objection to --
11 Q. (By Mr. Gabel) I'm sorry.
12 MS. MARTINEZ: -- the form.
13 Q. (By Mr. Gabel) What was your answer?
14 A. Not to my knowledge.
15 MR. WALKER: You mean ever or just
16 with reference to 2004?
17 Q. (By Mr. Gabel) With reference to drug
18 reimbursement and the litigation involving drug
19 reimbursement.
20 A. Not to my knowledge.
21 Q. Thank you.
22         And is that correct that you -- that

**Page 160**

1  not to your knowledge -- sorry. Strike all of
2  that.
3          Is that correct with respect to CMS
4  instructions regarding --
5  MS. MARTINEZ: Objection --
6  Q. (By Mr. Gabel) -- preservation of
7  documents in connection with the drug reimbursement
8  cases?
9  A. Are you asking that we did not receive
10 any others?
11 Q. Yes.
12 A. To my knowledge --
13 Q. Okay.
14 A. -- that is correct.
15 Q. Any internally generated instructions
16 from TrailBlazer regarding the preservation of
17 documents related to --
18 A. Not to my knowledge.
19 MS. MARTINEZ: Counsel, let me just
20 clarify. Between the two of you, you may not be
21 understanding what you mean. If you mean also the
22 Abbott case, are you trying to extend it to the

**Page 161**

1  present and the 2007 production in two --
2  Q. (By Mr. Gabel) I'm asking --
3  MS. MARTINEZ: -- directions?
4  Q. (By Mr. Gabel) -- for all cases
5  involving --
6  MR. WALKER: Anything related to
7  drugs?
8  Q. (By Mr. Gabel) -- the drug reimbursement
9  -- the allocations of over-reimbursement for drugs.
10         So if that changes your answer,
11 whether it is the Lupron case, the AWP MDL case,
12 the Ven-A-Care case against Abbott that the
13 government has intervened in --
14 MS. MARTINEZ: Because they received
15 additional -- once you get into the 2007 --
16 MR. GABEL: Okay.
17 MS. MARTINEZ: -- production she
18 might have more information about that. I'm just
19 not sure if --
20 Q. (By Mr. Gabel) Okay. Well, with respect
21 to any case involving allegations of
22 over-reimbursement for prescription drugs, have

Page 162

1  there been any other directions to preserve
2  documents after February of 2004?
3      A.  Yes, January 2007.
4      Q.  Anything between February of 2004 and
5  January of 2007?
6      A.  Not to my knowledge.
7      Q.  Any internally created directions to
8  preserve documents in connection with the cases
9  alleging over-reimbursement for prescription drugs,
10 any internally created instructions by TrailBlazer?
11     A.  Not to my knowledge.
12     Q.  Did you have any commune --
13 communications with the Texas Attorney General's
14 Office relating to the preservation of documents in
15 connection with the cases alleging
16 over-reimbursement for drugs?
17     A.  Not that I saw.
18     Q.  Did anyone within TrailBlazer determine
19 if the documents that were collected were protected
20 by any privileges of any sort?
21         MR. WALKER: Object to the form.
22         MS. MARTINEZ: And I object to the

Page 163

1  form, too.
2      A.  In 2004?
3      Q.  (By Mr. Gabel)  In 2004.
4          MR. WALKER: Same objection.
5      A.  I -- I can't speak to that.
6      Q.  (By Mr. Gabel)  Did you or anyone, to
7  your knowledge, withhold documents based upon a
8  determination that the document was privileged in
9  2004?
10     A.  From the files the only thing I can
11 ascertain is there were some documents held back
12 because of personal health information.
13     Q.  Okay.  What about with respect to 2007,
14 were any documents withheld by you or anyone, to
15 your knowledge, at TrailBlazer based upon a
16 determination that the document was privileged?
17     A.  I know there were some documents that we
18 discussed with counsel.
19         MS. MARTINEZ: Do not discuss the
20 content of any communication with counsel, okay?
21         THE WITNESS: Okay. Okay.
22     Q.  (By Mr. Gabel)  Did TrailBlazer

Page 164

1  independently decide to hold back any documents --
2      A.  No.
3      Q.  -- based on privilege?
4          Do you know if CMS or the Department
5  of Justice decided to withhold documents based upon
6  privilege?
7      A.  Uh-huh.
8          MR. WALKER: Objection. That goes
9  into the directions that TrailBlazer would have
10 received from CMS.
11         MS. MARTINEZ: Right. And I don't
12 see what --
13         MR. GABEL: Well, just the --
14         MS. MARTINEZ: -- the point of
15 asking the witness if you have a privilege log.
16         MR. GABEL: I want to know if
17 they're reflected on the privilege log.
18         MS. MARTINEZ: Well --
19         MR. GABEL: And so I mean --
20         MS. MARTINEZ: -- I mean, if
21 attorneys gave you a privilege log --
22         MR. GABEL: Yeah. I --

Page 165

1          MS. MARTINEZ: -- take the
2  representation that those are the documents
3  withheld, but --
4          MR. GABEL: I mean, do we --
5          MS. MARTINEZ: -- I mean --
6          MR. GABEL: -- do we --
7          MS. MARTINEZ: -- how could she --
8          MR. GABEL: I guess --
9          MS. MARTINEZ: How could she look
10 over the shoulder of a lawyer and tell you whether
11 or not a lawyer did their job?  I mean --
12         MR. GABEL: I wanted to know who did
13 the job.
14         MS. MARTINEZ: Okay. The lawyers
15 did.
16         MR. GABEL: Was it TrailBlazer or
17 was it CMS or DOJ?
18     Q.  (By Mr. Gabel)  And that's -- from your
19 answer, I understand that TrailBlazer did not
20 independently withhold any documents based upon
21 privilege?
22     A.  Correct.