# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |

MDL NO. 1456
Civil Action No. 01-12257-PBS

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

*The City of New York v. Abbott Laboratories, Inc., et al.*
(S.D.N.Y. No. 04-CV-06054)

*County of Albany v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00425)

*County of Allegany v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06231)

*County of Broome v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00456)

*County of Cattaraugus v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06242)

*County of Cayuga v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00423)

*County of Chautauqua v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06204)

*County of Chemung v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06744)

*County of Chenango v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00354)

*County of Columbia v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00867)

[Caption Continues on Next Page]

# ANSWER AND AFFIRMATIVE DEFENSES OF SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE TO REVISED FIRST AMENDED CONSOLIDATED COMPLAINT

*County of Cortland v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00881) )

*County of Dutchess v. Abbott Laboratories, Inc., et al.* )
(S.D.N.Y. No. 05-CV-06458) )

*County of Essex County v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00878) )

*County of Fulton v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00519) )

*County of Genesee v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06206) )

*County of Greene v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00474) )

*County of Herkimer v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00415) )

*County of Jefferson v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00715) )

*County of Lewis v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00839) )

*County of Madison v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00714) )

*County of Monroe v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06148) )

*County of Nassau v. Abbott Laboratories, Inc., et al.* )
(E.D.N.Y. No. 04-CV-5126) )

*County of Niagara v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06296) )

*County of Oneida v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00489) )

*County of Onondaga v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00088) )

*County of Ontario v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06373) )

*County of Orange v. Abbott Laboratories, Inc., et al.* )
(S.D.N.Y. No. 07-CV-2777) )

*County of Orleans v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06371) )

*County of Putnam v. Abbott Laboratories, Inc., et al.* )
(S.D.N.Y. No. 05-CV-04740) )

[Caption Continues on Next Page]

*County of Rensselaer v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00422) )

*County of Rockland v. Abbott Laboratories, Inc., et al.* )
(S.D.N.Y. No. 03-CV-7055) )

*County of Saratoga v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00478) )

*County of Schuyler v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06387) )

*County of Seneca v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06370) )

*County of St. Lawrence v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00479) )

*County of Steuben v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06223) )

*County of Suffolk v. Abbott Laboratories, Inc., et al.* )
(E.D.N.Y. No. CV-03-229) )

*County of Tompkins v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00397) )

*County of Ulster v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 06-CV-0123) )

*County of Warren v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00468) )

*County of Washington v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00408) )

*County of Wayne v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06138) )

*County of Westchester v. Abbott Laboratories, Inc., et al.* )
(S.D.N.Y. No. 03-CV-6178) )

*County of Wyoming v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 03-CV-6379) )

AND )

*County of Yates v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06172) )

Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline (hereinafter

"GSK"), by and through its attorneys, hereby states as an Answer and Affirmative Defenses to

the Revised First Amended Consolidated Complaint in the above-captioned matter, dated

October 5, 2007, as follows:

## **PRELIMINARY STATEMENT**

The Revised First Amended Consolidated Complaint (the "Complaint") improperly refers

to GSK, other defendants, and third parties on a collective basis, failing to plead with requisite

particularity allegations against GSK.  This is insufficient to apprise GSK (let alone each

separate entity) of the allegations asserted against it.  GSK has nevertheless attempted to respond

to Plaintiffs' allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions

of other persons or entities, GSK is generally without knowledge or information sufficient to

form a belief as to the truth of those allegations.  GSK states that it is answering Plaintiffs'

allegations solely on behalf of itself, even when Plaintiffs' allegations refer to alleged conduct by

GSK and other persons or entities.

The Complaint also contains purported quotations from a number of sources.  In

answering allegations consisting of quotations, GSK's failure to deny that the material quoted

was contained in a document or was uttered by the person or entity quoted or GSK's reference to

the full document instead of the quote shall not constitute an admission that the substantive

content of the quote or document is or is not true or that the material is relevant or admissible in

this action.

GSK denies each and every allegation contained in the Complaint and the exhibits

thereto, except as specifically herein admitted, and any factual averment admitted herein is

admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole.  In addition, GSK specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint.  For ease of reference, GSK has included in this Answer and Affirmative Defenses the caption used in the Complaint, but specifically denies any allegations contained in, or inferences that could be drawn from, that caption.

These comments and objections are incorporated, to the extent appropriate, into each unnumbered and numbered paragraph of this Answer.

## SPECIFIC RESPONSES

To the extent that the unnumbered paragraph immediately following the Table of Contents (the "Complaint's Introductory Paragraph") makes allegations against GSK, GSK denies them, except admits that the City of New York and certain New York Counties (collectively, the "Counties") have made allegations against a number of defendants, including GSK, as set forth in the Complaint.  To the extent that the Complaint's Introductory Paragraph states legal conclusions, no response is required.  To the extent the allegations of the Complaint's Introductory Paragraph are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations.

1.      GSK admits that the Counties seek to bring this action as alleged in Paragraph 1 of the Complaint, but GSK denies there is any basis for them to do so and denies that they are entitled to any relief.  GSK also admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiffs with respect to any such NDCs.  To the extent the remaining allegations in Paragraph 1 are directed at GSK, GSK denies them.  GSK specifically denies that it has been involved in "fraudulent and misleading

schemes" or that the New York State Medicaid Program has been "overcharge[d]" for prescription drugs.  To the extent the remaining allegations in Paragraph 1 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

2.      GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 or the exhibit referenced therein.  To the extent the allegations in Paragraph 2 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

3.      GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 or its footnote, except admits that it pays Medicaid rebates to the State of New York and that such rebates lower the price New York Medicaid pays for GSK's prescription drugs.  To the extent the allegations in Paragraph 3 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

4.      To the extent the allegations in Paragraph 4 are directed at GSK, GSK denies them.  GSK specifically denies that it was involved in "fraudulent schemes," the "manipulation of the Medicaid program" or the "intentional fraudulent inflation" of wholesale prices, or that the Counties' Medicaid Programs were "overcharge[d]."  To the extent the allegations in Paragraph 4 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

5.      To the extent the allegations in Paragraph 5 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

6.      To the extent the allegations in Paragraph 6 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. GSK otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 or its footnote, except GSK denies that it "actively encourage[s] physicians to write DAW in order to secure AWP-based reimbursement for pharmacies."

7.      To the extent the allegations in Paragraph 7 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

8.      GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, except that GSK admits that New York's Medicaid program has, for some period(s), obtained prescription drug pricing information from First DataBank.

9.      To the extent the allegations in Paragraph 9 are directed at GSK, GSK denies them.  GSK specifically denies that it "control[s] and unlawfully inflates[s]" average wholesale prices ("AWPs") or federal upper limits ("FULs").  To the extent the allegations in Paragraph 9 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

10.      To the extent the allegations in Paragraph 10 are directed at GSK, GSK denies them, except GSK admits that it has provided the wholesale list price of its drugs to certain industry pricing compendia and that publishers apply their own markups to the list prices in order to determine what AWP to publish for GSK's drugs.  GSK specifically denies that it "set[s] AWP."  To the extent the allegations in Paragraph 10 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

11.     To the extent the allegations in Paragraph 11 are directed at GSK, GSK denies them, except that GSK admits that for many years it has been well-known, including by Medicaid, that in order to establish an AWP for GSK's prescription pharmaceuticals, the commercial price reporting services generally chose and applied a mark-up of 1.20 or 1.25 to the wholesale list prices reported to them by GSK.  To the extent the allegations in Paragraph 11 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

12.     To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at GSK, GSK denies them.  GSK specifically denies that it has "report[ed] a false and inflated WAC or WAC equivalent" to industry pricing compendia.  To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

13.     To the extent the allegations in Paragraph 13 are directed at GSK, GSK denies them, except GSK admits that CMS has established FULs for certain drugs.  GSK specifically denies that it "control[s] the FUL."  To the extent the allegations in Paragraph 13 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. To the extent the allegations in Paragraph 13 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

14.     To the extent the allegations in Paragraph 14 are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 14 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

15.     To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

16-17.  To the extent the allegations in Paragraphs 16-17 are directed at GSK, GSK denies them.  GSK specifically denies that it "submit[s] false and inflated price information to the publishing compendia."  GSK further denies the characterization of "spread" in Paragraphs 16-17.  To the extent the allegations in Paragraphs 16-17 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

18-19.  GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 18-19.

20.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.  To the extent the allegations in Paragraph 20 refer to a Wall Street Journal article, the article speaks for itself, and any characterizations thereof are denied.

21.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 or the exhibit referenced therein.

22.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.     To the extent the allegations in Paragraph 23 are directed at GSK, GSK denies them.  GSK specifically denies that it has "secretly polluted the entire reimbursement system with false and inflated prices."  To the extent the allegations in Paragraph 23 are directed at

parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

24.     In response to the allegations in paragraph 24, GSK admits that J.P. Garnier is the chief executive officer of GSK and that Dr. Garnier spoke to shareholders in 2003.  GSK avers that the record of Dr. Garnier's remarks to shareholders speaks for itself.  GSK specifically denies that any statements by Dr. Garnier were "deliberately and entirely false" and that Exhibit B "evidence[s]" that any such statements were false.  GSK further denies all characterizations of Dr. Garnier's remarks in this paragraph 24 of the Complaint, as well as all other allegations in Paragraph 24 or the exhibit referenced therein that are directed at GSK.  GSK further specifically denies that it has "cause[d] false and inflated published reimbursement prices to issue" and that GSK marketed "spreads" across its product line and benefited from any such "spreads."  To the extent the allegations in Paragraph 24 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

25.     To the extent the allegations in Paragraph 25 are directed at GSK, GSK denies them.  GSK specifically denies that it has "create[d], inflate[d], manipulate[d] and market[ed] the spread for both brand name and generic drugs."  To the extent the allegations in Paragraph 25 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

26.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, except that GSK admits that government reports have been published for many years concerning AWPs and acquisition costs.  To the extent the allegations

in Paragraph 26 refer to a specific HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.

27.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, except that GSK admits that certain Congressional committees have held hearings on Medicaid drug pricing issues.  To the extent the allegations in Paragraph 27 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

28.     To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at GSK, GSK denies them.  GSK specifically denies that it has engaged in "intentional AWP inflation" or "fraud" and that the data on Exhibit B demonstrate AWP inflation or a lack of understanding of AWPs by the referenced parties.  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

29.     To the extent the allegations in Paragraph 29 are directed at GSK, GSK denies them.  GSK specifically denies that it has "reported or caused to be reported [] false and inflated" WACs or engaged in any "unlawful and undisclosed manipulation of the price reporting system." To the extent the allegations in Paragraph 29 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

30.     To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at GSK, GSK denies them.  GSK specifically denies that it has engaged in any "pricing misconduct."  To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

31.     To the extent the allegations in Paragraph 31 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  GSK admits that it pays Medicaid rebates as required by law.

32.     To the extent the allegations in Paragraph 32 are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 32 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

33.     To the extent the allegations in Paragraph 33 or its footnote are directed at GSK, GSK denies them.  GSK specifically denies that it has "abused" any Medicaid statute.  To the extent the allegations in Paragraph 33 or its footnote are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 33 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

34.     To the extent the allegations in Paragraph 34 refer to a HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 34 are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 34 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

35.     In response to the allegations in Paragraph 35, GSK admits that it settled, without an admission of liability, a government investigation regarding relabeling issues relating to Medicaid, Medicare, and the Kaiser Permanente Medical Care Program.  GSK denies any and all characterizations of this settlement and any and all other allegations in this paragraph directed at GSK.  To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

36.     To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth, but GSK specifically denies that any investigation or settlement without an admission of liability "illustrates" fraud or wrongdoing of any kind.

37.     GSK admits that the Counties seek the relief listed in Paragraph 37, but GSK denies there is any basis for them to do so and denies that they are entitled to any relief.  To the extent the remaining allegations in Paragraph 37 are directed at GSK, GSK denies them.  GSK specifically denies that it has been involved in any "fraudulent and illegal manipulation of drug prices."  To the extent the remaining allegations in Paragraph 37 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

38.     GSK admits that the Counties seek to bring this action as alleged in Paragraph 38, but GSK denies there is any basis for them to do so and denies that they are entitled to any relief.

39-40.  Paragraphs 39-40 state legal conclusions as to which no response is required.  To the extent a response is deemed to be required, GSK denies the allegations in Paragraphs 39-40,

except admits that each of the captioned matters has been transferred to this Court by the Judicial Panel on Multi District Litigation pursuant to 28 U.S.C. § 1407.

41-42A.        GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 41-42 and 42A.  To the extent the allegations in Paragraphs 41-42 and 42A refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

43.        GSK denies the allegations in Paragraph 43 and its footnote, and refers to Case Management Order No. 33, dated September 14, 2007, ¶¶ 1, 3 for which plaintiffs are suing which defendants, to the extent such defendants have been served.

44.        To the extent the allegations in Paragraph 44 are directed at GSK, GSK denies them, except GSK admits that it manufactures and sells prescription drugs and that it transacts business in the State and City of New York.  GSK specifically denies that it "manufactures, markets and sells prescription drugs with false and inflated wholesale prices."  To the extent the allegations in Paragraph 44 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

45-63.  The allegations in Paragraphs 45-63 are directed to other defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 45-63.

64.        With respect to the allegations in Paragraph 64 and the sub-parts thereof, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") admits that it is a

Pennsylvania corporation engaged in the manufacturing and selling of pharmaceuticals and that its principal place of business is One Franklin Plaza, 16th and Race Streets, Philadelphia PA, 19102.  With respect to the allegations concerning GlaxoSmithKline, plc, GSK admits only that GlaxoSmithKline, plc is a foreign holding company that has not been served with process in this action and is not required to respond to this Complaint.  With respect to the allegations concerning Glaxo Wellcome, Inc., GSK admits only that Glaxo Wellcome, Inc. no longer exists because it was merged into GSK in 2001, and that Glaxo Wellcome, Inc. has not been served with process in this action and is not required to respond to this Complaint.

65-84.  The allegations in Paragraphs 65-84 are directed to other defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 65-84.

85-88.  The allegations in Paragraphs 85-88 are directed to unknown defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies that it was involved any conspiracy related to drug pricing with either named or unknown defendants.  GSK also denies that it has engaged in any "wrongful acts" related to drug pricing.

89.     With respect to the allegations in Paragraph 89, GSK admits that Medicaid was established by Title XIX of the Social Security Act.  GSK further states that the provisions of Title XIX speak for themselves, and any characterizations thereof are denied.

90.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, except GSK admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.  To the

extent the allegations in Paragraph 90 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

91-99.  GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 91-99 or their footnotes.  To the extent the allegations in Paragraphs 91-99 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

100.    GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100, except that GSK admits that national drug codes are assigned to prescription drugs and that the U.S. Food and Drug Administration publishes such codes.

101-111.      GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 101-111 or their footnotes.  To the extent the allegations in Paragraphs 101-111 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

112.    GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112, except that GSK admits that pricing compendia such as Blue Book publish AWPs and FULs and that New York's Medicaid program has, for some period(s), obtained prescription drug pricing information from First DataBank.  GSK denies that it has control over published AWPs and FULs.

113.    To the extent the allegations in Paragraph 113 are directed at GSK, GSK denies them.  GSK specifically denies that it has "fraudulently conceal[ed]" the "true prices" of its drugs.  To the extent the allegations in Paragraph 113 are directed at parties other than GSK,

GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 113 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

114-115.      To the extent the allegations in Paragraphs 114-115 are directed at GSK, GSK denies them.  GSK specifically denies that it reports "reimbursement prices . . . to the publishing compendia" or that it has engaged in the "purposeful manipulation of reimbursement prices generally, and AWP in particular."  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 114-115 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 114-115 refer to HHS OIG reports, the reports speak for themselves, and any characterizations thereof are denied.

116-123.      With respect to the allegations in Paragraphs 116-123 and their footnotes, GSK admits that the Medicaid statute includes a rebate provision, that it has entered into a rebate agreement with the Secretary of Health and Human Services, and that rebates help reduce state Medicaid drug expenditures.  GSK further states that the rebate provision speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 116-123 or their footnotes refer to additional statutes, regulations or congressional reports, those sources also speak for themselves, and any characterizations thereof are also denied.

124-125.      GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 124-125.  To the extent the allegations in Paragraphs 124-

125 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  GSK denies that the Counties are intended third-party beneficiaries of Medicaid rebate agreements.

126.    With respect to the allegations in Paragraph 126, GSK admits that drug manufacturers report Best Prices and AMPs to HHS.  To the extent the allegations in Paragraph 126 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

127-130.    GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 127-130, except admits that it reports Medicaid information to HHS and pays rebates to States.  To the extent the allegations in Paragraphs 127-130 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

131.    To the extent the allegations in Paragraph 131 contain legal conclusions, no response is required.  To the extent the allegations in Paragraph 131 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

132.    To the extent the allegations in Paragraph 132 are directed at GSK, GSK admits that it has executed a rebate agreement with HHS.  GSK further states that the rebate agreement speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 132 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 132 refer to the Model Rebate Agreement, that document also speaks for itself, and any characterizations thereof are also denied.

133-136.    To the extent the allegations in Paragraphs 133-136 contain legal conclusions, no response is required.  To the extent the allegations in Paragraphs 133-136 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

137-143.    GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 137-143, except GSK denies that the Counties are Medicaid payors or intended third-party beneficiaries of Medicaid rebate agreements.  To the extent the allegations in Paragraphs 137-143 contain legal conclusions, no response is required. To the extent the allegations in Paragraphs 137-143 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

144.    To the extent the allegations in Paragraph 144 are directed at GSK, GSK denies them.  GSK specifically denies that it "intentionally reported, or caused to be reported, to industry publications wholesale pricing information that it knew to be false and inflated."  GSK further denies the characterization of "spread" in Paragraph 144.  To the extent the allegations in Paragraph 144 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

145-149.    With respect to the allegations in Paragraphs 145-149, GSK admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein.  To the extent the remaining allegations in Paragraphs 145-149 or Exhibit B are directed at GSK, GSK denies them.  GSK specifically denies that it "routinely submitted fraudulent prices" to pricing compendia.  GSK further denies

the characterization of "spread" in Paragraphs 145-149 and Exhibit B.  To the extent the remaining allegations in Paragraphs 145-149 or Exhibit B are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

150-153.     To the extent the allegations in Paragraphs 150-153 are directed at GSK, GSK denies them.  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 150-153 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

154.     Paragraph 154 purports to contain a statement from HHS OIG, but GSK denies knowledge or information sufficient to form a belief as to its accuracy because the source thereof is not provided.  To the extent the source of the statement is provided, the source speaks for itself, and any characterizations thereof are denied.  GSK further specifically denies that HHS has ever required that list prices reported to pricing compendia by manufacturers reflect discounts or other pricing concessions.

155-158.     To the extent the allegations in Paragraphs 155-158 are directed at GSK, GSK denies them, except that GSK admits that certain discounts and other pricing concessions are sometimes made available to certain GSK customers.  GSK further states that these allegations wrongly assume that discounts and other price concessions are supposed to be included in list prices reported to industry compendia.  To the extent the allegations in Paragraphs 155-158 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

159-165.      GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 159-165.  To the extent the allegations in Paragraphs 159-165 refer to articles or reports, those sources speak for themselves, and any characterizations thereof are denied.

166.      To the extent the allegations in Paragraph 166 are directed at GSK, GSK denies them.  GSK specifically denies that it "control[s] the published reimbursement prices."  To the extent the allegations in Paragraph 166 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

167.      GSK denies the allegations in Paragraph 167.

168-172.      To the extent the allegations in Paragraphs 168-172 are directed at GSK, GSK denies them, except that GSK admits that it has executed a rebate agreement with HHS.  The rebate agreement speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 168-172 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 168-172 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

173-176.      In response to the allegations in Paragraph 173-176, GSK admits that it settled, without an admission of liability, a government investigation regarding relabeling issues with relating to the Kaiser Permanente Medical Care Program.  GSK denies any and all characterizations of this settlement and any and all other allegations in this paragraph directed at GSK.  To the extent the allegations in Paragraphs 173-176 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent

the allegations in Paragraphs 173-176 refer to statutes, regulations or reports, those sources speak for themselves, and any characterizations thereof are denied.

177.    To the extent the allegations in Paragraph 177 are directed at GSK, GSK denies them, except GSK admits that GSK has responded to certain government requests for information concerning pharmaceutical pricing issues and has settled certain government investigations of pharmaceutical pricing issues without any admission of liability.  To the extent the allegations in Paragraph 177 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

178-194.        To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at GSK, GSK denies them, except GSK admits that GSK has responded to certain government requests for information concerning pharmaceutical pricing issues and has settled certain government investigations of pharmaceutical pricing issues without any admission of liability.  To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 178-194 or their footnotes refer to reports, articles, letters, congressional hearing transcripts, or other documents, those sources speak for themselves, and any characterizations thereof are denied.

195.    To the extent the allegations in Paragraph 195 are directed at GSK, GSK denies them, except GSK admits that its contracts with purchasers sometimes included discounts.  To the extent the allegations in Paragraph 195 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

196.    To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

197-476.    The allegations in Paragraphs 197-476 are directed to other defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 197-366.

477.    GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 477 or its footnote or the exhibit referenced therein.  No response is required to the Counties' characterizations of their own claims.  GSK specifically denies that the Counties' claims have merit and that it engaged in any "fraud."

478.    GSK denies the allegations in Paragraph 478 and the exhibit referenced therein.

479.    GSK denies the allegations in Paragraph 479.

480.    GSK denies the allegations in Paragraph 480.

481.    GSK denies the allegations in Paragraph 481, except that GSK admits that prior to the merger that formed GSK, Glaxo Wellcome, Inc. and SmithKline Beecham Corporation competed in the physician-administered injectable anti-emetic market with the products Zofran and Kytril, that the companies were sometimes aware of the acquisition costs paid by their customers for the anti-emetic they sold them, and that the companies were generally aware of their own and their competitors' published AWPs for such injectable anti-emetics.

482.     GSK denies the allegations in Paragraph 482, except that GSK admits that in 1996 Glaxo Wellcome, Inc. increased its list price for Zofran injectibles and offered discounts to some of its customers.

483.     GSK denies the allegations in Paragraph 483, except that GSK admits that Glaxo Wellcome, Inc. employees typically considered the potential impact of list price increases prior to implementing them and sometimes communicated their analysis in writings, which speak for themselves.

484.     GSK denies the allegations in Paragraph 484, except that GSK admits that Glaxo Wellcome, Inc. employees typically considered the potential impact of list price increases prior to implementing them and sometimes communicated their analysis in writings, which speak for themselves.

485.     GSK denies the allegations in Paragraph 485, except that GSK admits that it has settled AWP claims relating to Zofran and Kytril injectibles with the State of New York.

486.     GSK denies the allegations in Paragraph 486, except that GSK admits that for certain products it sometimes offered discounts and/or other pricing concessions to certain customers.

487.     GSK denies the allegations in Paragraph 487, except that GSK admits that J.P. Garnier is the chief executive officer of GSK and that Dr. Garnier spoke to shareholders in 2003. GSK avers that the record of Dr. Garnier's remarks to shareholders speaks for itself.  GSK specifically denies that any statements by Dr. Garnier were "purposefully misleading and false,"

that GSK or Dr. Garnier "deliberately concealed" facts, and that GSK generally "competed on spread and benefited from spread."

488.    GSK denies the allegations in Paragraph 488, including in particular that it engaged in the "wrongful conduct described herein" and that any such finding has been made in connection with any government investigation identified in Paragraph 488.  GSK denies knowledge or information sufficient to form a belief as to the truth of the allegation that it has been investigated for such alleged conduct by the Attorney General of the State of Colorado. GSK admits only that GSK has been the subject of investigations or lawsuits concerning price reporting issues by the other governmental entities named in Paragraph 488.

489.    GSK denies the allegations in Paragraph 489, including in particular that it engaged in "wrongdoing," and admits only that GSK has been the subject of lawsuits concerning price reporting issues by the other governmental entities named in Paragraph 489.

490.    GSK denies the allegations in Paragraph 490, except that it admits that in 2003, without admitting liability for any of its actions, it entered into civil settlement agreements with the United States and various states, including the State of New York, to settle certain civil and administrative claims relating to allegations that GSK failed to report its "best price" under the Medicaid Rebate statute, 42 U.S.C. § 1396r-8, for two of its products (Flonase and Paxil) for certain quarters, which agreements speak for themselves.

491.    GSK denies the allegations in Paragraph 491, except that GSK admits that at the time it entered into the 2003 Settlement described in its answer to Paragraph 490 above, it entered into a Corporate Integrity Agreement ("CIA") with the Office of the Inspector General of the United States Department of Health and Human Services, which CIA speaks for itself.

492.     To the extent the allegations in Paragraph 492 refer to the CIA described in GSK's response to Paragraph 491 above, the CIA speaks for itself, and any characterizations thereof are denied.

493.     To the extent the allegations in Paragraph 493 refer to the CIA described in GSK's response to Paragraph 491 above, the CIA speaks for itself, and any characterizations thereof are denied.

494.     To the extent the allegations in Paragraph 494 refer to the CIA described in GSK's response to Paragraph 491 above, the CIA speaks for itself, and any characterizations thereof are denied.

495.     To the extent the allegations in Paragraph 495 refer to the CIA described in GSK's response to Paragraph 491 above, the CIA speaks for itself, and any characterizations thereof are denied.

496.     GSK denies the allegations in Paragraph 496.

497.     GSK denies the allegations in Paragraph 497, except that GSK admits that it has received requests for information from certain Congressional committees concerning drug pricing issues.  GSK further avers that the prices it reported to the commercial price reporting services were list prices that were well-understood not to include discounts and pricing concessions, if any.

498.     GSK denies the allegations in Paragraph 498.

499.    GSK denies the allegations in Paragraph 499, except that GSK admits that in 2000 GSK sold 150 mg Zantac tablets to East Jefferson Hospital at the stated price, that First Data Bank published an AWP at that time of $1.79 per pill, and that the Counties make the allegations set forth in the last sentence.  GSK specifically denies that it engaged in any unlawful activity or that there were "actionable spreads" on Zantac or any of the other products listed in Exhibit B-19 of the Complaint.

500.    GSK denies the allegations in Paragraph 500, except that GSK avers that the prices it reported to the commercial price reporting services were list prices that were well-understood not to include discounts and pricing concessions, as were the AWPs published by those services.

501.    GSK denies the allegations in the first sentence of Paragraph 501, including in particular the allegation that the Zantac AWP was "false."  GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 501.

502.    GSK denies the allegations in Paragraph 502 and specifically avers that it considered and treated all sales and prices appropriately for purposes of determining and reporting AMP and Best Price, and further avers that the prices it reported to the commercial price reporting services were list prices that were well-understood not to include discounts and pricing concessions, if any.

503-769.    The allegations in Paragraphs 503-769 are directed to other defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 502-769.

770-772.        To the extent the allegations in Paragraphs 770-772 are directed at GSK, GSK denies them, except GSK denies knowledge or information sufficient to form a belief as to the truth of the allegation that the Counties' Medicaid programs "spent over $20 billion for defendants' drugs from 1992 – 2005."  GSK specifically denies that it was involved in any "false price reporting scheme" or "misconduct," or that it has been "unjustly enriched."  To the extent the allegations in Paragraphs 770-772 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

773-790.        To the extent the allegations in Paragraphs 773-790 are directed at GSK, GSK denies them.  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 773-790 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 786 refer to *The Pink Sheet*, that document speaks for itself, and any characterizations thereof are denied.

## COUNT I

## VIOLATION OF FEDERAL MEDICAID STATUTE, 42 U.S.C. 1396r-8 (FAILURE TO COMPLY WITH FEDERAL MEDICAID REBATE PROVISION)

791.     In response to Paragraph 791, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 790.

792-802.   To the extent the allegations in Paragraphs 792-802 are directed at GSK, GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations in these Paragraphs relate to claims that the Court has previously dismissed, no response is required.

## COUNT II

## VIOLATION OF N.Y. SOCIAL SERVICES LAW 367-a(7)(d) (FAILURE TO COMPLY WITH STATE MEDICAID REBATE PROVISION)

801.   In response to Paragraph 801, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 800.

802-807.   To the extent the allegations in Paragraphs 802-807 are directed at GSK, GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations in these Paragraphs relate to claims that the Court has previously dismissed, no response is required.

## COUNT III

**VIOLATION OF NEW YORK SOCIAL SERVICES LAW 145-b (OBTAINING PUBLIC FUNDS BY FALSE STATEMENTS)**

808.     In response to Paragraph 808, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 807.

809.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 809.  To the extent the allegations in Paragraph 809 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

810-813.     To the extent the allegations in Paragraphs 810-813 are directed at GSK, GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations in these Paragraphs relate to claims that the Court has previously dismissed, no response is required.

## COUNT IV

**VIOLATION OF NEW DEPARTMENT OF HEALTH REGULATIONS 18 N.Y.C.R.R. 512.2(b)(4) and (5)**

814.     In response to Paragraph 814, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 813.

815-817.     To the extent the allegations in Paragraphs 815-817 are directed at GSK, GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other

than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To

the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak

for themselves, and any characterizations thereof are denied.  To the extent the allegations in

these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations

in these Paragraphs relate to claims that the Court has previously dismissed, no response is

required.

**COUNT V**

**BREACH OF CONTRACT**

818.     In response to Paragraph 818, GSK repeats and incorporates as if fully set forth

herein each and every response to the allegations in Paragraphs 1 through 817.

819-830.        To the extent the allegations in Paragraphs 819-830 are directed at GSK,

GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other

than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To

the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak

for themselves, and any characterizations thereof are denied.  To the extent the allegations in

these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations

in these Paragraphs relate to claims that the Court has previously dismissed, no response is

required.

**COUNT VI**

**UNFAIR TRADE PRACTICES (Violations of N.Y. Gen. Bus. Law 349 *et seq*.)**

831.     In response to Paragraph 831, GSK repeats and incorporates as if fully set forth

herein each and every response to the allegations in Paragraphs 1 through 830.

832-839.       To the extent the allegations in Paragraphs 732-839 (and any sub-parts thereto) are directed at GSK, GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations in these Paragraphs relate to claims that the Court has previously dismissed, no response is required.

## COUNT VII

## FRAUD

840.     In response to Paragraph 840, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 839.

841.     To the extent the allegations in Paragraphs 841-843 and the exhibits referenced therein are directed at GSK, GSK denies them.  To the extent the allegations in Paragraphs 841-843 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

844-845.       To the extent the allegations in Paragraphs 844-845 are directed at GSK, GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations

in these Paragraphs relate to claims that the Court has previously dismissed, no response is required.

## COUNT VIII

## UNJUST ENRICHMENT

846.     In response to Paragraph 846, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 845.

847-849.     To the extent the allegations in Paragraphs 847-849 are directed at GSK, GSK denies them.  To the extent the allegations in these Paragraphs are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in these Paragraphs refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in these Paragraphs contain legal conclusions, no response is required.  To the extent the allegations in these Paragraphs relate to claims that the Court has previously dismissed, no response is required.

850-868.     GSK denies that the Counties are entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and Paragraphs 850-858 of the Complaint.

**WHEREFORE**, GSK demands judgment dismissing the Complaint with prejudice, and awarding reasonable expenses and costs incurred herein, and for such further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

GSK reasserts and incorporates herein by reference the assertions of paragraphs 1 through 126 hereof.

### First Affirmative Defense

Plaintiff fails to state a claim against GSK upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because they did not rely on any alleged misrepresentations or fraud by GSK.  Plaintiffs knew that providers could obtain GSK drugs at prices below AWP prior to the relevant time period stated in the Complaint.

### Third Affirmative Defense

Plaintiffs' claim is barred, in whole or in part, by the political question and separation of powers doctrines.

### Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the filed rate doctrine.

### Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the state action doctrine.

### Sixth Affirmative Defense

To the extent Plaintiffs or the State of New York obtain recovery in any other case predicated on the same factual allegations, Plaintiffs are barred from seeking recovery against GSK based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

## Seventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by GSK in judicial, legislative, or administrative proceedings of any kind or at any level of government.

## Eighth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiffs' claims.

## Ninth Affirmative Defense

Plaintiffs' state law claims are preempted, in whole or in part, by federal law, including without limitation the Federal Employment Retirement Income and Security Act of 1974, the Federal Medicare Act, and the Federal Medicaid Act, including all amendments to the same and all regulations promulgated thereunder.

## Tenth Affirmative Defense

Plaintiffs' claims against GSK are barred, in whole or in part, by the applicable statutes of limitations and repose, and by the doctrines of laches, estoppel, and waiver.

## Eleventh Affirmative Defense

Plaintiffs fail to state with particularity facts to support claims of fraudulent conduct, fraudulent concealment and the multi-source allegations against GSK contained in the Complaint.

## Twelfth Affirmative Defense

Any and all actions taken by GSK with respect to any of the matters alleged in the

Complaint were taken in good faith and in accordance with established industry practice.

## Thirteenth Affirmative Defense

GSK's statements or actions were not the proximate cause or cause in fact of any injury to or alleged loss by Plaintiffs.

## Fourteenth Affirmative Defense

GSK denies that Plaintiffs have valid consumer protection claims against GSK under New York's Unfair Trade Practices Act.  However, if such claims are found to exist, GSK pleads all available defenses under the Act.

## Fifteenth Affirmative Defense

To the extent that Plaintiffs attempt to seek equitable relief against GSK, Plaintiffs are not entitled to such relief because Plaintiffs have an adequate remedy at law.

## Sixteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

## Seventeenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of consent and/or ratification to the extent that Plaintiffs have received and paid for medicines manufactured, marketed and sold by GSK after the filing of the complaint of Suffolk County.

## Eighteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the damages alleged are speculative and remote and because of the impossibility of ascertaining and allocating those alleged damages.

## **Nineteenth Affirmative Defense**

Plaintiffs' claims against GSK are barred, in whole or in part, due to their failure to join indispensable parties.

## **Twentieth Affirmative Defense**

Plaintiffs' claims against GSK are barred, in whole or in part, because Plaintiffs have not suffered damages as a result of the matters alleged in the Complaint.

## **Twenty-First Affirmative Defense**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate damages, and that failure to mitigate damages should proportionately reduce Plaintiffs' recovery and the allocation of any fault, if any exists, attributable to GSK.

## **Twenty-Second Affirmative Defense**

GSK is entitled to a set-off, should any damages be awarded against it, for the entire amount of all damages or settlement amounts recovered by Plaintiffs, with respect to the same alleged injuries.

## **Twenty-Third Affirmative Defense**

To the extent punitive damages are sought, Plaintiffs' punitive damages claims against GSK are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against GSK.

## **Twenty-Fourth Affirmative Defense**

To the extent punitive damages are sought, Plaintiffs' damages claims against GSK cannot be sustained because an award of punitive damages would violate the United States Constitution, Excessive Fines Clause of the Eighth Amendment, U.S. Const. amend. VIII and the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 and the

analogous provisions contained in the Constitutions of the State of New York and any other States whose laws are or become relevant in the course of this lawsuit.

### Twenty-Fifth Affirmative Defense

GSK adopts by reference any additional applicable defense pled by any other defendant not otherwise pled herein.

### Twenty-Sixth Affirmative Defense

Plaintiffs are not intended beneficiaries of the Medicaid Rebate Agreement between GSK and the federal government, and Plaintiffs have no standing to bring any claims that relate to the calculation or payment of Medicaid rebates.  Such claims may be brought against GSK only by the federal government.

### Twenty-Seventh Affirmative Defense

GSK hereby gives notice that it intends to rely upon any other and additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserve its right to amend its answer to assert such defense.

Dated:          October 26, 2007

                                    /s/ Geoffery E. Hobart
                                    Mark H. Lynch
                                    Geoffery E. Hobart
                                    Ronald G. Dove, Jr.
                                    COVINGTON & BURLING LLP
                                    1201 Pennsylvania Avenue NW
                                    Washington, D.C. 20004
                                    Telephone:  (202) 662-6000
                                    Facsimile:  (202) 662-6291

Frederick G. Herold
DECHERT LLP
2440 W. El Camino Real
Suite 700
Mountain View, CA 94040-1499
Telephone:  (650) 813-4930
Facsimile:  (650) 813-4848

Thomas H. Lee II
DECHERT LLP
Cira Center
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone:  (215) 994-2994
Facsimile:  (215) 994-2222

*Attorneys for Defendant SmithKline Beecham
Corporation d/b/a GlaxoSmithKline*

## CERTIFICATE OF SERVICE

I, Shankar Duraiswamy, hereby certify that on October 26, 2007, I caused a copy of the Answer and Affirmative Defenses of SmithKline Beecham Corporation d/b/a GlaxoSmithKline to Revised First Amended Consolidated Complaint to be served on all counsel of record by electronic service by sending a copy to Lexis-Nexis File & Serve for posting and notification to all parties.


 /s/ Shankar Duraiswamy
Shankar Duraiswamy