# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |

*The City of New York v. Abbott Laboratories, Inc., et al.*
(S.D.N.Y. No. 04-CV-06054)

*County of Albany v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00425)

*County of Allegany v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06231)

*County of Broome v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00456)

*County of Cattaraugus v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06242)

*County of Cayuga v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00423)

*County of Chautauqua v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06204)

*County of Chemung v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06744)

*County of Chenango v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00354)

*County of Columbia v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00867)

[Caption Continues on Next Page]

## ANSWER AND AFFIRMATIVE DEFENSES OF BRISTOL-MYERS SQUIBB COMPANY AND ONCOLOGY THERAPEUTIC NETWORKS CORPORATION TO REVISED FIRST AMENDED CONSOLIDATED COMPLAINT

*County of Cortland v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00881)   )

*County of Dutchess v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 05-CV-06458)   )

*County of Essex v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00878)   )

*County of Fulton v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00519)   )

*County of Genesee v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06206)   )

*County of Greene v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00474)   )

*County of Herkimer v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00415)   )

*County of Jefferson v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00715)   )

*County of Lewis v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00839)   )

*County of Madison v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00714)   )

*County of Monroe v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06148)   )

*County of Nassau v. Abbott Laboratories, Inc., et al.*   )
(E.D.N.Y. No. 04-CV-5126)   )

*County of Niagara v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06296)   )

*County of Oneida v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00489)   )

*County of Onondaga v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00088)   )

*County of Ontario v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06373)   )

*County of Orange v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 07-CV-2777)   )

*County of Orleans v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06371)   )

*County of Putnam v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 05-CV-04740)   )

[Caption Continues on Next Page]

*County of Rensselaer v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00422)   )

*County of Rockland v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 03-CV-7055)   )

*County of Saratoga v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00478)   )

*County of Schuyler v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06387)   )

*County of Seneca v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06370)   )

*County of St. Lawrence v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00479)   )

*County of Steuben v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06223)   )

*County of Suffolk v. Abbott Laboratories, Inc., et al.*   )
(E.D.N.Y. No. CV-03-12257)   )

*County of Tompkins v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00397)   )

*County of Ulster v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 06-CV-0123)   )

*County of Warren v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00468)   )

*County of Washington v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00408)   )

*County of Wayne v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06138)   )

*County of Westchester v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 03-CV-6178)   )

*County of Wyoming v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 03-CV-6379)   )

AND   )

*County of Yates v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06172)   )

Defendants Bristol -Myers Squibb Company      and Oncology    Therapeutics Network Corporation (col lectively, "BMS"), by  and through their attorney s, hereby  state as an Answer and Affirmative Defenses to the Revised First Amended Consolidated  Complaint, dated October 5, 2007, as follows:

## PRELIMINARY STATEMENT

The Revised First Amended Consolidated Complaint (the "Complaint") improperly refers to Bristol-Myers Squibb Company, Oncology Therapeutics Network Corporation, other defendants, and third parties on a collective basis, failing to plead with requisite particularity allegations against BMS.  This is insufficient to apprise BMS (let alone each separate entity) of the allegations asserted against it.  BMS has nevertheless attempted to respond to Plaintiffs' allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions of other persons or entities, BMS is generally without knowledge or information sufficient to form a belief as to the truth of those allegations.  BMS states that it is answering Plaintiffs' allegations solely on behalf of itself, even when Plaintiffs' allegations refer to alleged conduct by BMS and other persons or entities.

The Complaint also contains purported quotations from a number of sources.  In answering allegations consisting of quotations, BMS's failure to deny that the material quoted was contained in a document or was uttered by the person or entity quoted or BMS's reference to the full document instead of the quote shall not constitute an admission that the substantive content of the quote or document is or is not true or that the material is relevant or admissible in this action.

BMS denies each and every allegation contained in the Complaint and the exhibits thereto, except as specifically herein admitted, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole.  In addition, BMS specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint.  For ease of reference, BMS has included in this Answer and Affirmative Defenses the caption used in the Complaint, but specifically denies any allegations contained in, or inferences that could be drawn from, that caption.

These comments and objections are incorporated, to the extent appropriate, into each unnumbered and numbered paragraph of this Answer.

## SPECIFIC RESPONSES

To the extent that the unnumbered paragraph immediately following the Table of Contents (the "Complaint's Introductory Paragraph") makes allegations against BMS, BMS denies them, except admits that the City of New York and certain New York Counties (collectively, the "Counties") have made allegations against a number of defendants, including BMS, as set forth in the Complaint.  To the extent that the Complaint's Introductory Paragraph states legal conclusions, no response is required.  To the extent the allegations of the Complaint's Introductory Paragraph are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations.

1.      BMS admits that the Counties seek to bring this action as alleged in Paragraph 1 of the Complaint, but BMS denies there is any basis for them to do so and denies that they are entitled to any relief.  BMS also admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiffs with respect to any

such NDCs.  To the extent the remaining allegations in Paragraph 1 are directed at BMS, BMS denies them.  BMS specifically denies that it has been involved in "fraudulent and misleading schemes" or that the New York State Medicaid Program has been "overcharge[d]" for prescription drugs  To the extent the remaining allegations in Paragraph 1 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

2.      BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 or the exhibit referenced therein.  To the extent the allegations in Paragraph 2 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

3.      BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 or its footnote, except admits that it pays Medicaid rebates to the State of New York and that such rebates lower the price New York Medicaid pays for BMS's prescription drugs.  To the extent the allegations in Paragraph 3 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

4.      To the extent the allegations in Paragraph 4 are directed at BMS, BMS denies them.  BMS specifically denies that it was involved in "fraudulent schemes," the "manipulation of the Medicaid program" or the "intentional fraudulent inflation" of wholesale prices, or that the Counties' Medicaid Programs were "overcharge[d]."  To the extent the allegations in Paragraph 4 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

5.      To the extent the allegations in Paragraph 5 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  BMS otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.      To the extent the allegations in Paragraph 6 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. BMS otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 or its footnote, except BMS denies that it "actively encourage[s] physicians to write DAW in order to secure AWP-based reimbursement for pharmacies."

7.      To the extent the allegations in Paragraph 7 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  BMS otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.      BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.      To the extent the allegations in Paragraph 9 are directed at BMS, BMS denies them.  BMS specifically denies that it "control[s] and unlawfully inflates[s]" average wholesale prices ("AWPs") or federal upper limits ("FULs").  To the extent the allegations in Paragraph 9 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

10.     To the extent the allegations in Paragraph 10 are directed at BMS, BMS denies them, except BMS admits that it has provided the wholesale list price of its drugs to certain industry pricing compendia and that publishers apply their own markups to the list prices.  BMS specifically denies that it "set[s] AWP."  To the extent the allegations in Paragraph 10 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

11.     To the extent the allegations in Paragraph 11 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 11 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

12.     To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at BMS, BMS denies them.  BMS specifically denies that it has "report[ed] a false and inflated WAC or WAC equivalent" to industry pricing compendia.  To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

13.     To the extent the allegations in Paragraph 13 are directed at BMS, BMS denies them, except BMS admits that CMS has established FULs for certain drugs.  BMS specifically denies that it "control[s] the FUL."  To the extent the allegations in Paragraph 13 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. To the extent the allegations in Paragraph 13 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

14.     To the extent the allegations in Paragraph 14 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 14 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

15.     To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

16.     To the extent the allegations in Paragraphs 16-17 are directed at BMS, BMS denies them.  BMS specifically denies that it "submit[s] false and inflated price information to the publishing compendia."  BMS further denies the characterization of "spread" in Paragraphs 16-17.  To the extent the allegations in Paragraphs 16-17 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

17.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 18-19.

18.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.  To the extent the allegations in Paragraph 20 refer to a Wall Street Journal article, the article speaks for itself, and any characterizations thereof are denied.

19.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 or the exhibit referenced therein.

20.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

21.     To the extent the allegations in Paragraph 23 are directed at BMS, BMS denies them.  BMS specifically denies that it has "secretly polluted the entire reimbursement system with false and inflated prices."  To the extent the allegations in Paragraph 23 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

22.     To the extent the allegations in Paragraph 24 or the exhibit referenced therein are directed at BMS, BMS denies them.  BMS specifically denies that it has "cause[d] false and inflated published reimbursement prices to issue."  BMS further denies the characterization of "spread" in Paragraph 24.  To the extent the allegations in Paragraph 24 or the exhibit referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

23.     To the extent the allegations in Paragraph 25 are directed at BMS, BMS denies them.  BMS specifically denies that it has "create[d], inflate[d], manipulate[d] and market[ed] the spread for both brand name and generic drugs."  To the extent the allegations in Paragraph 25 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

24.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.  To the extent the allegations in Paragraph 26 refer to a HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.

25.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.  To the extent the allegations in Paragraph 27 refer to the

transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

26.     To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at BMS, BMS denies them.  BMS specifically denies that it has engaged in "intentional AWP inflation" or "fraud."  BMS further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

27.     To the extent the allegations in Paragraph 29 are directed at BMS, BMS denies them.  BMS specifically denies that it has "reported or caused to be reported [] false and inflated" WACs or engaged in any "unlawful and undisclosed manipulation of the price reporting system."  To the extent the allegations in Paragraph 29 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

28.     To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at BMS, BMS denies them.  BMS specifically denies that it has engaged in any "pricing misconduct."  To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

29.     To the extent the allegations in Paragraph 31 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

BMS otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 or its footnote, except BMS admits that it pays Medicaid rebates as required by law.

30.     To the extent the allegations in Paragraph 32 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 32 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

31.     To the extent the allegations in Paragraph 33 or its footnote are directed at BMS, BMS denies them.  BMS specifically denies that it has "abused" any Medicaid statute.  To the extent the allegations in Paragraph 33 or its footnote are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 33 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

32.     To the extent the allegations in Paragraph 34 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 34 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 34 refer to a HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.

33.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

34.     To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at BMS, BMS denies them, except BMS admits that it settled without an admission of

liability a government investigation related to drug pricing.  To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

35.     BMS admits that the Counties seeks the relief listed in Paragraph 37, but BMS denies there is any basis for them to do so and denies that they are entitled to any relief.  To the extent the remaining allegations in Paragraph 37 are directed at BMS, BMS denies them.  BMS specifically denies that it has been involved in any "fraudulent and illegal manipulation of drug prices."  To the extent the remaining allegations in Paragraph 37 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

36.     BMS admits that the Counties seek to bring this action as alleged in Paragraph 38, but BMS denies there is any basis for them to do so and denies that they are entitled to any relief.

37.     Paragraphs 39-40 state legal conclusions as to which no response is required.  To the extent a response is deemed to be required, BMS denies the allegations in Paragraphs 39-40, except admits that each of the captioned matters has been transferred to this Court by the Judicial Panel on Multi District Litigation pursuant to 28 U.S.C. 1407.

38.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 41-42 and 42A.  To the extent the allegations in Paragraphs 41-42 and 42A refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

39.     BMS denies the allegations in Paragraph 43 and its footnote, and refers to Case
Management Order No. 33, dated September 14, 2007, ¶¶ 1, 3 for which plaintiffs are suing
which defendants.

40.     To the extent the allegations in Paragraph 44 are directed at BMS, BMS denies
them, except BMS admits that it manufactures and sells prescription drugs and that it transacts
business in the State and City of New York.  BMS specifically denies that it "manufactures,
markets and sells prescription drugs with false and inflated wholesale prices."  To the extent the
allegations in Paragraph 44 are directed at parties other than BMS, BMS denies knowledge or
information sufficient to form a belief as to their truth.

41.     The allegations in Paragraphs 45-54 are directed to other defendants and require
no response from BMS.  To the extent a response is deemed to be required, BMS denies
knowledge or information sufficient to form a belief as to the truth of the allegations in
Paragraphs 45-54.

42.     With respect to the allegations in Paragraph 55 and the sub-parts thereof, BMS
admits that Bristol-Myers Squibb Company  is a Delaware corporation with its principal place of
business located at 345 Park Avenue, New York, NY 10154-0037 and that it manufactures and
sells pharmaceuticals.  BMS admits that Westwood-Squibb is a division of Bristol-Myers.  BMS
admits that Oncology Therapeutic Networks Corporation ("OTN") is a Delaware corporation
with its principal place of business located at 401 Mason Road, Lavergne, TN 37086, that it was
a wholly-owned subsidiary of Bristol-Myers from 1996 to on or about May 2005, and that it sold
pharmaceuticals.  BMS admits that it has not been named as a defendant in any litigation by the
County of Onondaga.  BMS otherwise denies the allegations in Paragraph 55 of the Complaint.

43.     The allegations in Paragraphs 56-84 are directed to other defendants and require no response from BMS.  To the extent a response is deemed to be required, BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 56-84.

44.     The allegations in Paragraphs 85-88 are directed to unknown defendants and require no response from BMS.  To the extent a response is deemed to be required, BMS denies that it was involved any conspiracy related to drug pricing with either named or unknown defendants.  BMS also denies that it has engaged in any "wrongful acts" related to drug pricing.

45.     With respect to the allegations in Paragraph 89, BMS admits that Medicaid was established by Title XIX of the Social Security Act.  BMS further states that the provisions of Title XIX speak for themselves, and any characterizations thereof are denied.

46.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, except BMS admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.  To the extent the allegations in Paragraph 90 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

47.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 91-99 or their footnotes.  To the extent the allegations in Paragraphs 91-99 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

48.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100,  except admits that national drug codes are assigned to prescription drugs and that the FOA assigns such codes.

49.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 101-111 or their footnotes.  To the extent the allegations in Paragraphs 101-111 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

50.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112,  except admits that pricing compendia such as Blue Book publish AWPs and FULs, and denies that BMS has any control over such prices.

51.     To the extent the allegations in Paragraph 113 are directed at BMS, BMS denies them.  BMS specifically denies that it has "fraudulently conceal[ed]" the "true prices" of its drugs by "claiming they are proprietary trade secrets."  To the extent the allegations in Paragraph 113 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 113 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

52.     To the extent the allegations in Paragraphs 114-115 are directed at BMS, BMS denies them.  BMS specifically denies that it reports "reimbursement prices . . . to the publishing compendia" or that it has engaged in the "purposeful manipulation of reimbursement prices generally, and AWP in particular."  BMS further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the

Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraphs 114-115 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 114-115 refer to HHS OIG reports, the reports speak for themselves, and any characterizations thereof are denied.

53.     With respect to the allegations in Paragraphs 116-123 and their footnotes, BMS admits that the Medicaid statute includes a rebate provision, that it has entered into a rebate agreement with the Secretary of Health and Human Services, and that rebates help reduce state Medicaid drug expenditures.  BMS further states that the rebate provision speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 116-123 or their footnotes refer to additional statutes, regulations or congressional reports, those sources also speak for themselves, and any characterizations thereof are also denied.

54.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 124-125.  To the extent the allegations in Paragraphs 124-125 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  BMS denies that the Counties are intended third-party beneficiaries of Medicaid rebate agreements.

55.     With respect to the allegations in Paragraph 126, BMS admits that drug manufacturers report Best Prices and AMPs to HHS.  To the extent the allegations in Paragraph 126 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

56.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 127-130, except admits that it reports Medicaid information to HHS and pays rebates to States.  To the extent the allegations in Paragraphs 127-130 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

57.     To the extent the allegations in Paragraph 131 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 131 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 131 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

58.     To the extent the allegations in Paragraph 132 are directed at BMS, BMS admits that it has executed a rebate agreement with HHS.  BMS further states that the rebate agreement speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 132 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 132 refer to the Model Rebate Agreement, that document also speaks for itself, and any characterizations thereof are also denied.

59.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 133-136.  To the extent the allegations in Paragraphs 133-136 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

60.      BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 137-143, except BMS denies that the Counties are Medicaid payors or intended third-party beneficiaries of Medicaid rebate agreements.  To the extent the allegations in Paragraphs 137-143 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

61.      To the extent the allegations in Paragraph 144 are directed at BMS, BMS denies them.  BMS specifically denies that it "intentionally reported, or caused to be reported, to industry publications wholesale pricing information that it knew to be false and inflated."  BMS further denies the characterization of "spread" in Paragraph 144.  To the extent the allegations in Paragraph 144 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

62.      With respect to the allegations in Paragraphs 145-149, BMS admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein.  To the extent the remaining allegations in Paragraphs 145-149 or Exhibit B are directed at BMS, BMS denies them.  BMS specifically denies that it "routinely submitted fraudulent prices" to pricing compendia.  BMS further denies the characterization of "spread" in Paragraphs 145-149 and Exhibit B.  To the extent the remaining allegations in Paragraphs 145-149 or Exhibit B are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

63.      To the extent the allegations in Paragraphs 150-153 are directed at BMS, BMS denies them.  BMS further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their

agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraphs 150-153 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

64.     Paragraph 154 purports to contain a statement from HHS OIG, but BMS denies knowledge or information sufficient to form a belief as to its accuracy because the source thereof is not provided.  To the extent the source of the statement is provided, the source speaks for itself, and any characterizations thereof are denied.

65.     To the extent the allegations in Paragraphs 155-158 are directed at BMS, BMS denies them.  BMS further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia.  To the extent the allegations in Paragraphs 155-158 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

66.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 159-165, except BMS admits that PBMs are involved in administering and managing prescription drug benefit programs and that certain PBMs also operate mail order pharmacies.  To the extent the allegations in Paragraphs 159-165 refer to articles or reports, those sources speak for themselves, and any characterizations thereof are denied.

67.     To the extent the allegations in Paragraph 166 are directed at BMS, BMS denies them.  BMS specifically denies that it "control[s] the published reimbursement prices."  To the

extent the allegations in Paragraph 166 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

68.    BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167.

69.    To the extent the allegations in Paragraphs 168-172 are directed at BMS, BMS denies them, except BMS that it has executed a rebate agreement with HHS.  BMS further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to BMS. In any event, the rebate agreement speaks for itself, and any characterizations thereof are denied. To the extent the allegations in Paragraphs 168-172 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 168-172 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

70.    To the extent the allegations in Paragraphs 173-176 are directed at BMS, BMS denies them, and further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to BMS.  To the extent the allegations in Paragraphs 173-176 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 173-176 refer to statutes, regulations or reports, those sources speak for themselves, and any characterizations thereof are denied.

71.    To the extent the allegations in Paragraph 177 are directed at BMS, BMS denies them, except admits that BMS has settled certain government investigations of pharmaceutical pricing without an admission of liability.  To the extent the allegations in Paragraph 177 are

directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

72.     To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at BMS, BMS denies them.  To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 178-194 or their footnotes refer to reports, articles, letters, congressional hearing transcripts, or other documents, those sources speak for themselves, and any characterizations thereof are denied.

73.     To the extent the allegations in Paragraph 195 are directed at BMS, BMS denies them, except BMS admits that its contracts with purchasers sometimes included discounts.  To the extent the allegations in Paragraph 195 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

74.     To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

75.     The allegations in Paragraphs 197-366 are directed to other defendants and require no response from BMS.  To the extent a response is deemed to be required, BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 197-366.

76.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 367 or its footnote or the exhibit referenced therein, except BMS denies that it engaged in any "fraud," and states that Exhibits A and B to the Complaint have changed since the filing of the Complaint.

77.     BMS denies the allegations in Paragraph 368 and the exhibit referenced therein, and states that Exhibits A and B to the Complaint have changed since the filing of the Complaint.

78.     BMS denies the allegations in Paragraphs 369-70, except BMS admits that it was aware of the list prices and AWPs of some drugs made by other manufacturers.

79.     BMS denies the allegations in Paragraphs 371-372, except BMS admits that it provided Wholesale List Prices and, for some period, Direct Prices, of its drugs to pricing compendia.  BMS specifically denies that these prices were "false and inflated" or that it intended for these prices to "be converted to a false and inflated AWP."  BMS further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.

80.     BMS denies the allegations in Paragraph 373, except admits that it has been the subject of investigations by the State of California, the Bureau of Medi-Cal Fraud and Elder Abuse, and the House of Representatives Committee on Commerce.  BMS specifically denies that it engaged in any "wrongful conduct."

81.     BMS denies the allegations in Paragraphs 374-375.  To the extent the allegations in Paragraphs 374-375 refer to a letter from Representative Stark, the letter speaks for itself, and any characterizations thereof are denied.

82.     With respect to the allegations in Paragraph 376, BMS admits that its employee Denise Kaszuba forwarded certain pricing and product information to the publishers of pricing compendia, including First Data Bank, and that the compendia used this information to establish their AWPs.

83.     BMS denies the allegations in Paragraph 377, except BMS admits that it has been named as a defendant in lawsuits filed by the states of Alabama, Illinois, Kentucky, Montana, Pennsylvania and Wisconsin.  BMS specifically denies that there is any basis for those lawsuits or that it has been involved in any "wrongdoing."

84.     BMS denies the allegations in Paragraphs 378-383, except BMS admits that it sometimes offered discounts from the prices of some of its drugs, and further states that it achieved substantial sales at or near the list prices for the drugs in question.  To the extent the allegations in Paragraph 380 refer to a letter from Representative Stark, the letter speaks for itself, and any characterizations thereof are denied.

85.     BMS denies the allegations in Paragraphs 384-385, except BMS admits that it responded to requests for information in congressional investigations related to drug pricing.  To the extent Paragraph 384 purports to contain a statement from the House Committee of Energy and Commerce, BMS denies knowledge or information sufficient to form a belief as to its accuracy because the source thereof is not provided.  To the extent the source of the statement is provided, the source speaks for itself, and any characterizations thereof are denied.

86.     The allegations in Paragraphs 386-769 are directed to other defendants and require no response from BMS.  To the extent a response is deemed to be required, BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 386-769.

87.     To the extent the allegations in Paragraphs 770-772 are directed at BMS, BMS denies them, except BMS denies knowledge or information sufficient to form a belief as to the truth of the allegation that the Counties' Medicaid programs "spent over $20 billion for defendants' drugs from 1992 – 2005."  BMS specifically denies that it was involved in any "false price reporting scheme" or "misconduct," or that it has been "unjustly enriched."  To the extent the allegations in Paragraphs 770-772 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

88.     To the extent the allegations in Paragraphs 773-790 are directed at BMS, BMS denies them.  BMS further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraphs 773-790 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 786 refer to *The Pink Sheet*, that document speaks for itself, and any characterizations thereof are denied.

## COUNT I

## VIOLATION OF FEDERAL MEDICAID STATUTE, 42 U.S.C. 1396r-8 (FAILURE TO COMPLY WITH FEDERAL MEDICAID REBATE PROVISION)

89.     In response to Paragraph 791, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 790.

90.     To the extent the allegations in Paragraphs 792-800 are directed at BMS, BMS states that the Court has dismissed them.  To the extent that a response is still required, BMS denies the allegations as to itself.  To the extent the allegations in Paragraphs 792-800 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

## COUNT II

### VIOLATION OF N.Y. SOCIAL SERVICES LAW 367-a(7)(d) (FAILURE TO COMPLY WITH STATE MEDICAID REBATE PROVISION)

91.     In response to Paragraph 801, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 800.

92.     To the extent the allegations in Paragraphs 802-807 are directed at BMS, BMS states that the Court has dismissed them.  To the extent that a response is still required, BMS denies the allegations as to itself.  To the extent the allegations in Paragraphs 802-807 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

## COUNT III

### VIOLATION OF NEW YORK SOCIAL SERVICES LAW 145-b (OBTAINING PUBLIC FUNDS BY FALSE STATEMENTS)

93.     In response to Paragraph 808, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 807.

94.     BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 809.  To the extent the allegations in Paragraph 809 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

95.     To the extent the allegations in Paragraphs 810-813 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraphs 810-813 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 810-813 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 810-813 contain legal conclusions, no response is required.

## COUNT IV

### VIOLATION OF NEW DEPARTMENT OF HEALTH REGULATIONS 18 N.Y.C.R.R. 512.2(b)4) and (5)

96.     In response to Paragraph 814, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 813.

97.     To the extent the allegations in Paragraphs 815-817 are directed at BMS, BMS states that the Court has dismissed them.  To the extent that a response is still required, BMS denies the allegations as to itself.  To the extent the allegations in Paragraphs 815-817 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

## COUNT V

### BREACH OF CONTRACT

98.     In response to Paragraph 818, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 817.

99.     To the extent the allegations in Paragraphs 819-830 are directed at BMS, BMS states that the Court has dismissed them.  To the extent that a response is still required, BMS denies the allegations as to itself.  To the extent the allegations in Paragraphs 819-830 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

**COUNT VI**

**UNFAIR TRADE PRACTICES (Violations of N.Y. Gen. Bus. Law 349 *et seq*.)**

100.     In response to Paragraph 831, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 830.

101.     To the extent the allegations in Paragraphs 832-835 and the exhibits referenced therein are directed at BMS, BMS denies them.  To the extent the allegations in Paragraphs 832-835 and the exhibits referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 832-835 and the exhibits referenced therein refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

102.     To the extent the allegations in Paragraphs 836-837 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraphs 836-837 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 836-837 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

103.     To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto are directed at BMS, BMS denies them.  To the extent the allegations in Paragraphs 838-839 and the

sub-parts thereto are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto contain legal conclusions, no response is required.

## COUNT VII
## FRAUD

104.    In response to Paragraph 840, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 839.

105.    To the extent the allegations in Paragraphs 841-843 and the exhibits referenced therein are directed at BMS, BMS denies them.  To the extent the allegations in Paragraphs 841-843 and the exhibits referenced therein are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.

106.    BMS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 844.  To the extent the allegations in Paragraph 844 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

107.    To the extent the allegations in Paragraph 845 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraph 845 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 845 refer to statutes or regulations, those sources speak for

themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 845 contain legal conclusions, no response is required.

## COUNT VIII

## UNJUST ENRICHMENT

108.    In response to Paragraph 846, BMS repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 845.

109.    To the extent the allegations in Paragraphs 847-849 are directed at BMS, BMS denies them.  To the extent the allegations in Paragraphs 847-849 are directed at parties other than BMS, BMS denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 847-849 contain legal conclusions, no response is required.

110.    BMS denies that the Counties are entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and Paragraphs 850-858 of the Complaint.

111.    **WHEREFORE**, BMS demands judgment dismissing the Complaint with prejudice, and awarding reasonable expenses and costs incurred herein, and for such further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

BMS reasserts and incorporates herein by       reference the assert  ions of paragraphs 1 through 111 hereof.

## First Affirmative Defense

Plaintiff fails to state a claim against BMS upon which relief may be granted.

**<u>Second Affirmative Defense</u>**

Plaintiffs' claims are barred, in whole or in part, because they did not rely on any alleged misrepresentations or fraud by BMS. Plaintiff s knew that providers could obtain BMS drugs at prices below AWP prior to the relevant time period stated in the Complaint.

**<u>Third Affirmative Defense</u>**

Plaintiffs' claims are barred, in whole or in part, by the political question and separation of powers doctrines.

**<u>Fourth Affirmative Defense</u>**

Plaintiffs' claims are barred, in whole or in part, by the filed rate doctrine.

**<u>Fifth Affirmative Defense</u>**

Plaintiffs' claims are barred, in whole or in part, by the state action doctrine.

**<u>Sixth Affirmative Defense</u>**

To the extent Plainti ffs or the State of New York obtain recovery in any other case predicated on the same factual allegations, Plaintiffs are barred from seeking recovery against BMS based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

**<u>Seventh Affirmative Defense</u>**

Plaintiffs' claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statement s or conduct by BMS in judicial, legislative, or administrative proceedings of any kind or at any level of government.

## Eighth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiff    s have released, settled, ente red into an accord and satisfaction or otherwise compromised     Plaintiffs' claims.

## Ninth Affirmative Defense

Plaintiffs' state law claims are preempted, in whole or in part, by          federal law, including without limitation the Federal Employment Retirement Incom    e and Securit y A ct of 1974, the Federal Medicare Act, and the Federal Medicaid Act, including all amendments to the same and all regulations promulgated thereunder.

## Tenth Affirmative Defense

Plaintiffs' claims against BMS are barred, in whole or in part, b      y t he applicable statutes of limitations and repose, and by the doctrines of laches, estoppel, and waiver.

## Eleventh Affirmative Defense

Plaintiffs fail  to state with particularit  y f acts to support claims of fraudulent conduct, fraudulent concealment and t    he multi  -source allegations against BMS contained in the Complaint.

## Twelfth Affirmative Defense

Any  and all actions taken by BMS with respect to any         of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice.

## Thirteenth Affirmative Defense

BMS's statements or actions were not the proximate cause or cause in fact of any    injury to or alleged loss by Plaintiffs.

### Fourteenth Affirmative Defense

BMS denies that Plaintiffs have valid consumer protection claims against BMS under New York's Unfair Trade Practices Act.  However, if such claims are found to exist, BMS pleads all available defenses under the Act.

### Fifteenth Affirmative Defense

To the extent that Plaintiff s attempt to seek equitable relief against BMS, Plaintiffs are not entitled to such relief because Plaintiffs have an adequate remedy at law.

### Sixteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiff s would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

### Seventeenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of consent and/or ratification to the extent that Plaintiffs have received and paid for medicines manufactured, marketed and sold by BMS after the filing of the complaint of Suffolk County.

### Eighteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the damages alleged are speculative and remote and because of the impossibility of ascertaining and allocating those alleged damages.

### Nineteenth Affirmative Defense

Plaintiffs' claims against BMS are barred, in whole or in part, due to their failure to join indispensable parties.

### Twentieth Affirmative Defense

Plaintiffs' claims against BMS are barred, in whole or in part, because Plaintiffs have not suffered damages as a result of the matters alleged in the Complaint.

### Twenty-First Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate damages, and that failure to mitigate damages should proportionately reduce Plaintiffs' recovery and the allocation of any fault, if any exists, attributable to BMS.

### Twenty-Second Affirmative Defense

BMS is entitled to a set-off, should any damages be awarded against it, for the entire amount of all damages or settlement amounts recovered by Plaintiffs, with respect to the same alleged injuries.

### Twenty-Third Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' punitive damages claims against BMS are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against BMS.

### Twenty-Fourth Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' damages claims against BMS cannot be sustained because an award of punitive damages would violate the United States Constitution, Excessive Fines Clause of the Eighth Amendment, U.S. Const. amend. VIII and the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 and the analogous provisions contained in the Constitutions of the State of New York and any other States whose laws are or become relevant in the course of this lawsuit.

### Twenty-Fifth Affirmative Defense

BMS adopts by    reference an y additiona l applicable defense pled by any        other defendant not otherwise pled herein.

### Twenty-Sixth Affirmative Defense

BMS hereby gives notice that it intends to rel y upon any other and additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserves its right to amend its answer to assert such defense.

Dated:   October 26, 2007

By:    /s/ Jennifer M. Ryan (BBO No. 661498)
Thomas E. Dwyer (BBO No. 139660)
Jennifer M. Ryan (BBO No. 661498)
**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, MA  02210
Tel: (617) 371-1000
Fax: (617) 371-1037
tdwyer@dwyercollora.com
jryan@dwyercollora.com
Steven M. Edwards (SE 2773)
Lyndon M. Tretter (LT 4031)
Admitted *pro hac vice*
**HOGAN & HARTSON LLP**
875 Third Avenue
New York, NY  10022
Tel: (212) 918-3000

*Attorneys for Defendant s  Bristol-Myers Squibb*
*Company and Oncology Therapeutics Netwo rk*
*Corporation*

## CERTIFICATE OF SERVICE BY LEXIS-NEXIS FILE & SERVE

    I, Lyndon M. Tretter, hereby certify that, on October 26, 2007, I caused a copy of the **ANSWER AND AFFIRMATIVE DEFENSES OF BRISTOL-MYERS SQUIBB COMPANY AND ONCOLOGY THERAPEUTIC NETWORKS CORPORATION TO REVISED FIRST AMENDED CONSOLIDATED COMPLAINT** to be served on all counsel of record by electronic service pursuant to Paragraph 11 of CMO No. 2 by sending a copy to Lexis-Nexis File & Serve for posting and notification to all parties.

                                          ____/s/ Lyndon M. Tretter_____
                                             Lyndon M. Tretter