# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| | ) |
| IN RE PHARMACEUTICAL INDUSTRY | ) |
| AVERAGE WHOLESALE PRICE LITIGATION | ) |
| | ) MDL NO. 1456 |
| | ) Civil Action No. 01-12257-PBS |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) Judge Patti B. Saris |
| *The City of New York v. Abbott Laboratories, Inc., et al.* (S.D.N.Y. No. 04-CV-06054) | ) |
| *County of Albany v. Abbott Laboratories, Inc., et al.* (N.D.N.Y. No. 05-CV-00425) | ) |
| *County of Allegany v. Abbott Laboratories, Inc., et al.* (W.D.N.Y. No. 05-CV-06231) | ) |
| *County of Broome v. Abbott Laboratories, Inc., et al.* (N.D.N.Y. No. 05-CV-00456) | ) |
| *County of Cattaraugus v. Abbott Laboratories, Inc., et al.* (W.D.N.Y. No. 05-CV-06242) | ) |
| *County of Cayuga v. Abbott Laboratories, Inc., et al.* (N.D.N.Y. No. 05-CV-00423) | ) |
| *County of Chautauqua v. Abbott Laboratories, Inc., et al.* (W.D.N.Y. No. 05-CV-06204) | ) |
| *County of Chemung v. Abbott Laboratories, Inc., et al.* (W.D.N.Y. No. 05-CV-06744) | ) |
| *County of Chenango v. Abbott Laboratories, Inc., et al.* (N.D.N.Y. No. 05-CV-00354) | ) |
| *County of Columbia v. Abbott Laboratories, Inc., et al.* (N.D.N.Y. No. 05-CV-00867) | ) |

[Caption Continues on Next Page]

## ANSWER AND AFFIRMATIVE DEFENSES OF ABBOTT LABORATORIES, INC. TO REVISED FIRST AMENDED CONSOLIDATED COMPLAINT

CHI-1612990v3

*County of Cortland v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00881)

*County of Dutchess v. Abbott Laboratories, Inc., et al.*
(S.D.N.Y. No. 05-CV-06458)

*County of Essex County v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00878)

*County of Fulton v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00519)

*County of Genesee v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06206)

*County of Greene v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00474)

*County of Herkimer v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00415)

*County of Jefferson v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00715)

*County of Lewis v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00839)

*County of Madison v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00714)

*County of Monroe v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06148)

*County of Nassau v. Abbott Laboratories, Inc., et al.*
(E.D.N.Y. No. 04-CV-5126)

*County of Niagara v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06296)

*County of Oneida v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00489)

*County of Onondaga v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00088)

*County of Ontario v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06373)

*County of Orange v. Abbott Laboratories, Inc., et al.*
(S.D.N.Y. No. 07-CV-2777)

*County of Orleans v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06371)

*County of Putnam v. Abbott Laboratories, Inc., et al.*
(S.D.N.Y. No. 05-CV-04740)

[Caption Continues on Next Page]

*County of Rensselaer v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00422)

*County of Rockland v. Abbott Laboratories, Inc., et al.*
(S.D.N.Y. No. 03-CV-7055)

*County of Saratoga v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00478)

*County of Schuyler v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06387)

*County of Seneca v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06370)

*County of St. Lawrence v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00479)

*County of Steuben v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06223)

*County of Suffolk v. Abbott Laboratories, Inc., et al.*
(E.D.N.Y. No. CV-03-229)

*County of Tompkins v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00397)

*County of Ulster v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 06-CV-0123)

*County of Warren v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00468)

*County of Washington v. Abbott Laboratories, Inc., et al.*
(N.D.N.Y. No. 05-CV-00408)

*County of Wayne v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06138)

*County of Westchester v. Abbott Laboratories, Inc., et al.*
(S.D.N.Y. No. 03-CV-6178)

*County of Wyoming v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 03-CV-6379)

AND

*County of Yates v. Abbott Laboratories, Inc., et al.*
(W.D.N.Y. No. 05-CV-06172)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Defendant Abbott Laboratories, Inc. ("Abbott"), by and through its attorneys, hereby states as its Answer and Affirmative Defenses to the Revised First Amended Consolidated Complaint, dated October 5, 2001, as follows:

## PRELIMINARY STATEMENT

The Revised First Amended Consolidated Complaint (the "Complaint") improperly refers to Abbott, other defendants, and third parties on a collective basis, failing to plead with requisite particularity allegations against Abbott.  This is insufficient to apprise Abbott (let alone each separate entity) of the allegations asserted against it.  Abbott has nevertheless attempted to respond to Plaintiffs' allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions of other persons or entities, Abbott is generally without knowledge or information sufficient to form a belief as to the truth of those allegations.  Abbott states that it is answering Plaintiffs' allegations solely on behalf of itself, even when Plaintiffs' allegations refer to alleged conduct by Abbott and other persons or entities.

The Complaint also contains purported quotations from a number of sources.  In answering allegations consisting of quotations, Abbott's failure to deny that the material quoted was contained in a document or was uttered by the person or entity quoted or Abbott's reference to the full document instead of the quote shall not constitute an admission that the substantive content of the quote or document is or is not true or that the material is relevant or admissible in this action.

Abbott denies each and every allegation contained in the Complaint and the exhibits thereto, except as specifically herein admitted, and any factual averment admitted herein is

admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole.  In addition, Abbott specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint.  For ease of reference, Abbott has included in this Answer and Affirmative Defenses the caption used in the Complaint, but specifically denies any allegations contained in, or inferences that could be drawn from, that caption.

These comments and objections are incorporated, to the extent appropriate, into each unnumbered and numbered paragraph of this Answer.

## SPECIFIC RESPONSES

To the extent that the unnumbered paragraph immediately following the Table of Contents (the "Complaint's Introductory Paragraph") makes allegations against Abbott, Abbott denies them, except admits that the City of New York and certain New York Counties (collectively, the "Counties") have made allegations against a number of defendants, including Abbott, as set forth in the Complaint.  To the extent that the Complaint's Introductory Paragraph states legal conclusions, no response is required.  To the extent the allegations of the Complaint's Introductory Paragraph are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations.

1.          Abbott admits that the Counties seek to bring this action as alleged in Paragraph 1 of the Complaint, but Abbott denies there is any basis for them to do so and denies that they are entitled to any relief.  Abbott also admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiffs with respect to any such NDCs.  To the extent the remaining allegations in Paragraph 1 are directed at Abbott,

Abbott denies them.  Abbott specifically denies that it has been involved in "fraudulent and misleading schemes" or that the New York State Medicaid Program has been "overcharge[d]" for prescription drugs.  To the extent the remaining allegations in Paragraph 1 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

2.          Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 or the exhibit referenced therein.  To the extent the allegations in Paragraph 2 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

3.          Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 or its footnote, except admits that it pays Medicaid rebates to the State of New York and that such rebates lower the price New York Medicaid pays for Abbott's prescription drugs.  To the extent the allegations in Paragraph 3 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

4.          To the extent the allegations in Paragraph 4 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it was involved in "fraudulent schemes," the "manipulation of the Medicaid program" or the "intentional fraudulent inflation" of wholesale prices, or that the Counties' Medicaid Programs were "overcharge[d]."  To the extent the allegations in Paragraph 4 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

5.          To the extent the allegations in Paragraph 5 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Abbott otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.          To the extent the allegations in Paragraph 6 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Abbott otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 or its footnote, except Abbott denies that it "actively encourage[s] physicians to write DAW in order to secure AWP-based reimbursement for pharmacies."

7.          To the extent the allegations in Paragraph 7 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Abbott otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.          Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.          To the extent the allegations in Paragraph 9 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it "control[s] and unlawfully inflates[s]" average wholesale prices ("AWPs") or federal upper limits ("FULs").  To the extent the allegations in Paragraph 9 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

10.        To the extent the allegations in Paragraph 10 are directed at Abbott, Abbott denies them, except Abbott admits that it has provided the wholesale acquisition cost of its drugs to certain industry pricing compendia and that publishers apply their own markups to these prices. Abbott specifically denies that it "set[s] AWP."  To the extent the allegations in Paragraph 10 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

11.        To the extent the allegations in Paragraph 11 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 11 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

12.        To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has "report[ed] a false and inflated WAC or WAC equivalent" to industry pricing compendia.  To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

13.        To the extent the allegations in Paragraph 13 are directed at Abbott, Abbott denies them, except Abbott admits that CMS has established FULs for certain drugs.  Abbott specifically denies that it "control[s] the FUL."  To the extent the allegations in Paragraph 13 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 13 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

14.        To the extent the allegations in Paragraph 14 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 14 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

15.        To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

16.-17.        To the extent the allegations in Paragraphs 16-17 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it "submit[s] false and inflated price information to the publishing compendia."  Abbott further denies the characterization of "spread" in Paragraphs 16-17.  To the extent the allegations in Paragraphs 16-17 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

18.-19.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 18-19.

20.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.  To the extent the allegations in Paragraph 20 refer to a Wall Street Journal article, the article speaks for itself, and any characterizations thereof are denied.

21.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 or the exhibit referenced therein.

22.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.        To the extent the allegations in Paragraph 23 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has "secretly polluted the entire reimbursement system with false and inflated prices."  To the extent the allegations in Paragraph 23 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

24.        To the extent the allegations in Paragraph 24 or the exhibit referenced therein are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has "cause[d] false and inflated published reimbursement prices to issue."  Abbott further denies the characterization of "spread" in Paragraph 24.  To the extent the allegations in Paragraph 24 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

25.        To the extent the allegations in Paragraph 25 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has "create[d], inflate[d], manipulate[d] and market[ed] the spread for both brand name and generic drugs."  To the extent the allegations in Paragraph 25 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

26.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.  To the extent the allegations in Paragraph 26 refer to an HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.

27.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.  To the extent the allegations in Paragraph 27 refer to the

transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

28.	To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has engaged in "intentional AWP inflation" or "fraud."  Abbott further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

29.	To the extent the allegations in Paragraph 29 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has "reported or caused to be reported [] false and inflated" WACs or engaged in any "unlawful and undisclosed manipulation of the price reporting system."  To the extent the allegations in Paragraph 29 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

30.	To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has engaged in any "pricing misconduct."  To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

31.	To the extent the allegations in Paragraph 31 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

CHI-1612990v3

Abbott otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 or its footnote, except Abbott admits that it pays Medicaid rebates as required by law.

32.           To the extent the allegations in Paragraph 32 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 32 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

33.           To the extent the allegations in Paragraph 33 or its footnote are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has "abused" any Medicaid statute.  To the extent the allegations in Paragraph 33 or its footnote are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 33 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

34.           To the extent the allegations in Paragraph 34 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 34 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 34 refer to an HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.

35.           Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.           To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at Abbott, Abbott admits that the Ross Products Division of Abbott Laboratories "is

paying $621 million in criminal and civil penalties" in connection with the marketing and sale of enteral nutrition infusion pumps.  Abbott further admits that in 2001 defendant TAP Pharmaceutical Products Inc. paid approximately $875 million in fines and civil settlements in connection with the marketing and sale of the drug Lupron®.  Abbott denies the remainder of the allegations in Paragraph 36.  To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

37.          Abbott admits that the Counties seeks the relief listed in Paragraph 37, but Abbott denies there is any basis for them to do so and denies that they are entitled to any relief.  To the extent the remaining allegations in Paragraph 37 are directed at Abbott, Abbott denies them. Abbott specifically denies that it has been involved in any "fraudulent and illegal manipulation of drug prices."  To the extent the remaining allegations in Paragraph 37 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

38.          Abbott admits that the Counties seek to bring this action as alleged in Paragraph 38, but Abbott denies there is any basis for them to do so and denies that they are entitled to any relief.

39.-40.          Paragraphs 39-40 state legal conclusions as to which no response is required.  To the extent a response is deemed to be required, Abbott denies the allegations in Paragraphs 39-40, except admits that each of the captioned matters has been transferred to this Court by the Judicial Panel on Multi District Litigation pursuant to 28 U.S.C. 1407.

41.-42 and 42A.  Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 41-42 and 42A.  To the extent the allegations in Paragraphs 41-42 and 42A refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

43.      Abbott denies the allegations in Paragraph 43 and its footnote, and refers to Case Management Order No. 33, dated September 14, 2007, ¶¶ 1, 3 for which plaintiffs are suing which defendants.

44.      To the extent the allegations in Paragraph 44 are directed at Abbott, Abbott denies them, except Abbott admits that it manufactures and sells prescription drugs and that it transacts business in the State and City of New York.  Abbott specifically denies that it "manufactures, markets and sells prescription drugs with false and inflated wholesale prices."  To the extent the allegations in Paragraph 44 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

45.      With respect to the allegations in Paragraph 45, Abbott admits that is "engaged in the business of manufacturing and selling pharmaceuticals" and that its principal place of business is located in Abbott Park, Illinois.   Abbott otherwise denies the allegations in Paragraph 45 of the Complaint.  To the extent the allegations in Paragraph 45, are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

46.-84.      The allegations in Paragraphs 46-84 are directed to other defendants and require no response from Abbott.  To the extent a response is deemed to be required, Abbott denies

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 46-84.

85.-88.       The allegations in Paragraphs 85-88 are directed to unknown defendants and require no response from Abbott.  To the extent a response is deemed to be required, Abbott denies that it was involved in any conspiracy related to drug pricing with either named or unknown defendants.  Abbott also denies that it has engaged in any "wrongful acts" related to drug pricing.

89.       With respect to the allegations in Paragraph 89, Abbott admits that Medicaid was established by Title XIX of the Social Security Act.  Abbott further states that the provisions of Title XIX speak for themselves, and any characterizations thereof are denied.

90.       Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, except Abbott admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.  To the extent the allegations in Paragraph 90 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

91.-99.       Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 91-99 or their footnotes.  To the extent the allegations in Paragraphs 91-99 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

100.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100,  except admits that national drug codes are assigned to prescription drugs and that the FDA assigns such codes.

101.-111.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 101-111 or their footnotes.  To the extent the allegations in Paragraphs 101-111 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

112.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112,  except admits that pricing compendia such as Blue Book publish AWPs and FULs, and denies that Abbott has any control over such prices.

113.        To the extent the allegations in Paragraph 113 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it has "fraudulently conceal[ed]" the "true prices" of its drugs by "claiming they are proprietary trade secrets."  To the extent the allegations in Paragraph 113 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 113 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

114.-115.        To the extent the allegations in Paragraphs 114-115 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it reports "reimbursement prices . . . to the publishing compendia" or that it has engaged in the "purposeful manipulation of reimbursement prices generally, and AWP in particular."  Abbott further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including

by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 114-115 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 114-115 refer to HHS OIG reports, the reports speak for themselves, and any characterizations thereof are denied.

116.-123.      With respect to the allegations in Paragraphs 116-123 and their footnotes, Abbott admits that the Medicaid statute includes a rebate provision, that it has entered into a rebate agreement with the Secretary of Health and Human Services, and that rebates help reduce state Medicaid drug expenditures.  Abbott further states that the rebate provision speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 116-123 or their footnotes refer to additional statutes, regulations or congressional reports, those sources also speak for themselves, and any characterizations thereof are also denied.

124.-125.      Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 124-125.  To the extent the allegations in Paragraphs 124-125 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Abbott denies that the Counties are intended third-party beneficiaries of Medicaid rebate agreements.

126.           With respect to the allegations in Paragraph 126, Abbott admits that drug manufacturers report Best Prices and AMPs to HHS.  To the extent the allegations in Paragraph 126 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

127.-130.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 127-130, except admits that it reports Medicaid information to HHS and pays rebates to States.  To the extent the allegations in Paragraphs 127-130 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

131.        To the extent the allegations in Paragraph 131 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 131 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 131 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

132.        To the extent the allegations in Paragraph 132 are directed at Abbott, Abbott admits that it has executed a rebate agreement with HHS.  Abbott further states that the rebate agreement speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 132 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 132 refer to the Model Rebate Agreement, that document also speaks for itself, and any characterizations thereof are also denied.

133.-136.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 133-136.  To the extent the allegations in Paragraphs 133-136 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

137.-143.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 137-143, except Abbott denies that the Counties are Medicaid payors or intended third-party beneficiaries of Medicaid rebate agreements.  To the extent the allegations in Paragraphs 137-143 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

144.        To the extent the allegations in Paragraph 144 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it "intentionally reported, or caused to be reported, to industry publications wholesale pricing information that it knew to be false and inflated." Abbott further denies the characterization of "spread" in Paragraph 144.  To the extent the allegations in Paragraph 144 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

145.-149.        With respect to the allegations in Paragraphs 145-149, Abbott admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein.  To the extent the remaining allegations in Paragraphs 145-149 or Exhibit B are directed at Abbott, Abbott denies them.  Abbott specifically denies that it "routinely submitted fraudulent prices" to pricing compendia.  Abbott further denies the characterization of "spread" in Paragraphs 145-149 and Exhibit B.  To the extent the remaining allegations in Paragraphs 145-149 or Exhibit B are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

150.-153.        To the extent the allegations in Paragraphs 150-153 are directed at Abbott, Abbott denies them.  Abbott further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their

agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraphs 150-153 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

154.        Paragraph 154 purports to contain a statement from HHS OIG, but Abbott denies knowledge or information sufficient to form a belief as to its accuracy because the source thereof is not provided.  To the extent the source of the statement[s] is provided, the source speaks for itself, and any characterizations thereof are denied.

155.-158.        To the extent the allegations in Paragraphs 155-158 are directed at Abbott, Abbott denies them.  Abbott further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia.  To the extent the allegations in Paragraphs 155-158 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

159.-165.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 159-165, except Abbott admits that PBMs are involved in administering and managing prescription drug benefit programs and that certain PBMs also operate mail order pharmacies.  To the extent the allegations in Paragraphs 159-165 refer to articles or reports, those sources speak for themselves, and any characterizations thereof are denied.

166.        To the extent the allegations in Paragraph 166 are directed at Abbott, Abbott denies them.  Abbott specifically denies that it "control[s] the published reimbursement prices."

To the extent the allegations in Paragraph 166 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

167.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167.

168.-172.        To the extent the allegations in Paragraphs 168-172 are directed at Abbott, Abbott denies them, except Abbott admits that it has executed a rebate agreement with HHS.  Abbott further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to Abbott.  In any event, the rebate agreement speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 168-172 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 168-172 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

173.-176.        To the extent the allegations in Paragraphs 173-176 are directed at Abbott, Abbott denies them, and further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to Abbott.  To the extent the allegations in Paragraphs 173-176 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 173-176 refer to statutes, regulations or reports, those sources speak for themselves, and any characterizations thereof are denied.

177.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177.  To the extent the allegations in Paragraph 177 are directed

at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

178.-194.      To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 178-194 or their footnotes refer to reports, articles, letters, congressional hearing transcripts, or other documents, those sources speak for themselves, and any characterizations thereof are denied.

195.      To the extent the allegations in Paragraph 195 are directed at Abbott, Abbott denies them, except Abbott admits that its contracts with purchasers sometimes included discounts.  To the extent the allegations in Paragraph 195 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

196.      To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

197.      Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197 or its footnote or the exhibit referenced therein, except Abbott denies that it engaged in any "fraud," and states that Exhibits A and B to the Complaint have changed since the filing of the Complaint.

198.          Abbott denies the allegations in Paragraph 198 and the exhibit referenced therein, including that it "maintain[ed] false and inflated reimbursement prices" and states that Exhibits A and B to the Complaint have changed since the filing of the Complaint.

199.-205.          Abbott denies each and every allegation in Paragraphs 199-205 including specifically that it "instructed its sales force to market the spread for its products.  Abbott has specifically instructed sales staff to use the difference between AWP and actual acquisition cost as a selling point, and has prepared worksheets demonstrating the proper calculation of spread," that its "upper level management, throughout the 1990s, engaged in a systematic and repeated pattern of conduct whereby they used the inflated reimbursement spread, resulting from Abbott's false reimbursement prices, as a marketing tool in order to persuade customers to purchase Abbott's products rather than its competitors**",** that it "promoted the spread" or "tried to maximize the spread" for its products or engaged and any "price manipulation scheme."  To the extent the allegations in Paragraph 199-205 refer to memos or letters, those sources speaks for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 199-205 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

206.          Abbott denies the allegations in Paragraph 206.  Abbott further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.

207.        Abbott denies the allegations in Paragraphs 207, except that it admits that it had "marketing arrangements with Defendant Teva Group."  To the extent the allegations in Paragraph 207 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

208.        With respect to the allegations in Paragraph 208, Abbott denies that it engaged in "fraudulent pricing" and therefore denies the allegations of Paragraph 208.

209.        With respect to the allegations in Paragraph 209, Abbott denies knowledge or information sufficient to form a belief as to their truth, except that it denies that it reported false and/or inflated prices regarding the drug Vancomycin.  Abbott further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.

210.        Abbott denies the allegations in Paragraph 210.  Abbott further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent that the allegations in Paragraph 210 refer to reports, those sources speak for themselves, and any characterizations thereof are denied.

211.-212.    Abbott denies that it reported false prices for its drug products and therefore denies the allegations in Paragraphs 211-212.  To the extent that the allegations in Paragraphs 211-212 refer to invoices, those sources speak for themselves, and any characterizations thereof are denied.

213.        With respect to the allegations in Paragraph 213, Abbott denies it has engaged in any "wrongful conduct" or in a "routine practice of reporting false and inflated wholesale pricing information and non-compliance with rebate obligations."  As for the remainder of the allegations in Paragraph 213, Abbott denies knowledge or information sufficient to form a belief as to their truth.

214.        Abbott denies the allegations in Paragraph 214, except Abbott admits that it has been named as a defendant in lawsuits filed by the states of Alabama, California, Illinois, Kentucky, Montana, Pennsylvania, Texas, West Virginia and Wisconsin and the Department of Justice.  Abbott specifically denies that there is any basis for those lawsuits.

215.-216.        With respect to the allegations in Paragraphs 215-216, Abbott states that the allegations of the Complaint filed by the State of Illinois speak for themselves and it denies any mischaracterization thereof or inconsistencies therewith.  Abbott further denies that it engaged in any of the misconduct alleged by the State of Illinois in its Complaint and therefore denies the allegations of Paragraphs 215-216.

217.        To the extent the allegations in Paragraph 217 or the exhibit referenced therein are directed at Abbott, Abbott admits that the Ross Products Division of Abbott Laboratories agreed to pay $621 million in criminal and civil penalties in connection with the marketing and sale of enteral nutrition infusion pumps.  Abbott states that the criminal plea agreement and civil settlement agreement speak for themselves and deny any allegations of Paragraph 217 or characterizations inconsistent therewith.  Abbott denies the remainder of the allegations in Paragraph 217.

218.        Abbott denies the allegations in Paragraphs 218, except that it admits the Ross Products Division of Abbott Laboratories has had "a joint marketing agreement with defendant MedImmune."  To the extent the allegations in Paragraph 218 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

219.        With respect to the allegations in Paragraph 219, Abbott admits that Abbott Laboratories is a co-venturer with Japan's Takeda Pharmaceutical Company Limited, and that it and Takeda each own half of the stock of TAP Pharmaceutical Products Inc.  Abbott further admits that TAP pled guilty to charges that it had violated the Prescription Drug Marketing Act and paid approximately $875 million in fines and civil settlements in connection with its marketing and sale of the drug Lupron®.  Abbott denies the remaining allegations of Paragraph 219.

220.        With respect to the allegations in Paragraph 220, Abbott denies knowledge or information sufficient to form a belief as to their truth.

221.        To the extent that the allegations in Paragraph 221 state that "Abbott also is the subject of the investigation led by Senators Grassley and Baucus of the Senate Finance Committee regarding whether it is improperly using the nominal price exception to the Best Price reporting requirement," Abbott denies knowledge or information sufficient to form a belief as to their truth.  Abbott denies the remainder of Paragraph 221.

222.-706.      The allegations in Paragraphs 222-706 are directed to other defendants and require no response from Abbott.  To the extent a response is deemed to be required, Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 222-706.

707.	To the extent the allegations in Paragraphs 707 are directed at Abbott, Abbott admits that in connection with TAP's guilty plea agreement, Abbott Laboratories entered into a side letter agreement with the government in which it agreed to cooperate fully with the then ongoing investigation of TAP's former and current officers and employees.

708.-769.	The allegations in Paragraphs 708-769 are directed to other defendants and require no response from Abbott.  To the extent a response is deemed to be required, Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 708-769.

770.-772.	To the extent the allegations in Paragraphs 770-772 are directed at Abbott, Abbott denies them, except Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegation that the Counties' Medicaid programs "spent over $20 billion for defendants' drugs from 1992 – 2005."  Abbott specifically denies that it was involved in any "false price reporting scheme" or "misconduct," or that it has been "unjustly enriched."  To the extent the allegations in Paragraphs 770-772 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

773.-790.	To the extent the allegations in Paragraphs 773-790 are directed at Abbott, Abbott denies them.  Abbott further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraphs 773-790 are directed at parties other than Abbott, Abbott denies knowledge or information

sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 786 refer to *The Pink Sheet*, that document speaks for itself, and any characterizations thereof are denied.

## COUNT I
### VIOLATION OF FEDERAL MEDICAID STATUTE, 42 U.S.C. 1396r-8 (FAILURE TO COMPLY WITH FEDERAL MEDICAID REBATE PROVISION)

791.        In response to Paragraph 791, Abbott repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 790.

792.-800.        To the extent the allegations in Paragraphs 792-800 are directed at Abbott, Abbott states that the Court has dismissed them.  To the extent that a response is still required, Abbott denies the allegations as to itself.  To the extent the allegations in Paragraphs 792-800 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

## COUNT II
### VIOLATION OF N.Y. SOCIAL SERVICES LAW 367-a(7)(d) (FAILURE TO COMPLY WITH STATE MEDICAID REBATE PROVISION)

801.        In response to Paragraph 801, Abbott repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 800.

802.-807.        To the extent the allegations in Paragraphs 802-807 are directed at Abbott, Abbott states that the Court has dismissed them.  To the extent that a response is still required, Abbott denies the allegations as to itself.  To the extent the allegations in Paragraphs 802-807 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

## COUNT III
## VIOLATION OF NEW YORK SOCIAL SERVICES LAW 145-b (OBTAINING PUBLIC FUNDS BY FALSE STATEMENTS)

808.             In response to Paragraph 808, Abbott repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 807.

809.             Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 809.  To the extent the allegations in Paragraph 809 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

810.-813.       To the extent the allegations in Paragraphs 810-813 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraphs 810-813 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 810-813 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 810-813 contain legal conclusions, no response is required.

## COUNT IV
## VIOLATION OF NEW DEPARTMENT OF HEALTH REGULATIONS 18 N.Y.C.R.R. 512.2(b)4) and (5)

814.             In response to Paragraph 814, Abbott repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 813.

815.-817.       To the extent the allegations in Paragraphs 815-817 are directed at Abbott, Abbott states that the Court has dismissed them.  To the extent that a response is still required, Abbott denies the allegations as to itself.  To the extent the allegations in Paragraphs 814-817 are

directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

## COUNT V
## BREACH OF CONTRACT

818.          In response to Paragraph 818, Abbott repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 817.

819.-830.          To the extent the allegations in Paragraphs 819-830 are directed at Abbott, Abbott states that the Court has dismissed them.  To the extent that a response is still required, Abbott denies the allegations as to itself.  To the extent the allegations in Paragraphs 819-830 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

## COUNT VI
## UNFAIR TRADE PRACTICES (Violations of N.Y. Gen. Bus. Law 349 *et seq*.)

831.          In response to Paragraph 831, Abbott repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 830.

832.-835.          To the extent the allegations in Paragraphs 832-835 and the exhibits referenced therein are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraphs 832-835 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 832-835 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

836.-837.      To the extent the allegations in Paragraphs 836-837 or the exhibit referenced

therein are directed at Abbott, Abbott admits that the Ross Products Division of Abbott

Laboratories "is paying $621 million in criminal and civil penalties" in connection with the

marketing and sale of enteral nutrition infusion pumps.  Abbott further admits that in 2001

defendant TAP Pharmaceutical Products Inc. paid approximately $875 million in fines and civil

settlements in connection with the marketing and sale of the drug Lupron®.  Abbott denies the

remainder of the allegations in Paragraphs 836-837.  To the extent the allegations in Paragraphs

836-837 or the exhibit referenced therein are directed at parties other than Abbott, Abbott denies

knowledge or information sufficient to form a belief as to their truth.  To the extent the

allegations in Paragraphs 836-837 or the exhibit referenced therein refer to statutes or

regulations, those sources speak for themselves, and any characterizations thereof are denied.

838.-839.      To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto are

directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraphs 838-839 and

the sub-parts thereto are directed at parties other than Abbott, Abbott denies knowledge or

information sufficient to form a belief as to their truth.  To the extent the allegations in

Paragraphs 838-839 and the sub-parts thereto refer to statutes or regulations, those sources speak

for themselves, and any characterizations thereof are denied.  To the extent the allegations in

Paragraphs 838-839 and the sub-parts thereto contain legal conclusions, no response is required.

## COUNT VII
## FRAUD

840.            In response to Paragraph 840, Abbott repeats and incorporates as if fully set forth

herein each and every response to the allegations in Paragraphs 1 through 839.

841.-843.        To the extent the allegations in Paragraphs 841-843 and the exhibits referenced therein are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraphs 841-843 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

844.        Abbott denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 844.  To the extent the allegations in Paragraph 844 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

845.        To the extent the allegations in Paragraph 845 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraph 845 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 845 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraph 845 contain legal conclusions, no response is required.

## COUNT VIII
## UNJUST ENRICHMENT

846.        In response to Paragraph 846, Abbott repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 845.

847.-849.        To the extent the allegations in Paragraphs 847-849 are directed at Abbott, Abbott denies them.  To the extent the allegations in Paragraphs 847-849 are directed at parties other than Abbott, Abbott denies knowledge or information sufficient to form a belief as to their truth.

To the extent the allegations in Paragraphs 847-849 contain legal conclusions, no response is required.

850.-858.    Abbott denies that the Counties are entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and Paragraphs 850-858 of the Complaint.

**WHEREFORE**, Abbott demands judgment dismissing the Complaint with prejudice, and awarding reasonable expenses and costs incurred herein, and for such further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Abbott reasserts and incorporates herein by reference the assertions of Paragraphs 1 through 858 hereof.

### First Affirmative Defense

Plaintiffs fail to state a claim against Abbott upon which relief may be granted.

### Second Affirmative Defense

This Court lacks subject matter jurisdiction over all or some of the claims asserted by the Plaintiffs.

### Third Affirmative Defense

This Court lacks subject matter jurisdiction based on the doctrines of exclusive and primary jurisdiction and failure to exhaust administrative remedies.

## Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because they did not rely on any alleged misrepresentations or fraud by Abbott.  Plaintiffs knew that providers could obtain Abbott drugs at prices below AWP prior to the relevant time period stated in the Complaint.

## Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the political question and separation of powers doctrines.

## Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the filed rate doctrine.

## Seventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the state action doctrine.

## Eighth Affirmative Defense

Plaintiffs' claims are barred because Plaintiffs lack standing to assert all or some of their claims in this lawsuit, including the asserted claims against Abbott.

## Ninth Affirmative Defense

The Plaintiffs and/or their agents knew and were aware that AWP was not an average wholesale price or the actual acquisition cost of drugs.  Legal and equitable principles preclude this action for damages and injunctive relief, and the Due Process Clause of the U.S. Constitution

and Section 6 of the New York Constitution preclude Plaintiffs from bringing claims and seeking damages as alleged in the Complaint.

## Tenth Affirmative Defense

To the extent Plaintiffs or the State of New York obtain recovery in any other case predicated on the same factual allegations, Plaintiffs are barred from seeking recovery against Abbott based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

## Eleventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by Abbott in judicial, legislative, or administrative proceedings of any kind or at any level of government.

## Twelfth Affirmative Defense

The Plaintiffs' claims against Abbott are misjoined with the Plaintiffs' claims against other defendants and must be severed.

## Thirteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiffs' claims.

**Fourteenth Affirmative Defense**

The Plaintiffs' claims are barred, in whole or in part, because they conflict with federal statutes and regulations that comprise a comprehensive regulatory regime governing the amounts paid to providers for Medicare Part B-covered drugs.

**Fifteenth Affirmative Defense**

The Plaintiffs' claims against Abbott for injunctive relief were mooted by the passage of the Medicare Prescription Drug Improvement and Modernization Act of 2003.

**Sixteenth Affirmative Defense**

The Plaintiffs' claims are preempted by the dormant Commerce Clause of the United States Constitution.

**Seventeenth Affirmative Defense**

The Plaintiffs' claims are preempted by the Commerce Clause of the United States Constitution.

**Eighteenth Affirmative Defense**

The Plaintiffs' claims against Abbott are barred, in whole or in part, because Abbott has complied with all applicable regulations of the federal and state governments.

**Nineteenth Affirmative Defense**

The Plaintiffs' claims are barred, in whole or in part, because they violate Abbott's rights under the due process and *Ex Post Facto* clauses of the United States Constitution, as well

as the Constitution of the State of New York, insofar as the Plaintiffs seek to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Twentieth Affirmative Defense

The Plaintiffs' claims against Abbott are barred, in whole or in part, because the Plaintiffs have no standing or capacity to bring some or all of the claims raised in this suit to recover Medicaid or Medicare expenditures or to seek injunctive relief.

### Twenty-First Affirmative Defense

The Plaintiffs' claims against Abbott are barred, in whole or in part, because Abbott did not make any false statements to the Plaintiffs or any of the agencies, departments, or citizens for whom the Plaintiffs are seeking relief.  As to any statement asserted against Abbott that the Plaintiffs allege to be false or misleading, Abbott had no reasonable grounds to believe, and did not believe at the time such a statement was made, that the statement was false or misleading.

### Twenty-Second Affirmative Defense

The Plaintiffs' claims against Abbott are barred because Abbott did not directly or indirectly engage in any conduct in violation of state or federal law.

### Twenty-Third Affirmative Defense

The Plaintiffs' claims are barred, in whole or in part, because Abbott's conduct was neither "deceptive," "misleading," "unlawful," nor "illegal."

## Twenty-Fourth Affirmative Defense

The Plaintiffs are barred from recovery because the representations and actions alleged by the Plaintiffs were not, and are not, material, in that they were not, and are not, likely to affect the decisions or conduct of Plaintiffs, or to have caused consumers or Third Party Payors to have chosen differently, but for such alleged representations or actions, in light of the information available and known to consumers and Third Party Payors, and in that the alleged representations and actions were not likely to mislead consumers or Third Party Payors acting reasonably under the circumstance.

## Twenty-Fifth Affirmative Defense

Some or all of the Plaintiffs' claims for injunctive relief against Abbott are barred by the doctrines of *in pari delicto* and/or unclean hands.

## Twenty-Sixth Affirmative Defense

The Plaintiffs' claims against Abbott are barred, in whole or in part, because the Plaintiffs suffered no damages as a result of the matters alleged in the Complaint.

## Twenty-Seventh Affirmative Defense

The Plaintiffs' claims are barred, in whole or in part, because any injuries sustained by the Plaintiffs were the result of their own conduct or the intervening or superseding conduct of third parties.  Any and all of the injuries or damages suffered by Plaintiffs resulted solely from conduct and/or conditions for which Abbott is not responsible and for which it cannot be held liable.   Alternatively, any injuries or damages suffered by Plaintiffs were not caused or

contributed by any act or omission of Abbott, but were caused solely by the acts of others for which Abbott may not be held liable.

### Twenty-Eighth Affirmative Defense

Plaintiffs' state law claims are preempted, in whole or in part, by federal law, including without limitation the Federal Employment Retirement Income and Security Act of 1974, the Federal Medicare Act, and the Federal Medicaid Act, including all amendments to the same and all regulations promulgated there under.

### Twenty-Ninth Affirmative Defense

Plaintiffs' claims against Abbott are barred, in whole or in part, by the applicable statutes of limitations and repose, and by the doctrines of laches, estoppel, and waiver.

### Thirtieth Affirmative Defense

Plaintiffs fail to state with particularity facts to support claims of fraudulent conduct, fraudulent concealment and the multi-source allegations against Abbott contained in the Complaint.

### Thirty-First Affirmative Defense

Any and all actions taken by Abbott with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice.

### Thirty-Second Affirmative Defense

Abbott's statements or actions were not the proximate cause or cause in fact of any injury to or alleged loss by Plaintiffs.

### Thirty-Third Affirmative Defense

Abbott denies that Plaintiffs have valid consumer protection claims against Abbott under New York's Unfair Trade Practices Act.  However, if such claims are found to exist, Abbott pleads all available defenses under the Act.

### Thirty-Fourth Affirmative Defense

To the extent that Plaintiffs attempt to seek equitable relief against Abbott, Plaintiffs are not entitled to such relief because Plaintiffs have an adequate remedy at law.

### Thirty-Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

### Thirty-Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of consent and/or ratification to the extent that Plaintiffs have received and paid for medicines manufactured, marketed and sold by Abbott after the filing of the complaint of Suffolk County.

## Thirty-Seventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the damages alleged are speculative and remote and because of the impossibility of ascertaining and allocating those alleged damages.

## Thirty-Eighth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, due to their failure to join indispensable parties.

## Thirty-Ninth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered damages as a result of the matters alleged in the Complaint.

## Fortieth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate damages, and that failure to mitigate damages should proportionately reduce Plaintiffs' recovery and the allocation of any fault, if any exists, attributable to Abbott.

## Forty-First Affirmative Defense

Abbott is entitled to a set-off, should any damages be awarded against it, for the entire amount of all damages or settlement amounts recovered by Plaintiffs, with respect to the same alleged injuries.

## Forty-Second Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' punitive damages claims against Abbott are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against Abbott.

## Forty-Third Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' damages claims against Abbott cannot be sustained because an award of punitive damages would violate the United States Constitution, Excessive Fines Clause of the Eighth Amendment, U.S. Const. amend. VIII and the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 and the analogous provisions contained in the Constitutions of the State of New York and any other States whose laws are or become relevant in the course of this lawsuit.

## Forty-Fourth Affirmative Defense

The applicable statutory ceilings on recoverable damages must limit any damages recovered by the Plaintiffs from Abbott.

## Forty-Fifth Affirmative Defense

The Plaintiffs fail to allege facts or a cause of action against Abbott sufficient to support a claim for compensatory damages, attorneys' fees and/or legal fees, or any other relief.

## Forty-Sixth Affirmative Defense

Abbott denies that it has engaged in any conduct that entitles the Plaintiffs to recover penalty assessments and avers that the Plaintiffs' Complaint fails to state a claim upon which penalty assessments may be awarded to the Plaintiff.

## Forty-Seventh Affirmative Defense

The Plaintiffs' penalty assessment claims against Abbott: (1) have no basis in law or fact; (2) are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for penalty assessments against Abbott; (3) cannot be sustained because laws regarding the standards for determining liability for and the amount of penalty assessments fail to give Abbott prior notice of the conduct for which penalty assessments may be imposed and the severity of the penalty that may be imposed and are void for vagueness in violation of Abbott's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution of the State of New York; (4) cannot be sustained because any award of penalty assessments exceeding the limits authorized by the laws or other comparable laws would violate Abbott's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law and applicable state laws of New York; (5) cannot be sustained because an award of penalty assessments in this case, combined with any prior, contemporaneous, or subsequent judgments against Abbott for penalty assessments arising from the design, development, manufacture, fabrication, distribution, supply, marketing, sale, or use of Abbott's medicines, would constitute impermissible multiple punishments for the same wrong in violation of Abbott's due process and equal protection rights guaranteed by the Fifth and

Fourteenth Amendments to the United States Constitution and would constitute double jeopardy in violation of the Constitution, common law and statutory law of New York; (6) cannot be sustained because any award of penalty assessments without the apportionment of the award separately and severally between or among the alleged joint tortfeasors, as determined by the alleged percentage of the wrong committed by each alleged tortfeasor, would violate Abbott's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law and public policies of New York; and (7) cannot be sustained because any award of penalty assessments, which are penal in nature, without according Abbott the same protections that are accorded to all criminal defendants, including the protection against unreasonable searches and seizures, the privilege against self-incrimination, and the rights to confront adverse witnesses, a speedy trial, and the imposition of excessive fines would violate Abbott's rights guaranteed by the Fourth, Fifth, Sixth, and Eighth Amendments as incorporated into the Fourteenth Amendment to the United States Constitution and would be improper under the Constitution, common law and public policies of New York.

### Forty-Eighth Affirmative Defense

The Plaintiffs' claim for penalty assessments against Abbott cannot be sustained because an award of penalty assessments by a jury that:  (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a penalty assessments award; (2) is not adequately instructed on the limits of penalty assessments imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding penalty assessments, or determining the amount of an award of penalty assessments, in whole or in part, on the basis of invidiously discriminatory

characteristics, including without limitation, the residence, wealth, and corporate status of Abbott; (4) is permitted to award penalty assessments under a standard for determining liability for penalty assessments that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes penalty assessments permissible; (5) is not properly instructed regarding the Plaintiffs' burden of proof with respect to each and every element of a claim for penalty assessments; and (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards, would violate Abbott's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the Constitution, common law and public policies of  New York.

## Forty-Ninth Affirmative Defense

The Plaintiffs' claim for penalty assessments against Abbott cannot be sustained because an award of penalty assessments that is subject to no predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount of penalty assessments that may be imposed, would:  (1) violate Abbott's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution; (2) violate Abbott's right not to be subjected to an excessive award; and (3) be improper under the Constitution, common law and public policies of New York.

## Fiftieth Affirmative Defense

The Plaintiffs fail to allege facts or a cause of action against Abbott sufficient to support a claim for prejudgment interest or any other relief.

## Fifty-First Affirmative Defense

The Plaintiffs' claims are barred, in whole or in part, with respect to any alleged overcharge or supracompetitive price because such supracompetitive price, if any, was absorbed in whole or in part by a person and/or entity that purchased the medicine directly, and/or an intermediate purchaser, and was not passed through to the Plaintiffs.

## Fifty-Second Affirmative Defense

To the extent Plaintiffs are asserting claims for unjust enrichment, they are barred, in whole or in part, because Plaintiffs have no authority to bring such claims on behalf of themselves or the citizens of New York.

## Fifty-Third Affirmative Defense

To the extent Plaintiffs are asserting claims for unjust enrichment, they are barred, in whole or in part, by contracts to which Plaintiffs and Abbott are parties.

## Fifty-Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of contributory and/or comparative fault because Plaintiffs' own actions or failures to act helped to bring about any injuries sustained.

## Fifty-Fifth Affirmative Defense

Abbott breached no legal duty to Plaintiffs, and the Revised First Amended Consolidated Complaint filed herein should be dismissed with all costs taxed to Plaintiffs.

**Fifty-Sixth Affirmative Defense**

Some or all of Plaintiffs' claims are barred by the Statute of Frauds.

**Fifty-Seventh Affirmative Defense**

Plaintiffs may not sue *parens patriae* when there is no express state statutory or common law authority to do so, and would unconstitutionally deprive Abbott of its vested right in the application of the statutes of limitations to the otherwise time-barred putative claims of private citizens.

**Fifty-Eighth Affirmative Defense**

Plaintiffs lack the authority to assert the putative *parens patriae* claims on behalf of the citizens of New York.

**Fifty-Ninth Affirmative Defense**

Abbott adopts by reference any additional applicable defense pled by any other defendant not otherwise pled herein.

**Sixtieth Affirmative Defense**

Abbott hereby gives notice that it intends to rely upon any other and additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserve its right to amend its answer to assert such defense.

**JURY DEMANDED**

CHI-1612990v3

44

A jury trial on all issues is hereby demanded.

Dated:  October 26, 2007

/s/ Toni-Ann Citera
Lee Ann Russo
Toni-Ann Citera
Rachael E. Philbin
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL  60601
Tel: (312) 782-3939
Fax: (312) 782-8585

*Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I, Rachael E. Philbin, an attorney, hereby certify that I caused a true and correct copy of the foregoing ANSWER AND AFFIRMATIVE DEFENSES to be served upon all counsel of record via LNFS, this 26th day of October, 2007.


/s/ Rachael E. Philbin
Rachael E. Philbin