# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
|  | MDL NO. 1456 Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |

)
)
IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE LITIGATION ) MDL NO. 1456
) Civil Action No. 01-12257-PBS
)
THIS DOCUMENT RELATES TO: )
) Judge Patti B. Saris
*The City of New York v. Abbott Laboratories, Inc., et al.* )
(S.D.N.Y. No. 04-CV-06054) )
*County of Albany v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00425) )
*County of Allegany v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06231) )
*County of Broome v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00456) )
*County of Cattaraugus v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06242) )
*County of Cayuga v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00423) )
*County of Chautauqua v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06204) )
*County of Chemung v. Abbott Laboratories, Inc., et al.* )
(W.D.N.Y. No. 05-CV-06744) )
*County of Chenango v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00354) )
*County of Columbia v. Abbott Laboratories, Inc., et al.* )
(N.D.N.Y. No. 05-CV-00867) )

[Caption Continues on Next Page]

**ANSWER AND AFFIRMATIVE DEFENSES OF KING PHARMACEUTICALS, INC., KING PHARMACEUTICALS RESEARCH AND DEVELOPMENT, INC. AND MONARCH PHARMACEUTICALS, INC. TO REVISED FIRST AMENDED CONSOLIDATED COMPLAINT**

*County of Cortland v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00881)   )

*County of Dutchess v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 05-CV-06458)   )

*County of Essex County v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00878)   )

*County of Fulton v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00519)   )

*County of Genesee v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06206)   )

*County of Greene v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00474)   )

*County of Herkimer v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00415)   )

*County of Jefferson v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00715)   )

*County of Lewis v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00839)   )

*County of Madison v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00714)   )

*County of Monroe v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06148)   )

*County of Nassau v. Abbott Laboratories, Inc., et al.*   )
(E.D.N.Y. No. 04-CV-5126)   )

*County of Niagara v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06296)   )

*County of Oneida v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00489)   )

*County of Onondaga v. Abbott Laboratories, Inc., et al.*   )
(N.D.N.Y. No. 05-CV-00088)   )

*County of Ontario v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06373)   )

*County of Orange v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 07-CV-2777)   )

*County of Orleans v. Abbott Laboratories, Inc., et al.*   )
(W.D.N.Y. No. 05-CV-06371)   )

*County of Putnam v. Abbott Laboratories, Inc., et al.*   )
(S.D.N.Y. No. 05-CV-04740)   )

[Caption Continues on Next Page]

2

*County of Rensselaer v. Abbott Laboratories, Inc., et al.*       )
(N.D.N.Y. No. 05-CV-00422)                                        )

*County of Rockland v. Abbott Laboratories, Inc., et al.*         )
(S.D.N.Y. No. 03-CV-7055)                                         )

*County of Saratoga v. Abbott Laboratories, Inc., et al.*         )
(N.D.N.Y. No. 05-CV-00478)                                        )

*County of Schuyler v. Abbott Laboratories, Inc., et al.*         )
(W.D.N.Y. No. 05-CV-06387)                                        )

*County of Seneca v. Abbott Laboratories, Inc., et al.*           )
(W.D.N.Y. No. 05-CV-06370)                                        )

*County of St. Lawrence v. Abbott Laboratories, Inc., et al.*     )
(N.D.N.Y. No. 05-CV-00479)                                        )

*County of Steuben v. Abbott Laboratories, Inc., et al.*          )
(W.D.N.Y. No. 05-CV-06223)                                        )

*County of Suffolk v. Abbott Laboratories, Inc., et al.*          )
(E.D.N.Y. No. CV-03-229)                                          )

*County of Tompkins v. Abbott Laboratories, Inc., et al.*         )
(N.D.N.Y. No. 05-CV-00397)                                        )

*County of Ulster v. Abbott Laboratories, Inc., et al.*           )
(N.D.N.Y. No. 06-CV-0123)                                         )

*County of Warren v. Abbott Laboratories, Inc., et al.*           )
(N.D.N.Y. No. 05-CV-00468)                                        )

*County of Washington v. Abbott Laboratories, Inc., et al.*       )
(N.D.N.Y. No. 05-CV-00408)                                        )

*County of Wayne v. Abbott Laboratories, Inc., et al.*            )
(W.D.N.Y. No. 05-CV-06138)                                        )

*County of Westchester v. Abbott Laboratories, Inc., et al.*      )
(S.D.N.Y. No. 03-CV-6178)                                         )

*County of Wyoming v. Abbott Laboratories, Inc., et al.*          )
(W.D.N.Y. No. 03-CV-6379)                                         )

AND                                                               )

*County of Yates v. Abbott Laboratories, Inc., et al.*            )
(W.D.N.Y. No. 05-CV-06172)                                        )

M SBB 1050628 v1
2789312-000073 10/26/2007

Defendants King Pharmaceuticals, Inc., King Pharmaceuticals Research and Development, Inc. and Monarch Pharmaceuticals, Inc. (referred to hereinafter collectively in the singular as "King"), by and through their attorneys, hereby state their Answer and Affirmative Defenses to the Revised First Amended Consolidated Complaint, dated October 5, 2007, as follows:

## PRELIMINARY STATEMENT

The First Amended Consolidated Complaint (the "Complaint") improperly refers to King, other defendants, and third parties on a collective basis, failing to plead with requisite particularity allegations against King. This type of pleading is insufficient to provide notice to King (let alone each separate entity) of the allegations asserted against it. Furthermore, Plaintiffs have not complied with Rule 9(b) of the Federal Rules of Civil Procedure and such pleading does not comply with *Twombly*. King has nevertheless attempted to respond to Plaintiffs' allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions of other persons or entities, King is generally without knowledge or information sufficient to form a belief as to the truth of those allegations, denies those allegations on that basis, and if King's interest are to be affected, King demands strict proof. King states that it is answering Plaintiffs' allegations solely on behalf of itself, even when Plaintiffs' allegations refer to alleged conduct by King and other persons or entities.

The Complaint also contains purported quotations from a number of sources. In answering allegations consisting of quotations, King's admission or denial that the material quoted was contained in a document or was uttered by the person or entity quoted or King's reference to the full document instead of the quote shall not constitute an admission that the

4

substantive content of the quote or document is or is not true or that the material is relevant or admissible in this action. Furthermore, King is generally without information to admit or deny these quoted statements and denies those statements and quotes on that basis, and if King's interests are to be affected, King demands strict proof.

King has entered into a settlement with the United States of America and all fifty (50) states including the State of New York. Attached hereto, incorporated herein by reference and marked Exhibit 1 is the Settlement Agreement with the United States of America. The United States of America Settlement Agreement provides in part the following:

> The United States contends that it has certain civil claims against King as specified in paragraph 4, below, for engaging in the conduct alleged in Sections (i) through (v) of this paragraph during the period January 1, 1994, through December 31, 2002, unless otherwise specified below (the "Covered Conduct") [King was formed in 1994].

*          *          *

> In addition, the State Program States contend that the activities alleged in paragraph I(i) through (iii) rendered false King's State Program invoices for the programs listed in Attachment B for the pharmaceutical products listed in Attachment F, for the period January 1, 1994, through December 31, 2002. [The state programs on Attachment B include New York ADAP, New York DS, New York EAC, New York Epic, New York HHR, New York HR, New York NDP, New York unknown].

*          *          *

> Of the Settlement Amount in Paragraph 1, above, King, the Plaintiff States, the Participating States, and the State Program States (collectively, the "States") have agreed that the sum of $50,637,093, with accrued interest as provided in Paragraph 1, above, shall represent the state share of the Settlement Amount.

*          *          *

> The United States, on behalf of itself, its officers, agents, agencies and departments, agrees fully and finally to release King, its past and present parents, corporate affiliates, divisions, and

5

subsidiaries, and each of their predecessors, subsidiaries, successors and assigns … from any civil or administrative monetary claim that the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the Medicaid Rebate Statute, 42 U.S.C. § 1396r-8, the Drug Pricing Program, 42 U.S.C. § 256b, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, § 603 of the Veterans Health Care Act of 1992, 38 U.S.C. § 8126, any statutory provision applicable to the programs in this Agreement for which the Civil Division, United States Department of Justice, has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, § 0.45(d) (1995), **and common law claims, including claims for fraud, unjust enrichment, payment by mistake, or breach of contract, for the Covered Conduct**.

*       *       *

King has entered into the CIA [Corporate Integrity Agreement] with HHS-OIG, attached as Attachment H, which is incorporated by reference into this Agreement King will immediately upon the execution of the CIA begin to implement its obligations under the CIA.

*       *       *

King contends that beginning with its calculations and reports for products utilized in the first quarter of 2003 it has been calculating and reporting AMP for its pharmaceutical products using a methodology that has resulted in it overpaying its quarterly rebates to Medicaid and to the state rebate programs.  Nothing in this Agreement shall limit King's right to pursue recovery of any overpayments that may have resulted from its use of this methodology from the United States, the state Medicaid agencies or the state rebate programs … (emphasis supplied)

Attached hereto, incorporated herein by reference and marked Exhibit 2 is the State Settlement Agreement with the State of New York.  The State of New York also released King upon the payment of $6,177,723.29 plus interest paid to the State of New York.  The State of New York, "agrees fully and finally to release King, its past and present parents, affiliates, divisions, and direct and indirect subsidiaries, and each of their predecessors, successors and assigns (the "King corporate entities") and their past and present directors, officers, agents and

6

employees (together with the King corporate parties, and the King released parties, from any civil or administrative monetary claim that the State has or may have for the covered conduct. The payment of the Individual State Settlement Amount fully discharges King and the other King Released Persons from any obligation to pay Medicaid-related or Supplemental State Rebate Program related restitution, damages and/or any fine or penalty to the State for the Covered Conduct."

The New York State Settlement Agreement also provided that King has entered into a Corporate Integrity Agreement ("CIA") with HHS-OIG, in connection with this matter.  New York also acknowledged, "King contends that beginning with its calculations and reports for products utilized in the first quarter of 2003 has been calculating and reporting AMP for its pharmaceutical products using methodology that has resulted in its overpaying its quarterly rebates to Medicaid and to Supplemental State Rebate Programs.  Nothing in this Agreement shall limit King's right to recover these overpayments from the State, the State's Medicaid agency or the State's Supplemental State Rebate Programs …"

Consequently, all of the States and the United States have fully reviewed King's transactional data from the beginning of the company in 1994 through 2002, established methodologies for reporting of its various defined pricing after that time, the States and the Federal Government acknowledged that King overpaid its rebates pursuant to the Medicaid program from the first quarter 2003 through the first quarter 2005 and King has entered into a Corporate Integrity Agreement that has been in place for several years with the United States and acknowledged by all of the States.  According to the CIA, King is required to provide an enormous amount of information to the United States of America.  It is a virtual certainty that King would be unable to defraud anyone with the microscopic look at King's policies and

7

procedures and price reporting.  For example, King is required to hire an Independent Review Organization ("IRO") that is subject to discharge by HHS-OIG.  That IRO is required to investigate and report to HHS-OIG a plethora of information regarding King's transactions with its customers, its price reporting, calculation and payments of rebates, etc.  As a result, the United States of America and the States have a full body of knowledge of transactional data, price reporting, policies and procedures at King.  The States generally and New York specifically were fully aware of this data, information and reporting, as it is reflected in the Settlement Agreement with the State of New York attached as Exhibit 2.

As a result, the generic collective non-defendant specific allegations made in the current version of the Complaint in this case, is directly contrary to the facts as it relates to King.  King respectfully requests this Honorable Court to dismiss this Complaint as to it.

King denies each and every allegation contained in the Complaint and the exhibits thereto, except as specifically herein admitted, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole.  In addition, King specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint.  For ease of reference, King has included in this Answer and Affirmative Defenses the caption used in the Complaint, but specifically denies any allegations contained in, or inferences that could be drawn from, that caption, which appears to be in error.

These comments and objections are incorporated, to the extent appropriate, into each unnumbered and numbered paragraph of this Answer.

M SBB 1050628 v1
2789312-000073 10/26/2007

## SPECIFIC RESPONSES

To the extent that the unnumbered paragraph immediately following the Table of Contents (the "Complaint's Introductory Paragraph") makes allegations against King, King denies them, except admits that the City of New York and certain New York Counties (collectively, the "Counties") have made allegations against a number of defendants, including King, as set forth in the Complaint. The allegations are contrary to this Court's previous Orders. To the extent that the Complaint's Introductory Paragraph states legal conclusions, no response is required. To the extent the allegations of the Complaint's Introductory Paragraph are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to the truth of the allegations, denies the allegations on that basis and demand strict proof if its interests are to be affected.

1.      King admits that the Counties seek to bring this action as alleged in Paragraph 1 of the Complaint, but King denies there is any basis for them to do so and denies that they are entitled to any relief. King also admits that Exhibit B to the Complaint purport to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiffs with respect to any such NDCs. To the extent the remaining allegations in Paragraph 1 are directed at King, King denies them. King specifically denies that it has been involved in "fraudulent and misleading schemes" or that the New York State Medicaid Program has been "overcharge[d]" for prescription drugs  To the extent the remaining allegations in Paragraph 1 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

2.      King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 or the exhibit referenced therein. To the extent the allegations in

Paragraph 2 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

3.      King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 or its footnote, except admits that it paid Medicaid rebates, settlement rebates, supplemental rebates to the State of New York and that such rebates lowered the price New York Medicaid paid for King's prescription drugs.  To the extent the allegations in Paragraph 3 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

4.      Denied,  Specifically, to the extent the allegations in Paragraph 4 are directed at King, King denies them.  King denies that it was involved in "fraudulent schemes," the "manipulation of the Medicaid program" or the "intentional fraudulent inflation" of wholesale prices, or that the Counties' Medicaid Programs were "overcharge[d]."  To the extent the allegations in Paragraph 4 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

5.      To the extent the allegations in Paragraph 5 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  King otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.      To the extent the allegations in Paragraph 6 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. King otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 or its footnote.

M SBB 1050628 v1
2789312-000073 10/26/2007

7.      To the extent the allegations in Paragraph 7 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  King otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.      King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.      Denied.  Specifically, to the extent the allegations in Paragraph 9 are directed at King, King denies them.  King denies that it "control[s] and unlawfully inflates[s]" average wholesale prices ("AWPs") or federal upper limits ("FULs").  To the extent the allegations in Paragraph 9 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

10.     To the extent the allegations in Paragraph 10 are directed at King, King denies them, except King admits that it has provided and provides the wholesale list price of its drugs or WAC to certain industry pricing compendia and that publishers request or apply their own markups to the list prices and some publishers use 1.2 and 1.25 to report AWP.  To the extent the allegations in Paragraph 10 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

11.     To the extent the allegations in Paragraph 11 are directed at King, King denies them.  WAC is a list price or benchmark price before discounts.  King states "true WAC" allegedly meaning a discounted WAC is an incorrect term and King denies that term and the alleged implications of that term.   To the extent the allegations in Paragraph 11 are directed at

11

parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

12.     To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at King, King denies them.  King specifically denies that it has "report[ed] a false and inflated WAC or WAC equivalent" to industry pricing compendia.  To the extent the allegations in Paragraph 12 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  WAC is a list price or benchmark price before discounts.  WAC does not equal ASP or AMP, regulatorily defined terms, or the lowest transaction price that Plaintiff can find.

13.     To the extent the allegations in Paragraph 13 are directed at King, King denies them, except King admits that CMS has established FULs for certain drugs.  King specifically denies that it "control[s] the FUL."  To the extent the allegations in Paragraph 13 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. To the extent the allegations in Paragraph 13 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

14.     To the extent the allegations in Paragraph 14 are directed at King, King denies them.  To the extent the allegations in Paragraph 14 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

15.     To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at King, King denies them.  To the extent the allegations in Paragraph 15 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

M SBB 1050628 v1
2789312-000073 10/26/2007

16.     To the extent the allegations in Paragraphs 16-17 are directed at King, King denies them.  King specifically denies that it "submit[s] false and inflated price information to the publishing compendia."  King further denies the characterization of "spread" in Paragraphs 16-17.  To the extent the allegations in Paragraphs 16-17 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

17.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 18-19.

18.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.  To the extent the allegations in Paragraph 20 refer to a Wall Street Journal article, the article speaks for itself, and any characterizations thereof are denied.

19.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 or the exhibit referenced therein, except King does not manufacture Fluoxetine.

20.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

21.     To the extent the allegations in Paragraph 23 are directed at King, King denies them.  King specifically denies that it has "secretly polluted the entire reimbursement system with false and inflated prices."  To the extent the allegations in Paragraph 23 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

13

22.     To the extent the allegations in Paragraph 24 or the exhibit referenced therein are directed at King, King denies them.  King specifically denies that it has "cause[d] false and inflated published reimbursement prices to issue."  King further denies the characterization of "spread" in Paragraph 24.  To the extent the allegations in Paragraph 24 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

23.     To the extent the allegations in Paragraph 25 are directed at King, King denies them.  King specifically denies that it has "create[d], inflate[d], manipulate[d] and market[ed] the spread for both brand name and generic drugs."  To the extent the allegations in Paragraph 25 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

24.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.  Terms such as "true price" or "actual price" are incorrect terms and have vague, non-defined meanings.  These terms are not regulatorily defined.  King denies those terms and their alleged implications.  To the extent the allegations in Paragraph 26 refer to a HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.

25.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.  To the extent the allegations in Paragraph 27 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

26.     To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at King, King denies them.  King specifically denies that it has engaged in "intentional

14

AWP inflation" or "fraud."  King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties, State of New York, New York Medicaid and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraph 28 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

27.     To the extent the allegations in Paragraph 29 are directed at King, King denies them.  King specifically denies that it has "reported or caused to be reported [] false and inflated" WACs or engaged in any "unlawful and undisclosed manipulation of the price reporting system." To the extent the allegations in Paragraph 29 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

28.     To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at King, King denies them.  King specifically denies that it has engaged in any "pricing misconduct."  To the extent the allegations in Paragraph 30 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

29.     The next heading in the Complaint fraudulent underpayment of rebates.  King denies that allegation, references the Settlement Agreements attached hereto as direct proof to the contrary and state that the fraudulent underpayment rebate allegations found in Paragraphs 31 through 37 are false and reckless allegations against King.  King and the United States of America and all of the States including New York have agreed on a methodology for reporting

prices and calculating rebates and the governmental entities generally and New York specifically has entered into a Settlement Agreement to release King from any and all claims relating to those regulatory price reporting requirements and the calculation and payments of rebates. Furthermore, King has entered into a Corporate Integrity Agreement that assures the governmental entities that King's regulatory price reporting and calculation and payment of Medicaid rebates is constantly monitored and is verified and certified to be correct. The Counties have alleged fraud against King and King vehemently denies those allegations.

30.     To the extent the allegations in Paragraph 31 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. King denies that manufacturers pay the "lesser" of the Best Price Rebate versus the AMP Rebate calculation. King otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 or its footnote, except King admits that it pays Medicaid rebates and supplemental rebates as required by law and settlement rebates.

31.     To the extent the allegations in Paragraph 32 are directed at King, King denies them. To the extent the allegations in Paragraph 32 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

32.     To the extent the allegations in Paragraph 33 or its footnote are directed at King, King denies them. King specifically denies that it has "abused" any Medicaid statute. King does not manufacture Pepcid or Prevacid. To the extent the allegations in Paragraph 33 or its footnote are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraph 33 or its footnote refer to

16

statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

33.     To the extent the allegations in Paragraph 34 are directed at King, King denies them.  To the extent the allegations in Paragraph 34 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 34 refer to a HHS OIG report, the report speaks for itself, and any characterizations thereof are denied.

34.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

35.     To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at King, King denies them, except King admits the Settlement Agreements attached and King settled without an admission of liability.  To the extent the allegations in Paragraph 36 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

36.     King admits that the Counties seeks the relief listed in Paragraph 37, but King denies there is any basis for them to do so and denies that they are entitled to any relief.  To the extent the remaining allegations in Paragraph 37 are directed at King, King denies them.  King specifically denies that it has been involved in any "fraudulent and illegal manipulation of drug prices."  To the extent the remaining allegations in Paragraph 37 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

M SBB 1050628 v1
2789312-000073 10/26/2007

37.     King admits that the Counties seek to bring this action as alleged in Paragraph 38, but King denies there is any basis for them to do so and denies that they are entitled to any relief.

38.     Paragraphs 39-40 state legal conclusions as to which no response is required.  To the extent a response is deemed to be required, King denies the allegations in Paragraphs 39-40, except admits that each of the captioned matters has been transferred to this Court by the Judicial Panel on Multi District Litigation pursuant to 28 U.S.C. 1407.

39.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 41-42 and 42A.  To the extent the allegations in Paragraphs 41-42 and 42A refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

40.     King denies the allegations in Paragraph 43 and its footnote, and refers to Case Management Order No. 33, dated September 14, 2007, ¶¶ 1, 3 for which plaintiffs are suing which defendants.

41.     To the extent the allegations in Paragraph 44 are directed at King, King denies them, except King admits that it manufactures and sells prescription drugs.  King specifically denies that it "manufactures, markets and sells prescription drugs with false and inflated wholesale prices."  To the extent the allegations in Paragraph 44 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

42.     The allegations in Paragraphs 45-66 are directed to other defendants and require no response from King.  To the extent a response is deemed to be required, King denies

18

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 45-66.

43.     With respect to the allegations contained in Paragraph 67 with subparts, King admits that it is a Tennessee corporation in the business of manufacturing and selling pharmaceuticals.  King's principal place of business is located at 501 Fifth Street, Bristol, Tennessee  37620, Monarch Pharmaceuticals, Inc. is a wholly owned subsidiary of King Pharmaceuticals, Inc. and is in the same business and located at the same address as King Pharmaceuticals, Inc., and King Pharmaceuticals Research and Development, Inc. is a Delaware company with its principal place of business in North Carolina and is a wholly owned subsidiary and a successor to Jones Pharma Incorporated.

44.     The allegations in Paragraphs 68-84 are directed to other defendants and require no response from King.  To the extent a response is deemed to be required, King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 56-84.

45.     The allegations in Paragraphs 85-88 are directed to unknown defendants and require no response from King.  To the extent a response is deemed to be required, King denies that it was involved any conspiracy related to drug pricing with either named or unknown defendants.  King also denies that it has engaged in any "wrongful acts" related to drug pricing.

46.     With respect to the allegations in Paragraph 89, King admits that Medicaid was established by Title XIX of the Social Security Act.  King further states that the provisions of Title XIX speak for themselves, and any characterizations thereof are denied.

47.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, except King admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.  To the extent the allegations in Paragraph 90 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

48.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 91-99 or their footnotes.  To the extent the allegations in Paragraphs 91-99 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

49.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100, except admits that national drug codes are assigned to prescription drugs and that the FDA assigns such codes.

50.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 101-111 or their footnotes.  To the extent the allegations in Paragraphs 101-111 or their footnotes refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

51.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112,  except admits that pricing compendia such as Blue Book publish AWPs and FULs, and denies that King has any control over such publications or prices.

52.     To the extent the allegations in Paragraph 113 are directed at King, King denies them.  King specifically denies that it has "fraudulently conceal[ed]" the "true prices" of its

drugs by "claiming they are proprietary trade secrets." To the extent the allegations in Paragraph 113 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraph 113 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

53. To the extent the allegations in Paragraphs 114-115 are directed at King, King denies them. King specifically denies that it reports "reimbursement prices . . . to the publishing compendia" or that it has engaged in the "purposeful manipulation of reimbursement prices generally, and AWP in particular." King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties, State of New York and New York Medicaid and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 114-115 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 114-115 refer to HHS OIG reports, the reports speak for themselves, and any characterizations thereof are denied.

54. With respect to the allegations in Paragraphs 116-123 and their footnotes, King admits that the Medicaid statute includes a rebate provision, that it has entered into a rebate agreement with the Secretary of Health and Human Services, and that rebates help reduce state Medicaid drug expenditures. King further states that the rebate provision speaks for itself, and any characterizations thereof are denied. To the extent the allegations in Paragraphs 116-123 or their footnotes refer to additional statutes, regulations or congressional reports, those sources also speak for themselves, and any characterizations thereof are also denied.

21

55.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 124-125.  To the extent the allegations in Paragraphs 124-125 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  King denies that the Counties are intended third-party beneficiaries of Medicaid rebate agreements.

56.     With respect to the allegations in Paragraph 126, King admits that drug manufacturers report Best Prices and AMPs to HHS.  To the extent the allegations in Paragraph 126 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

57.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 127-130, except admits that it reports Medicaid information to HHS and pays rebates to States.  To the extent the allegations in Paragraphs 127-130 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

58.     To the extent the allegations in Paragraph 131 are directed at King, King denies them.  To the extent the allegations in Paragraph 131 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 131 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

59.     To the extent the allegations in Paragraph 132 are directed at King, King admits that it has executed a rebate agreement with HHS.  King further states that the rebate agreement speaks for itself, and any characterizations thereof are denied.  To the extent the allegations in

M SBB 1050628 v1
2789312-000073 10/26/2007

Paragraph 132 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 132 refer to the Model Rebate Agreement, that document also speaks for itself, and any characterizations thereof are also denied.

60.    King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 133-136.  To the extent the allegations in Paragraphs 133-136 refer to the Model Rebate Agreement, that document speaks for itself, and any characterizations thereof are denied.

61.    King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 137-143, except King denies that the Counties are Medicaid payors or intended third-party beneficiaries of Medicaid rebate agreements.  To the extent the allegations in Paragraphs 137-143 refer to statutes, regulations or amicus briefs filed by the United States, those sources speak for themselves, and any characterizations thereof are denied.

62.    To the extent the allegations in Paragraph 144 are directed at King, King denies them.  King specifically denies that it "intentionally reported, or caused to be reported, to industry publications wholesale pricing information that it knew to be false and inflated."  King further denies the characterization of "spread" in Paragraph 144.  To the extent the allegations in Paragraph 144 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

63.    With respect to the allegations in Paragraphs 145-149, King admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein.  To the extent the remaining allegations in Paragraphs 145-

23

149 or Exhibit B are directed at King, King denies them.  King specifically denies that it "routinely submitted fraudulent prices" to pricing compendia.  King further denies the characterization of "spread" in Paragraphs 145-149 and Exhibit B.  To the extent the remaining allegations in Paragraphs 145-149 or Exhibit B are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

64.     To the extent the allegations in Paragraphs 150-153 are directed at King, King denies them.  King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties, State of New York and New York Medicaid and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 150-153 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

65.     Paragraph 154 purports to contain a statement from HHS OIG, but King denies knowledge or information sufficient to form a belief as to its accuracy because the source thereof is not provided.  To the extent the source of the statement is provided, the source speaks for itself, and any characterizations thereof are denied.

66.     To the extent the allegations in Paragraphs 155-158 are directed at King, King denies them.  King further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia.  To the extent the allegations in Paragraphs 155-158 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

24

67.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 159-165, except King admits that PBMs are involved in administering and managing prescription drug benefit programs and that certain PBMs also operate mail order pharmacies.  To the extent the allegations in Paragraphs 159-165 refer to articles or reports, those sources speak for themselves, and any characterizations thereof are denied.

68.     To the extent the allegations in Paragraph 166 are directed at King, King denies them.  King specifically denies that it "control[s] the published reimbursement prices."  To the extent the allegations in Paragraph 166 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

69.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167.

70.     To the extent the allegations in Paragraphs 168-172 are directed at King, King denies them, except King that it has executed a rebate agreement with HHS.  United States of America and the State of New York have executed the Settlement Agreements attached.  In any event, the rebate agreement speaks for itself, and any characterizations thereof are denied regarding in part the statute alleged 42 U.S.C. § 1396r.  To the extent the allegations in Paragraphs 168-172 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 168-172 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

71.     To the extent the allegations in Paragraphs 173-176 are directed at King, King denies them, and further incorporates the previous paragraph.  To the extent the allegations in Paragraphs 173-176 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 173-176 refer to statutes, regulations or reports, those sources speak for themselves, and any characterizations thereof are denied.

72.     To the extent the allegations in Paragraph 177 are directed at King, King denies them, except admits that King has settled certain government investigations regarding calculation and payment of rebates and reporting of pharmaceutical pricing without an admission of liability.  See attached Settlement Agreements.  To the extent the allegations in Paragraph 177 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

73.     To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at King, King denies them.  To the extent the allegations in Paragraphs 178-194 or their footnotes are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 178-194 or their footnotes refer to reports, articles, letters, congressional hearing transcripts, or other documents, those sources speak for themselves, and any characterizations thereof are denied.

74.     To the extent the allegations in Paragraph 195 are directed at King, King denies them, except King admits that its contracts with purchasers sometimes included discounts.  To the extent the allegations in Paragraph 195 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

M SBB 1050628 v1
2789312-000073 10/26/2007

75.     To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at King, King denies them.  To the extent the allegations in Paragraph 196 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

76.     The allegations in Paragraphs 197-546 are directed to other defendants and require no response from King.  To the extent a response is deemed to be required, King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 197-546.

77.     With respect to the allegations in Paragraph 547, King does not posses sufficient knowledge and information to form a belief as to the truth of those allegations and on that basis deny the allegations in the first sentence of Paragraph 547.  Although King admits the allegations in second two sentences have been made by the Counties, King denies the allegations.

78.     With respect to the allegations contained in Paragraph 548, King denies the allegations.

79.     With respect to the allegations contained in Paragraph 549-551, King denies the allegations concerning the available market price, "intentionally false and misleading AWP," "false and misleading wholesale price" and the Exhibit referenced.

80.     With respect to the allegations contained in Paragraph 552-556, King denies the allegations as stated.  King has entered into a Co-Promotion agreement with Wyeth and has entered into other contracts.  The contracts speak for themselves and all characterizations are denied.

M SBB 1050628 v1
2789312-000073 10/26/2007

81.     With respect to the allegations contained in Paragraphs 557-561, Plaintiff has chosen or failed to continue to read the 10-K and 10-Q reports that the Counties reference in these paragraphs.  If they continued to read those reports they would realize that United States of America, all States and King have settled and resolved King's regulatory price reporting to the governmental entities and calculation and payment of the Medicaid rebates to the governmental entities and released King from all of those claims.  The Counties would also learn if they had continued to read the SEC Form 10-K and 10-Q's that King has entered into a Corporate Integrity Agreement with the United States of America and provides a plethora of pricing information to the governmental entities and that pricing information along with the calculation and payment of rebates is reviewed, investigated and certified to be correct.  Consequently, King incorporates herein by reference Exhibit 1 and Exhibit 2 as if fully stated herein.  The Settlement Agreement was, "made in compromise of disputed claims.  It is neither an admission of liability by King nor a concession by the United States that its claims are not well founded."  King was fully and finally released, "from any civil or administrative monetary claim that the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the Medicaid Rebate Statute, 42 U.S.C. § 1396r-8, the Drug Pricing Program, 42 U.S.C. § 256b, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, Section 603 of the Veterans Health Care Act of 1992, 38 U.S.C. § 8126, any statutory provision applicable to the programs in this Agreement for which the Civil Division, United States Department of Justice, has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, Section 0.45(d) (1995), **and common law claims, including claims for fraud, unjust enrichment, payment by mistake, or breach of contract, for the Covered Conduct.**" (emphasis supplied)  The State of New York also similarly released King.

28

King admits it paid over $130,000,000 which was split between the United States of America and the States regarding the claims involving the Medicaid Program and other government pricing programs and has been released from those claims. To the extent the allegations in the Complaint refer to documents, those documents speak for themselves and all characterizations made by the Counties are denied.

82.     The allegations in Paragraphs 562-769 are directed to other defendants and require no response from King. To the extent a response is deemed to be required, King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 386-769.

83.     To the extent the allegations in Paragraphs 770-772 are directed at King, King denies them, except King denies knowledge or information sufficient to form a belief as to the truth of the allegation that the Counties' Medicaid programs "spent over $20 billion for defendants' drugs from 1992 – 2005." King specifically denies that it was involved in any "false price reporting scheme" or "misconduct," or that it has been "unjustly enriched." To the extent the allegations in Paragraphs 770-772 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

84.     To the extent the allegations in Paragraphs 773-790 are directed at King, King denies them. King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the Counties, State of New York and New York Medicaid and/or their agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 773-790 are directed at parties other than King, King denies knowledge or information sufficient to

29

form a belief as to their truth.  To the extent the allegations in Paragraph 786 refer to *The Pink Sheet*, that document speaks for itself, and any characterizations thereof are denied.

## COUNT I

### VIOLATION OF FEDERAL MEDICAID STATUTE, 42 U.S.C. 1396r-8 (FAILURE TO COMPLY WITH FEDERAL MEDICAID REBATE PROVISION)

85.     In response to Paragraph 791, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 790.

86.     To the extent the allegations in Paragraphs 792-800 are directed at King, King states that the Court has dismissed them and the United States of America and the State of New York have released these claims pursuant to the Settlement Agreements attached.  To the extent that a response is still required, King denies the allegations as to itself.  To the extent the allegations in Paragraphs 792-800 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

## COUNT II

### VIOLATION OF N.Y. SOCIAL SERVICES LAW 367-a(7)(d) (FAILURE TO COMPLY WITH STATE MEDICAID REBATE PROVISION)

87.     In response to Paragraph 801, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 800.

88.     To the extent the allegations in Paragraphs 802-807 are directed at King, King states that the Court has dismissed them and the United States of America and the State of New York have released these claims pursuant to the Settlement Agreements attached.  To the extent that a response is still required, King denies the allegations as to itself.  To the extent the

30

allegations in Paragraphs 802-807 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

## COUNT III

### VIOLATION OF NEW YORK SOCIAL SERVICES LAW 145-b (OBTAINING PUBLIC FUNDS BY FALSE STATEMENTS)

89.     In response to Paragraph 808, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 807.

90.     To the extent the allegations in Paragraphs 809-813 are directed at King, King denies them and states the United States of America and the State of New York have released these claims pursuant to the Settlement Agreements attached.  To the extent the allegations in Paragraphs 809-813 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 809-813 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 809-813 contain legal conclusions, no response is required.

## COUNT IV

### VIOLATION OF NEW DEPARTMENT OF HEALTH REGULATIONS 18 N.Y.C.R.R. 512.2(b)4) and (5)

91.     In response to Paragraph 814, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 813.

92.     To the extent the allegations in Paragraphs 815-817 are directed at King, King states that the Court has dismissed them and the United States of America and the State of New York have released these claims pursuant to the Settlement Agreements attached.  To the extent

M SBB 1050628 v1
2789312-000073 10/26/2007

that a response is still required, King denies the allegations as to itself.  To the extent the

allegations in Paragraphs 814-817 are directed at parties other than King, King denies knowledge

or information sufficient to form a belief as to their truth.

## COUNT V

## BREACH OF CONTRACT

93.     In response to Paragraph 818, King repeats and incorporates as if fully set forth

herein each and every response to the allegations in Paragraphs 1 through 817.

94.     To the extent the allegations in Paragraphs 819-830 are directed at King, King

states that the Court has dismissed them and the United States of America and the State of New

York have released these claims pursuant to the Settlement Agreements attached.  To the extent

that a response is still required, King denies the allegations as to itself.  To the extent the

allegations in Paragraphs 819-830 are directed at parties other than King, King denies knowledge

or information sufficient to form a belief as to their truth.

## COUNT VI

## UNFAIR TRADE PRACTICES (Violations of N.Y. Gen. Bus. Law 349 *et seq.*)

95.     In response to Paragraph 831, King repeats and incorporates as if fully set forth

herein each and every response to the allegations in Paragraphs 1 through 830.

96.     To the extent the allegations in Paragraphs 832-835 and the exhibits referenced

therein are directed at King, King denies them and states the United States of America and the

State of New York have released these claims pursuant to the Settlement Agreements attached.

To the extent the allegations in Paragraphs 832-835 are directed at parties other than King, King

denies knowledge or information sufficient to form a belief as to their truth.  To the extent the

M SBB 1050628 v1
2789312-000073 10/26/2007

allegations in Paragraphs 832-835 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

97.     To the extent the allegations in Paragraphs 836-837 are directed at King, King denies them.  To the extent the allegations in Paragraphs 836-837 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 836-837 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

98.     To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto are directed at King, King denies them.  To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 838-839 and the sub-parts thereto contain legal conclusions, no response is required.

## COUNT VII
## FRAUD

99.     In response to Paragraph 840, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 839.

100.     To the extent the allegations in Paragraphs 841-845 and the exhibits referenced therein are directed at King, King denies them and states the United States of America and the State of New York have released the claims pursuant to the Settlement Agreements attached.  To

the extent the allegations in Paragraphs 841-845 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 844 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

## COUNT VIII

## UNJUST ENRICHMENT

101.    In response to Paragraph 846, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 845.

102.    To the extent the allegations in Paragraphs 847-849 are directed at King, King denies them and states the United States of America and the State of New York have released the claims pursuant to the Settlement Agreements attached.  To the extent the allegations in Paragraphs 847-849 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 847-849 contain legal conclusions, no response is required.

103.    King denies that the Counties are entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and Paragraphs 850-858 of the Complaint.

104.    **WHEREFORE**, King demands judgment dismissing the Complaint with prejudice, and awarding reasonable expenses and costs incurred herein, and for such further relief as the Court deems just and proper.

34

## KING'S AFFIRMATIVE DEFENSES

King reasserts and incorporates herein by reference all of the assertions and defenses contained herein.  By alleging the matters set forth below, King does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters or that Plaintiffs are relieved of their burdens to prove each and every element of the alleged claims and damages, if any, to which they may be entitled.  For its affirmative defenses, King alleges as follows:

### First Affirmative Defense

Plaintiffs fail to state a claim against King upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because they did not rely on any alleged misrepresentations or fraud by King.  Plaintiffs knew that providers could obtain King drugs at prices below AWP and WAC prior to the relevant time period stated in the Complaint.

### Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the Federal Rebate Agreement.  That Agreement establishes prices that are to be reported and pursuant to the statute establishing the Medicaid Rebate Program, 42 U.S.C. § 1396r-8 and the regulations promulgated thereunder certain terms are regulatorily or statutorily defined such as "Best Price", "AMP" and more recently "ASP" pursuant to the Medicare Prescription Drug, Improvement and Modernization Act of 2003.  King has reported those prices correctly as required by the Federal Rebate Agreement and the statutes and regulations cited above.  Plaintiffs have alleged that other prices should have been reported differently but those prices, WAC and AWP, are not statutorily or regulatorily defined.  Plaintiffs are trying to assert definitions that do not exist in the relevant

statutes and regulations.  Thus, Plaintiffs' claims are barred because King complied with the statutory and regulatory requirements, the Federal Rebate Agreement and that compliance has been confirmed in the Settlement Agreements attached hereto and incorporated herein by reference.

## Fourth Affirmative Defense

During the negotiation of the Settlement Agreements attached hereto, incorporated herein by reference, King utilized a methodology that would overpay the rebates to CMS and the States. King, in fact, overpaid rebates to CMS and the States from the first quarter 2003 through first quarter 2005.  King is entitled to a set off, accord and satisfaction, payment and asserts all of the defenses in Rule 8(c) and 12(b).

## Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the political question, separation of powers, primary jurisdiction, and the abstention doctrines.

## Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the filed rate doctrine.

## Seventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the State action doctrine.

## Eighth Affirmative Defense

Plaintiffs have not suffered, and will not suffer, any injury to a legally protected or cognizable interest by reason of the conduct of King as alleged in the Complaint.

## Ninth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the First Amendment to the United States Constitution and the analogous provisions of the Constitutions of the State of Tennessee and New York.

## Tenth Affirmative Defense

Plaintiffs' claims are preempted by the dormant Commerce Clause of the United States Constitution.

## Eleventh Affirmative Defense

Plaintiffs' claims against King are barred because King has complied with all applicable regulations of the Federal and State governments.

## Twelfth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because they violate King's rights under the Due Process and *Ex Post Facto* clauses of the United States Constitution, as well as the Constitution of the States of Tennessee and New York, insofar as plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

## Thirteenth Affirmative Defense

Plaintiffs' claims against King for injunctive relief were mooted, in whole or in part, by the passage of the Medicare Prescription Drug, Improvement and Modernization Act of 2003.

## Fourteenth Affirmative Defense

Plaintiffs' claims for injunctive relief against King are barred by the doctrines of *in pari delicto* and/or unclean heands.

37

### Fifteenth Affirmative Defense

Plaintiffs' claims against King are barred, in whole or in part, due to their failure to join indispensable parties, including, without limitation, the persons and entities who have received the City, County and State of New York's reimbursements for King's products.  King received no payments from Plaintiffs, State of New York or New York Medicaid.

### Sixteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because any injuries sustained by plaintiffs were the result of their own conduct, the conduct of the State of New York, New York Medicaid or the intervening or superceding conduct of third parties.

### Seventeenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

### Eighteenth Affirmative Defense

King is entitled to a credit, recoupment, or set-off, should any damages be awarded against it, for the entire amount of all damages or settlement amounts recovered by Plaintiffs with respect to the same injuries.

### Nineteenth Affirmative Defense

Plaintiffs failed to allege facts or a cause of action against King sufficient to support a claim for compensatory damages, attorneys' fees and/or legal fees, or any other relief.

### Twentieth Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' punitive damages claims against King:  (1) have no basis in law or in fact; (2) are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against King; (3)

38

cannot be sustained because the laws regarding the standards for determining liability for and the amount of punitive damages fail to give King prior notice of the conduct for which the punitive damages may be imposed and the severity of the penalty that may be imposed, and are void for vagueness in violation of King's Due Process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the Constitutions of the State of Tennessee and the State of New York; (4) cannot be sustained because any award of punitive damages exceeding the limits authorized by the laws or other comparable laws would violate King's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law and laws of the State of Tennessee and State of New York; (5) cannot be sustained because an award of punitive damages in this case, combined with any prior, contemporaneous, or subsequent judgments against King for punitive damages arising from the design, development, manufacture, fabrication, distribution, supply, marketing, sale, or use of King's products would constitute impermissible multiple punishments for the same wrong, in violation of King's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would constitute double jeopardy in violation of the Constitution, common law, and statutory laws of the State of Tennessee and the State of New York; (6) cannot be sustained because any award of punitive damages without the appointment of the award separately and severally between or among the alleged joint tortfeasors, as determined by the alleged percentage of the wrong committed by each alleged tortfeasor, would violate King's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law, and public policies of the State of Tennessee and the State of New York; and (7) cannot be sustained

39

because any award of punitive damages, which are penal in nature, without according King the same protections that are accorded to all criminal defendants, including the protection against unreasonable searches and seizures, the privilege against self-incrimination, and the right to confront adverse witnesses, a speedy trial, and the effective assistance of counsel, would violate King's rights guaranteed by the Fourth, Fifth, and Sixth Amendment as incorporated into the Fourteenth Amendment to the United States Constitution and would be improper under the Constitution, common law, and public policies of the State of Tennessee and State of New York.

### Twenty-First Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' claims for punitive damages against King cannot be sustained because an award of punitive damages by a jury that: (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award; (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and corporate status of King; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; (5) is not properly instructed regarding plaintiff's burden of proof with respect to each and every element of a claim for punitive damages; and (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards, which would violate King's Due Process and Equal Protection rights

M SBB 1050628 v1
2789312-000073 10/26/2007

guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the Constitution, common law, and public policies of the State of Tennessee and State of New York.

### Twenty-Second Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' claims for punitive damages against King cannot be sustained because an award of punitive damages that is subject to no predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount of punitive damages that may be imposed, would:  (1) violate King's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution; (2) violate King's right not to be subjected to an excessive award; and (3) be improper under the Constitution, common law, and public policies of the State of Tennessee and State of New York.

### Twenty-Third Affirmative Defense

King has affirmatively stated on any published price lists that the AWP reported was not intended to be a price charged by King for any product to any customer.  King thus disclosed that AWPs for King drugs did not, and were not intended to, represent the actual price paid by customers of such products.  Accordingly, plaintiffs are estopped from claiming to have been defrauded by virtue of any action by King.

### Twenty-Fourth Affirmative Defense

Some or all of Plaintiffs' claims against King arise from Plaintiffs' failure to follow its Federal and State statutory and regulatory obligation to set reimbursement rates.

M SBB 1050628 v1
2789312-000073 10/26/2007

### Twenty-Fifth Affirmative Defense

Plaintiffs' unjust enrichment claims are barred, in whole or in part, because King did not receive or retain any money belonging to the State as a result of any alleged overpayments as required under New York law.

### Twenty-Sixth Affirmative Defense

Plaintiffs' claims against King are misjoined with Plaintiffs' claims against other defendants and must be severed.

### Twenty-Seventh Affirmative Defense

King adopts and incorporates all of the defenses and arguments set forth in the Motions to Dismiss, and in Defendants' supporting memoranda of law.

### Twenty-Eighth Affirmative Defense

All allegations of the Complaint, to the extent not expressly admitted herein, are denied, and King demands strict proof thereof.

### Twenty-Ninth Affirmative Defense

No statement, act or omission by King represents a causal link, proximate cause, cause in fact or but for cause with respect to the City, Counties, or State of New York's alleged damages or injury.

### Thirtieth Affirmative Defense

Plaintiffs have failed to allege any specific wrongful act, omission, statement, or other conduct on the part of King and, accordingly, all claims asserted against King must fail as a matter of law.

M SBB 1050628 v1
2789312-000073 10/26/2007

### Thirty-First Affirmative Defense

King's overpayment of Medicaid rebates to the State of New York reduces or eliminates the amount of damages alleged by the City, County and State of New York.  In some instances, the rebates paid by King actually exceeded the total reimbursements paid by the State of New York and Plaintiffs for certain quarters with respect to certain King drugs.  All rebates paid by King to the State of New York should be taken into account in determining the amount of damages, if any, to which Plaintiffs are entitled.

### Thirty-Second Affirmative Defense

To the extent Plaintiffs or the State of New York obtain recovery in any other case predicated on the same factual allegations, Plaintiffs are barred from seeking recovery against King based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

### Thirty-Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by King in judicial, legislative, or administrative proceedings of any kind or at any level of government.

### Thirty-Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs, the United States of America and the State of New York have released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiffs' claims against King, see attached Settlement Agreements.

43

### Thirty-Fifth Affirmative Defense

Plaintiffs' state law claims are preempted, in whole or in part, by Federal law, including without limitation the Federal Employment Retirement Income and Security Act of 1974, the Federal Medicare Act, the Federal Medicaid Act, all other Federal law cited herein, Federal Rebate Agreements, including all amendments to the same and all regulations promulgated thereunder.

### Thirty-Sixth Affirmative Defense

Plaintiffs' claims against King are barred, in whole or in part, by the applicable statutes of limitations and repose, and by the doctrines of laches, estoppel, and waiver.

### Thirty-Seventh Affirmative Defense

Plaintiffs fail to state with particularity, facts to support claims of fraudulent conduct, fraudulent concealment and the multi-source allegations against King contained in the Complaint and fail to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

### Thirty-Eighth Affirmative Defense

Any and all actions taken by King with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice.

### Thirty-Ninth Affirmative Defense

King denies that Plaintiffs have valid consumer protection claims against King under New York's Unfair Trade Practices Act.  However, if such claims are found to exist, King pleads all available defenses under the Act.

### Fortieth Affirmative Defense

To the extent that Plaintiffs attempt to seek equitable relief against King, Plaintiffs are not entitled to such relief because Plaintiffs have an adequate remedy at law.

M SBB 1050628 v1
2789312-000073 10/26/2007

### Forty-First Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of consent and/or ratification to the extent that Plaintiffs have received and paid for medicines manufactured, marketed and sold by King after the filing of the complaint of Suffolk County.

### Forty-Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the damages alleged are speculative and remote and because of the impossibility of ascertaining and allocating those alleged damages.

### Forty-Third Affirmative Defense

Plaintiffs' claims are barred because they lack standing or capacity to bring their alleged claims or seek injunctive relief.

### Forty-Fourth Affirmative Defense

Plaintiffs' claims against King are barred, in whole or in part, because Plaintiffs have not suffered damages as a result of the matters alleged in the Complaint.

### Forty-Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate damages, and that failure to mitigate damages should proportionately reduce Plaintiffs' recovery and the allocation of any fault, if any exists, attributable to King.

### Forty-Sixth Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' punitive damages claims against King are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against King.

M SBB 1050628 v1
2789312-000073 10/26/2007

## Forty-Seventh Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' damages claims against King cannot be sustained because an award of punitive damages would violate the United States Constitution, Excessive Fines Clause of the Eighth Amendment, U.S. Const. amend. VIII and the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 and the analogous provisions contained in the Constitutions of the State of Tennessee and State of New York and any other States whose laws are or become relevant in the course of this lawsuit.

## Forty-Eighth Affirmative Defense

King adopts by reference any additional applicable defense pled by any other defendant not otherwise pled herein.

## Forty-Ninth Affirmative Defense

King hereby gives notice that it intends to rely upon any other and additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserve its right to amend its answer to assert such defense.

## Fiftieth Affirmative Defense

Plaintiffs' claims are barred by the failure to exhaust applicable administrative remedies.

## Fifty-First Affirmative Defense

Plaintiffs' claims are barred because they require resolution of a nonjusticiable controversy.

## Fifty-Second Affirmative Defense

Plaintiffs' claims are barred in whole or in part because the amounts claimed as damages were voluntary payments to the Counties.

46

## Fifty-Third Affirmative Defense

The Counties and/or its agents knew and were aware that AWP was not an average wholesale price or the actual acquisition cost of drugs.  Legal and equitable principles preclude this action for damages and injunctive relief and the Due Process Clauses of the United States Constitution and the New York Constitution preclude the Counties from bringing claims and seeking damages as alleged in the Complaint.

## Fifty-Fourth Affirmative Defense

Some or all of the Counties' claims arise from the State of New York and the Counties failure to follow its federal and statutory and regulatory obligations to properly establish appropriate reimbursement rates.

## Fifty-Fifth Affirmative Defense

The Counties' reimbursement rates for drugs for Medicaid recipients were filed with, reviewed by, and approved by a federal regulatory agency with authority to do so under the Medicaid Act.  Actions in court seeking relief, including alleged damages, contending that rates approved by a federal regulatory agency do not apply or are not binding are, as the United States Supreme Court directed, precluded by the Supremacy Clause,  This action is barred by the Supremacy Clause of the United States Constitution.

## Fifty-Sixth Affirmative Defense

To the extent that the Counties obtain, or are barred from, recovery in any other case predicated on the same federal allegations, the Counties are barred from seeking recovery based on the Complaint pursuant to the doctrines of claim preclusion and issue preclusion.

M SBB 1050628 v1
2789312-000073 10/26/2007

## Fifty-Seventh Affirmative Defense

The Counties did not rely on the allegedly fraudulent statements or representation of King.

## Fifty-Eighth Affirmative Defense

Any alleged misconduct by King was not a substantial factor in the Counties' purchase or reimbursement of any prescription medications.

## Fifty-Ninth Affirmative Defense

The Counties' claims against King are barred in whole or in part by the Counties' quarterly receipt of data, known as Unit Rebate Amounts ("URAs"), which were derived from pricing data provided by King to the Centers for Medicare and Medicaid Services ("CMS").

## Sixtieth Affirmative Defense

The Counties' claims against King are barred in whole or in part by the municipal cost recovery rule, which prevents recovery of the cost of public services by claiming that the negligence of a particular defendant caused a governmental unit to provide such services.

## Sixty-First Affirmative Defense

The Counties' claims are barred in whole or in part with respect to any alleged overcharge or supracompetitive price because such supracompetitive price, if any, was absorbed in whole or in part by a person and/or entity that purchased the medicine directly, and/or by an intermediate indirect purchaser, and was not passed through the Counties.

Dated: Memphis, Tennessee
            October 26, 2007

M SBB 1050628 v1
2789312-000073 10/26/2007

GREENBERG TRAURIG, LLP

By: /s/ Louis J. Scerra, Jr.
    Louis J. Scerra, Jr. (#543600)
    James M. Vant (#653616)
    One International Place, 20th Floor
    Boston, Massachusetts  02110
    (617) 310-6094

    Sam Berry Blair (TN 10375)
    BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
    165 Madison Avenue, Suite 2000
    Memphis, Tennessee  38103
    (901) 577-2257

    *Attorneys for King Pharmaceuticals, Inc.,*
    *King Pharmaceuticals Research and*
    *Development, Inc. and Monarch*
    *Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I, Sam Berry Blair, an attorney, do hereby certify that I caused a true and correct copy of the foregoing Answer and Affirmative Defenses to be served upon all counsel of record via Lexis Nexis File & Serve, this 26th day of October, 2007.

/s/ Sam Berry Blair

49