10. The amounts that King must pay pursuant to this Agreement shall not be decreased as a result of the denial of claims for payment now being withheld from payment by the State's Medicaid program, or any other State payor where such denial resulted from the Covered Conduct. If applicable, King agrees not to resubmit to any Medicaid program, state payor, or any other government payor, any previously denied claims, which denials were based on the Covered Conduct, and agrees not to appeal any such denials of claims.

11. King agrees that it shall not seek payment for any of the monies owed under this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors. King waives any causes of action against these beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims for payment covered by this Agreement. Nothing in this Paragraph 11 shall affect King's rights to recover amounts due under agreements with non-governmental third parties, including sellers and manufacturers of pharmaceutical products to whom King previously has paid royalties, co-promotion fees or other amounts determined directly or indirectly by reference to the net sales of King's products.

12. This Agreement is intended to be for the benefit of the Parties only, and by this instrument the Parties do not release any claims against any other person or entity other than King and the other King Released Parties.

13. Nothing in this Agreement constitutes an agreement by the State concerning the characterization of the amounts paid hereunder for purposes of the State's revenue code.

14. Nothing in this Agreement shall limit King's right and/or obligation under the Medicaid Rebate Program to refile AMPs and best prices for the products identified in Attachment C.

15. Except as set forth in Paragraph 16, below, each party to this Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

16. In addition to all other payments and responsibilities under this Agreement, King has agreed that it will pay: (i) all reasonable travel costs and expenses of the NAMFCU negotiating team; and (ii) $1,000,000 for the Participating States' settlement costs (the "Expense Fund"). King has agreed to pay these amounts by separate check or wire transfer made payable to the NAMFCU after all Participating States execute a State Settlement Agreement. The State's share, if any, of the Expense Fund shall be a proportional amount of the original $1,000,000 plus any accrued interest, determined pro rata based on the costs and other direct expenses associated with this settlement that the State is legally obligated to pay, as compared to such costs for all other settling states. In the event that the aggregate amounts of all such costs do not exceed the amount in the Expense Fund, the balance shall be paid to the states in proportion to their State Settlement Amounts.

17. This agreement does not constitute an admission by any person or entity, and shall not be considered as an admission by any person or entity, with respect to any issues of law or fact.

18. King has entered into a Corporate Integrity Agreement ("CIA") with HHS-OIG, in connection with this matter. A breach of King's obligations under the CIA shall not constitute a breach of this Agreement. King acknowledges that the CIA does not preclude the State from taking any appropriate action against King for future conduct under the State's laws.

19. The undersigned King signatories represent and warrant that they are authorized by their respective Boards of Directors to execute this Agreement. The undersigned State

signatories represent that they are signing this Agreement in their official capacities and they are authorized to execute this Agreement through their respective agencies and departments. King represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

20. If the Federal Settlement Agreement shall have been terminated in accordance with its terms, King shall have the option to terminate this Agreement, in which case this Agreement shall be null and void for all purposes, as if it never had existed.

21. King contends that beginning with its calculations and reports for products utilized in the first quarter of 2003 it has been calculating and reporting AMP for its pharmaceutical products using a methodology that has resulted in it overpaying its quarterly rebates to Medicaid and to Supplemental State Rebate Programs. Nothing in this Agreement shall limit King's right to recover these overpayments from the State, the State's Medicaid agency or the State's Supplemental State Rebate Programs, and nothing in this Agreement shall limit the right of State, the State's Medicaid agency or the State's Supplemental State Rebate Programs to contest any such recovery.

22. This Agreement is governed by the laws of the State.

23. This Agreement shall be binding on all successors, transferees, heirs, and assigns of the Parties.

24. This Agreement constitutes the complete agreement between the Parties with regard to the Covered Conduct. This Agreement may not be amended except by written consent of the Parties.

25. Each party agrees to perform any further acts and to execute and deliver any further documents reasonably necessary to carry out this Agreement. This Agreement may be

executed in counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same Agreement. Facsimiles of signatures shall constitute acceptable binding signatures for purposes of this Agreement.

[The remainder of this page is intentionally left blank.]

For the State of New York

By: _William J. Comiskey_     Dated: _October 25, 2005_
William J. Comiskey
Deputy Attorney General
Medicaid Fraud Control Unit

KING PHARMACEUTICALS, INC.
MONARCH PHARMACEUTICALS, INC.

By: _____     Dated: _____
   EXECUTIVE SIGNATORY
   King Pharmaceuticals, Inc.

By: _____     Dated: _____
   EXECUTIVE SIGNATORY
   Monarch Pharmaceuticals, Inc.

By: _____     Dated: _____
   MARC ROSENBERG, ESQ.
   Cravath, Swaine & Moore LLP

Attachment A

King Pharmaceuticals of Nevada, Inc.
King Pharmaceuticals Research and Development, Inc.
Gentrac, Inc.
JMI-Daniels, Inc.
Meridian Medical Technologies, Inc.
Brunswick Biomedical Investment Corporation
STI International Limited
Meridian Medical Technologies Limited
Monarch Pharmaceuticals, Inc.
Monarch Pharmaceuticals of Ireland Limited
Parkedale Pharmaceuticals, Inc.
Jones Pharma Incorporated
Daniels Pharmaceuticals, Inc.

Attachment B

- ACETAMINOPHEN
- ADRENALIN
- ALTACE
- AMANTADINE
- ANEXSIA
- ANUSOL
- APLISOL
- AVC
- BARIUM
- BICILLIN
- BREVITAL
- BROMPHEN
- BROMPHENIRAMINE
- CHLORAMPHENICOL
- CHLOROMYCETIN
- CODEINE
- COLY-MYCIN
- CORGARD
- CORTISPORIN
- CORZIDE
- CYTOMEL
- DELESTROGEN
- DRIZE-R
- ENDAGEN
- FLORINEF
- FLUOGEN
- FLUPHENAZINE
- GUAIFENESIN
- HCBT/APAP
- HISTOPLASMIN
- HUMATIN
- HYDROCODONE
- HYDROCORTISONE
- KEMADRIN
- KETALAR
- KETAMINE
- KGDAL
- KGFED
- KGHIST
- LEVOXYL
- LORABID
- MANTADIL
- MENEST
- MONAFED
- MORPHINE

Attachment B

NASABID
NEOPOLYMYXIN
NEOSPORIN
NORDETTE
NUCOFED
ORTHO-PREFEST
OTOCAIN
OXYCODONE
PAPAVERINE
PEDIOTIC
PENICILLIN
PHENIRAMINE
PHENOBARBITAL
PHENTERMINE
PITOCIN
PITRESSIN
POLYSORIN
POLYSPORIN
PROCANBID
PROCTOCORT
PROLOPRIM
QUIBRON
SEPTRA
SILVADENE
TAPAZOLE
THALITONE
THEREVAC
THIOMALATE
THROMBIN
THYROID
TIGAN
TUSSEND
TUSSIGON
TUSSIN
VANEX
VIRA-A
VIROPTIC
WYCILLIN

Attachment C

California ADAP
California COHS
California FPACT
California Unknown
Connecticut ADAP
Connecticut PACE
Connecticut SAGA
Connecticut Unknown
Delaware PA
Delaware SRP
Delaware Unknown
Florida Senior Rx
Indiana AIM
Indiana Unknown
Maine ADAP
Maine ERP
Maine LCDE
Maine Unknown
Maryland KDP
Maryland PAP
Maryland Unknown
Massachusetts ACH
Massachusetts DEL
Massachusetts SPP
Massachusetts Unknown
Minnesota ADAP
Minnesota PDP
Minnesota SD
Minnesota Unknown
Missouri ADAP
Missouri Senior Rx
Montana Unknown
New Jersey ADAP
New Jersey ADRP
New Jersey PAAD
New Jersey SG
New Jersey Unknown
New York ADAP
New York DS
New York EAC
New York EPIC
New York HHR
New York HR
New York MDP
New York Unknown

Attachment C

North Carolina Unknown
Oregon ADAP
Pennsylvania ESRD
Pennsylvania GA
Pennsylvania PACE
Pennsylvania PB
Pennsylvania Unknown
Rhode Island PAE
Rhode Island Unknown
Texas CHIP
Texas CIDC
Texas CSHCN
Texas KH
Utah ADAP
Vermont Script
Wisconsin CD
Wisconsin SC 200
Wisconsin Unknown
Wyoming ADAP
Wyoming MMP

Attachment D

ACETAMINOPHEN
ADRENALIN
ALTACE
AMANTADINE
ANEXSIA
ANUSOL
APLISOL
AVC
BARIUM
BICILLIN
BREVITAL
BROMPHEN
BROMPHENIRAMINE
CHLORAMPHENICOL
CHLOROMYCETIN
CODEINE
COLY-MYCIN
CORGARD
CORTISPORIN
CORZIDE
CYTOMEL
DELESTROGEN
DRIZE-R
ENDAGEN
FLORINEF
FLUOGEN
FLUPHENAZINE
GUAIFENESIN
HCBT/APAP
HISTOPLASMIN
HUMATIN
HYDROCODONE
HYDROCORTISONE
KEMADRIN
KETALAR
KETAMINE
KGDAL
KGFED
KGHIST
LEVOXYL
LORABID
MANTADIL
MENEST
MONAFED
MORPHINE

Attachment D

NASABID
NEOPOLYMYXIN
NEOSPORIN
NORDETTE
NUCOFED
ORTHO-PREFEST
OTOCAIN
OXYCODONE
PAPAVERINE
PEDIOTIC
PENICILLIN
PHENIRAMINE
PHENOBARBITAL
PHENTERMINE
PITOCIN
PITRESSIN
POLYSORIN
POLYSPORIN
PROCANBID
PROCTOCORT
PROLOPRIM
QUIBRON
SEPTRA
SILVADENE
TAPAZOLE
THALITONE
THEREVAC
THIOMALATE
THROMBIN
THYROID
TIGAN
TUSSEND
TUSSIGON
TUSSIN
VANEX
VIRA-A
VIROPTIC
WYCILLIN

Attachment D