## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Magistrate Judge Marianne B. Bowler |
| *Inc., Zachary T. Bentley, and T. Mark Jones* | ) | |
| *v. Abbott Laboratories, Inc.*, | ) | |
| No. 07-CV-11618-PBS | | |

### ABBOTT LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS OR PARTIALLY DISMISS THE RELATORS' COMPLAINT

Dated:  October 30, 2007

James R. Daly
Tina M. Tabacchi
Jason G. Winchester
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

    A.    Ven-A-Care Files And Amends (Over The Course Of A Decade) Two Different Under Seal False Claims Act Complaints, In Two Different Jurisdictions, Alleging The Same Fraudulent Drug Pricing Scheme ................... 2

    B.    The United States Intervenes In And Prosecutes The Florida Case ..................... 3

    C.    In August 2007, A Year And A Half Into Active Litigation Of The Florida Case And Approximately 12 Years After The First Qui Tam Was Filed, Abbott Is Served With The Complaint In The Massachusetts Case ..................... 4

ARGUMENT ........................................................................................................................... 5

I.    THE FIRST-TO-FILE BAR OF 31 U.S.C. § 3730(b)(5) REQUIRES DISMISSAL OF VEN-A-CARE'S MASSACHUSETTS CASE. ................................... 5

II.    THE STATUTE OF LIMITATIONS BARS MANY OF RELATORS' CLAIMS ........ 10

    A.    The Bulk of the Claims in the Massachusetts Case Are Untimely ..................... 10

    B.    Relation-Back to the Sealed Complaints Is Impermissible ................................. 10

        1.    The False Claims Act Does Not Permit A Relator's Unsealed Complaint To Relate Back To Sealed Complaints. ................................. 11

        2.    Rule 15(c)(2) Relation-Back is Improper Because Sealed Complaints Offer No Notice to Defendants ............................................. 13

    C.    The Statute Of Limitations Continued To Run For Each Particular NDC Until Asserted In A Complaint ............................................................................ 14

    D.    Summary Of The Recommended Disposition Of Ven-A-Care's Claims Based On Limitations Grounds .......................................................................... 17

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

Page

## CASES

*In re Bausch & Lomb, Inc. Sec. Litig.*,
   941 F. Supp. 1352 (W.D.N.Y. 1996) ............................................................................16

*Cholopy v. City of Providence*,
   228 F.R.D. 412 (D.R.I. 2005) ......................................................................................14

*Grynberg v. Koch Gateway Pipeline Co.*,
   390 F.3d 1276 (10th Cir. 2004) ............................................................................ *passim*

*Ill. Tool Works, Inc. v. Foster Grant Co.*,
   395 F. Supp. 234 (N.D. Ill. 1974) ...............................................................................16

*Jones v. Bock*,
   127 S. Ct. 910 (2007)....................................................................................................10

*Leonard v. Parry*,
   219 F.3d 25 (1st Cir. 2000)...........................................................................................14

*Oja v. U.S. Army Corps of Eng'rs*,
   440 F.3d 1122 (9th Cir. 2006) ......................................................................................16

*O'Loughlin v. Nat'l R.R. Passenger Corp.*,
   928 F.2d 24 (1st Cir. 1991)......................................................................................14, 16

*Marsh v. Coleman Co.*,
   774 F. Supp. 608 (D. Kan. 1991) .................................................................................13

*Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*,
   276 F.3d 1032 (8th Cir. 2002) ........................................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   498 F. Supp. 2d 389 (D. Mass. 2007) .......................................................................9, 11

*Schiavone v. Fortune*,
   477 U.S. 21 (1986)........................................................................................................13

*United States v. Baylor Univ. Med. Ctr.*,
   469 F.3d 263 (2d Cir. 2006)....................................................................................13, 14

*United States ex rel. Colunga v. Hercules Inc.*,
   No. 89-CV-954, 1998 WL 310481 (D. Utah Mar. 6, 1998) ........................................15

# TABLE OF AUTHORITIES
## (continued)

Page

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
    318 F.3d 214 (D.C. Cir. 2003) ..................................................................6, 9, 15

*United States ex rel. Health Outcomes Techs. v. Hallmark Health Sys.*,
    409 F. Supp. 2d 43 (D. Mass. 2006) .............................................................15

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004) ..........................................................................15

*United States ex rel. Koch v. Koch Indus., Inc.*,
    188 F.R.D. 617 (N.D. Okla. 1999) ................................................................11

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
    149 F.3d 227 (3d Cir. 1998) ................................................................. *passim*

*United States ex rel. LaCorte v. Wagner*,
    185 F.3d 188 (4th Cir. 1999) ...........................................................................6

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
    243 F.3d 1181 (9th Cir. 2001) .............................................................. *passim*

*United States ex rel. Ortega v. Columbia Healthcare, Inc.*,
    240 F. Supp. 2d 8 (D.D.C. 2003) ............................................................11, 16

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield*,
    472 F.3d 702 (10th Cir. 2006) ........................................................................10

*United States ex rel. Smith v. Yale-New Haven Hosp., Inc.*,
    411 F. Supp. 2d 64 (D. Conn. 2005) ...............................................................9

*Walburn v. Lockheed Martin Corp.*,
    431 F.3d 966 (6th Cir. 2005) ...........................................................................5

*Wilson v. Fairchild Republic Co.*,
    143 F.3d 733 (2d Cir. 1998), *overruled on other grounds by Slayton v. Am.*
    *Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) .............................................16

## STATUTES & RULES

31 U.S.C. § 3730(a) ................................................................................................11, 12

31 U.S.C. § 3730(b)(4) ................................................................................................12

31 U.S.C. § 3730(b)(5) .......................................................................................5, 6, 9, 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

31 U.S.C. § 3731(b)(1) .................................................................................................10, 11

31 U.S.C. § 3731(b)(2) .....................................................................................................10

Fed. R. Civ. P. 15(b)(2)......................................................................................................14

Fed. R. Civ. P. 15(c)(1).............................................................................................10, 11, 13

Fed. R. Civ. P. 15(c)(2).............................................................................................10, 13, 14

Fed. R. Civ. P. 15(c)(3).....................................................................................................14

**OTHER MATERIALS**

S. Rep. No. 99-345 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266 .........................................12

6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE (2d ed. 1990 & Supp. 2007) ......................................................................................................................16

## INTRODUCTION

This action, filed in this Court under seal over 6 years ago and only recently served on

Defendant Abbott Laboratories ("Abbott"), should be dismissed, either:

- In its entirety, for lack of subject matter jurisdiction, because it accuses Abbott of the same alleged fraudulent scheme that is the subject of another *qui tam* action filed by the same relators in the Southern District of Florida, and already pending before this Court in this MDL, and thus is jurisdictionally barred; or alternatively,

- In part, because most of the claims in suit are time-barred.

Abbott therefore asks that the Court dismiss the relators' complaint for lack of jurisdiction, or in

the alternative, dismiss those claims that are untimely.

## BACKGROUND

To understand why the instant complaint must be dismissed, either in whole or in part,

Ven-A-Care's litigation strategy over the course of the last 12 years must be examined.  In 1995,

Ven-A-Care of the Florida Keys, Inc. and certain officers and directors (collectively "Ven-A-

Care"), relators in this False Claims Act case, filed its first under-seal False Claims Act *qui tam*

complaint (the "Florida Case"), alleging fraudulent drug pricing practices, in the U.S. District

Court for the Southern District of Florida.  It filed the instant case (the "Massachusetts Case"),

also as an under-seal *qui tam*, raising the same allegations of fraudulent drug pricing practices

levied in the Florida Case, nearly half a decade later in 2000.  Ven-A-Care amended its

complaints in each case multiple times, both while the cases were under seal and in conjunction

with the United States' intervention decisions in each case (the United States ultimately

intervened in part in the Florida Case, and declined intervention in the Massachusetts Case).  The

relevant dates and actions, which support Abbott's arguments for dismissal here, are summarized

below.  (For the Court's reference, a timeline of these dates appears as Exhibit Q to this

memorandum.)

A.    **Ven-A-Care Files And Amends (Over The Course Of A Decade) Two Different Under Seal False Claims Act Complaints, In Two Different Jurisdictions, Alleging The Same Fraudulent Drug Pricing Scheme.**

On June 23, 1995, Ven-A-Care filed the Florida Case under seal against a number of drug manufacturers, including Abbott Laboratories. The complaint alleged that the defendants "report[ed] grossly inflated, false and fraudulent cost and price information regarding certain pharmaceutical products" by "knowingly report[ing those prices] in a manner whereby it was used by . . . federally funded States' Medicaid Programs in setting reimbursement amounts paid for pharmaceuticals sold by" the defendants. (Ex. A ¶ 1.)  Specifically, the complaint alleged that based on the "grossly inflated price and cost information reported by [defendants], the. . . Medicaid programs set allowed charges for pharmaceuticals. . . that were many times greater than the average acquisition costs paid by the providers/suppliers for the drugs. . .and many times greater than the mark-up over true cost that the. . . Medicaid programs intended to pay persons and entities supplying the pharmaceuticals to. . . Medicaid beneficiaries." (*Id.*)

On March 28, 1997, Ven-A-Care voluntarily dismissed Abbott from the Florida Case. Ven-A-Care later re-added Abbott to the Florida Case (which was still under seal) in its August 12, 1997 Second Amended Complaint, and added, as to Abbott, several new National Drug Codes ("NDCs") of drugs that were allegedly the subjects of the same allegedly fraudulent scheme. (Exs. B, C.) On December 9, 1999, Ven-A-Care filed a Third Amended Complaint in the Florida Case. This complaint added no claims against Abbott. (Ex. D.)

On April 10, 2000, Ven-A-Care filed the Massachusetts Case, a sealed *qui tam* complaint alleging the same scheme at issue in the Florida Case: that several pharmaceutical companies (not including Abbott) "falsely inflated their reports of the prices charged to wholesalers" for certain pharmaceutical products, knowing that the States relied on that data to set Medicaid provider reimbursement costs, thus causing those programs to "pay claims in excessive amounts"

for reimbursement. (Ex. E ¶¶ 1, 3.)  Ven-A-Care amended the Massachusetts Complaint on February 15, 2001, adding Abbott as a defendant but otherwise pleading the same alleged scheme.  (Ex. F ¶¶ 1-4.)  That sealed complaint alleged that Abbott submitted false claims with respect to 13 NDCs of Erythromycin products.  (*Id.* ¶¶ 84-86.)  Ven-A-Care filed a Second Amended Complaint in the Massachusetts Case on February 1, 2002, but added no additional NDC claims against Abbott.  (Ex. G ¶ 140.)

On December 11, 2002, Ven-A-Care again amended its complaint in the Florida Case. This Fourth Amended Complaint made the same allegations, but for Abbott added hundreds of additional drugs and NDCs that were allegedly involved, including several different NDCs of the drug Erythromycin.   (Ex. H at Ex. 6 at 28-29.)

A Third Amended Complaint in the Massachusetts Case was filed on February 15, 2005. This amended complaint added 15 NDCs against Abbott—13 NDCs related to Erythromycin and 2 NDCs of Isoflurane.  (Ex. I ¶ 194 & Ex. 1.)

**B.     The United States Intervenes In And Prosecutes The Florida Case.**

On March 17, 2006, the Government intervened in Ven-A-Care's Florida Case.  The notice of intervention was expressly limited to "that part of the [Florida Complaint] action which alleges Medicaid and Medicare fraud with respect to Abbott Laboratories, Inc." as to 41 specific NDCs, which did not include Erythromycin.  (Ex. J at 1-3).  The Government declined intervention in the other claims, and filed a Complaint-in-Intervention against Abbott with respect to the intervened-in claims.  (*Id.*; Ex. K.)  On the same day, Ven-A-Care sought "leave to amend its complaint as to Abbott only. . . by adopting the United States' Intervention Complaint as Ven-A-Care's complaint against Abbott," thereby dropping claims related to all NDCs, including Erythromycin, that the Government declined to pursue.  (*See* Ex. L).  Ven-A-Care's motion for leave was granted on May 22, 2006, without the Government's objection (Ex. M.)

The Judicial Panel on Multidistrict Litigation consolidated the Florida *qui tam* into MDL 1456, and transferred it to this Court for pretrial proceedings.  (Ex. N.)  That matter has been actively litigated by the United States, Ven-A-Care, and Abbott since that time.  Discovery is currently scheduled to close at the end of this year—on December 31, 2007.

### C.   In August 2007, A Year And A Half Into Active Litigation Of The Florida Case And Approximately 12 Years After The First Qui Tam Was Filed, Abbott Is Served With The Complaint In The Massachusetts Case.

It was not until August 30, 2007—over a year after the Florida complaint was unsealed and transferred to Massachusetts—that Abbott was served with the Massachusetts Case. According to Ven-A-Care,[1] the United States declined intervention in the Third Amended Complaint in the Massachusetts Case, whereupon Ven-A-Care severed its claims against Abbott and filed the current "Amended Severed Complaint" (which is the subject of this motion to dismiss) under a new docket number (No. 1:07-cv-11618).  (Ex. O ¶ 8.)  In filing the now-operative Massachusetts Case complaint, Ven-A-Care dropped the Isoflurane NDCs, but added 17 *more* NDCs related to Erythromycin, bringing the total number of NDCs to 43.  (*Id.* ¶ 33.) Just like the Florida Case, this complaint alleges that Abbott violated the False Claims Act by "report[ing] inflated pharmaceutical prices that it knew Medicaid relied upon to set reimbursement rates for Abbott's pharmaceutical prices" when its "actual sales prices. . . were far less than the prices reported."  (*Id.* at 1-2.)

On September 20, 2007, Ven-A-Care moved to transfer the Amended Severed Complaint in the Massachusetts Case to MDL No. 1456, on grounds that the MDL "involve[s] pricing fraud with respect to the Medicaid program," and that "Abbott is a defendant. . . [in] a case initiated by Ven-A-Care in which the United States intervened which originated in the Southern District of

---

[1] The original Massachusetts Complaint docket, No. 00-cv-10698, remains sealed and is unavailable for Abbott's inspection.

Florida and involves conduct similar in nature to the conduct at issue in this action."  (Ex. P at 2 (citing *United States ex rel. Ven-A-Care of Fla. Keys, Inc. v. Abbott Labs.*, No. 06-11337).)  The action was transferred to the MDL on October 30, 2007, and this timely motion to dismiss followed.

## **ARGUMENT**

Because the Massachusetts Case alleges the same fraudulent scheme as the Florida Case, and was later filed, it is a redundant *qui tam* prohibited by the False Claims Act's first-to file bar. It should be dismissed in its entirety for that reason alone.  Alternatively, because the filing and multiple amendments of the complaints in the Massachusetts Case create statute of limitations barriers, at the very least the Massachusetts Case must be dismissed in part as to those claims that are time-barred.  These alternative arguments are set out, in turn, below.

**I.    THE FIRST-TO-FILE BAR OF 31 U.S.C. § 3730(B)(5) REQUIRES DISMISSAL OF VEN-A-CARE'S MASSACHUSETTS CASE.**

Section 3730(b)(5) of the False Claims Act provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  This "plain language unambiguously establishes a first-to-file bar" that prevents successive *qui tam* lawsuits based on related underlying facts.  *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001); *see also Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 969 (6th Cir. 2005); *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232 (3d Cir. 1998).  This bar is a "jurisdictional limit on the courts' power to hear certain duplicative *qui tam* suits." *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004); *see also Walburn*, 431 F.3d at 970 (first-to-file bar jurisdictional); *Lujan*, 149 F.3d at 233 (holding that 3730(b)(5) creates a jurisdictional bar).  The jurisdictional first-to-file

bar ensures that "repetitive claims" will be dismissed once the "first-filed claim provides the government notice of the essential facts of an alleged fraud." *Lujan*, 243 F.3d at 1187.

This is simple common sense.  The False Claims Act is a whistle-blower statute designed to encourage the rooting out of hidden fraud, and "duplicative claims do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." *SmithKline*, 149 F.3d at 234.  Accordingly, the circuit courts that have addressed the first-to-file bar widely agree that this bar admits of no exceptions.  *United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999); *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1043 (8th Cir. 2002); *Grynberg*, 390 F.3d at 1279; *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003).

The bar is implicated by successive "*related* action[s] based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5) (emphasis added).  Therefore, a later-filed *qui tam* is barred if it contains "the same material elements of fraud described in an earlier suit, regardless of whether the allegations incorporate somewhat different details." *Lujan*, 243 F.3d at 1189; *see also, e.g.*, *SmithKline*, 149 F.3d at 232-33 (holding that a "later case need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar" but rather will bar a subsequent suit "alleging the same elements of a fraud"); *Hampton*, 318 F.3d at 217-18 ("§ 3730(b)(5) bars any action incorporating the same material elements of fraud as an action filed earlier. . . [b]ut [it] does not say that the later action must rest on identical facts" and rejecting later-filed complaint that contained "merely variations on the fraud [the first-filed] complaint described").  Put differently, the purposes of the first-to-file bar are satisfied, and a later-filed suit is barred, where an original suit puts the government on notice of the potential

fraud claim.  *See SmithKline*, 149 F.3d at 234 (holding that "once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds"); *see also Grynberg*, 390 F.3d at 1279 ("Once the government is put on notice of [the] potential fraud claim, the purpose of [§ 3730(b)(5)] is satisfied."); *Lujan*, 243 F.3d at 1189 (same).

This jurisdictional limit on the Court's power to hear FCA cases compels dismissal of Ven-A-Care's Massachusetts Case, because it alleges the *identical* fraudulent scheme that was alleged in the earlier-filed Florida Case.  The scheme alleged in the Florida Case was that Abbott "knowingly engaged in a fraudulent course of conduct designed to cause the. . . Medicaid programs to reimburse providers/suppliers of their pharmaceuticals. . . in amounts that grossly exceed a reasonable reimbursement" by reporting inaccurate prices to third-party price publishers, which "caus[ed] the. . . Medicaid programs to establish grossly inflated reimbursement rates for the pharmaceuticals."  (Ex. A ¶¶ 41-47.)  The later-filed Massachusetts Case alleges the same fraudulent scheme:  "Abbott reported inflated pharmaceutical prices that it knew Medicaid relied upon to set reimbursement rates for Abbott's pharmaceutical products." (Ex. O at 1.)

Indeed, this identity between the complaints is so obvious that *even Ven-A-Care* was forced to expressly admit, when it moved to transfer this case into the MDL, that "Abbott is a defendant. . . [in] a case initiated by Ven-A-Care in which the United States intervened which originated in the Southern District of Florida and inv*olves conduct similar in nature to the conduct at issue in this action*."  (Ex. P at 2 (emphasis added).)  Accordingly, the Massachusetts Case is jurisdictionally barred, and must be dismissed.

The fact that the Massachusetts Case involves some NDCs that were never alleged in the Florida Case is immaterial.  First, nine specific Erythromycin NDCs were named in both

complaints.  (*Compare* Ex. O ¶ 33 *with* Ex. H at Ex. 6, at 28-29.)  Second, and more importantly, the *scheme* alleged in the two complaints is identical, and nothing about that alleged scheme turns on the particular drugs at issue.  In fact, the Relators' Florida Case confirms this; there, the Relators alleged that the claims at issue "include[d] but [were] not limited to those [drugs] specified in this complaint," (Ex. A ¶ 41) and therefore sought recovery not just for the specific drugs named in their complaints, but rather damages for "*all* pharmaceuticals of *all* sizes of the DEFENDANT PHARMACEUTICAL MANUFACTURERS about which false price and cost representations and records caused the presentment of false claims for payment and approval." (Ex. C ¶ 56 (emphasis added).)  The Florida Case, therefore, not only notified the United States of the mechanics of the alleged fraud, but also that the alleged fraud was *not* limited to specific NDCs and drug types.  Because it would therefore have been a trivial matter for the Government to uncover the names of other drugs for which there was a spread between reported cost and provider cost, the Florida Case barred all subsequent relator complaints alleging similar conduct. *Grynberg*, 390 F.3d at 1279; *Lujan*, 243 F.3d at 1189.

Indeed, Ven-A-Care has implicitly acknowledged as much.  In its opposition to Abbott's Motion to Dismiss the Florida Complaint-in-Intervention, Ven-A-Care repeatedly stated that, regardless of the specific drugs named, "the same fraudulent scheme is alleged throughout the complaints filed by the United States and the Relator in this Action," including its Fourth Amended Florida Complaint that contained several Erythromycin NDCs.  (Dkt. 4662 at 5, 8.) And, as mentioned, Ven-A-Care's motion to transfer the Amended Severed Complaint in this matter to MDL No. 1456 was predicated on grounds that the MDL "involve[s] pricing fraud with respect to the Medicaid program," and that "Abbott is a defendant. . . [in] a case initiated by Ven-A-Care in which the United States intervened which originated in the Southern District of

Florida and involves conduct similar in nature to the conduct at issue in this action."  (Ex. P at 2.)

Both on its face, and by Ven-A-Care's repeated admissions, then, the Massachusetts Case is a

mere variation of the scheme alleged in the Florida *qui tam*, providing nothing more than

"different details," and cannot survive the first-to-file bar.  *Hampton*, 318 F.3d at 217-18; *Lujan*,

243 F.3d at 1189; *SmithKline*, 149 F.3d at 232-33.

It is also immaterial that both the Florida and Massachusetts Cases were filed by the same

relators.  Although the first-to-file bar is most often applied to prevent successive suits by

*different* putative relators, the plain language of the statutory provision also bars successive

complaints by the *same* relator.  *See* 31 U.S.C. § 3730(b)(5) ("When a person brings an action

under this subsection, no person other than the Government may intervene or bring a related

action based on the facts underlying the pending action.")  As one court noted, "[t]he statute does

not say 'no *other* person except the Government may bring an action,' it simply says 'no person'

which would apply equally to the original relator as any other person."  *United States ex rel.*

*Smith v. Yale-New Haven Hosp., Inc.*, 411 F. Supp. 2d 64, 75 (D. Conn. 2005) (emphasis added).

This Court, too, has implicitly agreed that the first-to-file bar operates against successive

complaints by the same relator in a recent decision in this MDL.  Noting that Ven-A-Care had

filed successive *qui tam* suits against Dey, Inc., the Court said that "[i]f the 2000 complaint were

based on the same facts as the initial 1997 complaint, then the Court would not have jurisdiction

over the 2000 Massachusetts complaint."  *In re Pharm. Indus. Average Wholesale Price Litig.*,

498 F. Supp. 2d 389, 400 (D. Mass. 2007).

As discussed above, that is precisely the case here.  Thus, Ven-A-Care's Massachusetts

Case against Abbott, filed in this Court in 2001, is jurisdictionally barred and must be dismissed

in its entirety.

## II.   THE STATUTE OF LIMITATIONS BARS MANY OF RELATORS' CLAIMS.

### A.   The Bulk of the Claims in the Massachusetts Case Are Untimely.

Even if the Massachusetts Case were not jurisdictionally barred (and it is), most of its claims would still have to be dismissed because they are untimely.  The operative complaint in the Massachusetts Case, the "Amended Severed Complaint," was filed on August 30, 2007, alleging an unspecified number of violations "[f]rom at least on or before January 1, 1994, and continuing through the present."  (Ex. O ¶ 49.)  But the FCA provides that no civil action may be brought "more than 6 years after the date on which the violation . . . is committed."[2]  31 U.S.C. § 3731(b)(1).  All claims falling outside the six-year statute of limitations must be dismissed for failure to state a claim.  *See Jones v. Bock*, 127 S. Ct. 910, 920-21 (2007).  Accordingly, all claims accruing prior to August 30, 2001 are untimely.

### B.   Relation-Back to the Sealed Complaints Is Impermissible.

Relators cannot dodge the consequences of the statute of limitations by claiming that Federal Rule 15(c) permits their current Massachusetts complaint to "relate back" to earlier, sealed complaints.  That rule provides that an amendment relates back to the date of an original pleading only when (1) "relation back is permitted by the law that provides the statute of limitations applicable to the action" or (2) if the "claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence" found in the original pleading. Fed. R. Civ. P. 15(c)(1), (2).  Neither provision applies here.

---

[2] The statute contains a tolling provision, extending the limitations period in some cases to "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances."  *Id.* § 3731(b)(2).  This provision is inapplicable to claims brought by relators only, like those involved in this Massachusetts Case, in which the Government declined intervention. *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 723-25 (10th Cir. 2006) (detailing legislative history and statutory purpose, and concluding that "§ 3731(b)(2) was not intended to apply to private *qui tam* relators at all").  And even if it could apply in theory, it does not matter here because it has long since expired, given that the Relators have known of the alleged fraud since at least 1995.

### 1.    The False Claims Act Does Not Permit A Relator's Unsealed Complaint To Relate Back To Sealed Complaints.

Rule 15(c)(1) will not allow Ven-A-Care to rely on its sealed complaints for relation-back purposes.[3]  The False Claims Act contains no explicit reference to relation-back.  *See, e.g., United States ex rel. Ortega v. Columbia Healthcare, Inc.,* 240 F. Supp. 2d 8, 14 n.7 (D.D.C. 2003) (noting that "[t]he FCA statute of limitations makes no mention of relation back."); *United States ex rel. Koch v. Koch Indus., Inc.,* 188 F.R.D. 617, 627 (N.D. Okla. 1999) ("Section 3731(b) contains no provisions dealing with the relation back of amendments to complaints stating *qui tam* claims.  Thus, Rule 15(c)(1) is not applicable to this case.").  Nor is there any implicit authorization for relation-back.  To the contrary, the text, structure, and intent of the FCA show that the statute of limitations is intended to run until the end of the Government's investigation and intervention decision, which coincides with the unsealing of the complaint.

The FCA's statute of limitations is not defined by reference to when a case is "filed," but rather when it is "brought."  31 U.S.C. § 3731(b).  While not explicit, the text of the FCA demonstrates that no implicit relation-back is allowed.  31 U.S.C. § 3730(a), which sets out the procedure for FCA actions initiated by the attorney general, explicitly provides that a civil action is "brought" only after the government's investigation into FCA violations is completed.  *See id.* ("The Attorney General diligently shall investigate a violation under section 3729. If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General *may bring* a civil action under this section. . . .") (emphasis added).

Section 3730(b)(1), by contrast, provides that "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government," but unlike

---

[3] In a related case within the MDL, this Court found that the False Claims Act did implicitly permit relation-back under Rule 15(c)(1).  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d at 396-97.  However, the defendant in that suit—Dey Pharmaceuticals—did not raise the textual and legislative intent arguments presented here, and Abbott respectfully believes that the Court should re-evaluate that decision in light of Abbott's arguments.

§ 3730(a), it does not specify *when* such an action is "brought."  Section 3730(b)(4), however, provides the textual context for determining when a sealed case is "brought" for limitations purposes.  That section states that once the Government's investigatory time has elapsed, the Government may intervene and "conduct[]" the action, or else decline to intervene and allow the "person *bringing* the action" to "conduct" it (emphasis added).  The statute's use of the present tense ("bringing") reflects that the relators' "bringing" the action is contemporaneous with the Government's intervention decision.  After all, if the mere *filing* of the sealed complaint were commensurate with "bringing" the action, one would expect § 3730(b)(4)(B) to use the past tense (*i.e.*, the "person who *brought*" the action may conduct it), given that the relator necessarily must file his complaint *before* the decision to intervene can be made.

So understood, the statute's text coincides with the explicit intent of Congress as to the effect of the *qui tam* seal.  In explaining its provision for sealed complaints, Congress made it clear that, in doing so, it "d[id] not intend to affect defendants' rights in any way."  S. Rep. No. 99-345, at 24 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5289 (emphasis added).  As stated, under § 3730(a), an action is "brought" only *after* the government investigates the alleged FCA violation.  Thus, under § 3730(a), as in virtually all tort litigation, the statute of limitations runs while the party bringing suit investigates the potential cause of action.  By providing that a relator's false claims action is likewise not "brought" until after the Government's intervention decision, the statute thus aligns the timing of  § 3730(b) with § 3730(a), and ensures that defendants are not placed in a worse-off position merely because a relator, and not the attorney general, filed the *qui tam* complaint at issue.

By contrast, allowing a sealed complaint to toll the limitations period perverts this intent, and unquestionably has a negative effect on defendants, placing them under the threat of

litigation for a potentially limitless time.  This is contrary to the intent of Congress, and lacks textual support in the False Claims Act itself.  Accordingly, Rule 15(c)(1) does not permit relation back here.

### 2. Rule 15(c)(2) Relation-Back is Improper Because Sealed Complaints Offer No Notice to Defendants.

Rule 15(c)(2) likewise has no application here.  The "linchpin to Rule 15(c) is notice before the limitations period expires."  *Marsh v. Coleman Co.*, 774 F. Supp. 608, 612 (D. Kan. 1991) (citing *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)).  As the Second Circuit has held, however, because a relator's *qui tam* complaint "is distinctive for [its] secrecy," it cannot support relation back.  *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 269 (2d Cir. 2006).

In *Baylor*, the Government filed an untimely complaint in intervention in an FCA Medicare fraud case, and sought to relate it back to the relator's timely complaint.  *See id.* at 268. The Court refused to allow relation back under Rule 15(c)(2).  It noted that, under 31 U.S.C. § 3730(b), a relator's "*qui tam* complaint must be filed *in camera* and must remain under seal" while the Government investigates the relator's claims in advance of deciding whether to intervene.  *Id.* at 269.  Thus, "[b]y design, the seal provision of § 3730(b) deprives the defendant in an FCA suit of the notice usually given by a complaint."  *Id.* at 270.  The Court held that "[b]ecause any relation back of subsequent filings to the original complaint is incompatible with the core requirement of notice under Rule 15(c)(2), continued running of the statute of limitations is warranted," at least until the Government files its complaint in intervention.  *Id.* Further, the court noted that the purposes of the FCA's statute of limitations could be undermined by excessive delay by the Government in unsealing a complaint.  *See id.* at 270 n.10.

The lack of notice referenced in *Baylor* is plainly present here.  The relators' FCA complaint remained sealed during the United States' investigation of its claims, and Abbott had no notice of those claims until unsealing occurred.

### C. The Statute Of Limitations Continued To Run For Each Particular NDC Until Asserted In A Complaint.

Finally, even if relation-back were permitted as to sealed complaints, only a handful of Ven-A-Care's claims would relate back to the February 15, 2001 First Amended Massachusetts Complaint (the first one in which Abbott was named as a defendant).[4]  Rule 15(c)(2) permits relation-back only if the original complaint were based on the same conduct, transaction, or occurrence as the later complaint.  As described below, however, the relevant "conduct, transaction, or occurrence" at issue in this case are the individual NDCs alleged to be fraudulent, and Rule 15(c)(2) relation-back must be measured on an NDC-by-NDC basis.

Rule 15(c) requires more than a reference to the same general cause of action or theory of liability, but rather must reference the *particular claim* to be asserted.  *See, e.g., O'Loughlin v. Nat'l R.R. Passenger Corp.*, 928 F.2d 24, 27 (1st Cir. 1991) (separate allegations of injury, on

---

[4] The original 2000 Massachusetts Complaint has no relation-back value as to Abbott, which was not named in that complaint.  Rule 15(c)(3) provides that where an amendment adds a new defendant, claims against that new defendant may not relate back to earlier complaints unless (1) Rule 15(b)(2)'s "conduct, transaction, or occurrence" test is met; (2) the Defendant was put on notice of the original complaint, even though it was not named; and (3) the defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."   None of those requirements is met here.

*First*, as described *infra*, the "conduct, transaction or occurrence" test is not met here, because the 2000 Massachusetts complaint did not allege claims regarding *any* formulation of Erythromycin, let alone any of the specific NDCs which appear in later complaints.

*Second*, Abbott did not receive notice of the original complaint within the time period specified in Rule 15(c)(3), for the simple reason that the complaint was under seal. .

*Third*, and finally, Ven-A-Care's failure to name Abbott cannot be considered a "mistake."   For purposes of Rule 15(c)(3), a "mistake" occurs when a plaintiff intends to sue a particular party, but uses the wrong name; a plaintiff's lack of knowledge that she has similar claims against a different party is not enough.  *See Cholopy v. City of Providence*, 228 F.R.D. 412, 417 (D.R.I. 2005); *see also Leonard v. Parry,* 219 F.3d 25, 31 (1st Cir. 2000).  Nothing on the face of the initial 2000 Massachusetts complaint indicates that Ven-A-Care intended to name Abbott as a defendant, but accidentally sued someone else instead; it does not, for example, mention the Erythromycin NDCs which appeared in the First Amended complaint.  Rather, the only conclusion to be drawn is that Ven-a-Care made a conscious decision *not* to sue Abbott in its initial 2000 complaint.

different days, due to "unsafe and inadequate working conditions" at the same workplace could

not relate back); *United States ex rel. Health Outcomes Techs. v. Hallmark Health Sys.*, 409 F.

Supp. 2d 43, 45, 53 (D. Mass. 2006) (allegation of miscoding specific procedure did not relate

back to claims of miscoding same procedure in a different year); *see also United States ex rel.*

*Colunga v. Hercules Inc.*, No. 89-CV-954, 1998 WL 310481, at *1-2 (D. Utah Mar. 6, 1998)

(false claims allegations related to "improper alodining" of Titan IV and other missile systems

did not relate back to allegations of "improper alodining" of Pershing II missile systems, as

"[d]ifferent rocket systems became the subject of the complaint").

Here, the FCA is violated only where the government has been "presented. . . [with] a

false or fraudulent claim." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d

220, 225 (1st Cir. 2004).  While, as set out above, the alleged scheme here involved Abbott's

reported and discounted prices for specific NDC codes, and the differential between those prices

on an NDC by NDC basis, the *claims* at issue here are the providers' claims seeking

reimbursement at the reported price—reimbursements requested on a NDC by NDC basis.

Because the NDC defines the contours of the "fraudulent" transaction, the NDC must be the

benchmark by which relation-back is assessed.  Indeed, even Ven-A-Care admits that, "[f]or the

most part, in the Medicaid program, claims submitted by retail pharmacies are process and

tracked using the NDC of the drug" (Ex. O ¶ 36).  Accordingly, unlike the first-to-file bar (which

is analyzed by reference to the alleged scheme), relation back must be assessed by reference to

the first time a *drug code* is mentioned.[5]  That earlier complaints alleged false claims related to

---

[5] This narrow, NDC-by-NDC analysis for Rule 15(c) relation-back purposes does not conflict at all with the broader scheme-based analysis for 31 U.S.C. § 3730(b)(5) first-to-file bar purposes.  The two rules serve completely different purposes.  The first-to-file bar is intended to encourage broad federal policies: encouraging whistleblowing while preventing parasitic *qui tam* suits.  *See, e.g., Hampton*, 318 F.2d 214, 217 (D.C. Cir. 2003).  The first-to-file bar thus applies to fraudulent *schemes*, even where later relators bring different facts to the table, because once the United States knows of a scheme, it can uncover those additional facts itself, and no purpose is served in allowing the second relator to take a share of the United States' recovery.  *Id.; see also Lujan*, 243 F.3d at 1188; *SmithKline*,

*other* NDCs is insufficient to permit Rule 15(c)(2) relation back, because a complaint alleging

that a party made false claims regarding Code A simply does not contain facts sufficient to

provide a party notice that it will also be held accountable for false claims for Code B.  *See, e.g.,*

*Oja v. U.S. Army Corps of Eng'rs,* 440 F.3d 1122, 1133-34 (9th Cir. 2006) (amendment adding a

claim arising from unauthorized disclosure of personal information on a website in December

2000 did not relate back to complaint based on a disclosure in November 2000 at a different

internet address); *In re Bausch & Lomb, Inc. Sec. Litig.*, 941 F. Supp. 1352, 1366 (W.D.N.Y.

1996) (no relation back where amended complaint included allegations based on an earlier press

release that was not mentioned in the previous complaint and "constitute[d] a separate alleged act

of fraud"); *Ill. Tool Works, Inc. v. Foster Grant Co.*, 395 F. Supp. 234, 250-51 (N.D. Ill. 1974)

("An alleged infringement of one patent is not the 'same conduct, transaction or occurrence' as

the alleged infringement of another patent."); *see generally* 6A CHARLES A. WRIGHT ET AL.,

FEDERAL PRACTICE & PROCEDURE § 1497 (2d ed. 1990 & Supp. 2007) ("When plaintiff attempts

to allege an entirely different transaction by amendment, Rule 15(c) will not authorize relation

back.  For example, amendments alleging . . . a separate violation of the same statute may be

subject to the defense of statute of limitations because of a failure to meet the transaction

standard.") (footnotes omitted).  Accordingly, even if this suit were jurisdictionally permissible

(which it is not), and even if relation back to could save the untimely claims accruing before

---

(continued…)

149 F.3d at 234; *Ortega*, 240 F. Supp. 2d at 13.  Rule 15(c), by contrast, does not exist to protect broad federal policies, but is designed to safeguard the due process rights of defendants in specific litigation, to ensure that they are not deprived of the benefit of the statute of limitations unless they received fair notice that they would be held responsible for specific claims.  *See, e.g., Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998) ("The pertinent inquiry ... is whether the original complaint gave the defendant fair notice of the newly alleged claims."), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006).  Permitting relation-back on similar schemes, but different factual transactions, does not serve this purpose.  *O'Loughlin*, 928 F.2d at 26.

August 30, 2001 in this suit (which it cannot), relation back could only be permitted to the first complaint in this suit in which a particular NDC at issue was first raised.

### D.   Summary Of The Recommended Disposition Of Ven-A-Care's Claims Based On Limitations Grounds

The alleged claims in Ven-A-Care's current complaint cover 41 different NDCs of Erythromycin, and were alleged in three groups over the course of several years.  (Ex. Q.)  If the Court were to find that the sealed complaints cannot be relied on for relation-back purposes, the operative date for statute of limitations purposes is August 30, 2007.  As such, all claims accruing prior to August 30, 2001 would be time-barred.

Alternatively, should the Court instead allow relation-back only to the first complaint in which a specific NDC was identified, the relevant dates for relation-back are as follows:

*First*, the following NDCs were originally alleged against Abbott in Ven-A-Care's February 15, 2001 complaint (Ex. F ¶ 84) may relate back only to that date, and all claims accruing prior to February 15, 1995 are time barred:

- NDC # 00074-6306-13 (E.E.S. 200 Suspension 100 mL)
- NDC # 00074-7156-13 (Erythromycin Ethylsuccinate & Sulfisoxazole 100 mL)
- NDC # 00074-7156-43 (Erythromycin Ethylsuccinate & Sulfisoxazole 150 mL)
- NDC # 00074-7156-53 (Erythromycin Ethylsuccinate & Sulfisoxazole 200 mL)
- NDC # 00074-6304-11 (Ery-tab Tablets 250 mg 100s)
- NDC # 00074-6304-13 (Ery-tab Tablets 250 mg 100s)
- NDC # 00074-6304-30 (Ery-tab Tablets 250 mg 30s)
- NDC # 00074-6316-13 (Erythromycin Stearate 500 mg)
- NDC # 00074-6326-13 (Erythromycin base 250 mg Tablet 100s)
- NDC # 00074-6326-53 (Erythromycin base 250 mg Tablet 500s)
- NDC # 00074-6346-20 (Erythromycin Stearate 250 mg Tablet 100s)
- NDC # 00074-6346-38 (Erythromycin Stearate UD 250 mg Tablet 100s)
- NDC # 00074-6346-53 (Erythromycin Stearate 250 mg Tablet 500s)

*Second*, the following 13 NDCs first appeared in Ven-A-Care's February 15, 2005 complaint (Ex. I ¶ 194 & Ex. 1) may relate back only to that date, and all such claims accruing prior to February 15, 1999 are time barred:

- NDC # 00074-6306-16 (E.E.S. 200 Suspension 200 mg/ 5 mL)
- NDC # 00074-6373-16 (E.E.S. 400 Liq. 400 Mg / 5 mL)
- NDC # 00074-6320-11 (Ery-Tab Tablets 333 mg)
- NDC # 00074-6320-13 (Ery-Tab Tablets 333 mg)
- NDC # 00074-6320-30 (Ery-Tab Tablets 333 mg)
- NDC # 00074-6320-53 (Ery-Tab Tablets 333 mg)
- NDC # 00074-6321-11 (Ery-Tab 500 Mg u)
- NDC # 00074-6321-13 (Ery-Tab 500 Mg e)
- NDC # 00074-2589-13 (Erythromycin Ethylsuccinate Tab 400 mg)
- NDC # 00074-2589-53 (Erythromycin Ethylsuccinate Tab 400 mg)
- NDC # 00074-8030-13 (Pediazole Suspension)
- NDC # 00074-8030-43 (Pediazole Suspension)
- NDC # 00074-8030-53 (Pediazole Suspension)

*Finally*, the following 17 NDCs were added to Ven-A-Care's severed and unsealed

complaint (Ex. O ¶ 33), filed on August 30, 2007, may not relate back to any prior complaint.

Thus, all such claims accruing prior to August 30, 2001 are time barred:

- NDC # 00074-3747-16 (Erythromycin Ethylsuccinate Oral Suspension 200mg/5mL)
- NDC # 00074-3748-16 (Erythromycin Ethylsuccinate Oral Suspension 40mg/5mL)
- NDC # 00074-5729-11 (E.E.S. 400 Film Tab)
- NDC # 00074-5729-13 (E.E.S. 400 Film Tab)
- NDC # 00074-5729-19 (E.E.S. 400 Film Tab)
- NDC # 00074-5729-53 (E.E.S. 400 Film Tab)
- NDC # 00074-6227-13 (Erythromycin Tablet 500mg)
- NDC # 00074-6301-13 (Erythromycin DR 250 mg cap)
- NDC # 00074-6301-53 (Erythromycin DR 250 mg cap)
- NDC # 00074-6304-40 (Ery-Tab Tablet 250 mg)
- NDC # 00074-6304-53 (Ery-Tab Tablet 250 mg)
- NDC # 00074-6326-11 (Erythromycin Tablet 250 mg)
- NDC # 00074-6346-19 (Erythromycin Stearate 250 mg)
- NDC # 00074-6346-41 (Erythromycin Stearate 250 mg)
- NDC # 00074-6369-02 (E.E.S. Granules 200 mg/5 mL)
- NDC # 00074-6369-10 (E.E.S. Granules 200 mg/5 mL)
- NDC # 00074-6373-13 (E.E.S. 400 Suspension)

## <u>CONCLUSION</u>

Abbott's motion to dismiss the relators' complaint should be granted in whole or in part.

18

Dated:  October 30, 2007                    Respectfully submitted,

                                     /s/ R. Christopher Cook
                                     James R. Daly
                                     Tina M. Tabacchi
                                     Brian J. Murray
                                     JONES DAY
                                     77 West Wacker Drive, Suite 3500
                                   Chicago, Illinois  60601
                                   Telephone:  (312) 782-3939
                                   Facsimile:   (312) 782-8585

                                   R. Christopher Cook
                                   David S. Torborg
                                   JONES DAY
                                   51 Louisiana Avenue, N.W.
                                   Washington, D.C.  20001-2113
                                   Telephone:  (202) 879-3939
                                   Facsimile:  (202) 626-1700

                                   *Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR PARTIALLY DISMISS THE RELATORS' COMPLAINT to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 30th day of October, 2007.


/s/ David S. Torborg
David S. Torborg