# EXHIBIT F

F I L E D
IN CLERK'S OFFICE

FEB 15   3 33 PM '01

U.S. DISTRICT COURT
DISTRICT   MASS.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
Ex Rel )
    VEN-A-CARE OF THE )
    FLORIDA KEYS, INC. )
    a Florida Corporation, )
    by and through its principal )
    officers and directors, )
    ZACHARY T. BENTLEY and )
    T. MARK JONES, )
 )
               Plaintiff, )
 )
v. )
 )
ABBOTT LABORATORIES, INC.; )
 )
 )
 )
DEY, INC.; )
 )
ROXANE LABORATORIES, INC.; )
 )
 )
 )
 )
        Defendants. )

*MEL*

CIVIL ACTION NO. 00 CV10698 ~~MEW~~

FILED IN CAMERA AND UNDER SEAL

FIRST AMENDED COMPLAINT
For Money Damages and Civil
Penalties Under the False Claims Act
31 U.S.C. §§3729-3732

## FIRST AMENDED COMPLAINT
## FOR MONEY DAMAGES AND CIVIL PENALTIES UNDER THE FALSE
## CLAIMS ACT 31 U.S.C. §§3729-3732

**CIVIL ACTION NO. 00 CV 10698 MLW**

COMES NOW, the UNITED STATES OF AMERICA ("UNITED STATES" or "GOVERNMENT"), by and through VEN-A-CARE OF THE FLORIDA KEYS, INC. ("VEN-A-CARE" or "the Relator"), and its principal officers and directors, ZACHARY T. BENTLEY and T. MARK JONES, and by and through the undersigned attorneys on behalf of the UNITED STATES and on the Relator's own behalf and brings this action against ABBOTT LABORATORIES, INC.;

DEY INC.;                                                    ROXANE LABORATORIES INC.;

(sometimes referred to collectively as "DEFENDANTS"), for money damages and civil penalties arising out of the DEFENDANTS' violations of the Federal False Claims Act, 31 U.S.C., §§3729-3732 from on or about April 7, 1994, to the present date.

**TABLE OF CONTENTS**

|  | Page No: |
|---|---|
| SECTION NO. 1<br>SUMMARY OF THE ACTION: DRUG MANUFACTURERS' FALSE PRICE REPRESENTATIONS INVOLVING RETAIL PHARMACIES | 6 |
| SECTION NO. 2<br>THE PARTIES | 8 |
| SECTION NO. 3<br>JURISDICTION & VENUE | 13 |
| SECTION NO. 4<br>BACKGROUND OF HOW UNITED STATES' MONIES ARE PAID FOR DRUG CLAIMS UNDER THE STATES' MEDICAID PROGRAMS | 19 |

2

CIVIL ACTION NO. 00 CV 10698 MLW

## TABLE OF CONTENTS

Page No:

SECTION NO. 5 30
THE FALSE CLAIMS SCHEME

 a. A description of the False Claims Scheme 30

 b. The DEFENDANTS each acted knowingly 33

 c. The DEFENDANTS directly benefitted through increased sales 36

 d. The DEFENDANTS' False Claim Scheme deprived the Government of the protection of The Federal Upper Limits ("FUL") 39

SECTION NO. 6 42
THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT ABBOTT

 47

SECTION NO. 8 52
THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT DEY

 55

SECTION NO. 10 109
THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT ROXANE

 112

CIVIL ACTION NO. **00 CV 10698 MLW**

<u>**TABLE OF CONTENTS**</u>                     Page No:

116

119

120

121

122

122

122

124

125

126

131

COUNT I                                                    132
    FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE
    OR FRAUDULENT CLAIMS

COUNT II                                                   133
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
    STATEMENT TO BE MADE OR USED TO GET A FALSE OR
    FRAUDULENT CLAIM PAID OR APPROVED BY THE
    GOVERNMENT

CIVIL ACTION NO. 00 CV 10698 MLW

## TABLE OF CONTENTS                                            Page No:

COUNT III                                                          134
    FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR
    STATEMENTS TO BE USED TO CONCEAL AN OBLIGATION
    TO PAY MONEY TO THE GOVERNMENT

COUNT IV                                                           136
    FALSE CLAIMS ACT; CAUSING PRESENTATION OF
    FALSE OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION

COUNT V                                                            138
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
    STATEMENT TO BE MADE OR USED TO GET
    A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY
    THE GOVERNMENT; ILLEGAL REMUNERATION

COUNT VI                                                           140
    FALSE CLAIMS ACT; CAUSING PRESENTATION OF
    FALSE OR FRAUDULENT CLAIMS; PROHIBITED REFERRALS,
    CLAIMS AND COMPENSATION ARRANGEMENTS

COUNT VII                                                          141
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
    STATEMENT TO BE MADE OR USED TO GET
    A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY
    THE GOVERNMENT; PROHIBITED REFERRALS,
    CLAIMS AND COMPENSATION ARRANGEMENTS

    ████████████████████████████████                           143

REQUESTS FOR RELIEF                                                145

DEMAND FOR JURY TRIAL                                              148

CERTIFICATE OF SERVICE                                             149

Case 1:01-cv-12257-PBS Document 4861-7 Filed 03/30/2007 Page 7 of 78

CIVIL ACTION NO. 00 CV 10698 MLW

## SECTION NO. 1
## SUMMARY OF THE ACTION
## DRUG MANUFACTURERS' FALSE PRICE REPRESENTATIONS
## INVOLVING RETAIL PHARMACIES

1.      This is an action for damages, treble damages, civil penalties and costs against the DEFENDANTS for violation of the False Claims Act as set out in Counts I through VIII, pages 132 through 147. The DEFENDANTS falsely represented the prices that they charged wholesalers for certain of their generic prescription drugs (hereinafter sometimes referred to as the "specified drugs") in order to cause various State Medicaid Programs to pay claims in excessive amounts. More than half of the amounts paid consisted of federal funds from which the States were required to pay claims based upon the drug's Estimated Acquisition Cost ("EAC") to the pharmacy submitting the claim. 42 CFR §447.331.

2.      The DEFENDANTS knew that each of the States' Medicaid Programs had implemented a mechanism to estimate acquisition cost of prescription drugs to a pharmacy and that most states, including but not limited to Alabama, Colorado, Florida, Maryland, Massachusetts, Ohio, Rhode Island, and Texas (hereinafter sometimes referred to as "WAC STATES") relied on the DEFENDANTS' representation of the prices they charged wholesalers for the specified drugs. The DEFENDANTS' false price representations were made directly to the WAC STATES and other States by the DEFENDANTS and through First Data Bank ("FDB"), the company that assembles drug price data for the State Medicaid Programs.

6

3.     The DEFENDANTS each knew that the WAC STATES' Medicaid Programs relied on the DEFENDANTS' representations of the prices that the DEFENDANTS charged wholesalers in setting the amount to be reimbursed to a pharmacy. This information was used to determine the Wholesaler Acquisition Cost ("WAC") for the specified drugs to which a percentage was added to estimate the acquisition cost of a pharmacy purchasing from a wholesaler. The DEFENDANTS reported truthful prices for most drugs and the States' Medicaid Programs were thus able to accurately estimate acquisition costs when paying claims. In the case of the specified drugs, however, the DEFENDANTS falsely inflated their reports of the prices charged to wholesalers so that Medicaid pharmacy providers would be paid excessive amounts and thus choose the specified drugs over competing generic versions.

4.     The DEFENDANTS each benefitted from their false price representations because they were able to create a "Spread" between the inflated acquisition cost that they caused the States to calculate and the reasonable and realistic estimate of acquisition cost upon which the States intended to base payments of claims. The "Spread" thus constituted an unlawful financial inducement arranged by the DEFENDANTS to cause their Medicaid provider customers to order the DEFENDANTS' specified drugs instead of their competitors'. The DEFENDANTS thus duped the WAC STATES' and other States' Medicaid Programs into paying claims for the specified drugs at inflated amounts in order to increase the DEFENDANTS' sales. The DEFENDANTS lied about the price of their

7

CIVIL ACTION NO. 00 CV 10698 MLW

specified drugs in order to cause the States to expend Medicaid Program dollars to unwittingly fund unlawful kickbacks to Medicaid providers.

5.    The DEFENDANT DEY, the DEFENDANT ⬛⬛⬛ and others also defrauded the WAC STATES and other States' Medicaid Programs by causing false records or statements to be used to decrease their obligations to pay Medicaid rebate monies or properties to the States' Medicaid Programs as required by law.

6.    The DEFENDANTS' wrongful exploitation of the States' Medicaid Programs caused the UNITED STATES to incur single damages in excess of Ten Million Dollars for which the UNITED STATES and States' Medicaid Programs are entitled to recover treble damages plus up to Ten Thousand Dollars per false claim, interest, costs and attorneys' fees.

## SECTION NO. 2
## THE PARTIES

7.    The Plaintiff in this action is the UNITED STATES. At all times material to this civil action, the United States Department of Health and Human Services ("HHS") and the Health Care Financing Administration ("HCFA"), were charged with administering the Medicaid program.

8.    The States of Alabama, Colorado, Florida, Maryland, Massachusetts, Ohio, Rhode Island and Texas and other States provided Medicaid benefits to qualified recipients which included payment of claims for the prescription drugs, specified herein, manufactured by the DEFENDANTS and relied upon the false price representations made by the DEFENDANTS in approving and paying claims. A significant part (a minimun of

8

**CIVIL ACTION NO. 00 CV 10698 MLW**

50%) of said Medicaid reimbursement was paid from United States Government funds pursuant to 42 U.S.C. § 1396(b).

9.      The Relator, VEN-A-CARE, is a corporation organized under the laws of the State of Florida, with its principal offices in Key West, Florida. The Relator's principal officers and directors include Zachary T. Bentley and T. Mark Jones, who are each citizens of the United States and reside in Key West, Florida. The Relator is a pharmacy providing prescription drugs and is a Florida Medicaid pharmacy provider. The Relator has direct and independent knowledge of the information and is the "original source" of the information on which these allegations are based within the meaning of 31 U.S.C. §3730(e)(4)(A) and (B). The Relator has standing to bring this action pursuant to 31 U.S.C. §3730(b)(1). The information upon which these allegations are based was voluntarily provided by the Relator to the Federal Government beginning on or before November 1996 and thereafter has been frequently supplemented by the Relator.

10.     Ven-A-Care's principals were aware that Medicaid reimbursement for the drugs at issue was required by federal law to be based on an estimation of cost and not provide for windfall profits at the GOVERNMENTS' expense. Ven-A-Care attempted to alert the responsible state and federal government officials to the matters alleged herein; however, the government agencies lacked sufficient resources and expertise to adequately respond. Accordingly, the Relator commenced this action based upon its original source information.

9

**CIVIL ACTION NO. 00 CV 10698 MLW**

11.    DEFENDANT, ABBOTT LABORATORIES, INC. ("ABBOTT"), is a corporation organized under the laws of Delaware with its principal offices in Abbott Park, Illinois. At all times material to this civil action, ABBOTT has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

12.

13.

**CIVIL ACTION NO. 00 CV 10698 MLW**

14.     DEFENDANT, DEY, INC. f/k/a DEY LABORATORIES, INC. ("DEY"), is a corporation organized under the laws of Delaware with its principal offices in Napa, California. At all times material to this civil action, DEY has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

15.

16.     DEFENDANT, ROXANE LABORATORIES, INC. ("ROXANE"), is a corporation organized under the laws of Delaware with its principal offices in Columbus, Ohio, and a subsidiary of the Boehringer Ingelheim corporation. At all times material to this civil action, ROXANE has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its

11

**CIVIL ACTION NO. 00 CV 10698 MLW**

specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

17.



18.

19.     Any and all acts alleged herein to have been committed by any or all of the DEFENDANTS were committed by each Defendant's officers, directors, employees, or agents who at all times acted on behalf of their respective DEFENDANT.

### SECTION NO. 3
### JURISDICTION & VENUE

20.     Jurisdiction is founded upon the Federal False Claims Act (the "Act"), 31 U.S.C. §3729-32, specifically 31 U.S.C. §3732, and also 28 U.S.C. §§1331, 1345.

21.     The Federal False Claims Act reaches the type of fraudulent activity alleged herein in accordance with the express language of the Act as well as precedents arising from applications of the present Federal False Claims Act and earlier versions. See, United States v. Neifert-White Company, 390 U.S. 228, 88 S.Ct. 959 (1968). Specifically, the United States Supreme Court's application of the Act in Neifert-White applies to this case as follows:

A.     ". . . the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." Neifert-White, 88 S.Ct. at 961.

B.     The Act applies to the conduct of a manufacturer that supplies falsely inflated price information in support of a customer's claim. Neifert-White, 88 S.Ct. at 960.

13

CIVIL ACTION NO. 00 CV 10698 MLW

C.     The Act applies even where the price information supplied by the DEFENDANTS is inflated by only approximately 25% over the truthful price. Neifert-White, 88 S.Ct. at 960.

D.     The Act applies even if the DEFENDANTS did not submit the false price information directly to the Government and even though the DEFENDANTS received no payment of funds from the Government.

E.     The Act applies even though the inflated portion of the price was received by customers of the DEFENDANTS who are not parties to the case. Neifert-White, 88 S.Ct. at 960.

22.     Venue in the District of Massachusetts is appropriate under 31 U.S.C. §3732(a) and sufficient contacts exist for jurisdiction in that each of the DEFENDANTS transacted   business in the District of Massachusetts by selling directly or through wholesalers their specified prescription drugs in the District of Massachusetts which the respective DEFENDANTS knew would be supplied to Medicaid recipients and for which the DEFENDANTS knew that grossly excessive and unreasonable payments for claims would be made to the pharmacies by the States' Medicaid programs.

23.     A copy of the initial Complaint and this First Amended Complaint and written disclosure of substantially all material evidence and information VEN-A-CARE possesses were served on the Government pursuant to Rule 4(i)(1)(A) and (B), Fed.R.Civ.P., prior to the filing of the initial Complaint and this First Amended Complaint in camera and under seal by delivering a copy of the initial Complaint and this First Amended Complaint,

14

CIVIL ACTION NO. 00 CV 10698 MLW

material evidence and information to the United States Attorney for the District of Massachusetts and by sending a copy of the initial Complaint and this First Amended Complaint, material evidence and information by certified mail to the Attorney General of the United States at Washington, District of Columbia.

24. The Relator alleges: (A) that no allegation or transaction of defrauding the UNITED STATES was made prior to the filing of the Complaint in public disclosures regarding the subject matter herein against any of the DEFENDANTS; (B) that none of the DEFENDANTS was named in public disclosures made prior to the filing of the Complaint regarding the subject matter herein; and (C), if the Court makes a finding against the Relator as to the allegations set forth in (A) and/or (B), that the Relator has direct and independent knowledge of the information on which these allegations are based within the meaning of 31 U.S.C. §3730(e)(4)(A) and (B) and has voluntarily provided the information to the Government before filing the Complaint which is based on the information provided by the Relator to the Government and the Relator is the original source.

25. Federal Court jurisdiction also exists over this cause for reasons which include, but are not limited to, the following:

A) The Relator, due to its status as an industry insider, has acquired substantial information that is of significant value to the Government about the DEFENDANTS' false claims scheme and has provided said information to the Government in accordance with the False Claims Act.

15

B)     The Relator has expended substantial time, money and resources, and has incurred substantial financial and other risks in reviewing its own information and in acquiring, analyzing and disclosing to the Government its information about the DEFENDANTS' false claims scheme, prior to commencing this action.

C)     The remedies provided by the False Claims Act include, in part, an award to the Relator for providing to the Government the information about the DEFENDANTS' false claims scheme that is at issue in this action.  In order to secure redress of its right to such award, the Relator has complied with the requirements of the False Claims Act that it initiate this action under seal and disclose all its information to the Government.

D)     This False Claims Act case constitutes the only lawful mechanism whereby the Relator may receive redress in the form of compensation for providing information about the DEFENDANTS' false claims scheme  and for assisting the Government in recovering amounts paid, multiple damages and penalties.

E)     The False Claims Act provides a mechanism whereby the Relator may secure redress for its cause of action, to wit, its right to compensation for benefitting the Government through use of its information about the false claims scheme in the manner contemplated by the False Claims Act.

F)     The Relator is also entitled, under the False Claims Act, to litigate the Government's right to damages and penalties, arising from the false claims scheme and

16

CIVIL ACTION NO. 00 CV 10698 MLW

has a stake in the outcome in that the Relator is entitled by the False Claims Act to share in any recovery secured by or on behalf of the Government.

      G)    The DEFENDANTS each possess a substantial interest in disproving the Relator's allegations of violations of the False Claims Act and the Relator possesses a substantial interest in proving said allegations, as well as the investment of the Relator's time, costs and its overall compliance with the pre-filing and post filing procedural and jurisdictional provisions of the False Claims Act, because the determination of these issues under the False Claims Act will establish whether:

          (i)    The DEFENDANTS violated the federal False Claims Act;

          (ii)    The DEFENDANTS are liable for treble damages, penalties, costs, Relator's expenses and attorneys' fees.

          (iii)    The Relator is entitled to redress in the form of compensation for providing its information about the false claims scheme to the Government and for assisting the Government in the manner required by the False Claims Act;

          (iv)    The Relator is entitled to redress, on behalf of the Government, in the form of damages and penalties from the DEFENDANTS.

          (v)    The Relator is entitled to redress in the form of its Relator's share of the award of damages and penalties.

17

Case 1:01-cv-12257-BBS Document 4861 Filed 03/30/2007 Page 18 of 78

CIVIL ACTION NO. 00 CV 10698 MLW

(vi)    The Relator is entitled to redress in the form of compensation for its expenses, incurrence of risk, and investment of time and resources in acquiring and providing to the Government its information about the false claims scheme.

H)    In the event that the Government intervenes with respect to some or all of the Relator's allegations and claims, then the Relator is entitled to participate in the litigation to the extent and under the conditions specified in the False Claims Act and to further pursue redress in the form of its right to share in any award and receive compensation for its costs and expenses.

I)    In the event that the Government does not intervene with respect to some or all of the Relator's allegations and claims, then the Relator's causes of action alleged herein are directed at further redress in that only by prevailing in litigation based on its information about the false claims scheme will the Relator receive: redress in the form of deterrence of ongoing and future conduct injurious to the Relator; compensation for its information about the DEFENDANTS' false claims scheme; compensation for the assistance and benefit it provided to the Government; compensation for its expenses, risks and devotion of time and resources in acquiring and providing information to the Government; and compensation for establishing the DEFENDANTS' liability for damages and penalties.

## SECTION NO. 4
## BACKGROUND OF HOW UNITED STATES' MONIES
## ARE PAID FOR DRUG CLAIMS UNDER
## THE STATES' MEDICAID PROGRAMS

26. The UNITED STATES GOVERNMENT partially funds state sponsored medical assistance programs for the poor pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.

27. Benefits for prescription drugs are optional but all states have opted to provide Medicaid drug reimbursement coverage.

28. The federal portion of States' Medicaid payments, the Federal Medical Assistance Percentage ("FMAP") is based on a state's per capita income compared to the national average. The federal portion consists of a minimum of 50% up to a maximum of 83%. By way of example, the FMAP contributed by the UNITED STATES in 1995 was: Alabama 70.45%, Colorado 53.10%, Florida 56.28%, Maryland 50.0%, Massachusetts 50.0%, Ohio 60.69%, Rhode Island 55.49% and Texas 63.31%.

29. The States, United States Territories and the District of Columbia are required to implement a State Health Plan containing certain specified minimum criteria for coverage and payment of claims in order to qualify for federal funds for Medicaid expenditures. 42 U.S.C. §1396a(a)(30)(A).

30. State Health Plans must, in part, provide for payment of claims for prescription drugs pursuant to a formula approved by the Secretary of HHS which determines the maximum allowable claim amount for each drug manufactured by each manufacturer whose prescription drugs qualify for Medicaid reimbursement based upon

19

**CIVIL ACTION NO. 00 CV 10698 MLW**

an estimation of the pharmacy's acquisition cost of the drug plus a reasonable dispensing fee. 42 CFR 447.331.

     31.    Drug manufacturers, including the DEFENDANTS, the Medicare and the Medicaid Programs, drug price and cost reporting services, hospitals, pharmacies, physicians, wholesalers, third party payors (e.g. insurance companies), and others involved in the health care industry, communicate about prescription drug prices and costs by describing the price and cost with terms such as:

        a)    Average Wholesale Price ("AWP")

        b)    Wholesaler Acquisition Cost ("WAC")

        c)    List Price

        d)    Direct Price ("DP")

        e)    Wholesale Net Price

     32.    HCFA has approved state plans whose methodology formulae for arriving at a pharmacy's estimated acquisition cost as required by 42 CFR 447.331 includes:

        a.    discounting a percentage off of the AWP prices as computed by or collected by and published by First Data Bank ;

        b.    adding a percentage to the WAC prices as computed by or collected by and published by First Data Bank ; and,

        c.    requiring the drug companies, including the DEFENDANTS, to certify their prices directly in writing to the Texas Medicaid Vendor Drug Program.

CIVIL ACTION NO.  00 CV 10698 MLW

33.    The HCFA approved State plans for the WAC STATES at issue are:

|  | Drug | Dispensing Fee |
|---|---|---|
| Alabama | WAC+9.2% | $5.40 |
| Colorado | lesser of AWP-10% or WAC+18% | $4.08 |
| Florida | WAC+7% | $4.23 |
| Maryland | WAC+10% | $4.21 |
| Massachusetts | WAC+10% | $3.00 |
| Ohio | WAC+11% | $3.70 |
| Rhode Island and | WAC+5% | $2.85-$3.40 |
| Texas direct certification of price by the drug companies |  | $5.27 + 2% |

34.    The Texas Medicaid Program has gone to exceptional lengths to verify that drug manufacturers, including the DEFENDANTS, provide truthful price and cost information for reimbursement purposes. The Texas Medicaid authorities, acting pursuant to 25 Texas Administrative Code 35.801, required the DEFENDANTS to certify, in writing, the accuracy of their price and cost representations as a condition to their drugs being covered for reimbursement.  The Relator's investigation has revealed that each of the DEFENDANTS, when responding to Texas about their specified drugs, either affirmatively lied about their true prices, or omitted material information in order to mislead the Texas Medicaid officials.

35.    The State of Texas pays reimbursement for drugs covered by its Vendor Drug Program at the lesser of the provider's usual and customary charge or  Estimated

21

CIVIL ACTION NO. 00 CV 10698 MLW

Acquisition Cost ("EAC"). In Texas' Pharmacy Provider Handbook, EAC is defined as either the Wholesale Estimated Acquisition Cost ("WEAC") or the Direct Estimated Acquisition Cost ("DEAC"). WEAC is the estimated price paid by providers purchasing a drug from a wholesaler. DEAC is the estimated price paid by a provider purchasing the drug directly from the drug's manufacturer.

36.    The State of Texas required the DEFENDANTS to complete a specific form regarding the prices of their drugs. Immediately before the required signature by the DEFENDANTS' representatives is the following language:

> I hereby certify that the information submitted is correct to the best of my knowledge . . . I also agree to inform the Texas Department of Health of any changes in . . . price . . . within fifteen (15) days of such change.

Attached hereto as **Exhibit "1"** is a true and correct copy of the current certification used by the Texas Medicaid Vendor Drug Program.

37.    The Food and Drug Administration ("FDA") assigns National Drug Codes, ( "NDC") numbers to identify each individual manufacturer and its drugs' strengths and sizes. NDC numbers are eleven digits, with the first five digits identifying the manufacturer or labeler, the next four digits identifying the product and the last two digits identifying the package size.

38.    First Data Bank ("FDB") is a nationally recognized company that specializes in collecting and publishing drug data including pricing. FDB provides prices and costs for approximately 80,000 different drugs, sizes and strengths expressed in terms of AWP and WAC through an electronic or automated service. More than 90% of the States' Medicaid

22

CIVIL ACTION NO. 00 CV 10698 MLW

Pharmacy Programs utilized the AWPs and WACs as communicated by First Data Bank's automated services in determining reimbursement amounts for Medicaid prescription drug claims.

39.    Pharmacies are required to utilize the FDA's NDC numbers when submitting claims for reimbursement for drugs to the States' Medicaid programs.

40.    Congress has attempted to assist the States' Medicaid programs in limiting reimbursement amounts for certain generic prescription drugs to a reasonable estimate of acquisition cost by empowering the Health Care Financing Administration to set a Federal Upper Limit ("FUL") for drugs paid for by the Medicaid Programs. Under the plan, HCFA may impose a FUL on any generic drug if:

      a.    All formulations of the drug have been evaluated as therapeutically equivalent by the FDA;

      b.    At least three (3) companies list their drugs in current published compendia with their cost; and

      c.    If the above criteria are met, the drugs are available for sale nationally.

41.    HCFA then finds the least costly generic as listed in all available national compendia that can be purchased by pharmacies and multiplies this amount by 150%. The product then becomes the FUL for all manufacturers' generic form of the drug or the maximum amount a State Medicaid Program can pay.

42.    Pharmacies are reimbursed for prescription drugs by the States' Medicaid Programs at the lower of :

23

CIVIL ACTION NO.  00 CV 10698 MLW

    i)      the State's HCFA approved plan (i.e. Massachusetts' WAC+ 10%);

    ii)     the pharmacies usual and customary charges to the general public ;

or,

    iii)    the Federal Upper Limit ("FUL") plus a reasonable professional or dispensing fee.

43.    The vast majority of States award cost-reimbursement contracts to private companies to evaluate and process Medicaid recipients' claims for payment.  The States refer to these contractors as fiscal agents.

44.    Prescription drug claims are submitted in one of two ways.  The first is by submitting to the fiscal agent or state agency a completed (hard copy) pharmacy claim form.  The second is through an electronic claims filing procedure (on-line claims adjudication) whereby the same information required to be included on the hard copy is transmitted electronically to the Medicaid fiscal agent or state agency.

45.    The majority of the DEFENDANTS' drugs, including the specified drugs at issue in this action, are distributed through drug wholesalers who resell and distribute the drugs to hospitals, pharmacies, physicians and clinics.

46.    Four companies, McKesson Drug, Cardinal, Bergen Brunswig and Ameri-Source, comprise approximately eighty (80%) of the 53 billion dollar annual wholesale drug market. Wholesalers generally sell to any  person or entity  (i.e. pharmacies, physicians and hospitals) who can lawfully purchase prescription drugs.

CIVIL ACTION NO. 00 CV 10698 MLW

47.     Wholesalers purchase the specified drugs at prices that are unilaterally set and controlled by the DEFENDANTS.   The wholesalers in turn add a percentage (commonly referred to as an "up-charge") to the price that they pay the DEFENDANTS. The "up-charge" covers the wholesaler's expenses such as warehousing, delivery, billing and collections and provides a profit.  The percentage of up-charge is negotiated between the pharmacy and the wholesaler and is usually based on the pharmacy's purchasing volume.  By way of example, the Relator's up-charge from McKesson is 6.5%.

48.     The DEFENDANTS also sell directly and indirectly to hospitals and retail pharmacies through group purchasing organizations ("GPO's") and buying groups. GPO's and buying groups represent smaller providers and provide members with lower costs by negotiating prices for specific drugs from the manufacturers.  The GPO or buying group member is able to purchase the drugs at the GPO's or buying group's negotiated price either directly from the manufacturer or from a wholesaler that has a "charge-back" agreement with the specific manufacturer.

49.     The DEFENDANTS' "charge-back" arrangements with wholesalers allows the DEFENDANTS to sell drugs, including some of the drugs at issue in this case, to the wholesalers at a fictitiously inflated price.  When a wholesaler sells a drug, the price of which has been negotiated with a GPO or buying group, the wholesaler is credited by the DEFENDANT for the difference between the false price and the true price to the DEFENDANTS' customer plus the agreed "up charge" for the wholesaler.   The

25

DEFENDANTS' exploitation of the "charge-back" scheme allows the DEFENDANTS to control prices charged by wholesalers while fictitiously reporting inflated wholesaler cost.

50.     The "charge-back" scheme is illustrated by the following example of the drug, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ manufactured by DEFENDANT ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and wholesaled through McKesson Drug Co. ("McKesson"):

a)      McKesson's March 2000 published wholesale price for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is $29.48;

b)      Ven-A-Care is a member of the Servall buying group.  Servall is a McKesson sponsored buying group that is available to any retail pharmacy that purchases prescription drugs from McKesson;

c)      Ven-A-Care's Servall buying group's price for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, is $7.93.  Therefore, VAC can purchase a bottle of ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ from McKesson for $8.45 which includes McKesson's 6.5% up-charge to Ven-A- Care.  This is $21.03 less than McKesson purportedly paid DEFENDANT ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

d)      McKesson claims a "charge-back" from DEFENDANT ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ of $21.55 which represents the difference in price from what McKesson paid ($29.48) versus the price McKesson sold it to VAC ($7.93), not including McKesson's up-charge.

51.    In order to monitor the wholesalers' compliance, the DEFENDANTS require all drug wholesalers to periodically (generally quarterly) report back to the DEFENDANTS all prescription drug sales by NDC number, provider name and sales price.

52.    A representative example of this practice was demonstrated when VAC was informed by a            sales representative that            and other drug manufacturers consider this information vital in determining how and where to market their prescription drugs. The            representative informed VAC that            prepared reports for every sales representative based on the information compiled from all wholesalers' reports and that the            report was broken down by postal zip code, provider, NDC number, quantity and sales prices.

53.    First Data Bank receives and relies upon the drug manufacturers', including the DEFENDANTS', representations of their drug prices and costs including the prices at which the DEFENDANTS sell their drugs to wholesalers (WAC) in determining the drug pricing data that they report to the States.

54.    The Relator's investigation has determined that the DEFENDANTS provide First Data Bank with either the WAC price of its drugs or instructions, if necessary, expressed in a manner that allows First Data Bank to establish the WAC.

55.    During the time covered by this complaint, First Data Bank has defined WAC as "wholesaler acquisition cost" for a particular drug. A form entitled "New Product Submission Form" is provided by First Data Bank to drug manufacturers, including the DEFENDANTS, to transmit information, including their prices, to First Data Bank. The

27

CIVIL ACTION NO. **00 CV 10698 MLW**

form permits drug manufacturers to submit prices expressed in terms of Wholesale (Distributor) Price, Direct Price and AWP Price. Attached hereto is true and exact copy of said form as **Exhibit "2"**.

56.     The Relator's information revealed that each of the DEFENDANTS had been the source of the price and cost information which was reported by First Data Bank to the States' Medicaid Programs at all times at issue in this action. The Relator reported its information to the Government, including specific identification of representatives of First Data Bank to whom such information was reported.

57.     The States' Medicaid Programs also receive price and cost representations directly from the DEFENDANTS and use them to confirm the accuracy of price and cost in computing reimbursement amounts. Attached hereto as Composite **Exhibit "3"** are true and correct copies of price representations made by DEFENDANTS            and ROXANE to the State of Florida Medicaid Pharmacy Program on or about December 20, 1994 and September 26, 1994. Attached hereto as **Exhibit "4"** is a true and correct copy of price representations provided to Texas Medicaid by DEFENDANT            on or about March 6, 1997.

58.     The importance that drug manufacturers represent truthful costs and prices and how these representations affect reimbursements is demonstrated by the following examples:

CIVIL ACTION NO. 00 CV 10698 MLW



| DRUG STRENGTH & SIZE, NDC# | ROXANE'S REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| MARINOL 5mg. 100's 00054-2602-25 | $505.66 | $539.48 | $541.06 | $1.60 or (under 1/2 %) |



Case 1:01-cv-12257-PBS Document 4861 Filed 03/30/2007 Page 31 of 78

CIVIL ACTION NO. 00 CV 10698 MLW

59.     The representations of drug prices made by the DEFENDANTS to First Data Bank and directly to the States' Medicaid Programs are material for the establishment of reasonable reimbursements to be made by the States' Medicaid Programs.

## SECTION NO. 5
## THE FALSE CLAIMS SCHEME

### a.     A description of the False Claims Scheme.

60.     The DEFENDANTS are each liable under the False Claims Act because they caused the States' Medicaid Programs to pay claims for certain of their generic prescription drugs in exorbitant amounts, far in excess of the reasonable reimbursement permitted under the applicable statutes and regulations.     The DEFENDANTS manufactured and/or distributed the specified prescription drugs in this action and sold the specified prescription drugs either directly to the pharmacies or indirectly through such intermediaries as wholesalers and group purchasing organizations.  The false claims for excessive reimbursement were then submitted to the States' Medicaid Programs by the DEFENDANTS through their false price statements and by their customers (the pharmacies) who thereby received a windfall financial benefit in the amount by which the Governments' approved "reimbursement" exceeded a reasonable estimate of acquisition cost.

61.     The DEFENDANTS also caused the submission of false claims by actively marketing their specified drugs to pharmacies by the use of financial inducements created by " the Spread"  between the DEFENDANTS' true wholesaler prices to the pharmacies

30

Case 1:01-cv-12257-PBS Document 4861 Filed 03/30/2007 Page 32 of 78

CIVIL ACTION NO. 00 CV 10698 MLW

and the States' Medicaid Programs reimbursements based on the DEFENDANTS' falsely inflated wholesaler prices reported to the States' Medicaid Programs and their subcontractors. The financial inducements were in many cases enhanced by such things as free goods, discounts, and rebates.

62.     The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the specified drugs if it were disclosed to the States' Medicaid Programs that said claims were for amounts that included illegal remuneration prohibited by the anti-kick back statutes, 42 U.S.C. §1320a-7b(b)(2) and 1395nn(a)(1)(B).

63.     The DEFENDANTS also knew that pharmacies, in presenting claims for the specified drugs to the States' Medicaid Programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2) and 1395 nn(a)(1)(B).

64.     The claims in question are each false claims under the False Claims Act, in part, because they were each supported by and the payment amount determined due to the false and misleading price and cost information provided by the DEFENDANTS for the Government's use in connection with their respective specified drugs. The false and misleading representations of wholesaler prices by the DEFENDANTS were material in that the information was used in setting the States' Medicaid reimbursement amounts. Each DEFENDANT acted knowingly, as defined in the False Claims Act, in providing the false and misleading representations of wholesaler prices that caused the States to pay claims for the DEFENDANTS' drugs in excessive amounts. The wholesaler prices

31

Case 1:07-cv-22757-PBS Document 4861 Filed 03/30/2007 Page 33 of 78

CIVIL ACTION NO. 00 CV 10698 MLW

provided by the DEFENDANTS were provided to cause the States' Medicaid Programs to pay amounts based on the information and thus constituted claims submitted to the Government.

65.     False claims at issue in this action were also submitted to the States' Medicaid Programs by or on behalf of the pharmacies that sought and received payment in excessive amounts because of the false wholesaler price representations made by the DEFENDANTS directly or indirectly to the States' Medicaid Programs. The specific false claims are thus each and every claim submitted to the States' Medicaid Programs for which the payment amount was determined by use, in whole or to any degree, of the false and misleading price representations of the DEFENDANTS. The false claims at issue number in the tens of thousands and each claim is in the possession of the individual state's Medicaid Program or fiscal agent to which it was submitted. The Relator has identified the specific false claims to the UNITED STATES by providing the truthful prices concealed from the States by the DEFENDANTS for each drug, providing information about the DEFENDANTS' exploitation of the States' Medicaid Programs through the use of financial inducements for the specified drugs, specific identification information about the prescription drugs, and the specific false price representations at issue in this case.

66.     The damages sought herein include, but are not limited to, those arising from the false claims for the specified drugs set out in Sections 6 through 12 and elsewhere throughout this Complaint. The false claims for the specified drugs set out herein are alleged to meet the specificity and particularity requirements for pleading under the Federal

32

CIVIL ACTION NO. 00 CV 10698 MLW

Rules of Civil Procedure. The damages sought herein encompass all damages and penalties recoverable due to the false claim scheme of the DEFENDANTS alleged herein relating to all drugs of all sizes about which false price and cost representations or records were used in connection with, considered or made available in, caused, aided or otherwise affected the presentment, payment or approval of false claims. These claims also encompass recovery of the funds paid for false claims due to the DEFENDANTS' false drug price and cost representations, regardless of the Government program that actually expended the funds, the person or entity that ultimately received the funds or the person or entity from which the UNITED STATES ultimately recovers the funds.

    **b. The DEFENDANTS each acted knowingly.**

  67. The DEFENDANTS are prohibited by the False Claims Act from making false representations in connection with claims for Government funds, are required by the Food and Drug Act to report true prices and are prohibited by the Medicare and Medicaid Anti-Kickback laws from arranging financial inducements for providers.

  68. The patients and the States' Medicaid Programs were not aware of the prices actually paid for the specified drugs by the pharmacies presenting the claims for payment. The DEFENDANTS concealed from the States' Medicaid Programs price reductions occurring due to competition in the marketplace and falsely or fraudulently represented drug prices that far exceeded the truthful prices.

  69. At all times material to this action, each of the DEFENDANTS acted "knowingly" as that term is defined at 31 U.S.C. §3729(b) by:

33

CIVIL ACTION NO. 00 CV 10698 MLW

a)    Causing the presentation of false or fraudulent claims for payment or approval by the States' Medicaid programs, and

b)    Making or using false statements or records for the purpose of getting false or fraudulent claims approved or paid by the States' Medicaid programs.

70.    The DEFENDANTS were clearly placed on notice that their conduct would cause the States' Medicaid programs to pay claims for the specified drugs in amounts exceeding that permitted by applicable law, in part, because:

a)    Each of the DEFENDANTS was on notice of federal statutes and regulations limiting payment of Medicaid claims for the specified drugs to an amount necessary to cover the cost of the drug.

b)    Each of the DEFENDANTS was on notice that the States' Medicaid programs were not authorized or permitted by applicable law to pay claims for the specified drugs in excessive amounts.

c)    Each of the DEFENDANTS was on notice that federal statutes and regulations prohibited them from making misleading representations about the specified drugs, including misleading price or cost representations.

71.    Each of the DEFENDANTS was on notice that federal statutes and regulations governing food and drugs  prohibited them from making misleading representations about the specified drugs, including misleading price or cost representations, in part, because:

34

a) Each of the DEFENDANTS is required to comply with the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301 et. seq., and the regulations promulgated pursuant thereto.

b) The price and cost representations about the specified drugs constitute advertising that is included in the "labeling" provisions of the Federal Food, Drug and Cosmetic Act and related regulations. 21 U.S.C. §§321; 352.

c) Each of the DEFENDANTS is prohibited from disseminating any information about their prices or costs of the specified drugs that is "false or misleading in any particular . . ." 21 U.S.C. §§352(a).

d) Each of the DEFENDANTS was on notice that it possessed a duty to assure that representations about prices and costs of the specified drugs were not misleading, taking into account:

> " . . . not only representations made or suggested by statement, word, design, device, or any combination thereof, but also to the extent to which the labeling or advertising fails to reveal facts material in light of such representations"

21 U.S.C. §321(a) .

e) The DEFENDANTS can and do make truthful representations of wholesaler prices for most of their other drugs.

72. Each DEFENDANT was on notice that it was prohibited by federal statutes from paying or causing the payment of, directly or indirectly, money or other financial benefit to induce its customers to order the specified drugs when the Medicare or States' Medicaid Programs would be paying claims. 42 U.S.C. §1320a-7b(b)(2) and 42 U.S.C. §1395nn(a)(1)(B).

73.    Notwithstanding the DEFENDANTS' knowledge that the Government relied upon the DEFENDANTS' representations of price and cost and their knowledge of the applicable statutory requirements and prohibitions, each of the DEFENDANTS repeatedly, systematically and falsely reported inflated wholesaler prices as specified in Sections 6 through 12.

### c.    The DEFENDANTS directly benefitted through increased sales.

74.    The DEFENDANTS benefitted directly from their false pricing scheme by maximizing their products' sales volume while capturing market share. An example of how the DEFENDANTS directly benefit from their false pricing scheme is demonstrated by data for the first quarter of 1997 from the State of Florida's Medicaid Program setting out Florida Medicaid's reimbursements paid to pharmacies for the drug Albuterol Sulfate, 0.083% Solution ("Albuterol"), by DEFENDANTS DEY and ▓▓▓▓▓▓ and their competing manufacturers ▓▓▓▓▓▓▓▓▓▓.

75.    Albuterol is a prescription drug which is administered by inhalation and is used for the treatment of many respiratory illnesses. First quarter, 1997, reimbursement data from the State of Florida's Medicaid Program demonstrates that the wider "the Spread" between the true cost paid by providers versus the reimbursement paid by Medicaid the more a specific manufacturer's product will be utilized instead of a competitor's product. The DEFENDANTS ▓▓▓▓▓▓ and DEY and the pharmaceutical manufacturers ▓▓▓▓▓▓▓▓▓▓, have all made representations of Wholesaler Acquisition Cost to the State of Florida as set out in the chart below. As a direct result of the false representations of prices and costs, the DEFENDANTS ▓▓▓▓▓▓ and DEY caused the State of Florida's Medicaid Program to unwittingly pay more than one million

CIVIL ACTION NO. 00 CV 10698 MLW

dollars for the first quarter of 1997 over the reasonable reimbursement amounts which the State intended to pay. The chart further sets out the number of reimbursed claims, VEN-A-CARE's cost per ml and "the Spread" between Medicaid reimbursement and true cost. A review of the chart clearly demonstrates that the vast majority of providers utilize the manufacturer's pharmaceutical with the greatest "Spread" between the true Wholesaler Acquisition Cost and the inflated false Wholesaler Acquisition Cost reported by the pharmaceutical manufacturer.

### FALSE PRICING SCHEME - "THE SPREAD"

### FLORIDA MEDICAID REIMBURSEMENT (1st Quarter 1997)
### ALBUTEROL SULFATE SOLUTION 0.083%

| Manufacturer | VAC's Cost per ml | Florida Medicaid Reimbursement per ml | The Spread | # of claims | Reimbursement paid by Florida Medicaid |
|---|---|---|---|---|---|
| | | | | | |
| Dey | $0.10 | $0.3531 | $0.2531 | 9,792 | $707,220.50 |
| | | | | | |
| TOTAL REIMBURSEMENT BY THE STATE OF FLORIDA MEDICAID PROGRAM (January 1 through March 31, 1997) | | | | | $1,477,075.86 |
| ** | The affect on the Medicaid Program of the use of the spread to falsify claims is evidenced by the fact that ▮▮▮▮▮ and DEY's customers will receive a greater windfall profit by buying DEY's or ▮▮▮▮▮ product than the customers could receive if ▮▮▮▮▮▮▮▮ gave the same product to them free of charge. | | | | | |

37

CIVIL ACTION NO. 00 CV 10698 MLW

76.    The grossly inflated payments unwittingly made by the States' Medicaid Programs not only served as an inducement to providers to purchase a particular manufacturer's product but also served to drive over-utilization. The Relator, prior to filing the Complaint, surveyed three national pharmacy providers of Albuterol to determine their business practices for their sales of Albuterol to the Medicare and States' Medicaid Programs. The Relator's principals used positions in an affiliated home health care company to pose as an interested customer. The Relator determined that the payment of kickbacks and/or split fees were common place between the pharmacies and home health care companies who could provide the pharmacies with patient referrals. One marketing scheme offered by one of the pharmacies was the automatic shipping of refills of Albuterol every month without verifying continuing need with the patient or physician in order to maximize the sales of Albuterol and reimbursement.

><blockquote>

**d.    The DEFENDANTS' False Claim Scheme deprived the Government of the protection of The Federal Upper Limits ("FUL").**
</blockquote>

77.    A representative example of the DEFENDANTS' efforts to deprive the Government of the benefit of the Federal Upper Limit involves the drug ▮▮▮▮. In a letter dated November 7, 1996, DEFENDANT ▮▮▮▮▮▮▮▮▮▮▮ made false price representations about the company's drug Atenolol to the State of Florida Medicaid Agency (Attached hereto as **Exhibit "5"** is a true and correct copy of said letter). Application of Florida's methodology of WAC plus 7%, to the prices represented by DEFENDANT ▮▮▮▮▮▮▮▮▮ would have resulted in reimbursement for one hundred (100) 50mg tablets, ▮▮▮▮▮▮▮▮▮▮▮▮▮, of $59.65 (WAC = $55.75 + 7% = $59.65), plus the professional dispensing fee. However,

CIVIL ACTION NO. 00 CV 10698 MLW

█████ falls under the FUL program and its reimbursement was limited as of January, 1997, to $0.0464 per 50mg tablet or $4.64 per one hundred (100) 50mg tablets.

78. After having been alerted to the false claim scheme by the Relator, representatives of the State of Florida's Medicaid Program refused to cover DEFENDANT ████████████████████████████ until such time as the State received from DEFENDANT ████████████████ what the State considered to be DEFENDANT ████████████████ truthful prices for █████. The fact that Florida was not covering DEFENDANT ████████████████ led to complaints to DEFENDANT ████████████████ from pharmacies in Florida who had dispensed DEFENDANT ████████████████ to Florida Medicaid recipients and who were receiving denials for payment by Unisys, the State's fiscal agent.

79. Approximately one month later, a State of Florida official received a telephone call from a person who stated he represented DEFENDANT ████████████████ and requested immediate coverage of █████. The Florida Medicaid official stated she would not cover the drug unless she received truthful prices. The person who represented DEFENDANT ████████████████ stated words to the effect, "What does it matter? This drug is covered by the FUL program". The Florida official stated that it did matter as it could affect not only the reimbursement amount the State paid for █████ but also, if all manufacturers followed DEFENDANT ████████████████ course and conduct of making false pricing representations, it would cause the entire FUL program to be set at inflated

CIVIL ACTION NO. 00 CV 10698 MLW

amounts and completely frustrate the Government policy implemented by the FUL program.

80.     Only when it became clear to DEFENDANT ███████████ ██████████ representative that the Florida official was standing her ground, did DEFENDANT ███████████████ provide a written disclosure dated December 5, 1996, of the truthful prices, (Attached hereto as Exhibit "6" is a true and exact copy of said letter). Applying Florida's Medicaid reimbursement methodology to DEFENDANT ███████████ truthful prices, the State pays $4.24 for one hundred (100) 50mg ██████ tablets (WAC $3.96 + 7% = $4.24). The truthful prices saved the U.S. Government and the State of Florida $0.40 for each one hundred 50mg tablets.

81.     The persistence of the Florida Medicaid representatives curtailed DEFENDANT ███████████████ from circumventing the protections of the FUL program and caused DEFENDANT ███████████████ to report a truthful WAC to First Data Bank. The following table summarizes the above allegations:



82.     The following Table illustrates reimbursements and the corresponding harm caused to the States' Medicaid programs as a result of DEFENDANT ███████████ false representations of wholesaler prices for other drugs covered by the FUL program.

40

CIVIL ACTION NO. 00 CV 10698 MLW



### SECTION NO. 6
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### ABBOTT

83.    At various times from on or after April 7, 1994, and continuing through the

present date, DEFENDANT ABBOTT knowingly caused the States' Medicaid programs to

pay false or fraudulent claims for drugs specified in this Section and further made or used

41

false or fraudulent records and/or statements to get such claims paid or approved. As a result of the actions of DEFENDANT ABBOTT and those persons and entities acting directly or indirectly in concert with DEFENDANT ABBOTT, the States' Medicaid Programs paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section. The acts committed by DEFENDANT ABBOTT that caused the States' Medicaid Programs to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about the wholesaler prices of the drugs specified in this Section which DEFENDANT ABBOTT knew would be relied upon by the States' Medicaid Programs in paying or approving claims for the drugs specified in this Section. Each of said representations were material and were relied upon by the States' Medicaid Programs in paying or approving claims for the drugs specified in this Section.

84.    DEFENDANT ABBOTT knowingly caused its false or fraudulent wholesaler price representations to be transmitted by First Data Bank's automated services, made or used false records or statements regarding its wholesaler prices of the drugs specified in this section and submitted them to the States' Medicaid Programs continuously throughout the years specified in this section. Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services. The information in the table under the heading "ABBOTT'S False Reported WAC" reflects DEFENDANT ABBOTT'S false representations of price it charged wholesalers for drugs. The heading "Relator's Cost" reflects the true price that DEFENDANT ABBOTT charged the Relator for the drug or caused another entity to charge the Relator for the drug.

CIVIL ACTION NO.  00 CV 10698 MLW

| DRUG STRENGTH & SIZE, NDC#s | ABBOTT'S FALSE REPORTED WAC | RELATOR'S COST (in or about January 2001) |
|---|---|---|
| Erythromycin Base 250 mg Tab 100's 00074-6326-13 | $11.16 | $7.40 |
| Erythromycin Base 250 mg Tab 500's 00074-6326-53 | $56.19 | $35.89 |
| Erythromycin Stearate 250 mg Tab 100's 00074-6346-20 | $11.00 | $7.86 |
| Erythromycin Stearate 250 mg Tab 500's 00074-6346-53 | $52.25 | $38.18 |
| Erythromycin Stearate 500 mg Tab 100's 00074-6316-13 | $19.88 | $15.30 |
| Erythromycin Stearate UD 250 mg Tab 100's 00074-6346-38 | $14.28 | $10.03 |
| ERY-TAB E/C 250 mg, 30's 00074-6304-30 | $6.36 | $2.76 |
| ERY-TAB E/C 250 mg, 100's 00074-6304-13 | $21.31 | $7.72 |
| ERY-TAB E/C UD 250 mg, 100's 00074-6304-11 | $23.20 | $9.90 |
| E.E.S. 200 Susp. 100 ml 00074-6306-13 | $3.82 | $3.45 |

CIVIL ACTION NO. 00 CV 10698 MLW

| DRUG STRENGTH & SIZE, NDC#s | ABBOTT'S FALSE REPORTED WAC | RELATOR'S COST (in or about January 2001) |
|---|---|---|
| ERY E-Succ/Sulfisoxazole 200 mg, 100 ml 00074-7156-13 | $10.21 | $4.21 |
| ERY E-Succ/Sulfisoxazole 200 mg, 150 ml 00074-7156-43 | $15.31 | $6.32 |
| ERY E-Succ/Sulfisoxazole 200 mg 200 ml 00074-7156-53 | $19.86 | $8.42 |

85.     The false price and cost representations, as they were submitted to the State of Texas on or after April 7, 1994, are organized in a chart within this paragraph by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"), "Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit."   The amount under the heading "Relator's Cost" is the true price that DEFENDANT ABBOTT charged the Relator for the drug or caused another entity to charge the Relator for the drug.  A comparison of the Relator's cost with DEFENDANT ABBOTT'S price representations shows the falsity of DEFENDANT ABBOTT'S price representations for the specified drugs.  Furthermore, the table shows the materiality of DEFENDANT ABBOTT'S false statements because it shows health care providers made a profit for prescribing DEFENDANT ABBOTT'S drugs.  Texas Medicaid, which intended to pay for drugs based upon estimated acquisition costs, never intended to pay the amounts under the heading "Gross Profit."

44

CIVIL ACTION NO. 00 CV 10698 MLW

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC / DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ / DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % / DEAC Provider's Gross Profit % |
| Erythromycin Base 250 mg Tab 100's | 00074-6326-13 | $12.46 / $12.45 | $7.40 | $5.06 / $5.05 | 41% / 41% |
| Erythromycin Base 250 mg Tab 500's | 00074-6326-53 | $59.705 / $59.15 | $35.89 | $23.815 / $23.26 | 40% / 39% |
| Erythromycin Stearate 250 mg Tab 100's | 00074-6346-20 | $12.98 / $12.28 | $7.86 | $5.12 / $4.42 | 39% / 36% |
| Erythromycin Stearate 250 mg Tab 500's | 00074-6346-53 | $61.665 / $58.35 | $38.18 | $23.485 / $20.17 | 38% / 35% |
| Erythromycin Stearate 500 mg Tab 100's | 00074-6316-13 | $24.42 / $22.19 | $15.30 | $9.12 / $6.89 | 37% / 31% |
| ERY-TAB E/C 250 mg, 100's | 00074-6304-13 | $ / $21.20 | $7.72 | $ / $13.48 | % / 64% |
| ERY E-Succ/ Sulfisoxazole 200 mg, 100 ml | 00074-7156-13 | $ / $10.75 | $4.21 | $ / $6.54 | % / 61% |

CIVIL ACTION NO. 00 CV 10698 MLW

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<hr>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<hr>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<hr>DEAC Provider's Gross Profit % |
| ERY E-Succ/ Sulfisoxazole 200 mg, 150 ml | 00074-7156-43 | $_____<hr>$15.90 | $6.32 | $_____<hr>$9.58 | %_____<hr>60% |
| ERY E-Succ/ Sulfisoxazole 200 mg 200 ml | 00074-7156-53 | $_____<hr>$20.90 | $8.42 | $_____<hr>$12.48 | %_____<hr>60% |

86.    As a direct and proximate result of the actions of the DEFENDANT ABBOTT alleged herein, the UNITED STATES has sustained damages recoverable under the False Claims Act, together with treble damages, penalties, attorneys' fees and costs.

SECTION NO. 7


87.





CIVIL ACTION NO. 00 CV 10698 MLW



90.

## SECTION NO. 8
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT DEY

91.    At various times from on or after April 7, 1994, and continuing through the

present date, DEFENDANT DEY knowingly caused the States' Medicaid programs to pay

false or fraudulent claims for drugs specified in this Section and further made or used false

or fraudulent records and/or statements to get such claims paid or approved.  As a result

CIVIL ACTION NO. 00 CV 10698 MLW

of the actions of DEFENDANT DEY and those persons and entities acting directly or indirectly in concert with DEFENDANT DEY, the States' Medicaid Programs paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section. The acts committed by DEFENDANT DEY that caused the States' Medicaid Programs to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about the wholesaler prices of the drugs specified in this Section which DEFENDANT DEY knew would be relied upon by the States' Medicaid Programs in paying or approving claims for the drugs specified in this Section. Each of said representations were material and were relied upon by the States' Medicaid Programs in paying or approving claims for the drugs specified in this Section.

92. DEFENDANT DEY knowingly caused its false or fraudulent wholesaler price representations to be transmitted by First Data Bank's automated services made or used false records or statements regarding its wholesaler prices of the drugs specified in this section and submitted them to the States' Medicaid Programs continuously throughout the years specified in this section. Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services. The information in the table under the heading "DEY'S Reported False WACs" reflects DEFENDANT DEY'S false representations of price it charged wholesalers for drugs. The heading "Relator's Cost" reflects the true price that DEFENDANT DEY charged the Relator for the drug or caused another entity to charge the Relator for the drug.

52

CIVIL ACTION NO. 00 CV 10698 MLW

| DRUG STRENGTH & SIZE, NDC#s | DEY's REPORTED FALSE WACs | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| ALBUTEROL INHALATION AEROSOL 17 gm 49502-0303-17 | $5.99 | $2.90 |
| ALBUTEROL INHALATION AEROSOL (refill) 17 gm 49502-0303-27 | $5.74 | $2.99 |

93.    The false price and cost representations, as they were submitted to the State of Texas on or after April 7, 1994, are organized in a chart within this paragraph by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"), "Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit."   The amount under the heading "Relator's Cost" is the true price that DEFENDANT DEY charged the Relator for the drug or caused another entity to charge the Relator for the drug.  A comparison of the Relator's cost with DEFENDANT DEY'S price representations shows the falsity of DEFENDANT DEY'S price representations for the specified drugs.  Furthermore, the table shows the materiality of DEFENDANT DEY'S false statements because it shows health care providers made a profit for prescribing DEFENDANT DEY'S drugs. Texas Medicaid, which intended to pay for drugs based upon estimated acquisition costs, never intended to pay the amounts under the heading "Gross Profit."

CIVIL ACTION NO. 00 CV 10698 MLW

| DEFENDANT DEY | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC / DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $ / DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % / DEAC Provider's Gross Profit % |
| Albuterol 17 gm | 49502-0303-17 | $0.39520/gm $6.71 / $0.352940/gm $5.99 | $2.90 | $3.81 / $3.09 | 57% / 52% |
| Albuterol refill | 49502-0303-27 | $0.378810/gm $6.44 / $0.338230/gm $5.75 | $2.99 | $3.45 / $2.76 | 54% / 48% |

94.    As a direct and proximate result of the actions of the DEFENDANT DEY

alleged herein, the UNITED STATES has sustained damages recoverable under the False

Claims Act, together with treble damages, penalties, attorneys' fees and costs.

### SECTION NO. 9

95.



PAGES 55 THROUGH 113

HAVE BEEN
COMPLETELY REDACTED

CIVIL ACTION NO. 00 CV 10698 MLW



99.

## SECTION NO. 10
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT ROXANE

100. At various times from on or after April 7, 1994, and continuing through the present date, DEFENDANT ROXANE knowingly caused the States' Medicaid programs to pay false or fraudulent claims for drugs specified in this Section and further made or used false or fraudulent records and/or statements to get such claims paid or approved. As a result of the actions of DEFENDANT ROXANE and those persons and entities acting directly or indirectly in concert with DEFENDANT ROXANE, the States' Medicaid Programs paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section. The acts committed by DEFENDANT ROXANE that caused the States' Medicaid Programs to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about the wholesaler prices of the drugs specified in this Section which DEFENDANT ROXANE knew would be relied upon by the States' Medicaid Programs in paying or approving claims

**CIVIL ACTION NO. 00 CV 10698 MLW**

for the drugs specified in this Section. Each of said representations were material and were relied upon by the States' Medicaid Programs in paying or approving claims for the drugs specified in this Section.

101.   DEFENDANT ROXANE knowingly caused its false or fraudulent wholesaler price representations to be transmitted by First Data Bank's automated services, made or used false records or statements regarding its wholesaler prices of the drugs specified in this section and submitted them to the States' Medicaid Programs continuously throughout the years specified in this section. Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services. The information in the table under the heading "ROXANE'S Reported False WACs" reflects DEFENDANT ROXANE'S false representations of price it charged wholesalers for drugs.   The heading "Relator's Cost" reflects the true price that DEFENDANT ROXANE charged the Relator for the drug or caused another entity to charge the Relator for the drug.

| DRUG STRENGTH & SIZE, NDC#s | ROXANE'S REPORTED FALSE WACs | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| IPRATROPIUM BROMIDE 2.5ml 25's 00054-8402-11 | $15.45 | $12.95 |

102.   The false price and cost representations, as they were submitted to the State of Texas on or after April 7, 1994, are organized in a chart within this paragraph by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"), "Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit." The amount under the heading

115

CIVIL ACTION NO. 00 CV 10698 MLW

"Relator's Cost" is the true price that DEFENDANT ROXANE charged the Relator for the drug or caused another entity to charge the Relator for the drug. A comparison of the Relator's cost with DEFENDANT ROXANE'S price representations shows the falsity of DEFENDANT ROXANE'S price representations for the specified drugs. Furthermore, the table shows the materiality of DEFENDANT ROXANE'S false statements because it shows health care providers made a profit for prescribing DEFENDANT ROXANE'S drugs. Texas Medicaid, which intended to pay for drugs based upon estimated acquisition costs, never intended to pay the amounts under the heading "Gross Profit."

| DEFENDANT ROXANE | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | RELATOR'S COST<br>(in or about March 2000) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Ipratropium Bromide 2.5 ml, 25's | 00054-8402-11 | 0.36736/ml $22.96<br>.3608/ml $22.55 | $11.72 | $11.24<br>$10.83 | 49%<br>48% |
| Ipratropium Bromide 2.5 ml, 60's | 00054-8402-21 | 0.36736/ml $55.10<br>.360800/ml $54.12 | $28.12 | $26.98<br>$26.00 | 49%<br>48% |

103. As a direct and proximate result of the actions of the DEFENDANT ROXANE alleged herein, the UNITED STATES has sustained damages recoverable under the False Claims Act, together with treble damages, penalties, attorneys' fees and costs.

PAGES 117 THROUGH 135

HAVE BEEN
COMPLETELY REDACTED

**CIVIL ACTION NO. 00 CV 10698 MLW**



## COUNT I

**FALSE CLAIMS ACT;**
**CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS**

137.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-

A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the

Defendants: ABBOTT LABORATORIES, INC., ███████████████████████

████████████████ DEY  INC., ████████████████████████ ROXANE

LABORATORIES  INC., ████████████████████████████████

████████████████████████████, under the False Claims Act, 31

U.S.C. §§3729-3732.

CIVIL ACTION NO. 00 CV 10698 MLW

138. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

139. The DEFENDANTS from a date on or before April 7, 1994, to the present date, knowingly [as defined in 31 USC, §3729(b)] caused to be presented to officers or employees of the States' Medicaid Programs false or fraudulent claims [as explained in United States v. Neifert-White, 390 US 228, 232-233 (1968)] for payment or approval, in that the DEFENDANTS caused to be presented to officers or employees of the States' Medicaid Programs false or fraudulent price and cost information for the drugs specified herein and caused States' Medicaid Programs to pay out sums of money to the providers and suppliers of the DEFENDANTS' specified drugs grossly in excess of the amounts permitted by law, resulting in great financial loss to the States' Medicaid Programs and the UNITED STATES.

140. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(1).

## COUNT II

**FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT**

141. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., █████████████ DEY INC., █████████████ ROXANE

137

**CIVIL ACTION NO. 00 CV 10698 MLW**

LABORATORIES  INC.,

under the False Claims Act, 31

U.S.C. §§3729-3732.

142.    Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

143.    The DEFENDANTS, from a date on or before April 7,1994 to the present date, knowingly [as defined in 31 U.S.C. §3729(b)] caused false records or statements to be made or used to get false or fraudulent claims [as explained in United States v. Neifert-White, 390 US 228, 232-233 (1968)] to be paid or approved by the States' Medicaid Programs, in that the DEFENDANTS, caused false records or statements of prices and costs of the DEFENDANTS' drugs specified herein to be used by the States' Medicaid Programs to pay or approve claims presented by the providers and suppliers of the DEFENDANTS' specified drugs, which claims were grossly in excess of the amounts permitted by law, resulting in great financial loss to the UNITED STATES.

144.    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(2).

138

CIVIL ACTION NO. 00 CV 10698 MLW

## COUNT III

### FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR STATEMENTS TO BE USED TO CONCEAL AN OBLIGATION TO PAY MONEY TO THE GOVERNMENT

145. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC. ████████████████████████

████████████ DEY INC., █████████████████████ ROXANE

LABORATORIES INC., ████████████████████████████████

████████████████████████████████ under the False Claims Act, 31

U.S.C. §§3729-3732.

146. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

147. The DEFENDANTS, from a date on or before April 7, 1994 to the present date, knowingly [as defined in 31 U.S.C. §3729(b)] caused false records or statements to be made or used to conceal obligations to pay money to the States' Medicaid Programs, in that: the DEFENDANTS knew that the States' Medicaid Programs were using the DEFENDANTS' false price and cost representations for purposes of paying or approving claims of the providers and suppliers of the DEFENDANTS' specified drugs; the DEFENDANTS knew that sums of money paid by the UNITED STATES and States' Governments to the providers and suppliers of the DEFENDANTS' specified drugs were grossly in excess of the amounts permitted by law; the DEFENDANTS knew it was the obligation of the States' and UNITED STATES' Governments to recoup governments'

139

funds paid in excess of the amounts permitted by law; the DEFENDANTS, nevertheless, continued to cause the using and making of false records or statements of prices and costs for the specified drugs that were grossly in excess of the reasonable amounts permitted by law; and the DEFENDANTS thus concealed from the States' Governments an obligation of the providers and suppliers of the DEFENDANTS' specified drugs to pay recoupment monies to the States' Medicaid Programs, resulting in great financial loss to the UNITED STATES and States' Governments.

148. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(7).

## COUNT IV

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION

149. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ DEY INC., ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ROXANE LABORATORIES INC., ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ under the False Claims Act, 31 U.S.C. §§3729-3732.

150. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

140

151. The DEFENDANTS, from on or about April 7, 1994 to the present date, knew that the prices charged to their customers for the specified drugs were significantly reduced in amount from the prices and costs represented by the DEFENDANTS and upon which the DEFENDANTS knew Medicaid claims would be approved and paid. Accordingly, the DEFENDANTS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from the States' Medicaid Programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C§2.

152. The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the specified drugs if it were disclosed to the States' Medicaid Programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

153. The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to the States' Medicaid Programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

154. The DEFENDANTS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2), in causing the omission of material information from the claims, and in causing the failure to properly

141

CIVIL ACTION NO. 00 CV 10698 MLW

disclose and appropriately reflect the remuneration in the claims, caused the claims for the specified drugs to be false or fraudulent claims and caused the claims to be presented to the States' Medicaid Programs for payment and approval in violation of 31 U.S.C §3729(a)(1).

155. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars (10,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

## COUNT V

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT; ILLEGAL REMUNERATION

156. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., ██████████ DEY INC., ██████████ ROXANE LABORATORIES INC., ██████████ under the False Claims Act, 31 U.S.C. §§3729-3732.

157. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

158. The DEFENDANTS, from on or before April 7, 1994 to the present date, knew that the prices charged to their customers for the specified drugs were significantly

142

reduced in amount from the prices and costs represented by the DEFENDANTS and upon which the DEFENDANTS knew Medicaid claims would be approved and paid. Accordingly, the DEFENDANTS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from the States' Medicaid Programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2.

159. The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the specified drugs if it were disclosed to the States' Medicaid Programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

160. The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to the States' Medicaid Programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

161. The DEFENDANTS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)2, in causing the omission of material information from the claims, and in causing the failure to properly disclose and appropriately reflect the remuneration in the claims, caused the claims for the specified drugs to be false records or statements that were made and used to get a false

143

CIVIL ACTION NO. 00 CV 10698 MLW

or fraudulent claim paid or approved by the Government. The DEFENDANTS' actions herein caused said false records or statements to be made and used as prohibited by 31 U.S.C. §3729(a)(2).

162. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(2).

## COUNT VI

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS; PROHIBITED REFERRALS, CLAIMS AND COMPENSATION ARRANGEMENTS

163. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTS: ABBOTT LABORATORIES, INC.,

DEY INC.,                                                                    ROXANE

LABORATORIES INC.,

under the False Claims Act, 31 U.S.C. §§3729-3732.

164. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

165. The DEFENDANTS, from on or before April 7, 1994 to the present date, knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services [outpatient prescription drugs] furnished

144

pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS had financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such prohibited referrals, claims, bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C §2.

166.    The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the outpatient prescription drugs to the States' Medicaid Programs that said claims were for amounts that included claims or bills prohibited by 42 U.S.C. §1395nn(a)(1)(B).

167.    The DEFENDANTS knowingly presented or caused their referring physicians, physician groups and outpatient clinics to present claims or bills for the DEFENDANTS' outpatient prescription drugs to the States' Medicaid Programs for payment or approval that were false or fraudulent.

168.    The DEFENDANTS' knowing actions in having compensation arrangements for its referring physicians, physician groups and outpatient clinics prohibited by 42 U.S.C. §1395nn(a)(1)(B) and in presenting or causing the presentment of prohibited claims in violation of 42 U.S.C. §1395nn(a)(1)(B) for payment or approval caused the claims for the outpatient prescription drugs presented to the States' Medicaid Programs to be false or fraudulent claims in violation of 31 U.S.C §3729(a)(1).

169.    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

CIVIL ACTION NO. 00 CV 10698 MLW

## COUNT VII

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT; PROHIBITED REFERRALS, CLAIMS AND COMPENSATION ARRANGEMENTS

170. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTS: ABBOTT LABORATORIES, INC., ████████████████

████████████ DEY INC., ████████████████ ROXANE LABORATORIES INC., ████████████████

████████████████ under the False Claims Act, 31 U.S.C. §§3729-3732.

171. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

172. The DEFENDANTS, from on or before April 7, 1994, to the present date, knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services [outpatient prescription drugs] furnished pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS had financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such prohibited referrals, claims, bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C §2.

146

CIVIL ACTION NO. 00 CV 10698 MLW

173. The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the outpatient prescription drugs if it were disclosed to the States' Medicaid Programs that said claims were for amounts that included claims or bills prohibited by 42 U.S.C. §1395nn(a)(1)(B).

174. The DEFENDANTS knowingly made or used or caused their referring physicians, physician groups or outpatient clinics to make or use false records or statements to get false or fraudulent claims and bills for the DEFENDANTS' outpatient prescription drugs to be paid or approved by the States' Medicaid Programs.

175. The DEFENDANTS' knowing presentment or causing others to present, claims or bills to the States' Medicaid Programs in violation of 42 U.S.C. §1395nn(a)(1)(B) without disclosing facts revealing said violations constituted the making or using, or the causing others to make or use, false records or statements to get false or fraudulent claims paid or approved in violation of 31 U.S.C. §3729(a)(2).

176. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(2).

## COUNT VIII

177.



180.

**REQUESTS FOR RELIEF**

WHEREFORE, the Relator, on behalf of the UNITED STATES, demands that

judgment be entered in its favor and against DEFENDANTS: ABBOTT LABORATORIES,

INC., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DEY INC., ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ ROXANE  LABORATORIES  INC., ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ , with judgment to be entered against each defendant for the

amount of damages:  to the UNITED STATES arising from claims for each Defendant's

respective specified drugs as follows:

1.      On Count I (False Claims Act; Causing Presentation of False Claims) for

triple the amount of the UNITED STATES' damages, plus civil penalties of no more than

TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS

($5,000.00) for each false claim;

**CIVIL ACTION NO. 00 CV 10698 MLW**

2.     On Count II (False Claims Act; Causing False Statements To Be Used To Get False Claims Paid By The GOVERNMENT) for triple the amount of UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

3.     On Count III (False Claims Act; causing False Statements To Be Used To conceal An Obligation To Pay Money To The GOVERNMENT) for triple the amount of the UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false or fraudulent claim paid;

4.     On Count IV (False Claims Act; Causing Presentation of False or Fraudulent Claims; Illegal Remuneration) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false claim;

5.     On Count V (False Claims Act; Causing A False Record Or Statement To Be Made Or Used To Get A False Or Fraudulent Claim Paid Or Approved by the Government; Illegal Remuneration) for triple the amount of UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

6.     On Count VI (False Claims Act; Causing Presentation of False or Fraudulent Claims; Prohibited Referrals, Claims and Compensation Arrangements) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN

THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

7. On Count VII (False Claims Act; Causing a False Record or Statement to be Made or Used to get a False or Fraudulent Claim Paid or Approved by the Government; Prohibited Referrals, Claims and Compensation Arrangements) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

8.

9. For all fees and costs of this civil action; and

10. For such other and further relief as the Court deems just and equitable.

Further, the Relator, on its behalf, requests that it receive thirty percent (30%), [twenty-five percent (25%) if the UNITED STATES GOVERNMENT intervenes and proceeds with this case] or such other maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the UNITED STATES, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Relator requests that its percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

CIVIL ACTION NO.  00 CV 10698 MLW

## DEMAND FOR JURY TRIAL

A jury trial is demanded in this case.

Respectfully submitted,
Attorneys for
the Private Person Plaintiff,
Ven-A-Care of the Florida Keys, Inc.

Francis D. Dibble, Jr.
BBO No.: 123220
Katherine A. Robertson
BBO No. 557609
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115-5507
Telephone:   413-781-2820
Facsimile:   413-785-5060

OF COUNSEL:

Atlee W. Wampler, III
Florida Bar No. 311227

James J. Breen
Florida Bar No. 297178
Attorneys for the United States
of America by and through
Ven-A-Care of the Florida
Keys, Inc., the Relator
WAMPLER, BUCHANAN & BREEN, P.A.
900 Sun Trust Building
777 Brickell Avenue
Miami, Florida  33131
Telephone:   (305)577-0044
Facsimile:   (305)577-8545

CIVIL ACTION NO. 00 CV 10698 MLW

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February, 2001, I caused an original and a copy of this First Amended Complaint to be filed under seal and in camera for sixty (60) days and not to be served on the Defendants named herein or until further order of this Honorable Court.

I HEREBY CERTIFY that prior to this 15th day of February, 2001, I caused a copy of this First Amended Complaint and written disclosure of substantially all material evidence and information the Relator, VEN-A-CARE possesses to be served on the Government pursuant to Rule 4(i)(1)(A) and (B), Fed.R.Civ.P., prior to the filing of this First Amended Complaint by delivering a copy of the First Amended Complaint, material evidence and information to the United States Attorney for the District of Massachusetts, and by sending a copy of the First Amended Complaint, material evidence and information by Certified Mail, Return Receipt Requested, to the Attorney General of the United States in Washington, D.C.

Respectfully submitted,

_Catherine Robertson_

Francis D. Dibble, Jr.
BBO No.: 123220
Katherine A. Robertson
BBO No. 557609

OF COUNSEL:

Atlee W. Wampler, III
Florida Bar No. 311227

James J. Breen
Florida Bar No. 297178

F:\CLIENTS\4590\AMENDED\amd-cmp-fin.wpd

153