# EXHIBIT G

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SEALED

UNITED STATES OF AMERICA
**Ex Rel**
    **VEN-A-CARE OF THE
    FLORIDA KEYS, INC.
    a Florida Corporation,
    by and through its principal
    officers and directors,
    ZACHARY T. BENTLEY and
    T. MARK JONES,**

                  **Plaintiff,**

**v.**

**ABBOTT LABORATORIES, INC.;**

**BOEHRINGER INGELHEIM, CORP.;**

**DEY, INC.;**

**ROXANE LABORATORIES, INC.;**

             **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO. 00 CV 10698 MEL**

**FILED IN CAMERA AND UNDER SEAL**

**SECOND AMENDED COMPLAINT**

**For Money Damages and Civil
Penalties Under the False Claims Act
31 U.S.C. §§3729-3732**

FILED
IN CLERKS OFFICE
2002 FEB -1  A 2: 33
U.S. DISTRICT COURT
DISTRICT OF MASS.

## SECOND AMENDED COMPLAINT
## FOR MONEY DAMAGES AND CIVIL PENALTIES UNDER THE FALSE
## CLAIMS ACT 31 U.S.C. §§3729-3732

**CIVIL ACTION NO.  00 CV 10698 MEL**

COMES NOW, the UNITED STATES OF AMERICA ("UNITED STATES" or
"GOVERNMENT"), by and through VEN-A-CARE OF THE FLORIDA KEYS, INC. ("VEN-A-
CARE" or "the Relator"), and its principal officers and directors, ZACHARY T. BENTLEY
and T. MARK JONES, and by and through the undersigned attorneys on behalf of the
UNITED STATES and on the Relator's own behalf and brings this action against ABBOTT
LABORATORIES,  INC.; ███████████  BOEHRINGER  INGELHEIM,  CORP.;
████████████████████ DEY INC.; ████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████ ROXANE  LABORATORIES,  INC.; ████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████ (sometimes referred to collectively as "DEFENDANTS"), for
money damages and civil penalties arising out of the DEFENDANTS' violations of the
Federal False Claims Act, 31 U.S.C., §§3729-3732 from on or about April 7, 1994, to the
present date.

CIVIL ACTION NO.  00 CV 10698 MEL

## TABLE OF CONTENTS

Page No:

**SECTION NO. 1**
SUMMARY OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**A.** DRUG MANUFACTURERS' FALSE PRICE REPRESENTATIONS
INVOLVING RETAIL PHARMACIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**B.** DRUG MANUFACTURERS' FALSE PRICE REPRESENTATION
INVOLVING  SPECIALIZED INFUSION PHYSICIANS
AND PHARMACIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**SECTION NO. 2**
THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**SECTION NO. 3**
JURISDICTION & VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**SECTION NO. 4**
HOW MEDICARE AND MEDICAID REIMBURSEMENT
IS AFFECTED BY DRUG MANUFACTURERS'
PRICE AND COST REPRESENTATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**SECTION NO. 5**
ROLE OF THE DRUG WHOLESALER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**SECTION NO. 6**
BACKGROUND OF HOW UNITED STATES' MONIES
ARE PAID FOR DRUG CLAIMS UNDER "PART B"
OF THE MEDICARE PROGRAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**SECTION NO. 7**
BACKGROUND OF HOW UNITED STATES' MONIES
ARE PAID FOR DRUG CLAIMS UNDER
THE STATES' MEDICAID PROGRAMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

i

**CIVIL ACTION NO.  00 CV 10698 MEL**

**SECTION NO. 8**
    **THE FALSE CLAIMS SCHEME**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **46**

**SECTION NO.  9**
    **THE SPECIFIC FALSE PRICE AND COST**
    **REPRESENTATIONS OF DEFENDANT**
    **ABBOTT AS TO MEDICAID** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **58**

. . . . . . . . . . . . . **65**

. . . . . . . . . . . . . **69**

**SECTION NO. 12**
    **THE SPECIFIC FALSE PRICE AND COST**
    **REPRESENTATIONS OF DEFENDANT**
    **DEY AS TO MEDICAID**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **72**

    **THE SPECIFIC FALSE PRICE AND COST**
    **REPRESENTATIONS OF DEFENDANT DEY**
    **AS TO MEDICARE**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **74**

. . . . . . . . . . . . . . . **76**

. . . . . . . . . . . . . . . **82**

. . . . . . . . . . . . . . . . 84

. . . . . . . . . . . . . . . . 87

**SECTION NO. 17**
    **THE SPECIFIC FALSE PRICE AND COST**
    **REPRESENTATIONS OF DEFENDANT**
    **ROXANE AS TO MEDICAID** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 144

    **THE SPECIFIC FALSE PRICE AND COST**
    **REPRESENTATIONS OF DEFENDANT**
    **ROXANE AS TO MEDICARE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 147

. . . . . . . . . . . . . . . . 150

. . . . . . . . . . . . . . . . 154

. . . . . . . . . . . . . . . . 156

. . . . . . . . . . . . . . . . 159

iii

**CIVIL ACTION NO. 00 CV 10698 MEL**

............ 161

**COUNT I**

FALSE CLAIMS ACT; CAUSING PRESENTATION OF
FALSE OR FRAUDULENT CLAIMS ............................. 174

**COUNT II**
FALSE CLAIMS ACT; CAUSING A FALSE RECORD
OR STATEMENT TO BE MADE OR USED TO GET A
FALSE OR FRAUDULENT CLAIM PAID OR APPROVED
BY THE GOVERNMENT ...................................... 175

**COUNT III**
FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE
OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION ............. 177

**COUNT IV**
FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
STATEMENT TO BE MADE OR USED TO GET A FALSE
OR FRAUDULENT CLAIM PAID OR APPROVED BY THE
GOVERNMENT; ILLEGAL REMUNERATION ...................... 179

**COUNT V**
FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE
OR FRAUDULENT CLAIMS; PROHIBITED REFERRALS,
CLAIMS AND COMPENSATION ARRANGEMENTS ................. 181

**COUNT VI**
FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
STATEMENT TO BE MADE OR USED TO GET A FALSE
OR FRAUDULENT CLAIM PAID OR APPROVED BY THE
GOVERNMENT; PROHIBITED REFERRALS, CLAIMS
AND COMPENSATION ARRANGEMENTS ........................ 183

iv

CIVIL ACTION NO.  00 CV 10698 MEL

....... 185

REQUESTS FOR RELIEF ........................................... 187

DEMAND FOR JURY TRIAL ......................................... 190

CIVIL ACTION NO. 00 CV 10698 MEL

### SECTION NO. 1
### SUMMARY OF THE ACTION

1.      This is an action for damages, treble damages, civil penalties and costs against the DEFENDANTS for violation of the False Claims Act as set out in Counts I through VII, pages 174 through 189.

2.      The Medicare and Medicaid programs pay claims for the prescription drugs specified herein only if three distinct requirements are met.  First, the drug manufacturer must make price and cost information about the drug publicly available. Second, the programs must elect to cover the drug when medically necessary.  Third, the physician, pharmacy or other health care provider who purchases the drug must confirm that it was administered or dispensed to an eligible person covered by the applicable program.  In some cases, most notably that of the Texas Medicaid Program, manufacturers must report costs and prices directly to the program to satisfy the price disclosure requirement.

3.      The DEFENDANTS benefitted economically when health care providers purchased their drugs in anticipation of Medicare or Medicaid reimbursement, and each of the DEFENDANTS has knowingly made cost and price information about its drugs publicly available, at least in part, to satisfy the first requirement for reimbursement by Medicare and Medicaid.  In the case of the specified prescription drugs at issue, the DEFENDANTS knowingly reported inflated cost and price information that caused Medicare and Medicaid to pay excessive reimbursements.

4.      This false claims action  reveals an intentional scheme by certain pharmaceutical companies, (the " DEFENDANTS"), to arrange financial inducements aimed at pharmacies, specialized physicians (oncologists, infectious disease physicians, etc.) and clinics to increase sales of their prescription drugs which are reimbursed by the Medicare and States' Medicaid programs. The financial inducements arranged by the DEFENDANTS are intentionally concealed so that  federally funded health care programs will not benefit from the true prices in the marketplace. The DEFENDANTS,  participating in what has amounted to a kickback scheme, created financial inducements by falsely inflating reports of the price and cost of their drugs and through additional inducements such as free goods, direct monetary payments and rebates thus causing the Medicare and States' Medicaid programs to pay inflated reimbursement to the pharmacy, specialized physician or clinic providing the covered drug to the drug recipient (collectively "the Providers").   Each of the participating DEFENDANTS made a decision to report average wholesale prices, direct prices, and/or other prices or costs that they knew would be used by Medicare and Medicaid in establishing reimbursement amounts. Each DEFENDANT, had it so chosen, could have reported prices and costs for the specified drugs that were consistent with the prices actually being charged and paid in the marketplace. The DEFENDANTS  were free to elect not to report prices and thus not have their drugs covered by Medicare and Medicaid.  Rather than choose either of these paths, each of the participating DEFENDANTS opted to report inflated prices and costs for the express purpose of

2

creating a "spread" between the resulting Medicare and Medicaid reimbursement amounts and the prices actually being charged to the Providers. The DEFENDANTS were fully aware that the Medicare and Medicaid programs were required by their reimbursement policies to use the DEFENDANTS' reported drug prices and costs in calculating reimbursement amounts.  The following chart demonstrates how DEFENDANTS DEY and ROXANE caused the Medicare program to pay materially inflated reimbursement amounts for the respiratory drug Ipratropium Bromide 0.02% Sol., by reporting inflated prices for the drug for reimbursement purposes while actually selling the drug for a substantially lower amount.  The second column in the chart represents the amount by which the Providers were reimbursed by Medicare for the drug pursuant to the prices Dey and Roxane reported.  The third column represents VEN-A-CARE's true prices paid for Dey and Roxane's Ipratropium Bromide. The chart shows that unlike the Providers, the Medicare program never benefitted from the Dey and Roxane price reductions which actually did take place with respect to the drug.

3

CIVIL ACTION NO.  00 CV 10698 MEL

### Ipratropium Bromide 0.02% Sol.
### HCPCS code J7645 & (K0518)

| YEAR | MEDICARE REIMBURSEMENT AMOUNT PER UNIT* | VenACare COST PER MEDICARE UNIT | "SPREAD" (PROFIT) $ | "SPREAD" (PROFIT) % | MEDICARE EXPENDITURES $ |
|------|------|------|------|------|------|
| 1995 | $ 3.11/mg. ($0.62/ml) | $3.11 | $0.00 | 0% | $14,426,108 |
| 1996 | $ 3.75/mg. ($0.75/ml) | $3.26 | $0.49 | 15% | $47,388,622 |
| 1997 | $ 3.50/mg. ($0.70/ml) | $2.15 | $1.35 | 63% | $96,204,639 |
| 1998 | $ 3.34/mg. | $1.70 | $1.64 | 96% | $176,887,868 |
| 1999 | $ 3.34/mg. | $1.60 | $1.74 | 108% | $253,400,414 |
| 2000 | $ 3.34/mg. | $0.94 | $2.40 | 255% | $347,527,960 |
| 2001 | $ 3.34/mg. | $0.82 | $2.52 | 307% | |

\* Medicare Units were converted from ml's to mg's for the years 1995,1996 &1997
(5 ml=1 milligram) & 1998-2001 @ 95% of AWP

5.

### A.  DRUG MANUFACTURERS' FALSE PRICE REPRESENTATIONS INVOLVING RETAIL PHARMACIES

6.   The DEFENDANTS falsely represented the prices that they charged

wholesalers and direct prices for certain of their generic prescription drugs (hereinafter

sometimes referred to as the "specified retail pharmacy drugs") in order to cause

various State Medicaid programs to pay claims in excessive amounts.  More than half

of the amounts paid consisted of federal funds from which the States were required to

4

Pages 5-56 redacted

 false representations of wholesaler prices for other drugs covered by

the FUL program.

### SECTION NO. 9
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### ABBOTT AS TO MEDICAID

139.    At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT ABBOTT knowingly caused the States' Medicaid

programs to pay false or fraudulent claims for drugs specified in this Section and further

57

made or used false or fraudulent records and/or statements to get such claims paid or approved. As a result of the actions of DEFENDANT ABBOTT and those persons and entities acting directly or indirectly in concert with DEFENDANT ABBOTT, the States' Medicaid programs paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section. The acts committed by DEFENDANT ABBOTT that caused the States' Medicaid programs to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about the direct and wholesaler prices of the drugs specified in this Section which DEFENDANT ABBOTT knew would be used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section. Each of said representations was in fact used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section.

140.    DEFENDANT ABBOTT knowingly caused its false or fraudulent wholesaler price representations to be transmitted by First Data Bank's automated services, made or used false records or statements regarding its direct and wholesaler prices of the drugs specified in this section and submitted them to the States' Medicaid programs continuously throughout the years specified in this section. Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services. The information in the table under the heading "ABBOTT'S False Reported WAC" reflects DEFENDANT ABBOTT'S false representations of price it charged wholesalers for drugs. The heading "Relator's Cost" reflects the true price that DEFENDANT ABBOTT charged the Relator for the drug or caused another entity to charge the Relator for the drug.

58

**CIVIL ACTION NO. 00 CV 10698 MEL**

| DRUG STRENGTH & SIZE, NDC#s | ABBOTT'S FALSE REPORTED WAC | RELATOR'S COST (in or about January 2001) |
|---|---|---|
| Erythromycin Base 250 mg Tab 100's 00074-6326-13 | $11.16 | $7.40 |
| Erythromycin Base 250 mg Tab 500's 00074-6326-53 | $56.19 | $35.89 |
| Erythromycin Stearate 250 mg Tab 100's 00074-6346-20 | $11.00 | $7.86 |
| Erythromycin Stearate 250 mg Tab 500's 00074-6346-53 | $52.25 | $38.18 |
| Erythromycin Stearate 500 mg Tab 100's 00074-6316-13 | $19.88 | $15.30 |
| Erythromycin Stearate UD 250 mg Tab 100's 00074-6346-38 | $14.28 | $10.03 |
| ERY-TAB E/C 250 mg, 30's 00074-6304-30 | $6.36 | $2.76 |
| ERY-TAB E/C 250 mg, 100's 00074-6304-13 | $21.31 | $7.72 |
| ERY-TAB E/C UD 250 mg, 100's 00074-6304-11 | $23.20 | $9.90 |
| E.E.S. 200 Susp. 100 ml 00074-6306-13 | $3.82 | $3.45 |

| DRUG STRENGTH & SIZE, NDC#s | ABBOTT'S FALSE REPORTED WAC | RELATOR'S COST (in or about January 2001) |
|---|---|---|
| ERY E-Succ/Sulfisoxazole 200 mg, 100 ml 00074-7156-13 | $10.21 | $4.21 |
| ERY E-Succ/Sulfisoxazole 200 mg, 150 ml 00074-7156-43 | $15.31 | $6.32 |
| ERY E-Succ/Sulfisoxazole 200 mg 200 ml 00074-7156-53 | $19.86 | $8.42 |

141.    Through its direct prices DEFENDANT ABBOTT knowingly defrauded California's Medicaid program as well as those of other States.

142.    The false price and cost representations, as they were submitted to the State of Texas on or after April 7, 1994, are organized in a chart within this paragraph by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"), "Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit." The amount under the heading "Relator's Cost" is the true price that DEFENDANT ABBOTT charged the Relator for the drug or caused another entity to charge the Relator for the drug. A comparison of the Relator's cost with DEFENDANT ABBOTT'S price representations shows the falsity of DEFENDANT ABBOTT'S price representations for the specified drugs. Furthermore, the table shows the impact of DEFENDANT ABBOTT'S false statements because it shows health care providers made a profit for

60

prescribing DEFENDANT ABBOTT'S drugs. Texas Medicaid, which intended to pay for drugs based upon estimated acquisition costs, never intended to pay the amounts under the heading "Gross Profit."

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br><br>DEAC | Relator's Cost<br>(in or about<br>January<br>2001) | WEAC<br>Provider's<br>Gross Profit<br>$<br><br>DEAC<br>Provider's<br>Gross Profit<br>$ | WEAC<br>Provider's Gross<br>Profit %<br><br>DEAC<br>Provider's Gross<br>Profit % |
| Erythromycin<br>Base<br>250 mg Tab<br>100's | 00074-6326-13 | $12.46<br><br>$12.45 | $7.40 | $5.06<br><br>$5.05 | 41%<br><br>41% |
| Erythromycin<br>Base<br>250 mg Tab<br>500's | 00074-6326-53 | $59.705<br><br>$59.15 | $35.89 | $23.815<br><br>$23.26 | 40%<br><br>39% |

CIVIL ACTION NO. 00 CV 10698 MEL

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % DEAC Provider's Gross Profit % |
| Erythromycin Stearate 250 mg Tab 100's | 00074-6346-20 | $12.98 $12.28 | $7.86 | $5.12 $4.42 | 39% 36% |
| Erythromycin Stearate 250 mg Tab 500's | 00074-6346-53 | $61.665 $58.35 | $38.18 | $23.485 $20.17 | 38% 35% |
| Erythromycin Stearate 500 mg Tab 100's | 00074-6316-13 | $24.42 $22.19 | $15.30 | $9.12 $6.89 | 37% 31% |
| ERY-TAB E/C 250 mg, 100's | 00074-6304-13 | $ $21.20 | $7.72 | $ $13.48 | % 64% |

Case 1:07-cv-12257-PBS Document 4861-8 Filed 10/30/07 Page 20 of 27
Case 1:07-cv-12578-PBS Document 519 Filed 05/30/2007 Page 16 of 62
CIVIL ACTION №. 00 CV 10698 MEL

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC <hr> DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ <hr> DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % <hr> DEAC Provider's Gross Profit % |
| ERY E-Succ/ Sulfisoxazole 200 mg, 100 ml | 00074-7156-13 | $ <hr> $10.75 | $4.21 | $ <hr> $6.54 | % <hr> 61% |
| ERY E-Succ/ Sulfisoxazole 200 mg, 150 ml | 00074-7156-43 | $ <hr> $15.90 | $6.32 | $ <hr> $9.58 | % <hr> 60% |
| ERY E-Succ/ Sulfisoxazole 200 mg 200 ml | 00074-7156-53 | $ <hr> $20.90 | $8.42 | $ <hr> $12.48 | % <hr> 60% |

143.    As a direct and proximate result of the actions of the DEFENDANT ABBOTT alleged herein, the UNITED STATES has sustained damages recoverable under the False Claims Act, together with treble damages, penalties, attorneys' fees and costs.

PAGES 64 THROUGH 70

HAVE BEEN
COMPLETELY REDACTED

**CIVIL ACTION NO. 00 CV 10698 MEL**



150.

### SECTION NO. 12
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### DEY AS TO MEDICAID

151.    At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT DEY knowingly caused the States' Medicaid programs

to pay false or fraudulent claims for drugs specified in this Section and further made or

used false or fraudulent records and/or statements to get such claims paid or approved.

As a result of the actions of DEFENDANT DEY and those persons and entities acting

directly or indirectly in concert with DEFENDANT DEY, the States' Medicaid programs

71

paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section. The acts committed by DEFENDANT DEY that caused the States' Medicaid programs to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about the wholesaler prices of the drugs specified in this Section which DEFENDANT DEY knew would be used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section. Each of said representations was in fact used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section.

152. DEFENDANT DEY knowingly caused its false or fraudulent wholesaler price representations to be transmitted by First Data Bank's automated services made or used false records or statements regarding its wholesaler prices of the drugs specified in this section and submitted them to the States' Medicaid programs continuously throughout the years specified in this section. Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services. The information in the table under the heading "DEY'S Reported False WACs" reflects DEFENDANT DEY'S false representations of price it charged wholesalers for drugs. The heading "Relator's Cost" reflects the true price that DEFENDANT DEY charged the Relator for the drug or caused another entity to charge the Relator for the drug.

72

Pages 73-189 redacted

**CIVIL ACTION NO. 00 CV 10698 MEL**

## DEMAND FOR JURY TRIAL

A jury trial is demanded in this case.

Dated: February 1, 2002

Respectfully submitted,
Attorneys for
the Private Person Plaintiff,
Ven-A-Care of the Florida Keys, Inc.

Jonathan Shapiro
BBO No.: 454220
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street
Boston, MA 02114-2022
(617) 742-5800

THE BREEN LAW FIRM
James J. Breen
Florida Bar No. 297178
The Crossroad Building
8201 Peters Road
Suite 1000
Plantation, Florida 33324
(954) 916-2713

Attorneys for the United States
of America by and through
Ven-A-Care of the Florida
Keys, Inc., the Relator

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Susan S. Thomas
Jeanne A. Markey
Joy Clairmont
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

GOODE, CASSEB, JONES,
RIKLIN, CHOATE & WATSON
John E. Clark
2122 North Main Avenue
San Antonio, Texas 78212-9680
(210) 733-6030

190

**CIVIL ACTION NO. 00 CV 10698 MEL**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of February, 2002, I caused an original and a copy of this Second Amended Complaint to be filed under seal and in camera for sixty (60) days and not to be served on the DEFENDANTs named herein or until further order of this Honorable Court.

I HEREBY CERTIFY that prior to this 1st day of February, 2002, I caused a copy of this Second Amended Complaint and written disclosure of substantially all material evidence and information the Relator, VEN-A-CARE possesses to be served on the Government pursuant to Rule 4(i)(1)(A) and (B), Fed.R.Civ.P., prior to the filing of this Second Amended Complaint by delivering a copy of the Second Amended Complaint, material evidence and information to the United States Attorney for the District of Massachusetts, and by sending a copy of the Second Amended Complaint, material evidence and information by Certified Mail, Return Receipt Requested, to the Attorney General of the United States in Washington, D.C.

Jonathan Shapiro
BBO No.: 454220
Stern Shapiro Weissberg & Garin, LLP
90 Canal Street
Boston, MA 02114
(617) 742-5800

G:\SSWG\VEN-A-CARE\FINALAMEND.BOSTONCOMP.wpd

191

Exhibits redacted