# EXHIBIT H



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA )
Ex Rel )
    VEN-A-CARE OF THE )
    FLORIDA KEYS, INC. )
    a Florida Corporation, )
    by and through its principal )
    officers and directors, )
    ZACHARY T. BENTLEY and )
    T. MARK JONES, )
              Plaintiff, )
  )
v. )
  )
ABBOTT LABORATORIES; )



CIVIL ACTION NO.
95-1354-CIV-GOLD

FILED IN CAMERA
AND UNDER SEAL
PURSUANT TO
31 U.S.C. §3730

FOURTH AMENDED
COMPLAINT
For Money Damages and
Civil Penalties Under The
False Claims Act
31U.S.C. §§3729-3732

Civil Action No: 95-1354-CIV-GOLD

███████████████████████████  )
███████████████████████████  )
███████████████████████████  )
███████████████████████████████ )
███████████████████████████  )
███████████████████████████  )
███████████████████████████,  )
███████████████████████████  )
███████████████████████████  )
███████████████████████████  )
**Defendants.**                )
_____  )

## FOURTH AMENDED COMPLAINT
## FOR MONEY DAMAGES AND CIVIL PENALTIES UNDER THE FALSE
## CLAIMS ACT 31 U.S.C. §§3729-3732

COMES NOW, the UNITED STATES OF AMERICA ("UNITED STATES" or

"GOVERNMENT"), by and through VEN-A-CARE OF THE FLORIDA KEYS, INC. ("VEN-A-

CARE" or "the Relator"), and its principal officers and directors, ZACHARY T. BENTLEY,

and T. MARK JONES, and by and through the undersigned attorneys on behalf of the

UNITED STATES and on the Relator's own behalf and bring this action against, ABBOTT

LABORATORIES;  ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

2

Civil Action No: 95-1354-CIV-GOLD

[REDACTED] (sometimes referred to collectively as,

"DEFENDANT DRUG MANUFACTURERS" or "DEFENDANTS"), for money damages and

civil penalties arising out of the DEFENDANTS' violations of the Federal False Claims Act

("False Claims Act"), 31 U.S.C., §§3729-3732.

3

Civil Action No: 95-1354-CIV-GOLD

**TABLE OF CONTENTS**                                                    **Page No:**

SECTION NO. 1
    SUMMARY OF THE ACTION                                                9

    A.  THE MEDICAID AND MEDICARE FRAUD ARISING FROM
        DEFENDANTS' FALSE PRICE AND COST
        REPRESENTATIONS INVOLVING SPECIALIZED
        PHYSICIANS AND PHARMACIES AND INFUSION DRUGS              11

SECTION NO. 2
    THE PARTIES                                                         15

SECTION NO. 3
    JURISDICTION & VENUE                                                30

SECTION NO. 4
    HOW DRUG MANUFACTURERS' PRICE AND COST
    REPRESENTATIONS ARE OBTAINED BY THE MEDICARE AND
    STATE MEDICAID PROGRAMS WHICH THEN UTILIZE THEM
    TO CALCULATE DRUG REIMBURSEMENT AMOUNTS                         31

SECTION NO. 5
    THE ROLE OF THE DRUG WHOLESALER                                 37

SECTION NO. 6
    BACKGROUND OF HOW UNITED STATES' MONIES ARE PAID
    FOR DRUG CLAIMS UNDER "PART B" OF THE MEDICARE
    PROGRAM                                                         40

SECTION NO. 7
    BACKGROUND OF HOW UNITED STATES' MONIES ARE PAID
    FOR DRUG CLAIMS UNDER THE STATE MEDICAID
    PROGRAMS                                                        45

SECTION NO. 8
    THE FALSE CLAIMS SCHEME                                         50

    A.  DEFENDANTS' SCHEME RESULTED IN MULTIPLE
        VIOLATIONS OF THE FALSE CLAIMS ACT                          50

    B.  THE NATURE AND IMPACT OF DEFENDANTS' FALSE
        CLAIM SCHEME                                                58

Civil Action No: 95-1354-CIV-GOLD

## TABLE OF CONTENTS                                                Page No:

SECTION NO. 9
    THE DEFENDANT DRUG MANUFACTURERS' KNOWLEDGE
    OF THE FALSE CLAIM SCHEME                                    67

SECTION NO. 10
    THE DEFENDANTS HAVE REPEATEDLY UNDERMINED
    THE VARIOUS STEPS THAT FEDERAL AND STATE
    GOVERNMENTS HAVE TAKEN TO ENSURE THAT
    GOVERNMENT DRUG REIMBURSEMENT AMOUNTS ARE
    REASONABLE                                                   76

SECTION NO. 11
    THE SPECIFIC FALSE PRICE AND COST
    REPRESENTATIONS OF DEFENDANT
    ABBOTT                                                       77

SECTION NO. 12
    [REDACTED]                                                   85

SECTION NO. 13
    [REDACTED]                                                   89

SECTION NO. 14
    [REDACTED]                                                   92

SECTION NO. 15
    [REDACTED]                                                   97

SECTION NO. 16
    [REDACTED]                                                   102

Civil Action No: 95-1354-CIV-GOLD

## **TABLE OF CONTENTS**                                    **Page No:**



SECTION NO. 17

106

SECTION NO. 18

110

SECTION NO. 19

115

SECTION NO. 20

118

SECTION NO. 21

122

SECTION NO. 22

126

SECTION NO. 23

130

SECTION NO. 24

132

6

Civil Action No: 95-1354-CIV-GOLD

## TABLE OF CONTENTS

Page No:

SECTION NO. 25



135

SECTION NO. 26

137

SECTION NO. 27

141

SECTION NO. 28

144

SECTION NO. 29

146

SECTION NO. 30

151

SECTION NO. 31

153

SECTION NO. 32

156

Civil Action No: 95-1354-CIV-GOLD

**TABLE OF CONTENTS**                                              **Page No:**

SECTION NO. 33

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮                                                          158

COUNT I
    FALSE CLAIMS ACT;
    CAUSING PRESENTATION OF FALSE OR FRAUDULENT
    CLAIMS                                                        161

COUNT II
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
    STATEMENT TO BE MADE OR USED TO GET A FALSE OR
    FRAUDULENT CLAIM PAID OR APPROVED BY THE
    GOVERNMENT                                                    162

COUNT III
    FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR
    STATEMENTS TO BE USED TO CONCEAL AN OBLIGATION
    TO PAY MONEY TO THE GOVERNMENT                                164

COUNT IV
    FALSE CLAIMS ACT; CAUSING PRESENTATION OF
    FALSE OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION              166

COUNT V
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
    STATEMENT TO BE MADE OR USED TO GET
    A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY
    THE GOVERNMENT; PROHIBITED REFERRALS,
    CLAIMS AND COMPENSATION ARRANGEMENTS                          168

COUNT VI
    FALSE CLAIMS ACT; CONSPIRING TO DEFRAUD THE
    GOVERNMENT BY GETTING A FALSE OR FRAUDULENT
    CLAIM ALLOWED OR PAID                                         170

REQUESTS FOR RELIEF                                               172

DEMAND FOR JURY TRIAL                                             174

CERTIFICATE OF SERVICE                                            176

8

Civil Action No: 95-1354-CIV-GOLD

## SECTION NO. 1

### SUMMARY OF THE ACTION

1.     This is an action for damages, treble damages, restitution, civil penalties, pre-judgment interest, equitable relief and for attorneys' fees and expenses of the Relator against the DEFENDANTS for violations of the False Claims Act as set out in Counts I through VI. The violations arise from DEFENDANTS' actions which caused Medicare and the State Medicaid Programs to pay grossly inflated prices for DEFENDANTS' prescription drugs. This Fourth Amended Complaint encompasses all those prescription drugs and biologicals with respect to which DEFENDANTS violated the False Claims Act during the relevant time period by any of the means described herein, including, but not limited to, the prescription drugs and biologicals identified herein unless otherwise included by the Relator in a separate action under the False Claims Act.

2.     The Medicare and State Medicaid Programs pay claims for the prescription drugs at issue herein only if three distinct requirements are met. First, the pharmaceutical drug manufacturer must make price and cost information about the prescription drug publicly available. Second, the program must elect to cover the prescription drug when medically necessary. Third, the physician, pharmacy or other health care provider who purchases the prescription drug must confirm that it was administered or dispensed to an eligible person covered by the applicable program. In some cases, most notably that of the Texas Medicaid Program, pharmaceutical manufacturers must report costs and prices directly to the state program to satisfy the price disclosure requirement.

9

3.      This false claims action reveals an intentional scheme by DEFENDANTS to arrange financial inducements aimed at specialized physicians

, clinics and pharmacies to increase sales of DEFENDANTS' prescription drugs which are reimbursed by Medicare and the State Medicaid Programs (sometimes collectively referred to herein as "Medicare/Medicaid"). The particular prescription drugs and biologicals at issue here are hereinafter referred to as the "specified drugs". The DEFENDANTS, participating in what amounts to a kickback scheme, create financial inducements by falsely inflating their reports of the price and cost of the specified drugs and by offering inducements such as free goods, direct monetary payments and rebates, thus causing Medicare/Medicaid to pay inflated reimbursements to the specialized physician, clinic or pharmacy (collectively "the Providers") providing the covered drug to the drug recipient. The financial inducements arranged by the DEFENDANTS are intentionally concealed so that Medicare/Medicaid will not benefit from the true prices in the marketplace. The DEFENDANTS were fully aware of the Medicare and Medicaid reimbursement methodologies and of the fact that Medicare/Medicaid was required to use drug manufacturers', including the DEFENDANTS', reported drug prices and costs in establishing Provider reimbursement amounts. Each DEFENDANT, had it so chosen, could have reported prices and costs for the specified drugs that fairly and reasonably reflected the prices actually being charged and paid in the marketplace. The DEFENDANTS were also free to elect not to report prices and thus not have their drugs covered by Medicare/Medicaid. Rather than choose either of these options, each of the DEFENDANTS has knowingly opted to report inflated prices and costs for the express

10

purpose of creating a "Spread" between the resulting Medicare/Medicaid reimbursement amounts and the prices actually being charged to the Providers. The Spread served as an inducement to Providers to purchase the specified drugs. Providers would then apply for reimbursement for such drugs under Medicaid and Medicare, and receive inflated reimbursement amounts from the Medicaid and Medicare programs pursuant thereto. This was a result which DEFENDANTS not only foresaw, but fully intended.

4.    The DEFENDANTS were fully aware that the Medicare and State Medicaid Programs were required by their reimbursement policies to use drug manufacturers', including DEFENDANTS', reported drug prices and costs in calculating reimbursement amounts.

5.    As a result of the fraudulent and illegal acts alleged herein, DEFENDANTS have reaped millions of dollars in illegal profits at the expense of the federal and State governments and directly contributed to the soaring cost of providing prescription drugs for the nation's elderly and poor.

## A.    THE MEDICAID AND MEDICARE FRAUD ARISING FROM DEFENDANTS' FALSE PRICE AND COST REPRESENTATIONS INVOLVING SPECIALIZED PHYSICIANS AND PHARMACIES AND INFUSION DRUGS

6.    All fifty states have chosen to provide prescription drug coverage pursuant to Medicaid, the federal medical assistance program for the poor which both the federal and state government fund and which each state administers pursuant to federal statutes, regulations and guidelines. Additionally, "Part B" of the Medicare Program (which covers certain outpatient procedures for those over age 65, persons who are disabled and persons who have end stage renal disease), provides coverage for certain drugs which

11

cannot be taken by mouth or self-administered and for a small number of oral drugs including some chemotherapy and anti-emetic drugs.

7.      This action focuses only on the Medicare/Medicaid reimbursement for the ingredient costs of the prescription drugs at issue herein and not on reimbursement for the administration or dispensing of such drugs. Medicare and Medicaid reimbursement for ingredient costs involves separate payments, using different methodologies, than for reimbursement for professional fees associated with administering and dispensing the prescription drugs.

8.      The drugs at issue in this case are reimbursed by both Medicaid and Part B of Medicare.  These drugs are ordinarily prescribed by specialized physicians for the treatment of serious illnesses, including respiratory diseases, ████████████████████
████████████████████████. They are generally available only through a hospital, specialized physician or a specialized pharmacy.  ████████████████████████
██████████████████████████████████████████. The other drugs at issue include, but are not limited to, ████████████████████████████
████████████████████████████████████████████████████████████████.
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████ The Medicare beneficiaries and Medicaid recipients who receive the specified drugs are usually extremely ill. The physicians prescribing these drugs are in a unique relationship with the DEFENDANTS because they can not only prescribe the drugs, they can also directly provide and

administer or arrange for the provision and administration of the drugs. They then apply for reimbursement from Medicare or Medicaid for the drug.

9.     By reporting falsely inflated costs and prices for the specified drugs to Medicaid/Medicare, the DEFENDANTS created a "Spread" between the inflated acquisition cost that they caused the Medicare/Medicaid Programs to calculate and use for reimbursement purposes and the actual cost of the drug to the Provider. This "Spread", which constituted an unlawful financial inducement arranged by the DEFENDANTS, directly benefitted the DEFENDANTS because it caused Providers   to order the DEFENDANTS' drugs.

10.    With respect to Medicaid, at least half of the amounts paid by the States consisted of federal funds from which the States were required to pay claims based upon the drug's Estimated Acquisition Cost ("EAC") to the pharmacy submitting the claim.  42 CFR §447.331. The DEFENDANTS knew that each of the States' Medicaid Programs had implemented a mechanism to estimate the acquisition cost of prescription drugs to a pharmacy.   Most states used the DEFENDANTS' representation of their Average Wholesale Price ("AWP") (hereinafter sometimes referred to as "AWP STATES") and some States, including but not limited to, Alabama, Colorado, Florida, Maryland, Massachusetts, Ohio and Rhode Island used the DEFENDANTS' representation of the prices they charged wholesalers for the specified drugs. The DEFENDANTS made their false price representations both directly to the States and indirectly through one or more of several drug price reporting compendia including First DataBank, Medical Economics

13

and Medi-Span, that assemble drug price data and which State Medicaid Programs utilized in establishing reimbursement amounts.

11.    Throughout the relevant time period, Medicare's reimbursement was calculated with reference to a given drug's reported AWP in the case of single source drugs and biologicals and the median AWP in the case of multiple-source drugs and biologicals. The DEFENDANTS made false representations of prices and costs for the specified drugs  directly to Medicare Carriers and Durable Medical Equipment Regional Carriers ("DMERC's") which approve and pay Medicare claims; and indirectly through the drug price and cost reporting compendia such as First DataBank, Medical Economics, and Medi-Span which Medicare utilized in establishing reimbursement amounts.

12.    The DEFENDANTS knew that the Medicare and State Medicaid Programs intended to base their payments of "reimbursement" for the specified drugs on reasonable estimations of the drug's cost and that Medicare/Medicaid utilized the falsely inflated prices and costs reported by the DEFENDANTS in estimating reimbursement.

13.    The DEFENDANTS were well situated to mislead the Medicare and State Medicaid Programs because the DEFENDANTS  reported truthful prices and costs for many drugs that are not the subject of this action.

14.    The "Spreads" which DEFENDANTS created between the reimbursement amounts that they caused the Medicare/Medicaid Programs to calculate and use for reimbursement purposes and the actual cost of the drug to Providers, were large and often enormous (over 1000% in some instances). DEFENDANTS' reported costs and prices for the specified drugs became mere marketing tools employed to increase sales while

14

Civil Action No: 95-1354-CIV-GOLD

bearing no relationship whatsoever to the actual prices Providers were paying for the specified drugs. DEFENDANTS thus duped the Medicare/Medicaid Programs into paying claims for the specified drugs at inflated amounts in order to increase the DEFENDANTS' sales and market share. In short, the DEFENDANTS falsely reported the price and cost of their specified drugs in order to cause Medicare/Medicaid to unwittingly fund unlawful kickbacks to Providers.

15.     The DEFENDANTS thus wrongfully exploited the Medicare and State Medicaid Programs by knowingly causing them to pay Providers grossly inflated amounts that far exceeded a reasonable reimbursement amount based on an estimation of costs. This wrongful exploitation by DEFENDANTS caused the United States to incur single damages in excess of Ten Million Dollars for which the UNITED STATES and States Medicaid Programs are entitled to recover treble damages plus up to Ten Thousand Dollars per false claim, interest, costs and attorneys' fees.

## SECTION NO. 2

## THE PARTIES

16.     The Plaintiff in this action is the UNITED STATES. At all times material to this civil action, the United States Department of Health and Human Services ("HHS"), the Health Care Financing Administration ("HCFA"),and its successor agency the Centers for Medicare and Medicaid Services ("CMS") and The Bureau of Program Operations ("B.O.") were agencies and instrumentalities of the UNITED STATES and their activities, operations and contracts in administering the Medicare program were paid from UNITED STATES' funds. The UNITED STATES and its subcontractors performing on behalf of the UNITED

15

STATES provided Medicare benefits to qualified beneficiaries which included payment of claims for the prescription drugs specified herein manufactured by the DEFENDANTS and utilized the false and fraudulent price and cost representations made by the DEFENDANTS in approving and paying claims.

17. The States, United States Territories, and the District of Columbia provided Medicaid benefits to qualified recipients which included payment of claims for the prescription drugs specified herein manufactured by the DEFENDANTS and utilized the false and fraudulent price and cost representations made by the DEFENDANTS in approving and paying claims. A significant percentage (at least 50%) of said Medicaid reimbursement was paid from United States Government funds pursuant to 42 U.S.C. § 1396(b).

18. The Relator, VEN-A-CARE, is a corporation organized under the laws of the State of Florida, with its principal offices in Key West, Florida. The Relator's principal officers and directors include Zachary T. Bentley and T. Mark Jones, who are each citizens of the United States and reside in Key West, Florida. The Relator is a pharmacy and is licensed to provide prescription drugs and biologicals specified in this Fourth Amended Complaint and has been, during the relevant period of this Complaint, a Medicare Part B supplier and a Florida Medicaid provider. The Relator has standing to bring this action pursuant to 31 U.S.C. §3730(b)(1). The information upon which these allegations are based was voluntarily provided by the Relator to the Federal Government prior to June 23, 1995 and thereafter has been frequently supplemented by the Relator.

16

19.    VEN-A-CARE's principals were aware that Medicare and Medicaid reimbursed for drugs at amounts that were intended to be based on an estimation of cost and not provide for huge windfall profits at the GOVERNMENT's expense. VEN-A-CARE attempted to alert the responsible state and federal government officials to the scheme being perpetrated by the DEFENDANTS. However, the government agencies lacked sufficient resources and expertise to adequately respond. Accordingly, the Relator commenced this action based upon its original source information.

20.    The DEFENDANT, ABBOTT LABORATORIES ("ABBOTT"), is a corporation organized under the laws of Illinois with its principal offices in Abbott Park, Illinois. At all times material to this civil action, ABBOTT has transacted business in the Federal Judicial District of the District of Florida by, including but not limited to, selling and distributing its drugs, including those identified in this Complaint, to purchasers within the Southern District of Florida.

21.    ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

22.    ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Pages 18-73 redacted

instances, infusion, injectable and inhalation drugs and biologicals sold to physician groups, outpatient clinics and pharmacies.

b)      Some of the DEFENDANTS make representations of cost and price in terms of "List Price," "Wholesale Net," Direct Price "DP" or "DIRP,"or Wholesaler Acquisition Costs, "WAC," to which Medical Economics and First DataBank apply an industry average mark-up and establish an AWP.

c)      Some of the DEFENDANTS make representations of cost and price in terms of both AWP and DP (or DIRP).

d)      All of the DEFENDANTS make or cause to be made falsely inflated price and cost representations of one or more of Wholesale Net Price/WAC, Direct Price and/or AWP that were utilized by the government in calculating and paying drug reimbursements.

162.    Notwithstanding the DEFENDANTS' knowledge that the Government relied upon the DEFENDANTS' representations of price and cost and their knowledge of the applicable statutory requirements and prohibitions, each of the DEFENDANTS repeatedly, systematically and falsely  reported inflated price and cost information, including but not limited to:

a)      Defendants ABBOTT, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ repeatedly, systematically and falsely represented to the Medicare and States' Medicaid Programs that the prices of certain of the generic versions of the specified drugs were the same or higher than the published price for the equivalent brand drug when they knew that, in truth and in fact, the price of  their generic drug was far less than the

74

Civil Action No: 95-1354-CIV-GOLD

published price of the brand and that the States' Medicaid Programs and Medicare would pay and approve claims based upon their false representations of the price of their drugs, and

      b)    Defendants  ABBOTT, ██████████████████████████

████████████████████████████████████████████████████████

████████ repeatedly, systematically and falsely represented to the Medicare and States' Medicaid Programs that the prices of certain of their specified drugs were increasing or remaining substantially constant when they knew that in truth and in fact the prices had fallen substantially or were otherwise priced far below the represented prices and the Medicare and States' Medicaid Programs would pay and approve claims based on their false representations of the price of their drugs.

      163.   The grossly excessive profits have led to a proliferation of illegal split fee arrangements between the drug manufacturers' customers and persons or entities who are in a position to refer patients. The split fee/kickbacks also serve as a financial inducement for the referrals of more patients and greater utilization of the products.

      164.   In systematic and ongoing written and verbal communications with customers, the DEFENDANTS "marketed the spread" by encouraging and inducing customers to submit claims to Medicare and Medicaid to receive the excessive payments resulting from the DEFENDANTS' false price and cost representations.

calculated by Florida and Texas have been organized into a chart form for certain of the drugs in question. Amounts contained in the Florida Medicaid reimbursement column reflect the falsely inflated reported First DataBank WAC costs because Florida's reimbursement methodology for the years listed in each chart was WAC (as reported in First DataBank) plus 7%. Amounts contained in the Texas DEAC (Direct Estimated Acquisition Cost) reimbursement column also reflect the fact that the Defendant's price and cost representations were falsely inflated as explained more fully in ¶ 110, herein. The amount listed under the Relator's Cost column reflects the actual prices that were available to the Relator for the listed drugs from ABBOTT or a wholesaler. As a very small infusion pharmacy, the Relator did not always receive the lowest prices available to volume purchasers. Accordingly, in many instances the actual cost to Providers for the drug was significantly lower than that paid by the Relator. In instances where a given Provider did pay less for a drug than did the Relator, the Spread on said drug would have been correspondingly greater than that received by the Relator. A listing of drugs with respect to which ABBOTT knowingly caused Medicare/Medicaid to pay falsely inflated reimbursement amounts by reporting falsely inflated drug costs and prices is contained in Exhibit 6 attached hereto.

Civil Action No: 95-1354-CIV-GOLD

## SECTION NO. 10

### THE DEFENDANTS HAVE REPEATEDLY UNDERMINED THE VARIOUS EFFORTS THAT FEDERAL AND STATE GOVERNMENTS HAVE MADE TO ENSURE THAT GOVERNMENT DRUG REIMBURSEMENT AMOUNTS ARE REASONABLE

165.   The DEFENDANTS have each knowingly and actively impeded the numerous efforts made by Government to provide for reimbursement of prescription drugs at a reasonable rate.

166.   **Defendants Intentionally Impede Governments' Efforts to Accurately Estimate Providers' Drug Costs under Medicare/Medicaid.** DEFENDANTS impede such efforts on the part of the Government by means of the knowing reporting of inflated price and cost information alleged throughout this Fourth Amended Complaint and by additional affirmative acts such as those alleged herein.

167.   **Some State Medicaid Programs Have Gone To Exceptional Lengths In Their Efforts To Verify That Drug Manufacturers Provide Good Faith Price And Cost Information For Reimbursement Purposes.** By way of example, the Texas Medicaid authorities, during the time at issue in this Fourth Amended Complaint, required each of the DEFENDANTS to certify, in writing, their price and cost representations as a condition to their drugs being covered for reimbursement. The Relator's investigation has revealed that each of the DEFENDANTS, when responding to Texas, either affirmatively lied about their true prices, or omitted material information in order to mislead the Texas Medicaid officials.

76

Civil Action No: 95-1354-CIV-GOLD

168.   Had the DEFENDANTS truthfully disclosed the price and cost information about the specified drugs, Texas Medicaid would have set reimbursement amounts for the specified drugs consistent with a reasonable estimation of acquisition cost. Because each of the DEFENDANTS having a duty to make truthful disclosures made false statements or omissions about the specified drugs, Texas Medicaid reimbursement has been paid at substantially greater amounts than intended by applicable law and Texas Medicaid policy.

169.   **The DEFENDANTS Thwarted Governments' Efforts to Receive the Benefit of Drug Manufacturers' Best Prices under the Medicaid Rebate Program.** As previously alleged herein, the DEFENDANTS have each participated in the Rebate Program and as such were required to calculate their drugs BP and/or AMP.

170.   If a manufacturer truthfully reports its AMP and WAC they should be very close to, if not the same, amount.   However, for reimbursement purposes the DEFENDANTS have in many instances falsely and fraudulently represented inflated (or caused to be inflated) AWP's and WAC's that are in some cases more than 500% over their AMP's.  These inflated reported prices and costs virtually nullify the intended effect of the Rebate Program which is to provide the Government with the benefit of the DEFENDANTS' best prices in the market place.

## SECTION NO. 11

### THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT ABBOTT

171.   Throughout the period starting from on or before December 31, 1993 and continuing through the first quarter of 2001, Defendant ABBOTT knowingly caused

77

Medicare/Medicaid to pay false or fraudulent claims for prescription drugs and/or biologicals (collectively referred to in this Section as the "drugs") including those specified in this Section, and further made or used false or fraudulent records and/or statements to get such claims paid or approved. As a result of the said actions of Defendant ABBOTT and those persons and entities acting directly or indirectly in concert with Defendant ABBOTT, Medicare/Medicaid   paid grossly excessive,  unreasonable and unlawful amounts for claims for the drugs, including those specified in this Section.  The acts committed by Defendant ABBOTT that caused Medicare/Medicaid to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about prices and costs of the drugs which Defendant ABBOTT knew would be utilized by Medicare/Medicaid in paying or approving claims for such drugs and using the Spread as a financial inducement to increase sales of the Defendants' drugs. Each of said representations was in fact utilized by Medicare/Medicaid in paying or approving claims for such drugs.

172.  Defendant ABBOTT knowingly caused its false or fraudulent price and cost representations to be published in the years specified in this Section in the Red Book, the Blue Book , First DataBank's Automated Services and Medi-Span and further made or used false records or statements regarding its prices and costs of drugs, including those specified in this Section, and submitted same to  Medicare/Medicaid  continuously throughout the years specified in this Section.  By way of example, the said false price and cost representations as they were reported by Defendant ABBOTT and reflected in  Red Book,  Blue Book,  First DataBank  and the inflated  Medicaid  reimbursement amounts

78

Civil Action No: 95-1354-CIV-GOLD

## DEFENDANT ABBOTT

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas 'DEAC" Medicaid Reimbursement Based On False Reported Prices | Florida Medicaid Reimbursement Based On False Reported "WAC" | Relator's Cost |
|---|---|---|---|---|---|---|---|---|
| 1993 | $8.59 | $8.59 | | $7.23 | | | $8.03 | $1.07 |
| 1994 | $9.01 | $9.01 | $14.65 | $7.59 | $11.28 | | $8.28 | $0.95 |
| 1995 | $9.29 | $9.29 | $13.93 | $7.82 | $11.73 | | $8.51 | $0.95 |
| 1996 | $9.56 | $9.56 | $14.63 | $8.05 | $12.33 | | $8.92 | $0.95 |
| 1997 | $10.03 | | $15.38 | | $12.95 | $8.87 | $9.37 | $0.95 |
| 1998 | $10.53 | | $11.05 | | $9.30 | | $9.37 | $1.33 |
| 1999 | $11.08 | | $12.06 | | | | | $1.80 |
| 2000 | $11.81 | | | | | | | $1.65 |
| 2001 | $11.81 | | | | | | | $1.65 |

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas 'DEAC" Medicaid Reimbursement Based On False Reported Prices | Florida Medicaid Reimbursement Based On False Reported "WAC" | Relator's Cost |
|---|---|---|---|---|---|---|---|---|
| 1993 | $8.72 | $8.72 | | $7.34 | | | $8.15 | $0.97 |
| 1994 | $9.16 | $9.16 | $10.00 | $7.71 | $8.40 | | $8.40 | $0.96 |
| 1995 | $9.43 | $9.43 | $10.25 | $7.94 | $8.65 | | $8.64 | $0.96 |
| 1996 | $9.71 | $9.71 | $10.80 | $8.16 | $9.10 | | $9.08 | $0.96 |
| 1997 | $10.20 | | $11.30 | | $9.55 | | $9.53 | $0.96 |

80

Civil Action No: 95-1354-CIV-GOLD

| | | | | DEFENDANT ABBOTT | | | | |
|---|---|---|---|---|---|---|---|---|
| 1998 | $10.71 | | $11.25 | | $9.45 | | $9.53 | $1.50 |
| 1999 | $11.25 | | | | | | | $1.46 |
| 2000 | $11.80 | | | | | | | $1.07 |
| 2001 | $11.80 | | | | | | | $1.07 |

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas 'DEAC" Medicaid Reimburse-ment Based On False Reported Prices | Florida Medicaid Reimburse-ment Based On False Reported "WAC" | Relator's Cost |
|---|---|---|---|---|---|---|---|---|
| 1993 | $9.37 | $9.37 | | $7.89 | | | $8.75 | $1.04 |
| 1994 | $9.83 | $9.83 | $10.15 | $8.28 | $8.55 | | $9.00 | $1.03 |
| 1995 | $10.13 | $10.13 | $10.45 | $8.53 | $8.80 | | $9.29 | $1.03 |
| 1996 | $10.44 | $10.44 | $10.95 | $8.79 | $9.25 | | $9.75 | $1.03 |
| 1997 | $10.96 | | $11.50 | | $9.70 | | $10.24 | $1.03 |
| 1998 | $10.96 | | $12.10 | | $10.15 | | | $2.00 |
| 1999 | $12.08 | | | | | | | $1.61 |
| 2000 | $12.68 | | | | | | | $1.15 |
| 2001 | $12.68 | | | | | | | $1.15 |

Civil Action No: 95-1354-CIV-GOLD

| | | | | DEFENDANT ABBOTT | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas 'DEAC" Medicaid Reimbursement Based On False Reported Prices | Florida Medicaid Reimbursement Based On False Reported "WAC" | Relator's Cost |
| 1993 | | $11.64 | | $9.81 | | | $10.90 | $1.30 |
| 1994 | $12.23 | $12.23 | $22.40 | $10.30 | $18.90 | | $11.20 | $1.14 |
| 1995 | $12.60 | $12.59 | $13.00 | $10.61 | $10.90 | | $11.54 | $1.14 |
| 1996 | $12.98 | $12.97 | $13.60 | $10.93 | $11.50 | | $12.13 | $1.14 |
| 1997 | $13.63 | | $14.30 | | $12.10 | | $12.72 | $1.14 |
| 1998 | $14.31 | | $15.00 | | $12.70 | | $12.72 | |
| 1999 | $15.02 | | | | | | | |
| 2000 | $15.77 | | | | | | | $1.26 |
| 2001 | $15.77 | | | | | | | $1.26 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas 'DEAC" Medicaid Reimbursement Based On False Reported Prices | Florida Medicaid Reimbursement Based On False Reported "WAC" | Relator's Cost |
| 1993 | $27.95 | $27.95 | | $23.54 | | | | $3.76 |
| 1994 | $29.35 | $29.36 | $30.23 | $24.72 | $25.46 | | | $3.51 |
| 1995 | $30.23 | $29.36 | $31.45 | $25.46 | $26.48 | | | $3.51 |
| 1996 | $31.44 | $31.45 | $31.45 | $26.48 | $27.80 | | $30.85 | $3.51 |
| 1997 | $33.01 | | $31.45 | | $29.19 | $29.19 | | $3.51 |
| 1998 | $34.66 | | $36.40 | | $30.65 | | | $3.51 |
| 1999 | $36.40 | | | | | | | $3.92 |
| 2000 | $38.21 | | | | | | | $2.98 |

Civil Action No: 95-1354-CIV-GOLD

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **DEFENDANT ABBOTT** | | | | | | | | |
| 2001 | $38.21 | | | | | | | $2.98 |

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas "DEAC" Medicaid Reimbursement Based On False Reported Prices | Florida Medicaid Reimbursement Based On False Reported "WAC" | Relator's Cost |
|---|---|---|---|---|---|---|---|---|
| 1993 | $8.74 | $8.74 | | $7.36 | | | $8.17 | $4.92 |
| 1994 | $9.18 | $9.18 | | $7.73 | $7.96 | | $8.42 | $3.63 |
| 1995 | $9.45 | $9.45 | | $7.96 | $8.28 | | $8.75 | $3.63 |
| 1996 | $9.83 | $9.83 | | $8.28 | $8.69 | | $9.18 | $3.63 |
| 1997 | $10.32 | | $10.83 | | $9.12 | | $9.64 | $3.63 |
| 1998 | $10.83 | | $11.38 | | $9.58 | | $9.68 | |
| 1999 | $11.38 | | | | | | | |
| 2000 | $11.95 | | | | | | | $3.46 |
| 2001 | $11.95 | | | | | | | $3.46 |

Civil Action No: 95-1354-CIV-GOLD

| DEFENDANT ABBOTT | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas 'DEAC' Medicaid Reimbursement Based On False Reported Prices | Florida Medicaid Reimbursement Based On False Reported "WAC" | Relator's Cost |
| 1993 | $85.00 | $100.94 | | $85.00 | | | | $75.00 |
| 1994 | $105.98 | $105.98 | | $89.25 | $91.93 | | | |
| 1995 | $109.17 | $109.17 | | $91.93 | $95.61 | | | $43.00 |
| 1996 | $113.54 | $113.54 | | $95.61 | $100.39 | | $111.40 | $43.00 |
| 1997 | $119.21 | | $125.17 | | $105.41 | | | |
| 1998 | $125.17 | | $131.43 | | $110.68 | | | |
| 1999 | $131.43 | | | | | | | |
| 2000 | $138.00 | | | | | | | $23.38 |
| 2001 | $138.00 | | | | | | | $23.38 |

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA Through FDB Automated System | False Direct Price Reported Through FDB Blue Book | False Direct Price Reported To California Through FDB Automated System | Texas 'DEAC' Medicaid Reimbursement Based On False Reported Prices | Florida Medicaid Reimbursement Based On False Reported "WAC" | Relator's Cost |
|---|---|---|---|---|---|---|---|---|
| 1993 | $23.32 | $23.32 | | $19.64 | | | $21.79 | $7.25 |
| 1994 | $24.49 | $24.49 | | $20.62 | | | $22.45 | $3.20 |
| 1995 | $25.22 | $25.22 | | $21.24 | | | $23.33 | $3.20 |
| 1996 | $26.23 | $26.23 | | $22.09 | | | $24.51 | $3.20 |
| 1997 | $27.54 | | | | | | $26.96 | $3.20 |
| 1998 | $30.29 | | | | | | $26.96 | |
| 1999 | $31.81 | | | | | | | |
| 2000 | $33.40 | | | | | | | |

Civil Action No: 95-1354-CIV-GOLD

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **DEFENDANT ABBOTT** | | | | | | | | |
| 2001 | $33.40 | | | | | | | |

As a direct and proximate result of the actions of the Defendant ABBOTT alleged

herein, the United States has sustained damages recoverable under the False Claims Act,

together with triple damages, penalties, attorneys' fees and costs.

## SECTION NO. 12

### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT

173.

85

Pages 86-171 redacted

Civil Action No: 95-1354-CIV-GOLD

## REQUESTS FOR RELIEF

WHEREFORE, the Relator, on behalf of the UNITED STATES, demands that judgment

be entered in its favor and against Defendants: ABBOTT LABORATORIES, INC.; ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇, with judgment to be entered against each DEFENDANT for the amount of

damages: (1) to the States' Medicaid Programs arising (a) from claims for each

DEFENDANT'S respective specified drugs and (b) jointly and severally with such other

Defendants for damages as set forth in paragraphs 121 and paragraphs 241-246 herein;

and (2) to the Medicare Program arising from claims for those drugs classified under the HCPCS codes covering their specified drugs, and jointly and severally with such other Defendants whose drugs fall under said HCPCS codes, as follows:

1.    On Count I (False Claims Act; Causing Presentation of False Claims) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false claim;

2.    On Count II (False Claims Act; Causing False Statements To Be Used To Get False Claims Paid Or Approved By The GOVERNMENT) for triple the amount of UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

3.    On Count III (False Claims Act; Causing False Statements To Be Used To Conceal An Obligation To Pay Money To The GOVERNMENT) for triple the amount of the UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false or fraudulent claim paid;

4.    On Count IV (False Claims Act; Causing Presentation of False and Fraudulent Claims; Illegal Remuneration) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false claim;

5.    On Count V (False Claims Act; Causing a False Record or Statement to be Made or Used to get a False or Fraudulent Claim Paid or Approved by the Government; Prohibited Referrals, Claims and Compensation Arrangements) for triple the amount of the UNITED

STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement:

6.     On Count VI (False Claims Act; Conspiring To Defraud The Government By Getting A False Or Fraudulent Claim Allowed Or Paid) for triple the amount of the UNITED STATES' and States' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false record or statement.

Further, the Relator, on its behalf, requests that it receive the maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the UNITED STATES, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Relator requests that its award be based upon the total value recovered, both tangible and intangible, including any amounts received from individuals or entities not parties to this action.

## DEMAND FOR JURY TRIAL

A jury trial is demanded in this case.

Respectfully submitted,

_(llee—/h). Sin—)_

James J. Breen
Florida Bar No. 297178
Alison Simon
Florida Bar No. 0109568
THE BREEN LAW FIRM, P.A.
P. O. Box 297470
Pembroke Pines, FL 33029
Telephone: 954-499-1171
Facsimile: 954-499-1173

Civil Action No: 95-1354-CIV-GOLD

Sherrie R. Savett
Gary L. Azorsky
Susan S. Thomas
Jeanne A. Markey
Joy Clairmont
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3000
Facsimile: 215-875-4636

Civil Action No: 95-1354-CIV-GOLD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __11ᵗʰ__ day of December 2002, I caused an original and a copy of this Fourth Amended Complaint to be filed under seal and in camera for sixty (60) days and not to be served on the Defendants named herein or until further order of this Honorable Court.

I HEREBY CERTIFY that prior to this __11ᵗʰ__ day of December 2002, I caused a copy of this Fourth Amended Complaint and written supplemental disclosure letter of the Relator, VEN-A-CARE, to be served on the Government pursuant to Rule 4(i), Fed.R.Civ.P., prior to the filing of this Fourth Amended Complaint by: hand delivering a copy of the Fourth Amended Complaint and written supplemental disclosure letter of the Relator to the United States Attorney for the Southern District of Florida and Mark Lavine, Assistant United States Attorney, Southern District of Florida; and sending a copy of the Fourth Amended Complaint and written supplemental disclosure letter of the Relator by Certified Mail, Return Receipt Requested, to the Attorney General of the United States in Washington, D.C and T. Reed Stephens, Trial Attorney, Department of Justice.

Respectfully submitted,

James J. Breen
Florida Bar No. 297178
Alison W. Simon
Florida Bar No. 0109568
THE BREEN LAW FIRM, P.A.
P.O. Box 297470
Pembroke, Pines, FL 33029
Telephone: 954-499-1171
Facsimile: 954-499-1173

C:\Documents and Settings\Jim Breen\My Documents\FEDERAL\4th Amend\4AmdCmp-Final.wpd

176

Exhibits 1-5 redacted

Case No: 95-1354-CIV-GOLD

# EXHIBIT "6"

Case No: 95-1354-CIV-MARCUS

## EXHIBIT 6
## ALL MIAMI PRICE FRAUD DRUGS
Page 1

| Defendant | Drug | NDC # |
|-----------|------|-------|
| Abbott | Sodium Chloride 0.9% 50 ml | 00074-7101-13 |
| Abbott | Sodium Chloride 0.9% 100 ml | 00074-7101-23 |
| Abbott | Sodium Chloride 0.9% 250 ml | 00074-7983-02 |
| Abbott | Sodium Chloride 0.9% 500 ml | 00074-7983-03 |
| Abbott | Sodium Chloride 0.9% 1000 ml | 00074-7983-09 |
| Abbott | 5% Dextrose in Water 50 ml | 00074-7100-13 |
| Abbott | 5% Dextrose in Water 100 ml | 00074-7100-23 |
| Abbott | 5% Dextrose in Water 250 ml | 00074-7100-02 |
| Abbott | 5% Dextrose in Water 500 ml | 00074-7922-03 |
| Abbott | 5% Dextrose in Water 1000 ml | 00074-7922-09 |
| Abbott | 5% Dextrose/ NaCl 0.9% 250 ml | 00074-7941-02 |
| Abbott | 5% Dextrose/ NaCl 0.9% 500 ml | 00074-7941-03 |
| Abbott | 5% Dextrose/ NaCl 0.9% 1000 ml | 00074-7941-09 |
| Abbott | Ringers Lactate 250 ml | 00074-7953-02 |
| Abbott | Ringers Lactate 500 ml | 00074-7953-03 |
| Abbott | Ringers Lactate 1000 ml | 00074-7953-09 |

Exhibit 6, pages 2-27 redacted

## EXHIBIT 6
### ALL MIAMI PRICE FRAUD DRUGS
Page 28

| Defendant | Drug | NDC # |
|-----------|------|-------|
| Abbott | DROPERIDOL SOLUTION INJECTION USP | 00074-2269-32 |
| Abbott | EDROPHONIUM CHLORIDE INJECTION USP | 00074-2284-15 |
| Abbott | EES 200 SUSP. 100ML | 00074-6306-13 |
| Abbott | ENDRATE150MG/ML) 20ML AMPUL | 00074-6940-03 |
| Abbott | ERYTHROCIN LACTOBIONATE I.V. | 00074-6476-44 |
| Abbott | ERYTHROCIN LACTOBIONATE I.V. | 00074-6481-01 |
| Abbott | ERYTHROCIN LACTOBIONATE -I.V. | 00074-6478-44 |
| Abbott | ERYTHROCIN LACTOBIONATE IV | 00074-6342-05 |
| Abbott | ERYTHROCIN LACTOBIONATE IV | 00074-6365-02 |
| Abbott | ERYTHROCIN LACTOBIONATE-I.V. INJECTION | 00074-6482-01 |
| Abbott | ERYTHROCIN PIGGYBACK | 00074-6368-13 |
| Abbott | ERYTHROCIN PIGGYBACK | 00074-6483-01 |
| Abbott | ERYTHROCIN STEARATE TABLETS | 00074-6346-11 |
| Abbott | ERYTHROCIN STEARATE TABLETS | 00074-6346-19 |

Case No: 95-1354-CIV-MARCUS

## EXHIBIT 6
## ALL MIAMI PRICE FRAUD DRUGS
### Page 29

| Defendant | Drug | NDC # |
|-----------|------|-------|
| Abbott | ERYTHROCIN STEARATE TABLETS | 00074-6346-41 |
| Abbott | ERYTHROMYCIN | 00074-6326-11 |
| Abbott | ERYTHROMYCIN BASE | 00074-6227-13 |
| Abbott | ERYTHROMYCIN BASE 250MG 100'S | 00074-6301-13 |
| Abbott | ERYTHROMYCIN BASE 250MG 500'S | 00074-6301-53 |
| Abbott | ERYTHROMYCIN ETHYLSUCCINATE ORAL SUSPENSION | 00074-3747-16 |
| Abbott | ERYTHROMYCIN ETHYLSUCCINATE ORAL SUSPENSION | 00074-3748-16 |
| Abbott | ETOPOSIDE SOLUTION INJECTION | 00074-1485-01 |
| Abbott | ETOPOSIDE SOLUTION INJECTION | 00074-1485-02 |
| Abbott | ETOPOSIDE SOLUTION INJECTION | 00074-1485-03 |
| Abbott | FENTANYL CITRATE INJECTION | 00074-9093-02 |
| Abbott | FENTANYL CITRATE INJECTION | 00074-9093-20 |
| Abbott | FENTANYL CITRATE INJECTION | 00074-9093-22 |
| Abbott | FENTANYL CITRATE INJECTION | 00074-9093-25 |
| Abbott | FENTANYL CITRATE INJECTION | 00074-9093-26 |

Exhibit 6, pages 30-126 redacted