UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

**REPLY IN SUPPORT OF ABBOTT LABORATORIES INC.'S
RENEWED MOTION FOR A PROTECTIVE ORDER BARRING
THE DEPOSITION OF ITS CEO, MILES WHITE**

The Government's opposition should appear familiar to the Court, for it rehashes the exact same information and arguments offered in support of the Government's first failed effort to compel the deposition of Abbott's CEO and Chairman, Miles White.  Hearing all of these arguments the first time, the Court denied the deposition request, instead permitting the Government to ask Mr. White three questions in writing.  Those questions have now been asked by the Government and answered by Mr. White – who confirmed beyond question that he has no unique or superior knowledge of issues relevant to this case that would warrant a deposition.  As discussed below, the Government's quibbles with Mr. White's answers are groundless, and can provide no reason for the Court to alter its initial ruling.  Despite having every opportunity to do so, the Government cannot offer any new evidence supporting its extraordinary request to depose Mr. White.  Accordingly, that request should, once again, be denied.

      **A.**    **Mr. White's Responses Confirm That He Has No Unique or Superior Personal Knowledge of Relevant Issues.**

At the hearing on July 27, 2007, the Government argued in no uncertain terms that the basis for its request to depose Mr. White was to explore what he knew about the October 2000

letter from Congressman Pete Stark, including how Mr. White reacted to that letter.  (*See* Ex. A at 42-47.)[1]  The Court permitted the Government to pose three written questions to Mr. White on this subject, which they did shortly after the hearing (using subparts to stretch the three questions permitted by the Court into 17).  (*See* Ex. B.)  True to the statements made to the Court, the Government used its questions to explore in detail Mr. White's knowledge of the Stark letter and what, if any, action he directed Abbott to take in response to the letter.  (*Id.*)

Mr. White responded to these questions, fully and under oath.  (*See* Ex. C.)  Putting the factual needle to the Government's ballooning speculation, Mr. White attested that he does not recall if he even *saw* the Stark letter before it was shown to him by counsel in the course of responding to these deposition questions.  (*Id.* at Nos. 1-3.)  His practice in dealing with any correspondence that relates to a pending or potential investigation of, or lawsuit against, Abbott is to send it directly to Abbott's General Counsel and/or Abbott's Litigation Department, who are responsible for addressing such matters.  (*Id.* at No. 1.)  Mr. White does not recall ever discussing the Stark letter with anyone other than counsel, and has no knowledge whether Abbott ever responded to Congressman Stark, or took any other action as a result of the letter.  (*Id.* at No. 3.)[2]  Thus, on the core issues relating to the Stark letter that the Government argued were so important to discuss with Mr. White, he has confirmed that he has absolutely no unique or superior personal knowledge that could possibly warrant a deposition.

Because Mr. White's answers do not fit the Government's theories, they seek to brush his testimony aside as being "lawyer drafted."  (Opp. at 3-4.)  The record belies this.  Mr. White consulted with counsel as part of this exercise, as he had every right to do, but the answers are

---

[1] The exhibits referenced in this reply were appended to Abbott's opening brief.  (Dkt. No. 4774.)

[2] Abbott did not respond to the Stark letter.  (Ex. A at 44-45.)

his own.  (*See* Ex. B (Affidavit of Miles D. White).)³  And his answers are anything but equivocal – he attested clearly and directly that he does not recall if he ever saw the Stark letter until several weeks ago and that he does not know if Abbott ever took any action in response to the letter.  The Government's dissatisfaction with the substance of his responses is no reason to discard them, and it certainly provides no support for a live deposition.  The Government had every opportunity to frame its questions (stretching 3 questions into 17) and had every opportunity to present Mr. White with any documents it deemed relevant to the inquiry (which it did by appending exhibit materials to the questions).  (*See* Ex. B.)  This fishing exercise has come up empty, and it should be put to a stop.

> **B.     The Government Has Not Exhausted Less Burdensome Means of Discovery.**

The Government's failure to establish that Mr. White has some unique personal knowledge of issues relevant to this case, by itself, compels the entry of a protective order barring his deposition.  *See, e.g.*, *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 483 (10th Cir. 1995); *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991).  Equally dispositive, moreover, is the Government's concession that it has not exhausted other, less burdensome means to acquire the information it seeks.  The Government argues that it has no such obligation (Opp. at 8-9), but the case law instructs otherwise.  *See, e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (noting that "failure to take advantage of [an]

---

³ The Government makes much of a recent interrogatory it served relating to these deposition questions, but this is little but smoke and mirrors.  (Opp. at 3-4.)  The Government broadly asked for the names of anyone involved in any way in the "drafting, preparation or completion" of the response to the written deposition questions served on Mr. White.  (Opp. Ex. 1.)  Given that these vague terms could call for even the fact that counsel was consulted by Mr. White, Abbott identified "Miles White, in conjunction with legal counsel." (*Id.*)  As made clear by his affidavit, the answers to the questions are Mr. White's own.  (Ex. B.)

inexpensive, convenient method of discovery, *i.e.* interrogatories, casts serious doubt over [the] claim that [the executive] possessed information that was more than marginally relevant to [the] civil action."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (deposition of Upjohn president properly barred where plaintiff had not first taken depositions of lower-level employees who could provide the same information); *Stone v. Morton Int'l*, 170 F.R.D. 498, 504 (D. Utah 1997) (requiring 30(b)(6) deposition and exhaustion of other discovery methods before corporate officer could be deposed); *Mulvey*, 106 F.R.D. at 366 (quashing deposition notice of CEO because less intrusive discovery methods should be pursued first); *In re Alcatel USA, Inc.*, 11 S.W.3d at 180-81 (holding that trial court abused its discretion by allowing deposition of two Samsung apex executives in part because Plaintiff had been given opportunity to depose other employees who arguably possess the same information and had declined); *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("We conclude it amounts to an abuse of discretion to withhold a protective order when a plaintiff seeks to depose a corporate president . . . absent exhaustion of less intrusive discovery methods.").

In this case, many depositions of lower-level employees have been noticed (and more will surely be noticed in the future), but not yet taken. At a minimum, therefore, the Government should be required to defer its request to depose Mr. White until the end of the discovery process, after the lower-level employees with the greatest knowledge about topics relevant to this litigation have been deposed. Then, the Government can reassess whether, in light of all of the discovery conducted, it still believes that this deposition is necessary. If it does, then the Court can determine, based on a full record, whether there is a proper basis for the deposition to go forward, and on what terms. *See Baine*, 141 F.R.D. at 335; *Liberty Mutual*, 10 Cal. App. 4th at 1287.

## CONCLUSION

For all of the reasons set forth above and in Abbott's original motion, the Court should affirm its previous ruling that the Government is not entitled to a live deposition of Mr. White. Alternatively, the Court at a minimum should order that the Government defer its request to depose Mr. White until the end of the fact discovery period, at which time the parties and, if necessary, the Court can reassess any perceived need for this deposition based upon a more fully-developed record.

Dated: October 31, 2007

Respectfully submitted,

ABBOTT LABORATORIES INC.

By: /s/ Brian J. Murray

James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on October 31, 2007, the foregoing **REPLY IN SUPPORT OF ABBOTT LABORATORIES INC.'S RENEWED MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF ITS CEO, MILES WHITE** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Brian J. Murray

CHI-1611438v1