# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. § | | |
| HARROLD E. (GENE) WRIGHT § | | |
| § | | |
| V. § | No. 5:03CV264 | |
| § | | |
| AGIP, ET AL. § | | |

## ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Certain Defendant's Motion to Compel Production of Documents and to Overrule Objections by the United States (Docket Entry # 1114) was referred to the Honorable Caroline M. Craven for the purposes of hearing and determining said motion. The Court, having reviewed the relevant briefing, is of the opinion the motion should be **DENIED**.

### I. BACKGROUND

The United States intervened in this action on May 30, 2000. The Non-Intervened Defendants served a First Request for the Production of Documents and First Set of Interrogatories pursuant to Fed. R. Civ. P. 33 and 34 on December 5, 2005. The United States did not respond to this discovery nor did it ever serve any objections. Instead, the United States stated in a letter that it was not a party to Relator's claims against the Non-Intervened Defendants since it had declined its right to become a party litigant as to those claims, and as a result, the United States was not subject to party discovery. *See* Letter from Pearson to Zott (April 13, 2005). The United States informed the Defendants that the Department of Interior ("DOI"), like many other federal agencies, has rules known as *Touhy* regulations that govern discovery requests in connection with civil

litigation to which the United States is not a party.

On March 27, 2006, the Non-Intervened Defendants served *Touhy* discovery requests and a parallel Rule 45 document subpoena on the Department of Interior. In the *Touhy* requests, Defendants also asked to take the depositions of thirty-eight current and former MMS employees. Throughout June and July 2006, the Non-Intervened Defendants contacted the United States numerous times to ask about the status of the United States' response. The United States served its *Touhy* responses on August 1, 2006.

Over the next several months, the Non-Intervened Defendants and the United States participated in a number of lengthy telephone conferences and exchanged correspondence regarding outstanding discovery issues, including RIK documents and data and limitations the United States sought to impose on the testimony of MMS employees. Most of issues were resolved through negotiation. A remaining issue regarding Defendant's request for certain royalty in kind documents was resolved after the filing of Defendant's current motion. However, one disagreement remains at issue between the Non-Intervened Defendants and the United States: the United States' denial of the Non-Intervened Defendants' request to the extent it seeks testimony from MMS employees concerning their personal interpretation or application of the regulations that was never communicated to a Defendant.[1]

The United States explains it cannot agree to the Non-Intervened Defendants' request to depose multiple DOI employees about their personal views of MMS' regulations. While the United States refuses to permit the opinion testimony sought by the Non-Intervened Defendants, it is willing allow the depositions of MMS auditors and supervisory auditors as to their interactions with

---

[1] For the sake of brevity, the United States refers to this as opinion testimony.

particular Non-Intervened Defendants and to produce Mr. Price as a Rule 30(b)(6) witness on MMS's official interpretation of its applicable royalty regulations. The United States has not denied the request regarding interpretations or applications of the regulations relating to Relator's claims that were actually communicated to Defendant nor has the request been denied to the extent it seeks testimony relating to Relator's claims concerning the particular findings made by an MMS employee in the context of an audit of a particular Defendant.

## II. DEFENDANTS' MOTION

### A. Defendants' assertions

In their current motion to compel, the Non-Intervened Defendants ("Defendants") ask this Court to overrule the United States' objections to the scope of current and former MMS witness' testimony. Defendants clarify that they do not seek "opinion" testimony from these fact witnesses, as urged by the United States, but instead seek only factual testimony about their contemporaneous understanding and application of the rules and regulations that Defendants are charged with knowingly violating. According to Defendants, courts have routinely relied on such evidence to reject FCA liability on grounds that a regulation was ambiguous or a defendant's interpretation and actions were reasonable under the circumstances.

Defendants also assert the United States misunderstands intervention in a federal action. Specifically, Defendants take issue with the United States's position that it is not a party to the "actions" in which it has intervened, but instead is a party only to selected "claims" within those actions. According to Defendants, a party intervening in a federal action is a party to that action in its entirety—including the United States.

B.  **The United States' response**

The United States asserts the DOI has not denied the Defendants' *Touhy* request regarding interpretations or applications of the regulations relating to Relator's claims that were actually communicated to Defendants nor have the *Touhy* request been denied to the extent it seeks testimony relating to Relator's claims concerning the particular findings made by an MMS employee in the context of an audit of a particular Defendant. The United States asserts "opinion" testimony sought by Defendants is not relevant in this action regardless of whether the United States is subject to party discovery as to the declined claims.

### III.  DISCUSSION

The Court agrees with the United States that regardless of whether the United States is subject to party discovery as to the declined claims, the testimony sought by Defendants must be relevant to the claims or defenses involved in this case. The Court considers the relevance below.

A.  **The parties' positions**

Defendants assert the MMS auditors' understanding of the rules and regulations is relevant to the questions of whether the regulations are ambiguous, imprecise, or subject to differing interpretations, as well as to whether Defendants' interpretation and application of those regulations was reasonable. Defendants state it is not enough that the United States is willing to allow the MMS auditors to testify regarding discussions of MMS rules or regulations that arose during interactions with the Non-Intervened Defendants or were conveyed in communications to the Non-Intervened Defendants.

Defendants state they do not seek inadmissible "legal opinions" from these witnesses, but rather they are seeking only factual information—what the understanding of the auditors was at the

4

relevant time about the regulations and their application. Defendants state they simply want to question knowledgeable MMS witnesses who dealt with Defendants during the relevant time on royalty payment issues about their understanding and application of the rules and regulations Defendants are accused of knowingly violating. According to Defendants, an MMS witness's understanding of the proper application of an MMS rule or regulation at a given point in time is a factual issue, not the subject of an opinion.

Regarding relevance, Defendants specifically contend the reasonableness of their interpretation and application of various MMS rules and regulations is directly relevant to whether they "knowingly" submitted false claims to the government. According to Defendants, testimony from government employees about their own interpretation and application of those rules at the relevant time is highly probative, particularly if it corroborates Defendants' understanding or demonstrates that the rules are subject to different reasonable interpretations. Defendants rely on, among other cases, *U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 2007 WL 836935, at *13-14 (S.D. Tex. Mar. 15, 2007), wherein state employees' testimony that phrase was undefined in regulations was evidence that claim was not false).

On the other hand, the United States asserts the opinion testimony sought by Defendants is improper. The DOI denied the *Touhy* request, finding the opinion testimony irrelevant. The Court agrees with the United States that the MMS employees' interpretation of the regulations is not relevant to any claim or defense in this lawsuit.

**B.      Applicable Law**

FED. R. CIV. P. 26(b)(1) provides parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. All discovery is subject to the

5

limitations imposed by Rule 26(b)(2)(i), (ii), and (iii). Specifically, Rule 26(b)(2)(iii) allows the Court to limit discovery if the burden or expense of the proposed discovery outweighs the likely benefits of the discovery, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

**C.     Discussion**

An FCA violation requires, among other things, a knowingly false statement. 31 U.S.C. § 3729(a). A person is deemed to have acted "knowingly" under the FCA only when he or she "acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). "Claims are not 'false' under the FCA when reasonable persons can disagree" regarding whether a claim or payment was properly submitted. *United States ex rel. Gudur v. Deloitte Consulting LLP*, 2007 WL 836935, at *11 (S.D. Tex. Mar. 15, 2007).

Thus, according to Defendants, the reasonableness of Defendants' interpretation and application of various MMS rules and regulations is an essential part of this case. Defendants further assert, to the extent the MMS witnesses offer different understandings and interpretations of the governing rules, this is relevant, exculpatory evidence. *See U.S. v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 (5th Cir. 2003)(Jones, J. concurring)("Where disputed legal issues arise from vague provisions or regulations, a [party's] decision to take advantage of a position cannot result in his filing a 'knowingly' false claim")(internal quotation marks omitted).

Again, liability in this case turns on two issues: falsity and knowledge. 31 U.S.C. § 3729(a)(7). The issue of falsity goes to whether a claim is objectively correct, not to whether the

defendant or anyone else, subjectively believes it is correct. *United States ex rel. Oliver v. The Parsons Co.,* 195 F.3d 457, 463 (9th Cir. 1999), *cert. denied,* 530 U.S. 1228 (2000). In *Oliver*, the plaintiff qui tam alleged that her employer "knowingly violated the federal Cost Accounting Standards in an effort to overcharge the United States, thereby giving rise to a claim under the [FCA]." *Id.* at 460. Regarding the falsity requirement, the Ninth Circuit ruled that the district court had "erred in applying a 'reasonable interpretation' approach to determining falsity under the [FCA]." *Id.* The district court held, on a motion for summary judgment, that "the 'falsity' element under the [FCA] was not met because [the defendant] demonstrated that it made a reasonable interpretation of an ambiguous accounting standard." *Id.* at 462.

The Ninth Circuit, however, held "it is [the defendant's] compliance with these regulations, *as interpreted by this court*, that determines whether its accounting practices resulted in the submission of a 'false claim' under the [FCA." *Id.* at 463 (emphasis added). Evidence that the defendant adopted a "reasonable interpretation" of the regulations at issue did not preclude a finding of falsity and was ultimately irrelevant to the question of falsity. *Id.* The Ninth Circuit did acknowledge that while the "question of 'falsity' itself is determined by whether [the defendant's] representations were accurate in light of applicable law," the "reasonableness of [the defendant's] interpretation of the applicable accounting standards may be relevant to whether it knowingly submitted a false claim," i.e., scienter. *Id.*

Given the *Oliver* case, the Court finds an agency employee's interpretation of MMS regulations is irrelevant to the issue of falsity. *See also United States v. Lachman,* 387 F.3d 42, 54 (1st Cir. 2004)(recognizing that "non-public or informal understandings of agency officials concerning the meaning of a regulation are. . . not relevant" to the regulation's legal interpretation).

7

Regarding the scienter element of FCA liability, a defendant's knowledge under the FCA is the *defendant's own* knowledge. 31 U.S.C. § 3729(b).

The Non-Intervened-Defendants attempt to draw a connection between what an agency employee might have thought about MMS regulations and the Defendants' own knowledge, suggesting that an MMS employee's hypothetical confusion about a regulation's meaning is probative of the companies' scienter. The Court is not convinced, however, of the relation between the Defendants' state of mind when they submitted the statements at issue and an agency employee's opinion about what the regulations mean.

The court in *United States v. Tenet Healthcare Corp.,* No. CV-03-206 (C.D. Cal. Sept. 7, 2005), attached as Exhibit C to the United States' response, denied a similar request for discovery which was intended to establish the existence of general confusion and thereby bolster the reasonableness of the defendants' claimed interpretation. In that case, the district court rejected the defendant's request for discovery of information designed to show that Medicare intermediaries and the general public were confused by the coding guidelines that the defendant allegedly violated. The district court held that "'[e]vidence of others' confusion over the coding standards does not tend to establish whether Tenet itself was confused by those coding standards, nor does it tend to show that Tenet's interpretations of those standards was 'reasonable.'" *Id.* at 9. The same reasoning supports DOI's denial of the opinion testimony sought in the instant case.

The opinion of an agency employee that was never communicated to a Defendant is not relevant to a Defendant's state of mind, *i.e.*, whether it "knowingly" submitted a false claim or statement. The Non-Intervened Defendants are unable to point to a case that upheld the type of discovery they seek. The United States acknowledges that if an MMS employee communicated a

8

regulatory interpretation to a defendant, then that interpretation might be relevant to the issue of knowledge. Accordingly, in response to the Defendants' *Touhy* request, DOI agreed to allow agency employees who interacted with a particular company to testify on those interactions with respect to Mr. Wright's claims. However, the personal opinions of agency employees that were never communicated to a Defendant are simply irrelevant to either issues of falsity or knowledge.

The two cases cited by Defendants in support of their argument on this issue do not compel a contrary conclusion. In *United States v. R. D. Prabhu*, 442 F. Supp. 2d 1008, 1028 (D. Nev. 2006) the court concluded not just that the defendants' interpretation of the applicable coding requirements was reasonable, but that the defendants actually complied with those requirements. Any suggestion in *Prabhu* that a reasonable but erroneous interpretation of the law is sufficient to defeat the element of falsity is contrary to the Ninth Circuit's decision in *Oliver*.

In addition, Defendants' reliance on *United States ex tel. Gudur v. Deloitte Consulting LLP*, 2007 WL 836935 (S.D. Tex. Mar. 15, 2007) is equally unpersuasive. While the *Gudur* decision does state that claims are not false "if reasonable persons can disagree regarding whether service was properly billed to the Government," the court does not actually rely upon this statement as the basis for its decision. *Gudur* at * 11. Moreover, the United States asserts the four cases *Gudur* cites as supporting authority do not in fact offer support, as evidenced by the fact that two of the four cases are decisions from the Ninth Circuit, which rejected a "reasonableness" defense to falsity in *Oliver*, 195 F.3d at 462-63.

Accordingly, for the reasons set forth in *Oliver* and *United States v. Tenet Healthcare Corp.*, No. CV-03-206, at 9 (C.D. Cal. Sept. 7, 2005), this Court rejects Defendants' reasonableness argument. *See also Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d

9

1032, 1053 (8th Cir. 2002)("If the [plaintiff] shows the defendants certified compliance with the regulation knowing that the HCFA interpreted the regulations in a certain way and that their actions did not satisfy the requirements of the regulation as the HCFA interpreted it, any possible ambiguity of the regulations is water under the bridge."); *United States ex tel. K&R Ltd. Partnership v. Massachusetts Housing Finance Agency*, 456 F. Supp. 2.d 46, 56 n.6 (D.D.C. 2006)("[The defendant] argues that its claims cannot be false because its interpretation of the notes, even if incorrect, was objectively reasonable. The reasonableness of [defendant's] interpretation goes to the scienter prong, not falsity."); *Visiting Nurse Ass'n of Brooklyn v. Thompson*, 378 F. Supp. 2d 75, 97 (E.D. N.Y. 2004)(rejecting the defendants' "assertion that FCA liability cannot attach in any case where the meaning of a regulation or statute is disputed").

Finally, even if the Court were to find Defendants' request relevant, the Court is of the opinion the burden outweighs the minimal relevance. Requiring MMS employees who have never interacted with a Defendant to be deposed merely to provide their opinion about the meaning of an MMS regulation would be unduly burdensome on the agency. Taking those employees away from their official duties merely to be questioned about their personal opinion of the meaning of the MMS regulations in the context of Relator's varied and numerous allegations is simply not justified. The burden on the United States would also include the considerable resources the government will have to expend preparing those employees for depositions covering such varied topics.

Based on the foregoing, it is

**ORDERED** that Certain Defendant's Motion to Compel Production of Documents and to Overrule Objections by the United States (Docket Entry # 1114) is **DENIED**. It is further

**ORDERED** that to the extent it has not already done so, the United States shall produce for

10

deposition, at dates and times mutually agreeable to the parties, MMS auditors and supervisory auditors regarding the following: (1) their interactions with particular Non-Intervened Defendants; (2) interpretations or applications of the regulations relating to Relator's claims that were actually communicated to Defendant(s); (3) testimony relating to Relator's claims concerning the particular findings made by an MMS employee in the context of an audit of a particular Defendant. The United States shall also produce Mr. Price as a Rule 30(b)(6) witness on MMS's official interpretation of its applicable royalty regulations. It is further

    **ORDERED** that to the extent it has not already done so, the United States shall produce to the Non-Intervened Defendants the royalty in kind documents agreed upon by the parties.

**SIGNED this 28th day of June, 2007.**

*/s/ Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE