# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

In Re:                          )
PHARMACEUTICAL INDUSTRY          ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE          ) MDL No. 1456
LITIGATION                       ) Pages 1 - 49

MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 27, 2007, 10:10 a.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

Page 2

```
 1  APPEARANCES:
 2  For the Plaintiffs:
 3      RENEE' BROOKER, ESQ. and GEJAA T. GOBENA, ESQ., United
        States Department of Justice, Civil Division, Commercial
 4      Litigation, Fraud, 601 D Street, N.W., Washington, D.C.,
        20004.
 5
        JAMES J. BREEN, ESQ., 3562 Old Milton Parkway,
 6      Alpharetta, Georgia, 30005, for the Relator, Ven-A-Care of
        the Florida Keys.
 7
 8  For the Defendants:
 9      JAMES R. DALY, ESQ., Jones Day,
        77 West Wacker, Chicago, Illinois, 60601-1692, for Abbott
10      Laboratories.
```

Page 3

```
 1              PROCEEDINGS
 2      THE CLERK: In re: Pharmaceutical Industry Average
 3  Wholesale Price Litigation, Civil Action 01-12257, will now
 4  be heard before this Court. Will counsel please identify
 5  themselves for the record.
 6      MS. BROOKER: Good morning, your Honor. Renee'
 7  Brooker on behalf of the United States. I'm from the
 8  Commercial Litigation Branch in Washington, D.C. at Main
 9  Justice.
10      MR. BREEN: Jim Breen on behalf of the Relator,
11  Ven-A-Care of the Florida Keys.
12      MR. GOBENA: Gejaa Gobena on behalf of the United
13  States.
14      MR. DALY: Good morning, your Honor. Jim Daly on
15  behalf of Abbott Laboratories.
16      THE COURT: Now, this is just against Abbott?
17      MR. DALY: Yes, your Honor.
18      MS. BROOKER: This particular case, yes, your
19  Honor.
20      THE COURT: That sends chills down my spine. So
21  are there others? I know I've got a couple of other
22  intervenor cases.
23      MS. BROOKER: That's right, your Honor.
24      THE COURT: And what do those involve?
25      MS. BROOKER: They involve the same issues,
```

Page 4

```
 1  obviously different pharmaceutical manufacturers, different
 2  drugs, but those are Dey and Roxane, and I do not believe
 3  that Roxane is before the Court. The United States did file
 4  an unopposed motion -- I believe it may have been Friday --
 5  to transfer a third case before your Honor.
 6      THE COURT: Now, does it make some sense -- how old
 7  are those other two cases?
 8      MS. BROOKER: They're about the same age, your
 9  Honor, as the Abbott case.
10      THE COURT: Does it make some sense to put you all
11  into some sort of a lockstep?
12      MS. BROOKER: It does make sense to us, your Honor,
13  yes.
14      MR. DALY: From our perspective, it does not,
15  Judge, for the following main reason: I mean, we've been at
16  this since the spring. We have a discovery cutoff of the end
17  of this year to 12/31/07. My understanding, although I'm not
18  directly privy to the conversations that the United States
19  has had with the other defendants, but I believe they are
20  agreeing to much longer time periods to deal with their case.
21      THE COURT: So you think it's -- so bring me up
22  to -- this is why I brought you all in here.
23      MR. DALY: Right.
24      THE COURT: This is somewhat, I have to say I'm
25  sorry, a court mistake. This somehow ended up in purgatory
```

Page 5

```
 1  between the United States Magistrate Judge and me, with me
 2  thinking she was going to handle it and she thinking that I
 3  was going to handle it. And the reality is that we both
 4  talked, and I brought it back up here because I understood it
 5  was part of a bigger picture, so --
 6      MS. BROOKER: It is, your Honor.
 7      THE COURT: So I probably should hear what's been
 8  happening so far, you know, like, what needs to happen to
 9  bring this case to the point where --
10      MS. BROOKER: Yes, your Honor, and I think I can
11  give you a brief overview of where the parties are at.
12      The United States and Abbott and relator Ven-A-Care
13  have been proceeding with discovery in this case. A couple
14  depositions have been taken. There are deposition notices
15  outstanding, document requests, interrogatories. Requests
16  for admissions have been served. At the time that Dey joined
17  a few months ago, we have been attempting to, and Dey has
18  been cooperative, in trying to coordinate at least with
19  respect to the deposition discovery that's being taken
20  against the United States.
21      THE COURT: Let me stop you right there. When you
22  say Dey joined, it's a separate action against Dey?
23      MS. BROOKER: Yes, it is.
24      THE COURT: So you just mean sort of informal
25  coordination?
```

Page 18

1  It's been fully briefed.
2      THE COURT: Oh, well, I didn't know that.
3      MS. BROOKER: Yes.
4      MR. DALY: It's before Judge Magistrate Bowler,
5  your Honor.
6      THE COURT: So why don't you just let her decide?
7  Why am I even ruling on it?
8      MR. BREEN: Your Honor, without the suggestion you
9  made, I can't file the documents, and this is an important
10 point. Let me just add -- can I ask one question to make
11 sure I -- can I serve the government with this motion and
12 including the sealed documents?
13     MR. DALY: You know, it's hard for me to say in
14 terms of whatever it is that you're doing, Mr. Breen. I
15 mean, our problem is this, Judge: I mean, there are temporal
16 problems. The government is only suing us up until 2001.
17 They cut off their complaint thereafter. Mr. Breen in Texas
18 is suing us up to the present day. Every hour that goes by
19 is part of Mr. Breen's suit there.
20     THE COURT: Is this based on AWP?
21     MR. BREEN: Yes, your Honor, the same case.
22     THE COURT: Let me just say, in one of my many
23 other suits, I cut things off at 2003 because at that point
24 the Medicare Modernization Act came through, so that's where
25 I cut it off. I don't know where the -- that strikes me as a

Page 19

1  reasonable cutoff, at least for the time being. That's when
2  the ASP came into play and the whole world knew about
3  inflated AWPs, or at least anyone who was part of this world
4  knew probably by 2001, but certainly by the time Congress
5  passed the statute, right, everybody knew? So that would be
6  one compromise date, a couple of years after the ending of
7  your class. I mean, some of this should just be worked out.
8      MS. BROOKER: Judge, we have been trying to work
9  this out for three months, and let me just explain. Here's
10 the problem: The government, we are just standing still. We
11 are prevented from moving further. Here's what we cannot do.
12     THE COURT: What do you want me to do now? I
13 haven't read these motions to compel? I walked in here
14 thinking I was just going to set deadlines. You may be right
15 or wrong. I'm trying to cut through this, okay?
16     MS. BROOKER: Yes, your Honor. We're just asking
17 for, frankly, what all the CMOs have said, even your most
18 recent --
19     THE COURT: I can't rule off the bench. I haven't
20 even read my CMOs. I don't remember what the debate was. I
21 don't know. So I'm happy to rule. I can't do it right this
22 second, that's all. I think this compromise will get you
23 through a lot. And so I am suggesting that what -- you may
24 win. You may win. I haven't read anything. I don't know
25 about you; I don't know how you rule off the bench when you

Page 20

1  haven't read anything. I don't remember the CMOs. I don't
2  know what the issues are. I haven't read your full-blown
3  recent complaint. I don't know the case. This is my fault
4  that I thought the CMO had been entered a millennia ago.
5  I'll enter your agreed-upon CMO. Then I promise to get to
6  your issues as soon as I read the briefs. I just don't know.
7      What I do know is, I can cut through a fair amount
8  of this if I'm going to have you show to the other side the
9  documents that you -- I'm sure you're a fine attorney, and I
10 don't know whether at this point we need to get agreement to
11 show it to the government or not. And if in fact you can't
12 resolve it based on that, then what I'm going to do is, I
13 will either -- I will forward all the documents over to
14 Judge Bowler, and hopefully she'll rule on it. Does she
15 know -- when was it fully joined, the motion to compel?
16     MS. BROOKER: The last time we had appeared before
17 Judge Bowler it had already been fully briefed. Do you
18 recall --
19     MR. DALY: It was in January.
20     THE COURT: She's away now, I think.
21     MS. BROOKER: Yes, that's partly the reason, I
22 believe, for the delay.
23     THE COURT: She's been away for a couple of weeks,
24 so --
25     MS. BROOKER: Yes, but in the meantime, just

Page 21

1  providing the status, we just wanted the Court to know that
2  the discovery clock is ticking, and we can't speak with
3  plaintiff's counsel in this case about this case. We can't
4  speak with our own co-plaintiff in this case about any
5  documents or any discovery in the case. Abbott has told us
6  that when we cross-notice depositions in this MDL proceeding
7  or in other cases, they're probably going to kick us out
8  whenever they deem something irrelevant.
9      MR. DALY: I haven't said that, your Honor.
10     MR. BREEN: Counsel, your cocounsel has said that
11 on a couple of occasions.
12     MS. BROOKER: Repeatedly.
13     THE COURT: Let me say this, that you're precluded
14 from doing that. Okay, so we're going to go through this.
15 We're not going to stop depositions. We're going to keep
16 this thing going. Nothing is so sacrosanct that --
17     MR. DALY: Judge, we haven't thrown anybody out.
18     THE COURT: Everybody can stay in.
19     MS. BROOKER: We don't have the documents is the
20 problem.
21     THE COURT: All right, you don't have the
22 documents. We need to proceed with discovery. You need to
23 put together all the documents that you think -- do you have
24 some team of paralegals or someone --
25     MR. BREEN: Your Honor, we put so much money into

```
 1              C E R T I F I C A T E
 2
 3
    UNITED STATES DISTRICT COURT )
 4  DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )
 5
 6
 7
 8       I, Lee A. Marzilli, Official Federal Court
 9  Reporter, do hereby certify that the foregoing transcript,
10  Pages 1 through 49 inclusive, was recorded by me
11  stenographically at the time and place aforesaid in Civil
12  Action No. 01-12257-PBS, MDL No. 1456, In re: Pharmaceutical
13  Industry Average Wholesale Price Litigation, and thereafter
14  by me reduced to typewriting and is a true and accurate
15  record of the proceedings.
16       In witness whereof I have hereunto set my hand this
17  5th day of March, 2007.
18
19
20
21
22
23  _____
    LEE A. MARZILLI, CRR
24  OFFICIAL FEDERAL COURT REPORTER
25
```