# Exhibit A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE LITIGATION ) | MDL No. 1456 |
| ) | |
| ) | Civil Action No. 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO ) | |
| 01-CV-12257-PBS AND 01-CV-339 ) | Judge Patti B. Saris |
| ) | |

**FINDINGS AND ORDER ON MOTION OF
TRACK 1 DEFENDANTS FOR THE ENTRY OF JUDGMENTS
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b)</u>**

Before the Court is the motion of defendants AstraZeneca Pharmaceuticals LP

("AstraZeneca"); Bristol-Myers Squibb Company and Oncology Therapeutics Network

Corporation (together "BMS"); Johnson & Johnson, Centocor, Inc. and Ortho Biotech Products,

L.P. (together "the J&J Defendants"); and Schering-Plough Corporation and Schering

Corporation[1] (together "Schering") and Warrick Pharmaceuticals Corporation ("Warrick")

(together "Schering/Warrick") for the entry of judgments pursuant to Fed. R. Civ. P. 54(b) with a

stay pending appeal.  Upon consideration of the motion and the submissions of the parties, the

Court grants the motion.  In accordance with Rule 54(b), the Court makes the following findings.

*See Spiegel v. Trustees of Tufts College,* 843 F. 2d 38, 42-43 (1st Cir. 1988).

<u>Findings</u>

1.      This is a multi-district litigation ("MDL") consolidating a number of class

actions that were brought against 16 pharmaceutical manufacturers beginning in 2001.  The

actions, as originally pleaded, included federal claims under the Racketeer Influenced Corrupt

---

[1] Schering Corporation is a wholly owned subsidiary of Schering-Plough Corporation, a holding company that does not manufacture or sell any pharmaceuticals.  While Schering Corporation was not named a defendant in the 4th AMCC, the branded drugs at issue were manufactured and sold by that company.

Organizations Act ("RICO") and various state consumer protection statutes.  The Court dismissed the RICO claims and exercised supplemental jurisdiction over the consumer protection claims.

2.      The essence of the claims was that defendants caused various industry publications – such as the Red Book, First DataBank and MediSpan – to publish fictitious average wholesale prices ("AWPs").  These AWPs were used by Medicare and third party payors ("TPPs"), such as insurance companies, to establish payments made to doctors for physician-administered drugs, such as chemotherapy agents.  Plaintiffs claimed that the AWPs were fictitious because they exceeded average sale prices ("ASPs").  Plaintiffs also claim that each Defendant unlawfully marketed the 'spread' or difference between the AWP and the actual acquisition price of the drugs.

3.      In March 2004, the Court created a "fast track" consisting of five defendants or defendant groups:  AstraZeneca, BMS, GlaxoSmithKline ("GSK"), the J&J Defendants, and Schering/Warrick.  The remaining defendants were placed in a "regular track" for discovery and trial.[2]  The fast track defendants became known as the "Track 1" defendants, and the remaining defendants became known as the "Track 2" defendants.

4.      In January 2006, the Court certified three classes for trial against the Track 1 defendants:  (a) Class 1 -- consumers in 40 states who made co-payments for drugs under Medicare Part B; (b) Class 2 -- TPPs in Massachusetts who made co-payments for drugs under Medicare Part B; and (c) Class 3 -- consumers and TPPs in Massachusetts who paid for drugs in non-Medicare transactions based on contracts expressly using AWP.  Class 1 was not certified as to Schering/Warrick, because there was no class representative who had made a co-payment for

---

[2] The remaining defendants are Abbott, Amgen, the Aventis Group, Baxter, Bayer, Dey, the Fujisawa Group, Immunex, Pfizer/Pharmacia, Sicor and Watson.

a Schering or Warrick product under Medicare Part B.  *In re Pharm. Indus. Average Wholesale Price Litigation*, 233 F.R.D. 229 (D. Mass. 2006) (class certification order).

5.      By order dated November 2, 2006, based on the record developed at that time, the Court denied plaintiffs' motion for partial summary judgment as to the Class 1 and Class 2 claims, and also denied the Track 1 defendants' motions for summary judgment as to the Class 1 and Class 2 claims, except with respect to Medicare Part B drugs furnished in 2004 and thereafter.  *In re: Pharm. Indus. Average Wholesale Price Litig*., 460 F. Supp. 2d 277 (D. Mass. 2006).   The Court also denied the Track 1 defendants' motions for summary judgment on the Class 3 claims.

6.      As of the date of this Order, the claims of all three classes have now been resolved as to the Track 1 defendants, as described below.

7.      GSK has settled the claims of all three classes.

8.      A settlement of the Class 1 claims against AstraZeneca and BMS has been reached and awaits final approval of the Court.

9.      The Class 2 and 3 claims against AstraZeneca, BMS, the J&J Defendants, and Schering/Warrick, alleging violations of Mass. Gen. Laws ch. 93A, proceeded to trial before the Court in November of 2006.  On June 21, 2007, the Court issued Findings of Fact and Conclusions of Law holding AstraZeneca, BMS and Warrick liable with respect to certain drugs for certain time periods as set forth in the Court's opinion.  *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 491 F. 2d 20 (D. Mass. 2007).  The Court hereby incorporates that opinion as if set forth fully herein.

3

10.    In the same opinion, the Court dismissed all Class 2 and 3 claims against Schering.  *Id.*  There were no Class 3 claims presented at trial against Warrick.  The Court also dismissed the claims of all three classes against the J&J Defendants.  *Id.*

11.    On August 9, 2007, the Court held an additional hearing on damages.

12.    On November 1, 2007, the Court issued a Memorandum and Order on damages.  *In re Pharmaceutical Industry Average Wholesale Price Litigation*, __ F.Supp.2d __, 2007 WL 3225922 (D. Mass. Nov. 1, 2007).  The Court found that AstraZeneca's conduct was knowing and willful as to Class 2 and awarded double damages as to AstraZeneca for Class 2. *Id.* at *3.  The Court also found that BMS's conduct was knowing and willful as to Class 2 when "less than ten percent of its sales were made within 5% of the list price, and the spreads were huge," and thus awarded double damages as to Taxol for 2002, Cytoxan in 1999 and 2001, and Rubex in 1998 and 2002.  *Id.* at *3-4.  The Court found that neither BMS's or AstraZeneca's conduct was knowing and willful as to Class 3 and accordingly did not award multiple damages as to Class 3.  The Court issued a final award of damages and interest against AstraZeneca and BMS as follows:

|  | Class 2 | | Class 3 | Overall |
|---|---|---|---|---|
|  | Single Damages With Pre-Judgment Interest | Total Damages with Doubling | Single Damages With Pre-Judgment Interest | Total Award for Classes 2 and 3 |
| AstraZeneca | $ 3,467,267 | $ 5,557,370 | $ 7,384,499 | $ 12,941,869 |
| BMS | $ 309,267 | $ 388,557 | $ 307,037 | $ 695,594 |

*Id.* at *4.

13.    As to Warrick, after considering further expert testimony, the Court found in its November 1, 2007 Order, that "Warrick has produced undisputed evidence that its unfair and deceptive conduct in inflating the AWP for albuterol did not cause Class 2 any damages

4

because of the methodology for calculating Medicare reimbursement for multi-source drugs based on a median." *Id.*  Thus, the Court ordered entry of judgment in favor of Warrick.  *Id.*

14.   As to the J&J Defendants, the Court ruled, among other things, that the J&J Defendants' conduct did not violate Mass. Gen. Laws ch. 93A, in part because the spreads on the J&J Defendants' subject drugs (Procrit® and Remicade®) never substantially exceeded the range of spreads plaintiffs themselves contend was generally expected by the industry and government.  In particular it was undisputed that the spreads on Procrit® did not exceed 30% in any year for any of the 15 Procrit® NDCs, and that the spread on Remicade®, depending upon the method of calculation, either did not exceed 30% in any year or only exceeded 30% by 2.1% in 1999 and 1.9% in 2001.  Accordingly, the Court ruled that the AWPs on Procrit® and Remicade® were within the range of spreads plaintiffs said was generally expected by the industry and government, predictably related to acquisition cost, and not deceptive.  As a result, the Court ruled that the claims of Class 2 and Class 3 should be dismissed.  As to the claims of Class 1, Plaintiffs had advocated a "zero tolerance" approach to liability and damages (as they had for Class 2).  The Court rejected this approach.  Again, because it was undisputed that the Procrit® and Remicade® spreads never substantially exceeded the range of spreads plaintiffs themselves contend were generally expected by industry and government, no reasonable jury could find that the J&J Defendants' conduct violated the consumer protection laws applicable to the Class 1 claims.  Accordingly, on July 3, 2007, the Court noted on the record that the June 21, 2007 order dismissing the J&J Defendants applied to the claims by members of Class 1. (7/03/07 Tr. at 9-10.)

15.   Rule 54(b) provides, in pertinent part:

5

> When more than one claim for relief is presented in an action . . .
> or when multiple parties are involved, the court may direct the
> entry of a final judgment as to one or more but fewer than all of the
> claims or parties only upon an express determination that there is
> no just reason for delay and upon an express direction for the entry
> of judgment.

Fed R. Civ. P. 54(b).

16.    As a threshold matter the Court must conclude that the judgments would be "final" within the meaning of 28 U.S.C. § 1291. To be final, the judgments must dispose of all the rights and liabilities of at least one party as to at least one claim. Here, there are no further proceedings contemplated against these defendants with respect to the claims adjudicated at trial; nor are there any other claims between these parties. Accordingly, the judgments would have the requisite degree of finality.

17.    Having concluded that the judgments would be final, the Court may direct the entry of final judgments upon an express finding that "there is no just reason for delay." Fed. R. Civ. P. 54(b). For the reasons set forth below, the Court finds that there is no just reason to delay the entry of judgments with respect to the Track 1 defendants.

18.    There are no unadjudicated claims or counter claims pending in the district court with respect to the Track 1 defendants. As a result, there are no subsequent proceedings between the parties that threaten to moot the need for ultimate resolution of these issues in the Court of Appeals. Nor are there any issues with respect to the Track 2 defendants that will affect my decision with respect to the Track 1 defendants.

19.    Furthermore, the claims against the Track 1 defendants present issues unique to each of them that are now ripe for appeal. For example, the claim against AstraZeneca related to a single-source drug, Zoladex, which, unlike the other products at issue, faced branded therapeutic competition throughout the relevant time period. The claim against BMS related

6

primarily to single-source drugs that had lost exclusivity and became subject to multi-source competition from generic drugs.  The claim against the J&J Defendants related to single source drugs as to which there was no generic competition.  The claim against Schering also related to single-source drugs, while the claim against Warrick by Class 2 related to Albuterol, a multi-source drug for which there was special pricing under the Medicare program.  These and other distinct variations in the drugs at issue for the Track 1 defendants eliminate the prospect of successive appellate review and weigh in favor of immediate appeals.

        20.     The equities likewise weigh against requiring the Track 1 defendants to wait for resolution of the Track 2 claims before obtaining appellate review, in part because the Track 1 defendants are also defendants in AWP-related litigation in state courts and, in some of those cases, the parties may argue that this Court's Findings and Conclusions should have some effect on the issues presented in those cases.   Under these circumstances, it would be inequitable to require the Track 1 defendants to wait for years before obtaining appellate review.  Moreover, Plaintiffs will not be prejudiced by the immediate entry of judgments against AstraZeneca and BMS pursuant to Rule 54(b), but rather, if this Court's decision were to be affirmed, Plaintiffs will benefit from having judgments capable of enforcement and distribution to class members prior to resolution of the Track 2 claims.  Similarly, there is no just reason to delay entry of judgments against plaintiffs with respect to the claims against the J&J Defendants, and Schering/Warrick.

## **Order**

IT IS THEREFORE ORDERED THAT:

        Pursuant to Fed. R. Civ. P. 54(b), the Clerk shall enter judgments in the form of Appendices A through D as follows:  in favor of Class 2 and Class 3 and against AstraZeneca in

the amounts stated; in favor of Class 2 and Class 3 and against BMS in the amounts stated; in

favor of Schering/Warrick and against Class 2 and Class 3; and in favor of the J&J Defendants

and against Class 1, Class 2 and Class 3.  The judgments shall be stayed pending resolution of

the appeals.


Dated:  November __, 2007                   _____

                                                   United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) |
| AVERAGE WHOLESALE PRICE LITIGATION | ) MDL No. 1456 |
| | ) |
| THIS DOCUMENT RELATES TO | ) Civil Action No. 01-CV-12257 PBS |
| 01-CV-12257-PBS AND 01-CV-339 | ) |
| | ) Judge Patti B. Saris |
| | ) |

**Judgment**

IT IS ADJUDGED AND DECREED THAT:

Judgment is entered in favor of Class 2 against AstraZeneca Pharmaceuticals LP in the amount $5,557,370, including pre-judgment interest, and in favor of Class 3 against AstraZeneca Pharmaceuticals LP in the amount $7,384,499, including pre-judgment interest, for a total of $ 12,941,869.

Dated:  November __, 2007          _____

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY )<br>AVERAGE WHOLESALE PRICE LITIGATION ) | MDL No. 1456 |
| ) | |
| THIS DOCUMENT RELATES TO ) | Civil Action No. 01-CV-12257 PBS |
| 01-CV-12257-PBS AND 01-CV-339 ) | |
| ) | Judge Patti B. Saris |
| ) | |

**<u>Judgment</u>**

IT IS ADJUDGED AND DECREED THAT:

Judgment is entered in favor of Class 2 against Bristol-Myers Squibb Company in the amount $388,557, including pre-judgment interest, and in favor of Class 3 against Bristol-Myers Squibb Company in the amount $307,037, including pre-judgment interest, for a total of $ 695,594.

Dated:  November __, 2007              _____

10

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE LITIGATION ) | MDL No. 1456 |
| ) | |
| THIS DOCUMENT RELATES TO ) | Civil Action No. 01-CV-12257 PBS |
| 01-CV-12257-PBS AND 01-CV-339 ) | |
| ) | Judge Patti B. Saris |
| ) | |

## <u>Judgment</u>

IT IS ADJUDGED AND DECREED THAT:

      Judgment is entered in favor of Schering-Plough Corporation, Schering

Corporation, and Warrick Pharmaceuticals Corporation and against Class 2 and Class 3.

Dated:  November __, 2007            _____

11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE LITIGATION | ) | MDL No. 1456 |
| | ) | |
| | ) | Civil Action No. 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO | ) | |
| 01-CV-12257-PBS AND 01-CV-339 | ) | Judge Patti B. Saris |
| | ) | |
| | ) | |

**<u>Judgment</u>**

IT IS ADJUDGED AND DECREED THAT:

Judgment is entered in favor of Johnson & Johnson, Centocor, Inc. and Ortho Biotech Products, L.P. and against Class 1, Class 2 and Class 3.

Dated:  November __, 2007                       _____

12