# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456 ) ) CIVIL ACTION: 01-CV-12257-PBS ) ) Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, No. 06-CV-11337-PBS | ) ) Magistrate Judge Marianne B. Bowler ) ) **Leave to File Requested 10/26/2007** |

**ABBOTT LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A PRESERVATION ORDER AND AFFIDAVIT REGARDING SPOLIATION ISSUES.**

In its Motion for a Preservation Order and Affidavit Regarding Spoliation Issues, Abbott demonstrated (1) that multiple government witnesses sent and received e-mails regarding AWP and drug reimbursement policy that would be relevant to Abbott's defenses, and (2) that the e-mails of all but one of these witnesses have been systematically destroyed. Abbott therefore asked this Court to order the Government to refrain from further destruction of evidence, to explain its systematic destruction of evidence, and to account for any evidence that may be recoverable.

The Government's coyly-worded response all but admits to the destruction, stating that it met its discovery obligations because it produced "substantial" and "numerous" documents to Abbott, including *some* responsive e-mails. Notably, the Government carefully avoids any assertions that *all* relevant e-mails have been produced. The Government *implies* that the destroyed e-mails exist in other formats, but offers no explanation regarding whether these alternative formats have been produced. Unapologetically, the Government brushes aside its apparent spoliation by unilaterally asserting that government knowledge is irrelevant in False Claims Act cases, despite (1) the Court's refusal to grant the Government's prior attempt to limit

the scope of Abbott's "government knowledge" discovery; (2) the Court's sanctioning of Nevada, in a related case within this MDL, for spoiling the same sort of "government knowledge" evidence that Abbott is seeking here; and (3) the fact that government knowledge is unquestionably relevant to the Government's own claim of "justifiable reliance" and causation in this case.

Given the relevance of the evidence Abbott seeks, and in light of the Government's admission that some evidence has been destroyed, this Court should grant Abbott's request for a preservation order. Further, the evasive nature of the Government's Response—stating that *some* emails have been preserved, while implying that some destroyed electronic documents exist in alternate formats, but have not been produced—underscores the need for a sworn affidavit setting forth precisely what evidence is gone; what evidence still exists, in what format; and what efforts the Government took to preserve and produce potentially relevant evidence. Abbott's Motion should be granted.

**I.   THE GOVERNMENT'S UNILATERAL WITHHOLDING OF RESPONSIVE DOCUMENTS ON "RELEVANCY" GROUNDS IS PLAINLY IMPROPER, IN LIGHT OF THE COURT'S RECOGNITION THAT SUCH DISCOVERY IS PERMISSIBLE.**

The Government's primary grounds for opposition—that "government knowledge" is not a valid defense to False Claims Act violations (Resp. at 10-16)—is wrong as a matter of law,[1] but is besides the point for the purposes of discovery, and is in any event moot.

Federal Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter" that is "relevant *to the . . . defense* of any party." As explained in the memorandum supporting Abbott's motion, Abbott's defenses include the fact that the government was not misled by reported AWPs, and indeed, made a deliberate decision to continue paying based on

---

[1] The relevance of "government knowledge" in defeating an FCA claim have been spelled out in several of Abbott's legal memoranda. (*See, e.g.,* Dkt. 4474 at 3-7.) However, given that the destruction and/or withholding of "government knowledge" evidence here was wrongful *even if* the Government's position ultimately prevails, *see infra*, the ultimate merits of the issue do not control the outcome here.

AWPs with the full knowledge that AWPs exceeded acquisition costs. This knowledge, and the subsequent Government decision, negate falsity. Evidence of what the government knew and did is clearly relevant *to that defense*. And while the Government argues that Abbott's defenses will not defeat this FCA claim, "[d]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient." 8 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 2008; *see also Apel v. Murphy*, 70 F.R.D. 651, 654 (D.R.I. 1976) ("in ruling on a discovery motion, the Court will not determine whether a claim in the complaint, if proved, would have a bearing on the ultimate outcome of the action, it being sufficient that the matter to be explored is relevant to the issues made by the pleadings"). And, in any event, regardless of the FCA, the evidence Abbott seeks is unquestionably relevant to the government's common-law fraud claim. *See, e.g.*, *Russell v. Cooley Dickinson Hosp.*, 437 Mass. 443, 457-59 (2002) (holding that fraud plaintiff must prove that he "reasonably relied upon the representation as true and acted upon it to his damage"); *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 818 (Ill. App. Ct. 1998) ("In determining whether there was justifiable reliance, it is necessary to consider all of the facts within a plaintiff's actual knowledge. . .") Conveniently, the government ignores its common-law claim in its opposition.

The foregoing discussion is largely academic, however, as the issue is moot. On September 15, 2006, the Government moved this Court to issue a Comprehensive Case Management Order that would have expressly prohibited discovery regarding "government knowledge," based on the very same legal interpretation that the Government propounds here. (Dkt. 3106 at 7-10.) The Court expressly declined to so limit discovery at an October 26, 2006 motions hearing (Dkt. 3310, at 42:10-12), and no CMO before or since has contained such a restriction. As such, the Government had no right to arrogate unto itself the power to decline

production of documents based on its rejected theory.  *See Farm Const. Services, Inc. v. Fudge*, 831 F.2d 18, 21 (1st Cir. 1987) (affirming dismissal of case based on party's "unilateral decision, supplanting that of the court, that the documents requested were not relevant to the case"); *Sanchez v. U.S. Airways, Inc.,* 202 F.R.D. 131, 135 (E.D. Pa. 2001) ("It is not for a party to determine, by a unilateral review of documentation, whether information is relevant to the case"); *Moore v. Kaye Ins. Assocs.*, 1995 WL 600244, at *3 (S.D.N.Y. 1995) ("it is not for plaintiff to unilaterally determine what is and what is not relevant for discovery").

Further, this Court has already acknowledged that "[i]n some circumstances, the government's 'knowledge [of a fraud] effectively negates the fraud or falsity required by the FCA'" and that the government knowledge defenses raised by Abbott and others present a "difficult legal question."  *In re Pharm. Industry Average Wholesale Price Litig.*, 478 F. Supp. 2d 164, 174-75 (D. Mass. 2007) (citation omitted).  The Court's denial of motions to dismiss on "government knowledge" grounds were *not* predicated on its irrelevance; to the contrary, the Court denied the motion to dismiss based on factual disputes, recognizing that the issue will need to be "tested in the crucible of trial." *Id.* (citation omitted).  The Court has thus recognized that the evidence Abbott seeks is *relevant*, and that complete factual development is appropriate and necessary to the adjudication of this case.

Finally, Magistrate Judge Bowler's March 14, 2007 report and recommendation that sanctions be imposed on Nevada for spoliation of evidence, in a related matter within this MDL, demonstrates the frivolity of the Government's argument here (Dkt. 3843).  There, the defendants sought, *inter alia*, "AWP related e-mail communications" by Nevada Medicaid officials, to "support[ ] [their] contention that Nevada knew of the disparity between AWP and actual market price and could not therefore have been defrauded." (Dkt. 3843 at 6-7)  Nevada

destroyed those "internal communications" that were "known to exist but [could not] be recreated, and . . . would help prove that Nevada was aware of the disparity between AWP and actual drug cost." (*Id.* at 21.)  Because the defendants' case was "largely based on the allegation that Nevada had in its possession relevant information that AWP is not the same as actual cost and therefore defendants could not have defrauded, deceived or misled Nevada into thinking otherwise," Judge Bowler found that "Nevada's destruction of evidence purported to support that very allegation cannot be anything but prejudicial." (*Id.*)  This Court's March 26, 2007 adoption of that report and recommendation repudiates any argument that Abbott's requests for the same evidence in the federal Government's possession are irrelevant and not subject to discovery.

In short, the documents Abbott seeks—and which the Government appears to have destroyed—relate to a proper defense in this case, and the Court has both explicitly and implicitly rejected the Government's requests to limit discovery on government knowledge issues.  The spoliation and/or withholding of such evidence from Abbott is necessarily prejudicial, and is a wholly meritless ground to reject Abbott's Motion.

**II.     THE PRESERVATION ORDER AND REQUEST FOR AN AFFIDAVIT SHOULD BE GRANTED IN LIGHT OF THE GOVERNMENT'S EFFECTIVE ADMISSION THAT RESPONSIVE DOCUMENTS HAVE BEEN DESTROYED AND/OR NOT PRODUCED.**

Unable to refute the testimony of their own witnesses regarding the destruction of "government knowledge" evidence (Dkt. at 3-6), the Government tries to distract the Court by cataloguing examples of evidence that it did *not* destroy and preservation orders in other matters that it *did* issue.  Of course, the fact that the Government did not destroy other types of evidence is not relevant to whether it destroyed the evidence that Abbott seeks here, and to that extent the Government's opposition to Abbott's motion is baseless.

The Government's opposition is noteworthy, however, for what it does *not* say.  The Government never denies that evidence responsive to Abbott's requests has been destroyed, nor

does it claim that *all* responsive evidence that *does* exist has been produced.  Instead, the Response is full of assertions laden with qualifying adjectives; for instance, as to the Government's production of "government knowledge" evidence, the Government says only that "CMS has already produced *a substantial quantity* of the types of evidence that Abbott claims to have been denied" (Resp. 2) or that "the United States has produced *numerous* records and documents . . . including *many* hard copy documents relating to the named former employees, including emails." (*Id.* at 14).[2]

The government also attempts to hide the ball through semantics; for instance, it says that "no evidence *relevant to the claims and defenses at issue* has been destroyed" (*id.* at 7) and that no "emails *relevant* to the issues here were lost" (*id.* at 4).  But this says nothing about whether responsive evidence was destroyed because the Government claims that all evidence of "government knowledge" is irrelevant and not subject to discovery.  As for such "government knowledge" evidence specifically, the Government simply disclaims any "obligation to preserve every document or email in the possession of every current or former employee who at some point or in some way worked on drug reimbursement matters."  (*Id.* at 12).  This strongly suggests that this evidence was, in fact, destroyed.  The mere fact that the Government so elaborately avoids saying as much supports Abbott's request for an affidavit.

Finally, the government's response confirms what Abbott already inferred—that copies of the destroyed e-mails and other records from 27 ex-CMS employees may exist in back-up or paper storage.  For instance, the Government states that "CMS had record retention policies in place that emphasized the preservation of hard copy records, including print-outs of documents

---

[2] The Government's assertion that it provided Abbott with a "substantial" or "numerous" quantity of documents related to CMS officials' knowledge of AWP and reimbursement issues is wildly exaggerated; in fact, only 5,523 pages of documents from CMS' central office have been produced.  (HHC001-0001 - 746; HHC002-0001 - 0578; HHC003-0001 - 592; HHC004-0001 - 272; HHC021-0001 - 36; HHC025-0001 - 217; HHC901-0085 - 1134; HHC902-0063 -1134; HHC903-0027 - 965; HHC904-0121 - 144.)  Only a minute fraction of those documents are hard copies of emails.

created electronically" and "CMS simply did not keep the electronic records of former employees in accounts under their names." (Resp. 3, 5 n. 2.)   It does *not* say that all of those alternate sources of the documents have been searched, or, if so, that all such documents have been produced to Abbott.  That omission is important in light of testimony by Government witnesses that no litigation hold was instituted for these records until ten years after the case was filed and seven years after defendants demanded that evidence be preserved. (Mem. at 10.) These same witnesses have not been asked to search off-site documents.  (*Id.*)  Here again, an affidavit would clarify what exists and what has been destroyed.

## CONCLUSION

In the jumble of the government's assertions in opposition to Abbott's Motion, three facts can be discerned: (1) evidence relevant to Abbott's defenses was destroyed; (2) some such evidence may have been preserved; but (3) the Government feels no obligation to retain or produce this evidence, because it believes that "government knowledge" evidence is irrelevant. These assertions reinforce Abbott's need for a protective order.  Despite Abbott's clear entitlement to evidence supporting its defenses, the Government still maintains the stubborn position that it need not give Abbott that evidence, and that as a consequence, any destruction is immaterial.  This Court can have no confidence that, without an order, the Government will voluntarily take efforts to halt spoliation—particularly as to those documents for which no litigation hold has been implemented.  Further, the Government offers only the most perfunctory argument that Abbott's proposed preservation order is "vague" or burdensome, and it carries no weight.  The preservation order, as proposed, should be granted.

Likewise, given the Government's various implications regarding the state of the "government knowledge" evidence—that some has been produced, some destroyed, some

withheld on "relevance" grounds, and some apparently unsearched for—Abbott's need for an affidavit sorting out the spoliation situation is even more pronounced.  Having shown no hesitation in making unsworn assertions as to the state of the evidence, the Government should have no objection to stating, *under oath*, exactly which e-mails and other records are irretrievably lost, which documents have been withheld on improper "relevance" grounds, and which may still exist, in alternate formats, within the Government's possession.

  Accordingly, the Court should order the Government to preserve evidence relevant to this litigation, and order it to provide an affidavit regarding the spoliation, and the possibilities for remediation, as described in Abbott's Motion, Memorandum in Support, and Proposed Order.

Dated:  November 9, 2007                    Respectfully submitted,

                                            /s/ R. Christopher Cook
                                            James R. Daly
                                            Tina M. Tabacchi
                                            Jason G. Winchester
                                            Brian J. Murray
                                            JONES DAY
                                            77 West Wacker Drive, Suite 3500
                                            Chicago, Illinois  60601
                                            Telephone:  (312) 782-3939
                                            Facsimile:   (312) 782-8585

                                            R. Christopher Cook
                                            David S. Torborg
                                            JONES DAY
                                            51 Louisiana Avenue, N.W.
                                            Washington, D.C.  20001-2113
                                            Telephone:  (202) 879-3939
                                            Facsimile:  (202) 626-1700

                                            *Counsel for Defendant Abbott Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

      I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A PRESERVATION ORDER AND AFFIDAVIT REGARDING SPOLIATION ISSUES to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 9th day of November, 2007.

                                        /s/ David S. Torborg
                                        David S. Torborg