## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

### REPLY IN SUPPORT OF ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL DISCOVERY RESPONSES TO ITS DOCUMENT REQUEST NOS. 37 AND 38

The Government's response brief demonstrates how one-sided it believes discovery should be in this case.  In its most recent attempt to resist its discovery obligations, the Government contends that this case is "ultimately about Abbott's conduct," and that Abbott's motion to compel is a "transparent attempt to deflect attention from its own conduct."  *See* Govt.'s Resp. Br. at 11, 15.  To the contrary, Abbott's motion to compel documents from the files of CMS's Office of Legislation and its Rulemaking Support Files – files within CMS that are expected to contain significant evidence concerning CMS's purposeful policy decision for using an AWP-based payment methodology for prescription drugs – is an attempt to draw attention to the elements of the Government's claims and to discover evidence relevant to those claims.  Namely, in order to prevail on its causes of action, the Government must prove that it was defrauded into overpaying for drugs and that false claims were presented to the Government.  As the Court knows, CMS chose to continue paying for drugs in Medicare and Medicaid based upon average wholesale prices ("AWPs") despite knowing that AWPs greatly exceeded the actual costs for drugs.  The key question is ***why*** CMS continued to do so and even ***chose*** to extend that payment methodology.  Was CMS defrauded, as it now claims or did it make a deliberate policy choice, as Abbott contends?

The documents sought in this motion are fundamental to answering this question.  The Government's continued refusal to produce these documents undermines Abbott's right to defend itself, and should not be tolerated by the Court any longer.

### A.      Abbott Motion Seeks Documents Relevant To The Government's Claims

### 1.      Overwhelming Authority Holds That Documents Reflecting Government Knowledge And Decision-Making With Respect To AWP-Based Payment Methodologies Is Relevant

In its response, the Government does not dispute Abbott's contention that documents from CMS's Office of Legislation and its Rulemaking Support Files "will shed light on the basis for CMS's repeated warnings in proposed regulations and to Congress that AWP exceeded true costs for prescription drugs, why CMS consistently advocated for lowering payment levels for prescription drugs in proposed regulations and to Congress, and why, at the end of the day, CMS and Congress chose to maintain a payment methodology based on AWPs that exceeded actual prices paid for drugs." *See* Abbott's Opening Br. at 2.  It simply argues that such material is irrelevant in this case.  In doing so, the Government ignores the Court's consistent statements regarding the relevance of Government knowledge and decision-making.  *See* Abbott's Opening Br. at 6 (setting forth the comments of Judge Saris on the relevance of evidence showing the Government knew AWP did not reflect acquisitions costs in the marketplace, including her comment that Government knowledge is "quite relevant" and at the "heartland" of this case).

The Government's argument that its conduct – its decision to continue using an AWP-based payment methodology despite (or because of) its awareness that AWPs exceeded typical acquisition costs – is immune from discovery not only contradicts The Court's comments in this case, but it also disregards the Government's burden of proving that any claims submitted to it were truly "false" under the False Claims Act ("FCA").  *See, e.g.*, *United States ex rel. Becker v.*

*Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002) ("[W]e join with our sister circuits and hold that the government's knowledge of the facts underlying an allegedly false record or statement can negate the scienter required for an FCA violation."); *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999) (holding that government knowledge will vitiate a possible FCA claim where "the government knows and approves of the particulars of a claim for payment before that claim is presented"); *see also United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (holding that knowledge by federal officials may "show that the defendant did not submit its claims in deliberate ignorance or reckless disregard of the truth").[1]  Considering the overwhelming case law that tells us Government knowledge could be dispositive of the FCA and fraud claims in this case, the Government should not be permitted to shield material demonstrating its persistent approval of an AWP-based payment methodology.

**2.      The Material Abbott Seeks In Its Motion May Demonstrate That The Government Was Not Defrauded Or Presented False Claims**

In light of the Court's comments and the clear case law on Government knowledge, the Government is forced to extrapolate an illogical and flawed theory from the Court's ruling on the meaning of "AWP."  That ruling, of course, was issued in a case in which neither the Government nor Abbott was a party and in which the issues presented were far different than those presented here.  Nevertheless, the Government claims that because the Court has previously ruled that AWP "means the average price at which wholesalers sell drugs to their customers" for purposes of statutory construction, any discovery regarding what the Government

---

[1] *See also United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 686 (5th Cir. 2002) (noting that the government knowledge defense would be viable "where the falsity of the claim is unclear and the evidence suggests that the defendant actually believed his claim was not false because the government approved and paid the claim with full knowledge of the facts"); *United States ex rel. Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993) (accepting government knowledge defense); *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 534 (10th Cir. 2000) (same).

knew about AWP and why the Government acquiesced in or chose to continue using a payment system based upon published AWP is off limits for discovery.  Putting aside the obvious due process concerns with applying that ruling to the Government's case against Abbott, it has now become clear that the Court's ruling on AWP was based on a misleading brief from the Government and an incomplete factual record.

The Court's ruling on the meaning of AWP came after the Government represented in its *amicus* brief to the Court that the Secretary of Health and Human Services believed, in 1991, that published AWPs "generally represented a comprehensive source and indicia of market prices." *See* Sept. 15, 2006 Br. of the United States as Amicus Curiae, at 15 (Ex. 1).  Since the Court issued that ruling, Abbott has taken testimony from several past and present CMS officials.  That testimony demonstrates that the agency interpreted (and continues to interpret today) AWP much differently than the Government represented to the Court.  Indeed, rather than seeing AWP as an "indicia of market prices," it is now obvious that no one working for CMS has ever believed that AWP reflected the market price for drugs.

For instance, Abbott has deposed three former Administrators of CMS, none of whom believed AWP reflected market prices.  Bruce Vladeck, CMS's Administrator from 1993 through 1997, agreed that "average wholesale price does not reflect acquisition cost for providers." Vladeck Dep. at 217 (Ex. 2).  With respect to what CMS knew about AWP, he stated, "We never believed AWP was equal to actual acquisition cost."  *Id.* at 472.  Thomas Scully, CMS's Administrator from 2001 through 2003, bluntly disagreed with the Government's characterization of AWP in its Complaint.  In paragraph 42 of the Complaint, the Government's attorneys stated, "AWP is used to refer to the price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer who then administers it to a patient."  Compl. at ¶ 42.  After

reading this paragraph, Mr. Scully stated, "I don't think that's what AWP is commonly considered to be, I think that's an inaccurate description." Scully Dep. at 710 (Ex. 3). Scully has never used AWP in this manner and has never heard of anyone using AWP in this manner. *Id.* at 900 & 901.

Other officials from CMS also contradict the position that the Government's lawyers have taken on the meaning of AWP. Robert Niemann, a CMS official who focused on drug payment policy, testified that everyone with whom he spoke regarding AWP agreed that AWP was not a calculated average of prices. Niemann Dep. at 286-87 (Ex. 4). Charles Booth, the former director for CMS's Office of Payment Policy, testified that he did not understand AWP to refer to a calculated average of wholesale prices that were charged to physicians or other drug purchasers. Booth Dep. at 514 (Ex. 5). Kathleen Buto, CMS's former Administrator of Policy, testified that there was no doubt that, as of 1991, CMS knew that unmodified AWP did not represent actual acquisition cost. Buto Dep. at 433 (Ex. 6). Ms. Buto, the head of the division within CMS that promulgated the 1991 regulations that adopted an AWP-based payment methodology, testified that CMS's intent in the drafting the 1991 regulations with respect term "average wholesale price" was to refer to the prices that were found in the pricing compendia, not to some indicia of market prices as the Government contended in its *amicus* brief. *Id*. at 272.

Even more incredibly, and despite pursuing this lawsuit for what the Government believes were overpayments based upon AWP, Medicare, to this day, continues to pay providers for administering vaccines and infusion drugs based upon 95% of published AWPs. *See* 42 C.F.R. § 414.904. John Warren, the director of the division that currently administers the statute requiring CMS to pay for some drugs based on AWP, was recently deposed by Abbott. He testified that neither he nor anyone he knows believes that AWP is used to refer to the price

at which a pharmaceutical firm or wholesaler sells a drug to a retail customer. *See* Warren Dep. at 129-30 (Ex. 7). While "the program" may intend for AWP to refer to the price at which a manufacturer or wholesaler sells a drug to its customers, Warren testified that AWP in "practicality . . . is not used in that manner." *Id.* at 130. Indeed, Warren testified that ***no natural person*** actually uses AWP in the manner described in the Government's Complaint. *Id.* at 130-31.

This evidence of Government decision-making supports Abbott's instant motion to compel. Knowing full well that AWP greatly exceeds acquisitions costs, and even after bringing a lawsuit based upon that allegation, the evidence already known demonstrates that Medicare has made a policy decision to pay more than acquisition cost for certain drugs that it covers today by using published AWPs. Amy Bassano, one of the few current CMS officials who has been deposed, testified that she believed Congress made a policy decision to continue using AWP because "there may have been an interest in keeping the price up higher and sort of the public benefit of encouraging vaccine production and availability to the public." *See* Bassano Dep. at 112. (Ex. 8)[2] The material sought in the instant motion to compel may shed further light on the intentional and knowing decision by the Government to pay for drugs based on allegedly "inflated" AWPs.

This requested material from CMS's Office of Legislation and its Rulemaking Support Files is critical for Abbott's defense. This evidence should demonstrate not only ***what*** the Government understood about AWP, but also ***why*** it consistently acquiesced or approved of an AWP-based payment methodology after being fully informed that AWP typically exceeded actual acquisition costs by significant amounts (just as it continues to do so today).

---

[2] Ms. Bassano also testified that, for the period of 1991 through 2001, she did not think that "anyone personally relied on the AWP or held it out and said this is the actual market price." *See* Bassano Dep. at 107 (Ex. 8).

Most importantly, evidence regarding why the Government chose to continue using AWP to pay for drugs will likely confirm that CMS was not simply the victim of its own carelessness in using an "AWP-based payment system that was susceptible to costly abuse," as its lawyers now contend. Govt.'s Resp. Br. at 11.  Rather, this evidence may help to prove that the agency made an informed and intentional decision to base drug payments on published AWPs rather than a more accurate measure of actual market prices for policy and political reasons and ***not*** because it was fooled or defrauded by Abbott.[3]  In short, documents from the Office of Legislation and CMS's Rulemaking Support Files may disprove the Government's allegations that it was duped into overpaying for drugs.  Such exculpatory evidence is undoubtedly appropriate for discovery.

**B.**    **The Deliberative Process Privilege Does Not Apply Wholesale To The Material Sought**

Despite having not performed a detailed review of the documents that it has located from the Office of Legislation and CMS's Rulemaking Support Files, the Government asserts a wholesale objection to producing this material based on the deliberative process privilege.  This approach is not only improper under established case law, but also contravenes Magistrate Judge Bowler's ruling on the scope of the deliberative process privilege, as well as Judge Saris's recent order denying the objections to Magistrate Bowler's ruling.  To the extent that the Government wishes to claim privilege over any of the documents sought by this motion, it should provide such documents to the Court for *in camera* review in accordance with the Court's November 9, 2007 Order, and it should provide a detailed log of each such document as required by the local rules.  *See* Local Rule 34.1 (requiring the attorney asserting the privilege to identify the nature of the privilege that is being claimed with respect to ***each*** document); *see also See Pac. Gas &*

_____

[3] Bruce Vladeck testified that the Office of Legislation was involved in discussions in which CMS considered alternatives to the AWP-based payment system.  *See* Vladeck Dep. at 185-86 (Ex. 2).

*Elec. Co. v. United States*, 70 Fed. Cl. 128, 135 (2006) ("Blanket assertions of the privilege are insufficient."); *Kaufman v. City of N.Y.*, No. 98-2648, 1999 WL 239698, at *4 (S.D.N.Y. 1999) ("This blanket approach to asserting the privilege is unacceptable and is itself grounds for denying invocation of the privilege.").[4]  Any responsive documents that are not submitted for *in camera* review log should be produced forthwith.

### C.   The Burden of Producing the Requested Material is Far Outweighed by the Material's Relevance

The Government does not claim, nor could it, that producing the documents from the Rulemaking Support Files or CMS's Office of Legislation is overly burdensome in light of the importance of this litigation and the stakes involved.  In fact, the Government has agreed to review 13 boxes of documents from CMS's Official Rulemaking Records containing "unknown documents" and produce all responsive non-privileged documents it finds.  There is no evidence or argument that reviewing the 18 boxes containing the Rulemaking Support Files would impose an undue burden on the Government, or that a production of responsive documents from the Office of Legislation would be burdensome.  The Government has already located, collected, and preliminarily reviewed these documents.  Turning them over to Abbott, even after a review for privileged documents, will impose a minimal burden that is far outweighed by the relevance of such material to Abbott's defense.

---

[4] Rule 26(b)(5) also requires the Government to "describe the nature of the [withheld] documents … in a manner that … will enable other parties to assess the applicability of the privilege or protection."  Instead of listing each document that it believes is privileged as the local and federal rules require, the Government seeks to make categorical assertions of the privilege without even examining whether all of the documents in the Rulemaking Support Files and the Office of Legislation's files truly warrant protection.  Responsive non-privileged documents, including documents that Magistrate Judge Bowler ordered the Government to produce, would be improperly shielded behind categorical assertions of privilege under such an approach.  That is why such blanket assertions of the privilege are typically deemed unacceptable, and should similarly be rejected in this case.

## CONCLUSION

For the reasons stated above and set forth in Abbott's original motion, the Court should order the Government to produce documents from CMS's Office of Legislation and its Rulemaking Support Files pertaining to legislation or regulations concerning the payment for prescription drugs under Medicare and Medicaid.

Dated:  November 19, 2007                     Respectfully submitted,

                                              /s/ R. Christopher Cook
                                              James R. Daly
                                              Tina M. Tabacchi
                                              Brian J. Murray
                                              JONES DAY
                                              77 West Wacker Drive, Suite 3500
                                              Chicago, Illinois  60601
                                              Telephone:  (312) 782-3939
                                              Facsimile:   (312) 782-8585

                                              R. Christopher Cook
                                              David S. Torborg
                                              JONES DAY
                                              51 Louisiana Avenue, N.W.
                                              Washington, D.C.  20001-2113
                                              Telephone:  (202) 879-3939
                                              Facsimile:  (202) 626-1700

                                              *Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing Reply in Support of Abbott Laboratories, Inc.'s Motion to Compel Discovery Responses to Its Document Request Nos. 37 and 38 to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 19th day of November, 2007.

/s/ David S. Torborg
David S. Torborg