```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                    )
IN RE PHARMACEUTICAL INDUSTRY       )
AVERAGE WHOLESALE PRICE             )  MDL NO. 1456
LITIGATION                          )
                                    )
                                    )  CIVIL ACTION NO. 01-12257-PBS
THIS DOCUMENT RELATES TO            )
01-CV-12257                         )
                                    )
```

**FINDINGS AND ORDER ON MOTION OF
TRACK 1 DEFENDANTS FOR THE ENTRY OF JUDGMENT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b)</u>**

November 20, 2007

Saris, U.S.D.J.

Defendants AstraZeneca Pharmaceuticals LP ("AstraZeneca"); Bristol-Myers Squibb Company and Oncology Therapeutics Network Corporation ("BMS"); Johnson & Johnson, Centocor, Inc. and Ortho Biotech Products, L.P. (together "the J&J Defendants"); and Schering-Plough Corporation, Schering Corporation and Warrick Pharmaceuticals Corporation (together "Schering/Warrick") have moved for the entry of judgment pursuant to Fed. R. Civ. P. 54(b) (Docket No. 4880). Upon consideration of the motion and the submissions of the parties, the Court **<u>ALLOWS</u>** the motion. In accordance with Rule 54(b), the Court makes the following findings. See <u>Spiegel v. Trs. of Tufts Coll.</u>, 843 F.2d 38, 42-43 (1st Cir. 1988).

<u>**FINDINGS**</u>

1. This is a multi-district litigation ("MDL") consolidating a number of class actions that were brought against 16 pharmaceutical manufacturers beginning in 2001. The actions,

as originally pleaded, included federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state consumer protection statutes.

2. The essence of the claims was that Defendants caused various industry publications – such as the Red Book, First DataBank and MediSpan – to publish fictitious average wholesale prices ("AWPs"). These AWPs were used by Medicare and third party payors ("TPPs"), such as insurance companies, to reimburse doctors for physician-administered drugs, such as chemotherapy agents. Plaintiffs claimed that the AWPs were fictitious because they grossly exceeded the true average prices. Plaintiffs also claimed that each Defendant unlawfully marketed the 'spread' or difference between the AWP, the benchmark for reimbursement, and the actual acquisition price of the drugs paid by providers such as doctors and pharmacies.

3. In March 2004, the Court created a "fast track" consisting of five defendants or defendant groups: AstraZeneca, BMS, GlaxoSmithKline ("GSK"), the J&J Defendants and Schering/Warrick. The remaining defendants were placed in a "regular track" for discovery and trial.[1] The fast track defendants became known as the "Track 1" defendants, and the remaining defendants became known as the "Track 2" defendants.

4. In January 2006, the Court certified three classes for trial against the Track 1 Defendants: (a) Class 1 -- consumers in

---

[1] The remaining defendants are Abbott, Amgen, the Aventis Group, Baxter, Bayer, Dey, the Fujisawa Group, Immunex, Pfizer/Pharmacia, Sicor and Watson.

40 states who made co-payments for drugs under Medicare Part B; (b) Class 2 -- TPPs in Massachusetts who made co-payments for drugs under Medicare Part B; and (c) Class 3 -- consumers and TPPs in Massachusetts who paid for drugs in non-Medicare transactions based on contracts expressly using AWP.  Class 1 was not certified as to Schering/Warrick, because there was no class representative who had made a co-payment for a Schering or Warrick product under Medicare Part B. <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 233 F.R.D. 229 (D. Mass. 2006) (class certification order).

5.   By order dated November 2, 2006, the Court denied Plaintiffs' motion for partial summary judgment as to the Class 1 and Class 2 claims, and also denied the Track 1 Defendants' motions for summary judgment as to the Class 1 and Class 2 claims, except with respect to Medicare Part B drugs furnished in 2004. <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 460 F. Supp. 2d 277, 288 (D. Mass. 2006).  The Court also denied the Track 1 Defendants' motions for summary judgment on the Class 3 claims.

6.   GSK has settled the claims of all three classes.

7.   A settlement of the Class 1 claims against AstraZeneca and BMS has been reached and awaits final approval of the Court.

8.   The Class 2 and 3 claims against AstraZeneca, BMS, the J&J Defendants, and Schering/Warrick, alleging violations of Mass. Gen. Laws ch. 93A, proceeded to a bench trial before the Court in November of 2006.  On June 21, 2007, the Court issued

Findings of Fact and Conclusions of Law holding AstraZeneca, BMS and Warrick liable with respect to certain drugs for certain time periods as set forth in the Court's opinion. In re Pharm. Indus. Average Wholesale Price Litig., 491 F. Supp. 2d 20, 109 (D. Mass. 2007). The Court hereby incorporates that opinion as if set forth fully herein.

   9.  In the same opinion, the Court dismissed all Class 2 and 3 claims against Schering. Id. at 108 - 09. The Court found no damages in Class 3 for Warrick. Id. at 109.  The Court also dismissed the claims against the J&J Defendants. Id. at 109.

   10.  On August 27, 2007, the Court held an additional hearing on damages.

   11. On November 1, 2007, the Court issued a Memorandum and Order on damages. In re Pharm. Indus. Average Wholesale Price Litig., No. 01-12257, 2007 WL 3225922 (D. Mass. Nov. 1, 2007). The Court found that AstraZeneca's conduct was knowing and willful as to Class 2 and awarded double damages as to AstraZeneca for Class 2. Id. at *3.  The Court also found that BMS' conduct was knowing and willful as to Class 2 when "less than ten percent of its sales were made within 5% of the list price, and the spreads were huge," and thus awarded double damages as to Taxol for 2002, Cytoxan in 1999 and 2001, and Rubex in 1998 and 2002. Id. at *3-4.  The Court found that neither BMS's nor AstraZeneca's conduct was knowing and willful as to Class 3 and accordingly did not award multiple damages as to Class 3.  Id. at *4.  The Court issued a final award of

4

damages and interest against AstraZeneca and BMS as follows:

|  | Class 2 |  | Class 3 | Overall |
|---|---|---|---|---|
|  | Single Damages with Prejudgment Interest | Total Damages with Doubling | Single Damages with Prejudgment Interest | Total Award for Classes 2 and 3 |
| AstraZeneca | $3,467,267 | $5,557,370 | $7,384,499 | $12,941,869 |
| BMS | $309,267 | $388,557 | $307,037 | $695,594 |

Id. at *4 - 5.

   12.  As to Warrick, after considering further expert testimony, the Court found in its November 1, 2007 Order, that "Warrick has produced undisputed evidence that its unfair and deceptive conduct in inflating the AWP for albuterol did not cause Class 2 any damages because of the methodology for calculating Medicare reimbursement for multi-source drugs based on a median." Id. at *4.  Thus, the Court ordered entry of judgment in favor of Warrick. Id. at *4.

   13.  As to the J&J Defendants, the Court ruled, among other things, that although J&J's conduct was troubling, it did not violate Mass. Gen. Laws ch. 93A, in part because the spreads on the J&J Defendants' subject drugs (Procrit® and Remicade®) never substantially exceeded the range of spreads generally expected by the industry and government.  491 F. Supp. 2d at 104.  As a result, the Court ruled that the claims of Class 2 and Class 3 should be dismissed.  Id. at 109.  The claims by members of Class 1 are dismissed for the same reason.

5

14. Rule 54(b) provides, in pertinent part:

> When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed R. Civ. P. 54(b).

15. Here, there are no other claims between Plaintiffs and the J&J Defendants and Schering/Warrick. Accordingly, with respect to these parties, the judgments would have the requisite degree of finality.

16. Plaintiffs will be moving to certify nationwide classes for Classes 2 and 3 against BMS and AstraZeneca. However, there are no further claims against these companies under Massachusetts law.

17. For the reasons set forth below, the Court finds that there is no just reason to delay the entry of judgments with respect to the Track 1 Defendants.

18. There are no subsequent proceedings between the parties that threaten to moot the need for ultimate resolution of these issues in the Court of Appeals. Nor are there any issues with respect to the Track 2 defendants that will affect my decision with respect to the Track 1 Defendants.

19. Plaintiffs will not be prejudiced by the immediate entry of judgments against AstraZeneca and BMS pursuant to Rule 54(b); rather, if this Court's decision were to be affirmed, Plaintiffs

will benefit from having judgments capable of enforcement and distribution to class members prior to resolution of the Track 2 claims.  There is no just reason to delay entry of judgments against Plaintiffs with respect to the claims against the J&J Defendants, and Schering/Warrick.

**ORDER**

IT IS THEREFORE ORDERED THAT:

Pursuant to Fed. R. Civ. P. 54(b), the Clerk shall enter judgments in the form of Appendices A through D as follows: in favor of Class 2 and Class 3 and against AstraZeneca in the amounts stated; in favor of Class 2 and Class 3 and against BMS in the amounts stated; in favor of Schering/Warrick and against Class 2 and Class 3; and in favor of the J&J Defendants and against Class 1, Class 2 and Class 3.

Dated: 11/20/07                **S/PATTI B. SARIS**
                                             United States District Judge