# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | |
| | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti Saris |
| | ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories Inc.,* CIVIL ACTION NO. 06-11337-PBS | ) ) ) | |
| | ) | |

**THE UNITED STATES' REPLY TO ABBOTT LABORATORIES INC.'S OPPOSITION TO THE UNITED STATES' MOTION TO AMEND**

The First Amended Complaint adds allegations regarding (1) a home infusion group Abbott operated that billed for the drugs at issue in this litigation and directly profited off Abbott's price fraud scheme and (2) claims related to Acyclovir Sodium (Acyclovir), a megaspread antiviral drug.  Abbott Laboratories Inc. (Abbott) filed an Opposition to the United States' Motion to Amend (Opposition), seeking to exclude these allegations from the action. Abbott contends that the "Government . . . filed only a two-page bare-bones pleading filled with conclusory boilerplate that makes no effort whatsoever to demonstrate that leave to amend would be appropriate under Rule 15(a)."  Opposition at 1.

 It is an odd line of attack that appears to ignores the status of the amendment arguments. The parties have already submitted multiple briefs regarding whether amendment of the government's complaint is appropriate.  *See* Docket ## 4470, 4661, 4720 and 4749.   At the November 5, 2007 hearing, the Court stated, "I  don't want to waste time on whether it's the first amended complaint or the second amended complaint because either way I would give them

leave to move to file." *See* Opposition, Exhibit A, November 5, 2007 Hearing Transcript at 4. The issue of whether this amendment would be permitted has already been resolved.  In its effort to comply procedurally with the Court's directive to file a motion for leave to amend, the government did not see the need to burden the Court with unnecessary briefing on the issue.

Abbott has nonetheless filed an Opposition that largely regurgitates some of the same flawed procedural arguments in its motion to dismiss briefing – some still having to do with whether an amendment should be permitted here, but some having to do with the government's statutorily-mandated control over False Claims Act (FCA) claims.  The United States submits this brief reply to address a few new and similarly erroneous points raised in Abbott's Opposition.

## ARGUMENT

**The United States sought to amend its original complaint almost seven months before the end of discovery**.  Abbott asserts that the United States first sought to amend its complaint in November 2007.  This is incorrect. The United States amended its original Complaint and served the First Amended Complaint on Abbott on June 4, 2007.  Abbott has been on notice of the new allegations since then.

Abbott filed a motion to dismiss the First Amended Complaint on July 17, 2007.  At the November 5, 2007 hearing on the motion, the Court ordered the United States to file a motion for leave to amend to conform procedurally with some previous law of the case regarding relation back and statute of limitations.  On November 7, 2007, the United States filed the motion for leave to amend.  Attached to the motion to amend was a copy of the exact same First Amended Complaint the United States filed in June.

Notwithstanding these facts, Abbott argues that the government is seeking to amend its complaint for the first time in November 2007. *See* Opposition at 3 ("the proposed [November 2007] amendment comes nearly 20 months after the prior complaint was filed (on March 17, 2006)"). The notion that the government's November 7, 2007 motion for leave to file an amended complaint is the first time Abbott was on notice of the allegations in the First Amended Complaint is fictitious.

**The added claims were not in the United States' original complaint**. Abbott makes the claim that "the Government is seeking to reinstate claims that appeared in previous versions of *its* complaint but were previously dropped." Opposition at 4 (emphasis added). The allegations regarding (1) the Home Infusion Services business that billed for and profited off the inflated spreads for the drugs at issue and (2) Acyclovir were never in – and were therefore never dropped from – the United States' original Complaint.

Through some rather opaque analytical contortions, Abbott appears to be arguing that the government's original Complaint took the place of and superceded the relator's previous complaints. Abbott appears to conclude that since the government did not intervene on all drugs, that any declined drugs were "dropped." That is wrong procedurally and factually. The relator's complaint(s) was and continues to be separate from the United States' complaint. Without a proper dismissal of the claims set forth in the relator's complaints, those complaints remain operative.

The government is amending to (1) add new claims identified in the discovery process regarding the Home Infusion Services business and (2) add claims for a drug that is still in the relator's complaint. With respect to the former category, since Abbott concealed the existence of

3

this business unit during the *qui tam* investigation, it did not or could not have appeared in either the government or the relator's complaints.

**It is black letter law that a relator needs written consent from the Court and the United States before dismissing claims**. Abbott claims that (1) the relator does need the United States' consent to amend its *qui tam* complaint and, therefore, (2) a relator can partially dismiss FCA claims without the United States' written consent. Abbott's overall point appears to be that in the process of a relator amending its complaint, a relator is empowered to dismiss FCA claims without the written consent of the United States. As legal support, Abbott points to the fact that the statutory provision mandating the United States' written consent to the dismissal of claims – 31 U.S.C. § 3730(b)(1) – mentions the dismissal of "actions," not "claims."

This is a distinction without a difference. If a party is dismissing some claims from an action, it is dismissing part of the action. Abbott argues that written consent from the government is only necessary when the result of the dismissal sought would be the termination of the *entire* "action" (*i.e.*, (1) seeking to dismiss all claims at once or (2) the last of a series of partial dismissals by a relator that would eliminate any final, remaining claims). Opposition at 9-10.

Against the backdrop of the plain language of the FCA and the body of jurisprudence on the issue, these arguments are completely ill-founded. Abbott's argument reflects a misapprehension of the language and operation of the FCA. FCA suits can be initiated either directly by the United States or by *qui tam* suits filed by private citizens known as relators. *See generally* 31 U.S.C. §§ 3730(a) and (b). Even where a suit is brought by a *qui tam* relator, the *qui tam* provisions of the FCA "have been crafted with particular care to maintain the primacy of

4

the Executive Branch in prosecuting false-claims actions, even when the relator has initiated the process." *United States ex rel. Taxpayers Against Fraud* v. *General Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994).

Perhaps the clearest example of the United States' primacy in prosecuting FCA cases is the control it exercises over when FCA claims may be dismissed from an action. The False Claims Act is clear that claims brought by a relator in a *qui tam* suit can be dismissed only with the written consent of the Court and the United States. 31 U.S.C. § 3730(b)(1). As one court analyzing this provision noted, this statutory language "is as unambiguous as one can expect." *Searcy* v. *Philips Electronics North America Corp.*, 117 F.3d 154, 159 (5th Cir. 1997).

This express requirement reflects the well-established legal precept that the United States is the real party in interest in an FCA case, and the claims belong to it. *See United States ex rel. Laird v. Lockheed Martin*, 336 F.3d 346, 357-358 (5th Cir. 2003). The *Laird* court further noted that the Fifth Circuit "in numerous other cases . . . detailed the mechanisms present in the qui tam framework that enable the government to retain a tremendous amount of control over a qui tam suit even when it chooses not to intervene." *Id.* at 358.

In *United States ex rel. Doyle v. Health Possibilities*, the Sixth Circuit found that the "clear import of the statutory language is strengthened by the FCA's purpose, structure and legislative history." 207 F.3d 335, 338-344 (6th Cir. 2000). As that court explained, because the interests of the relator and the Government often diverge, "the power to veto a privately negotiated settlement of public claims is a critical aspect of the Government's ability to protect the public interest in qui tam litigation." *Id.*. Without the power to consent to a dismissal, "the public interest would be largely beholden to the private relator who – absent 'good cause'

5

Government intervention – would retain sole authority to broadly bargain away government claims." *Id.* at 341. The court therefore concluded that "the policies served by the veto power are entirely consistent with the conclusion compelled by § 3730(b)(1)'s plain meaning:  that a relator may not settle any qui tam action without the Attorney General's consent." *Id*.

This Court recognized these basic FCA legal precepts during the November 5, 2007 oral argument on Abbott's motion to dismiss. Abbott nevertheless continues to argue that (1) a relator can unilaterally dismiss – or "drop," to use Abbott's euphemism –  claims from an FCA case without Court and government consent or (2) declination empowers a relator to unilaterally dismiss claims and/or bargain away the government's rights in an FCA case.

There is absolutely nothing in the FCA itself or in case law interpreting the FCA that gives relator's the unilateral power to incrementally dismiss FCA claims or partially dismiss FCA "actions." If the Court accepted Abbott's argument, it would be greatly increasing the control a relator has over FCA claims and severely diminishing the control the United States has over FCA claims in a way not reflected in the FCA itself or in any jurisprudence on the issue.

**Abbott should not be entitled to any attorneys fees and costs in taking Acyclovir-related discovery**. At the November 5, 2007 hearing on Abbott's motion to dismiss, the Court raised the issue of whether the government should pay for any *travel-related costs* associated with additional discovery by Abbott regarding Acyclovir. Opposition, Exhibit A, November 5, 2007 Hearing Transcript at 25. The Department of Health and Human Services' (HHS) witnesses are located in the Baltimore-Washington area,  and Abbott's discovery efforts against the government have been led by attorneys in its counsel's Washington, D.C. office. Therefore, there are no additional travel costs or expenses involved in re-opening the depositions of an HHS

6

witness who may have specific knowledge about Acyclovir (although it is highly doubtful such a witness exists).

Perhaps realizing this, Abbott now seeks to use the addition of Acyclovir to re-open depositions of HHS witnesses and bill the government *attorney fees* for those re-opened depositions. Opposition at 11-12. That appears to be miles beyond anything considered by the Court at the November 5, 2007 hearing and could result in Abbott abusing the process to have the government pay its attorneys fees.

The government opposes both the imposition of any attorneys fees and costs related to the addition of Acyclovir to the case. The United States is the victim in this case. There is no basis for the victim to have to bear attorney fees and costs for what are local depositions, especially in light of the egregious fraudulent conduct associated with the marketing of the drug. Further, unless an HHS witness has knowledge about the drug Acyclovir, there is no basis for re-opening the deposition of that witness for the purpose of questioning a witness about that drug.

If the Court does permit Abbott to seek travel costs related to re-opening "local" depositions of CMS witnesses, the United States requests that the Court impose the following conditions prior to authorizing reimbursement for such costs:

- Abbott must seek leave of the Court to re-open any deposition to question an HHS witness about Acyclovir.

- In seeking leave, counsel for Abbott must submit an affidavit explaining the factual basis for its contention that the HHS witness has knowledge regarding Acyclovir pricing or reimbursement.

- The affidavit should identify whether a Washington, D.C.-based Abbott lawyer will be taking the deposition, as has been the norm. If a Chicago-based lawyer takes the deposition, Abbott must explain and justify why the travel expense of having an out-of-town lawyer take the deposition was absolutely necessary.

7

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN                         PETER D. KEISLER
UNITED STATES ATTORNEY                      ASSISTANT ATTORNEY GENERAL

George B. Henderson, II
Assistant U.S. Attorney                      /s/ Gejaa T. Gobena
John Joseph Moakley U.S. Courthouse         Joyce R. Branda
Suite 9200, 1 Courthouse Way                Daniel Anderson
Boston, MA 02210                            Renée Brooker
Phone: (617) 748-3272                       Justin Draycott
Fax: (617) 748-3398                         Rebecca A. Ford
                                            Gejaa T. Gobena
R. ALEXANDER ACOSTA                         Civil Division
UNITED STATES ATTORNEY                      Commercial Litigation Branch
SOUTHERN DISTRICT OF FLORIDA                P. O. Box 261
                                            Ben Franklin Station
 /s/ Mark A. Lavine                         Washington, D.C.  20044
Mark A. Lavine                              Phone:  (202) 307-1088
Ana Maria Martinez
Ann St. Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101


Dated: November 28, 2007

8

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused an electronic copy of the above **THE UNITED STATES' REPLY TO ABBOTT LABORATORIES INC.'S OPPOSITION TO THE UNITED STATES' MOTION TO AMEND** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Gejaa T. Gobena

Dated: November 28, 2007                    Gejaa T. Gobena