## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE LITIGATION | ) | |
| | ) | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc.,* | ) | Judge Patti B. Saris |
| *Zachary T. Bentley, and T. Mark Jones v. Abbott* | ) | |
| *Laboratories, Inc.* | ) | Magistrate Judge Marianne B. Bowler |
| No. 07-CV-11618-PBS | ) | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ABBOTT LABORATORIES, INC.'S MOTION TO DISMISS OR PARTIALLY DISMISS THE RELATOR'S COMPLAINT

Dated: November 29, 2007

STERN, SHAPIRO, WEISSBERG & GARIN LLP
Jonathan Shapiro (BBO No. 454220)
90 Canal Street, 5th Floor
Boston, MA 02114-2022
Phone: 617-742-5800

THE BREEN LAW FIRM
James J. Breen (Florida Bar No. 297178)
P.O. Box 297470
Pembroke Pines, FL 33029-7470
Phone: 954-874-1635

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Susan Schneider Thomas
Roslyn G. Pollack
Joy Clairmont
1622 Locust Street
Philadelphia, PA 19103
Phone: 215-875-3000

GOODE, CASSEB, JONES, RIKLIN,
    CHOATE & WATSON
John E. Clark
2122 North Main Avenue
San Antonio, TX 78212-9680
Phone: 210-733-6030

*Attorneys for Relator Ven-A-Care of the Florida Keys, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     RELATOR'S ERYTHROMYCIN COMPLAINT PENDING IN THIS COURT
       IS NOT BARRED BY 31 U.S.C. §3730(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     Dismissal of a Second Case by a Same Relator Would Undermine, Not
              Further, the Purposes of Section (b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     Relator's Second Filed Complaint is Not Barred by the First
              Complaint Because There are Different Allegations Giving Rise
              to Potential Additional Recoveries for the Government . . . . . . . . . . . . . . . . . . . 8

II.    RELATOR'S CLAIMS ARE NOT BARRED BY THE STATUTE OF
       LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       A.     Relator's Erythromycin Complaint Relates Back to Its
              2001 Massachusetts Complaint Pursuant to Rule 15(c)(1) . . . . . . . . . . . . . . . . 12

              1.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              2.     The False Claims Act Suit Commenced For Statute of
                     Limitations Purposes When Relator Filed Its Sealed
                     2001 Massachusetts Complaint Against Abbott And Not
                     When The Government Declined Intervention or the Case
                     Was Unsealed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              3.     The False Claims Act Permits Relation Back; Relator's
                     Erythromycin Complaint Relates Back to Its 2001
                     Massachusetts Complaint Pursuant to Rule 15(c)(1) . . . . . . . . . . . . . . 15

              4.     A Specific NDC Need Not Be Identified In Relator's
                     Erythromycin Complaint to Relate Back For Statute of
                     Limitations Purposes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       B.     Relator's Erythromycin Complaint Relates Back to Its
              2001 Massachusetts Complaint Pursuant to Rule 15(c)(2) . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Campbell v. Redding Med. Ctr.*,
421 F.3d 817 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*DJ Mfg. Corp. v. Tex-Shield, Inc.*,
347 F.3d 337 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Grynberg v. Koch Gateway Pipeline Co.*,
390 F.3d 1276 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Hatch v. Dept. for Children, Youth & Their Families*,
274 F.3d 12 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. Holzmann*,
2007 WL 710134 (D.D.C. Mar. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*O'Loughlin v. National R. Passenger Corp.*,
928 F.2d 24 (1st Cir.  1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Transwitch Corp. v. Galazar Networks, Inc.*,
377 F. Supp. 2d 284 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States ex rel. Campbell v. Lockheed Martin Corp.*,
282 F. Supp. 2d 1324 (M.D. Fla. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States ex rel. Capella v. United Techs. Corp.*,
1999 U.S. Dist. LEXIS 10520 (D. Conn. June 3, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States ex rel. Costa v. Baker & Taylor, Inc.*,
1998 WL 230979 (N.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States ex rel. Downy v. Corning, Inc.*,
118 F. Supp. 2d 1160 (D.N.M. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States ex rel. Erickson v. American Institute of Biological Sciences*,
716 F. Supp. 908 (E.D. Va. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States ex rel. Goodstein v. McLaren Reg'l Med. Ctr.*,
2001 U.S. Dist. LEXIS 2917 (E.D. Mich. Jan. 3, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States ex rel. Ortega v. Columbia Healthcare, Inc.*,

240 F. Supp. 2d 8 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States ex rel. Parikh v. Premra Blue Cross*,
2007 WL 1031724 (W.D. Wash. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
474 F. Supp. 2d 75 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States ex rel. Purcell v. MWI Corp.*,
254 F. Supp. 2d 69 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States ex rel. S. Prawer & Co. v. Fleet Bank*,
24 F.3d 320 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States ex rel. Smith v. Yale New Haven Hosp.*,
2006 U.S. Dist. LEXIS 8614 (D. Conn. Feb. 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States ex rel. St. John LaCorte v. Smithkline Beacham Clinical Lab., Inc.*,
1999 U.S. Dist. LEXIS 13036 (E.D. La. Aug. 19, 1999) . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States ex rel. St. John LaCorte v. Smithkline Beecham Clinical Lab.*,
149 F.3d 227 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Dey, Inc.*
*(In re Pharm. Indus. Average Wholesale Price Litig.)*,
498 F. Supp. 2d 389 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*United States ex rel. Vosika v. Starkey Labs., Inc.*,
2004 U.S. Dist. LEXIS 18349 (D. Minn. Sept. 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*,
2002 WL 31455718 (W.D.N.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Kinder Morgan Co2 Company, L.P.*,
2005 U.S. Dist. LEXIS 31103 (D. Colo. Nov. 21, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Walburn v. Lockheed Martin Corp.*,
431 F.3d 966 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

## FEDERAL STATUTES & RULES

31 U.S.C. §3730(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

31 U.S.C. §3730(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

31 U.S.C. §3730(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

31 U.S.C. §3730(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

31 U.S.C. §3730(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8, 9, 18

31 U.S.C. §3730(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

31 U.S.C. §3730(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

31 U.S.C. § 3731(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 15(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## MISCELLANEOUS

S. Rep. 99-345 (1986), *as reprinted in* U.S.C.C.A.N. 5266, 5288 . . . . . . . . . . . . . . . . . . . . . . . 14

**INTRODUCTION**

Abbott's instant motion to dismiss is directed at the Relator's Complaint originally and currently pending in Massachusetts concerning inflated price reporting for Abbott's erythromycin drug products.[1] These drugs were widely prescribed to Medicaid patients and discovery has already shown that there are significant spreads on these drugs, hence Abbott's tack here has been to argue an ostensible jurisdictional impediment to Relator's complaint.  As will be set forth below, Abbott's arguments elevate form over substance and contradict positions Abbott has consistently advanced about the scope of the various complaints in these actions.

Organizationally, Abbott Laboratories, Inc. is structured into five divisions:  Hospital Products Division ("HPD"), which sells drugs commonly used in hospitals to both hospitals and other customers that use the same type of drugs (like clinics, home infusion businesses, etc); Pharmaceutical Products Division ("PPD"), which primarily sells oral (self-administered) drugs that are prescribed by physicians for patients; Ross, which markets and sells nutritional products and which has been the subject of totally separate fraud investigations, prosecutions and settlements by the federal and state governments; TAP, a joint venture with Takeda Pharmaceutical Co., Ltd., which (like Ross) has been the subject of totally separate fraud investigations, prosecutions and settlements by the federal and state governments (commonly referred to as the Lupron litigation); and Abbott Diagnostics.

Abbott's erythromycin products that are the subject of this suit are marketed and sold

---

[1]  Although Relator's complaint in Massachusetts was first filed in 2000, Abbott was not named as a defendant until an amended complaint in 2001.  Accordingly, for present purposes, Ven-A-Care of the Florida Keys, Inc. ("VAC") refers to this case as a 2001 Massachusetts case.  The claims against Abbott were amended to include additional NDCs for erythromycin products in 2005. Some additional drug products were also added in 2005, but those products are not the subject of Relator's non-intervened, unsealed case and have no relevance to the instant motion.

through Abbott's PPD division.  By contrast, the four drug products that are at issue in the jointly

prosecuted federal government's and VAC's complaints (hereafter "federal case") against Abbott

(both of which stemmed from Relator's 1995 Florida complaint[2]) are all drugs marketed and sold

by Abbott's Hospital Products Division and are generally drugs administered by physicians.  There

are no erythromycin products in the federal prosecution.  Abbott has vociferously argued throughout

the litigation of the federal case and in a related State of Texas prosecution that its divisions operate

independently and have largely separate employees.  Perhaps more importantly for present purposes,

Abbott has repeatedly argued that the claims in the federal case are limited to the four named drug

products and to the Hospital Products Division and thus that discovery must be limited to those

drugs and that division.  Indeed, many battles have been waged in this court and in Texas to keep

the federal DOJ and the Texas Attorney General on separate planes concerning discovery and

transactional data because, Abbott argued, the federal case was limited in scope to the Hospital

Products Divison and the named (non-erythromycin) products.[3]

---

[2]  The case in the Southern District of Florida was initially filed by Relator in 1995.  Abbott was not named in Relator's First Amended Complaint, but no dismissal was actually entered and Abbott was again named in Relator's Second Amended Complaint in 1997.  When the United States decided to intervene as to certain of the claims in that case, it filed a complaint in intervention that constitutes the complaint in the federal case.  The Judicial Panel on Multidistrict Litigation consolidated the unsealed and intervened portion into MDL 1456 and transferred it to this Court for pretrial proceedings.  Discovery has been ongoing.

[3]  *E.g.*, Abbott Laboratories, Inc.'s Response in Opposition to the United States' Third Motion to Compel Documents (Docket 4876 at 3):

> The charged drugs at issue in this case are all HPD products, and there is no dispute that HPD products are different from products in other Abbott divisions (i.e., PPD and Ross) in terms of how they were distributed in the marketplace and reimbursed by third parties like Medicare and Medicaid;

Although the federal government has intervened and been actively prosecuting claims against Abbott for the four drug products in the existing federal action, DOJ has declined to intervene in other claims against Abbott brought by the Relator.  Thus, DOJ did not intervene in all of the Abbott drugs in Relator's 1995 Florida action and DOJ declined to intervene in Relator's 2001 Massachusetts complaint alleging inflated price reporting of erythromycin products from Abbott's PPD division.  As the False Claims Act clearly permits, VAC has itself unsealed a portion of its 2001 Massachusetts case and will prosecute those claims itself, albeit on behalf of the federal government.  Procedurally, VAC moved to sever the erythromycin claims from its 2001 Massachusetts complaint and then moved to have its "Erythromycin-only" complaint transferred from another docket in this district to this MDL; both of those motions were granted and VAC's erythromycin complaint is now pending before this Court in MDL 1456.  That complaint is the subject of Abbott's motion to dismiss.

_____

Defendant Abbott Laboratories Inc.'s Response in Opposition to Relator's Motion to Compel to Produce or Consent to Access to All Discovery Produced in Other False Price Report Litigation (Docket 4200 at 1):

> [T]he Government drew its complaint-in-intervention narrowly, limiting its allegations to four families of hospital products (sterile water, Vancomycin, sodium chloride, and dextrose), produced by the Hospital Products Division of Abbott ("HPD") over a ten-year period (January 1, 1991 through January 31, 2001).  Nevertheless, the Relator asks this Court to permit it to share any and all documents produced in the Texas litigation, even though the Texas litigation covers an entirely different time period and involves 188 additional NDCs, most of which were produced and marketed by an entirely different division of Abbott.

-3-

**ARGUMENT**

**I.   RELATOR'S ERYTHROMYCIN COMPLAINT PENDING IN THIS COURT IS NOT BARRED BY 31 U.S.C. §3730(b)(5)**

Abbott's primary argument is that the Relator's 2001 Massachusetts complaint against Abbott naming both erythromycin and other drug products from Abbott's PPD division is barred by the action Relator had filed in the Southern District of Florida in 1995 (and amended in 1997) concerning different drugs and a different division of Abbott.  Abbott bases its argument on 31 U.S.C. §3730(b)(5), which provides that "[w]hen a person brings an action under §3730(b), no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  The universally acknowledged purpose of §3730(b)(5) is to strike a balance between providing incentives to *qui tam* whistleblowers to come forward with information about fraud against the government while discouraging parasitic lawsuits filed by relators with duplicative claims.  *E.g., Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 825 (9th Cir. 2005); *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 973 (6th Cir. 2005); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004); *United States ex rel. St. John LaCorte v. Smithkline Beecham Clinical Lab.*, 149 F.3d 227, 233 (3d Cir. 1998).

> A.   Dismissal of a Second Case by a Same Relator Would Undermine, Not Further, the Purposes of Section (b)(5)

Cases arising under § 3730(b)(5) typically involve a challenge to a later action filed by a second relator, implicating the statutory purpose of protecting the first filer's interests from dilution by a me-too filer who brings nothing substantive to the table for the government's benefit.  This is not such a case.  This case presents an unusual factual scenario, involving two qui tam suits filed by the same relator.  VAC has found only four cases referring to such a situation; Abbott has cited only

-4-

two (of the same four).  In both of these cases cited by Abbott, the relator's second-filed claims ultimately survived despite motions to dismiss – in one case, when the court determined that consolidation had resolved the issue; in the other, when the court granted leave to amend to add the challenged claims in the first-filed action.  Ven-A-Care contends that the same result should obtain here: whether through permissive amendment or consolidation, or simply holding that the purpose of the first-to-file bar is not served by applying it against a same relator, Abbott's motion to dismiss should be denied.

This Court, of course, has already dealt with this issue in the federal and VAC cases against Dey, Inc.  *United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Dey, Inc. (In re Pharm. Indus. Average Wholesale Price Litig.)*, 498 F. Supp. 2d 389, 400 (D. Mass. 2007).  Although the Court expressed some concern over the fact of the same relator having filed two suits, the Court found that the fact of consolidation of the two lawsuits resolved the issue.  *Id.*  Similarly, in *United States ex rel. Smith v. Yale New Haven Hosp.*, 2006 U.S. Dist. LEXIS 8614 (D. Conn. Feb. 10, 2006), the court granted leave to amend the first filed complaint by the relator to include the claims asserted in that same relator's second complaint.  *Id.* at *11-12.  The court in *United States ex rel. St. John LaCorte v. Smithkline Beacham Clinical Lab., Inc.*, 1999 U.S. Dist. LEXIS 13036 (E.D. La. Aug. 19, 1999), reached the same result this court reached in the *Dey* case, expressly holding that a first-to-file challenge was "moot" because the two separate cases filed by the same relator had been consolidated.  *Id.* at *23-24.  Finally, in *United States v. Kinder Morgan Co2 Company, L.P.*, 2005 U.S. Dist. LEXIS 31103 (D. Colo. Nov. 21, 2005), the court observed that "the statutory purpose of prohibiting opportunistic or parasitic claims is not served when the same plaintiff makes the same claim in a different jurisdiction.  It would be reasonable to read the statute as prohibiting the same

claim being made by a different party rather than the same party as is the case here." *Id*. at *7 (declining to permit plaintiff to invoke Section 3730(b)(5) to resist transfer of his first-filed case to venue of his second-filed case because plaintiff had asserted inconsistent positions in two districts to gain tactical advantage).

In other situations, also, courts have determined whether or not to apply the first-to-file ban based on an analysis of the purposes of the ban and the applicability of those purposes to the situation at hand.  In *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. Ohio 2005), for example, the Sixth Circuit held that a second filed complaint that was clearly encompassed within the reach of the first filed complaint was, nonetheless, not barred under Section (b)(5) because the first filed complaint did not comply with Rule 9(b).  *Id*. at 973.  The court's reasoning is instructive: "we fail to see how according preemptive effect to a fatally-broad complaint furthers the policy of encouraging whistleblowers to notify the government of potential frauds."  *Id*.  The Ninth Circuit followed a similar purpose-driven approach in *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 821 (9th Cir. 2005).  There, the first filed complaint was fatally deficient because the first relator was not an original source of allegations that had already been publicly disclosed.  The court sustained the second relator's complaint against the first-to-file bar, holding as follows:

> such an interpretation of § 3730(b)(5) would contravene the intent of Congress in enacting the 1986 amendments to the FCA. Congress sought to provide incentives to qui tam whistleblowers to come forward, and we believe that an overly broad interpretation of the first-to-file bar, allowing even sham complaints to preclude subsequent meritorious complaints in a public disclosure case, would contravene this intention.

*Id*. at 821.  The court engaged in a comprehensive analysis of the history of the False Claims Act and the legislative history of the 1986 jurisdictional amendments, noting repeatedly that Congress'

intent to "encourage whistleblowers to come forward is clear" and that interpreting the first-to-file bar so as to reduce the number of qui tam suits would "directly contravene[] the express intent of Congress." *Id.* at 823-25. In a similar vein, in *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 (10th Cir. 2004), in discussing the scope of the first-to-file test, the court noted that one purpose is to encourage relators to file suits by protecting them from sharing in a recovery with a second filed relator. *See also United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 13 (D.D.C. 2003) ("permitting infinitely fine distinctions among complaints has the practical effect of dividing the bounty among more and more relators, thereby reducing the incentive to come forward with information on wrongdoing. This is inconsistent with the FCA's purpose of encouraging whistleblowers to approach the government and file suit"). Plainly, in a same-relator situation, the sole relator is hurt, not protected, by a mechanistic application of the first-to-file bar. Moreover, when the same relator's second-filed claim seeks separate and additional damages, as in this case, the federal fisc also would be hurt by such an application.

In keeping with the clear Congressional intent in enacting the first-to-file ban, therefore, this Court should permit consolidation or amendment of the relator's two complaints[4], or should simply

---

[4] Should the Court deem it appropriate, VAC requests leave to consolidate its Erythromycin complaint with its complaint in the federal action (adopting the government's complaint in the intervened case) or for leave to amend to add the Erythromycin allegations. Leave to amend is freely granted absent prejudice to the defendant. *See* Fed. R. Civ. P. 15(a); *see also Hatch v. Dept. for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *Transwitch Corp. v. Galazar Networks, Inc.*, 377 F. Supp. 2d 284, 290-91 (D. Mass. 2004). Both Abbott and the United States are seeking an extension of the existing December 31, 2007 discovery cut-off in the federal case and Abbott, particularly, will not need much if any additional discovery by virtue of adding additional drugs. Especially if the discovery extension is granted, there will be no difficulty in consolidating the two cases or otherwise coordinating discovery to include the Erythromycin products. Indeed, the Court can take judicial notice of the fact that there has already been extensive discovery including the Erythromycin drugs in the Texas litigation where VAC is a party.

hold that the bar of Section (b)(5) does not apply in this particular same-relator situation.

B.   Relator's Second Filed Complaint is Not Barred by the First Complaint Because There are Different Allegations Giving Rise to Potential Additional Recoveries for the Government

Section 3730(b)(5) bars "a related action based on the facts underlying the pending action." Not surprisingly, the bulk of the litigation under this section pertains to the degree of similarity required between the two sets of allegations at issue.  Courts have generally rejected the notion that the bar only applies when the two complaints allege identical facts, and have instead applied the test more broadly to see if the material facts were the same and if the second suit would permit additional recovery by the government.  *See, e.g., United States ex rel. Capella v. United Techs. Corp.*, 1999 U.S. Dist. LEXIS 10520, *17-18 (D. Conn. June 3, 1999); *United States ex rel. Erickson v. American Institute of Biological Sciences*, 716 F. Supp. 908 (E.D. Va. 1989) (suggests that later-filed action may nevertheless continue if it is based on facts different from those alleged in the earlier suit and gives rise to a separate and distinct recovery by the government).  Here, there are different drugs alleged in the second case, involving a different division of Abbott, precisely the differences that Abbott has pointed out throughout the federal litigation.  *See* fn3, *infra*.

In determining whether a second suit would permit additional recovery by the government, courts have attempted to ascertain whether the first filed suit sufficiently alerted the government to the full range of the fraud such that "it has enough information to discover related frauds."  *LaCorte v. SKB*, 149 F.3d at 234, quoted in Abbott Mem. at 6 & 7.  Essentially, in keeping with the purpose of the ban aimed at stopping parasitic suits, courts have examined whether the second suit served a useful purpose in alerting the government to additional fraud.  *E.g., Capella, supra*, at *17-18 (permitting second case to proceed even where allegations of different fraud pertained to same

claims for payments as first case because government could obtain additional recovery).  In arguing that the (b)(5) test bars VAC's erythromycin complaint, Abbott contends that "it would … have been a trivial matter for the Government to uncover the names of other drugs for which there was a spread between reported cost and provider cost."  Abbott Mem. at 8.

Abbott's glib assertion that it would have been "a trivial matter" for the government to "discover additional fraud" and, specifically, to "uncover the names of other drugs for which there was a spread" totally contradicts the entire premise of these cases and the evidentiary record that has developed in all of the AWP cases in the MDL.  As this Court has repeatedly found, the actual prices of specific drugs comprise precisely the critical information that VAC, as an industry insider, provided to the government that was otherwise unavailable to the government.  *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, April 2, 2007 Memorandum and Order, Docket #3979 at p. 36, fn 8 (the Court found that plaintiffs satisfied Rule 9(b) by relying in part on actual market prices provided by VAC).  Particularly since this Court has largely agreed with Abbott's contention that actual discovery in the case should be limited to the specific drugs alleged (or to corporate-wide policies or practices of marketing the spread), and Abbott has generally provided transactional pricing data only for the specific NDCs alleged, it is patently clear that the government could not "discover related frauds" in the sense of different NDCs and plainly could not "uncover the names of other drugs for which there was a spread between reported cost and provider cost." In the particular circumstances of this case, therefore, the government's interest, the relator's interest, and the purpose of the statute all would be significantly disserved by applying Section 3730(b)(5) to bar the same relator's second suit alleging claims for different NDCs marketed by a

different division of Abbott.[5]

The First Circuit has fully adopted a functional analysis of the relator requirements in the False Claims Act, dealing with the overlapping provisions of Section 3730(e)(3). In *United States ex rel. S. Prawer & Co. v. Fleet Bank*, 24 F.3d 320 (1st Cir. 1994), in analyzing application of the 3730(e)(3) prohibition against bringing a *qui tam* action "based upon allegations or transactions which are the subject of [a suit in which the government is already a party]," the court found the statutory language less than clear and looked to the statute as a whole and congressional intent to determine what (e)(3) was designed to preclude:

> "[When it isn't clear whether the *qui tam* action should be barred by the 'based upon transactions or allegations' language], we think that a court should look first to whether the two cases can properly be viewed as having the qualities of a host/parasite relationship. In answering this question, we think it would be useful for the court to be guided by the definition of the word 'parasite,' and ask whether the *qui tam* case is receiving 'support, advantage or the like' from the 'host' case (in which the government is a party) 'without giving any useful or proper return' to the government (or at least having the potential to do so.)" [citing Random House dictionary].

*Id*. at 327-28. Under this analysis also, it is clear that VAC's second complaint has at least the potential to provide a useful return to the government. Moreover, without the usual concern of

---

[5] It is misleading for Abbott to argue that the later-filed Massachusetts case should be barred by the earlier Florida case in part because "nine specific Erythromycin NDCs were named in both complaints." Abbott Mem. at 7-8. The Erythromycin NDCs that were mentioned in the Florida case were not added to that case until December 2002, well after the 2001 Massachusetts case pertaining to Erythromycins was filed. If the inquiry will be focused on when a type of drug sold by a particular Abbott division was first sued on, as VAC contends should be the case, then manifestly the Erythromycin claims were first filed in the Massachusetts case and cannot be barred by a later-filed Florida amendment. It is well established in first-to-file analysis that the inquiry focuses on when particular claims were brought into each of the cases at issue, not merely which case was initiated first without regard to whether the complaint actually made allegations that were allegedly duplicated in the second filed case. *E.g., United States ex rel. Ortega*, 240 F. Supp. 2d at 14 & n.6 (D.D.C. 2003).

encouraging relators by protecting them from copycat relators, the purposes of the False Claims Act will best be served by permitting the Erythromycin claims to be prosecuted rather than allowing Abbott to escape liability for its fraudulent misconduct.

## II.   RELATOR'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Not only is Relator's Erythromycin complaint not barred by the first-to-file provision of section 3730(b)(5), it should not be dismissed on statute of limitations grounds because it relates back to Relator's February 2001, timely-filed 2001 Massachusetts complaint.  Relator's 2001 complaint, even though filed under seal, served to toll the running of the FCA's statute of limitations.  Thus, Relator's claims relating to erythromycin, dating back to as early as 1995 – six years prior to the timely-filed 2001 complaint – are not barred by the statute of limitations.[6]

_____

[6] The FCA's statute of limitations provides:

A civil action under 3730 may not be brought –

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b).

A.   Relator's Erythromycin Complaint Relates Back to Its 2001 Massachusetts Complaint Pursuant to Rule 15(c)(1)

   1.   Introduction

This Court has already correctly held that the False Claims Act permits relation back of an amended complaint (the government's complaint in intervention in that case) to a relator's sealed complaint pursuant to Rule 15(c)(1).  *See Dey*, 498 F. Supp. 2d 389, 396-99 (D. Mass. 2007).  The Court found that  the FCA's statute of limitations period was tolled with the filing of the relator's sealed complaint and, thus, the subsequent amended complaint related back to a timely-filed original complaint.  *Dey*, 498 F. Supp. 2d at 394-99.  Defendant's request for this Court to re-evaluate its earlier ruling and find that an amended complaint does not relate back to an earlier sealed complaint and that the statute of limitations is not tolled until unsealing – based on Defendant's apparently new "textual and legislative intent" arguments – should be rejected.  Defendant's arguments are not supported by any federal caselaw on this issue nor by the language and purpose of the FCA.

   2.   The False Claims Act Suit Commenced For Statute of Limitations Purposes When Relator Filed Its Sealed 2001 Massachusetts Complaint Against Abbott And Not When The Government Declined Intervention or the Case Was Unsealed

This Court has previously held in the *Dey* case that for purposes of the statute of limitations, the action commences "when the relator files its sealed complaint against a defendant." *Dey* at 394-96.  Here, Relator filed its sealed Massachusetts complaint against Abbott in 2001, successfully tolling the running of the statute of limitations period.  Thus, Relator can recover as to all claims for fraudulent conduct relating to Erythromycin beginning in 1995, six years prior to the expiration of the limitations period.

This result is consistent with the considerable federal FCA caselaw holding that a case is

-12-

initiated and the statute of limitations is tolled when a complaint is filed.  *See Miller v. Holzmann*, 2007 WL 710134, *1-4 (D.D.C. Mar. 6, 2007) (filing of FCA relator's complaint tolls statute of limitations); *United States ex rel. Downy v. Corning, Inc.*, 118 F. Supp. 2d 1160, 1170-72 (D.N.M. 2000) ("the limitations provisions of Section 3731 [of the FCA] are referring to the relator's initial act of filing the civil action, not to the later date when the complaint is unsealed."); *United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 2002 WL 31455718, *7-8 (W.D.N.C. 2002); *United States ex rel. Goodstein v. McLaren Reg'l Med. Ctr.*, 2001 U.S. Dist. LEXIS 2917 at *12 (E.D. Mich. Jan. 3, 2001) (FCA suit commences for statute of limitations purposes when relator's complaint is filed); *United States ex rel. Costa v. Baker & Taylor, Inc.*, 1998 WL 230979, *3 (N.D. Cal. 1998) (statute of limitations tolled when relators filed their sealed complaint); *see generally* Fed. R. Civ. P. 3 (a civil action is commenced by filing a complaint with the court).  Defendant is unable to cite any cases whatsoever to the contrary in support of its interpretation of when the statute of limitations is tolled.

Moreover, the language, structure and purpose of the FCA offer further support that the statute of limitations period is tolled by relator's initial filing of a civil action, not the government's decision to decline intervention or unsealing, as Defendant tries to argue.

The text of the False Claims Act clearly provides that either the Attorney General,  § 3730(a), or a private person, § 3730(b), *may bring* an action.  Section 3730(b)(1) states that "*A person may bring a civil action*… for the person and for the United States Government.  The action *shall be brought* in the name of the Government."  (Emphasis added)  By the statute's very terms then, even under defendant's constrained reading, a relator's action is "brought" when the complaint is filed *in camera* and under seal. 31 U.S.C. § 3730(b)(2).  Nothing in the False Claims Act suggests

the relator has lost his status as a person who brought the action while the government considers whether to intervene.  Once, however, the government declines to intervene, the relator is still the person bringing the action.[7]

Contrary to Defendant's arguments, Congress' intent in passing the FCA is entirely consistent with the tolling of the statute of limitations period upon a relator's filing of a complaint *in camera* and under seal.  The overarching purpose of the Act is to recover money wrongfully defrauded from the United States government and "to encourage any individual knowing of Government fraud to bring the information forward" and "to encourage more private enforcement" S. Rep. 99-345 *as reported in* 1986 U.S.C.C.A.N. 5266, 5288.[8]  The FCA permits the United States to investigate the case while under seal and to defer service and prosecution of the case until an intervention decision can be made.  This process is solely within the power of the government; the relator does not have the ability to prevent the government from obtaining the extensions of time to investigate.

With the statute of limitations tolled by the filing of a relator's complaint and while the

---

[7] There are numerous cases holding that in actions where the government has declined to intervene, the statute of limitations is still applicable.  *see supra* Section II.A.3; *see, e.g., United States ex rel. Parikh v. Premra Blue Cross*, 2007 WL 1031724, at *3-4 (W.D. Wash. 2007) (non-intervened case; statute of limitations tolled when case is filed).

[8] Abbott distorts the Congressional intent behind the sealing provision by quoting only select language to support its position.  The complete discussion of the legislative history explains that the purpose of the sealing provision is to not only "not affect defendants' rights in any way" but also to provide the government a full opportunity to study, investigate and evaluate the case and also not to harm the interests of the relator.  The full quote continues that "[o]nce the court has unsealed the complaint, the defendant will be served as required under Rule 4 of the Federal Rules of Civil Procedure and will not be required to respond until 20 days after being served."  This procedure applies equally if either the government litigates the case or if the government declines intervention and the relator conducts the case.

complaint remains under seal, the government is given the opportunity to fully investigate the allegations in the complaint and maximize its potential recovery of defrauded funds.  If the statute of limitations were to continue to run during the government's investigatory phase, each time an extension is granted to the government, more potential false claims recoveries would be lost.  If Abbott's argument were accepted, the government would be pressured to act immediately to decide whether to intervene or to let the relator proceed with the case because the government's future recovery would be diminished the longer it took to decide.  Defendants are attempting to impose a new and after-the-fact provision that would limit the time in which the government could investigate a case.  It would make no sense to hold that Congress intended a shorter limitations period if the case were conducted by the relator on behalf of the government as the real party in interest, than if it were conducted by the government itself.

> 3.    The False Claims Act Permits Relation Back; Relator's Erythromycin Complaint Relates Back to Its 2001 Massachusetts Complaint Pursuant to Rule 15(c)(1)

Under Fed. R. Civ. P. 15(c)(1), "[a]n amendment of a pleading relates back to the date of the original pleading when … relation back is permitted by the law that provides the state of limitations applicable to the action."  Again, this Court has already correctly held that the FCA permits relation back of the government's complaint in intervention to the relator's sealed complaint under Rule 15(c)(1) of the Fed. R. Civ. P.  The reasoning supporting that decision is even more applicable to the issue of whether the allegations of the *relator's* unsealed amended complaint relate back to *relator's* sealed complaint.  As stated in *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 474 F. Supp. 2d 75, 89 (D.D.C. 2007) a *qui tam* case where the government had not intervened, "there is one statute of limitations expressed in § 3731(b)(2) and it applies the same in

-15-

all cases." (The *Pogue* court permitted the relator to proceed on a case filed in 1994 so long as none of the claimed violations of the FCA had occurred prior to 1984, in accordance with the 10 year repose limitation contained in § 3731(b)(2)).

In determining whether the FCA permits relation back of amendments, the provisions of the Act must be given full effect. *See DJ Mfg. Corp. v. Tex-Shield, Inc.*, 347 F.3d 337, 340 (1st Cir. 2003) (in interpreting statutes, courts must look to the provisions of the whole law). The unique provisions of the FCA clearly contemplate relation back between the relator's unsealed complaint (here, the erythromycin complaint) and sealed complaint (here, the 2001 Massachusetts complaint). The FCA authorizes a *qui tam* relator to bring an FCA suit on the government's behalf. 31 U.S.C. § 3730(b)(1). Further, if the government elects not to proceed with the action the person who initiated the action shall have the right to conduct the action. *Id.* § 3730(c)(3). It logically follows that the FCA permits Relator's erythromycin complaint to relate back to the complaint which initiated the action against Abbott on Abbott's erythromycin products in its PPD Division, Relator's 2001 Massachusetts complaint.

In short, Relator's allegations as contained in its erythromycin complaint are not barred by the statute of limitations as the FCA pursuant to Rule 15(c)(1) permits relation back to Relator's timely-filed 2001 Massachusetts complaint.

### 4.   A Specific NDC Need Not Be Identified In Relator's Erythromycin Complaint to Relate Back For Statute of Limitations Purposes

A specific NDC need not be identified in Relator's erythromycin complaint to relate back under Rule 15(c)(1). Relation back pursuant to Rule 15(c)(1) is permitted if the law providing the statute of limitations allows relation back. As shown in subsection 3 above, the relevant law in this case is the FCA which permits Relator's erythromycin complaint to relate back to its 2001

Massachusetts complaint.

By arguing that each specific NDC must be identified in order to relate back, Abbott too narrowly construes which claims relate back under Rule 15(c)(1).  The "claims" Abbott refers to are not the actual claims submitted to the Medicaid Program for reimbursement.  What Abbott calls "claims" are the 43[9] NDCs assigned to the erythromycin drugs identified in Relator's complaint when, in fact, there are tens of thousands of claims for Medicaid reimbursement at issue in this case. Abbott's view of relation back on an NDC-by-NDC basis is simply not supported by Rule 15(c)(1).

This Court has previously allowed other plaintiffs in this multi-district litigation to amend their complaint to add additional NDCs of drugs already named.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, July 30, 2007 Order, Docket #4540 (allowing amendment of NYC and Counties' complaint to add NDCs relating to drugs pled in first complaint).  Here, Relator's 2001 Massachusetts complaint identified the erythromycin drugs as the drugs at issue for which Abbott reported inflated prices.  It is of no consequence for relation back purposes that additional NDCs for the erythromycin drugs were added in 2005 and in 2007 to the erythromycin complaint.  Abbott's restrictive interpretation of relation back should not prevail as clearly the allegations in Relator's erythromycin complaint relate back to those asserted in the 2001 complaint.

    B.    <u>Relator's Erythromycin Complaint Relates Back to Its 2001 Massachusetts Complaint Pursuant to Rule 15(c)(2)</u>

In addition to relation back under subsection (c)(1) of Rule 15 as explained above, subsection (c)(2) also permits the erythromycin complaint to relate back to Relator's 2001 complaint.  Relator's

---

[9] Defendant states that Relator's complaint covers 41 different NDCs of Erythromycin, however, paragraph 33 lists 43 NDCs including those for Pediazole which is a combination of Erythromycin and Sulfisoxazole.

erythromycin complaint involves the same "conduct, transaction or occurrence" set forth in its 2001 complaint.[10]   Abbott relies on the *Baylor* decision to argue that Rule 15(c)(2) relation back is improper in this FCA case because sealed complaints offer no notice to defendants.   Numerous courts have held to the contrary – that Rule 15(c)(2) relation back does apply to FCA actions.   *See United States ex rel. Vosika v. Starkey Labs., Inc.*, 2004 U.S. Dist. LEXIS 18349, *7 (D. Minn. Sept. 8, 2004); *United States ex rel. Campbell v. Lockheed Martin Corp.*, 282 F. Supp. 2d 1324, 1336 (M.D. Fla. 2003); *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 75-76 (D.D.C. 2003).   Here, Relator's erythromycin complaint alleges a FCA scheme in which Abbott knowingly defrauded the Medicaid Program by reporting inflated drug prices for erythromycin drugs in order to increase its sales and profits for its PPD Division.   This is precisely the same fraudulent conduct as alleged in Relator's 2001 Massachusetts complaint.   This Court has already held that different NDCs for the same type of drug product are parcel of the same claim, clearly adequate to meet 15(c)(2)'s test for relation back.

## CONCLUSION

Abbott Laboratories, Inc.'s Motion to Dismiss or Partially Dismiss the Relator's Complaint should be denied.   Relator's Erythromycin complaint is not barred by the first-to-file prohibition of 31 U.S.C. §3730(b)(5) nor by the statute of limitations as it relates back to Relator's timely-filed

---

[10] Rule 15(c)(2) does not explicitly include a notice requirement, but rather only states that the claim in the subsequent pleading must arise out of the same conduct, transaction or occurrence. Notice typically arises in determining whether the amendment is based on the same allegations as the original pleading. *See, e.g., O'Loughlin v. National R. Passenger Corp.*, 928 F.2d 24, 27 (1st Cir. 1991) ("We have scoured the original complaint and can find no allegation of facts that could be said to give Amtrak fair notice of the general fact situation out of which the claim in the amended complaint arose.").

2001 Massachusetts Complaint.  In the alternative, if the Court were to grant in full or in part Abbott's Motion to Dismiss, Relator respectfully requests leave to consolidate its Erythromycin complaint with its complaint in the federal action (adopting the United States' Intervention Complaint) and/or leave to amend to add the Erythromycin allegations.


Dated:  November 29, 2007                    Respectfully Submitted,
                                             Attorneys for Plaintiff
                                             Ven-A-Care of the Florida Keys, Inc.


                                                 /s/ Susan S. Thomas
                                             BERGER & MONTAGUE, P.C.
                                             Sherrie R. Savett
                                             Susan Schneider Thomas
                                             Roslyn G. Pollack
                                             Joy Clairmont
                                             1622 Locust Street
                                             Philadelphia, PA 19103
                                             Phone: 215-875-3000

                                             STERN, SHAPIRO, WEISSBERG & GARIN LLP
                                             Jonathan Shapiro (BBO No. 454220)
                                             90 Canal Street, 5th Floor
                                             Boston, MA 02114-2022
                                             Phone: 617-742-5800

                                             THE BREEN LAW FIRM
                                             James J. Breen (Florida Bar No. 297178)
                                             P.O. Box 297470
                                             Pembroke Pines, FL 33029-7470
                                             Phone: 954-874-1635
                                             Fax: 954-874-1705

                                             GOODE, CASSEB, JONES, RIKLIN,
                                                CHOATE & WATSON
                                             John E. Clark
                                             2122 North Main Avenue
                                             San Antonio, TX 78212-9680
                                             Phone: 210-733-6030