**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION:  01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO<br>*U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*,<br>No. 06-CV-11337-PBS | ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**ABBOTT LABORATORIES, INC.'S MOTION TO**
**STRIKE PLAINTIFFS' UNTIMELY SUPPLEMENTAL RULE 26(A)(1) DISCLOSURE**
**AND PRECLUDE PLAINTIFFS' UNTIMELY DISCLOSED MEDICAID WITNESSES**

In August 2006, with over 16 months remaining in discovery, the Government told Abbott, in its initial Rule 26(a)(1) disclosures (Ex. 1 ("Initial Disclosures")), that it would not call any State Medicaid witnesses.  When Abbott raised the issue with the Government in an early meet-and-confer, the Government confirmed it would not call such witnesses.  Discovery proceeded thereafter, with both sides taking dozens of depositions, and reviewing millions of pages of documents.  No State Medicaid witnesses were deposed, however, because the Government said it would not be calling them:  the Government would prove its case with its Medicare witnesses only.  Then, with barely a month left in discovery, on Monday, November 20, 2007, at 4:49p.m. (the Monday before Thanksgiving), the Government served supplemental Rule 26(a)(1) disclosures, informing Abbott that it might call 22 brand newly-disclosed State Medicaid witnesses – and indeed, might even add more in the month of discovery remaining. (Ex. 2 ("Supplemental Disclosures").)

Since unsealing their complaint in 2006, Plaintiffs have constantly sought to expand this case and expand discovery in a futile effort to bludgeon Abbott into submission with pre-trial litigation costs – having recently sought leave to add claims based on acyclovir, and having

countenanced Ven-A-Care's recently unsealed suit based on yet another drug, Ery. This is not right, and it is not fair. The Government had over 11 years to decide how to litigate this case, before it even unsealed and allowed Abbott to try to catch up. Based on the Government's representation that it intended to prosecute its case without the testimony of any State Medicaid witnesses, Abbott spent 15 months focused on CMS – a single plaintiff Federal agency, with enough documents and witnesses to fill up the discovery period easily. Yet now, at the end of discovery, and over 12 years after this case was filed, the Government is trying to inject 22, 50, or more State Medicaid witnesses into the case. If successful, this expansion will require expansive additional discovery and delay even further Abbott's trial. The prejudice to Abbott from this attempt to vastly multiply the scope of this case with only about a month left in discovery is obvious, and the Court should not allow it.

For these reasons, as set forth more fully below, the Government's "Supplemental Disclosures" of State Medicaid witnesses dated November 20, 2007 should be stricken, and the testimony of the State Medicaid witnesses identified for the first time therein should be precluded.

**BACKGROUND**

This case was originally filed in June 1995, and the Government then waited over 11 years to unseal the complaint against Abbott – an incredible delay that was purportedly necessary for the Government to investigate the case and decide whether to intervene. It did so in March 2006, and ultimately served its complaint-in-intervention on Abbott in May 2006. Having more than a decade to consider matters, the Government ultimately decided to pursue both Medicare and Medicaid claims in this case. (*See* Government's Complaint-in-Intervention, introductory paragraph ("The United States brings this fraud action against Abbott Laboratories, Inc. . . . to

recover losses sustained by the Medicare and Medicaid programs.").)  With 51 Medicaid programs around the country, this was an ambitious undertaking for the Government.

When the Government made its Initial Disclosures, however, it took a remarkably narrow approach to proving its case.  The Initial Disclosures, submitted on August 9, 2006 – over 15 months ago – identified only *two* potential witnesses with discoverable information relevant to this case.  (Ex. 1 at 1 & Ex. A); *see* Fed. R. Civ. P. 26(a)(1)(A).  This miserly disclosure was no oversight; the Government explicitly, and intentionally, did *not* list any State Medicaid witnesses.  As the Government explained:

> Because Medicaid is a joint federal and state program, the Defendants may seek to obtain discoverable information – whether on liability or damages – from employees or representatives from various states throughout the country.  *At this stage*, *Plaintiffs do not anticipate calling any such individuals at trial*.  If that position changes, Plaintiffs will supplement these disclosures.  To the extent Defendants nonetheless pursue such evidence, Defendants are referred to each individual state's Attorney General, Medicaid Agency legal representative, or other state legal representatives, who will be responsible for designating individual state witnesses authorized to provide information or testimony on each state's behalf.

(*Id.* at 1-2.)

Surprised by this cramped approach to proving a nationwide Medicaid case, Abbott's counsel asked the Government in a meet-and-confer early on whether the Government was serious about not calling any state witnesses.  The Government confirmed that the narrow disclosure was not a mistake, repeatedly emphasizing that the case was about *Abbott's conduct* only, and that such Medicaid testimony would be irrelevant.  Abbott planned its discovery accordingly, taking very little discovery from the states.  After all, the plaintiff, not the defendant, has the responsibility for shaping the case-in-chief.

Such was the state of affairs until November 20, 2007, the Monday before Thanksgiving.  With a December 31, 2007 fact discovery cut-off barely a month away, the Government did an

about-face. It served on Abbott, at 4:49pm, what it termed its Supplemental Disclosures. (Ex. 2.) Stunningly, for the first time in this now 12-plus year old case, the Government formally expressed an intent to rely on the testimony of a host of State Medicaid witnesses.

Compounding injury with insult, the Government essentially tries to blame Abbott in the Supplemental Disclosures for not having deposed State Medicaid witnesses to date, even though the same document admits that those witnesses *were never disclosed by the Government to Abbott*. The Government then "discloses the names of *some* current or former State Medicaid employees whom the United States believes are likely to have discoverable information that the United States may use to support its claims in this case." (*Id.* at 2 (emphasis added).) There are 22 such witnesses on this apparently still incomplete list, including:

- Bahr, Debra (Former Director, Kentucky Medicaid Pharmacy)

- Cathers, Pharm.D., R.Ph., Terri (Director of Pharmacy, Office of Medical Assistance Programs, Pennsylvania)

- Cioppa, Carl (Manager Formulary Operations and Systems Interface, Office of Health Insurance Programs, Bureau of Pharmacy and Operations, New York)

- Donnelly, James (Office of Health Insurance Programs, Bureau of Pharmacy Policy and Operations, New York)

- Gilmore, Gary (Mass Health, Deputy Director of Pharmacy)

- Gorospe, Kevin (California State Medicaid)

- Hazelwood, Marvin (Former Illinois State Medicaid Pharmacy Manager)

- Jeffrey, Paul L. (MassHealth, Director of Pharmacy)

- Jones, James (Deputy Administrator, Division of Health Care Financing, Wisconsin State Medicaid)

- Kenyon, R. Ph., James (Pharmacist Consultant, MDCH/Medical Services Administration, Michigan)

- Kramer, Sandy (Pharmacy, Program Specialist, Bureau of Program policy, Michigan Dept. of Social Services)

- Lucas, Susan (Washington State Medicaid)

- O'Keefe, Trish M. (Manager, Pharmacy Services Section, Data Management Division, Medicaid Program Operations & Quality Assurance, Michigan Department of Community Health)

- Paccione, Maryanne (Virginia State Medicaid)

- Reid, Robert (Pharmacy Program Administrator, Ohio Department of Jobs and Family Services)

- Sibor, David (ACS State Healthcare, LLC)

- Solomon, Janet (Human Services Program Specialist, Pharmacy, Office of Medical Assistance Programs, Pennsylvania)

- Sullivan, Leo (Former TennCare Pharmacy Director)

- Terrebonne, Mary Julia (Pharmacy Director, Louisiana State Medicaid)

- Tomlinson, Bryan (Virginia State Medicaid)

- Traylor, Chris (Associate Commissioner, Medicaid and CHIP, Texas State Medicaid)

- Woods, Amy (Missouri State Medicaid)

Finally, the Government adds – without even a hint of irony – that it may yet *further* "supplement this disclosure with additional names of former or current State Medicaid employees, including but not limited to former and current Medicaid employees from the states of Alabama, Georgia, Indiana, Louisiana, Maine, New Jersey, North Carolina, South Carolina, and Tennessee" – again without regard to any impact on Abbott or for the schedule set by this Court. (*Id.*)

## **ARGUMENT**

Federal Rule of Civil Procedure 26(a)(1)(A) provides, with limited exceptions not relevant here, that a "party must, without awaiting a discovery request, provide to other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses,

unless solely for impeachment, identifying the subjects of the information . . . ."[1]  The Rule adds that "[a] party must make its initial disclosures based on the information then reasonably available to it . . . ."  Fed. R. Civ. P. 26(a)(1) (flush paragraph).

Federal Rule of Civil Procedure 26(e)(1), in turn, confirms that Rule 26(a)(1) is not just a one-time event, but also a continuing obligation, which must be attended to routinely and on a timely basis.  The Rule states:

> A party is under a duty to *supplement* at *appropriate intervals* its disclosures under [Rule 26(a)(1)] if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

(Emphases added.)

Finally, "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  Y*etti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  It provides, in relevant part:  "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

These three rules, taken together, require that the Government's tardy "supplemental disclosure" of state Medicaid witnesses be stricken, and these witnesses' testimony be precluded from this case.

---

[1] Courts in this district take this obligation seriously.  D. Mass. L.R. 26.2(A) requires that such disclosures be made "should be made as soon as practicable" in litigation.  In fact, it even conditions a party's right to conduct any other discovery on the timely submission of its Rule 26(a)(1) disclosures.  *Id.*

### A. The Disclosure Of State Medicaid Witnesses, Whom The Government Insisted For 15-Plus Months Would Not Testify, Then Disclosed With Barely A Month Of Discovery Remaining, Was Untimely.

There can be no reasonable dispute that the Government's about-face on State Medicaid witnesses, with barely a month remaining in discovery, renders the Supplemental Disclosure of those witnesses untimely. The Advisory Committee Notes to the 1993 Amendments to Rule 26(a) make clear that the mandatory initial disclosure requirements are designed to accelerate the exchange of basic information, to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." Specifically, with respect to witness disclosures, those Notes state that,

> [a]s officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties.

Accordingly, "[a] party must make its initial disclosures *based on the information then reasonably available to it* . . . ." Fed. R. Civ. P. 26(a)(1) (flush paragraph) (emphasis added). And the disclosures should provide the "information essential to the litigation of all relevant facts, to eliminat[e] surprise . . . ." *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa. 1992). Moreover, parties are "under a duty to supplement their Initial Disclosures *when they acquire*[] . . . pertinent information." *Dunkin' Donuts Inc. v. Dough Boy Mgt., Inc.*, 2006 WL 20521, at *8 (D. N.J. Jan. 3, 2006) (emphasis added); *see also Reddick v. Bloomingdale Police Officers*, 2003 WL 1733560, *12 (N.D. Ill. Apr. 1, 2003) (noting that defendant had a duty to supplement its Rule 26(a)(1) disclosures as soon as defendant had located and contacted a previously disclosed witnesses); *Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.*, 2002 WL 1433584, at *6 (N.D. Ill. July 2, 2002) (finding litigant required under Rule 26(e) to supplement prior response that documents "may" be in a

warehouse upon litigant's finding of said documents in the warehouse).  At a minimum, "litigants should not indulge in gamesmanship with respect to the[se] disclosure obligations," 1993 Advisory Comm. Notes to Rule 26(a), given that the very purpose of the rule is to prevent the practice of "sandbagging" an opposing party with new evidence.  *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000).

Yet that is exactly what the Government did here.  In August of 2006, as discovery was just getting underway, the Government clearly told Abbott in its Initial Disclosures that it *would not be calling* State Medicaid witnesses.  (Ex. 1 at 1-2.)  Throughout 15-plus months of discovery that followed, the Government stuck to this position, knowing that Abbott's counsel did not believe the Government's proposed proof to be adequate.  And only on the Monday before Thanksgiving, November 20, 2007, did the Government change its mind – setting out in its Supplemental Disclosures, for the very first time, the names of at least 22 State Medicaid witnesses that it might call at trial.

This will not do.  One could hardly imagine a more blatant example of a party making an untimely and improper witness disclosure.  The Government knew about these witnesses long ago, and should have disclosed them initially in August 2006.  At the very least, they should have been added as "supplemental" disclosures sometime well before the one-month-left-in-discovery mark.  These disclosures, in short, violate Rule 26(a)(1).

### B.     The Untimely Disclosure Should Be Stricken, And The Witnesses' Testimony Should Be Precluded From This Case.

Where, as here, a party fails to timely make or supplement its Rule 26(a)(1) disclosures, the sanction is clear and automatic.  "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so

disclosed." Fed. R. Civ. P. 37(c)(1); *see also Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (Rule "37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.").

The First Circuit is among the most tenacious enforcers of Rule 37. In this Circuit, preclusion orders "fall [ ] in the heartland of case management decisions – the area where a trial judge has the remorseless responsibility, evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of cases through the court." *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 191 (1st Cir. 2005). As the *Gagnon* court explained,

> In *Primus v. United States*, 389 F.3d 231 (1st Cir. 2004), we stressed that "[t]he adoption of Rule 37(c)(1) in 1993 'gave teeth to a significantly broadened duty' to comply with case management orders." *Id*. at 234 (citations omitted). Our view of the effect of this rule is well stated in *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998), where we declared that it "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches . . ., *and the required sanction in the ordinary case is mandatory preclusion*."

*Id.* (emphasis added); *see also Primus*, 389 F.3d at 235 ("Mandatory preclusion [is] the *required sanction* in the ordinary case.") (emphasis added).

Where, as here, a party has failed to make a required timely disclosure under Rule 26(a)(1), to avoid mandatory exclusion that party "has the burden of proving substantial justification or harmlessness." *Alves v. Mazda Motor of Am., Inc*., 448 F.Supp.2d 285, 293 (D. Mass. 2006). The Government can do neither.

> **1.    The Government Cannot Show Any "Substantial Justification" For Its 11th-Hour Disclosure Of State Medicaid Witnesses.**

To begin with, the Government cannot show any "substantial justification" for waiting until 15 of the 16 months allotted for fact discovery had expired before trying to multiply the size of this case by an order of magnitude. "A failure to disclose testimony is not substantially

justified, where, as here, the need for such testimony could reasonably have been anticipated." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Electric Transit Inc*., 2007 WL 3460280, at *3 (N.D. Cal. Nov. 14, 2007); *see also Horton v. Hussmann Corp*., 2007 WL 2885166, at *6 (E.D. Mo. Sept. 27, 2007) ("Delays in disclosure are not substantially justified if they could have reasonably been avoided.").

Here, there is no question that the need for State Medicaid witness testimony *could* have been reasonably anticipated by the Government. Indeed, it *was* so anticipated. And the Government clearly could have disclosed those witnesses in August 2006 with its Initial Disclosures. Even a cursory search of the documents produced so far in discovery by the Government reveals the following number of hits for these late-disclosed witnesses:

- Bahr, Debra:  4
- Gilmore, Gary:  2
- Gorospe, Kevin:  1
- Hazelwood, Marvin:  14
- Jeffrey, Paul L.:  1
- Jones, James:  2
- Reid, Robert:  10
- Terrebonne, Mary Julia:  30

But the Government made an affirmative decision not to call State Medicaid witnesses. (*See* Ex. 1 at 1-2.) Having had more than a decide to decide on its proofs, there can be no credible claim that the Government did not know until two weeks ago that it would need to rely on State Medicaid witnesses at trial. Regardless what excuse the plaintiffs may now dream up, there can be no "substantial justification" here.

### 2.  The Government's Belated State Medicaid Witness Disclosure Was Not Harmless; Indeed, It Would Be Affirmatively Harmful.

The Government cannot plausibly claim that it would be harmless to multiply the scope of discovery 50-fold in this case. As the First Circuit explained in *Gagnon*,

> The Advisory Committee notes to the 1993 amendments to the rules state that the harmlessness provision is intended "to avoid unduly harsh penalties in a variety of situations." Illustrative examples are late disclosures of a potential witness known to all parties, a trial witness already listed by the adverse party, or a witness on behalf of a pro se litigant ignorant of the requirement. These suggest a fairly limited concept of "harmless."

437 F.3d at 197.

These limited examples do not remotely describe what happened here. Again, it bears repeating that the Government knew full well that it could call State Medicaid witnesses when it tendered its Initial Disclosures in August 2006. Abbott's counsel told the Government as much. Still, the Government made a knowing, voluntary, tactical decision *not* to name the witnesses. (Ex. A at 1-2 ("Because Medicaid is a joint federal and state program, the Defendants may seek to obtain discoverable information – whether on liability or damages – from employees or representatives from various states throughout the country. At this stage, *Plaintiffs do not anticipate calling any such individuals at trial . . .*") (emphasis added).)

Nor is it any answer to say that discovery could simply be extended. If that were true, Rule 26(a)(1) violations would never be subject to Rule 37 sanctions. As to this particular case, it is unfair to permit the DOJ, backed by the unlimited resources of the United States, to expand this case without limits, burdening Abbott with infinite discovery costs, hoping eventually to force capitulation and settlement. This 1995-filed case has to be tried; it is far too late in the day to reconceptualize it and start again, as the Government now seeks to do. For good or bad, the Government made a decision in August 2006 and stuck by that decision as the discovery period ticked away; fundamental fairness now requires it to live with that decision.

### 3. No Remedy Short Of Striking The Belated Disclosure And Precluding The Witnesses' Testimony Will Suffice.

The Government will no doubt argue that, notwithstanding the foregoing, preclusion "is a grave step, not to be undertaken lightly." *Thibeault v. Square D Co.*, 960 F.2d 239, 247 (1st Cir. 1992). True, but irrelevant. The First Circuit has specified the principles for deciding when to preclude evidence under Rule 37—which again, is "the required sanction in the ordinary case." *Primus*, 389 F.3d at 235. Specifically:

> "trial judges must work a complicated equation, balancing fairness to the parties with the need to manage crowded dockets." This means that [courts] must consider a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, and the opponent's ability to overcome its adverse effects. Surprise and prejudice are important integers in this calculation. So too is an assessment of what the late disclosure portends for the court's docket.

*Gagnon*, 437 F.3d at 197-98 (quoting *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003)).

Each of these factors militates in favor of the standard remedy of automatic preclusion here. The Government had 11 years to investigate and prepare this case for trial, while Abbott could only sit idly by and respond to civil investigative demands, unable to do any offensive discovery of its own while the case remained under seal. When the Government did finally get around to unsealing, and the 16-month discovery period for Abbott to catch up was established, the Government stated at the outset that it would not call State Medicaid witnesses, and steadfastly clung to that position until just about a month of the period remained, when it announced its intention to expand this case from one Federal agency to upwards of 51 individual agencies.

Such a massive expansion of the case portends havoc for the Court's docket. Like the proverbial groundhog's shadow, it signifies at least months (if not years) of more drudgery in the form of discovery and attendant motion practice for the parties and the Court. Striking the

Government's State Medicaid witness Supplemental Disclosures, and precluding the testimony of these witnesses, is the only way to avoid this result.

## **CONCLUSION**

For all of these reasons, Abbott respectfully requests that the Government's "Supplemental Disclosures" of State Medicaid witnesses dated November 20, 2007 be stricken; that the testimony of the State Medicaid witnesses identified for the first time therein be precluded; and for such other relief as the Court deems just and proper.

Dated:  December 3, 2007                                     Respectfully submitted,

/s/ Brian J. Murray
James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

I certify that the moving parties have communicated with counsel for Plaintiffs in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

/s/ R. Christopher Cook
R. Christopher Cook

## **CERTIFICATE OF SERVICE**

I, Brian J. Murray, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MOTION TO STRIKE PLAINTIFFS' UNTIMELY SUPPLEMENTAL RULE 26(A)(1) DISCLOSURE AND PRECLUDE PLAINTIFFS' UNTIMELY DISCLOSED MEDICAID WITNESSES to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 3rd day of December, 2007.

/s/ Brian J. Murray
Brian J. Murray