UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc.,* CIVIL ACTION NO. 06-11337-PBS | MDL No. 1456 <br> Civil Action No. 01-12257-PBS <br><br> Hon. Patti Saris |

**THE UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ENLARGEMENT OF TIME TO COMPLETE DISCOVERY**

Under Case Management Order (CMO) 29, the period for fact discovery in the United States' case against Abbott Laboratories Inc. (Abbott) is currently set to end on December 31, 2007. For the numerous reasons set forth below, the United States requests additional time to complete discovery. The United States has over 60 depositions of Abbott and third party witnesses to complete; the delays in scheduling them are a result of discovery disputes with Abbott that have seriously slowed the pace of discovery in this matter. Further, there is still a significant motion to compel pending that implicates tens of thousands of pages of documents that must be resolved, and two government requests for production to which Abbott has not responded. In addition, the process of collecting damages data in this matter from Abbott, states, and the Centers for Medicare and Medicaid Services has been more difficult than originally anticipated. The production of the entirety of these damages materials with take several additional months.

Further, the United States does not believe it will be able to complete responses to Abbott's broad, pending discovery requests by December 31, 2007. In the *two weeks* before the filing of this motion, Abbott inundated the Government with discovery requests: (1) Rule 30(b)(6) notices on some 70 topics and subtopics, (2) Rule 30(b)(6) notices for 35 separate Medicare carriers covering approximately 20 topics and subtopics and (3) hundreds of requests for admissions and interrogatories. While much of this discovery is objectionable and will likely result in motions practice, the United States cannot effectively respond to these requests by the current end of fact discovery in this matter.

Additional time is necessary for both parties' discovery to be completed. The United States requests that fact discovery be extended to June 30, 2008, with the subsequent deadlines (for expert discovery, summary judgment motions practice, etc.) changed as set forth in the proposed order submitted herewith. The government believes that the remaining deposition hours and unused written discovery requests are sufficient to complete the outstanding discovery.

I.   **BACKGROUND**

Fact discovery ends in this matter on December 31, 2007. The United States has and continues to conduct discovery as efficiently as possible in this matter. However, as discussed below, the United States will not be able to complete its discovery of Abbott or respond to the avalanche of last minute Abbott discovery requests served on the government by that date.

    **A.   Abbott's Discovery Tactics Have Impeded The Efficient Conduct of Discovery In This Matter.**

Notwithstanding the multiple civil investigative demands and investigative subpoenas served on Abbott during the *qui tam* investigation, Abbott is only now – in this litigation –

producing large volumes of highly relevant documents and evidence relating to the subject matter of the prior investigation and current litigation.  The failure to produce this evidence served to slow not only the government's initial *qui tam* investigation, but the government's discovery efforts in this action as well.

Notably, at the outset, the United States believed that discovery could not be completed in this case in less than 18 months, under normal circumstances.  Abbott maintained that discovery could be completed within 12 months and, as discussed below, engaged in a course of conduct that has caused significant delays and prejudiced the United States.  The United States original esitimate proved to be more realistic and may have understated the amount of time that would be necessary to complete discovery in the government's case against Abbott.

Seeking production of these materials from Abbott, however, has been an unduly arduous process. The plaintiffs in this matter have had to file no fewer than four motions to compel to obtain relevant evidence from Abbott.  The United States served a first and second set of document requests upon Abbott on July 19, 2006, and November 17, 2006.  Abbott was generally non-responsive to those requests.  Since then, the United States has had to file three motions to compel the production of documents, on January 9, 2007, April 9, 2007 and October 15, 2007.  Dkt Nos. 3529/3530, 4047/4048 and 4799/4800.  In addition, the United States learned during discovery that Abbott removed from its productions to the United States documents relevant to this case it previously produced to parties in other cases, claiming that the United States was only entitled to the documents that relate to the drugs identified in its compliant or the one Abbott division that manufactured those drugs.  This selective excising of evidence from the government's case resulted in Relator's April 27, 2007 filing of a Motion to

Compel Abbott to Produce or Consent to Access To and Sharing of All Discovery Produced by Abbott in Other False Price Report Litigation. Abbott's restrictive approach to making evidence in its possession available has dramatically slowed down production. Both Magistrate Judge Bowler and this Court ultimately granted the government and the relator much of the relief sought in the motions.

Despite orders compelling Abbott to produce certain documents, Abbott took excessive amounts of time to comply with the orders. For example, at a May 16, 2007 hearing, Magistrate Judge Bowler ordered Abbott to produce personnel files and information for the sales representatives who actually sold and marketed the drugs at issue in this case. Abbott did not commence identification of the sales personnel for the division and drugs at issue until August 16, 2007 – three months after being ordered to do so – with the production of personnel files identifying those individuals. Abbott did not complete its production until October and, despite numerous requests, failed to confirm that it had produced all documents it intended to produce until November 8, 2007. Questions still remain as to whether the production of these materials is complete.[1]

In this case about "marketing the spread," Abbott's long delay in providing sales representative identities and information severely hampered the United States' discovery efforts into the basic, yet highly important, area of how Abbott's sales force actually went about the day-to-day activity of marketing the drugs at issue in this case. Further, there remain questions as to

---

[1] To date, Abbott has still not confirmed that it has produced the personnel files for each Alternate Site Sales Representative employed by Abbott between 1991 and 2003, as Abbott was ordered to do. Further, Abbott has yet to produce the sales representatives' working files (*i.e.*, the files showing the substantive work done by the sales representatives, including call notes, activity reports and significant events reports).

4

whether the production of these materials is complete. It was not until November 20, 2007 – five weeks from the end of discovery – that the United States was in the position of being able to request some Abbott sales representatives depositions pursuant to the protocols set forth in ¶ 12 of CMO 29. To date, Abbott has not offered up one date for the deposition of any of these sales representatives.

As noted above, Abbott's initial disclosures improperly excised evidence produced in other matters; it was only with extensive motions practice that Abbott was compelled to produce documents that should never have been excised in the first place. With regard to the compelled documents and documents produced pursuant to document requests, the vast majority of the document production has occurred within the last few months. In the first nine months of discovery in this case (November 2006 through mid August 2007), Abbott produced approximately 63,000 pages of documents outside their initial disclosures. In the last three and a half months of discovery (mid August 2007 to date), Abbott has produced almost 500,000 pages of documents. Indeed, Abbott produced nearly 50,000 pages of highly relevant documents, between October 23, 2007 and November 9, 2007.

Finally, there have been and continues to be significant problems with Abbott's production of transaction data in this matter. Without complete or accurate transaction data, the United States cannot meaningfully begin the process of calculating damages. Irregularities in Abbott's data production have surfaced in other AWP litigation; Abbott has been sanctioned by a state court in Texas for improprieties in its data production in the State of Texas' AWP action against Abbott. The United States is awaiting a response to a November 26, 2007 letter it sent Abbott regarding the continuing deficiencies in Abbott's data production. *See* Exhibit 1.

To date, Abbott has refused to identify those requests for production which Abbott has completed production, where it searched for documents, and when and if additional production will be made. The United States is at a loss to determine whether Abbott has nearly completed its document production, whether it is only one half way through, or whether it is still in its infancy production stages. This has a critical impact on the number of depositions that must be taken. For example, as discussed below, the United States' is seeking to take 39 sales representative depositions. That list was already narrowed from over 90 sales personnel identified in personnel files provided by Abbott. Abbott has not produced or indicated if it will produce the working files for these sales people, which might have helped further refine the list of sales personnel deponents. These failures have crippled the United States's ability to complete its discovery, including setting depositions, finalizing depositions that have already begun, completing third party discovery, and finalizing written discovery under Rules 33, 34, and 36.

**B.     Abbott Has Interfered With And Delayed Third-Party Discovery.**

Abbott has also engaged in protracted motions practice to block production by third parties of evidence regarding Abbott's sales and marketing practices. The United States issued ten subpoenas to Abbott customers on March 30, 2007, and promptly served notice of the same upon Abbott. The United States also issued three subpoenas to industry trade groups on April 27, 2007 and one trade group subpoena on May 11, 2007, and promptly served notice upon Abbott. After the service of the subpoenas, the United States embarked upon a continuous and extensive course of negotiations and discussions with many of the subpoena recipients relating to the scope of the subpoenas and the third parties' responses. Other subpoena recipients simply collected the documents and transmitted them to the United States without discussion.

On June 6, 2007, Abbott Laboratories Inc. and third parties Hospira, Inc. (Hospira) and TAP Pharmaceutical Products, Inc. (TAP) filed Motions to Quash the United States' subpoenas to third-parties. On July 19, 2007, Magistrate Bowler issued an Order relating to the Motions to Quash, as well as another matter heard before her on that day. On August 15, 2007, the United States filed objections to Magistrate Bowler's Order, on the grounds that Magistrate Bowler's Order too narrowly restricted third-party discovery. Abbott responded to those objections on September 5, 2007. On September 7, 2007, Judge Saris issued an Order ruling on the United States' objections and Abbott's response. Importantly, consistent with the United States' understanding of Magistrate Bowler's Order, the Court's September 7, 2007 Order made clear that the United States' subpoenas to third-parties were not quashed, but slightly narrowed. On September 18, 2007, the United States sent letters to each of the third-parties who had been subpoenaed. After six months of disruptions, the third party subpoena production has only recommenced in the past few months. Many of the third parties subpoenaed by the United States in March and May are still responding to the subpoenas. Due to significant interruption in the production resulting from the above-mentioned motions practice, the United States is only now in a position to begin discussions with various counsel about scheduling the depositions of third-party witnesses.

Third party production has proven very important in this case, especially with respect to determining areas where Abbott's own document production to date has fallen short. By way of example, a subpoena served upon Abbott's former employee, Bruce Rodman, garnered tens of thousands of pages of relevant Abbott business records, including manuals, operating procedures, and many other documents that had never been produced by Abbott, but which were highly

7

relevant and responsive to the United States' production requests. Similarly, initial productions from third party associations has evidenced the level of Abbott's involvement with third parties in trying to defeat legislative initiatives concerning AWP pricing.

    **C.**    **Abbott Has Yet To File An Answer Or Definitively Identify The Affirmative Defenses It Intends To Assert In This Matter.**

It is critically important to note that Abbott has not yet answered the United States' original or First Amended Complaint. Indeed, Abbott may very well not serve an answer to the United States' First Amended Complaint by the December 31, 2007 cutoff.[2] The United States does not know all the affirmative defenses Abbott intends to assert in this action. At the November 5, 2007 Motion to Dismiss hearing, Abbott's counsel represented to the Court that it would be providing the United States with details as to the affirmative defenses Abbott would be asserting in this matter to assist the United States in conducting discovery on those affirmative defenses. Exhibit 2, November 5, 2007 Hearing Transcript at 28. It was only after two and a half weeks of repeated queries from counsel from the United States that Abbott sent an email stating "Per Judge Saris' request, we can confirm that Abbott intends to assert affirmative defenses in response to the Government's complaint in intervention that are *substantially* similar to those asserted in the California action. At this time, we do not foresee adding any additional defenses." *See* Exhibit 3 , Correspondence between Counsel for the United States and Counsel for Abbott regarding Abbott's affirmative defenses (emphasis added). The qualifier "substantially" in Abbott's representation to the United States provides little confidence that any affirmative defenses asserted in the State of California's Medicaid fraud action against Abbott

---

[2] Abbott's counsel has represented to the United States that Abbott will not provide an Answer to the First Amended Complaint before the Court rules on Abbott's motion to dismiss.

will constitute all of the affirmative defenses Abbott will assert against the United States. After repeated inquiries from counsel for the United States, it took Abbott weeks to provide a non-definitive response on the affirmative defenses it intends to assert.

> **D.    The United States Cannot Respond to Abbott's Excessively Broad Discovery Requests by December 31, 2007.**

Abbott currently has at least 15 Rule 30(b)(1) depositions requests pending with the United States. In addition, in letters dated November 20, 21 and 30, Abbott requested Rule 30(b)(6) depositions of government witnesses on almost 70 issues (including topics and subtopics). *See* Exhibit 4. On November 21, 2007, Abbott requested the 30(b)(6) depositions of 35 Medicare carriers, asking each to testify on over 20 topics and subtopics. *See* Exhibit 5. On November 30, 2007, Abbott served 175 requests for admission. *See* Exhibit 6. While the United States will likely object to much of these discovery requests, it is simply impossible to resolve any motions practice or to schedule this enormous amount of discovery by the current discovery cutoff.

In addition, the United States is still in the process of responding to numerous and burdensome document requests from Abbott issued prior to the recent avalanche of last-minute discovery from Abbott. While the vast majority of documents that are relevant and will ultimately be presented to a jury are Abbott documents, the United States has nonetheless tried to respond to Abbott's broad discovery requests in good faith. Despite these efforts the United States will not be able to complete production of all documents or data by December 31, 2007.

## II.  ARGUMENT

Courts in this district have permitted enlargements of time to complete discovery where the motion for enlargement (1) is timely filed, (2) identifies outstanding issues that require further discovery and (3) the record does not indicate that the plaintiffs' need for an extension arises from any lack of diligence on their part.  *See, e.g., Sigros v. Walt Disney World Co.*, 190 F. Supp. 2d 165, 169 (D. Mass. 2002).  The motion is being timely filed almost four weeks before the end of discovery.  As discussed above, the need for an extension is not due to a lack of diligence on the United States' part.  There is good cause.  As discussed below, the United States requires six additional months to complete discovery in the following areas:

**A.**   **Discovery By The United States**

   **1.**   **Depositions**

The United States needs to conduct or complete the following **64** depositions.

**Sales Representatives Depositions**.  Abbott only recently identified the sales representatives who actually sold the drugs at issue; the United States has reviewed the information provided and selected **39** sales representatives to depose.  Based on the information from their files, these sales representatives marketed the drugs at issue during the claims period in this case.

It is important for the Court to understand the reason why these depositions have not been taken yet.  This case is, in part, about the marketing of the spreads for the drugs at issue in this case. Obtaining testimony and evidence from the sales representatives about how they marketed the drugs at issue is crucial to this case.  However, the United States had to file a motion to compel Abbott to produce the names of the salespeople who sold the products at issue in this

case. *See* April 9, 2007 Motion to Compel, Docket No. 4047/4048. At a hearing on May 16, 2007, Judge Bowler granted the United States' Second Motion to Compel Documents pertaining to the production of personnel files. As noted above, Abbott did not start producing information that would identify these employees until it produced the sales representatives personnel files starting in August 16, 2007, three months after Magistrate Judge Bowler's initial order. That production was just completed in October 2007.

The United States has reviewed that production and identified the sales representatives likely to have relevant information in this matter. The United States requested those depositions in a letter to Abbott dated November 20, 2007. Exhibit 7 at 4, Attachment A. As of the date of this filing, Abbott has not provided deposition dates for these witnesses.

The testimony of these sales representatives will likely be important information that will be considered by the government's pharmaceutical marketing expert. The United States needs the additional discovery period to conduct these critical depositions. Had the information been provided in a timely manner by Abbott, the United States could have conducted these depositions well within the hours limits and discovery deadline in this matter.

**Depositions Subject to Protective Order Motions**. Abbott has sought a protective order to block the United States from deposing one current and three former Abbott executives who are witnesses in this case and have knowledge of the issues in dispute. The United States believes the depositions of these **four** (4) witnesses are imperative.

The current executive is Miles White, Abbott's Chief Executive Officer. A member of Congress wrote a letter to Mr. White on October 31, 2000 identifying the conduct at issue as fraudulent and requesting that Mr. White take corrective action. Mr. White has portrayed himself

as an expert on AWP and government reimbursement issues; he has been quoted extensively opining on AWP matters. Months after Mr. White received the congressman's letter, Abbott reduced the reported prices for the drugs at issue in this litigation.

In addition, Abbott has improperly sought apex witness protection for three former executives, Richard Gonzalez (the former head of the Division whose conduct is at issue in this case and a decision-maker involved in the 2001 price reduction), Duane Burnham (Abbott's former CEO who directly lobbied Congressmen to block legislative efforts that would give the Secretary of Health and Human Services the discretion to set reimbursements at anything other than AWP), and Thomas Hodgson (Abbott's former CEO who has testified as a 30(b)(6) witness for Abbott in other AWP matters).

These motions for protective orders remain unresolved. The United States believes they are completely meritless and should be denied. By filing these motions, Abbott has inhibited the United States' ability to conduct and complete the depositions of these knowledgable witnesses during the discovery period set forth in CMO 29. If Abbott's motions for protective orders are denied, the United States needs additional time to depose these four executives.

**Open Depositions**. The United States has requested the continuation of **six** (6) depositions. The continuation of those depositions are necessitated, in part, by recent document productions. The United States requested dates for these continued depositions on November 20, 2007. To date, Abbott has not provided dates for these continued depositions.

**Third Party Depositions**. The United States estimates conducting **15** third party depositions. In March 2007, The United States has subpoenaed 15 Abbott customers, five (5) industry trade groups, two (2) Abbott consultants, and third parties, Hospira and TAP. As noted

above, Abbott engaged in motions practice that significantly slowed document productions from many of these third parties.

After the Court issued an order setting forth the parameters of third party discovery in September 2007, production only recently recommenced. The United States has only now been able to undertake a review of the materials and has begun the process of working with the third parties to identify the one or two witnesses who may be able to testify on the third party's behalf.

***

**Summary**: It will be impossible for the United States to complete the depositions described above by December 31, 2007. Despite the government solicitation of dates for most of the proposed depositions, it has not even received from Abbott any dates for these depositions, much less any dates in December. In light of the upcoming holiday season, it is highly unlikely a significant number of them can be conducted and completed by December 31, 2007.

2. **Documents**

**The United States' Third and Fourth Requests for Production**. The United States issued its third and fourth requests for production on October 24 and November 30 respectively. Abbott responded to the October 24 request for production on December 3. To date, however, Abbott has not produced documents in response to these requests. The United States will have to either address objections through motions practice or review a significant volume of materials; either will be impossible to complete by December 31, 2007.

**Motion to Compel Documents**. The United States has pending document requests and a third motion to compel documents that could result in the production of tens of thousands of additional documents. On October 15, 2007, the United States was forced to file its third motion

to compel. Briefing on this motion is complete. If the motion is granted, it would require the production of a significant amount of documentation that may give rise to new depositions or require the re-opening of depositions already commenced.

**Data**. Abbott's data production in this matter has been deeply troubling. The Abbott employee in charge of pulling transactional data testified that he normally responds to data extract requests "the same day or the next day" and that the actual jobs take about "five days to run." Deposition of Bruce Stowell, August 30, 2007, p.242 line 22 to page 243 line 3 and page 244 lines 11-14. However, the United States' efforts to obtain a complete and accurate set of transactional data from Abbott has lasted close to a full year already and are still have not concluded. On November 5, 2007, Abbott represented that it was providing an accurate and complete set of the transaction data for the drugs at issue. Exhibit 8 (transmittal letter). Yet, the government's expert determined that the transaction data was materially inaccurate and incomplete. See Exhibit 9 (November 27, 2007 Duggan Declaration). Abbott's counsel responded by email that the inaccuracies in the data were an "oversight" and that it would take as long as December 17 to produce corrected data. Exhibit 10 (December 3, 2007 email from Jason Winchester to Renee Brooker). The United States still does not have a complete and reliable transaction data from Abbott for the drugs at issue in this case. Additional time is needed to resolve these complex, yet critically important data production issues. The government's experts need complete, reliable transaction data in order to complete their work timely.

**Acyclovir Documents and Data**. Despite numerous requests, Abbott has refused to produce documents or data for the drug Acyclovir. If the Court grants the United States' Motion to Amend its Complaint, Abbott will be compelled to provide the Acyclovir documents and data

requests. After reviewing the materials, the United States may require additional depositions to explore Abbott's conduct in pricing and marketing this megaspread drug.

### B. DISCOVERY BY ABBOTT

**1. Depositions**. As noted above, Abbott still has approximately fifteen (15) Rule 30(b)(1) depositions it is attempting to conduct or complete, thirty-five (35) Rule 30(b)(6) depositions it is seeking of Medicare carriers on approximately 20 topics and subtopics. Finally, in the past two weeks, Abbott has sought government 30(b)(6) witnesses on some 70 topics and subtopics. Although much of the 30(b)(6) deposition testimony sought is objectionable and will likely necessitate protection from the Court, even the deposition testimony sought that is permissible cannot be completed by December 31, 2007.

**2. Documents**. The government has produced a substantial number of documents and will be producing more. This additional production cannot be completed before December 31, 2007.

**3. Written Discovery**. On November 30, 2007, Abbott has recently propounded 175 requests for admission, as well as additional interrogatories. The United States submits that motions practice and any responses cannot be completed before December 31, 2007.

**4. Government Data**. The United States has encountered some unforseen difficulties in producing certain Medicaid claims data in its possession.[3] It likely will not be able to complete production of this Medicaid data until after December 31, 2007. The primary

---

[3] The data held by CMS is somewhat redundant of State Drug Utilization Data (SDUD) publicly available from HHS on its web site, as well as state Medicaid claims data which the government has and is receiving from states and producing to Abbott on a rolling basis. Regardless of the redundancy, the government believes that it would be useful to produce the information.

difficulty in providing the CMS-held Medicaid data has been ensuring adequate protection of the CMS data (which contains personal health information) through encryption – a process that has significantly slowed production.  The encryption issue has now been resolved.  However, the processing of the claims data by CMS' Data Center can occur only during lulls in the Medicare Part D open season enrollment process. The CMS-held Medicaid data has to be processed on CMS mainframe computers prior to production.  Currently, CMS' mainframe capacity is being mostly utilized in the processing of the "open season" enrollment of Medicare beneficiaries into the Medicare Part D drug program.  The government's limited access to the mainframe computer at this time has compounded the delays in producing this information.

In addition, the United States has been collecting Medicaid claims data from states.  Although the United States requested information from states beginning in August 2006.  The United States only first received data (in that instance from Illinois) beginning in February 2007.  The United States is still in the process of receiving Medicaid data from the states which it will in turn produce to Abbott. This production will also not be completed before December 31, 2007.

## CONCLUSION

The United States' efforts to conduct discovery efficiently in this matter have been hampered by Abbott's obstructive discovery tactics and excessive discovery requests issued to the government.  As noted above, Abbott sought a short – 12 month – discovery period in this case (the Court granted 15 months) and has acted to impede the government's discovery efforts.  As a result, the United States has been prevented from obtaining a large amount of relevant documentary evidence and deposition testimony during the current discovery period.  The United

States should not be prejudiced from completing fact discovery in this case as a result of these tactics.

Given the volume of discovery and discovery issues that remain open, the United States believes that a six month extension of fact discovery is a reasonable period of time. A six-month enlargement will help insure that the parties' fact discovery is completed without requiring subsequent motions for enlargement of time. The government has been hampered in its efforts to issue meaningful written discovery due to Abbott's discovery conduct; that notwithstanding, the government believes that the existing deposition hours and unused written discovery requests are sufficient to complete the outstanding discovery in an enlarged fact discovery period.

For the reasons set forth herein, the Court should grant the United States' Motion for Enlargement of Time to Complete Discovery as set forth in the proposed order.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | JEFFREY S. BUCHOLTZ<br>ACTING ASSISTANT ATTORNEY GENERAL |
| George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>Phone: (617) 748-3272<br>Fax: (617) 748-3398 | /s/ Renée Brooker<br>Joyce R. Branda<br>Daniel Anderson<br>Renée Brooker<br>Justin Draycott<br>Rebecca A. Ford<br>Gejaa T. Gobena |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA | Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station |
| /s/ Mark A. Lavine<br>Mark A. Lavine<br>Ana Maria Martinez<br>Ann St. Peter-Griffith<br>Special Attorneys for the Attorney General<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL 33132<br>Phone: (305) 961-9003<br>Fax: (305) 536-4101 | Washington, D.C. 20044<br>Phone: (202) 307-1088 |

Dated: December 4, 2007

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above **THE UNITED STATES' MOTION FOR ENLARGEMENT OF TIME TO COMPLETE DISCOVERY** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

|  |  |
|---|---|
|  | /s/ Renée Brooker |
| Dated: December 4, 2007 | Renée Brooker |