# EXHIBIT 9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | Hon. Patti B. Saris |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*,<br>CIVIL ACTION NO. 06-CV-11337-PBS | Magistrate Judge Marianne B. Bowler |

### DECLARATION OF MARK DUGGAN, PH.D.

I, Mark G. Duggan, hereby declare as follows:

1. I am a Professor in the Department of Economics at the University of Maryland, College Park. I received my Bachelor of Science in Electrical Engineering from M.I.T. in 1992, and my Master of Science in Electrical Engineering from M.I.T. in 1994. I obtained my doctorate in Economics from Harvard University in 1999. I was an Assistant Professor in the University of Chicago's Department of Economics, and a Visiting Assistant Professor in M.I.T.'s Department of Economics before joining the University of Maryland's Department of Economics in 2003.

2. I was retained as an expert economist by the United States, the State of Texas and Ven-a-Care of the Florida Keys, Inc., in part, to analyze Abbott's transactional data. With the assistance of my data consultant, I have compared Abbott's direct transaction data that Abbott provided the United States in this case (the federal data) on or around November 5, 2007 (Exhibit A), with the

direct transaction data that Abbott provided the State of Texas (the Texas data) in or about May of 2007, in its average wholesale price (AWP) case, *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v Abbott Laboratories Inc., Abbott Laboratories, and Hospira, Inc.*, Dist. Court of Travis County, Texas, 201st Judicial District (Cause No. D-1-GV-04-001286) (Texas case).

3. The attached Excel spreadsheet (Exhibit B), which was prepared by a data analyst under my direction and supervision, summarizes the results from a comparison of Abbott's direct transaction data for the 24 products that are at issue in both the federal case and in the Texas case. Each row in this spreadsheet corresponds to a National Drug Code (NDC) quarter; the eight-year time period covered is 1994Q1 through 2001Q4. Three variables are compared between the two data sets: (1) the number of transactions for the NDC in the quarter (2) the total sales (EXTPRICE) in the quarter, and (3) the total of the REBATE field in the data.

4. If I exclude the first two quarters of 1994, there is an almost exact correspondence between the first two variables in these data sets for most products in each quarter. For example, from 1994Q3 through 2001Q4, the number of transactions in the data for product 00074196607 (Sodium Chloride Injection) provided for the federal case is 164,527 transactions versus 164,508 transactions in the Texas data, a difference of just .01 percent. Total sales for that product during the same period are also virtually identical at $100.061 million in the federal data and $100,060 million in the Texas data.

5. However, as the Excel spreadsheet (Exhibit B) shows, there is no correspondence between the sum of the REBATE variable in the two data sets. More specifically, the REBATE value is never populated in the Abbott data for the federal case (i.e., all values are zero), while it

2

amounted to more than one-third of total sales in the Texas data. More specifically, for these 24 products during this eight year period, total sales (sum of EXTPRICE) in the Texas data was $1.632 billion and the total of the REBATE variable was -$0.572 billion, which is more than 35 percent of sales. According to the testimony of Abbott's corporate designee, Bruce Stowell, on July 19, 2006 (Exhibit C), which I have read, this variable represents "an accrual in anticipation of paying a chargeback." Transcript pages 119-120. Failing to consider this REBATE field in calculating prices may lead to an overstatement of actual transaction prices, which may serve to reduce the difference between actual and reported prices.

6. To understand the importance of this issue, consider the following example. Suppose that there is one unit sold with an EXTPRICE of $100 and a REBATE of -$35 (the same ratio of REBATE to EXTPRICE as in the aggregate). In this case, the net price to the customer is $65. Failing to consider this REBATE when calculating price would lead to an overestimate of the net transaction price of $65 by 54 percent. In the May 2007 data set Abbott provided Texas, the REBATE field was populated in most cases with values other than zero. The absence of non-zero values in the REBATE field appears to be a significant deficiency in the federal data.

7. An examination of this Excel spreadsheet reveals what appears to be another significant deficiency in the federal data, though in this case, the deficiency appears to be in the Texas data. For several of the products, the number of transactions and the total sales are significantly greater in the federal data than in the Texas data. For example, from 1994Q3 to 2001Q4, the number of transactions in the federal data for product 00074613802 was 92,063, with total sales of $11.248 million. The corresponding numbers in the Texas data are 469 and -$0.003 million. The lesser number of transactions for certain NDCs and quarters appears to be a significant deficiency in the

3

Texas data.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this __27th__ day of November, 2007.

Mark Duggan, Ph.D.

4