# EXHIBIT 1

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania<br>by Gerald J. Pappert, in his capacity<br>as Attorney General of the<br>Commonwealth of Pennsylvania,<br>                    Plaintiff<br><br>                    v.<br><br>TAP Pharmaceutical Products, Inc.;<br>Abbott Laboratories; Takeda Chemical<br>Industries, LTD.; AstraZenca PLC;<br>Zeneca, Inc.; AstraZeneca<br>Pharmaceuticals LP; AstraZeneca<br>LP; Bayer AG; Bayer Corporation;<br>GlaxoSmithKline, P.L.C.; SmithKline<br>Beecham Corporation;<br>Glaxo Wellcome, Inc.; Pfizer, Inc.;<br>Pharmacia Corporation; Johnson &<br>Johnson; Amgen, Inc.; Bristol-Myers<br>Squibb Company; Baxter International<br>Inc.; Aventis Pharmaceuticals, Inc.;<br>Boehringer Ingelheim Corporation;<br>Schering-Plough Corporation; Dey, Inc.,<br>                    Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: No. 212 M.D. 2004<br>: |

## MEMORANDUM AND ORDER

Before the Court for resolution is a motion relating to the Commonwealth's desire to depose[1] several groups of attorneys and chief executive officers who provide or provided services for defendants AstraZeneca and Abbott, and who worked for the law firm of Hogan and Hartson, which provided services to other defendants.

---

[1] The subpoenas also request the production of documents to which the attorneys or defendants also object.

We will begin by considering the motions of attorneys Boswell, Vickery, and Young, who are employed by Hogan and Hartson. Those attorneys sought to intervene in this case and the Court granted that motion. At the present time, the law firm serves as counsel for two of the Defendants, Amgen and Bristol-Myers Squibb. The intervenor attorneys contend in their motion that they may have provided advice as counsel to many of the defendants.

As noted by the Commonwealth, this Court in *Joyner v. Southeastern Pennsylvania Transportation Authority*, 736 A.2d 35 (Pa. Cmwlth. 1999), has stated that a party seeking to invoke the attorney-client privilege has an initial burden to establish the existence of the privilege. If that party sustains that initial burden, the opposing party seeking to depose must then establish that the subject disclosure would not violate the privilege. *Id.* at 38, n.3.

In the context of the attorney-client privilege which the defendants here assert, we note that Section 5928 of the Judicial Code, 42 Pa.C.S. §5928, provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial of the client.

However, the privilege, which is intended to encourage open communication between counsel and client, attaches only in the course of those communications between an attorney and client when the disclosure is offered for the purpose of obtaining *legal* advice. *National Railroad Passenger Corp. v. Fowler*, 788 a.2d 1053, 1064 (Pa. Cmwlth. 2001). *National Railroad Passenger* also provides some insight into communications rendered in a corporate setting. A

key issue in that case concerned the question of whether disclosures by corporate employees to corporate counsel were protected by the privilege. The Court referred to the United States Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981). That Court concluded that information the lower level employees disclosed to corporate counsel for the purpose of obtaining advice was protected under the attorney-client privilege. However, the Supreme Court made a distinction between the information subject to protection: "The client cannot be compelled to answer the question 'what did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 395-396. This quotation highlights a pertinent distinction: the difference between knowledge of underlying *facts*, and communications between client and attorney for the purpose of obtaining legal advice.

Based upon the direction announced above by the Courts, our first concern in resolving these motions is determining whether the attorneys here have established the existence of the privilege.

Three of the attorneys whom the Commonwealth seeks to depose and from whom the Commonwealth seeks the production of documents are attorneys with the law firm of Hogan and Hartson. In their joint motion they assert several grounds in support of their motion for a protective order. First, they contend that certain defendants obtained the attorneys solely for the purpose of providing legal advice. These attorneys characterize the Commonwealth's request as seeking information consisting of "advice regarding sales, marketing, reimbursement and even internal investigations or responses to governmental inquiries . . . ." (Citing Revised Schedule A, attached to the individual subpoenas noticing the deposition

3

and document production sets forth the information and documents the Commonwealth seeks to obtain. We have attached a copy of Schedule A as appendix A to this opinion.)

Although some of this information and some of the documents in the attorney's possession may constitute protected information as confidential communications occurring in the course of a request for legal advice, or privileged work-product similarly protected, the attorneys have not offered specific support for the proposition that the information the Commonwealth seeks was provided in their role as lawyers. The Commonwealth contends that much of the information and documents it seeks to obtain were generated by the subpoenaed attorneys not in their role as a legal advocate or advisor, but rather in other capacities, such as lobbyist for the pharmaceutical companies.

The primary argument these attorneys proffer for the issuance of a protective order is the fact that the attorneys have provided legal advice to multiple pharmaceutical companies over the past years. However, the attorneys do not point to the particular nature of the work that they performed for their clients. On the other hand, the Commonwealth replies that, because much of the work the attorneys performed did not involve the rendering of legal advice, but rather lobbying, or other non-legal, tactical advice, the attorneys have not satisfied their initial burden to establish the existence of a privilege.

Based upon the apparent difference in opinion as to the actual work the attorneys performed, the Court is disinclined to issue a protective order precluding the deposition of these attorneys and the documents requested in the subpoena. As stated above, even where a client or attorney has established the existence of a privilege, the Supreme Court has stated that only the attorney-client

disclosure is protected. Further, the Commonwealth correctly notes that part of its Complaint is based on a theory of fraud, and that the right to rely upon privilege is curtailed when the conduct at issue involves fraud.

      The attorneys also contend that the Court should grant the request for a protective order because (1) the information is not relevant to the Commonwealth's claims; and (2) the Commonwealth may be able to obtain the sought-after information from another source. With regard to the relevancy of the information the Commonwealth seeks, we note that the espoused reason relates to allegations that defendants actively used the attorneys for the purpose of furthering conduct the Commonwealth claims was fraudulent. Based upon this reasoning, the Court believes that the testimony could be relevant to the Commonwealth's claims or could lead to other relevant evidence. Further, the attorneys have not shown that the information is readily available from other sources. As the Commonwealth points out, several witnesses in other AWP-related actions have pleaded the Fifth Amendment, and therefore, those persons would be unavailable to supply the information.

      Also, we agree that the attorneys would be the most reasonable source of information (assuming it exists) pertaining to the allegations that the attorneys performed an information-gathering role in the course of pertinent events. Finally, as to Mr. Young, who is the only attorney who currently represents one of the defendants (Amgen), we agree with the Commonwealth's reasoning that the conduct about which the Commonwealth wishes to depose him occurred before he began his representation of Amgen. Thus, we do not believe that his current situation should liberate him from the requirement of being deposed when no other reason exists to preclude the taking of a deposition. Such a result might be

5

regarded as encouragement to attorneys and potential clients to enter an attorney-client relationship for the purpose of thwarting discovery that is otherwise proper.

The Court will also consider two motions AstraZeneca has filed: A motion for protective order and a motion to quash. AstraZeneca filed the motion in response to subpoenas issued to two present in-house counsels and one former in-house counsel. As to the motion of AstraZeneca to quash and for a protective order, the Commonwealth served subpoenas on two of the AstraZeneca defendants in-house counsel (one of whom is litigation counsel) and one former in-house counsel. AstraZeneca asserts arguments similar to those that the Hogan and Hartson attorneys have raised.

In its memorandum, the Commonwealth asserts that former AstraZeneca counsel, William Lucas, engaged in an "investigation" of possible misconduct by another defendant, TAP. Although one might expect an attorney engaged in the rendering of legal advice to his client to conduct a certain amount of personal investigation, the Commonwealth points to conduct culminating in letter-writing and a meeting between counsel that reflect an awareness that their companies were engaging in wrongful activity. As the Commonwealth points out, AstraZeneca's in-house counsel may be the only first-hand source regarding this dispute, other than representatives of TAP. Finally, AstraZeneca has not established that information gathering about a non-client is subject to privilege. The Court cannot discern how information an attorney obtained about someone other than a client could be subject to a privilege. The information may have been gained in the process of developing an opinion as to advice to render a client, but that information does not clearly bear on the conduct of the attorney's actual client.

AstraZeneca's counsels may be the singular sources of information regarding the Commonwealth's allegations against another defendant. Accordingly, the Commonwealth appears to have established the need to depose these attorneys.

Lastly, we address AstraZeneca's claim that the doctrine of "common-interest" precludes the Commonwealth's attempt to obtain information from counsel for AstraZeneca. Generally, if a client shares information with a third party, he or she waives the right to preclude discovery of communication. However, the doctrine of common-interest prevents the loss of the privilege if the third party with whom the communication was shared has a common interest in the privileged communication. However, as the Commonwealth points out, a litigant raising this doctrine must establish that the sharing of the communication was for the purpose of a joint defense effort. *Minebea Co. Ltd. V. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005). AstraZeneca has not offered sufficient support for the proposition that it shared communications with other defendants for the purpose of a joint defense. Accordingly, we reject this argument.

Finally, we will address the motion for a protective order filed by Abbot and certain non-parties (hereinafter referred to solely as Abbott). The Commonwealth is seeking to depose six former senior corporate executives, two current executives, and two former in-house counsel. We will begin by addressing the depositions directed to Abbott's former and current executives. Abbot indicates that it does not intend to bar the Commonwealth forever from taking the depositions, but that a protective order is appropriate until the Commonwealth satisfies the following requirements: (1) exhaust all other methods of discovery; and (2) make a preliminary showing that the senior current and former executives

have unique or superior knowledge that the Commonwealth cannot obtain from other sources.[2]

Abbott refers the Court to two federal district court decisions for the proposition that courts should not compel higher ranking corporate officials to submit to deposition unless the testimony sought is relevant, necessary, and unavailable from a person in a lower position. Abbott, relying on *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) asserts that, while courts may ultimately grant a party access to high corporate officials, the more reasonable approach is to require a party seeking information to attempt to obtain that information through other sources and means before permitting the deposition of high ranking officers. This approach, Abbott suggests, helps to prevent unwarranted harassment of officials (who might otherwise be subject to repeated requests for depositions), allowing them to perform their unique responsibilities without unnecessary interruption.

The Commonwealth, Abbott contends, has failed to conduct any preliminary discovery, or even identify the focus of the discovery, through interrogatories or other discovery measures to obtain facts in a less burdensome manner, i.e., other sources. Abbott also claims that the Commonwealth has failed to show that these proposed deponents have superior or unique knowledge that would justify the burden of depositions at this time.

The Commonwealth points to the language of Pa.R.C.P. No. 4012, which sets forth the basis for a court to grant or deny motions for protective orders

---

[2] Additionally, Abbott requests that the Court refrain from rendering a decision regarding the grant of a protective order as to Messrs. Hodgson, Burnham, and Gonzalez, who are all retired Chairmen or CEO's (or the equivalent), pending the resolution of similar motions for protective orders Abbott has filed with the federal court handling the MDL AWP litigation.

8

and provides in pertinent that "for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance … , oppression, burden or expense." The Commonwealth correctly argues that the burden is on the moving party to establish that good cause exists. We can surmise that the drafters of Rule 4012 intended that a party may establish good cause by averring facts that support a conclusion that proceeding with a deposition would cause the deponent unreasonable annoyance, oppression, burden or expense.

With this in mind, we note that Abbott has asserted no facts other than simple assertions that taking depositions of these former and current chief or senior executives constitutes a per se unreasonable annoyance or burden.

With regard to the former executive officers, Abbott has not persuaded this Court that good cause exists to grant a protective motion. As to former employees, Abbott has not shown how depositions of these individuals would be unreasonably annoying or burdensome. Accordingly, the Court will deny the motion for a protective order as to these former executives.

Abbott cites to the federal court decision in *Salter v. Upjohn Company*, 593 F.2d 649 (5th Cir. 1979) in which the Court of Appeals for the 5th Circuit affirmed a district court's decision granting a protective order precluding initially a plaintiff's request to depose Upjohn's president. The protective order the court had issued did not definitively deny the plaintiff's request, but concluded that the plaintiff should first depose other employees Upjohn had indicated had more knowledge of the pertinent facts before plaintiff could depose the company's president. In reaching this decision, the trial court noted that the plaintiff already possessed sworn testimony Upjohn's president had provided to a Senate

9

Committee, and that the judge's "attempt to postpone or prevent the necessity of taking [the president's] deposition was within his discretion in light of [Upjohn's] reasonable assertions that [the president] was extremely busy and did not have any direct knowledge of the facts." *Id.* at 651. *Salter* is distinguishable from this case in that the Commonwealth's allegations charge that the purported scheme underlying the claims in its Amended Complaint was known to employees from the top down in the various defendants' corporate organization. The heart of the Commonwealth's complaint is that the defendants' alleged wrongdoing was the spearheads of not simply lower level employees, but foremost of those in the upper echelons of the corporate universe. Thus, unlike *Upjohn*, where the Court acknowledged that the president did not have direct knowledge of the pertinent facts, the Commonwealth's claim is pointedly addressed to the conduct of higher level executives.

The federal courts have stated that, in the first instance, a party seeking a protective order has the burden to show good cause for the issuance of such an order. *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000). In order to satisfy that burden, the moving party must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, n. 16 (1981). We conclude here that Abbott has not satisfied its burden because it has not established clearly, or in a nonconclusory manner, how the depositions will annoy or burden its executives. Further, although the courts have held (inferentially) that, once a party seeking a protective order establishes that good cause exists, the party seeking to depose a high level executive must demonstrate that the person has unique personal knowledge of the relevant facts, *Baine v. General Motors Corp.*,

141 F.R.D. 332, 334 (M.D. Ala. 1991), we believe that this standard is satisfied when the party seeking to depose has shown that the proposed deponent is involved in the decision-making underlying the allegedly wrongful conduct. Averments concerning the involvement of upper-level executives constitute the centerpiece of the Commonwealth's Complaint. Based upon the foregoing, we conclude, in the exercise of the Court's discretion, that good cause does not exist for the grant of the requested protective motion as to both former and current high-level officials, and that even if the defendants had established good cause, the Commonwealth has established that deposing these executives is appropriate.

Finally, we will address Abbott's motion as it pertains to Abbott's current and former counsel. Abbott asserts that taking of depositions of counsel is inherently annoying or burdensome. Also, Abbott contends that the Commonwealth must first demonstrate that it has exhausted all other potential sources of the information it seeks. As we stated above, before a Court need address the question of whether a protective order is appropriate with regard to proposed depositions of attorneys, the party seeking the protective order bears the initial burden of showing that the attorney-client privilege applies. Because this Court agrees with the Commonwealth that Abbott has not met its threshold burden, we will deny the motion for a protective order as to the proposed attorney deponents. However, as discussed above, Abbott will have the opportunity to object to questions posed during a deposition that relates to confidential matters.

In summary, we will deny the motions for protective orders filed by the Hogan and Hartson attorney intervenors, Abbott, and AstraZeneca, and we will also deny AstraZeneca's motion to quash the subpoenas. However, as suggested

by the Commonwealth in its memoranda, the attorneys will be able to raise question-specific objections during the depositions.

Accordingly, we enter the following order.

### ORDER

AND NOW, this 3rd day of December 2007, the Court hereby **denies**: (1) the Motion for Protective Order filed by Intervenor attorneys Donna Boswell, Ann Vickery, and Joseph Young is denied; (2) the Motion for Protective Order filed by Abbott; and (3) the Motions for Protective Order and to Quash filed by AstraZeneca.

_____
JAMES GARDNER COLINS, Judge

Certified from the Record

DEC 4 2007

and Order Exit

# REVISED
# SCHEDULE A

For the period January 1, 1990, through the present:

1. The marketing and sales by any defendant of any of the drugs listed in the Corrected Amended Civil Action Complaint (hereinafter "Amended Complaint").

2. The provision of free samples or free goods or other things of value of any of the drugs listed in the Amended Complaint by any defendant to medical providers or other purchasers.

3. The use of "return to practice" or "spreads" in the marketing and sales of any of the drugs listed in the Amended Complaint.

4. The costs to market, promote and sell any of the drugs listed in the Amended Complaint.

5. Marketing and sales programs, methods, practices, policies, strategies and initiatives relating to the promotion, marketing and sales of any of the drugs listed in the Amended Complaint.

6. Communications and/or meetings between you and any one or more defendants referring or relating to AWP; government reimbursement; provision of free samples, free goods or other things of value to purchasers; or the pricing, marketing and sales of any of the drugs listed in the Amended Complaint.

7. Communications and/or meetings between or among any defendants [whether or not you were directly involved] relating to AWP; government reimbursement; provision of free samples, free goods or other things of value to purchasers; or the pricing, marketing and sales of any of the drugs listed in the Amended Complaint.

8. The nature and scope of the federal and/or state investigation(s) of any of the defendant companies relating to marketing and sales practices, and the provision of documents, witness statements, and other information in response to any such investigation(s).

9. The nature and scope of any internal investigations by of any of the defendant companies relating to marketing and sales practices pertaining to any of the drugs listed in the Amended Complaint, and the results of the same.

10. Corporate changes in business practices and procedures at any of the defendant companies relating to marketing and sales practices pertaining to any of the drugs listed in the Amended Complaint.

G:\DEH\AWP MASTER - (200700)\AWP - PA (200702)\Pleadings\SCHEDULE A (Revised re correct Complaint) Attorney Subpoena.wpd

Appendix A
JGC --- Memorandum and Order of December 3, 2007