UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc.*, CIVIL ACTION NO. 06-11337-PBS | Magistrate Judge Marianne B. Bowler |

**THE UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL DISCLOSURES AND PRECLUDE TESTIMONY FROM MEDICAID PROGRAMS**

Well before the close of fact discovery in this case, the United States supplemented its Rule 26(a)(1) disclosures to add some state Medicaid witnesses. These witnesses were in addition to (1) other federal government witnesses knowledgeable about Medicaid drug reimbursement listed in the United States' initial disclosures and subsequent discovery responses and (2) numerous state Medicaid witnesses listed in Abbott Laboratories Inc.'s (Abbott) initial disclosures. Abbott has filed a Motion to Strike Plaintiff's Supplemental Disclosures and Preclude Testimony from Medicaid Program Witnesses (Motion to Strike). The extraordinary relief Abbott seeks is unwarranted.

Abbott's predicates its Motion to Strike on claims that counsel for the government informed Abbott (1) the government will never call state Medicaid witnesses at trial and (2) the government will prove its case with Medicare witnesses only. As set forth in detail below, these contentions are untrue.

The United States made clear throughout this litigation the possibility of supplementing its Rule 26(a)(1) disclosures to add appropriate state Medicaid witnesses.  It has done so and may further supplement its disclosures to add state Medicaid witnesses as permitted by Rule 26.  Further, since the inception of discovery in this matter, the United States has encouraged Abbott to coordinate with the appropriate state attorneys general or state agencies to facilitate its state Medicaid discovery efforts.

Abbott has represented to the Court and the United States in pleadings and at oral argument that it indeed would be taking discovery of all state Medicaid programs as part of its discovery into purported state government knowledge and approval, including deposing state Medicaid witnesses, to prepare for trial.  Abbott made these representations to the Court as part of its efforts to secure broad discovery rights.  To date, Abbott has not deposed state Medicaid witnesses notwithstanding these representations.  With time remaining for fact discovery, Abbott should be conducting the state Medicaid discovery it said it would and not inappropriately attempting to strike government witnesses from trial.

## I.  BACKGROUND

**A.    The United States Expressly Notified Abbott It Would Be Supplementing Its Rule 26(a)(1) Disclosures To Add State Medicaid Witnesses.**

Abbott's Motion to Strike rests on the following premise, "No State Medicaid witnesses were deposed [by Abbott] . . . because the Government said it would not be calling them: the Government would prove its case with Medicare witnesses only."  Motion to Strike at 1.  Abbott

makes this statement without support, whether a document memorializing this assertion or a sworn affidavit.  This contention is both (1) factually incorrect and (2) nonsensical.[1]

On August 9, 2006,[2] the parties exchanged initial disclosures.  Abbott submitted an incomplete version of the initial disclosures with its Motion to Strike, omitting the exhibits identifying witnesses and documents the United States was producing; a complete copy is attached hereto as Exhibit 1.[3]  In those disclosures, the United States identified the Centers for Medicare and Medicaid Services (CMS) witnesses who were knowledgeable about the Medicaid program, including drug reimbursements.  *See* Exhibit 1, Attachment A at 4 and 19 (identifying

---

[1] Regarding the latter, the United States will not belabor a point well known to this Court: the Medicare and Medicaid programs are separate, and the Medicare and various State Medicaid programs reimburse using different reimbursement formulas and mechanisms. As noted below, the United States included federal government witnesses knowledgeable about Medicaid drug reimbursement in its initial disclosures and in later interrogatory responses.

Further, Abbott contradicts itself elsewhere in the Motion to Strike, claiming (again, incorrectly) that the United States informed Abbott would prove its Medicaid claims solely using Abbott witnesses/evidence only, *i.e.*, neither Medicaid nor Medicare witnesses/evidence.  Motion to Strike at 3 ("The Government confirmed . . . that the case was about *Abbott's conduct* only, and that [state Medicaid] testimony would be irrelevant.").  These contradictions are telling.

[2] Throughout its Motion to Strike, Abbott repeats the canard that the United States had been effectively litigating this case throughout the pre-intervention investigative period. Of course, that is incorrect.  The government investigated numerous drug companies and thousands of drugs before and after intervening in this *qui tam* action against Abbott in mid-2006.  During this litigation, the government has learned that Abbott withheld documents and information during the pre-intervention investigation.  In addition, Abbott has been sued by many state governments and private plaintiffs and has been litigating the same drug pricing fraud matters since at least 2003.  Abbott was not "sitting idly by not preparing defenses" until the commencement of this litigation in 2006.  *See, e.g.*, Motion to Strike at 12.

[3] With its Motion to Strike, Abbott submitted eight pages of the United States' August 9, 2006 initial disclosures and all 37 pages of the United States' November 20, 2007 supplemental disclosures.  Abbott failed to submit 23 pages of disclosure information that was provided with the United States' August 9, 2006 initial disclosures.  The August 9, 2006 initial disclosures contained 31 pages of information not 8 pages.

Medicaid Bureau employees Deirdre Duzor and Lawrence Reed).  Abbott has deposed both these witnesses about Medicaid drug reimbursement.  The government provided the names of an additional 16 CMS witnesses who may have knowledge of Medicaid drug reimbursements in a December 4, 2006 response to Abbott's first set of interrogatories.  *See* Exhibit 2, The United States Response To Abbott's First Set of Interrogatories at 18-19.  Abbott is in the process of deposing several of those witnesses as well.

Regarding witnesses from the state Medicaid programs themselves, the United States stated:

> Because Medicaid is a joint federal and state program, the Defendants may seek to obtain discoverable information – whether on liability or damages – from employees or representatives from various states throughout the country. At this stage, *Plaintiffs do not anticipate calling any such individuals at trial. If that position changes, Plaintiffs will supplement these disclosures*. To the extent Defendants nonetheless pursue such evidence, Defendants are referred to each individual state's Attorney General, Medicaid Agency legal representative, or other state legal representatives, who will be responsible for designating individual state witnesses authorized to provide information or testimony on each state's behalf.

 Exhibit 1 at 2 (emphasis added).  The government made clear that it was reserving its right to supplement its initial disclosures to identify additional, state Medicaid witnesses.  Further, the government encouraged Abbott to contact state attorneys general and Medicaid agencies to coordinate its discovery of state Medicaid programs.  *Id*.  On November 20, 2007, the United States supplemented its initial disclosures with the name of certain state Medicaid officials that may have information that the United States may use at trial.  Exhibit 3, November 20, 2007 Transmittal Email and Supplemental Disclosures.

The United States in no way advised Abbott not to pursue discovery in support of its defenses against the government's Medicaid claims at any time during the litigation of this matter. The manufactured statements Abbott attributes to the United States about its intentions regarding state Medicaid witnesses are (1) undated[4] and (2) are unsupported by documents or a sworn statement attesting to their veracity. As reflected by the lack of evidence, counsel from the United States never represented to Abbott during any meeting (1) that no state Medicaid witnesses would ever be called nor (2) that it would prove its *Medicaid* case with *Medicare* witnesses.

Further, as demonstrated immediately below, Abbott has made multiple representations to the Court that it would be pursuing state Medicaid discovery, many months *after* the exchange of initial disclosures and any related meet-and-confers.

### B. Abbott Represented To The Court That It Would Be Conducting Depositions Of State Medicaid Witnesses.

Abbott argues in its Motion to Strike that the United States – through its supplemental disclosures of state Medicaid witnesses – is seeking to "expand this case and expand discovery in a futile effort to bludgeon Abbott into submission with pre-trial litigation costs." Motion to Strike at 1. That assertion is inconsistent with Abbott's prior representations to the Court that it always intended to and would take discovery of state Medicaid programs and witnesses.

---

[4] Abbott claims that the purported statements came during "a meet-and-confer early on." Motion to Strike at 3. There were multiple meet-and-confers in late 2006 regarding the government's initial disclosures and early document requests from Abbott. Abbott supplies no details about which meet-and-confer it is referring to nor the specific subject matter of that meet-and-confer.

Abbott suggested in its initial disclosures that it would be pursuing discovery against state Medicaid programs, listing representatives from all or virtually all Medicaid programs as potential witnesses in this action. *See, e.g.,* Exhibit 4, Abbott's August 9, 2006 Initial Disclosures, Exhibit A at 1 (identifying witnesses from the Colorado and West Virginia Medicaid programs).

Indeed, on November 29, 2006, Abbott served document subpoenas on 10 states. *See* Exhibit 5, Notice of Non-Party State Discovery. Abbott issued these subpoenas almost three months after the parties exchanged initial disclosures. It is the United States' understanding that several states produced documents in response to these subpoenas. These documents no doubt identified state Medicaid program witnesses that Abbott could have deposed to explore any defenses it believes it has.

After issuing the November 29, 2006 document discovery to those state Medicaid programs, Abbott counsel represented to the Court in pleadings and oral argument that it would be deposing state Medicaid officials, as well as the private contractors that administer Medicaid programs on states' behalf. In the fall and winter of 2006-2007, the United States and Abbott were engaged in motions practice over the Case Management Order (CMO) in this action. The parties contested several issues, including the amount of deposition hours each side should be allotted.

In a February 25, 2007 brief to the Court – six months after the United States served its August 9, 2006 initial disclosures – Abbott represented to the Court that it needed over 500 deposition hours, in large part, to *depose state Medicaid officials*:

6

> As to the number and hour limitations, Abbott outlined in its previous brief why it believed even 500 hours would not likely be a sufficient amount of affirmative deposition discovery . . . by seeking recovery related to every state Medicaid program, Plaintiffs' case puts at issue the knowledge and decision-making of state Medicaid officials from across the country . . . Even a sampling of relevant facts from a cross-section of 50 state Medicaid programs will take significant time.

Exhibit 6 (Docket # 3810), Abbott Laboratories, Inc.'s Supplemental Memorandum Regarding the Case Management Order (Case Management Order Supplemental Memorandum) at 5.

Further, Abbott argued that not only would it depose state Medicaid officials, but also the private contractors that help administer the state Medicaid claims. *Id*. at 5-6 ("In addition to the state Medicaid programs themselves, most states utilize a separate fiscal intermediary to set reimbursement levels and administer claims. Discovery, including depositions, *will be sought of at least a significant sampling of these entities.*")(emphasis added). During argument on the CMO, counsel for Abbott reaffirmed to the Court that Abbott needed a large amount of deposition hours to depose state Medicaid witnesses and state Medicaid fiscal intermediaries. Exhibit 7, February 27, 2007 Oral Argument Transcript at 41-43.

Thus, half a year after the parties exchanged initial disclosures, Abbott represented to the Court that it would be deposing state Medicaid officials and contractors working for the various state Medicaid programs. The purpose was to secure a large amount of deposition hours in this case. To date, Abbott conducted no such discovery. Either (1) Abbott misstated its discovery intentions to the Court in February 2007 – again, six months after the United States' initial disclosures – or (2) sometime after its February 2007 representations to the Court, Abbott chose not to conduct any depositions of any witnesses affiliated with any state Medicaid programs.

Abbott's decision ultimately to abandon state Medicaid discovery cannot, however, be attributed directly or indirectly to any "representations by the United States."

C.      **The Supplemental Disclosures Were Served Before The Close Of Fact Discovery.**

The United States served its supplemental disclosures on November 20, 2007. *See*, Exhibit 3 (cover email and the United States November 20, 2007 supplemental disclosures). The current fact discovery cutoff is December 31, 2007. Both parties have sought an extension of the fact discovery period; the United States has sought six additional months, and Abbott has sought three additional months. Thus, the United States served its supplemental disclosures six weeks before the close of fact discovery, seven and a half months before the fact discovery period sought by the United States and four and a half months before the fact discovery period sought by Abbott.

## II. ARGUMENT

Pursuant to Rule 26(e)(1), the United States served Abbott with supplemental disclosures on November 20, 2007, six weeks before the close of fact discovery. Abbott claims that the supplemental disclosures "violate Rule 26(a)(1)" and ask the Court to preclude state Medicaid witnesses identified therein from testifying at trial. Motion to Strike at 8. The title of Abbott's motion – a Motion to Strike – is a misnomer; Abbott is seeking discovery sanctions, specifically to preclude the state Medicaid witnesses from testifying pursuant to Rule 37(c)(1). *See* Motion to Strike at 5-6, 8-13. Under Rule 37(c)(1), evidence not disclosed pursuant to Rule 26(a) or Rule 26(e)(1) can be precluded from being used at trial unless  (1) there is substantial justification for the non-disclosure or (2) if the prior non-disclosure is harmless.

In assessing the appropriateness of the sanction sought by Abbott for the alleged "Rule 26(a)(1) violations," the Court must determine whether (1) whether the supplemental disclosures served a month and a half before the end of discovery were timely and (2) whether the proper remedy is to preclude state Medicaid witnesses from testifying.

**A.     The Supplemental Disclosures Were Timely**.

Rule 26(e)(1) contemplates parties supplementing Rule initial disclosures at appropriate intervals.  *See also*, Advisory Committee Notes to 1993 Amendments to Rule 26(e)(1) ("[s]upplementations need not be made as each new item of information is learned, but should be made at appropriate intervals during the discovery period, with special promptness as the trial date approaches" ).

The United States served its supplemental disclosures on November 20, 2007, six weeks before the close of fact discovery in this matter.  These supplemental disclosures added information about certain State Medicaid witnesses that may present evidence at trial.  These witnesses are in addition to the CMS witnesses on Medicaid drug reimbursement identified in the United States' initial disclosures and the state Medicaid witnesses Abbott itself identified in its initial disclosures.  As indicated in the cover email that accompanied the disclosures, the United States had notified counsel for Abbott in advance of the November 20, 2007 service date that it would be providing supplemental disclosures.  *See* Exhibit 3.

The United States has recently requested an enlargement of time to June 30, 2008 to complete discovery.  Abbott has recently filed a pleading with the Court asking to extend fact discovery through March 31, 2008.  If the Court grants the United States request, Abbott will have had 7.5 months (From 11/20/07 through 6/30/08) to complete discovery of state Medicaid

witnesses. If the Court grants Abbott's request, Abbott would have had 4.5 months (11/20/07 through 3/31/08) to complete discovery of state Medicaid witnesses. Either way, Abbott will have had ample opportunity to conduct the state Medicaid discovery it sees fit, discovery it has claimed to the Court that it will conduct but has not.[5]

Abbott cites no cases where a Court ruled that supplemental disclosures served a month and a half *before* the end of fact discovery were "untimely." Indeed, courts have routinely held that supplemental disclosures within the last quarter of the fact discovery period are timely. *See, e.g., Kirby v. Homax Products, Inc.*, 2007 WL 2600838 (D. Wash. September 7, 2007) (supplemental disclosures made nine days before the close of fact discovery considered timely); *J.S. McCarthy Co. v. Brausse Diecutting & Converting Equipment, Inc.*, 2005 WL 757596 (D. Me. March 8, 2005) (disclosure of document after initial disclosures considered harmless when done before the close of discovery).

**B.     The Is No Basis For Precluding State Medicaid Witnesses**.

Abbott seeks to have timely disclosed state Medicaid witnesses precluded from testifying at trial. Even where a disclosure is not timely, numerous Courts have noted that the preclusion of evidence, as a discovery sanction, is a "drastic remedy and therefore [courts] exercise discretion and caution" when determining whether such a remedy is appropriate. *Ventra v. United States*, 121 F.Supp.2d 326, 332, *citing Newman v. GHS Osteopathic Inc.*, 60 F.3d 153, 156 (3rd Cir. 1995); *see also Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y.1999) (recognizing that preclusion of evidence not disclosed in

---

[5] Inexplicably, in the almost four weeks since the United States served its supplemental disclosures, Abbott has conducted no discovery of the additional witnesses and information identified therein.

discovery is a drastic remedy that should be applied only "where the failure to disclose represents a flagrant bad faith and callous disregard of the rules").

Abbott submits two First Circuit decisions for the proposition that mandatory preclusion of the witnesses in the United States November 20 supplemental disclosures is required. Motion to Strike at 9, *citing Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188 (1st Cir. 2005); *Primus v. United States*, 389 F.3d 231 (1st. Cir. 2004). These cases deal with the submission of expert reports or materials after the close of expert discovery; they are inapposite. Further, courts' analyses of evidence preclusion under Rule 37(c)(1) – including courts in this Circuit – tends to be more nuanced than simply ordering mandatory preclusion.[6]

Abbott appears to be suggesting that the United States should be precluded from providing testimony from witnesses not identified in its Rule 26(a)(1) initial disclosures. Motion to Strike at 8. That argument is not consistent with Rule 26(e)(1)'s provisions permitting the supplementing of Rule 26(a) initial disclosures nor the case law. *See, e.g., Asia Strategic Inv. Alliances, Ltd. v. General Elec. Capital Services, Inc.*, 173 F.R.D. 305, 308 (D. Kan. 1997) ("The court knows of no authority for so sweeping a prohibition of evidence as defendants propose. The court does not view the cited cases as supporting a blanket exclusion of documents simply because they were not among initial disclosures. The rule serves to facilitate early disclosure of discoverable information. It does not purport to be so restrictive, however, as to render inadmissible all documents not initially disclosed.")

---

[6] In considering whether to preclude evidence or testimony, the First Circuit has noted that courts of appeals and district courts must balance a variety of factors including: fairness to the parties, the need to manage court dockets, the history of the litigation, the proponent's need for the challenged evidence, the justification for the supplemental disclosure and an opponent's ability to overcome its adverse effects. *See Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2004).

Even if a supplemental disclosure was untimely, Rule 37(c)(1) does not permit exclusion of evidence or testimony where a supplemental disclosure is harmless.  *See also Lobato v. Ford*, 2007 WL 2593485 (D.Col. 2007) ("Where a party fails to comply with Rule 26(a)(1), Fed.R.Civ.P. 37(c)(1) requires the imposition of sanctions unless the court determines that the failure to disclose was substantially justified or harmless").  District Courts have broad discretion is determining whether to preclude evidence under Rule 37(c)(1) and tend to assess the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id*. at 8.

Regardless of the lack of a Rule 26(a)(1) violation, no harm arises from the timely supplemental disclosures for at least the following reasons:

- Abbott listed state Medicaid witnesses from every state Medicaid program in its initial disclosures, an indication is was going to conduct state-level discovery on the government's Medicaid claims. Exhibit 4, Exhibit A, *passim*.  Abbott started conducting discovery of state Medicaid programs in November 2006. Exhibit 5.  Abbott represented to the Court that it would be deposing state Medicaid witnesses, both government employees and state Medicaid contractors.  *See* Exhibit 6 at 5-6.  Abbott cannot be surprised about the role state Medicaid witnesses might play in the adjudication of this case.
- The government served the supplemental disclosures six weeks before the current close of fact discovery.  Both parties have asked for additional time to complete fact discovery asking for three to six months.  There was and may still be sufficient time to take

12

discovery of these witnesses identified in the supplemental disclosures. The disclosures did not prejudice Abbott.

- The supplemental disclosures were served well before expert discovery and before a trial date had even been set. The supplemental disclosures in now way disrupted the trial of this matter.

- The United States stated clearly that it might supplement its initial disclosures to add state Medicaid witnesses. Exhibit 1 at 2. There was no bad faith exercised by the United States.

If Abbott's complaint is that it did not have a chance to conduct state Medicaid discovery, that complaint rings hollow. It represented to the Court and the United States that it would be conducting such discovery and failed to do so. If Abbott's complaint is that it has not had the opportunity to depose the specific witnesses in the government's supplement disclosure, it cannot and does not explain why it did not at least attempt to schedule some, if not all, of the depositions of those witnesses before filing its Motion to Strike.

Regardless the proper remedy would be for Abbott to eschew unnecessary and factually unsupported motions practice and actually complete the discovery Abbott has said it would take of the state Medicaid programs, including the witnesses identified in the government's supplemental disclosures. Prohibiting state Medicaid officials from testifying at trial is not appropriate and grossly prejudices the United States for Abbott's flawed discovery strategies.

## CONCLUSION

For the reasons set forth herein, Abbott's Motion to Strike should be denied.

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley
U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3272
Fax: (617) 748-3971

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101

JEFFREY S. BUCHOLTZ
ACTING ASSISTANT ATTORNEY GENERAL

 /s/ Gejaa T. Gobena
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088
Fax: (202) 307-3852

Dated: December 17, 2007

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above **THE UNITED STATES' OPPOSITION TO ABBOTT LABORATORIES INC.'S MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL DISCLOSURES AND PRECLUDE TESTIMONY FROM MEDICAID PROGRAMS** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

|  |  |
|---|---|
|  | /s/ Gejaa T. Gobena |
| Dated: December 17, 2007 | Gejaa T. Gobena |