# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Magistrate Judge Marianne B. Bowler |
| *Inc., Zachary T. Bentley, and T. Mark Jones* | ) | |
| *v. Abbott Laboratories, Inc.,* | ) | **Leave to File Granted 11/14/2007** |
| No. 07-CV-11618-PBS | ) | |
| | ) | |

## ABBOTT LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS OR PARTIALLY DISMISS THE RELATORS' COMPLAINT

Dated:  December 20, 2007

James R. Daly
Tina M. Tabacchi
Jason G. Winchester
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ............................................................................................... 1

I.     RELATORS' COMPLAINT IS JURISDICTIONALLY BARRED BY 31 U.S.C.
§ 3730(b)(5) AND SHOULD BE DISMISSED ............................................... 1

    A.    The Plain Language of § 3730(b)(5) Applies to Successive Complaints by
the Same Relator ......................................................................... 1

    B.    The Massachusetts Complaint is a "Related Action" to the Earlier-Filed
Florida Complaint, and thus is Barred by 31 U.S.C. § 3730(b)(5) ...................... 4

    C.    The Relators Cannot Avoid the First-to-File Bar Through Consolidation or
Amendment .............................................................................. 6

        1.    Consolidation is Not Possible, Nor Would It Cure the
Jurisdictional Flaws in Ven-A-Care's Successive Complaint. ................ 6

        2.    Relators Should Not Be Permitted to Amend Their Florida
Complaint ....................................................................... 8

II.    THE STATUTE OF LIMITATIONS BARS MANY OF VEN-A-CARE'S
CLAIMS ....................................................................................... 12

    A.    The Text, Structure, and Legislative History of the FCA show that the
Statute of Limitations Runs Until a Complaint is Unsealed, and the FCA
Thus Does Not Authorize Relation-Back Under Rule 15(c)(1) ...................... 12

    B.    Relation-Back Under Rule 15(b)(2) is Impermissible Because Abbott Had
No Notice of the Sealed Complaint .................................................. 14

    C.    Relation-Back Should Be Measured on an NDC-By-NDC Basis ..................... 14

CONCLUSION ................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Campbell v. Redding Medical Center,*
421 F.3d 817 (9th Cir. 2005) ........................................................................2

*Campbell v. Washington County Technical College,*
219 F.3d 3 (1st Cir. 2000).............................................................................2

*Cole v. Schenley Industries., Inc.,*
563 F.2d 35 (2d Cir. 1977)............................................................................7

*Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.,*
506 F. Supp. 1051 (N.D. Ill. 1980) .............................................................10

*Foman v. Davis,*
371 U.S. 178 (1962)....................................................................................10

*Friedman v. Transamerica Corp.,*
5 F.R.D. 115 (D. Del. 1946) .......................................................................10

*Global Naps, Inc. v. Verizon New England, Inc.,*
396 F.3d 16 (1st Cir. 2005)...........................................................................7

*Grant v. News Group Boston, Inc.,*
55 F.3d 1 (1st Cir. 1995)..............................................................................10

*Gray v. St. Martin's Press, Inc.,*
221 F.3d 243 (1st Cir. 2000)........................................................................10

*Grynberg v. Koch Gateway Pipeline Co.,*
390 F.3d 1276 (10th Cir. 2004) ....................................................................3

*In re Mass. Helicopter Airlines, Inc.,*
469 F.2d 439 (1st Cir. 1972).........................................................................7

*Ohio-Sealy Mattress Mfg. Co. v. Kaplan,*
90 F.R.D. 40 (N.D. Ill. 1981).......................................................................10

*Palmer v. Champion Mortgage,*
465 F.3d 24 (1st Cir. 2006)..........................................................................10

*In re Pharmaceutical Industry Average Wholesale Price Litigation*
*(United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc.),*
498 F. Supp. 2d 389 (D. Mass. 2007) .......................................................2, 8

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*,
884 F.2d 1510 (1st Cir. 1989) ............................................................................10

*Ruiz v. Bally Total Fitness Holding Corp.*,
496 F.3d 1 (1st Cir. 2007) ..................................................................................2

*Steir v. Girl Scouts of the USA*,
383 F.3d 7 (1st Cir. 2004) ..................................................................................10

*Stepanischen v. Merchants Despatch Transportation Corp.*,
722 F.2d 922 (1st Cir. 1983) ..............................................................................10

*Under Seal v. Under Seal*,
326 F.3d 479 (4th Cir. 2003) ..............................................................................3

*United States ex rel. Capella v. United Technologies Corp.*,
No. 3:94-CV-2063, 1999 WL 464536 (D. Conn. June 3, 1999) .........................5

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
318 F.3d 214 (D.C. Cir.  2003) ..........................................................................4

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
149 F.3d 227 (3d Cir. 1998) ........................................................................3, 4, 5

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
243 F.3d 1181 (9th Cir. 2001) .........................................................................4, 6

*United States v. Meade*,
175 F.3d 215 (1st Cir. 1999) ..............................................................................2

*United States ex rel. Merena v. Smithkline Beecham Corp.*,
114 F. Supp. 2d 352 (E.D. Pa. 2000) ..................................................................3

*United States ex rel. Smith v. Yale-New Haven Hosp., Inc.*,
411 F. Supp. 2d 64 (D. Conn. 2005) ................................................................1, 3

*United States ex rel. St. Lacorte v. SmithKline Beecham Clinical Lab, Inc.*,
No. Civ.A.96-1380, 1999 WL 639683 (E.D. La. Aug. 19, 1999) ......................8

*Walburn v. Lockheed Martin Corp.*,
431 F.3d 966 (6th Cir. 2005) ..............................................................................2

*Waters v. Weyerhauser Mortgage Co.*,
582 F.2d 503 (9th Cir. 1978) ..............................................................................10

## TABLE OF AUTHORITIES
### (continued)

Page

### STATUTES & RULES

5 U.S.C. app. 3 § 1 ...................................................................................................6

5 U.S.C. app. 3 § 4 ...................................................................................................6

5 U.S.C. app. 3 § 6(a)(4) ..........................................................................................6

5 U.S.C. app. 3 § 11 .................................................................................................6

31 U.S.C. § 3730(a) ...........................................................................................12, 14

31 U.S.C. § 3730(b) ................................................................................................12

31 U.S.C. § 3730(b)(1) ............................................................................................13

31 U.S.C. § 3730(b)(2) ...........................................................................................2, 3

31 U.S.C. § 3730(b)(5) .....................................................................................1, 2, 5, 8

31 U.S.C. § 3731(b) ................................................................................................13

31 U.S.C. § 3731(b)(2) ............................................................................................13

31 U.S.C. § 3733(a)(1) ..............................................................................................6

Fed. R. Civ. P. 15(c)(1) ...........................................................................................12

Fed. R. Civ. P. 15(c)(2) ...........................................................................................14

Fed. R. Civ. P. 42(a) .................................................................................................7

### OTHER MATERIALS

9 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 2382
    (2d ed. 1995) ....................................................................................7

15 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 3866
    (3d ed. 2007) ....................................................................................7

S. Rep. No. 99-345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266 ...............................13

## <u>INTRODUCTION</u>

The opposition ("Opp.") filed by relators Ven-A-Care of the Florida Keys, Inc., Zachary

T. Bentley, and T. Mark Jones (collectively, "Ven-A-Care") confirms that their False Claims Act

("FCA") *qui tam* complaint should be dismissed in its entirety, as it is barred by the first-to-file

rule of 31 U.S.C. § 3730(b)(5).  Alternatively, the complaint should be dismissed in part, as

many of Ven-A-Care's claims are untimely under the FCA's 6-year statute of limitations.

## I.   RELATORS' COMPLAINT IS JURISDICTIONALLY BARRED BY 31 U.S.C. § 3730(b)(5) AND SHOULD BE DISMISSED

Section 3730(b)(5) of the False Claims Act provides that "[w]hen a person brings an

action under this subsection, no person other than the Government may intervene or bring a

related action based on the facts underlying the pending action."  In its opening brief, Abbott

showed that this "first-to-file" bar compels the dismissal of Ven-A-Care's complaint, which is

related to an earlier *qui tam* filed by Ven-A-Care in the Southern District of Florida that alleges

an identical fraudulent scheme.  Abbott's Memorandum in Support of its Motion to Dismiss

("Mem.") at 5-9.  In response, Ven-A-Care tries to dodge § 3730(b)(5)'s plain prohibition, and

ignores its own prior concessions on the similarity between the complaints.  Ven-A-Care's

flawed arguments should be rejected, and its complaint should be dismissed.

### A.   The Plain Language of § 3730(b)(5) Applies to Successive Complaints by the Same Relator.

The language of § 3730(b)(5) is unambiguous: once an FCA suit is brought, "*no person*

*other than the Government may . . . bring a related action based on the facts underlying the*

*pending action.*"  This language clearly encompasses successive suits filed by the same relator;

"the statute does not say 'no other person except the Government may bring an action,' it simply

says 'no person' which would apply equally to the original relator as any other person."  *United*

*States ex rel. Smith v. Yale-New Haven Hosp., Inc.*, 411 F. Supp. 2d 64, 75 (D. Conn. 2005); *see*

*also In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 400 (D. Mass. 2007) (stating that first-to-file bar would apply to successive *qui tam* actions by same relator). Perhaps bowing to the obvious, Ven-A-Care does not even try to dispute that the text of § 3730(b)(5), as written, would bar its later-filed complaint.

Unable to avoid the plain language, Ven-A-Care instead argues that applying the first-to-file bar against successive complaints by the same relator would be contrary to legislative intent. Opp. at 4-8.  Such arguments are futile.  As the First Circuit recently reiterated, "[s]tatutory interpretation begins with the language of the statute. Where, as here, that language is clear and unambiguous, the inquiry is at an end." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 8 (1st Cir. 2007); *see also, e.g., Campbell v. Wash. County Tech. Coll.*, 219 F.3d 3, 6 (1st Cir. 2000); *United States v. Meade*, 175 F.3d 215, 219 (1st Cir. 1999).  Ven-A-Care's "legislative intent" arguments notwithstanding, "[c]ourts are not free to disregard the plain language of a statute and, instead, conjure up legislative purposes and intent out of thin air." *Ruiz*, 496 F.3d at 8.  The plain language of the FCA unambiguously bars *all* successive complaints which are "related action[s] based on the facts underlying the pending action"—by the same relator or otherwise—and that should be the end of the inquiry.[1]

In any event, the structure, purpose, and legislative intent of the FCA are all inconsistent with Ven-A-Care's suggestion that relators should be able to file separate, successive *qui tam* suits involving the same allegations of fraud.  For instance, 31 U.S.C. § 3730(b)(2) requires that,

---

[1] Ven-A-Care's citations to *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005) and *Campbell v. Redding Medical Center*, 421 F.3d 817 (9th Cir. 2005) are inapposite.  Neither case deals with the "no person" language, or hold that a relator may file successive "related" complaints; rather, those cases interpret the scope of a "related action." *See Walburn*, 431 F.3d at 972 (holding that prior complaint that merely alleged falsification of records, "without specifying the nature of the alleged falsifications," was not "related" to a later-filed complaint identifying a specific false claims scheme); *Campbell*, 421 F.3d at 822 (holding that a "pending action filed by a non-original source does not "alert[ ] the government to the essential facts of a fraudulent scheme.")

As shown *infra*, however, this rationale could not apply to block the application of the first-to-file bar, as the 1995 Florida complaint alleged an identical fraudulent scheme as the one alleged here.

when a relator files a *qui tam*, it must provide the government with its sealed complaint, and a "written disclosure of substantially all material evidence and information the person possesses" regarding that fraud, so that the United States can make an informed decision regarding intervention.  *See, e.g., Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003).  Ven-A-Care's suggestion that a relator should be able to file successive complaints involving the same scheme is wholly inconsistent with § 3730(b)(2)'s requirement that all information underlying a fraudulent scheme be disclosed when the *first* complaint is filed.  *See Smith*, 441 F. Supp. 2d at 75 ("The burden is properly placed on the original relator to ensure that he or she comes forward with all the information he or she has in the first suit, rather than file piecemeal lawsuits.")

Further, successive suits by the same relator are no less parasitic than successive suits filed by different relators.  The FCA was "designed to encourage the rooting out of hidden fraud," but "duplicative claims do not help reduce fraud or return funds to the federal fisc." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,* 149 F.3d 227, 234 (3d Cir. 1998).  Where, as here, the initial complaint provides the government with the "essential facts of a fraudulent scheme, [the government] has enough information to discover related frauds," *id.*, and therefore, the government receives no benefit from the successive action.  *Smith*, 411 F. Supp. 2d at 77; *see also, e.g., Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004) (once "government is put on notice of its potential fraud claim, the purpose behind allowing qui tam litigation is satisfied," despite fact that successive complaints "are able to marshal additional factual support for the claim").  And contrary to Ven-A-Care's assertions, Opp. at 7, rejecting a relator's successive suit *protects* the public fisc, because it prevents the Government from having to pay additional recovery to a relator whose second suit provided nothing that the Government did not already have the means to uncover.  *Cf. United States ex rel. Merena v. Smithkline Beecham Corp.*, 114 F. Supp. 2d 352, 364 (E.D. Pa. 2000)

(rejecting award of settlement proceeds to *qui tam* relator whose claim would have been barred by first-to-file rule, but for the government's intervention.)  Thus, not only the plain language of the FCA, but also its policy, requires the application of the first-to-file bar here.

**B.      The Massachusetts Complaint is a "Related Action" to the Earlier-Filed Florida Complaint, and thus is Barred by 31 U.S.C. § 3730(b)(5).**

Ven-A-Care also tries to avoid the first-to-file bar by arguing that the Massachusetts complaint is not a "related action" to the Florida one, because it involves a drug that is marketed in Abbott's Pharmaceutical Products Division, rather than its Hospital Products Division.  Opp. at 8.  But this factual difference is irrelevant.  As Abbott showed, the first-to-file bar is implicated where a later-filed *qui tam* contains "the same *material elements* of fraud described in an earlier suit, regardless of whether the allegations incorporate somewhat different details." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001) (emphasis added); *see also, e.g.*, *LaCorte*, 149 F.3d at 232-33; (first-to-file bar implicated by subsequent suit "alleging the same elements of a fraud"); *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217-18 (D.C. Cir.  2003) (rejecting later-filed complaint that contained "merely variations on the fraud [the first-filed] complaint described").

Here, the Massachusetts complaint alleges an *identical* scheme to the one alleged in the earlier-filed Florida case: that Abbott reported inflated pharmaceutical prices to sources which Medicare relied upon to set reimbursement rates for Abbott products.  Mem. at 7-9.  In fact, Ven-A-Care expressly conceded the identity between its Florida and Massachusetts complaints when it moved to transfer this case to the MDL—a concession that Ven-A-Care conspicuously fails to address in its opposition.  *See* Mem. Ex. P at 2 (stating that "Abbott is a defendant. . . [in] a case initiated by Ven-A-Care in which the United States intervened which originated in the Southern District of Florida and involves conduct similar in nature to the conduct at issue in this action."

Thus, the mere fact that Erythromycin is marketed out of a different division within Abbott is irrelevant, because the fraudulent *schemes* alleged in both complaints are materially identical. *United States ex rel. Capella v. United Techs. Corp.*, No. 3:94-CV-2063, 1999 WL 464536, at *9 (D. Conn. June 3, 1999) ("section 3730(b)(5) precludes a subsequent relator's claim that alleges the defendant engaged in the same type of wrongdoing as that claimed in a prior action, even if the allegations cover a different time period *or location within a company*") (emphasis added; cited in Opp. at 8).[2]  Once the Government was informed of this alleged scheme—which Ven-A-Care itself stated went beyond the drugs in the Florida Complaint, *see* Mem. at 8—it had "enough information to discover related frauds," including the alleged "spread" on Erythromycin, and thus first-to-file bar applies.[3]  *LaCorte*, 149 F.3d at 234.

Ven-A-Care argues, however, that the Government lacked the capacity to discover further facts without Ven-A-Care's "insider" information.  Opp. at 9.  Ven-A-Care's boasting aside, however, the so-called "insider information" Ven-A-Care provided was nothing more than the "actual" prices charged by Abbott—information that Ven-A-Care gleaned from sources "available to thousands of pharmacies across the nation."  Dkt. 3979 at p. 36 n.9 (cited in Opp. at 9).  Moreover, Abbott's pricing was obviously known to Abbott.  Had it wished to do so, therefore, the Government had several tools with which to uncover the "true" prices of Erythromycin products, both from third-parties and from Abbott directly.  *See, e.g.,* 31 U.S.C.

_____

[2] Ven-A-Care also complains that Abbott has tried to limit discovery in the Government's Florida case to the drugs specifically identified in the Complaint-in-Intervention, which does not include Erythromycin.  Opp. at 2-3 & n.2; *id.* at 8-9.  But the fact that Abbott has urged, and the Court has agreed, that pre-trial discovery in the Florida case should be limited to the specific drugs that the Government chose to pursue (as well as certain cross-cutting evidence) is wholly irrelevant to the controlling question here: whether the *allegations* of the first-filed and subsequent-filed complaints are related.  It goes without saying that the content of Ven-A-Care's complaints, as filed, does not change based on Abbott's litigation positions or the Court's discovery orders.

[3] Indeed, that the 1995 Florida complaint involved the same scheme as the 2001 Massachusetts complaint is confirmed by Ven-A-Care's amendment of its Florida complaint to add several NDCs of Erythromycin.  Far from being "misleading," Opp. at 10, the fact that Ven-A-Care could simply plug the Erythromycin NDCs into its existing complaint confirms that the allegations of that 1995 complaint were not limited to any particular division of Abbott, and that the 1995 scheme, as alleged, is the same scheme that Ven-A-Care is attempting to litigate again here.

§ 3733(a)(1) (giving DOJ power to issue civil investigative demands to "any person [who] may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation"); 5 U.S.C. app. 3 §§ 1, 4, 6(a)(4), 11 (giving Inspector General of HHS the power to "to require by subpena [sic] the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary" to investigate HHS programs such as Medicaid).  Indeed, given the decades of government reports discussing the disparity between AWP and "true" prices, it is undeniable that the Government had access to factual information about "true" prices without Ven-A-Care's help.

In short, Ven-A-Care's first-filed complaint was more than sufficient to put the Government on the trail of the alleged fraudulent scheme, regardless of drug or division, and thus the first-to-file bar prevents Ven-A-Care from attempting to extract further money from the public fisc by filing a successive complaint in Massachusetts based on the same scheme, despite its "somewhat different details." *Lujan*, 243 F.3d at 1189.  The derivative Massachusetts complaint should be dismissed.

### C.   The Relators Cannot Avoid the First-to-File Bar Through Consolidation or Amendment.

Finally, Ven-A-Care argues that it may avoid the first-to-file bar by "consolidating" this case with the Florida case, or by amending its Florida complaint to add Erythromycin claims. Opp. at 5.  But consolidation is not possible, nor would it cure the first-to-file problem.  Further, leave to amend the Florida complaint at this late stage would be both untimely and prejudicial.

#### 1.   Consolidation is Not Possible, Nor Would It Cure the Jurisdictional Flaws in Ven-A-Care's Successive Complaint.

Ven-A-Care's initial suggestion, that the Court merely consolidate the Massachusetts Complaint with the Florida Complaint, is both procedurally improper, and would nonetheless fail to cure the jurisdictional flaws in the second-filed Massachusetts complaint.

*First*, as a procedural matter, consolidation in a civil trial is governed by Federal Rule of Civil Procedure 42(a), and under that rule, "[a]ctions pending in different districts may not be consolidated."  9 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 2382, at 435 (2d ed. 1995) (collecting cases).  Here, of course, the first-filed complaint was filed in the Southern District of Florida, while the second-filed complaint was filed in the District of Massachusetts.  Consolidation is thus inappropriate.  This is so, despite the fact that both cases are temporarily before the MDL for pretrial purposes, as any "motions under Rule 42 . . . to consolidate actions for all purposes would not be proper, since the jurisdiction of the transferee court cannot be extended to affect matters related to the trial or subsequent stages of an action."  15 Wright, *supra*, § 3866, at 515 (3d ed. 2007).

*Second*, even if the two cases were consolidated, it would not affect the first-to-file issue.  "Consolidation under Rule 42(a) . . . is a procedural device designed to promote judicial economy, and consolidation cannot effect a merger of the actions or the defenses of the separate parties.  It does not change the rights of the parties in the separate suits . . . [and the Court] must therefore consider the jurisdictional basis of each complaint separately."  *Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 38 (2d Cir. 1977) (citations omitted); *see also Global Naps, Inc. v. Verizon N. Eng., Inc.*, 396 F.3d 16, 22 (1st Cir. 2005) (reiterating First Circuit rule that consolidation is "a procedural mechanism meant to serve the purposes of judicial economy and convenience of the parties . . . but not to alter the substantial rights the parties had in the separate actions") (citing *In re Mass. Helicopter Airlines, Inc.*, 469 F.2d 439, 441 (1st Cir. 1972)).

In other words, even if Ven-A-Care's Florida and Massachusetts cases were consolidated, they would still retain their identities as separate *qui tams* filed against Abbott in 1995 and 2001, respectively.  The latter complaint, in such a scenario, would still be second-filed complaint

alleging the same fraudulent scheme as the first complaint, and would therefore still remain invalid under 31 U.S.C. § 3730(b)(5).  Consolidation would change nothing.

Ven-A-Care's argument in support of its "consolidation" argument is utterly flawed.  It asserts that in the *Dey* action, 498 F. Supp. 2d at 400, this Court "expressed some concern over the fact of the same relator having filed two suits, [but] the Court found that the fact of consolidation resolved the issue."  Opp. at 5.  This is a gross misrepresentation of the situation in *Dey*.  The issue resolved in that case was whether the Government's complaint-in-intervention could relate back to an earlier filed complaint.  498 F. Supp. 2d at 400.  And while this Court held that relation-back was permitted, it found that the relation-back would be to the *first-filed* complaint.  *Id.*  With respect to the second-filed complaint, the Court expressly stated that "[i]f the 2000 complaint were based on the same facts as the initial 1997 complaint, then the Court would not have jurisdiction over the 2000 Massachusetts complaint."  *Id.*  This Court's *Dey* decision thus supports the dismissal of the present complaint.

The only other case Ven-A-Care cites in support of the "consolidation" theory is unpublished and offers not a shred of analysis to support its conclusion.  *See United States ex rel. St. Lacorte v. SmithKline Beecham Clinical Lab, Inc.*, No. Civ.A.96-1380, 1999 WL 639683, at *8 (E.D. La. Aug. 19, 1999).  Moreover, in context, the *St. Lacorte* decision appears to rest on the court's view that the two complaints at issue there were not "related" for purposes of § 3730(b)(5).  *Id.*  It should be given no weight.  Ven-A-Care's "consolidation" argument does not provide a vehicle to avoid the first-to-file bar, and this Court should reject it.

2.    Relators Should Not Be Permitted to Amend Their Florida Complaint.

As an alternative, Ven-A-Care proposes to avoid the first-to-file bar by manipulating its status as the relator in the Florida action so as to raise Erythromycin claims in *that* proceeding.  Opp. at 7 & n.4.  This is a non-starter.  If Ven-A-Care wishes to amend the Florida complaint

(No. 06-CV-11337-PBS), then it can do so only by filing a motion in *that* case, and not in this, the Massachusetts case (No. 07-CV-11618-PBS), which is still ultimately a separate lawsuit pending in a separate jurisdiction from the Florida matter.

Moreover, even if this Court could consider, in this action, Ven-A-Care's motion for leave to amend the separate Florida complaint, such leave should be denied.  As Abbott showed, Ven-A-Care already added Erythromycin claims to its Florida complaint in 2002, *after* it filed the jurisdictionally-barred claims in this case.  Mem. at 3.  After the United States declined to intervene in the Florida-based Erythromycin claims, however, Ven-A-Care chose *not* to exercise its right to pursue those claims in Florida itself.  *Id.*  Instead, Ven-A-Care amended its Florida complaint yet again, choosing to proceed only with the limited set of drugs identified in the Government's Florida complaint-in-intervention.  *Id.*  That decision was made nearly two years ago—on March 17, 2006—and since then, discovery in the Florida case has proceeded without reference to the abandoned Erythromycin claims.

This sequence of events should have put an end to the Erythromycin claims altogether. Ven-A-Care, however, for reasons known only to itself, chose to try to blindside Abbott with these claims in a new, and procedurally improper, lawsuit in the District of Massachusetts. Given this history, the Court should not grant Ven-A-Care's request for a "do-over," so that it can revive the Erythromycin claims it already dropped in the Florida Complaint.  Otherwise, this Court would effectively be rewarding Ven-A-Care's attempt at procedural chicanery.  Further, any such amendment would be both untimely and prejudicial under clear First Circuit law.

As detailed in Abbott's opposition to the Government's motion to amend *its* Florida complaint, Dkt. No. 4889, amendment should be denied when there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Four

conditions, all present here, show that under *Foman*, leave to amend should be denied:

> (1) Where leave to amend a complaint is filed after "considerable" delay (*i.e.*, more than 14 months) and/or near the end of discovery, it is considered to be "unduly delayed," and should be denied even without a showing of prejudice, unless the movant affirmatively and satisfactorily explains its delay, *see, e.g., Grant v. News Group Bos., Inc.*, 55 F.3d 1, 6 (1st Cir. 1995); *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1517-18 (1st Cir. 1989); *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983).
>
> (2) Leave to amend near the end of discovery is, by itself, prejudicial. *See, e.g., Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004); *Quaker State Oil*, 884 F.2d at 1517-18.
>
> (3) Leave to amend based on facts that a party was aware of when filing earlier iterations of a complaint are routinely denied. *See, e.g., Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006); *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 253 (1st Cir. 2000); *Quaker State Oil*, 884 F.2d at 1517-18; *Grant*, 55 F.3d at 6.
>
> (4) Amendments to reinstate claims that were previously dropped are particularly prejudicial. *See Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 40, 42 (N.D. Ill. 1981); *Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.*, 506 F. Supp. 1051, 1054 (N.D. Ill. 1980); *Waters v. Weyerhauser Mortg. Co.*, 582 F.2d 503, 507 (9th Cir. 1978); *Friedman v. Transamerica Corp.*, 5 F.R.D. 115, 116 (D. Del. 1946).

*See* Dkt. No. 4889 at 2-6. The presence of these four conditions should preclude amendment.

First, Ven-A-Care's request for leave to amend comes some 12 *years* after the Florida

suit was filed, and 21 months after the Florida complaint was unsealed. This constitutes "undue

delay" absent a satisfactory explanation by Ven-A-Care. But, as mentioned, Ven-A-Care has no

good excuse for the proposed late amendment. It was already granted leave to file Erythromycin

claims by Judge Gold in 2002, and then, of its own volition, dropped those claims after the

Government declined to intervene in them. Further, the 2002 Florida amendment came *after*

Ven-A-Care filed its jurisdictionally deficient Massachusetts complaint against Abbott,

suggesting that the 2002 Florida amendment was intended as back-up plan in case the Massachusetts complaint was dismissed for lack of jurisdiction.  If so, Ven-A-Care has only itself to blame for losing those claims.  Instead of proceeding with the non-intervened-in Erythromycin claims in the Florida action, it made the strategic choice to simply piggyback onto the Government's complaint, and the Florida case has proceeded, without Erythromycin, for nearly 21 months now.  No excuse would justify late amendment in light of these choices.

*Second*, discovery in the Florida case has proceeded for nearly 18 months, and just this week, the Court ordered that no new discovery requests may be propounded in that matter, with the remaining fact discovery period to be used solely to complete discovery already properly served before the Court's December 18, 2007 Order.  Amendment at this late stage thus would be highly prejudicial, and there is no reason to re-open discovery now.  Indeed, doing so would only prejudice Abbott further by forcing it to incur the additional fees and costs that would result from conducting discovery of Erythromycin claims—claims which Abbott had every reason to believe were long since abandoned.[4]

*Third* and *fourth,* Ven-A-Care was both clearly aware of its Erythromycin claims for some time, and in fact had already raised such claims in the Florida complaint, yet chose to drop them.  An amendment seeking to resurrect those claims now would be especially prejudicial to Abbott, particularly given that Ven-A-Care's only reason for doing so appears to be an attempt to gain tactical advantage.

The Florida case already involves many thousands of alleged false claims, and the time for new discovery in that matter is over.  Given Ven-A-Care's procedural gamesmanship, the

---

[4] Ven-A-Care's suggestion that there would be "no difficulty" in adding Erythromycin claims because there has been "extensive discovery" into Erythromycin claims in the Texas litigation, Opp. at 7 n.4, is spurious.  As Ven-A-Care is well aware, Texas has a unique Medicaid payment system in which the manufacturers reported prices directly to the state; discovery in that case has thus focused on Texas-specific issues.  The present complaint alleges false claims related to Medicaid in the other 49 states, and—unlike the Texas case—includes the United States as a party plaintiff.  Compl. ¶¶ 42-45. The Texas discovery is no substitute for discovery here.

Court should declare that enough is enough, and hold that no new claims may be added in that suit.  Ven-A-Care's request to amend the Florida case should be denied, and its Massachusetts complaint should be dismissed for lack of jurisdiction.

## II.   THE STATUTE OF LIMITATIONS BARS MANY OF VEN-A-CARE'S CLAIMS

In its opening brief, Abbott showed that the statute of limitations should not be considered tolled in an FCA case until the case is unsealed.  Mem. at 11-13.  Further, even if Rule 15 relation-back to sealed complaints were possible, it should be gauged on an NDC-by-NDC basis, because that is how the alleged false claims in this case were paid, and thus is the relevant "conduct, transaction, or occurrence" for purposes of the rule.  *Id.* at 15-17.

In response, Ven-A-Care largely repeats arguments that have been thoroughly briefed in numerous other pleadings within this MDL.  These responses are flawed.

### A.   The Text, Structure, and Legislative History of the FCA Show that the Statute of Limitations Runs Until a Complaint is Unsealed, and the FCA Thus Does Not Authorize Relation-Back Under Rule 15(c)(1).

Abbott's opening brief showed that there is neither explicit nor implicit authorization for relation-back to sealed complaints within the FCA itself.  Instead, the FCA's statute of limitations is tolled only when a complaint is "brought," and the only explicit reference to *when* an FCA case is "brought" is *after* the Government investigates the potential claim.  Mem. at 11 (citing § 3730(a))  And while § 3730(b)—the type of FCA action at issue here—is ambiguous as to when a relator's action is "brought," the only way to reconcile that ambiguity in light of § 3730(b)'s unusual language, the FCA as a whole, and clearly-expressed legislative intent, is to find that a relator's action is "brought" after the Government investigates and declines to intervene.  Mem. at 11-12.  In this fashion, both types of FCA actions are "brought" at the same time, and the legislature's intent that sealing not harm defendants is realized.  *Id.* at 12-13.

Ven-A-Care, in response, offers a handful of mostly-unpublished district court cases, none of which even address the textual and legislative matters raised above.  Opp. at 13.   Ven-A-Care also offers a competing interpretation of the legislative history—albeit one that makes little sense.  Ven-A-Care first asserts that, because § 3730(b)(1) says that an FCA action "shall be brought in the name of the Government," that "a relator's action is 'brought' when the complaint is filed *in camera* and under seal."  Opp. at 13.  This is a non-sequitur.  The fact that the relator must bring an action in the Government's name says nothing about *when* an action is considered brought.

Next, Ven-A-Care claims that, if the statute of limitations continues to run while the Government investigates the relator's claim, "each time an extension [of the investigatory time] is granted to the government, more potential false claims recoveries would be lost" and the government would be "pressured to act immediately to decide whether to intervene."  Opp. at 15.  But this is also nonsense.  Congress has *already* compensated for the potential lag that might occur between the relator's filing of a *qui tam* and the government's need to investigate— namely, the 3-year tolling provision of § 3731(b)(2).  *See* S. Rep. 99-345 (1986), at 30, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5295.  In its report, Congress explicitly stated that in "the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision," but recognized that, sometimes, extensions would be necessary.  *Id.* at 25, *reprinted at* 1986 U.S.S.C.A.N. at 5290.  Considering these two elements of the FCA together, even in those situations where the Government learns of alleged false claims near the end of the ordinary 6-year statute of limitations period, Congress has given it a minimum of three years—or approximately *eighteen* 60-day investigatory periods—to nonetheless bring a timely action.  *See* 31 U.S.C. § 3731(b).  This Court should not be swayed by the specter of the hypothetical

situation in which the United States loses claims because it could not manage to act after seventeen "adequate" extensions of time.[5]

Here, then, the FCA's 6-year statute of limitations was not tolled until the United States declined intervention and Ven-A-Care's complaint was unsealed, on August 30, 2007.  As such, all claims accruing before August 30, 2001 are time-barred and should be dismissed.

**B.     Relation-Back Under Rule 15(b)(2) is Impermissible Because Abbott Had No Notice of the Sealed Complaint.**

Abbott's opening brief adequately described Rule 15(c)(2)'s requirement that a party have notice of the complaint that is to serve as the relation-back placeholder, and that a sealed complaint obviously cannot provide such notice, rendering Rule 15(c)(2) inapplicable.  Mem. at 13-14.  Ven-A-Care offers no argument to rebut that logic, only blind citation to cases holding otherwise, Opp. at 17-18; its Rule 15(c)(2) argument should be rejected.

**C.     Relation-Back Should Be Measured on an NDC-By-NDC Basis.**

Abbott's opening brief likewise explained why relation-back should proceed on an NDC-by-NDC basis.  Mem. at 14-17.  Ven-A-Care responds by stating that relation-back should be on a drug-by-drug basis.[6]  Opp. at 17.  A drug-by-drug basis for relation-back, however, bears no connection to the way that pharmaceutical products are priced, sold, or paid for by Medicaid, and therefore has no logical connection to the specific false *claims* at issue in this case.

---

[5] Likewise, Ven-A-Care ignores the fact that United States is under the same time pressure in FCA cases that the Attorney General brings under § 3730(a), which *unambiguously* provides that the statute of limitations continues to run during the investigatory period.  Indeed, such pressure is inherent in every ordinary tort case, yet litigation in this country has not ground to a standstill merely because parties generally have only a limited number of years to investigate wrongdoing and file complaints.

[6] Notably, Ven-A-Care's "drug-by-drug" relation-back theory would still likely require the dismissal of the bulk of the Erythromycin claims, due to the unique posture of this case.  Because Ven-A-Care's Massachusetts complaint must be dismissed under the first-to-file bar, the only conceivable way that the relation-back issues would not be moot would be if this Court were to allow Ven-A-Care to amend its Florida complaint to re-allege Erythromycin claims (which, of course, this Court should not do.  *See supra.*)

If that was the case, there could be no drug-by-drug relation back to the Florida complaint, because there *are no Erythromycin NDCs* currently pending in that complaint.  In other words, even if the Florida complaint were amended today, all Erythromycin claims prior to December 20, 2001 would be untimely.

Ven-A-Care's theory of fraud is that Abbott reported incorrect prices for its products, and that the Government paid Medicaid claims at a higher rate than it otherwise would have, in reliance on those reported prices.  But, as multiple pleadings in this MDL have shown, Abbott did not simply price and sell (for instance) "Erythromycin" to various providers, it sold specific Erythromycin *products*, each of which had a specific NDC.  Prices for these products were set on an NDC-by-NDC basis, and, as Ven-A-Care has conceded, the actual alleged false claims at issue in this case were "submitted by retail pharmacies . . . using the NDC of the drug."  Mem. Ex. O ¶ 36.  As such, determining whether any specific claim was "false" requires an analysis of the reported and "true" prices of each *NDC* of Erythromycin.

For purposes of Rule 15(b) relation-back, therefore, the proper "conduct, transaction, or occurrence" at issue in this case is whether each specific NDC claim by Abbott was overpriced, thereby causing claims for *that NDC* to be fraudulent.  Mem. at 15-16.  As such, Ven-A-Care's claim that product A was overpriced and fraudulent should not relate back to an earlier complaint stating that product B is fraudulent, as the factual basis for the claims do not overlap.  *Id.*

Accordingly, even if this suit were jurisdictionally permissible (which it is not), and even if relation back to could save the untimely claims accruing before August 30, 2001 in this suit (which it cannot), relation back could only be permitted to the first complaint in this suit in which a particular NDC at issue was first raised.

## **CONCLUSION**

Abbott's motion to dismiss the relators' complaint should be granted in whole or in part.

Dated:  December 20, 2007                    Respectfully submitted,

                                             /s/ R. Christopher Cook
                                             James R. Daly
                                             Tina M. Tabacchi
                                             Brian J. Murray
                                             JONES DAY
                                             77 West Wacker Drive, Suite 3500
                                             Chicago, Illinois  60601
                                             Telephone:  (312) 782-3939
                                             Facsimile:   (312) 782-8585

                                             R. Christopher Cook
                                             David S. Torborg
                                             JONES DAY
                                             51 Louisiana Avenue, N.W.
                                             Washington, D.C.  20001-2113
                                             Telephone:  (202) 879-3939
                                             Facsimile:  (202) 626-1700

                                             *Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS OR PARTIALLY DISMISS THE RELATORS' COMPLAINT to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 20th day of December, 2007.

/s/ David S. Torborg

David S. Torborg