# MDL EXHIBIT 2-A

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
       In Re:                          )
 4     PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS
       AVERAGE WHOLESALE PRICE         ) MDL No. 1456
 5     LITIGATION                      ) Pages 1 - 30
 6
 7
 8              CLASS COUNSEL STATUS CONFERENCE
            BEFORE THE HONORABLE PATTI B. SARIS
                 UNITED STATES DISTRICT JUDGE
10
11
12
13
                              United States District Court
14                            1 Courthouse Way, Courtroom 19
                              Boston, Massachusetts
15                            September 11, 2007, 10:10 a.m.
16
17
18
19
20
21
22
                         LEE A. MARZILLI
23                    OFFICIAL COURT REPORTER
                   United States District Court
24                 1 Courthouse Way, Room 3205
                       Boston, MA  02210
25                      (617)345-6787
```

```
 1   A P P E A R A N C E S:
 2   For the Plaintiffs:
 3        STEVE W. BERMAN, ESQ. (By Telephone),
     Hagens Berman Sobol Shapiro LLP, 1301 5th Avenue, Suite 2900,
 4   Seattle, Washington, 98101-1090.
 5        THOMAS M. SOBOL, ESQ., Hagens Berman Sobol Shapiro LLP,
     One Main Street, Cambridge, Massachusetts, 02142.
 6
          DONALD E. HAVILAND, ESQ., The Haviland Law Firm, LLC,
 7   740 S. Third Street, Third Floor, Philadelphia, Pennsylvania,
     19102.
 8
     ALSO PRESENT:  Andrew J. Jackson, Esq., D. Scott Wise, Esq.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                    P R O C E E D I N G S
```

THE CLERK: In Re: Pharmaceutical Industry Average Wholesale Price Litigation, Civil Action 01-12257, will now be heard before this Court. Will counsel please identify themselves for the record.

MR. SOBOL: Good morning, your Honor. Thomas Sobol for the class plaintiffs. With me on the phone is my partner, Steven Berman.

THE COURT: Thank you.

MR. HAVILAND: Good morning, your Honor. Donald Haviland, Haviland Law Firm, for the plaintiffs.

THE COURT: I'm not sure if any defense counsel have shown up. They're not needed. I notice some folks who might be defense counsel sitting here. Do you want to be recognized or just sit and --

MR. WISE: I'm just observing, your Honor.

THE COURT: Just observing, that's fine.

I got a phone call from a Judge William G. Bassler after I had appointed Mr. Haviland as co-lead counsel, basically based on a settlement among the lead counsel team. There had been a serious dispute on the plaintiffs' team. I thought it was serious. I was about to enter into the fray when you worked it out, and although I had some misgivings, I simply said, "If you agree, I'll agree."

The call from Judge Bassler prompted him sending me

1  a copy of a letter that you sent to him, Mr. Haviland, on
2  July 27, 2007. I didn't know if Mr. Sobol had seen that or
3  Mr. Berman.
4       MR. SOBOL: I have not, your Honor. I don't know
5  if Mr. Berman has.
6       MR. BERMAN: I have not seen it, your Honor.
7       THE COURT: There were two things that worried me,
8  but let me get quickly to the thing that worried me the most,
9  which is, you're seeking a national class in the AWP in the
10 state litigation, at least according to this letter. Is that
11 still true?
12      MR. HAVILAND: Well, your Honor, that's a great
13 question, and let me just say that at the outset, there has
14 never been any effort to overlap or interfere with this
15 Court's jurisdiction. You have to remember the history. We
16 were brought in as Kline & Specter at the time to assist the
17 Local 68 counsel in the summer of 2003. They had filed two
18 cases, the Vioxx litigation and AWP. The client intended to
19 pursue a national class in both cases. Your Honor I know got
20 from defense or actually plaintiffs' counsel the Supreme
21 Court's decision in Vioxx, which is directly involving that
22 plaintiff, and that certainly is informing that client's
23 intentions in New Jersey.
24      THE COURT: Can you hear, Mr. Berman?
25      MR. BERMAN: It's very hard to hear.

1   MR. HAVILAND: I'm sorry, I'll speak up.
2   THE COURT: That may not be on, the mike, and I
3   need you to hear this.
4   MR. HAVILAND: So the answer to your question, your
5   Honor, is it's unclear, simply because the original complaint
6   filed in 2003 against 56 companies sought a nationwide class
7   action. Since that time, your Honor has certified a
8   nationwide class action, at least for consumers. You're
9   considering the same for Track Two. So today I can tell you
10  that we're not looking to do anything that would overlap or
11  interfere with that. By the same token, there are some
12  defendants that are not in the MDL. And so what we were
13  asked to respond to for Judge Bassler, who, by the way, has
14  been appointed special master by the state court judge, and
15  we asked him, your Honor, to contact you so that we could
16  coordinate to make sure that there was --
17  THE COURT: It just says in this July 27, 2007
18  letter, "On the strength of the recent Vioxx decision
19  involving the same representative plaintiff," which I assume
20  is International Union of Operating Engineers, "plaintiff
21  seeks certification of a nationwide class defined as
22  follows." Now, this is just a month ago.
23  MR. HAVILAND: Right.
24  THE COURT: "-- defined as follows: All persons
25  and entities in New Jersey and throughout the country," and

1  then it talks, "paid beginning at least 1991 through the
2  present any cost of a cancer, inhalant, and miscellaneous
3  other drugs manufactured, marketed, distributed and sold by
4  defendants." Now, I don't know exactly who all the
5  defendants are in that case.
6            MR. HAVILAND: There are 56, and, your Honor --
7            THE COURT: Fifty-six, so I'm assuming there's a
8  big overlap here, right?
9            MR. HAVILAND: Big, yes, in the sense of 20 some
10 defendants.
11           THE COURT: Okay, so --
12           MR. HAVILAND: That language comes right out of the
13 complaint, just so you know, your Honor. We were asked by
14 Judge Bassler to give him what the class as pled was.
15           THE COURT: As you remember, maybe not, when I
16 remanded the case, I was enormously concerned because of a
17 lack of reasonable research as to whether these doctors all
18 had consented to the removal. However, there were direct
19 representations made to me that it was only going to be a
20 New Jersey class. And I haven't looked up the Consumer Class
21 Action Fairness Act in a while. I don't even know whether or
22 not your proposed national class action is still viable
23 through a state system, but, in any event, it's directly
24 inconsistent with your obligations to this Court.
25           MR. HAVILAND: Well, and, first of all, your Honor,

1  Mr. Sullivan spoke that day. In his prefatory comments, I
2  wasn't aware of his saying those things. They were
3  inconsistent with the complaint, but he said that there were
4  state claims, state-specific, and there were no federal --
5        THE COURT: Who's Sullivan?
6        MR. HAVILAND: He's the associate who appeared that
7  day from Keefe Bartels, from the firm that represents
8  Local 68 directly in both Vioxx and the AWP case.
9        THE COURT: Well, regardless, it was
10 representations made to me.
11       MR. HAVILAND: No question.
12       THE COURT: I was concerned that there wasn't a
13 reasonable investigation as to consent or not consent. I
14 remanded. A very experienced senior federal judge is
15 actually helping, as I understand it, the state court and
16 handled the thing. And as we do, actually, behind the
17 scenes, we pick up the phone to each other, and it was
18 literally by serendipity a day after I had appointed you as
19 co-lead counsel.
20       MR. HAVILAND: Right.
21       THE COURT: Or two days after, something like
22 that. And so I need to know that you're not seeking
23 something that, A, is inconsistent with your ethical
24 responsibilities to this Court, and, B, that would defeat my
25 jurisdiction as MDL judge.

Page 8

1    MR. HAVILAND: Neither do I, your Honor, and I
2 understood from your clerk when I got the phone call about
3 today, I'm coming today to tell you that's not going to
4 happen. Again, the history: This case got remanded. It's
5 finally gotten with a special master appointed. We
6 encouraged Judge Bassler to call you so that we could make
7 sure that we knew exactly what your Honor was doing as that
8 case progressed. So, you know, the schedule has the case
9 going through 2010. We are going to wait to see what
10 happens. I think we have class next summer. Mr. Jackson is
11 here for Baxter, who's liaison counsel in the New Jersey
12 case. So we don't even have briefing until well down the
13 road.
14    THE COURT: Yes, but this cannot -- you made a
15 specific representation to the court you were seeking a
16 national class action. Somebody else but on behalf of the
17 same party made a specific representation to me that it was
18 only a state case. But even putting aside all of that, I
19 think you wanted to be co-lead counsel here, and you had not
20 been appointed until that point.
21    MR. HAVILAND: Well, Kline & Specter had, and
22 that's right, your Honor, my law firm had not, and I agree
23 with that.
24    THE COURT: So you can't do this.
25    MR. HAVILAND: Well, we can't seek a nationwide

1   class where it's overlapping. I absolutely agree with that,
2   your Honor.
3           THE COURT: So should I issue an injunction? I
4   mean, I don't know if Mr. Sobol and Mr. Berman or Mr. Wise,
5   who's sitting here now on behalf of AstraZeneca, or the folks
6   from Baxter knew about this, but I must admit, red flags
7   popped up all over the place for me.
8           Mr. Sobol?
9           MR. BERMAN: Your Honor, if I may say one thing,
10  and then I'll let Mr. Sobol speak. We didn't really know
11  that this was happening until after this hearing was set and
12  we began to investigate this, but I'm looking at the
13  transcript of the proceeding before the special master where
14  Mr. Haviland has appeared with his cocounsel, Mr. Williams,
15  in the case, and the special master asked at Page 27,
16  "I guess we've answered the question. It's the plaintiffs'
17  position that they want a nationwide class?" Answered by
18  Mr. Williams, "Yes, your Honor."
19          So on August 5, I think after Mr. Haviland was
20  appointed lead counsel before your Honor, he and his co-lead
21  counsel were taking the position in the New Jersey court that
22  they were seeking a national class.
23          THE COURT: Well, what do I do with this? I mean,
24  I -- let me just say, the second thing that's created some
25  misgivings for me was a statement that I had appointed you

Page 10

1  co-lead counsel as of July 27, 2007, which was not the case.
2  Now, that, you could argue, was subsequently cured with the
3  settlement, but at the time, of course, it was a huge pissing
4  battle -- excuse my French -- within the plaintiffs. So I
5  hadn't appointed you co-lead. That was the very issue that
6  was pending. So I'm just worried -- this is a worried
7  conference call -- about whether you are, A, candid with the
8  New Jersey court and with me, and, B, what do I do about
9  this?
10          MR. HAVILAND: Well, if I could answer the what you
11 do about it, we have Judge Bassler speaking to your Honor for
12 the very purpose so that there isn't a problem, okay? It's
13 not going to be addressed until sometime next summer when we
14 file a class. There are a host of defendants that are in
15 this MDL. Now, your Honor has ordered mediation, and that
16 may come to fruition. There are 19 some attorneys general
17 pursuing those other companies, Hoffmann-La Roche, for
18 instance. Local 68 intended when it filed the case in Vioxx
19 and AWP to have a national class on the strength of that
20 Vioxx case. The Supreme Court has now ruled that that's a
21 question. Co-lead counsel here have said --
22          THE COURT: The Supreme Court of New Jersey or
23 Supreme Court of the United States?
24          MR. HAVILAND: New Jersey. That's the opinion that
25 co-lead counsel sent to you, I think this week, explaining

Page 11

1  that we don't believe that that affects your decision here
2  for the TPP class.
3              THE COURT:  You know, I know you'd like to think
4  that I'm totally current on all 5,000 docket entries, but I
5  don't remember seeing that yet, and maybe I will, but right
6  now I need a representation from you.
7              MR. HAVILAND:  Yes.
8              THE COURT:  I don't like to enjoin state courts.
9  A, I think the case law is muddy on whether I can do it --
10 that's a difficult area -- but as a matter of policy, I
11 prefer to work together with the state courts, so --
12             MR. HAVILAND:  And we could craft a stipulation to
13 that effect, your Honor.  It's never been raised until this
14 moment --
15             THE COURT:  You need this to drop all allegations.
16 Now, I don't know who, like, the lead counsel is for
17 defendants there.  Are you Baxter?  Are you lead down there?
18             MR. JACKSON:  I'm lead liaison counsel, your Honor,
19 Andy Jackson.
20             THE COURT:  Well, so I know you don't want to be
21 here, but you are.  So can you think of any reason why, if he
22 filed a stipulation of dismissal with respect to the request
23 for a national class action on all the companies that are
24 involved in the MDL, that that would create any kind of a
25 problem?

1    MR. JACKSON: Let me back up a little bit just to
2    make sure that you have the record clear, your Honor. There
3    wasn't just the statement in front of you that you referred
4    to earlier about the New Jersey matter being in New Jersey.
5    There was a letter written to you as well by Mr. Keefe in
6    September, I guess it was 10th, the day before your argument
7    on the New Jersey remand motion, where they in that letter
8    made a very direct representation that the New Jersey matter
9    was a state class only, and then the next day in the hearing
10   here, they made the same representation. So we've thought
11   until that time that the New Jersey matter, we have lots of
12   problems with it, lots of class problems, lots of merit
13   problems, but at least based upon that and your actions, we
14   thought that that was a New Jersey class.
15   Now, the issue you raised about a stipulation for
16   our client, that would be great. Since the other defendants
17   who are not here or who don't have overlapping MDL versus
18   New Jersey matters, we have to look at what the stipulation
19   would look like. We'd get it to all our defense counsel.
20   THE COURT: Well, here's my problem: I don't have
21   jurisdiction over any claims or defendants which do not exist
22   in the MDL. Now, it may be that you could make an allegation
23   that it's either judicial estoppel or law of the case or
24   fraud, I mean, whatever you would want to say that would
25   somehow bring that case back up here, which I'm not looking

Page 13

1  forward to, but I can't do anything with that.  That has to
2  be handled totally through the New Jersey action, it strikes
3  me; in other words, either an additional notice of removal or
4  some sort of a request to dismiss for unethical conduct.
5  That's in your -- I don't have it.  I can't do anything.  But
6  on my case on my watch and my hunt, I do have jurisdiction;
7  and I believe I have the power to protect the authority, the
8  jurisdiction of this Court by enjoining the Haviland firm and
9  his party from pursuing a national class action with respect
10  to any overlapping claims and defendants.  I could do that,
11  or he could simply drop them expressly before the Court.
12         And I don't know -- this is may be the first time
13  that Mr. Sobol or Mr. Berman have seen this -- I don't know
14  if it affects their agreement to have him be part of the
15  class team if you didn't even know about this.
16         MR. SOBOL:  Well, let me address a few things, your
17  Honor, take a couple of steps back to make sure we put this
18  in context because I think you want to make sure you know
19  what it is that people knew or were aware of.
20         In August of 2007, at the end of August when we
21  came before you and we worked out the resolution with
22  Mr. Haviland, the only thing that we knew was that there had
23  been a case that had been remanded back to New Jersey, to
24  which there had been a representation to the Court that it
25  was going to be a New-Jersey-only action.  Our assumption,

1  meaning the co-leads' assumption, would be that if there were
2  actions that were going to be taken in New Jersey, that
3  Mr. Haviland would confer with us prior to taking them so
4  that we would make sure that that was coordinated with what
5  we were doing, and that's essentially, as I understand it,
6  all we knew.
7          As Mr. Berman indicated when we got notice of this
8  hearing, we then looked into what the circumstances were for
9  why it is that the Court wanted this, and we learned
10 essentially the things that have been indicated here:  First,
11 to our surprise, there was a representation made down in
12 New Jersey that the New Jersey action would go forward on a
13 nationwide basis rather than a New-Jersey-only-wide basis,
14 and that's something that had not been reviewed by us.  And
15 obviously that's something that, you know, would be an issue
16 of concern.
17         Second, it was at least a little bit ironic to us
18 that although the class counsel here in Boston had been --
19 there were disparaging remarks made about us because we were
20 representing both third-party payors and consumers in the AWP
21 case by Mr. Haviland, and yet that's exactly what's also
22 being done, or at least Mr. Haviland is representing TPPs and
23 consumers, or at least TPPs in the New Jersey action, and
24 that was a concern to us.  And there were a variety of other
25 things that we sort of looked at that gave us pause.

1          Now, where did that leave us? Well, where it
2    really leaves us is that we're in a position where our
3    overall view is, we want to be representing the class, and we
4    want to be representing the class effectively. And so we're
5    willing to continue to work with Mr. Haviland if that's what
6    the Court thinks is appropriate. On the other hand, if the
7    Court does not think that that's appropriate, then we're
8    willing to step down from doing that, but --
9          THE COURT: Well --
10         MR. SOBOL: Let me -- I want to go into the balance
11   of it so you can hear about the overall. It's also just as
12   important to understand that, I don't know, but at least in
13   theory, there might be defendants in the New Jersey action
14   that are not defendants here in the AWP MDL, or there might
15   be drugs in New Jersey that are at issue that are not at
16   issue here in the MDL. And to that extent, then there
17   wouldn't be any overlapping, okay? But it's not enough
18   simply to say, go forward only on a New-Jersey-wide basis
19   because there would still be a need for coordination if, A,
20   the New Jersey action has some of the same defendants and
21   drugs and it's doing the New Jersey piece. That would be an
22   issue for us, and we would need to make sure that we have,
23   you know, coordination with what was going on down there, at
24   a minimum, and communication.
25         THE COURT: Well, the judge was fabulous. I mean,

1  he and I are definitely talking.
2         MR. SOBOL: Right.
3         THE COURT: So, I mean, in that sense, I think just
4  as in the Neurontin case, I'm working with Judge Freedman and
5  the state courts of New York, I mean, I'm willing to
6  coordinate and work. In fact, I think it's fabulous that he
7  picked up the phone because I didn't even know about this
8  issue. I wouldn't have known about it.
9         MR. SOBOL: Right, but if I may --
10        THE COURT: So if that's what Mr. Haviland is
11 urging, well, then that's a feather in his cap. But let me
12 just say this: I've got a problem, Mr. Haviland. Let me
13 just be really blunt. I knew about the problems you had with
14 Judge Stearns. I knew. I read about it. I know about it.
15 I've talked with Judge Stearns. I knew. Strike one.
16        Strike two, I had problems with getting the Friday
17 before the hearing all the affidavits from class reps in a
18 case that had been going on for six years that would pull the
19 plug on a case that wasn't just about those class reps; you
20 know, people who are sick and with cancer who might not be
21 able to have a proceeding, or if I ruled against them, they
22 could appeal; if I ruled for them, they got money. But it
23 was just after six years just, you know, "I'm going to take
24 my toys and go home if I don't get it my way." So but I was
25 willing to go with the settlement. But then when I see this,