```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS


                                  )
IN RE: PHARMACEUTICAL INDUSTRY)       M.D.L. No. 1456
AVERAGE WHOLESALE PRICE        )      Civil Action No. 01-12257-PBS
LITIGATION                     )
                               )
THIS DOCUMENT RELATES TO:      )
                               )
ALL CLASS CASES                )
                               )
                               )
```

**MEMORANDUM AND ORDER**

January 3, 2008

Saris, U.S.D.J.

### I. INTRODUCTION

Donald Haviland, managing partner of The Haviland Law Firm, LLC ("Haviland") was appointed as co-lead class counsel pursuant to Fed. R. Civ. P. 23(g) in the Average Wholesale Pricing multi-district litigation ("AWP MDL"). Haviland has filed a notice of withdrawal. The other co-lead counsel request that this Court treat Haviland's notice of withdrawal as a motion to withdraw and grant his motion.[1] They contend that Haviland and his firm are unfit to continue to serve as class counsel. After the hearing and a review of the submissions, I strike Mr. Haviland as class counsel.

---

[1] Generally, counsel in a case in which motions are pending before the Court must move for leave of court to withdraw. See, e.g., LR, D. Mass. 83.5.2.

## II. BACKGROUND

Haviland was initially an associate at Kline & Specter, P.C., a Pennsylvania law firm. In January 2006, the Court appointed Kline & Specter Co-Lead Counsel in the AWP MDL, along with Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, P.C., Hoffman & Edelson and The Wexler Firm. Kline & Specter withdrew as Co-Lead Counsel on September 19, 2006 after Haviland's termination by the firm on September 7, 2006.

On March 26, 2007, Mr. Haviland moved for appointment as Co-Chair of the Lead Counsel Committee. Class Counsel initially opposed this motion, citing, among other things, Mr. Haviland's relatively recent involvement and his failure to fund the case at the level of Co-Lead Counsel. After a hearing on August 27, 2007, class counsel reached a compromise with Mr. Haviland, and class counsel and Mr. Haviland made a joint proposal to the Court, which the Court accepted. (Hr'g Tr. 26, August 27, 2007 11:00 a.m.) The Court then appointed Haviland.

Shortly afterwards, the Court received a communication from the state court in New Jersey that was handling the related state AWP cases. Among other things, the Court learned that Haviland, who was counsel in that case, was seeking a nationwide class. More on this later. At a hearing regarding class counsel representation on September 11, 2007, the Court raised concerns about Haviland's fitness to serve as Co-Lead Class Counsel. On

September 18, 2007, Class Counsel from Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), on behalf of all the lead counsel, requested "a written order finding Mr. Haviland to be unfit to serve as Co-Lead Counsel in this litigation."  (Class Counsel's Submission Regarding Mr. Haviland's Participation as Co-Lead Counsel 21.)

### III. DISCUSSION

Fed. R. Civ. P. 23(g) provides:

> (1) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.  In appointing class counsel, the court:...(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class...(4) Duty of Class Counsel.  Class counsel must fairly and adequately represent the interests of the class.

In complex multi-district litigation, courts are encouraged to:

> invite submissions and suggestions from all counsel and conduct an independent review (usually a hearing is advisable) to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable.  Counsel designated by the court also assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel.

Manual for Complex Litigation § 10.22, at 24 (4th ed. 2004).  Complex litigation requires particularly professional conduct from attorneys, as judges are especially dependent on the assistance of counsel.  Id. § 10.21, at 22-23.  "Counsel need to fulfill their obligations as advocates in a manner that will

foster and sustain good working relations among fellow counsel and with the court." Id. at 23.  In a class action, lead counsel must meet a demanding standard of trustworthiness because the Court must rely on representations made by counsel.  See, e.g., In re Vitamins Antitrust Litig., 398 F. Supp. 2d 209, 237 (D.D.C. 2005); In re Organogenesis Sec. Litig., 241 F.R.D. 397, 408 (D. Mass. 2007) ("to understand the facts and issues presented to it in any case, including a class action, the court must employ and to some extent rely on representations made to it by counsel.")

The presiding judge has a fiduciary obligation to the plaintiff class to pick an effective and trustworthy lead counsel team.  See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 466 F. Supp. 2d 364, 367-68 (D. Me. 2006) (holding that the presiding judge has the final say on who should be on plaintiff's leadership committee and manage the activities of all the lawyers).  In the leadership role determination, no individual plaintiff's choice of lawyer is at stake.

The standard for disqualification of lead counsel is different from that for disqualification of an individual plaintiff's counsel.  In determining whether lead counsel should be disqualified, a court should consider if plaintiffs, given the ability to choose among numerous competent lead counsel contenders and full knowledge of their behavior, would select counsel whose behavior has raised ethical concerns.  See In re Medtronic, Inc., Implantable Defibrillator Prod. Liab. Litig.,

4

434 F. Supp. 2d 729, 732 (D. Minn. 2006).

Hagens Berman highlights multiple incidents in this litigation that it contends cast doubt on Haviland's fitness to serve as Class Counsel. I address each separately below.[2]

a. <u>The New Jersey Action</u>

Hagens Berman argues that Haviland is not fit to serve as class counsel because he sought to have certified a nationwide class in New Jersey that would compete with certified classes in the federal AWP MDL proceeding and would seek nationwide damages against a number of overlapping defendants based on virtually identical claims.

Some procedural background is needed to understand this dispute. The June 30, 2003 complaint in the New Jersey class action filed by Kline & Specter, and signed by Mr. Haviland, includes the following paragraph in the section titled Plaintiff

---

[2] Hagens Berman also mentions a number of incidents in other actions involving Haviland. For example, Judge Stearns criticized Haviland's behavior in the Lupron case. In that case, Kline & Specter established certain websites that Judge Stearns found "were intended to mislead potential members of the MDL class." <u>In re Lupron Mktg. & Sales Practices Litig.</u>, 228 F.R.D. 75, 82 (D. Mass. 2005). Immediately after ruling on the websites, the court discovered that Haviland had sent letters to people who had registered on these websites. <u>Id.</u> Judge Stearns found "the 'Dear Client' letter to contain a number of deliberate misrepresentations and falsehoods...[and] ordered that a curative notice be sent by Kline & Specter to all of the letter's recipients." <u>Id.</u> at 83. Hagens Berman also noted instances in which Haviland allegedly inappropriately solicited class members and otherwise made misrepresentations in connection with the Bridgeport Fire Class Action Litigation in Pennsylvania state court. I have focused primarily on Haviland's behavior in the AWP MDL.

5

Class Allegations:

> Plaintiff seek [sic] to bring this case as a class action pursuant to Rule 4:32-1 of the New Jersey Rules Governing the Courts, on behalf of themselves and all others <u>similarly situated in New Jersey</u> as members of a proposed class, defined as follows (the "Class"): <u>All persons and entities in New Jersey and throughout the county who</u>...

(Compl. ¶ 99) (emphasis added).  The case was removed, and a subsequent motion to remand was filed.  At the February 10, 2005 hearing on the remand in the AWP MDL, which Mr. Haviland attended, Mr. Sullivan, serving at the time as co-counsel to Kline & Specter in the New Jersey action, explained the status of the proposed class in that case: "[t]he class itself is a state action for state limited claim.  We are only seeking to represent those persons in New Jersey." (Hr'g Tr. 90, Feb. 10, 2005.)  On February 9, 2005, John E. Keefe, Jr., also serving as co-counsel to Kline & Specter, submitted a letter to this Court explaining that  "Local 68 filed its putative New Jersey-only class action in state court in June of 2003."  The Court remanded the action to state court because, inter alia, the defendant pharmaceutical company that removed the case violated the rule of unanimity by not obtaining the consent of the physician defendants prior to filing the notice of removal.  <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 431 F. Supp. 2d 109, 122 (D. Mass. 2006).

On remand, despite these express representations, Haviland sought the certification of a <u>nationwide</u> third-party payor class

in state court.  In his July 27, 2007 letter to Judge Bassler,[3] the Special Master in the New Jersey action, Haviland explained, "[o]n the strength of the recent *Vioxx* decision, involving this same representative Plaintiff, Plaintiff seeks certification of a nationwide Class defined as follows: All persons and entities in New Jersey and throughout the country..." (footnotes omitted). Judge Bassler called me regarding this issue to coordinate these cases.  Concerned about the potential conflict, I set up the earlier-mentioned hearing for September 11, 2007.

Haviland insists that he had sought a nationwide class all along.  In fact, he cited the June 2003 complaint in the New Jersey action, which proposed a class of "[a]ll persons and entities in New Jersey and throughout the county" (Compl. ¶ 99). Haviland contends that this should have read "[a]ll persons and entities in New Jersey and throughout the <u>country</u>" (emphasis added).  The confusion, he says, is explained by a simple typographical error in the initial complaint.  Haviland also ascribes a great deal of weight to a brief reference to a national class in the New Jersey action during the January 27, 2006 remand hearing in the AWP MDL.[4]

---

[3] Judge Bassler is a former United States District Judge.

[4]     "The Court: Did they sell to the Local 68?
       Ms. Benedetto: Well, it's also a class case, your Honor, Local 68 on behalf of an alleged purported nationwide class.  And certainly Local 68 –
           ...
           The Court: So you have evidence that some of your

7

Based on this record, I find that Mr. Haviland made statements in the New Jersey court which were inconsistent with the statements made by co-counsel to this Court.  Haviland argues that these inconsistencies were innocent or unintended.  It is possible that Haviland did not notice the ambiguity at the time of the remand hearing.  However, what is crystal clear is that Mr. Haviland is seeking a nationwide class in New Jersey at the same time he was seeking to represent a nationwide class here without disclosing the conflict of interest to this Court.  Apparently, Hagens Berman and the other lead counsel did not know of Haviland's litigation position in New Jersey.  While Haviland has since modified his claims in New Jersey and dismissed certain overlapping defendants, this failure to disclose his activities in New Jersey to the Court or fellow counsel is a breach of trust as class counsel.

    b.   <u>Status as Class Counsel</u>

In his July 27, 2007 letter to Judge Bassler, Haviland also identified himself as having been "recognized by the Boston Court as one of the Co-Lead Counsel for Class Plaintiffs in MDL 1456." In fact, Haviland had not yet been approved as class counsel, and he knew the matter was hotly disputed.  Less than a month later,

---

employees bought these pills, or whatever it was, from Antoun?
          Ms. Benedetto: We know that he is in the area of our employees and certainly many of whom bought Zoladex.  We also represent a class, nationwide class, respecting purchasers of Zoladex and the other drugs that these defendant pharmaceuticals companies manufacture." (Hr'g Tr. 29-30, January 27, 2006.)

Mr. Haviland filed his Memorandum in Support of the Haviland Law Firm, LLC's Motion for Appointment as Class Counsel for the Track 2 Consumer Sub-Classes Pursuant to Fed. R. Civ. P. 23(g). Mr. Haviland conceded at the September 11 hearing, that, as the Court noted, whether or not his position was correct, "at the time [he] wrote this letter, it was a matter of huge acrimonious disagreement." (Hr'g Tr. 27, Sept. 11, 2007.) I find that the statement to the New Jersey court regarding his status as class counsel was a material misrepresentation.

    c.    <u>AstraZeneca Settlement</u>

Hagens Berman argues that Mr. Haviland's behavior during the preliminary approval of the AstraZeneca settlement in this MDL also raises significant concerns about his fitness to serve as class counsel.

As background, this Court held a status conference regarding the AstraZeneca settlement on May 22, 2007; Haviland also filed his opposition to the settlement on May 22, 2007. Class Counsel alleged that not only did Haviland fail to give them any notice before filing his objection, he had told them that his client had approved the settlement terms, an assertion that Haviland disputes. Haviland insists that he never agreed to the settlement.

What is undisputed is that on August 23, 2007, just four days before the hearing on August 27, 2007, Mr. Haviland filed declarations from his clients, proposed consumer class

representatives, threatening to withdraw if Haviland were not appointed as class counsel.  As I explained at the August 27 (Hr'g Tr. 49-51, Aug. 27, 2007 9:25 a.m.) and the September 11 (Hr'g Tr. 16, Sept. 11, 2007) hearings, I interpreted these declarations as threats to take his toys and go home if the Court declined his request.  Mr. Haviland intended to coerce the Court into appointing him as Co-Lead Class Counsel or risk losing class representatives in a class action involving the sick and elderly.[5]  Both the nature and the timing of these declarations raised concerns about Haviland's loyalty to the class.

In addition, Haviland filed his August 24, 2007 declaration, relating to the proposed AstraZeneca settlement, on CM/ECF <u>not</u> under seal.  This document contained confidential information about the mediation proceedings, in direct violation of the confidentiality obligations under the mediation agreement.  Mr. Haviland acknowledged to the Court that this public filing had been submitted by an employee in his office. (Hr'g Tr. 22, Sept. 11, 2007.)  Co-lead counsel assert that Haviland filed the documents publicly on purpose.  Haviland claims it was inadvertent.  Even if this document had been filed on the public record by accident, Mr. Haviland breached a duty of care by publicly placing on the docket sensitive negotiating positions of

---

[5] Actually, in light of certain of my rulings, many (if not all) of these claims arose after the cut-off for class membership under the class definition.

10

plaintiffs.

### IV.  CONCLUSION AND ORDER

In sum, these incidents demonstrate that Haviland cannot serve as an adequate representative of the interests of the class, and I strike him as class counsel.  Plaintiffs shall submit a case management order with the names of all current lead counsel.

S/PATTI B. SARIS
United States District Judge
