UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) Civil Action No. 01-12257-PBS ) |
| **THIS DOCUMENT RELATES TO:** | ) Hon. Patti B. Saris ) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, CIVIL ACTION NO. 06–CV-11337-PBS | ) Magistrate Judge Marianne B. Bowler ) ) ) ) |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT TO PROVIDE DEPOSITION DATES FOR MEMBERS OF ITS ALTERNATE SITE SALES FORCE AND TO PRODUCE RELATED DOCUMENTS**

The United States of America, through its undersigned counsel, respectfully files this Motion to Compel Abbott Laboratories, Inc. ("Abbott") to Provide Deposition Dates for Members of Its Alternate Site Sales Force and to Produce Related Documents, and this accompanying Memorandum in Support.

**I.     STATEMENT OF FACTS**

   **A.     INTRODUCTORY STATEMENT**

Case Management Order 29 ("CMO 29") (Dkt. No. 3956), which governs the conduct of discovery in this case, sets forth the protocol for scheduling depositions of current and former employees of the parties. Specifically, paragraph 12 instructs the party seeking to take the deposition ("the requesting party") of a current or former employee of a party to notify the party's counsel ("the responding party") via letter or e-mail of the name of the person to be examined. As soon as practicable but no later than 10 business days from receiving the request, the responding party "shall contact the requesting party with a proposed date or dates for the taking

of the deposition, unless the party intends to move for a protective order regarding the deposition."[1] Thereafter, the requesting and the responding parties are to confer regarding a mutually convenient time, place and the estimated length of the deposition. "Absent good cause or agreement between the parties, the responding party shall propose a date or dates within 30 calendar days from the date of the requesting party's initial request." CMO 29, ¶ 12. Pursuant to the provisions of CMO 29, on November 20, 2007, the United States informed Abbott of the sales force members it sought to depose. (*See* November 20, 2007 letter from R. Ford to counsel for Abbott at p. 4 and related attachment, attached as Exhibit I).

Even though the time for Abbott to provide dates for these depositions, or alternatively, to move for protection, has long past, Abbott has yet to propose a single date for the depositions of 37 of the 39 members of its Alternate Site sales force that were requested by the United States.[2] Further, Abbott has continually delayed producing the working files and personnel files of its sales force – categories of documents this Court ordered Abbott to produce on May 16, 2007, nearly eight months ago. Abbott's failure to produce the requested discovery and to provide dates for depositions is severely prejudicing the United States' ability to prepare its case for trial. Further, as evidenced by this motion and the accompanying exhibits which show the

---

[1] Motions for protective order must be filed by the responding party within 15 business days of receiving the deposition request. CMO 29, ¶ 12.

[2] At 4:28 p.m. on Friday, January 4th, Abbott counsel, for the first time, provided one potential date each for just 2 of the 39 sales force depositions requested by the United States. It is unlikely, however, that these two depositions can go forward on the dates provided because Abbott has yet to produce the working files for these or other members of the sales force. (*See* January 4, 2008 e-mail message from T. Tabacchi to R. Ford, attached as Exhibit R). Rather than being a true effort aimed at scheduling these depositions, Abbott's January 4th response appears to be another stalling tactic, designed to delay the filing of this motion and resolution of these matters.

government's numerous attempts to obtain this discovery (*see, e.g.*, Exhibits A-Q, discussed herein or included as additional correspondence on this subject), Abbott's delays have required the government to expend considerable time and resources in attempts to obtain discovery that the Court has ordered Abbott to produce.

Abbott's conduct is inexcusable. With less than three months remaining in fact discovery, Abbott's failure to produce documents long ago requested by the United States and its failure to comply with the deposition scheduling provisions of the Case Management Order governing this case is severely prejudicing the United States. Accordingly, the United States respectfully requests that this Court issue an order compelling Abbott to complete its production of the sales force working files and personnel files within five business days from the entry of the Court's order; and that the Court order Abbott to comply with the provisions of CMO 29 by providing dates for the depositions of requested members of Abbott's Alternate Site sales force.

**B.    BACKGROUND**

    **1.    The United States' Case**

This case is brought by the United States against Abbott under the False Claims Act ("FCA") and the common law, for reporting inflated prices to pricing compendia for certain drugs (dextrose solutions, sodium chloride solutions, sterile water, Vancomycin and Acyclovir products) knowing that Medicare and Medicaid relied upon the reported prices to set reimbursement rates for those drugs. In addition to reporting inflated prices, the United States alleges that Abbott marketed the spread on these drugs to its customers to increase sales of the drugs, thereby boosting Abbott's profits. Under the FCA, if it is established that Abbott has submitted or caused others to submit false or fraudulent claims to the United States, the United

States can recover treble damages and penalties for each false or fraudulent claim submitted. 31 U.S.C. §§ 3729-33.

## 2. The United States' Requests for Sales Force Documents

More than a year ago, on November 17, 2006, the United States served a Request for Production on Abbott which called for the production of various documents from Abbott's sales force, including the working files and personnel files of each member of Abbott's Alternate Site sales force from 1991 to 2003. (*See* United States' Second Request for Production to Defendant Abbott, ¶¶ 43-61, attached as Exhibit A). Abbott served its response and objections to the request on January 5, 2007, and the parties attempted to resolve Abbott's objections commencing as early as January 12, 2007, and continuing thereafter. Despite these efforts, Abbott refused to modify its objections or to produce any of the sales force materials. Accordingly, on April 9, 2007, the United States filed a Motion to Compel in order to obtain the requested discovery. (Dkt. No. 4047). On May 16, 2007, Magistrate Bowler overruled Abbott's objections and ordered Abbott to produce the documents to the United States. (Dkt. No. 4259). Since that time, the United States has been diligently attempting to obtain this discovery,[3] despite Abbott's

---

[3] Some of the same set of documents at issue in this motion have been previously addressed by this Court in an earlier May 16 Order on the United States Second Motion to Compel Abbott to Produce Documents (Dkt. No. 4047), or briefed in the United States Third Motion to Compel Documents (Dkt. No. 4799). Specifically, on May 16, this Court ordered Abbott to produce the personnel files of all of its sales force In its Third Motion to Compel, the United States requested full production of these files, and production of all working files for the same sales force. It appears that Abbott still may not be in compliance with the Court's Order of May 16 regarding the personnel files, and has barely begun production of the working files. In the present motion, we are seeking deposition dates for members of the sales force and production of all personnel and working files, well in advance of the depositions. For these reasons, the United States requests that, if argument on the present motion and the Third Motion to Compel are scheduled, they be scheduled for the same date.

continued postponements and delays.[4]

In August and October respectively, Abbott produced one Banker's box each of personnel files of sales force members. (*See* August 16, 2007 letter from C. Geisler to R. Brooker, attached as Exhibit C, and October 11, 2007 letter from J. Winchester to R. Brooker, attached as Exhibit E). Despite the cover letter accompanying Abbott's October 11, 2007 production, which stated that Abbott would produce the remainder of the personnel files by October 31, 2007 (*see* October 11, 2007 letter from J. Winchester to R. Brooker, attached as Exhibit E), no further productions were made.[5] Having received no such production, on or about October 31st, the United States inquired of Abbott. (*See* November 2, 2007 letter from R. Ford to J. Winchester and C. Geisler, attached as Exhibit F, and November 7, 2007 e-mail from R. Ford to J. Winchester and C. Geisler, attached as Exhibit G). Finally, on November 8, 2007, Abbott counsel confirmed that the August 16th and October 11th productions completed Abbott's production of the Alternate Site sales force personnel files (*see* November 8, 2007 e-mail from R. Ford to J. Winchester, attached as Exhibit H). With Abbott's confirmation that all of the sales force personnel files had been

---

[4] By way of example, the Alternate Site sales force files were a topic of discussion during a July 6, 2007 meet and confer between the government and Abbott's counsel. During that conference, Abbott agreed to produce personnel documents relating to reimbursement, AWP, spread and pricing for each sales force member it had identified. In addition to conducting a search of corporate records, Abbott counsel indicated that current Abbott/Hospira employees were being asked to send their personnel files to a lawyer for review, including those files maintained by sales force at their home offices. Abbott counsel further indicated that it anticipated beginning to produce the documents the week of July 9th, and completing the production in the three to four week time period following the conference. (*See* July 25, 2007 letter from R. Ford to J. Winchester, attached as Exhibit B). Despite these representations, Abbott did not produce the documents in the time frame it represented, nor has it completed its production to date.

[5] Abbott has yet to produce the vast majority of the working files of its sales force.

produced, the United States reviewed those files and selected 39 members of the sales force to depose.

Abbott's representation that it had produced the personnel files for all members of its Alternate Site sales force was false. Personnel files for at least 26 members of the sales force previously disclosed by Abbott have not been produced to the United States. More troubling still, on December 19, 2007, Abbott disclosed the names of 61 additional members of the Alternate Site sales force (*see* Abbott's Second Amended Response to the United States' First Set of Interrogatories,[6] attached as Exhibit P); names which had not previously been disclosed to the United States. Abbott has yet to produce a single personnel file for 45 of those sales force members. (*See* December 20, 2007 e-mail from R. Ford to J. Winchester, attached as Exhibit Q).[7] Collectively, there are approximately 71 members of the Alternate Site sales force for whom Abbott has not produced a personnel file.

Further still, Abbott has made no more than a sporadic production of the sales force working files. (*See* December 18, 2007 e-mail from J. Winchester to R. Ford, attached as Exhibit N, stating that, "[I]n terms of their working files, [Abbott is] in the process of collecting those

---

[6] Abbott's Second Amended Response to the United States' First Set of Interrogatories amends Abbott's response to the United States' Interrogatory No. 8, which sought the identity of all Abbott employees "who were involved in the sales of the Pharmaceuticals identified in the complaint and the dates of their employment by [Abbott], including their positions at Abbott and any related organizational charts."

[7] On December 20, 2007, the United States notified Abbott of the approximately 71 sales force personnel files that Abbott has not produced. As of this date, however, Abbott has yet to respond to that message or to the United States' request that the personnel files for those 71 members of the sales force be produced. (*See* December 20, 2007 e-mail from R. Ford to J. Winchester, attached as Exhibit Q).

6

from across the country.").[8] *Id.* Nearly 20 days after Abbott's latest promise and nearly a year after the United States' original request for the working files of the sales force (and numerous requests in between), Abbott has yet to produce the vast majority of this category of documents.

Despite the United States' repeated attempts to obtain the sales force personnel files and working files, Abbott has yet to complete its production of these documents. The United States requests that the Court compel Abbott (yet again) to produce these important documents.

### 3. The United States' Requests for Sales Force Depositions

Having finally received confirmation from Abbott counsel on November 8th that Abbott had produced all of the Alternate Site sales force personnel files it intended to produce (*see* November 8, 2007 e-mail from R. Ford to J. Winchester and C. Geisler, attached as Exhibit H) (a claim that the United States has since learned to be inaccurate, *see* p. 6, *supra*), on November 20, 2007, the United States informed Abbott of the members of the sales force that it had selected to depose, with the understanding that the United States reserved the right to supplement its list of deponents if Abbott produced additional documents or names of additional sales force members. (*See* November 20, 2007 letter from R. Ford to counsel for Abbott at p. 4 and related attachment, attached as Exhibit I).

Pursuant to paragraph 12 of CMO 29, Abbott was to propose dates for the depositions to the United States by December 5, 2007. Despite repeated requests since that time, Abbott has failed to provide a single date for 37 of the 39 sales force depositions requested by the United

---

[8] In response to Abbott's December 18th e-mail, which also stated that Abbott planned to supplement its list of names of the Alternate Site sales force, the United States informed Abbott that it reserved its right to depose each new Alternate Site sales representative disclosed by Abbott. (*See* December 18, 2007 letter from A. St. Peter-Griffith to J. Winchester, attached as Exhibit O).

States. Nor has Abbott moved for protective orders related to the remaining deposition requests. With respect to these depositions, Abbott has wholly failed to comply with CMO 29.

Despite the United States' assurances that it was willing and able to take many of these depositions in December (with the exception of December 24-26, 2007), Abbott failed to propose any such dates. Further, as of today, Abbott has failed to propose a single date for 37 of 39 of the depositions to go forward in January 2008,[9] or, for that matter, on any date. Given the number of outstanding depositions and the short time-period remaining in discovery, it is imperative to begin scheduling these depositions now, so that the government's timely issued discovery may be taken before the March 31, 2008 discovery deadline.[10]

## II. ARGUMENT

The United States seeks to compel Abbott to produce very specific categories of documents: (1) Alternate Site sales force personnel files; and (2) Alternate Site sales force working files, such as call notes, significant event reports and monthly reports. These documents are highly relevant to the United States' claims of spread marketing engaged in by Abbott. Additionally, the United States is awaiting dates for each of the 39 sales force depositions it requested on November 20, 2007. Abbott has not objected to providing the requested discovery, but instead has ignored applicable provisions of CMO 29 and the United States' requests that Abbott complete its production of the sales force working files and personnel files, and provide

---

[9] With respect to the single potential date that Abbott belatedly provided for each of just 2 of the 39 members of the sales force (January 16, 2008 and January 31, 2008), the United States is not in a position to agree to the dates because Abbott has failed to produce the necessary documents pertaining to those two deponents.

[10] *See* December 18, 2007 Electronic Order, stating that all fact discovery must be completed by March 31, 2008.

dates for their depositions.

In fact, counsel for Abbott have continually agreed to produce the documents and to provide dates for the depositions, but Abbott's persistent delays in doing so is prejudicing the United States. Although the United States understands that many of the sales force are no longer employed by Abbott and that the sale force are located throughout the country (an issue also faced by the United States with respect to many of its witnesses), Abbott has had nearly eight months to complete the document production and to locate these witnesses. Despite this long time period, Abbott has yet to produce personnel files for approximately 71 members of the Alternate Site sales force, and has produced virtually no working files of the sales force to date. Further, in the seven weeks since the United States requested depositions of 39 members of the sales force, Abbott has provided only two such dates.

It is well settled that parties may obtain discovery regarding any matter, not privileged, which is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); *Matthews v. Allen*, 2006 WL 2228845 at *1 (D. Mass. 2006). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (quoting *Hickman*).

Abbott has not made a burden objection with respect to producing the requested Alternate Site sales force personnel and working files, or for making the selected sales force members available for deposition. Even if Abbott belatedly makes such a claim, the objection should fail. Documents relating to compensation and employment reviews of Abbott's Alternate Site sales force will inform the United States how Abbott evaluated and compensated its sales personnel,

and are therefore highly relevant to the inquiry of the means by which Abbott actively encouraged and rewarded its employees for marketing the spread in order to encourage sales of the Subject Drugs. Such documents are also relevant to the extent that they could demonstrate marketing incentives given to Abbott's sales force, whether spread marketing was compensated or encouraged, and whether any changes to practice or policy in marketing Abbott's drugs occurred. For example, Abbott's market share for vancomycin skyrocketed from just 15% to almost 75% (and later to almost 85%) in only five years. However, not a single document has been produced which comments upon that astounding success or rewards any employee for engineering or implementing the plan which led to such astronomic results. The United States believes that the likelihood of the existence of such documents is high. In addition, these documents would allow the United States to examine the means by which employees were actually compensated by Abbott, Abbott's marketing incentives to employees, any recognition of the spread by management and any directives to employees on how to present the spread to customers.

### III.   CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court order Abbott to produce all of its (1) Alternate Site sales force personnel files, and (2) Alternate Site sales force working files within five business days from the entry of the Court's order; and that the Court order Abbott to provide dates for the depositions of requested members of Abbott's Alternate Site sales force on a rolling basis beginning five business days from the entry of this Court's order and concluding no later than January 31, 2008, or as otherwise agreed to by the United States.

Abbott should also be ordered to work in good faith with counsel for the United States to

schedule depositions on mutually agreeable dates before March 31, 2008. The United States further requests that it be permitted to take the deposition of additional sales representatives whose names were disclosed to the United States by Abbott on December 19, 2007, or for whom Abbott produced documents following the Court's December 18, 2007 Order.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA  02210
Phone:  (617) 748-3398
Fax:  (617) 748-3272

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax:  (305) 536-4101

For the relator, Ven-A-Care of the Florida Keys, Inc.,

_____
James J. Been
The Been Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Phone:  (954) 874-1635
Fax:  (954) 874-1705

Dated:  January 7, 2008

JEFFREY S. BUCHOLTZ
ACTING ASSISTANT ATTORNEY GENERAL

/s/ Rebecca A. Ford
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, DC  20044
Phone:  (202) 514-1511
Fax:  (202) 307-3852

## EXHIBIT LIST

| | |
|---|---|
| Exhibit A | United States' Second Request for Production to Defendant Abbott, dated November 17, 2006 |
| Exhibit B | July 25, 2007 letter from R. Ford to J. Winchester |
| Exhibit C | August 16, 2007 letter from C. Geisler to R. Brooker |
| Exhibit D | September 17, 2007 letter from R. Brooker to Abbott counsel |
| Exhibit E | October 11, 2007 letter from J. Winchester to R. Brooker |
| Exhibit F | November 2, 2007 letter from R. Ford to J. Winchester and C. Geisler |
| Exhibit G | November 7, 2007 e-mail from R. Ford to J. Winchester and C. Geisler |
| Exhibit H | November 8, 2007 e-mail from R. Ford to J. Winchester and C. Geisler |
| Exhibit I | November 20, 2007 letter from R. Ford to Abbott counsel |
| Exhibit J | December 3, 2007 e-mail from J. Winchester to R. Ford |
| Exhibit K | December 3, 2007 e-mail from R. Ford to J. Winchester |
| Exhibit L | December 6, 2007 e-mail from R. Ford to J. Winchester |
| Exhibit M | December 18, 2007 e-mail from R. Ford to J. Winchester |
| Exhibit N | December 18, 2007 e-mail from J. Winchester to R. Ford |
| Exhibit O | December 18, 2007 letter from A. St. Peter-Griffith to J. Winchester |
| Exhibit P | Abbott's Seconded Amended Response to the United States' First set of Interrogatories, dated December 19, 2007 |
| Exhibit Q | December 20, 2007 e-mail from R. Ford to J. Winchester |
| Exhibit R | January 4, 2008 e-mail message from T. Tabacchi to R. Ford |