UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | Hon. Patti B. Saris |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06–CV-11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT TO PROVIDE DEPOSITION DATES FOR MEMBERS OF ITS ALTERNATE SITE SALES FORCE AND TO PRODUCE RELATED DOCUMENTS**

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | |
| | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti Saris |
| | ) | |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc., and Hospira, Inc.* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) | |

## UNITED STATES' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ABBOTT LABORATORIES, INC.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff, the United States of America, requests that the Defendant Abbott Laboratories, Inc. (hereafter "Abbott" or "Defendant") produce for inspection and copying each document listed below that is within Defendant's possession, custody or control. The United States requests that Defendant serve any objections to these requests and make the documents specified below available for inspection and copying at the Department of Justice within 30 days.

### I. INSTRUCTIONS

A.      Information and Documents sought by these requests shall include information and Documents within Defendant's possession, custody or control, or within the possession, custody or control of Defendant's agents, officers, employees, attorneys or investigators, or any person acting as one or more Defendant's representative or on one or more Defendant's behalf, including, but not limited to, any otherwise independent attorneys, accountants, or consultants.

Information and Documents sought by these requests includes information and Documents maintained at any local, regional, group, divisional or corporate office.

      B.     Whenever appropriate, the singular form of a word shall be interpreted as plural, and the masculine gender shall be deemed to include the feminine.  In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

      C.     The fact that some portion of the Documents responsive to these requests may already be in the custody of the United States does not excuse current physical production pursuant to these requests of any and all other Documents not previously produced or seized.  To the extent responsive Documents have already been produced to the United States, prior to producing additional copies of those Documents, please identify the previous production(s) which contained such Documents and, to the extent possible, where such Documents were located within those productions, by document control number.  The United States will accept specific designation of responsive Documents, by document control number, in lieu of actual production.

      D.     If the contention is made that any requested Document is not subject to discovery in whole or part by reason of privilege or otherwise, identify each such Document by date, author(s), addressee(s), recipient(s), title, subject matter, purpose, and present custody, and set forth the nature of the claimed privilege or other grounds for refusal to produce in a log consistent with the requirements of Fed. R. Civ. P. 26(b)(5).

      E.     If it is known that any requested Document or any set of Documents that may have contained Documents was, but is no longer, in Abbott's possession, custody or control, state

what disposition was made of the Document and when, and state the date the Documents were lost or destroyed.

F.     All Documents identified pursuant to these Requests shall be segregated and labeled so as to identify to which Request such Documents responds, or as maintained in the ordinary course of business, in accordance with Rule 34 of the Federal Rules of Civil Procedure.

G.     Selection of Documents from files and other sources shall be performed in such a manner as to insure that the source and location of each Document may be readily determined.

H.     File folders and other containers in which You find Documents responsive to these requests, and labels identifying those folders and other containers, shall be produced intact with such Documents.

I.     Documents attached to each other shall not be separated unless sufficient records are kept to permit reconstruction of such grouping and the separation is identified and the Documents are produced in the order in which they were found.

J.     Consistent with Rule 26(e) of the Federal Rules of Civil Procedure, these requests are continuing in character.  Defendant is thus required to amend its responses to these requests and to supplement its production if, at any time before trial, it learns that its prior responses and production are in some material respect incomplete or incorrect.

K.     All Document Requests should be responded to in accordance with the Instructions and Definitions provided herein.

L.     These requests are not intended to and should not be construed to limit or otherwise modify any other discovery request issued in this case.

M.    All Documents and data are to be produced in native electronic format wherever possible.

N.    "Category" headings below are used simply as an organizational tool and are not intended to be read in any way as limiting the Documents called for by any Request.

O.    Relevant Time Period: Unless otherwise indicated in a specific request, the requests herein refer to Documents created from January 1, 1985 to the present and Documents relating to such period even though created before that period.

## II. DEFINITIONS

A.    As used herein, the term "Documents" is used in its broadest sense, as defined in the Federal Rules of Civil Procedure, and includes the original of each existing identical or non-identical copy or draft thereof, by whatever means made, of any writing of any kind.  The term "Documents" includes writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

4

B.      As used herein, the terms "You," "Your," "Abbott," and "Defendant" refer to Abbott; to its corporate predecessors, including all merged predecessor corporations; to any other past or present subsidiary, affiliate, spinoffs or d/b/a of Abbott; and to all entities currently or formerly owned, operated, or managed by Abbott, and all current and former directors, officers, principals, partners, employees, agents, representatives, or other persons acting for or on behalf thereof, including, but not limited to, any otherwise independent attorney, accountant, investigator or consultant.

C.      The term "affiliated" shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

D.      Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

E.      The terms "accuracy," "accurate" or "accurately," when used in reference to Price Representations or sales transactions, are used with reference to whether the information is reflective of the prices actually paid in the marketplace by any purchasers, including but not limited to prices paid by wholesalers, pharmacies, oncology supply houses, group purchasing organizations or physicians.

F.      The term "Price Representations" means any statement, assertion, representation or declaration of a price of any Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, List Price or Suggested Net Trade.

G.      The term "Pharmaceutical" means any drug or other product sold by Your Hospital Products Division and/or Hospira, Inc.

5

H.     The term "Spread" is used to refer to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid by purchasers of the Pharmaceuticals) and the price or cost determined, published or arranged by the manufacturer or the reimbursement rate paid by third party payors (to purchasers of the Pharmaceuticals).  Third party payors include Medicare, Medicaid and private insurance.  Thus, the Spread is the gross profit or margin actually or potentially realized by the purchasers of the Pharmaceuticals.

I.     The term "AWP" means the price that You report, advertise, market, publish or cause to be published, directly or indirectly, as the average wholesale price for any Pharmaceutical.

J.     The term "WAC" means the price that You report, advertise, market, publish or cause to be published, directly or indirectly, as the wholesale acquisition cost or wholesaler acquisition cost for any Pharmaceutical.

K.     The term "Direct Price" means the price You report, advertise, publish or cause to be published, directly or indirectly, as the "DP" or direct price for any Pharmaceutical.

L.     The term "List Price" means the price You report, advertise, publish or cause to be published, directly or indirectly, as the list or catalogue price for any Pharmaceutical.

M.     The term "Best Price" means the price You report or otherwise disseminate as the best price for any Pharmaceutical, including the price You report for purposes of the Medicaid Rebate Program.

N.     The term "AMP"  means the price You report or otherwise disseminate as the average manufacturer's price for any Pharmaceutical, including the price You report for purposes of the Medicaid Rebate Program.

6

O.      The term "Price Publications" means  (1) the *Red Book* published by Thomson

Publishing, (2) the *Blue Book* published by First Databank, (3) the electronic or automated price

service and the Hospital Formulary Pricing Guide published by Medi-Span, Inc., and any other

pricing compendia published by those companies.

P.      The term "average or estimated acquisition cost" is the average or estimated – as

those terms are defined in any commonly-available dictionary – amount that Your direct and

indirect customers would pay to purchase Your Pharmaceuticals.

Q.      The terms "disclose," "disclosed" or "disclosure" as used below means to reveal,

make known, make public or expose.  It explicitly does not refer to the reporting of any AMPs by

You as part of the Medicaid Drug Rebate Program.

R.      The term or phrase "marketed the Spread" means the use of Spreads or potential

profit margins as one of the means of inducing or encouraging Your direct and indirect customers

to buy Your Pharmaceuticals.

S.      The term "customer" includes but is not limited to direct customers, indirect

customers, wholesalers and customers who are not direct purchasers.

## REQUEST FOR PRODUCTION

Plaintiff requests that Defendant produce the following:

1.      All Documents:

(a)      that support any denial made by You in response to any of the United States' First Requests for Admission, and

(b)      identified in response to the United States' First Set of Interrogatories.

## CATEGORY 1: CORPORATE STRUCTURE/DOCUMENT STORAGE, RETENTION AND COLLECTION

2.      Organizational chart(s) showing or describing Your corporate structure, including relationships to, between or among parent(s), subsidiary(ies), divisions, affiliate(s), regional or branch offices, and any facilities in which You have (or had) an ownership interest.

3.      Documents, such as organizational charts, sufficient to show the organization of each of Your divisions, departments, units or subdivisions that have (or had) any role in the production, manufacture, market allocation, distribution, marketing, pricing or sale of Your Pharmaceuticals.

4.      All Documents that indicate job responsibilities and lines of authority or reporting of Your personnel by position, including but not limited to the relationship and reporting responsibilities of personnel at the regional or divisional or branch offices to headquarters.

5.      All telephone directories or telephone lists for all of Your offices, divisions, and/or branches including headquarters.

6.      All Documents listing titles and job descriptions of Your directors, officers, and executives.

8

7.      Documents sufficient to explain the record layout, including any or all of the data fields, of electronic data produced in response to any of these requests, and/or the operation of any equipment or software utilized by You to maintain the responsive electronic data.

8.      All Documents that identify the names and addresses of all facilities where Your Documents are stored.

9.      All Documents that constitute, discuss or refer to any policies, directives, instructions or procedures relating to the storage of Your Documents, including but not limited to:  a) Documents that reflect the location of Your Documents; and b) Documents that pertain to the period of retention and schedule for destruction of Your Documents.

10.     All Documents that constitute, discuss or refer to any policies, directive, instructions or procedures relating to the retention, destruction, collection, organization, storage, and production of documents in anticipation of and responsive to the United States' and Relator's Requests for Production of Documents in the case captioned above.

11.     For each database and each other data management system/application used to store, process, model or analyze any data related to or derived from a sales transaction for Your Pharmaceuticals, a native electronic format copy of each data schematic, flow diagram, look up table, description/definition of data field values (including but not limited to formulas that explain how the value for a field is and was derived), and each Document that describes how to read, understand, interpret or analyze such data.

12.     In native electronic format, a copy of each report (standard or ad hoc) generated from CAS, DELPHI, HUB, Rebate, COP, GAA, or any other source regarding projected and/or actual

sales, profits and pricing (including but not limited to all prices, price discounts and price adjustments) on each of Your Pharmaceuticals.

13.     Each training, operating, and development module, manual, policy, and procedure for each database and each other data management system used to store, process, model or analyze any data related to or derived from a sales transaction for Your Pharmaceuticals.  (This request includes without limitation, GAA, SAP, CAS, DELPHI, COP, CBS, HUB, REBATE, SER, KAP, OPS, and all other sources, such as accounting, tax, product development, large account management, and trade group promotions, not listed on same).

14.     All Documents reflecting all appropriate computer queries and other pertinent computer commands utilized to create each report responsive to any of the United States' Requests for Production.

**CATEGORY 2: SALES DATA**

15.     All Documents reflecting all sales prices for Your Pharmaceuticals to all classes of trade.

16.     All Documents concerning the calculation or accounting of net sales of Your Pharmaceuticals.

17.     All Documents which reflect all sales of any of Your Pharmaceuticals at List Price or Direct price.

18.     All transactional data, including sales data, specifically reflecting, with respect to each of Your Pharmaceuticals:

      a.     the date and time thereof;

      b.     the name and address of the person or entity billed for the sale (the "bill-to-customer") and documentation identifying the parent company, if the database or

any Documents identify a subsidiary, corporate affiliate, division, satellite office or warehouse;

c.     the name and address of the person or entity to whom shipped (the "ship-to-customer") and the full name and address of the parent company, if the database or Documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse;

d.     each unique field reflecting any discounts, rebates, chargebacks, returns and other price and quantity adjustments;

e.     all customer names and respective customer classification designations (a/k/a class of trade designations); and

f.     each unique field reflecting any amount paid by the customers, in total and in dollars per unit.  This request includes each transaction price (and applicable per package size) and each extended amount field reflecting the amount billed to credited to or paid by the customer;

g.     each unique key field linkage to the source of each transaction price, which could be a contract number or a price list or price type designation used to identify or verify the appropriate price applicable to this transaction with this customer;

h.     each unique field of data related to a rebate to the customer that affected the price of the transaction, whether given in the ordinary course of the contract under which the transaction was conducted or under other terms or arrangements;

i.     each unique field of data related to any other contract prices applicable to the customer that affected the price of the transaction, whether given in the course of the contract under which the transaction was conducted or under other terms or arrangements;

j.     each unique field of data related to any other discount, concession, chargeback or other item of value to the customer that affected the ultimate price per unit sold in the transaction, whether given in the ordinary course of the contract under which the transaction was conducted or under other terms or arrangements;

11

k.  each unique inventory control number for the transaction, including each invoice number, each debit/credit memo number, and each line number for each transaction;

l.  NDC number;

m.  each applicable J-Code (Level II HCPCS);

n.  each Abbott and Hospira product number and product description;

o.  number of packages tied to this transaction;

p.  package size;

q.  extended unit type (e.g., bottle, vial, capsule or tablet);

r.  each unique field specifying information about the transaction type (such as sales, returns, adjustments, chargebacks, rebates, etc.); and

s.  any other unique field of data You consider necessary to calculate net sales price per package for each given transaction, net of all rebates, chargebacks, discounts or other adjustments.

19.  Documents which reflect or relate to the prices charged for and other terms and/or conditions of sale for Your Pharmaceuticals, including but not limited to pricing communication or contracting correspondence manuals, price lists, guidelines, matrices, policies, mark-up policies, mark-up formulas, formulas and/or any other pricing procedures, for each product line, and/or product, and for each customer, and /or customer group purchasing organization (GPO), and/or price reporting service, and/or class of trade or subgroup thereof or other Documents that are sufficient to identify:

a.  payment terms;

b.  discounts, rebates, chargebacks and /or other adjustments offered to any purchaser and/or class of trade;

c.  prices and terms of sale for wholesale purchasers;

d.  prices and/or discounts and/or rebates and/or other adjustments for chain pharmacy purchasers;

e.  prices and/or discounts and/or rebates and/or other adjustments for hospital purchasers;

f.     prices and/or discounts and/or rebates and/or other adjustments for managed care purchasers;

g.     prices and/or discounts and/or rebates and/or other adjustments for mail order purchasers;

h.     prices and/or discounts and/or rebates or other adjustments for any and all other purchaser class of trade or subgroup.

## CATEGORY 3: PRICING AND PRICE REPRESENTATIONS

20.    All Documents concerning all Your Price Representations for Your Pharmaceuticals including but not limited to all product catalogs and all price lists.

21.    All Documents that mention, evidence or reflect the impact or connection between any Price Representations and the reimbursement methodology or policy of any third party payor, including the Medicare Program, any state Medicaid Program or any insurance company.

22.    Periodic reports, summaries, or any other Documents constituting or which mention, evidence or reflect the average, mean, or median or any other summary calculations of pricing for each of Your Pharmaceuticals.

23.    Data and any Documents from which You calculated AWP, WAC, Direct Price or List Price for each of Your Pharmaceuticals which was reported to any Price Reporting Service, together with any record containing or outlining assumptions made by You in Your calculation of such prices.

24.    Documents which mention, evidence or reflect AWP, WAC, Direct Price or List Price for Your Pharmaceuticals or those of Your competitors.

25.    Documents related to, reflecting, or referring to any changes or adjustments to AWP, WAC, Direct Price and List Price for Your Pharmaceuticals.

26.     Documents related to, reflecting, referring to, describing or consisting of minutes, notes, presentations, discussions, meetings, decisions, deliberations, resolutions or directives by corporate management and/or of the Board of Directors which mention, evidence or reflect pricing, price reporting, or third party reimbursement of any and all drugs manufactured and/or marketed by You.

27.     Documents reflecting or consisting of all Price Representations, price lists, price changes, and any corrective pricing information communicated between You and any Price Publication or state Medicaid program.

28.     Any contracts existing between You and any Publisher including but not limited to any amendments thereto.

29.     All documents relating to Your decision to lower Your WACs and/or any other prices reported or submitted for Your Pharmaceuticals to the Price Publications in 2000 and/or 2001.

30.     All documents relating to or otherwise reflecting communications regarding the impact of the 2001 TAP Pharmaceuticals criminal plea and civil settlement on the prices or pricing practices for Your Pharmaceuticals.

31.     Documents discussing or concerning Your policy and practice concerning the disclosures that providers and "Pharmaceutical Benefits Managers" (known as "PBMs") may make of the drug price information they receive from You or from drug wholesalers.

32.     Exemplar agreements between You and purchasers and PBMs applying Your policies and practices which mention, evidence or reflect the disclosures such entities may make of the drug price information they receive from You or from wholesalers.

14

33.     Documents which You contend constitute an agreement or commitment, or otherwise operate to limit the dissemination of any of the prices of any of Your current or former products, including but not limited to Your employees, consultants, contractors or customers, and any governmental entities.

34.     Documents which mention, evidence or reflect any situation in which You objected to the dissemination of any of the prices of any of Your Pharmaceuticals, including but not limited to complaints to any governmental entity, employee, consultant, contractor or customer.

**CATEGORY 4: THIRD PARTY REIMBURSEMENT**

35.     All Documents that describe or explain the rules, procedures, or operations of any Medicaid reimbursement system or Medicaid claims submission process.

36.     All Documents that describe or explain the rules, procedures, or operations of any Medicare reimbursement system or Medicare claims submission process.

37.     All Documents pertaining to reimbursement for Your Pharmaceuticals by: (a) any Medicaid authority, (b)  Medicare or (c) any private or public entity basing reimbursement, in whole or part, upon Average Wholesale Price(s), Direct Price(s), wholesale cost(s), estimated acquisition cost, or usual, customary and reasonable charges or cost.

38.     All Documents reflecting communications, both internal and external, concerning AWP pricing, Direct pricing, wholesale cost(s), estimated acquisition cost, or usual, customary and reasonable charges or cost.  This Request includes not only internal communications, but communications between You and (a) any customer, (b) any other pharmaceutical manufacturer, (c) any Medicaid or Medicare representative, (d) any other governmental entity or (e) other third party payor.

15

39.     Documents reflecting, referring to, describing or consisting of communications between You and any "Healthcare Management Organizations" (known as "HMOs") and PBMs pertaining to pharmaceutical reimbursement of Your Pharmaceuticals by third parties.  This request includes but is not limited to Documents referring or pertaining to the eligibility or preferred status of any of Your Pharmaceuticals for reimbursement under any HMO or PBM pharmaceutical reimbursement formulary.

40.     All Documents reflecting communications, both internal and external, concerning reimbursement for Your Pharmaceuticals.  This Request includes not only internal communications, but also calls for the production of communications between You and (a) any customer, (b) any other pharmaceutical manufacturer, (c) any Medicaid or Medicare representative, (d) any other governmental entity or (e) other third party payor.

41.     Documents reflecting, referring to, describing or consisting of agreements, contracts and correspondence with each employee, agent, contractor, consultant, advisor, and other person or entity who sold, marketed, priced, advertised, negotiated or otherwise consulted on Your behalf or for Your benefit concerning Your Pharmaceuticals, including but not limited to compensation, salary or salary packages, wages, bonus plans, requirements, and criteria, prices or any other item of value.

42.     All Documents reflecting, referring to, describing, or consisting of communications between You and Your current employees, former employees, independent contractors, and/or third parties regarding investigations, audits, reviews or analyses which mention, evidence or reflect pharmaceutical pricing practices and/or reimbursement by the Medicare and/or Medicaid programs.

16

**CATEGORY 5: MARKETING/SALES**

43.     With respect to Your Pharmaceuticals, all Documentation of communications, contracts, presentations, proposals, modeling, bids, reconciliations, and related correspondence between Your and (a) cooperatives or Group Purchasing Organization ("GPOs") representing hospitals; (b) cooperatives or GPOs representing independent pharmacies; (c) chain drug stores which manage their own warehouses (including but not limited to CVS, Eckerd, Walgreen, Rite-Aid, Wal-Mart, and HEB); (d) home health care providers (including but not limited to Coram, Evergreen, Apria, Managed Healthcare Associates, Girling, Pharmacy Factors, Homedco, Abbey Healthcare, and related companies); (e) "source," "generic course," "select" and "autosubstitution" wholesaler programs; (f) mail-order pharmacies, (g) nursing care companies, including but not limited to Omnicare; (h) cooperatives and GPOs representing nursing care or long term care providers; (i) wholesalers and distributors; (j) a customer known as Pharmaceutical Buyers Incorporated ("PBI"); and (k) any other cooperative or GPO, including but not limited to Geri-Med, RX-Med, IV-Med, HCPA, Professional Drug Systems, Purchase Connection, Amerinet, AHT Automated Health Technologies, MHA, PBI CPN-PPO Community Pharmacy Network, and Greater New York Alternate Care Purchasing Corp. a/k/a GNYHA, later known as GNYHA - Innovatix n/k/a Innovatix.

44.     Promotional Documents and public statements, announcements, disclosures, or press releases issued by You or any or Your competitors referring to or which mention, evidence or reflect the price, distribution, marketing or sale of Your Pharmaceuticals, including but not limited to any media files, marketing or advertising files.

17

45.     All drafts or final budgets, forecasts, proposals, plans, business plans, tactics, strategic plans, strategies, sales or profit projections or goals pertaining to the sales or marketing of Your Pharmaceuticals.

46.     Documents which constitute, contain, or refer to analysis, evaluation or summary of the market allocation, sales territories, distribution, marketing, pricing or selling of Your Pharmaceuticals including but not limited to Documents referring to or which mention, evidence or reflect sales volumes, product lines, profitability, competition, market share, competitive position, or sales territories.

47.     Catalogues, sales materials, reports, memoranda, circulars, flyers, brochures, letters, bulletins, instructions or other Documents sent to or provided to sales personnel (including inside and outside sales staff, telemarketers, etc.), service representatives, customers, distributors or other persons which mention, evidence or reflect Your Pharmaceuticals, including, but not limited to, Documents referring to or which mention, evidence or reflect the "spread," reimbursement, cost, savings or profitability of Your Pharmaceuticals.

48.     Documents reflecting or relating to communications by sales or marketing personnel, or between sales or marketing personnel pertaining to, or discussing in any way, reimbursement of Your Pharmaceuticals.

49.     Documents pertaining to the sales activities of Your employees, independent contractors, or agents, including but not limited to emails, notes, reports, memoranda, "work with" reports, or other recordings which mention, evidence, reflect or describe sales calls regarding Your Pharmaceuticals.

50.     Documents relating to performance evaluations and performance based bonuses, promotions, salary increases and incentives paid to sales and marketing personnel, including but not limited to the creation, administration, award or granting of any such performance based bonuses, promotions, salary increases and incentives.

51.     Documents reflecting, referring to, describing or consisting of agreements, contracts and correspondence with each employee, agent, contractor, consultant, advisor, and other person or entity who sold, marketed, priced, advertised, negotiated or otherwise consulted on Your behalf or for Your benefit concerning Your Pharmaceuticals, including but not limited to compensation, salary or salary packages, wages, bonus plans, requirements, and criteria, prices or any other item of value.

52.     All Documents created by You, or in Your possession, that discuss or comment on the difference (or Spread) between any Average Wholesale Price (AWP) or Wholesale Acquisition Cost (WAC) and the list or all sales price (to any purchaser) of any of Your Pharmaceuticals or any Pharmaceuticals sold by other manufacturers.

53.     Documents which mention, evidence or reflect or discuss in any way the "spread" or potential profit margin to your customers on Your Pharmaceuticals or those of Your competitors.

54.     Documents which discuss, study or compare the quality, profitability, or other characteristics of Your Pharmaceuticals with any therapeutically similar competitor drugs manufactured, produced, marketed, or distributed by any other company, including but not limited to any references concerning AWP or DP prices.

19

55.     All Documents in Your possession prepared by IMS Health regarding Your

Pharmaceuticals or the competitor of Your Pharmaceuticals regarding pricing, sales or market

share.

56.     All Documents reflecting Your portion of market sales in relation to Your competitors

(market share, for instance) as to each of Your Pharmaceuticals, including but not limited to,

Documentation derived from IMS Health (a/k/a IMS).

57.     All Documents which discuss the relative quality, clinical attributes, or physical

characteristics of Your Pharmaceuticals as compared with any therapeutically similar drug.

58.     A copy of any data used by You to assess, analyze, or project market share, sales, or

profits for Your Pharmaceuticals reimbursed under any Medicare "J-Code."

59.     All Documents that mention, evidence or reflect any analysis or approval of any payment

or proposed payment to customers in cash or in kind directly or indirectly, including but not

limited to, charge backs, discounts, the Spread, rebates, free goods or services, administrative

fees, sponsorship of meetings, drug studies, educational or research grants, and off-invoice

pricing.

60.     All Documents that mention, evidence or reflect any proposed or actual payment, in cash

or in kind, directly or indirectly from You including but not limited to, chargebacks, discounts,

the spread, rebates, free goods or services, administrative fees, sponsorship of meetings,

sponsorship of speakers, drug studies, educational or research grants or off-invoice pricing.

61.     All Documents relating to agreements, including but not limited to joint ventures, loans,

leases, asset transfers, or monetary exchanges, in which the agreements include any provisions

20

wherein You play (or played) a role in seeking, receiving or sharing reimbursement for any of

Your Pharmaceutical from any third party payor.

## CATEGORY 6: GOVERNMENT CONTACTS/LITIGATION

62.     Any complaints or Documents relating to complaints filed against You with any state and

federal agencies or courts which mention, evidence or reflect pharmaceutical pricing or

marketing practices related to pricing.

63.     Any Documents which mention, evidence or reflect any reprimand, actions, or complaints

or disciplinary actions taken against You by any agency of the state and federal government.

64.     Any and all statements or responses given by You or any of Your current or former

officers, directors, employees, agents, or others on behalf of You, to any federal or state

governmental agency, authority or official regarding or which mention, evidence or reflect

pharmaceutical pricing or marketing practices.

65.     Any and all statements (whether sworn or not), deposition testimony, or other sworn

testimony, given by Your or any of Your current or former officers, directors, employees, agents,

or others on behalf of You regarding or which mention, evidence or reflect pharmaceutical drug

pricing and/or reimbursement.

66.     All documents relating to or otherwise reflecting communications between You – or any

lobbyist or advocate acting on Your behalf – and the Department of Health and Human Services

and all of its components (including the Office of Inspector General, and the Centers for

Medicare & Medicaid Services, formerly the Health Care Financing Administration) regarding

drug pricing generally or the Relevant Drugs specifically.  Your production should include, but

not be limited to, communications in connection with:  (a) CMS's Proposed Rule published at 56

21

Fed. Reg. 25792 (June 5, 1991), (b) the Medicare and Medicaid Beneficiary Protection Act of

1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg.

30818 (June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000),

and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

67.     All documents relating to or otherwise reflecting communications between You – or any

lobbyist or advocate acting on Your behalf – and Congress (including all committees and staff

members) regarding drug pricing generally or the Relevant Drugs specifically.  Your production

should include, but not be limited to, communications in connection with:  (a) CMS's Proposed

Rule published at 56 Fed. Reg. 25792 (June 5, 1991), (b) the Medicare and Medicaid Beneficiary

Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule

published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal

AB-00-86 (September 8, 2000), and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20,

2003).

68.     All documents relating to or otherwise reflecting communications between You – or any

lobbyist or advocate acting on Your behalf – and any state Medicaid agency regarding drug

pricing generally or the Relevant Drugs specifically.  Your production should include, but not be

limited to, communications in connection with:  (a) CMS's Proposed Rule published at 56 Fed.

Reg. 25792 (June 5, 1991), (b) the Medicare and Medicaid Beneficiary Protection Act of 1997,

H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818

(June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000), and (e)

CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

**CATEGORY 7: HOME INFUSION SERVICES**

69.     All Documents relating to the Home Infusion Reimbursement Services group, and all predecessor or successor groups, entities or persons that offer related services, including but not limited to customer lists.

70.     All operation manuals, training manuals, management procedures, or other Documents which governed the operation of the Home Infusion Reimbursement Services and all predecessor or successor groups, entities or persons that offer relate services.

71.     All Documents reflecting the annual revenues generated by the Home Infusion Reimbursement Services group and all predecessor or successor groups, entities or persons that offer relate services.

72.     All employee rosters and organization charts pertaining to the Home Infusion Reimbursement Services group and all predecessor or successor groups, entities or persons that offer relate services.

73.     Documents which mention, evidence or reflect any consulting services performed for You concerning drug pricing and/or Medicare or Medicaid drug reimbursement.

74.     All Documents constituting communications between You any of Your customers pertaining to or which mention, evidence or reflect Your computer program to assist Your customers or potential customers in the submission of pharmaceutical reimbursement claims, also sometimes referred to by You as Your Home Infusion Services' "CHIP" System, including but not limited to informational literature to direct and indirect customers and potential customers.

75.     All Documents pertaining to Your filing or processing of reimbursement claims on behalf of direct and indirect customers, including but not limited to all Documents referring or pertaining to Your computer program to assist Your customers or potential customers in the submission of pharmaceutical reimbursement claims, also sometimes referred to by You as Your Home Infusion Services' "CHIP" System.

76.     All Documents pertaining to Your marketing, sales, or advertising of claims submission services, including but not limited to Documents pertaining to pharmaceutical claims services, reimbursement claims services, reimbursement services, Home Infusion Reimbursement Services, Your "CHIP" software and all of Your other related services, tools, mechanisms, products or expertise.

**CATEGORY 8: RESERVE/INSURANCE INFORMATION**

77.     All Documents and drafts of Documents in which You or anyone acting on Your behalf has addressed the matter of reserves that should or might be established or maintained to cover Your contingent liability for losses arising form the instant litigation.  This request encompasses all underlying work papers, memoranda, and other Documents.

78.     Any and all Documents relating in any way to any insurance policy insuring or intending to insure You against litigation risks (excluding policies solely to cover workers compensation claims, employee health, life, and disability insurance, and property insurance), including but not limited to applications for insurance; communications of rejection for insurance coverage; opinion, coverage, and reservation of rights letters; notes regarding rejection for insurance coverage; certificates of insurance; requests for certificates of insurance; the insurance adjuster's complete claims file; payments to insurance companies; interoffice and intra office notes and

24

communications regarding insurance matters; correspondence to and from insurance companies; all notes of conversations with representatives of insurance companies; and all agreements with insurer to pay any judgment or verdict for amounts in excess of the policy limits.

79.     Any Document, internal or external to You, that mentions in any way the idea of establishing new entities, subcontracting or leasing workers, or hiring independent contractors, or taking any other action to avoid or mitigate any potential corporate liability or to insulate a parent company regarding any allegation made against You in this litigation.

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3398
Fax: (617) 748-3272

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101

For the relator, Ven-A-Care of the Florida
Keys, Inc.,


Dated: November 17, 2006

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL


/s/ Gejaa T. Gobena
Michael F. Hertz
Joyce R. Branda
Renée Brooker
Justin Draycott
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088
Fax: (202) 307-3852

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ABBOTT LABORATORIES, INC.** to be served on the following counsel by electronic mail:

James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel:  (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com
*Counsel for Relator*

Daniel Reidy, Esq.
James Daly, Esq.
Tina M. Tabacchi
Brian J. Murray
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: jrdaly@jonesday.com

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: christophercook@jonesday.com

Dated: November 17, 2006                    /s/ Gejaa T. Gobena
                                            Gejaa T. Gobena