UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456<br>) Civil Action No. 01-12257-PBS<br>) |
| **THIS DOCUMENT RELATES TO:** | ) Hon. Patti B. Saris<br>) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*,<br>CIVIL ACTION NO. 06–CV-11337-PBS | ) Magistrate Judge Marianne B. Bowler<br>) ) ) |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ABBOTT TO PROVIDE DEPOSITION DATES FOR MEMBERS OF ITS ALTERNATE SITE SALES FORCE AND TO PRODUCE RELATED DOCUMENTS**

# EXHIBIT B



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

601 D Street, N.W.
Ninth Floor
Washington, DC 20004

Telephone: (202) 514-1511
Facsimile: (202) 305-7797

JUL 2 5 2007

Mr. Jason G. Winchester
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

    Re:    *U.S. ex rel. Ven-a-Care of the Florida Keys Inc. v. Abbott Laboratories*, 06–CV-11337-PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456/Civil Action No. 01-12257

Dear Jason:

    I am writing to summarize and memorialize our July 6, 2007 meet and confer on Abbott's document production to the United States. If I have misstated any of Abbott's positions, please let me know. During our call, you indicated that you would follow-up with a letter and that you would be producing several categories of documents. Since that discussion, however, we have received no correspondence, and only a small number of documents. All we have received to date is an updated (but still incomplete) privilege log and supplemental AMP data. The vast majority of the categories of documents that you agreed to produce remain outstanding.

    **A.**     **Personnel Files of Alternate Site Product Sales ("ASPS") Sales Force**

    You indicated that Abbott has identified 90 members of its ASPS field sales force for the period 1991-2003, including Field Sales Representatives and District Managers. You stated that, although no single personnel file exists for each of these employees, Abbott is compiling personnel records, including salary and bonus information, performance evaluations, written goals and personnel documents relating to reimbursement, AWP, spread and pricing, from various sources for each of these 90 individuals. In addition to conducting a search of corporate records for such documents, you indicated that current Abbott/Hospira employees are being asked to send their personnel files to a lawyer for review, including those files that sales personnel may maintain at their home offices. You further indicated that you anticipated beginning to produce this category of documents (including a more detailed list of the types of personnel documents Abbott will be producing and a list of the 90 field sales force personnel for whom such records will be produced) the week of July 9th, and completing Abbott's production of this category of documents in the three to four week time period following our discussion. To date, we have received none of these materials.

### B. Lobbying Documents

On July 3, 2007, Abbott produced a compact disc containing approximately 1,330 pages of lobbying documents responsive to the United States' Requests For Production of Documents ("RFPs"). You stated that the documents produced by Abbott in response to RFPs 66-68 was limited to lobbying documents that mention or "would impact" subject drugs, and documents related to "specific actions" such as AWPs, spread marketing and similar conduct the Government alleges Abbott engaged in that is the subject of this litigation. You further indicated that, aside from 10 to 20 additional documents which you have determined are responsive but privileged, the July 3rd production completes Abbott's production of documents in response to the United States' RFPs 66-68.

During the meet and confer, you stated that you would update Abbott's privilege log to add the documents withheld from Abbott's recent production on the basis of privilege, and that you would send the updated privilege log to the United States by July 20, 2007. We received the updated privilege log, but ask that you confirm whether entries for all documents withheld from production to date on the grounds of privilege are listed. We also note that several pages of the Contract Marketing Basic Operating Procedures Manual have been redacted in their entirety *(see e.g.,* ABT-DOJ-0085482 - 0085495, ABT-DOJ-0085502 - 0085503 and ABT-DOJ-0085621 - 0085625), but that these redactions do not appear to be contained on the log. We further request that you update the privilege log to include entries for redacted documents, including, but not limited to, the redactions to the Contract Marketing Basic Operating Procedures Manual.

You further stated that you would update the source log to indicate the source of the lobbying documents produced (by person where possible, if not, by office or department). Finally, you indicated that you were compiling a list of the names of individuals and firms who lobbied on Abbott's behalf, as ordered by the Court, and that you would produce that list to the United States on July 19, 2007. To date, we have not received this information.

### C. Government Reimbursement Professional Executives' ("GRPE") Documents

During our call, you stated that the GRPE group came to Abbott as part of Abbott's acquisition of Knowles in mid-2001. You further indicated that Abbott counsel have spoken with members of the GRPE group and have reviewed their files. Based upon such meetings and review of documents, you represented that the GRPEs have contacts with state Medicaid programs in relation to formularies; they do not have documents related to reimbursement, spreads or AWP. As a result, we understand that Abbott will not be producing any documents from the files of GRPEs.

### D. MDL E-mails

With respect to electronic mail messages previously produced by Abbott to other plaintiffs in the MDL, you stated that the week of July 9th, Abbott would produce a subset of those messages which would be comprised of e-mails through 2003 that mention or relate to the subject drugs, AWP, spread marketing or other pattern and practice type conduct alleged in the United States' Complaint. You further stated that the volume of the documents was significant –

- 3 -

in the range of 300,000-500,000 pages, if printed. Finally, in addition to producing those e-mails, you stated that you would determine and let us know the number of pages produced by Abbott to MDL plaintiffs that Abbott is withholding from production to the United States based upon the 2003 date cut off or other relevance parameters you have employed. We have not received the e-mails or information to date.

During our meet and confer, we also discussed the appropriate format for the production of electronic records, including the MDL e-mails. You indicated that it is your intention to produce the e-mails in TIFF format, rather than in their native format. The United States reiterates its position and its request that Abbott produce records which are in Abbott's possession in electronic form, to the U.S. electronically, and in native format where available. Otherwise, unnecessary time and expense will have to be expended to make the electronic data (which is searchable in its native format) searchable. Further, the United States requests that, if you have assembled the e-mails by performing searches of key terms, that you provide a list of those search terms to us. Lastly, although we have only discussed production of documents in electronic format in connection with these e-mails, our request for native format files extends to all electronic documents. Many of the materials produced to date contain file names and paths indicating where they were created and stored on a computer, but we have not received electronic production of such items in native format. *See also* July 6, 2007 e-mail message from Mark Lavine to Jason Winchester.

### E.   Home Infusion Documents

With respect to CHIPS data, you stated that all such data has been produced to the United States, without limitation on drug or payor type. You further indicated that Abbott produced entire claims files, as they existed, and that the data includes client receivables and billing information. You stated that by the end of the week of July 9th, you would provide to us the file layouts and code tables for the CHIPs data that has been produced. To date, we have not received this information.

With respect to documents from Abbott's former Home Infusion Services, you indicated that Abbott located approximately 80 boxes of records, constituting all documents in Abbott's possession, custody or control related to Abbott Home Infusion Services. You further indicated that those boxes were being scanned in preparation for a responsiveness and privilege review, but that your office would give the review of those documents top priority. You estimated a production date for the Home Infusion documents of late July or early August. We have not received any documents to date.

### F.   Bottom 20 Percent Documents

Despite your earlier representation that there were 250 boxes containing files of the bottom 20 percent of Abbott's customers, you indicated that you have since learned that many of the documents related to the bottom 20 percent of customers have already been produced to the United States. You stated that you will be sending us a list of the Bates ranges which identify the bottom 20 percent documents already produced. You further added that Abbott located approximately 800 additional documents, which, following review for responsiveness and privilege, would be produced in the two to three week time period following our July 6th

- 4 -

discussion. We have not received any documents or information to date.

### G.  AMP Data and Documents

During the meet and confer, you stated that AMP is not calculated on paper, but rather is processed through a computer which receives data input from the COP data system. You also stated that because the volume of AMP data is tremendous – millions of lines of data each month – it is not practical to provide the data in paper format. You stated, however, that you would send 2002-2003 AMP data to supplement Abbott's prior production. Subsequently, we received a cover letter from you dated July 9th and a CD purporting to contain supplemental AMP data.

In addition, during our meet and confer, you stated that Abbott has produced its manual, which demonstrates how Abbott calculates AMP. You further stated that, while you understand that the United States wants to verify that Abbott calculated AMPs the way its manual instructed, the only practical way to do so is to produce the program that instructs the computer how to perform the calculation. You cautioned that, while you did not know if it was possible to produce the program, you were looking into it. You also represented that there are no spreadsheets or workbooks containing AMP information. Further, with respect to records pertaining to how Abbott calculated AMP (such as internal correspondence, e-mails, *etc.*) and other internal discussions of AMP, you stated that such records have been and are continuing to be produced. You also stated that you cannot give us an estimate of when this production will be complete.

So that the United States may determine how to proceed, please provide us with a detailed description of what remaining data, documents and/or programs Abbott will and will not produce with respect to this request.

### H.  Plan and Update / Marketing Documents

With respect to the United States' requests for marketing materials, you indicated that Abbott's Plan and Update documents are the business analysis documents for Abbott's Hospital Products Division ("HPD"). You stated that Abbott creates a plan in August of each year, and that it updates that plan each April. According to you, Abbott produced the annual plans and updates for 1998-2003. For earlier years, you directed us to search all boxes of documents produced by Abbott on August 10, 2006. We searched those boxes and located only the 1998 April update for HPD, the 1999 plan and update, and the 2000 April update. You also stated your belief that such documents correspond to the United States' requests for marketing documents.

You further stated that Abbott is continuing to search for other marketing documents on subject drugs that may be responsive to the United States' requests, but that you have not seen any such documents to date. We again request that Abbott produce all of the annual plans and updates from 1991 through 2003, as well as all other marketing documents responsive to the United States' requests.

-5-

### I.     Transaction Data

With respect to transaction data, you stated that Abbott is in the process of compiling a clean set of transaction data, which you would produce to the United States on or about July 16th. You further indicated that Abbott had not made a decision on whether the data will include data related to the drug Acyclovir, as Abbott may withhold production of Acyclovir data until there is a ruling on Abbott's Motion to Dismiss the United States' Amended Complaint. We have yet to receive the requested transaction data.

### J.     IMS Data

With respect to IMS data, you stated that Abbott will not produce such data to the United States because the data belongs to IMS. Instead, it is your position that the United States should request the data directly from IMS. You further indicated that contractual obligations may prevent Abbott from giving the data to the United States. During our meet and confer, Mr. Lavine requested that you provide the United States with a copy of the contract language or other document which you believe may prevent Abbott from producing the IMS data to the United States. You stated that you will consider the United States' request and respond to it at a later date. To date, you have not responded further to this request.

### K.     Medicare Working Group Documents

You represented that Abbott has completed its search for and production of Medicare Working Group documents.

The United States requested that you identify the RFPs for which Abbott has completed its production and, for those RFPs where Abbott's production is not complete, that you identify what remains to be done and when the productions will be complete. You declined to discuss Abbott's response with us during the meet and confer on an RFP by RFP basis. You also declined to meet with counsel for the United States to discuss this matter during a trip to Chicago the week of July 16th. You did, however, agree to seek more specific information from Abbott on the status of productions to various RFPs and to respond to us in more detail in the near future. As we indicated during the meet and confer, such information is important so that, where necessary, we may move to compel additional documents and proceed with Rule 30(b)(6) depositions of Ms. Klaus and other Abbott representatives. We have yet to receive from you a further response to this request.

We look forward to receiving the documents discussed above and your response to the open items referenced herein.

Sincerely,

/s/

Rebecca A. Ford

Cc:    James J. Breen, Esquire