# Exhibit 3



16728305

Oct 18 2007
2:52PM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE   LITIGATION | |
| THIS DOCUMENT RELATES TO: | MDL NO. 1456 |
| *The City of New York v. Abbott Laboratories, Inc., et al.* S.D.N.Y.  Case No. 04-CV-06054 | Civil Action No. 01-12257-PBS |
| *County of Albany v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0425 | Judge Patti B. Saris |
| *County of Allegany v. Abbott Laboratories, Inc., et al.* W.D.N.Y. Case No. 05-CV-0236 | **PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** |
| *County of Broome v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0456 | |
| *County of Cattaraugus v. Abbott Laboratories, Inc., et al.* W.D.N.Y. Case No. 05-CV-0256 | |
| *County of Cayuga v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0423 | |
| *County of Chautauqua v. Abbott Laboratories, Inc., et al.* W.D.N.Y. Case No. 05-CV-0214 | |
| *County of Chemung v. Abbott Laboratories, Inc., et al.* W.D.N.Y. Case No. 05-CV-6744 | |
| *County of Chenango v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0354 | |
| *County of Columbia v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0867 | |
| *County of Cortland v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0881 | |
| *County of Dutchess v. Abbott Laboratories, Inc., et al.* S.D.N.Y. Case No. 05-CV-6458 | |
| *County of Essex v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0878 | |
| *County of Fulton v. Abbott Laboratories, Inc., et al.* N.D.N.Y. Case No. 05-CV-0519 | |

*County of Genesee v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-00267

*County of Greene v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0474

*County of Herkimer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00415

*County of Jefferson v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0715

*County of Lewis v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0839

*County of Madison v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00714

*County of Monroe v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6148

*County of Nassau v. Abbott Laboratories, Inc., et al.*
E.D.N.Y. Case No. 04-CV-05126

*County of Niagara v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-06296

*County of Oneida v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0489

*County of Onondaga v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0088

*County of Ontario v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6373

*County of Orleans v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6371

*County of Putnam v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 05-CV-04740

*County of Rensselaer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00422

*County of Rockland v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 03-CV-7055

*County of Schuyler v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6387

| | |
|---|---|
| *County of Seneca v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6370<br><br>*County of St. Lawrence v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0479<br><br>*County of Saratoga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0478<br><br>*County of Steuben v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6223<br><br>*County of Suffolk v. Abbott Laboratories, Inc., et al.*<br>E.D.N.Y. Case No. 03-CV-12257<br><br>*County of Tompkins v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0397<br><br>*County of Ulster v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 06-CV-0123<br><br>*County of Warren v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0468<br><br>*County of Washington v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0408<br><br>*County of Wayne v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06138<br><br>*County of Westchester v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 03-CV-6178<br><br>*County of Wyoming v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6379<br><br>*County of Yates v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06172 | |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs, by their counsel, hereby request that each defendant separately produce for copying and inspection the documents described below.  The production shall occur at the offices of Kirby McInerney, LLP, 830 Third Avenue, New York, New York 10022. within 30 Days.

# I. DEFINITIONS

1.      "Document(s)" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photostated, photographed, electronic, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, images, sounds or symbols, or any combination thereof.  This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings.  Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, presentations, spreadsheets, contracts, agreements, working papers, accounts, analytical records, reports, summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronic instant messages and/or "IMs," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, electronic images, phonograph recordings, films, audio tapes, video tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by You through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, CD-ROMs, CD-RWs, DVDs, hard disks, computer chips and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by You or anyone else.

In addition, the term "document" includes "electronic data".  "Electronic Data" means the original and any non-identical copies and drafts of off-line data storage backups, archives, zip drives, zip files, disconnected hard drives, palm-held devices, servers, main-frames, any removal electronic media, mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes, instructions, comments or remarks, program change logs and activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source codes of all types, programming languages, linkers, compilers, peripheral drivers, PRF files, batch files, ASCII files, and any and all "active" file or files (readily readable by one or more computer application or forensics software); any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from Random Access Memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data). Electronic data includes any and all items stored on computer memories or computer chips, including, but not limited to, EPROM, PROM, RAM, and ROM, hard disks, floppy disks, CD-ROM, Bernoulli Boxes and their equivalent, magnetic tape of all types, microfiche, punched media or any other vehicle for digital date storage and/or transmittal, whether stored on a computer, laptop, PDA, palm pilot, blackberry, pen drive, electronic notebook, or electronic calendar, without regard to whether such electronic information storage device is owned by You or owned by an individual employee or agent. The

term also includes all Electronic Bulletin Board Services, including all levels of access, sub-boards, conferences and all information contained therein.

2.      "All documents" means every document and every non-identical copy known to You and every such document or writing which You can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of Defendant, its merger or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

3.      The term "Defendant" refers to any of the Defendants named in the First Amended Consolidated Complaint dated June 8, 2007 (the "FACC"), its officers, directors, affiliates, employees, representatives and agents (whether actual, apparent or otherwise).

4.      "You" or "Your" means the Defendant responding to these Requests and any of its subsidiaries, divisions, affiliates, officers, directors, employees or agents, including, but not limited to, attorneys and accountants.

5.      "Person" shall refer to natural persons, firms, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, departments or bureaus (government or private), and any other form of business, governmental or juridical person or legal authority .

6.      "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.

7.      "Meeting" means any discussion between two or more persons either in person or telephonically.

3

8.      "CMS" means the Centers for Medicare and Medicaid Services, a division of the United States Department of Health and Human Services ("HHS"), and includes CMS's predecessor, the Health Care Financing Administration ("HCFA"), and its fiscal intermediaries or carriers.

9.      "Communication" and "communications" are used in a comprehensive sense, and shall mean and include every conceivable manner or means of disclosure, transfer or exchange of oral or written information (in the form of facts, ideas, inquiries or otherwise) between one or more persons or entities including, but not limited to, writings, documents, inter- and intra-office memoranda, correspondence, meetings, conferences, conversations, and/or agreements, whether face-to-face, by telephone, by mail, by telecopier, by telex, by fax by computer or otherwise.

10.      "AWP" means the Average Wholesale Price reported to and/or published by a Pharmaceuitical Publication, including but not limited to First Data Bank Price Alert, Red Book, Medi-Span, Blue Book, and Professional Drug Systems.

11.      "Subject Drugs" means any of the drugs or NDCs identified in the FACC, Revised Exhibit B.

12.      "Medicaid" means the government reimbursement system for prescription pharmaceuticals under Title XVIII of the Social Security Act, 42 U.S .C . § 1396, et. seq., including but not limited to the New York State Medicaid program.

13.      "Government Investigation" refers to any ongoing or closed investigation conducted by the United States Congress (including but not limited to its committees and subcommittees), the United States Department of Justice, the United States General Accounting Office, the Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Human Services, or any other federal, state or local

4

government entity without regard to time period, and includes, but is not limited to, instances in which You have been served by such entities with Civil Investigative Demands, subpoenas, document requests or other requests.

14.      "Provider" means all pharmacy Providers as defined by N.Y. Pub. Health Law § 238.  Providers include pharmacies, specialty pharmacies, physician's offices, nursing homes, home health care companies, long-term care facilities, hospitals, clinics, pharmacy benefit managers ("PBMS" as defined below", retail operations, Group Purchasing Organizations ("GPOs") or any other person or entity providing or administering drugs to consumers or purchasing drugs for resale or distribution to consumers.  These entities include, but are not limited to, all forms of managed care organizations (i.e., Health Maintenance Organizations, Preferred Provider Organizations, Point-of-Service Plans, Independent Practice Association, Exclusive Provider Organizations, Physician-Hospital Organizations, Integrated Delivery System, Integrated Services Network, Accountable Health Plans, and all Providers of Pharmacy Services).

15      "Pharmacy Services" has the meaning provided by N.Y. Pub. Health Law § 238.

16.      "Class of Trade" means a specific type of purchaser of pharmaceuticals.

17.      "PBMs" refers to Pharmacy Benefit Managers.

18.      "NDC" means "National Drug Code."

19.      "Pharmaceutical Publication" means any pharmaceutical industry trade publication (and its publisher), whether distributed electronically, in print, by floppy disk/CD/DVD, by email or over the internet, including but not limited to: (a) publications from Thompson PDR, a division of The Thompson Corporation, compiler of the Red Book and Red Book Update (the "Red Book"); (b) publications from First DataBank Inc. ("First DataBank" or

5

"FDB"), compiler of Blue Book: Essential Directory of Pharmaceuticals, Price Probe, PricePoint Rx and National Drug Data File Plus ("NDDF"); and (c) publications from Medi-Span, a Division of Wolters Kluwer Health, compiler of the Master Drug Database, Med-File, MDDB-Select for Windows, Price Alert and Price-Chek PC ("Medi-Span").

20.     "Reported Price / Published Price" means any price reported, directly or indirectly, by a Defendant manufacturer to a Pharmaceutical Publication or any price published by a Pharmaceutical Publication.

21.     "Average Manufacturer Price" or "AMP" has the meaning provided in 42 U.S.C. § 1396r-(k)(1).

22.     "WAC" means the Wholesale Acquisition Cost,  Wholesale Net Price or WHN reported to and/or published by a Pharmaceutical Publication, including but not limited to FDB NDDF, First Data Bank Price Alert, Red Book, Medi-Span, Blue Book, and Professional Drug Systems.

23.     "DP" means the Direct Price reported to and/or published by a Pharmaceutical Publication, including but not limited to FDB NDDF, First Data Bank Price Alert, Red Book, Medi-Span, Blue Book, and Professional Drug Systems.

24.     "MAC" means Maximum Allowable Cost.

25.     "Estimated Acquisition Cost" or "EAC" has the meaning provided by the New York Social Services Law and 42 C.F.R. § 447.331 for the Relevant Time Period identified herein.

26.     "Federal Upper Limit" or "FUL" has the meaning provided by 42 C.F.R. § 447.332.

27.    "Prompt Pay Discounts" or "PPDs" means any discount given, paid or offered by any one for payment within a prescribed period of time.

28.    "Volume Discounts" means any discount given, paid or offered for the purchase of a certain amount of a Subject Drug.

29.    "Bundled Discount" means an arrangement for sale, regardless of physical packaging, under which the rebate, discount, or other price concession is conditioned upon the purchase of the same drug, drugs of different types (that is, at the nine-digit National Drug Code (NDC) level) or another product or some other performance requirement (for example, the achievement of market share, inclusion or tier placement on a formulary), or where the resulting discounts or other price concessions are greater than those which would have been available had the bundled drugs been purchased separately or outside the bundled arrangement.

30.    "Price Incentives" means anything of value provided to a purchaser which would lower the consideration paid for a drug, regardless of the time it was provided.  The term therefore includes all rebates, discounts, PPDs, Volume Discounts, Bundled Discounts, chargebacks, credits, penalties and any other incentive, program or arrangement that affects drug prices paid to and/or sold by You, including but not limited to the receipt of free goods contingent upon any purchase and/or sale requirements.

31.    "Other Price" means any price not otherwise defined herein, which was offered or reported by You during the Relevant Time Period.

32.     "Spread" or "the Spread" means the difference between the Net Price paid by the Medicaid Provider for the Subject Drugs and the Medicaid reimbursement amount.

33.    "Net Price" is the actual price paid by a Provider when all consideration given in exchange for a drug, directly or indirectly, is considered.  As such, Net Price includes, but is not

7

limited to consideration of any rebates, bonuses, discounts, charge backs, value of free goods, or educational grants received by the Provider in connection with the receipt of a drug.

## II. RULES OF CONSTRUCTION

1.      All/each- The terms "all" and "each" shall be construed as meaning both all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2.      And/or - The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.      The use of the singular form of any word shall include the plural and vice versa.

4.      The masculine gender includes the feminine.

## III . INSTRUCTIONS

1.      A document shall be deemed to be in Your control if You have the right to secure the document or copy thereof from another person or public or private entity having possession or custody thereof.  If any responsive document was, but is no longer, in existence or in Your possession, custody or control, or has been lost, discarded or destroyed, said document shall be identified as completely as possible including, but not limited to, the following information :

> (a)      the date of disposal or disposition from Your possession, custody or control;

> (b)      the manner of disposal or disposition from Your possession, custody or control;

8

     (c)     the reason for disposal or disposition from Your possession, custody or control;

     (d)     the person authorizing disposal or disposition from Your possession, custody or control;

     (e)     the document's current or last known custodian;

     (f)     the circumstances surrounding the document's disposition from Your possession, custody or control;

     (g)     generic category of the document, e.g., memo, letter, computer print-out, etc.;

     (h)     the type(s) of information contained in the document; and

     (i)     the identify of all persons having knowledge or who had knowledge of the contents of the document.

2.     Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated or received, or those which otherwise came into existence at any time during the Relevant Time Period described herein.

     (a)     Where an objection is made to any document request under Fed.R.Civ.P. 34, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.

     (b)     Where a claim of privilege is asserted in objecting to any document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

     (i)     the attorney asserting the privilege shall in the objection to the document demand, or sub-part thereof, identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law and shall indicate the state's privilege rule being invoked; and

9

(ii)     the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A)   for documents: (1) the type of the document; (2) general subject matter of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;

(B)   for oral communications : (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication ; and, (3) the general subject matter of the communication.

3.     Notwithstanding the assertion of any objection to production, any document to which an objection is raised containing non-objectionable subject matter which is relevant and material to a request must be produced, but that portion of the document for which the objection is asserted may be withheld or redacted provided that the above-requested information is furnished.

4.     This request is continuing and all documents coming into Your possession, custody or control which You would have been required to produce had they been available at an earlier time shall be produced forthwith in accordance with the Federal Rules of Civil Procedure.

5.     Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether You consider the entire document to be relevant or responsive to these requests. If You have redacted any portion of a document, stamp

10

the word "Redacted" on each page of the document which You have redacted. Redactions should be included on the privilege log described in Instruction 3.

6. The fact that a document is produced by one Defendant does not relieve any other Defendant of the obligation to produce its copy of the same document, even if the two documents are identical in all respects.

7. In producing documents, You are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

8. All documents shall be produced in the same form and in the same order as they are kept in the ordinary course of business, and shall be produced in their original file folder, envelope or other container in which the documents are kept or maintained by You if, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

9. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

10. Documents attached to each other should not be separated.

11. Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

12.     To the extent possible, all Documents shall be produced in electronic image form in the manner described below.   Each Document's electronic image shall convey the same information and image as the original Document.   Documents that present imaging or formatting problems shall be promptly identified so the parties may meet and confer to attempt to resolve such problems.

13.     Where electronic data exists in a form that is compatible with SQL server, Microsoft Access, Microsoft Excel, or is in a delimited text format such that it can easily be uploaded into one of those software programs, data should be produced in that form.   Under no circumstances should electronic data be disaggregated, produced in paper form or otherwise made more difficult to analyze using the software programs listed above.    Any such disaggregation shall be accompanied by a written explanation detailing 1) the entire contents of the original dataset and 2) the reason for the disaggregation and/or paper production.

14.     If responsive documents have already been produced to Plaintiffs herein or any other plaintiffs in MDL 1456 or any other jurisdiction, please inform as to (a) the date such production took place; (b) the bates numbers of responsive documents from that production and a cross-walk index; (c) the manner of production (i.e., electronic paper, etc.); (d) the requests herein to which such documents were responsive.

### IV. RELEVANT TIME PERIOD

The relevant time period of these document requests, unless otherwise indicated, shall be from 1992 to the date of the production and shall include all documents and information which related in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## V. REQUESTS FOR PRODUCTION

*Category 1: Investigations, Suits and Complaints*

1.     All documents produced by You, whether voluntarily or involuntary, in any Government Investigation or inquiry related to Medicare or Medicaid reimbursement and / or rebate payments.  This would include all investigations concerning AWP, FUL, WAC, DP, EAC, the reporting of Best Price, and the use of the nominal price exception to Best Price Reporting Requirements.

2.     All affidavits, declarations, depositions or other written statements provided by or for You and relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which You were a party, regarding any allegation that You overstated, misstated, or otherwise manipulated the AWP, WAC, FUL, DP, EAC and/or the Reported / Published Prices for any Subject Drug or NDC for the Relevant Time Period.  Any documents produced pursuant to this request should have a cross-walk of Bates ranges sufficient to identify which documents are identical or duplicate of documents produced in any other forum.

3.     All documents showing settlements or pleas between You and any government agency relating to drug pricing.

4.     All documents that identify any claims made or litigation brought against You regarding the issue of drug pricing generally, or any issue related to Medicaid Pharmaceutical reimbursement or rebate payments.

5.     Documents showing Your efforts to comply with the federal Department of Health and Human Services, Office of the Inspector General's Fraud and Abuse Guidelines.

13

6.      Documents showing Your efforts to comply with the federal Department of Health and Human Services, Office of the Inspector General's Pharmaceutical Marketing Guidelines.

7.      All documents reflecting, referring to, describing or consisting of communications between You and Your current or former employees regarding investigations, audits, reviews or analyses relating to pharmaceutical pricing practices or reimbursement, or Medicaid programs.

8.      All documents reflecting, referring to, describing or consisting of communications between You and Your independent contractors regarding internal investigations, audits, reviews or analyses relating to pharmaceutical pricing practices or reimbursement, or Medicaid programs.

*Category 2:  Reimbursement Prices*

9.      All documents discussing Medicaid drug reimbursement and/or rebate payments.

10.     All documents discussing how You or any other company defines AWP, WAC, FUL, DP or any Other Price You or any other companies report to Pharmaceutical Publications.

11.     All documents discussing how AWP, WAC, DP or any Other Price You report to the Pharmaceutical Publications, has been, or is currently, calculated by You.

12.     All documents relating to any actual, proposed, or prospective AWP, WAC, and/or DP announcements, changes, or lists issued by You for each Subject Drug, including the reasons, methodology and procedures used or considered by You in considering or contemplating whether to increase or decrease the AWP, and/or WAC, and/or DP of each Subject Drug.

13.     All marketing and sales materials which compare the AWP, WAC, DP, and/or FUL price, market share, rebates, pricing discounts, or incentives for each Subject Drug with the AWP, and/or WAC, and/or DP and/or FUL price of any other pharmaceutical.

14

14.     All documents relating to Your role in the publications, appearance, or advertisement of the AWP, and/or WAC, and/or DP and/or FUL of each Subject Drug in Publications during the Relevant Time Period.

15.     All contracts with Pharmaceutical Publications and all communications with Pharmaceutical Publications regarding the Subject Drugs.

16.     All documents including organizational charts that describe or list the name, title, last known address, division, department, unit and subdivision of Your employees responsible for determining the AWP, WAC, and/or DP or any other Reported Price or otherwise used for each Subject Drug during the Relevant Time Period.

*Category 3:   Provider Pricing, Practices and Discounts*

17.     Price file databases or similar databases containing prices for the Subject Drugs and/or data fields showing 1) third party reimbursement amounts 2) Provider Acquistion Cost 3) Manufacturer Sales price 4) drug price information and/or 5) customer information.  As such, these databases might show such fields as class of trade, ASP, AWP price, WAC, Direct Price, contract price, Net Price, rebates, discounts, Provider price and all other related fields.  Also provide related layouts, field definitions, data dictionaries, source tables, relationship tables, and business rules.

18.     Any computer programs, datasets, Powerpoints, DVDs, CDs, printouts, or other documents supplied to Providers that discuss discounts off AWP, WAC, FUL or any Published Price, reimbursement generally, or Spread.

19.     Any documents discussing the amount of profit a Provider could make on a Subject Drug.

20.     Any sales and marketing materials comparing the costs and/or profit for a Subject Drug that You manufactured with those of a competing or alternative drug.

21.     All training or instructional materials and manuals that You provided to Your drug sales representatives or others referencing or discussing AWP, and /or FUL. and/or WAC, and/or DP, or any Other Price and profit, and /or cost, and/or Spread, return on investment, return to practice, Medicaid or Medicare reimbursement or incentives, rebates or promotions to purchasers of Your Subject Drugs.

22.     All documents evidencing any meetings where raising the AWP, and/or FUL, and/or WAC, and/or DP, or use of AWP and/or WAC and/or FUL and/or DP in order to create demand or as a marketing tool, for any Subject Drug was discussed.

23.     All documents regarding Your analysis of the effects (financial and otherwise) of 1) pricing and/or reimbursement and 2) changes to pricing and/or reimbursement on drug sales generally, as well as in the case of specific drugs.  These effects include but are not limited to all documents referencing or discussing how government or private payor reimbursement rates may affect sales of a drug product.

(a)     For each Subject Drug (whether manufactured by You or a competitor), documents sufficient to identify during the Relevant Time Period:

(1)     The published AWP;

(2)     AMP;

(3)     WAC (wholesale acquisition cost)

(4)     Net Prices and ASPs (actual sales price, *i.e.*, the net price after all discounts);

(5)     EAC (estimated acquisition cost);

16

(6)     Earned margin (difference between AWP and actual product cost);

(7)     All documents that relate to discussions of Spreads or reimbursement formulas, using AWP, DP, WAC or FUL as an incentive; and

(8)     Documents that indicate whether the AWP, Net Price, AMP and Earned Margin include all rebates, discounts, allowances, credits and any other incentives provided to third parties.

(9)     DP (Direct Price)

(10)    All prices You reported to any Publisher.

(11)    FUL

(b)     Documents for the Relevant Time Period evidencing the price for any Subject Drug You sold to:

(1)     the VA;

(2)     Your top ten purchasers by volume of each Subject Drug whoever they may be; and

(3)     the highest price paid for that Subject Drug.

24.     All documents relating to any actual, proposed, or prospective price announcements, price changes, discount programs, rebates, incentives, penalties, or price lists issued by You for each Subject Drug, including the methodology and procedures used by You in considering whether to increase or decrease prices during the Relevant Time Period.

25.     All documents relating to the use or provision of free samples, educational grants, marketing grants, Volume Discounts, rebates, payments for specific data gathering, financial incentives, or other incentives related to any Subject Drug.

26.     All document concerning the provision or offer of free samples of any Subject Drug given, where those free samples were contingent on a purchase.

17

27.     All documents concerning sales of any Subject Drug at a price less than 10% of AMP.

28.     All data maintained in electronic form relating to the pricing, cost data and transactional sales, of each Subject Drug in the United States for the Relevant Time Period, including all rebates, discounts, allowances, chargebacks, on and off invoice adjustments and credits.  Such data should be produced in electronic form. Defendants shall also produce all documents or instructions necessary to access, process, read and use such electronic data;

29.     All databases listed by NDC that provide data concerning the AWP and/or WAC, and/or DP, and/or FUL, and the Net Price charged to all customers.

30.     All data relating to customer invoices for each Subject Drug, including, but not limited to, customer names and addresses, purchase volume, prices, discounts, rebates, incentives, free goods, and grants.

31.     All documents evidencing any agreements and/or performance of agreements between Defendants and any one or more Pharmacy Benefit Manager(s) who purchase or provide or sell or otherwise distribute the Subject Drugs.

32.     All documents concerning or relating to the methodology used to calculate AWP, and/or AMP, and/or WAC, and/or DP when a FUL is in effect.

33.     All communications concerning drug pricing and/or Medicaid reimbursement between You or from You to (a) Group Purchasing Organizations, (b) cooperatives of independent pharmacies, (c) chain drug stores, (d) home health care companies, (e) mail-order pharmacies, (f) nursing homes and nursing care companies, (g) wholesalers or distributors, and (h) pharmaceutical benefit managers (PBMs).

*Category 4: Sales Data and Financial Information*

34.     All transactional electronic data and documents for each sale of Subject Drugs, whether to wholesalers, distributors, Providers, PBMs, Government Payors of any kind and/or any other party or intermediary including but not limited to documents relating to:

> (a)     the date of sale;
>
> (b)     identification of the entity that ordered the Subject Drugs, paid for the Subject Drugs, delivered the Subject Drugs and received delivery of the Subject Drugs for each sale;
>
> (c)     the net sales price per unit for each sale;
>
> (d)     the methodologies used to determine the net sales price for each sale;
>
> (e)     any and all applicable Price Incentives for each sale;
>
> (f)     the total units sold and the total dollar amount paid for each sale;
>
> (g)     any returns or adjustments, whether in price, quantity or date of sale for each sale;
>
> (h)     any contract, purchase order or other agreement concerning each sale;
>
> (i)     profitability;
>
> (j)     any other applicable pricing information.

35.     All Documents and transactional electronic data regarding Price Incentives or any other consideration of any kind offered by You to wholesalers, distributors, Providers or other intermediaries for the sale, promotion, reimbursement, and/or purchase for each Subject Drug, including but not limited to Volume Discounts and Bundled Discounts.

36.     All Documents showing the price You charged, sold or supplied for dispensing Subject Drugs, whether the drug was sold directly by You to a purchaser or indirectly through an internet pharmacy, mail-order pharmacy, chain pharmacy or independent pharmacy, PBM, third

party payor, government payor, manufacturer, wholesaler, Provider or other intermediaries, and the methodologies used to determine such amount, including but not limited to any amount net of any Price Incentives.

37.    All electronic data and documents showing Your revenue, net income, and profitability derived from the sale of each Subject Drug, the number of units sold and to whom for each year in the Relevant Time Period.

38.    All documents showing Your ownership interests in, or profit sharing arrangements with, any pharmacy, wholesaler, or other business(es) supplying prescription drugs to Medicaid recipients.

39.    All Documents and transactional electronic data showing the return of each Subject Drug, the quantity of the returned drugs, the unit price credited for the returned drugs, the amount credited for the return, who received the return amount or credit, the original sale price charged, the original quantity of drugs purchased, which Price Incentives applied to the original purchase, and who made the original purchase.

40.    All Documents relating to, describing or showing the structure of Your electronic computer and data systems, including but not limited to identification of all computer systems, all data fields, a detailed explanation of the meaning of each data field and any corresponding calculations used to populate any data field, the operation of any equipment or software utilized by You to maintain the responsive electronic data.  This request calls for all data field value descriptions, descriptions for codes in the fields (such as code look up tables), related training, operating or maintenance materials, and any source where data regarding or derived from sales transactions of the Subject Drugs during the Relevant Time Period may reside or pass through during any processing, modeling analysis, or reporting by You.

Dated: October 18, 2007

KIRBY McINERNEY, LLP


By: /s/ Joanne M. Cicala
      Joanne M. Cicala
      James P. Carroll
      Aaron D. Hovan
      830 Third Avenue, 10th Floor
      New York, New York 10022
      Telephone:  (212) 371-6600
      Facsimile: (212) 751-2540

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on the 18th day of October, 2007 he caused a true and correct copy of the Plaintiffs' First Request for the Production of Documents on All Defendants to be delivered to counsel of record for defendants by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456. The request was posted to Lexis Nexis File and Serve's Electronic Service System.

<u>/s/Aaron D. Hovan</u>
Aaron D. Hovan, Esq.
Kirby McInerney, LLP
830 Third Avenue, 10th Floor
New York, NY 10022
(212) 371-6600