# EXHIBIT G

```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS


CITIZENS FOR CONSUME, et al   .  CIVIL ACTION NO. 01-12257-PBS
        Plaintiffs            .
                              .
        V.                    .  BOSTON, MASSACHUSETTS
                              .  MAY 16, 2007
ABBOTT LABORATORIES, et al    .
        Defendants            .
. . . . . . . . . . . . . . . .

              TRANSCRIPT OF MOTION HEARING
      BEFORE THE HONORABLE MARIANNE B. BOWLER
           UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the United States:    Rene Brooker, Esquire
                          Justin Draycott, Esquire
                          United States Department of Justice
                          601 D Street, NW
                          Patrick Henry Building, Room 9028
                          Washington, DC  20004
                          202-307-1088

For Ven-A-Care:           James J. Breen, Esquire
                          The Breen Law Firm, P.A.
                          3562 Old Milton Parkway
                          Alpharetta, GA 30005
                          770-740-0008

For Abbott Laboratories:  James Daly, Esquire
                          Jason Winchester, Esquire
                          Jones Day Reavis & Pogue
                          77 West Wacker Drive
                          Chicago, IL  60601-1692
                          312-782-3939

Court Reporter:

Proceedings recorded by digital sound recording, transcript
produced by transcription service.
```

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

I - 52

1  government have an issue here because here's how we
2  calculate AMP.  We say, you have an issue in saying that you
3  thought AWP was the real price when you're sitting there
4  getting reported to you an average manufacturer's price that
5  was much lower, regardless of how it's calculated.  That's the
6  only issue we made of it.  So we have not put the calculation
7  in issue.  There's no claim in this case relating to
8  calculation and for that reason we would oppose their motion.
9            MS. BROOKER:  Your Honor, I would just briefly
10 respond.  Their AMP data, first of all their legal arguments on
11 AMP data we completely disagree with.  Again, I think that will
12 be briefed at a later time.  Their AMP data that they submit is
13 their actual prices, that's at the very heart of this case, and
14 again, as you will see, defendants bicker with every single,
15 solitary cat, this is a very discrete specific category of
16 documents.
17           THE COURT:  To be produced.
18           MS. BROOKER:  Thank you, Your Honor.
19           The next category of documents, again, very discrete
20 and finite.  The alternate site sales force, that particular
21 group within Abbott, hospital products divisions, there's no
22 doubt, there's no dispute I don't think at all between the
23 parties that the focus of that particular group is relevant.
24 We've been taking a lot of depositions in that area, and
25 there's a finite set of individuals.  We have been asking now

1  for probably six months that Abbott tell us how many
2  individuals are in that group, in that sales force.  We have
3  not gotten a response.  I had to depose somebody to find out
4  the answer to that and learned recently a couple of weeks ago
5  at a deposition of Cliff Krajewski, who is in that particular
6  group for a number of years, that at any given point in time,
7  at least from 1990 to `96, and it suggests that this is
8  probably true for all the time period that we're talking about,
9  that there were no more than 30 field sales persons in here.
10 So we're talking about a small finite group of people, and from
11 among those materials at this time, all we're talking about are
12 specifically their written goals and evaluations that they
13 received in terms of how they received, you know, their
14 end-of-the-year evaluation, how they were compensated and so
15 forth.
16             THE COURT:  How many people are we talking about?
17             MS. BROOKER:  We're talking about, again, 30 sales
18 persons a year for over the course of at least, you know, a 10-
19 year time period for starters.  And it depends on what we see
20 in those documents whether we have to trouble shoot and, you
21 know, and ask for something broader than that.  Very finite.  I
22 also deposed two people, Cliff Krajewski and another person,
23 again both of these occurred two days in a row, a couple of
24 weeks ago.  Their testimony was very clear.  Even though
25 neither one of those are the sales people, they testified that

I - 54

1  each of them in different parts of Abbott have written very,
2  very specific written goals that they must meet each year and
3  then they have an evaluation that is in writing.  Both of them
4  have those.  Of course people save their written evaluations.
5  One man testified that all the years he's been at Abbott, I
6  think it was 25 years, he has his whole stack sitting on his
7  desk.  So not necessarily, you know, bringing this to Your
8  Honor's attention to talk about those two individuals' files,
9  but the point is, clearly the documents exist.  Clearly they're
10 probably not that hard to obtain, and again, we've been very
11 specific with Abbott.  They're relevant to show what marketing
12 incentives the sales persons were offered to receive their
13 compensation and their evaluation.  Whether spread marketing
14 was encouraged or rewarded, whether there were any changes
15 during the relevant time period to the policy or practice in
16 Abbott's marketing its drugs, what their recognition was, and
17 it does matter and particularly Daryl Dorsey, granted he is a
18 lobbyist, but he testified his goals would be very specific,
19 that he would maintain, for example that he would see to it
20 that a particular law went into effect or didn't go into effect
21 and at the end of the year his performance would be measured
22 against that very specific goal.  Presumably, the sales persons
23 are going to have no more or less specific goals than the other
24 witnesses that we've deposed.
25           Now, the only real objection Abbott has to this, it

1  can't really realistically be burdensomeness.  First of all,
2  they never really undertook other than the deposition that I
3  took to find out what the burdensome nature of it was, they say
4  the documents are confidential personnel records, but I direct
5  the Court to the MDL protective order and the one that this
6  Court entered in this case, and the protective order expressly
7  anticipates that this type of information might be produced,
8  and it specifically allows for "past or current company
9  personnel or employee information."  Abbott produces almost
10 everything in this case as highly confidential or confidential.
11 So confidentiality, you know, is just not an issue in this
12 case.  And again, for Abbott to say that this is irrelevant is,
13 I would say another category that's ridiculous.  The only last
14 thing I will say is that what Abbott did offer to produce,
15 which we still haven't even gotten, are the policies.  They
16 think that's sufficient that we get whatever their policy was.
17 Of course we want to see what the policy was, but it doesn't
18 matter until we see how it was implemented with respect to any
19 one particular employee and the policy is going to presumably
20 say something broad such as employees will have goals and they
21 will be evaluated according to those goals.  It's not going to
22 tell us whether they met those goals and whether they had to do
23 with marketing incentives and marketing the spread and so
24 forth.  So I can see no reason at all that these materials do
25 not get searched for and produced in this case.

I - 56

1           Thank you.

2           THE COURT: To be produced.

3           MR. WINCHESTER: Your Honor, could I inquire just
4 briefly about that. Is it the Court's ruling that the
5 personnel files be produced in their entirety or simply that we
6 review them and produce any material that would be responsive?

7           THE COURT: No, I think what is responsive to the
8 interrogatory because people have all other kinds of
9 information that's totally irrelevant.

10          MS. BROOKER: Yeah, I mean, there may be, we don't
11 want irrelevant stuff, Your Honor, and we're happy to, it's a
12 document request, not an interrogatory, but we're happy to
13 specify that.

14          THE COURT: You don't need copies of peoples' degrees
15 and--

16          MS. BROOKER: Exactly.

17          THE COURT: --things like that.

18          MR. WINCHESTER: But to the extent if we review a
19 personnel file and there's absolutely nothing in there from
20 which you could possibly argue that somebody was talking about
21 marketing based on spread or compensated based on marketing,
22 based on spread, it wouldn't be the Court's view they'd be
23 entitled to that file, would it?

24          MS. BROOKER: I'd like to respond to that and
25 Mr. Breen is saying he would like to respond. Your Honor, I

1  would say we will be the judge of that.  It's a finite set

2  of materials.  How they were evaluated may be inculpatory or

3  exculpatory, but it is important to see whether there are

4  specific goals involved, reimbursement, AWP.  We don't want to

5  leave this.  This is Abbott's position throughout which is

6  making discovery like pulling teeth.

7          THE COURT:  I've ruled, that which is not relevant

8  should not be produced and if there is no information in the

9  file relating to the request, the file is not produced.

10         MR. WINCHESTER:  Thank you, Judge.

11         THE COURT:  The time is getting short, so--

12         MS. BROOKER:  Yes, Your Honor, the next category of

13 documents, again, finite discrete set of documents, and

14 specifically they are, there was a Tap settlement in this case.

15 Tap was a joint venture between Abbott and another entity.  We

16 are not asking that the Court require Abbott to produce

17 everything they produced in the Tap case or everything relevant

18 to the TAP case.

19         THE COURT:  the Tap case in this Court?

20         MS. BROOKER:  Yes, Your Honor.  Very specific, at the

21 time that the Tap settlement took place, Abbott, around that

22 same exact time changed dramatically its prices which is in

23 large part the reason for the cutoff of the year 2001 for this

24 lawsuit.  When we say okay your damages is stop, we believe

25 that the Tap settlement, which again it related to a different