## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL CLASS CASES | Judge Patti B. Saris |

## DECLARATION OF STEVE W. BERMAN IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY NATIONWIDE CLASSES 2 AND 3 AGAINST DEFENDANTS ASTRAZENECA AND BMS

I, Steve W. Berman, duly declare under penalty of perjury as follows:

1.       I am a partner of Hagens Berman Sobol Shapiro LLP, resident in its Seattle, Washington, office, and I am Co-Lead Counsel for the Plaintiffs in the above-captioned matter.  I submit this declaration under penalty of perjury in support of Plaintiffs' Reply Memorandum in Support of Motion to Certify Nationwide Classes 2 and 3 Against Defendants AstraZenca and BMS.

2.       Attached hereto as Exhibit 1 is a true and correct copy of the Deposition of Daniel Ryan dated April 30, 2004 (pertinent pages only).

3.       Attached hereto as Exhibit 2 is a true and correct copy of Pirelli claims data showing that the Trust reimbursed for Taxol during the period when Taxol was a single-source drug (PIRELLI 003564-67).

4.       Attached hereto as Exhibit 3 is a true and correct copy of the Deposition of John Bell dated October 27, 2004 (pertinent pages only).

5.     Attached hereto as Exhibit 3A is a true and correct copy of claims data showing payments for Cytoxan and Vepesid produced by Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund.

6.     Attached hereto as Exhibit 4 is a true and correct copy of extracts from Teamsters Health & Welfare Fund of Philadelphia and Vicinity ("THWF") prescription claims data.

7.     Attached hereto as Exhibit 5 is a true and correct copy of a printout of THWF J-Code drug payments.

8.     Attached hereto as Exhibit 6 is a true and correct copy of the Deposition of William J. Einhorn dated February 25, 2004 (pertinent pages only).

8.     Attached as Exhibit 7 are substitute Tables 1 and 2 for Appendix C to Plaintiffs' opening memorandum.  These tables have been updated to include the UDTPA in Maine.

Executed this 1st day of February, 2008.


                              /s/ Steve W. Berman
                              STEVE W. BERMAN

001534-16  220823 V1

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF STEVE W. BERMAN IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY NATIONWIDE CLASSES 2 AND 3 AGAINST DEFENDANTS ASTRAZENECA AND BMS**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 1, 2008, a copy to LexisNexis File & Serve for posting and notification to all parties.

By       **/s/ Steve W. Berman**
       Steve W. Berman
       **HAGENS BERMAN SOBOL SHAPIRO LLP**
       1301 Fifth Avenue, Suite 2900
       Seattle, WA  98101
       (206) 623-7292

001534-16  220823 V1

# Exhibit 1

Daniel Ryan                                    April 30, 2004
Volume II                    Chicago, IL

Page 289

          IN THE UNITED STATES DISTRICT COURT

          FOR THE DISTRICT OF MASSACHUSETTS


IN RE PHARMACEUTICAL          )

INDUSTRY AVERAGE WHOLESALE )   MDL No. 1456

PRICE LITIGATION          )   Civil Action: 01-CV-12257-PBS

THIS DOCUMENT RELATES TO   )

ALL CLASS ACTIONS          )


          Continued Deposition of DANIEL RYAN, taken

before GREG S. WEILAND, CSR, RMR, CRR, Notary Public,

pursuant to the Federal Rules of Civil Procedure for

the United States District Court pertaining to the

taking of depositions, at Suite 900, 11 South

LaSalle Street, in the City of Chicago, Cook County,

Illinois, commencing at 9:35 o'clock a.m., on the

30th day of April, 2004.

eb8faccc-095c-4648-a84f-d36a7fa6ae9f

Daniel Ryan                                    April 30, 2004
Volume II                    Chicago, IL

---

Page 466

1  other than just a reflection of what their proposal
2  analysis showed.
3      Q.  Okay.  Go to Exhibit UFCW 003 of this document.
4  I think it's 3522 to 23.
5          Do you see there are a number of bar
6  charts, and across the bar charts are an upper
7  benchmark and a lower benchmark?
8          Do you see that?
9      A.  Uh-huh.
10     Q.  And it looks like what Segal is doing here
11 is that it is comparing the various bids by the
12 PBMs, in this case I guess discount to AWP for a
13 brand name drug, and saying this is what the offers
14 are, and then it offers an upper benchmark and a
15 lower benchmark.
16         Was there any discussion about how these
17 benchmarks were arrived at?
18     A.  I don't remember what the benchmark is.
19     Q.  Did Segal ever tell you in words or in
20 substance that they knew a lot about the marketplace
21 and they knew what people in third-party payer
22 positions were getting in terms of discounts from

---

Page 467

1  PBMs off of AWP?
2          MS. HARTWEG:  Objection to form.
3          THE WITNESS:  I think they did make such
4  an inference, if nothing else.
5  BY MR. TRETTER:
6      Q.  Okay.  And does that help you with where
7  these benchmarks might have come from?
8      A.  It gives me a clue, but I still can't
9  connect the dots.
10     Q.  Okay.  Was that a concern of yours or of
11 the trustees, that whatever UFCW ended up paying
12 that it was similar, if not better to, better than
13 what others similarly situated were paying in the
14 marketplace?
15         MS. HARTWEG:  Objection based on it calls
16 for speculation.
17         THE WITNESS:  I don't remember that being
18 expressed specifically.
19 BY MR. TRETTER:
20     Q.  Was that something that you yourself
21 wanted to make sure of?
22     A.  I didn't necessarily want to make sure of

---

Page 468

1  it.  The best price we can get is the best deal we
2  can get, but certainly you would want to be -- you
3  would question if you were markedly different from
4  what other people your size were getting.
5      Q.  When you were considering at this time in
6  2002 or earlier in 2000 a PBM, did you have
7  non-financial considerations in mind as you
8  evaluated the PBMs?
9      A.  Yeah, performance.
10     Q.  And what do you mean by performance?
11     A.  Well, specifically we mentioned before
12 NMHC's -- excuse me, NPA's inability to handle our
13 open enrollment type of an arrangement, the ability
14 of people to see prescriptions on line realtime so
15 that we could answer questions if they came to us,
16 these things that were important to us also.
17     Q.  Okay.  Any other performance-related
18 issues that were important to the Fund?
19     A.  There were a lot of performance-related
20 issues that are important, but we hadn't seen any
21 failings.  They have to be able to get cards out on
22 time, they have to answer the phone.  We hadn't

---

Page 469

1  gotten any complaints along those lines.
2      Q.  If you go to Exhibit UFCW 004 in this same
3  document, there's a commentary by Segal.  In the
4  middle of the page, it says what's behind the
5  escalating prescription drug costs.  The first thing
6  they say is increased patient demand.
7          Would you say that's another way of saying
8  utilization?
9      A.  I would.
10     Q.  Do you see any mention in escalating
11 prescription drug costs to average wholesale prices?
12         MS. HARTWEG:  Would you please repeat the
13 question.
14         MR. TRETTER:  Well, your objection will be
15 the document will speak for itself, so I've given
16 you your objection.
17         MS. HARTWEG:  I'd still just like to hear
18 the question.  Sorry.
19         (Question read.)
20         MS. HARTWEG:  I adopt Lyndon's objection.
21         THE WITNESS:  I don't see any.
22 BY MR. TRETTER:

---

46 (Pages 466 to 469)

eb8faccc-095c-4648-a84f-d36a7fa6ae9f

Daniel Ryan                                          April 30, 2004
Volume II                          Chicago, IL

|  | Page 470 |
|---|---|

1    Q.  Did you have any discussions with Segal
2  about that subject, whether average wholesale prices
3  or the way prices are reported by manufacturers was
4  influencing UFCW's and other third-party payers
5  prescription costs?
6    A.  I don't remember any.
7    Q.  Have you ever seen any literature to that
8  effect?
9        MS. HARTWEG:  Objection to form.
10       THE WITNESS:  I don't think so.
11 BY MR. TRETTER:
12   Q.  Can you explain to me why you believe that
13 the way manufacturers report prices would increase
14 your prescription drug costs if the discounts off of
15 AWP are competitively negotiated?
16       MS. HARTWEG:  Objection to form, and
17 assumes facts not in evidence.
18       MR. TRETTER:  Okay.  Well, I think the
19 last part about the discounts being competitively
20 negotiated is in evidence.
21       MS. HARTWEG:  Well, we can certainly have
22 a dispute about that.

|  | Page 471 |
|---|---|

1        MR. TRETTER:  Okay.  Then you have your
2  objection.
3        THE WITNESS:  I think that if the core
4  price reported was lower, then our cost would be
5  lower.
6  BY MR. TRETTER:
7    Q.  Okay.  Why?
8    A.  Well, I think that if the universe of the
9  drug reporting information is being inflated, it can
10 have the result of increasing our costs.  I can't
11 assume that just because a bid process delivers a
12 certain discount off of AWP that if AWP was reduced
13 the discount amount would go down.
14   Q.  Do you agree that there are buyers of
15 prescription drug coverage that have more insured
16 lives than UFCW?
17   A.  There are.
18   Q.  And does it make sense to you that people
19 with more insured lives may be able to get better
20 deals than the UFCW might be able to get?
21       MS. HARTWEG:  Objection, calls for
22 speculation.

|  | Page 472 |
|---|---|

1        THE WITNESS:  I don't know if they can.
2
3  BY MR. TRETTER:
4    Q.  Well, you testified previously that you
5  were able to get certain discounts from
6  manufacturers -- strike that.
7        You thought that you would be able to get
8  certain rebates from manufacturers as UFCW, but you
9  might do better with a PBM.
10   A.  On the rebates, we didn't think that we
11 would -- we didn't think we would necessarily be
12 able to get the rebate attention because of our
13 size, and we didn't have the expertise to negotiate
14 them.
15       With the initial July 1999 report, it was
16 a two-prong problem, and part of Segal's review of
17 the market was for someone to do the job of a
18 consultant, to help us negotiate rates, negotiate
19 formularies, define the formulary.
20       When Janice Rubin resigned or retired and
21 we made a decision to go with a PBM, that was for a
22 lot of reasons, including picking up the expertise

|  | Page 473 |
|---|---|

1  and the numbers, but it wasn't the only reason.
2    Q.  Right.  And I believe you testified that
3  the reason you thought you could get better rebates
4  by going with a PBM was part because the PBM has
5  more buying power because it consolidates lots of
6  third-party payers.
7    A.  I believe I said that, yes, size, but also
8  expertise.
9    Q.  And all I'm asking you is, isn't that also
10 true from the perspective of buying prescription
11 drug coverage?  In other words, if it's also true
12 that the PBMs can exact more from the manufacturers
13 than just the UFCW, isn't it also true that just as
14 a general proposition that people with lots of
15 insured lives that go to the PBM can get a better
16 deal from the PBM than you can?
17       MS. HARTWEG:  Objection, calls for
18 speculation.
19       THE WITNESS:  It may or it may not be.
20 BY MR. TRETTER:
21   Q.  If manufacturers reported true average
22 selling prices let's say across all their customer

47 (Pages 470 to 473)

eb8faccc-095c-4648-a84f-d36a7fa6ae9f

# Exhibit 2

| EMPLOYEE | DEPENDENT (IF APPLICABLE) | RELATIONSHIP | 87-388 |
| | | | 640    M |

| | F | | |
| PROVIDER TAX I.D. #: | PATIENT ACCOUNT # | E | |
| | | 10 | № 038160 |

02/04/2000
DATE ISSUED

PIRELLI ARMSTRONG TIRE CORPORATION RETIREE REDACTED BENEFITS TRUST CLAIMS ACCOUNT
P.O. BOX 1449 • GOODLETTSVILLE, TN 37070-1449

REDACTED

PAY    ********552 DOLLARS AND 70 CENTS**          DOLLARS $  ****552.70**

TO THE
ORDER
OF

┌                                        ┐          0038160
  HEMATOLOGY ONCOLOGY MED GRP
  7130 N MILLBROOK
  #100
  └ FRESNO              ,CA 93720 ┘

AUTHORIZED SIGNATURE

NON NEGOTIABLE

THE BANK OF NASHVILLE
NASHVILLE, TN 37019

AUTHORIZED SIGNATURE

⑊038160⑊  ⑊064003881⑊  0119423⑊

---

# PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST CLAIMS ACCOUNT
P.O. Box 1449
Goodlettsville, Tennessee 37070-1449
Phone (615) 859-0131   Toll-Free 800-831-4914
## EXPLANATION OF BENEFITS

| FROM DATE | TO DATE | CHARGES SUBMITTED | DISCOUNT | NON COVERED | OCCURRENCE DEDUCT | CHARGES ALLOWED | BASE PLAN PD | COVERED MAJ MED | DEDUCT TAKEN | % | MAJ MED PAID | PATIENT LIAB | COB AMT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/23/1999 | 12/23/1999 | 1921.04 | .00 | .00 | .00 | 352.70 | .00 | 352.70 | .00 | 100 | 352.70 | .00 | 1568.34 |
| | | 1921.04 | .00 | .00 | .00 | 352.70 | .00 | 352.70 | .00 | | 352.70 | .00 | 1568.34 |

NON-COVERED CODES:

COMMENTS:
FUND LIABILITY PAID AFTER MEDICARE PAYMENT.

| | 1999 | 2000 | | 1999 | 2000 |
|---|---|---|---|---|---|
| ACCUMULATED MAJ MED DEDUCT | .00 | .00 | ACCUMULATED DENTAL DEDUCTIBLE | .00 | .00 |
| | | | DENTAL PAID/YEAR | .00 | .00 |
| MAJ MED OUT-OF-POCKET EXPENSE | .00 | .00 | DENTAL FAMILY PAID/YEAR | .00 | .00 |
| MAJ MED PAID/YEAR | 5322.69 | .00 | VISION PAID/YEAR | .00 | .00 |
| MAJ MED FAMILY/DEDUCT | .00 | .00 | | | |
| MAJ MED LIFE-TIME PAID | 7946.75 | | | | |

REDACTED

PROVIDER: HEMATOLOGY ONCOLOGY MED GRP

DXN   CLAIM NUMBER:   30454

REDACTED

SOUTHERN BENEFIT

HIGHLY CONFIDENTIAL
PIRELLI 003564

APPROVED OMB-0938-0008

S

PLEASE
DO NOT
STAPLE
IN THIS
AREA

PIRELLI ARMSTRONG/RETIREE   (199393)
WE BILL 2ND
P.O. BOX 1449
GOODLETTSVILLE, TN  37070

## HEALTH INSURANCE CLAIM FORM

PICA                                                                PICA

**1. MEDICARE   MEDICAID   CHAMPUS   CHAMPVA   GROUP HEALTH PLAN   FECA BLK LUNG   OTHER** (1 IN ITEM 1)
(Medicare #)   (Medicaid #)   (Sponsor's SSN)   (VA File #)   (SSN or ID)   (SSN)   X (ID)

**3. PATIENT'S BIRTH DATE**   05 | 06 | 1931  M [X]   **SEX**   F [ ]

**6. PATIENT RELATIONSHIP TO INSURED**   Self [X]   Spouse [ ]   Child [ ]   Other [ ]

**8. PATIENT STATUS**   STATE   Single [ ]   Married [ ]   Other [ ]

Employed [ ]   Full-Time Student [ ]   Part-Time Student [ ]

**10. IS PATIENT'S CONDITION RELATED TO:**

CITY

a. EMPLOYMENT? (CURRENT OR PREVIOUS)   YES [ ]   NO [X]

b. AUTO ACCIDENT?   YES [ ]   NO [X]   PLACE (State)

c. OTHER ACCIDENT?   YES [ ]   NO [X]

**10d. RESERVED FOR LOCAL USE**

b. OTHER **REDACTED**   SEX   05 | 08 | 1931   M [X]   F [ ]

REDACTED

b. EMPLOYER'S NAME OR SCHOOL NAME   RETIRED

c. INSURANCE PLAN NAME OR PROGRAM NAME   PIRELLI ARMSTRONG/RETIREE

**c. EMPLOYER'S NAME OR SCHOOL NAME**

**d. INSURANCE PLAN NAME OR PROGRAM NAME**   MEDICARE ASSIGNED CLAIMS

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?   YES [X]   NO [ ]   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
**12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE** I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED **SIGNATURE ON FILE**   DATE

**13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE** I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED **SIGNATURE ON FILE**

**14. DATE OF CURRENT:** ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP)   MM | DD | YY

**15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS.** GIVE FIRST DATE   MM | DD | YY

**16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION** FROM MM | DD | YY   TO MM | DD | YY

**17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE**   WITTLINGER, PETER

**17a. I.D. NUMBER OF REFERRING PHYSICIAN**   A47730

**18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES** FROM MM | DD | YY   TO MM | DD | YY

**19. RESERVED FOR LOCAL USE**

**20. OUTSIDE LAB?**   YES [ ]   NO [X]   $ CHARGES

**21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)**

1. 1625
2. 78701

E.O.B. ATTACHED

**22. MEDICAID RESUBMISSION** CODE   ORIGINAL REF. NO.

**23. PRIOR AUTHORIZATION NUMBER**

| 24. A DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B Place of Service | C Type of Service | D PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E DIAGNOSIS CODE | F $ CHARGES | G DAYS OR UNITS | H EPSDT Family Plan | I EMG | J COB | K RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 122319991 | 1223199 | 11 | | 99213 | 25 | 1 | 4635 | 01 | | | | O0G391910 |
| 122319991 | 1223199 | 11 | | 96410 | 59 | 1 | 6518 | 01 | | | | O0G391910 |
| 122319991 | 1223199 | 11 | | 96412 | 59 | 1 | 4878 | 01 | | | | O0G391910 |
| 122319991 | 1223199 | 11 | | J9045 | | 1 | 41560 | 04 | | | | O0G391910 |
| CARBOPLATIN | | | | | | | | | | | | |
| 122319991 | 1223199 | 11 | | J1100 | | 1 | 113 | 01 | | | | O0G391910 |
| DEXAMETHASONE | | | | | | | | | | | | |

CONTINUED ON NEXT PAGE

**25. FEDERAL TAX I.D. NUMBER**   942356945   SSN [ ] EIN [X]

**26. PATIENT'S ACCOUNT NO.**   18883

**27. ACCEPT ASSIGNMENT?** (For govt. claims, see back)   YES [X]   NO [ ]

**28. TOTAL CHARGE**   $ 57704

**29. AMOUNT PAID**   $

**30. BALANCE DUE**   $ 57704

**31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS** I certify that the statements on the reverse apply to this bill and are made a part thereof.)

12-29-1999
SIGNED PETER S WITTLINGER MD

**32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)**

**33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #**
HEMATOLOGY ONCOLOGY MED GRP
7130 N MILLBROOK #100
FRESNO, CA  93720
PIN# O0G391910   GRP# ZZZ75882Z

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)   **PLEASE PRINT OR TYPE**

FORM HCFA-1500  (12-90)
FORM OWCP-1500   FORM RRB-1500

790-0116 (12/90) (OCR) 1 pt.

HIGHLY CONFIDENTIAL
PIRELLI 003565

S

PLEASE
DO NOT
STAPLE
IN THIS
AREA

PIRELLI ARMSTRONG/RETIREE   (199393)
WE BILL 2ND
P.O. BOX 1449
GOODLETTSVILLE, TN   37070

APPROVED OMB-0938-0008

## HEALTH INSURANCE CLAIM FORM

| 1. MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | PICA |
|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | ☒ (ID) | OR PROGRAM IN ITEM 1 |

3. PATIENT'S BIRTH DATE  MM 05 DD 08 YY 1931  SEX M ☒ F ☐   Middle Initial

6. PATIENT RELATIONSHIP TO INSURED   Self ☒  Spouse ☐  Child ☐  Other ☐

8. PATIENT STATUS   Single ☐  Married ☐  Other ☐
Employed ☐  Full-Time Student ☐  Part-Time Student ☐

10. IS PATIENT'S CONDITION RELATED TO:
a. EMPLOYMENT? (CURRENT OR PREVIOUS)  ☐ YES  ☒ NO
b. AUTO ACCIDENT?  ☐ YES  ☒ NO   PLACE (State)
c. OTHER ACCIDENT?  ☐ YES  ☒ NO

a. INSURED'S DATE OF BIRTH   MM DD YY   SEX M ☐ F ☐

b. OTHER INSURED'S DATE OF BIRTH  SEX M ☐ F ☐

**REDACTED**

c. EMPLOYER'S NAME OR SCHOOL NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME
MEDICARE ASSIGNED CLAIMS

10d. RESERVED FOR LOCAL USE

**REDACTED**

b. EMPLOYER'S NAME OR SCHOOL NAME
RETIRED

c. INSURANCE PLAN NAME OR PROGRAM NAME
PIRELLI ARMSTRONG/RETIREE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
☒ YES  ☐ NO   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.
SIGNED  SIGNATURE ON FILE   DATE

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.
SIGNED  SIGNATURE ON FILE

14. DATE OF CURRENT:  MM DD YY  ◄ ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS GIVE FIRST DATE  MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION  FROM MM DD YY  TO MM DD YY

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
WITTLINGER, PETER

17a. I.D. NUMBER OF REFERRING PHYSICIAN
A47730

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES  FROM MM DD YY  TO MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?  ☐ YES  ☒ NO   $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. 1625
2. 78701
3.
4.

22. MEDICAID RESUBMISSION  CODE   ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

*C.O.B. ATTACHED*

| 24. A DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B Place of Service | C Type of Service | D PROCEDURES, SERVICES, OR SUPPLIES CPT/HCPCS MODIFIER | E DIAGNOSIS CODE | F $ CHARGES | G DAYS OR UNITS | H EPSDT Family Plan | I EMG | J COB | K RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1223 1999 | 1223 1999 | 11 | | J1626  KYTRIL/DX-1625 | 2 | 17658 09 | | | | | 00G391910 |
| 1223 1999 | 1223 1999 | 11 | | J9265  PACLITAXEL | 1 | 113730 06 | | | | | 00G391910 |
| 1223 1999 | 1223 1999 | 11 | | J7050  NORMAL SALINE | 1 | 3012 03 | | | | | 00G391910 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

| 25. FEDERAL TAX I.D. NUMBER  SSN  EIN | 26. PATIENT'S ACCOUNT NO. | 27. ACCEPT ASSIGNMENT? (For govt. claims, see back) | 28. TOTAL CHARGE | 29. AMOUNT PAID | 30. BALANCE DUE |
|---|---|---|---|---|---|
| 942356945  ☐ ☒ | 18883 | ☒ YES  ☐ NO | $ 134400 | $ | $ 134400 |

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
SIGNED  PETER S WITTLINGER MD   DATE  12-29-1999

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)

33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE
HEMATOLOGY ONCOLOGY MED GRP
7130 N MILLBROOK #100
FRESNO, CA  93720
PIN# 00G391910   GRP# ZZZ75882Z

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)   **PLEASE PRINT OR TYPE**

FORM HCFA-1500   (12-90)
FORM OWCP-1500    FORM RRB-1500

790-0116 (12/90) (OCR) 1 pt.

HIGHLY CONFIDENTIAL
PIRELLI 003566

NATIONAL HERITAGE INSURANCE COMPANY
PROVIDER #: 777758827
CHECK/EFT #:172275504          01/10/00

172275504 800000180
HEMATOLOGY ONCOLOGY MED GROUP OFF F
PAGE #: 9 OF 13

MEDICARE
REMITTANCE
NOTICE

| PERF PROV | SERV DATE | POS HOS | PROC | MODS | BILLED | ALLOWED | DEDUCT | COINS | GRP/RC-AMT | PROV PD |
|---|---|---|---|---|---|---|---|---|---|

00G391910   1223 122399 11
00G391910   1223 122399 11   1 G0001
PT RESP   0.00   CLAIM TOTALS

ACNT 18883.3
ICN 029936369160 ASG Y MOA MA01 MA15
REDACTED

00G391910 ... CLAIM TOTALS (multiple lines, REDACTED)
ACNT 18883

PT RESP 352.70

ACNT 18883.3   ICN 0599362900691 ASG Y MOA MA15
REDACTED

00G391910 1223 122399 11   1 99213
PT RESP  8.48   CLAIM TOTALS
CLAIM INFORMATION FORWARDED TO: AARP/PRUDENTIAL

00G391910 1223 122399 11   1 85025
00G391910 1223 122399 11   1 G0001
PT RESP  0.00   CLAIM TOTALS

00G208700 1214 121499 11   1 80054
PT RESP 0.00 CLAIM TOTALS

00G391910 ... 11   1 80049
PT RESP 0.00 CLAIM TOTALS

00G648750 ... BLUE CROSS OF CALIFORNIA
PT RESP 443.63

00G648750 ... BLUE CROSS OF CALIFORNIA
PT RESP 283.47

RECEIVED JAN 17 2000

HIGHLY CONFIDENTIAL
PIRELLI 003567

# Exhibit 3

John Bell                                                          October 27, 2004

Houston, TX

1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS

2

_____
3  IN RE PHARMACEUTICAL INDUSTRY      *  MDL NO. 1456
   AVERAGE WHOLESALE PRICE            *  CIVIL ACTION NO.
4  LITIGATION                         *  01-CV-12257-PBS
_____  *
5

6

7  ************************************************************

8                  DEPOSITION OF JOHN BELL

9                    October 27, 2004

10 ************************************************************

11

12

13      DEPOSITION OF JOHN BELL, produced at the instance of the

14  Defendant, and duly sworn, was taken in the above-styled and

15  numbered cause on the 27th day of October, 2004, from 1:05

16  p.m. to 4:52 p.m., before Annette Peltier, CSR, in and for the

17  State of Texas, reported by stenographic machine, at the

18  offices of Zenith Administrators, 9555 West Sam Houston

19  Parkway, Suite 400, Houston, Texas, pursuant to the Federal

20  Rules of Civil Procedure and the provisions stated on the

21  record.

22

John Bell                                                    October 27, 2004

Houston, TX

---

Page 30

1  appropriate professionals to enter into specific contracts
2  once the board approves and authorizes them.
3          Who are the professionals that you are referring
4  to?
5     A  Well, any time we're going to execute a contract,
6  we're going to turn it over to our attorney.
7          Up until the last year, we had two separate
8  attorneys; and our other attorney had passed away.  And so, it
9  could have been -- depending on the time reference here you're
10 looking at, it could have actually been handled through both
11 attorneys.  It could have been handled through one attorney.
12 It could have been handled through an attorney and Bill
13 Rhodes, depending on the information gathering that was
14 necessary for the attorney to make the decision.  So, there
15 could be a lot of different participants in there.
16    Q  And who are CMHV's attorneys?
17    A  Right now it's Doug Selwyn.  We have one.
18    Q  What firm is he from?
19    A  Davis and Selwyn.
20       Davis is the one that passed away; so, I don't
21 know if he's going to change that name or not.
22    Q  And previously you mentioned there were other

---

Page 31

1  attorneys.  Who were they?
2     A  Richard Davis.
3     Q  Of what firm?
4     A  Davis and Selwyn.
5     Q  Sure.
6          And then previous to that?
7     A  I have no knowledge of any other attorneys during my
8  time.
9     Q  Okay.  Are you currently employed in any other union
10 or organization -- or excuse me.
11       Are you currently part of any other union or
12 organization besides CMHV?
13    A  No.
14    Q  Where are you currently employed?
15    A  I'm employed through the Texas Carpenter and
16 Millwright Regional Council, assigned to Houston.
17    Q  Can you please describe your education to me,
18 post-high school?
19    A  Post-high school?
20       Two years -- two years of college, four years of
21 apprenticeship, multiple management training seminars since
22 I've been with the Brotherhood, multiple organizing seminars

---

Page 32

1  since I've been with the Brotherhood -- multiple as in dozens.
2     Q  Where did you --
3     A  And then International Foundation courses.
4     Q  Where did you do your two years of college?
5     A  Morningside College, Sioux City, Iowa.
6     Q  Morningside?
7     A  Uh-huh.
8     Q  And your apprenticeship, where was that?
9     A  Houston, Texas.
10    Q  With what entity?
11    A  With the Carpenters.
12    Q  Other than the seminars you mentioned, did you take
13 any other courses or have any other training with regard to
14 the health care industry?
15    A  No.
16    Q  When did you first hear the term "AWP" or "average
17 wholesale price"?
18    A  My guess is shortly after I became a part of this
19 board here.
20       There's a lot of acronyms when you serve on a
21 pension and health and welfare board, and I was trying to
22 learn as many acronyms as I could to get myself up to speed

---

Page 33

1  when I first got over here.
2     Q  So, you're talking about the 1993 time frame, then?
3     A  Yes, ma'am.
4     Q  Okay.  And in what context did you hear the term
5  "AWP" or "average wholesale price"?
6     A  In the context of speaking about pharmaceuticals.
7     Q  And what did you understand the term to mean?
8     A  I understood it to be the -- a benchmark in the
9  industry where -- upon which the prices were based.
10    Q  What prices are you referring to?
11    A  Pharmaceutical costs for participants.
12    Q  Did you understand that to be an actual average?
13       You mentioned "benchmark".  Can you clarify your
14 meaning of the term "benchmark"?
15    A  To me a benchmark is an actual average.
16    Q  It is an actual average?
17    A  To me, yes.
18    Q  And from where did you get your understanding that
19 AWP would be an actual -- or the benchmark, AWP, would be an
20 actual average?
21    A  Whenever we looked at professional costs and we had
22 to send out RFPs, looking for new providers and whatnot,

---

9 (Pages 30 to 33)

John Bell                                                    October 27, 2004
Houston, TX

Page 34

1  basically we'd have a breakdown.  And sometimes in the
2  breakdown would be discounts off the average wholesale price.
3      Q    Sure.
4            And so, in looking at those, you still haven't
5  answered the question?
6            MS. CORTES:  Can you read the question
7  back, please?
8            (Whereupon the following question was read
9  back:
10           "QUESTION:  And from where did you get your
11  understanding that AWP would be an actual -- or the benchmark,
12  AWP, would be an actual average?")
13     A    From looking at those and from questioning the
14  attorneys and the professionals that we had on the table and
15  basically see -- what we want to do is make sure we're
16  comparing apples to apples when we're looking at price
17  structure and how it's going to affect our participants.
18     Q    (BY MS. CORTES)  Which professionals are you
19  referring to?
20     A    Richard Davis, Attorney Selwyn, Michael Rodriguez.
21     Q    Michael Rodriguez is from Towers Perrin?
22     A    Uh-huh, yes, ma'am.

Page 35

1      Q    And what did Mr. Rodriguez say to you with regard to
2  the definition of "AWP"?
3      A    My recollection is that it was the benchmark price.
4  That's why we were making comparisons, apples to apples.  In
5  other words, if you had a comparison of this particular firm
6  and their average wholesale price and this one, that was the
7  one constant; and any discounts would be the variable, as I
8  recall.
9      Q    Sure.
10           And looking at what you just said -- you had
11  said that the benchmark would be the constant and then there
12  would be a variable discount, which is what you would use to
13  consider which entity you would want to contract with,
14  correct?
15     A    No, that wouldn't be the only thing we'd use to
16  consider.
17           I mean, there's a value added, depending on what
18  -- the price.  We don't always go with the lowest price.
19     Q    Exactly.
20     A    Yeah.
21     Q    But with what you were saying, the benchmark being a
22  constant, that is not necessarily the same thing as the

Page 36

1  benchmark being an actual average of acquisition costs?
2            MR. NOTARGIACOMO:  Is that a question?
3            MS. CORTES:  Yes.
4            MR. NOTARGIACOMO:  I object to it.
5            You can answer it if you understand it.
6      A    I thought it was a statement.  Could you repeat it?
7      Q    (BY MS. CORTES)  Sure.
8            When you're saying that Mr. Rodriguez explained
9  to you that the benchmark was a constant and the different
10  entities that you were considering contracting with would take
11  different discounts off of that benchmark constant, that is
12  not the same thing as saying that the benchmark is an actual
13  average of acquisition costs, is it?
14           MR. NOTARGIACOMO:  Objection.
15           You can answer it.
16     A    You know what?  I might have misstated that by saying
17  that it was a constant.
18           Regardless of what that number was, what I'm
19  trying to say is it would be the same from provider to the
20  provider to the provider.  Whether it was an average, whether
21  it was a constant, whether it was a fluctuating average,
22  whatever terminology you want to put on it, it would be the

Page 37

1  same so that when we compared one to the other, that being the
2  same, constant or fluctuating or average, we would compare the
3  discounts so that we could compute the cost for our
4  participants.
5            The way our plan runs is basically we look at
6  the contributory hours coming into it and the cost going out,
7  and we put a value of cents per hour to it.  And that's how it
8  affects my numbers.
9            So, if that more specifically answers your
10  question, I don't know; but that's kind of how I view it, as
11  an -- as a barometer constantly -- I don't know.  I don't
12  know.  That's the best I can explain it to you.
13     Q    Okay.
14           MR. HAAS:  Let me clarify for the record:
15  Except what you just said -- and I appreciate what you are
16  speaking to when you refer to a barometer -- I think the
17  question that Jessica was asking was:  With respect to the
18  term itself, "average wholesale price", when you looked at
19  these bids and you saw the discounts off of AWP and the
20  various RFP responses that you received and when you went
21  through the process of comparing those responses from one plan
22  to another, was it your understanding at the time that the

Henderson Legal / Spherion
(202) 220-4158

John Bell                                                                                          October 27, 2004

Houston, TX

Page 38

1  starting point, the average of actual wholesale prices, was an
2  average of actual costs; or did you view that as a benchmark
3  from which then you could determine reimbursement by comparing
4  the discounts off AWP?
5           MR. NOTARGIACOMO:  Wait a minute.  I need
6  to object to the question as a question, and then I obviously
7  object to the sort of double-teaming of attorneys in the
8  deposition.  I'm assuming that's not going to continue
9  throughout the day.  I'll let the question stand and let him
10 answer it.
11          MR. HAAS:  Let me clarify that point.
12          THE WITNESS:  I'd actually like for you to
13 repeat it, if you would.
14          MR. HAAS:  Not a problem.  I can easily
15 repeat it.
16          THE WITNESS:  Okay.
17          MR. HAAS:  With respect to your point,
18 though, this is -- many of these depositions, we have many
19 people asking questions.  So, this is not a new protocol.  But
20 with that said, I appreciate your concerns; and I will limit
21 my questions.  But on this particular issue, obviously it's
22 important to the case.

Page 39

1           So, the question is -- I understand your
2  point when you -- when you preface my question by excepting
3  your earlier testimony.
4           But I understand when you're looking at
5  AWP, what you are doing is you're saying "I'm looking at the
6  discounts off AWP and I'm using that in order to determine
7  which is the optimal pricing for CMHV" because it allows you
8  to be able to compare one bid to another, right?
9           THE WITNESS:  Yes, in comparison as part of
10 the process.
11          MR. HAAS:  Right.
12          But with respect to the term itself, when
13 you see the term "average wholesale price", did you form any
14 understanding at that time as to what that particular term
15 meant, "average wholesale price"?
16          THE WITNESS:  Well, I -- "average" means an
17 average.  I mean, that's what -- that was my understanding of
18 it.  That was the average price that everyone worked off of.
19 It's an average.
20          MR. HAAS:  The question is average of what
21 obviously?
22          And when you're discounting and you're

Page 40

1  setting reimbursement, for example, for pharmacies, for drugs
2  dispensed to CMHV members and you're setting the reimbursement
3  amount at a discount off of this average and that discount
4  that you're setting is 12 percent or 14 percent, for example,
5  below the average, was it your understanding at that time that
6  you were reimbursing pharmacies at below their cost of
7  purchasing drugs?
8           MR. NOTARGIACOMO:  I'm going to object to
9  that question.
10          THE WITNESS:  Actually that doesn't matter
11 to me.
12          MR. HAAS:  Okay.  So, from your
13 perspective --
14          THE WITNESS:  It doesn't matter to me --
15 let me follow through with that.
16          It didn't matter to me what that particular
17 -- myself, it didn't matter to me what that particular
18 equation was.  What mattered to me is that everybody was
19 working off the same equation.
20          MR. HAAS:  Sure.  I appreciate that
21 testimony.
22          THE WITNESS:  Right.

Page 41

1           MR. HAAS:  I understand your point, and I'm
2  just probing a little bit further to see if you had any
3  understanding or expectation at the time.  And if you didn't,
4  that's fine.  We'll move own.
5           But the question is:  Excepting your
6  testimony that you used the discounting off AWP as a means of
7  comparing bids, excepting that, did you also at the time form
8  any understanding as to what that term meant when you were
9  looking at bids that had discounts off the bids as a means for
10 reimbursing pharmacies for drugs dispensed to CMHV members?
11          MR. NOTARGIACOMO:  Object to the question.
12          He's already answered it.
13          MR. HAAS:  No, I don't think he has.
14          The question is whether you formed an
15 understanding as to what that term meant.  You said you
16 thought it was an average.  And my question is an average of
17 what?
18          Now, I had asked you whether or not you
19 believed it was an average of essentially acquisition costs;
20 and you said that was irrelevant and -- to your consideration.
21          So, I asked you, "Well, did you form an
22 opinion or understanding as to what the term meant if you were

11 (Pages 38 to 41)

# Exhibit 3A

| Common Field Name | Prime's Field Name |
|---|---|
| NDC Code | ProductServiceID |
| Drug Name | NameNameExt |
| Health Common Procedure Coding System (HCPCS) | HPSC Codes |
| Claim Number | Authorization Number |
| Group Name | GRPGroupName |
| Group Number | GroupID |
| Claim Status or Type | Claim Status |
| PBM Dispensing Fee | ApprovedDispensingFeeAmount |
| Drug Ingredient Cost | ApprovedIngredientCost |
| Amount Billed (Charges) | ApprovedDueAmount + Approved Patient Pay |
| Copay | ApprovedCopayAmount |
| Deductible | ApprovedDeductibleAmount |
| Coinsurance Amount | ApprovedPercentCopayAmount |
| Denial Reason | N/A |
| Pharmacy Name | PharmacyName |
| Pharmacy Number | ServiceProviderID |
| Provider Tax ID | PrescriberID |
| State | PHST |
| AWP Price | AverageWholesalePriceUnitCost |
| Date Filled | DateOfService |
| Days Supply | DaysSupply |
| Refill Code | NumberOfRefillsAuthorized |
| Rx Dose | DrugDosageForm |
| Rx Type | DrugGenericName |
| Units/Quantity | QuantityDispensed |
| Payment Type | CostTypeCode |
| **Additional Fields Added** | |
| Generic or Brand | MultiSourceCode |
| Rx Network ID | RxNetworkID |
| Pharmacy Zip Code | PharmacyZipCode |
| Sales Tax | ApprovedSalesTaxAmount |
| Final Claim Status | DW Final Claim |

Claim Status annotation:
P = Paid
X = Reversed.  Claims are reversed for many reasons, such as discrepancies or incorrectly dispensed products.

MultiSourceCode annotation:
M = MS brand name drug with no generics available, O = Original Brand name drug with generics available, N = Single-source brand name drug with no generics available, Y = Generic Drug

DW Final Claim annotation:
**Mark Sandager:**
Y = Final
N = Not Final

**Notes:**
If the drug name field is empty, it is because we matched it to a current MediSpan file, therefore the NDC number is not currently valid

| PRODUCTSERVICED | DRUG NAME | HPSC Codes | AUTHORIZATION NUMBER | GRP Group Name | Group ID | Claim Status |
|---|---|---|---|---|---|---|
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1108376365800 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1144382144200 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1350415636500 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1182469803100 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1198610116700 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1228553599600 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1162388470100 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1286457107200 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1248618454400 | Carpenters and Joiners | CV00100 | P |
| 0001505050301 | CYTOXAN TABLETS 50 MG | | 1269639857700 | Carpenters and Joiners | CV00100 | P |

1

| Approved Dispensing Fee Amount | Approved Ingredient Cost | Approved DeA mount | Approved Patient Pay Amount | Approved Copay Amount |
|---|---|---|---|---|
| $2.50 | $216.32 | $0.00 | $222.06 | $222.06 |
| $2.50 | $108.16 | $0.00 | $112.28 | $112.28 |
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.50 | $108.16 | $0.00 | $112.28 | $112.28 |
| $2.50 | $108.16 | $0.00 | $112.28 | $112.28 |
| $2.50 | $108.16 | $0.00 | $112.28 | $112.28 |
| $2.50 | $108.16 | $0.00 | $112.28 | $112.28 |
| $2.50 | $360.53 | $0.00 | $368.44 | $368.44 |
| $2.50 | $108.16 | $0.00 | $112.28 | $112.28 |
| $2.50 | $108.16 | $0.00 | $112.28 | $112.28 |

2

| Approved Deductible Amount | Approved Percent | Approved Copay Amount | Denial Reason | PHARMACY NAME | SERVICE PROVIDER ID |
|---|---|---|---|---|---|
| $0.00 | | | N/A | TARGET PHARMACY 820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY 820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY 820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY 820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY 820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | N/A | TARGET PHARMACY T-820 | 2420317 |

3

| PRESCRIBERID | PHSI | Average Wholesale Price | NDC | Source | DATE OF SERVICE | DAYS SUPPLY | NUMBER OF REFILLS AUTHORIZED |
|---|---|---|---|---|---|---|---|
| AT7472347 | MN | | | $4.14 | 18-Apr-01 | 30 | 3 |
| AT7472347 | MN | | | $4.14 | 24-May-01 | 15 | 3 |
| AT7472347 | MN | | | $4.14 | 16-Dec-01 | 16 | 99 |
| AT7472347 | MN | | | $4.14 | 01-Jul-01 | 15 | 3 |
| AT7472347 | MN | | | $4.14 | 17-Jul-01 | 15 | 3 |
| AT7472347 | MN | | | $4.14 | 16-Aug-01 | 15 | 3 |
| AT7472347 | MN | | | $4.14 | 11-Jun-01 | 15 | 3 |
| AT7472347 | MN | | | $4.14 | 13-Oct-01 | 33 | 99 |
| AT7472347 | MN | | | $4.14 | 05-Sep-01 | 15 | 3 |
| AT7472347 | MN | | | $4.14 | 26-Sep-01 | 15 | 3 |

4

| Drug Dosage Form | Drug Generic Name | QUANTITY DISPENSED | Cost Type Code | NDC Source Code | Rx Network ID |
|---|---|---|---|---|---|
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 30 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 30 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 30 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 30 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 30 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 30 | AWP | 0 | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 30 | AWP | 0 | 00207 |

| PHARMACY ZIP CODE | Approved Sales Tax Amount | DW Final Claim |
|---|---|---|
| 554336033 | $3.24 | Y |
| 554336033 | $1.62 | Y |
| 554336033 | $2.70 | Y |
| 554336033 | $1.62 | Y |
| 554336033 | $1.62 | Y |
| 554336033 | $1.62 | Y |
| 554336033 | $1.62 | Y |
| 554336033 | $5.41 | Y |
| 554336033 | $1.62 | Y |
| 554336033 | $1.62 | Y |

6

| PRODUCTS/SERVICE ID | DRUG NAME | HPSC Codes | AUTHORIZATION NUMBER | CRP Group Name | Group ID | Claim Status |
|---|---|---|---|---|---|---|
| 00015309145 | VEPESID 50MG CAPSULES | | 10245769236000 | Carpenters and Joiners | CV00100 | P |
| 00015309145 | VEPESID 50MG CAPSULES | | 11375495128000 | Carpenters and Joiners | CV00100 | P |
| 00015309145 | VEPESID 50MG CAPSULES | | 11084159302000 | Carpenters and Joiners | CV00100 | P |

1

| Approved Dispensing Fee Amount | Approved Ingredient Cost | Approved DUE Amount | Approved Patient Pay Amount | Approved Copay Amount |
|---|---|---|---|---|
| $2.50 | $671.23 | $0.00 | $683.80 | $683.80 |
| $3.00 | $671.23 | $0.00 | $684.30 | $684.30 |
| $3.00 | $671.23 | $0.00 | $684.30 | $684.30 |

2

| Approved Deductible Amount | Approved Percent | Copay Amount | Denial Reason | PHARMACY NAME | SERVICE PROVIDER ID |
|---|---|---|---|---|---|
| $0.00 | | | N/A | CASH WISE PHARMACY | 2417841 |
| $0.00 | | | N/A | LONG PRAIRIE PHARMACY | 2420898 |
| $0.00 | | | N/A | LONG PRAIRIE PHARMACY | 2420898 |

3

| PRESCRIBER ID | PHST | Average Wholesale Price | Unit Cost | DATE OF SERVICE | DAYS SUPPLY | NUMBER OF REFILLS AUTHORIZED |
|---|---|---|---|---|---|---|
| BA2878544 | MN | | $51.44 | 24-Jan-01 | 10 | 0 |
| BA2878544 | MN | | $51.44 | 17-May-01 | 7 | 11 |
| BA2878544 | MN | | $51.44 | 18-Apr-01 | 7 | 11 |

4

| Drug Dosage Form | Drug Generic Name | QUANTITY DISPENSED | Cost | Cost Type Code | Multi Source Code | Rx Network ID | PHARMACY ZIP CODE |
|---|---|---|---|---|---|---|---|
| CAPS | ETOPOSIDE CAP 50 MG | 15 | AWP | | N | 00703 | 563871350 |
| CAPS | ETOPOSIDE CAP 50 MG | 15 | AWP | | N | PGI21 | 563471382 |
| CAPS | ETOPOSIDE CAP 50 MG | 15 | AWP | | N | PGI21 | 563471382 |

| Approved Sales Tax Amount | DW Final Claim |
|---|---|
| $10.07 | Y |
| $10.07 | Y |
| $10.07 | Y |

6

| PRODUCTSERVICED | DRUGNAME | HPSCCCodes | AUTHORIZATIONNUMBER | GRPGroupName | GroupID | ClaimStatus |
|---|---|---|---|---|---|---|
| 00015050301 | CYTOXAN TABLETS 50 MG | | 2082477789000 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 20423521215000 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 22654920995000 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 21293350437000 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 20146762555000 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 23156120602003 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 21713648670000 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 22196586114000 | Carpenters and Joiners | CV00100 | P |
| 00015050301 | CYTOXAN TABLETS 50 MG | | 23254728605006 | Carpenters and Joiners | CV00100 | P |

1

| Approved Dispensing Fee Amount | Approved Ingredient Cost | Approved Due Amount | Approved Patient Pay Amount | Approved Copay Amount |
|---|---|---|---|---|
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.50 | $360.53 | $0.00 | $368.44 | $368.44 |
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.50 | $180.26 | $0.00 | $185.46 | $185.46 |
| $2.00 | $178.19 | $0.00 | $181.29 | $181.29 |

2

| Approved Deductible Amount | Approved Amount | Approved Percent | Copay Amount | Denial Reason | TARGET PHARMACY NAME | SERVICE PROVIDER ID |
|---|---|---|---|---|---|---|
| $0.00 | | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | $0.00 | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | $368.44 | N/A | TARGET T-820 | 2420317 |
| $0.00 | | | $0.00 | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | $0.00 | N/A | TARGET PHARMACY T-820 | 2420317 |
| $0.00 | | | $181.29 | N/A | TARGET T-820 | 2420317 |

3

| PRESCRIBER ID | REST | Average Wholesale Price | Unit Cost | DATE OF SERVICE | DAYS SUPPLY | NUMBER OF REFILLS AUTHORIZED |
|---|---|---|---|---|---|---|
| AT7472347 | MN | | $4.14 | 23-Mar-02 | 16 | 99 |
| AT7472347 | MN | | $4.14 | 11-Feb-02 | 16 | 99 |
| AT7472347 | MN | | $4.14 | 22-Sep-02 | 16 | 99 |
| AT7472347 | MN | | $4.14 | 09-May-02 | 16 | 99 |
| AT7472347 | MN | | $4.14 | 14-Jan-02 | 16 | 99 |
| AT7472347 | MN | | $4.14 | 11-Nov-02 | 16 | 1 |
| AT7472347 | MN | | $4.14 | 20-Jun-02 | 16 | 99 |
| AT7472347 | MN | | $4.14 | 07-Aug-02 | 16 | 99 |
| AT7472347 | MN | | $4.14 | 21-Nov-02 | 16 | 1 |

| Drug Dosage Form | Drug Generic Name | QUANTITY DISPENSED | Cost Type Code | Multi Source Code | Unit Source Code | RxNetwork ID |
|---|---|---|---|---|---|---|
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | | O | 00207 |

| PHARMACY ZIPCODE | Approved Sales Tax Amount | DW - Final Claim |
|---|---|---|
| 554336033 | $2.70 | Y |
| 554336033 | $2.70 | Y |
| 554336033 | $2.70 | Y |
| 554336033 | $2.70 | Y |
| 554336033 | $2.70 | Y |
| 554336033 | $5.41 | Y |
| 554336033 | $2.70 | Y |
| 554336033 | $2.70 | Y |
| 554336033 | $1.10 | Y |

| PRODUCTSERVICEID | Name | NameExt | HPSCCodes | AUTHORIZATIONNUMBER | CRCGroupName | GroupID | ClaimStatus |
|---|---|---|---|---|---|---|---|
| 0001505030I | CYTOXAN | | | 30697359763013 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 31005833598016 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30703213674015 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30703213674015 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30703213674015 | Carpenters and Joiners | CV00100 | X |
| 0001505030I | CYTOXAN | | | 30697359763013 | Carpenters and Joiners | CV00100 | X |
| 0001505030I | CYTOXAN | | | 30683772458004 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30845838551010 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30096009242006 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30346760281019 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 31206323399010 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 31524029379007 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 31815750124001 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30134138213011 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30723521855007 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30113919826007 | Carpenters and Joiners | CV00100 | X |
| 0001505030I | CYTOXAN | | | 31216087497010 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30113919826007 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30645902565008 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 31813911513018 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 31235016415006 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 30283348414015 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 32483662282000 | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | | 33103382348000 | Carpenters and Joiners | CV00100 | P |

| Approved Dispensing Fee Amount | Approved Ingredient Cost | Approved Date Amount | Approved Patient Pay Amount | Approved Copay Amount |
|---|---|---|---|---|
| $2.00 | $267.29 | $245.97 | $27.33 | $27.33 |
| $2.00 | $267.29 | $245.97 | $27.33 | $27.33 |
| $2.00 | $267.29 | $245.97 | $27.33 | $27.33 |
| $2.00 | $267.29 | $245.97 | $27.33 | $27.33 |
| ($2.00) | ($267.29) | ($245.97) | ($27.33) | ($27.33) |
| ($2.00) | ($267.29) | ($245.97) | ($27.33) | ($27.33) |
| $2.00 | $213.83 | $194.25 | $21.58 | $21.58 |
| $2.00 | $213.83 | $194.25 | $21.58 | $21.58 |
| $2.00 | $213.83 | $194.25 | $21.58 | $21.58 |
| $2.00 | $213.83 | $194.25 | $21.58 | $21.58 |
| $2.00 | $213.83 | $194.25 | $21.58 | $21.58 |
| $2.00 | $213.83 | $194.25 | $21.58 | $21.58 |
| $2.00 | $534.58 | $490.14 | $54.46 | $54.46 |
| $2.00 | $534.58 | $490.14 | $54.46 | $54.46 |
| ($2.00) | ($534.58) | ($490.14) | ($54.46) | ($54.46) |
| $2.00 | $534.58 | $490.14 | $54.46 | $54.46 |
| $2.00 | $534.58 | $490.14 | $54.46 | $54.46 |
| $2.00 | $356.38 | $327.36 | $36.37 | $36.37 |
| $2.00 | $356.38 | $327.36 | $36.37 | $36.37 |
| $2.00 | $356.38 | $327.36 | $36.37 | $36.37 |
| $2.00 | $178.19 | $164.57 | $18.29 | $18.29 |
| $2.00 | $356.38 | $327.36 | $36.37 | $36.37 |
| $2.00 | $356.38 | $327.36 | $36.37 | $36.37 |

2

| Approved Deductible Amount | Approved Percent Copay Amount | Denial Reason | Pharmacy Name | Service Provider ID |
|---|---|---|---|---|
| $0.00 | $27.33 | N/A | SNYDER DRUG EMPROIUM 5017 | 2400430 |
| $0.00 | $27.33 | N/A | SNYDER DRUG EMPROIUM 5017 | 2400430 |
| $0.00 | $27.33 | N/A | SNYDER DRUG EMPROIUM 5017 | 2400430 |
| $0.00 | $27.33 | N/A | SNYDER DRUG EMPROIUM 5017 | 2400430 |
| $0.00 | ($27.33) | N/A | SNYDER DRUG EMPROIUM 5017 | 2400430 |
| $0.00 | ($27.33) | N/A | SNYDER DRUG EMPROIUM 5017 | 2400430 |
| $0.00 | $21.58 | N/A | SHOPKO PHARMACY 2021 | 2417144 |
| $0.00 | $21.58 | N/A | SHOPKO PHARMACY 2021 | 2417144 |
| $0.00 | $21.58 | N/A | SHOPKO PHARMACY 2021 | 2417144 |
| $0.00 | $21.58 | N/A | SHOPKO PHARMACY 2021 | 2417144 |
| $0.00 | $21.58 | N/A | SHOPKO PHARMACY 2021 | 2417144 |
| $0.00 | $21.58 | N/A | SHOPKO PHARMACY 2021 | 2417144 |
| $0.00 | $21.58 | N/A | SHOPKO PHARMACY 2021 | 2417144 |
| $0.00 | $54.46 | N/A | TARGET T-664 | 2419883 |
| $0.00 | $54.46 | N/A | TARGET T-664 | 2419883 |
| $0.00 | ($54.46) | N/A | TARGET T-664 | 2419883 |
| $0.00 | $54.46 | N/A | TARGET T-664 | 2419883 |
| $0.00 | $54.46 | N/A | TARGET T-664 | 2419883 |
| $0.00 | $36.37 | N/A | TARGET T-820 | 2420317 |
| $0.00 | $36.37 | N/A | TARGET T-820 | 2420317 |
| $0.00 | $36.37 | N/A | TARGET T-820 | 2420317 |
| $0.00 | $18.29 | N/A | TARGET T-820 | 2420317 |
| $0.00 | $36.37 | N/A | TARGET T-820 | 2420317 |
| $0.00 | $36.37 | N/A | TARGET T-820 | 2420317 |

| PRESCRIBER ID | PHSI | Average Wholesale Price | Unit Cost | DATE OF SERVICE | DAYS SUPPLY | NUMBER OF REFILLS AUTHORIZED |
|---|---|---|---|---|---|---|
|  | MN | $4.14 |  | 10-Mar-03 | 30 | 1 |
| AS5763025 | MN | $4.14 |  | 10-Apr-03 | 30 | 1 |
| AS5763025 | MN | $4.14 |  | 11-Mar-03 | 30 | 1 |
|  | MN | $4.14 |  | 11-Mar-03 | 30 | 1 |
|  | MN | $4.14 |  | 11-Mar-03 | -30 | 1 |
|  | MN | $4.14 |  | 10-Mar-03 | -30 | 1 |
| AS1883152 | MN | $4.14 |  | 09-Mar-03 | 30 | 99 |
| AS1883152 | MN | $4.14 |  | 25-Mar-03 | 30 | 99 |
| AS1883152 | MN | $4.14 |  | 09-Jan-03 | 30 | 99 |
| AS1883152 | MN | $4.14 |  | 03-Feb-03 | 30 | 99 |
| AS1883152 | MN | $4.14 |  | 30-Apr-03 | 30 | 99 |
| AS1883152 | MN | $4.14 |  | 01-Jun-03 | 30 | 99 |
| AS1883152 | MN | $4.14 |  | 30-Jun-03 | 30 | 99 |
| AD7228768 | MN | $4.14 |  | 13-Jan-03 | 30 | 2 |
| AD7228768 | MN | $4.14 |  | 13-Mar-03 | 30 | 2 |
| AD7228768 | MN | $4.14 |  | 11-Jan-03 | -30 | 2 |
| BD3246510 | MN | $4.14 |  | 01-May-03 | 50 | 3 |
| AD7228768 | MN | $4.14 |  | 11-Jan-03 | 30 | 2 |
| AT7472347 | MN | $4.14 |  | 05-Mar-03 | 16 | 1 |
| AT7472347 | MN | $4.14 |  | 30-Jun-03 | 33 | 99 |
| AT7472347 | MN | $4.14 |  | 03-May-03 | 33 | 99 |
| AT7472347 | MN | $4.14 |  | 28-Jan-03 | 16 | 1 |
| AT7472347 | MN | $4.14 |  | 05-Sep-03 | 33 | 99 |
| AT7472347 | MN | $4.14 |  | 06-Nov-03 | 33 | 99 |

4

| Drug Dosage Form | Drug Generic Name | QUANTITY DISPENSED | Cost Type Code | Multi Source Code | Rx Network ID |
|---|---|---|---|---|---|
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 75 | AWP | N | 00201 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 75 | AWP | N | 00201 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 75 | AWP | N | 00201 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 75 | AWP | N | 00201 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | -75 | AWP | N | 00201 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | -75 | AWP | N | 00201 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | N | 00246 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | N | 00246 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | O | 00246 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | O | 00246 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | N | 00246 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | N | 00246 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 60 | AWP | N | 00246 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 150 | AWP | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 150 | AWP | N | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | -150 | AWP | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 150 | AWP | N | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 150 | AWP | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | N | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | N | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 50 | AWP | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | O | 00207 |
| TABS | CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | O | 00207 |

| PHARMACY | ZIP CODE | Approved Sales | Tax Amount | DIW | Final Claim |
|---|---|---|---|---|---|
| 554212399 | | | $4.01 | N | |
| 554212399 | | | $4.01 | Y | |
| 554212399 | | | $4.01 | Y | |
| 554212399 | | | $4.01 | N | |
| 554212399 | | | ($4.01) | N | |
| 554212399 | | | ($4.01) | N | |
| 560015448 | | | $0.00 | Y | |
| 560015448 | | | $0.00 | Y | |
| 560015448 | | | $0.00 | Y | |
| 560015448 | | | $0.00 | Y | |
| 560015448 | | | $0.00 | Y | |
| 560015448 | | | $0.00 | Y | |
| 554411154 | | | $8.02 | Y | |
| 554411154 | | | $8.02 | Y | |
| 554411154 | | | ($8.02) | N | |
| 554411154 | | | $8.02 | Y | |
| 554411154 | | | $8.02 | N | |
| 554336033 | | | $5.35 | Y | |
| 554336033 | | | $5.35 | Y | |
| 554336033 | | | $5.35 | Y | |
| 554336033 | | | $2.67 | Y | |
| 554336033 | | | $5.35 | Y | |
| 554336033 | | | $5.35 | Y | |

9

| PRODUCTSERVICE ID | NameName Ext | HRSCCodes | AUTHORIZATION NUMBER | CRPGroupName | Group ID | ClaimStatus |
|---|---|---|---|---|---|---|
| 0001505030I | CYTOXAN | | 4098342528000I | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | 4173460398700I | Carpenters and Joiners | CV00100 | P |
| 0001505030I | CYTOXAN | | 4010510431100I | Carpenters and Joiners | CV00100 | P |

1

| Approved Dispensing Fee Amount | Approved Ingredient Cost | Approved Due Amount | Approved Patient Pay Amount | Approved Copay Amount |
|---|---|---|---|---|
| $2.00 | $356.38 | $292.41 | $73.10 | $73.10 |
| $2.00 | $356.38 | $292.41 | $73.10 | $73.10 |
| $2.00 | $356.38 | $292.41 | $73.10 | $73.10 |

2

| Approved Deductible Amount | Approved Percent | Copay Amount | Denial Reason | PHARMACY NAME | SERVICE PROVIDER ID | PRESCRIBER ID | PHST |
|---|---|---|---|---|---|---|---|
| $0.00 | | $73.10 | N/A | TARGET T-820 | 2420317 | AT7472347 | MN |
| $0.00 | | $73.10 | N/A | TARGET T-820 | 2420317 | AT7472347 | MN |
| $0.00 | | $73.10 | N/A | TARGET T-820 | 2420317 | AT7472347 | MN |

3

| Average Wholesale Price | UNIT cost | DATE OF SERVICE | DAYS SUPPLY | NUMBER OF REFILLS AUTHORIZED | Drug Dosage Form |
|---|---|---|---|---|---|
| | $4.14 | 07-Apr-04 | 33 | 99 | TABS |
| | $4.14 | 21-Jun-04 | 33 | 2 | TABS |
| | $4.14 | 10-Jan-04 | 33 | 99 | TABS |

4

| Drug Generic Name | QUANTITY DISPENSED | CostTypeCode | MultiSourceCode | RxNetworkID | PHARMACYZIPCODE |
|---|---|---|---|---|---|
| CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | O | 00207 | 554336033 |
| CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | O | 00207 | 554336033 |
| CYCLOPHOSPHAMIDE TAB 50 MG | 100 | AWP | O | 00207 | 554336033 |

| Approved Sales Tax Amount | DW - Final Claim |
|---|---|
| $7.13 | Y |
| $7.13 | Y |
| $7.13 | Y |

6

| PRODUCT | SERVICEID | Name | Ext | Name | Ext | HRSCode | AUTHORIZATIONNUMBER | GRPGroupName | GroupID | ClaimStatus |
|---|---|---|---|---|---|---|---|---|---|---|
| 00015309145 | VEPESID | | | | | | 4020512117400 | Carpenters and Joiners | CV00100 | P |

1

| Approved Dispensing Fee Amount | Approved Ingredient Cost | Approved Due Amount | Approved Patient Pay Amount | Approved Copay Amount |
|---|---|---|---|---|
| $1.95 | $1,755.02 | $1,430.18 | $357.55 | $357.55 |

2

| Approved Deductible Amount | Approved Percent Copay Amount | Denial Reason | PHARMACY NAME | SERVICE PROVIDER ID |
|---|---|---|---|---|
| $0.00 | $357.55 | N/A | FAIRVIEW UNIV MED CTR AM | 2411091 |

3

| PRESCRIBERID | PRESC | Average Wholesale Price | Price/Cost | DATE OF SERVICE | DAYS SUPPLY | NUMBER OF REFILLS AUTHORIZED |
|---|---|---|---|---|---|---|
| BB2272033 | MN | $63.77 | | 20-Jan-04 | 21 | 0 |

4

| Drug Dosage Form | Drug Generic Name | QUANTITY DISPENSED | Cost Type Code | Cost Type Code | Unit Source Code | Rx Network ID | PHARMACY ZIP CODE |
|---|---|---|---|---|---|---|---|
| CAPS | ETOPOSIDE CAP 50 MG | 32 | AWP | | O | 00705 | 55455 |

5

9



# Exhibit 4

Extracts from THWF Prescription Claims Data

|   | A | B | C | D |
|---|---|---|---|---|
| 1 | NDC | DrugDescription | DateFilled | IngredientCost |
| 2 | 00015050301 | CYTOXAN 50MG TABLET | 12/23/2002 | 145.06 |
| 3 | 00015050301 | CYTOXAN 50MG TABLET | 2/10/2003 | 145.06 |
| 4 | 00015050301 | CYTOXAN 50MG TABLET | 3/26/2003 | 145.06 |
| 5 | 00015050301 | CYTOXAN 50MG TABLET | 11/25/2003 | 252.41 |
| 6 | 00015050401 | CYTOXAN 25MG TABLET | 12/16/2003 | 176.83 |
| 7 | 00015309145 | VEPESID 50MG CAPSULE | 8/23/2001 | 921.97 |
| 8 | 00015309145 | VEPESID 50MG CAPSULE | 5/14/2002 | 1,013.21 |

# Exhibit 5

THWF0219

| CODE | PROCEDURE DESCRIPTION | CHARGES | DISALLOW | DEDUCT | COPAY | BASIC PAID | MAJOR PAID |
|---|---|---|---|---|---|---|---|
| J0150 | INJ: ADENOSINE, 6MG | 180.00 | 0.00 | 0.00 | 0.00 | 0.00 | 180.00 |
| J0460 | ATROPINE SULFATE, UP TO 0.3 M | 20.00 | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J0540 | INJ: PENICILLIN G BENZATHINE/ | 24.48 | 0.00 | 24.48 | 0.00 | 0.00 | 0.00 |
| J0585 | INJ: BOTULINUM TOXIN TYPE A, | 900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 900.00 |
| J0585 | INJ: BOTULINUM TOXIN TYPE A, | 900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 900.00 |
| J0640 | INJ: LEUCOVORIN CALCIUM, PER 50MG | 1,260.00 | 514.50 | 0.00 | 0.00 | 0.00 | 745.50 |
| J0640 | LEUCOVORIN CALCIUM, PER 50 MG | 195.00 | 195.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J0640 | LEUCOVORIN CALCIUM, PER 50 MG | 2,000.00 | 1,027.70 | 0.00 | 0.00 | 0.00 | 972.30 |
| J0640 | INJ: LEUCOVORIN CALCIUM, PER | 450.00 | 75.07 | 0.00 | 48.14 | 0.00 | 326.79 |
| J0640 | INJ: LEUCOVORIN CALCIUM, PER | 100.00 | 48.00 | 0.00 | 0.00 | 0.00 | 52.00 |
| J0696 | CEFTRIXONE, SODIUM, PER 250MG | 528.96 | 0.00 | 0.00 | 132.24 | 0.00 | 396.72 |
| J0696 | INJ: CEFTRIAXONE SODIUM, PER | 35.00 | 0.00 | 0.00 | 8.75 | 0.00 | 26.25 |
| J0696 | INJ: CEFTRIAXONE SODIUM, PER | 60.10 | 20.60 | 28.00 | 1.59 | 0.00 | 9.91 |
| J0702 | INJ: BETAMETHASONE ACETATE&SO | 15.00 | 0.00 | 15.00 | 0.00 | 0.00 | 0.00 |
| J0704 | INJ: BETAMETHASONE SODIUM PHO | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 |
| J0704 | INJ: BETAMETHASONE SODIUM PHO | 15.00 | 0.00 | 0.00 | 3.75 | 0.00 | 11.25 |
| J0743 | INJ: CILASTATIN SODIUM; IMPE | 5,600.00 | 2,826.12 | 0.00 | 0.00 | 124.04 | 2,649.84 |
| J0743 | CILASTATIN SODIUM; IMIPENEM P | 13,800.00 | 5,069.94 | 0.00 | 0.00 | 0.00 | 8,730.06 |
| J0780 | PROCHLORPERAZINE, 5MG/ML | 11.32 | 11.32 | 0.00 | 0.00 | 0.00 | 0.00 |
| J0800 | INJ: CORTICOTROPIN, UP TO 40 | 76.00 | 0.00 | 0.00 | 0.00 | 0.00 | 76.00 |
| J0800 | INJ: CORTICOTROPIN, UP TO 40 | 152.00 | 0.00 | 0.00 | 19.00 | 0.00 | 133.00 |
| J0810 | INJ: CORTISONE, UP TO 50 MG | 6.00 | 0.00 | 0.00 | 1.50 | 0.00 | 4.50 |
| J1020 | INJ: METHYLPREDNISOLONE ACETA | 10.00 | 0.00 | 0.00 | 2.50 | 0.00 | 7.50 |
| J1030 | INJ: METHYLPREDNISOLONE ACETA | 18.00 | 0.00 | 0.00 | 4.50 | 0.00 | 13.50 |
| J1030 | INJ: METHYLPREDNISOLONE ACETA | 75.00 | 10.00 | 0.00 | 16.25 | 0.00 | 48.75 |
| J1030 | INJ: METHYLPREDNISOLONE ACETA | 12.00 | 0.00 | 0.00 | 3.00 | 0.00 | 9.00 |
| J1040 | INJ: METHYLPREDNISOLONE ACETA | 331.25 | 150.00 | 6.25 | 43.75 | 0.00 | 131.25 |
| J1040 | INJ: METHYLPREDNISOLONE ACETA | 40.00 | 0.00 | 0.00 | 10.00 | 0.00 | 30.00 |
| J1060 | INJ: TESTOSTERONE & ESTRADIOL | 360.00 | 40.00 | 115.00 | 51.25 | 0.00 | 153.75 |
| J1070 | INJ: TESTOSTERONE CYPIONATE, | 18.00 | 18.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J1080 | INJ: TESTOSTERONE CYPIONATE, | 54.00 | 48.00 | 0.00 | 0.00 | 0.00 | 6.00 |
| J1095 | INJ: DEXAMETHASONE ACETATE, P | 88.36 | 15.50 | 12.00 | 3.09 | 0.00 | 57.77 |
| J1095 | RAD: DEXAMETHASONE ACETATE, P | 180.00 | 120.00 | 0.00 | 0.00 | 0.00 | 60.00 |
| J1100 | DECADRON 20 MG | 20.00 | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J1100 | INJ: DEXAMETHASONE SODIUM PHO | 15.00 | 10.16 | 0.00 | 0.00 | 4.84 | 0.00 |
| J1100 | DECADRON 20 MG | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 |
| J1100 | DEXAMETHASONE SODIUM PHOSPHAT | 850.95 | 315.00 | 0.00 | 0.00 | 25.00 | 510.95 |
| J1100 | INJ: DEXAMETHASONE SODIUM PHO | 484.73 | 198.14 | 10.75 | 5.90 | 0.00 | 269.94 |
| J1100 | DECARDRON 20 MG | 282.00 | 58.59 | 0.00 | 2.50 | 0.00 | 220.91 |

THWF0220

C:\My Documents\J Code Drug Expenditures (all)

| CODE | PROCEDURE DESCRIPTION | CHARGES | DISALLOW | DEDUCT | COPAY | BASIC PAID | MAJOR PAID |
|---|---|---|---|---|---|---|---|
| 0J1100 | DECARDRON 20 MG | 48.00 | 6.00 | 0.00 | 0.00 | 0.00 | 42.00 |
| 0J1100 | DECARDRON 20 MG | 445.00 | 23.50 | 0.00 | 18.75 | 0.00 | 21.50 |
| 0J1100 | DEXAMETHASONE SODIUM PHOSPHAT | 830.00 | 520.00 | 0.00 | 0.00 | 0.00 | 310.00 |
| 0J1100 | DEXAMETHASONE SODIUM PHOSPHAT | 279.50 | 203.65 | 0.00 | 0.00 | 0.00 | 75.85 |
| 0J1100 | DECARDRON 20 MG | 120.00 | 20.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| 0J1200 | DEXAMETHASONE SODIUM PHOSPHAT | 75.00 | 50.00 | 0.00 | 0.00 | 0.00 | 25.00 |
| 0J1200 | DIPHENHYDRAMINE HCL, UP TO 50 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.00 |
| 0J1200 | DIPHENHYDRAMINE HCL, UP TO 50 | 44.64 | 29.79 | 0.00 | 0.00 | 0.00 | 14.85 |
| 0J1200 | DIPHENHYDRAMINE HCL, UP TO 50 | 5.00 | 3.20 | 0.00 | 0.00 | 0.00 | 1.80 |
| 0J1200 | DIPHENHYDRAMINE HCL, UP TO 50 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6.00 |
| 0J1200 | DIPHENHYDRAMINE HCL, UP TO 50 | 315.00 | 243.00 | 0.00 | 0.00 | 0.00 | 72.00 |
| 0J1200 | INJ: DIPHENHYDRAMINE HCL, UP | 10.00 | 9.55 | 0.00 | 0.00 | 0.00 | 0.45 |
| 0J1200 | INJ: DIPHENHYDRAMINE HCL, UP TO 50 | 15.00 | 6.00 | 0.00 | 0.00 | 0.00 | 9.00 |
| 0J1245 | INJ: DIPYRIDAMOLE PER 10MG | 120.00 | 3.00 | 0.00 | 48.00 | 114.00 | 120.00 |
| 0J1245 | DIPYRIDAMOLE PER 10MG | 295.00 | 36.00 | 0.00 | 0.00 | 0.00 | 144.00 |
| 0J1245 | DIPYRIDAMOLE PER 10MG | 150.00 | 60.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J1245 | INJ: DIPYRIDAMOLE, PER 10MG | 398.00 | 0.00 | 0.00 | 0.00 | 338.00 | 180.00 |
| 0J1245 | INJ: DIPYRIDAMOLE, PER 10MG | 180.00 | 0.00 | 0.00 | 0.00 | 180.00 | 0.00 |
| 0J1245 | INJ: DIPYRIDAMOLE, PER 10MG | 824.40 | 12.00 | 0.00 | 0.00 | 812.40 | 110.00 |
| 0J1245 | INJ: DIPYRIDAMOLE, PER 10MG | 110.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J1245 | INJ: DIPYRIDAMOLE, PER 10MG | 30.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 |
| 0J1250 | INJECTION CHEMO | 263.00 | 112.55 | 0.00 | 0.00 | 0.00 | 150.45 |
| 0J1260 | DOLASETRON MESYLATE, 1MG | 600.00 | 72.00 | 0.00 | 0.00 | 0.00 | 528.00 |
| 0J1260 | ANZEMET 10 MG | 4,200.00 | 1,888.00 | 100.00 | 0.00 | 0.00 | 2,312.00 |
| 0J1441 | FILGRASTIM (G-CSF), 480 MCG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J1441 | FILGRASTIM (G-CSF), 480 MCG | 415.00 | 126.00 | 0.00 | 0.00 | 229.00 | 60.00 |
| 0J1441 | FILGRASTIM (G-CSF), 480 MCG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J1561 | IMMUNE GLOBULIN, INTRAVENOUS, | 50,625.00 | 24,525.00 | 0.00 | 505.00 | 300.00 | 25,295.00 |
| 0J1625 | GRANISETRON HYDROCHLORIDE, PE | 1,741.60 | 179.05 | 0.00 | 0.00 | 67.11 | 1,495.44 |
| 0J1626 | GRANISETRON HYDROCHLORIDE 100 | 2,190.00 | 354.00 | 0.00 | 0.00 | 0.00 | 1,836.00 |
| 0J1626 | GRANISETRON HYDROCHLORIDE 100 | 4,472.60 | 1,089.80 | 17.75 | 210.99 | 0.00 | 2,930.63 |
| 0J1626 | GRANISETRON HYDROCHLORIDE, 10 | 1,442.00 | 398.90 | 0.00 | 0.00 | 0.00 | 183.10 |
| 0J1626 | GRANISETRON HYDROCHLORIDE, 10 | 500.00 | 115.60 | 0.00 | 8.50 | 0.00 | 375.90 |
| 0J1626 | GRANISETRON HYDROCHLORIDE, 10 | 1,000.00 | 20.00 | 0.00 | 0.00 | 0.00 | 980.00 |
| 0J1626 | GRANISETRON HYDROCHLORIDE 100 | 40.00 | 14.00 | 0.00 | 0.00 | 0.00 | 26.00 |
| 0J1642 | HEPARIN SODIUM, PER 10 UNITS( | 22.50 | 0.00 | 0.00 | 0.00 | 0.00 | 22.50 |
| 0J1642 | HEPARIN SODIUM, PER 10 UNITS( | 640.00 | 224.00 | 0.00 | 26.00 | 0.00 | 390.00 |
| 0J1642 | HEPARIN SODIUM PER 10 UNITS | 390.00 | 0.00 | 0.00 | 13.50 | 0.00 | 364.50 |
| 0J1642 | HEPARIN SODIUM PER 10 UNITS | 5.00 | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 |

ᒣᕼᗯℲ022ㄣ

C:\MyDocuments\J Code Drug Expenditures (all)

| CODE | PROCEDURE DESCRIPTION | CHARGES | DISALLOW | DEDUCT | COPAY | BASIC PAID | MAJOR PAID |
|---|---|---|---|---|---|---|---|
| 0J1642 | HEPARIN SODIUM, PER 10 UNITS( | 112.50 | 0.00 | 0.00 | 0.00 | 0.00 | 112.50 |
| 0J1642 | HEPARIN SODIUM PER 10 UNITS | 5.00 | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J1642 | HEPARIN SODIUM, PER 10 UNITS( | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 |
| 0J1644 | HEPARIN SODIUM, PER 1000 UNIT | 130.00 | 118.50 | 0.00 | 0.00 | 0.00 | 11.50 |
| 0J1644 | HEPARIN SODIUM PER 1000 UNIT | 12.00 | 9.36 | 0.00 | 0.00 | 0.00 | 2.64 |
| 0J1644 | HEPARIN SODIUM PER 1000 UNITS | 455.00 | 100.00 | 0.00 | 0.00 | 0.00 | 355.00 |
| 0J1644 | HEPARIN SODIUM PER 1000 UNIT | 25.00 | 22.00 | 0.00 | 0.00 | 0.00 | 3.00 |
| 0J1644 | HEPARIN SODIUM, PER 1000 UNIT | 520.00 | 0.00 | 0.00 | 0.00 | 0.00 | 520.00 |
| 0J1745 | INJ: INFLIXIMAB, 10MG | 3,600.00 | 852.00 | 0.00 | 0.00 | 0.00 | 2,748.00 |
| 0J1820 | INJ: INSULIN, UP TO 100 UNITS | 120.00 | 0.00 | 0.00 | 14.56 | 0.00 | 105.44 |
| 0J1885 | INJ: KETOROLAC TROMETHAMINE, | 20.00 | 0.00 | 0.00 | 5.00 | 0.00 | 15.00 |
| 0J1940 | FUROSEMIDE, UP TO 20 MG | 6.00 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J1950 | INJ: LUPRON PER 3.75 MG | 560.00 | 430.00 | 0.00 | 32.50 | 0.00 | 97.50 |
| 0J1950 | INJ: LUPRON PER 3.75 MG | 90.00 | 0.00 | 25.00 | 16.25 | 0.00 | 48.75 |
| 0J2000 | INJ: LIDOCAINE HCL, 50 CC | 65.00 | 36.00 | 0.00 | 3.75 | 0.00 | 25.25 |
| 0J2000 | INJ: LIDOCAINE HCL, 50 CC | 80.00 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 |
| 0J2000 | INJ: LIDOCAINE HCL, 50 CC | 46.02 | 0.00 | 0.00 | 7.50 | 0.00 | 38.52 |
| 0J2000 | INJ: LIDOCAINE HCL, 50 CC | 50.68 | 0.00 | 0.00 | 2.50 | 0.00 | 48.18 |
| 0J2000 | INJ: LIDOCAINE HCL, 50 CC | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 |
| 0J2060 | LORAZEPAM, 2MG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J2060 | LORAZEPAM, 2MG | 10.00 | 0.00 | 0.00 | 10.00 | 0.00 | 0.00 |
| 0J2060 | LORAZEPAM, 2MG | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.00 |
| 0J2150 | MANNITOL, 25% IN 50ML | 90.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.00 |
| 0J2150 | MANNITOL, 25% IN 50ML | 375.00 | 170.54 | 0.00 | 17.49 | 0.00 | 186.97 |
| 0J2150 | MANNITOL, 25% IN 50ML | 48.00 | 22.04 | 0.00 | 0.00 | 0.00 | 25.96 |
| 0J2150 | MANNITOL, 25% IN 50ML | 14.55 | 14.55 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J2175 | INJ: MEPERIDENE | 10.00 | 0.00 | 0.00 | 2.50 | 0.00 | 7.50 |
| 0J2250 | MIDAZOLAM HYDROCHLORIDE, PER | 35.00 | 0.00 | 0.00 | 2.50 | 0.00 | 32.50 |
| 0J2250 | MIDAZOLAM HYDROCHLORIDE, PER | 20.00 | 0.00 | 20.00 | 0.00 | 0.00 | 0.00 |
| 0J2250 | MIDAZOLAM HYDROCHLORIDE, PER | 80.00 | 0.00 | 0.00 | 20.00 | 0.00 | 60.00 |
| 0J2270 | MORPHINE SULFATE, TO 10MG | 105.10 | 0.00 | 0.00 | 0.00 | 0.00 | 105.10 |
| 0J2405 | ONDANSETRON HYDROCHLORIDE PER | 1,600.00 | 612.95 | 0.00 | 0.00 | 0.00 | 987.05 |
| 0J2405 | ONDANSETRON HYDROCHLORIDE, PE | 5,722.20 | 1,376.00 | 0.00 | 0.00 | 288.00 | 4,058.20 |
| 0J2405 | ONDANSETRON HYDROCHLORIDE PER | 1,512.00 | 340.58 | 0.00 | 0.00 | 0.00 | 1,171.42 |
| 0J2405 | ONDANSETRON HYDROCHLORIDE PER | 768.00 | 157.77 | 0.00 | 50.85 | 0.00 | 559.38 |
| 0J2405 | ONDANSETRON HYDROCHLORIDE PER | 2,560.00 | 470.59 | 0.00 | 59.94 | 0.00 | 2,029.47 |
| 0J2405 | ONDANSETRON HYDROCHLORIDE, PE | 4,320.00 | 1,536.00 | 0.00 | 0.00 | 0.00 | 2,784.00 |
| 0J2405 | INJ: ONDANSETRON HYDROCHLORID | 12,616.00 | 7,462.36 | 0.00 | 219.14 | 0.00 | 4,934.50 |
| 0J2405 | ONDANSETRON HYDROCHLORIDE, PE | 320.00 | 32.00 | 0.00 | 0.00 | 0.00 | 288.00 |

THWF0222

| CODE | PROCEDURE DESCRIPTION | CHARGES | DISALLOW | DEDUCT | COPAY | BASIC PAID | MAJOR PAID |
|---|---|---|---|---|---|---|---|
| 0J2405 | ONDANSETRON HYDROCHLORIDE, PE | 384.00 | 0.00 | 0.00 | 0.00 | 0.00 | 384.00 |
| 0J2430 | PAMIDRONATE DISODIUM, PER 20M | 1,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,875.00 |
| 0J2430 | PAMIDRONATE DISODIUM, PER 30M | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J2430 | PAMIDRONATE DISODIUM, PER 20M | 2,400.00 | 660.00 | 0.00 | 0.00 | 0.00 | 1,740.00 |
| 0J2765 | METOCLOPRAMIDE HCL, UP TO 10M | 45.00 | 29.28 | 0.00 | 1.25 | 0.00 | 14.47 |
| 0J2780 | RANITIDINE HYDROCHLORIDE 25M | 50.00 | 2.00 | 0.00 | 0.00 | 0.00 | 48.00 |
| 0J2790 | INJ: RHO D IMMUNE GLOBULIN, H | 80.00 | 0.00 | 0.00 | 20.00 | 0.00 | 60.00 |
| 0J2912 | INJ: SODIUM CHLORIDE | 4.26 | 0.00 | 0.00 | 0.00 | 0.00 | 4.26 |
| 0J2912 | SODIUM CHLORIDE .9% | 2.00 | 0.00 | 0.00 | 0.00 | 2.00 | 0.00 |
| 0J2912 | INJ: SODIUM CHLORIDE | 232.50 | 0.00 | 0.00 | 3.88 | 0.00 | 228.62 |
| 0J2912 | INJ: SODIUM CHLORIDE .9% | 42.00 | 0.00 | 0.00 | 0.00 | 0.00 | 42.00 |
| 0J2912 | SODIUM CHLORIDE, 0.9%, PER 2 | 119.26 | 113.50 | 0.00 | 0.00 | 0.00 | 5.76 |
| 0J2912 | SODIUM CHLORIDE .9% | 36.00 | 2.00 | 0.00 | 0.00 | 0.00 | 34.00 |
| 0J2912 | SODIUM CHLORIDE .9% | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 |
| 0J2930 | SOLUMEDROL 125MG | 18.00 | 3.00 | 0.00 | 0.00 | 0.00 | 15.00 |
| 0J3010 | INJ: FENTANYL CITRATE, UP TO | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.00 |
| 0J3010 | INJ: FENTANYL CITRATE, UP TO | 5.00 | 0.00 | 0.00 | 1.25 | 0.00 | 3.75 |
| 0J3130 | INJ: TESTOSTERONE ENANTHATE, | 20.00 | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J3260 | INJ: TOBRAMYCIN SULFATE, UP T | 30.00 | 0.00 | 0.00 | 7.50 | 0.00 | 22.50 |
| 0J3301 | INJ: TRIAMCINOLONE ACETONIDE, PER | 40.00 | 29.00 | 0.00 | 0.00 | 11.00 | 0.00 |
| 0J3301 | INJ: TRIAMCINOLONE ACETONIDE, | 233.75 | 0.00 | 60.00 | 43.44 | 0.00 | 130.31 |
| 0J3301 | INJ: TRIAMCINOLONE ACETONIDE, | 33.60 | 0.00 | 0.00 | 0.00 | 0.00 | 33.60 |
| 0J3301 | INJ: TRIAMCINOLONE ACETONIDE, | 108.56 | 0.00 | 20.00 | 9.54 | 0.00 | 79.02 |
| 0J3301 | INJ: TRIAMCINOLONE ACETONIDE, | 12.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12.00 |
| 0J3360 | INJ: DIAZEPAM, UP TO 5 MG | 2.50 | 0.00 | 0.00 | 0.00 | 0.00 | 2.50 |
| 0J3370 | VANCOMYCIN HCL, UP TO 500 MG | 770.00 | 263.54 | 0.00 | 0.00 | 0.00 | 506.46 |
| 0J3410 | INJ: HYDROXYZINE HCL, UP TO 2 | 5.00 | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J3420 | INJ: VIT B-12 CYANOCOBALAMIN | 20.00 | 17.82 | 0.00 | 0.00 | 0.00 | 2.18 |
| 0J3420 | INJ: VIT B-12 CYANOCOBALAMIN | 142.00 | 120.00 | 0.00 | 4.00 | 0.00 | 18.00 |
| 0J3420 | INJ: VIT B-12 CYANOCOBALAMIN | 20.00 | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J3420 | INJ: VIT B-12 CYANOCOBALAMIN | 6.00 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J3420 | INJ: VIT B-12 CYANOCOBALAMIN | 35.00 | 20.00 | 15.00 | 0.00 | 0.00 | 0.00 |
| 0J3480 | POTASSIUM CHLORIDE INJECTION, | 50.00 | 25.00 | 0.00 | 0.00 | 0.00 | 25.00 |
| 0J3480 | INJ: POTASSIUM CHLORIDE, PER | 8.00 | 0.00 | 0.00 | 2.00 | 0.00 | 6.00 |
| 0J3490 | INJ: UNCLASSIFIED DRUGS | 3,305.26 | 259.00 | 14.00 | 0.00 | 0.00 | 3,032.26 |
| 0J3490 | UNCLASSIFIED DRUGS | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J3490 | UNCLASSIFIED DRUGS | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J3490 | INJ: UNCLASSIFIED DRUGS | 10.00 | 0.00 | 10.00 | 0.00 | 0.00 | 0.00 |
| 0J3490 | INJ: UNCLASSIFIED DRUGS | 920.69 | 0.00 | 0.00 | 99.69 | 21.94 | 799.06 |

THWF0223

C:\My Documents\J Code Drug Expenditures (all)

| CODE | PROCEDURE DESCRIPTION | CHARGES | DISALLOW | DEDUCT | COPAY | BASIC PAID | MAJOR PAID |
|------|----------------------|---------|----------|--------|-------|-----------|-----------|
| 0J7030 | INFUSION, LESS THAN 250 MLS | 40.00 | 24.00 | 0.00 | 0.00 | 0.00 | 16.00 |
| 0J7030 | INFUSION, LESS THAN 250 MLS | 302.40 | 0.00 | 0.00 | 0.00 | 0.00 | 302.40 |
| 0J7030 | INFUSION, NORMAL SALINE SOLUT | 23.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.06 |
| 0J7030 | INFUSION, NORMAL SALINE SOLUT | 80.00 | 25.00 | 0.00 | 0.00 | 0.00 | 55.00 |
| 0J7040 | INFUSION, LESS THAN 250 MLS | 176.00 | 0.00 | 0.00 | 0.00 | 0.00 | 176.00 |
| 0J7040 | INFUSION, NSS(SALINE), 5% STE | 100.00 | 21.00 | 0.00 | 0.00 | 0.00 | 79.00 |
| 0J7040 | INFUSION, NORMAL SALINE SOLUT | 44.00 | 5.50 | 0.00 | 5.50 | 0.00 | 0.00 |
| 0J7040 | INFUSION, NORMAL SALINE SOLUT | 970.00 | 600.82 | 0.00 | 6.28 | 0.00 | 362.90 |
| 0J7040 | INFUSION, NSS(SALINE), 5% STE | 28.00 | 2.00 | 0.00 | 0.00 | 0.00 | 26.00 |
| 0J7040 | INFUSION, NSS(SALINE), 5% STE | 13.50 | 0.50 | 0.00 | 0.00 | 0.00 | 13.00 |
| 0J7040 | INFUSION, NSS(SALINE), 5% STE | 32.00 | 26.00 | 0.00 | 0.00 | 0.00 | 6.00 |
| 0J7042 | INFUSION, NORMAL SALINE SOLUT | 130.00 | 7.00 | 0.00 | 0.00 | 0.00 | 123.00 |
| 0J7042 | INFUSION, NSS(SALINE), 5% STE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J7042 | INFUSION, NSS(SALINE), 5% STE | 28.00 | 3.00 | 0.00 | 0.00 | 0.00 | 25.00 |
| 0J7042 | INFUSION, NORMAL SALINE SO | 10.00 | 3.00 | 0.00 | 0.00 | 7.00 | 0.00 |
| 0J7050 | INJ:INFUSION,NORMAL SALINE SO | 541.50 | 10.50 | 0.00 | 0.00 | 0.00 | 531.00 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 824.26 | 117.67 | 0.00 | 11.91 | 10.00 | 684.68 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 160.00 | 0.00 | 0.00 | 10.00 | 0.00 | 150.00 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 310.00 | 27.00 | 0.00 | 0.00 | 0.00 | 283.00 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 788.00 | 0.00 | 0.00 | 0.00 | 0.00 | 744.00 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 40.00 | 14.00 | 0.00 | 0.00 | 0.00 | 26.00 |
| 0J7050 | INJ:INFUSION,NORMAL SALINE SO | 343.50 | 113.45 | 0.00 | 0.00 | 0.00 | 230.05 |
| 0J7050 | INJ:INFUSION,NORMAL SALINE SO | 50.00 | 6.52 | 0.00 | 7.38 | 0.00 | 36.10 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 225.00 | 69.00 | 0.00 | 0.00 | 0.00 | 156.00 |
| 0J7050 | INJ:INFUSION,NORMAL SALINE SO | 97.75 | 7.90 | 0.00 | 12.06 | 0.00 | 77.79 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 15.00 | 3.95 | 0.00 | 2.76 | 0.00 | 8.29 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 26.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.00 |
| 0J7050 | INFUSION, NORMAL SALINE SOLUT | 15.00 | 3.95 | 0.00 | 0.00 | 0.00 | 11.05 |
| 0J7051 | NAVELBINE 10 MG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J7051 | NAVELBINE 10 MG | 10.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0.00 |
| 0J7051 | NAVELBINE 10 MG | 10.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0.00 |
| 0J7060 | INFUSION,NORMAL SALINE SOLUTI | 468.00 | 234.53 | 0.00 | 0.00 | 0.00 | 233.47 |
| 0J7060 | INFUSION, NSS(SALINE), 5% DEX | 56.00 | 4.00 | 0.00 | 0.00 | 0.00 | 52.00 |
| 0J7060 | INFUSION,NORMAL SALINE SOLUTI | 80.00 | 37.68 | 0.00 | 5.29 | 0.00 | 37.03 |
| 0J7060 | INFUSION, NSS(SALINE), 5% DEX | 80.00 | 28.00 | 0.00 | 0.00 | 0.00 | 52.00 |
| 0J7060 | INFUSION,NORMAL SALINE SOLUTI | 175.00 | 83.60 | 0.00 | 0.00 | 0.00 | 91.40 |
| 0J7060 | INFUSION,NORMAL SALINE SOLUTI | 16.00 | 8.97 | 0.00 | 1.76 | 0.00 | 5.27 |
| 0J7070 | INFUSION, D5W, 1000CC | 50.40 | 0.00 | 0.00 | 0.00 | 0.00 | 50.40 |

TlHWF0224

C:\My Documents\J Code Drug Expenditures (all)

| CODE | PROCEDURE DESCRIPTION | CHARGES | DISALLOW | DEDUCT | COPAY | BASIC PAID | MAJOR PAID |
|---|---|---|---|---|---|---|---|
| 0J7070 | INFUSION, D5W, 1000CC | 420.00 | 296.36 | 0.00 | 2.81 | 0.00 | 120.83 |
| 0J7140 | INJ;PRESCRIPTION DRUG,ORAL,DI | 5.00 | 0.00 | 0.00 | 1.25 | 0.00 | 3.75 |
| 0J7320 | INJ;HYLAN G-F 20.16 MG,INTRA- | 532.00 | 532.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J9000 | DOXORUBICIN HCL 10 MG | 6,040.92 | 6,040.92 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J9000 | DOXORUBICIN HCL 10 MG | 1,562.00 | 0.00 | 0.00 | 336.00 | 0.00 | 1,233.92 |
| 0J9000 | DOXORUBICIN HCL 10 MG | 1,704.00 | 0.00 | 0.00 | 0.00 | 5.00 | |
| 0J9040 | DOXORUBICIN HCL 10 MG | 1,517.96 | 284.04 | 100.00 | 0.00 | 0.00 | |
| 0J9040 | BLEOMYCIN SULFATE, 15 UNITS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 0J9045 | CARBOPLATIN, 50 MG | 9,630.00 | 3,946.00 | 0.00 | 209.45 | 268.49 | 5,684.00 |
| 0J9045 | CARBOPLATIN, 50 MG | 1,328.40 | 222.12 | 0.00 | 0.00 | 0.00 | 628.34 |
| 0J9045 | CARBOPLATIN, 50 MG | 3,510.00 | 864.00 | 0.00 | 0.00 | 0.00 | 2,646.00 |
| 0J9045 | CARBOPLATIN, 50 MG | 864.00 | 1,409.16 | 0.00 | 0.00 | 0.00 | 5,370.84 |
| 0J9045 | CARBOPLATIN, 50 MG | 6,780.00 | 144.00 | 0.00 | 0.00 | 0.00 | 2,192.00 |
| 0J9045 | CARBOPLATIN, 50 MG | 2,336.00 | 212.11 | 0.00 | 106.35 | 0.00 | 536.54 |
| 0J9045 | CARBOPLATIN, 50 MG | 855.00 | 202.12 | 0.00 | 0.00 | 0.00 | 1,637.88 |
| 0J9060 | CISPLATIN, POWDER OR SOLUTION | 1,840.00 | 1,041.21 | 0.00 | 0.00 | 0.00 | 1,208.88 |
| 0J9062 | CISPLATIN, 50 MG VIAL | 2,250.00 | 285.10 | 0.00 | 0.00 | 0.00 | 1,214.90 |
| 0J9062 | CISPLATIN, 50 MG VIAL | 1,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J9062 | CISPLATIN, 50 MG VIAL | 495.00 | 69.78 | 0.00 | 0.00 | 10.22 | 0.00 |
| 0J9062 | CISPLATIN, 50 MG VIAL | 80.00 | 47.33 | 0.00 | 0.00 | 32.67 | 0.00 |
| 0J9093 | CYCLOPHOSPHAMIDE, LYOPHILIZED | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J9094 | CYCLOPHOSPHAMIDE, LYOPHILIZED | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 0J9095 | CYCLOPHOSPHAMIDE, LYOPHILIZED | 0.00 | 0.00 | 0.00 | 134.40 | 0.00 | 1,853.60 |
| 0J9097 | CYCLOPHOSPHAMIDE, LYOPHILIZED | 2,560.00 | 572.00 | 0.00 | 0.00 | 0.00 | |
| 0J9100 | CYTARABINE 100 MG | 108.00 | 22.16 | 0.00 | 0.00 | 0.00 | 85.84 |
| 0J9140 | DACARBAZINE, 10MG/ML; (200MG | 5,100.00 | 105.20 | 0.00 | 0.00 | 0.00 | 4,994.80 |
| 0J9170 | DOCETZXEL, 20MG | 4,935.00 | 2,820.00 | 0.00 | 0.00 | 0.00 | 2,115.00 |
| 0J9181 | ETOPOSIDE UP TO 100 MG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0J9181 | ETOPOSIDE, 10MG | 3,192.00 | 1,573.80 | 0.00 | 40.26 | 0.00 | 1,577.94 |
| 0J9182 | ETOPOSIDE, 10MG | 4,250.00 | 2,954.50 | 0.00 | 0.00 | 0.00 | 1,295.50 |
| 0J9182 | ETOPOSIDE, UP TO 100 MG | 140.00 | 138.32 | 0.00 | 0.00 | 0.00 | 1.68 |
| 0J9190 | ETOPOSIDE, UP TO 100 MG | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 | |
| 0J9190 | FLUOROURACIL, 500 MG | 88.40 | 57.28 | 0.00 | 0.00 | 0.00 | 29.86 |
| 0J9190 | FLUOROURACIL, 500 MG | 48.00 | 31.78 | 0.00 | 1.25 | 0.00 | 13.56 |
| 0J9190 | FLUOROURACIL, 500 MG | 48.00 | | 0.00 | 2.66 | 0.00 | |
| 0J9190 | FLUOROURACIL, 500 MG | | | 0.00 | | 0.00 | |
| 0J9190 | FLUOROURACIL, 500 MG | | | 0.00 | | 0.00 | |
| 0J9201 | FLUOROURACIL, 500 MG | 2,340.00 | 360.00 | 0.00 | 0.00 | 810.00 | 1,170.00 |
| 0J9201 | GEMCITABINE HCL 200MG | 1,125.00 | 9.00 | 0.00 | 0.00 | 0.00 | 1,116.00 |
| 0J9201 | GEMCITABINE 1000MG | 9,360.00 | 2,880.00 | 0.00 | 0.00 | 64.00 | 6,416.00 |
| 0J9201 | GEMCITABINE 1000MG | 17,380.00 | 2,446.99 | 0.00 | 0.00 | 0.00 | 14,933.01 |
| 0J9201 | GEMCITABINE HCL 200MG | 791.00 | 366.85 | 0.00 | 0.00 | 0.00 | 424.15 |
| 0J9201 | GEMCITABINE 1000MG | | | 0.00 | | 0.00 | |
| 0J9201 | GEMCITABINE 1000MG | | | 0.00 | | 0.00 | |
| 0J8202 | GEMCITABINE 1000MG | | | 0.00 | | 0.00 | |
| 0J8202 | GOSERELIN ACETATE IMPLANT, PE | 1,627.78 | 6.00 | 0.00 | 131.07 | 290.00 | 1,200.71 |
| 0J9206 | GOSERELIN ACETATE IMPLANT, PE | 354.00 | 36.00 | 0.00 | 0.00 | 0.00 | 318.00 |
| | IRINOTECAN 20MG | | | | | | |

# Exhibit 6

1

```
 1            IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF MASSACHUSETTS

 2

                          - - -

 3

       In Re:  PHARMACEUTICAL     : MDL DOCKET NO.

 4     INDUSTRY AVERAGE WHOLESALE: CIVIL ACTION #

       PRICE LITIGATION           :  01CV12257-PBS

 5     -------------------------------------------

       THIS DOCUMENT RELATES TO:

 6     ALL ACTIONS

       -------------------------------------------

 7

 8                  Oral deposition of WILLIAM J.

 9     EINHORN, taken pursuant to notice, at the Law

10     Offices of Spector, Roseman & Kodroff, 1818

11     Market Street, Suite 2500, Philadelphia,

12     Pennsylvania  19103, on Wednesday, February 25th,

13     2004, beginning at approximately 9:30 a.m.,

14     before David Walsh, Registered Professional

15     Reporter and Notary Public, there being present:

16                          - - -

17

18

19

20

21

22
```

CERTIFIED COPY

William J. Einhorn   Confidential Attorneys' Eyes Only   February 25, 2004
Philadelphia, PA

46

1        Q.      Okay.  Do I understand you correctly

2   then those backup tapes were not searched for

3   responsive documents due to this software

4   problem?

5        A.      Some of them were, but not going

6   back to 1991 and I make specific reference in

7   this regard to the J-code drugs that were

8   processed in-house.

9        Q.      I'm not sure I understand your

10  answer.

11       A.      There are certain J-code drugs that

12  were not -- at a point in time, not dispensed

13  through GPP's mechanism, through their delivery

14  system.  Rather those claims would be forwarded

15  by the service provider directly to our office

16  and would be processed in-house.  Those claims

17  would appear on the claim facts, claims

18  adjudication system.

19               At any given point in time, we were

20  maintaining anywhere from 36 to 42 months of data

21  on line and when we initially searched and

22  uncovered what I would call J-code claims, it was

William J. Einhorn   Confidential Attorneys' Eyes Only   February 25, 2004
Philadelphia, PA

47

1    based on that limitation.  We didn't load any of

2    the backup files back onto the system because

3    they were earlier versions of the claims facts

4    software and could not be read by the current

5    system.

6        Q.    Okay.  What is the date range for

7    which you did produce J-code information? I

8    should clarify, J-code claims information.

9        A.    I do not have a present

10   recollection.

11       Q.    And in what form was that claims

12   information produced to defendants?

13       A.    I don't know.  I can only say that I

14   made some printouts available to counsel and I

15   believe that I had -- my recollection is that I

16   compiled some of the information in a summary

17   fashion on an Excel spreadsheet and also gave

18   that to counsel.

19       Q.    Okay.  Do I understand you correctly

20   then at some point in time GPP did handle J-code

21   claims information?

22       A.    They do now.

William J. Einhorn   Confidential Attorneys' Eyes Only   February 25, 2004
Philadelphia, PA

48

1          Q.      Since what date?

2          A.      My recollection is it is sometime in

3    2001 or 2002, early 2002.

4          Q.      So, the claims data we received on

5    the CD would have included from 2001 or 2002

6    J-code payment information?

7          A.      To the extent that those drugs were

8    utilized, yes, I believe so.

9          Q.      Prior to that date, it would have

10   been in this summary Excel sheet that you turned

11   over to counsel?

12         A.      And also a main frame computer

13   printout.

14         Q.      Okay.  But there is some period of

15   time for which you were unable to retrieve the

16   J-code payment data due to a software problem?

17         A.      Correct.

18         Q.      But you're not clear as to what that

19   time frame is?

20         A.      That is correct.

21         Q.      Okay.

22                 (Whereupon, the court reporter

William J. Einhorn   Confidential Attorneys' Eyes Only   February 25, 2004
Philadelphia, PA

77

1   and providers are reimbursed on a fee for service

2   basis up to that limit.

3         Q.      Does the fund pay all or any portion

4   of the co-pay that a Medicare Part B beneficiary

5   may have to pay for an administered

6   pharmaceutical?

7         A.      No, we don't provide benefits to

8   retirees at all.

9         Q.      Okay.  There are people besides

10  retirees who might be eligible for Medicare Part

11  B benefits?

12        A.      Disabled individuals who would be

13  disabled for more than a 24 month period of

14  time.  That means they would be out of covered

15  employment and that means they would not have any

16  eligibility with us, so we would not have any

17  role in that.

18        Q.      There is no situation in which the

19  fund would cover a Medicare Part B co-payment?

20        A.      No, not to my knowledge.

21        Q.      Okay.  How does the fund calculate

22  what it pays to providers for physician

William J. Einhorn   Confidential Attorneys' Eyes Only   February 25, 2004
Philadelphia, PA

78

1      administered drugs or J-code drugs as you

2      referred to them earlier?

3           A.      AWP minus a co-payment, which at one

4      point was $3 and another point was $9 and now

5      that is handled through GPP, as I testified

6      earlier.

7           Q.      Okay.  When we have been talking

8      about pharmaceutical benefits, have you been

9      including in that both physician administered

10     drugs that would be dealt with by a J-code, as

11     well as drugs that would be reimbursed through

12     GPP?

13          A.      Yes.

14          Q.      Okay.  Are J-code or physician

15     administered drugs reimbursed as part of the

16     pharmaceutical benefit or are there occasions

17     where they might be reimbursed as part of a

18     medical benefit?

19          A.      That would vary upon the different

20     point in time.  I believe at one point in time,

21     and this could have been before I came to the

22     fund, and for a period of time -- or a short

# Exhibit 7

# EXHIBIT C: UDTPA GROUPINGS

## TABLE 1: STATE STATUTES BROADLY PROHIBITING UNFAIR ACTS OR PRACTICES

| State | Authority |
|---|---|
| California | California's Unfair Competition Law prohibits "unlawful, unfair or fraudulent" business acts or practices. CAL. BUS. & PROF. CODE § 17200. Conduct is "unfair" if it: (2) "threatens an incipient violation of a [] law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition," *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87, 973 P.2d 527 (1999); or (2) the "practice offends an established public policy" or "'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,'" and the "gravity of the harm to the victim outweighs the utility of the defendant's conduct," *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268-69 (2006). |
| Connecticut | The Connecticut Unfair Trade Practices Act prohibits a person from engaging in "unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). An act or practice is unfair if it (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness, (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers, competitors or other business persons. *Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 99-100 (Conn. 1998). |
| Florida | "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." FLA. STAT. § 501.204(1). An "unfair" practice is one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. Ct. App. 2001) (quoting *Spiegel, Inc. v. FTC*, 540 F.2d 287, 293 (7th Cir. 1976) (discussing FTC criteria)). |
| Hawaii | Hawaii prohibits "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." HAW. REV. STAT. § 480-2(a). A practice is "unfair" when it offends established public policy, or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *State by Bronster v. United States Steel Corp.*, 919 P.2d 294, 312 (Haw. 1996). |
| Maine | The Maine Unfair Trade Practices Act provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." ME. REV. STAT. ANN. TIT. 5, § 207. Courts should be guided by interpretations given by the FTC and the federal courts in determining what constitutes an unfair or deceptive practice. ME. REV. STAT. ANN. TIT. 5, § 207(1); *Guiggey v. Bombardier*, 615 |

| | |
|---|---|
| Maryland | A.2d 1169, 1172 (Me. 1992). The three FTC unfairness factors will apply. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972). |
| | The Maryland Consumer Protection Act provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. MD. COM. LAW CODE § 13-303. Maryland has adopted the FTC's test for unfairness. In determining whether conduct is "unfair," three factors are considered: (1) "whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness"; (2) "whether it is immoral, unethical, oppressive, or unscrupulous"; and (3) "whether it causes substantial injury to consumers. . . ." *Legg v. Castruccio*, 642 A.2d 906, 915 (Md. Ct. Spec. App. 1994) (quoting *Statement of Basis and Purpose, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking*, 29 Fed. Reg. 8324, 8355 (1964)). |
| Missouri | The Missouri Merchandising Practices Act prohibits the "act, use or employment by any person of any deception [or] unfair practice . . . in connection with the sale or advertisement of any merchandise in trade or commerce." MO. REV. STAT. § 407.020(1). A practice is "unfair" if it: "(1) offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions *or* (2) is unethical, oppressive, or unscrupulous; *and* (3) presents a risk of, or causes, substantial injury to consumers." *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) (emphasis in original); MO. CODE REGS. tit. 15, § 60-8.020(1). |
| New Hampshire | The New Hampshire Consumer Protection Act prohibits any person from engaging in "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. REV. STAT. § 358-A:2. A practice is "unfair" if (1) it is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' (2) 'it is immoral, unethical, oppressive, or unscrupulous,' or (3) 'it causes substantial injury to consumers.'" *Chroniak v. Golden Inv. Corp.*, 983 F.2d 1140, 1146 (1st Cir. 1993) (quoting *Rizzuto v. Joy Mfg. Co.*, 834 F.2d 7, 8 (1st Cir. 1987)). |
| Oklahoma | The Oklahoma Consumer Protection Act prohibits "unfair or deceptive trade practice[s]." OKLA. STAT. TIT. 15, § 753. An "unfair trade practice" means "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. TIT. 15, § 752(14). |
| Rhode Island | The Rhode Island Unfair Trade Practices and Consumer Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." R.I. GEN. LAWS § 6-13.1-2. In construing the UTPCPA, courts shall give "due consideration" and "great weight" to the interpretations of the FTC and federal courts relating to 15 U.S.C. § 45(a)(1). R.I. GEN. LAWS § 6-13.1-3. This means that the three FTC unfairness factors will apply. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972). |

2

| | |
|---|---|
| South Carolina | The South Carolina Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. CODE § 39-5-20(a). An act is "unfair" when it is "offensive to public policy or when it is immoral, unethical, or oppressive." *See Gentry v. Yonce*, 522 S.E.2d 137, 143 (S.C. 1999). |
| Tennessee | The Tennessee Consumer Protection Act prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce . . . ." TENN. CODE § 47-18-104(a). The TCPA is to be construed liberally to protect consumers and "shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts to [15 U.S.C. § 45(a)(1)]." TENN. CODE § 47-18-115. Thus, the FTC Act definitions of unfair or deceptive will apply. *See Comment, The Tennessee Consumer Protection Act: An Overview*, 58 TENN. L. REV. 455, 459 (1991). |
| Vermont | The Vermont Consumer Fraud Act prohibits "unfair or deceptive acts or practices in commerce . . . ." VT. STAT. ANN. tit. 9, § 2453(a). A practice is unfair if it (1) offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common-aw, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *Vermont Mobile Home Owners' Ass'n, Inc. v. LaPierre*, 94 F. Supp. 2d 519, 522 (D. Vt. 2000) (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). |
| Washington | The Washington Consumer Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE § 19.86.020. A practice is "unfair" if it (1) offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers (or competitors or other businessman). *Blake v. Federal Way Cycle Ctr.*, 698 P.2d 578, 583 (Wash. Ct. App. 1985). |
| West Virginia | The West Virginia Consumer Credit and Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." W. VA. CODE § 46A-6-104. The WVCPA is to be liberally construed, and courts are to "be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters." W. VA. CODE § 46A-6-101(1). This means that the three FTC unfairness factors will apply. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972). |
| Wyoming | The Wyoming Consumer Protection Act prohibits "unfair or deceptive acts or practices." WYO. STAT. § 40-12-105(a). It does not appear that any court in a published opinion has interpreted the Wyoming Consumer Protection Act. The three FTC unfairness factors will apply. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972). |

3

001534-16 209949 V1

**TABLE 2: STATE STATUTES BROADLY PROHIBITING DECEPTIVE ACTS OR PRACTICES**

| State | Authority |
|---|---|
| Arkansas | The Arkansas Deceptive Trade Practices Act prohibits deceptive trade practices. ARK. CODE ANN. § 4-88-107(a)(10). Although Arkansas courts have not construed the meaning of "deceptive," the DTPA is to be liberally construed to protect consumers. *State ex rel. Bryant v. R&A Inv. Co.*, 985 S.W.2d 299, 302–03 (Ark. 1999). |
| California | California's Unfair Competition Law prohibits "unlawful, unfair or fraudulent" business acts or practices. CAL. BUS. & PROF. CODE § 17200. A business act or practice is "fraudulent" if members of the public are likely to be deceived. *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 49 (2d Dist. 2005). |
| Connecticut | The Connecticut Unfair Trade Practices Act prohibits a person from engaging in "unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). An act is "deceptive" if (1) there is a representation, omission, or other practice likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material – that is, likely to affect consumer decisions or conduct. *Caldor, Inc. v. Heslin*, 577 A.2d 1009, 1013 (Conn. 1990). |
| District of Columbia | It is a violation of the District of Columbia Consumer Protection Procedures Act for a person to "(e) misrepresent as to a material fact which has a tendency to mislead; [or] (f) fail to state a material fact if such failure tends to mislead . . . ." D.C. CODE § 28-3904. It is not necessary to show that a consumer was in fact isled, deceived or damaged thereby. *Id.* |
| Florida | "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." FLA. STAT. § 501.204(1). A "deceptive" practice "is one that is 'likely to mislead' consumers." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Ct. App. 2000) (quoting *In re Int'l Harvester Co.*, 104 F.T.C. 949 (1984)). |
| Hawaii | Hawaii prohibits "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." HAW. REV. STAT. § 480-2(a). A practice is "deceptive" if it has the capacity or tendency to mislead or deceive. *State by Bronster v. United States Steel Corp.*, 919 P.2d 294, 312 (Haw. 1996). |
| Idaho | The Idaho Consumer Protection Act prohibits a person from engaging in "any act or practice which is otherwise misleading, false, or deceptive to the consumer." IDAHO CODE § 48-603(17). In determining whether an act or practice is "misleading, false, or deceptive" under § 48-601(17), Idaho courts follow the FTC test under which an act or practice is deceptive if it possesses "a tendency or capacity to deceive consumers." *State ex rel. Kidwell v.* |

5

| | |
|---|---|
| Kansas | *Master Distribs., Inc.*, 615 P.2d 116, 122 (Idaho 1980). |
| | The Kansas Consumer Protection Act provides that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-626(a). There are no published Kansas appellate decisions interpreting the meaning of a "deceptive act" under subsection (a). However, it is modeled after section 5 of the Federal Trade Commission Act (15 U.S.C. §§ 45(a)(1)). 1973 Official Comment 1, so FTC and federal court interpretations should suffice. The FTC test is whether the conduct has a tendency or capacity to deceive. *See, e.g., Vacu-Matic Carburetor Co. v. FTC*, 157 F.2d 711, 713 (7th Cir. 1946), *cert. denied*, 331 U.S. 806 (1947). |
| Maine | The Maine Unfair Trade Practices Act provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." ME. REV. STAT. ANN. TIT. 5, § 207. Courts should be guided by interpretations given by the FTC and the federal courts in determining what constitutes an unfair or deceptive practice. ME. REV. STAT. ANN. TIT. 5, § 207(1); *Guiggey v. Bombardier*, 615 A.2d 1169, 1172 (Me. 1992). The FTC test is whether the conduct has a tendency or capacity to deceive. *See, e.g., Vacu-Matic Carburetor Co. v. FTC*, 157 F.2d 711, 713 (7th Cir. 1946), *cert. denied*, 331 U.S. 806 (1947). |
| Maryland | The Maryland Consumer Protection Act provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. MD. COM. LAW CODE § 13-303. Deception includes a "[f]ailure to state a material fact if the failure deceives or tends to deceive." MD. COM. LAW CODE § 13-301(3). |
| Minnesota | The Minnesota Prevention of Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . ." MINN. STAT. § 325F.69(1). |
| Missouri | The Missouri Merchandising Practices Act prohibits the "act, use or employment by any person of any deception . . . in connection with the sale or advertisement of any merchandise in trade or commerce." MO. REV. STAT. § 407.020(1). "Deception" is "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." MO. CODE REGS. tit. 15, § 60-9.020(1). |
| New Hampshire | The New Hampshire Consumer Protection Act prohibits any person from engaging in "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. REV. STAT. § 358-A:2. A practice may be deceptive if it "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Id.* (quoting *Kazmaier v. Wooten*, 761 F.2d 46, 51 (1st Cir. 1985)). |
| New Jersey | The New Jersey Consumer Fraud Act prohibits "deception." N.J. STAT. § 56:8-2. It is not necessary to show that |

6

001534-16 209949 V1

| | |
|---|---|
| | any person was in fact misled or deceived; all that is required is that the conduct has the capacity to mislead. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). The New Jersey Standard Civil Jury Instructions, § 4.23 Model Charge under Consumer Fraud Act add: "'Deception' is conduct or an advertisement misleading to an average consumer to the extent that it is capable of, and likely to, mislead an average consumer. It does not matter that at a later time it could have been explained to a more knowledgeable and inquisitive consumer, nor need the conduct or advertisement actually have misled the Plaintiffs. The fact that the Defendant may have acted in good faith is unimportant. It is the capacity to mislead that is important." |
| New York | New York prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce. . . ." N.Y. GEN. BUS. LAW § 349(a). The standard for "deceptive" is an objective one: whether the act or practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). |
| North Dakota | The North Dakota Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any deceptive act or practice . . . with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. . . ." N.D. CENT. CODE § 51-15-02. Case law under the statute is very sparse. |
| Oklahoma | The Oklahoma Consumer Protection Act prohibits "unfair or deceptive trade practice[s]." OKLA. STAT. TIT. 15, § 753. "Deceptive trade practice" means "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." OKLA. STAT. TIT. 15, § 752(13). |
| Rhode Island | The Rhode Island Unfair Trade Practices and Consumer Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." R.I. GEN. LAWS § 6-13.1-2. In construing the UTPCPA, courts shall give "due consideration" and "great weight" to the interpretations of the FTC and federal courts relating to 15 U.S.C. § 45(a)(1). R.I. GEN. LAWS § 6-13.1-3. The FTC test is whether the conduct has a tendency or capacity to deceive. *See, e.g., Vacu-Matic Carburetor Co. v. FTC*, 157 F.2d 711, 713 (7th Cir. 1946), *cert. denied*, 331 U.S. 806 (1947). |
| South Carolina | The South Carolina Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." S.C. CODE § 39-5-20(a). An act is "deceptive" when it has a tendency to deceive. *See Gentry v. Yonce*, 522 S.E.2d 137, 143 (S.C. 1999). |
| South Dakota | In South Dakota, it is unlawful to "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged thereby [.]" S.D. CODIFIED LAWS § 37-24-6(1). |

7

001534-16 209949 V1

| Tennessee | The Tennessee Consumer Protection Act prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce . . . ." TENN. CODE § 47-18-104(a). The TCPA it to be construed liberally to protect consumers and "shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts to [15 U.S.C. § 45(a)(1)]." TENN. CODE § 47-18-115. Thus, the FTC Act definitions of unfair or deceptive will apply. *See Comment, The Tennessee Consumer Protection Act: An Overview*, 58 TENN. L. REV. 455, 459 (1991). The FTC test is whether the conduct has a tendency or capacity to deceive. *See, e.g., Vacu-Matic Carburetor Co. v. FTC*, 157 F.2d 711, 713 (7th Cir. 1946), *cert. denied*, 331 U.S. 806 (1947). |
| Vermont | The Vermont Consumer Fraud Act prohibits "unfair or deceptive acts or practices in commerce . . . ." VT. STAT. ANN. tit. 9, § 2453(a). "Deceptive" means the capacity or tendency to deceive. *Poulin v. Ford Motor Co.*, 513 A.2d 1168, 1171 (Vt. 1986). |
| Washington | The Washington Consumer Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE § 19.86.020. An act or practice is "deceptive" if it has the tendency or capacity to deceive. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). |
| West Virginia | The West Virginia Consumer Credit and Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." W. VA. CODE § 46A-6-104. The WVCPA is to be liberally construed, and courts are to "be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters." W. VA. CODE § 46A-6-101(1). The FTC test is whether the conduct has a tendency or capacity to deceive. *See, e.g., Vacu-Matic Carburetor Co. v. FTC*, 157 F.2d 711, 713 (7th Cir. 1946), *cert. denied*, 331 U.S. 806 (1947). |
| Wyoming | The Wyoming Consumer Protection Act prohibits unfair or deceptive acts or practices. WYO. STAT. § 40-12-105(a). It does not appear that any court in a published opinion has interpreted the Wyoming Consumer Protection Act. The FTC test is whether the conduct has a tendency or capacity to deceive. *See, e.g., Vacu-Matic Carburetor Co. v. FTC*, 157 F.2d 711, 713 (7th Cir. 1946), *cert. denied*, 331 U.S. 806 (1947). |

8

001534-16 209949 V1

**TABLE 3:  STATE STATUTES PROHIBITING UNCONSCIONABLE ACTS OR PRACTICES**

| State | Authority |
|---|---|
| Arkansas | The Arkansas Deceptive Trade Practices Act prohibits "[d]eceptive and unconscionable trade practices," which include but are not limited to a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]"  ARK. CODE ANN. § 4-88-107(a)(10).  "An 'unconscionable' act is an act that 'affronts the sense of justice, decency, or reasonableness.'"  *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 & n.6 (Ark. 2006). |
| Idaho | The Idaho Consumer Protection Act prohibits a person from "[e]ngaging in any unconscionable method, act or practice in the conduct of trade or commerce . . . ."  IDAHO CODE § 48-603(18).  In determining whether an act or practice is unconscionable under § 48-601(18), the court considers the following:<br><br>    (a) Whether the alleged violator knowingly or with reason to know, took advantage of a consumer reasonably unable to protect his interest because of physical infirmity, ignorance, illiteracy, inability to understand the language of the agreement or similar factor;<br><br>    (b) Whether, at the time the consumer transaction was entered into, the alleged violator knew or had reason to know that the price grossly exceeded the price at which similar goods or services were readily available in similar transactions by similar persons, although price alone is insufficient to prove an unconscionable method, act or practice;<br><br>    (c) Whether the alleged violator knowingly or with reason to know, induced the consumer to enter into a transaction that was excessively one-sided in favor of the alleged violator;<br><br>    (d) Whether the sales conduct or pattern of sales conduct would outrage or offend the public conscience, as determined by the court.<br><br>IDAHO CODE § 48-603C(2). |
| New Jersey | The New Jersey Consumer Fraud Act prohibits "unconscionable" commercial practices.  N.J. STAT. § 56:8-2.  "Unconscionable" implies a "lack of 'good faith, honesty in fact and observance of fair dealing.'"  *Id.* (quoting *Kugler v. Romain*, 279 A.2d 640 (N.J. 1971)).  The New Jersey Standard Civil Jury Instructions, § 4.23 Model Charge under Consumer Fraud Act, defines an "unconscionable commercial practice" as an activity in the public |

9

001534-16 209949 V1

| | |
|---|---|
| | marketplace which is basically unfair or unjust, which materially departs from standards of good faith, honesty in fact and fair dealing.  To be unconscionable, there should be factual dishonesty and a lack of fair dealing." |
| New Mexico | The New Mexico Unfair Practices Act prohibits "unconscionable trade practices in the conduct of any trade or commerce." N.M. STAT. § 57-12-3.  An "unconscionable trade practice" means "an act or practice in connection with the sale . . . or in connection with the offering for sale . . . of any goods or services . . . which to a person's detriment (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. STAT. § 57-12-2(E). |
| Texas | The Texas Deceptive Trade Practices-Consumer Protection Act prohibits an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5); TEX. BUS. & COM. CODE § 17.50(a)(3). |

10

TABLE 4:  STATE STATUTES PROHIBITING MISREPRESENTATIONS OR OMISSIONS GENERALLY

| State | Authority |
|---|---|
| Arizona | The Arizona Consumer Fraud Act provides that "[t]he act, use or employment by any person of any fraud. . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A). |
| Arkansas | The Arkansas Deceptive Trade Practices Act prohibits "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission" when utilized in connection with the sale or advertisement of any goods. ARK. CODE ANN. § 4-88-108. |
| Delaware | The Delaware Consumer Fraud Act prohibits the "act, use or employment by any person of any fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a). |
| Kansas | The Kansas Consumer Protection Act prohibits "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . . ." KAN. STAT. ANN. § 50-626(b). |
| Michigan | The Michigan Consumer Protection Act prohibits "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer[;] (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is[;] (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. MICH. COMP. LAWS § 445.903(1). |
| Minnesota | The Minnesota Prevention of Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . ." MINN. STAT. § 325F.69(1). |
| Missouri | The Missouri Merchandising Practices Act prohibits the "act, use or employment by any person of any deception, |

11

001534-16 209949 V1

| | |
|---|---|
| | fraud, false pretense, false promise, misrepresentation . . . or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." MO. REV. STAT. § 407.020(1). |
| Nevada | The Nevada Deceptive Trade Practices Act makes it unlawful to "[k]nowingly fail[] to disclose a material fact in connection with the sale or lease of goods or services," NEV. REV. STAT. § 598.0923(2)(1), and "[k]nowingly make[] any other false representation in a transaction. NEV. REV. STAT. § 598.0915(15). |
| New Jersey | The New Jersey Consumer Fraud Act declares: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . ." N.J. STAT. § 56:8-2. |
| New Mexico | The New Mexico Unfair Practices Act prohibits "a false or misleading oral or written statement . . or other representation of any kind knowingly made in connection with the sale . . . of goods . . . by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person . . . ." N.M. STAT. § 57-12-2(D). |
| North Dakota | The North Dakota Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any . . . fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . . ." N.D. CENT. CODE § 51-15-02. |
| Pennsylvania | The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits a person from "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding . . . ." 73 PENN. STAT. § 201-2(4)(xxi). |
| South Dakota | In South Dakota, it is unlawful to "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [.]" S.D. CODIFIED LAWS § 37-24-6(1). |
| West Virginia | The West Virginia Consumer Credit and Protection Act prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in |

12

001534-16 209949 V1

connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby[.]" W. VA. CODE § 46A-6-102(7).

13

TABLE 5:  STATE STATUTES PROHIBITING MISREPRESENTATIONS REGARDING PRICE

| State | Authority |
|---|---|
| Colorado | The Colorado Consumer Protection Act prohibits deceptive trade practices in the course of a person's business, which include making "false or misleading statements of fact concerning the price of goods . . . or the reasons for, existence of, or amounts of price reductions."  COLO. REV. STAT. § 6-1-105(1)(l). |
| Delaware | Delaware's Deceptive Trade Practices Act prohibits a person from engaging in a "deceptive trade practice," which includes making "false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions . . . ."  6 DEL. CODE § 2532(11). |
| Nevada | The Nevada Deceptive Trade Practices Act prohibits deceptive trade practices, which include making "false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions."  NEV. REV. STAT. § 598.0915(13). |
| New Mexico | The New Mexico Unfair Practices Act prohibits "making false or misleading statements of fact concerning the price of goods or services, the prices of competitors or one's own price at a past or future time or the reasons for, existence of or amounts of price reduction[.]" N.M. STAT. § 57-12-2(D)(11). |
| Oklahoma | The Oklahoma Consumer Protection Act makes it unlawful for a person, in the course of the person's business, to "[m]ake false or misleading statements of fact, knowingly or with reason to know, concerning the price of the subject of a consumer transaction or the reason for, existence of, or amounts of price reduction[.]" OKLA. STAT. TIT. 15, § 753(11). |
| Oregon | The Oregon Unfair Trade Practices Act prohibits a person from, in the course of the person's business, making "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services[.]" OR. REV. STAT. § 646.608(1)(s). |
| Wyoming | The Wyoming Consumer Protection Act prohibits persons from making "false or misleading statements of fact concerning the price of merchandise or the reason for, existence of, or amounts of a price reduction[.]" WYO. STAT. § 40-12-105(a)(vii). |

14

001534-16 209949 V1

**TABLE 6: STATE STATUTES PROHIBITING MISREPRESENTATIONS REGARDING THE CHARACTERISTICS OF GOODS**

| State | Authority |
|-------|-----------|
| California | California prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or serves to any consumer . . . ." CAL. CIV. CODE § 1770(a). The code then defines acts or practices considered unfair or deceptive. They include: "(5) Representing that goods . . . characteristics . . . which they do not have . . . ." |
| Colorado | The Colorado Consumer Protection Act prohibits "[k]nowingly mak[ing] a false representation as to the characteristics . . . of goods . . . ." COLO. REV. STAT. § 6-1-105(1)(e). |
| Delaware | Delaware's Deceptive Trade Practices Act prohibits a person from "[r]epresent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have[.]" 6 DEL. CODE § 2532(5). |
| District of Columbia | It is a violation of the District of Columbia Consumer Protection Procedures Act for a person to "represent that goods . . have . . characteristics . . . that they do not have[.]" D.C. CODE § 28-3904(a). |
| Indiana | Indiana prohibits a person from engaging in deceptive acts, which are specifically defined in relevant part as representations "[t]hat such subject of a consumer transaction has . . . characteristics . . . it does not have which the supplier knows or should reasonably know it does not have." IND. CODE § 24-5-0.5-3(a)(1). |
| Michigan | The Michigan Consumer Protection Act prohibits "[r]epresenting that goods or services have . . . characteristics . . . that they do not have . . . ." MICH. COMP. LAWS § 445.903(1)(c). |
| Nevada | The Nevada Deceptive Trade Practices Act prohibits "[k]nowingly mak[ing] a false representation as to the characteristics . . . of goods or services for sale . . . ." NEV. REV. STAT. § 598.0915(5). |
| Oregon | The Oregon Unfair Trade Practices Act prohibits a person from, in the course of the person's business, "[r]epresent[ing] that . . . goods . . . have . . . characteristics. . . that they do not have . . . ." OR. REV. STAT. § 646.608(1)(e). |
| Pennsylvania | The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits "[r]epresenting that goods or services have . . characteristics . . . that they do not have . . . ." 73 PENN. STAT. § 201-2(4)(v). |

001534-16 209949 V1

TABLE 7:  STATE STATUTES PROHIBITING MISREPRESENTATIONS REGARDING THE STANDARDS OF GOODS

| State | Authority |
|---|---|
| California | California prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or serves to any consumer . . . ." CAL. CIV. CODE § 1770(a). The code then defines acts or practices considered unfair or deceptive.  They include:  (7) Representing that goods . . . are of a particular standard . . . if they are of another." |
| Colorado | The Colorado Consumer Protection Act prohibits "[r]epresent[ing] that goods . . . are of a particular standard . . . if he knows or should now that they are of another[.]" COLO. REV. STAT. § 6-1-105(1)(g). |
| Delaware | Delaware's Deceptive Trade Practices Act prohibits a person from "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another[.]" 6 DEL. CODE § 2532(7). |
| District of Columbia | It is a violation of the District of Columbia Consumer Protection Procedures Act for a person to "represent that goods . . . are of particular standard . . . if in fact they are of another[.]" D.C. CODE § 28-3904(d). |
| Indiana | Indiana prohibits a person from engaging in deceptive acts, which are specifically defined in relevant part as representations "[t]hat such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and the supplier knows or should reasonably know that it is not." IND. CODE § 24-5-0.5-3(a)(1). |
| Michigan | The Michigan Consumer Protection Act prohibits "[r]epresenting that goods or services are of a particular standard . . . if they are of another." MICH. COMP. LAWS § 445.903(1)(e). |
| Nevada | The Nevada Deceptive Trade Practices Act prohibits "[r]epresent[ing] that goods or services for sale or lease are of a particular standard . . . if he knows or should know that they are of another standard . . . ." NEV. REV. STAT. § 598.0915(7). |
| Oregon | The Oregon Unfair Trade Practices Act prohibits a person from, in the course of the person's business, "[r]epresent[ing] that . . . goods . . . are of a particular standard . . . if they are of another." OR. REV. STAT. § 646.608(1)(g). |
| Pennsylvania | The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits "[r]epresenting that goods or services are of a particular standard . . . if they are of another . . . ." 73 PENN. STAT. § 201-2(4)(vii). |

16

001534-16  209949 V1

**TABLE 8: STATE STATUTES PROHIBITING FALSE ADVERTISING**

| State | Authority |
|---|---|
| California | It is unlawful to make or disseminate or cause to be made or disseminated any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." CAL. BUS. & PROF. CODE § 17500. |
| Delaware | Delaware's Deceptive Trade Practices Act prohibits "[a]dvertis[ing] goods or services with intent not to sell them as advertised[.]" 6 DEL. CODE § 2532(9). |
| Nevada | The Nevada Deceptive Trade Practices Act prohibits "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised." NEV. REV. STAT. § 598.0915(9). |
| Oregon | The Oregon Unfair Trade Practices Act prohibits "[a]dvertis[ing] . . . goods or services with intent not to provide them as advertised . . . ." OR. REV. STAT. § 646.608(1)(i). |
| Pennsylvania | The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits "[a]dvertising goods or services with intent not to sell them as advertised[.] 73 PENN. STAT. § 201-2(4)(ix). |
| Rhode Island | The Rhode Island Unfair Trade Practices and Consumer Protection Act prohibits "[a]dvertising goods or services with intent not to sell them as advertised[.] R.I. GEN. LAWS § 6-13.1-1(6)(ix). |
| Texas | The Texas Deceptive Trade Practices-Consumer Protection Act prohibits "advertising goods or services with intent not to sell them as advertised[.]" TEX. BUS. & COM. CODE § 17.46(b)(9). |
| Wyoming | The Wyoming Consumer Protection Act prohibits "[a]dvertis[ing] merchandise with intent not to sell it as advertised[.]" WYO. STAT. § 40-12-105(a)(x). |

17

001534-16 209949 V1