# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

UNITED STATES OF AMERICA
Ex Rel
VEN-A-CARE OF THE FLORIDA KEYS, INC.
a Florida Corporation,
by and through its principal officers and directors,
ZACHARY T. BENTLEY and T. MARK JONES,
Plaintiff,

v.

ABBOTT LABORATORIES, INC.;

CIVIL ACTION NO.95-1354-CIV-GOLD

FILED IN CAMERA AND UNDER SEAL

THIRD AMENDED COMPLAINT
For Money Damages and Civil Penalties Under the False Claims Act
31 U.S.C. §§3729-3732

approving and paying claims. A significant part of said Medicaid reimbursement was paid from United States Government funds pursuant to **42 U.S.C. § 1396(b)**.

4. The Relator, VEN-A-CARE, is a corporation organized under the laws of the State of Florida, with its principal offices in Key West, Florida. The Relator's principal officers and directors include Zachary T. Bentley and T. Mark Jones, who are each citizens of the United States and reside in Key West, Florida. The Relator is an infusion pharmacy and provides prescription drugs , such as the intravenous, injectable ███████ ███████ specified in this Third Amended Complaint, as a Medicare Part B supplier and as a Florida Medicaid provider. The Relator has direct and independent knowledge of the information, and is the "original source" of the information on which these allegations are based within the meaning of **31 U.S.C. §3730(e)(4)(A) and (B)**. The Relator has standing to bring this action pursuant to **31 U.S.C. §3730(b)(1)**. The information upon which these allegations are based was voluntarily provided by the Relator to the Federal Government beginning in 1991 and thereafter has been frequently supplemented by the Relator.

5. The Relator, VEN-A-CARE, is a small infusion pharmacy located in Key West, Florida that, due to its position as an industry insider, became aware of the false claim scheme alleged herein. During the early 1990s, Ven-A-Care was destroyed as a viable business because it refused to engage in fee splitting arrangements with referring physicians who wished to benefit from the inflated reimbursement caused by the actions

of the DEFENDANTS. Ven-A-Care became aware that many of the [redacted], inhalation, and injectable drugs [redacted] it provided as a specialty pharmacy were reimbursed by the Medicare and Medicaid Programs at amounts that substantially, in some cases by several thousand percent, exceeded the cost of the drug. It was the huge potential profit spreads generated by the variance between the actual cost of the drugs and the "reimbursement" amounts that many referring physicians demanded a share of. Ven-A-Care's principals were aware that Medicare and Medicaid reimbursed for drugs at amounts that were intended to be based on an estimation of cost and not provide for huge windfall profits at the GOVERNMENT's expense. Ven-A-Care attempted to alert the responsible state and federal government officials to the problem it faced. However, the government agencies lacked sufficient resources and expertise to adequately respond. Accordingly, the Relator commenced this action based upon its original source information.

6. The Defendant, ABBOTT LABORATORIES, INC. ("ABBOTT"), is a corporation organized under the laws of Delaware, with its principal offices in Abbott Park, Illinois. At all times material to this civil action, ABBOTT has transacted business in the Federal Judicial District of the Southern District of Florida by, including, but not limited to, selling and distributing prescription drugs to purchasers within the Southern District of Florida.

7. [redacted]

recipients and for which the DEFENDANTS knew that grossly excessive and unreasonable payments for claims would be made to the providers/suppliers by the Medicare and Medicaid programs.

37. A copy of the initial Complaint and Amended Complaints and written disclosure of substantially all material evidence and information VEN-A-CARE possesses were served on the Government pursuant to Rule 4(d)(I), Fed.R.Civ.P., prior to the filing of the initial and Amended Complaints in camera and under seal by delivering a copy of the summons, Complaints, material evidence and information to the United States Attorney for the Southern District of Florida and by sending a copy of the summons, Complaints, material evidence and information by certified mail to the Attorney General of the United States at Washington, District of Columbia. Thereafter the Relator has continued its investigation of the matters herein and has diligently and expeditiously provided any and all documentary and other evidence to the Office of the Attorney General of the United States and to the Office of the United States Attorney for the Southern District of Florida prior to filing this Third Amended Complaint. A copy of the Third Amended Complaint was served in the manner required by law on the Attorney General and on the United States Attorney for the Southern District of Florida prior to filing with the Court.

38. The Relator alleges: (A) that no allegation or transaction of defrauding the United States was made prior to the filing of the Complaints in public disclosures regarding the subject matter herein against any of the DEFENDANTS; (B) that none of the

DEFENDANTS was named in public disclosures made prior to the filing of the Complaints regarding the subject matter herein; and (C), if the Court makes a finding against the Relator as to the allegations set forth in (A) and/or (B), that the Relator has direct and independent knowledge of the information on which these allegations are based within the meaning of **31 U.S.C. §3730(e)(4)(A)** and **(B)** and has voluntarily provided the information to the Government before filing the Complaints which are based on the information provided by the Relator to the Government and the Relator is the original source.

39. Federal Court jurisdiction also exists over this cause for reasons which include, but are not limited to, the following:

A) The RELATOR and its principal officers and directors have sustained significant injury and damage due to the acts of the DEFENDANTS in that referring physicians, and others able to influence the ordering of infusion pharmacy services, typically demand a portion of the financial inducements created by the DEFENDANTS' false price representations in exchange for referrals. The RELATOR, a one time profitable business, has refused to engage in such conduct and, as a result, has been unable to compete in its chosen health care market.

B) The RELATOR, due to its status as an industry insider, has acquired substantial information that is of significant value to the Government about the DEFENDANTS' false claim scheme and has provided said information to the Government in accordance with the False Claims Act.

C) The RELATOR has expended substantial time, money and resources, and has incurred substantial financial and other risks in reviewing its own information and in acquiring, analyzing and disclosing to the Government its information about the DEFENDANTS' false claims scheme, prior to commencing this action.

D) The remedies provided by the False Claims Act include, in part, an award to the RELATOR for providing to the Government the information about the DEFENDANTS' false claim scheme that is at issue in this action. In order to secure redress of its right to such award, the RELATOR has complied with the requirements of the False Claims Act that it initiate this action under seal and disclose all its information to the Government.

E) This False Claims Act case constitutes the only lawful mechanism whereby the RELATOR may receive redress in the form of compensation for providing information about the DEFENDANTS' false claim scheme and for assisting the Government in recovering amounts paid, multiple damages and penalties.

F) The False Claims Act provides a mechanism whereby the RELATOR may secure redress for its cause of action, to wit, its right to compensation for benefitting the Government through use of its information about the False Claims scheme in the manner contemplated by the False Claims Act.

G) The RELATOR is also entitled, under the False Claims Act, to litigate the Government's right to damages and penalties, arising from the false claim scheme and

has a stake in the outcome in that the RELATOR is entitled by the False Claims Act to share in any recovery secured by or on behalf of the Government.

H) The relief provided under the False Claims Act is designed, in part, to deter future violations and the false claim scheme alleged herein is ongoing and continues to impede the RELATOR'S ability to lawfully compete and is likely to continue in the future absent the RELATOR'S exercise of its rights and responsibilities as a realtor under the False Claims Act.

I) The deterrent impact of a judgment under the False Claims Act will act to redress the injuries sustained by the RELATOR, and limit or curtail future injuries to the RELATOR, due to the DEFENDANTS' ongoing false claims scheme.

J) The DEFENDANTS each possess a substantial interest in disproving the RELATOR'S allegations of violations of the False Claims Act and the RELATOR possesses a substantial interest in proving said allegations, as well as the investment of the RELATOR's costs and its overall compliance with the pre filing and post filing procedural and jurisdictional provisions of the False Claims Act, because the determination of these issues under the False Claims Act will establish whether:

(i) The DEFENDANTS violated the federal False Claims Act;

(ii) The DEFENDANTS are liable for treble damages, penalties, costs, RELATOR's expenses and attorneys fees.

(iii) The RELATOR is entitled to redress in the form of compensation for providing its information about the false claims scheme to the Government and for assisting the Government in the manner required by the False Claims Act;

(iv) The RELATOR is entitled to redress, on behalf of the Government, in the form of damages and penalties from the DEFENDANTS.

(v) The RELATOR is entitled to redress in the form of its relator's share of the award of damages and penalties.

(vi) The RELATOR is entitled to redress in the form of compensation for its expenses , incurrence of risk, and investment of time and resources in acquiring and providing to the Government its information about the false claims scheme.

(vii) The RELATOR is entitled to redress in the form of the deterrent impact of a False Claims Act judgement, against one or more DEFENDANTS, on the ongoing and future conduct of the DEFENDANTS that has injured and continues to injure the RELATOR as alleged herein.

K) In the event that the Government intervenes with respect to some or all of the RELATOR'S allegations and claims, then the RELATOR is entitled to participate

in the litigation to the extent and under the conditions specified in the False Claims Act and to further pursue redress in the form of its right to share in any award and receive compensation for its costs and expenses.

L) In the event that the Government does not intervene with respect to some or all of the RELATOR's allegations and claims, then the RELATOR'S causes of action alleged herein are directed at further redress in that only by prevailing in litigation based on its information about the false claim scheme will the RELATOR be able to seek: redress in the form of deterrence of ongoing and future conduct injurious to the RELATOR; compensation for its information about the DEFENDANTS' false claim scheme; compensation for the assistance and benefit it provided to the Government; compensation for its expenses, risks and devotion of time and resources in acquiring and providing its information to the Government; and compensation for establishing the DEFENDANTS' liability for damages and penalties.

## SECTION NO. 4

## HOW MEDICARE AND MEDICAID REIMBURSEMENT IS AFFECTED BY DRUG MANUFACTURERS' PRICE AND COST REPRESENTATIONS

40. Drug manufacturers, including the DEFENDANTS, the Medicare and Medicaid Programs, drug price and cost reporting services, hospitals, pharmacies, physicians, wholesalers, third party payors and administrators (i.e. insurance companies),

b) Making direct monetary payments to the provider ordering the drugs and concealing the true purpose of the payment by classifying it as a "marketing grant", "educational grant", "administrative fee", "research grant" or other name when the payment is, in truth, a financial inducement for ordering the drugs. These payments further reduce the providers' costs and are concealed from the Government.

c) Paying rebates to the providers which are concealed from the Government, further reducing the true cost of the drug and increasing the illegal profit spread.

d) Falsifying invoice prices to conceal additional reductions in the provider's true acquisition cost of the drugs.

156. Each of the methods employed by the DEFENDANTS in paying illegal financial inducements have the effect of misleading the Medicare and Medicaid Programs about the providers' cost of the drugs and of impeding the Programs' ability to estimate acquisition costs. The DEFENDANTS' actions result in claims being paid at exorbitant amounts.

**Subsection 7f**

**The DEFENDANTS Intentionally Impede Government Efforts to Accurately Estimate Acquisition Costs and Deprive the Government of the Benefits of Truthful Price and Cost Representations**

157. The DEFENDANTS have each knowingly and actively impeded the efforts of the Government: to arrive at reasonable estimates of acquisition cost in setting payment amounts for claims for the specified drugs; to benefit from drug price competition;

and to use the Government's huge volume purchasing power for the benefit of the taxpayer. The DEFENDANTS' acts include the knowing reporting of inflated price and cost information alleged throughout this Amended Complaint and in many instances include additional acts and omissions such as those alleged in this Subsection.

158.

159.

160.