# ATTACHMENT G

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | MDL NO. 1456 |
| | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* No. 06-CV-11337-PBS | )' ) ) ) | Chief Magistrate Judge Marianne B. Bowler |

## ABBOTT LABORATORIES INC.'S MOTION FOR A PROTECTIVE ORDER
## BARRING THE DEPOSITION OF ITS CEO, MILES WHITE

On April 4, 2007, plaintiff United States of America served Abbott with a letter request seeking dates for the deposition of Abbott's Chief Executive Officer and the Chairman of its Board of Directors, Miles White. The parties met and conferred about this request on April 16, 2007, and the Government made clear in this call and through a follow-up letter the next day (*see* Ex. A) that it has no legitimate reason to take Mr. White's deposition. There is no dispute that, in order to justify the deposition of such a high-ranking corporate officer, the Government must (i) demonstrate that Mr. White has "unique personal knowledge" of an issue relevant to this litigation; and (ii) attempt first to obtain any such information through less-intrusive methods of discovery. As discussed below, the Government cannot meet the first prong, and has not even tried to meet the second. Its insistence on deposing Mr. White cannot therefore be considered a legitimate discovery request, but is instead a naked attempt to harass Abbott. Under Federal Rule of Civil Procedure 26(c), the Court is entitled to, and should, prohibit such abuse by entering a protective order barring this deposition.

## FACTUAL BACKGROUND

As the Court is aware, the Government alleges in this action that, from January 1, 1991, to January 2001, Abbott reported inflated drug prices for four drugs (dextrose solutions, sodium chloride solutions, sterile water, and Vancomycin), in an effort to create a profit spread for customers, who would be reimbursed by Medicare and Medicaid for more than what they actually paid for the drugs. (*See* Complaint). The Government conducted its investigation in secret for more than a decade prior to unsealing its action against Abbott and has collected documents from Abbott through various subpoenas starting as early as 1996. In addition, since this action commenced, Abbott has produced, and continues to produce, to the Government extensive documents relating to the pricing, marketing and sale of the subject drugs. The Government also has begun to depose witnesses from Abbott, either noticing the deposition of such witnesses in this case, or cross-noticing them in other AWP-related matters as part of the parties' effort to streamline discovery. The Government has participated in only a handful of depositions thus far, however; it is fair to say that many more will follow. The Government will have a full and fair opportunity to examine those Abbott employees who were directly involved in matters such as drug pricing, price reporting to various outside entities (including the federal and state governments and third-party publishing compendia), product marketing, product sales, and other issues relevant to this case.

Although it has just begun conducting depositions in this complex matter, the Government issued a letter request to Abbott's counsel on April 4, 2007, seeking available dates to conduct the deposition of Miles White, Abbott's CEO and Chairman of the Board of Directors. (*See* Ex. B; *see also* Affidavit of Miles D. White, attached as Ex. C, ¶ 1.) In this brief correspondence, the Government stated its intention to depose Mr. White about an October 2000 letter that Congressman Pete Stark addressed to Mr. White, as well as "other matters relating to

the United States' case against Abbott Labs." (Ex. B.) In order to evaluate this request, Abbott

asked for a meet and confer with Plaintiffs, to provide them an opportunity to state fully their

reasons for wishing to depose Mr. White and the bases, if any, for their belief that he possesses

some unique personal knowledge that would justify the clear imposition such deposition would

impose on both Mr. White and Abbott.

This meet and confer was held by telephone on April 16, 2007, and was attended by

counsel for the Government and Ven-A-Care, as well as counsel for the State of Texas (which,

along with Ven-a-Care, is pursuing similar AWP-related claims against Abbott in another matter

and which also has announced its intention to seek the deposition of Mr. White). Given a full

opportunity to make their case, Plaintiffs gave four reasons for deposing Mr. White:

1.    In October 1999, Mr. White was one of many persons within Abbott who was
      copied on a memorandum from Abbott's legal department informing the
      recipients of the need to preserve documents and information that might be
      relevant to then-pending AWP investigations.

2.    Mr. White may have been advised about certain AWP-related investigations
      involving Abbott prior to October 2000.

3.    In October 2000, Mr. White was the addressee of a letter from Congressman Pete
      Stark accusing Abbott of AWP-related misconduct.

4.    As CEO of Abbott, Mr. White has ultimate responsibility for all ethics and
      compliance efforts in the corporation, including in matters relating to
      pharmaceutical pricing and marketing.

(*See* Declaration of Jason G. Winchester, attached as Ex. D, at ¶ 5.) After hearing the Plaintiffs

out, Abbott's counsel indicated their belief that, even if all of these things were true, they still

would not justify Mr. White's deposition because there is no suggestion, much less proof, that he

has unique or superior personal knowledge about any of these subjects. (*Id.* ¶ 7.) The

Government followed up the next day with a letter reiterating these four contentions and adding

a fifth: that Plaintiffs should be allowed to depose Mr. White about a 2001 settlement of AWP-

related claims against another company (TAP, a joint venture owned by Abbott and Takeda Pharmaceutical Company Limited) about a drug (Lupron®) that is not at issue in this case. (*See* Ex. A.)  As discussed below, the reasons articulated by Plaintiffs, individually or collectively, are insufficient to meet the stringent standards that the law requires for conducting the deposition of Mr. White.  Their request to depose him should therefore be denied.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(2)(C) gives courts the discretion to prevent discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."  Courts have been especially willing to apply this rule when parties involved in litigation against a large corporation demand the deposition of the opponent's senior corporate officers – commonly referred to as "apex" depositions.  *See, e.g., Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003).  A top corporate official, such as a CEO, is "a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse." *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985).  In light of the "tremendous potential for discovery abuse and harassment," *Liberty Mutual Ins. Co. v. Superior Ct. of San Mateo County*, 10 Cal. App. 4th 1282, 1287 (1st Dist. 1992), both state and federal courts have long disfavored such depositions.  *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991).  Indeed, it has been said that "courts have a duty to recognize [a CEO's] vulnerability." *Mulvey*, 106 F.R.D. at 366; *see also Consol. Rail Corp. v. Primary Coal, Inc.*, 1993 WL 364471 at *1 (S.D.N.Y. Sept. 10, 1993) ("permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation").

Thus, contrary to the Government's oft-repeated mantra that it is "entitled" to question Mr. White under oath as it pleases (Ex. A at 2), courts routinely prohibit the deposition of high-ranking corporate executives, like Mr. White, unless the party seeking the deposition has overcome two major hurdles. *First,* the party must show that the executive in question has "unique personal knowledge" of an issue relevant to the case. *See, e.g., Thomas v. Int'l Bus. Mach.,* 48 F.3d 478, 483 (10th Cir. 1995) (protective order proper where plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the executive] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome"); *Evans,* 216 F.R.D. at 518 (denying depositions of three high-level executives of Allstate because "the information can . . . be obtained from other sources without deposing these 'apex' officers"); *Baine,* 141 F.R.D. at 334 (denying deposition of GM vice president, noting that "when a party seeks to depose high-level decisionmakers who are removed from the daily subjects of the litigation, the party much first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter in issue."); *M.A. Porazzi Co. v. The Mormaclark,* 16 F.R.D. 383, 383 (S.D.N.Y. 1951) (denying deposition of vice president because the same information could be gained from a lower-level employee); *Cardenas v. The Prudential Ins. Co. of Am.,* 2003 WL 21293757 at *2 (D. Minn. May 16, 2003) (denying depositions of several Prudential executives, finding that the plaintiffs had not shown that the executives "possess any information that could not be obtained from lower-level employees or other sources, much less that their knowledge of plaintiffs' allegations is 'unique.'"); *Consol. Rail Corp.,* 1993 WL 364471 at *1 (deferring depositions of three executives until "it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases."); *In re Alcatel USA, Inc.,* 11 S.W.3d 173, 179 (Tex. 2000) (trial court abused its discretion by allowing depositions of two

Samsung executives, in part because they had no unique knowledge); *Liberty Mutual*, 10 Cal. App. 4th at 1289 ("when a plaintiff seeks to depose a corporate president . . . the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information.").

*Second,* courts have insisted that all avenues of less-burdensome discovery, such as written interrogatories and depositions of more easily-accessible witnesses who might be able to reveal the same information, be exhausted before allowing a high-level executive to be deposed. *See, e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (noting that "failure to take advantage of [an] inexpensive, convenient method of discovery, *i.e.* interrogatories, casts serious doubt over [the] claim that [the executive] possessed information that was more than marginally relevant to [the] civil action."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (deposition of Upjohn president properly barred where plaintiff had not first taken depositions of lower-level employees who could provide the same information); *Stone v. Morton Int'l*, 170 F.R.D. 498, 504 (D. Utah 1997) (requiring 30(b)(6) deposition and exhaustion of other discovery methods before corporate officer could be deposed); *Mulvey*, 106 F.R.D. at 366 (quashing deposition notice of CEO because less intrusive discovery methods should be pursued first); *In re Alcatel USA, Inc.*, 11 S.W.3d at 180-81 (holding that trial court abused its discretion by allowing deposition of two Samsung apex executives in part because Plaintiff had been given opportunity to depose other employees who arguably possess the same information and had declined); *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("We conclude it amounts to an abuse of discretion to withhold a protective order when a plaintiff seeks to depose a corporate president . . . absent exhaustion of less intrusive discovery methods.").

Case 1:01-cv-12257-PBS      Document 4202      Filed 05/14/2007      Page 7 of 16

The result should be no different here.  Abbott is a multinational company that is currently involved in more than 500 litigation matters, including more than 25 cases that raise the same sort of AWP-related claims at issue here.  If Mr. White were forced to sit even for short depositions in only half of those cases, his job would be transformed from CEO of a major corporation to professional deposition witness.  Faced with the incontrovertible burden and prejudice that this deposition would impose upon both Mr. White and Abbott, Plaintiffs seek to justify the deposition with little more than their own view that they are "entitled" to question him about his knowledge of this case.  But Plaintiffs have not made and cannot make any showing that Mr. White has unique personal knowledge of any issue relevant to this case.  Moreover, Plaintiffs have made no effort at all to exhaust other, less intrusive, means to discover any relevant information, such as deposing lower-level Abbott employees or serving written discovery.  Failing both prongs of the applicable legal standard, Plaintiffs' request to depose Mr. White must be denied.

## I.   PLAINTIFFS HAVE MADE NO SHOWING THAT MR. WHITE HAS "UNIQUE PERSONAL KNOWLEDGE" OF ANY TOPIC RELEVANT TO THE CASE

Contrary to Plaintiffs' apparent view, the "unique and personal knowledge" standard cannot be satisfied merely by asserting that the executive might have some knowledge of relevant information.  "If 'some knowledge' were enough, the apex deposition guidelines would be meaningless; they would be virtually indistinguishable from the scope of general discovery." *In re Alcatel USA, Inc.*, 11 S.W.3d at 179; *see also Baine v. General Motors Corp.*, 141 F.R.D. at 334; *Consol. Rail Corp.*, 1993 WL 364471 at *1.  Although the "unique personal knowledge" standard is not rigidly defined, in order to have any meaning at all, "there must be some showing beyond mere relevance, such as evidence that a high-level executive is the *only* person with personal knowledge of the information sought or that the executive arguably possesses relevant

knowledge greater in quality or quantity than other available sources." *Alcatel*, 11 S.W.3d at 179 (emphasis added). Plaintiffs cannot make that showing here.

### 1.    The Litigation Hold Memorandum

Plaintiffs' first articulated basis for wanting to depose Mr. White shows the true character of this entire exercise:  "[Mr. White] was the recipient of a October 1999 litigation hold memorandum related to the Government's investigation of Abbott's pricing and marketing conduct." (Ex. A at 2.)  The document preservation memo in question was distributed to more than 70 people within Abbott; Mr. White and several others, including Abbott's General Counsel, are listed as "cc" recipients. (*See* Ex. E.)  The Government's contention that it can show that Mr. White has "unique and personal" knowledge of this litigation because he was one of about 70 people at Abbott who were copied on a litigation hold memorandum is ridiculous on its face.  To the extent that the Government wishes to question Mr. White about what if any "discussions he had related to the investigation" that prompted the issuance of the litigation hold memorandum (Ex. A at 2), that information is privileged and thus not subject to discovery. (*See* Ex. C, ¶ 3.)

### 2.    General Knowledge of Investigations Involving Abbott

The Government's remaining justifications for deposing Mr. White are equally groundless.  Moving on from his receipt of a litigation hold notice, the Government next proclaims its entitlement to question Mr. White about what if any "briefings" he may have had relating to Congressional inquiries or investigations involving Abbott in and before 2000. (Ex. B at 2.)  Even by framing the issue, the Government reveals its impropriety, for if Mr. White were in fact "briefed" by others within Abbott about pending investigations, then he could not possibly have the sort of unique personal knowledge necessary to justify his deposition. *See,*

*e.g., Alcatel,* 11 S.W.3d at 179.[1]  Although this fact alone dooms the Government's request, Mr.

White also has confirmed that any knowledge he has about specific allegations and legal theories

raised in any AWP-related investigation or lawsuit would have come through privileged

communications with his legal counsel.  (Ex. C, ¶ 3.)  Moreover, Mr. White has no unique or

superior personal knowledge within Abbott about any of the alleged business practices at issue in

these matters.  *(Id.)*  The Government's request to depose Mr. White about this subject must be

denied.

### 3.      Letter to Abbott from Congressman Stark

In about October 2000, Congressman Pete Stark sent a letter to Abbott, leveling the same

accusations of AWP-related misconduct that are raised in this and other, similar lawsuits.  (Ex.

F.)  Abbott did not respond to Congressman Stark.  Nevertheless, because this letter happened to

be addressed to Mr. White, the Government now claims that it has a "right" to depose him about

it. (Ex. A at 2.)  Not so.  To the contrary, the case law makes clear that the mere fact that Mr.

White was the addressee chosen by Congressman Stark for this letter does *not* show that he has

any unique personal knowledge regarding any actions the company may have taken after

receiving the letter, nor even regarding the letter itself. *See Liberty Mutual,* 10 Cal. App. 4th at

1286 (rejecting argument that simply being copied on two letters regarding the case was enough

---

[1] Thus, this case stands in stark contrast to cases where courts have been willing to find that a corporate executive possesses unique and personal knowledge, such as *Travelers Rental Co., Inc. v. Ford Motor Co.,* 116 F.R.D. 140 (D. Mass. 1987). In that case, the plaintiff made a strong factual showing that the corporate executives at issue had unique personal knowledge of the discrete policy that was the topic of the requested deposition. *Id.* at 143 (executive was "significantly involved in the administration and implementation" of program central to the parties' dispute); *see also Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 203 F.R.D. 98, 104 (S.D.N.Y. 2001) (allowing deposition of Sony's CEO where plaintiff offered evidence showing that the executive had unique knowledge about the subject of the suit and plaintiff had already exhausted other, less-intrusive means to obtain the discovery). Although apex depositions may be appropriate when the focus is narrowly-defined, and substantial evidence demonstrates that the executive has unique insight into the relevant topics, this case presents the polar opposite situation. Here, the Government wishes to take a scattershot deposition of Abbott's CEO about AWP-related issues, yet it has offered no showing whatsoever that Mr. White has any unique or superior personal knowledge about these issues within the company.

to warrant a deposition of defendant's president and chief executive officer in a fraud case);

*Alcatel*, 11 S.W.3d at 179 (receipt of a document does not mean that an individual has unique

knowledge related to that document).  Were the rule otherwise, one could always engineer the

deposition of a top corporate officer in litigation simply by sending him or her a letter about the

case.

The Government has made no showing whatsoever that Mr. White has any unique

personal knowledge of the matters raised by Congressman Stark in his letter (to which Abbott

never responded), nor could it.  Abbott Laboratories is a global corporation, with more than

65,000 employees working in more than 100 facilities around the world.  In his capacity as CEO,

Mr. White is advised by others within Abbott as necessary about matters such as the marketing,

pricing and sale of Abbott's drugs (which are the issues mentioned by Congressman Stark), but

he does not have any unique or superior knowledge about these issues within the company.  (Ex.

C, ¶ 2.)  Accordingly, the Government's request to depose Mr. White about the letter from

Congressman Stark must be denied.

### 4.    Ethics and Compliance

The Government next claims that, because Mr. White is the CEO and is therefore

ultimately responsible for Abbott's ethics and compliance activities, it should be allowed to

depose him about what if any guidelines Abbott instituted as a result of AWP lawsuits or

investigations.  (Ex. A at 3.)  Again, the Government puts the cart before the horse.  Indeed, the

Government's assertion ultimately "amounts to nothing more than the simple, obvious

recognition that the highest-ranking corporate officer of any corporation has the ultimate

responsibility for all corporate decisions[.]" *In re Alcatel USA, Inc.*, 11 S.W.3d at 177 (quoting

*AMR Corp. v. Enlow*, 926 S.W.2d 640 (Tex. App. 1996)).  Yet, "[t]estimony that a corporate

executive possesses knowledge of company policies does not, by itself, . . . show that the

executive has unique or superior knowledge" about such issues. *Id. See also Thomas*, 48 F.3d at 483 (even where an apex executive personally authored the policy in question, deposition will not be allowed unless plaintiff first demonstrates that relevant information cannot be obtained from other employees or sources). Here, the Government has not even attempted to show that Mr. White has any unique or superior knowledge about ethics and compliance issues within Abbott, and thus it cannot be allowed to depose him.

### 5.    The TAP Plea and Settlement

Finally, the Government claims a "right to inquire into [Mr. White's] involvement in the [2001] resolution of" a case brought by the Government against TAP Pharmaceutical Products Inc. and involving the drug LUPRON®. (Ex. A at 3.) Of course, TAP (a joint venture of Abbott and Takeda Pharmaceutical Company Limited) is not a defendant in this case, and there is no claim at issue here even arguably related to LUPRON®. Nevertheless, the Government argues that it should be allowed to depose Mr. White about that other case because it too involved allegations of "spread marketing," and because the "size of the civil settlement" in that matter gives rise to some perceived inference that Mr. White must have been involved in analyzing and approving the settlement. (*Id.*) This argument fails.

As an initial matter, information about the TAP litigation and settlement is wholly irrelevant to this case, and the Government's flimsy assertion that both matters involve alleged "spread marketing" does not change that fact. TAP is a separate company, and the allegations in that case related exclusively to LUPRON®, a drug not at issue in this case. As this Court has made clear, the Government is entitled to discovery about the four drugs that it elected to charge in its complaint, but that in no way gives the Government license to conduct a freewheeling fishing expedition into other Abbott drugs, much less those of another company. (2/27/07 Hrg. Tr. at p. 9 ("You're not entitled to documents on any single drug if you haven't charged it.")

Moreover, even if the TAP settlement had some marginal relevance here (and it does not), "proof of the importance of the project to [a company], combined with the allegation that the issue in this case 'smacks of chairman-level importance,' at most tends to show that the chairman-level official whose deposition is sought may possess discoverable information. It does not, however, arguably show that the official's knowledge is unique or superior." *In re Alcatel USA, Inc.*, 11 S.W.3d. at 177; *see also id.* at 179 (noting that if "some knowledge" was the equivalent of "unique" knowledge, the standards for apex executives would be "virtually indistinguishable from the scope of general discovery."). As with all of its other requests, the Government has shown no basis for deposing Mr. White about the TAP settlement.

*   *   *   *

In sum, none of the Government's paper-thin rationales establish that Mr. White has unique or superior personal knowledge of any matter relevant to this litigation. Case law, including this district's own, is clear that such a showing is a necessary precursor to allowing an apex deposition. Because this showing has not been, and cannot be, made here, this court should grant a protective order barring plaintiffs from deposing Mr. White.

## II.   ANY ARGUABLY RELEVANT DISCOVERY FROM MR. WHITE IS AVAILABLE FROM LESS BURDENSOME SOURCES

Although the Court need not reach this issue in order to grant Abbott's motion, a protective order is also warranted here because the Government has made no attempt to exhaust other, less-intrusive means of gathering discovery before seeking the deposition of Mr. White. The case law uniformly instructs that, before a party is permitted to conduct an apex deposition, it must first pursue other avenues, such as (i) depositions of lower-level employees or corporate 30(b)(6) designees; or (ii) written discovery. *Patterson*, 281 F.3d at 682 (failure to utilize such alternative discovery "casts serious doubt over [plaintiff's] claim that [the executive] possessed information that was more than marginally relevant to her civil action."); *Salter v. Upjohn Co.*,

593 F.2d at 651; *Stone*, 170 F.R.D. at 504; *Mulvey*, 106 F.R.D. at 366; *Baine,* 141 F.R.D. at 335;

*In re Alcatel USA, Inc.*, 11 S.W.3d at 176; *Liberty Mutual*, 10 Cal. App. 4th at 1289.

The rationale for this rule is simple. Often, lower-level employees have the greatest and most direct knowledge of the relevant facts. *Upjohn*, 593 F.2d at 651. It is "very likely that, after taking the other employees' depositions, plaintiff would be satisfied and abandon [its] requests to depose [the apex executive.]" *Id.* That is almost surely the case here, as Mr. White has made clear that, although he is informed as necessary by others within the organization about issues such as drug pricing, marketing or sale, he has no unique or superior knowledge about these matters. (Ex. C, ¶ 2.) The Government can access any relevant evidence about topics germane to this litigation by deposing lower-level employees – a process that has only just begun.[2]

If the deposition of any top executive must be had (and the Government has offered no reason why it ever should be here), it only makes practical sense to defer it until the end of the discovery process, after the lower-level employees with the greatest knowledge about topics relevant to the litigation have been deposed. "At the very least, [further discovery] would aid in developing and refining a line of questioning [for the apex executive]," and should result in less duplicative, inconvenient, and burdensome discovery. *Baine*, 141 F.R.D. at 335; *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("it would seem sensible to prevent a plaintiff from leap-frogging to the apex of the corporate hierarchy in the first instance, without the intermediate steps of seeking discovery from lower-level employees more involved in everyday corporate operations").

---

[2] The Government has taken only one 30(b)(6) deposition, and that related exclusively to document collection practices.

In addition, written interrogatories provide another, less-burdensome alternative to deposing a high-level executive. Such interrogatories allow "plaintiffs' rights [to] be fully protected as well as those of [the executive]," and allow "an orderly discovery process [to] be best served[.]" *Mulvey*, 106 F.R.D. at 366; *see also Patterson*, 281 F.3d at 682; *Baine*, 141 F.R.D. at 334-35; *Liberty Mutual*, 10 Cal. App. 4th 1289-90; *Colonial Capital Co. v. General Motors*, 29 F.R.D. 514, 518 (D. Conn. 1961) (granting CEO of General Motors's request to answer interrogatories in lieu of deposition "to minimize the amount of time he must take from his duties").

Rather than even attempt any of these options, the Government is seeking to *begin* discovery by deposing Abbott's CEO. Courts have recognized that this practice is patently "unreasonable," and it should not be allowed here. *Liberty Mutual*, 10 Cal. App. 4th at 1287.

## CONCLUSION

Because the Government has not shown that Mr. White has unique or superior personal knowledge of any issue relevant to this litigation, and because it has not even attempted to exhaust other, less-burdensome means to gather relevant discovery, this Court should grant Abbott's motion, and should enter an order prohibiting the deposition of Mr. White.

Dated:  May 14, 2007

Respectfully submitted,

ABBOTT LABORATORIES INC.

By: /s/ Jason G. Winchester


James R. Daly
Tina M. Tabacchi
Jason G. Winchester
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 14, 2007, the foregoing **ABBOTT LABORATORIES INC.'S MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF ITS CEO, MILES WHITE** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Carol P. Geisler