# ATTACHMENT H

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456 <br> ) <br> ) CIVIL ACTION: 01-CV-12257-PBS <br> ) <br> ) Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO <br> *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, <br> No. 06-CV-11337-PBS | ) <br> ) Chief Magistrate Judge Marianne B. Bowler <br> ) <br> ) |

### ABBOTT LABORATORIES INC.'S RENEWED MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF ITS CEO, MILES WHITE

On July 20, 2007, after full briefing and argument, this Court allowed Abbott's motion for a protective order barring the Government from deposing Miles White, Abbott's CEO and Chairman of the Board of Directors – permitting the Government only to pose three questions to Mr. White in writing. (*See* Dkt. No. 4202; *see also* July 20, 2007 Tr. of Mtn. Hrg., attached as Ex. A, at 36-49.)  The Government has tendered its questions, and Mr. White has responded, in full and under oath – confirming precisely what Abbott said in its initial motion: that he has no unique personal knowledge about issues relevant to this litigation that would justify his deposition.

As expected, however, the Government immediately renewed its request to depose Mr. White, claiming that his sworn answers are inadequate (when all they really mean is that they do not like the answers). Yet, the Government offers not a single scrap of additional evidence to support this deposition beyond what the Court already heard and found wanting when this motion was argued the first time. The record has not changed (except to demonstrate even more concretely that Mr. White has no unique personal knowledge), and nor should the Court's ruling. The Government's demand to depose Mr. White should again be denied.

## FACTUAL BACKGROUND

On July 20, 2007, this Court permitted the Government to pose three written questions to Mr. White relating to Abbott's receipt in or about October 2000 of a letter from Congressman Pete Stark (the "Stark letter") making various allegations relating to AWP. (Ex. A at 45-46.) The Government served its written deposition questions upon Mr. White on August 7, 2007, and attached certain exhibits that the Government deemed relevant to its questions, including the Stark letter. (*See* Ex. B.) Overreaching as ever, the Government used subparts to turn the three questions it was allowed to ask into 17. (*Id.*) Notwithstanding this stretch of the Court's instructions, Mr. White considered and responded to the Government's questions in full and under oath. (*See* Ex. C.)

Mr. White attested that he does not recall ever seeing the Stark letter until it was shown to him by counsel in the course of responding to these written deposition questions from the Government, and that he does not recall ever discussing the letter with anyone other than legal counsel. (*Id.* at Nos. 1-3.) He made clear that his general practice is to route any correspondence that relates to a pending or potential investigation of, or lawsuit against, Abbott (and the Stark letter certainly would qualify) directly to Abbott's General Counsel and/or Abbott's Litigation Department, who are responsible for addressing such matters. (*Id.* at No. 1.) Mr. White is unaware whether Abbott ever responded to Congressman Stark, or took any other action as a result of the letter. (*Id.* at No. 3.)[1]

Despite the fact that Mr. White's answers clearly confirm that he has no unique personal knowledge of the issues posed to him, the Government nonetheless immediately renewed its

---

[1] The uncontroverted record shows that Abbott was not required to, and did not, respond to the Stark letter. (Ex. A at 44-45.)

demand for a live deposition. (*See* Sep. 12, 2007 letter from G. Gobena, attached as Ex. D.) The Government claims that it should be allowed to proceed with a deposition on all of the topics that were previously briefed and argued to the Court, but has not offered any new evidence that it claims would show unique, personal knowledge of Mr. White. (*Id.*)

## ARGUMENT

The law governing apex depositions is clear and need not be reiterated here. (*See* cases collected in Dkt. No. 4202 at 4-7.) In order to justify its request to depose Mr. White, the Government must show (i) that he has "unique personal knowledge" of an issue relevant to the case; and (ii) that all less-burdensome avenues to seek that information, such as written interrogatories and depositions of more lower-level witnesses, have been exhausted. (*Id.*) The Government can make neither showing, and therefore its renewed request to depose Mr. White should suffer the same fate as its initial request.

In resurrecting its demand to depose Mr. White, the Government claims that "our consent" to proceed with written questions directed to Mr. White was just the first step to a live deposition. (*Id.*) Of course, it was the Court's July 20 order, not the Government's "consent," that led to this process. The Court considered briefing and argument from the Government about all of its purported reasons for wanting to depose Mr. White, and it concluded that the appropriate course was to limit the Government to posing three written deposition questions – presumably to test the Government's contention that Mr. White had some unique personal knowledge about the Stark letter and its supposed aftermath. (Ex. A at 36-48.) Pursuant to the Court's directive, the questions that the Government deemed so important to raise with Mr. White have now been asked and answered, and the record is clear: Mr. White does not have any unique personal knowledge that could possibly justify his deposition. To the contrary, he has no knowledge of having even read the Stark letter (the singular arrow in the Government's quiver)

before it was shown to him in the course of responding to these deposition questions, much less taking any action in response to the letter. (Ex. C at Nos. 1-3.)

Brushing aside Mr. White's sworn responses as a "vague and inadequate proxy" for live testimony (a claim that doubtless would have been made regardless what his answers were), the Government proclaims its right to proceed with a deposition. (Ex. D.) The only basis that the Government offers beyond its mere say-so, however, is the vague assertion that there "is a potential conflict between [Mr. White's answers] and the evidence," which supposed conflict the Government wishes to explore by showing documents to Mr. White in a deposition. (*Id.*) Such an unsupported assertion barely warrants consideration. The Government had an opportunity to provide documents for Mr. White's review if it wished to do so, and it took advantage of this opportunity by appending exhibits to the written deposition questions. (*See* Ex. B.) To come forward now and attempt to erect a phantom "conflict" that can only be resolved by showing Mr. White yet more documents at a deposition is sharp practice.

The Government had and availed itself of a full and fair opportunity to present written questions and exhibits to Mr. White about those issues that it believed (incorrectly) he was in possession of unique personal knowledge. The exercise did no more than to prove that the Government was wrong. Thus, the only difference between the record today and that which the Court considered in July is that there is now *more* evidence tending to show that Mr. White has no unique personal knowledge about matters relevant to this case. In July, the Court found that the Government's evidence could justify only three written deposition questions of Mr. White. Based upon the more fully-developed record now available, the Government's evidence justifies nothing. Mr. White's deposition should not be had.

Although the Government's failure to show that Mr. White has any unique personal knowledge of relevant issues is, by itself, sufficient to warrant a protective order, it also should be noted that the Government has failed to exhaust less burdensome means of pursuing discovery. In particular, many depositions of lower-level employees have been noticed (and more will surely be noticed in the future), but not yet taken. At a minimum, therefore, the Government should be required to defer its request to depose Mr. White until the end of the discovery process, after the lower-level employees with the greatest knowledge about topics relevant to this litigation have been deposed. Then, the Government can reassess whether, in light of all of the discovery conducted, it still believes that this deposition is necessary. If it does, then the Court can determine, based on a full record, whether there is a proper basis for the deposition to go forward, and on what terms. "At the very least, [further discovery] would aid in developing and refining a line of questioning [for the apex executive]," and should result in less duplicative, inconvenient, and burdensome discovery. *Baine v. General Motors Corp.*, 141 F.R.D. at 335; *Liberty Mutual Ins. Co. v. Superior Ct. of San Mateo County*, 10 Cal. App. 4th 1282, 1287 (1st Dist. 1992) ("it would seem sensible to prevent a plaintiff from leap-frogging to the apex of the corporate hierarchy in the first instance, without the intermediate steps of seeking discovery from lower-level employees more involved in everyday corporate operations").

## CONCLUSION

Because the Government has not shown that Mr. White has unique or superior personal knowledge of any issue relevant to this litigation, and because it has not exhausted other, less-burdensome means to gather relevant discovery, the Court should grant this motion, and should affirm its previous ruling that the Government is not entitled to a live deposition of Mr. White. Alternatively, the Court at a minimum should order that the Government defer its request to depose Mr. White until the end of the fact discovery period, at which time the parties and, if

necessary, the Court can reassess any perceived need for this deposition based upon a more fully-developed record.

Dated: October 3, 2007

Respectfully submitted,

ABBOTT LABORATORIES INC.

By: /s/ Brian J. Murray

James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on October 3, 2007, the foregoing **ABBOTT LABORATORIES INC.'S RENEWED MOTION FOR A PROTECTIVE ORDER BARRING THE DEPOSITION OF ITS CEO, MILES WHITE** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Brian J. Murray

CHI-1609433v1