# ATTACHMENT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO<br>*U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*,<br>No. 06-CV-11337-PBS | ) ) ) ) | Chief Magistrate Judge Marianne B. Bowler |

**MOTION OF ABBOTT LABORATORIES INC., DUANE BURNHAM, AND THOMAS HODGSON FOR A PROTECTIVE ORDER RELATING TO THE PROPOSED DEPOSITIONS OF MESSRS. BURNHAM AND HODGSON**

Plaintiff United States of America has notified Abbott that it wishes to conduct the depositions of Duane Burnham (Abbott's former Chief Executive Officer and Chairman of the Board of Directors), and Thomas Hodgson (Abbott's former President and Chief Operating Officer). As former top corporate executives, these gentlemen are considered "apex" witnesses, and, under the law, should not be subject to deposition unless the Government (i) demonstrates that they have "unique personal knowledge" of an issue relevant to this litigation; and (ii) attempts first to obtain any such information through less-intrusive methods of discovery. As discussed below, the Government cannot satisfy either prong of this standard. Accordingly, under Federal Rule of Civil Procedure 26(c), the Court is entitled to, and should, enter a protective order barring these proposed depositions.

**FACTUAL BACKGROUND**

In this action, the Government alleges that, from January 1, 1991, to January 2001, Abbott reported inflated drug prices for four drugs that were marketed by Abbott's former Hospital Products Division (dextrose solutions, sodium chloride solutions, sterile water, and Vancomycin), in an effort to create a profit spread for customers, who would be reimbursed by

Medicare and Medicaid for more than what they actually paid for the drugs. (*See* Complaint).[1] The Government has served extensive written discovery, and it has deposed and/or requested the depositions of more than 30 current and former Abbott employees, many of whom were directly involved in matters such as drug pricing, price reporting to various outside entities (including the federal and state governments and third-party publishing compendia), product marketing, product sales, and other issues relevant to this case.

Not content simply to depose the persons who were directly involved in (and therefore have the greatest knowledge about) these issues, however, the Government has lately turned its attention to seeking the depositions of Abbott's top corporate officers. From Abbott's perspective, this strategy is designed much more to "turn the heat up" on Abbott than to serve any legitimate need for investigation – a fact made manifest by the Government's refusal to narrow the subject matter of these apex depositions in any way. Yet, the controlling law recognizes that senior corporate officials are particularly susceptible to, and entitled to protection from, such harassment. *E.g., Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985). Heeding this precedent, the Court recently considered and denied the Government's request to depose Abbott CEO Miles White, finding that the parties' respective interests could be better served by the submission of three, narrowly-focused questions to Mr. White in writing. Undeterred, the Government has sought the deposition of a host of other current and former Abbott senior executives, including:

- Cathy Babington – Current Vice President of Public Affairs
- Duane Burnham – Former CEO and Chairman of the Board of Directors

---

[1] The Government has sought to add allegations relating to a fifth drug – acyclovir (also an HPD product) – in its First Amended Complaint. Abbott has moved to dismiss that complaint, however, and that motion is presently pending before Judge Saris. (Dkt. No. 4469, 4470.)

- Richard Gonzalez – Current President and COO
- Rosemary Haas – Senior Director, Federal Government Affairs
- Thomas Hodgson – Former President and COO
- Peter Karas – Former HPD Divisional Vice President of Sales
- David Landsidle – Former Divisional Vice President, Government Affairs
- Loreen Mershimer – Current Vice President of Integrated Health Care Marketing
- Donald Robertson – Former Vice President of the Alternate Site business unit in HPD
- Cynthia Sensibaugh – Senior Director, Federal Government Affairs

Abbott has not taken the position that no corporate executive should ever be deposed. To the contrary, where it is apparent that such persons may have been directly involved in, or have directly supervised, matters that are potentially relevant to this litigation, Abbott has agreed to make them available for deposition – despite the substantial inconvenience that such depositions entail for the witnesses and the organization. For example, Abbott has agreed to the depositions of Ms. Babington, Ms. Mershimer, Ms. Haas, Ms. Sensibaugh, and Messrs. Karas, Robertson, and Landsidle.

Abbott cannot agree, however, to the Government's request as to Messrs. Burnham or Hodgson. Abbott met and conferred with the Government on July 17, July 27, and August 8 regarding these depositions. (*See* Declaration of Jason G. Winchester, Ex. A, at ¶ 4.) During these discussions, the Government had a full opportunity (several, in fact) to articulate why these gentlemen should be deposed. As discussed below, the Government's proffered reasons, individually or collectively, are not enough to clear the high bar that the law sets for apex depositions. The Government's request should therefore be denied.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(2)(C) gives courts the discretion to prevent discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Courts have been especially willing to apply this rule when parties involved in litigation against a large corporation demand the deposition of the opponent's senior corporate officers – commonly referred to as "apex" depositions. *See, e.g., Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003). A top corporate official is "a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse." *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985). In light of the "tremendous potential for discovery abuse and harassment," *Liberty Mutual Ins. Co. v. Superior Ct. of San Mateo County*, 10 Cal. App. 4th 1282, 1287 (1st Dist. 1992), both state and federal courts have long disfavored such depositions. *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991). Indeed, it has been said that "courts have a duty to recognize [the] vulnerability" of such persons to harassment, and to protect them from it. *Mulvey*, 106 F.R.D. at 366; *see also Consol. Rail Corp. v. Primary Coal, Inc.*, 1993 WL 364471 at *1 (S.D.N.Y. Sept. 10, 1993) ("permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation"). This same protection also applies to retired executives. *See, e.g., In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987, 29 (D.N.Y. 2006); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, 11-12 (D. Cal. 2007).

In order to justify the deposition of high-ranking corporate executives, like Messrs. Burnham and Hodgson, the party seeking the deposition must overcome two major hurdles.

*First*, the party must show that the executive in question has "unique personal knowledge" of an issue relevant to the case. *See, e.g., Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 483 (10th Cir. 1995) (protective order proper where plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the executive] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome"); *Evans*, 216 F.R.D. at 518 (denying depositions of three high-level executives of Allstate because "the information can . . . be obtained from other sources without deposing these 'apex' officers"); *Baine*, 141 F.R.D. at 334 (denying deposition of GM vice president, noting that "when a party seeks to depose high-level decisionmakers who are removed from the daily subjects of the litigation, the party much first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter in issue."); *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383, 383 (S.D.N.Y. 1951) (denying deposition of vice president because the same information could be gained from a lower-level employee); *Cardenas v. The Prudential Ins. Co. of Am.*, 2003 WL 21293757 at *2 (D. Minn. May 16, 2003) (denying depositions of several Prudential executives, finding that the plaintiffs had not shown that the executives "possess any information that could not be obtained from lower-level employees or other sources, much less that their knowledge of plaintiffs' allegations is 'unique.'"); *Consol. Rail Corp.*, 1993 WL 364471 at *1 (deferring depositions of three executives until "it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases."); *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 179 (Tex. 2000) (trial court abused its discretion by allowing depositions of two Samsung executives, in part because they had no unique knowledge); *Liberty Mutual*, 10 Cal. App. 4th at 1289 ("when a plaintiff seeks to depose a corporate president . . . the trial court should first determine whether the plaintiff has

shown good cause that the official has unique or superior personal knowledge of discoverable information.").

*Second*, courts have insisted that all avenues of less-burdensome discovery, such as written interrogatories and depositions of more easily-accessible witnesses who might be able to reveal the same information, be exhausted before allowing a high-level executive to be deposed. *See, e.g.,* FED. R. CIV. P. 26(b)(2)(C) (giving courts discretion to prevent discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"); *In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987, 29 (D.N.Y. 2006) (directing plaintiff to submit interrogatories or pursue a 30(b)(6) witness in lieu of deposing the former CEO of defendant's subsidiary); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (noting that "failure to take advantage of [an] inexpensive, convenient method of discovery, *i.e.* interrogatories, casts serious doubt over [the] claim that [the executive] possessed information that was more than marginally relevant to [the] civil action."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (deposition of Upjohn president properly barred where plaintiff had not first taken depositions of lower-level employees who could provide the same information); *Stone v. Morton Int'l*, 170 F.R.D. 498, 504 (D. Utah 1997) (requiring 30(b)(6) deposition and exhaustion of other discovery methods before corporate officer could be deposed); *Mulvey*, 106 F.R.D. at 366 (quashing deposition notice of CEO because less intrusive discovery methods should be pursued first); *In re Alcatel USA, Inc.*, 11 S.W.3d at 180-81 (holding that trial court abused its discretion by allowing deposition of two Samsung apex executives in part because Plaintiff had been given opportunity to depose other employees who arguably possess the same information and had declined); *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("We conclude it

amounts to an abuse of discretion to withhold a protective order when a plaintiff seeks to depose a corporate president . . . absent exhaustion of less intrusive discovery methods.").

The result should be no different here. Messrs. Burnham and Hodgson have been retired from Abbott for nearly a decade. They keep active schedules and should not, as non-parties to this case, be forced toسبit for depositions. Faced with the incontrovertible burden and prejudice that these depositions would impose upon both the witnesses and Abbott, the Government seeks to justify the depositions with little more than its own supposition that the witnesses "might" know something by virtue of their former positions at Abbott. But the Government has not made and cannot make any showing that these witnesses have unique personal knowledge of any issue relevant to this case. As important, the Government has made no effort to exhaust fully other, less intrusive, means to discover any relevant information, such as deposing other Abbott employees or serving written discovery (as this Court directed with respect to Mr. White). Failing both prongs of the applicable legal standard, the Government's request to depose Messrs. Burnham and Hodgson must be denied.

## I. THE GOVERNMENT HAS MADE NO SHOWING THAT MR. BURNHAM OR MR. HODGSON HAS "UNIQUE PERSONAL KNOWLEDGE" OF ANY TOPIC RELEVANT TO THE CASE

The "unique personal knowledge" standard cannot be satisfied merely by asserting that the executive might have some knowledge of relevant information. "If 'some knowledge' were enough, the apex deposition guidelines would be meaningless; they would be virtually indistinguishable from the scope of general discovery." *In re Alcatel USA, Inc.*, 11 S.W.3d at 179; *see also Baine v. General Motors Corp.*, 141 F.R.D. at 334; *Consol. Rail Corp.*, 1993 WL 364471 at *1. Although the "unique personal knowledge" standard is not rigidly defined, in order to have any meaning at all, "there must be some showing beyond mere relevance, such as evidence that a high-level executive is the *only* person with personal knowledge of the

information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources." *Alcatel*, 11 S.W.3d at 179 (emphasis added). The Government cannot make that showing here.

### 1. Mr. Burnham

Mr. Burnham was Abbott's CEO from 1990 to April 1999, and Chairman of Abbott's Board of Directors from 1990 to December 1998. (*See* Declaration of Duane L. Burnham, attached as Ex. B, at ¶ 1.) He retired from Abbott in 1999. (*Id.*) As discussed below, the Government has offered no reason that would justify Mr. Burnham's deposition.

*First*, the Government suggests that it should be allowed to depose Mr. Burnham about certain lobbying efforts that he allegedly made on Abbott's behalf in conjunction with the Balanced Budget Act of 1997. (Ex. A at ¶ 6.) Mr. Burnham, however, does not recall any lobbying efforts connected to this decade-old legislation, nor of ever participating in any lobbying efforts related in any way to the reimbursement of pharmaceutical products by Medicare of Medicaid. (Ex. B at ¶ 3.) That alone should end the dispute. Moreover, the Government cannot possibly suggest that Mr. Burnham's deposition is required in order to fully investigate Abbott's lobbying efforts. The Government already has requested from Abbott (and has been provided with) all responsive, non-privileged documents related to Abbott's lobbying efforts on the 1997 Balanced Budget Act and any other legislation concerning reimbursement by Medicare or Medicaid. In addition, the Government has taken the depositions of senior Abbott personnel such as Cynthia Sensibaugh and Rosemary Haas from within the Government Affairs group, which coordinates Abbott's lobbying efforts. In October, the Government will depose David Landsidle, the former head of the Government Affairs group at the time of the 1997 Balanced Budget Act. There is no need to pile on the deposition of Mr. Burnham – particularly when he has attested that he remembers nothing about this subject. (*Id.*)

*Second*, the Government wishes to depose Mr. Burnham about his alleged involvement with healthcare-related advocacy groups, such as Healthcare Alliance or the Healthcare Leadership Council. (Ex. A at ¶ 6.) This rationale is similarly baseless. Mr. Burnham has never heard of, and has had no involvement with, Healthcare Alliance. (Ex. B at ¶ 4.) And although he was involved for a time, along with numerous other healthcare executives, in the Healthcare Leadership Council, he does not recall ever participating in any discussion or activity with the HLC that was related to pharmaceutical pricing or reimbursement for pharmaceutical products by Medicare or Medicaid – the only possible areas of relevance to this case. (*Id.* at ¶ 5.) Again, any legitimate interest that the Government might have in discovering Abbott's advocacy efforts is more than met by the documents it has received from Abbott and the depositions of Abbott's Government Affairs personnel. There is no reason to burden Mr. Burnham with a deposition about such issues.

*Finally*, the Government asserts generally that, since he was the top officer at Abbott during part of the time period alleged in the complaint, Mr. Burnham might know something relevant about the marketing, pricing or sale of Abbott's drugs. (Ex. A at ¶ 6.) It is clear that such broad-brush allegations will not suffice to meet the "unique personal knowledge" standard for apex depositions. *See, e.g., Alcatel*, 11 S.W.3d at 179. Moreover, during his tenure as CEO, Mr. Burnham was not responsible for supervising the day-to-day marketing, pricing and sales activities of Abbott around the world. (Ex. B at ¶ 6.) Like most top executives, he was advised by others within the organization about such issues as necessary. (*Id.*) He has had no involvement whatsoever with such activities since his retirement in 1999. (*Id.*) No evidence even suggests, much less establishes, that Mr. Burnham has such unique personal knowledge

-9-

about the marketing, pricing or sale of Abbott's products that he should be compelled to sit for a deposition.

### 2. Mr. Hodgson

Mr. Hodgson was the President and COO of Abbott from 1990 to 1999, when he retired. (*See* Declaration of Thomas R. Hodgson, attached as Ex. C, at ¶ 1.) Despite repeated requests from Abbott counsel to do so, the Government has not identified *any* action that Mr. Hodgson took that would justify his deposition. (Ex. A at ¶ 7.) Instead, the Government's position is that, since he was the second-in-command at Abbott during part of the time period alleged in the complaint, he might know something relevant. (*Id.*) For all of the reasons discussed above, this sort of unfocused assertion is patently insufficient to compel an apex deposition. *See, e.g., Alcatel*, 11 S.W.3d at 179; *see also Baine v. General Motors Corp.*, 141 F.R.D. at 334; *Consol. Rail Corp.*, 1993 WL 364471 at *1. During his time as President and COO, Mr. Hodgson was not responsible for supervising the day-to-day marketing, pricing, or sale of Abbott's products. (Ex. C at ¶ 3.) Prior to assuming the post as President and COO, Mr. Hodgson ran Abbott's international division from 1983 to 1990, where he focused solely on Abbott's business outside the United States. (*Id.* at ¶ 1.) Thus, Mr. Hodgson had no direct involvement with respect to the pricing, marketing, or sale of Abbott's products in the United States during any time period that is even arguably relevant to this case. Nor has he had any involvement with such matters since his retirement in 1999. (*Id.* at ¶ 3.)

The Government also has stated (with no supporting evidence) that Mr. Hodgson may have relevant information relating to a Medicare Working Group at Abbott (Ex. A at ¶ 7), but he

has never heard of such a group and had no role in participating in or supervising any of its activities (Ex. C at ¶ 4).[2]

* * * *

None of the Government's arguments establish that Messrs. Burnham or Hodgson has unique or superior personal knowledge of any matter relevant to this litigation. Case law is clear that such a showing is a necessary precursor to allowing an apex deposition. Because this showing has not been, and cannot be, made here, this Court should grant a protective order barring the deposition of these witnesses.

## II.   ANY ARGUABLY RELEVANT DISCOVERY FROM MESSRS. BURNHAM AND HODGSON COULD BE ACQUIRED THROUGH LESS BURDENSOME MEANS THAN A DEPOSITION

Although the Court need not reach this issue in order to grant the instant motion, a protective order also is warranted here because the Government has not exhausted other, less-intrusive means of gathering discovery before seeking the deposition of Messrs. Burnham or Hodgson. The case law uniformly instructs that, before a party is permitted to conduct an apex deposition, it must first pursue other avenues, such as (i) depositions of lower-level employees or corporate 30(b)(6) designees; or (ii) written discovery. *Patterson,* 281 F.3d at 682 (failure to utilize such alternative discovery "casts serious doubt over [plaintiff's] claim that [the executive] possessed information that was more than marginally relevant to her civil action."); *Salter v. Upjohn Co.,* 593 F.2d at 651; *Stone,* 170 F.R.D. at 504; *Mulvey,* 106 F.R.D. at 366; *Baine,* 141 F.R.D. at 335; *In re Alcatel USA, Inc.,* 11 S.W.3d at 176; *Liberty Mutual,* 10 Cal. App. 4th at 1289.

---

[2] It is also worth noting, in view of the Government's position about lobbying-related discovery, that Mr. Hodgson was never responsible for supervising the efforts of Abbott's Government Affairs group, and he does not recall ever participating in any lobbying on Abbott's behalf. (*Id.* at ¶ 5.)

The rationale for this rule is simple. Often, lower-level employees have the greatest and most direct knowledge of the relevant facts. *Upjohn*, 593 F.2d at 651. It is "very likely that, after taking the other employees' depositions, plaintiff would be satisfied and abandon [its] requests to depose [the apex executive.]" *Id.* That is almost surely the case here, as these witnesses were at the very top of the organization. Their knowledge, if any, about such issues as the pricing, marketing or sale of the subject drugs will in no way be unique within the organization, or superior to the knowledge held by lower-level employees who were more directly involved with these matters. The Government can access any relevant evidence about topics germane to this litigation by deposing lower-level employees – a process that is currently underway, but far from complete.

At a minimum, therefore, the Government should be required to defer its request to depose Messrs. Burnham and Hodgson until the end of the discovery process, after the lower-level employees with the greatest knowledge about topics relevant to the litigation have been deposed. Then, the Government can reassess whether, in light of all of the discovery conducted, it still believes that these depositions are necessary. If it does, then the Court can determine, based on a full record, whether there is a proper basis for the depositions to go forward, and on what terms. "At the very least, [further discovery] would aid in developing and refining a line of questioning [for the apex executive]," and should result in less duplicative, inconvenient, and burdensome discovery. *Baine*, 141 F.R.D. at 335; *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("it would seem sensible to prevent a plaintiff from leap-frogging to the apex of the corporate hierarchy in the first instance, without the intermediate steps of seeking discovery from lower-level employees more involved in everyday corporate operations").[3]

---

[3] Were the Court to order that the deposition of Messrs. Burnham or Hodgson go forward now, there clearly should be strict limitations on the time period for the depositions and the scope of permissible topics. During

In addition, as this Court recognized with respect to Mr. White, written interrogatories provide another, less-burdensome alternative to deposing a high-level executive. Such interrogatories allow "plaintiffs' rights [to] be fully protected as well as those of [the executive]," and allow "an orderly discovery process [to] be best served[.]" *Mulvey*, 106 F.R.D. at 366; *see also Patterson*, 281 F.3d at 682; *Baine*, 141 F.R.D. at 334-35; *Liberty Mutual*, 10 Cal. App. 4th 1289-90; *Colonial Capital Co. v. General Motors*, 29 F.R.D. 514, 518 (D. Conn. 1961) (granting CEO of General Motors's request to answer interrogatories in lieu of deposition "to minimize the amount of time he must take from his duties").

Rather than pursue any of these options, the Government instead seeks the "unreasonable" option of forcing the depositions of these former executives; this should not be allowed. *Liberty Mutual*, 10 Cal. App. 4th at 1287.

### III. IT WOULD BE UNDULY BURDENSOME TO FORCE MESSRS. BURNHAM OR HODGSON TO APPEAR FOR A DEPOSITION

In weighing the merits of this dispute, the Court clearly should consider the burden to Messrs. Burnham and Hodgson of being forced to sit for a deposition. Although these gentlemen are retired from Abbott, both remain active in the community. Mr. Burnham serves as a Trustee for the National Trust for Historic Preservation and as a Life Trustee of Northwestern University. (Ex. B at ¶ 7.)

---

(continued...)

the meet and confer process, the Government agreed only that it would attempt to complete each of these depositions in one full day, but it would not agree to any limitation as to topics. (Ex. A at ¶ 8.) That is unreasonable on both fronts. There is no reason that these depositions could not be completed in an hour or two at most. In addition, in order to protect against inefficiency and harassment, the topics to be covered with these witnesses in the event a deposition is ever allowed should be limited, and should be set forth in advance. *See, e.g., WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, 17 (D. Cal. 2007) (limiting deposition of former executive to certain enumerated topics).

Similarly, Mr. Hodgson is quite active in both business and civic roles. He currently serves on the Board of Directors of two public companies – The Travelers Companies, Inc. (a multi-billion dollar financial and insurance organization) and Idenix Pharmaceuticals, Inc. (a biopharmaceutical company). (Ex. C at ¶ 6.) He also serves as a director or advisor of several privately-held companies, and holds leadership roles in civic organizations such as a prominent medical center in Chicago and the Utah Symphony. (*Id.*) Mr. Hodgson's ongoing responsibilities, especially with respect to the two public companies that he helps to lead, are quite time-consuming. (*Id.*)

Particularly in light of the paltry showing of relevance offered by the Government, the burden to these retired executives of being subjected to a deposition far outweighs any possible benefit to the legitimate discovery efforts in this case. (Ex. B at ¶ 8; Ex. C at ¶ 7.)

## CONCLUSION

Because the Government has not shown that Messrs. Burnham or Hodgson has unique or superior personal knowledge of any issue relevant to this litigation, and because it has not exhausted other, less-burdensome means to gather relevant discovery, the Court should grant this motion, and should enter an order prohibiting the deposition of these witnesses. Alternatively, the Court at a minimum should order that the Government defer its request to depose Messrs. Burnham and Hodgson until the end of the fact discovery period, at which time the parties and, if necessary, the Court can reassess any perceived need for these depositions based upon a more fully-developed record.

Dated: September 7, 2007                    Respectfully submitted,


/s/ Brian J. Murray


James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Abbott Laboratories Inc. and Duane L. Burnham*


/s/ Robert L. Michels
Robert L. Michels
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorney for Thomas R. Hodgson*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on September 7, 2007, the foregoing **MOTION OF ABBOTT LABORATORIES INC., DUANE BURNHAM, AND THOMAS HODGSON FOR A PROTECTIVE ORDER RELATING TO THE PROPOSED DEPOSITIONS OF MESSRS. BURNHAM AND HODGSON** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Brian J. Murray

CHI-1603280v1

# EXHIBIT B

## DECLARATION OF DUANE L. BURNHAM

I, Duane L. Burnham, make the following statements based upon my own personal knowledge:

1. My name is Duane L. Burnham. I served as the Chief Executive Officer of Abbott Laboratories ("Abbott") from 1990 to December 1998, and as Chairman of the Board of Directors of Abbott from 1990 until my retirement in April 1999.

2. I have been advised that the Plaintiffs in this lawsuit claim that they require my deposition in order to discover information about certain lobbying efforts they suggest I participated in relating to the 1997 Balanced Budget Act; my participation in an organization known as the Healthcare Alliance or the Healthcare Leadership Council; and the marketing, pricing, and sale of Abbott's pharmaceutical products.

3. I do not recall participating in any lobbying efforts relating to the 1997 Balanced Budget Act. Nor do I recall ever participating in any lobbying efforts relating to any proposed legislation concerning the reimbursement of pharmaceutical products under the Medicare or Medicaid programs.

4. I do not recall any knowledge of any organization known as the Healthcare Alliance, nor of any involvement with any such organization.

5. During my tenure as CEO of Abbott, I was involved for some time with the Healthcare Leadership Council ("HLC"), a group that brings together senior executives from many different companies and organizations in the healthcare field to discuss healthcare-related issues. I do not recall participating in any discussion or other activity with the HLC that was related to pharmaceutical pricing or the reimbursement of pharmaceutical products under the Medicare or Medicaid programs.

6.  In my capacity as Abbott's CEO, I was not responsible for the day-to-day oversight of matters such as the pricing, marketing and sale of Abbott's products around the world. Other persons at Abbott had these day-to-day responsibilities, and they advised me as necessary. Even while I was the CEO of Abbott, therefore, I did not have unique or superior personal knowledge within the company about such matters. Since my retirement from Abbott nearly a decade ago, I have not been involved in any way with the marketing, pricing, or sale of Abbott products.

7.  Although I am retired from Abbott, I continue to be active in the business community, including serving as a Trustee for the National Trust for Historic Preservation and a Life Trustee for Northwestern University.

8.  It would impose a substantial burden upon me if I were forced to give a deposition in this matter, particularly given the fact that I have no unique or superior knowledge of any matters relating to this litigation.

9.  I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 5, 2007.

_____
Duane L. Burnham