# ATTACHMENT L

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No. 01-12257-PBS

CITIZENS FOR CONSUMER JUSTICE, ET AL.
          Plaintiffs

            v.

ABBOTT LABORATORIES, et al
          Defendants

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE
HELD ON SEPTEMBER 29, 2005

APPEARANCES:

For the plaintiffs:  Jennifer Fountain Connolly, Esquire, The Wexler Firm LLC, 2000, One LaSalle Street, Chicago, IL 60602, (312) 346-2222.

For the defendant Astrazeneca:  Kimberley D. Harris, Esquire, Davis Polk & Wardwell, 450 Lexington Avenue, New York, NY 10017 (212) 450-4000.

Court Reporter:

Proceedings recorded by digital sound recording, transcript produced by transcription service.

MARYANN V. YOUNG
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

```
 1                        I N D E X                              2

 2  Proceeding                                              3

 3

 4

 ...

26
```

*Maryann V. Young*
**Certified Court Transcriber**
(508) 384-2003

3

1          P R O C E E D I N G S

2      (Court called into session)

3          THE CLERK:  Today is Thursday September 29, 2005.
4  The case of Citizens for Consumer Justice, et al v. Abbott
5  Laboratories, et al, Civil Action No. 01-12257 will now be
6  heard before this Court.  Will counsel please identify
7  themselves for the record.

8          MS. CONNOLLY:  Good afternoon, your Honor, Jennifer
9  Connolly for the plaintiffs.

10         THE COURT:  Thank you.

11         MS. HARRIS:  Good afternoon, your Honor, Kim Harris
12 for Astrazeneca.

13         THE COURT:  Thank you, very much.  Well, we're here
14 for a hearing on docket entry number 1699, which is plaintiffs'
15 motion to compel the deposition of David Brennan.

16         MS. CONNOLLY:  Your Honor, the issue here is pretty
17 simple.  Basically, Astrazeneca allowed plaintiffs pursuant to
18 an agreement at some point to identify 18 deponents.  One of
19 those people that plaintiffs ultimately identified was David
20 Brennan who is the current CEO and president of Astrazeneca US.
21 Plaintiffs properly noticed his deposition.  There's not been
22 any question of that, but rather than trying to limit the scope
23 of Mr. Brennan's deposition or filing a motion for a protective
24 order as it was AZ's burden to do, Astrazeneca instead in the
25 first week of August 2005 said that it was not going to permit

4

1  Mr. Brennan's deposition because permitting it was merely a
2  form of harassment by plaintiffs.  But there are several
3  reasons why this isn't the case.
4          First of all, Mr. Brennan held the highest executive
5  position that plaintiffs haven't taken for the period that is
6  not covered by Robert Black.  In Astrazeneca's opposition they
7  say a lot that we have taken the deposition of Robert Black who
8  was the president of Zeneca but he was only president until
9  1999.  Mr. Brennan logically picks up after 1999 and continues
10 to the present and he's scheduled to be CEO of Astrazeneca as a
11 whole beginning in 2006.  So for that reason his deposition is
12 important.  Second of all, he was involved himself in
13 developing pricing policies for the combined merge company of
14 Zeneca Group and Astra AZ in 1999.  There are documents that
15 we've attached to our motion that show that he was the person
16 who was heading up forming those policies.
17         In addition, even later on he became very active in
18 issues involving the spread between Wac and AWP.  We've
19 attached as Exhibit G to our motion emails that show that when
20 First Data Bank raised the spread from Wac to AWP from 20 to
21 25% in 2002 that he was very involved in Astrazeneca's reaction
22 to that increase in the spread.  The other reason that his
23 deposition is important is that Mr. Brennan is a member of AZLT
24 or Astrazeneca leadership team which is a group that is
25 compromised of the CEO and his direct reports which is

5

1  responsible for approving numerous things, pricing proposals,
2  changes to Astrazeneca's code of conduct which is the document
3  that governed the conduct of sales representatives which is
4  clearly the issue with this litigation and also Astrazeneca's
5  marketing and sales policies generally.  All of those got
6  approved by the Astrazeneca leadership team of which Mr.
7  Brennan was a member and is still a member.
8         And finally, it's important because track one
9  discovery has closed.  Plaintiffs, pursuant to your orders,
10 your Honor, and also pursuant to our agreements with
11 Astrazeneca, have taken all the people that are beneath
12 Mr. Brennan.  And so now because Astrazeneca's policies that
13 led to the conduct that's at issue with this litigation are at
14 issue here it is appropriate for us to ask the chief executive
15 officer of the corporation what his view of why these policies
16 were enacted, why they weren't enacted, why they were enforced,
17 why they weren't enforced.
18         Indeed, it is consistent with the authority of the
19 courts in this circuit to allow the deposition to go forward in
20 this type of case.  First of all, discovery is very broad and
21 generally disfavoring depositions in their entirety even when
22 they are of executives is disfavored.  In this Court's decision
23 in 1987 in the *Travelers Insurance case v. Ford Motor Company*,
24 the court basically said two important things about the
25 depositions of chief executives.  First of all, it said that

6

1  these depositions can and should be permitted when what's at
2  issue is a policy of the company in getting the final word from
3  the chief executive.  And the court acknowledged that a senior
4  executive has unique knowledge regarding why the policies were
5  enacted.  People beneath the chief executive may have some idea
6  or some version of why those policies were enacted but,
7  ultimately, the person with that knowledge is the person at the
8  top, in this case it's Mr. Brennan.

9  The other thing that the traveler's insurance court
10 noted was that in that case the defendant had submitted
11 affidavits, which the court called no nothing affidavits from
12 the executives that the plaintiffs sought to depose.  And those
13 affidavits basically said our executives don't know anything
14 that's relevant to this dispute, and that was an anti-trust
15 action.  The court said those affidavits saying that someone
16 doesn't know anything begs that question.  Why didn't the chief
17 executive know what was going on at the company?  So for
18 Astrazeneca here they haven't even submitted an affidavit from
19 Mr. Brennan regarding what he knows.  We really don't know if
20 he knows a lot or if he knows nothing and said through their
21 counsel they have in an ipse dixit fashion said Mr. Brennan
22 doesn't know anything.  Well, if Mr. Brennan doesn't know
23 anything that begs the question under this court's decision in
24 *Travelers Insurance*, why didn't he know anything?  As a chief
25 executive involved in policies that ultimately resulted in

7

1  hundreds of millions of dollars in a criminal conviction for
2  Astrazeneca, you would think he would want to know about these
3  things.  So if he didn't know anything we're entitled to know
4  that.
5          THE COURT:  What if he filed an affidavit to that
6  affect and said that he was not aware?
7          MS. CONNOLLY:  That he was not unaware?
8          THE COURT:  He was unaware and he has no specific
9  knowledge?
10         MS. CONNOLLY:  Well, then we would be able to entitle
11 that test of why he didn't know because that's an important
12 thing too.  If there - the *Travelers Insurance* case said that
13 if there was a chief executive who was acting in willful
14 ignorance or buried his head in the sand or had subordinates
15 underneath him who were not advising him of things and trying
16 to keep him in dark, that's just as important as if you had a
17 chief executive who has knowledge.  So if he doesn't have
18 knowledge it's important for us to find out in a deposition.
19 If he does have knowledge obviously that's important to find
20 out in a deposition as well.
21         Now, Astrazeneca has said that the decision in
22 Traveler's doesn't apply because Astrazeneca didn't submit any
23 affidavits, but, again, that sort of turns it on its head.
24 It's Astrazeneca's burden to establish this deposition
25 shouldn't go forward so they should have submitted an

8

1  affidavit.  They second say that in Travelers Insurance that
2  those plaintiffs provided all this detailed information about
3  the knowledge that the executives that they sought to depose
4  had.  Or actually what those plaintiffs provided were some
5  deposition testimony and a single memorandum that the court
6  considered that all those executives had received.  That's
7  equivalent to the information that we've provided you, your
8  Honor, in our opening motion, some deposition testimony showing
9  that Mr. Brennan was involved in these decisions and some
10 documents showing that he was.  All--
11         THE COURT:  What if I permitted 10 written deposition
12 questions to be propounded to him regarding the general subject
13 areas, and then if he indicates he has no information in any of
14 those areas, why would you need to go forward with a
15 deposition?
16         MS. CONNOLLY:  Well obviously live testimony
17 particularly in a case of this importance is preferable to
18 having written questions.  The documents that we've attached to
19 our motion do show that Mr. Brennan had knowledge about issues,
20 an issue in this litigation, namely his involvement in
21 developing the merged company's pricing policies and in looking
22 at AWP spreads.  Those are things that go to the heart of the
23 allegations in the second amended complaint.  So I don't think
24 there's any question that he has some knowledge about these.
25 Now it may be limited knowledge, which would go towards perhaps

9

1  limiting his deposition.

2  Astrazeneca has noted that when we took Mr. Black's
3  deposition that we took it in just over two hours and that in
4  general we've taken some depositions that haven't come anywhere
5  close to the seven hour limit. I see no reason why we would
6  have to take a full seven-hour deposition of Mr. Brennan.
7  Indeed the documents we've submitted to you wouldn't suggest
8  that that would be the case. So the best way to limit that
9  deposition is to limit the number of hours and say, you know,
10 you've got three hours with him and that's it. And, quite
11 frankly, that's all we would need. So that would be a
12 preferable option because of the preference to live testimony
13 over written testimony.

14 All of the cases that Astrazeneca has cited in favor
15 of not taking the deposition of the CEO don't relate to
16 anything like what's here. First of all, none of their cases
17 are from the First Circuit. They cite an *Evans'* decision which
18 denied the deposition of a CEO, executive vice president and
19 CFO in a breach of contract dispute between All State Insurance
20 and one of its homeowners. Well, clearly when you have breach
21 of contract dispute, when you have employment discrimination,
22 when you have a personal injury case, we're all familiar with
23 those lines of cases, that when you have just a general
24 commercial dispute you can't run in and take the deposition of
25 a chief executive, but this isn't that type of dispute. This

10

1   is a nationwide class action that challenges activities of a
2   major corporation for 13 years. Those types of cases like the
3   Traveler's Insurance case are the types of cases where taking
4   the deposition of a chief executive is appropriate.
5           The remainder of Astrazeneca's reasons for not
6   wanting this deposition to go forward don't have merit either.
7   They first say that we unduly delayed our request for
8   Mr. Brennan's deposition but in reality we did what the rules
9   and the case law of this court require which is take all the
10  lower level depositions first and then come back and say you
11  need the CEO. So, obviously, if we had come to you in January
12  2005 and said, your Honor, we need the deposition of the CEO
13  right now, that argument wouldn't have been very persuasive.
14  So the reason that that delay came was because we were acting
15  consistent with the case law in this Circuit.
16          They also point out that we filed our motion to
17  compel at the close of discovery and say that, therefore, our
18  request is untimely. And, again, the ultimate rejection of
19  Mr. Brennan's deposition as Astrazeneca acknowledges in its
20  opposition came the first week of August 2005. Both plaintiffs
21  and Astrazeneca were in the midst of taking numerous
22  depositions at the close of discovery. So the fact that we
23  took it two weeks later than we would have if we had filed it
24  immediately upon their initial refusal really isn't the type of
25  delays that are talked about in the cases that Astrazeneca

1  cites.  For example, Astrazeneca cites the Rich Chrysler case.
2  Well in that case the plaintiffs had filed a motion to compel
3  four days before the discovery deadline after knowing for 13
4  months that this deponent existed.  They didn't meet and confer
5  and they had never actually issued a notice of deposition for
6  the executive in question.  Well, clearly that isn't the case
7  here.  Likewise in the *Harris* decision that Astrazeneca cites
8  they denied a motion to compel the CEO's deposition in an
9  employment dispute where the plaintiffs had waited five months
10 to file a motion to compel where the court had already given
11 two extensions to the close of discovery and said it wouldn't
12 permit any more extensions absent manifest injustice.  So
13 clearly those courts were looking at really extreme situations.
14 Here we filed it the last day of discovery because that's just
15 the way that things worked out by virtue of our negotiations
16 with Astrazeneca.
17         Astrazeneca has also said that taking Mr. Brennan's
18 deposition would disrupt Astrazeneca's business.  Again, as I
19 said, your Honor, we're certainly not interested in doing that
20 and would be willing to limit Mr. Brennan's deposition to
21 something less than the seven hours so that we don't disrupt
22 Astrazeneca's business or Mr. Brennan's professional duties.
23 They also say that Mr. Brennan has no knowledge of our claims
24 that are unique.  And, again, what makes this knowledge unique
25 is not only his role in looking at pricing policies upon the

12

1   merger and the spread issues that happened in 2002, but also
2   his knowledge is unique by the very virtue of his position
3   itself.  He is the final word on these policies that were in
4   place and that's why the deposition should go forward.
5           The last reason that Astrazeneca says we shouldn't
6   have his deposition is that we didn't ask policy questions of
7   Mr. Black and that simply isn't the case.  Simply because we
8   didn't ask Mr. Black what is the policy behind X doesn't mean
9   that we weren't asking him questions that ultimately went to
10  what the policies of the company were.  We did ask those kinds
11  of questions.  We asked him about whether representatives were
12  marketing the spread which he admitted.  But unfortunately,
13  Mr. Black was only at the company until 1999, which is why we
14  need Mr. Brennan's deposition to finish the story.  For that
15  reason, your Honor, we respectfully request that we have
16  Mr. Brennan's deposition.
17          THE COURT:  Thank you, Ms. Connolly.
18          MS. HARRIS:  Thank you, your Honor.
19          THE COURT:  You're welcome.
20          MS. HARRIS:  I'd like to take a step back for a
21  moment and give you some background on Mr. Brennan all of which
22  plaintiffs are aware of to put context on the request for his
23  deposition.  Astrazeneca, as I believe your Honor knows, is the
24  result of a merger between Astra and Zeneca in 1999.
25  Mr. Brennan became the president and CEO after the merger.  He

1  was a longtime Astra employee.  He came from the Astra Legacy
2  Companies and took over the combined company at that point.
3  Zoladex, the only drug at issue at this point, is a Zeneca
4  product.  It came up through the Zeneca Company and was a
5  Zeneca product until 1999, which is the vast majority of the
6  class period at issue here.  And what's important is that
7  plaintiffs have taken the deposition of the chief executive
8  officer of Zeneca who was responsible for the launch,
9  marketing, pricing and sale of this product for the majority of
10 the class period.  So when plaintiffs indicate that they need
11 to take the deposition of Mr. Brennan because of pricing policy
12 that's a little bit disingenuous because they did take the
13 deposition of the individual, the executive, who was
14 responsible and the last word on the pricing policy for
15 Zoladex, the specific activity that plaintiffs allege is a
16 problem in this case.
17         THE COURT:  What's your response to that,
18 Ms. Connolly?
19         MS. CONNOLLY:  The response is that since 1999 the
20 company as my sister indicated has been operating as a merged
21 entity which is now marketing Zoladex.  So after 1999 you've
22 got those issues for the merged company.
23         THE COURT:  And the class period being?
24         MS. CONNOLLY:  We contend that the class period is to
25 the present, your Honor.  Astrazeneca and a number of

14

1  defendants in this case have disputed that, but we have
2  contended throughout that the class period is to the present,
3  and in any event would be until we filed our complaint, which
4  was in September 2002.

5       MS. HARRIS: Your Honor, but with respect to Zoladex
6  there have been no pricing changes since 1999. There has been
7  no increase in the list price for Zoladex since there was a
8  merged company and there has been no change in the AWP of
9  Zoladex since the company was merged. So there are no pricing
10 decisions to which Mr. Brennan would have been the final say
11 that they need to take his deposition with respect to. And
12 plaintiffs have that information and can verify it based on the
13 data that we have provided plaintiffs from years ago. So,
14 again, on pricing policy there really is no justified reason to
15 take Mr. Brennan's deposition with respect to Zoladex.

16      Moving on about policies and Astrazeneca's code of
17 conduct, which was the second reason plaintiffs said they
18 needed to take Mr. Brennan's deposition. I note that they have
19 no specific question about the policies. They just generally
20 want it to inquire into the policies of sales and marketing and
21 Astrazeneca's code of conduct. Again, they have taken the
22 deposition of Mr. Black. The conduct they complain about with
23 respect to Zoladex occurred during Mr. Black's tenure as the
24 executive of Zeneca and they failed to ask Mr. Black if there
25 even was an Astrazeneca code of conduct or a Zeneca code of

15

1   conduct at the time.

2        They have further deposed another member of the
3   Astrazeneca executive committee, AZLT, which is the entity that
4   they allege approves policies for sales and marketing at
5   Astrazeneca, and they didn't ask him either about a code of
6   conduct for Astrazeneca nor did they spend time asking him
7   about policies with respect to sales and marketing, and
8   plaintiffs are disingenuous when they say they have taken all
9   of the lower executives below Mr. Brennan.  There are several
10  members of AZLT, the Astrazeneca Executive Committee, and
11  plaintiffs have not made any effort to depose the other members
12  of AZLT to ask about the approval of policies that may be
13  relevant to Zoladex.  But again, Zoladex was already the
14  subject of a government investigation relating to the
15  allegations that are in plaintiffs' complaint by the time
16  Mr. Brennan took over the company.  Zeneca had been involved in
17  a government investigation since 1998 relating to Zoladex and
18  the allegations and the conduct that plaintiffs have put forth
19  as the basis for their claims against Astrazeneca.  So, again,
20  any knowledge that Mr. Brennan would have on pricing or on
21  sales and marketing policies is at best tangential to the
22  issues that are present in the complaint at this point.

23       Moreover, your Honor, plaintiff stood before you last
24  week and told you that they only needed 12 more depositions of
25  Astrazeneca employees.  Mr. Brennan was not on that list.  Here

16

1   they are asking for yet another deposition of an Astrazeneca
2   employee.
3              THE COURT: Are you willing to trade one?
4              MS. CONNOLLY: Like to trade one?
5              MS. HARRIS: Your Honor, we think that, again, you
6   know, plaintiffs have said they only took two hours with
7   Mr. Black but two hours is still very disruptive for
8   Mr. Brennan. That requires preparation time. As plaintiffs
9   noticed they only filed their motion to compel after the news
10  was released that he is scheduled to be elevated to the chief
11  executive position of the parent company of Astrazeneca.
12  Plaintiffs at this point are just getting cumulative discovery.
13  They have taken close to 40 depositions given the depositions
14  you granted them last week of Astrazeneca current and former
15  employees. That's more than double the depositions taken of
16  any other track one defendant, and it's at this point unduly
17  burdensome and inequitable for Astrazeneca to continually be
18  subject to discovery well after the discovery deadline of this
19  case.
20             As a comparison, your Honor, in the *Lupron MDL* which
21  the competitor drug to Zoladex, the limit of depositions was 50
22  depositions total and there were three defendants in that case
23  and only one drug the basic equivalent of the drug that's at
24  issue here for Astrazeneca, Zoladex. I submit that plaintiffs
25  have had plenty of opportunity to have a fair development of

17

1  the facts in this case.  Mr. Brennan's testimony will not add
2  to that in any way as I've described.  It's tangential at best
3  and they have not shown that he has any unique knowledge.  We
4  searched his electronic material and his paper documents at
5  plaintiffs' request and he had no responsive material to
6  plaintiffs document requests.  The documents that plaintiffs
7  have attached to their motion none of them relate to Zoladex
8  and none of them came from Mr. Brennan's files themselves.
9  They simply have not established like the plaintiffs did in the
10 Traveler's case that Mr. Brennan has specific knowledge of
11 specific conduct that is at issue in this case, and that was
12 the factual circumstances of the Travelers case on which they
13 rely so heavily.
14          THE COURT:  Okay, I'll a five-minute recess and then
15 I'll give you a ruling.
16 (Recess)
17          THE COURT:  All right, resuming on the record.  I've
18 given this some thought before I came down today, and I've
19 reviewed everything.  Because of the magnitude of the case, I'm
20 inclined to allow the deposition limited to two hours to be
21 done at the place designated by Mr. Brennan for his
22 convenience, to be completed within 30 days.  All right.
23          MS. CONNOLLY:  Thank you, your Honor.
24          THE COURT:  You're welcome.  Hearing nothing else we
25 stand in recess.

## CERTIFICATION

I, Maryann V. Young, court approved transcriber, certify that the foregoing is a correct transcript from the official digital sound recording of the proceedings in the above-entitled matter.

_____     10/24/05
Maryann V. Young

*Maryann V. Young*
**Certified Court Transcriber**
**(508) 384-2003**