# EXHIBIT 1

1

1 - 157

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS


CONSUME, ET AL,                )
                Plaintiffs,)
                               )
-V-                            )   CIVIL DOCKET NO.
                               )   01-12257-PBS
ABBOTT LABORATORIES, ET AL,    )
                               )
                Defendants.)


MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE


January 31, 2008

Boston, Massachusetts




APPEARANCES ON PAGE 2

Proceedings recorded by electronic sound recording, transcript produced by Apex Reporting.

*APEX Reporting*
(617) 269-2900

2

APPEARANCES:

For the United States:

    RENEE BROOKER, ESQ.
    GEJAA GOBENA, ESQ.
    JUSTIN DRAYCOTT, ESQ.
    U.S. Department of Justice
    604 D Street, NW
    Patrick Henry Building, Room 9028
    Washington, DC  20004

For the Defendants:

    JASON WINCHESTER, ESQ.
    JAMES DALY, ESQ.
    Jones Day
    77 West Wacker Drive
    Chicago, IL  60601

For the Intervenor:

    JAMES BREEN, ESQ.
    The Breen Law Firm, PA
    3562  Old Milton Parkway
    Alpharetta, GA  30005

47

1  not privileged.
2      We believe that Judge Saris will grant our request
3  to file the first amended complaint.
4      And, again, even though we were in a position of a
5  pending motion to dismiss, we all proceeded with discovery.
6      This is no different -- deadline for discovery now
7  is March 31. So, we don't want to be caught again in the
8  same position where we don't have this information to depose
9  the right witnesses about in the next two months. And we
10 just ask that Abbott produce that now.
11     I have a second argument on transactional data,
12 but you may want to take that one first, because I think
13 it's straightforward and simple.
14     THE COURT: All right, .
15     MR. WINCHESTER: Quickly, Judge, as to Acyclovir,
16 our position really is: One, we have produced Acyclovir
17 documents to the extent that documents mentioning Acyclovir
18 fall within one of four categories of documents; the
19 cross-cutting type of documents that your Honor set down in
20 terms of what used to disclosed in the case back in, I
21 think, in May of last year. So they do have documents
22 relating to Acyclovir.
23     The greater body, however, of transactional data,
24 do we have to dig up and pull together for them every price
25 which we ever sold any unit of Acyclovir, or go through the

48

1   burden of basically going through our entire production
2   again -- all through Abbott, again, and try to pull any
3   additional documents relating to Acyclovir that are things,
4   perhaps responsive to their request, but that don't
5   otherwise mention reimbursement or AWP or spread or those
6   kinds of documents, which they already would have.
7           And our position on that is, the motion to dismiss
8   we have pending, is a little different than the ones,
9   initially.  This is isn't, you haven't stated a claim.
10          The basis of our motion, I won't dwell on too
11  long, but it's really that there is no claim.
12          The Government is here as an intervenor -- to
13  intervene in claims, Ven-A-Care has.  And as of the time
14  they moved to intervene, Ven-A-Care had already amended its
15  complaint to drop claims related to Acyclovir.
16          So our point is, and I know Mr. Breen and
17  Ms. Brooker will disagree.  That's why it's before Judge
18  Saris.
19          In our view there are really no claims for the
20  Government to assert here on Acyclovir.
21          So for us, what we're really looking at is a
22  burden issue to go through and do all of this, which
23  ultimately we think would be in the service of nothing
24  because those claims don't exist and should be dismissed.
25          THE COURT:  Denied without prejudice to be renewed

1  after the ruling on the motion by Judge Saris.
2          MS. BROOKER: Your Honor, on the second set of
3  documents, this is really about Abbott's entire
4  transactional data set, not including, obviously, the
5  Acyclovir Sodium, I had been prepared to indicate to the
6  Court today that this issue now appears to be moot because
7  we had gone back and forth. There's a whole history of it
8  since the filing of this motion and for years prior in the
9  Texas case with trying to get accurate transactional data
10 from Abbott.
11         However, I'm not sure if we're in a little bit of
12 a different place today, but I will just lay out briefly the
13 few facts.
14         You know, we've been requesting the transactional
15 data on the drugs since the outset of the litigation. Even
16 prior to the litigation, we had been requesting the
17 transactional data at different points in time.
18         We believe, for Abbott's representations, that we
19 had the final set of data. We have gone through a lot with
20 this data.
21         The State of Texas is getting some of the same
22 data and so we have followed along with what's been going on
23 in their litigation.
24         Abbott has been sanctioned for not producing this
25 data timely or completely or accurately.

1   sources of where there might be documents about these
2   revenues or profitabilities on that.
3       But, let's just say we've been a fairly open book
4   on this subject.
5       They have the data that will show them everything
6   they want. They know want it in some other form or fashion.
7       MS. BROOKER: Your Honor, again, the CHIPS data
8   allows us to manipulate. We don't want to manipulate the
9   revenues. We want the information that shows what Abbott
10  knew about what revenues, what profitability, we want to see
11  the discussion that has to go to the motive in this case.
12      We're not going to send in someone to just
13  recalculate the revenues. That's not useful to us. That
14  information is not useful to us.
15      The information that is, are the actual hard
16  copies of the documents that show how they sorted through
17  the revenues; what they presented to one another; what they
18  presented up their chain; what they discussed about what
19  they discussed internally; what they interpreted those
20  numbers, not just the raw numbers. The raw numbers are but
21  a tiny little piece of this. And what we actually want are
22  the documents.
23      Again, I would ask that Abbott be obligated,
24  within 20 days from today, to identify because this may
25  clear up a lot of future motions practice; to tell us for

80

1 all the outstanding requests for production, which ones that
2 they have completed production on.
3      If they are telling us that we have everything and
4 what we have--
5      THE COURT: But that's a reasonable -- at this
6 point, that's a reasonable request so you know the status of
7 where you are.
8      MR. WINCHESTER: I think your Honor already just
9 ordered that after the last motion.
10      It's 30 days to tell them -- and, basically, at
11 this point, after all this motion practice, we're talking
12 about categories, is that once we've come in their hundreds
13 of Requests for Production--
14      THE COURT: Okay, same ruling, 30 days.
15      MR. WINCHESTER: You have that ruling, Judge.
16      MS. BROOKER: So, within 30 days, Abbott will tell
17 us for every set of document requests, which ones that they
18 have completed and which ones are still pending and they're
19 producing on.
20      MR. WINCHESTER: For categories of information, we
21 will certainly be able to do that.
22      MS. BROOKER: Now I know Mr. Winchester just said
23 a tricky little thing there.
24      We are entitled to know which requests for
25 production Abbott has completed its production, not

81

1   categories of documents, but it's request for production.
2   The way that this litigation has been proceeding
3   with respect to Abbott's document production is we are
4   forced to learn, way after the fact, through witnesses,
5   through Texas, other outside parties that are bringing in
6   documents, "Oh, here's another category of documents, for
7   example, the Medicare working group. We didn't know about
8   that."
9   Now we know about the existence. So now it's a
10  category we're seeking.
11  Abbott -- under Rule 34, we are entitled to know
12  for each Request for Product, which my understanding is your
13  Honor has ordered, for each request for production, Abbott
14  must state within 30 days we are finished with request No.
15  1. We are finished with request No. 2.
16  Is that correct, your Honor?
17  THE COURT: I think that's reasonable.
18  MR. WINCHESTER: We have a similar order that the
19  Government is in Ven-A-Care also so obligated?
20  THE COURT: Certainly.
21  All right. Anything else in 4799?
22  MS. BROOKER: Yes. There are two more issues,
23  your Honor.
24  Okay, the time period. This Court has ordered
25  that documents be produced up to and including 2003.

1          And also to cut off -- and to fully discover any
2     evidence that they may want to raise there is somehow
3     remediated the conduct.
4          THE COURT: Well, that may have been that at this
5     point, 60 days ago, my ruling stands.
6          MR. BREEN: Thank you, your Honor.
7          MS. BROOKER: Your Honor, the last issue is
8     actually related to documents in this motion, but it's not a
9     request for production of documents. It's the
10    confidentiality designations.
11         Abbott has wielded the protective order in this
12    case in a way that I would -- that I believe it has been
13    shown that it basically obliterates the good faith
14    requirement in the rule that a party, particularly Abbott,
15    needs to review each document it produces to make a
16    legitimate designation, either confidential or highly
17    confidential.
18         The burden is on Abbott for good reason. The
19    Court and the Government has no idea about their documents
20    and what meets the standards for confidentiality. It should
21    be properly on Abbott.
22         If Abbott were to have its way here, what it has
23    suggested in its opposition is that we should be bringing
24    individual motions to the Court every time we want to
25    challenge a document, because Abbott says that's what the

1   protective order, itself, allows.
2           That would unreasonably tie up this Court and the
3   Government and the parties in endless litigation challenging
4   on a document-by-document basis Abbott's designations.
5           Judge Saris has given express guidance on, I
6   believe, three occasions, about -- and cautioned the parties
7   in not putting under seal when the file something, a
8   document that is marked as confidential.
9           In this case, that has happened repeatedly because
10  pretty much every document, every page of every document by
11  Abbott is stamped, "Confidential."
12          It seems clear to me, and I have placed in the
13  binder here, really just one of thousands of pages of
14  examples because I, myself, have gone through numerous
15  documents myself, in this case.
16          THE COURT:  What tab are you at?
17          MS. BROOKER:  I'm at tab 15.  These are these
18  blank pages that I placed in here.  I could have filled up
19  several boxes with blank pages.
20          And the reason why I use this as an example:  Is
21  this a highly relevant document that the Government is going
22  to seek to admit at trial?  Of course not.  It's a blank
23  page.
24          But it does show that Abbott just has the rote
25  machine on, and it's just stamping everything that goes out

1   the door as "Confidential."
2          That cannot possibly meet the terms of the
3   protective order.
4          Judge Saris has now expressly said pricing
5   information more than five years ago is not commercially
6   sensitive, nor is commercial information from the 1990s.
7          Now, granted, Abbott will say, "Well, that order
8   was issued in the context of placing some document marked in
9   discovery under seal."  And I recognize that.
10         However, since the Judge has issued that order,
11  Abbott has not stopped its automaton.  I mean, the machine
12  is still going; everything is still coming out the same.
13  It's not even, on a going forward basis, trying to change
14  what it's doing with its confidentiality designation.
15         Judge Saris cited Rule 11 in several of her
16  orders, signifying that she's about had it with the
17  over-designation of materials.
18         Abbott cannot hide behind the burdensome objection
19  because it is its good faith obligation.
20         I would also say that Abbott cannot stand up here
21  and say, use the -- excuse me -- use the protective order to
22  challenge because we have done that.
23         In the few instances, where the United States has
24  sent letters to Abbott initiating a -- for lack of a better
25  term -- I guess it's a "meet and confer," initiating the

1  process under the protective order for Abbott to
2  de-designate, Abbott has just ignored entirely, our letters.
3  There is no response at all.
4        So, even if we wanted to clog up this Court with
5  10,000 individual motions, or a group of motions, we're not
6  able to do that because Abbott won't even respond to our
7  request to de-designate.  It's also no way to handle the
8  situation.
9        I will additionally say, just briefly, there is
10 authority -- obviously, this Court has authority under Rule
11 1 -- you have broad authority.  But there are now two other
12 instances, where similar relief has been granted, where a
13 party is over-designating.
14        I cited the United States versus Philip Morris
15 case, and that was cited in the motion.  That was a case
16 that I tried, myself, and I was involved in that motions
17 practice.
18        That was not even the types of designations --
19 Philip Morris wasn't even designating every page.  There
20 were quantities and that was certainly a 26,000,000 page
21 case.
22        But there the Court, the Special Master and upheld
23 by the District Court Judge, made them go back and re-look
24 at all of their designations in fairly short order.
25        And, also, I think very relevant, your Honor,

88

1   behind tab No. 16, for your Honor's law clerk to also look
2   at, is a recent decision in the Commonwealth of Pennsylvania
3   versus TAP Pharmaceuticals and Abbott Laboratories and a
4   bunch of other defendants, where the same kind of relief was
5   granted.
6   	And on page 4 of that memorandum and opinion, the
7   Judge said, "Directing in the final protective order that
8   older, greater than five year-old information, be designated
9   confidential only if they reflect current practices," which
10  is a standard similar to what Judge Saris has adopted.
11  	The defendants in that case, and I don't know
12  anything about the specifics of this, I just have the
13  memorandum, order and opinion, so I don't know how it played
14  itself out. But, the order, itself, directs defendants to
15  review all documents presently designated at confidential,
16  and de-designate those that are no longer confidential --
17  the same exact relief that we've asked for.
18  	And on a final note, I will say, your Honor, there
19  is definite prejudice to the United States and the Court,
20  frankly, in over-designation.
21  	As the District Court found and upheld in the
22  Philip Morris case, the public has a right to hear this
23  trial. This is not just any--
24  	THE COURT: I know Judge Saris feels strongly
25  about this --

                                                                89

1          MS. BROOKER: That's right.
2          THE COURT: -- not being unnecessarily sealed.
3          MS. BROOKER: And not only that, your Honor, if
4    Abbott doesn't do this now, it is certainly going to have to
5    do this at trial.
6          In the Philip Morris case, we had to spend an
7    inordinate amount of time going through the de-designation
8    process for trial exhibits. And it hampers our ability to
9    prepare for trial.
10         These documents require special handling. You can
11   only show them to certain witnesses; motions practice is
12   onerous, because just about every motion we file has their
13   exhibits attached.
14         We have to have a meet and confer with them. We
15   have to contact them in advance of the motion.
16         So we have asked for a specific order, for which
17   there is authority, for which, we believe, Judge Saris would
18   agree that Abbott go back and de-designate all of its
19   previously produced materials and on a going forward basis
20   start complying with Judge Saris' recent orders and the
21   protective order.
22         Thank you.
23         THE COURT: What is your position in this?
24         MR. WINCHESTER: That it is totally unnecessary
25   and hugely burdensome when we talk about a production that

90

1   now numbers in excess of a million pages. But there are
2   provisions in place for this.
3           We understand it's our burden to make the cut in
4   terms of what's confidential. Counsel shows you a couple of
5   blank pages out of a million. Those are errors. I have
6   nothing to say about that. Those are errors that were added
7   on to there, of course.
8           Overall, I guess the situation is there are
9   provisions in place to deal with this. And when counsel
10  says we ignore them, that's totally untrue.
11          They come to us, as the protective order says they
12  are supposed to, and say, "Here's a set of documents, a
13  document, a set of documents that we don't think should be
14  designated confidential. We want to use them."
15          We've taken a look at those and in some instances
16  we've said, "We agree with you." And in other instances, we
17  go to the Court and say, "We think these should be kept
18  under seal."
19          Judge Saris, in fact, put a provision in place,
20  and a procedure in place for this case to say, "If there are
21  disputes about what documents should be filed under seal,
22  and if they are your documents, Abbott, you have the burden
23  to come forward and show me why they ought to be kept under
24  seal."
25          So when they come to us with documents and say,

91

1    "These are the ones we care about from your million pages,
2    and we don't think they should be designated confidential,"
3    we take a look at those and if we agree, then we deal with
4    it in that fashion. If we don't, then we go and bring the
5    motions to the Courts.
6            The idea that we're going to be in front of the
7    Court on every document is just untrue.
8            So there are provisions in place to deal with this
9    that will save us from having to review over a million
10   pages, the vast, vast majority of which they don't care
11   about.
12           Counsel talks about, "Well, we're going to have to
13   do this at trial." And I would submit to the Court, maybe
14   we will.
15           But at least at that point, we'll have the
16   category of documents that they care about and intend to
17   use, which is going to be far less, I'll guarantee you, than
18   the million-plus we have now.
19           Their challenge is a broad brush. We have
20   certainly cited cases to the Court in our papers that say
21   that kind of broad brush is not sufficient to flip the
22   burden back on the designated party to come forward, as our
23   protective order says you should, and as Judge Saris' later
24   order says you should, let's talk about specific documents,
25   or specific categories of documents.


92

1    They want to say go back and everything that's
2  older than five years is now automatically not confidential.
3          We have cases in our papers that say that that
4  isn't true. It may be in some circumstances, obviously, but
5  not in every one that a document simply by virtue of its age
6  become no longer confidential , it can still have sensitive
7  information that is -- even though it's aged, remains
8  current and would cause a problem if it were disclosed.
9          So, from our standpoint, Judge, we have been
10 willing -- continue to be willing to talk with them about
11 documents that they wish to challenge as confidentially --
12 but for us, I guess we're asking is that we not be forced to
13 go back through what is admittedly a huge burden of going
14 through all million-plus pages.
15         MS. BROOKER: May I just correct one -- I'm not
16 sure if Mr. Winchester misunderstood me.
17         There are just two separate points here about
18 utilizing the protective order provisions.
19         There is the instance where we have to meet and
20 confer before we file a motion to decide is Abbott going to
21 want this placed under seal, or not.
22         We have been working that out with them. It's
23 onerous but, yes, we've been doing it.
24         What I'm talking about is a different scenario.
25 Under the protective order, if a party waives a document or

93

1   a deposition and says, "This should not be marked as
2   confidential," that kicks into play a time frame by which
3   Abbott must respond, a briefing must occur if the parties
4   disagree whether it should be de-designated.
5           In the few instances where we have sent those
6   types of letters, they have been for depositions identified
7   or designated by Abbott, wholesale as confidential, no
8   response. We've gotten no response.
9           But the protective order provisions that are in
10  place clearly aren't working and we don't have time to send
11  them repeated emails or motions on this.
12          And the last thing I would say, your Honor, almost
13  every single page they produce is confidential or highly
14  confidential; not just a few blank ones.
15          I just pulled out a few blank ones as an example.
16  Almost everything. I haven't seen any production that have
17  come in that are not marked "Confidential" or "Highly
18  Confidential."
19          And I've had all of our paralegals checking this
20  on a regular basis to see if their conduct has changed and
21  we have not seen that it has.
22          THE COURT: Well, I'm going to deny the motion,
23  but I am going to urge that you, with any further production
24  in the spirit of what Judge Saris has said, that you be very
25  cautious in using these designations and not over-designate.

                                                                94

1               All right.  That ends 4799.  We're not very far
2    down the list of what we are going to deal with.
3               It is 5 after 12, I'm going to take a ten-minute
4    morning recess.  I'll come back -- what time is that
5    criminal business?
6               THE CLERK:  (Unintelligible) starting at 2:30,
7    your Honor.
8               THE COURT:  All right, we will go until a little
9    bit after 1:00 and see where we are.
10              Okay, be back in ten minutes.
11              (A recess was taken from 1:02 pm. to 1:17 p.m.)
12              THE CLERK:  Resuming on the record, Citizens for
13   Consume, et al, versus Abbott Laboratories, et al, Civil
14   Action No. 01-12257.
15              THE COURT:  Okay, No. 4984.
16              MS. BROOKER:  Thank you, your Honor.
17              Okay, I spent the ten minutes of the break trying
18   to see how I could slice and dice this and make it quicker
19   for your Honor since I'm told we have a lot to get through.
20              Suffice it to say, we disagree with many of the
21   representations made in Abbott's brief filed on Friday in
22   opposition to this motion to compel salespersons personnel
23   working files and producing them for deposition.
24              But I'm not going to go through some of those
25   arguments in detail unless Mr. Winchester does, and then, if