# EXHIBIT 13

1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-----------------------------------x

IN RE: PHARMACEUTICAL INDUSTRY     )

AVERAGE WHOLESALE PRICE            )

LITIGATION,                        )

_____)

                                   ) 01 CV 12257-PBS
                                   )
THIS DOCUMENT RELATES TO ALL       ) Judge Patti B.
ACTIONS:                           ) Saris
                                   ) Magistrate Judge
                                   ) Marianne B. Bouler

-----------------------------------x


     Deposition of ELLEN KLAUS, taken before CHRISTINE LIUBICICH, CSR, pursuant to the provisions of the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, at 77 West Wacker Drive, Suite 3500, Conference Room I, Chicago, Illinois, commencing at 9:27 a.m. on the 8th day of February, 2008.

332

1    Q.    Why is it that the indirect data would be
2    at Hospira, but the direct data is at Abbott?
3    A.    I have no clue.
4    Q.    Okay.  You just knew -- did somebody tell
5    you that you needed to get indirect data from
6    Hospira?
7    A.    Well, like I said, these AWP litigations
8    have been going on for a while, so I have known
9    historically just by working on the cases that the
10   indirect data is from one source and the direct
11   data is from another source.
12   Q.    When you say another source, do you mean
13   a different computer source?
14   A.    No, from Barb, and Nancy, or Anna source.
15   Q.    Well, when you received the United
16   States' request to produce, did you do anything to
17   ascertain whether anyone at Abbott had access to
18   the indirect data?
19   A.    No, because I -- I -- I know they don't.
20   Q.    Okay.  So you just from your -- because
21   you knew that you just automatically went to them?
22   A.    To Hospira?

1      Q.    To Hospira.

2      A.    Correct.

3      Q.    And when did you request the Hospira

4   data?

5      A.    I don't remember.

6      Q.    Do you remember how long it took to get

7   it?

8      A.    I don't remember.

9      Q.    Did they turn it over to you?

10     A.    Um, yeah, I --

11     Q.    Did you collect it?

12     A.    Yeah, I probably went to pick it up.

13  That's what I normally do.

14     Q.    Putting your Abbott hat back on, what has

15  Abbott done to -- let me ask you:  Does Abbott have

16  any input into the confidentiality designation on

17  the documents produced to the United States?

18     MR. WINCHESTER:  Objection.  Scope.  Form.

19     THE WITNESS:  I'm not sure I know I can answer

20  that either way.  I don't know.

21  BY MS. ST. PETER-GRIFFITH:

22     Q.    Do you know what I mean by

334

```
 1    confidentiality designations?
 2         A.    Confidential document?
 3         Q.    Well --
 4         A.    Or privileged document?
 5         Q.    Well, do you understand -- we'll get to
 6    privilege in a second -- do you understand that
 7    some document, actually the vast majority of
 8    documents that have been produced in this case by
 9    Abbott have been produced with a stamp that says
10    either confidential or highly confidential?
11         A.    Yes.
12         Q.    What was your -- what is Abbott's
13    understanding as to why a document produced to by
14    Abbott to the United States is designated as highly
15    confidential?
16         MR. WINCHESTER:  Objection.  Outside the
17    scope. Calls for a legal conclusion.
18         THE WITNESS:  I'm not sure.  I can't answer
19    that either way.
20    BY MS. ST. PETER-GRIFFITH:
21         Q.    Did Abbott have any participation at all
22    in identifying whether or not a document that was
```

                                                                    335

1   stamped confidential or highly confidential was
2   truly a confidential or highly confidential
3   document?
4          MR. WINCHESTER: Objection. Outside the
5   scope. Argumentative.
6          THE WITNESS: I can't answer that either way.
7   BY MS. ST. PETER-GRIFFITH:
8          Q. Well, did anyone at Abbott review the
9   documents to determine whether or not the
10  confidential or highly confidential designation on
11  those documents was accurate?
12         MR. WINCHESTER: Objection. Outside the
13  scope.
14         THE WITNESS: I can't answer that either way.
15  BY MS. ST. PETER-GRIFFITH:
16         Q. Well, were you aware of anybody doing
17  that at Abbott?
18         A. I don't know one way or the other.
19         Q. Who within Abbott would be responsible
20  for verifying the confidential or highly
21  confidential designations?
22         MR. WINCHESTER: Objection. Outside the

                                                                    336

1     scope.

2            THE WITNESS:  I -- I don't know.

3     BY MS. ST. PETER-GRIFFITH:

4        Q.   Would anybody?

5            MR. WINCHESTER:  Same objection.

6            THE WITNESS:  I just don't know either way.

7     BY MS. ST. PETER-GRIFFITH:

8        Q.   What due diligence has Abbott done to

9     verify the burdensomeness objections asserted by

10    Abbott -- asserted by Abbott's counsel on its

11    behalf in this case?

12           MR. WINCHESTER:  Objection.  Outside the

13    scope.

14           THE WITNESS:  I don't know that I can answer

15    that either way.  I'm --

16    BY MS. ST. PETER-GRIFFITH:

17       Q.   Well, has Abbott done anything to

18    determine whether or not any of the individual

19    requests for production are overly burdensome?

20           MR. WINCHESTER:  Objection.  Outside the

21    scope.  Calls for a legal conclusion.

22           THE WITNESS:  I can't answer that either way.