# EXHIBIT 18 PART 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | MDL DOCKET NO. 1456 |
| | ) ) | Civil Action No. 06-CV-11337 |
| | ) | Lead Case No. 01-CV-12257 |
| _____ | ) ) | |
| THIS DOCUMENT RELATES TO: | ) | Judge Patti B. Saris |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | |
| *Inc., et al., v. Abbott Laboratories, Inc., et al.* | ) | Chief Magistrate Judge Marianne B. Bowler |

### ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO
### THE UNITED STATES' THIRD MOTION TO COMPEL DOCUMENTS

The United States' motion to compel seeks two types of relief, both of which should be denied. *First*, the Government – using its typical broad brush and heated rhetoric – complains that it has not yet received a variety of documents from Abbott. As discussed below, however, the Government protests far too much. Most of the categories of documents the Government complains about already have been produced. As to several others, there is no dispute as to production, only timing, and Abbott has endeavored to provide the Court (as it has done for the Government) with its best estimate as to when production will be completed. As for those few areas where a genuine dispute exists, it is because the Government is overreaching yet again, and its demands should be rejected.

*Second*, the Government asks for an order compelling Abbott to go back through its entire production -- nearly 1,000,000 pages -- and redo its confidentiality designations wholesale. This request is inconsistent with the protective order in place in this case (which provides a procedure for any party to challenge the confidentiality designations of another on a document-by-document basis), and it would impose an extraordinary burden upon Abbott. On either basis, the Government's request should be denied.

I.    THE GOVERNMENT'S MOTION TO COMPEL DOCUMENTS SHOULD BE
      DENIED

    A.    As to Most Categories of Documents Identified by DOJ, There Is No Dispute
          That Requires the Court's Intervention

    In its race to Court, the Government complains of disputes as to several categories of

documents where no dispute exists.  Indeed, Abbott has already produced the vast majority of

document categories at issue.  As to many others, there is no dispute about production; the only

issue is when Abbott's production will be completed – a subject that hardly warrants this Court's

intervention.[1]

        1.    AWP, Spread, and Cross-Cutting Documents

    After previous motion practice, this Court issued on May 22, 2007 (Dkt. 4244) a clear

directive that Abbott is required to produce:

> [A]ll documents that mention the four charged drugs; all
> documents that relate to the four charged drugs including general
> sales and across the board marketing information that would
> encompass the four charged drugs; and all documents that reflect
> any alleged effort on the part of Abbott to market the spread or
> manipulate the published average wholesale price ("AWP") for
> any drug within Abbott's former hospital products division. . . .
> [Such documents] should include inter alia all documents
> regarding other drugs sold by the hospital products division to the
> extent such documents involve how Abbott "put together the
> spread" as well as all cross-cutting sales documents inclusive of
> broad based marketing documents. . . . [T]he temporal period shall
> be "through 2003."

Abbott has complied with that Order.  In so doing, it has not focused only on documents within

the former hospital products division ("HPD"), as the Government falsely asserts (Mtn. at 5), but

has instead searched within Abbott generally, regardless of division.  The vast majority of

---

[1]    In even raising such complaints about timing of production, the Government is hurling rocks from a very
thin glass house.  The Government owes Abbott scores of documents and other information, and relies on specious
objections and non-answers to obstruct any effort to complete discovery in a timely fashion.  These abuses are
discussed in a motion to compel that Abbott was forced to file recently.  (*See* Dkt. No. 4790.)

documents that Abbott has produced do originate with HPD, but that should come as no surprise

to anyone. The charged drugs at issue in this case are all HPD products, and there is no dispute

that HPD products are different from products in other Abbott divisions (i.e., PPD and Ross) in

terms of how they were distributed in the marketplace and reimbursed by third parties like

Medicare and Medicaid.[2] Abbott has produced all of its communications with the price reporting

compendia relating in any way to the charged drugs. In Abbott's view, production of the

materials ordered by the Court on May 22, 2007 is complete.[3]

Nothing in Judge Saris' recent rulings addressing the permissible scope of third party

discovery (Dkt. No. 4701) suggests in any way that Abbott's production should be expanded. In

contending otherwise, the Government appears to focus on that portion of Judge Saris'

September 7, 2007 order wherein she directed the third parties to produce "all documents which

refer or relate to Abbott's marketing a spread on a drug involving AWP no matter what drug or

what year"; her directives otherwise were generally limited temporally to 1991-2003. (Dkt. No.

4701.) This ruling dealt only with discovery from a few third parties; it said nothing about the

proper temporal scope of discovery among the actual litigants. And for good reason, as Judge

Saris already has plainly set the metes and bounds for such discovery. At a hearing in February

2007, Judge Saris made clear that, as to parties, discovery even of AWP-related documents and

_____

[2] For a description of the differences between PPD and HPD products, *see* Dkt. No. 3583 at 6-7. PPD products tend to be single-source pills. These products have very little "spread," and they are marketed by Abbott to the physicians who prescribe the drugs, not to the pharmacists who actually process claims for reimbursement to third party payers. (*Id.*)

[3] To support its false assertion that documents relating to divisions other than PPD have not been searched for or produced, the Government trumpets a document from former Ross Products employee Michael Tootell – which document the Government admits to having had in its possession all along. (Mtn. at 5-6.) This hardly suggests that the Government is being denied relevant documents. Moreover, Abbott conducted a full review of Mr. Tootell's files and has produced responsive materials. The Government even had an opportunity to depose Mr. Tootell recently, at which time he made clear that, while manufacturers submit list prices to the price reporting compendia that is used in the calculation of AWP, the actual setting of AWP is performed by the compendia. (*See* Ex. A at 123:16 – 124:7.)

information cuts off in 2003 because that marks the date of the passage of the Medicare

Modernization Act and, by that time, "the whole world knew about inflated AWP's." (Hr'g. Tr.

18-19 (Feb. 27, 2007), attached as Ex. B.)  That is the temporal limitation that Judge Saris has

imposed for party discovery in the related MDL class action case (*id.*), and this Court has

followed suit – twice ruling that party discovery in this case ends in 2003 (Dkt. No. 4244, *see

also* Hr'g Tr. 1-12 (June 19, 2007)).  The Government never sought review of those rulings, and

it ought not be allowed to attempt a back-door reconsideration here.

### 2.   Sales and Marketing Documents

As mentioned above, Abbott is mindful of the Court's May 22, 2007 order commanding

the production of marketing documents relating to the subject drugs, and it has complied with

that Order.  As the Government well knows, the charged products in this case (sterile water,

dextrose, sodium chloride and vancomycin) were all generic, multi-source products – not the sort

of brand name products that are heavily marketed by pharmaceutical companies with glossy

brochures, detail materials, and the like.  To the extent that documents exist evidencing

marketing plans or strategies relating to these products, they have been produced to the

Government (not to mention all of the depositions the Government has conducted on these

issues), and that is all that can be required.  There is no conceivable way for Abbott to comply

with the Government's ludicrous demand that Abbott identify whether any other sales and

marketing documents ever existed over the course of the last 16 years and then detail how and

when they may have been lost or discarded.

### 3.   ASPS Personnel Files

Pursuant to the Court's May 16, 2007 order, Abbott has, with extraordinary effort,

assembled and reviewed the personnel files for all of the field sales personnel who worked for

the HPD Alternate Site sector during the relevant time period.  Abbott began its rolling

production of materials from these files to the Government several weeks ago, and that production is now complete.

### 4.      Contracts for Alternate Site Bottom 20% of Customers

The Government appears to be confused about the record on this issue. On May 16, 2007, the Court heard argument about the Government's request for access to Abbott's contracts with those customers that accounted for the bottom 20% of sales in the former HPD Alternate Site sector (Abbott already had agreed to provide such contract documents for the larger customers accounting for the top 80% of sales). (*See* Hr'g Tr. 67-68 (May 16, 2007).) The Court ordered Abbott either to agree to produce the contract documents for the bottom 20% of customers, or agree to stipulate that Abbott would not attempt to introduce evidence about such customers at trial. (*Id.*) Abbott chose the former option, and it has been working to complete this production along with the myriad other categories demanded by the Government and all of the other plaintiffs in the many AWP actions.

At no time, however, did the Court order, or did Abbott agree to, the blanket production of all "emails, correspondence or any form of communications with [such] customers," as the Government incorrectly states in its motion. (Mtn. at 6.) To the extent that such customer communications would otherwise fall within one of the categories already addressed by the Court (AWP, spread, etc.), then they have been produced. There is no justification for going beyond that to produce random, irrelevant communications between Abbott and its customers that have no bearing on this case.

### 5.      Home Infusion Documents

Abbott has been extremely thorough in its production of documents relating to its former Home Infusion Services business. In order to provide the relevant electronic data, Abbott had to locate and purchase the necessary hardware (the proprietary machinery used for this business

was decommissioned years ago) and then recover the information. After this time consuming and expensive process, Abbott produced to the Government on August 15, 2007, all of the relevant data for this business – including all of the Home Infusion customers, all of the claims submitted to third party payers like Medicare and Medicaid, and all of the revenue earned by Abbott on the Home Infusion operation. Abbott also provided extensive materials to enable the Government to interpret and use the data. Notably, in order to speed the production, Abbott provided this Home Infusion data in toto, without limiting it to just the charged drugs. In addition, Abbott has committed to produce all of the hard-copy documents in its possession that relate to Home Infusion (approximately 80 boxes of material), and it has substantially completed that production. The small volume of remaining relevant materials will be produced on or before November 9, 2007.

The only dispute between Abbott and the Government in the area of Home Infusion Services documents concerns the production of so-called HCFA 1500 forms. These are forms that are filled out by providers every time a patient receives any form of treatment that is reimbursed by a third party payer, like Medicare or Medicaid. The forms show information like patient name and contact data, diagnosis, and treatment. The HCFA 1500 forms are standard forms that are then submitted to the payers. The only data on these forms that is even conceivably relevant to this case is the amount of any claim submitted to Medicare or Medicaid through Abbott's Home Infusion Services business. Yet this information already has been produced to the Government in far more useful form as part of the electronic data described above. To actually produce the HCFA 1500 forms would be needlessly cumulative, and also would raise serious concerns about the disclosure of patient information (verboten under the HIPAA statute and associated regulations) and would impose a substantial burden on Abbott.

The Government has not articulated any justification (because there is none) for forcing Abbott to reproduce mounds of documents and deal with the necessary redaction of patient information, all to provide forms that are at best cumulative and less useful than the electronic information already in the Government's hands.

### 6.    Transactional Sales Data

The Government's argument about the production of transactional sales data is a red herring. Abbott produced full transactional level sales data to the Government in December 2005 for 166 NDC's (which included all of the charged drugs and many others). Since that time, Abbott has been working with the Government to iron out any issues they had with respect to the completeness of the data. Ultimately, Abbott determined that the cleanest way to resolve these issues was to reassemble the data for all of the charged drugs. Abbott has done that, and produced the results to the Government on November 5, 2007. Thus, the Government's complaints on this issue are moot.

### B.    In Light of Abbott's Pending Motion to Dismiss, Acyclovir Discovery Is Inappropriate at This Time

After conducting 11 years of one-sided, secret investigation, the Government elected to intervene in this action on March 17, 2006 as to only four products (sterile water, vancomycin, dextrose, and sodium chloride). Thereafter, Ven-a-Care (the relator) sought and was granted leave to amend its own underlying complaint to conform to the Government's complaint-in-intervention – i.e., to move forward solely on the four charged products and thereby to drop its claims as to all other products, including acyclovir. (Mtn. For Leave to Amend, attached as Ex. C.) On June 4, 2007, however, the Government purported to amend its own complaint-in-intervention to add claims relating to acyclovir. (Dkt. No. 4281.) Abbott has moved to dismiss the first amended complaint on a number of grounds, including that the Government cannot

properly intervene in any claims related to acyclovir in this case because Ven-a-Care dropped all

such claims months ago. (*See* Dkt. No. 4469.)

Abbott's motion to dismiss is fully briefed and was argued before Judge Saris on

November 5, 2007. If Judge Saris grants the motion, then it is clear that no discovery relating to

acyclovir (other than that which would otherwise fall within one of the cross-cutting categories

the Court already has ordered produced) should be had. Given that a ruling is imminent, there is

not legitimate reason to force Abbott to incur the burden and expense of searching for and

producing volumes of acyclovir-related documents and data that may (indeed, should) prove

irrelevant. The Government's request for this information should be deferred pending Judge

Saris' ruling.

## II.   THE GOVERNMENT'S DEMAND FOR A WHOLESALE REDESIGNATION OF ABBOTT'S ENTIRE PRODUCTION SHOULD BE REJECTED

In yet another attempt to heap unnecessary burden and expense on Abbott, the

Government asks the Court to order Abbott to go back through every document it has produced

since this case began (nearly 1 million pages) and reassess its confidentiality designations -- all

within 20 days, no less. (Mtn. at 10-11.) This sweeping request should be denied out of hand.

*First*, the Government's blanket demand for a wholesale re-designation of *all* of Abbott's

documents is a violation of the Protective Order, and must be rejected on that basis alone. If the

Government wishes to contest Abbott's confidentiality designation as to any particular

document, then the proper course is to identify such objection, in writing, "*specifying the

information in issue and its grounds for questioning the designation.*" (Protective Order,

attached as Ex. D, at ¶ 17) (emphasis added).) In the event of a disagreement, the parties "shall

try first to dispose of such dispute in good faith on an informal basis." (*Id.*) This procedure is

more than adequate, and it has been employed by the parties numerous times in the past – in

circumstances when the Government has presented specific documents to Abbott that it wished

to append to briefs or other court filings.  In those instances, as the Protective Order envisions,

Abbott has been able to review the Government's specific objections to specific documents, and

it has on certain occasions agreed to alter confidentiality designations in light of those expressed

concerns.

      Here, by contrast, the Government simply objects to all documents in Abbott's entire

production, without any specific grounds for questioning any specific designation.  As a

consequence, Abbott cannot reasonably be expected to meaningfully rebut the Government's

arbitrary claims.  This sort of shotgun approach was considered and rejected in *Zenith Radio*

*Corp. v. Matsushita Electric Industrial Co., Ltd.*, 529 F. Supp. 866 (E.D. Pa. 1981).  In

*Matsushita*, plaintiffs moved the court to de-designate millions of pages of discovery marked

confidential.  *See id.* at 893.  Plaintiffs asserted that, merely by contesting the need for

confidentiality of all documents in a blanket fashion, they shifted the burden to defendants to

justify confidentiality on a document-by-document basis.  *See id.*  The court disagreed, noting

that:

> [T]he proposed procedure would effect an unintended
> metamorphosis of [the applicable protective order], for there is a
> qualitative difference between sustaining the confidentiality of a
> single document at the time of its designation and sustaining the
> confidentiality of hundreds of thousands of documents…We
> conclude that wholesale declassification cannot rationally be
> sustained without reviewing each of the countless separate
> documents or at least the many discrete categories which constitute
> the mass of protected documents.

*Id.* Like the plaintiffs in *Matsushita*, the Government's proposed approach would effectively rewrite the Protective Order that has governed this case from the beginning. This, the Court should not allow.[4]

Second, the Government has no support for its claim that Abbott has abused the process defined in the Protective Order for designating materials as confidential. Cherry picking two documents from a production of nearly one million pages and appending them to this motion certainly does not suffice. (Mtn. Ex. 9.) Indeed, as to both of these documents, when the Government raised them with Abbott (as the Protective Order requires), Abbott agreed to their public filing – proving that the mechanism in place under the Protective Order is more than adequate to allow the parties to address any disputes over confidentiality designations on particular documents.

The Government argues, based on certain comments from Judge Saris in the context of under seal filings, that Abbott should simply remove any confidentiality designation from documents that are more than five to seven years old. (Mtn. at 9-10.) It is not the case that documents lose their confidential character simply by virtue of age, however. For instance, an Abbott long range plan from the 1990's might very well contain sensitive information that would give competitors an advantage in seeing how Abbott viewed the marketplace for its products. Similarly, pricing documents might well remain confidential for more than five years if the price was relatively static, such that disclosure of older documents would effectively reveal current prices. In considering a similar request to that made here by the Government, the court in

---

[4] Nothing about Judge Saris' recent orders concerning filing documents under seal suggests a contrary result. The Court has made clear that it takes a narrow view regarding what documents can be kept from the public file by filing them under seal, and it has put in place a specific procedure for under seal filings. (Elec. Order Nov. 11, 2007.) The Court did not in any way undercut or revise the provisions of the Protective Order that govern designating materials as confidential or challenging such designations. Those provisions stand and must be followed.

*Matsushita* noted that "there is sense in the argument, which defendants urge, that old business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses. It would appear that, in the hands of an able and shrewd competitor, old data could indeed be used for competitive purposes." 529 F. Supp. at 891-92; *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 16 (D.D.C. 2000) ("Information does not become stale merely because it is old…such insights would allow a competitor to determine the direction of the company's past and current efforts in research and development (and thus beat them to new advancements)."); *Timken Co. v. United States Customs Serv.*, 1983 WL 486422 (D.D.C. 1983) (finding that the release of pre-1973 information in 1981 would cause substantial harm to the competitive position of the companies from which it was obtained). This case law again underscores that the appropriate means to address confidentiality is on a document-by-document basis, as the Protective Order directs, as opposed to the wholesale re-designation demanded by the Government.

*Finally*, the Government has not established any sort of prejudice that could justify the extraordinary relief it seeks. Although the Government makes the vague and unsupported assertion that it feels inhibited in its ability to prepare for trial by Abbott's confidentiality designations (Mtn. at 11), it offers no specifics. And it does not even argue that whatever concerns it might have could not be adequately addressed by following the procedures outlined in the Protective Order. On the other hand, granting the Government's motion would impose a tremendous burden upon Abbott to review nearly one million pages (plus scores of electronic data) and reassess its confidentiality designations. This could never be accomplished in the mere 20 days the Government blithely prescribes, and it would be woefully inefficient. It would require Abbott to review thousands of documents that are of little or no interest to the

Government.  And the results of any review by Abbott would doubtless start this whole process over from the beginning, as the Government is sure to continue in its refusal to acknowledge *any* confidentiality designation Abbott makes.  The prejudice to Abbott from the Government's proposal far outweighs any possible benefit (particularly in light of the procedure already in place under the Protective Order for challenging confidentiality designations), and this proposal therefore should be rejected.

**III.    CONCLUSION**

For these reasons, Abbott respectfully requests that the Court deny the Government's motion to compel in its entirety.

Dated:  November 7, 2007

Respectfully submitted,

/s/  Brian J. Murray
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on November 7, 2007, the foregoing
**ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO THE UNITED
STATES' THIRD MOTION TO COMPEL DOCUMENTS** was served upon all counsel of
record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Carol P. Geisler

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) ) | Hon. Patti B. Saris |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06–CV–11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**[PROPOSED] UNITED STATES' REPLY IN SUPPORT OF
ITS THIRD MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS
FROM ABBOTT LABORATORIES INC. AND TO REQUIRE THAT ABBOTT
DE-DESIGNATE NON-CONFIDENTIAL INFORMATION**

The United States of America, through its undersigned counsel, respectfully files this

[Proposed] Reply in Support of its Third Motion to Compel the Production of Documents from

Abbott Laboratories Inc. ("Abbott") and to Require that Abbott De-Designate Non-Confidential

Information. The United States has had to file a third motion in a series of motions to compel

Abbott to produce documents in this matter.

The United States' Third Motion to Compel was filed on October 15 (Dkt. No. 4799);

Abbott opposed the Motion on November 7. *See* Abbott's Response in Opposition to the United

States' Third Motion to Compel Production of Documents (Opp.) (Dkt. No. 4876). The major

reason for Abbott's Opposition is its contention that it has produced the vast majority of

documents at issue. *See* Opp. at 1. This is simply untrue. To the contrary, for the categories of

documents set forth in the United States' Motion, document production has not been completed.

To be sure, the filing of the Motion spurred Abbott to produce some additional documents and

data. However, Abbott still refuses to produce documents on Acyclovir Sodium–a recently

added subject drug, has omitted highly relevant information from its production of transactional

data, has not produced (or explained the absence of) court-ordered and highly relevant marketing

plans for the subject drugs, will not confirm for any single document request whether its

production is complete, and continues to ignore direct questions of the United States on many

areas of Abbott's document production, precluding resolution of outstanding issues by the

parties.

Abbott's conduct has impeded the United States' ability to notice or complete depositions

of fact witnesses within the discovery deadline of December 31 set by Judge Saris. Moreover,

Abbott's insistence on marking virtually every document and deposition transcript in this case as

Confidential (or Highly Confidential) is not only in contravention to the Protective Order and

Judge Saris's recent rulings, it has the effect of preventing the United States from effectively and

timely preparing its case for trial. Abbott's efforts to keep its documents and testimony of former

and current Abbott employees secret during discovery (and eventually from the public eye at

trial) is troubling; the United States again requests that these prior actions be reversed by the

Court requiring Abbott to de-designate non-confidential materials, and to comply in good faith

with Judge Saris's Orders in its future document productions.

### Acyclovir Sodium

On June 4, 2007, the United States served its First Amended Complaint to include,

among other changes, the addition of a single drug, Acyclovir Sodium, in the case. Abbott's

Motion to Dismiss the First Amended Complaint (Dkt. No. 4469) and the United States'

Opposition thereto (Dkt. No. 4661) is under consideration by Judge Saris. At the time of the

filing of this Motion, the discovery cut-off in this case is December 31, yet Abbott has still not

served an answer to either the First or Second Amended Complaint. Abbott has stated that it will not produce transactional data or, presumably, documents relating to Acyclovir Sodium until Judge Saris rules on the pending Motion to Dismiss. *See* Opp. at 8.

Abbott should produce immediately all transactional data and documents related to Acyclovir Sodium for several reasons. First and foremost, there is no dispute between the parties that the data and non-privileged documents related to this drug, once added to the case, are relevant. Second, Judge Saris ordered discovery to proceed in this case while the first Motion to Dismiss was pending (CMO. 29, Dkt. No. 3956), and indeed discovery did proceed, and continues to move forward even though Abbott has not served the United States with an answer. Third, the current deadline for fact discovery is one month away (CMO. 29, ¶18, Dkt. No. 3956). Finally, Judge Saris signaled at the oral argument on Abbott's Motion to Dismiss that she likely would grant a motion for leave to amend the Complaint to include Acyclovir Sodium (Transcript of November 5, 2007 hearing, Ex. 2 at 4-5). The Court has not yet ruled on the United States' Motion for Leave to Amend, which was subsequently filed (Dkt. No. 4878).

## Missing Transactional Data

The United States has requested since the outset of this litigation a complete set of Abbott's transactional data[1] for the subject drugs. After filing the current Motion, Abbott produced what it has represented to be the complete transactional data for the subject drugs. *See* Ex. 1 at 1 (Letter from Carol P. Geisler to Mark Lavine, dated November 5, 2007). The United

---

[1]A sales-related transactional data set is a set of electronic records in which each record: (1) represents a sales-related transaction between a firm and one of its customers, and (2) consists of data elements that characterize the transaction in sufficient scope and detail to support related business activities.

States immediately provided that data set to Dr. Mark Duggan, Ph.D., an economist and expert witness retained for this case to analyze Abbott's transactional data. *See* Ex. 10 (Declaration of Dr. Mark Duggan, dated November 27, 2007).

From his preliminary review of the data, Dr. Duggan has informed the United States that it appears that Abbott has omitted highly relevant information from the data set it produced to the United States when compared with the data set on the same drugs Abbott produced to the State of Texas in its AWP case, in or around May of 2007. *See State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v Abbott Laboratories Inc., Abbott Laboratories, and Hospira, Inc.*, Dist. Court of Travis County, Texas, 201st Judicial District (Cause No. D-1-GV-04-001286) (Texas case). *See* Ex. 10 at ¶¶ 3-6. Dr. Duggan has provided an expert report on the subject drugs (and additional drugs) in the Texas case, and thus previously has been provided the data set on drugs that overlap in both cases. *See* Ex. 10 at ¶ 2.

As Dr. Duggan elaborated further in his Declaration, Abbott placed zeroes (or eliminated figures) in a particular data field identified as "Rebate." *See* Ex. 10 at ¶ 5. However, information in the same "Rebate" field provided by Abbott to the State of Texas amounted to more than one-third of total sales. *See* Ex. 10 at ¶ 5. To illustrate these and other concerns with the data set recently produced by Abbott, the United States sent Abbott a letter and an Excel spreadsheet with the breakdown. *See* Ex. 8 (Letter from Renée Brooker to Jason Winchester and Carol Geisler, dated November 26, 2007). In short, there appears to be no correspondence between the sum in the Rebate fields in the two data sets. At no time did Abbott inform the United States or Texas that it would produce two different sets of transactional data on the same drugs.

The United States is concerned because Abbott has a demonstrated pattern of discovery

abuse, particularly related to this transactional data, for which the Court in Texas sanctioned

Abbott.[2]  *See* Memo at 4, fn. 2 (Dkt. No. 4800).  In order to obtain a complete data set on the

same drugs, the State of Texas had to depose, more than once, an Abbott corporate

representative, and engage in extensive motions practice.  *See* Memo at 4.  Remarkably, it

appears that the Plaintiffs' data requests may dictate the parameters of Abbott's data searches,

even though Plaintiffs are necessarily dependent upon Abbott's knowledge of its data systems.[3]

This suggests that Abbott may be taking advantage of the Plaintiffs' lack of knowledge of

Abbott's data systems when searching and producing the data to be provided.  Moreover, it

appears that there may still be inaccuracies in the data Abbott provided the State of Texas now

that it has been compared to the data recently produced in this case.  *See* Ex. 10 at ¶ 7.  For these

reasons, the United States seeks to compel Abbott to produce a complete and accurate set of all

---

[2]This is also the same pattern of conduct by Abbott in this case with regard to other documents unrelated to the transactional data at issue, namely the omission of relevant documents from its production set.  As a result, Judge Saris ordered Abbott to produce documents it produced to the State of Texas and Relator, which it omitted from its production to the United States.  *See* Memo at 2 (Dkt. No. 4800), *citing* Judge Saris's Orders at Ex. 7 at 1, and 7 at 3 (Judge Saris's 08/21/07 electronic Order on Relator's April 27, 2007 Motion to Compel Abbott to Produce or Consent to Access To and Sharing of All Discovery Produced by Abbott in Other False Price Report Litigation; and 09/06/07 electronic Order denying Abbott's Emergency Motion to Stay the Effect of and Motion to Reconsider the Court's August 21, 2007 Order).

[3]For example, after learning that it had received inaccurate transactional data from Abbott, the State of Texas reopened the deposition of its corporate designee, Bruce Stowell.  *See* Ex. 9 (Deposition of Bruce Stowell dated August 30, 2007).  Mr. Stowell testified "...we don't change what you guys [the State of Texas] ask for.  We run what you ask for."  Ex. 9 at 370:4-6.  In addition, he testified that he "leave[s] the completeness [of the data searches] to the requestor."  Ex. 9 at 320:18-24.  When asked how he searches for data, he testified that "We always just pull what we are told to pull."  Ex. 9 at 242:8-10.  Further, he testified that he expected the State of Texas to recognize whether Abbott omitted transactional data from production.  Ex. 9 at 381:21-382:18.  The testimony of Abbott's corporate designee on its transactional data does not leave the Plaintiffs with much confidence in the data that is being searched for and provided.

transactional data on the subject drugs, including those for Acyclovir Sodium.

## **Marketing Plans**

The United States informed the Court in its Motion that Abbott has not produced specific

marketing plans that Abbott has repeatedly represented as the *only* marketing plans covering the

subject drugs for the relevant years (1991-2003).  On May 22, 2007, the Court ordered that these

plans be produced by Abbott to the United States.  Memo at 6 (Dkt. No. 4800).  As Abbott is

well aware, because it is a topic the parties have repeatedly discussed, the United States is

seeking the documents that Abbott created annually and referred to as "August Plans" and "April

Updates" (Annual Plans and Updates).  Remarkably, Abbott's only response to the United States'

Motion on the subject of these Annual Plans and Updates is evasive:

> To the extent documents exist evidencing marketing plans
> or strategies relating to these products, they have been produced to
> the Government (not to mention all of the depositions the
> Government has conducted on these issues), and that is all that can
> be required.  There is no conceivable way for Abbott to comply
> with the Government's ludicrous demand that Abbott identify
> whether any other sales and marketing documents ever existed over
> the course of the last 16 years and then detail how and when they
> may have been lost or discarded.

Opp. at 4.

After the Court's May 22 Order, the United States sent a letter on August 31, 2007,

specifically asking Abbott whether it could locate *any* copies of the Annual Plans or Updates, for

the years 1991-1997 or 2001 (among others), copies of which it appears have been circulated

widely within Abbott.[4]  Memo (Dkt. No. 4800) at Ex. 4 at 120-122.  Abbott has not responded to

---

[4]See, for example, the numerous marked-up copies of the "2003 Plan Update" produced
from the files of several Abbott employees, which demonstrate the wide distribution of these
Annual Plans and Updates.  *See* Memo (Dkt. No. 4800) at Ex. 4 at 4-121.

6

the specifics of that letter. The United States is entitled to a direct response.

Abbott has been on notice of this lawsuit, and thus its preservation obligations, since at least 1996. *See* Ex. 5 at 50 (March 14, 2007 Deposition of Ellen Klaus, Abbott's document production corporate designee). Thus, Abbott understood its preservation obligations encompassed the marketing plans on the subject drugs. It seems inconceivable, given their likely (and apparently) wide circulation, that not a single employee has maintained a copies of the Annual Plans or Updates for the numerous missing years. Also, notably, Abbott has not produced a single copy of the Annual Plan or Update for the subject drugs for the year 2001– the year in which Abbott dramatically lowered its reported prices on the subject drugs, and arguably ceased reporting false prices. *See* Memo (Dkt. No. 4800) at Ex. 4 at 120-122. For these reasons, the United States renews its request that the Court order Abbott to certify that it has produced all documents covered by the Court's May 22 Order, and further, inform and certify to the United States whether the missing Annual Plans and Updates have been lost or destroyed, including the date and circumstances of that destruction.

### Files of Alternate Site Salespersons

At a hearing on May 16, 2007 (Memo, Ex. 11, Tr. at 56), this Court ordered the production of the files of the salespersons who market the drugs at issue. *See* Memo (Dkt. No. 4800) at Ex. 3 at 5-6. Abbott, notwithstanding its Opposition, still has not confirmed the names of all the salespersons employed from 1991-2003, has not produced certain salespersons' files with missing information, and has not represented whether its production of all salespersons' working files, including their call notes, has been completed. *See* Ex. 3 at 2-8 (Correspondence in November 2007 from Rebecca A. Ford to Jason Winchester). For these reasons, the United

States renews its request that the Court order Abbott to identify all of its salespersons for the

relevant years and produce or confirm production of all responsive documents. Further, if Abbott

has lost or destroyed documents that fall within this category, the United States asks the Court to

require Abbott to provide the specifics of that information.

### Alternate Site Bottom 20% of Customers

This Court has ordered already that Abbott either stipulate that it will not introduce any

evidence on this category of customers, or produce the documents. *See* Memo (Dkt. No. 4800) at

Ex. 11 at 68. Abbott chose production over the stipulation. *See* Memo (Dkt. No. 4800) at Ex. 3

at 6. We request that the Court order Abbott to produce all documents that fall within this

category, and not only documents that Abbott has selectively determined are relevant to the

United States' case. *See* Opp. at 5.

### Emails

In its Motion, the United States has questioned the completeness of Abbott's email

production. *See* Memo (Dkt. No. 4800) at 3. Abbott's Opposition does not address this issue.

The United States requests that Abbott be required to produce all emails in electronic format, and

explain the reasons for missing, responsive emails, including the reason that emails prior to 2002

are not available in electronic format. *See* Ex. 4 (Correspondence relating to Abbott's email

productions).

### Hospital Products Division

Abbott claims that it has "searched within Abbott generally, regardless of division," and

not only within Hospital Products Division. Opp. at 2. Representations of counsel in the

Opposition to the Motion cannot be reconciled with the testimony of Abbott's corporate

designee, Ellen Klaus, on the subject of Abbott's document collection and production.  Ms.

Klaus was responsible for the retention, collection, and search for documents in response to the

United States' earliest subpoenas dating back to 1996 to the present discovery requests.  *See* Ex.

5 (March 14, 2007 Dep. Tr. 50).  Abbott presented her as its corporate designee on these topics.

Ms. Klaus testified that she worked with or spoke only to the Hospital Products Division in the

collection, retention, or search for documents.  *See* Ex. 5 (March 14, 2007 Dep. Tr. 50-51).

Further, to the extent that Abbott searched in its off-site facility that stores all inactive or closed

files for the company (known as Abbott corporate records), it searched for and collected "HPD's

records retained in corporate records."  *See* Ex. 5 (March 14, 2007 Dep. Tr. 62).  Ms. Klaus

repeatedly testified that "at this point we don't have any reason to look [elsewhere than HPD]."

*See* Ex. 5 (March 14, 2007 Dep. Tr. 61).  For these reasons, the United States cannot withdraw its

request that this Court order Abbott to search more broadly for relevant documents beyond the

Hospital Products Division.

### Time Period

This Court has ordered Abbott to produce all responsive documents up to and including

2003.  (Dkt. No. 4244).  Recently, Judge Saris carved out a category of relevant documents for

which a time period limitation should not be imposed, namely "all documents which refer or

relate to Abbott's marketing a spread on a drug involving AWP no matter what drug or what

year," and "with respect to the particular named drugs at issue in this litigation, [] all documents

related to pricing that drug regardless of the time period generated."  *See* Judge Saris Order on

third party discovery, dated September 7, 2007 (Dkt. No. 4701).  As there is absolutely no reason

to extend that rule to third party productions, but not Abbott's document production, we ask that

9

this Court eliminate the 2003 time limitation for the categories of documents set forth in Judge

Saris's Order.

### Confidentiality Designations

Finally, the United States requested in its Motion that Abbott be required to review its

prior wholesale designations of documents as confidential, and remove the designation for all

documents that do not meet the terms of the Protective Order.  *See* Memo (Dkt. No. 4800) at 9-

11.  Abbott has wielded the Protective Order in this case as authority to stamp virtually every

page of material it produces in this case as Confidential or Highly Confidential.  It apparently

believes the burden is on the United States to review Abbott's entire production (and almost all

deposition transcripts) and determine which designations are improper.  Opp. at 8-9.  The

Protective Order cannot be read in this manner to eliminate entirely any good faith obligation of

Abbott.  To the contrary, the Protective Order requires that Abbott make good faith

confidentiality determinations, and for good reason.  *See* Protective Order, ¶ 3 (Dkt. No. 3804).

The United States does not possess the information necessary to determine whether Abbott's

company documents meet the standards set forth under the Protective Order.

Abbott's complaint with regard to the United States' requested relief is one of burden.

Opp. at 8, 11.  However, the burden to the Government and the Court in denying the relief is far

greater.  The United States would have to review Abbott's entire production and determine which

materials do not meet the standards under the Protective Order and Judge Saris's rulings.  *See*

Memo at 9-10 (Dkt. No. 4800), *citing* Judge Saris's Orders.   The United States does not wish to

tie up this Court with a multitude of motions to de-designate confidential documents, which

Abbott suggests as the appropriate remedy.  Opp. at 8-9.  Moreover, in the few limited cases

where the United States has raised objections to Abbott's confidentiality objections in the context of discovery, Abbott has simply ignored them. *See* Ex. 6 (Correspondence from counsel for the United States to counsel for Abbott challenging improper confidentiality designations of entire transcripts). Finally, Abbott cannot hide behind a burdensomeness objection when it is its own conduct that has caused the burden and required the United States to seek this specific relief.

Judge Saris has expressly ordered that such wholesale confidentiality designations cease. The parties have been given express guidance on what types of materials clearly should not be stamped as confidential. Since those rulings, there is no dispute that Abbott has produced thousands of pages of materials and continues to stamp almost every page confidential or highly confidential (*see e.g.*, Ex. 3-1), thereby ignoring Judge Saris's rulings; the same has been true of Abbott's designations of transcripts of depositions taken in this case. *See* Ex. 6.

There is authority for the type of relief sought by the United States in this case. The Court has inherent authority to "ensure that civil litigation is resolved not only fairly, but also without undue cost or delay." Fed. R. Civ. P. 1 (1993 Advisory Committee Notes). In an unpublished decision in *United States v. Philip Morris et al.*, the district court judge granted the very relief sought in the instant case and required Philip Morris to "conduct a review of all documents that Philip Morris has designated as [highly confidential] and produced to Plaintiff, and make any necessary downgrade in designation or de-designation required in accordance with the recommendation of the Special Master []." *See* Ex. 7-10 (Order #218 granting the United States' Motion to Compel Philip Morris to Comply with the Protective Order). As a result of this order, Philip Morris was required to re-review and re-designate thousands of pages of materials, and re-produce them to the United States without the confidentiality stamp.

Finally, Abbott complains that there is no prejudice to the United States by its conduct in stamping every document and transcript confidential. This is not true. As the United States has set forth in previous filings, the abuse of a Protective Order such as that which has occurred in this case, prevents the United States from easily accessing and using the discovery to prepare its case. *See* United States' and Relator's Motion for Protective Order, dated September 15, 2006 (Dkt. No. 3105-3106). The *Philip Morris* decision describes the prejudice to the parties of such abuse.

> Particularly in trial preparation, where great volumes of documents are likely to be used by the parties, the over-designation of information could hamper a party's ability to adequately prepare, as well as the right of the public, if the information is used at trial, to have access to such information, particularly where the proceedings have significant public interest.

*See* Ex. 7-8. Indeed, every time the United States seeks to attach an exhibit to a motion or other filing in this case, it must consult with Abbott in advance to obtain approval to file the document. The problem is particularly acute because almost all of Abbott's documents have been marked "Confidential" or "Highly Confidential."

For these reasons, the United States asks this Court to exercise its authority to require Abbott to re-review its documents within twenty (20) days, and minimally comply with Judge Saris's Order by de-designating "all pricing information from more than 5 years ago," and "all commercial information from the 1990s." *See* Memo (Dkt. No. 4800) at Ex. 7-6 (Order dated October 10, 2007).

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3398
Fax: (617) 748-3272

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
Phone:  (305) 961-9003
Fax: (305) 536-4101


Dated: November 28, 2007

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL


/s/ Renée Brooker
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, DC  20044
Phone:  (202) 307-1088
Fax: (202) 307-3852

13

### CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **[Proposed] United States' Reply in Support of its Third Motion To Compel the Production of Documents From Abbott Laboratories Inc. and To Require That Abbott De-Designate Non-Confidential Information** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Renée Brooker

Dated: November 28, 2007                        Renée Brooker