# EXHIBIT A, PART 2

23

1  order to serve the discovery with a 30-day window.

2          And we're going to cut this thing off and I'm not

3  going to use the discovery cut-off date.  I'm going to use

4  December 18th.

5          And that's what the Judge did.  So, the 18th is

6  the 18th.

7          A lot of times, preparing for trial, we find

8  ourselves having to react within a few short hours and we've

9  all been there -- in a few short hours to things that

10 emerged during the course of trial preparation.

11         I didn't see anything differently other than that.

12         Thank you.

13         MR. WINCHESTER:  Judge, we certainly do.

14         I think all of the discussion you just heard had

15 to do with the substance of what they served and that it's

16 nothing new.

17         Well, it wasn't anything new, then I submit to the

18 Court it certainly could have been served before December

19 18th.

20         Reading this order, the Judge says, and she had

21 two positions to look at, the Government and Ven-A-Care, six

22 months unfettered new discovery; Abbott, three months; no

23 new discovery.

24         She entered an Order on 18th, at 3:00, "You get

25 three months, no new discovery."

24

1        There's nothing in that order -- and I certainly

2   don't think the Judge should have been required to

3   anticipate that through the evening hours, starting after

4   the close of business, they'd shove out the door hundreds of

5   new requests on us, and new requests for subpoenas on all

6   these third parties.

7        And counsel may say that they were after

8   documents, these subpoenas that went out after the close of

9   business on the 18th are new.

10       There are requests for depositions, for 30(b)(6)

11   depositions on these third parties, which are hugely

12   burdensome to them, and I don't believe, your Honor, that a

13   single one of them was actually served any time on that day,

14   of the 18th.

15       So, as to the third parties, those are just out

16   because just sending an email request to a third party at 8,

17   9, 10 o'clock at night -- by the way, without telling any of

18   them about Judge Saris' order, say that there was an order

19   entered that today, at 3 o'clock, at least in our view, is

20   the end of discovery in the case -- just, "Here is the

21   subpoena over the email.  Will you accept it?"  I don't

22   think a single one of them accepted it on that day.

23       So, they were either served later than that, or

24   not served at all.

25       And several of the third parties have objected.

25

1        We did go and tell them because the Government

2   chose not to, about Judge Saris' order.

3        We said, "Here's what the Judge had to say," and

4   certain of them have taken that up to make objections to

5   timeliness, which we certainly think are proper.

6        But, that's our position as to what Judge Saris'

7   order means, and it certainly did not mean, it's a race, go,

8   see how much you can get done by midnight.

9        None of this came in until after the close of

10  business.  From our standpoint, it is all untimely.

11       The next thing you heard from counsel had to do

12  with this argument is that it's goose and gander; Abbott is

13  doing the same thing, and that is absolutely untrue.

14       What we had to face with these third party state

15  Medicaid officials is what Ms. Brooker is talking about.

16  And that requires a little bit of history.

17       Going back to August of 2006, with their very

18  first 26(a)(1) disclosures, the Government took up, at our

19  prodding, because we asked them about this, "Do you intend

20  to call all these state Medicaid officials at trial?"

21       They took up August 2006, directly in their words,

22  in the 26(a)(1) disclosures, "We do not anticipate calling

23  state Medicaid officials at trial."

24       And we continued to ask them about that through

25  the course of discovery.

26

1         Their basic position, as you heard, was, "We don't

2 intend to call them, Abbott, but if you want to go take

3 discovery of these third party Medicaid officials, go ahead

4 and do it."

5         And our position was, "We're not responsible for

6 making your case for you.  If you don't intend to call state

7 Medicaid officials, then you don't have a state Medicaid

8 case.  That's on you."

9         It wasn't until November -- I believe November

10 20th -- so about a month before the original cut-off of

11 discovery, that they amended their 26(a)(1) disclosures and

12 noticed 23 new state Medicaid officials.

13         We're going to call these people at trial.  That's

14 the first time, other than a phone call, they told us, "We

15 intend to add some people."  This is the first time they

16 identified who they were.

17         .We moved to strike those as being untimely.  So,

18 there was that motion pending.

19         They made a second disclosure of another five or

20 six people a few days later.

21         We filed a second motion to strike those as well

22 as being untimely.

23         Those motions, both those motions to strike, were

24 pending, still on the 18th, when Judge Saris entered her

25 order saying, "Here's what I'm going to do about discovery.

1    You have until March 31st; nothing new after today."

2           And on that day, we sent a letter to the

3    Government that says, "Look, we have a pending motion to

4    strike all of these state Medicaid officials but, if the

5    Court is going to allow them, then we serving notice to you

6    that those having been disclosed, we want to depose them."

7    And the Government has had no issue with that.

8           The Judge Saris issued her orders on those motions

9    to strike on the 20th, denying the motions to strike all

10   these new state Medicaid officials, but making clear we have

11   the opportunity to depose them.

12          So, that is the story from the standpoint,

13   qualitatively different in every respect from what they are

14   trying to do.

15          And I would also state, your Honor, that counsel

16   is talking about whether there are additional efforts by

17   Abbott to inquire of other state Medicaid officials.

18          We are in a very difficult spot given, tactically

19   what the Government chose to do here, which is to spend the

20   entire discover period saying, "We're not calling state

21   Medicaid officials," and then getting to the end of the time

22   and launching a bunch of state Medicaid officials witnesses

23   on us.

24          So, as it happens, we've gone out and started

25   talking to these people, and we're finding out again and

28

1   again that the people they've noticed aren't the people who

2   had anything to do with the actual issues in the case.

3          We're getting state Medicaid officials saying, "I

4   don't have any idea why that person would be on the list."

5          So, we are in an interesting position here of them

6   having introduced, late in the day, state Medicaid officials

7   as trial witnesses.  Should we be allowed to go and find

8   some that we like?  In other words, responding, doing no

9   more than responding, or rebutting what they've said now at

10  the end of the day, if they're going to bring forward.

11         I don't think that has anything to do with the

12  issues that we're talking about of the hundreds of new

13  discovery requests and the eight third party subpoenas that

14  were shoved out the door after the close of business and

15  long into the wee hours of the night on the 18th of

16  December.

17         MS. BROOKER:  Can I -- just a few points?

18         THE COURT:  Briefly.

19         MS. BROOKER:  Yes.

20         It is not true that the United States served all

21  of the deposition subpoenas on December 18th.  There are a

22  number of them that were -- they we made contact again.

23         It's a process when you're dealing with third

24  parties.  You don't just serve them with a subpoena.  You

25  contact them first to try to work it out, cooperate, and see

1    what they want.  So, there are a number of them.

2           We did start and, again, the only reason we were

3    at this point--

4           THE COURT:  The contact was made but the actual

5    subpoena was not served until after the 18th.

6           MS. BROOKER:  Well, formal service did not occur

7    for some of them until after the 18th.

8           But leading up to the 18th, we had started our

9    process when the December 18th order came out of, again,

10   noticing them for deposition.

11          So, there were some who received a notice from us,

12   a letter, an email; said they would get back to us and we

13   were in that process of negotiation.

14          THE COURT:  But that's your choice to proceed that

15   way.

16          MS. BROOKER:  Well, your Honor, I would -- I'm not

17   so sure I would say it was our choice.  The reason why I

18   would say that is because from our history with these same

19   exact third parties, the majority of them preferred informal

20   service and did not want us sending a process server.

21          THE COURT:  That may be, but it was your choice.

22          MS. BROOKER:  I'm sorry, I don't know -- I'm not

23   so sure I'm following your Honor.

24          THE COURT:  Well, you could have noticed them up

25   and served them.

30

1        MS. BROOKER:  Your Honor, had we known that

2  December 18th would be a deadline, absolutely, we would

3  have.  In fact, December 31 was the deadline that we were

4  operating toward.  We were moving toward the December 31

5  deadline when Judge Saris' order came out.

6        In addition, I think it was reasonable for both

7  parties to believe that Judge Saris would give some

8  additional time of discovery because both parties were

9  requesting at least three months -- the United States was

10  requesting more than that, but Abbott was also requesting

11  three months.

12        So, again, there is still a lot of outstanding

13  discovery and both sides have been moving forward.

14        That is just one point that I wanted to respond

15  to.

16        In addition, the conversation or the discussions

17  that Mr. Winchester just had about state Medicaid witnesses,

18  it is not true that Abbott was not on notice about the state

19  Medicaid witnesses from the outset of this case.

20        In fact, before Judge Saris, in arguing for the

21  numerical limitations on the hours of depositions, against

22  our objections, Abbott argued for 750 hours of depositions

23  because it told Judge Saris that it needed to depose a state

24  Medicaid witness from every state.

25        And because of tactical reasons, Abbott chose not

31

1  to do that until the last minute.  That was its tactical

2  decision.

3         But I just wanted to correct what Mr. Winchester

4  said on the record.

5         In addition, it also untrue that Mr. Winchester

6  said they needed to go out and find their own witnesses from

7  some of these state Medicaid employees because the United

8  States identified incorrect ones.  That is flatly untrue.

9         At every single disclosure, from the first initial

10 disclosure, we informed them that they have to serve a

11 30(b)(6) on the State because we do not control the State.

12 As we said, we are in the same position as they are with

13 trying to identify state Medicaid witnesses.  So we told

14 them to serve 30(b)(6)s.

15        However, in a -- really to be as helpful to them

16 as we could, we said, "Not only should you do that, but we

17 will identify people that we believe from our contacts with

18 the states may have discoverable information.  But, please,

19 make sure that you serve a 30(b)(6) because we can't be

20 sure."

21        The last thing that Mr. Winchester said about

22 state Medicaid is they need to find new people from the

23 states we disclosed.

24        That is not true.  They are now serving

25 depositions for people in states, not on any initial

1   disclosure or supplemental disclosure by the United States.

2           That seems clearly outside the express language of

3   Judge Saris' order.

4           Again, however, the United States has not tried to

5   obstruct their attempts to take discovery.

6           It would be very prejudicial to the United States

7   if after a year of wrangling over third party discovery, we

8   finally prevailed -- and the only reason we have not been

9   able to take this discovery a year ago is because of

10  Abbott's moving to quash, informing the third parties not to

11  comply, which took a very long time to get resolved and to

12  get us to this point.

13          We have been extremely diligent with the third

14  parties.  We have put in a lot of time and effort in dealing

15  with the third parties, trying to be very cooperative with

16  them, which is why we did not just want to process serve

17  them.  They would not have been happy about that.

18          I just think that the United States has acted

19  incredibly diligently when it comes particularly to the

20  third party discovery.

21          MR. BREEN:  Your Honor, one point on -- and you

22  noted we could have served subpoenas -- I think Judge Saris

23  was very careful.

24          She didn't say discovery served, filed.  She said,

25  requested.

33

1          In the whole history, the process of working

2    through these discovery issues, we were requested this --

3    that's what it was -- and we contact them and said we want

4    this information.  We're requesting the discovery.  And she

5    was very careful to say that.

6          The order has got to be interpreted in a manner

7    that contemplates that because otherwise, by happenstance,

8    if somebody had served a bunch of stuff on the 17th, or

9    requested a bunch of stuff on the 17th, that would have just

10   happened to have gotten in under the wire.

11         But the 18th doesn't, even though the order says

12   the 18th.

13         And, your Honor, I respectfully submit that that

14   interpretation -- it would just not be a -- it wouldn't --

15   it would be very difficult to apply in a fair manner,

16   because it would purely be happenstance.

17         And Judge Saris chose the 18th.

18         For all the reasons Abbott argues we could have

19   done something on the 14th, or the 15th, or the 16th, not

20   even knowing the order was going to occur, how does that

21   change the fact that it did on the 18th?

22         We could have done those very same things two days

23   before and they would be under the wire.  But since we did

24   them on the 18th, the day the order said we had until the

25   end of the day to do, somehow it's not under the wire.

1    And, your Honor, I respectfully submit that would

2  not be a fair application for an order.

3    Thank you.

4    THE COURT:  Last.

5    MR. WINCHESTER:  Very quickly, Judge.

6    I guess to respond to Mr. Breen first, that's the

7  way a deadline works and they knew that this is exactly what

8  we were asking for -- is three months, no new discovery

9  because we have a lot to finish up.  And that's what Judge

10 Saris did.

11    I don't think that we can ask Judge Saris to --

12 and I don't know that she was so careful in thinking about

13 requests versus serve.

14    And the way you request discovery from third

15 parties is serve them with a subpoena.

16    Several of these people have said, "You didn't

17 serve us.  You didn't give us a copy of Judge Saris' order

18 saying today was the last day, and we don't want to produce

19 30(b)(6) witnesses to you.  That discovery is out of time;

20 it wasn't served; it's done"; the same way with respect to

21 all the discovery they shoved out at 9 and 10 o'clock to us.

22    This question, I think, Ms. Brooker keeps coming

23 back to you in terms of state Medicaid, the facts are, as I

24 told you and I don't think there's any dispute from counsel.

25    They told us all along in this case, "We don't

1   intend to call them.

2          "But," they said back in August of 2006, "we

3   reserve the right to change our mind."  And that's true,

4   they did say that.

5          And so when we went to do the CMO, counsel is

6   right.  We asked for additional deposition time to deal with

7   state Medicaid officials in the event that they ever decided

8   they were going to call them.

9          We're the defendant.  We don't carry a burden of

10  proof here.  We're here to deal with what evidence the

11  Government intends to put on, and until November 20th of

12  last year, the Government was unwavering in its position

13  that it did not intend to put on evidence from state

14  Medicaid officials.

15         That changed that day and we gave the Government

16  timely notice that if Judge Saris denies our motion to

17  strike all these people, then we want to depose them.

18         And Judge Saris did deny our motion to strike.

19  She said, "You can go ahead and depose them."

20         So, our position here, or the idea that we should

21  go strike forth and build their case for them by deposing

22  state Medicaid officials, when they had no intention, at

23  least until November, according to them, of calling them to

24  trial and putting on that evidence against us, I think

25  that's just sort of flipping the positions that we're in in

1  the case they had in a way that doesn't make sense.

2          So that's where we are right now on that.   None of

3  that bears on what happened the 18th.

4          THE COURT:  All right.   Are there any third

5  parties that want to be heard on this?

6          MR. GAGION:  Your Honor, I just -- Leo Gagion, I

7  represent Omnicare from Dewey & LeBoeuf.  I am happy to

8  disclose, I am from New York.  I'm not admitted in this

9  district at this time, but nonetheless be heard before the

10 Court.

11         THE COURT:  We will allow you to pay the fee nunc

12 pro tunc.

13         MR. GAGION:  Thank you, your Honor.

14         THE COURT:  But pay it on the way out.

15         MR. GAGION:  I shall.  I shall.

16         Very briefly, and I'm not going to repeat what

17 Mr. Winchester said, but I look at this as a non-party, of

18 course, because I represent a non-party and we want nothing

19 to do with this if we can help it.

20         At 7:49 p.m. on the 18th, a partner of mine,

21 Mr. Eamon O'Kelly, received an email from the Government

22 that said the following:

23         "Attached, please find the subpoena that we issued

24 this evening for the deposition of an Omnicare corporate

25 representative.  Please let us know whether Omnicare will

37

1  waive official service of the subpoena or, alternatively, if

2  we need to serve the subpoena via a process server."

3        That's on the evening of the 18th.

4        Now, the Government did not inform Mr. O'Kelly, or

5  anybody at my firm or Omnicare, of the existence of the 3

6  o'clock order.

7        Mr. O'Kelly was not in his office at 7:49.  He

8  actually was in Pennsylvania for a trial.  It came to me.

9        By the time I learned about this, I had received

10  two things:  one, I had received a copy of the order that

11  had been entered on the afternoon of the 18th and also, a

12  copy of a letter the Government had sent counsel for Abbott

13  on the 19th, where the Government, as I understand it,

14  interprets the order of the 18th as follows -- the

15  Government is talking about some motions that are

16  outstanding -- and it says:

17        "Between the two motions, there is only one

18  operative order.  It extends fact discovery to March 31,

19  2008, and requires all party and non-party discovery to have

20  been served yesterday."

21        That's the Government's letter to Abbott on the

22  19th.

23        Now, put yourself in the position of a counsel to

24  a non-party, who has not accepted service of a subpoena sent

25  to the counsel on the evening of the 18th, and on about the

1  20th gets a copy of the order and a letter from the

2  Government, the party trying to serve me, or my client, that

3  says, well, all non-party discovery had to be served by the

4  18th.

5      The logical answer to that is, "You're out of

6  time."  And my client doesn't want to have to go to the

7  burden of having to identify a 30(b)(6) witness and go to

8  all the expense and burden that's associated with that.

9      Omnicare has already gone through a great deal of

10 time and expense in producing documents in this case, which

11 we did over the past year, but from the point of view of a

12 non-party, given the order and the letter from the

13 Government to Abbott that interpreted that order.

14     It seemed pretty clear to us that whatever you

15 have accept today about discovery, all non-party discovery

16 had to be served by the 18th.  And in our case, it simply

17 wasn't.

18     Thank you.

19     THE COURT:  Do you wish to heard?  Then identify

20 yourself for the record.

21     MR. CRANE:  Thomas Crane from Mintz Levin

22 representing Quorum.

23     A virtually identical email was sent by counsel to

24 the Government at 6:54 p.m., to Michael Dell, the General

25 Counsel of Quorum.  That email was not received and

1   responded to by Mr. Dell until the next morning at 9:24, at

2   which point he did say that he would waive, but that was not

3   received until the next morning, December 19th.

4          Quorum has been very cooperative throughout this.

5   We are a non party.  But we would want to state very

6   clearly, we do view this as very burdensome.

7          After receiving this, we still have yet to figure

8   out who we would have appear for this deposition, let alone

9   the length of time it would take to prepare that person.

10          And so, we respectfully submit this was untimely

11   and request you to rule accordingly.

12          THE COURT:  All right.  I am going to take a

13   five-minute recess and I'm going to give my ruling when we

14   come back.

15          (A recess was taken from 11:45 a.m. to 11:55 a.m.)

16          THE CLERK:  We are on the record, Your Honor,

17   Civil Action No. 01-12257, Citizens for Consume, et al,

18   versus Abbott Laboratories, Inc., et al.

19          THE COURT:  All right.  A couple of

20   (unintelligible) at the order, and I believe that Judge

21   Saris was clear that she wanted no new discovery requests

22   from the moment she issued that order.

23          So, as far as I'm concerned, December 18th, at

24   3:01 controls, and requests to mean items served.  If it

25   wasn't served before that date, it doesn't go forward.

1    It applies to any 30(b)(6) depositions and any

2  written discovery.

3    MS. BROOKER:  May I ask for clarification on one

4  point?

5    THE COURT:  Sure.

6    MS. BROOKER:  There were several third parties on

7  December 11th and December 14th, for which subpoenas were

8  sent.  I can't say, precisely -- I think that they were all

9  sent and asked if formal service would be waived.  But they

10  were all sent--

11    THE COURT:  Wait a minute.  Subpoenas were sent?

12    MS. BROOKER:  They were sent.  In other words, the

13  process that we have, under the CMO, and in practice what

14  we've been doing along, is we notify the third party.

15    We send them a letter or an email, and we tell

16  them, "Here's the subpoena, will you waive formal service,

17  or do you require formal service?"

18    And then the third party responds in whatever they

19  want and we follow up and we do.

20    So, there were several of them, at least four,

21  that we engaged in that process on December 11th and

22  December 14th, asking that they waive formal service.

23    In fact, two of them agreed.

24    THE COURT:  Before the 18th?

25    MS. BROOKER:  Before the 18th, and I believe those

1  we've moved forward and in one instance, I think we've taken

2  the deposition and the other, there--

3         THE COURT:  So that one is moot.

4         MS. BROOKER:  Scheduling the deposition, so --

5  because other -- all the third parties did not interpret the

6  Judge's order in that way.

7         And again, that's the process that we have under--

8         THE COURT:  Are we talking about -- how many

9  depositions are we talking about?

10        You're telling me one was already taken.

11        MS. BROOKER:  Yes--

12        THE COURT:  There are four--

13        MS. BROOKER:  I believe there are four third

14  parties.

15        THE COURT:  Okay.

16        MS. BROOKER:  Some--

17        THE COURT:  One is already taken, so one is--

18        MS. BROOKER:  Yes.  One is already taken; one is

19  scheduled.  Two more are objecting because they received

20  notice that we were going to subpoena them.  We made the

21  request for the discovery which, again, is in complying with

22  Judge Saris' language on December 18th, and we did that on

23  December 14th.

24        But the process between us and the third party was

25  not completed until -- well, it wasn't completed because

42

1    then the December 18th deadline came around and the parties

2    are waiting to hear further from your Honor.

3             But I--

4             THE COURT:  Where is it in the CMO that it states

5    this is the way you should proceed?

6             MS. BROOKER:  I believe I put behind tab No. 1 in

7    the CMO.

8             It says, "A deposition of a third" -- I'm sorry.

9             THE COURT:  Paragraph?

10            MS. BROOKER:  Paragraph 12.

11            "A deposition of a third party witness shall be

12   initiated through service of a subpoena under Rule 45.  A

13   copy of the subpoena shall be provided to opposing counsel

14   contemporaneously; shall provide at least two-week

15   deposition notice.  The requesting party shall confer with

16   the third party witness and opposing counsel regarding a

17   mutually convenient time and place, and the estimated length

18   of the deposition.  When it is scheduled, the party serving

19   this subpoena shall post the subpoena on Lexis."

20            So, again, the way we--

21            THE COURT:  This really doesn't say anything about

22   what you've described.

23            MS. BROOKER:  Well, the way we--

24            THE COURT:  That may be the way that you decide to

25   operate -- but this does not say that that is the -- I mean,

43

1    if that were clearly a procedure that had been set out, I

2    might be sympathetic.

3              But it seems to me this has been set out and then

4    you adopted a procedure.

5              MS. BROOKER:  Well, we've been, again, trying to

6    negotiate with the third parties to make it as--

7              THE COURT:  That may be, but that's not in

8    paragraph 12.

9              MS. BROOKER:  Well, before we can set down the

10   date, we have to -- in order to have the formal subpoena, we

11   have to have the date and the time in the subpoena.

12             We can't serve the subpoena with the date and the

13   time, and then later work it out with the counsel--

14             THE COURT:  I did that all the time when I was in

15   practice.

16             It may not be the nicest thing to do, but it's

17   certainly done.

18             I mean, I just don't think paragraph 12 is what

19   you told me it is.

20             MS. BROOKER:  That's our understanding and

21   interpretation of it, your Honor.

22             Under the deposition protocols for 30(b)(6)'s and

23   30(b)(1)'s--

24             THE COURT:  Well, the first sentence here, "A

25   deposition of a third party witness, shall be initiated

44

1   through service of a subpoena."  That's pretty clear to me.

2           If you opted to do this informally, by a letter,

3   to work out a date, that's your choice, but that's not in

4   paragraph 12.

5           So, as to those four, I would say no.  One of them

6   is moot because you've done one of them.  So the remaining

7   three --

8           MS. BROOKER:  Even in the event where the third

9   parties are cooperating?

10           THE COURT:  Well, I think that would clearly fly

11   in the face of her order.

12           MS. BROOKER:  Thank you, your Honor.

13           THE COURT:  You're welcome.

14           MR. BREEN:  Your Honor, should we also interpret

15   your Honor's order apply to the strict constuction of her

16   order regarding the deposing the State Medicaid witnesses to

17   the extent that they are attempting to depose additional

18   witnesses as was discussed during the --

19           THE COURT:  Yeah.

20           All right.  Now, let's move to the remaining

21   motions.

22           Downstairs; $50.00.

23           MALE:  Yes, your Honor.

24           (Laughter)

25           THE COURT:  Take out your checkbook.  You will not