J. Andrew Jackson
Jason Bruno
Dickstein Shapiro LLP
1825 Eye Street NW
Washington, DC 20006-5403
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
National Counsel for Defendants
Baxter Healthcare Corporation
and Baxter International Inc.

Michael L. Rosenberg
Marshall D. Bilder
Sterns & Weinroth, P.C.
50 West State Street
Post Office Box 1298
Trenton, NJ 08607-1298
Telephone: (609) 392-2100
Facsimile: (609) 392-7956
New Jersey Local Counsel for Defendants
Baxter Healthcare Corporation
and Baxter International Inc.

| | | |
|---|---|---|
| International Union of Operating Engineers, Local No. 68 Welfare Fund (An Unincorporated Trust), | : : : | Superior Court of New Jersey Law Division: Monmouth County |
| | : | Civil Action No. L-3136-06 |
| Plaintiff, | : : | |
| v. | : : : | |
| AstraZeneca PLC; AstraZeneca Pharmaceutical LP; AstraZeneca LP; Zeneca, Inc.; TAP Pharmaceutical Products, Inc.; Abbott Laboratories; Takeda Chemical Industries, Ltd.; Bayer AG; Bayer Corporation; Miles Laboratories, Inc.; Cutter Laboratories, Inc.; GlaxoSmithKline, P.L.C.; SmithKline Beecham Corporation; Glaxo Wellcome, Inc.; Pharmacia Corporation; Pharmacia & Upjohn, Inc.; Monsanto Company; G.D. Searle Company; Sanofi-Synthelabo Inc.; Johnson & Johnson; Alza Corporation; Centocor, Inc.; Ortho Biotech, Inc.; Alpha Therapeutic | : : : : : : : : : : : : : : | |

Corporation; Hoffman-La Roche Inc.;          :
Amgen, Inc.; Immunex Corporation;            :
Aventis Pharmaceuticals Inc.; Aventis        :
Behring, L.L.C.; Hoechst Marion Roussel,     :
Inc.; Centeon, L.L.C.; Armour                :
Pharmaceuticals; Baxter International Inc.;   :
Baxter Healthcare Corporation; Immuno-       :
U.S., Inc.; Boehringer Ingelheim             :
Corporation; Ben Venue Laboratories, Inc.;   :
Bedford Laboratories; Roxane Laboratories,   :
Inc.; Bristol Myers Squibb Company;          :
Oncology Therapeutics Network                :
Corporation; Apothecon, Inc.; Dey, Inc.;     :
Fujisawa Pharmaceuticals Co., Ltd.;          :
Fujisawa Healthcare, Inc.; Fujisawa USA,     :
Inc.; Novartis International AG; Novartis     :
Pharmaceuticals Corporation; Sandoz          :
Pharmaceutical Corporation; Schering         :
Plough Corporation; Warrick                  :
Pharmaceuticals Corporation; Sicor, Inc.;    :
Gensia Sicor Pharmaceuticals, Inc.; Wyeth;   :
Wyeth Pharmaceuticals; Saad Antoun,          :
M.D.; Stanley C. Hopkins, M.D.; Robert A.    :
Berkman, M.D.; Does 1-50; ABC                :
Corporations 1-50; XYZ Partnerships; and     :
Associations 1-50,                           :
                                             :
                        Defendants.          :

## JOINT BRIEF IN SUPPORT OF
## CORPORATE DEFENDANTS' MOTION TO DISMISS

2

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    Procedural History ......................................................................................................... 3

    The Complaint's Premise .............................................................................................. 4

    The Extensive Public Record ........................................................................................ 5

ARGUMENT ....................................................................................................................... 8

I.     THE FUND FAILS TO ALLEGE THE NECESSARY ELEMENTS TO
      ESTABLISH STANDING .......................................................................................... 8

     A.    The Fund Fails To Allege The Necessary Elements To Establish Standing .......... 9

     B.    The Fund Does Not Have Standing To Bring Suit As A "Person" Under
         The Consumer Fraud Act ...................................................................................... 12

     C.    The 2003 Medicare Act Renders The Fund's Claims For Injunctive Relief
         Moot ...................................................................................................................... 13

II.    THE ENTIRE COMPLAINT LACKS THE SPECIFICITY AND
      PARTICULARITY REQUIRED BY THE NEW JERSEY RULES OF COURT .......... 14

     A.    The Fund Does Not Plead The "Particulars" Of Its Fraud-Based Claims As
         Required By Rule 4:5-8(a) ..................................................................................... 14

         1.    The Fund Fails to State with Particularity Which of Each
             Defendant's Drugs Are at Issue, As Well As the Allegedly
             Fraudulent AWPs for Each Drug ............................................................... 14

         2.    The Fund Fails to State with Particularity the Role Each Defendant
             Played in the Alleged Fraud ....................................................................... 17

         3.    The Fund Fails to Plead with Particularity Specific Acts by
             Defendants in Furtherance of the Alleged Fraud ...................................... 17

         4.    The Fund Does Not Allege Fraudulent Concealment with the
             Required Particularity ................................................................................ 18

i

Page

III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR EACH COUNT ..................... 19

A.    Count I Cannot State A Claim For Unjust Enrichment Because The Fund
Did Not Confer A Benefit Upon Defendants, And Any Alleged Benefits
Are Too Remote.................................................................................................. 19

B.    Count II Does Not State A Claim For Fraud ...................................................... 20

1.   The Fund Has Not Alleged Any False Representations or a Duty to
Disclose................................................................................................... 21

2.   The Fund Does Not Adequately Allege Reasonable Reliance ................. 22

C.    Count III Should Be Dismissed Because It Fails Adequately To Allege
Civil Conspiracy ............................................................................................... 23

D.    Count IV Should Be Dismissed Because It Fails Adequately To Allege
Concert Of Action ............................................................................................. 25

E.    Count V Should Be Dismissed Because The Fund Did Not Adequately
Plead A Consumer Fraud Act Claim ................................................................. 26

1.   The Fund Fails to Allege That Defendants' Conduct Violated the
CFA.......................................................................................................... 27

2.   The Fund Fails to Allege That Defendants' Conduct Caused It an
"Ascertainable Loss" .............................................................................. 29

IV.   THE FUND'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF
LIMITATIONS............................................................................................................. 30

CONCLUSION.......................................................................................................................... 34

ii

# TABLE OF AUTHORITIES

Page

Cases:

A-Valey Eng'rs, Inc. v. Bd. of Chosen Freeholders of County of Camden,
106 F. Supp. 2d 711 (D.N.J. 2000) ................................................................................17

Alabama v. Abbott Laboratories, Inc., No. CV-05-219 (Ala. Cir. Ct.),
Order of October 13, 2005 ............................................................................................15

Amabile v. Lerner, 64 N.J. Super. 507 (Ch. Div. 1960), aff'd, 74 N.J. Super. 443
(App. Div. 1962) ...........................................................................................................24

Anderson v. Sills, 143 N.J. Super. 432 (Ch. Div. 1976) .................................................13

Arc Networks, Inc. v. Gold Phone Card Co., 333 N.J. Super. 587 (Law Div. 2000).........13

Banco Popular N. Am. v. Gandi, 184 N.J. 161 (2005) ....................................................21

Bd. of Educ. of Asbury Park v. Hoek, 66 N.J. Super. 231 (App. Div. 1961),
rev'd in part on other grounds, 38 N.J. 213 (1962) .......................................................24

Bonilla v. Volvo Car Corp., 150 F.3d 62 (1st Cir. 1998), cert. denied,
526 U.S. 1098, 119 S. Ct. 1574, 143 L. Ed. 2d 670 (1999) ...........................................22

Bowker v. Morton, 541 F.2d 1347 (9th Cir. 1976) ..........................................................12

Cannon v. Cherry Hill Toyota, Inc., 161 F. Supp. 2d 362 (D.N.J. 2001) .......................29

Caravaggio v. D'Agostini, 166 N.J. 237 (2001) .............................................................32

Castro v. NYT Television, 370 N.J. Super. 282 (App. Div. 2004).................................20

Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590 (App. Div. 1990),
aff'd per curiam, 124 N.J. 520 (1991) .........................................................................27

City Check Cashing, Inc. v. Nat'l State Bank, 244 N.J. Super. 304 (App. Div.),
certif. denied, 122 N.J. 389 (1990) ..............................................................................13

Commonwealth Land Title Ins. Co. v. Kurnos, 340 N.J. Super. 25 (App. Div. 2001).................31

Connecticut v. Aventis Pharmaceuticals, No. CV-03-0083299-S(X07)
(Conn. Super. Ct.), Order of February 11, 2004 ...........................................................15

County of Erie v. Abbott Laboratories, Inc., Index No. 2005-2439 (N.Y. Sup. Ct.),
Memorandum Decision of September 7, 2006 ..........................................................19, 22

Page

Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98 (1971).....................................9

Custom Commc'ns Eng'g, Inc. v. E.F. Johnson Co., 269 N.J. Super. 531
    (App. Div. 1993).........................................................................31

Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105 (App. Div.),
    certif. denied, 185 N.J. 265 (2005) ........................................................26

Dreier Co. v. Unitronix Corp., 218 N.J. Super. 260 (App. Div. 1986).........................................33

Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460 (D.N.J. 1998) ......................................23, 24

Evangelista v. Pub. Serv. Coordinated Transp., 7 N.J. Super. 164 (App. Div. 1950) .................15

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)............8

Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111 (1973) ................................................31

Freeman v. State, 347 N.J. Super. 11 (App. Div.), certif. denied, 172 N.J. 178 (2002).........32, 33

Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997) ..............................................................21

Giehrach v. Rupp, 112 N.J. Eq. 296 (E. & A. 1933) ...................................................................33

Glenpointe Assocs. v. Twp. of Teaneck, 10 N.J. Tax 380 (Tax Ct. 1989),
    aff'd, 12 N.J. Tax 118 (App. Div. 1990)..................................................................5

Greczyn v. Colgate-Palmolive, 183 N.J. 5 (2005) ......................................................................31

Hollinger v. Shoppers Paradise of N.J., Inc., 134 N.J. Super. 328 (Law Div. 1975),
    aff'd, 142 N.J. Super. 356 (App. Div. 1976) ...........................................................5

In re Adoption of Baby T., 160 N.J. 332 (1999).......................................................................8, 9

In re Ass'n of Trial Lawyers of Am., 228 N.J. Super. 180 (App. Div.),
    certif. denied, 113 N.J. 660 (1988) ....................................................9, 10, 11, 12

In re Lead Paint Litig., No. A-1946-02T3, 2005 WL 1994172
    (N.J. Super. Ct. App. Div. Aug. 17, 2005), certif. granted, 185 N.J. 391 (2005)....................20

In re Paracelsus Corp., Sec. Litig., 6 F. Supp. 2d 626 (S.D. Tex. 1998) .......................................12

In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d 172
    (D. Mass. 2003)................................................................................ passim

iv

Page

In re Six Month Extension of N.J.A.C. 5:91-1 et seq., 372 N.J. Super. 61
(App. Div. 2004) ................................................................................................8

Insulation Contracting & Supply v. Kravco, Inc., 209 N.J. Super. 367 (App. Div. 1986)............20

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996),
aff'd, 113 F.3d 1229 (2d Cir. 1997)................................................................22, 28

Kaufman v. i-Stat Corp., 165 N.J. 94 (2000) ................................................................31

Kingston Trap Rock Co. v. Int'l Union of Operating Eng'rs, Local No. 825,
825-A and 825-B, 129 N.J. Eq. 570 (E. & A. 1941)................................................25

LDM, Inc. v. Princeton Reg'l Health Comm'n, 336 N.J. Super. 277
(Law Div. 2000) ................................................................................. 10-11, 12

Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157 (App. Div. 1953)........................24

Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308 (11th Cir. 2000)......................................22, 28

Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324
(App. Div. 2006) ................................................................................................14

Lincoln v. Judd, 49 N.J. Eq. 387 (Ch. 1892) ................................................................33

Lopez v. Swyer, 62 N.J. 267 (1973) ................................................................33

Louisiana v. U.S. Dep't of Health & Human Servs., 905 F.2d 877 (5th Cir. 1990)......................7

McConkey v. Aon Corp., 354 N.J. Super. 25 (App. Div. 2002),
certif. denied, 175 N.J. 429 (2003) ................................................................21

McGuinness v. Wakefern Corp., 257 N.J. Super. 339 (Law Div. 1991)......................................25

Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n,
37 N.J. 507 (1962) ................................................................................................23

Mississippi v. Abbott Laboratories, Inc., Civil Action No. G2005-2021 (Miss. Ch. Ct.),
Report, Recommendation and Order No. 16 of Special Masters Granting in Part
Defendants' Motion for a More Definite Statement of September 5, 2006............................16

Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337
(App. Div. 1993), certif. denied, 135 N.J. 468 (1994)................................................23

Page

Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406
    (3d Cir. 2003).................................................................................................................23, 25

Mount Olive Complex v. Twp. of Mount Olive, 340 N.J. Super. 511 (App. Div. 2001),
    certif. granted, cause remanded, 174 N.J. 359 (2002) ................................................5

N.J. State Bar Ass'n v. Divorce Ctr., 194 N.J. Super. 532 (Ch. Div. 1984)...............................5

N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n,
    82 N.J. 57 (1980) ...........................................................................................................9

Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494 (D.N.J. 2000).................18

Naylor v. Harkins, 27 N.J. Super. 594 (Ch. Div. 1953), aff'd in part,
    rev'd in part on other grounds, 32 N.J. Super. 559 (App. Div. 1954) .....................23

Ochs v. Fed. Ins. Co., 90 N.J. 108 (1982).................................................................................31

Partrick v. Groves, 115 N.J. Eq. 208 (E. & A. 1934) ..............................................................33

Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Pharmacia Corp.,
    No. MID-L-821-02 (N.J. Super. Ct. Law Div. Feb. 14, 2003) ..................................13

Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 828 F. Supp. 287 (D.N.J. 1993) ................31-32

Ramanadham v. N.J. Mfrs. Ins. Co., 188 N.J. Super. 30 (App. Div. 1982) ................................29

Spinnaker Condo. Corp. v. Zoning Bd. of City of Sea Isle City,
    357 N.J. Super. 105 (App. Div.), certif. denied, 176 N.J. 280 (2003).......................8

Starkman v. Sigmond, 184 N.J. Super. 600 (Ch. Div. 1982).....................................................5

Sun Bldg. & Loan Ass'n of Newark v. Rashkes, 119 N.J. Eq. 443 (Ch. 1936) ..........................33

Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234 (2005)................................................30

Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392 (1995),
    cert. denied, 516 U.S. 1066, 116 S. Ct. 752, 133 L. Ed. 2d 700 (1996) .................27

Twp. of West Milford v. Van Decker, 235 N.J. Super. 1 (App. Div. 1989),
    aff'd, 120 N.J. 354 (1990)............................................................................................5

VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (1994) .............................................................19

                                                                                    Page

*Villalobos v. Fava*, 342 N.J. Super. 38 (App. Div.), certif. denied, 170 N.J. 210 (2001)..............32

*Viviano v. CBS, Inc.*, 101 N.J. 538 (1986)...................................................................32

*Walker v. TAP Pharmaceutical Products, Inc.*, No. CPM L 682-01
    (N.J. Super. Ct. Law Div., Cape May County, Mar. 7, 2002) ...........................................28, 29

*Ward v. Zelikovsky*, 136 N.J. 516 (1994)...................................................................25

*Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)...............................10, 12

*Wisconsin v. Amgen, Inc.*, No. 04-CV-1709 (Wis. Super. Ct.),
    Order of April 3, 2006 ................................................................................15, 16


Statutes:

Medicare Prescription Drug, Improvement, and Modernization Act of 2003,
    42 U.S.C.A. § 1395u, et seq. ..........................................................................13

New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ..............................................2, 26

N.J.S.A. 2A:14-1 ..........................................................................................31

N.J.S.A. 56:8-2 .......................................................................................26, 27

N.J.S.A. 56:8-19 ......................................................................................26, 29


Rules:

FED. R. CIV. P. 9(b).......................................................................................18

R. 1:36-3 ................................................................................................28

R. 4:5-8(a) ...........................................................................................passim

R. 4:5-8(f) ..............................................................................................25

R. 4:6-2(e) ...............................................................................................1

N.J.R.E. 201(b)(2)........................................................................................5

N.J.R.E. 201(b)(3)........................................................................................5

                                                                          **Page**

Other Authorities:

Bill Alpert, Hooked on Drugs: Why Do Insurers Pay Such Outrageous Prices for Pharmaceuticals?, Barron's, June 10, 1996, at 15 ....................................................7

Robert Cohen & Edward R. Silverman, Physicians Overcharge U.S. for Drugs; Cost to Medicare Put at $447 Million in '96, Newark Star-Ledger, Dec. 27, 1997, at 1 (News)...................................................................................................................8

15 James W. Moore et al., Moore's Federal Practice ¶ 101.98[1] (3d ed. 2006) ..........................13

President's Fiscal Year 1998 Budget Proposal for Medicare, Medicaid, and Welfare: Hearings Before the S. Comm. on Finance, 105th Cong. 265 (1997) (testimony of Donna E. Shalala, Secretary, U.S. Department of Health and Human Services) .....................7

Eric D. Randall & Michael Clements, Drug Firms Handle Stress/Companies Breaking out Batch of Deals, USA Today, May 4, 1994, at 1B.................................................8

Spencer Rich, Battling the High Prices Medicare Pays for Drugs, Wash. Post, Jan. 2, 1997, at A15.................................................................................................................8

Elizabeth Sanger, No Rx for Plans; Drug Plans Draw Pharmacists' Ire, Newsday, Feb. 24, 1989, at 47 (Business)...................................................................................8

U.S. Department of Health and Human Services, Office of Inspector General, Medicare: Physicians' Costs for Chemotherapy Drugs, OIG Report No. A-02-91-01049 (Nov. 6, 1992) .......................................................................................................... 6-7

U.S. Department of Health and Human Services, Office of Inspector General, Title XIX of the Social Security Act, Limitation on Payment as Reimbursement for Drugs, Medicaid Action Transmittal, No. 84-12, reprinted in Medicare and Medicaid Guide (CCH) ¶ 34,157, at 10,191 (Sept. 1984) ...................................................................6

U.S. Department of Health and Human Services, Office of Inspector General, Use of Average Wholesale Prices in Reimbursing Pharmacies Participating in Medicaid and the Medicare Prescription Drug Program, Report of the Office of Inspector General, reprinted in Medicare and Medicaid Guide (CCH) ¶ 38,215, at 21,162 (Oct. 3, 1989) ............6

## INTRODUCTION

The corporate defendants, 51 pharmaceutical companies,[1] request that the Court dismiss the International Union of Operating Engineers, Local No. 68 Welfare Fund's ("Fund") complaint, for failure to state claims upon which relief can be granted. R. 4:6-2(e). The Fund's five-count complaint is premised upon the allegation that defendants fraudulently caused the Fund to overpay for certain drugs by inflating the so-called "Average Wholesale Prices" or "AWPs" for their drugs. The complaint alleges that the Fund "paid for or reimbursed" for defendants' drugs at a cost "based, in whole or part" on AWP. Compl. ¶ 10. The Fund also alleges that defendants provided free samples and other inducements to stimulate sales of their drugs, worked with each other to prevent efforts to reduce the price of prescription drugs, and caused the Fund to pay "artificially inflated prices." Compl. ¶ 15.

For reasons common to all counts and reasons specific to individual claims, the entire complaint should be dismissed. First, the Fund lacks standing to prosecute this action. The Fund does not adequately allege institutional or representational standing. The Fund is not a

---

[1] This brief is filed without prejudice to, or waiver of, any individual defendant's position that it has not been properly served by the plaintiff. The following defendants join in this brief: Abbott Laboratories, TAP Pharmaceutical Products Inc., Alpha Therapeutic Corp, Amgen, Inc., AstraZeneca LP, AstraZeneca Pharmaceuticals LP, Zeneca, Inc., ZLB Behring, LLC (f/k/a Aventis Behring LLC), Aventis Pharmaceuticals Inc., Hoechst Marion Roussel Inc., Sanofi-Synthelabo Inc., Centeon, L.L.C., Armour Pharm., Baxter Healthcare Corporation, Baxter International Inc., Immuno-U.S., Inc., Bayer Corporation, Bayer AG, Miles Laboratories, Inc., Cutter Laboratories, Inc., Boehringer Ingelheim Corp., Bedford Labs, Ben Venue Labs, Inc., Roxane Labs, Inc., BMS Apothecon, Inc., Oncology Therapeutics, Fujisawa USA, Inc., Fujisawa Healthcare, Inc., Fujisawa Pharmaceutical Co., Ltd., SmithKline Beecham Corporation, Dey, Inc., Hoffman-La Roche Inc., Immunex Corporation, Johnson & Johnson, Centocor, Inc., Ortho Biotech, Novartis International AG, Novartis Pharmaceuticals Corporation, Pharmacia Corporation, Sicor Inc. f/d/b/a Gensia Sicor Pharmaceuticals, Inc., Pharmacia & Upjohn, Inc., Monsanto Company, G.D. Searle, Sandoz Pharmaceutical Corporation, Schering-Plough Corporation, Warrick Pharmaceuticals Corporation, Takeda Pharmaceutical Company Limited (formerly known as Takeda Chemical Industries, Ltd.), Wyeth, and Wyeth Pharmaceuticals. Each defendant may also file a concise defendant-specific motion to dismiss.

1

consumer, so it lacks standing under the New Jersey Consumer Fraud Act ("Consumer Fraud Act" or "CFA"), N.J.S.A. 56:8-1, et seq. Finally, the Fund's request for injunctive relief is moot as a result of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("2003 Medicare Act").

Second, the entire complaint lacks the specificity and particularity required by New Jersey rules and necessary for defendants to prepare a defense. Indeed, none of the counts alleges adequate facts regarding the alleged overarching fraud or how defendants – whom the Fund contends competed with each other based on their pricing schemes – allegedly have "conspired" with one another. The complaint also fails to identify what drugs are at issue or what specifically any individual defendant did that would constitute fraudulent activity or reflect an impermissible scheme or conspiracy. Instead, the Fund relies almost entirely upon vague and general allegations applied collectively and indiscriminately to all defendants.

Third, because the complaint is silent with respect to the Fund and any alleged injury the Fund claims to have incurred, all of the Fund's claims should be dismissed for lack of specificity. The complaint fails to explain why the Fund itself would have paid for defendants' drugs and what reimbursement methodolgy, if any, the Fund would have used to pay providers (i.e., physicians, pharmacists, etc.), nor does the Fund identify any contractual arrangements the Fund may have had with third-party consultants or pharmacy benefits managers ("PBMs"). Additionally, while the complaint generally alleges that the Fund based its payments upon AWP, the complaint does not identify what the Fund believed AWP represented. Compl. ¶¶ 113, 294.

Fourth, each of the counts is also fatally flawed for additional, independent reasons. Count I, for example, fails to state a claim for unjust enrichment because the Fund fails to allege – as it must – that the Fund conferred a benefit upon defendants. Moreover, the Fund's alleged

2

injuries are too remote and speculative to permit recovery under an unjust enrichment theory. Count II improperly alleges fraud through nondisclosure without alleging a duty to disclose. Count III fails to state a claim for civil conspiracy because generic allegations of fraud are inadequate under New Jersey conspiracy law, the Fund does not allege facts sufficient to infer an agreement among defendants to commit an unlawful act in furtherance of any alleged conspiracy, and the Fund has not pled special damages. Count IV does not state a concert of action claim for similar reasons. And Count V fails to plead all of the elements required for statutory fraud under the Consumer Fraud Act, for instance, by failing to claim that defendants owed any legal duty to disclose actual pricing, by not identifying from whom the Fund purchased specific drugs, and by not adequately alleging causation and "ascertainable loss."

Lastly, the Fund's claims are barred by the statute of limitations. The limitations period for each of the five claims the Fund asserts is at most six years. Accordingly, each of the Fund's claims is time barred to the extent it arose more than six years before June 30, 2003, the date the complaint was filed.

## BACKGROUND

### Procedural History

The Fund filed this case on June 30, 2003. In 2004, the case was transferred to the Pharmaceutical Industry Average Wholesale Price Multi-District Litigation pending before the United States District Court for the District of Massachusetts ("AWP MDL"). In May 2006, the AWP MDL court remanded the case to the Superior Court of New Jersey, Chancery Division, Monmouth County. In July 2006, the case was transferred to the Superior Court of New Jersey, Law Division, Monmouth County.

3

### The Complaint's Premise

The Fund alleges that defendants "implemented a fraudulent marketing, pricing, sales and distribution scheme to defraud plaintiff" by increasing the sales of certain drugs. Compl. ¶ 14. In essence, the Fund asserts that defendants have defrauded it by (1) deliberately overstating AWPs for certain drugs, (2) "providing and distributing free samples" and instructing medical providers that they should bill the Fund and others for such free samples, (3) providing "other unlawful inducements" that caused the Fund "to pay artificially inflated prices," and (4) "working in concert with each other and others to circumvent efforts to reduce prescription drug costs." Compl. ¶ 15. The Fund then alleges that defendants created a "spread" between what they set as the AWP and the actual price paid by medical providers, implying that there is something nefarious about providers who, like any other retailers, mark up the price on the products they sell. Compl. ¶ 112.

The Fund argues that defendants competed with each other based upon these "spreads" by using them and other inducements to take market share away from competitors. Compl. ¶ 121. At the same time, the Fund claims that defendants conspired with one another to inflate AWPs. See Compl. ¶¶ 121, 137. Stated differently, the complaint is premised upon the novel notion that defendants *conspired* with each other to *compete* against each other.

The complaint treats the defendants as a monolithic group, failing to recognize the vast differences among the various companies and the products they manufacture. For example, a drug may be self-administered or physician-administered. Self-administered drugs ("SADs") are prescribed by physicians, dispensed by pharmacies, and taken by patients, often in pill or capsule form. SADs are the pharmaceuticals with which most of us are familiar. Physician-administered drugs ("PADs") are dispensed directly in the physician's office and include products given through injection or infusion. Many cancer treatments, for example, are PADs.

4

In addition, a drug may be a single-source or a multi-source.  Single-source drugs are sold under a brand name by an innovator company and are generally patent-protected; multi-source drugs are those for which generic equivalents are available.  Generic drugs that have been approved by the FDA incorporate the same active pharmaceutical ingredient as the innovator drug, and have been shown to be the bioequivalent to the innovator product.  Once one or more generic versions of the innovator drug are approved, the drug is considered multi-source, as it is available from more than one manufacturer.  Some defendants manufacture only brand name drugs; others manufacture only generic drugs; still others manufacture both.

### The Extensive Public Record

The extensive public record, ignored by the Fund, shows that what the Fund now claims is fraud – that AWP is greater than what providers pay for prescription drugs – has been well-known for decades.  Public documents[2] make clear that public and private entities, including insurers/payors like the Fund, have for years known and expected that AWPs are substantially higher than the actual acquisition prices.  In fact, the complaint does not allege that defendants ever represented that AWP was the actual price that physicians and pharmacies actually paid for

---

[2] The Court may consider generally known or notorious facts within the area pertinent to an event.  N.J.R.E. 201(b)(2).  The Court may take judicial notice of public information that AWPs have long been understood to be only benchmark prices.  Twp. of West Milford v. Van Decker, 235 N.J. Super. 1, 11 (App. Div. 1989) (studies of sales ratios), aff'd, 120 N.J. 354 (1990); N.J. State Bar Ass'n v. Divorce Ctr., 194 N.J. Super. 532, 536 (Ch. Div. 1984) (inflated costs for typing fees); Starkman v. Sigmond, 184 N.J. Super. 600, 611 (Ch. Div. 1982) (high interest rates).  Similarly, a reviewing court may take judicial notice of the reports of governmental agencies and the records of generalized knowledge from indisputable sources.  N.J.R.E. 201(b)(3); Mount Olive Complex v. Twp. of Mount Olive, 340 N.J. Super. 511, 527 (App. Div. 2001), certif. granted, cause remanded, 174 N.J. 359 (2002); see also Glenpointe Assocs. v. Twp. of Teaneck, 10 N.J. Tax 380, 395 (Tax Ct. 1989) (American Council of Life Insurance capitalization rate data), aff'd, 12 N.J. Tax 118 (App. Div. 1990); Hollinger v. Shoppers Paradise of N.J., Inc., 134 N.J. Super. 328, 334 (Law Div. 1975) (U.S. Department of Agriculture reports), aff'd, 142 N.J. Super. 356 (App. Div. 1976).

prescription drugs, or cite any definition of AWP as reflecting actual costs, as opposed to a "list"
price, or any other definition.

For example, the federal government repeatedly issued public reports showing that AWPs
do not reflect actual acquisition costs.  As far back as 1984, the Inspector General of the United
States Department of Health and Human Services ("HHS") issued a report stating that "within
the pharmaceutical industry, AWP means non-discounted list price.  Pharmacies purchase drugs
at prices that are discounted *significantly* below AWP or list price."  HHS, Office of Inspector
General ("OIG"), Title XIX of the Social Security Act, Limitation on Payment as
Reimbursement for Drugs, Medicaid Action Transmittal, No. 84-12, reprinted in Medicare and
Medicaid Guide (CCH) ¶ 34,157, at 10,191, 10,193 (Sept. 1984) (emphasis added) (Certification
of Christopher E. Torkelson in Support of Joint Brief in Support of Corporate Defendants'
Motion to Dismiss ("Torkelson Cert.") Ex. A).

Another OIG report echoed these findings in 1989, reporting that "we continue to believe
that AWP is not a reliable price to be used as a basis for making reimbursements for either the
Medicaid or Medicare programs.  When AWP is used, we believe it should be discounted."
HHS, OIG, Use of Average Wholesale Prices in Reimbursing Pharmacies Participating in
Medicaid and the Medicare Prescription Drug Program, Report of the Office of Inspector
General, reprinted in Medicare and Medicaid Guide (CCH) ¶ 38,215, at 21,162, 21,165 (Oct. 3,
1989) (Torkelson Cert. Ex. B).

In 1992, the OIG published yet another study of AWPs, which found that physicians'
drug invoice costs for physician-administered chemotherapy drugs – the very type of drugs
featured prominently in this complaint – were as much as 83% lower than published AWPs for
the drugs studied.  See HHS, OIG, Medicare:  Physicians' Costs for Chemotherapy Drugs, OIG

6

Report No. A-02-91-01049 at 1, 4 (Nov. 6, 1992) (Torkelson Cert. Ex. C). The report added that "we do not feel that AWP provides a useful measure of the acquisition cost for a drug to physicians." Id. at 9.

In 1997, in connection with legislative efforts to change Medicare's AWP-based reimbursement system, the HHS Secretary testified that "the AWP is not the average price actually charged by wholesalers to their customers. Rather, it is a 'sticker' price set by drug manufacturers and published in several commercial catalogs." President's Fiscal Year 1998 Budget Proposal for Medicare, Medicaid, and Welfare: Hearings Before the S. Comm. on Finance, 105th Cong. 265 (1997) (testimony of Donna E. Shalala, Secretary, HHS) (Torkelson Cert. Ex. D); see also Louisiana v. U.S. Dep't of Health & Human Servs., 905 F.2d 877, 880 (5th Cir. 1990) (federal government prohibited use of undiscounted AWPs as a proxy for acquisition costs, and court upheld prohibition while describing findings in 1975, 1977, 1984, and 1985 that AWPs substantially exceeded drugs' acquisition costs).

The difference between AWP and provider acquisition cost has been well publicized in the public press as well. For example, a June 1996 Barron's article stated: "For many drugs, especially the growing number coming off patent and going generic, the drug providers actually pay wholesale prices [to manufacturers] that are 60%-90% below the so-called average wholesale price, or AWP, used in reimbursement claims." Bill Alpert, Hooked on Drugs: Why Do Insurers Pay Such Outrageous Prices for Pharmaceuticals?, Barron's, June 10, 1996, at 15

7

(Torkelson Cert. Ex. E).  This article is one of many press reports during the 1980s and 1990s that documented the difference between AWPs and actual costs.[3]

## ARGUMENT

I.   THE FUND FAILS TO ALLEGE THE NECESSARY ELEMENTS TO ESTABLISH STANDING

The Fund has not made allegations sufficient to determine that it has standing to bring this action, on behalf of either itself or its members.  Standing is a threshold determination that governs the ability of a party to initiate and maintain suit before the court.  See In re Adoption of Baby T., 160 N.J. 332, 340 (1999).  Standing "is not automatic, and a litigant usually has no standing to assert the rights of a third party."  In re Six Month Extension of N.J.A.C. 5:91-1 et seq., 372 N.J. Super. 61, 85 (App. Div. 2004) (citing Spinnaker Condo. Corp. v. Zoning Bd. of City of Sea Isle City, 357 N.J. Super. 105, 111 (App. Div.), certif. denied, 176 N.J. 280 (2003)).

The factual predicates for standing "'must affirmatively appear in the record,'" or the complaint is subject to dismissal.  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 608, 107 L. Ed. 2d 603 (1990) (citation omitted).  A party seeking to establish jurisdiction has the burden of clearly alleging facts demonstrating that he or she is a proper party.  Ibid.  A plaintiff must demonstrate that:  (1) it has a sufficient stake in the outcome of the litigation, (2) there is a real adverseness with respect to the subject matter, and (3) there is a substantial

---

[3] See also, e.g., Elizabeth Sanger, No Rx for Plans; Drug Plans Draw Pharmacists' Ire, Newsday, Feb. 24, 1989, at 47 (Business) ("Depending on the medicine, the acquisition price can be as much as 50 percent less than the average wholesale price . . . ."); Robert Cohen & Edward R. Silverman, Physicians Overcharge U.S. for Drugs; Cost to Medicare Put at $447 Million in '96, Newark Star-Ledger, Dec. 27, 1997, at 1 (News) ("But only Medicare, it seems, actually pays average wholesale prices.  Most view this as nothing more than a benchmark."); Spencer Rich, Battling the High Prices Medicare Pays for Drugs, Wash. Post, Jan. 2, 1997, at A15 (AWP is "'like the sticker price of an automobile.'"); Eric D. Randall & Michael Clements, Drug Firms Handle Stress/Companies Breaking out Batch of Deals, USA Today, May 4, 1994, at 1B ("[D]iscounts offered to large buyers can be as much as 70% off the average wholesale price.") (Articles are collectively Torkelson Cert. Ex. F.)

likelihood that the party will suffer harm in the event of an unfavorable decision. See N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 67-69 (1980); In re Adoption of Baby T., supra, 160 N.J. at 340 (in order to have standing to maintain an action, pleadings must establish that party has a "sufficient stake and real adverseness" in the subject matter of the litigation and a substantial likelihood of harm in the event of an unfavorable decision) (citing Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107 (1971)). The Fund cannot clear these hurdles.

First, the Fund has neither the "institutional" nor the "representational" standing required for an association to maintain a lawsuit on its own behalf. The Fund does not allege that its members purchased or used any of defendants' prescription drugs. Second, the Fund cannot pursue a claim under the Consumer Fraud Act because it is not a "consumer" under the CFA. As a third-party payor for prescription drugs used by its members, the Fund does not use, or diminish the utility for, the drugs for which it pays. Third, the 2003 Medicare Act moots the Fund's injunctive relief claims because it eliminates AWP in connection with drug reimbursement under the Medicaid program.

A.    The Fund Fails To Allege The Necessary Elements To Establish Standing

In order for an association to maintain suit, it must have either "institutional" or "representational" standing. In re Ass'n of Trial Lawyers of Am., 228 N.J. Super. 180, 186 (App. Div.), certif. denied, 113 N.J. 660 (1988). The complaint fails to specify the basis for the Fund's standing, and lacks even the minimal facts necessary to establish standing.

As an initial matter, the complaint is unclear and contradictory on its face regarding whether the Fund is bringing this action on behalf of *itself* or on behalf of its *members*. The Fund states that it "brings this Complaint on its own behalf, and on behalf of all others similarly situated." Compl. ¶ 1. This implies that the Fund is not bringing the action on behalf of its

9

members, but on behalf of similar organizations. Yet in Paragraph 1 of the complaint, the Fund states that it brings the class action "on behalf of hundreds of thousands of individuals and entities" that purchased drugs, including "government assistance patients, private assistance patients, and no assistance patients." The fact that the Fund purports to represent individual patients suggests that the Fund brings its claims on behalf of its individual members. The complaint forces defendants to guess the identity of the actual plaintiff. As to either basis, however, the complaint fails to make the necessary allegations to establish standing.

Institutional standing exists where an association has "'standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" In re Ass'n of Trial Lawyers of Am., supra, 228 N.J. Super. at 186 (quoting Warth v. Seldin, 422 U.S. 490, 511, 95 S. Ct. 2197, 2211, 45 L. Ed. 2d 343, 362 (1975)). Under this principle, the association may assert the rights of its members only so long as the alleged harm affects the members' "associational ties." Ibid. A law regulating or purporting to regulate a professional association, for example, would affect its members' "associational ties." Ibid. From the face of the complaint, it does not appear that the Fund is alleging that its members' associational ties are being harmed.

Conversely, where an association is not itself injured, the association may have representational standing "'solely as the representative of its members.'" Ibid. (quoting Warth, 422 U.S. at 511, 95 S. Ct. at 2211, 45 L. Ed. 2d at 362). For such representational standing to exist, "the association must allege that its members, or any one of them, 'are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.'" Ibid. (quoting Warth, 422 U.S. at 511, 95 S. Ct. at 2211, 45 L. Ed. 2d at 362); LDM, Inc. v. Princeton Reg'l Health Comm'n,

10

336 <u>N.J. Super.</u> 277, 288-89 (Law Div. 2000). Therefore, *if* the Fund is making claims on behalf of its members, it must plead that at least one of its members purchased the identified drugs.

If the Fund seeks to bring these claims on behalf of itself (i.e., institutional standing), its pleadings are still deficient. Given the nature of its claims, the Fund can presumably only allege injuries to itself to the extent that it alleges that its members were prescribed and dispensed the drugs identified in the complaint and that the Fund paid some form of reimbursement based on AWP for those drugs. Accordingly, regardless of the Fund's theory of standing, it must at least allege that at least one of its members purchased *each* of the drugs relevant to this case. And the Fund does not.

To the extent the Fund does seek to bring these claims on behalf of its members, it must allege that at least one of its members was actually injured. <u>See In re Ass'n of Trial Lawyers of Am.</u>, <u>supra</u>, 228 <u>N.J. Super.</u> at 186. The complaint does not allege that any of the Fund's members purchased any drugs manufactured or sold by any defendant. Instead, the Fund merely states that "Plaintiff and the Class paid for . . . drugs manufactured, marketed, distributed and sold by defendants." Compl. ¶ 24. Under New Jersey law, this is clearly deficient to support a claim of representational standing, and therefore, to the extent that the Fund seeks to represent a Fund member, the complaint should be dismissed.

In 2003, the federal Court in Boston assigned by the Multi-district Litigation Panel to hear several federal cases in which individuals and association plaintiffs sued pharmaceutical companies dismissed the plaintiff associations' claims, in part, because "none of the association plaintiffs has alleged sufficient facts to establish standing under Article III." <u>See In re Pharm. Indus. Average Wholesale Price Litig.</u>, 263 <u>F. Supp.</u> 2d 172, 194 (D. Mass. 2003). Judge Saris based this holding upon the finding that "none of the associations allege[d] specific members

11

who purchased a specific drug from a  specific company.  Instead, the allegations in the complaint and accompanying affidavits contain[ed] only bare bones assertions and empirically non-verifiable conclusions unsupported by specific facts concerning any injury-in-fact on the part of its members."  Ibid.[4]  Judge Saris' opinion is consistent with the New Jersey rule requiring an association claiming representational standing to allege injury to its members.  See In re Ass'n of Trial Lawyers of Am., supra, 228 N.J. Super. at 184-87 (holding plaintiff association had neither institutional nor representational standing) (citing Warth, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343); LDM, Inc., supra, 336 N.J. Super. at 288-89.

Defendants have the right to know at the outset exactly who is bringing this claim against them – the Fund or its individual members – particularly in a case with so much at stake, and where a plaintiff is purporting to represent the interests of so many others.  The complaint should be dismissed in the absense of specific information as to *who* purchased the drugs, including whether the Fund purchased the drugs through pharmacy benefit managers, *how* the drugs were purchased, *where* the drugs were purchased, and *when* the drugs were purchased.

> **B.**  **The Fund Does Not Have Standing To Bring Suit As A "Person" Under The Consumer Fraud Act**

The Fund is not a "consumer" covered by the CFA because it purchased drugs for the benefit of its members, and not on its own behalf.  Thus, the Fund does not have standing to pursue a claim under the CFA.

---

[4] Other courts have reached similar conclusions in analogous contexts.  See, e.g., Bowker v. Morton, 541 F.2d 1347, 1350 (9th Cir. 1976) (vacating lower court's finding of standing in federal land reclamation case where plaintiffs failed to allege attempted purchase of state land); In re Paracelsus Corp., Sec. Litig., 6 F. Supp. 2d 626, 631 (S.D. Tex. 1998) (dismissing class action securities law claim where named plaintiffs did not allege they had purchased the securities at issue, even though other members of the purported class had purchased them).

The CFA was enacted to protect consumers who purchase goods or services generally sold to the public at large. Arc Networks, Inc. v. Gold Phone Card Co., 333 N.J. Super. 587 (Law Div. 2000). A plaintiff bringing suit under the CFA must be a "consumer," which is defined as "one who uses (economic) goods, and so diminishes or destroys their utilities." City Check Cashing, Inc. v. Nat'l State Bank, 244 N.J. Super. 304, 309 (App. Div.), certif. denied, 122 N.J. 389 (1990) (citations omitted). Someone who buys for the use of another does not qualify as a "consumer." See, e.g., Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Pharmacia Corp., No. MID-L-821-02, at 14 (N.J. Super. Ct. Law Div. Feb. 14, 2003) (Torkelson Cert. Ex. G) (holding that the plaintiff union-employer trust fund, seeking to represent a class of third-party payors of prescription drugs costs, was not a "consumer" under the CFA). As a result, the Fund is not a "consumer" within the meaning of the CFA and cannot make a CFA claim.

C.   The 2003 Medicare Act Renders The Fund's Claims For Injunctive Relief Moot

In addition to its claims for monetary relief, the Fund makes a request for injunctive relief to redress the alleged "inflation" of AWPs to create a "spread" in drug prices. See Compl. ¶¶ 17, 112, 288, 289, p. 93. However, the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, 42 U.S.C.A. § 1395u, et seq. ("2003 Medicare Act"), creates a new regulatory framework for drug reimbursement that eliminates the use of AWP in calculating drug reimbursement as of January 1, 2005. This statute moots the Fund's implicit prayer for injunctive relief to stop payments based on AWP. New Jersey courts will not decide moot questions. See Anderson v. Sills, 143 N.J. Super. 432, 437 (Ch. Div. 1976) ("It is well

established that questions that have become moot or academic prior to judicial scrutiny generally have been held to be an improper subject for judicial review.").[5]

## II. THE ENTIRE COMPLAINT LACKS THE SPECIFICITY AND PARTICULARITY REQUIRED BY THE NEW JERSEY RULES OF COURT

### A. The Fund Does Not Plead The "Particulars" Of Its Fraud-Based Claims As Required By Rule 4:5-8(a)

The Fund bases each of its five claims on the central allegation that defendants engaged in a "fraudulent marketing, pricing, sales and distribution scheme." See, e.g., Compl. ¶¶ 7, 14, 290-297, 299, 310, 318. However, New Jersey Rule 4:5-8(a) requires that fraud be pled with particularity:

> In all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.

[R. 4:5-8(a).]

Mere legal conclusions or generalized allegations of fraud are insufficient to fulfill this strict particularity requirement. Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 349 (App. Div. 2006) (nonparticularized allegations fail to satisfy New Jersey's pleading requirements). The Fund has failed to satisfy R. 4:5-8(a) in four fundamental respects: (1) by failing to specify which drugs are the subject of the alleged fraud and the purportedly fraudulent AWPs, (2) by failing to explain what roles the individual defendants supposedly played in the alleged fraud, (3) by failing to particularize any alleged fraudulent acts

---

[5] If legislation is passed that "corrects or cures the condition complained of, the underlying claim may be rendered moot." 15 James W. Moore et al., Moore's Federal Practice ¶ 101.98[1], at 101-186 (3d ed. 2006).

by individual defendants in furtherance of the supposed fraud, and (4) by failing to particularize any acts of an alleged fraudulent concealment.

1.    The Fund Fails to State with Particularity Which of Each Defendant's Drugs Are at Issue, As Well As the Allegedly Fraudulent AWPs for Each Drug

The Fund's complaint merely states "cancer, inhalant and miscellaneous other drugs" are at issue in this matter. The complaint fails to identify, as to *any* defendant, *which drugs* it asserts are implicated in the alleged scheme and conspiracy – critical information in a case in which the Fund has chosen to sue more than 50 manufacturers. See, e.g., Evangelista v. Pub. Serv. Coordinated Transp., 7 N.J. Super. 164, 168-69 (App. Div. 1950) (stating that the purpose of the rule regarding pleading with particularity is "to require the pleader to state the facts which are relied on as constituting the wrong with enough particularity to enable the person charged to deny or disprove or explain these facts"). Every other court that has confronted AWP allegations similar to those made here has ruled that a plaintiff must identify the specific drugs at issue.

In rejecting the original complaint in the AWP MDL, Judge Saris required the plaintiffs to make specific, drug-by-drug allegations before the plaintiffs could proceed. See In re Pharm. Indus. Average Wholesale Price Litig., supra, 263 F. Supp. 2d at 194 (requiring that plaintiffs' complaint "clearly and concisely allege with respect to each defendant . . . the *specific drug or drugs that were purchased* from defendant" (emphasis added)). Similarly, in the AWP actions brought by the Attorneys General of Connecticut and Wisconsin, the courts required the States to revise complaints to provide more specificity and ordered the States to include the identity of the specific drugs at issue. See Order of February 11, 2004 in Connecticut v. Aventis Pharmaceuticals, No. CV-03-0083299-S(X07) (Conn. Super. Ct.) (Torkelson Cert. Ex. H);[6]

---

[6] The exhibit includes not only the order, but also the underlying application, for context.

15

Order of April 3, 2006 in <u>Wisconsin v. Amgen, Inc.</u>, No. 04-CV-1709, at 13 (Wis. Super. Ct.) ("<u>Amgen</u>") ("Each Defendant is entitled to know, with as much detail as plaintiff can provide, **which** of its drugs are involved and **what** (name, date) publication of AWP is false, and the **actual** price that should have been published.") (Torkelson Cert. Ex. I); Order of October 13, 2005 in <u>Alabama v. Abbott Laboratories, Inc.</u>, No. CV-05-219, at 4 (Ala. Cir. Ct.) ("[T]he State is ordered to amend its Complaint within 90 days to name each and every drug, known to the State at this time, which the State contends is part of the fraudulent scheme alleged.") (Torkelson Cert. Ex. J).

The complaint mentions a mere handful of drugs by name, and extrapolates those general allegations to all other "cancer, inhalant and miscellaneous other drugs." The 50-plus defendant manufacturers are altogether in the dark and left to guess as to the scope and conduct at issue in a complaint alleging fraud and conspiracy. The Fund cannot satisfy <u>R.</u> 4:5-8(a) without specifying which drugs it seeks to place at issue for each defendant and pleading the facts necessary, with the required specificity, to link those drugs to any alleged fraudulent acts by the drug's manufacturer. The complaint should be dismissed for this reason alone.

Furthermore, the Fund fails to plead a single allegedly fraudulent AWP, and instead makes sweeping statements that defendants artificially inflated AWPs. Many courts that have considered the issue in the AWP context have required plaintiffs to plead the allegedly fraudulent AWPs for each drug, as well as the basis for alleging that each AWP was fraudulent. <u>See</u> Report, Recommendation and Order No. 16 of Special Masters Granting in Part Defendants' Motion for a More Definite Statement of September 5, 2006 in <u>Mississippi v. Abbott Laboratories, Inc.</u>, Civil Action No. G2005-2021, at 4 (Miss. Ch. Ct.) ("Plaintiff . . . at a minimum, shall plead as to each Defendant the specific drug(s) in issue, and if ascertainable, the

16

allegedly fraudulent AWP(s) for each such drug, and the basis for allegeing each such AWP was fraudulent.") (Torkelson Cert. Ex. K); In re Pharm. Indus. Average Wholesale Price Litig., supra, 263 F. Supp. 2d at 194 (requiring MDL plaintiff to "clearly and concisely allege with respect to each defendant: (1) the specific drug or drugs that were purchased from defendant, (2) the allegedly fraudulent AWP for each drug, and (3) the name of the specific plaintiff(s) that purchased the drug"); Amgen, supra, at 13 (Torkelson Cert. Ex. I).

> **2.      The Fund Fails to State with Particularity the Role Each Defendant Played in the Alleged Fraud**

The complaint completely fails to provide the level of detail about each defendant's role in the alleged fraudulent scheme that is necessary to satisfy the heightened particularity requirement of R. 4:5-8(a). See A-Valey Eng'rs, Inc. v. Bd. of Chosen Freeholders of County of Camden, 106 F. Supp. 2d 711, 718 (D.N.J. 2000) (applying federal law; civil conspiracy claims were insufficient when "[t]he general composition of the conspiracy and the role of each defendant therein [were] not described"). The Fund instead relies upon vague, conclusory, group-based allegations, such as "Defendants engaged in a fraudulent scheme and conspiracy to deliberately inflate the AWPs," "spreads were then marketed by the defendants as a profit . . . and were used to incentivize medical providers," and "defendants' fraudulent conduct was of such a nature as to be self-concealing." See Compl. ¶¶ 108, 112, 138. Moreover, the Fund's entire discussion of damages lacks any specificity whatsoever as to any particular defendant. See Compl. ¶¶ 295-297.

> **3.      The Fund Fails to Plead with Particularity Specific Acts by Defendants in Furtherance of the Alleged Fraud**

The complaint also fails to particularize the allegedly fraudulent actions each defendant took in furtherance of the supposed fraud. The Fund merely describes a marketing and sales scheme and conspiracy in generalized terms. It offers no factual allegations as to *how* each

17

defendant participated in the "scheme and conspiracy," or *when* or *where* the "scheme and conspiracy" came into being.  For example, the Fund alleges that defendants fraudulently promoted spreads on prescription drugs between published AWPs and acquisition costs.  See Compl. ¶¶ 108-113.  Yet the Fund never alleges what constitutes an allegedly fraudulent spread nor specifies how each defendant marketed or promoted the spread with respect to any of the (unidentified) drugs at issue.  Nor does the Fund describe what specific misrepresentations were made by each defendant, beyond identifying a few drugs and then including the vague allegation "all of these drugs had 'spreads' and were paid for by plaintiff and the Class."  See, e.g., Compl. ¶¶ 147, 162, 165, 171.  This lack of specificity renders the claim insufficient.  See In re Pharm. Indus. Average Wholesale Price Litig., supra, 263 F. Supp. 2d at 194 (requiring plaintiffs to allege specific fraudulent AWP for each drug at issue in order to satisfy FED. R. CIV. P. 9(b)).

The Fund's conclusory allegation that defendants provided free goods, drug samples, and unspecified "other inducements" in an effort to commit fraud, see, e.g., Compl. ¶¶ 122-128, is likewise insufficient.  The Fund fails to allege any specific instance or fact, what "other inducements" are at issue in this case, or how any specific misconduct was fraudulent as to the Fund.  As before, the Fund simply relies upon generalized group allegations.  See, e.g., Compl. ¶ 123 ("All defendants engaged in the practice of providing such inducements to medical providers in furtherance of their fraudulent marketing and sales scheme and conspiracy.").  Such vague and generalized pleading fails to satisfy R. 4:5-8(a).  See, e.g., Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 2000) ("A plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud.").

4.     The Fund Does Not Allege Fraudulent Concealment with the Required Particularity

The complaint is also deficient because it merely alleges that defendants "fraudulently concealed" the alleged underlying "scheme and conspiracy," see Compl. ¶¶ 136-143, without supplying a single detail regarding how any defendant fraudulently concealed anything. Thus, Counts II through V are not properly pled. The entire section of the complaint headed "Defendants' Conspiracy and Fraudulent Concealment" lacks any specificity whatsoever as to any particular defendant or drug. The Fund fails to identify any duty to disclose any information to it or to anyone else and even goes so far as to claim that "defendants' fraudulent conduct was of such a nature as to be self-concealing," Compl. ¶ 138, without offering any explanation as to the meaning of that assertion. These general allegations fail to satisfy the heightened specificity requirement of R. 4:5-8(a), as has been recognized in another case raising similar AWP allegations. See Memorandum Decision of September 7, 2006 in County of Erie v. Abbott Laboratories, Inc., Index No. 2005-2439, at 21 (N.Y. Sup. Ct.) ("County of Erie") ("As a matter of law, Plaintiff has failed to allege any basis for such a duty [to disclose] to exist in this situation by statute, rule, common law or any other basis. The sixth cause of action [fraudulent concealment] is dimissed.") (Torkelson Cert. Ex. L).

III.     THE COMPLAINT FAILS TO STATE A CLAIM FOR EACH COUNT

A.     Count I Cannot State A Claim For Unjust Enrichment Because The Fund Did Not Confer A Benefit Upon Defendants, And Any Alleged Benefits Are Too Remote

Count I purports to assert a claim for unjust enrichment. To state a claim for unjust enrichment, a plaintiff must allege facts sufficient to demonstrate that a benefit was conferred upon the defendant by the plaintiff and that the defendant's retention of such benefit would be unjust. Specifically, under New Jersey law,

19

a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.

[VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (citations omitted).]

Although the Fund attempts to state the legal elements of a claim for unjust enrichment, Compl. ¶¶ 285-287, the Fund does not and cannot allege that it or other New Jersey consumers conferred any benefit directly upon defendants. Instead, the complaint alleges that defendants sell their drugs to medical providers and other suppliers, *not* to the Fund. See Compl. ¶ 111 (alleging discrepancies in "the prices charged for these drugs by the defendants to medical providers and other suppliers"). Because any alleged "overpayments" by the Fund were made to the providers (rather than defendant pharmaceutical companies), the Fund did not confer any cognizable benefit on defendants.

Moreover, "*there must be an objective expectation by defendant to pay plaintiff.*" Insulation Contracting & Supply v. Kravco, Inc., 209 N.J. Super. 367, 377 (App. Div. 1986); see also Castro v. NYT Television, 370 N.J. Super. 282, 300 (App. Div. 2004) (Hospital patients who were filmed for a documentary could not state a claim for unjust enrichment because "[a]bsent express agreement, a member of the general public who is subject to videotaping for a television program cannot reasonably expect that he or she will receive payment from the producer of the show."). There was no such expectation here, and none is alleged.

Finally, because the Fund does not allege that defendants had an objective expectation of receiving payments directly from the Fund or any other New Jersey consumer, the benefits alleged by the Fund are too remote and speculative to require recovery under an unjust enrichment theory. See, e.g., In re Lead Paint Litig., No. A-1946-02T3, 2005 WL 1994172,

20

at *15-*16 (N.J. Super. Ct. App. Div. Aug. 17, 2005) (noting that plaintiffs could not have expected to receive remuneration for a benefit that was "too remote and speculative to trigger recovery"), <u>certif. granted</u>, 185 <u>N.J.</u> 391 (2005).

 B. <u>Count II Does Not State A Claim For Fraud</u>

 Count II should be dismissed because the Fund has not pled all of the necessary elements of common law fraud. To properly do so, the Fund must allege "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and, (5) resulting damages.'" <u>Banco Popular N. Am. v. Gandi</u>, 184 <u>N.J.</u> 161, 172-73 (2005) (quoting <u>Gennari v. Weichert Co. Realtors</u>, 148 <u>N.J.</u> 582, 610 (1997)). Where, as here, the fraud claim is predicated upon *nondisclosure* of information, the Fund also must plead facts alleging that defendants had a duty to disclose. <u>See</u> <u>McConkey v. Aon Corp.</u>, 354 <u>N.J.</u> <u>Super.</u> 25, 47 (App. Div. 2002) ("the mere non-disclosure of material facts can be a form of misrepresentation where the defendant has concealed a known fact that is material to the transaction, *and there is a duty to disclose*" (emphasis added)), <u>certif. denied</u>, 175 <u>N.J.</u> 429 (2003). Count II fails on a number of grounds.

 1. <u>The Fund Has Not Alleged Any False Representations or a Duty to</u> <u>Disclose</u>

 The Fund claims that defendants reported to pharmaceutical industry publications AWPs that were "higher than the actual cost for these drugs to medical providers and other suppliers." Compl. ¶ 111. The Fund alleges that, as a result of such alleged misrepresentation and concealment, it and other New Jersey consumers overpaid for defendants' drugs. Compl. ¶¶ 15, 138. Although the Fund asserts that the AWPs for defendants' drugs were false, it does not state what a "true AWP" should have been. More to the point, while alleging that defendants' AWPs

were inflated because they did not "represent prices actually paid" by medical providers and other purchasers, the Fund *does not allege that any defendant ever represented that AWP bore any particular relationship to prices actually paid in New Jersey (or anywhere else) by medical providers or other purchasers.*

To the extent the complaint relies on concealment as the basis of the alleged fraud, the claim must fail. Although the Fund alleges that defendants concealed the actual sale prices of their drugs, see Compl. ¶ 138, the complaint pleads no facts that would establish that defendants owed any legal duty to disclose their pricing structures. Courts repeatedly have held that manufacturers and retailers have no duty to disclose pricing structures to consumers. See, e.g., Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308 (11th Cir. 2000) (finding pharmacy had no duty to disclose its pricing structure for prescription drugs); Bonilla v. Volvo Car Corp., 150 F.3d 62, 71 (1st Cir. 1998) (noting that "there is nothing in the law of fraud that prevents even a single seller from charging different markups in different markets so long as there is no affirmative misrepresentation"), cert. denied, 526 U.S. 1098, 119 S. Ct. 1574, 143 L. Ed. 2d 670 (1999); Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 656 (S.D.N.Y. 1996) (dismissing complaint where plaintiffs did not "identify any basis in federal or state statutes or the common law for imposing on the Defendants a duty to disclose" the decision to sell goods at different prices), aff'd, 113 F.3d 1229 (2d Cir. 1997). Other courts considering similar claims involving AWP have dismissed claims on this basis. See County of Erie, supra, at 20-21 ("As a matter of law, Plaintiff has failed to allege any basis for such a duty [to disclose] to exist in this situation [of alleged AWP fraud] by statute, rule, common law or any other basis. The sixth cause of action [fraudulent concealment] is dimissed.") (Torkelson Cert. Ex. L).

In addition, the complaint lacks any allegation that would give rise to a legal duty to disclose what it alleges was concealed. The Fund does not allege that it was a customer of defendants. Rather, it alleges that defendants dealt with "medical providers and other purchasers." See, e.g., Compl. ¶¶ 111-113. The complaint offers no explanation as to how these relationships could create a duty to disclose anything to the Fund.

2.      The Fund Does Not Adequately Allege Reasonable Reliance

The Fund makes a single, conclusory allegation that it and New Jersey consumers "reasonably and justifiably" relied upon defendants' alleged misrepresentations and omissions related to the costs of their prescription drugs. Compl. ¶ 293. As described above, supra pp. 5-7, the public record makes clear that the Fund's decision to use AWP as a basis for reimbursement was one that was, or should have been, well informed by decades of public dialogue. Under these circumstances, the Fund cannot claim that it "reasonably relied" upon an alleged "misrepresentation" by defendants about AWPs.

C.      Count III Should Be Dismissed Because It Fails Adequately To Allege Civil Conspiracy

The Fund's bare allegations of civil conspiracy fail as a matter of law. To state a claim for civil conspiracy under New Jersey law, the Fund must allege "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003); see also Naylor v. Harkins, 27 N.J. Super. 594, 604 (Ch. Div. 1953), aff'd in part, rev'd in part on other grounds, 32 N.J. Super. 559 (App. Div. 1954). Moreover, a plaintiff must allege an agreement from which the court can infer that the defendants reached an understanding. See Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337,

23

365 (App. Div. 1993), certif. denied, 135 N.J. 468 (1994). Because civil conspiracy is a tort, a plaintiff must also allege an "overt act of one or more of the conspirators in furtherance of the conspiracy, and the consequential damage to the rights of another, of which the overt act is the proximate cause." Bd. of Educ. of Asbury Park v. Hoek, 66 N.J. Super. 231, 241 (App. Div. 1961), rev'd in part on other grounds, 38 N.J. 213 (1962).

Under New Jersey law, there is no separate action for damages arising from an alleged conspiracy itself, but rather only for the alleged underlying acts. Stated differently, the Fund cannot bring a civil conspiracy action unless defendants committed an act that would be actionable even without the conspiracy. See Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n, 37 N.J. 507, 516 (1962); see also Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 497 (D.N.J. 1998) (dismissing civil conspiracy claims because plaintiff failed to establish a right of action against defendants under any of its statutory or common law theories, and stating that "[a] conspiracy is not actionable absent an independent wrong; therefore, the dismissal of [plaintiff's] other causes of action requires dismissal of the conspiracy claim"). Thus, a conspiracy is "not the gravamen of the charge, but merely a matter of aggravation, enabling the plaintiff to recover against all the defendants as joint tortfeasors." Hoek, supra, 66 N.J. Super. at 241. The actionable element is the tort that defendants agreed to perpetrate and that they actually committed. See Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157, 159 (App. Div. 1953).

The Fund's civil conspiracy claim is dependent upon the underlying alleged fraud. See Compl. ¶¶ 290-297. But as demonstrated above, supra pp. 13-16, the Fund has failed to properly plead its fraud claim. Because the Fund does not state a valid underlying claim, the dependent

civil conspiracy claim also must fail.  A conspiracy is "not actionable absent an independent wrong."  Eli Lilly, supra, 23 F. Supp. 2d at 497.

Furthermore, where a plaintiff merely advances bare conclusions without alleging facts of a combination or intent to conspire, such allegations are insufficient; a plaintiff must allege facts to indicate a conspiracy or that would allow an inference of conspiratorial conduct.  See Amabile v. Lerner, 64 N.J. Super. 507, 514 (Ch. Div. 1960) ("A mere allegation that there is a conspiracy is a conclusion, not a fact.  It must be substantiated by facts – factual evidence . . . ."), aff'd, 74 N.J. Super. 443 (App. Div. 1962).  Here, the Fund has not alleged any specific facts concerning the nature of defendants' agreement, the manner in which the agreement was entered into, the purpose of the agreement, or the overt acts taken in furtherance of the agreement.  The Fund's allegations that multiple defendants may have marketed their products in the same or similar manner does not establish "a real agreement or confederation with a common design." Morganroth & Morganroth, supra, 331 F.3d at 414.

In fact, the complaint's conspiracy theory is nonsensical.  The Fund first alleges that each defendant inflated its AWPs to create larger spreads and used other unlawful inducements to garner market share away from its competitors.  See Compl. ¶¶ 15, 112-114, 120-121.  The Fund then alleges defendants acted independently to gain market share.  Compl. ¶¶ 136-137, 298-307. In short, the Fund illogically alleges that more than 50 manufacturers conspired with one another in order to compete against one another.

Finally, the Fund has not pled "special damages" as required for a civil conspiracy claim. Morganroth & Morganroth, supra, 331 F.3d at 414.  Special damages require "'the loss of something having economic or pecuniary value.'"  Ward v. Zelikovsky, 136 N.J. 516, 541 (1994) (citation omitted).  If no actual pecuniary injury is pled, the special damages element is not

satisfied. <u>New Jersey Rule</u> 4:5-8(f) requires that a plaintiff "specially" state any "[i]tems of special damage claimed" or "facts giving rise to any included claim for special damages." <u>R.</u> 4:5-8(f). There are no specific allegations or facts of special damages in the complaint, and as such, the civil conspiracy claim fails.

> **D.      Count IV Should Be Dismissed Because It Fails Adequately To Allege Concert Of Action**

The Fund's concert of action claim is plagued by the same deficiencies as its civil conspiracy claim. To sustain a claim for concert of action, a plaintiff must allege that the defendants (1) intentionally united in a wrongful act, (2) were present and actively participated in the wrongful act, and (3) had a common interest so that the injury results from the joint wrong. <u>See</u> <u>McGuinness v. Wakefern Corp.</u>, 257 <u>N.J. Super.</u> 339, 342 (Law Div. 1991).

There is no substantive difference between the Fund's concerted action claim and its claim for civil conspiracy. As the New Jersey Supreme Court has observed, "[c]oncert of action is a conspiracy only if its object is unlawful, or if the means are tainted with illegality." <u>Kingston Trap Rock Co. v. Int'l Union of Operating Eng'rs, Local No. 825, 825-A and 825-B,</u> 129 <u>N.J. Eq.</u> 570, 580 (E. & A. 1941). Both claims (1) are predicated on the Fund's allegations of fraud, which, as discussed above, do not state a claim under New Jersey law, (2) require the Fund to demonstrate a common agreement among defendants for an unlawful purpose, and (3) require that the Fund demonstrate some overt act, through direct participation or substantial assistance, in furtherance of the unlawful objective. The Fund's concert of action claim suffers the same defects as its civil conspiracy claim, and therefore should be dismissed.

> **E.      Count V Should Be Dismissed Because The Fund Did Not Adequately Plead A Consumer Fraud Act Claim**

In addition to the Fund's lacking standing as a "consumer" to bring a Consumer Fraud Act claim, Count V should be dismissed because the Fund also fails to allege all of the elements

required under the Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. Under the CFA, "a private 'plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.'" Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 114 (App. Div.) (citation omitted), certif. denied, 185 N.J. 265 (2005); see also N.J.S.A. 56:8-2, 8-19.

Section 2 of the CFA defines proscribed unlawful conduct as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . ., whether or not any person has in fact been misled, deceived or damaged thereby . . . .

[N.J.S.A. 56:8-2.]

There are two kinds of violations defined in Section 2 – "affirmative acts" and "knowing omissions." See Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 598 (App. Div. 1990), aff'd per curiam, 124 N.J. 520 (1991). The proscribed "affirmative acts" include "unconscionable commercial practice, deception, fraud, false pretense, . . . [or] misrepresentation." N.J.S.A. 56:8-2. "Knowing omissions" consist of "concealment, suppression, or omission" of a material fact. Ibid. Although intent is not an essential element for affirmative acts, where a claim is predicated on an omission, a plaintiff must allege that the defendant acted with knowledge. See Chattin, supra, 243 N.J. Super. at 598-99. To constitute consumer fraud, therefore, a business practice in question must be "'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer."

27

_Turf Lawnmower Repair, Inc. v. Bergen Record Corp._, 139 N.J. 392, 416 (1995), cert. denied, 516 U.S. 1066, 116 S. Ct. 752, 133 L. Ed. 2d 700 (1996).

        1.       The Fund Fails to Allege That Defendants' Conduct Violated the CFA

The Fund claims that defendants reported AWPs for drugs to pharmaceutical industry publications that were "higher than the actual cost for these drugs to medical providers and other suppliers." Compl. ¶ 111. The Fund alleges that it overpaid for defendants' drugs because defendants misrepresented or concealed the true price of their drugs. Compl. ¶¶ 15, 138. The Fund, however, fails to specify (1) the inflated prices that it claims to have paid, (2) how the prices were "inflated," i.e., what the "true AWP" should have been, (3) the prices the Fund should have paid, or (4) whether any defendant ever represented that AWP bore any particular relationship to prices actually paid in New Jersey by medical providers or other purchasers.

The Fund also alleges that defendants concealed the actual sale prices of their drugs, Compl. ¶ 111, but does not claim that defendants had an obligation to disclose any actual prices. Courts repeatedly have held that manufacturers and retailers have no duty to disclose pricing structures to consumers. See, e.g., Langford, supra, 231 F.3d 1308 (finding pharmacy had no duty to disclose its pricing structure for prescription drugs); Katzman, supra, 167 F.R.D. at 656 (dismissing complaint where plaintiffs did not "identify any basis in federal or state statutes or the common law for imposing on the Defendants a duty to disclose" the decision to sell goods at different prices).

The Fund does not even allege that it was defendants' customer. Rather, the complaint alleges that defendants dealt with "medical providers and other suppliers" and reported AWPs to "pharmaceutical industry publication sources." See, e.g., Compl. ¶¶ 110-112. The Fund does not allege that it purchased the drugs from defendants and does not identify from whom it purchased any drugs. The complaint contains no allegation or explanation of how defendants'

relationships with medical providers or the third-party publication sources created a duty to disclose pricing. Under these specific circumstances, the CFA simply does not apply.[7]

### 2. The Fund Fails to Allege That Defendants' Conduct Caused It an "Ascertainable Loss"

Even if the Court were to find that the Fund otherwise had sufficiently pled a CFA violation, the complaint would fail for not adequately alleging causation and an "ascertainable loss." The CFA "does not provide for recovery of statutory damages where a plaintiff cannot show actual harm." See Cannon v. Cherry Hill Toyota, Inc., 161 F. Supp. 2d 362, 373 (D.N.J. 2001). A plaintiff "bear[s] the ultimate burden of showing a causal link between the offending practice and the claimed loss, with the amount of ascertainable loss to be demonstrated to a reasonable degree of certainty." Id. at 374. The Fund has not met that pleading burden.

---

[7] In the initial conference before the Chancery Division in this case, the Fund's counsel cited a prior case in which he represented the plaintiff, Walker v. TAP Pharmaceutical Products, Inc., No. CPM L 682-01 (N.J. Super. Ct. Law Div., Cape May County, Mar. 7, 2002) (Torkelson Cert. Ex. M), contending that the rulings in the Walker case were relevant. In Walker, the trial court denied the defendants' motion to dismiss the plaintiff's CFA, common law fraud, and civil conspiracy claims, but granted the defendants' motion to dismiss the plaintiff's unjust enrichment claim. Ibid. As an unpublished trial court opinion that was never subject to appellate review, Walker cannot constitute precedent for this Court's determination. R. 1:36-3. Moreover, the Walker decision has no bearing on defendants' motion to dismiss the Fund's claims in this case. Walker does little more than recite the elements of each cause of action and then state, in conclusory fashion, that the plaintiff there had sufficiently alleged all necessary elements. For example, Walker stated that "[t]he plaintiff has successfully pled an unconscionable commercial practice by the defendants [sufficient to sustain a CFA claim]," slip op. at 7, but fails to specify how the defendants' alleged acts met the standard for an "unconscionable commercial practice." The decision also fails to discuss causation issues – essential to prove both the CFA and common law fraud claims – and summarily states that "plaintiff did in fact rely on the AWP by paying the co-payment for the Lupron," id. at 10. Walker makes that conclusory finding without discussing the plaintiff's knowledge of AWP, the actual price the plaintiff paid, how the plaintiff determined what to pay, or whether the price the plaintiff actually paid was even based on AWP.

Section 19 of the CFA provides:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . .

[N.J.S.A. 56:8-19.]

Therefore, the Fund must allege "the extent of any ascertainable loss, particularly proximate to a misrepresentation or other unlawful act of the defendant condemned by the [CFA]." Ramanadham v. N.J. Mfrs. Ins. Co., 188 N.J. Super. 30, 33 (App. Div. 1982). Under this standard, the Fund's allegations do not support a private consumer fraud cause of action.

The Fund has not specifically pled it suffered an "ascertainable loss." Instead, the Fund merely claims that it should have paid the lowest possible price for drugs. There is nothing in the complaint, however, indicating that the Fund was induced to purchase prescription drugs by any deceptive conduct on the part of defendants. The Fund's allegation that it paid higher prices than it would have preferred is not enough.

Although "ascertainable loss" is not defined in the CFA, the New Jersey Supreme Court recently stated:

> To give effect to the legislative language describing the requisite loss for private standing under the CFA . . ., a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.

[Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005).]

In Thiedemann, the New Jersey Supreme Court reversed the judgment of the Appellate Division and remanded the case back to the trial court for entry of judgment in favor of the defendant manufacturer, stating that "subjective assertions without more are insufficient to

satisfy the requirement of an ascertainable loss that is expressly necessary for access to the CFA remedies." Id. at 252.

The complaint apparently attempts to rely on defendants' statements to third-party publications as the basis for a misrepresentation. The complaint contains no allegations, however, that these third-party publications were available to the general public, let alone that any individual consumer ever saw, read, heard of, or relied upon them. Moreover, there is no suggestion in the complaint that these publications contained any representations about the products or other information designed to induce a consumer to purchase the product. Simply put, the complaint fails to satisfy the necessary requirement that the Fund's alleged damages occurred as a result of defendants' conduct.

## IV. THE FUND'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

The Fund's action purports to stretch back to 1991. Compl. ¶¶ 14, 299. As discussed below, however, the applicable statute of limitations period for the Fund's claims is six years. The complaint was filed on June 30, 2003. Consequently, and at the very latest, each claim should be time barred to the extent it arose before June 30, 1997.

New Jersey courts have long recognized the benefits of enforcing applicable limitations periods, both to afford security from stale demands and to discourage delay in the bringing of claims. Ochs v. Fed. Ins. Co., 90 N.J. 108, 112 (1982); Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973). Here, the statute of limitations for the Fund's unjust enrichment, common law fraud, civil conspiracy to defraud, and concert of action to defraud claims is six years. N.J.S.A. 2A:14-1 (setting six-year statute of limitations for all tortious injuries other than personal injuries, libel, and slander); Kaufman v. i-Stat Corp., 165 N.J. 94, 127 (2000) (noting that statute of limitations governing common law fraud is six years under N.J.S.A. 2A:14-1).

31

Additionally, the statute of limitations applicable to claims under the Consumer Fraud Act is six years. Custom Commc'ns Eng'g, Inc. v. E.F. Johnson Co., 269 N.J. Super. 531, 542 (App. Div. 1993) (stating that six-year statute of limitations applies to claims brought under the CFA).

The statute of limitations for fraud claims begins to run when the allegedly injured party has actual or constructive notice of the injury, i.e., when a plaintiff discovers or should have discovered that a wrong has been inflicted. Greczyn v. Colgate-Palmolive, 183 N.J. 5, 10 (2005). A party must exercise due diligence in discovering the wrongdoing, and ignoring obvious and ascertainable facts will not toll the statute of limitations. Commonwealth Land Title Ins. Co. v. Kurnos, 340 N.J. Super. 25, 30-32 (App. Div. 2001). This requirement holds true even in cases where fraudulent concealment of the facts is alleged to toll the statute of limitations. Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 828 F. Supp. 287, 303-04 (D.N.J. 1993) (holding that asbestos manufacturers were entitled to argue that plaintiffs did not act with reasonable diligence even under fraudulent concealment doctrine).[8]

The Fund apparently recognizes that the public record would trigger the statute of limitations. The complaint thus seeks to toll the limitations period by alleging that defendants have concealed the "true" prices for their drugs sold to doctors, pharmacists, and wholesalers. Compl. ¶ 138. To toll the applicable limitations period under New Jersey law, however, the Fund must allege – with the specificity required by R. 4:5-8(a) – that defendants fraudulently concealed their actions from the Fund during the limitations period. Specifically, the Fund must allege and prove that by the "'exercise of reasonable diligence and intelligence'" it could not

---

[8] Because the reporting of the allegedly false or inflated AWPs by defendants forms the basis for all of the Fund's claims, the causes of action for each count accrued when the AWPs were allegedly reported. See Caravaggio v. D'Agostini, 166 N.J. 237, 244-46 (2001) (cause of action for fraud begins to run from actual discovery or the time when, by reasonable diligence, claim could have been discovered).

have discovered that it might have a basis for an actionable claim, <u>Viviano v. CBS, Inc.</u>, 101 <u>N.J.</u> 538, 546 (1986) (citation omitted), or that it had been "'induced or tricked by [its] adversary's misconduct into allowing the filing deadline to pass,'" <u>Villalobos v. Fava</u>, 342 <u>N.J. Super.</u> 38, 50 (App. Div.) (citation omitted), <u>certif. denied</u>, 170 <u>N.J.</u> 210 (2001).[9]  The doctrine of equitable tolling will toll the applicable statute of limitations where a plaintiff shows an affirmative act of concealment that misleads or relaxes the plaintiff's inquiry and the plaintiff exercised due diligence in its investigation of the facts.  <u>Freeman v. State</u>, 347 <u>N.J. Super.</u> 11, 30-31 (App. Div.), <u>certif. denied</u>, 172 <u>N.J.</u> 178 (2002).  Absent a showing of intentional inducement or trickery by the defendant, the doctrine should only be used "sparingly" and in "the rare situation where . . . the interests of justice" demand.  <u>Ibid.</u>

The Fund has failed to satisfy <u>R.</u> 4:5-8(a) and, therefore, is not entitled to a tolling of the limitations period.  The Fund cannot plausibly contend based upon the public record that it could not have discovered long ago, through the exercise of even the most minimal diligence, the claims it now asserts.[10]

---

[9] A plaintiff can avoid application of the statute of limitations only if it can show that the defendant concealed the conduct complained of, thwarting a diligent plaintiff from discovery of an injury.  <u>Freeman v. State</u>, 347 <u>N.J. Super.</u> 11, 22-23, 31 (App. Div.), <u>certif. denied</u>, 172 <u>N.J.</u> 178 (2002).

[10] The discovery rule could apply *only* to the Fund's claims rooted in fraud or misrepresentation (Counts I, II, and V).  Even these claims accrue, however, when the fraud or misrepresentation ought to have been discovered by the exercise of ordinary diligence.  <u>See</u> <u>Lopez v. Swyer</u>, 62 <u>N.J.</u> 267, 275 n.2 (1973) (holding that in applying the discovery rule to fraud claims, the period of limitations is tolled and only begins to run from actual discovery of the fraud or the time when, by reasonable diligence, it could have been discovered); <u>see also</u> <u>Dreier Co. v. Unitronix Corp.</u>, 218 <u>N.J. Super.</u> 260, 274 (App. Div. 1986); <u>Partrick v. Groves</u>, 115 <u>N.J. Eq.</u> 208, 211 (E. & A. 1934); <u>Giehrach v. Rupp</u>, 112 <u>N.J. Eq.</u> 296, 302-03 (E. & A. 1933); <u>Sun Bldg. & Loan Ass'n of Newark v. Rashkes</u>, 119 <u>N.J. Eq.</u> 443, 451 (Ch. 1936); <u>Lincoln v. Judd</u>, 49 <u>N.J. Eq.</u> 387, 389 (Ch. 1892).

CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety for all corporate defendants.

Respectfully submitted,

*Christopher E. Torkelson, mr*

Michael L. Rosenberg
Marshall D. Bilder
Christopher E. Torkelson
Sterns & Weinroth, P.C.
50 West State Street
Post Office Box 1298
Trenton, NJ 08607-1298
Telephone: (609) 392-2100
Facsimile:  (609) 392-7956

New Jersey Local Counsel for Defendants
Baxter Healthcare Corporation
and Baxter International, Inc.

Of Counsel

J. Andrew Jackson
Dickstein Shapiro LLP
1825 Eye Street NW
Washington, DC 20006-5403
Telephone: (202) 420-2200
Facsimile:  (202) 420-2201

National Counsel for Defendants
Baxter Healthcare Corporation
and Baxter International, Inc.

34