# EXHIBIT A

## STATE SETTLEMENT AGREEMENT AND RELEASE

### I. PARTIES

This Settlement Agreement ("Agreement") is entered into by the state of Iowa and SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), hereinafter collectively referred to as "the Parties."

### II. PREAMBLE

As a preamble to this State Agreement, the Parties agree as follows:

A. On March 31, 2001, Glaxo Wellcome Inc., a North Carolina corporation with a principal place of business in Research Triangle Park, North Carolina ("Glaxo"), was merged into SmithKline Beecham Corporation, a Pennsylvania corporation with a principal place of business in Philadelphia, Pennsylvania ("SmithKline"). SmithKline Beecham Corporation now has operations in both Research Triangle Park, North Carolina and Philadelphia, Pennsylvania, and is doing business in the United States as GlaxoSmithKline ("GSK").

B. At all relevant times, both Glaxo and SmithKline marketed and sold pharmaceutical products nationwide. Among other drugs, Glaxo marketed and sold the prescription drug product ondansetron HCL, an anti-emetic, marketed under the brand name Zofran®. Among other drugs, SmithKline marketed and sold the prescription drug product granisetron HCL, an anti-emetic, marketed under the brand name Kytril®. Both Glaxo and SmithKline sold the drugs to various customers including, among others, group purchasing organizations, wholesalers, oncology clinics, physicians, and hospitals. SmithKline divested Kytril on or about December 22, 2000.

C. The state of Iowa contends that GSK submitted or caused to be submitted claims for payment to the Medicaid Program, 42 U.S.C. §§ 1396-1396v.

1

D.  The state of Iowa contends that it has certain civil claims against GSK under the False Claims Act, other federal and state statutes, and/or common law doctrines for engaging in the following conduct:

(i)  During the period from January 1, 1994 through December 31, 2002, Glaxo and SmithKline knowingly set, reported, and maintained or caused to be set, reported, and maintained false, fraudulent, and inflated Average Wholesale Prices, Suggested List Prices, Net Wholesale Prices, and/or Wholesale Purchase Prices (the Reported Prices) for certain National Drug Codes for Zofran and Kytril listed in Attachment 1 (the "Covered Drugs") that were substantially higher than the prices that the vast majority of their customers actually paid for the Covered Drugs and knowingly used the artificial spread between the false, fraudulent, and inflated Reported Prices and the actual acquisition cost of the Covered Drugs in marketing, promoting, and selling the Covered Drugs to existing and potential customers. Glaxo and SmithKline knew that the false and fraudulent reporting and marketing schemes would cause their customers to submit false and fraudulent claims for reimbursement to Medicaid for reimbursement that were substantially higher than the customers' actual acquisition cost for the Covered Drugs.

(ii)  During the period from January 1, 1994 through December 31, 1998, SmithKline knowingly engaged in a marketing scheme whereby it encouraged its customers to (1) take the Kytril left over from an injection from a single-injection vial, (2) pool the leftover Kytril from several vials to create another full dose of Kytril to be administered to a patient, and (3) submit a claim for reimbursement for the pooled vial of Kytril, all of which resulted in claims for such pooled vials being submitted to the Medicaid program for which the customer had had an actual acquisition cost of $0 and already had been paid on a per vial basis.

E.  The state of Iowa contends that the Medicaid program was damaged as a result of the Covered Conduct.

2

Collectively, the conduct listed in this paragraph will be referred to as the "Covered Conduct".

F.   HHS-OIG and the state of Iowa contend that they have certain administrative claims against GSK, for engaging in the covered conduct, under the provisions for permissive exclusion from the Medicaid program, 42 U.S.C. § 1320a-7(b), and the provisions for civil monetary penalties, 42 U.S.C. §§ 1320a-7a and 1396r-8(b)(3)(C)(ii), for the Covered Conduct.

G.   GSK denies the allegations of the state of Iowa and HHS-OIG as set forth in preamble paragraphs D, E and F of this agreement and denies that it has any liability relating to these contentions and allegations.

H.   To avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these claims, the Parties mutually desire to reach a full and final settlement as set forth below.

I.   GSK has previously entered into a Settlement Agreement with the United States of America regarding the Covered Conduct (the "Federal Settlement Agreement").

## III. TERMS AND CONDITIONS

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations in this Agreement, and for good and valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

1.   GSK agrees to pay to the United States and the States $149,000,000, plus interest accruing at a simple rate of 4.375% per annum from May 21, 2005, through and including the effective date of the Federal Settlement Agreement (collectively the "Settlement Amount"). GSK agrees to pay the Settlement Amount as follows:

   A.   No later than three business days from the effective date of the Federal Settlement Agreement, GSK agrees to pay $138,650,000 plus interest accruing at a simple rate of

3

4.375% per annum (Medicare and Federal Share of Medicaid) from May 21, 2005, through and including the effective date of the Federal Settlement Agreement, to the United States by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice.

      B.    No later than three business days from the effective date of the Federal Settlement Agreement, GSK agrees to transfer $10,350,000 (State Settlement Amount) plus interest accruing at a simple rate of 4.375% per annum from May 21, 2005, through and including the effective date of the Federal Settlement Agreement, to an account with a national banking institution to earn interest as agreed upon between GSK and the National Association of Medicaid Fraud Control Units Settlement Team (NAMFCU Team).

      C.    At the conclusion of the State Settlement process, when all Participating States have executed agreements, GSK shall transfer the State Settlement Amount plus the aforementioned interest, as set out in paragraph 1(B) above, to a distribution account designated by the NAMFCU Team, for distribution to the individual Participating States.

      D.    The total portion of the Settlement Amount paid by GSK in settlement for alleged injury to the Medicaid Program for the state of Iowa is $91,538.60, consisting of a portion paid to the state of Iowa under this Agreement and another portion paid to the federal government as part of the Federal Settlement Amount. The individual portion of the State Settlement Amount allocable to the state of Iowa, is $41,473.22 (the "Individual State Settlement Amount").

      E.    The state of Iowa shall be entitled to disbursement of its Individual State Settlement Amount from the NAMFCU distribution account only after the NAMFCU Team has received fully executed State Settlement Agreements from the Participating States and from GSK. Any funds not disbursed to a state (non-participating state(s)), plus interest as set out in paragraph 1(B) above, shall be returned to GSK.

2. GSK has entered into an Addendum to its Corporate Integrity Agreement (the "CIA Addendum") with HHS/OIG in connection with this matter and will provide certified Pricing Information to the state of Iowa and the appropriate national commercial drug price reporting service (as directed by the Addendum to this agreement) pursuant to the terms of said CIA Addendum. In accordance with Sections III.I.1 and III.I.2.e of the CIA Addendum, the state of Iowa hereby agrees that the Pricing Information reported to the Iowa State Medicaid Program pursuant to that section shall be considered to be confidential commercial or financial information and proprietary trade secrets and afforded the maximum degree of confidentiality permitted by state law. All information provided to the state Medicaid program pursuant to this agreement shall be made available to the State's Medicaid Fraud Control Unit upon request.

3. In consideration of this Agreement and payment set forth herein and subject to the exceptions from release set forth in Paragraph 4 below, the state of Iowa on behalf of itself, its officers, agents, agencies and departments shall release and forever discharge GSK, its predecessors, subsidiaries, joint venture owners, and their corporate parents and affiliates, successors and assigns, from any civil or administrative claims for damages or penalties that the state of Iowa has or may have relating to the Covered Conduct. The payment of the Settlement Amount fully discharges GSK from any obligation to pay Medicaid-related restitution, damages, and/or any fine or penalty to the state for the Covered Conduct.

4. Notwithstanding any term of this Agreement, the state of Iowa specifically does not herein release GSK, its predecessors, subsidiaries, joint venture owners, and their corporate parents and affiliates, successors and assigns, and their current and former directors, officers, and employees from any and all of the following: (a) any potential criminal, civil or administrative claims arising under state of Iowa revenue codes; (b) any criminal liability; (c) any civil or administrative liability that GSK has or may have under any state statute, regulation, or rule not covered by the release; (d) except as explicitly stated in this State Settlement Agreement, any administrative liability, including mandatory exclusion from the state of Iowa's Medicaid

5

program; (e) any liability to the state of Iowa (or its agencies) for any conduct other than the Covered Conduct; (f) any claims based upon such obligations as are created by this State Settlement Agreement.

5. In consideration of the obligations of GSK set forth in this Agreement, conditioned upon GSK's payment in full of the State Settlement Amount into the State Settlement Account, as provided in paragraph 1(B) above, and except as reserved in Paragraph 4 above, the state of Iowa agrees to release and refrain from instituting, directing or maintaining any administrative claim or any action seeking exclusion from the state of Iowa's Medicaid program against GSK, its predecessors, subsidiaries, joint venture owners, their corporate parents and affiliates, successors and assigns, for the Covered Conduct. Nothing in this Agreement precludes the state of Iowa from taking action against GSK in the event that GSK is excluded by the federal government, or for conduct and practices other than the Covered Conduct. The Medicaid Fraud Control Unit for the state of Iowa further agrees to refrain from recommending, causing or attempting to cause any administrative action or sanction, including debarment, by any other government agency of the state of Iowa for the Covered Conduct. GSK acknowledges that the state of Iowa does not have the authority to release GSK from any claims or actions which may be asserted by any private payor or private insurer with respect to any state Medicaid program in which the private payor or private insurer provides health insurance coverage to Medicaid recipients and is paid for such coverage by the state Medicaid program on a capitated basis.

6. GSK fully and finally releases the state of Iowa, its agencies, employees, servants, and agents from any claims (including attorneys fees, costs, and expenses of every kind and however denominated) which GSK has asserted, could have asserted, or may assert in the future against the state of Iowa, its agencies, employees, servants, and agents, related to or arising from the investigation and prosecution of the Covered Conduct up to the effective date of this Settlement Agreement.

6

7. GSK agrees to cooperate fully and truthfully with the state of Iowa's investigation of individuals and entities not specifically released in this Agreement for the Covered Conduct and for conduct by any other person or entity similar to the Covered Conduct. More specifically, upon reasonable notice, GSK will make reasonable efforts to facilitate access to, and encourage the cooperation of, its directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals, and will furnish to the state of Iowa, upon reasonable request, all non-privileged documents and records in its possession, custody or control relating to the Covered Conduct or conduct by any other person or entity similar to the Covered Conduct.

8. GSK waives and will not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause of the Fifth Amendment of the Constitution or Excessive Fines Clause of the Eighth Amendment of the Constitution, this Settlement Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. The Settlement Amount that GSK shall pay will not be decreased as a result of the denial of claims for payment now being withheld from payment by the state of Iowa's Medicaid program where such denial resulted from the Covered Conduct. If applicable, GSK agrees not to resubmit to the program any previously denied claims where such denial resulted from the Covered Conduct and agrees not to appeal any such denials of claims.

10. This Agreement is intended to be for the benefit of the Parties only, and by this instrument the Parties do not release any claims against any other person or entity, including but not limited to any individual or entity that purchased Kytril and Zofran from GSK, except as specifically provided herein.

7

11. Nothing in any provision of this Agreement constitutes an agreement by the state of Iowa concerning the characterization of the Settlement Amount for purposes of the state internal revenue laws.

12. This Agreement does not constitute an admission by any person or entity, and shall not be construed as an admission by any person or entity, with respect to any issues of law or fact.

13. In addition to all other payment and responsibilities under this Agreement, GSK agrees to pay all reasonable travel costs and expenses of the NAMFCU state negotiating team. GSK will pay this amount by separate check or wire transfer made payable to the National Association of Medicaid Fraud Control Units after the Participating States execute this Agreement.

14. GSK represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

15. The undersigned GSK signatory represents and warrants that he is duly authorized as a result of appropriate corporate action to execute this Agreement. The undersigned state of Iowa signatories represent that they are signing this Agreement in their official capacities and they are authorized to execute this Agreement on behalf of the state of Iowa through their respective agencies and departments.

16. This Agreement is governed by the laws of the state of Iowa.

17. This Agreement is effective on the date of signature of the last signatory to the Agreement.

18. This Agreement shall be binding on all successors, transferees, heirs and assigns of the Parties.

19. This Agreement constitutes the complete agreement between the Parties with regard to the Covered Conduct. This Agreement may not be amended except by written consent of the Parties.

8

20. Each party agrees to perform any further acts and to execute and deliver any further documents reasonably necessary to carry out this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement.

**For the state of Iowa:**

By: _[signature: Robert Howard]_  Dated: 9/21/05

Title: Iowa MFCU Director

**For the state of Iowa Medicaid Program:**

By: _[signature]_  Dated: 9/22/05

Title: Bureau Chief

**SMITHKLINE BEECHAM CORPORATION**
**d/b/a GLAXOSMITHKLINE**

By: _____  Dated: _____

Name:
Position:
SmithKline Beecham Corporation d/b/a GlaxoSmithKline

By: _[signature]_  Dated: 8/10/06

THOMAS H. LEE, II
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106

Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

By: _____  Dated: _____

MARK SELTZER
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

10

**For the state of Iowa:**

By: _[signature: Robert Marbut]_    Dated: 9/21/05

Title: Iowa MFCU Director

**For the state of Iowa Medicaid Program:**

By: _[signature]_    Dated: 9/22/06

Title: Bureau Chief

**SMITHKLINE BEECHAM CORPORATION**
**d/b/a GLAXOSMITHKLINE**

By: _[signature]_    Dated: 8/3/06

Name: Christopher A. Viehbacher
Position: President, US Pharmaceuticals
SmithKline Beecham Corporation d/b/a GlaxoSmithKline


By: _____    Dated: _____
THOMAS H. LEE, II
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106

Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline


By: _____    Dated: _____
MARK SELTZER
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

10

**For the state of Iowa:**

By: _Robert H Garbul_ (signature)     Dated: 9/21/05

Title: Iowa MFCU Director

**For the state of Iowa Medicaid Program:**

By: _(signature)_     Dated: 9/22/05

Title: Bureau Chief

## SMITHKLINE BEECHAM CORPORATION
### d/b/a GLAXOSMITHKLINE

By: _____     Dated: _____

Name:
Position:
SmithKline Beecham Corporation d/b/a GlaxoSmithKline


By: _____     Dated: _____
THOMAS H. LEE, II
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106

Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

By: _(signature)_     Dated: 8/3/06
MARK SELTZER
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

10

Case 1:01-cv-12257-PBS   Document 5077-2   Filed 02/20/08   Page 14 of 15

## ATTACHMENT 1

| Name | Formulation | NDC |
|------|-------------|-----|
| Kytril | Injection, vial 1mg/ml | 00029-4149-01 |
| Kytril | Injection, vial 1mg/ml, m/d vial 4m | 00029-4152-01 |
| Zofran | Injection, 2mg/ml 20 ml | 00173-0442-00 |
| Zofran | Injection, 2mg/ml 2ml 5s | 00173-0442-02 |
| Zofran | Injection, prmxd, 32mg/50ml | 00173-0461-00 |

## ADDENDUM

### Designation of Reporting Service

1) The state of Iowa requests that the Pricing Information referred to in Section III 2 of this agreement and the CIA Addendum be sent to __Medi Span__ (a national commercial drug price reporting service).

If during the time period covered by the CIA Addendum (5 years from the effective date thereof) the state changes or supplements its commercial drug price reporting service, the state may notify GSK in writing of said change and the effective date. GSK shall then promptly commence reporting the Pricing Information to the subsequent commercial drug price reporting service in accordance with Sections III.I.1 and III.I.2.e of the CIA Addendum.

GSK contact information is as follows:

| | |
|---|---|
| David B. Brown, (with a copy to Elizabeth J. Hallyburton, Esq.). Director, Government Contracts/Pricing Programs GlaxoSmithKline 5 Moore Drive -- Bide Building Location: B-2156 P.O. Box 13398 Research Triangle Park, North Carolina 27709 Phone: 919-483-2353 Fax: 919-315-3198 e-mail: david.b.brown@gsk.com | Elizabeth J. Hallyburton, Esq. Assistant General Counsel GlaxoSmithKline 5 Moore Drive -- Bide Building Location: C-4160 P.O. Box 13398 Research Triangle Park, North Carolina 27709 Phone: 919-483-2212 Fax: 704-899-9234 e-mail: beth.j.hallyburton@gsk.com |

### Designation of State Medicaid Contact

2) The state of Iowa requests that the Pricing Information referred to in Section III 2 of this agreement and the CIA Addendum be sent to the Iowa State Medicaid program c/o:

__Amy Perry__
Name    Iowa Medicaid Enterprise/ Provider Audits & Rate Setting Unit
        PO Box 36450
__Des Moines, IA 50315__
Address

(515)-725-1258 / (515)-725-1353 / aperry@
Phone/fax/email