# EXHIBIT N

Department of Health and Human Services

# OFFICE OF
# INSPECTOR GENERAL

## APPROPRIATENESS OF MEDICARE
## PRESCRIPTION DRUG ALLOWANCES



JUNE GIBBS BROWN
Inspector General

MAY 1996
OEI-03-95-00420

Defendants' Exhibit

**1062**

01-12257 - PBS

## OFFICE OF INSPECTOR GENERAL

The mission of the Office of Inspector General (OIG), as mandated by Public Law 95-452, as amended, is to protect the integrity of the Department of Health and Human Services' (HHS) programs as well as the health and welfare of beneficiaries served by those programs. This statutory mission is carried out through a nationwide network of audits, investigations, and inspections conducted by three OIG operating components the Office of Audit Services, the Office of Investigations, and the Office of Evaluation and Inspections. The OIG also informs the Secretary of HHS of program and management problems and recommends courses to correct them

## OFFICE OF AUDIT SERVICES

The OIG's Office of Audit Services (OAS) provides all auditing services for HHS, either by conducting audits with its own audit resources or by overseeing audit work done by others. Audits examine the performance of HHS programs and/or its grantees and contractors in carrying out their respective responsibilities and are intended to provide independent assessments of HHS programs and operations in order to reduce waste, abuse, and mismanagement and to promote economy and efficiency throughout the Department

## OFFICE OF INVESTIGATIONS

The OIG's Office of Investigations (OI) conducts criminal, civil, and administrative investigations of allegations of wrongdoing in HHS programs or to HHS beneficiaries and of unjust enrichment by providers. The investigative efforts of OI lead to criminal convictions, administrative sanctions, or civil money penalties. The OI also oversees State Medicaid fraud control units which investigate and prosecute fraud and patient abuse in the Medicaid program

## OFFICE OF EVALUATION AND INSPECTIONS

The OIG's Office of Evaluation and Inspections (OEI) conducts short-term management and program evaluations (called inspections) that focus on issues of concern to the Department, the Congress, and the public. The findings and recommendations contained in these inspection reports generate rapid, accurate, and up-to-date information on the efficiency, vulnerability, and effectiveness of departmental programs. This report was prepared in the Philadelphia Regional Office under the direction of Robert A. Vito, Regional Inspector General

PHILADELPHIA REGIONAL STAFF                  HEADQUARTERS STAFF

Linda M. Ragone, *Project Leader*            Mary Beth Clarke, *Program Specialist*
Shane Lanzo, *Intern*
Vivek Rao, *Intern*

To obtain copies of this report, please call the Philadelphia Regional Office at (800) 531-9562.

Department of Health and Human Services

# OFFICE OF
# INSPECTOR GENERAL

## APPROPRIATENESS OF MEDICARE
## PRESCRIPTION DRUG ALLOWANCES



JUNE GIBBS BROWN
Inspector General

MAY 1996
OEI-03-95-00420

# EXECUTIVE SUMMARY

## PURPOSE

To assess the appropriateness of Medicare Part B allowances for prescription drugs through a comparison with Medicaid reimbursement mechanisms

## BACKGROUND

While many Americans believe the Medicare program does not cover prescription drugs as a benefit, in actuality the Medicare Part B program allowed at least $1.4 billion dollars for prescription drugs in 1994. Between 1992 and 1994, Medicare expenditures for drugs increased more than 100 percent

Medicare does not pay for over-the-counter or many prescription drugs that are self-administered under Part B. However, the program does pay for certain categories of drugs used by Medicare beneficiaries. Under certain circumstances, Medicare covers drugs that are used with durable medical equipment or infusion equipment. Medicare will cover certain drugs used in association with dialysis or organ transplantation Drugs used for chemotherapy and pain management in cancer treatments are also covered. The program also covers certain types of vaccines such as those for flu and hepatitis B

We collected data from three information sources for our comparison of Medicare and Medicaid drug payment methodologies. For information on Medicare prescription drug allowances in 1994, we compiled data from the Health Care Financing Administration's (HCFA) National Claims History File. We collected drug rebate data from HCFA's Medicaid Drug Rebate Initiative (MDRI) System. We also surveyed Medicaid agencies in all 50 States and the District of Columbia

## FINDINGS

*Under a drug rebate program similar to Medicaid's, Medicare would have saved $122 million for 17 prescription drugs in 1994*

State Medicaid agencies receive manufacturer drug rebates according to Federal law Since the enactment of the Omnibus Budget Reconciliation Act of 1990, manufacturers are required to have rebate agreements with the Medicaid program in order to be eligible for Medicaid reimbursement of their drug products. Medicare has no such rebate program. If Medicaid rebate amounts were applied to Medicare utilization data, the Medicare program would have saved $122 million or 14.6 percent of its allowances for 17 drugs. If one applied the 14.6 percent savings estimate to Medicare's $1.4 billion in drug allowances for 1994, Medicare could have saved $211 million in 1994 if a drug rebate program had been in effect.

*Medicare also could have saved $144 million in 1994 had the program employed a discounted AWP drug reimbursement formula like many Medicaid States.*

Medicare presently pays for most prescription drugs based on the Average Wholesale Price (AWP) of the drug product. State Medicaid agencies have the authority to develop their own pricing mechanisms for prescription drugs subject to upper payment limits established by HCFA. Although Medicaid State programs used a number of different formulas to determine drug reimbursement in 1994, 40 States used some form of discounted AWP to determine drug product payments to pharmacies

*The lack of a national drug code-based billing system would prevent HCFA from taking advantage of manufacturer drug rebates and other discounted reimbursement formulas*

Drugs are billed to the Medicare program based on codes developed by HCFA. These codes are developed as part of the HCFA Common Procedure Coding System (HCPCS) The codes define the type of drug and, in most cases, a dosage amount The codes do not indicate whether a brand or generic version of the drug was administered  Unlike Medicare, most drug suppliers bill Medicaid using a national drug code (NDC)  These NDCs identify the manufacturer or distributor of the drug, the product dosage form, and the package size  From the NDCs, the drug can be identified as a specific brand or generic version and the proper rebates and discounted reimbursement formulas can be applied

RECOMMENDATION

The findings of this report indicate that Medicare allowances for prescription drugs may not be appropriate  We have provided evidence that both a discounted AWP reimbursement formula and a rebate program for prescription drugs could result in significant savings to the Medicare program. The magnitude of these savings could reach over one-third of a billion dollars

We believe the information in this report provides further support for a recommendation made in an OIG report entitled *Medicare Payments for Nebulizer Drugs*. We recommended that HCFA reexamine its Medicare drug reimbursement methodologies, with a goal of reducing payments as appropriate. This recommendation was based on a review of several drugs used in conjunction with nebulizers  In this report, we have expanded the review to a larger number of drugs

The HCFA concurred with the recommendation and is examining available options in an effort to make appropriate drug payment reductions  The HCFA is also working on a crosswalk between the current coding system for prescription drugs and the National Drug Codes

# TABLE OF CONTENTS

PAGE

EXECUTIVE SUMMARY ................................................ i

INTRODUCTION ...................................................... 1

FINDINGS .......................................................... 7

    ● Drug rebates ................................................. 7

    ● Discounted AWP reimbursement ................................. 8

    ● NDC-based billing system ..................................... 9

RECOMMENDATION ................................................... 10

APPENDICES

A.  Description of 17 HCPCS Codes .................................. A-1

B   State Medicaid Reimbursement Formulas for Outpatient Drugs
    Billed with NDC Codes ......................................... B-1

*Medicaid Coverage and Payment for Prescription Drugs*

Prescription drug coverage under the Medicaid program is an optional benefit  Each State program can choose whether to provide recipients with prescription drug coverage  At the present time, all 50 States and the District of Columbia have chosen to provide a prescription drug benefit.

Each State Medicaid agency has the authority to develop its own reimbursement mechanism for prescription drugs subject to upper payment limits established by HCFA.  Unlike Medicare, most drug suppliers bill Medicaid for reimbursement using a national drug code (NDC)   These NDCs identify the manufacturer or distributor of the drug, the product dosage form, and the package size.  From the NDCs, the drug can be identified as a brand or generic version.  Each drug manufactured or distributed for sale in the United States has its own unique NDC code.

State Medicaid agencies also receive manufacturer drug rebates according to Federal law (Section 1927 of the Social Security Act)  With the enactment of the Omnibus Budget Reconciliation Act of 1990 (OBRA 90), pharmaceutical manufacturers are required to have rebate agreements with the Medicaid program for drugs dispensed to recipients   Manufacturers are required to have these rebate agreements in order to be eligible for Medicaid reimbursement of their drug products

In 1994, the quarterly rebate for brand name drugs was based on the greater of 15.4 percent of Average Manufacturer Price (AMP) or the difference between the AMP and the Best Price . The AMP is the average price paid by wholesalers for products distributed to the retail class or trade   Best Price is the lowest price paid by any purchaser exclusive of depot prices and single-award contract prices as defined by any Federal agency.  For generic drugs, the quarterly rebate amount for 1994 was 11 percent

The drug rebate program significantly reduces Medicaid expenditures for prescription drugs  The Medicaid program collected more than $2 4 billion in drug rebates between 1991 and 1993.  In 1993 alone, Medicaid collected approximately $1.41 billion in drug rebates based on payments of nearly $8 billion

## METHODOLOGY

We collected data from three information sources for our comparison of Medicare and Medicaid drug payment methodologies   For information on Medicare allowances for prescription drugs, we compiled statistics from HCFA's National Claims History (NCH) File   We collected drug rebate data from HCFA's Medicaid Drug Rebate Initiative (MDRI) System   We also surveyed Medicaid agencies in all 50 States and the District of Columbia

*Medicare Allowance Data*

To determine the total Medicare allowance for prescription drugs in 1994, we compiled a list of HCPCS codes that represent all of the drugs which Medicare reimburses. The drug code list primarily contained HCPCS codes beginning with a J (known as J codes) which represent mainly injectable drugs or drugs used in conjunction with durable medical equipment. Also included in our list of drugs were K codes which usually represent immunosuppressive drugs, Q codes which represent mainly drugs used for End Stage Renal Disease, several A codes that represent drugs used for diagnostic imaging, and immunization or vaccine codes that are represented by a six digit numeric code.

We then retrieved NCH allowance and utilization data using HCFA's Part B Extract and Summary System (BESS). We aggregated the allowance for each code to calculate Medicare's total prescription drug allowance for 1994.

*Rebate Calculation*

To calculate potential drug rebate savings to Medicare, we focused on drugs representing a large percentage of the total drug allowance. Therefore, we selected for our review drug codes for which Medicare allowed more than $10 million in 1994. We determined that 24 drug codes had allowances over $10 million.

We excluded 7 of the 24 codes from our review. We excluded two codes for drugs used in conjunction with nebulizers (J7620, J7670) since our office recently released a report on these drugs. We also removed two codes representing unclassified drugs (J3490, J7699) because these codes can represent drugs of various descriptions. We omitted two vaccine codes (90724, 90732) from our list since they are not eligible for rebates. Lastly, we removed one anti-hemophilic drug code (J7190) due to difficulty in determining dosage requirements. After making these exemptions, we analyzed the remaining 17 drug codes for review. The 17 HCPCS codes and drug descriptions are provided in Appendix A.

In order to calculate the potential rebate saving for each HCPCS code, we applied the appropriate Medicaid rebate amount to Medicare's utilization data. Since Medicaid rebate amounts are based on individual NDC codes, we needed to link Medicare's HCPCS codes to NDC codes. This involved matching the drug product and dosage defined by the HCPCS code with the corresponding NDC codes for all available brand and generic versions of the drug.

We used information from several sources to create a comprehensive list of NDC codes for each of the 17 HCPCS codes. We reviewed drug information in *Drug Topics Red Book, Pharmacy's Fundamental Reference, First DataBank's Blue Book, Essential Directory of Pharmaceuticals, Physicians Desk Reference,* and *Drug Facts and Comparisons.* We also received additional information from First DataBank's computer database of drugs.

For 10 of the 17 codes, the process of linking the HCPCS code with corresponding NDC codes was relatively easy to accomplish since the HCPCS codes represented single-source drugs where only one brand name drug was available. For these drugs, we collected NDC codes that matched the drug dosage requirement outlined in the HCPCS code description. For the remaining seven drug codes, we needed to determine all of the versions (both brand and generic) of the drugs produced by different manufacturers that met the HCPCS dosage requirement. The number of NDC codes for each of these drugs ranged from two codes to nine separate NDC codes.

We then extracted pricing and utilization summary data from HCFA's MDRI system. Included in this information were the rebate amounts paid per unit of drug for each quarter of 1994. We chose to apply the lowest quarterly rebate amount to Medicare utilization since this would yield the most conservative savings estimate. In the few instances where the dosage listed in the MDRI system did not match exactly with the HCPCS dosage, we applied a conversion factor to come up with the correct rebate amount for the HCPCS code dosage unit.

To quantify potential rebate savings for the 10 single-source drug codes, we applied the Medicaid rebate amount per unit to drugs units that Medicare reimbursed in 1994. To quantify the potential rebate savings for the seven multiple-source drugs, we first determined the percentage of utilization for each NDC code. Since Medicare's HCPCS codes do not indicate whether a brand or generic drug is supplied, we needed to develop an equitable way to apply rebates to the HCPCS codes representing multiple NDC codes. We decided to apply Medicaid's utilization patterns for brand and generic drugs to Medicare's usage data. We acknowledge that Medicare and Medicaid utilization patterns may differ due to the populations they serve. However, we believe our method was more appropriate than applying random or arbitrary usage percentages to various products representing a single HCPCS code.

We performed several calculations to determine rebate savings for each of the seven codes representing multiple products. We provide an example describing the steps taken to calculate the savings for a HCPCS code representing three NDC codes. These steps are presented in equation form in the table on page 5.

Step 1) Medicaid utilization data (units of drugs Medicaid reimbursed) for each NDC code was extracted from the MDRI System and then aggregated to calculate a Medicaid utilization total for the drug products represented by the HCPCS code.

Step 2) The utilization for each NDC code was divided by the total Medicaid utilization to determine the percentage of total utilization that each NDC code represented.

Step 3) The percentage of utilization for each NDC code was multiplied by the total Medicare utilization for the HCPCS code to calculate Medicare's utilization for each NDC code.

Step 4) These utilization figures were multiplied by the rebate amount established for each NDC code to determine the rebate savings for the NDC codes

Step 5) The rebate savings for all three individual NDC code were then added to obtain the total Medicare rebate savings for the HCPCS code

| | |
|---|---|
| Step 1. | $U_a + U_b + U_c = TU$ |
| Step 2 | $U_{a,b,c} \div TU = P_{a,b,c}$ |
| Step 3: | $P_{a,b,c} \times TM = MU_{a,b,c}$ |
| Step 4. | $MU_{a,b,c} \times \$R_{a,b,c} = RS_{a,b,c}$ |
| Step 5: | $RS_a + RS_b + RS_c =$ Total Medicare Rebate Savings for HCPCS Code |

U = Medicaid utilization for each NDC code
MU = Total Medicaid utilization for all three NDC codes
P = Percentage of total Medicaid utilization that each NDC code represents
TM = Total Medicare Utilization for HCPCS code
MU = Medicare Utilization for each NDC code
$R = Corresponding rebate amount for each NDC code
RS = Rebate savings for each NDC code
$_{a,b,c}$ = Each letter represents one of the three individual NDC codes

After calculating potential rebate savings for each of the seven multiple-source codes, we added the individual rebate savings from all 17 codes to determine the overall rebate savings to Medicare

*Medicaid Survey Data*

We distributed surveys requesting drug reimbursement and rebate information to all State Medicaid agencies and the District of Columbia   We solicited information on each States payment strategies for prescription drugs billed with both NDC codes and HCPCS codes   Since Arizona and Tennessee provide pharmaceutical coverage through managed care demonstration projects, information on drug reimbursement was not available from these States.

For comparison purposes between Medicaid and Medicare reimbursement, we only considered payment for the drug product or ingredients and not any additional dispensing or administration fees that Medicaid and Medicare pay to suppliers and physicians

The calculation of potential savings to Medicare if the program utilized Medicaid payment methodologies was determined by using the most frequently cited drug reimbursement formula   We created a distribution of each State's discounted AWP

percentage  We used the mode (most frequently cited percentage) of this distribution in our savings calculation  However, even if we had selected the median or mean statistic, the savings calculation would not have differed substantially since the mean of the distribution was less than one percentage point different from the mode and the median statistic was equal to the mode.  We applied the mode discounted AWP percentage to Medicare's total expenditure for prescription drugs in 1994 to calculate the potential savings to the program if payment mechanisms similar to Medicaid's were utilized.

# FINDINGS

*Under a drug rebate program similar to Medicaid's, Medicare would have saved $122 million for 17 prescription drugs in 1994.*

Medicare allowed $835 million in 1994 for the 17 drugs reviewed. These drugs represented nearly 60 percent of Medicare's total reimbursement for prescription drug products in 1994. If Medicaid rebate amounts were applied to Medicare utilization data, the Medicare program would have saved $122 million or 14.6 percent of its allowances for these drugs. The table below outlines the rebate savings that would have been achieved for each of these 17 drugs.

Potential Rebate Savings for 17 Drugs

| HCPCS Code | Drug Description | 1994 Allowance | Potential Rebate Savings |
|---|---|---|---|
| J9217 | Leuprolide Acetate | $381,212,580 | $63,038,028 |
| J0640 | Leucovorin Calcium | $74,353,182 | $4,473,991 |
| J2405 | Ondansetron Hydrochloride | $49,741,503 | $6,114,430 |
| J9202 | Goserelin Acetate Implant | $47,113,521 | $5,430,229 |
| J1440 | Filgrastim, per 300 mcg | $39,577,902 | $5,811,460 |
| J9045 | Carboplatin | $38,522,742 | $7,990,478 |
| J9265 | Paclitaxel | $34,606,593 | $4,397,292 |
| J1561 | Immune Globulin | $27,063,770 | $2,048,880 |
| J1441 | Filgrastim, per 480 mcg | $22,874,450 | $3,307,050 |
| J9182 | Etoposide, 100 mg | $21,756,729 | $7,723,477 |
| J9000 | Doxorubicin HCL, 10 mg | $16,494,331 | $773,294 |
| J9293 | Mitoxantrone Hydrochloride | $16,418,285 | $1,134,595 |
| J9181 | Etoposide, 10 mg | $15,936,362 | $4,610,449 |
| J9031 | BCG (Intravesical) | $14,528,214 | $1,652,236 |
| K0121 | Cyclosporine | $12,995,037 | $1,716,715 |
| J0205 | Aglucerase | $11,140,854 | $1,398,010 |
| J9010 | Doxorubicin HCL, 50 mg | $10,937,598 | $640,057 |
| TOTAL | | $835,273,653 | $122,280,671 |

Although our savings calculation was based on 17 drugs, the 14.6 percent savings estimate could be reasonably applied to Medicare's total prescription drug benefit   A recent extramural research report released by HCFA's Office of Research and Demonstrations supports this conclusion   The report stated that rebate payments had resulted in a 17 percent reduction in 1993 drug expenditures in the Medicaid program [1]   The report also noted that after dispensing fee payments were subtracted from Medicaid's total drug payments for 1992 and 1993, rebate amounts were found to be approximately 14 to 15 percent of drug product payment amounts   Based on the support of these findings, if one applied the 14 6 percent savings estimate to Medicare's $14 billion in drug allowances for 1994, Medicare could have saved $211 million in 1994 if a drug rebate program had been in effect

*Medicare could have saved an additional $144 million in 1994 had the program employed a discounted AWP drug reimbursement formula like many Medicaid States.*

If Medicare implemented a discounted AWP reimbursement formula similar to many Medicaid States, the Medicare program could save approximately $144 million dollars in drug allowances per year.[2]   Although Medicaid State programs used a number of different formulas to determine drug reimbursement in 1994, 40 States used some form of discounted AWP to determine drug product payments to pharmacies. Seventy-eight percent of these States used a formula discounting AWP by 9 to 12 percent in 1994

The States which didn't report using a discounted AWP in their reimbursement formulas employed wholesale, actual, or estimated acquisition costs of the drug in their payment equations.  A few States reimburse at the AWP level   Other States contract with companies to supply wholesale acquisition cost data   Still other States survey area wholesalers for cost data   A complete list of State drug reimbursement formulas for drug suppliers is presented in Appendix B

---

[1] U S Department of Health and Human Services, Health Care Financing Administration, Office of Research and Demonstrations, <u>Impact of the Medicaid Drug Rebate Program</u>, Extramural Research Report funded by the Health Care Financing Administration and prepared by the Institute for Health Services Research at the University of Minnesota (Baltimore, MD.  U S Department of Health and Human Services, August 1995)

[2] Based on applying a formula of AWP minus 10 percent to Medicare's 1994 total drug allowance   Ten percent is the amount most often used by States in discounting AWP for reimbursement purposes

*The lack of a national drug code-based billing system would prevent HCFA from taking advantage of manufacturer drug rebates and other discounted reimbursement formulas.*

Because the Medicare program pays for drugs billed with HCPCS codes, it reimburses based on a drug category and not on the specific drug product supplied   Since NDC codes are not used to bill Medicare for drugs, the program does not know which brand or generic form of the drug has been supplied   Information on the specific drug supplied would be necessary for the implementation of any rebate or discounting program by Medicare.  The HCFA has recognized this and is currently developing a method for conversion to an NDC system

The importance of an NDC system in implementing rebates or discounted reimbursement formulas is demonstrated by the difficulty Medicaid agencies face in implementing such methods in the absence of NDCs   This is commonly the case for prescription drugs billed to the Medicaid program by physicians   Although most drugs billed to the Medicaid program are dispensed by pharmacies, physicians can bill for drugs that they administer such as injectable drugs   Most States do not require NDCs to be used as the billing code for drugs administered by physicians   Therefore, physicians bill Medicaid for drugs administered by using either HCPCS (most common), Physicians' Common Procedure Terminology (CPT), or State-specific codes   Since many of these codes are not easily linked to an NDC code, most of the drugs administered by physicians and reimbursed by Medicaid never receive a manufacturer's rebate.  More than three-quarters of the State Medicaid programs report that they do not routinely seek manufacturers' rebates for drugs administered by physicians

Not only do some States handle rebates differently for physician-administered drugs, they also apply different reimbursement formulas to these drugs billed without NDC codes   Only nine States use the same discounted formula for reimbursing both pharmacy-dispensed and physician-administered drugs   About one-third of States pay physicians based on AWP or AWP plus a percentage   Some States base their payments on Medicare rates for HCPCS codes   Still others pay the physician's invoice price for the drug or a percentage of the charge billed by the physician.

Thus, the NDC system provides the foundation for payment strategies such as rebates or discounted formulas.  Without it, such strategies are extremely difficult to implement

# RECOMMENDATION

The findings of this report indicate that Medicare allowances for prescription drugs may not be appropriate. We have provided evidence that both a discounted AWP reimbursement formula and a rebate program for prescription drugs could result in significant savings to the Medicare program. The magnitude of these savings could reach over one-third of a billion dollars.

We believe the information in this report provides further support for a recommendation made in an OIG report entitled *Medicare Payments for Nebulizer Drugs*. We recommended that HCFA reexamine its Medicare drug reimbursement methodologies, with a goal of reducing payments as appropriate. This recommendation was based on a review of several drugs used in conjunction with nebulizers. In this report, we have expanded the review to a larger number of drugs.

The HCFA concurred with the recommendation and is examining available options in an effort to make appropriate drug payment reductions. The HCFA is also working on a crosswalk between the current coding system for prescription drugs and the National Drug Codes.

We hope the additional information we have provided in this report is helpful to HCFA as it explores new strategies for prescription drug payment.

For our readers' convenience, we repeat here the options contained in our prior report for changing Medicare's payment for prescription drugs. We urge readers to review our prior report for the full text of HCFA's comments in response to our earlier recommendation and this listing of options for change.

Discounted Wholesale Price

Many State agencies use a discounted AWP to establish drug prices. Medicare should have a similar option. Medicare could base its drug payment on the lower of a discounted AWP or the median of the AWP for all generic sources, whichever results in the lower cost to Medicare and its beneficiaries. To implement this recommendation, HCFA would have to revise Medicare's claims coding system which does not identify the manufacturer or indicate if the drug is a brand name or a generic equivalent, information that is needed to discount the AWP and obtain a rebate for a specific drug. Medicaid uses the NDC in processing drug claims. The NDC identifies the manufacturer and reflects whether the drug is a brand name or a generic equivalent.

Manufacturers' Rebates

Medicare could develop a legislative proposal to establish a mandated manufacturers' rebate program similar to Medicaid's rebate program. We recognize that HCFA does

not have the authority to simply establish a mandated manufacturers' rebate program similar to the program used in Medicaid. Legislation was required to establish the Medicaid rebate program, and would also be required to establish a Medicare rebate program. We have not thoroughly assessed how a Medicare rebate program might operate, what administrative complexities it might pose, or how a Medicare rebate program might differ from a Medicaid rebate program. We believe, however, the legislative effort would be worthwhile. The same manufacturers that provide rebates to Medicaid make the drugs that are used by Medicare beneficiaries and paid for by the Medicare program.

Competitive Bidding

Medicare could develop a legislative proposal to allow it to take advantage of its market position. While competitive bidding is not appropriate for every aspect of the Medicare program or in every geographic location, we believe that it can be effective in many instances, including the procurement of drugs. Medicare could ask pharmacies to compete for business to provide Medicare beneficiaries with prescription drugs. All types of pharmacies could compete for Medicare business, including independents, chains, and mail-order pharmacies.

Inherent Reasonableness

Since Medicare's guidelines for calculating reasonable charges for drugs result in excessive allowances, the Secretary can use her "inherent reasonableness" authority to set special reasonable charge limits. If this option is selected, however, it will not be effective unless the Secretary's authority to reduce inherently unreasonable payment levels is streamlined. The current inherent reasonableness process is resource intensive and time consuming, often taking two to four years to implement. Medicare faces substantial losses in potential savings--certainly in the millions of dollars--if reduced drug prices cannot be placed into effect quickly.

Acquisition Cost

Medicare could base the payment of drugs on the EAC. The DMERCs and carriers currently have this option, however, HCFA has been unsuccessful in gathering the necessary data to fully implement it. Once the problem of gathering the necessary data is overcome, the use of the EAC would result in lower allowed amounts. A variation of this option is to use actual rather than estimated acquisition cost.

# APPENDIX B

## State Medicaid Reimbursement Formulas for
## Outpatient Drugs Billed With NDC Codes

| State | 1994 Drug Product Reimbursement | State Definition of Acquisition Formulas |
|---|---|---|
| Alabama | WAC + 9.2% | WAC provided by local wholesalers |
| Alaska | AWP - 5% | EAC = AWP - 5% |
| Arkansas | Lesser of<br>AWP - 10.5%<br>Usual and Customary Price<br>Generic Upper Limit | |
| California | Lesser of:<br>AWP - 5%<br>Direct Price<br>State MAC<br>FUL | |
| Colorado | AWP - 10% (retail)<br>EAC + 1.89 (institutional) | EAC/WAC = Direct Price + 18% |
| Connecticut | AWP - 8% | |
| Delaware | AAC | |
| D C | AWP - 10% | |
| Florida | Lesser of<br>WAC + 7%<br>Generic Upper Limit of Payment<br>Usual and Customary | EAC = WAC + 7%<br>Schedule II Drugs   EAC = AWP |
| Georgia | Lesser of<br>AWP - 10%<br>Usual and Customary | |
| Hawaii | Lesser of<br>EAC<br>FUL | EAC = AWP - 10.5% |
| Idaho | EAC<br>FUL<br>Usual and Customary | EAC = direct acquisition cost for certain manufacturers, AWP for others |

Acronyms:
AAC - Actual Acquisition Cost          AWP - Average Wholesale Price
EAC - Estimated Acquisition Cost          MAC - Maximum Allowable Cost
WAC - Wholesale Acquisition Cost
FUL - Federal upper Limits of Payment for Generic Drugs

| State | 1994 Drug Product Reimbursement | State Definition of Acquisition Formulas |
|---|---|---|
| Illinois | Lesser of<br>Pharmacy charges<br>AWP - 10%<br>FUL<br>State Upper Limit | State Upper Limit = lowest AWP statewide for generic drugs |
| Indiana | Lesser of<br>AWP - 10%<br>MAC (if applicable)<br>Submitted Charge (Usual and Customary) | EAC = AWP - 10% |
| Iowa | AWP - 10% or MAC | |
| Kansas | AWP - 10% (generally) or<br>Direct Price for one manufacturer | |
| Kentucky | Lesser of<br>EAC<br>FUL<br>Usual and Customary Charge | EAC = AWP - 10% |
| Louisiana | Lesser of<br>AWP - 10.5%<br>State MAC or FUL<br>Usual and Customary Charge | |
| Maine | Lesser of<br>Usual and Customary<br>Lowest payment that provider accepts from other payment sources<br>MAC/State MAC<br>EAC | EAC = AWP - 5% but AWP cannot be more than 18% above Direct Price |
| Maryland | Lesser of<br>Usual and Customary Charge<br>EAC<br>State MAC<br>FUL | EAC = WAC +10, Direct Price + 10%, Distributors + 10%, or AWP - 10% |
| Massachusetts | WAC + 10 % | WAC provided by outside company |
| Michigan | AAC<br>AWP for Schedule II drugs<br>MAC<br>Direct Price for some manufacturers | AAC = AWP - 10% |
| Minnesota | AWP - 7.6 % | |

| State | 1994 Drug Product Reimbursement | State Definition of Acquisition Formulas |
|---|---|---|
| Mississippi | Lesser of<br>Usual and Customary Charge<br>AWP - 10 %<br>FUL | |
| Missouri | AWP - 10.43 % | |
| Montana | Lesser of<br>Usual and Customary Charge<br>AWP - 10%<br>Direct Price for some manufacturers<br>FUL | EAC = Direct Price or AWP - 10 % |
| Nebraska | Lesser of<br>EAC<br>Usual and Customary Charge | EAC = AWP - 8.7%, AWP for Schedule II products, or Direct Price for certain manufacturers |
| Nevada | AWP - 10 % | EAC = AWP - 10% |
| New Hampshire | AWP - 10% | |
| New Jersey | Lesser of<br>Usual and Customary<br>AWP - 0 to 6% | EAC = AWP minus regression depending on the pharmacy's total prescription volume (0 to 6 % range) |
| New Mexico | AWP - 10.5 % | |
| New York | Lesser of<br>Usual and Customary Charge<br>FUL<br>EAC | EAC = AWP |
| North Carolina | Lesser of<br>Usual and Customary<br>AWP - 10 % | |
| North Dakota | AWP - 10 % | EAC = AWP - 10% |
| Ohio | Direct Price for some manufacturers<br>AWP for Schedule II drugs<br>AWP - 7% for most drugs<br>Tailored AAC for a few drugs<br>FUL/State MAC for most generics<br>EAC for other generics | |
| Oklahoma | AWP - 10.5 % | |
| Oregon | AWP - 11 % | |
| Pennsylvania* | EAC, AWP, State MAC | |
| Rhode Island | AWP<br>Direct Price<br>FUL<br>Usual and Customary | |

| State | 1994 Drug Product Reimbursement | State Definition of Acquisition Formulas |
|-------|--------------------------------|------------------------------------------|
| South Carolina | Lesser of Usual and Customary EAC FUL or State MAC - 9.5 % | EAC = AWP - 9.5% |
| South Dakota | Lesser of Usual and Customary Price AWP - 10.5% FUL | EAC = AWP - 10.5% for pharmacy reimbursement |
| Texas | Estimated Drug Cost + 930 | Estimated Drug Cost = lesser of AWP - 10.49% or WAC + 12% |
| Utah | AWP - 12 % | EAC = AWP - 12% |
| Vermont | AWP - 10 % | |
| Virginia | AWP - 9 % | EAC = AWP - 9% |
| Washington | EAC MAC for about 200 drugs AWP for Schedule II Drugs | EAC = AWP - 11% |
| West Virginia | AWP | |
| Wisconsin | Lesser of, Usual and Customary Charge EAC | EAC = AWP - 10%, Direct Price for certain manufacturers, State MAC (FFPUL and generics), and AWP for Schedule II drugs |
| Wyoming | AWP - 4 % | EAC = AWP - 4% |

* Pennsylvania chose not to provide us with drug reimbursement formulas. The information in this table for Pennsylvania was taken from *Pharmaceutical Benefits Under State Medical Assistance Programs* published by the National Pharmaceutical Council