# EXHIBIT A

1

1 - 157

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS


CONSUME, ET AL,                )
                    Plaintiffs,)
                               )
-V-                            )    CIVIL DOCKET NO.
                               )    01-12257-PBS
ABBOTT LABORATORIES, ET AL,    )
                               )
                    Defendants.)


MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE


January 31, 2008

Boston, Massachusetts




APPEARANCES ON PAGE 2

Proceedings recorded by electronic sound recording,
transcript produced by Apex Reporting.

2

APPEARANCES:

For the United States:

     RENEE BROOKER, ESQ.
     GEJAA GOBENA, ESQ.
     JUSTIN DRAYCOTT, ESQ.
     U.S. Department of Justice
     604 D Street, NW
     Patrick Henry Building, Room 9028
     Washington, DC  20004

For the Defendants:

     JASON WINCHESTER, ESQ.
     JAMES DALY, ESQ.
     Jones Day
     77 West Wacker Drive
     Chicago, IL  60601

For the Intervenor:

     JAMES BREEN, ESQ.
     The Breen Law Firm, PA
     3562  Old Milton Parkway
     Alpharetta, GA  30005

3

1                    P R O C E E D I N G S

2                                          (11:01 a.m.)

3           THE CLERK:  United States District Court for the

4    District of Massachusetts is now session, the Honorable

5    Marianne B. Bowler presiding.  Today is January 31st, 2008.

6    The case of Citizens for Consume, et al, versus Abbott

7    Laboratories, Inc., et al., Civil Action No. 01-12257, will

8    now be heard.

9           Would Counsel please identify themselves for the

10   record.

11          MS. BROOKER:  Renee Brooker, on behalf of the

12   United States.  Good morning, your Honor.

13          THE COURT:  Thank your.

14          MR. BREEN:  James Breen, on behalf of Ven-A-Care

15   of the Florida keys, the Relator.  Good morning, your Honor.

16          THE COURT:  Thank you.

17          MR. DALY:  Good morning, your Honor, Jim Daly on

18   behalf of Abbott Laboratories.

19          MR. WINCHESTER:  Good morning, Judge, Jason

20   Winchester for Abbott Laboratories.

21          THE COURT:  Thank you very much.

22          All right.  Well, I think we've pared this down to

23   some degree.  And the way I see it, is the motions that I

24   intend to deal with this morning, 4799, 4984, 4692, 4774,

25   4781, 4790, 4892, 4901, in the first grouping.

4

1          Now, there are motions mentioned in the status

2   report, which is my understanding to the Clerk, are no

3   longer being pressed: 4711 and 4878.

4          MS. BROOKER: Your Honor, with respect to those

5   two, we had included them -- Mr. Daly and I worked to try

6   and create this list of what was really still outstanding,

7   and there are two motions, the two docket numbers you just

8   identified.

9          The one, which is Docket No. 4878, seems clearly

10  to be before Judge Saris. It's the United States' motion to

11  leave for file its first amended complaint.

12          THE COURT: Right.

13          MS. BROOKER: So, we didn't want to be

14  presumptuous. We put it on there in case.

15          The other one is 4711. That's Abbott's motion for

16  a preservation order and, at least the United States

17  believes that it may be before Judge Saris for three

18  reasons.

19          When we filed it, Judge Saris asked for a courtesy

20  copy. During the motion to dismiss hearing, she referred to

21  it.

22          It had been clear that she had read it and made

23  some sort of general comments about it. In fact, we thought

24  that maybe she would have ruled upon it shortly after that.

25  But we haven't heard from her on that.

5

1              And, also, Judge Saris usually decides the CMOs
2    and the preservations orders.
3              So for those reasons, again, we didn't want to be
4    presumptuous either way.  We just believe it's before Judge
5    Saris.  We thought you would want to make that
6    determination.
7              THE COURT:  Are you in agreement?
8              MR. BREEN:  Judge, with respect to the latter one,
9    the one I'm calling the spoliation motion, I'm not sure
10   where it is.
11             This, what counsel is referring to all happened
12   before Judge Saris referred everything to you.
13             We're happy to make the presentation to you if you
14   felt it was more of a Judge Saris issue, fine.  But we've
15   heard nothing on that and she did, I think, refer everything
16   to you.
17             THE COURT:  Okay.  Let's see where we are at the
18   end and then, if we have time.  Maybe at the break, we can
19   even contact her clerk.
20             MS. BROOKER:  Your Honor, before we begin, I
21   wonder if I could address the Court on one brief matter,
22   first.
23             THE COURT:  Sure.
24             MS. BROOKER:  Thank you.
25             As you know, on January 10th, Judge Saris referred

6

1  to the Court the parties' joint request for a status

2  conference.

3            And the reason that we had put that before Judge

4  Saris is because there are a number of Judge Saris rulings

5  that we needed some guidance on.

6            However, Judge Saris very clearly has referred

7  that to you.

8            Now, we realize there are a lot of issues on

9  there, and so we're not going to try to address all of them

10 today.  And, actually, some of them, I believe, we have

11 worked out in the interim.

12           However, there is one significant pending issue

13 that we would like to first address this morning, if your

14 Honor would not mind, and I could proceed.

15           THE COURT:  By agreement?

16           MS. BROOKER:  Yes, I think so, your Honor.

17           MR. WINCHESTER:  Yes, your Honor.

18           THE COURT:  Mr. Daly?

19           MR. DALY:  Yes.

20           MS. BROOKER:  Okay.  Then I will proceed, your

21 Honor.

22           May I pass up a binder?  I have some materials

23 that I think would be helpful.

24           THE COURT:  Sure, certainly.

25           MS. BROOKER:  I've put together for today's

1    hearing, just some materials, I'll refer to them by tab
2    numbers.  They mostly contain correspondence among the
3    parties that have occurred after the filings of all these
4    motions, and a few orders is why though it would be easier
5    to go through.
6              So, to start off with the issue that the parties
7    need resolving, your Honor, it's an important issue; we need
8    it resolved because it has, in effect, in some significant
9    way, stopped significant areas of discovery from moving
10   forward.
11             The only way to get this issue otherwise before
12   you is in another series of motions.  And I really think we
13   could possibly get a ruling from you, if not today, after
14   hearing this argument, that would effectively stop that.
15             THE COURT:  This is a ruling absent of motion?
16             MS. BROOKER:  That's right.  That's right, this is
17   a ruling absent of motion, but it is based on -- if you
18   would turn to tab 3 of the binder--
19             THE COURT:  Mr. Daly, do you have a copy of the
20   binder?
21             MR. DALY:  I do not, your Honor.
22             MR. WINCHESTER:  Yes, I have, Judge, yes.
23             MS. BROOKER:  And the dispute surrounds what is
24   the first electronic -- there are three electronic orders
25   from Judge Saris, each one a sentence in length.  But it has

8

1  created quite a bit of controversy that we'd like to lay out

2  for you.

3           And, specifically, on December 18th, the United

4  States, leading up to this order, had filed a motion to

5  enlarge the discovery period.

6           Abbott Laboratories opposed that.  However, in

7  their opposition they, too, requested additional time.

8           Ultimately, Judge Saris granted an additional

9  three months; not as much time as the United States had

10 sought.

11          This is the electronic order.  And, specifically,

12 what Judge Saris said is, "The Court will give the parties

13 until March 31, 2008, to complete all-fact discovery.

14 However, no new discovery requests shall be made after the

15 date of this order with respect to parties or non-parties."

16          And I'm going to focus on that and come back to

17 that in one second.

18          But her two immediate follow-on orders also are

19 part of this whole package.

20          On December 20th, Judge Saris then issued two

21 orders pretty much right in a row.  Those orders were

22 denying Abbott's motion to strike the United States' two

23 additional supplemental disclosures, which primarily

24 contained additional names of state Medicaid witnesses and

25 some other Medicare carriers.  Judge Saris denied both of

9

1  those.

2  In the second order, which is also behind tab 3,

3  on the third page, Judge Saris added, "However, Abbott may

4  depose these witnesses.  No further supplementation will be

5  allowed."

6  So, again, we're focusing on those three orders.

7  There are three areas of, I would say, of controversy and

8  they relate to the United States' service of discovery on or

9  before December 18th, the date of Judge Saris' order.

10  The second would be the United States' service,

11  however, informal service -- and I can explain what I mean

12  by that because I think that's what is at issue here --

13  United States' informal service on certain third parties,

14  either before or on December 18th, the date Judge Saris

15  issued her order.

16  And the third would be Abbott Laboratories'

17  seeking of state Medicaid witnesses, some of which are not

18  an issue because they were in the United States'

19  supplementations, and they were -- and that would be the

20  reason but, in addition, Abbott has also attempted subpoena

21  documents and state Medicaid employees for the first time

22  after the date of the December 18th Order.

23  So, if I could just briefly go through those

24  three, I think the first issue that I would point you to --

25  let me just go to my binder here because I think it's

10

1  helpful to the Court.

2         I have created a time line behind tab No. 2 of the

3  orders that came out and what -- how the parties reacted to

4  that order.

5         On December 18th, when the order was issued by

6  Judge Saris, the United States in believing it was complying

7  diligently with that order, served its final sets of

8  discovery responses on Abbott Laboratories -- and, again,

9  I'm just focusing on our service of discovery on Abbott --

10  we served additional requests for production of documents,

11  we served additional interrogatories, and we served

12  additional requests for admission.

13         All of them, there is no dispute, are within the

14  numerical limitations set out by the CMO.

15         And, again, we believe that fully complies with

16  the order which said "No new discovery requests shall be

17  made after December 18th."

18         In addition, on that same date, Abbott, itself,

19  sent a letter, which I also have here in the binder behind

20  tab No. 4, Jones Day sent a letter to the United States

21  reserving its rights to depose 32 additional state Medicaid

22  witnesses in the event that its motion was not ruled upon,

23  which subsequently was on December 20th, as well, Ven-A-Care

24  served some additional written discovery requests.

25         In addition, the United States had -- and we're

*APEX Reporting*
(617) 269-2900

1  going to get to this as a motion we're going to argue later

2  -- the United States had a series of pending deposition

3  requests prior to December 18th that it had to follow up on.

4        Now, Abbott has taken the position that with

5  respect to all discovery served by the United States on

6  Abbott after 3:01 p.m., the date of Judge Saris' -- the

7  exact time of Judge Saris' Order, is out of time.

8        And the United States doesn't understand that

9  position at all, because we are reading the exact language.

10  We're not interpreting Judge Saris' order.

11        Her exact order was, "December 18th, no new

12  discovery requests shall be served."

13        The parties were all surprised by the December

14  18th deadline.  It was set the very same day that the Judge

15  issued the order, so there was no time.

16        And I will also add that the reason why the United

17  States hadn't yet served some of that discovery, because we

18  had a pending motion for enlargement of time, we had these

19  outstanding motions to compel documents and depositions of

20  Abbott, and we were waiting for those depositions and

21  documents to serve our additional written discovery.

22        But, in the meantime, Judge Saris set down a date,

23  we complied, we immediately reacted as did Abbott

24  Laboratories, and as did Ven-A-Care.

25        So that is issue number one, your Honor.  We

12

1  really need direction from the Court because Abbott's time

2  to respond to the written discovery has occurred.  Abbott

3  has responded by not responding and objecting to the

4  timeliness.

5  So, now, we have another two months left to

6  discovery; no responses to the United States' discovery

7  served on December 18th, and the time is ticking.

8  So, rather than file a series of motions on that,

9  we would like and order.

10  And, obviously, we're requesting an order from the

11  Court that anything served -- excuse me -- anything

12  requested on or before December 18th is legitimate discovery

13  that every party has to respond to.

14  The second issue, your Honor, is with respect to

15  third parties and a few moments before the hearing began, I

16  heard that counsel for some of the third parties may have

17  appeared here today and you may want to address them at some

18  point.

19  But the third party--

20  THE COURT:  Do we have counsel for the third

21  parties here that want to heard?

22  MR. CRANE:  Yes, your Honor, Thomas Crane from

23  Mintz Levin, representing Quorum.

24  MR. GAGION:  Your Honor, Leo Gagion from Dewey &

25  LeBoeuf, I represent Omnicare.

13

1        MS. BROOKER:  Your Honor, behind tab No. 6, and

2   I'm not going to go over it in great detail, although you

3   may have questions about it, I have tried to set forth just

4   a factual time line of what occurred with respect to the

5   third party discovery.

6        But, in summary form, what I can say is that as

7   your Honor knows, back in March of 2007, the United States

8   served subpoenas for third party discovery, specifically

9   document discovery, early on in the litigation.

10       That was opposed by Abbott.  It was litigated here

11   before your Honor.  It was litigated before Judge Saris.

12       It took a long time to get that issue resolved and

13   it wasn't until early-to-mid September where Judge Saris

14   ordered, basically, the third parties to produce and that we

15   started to get in the rolling production.

16       It took us that amount of time to receive the

17   production; to review the production; to determine witnesses

18   and which ones we wanted to depose.

19       So, in early December, our first opportunity, we

20   began to notice subpoenas for depositions of third parties.

21       Again, these are not document subpoenas; these are

22   primarily deposition subpoenas because presumably, the third

23   parties already produced the documents.

24       I would point out to the Court that, obviously,

25   the third parties have been on notice for a very long time

14

1    of the Government's intent to seek discovery, and the fact

2    that some of these -- what ended up occurring, your Honor,

3    is there are actually some of these subpoenas for

4    depositions that were served before December 18th, but they

5    -- obviously, you know, it's a lot dealing with the third

6    parties.

7        We first send them an email under our CMO, or a

8    letter asking if they will accept informal service, we have

9    to wait till they get back to us, we try and work it out.

10       A couple parties have, in the past, requested

11   formal service, but the vast majority of them said, "We will

12   accept informal service."  We expect that that might be the

13   case again.

14       In the process of us doing this, Judge Saris,

15   again, her December 18th order took the parties a little bit

16   by surprise.  It required reacting within a few hours.

17       So, for any deposition subpoenas, we had not yet

18   notified or served the third parties of -- on that date.

19       Within a couple of hours after Judge Saris' 3:01

20   p.m. order, one of the attorneys in our office, Rebecca

21   Ford, who is responsible for all the third party discovery,

22   sent emails or letters in the same way that she had

23   communicated with these third parties about documents,

24   asking them -- again, her lead-in always was, "Will you

25   accept informal service?  If yes--" she goes and serves the

15

1    subpoena.  If not, she has to get a formal process server.

2                   There is a lot of detail about which ones

3    accepted; which ones didn't.

4                   But, the bottom line is that all of these parties

5    were notified about their documents more than a year ago.

6    All of them were notified that we wanted to take their

7    depositions prior to, or on December 18th, the date Judge

8    Saris said was the deadline.

9                   And a few third parties are complying, but I

10   believe the majority of them are objecting based on

11   timeliness.

12                  There is correspondence that Abbott has provided

13   them.  I will let Abbott Counsel speak for itself, but we

14   have been hearing from the third parties that just like with

15   the first round of document subpoenas, that Abbott has been

16   informing them to object on timeliness grounds.

17                  So, we bring this issue before your Honor for

18   resolution.

19                  We believe whether or not it was technically,

20   formally process served, should not matter because Judge --

21   again, I'm going back to the express language of Judge

22   Saris' order, "No new discovery requests shall be made after

23   December 18th."

24                  She did not say discovery had to be perfected by

25   that date.

16

1           And I will just say that the last issue has to do
2    with state Medicaid.
3           The United States has not imposed, as all, any
4    roadblocks to Abbott taking whatever state Medicaid
5    depositions it wants, or whatever documents.
6           In fact, Abbott has done little to -- pretty much
7    no -- I think I can actually say they've done no state
8    Medicaid depositions up until -- or taken any of that
9    discovery -- excuse me -- up until Judge Saris denied their
10   request to strike our supplementation.
11          And that was a strategy call on their part.  The
12   United States doesn't question that.
13          But, at this point, Abbott is now after December
14   18th subpoenaing documents and depositions of third parties.
15          On December 19th and later, even though those, in
16   some instances -- certainly not all, but in some instances
17   -- those states never appeared on the United States'
18   disclosures, initial disclosures or supplemental
19   disclosures.  Those would appear to be out of time.
20          However, having said that, it looks to me as if
21   this is an issue for both sides.
22          There is absolutely -- we have two more months
23   left to discovery.  There is no prejudice to United States
24   taking the discovery.
25          It needs to take, we believe, Abbott should

17

1    absolutely take the discovery it intends to take.  However,

2    it can't play both sides of the fence.  And that is exactly

3    what it's doing here, and it's even going beyond the

4    December 18th cutoff in serving new discovery.

5              I know that I've heard from some of the states who

6    have called me about it.  I have told them we are not trying

7    to obstruct Abbott's discovery.

8              We are going -- I told them all we are going

9    before Judge Bowler to raise this issue, and I know that

10   some of them, in the absence of a ruling from the Court,

11   indicated that they may be objecting on timeliness grounds

12   where there was not a United States supplemental disclosure.

13   And, obviously, I have no control over the states.

14             But, your Honor, I would just say that is the full

15   breadth of the issue that's before the Court.

16             THE COURT:  All right, I'll hear you.

17             MR. WINCHESTER:  Thank you, Judge.

18             I'll try to take these in the order that

19   Ms. Brooker had covered them and I think, generally, the

20   issues are there.

21             When it's described as being a surprise, however,

22   the parties were surprised by Judge Saris' order, I tell

23   you, we certainly weren't.

24             There was briefing at the end of last year having

25   to do with whether there should be an extension of the

1 | original fact discovery cutoff that was December 31st.

2 | Both sides agreed that there should be an

3 | extension, but we took two very different positions as to

4 | what that extension should be.

5 | The Government argued for a six-month,

6 | unrestricted extension saying six months of extra fact

7 | discovery, we can continue serving discovery.

8 | We argued we need more time given what is already

9 | out there. We have a lot of things we can still do. Give

10 | us three months, but no new discovery because there's plenty

11 | that's already out there. We need time; three months should

12 | give us the time to finish up what's already there, but cut

13 | it off; no new discovery.

14 | On the 18th of December, Judge Saris chose door

15 | No. 2. She said, "You have three more months to finish up

16 | discovery, but nothing new."

17 | She entered that order at 3 o'clock in the

18 | afternoon, as counsel said, and the order is very clear:

19 | "No new discovery request shall be made after the date of

20 | this order with respect to parties or non-parties."

21 | Now, effectively, the Department of Justice viewed

22 | that and Ven-A-Care viewed that as sort of like waving a red

23 | blanket in front of a bull.

24 | They proceeded through the course -- through the

25 | evening -- nothing was served before the close of business

19

1  -- the proceeded through the evening to propound eight

2  subpoenas on third parties for deposition -- a third request

3  for interrogatories to Abbott -- this coming in at 8:30 at

4  night -- with 29 additional interrogatories.

5             Nine o'clock at night; fifth set of requests for

6  production with 20 more document requests.

7             10:21 at night, we get Ven-A-Care's first set of

8  interrogatories.

9             THE COURT:  All right, I'm going to interrupt you

10  right there and ask what made you think at this point, after

11  3:01, you could file anything new?

12            MS. BROOKER:  Your Honor, because Abbott reacted

13  in the same way that we did.  Abbott sent for 20 --

14            THE COURT:  I'm just asking you --

15            MS. BROOKER:  Yes, certainly.

16            Because, your Honor, the express -- well, first

17  let me say all of the discovery that I'm referring to --

18  let's take the written discovery and the third party

19  discovery.

20            We don't agree with the characterization that the

21  third party discovery was new.  That was a follow-up to get

22  depositions for the documents that had been produced that

23  took a long time for us to obtain and to review.

24            There was no surprise to anyone that we were going

25  to depose third parties once we got their documents.

20

1           We certainly did not -- and when I said,

2  "surprised," we weren't surprised that Judge Saris gave us a

3  deadline, but the deadline came on the same day as the

4  order.  That's all that I meant by the surprise.

5           And, also, I am interpreting -- I am reading the

6  expressed terms of Judge Saris' order, which is "No new

7  discovery requests shall be made."

8           And these are, "requests shall be made after the

9  date of this order."

10          So, I -- there's really no need to interpret the

11 Judge's order.  Presumably, Judge Saris gave all the parties

12 one last opportunity because in the briefs, we had indicated

13 the reason why we had not served additional written

14 discovery was because we were waiting still for many of

15 Abbott's documents.

16          We are--

17          THE COURT:  All right.

18          MS. BROOKER:  Yes.

19          MR. BREEN:  Your Honor, may I respond to the

20 question also, for Ven-A-Care?

21          My interpretation of it, and I believe is

22 consistent, obviously, with the United States, and that is

23 the discovery cut-off was not the 18th in the original

24 order.

25          So the Judge didn't say no discovery -- no new

*APEX Reporting*
(617) 269-2900

21

1     discovery after the date of the discovery cut-off.  She
2     used, explicitly, the date of her order.
3               And so, I think a primary indicator that she was
4     cutting it off as of the end of that 24-hour period on the
5     date of the order.  She didn't say the time line order; she
6     said the date of the order.
7               The other thing, your Honor, is most of this
8     discovery, if not all, is practical stuff.  It's not new
9     avenues.
10              These are areas that we've already been into and
11    we're trying to finalize.
12              I'll give you an example:  One of the things we
13    sent was a letter, just putting the defendants on notice,
14    that we want to use the other depositions already taken in
15    the MDL, certain witnesses such as First Databank.
16              There is already an order saying we can't depose
17    these people unless we have new -- this is a CMO -- or
18    protective order -- unless we have new issues.
19              If they are somehow going to object to our using
20    those depositions, I might have to re-depose those
21    witnesses.
22              It's not a matter of bringing anybody new into the
23    case.  That's one practical thing.
24              The other thing is, the interrogatories that
25    Ven-A-Care served, and where one party, in terms of

22

1 interrogatories -- so they were first because they were sort

2 of unique to Ven-A-Care.

3 And that is, there is an emerging issue where

4 Abbott keeps asking us for original source information. In

5 other words, how are you an original source?

6 We keep object by saying, "Well, point to the

7 public disclosure, because you could have a public

8 disclosure for your original source, and we'll answer the

9 question." And they'll say no.

10 So that's an issue that -- it's not before your

11 Honor today, but that's an issue back and forth.

12 So it seems very logical at this point in the

13 case, particularly since we don't even have an answer yet,

14 for Ven-A-Care to say, "If you know the public disclosure,

15 please put it down in writing so that we can direct the

16 trial based upon that."

17 And so these are not brand new claim discoveries.

18 It's none of that. These are witnesses that have either

19 been identified, or issues identified explicitly before the

20 deadline or, at least, by category.

21 And so, I didn't view this order as doing anything

22 other than saying, "All right, we're going to put an end on

23 it."

24 It's not the discovery cut-off, which was December

25 1st; it's December 18th. It would have been December 1st in

1  order to serve the discovery with a 30-day window.

2            And we're going to cut this thing off and I'm not

3  going to use the discovery cut-off date.  I'm going to use

4  December 18th.

5            And that's what the Judge did.  So, the 18th is

6  the 18th.

7            A lot of times, preparing for trial, we find

8  ourselves having to react within a few short hours and we've

9  all been there -- in a few short hours to things that

10  emerged during the course of trial preparation.

11            I didn't see anything differently other than that.

12            Thank you.

13            MR. WINCHESTER:  Judge, we certainly do.

14            I think all of the discussion you just heard had

15  to do with the substance of what they served and that it's

16  nothing new.

17            Well, it wasn't anything new, then I submit to the

18  Court it certainly could have been served before December

19  18th.

20            Reading this order, the Judge says, and she had

21  two positions to look at, the Government and Ven-A-Care, six

22  months unfettered new discovery; Abbott, three months; no

23  new discovery.

24            She entered an Order on 18th, at 3:00, "You get

25  three months, no new discovery."

24

1           There's nothing in that order -- and I certainly

2   don't think the Judge should have been required to

3   anticipate that through the evening hours, starting after

4   the close of business, they'd shove out the door hundreds of

5   new requests on us, and new requests for subpoenas on all

6   these third parties.

7           And counsel may say that they were after

8   documents, these subpoenas that went out after the close of

9   business on the 18th are new.

10          There are requests for depositions, for 30(b)(6)

11  depositions on these third parties, which are hugely

12  burdensome to them, and I don't believe, your Honor, that a

13  single one of them was actually served any time on that day,

14  of the 18th.

15          So, as to the third parties, those are just out

16  because just sending an email request to a third party at 8,

17  9, 10 o'clock at night -- by the way, without telling any of

18  them about Judge Saris' order, say that there was an order

19  entered that today, at 3 o'clock, at least in our view, is

20  the end of discovery in the case -- just, "Here is the

21  subpoena over the email.  Will you accept it?"  I don't

22  think a single one of them accepted it on that day.

23          So, they were either served later than that, or

24  not served at all.

25          And several of the third parties have objected.

25

1            We did go and tell them because the Government

2    chose not to, about Judge Saris' order.

3            We said, "Here's what the Judge had to say," and

4    certain of them have taken that up to make objections to

5    timeliness, which we certainly think are proper.

6            But, that's our position as to what Judge Saris'

7    order means, and it certainly did not mean, it's a race, go,

8    see how much you can get done by midnight.

9            None of this came in until after the close of

10   business.  From our standpoint, it is all untimely.

11           The next thing you heard from counsel had to do

12   with this argument is that it's goose and gander; Abbott is

13   doing the same thing, and that is absolutely untrue.

14           What we had to face with these third party state

15   Medicaid officials is what Ms. Brooker is talking about.

16   And that requires a little bit of history.

17           Going back to August of 2006, with their very

18   first 26(a)(1) disclosures, the Government took up, at our

19   prodding, because we asked them about this, "Do you intend

20   to call all these state Medicaid officials at trial?"

21           They took up August 2006, directly in their words,

22   in the 26(a)(1) disclosures, "We do not anticipate calling

23   state Medicaid officials at trial."

24           And we continued to ask them about that through

25   the course of discovery.

26

1         Their basic position, as you heard, was, "We don't
2   intend to call them, Abbott, but if you want to go take
3   discovery of these third party Medicaid officials, go ahead
4   and do it."

5         And our position was, "We're not responsible for
6   making your case for you.  If you don't intend to call state
7   Medicaid officials, then you don't have a state Medicaid
8   case.  That's on you."

9         It wasn't until November -- I believe November
10  20th -- so about a month before the original cut-off of
11  discovery, that they amended their 26(a)(1) disclosures and
12  noticed 23 new state Medicaid officials.

13        We're going to call these people at trial.  That's
14  the first time, other than a phone call, they told us, "We
15  intend to add some people."  This is the first time they
16  identified who they were.

17        We moved to strike those as being untimely.  So,
18  there was that motion pending.

19        They made a second disclosure of another five or
20  six people a few days later.

21        We filed a second motion to strike those as well
22  as being untimely.

23        Those motions, both those motions to strike, were
24  pending, still on the 18th, when Judge Saris entered her
25  order saying, "Here's what I'm going to do about discovery.

27

1   You have until March 31st; nothing new after today."

2         And on that day, we sent a letter to the

3   Government that says, "Look, we have a pending motion to

4   strike all of these state Medicaid officials but, if the

5   Court is going to allow them, then we serving notice to you

6   that those having been disclosed, we want to depose them."

7   And the Government has had no issue with that.

8         The Judge Saris issued her orders on those motions

9   to strike on the 20th, denying the motions to strike all

10  these new state Medicaid officials, but making clear we have

11  the opportunity to depose them.

12        So, that is the story from the standpoint,

13  qualitatively different in every respect from what they are

14  trying to do.

15        And I would also state, your Honor, that counsel

16  is talking about whether there are additional efforts by

17  Abbott to inquire of other state Medicaid officials.

18        We are in a very difficult spot given, tactically

19  what the Government chose to do here, which is to spend the

20  entire discover period saying, "We're not calling state

21  Medicaid officials," and then getting to the end of the time

22  and launching a bunch of state Medicaid officials witnesses

23  on us.

24        So, as it happens, we've gone out and started

25  talking to these people, and we're finding out again and

28

1    again that the people they've noticed aren't the people who

2    had anything to do with the actual issues in the case.

3                We're getting state Medicaid officials saying, "I

4    don't have any idea why that person would be on the list."

5                So, we are in an interesting position here of them

6    having introduced, late in the day, state Medicaid officials

7    as trial witnesses.  Should we be allowed to go and find

8    some that we like?  In other words, responding, doing no

9    more than responding, or rebutting what they've said now at

10   the end of the day, if they're going to bring forward.

11               I don't think that has anything to do with the

12   issues that we're talking about of the hundreds of new

13   discovery requests and the eight third party subpoenas that

14   were shoved out the door after the close of business and

15   long into the wee hours of the night on the 18th of

16   December.

17               MS. BROOKER:  Can I -- just a few points?

18               THE COURT:  Briefly.

19               MS. BROOKER:  Yes.

20               It is not true that the United States served all

21   of the deposition subpoenas on December 18th.  There are a

22   number of them that were -- they we made contact again.

23               It's a process when you're dealing with third

24   parties.  You don't just serve them with a subpoena.  You

25   contact them first to try to work it out, cooperate, and see

*APEX Reporting*
(617) 269-2900

29

1  what they want.  So, there are a number of them.

2         We did start and, again, the only reason we were

3  at this point--

4         THE COURT:  The contact was made but the actual

5  subpoena was not served until after the 18th.

6         MS. BROOKER:  Well, formal service did not occur

7  for some of them until after the 18th.

8         But leading up to the 18th, we had started our

9  process when the December 18th order came out of, again,

10 noticing them for deposition.

11        So, there were some who received a notice from us,

12 a letter, an email; said they would get back to us and we

13 were in that process of negotiation.

14        THE COURT:  But that's your choice to proceed that

15 way.

16        MS. BROOKER:  Well, your Honor, I would -- I'm not

17 so sure I would say it was our choice.  The reason why I

18 would say that is because from our history with these same

19 exact third parties, the majority of them preferred informal

20 service and did not want us sending a process server.

21        THE COURT:  That may be, but it was your choice.

22        MS. BROOKER:  I'm sorry, I don't know -- I'm not

23 so sure I'm following your Honor.

24        THE COURT:  Well, you could have noticed them up

25 and served them.

1          MS. BROOKER:   Your Honor, had we known that
2    December 18th would be a deadline, absolutely, we would
3    have.   In fact, December 31 was the deadline that we were
4    operating toward.   We were moving toward the December 31
5    deadline when Judge Saris' order came out.

6          In addition, I think it was reasonable for both
7    parties to believe that Judge Saris would give some
8    additional time of discovery because both parties were
9    requesting at least three months -- the United States was
10   requesting more than that, but Abbott was also requesting
11   three months.

12         So, again, there is still a lot of outstanding
13   discovery and both sides have been moving forward.

14         That is just one point that I wanted to respond
15   to.

16         In addition, the conversation or the discussions
17   that Mr. Winchester just had about state Medicaid witnesses,
18   it is not true that Abbott was not on notice about the state
19   Medicaid witnesses from the outset of this case.

20         In fact, before Judge Saris, in arguing for the
21   numerical limitations on the hours of depositions, against
22   our objections, Abbott argued for 750 hours of depositions
23   because it told Judge Saris that it needed to depose a state
24   Medicaid witness from every state.

25         And because of tactical reasons, Abbott chose not

31

1    to do that until the last minute.  That was its tactical

2    decision.

3              But I just wanted to correct what Mr. Winchester

4    said on the record.

5              In addition, it also untrue that Mr. Winchester

6    said they needed to go out and find their own witnesses from

7    some of these state Medicaid employees because the United

8    States identified incorrect ones.  That is flatly untrue.

9              At every single disclosure, from the first initial

10   disclosure, we informed them that they have to serve a

11   30(b)(6) on the State because we do not control the State.

12   As we said, we are in the same position as they are with

13   trying to identify state Medicaid witnesses.  So we told

14   them to serve 30(b)(6)s.

15             However, in a -- really to be as helpful to them

16   as we could, we said, "Not only should you do that, but we

17   will identify people that we believe from our contacts with

18   the states may have discoverable information.  But, please,

19   make sure that you serve a 30(b)(6) because we can't be

20   sure."

21             The last thing that Mr. Winchester said about

22   state Medicaid is they need to find new people from the

23   states we disclosed.

24             That is not true.  They are now serving

25   depositions for people in states, not on any initial

32

1   disclosure or supplemental disclosure by the United States.

2           That seems clearly outside the express language of

3   Judge Saris' order.

4           Again, however, the United States has not tried to

5   obstruct their attempts to take discovery.

6           It would be very prejudicial to the United States

7   if after a year of wrangling over third party discovery, we

8   finally prevailed -- and the only reason we have not been

9   able to take this discovery a year ago is because of

10  Abbott's moving to quash, informing the third parties not to

11  comply, which took a very long time to get resolved and to

12  get us to this point.

13          We have been extremely diligent with the third

14  parties.  We have put in a lot of time and effort in dealing

15  with the third parties, trying to be very cooperative with

16  them, which is why we did not just want to process serve

17  them.  They would not have been happy about that.

18          I just think that the United States has acted

19  incredibly diligently when it comes particularly to the

20  third party discovery.

21          MR. BREEN:  Your Honor, one point on -- and you

22  noted we could have served subpoenas -- I think Judge Saris

23  was very careful.

24          She didn't say discovery served, filed.  She said,

25  requested.

33

1           In the whole history, the process of working
2    through these discovery issues, we were requested this --
3    that's what it was -- and we contact them and said we want
4    this information.  We're requesting the discovery.  And she
5    was very careful to say that.

6           The order has got to be interpreted in a manner
7    that contemplates that because otherwise, by happenstance,
8    if somebody had served a bunch of stuff on the 17th, or
9    requested a bunch of stuff on the 17th, that would have just
10   happened to have gotten in under the wire.

11          But the 18th doesn't, even though the order says
12   the 18th.

13          And, your Honor, I respectfully submit that that
14   interpretation -- it would just not be a -- it wouldn't --
15   it would be very difficult to apply in a fair manner,
16   because it would purely be happenstance.

17          And Judge Saris chose the 18th.

18          For all the reasons Abbott argues we could have
19   done something on the 14th, or the 15th, or the 16th, not
20   even knowing the order was going to occur, how does that
21   change the fact that it did on the 18th?

22          We could have done those very same things two days
23   before and they would be under the wire.  But since we did
24   them on the 18th, the day the order said we had until the
25   end of the day to do, somehow it's not under the wire.

34

1          And, your Honor, I respectfully submit that would

2   not be a fair application for an order.

3          Thank you.

4          THE COURT:  Last.

5          MR. WINCHESTER:  Very quickly, Judge.

6          I guess to respond to Mr. Breen first, that's the

7   way a deadline works and they knew that this is exactly what

8   we were asking for -- is three months, no new discovery

9   because we have a lot to finish up.  And that's what Judge

10  Saris did.

11         I don't think that we can ask Judge Saris to --

12  and I don't know that she was so careful in thinking about

13  requests versus serve.

14         And the way you request discovery from third

15  parties is serve them with a subpoena.

16         Several of these people have said, "You didn't

17  serve us.  You didn't give us a copy of Judge Saris' order

18  saying today was the last day, and we don't want to produce

19  30(b)(6) witnesses to you.  That discovery is out of time;

20  it wasn't served; it's done"; the same way with respect to

21  all the discovery they shoved out at 9 and 10 o'clock to us.

22         This question, I think, Ms. Brooker keeps coming

23  back to you in terms of state Medicaid, the facts are, as I

24  told you and I don't think there's any dispute from counsel.

25         They told us all along in this case, "We don't

1  intend to call them.

2  "But," they said back in August of 2006, "we
3  reserve the right to change our mind."  And that's true,
4  they did say that.

5  And so when we went to do the CMO, counsel is
6  right.  We asked for additional deposition time to deal with
7  state Medicaid officials in the event that they ever decided
8  they were going to call them.

9  We're the defendant.  We don't carry a burden of
10  proof here.  We're here to deal with what evidence the
11  Government intends to put on, and until November 20th of
12  last year, the Government was unwavering in its position
13  that it did not intend to put on evidence from state
14  Medicaid officials.

15  That changed that day and we gave the Government
16  timely notice that if Judge Saris denies our motion to
17  strike all these people, then we want to depose them.

18  And Judge Saris did deny our motion to strike.
19  She said, "You can go ahead and depose them."

20  So, our position here, or the idea that we should
21  go strike forth and build their case for them by deposing
22  state Medicaid officials, when they had no intention, at
23  least until November, according to them, of calling them to
24  trial and putting on that evidence against us, I think
25  that's just sort of flipping the positions that we're in in

36

1  the case they had in a way that doesn't make sense.

2              So that's where we are right now on that.  None of

3  that bears on what happened the 18th.

4              THE COURT:  All right.  Are there any third

5  parties that want to be heard on this?

6              MR. GAGION:  Your Honor, I just -- Leo Gagion, I

7  represent Omnicare from Dewey & LeBoeuf.  I am happy to

8  disclose, I am from New York.  I'm not admitted in this

9  district at this time, but nonetheless be heard before the

10  Court.

11             THE COURT:  We will allow you to pay the fee nunc

12  pro tunc.

13             MR. GAGION:  Thank you, your Honor.

14             THE COURT:  But pay it on the way out.

15             MR. GAGION:  I shall.  I shall.

16             Very briefly, and I'm not going to repeat what

17  Mr. Winchester said, but I look at this as a non-party, of

18  course, because I represent a non-party and we want nothing

19  to do with this if we can help it.

20             At 7:49 p.m. on the 18th, a partner of mine,

21  Mr. Eamon O'Kelly, received an email from the Government

22  that said the following:

23             "Attached, please find the subpoena that we issued

24  this evening for the deposition of an Omnicare corporate

25  representative.  Please let us know whether Omnicare will

37

1  waive official service of the subpoena or, alternatively, if

2  we need to serve the subpoena via a process server."

3            That's on the evening of the 18th.

4            Now, the Government did not inform Mr. O'Kelly, or

5  anybody at my firm or Omnicare, of the existence of the 3

6  o'clock order.

7            Mr. O'Kelly was not in his office at 7:49.  He

8  actually was in Pennsylvania for a trial.  It came to me.

9            By the time I learned about this, I had received

10  two things:  one, I had received a copy of the order that

11  had been entered on the afternoon of the 18th and also, a

12  copy of a letter the Government had sent counsel for Abbott

13  on the 19th, where the Government, as I understand it,

14  interprets the order of the 18th as follows -- the

15  Government is talking about some motions that are

16  outstanding -- and it says:

17            "Between the two motions, there is only one

18  operative order.  It extends fact discovery to March 31,

19  2008, and requires all party and non-party discovery to have

20  been served yesterday."

21            That's the Government's letter to Abbott on the

22  19th.

23            Now, put yourself in the position of a counsel to

24  a non-party, who has not accepted service of a subpoena sent

25  to the counsel on the evening of the 18th, and on about the

1   20th gets a copy of the order and a letter from the

2   Government, the party trying to serve me, or my client, that

3   says, well, all non-party discovery had to be served by the

4   18th.

5            The logical answer to that is, "You're out of

6   time."  And my client doesn't want to have to go to the

7   burden of having to identify a 30(b)(6) witness and go to

8   all the expense and burden that's associated with that.

9            Omnicare has already gone through a great deal of

10  time and expense in producing documents in this case, which

11  we did over the past year, but from the point of view of a

12  non-party, given the order and the letter from the

13  Government to Abbott that interpreted that order.

14            It seemed pretty clear to us that whatever you

15  have accept today about discovery, all non-party discovery

16  had to be served by the 18th.  And in our case, it simply

17  wasn't.

18            Thank you.

19            THE COURT:  Do you wish to heard?  Then identify

20  yourself for the record.

21            MR. CRANE:  Thomas Crane from Mintz Levin

22  representing Quorum.

23            A virtually identical email was sent by counsel to

24  the Government at 6:54 p.m., to Michael Dell, the General

25  Counsel of Quorum.  That email was not received and

39

1   responded to by Mr. Dell until the next morning at 9:24, at

2   which point he did say that he would waive, but that was not

3   received until the next morning, December 19th.

4            Quorum has been very cooperative throughout this.

5   We are a non party.  But we would want to state very

6   clearly, we do view this as very burdensome.

7            After receiving this, we still have yet to figure

8   out who we would have appear for this deposition, let alone

9   the length of time it would take to prepare that person.

10            And so, we respectfully submit this was untimely

11   and request you to rule accordingly.

12            THE COURT:  All right.  I am going to take a

13   five-minute recess and I'm going to give my ruling when we

14   come back.

15            (A recess was taken from 11:45 a.m. to 11:55 a.m.)

16            THE CLERK:  We are on the record, Your Honor,

17   Civil Action No. 01-12257, Citizens for Consume, et al,

18   versus Abbott Laboratories, Inc., et al.

19            THE COURT:  All right.  A couple of

20   (unintelligible) at the order, and I believe that Judge

21   Saris was clear that she wanted no new discovery requests

22   from the moment she issued that order.

23            So, as far as I'm concerned, December 18th, at

24   3:01 controls, and requests to mean items served.  If it

25   wasn't served before that date, it doesn't go forward.

40

1            It applies to any 30(b)(6) depositions and any

2    written discovery.

3            MS. BROOKER:  May I ask for clarification on one

4    point?

5            THE COURT:  Sure.

6            MS. BROOKER:  There were several third parties on

7    December 11th and December 14th, for which subpoenas were

8    sent.  I can't say, precisely -- I think that they were all

9    sent and asked if formal service would be waived.  But they

10   were all sent--

11           THE COURT:  Wait a minute.  Subpoenas were sent?

12           MS. BROOKER:  They were sent.  In other words, the

13   process that we have, under the CMO, and in practice what

14   we've been doing along, is we notify the third party.

15           We send them a letter or an email, and we tell

16   them, "Here's the subpoena, will you waive formal service,

17   or do you require formal service?"

18           And then the third party responds in whatever they

19   want and we follow up and we do.

20           So, there were several of them, at least four,

21   that we engaged in that process on December 11th and

22   December 14th, asking that they waive formal service.

23           In fact, two of them agreed.

24           THE COURT:  Before the 18th?

25           MS. BROOKER:  Before the 18th, and I believe those

41

1    we've moved forward and in one instance, I think we've taken
2    the deposition and the other, there--
3              THE COURT:  So that one is moot.
4              MS. BROOKER:  Scheduling the deposition, so --
5    because other -- all the third parties did not interpret the
6    Judge's order in that way.
7              And again, that's the process that we have under--
8              THE COURT:  Are we talking about -- how many
9    depositions are we talking about?
10             You're telling me one was already taken.
11             MS. BROOKER:  Yes--
12             THE COURT:  There are four--
13             MS. BROOKER:  I believe there are four third
14   parties.
15             THE COURT:  Okay.
16             MS. BROOKER:  Some--
17             THE COURT:  One is already taken, so one is--
18             MS. BROOKER:  Yes.  One is already taken; one is
19   scheduled.  Two more are objecting because they received
20   notice that we were going to subpoena them.  We made the
21   request for the discovery which, again, is in complying with
22   Judge Saris' language on December 18th, and we did that on
23   December 14th.
24             But the process between us and the third party was
25   not completed until -- well, it wasn't completed because

42

1  then the December 18th deadline came around and the parties

2  are waiting to hear further from your Honor.

3          But I--

4          THE COURT:  Where is it in the CMO that it states

5  this is the way you should proceed?

6          MS. BROOKER:  I believe I put behind tab No. 1 in

7  the CMO.

8          It says, "A deposition of a third" -- I'm sorry.

9          THE COURT:  Paragraph?

10          MS. BROOKER:  Paragraph 12.

11          "A deposition of a third party witness shall be

12  initiated through service of a subpoena under Rule 45.  A

13  copy of the subpoena shall be provided to opposing counsel

14  contemporaneously; shall provide at least two-week

15  deposition notice.  The requesting party shall confer with

16  the third party witness and opposing counsel regarding a

17  mutually convenient time and place, and the estimated length

18  of the deposition.  When it is scheduled, the party serving

19  this subpoena shall post the subpoena on Lexis."

20          So, again, the way we--

21          THE COURT:  This really doesn't say anything about

22  what you've described.

23          MS. BROOKER:  Well, the way we--

24          THE COURT:  That may be the way that you decide to

25  operate -- but this does not say that that is the -- I mean,

43

1  if that were clearly a procedure that had been set out, I
2  might be sympathetic.
3          But it seems to me this has been set out and then
4  you adopted a procedure.
5          MS. BROOKER:  Well, we've been, again, trying to
6  negotiate with the third parties to make it as--
7          THE COURT:  That may be, but that's not in
8  paragraph 12.
9          MS. BROOKER:  Well, before we can set down the
10  date, we have to -- in order to have the formal subpoena, we
11  have to have the date and the time in the subpoena.
12          We can't serve the subpoena with the date and the
13  time, and then later work it out with the counsel--
14          THE COURT:  I did that all the time when I was in
15  practice.
16          It may not be the nicest thing to do, but it's
17  certainly done.
18          I mean, I just don't think paragraph 12 is what
19  you told me it is.
20          MS. BROOKER:  That's our understanding and
21  interpretation of it, your Honor.
22          Under the deposition protocols for 30(b)(6)'s and
23  30(b)(1)'s--
24          THE COURT:  Well, the first sentence here, "A
25  deposition of a third party witness, shall be initiated

44

1  through service of a subpoena."  That's pretty clear to me.

2          If you opted to do this informally, by a letter,

3  to work out a date, that's your choice, but that's not in

4  paragraph 12.

5          So, as to those four, I would say no.  One of them

6  is moot because you've done one of them.  So the remaining

7  three --

8          MS. BROOKER:  Even in the event where the third

9  parties are cooperating?

10          THE COURT:  Well, I think that would clearly fly

11  in the face of her order.

12          MS. BROOKER:  Thank you, your Honor.

13          THE COURT:  You're welcome.

14          MR. BREEN:  Your Honor, should we also interpret

15  your Honor's order apply to the strict constuction of her

16  order regarding the deposing the State Medicaid witnesses to

17  the extent that they are attempting to depose additional

18  witnesses as was discussed during the --

19          THE COURT:  Yeah.

20          All right.  Now, let's move to the remaining

21  motions.

22          Downstairs; $50.00.

23          MALE:  Yes, your Honor.

24          (Laughter)

25          THE COURT:  Take out your checkbook.  You will not