# EXHIBIT F

# HOGAN & HARTSON

Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
+1.212.918.3000 Tel
+1.212.918.3100 Fax

www.hhlaw.com

January 16, 2008

Lyndon M. Tretter
Attorney At Law
(212) 918-3528
lmtretter@hhlaw.com

**VIA E-MAIL**

Joanne Cicala, Esq.
Kirby McInerney LLP
830 Third Avenue
New York, NY 10022

Theresa A. Vitello, Esq.
Levy Phillips & Konigsberg LLP
800 Third Avenue, 13th Floor
New York, NY 10022

Ross B. Brooks, Esq.
Milberg Weiss LLP
One Pennsylvania Plaza
New York, NY 10119

> Re: **City of New York and Consolidated NY County AWP Cases, MDL No. 1456 (D. Mass.) (PBS)**

Dear Joanne, Ross and Theresa:

This is to continue negotiations over plaintiffs' objections and responses (and supplemental objections and responses) to defendants' first set of document requests and interrogatories. For the sake of brevity, please consider the words "county" and "counties" below to include plaintiff New York City.

I. **Claims Data**

The counties generally contend that they have overpaid medical providers who dispensed drugs to Medicaid beneficiaries in their social service districts due to allegedly misleading published prices (e.g., AWPs, WACs and FULs) upon which the payments were made and for which, the counties contend, defendants are responsible. Each defendant has requested that each county provide it with the computerized records of the payments made to medical providers that are the basis of the county's damages claim against it. You have responded that the counties do not have this data and have produced only the information given to you, as their counsel, by the New York State Department of Health that you used to compile the "expenditures" column of Exhibit B to the Revised First Amended Consolidated Complaint. This is nothing more than a series of spreadsheets that lists by NDC and year the total amount paid (by federal share, state share, local share) the quantity dispensed, and number of claims. There is no transactional detail whatsoever that indicates, for example, whether a claim was

Joanne Cicala/Ross Brooks/Theresa Vitello
January 16, 2008
Page 2

based on a published price (and if so, what price and what adjustment thereto) or a provider's "usual and customary" charge. This response is inadequate on two grounds.

First, even if the county does not have physical possession of the requested claims data, it may have the ability to acquire them from the Department of Health. If so, it has "control" within the meaning of the Federal Rules of Civil Procedure and is responsible for the data's production. The counties have made much of the contention before Judge Saris that they have enforcement roles in the State Medicaid system, that they have standing to bring these kind of suits under N.Y. Soc. Serv. Law § 145-b and that they have been deputized by New York State pursuant to "Litigation Demonstration Projects" to prosecute these particular matters. Are you now saying that plaintiffs' authority does not extend to producing the very information that is the foundation of the suits?

Second, I do not see how the counties' damages cases can go forward at all without such data. Unless and until we know which claims were adjudicated on an AWP logic, a FUL, a U&C, a State MAC or some other basis, as well as the dispensing fees that were paid over time, there is no way for a county to establish the liability of a particular defendant for a particular payment, let alone the amount by which a county allegedly overpaid.

Please let me know immediately what efforts the counties have made thus far to obtain from the State the claims data responsive to Request No. 1 of Defendants' First Set of Document Requests.

II.      **Objections Based On Privilege**

You object to several document requests based on privilege. As to objections to document requests Nos. 5, 6, and 20, please provide an appropriate privilege log. As to your objections to document requests Nos. 9 and 11, we do not see how (i) communications between and among counties or their associations relating to Medicaid drug reimbursement and (ii) documents relating to knowledge of spreads between provider acquisition cost and published drug prices can have any good faith claim to privilege at all. Please explain.

III.     **Requests For Clarification From Defendants**

   A.   <u>Purchases By Facilities County-Owned Or Operated Facilities</u>

You have objected to document request No. 13 -- documents relating to drug purchases by county-owned or operated medical providers -- on a variety of grounds such as HIPAA and "proprietary and confidential information." I assume that you know these objections to be invalid in light of the protective orders in the case. You also write that the counties want to meet and confer to obtain "clarification" on the "scope of the [r]equest." I am available any time.

   B.   <u>"Whose" Actual Acquisition Cost</u>

You have objected to several document requests (<u>e.g.</u>, Nos. 10, 11) on the ground that it is unclear precisely to whose actual acquisition costs defendants are referring when we ask for documents concerning the subject. The answer is: the drug acquisition costs of the medical

Joanne Cicala/Ross Brooks/Theresa Vitello
January 16, 2008
Page 3

providers and/or classes of trade that plaintiffs claim have been overpaid as a result of defendants' conduct. Please let me know if that clarifies the request sufficiently for you to respond.

IV.   **Representative Samples Of Documents**

    A.   Litigation Demonstration Projects

In response to Request No. 8(g), plaintiffs have stated that they have already or will provide "samples" or "examples" of documentation designating this litigation as a demonstration project under New York law. There is no basis for plaintiffs to so restrict their production or for one county to point to another county's document in response to such a targeted and specific request. Please provide all responsive documents for all plaintiff counties (or where a county has no such document, so state).

    B.   MARS Reports

We accept your offer to produce representative samples of MARS Reports, without prejudice to our right to request a fuller production after reviewing the samples. Initially, please provide ten samples of each of the monthly, quarterly and annual reports (i.e., a total of thirty) from among New York City, Orange County, Nassau County, Suffolk County, Westchester County and five different counties of your choosing.

    C.   Weekly Shares Reports

We accept your offer to produce representative samples of Weekly Shares Reports, again without prejudice to our right to request a fuller production after reviewing the samples. Initially, please provide a total of twenty samples from among New York City, Orange County, Nassau County, Suffolk County, Westchester County and five different counties of your choosing over five different years.

Joanne Cicala/Ross Brooks/Theresa Vitello
January 16, 2008
Page 4

V.     **Actions Against Pharmacies**

Request #21 asks for documents reflecting actual or contemplated action by a county against any pharmacy that received an alleged overpayment due to published AWP or WAC. You object that the request is "overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." Defendants believe that if such documents exist they are relevant to such key issues as (i) plaintiffs' claim that defendants' compete for pharmacy business through spreads; (ii) the defense that ingredient cost reimbursements subsidize dispensing fees; (iii) the extent to which pharmacies' U&C prices are an intervening, superseding cause of harm to a county or otherwise provided notice of spreads between pharmacy acquisition cost and published drug prices and (iv) the amount of the alleged overpayments (i.e., damages). If the request is overbroad or too burdensome because there are so many responsive documents, please let me know and we can talk about a way to minimize the burden.

VI.    **Interrogatory No. 3**

Interrogatory No. 3 asks for a description of the processes by which a county's share of Medicaid expenditures and rebates are determined. Plaintiffs other than Orange County have responded that the counties do not "control or determine" the shares; the State does. This misreads the Interrogatory. We are not asking who makes the determination, but what factors the counties understand go in to determining how much, net of rebates, they must pay the State. Surely, each county must have information about how much of the total State drug expenditure and how much of the manufacturers' rebates are being allocated to it and the bases therefor. For example, are the numbers based on the residence of the Medicaid beneficiary and the number of prescriptions received by that beneficiary? Please respond promptly.

VII.   **All Interrogatory Responses Must Be Signed By The Counties**

Finally, I note that Fed. R. Civ. P. 33(b) requires that the answer to interrogatories be signed by a party and that attorneys sign only as to objections. Please provide proper signature pages from the county officials who provided the answers.

Very truly yours,

Lyndon M. Tretter

Copy to all defense counsel via e-mail