## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

### RESPONSE OF ABBOTT LABORATORIES INC., MILES D. WHITE, DUANE L. BURNHAM, THOMAS R. HODGSON, AND RICHARD A. GONZALEZ IN OPPOSITION TO THE UNITED STATES' OBJECTIONS TO THE JANUARY 31, 2008 ORDER BY MAGISTRATE JUDGE BOWLER

Plaintiff United States of America wishes to depose several current and former high-level executives of Defendant Abbott Laboratories Inc. ("Abbott").  Among those are Miles White (Abbott's CEO and Chairman of the Board of Directors), Duane Burnham (Abbott's former Chief Executive Officer and Chairman of the Board of Directors), Thomas Hodgson (Abbott's former President and Chief Operating Officer), and Richard Gonzalez (Abbott's recently-retired President and Chief Operating Officer).  As top corporate executives, these gentlemen are considered "apex" witnesses, and, under the law, should not be subject to deposition unless the Government (i) demonstrates that they have "unique personal knowledge" of an issue relevant to this litigation; and (ii) attempts first to obtain any such information through less-intrusive methods of discovery.  The Government cannot make either showing, and Magistrate Judge Bowler accordingly entered an order barring these depositions (subject to revisiting this issue after plaintiffs have completed the depositions of lower-level employees and Rule 30(b)(6) corporate designees).  The decision was not clear error, and the Government cannot credibly claim otherwise.  The Government's objections should be overruled.

## FACTUAL BACKGROUND

In this action, the Government alleges that, from January 1, 1991, to January 2001, Abbott reported inflated drug prices for four drugs that were marketed by Abbott's former Hospital Products Division ("HPD") (dextrose solutions, sodium chloride solutions, sterile water, and Vancomycin), in an effort to create a profit spread for customers, who would be paid by Medicare and Medicaid for more than the acquisition cost for the drugs.  (*See* Complaint).[1]  The Government has served extensive written discovery, and it has deposed and/or requested the depositions of dozens of current and former Abbott employees, many of whom were directly involved in matters such as drug pricing, price reporting to various outside entities (including the federal and state governments and third-party publishing compendia), product marketing, product sales, and other issues relevant to this case.

Not content simply to depose the persons who were directly involved in (and therefore have the greatest knowledge about) these issues, however, the Government has pressed for the depositions of Abbott's top corporate officers.  In particular, the Government has sought the deposition of a host of current and former Abbott senior executives, including:

- ♦ Cathy Babington – Current Vice President of Public Affairs
- ♦ Duane Burnham – Former CEO and Chairman of the Board of Directors
- ♦ Richard Gonzalez – Current President and COO
- ♦ Rosemary Haas – Senior Director, Federal Government Affairs
- ♦ Thomas Hodgson – Former President and COO
- ♦ Peter Karas – Former HPD Divisional Vice President of Sales
- ♦ David Landsidle – Former Divisional Vice President, Government Affairs

---

[1] The Government has sought to add allegations relating to a fifth drug – acyclovir (also an HPD product) – in its First Amended Complaint.  Abbott has moved to dismiss that complaint, however, and that motion is presently pending before the Court.  (Dkt. No. 4469, 4470.)

- ◆    Loreen Mershimer – Current Vice President of Integrated Health Care Marketing

- ◆    Donald Robertson – Former Vice President of the Alternate Site business unit in HPD

- ◆    Cynthia Sensibaugh – Senior Director, Federal Government Affairs

- ◆    Mark Barmak – Former Abbott Vice President, Government Affairs

Abbott has not taken the position that no corporate executive should ever be deposed. To the contrary, where it is apparent that such persons may have been directly involved in, or have directly supervised, matters that are potentially relevant to this litigation, Abbott has agreed to make them available for deposition – despite the substantial inconvenience that such depositions entail for the witnesses and the organization. For example, Abbott has agreed to the depositions of Ms. Babington, Ms. Mershimer, Ms. Haas, Ms. Sensibaugh, and Messrs. Karas, Robertson, Barmak, and Landsidle.

Abbott cannot agree, however, to the Government's demand to take the oral depositions of the very top corporate officers – Messrs. White, Burnham, Hodgson, and Gonzalez. From Abbott's perspective, this tactic is designed much more to "turn the heat up" on Abbott than to serve any legitimate need for investigation – a fact made manifest by the Government's refusal to narrow the subject matter of these apex depositions in any way. Yet, the controlling law recognizes that senior corporate officials are particularly susceptible to, and entitled to protection from, such harassment. *E.g.*, *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985). The Government has been afforded numerous opportunities to explain why the depositions of these men are necessary, and it has failed every time.

For example, Magistrate Judge Bowler has twice considered and denied the Government's request to depose current Abbott CEO Miles White. The first time the issue arose, the Government made clear, at a hearing on July 20, 2007, that it wished to question Mr.

White about an October 2000 letter sent to Mr. White by California Congressman Fortney Pete
Stark.  Magistrate Judge Bowler allowed the Government to submit three written deposition
questions to Mr. White on this issue.  In its typical overreaching fashion, the Government turned
its "three-question" written deposition into seventeen subparts.  Mr. White responded in full and
under oath, without objection – making clear that he has no memory of ever seeing the letter
before it was shown to him by counsel in the course of responding to the written deposition
questions.[2]

       Yet, without any basis to suggest that he has unique personal knowledge of any issue
relevant to this case, and despite the clear burden and prejudice it would work both on him and
Abbott, the Government has continued to demand a deposition of Mr. White.  Similarly, the
Government has pressed forward with its demands to depose Abbott's former top officers –
Messrs. Burnham, Hodgson, and Gonzalez, each of whom has made clear that he has no unique
personal knowledge of the matters at issue here.  As discussed below, the Government's
proffered reasons, individually or collectively, are not enough to clear the high bar that the law
sets to move forward with apex depositions.  Magistrate Judge Bowler so ruled on January 31,
2008.  Judge Bowler granted a protective order preventing these depositions, but made clear that
the Government can renew its request after it has completed the remaining depositions of lower-
level Abbott employees and corporate 30(b)(6) designees. (Exhibit A, Tr. of 1/31/08 Hr'g at 108-
124.)  This decision is not clear error, and the Government's objections should be denied.

-----

[2] The Government's brief repeatedly characterizes Mr. White's responses to these written deposition
questions as somehow deficient or non-responsive because they were prepared with the involvement of attorneys.
(*See, e.g.,* Br. at 12 ("Instead of providing his own testimony, Mr. White provided an affidavit that was crafted all or
in part by Abbott's lawyers.").)  It is not at all surprising that attorneys were involved when the CEO of a major
corporation was served with written deposition questions from the Department of Justice.  The testimony is his
alone.  The Government has no basis to controvert this fact, yet it freely hurls accusations at Abbott's counsel. (Ex.
A at 123  ("MR. GOBENA: . . . [A]ffidavits created by lawyers don't necessarily meet the burden of us being able
to explore in detail what they really know.  I mean --  THE COURT: You are getting into a risky area with an
accusation. . . . MR. GOBENA: Well, I'm not accusing anyone of any wrongdoing.  . . . Your Honor, if that was the
tone, I apologize.").)

## APPLICABLE STANDARD

Under the Federal Rules of Civil Procedure, a district judge shall only "modify or set aside any portion of the magistrate judge's order" if it is "found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A magistrate judge's order is "clearly erroneous" only when the reviewing court has a "definite and firm conviction that the magistrate judge made a mistake." *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 6 (D.R.I. 2004). In conducting its clear error review, the Court should refrain from second-guessing the magistrate judge's pre-trial discovery rulings. *Id.*

## ARGUMENT

Far from being clear error, Magistrate Judge Bowler's decision to prohibit the Government from deposing the Abbott executives at issue here was compelled by voluminous precedent. Federal Rule of Civil Procedure 26(b)(2)(C) gives courts the discretion to prevent discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Courts have been especially willing to apply this rule when parties involved in litigation against a large corporation demand the deposition of the opponent's senior corporate officers – commonly referred to as "apex" depositions. *See, e.g., Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003). A top corporate official is "a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse." *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985). In light of the "tremendous potential for discovery abuse and harassment," *Liberty Mutual Ins. Co. v. Superior Ct. of San Mateo County*, 10 Cal. App. 4th 1282, 1287 (1st Dist. 1992), both state and federal courts have long disfavored such depositions. *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991). Indeed, it has been said that "courts have

a duty to recognize [the] vulnerability" of such persons to harassment, and to protect them from it. *Mulvey*, 106 F.R.D. at 366; *see also Consol. Rail Corp. v. Primary Coal, Inc.*, 1993 WL 364471 at *1 (S.D.N.Y. Sept. 10, 1993) ("permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation").  This same protection also applies to retired executives.  *See, e.g., In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987, 29 (D.N.Y. 2006); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, 11-12 (D. Cal. 2007).

In order to justify the deposition of high-ranking corporate executives, such as the executive and former executives at issue here, the party seeking the deposition must overcome two major hurdles.  *First,* the party must show that the executive in question has "unique personal knowledge" of an issue relevant to the case.  *See, e.g.*, *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 483 (10th Cir. 1995) (protective order proper where plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the executive] could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome"); *Evans,* 216 F.R.D. at 518 (denying depositions of three high-level executives of Allstate because "the information can . . . be obtained from other sources without deposing these 'apex' officers"); *Baine,* 141 F.R.D. at 334 (denying deposition of GM vice president, noting that "when a party seeks to depose high-level decisionmakers who are removed from the daily subjects of the litigation, the party much first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter in issue."); *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383, 383 (S.D.N.Y. 1951) (denying deposition of vice president because the same information could be gained from a lower-level employee); *Cardenas v. The Prudential Ins. Co. of Am.*, 2003 WL

21293757 at *2 (D. Minn. May 16, 2003) (denying depositions of several Prudential executives, finding that the plaintiffs had not shown that the executives "possess any information that could not be obtained from lower-level employees or other sources, much less that their knowledge of plaintiffs' allegations is 'unique.'"); *Consol. Rail Corp.*, 1993 WL 364471 at *1 (deferring depositions of three executives until "it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases."); *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 179 (Tex. 2000) (trial court abused its discretion by allowing depositions of two Samsung executives, in part because they had no unique knowledge); *Liberty Mutual*, 10 Cal. App. 4th at 1289 ("when a plaintiff seeks to depose a corporate president . . . the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information.").

*Second,* courts have insisted that all avenues of less-burdensome discovery, such as written interrogatories and depositions of more easily-accessible witnesses who might be able to reveal the same information (including 30(b)(6) designees), be exhausted before allowing a high-level executive to be deposed. *See, e.g.,* FED. R. CIV. P. 26(b)(2)(C) (giving courts discretion to prevent discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"); *In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987, 29 (S.D.N.Y. 2006) (directing plaintiff to submit interrogatories or pursue a 30(b)(6) witness in lieu of deposing the former CEO of defendant's subsidiary); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (noting that "failure to take advantage of [an] inexpensive, convenient method of discovery, *i.e.* interrogatories, casts serious doubt over [the] claim that [the executive] possessed information that was more than marginally relevant to [the] civil action."); *Salter v. Upjohn Co.*,

593 F.2d 649, 651 (5th Cir. 1979) (deposition of Upjohn president properly barred where

plaintiff had not first taken depositions of lower-level employees who could provide the same

information); *Stone v. Morton Int'l*, 170 F.R.D. 498, 504 (D. Utah 1997) (requiring 30(b)(6)

deposition and exhaustion of other discovery methods before corporate officer could be

deposed); *Mulvey*, 106 F.R.D. at 366 (quashing deposition notice of CEO because less intrusive

discovery methods should be pursued first); *In re Alcatel USA, Inc.*, 11 S.W.3d at 180-81

(holding that trial court abused its discretion by allowing deposition of two Samsung apex

executives in part because Plaintiff had been given opportunity to depose other employees who

arguably possess the same information and had declined); *Liberty Mutual*, 10 Cal. App. 4th at

1287 ("We conclude it amounts to an abuse of discretion to withhold a protective order when a

plaintiff seeks to depose a corporate president . . . absent exhaustion of less intrusive discovery

methods.").

      The result should be no different here.  Faced with the incontrovertible burden and

prejudice that these depositions would impose upon both the witnesses and Abbott, the

Government seeks to justify the depositions with little more than its own supposition that the

witnesses "might" know something by virtue of their current or former positions at Abbott, and

by arguing that retired executives are not worthy of the Courts' protection.  But the Government

has not made and cannot make any showing that these witnesses have unique personal

knowledge of any issue relevant to this case.  As important, the Government has ample

opportunities to pursue other, less intrusive, means to discover any relevant information, such as

deposing other Abbott employees or pursuing its already-noticed 30(b)(6) depositions.  These

less-burdensome avenues should yield whatever relevant information the Government could

hope to obtain from the apex witnesses and more, and the Government should be required to

fully exhaust these opportunities.  Because it failed both prongs of the applicable legal standard, the Government's request to depose Messrs. White, Gonzalez, Burnham, and Hodgson was properly denied by Magistrate Judge Bowler.

I.    **MAGISTRATE JUDGE BOWLER DID NOT COMMIT CLEAR ERROR WHEN SHE APPLIED THE APEX DEPOSITION STANDARDS TO THE ABBOTT EXECUTIVES.**

The Government first claims that Magistrate Judge Bowler committed clear error by applying the well-established apex deposition standards enumerated above to the four current and former Abbott executives.  Her decision is clearly erroneous, the Government claims, because (1) some of the executives at issue (Messrs. Burnham, Hodgson, and Gonzalez) are retired, and (2) the apex deposition standards were inappropriate in light of a non-final decision in Pennsylvania state court, based on Pennsylvania law.  Neither of these arguments has merit.

All federal cases to address the subject instruct that apex deposition standards apply with equal force to retired executives as they do to current executives.  *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481 (S.D. Cal. Mar. 22, 2007) (applying apex deposition standards to WebSideStory's retired CEO); *In re Ski Train Fire*, 2006 U.S. Dist. LEXIS 29987 at *29 (applying apex standards to retired CEO of Siemens AG).  The only case the Government cites to the contrary, the Missouri state court opinion in *State ex rel Ford Motor Co. v. Messina*, 71 S.W.3d 602 (Mo. 2002), is inapt because that state court expressly declined to adopt the federal apex deposition witness standards for *any* executives—retired or current. *Messina*, 71 S.W.3d at 607 ("This court declines to adopt and 'apex' rule.").

The Government's attempts to distinguish *WebSideStory* and *In re Ski Train Fire* are unavailing.  The Government notes that the executive in *In re Ski Train Fire* was "recently" retired (Br. at 15), without explaining how that fact is possibly relevant (nor how this distinction could lend any support to its demand to depose Mr. Gonzalez, who retired from Abbott in late

2007 (Dkt. 4781 at 1)).  Similarly, the Government claims that the *WebSideStory* court applied apex protection to the retired executive in that case only because he continued to have a role in the plaintiff corporation and because he was CEO of a new company.  The court's actual holding was that, while the executive did not have the "celebrity status" of apex deponents in other cases, "his responsibilities to current *and prior* employers" were of similar proportions, and therefore he was entitled to apex protection.  *WebSideStory*, 2007 U.S. Dist. LEXIS 20481 at *11 (emphasis added).  Magistrate Judge Bowler's decision to follow the only on-point federal precedent and afford protection to Abbott's retired senior executives is surely not clearly erroneous.

      Magistrate Judge Bowler's decision to protect the former executives is particularly sensible not only because of precedent, but also because of pragmatic concerns.  As she stated during the hearing, "Being retired doesn't mean they're not doing something else."  (Ex. A at 114.)  In weighing the merits of this dispute, it was entirely appropriate to consider the burden to Messrs. Gonzalez, Burnham and Hodgson of being forced to sit for a deposition.  Although these gentlemen are retired from Abbott, all remain active in the community.  By way of example, Mr. Hodgson is quite active in both business and civic roles.  He currently serves on the Board of Directors of two public companies – The Travelers Companies, Inc. (a multi-billion dollar financial and insurance organization) and Idenix Pharmaceuticals, Inc. (a biopharmaceutical company).  (Ex. B, Declaration of Thomas Hodgson at ¶ 6.)  Additionally, he serves as a director or advisor of several privately-held companies, and holds leadership roles in civic organizations such as a prominent medical center in Chicago and the Utah Symphony.  (*Id.*)  Mr. Burnham also continues to have substantial business and civil commitments, including serving as a Trustee for the National Trust for Historic Preservation and as a Life Trustee of Northwestern University.

(Ex. C, Declaration of Duane L. Burnham at ¶ 7.)  Particularly in light of the paltry showing of relevance offered by the Government, the burden to these retired executives of being subjected to a deposition far outweighs any possible benefit to the legitimate discovery efforts in this case.

The Government also implies that it was clearly erroneous for Magistrate Judge Bowler to apply apex deposition standards to these deponents because of a non-final (and Abbott believes erroneous) Pennsylvania state court decision, based entirely on Pennsylvania law.  The court in that case has ordered the deposition of Messrs. Burnham, Hodgson, and Gonzalez, but not Mr. White. [3]  Abbott believes that the Pennsylvania court's ruling is wrong, and it has sought review before the appellate court.  In any event, the Pennsylvania court's decision under Pennsylvania state law was not binding on Magistrate Judge Bowler, and the Government does not contend otherwise.  Magistrate Judge Bowler properly applied the federal apex standards to deny these depositions, and her ruling should stand.

## II.   THE GOVERNMENT HAS NOT SHOWN THAT ANY OF THE EXECUTIVES AT ISSUE POSSESS "UNIQUE PERSONAL KNOWLEDGE" OF ANY TOPIC RELEVANT TO THE CASE

The "unique personal knowledge" standard cannot be satisfied merely by asserting that an executive might have some knowledge of relevant information.  "If 'some knowledge' were enough, the apex deposition guidelines would be meaningless; they would be virtually indistinguishable from the scope of general discovery." *In re Alcatel USA, Inc.*, 11 S.W.3d at 179; *see also Baine v. General Motors Corp.*, 141 F.R.D. at 334; *Consol. Rail Corp.*, 1993 WL 364471 at *1.  Although the "unique personal knowledge" standard is not rigidly defined, in order to have any meaning at all, "there must be some showing beyond mere relevance, such as

---

[3] The Government's representation that Abbott has not filed a motion for a protective order to prevent Pennsylvania from deposing Mr. White (Br. at 3) is absolutely untrue.  Abbott did file a motion for a protective order, and the Pennsylvania court stayed the deposition pending resolution of that motion, which is still pending.

evidence that a high-level executive is the *only* person with personal knowledge of the information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources." *Alcatel*, 11 S.W.3d at 179 (emphasis added). The Government cannot make that showing here.

### 1.   Mr. White

Mr. White has no unique personal knowledge of any facts relevant to this dispute. The Government has had ample opportunity to prove otherwise, having spent 12 years investigating this case, having secured a written deposition of Mr. White, and having engaged in two rounds of briefing and argument relating to Abbott's motions for protective orders. Each of the Government's claims that Mr. White has unique personal knowledge can be rebutted (and have been, at least twice). The Government rehashes certain of these twice-rejected arguments in its objections. None should detain the Court.

*First*, Mr. White's few statements to the press ought not subject him to a deposition. (Br. at 9-10.) Like every CEO, Mr. White is occasionally interviewed by members of the press about issues facing the company he leads. At best, the matters highlighted by the Government could only show that Mr. White has some general knowledge about drug pricing issues and governmental investigations. This, of course, is exactly what Mr. White stated in his affidavit – that, in his capacity as CEO, he is advised by others as necessary about matters such as pharmaceutical pricing. (Ex. D, Affidavit of Miles D. White at ¶ 2.) A few press snippets can hardly show that Mr. White somehow has unique knowledge that is superior to the dozens of other employees who were directly involved in those issues, and whom the Government has had every opportunity to depose.

*Second*, Mr. White does not have unique personal knowledge because he was the addressee of Congressman Stark's letter. In about October 2000, Congressman Pete Stark sent a

letter to Abbott, leveling accusations of AWP-related misconduct.  Abbott did not respond to Congressman Stark.  Nevertheless, because this letter happened to be addressed to Mr. White, and because Abbott made pricing changes during the same general time frame it was received, the Government now claims that Mr. White must have unique, personal knowledge about it.  Not so.  To the contrary, Mr. White provided sworn testimony that he does not recall even seeing the letter when it was sent, and that his general practice would be to route any such letters to Abbott's legal department.  (Ex. E, Responses to Written Deposition Questions at 1-3.)

Moreover, the case law makes clear that the mere fact that Mr. White was the addressee chosen by Congressman Stark for this letter does *not* show that he has any unique personal knowledge regarding any actions the company may have taken after receiving the letter, nor even regarding the letter itself.  *See Liberty Mutual*, 10 Cal. App. 4th at 1286 (rejecting argument that simply being copied on two letters regarding the case was enough to warrant a deposition of defendant's president and chief executive officer in a fraud case); *Alcatel*, 11 S.W.3d at 179 (receipt of a document does not mean that an individual has unique knowledge related to that document).

It was hardly clear error for Magistrate Judge Bowler to force Abbott's CEO to sit for a deposition based on such a paltry showing of relevance and personal knowledge.  What is more, the Government has now served a request for a 30(b)(6) designee to testify on behalf of Abbott with respect to the Stark letter, pricing issues for the subject drugs, and many other topics – making even more clear that Mr. White's deposition is neither necessary nor justified.  The Government's objection should be overruled.

### 2.    Mr. Gonzalez

The Government's proffered justifications for deposing Mr. Gonzalez are equally groundless.  The Government first claims that, because Mr. Gonzalez served for a brief period

(March 1998 - July 2000) as the head of HPD, he must possess relevant information regarding the pricing of HPD products.  (Br. at 7-8.)

To the contrary, Mr. Gonzalez has made clear that, during his time as the President of HPD, he had no unique knowledge about the pricing of HPD products.  (Ex. F, Declaration of Richard Gonzalez at ¶ 5.)  Other persons within HPD were directly responsible for pricing determinations, and those persons would keep Mr. Gonzalez advised as necessary.  (*Id.*)  Because others within HPD were more directly responsible for product pricing than Mr. Gonzalez, he cannot possibly have the sort of unique personal knowledge necessary to justify his deposition; the mere fact that he was the head of HPD is not enough.  *See In re Alcatel USA, Inc.*, 11 S.W.3d. at 177; *see also id.* at 179 (noting that if "some knowledge" was the equivalent of "unique" knowledge, the standards for apex executives would be "virtually indistinguishable from the scope of general discovery"). [4]

The Government next argues that Mr. Gonzalez should be deposed because he allegedly met with executives of Coram, a client of the Alternate Site business unit within HPD, to discuss contract negotiations.  (Br. at 8.)  Mr. Gonzalez has attested, however, that he has no memory of any such meeting with Coram, nor of ever being involved in contract negotiations with Coram or any other Alternate Site customer.  (Ex. F at ¶ 6.)  That should end the inquiry.

---

[4] Thus, this case stands in stark contrast to cases where courts have been willing to find that a corporate executive possesses unique and personal knowledge, such as *Travelers Rental Co., Inc. v. Ford Motor Co*., 116 F.R.D. 140 (D. Mass. 1987).  In that case, the plaintiff made a strong factual showing that the corporate executives at issue had unique personal knowledge of the discrete policy that was the topic of the requested deposition.  *Id*. at 143 (executive was "significantly involved in the administration and implementation" of program central to the parties' dispute); *see also Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 104 (S.D.N.Y. 2001) (allowing deposition of Sony's CEO where plaintiff offered evidence showing that the executive had unique knowledge about the subject of the suit and plaintiff had already exhausted other, less-intrusive means to obtain the discovery).  Although apex depositions may be appropriate when the focus is narrowly-defined, and substantial evidence demonstrates that the executive has unique insight into the relevant topics, this case presents the polar opposite situation.  Here, the Government wishes to take a scattershot deposition of Abbott's current and former executives about AWP-related issues, yet it has offered no showing whatsoever that they have any unique or superior personal knowledge about these issues within the company.

Similarly, Mr. Gonzalez has also sworn that he has no unique knowledge within Abbott about reimbursement issues.  (*Id.* at ¶ 8.)  The Government has deposed more than 60 witnesses already in this case, and has asked every one of them about reimbursement; there can be no doubt that the Government knows who the most knowledgeable witnesses are within Abbott about this issue, and that Mr. Gonzalez is not among them.  It was hardly clear error for Magistrate Judge Bowler to prevent this needless deposition from going forward.

### 3.    Mr. Burnham

Mr. Burnham was Abbott's CEO from 1990 to April 1999, and Chairman of Abbott's Board of Directors from 1990 to December 1998.  (*See* Ex. C at ¶ 1.)  He retired from Abbott in 1999.  (*Id.*)  The Government suggests that it should be allowed to depose Mr. Burnham about certain lobbying efforts that he allegedly made on Abbott's behalf in conjunction with the Balanced Budget Act of 1997.  Mr. Burnham, however, does not recall any lobbying efforts connected to this decade-old legislation, nor of ever participating in any lobbying efforts related in any way to the reimbursement of pharmaceutical products by Medicare of Medicaid.  (*Id.* at ¶ 3.)  That alone should end the dispute.

Moreover, the Government cannot possibly suggest that Mr. Burnham's deposition is required in order to fully investigate Abbott's lobbying efforts.  The Government already has requested from Abbott (and has been provided with) all responsive, non-privileged documents related to Abbott's lobbying efforts on the 1997 Balanced Budget Act and any other legislation concerning reimbursement by Medicare or Medicaid.  In addition, the Government has taken the depositions of senior Abbott personnel such as Cynthia Sensibaugh, Rosemary Haas, Mark Barmak, and David Landsidle (the actual author of all correspondence the Government cites in support of its supposed "need" to depose Mr. Burnham) from within the group that coordinated Abbott's lobbying efforts.  In addition, the Government will be deposing a 30(b)(6) witness on

the very same lobbying issues.  There is no need to pile on the deposition of Mr. Burnham –

particularly when he has attested that he remembers nothing about this subject.  (*Id.*)  Magistrate

Judge Bowler did not clearly err when she refused to allow the Government to do so.

### 4.     Mr. Hodgson

Mr. Hodgson was the President and COO of Abbott from 1990 to 1999, when he retired.

(*See* Ex. B at ¶ 1.)  During his time as President and COO, Mr. Hodgson was not responsible for

directly supervising the day-to-day marketing, pricing, or sale of Abbott's products.  (*Id.* at ¶ 3.)

Prior to assuming the post as President and COO, Mr. Hodgson ran Abbott's international

division from 1983 to 1990, where he focused solely on Abbott's business outside the United

States.  (*Id.* at ¶ 1.)  Thus, Mr. Hodgson had no direct involvement with respect to the pricing,

marketing, or sale of Abbott's products in the United States during any time period that is even

arguably relevant to this case.  Nor has he had any involvement with such matters since his

retirement in 1999.  (*Id.* at ¶ 3.)

The Government essentially argues that because Mr. Hodgson was a former high-level

officer at a major drug company and has shown a general familiarity with pricing and

reimbursement, he must have unique personal knowledge of AWP-related matters, and therefore

Magistrate Judge Bowler's refusal to allow this deposition was clearly erroneous.  The assertion

has no factual support, and provides no basis for this Court to overturn Magistrate Judge

Bowler's decision.

*        *        *        *

None of the Government's arguments establishes that Messrs. White, Gonzalez, Burnham

or Hodgson has unique or superior personal knowledge of any matter relevant to this litigation.

Case law is clear that such a showing is a necessary precursor to allowing an apex deposition.

Because this showing has not been, and cannot be, made here, Magistrate Judge Bowler correctly entered a protective order barring the deposition of these witnesses.

## III.   ANY ARGUABLY RELEVANT DISCOVERY FROM THE EXECUTIVES COULD BE ACQUIRED THROUGH LESS BURDENSOME MEANS

Although the Court need not reach this issue in order to affirm Magistrate Judge Bowler's correct ruling, a protective order also was warranted here because Judge Bowler recognized that the Government has other, less-intrusive means of gathering discovery before seeking the deposition of Abbott executives.  The case law uniformly instructs that, before a party is permitted to conduct an apex deposition, it must first pursue other avenues, such as (i) depositions of lower-level employees or corporate 30(b)(6) designees; or (ii) written discovery. *Patterson,* 281 F.3d at 682 (failure to utilize such alternative discovery "casts serious doubt over [plaintiff's] claim that [the executive] possessed information that was more than marginally relevant to her civil action."); *Salter v. Upjohn Co.*, 593 F.2d at 651; *Stone*, 170 F.R.D. at 504; *Mulvey*, 106 F.R.D. at 366; *Baine,* 141 F.R.D. at 335; *In re Alcatel USA, Inc.*, 11 S.W.3d at 176; *Liberty Mutual*, 10 Cal. App. 4th at 1289.

The rationale for this rule is simple.  Often, lower-level employees have the greatest and most direct knowledge of the relevant facts.  *Upjohn*, 593 F.2d at 651.  It is "very likely that, after taking the other employees' depositions, plaintiff would be satisfied and abandon [its] requests to depose [the apex executive.]" *Id.*  In this case, the Government already has deposed dozens of Abbott witnesses, including those persons responsible for the day-to-day operations of the former HPD.  Many more fact depositions are noticed in the coming weeks.  In addition, the Government will be deposing 30(b)(6) designees of Abbott on a host of topics, such as pricing, lobbying, and compliance.

After the lower-level employees and corporate designees with the greatest knowledge about topics relevant to the litigation have been deposed, the Government can reassess whether, in light of all of the discovery conducted, it still believes that these apex depositions are necessary.  If it does, then Magistrate Judge Bowler has invited the Government to make its case for the depositions, and the Court can determine, based on a full record, whether there is a proper basis for the depositions to go forward, and on what terms.  "At the very least, [further discovery] would aid in developing and refining a line of questioning [for the apex executive]," and should result in less duplicative, inconvenient, and burdensome discovery.  *Baine*, 141 F.R.D. at 335;  *Liberty Mutual*, 10 Cal. App. 4th at 1287 ("it would seem sensible to prevent a plaintiff from leap-frogging to the apex of the corporate hierarchy in the first instance, without the intermediate steps of seeking discovery from lower-level employees more involved in everyday corporate operations").[5]

In addition, as Magistrate Judge Bowler recognized with respect to Mr. White, interrogatories or written deposition questions provide another, less-burdensome alternative to deposing a high-level executive.  Such alternatives allow "plaintiffs' rights [to] be fully protected as well as those of [the executive]," and allow "an orderly discovery process [to] be best served[.]" *Mulvey*, 106 F.R.D. at 366; *see also Patterson*, 281 F.3d at 682; *Baine*, 141 F.R.D. at 334-35; *Liberty Mutual*, 10 Cal. App. 4th 1289-90; *Colonial Capital Co. v. General Motors*, 29 F.R.D. 514, 518 (D. Conn. 1961) (granting CEO of General Motors's request to answer

---

[5] Were the Court to order that the deposition of any of the executives should go forward now, there clearly should be strict limitations on the time period for the depositions and the scope of permissible topics.  There is no reason that these depositions could not be completed in an hour or two at most.  In addition, in order to protect against inefficiency and harassment, the topics to be covered with these witnesses in the event a deposition is ever allowed should be limited, and should be set forth in advance.  *See, e.g., WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, 17 (D. Cal. 2007) (limiting deposition of former executive to certain enumerated topics).

interrogatories in lieu of deposition "to minimize the amount of time he must take from his duties").

In making her ruling, Magistrate Judge Bowler recognized that most of the questions that the Government claims necessitate the deposition of Abbott executives will likely be answered in a series of 30(b)(6) depositions that the Government already has noticed.  (Ex. A at 122.)[6] Magistrate Judge Bowler followed all relevant federal precedent when she required the Government to exhaust less burdensome discovery before troubling an apex executive.  This decision was not clear error; indeed, in the face of such strong precedent, it would have been clear error to decide otherwise.

## CONCLUSION

Because the Government has not shown that Messrs. White, Gonzalez, Burnham or Hodgson has unique or superior personal knowledge of any issue relevant to this litigation, and because it has not exhausted other, less-burdensome means to gather relevant discovery, the Court should overrule the Government's objections to Magistrate Judge Bowler's January 31, 2008 decision awarding a protective order.

---

[6] The Government claims that, at oral argument, Abbott raised a "new" argument that 30(b)(6) depositions are a less burdensome avenue of discovery that should be exhausted before allowing an apex deposition.  The Government's own briefing below belies this allegation, however.  (Dkt. 4736 at 16 ("Abbott asserts . . . before a party is permitted to conduct an apex deposition, it must first pursue other avenues, such as . . . 30(b)(6) designees[.]") (internal quotation marks omitted).)

Dated:  February 27, 2008                           Respectfully submitted,


                                                     /s/ Brian J. Murray


                                                    James R. Daly
                                                    Jason G. Winchester
                                                    Brian J. Murray
                                                    JONES DAY
                                                    77 W. Wacker Dr., Suite 3500
                                                    Chicago, Illinois  60601-1692
                                                    Telephone: (312) 782-3939
                                                    Facsimile:  (312) 782-8585

                                                    R. Christopher Cook
                                                    David S. Torborg
                                                    JONES DAY
                                                    51 Louisiana Avenue, N.W.
                                                    Washington, D.C.  20001-2113
                                                    Telephone:  (202) 879-3939
                                                    Fax:  (202) 626-1700

                                                    *Attorneys for Abbott Laboratories Inc., Miles
                                                    D. White, Duane L. Burnham, and Richard A.
                                                    Gonzalez*



                                                    /s/ Robert L. Michels
                                                    Robert L. Michels
                                                    WINSTON & STRAWN LLP
                                                    35 W. Wacker Dr.
                                                    Chicago, Illinois 60601
                                                    Telephone: (312) 558-5600
                                                    Facsimile:  (312) 558-5700

                                                    *Attorney for Thomas R. Hodgson*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on February 27, 2008, the foregoing
RESPONSE OF ABBOTT LABORATORIES INC., MILES D. WHITE, DUANE L.
BURNHAM, THOMAS R. HODGSON, and RICHARD A. GONZALEZ IN OPPOSITION TO
THE UNITED STATES' OBJECTIONS TO THE JANUARY 31, 2008 ORDER BY
MAGISTRATE JUDGE BOWLER was served upon all counsel of record in this action
electronically by posting a true and correct copy of same via Lexis-Nexis.


/s/ Brian J. Murray


CHI-1634115v1