UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )  MDL DOCKET NO. 1456 )  )  Civil Action No. 06-CV-11337 )  Lead Case No. 01-CV-12257 |
| THIS DOCUMENT RELATES TO: *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc., et al., v. Abbott Laboratories, Inc., et al.* | )  )  Judge Patti B. Saris )  )  Chief Magistrate Judge Marianne B. Bowler |

**ABBOTT LABORATORIES INC.'S RESPONSE TO UNITED STATES' OBJECTIONS TO MAGISTRATE JUDGE BOWLER'S RULINGS REGARDING ACYCLOVIR AND CONFIDENTIALITY DESIGNATIONS**

In its third set of objections relating to a series of rulings issued by Magistrate Judge Bowler on January 31, 2008, the Government complains about Judge Bowler's denial of the Government's motion to compel Abbott (i) to produce documents relating to acyclovir before this Court has an opportunity to decide Abbott's pending motion to dismiss all acyclovir-related claims; and (ii) to review its entire production (roughly 1,000,000 pages) and reassess all of its confidentiality designations. As with all of the Government's other objections, these too are invalid and should be overruled.

**I.     STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a district judge shall only "modify or set aside any portion of the magistrate judge's order" if it is "found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A magistrate judge's order is "clearly erroneous" only when the reviewing court has a "definite and firm conviction that the magistrate judge made a mistake." *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 6 (D.R.I. 2004). In conducting its clear error review, the Court should refrain from second-guessing the magistrate judge's pre-trial discovery rulings. *Id.*

**II.   ARGUMENT**

    **A.   Magistrate Judge Bowler Did Not Commit Clear Error In Denying The Government's Motion to Compel Acyclovir Documents.**

After conducting 11 years of one-sided, secret investigation, the Government elected to intervene in this action on March 17, 2006 as to only four products (sterile water, vancomycin, dextrose, and sodium chloride). Thereafter, Ven-a-Care (the relator) sought and was granted leave to amend its own underlying complaint to conform to the Government's complaint-in-intervention – i.e., to move forward solely on the four charged products and thereby to drop its claims as to all other products, including acyclovir. (*See* Ex. A.) On June 4, 2007, however, the Government purported to amend its own complaint-in-intervention to add claims relating to acyclovir. (Dkt. No. 4281.) Abbott has moved to dismiss the first amended complaint on a number of grounds, including that the Government cannot properly intervene in any claims related to acyclovir in this case, because Ven-a-Care dropped all such claims months ago. (*See* Dkt. No. 4469.) Abbott's motion to dismiss is fully briefed and was argued before this Court on November 5, 2007.

Abbott has agreed to produce to the Government all documents relating to acyclovir (or any other Abbott drug product) that fall within one of the cross-cutting categories identified by Magistrate Judge Bowler (including any documents that relate to AWP or "spread"). Abbott objected, however, to the Government's demand that Abbott search for and produce transactional sales data and other acyclovir documents and information that have nothing to do with these cross-cutting issues. In Abbott's view, such documents are wholly irrelevant to this case, because the Government has no valid claims relating to acyclovir. There is no dispute that Abbott would be prejudiced if it were forced to incur the burden and expense of collecting, reviewing, and producing all of these documents, only to have this Court rule (as it should) that

the Government's purported acyclovir claims must be dismissed. Recognizing this fact, Magistrate Judge Bowler denied the Government's motion to compel production of these acyclovir documents, with the proviso that her decision could be revisited if this Court denies Abbott's motion to dismiss. (*See* 1/31/08 Hrg. Tr., Obj. Ex. 1, at 48-49.)[1]

Though the Government complains about this ruling, dissatisfaction is not the standard; rather, the Government must establish that Judge Bowler's ruling is clear legal error. This the Government has not done, and cannot do. The Government made the decision to intervene in this case on only four products (not including acyclovir) and then to acquiesce in Ven-A-Care's amendment of its own underlying complaint to drop all claims related to drugs other than those four the Government elected initially to pursue. Having made these strategic decisions, the Government cannot resurrect acyclovir claims at this late date, and ought not be heard to demand extensive discovery about drugs not properly at issue in this case. Judge Bowler's decision was not clear error, and it should stand.

B. **Magistrate Judge Bowler Did Not Commit Clear Error In Denying The Government's Motion to Compel Abbott To Review The Confidentiality Designations For Its Entire Production.**

In yet another attempt to heap unnecessary burden and expense on Abbott, the Government asked Judge Bowler (and it now asks this Court) to order Abbott to go back through every document it has produced since this case began (about 1 million pages) and reassess its confidentiality designations. (Obj. at 6-15.) Judge Bowler properly denied this request, and her decision was not clear error. The Government's objections accordingly should be denied.

*First*, the Government's blanket demand for a wholesale re-designation of *all* of Abbott's documents is a violation of the Protective Order, and must be rejected on that basis alone. If the

---

[1] Rather than inundate the Court with duplicative exhibits, Abbott cites where possible to materials already appended to the Government's objections as "Obj. Ex. ___."

Government wishes to contest Abbott's confidentiality designation as to any particular document, then the proper course is to identify such objection, in writing, "*specifying the information in issue and its grounds for questioning the designation*." (Protective Order, Obj. Ex. 4, at ¶ 17) (emphasis added).) In the event of a disagreement, the parties "shall try first to dispose of such dispute in good faith on an informal basis." (*Id.*) This procedure is more than adequate, and it has been employed by the parties numerous times in the past – in circumstances when the Government has presented specific documents to Abbott that it wished to append to briefs or other court filings. In those instances, as the Protective Order envisions, Abbott has been able to review the Government's specific objections to specific documents, and it has on certain occasions agreed to alter confidentiality designations in light of those expressed concerns.

Here, by contrast, the Government simply makes a shotgun objection to all of Abbott's designations an approach was considered and rejected in *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 529 F. Supp. 866 (E.D. Pa. 1981). In *Matsushita*, plaintiffs moved the court to de-designate millions of pages of discovery marked confidential. *See id*. at 893. Plaintiffs asserted that, merely by contesting the need for confidentiality of all documents in a blanket fashion, they shifted the burden to defendants to justify confidentiality on a document-by-document basis. *See id*. The court disagreed, noting that:

> [T]he proposed procedure would effect an unintended metamorphosis of [the applicable protective order], for there is a qualitative difference between sustaining the confidentiality of a single document at the time of its designation and sustaining the confidentiality of hundreds of thousands of documents…We conclude that wholesale declassification cannot rationally be sustained without reviewing each of the countless separate documents or at least the many discrete categories which constitute the mass of protected documents.

*Id.*  Like the plaintiffs in *Matsushita*, the Government's proposed approach would effectively rewrite the Protective Order that has governed this case from the beginning.  This, the Court should not allow.

*Second*, the Government has no support for its claim that Abbott has abused the process defined in the Protective Order for designating materials as confidential.  Designations are indeed made by counsel, based upon interviews with personnel at Abbott and Hospira about current business practices.  Based upon the information provided, Abbott's counsel designated as HIGHLY CONFIDENTIAL contracts, contract-related materials, and similar documents, the disclosure of which would cause the companies to suffer competitive harm.  CONFIDENTIAL documents included internal Abbott documents containing commercially sensitive information.  Abbott did not designate every document under the Protective Order, as the Government falsely implies.  For instance, Abbott did not designate as confidential its List Price catalogs, blank bid sheet forms, documents sent to industry publications, and documents sent to third parties other than customers, to name just a few categories.  The few documents that the Government cherry picks from a production of about one million pages and appends to its objections change nothing.  (Obj. Ex. 9.)  Indeed, when the Government has raised particular documents with Abbott in the past (as the Protective Order requires), Abbott has examined the documents and has often agreed to alter its designations – proving that the mechanism in place under the Protective Order is more than adequate to allow the parties to address any disputes over confidentiality designations on particular documents.

The Government argues, based on certain comments from this Court in the context of under seal filings, that Abbott should simply remove any confidentiality designation from documents that are more than five to seven years old.  (Obj. at 6-15.)  It is not the case that

documents lose their confidential character simply by virtue of age, however.  For instance, an Abbott long range plan from the 1990's might very well contain sensitive information that would give competitors an advantage in seeing how Abbott viewed the marketplace for its products.  Similarly, pricing documents might well remain confidential for more than five years if the price was relatively static, such that disclosure of older documents would effectively reveal current prices.  In considering a similar request to that made here by the Government, the court in *Matsushita* noted that "there is sense in the argument, which defendants urge, that old business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses.  It would appear that, in the hands of an able and shrewd competitor, old data could indeed be used for competitive purposes."  529 F. Supp. at 891-92;  *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 16 (D.D.C. 2000) ("Information does not become stale merely because it is old…such insights would allow a competitor to determine the direction of the company's past and current efforts in research and development (and thus beat them to new advancements).");  *Timken Co. v. United States Customs Serv.*, 1983 WL 486422 (D.D.C. 1983) (finding that the release of pre-1973 information in 1981 would cause substantial harm to the competitive position of the companies from which it was obtained).  This case law again underscores that the appropriate means to address confidentiality is on a document-by-document basis, as the Protective Order directs, as opposed to the wholesale re-designation demanded by the Government.

*Third*, the Government has not established any sort of prejudice that could justify the extraordinary relief it seeks.  Although the Government has made the vague and unsupported assertion that it feels inhibited in its ability to prepare for trial by Abbott's confidentiality designations, it has offered no specifics.  And it does not even argue that whatever concerns it

might have could not be adequately addressed by following the procedures outlined in the Protective Order.  On the other hand, granting the Government's motion would impose a tremendous burden upon Abbott to review about one million pages (plus scores of electronic data) and reassess its confidentiality designations.  This would be extraordinarily time-consuming and woefully inefficient.  It would require Abbott to review thousands of documents that are of little or no interest to the Government.  And the results of any review by Abbott would doubtless start this whole process over from the beginning, as the Government is sure to continue in its refusal to acknowledge any confidentiality designation Abbott makes.  The prejudice to Abbott from the Government's proposal far outweighs any possible benefit (particularly in light of the procedure already in place under the Protective Order for challenging confidentiality designations), and this proposal therefore should be rejected.

*Finally*, the Government makes far too much of a recent ruling by the Pennsylvania court in a different matter, relating to confidentiality designations.  The Court in that matter merely admonished that information more than 5 years old should be designated as confidential only if it reflects current practices, and directed defendants to review the documents designated as confidential in their productions and de-designate materials that are no longer confidential.  (*See* Obj. Ex. 10 at 4-5.)  Abbott believes that its confidentiality designations in that case, as in this one, were properly made in the first instance.  In response to the Pennsylvania court's order, Abbott has de-designated certain documents in its production, and to the extent that those documents are relevant to this case and have been produced here, they will be de-designated in this matter as well.  (*See* Obj. Ex. 12.)

In addition, Judge Bowler specifically instructed Abbott to guard against any over-designation of documents in future productions, and Abbott certainly will comply.  As Judge

Bowler properly recognized, however, there is no justification for forcing Abbott to go back through the million pages of its production to reassess its confidentiality designations. The Government has done nothing to cast this decision as clear error. To the contrary, Judge Bowler's ruling was correct and it should stand.

### III.   CONCLUSION

For the reasons discussed above, the Government's objections to Magistrate Judge Bowler's January 31, 2008 rulings relating to acyclovir discovery and confidentiality designations should be overruled.

Dated:  February 27, 2008                                    Respectfully submitted,


                                                              /s/ Brian J. Murray

                                                             James R. Daly
                                                             Jason G. Winchester
                                                             Brian J. Murray
                                                             JONES DAY
                                                             77 W. Wacker Dr., Suite 3500
                                                             Chicago, Illinois  60601-1692
                                                             Telephone: (312) 782-3939
                                                             Facsimile:  (312) 782-8585

                                                             R. Christopher Cook
                                                             David S. Torborg
                                                             JONES DAY
                                                             51 Louisiana Avenue, N.W.
                                                             Washington, D.C.  20001-2113
                                                             Telephone:  (202) 879-3939
                                                             Fax:  (202) 626-1700

                                                             *Attorneys for Abbott Laboratories Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that on February 27, 2008, the foregoing *Abbott Laboratories Inc.'s Response To United States' Objections To Magistrate Judge Bowler's Rulings Regarding Acyclovir And Confidentiality Designations* was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

                                                 /s/ Brian J. Murray