# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____ )
IN RE PHARMACEUTICAL INDUSTRY          )
AVERAGE WHOLESALE PRICE                 )          MDL NO. 1456
LITIGATION                              )          Civil Action No. 01-12257-PBS
_____)
                                        )          Judge Patti B. Saris
                                        )
THIS DOCUMENT RELATES TO:               )
                                        )
*The City of New York v. Abbott Labs., et al.*     )
(S.D.N.Y. No. 04-CV-06054)              )
*County of Suffolk v. Abbott Labs., et al.*        )
(E.D.N.Y. No. CV-03-229)               )
*County of Westchester v. Abbott Labs., et al.*    )
(S.D.N.Y. No. 03-CV-6178)              )
*County of Rockland v. Abbott Labs., et al.*       )
(S.D.N.Y. No. 03-CV-7055)              )
*County of Dutchess v. Abbott Labs., et al.*       )
(S.D.N.Y. No. 05-CV-06458)             )
*County of Putnam v. Abbott Labs., et al.*         )
(S.D.N.Y. No. 05-CV-04740)             )
*County of Washington v. Abbott Labs., et al.*     )
(N.D.N.Y. No. 05-CV-00408)             )
*County of Rensselaer v. Abbott Labs., et al.*     )
(N.D.N.Y. No. 05-CV-00422)             )
*County of Albany v. Abbott Labs., et al.*         )
(N.D.N.Y. No. 05-CV-00425)             )

[Caption Continues on Next Page]

## JOINT MOTION TO EXTEND THE TARGETED FEDERAL UPPER
## LIMIT ("FUL") DISCOVERY PERIOD PROVIDED FOR IN CMO 33 BY 90 DAYS

*County of Warren v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00468) )
*County of Greene v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00474) )
*County of Saratoga v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00478) )
*County of Columbia v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00867) )
*Essex County v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00878) )
*County of Chenango v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00354) )
*County of Broome v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00456) )
*County of Onondaga v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00088) )
*County of Tompkins v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00397) )
*County of Cayuga v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00423) )
*County of Madison v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00714) )
*County of Cortland v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00881) )
*County of Herkimer v. Abbott Labs. et al.* )
(N.D.N.Y. No. 05-CV-00415) )
*County of Oneida v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00489) )
*County of Fulton v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00519) )
*County of St. Lawrence v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00479) )
*County of Jefferson v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00715) )
*County of Lewis v. Abbott Labs., et al.* )
(N.D.N.Y. No. 05-CV-00839) )
*County of Chautauqua v. Abbott Labs., et al.* )
(W.D.N.Y. No. 05-CV-06204) )
*County of Allegany v. Abbott Labs., et al.* )
(W.D.N.Y. No. 05-CV-06231) )
*County of Cattaraugus v. Abbott Labs., et al.* )
(W.D.N.Y. No. 05-CV-06242) )

*County of Genesee v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06206)                    )
*County of Wayne v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06138)                    )
*County of Monroe v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06148)                    )
*County of Yates v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06172)                    )
*County of Niagara v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06296)                    )
*County of Seneca v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06370)                    )
*County of Orleans v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06371)                    )
*County of Ontario v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06373)                    )
*County of Schuyler v. Abbott Labs, et al.*                    )
(W.D.N.Y. No. 05-CV-06387)                    )
*County of Steuben v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06223)                    )
*County of Chemung v. Abbott Labs., et al.*                    )
(W.D.N.Y. No. 05-CV-06744)                    )
                                        AND    )
*County of Nassau v. Abbott Labs., et al.*                    )
(E.D.N.Y. No. 04-CV-5126)                    )
_____)

The parties hereby jointly move the Court to amend the operative case management order (CMO # 33) to extend the targeted discovery period for the Designated Federal Upper Limit ("FUL") Drugs by 90 days.  *See* Case Management Order No. 33, Sept. 14, 2007, at ¶ 5 [Docket No. 4745].  As described more fully below, despite the parties' efforts to complete the targeted FUL fact discovery within the time allotted under CMO 33, it does not appear feasible to do that by the current deadline of March 31, 2008.  Issues have arisen that must be resolved before that targeted FUL fact discovery can be completed, and those issue will require additional time to resolve.  Accordingly, the parties request that all dates contained in Paragraph 5 of CMO # 33 be extended by 90 Days.[1]

In support of their motion, the parties state as follows:

**I.      CMO #33**

The Court entered CMO #33 on September 14, 2007.  Therein the Court adopted, *inter alia*, procedures for targeted discovery on drugs subject to Federal Upper Limits ("FULs").  See CMO #33 at ¶5.

Those procedures provided that by October 1, 2007, plaintiffs and defendants would each as a group identify five (5) drugs by chemical name for a total of ten drugs (the "Designated FUL Drugs").  *Id.* at ¶5(a).  The parties did this in timely fashion.  The Designated FUL Drugs are:

GCN 00386     ENALPRIL MALEATE 20MG Tab, VASOTEC 20MG Tab

GCN 037758   LORAZEPAM 1 MG Tab, ATIVAN 1 MG Tab

GCN 04560     KLONOPIN .5MG Tab, CLONAZEPAM .5MG Tab

---

[1] Hoffmann-La Roche Inc. and Roche Laboratories Inc. do not join in this motion because they are not subject to FUL discovery.

GCN 05037    ALBUTEROL 90 MCG Inhaler, PROVENTIL 90 MCG Inhaler

GCN 05039    ALBUTEROL .83MG/ML Sol., AIRET .83MG/ML Sol., PROVENTIAL .83MG/ML Sol.

GCN 05131    METROPOLOL 100MG Tab, LOPRESSOR 100MG Tab

GCN 09089    CEFADROXIL 500MG Cap, DURICEF 500MG Cap

GCN11673    RANITIDINE 150MG Tab, ZANTAC 150MG Tab

GCN 17297    ISOSORBIDE MN 60MG Tab SA, IMDUR 60MG Tab SA, ISOTRATE ER 60MG Tab SA

GCN 48262    CEFADROXIL 500MG Cap, DURICEF 500MG Cap, ULTRACEF 500MG Cap

## II.   PLAINTIFFS' EFFORTS TO DATE TO COMPLETE TARGETED FUL FACT DISCOVERY

### A.   Discovery Served by Plaintiffs

Having complied with the Court's order to select the Designated FUL Drugs by October 1, 2007, the time was ripe for the targeted FUL discovery to commence.

Plaintiffs served their first request for the production of documents on all defendants on October 18, 2007.   Defendants' responses were received on or about November 20, 2007. These first requests seek, *inter alia*, production regarding: (a) the prices defendants reported to the publishing compendia; (b) how such prices were calculated; (c) defendants' prices (initial and net) to their customers (wholesalers, retail chains, GPOs, specialty pharmacies, etc) (d) defendants' transactional and sales data, including all data on chargebacks, commercial rebates, other consideration paid to customers; (e) defendants' AMPs.

Plaintiffs served their second requests for the production of documents to all GCN defendants except AstraZeneca on November 6, 2007.  Defendants' responses were served on December 10, 2007.  Plaintiffs served their second requests for production of documents to

AstraZeneca on February 12, 2008.  AstraZeneca's response is due March 13, 2008. These second requests seek, *inter alia*, production regarding topics specific to the FUL generally, its impact on defendants' price setting and reporting practices, its use (if any) in defendants' sales and marketing efforts.

On January 31, 2008, plaintiffs filed a Motion to Compel the Production of Data for the Designated FUL Drugs from Defendants.  On February 12, 2008, AstraZeneca wrote to plaintiffs seeking clarification whether the motion to compel had been directed to it, because plaintiffs had not served their second request for production of documents on AstraZeneca.  Plaintiffs responded that same day that their motion to compel concerned the sales and transactional data requests in plaintiffs' first request for production of documents, which had been served on AstraZeneca.  AstraZeneca filed its opposition to plaintiffs' motion to compel on February 15, 2008.  Plaintiffs have indicated an intent to submit a reply brief, and that they will not object in the event AstraZeneca seeks to submit a sur-reply brief.

Plaintiffs began meeting and conferring with defendants regarding their responses to the first and second document requests in December 2007.

Plaintiffs served their general 30(b)(6) notices on December 7, 2007.  Plaintiffs served revised 30(b)(6) notices on December 21, 2007.

Plaintiffs served their 30(b)(6) notices related to defendants' transactional and sales data on December 18, 2007.

Plaintiffs have met and conferred with all defendants—at least once and in most cases numerous times-- regarding the above discovery.  The status of each individual defendant's production is described in detail below.

**B.      Status as to the Individual Defendants**

**<u>AstraZeneca</u>**

AstraZeneca objects to plaintiffs' request for discovery regarding its branded drug Arm-A-Med albuterol 0.83 mg/ml, the only AstraZeneca drug plaintiffs seek for purposes of targeted FUL fraud allegations discovery, for reasons set forth in AstraZeneca's opposition to plaintiffs' January 31, 2008, motion to compel certain discovery regarding the Designated FUL drugs.  The parties have had telephonic meet-and-confers regarding the issue.  Based on its objections AstraZeneca has not produced any documents or transactional data to plaintiffs in connection with the targeted FUL discovery.  AstraZeneca agreed not to object to plaintiffs' attempt to submit a reply brief on the motion to compel, provided plaintiffs do not object in the event AstraZeneca seeks to submit a sur-reply.  That motion will be fully briefed as of February 29, 2008 (unless AstraZeneca seeks leave to file a sur-reply in which case the motion will not be fully briefed until that submission is filed).

On the subject of depositions, plaintiffs have reviewed all available transcripts of depositions taken to date of AstraZeneca witnesses.  Upon completion of this review, plaintiffs' counsel concluded that no further deposition testimony would be needed for FUL discovery purposes if the parties could agree upon an affidavit or stipulation that AstraZeneca could provide to fill minor "holes" in the testimony that would then render the prior testimony adequate for plaintiffs' FUL discovery purposes.  AstraZeneca is willing to consider this approach provided the parties can agree on the material to be included in the affidavit or stipulation.  Plaintiffs will be supplying AstraZeneca with the proposed affidavit or stipulation presently.

**Barr Laboratories, Inc.**

Plaintiffs' counsel met and conferred with Barr regarding its responses to plaintiffs' discovery requests on December 10, 2007, and thereafter exchanged correspondence to confirm the initial scope of production to which the parties agreed.

Thereafter, Barr produced two (2) boxes of materials related to Cefadroxil on December 27, 2007.  Barr's supplemental production of documents and data was produced on February 29, 2008 (the date of this Joint Motion). Given that these documents and data were just received, plaintiffs have yet to review either for scope or completeness.

Barr produced transactional and sales data related to Cefodroxil on December 27, 2007. Plaintiffs reviewed this data and, on February 4, 2008, wrote to Barr counsel requesting answers to some initial questions regarding the Barr data.  Barr's counsel promptly responded on February 7, 2008, and indicated that they were working on getting answers to plaintiffs' questions.  On February 20, 2008, plaintiffs' counsel had yet to receive a response from Barr's counsel and followed up on its request for answers to the initial questions regarding Barr data. Barr's response was that they were still waiting for answers to two of our initial questions regarding the Barr data.  As of the date of this motion, that is where matters stand.

In addition, Barr's initial production of transactional data did not include data for any GCN drug other than Cefadroxil.  Plaintiffs moved to compel further production on January 31, 2008 but thereafter was informed by Barr Counsel that plaintiffs' motion was unnecessary as to Barr because Barr had committed to supplementing its initial production to include data and documents for the other Barr GCN Drugs.  Plaintiffs thereafter withdrew their motion as to Barr.

With regard to plaintiffs' deposition notices, Barr agreed to produce copies of all prior depositions that had been taken of its corporate representatives.  Those depositions were

produced on February 12, 2008.  Barr produced the Exhibits to those depositions on February 21, 2008.  Plaintiffs' counsel is now reviewing these depositions and exhibits to determine what additional testimony is required for the FUL focused discovery.  Upon conclusion of that review, plaintiffs and Barr have agreed to set mutually convenient dates for depositions.

**Bristol-Myers Squibb Company**

BMS has produced a substantial amount of transactional data to plaintiffs on a rolling basis which plaintiffs and their IT consultants are in process of reviewing to ensure completeness.  Thereafter, plaintiffs will contact BMS to schedule any necessary BMS transactional data deposition.

BMS has also made available to plaintiffs prior BMS depositions taken in AWP litigation. Plaintiffs are reviewing these to determine whether any additional testimony is needed from BMS witnesses for FUL focused discovery purposes.  This process is expected to be complete by March 21, 2008.

**Dey, L.P.**

Plaintiffs' first 30(b)(6) notice set a January 24, 2008, date for Dey's deposition. Plaintiffs' second 30(b)(6) notice (related to Dey's transactional and sales data) set a March 5, 2008, date for Dey's deposition.  Dey's designee for both depositions is the same person (Dey's chief financial officer).  However, this employee was not available for deposition on the noticed date of January 24, 2008.  After discussion of the of the witness' availability, plaintiffs' counsel and Dey's counsel agreed that the deposition of Dey's corporate representative would take place on March 5-6, 2008.  Dey's counsel also agreed to supply plaintiffs' counsel with several depositions of Dey's corporate designee taken in other, similar matters in an effort to streamline

plaintiffs' deposition.  Dey's counsel supplied those depositions on January 23, 2008, and plaintiffs' counsel is in the process of reviewing them.

On February 22, 2008, Dey informed plaintiffs that the depositions previously scheduled for March 5-6, 2008, could not proceed as planned because of a conflict which had arisen in the witness' schedule.  After counsel for plaintiffs and Dey conferred, it was determined that the earliest possible date that the witness could appear, convenient for both sides, was during the week of April 13, 2008.  As such, counsel for plaintiffs and Dey agreed to jointly seek additional time to complete FUL discovery as to Dey.

Dey has produced sales and transactional data to plaintiffs. On January 25, 2008 plaintiffs provided Dey with a discrete list of issues that needed to be addressed in order for plaintiffs to evaluate the completeness of the data provided and its interpretation.  Plaintiffs requested a meet and confer, which occurred on January 31, 2008.  Dey agreed to provide additional interpretive information and did so on February 1, 2008.  Plaintiffs now are working with this additional information to confirm the completeness of Dey's production and to otherwise analyze the Dey data.

### ETHEX Corporation

On December 10, 2007, ETHEX produced transactional data for the sole FUL-related NDC specified in Exhibit A to Plaintiffs' Second Set of Requests for Production of Documents. Upon plaintiffs' request of January 17, 2008, ETHEX also produced transactional data for additional NDCs that were in the same GCN, but were not specified in the First Amended Consolidated Complaint or in plaintiffs' discovery requests.  On January 23, 2008 plaintiffs presented ETHEX with a series of questions regarding the data production.  ETHEX and

plaintiffs worked together to resolve all but two of these questions, which remain outstanding. ETHEX and plaintiffs are committed to resolve these outstanding questions in good faith.

The parties have reached a tentative agreement on the scope of documents to be produced by ETHEX and continue to cooperate in good faith to ensure a timely production in advance of any deposition.  ETHEX has not made a large-scale document production in any AWP litigation and is working diligently to identify and produce documents as expeditiously as possible with the resources at its disposal.

No ETHEX depositions have yet been scheduled given the status of ETHEX's discovery responses and the parties' ongoing dialogue regarding same.

### GSK

GSK has represented to plaintiffs that it has produced all transactional and sales data for all GSK drugs at issue in this litigation, including those that are the subject of the targeted FUL discovery.  As of February 22, 2008, plaintiffs and their IT consultants concluded their review of the produced databases and are now poised to confirm with GSK their understanding of the databases' functions.  GSK has provided a detailed stipulation, and a detailed set of documents, concerning how to use the data, and we plan to discuss the issues further with GSK to determine if any further information about the data is necessary.

On the subject of depositions, plaintiffs have reviewed all GSK depositions to date taken in any AWP litigation and have determined that an additional GSK deposition would not be needed at this juncture for purposes of the targeted FUL discovery so long as GSK was amenable to providing an affidavit or stipulation that would fill the limited gaps of testimony that plaintiffs have identified.   We plan to identify and discuss some limited gaps in the testimony with GSK

and to see whether GSK is amenable to providing an affidavit or  stipulation that would fill such limited gaps.

**Ivax/Teva**

Ivax and Teva are represented by the same counsel at Kirkland Ellis.  The description of discovery status as to Ivax below applies equally to Teva.  Documents and transactional data for both Teva and Ivax have been produced simultaneously.

 Plaintiffs received AMP data for Ivax and Teva on or about January 23, 2008.  Due to technical issues accessing their clients' databases, counsel for Ivax and Teva reported that there would be a delay in producing the requested sales and transactional data.  Plaintiffs received an initial production of transactional data for Ivax and Teva on or about February 4, 2008 and a supplement on February 7, 2008.   The Ivax transactional data came in 29 files consisting of approximately two gigabits of transactional information from 2000 to 2005 in Excel spreadsheets and Microsoft Access databases.  The Teva transactional data came in 22 files consisting of approximately one gigabit of transactional information from 1997 to 2005 in Microsoft Access databases.  Plaintiffs' IT consultants now are reconciling the second production with the first production in order to analyze the data in the aggregate.

On approximately January 23, 2008, counsel for Ivax and Teva indicated that seventy boxes plus five (5) 5-double-drawer file cabinets (approximately another fifty boxes) of responsive documents for the entire scope of claims against Ivax and Teva would be made available for review at their offices in Washington, D.C., the following week.  The next week, on January 29, 2008, plaintiffs' counsel sent a team of lawyers and paralegals (five persons in total) to review these materials.  The team of five conducted reviews from January 29 to February 1, 2008, and again the following week from February 6 to February 8, 2008.  Two others from

plaintiffs' team returned a third week for a final day of review.  Plaintiffs' counsel identified

substantial numbers of documents for copying as a result of this review.  Those documents have

not yet been delivered to plaintiffs.

In addition to the above, on approximately February 7, 2008, plaintiffs received a hard

drive consisting of 687,284 Ivax document images and 576,237 Teva document images in

response to plaintiffs' requests.   Plaintiffs are reviewing those materials.

On the subject of depositions, Ivax designated its first witness for deposition on February

8, 2008 and then was constrained to cancel that deposition because the witness, Trish Safras,

started a new job.  Plaintiffs await a new date for Ms. Safras' deposition.  Teva designated Mr.

John Wodarczyk as its initial corporate designee in response to plaintiffs' Revised 30(b)(6)

notice and Mr. Wodarczyk's deposition was scheduled for February 22, 2008.  On February 21,

2008 counsel for Teva cancelled Mr. Wodarczyk's deposition due to the witness' illness. That

deposition has not yet been rescheduled, nor have dates yet been provided for any other

Teva/Ivax witnesses.  Plaintiffs and Teva/Ivax are committed to working together in good faith

to schedule, or re-schedule all depositions.

### **Mylan**

Plaintiffs' second request for documents set forth a schedule of NDCs associated with the

designated FUL drugs as to which plaintiffs sought data and documents.  Mylan made its initial

production of transactional and sales data to plaintiffs in response to plaintiffs' second request on

December 7, 2007 (which was a date jointly agreed to by counsel for plaintiffs and Mylan).

Consistent with the joint agreement of counsel, Mylan's December 7 production only included

data corresponding to the NDCs specifically listed in plaintiffs' second request.

Mylan's December 7 production did not include transactional data for every NDC that corresponded to the GCN drugs and Mylan took the position that it was not obligated to produce transactional data that did not correspond to the GCNs at issue.  The other defendants to which FUL discovery was pending took this position as well.  Plaintiffs filed a motion to compel a broader data production on January 31, 2008.  On February 12, 2008, counsel for Mylan agreed to supplement its production to include the data sought, and plaintiffs withdrew their motion as to Mylan.  Mylan will be making a supplemental production in the near future.  Plaintiffs cannot schedule the noticed Mylan transactional data deposition until they have received and had an opportunity to work with the supplemental Mylan data production.

As to plaintiffs' first request, counsel for plaintiffs and Mylan have participated in several meet and confer conferences to discuss the scope of plaintiffs' requests and certain confidentiality concerns.  These meet and confer sessions resulted in an agreement between counsel as to the issues addressed and Mylan has agreed to make production of responsive documents within the next two or three weeks (or by March 21, 2008).

On the subject of depositions, Mylan agreed to provide plaintiffs with copies of Mylan 30(b)(6) depositions that were taken in any AWP related litigation so that plaintiffs could review these with an eye toward narrowing the scope of the Mylan depositions needed on the FUL discovery front.  Mylan produced such depositions to plaintiffs on January 31, 2008. Plaintiffs have now completed their review of them and have concluded that the scope of testimony needed for FUL discovery purposes can be narrowed somewhat.  Plaintiffs now will work with Mylan to schedule the necessary 30(b)(6) deposition(s) for a mutually convenient date or dates in the short term.

**Par Pharmaceutical, Inc**.

Par's initial production of transactional data was made on January 9, 2008.  Plaintiffs' counsel and their IT consultants reviewed this data and on January 30, 2008, communicated a number of initial questions to Par's counsel.  On February 1, 2008, Par's counsel informed plaintiffs' counsel that a response would be forthcoming.  Such response was provided on February 15, 2008.  In light of that response, plaintiffs' counsel are now making the necessary computations with Par's data.  In addition, Par's response revealed that certain documents relevant to plaintiffs' work with the Par IT data are available only in hard copy.  Plaintiffs will be scheduling a mutually convenient time to review these documents.   In the interim, plaintiffs will now work with counsel for Par to set a mutually convenient time for the Par transactional data deposition.

On the subject of non-transactional depositions, Par agreed to provide plaintiffs with copies of all prior depositions taken of Par witnesses in AWP-related litigation.  Those transcripts were produced on January 9, 2008, in a non-searchable format and without the exhibits thereto.  In response to a communiqué from plaintiffs on this point, searchable versions of the depositions with exhibits were produced on January 16, 2008.  Plaintiffs' counsel reviewed the depositions and concluded that there were only a few discrete subjects where further testimony would be needed in connection with the FUL focused discovery, at a minimum.  Plaintiffs communicated this point to Par counsel and the parties agreed that a deposition on these discrete subjects will take place on March 27, 2008.

Par's initial document production was made on January 9, 2008.  Its first supplemental production was made on February 8, 2008.  Par has informed plaintiffs that it anticipates completing its production of documents in the next two weeks, or by March 14, 2008.

**Purepac**

In its initial discovery responses, counsel for Purepac agreed to produce certain responsive materials.  After a number of brief "meet and confers" and e-mail exchanges, Purepac committed on February 7, 2008, to provide plaintiffs with what it represents to be a "core production" of documents responsive to plaintiffs' discovery requests.  Plaintiffs have yet to receive that production though it is expected imminently.

Purepac also agreed to produce its transactional data to plaintiffs on February 22, 2008.  That data has yet to arrive.

On the subject of depositions and in an effort to streamline, plaintiffs negotiated the production of all prior Purepac depositions and the agreement that these could be used in plaintiffs' case as if they had been taken here.  After reviewing such deposition transcripts which were produced in early January, plaintiffs concluded that they need not take a Purepac 30(b)(6) deposition on the FUL focused issues at this juncture if Purepac would agree to stipulate as to certain facts.  Purepac's counsel has agreed to that in principle and plaintiffs have agreed to supply them with the proposed draft stipulation, which if accepted could eliminate the need for depositions in connection with the FUL focused discovery, at a minimum.

**Roxane Laboratories, Inc.**

Roxane made an initial production of transactional and sales data to plaintiffs on January 30, 2008.  This production did not include data for all Roxane NDCs related to the Designated FUL Drugs.  Plaintiffs filed a motion to compel on January 31, 2008, and on February 12, 2008, Roxane agreed to supplement its transactional data production.  That supplemental production was subsequently made and all Roxane data was reviewed by plaintiffs.  On February 21, 2008, we presented a list of issues with the data which arose during plaintiffs' review.  These issues

have been resolved and Roxane will produce corrected data early next week.  Once these threshold issues are resolved, plaintiffs will work with Roxane to schedule the transaction and data deposition.

On the subject of other Roxane depositions, through a series of meet and confers and exchanges of correspondence, Roxane agreed to provide plaintiffs with copies of the transcripts for all Roxane witnesses who have been deposed in other AWP related litigations.  That production began on January 30, 2008, and was completed the week of February 14, 2008. Plaintiffs are now reviewing these Roxane deposition transcripts with an eye toward narrowing the scope of additional Roxane testimony that will be needed in connection with the FUL focused discovery.  Plaintiffs' counsel and counsel for Roxane have agreed to confer once this review is complete to identify mutually agreeable dates for scheduling any such depositions.

**Sandoz Inc.**

Sandoz has produced over 500,000 pages of documents to plaintiffs on a rolling basis over the past few months and has represented that it plans to supplement that production for any of the targeted GCNs not already included therein.  Plaintiffs are in the process of reviewing these materials to ensure that they are responsive and complete.

On the subject of depositions, plaintiffs' counsel and counsel for Sandoz have set firm dates for five depositions of current and former Sandoz employees in late March and April 2008. These depositions were scheduled in coordination with plaintiffs in other actions, both in state court and before this Court, to reduce burden and increase efficiency.

Sandoz's first production of sales and transactional data arrived on or about February 15, 2008.  Sandoz has represented that this data is complete as to the NDCs attributed to Sandoz in Exhibit A to plaintiffs' second request for the production of documents to Sandoz (and other

GCN defendants) that were agreed to by Sandoz in subsequent discussions with plaintiffs'

counsel.  Plaintiffs are reviewing that production and will be speaking with Sandoz presently to

discuss any initial questions plaintiffs have regarding the produced fields.  Sandoz has agreed to

supplement this production with data relating to any of its products that fall within the targeted

GCNs but which do not appear on Exhibit A.  Thereafter plaintiffs will coordinate with Sandoz

to promptly schedule any necessary Sandoz transactional data depositions.

### Schering-Plough Corp./Warrick

Schering/Warrick has produced transactional and sales data to plaintiffs.

Plaintiffs' initial technical review of that data suggested a few issues concerning its

interpretation and completeness.  These issues were conveyed to Schering/Warrick's counsel in

writing on February 20, 2008, and a meet and confer was requested.  On February 25, 2008, a

meet and confer was scheduled and then completed on February 26, 2008.  Defendant's counsel

has undertaken a technical review of some of the data which has been produced, and Plaintiffs

await the results of defendants' review.  Defendants' counsel has also provided additional

information about the completeness of the data production which Plaintiff is working to confirm

the completeness of the data.  Plaintiffs cannot schedule the noticed Schering/Warrick

transactional data deposition until they have all of the requested transactional data production.

Plaintiffs have also agreed to review previous depositions of defendants' corporate

representatives and data technician in an attempt to further streamline the requested depositions.

On the subject of depositions, Schering/Warrick has agreed that plaintiffs may review all

prior depositions taken in AWP related litigation to determine if further testimony is needed for

FUL discovery purposes.  The parties have not reached any agreement regarding such further

deposition testimony as of the date of this motion.

**<u>Watson</u>**

Plaintiffs received Watson's initial production of transactional data in mid-December 2007.  The production consisted of transactional data for only five of the seven Watson Designated FUL Drugs and only for the period 2002 to 2005 (CMO #33 provides for data from 1997-2005).  Plaintiffs' counsel notified Watson that the transactional data production was incomplete in these regards.  Counsel for Watson agreed to investigate.  Thereafter, and recently, counsel for Watson informed plaintiffs that they were still in the process of gathering transactional data for 2000 and 2001 for the five Watson drugs.

There is the separate issue of producing data for Designated FUL Drugs that were previously owned by Schein.  Watson counsel explained that they had difficulty identifying someone with knowledge to access and query the Schein transactional data for the time period 1997 to 2000.

There is also the separate issue of producing data for Designated FUL Drugs that were previously owned by Rugby.  Counsel for Watson recently informed plaintiffs that they were having difficulty accessing the missing data for the Rugby drugs (two Albuterol GCNs) as Rugby transactions were evidently not transferred to the Watson system, and the products were discontinued around the time of the acquisition of Rugby by Watson.  The parties continue their discussions on these matters and the overall understanding of the transactional data fields.  Once all data has been produced, plaintiffs promptly will request the scheduling of the necessary Watson transactional data deposition.

On the subject of other depositions, Watson has agreed that plaintiffs may review and use all prior Watson depositions in AWP related litigation.  Plaintiffs are reviewing these now to determine if what additional Watson testimony is needed for FUL discovery purposes.

With regard to document production, Watson has produced to plaintiffs all documents and transactional data previously produced to the MDL class plaintiffs and available in electronic form. This production consisted of 26 CDs of information. Watson also informed plaintiffs that there are approximately 25,000 additional pages of documents that have not been scanned on CD. The MDL Class production only includes documents and information concerning two of the seven GCN drugs attributable to Watson. Plaintiffs are presently in negotiations with Watson for document discovery relating to the other Watson GCN drugs.

**<u>Wyeth</u>**

Through numerous meet and confers, plaintiffs and Wyeth have reached agreement on the scope of the transactional and sales data that Wyeth is to produce. Wyeth has yet to produce any such data to plaintiffs, but has promised that such production is imminent. Wyeth's initial effort to make production was thwarted by a technical error that Wyeth informed plaintiffs of on February 12, 2008. Obviously plaintiffs cannot do the work needed on the data front for Wyeth until this production is made. Nor can plaintiffs schedule any Wyeth transactional data deposition.

On the subject of depositions, plaintiffs and Wyeth have exchanged numerous e-mails regarding plaintiffs' need to set firm dates. Wyeth repeatedly has represented that it is endeavoring in good faith to identify employees for these depositions and to secure dates for their depositions. Wyeth has explained that this process has been complicated by the fact that Wyeth is no longer in the generic drug business. As of the date of this motion, no deponents have been identified nor have any depositions been set.

On the subject of documents, plaintiffs and Wyeth have exchanged a number of e-mails through which they reached agreement on the scope of production to be made in response to

plaintiffs' first and second requests and in connection with the FUL focused discovery.  Wyeth has represented that it is in the process of collecting responsive documents but none have yet been produced.

III.   **DEFENDANTS' EFFORTS TO DATE TO COMPLETE TARGETED FUL FACT DISCOVERY**

    A.   **Discovery of the New York Department of Health and Certain of its Key Current and Former Employees.**

On December 7, 2007, defendants served on the New York Department of Health ("NYDOH") a subpoena seeking documents and deposition testimony.  At or about the same time, defendants served subpoenas on three key current and former NYDOH employees – Mary Alice Brankman, Michael Falzano, and Mark Richard Butts.  NYDOH initially told defendants that it had made a substantially overlapping document production in another state court AWP-related action, and invited defendants to obtain and review a copy of that document production before insisting on compliance with their subpoena.  Defendants did so promptly.  After defendants reviewed the production and determined it to be – in their view – inadequate, NYDOH objected to defendants' subpoena for documents and testimony as overly broad, unduly burdensome, and seeking irrelevant information, and refused to produce a single document or to make any witness available to answer to questions in response to defendants' subpoena.  Citing similar grounds, NYDOH also objected on behalf of its three current and former employees who defendants had subpoenaed and refused to make any of them available for deposition.  On February 19, 2008, defendants moved to compel with regard to this discovery.  *See* Defendants Joint Motion to Compel Commissioner of New York State Department of Health and Three Key Witnesses to Comply with Subpoenas and Supporting Memorandum, Feb. 19, 2008 [Docket Nos. 5052-54].  A response to that motion is due on March 4, 2008.

**B.**      **Discovery of the United States Centers for Medicare & Medicaid Services.**

On December 20, 2007, defendants served a document subpoena on the United States Department of Health and Human Services ("HHS") for documents relating to the Centers for Medicare & Medicaid Services' ("CMS") setting and maintaining of the FUL.  Although the subpoena listed a return date of January 21, 2008, counsel for CMS requested an extension until the end of January.  On February 7, 2008, CMS produced fifteen documents to defendants, including thirteen publicly available reports prepared by the HHS Office of Inspector General.  Since that initial production, defendants have negotiated continuously with counsel for CMS to receive additional documents, and have even purchased a license from Medi-Span, one the data providers from whom CMS receives data in setting FULs, to eliminate one of CMS' objections to producing the documents sought.  On February 25 and 27, 2008, CMS produced respectively approximately 1,200 and 3,000 pages of documents.  Defendants are still reviewing these documents to determine whether further productions and/or negotiations will be required to secure full compliance with their subpoena.

Defendants have also cross-noticed the depositions of those CMS witnesses whose depositions were noticed in the *Ven-A-Care ex rel. United States* v. *Abbott Laboratories* matter who documents or prior testimony suggested might have some knowledge about how CMS establishes FULs.  On January 24, 2008, counsel for defendants attended the first day of the deposition of Susan E. Gaston, who testified that she was primarily responsible for setting FULs for a significant part of the 1990s.  She also identified two current CMS employees and one former CMS employee who played a significant part in establishing FULs during the time at issue in this case.  Shortly thereafter, on February 8, 2008, defendants sent a letter to CMS pursuant to the *Touhy* regulation, 45 C.F.R.§ 2.4, requesting the deposition testimony of these

individuals – Cindy Bergin, Gayle Sexton, and Peter Rodler.  Although defendants requested a response to their *Touhy* letter by February 19, 2008, CMS has not responded, and defendants anticipate needing to seek the Court's assistance in obtaining this crucial testimony in the very near term.

>   **C.      Discovery of the Plaintiff Counties.**

On October 30, 2007, shortly after plaintiffs filed their Revised Exhibit B to the First Amended Consolidated Complaint, amending the list of drugs allegedly at issue in this case, defendants served each of the plaintiff counties with Defendants' First Set of Document Requests to the New York Counties.  Among other things, Defendants' First Set of Document Requests sought from plaintiffs the reimbursement claims data showing each of the claims on which the counties allegedly base their case and on what basis New York Medicaid purportedly reimbursed those claims.  To date, as described more fully in Defendants' Joint Motion to Compel the Production of Claims Data, not a single county has meaningfully complied with that very basic request.  Accordingly, earlier this week, on February 27, 2008, defendants moved to compel the production of this critical evidence.  *See* Defendants' Joint Motion to Compel the Production of Claims Data, Feb. 27, 2008 [Docket Nos. 5092-94].  Plaintiffs' opposition to that motion is due on March 12, 2008.  This afternoon, plaintiffs' counsel informed defendants' counsel that plaintiffs would produce claims data on or before March 21, 2008.

## <u>CONCLUSION</u>

For the foregoing reasons, the parties jointly request that CMO 33 be modified to extend all of the dates in Paragraph 5 by 90 days.

Respectfully submitted,

City of New York and all captioned Counties

/s/Joanne M. Cicala
Joanne M. Cicala, Esq,
James P. Carroll Jr. Esq.
Aaron D. Hovan, Esq.

KIRBY McINERNEY LLP
830 Third Avenue
New York, NY 10022
(212) 371-6600

Schering-Plough Corporation, Schering Corporation, and Warrick Pharmaceuticals Corporation on behalf of all other Defendants identified in the Revised First Amended Complaint

 /s/ John P. Bueker
John T. Montgomery (BBO#352220)
John P. Bueker (BBO#636435)
Bryan R. Diederich (BBO#647632)
Kim B. Nemirow (BBO#663258)

ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: February 29, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2008, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/ Kim B. Nemirow
Kim B. Nemirow