# LONDON & MEAD
ATTORNEYS AT LAW

1225 19TH STREET, N W
SUITE 320
WASHINGTON, D C 20036

TELEPHONE (202) 331-3334
TELEFAX (202) 785-4280

February 25, 2008

Honorable Patti B. Saris
United States District Judge
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
MDL No. 1456, Civil Action No. 01-12257-PBS

Dear Judge Saris:

This firm is counsel to the American Society of Clinical Oncology ("ASCO"), which is not a party to the above-captioned multi-district litigation.

The U.S. Department of Justice issued ASCO a subpoena *duces tecum* on April 27, 2007, in connection with *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.* On September 21, 2007, the Department of Justice issued ASCO another subpoena *duces tecum* in connection with *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.* (civil action number 05-11084-PBS) and *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corporation, et al.* (07-10248-PBS) (collectively, "the Subpoenas"). The Subpoenas essentially seek four categories of documents: (1) documents relating to the relationship between ASCO and the defendants, i.e., contracts, membership agreements, monies paid by the defendants to ASCO, etc.; (2) documents related to price reporting, i.e., correspondence between ASCO and the pricing compendia, documents related to complaints or inquiries regarding accuracy of prices disseminated by drug manufacturers, documents that contrast or reflect the prices of any drug manufacturer product with the reimbursement rates of third party payors, etc.; (3) documents related to ASCO's communications with state and federal legislatures and federal and state Medicare and Medicaid officials regarding government reimbursement for drug or drug pricing; and (4) documents related to ASCO presentations on drug pricing and government reimbursement for drugs, how reimbursement rates affect the marketing or sale of our member's products, etc.

ASCO is a non-profit organization, representing physicians and other healthcare providers who specialize in the treatment of cancer, with overarching goals of improving cancer care and prevention. ASCO conducts activities towards advancing the education of oncologists

LONDON & MEAD
ATTORNEYS AT LAW

Judge Saris
February 26, 2008
Page 2

and advocates for policies that further access to high-quality cancer care. To that end, ASCO has lobbied Congress on existing and proposed policies regarding Medicare payment for drugs and related services furnished in outpatient cancer treatment to make sure policies are not changed in a manner contrary to cancer patients, and it has corresponded with the government over coverage policies of certain cancer-related drugs. ASCO does not dispense or purchase drugs for its members, nor does it make price-related drug recommendations to its members.

To date, ASCO has produced approximately 8,400 documents in connection with the Subpoenas. The bulk of ASCO's production relates to its communications with the government and documents that reflect or mention the disparity between drug acquisition costs and reimbursement rates that existed during the average wholesale price regime, in relationship to the reimbursement rates for chemotherapy administration services that were considered to be under-reimbursed during the time period. Within the thousands of documents reviewed and produced, there are few if any documents reflecting a substantive analysis of the marketplace regarding drug acquisition costs during the average wholesale price era.

On Friday, December 14, 2007, at 8:53 p.m., Ms. Rebecca Ford, counsel for the United States, e-mailed undersigned counsel as follows:

> Attached please fined a subpoena that we intend to issue on Monday for the deposition of an ASCO corporate representative. Please let us know whether ASCO will waive official service of the subpoena, or alternatively, if we need to serve the subpoena via a process server.
>
> Please feel free to contact us about scheduling or any other issued you may wish to discuss.

(12/14/07 e-mail, annexed as Attachment #1).

On Monday, December 17, undersigned counsel responded that I needed to confer with our client prior to waiving official service. (12/17/07 e-mail, annexed as Attachment #2). Ms. Ford responded the same day, thanking counsel for the quick response. Ms. Ford requested that we advise whether ASCO would waive official service and asked us to provide alternative dates for the deposition. (12/17/07 e-email, annexed as Attachment #3).

On December 18, one day after the above-mentioned e-mail exchange and before undersigned counsel had received a definitive answer regarding waiver of service, this Court ordered: "The Court will give the parties until March 31, 2008 to complete all fact discovery. However, no new discovery requests shall be made after the date of this order with respect to

**LONDON & MEAD**
ATTORNEYS AT LAW

Judge Saris
February 26, 2008
Page 3

parties or nonparties." (Dkt No. 4923). Accordingly, we interpreted literally this Court's order requiring the parties to serve all new discovery requests by December 18, 2007. Because we did not waive formal service of the deposition subpoena, and because the United States did not formally serve ASCO prior to the December 18 deadline, we took the position that the issued but unserved subpoena to ASCO was untimely. (12/21/07 letter, annexed as Attachment #4). After the December 18 Order issued at 3:01 p.m., the United States did not contact us regarding the status of waiver, nor did it send the subpoena to a process server in light of the impending deadline. As your Honor is aware, on January 31, 2008, Magistrate Judge Bowler ruled that this Court's December 18 Order means that if discovery was not served by December 18 at 3:01 p.m., "it doesn't go forward." (1/31/08 Hrg. Tr. At 39-40).

While we believe that the approximately 8,400 documents that ASCO has produced to date have limited relevance to allegations that Abbott fraudulently inflated the average wholesale prices that it reported to drug pricing compendia used by the government to set reimbursement rates for drugs, ASCO has demonstrated good faith and has been cooperative with the government in responding to the Subpoenas. ASCO is currently in the process of searching for and producing electronic documents and has been in regular contact with United States counsel regarding many aspects of our response. Between the employee time and counsel fees incurred in document review and production, the Subpoenas have cost ASCO tens of thousands of dollars. Requiring ASCO to prepare a witness or witnesses to sit for a 30(b)(6) deposition on numerous topics will cost ASCO thousands of dollars more.

Given the additional, and quite substantial, burden that will be imposed upon ASCO as a result of having to sit for a deposition that the government did not serve, either informally or formally, by the required deadline, we respectfully ask this court to uphold Magistrate Judge Bowler's interpretation of the December 18 Order.

Sincerely,

*/s/ Hanoi Veras/mp*

Hanoi Veras

Enclosures
HV: mp