UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )<br>)<br>)<br>)<br>**THIS DOCUMENT RELATES TO:** )<br>)<br>*City of New York, et al. v.* )<br>*Abbott Laboratories, et al.* )<br>**Civil Action No. 04-cv-06054 et al.** )<br>) | MDL NO. 1456<br>Mast File No. 01-12257-PBS<br><br>Judge Patti B. Saris |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND IN SUPPORT OF MOVANTS' CROSS MOTION TO QUASH SUBPOENAS ISSUED BY DEFENDANTS TO THE NEW YORK STATE DEPARTMENT OF HEALTH AND/OR ITS CURRENT AND FORMER EMPLOYEES

Pursuant to Fed. Rs. Civ. P. 26 and 45(c)(3)(A), the New York State Department of Health, Mark-Richard Butt, Mary Alice Brankman and Michael A. Falzano, by and through the New York Attorney General and Plaintiffs (hereinafter collectively referred to as "Movants"), file this memorandum of law in opposition to defendants' Motion to Compel Commissioner of New York State Department of Health and Three Key Witnesses to Comply with Subpoenas and in support of their Cross-Motion to Quash all Subpoenas Issued by Defendants to the New York State Department of Health and/or its current and former employees.

**PRELIMINARY STATEMENT**

Counsel for defendants have issued patently overbroad subpoenas to the New York State Department of Health (hereinafter "State DOH") and certain of its current and former employees seeking discovery that defendants say is essential to their "government knowledge" defense to plaintiffs' claims. Copies of the subpoenas are annexed hereto as Exhibits A through D. In so doing, defendants have turned a blind eye to the particulars of the New York State Medicaid Program and established precedent which together make clear that the information sought is entirely irrelevant to the case at bar. As defendants well know, the New York Medicaid reimbursement formula for prescription drugs is set by the New York State Legislature, not by State DOH nor any other State agency. This dispositive fact distinguishes the New York program from those of the other states who have litigated discovery matters in this Court. Specifically, N.Y. Soc. Serv. L. § 367-a(9)(b) *requires* the State Department of Health ("State DOH") to reimburse based on defendants' published prices. Thus, whatever the State DOH or its employees may have known or not known about defendants' published prices is entirely irrelevant to plaintiffs' case. New York State Medicaid was legally bound to reimburse for ingredient cost at FUL or EAC, and that EAC was defined by law as AWP minus a certain percentage. *Id*.

This precise issue has already been ruled upon by the only other Court thus far to have considered whether discovery of New York State Agencies is relevant to an AWP case brought on behalf of New York Medicaid. *See People ex rel. Spitzer v. Pharmacia Corp.*, 835 N.Y.S.2d 486 (3 Dep't 2007). In that case, which is more fully discussed below, the trial and appellate courts held that the same type of discovery as that which defendants seek here should not be

permitted given that the New York Medicaid reimbursement formula was statutorily mandated and not a function of administrative rule. The Appellate Court wrote,

> Because [Plaintiff's] claims in this action do not depend upon an allegation that agencies or officials were deceived, but rather that respondents intentionally inflated the reported prices in order to manipulate and deceive the mandated statutory reimbursement formulae, any evidence that agencies or officials were aware of respondents' failure to provide prices actually paid would be neither necessary nor material to their defense.

*Id.* at 487-488.

Defendants are certainly familiar with the *Pharmacia* case. Indeed, they relied on it to obtain discovery from assorted Nevada State Agencies in the Nevada AWP case pending in this MDL. Defendants specifically argued to this Court that *Pharmacia* was inapplicable to the Nevada AWP discovery dispute because Nevada's reimbursement statute was set by administrative rule, not the state legislature as in New York. *See* Transcript of Motion Hearing before Magistrate Judge Marianne B. Bowler, September 19, 2006 at 28-29 (excerpts attached as Exhibit E). It is axiomatic that Defendants are estopped from adopting a contrary view of *Pharmacia* at this juncture. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . ." (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).[1]

---

[1] Known as judicial estoppel, this rule "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8 (2000); *see* 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"); *see also United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993) ("prohibiting parties from deliberately changing positions according to the exigencies of the moment"), *In re Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3rd Cir.

Notwithstanding the fatal defects discussed above, for the reasons set forth below, much of the discovery demanded by defendants' subpoenas bears no reasonable connection to plaintiffs' case and is patently overbroad, improper as to scope and clearly designed only to harass the State and its current and former employees. That defendants are moving to compel compliance as to Mr. Falzano and Ms. Brankman is particularly improper, as set forth more fully below. Movants have informed defendants in writing that both are long retired employees who possess neither responsive documents nor any information or recollections on the noticed topics. Nor are the noticed topics relevant to the case at bar. Nor should defendants' motion be granted as to Mr. Butt. First, Mr. Butt does not have custody or control over any of the requested materials. All are properly in the possession of State DOH. Second, even if Mr. Butt did possess such materials, as set forth in Point I *infra*, they are entirely irrelevant to the case at bar.

Movants respectfully submit that the subpoenas should be quashed in their entirety.

### ARGUMENT

**I.    DEFENDANTS' SUBPOENAS IGNORE THAT NEW YORK STATE MEDICAID IS REQUIRED BY LAW TO REIMBURSE ON THE BASIS OF DEFENDANTS' PUBLISHED PRICES**

Unlike the other states litigating AWP matters in this Court, every aspect of the New York Medicaid prescription drug reimbursement formula is set by New York State law. N.Y. Soc.Serv.L. § 367-a(9). The reimbursement formula is not set by a State DOH regulation or rule nor the regulation or rule of any other agency in the New York State executive branch. *Id*. At all times relevant to plaintiffs' case, N.Y.Soc. Serv.L. §367-a(9) required and requires the New

---

1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts'" (quoting *Stretch v. Watson*, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))).

York Medicaid program to reimburse on the basis of defendants' reported prices. Specifically, it provides that payments shall be made at the following amount for pharmacies:

> if the drug dispensed is a multiple source prescription drug or a brand-name prescription drug for which no specific upper limit has been set by such federal agency, the lower of the estimated acquisition cost of such drug to pharmacies, or the dispensing pharmacy's usual and customary price charged to the general public. **For sole and multiple source brand name drugs, estimated acquisition cost means the average wholesale price of a prescription drug based upon the package size dispensed from, as reported by the prescription drug pricing service used by the department, less [a certain percentage].**

N.Y.Soc.Serv.L. §367-a(9)(b)(ii) (emphasis added).

In light of this statutory mandate, what the State DOH or any other State Agency may have known or not known about defendants' prices or any other noticed issue is entirely irrelevant to the case at bar. The case at bar concerns only that defendants intentionally submitted false and inflated prices to the publishing compendia with full knowledge that the State would use these prices, as required by law, to calculate Medicaid reimbursements. State DOH was statutorily mandated to reimburse based on the prices defendants published, or caused to be published. *Id.*

*People ex rel. Spitzer v. Pharmacia Corp.*, 835 N.Y.S.2d 486, 487 - 488 (3 Dep't 2007), is directly on point and supports Movants' position. There defendants sought the same categories of discovery from a broad array of New York State agencies. The New York Attorney General resisted defendants' efforts on relevance grounds, noting that the reimbursement formula was statutorily mandated and that agency knowledge was therefore irrelevant. The Court agreed and denied defendants the discovery sought:

5

> [Defendants] concede that the prices they provided to the reporting services were not average prices actually paid by the pharmacies, but rather they were List Wholesale prices before discounts. They maintain, however, that they did not represent the prices to be prices actually paid, and the affected State agencies and officials knew this. However, regardless what officials may have known, the causes of action against [Defendants] ultimately depend upon [Plaintiffs'] ability to prove that the Legislature intended the AWP to be based upon prices actually paid and that [Defendants] were required to provide those prices rather than list prices to the reporting services. Because [Plaintiffs'] claims in this action do not depend upon an allegation that agencies or officials were deceived, but rather that respondents intentionally inflated the reported prices in order to manipulate and deceive the mandated statutory reimbursement formulae, any evidence that agencies or officials were aware of respondents' failure to provide prices actually paid would be neither necessary nor material to their defense.

*People ex rel. Spitzer v. Pharmacia Corp.*, 835 N.Y.S.2d 486, 487 - 488 (3 Dep't 2007).

Defendants have admitted, in this very Court, that *Pharmacia* was properly decided in light of the particulars of the New York Medicaid program. Indeed, when Counsel for the State of Nevada endeavored to rely on *Pharmacia* to resist defendants' discovery efforts in the Nevada AWP case, defendants made the precise arguments now advanced by Movants on this motion in order to distinguish *Pharmacia*'s application to the Nevada case. Defense counsel explained,

> The case that is cited [by Counsel for Nevada] is a case in New York county involving interpretation of what the Judge sees is a statute with the term AWP [*Pharmacia*]. In Nevada, the reimbursement formula is set by administrative rule and, therefore, the understanding of the term AWP as used by the Medicaid administrator, the director of the Department of Health and Human Services and the pharmacy program manager when the instituted the administrative rule change are very important to the understanding of what the intent was in setting that reimbursement formula, and that's why the case is not apposite. And if you look at the case law in Nevada as opposed to New York there the Nevada Supreme Court has said that with respect to an agencies

> [sic] interpretation of terms used by that agency, that there is give weight. And the same thing would apply here.

*See* Transcript of Motion Hearing before Magistrate Judge Marianne B. Bowler, September 19, 2006 at 28-29. (Excerpts attached as Exhibit E).

This admission by defendants confirms the propriety of the relief sought by the instant motion. Defendants are estopped from arguing to the contrary. *See*, 532 U.S. at 749; *see fn*1, *supra*.

## II.     THE SUBPOENAS OTHERWISE ARE OVERBROAD, IMPROPER AS TO SCOPE AND DESIGNED ONLY TO HARRASS AND BURDEN THE STATE AND ITS CURRENT/FORMER EMPLOYEES

### A.     December 7, 2007 Subpoena to the New York State Department of Health

The December 7, 2007 Subpoena to the New York Department of Health seeks forty (40) discrete categories of documents, relating to thousands of subject drugs for time periods that date back as far as nineteen years. The accompanying Declaration of Gregor N. Macmillan, Director of the Bureau of Health Insurance Programs at the New York State Department of Health, dated February 28, 2008 ("the "Macmillan Dec.") and submitted in opposition to defendants' motion to compel and in support of defendants' cross-motion to quash sets forth the extreme burden that the subpoenas would impose.

As Mr. Macmillan explains:

> "[t]aken together, these demands essentially constitute a request for every document, in hard copy or electronic format, possessed by the Department with respect to Medicaid and Elderly Pharmaceutical Insurance Coverage Program ("EPIC") reimbursement for drugs going back to 1990 (and are the specific topic of "Federal Upper Limits" or FULS, back to 1986"). The task of locating, identifying, gathering, reviewing and reproducing this huge amount of material would be extremely burdensome for the Department."

Macmillan Dec. at ¶ 2.

The requests and instructions/definitions themselves are so broad as to render compliance nearly impossible. To highlight a few examples:

Defendants define "You" and "Your" broadly, not limiting it merely to the State DOH, but to include "its administrative bodies, all successors and predecessors, and officials, agents, representatives, employees, affiliates, third-party administrators, commissions, boards, divisions, departments, agencies, instrumentalities, administrators, and other Persons or entities acting or purporting to act on its behalf or under its control." (Ex. A at 5).

They define 'Department of Health' as the New York Department of Health and **any** past or present commissioners, deputy commissioners, officials, fiscal intermediaries or fiscal agents, third-party administrators, representatives, agents, assigns, attorneys, employees, divisions, bureaus, departments, affiliates, and **all** other Persons or entities acting or purporting to act on its behalf or under its control, and **any** of its predecessors, including the New York State Department of Social Services." (Ex. A at ¶ 6) (Emphasis added). Defendants define Federal Agency and State of New York in similarly broad and burdensome manners.

- "'Federal Agency' or 'Federal Agencies' means each or **any** CMS, Health Care Financing Administration and all its agents, employees, commissioners, and anyone else acting on its behalf; the United States Department of Health and Human Services, including all its agents, employees, commissioners, and anyone else acting on its behalf; or the United States Department of Justice, Office of Inspector General and **all** its agents, employees, commissioners, and anyone else acting on its behalf." (*Id.* at ¶ 11) (Emphasis added).

- "'State of New York,' 'State,' or 'New York' shall refer collectively to **any** New York State office, agency or body, including, but not limited to, the Office of the Attorney General, the Department of Public Health, the Department of Health, the State Auditor, the State legislature, legislative committees, **all** successors and predecessors, and local social service districts, officials, agents, employees,

commissions, boards, divisions, departments, agencies, instrumentalities, administrators and other persons or entities acting on their behalf and/or involved in administering, overseeing, or monitoring **any** State program, including Medicaid, that purchases or provides reimbursement for Prescription Drugs." (*Id.* at ¶ 23) (Emphasis added).

These definitions would require the Department of Health to scour their records and correspondence with dozens of New York and federal agencies for up to nineteen years for any information concerning prescription drugs.[2]  With such overbroad definitions, it is clear that Defendants do not seek evidence relevant to plaintiffs' claims but instead wish to conduct a vast fishing expedition of every State agency or employee in an attempt to distract the Court from the fundamental issue in this case which is defendants' intentional submission of false prices.  In addition, as set forth on the Macmillan Declaration, with these expansive requests the Defendants are essentially asking the State, at an untold cost to the taxpayer, to shut down nearly all other business, and do their work for them.  Macmillan Dec. at ¶ 3.  Given the irrelevance of the information sought in the first instance (*see* Point I), there is no rational basis to impose such a burden on the state.

Such overly broad definitions are even more problematic when seen in context of the Defendants' equally overbroad document requests.  Examples include:

---

[2] To the extent that Defendants' requests seek documents or information concerning internal policy discussion or deliberation, such are protected by the deliberative process privilege.  *See U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir.2002). The deliberative process privilege protects "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated"); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir.1999); *Children First Foundation, Inc. v. Martinez*, 2007 WL 4344915, *6 (N.D.N.Y. Dec. 10, 2007) ("The deliberative process privilege . . . covers documents reflecting advisory opinions, recommendations, draft documents, proposals, suggestions, and any other subjective documents that reflect the personal opinions of the writer rather than the agency and deliberations comprising part of a process by which governmental decisions and policies are formulated."); *New York v. National R.R. Passenger Corp.*, 2007 WL 4377721, *2 (N.D.N.Y. Dec, 12 2007).  In the event defendants' motion is granted, in whole or in part, or plaintiffs' cross motion is denied in whole or part, plaintiffs will assert this privilege with specificity in respect to certain requests.

- "All documents relating to the actual or estimated cost of Medicaid or EPIC providers to acquire drugs subject to FULs. (Specifically acquisition cost by provider class of trade, e.g., chain pharmacy, community pharmacy, nursing home, etc. where possible." (Ex. A at ¶ 5);

- "All documents relating to FULs, including, but not limited to, documents that refer to aggregate upper limits and drug-specific upper limits." (*Id*. at ¶ 17);

- "All documents relating to MACs, including, but not limited to, documents that refer to state maximum allowable costs or state upper limits." (*Id*. at ¶ 18).

Defendants ignore that New York Medicaid was required by law to reimburse at FUL when a FUL was in place. N.Y. Soc. Serv. L. § 369-a(9)(b). As such, New York State Medicaid's knowledge of FULs or the ingredient cost of drugs subject to the FUL is therefore irrelevant for the issues set forth in Point I, *supra*. Likewise, the decision to set a State MAC was also a legislative decision in 2005 (effective September 5, 2006, after the operative CMO#33 discovery time period) and thus also irrelevant as set forth in Section I. In addition, because of the overly expansive definition of "you" or "your" such a request necessarily encroaches on the legislative deliberative process and would be subject to the deliberative process privilege. *See fn. 2, supra*. Further, to the extent Defendants seek information regarding acquisition costs, such information is available to the Defendants from their own records and other sources.

Defendants also seek:

- "All documents relating to the adoption or proposed rate of paying Medicaid or EPIC providers a dispensing fee for prescription drugs, both subject to and not subject to FULs." (Ex. A at ¶ 6);

- "All documents relating to the actual or estimated drug dispensing costs of Medicaid or EPIC providers. (Specify dispensing costs by class of trade, e.g., chain pharmacy, community pharmacy, nursing home, etc. where possible.)" (*Id*. at ¶ 7).

The amount of the dispensing fee was also set by legislature. N.Y. Soc. Serv. L. 367-a(9). The amount of the dispensing fee is what it is. No discovery is needed on the point.

Defendants also seek:

- "**All** documents relating to the 'net' cost to New York State of prescription drugs in the Medicaid or EPIC programs after accounting for (i) payments of ingredient costs and dispensing fees to providers and (ii) receiving rebates or supplemental rebates from drug manufacturers." (*Id*. at ¶ 15) (Emphasis added).

All of this information is readily available to the defendants from other sources, including defendants' own records, transactional sales data and rebate data. Defendants can run whatever net cost calculations they wish from this data, indeed they routinely do so for assorted purposes including their OBRA '90 Rebate requirements. Nothing is needed from the State. Moreover, implied *sub silentio* in this request is that rebates are relevant to plaintiffs' claims. They are not. The rebate amounts paid by defendants do not moot the damage caused by defendants' false price reporting. The OBRA 90 rebates are paid based on defendants' reported AMPs, not their reported AWPs, and that the amount of the rebates would not have changed even if defendants had reported accurate prices.

Defendants also seek:

- "All documents concerning the *implementation* of any New York statutes, rules or regulations concerning reimbursement under the Medicaid or EPIC programs for prescription drugs and dual-channel drugs, including, but not limited to, all comments on proposed or final regulations, *all* drafts of proposed or final regulations, and all memoranda, correspondence, analysis or other documents concerning such implementation." (*Id*. at ¶ 20) (emphasis added).

These requests clearly seek discovery protected by the deliberative process privilege. *See, fn.* 2.

Defendants also seek:

- "All documents related to any communications between the State of New York or you and *any* pharmacy or pharmacist or any organization or association acting on behalf of pharmacists, such as the Pharmaceutical Society of the State of New York ('PSSNY'), regarding Medicaid or EPIC reimbursement for prescription drugs and dual-channel drugs, including, but not limited to, documents regarding provider EAC, dispensing cost/fees, formularies or preferred drug lists, generic substitution policies, co-payments, and drug coverage carve-outs from payments to managed care plans." (Ex. A at ¶ 23).

This request, together with the overbroad definition of "State of New York," would impose on the State Department of Health the burden of producing documents from dozens of other New York State agencies regarding prescription drugs even though none of them had any involvement with setting the Medicaid reimbursement rate. Given that these materials are irrelevant anyway, *see* Point I, *supra,* there is no justification whatsoever for imposing such a burden on the State.

Defendants also seek:

- "All reports, assessments, studies, analyses, reviews or audits conducted regarding the State of New York's payments to Medicaid or EPIC providers for prescription drugs or dispensing fees for such drugs." (*Id*. at ¶ 26)

This request, once again, seeks completely irrelevant information given that State Medicaid reimbursement payments are statutorily mandated. *See* Point I.

Defendants also seek:

- "All documents prepared by any federal agency concerning the pricing or reimbursement of prescription drugs, including but not limited to, reports, memoranda, or analyses of the State of New York's Medicaid program prescription drug benefits." (*Id*. at ¶ 32);

- "All communications between you or the State of New York and any federal agency regarding AWPs, EACs, FULs, including, but not limited

12

> to, any communications regarding the State of New York's compliance or noncompliance with federal regulations or policies related to pharmacy reimbursement for prescription drugs provided to recipients under the Medicaid programs." (*Id*. at ¶ 33);

- "All communications between you or the State of New York and any other state or federal governmental entity, its officials, agents, employees, commissions, boards, divisions, departments, agencies, instrumentalities, administrators, other persons action on their behalf, concerning drug prices, drug costs, dispensing fees or costs, reimbursement rates, or other benchmarks for the pricing or reimbursement of prescription drugs and dual-channel drugs, including all documents that relate to the processing or accounting treatment of any intergovernmental transfer payments between you or the State of New York and the Counties." (*Id*. at ¶ 35).

These requests fail on multiple levels: (1) given defendants' overly broad definitions, many of the requested communications would be protected under attorney-client and/or work product privileges; (2) the requests improperly seek documents protected by the deliberative process privilege; and (3) it is indisputable that the federal government, year after year, approved the New York State Medicaid Plan. Therefore, these requests do not even seek evidence concerning a matter in dispute in this case.

There is simply no set of circumstances that would justify such massively overbroad requests that seek to touch on any person, agency or scrap of paper that discusses the wide array of subjects listed. Were the State DOH to endeavor to produce all requested documents, as Mr. Macmillan describes, query whether it would have any resources remaining to carry out their ordinary State business. Macmillan Dec. at ¶ 3-7.

**B.     January 15, 2008 Subpoena to Mark-Richard Butt**

First, Mr. Butt cannot produce the documents sought by the Defendants as those documents are not in Mr. Butt's possession, custody or control. Second, to the extent the documents sought in Mr. Butt's subpoena are in the possession of the New York Department of

Health, those documents are entirely irrelevant to the case. *See* Point I, *supra*. Third, testimony from Mr. Butt on his understanding of the topics listed in the subpoena, and his recollection and understanding of documents requested, is patently irrelevant, as discussed in Point I, *supra*.

### C. January 15, 2008 Subpoenas to Mary Alice Brankman and Michael A. Falzano

Ms. Brankman and Mr. Falzano are former employees of State DOH and long retired. Neither have any documents responsive to the Defendants' subpoenas, as Movants have explained to defendants in writing. To the extent the documents sought in Ms. Brankman and Mr. Falzano's subpoenas are in the possession of the New York Department of Health, those documents are irrelevant to the case. *See* Point I s*upra*. Moreover, the testimony sought from each, despite representations, in writing, that neither witness recollects information on the listed topics, is patently irrelevant, as discussed in Point I, *supra*.

### D. Defendants' Subpoenas Are Temporally Overbroad.

Defendants' subpoenas are temporally improper. The December 7, 2007 Subpoena to the Department Health defines the relevant time period "from January 1, 1992 to December 31, 2005" and "the relevant time period for documents relating to FULs is January 1, 1986 through December 31, 2005." (Ex. A at ¶ 32). The Subpoenas issued to Mr. Butt, Ms. Brankman and Mr. Falzano define the relevant time period as January 1, 1992 to December 31, 2005. (*See* Ex. B at ¶ 26; Ex. C at ¶ 17; Ex. D at ¶ 17). CMO 33 expressly provides for discovery from January 1, 1997 through December 31, 2005. *See* CMO 33. ¶ 7. Even if Defendants could show relevance for all requests, which they decidedly cannot, there is no basis for seeking discovery back to 1992 or in the case of documents relating to the FUL to 1986. Discovery is limited at this juncture to 1997-2005. *Id*.

## III. PLAINTIFFS HAVE STANDING TO JOIN IN THE NEW YORK ATTORNEY GENERAL'S CHALLENGE TO THE SUBPOENAS

As a party to this case, Plaintiffs have standing to join in the Attorney General's challenge, on behalf of the subpoenaed entities, to the relevancy of Defendants' discovery pursuant to Fed. R. Civ. P. 26(c). "This rule provides that, upon a showing of good cause, the presiding court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2005). Even when a subpoena is directed at a third party, a party may move for a protective order preventing discovery on the grounds that it is not relevant. *See, e.g., Manufacturer Direct, LLC v. DirectBuy, Inc.,* 2007 WL 496382, *3 (N.D. Ind. Feb. 12, 2007) ("The weight of authority…reads Rule 26's broad grant of authority over discovery matters and its protection of any 'party or person' to permit [a Motion for Protective Order]."); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 558, 591 (D. Kan. 2003) ( party had standing to contest relevancy of third-party subpoena); *Syposs v. United States*, 181 F.R.D. 224, 228 (W.D.N.Y.1998) (same).

## CONCLUSION

For all the foregoing reasons, Movants respectfully request (a) that Defendants' motion to compel be denied and (b) defendants' subpoenas to State DOH and its current and former employees be quashed in their entirety.

Dated:  March 4, 2008

                                    Respectfully Submitted:

                                    ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Subpoenaed Non Party
The New York State Department of Health
The Capitol
Albany, New York  12224-0341

/s/   Shoshanah V. Asnis
By: Shoshanah V. Asnis, Esq. *(pro hac pending)*
Assistant Attorney General, of Counsel
(518) 402-4579
Fax:  (518) 474-7172 (Not for service of papers.)
Shoshanah.Asnis@oag.state.ny.us

/s/   Gregor N. Macmillan
By: Gregor N. Macmillan, Esq. *(pro hac pending)*
Director, Bureau of Health Insurance Programs
New York State Department of Health
Attorney for Subpoenaed Non-Parties
  Mark Richard Butt, Mary Alice Brankman
  and Michael A. Falzano
Corning Tower, Empire State Plaza
Albany, New York 12237
(518) 408-1495

**City of New York and all captioned Counties except Nassau and Orange, by**

    **KIRBY McINERNEY, LLP**
    830 Third Avenue
    New York, New York 10022
    (212) 371-6600

/s/ Joanne M. Cicala
By:  Joanne M. Cicala (JC 5032)
     James P. Carroll Jr. (JPC 8348)
     Aaron D. Hovan (AH 3290)