# EXHIBIT A



AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION : | **SUBPOENA IN A CIVIL CASE** MDL NO. 1456 |
| Plaintiff : v. : | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO CONSOLIDATED NEW YORK COUNTY ACTIONS : | Judge Patti B. Saris (Case pending in D.Mass.) |
| Defendants. : | |

TO:   NEW YORK STATE DEPARTMENT OF HEALTH
      RICHARD F. DAINES, M.D., COMMISSIONER
      Corning Tower
      Empire State Plaza
      Albany, NY 12237

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION Nixon Peabody LLP, Omni Plaza, 30 South Pearl Street, Albany, NY 122072 | DATE AND TIME January 9, 2008 |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
**See Schedule B, attached hereto.**

| PLACE Law offices of Hogan & Hartson LLP, 875 Third Avenue, New York, New York, 10022, or at such other place as may be convenient. | DATE AND TIME January 9, 2008 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Defendant Bristol-Myers Squibb Co. and Oncology Therapeutics Network Corp., (on behalf of all defendants in the Revised First Amended Consolidated Complaint dated June 8, 2007)) | DATE December 7, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: Lyndon M. Tretter, Hogan & Hartson, 875 Third Avenue, New York, NY 10022. (212) 918-3000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|--------|------|--|-------|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                    SIGNATURE OF SERVER

                                                _____
                                                ADDRESS OF SERVER

                                                _____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly

transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## INSTRUCTIONS AND DEFINITIONS

1.   "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

2.   "AWP" or "Average Wholesale Price" means any figures so categorized and periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), the American Druggist First DataBank Annual Directory of Pharmaceuticals ("First DataBank"), the National Drug Data File published by First DataBank, the Essential Directory of Pharmaceuticals (the "Blue Book") and Medi-Span's Master Drug Database ("Medi-Span").

3.   "CMS" means the Centers for Medicare and Medicaid Services and all its agents, employees, commissioners, and anyone else acting on its behalf, its sub-agencies and departments, and any of its predecessors, including the Health Care Financing Administration and the Social Rehabilitative Service.

4.   "Communication(s)" shall be used in a comprehensive sense as contemplated by the Federal Rules of Civil Procedure and shall refer to all transmissions of information, whether written or oral, and whether verbal or otherwise, including assertions by non-verbal conduct; communication includes, but is not limited to, notes, letters, memoranda, electronic mail, voicemail, telegrams, invoices, telephone conversations, face-to-face meetings, and other similar forms of communication or correspondence.

5.   "Counties" shall refer to the 47 New York Counties and the City of New York that are now proceeding as plaintiffs under the Revised First Amended Consolidated Complaint in the above-captioned action, and shall include any of their agents, assigns, attorneys, employees, divisions, bureaus, departments, affiliates, and all other persons or entities acting on

1

their behalf or under their control.

6. "Department of Health" means the New York State Department of Health and refers to any past or present commissioners, deputy commissioners, officials, fiscal intermediaries or fiscal agents, third-party administrators, representatives, agents, assigns, attorneys, employees, divisions, bureaus, departments, affiliates, and all other Persons or entities acting or purporting to act on its behalf or under its control, and any of its predecessors, including the New York State Department of Social Services.

7. "Document" means any writing or recording of any kind, in any medium, whether written, graphic, pictorial, photographic, electronic, emails, phonographic, mechanical, taped, saved on computer disks, hard drives or data tapes or otherwise, and every non-identical copy. Different versions of the same document, such as different copies of a written record bearing different handwritten notations, are different documents within the meaning of the term as used. In case originals or original non-identical copies are not available, "document" includes copies of originals or copies of non-identical copies, as the case may be.

8. "Dual-Channel Drugs" means physician-administered prescription drugs that may be dispensed by either a physician or a pharmacy.

9. "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

10. "EPIC" shall mean the Elderly Pharmaceutical Insurance Coverage program created pursuant to Title 3 of the N.Y. Elder Law.

11. "Federal Agency" or "Federal Agencies" means each or any of CMS, Health Care Financing Administration and all its agents, employees, commissioners, and anyone else acting on its behalf; the United States Department of Health and Human Services, including all

2

its agents, employees, commissioners, and anyone else acting on its behalf; or the United States Department of Justice, Office of the Inspector General and all its agents, employees, commissioners, and anyone else acting on its behalf.

12. "Fiscal Intermediary" or "Fiscal Agent" shall refer to any third-party administrator, claim administrator or any other entity contracted by the State of New York or the Department of Health to serve as the State's agent in the administration of the Medicaid and EPIC programs, generally, and the payment of claims for prescription drugs, specifically, including, but not limited to, Electronic Data Systems, Inc. ("EDS"), Health Information Designs, Inc. ("HID"), or Computer Sciences Corporation ("CSC").

13. "FUL" and "Federal Upper Limit" means the maximum reimbursement amount for certain multi-source drugs that are provided by at least three suppliers as a result of federal regulations at 42 CFR §447.332.

14. "MAC" or "Maximum Allowable Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. §40.504 or any analogous State statute or regulation.

15. "Medicaid" means the federal- and State-funded program of medical assistance for needy persons operated by the State under Title XIX of the federal social security act and supervised by the Department of Health pursuant to § 363-a of the New York Social Services Laws.

16. "Managed Care Plan" means any health plan authorized by, or under a contract with, the State to provide or arrange for health services to Recipients under the Medicaid and EPIC programs.

17. "Person" means any natural person or any business, legal, or governmental entity or association.

18. "Prescription Drug" means any drug or other product that requires a prescription, including, but not limited to, dual-channel drugs and "biological" products such as hemophilia factors and intravenous solutions.

19. "Pricing Compendia" shall refer to any publisher of drug pricing and product information, including, but not limited to, First DataBank, Red Book, and Medi-Span.

20. "Recipient" means a person eligible to receive health services under the New York State Medicaid program or any person for whom the State provides health insurance coverage, or any other health care or health benefits via any program, including EPIC.

21. "Regarding," "Relate(d) to" and "relating to" shall mean relating to, regarding, consisting of, referring to, reflecting, manifesting, prepared in connection with, in comparison to, describing, containing, attesting to, or being in any way legally, logically, or factually connected with the matter discussed, whether directly or indirectly.

22. "Social Service Districts" shall have the meaning ascribed to that term pursuant to N.Y. Soc.Serv. L. § 61.

23. "State of New York," "State," or "New York" shall refer collectively to any New York State office, agency or body, including, but not limited to, the Office of the Attorney General, the Department of Public Health, the Department of Health, the State Auditor, the State legislature, legislative committees, all successors and predecessors, and local social service districts, officials, agents, employees, commissions, boards, divisions, departments, agencies, instrumentalities, administrators and other persons or entities acting on their behalf and/or involved in administering, overseeing, or monitoring any State program, including Medicaid, that purchases or provides reimbursement for Prescription Drugs.

24. "You," and "Your" means the New York State Department of Health and

4

refers to any past or present commissioners, deputy commissioners, officials, fiscal intermediaries or fiscal agents, local social service districts, third-party administrators, representatives, agents, assigns, attorneys, employees, divisions, bureaus, departments, affiliates, and all other Persons or entities acting or purporting to act on its behalf or under its control.

25. The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

26. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

27. Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf. A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

28. If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document. If the document

5

has been destroyed, state the reason for its destruction.

29. Provide the following information for each document withheld on the grounds of privilege:

    (a)  its date;

    (b)  its title;

    (c)  its author;

    (d)  its addressee;

    (e)  the specific privilege under which it is withheld;

    (f)  its general subject matter; and

    (g)  a description of it that you contend is adequate to support your contention that it is privileged.

30. These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial. .

31. The documents produced must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.

32. Unless otherwise indicated in a specific area of inquiry, the relevant time period for the topics listed herein refer to documents, data and information created from January 1, 1992 to December 31, 2005, and the documents relating to such period even though created before that period, with the exception that the relevant time period for documents relating to FULs is January 1, 1986 through December 31, 2005.

33. To the extent that you consider any of the following requests for production of

documents objectionable, please respond to the remainder of the production request, and

separately state the part of each request to which you object and each ground for each objection.

## SCHEDULE A

1. Actual and proposed prescription drug reimbursement methodologies under New York Medicaid.

2. Your implementation of the prescription drug reimbursement methodology under New York Medicaid.

3. Actual and proposed prescription drug reimbursement under EPIC.

4. Your implementation of the drug prescription drug reimbursement methodology under EPIC.

5. Policies regarding dual-channel drugs, including the list of dual-channel drugs approved for payment under Medicaid and EPIC and the approved channels of distribution.

6. The methodology used to determine reimbursement of dual-channel drugs under Medicaid and EPIC, including whether different reimbursement methods were used for the various distribution channels and whether any reimbursement method involved the payment of administration and/or injection fees.

7. The rationale for implementing different reimbursement methods for dual-channel drugs based on distribution channel.

8. Any changes in the reimbursement methodology for dual-channel drugs that occurred from January 1, 1997 through December 31, 2005.

9. The "carve-out" of drug coverage from the State of New York's capitation-based payment arrangement with Medicaid managed care plans to Medicaid drug coverage under a fee-for-service basis in 1998.

10. Actual and proposed Medicaid and EPIC co-payments by beneficiaries for prescription drugs and the ability of providers to collect such co-payments.

11. Your understanding of AWP, WAC, EAC and FUL and their relationship (or lack thereof) to prices at which Medicaid and EPIC providers in various classes of trade actually acquire prescription drugs.

12. Your communications with any federal agency regarding AWPs, WACs, EACs, FULs.

13. New York Medicaid's implementation of MAC.

14. New York Medicaid's preferred drug list.

15. Drug rebates and supplemental drug rebates received by New York Medicaid from drug manufacturers.

1

16. Drug rebates received by EPIC from drug manufacturers.

17. Pharmacy dispensing fees and costs, their adequacy, and their relationship to ingredient cost reimbursement for prescription drugs under Medicaid and EPIC.

18. Your communications with any federal agency regarding New York's compliance with federal regulations or polices related to prescription drug reimbursement under Medicaid.

19. Your communications with pharmacies, pharmacists and pharmacy associations regarding prescription drug reimbursement under Medicaid and EPIC.

20. The relationship between the New York Department of Health and local social service districts as it relates to prescription drugs benefits under Medicaid, including any intergovernmental financial transfers between the State and the State and the Counties related to reimbursement for prescription drugs under Medicaid..

21. Your communication with social service districts relating to prescription drug benefits under Medicaid.

22. Your communications with other States' Medicaid officials regarding prescription drug reimbursement under New York's and those other States' Medicaid programs.

23. Your relationship with any drug pricing compendium.

24. Your communications with pricing compendia regarding drug pricing.

25. Your contract with the New York Medicaid fiscal intermediary or fiscal agent.

26. Your communications with the New York Medicaid fiscal intermediary or fiscal agent regarding prescription drug reimbursement.

27. Your communications with the Counties concerning Medicaid prescription drug reimbursement.

28. Your communications with the Counties concerning the Counties' lawsuits against drug manufacturers over Medicaid reimbursement of prescription drugs.

29. Your agency's organizational structure, employees and operations.

30. Your document retention policies.

## SCHEDULE B

## DOCUMENTS TO BE PRODUCED

1.   Documents sufficient to show the Medicaid and EPIC reimbursement methodologies and dispensing fees (and any changes or amendments to such methodologies or fees) for prescription drugs from January 1, 1992 to date.

2.   All documents relating to the actual or proposed rate of paying Medicaid or EPIC providers for the ingredient cost of prescription drugs not subject to FULs.

3.   All documents relating to the actual or estimated cost of Medicaid or EPIC providers to acquire prescription drugs not subject to FULs.  (Specify acquisition cost by provider class of trade, e.g., chain pharmacy, community pharmacy, nursing home, etc. where possible)

4.   All documents relating to the actual or proposed rate of paying Medicaid or EPIC providers for the ingredient cost of drugs subject to FULs at prices other than the FUL, including but not limited to documents relating to your consideration of MACs, the factors considered in ultimately adopting MACs, and the methodology for calculating MACs.

5.   All documents relating to the actual or estimated cost of Medicaid or EPIC providers to acquire drugs subject to FULs.  (Specify acquisition cost by provider class of trade, e.g., chain pharmacy, community pharmacy, nursing home, etc. where possible)

6.   All documents relating to the adoption or proposed rate of paying Medicaid or EPIC providers a dispensing fee for prescription drugs, both subject to and not subject to FULs.

1

7.   All documents relating to the actual or estimated drug dispensing costs of Medicaid or EPIC providers.  (Specify dispensing costs by class of trade, e.g., chain pharmacy, community pharmacy, nursing home, etc. where possible.)

8.   All documents relating to the usual and customary charges in New York for prescription drugs and dispensing fees outside of the Medicaid and EPIC programs.

9.   All documents concerning the cost to healthcare providers (other than physicians or pharmacies) related to dispensing and/or administering drugs, including but not limited to storage, acquisition, administrative burdens, and patient counseling.

10. All documents explaining or concerning your methodology for reimbursement of dual-channel drugs, including all fee schedules relating to such drugs.

11. All documents explaining or concerning any changes considered or adopted to your methodology for reimbursement of dual-channel drugs.

12. All documents relating to the adoption and use of actual cost for payment to Medicaid physician providers for drugs administered to a patient in the physician's office.  (See N.Y. Soc. Serv. L. § 367-a(9).)

13. All documents relating to the actual or proposed rate of co-payments to be made by Medicaid or EPIC recipients for prescription drugs and/or dispensing services and the ability of providers to collect such co-payments.

14. All documents relating to the actual or proposed use of supplemental rebates from drug manufacturers or formularies or preferred drug lists in the Medicaid or EPIC programs.

15. All documents relating to the "net" cost to New York State of prescription drugs in the Medicaid or EPIC programs after accounting for (i) payments of ingredient costs and

2

dispensing fees to providers and (ii) receiving rebates or supplemental rebates from drug manufacturers.

16. All documents relating to AWPs, including, but not limited to, documents that refer to AWPs and documents that refer to the relationship between any price and AWPs.

17. All documents relating to FULs, including, but not limited to, documents that refer to aggregate upper limits and drug-specific upper limits.

18. All documents relating to MACs, including, but not limited, to documents that refer to state maximum allowable costs or state upper limits.

19. All documents concerning your understanding of AMP and its relationship to other prices or benchmarks for prescription drugs.

20. All documents concerning the implementation of any New York statutes, rules, or regulations concerning reimbursement under the Medicaid and EPIC programs for prescription drugs and dual-channel drugs, including, but not limited to, all comments on proposed or final regulations, all drafts of proposed or final regulations, and all memoranda, correspondence, analyses or other documents concerning such implementation.

21. All documents related to the "carve-out" of drug coverage from the State of New York's capitation-based payment arrangement with Medicaid managed care plans and conversion to coverage on a fee-for-service basis, which became effective August 1, 1998, pursuant to Chapter 19 of the Laws of 1998.

22. All documents related to any communications between the State of New York or you and any pharmacy or pharmacist or any organization or association acting on behalf of pharmacists, such as the Pharmaceutical Society of the State of New York ("PSSNY"), regarding Medicaid or EPIC reimbursement for prescription drugs and dual-channel drugs, including, but

3

not limited to, documents regarding provider FAC, dispensing costs/fees, formularies or preferred drug lists, generic substitution policies, co-payments, and drug coverage carve-outs from payments to managed care plans.

23. All documents, including, but not limited to, memoranda, contracts or agreements, or any communications, between the State of New York or you and any pricing compendia, third-party administrator, fiscal intermediary or fiscal agent related to reimbursement of prescription drugs, generally, and the reimbursement methodologies employed by the State of New York or you to reimburse for prescription drugs, specifically.

24. All communications between the Department of Health and any drug pricing compendia.

25. All documents, including, but not limited to, memoranda, contracts, or agreements concerning the relationship between any drug pricing compendia and the State of New York, the Department of Health, or any fiscal intermediary or fiscal agent.

26. All reports, assessments, studies, analyses, reviews or audits conducted regarding the State of New York's payments to Medicaid or EPIC providers for prescription drugs or dispensing fees for such drugs.

27. All documents relating to any requests, surveys, or other efforts conducted by you or on your behalf to collect data regarding the invoice price at which pharmacies purchased prescription drugs from any manufacturer, wholesaler, or other entity.

28. All documents relating to any requests, surveys, or other efforts conducted by you or on your behalf to collect data to determine the actual acquisition costs of prescription drugs to pharmacies.

4

29. All documents relating to any surveys, research, or other efforts conducted by you or on your behalf to identify, document, and compare the costs of dual-channel drugs dispensed through the various channels of distribution.

30. All documents relating to the Pharmacy Advisory Committee ("PAC") for the Medicaid program.

31. All documents published or made available to Medicaid providers, Medicaid recipients and the general public purporting to explain, describe, or clarify New York's prescription drug reimbursement policies, including, but not limited to, Medicaid provider manuals, Medicaid updates, clarification memoranda, policy memoranda, newsletters, and any other publications or communications.

32. All documents prepared by any federal agency concerning the pricing or reimbursement of prescription drugs, including but not limited to, reports, memoranda, or analyses of the State of New York's Medicaid program prescription drug benefit.

33. All communications between you or the State of New York and any federal agency regarding AWPs, EACs, FULs, including, but not limited to, any communications regarding the State of New York's compliance or noncompliance with federal regulations or policies related to pharmacy reimbursement for prescription drugs provided to recipients under the Medicaid programs.

34. All documents concerning any proceedings, including but not limited to, lawsuits, administrative or legislative proceedings, or criminal or civil investigations, in which your employees or agents have testified, provided statements, or been interviewed concerning the pricing or reimbursement of prescription drugs.

35. All communications between you or the State of New York and any other state or federal governmental entity, its officials, agents, employees, commissions, boards, divisions, departments, agencies, instrumentalities, administrators, other persons acting on their behalf, concerning drug prices, drug costs, dispensing fees or costs, reimbursement rates, or other benchmarks for the pricing or reimbursement of prescription drugs and dual-channel drugs, including all documents that relate to the processing or accounting treatment of any intergovernmental transfer payments between you or the State of New York and the Counties.

36. All current and historical organizational charts or similar document(s) that name or describe the Department of Health employees involved in, or in any way responsible for, the administration or oversight of the Medicaid and EPIC programs, including, but not limited to, all directors or similar officials for each bureau, office, division, or department within the Department of Health.

37. All current and historical organizational charts or similar document(s) that name or describe the Department of Health employees involved in, or in any way responsible for, the development and implementation of policies that relate to any reimbursement methodologies for prescription drugs under Medicaid and EPIC.

38. Documents sufficient to describe the document retention, destruction, or public disclosure policies of the Department of Health, including any changes to, or departures from, such policies.

39. All communications with the Counties or their attorneys concerning Medicaid or EPIC prescription drug reimbursement.

40. All communications with the Counties or their attorneys concerning the Counties' lawsuits against drug manufacturers over Medicaid reimbursement of prescription drugs.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY )<br>AVERAGE WHOLESALE PRICE )<br>LITIGATION )<br> )<br> )<br> )<br> )<br>——————————————————————— )<br> )<br>THIS DOCUMENT RELATES TO )<br>ALL ACTIONS )<br> ) | MDL No. 1456<br><br>Civil Action: 01-12257-PBS<br><br>Judge Patti B. Saris<br>(Case pending in D. Mass.) |

## NOTICE OF SUBPOENA TO THE STATE OF NEW YORK DEPARTMENT OF HEALTH AND RICHARD F. DAINES, M.D. COMMISSIONER

PLEASE TAKE NOTICE THAT pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network Corp., by its attorneys Hogan & Hartson LLP, and on behalf of all defendants in the above-captioned actions, and pursuant to the subpoena attached hereto, will take the deposition of the New York Department of Health by the person or persons who are knowledgeable concerning the matters set forth in Exhibit A to the subpoena attached hereto. Such deposition will be recorded by stenographic means and/or video and sound and will take place beginning at 10:00 a.m. Eastern Standard Time on January 9, 2008, and continuing on successive days as necessary, at the offices of Nixon Peabody LLP, Key Towers at Fountain Plaza, 40 Fountain Plaza Suite 500, Buffalo, NY 14202. Albany, New York.

Defendants reserve the right to take subsequent depositions, not just on all material issues, but also on those issues raised by any documents produced after the date of this

1

Notice.

PLEASE TAKE FURTHER NOTICE THAT the witness will be commanded to produce the documents set forth in Exhibit B.

You are invited to attend and participate.

Dated:     December 7, 2007

By:_____

Lyndon M. Tretter
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Defendants*
*Bristol-Myers Squibb Company and*
*Oncology Therapeutics Network Corp.*

2

## CERTIFICATE OF SERVICE

I, Hoa T. T. Hoang, certify that a true and correct copy of the foregoing Subpoena in A Civil Case was served on all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2 on May 28, 2004, by sending a copy to LEXIS NEXIS for posting and notification to all parties.

Hoa T. T. Hoang