# EXHIBIT E

I N D E X

1
2  Proceedings                                              3

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

P R O C E E D I N G S

1
2    (Court called into session)
3         THE CLERK:  The Honorable Marianne B. Bowler
4    presiding.  Today is September 19, 2006.  The case of Citizens
5    for Consumer, et al v. Abbott Labs et al, Civil Action No.
6    01-12257 will now be heard.  Will counsel please identify
7    themselves for the record.
8         MS. FEGAN:  Good morning, Your Honor, Elizabeth Fegan
9    on behalf of the plaintiffs.
10        THE COURT:  Thank you.
11        MR. JACKSON:  Good morning, Your Honor, Andy Jackson,
12   Peter Gelhaar and Merle Delancey on behalf of Baxter
13   Corporation.
14        THE COURT:  Thank you very much.  Well, we're here
15   for three motions, and I will hear you in the order in which
16   they have been filed.  The first is docket entry 2786, which is
17   plaintiffs' motion for sanctions against Baxter.
18        MS. FEGAN:  Yes, Your Honor, Elizabeth Fegan.  Your
19   Honor, since the close of discovery Baxter has produced over
20   4,000,000 pages.  This comes also during a time, and a very
21   compressed time period of three months in which we are supposed
22   to be conducting oral discovery of Baxter, and are doing so.
23   It also comes during a time when we are fully briefing and have
24   briefed and argued class certification against the Phase II
25   defendants.  There's no reason that this should have occurred

1   in 2006. This litigation's been pending against Baxter since
2   2001. Significantly, at the very first status conference or
3   Rule 16 conference before Judge Saris in 2002, she instructed
4   the defendants at that time that not only did they have to
5   produce their government investigation documents pursuant to
6   CMO-5, but that they should also begin gathering their
7   documents because none of them before her were unsophisticated
8   or didn't know what the litigation was about. And she told
9   them to start getting it together so that when it came time for
10  production, the defendants were ready.
11          In 2004 a second set of discovery requests were
12  served and it was served to get the Track II or Phase II
13  document discovery under way. Had documents begun rolling
14  during that time period, plaintiffs could have come up with a
15  plan to review these documents, identify witnesses for
16  deposition, identify further areas in which discovery was
17  needed and do this in the orderly course, in the normal course
18  of complex commercial litigation. When that wasn't happening
19  and it became clear it wasn't happening in 2005, I filed a
20  motion to compel against Baxter for the very reason that I was
21  worried that this was going to occur, that on the eve of the
22  close of discovery I would be inundated with documents. At
23  that time Mr. Delancey, who is here today, called me and
24  conferred and said, you know what, let's come up with a plan.
25  And I said, okay, let's come up with a plan, that's what I'm

1  so that we can refute the allegations the state has made that
2  we have deceived them or defrauded them in some capacity. And
3  that's what request number 8 goes to.
4         MS. FEGAN:  Your Honor, the answer to this one is
5  several fold.  First of all, we're not here on a 9(b) motion
6  and that can be, can and has been properly briefed before Judge
7  Saris in many different contexts and plaintiffs have survived
8  that.  Second of all, Your Honor, with respect to
9  representations made regarding AWP, it is the very publication
10 of AWP and something that is not the average wholesale price,
11 that is the reason that we're here.  So, you know, the request
12 is nonsensical.  They have deposed the head of the Medicaid
13 group.  They have served subpoenas on the HMO's that deal with
14 the pharmacy reimbursement.  They have this information already
15 and can and could have gotten it through depositions.  But I'm
16 not sure what else they're trying to get.  And frankly, if we
17 are talking in terms of legal relevance state knowledge as to
18 its understanding of AWP is irrelevant.  And we have attached
19 for the Court a similar situation where Attorney General
20 Spitzer in New York has brought cases on behalf of the New York
21 Medicaid group and there the court said that state or a
22 particular agency, a particular person's knowledge within an
23 agency is irrelevant because what this is is a legislature
24 formula that requires payment based on AWP or reimbursement
25 based on AWP and what's important is legislative intent.  And

1  legislative intent can be found in the public record. So
2  whether a particular person within an agency somewhere had a
3  representation or not is not how the fraud or the deception is
4  proven. It's the holding out of AWP as something that's not in
5  the public and what the legislative intent was behind using AWP
6  as part of the statutory framework.
7          So again, this could have been accomplished through
8  depositions. It is the very holding out of AWP and publication
9  of AWP as something that's not average wholesale price, and
10 again, this is an issue briefed before Judge Saris. And third
11 of all, particular individuals within an agency and what was
12 said or not said or their understanding or not understanding is
13 irrelevant when you're looking at state agencies.
14         MR. DILLON: Your Honor, there are two points that I
15 want to respond to, and if you don't mind I'd like to respond
16 to the second one, the government knowledge, and then I'll come
17 back to the issue of what we're seeking in request number 8.
18 The case that is cited there is a case in New York county
19 involving interpretation of what the Judge sees is a statute
20 with the term AWP. In Nevada the reimbursement formula is set
21 by administrative rule and, therefore, the understanding of the
22 term AWP as used by the Medicaid administrator, the director of
23 the Department of Health and Human Services and the pharmacy
24 program manager when they instituted that administrative rule
25 change are very important to the understanding of what the

1  intent was in setting that reimbursement formula, and that's
2  why the case is not apposite. And if you were to look at the
3  case law in Nevada as opposed to New York there the Nevada
4  Supreme Court has said that with respect to an agencies
5  interpretation of terms used by that agency, that that is given
6  weight. And the same thing would apply here.
7           In 2002 there was a rate change from AWP minus 10, to
8  AWP minus 15. That rate change was effected by Colleen
9  Lawrence, the pharmacy program manager, the Medicaid
10 Administrator Chuck Duarte, and the Department of Health and
11 Human Services, the person who ultimately signs off on this,
12 Mr. Mike Wilden. We have deposed each of those individuals.
13 We understand what they're saying AWP is. They don't share the
14 state's litigation posture. None of them understood AWP as an
15 average of wholesale prices. That brings me back to request
16 number 8. To the extent the state is saying that the false
17 representation made by each of the defendants was that when
18 they published a national pricing compendia pricing data marked
19 as AWP that was not a literal average of wholesale prices, that
20 that was a fraud or that was a deception, then I want to see
21 that as in a response to a contention interrogatory, signed on
22 behalf of the state of Nevada so we can go depose that witness
23 and ask that witness if that was their understanding and if
24 that was the understanding of the state of Nevada's Department
25 of Health and Human Services when it changed its rate. And I