UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Judge Patti Saris |
| *United States of America ex rel. Ven-a-Care of The Florida Keys, Inc., v. Abbott Laboratories, Inc.,*<br>CIVIL ACTION NO. 06-11337-PBS | Magistrate Judge Marianne Bowler |

**MEMORANDUM OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO QUASH THE SUBPOENAS OF IRA BURNEY AND DEBBIE CHANG AND IN SUPPORT OF A PROTECTIVE ORDER**

**BACKGROUND**

This Motion seeks to prevent yet another in a series of impermissible discovery requests made by Abbott Laboratories, Inc. ("Abbott") related to matters properly protected from discovery by the deliberative process privilege. At issue in this Motion are two subpoenas issued by Abbott for the depositions and documents of one current and one former employee of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services ("CMS"), Office of Legislation ("CMS Office of Legislation."). The CMS Office of Legislation is responsible for addressing issues brought to the attention of CMS by any Member of Congress. More specifically, the Office of Legislation: 1) provides leadership on Medicare, Medicaid, and State Children's Health Insurance Program (SCHIP) legislative strategies and hearings; 2) advances the policy process through development, analysis, and review of health care initiatives and issues; and 3) facilitates constructive and ongoing relationships between HHS and the Congress, the White House, and within HHS itself.

The first subpoena seeks documents and deposition testimony from Ira Burney, a Senior Policy Advisor with CMS Office of Legislation. Mr. Burney is a long time staff member with CMS Office of Legislation and, in that capacity, has provided policy input on the Medicare program to CMS administrators, to other offices within HHS, and to other agencies and governmental offices. The second subpoena seeks documents and deposition testimony from Debbie Chang, former Director of CMS Office of Legislation. As Director, Ms. Chang was integrally involved in all functions of the CMS Office of Legislation and responsible for its personnel, including Mr. Burney.

This is not the first time that Abbott has sought discovery of material properly protected by the deliberative process privilege. On November 20, 2007, Abbott moved to compel the production of documents in Mr. Burney's files, arguing that these documents should be produced over the objection that the documents reflected the opinions and recommendations of CMS staff related to the development of final policy decisions. Abbott Laboratories, Inc.'s Emergency Motion to Compel the Production of Ira Burney Documents at 3, Docket # 4892. The Court properly denied Abbott's motion, accepting the Government's argument that production of documents in the possession of Ira Burney would be inappropriate because they "relate to the internal deliberations concerning the promulgation and articulation of CMS policy." Government's Opposition to Abbott's Emergency Motion, Docket # 4937; 2/1/2008 Line Entry Denying Motion to Compel the Production of Ira Burney Documents (denying Abbott's motion to compel "for reasons stated by the government").

Despite this order, Abbott once again seeks documents from Ira Burney that relate to the internal deliberations concerning CMS policy. In addition, Abbott seeks deposition testimony

from Mr. Burney that, if taken, will completely undercut the deliberative process privilege already accorded Mr. Burney's documents by the Court. Finally, Abbott similarly seeks documents and deposition testimony from Ms. Chang, both of which are also properly protected as deliberative material.

## ARGUMENT

**I.      Scope of Permissible Discovery Under Fed. R. Civ. P. 26.**

A party is not entitled to obtain discovery of information that is privileged. Fed. R. Civ. P. 26(b)(1). With regard to deposition discovery, the district court must quash a subpoena that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(c)(3); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001). Furthermore, a party is only entitled to discover information that is "relevant to the subject matter" of the case or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). As a consequence, when the subject of a discovery request shows the "irrelevancy of proposed discovery," the district court may issue a protective order barring the irrelevant discovery. *E.g., Smith v. Dowson,* 158 F.R.D. 138, 141 (D. Minn. 1994).

In addition, the court may, at its discretion, issue a protective order limiting discovery for "good cause." Fed. R. Civ. P. 26(c); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007). Because the deposition testimony sought by Abbott is subject to the deliberative process privilege, and because there is otherwise good cause to prevent the noticed depositions from going forward, the Court should **GRANT** the Government's Motion to Quash the Subpoenas of Ira Burney and Debbie Chang and Motion for a Protective Order. Fed. R. Civ. P. 26(b) and (c), 45(c)(3); *Bogan*, 489 F.3d at 423; *Ameristar*, 244 F.3d at 192.

**II.    The Deposition Testimony of Ira Burney and Debbie Chang
Is Protected By the Deliberative Process Privilege.**

    A.    <u>The Purpose and Scope of the Deliberative Process Privilege.</u>

The purpose and scope of the deliberative process privilege have been discussed at great length in this litigation and this Court has already recognized the broad scope of the privilege as it applies to deliberative material produced by CMS. CMS internal material that is predecisional and deliberative is protected by the deliberative process privilege. Aug. 13, 2007 Electronic Order denying Abbott's Motion to Compel. For a more complete discussion of the contours of the deliberative process privilege, the Government respectfully directs the Court to its April 20, 2007 Opposition to Defendant Abbott Laboratories, Inc.'s Renewed Motion to Compel Evidence Withheld Under the Deliberative Process Privilege. *See also Carter v. United States Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) ("The purpose of this privilege is to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."); *Texaco P.R. Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884-885 (1st Cir. 1995)*; Providence Journal Co. v. United States Dep't of the Army*, 981 F.2d 552, 557 (1st Cir. 1992); *Nkihtaqmikon v. Bureau of Indian Affairs*, 493 F. Supp. 2d 91, 102 (D. Maine 2007) (the privilege is "designed to protect not only deliberative material, but also the quality of the deliberative process and agency decisions").

While *purely factual* material is not protected by the deliberative process privilege, factual material that is "so interwoven with the deliberative material that it is not severable" is privileged from disclosure. *Warner*, 742 F.2d at 1161. *See also Providence Journal*, 981 F.2d at 562. In *United States v. Fernandez*, the communication at issue was an evaluation form that

4

contained a section both for "facts and evidence" and an evaluation based on those facts. *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000). The court held that the factual material was not severable from deliberative material because both, together, were designed to help the agency head reach a final decision. *Id*. As a result, the entire communication, including the "facts and evidence" section, were protected by the deliberative process privilege. *Id*.

With this principle in mind, courts have cautioned that the "fact/opinion distinction should not be applied mechanically." *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N. D. Cal. 2003). Rather, the courts "generally follow a functional approach in an attempt to determine whether production" would be "injurious to the consultative functions of government." *Providence Journal*, 981 F.2d at 562 (internal citations omitted). Furthermore, even if the requested material is found by the court to be factual, it is exempt from disclosure when disclosure of the factual information "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency." *Id.*

   B. <u>The Application of the Privilege to Deposition Discovery</u>

The deliberative process privilege may be invoked to protect against "any discovery tool, whether by interrogatory or depositions or otherwise." *Federal Trade Comm'n v. U.S. Grant Res.*, LLC, 2004 WL 1444951 at *9 (E.D. La. 2004). As a result, courts routinely uphold the invocation of the deliberative process privilege to prevent depositions of Government officials. *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 13 (D.D.C. 1993); *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 293 (N.D. W.V. 1992); *Jeff D. v. Kempthorne*, 2006 WL 2540090 at *2 (D. Idaho 2006); *U.S. Grant Res.*, 2004 WL 1444951 at *9. Indeed, as courts have recognized, the

deliberative process privilege must apply to protect against disclosure of privileged information through deposition discovery in order to prevent a party from "obtaining through the back door" what it is "not entitled to acquire through the front." *U.S. Grant Resources*, 2004 WL 1444951 at *9.

Accordingly, in order to prevent a party from making an end-run around the deliberative process privilege through deposition discovery, courts have eased the ability of the Government to invoke the requirements of the deliberative process privilege in the context of depositions. When a party invokes the privilege to prevent a deposition rather than document discovery, the same limitations are not applied as they would be applied in document discovery cases. *Scott*, 142 F.R.D. at 293-94 ("it simply does not make sense" that requirements such as indexing privileged material should apply "where the allegedly privileged material is testimony rather than documents"). *See also Walker*, 810 F. Supp. at 13-14; *Kempthorne*, 2006 WL 2540090 at *2; *U.S. Grant Res.*, 2004 WL 1444951 at *9.

The deliberative process privilege is particularly critical in the context of deposition discovery. Among the most important policy considerations for the application of the privilege is to prevent the chilling effect that will result from subjecting agency employees to unwarranted "ridicule or criticism." *Carter*, 307 F.3d at 1089; *Providence Journal*, 981 F.2d at 562; *Reliant Energy*, 520 F. Supp. 2d at 204. It is hard to imagine a more disconcerting and troubling experience than for an agency employee to be subjected to a deposition to discuss the internal discussions that lead to reasons for some past agency action. *See United States v. Nixon*, 418 U.S. 683, 705 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests

to the detriment of the decision-making process.").

      C.  Any Deposition Testimony that Ira Burney or Debbie Chang Could Offer Is Protected by the Deliberative Process Privilege.

  With these principles in mind, any testimony that Mr. Burney or Ms. Chang could offer fits squarely within the protections of the deliberative process privilege. *Texaco*, 60 F.3d at 884. Mr. Burney is currently a Senior Policy Advisor with CMS Office of Legislation. Ms. Chang is formerly the Director, CMS Office of Legislation. Both the unique function of CMS Office of Legislation in the policy-making process, and the role of Mr. Burney and Ms. Chang within CMS Office of Legislation make their knowlege both predecisional and deliberative within the meaning of the privilege. 3/6/2008 Decl. of Johnson at ¶¶ 4-5, 7-8, 9-10 (Attached as Exhibit 1). CMS Office of Legislation personnel advise and consult with high ranking members of the Executive Branch, who rely on their judgment related to the implications of proposed policy decisions. *Id.* at ¶ 4.

  The information possessed by CMS Office of Legislation personnel is "predecisional" because all of the information was developed for the purpose of assisting the agency decision-maker make a final decision and is associated with some final agency action. *Nkihtaqmikon*, 439 F. Supp. 2d at 103; 3/6/2008 Decl. of Johnson at ¶ 5. Specifically, the information developed, communicated, and possessed by Mr. Burney and Ms. Chang is part of the policy development process used by officials from the White House and other offices within HHS and CMS. 3/6/2008 Decl. of Johnson at ¶¶ 8-10, 12 . Their perspectives and judgments were part of the exchange of ideas that assisted the decision-makers formulate ultimate policy decisions. *Id.* at ¶¶ 4, 11. Because 1) the work product of Mr. Burney and Ms. Chang was acquired for the purpose

of aiding in the ultimate decision-making process, 2) neither Mr. Burney nor Ms. Chang are final decision-makers, and 3) their advice and judgment is part of the exchange of ideas that facilitated agency decision-making, the knowledge and information they possess is "predecisional" within the meaning of the deliberative process privilege. *Providence Journal*, 981 F.2d at 559; *Nkihtaqmikon*, 439 F. Supp. 2d at 103.

In addition, all of the knowledge and information that Mr. Burney and Ms. Chang possess is "deliberative" within the meaning of the privilege because it is related to the process by which agency policies are formulated. *Texaco*, 60 F.3d at 884. Specifically, they offer input into the legislative and regulatory proposals of those Government officials responsible for making final policy decisions. 3/6/2008 Decl. of Johnson at ¶ 5. Their opinions, however, are not the official position of the agency and, if released, could innacurately reflect the views of the agency. *Id.* at ¶¶ 7, 10-11; *Providence Journal*, 981 F.2d at 559 (material is deliberative if it "would inaccurately reflect" "the views of the agency" if released). In sum, Mr. Burney and Ms. Chang's knowlege is both predecisional and deliberative and, therefore, is covered by the deliberative process privilege. *Texaco P. R.*, 60 F.3d at 884-885; *Providence Journal*, 981 F.2d at 562; *Nkihtaqmikon*, 439 F. Supp. 2d at 103.

> D.   The Relevant Factors Qualifying the Deliberative Process Privilege
>      <u>Weigh Heavily in Favor of Upholding the Privilege.</u>

The deliberative process privilege is a qualified privilege. *Texaco P. R.*, 60 F.3d at 885. In other words, the privilege may be overcome by a litigant who shows an overriding need for the materials. *Warner*, 742 F.2d at 1161. The factors that courts traditionally consider when balancing the deliberative process privilege against the needs of the litigant seeking discovery are

1) the role of the Government, *i.e.* whether the Government's deliberations are at issue in the case; 2) the relevance of the evidence sought; 3) the extent to which disclosure will hinder frank and open discussions of ideas; and 4) whether the information can be obtained from another source. *See In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D. C. Cir. 1998) (deliberations at issue); *Kempthorne*, 2006 WL 2540090 at *2 (relevance); *Warner*, 742 F.2d at 1161 (hindrance of frank and open discussions); *Walker*, 810 F. Supp. at 14 (availability from another source). These factors all weigh in favor of upholding the deliberative process privilege rather than permitting deposition discovery of Mr. Burney and Ms. Chang.

1. <u>The Role of the Government in the Dispute</u>

This case is about Abbott's scienter in reporting false prices to the Government, not about Government policy-making. As a result, the "governmental decisionmaking process is collateral" to the suit at hand. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D. C. Cir. 1998). Unless "either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue" in a case, the role of the Government factor favors non-disclosure of privileged material. *Id*. For example, courts routinely find that the role of the Government favors disclosure when the cause of action implicates charges of governmental discrimination. *Id*.; *see also Qamhiyah v. Iowa State University of Sciences and Technology*, 245 F.R.D. 393, 397 (S. D. Iowa 2007). Because, in this case, the cause of action is based on the False Claims Act, which does not make "governmental officials' deliberations *the* issue," any governmental decisionmaking is irrelevant, or, at most, collateral to the suit at hand. *In re Subpoena Duces Tecum*, 145 F.3d at 1424. As a

consequence, the application of this factor counsels in favor of upholding the privilege. *Id.*; *Qamhiyah*, 245 F.R.D. at 397.

### 2. The Relevance of the Information Sought

Abbott has made no showing that the deposition information it seeks is relevant. *Warner*, 742 F.2d at 1161; *Kempthorne*, 2006 WL 2540090 at *2. As discussed by the Court previously in this litigation, information possessed by the Government which may be relevant is information related to the spread for Abbotts' drugs. Nov. 9, 2007 Order re: Objections to Aug. 13, 2007 Order by Magistrate Judge Bowler, Docket # 4885. Neither Mr. Burney nor Ms. Chang has any knowledge about the spread for Abbott's drugs. 3/6/2008 Decl. of Johnson at ¶¶ 8, 10. Because of the nature of the CMS Office of Legislation, both Mr. Burney and Ms. Chang focused on larger policy-related issues, and did not acquire information related to individual manufacturers. *Id.* at ¶¶ 8, 9. As a result, there is no information possessed by either that is within the scope of relevance as determined by this Court. In addition, the unofficial opinions and interpretations of agency personnel are irrelevant to any regulatory interpretation. *United States v. Lachman*, 387 F.3d 42, 53-54 (1st Cir. 2003). Any opinions or judgments that either Ms. Chang or Mr. Burney hold are not official, final agency policy, but rather are their own opinions or judgments. 3/6/2008 Decl. of Johnson at ¶¶ 11. Because any deposition evidence that could be obtained by discovery from either witness is not relevant, the relevance factor counsels against disclosure of information protected by the deliberative process privilege. *Warner*, 742 F.2d at 1161; *Kempthorne*, 2006 WL 2540090 at *2.

### 3. The Chilling Effect of Deposing These Witnesses

As noted, the purpose of the deliberative process privilege is to "allow agencies freely to

explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Carter*, 307 F.3d at 1089. Only by creating an environment where agency employees can discuss policy free from the fear of public scrutiny can the agency hope to achieve the quality of public decision-making that the administration of our federal programs requires. *Nkihtaqmikon*, 493 F. Supp. 2d at 102. As noted above, the care taken to maintain an open environment for discussion within an agency must be guarded with even greater force when the proposed discovery is by deposition. *Kempthorpe*, 2006 WL 2540090 at *2 ("the compelled disclosure of predecisional . . . discussions would almost certainly injure the quality of agency decisions."). In order to prevent agency employees from tempering "candor with a concern for appearances and for their own interests to the detriment of the decision-making process," the agency culture must be kept free from the burden deposition discovery entails. *Nixon*, 418 U.S. at 705.

The depositions of Mr. Burney and Ms. Chang would have precisely the kind of chilling effect which the deliberative process privilege is intended to avoid. CMS Office of Legislation personnel expect that the substance of their work-related discussions will be kept confidential. Indeed, CMS Office of Legislation fosters this expectation in order to ensure candid discussion, deliberation, and analysis. 3/6/2008 Decl. of Johnson at ¶ 13. The depositions of Mr. Burney and Ms. Chang, therefore, would be detrimental to the functioning of CMS. Because the frank and open discussions within CMS Office of Legislation are predicated on the expectation of confidentiality, the untempered candor of agency personnel would cease if they perceived that they may be called upon to give sworn testimony about their role in agency actions. *Id*. at ¶ 16. The fear of public scrutiny and ridicule, as well as the unpleasant exercise of being deposed, will

have a chilling effect on the exchange of ideas within the agency. *Id.* Because the depositions of Mr. Burney and Ms. Chang would harm frank and open discussions of ideas and deter agency personnel from providing decision-makers with their uninhibited opinions and recommendations, further discovery is not appropriate in this case. *Providence Journal*, 981 F.2d at 557. *Nkihtaqmikon*, 493 F. Supp. 2d at 102; 3/6/2008 Decl. of Johnson at ¶ 16. *See also Reliant Energy Power Generation, Inc. v. F.E.R.C.*, 520 F. Supp. 2d 194, 204 (D.D.C. 2007) (holding that the purpose of the deliberate process privilege is to prevent the "chilling effect" that disclosure has on agency officials).

    4.  Availability of Evidence from Other Sources

  The Government's previous production of a significant amount of factual information related to Abbott's requests also militates against the depositions of Mr. Burney and Ms. Chang. *Warner*, 742 F.2d at 1161; *Walker*, 810 F. Supp. at 14. As discussed more fully in the Government's November 2, 2007 Memorandum in Support of its Opposition to Abbott's Motion to Compel, the Government has produced vast amounts of material related to the issue of what the Government knew about prescription drug pricing from, among other sources, the HHS Office of the Inspector General ("HHS-OIG"). Nov. 2, 2007 Memorandum in Opposition to Abbott's Motion to Compel at 5-6. The Government has also produced tens of thousands of pages of documents from the files of both CMS and the Medicare carriers that administer the Medicare drug benefit. *Id*.

  In addition to this document discovery, Abbott has taken extensive oral discovery regarding the information CMS acquired about sales prices for drugs. *Id*. at 7. Abbott has deposed witnesses from every level in the CMS and HHS hierarchy, including former CMS

administrators, about notices of proposed rulemaking, public responses thereto, and the articulation of final agency policies issued in the Federal Register. *Id*. at 7. To the extent that it seeks factual information regarding the Government's knowledge of drug pricing, Abbott's subpoenas seek information that is completely duplicative of information that it has already received through its other discovery requests; additional deposition discovery would be cumulative and ultimately useless to any legitimate litigation purpose. For example, Abbott has taken depositions of 28 current and former CMS and HHS employees, amounting to 39 days of depositions. The scope of information sought during these depositions was not only wide-ranging, but also *precisely identical* to the scope of the information sought in the depositions of Mr. Burney and Ms. Chang.[1] Because there are alternate sources of information for the exact information requested and because Abbott has already deposed numerous current and former CMS employees on these very subjects, the additional depositions of Mr. Burney and Ms. Chang are duplicative and unwarranted. *Warner*, 742 F.2d at 1161; *Walker*, 810 F.Supp. at 14. As a result, this last factor, the presence of alternative sources of evidence, counsels against disclosure of the protected information. *Warner*, 742 F.2d at 1161; *Walker*, 810 F.Supp. at 14.

Abbott's subpoenas of Mr. Burney and Ms. Chang are particularly problematic in light of the admonition that even purely factual information may be protected by the deliberative process privilege. *Warner*, 742 F.2d at 1161. *See also Providence Journal*, 981 F.2d at 562. With respect to deposition discovery, there is no information more inseverable than the facts a person

---

[1] For example, many of the subpoenas requested that the deponents bring with them documents "relating in any way to the pricing of drugs and/or the administration of drugs under Medicare or Medicaid" and all documents "concerning the use of AWP or WAC by the Medicare or Medicaid programs for the reimbursement of drugs and/or the administration or dispensing of drugs." *E.g.*, 10/11/2007 Subpoena Duces Tecum of Robert Neimann; 7/13/2007 Subpoena Duces Tecum of Thomas Scully; 11/6/2007 Subpoena Duces Tecum of John Warren. In its deposition notices to Ira Burney and Debbie Chang, Abbott seeks the *exact same* information using the *exact same* language.

knows and his opinions or evaluations of these facts. Indeed, both Mr. Burney's knowlege and Ms. Chang's knowlege is tightly bound up with their judgment and evaluation of CMS operating programs and closely associated with broader policy evaluations. 3/6/2008 Decl. of Johnson at ¶¶ 8, 10, 14. As a result, any factual information they have acquired is so "interwoven with deliberative material that it is inseverable." *Providence Journal*, 981 F.2d at 562; *Warner*, 742 F.2d at 1161; 3/ /2008 Decl. of Johnson at ¶ 8, 10, 14.

Furthermore, the depositions of these witnesses, even on factual grounds, would be especially inappropriate given that documents covering the same topic areas have already been held to be protected from disclosure by the deliberative process privilege. 2/1/2008 Line Entry Denying Motion to Compel the Production of Ira Burney Documents. Permitting the depositions of Mr. Burney and Ms. Chang, even if they are limited to factual matters only, would vitiate the protection for deliberative information and allow an end-run around the deliberative process privilege. *See U.S. Grant Res.*, 2004 WL 1444951 at *9. In light of the foregoing factors, the deliberative process privilege should be upheld and the deposition subpoenas of Ira Burney and Debbie Chang should be quashed. Fed. R. Civ. P. 45(c)(3); *Ameristar*, 244 F.3d at 192.[2]

### III. Irrespective of the Deliberative Process Privilege, There Is Good Cause for the Court to Issue a Protective Order Preventing Deposition Discovery.

Even if the Court finds that the deliberative process privilege does not require the

---

[2] If the Court does not grant the Government's motion at this time, it would still be appropriate to stay all further discovery that implicates the deliberative process privilege until the resolution of Abbott's objections to Magistrate Judge Bowler's February 1, 2008 Order, in which the Court denied Abbott's motion to compel documents from Ira Burney. Permitting the deposition of Ira Burney at this time would be inconsistent with the Court's February 1, 2008 Order. *U.S. Grant Resources*, 2004 WL 1444951 at *9 (preventing deposition discovery in order to prevent a party from "obtaining through the back door" what it is "not entitled to acquire through the front.").

quashing of the subpoenas of Ira Burney and Debbie Chang, the Court, at its discretion, may issue a protective order limiting discovery for good cause. Fed. R. Civ. P. 26(b)(2); *Ameristar*, 244 F.3d at 192; *Dowson,* 158 F.R.D. at 141. In light of the issues involved this litigation, the information that Abbott seeks to discover in these depositions is irrelevant. Furthermore, it is cumulative of the vast amount of discovery that Abbott has already taken to date. Finally, even if the court finds that the Government's interests in protection of the agency decision-making process do not rise to the level of privilege, these interests are still "good cause" to issue a protective order under Rule 26. *Gill v. Gulfstream Racing Park*, 399 F.3d 391, 402-03 (1st Cir. 2005). As a result, there is good cause for the entry of a protective order and quashal of the subpoenas of Mr. Burney and Debbie Chang. Fed. R. Civ. P. 26(b) and (c), 45(c)(3); *Bogan*, 489 F.3d at 423; *Ameristar*, 244 F.3d at 192.

      A.     <u>The Deposition Discovery Sought by Abbott is Irrelevant and Cumulative.</u>

As noted above, Abbott has made no showing that the deposition information it seeks is relevant. This case is about Abbott's scienter in reporting false prices to the Government, not about Government policy-making. Nov. 9, 2007 Order re: Objections to Aug. 13, 2007 Order by Magistrate Judge Bowler. As a result, information possessed by the Government that is not related to the spread for Abbotts' drugs is not relevant to this litigation. Any information possessed by Ira Burney and Debbie Chang falls outside the permissible scope of discovery. 3/6/2008 Decl. of Johnson at ¶¶ 8, 10. In light of the Court's previous order delineating what is relevant to this case, and in light of Abbott's failure to seek discovery within these bounds or articulate a legitimate basis for deposition evidence, the Court should enter a protective order barring the deposition discovery of these individuals. *Ameristar*, 244 F.3d at 193; *Dowson,* 158

F.R.D. at 141.

Also noted above, the Government has already produced a substantial amount of factual information related to the issue of what the Government knew about prescription drug pricing from, among other sources, HHS-OIG, CMS, and Medicare carriers.  Nov. 2, 2007 Memorandum in Opposition to Abbott's Motion to Compel at 5-6.  Any further discovery into these areas of inquiry would be impermissibly cumulative.  *Ameristar*, 244 F.3d at 192.  Abbott also has taken extensive oral discovery regarding the information CMS acquired about sales prices for drugs.  Nov. 2, 2007 Memorandum in Opposition to Abbott's Motion to Compel at 5-6.  Because further deposition discovery would be cumulative, the Court should enter a protective order barring the depositions of Mr. Burney and Ms. Chang.  *Ameristar*, 244 F.3d at 193.

> B.  The Government's Interest in Protecting the Agency Decision-making Process Constitutes Good Cause for the Entry of a Protective Order.

The Government's interest in protecting the agency decision-making process alone constitutes "good cause" for the entry of a protective order.  *Gill*, 399 F.3d at 402-03 (on a motion for a protective order, even when the district court finds that a privilege does not exist, it must still weigh the interests implicated by the claimed privilege in its protective order "good cause" analysis).  Courts have long expressed a deep reluctance to permit depositions of Government agency officials when so doing will disclose the process by which the officials reach their conclusions.  *United States v. Morgan*, 313 U.S. 409, 422 (1941).  As with the deliberative process privilege, this exemption from deposition discovery is rooted in the need to protect agency officials from testifying about their "reasons for taking official action." *Bogan*, 489 F.3d at 423.  Subjecting Mr. Burney and Ms. Chang to deposition with regard to their roles in agency

policy development may have the effect of chilling the robust debate that high-quality agency decision-making requires.  3/6/2008 Decl. of Johnson at ¶ 16.  *In re United States of America*, 985 F.2d at 512 (11th Cir. 1993).

The application of this principle is particularly appropriate with regard to the deposition of Ms. Chang.  As the former Director, CMS Office of Legislation, Ms. Chang reported directly to the CMS Administrator.  3/6/2008 Decl. of Johnson at ¶ 9.  Moreover, as a political appointee, Ms. Chang had additional responsibilities that put her into close contact with the administration; the discussions in which she participated were of a particularly sensitive and confidential nature. *Id*.  Because Ms. Chang's functions within CMS Office of Legislation placed her at the nexus of the policy development process, preventing the deposition of Ms. Chang is consistent with the goal of protecting agency officials from testifying about their "reasons for taking official action," *Bogan*, 489 F.3d at 423, and to "preserve the integrity of the administrative process," *In re United States of America*, 985 F.2d 510, 512 (11th Cir. 1993).

## CONCLUSION

A party is not permitted discovery of privileged information.  Depositions of Ira Burney and Debbie Chang inevitably would lead to the disclosure of privileged information because any knowledge they may have that is relevant to this case is predecisional and deliberative in character.  To the extent that either Mr. Burney or Ms. Chang possesses factual information relevant to this case, it is so interwoven with protected deliberative material that it is functionally inseparable from it.  The role of the Government, the irrelevance of the information sought, the availability of information from alternate sources, and the chilling effect that these depositions would have on the free flow of ideas within the agency all strongly counsel against this

discovery.

In addition to the deliberative process privilege, there is also good cause for the Court to quash Abbott's subpoenas. The information Abbott seeks is irrelevant to any claims or defenses at issue in this case and is cumulative of the significant discovery already had by Abbott. Further, permitting these depositions will diminish the quality of the agency decision-making process, not only for HHS and CMS, but also for any agency whose members anticipate that their decisions may be subject to future litigation. For all of these reasons, the Court should **GRANT** the Government's Motion to Quash and Motion for a Protective Order.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, the United States hereby requests oral argument on this Motion.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | JEFFREY S. BUCHOLTZ<br>ACTING ASSISTANT<br>ATTORNEY GENERAL |
| /s/ George B. Henderson, II<br>George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>(617)748-3272 | /s/ Evan C. Zoldan<br>Joyce R. Branda<br>Daniel R. Anderson<br>Renee Brooker<br>Justin Draycott<br>Gejaa T. Gobena<br>Rebecca A. Ford<br>Evan C. Zoldan |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF<br>FLORIDA | Civil Division<br>Commercial Litigation Branch<br>P.O. Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Phone: (202) 305-2335 |
| /s/ Mark A. Lavine<br>Mark A. Lavine<br>Ana Maria Martinez<br>Ann St. Peter-Griffith<br>Special Attorneys for the Attorney General<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL 33132<br>Phone: (305) 961-9003<br>Fax: (305) 536-4101 | |

Dated: March 6, 2008