# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** ) *United States of America ex rel. Ven-a-Care of* ) *The Florida Keys, Inc., v. Abbott Laboratories,* ) *Inc.,* ) CIVIL ACTION NO. 06-11337-PBS ) | Judge Patti Saris  Magistrate Judge Marianne Bowler |

## DECLARATION OF DONALD N. JOHNSON

I, Donald N. Johnson, declare as follows:

1. My name is Donald N. Johnson. I am over twenty-one years of age, of sound mind, and am fully competent to make this declaration. My statements in this declaration are based on information personally known to me or conveyed to me by agency personnel who have reviewed the information described in subsequent paragraphs of this declaration.

2. I am presently employed as the Deputy Director of the Department of Health and Human Services (HHS), Centers for Medicare & Medicaid Services (CMS), Office of Legislation (OL). I have held my present position since 1999.

3. The CMS OL is responsible for responding to and addressing issues brought to the attention of CMS by any Member of Congress. More specifically, the OL: 1) provides leadership on Medicare, Medicaid, and State Children's Health Insurance Program (SCHIP) legislative strategies and hearings; 2) advances the policy process through development, analysis, and review of health care initiatives and issues; and 3) facilitates constructive and ongoing relationships between HHS and the Congress, the White House, and within HHS itself.

4. The CMS OL serves a unique function in the policy-making process. Its employees work closely with members of Congress to promote the administration's policies and legislative proposals, answering specific questions and addressing concerns of both particular members and Congressional committees. They also provide technical assistance to Congress during the drafting phases of proposed legislation, ensuring

that any proposed legilsative language acheives its intended purpose in light of the complex legislative and regulatory scheme already in place. Both Congress and high ranking members of the administration rely on the personnel of CMS OL to provide their judgment on the implications of proposed policy decisions.

5. All of the work that CMS OL does is done in contemplation of final governmental action, whether legislation, administrative regulation, or formal policy papers. Although the personnel of CMS OL act as advisors and liasons between Congress and the administration on these legislative and regulatory proposals, CMS OL does not produce any final policy decisions itself. Rather, CMS OL and its personnel add value to the administrative and legislative process by offering input into the legislative and regulatory proposals of those government officials responsible for making final policy decisions. CMS OL personnel will often suggest modifications to existing proposals during phone calls or during in person briefings and meetings.

6. I have been informed that the deposition testimony of Ira Burney and Debbie Chang has been requested in connection with the above-captioned litigation.

7. Ira Burney is a Senior Policy Advisor with CMS OL. Mr. Burney's knowlege of the intricacies of CMS and HHS have made his judgment invaluable within CMS, to other offices within HHS, and to other agencies and governmental offices. For example, Mr. Burney is routinely called on by the CMS Office of the Actuary, Office of Research, and Office of Clinical Standards and Quality to offer his advice and opinions. He is often called on by members of Congress, who ask for him by name, to discuss the implications of proposed legislation. While his knowlege of CMS programs is far reaching, Mr. Burney is not in a position to make any final policy decisions; he authors neither final legislation, regulations, nor policy papers. Any opinions or judgments that he holds are not official, final agency policy, but rather are his own considered opinions or judgments. Rather, his value lies in his knowledge of the interrelation among the various CMS programs. He is particularly valuable because he is so well-trusted by government officials outside of HHS. As a result, his advice is sought with the understanding that he will keep his communications with other members of the government confidential. Indeed, his value is largely rooted in his ability to be candid and give his unfiltered judgment to a variety of constituencies.

8. All of Mr. Burney's knowlege as to the specific details of program operations comes from data supplied by various program offices; it does not come from his own research or first-hand knowledge of any of these program operations. No facts or data are compiled by Mr. Burney or anyone else in the CMS OL; rather, any information of this type is drawn from external sources. Furthermore, Mr. Burney's knowlege of any program operations is tightly bound up with his judgment and evaluation of these programs, e.g., what the implications of the program operations are from the perspectives of the administration, CMS Office of the General Counsel, and members of Congress. That said, his knowlege of the details of payments to specific manufacturers is essentially nonexistent. CMS OL in general, and Mr.

Burney specifically, are not occupied with the details of reimbursement to specific manufacturers. Mr. Burney's knowlege is of broader policy implications and is not familiar with reimbursement or other payments to any specific manufacturer. Specifically with regard to Abbott, Mr. Burney was never involved with any decisions that were Abbott-specific and does not possess any knowlege about reimbursement for Abbott's drugs specifically.

9. Debbie Chang was formerly the Director of CMS OL. As the head of CMS OL, reporting directly to the CMS Administrator, Ms. Chang was integrally involved in all of the functions of the CMS OL described above. Specifically, Ms. Chang coordinated the liaison functions of CMS OL personnel, ensuring that a delicate balance was kept among: 1) promoting the objectives of the administration; 2) protecting the integrity of CMS programs; and 3) working to garner and maintain support of members of Congress. Because Mr. Burney reports to the Director, CMS OL, Ms. Chang was ultimately responsible for all of the functions described above as Mr. Burney's job functions. Moreover, as a political appointee, Ms. Chang had additional responsibilities that put her into closer contact with the administration. Ms. Chang's discussions with other members of the administration were of a particularly sensitive and confidential nature. Ms. Chang's discussions were all at the level of giving high-level advice to ultimate policy-makers.

10. However, even as the Director of CMS OL, Ms. Chang's judgments and opinions were not the final policy of CMS, HHS, or any other official body. As described above, the nature of CMS OL is to provide advice and judgment to final decision-makers. As a result, Ms. Chang's knowlege and opinions represents her understanding of the issues important in the ongoing process of policy-making involving the administration and administrative agencies. As with Mr. Burney, Ms. Chang's knowlege is of broad policy implications; she is not familiar with reimbursement or other payments to any specific manufacturer. To my knowledge, Ms. Chang is not familiar with reimbursement or other payments to any specific manufacturer, including Abbott.

11. Because neither Mr. Burney nor Ms. Chang are or were ever the final decision-makers responsible for implementing agency policy, their impressions, opinions, and judgments reflect their personal impressions, opinions, and judgments rather than the final conclusions or policies of CMS or HHS. That said, their perspectives and judgments were part of the exchange of ideas that assisted the ultimate decision-makers of the agency formulate policy decisions.

12. All work-related discussions that take place within CMS OL are part of the policy development process. Whether the policy goal arises from specific discussions with police-makers or from a more general directive to fulfill the statutory and regulatory mandates of our agency, all of these discussions are undertaken knowing that some policy issue is at stake. Because CMS and HHS are constantly reevaluating their procedures and policies to further implement their mandates, all of the knowledge possessed by employees such as Mr. Burney and Ms. Chang is part of the process

that may result in final agency action – including the final action of maintaining a current policy.

13. It is important to the successful functioning of CMS OL that each member of the agency feels free to debate, question, and offer opinions as to CMS and HHS policy. In order to achieve the free flowing exchange of information that is essential to the high-quality evaluative work that CMS OL undertakes, we have established a culture of open dialogue among CMS OL personnel in connection with all of our work product. Our personnel expect that the substance of their work-related discussions will be kept confidential and we foster this expectation in order to ensure candid discussion, deliberation, and analysis.

14. With respect to the CMS- or HHS-related information possessed by either Mr. Burney or Ms. Chang, there is no practical distinction between factual and deliberative information. No matter how this information is characterized, all information that they possess related to CMS or HHS reflects not only their interpretation but the interpretations and considered judgments of others within the agency, other agencies, or the White House. As a result, any testimony they could give of facts related to the practices and policies of HHS or CMS would necessarily reveal their deliberative judgment as well as the deliberations of the administration. Any such testimony would also necessarily reveal information about documents over which HHS and CMS has previously claimed the deliberative process privilege.

15. In addition, because neither Mr. Burney nor Ms. Chang are or were ever the final decision-makers responsible for implementing agency policy, I believe that their personal opinions or judgments about agency policy would be misleading if made publicly available. The public might infer that either Mr. Burney's or Ms. Chang's impressions or judgments were agency policy rather than their own person opinions.

16. I believe that the depositions of Mr. Burney and Ms. Chang would be detrimental to the functioning of CMS. Because the frank and open discussions within CMS OL are predicated on the expectation of confidentiality, I believe that the untempered candor of agency personnel would cease if they perceived that they may be called upon to give sworn testimony about their role in agency actions. I believe that the fear of public scrutiny and ridicule, as well as the unpleasant exercise of being deposed, will have a chilling effect on the exchange of ideas within the agency. Personnel may be less likely to disagree with what they perceive is established policy and less likely to offer new and creative ideas. Equally importantly, if the administration no longer had confidence that their discussions with members of CMS OL would remain confidential, much of the communication between CMS OL and the administration would be impaired. As a consequence, the efficacy of CMS OL would sharply decline. Furthermore, the agency may be less likely to attract high-quality personnel if applicants feared that they would be subject to deposition for doing their jobs effectively. Because frank and open discussions are essential to the proper functioning of CMS, the depositions of Mr. Burney and Ms. Chang could seriously undermine the ability of CMS to function at the high level required.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this \_\_6\_\_ day of March, 2008.

*Donald N. Johnson*

Donald N. Johnson