# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS RELATING TO TRACK TWO DEFENDANTS | Judge Patti B. Saris |

## TRACK TWO SETTLEMENT AGREEMENT AND RELEASE

i

## TABLE OF CONTENTS

I.      CLASS DEFINITION. ...................................................................................5

        A.      Medicare Part B Co-Payment Class ("Class 1")......................................5

        B.      Third-Party Payor MediGap Supplemental Insurance Class ("Class 2"). ..............5

        C.      Consumer and Third-Party Payor Class For Payments Made Outside the Medicare
                Context ("Class 3"). ..............................................................6

II.     OTHER DEFINITIONS. ..............................................................................6

III.    SETTLEMENT TERMS .................................................................................15

        A.      Certification of Settlement Classes...................................................15

        B.      Settlement Amount/Confidentiality....................................................15

                1.      Settlement Amount. ..........................................................15

                2.      Confidentiality. ............................................................16

        C.      Settlement Fund/Escrow Account/Qualified Settlement Fund. ............................16

                1.      Settlement Fund/Escrow Account...............................................16

                2.      Qualified Settlement Fund. ..................................................17

        D.      Refunds to the Track Two Defendants for TPP Opt-Outs/TPP Opt-Out
                Requirements. ........................................................................18

                1.      Refunds for TPP Opt-Outs.....................................................18

                2.      TPP Opt-Out Requirements. ...................................................19

                3.      Determination of TPP Opt-Out Amounts and Track Two Defendants' Opt-
                        Out Refund, and Dispute Resolution Process...........................20

        E.      Allocation of Benefits to Settlement Classes.........................................21

        F.      Agreement Concerning the ISHP Group. ................................................22

        G.      Disbursements and Distributions from the Settlement Fund. ...........................28

        H.      Motion for Preliminary Approval. ....................................................32

        I.      Stay and Resumption of Proceedings. .................................................33

J. Entry of Final Judgment................................................................................33

K. Effective Date. ...............................................................................................33

L. Satisfaction of the Track Two Defendants' Obligations................................34

M. All Released Claims Satisfied By Settlement Fund......................................34

N. Several Liability............................................................................................34

IV. CLAIMS ADMINISTRATION ....................................................................................35

A. Claims Administrator/Claims Office. ...........................................................35

B. Notice.............................................................................................................35

C. Deadlines.......................................................................................................36

1. Opt-Out Deadline................................................................................36

2. Claims Deadlines. ...............................................................................37

D. Compensation to Consumers, TPPs, and ISHPs...........................................37

E. Court Approval of Disbursements and Distributions. ..................................37

F. Retention of Records.....................................................................................37

V. EXCLUSIVE REMEDY/DISMISSAL OF CLAIMS/JURISDICTION...........................37

A. Exclusive Remedy. ........................................................................................37

B. Dismissal of Claims. .....................................................................................38

C. Jurisdiction....................................................................................................38

VI. RELEASES AND RESERVATIONS ...........................................................................38

A. Released Claims.............................................................................................38

1. Released Consumer Class Claims.......................................................38

2. Released TPP Class Claims. ...............................................................40

3. Released ISHP Claims. .......................................................................41

B. Reservation of Claims and Rights.................................................................42

C. Release and Dismissal of Cross Claims........................................................43

VII.    ADMINISTRATIVE EXPENSES AND ATTORNEYS' FEES .....................................44

    A.    Administrative Expenses. .......................................................................44

    B.    Attorneys' Fees. .....................................................................................44

        1.    Class Counsel.............................................................................44

        2.    ISHP Group Counsel..................................................................44

VIII.   MISCELLANEOUS PROVISIONS....................................................................45

    A.    Reasonable Best Efforts. .......................................................................45

    B.    No Admission. ........................................................................................45

    C.    Enforcement............................................................................................45

    D.    Authorization to Enter Agreement.........................................................46

    E.    No Party Is the Drafter...........................................................................46

    F.    Choice of Law.........................................................................................46

    G.    Amendment or Waiver............................................................................46

    H.    Execution in Counterparts......................................................................47

    I.    Integrated Agreement..............................................................................47

    J.    Construction............................................................................................47

IX.     TERMINATION OF THIS AGREEMENT ..............................................................47

    A.    Automatic Termination...........................................................................47

    B.    Effect of Termination.............................................................................47

    C.    ISHP Payment.........................................................................................48

    D.    Exception. ...............................................................................................48

## TABLE OF EXHIBITS

EXHIBIT A — ISHP Group Members List

EXHIBIT B — Class Drugs

EXHIBIT C — Notice Forms to Class 1 Consumers

    C.1          Short Mailed Notice to Class 1 Consumers With Pre-paid Reply Card

    C.2.         Long Form Notice to Class 1 Consumers Who Return Reply Card

EXHIBIT D — Notice Forms to Class 3 Consumers

    D.1.         Short Form Publication Notice to Class 3 Consumers

    D.2.         Long Form Notice to Class 3 Consumers with Claim Form

EXHIBIT E — Notice Forms to TPPs

    E.1          Long Form Notice To TPPs With Claim Form

    E.2          Short Form Publication Notice to TPPs

EXHIBIT F — Executive Summary of Notice Program

EXHIBIT G — Full Settlement Notice Program

EXHIBIT H — [Proposed] Preliminary Approval Order

EXHIBIT I — Escrow Agreement

EXHIBIT J — [Proposed] Final Approval Order

EXHIBIT K — Claims Process Explanation

EXHIBIT L — ISHP Claims Documentation

EXHIBIT M — Statement Regarding Class Counsel & ISHP Fee Agreement

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS RELATING TO TRACK TWO DEFENDANTS | Judge Patti B. Saris |

## TRACK TWO SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("this Agreement") is submitted to the United States District Court for the District of Massachusetts pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Subject to Court approval, this Agreement is entered into between and among the following parties (the "Parties"), by and through their respective counsel:  (i) Class Representatives on behalf of themselves and the Settlement Classes (as such classes are hereinafter defined) (collectively, "Class Plaintiffs"); (ii) the Independent Settling Health Plans (as hereinafter defined) (the "ISHPs" or "ISHP Group"); and (iii) Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C. (collectively, "Track Two Defendants").

WHEREAS, there is a consolidated and coordinated proceeding pending in the United States District Court for the District of Massachusetts (the "Court" or "MDL Court"), *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, No 01-CV-12257-

1

PBS (D. Mass.) ("MDL Class Actions"), comprised of actions in which Class Plaintiffs have alleged, *inter alia*, that one or more of the Track Two Defendants and other entities have engaged in unfair, deceptive, or unlawful conduct, including, but not limited to inflation or misrepresentation of published Average Wholesale Prices ("AWPs") or the unfair, deceptive, or unlawful use of AWPs in marketing certain drugs covered by Medicare Part B;

WHEREAS, there are various independent health insurance companies and health plans, the ISHPs, which have claims against the Track Two Defendants that are identical to those claims brought in the MDL Class Actions and which, in lieu of litigating such claims independently or as part of a class, wish to settle those claims in accordance with this Agreement;

WHEREAS, as a condition precedent to their participation in this Agreement, the ISHP Group have agreed to provide as Exhibit A to this Agreement information sufficient for Lead Class Counsel and the Track Two Defendants to establish that the ISHPs, in the aggregate, provide or administer prescription drugs benefits to, and have secured authorization to file claims for health plan clients representing, approximately sixty percent (60 %) or more of the covered lives privately insured in the United States, based on U.S. Census data published August 2007 and *AIS Directory of Health Plans: 2007* (Atlantic Information Services 2007);

WHEREAS, Lead Class Counsel have determined that it is in the best interest of Class Plaintiffs and necessary to effectuate settlement to take steps to ensure the ISHPs' participation in this Agreement;

WHEREAS, the Track Two Defendants and other entities have asserted a number of defenses to Class Plaintiffs' claims and have denied and continue to deny Class Plaintiffs' claims in all of the MDL Class Actions;

WHEREAS, the Parties agree that this Agreement shall not be deemed or construed as an admission or as evidence of any violation of any statute or law, or of any liability or wrongdoing by any of the Released Companies, or of the truth of any of the claims or allegations alleged either in the MDL Class Actions or by the ISHPs, or as a waiver of any defenses thereto;

WHEREAS, the Parties have conducted a thorough examination and investigation of the facts and law relating to the asserted and potential claims and defenses in the MDL Class Actions;

WHEREAS, the Parties have engaged in extensive, arm's-length negotiations regarding settlement of the MDL Class Actions;

WHEREAS, Class Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the MDL Class Actions, including the claims asserted in the Complaint and the possible legal and factual defenses thereto, that it would be in Class Plaintiffs' best interests to enter into this Agreement to avoid the uncertainties, burdens, and risks of litigation, and to assure that the substantial benefits reflected herein are obtained for Class Plaintiffs, and further, that this Agreement is fair, reasonable, adequate, and in the best interests of all putative members of the Settlement Classes;

WHEREAS, ISHP Group Counsel have likewise concluded, after investigation of the facts and careful consideration of the relevant claims and potential claims by members of the ISHP Group, including the possible legal and factual defenses thereto, that it would be in the ISHP Group's best interest to enter into this Agreement and further, that this Agreement is fair, reasonable, adequate, and in the best interests of the ISHP Group;

WHEREAS, the Track Two Defendants, despite their belief that they have strong defenses to the claims described herein, have agreed to enter into this Agreement to reduce and

3

avoid further expense, burden, and inconvenience of protracted litigation, and to resolve finally and completely the claims of the Class Plaintiffs and of the ISHP Group;

WHEREAS, through their counsel, the Track Two Defendants and Class Plaintiffs, after months of vigorous, arm's-length negotiations, have conditionally agreed to payment by the Track Two Defendants of $125 million dollars ($125,000,000.00) in full and final settlement of the MDL Class Actions and the ISHP Group's claims described herein in their entirety;

WHEREAS, Consumer Allocation Counsel, TPP Allocation Counsel, and the ISHP Group Counsel, with the Court-appointed mediator Eric Green (all as hereinafter defined), further engaged in vigorous arm's-length negotiations to apportion the Settlement Amount, as defined below, between Consumers and TPPs (both as hereinafter defined), and reached an agreement which results, in the aggregate, in the apportionment of seventeen and one half percent (17.5%) of the Settlement Amount to Consumers and eighty-two and one half percent (82.5%) of the Settlement Amount to TPPs (including the TPPs defined as members of the ISHP Group), as further described below;

WHEREAS, Lead Class Counsel have determined it to be in the best interest of the Class and necessary to effectuate this Agreement to take steps to ensure the participation of the ISHP Group in the Settlement;

WHEREAS, ISHPs' Counsel have engaged in vigorous, arm's-length negotiations with Lead Class Counsel and have reached an agreement that certain portions of the Settlement Amount apportioned to Third-Party Payors ("TPPs"), equal to the amount the ISHP Group collectively would have been entitled as TPP Settlement Class Members, shall be set aside for the ISHP Group's benefit and paid under the conditions set forth in this Agreement;

4

WHEREAS, the settlement between the ISHP Group and the Track Two Defendants requires coordination of the claims administration process for TPP Settlement Class Members and the ISHPs;

NOW, THEREFORE, the undersigned counsel on behalf of the Track Two Defendants, Class Plaintiffs, and the ISHP Group agree that the MDL Class Actions, and all of the ISHP Group's claims described herein, shall be settled, compromised, and/or dismissed on the merits and with prejudice on the terms and conditions set forth in this Agreement, and without costs to the Track Two Defendants, Class Plaintiffs or the ISHP Group (except as provided herein), subject to Court approval of this Agreement as a good faith, fair, reasonable, and adequate settlement under Fed. R. Civ. P. 23(e).

## I.     CLASS DEFINITION.

The Parties agree and consent, for settlement purposes only, to the certification of the following classes in the MDL Class Actions (collectively, the "Settlement Classes") with respect to Class Drugs (as set forth in Exhibit B):

    A.     Medicare Part B Co-Payment Class ("Class 1").

All natural persons in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.

    B.     Third-Party Payor MediGap Supplemental Insurance Class ("Class 2").

All TPPs in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.

C.   Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context ("Class 3").

All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, and all TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, during the period from January 1, 1991, through March 1, 2008.

Excluded from each of the Settlement Classes are (1) the Released Companies; (2) their respective past, present, and future officers, directors, managers, employees, agents, sales representatives, and liability insurers; and (3) all hospitals, clinics, physicians, or physician practice groups, or other health care provider or group of providers, that purchased drugs manufactured, marketed, sold, or distributed by a Released Company, and that (a) administered, dispensed, or prescribed such drugs to a consumer and (b) billed a consumer, TPP, or ISHP for such drugs (the "Released Parties").  (The exclusion of Released Company "employees" from the Settlement Classes shall not affect the eligibility of any ERISA plans or other TPPs for settlement benefits regardless whether any plan participants might be excluded "employees.") Additionally excluded from each of the Settlement Classes are the following: (1) all natural persons who only paid flat co-payments, and not any percentage co-payments, for Class Drugs; (2) all federal, state, and local governmental entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payments; and (3) the ISHPs.

## II.   **OTHER DEFINITIONS.**

As used in this Agreement and its Exhibits, the following terms shall have the meanings set forth below.  Terms used in the singular shall include the plural and vice versa.

6

A.      "Claims Administrator" and "Claims Office" mean Complete Claims Solutions, Inc.

B.      "Class Counsel" means all attorneys and law firms listed in Case Management Order No. 34, filed January 4, 2008.

C.      "Class Drug" means those drugs manufactured, marketed, sold, or distributed by a Released Company that are set forth in Exhibit B.

D.      "Class Period" means January 1, 1991 through January 1, 2005, inclusive, for Classes 1 and 2, and January 1, 1991 through March 1, 2008, inclusive, for Class 3.

E.      "Class Releasors" means each Settlement Class Member, including (1) all Consumer Settlement Class Members, as well as their successors, heirs, executors, trustees, administrators, and assigns, and (2) all TPP Settlement Class Members, including any self-funded benefit plans for which the TPP, as a third-party administrator, provides prescription drug benefit services (provided the TPP has the legal right and authority to make such a claim), as well as the TPP Settlement Class Members' respective present and former, direct and indirect parents, subsidiaries, divisions, partners, affiliates, present and former stockholders, officers, directors, employees, managers, agents, attorneys, and legal representatives; and any predecessors, successors, heirs, executors, trustees, administrators, and assigns of the foregoing, in such capacities.  As used in this Paragraph, "affiliates" means entities controlling, controlled by, or under common control with a Class Releasor.

F.      "Class Plaintiffs" mean the Class Representatives on behalf of themselves and the Settlement Classes.  Class Representatives for the three Classes are as follows:

Class 1:  Vermont Public Interest Research Group, Wisconsin Citizen Action, New York Statewide Senior Action Council, Citizen Action of New York, and Health Care For All,

Class 2:  United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, Sheet Metal Workers National Health Fund,

Class 3:  Teamsters Health & Welfare Fund of Philadelphia and Vicinity, Philadelphia Federation of Teachers Health and Welfare Fund, Man-U Service Contract Trust Fund, Pipefitter's Local Union 537 Trust Funds, Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund, United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund.

G. "CMS" means the Center for Medicare and Medicaid Services of the United States Department of Health and Human Service.

H. "Complaint" means the Fifth Amended Master Consolidated Class Action Complaint.

I. "Consumer" means any individual falling within the definition of Settlement Classes 1 and/or 3 who is a natural person and not a TPP.

J. "Consumer Allocation Counsel" means Alex Sugerman-Brozan, Director, Prescription Access Litigation (PAL), 30 Winter Street, 10th floor, Boston, Massachusetts and Jeffrey S. Goldenberg, Murdock, Goldenberg, Schneider & Groh, P.A., 35 East Seventh Street, Suite 600, Cincinnati, OH.

K. "Consumer Settlement Class Member" means a Consumer who is not an Opt-Out.

L. "Consumer Settlement Pool" means seventeen and one half percent (17.5%) of the Settlement Amount, after subtracting fees and expenses as set forth in Paragraph III.G.2.e below, which has been allocated to pay authorized claims of Consumer Class Members.

M. "Court" and "MDL Court" mean the Honorable Patti B. Saris, or if she is unavailable, another judge of the United States District Court for the District of Massachusetts, presiding over *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, No 01-CV-12257-PBS (D. Mass.).

N. "Effective Date" is the date defined in Section III.K of this Agreement.

O. "Escrow Account" means the account established pursuant to Paragraph III.C.1 in this Agreement.

P. "Escrow Agent" means Frontier Bank, Trust Department, 2825 Colby Avenue, Everett, Washington.

Q. "Final" or "Final Approval" of this Agreement means that the time has run for any appeals from a final approval order of the MDL Court, or any such appeals have been resolved in favor of this Agreement.

R. "Final Fairness Hearing" means the hearing conducted by the Court in connection with determining the fairness, adequacy, and reasonableness of this Agreement under Fed. R. Civ. P. 23(e).  The Court shall set the date of the Final Fairness Hearing, which will be communicated to the Settlement Classes in a Court-approved notice pursuant to this Agreement and in accordance with Fed. R. Civ. P. 23(c)(2).

S.      "Independent Settling Health Plans," the "ISHP Group," or the "ISHPs" mean all of the entities identified on Exhibit A to this Agreement (the "ISHP Group Members"), together with those participating self-funded healthcare plans and/or entities ("SFPs") for which one or more ISHP Group Member provides or provided prescription drug or health benefit services through administrative services-only contracts or as a third-party administrator on whose behalf the ISHP Group Member has legal authority and authorization to make a claim, to the extent that such ISHP Group Member administered such SFP's purchases of a drug manufactured, marketed, sold, or distributed by a Released Company. Such SFPs participating in the settlement will be identified in the Claims Documentation submitted by the ISHP Group pursuant to Section III.F of this Agreement.

T.      "ISHP Group Counsel" means the law firms of Lowey Dannenberg Cohen & Hart P.C., Rawlings & Associates PLLC, and Robins, Kaplan, Miller & Ciresi, LLP.

U.      "ISHP Group Initial Payment" means the sum of Twenty Five Million Five Hundred Thousand Dollars ($25,500,000.00), which will be payable to the ISHP Group in accordance with Paragraph III.F.1 hereof.  This amount was calculated by taking seventy-five percent (75%) of the estimated amount to be deposited into the ISHP Settlement Pool pursuant to Section III.E herein (which amount is net of all estimated expenses and fees as described in Paragraph III.G.2.e herein)

V.      "ISHP Group Recognized Claim Percentage" or "ISHPRCP" means the total amount of claims by all ISHP Group Members that are allowed by the Claims Administrator, divided by the total allowed claims of (a) all Authorized TPP Claimants, (b) all ISHP Group Members, and (c) all TPP Opt-Outs.

W.      "ISHP Group Releasors" means all ISHP Group Members, together with all participating SFPs for which one or more ISHP Group Member provides or provided prescription drug or health benefit services through administrative services-only contracts or as a third-party administrator on whose behalf the ISHP Group Member has legal authority and authorization to make a claim, to the extent that such ISHP Group member administered such SFP's purchases of drugs manufactured, marketed, sold, or distributed by a Released Company, together with all ISHP Group Members' respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and legal representatives, and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such.  As used in this Paragraph,

"affiliates" means entities controlling, controlled by or under common control with an ISHP Group Member.

X.     "ISHP Group Reversion Amount" means an amount calculated after all claims by TPP Class Members have been processed and the total allowed claim amounts for all Authorized TPP Claimants and the ISHP Group have been determined by the Claims Administrator, all in accordance with the procedure set forth on Exhibit K hereto.  The ISHP Group Reversion Amount is calculated by multiplying the ISHP Over/Underage times the total amount deposited into both the TPP Settlement Pool and the ISHP Settlement Pool (which amounts are both net of fees and expenses pursuant to Paragraph III.G.2.e) herein.  If the resulting amount is a positive figure, such amount is to be paid to the ISHP Group from the ISHP Settlement Pool and, if necessary, the TPP Settlement Pool, as more fully described in Paragraph III.F.7.a below.  If the resulting amount is a negative figure, such amount is to be paid to the TPP Settlement Pool from the ISHP Settlement Pool, as more fully described in Paragraph III.F.7.b below.

Y.     "ISHP Over/Underage" means the ISHPRCP less thirty-seven and one half percent (37.5%).  For example, if the ISHPRCP is sixty percent (60%), then the ISHP Over/Underage would be positive twenty-two and one half percent (22.5%).  If the ISHPRCP is twenty-five percent (25%) then the ISHP Over/Underage would be negative twelve and one half percent (-12.5%).

Z.     "ISHP Settlement Pool" means half of the eighty-two and one half percent (82.5%) allocated hereunder to TPPs, which comes to forty-one and one quarter percent (41.25%) of the Settlement Amount, after subtracting fees and expenses as set forth in Paragraph III.G.2.e below, which amount has been allocated to pay authorized claims of ISHP Group Members.

AA.   "Lead Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, Wexler Toriseva Wallace LLP, and Hoffman & Edelson, LLC.

BB.   "MDL Class Actions" means all private class actions included within *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, No 01-CV-12257-PBS (D. Mass.), including those actions in which Class Plaintiffs have alleged, *inter alia*, that any of the Released Companies have engaged in unfair, deceptive, or unlawful inflation or misrepresentation of published AWPs or the unfair, deceptive, or unlawful use of AWPs in marketing drugs.

CC.   "MDL Class Complaints" means all of the Master Consolidated Class Action Complaints (through and including the 5th Amended Master Consolidated Class Action Complaint) filed in the MDL Class Actions,

including all counts of such complaints previously dismissed by the MDL Court.

DD. "MDL Mediator" means Eric Green, Resolutions, LLC of Boston, Massachusetts.

EE. "Medicare Part B drug" means a drug for which CMS or its Part B carriers provided insurance coverage under Part B of Medicare.

FF. "Non-Medicare Part B Payment/Reimbursement" means a payment or reimbursement made for a Medicare Part B drug outside the Medicare Part B drug reimbursement system.

GG. "Opt-Out" means any natural person or entity falling within the definition of a Settlement Class who timely and validly submits a request for exclusion from one or more of the Settlement Classes in accordance with the procedures set forth in the Settlement Notice.

HH. "Parties" means the Track Two Defendants, Class Plaintiffs, and the ISHP Group.

II. "Released Claims" means any and all claims released by this Agreement.

JJ. "Released Consumer Class Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Class Releasor who has not timely and validly excluded himself, herself, or itself from the Settlement Classes, whether or not they object to this Agreement or make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall, or may have, directly, indirectly, representatively, derivatively, or in any capacity, arising out of any conduct, events, or transactions relating to any drug price published by any commercial price reporting service, or provided by any Released Company to any such commercial price reporting service (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and or any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, that were or could have been alleged against any Released Company in any of the MDL Class Complaints regarding any payment made by any Consumer Settlement Class Member for any drug manufactured, marketed, sold, or distributed by any Released Company, as listed on <u>Exhibit B</u> hereto and subject to class treatment hereunder. "Released Class Claims" shall not include any claim against any person or entity that is not a Released Party, any claim arising out of this Agreement, or any claim between any Settlement Class Member and any Released Party that is unrelated to the

allegations of the MDL Class Complaints. "Released Class Claims" shall also not include those claims excluded pursuant to Section VI.B of this Agreement entitled "Reservation of Claims and Rights."

KK.   "Released Companies" means Abbott Laboratories, Abbott Laboratories, Inc., Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Sanofi-Synthelabo Inc., Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Dey, Inc., Dey, L.P., Dey Limited Partner, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Pharmacia & Upjohn Company LLC, The Upjohn Company, Monsanto Co., GD Searle LLC, Adria Labs, Sicor, Inc., Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc., Schein Pharmaceutical, Inc., Watson Laboratories, Inc., and ZLB Behring, L.L.C. and any respective predecessor entities and past or present parents, subsidiaries, divisions, affiliates, successors, and assigns.

LL.   "Released ISHP Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that the ISHP Group, ever had, now has, or hereafter can, shall, or may have, directly, indirectly, representatively, derivatively, or in any capacity, arising out of any conduct, events, or transactions relating to any drug price published by any commercial price reporting service, or provided by any Released Company to any such commercial price reporting service (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and or any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, that were or could have been alleged against any Released Company in any of the MDL Class Complaints with respect to any drug manufactured, marketed, sold or distributed by any Released Company.  "Released ISHP Claims" shall not include any claim against any person or entity that is not a Released Party, any claim arising out of this Agreement, or any claim between any ISHP Group Member and any Released Party that is unrelated to the allegations of the MDL Class Complaints. "Released ISHP Claims" shall also not include those claims excluded pursuant to Section VI.B of this Agreement entitled "Reservation of Claims and Rights."

MM.   "Released Parties" means (1) the Released Companies; (2) their respective past, present, officers, directors, managers, employees, agents, sales representatives, and insurers; and (3) all hospitals, clinics, physicians, or physician practice groups, or other health care provider or group of

providers, that purchased drugs manufactured, marketed, sold, or distributed by a Released Company, and that (a) administered, dispensed, or prescribed such drugs to a consumer and (b) billed a consumer, TPP, or ISHP for such drugs.

NN. "Released TPP Class Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that the TPP Settlement Class Member, ever had, now has, or hereafter can, shall, or may have, directly, indirectly, representatively, derivatively, or in any capacity, arising out of any conduct, events, or transactions relating to any drug price published by any commercial price reporting service, or provided by any Released Company to any such commercial price reporting service (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and or any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, that were or could have been alleged against any Released Company in any of the MDL Class Complaints with respect to any drug manufactured, marketed, sold or distributed by any Released Company. "Released TPP Class Claims" shall not include any claim against any person or entity that is not a Released Party, any claim arising out of this Agreement, or any claim between any TPP Settlement Class Member and any Released Party that is unrelated to the allegations of the MDL Class Complaints. "Released TPP Class Claims" shall also not include those claims excluded pursuant to Section VI.B of this Agreement entitled "Reservation of Claims and Rights."

OO. "Self-Funded Health Care Plans and/or Entities" ("SFPs") means all participating self-funded health care plans and/or entities for which one or more ISHP Group Members provides or provided prescription drug or health benefit services through administrative services-only contracts or as a third-party administration, and on whose behalf the ISHP Group Member has legal authority and authorization to make a claim, to the extent that such ISHP Group Member administrated such SFP's purchases of a drug manufactured, marketed, sold, or distributed by a Released Company.  Such SFPs will be identified in the Claims Documentation submitted by the ISHP Group pursuant to Section III.F of this Agreement.

PP. "Settlement Amount" means the sum of $125 million dollars ($125,000,000.00).

QQ. "Settlement Class Member" means any natural person and any entity falling within the definition of any of the Settlement Classes, other than any Opt-Out.

RR.  "Settlement Fund" means the fund used to pay all claims relating to the settlement of the MDL Class Actions and all Released Claims pursuant to this Agreement, which shall be held in the Escrow Account until distributions are made as provided herein.

SS.  "Settlement Notice" means notices, substantially in the form and following the procedures attached as Exhibits C-G, as may be modified in accordance with the Court's rulings with respect to preliminary approval of this Agreement.

TT.  "Third Party Payor" ("TPP") means a private or governmental entity that was or is at risk to pay all or part of the cost of any drugs manufactured, marketed, sold, or distributed by a Released Company, which were prescribed, provided or administered in the United States for individual beneficiaries of the TPP's prescription drug or health coverage.  TPP shall not include:  (1) Released Parties; (2) the U.S. Government and its agencies and departments, and all other governmental entities that made payments pursuant to any state's Medicaid program; and (3) all federal, state or local governmental entities, except for such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payments.

UU.  "TPP Allocation Counsel" means Jonathan D. Karmel, The Karmel Law Firm, 221 N. LaSalle Street, Suite 1414, Chicago, IL, and C. Dewey Branstetter, Branstetter, Stranch & Jennings, PLC, 227 Second Avenue North, 4th Floor, Nashville, TN.

VV.  "TPP Settlement Class Members" means any TPP that falls within the definitions of Settlement Classes 2 and/or 3, is a TPP and not a natural person, and is not an Opt-Out.  Members of the ISHP Group are TPPs but are not TPP Settlement Class Members.

WW.  "TPP Claimants" means all TPP Settlement Class Members that file a claim under this Agreement with the Claims Administrator.

XX.  "TPP Settlement Pool" means half of the eighty-two and one half percent (82.5%) allocated hereunder to TPPs, which comes to forty-one and one quarter percent (41.25%) of the Settlement Fund Amount, after subtracting fees and expenses as set forth in Paragraph III.G.2.e below, which has been allocated to pay authorized claims of TPP Class Members.

### III.   SETTLEMENT TERMS

   A.   Certification of Settlement Classes.

The Track Two Defendants conditionally agree and consent to certification of the Settlement Classes for settlement purposes only, and within the context of this Agreement only. The Track Two Defendants' conditional agreement is contingent upon execution of this Agreement by the Parties and Final Approval by the MDL Court.  If this Agreement, for any reason, is not finally approved or is otherwise terminated, the Track Two Defendants reserve the right to reassert all of their objections and defenses to certification of any class for trial purposes, and neither Class Plaintiffs nor ISHPs will offer this conditional agreement as evidence in support of a motion to certify any class for trial purposes.

   B.   Settlement Amount/Confidentiality.

      1.   Settlement Amount.

In full and final settlement of the Settlement Class Members' and ISHP Group's claims, the Track Two Defendants shall pay, in the aggregate, the Settlement Amount of $125 million dollars ($125,000,000.00).  The Settlement Amount shall include the full and complete cost of Settlement Class Member and ISHP Group benefits and compensation, settlement notice and claims administration, and Class Counsel's attorneys' fees and expenses (as approved by the MDL Court).  The Settlement Amount shall not be reduced based upon the total amount of authorized claims of Settlement Class Members or the ISHP Group approved by the Claims Administrator except under the circumstances described in Section III.D to this Agreement. Under no circumstances, other than those described in Sections III.D and IX to this Agreement concerning TPP Opt-Out Refunds and termination, shall any portion of the Settlement Amount revert to any Released Companies.

2.      Confidentiality.

The precise amount of each Track Two Defendant's required contribution to the

Settlement Amount shall be set forth on the confidential Final Track Two Settlement Funding

Document held by the MDL Mediator.  These specified amounts are the product of a confidential

mediation by the MDL Mediator, with the approval of the MDL Court, between the Track Two

Defendants and Class Counsel and among the Track Two Defendants themselves.  The MDL

Mediator secured these contribution amounts on the condition of their remaining confidential.

Class Counsel agree to cooperate with the Track Two Defendants to seek appropriate Court

orders protecting this confidentiality.

Notwithstanding the above provision regarding confidentiality, in the event that a Track

Two Defendant defaults on its obligations to make monetary payments pursuant to this

Agreement, the Parties may make reference to the precise amount of that Track Two Defendant's

required contribution in any sealed court filing or other sealed proceedings necessary to enforce

the provisions of this Agreement.

In addition, nothing herein is intended to prevent any individual Track Two Defendant

from disclosing or referring to its individual contribution as it deems necessary.

C.      Settlement Fund/Escrow Account/Qualified Settlement Fund.

1.      Settlement Fund/Escrow Account.

In full and final settlement of the Settlement Class Members' and ISHP Group's claims,

the Track Two Defendants shall pay their respective, confidential shares of the Settlement

Amount into the Settlement Fund held in the Escrow Account.  The Escrow Account shall be

established and administered pursuant to an Escrow Agreement substantially in the form attached

as Exhibit I.

Within ten (10) business days after the later of: (a) the Track Two Defendants' receipt and confirmed, written acceptance of completed Exhibit A, and (b) the MDL Court's preliminary approval of this Agreement, the Track Two Defendants shall advance $28.5 million ($28,500,000.00) to the Escrow Account, of which $25.5 million ($25,500,000.00) shall be allocated to pay the ISHP Initial Payment and $3 million ($3,000,000.00) shall be allocated to pay for the initial cost of the class notice program and related administrative expenses. Thereafter, once the costs of class notice and administration associated with printing, postage, and processing of claims are known, the Track Two Defendants shall provide a second and final advance to the Escrow Account for the payment of these costs.

Within seven (7) business days after the Effective Date, each Track Two Defendant shall pay into the Escrow Account the remainder of its specified, agreed-upon share of the Settlement Amount minus amounts already advanced as set forth in this section.

The payment set forth in this section shall be made by electronic funds transfer (pursuant to written instructions to be provided to Track Two Defendants by Lead Class Counsel). Monies held in the Escrow Account shall be invested by the Escrow Agent (as defined in the Escrow Agreement) in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or other similar short-term United States government obligations, and any interest earned thereon shall become part of the Settlement Fund.

2.      Qualified Settlement Fund.

The Escrow Account shall be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1. The Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Escrow Agent shall pay from the Escrow Account any taxes or estimated taxes due on any income earned on the funds in the Escrow Account, and all related costs and expenses. The

17

Parties agree to treatment of the Escrow Account as a qualified settlement fund from the earliest

possible date and agree to make any available "relation back" election.  If amounts received by

Settlement Class Members or the ISHP Group, or the Track Two Defendants upon any refund or

other reversion, are construed as income, it is the recipient's sole responsibility to pay taxes on

such amount, plus penalties and interest.

        D.      <u>Refunds to the Track Two Defendants for TPP Opt-Outs/TPP Opt-Out Requirements.</u>

            1.      <u>Refunds for TPP Opt-Outs.</u>

In the event there are any TPP Opt-Outs, namely TPPs that validly and timely request

exclusion from Settlement Classes 2 or 3 (neither of which include ISHP Group Members), the

Track Two Defendants shall be entitled to a refund for each such TPP Opt-Out in an amount

equal to $103,125,000.00 (which is eighty-two and one half percent (82.5%) of

$125,000,000.00) times a percentage derived by dividing the amount of each such TPP Opt-

Out's Recognized Claim Amount (calculated, by the Claims Administrator, in the same manner

that the Recognized Claim for a TPP remaining in the Settlement Class or an ISHP Group

Member would be calculated) by the total of all Recognized Claims of (a) all TPP Class

Members who file acceptable claims, (b) all ISHP Group Members, and (c) all TPP Opt-Outs

(the "Track Two Defendants' Opt-Out Refunds").  All such Track Two Defendants' Opt-Out

Refunds shall be paid to the Track Two Defendants in accordance with the provisions of

Paragraph III.G.2.f below.  Upon receipt of any refund under this Paragraph, but for no more

than two (2) years, thirty-three percent (33%) of the total refund due to the Track Two

Defendants pursuant to this Paragraph resulting from TPP Opt-Outs shall be retained in a

separate interest-bearing account by the Track Two Defendants (the "Track Two Defendants'

Opt-Out Refund Account") until any claims by Lead Class Counsel for attorneys' fees relating to

any TPP Opt-Outs with whom any Track Two Defendant settles have been resolved.  The Track

Two Defendants shall notify Lead Class Counsel of any settlement between any Track Two

Defendant and a TPP Opt-Out or group of TPP Opt-Outs within ten (10) days of execution of

any settlement agreement between any Track Two Defendant and a TPP Opt-Out or group of

TPP-Opt-Outs.  Within thirty (30) days of notification by the Track Two Defendants of such

settlement Lead Class Counsel shall submit to the MDL Court any motion for costs and

expenses, including attorneys' fees, with respect to any portion of the refund amount paid to the

Track Two Defendants that is attributable to a TPP Opt-Out with whom the Track Two

Defendants reached a settlement.  The Court's decision on the motion by Lead Class Counsel

shall be final and non-appealable and the Track Two Defendants shall distribute monies from the

Track Two Defendants' Opt-Out Refund Account in accordance with the MDL Court's decision

and their relative contributions to the Settlement Amount.

     The total amount of the Settlement Fund shall be reduced by the amount of the Track

Two Defendants' Opt-Out Refunds, including for purposes of determining the final amount of

the class attorneys' fee award.  The reduction shall be shared proportionately by the TPP

Settlement Pool and the ISHP Settlement Pool.

2.     <u>TPP Opt-Out Requirements.</u>

     For purposes of implementation of this Agreement, including Section III.D, a TPP Opt-

Out (which does *not* include any ISHP Group Member) will be required to file a TPP Notice of

Exclusion, as will be set forth in the preliminary approval order issued by the MDL Court.  Each

TPP Opt-Out will be requested, as part of its Notice of Exclusion, to provide reasonable

confirmation that its payments were based on the AWP of the Class Drugs and the amount of its

purchases for each such drug during the period of January 1, 2003 to December 31, 2003, in

order to demonstrate that it would otherwise be a TPP Class Member and that it wishes to opt out

19

of Settlement Classes 2 and 3.  If additional information is needed by the parties hereto or the

Claims Administrator from any TPP Opt-Out to implement this Paragraph or any other provision

of this Agreement, the parties shall cooperate to obtain such information from the TPP Opt-Out,

including, but not limited to, seeking an order of the MDL Court to obtain such information.

> 3. <u>Determination of TPP Opt-Out Amounts and Track Two
> Defendants' Opt-Out Refund, and Dispute Resolution Process.</u>

The Claims Administrator shall in the first instance calculate the Track Two Defendants'

Opt-Out Refund due under this Paragraph for each valid TPP Opt-Out, as well as the total Track

Two Defendants' Opt-Out Refund due to the Track Two Defendants.

> a. If the Track Two Defendants' Counsel, Lead Class
> Counsel, or ISHP Group Counsel dispute the Claims
> Administrator, or if the Track Two Defendants' Counsel,
> Lead Class Counsel, or ISHP Group Counsel determine
> that they have received insufficient purchase or other
> information from the Claims Administrator or any TPP
> Opt-Out to determine the amount of the total Track Two
> Defendants' Opt-Out Refund due, and, therefore, a dispute
> exists regarding the amount of the Track Two Defendants'
> Opt-Out Refund, the parties, the Claims Administrator, and
> the TPP Opt-Out(s) shall attempt informally to resolve any
> such dispute.

> b. As part of any attempt to resolve such dispute, the Claims
> Administrator, upon request by the Track Two Defendants'
> Counsel, Lead Class Counsel, or ISHP Group Counsel shall

seek additional information from the TPP Opt-Out and/or provide the Track Two Defendants' Counsel, Lead Class Counsel, and ISHP Group Counsel with such additional claims information and data as is reasonably necessary for the Track Two Defendants' Counsel, Lead Class Counsel, and ISHP Group Counsel to evaluate the validity of the refund calculation.

c.      If the TPP Opt-Out does not provide such additional information after the parties make reasonable efforts to obtain it, then the parties shall undertake good faith efforts to estimate the TPP Opt-Out amount and the Track Two Defendants' Opt-Out Refund using publicly available or other more easily obtainable information about the TPP Opt-Out, such as the TPP Opt-Out's number of covered lives.

d.      The parties agree to submit promptly any unresolved disputes concerning TPP Opt-Out amounts and/or the Track Two Defendants' Opt-Out Refund, and the MDL Court's decision shall be binding and final and the parties waive any right to appeal.

E.      <u>Allocation of Benefits to Settlement Classes.</u>

Pursuant to negotiation between Consumer Allocation Counsel, TPP Allocation Counsel, and ISHP Group Counsel, seventeen and one half percent (17.5%) of the Settlement Amount, or $21,875,000, minus fees and expenses as set forth in Paragraph III.G.2.e below, will become the

21

"Consumer Settlement Pool," which will be used to pay authorized claims of Consumer Class Members.  Of this amount $15,375,000 will be allocated to satisfy consumer claims associated with the Class A drugs as identified on Exhibit B.  Forty-One and one quarter percent (41.25%) of the Settlement Amount, or $51,562,500, minus fees and expenses as set forth in Paragraph III.G.2.e below, will become the "TPP Settlement Pool," which will be used to pay authorized claims of TPP Settlement Class Members, and, in certain circumstances described in Paragraph III.F.7.a, may be used to pay the authorized claims of ISHP Group Members.  Forty-One and one quarter percent (41.25%) of the Settlement Amount, or $51,562,500 minus fees and expenses as set forth in Paragraph III.G.2.e below, will become the "ISHP Settlement Pool," which will be used to pay authorized claims of ISHP Group Members, and, in certain circumstances described in Paragraph III.F.7.b, may be used to pay the authorized claims of TPP Settlement Class Members.

        F.      Agreement Concerning the ISHP Group.

        1.      ISHP Group Counsel shall have fourteen (14) days from the execution date of this Agreement to provide Exhibit A to this Agreement to Lead Class Counsel and the Track Two Defendants, such information being sufficient to establish that the ISHP Group, in the aggregate, provide or administer prescription drug benefits to, and have secured authorization to file claims for health plan clients representing, approximately sixty percent (60%) or more of the covered lives privately insured in the United States based on U.S. Census data published August 2007 and AIS Directory of Health Plans: 2007.  At least three (3) days prior to the expiration of this fourteen (14) day period, ISHP Group Counsel may request an extension of not more than 14 additional days to provide this information to Lead

Class Counsel and the Track Two Defendants.  Any such extension of time must be agreed to in writing by all parties.

2.     If ISHP Group Counsel do not provide the covered lives information set forth in paragraph III.F.1, then the Track Two Defendants, in their sole discretion, shall have the option to terminate this Agreement.

3.     Within ten (10) business days after the Track Two Defendants advance the ISHP Group Initial Payment as set forth in III.C.1, Lead Class Counsel shall cause to be transferred from the ISHP Settlement Pool within the Class Escrow Account, via electronic transfer to ISHP Group Counsel, the ISHP Group Initial Payment, for distribution as appropriate to the ISHP Group Members.

4.     On or before the date the MDL Court sets for final submission of claims by TPP Settlement Class Members, the ISHP Group shall provide Claims Documentation, as set forth on Exhibit L hereto, to the Claims Administrator, with a copy to Lead Class Counsel.  The Claims Documentation shall include a list of all SFPs. Each ISHP Group Member shall warrant that any Claims Documentation, data, or other information submitted to the Claims Administrator is true and accurate.  Submission of such information on the form entitled "ISHP Claim Form", attached hereto as part of Exhibit L, shall be deemed compliance with the requirements of this provision.

5.     To verify the accuracy of claims information and to prevent duplication of claims, the Claims Administrator may request additional information from

ISHP Group Members.  ISHP Group Members will provide additional information to the Claims Administrator as requested.  The calculation of the ISHP Group Reversion Amount shall not include claims of any ISHP Group Member that fails to timely submit the required Claims Documentation or additional claims documentation requested by the Claims Administrator.

6.      If, in the judgment of the Claims Administrator, a claim submitted by an ISHP Group Member is duplicative of a claim, or any portion of a claim, submitted independently by an SFP or other TPP, or if a claim by any ISHP Group Member is submitted on behalf of an entity that has independently submitted a valid request for exclusion, the claim, or any duplicative portion of a claim, made by the ISHP Group Member shall be disallowed by the Claims Administrator.

7.      The Claims Administrator shall make available to ISHP Group Counsel a list of the identities of all TPP Settlement Class Members that submit Claims Documentation (the "TPP Claimant List").  The TPP Claimant List shall be deemed confidential and can be used only for the purposes of determining duplication of claims or whether any entity submitting Claims Documentation falls within the definitions of TPP and TPP Settlement Class Member as set forth in Paragraphs II.TT and II.VV.  The TPP Claimant List shall be generated by the Claims Administrator and transmitted to the ISHP Group Counsel no later than the date of the Final Fairness Hearing.  The Claims Administrator shall also generate and

transmit to ISHP Group Counsel an updated and final TPP Claimant List twenty (20) days after the date set for postmark of all claims by TPP Settlement Class Members, or sooner if available.  ISHP Group Counsel shall have the opportunity, within twenty-one (21) days of receipt of a TPP Claimant List, to identify in writing to Lead Class Counsel any TPP Settlement Class Member that ISHP Group Counsel believe has submitted a claim that is duplicative of a claim already asserted by another TPP Settlement Class Member or ISHP Group Member, or that falls outside the definition of TPP or TPP Settlement Class Member as set forth in Paragraphs II.TT and II.VV.  At least thirty-five (35) days prior to any distribution of the Net TPP Settlement Pool under Paragraph III.G.2.i to TPP Settlement Class Members, Lead Class Counsel shall provide ISHP Group Counsel with the proposed computation of the ISHP Group Reversion Amount payment, including a list of the Claim Administrator's determination of the amount of each ISHP Group Member's allowed claims.  Such computation will become binding upon the ISHP Group unless within ten (10) business days of receipt of such computation, ISHP Group Counsel disputes the amount of the proposed ISHP Group Reversion Amount payment in writing to Lead Class Counsel.  In the event of such a dispute, ISHP Group Counsel may request and receive from the Claims Administrator, in consultation with Lead Class Counsel, a list of the TPP Settlement Class Members who have the fifty (50) largest aggregate claims approved by the Claims Administrator and the amount of

25

such claims (the "TPP 50 List").  The TPP 50 List shall be held in confidence by ISHP Group Counsel, will be provided for attorney's eyes only, and shall not be provided or shared with any other person, including any member of the ISHP Group or another TPP.  ISHP Group Counsel shall be entitled to show the TPP 50 List to a single third-party consultant who is not employed by any TPP, and who agrees in writing to be bound by the same confidentiality as ISHP Group Counsel, solely for the purposes of dispute resolution under this Paragraph.  Other than as provided in this Agreement, the ISHP Group and ISHP Group Counsel shall not be entitled to any information collected or generated by the Claims Administrator or Lead Class Counsel, except to the extent permitted by the MDL Mediator in a proceeding under subparagraph 6 below.

8.  Lead Class Counsel and the ISHP Group shall attempt to resolve any disputes raised pursuant to this Agreement through good faith negotiations.  If the dispute cannot be resolved informally, it shall be submitted to binding arbitration by the MDL Mediator.  The MDL Mediator's decision shall be final and will not be subject to appeal.  The Track Two Defendants shall not be involved in any arbitration pursuant to this Paragraph, and shall have no obligations or liability with respect thereto.

9.  On or before five (5) days after the Effective Date of this Agreement, or within five (5) days of any resolution of a dispute under subparagraph 6

above, or within five (5) days after all TPP claims have been processed and the total authorized claim amounts for all Authorized TPP Claimants and ISHP Group Members has been finally determined, whichever is later, Lead Class Counsel or ISHP Group Counsel, as the case may be, shall cause the payment of the ISHP Group Reversion Amount to be made as follows:

a.   If the ISHP Group Reversion Amount is calculated by reference to a positive ISHP Over/Underage, Lead Class Counsel shall cause the Escrow Agent to transfer into an account designated by ISHP Group Counsel the ISHP Group Reversion Amount from the funds remaining in the ISHP Settlement Pool.  Any funds remaining in the ISHP Settlement Pool after such transfer is made and the entire ISHP Group Reversion Amount has been paid shall be transferred to the TPP Settlement Pool and distributed as the remainder of the funds in the TPP Settlement Pool pursuant to Paragraph III.G.2.i herein.  If the funds remaining in the ISHP Settlement Pool are not sufficient to pay the entire ISHP Group Reversion Amount, then in addition to transfer of the remaining funds in the ISHP Settlement Pool, Lead Class Counsel shall cause the Escrow Agent to transfer as much of the funds in the TPP Settlement Pool to the account designated by ISHP Group Counsel until the entire ISHP Group Reversion Amount has been transferred to the ISHP Group.

b. If the ISHP Group Reversion Amount is calculated by reference to a negative ISHP Over/Underage, Lead Class Counsel shall cause to be transferred to the TPP Settlement Pool as much of the funds remaining in the ISHP Settlement Pool as are necessary to satisfy the ISHP Group Reversion Amount.

G. <u>Disbursements and Distributions from the Settlement Fund.</u>

The Settlement Fund shall be distributed as follows or as otherwise ordered by the Court:

1. <u>Prior to the Effective Date of this Agreement:</u>

a. Any fees and expenses incurred in administering the Escrow Account and the Settlement Fund shall be paid pursuant to the Escrow Agreement.  The costs of notice and claim administration of the Settlement shall be paid by the Escrow Agent to the Claims Administrator as approved by the MDL Court and at the direction of Lead Class Counsel with notice of such payments provided to counsel for Track Two Defendants;

b. Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund, shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Lead Class Counsel and Counsel for Track Two Defendants.

c.       The ISHP Group Initial Payment shall be transferred to the ISHP Group pursuant to Paragraph III.F.3 of this Agreement.

2.       <u>After the Effective Date of this Agreement</u>, the Settlement Fund shall be distributed as follows:

a.       Any remaining fees or expenses incurred in connection with the administration of the Escrow Account and the Settlement Fund shall be paid pursuant to the Escrow Agreement, and to the extent, if any, the reasonable fees and expenses incurred as part of notice and claims administration of the Settlement have not been paid, such fees and expenses shall be distributed to the Claims Administrator by the Escrow Agent with notice of such disbursements provided to the Lead Class Counsel;

b.       Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Lead Class Counsel;

c.       Any compensation determined by the MDL Court for services rendered to the Settlement Classes by the Class Representatives, either in the amounts to be recommended by Lead Class Counsel as set forth in the proposed notice

29

forms attached hereto as <u>Exhibits C-F</u> or as otherwise

ordered by the MDL Court, shall be distributed to the Class

Representatives;

d.      Any attorneys' fees and litigation expenses awarded by the

MDL Court to Class Counsel in connection with Final

Approval of this Settlement Agreement by the MDL Court.

Such attorneys' fees and litigation expenses shall be paid to

Lead Class Counsel for distribution to Class Counsel and,

in accordance with a separate agreement on legal fees, to

ISHP Group Counsel;

e.      The Settlement Amount, net of (1) payment of attorneys'

fees and expenses pursuant to Paragraphs III.G.2.d, and (2)

payment of other fees, costs, expenses and awards provided

for in Paragraphs III.G.1.a and III.G.1.b, and III.G.2.a, b,

and c, shall be segregated seventeen and one half percent

(17.5%) for the benefit of Consumers (the "Consumer

Settlement Pool") and forty-one and one quarter percent

(41.25%) for the benefit of TPP Class Members (the "TPP

Settlement Pool") and forty-one and one quarter percent

(41.25%) for the benefit of ISHP Group Members (the

"ISHP Settlement Pool");

f.      The payment to Track Two Defendants of any Track Two

Defendants' Opt-Out Refunds attributable to TPP Opt-Outs

30

under Section III.D.  Any such Track Two Defendants'
Opt-Out Refund shall be deducted from the TPP Settlement
Pool and the ISHP Settlement Pool only, in proportional
amounts.

g.   The balance of the Consumer Settlement Pool after
deducting the above fees, expenses, costs and awards (the
"Net Consumer Settlement Pool"), shall be payable to
Consumer Class Members who submit Proofs of Claim that
are accepted by the Claims Administrator and approved by
the MDL Court ("Authorized Consumer Claimants") in
accordance with the applicable procedures established
pursuant to Exhibit K.

(i).   If the amount of the Net Consumer Settlement Pool
is not sufficient to pay each Authorized Consumer
Claimant his or her Recognized Claim Amount as
set forth herein, then each Authorized Consumer
Claimant shall be paid their *pro rata* share of the
claimants' Recognized Claim Amount, subject to
any minimum payment(s) established by the MDL
Court.

(ii).   If, on the other hand, there are any unclaimed
monies in the Net Consumer Settlement Pool after
all Authorized Consumer Claimants have been paid

31

according to their Recognized Claim Amount or
any minimum payment authorized by the Court,
then the disposition of the balance of the Net
Consumer Settlement Pool shall be determined by
the MDL Court upon the motion of Lead Class
Counsel.  It is agreed that under no circumstances
are any such unclaimed funds in the Net Consumer
Settlement Pool to revert to any Track Two
Defendant.

h.      Any ISHP Group Reversion Amount shall be paid from or
to the ISHP Settlement Pool or the TPP Settlement Pool as
provided in Paragraph III.F.9 above;

i.      The balance of the TPP Settlement Pool after the payment
of the above fees, expenses, costs, and awards (the "Net
TPP Settlement Pool"), shall be payable to TPP Class
Members who submit Proofs of Claim that are accepted by
the Claims Administrator and approved by the Court
("Authorized TPP Claimants"), in accordance with the
applicable procedure established pursuant to Exhibit K.

H.      Motion for Preliminary Approval.

Concurrent with submission of this Agreement for the MDL Court's consideration, Lead
Class Counsel shall submit to the MDL Court a motion for preliminary approval of this
Agreement.  The motion shall request entry of a Preliminary Approval Order substantially in the

32

form attached as Exhibit H, which includes a provision enjoining Settlement Class Members and the ISHP Group from litigating Released Claims pending Final Approval of this Agreement.

> I.      Stay and Resumption of Proceedings.

Subject to preliminary approval of this Agreement by the MDL Court, all proceedings in the MDL Class Actions as related to the Released Companies, and any proceedings asserting any of the Released Claims, other than proceedings arising out of and relating to this Agreement, shall be stayed.  In the event the MDL Court does not approve this Agreement, the Effective Date does not occur, or this Agreement is otherwise terminated, all stayed proceedings shall resume in a reasonable manner approved by the MDL Court.

> J.      Entry of Final Judgment.

If the MDL Court approves this Agreement following the Final Fairness Hearing scheduled by the MDL Court pursuant to the Preliminary Approval Order, counsel for the Parties shall request that the MDL Court enter a Final Approval Order substantially in the form attached as Exhibit J, including the Court's express determination under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that separate judgments with respect to all claims by Settlement Class Members of Classes 1, 2, and 3 be deemed as final judgments.

> K.      Effective Date.

This Agreement shall be effective on the first date after all of the following events have occurred:

> 1.      Entry of the Preliminary Approval Order, substantially in the form attached as Exhibit H, or entry of a Preliminary Approval Order in an alternative form with respect to which all Parties consent in writing;

2.      Final Approval of this Agreement by the MDL Court, following

notice to Settlement Class Members and a Final Fairness Hearing,

in accordance with Fed. R. Civ. P. 23;

3.      Entry of the Final Approval Order, substantially in the form

attached as <u>Exhibit J</u>, or entry of a Final Approval Order in an

alternative form with respect to which all Parties consent in

writing; and

4.      The Final Approval Order becomes Final.

L.      <u>Satisfaction of the Track Two Defendants' Obligations.</u>

The Track Two Defendants' transfer of $125 million dollars ($125,000,000.00) to the

Escrow Account shall fully satisfy the Track Two Defendants' obligations to make payments

under this Agreement, and no other payment by any Released Party shall be required to resolve

the MDL Class Actions or the Released Claims.  The Released Parties shall not have any

liabilities, obligations or responsibilities thereafter regarding the investment, payment,

disposition or distribution of the Settlement Fund or the monies deposited into the Escrow

Account.

M.      <u>All Released Claims Satisfied By Settlement Fund.</u>

Each Settlement Class Member and the ISHP Group shall look solely to the Settlement

Fund for settlement and satisfaction of all Released Claims as provided in this Agreement.

N.      <u>Several Liability.</u>

The Track Two Defendants are severally – not jointly – liable.  If any Track Two

Defendant defaults on its obligations under this Agreement, that individual Track Two

Defendant is solely in default and such default implicates no other Released Party.  Each Track

Two Defendant is solely liable for its respective obligations under this Agreement.

## IV.    CLAIMS ADMINISTRATION

A.    Claims Administrator/Claims Office.

The Claims Administrator/Claims Office shall be Complete Claims Solutions, subject to Court approval.  The Claims Administrator may appoint as many claims officers, experts, and/or advisors as are necessary to carry out the duties of the Claims Office expeditiously.  The Claims Office procedures shall be subject to MDL Court approval and under the continuing jurisdiction of the MDL Court.  The Claims Office shall be responsible for disseminating information to Settlement Class Members concerning settlement procedures, among other ways, by establishing a toll-free "hotline."  In addition, the Claims Office shall assist the MDL Court in processing and tabulating opt-out requests, shall receive all opt-out forms and documentation, shall receive, process, classify, and pay claims as provided in this Agreement and any applicable orders of the MDL Court, and shall operate under the continuing supervision of the MDL Court.

B.    Notice.

The class notice program shall be in accordance with Fed. R. Civ. P. 23 and subject to Court approval.

1.    Upon preliminary approval of this Agreement by the MDL Court, and the making of advance payment(s) pursuant to Paragraph III.C.1, Lead Class Counsel, in accordance with Fed. R. Civ. P. 23 and the Preliminary Approval Order, shall provide all Settlement Class Members who can be identified by reasonable means with the best notice practicable under the circumstances, in substantially the forms attached hereto as Exhibits C-F, or as otherwise ordered by the MDL Court.  Such notice shall include publication on a web site established by Lead Class Counsel or the Claims

35

Administrator and additional publication and other notice as set forth in Exhibit G.

2. As part of this class notice program, Lead Class Counsel will seek, through the MDL Court if necessary, information from CMS concerning the identity, contact (including last known address), and payment information for individuals who may be members of Class 1 and who may have paid or incurred an obligation to pay for a Class Drug under Medicare Part B. This information will be used to provide notice to such individuals during the class notice and claims administration process, if, and only if, such information can be obtained from CMS within a reasonable time period. As used in this Paragraph, "reasonable" shall be determined at Lead Class Counsel's sole discretion, subject to review by the MDL Court.

3. All costs of notice to the Settlement Classes shall be paid exclusively from the Settlement Fund (including the advance payments pursuant to Paragraph III.C.1) and in no event shall any Released Party be responsible for payment of notice costs.

C. Deadlines.

1. Opt-Out Deadline.

As detailed in the proposed Settlement Notices attached hereto as Exhibits C-F, all requests to opt out of any of the Settlement Classes must be received by the Claims Administrator no later than fifteen (15) days before the date of the Final Approval Hearing set by the MDL Court.

36

2.      Claims Deadlines.

All claims deadlines shall be as set forth in the Preliminary Approval Order issued by the

MDL Court, in substantially the form set forth in Exhibit H.

D.      Compensation to Consumers, TPPs, and ISHPs.

To the extent practicable and consistent with the principle that only qualified claims will

be paid, the processing of Consumer Settlement Class Member claims and TPP Settlement Class

Member Claims, and compensation to the ISHP Group shall be made in accordance with the

clear and understandable procedures set forth in Exhibit K.

E.      Court Approval of Disbursements and Distributions.

Court approval shall be required prior to any disbursement or any distribution from the

Settlement Fund, but not for any fees and expenses incurred to administer the Escrow Account or

the Settlement Fund under the Class Escrow Agreement, or taxes on the Settlement Fund

F.      Retention of Records.

The Claims Administrator shall retain all records relating to payment of claims under this

Agreement for a period of five (5) years from the Effective Date of the Agreement.  The

confidentiality of any personal health information in those records shall be maintained in

accordance with the Protective Order in the MDL Class Actions.

**V.      EXCLUSIVE REMEDY/DISMISSAL OF CLAIMS/JURISDICTION**

A.      Exclusive Remedy.

This Agreement shall be the exclusive remedy for any and all Released Claims, any claim

arising out of the subject matter of this Agreement, and any complaint by any Settlement Class

Member or the ISHP Group against the Released Parties related to the Released Claims.  No

Released Party shall be subject to liability or expense of any kind to any Settlement Class

Member or the ISHP Group related to the Released Claims except as provided in this Agreement.

37

Upon Preliminary Approval of this Agreement, each Settlement Class Member and the ISHP Group shall be barred from initiating, asserting or prosecuting any Released Claims against any Released Party.  This Agreement shall be binding upon, and inure to the benefit of the Parties' successors and assigns.

                     B.        <u>Dismissal of Claims.</u>

The Parties agree that upon the Effective Date of this Agreement, all Released Class Claims shall be dismissed with prejudice in accordance with the Final Approval Order, substantially in the form attached as <u>Exhibit J</u>.  In addition, upon the Effective Date of this Agreement, ISHP Group Counsel shall cause all Released ISHP Claims that have been filed in any forum to be dismissed with prejudice.

                     C.        <u>Jurisdiction.</u>

The MDL Court shall retain exclusive and continuing jurisdiction over the Complaint, the Parties, and this Agreement with respect to the performance of its terms and conditions (and disputes arising out of or relating to this Agreement), the proper provision of all benefits, and the implementation and enforcement of its terms, conditions, and obligations.

      **VI.**        **<u>RELEASES AND RESERVATIONS</u>**

                     A.        <u>Released Claims.</u>

                           1.        <u>Released Consumer Class Claims.</u>

Upon the Effective Date of this Agreement, the Released Parties shall be released and forever discharged by the Class Releasors from all Released Consumer Class Claims.  All Class Releasors covenant and agree that they shall not hereafter seek to establish liability against any Released Party based, in whole or in part, on any of the Released Consumer Class Claims.  Each Class Releasor expressly waives and fully, finally, and forever settles and releases any known or

unknown, suspected or unsuspected, contingent or non-contingent Released Consumer Class

Claims without regard to the subsequent discovery or existence of different or additional facts.

IN ADDITION, EACH CLASS RELEASOR HEREBY EXPRESSLY WAIVES AND

RELEASES, UPON THIS AGREEMENT BECOMING EFFECTIVE, ANY AND ALL

PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA

CIVIL CODE, WHICH READS:

> SECTION 1542.  <u>GENERAL RELEASE; EXTENT</u>.  A
> GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS
> SETTLEMENT WITH THE DEBTOR;

OR BY ANY LAW OR STATE OR TERRITORY OF THE UNITED STATES, OR

PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR

EQUIVALENT TO § 1542 OF THE CALIFORNIA CIVIL CODE.  Each Class Releasor may

hereafter discover facts other than or different from those which he, she, or it knows or believes

to be true with respect to the claims which are the subject matter of this Paragraph VI.A.1, but

each Class Releasor hereby expressly waives and fully, finally, and forever settles and releases,

upon the Agreement becoming Effective, any known or unknown, suspected or unsuspected,

contingent or non-contingent Released Consumer Class Claims with respect to the subject matter

of this Paragraph VI.A.1 whether or not concealed or hidden, without regard to the subsequent

discovery or existence of such different or additional facts.  Each Class Releasee also hereby

expressly waives and fully, finally, and forever settles and releases any and all Released

Consumer Class Claims it may have against the Released Parties under § 17200, *et seq.*, of the

California Business and Professions Code.

2.      Released TPP Class Claims.

Upon the Effective Date of this Agreement, the Released Parties shall be released and forever discharged by the Class Releasors from all Released TPP Class Claims.  All Class Releasors covenant and agree that they shall not hereafter seek to establish liability against any Released Party based, in whole or in part, on any of the Released TPP Class Claims.  Each Class Releasor expressly waives and fully, finally, and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent Released TPP Class Claims without regard to the subsequent discovery or existence of different or additional facts.

IN ADDITION, EACH CLASS RELEASOR HEREBY EXPRESSLY WAIVES AND RELEASES, UPON THIS AGREEMENT BECOMING EFFECTIVE, ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS:

> SECTION 1542.  GENERAL RELEASE; EXTENT.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

OR BY ANY LAW OR STATE OR TERRITORY OF THE UNITED STATES, OR PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR EQUIVALENT TO § 1542 OF THE CALIFORNIA CIVIL CODE.  Each Class Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph VI.A.2, but each Class Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released TPP Class Claims with respect to the subject matter of

40

this Paragraph VI.A.2 whether or not concealed or hidden, without regard to the subsequent

discovery or existence of such different or additional facts.  Each Class Releasee also hereby

expressly waives and fully, finally, and forever settles and releases any and all Released TPP

Class Claims it may have against the Released Parties under § 17200, *et seq.*, of the California

Business and Professions Code.

3.      Released ISHP Claims.

Upon the execution of this Agreement and payment of the ISHP Group Initial Payment,

the Released Parties shall be released and forever discharged by the ISHP Group Releasors from

all Released ISHP Claims.  All ISHP Group Releasors covenant and agree that they shall not

hereafter seek to establish liability against any Released Party based, in whole or in part, on any

of the Released ISHP Claims.  Each ISHP Group Releasor expressly waives and fully, finally,

and forever settles and releases any known or unknown, suspected or unsuspected, contingent or

non-contingent Released ISHP Claims without regard to the subsequent discovery or existence of

different or additional facts.

IN ADDITION, EACH ISHP GROUP RELEASOR HEREBY EXPRESSLY WAIVES

AND RELEASES, UPON RECEIPT OF THE ISHP GROUP INITIAL PAYMENT, ANY AND

ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE

CALIFORNIA CIVIL CODE, WHICH READS:

> SECTION 1542.  GENERAL RELEASE; EXTENT.  A
> GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR;

OR BY ANY LAW OR STATE OR TERRITORY OF THE UNITED STATES, OR

PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR

41

EQUIVALENT TO § 1542 OF THE CALIFORNIA CIVIL CODE.  Each ISHP Group Releasor

may hereafter discover facts other than or different from those which he, she, or it knows or

believes to be true with respect to the claims which are the subject matter of this Paragraph

VI.A.3, but each ISHP Group Releasor hereby expressly waives and fully, finally, and forever

settles and releases, upon receipt of the ISHP Group Initial Payment, any known or unknown,

suspected or unsuspected, contingent or non-contingent Released ISHP Claims with respect to

the subject matter of this Paragraph VI.A.3 whether or not concealed or hidden, without regard to

the subsequent discovery or existence of such different or additional facts.  Each ISHP Group

Releasor also hereby expressly waives and fully, finally, and forever settles and releases any and

all Released ISHP Claims it may have against the Released Parties under § 17200, *et seq.*, of the

California Business and Professions Code.

      B.     <u>Reservation of Claims and Rights.</u>

          1.     Released Consumer Class Claims, Released TPP Class Claims, and

Released ISHP Claims shall not include (a) any claim against any

person or entity that is not a Released Party, (b) any claim arising

out of this Agreement, or (c) any claim between any Settlement

Class Member or the ISHP Group and any Released Party that is

unrelated to the allegations in the MDL Class Complaints,

including any unrelated breach of contract or economic injury

claims; any product liability, breach of warranty, personal physical

injury, or intellectual property claim; and any unrelated claim

relating to the efficacy, safety, or manufacture of pharmaceutical

products.  Released Consumer Class Claims, Released TPP Class

Claims, and Released ISHP Claims shall not include claims

unrelated to AWP pricing, marketing or sales activities, including, but not limited to, claims stemming from improper off-label marketing, price fixing, antitrust violations, and misrepresentation or fraud in the marketing or sales of pharmaceuticals unrelated to the allegations in the MDL Class Complaints.

2.      The Parties agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents, and discussion associated with it shall be without prejudice to the rights of any Party (other than those compromised herein); shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Released Parties, or of the truth of any of the claims or allegations contained in any complaint or pleading, whether in the MDL Class Actions or otherwise.  The Parties expressly reserve all their rights if this Agreement fails to become final and effective substantially in accordance with its terms.

C.      <u>Release and Dismissal of Cross Claims.</u>

Upon the Effective Date of the Agreement, any and all claims of any kind asserted or that may be or have been asserted by any Released Company or Released Party against any other Released Company or Released Party arising from or relating to any Released Claims shall be conclusively compromised, settled, and released.  No Released Company or Released Party may bring or pursue any action or claim against any other Released Company or Released Party regarding any Released Claim unless and until the Released Company withdraws or finally defaults under this Agreement.  Nothing in this Agreement shall affect or release claims

available to the Released Parties in any other circumstances, including without limitation any

claims available against any Released Party by a person or entity that opts out of this Agreement

or the Settlement Classes.

### VII.   ADMINISTRATIVE EXPENSES AND ATTORNEYS' FEES

A.   Administrative Expenses.

The Released Companies shall not be liable for any litigation expenses of the MDL Class

Actions or the pursuit of any Released ISHP Claims, including without limitation attorneys' fees,

notice fees and expenses, claims administration fees and expenses, fees and expenses incurred in

administering the Escrow Account or the Settlement Fund, expert witness and consultant fees

and expenses, and expenses associated with discovery, motion practice, hearings, and/or appeals.

All such fees and expenses, if and as approved by the MDL Court, shall be paid from the

Settlement Fund.

B.   Attorneys' Fees.

1.   Class Counsel.

Understanding that the award of attorneys' fees to Class Counsel is a matter in the MDL

Court's sole discretion, the Released Companies will not object to Class Counsel's request to the

MDL Court for an attorneys' fee not to exceed the sum of thirty-three and one-third percent (33-

1/3 %) of the Settlement Amount, plus expenses, which fees and expenses shall be paid

exclusively from the Settlement Fund.

2.   ISHP Group Counsel.

ISHP Group Counsel have agreed to forgo seeking (1) a separate counsel fee in the MDL

Actions, and (2) any fee from Track Two Defendants in connection with their work concerning

any of the Released ISHP Claims, and in lieu thereof will accept as payment of ISHP Counsel

Fees an amount negotiated between ISHP Group Members and Lead Class Counsel, in

accordance with the conditions set forth in a separate agreement between Lead Class Counsel

and ISHP Group Counsel, which agreement shall be identified to the MDL Court in accordance

with Fed. R. Civ. P. 23(e).

### VIII.   MISCELLANEOUS PROVISIONS

    A.    <u>Reasonable Best Efforts.</u>

The Parties agree to use their reasonable best efforts, including all steps required by this

Agreement and other efforts that may be necessary or appropriate, by order of the MDL Court or

otherwise, to carry out the terms of this Agreement.

    B.    <u>No Admission.</u>

Nothing in this Agreement, including any of its provisions, any statement made or

document related to or filed in connection herewith, or the Parties' willingness to enter into this

Agreement, shall be construed as an admission as to the propriety of the litigation in this matter

or any other litigation, any liability or wrongdoing of any Released Party, or of the truth of any

allegations in any complaint against any Released Party; and neither the Agreement nor any

statement made or document related to or filed in connection therewith shall be admissible in

evidence for any such purpose in any proceeding.

    C.    <u>Enforcement.</u>

Notwithstanding the preceding Paragraph, this Agreement may be pleaded as a full and

complete defense to any action, suit or other proceeding that has been or may be instituted,

prosecuted or attempted with respect to any of the Released Class Claims or Released ISHP

Claims, and may be filed, offered, received into evidence, and otherwise used for such defense.

This Agreement may also be used in connection with the Parties' application for approval or

enforcement of this Agreement and all proceedings incident thereto, including requests for

attorneys' fees, costs, disbursements and compensation to the Settlement Classes or ISHP Group

Members and any disputes arising from this Agreement.

        D.       <u>Authorization to Enter Agreement.</u>

The undersigned representatives of the Track Two Defendants represent that they are

fully authorized to enter into and execute this Agreement on behalf of the Track Two

Defendants.  Lead Class Counsel represent that they are fully authorized to conduct settlement

negotiations with Track Two Defendants' Counsel on behalf of Class Plaintiffs and to enter into

and execute this Agreement on behalf of Class Plaintiffs, subject to approval by the MDL Court

pursuant to Fed. R. Civ. P. 23(e).  ISHP Group Counsel represent that they are fully authorized to

conduct settlement negotiations with Track Two Defendants' Counsel and Lead Class Counsel

on behalf of the ISHP Group and to enter into and execute this Agreement on behalf of the ISHP

Group.

        E.       <u>No Party Is the Drafter.</u>

None of the Parties to this Agreement shall be considered the drafter of this Agreement or

any included provision for the purpose of any statute, case law or rule of construction that would

or might cause any provision to be construed against the drafter.

        F.       <u>Choice of Law.</u>

This Agreement shall be governed by and interpreted according to the substantive laws of

the State of Massachusetts without regard to its choice of law or conflict of laws principles.

        G.       <u>Amendment or Waiver.</u>

This Agreement shall not be modified in any respect except by a writing executed by all

Parties to this Agreement.  The waiver of any rights conferred by this Agreement shall be

effective only if made in writing by the waiving Party.  The waiver by any Party of any breach of

this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior

to, subsequent to, or contemporaneous with this Agreement.

> H.    Execution in Counterparts.

This Agreement may be executed in counterparts.  Facsimile or PDF signatures shall be

valid signatures as of the date thereof, although the original signature pages shall be appended to

this Agreement and filed with the MDL Court thereafter.

> I.    Integrated Agreement.

This Agreement, including its Exhibits, contains an entire, complete, and integrated

statement of the terms agreed to by and between the Parties.

> J.    Construction.

This Agreement shall be construed and interpreted to effectuate the Parties' intent, which

is to resolve completely the Released Claims with respect to the Released Parties through this

Agreement.

> **IX.    TERMINATION OF THIS AGREEMENT**

> A.    Automatic Termination.

Except as provided in Section IX.D below, this Agreement shall be terminated

automatically, without notice, if the Court declines to enter an order approving this Agreement,

or if such approval order does not become Final (as a result of reversal on appeal or otherwise).

> B.    Effect of Termination.

In the event of such termination, this Agreement shall be of no force or effect; the Parties

shall request the MDL Court to vacate any order certifying the Settlement Classes; and the

remaining portion of any monies advanced by the Track Two Defendants for class notice and

related expenses, together with any accrued interest, shall be refunded to the Track Two

Defendants by the Escrow Agent in accordance with their respective contribution shares net of

47

(i) taxes paid or due to be paid on the Escrow Account, (ii) fees and costs paid or incurred for

notice and administration of the Settlement, and (iii) any fees or costs paid or incurred for

administration of the Escrow Account.

      C.     <u>ISHP Payment</u>

In recognition of the fact that the ISHPs will have released all of the Released ISHP

Claims upon receipt of the ISHP Initial Payment, if this Agreement is terminated pursuant

Section IX A. above, and is not otherwise reconstituted by the parties hereto within thirty (30)

months from the date of termination, and so long as the ISHP Group did in fact establish that the

participating ISHPs, in the aggregate, provide or administer prescription drug benefits to, and

had secured authorization to file claims for health plan clients representing, approximately sixty

percent (60%) or more of the covered lives privately insured in the United States, based upon

U.S. census or equivalent data, the ISHP Group shall be entitled to payment of $8.5 million

($8,500,000.00) from Track Two Defendants.  Each Track Two Defendant shall be responsible

for a share of this $8.5 million payment in proportion to their respective shares of the Settlement

Amount for which they were responsible.  The amount of $8.5 million was calculated by taking

twenty-five percent (25%) of the estimated amount that was to be deposited into the ISHP

Settlement Pool net of all estimated expenses and fees that would have been incurred if this

Agreement had not terminated.

      D.     <u>Exception.</u>

Notwithstanding certain Court rulings calling into question the viability of individual

consumer claims for transactions that occurred after December 2003 (after passage of the

Medicare Prescription Drug, Improvement, and Modernization Act of 2003), the Parties have

agreed to extend the benefits in this Agreement to such persons who might otherwise be

excluded from a recovery.  Should the Court's approval of this Agreement be conditioned upon

an amendment to this Agreement, the effect of which would be to exclude drug transactions that

occurred after December 2003, the Parties agree that the Agreement will not thereby be

terminated.  In such event, however, the Settlement Amount will be reduced to $120 million

dollars ($120,000,000.00).  No other modification ordered by the Court as a condition of

approval shall trigger this exception (or reduction in the Settlement Amount).

 The reduction in the Settlement Amount set forth above shall cause a proportionate

reduction in the amount of funds allocated to pay the claims of consumers.  The amount of funds

allocated to satisfy the claims of TPPs shall not be reduced in the event the exception set forth in

this Section IX D is triggered.


 IN WITNESS WHEREOF, the Parties hereto, by and through their fully authorized

representatives, have executed this Agreement as of March 7, 2008.

**Dated:**

**Counsel for Defendants**                              **Lead Counsel for Plaintiffs**

_____        _____
Counsel for Abbott Laboratories and Abbott        Steve W. Berman
Laboratories, Inc.                                Hagens Berman Sobol Shapiro LLP
 Tina M. Tabacchi                            1301 Fifth Avenue, Suite 2900
 Brian J. Murray                             Seattle, WA  98101
 JONES DAY                                   Telephone: (206) 623-7292
 77 West Wacker Drive, Suite 3500            Facsimile: (206) 623-0594
 Chicago, IL 60601-1692


_____        _____
Counsel for Amgen Inc.                            Jeffrey Kodroff
 Joseph H. Young                              Spector, Roseman & Kodroff, P.C.
 Steven F. Barley                             1818 Market Street, Suite 2500
 HOGAN & HARTSON, LLP                         Philadelphia, PA  19103
 111 S. Calvert St., Suite 1600              Telephone: (215) 496-0300
 Baltimore, MD 21202                          Facsimile: (215) 496-6611

DSMDB-2398706v02

**Dated:**

**Counsel for Defendants**                        **Lead Counsel for Plaintiffs**

Counsel for Abbott Laboratories and Abbott        Steve W. Berman
Laboratories, Inc.                                Hagens Berman Sobol Shapiro LLP
    Tina M. Tabacchi          1301 Fifth Avenue, Suite 2900
    Brian J. Murray           Seattle, WA  98101
    JONES DAY                 Telephone: (206) 623-7292
    77 West Wacker Drive, Suite 3500   Facsimile: (206) 623-0594
    Chicago, IL 60601-1692

Counsel for Amgen Inc.                            Jeffrey Kodroff
    Joseph H. Young           Spector, Roseman & Kodroff, P.C.
    Steven F. Barley          1818 Market Street, Suite 2500
    HOGAN & HARTSON, LLP      Philadelphia, PA  19103
    111 S. Calvert St., Suite 1600   Telephone: (215) 496-0300
    Baltimore, MD 21202       Facsimile: (215) 496-6611

DSMDB-2398706v02

Counsel for Aventis Pharmaceuticals
Inc., Hoechst Marion Roussel Inc.,
Sanofi-Synthelabo Inc., and ZLB
Behring, L.L.C.
       Michael L. Koon
       James P. Muehlberger
       SHOOK, HARDY & BACON, LLP
       2555 Grand Boulevard
       Kansas City, MO 64108

Kenneth A. Wexler
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Counsel for Baxter Healthcare Corporation and
Baxter International Inc.
       Peter W. Morgan
       Merle M. DeLancey
       DICKSTEIN SHAPIRO LLP
       1825 Eye Street, NW
       Washington, DC 20006

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Counsel for Bayer Corporation, Bayer
HealthCare LLC, and Bayer
Pharmaceuticals Corporation
       Richard D. Raskin
       Michael Doss
       SIDLEY AUSTIN LLP
       One South Dearborn Street
       Chicago, IL 60603

51

DSMDB-2398706v02

Kenneth A. Wexler
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

_____

Counsel for Baxter Healthcare Corporation and
Baxter International Inc.
    Peter W. Morgan
    Merle M. DeLancey
    DICKSTEIN SHAPIRO LLP
    1825 Eye Street, NW
    Washington, DC 20006

_____

Marc H. Edelson
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

_____

Counsel for Bayer Corporation, Bayer
HealthCare LLC, and Bayer
Pharmaceuticals Corporation
    Richard D. Raskin
    Michael Doss
    SIDLEY AUSTIN LLP
    One South Dearborn Street
    Chicago, IL 60603

_____

Counsel for Dey, Inc.
    Paul F. Doyle
    Christopher C. Palermo
    KELLEY DRYE & WARREN LLP
    101 Park Avenue
    New York, NY 10178

DSMDB-2398706v02

**Dated:** March 7, 2008

**Counsel for Defendants**

_____
Counsel for Abbott Laboratories and Abbott
Laboratories, Inc.
    Tina M. Tabacchi
    Brian J. Murray
    JONES DAY
    77 West Wacker Drive, Suite 3500
    Chicago, IL 60601-1692

**Lead Counsel for Plaintiffs**

_____
Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

_____
Counsel for Amgen Inc.
    Joseph H. Young
    Steven F. Barley
    HOGAN & HARTSON, LLP
    111 S. Calvert St., Suite 1600
    Baltimore, MD 21202

_____
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

50

**Dated:  March 7, 2008**

**Counsel for Defendants**

**Lead Counsel for Plaintiffs**

---

Counsel for Abbott Laboratories and Abbott
Laboratories, Inc.
    Tina M. Tabacchi
    Brian J. Murray
    JONES DAY
    77 West Wacker Drive, Suite 3500
    Chicago, IL 60601-1692

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

---

Counsel for Amgen Inc.
    Joseph H. Young
    Steven F. Barley
    HOGAN & HARTSON, LLP
    111 S. Calvert St., Suite 1600
    Baltimore, MD 21202

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

DSMDB-2398706v02

Counsel for Aventis Pharmaceuticals
Inc., Hoechst Marion Roussel Inc.,
Sanofi-Synthelabo Inc., and ZLB
Behring, L.L.C.
    Michael L. Koon
    James P. Muehlberger
    SHOOK, HARDY & BACON, LLP
    2555 Grand Boulevard
    Kansas City, MO 64108

Kenneth A. Wexler
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Counsel for Baxter Healthcare Corporation and
Baxter International Inc.
    Peter W. Morgan
    Merle M. DeLancey
    DICKSTEIN SHAPIRO LLP
    1825 Eye Street, NW
    Washington, DC 20006

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Counsel for Bayer Corporation, Bayer
HealthCare LLC, and Bayer
Pharmaceuticals Corporation
    Richard D. Raskin
    Michael Doss
    SIDLEY AUSTIN LLP
    One South Dearborn Street
    Chicago, IL 60603

DSMDB-2398706v02

Counsel for Aventis Pharmaceuticals
Inc., Hoechst Marion Roussel Inc.,
Sanofi-Synthelabo Inc., and ZLB
Behring, L.L.C.
 Michael L. Koon
 James P. Muehlberger
 SHOOK, HARDY & BACON, LLP
 2555 Grand Boulevard
 Kansas City, MO 64108

Kenneth A. Wexler
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

*Peter W. Morgan*

Counsel for Baxter Healthcare Corporation and
Baxter International Inc.
 Peter W. Morgan
 Merle M. DeLancey
 DICKSTEIN SHAPIRO LLP
 1825 Eye Street, NW
 Washington, DC 20006

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Counsel for Bayer Corporation, Bayer
HealthCare LLC, and Bayer
Pharmaceuticals Corporation
 Richard D. Raskin
 Michael Doss
 SIDLEY AUSTIN LLP
 One South Dearborn Street
 Chicago, IL 60603

DSMDB-2398706v02

Counsel for Aventis Pharmaceuticals
Inc., Hoechst Marion Roussel Inc.,
Sanofi-Synthelabo Inc., and ZLB
Behring, L.L.C.
    Michael L. Koon
    James P. Muehlberger
    SHOOK, HARDY & BACON, LLP
    2555 Grand Boulevard
    Kansas City, MO 64108

Kenneth A. Wexler
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Counsel for Baxter Healthcare Corporation and
Baxter International Inc.
    Peter W. Morgan
    Merle M. DeLancey
    DICKSTEIN SHAPIRO LLP
    1825 Eye Street, NW
    Washington, DC 20006

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

*Richard G. Raskin*

Counsel for Bayer Corporation, Bayer
HealthCare LLC, and Bayer
Pharmaceuticals Corporation
    Richard D. Raskin
    Michael Doss
    SIDLEY AUSTIN LLP
    One South Dearborn Street
    Chicago, IL 60603

51

Scott A. Stempel
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
202.739.3000 (Tel.)
202.739.3001 (Fax)

Counsel for Pharmacia Corporation,
    Pharmacia & Upjohn LLC (f/k/a
    Pharmacia & Upjohn, Inc.),
    Pharmacia & Upjohn Company LLC,
    The Upjohn Company, Monsanto Co.,
    GD Searle LLC, and Adria Labs

_____

Counsel for Sicor, Inc., Gensia Sicor
    Pharmaceuticals, Inc.,
    and Gensia, Inc.

_____

Counsel for Watson Pharmaceuticals, Inc.,
    Watson Laboratories, Inc., Watson
    Pharma, Inc., and Schein
    Pharmaceutical, Inc. (now known as
    Watson Pharma, Inc.)

60

DSMDB-2398706v02

Counsel for Pharmacia Corporation,
Pharmacia & Upjohn LLC (f/k/a
Pharmacia & Upjohn, Inc.),
Pharmacia & Upjohn Company LLC,
The Upjohn Company, Monsanto Co.,
GD Searle LLC, and Adria Labs

    Scott A. Stempel
    J.. Clayton Everett, Jr.
    MORGAN, LEWIS & BOCKIUS LLP
    1111 Pennsylvania Avenue, NW
    Washington, DC 20004

Counsel for Sicor, Inc., Gensia Sicor
Pharmaceuticals, Inc., and Gensia, Inc.
    Jennifer G. Levy
    Michael C. Occhuizzo
    KIRKLAND & ELLIS LLP
    655 Fifteenth Street, NW
    Washington, DC 20005

Counsel for Watson Pharmaceuticals, Inc.,
Watson Laboratories, Inc., Watson
Pharma, Inc., and Schein Pharmaceutical, Inc.
(now known as Watson Pharma, Inc.)
    Douglas B. Farquhar
    Hyman Phelps & McNamara PC
    700 13th St. NW
    Suite 1200
    Washington, DC 20005

DSMDB-2398706v02

_____

Counsel for Pharmacia Corporation,
Pharmacia & Upjohn LLC (f/k/a
Pharmacia & Upjohn, Inc.),
Pharmacia & Upjohn Company LLC,
The Upjohn Company, Monsanto Co.,
GD Searle LLC, and Adria Labs

     Scott A. Stempel
     J.. Clayton Everett, Jr.
     MORGAN, LEWIS & BOCKIUS LLP
     1111 Pennsylvania Avenue, NW
     Washington, DC 20004

_____

Counsel for Sicor, Inc., Gensia Sicor
Pharmaceuticals, Inc., and Gensia, Inc.
     Jennifer G. Levy
     Michael C. Occhuizzo
     KIRKLAND & ELLIS LLP
     655 Fifteenth Street, NW
     Washington, DC 20005

_____

Counsel for Watson Pharmaceuticals, Inc.,
Watson Laboratories, Inc., Watson
Pharma, Inc., and Schein Pharmaceutical, Inc.
(now known as Watson Pharma, Inc.)
     Douglas B. Farquhar
     Hyman Phelps & McNamara PC
     700 13th St. NW
     Suite 1200
     Washington, DC 20005

*ISHP COUNSEL:*

LOWEY DANNENBERG COHEN & HART, P.C.

BY: _____

Richard W. Cohen
White Plains Plaza
One North Broadway
White Plains, NY  10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035


RAWLINGS & ASSOCIATES


BY: _____

Mark M. Sandmann
One Eden Parkway
LaGrange, KY  40031
Telephone: (502) 814-2157
Facsimile: (502) 584-8580


ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.


BY: _____

W. Scott Simmer
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181


DATED: March 7, 2008

54

DSMDB-2398706v02

*ISHP COUNSEL:*

LOWEY DANNENBERG COHEN & HART, P.C.


BY:_____
Richard W. Cohen
White Plains Plaza
One North Broadway
White Plains, NY  10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035


RAWLINGS & ASSOCIATES, P.L.L.C.


BY:_____
Mark M. Sandmann
Mark D. Fischer
One Eden Parkway
LaGrange, KY  40031
Telephone: (502) 814-2157
Facsimile: (502) 584-8580


ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.


BY:_____
W. Scott Simmer
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181


DATED: March 7, 2008

DSMDB-2398706v02

*ISHP COUNSEL:*

LOWEY DANNENBERG COHEN & HART, P.C.


BY:_____
Richard W. Cohen
White Plains Plaza
One North Broadway
White Plains, NY  10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035


RAWLINGS & ASSOCIATES


BY:_____
Mark M. Sandmann
One Eden Parkway
LaGrange, KY  40031
Telephone: (502) 814-2157
Facsimile: (502) 584-8580


ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.


BY:_____
W. Scott Simmer
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181


DATED: March 7, 2008

DSMDB-2398706v02

*Christopher C. Palermo*

Counsel for Dey, Inc.
    Paul F. Doyle
    Christopher C. Palermo
    KELLEY DRYE & WARREN LLP
    101 Park Avenue
    New York, NY 10178



_____

Counsel for Fujisawa Healthcare, Inc. and
Fujisawa USA, Inc.
    Kathleen H. McGaun
    Douglas K. Spaulding
    Andrew L. Hurst
    REED SMITH LLP
    1301 K Street NW
    Suite 1100 – East Tower
    Washington, DC 20005



_____

Counsel for Immunex Corporation
    David J. Burman
    Kathleen M. O'Sullivan
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
    Seattle, WA 98101-3099

DSMDB-2398706v02

_____

Counsel for Dey, Inc.
    Paul F. Doyle
    Christopher C. Palermo
    KELLEY DRYE & WARREN LLP
    101 Park Avenue
    New York, NY 10178


*Kathleen H. McGaun* (signature)

_____

Counsel for Fujisawa Healthcare, Inc. and
Fujisawa USA, Inc.
    Kathleen H. McGaun
    Douglas K. Spaulding
    Andrew L. Hurst
    REED SMITH LLP
    1301 K Street NW
    Suite 1100 – East Tower
    Washington, DC 20005


_____

Counsel for Immunex Corporation
    David J. Burman
    Kathleen M. O'Sullivan
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
    Seattle, WA 98101-3099

52

_____

Counsel for Dey, Inc.
    Paul F. Doyle
    Christopher C. Palermo
    KELLEY DRYE & WARREN LLP
    101 Park Avenue
    New York, NY 10178

_____

Counsel for Fujisawa Healthcare, Inc. and
Fujisawa USA, Inc.
    Kathleen H. McGaun
    Douglas K. Spaulding
    Andrew L. Hurst
    REED SMITH LLP
    1301 K Street NW
    Suite 1100 – East Tower
    Washington, DC 20005

_____

Counsel for Immunex Corporation
    David J. Burman
    Kathleen M. O'Sullivan
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
    Seattle, WA 98101-3099

DSMDB-2398706v02