# EXHIBIT H

## [PROPOSED] PRELIMINARY APPROVAL ORDER

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS RELATING TO TRACK TWO DEFENDANTS | Judge Patti B. Saris |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF THE TRACK TWO CLASS SETTLEMENTS, DIRECTING NOTICE TO THE CLASSES, AND SCHEDULING FAIRNESS HEARING

WHEREAS, this matter has come before the Court pursuant to a Joint Motion for Entry of an Order Granting Preliminary Approval of the Track Two Class Settlements and Approving the Form and Method of Notice to the Classes (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the parties for purposes of settlement; and

WHEREAS, this Court has conducted a preliminary approval hearing on March 14, 2008, has considered all of the submissions related to the Motion, and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

## I.    PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

1.    The terms of the Track Two Settlement Agreement and Release, dated March 7, 2008, including all Exhibits thereto (the "Agreement"), attached to the Motion, are hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below.  This Order incorporates herein, and makes a part hereof, the Agreement, including Exhibit B ("Class Drugs") and all other Exhibits thereto.  Unless otherwise provided herein, the

terms defined in the Agreement shall have the same meanings herein.  The Agreement was entered into only after extensive arm's-length negotiation by experienced counsel and with the assistance and oversight of MDL Mediator Eric Green.  The Court finds that the Class Settlements embodied in the Agreement (the "Class Settlements") are sufficiently within the range of reasonableness so that notice of the Class Settlements should be given as provided in paragraphs 9 and 10 of this Order.  In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation.

## II.     THE CLASS, REPRESENTATIVES, AND CLASS COUNSEL

2.     Consistent with the Court's January 30, 2006 *Order Re: Motion for Class Certification* regarding Track One defendants, the Settlement Classes are defined as follows:

a.     <u>Medicare Part B Co-Payment Class ("Class 1")</u>

All natural persons in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.

b.     <u>Third-Party Payor MediGap Supplemental Insurance Class ("Class 2")</u>

All TPPs in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.

c.     <u>Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context ("Class 3")</u>

All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, and all TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for a Class Drug manufactured, marketed, sold, or distributed by a

Released Company, during the period from January 1, 1991,
through March 1, 2008.

Excluded from each of the Settlement Classes are (1) the Released Companies; (2) their

respective past, present, and future officers, directors, managers, employees, agents, sales

representatives, and liability insurers; and (3) all hospitals, clinics, physicians, or physician

practice groups, or other health care provider or group of providers, that purchased drugs

manufactured, marketed, sold, or distributed by a Released Company, and that (a) administered,

dispensed, or prescribed such drugs to a consumer and (b) billed a consumer, TPP, or ISHP from

such drugs (the "Released Parties").  (The exclusion of Released Company "employees" from

the Settlement Classes shall not affect the eligibility of any ERISA plans or other TPPs for

settlement benefits regardless whether their plan participants might be excluded "employees.")

Additionally excluded from each of the Settlement Classes are the following:  (1) all natural

persons who only paid flat co-payments, and not any percentage co-payments, for Class Drugs;

(2) all federal, state, and local governmental entities in the United States, except any such

governmental agencies or programs that made or incurred an obligation to make a

reimbursement for a Class Drug as part of a health benefit plan for their employees, but only

with respect to such payments; and (3) the Independent Settling Health Plans ("ISHPs").

3.     The Court preliminarily finds that the proposed nationwide Settlement Classes

meet all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3), and hereby certifies the

Settlement Classes for settlement purposes only.  The Court hereby preliminarily finds, in the

specific context of these Class Settlements, that:

a.     Numerosity.

Classes 1, 2, and 3 consist of tens of thousands of members located
throughout the United States, and satisfy the numerosity
requirement of FED. R. CIV. P. 23(a).  Joinder of these widely-
dispersed, numerous Class Members into one suit would be

impracticable.

b.      <u>Commonality.</u>

Common questions of law and fact with regard to the alleged activities of the Released Companies exist for each of the Members of Classes 1, 2, and 3 in this case.  These issues are central to this case and are sufficient to establish commonality.

c.      <u>Typicality.</u>

Plaintiffs have claimed during this litigation that unfair sales and marketing activities, including but not limited to, unlawful manipulation of Average Wholesale Prices ("AWPs") reported by various industry publications for the Released Companies' drugs violated various state consumer protection statutes, RICO, and other state and federal laws.  As a result, Class Members allegedly paid more for these drugs than they would have in the absence of the alleged unlawful conduct.  These claims are typical of every Member of each of Classes 1, 2, and 3.  Therefore, the element of typicality is satisfied for each of Classes 1, 2, and 3.

d.      <u>Adequate Representation.</u>

Plaintiffs' interests do not conflict with, and are co-extensive with, those of absent Class Members.  Additionally, this Court recognizes the experience of Lead Class Counsel Hagens Berman Sobol Shapiro LLP, Wexler Toriseva Wallace LLP, Spector Roseman & Kodroff, PC, and Hoffman & Edelson, LLC, and finds under FED. R. CIV. P. 23(g) that the requirement of adequate representation of Classes 1, 2, and 3 has been fully met.

e.      <u>Predominance of Common Issues.</u>

Plaintiffs commonly assert that unfair sales and marketing activities caused the AWPs for the drugs at issue in this case to be inflated, in turn causing all Class Members to pay more for these drugs.  In the context of these Class Settlements, these issues predominate over any individual questions, favoring class treatment.

f.      <u>Superiority of the Class Action Mechanism.</u>

The class action mechanism is ideally suited for treatment of the settlement of these matters.  Class certification promotes efficiency and uniformity of judgment, among other reasons, because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

4.      Designated representatives for each Class are as follows:

    a.      Class 1: Vermont Public Interest Research Group, Wisconsin Citizen Action, New York Statewide Senior Action Council, Citizen Action of New York, and Health Care For All

    b.      Class 2: United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, Sheet Metal Workers National Health Fund

    c.      Class 3: Teamsters Health & Welfare Fund of Philadelphia and Vicinity, Philadelphia Federation of Teachers Health and Welfare Fund, Man-U Service Contract Trust Fund, Pipefitters Local Union 537 Trust Funds, Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund, United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund.

Based upon the Court's familiarity with the claims and parties in these and other cases, including prior AWP class settlements, the interests of the various constituent groups, and the negotiation process overseen by MDL Mediator Eric Green, the Court preliminarily finds that these designated representatives are appropriate representatives for settlement purposes.  The Court finds that each of these representatives, or an agent or member thereof, made a purchase or reimbursement for one or more of the Class Drugs manufactured, marketed, sold, or distributed by the Released Companies.

5.      The Court further preliminarily finds that the following firms fairly and adequately represent the interests of the Settlement Classes and hereby appoints them as Co-Lead Settlement Class Counsel pursuant to FED. R. CIV. P. 23(g):

    Hagens Berman Sobol Shapiro LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101

    Spector, Roseman & Kodroff, P.C.,
    1818 Market Street, Suite 2500
    Philadelphia, PA  19103

    Wexler Toriseva Wallace LLP
    One North LaSalle Street, Suite 2000

Chicago, IL  60602

Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA  18901

6.      If the Agreement is terminated or is not consummated for any reason whatsoever,

the certification of the Settlement Classes shall be void, and Plaintiffs and the Track Two

Defendants shall be deemed to have reserved all of their rights as set forth in the Agreement,

including but not limited to the issues related to all claims, defenses, and issues under FED. R.

CIV. P. 23.

### III.    CLASS SETTLEMENT FUND

7.      The Court finds that the Escrow Account is a "qualified settlement fund" as

defined in Section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the

following requirements:

      a.      The Escrow Account is established pursuant to an Order of this Court and

is subject to the continuing jurisdiction of this Court;

      b.      The Escrow Account is established to resolve or satisfy one or more

claims that have resulted or may result from an event that has occurred

and that has given rise to at least one claim asserting liabilities; and

      c.      The assets of the Escrow Account are segregated from other assets of the

Track Two Defendants, the transferors of the payment to the Settlement

Fund.

8.      Under the "relation back" rule provided under section 1.468B-1(j)(2)(i) of the

Treasury Regulations, the Court finds that:

a.     The Escrow Account met the requirements of paragraphs 7(a) and 7(b) of this Order prior to the date of this Order approving the establishment of the Escrow Account subject to the continued jurisdiction of this Court; and

b.     The Track Two Defendants and the Claims Administrator may jointly elect to treat the Class Escrow Account as coming into existence as a "qualified settlement fund" on the latter of the date the Class Escrow Account met the requirements of paragraph 7(b) and 7(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 7 of this Order are met.  If such a relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Escrow Account on that date.

## IV.    NOTICE TO CLASS MEMBERS

9.     The Court has considered the proposed notices and Notice Plan attached as Exhibits C-G to the Agreement, including the proposed forms of notice, summary notice, information releases, and Claim Forms, and finds that the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and FED. R. CIV. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.  The Court approves the Notice Plan in all respects (including the proposed forms of notice, summary notice, information releases, and Claim Form) and orders that notice be given in substantial conformity therewith.  The Notice Program described in the Notice Plan shall commence on or about _____, 2008.  The costs of preparing, printing, publishing, mailing and otherwise disseminating the notice shall be paid from the Settlement Fund in accordance with the

Agreement.

10.     The Court appoints Complete Claim Solutions as Claims Administrator. Responsibilities of the Claims Administrator shall include the following:  (a) establishing a post office box and toll-free phone number (to be included in the Long Form Notices and the Summary Notices (together, the "Notices" to the Class)) for purposes of communicating with Class Members; (b) establishing and maintaining a website for purposes of posting the Notices, the Agreement and related documents; (c) accepting and maintaining documents sent from Class Members, including Claim Forms and other documents relating to claims administration; and (d) administering claims for the allocation of the settlement funds among Class Members.

## V.     REQUEST FOR EXCLUSION FROM THE CLASS

11.     Class Members who wish to be excluded from Settlement Classes shall mail a written notice of exclusion to the Claims Administrator, so that it is postmarked no later than _____, and shall clearly state the following:  the name, address, taxpayer identification number, telephone number, and fax number (if any) of the individual or entity who wishes to be excluded from the Class, and provide all such information as may be required by the Agreement requested by the Claims Administrator.  In addition, for purposes of implementing the Settlement Agreement, including calculation of the Track Two Defendants' Opt-Out Refunds (as described in Paragraph III.D.1 of the Settlement Agreement), each TPP Settlement Class Member requesting exclusion shall set forth the amounts paid for each Class Drug at issue during the period of January 1, 2003 to December 31, 2003, and include a signed certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named

class member.  The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the class member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq*., or other laws governing their obligations to any class member.  The undersigned understands that by submitting this notice of exclusion, the class member identified above will not be entitled to receive any proceeds of the class Settlement Fund.  By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

12.     Valid Class Opt-Outs shall not be bound by the Settlement Agreement, or the Final Order and Judgment.  Upon receipt, the Claims Administrator shall promptly provide copies of each notice of exclusion to Lead Class Counsel and Counsel for the Track Two Defendants.

13.     Any Class Member who does not properly and timely mail a notice of exclusion as set forth in paragraph 11 above shall be automatically included in the Class Member's respective Settlement Class or Classes, and shall be bound by all the terms and provisions of the Agreement, the Class Settlements, and the Final Order and Judgment, whether or not such Class Member received actual notice or shall have objected to the Class Settlements and whether or not such Class Member makes a claim upon or participates in the Class Settlements.

**VI.     PROOFS OF CLAIM**

14.     To effectuate the Agreement and Class Settlements, and the provisions of the Notice Plan, the Claims Administrator shall be responsible for the receipt of all notices of

exclusion and Claim Forms.  The Claims Administrator shall preserve (on paper or transferred

into electronic format) all notices of exclusion, Claim Forms, and any and all other written

communications from Class Members in response to the Notices for a period of five (5) years, or

pursuant to further order of the Court.  All written communications received by the Claims

Administrator from Class Members relating to the Agreement shall be available at all reasonable

times for inspection and copying by Lead Class Counsel and Counsel for the Track Two

Defendants, including prior to payments being mailed to each Class Member.

     15.     In order to be entitled to participate in the Class Settlements, if effected in

accordance with all of the terms and conditions set forth in the Agreement, each Member of

Classes 1, 2, and 3 shall take the following actions and be subject to the following requirements:

     a.     A Settlement Class Member who wishes to receive a distribution from a

Class Settlement must mail a properly executed Claim Form (Consumer or

TPP Claim Form as appropriate) to the Claims Administrator at the

address indicated in the notice, to be postmarked on or before

_____.  If such Claim Form is transmitted in any manner

other than the United States Postal Service, it shall be deemed to have

been submitted when actually received by the Claims Administrator and

must be received by the Claims Administrator no later than

_____;

     b.     Each Claim Form must satisfy the following conditions:  (i) the Claim

Form must be properly completed and supported with any necessary

documentation in accordance with the instructions thereon and submitted

in a timely manner in accordance with subparagraph (a) of this paragraph;

(ii) the Claim Form must be signed under penalty of perjury; (iii) the claimant must certify that he or she is a Class Member, or, if the person executing the Claim Form is acting in a representative capacity, must attest that he, she or it is acting on behalf of a Settlement Class Member and that the claimant has authority to act on behalf of the Settlement Class Member; and (iv) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein;

c.      Each Claim Form shall be submitted to and reviewed by the Claims Administrator, who shall make a recommendation to Lead Class Counsel about which claims should be allowed in whole or in part;

d.      The Claims Administrator will notify each Settlement Class Member who filed a Claim Form of any recommendation of disallowance, in whole or in part, of the Claim Form submitted by such Settlement Class Member and will set forth the reasons for any such disallowance.  Settlement Class Members shall be permitted a reasonable period of time to cure any deficiency with respect to their respective Claim Forms that is identified. A copy of such notification shall also be sent by the Claims Administrator to Lead Class Counsel;

e.      All Settlement Class Members who do not submit timely Claim Forms, or submit Claim Forms that are disallowed and not cured, shall be barred from participating in the Class Settlements (except to the extent that a

Claim Form may be partially allowed) but otherwise shall be bound by all of the terms and provisions of the Agreement; and

 f. Each Settlement Class Member who submits a Claim Form shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and shall (subject to final approval of the Agreement and Settlement Classes) be bound by all the terms and provisions of the Agreement.

## VII. CLAIMS PROCESS

16. For all Class Drugs, the amount to which each Consumer Settlement Class Member is entitled will be determined in accordance with the following provisions.

 a. For consumers in Class 1 for which the Claims Administrator has obtained records from CMS evidencing the consumer's total co-payment obligation under Medicare Part B, the consumer's obligation under Medicare Part B for all Class Drugs during the Class Period, as evidenced in records from CMS, shall form the basis of the Class 1 consumer's claim.  For those Class Drugs designated as "Class A" on Exhibit B to the Agreement, the consumer's total obligation related to Class A Drugs shall be multiplied by a factor of three (3x).  This figure shall be added to the consumer's total co-payment obligation for Class Drugs designated as "Class B" on Exhibit B to the Agreement (without a multiplication factor).  The sum of these two figures will constitute the Class 1 consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Class Member.

b.     For consumers in Class 3 for which the Claims Administrator does not have records from CMS, the amount to which the Class 3 consumer shall be entitled will be determined based upon the consumer's election on a claim form provided by the Claims Administrator between two options.

1.     <u>Easy Refund Option</u>:  If a Class 3 consumer elects the "Easy Refund Option" on the claim form provided and the consumer's claim is verified and accepted by the Claims Administrator, their "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Class Member shall be equal to $35.00.

2.     <u>Full Estimation Refund Option</u>.  If a Class 3 consumer elects the "Full Estimation Refund Option" on the claim form provided the consumer will be required to estimate their total out-of pocket expenses associated with percentage co-payments for each drug for which the consumer is seeking payment.  The consumer will also be required to provide documentary support, as called for in <u>Exhibit K</u> to the Agreement, in support of the consumer's estimated out-of-pocket expenses.  The consumer's estimated out-of-pocket expenses for Class A drugs shall be multiplied by a factor of three (3x) and added to the consumer's estimated out-of-pocket expenses for Class B drugs (without a multiplication factor). The sum of these two figures will constitute the Class 3 consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Class Member.

17.    If the total valid Recognized Claims for all Consumer Settlement Class Members

is less than the total amount of the Settlement Fund allocated to satisfy Consumer Settlement Class Member claims (net of fees and expenses as set forth in the Settlement Agreement), each Consumer Settlement Class Member will be paid 100% of their Recognized Claim, and the MDL Court shall determine how to dispose of the balance upon the motion of Lead Class Counsel.  If total valid Recognized Claims for all Consumer Settlement Class Members exceeds the amount of the Settlement Fund allocated to satisfy Consumer Settlement Class Member claims, all such Consumer Settlement Class Member claims will be reduced proportionately.

18.    The total expenditure for all Class Drugs designated as Class A on Exhibit B to the Agreement during the period of January 1, 2003 to December 31, 2003 claimed by each TPP Settlement Class Member on the TPP Proof of Claim and accompanying documentation, as verified and accepted by the Claims Administrator, shall be the TPP's "Recognized Claim" used for purposes of calculating the payment made to each TPP Settlement Class Member.

19.    Each TPP Settlement Class Member shall share *pro rata* in the Net TPP Settlement Pool (which is net of payment of the Track Two Opt-Out Refunds and fees and expenses as set forth in the Agreement) in proportion to the size of their Recognized Claim.

## VIII.   CONFIDENTIALITY

20.    Any information received by the Claims Administrator in connection with the Class Settlements that pertains to a particular Settlement Class Member, or information submitted in conjunction with a notice of exclusion (other than the identity of the entity requesting exclusion), shall not be disclosed to any other person or entity other than Lead Class Counsel, Counsel for the Track Two Defendants, and the Court, or as otherwise provided in the Agreement.

## IX.    FAIRNESS HEARING

21.    A hearing on final settlement approval (the "Final Fairness Hearing") will be held

on _____, at _____ before this Court, at the United States District Court for

the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider,

*inter alia*, the following:  (a) the adequacy of the Class Representatives and whether the

Settlement Classes should be finally certified; (b) the fairness, reasonableness and adequacy of

the Class Settlements; (c) the dismissal with prejudice of the MDL Class Actions as to the Track

Two Defendants; (d) whether Class Counsel's application for attorneys' fees, expenses, and

compensation for the Class Representatives ("the Fee Petition") should be granted; (e) whether

to approve the proposed plan of allocation and distribution; (f) whether to finally approve the

Agreement; and (g) whether the Court should enter an order expressly determining that there is

no just reason for delay and expressly directing that any judgment by the Court approving the

Agreement and the Settlement Classes should be deemed as a final judgment under FED. R. CIV.

P. 54(b) with respect to all claims by Settlement Class Members against the Track Two

Defendants and other Released Parties.

22.    On or before _____, Class Counsel shall file with the Court:  (i)

any memoranda or other materials in support of final approval of the Agreement and Class

Settlements; and (ii) any Fee Petition.

23.    Any Class Member who has not filed a notice of exclusion in the manner set forth

above may appear at the Fairness Hearing in person or by counsel and may be heard, to the

extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness

and adequacy of a Class Settlement, the dismissal with prejudice of the Track Two Defendants,

the entry of final judgment as to the Track Two Defendants, and/or the Fee Petition; provided,

however, that no person shall be heard in opposition to the Class Settlements, dismissal and/or

entry of final judgment or the Fee Petition, and no papers or briefs submitted by or on behalf of

any such person shall be accepted or considered by the Court, unless filed with the Court and

served upon counsel listed below in Paragraph 24 on or before _____.  Such

person must (a) file with the Clerk of the Court a notice of such person's intention to appear as

well as a statement that indicates the basis for such person's opposition and any documentation

in support of such opposition on or before _____, and (b) serve copies of such

notice, statement, and documentation, as well as any other papers or briefs that such person files

with the Court, either in person or by mail, upon all counsel listed below in Paragraph 24 on or

before _____.  Settlement Class Members who object in the manner and by the

dates provided herein shall be subject to the jurisdiction of this Court.  Settlement Class

Members who fail to object in the manner and by the dates provided herein shall be deemed to

have waived and shall forever be foreclosed from raising any such objections.

     24.     Counsel for the Parties who must be served with all documentation described

above in Paragraph 23 are as follows:

> <u>Counsel for the Class</u>
>
> Steve W. Berman
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 1301 Fifth Avenue, Suite 2900
> Seattle, WA  98101
>
> <u>Counsel for the Track Two Defendants</u>
>
> Steven F. Barley             James P. Muehlberger
> HOGAN & HARTSON, LLP     SHOOK, HARDY & BACON, LLP
> 111 S. Calvert St., Suite 1600    2555 Grand Boulevard
> Baltimore, MD  21202         Kansas City, MO  64108

25.     The date and time of the Final Fairness Hearing shall be set forth in the Notice and Summary Notice, but shall be subject to adjournment by the Court without further notice to the Settlement Class Members other than that which may be posted at the Court, on the Court's website, and/or the website to be established pursuant to the Notice Plan.

26.     All proceedings in the MDL Class Actions with respect to the Track Two Defendants are hereby stayed and suspended, pending the Final Approval of the Class Settlements ("Final Approval"), except such proceedings as are provided for in the Agreement, or which may be necessary to implement the terms of the Agreement, the Class Settlements, or this Order.

27.     Any Settlement Class Member may hire an attorney at his or her or its own expense to appear in the action.  Such attorney shall serve a Notice of Appearance on the Counsel listed in Paragraph 24 above by _____, and file it with the Court on or before _____.

28.     Pending Final Approval, no Settlement Class Member nor any ISHP Group Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Settlement Class), shall commence, continue or prosecute against any Released Party any action or proceeding in any court or tribunal asserting any of the matters, claims, or causes of action that are to be released upon Final Approval pursuant to the Agreement, and are hereby enjoined from so proceeding.  Upon Final Approval, all Settlement Class Members who do not file a timely notice of exclusion and all ISHP Group Members shall be forever enjoined and barred from asserting any of the matters, claims, or causes of action released pursuant to the Agreement, and any such Settlement Class Member and all ISHP Group Members shall be deemed to have forever released any and all such

matters, claims, and causes of action as provided for in the Agreement.

## X.    OTHER PROVISIONS

29.    Upon Final Approval, each and every term and provision of the Agreement (except as may be modified by the Final Approval Order) shall be deemed incorporated into the Final Order and Judgment as if expressly set forth and shall have the full force and effect of an Order of the Court.

30.    In the event the Class Settlements are terminated in accordance with the provisions of the Agreement, the Class Settlements and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Agreement, and without prejudice to the *status quo ante* rights of Plaintiffs and the Track Two Defendants.

31.    Neither this Order nor the Agreement, nor any documents or statements related thereto, shall constitute any evidence or admission of liability by any Released Party, nor shall any such document or statement be offered in evidence in this or any other proceeding except to consummate or enforce the Agreement or the terms of this Order, or by any Releasee in connection with any action asserting Released Claims.


Date:_____                    _____
                                              Patti B. Saris
                                              United States District Judge

# **EXHIBIT I**

## **ESCROW AGREEMENT**

# EXHIBIT I

## ESCROW AGREEMENT

This Escrow Agreement (this "Agreement") is made and entered into by Frontier Bank through its Trust Department (the "Escrow Agent"), Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn, LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C. (collectively, "Track Two Defendants") and Class Plaintiffs as defined in the Track Two Settlement Agreement and Release dated on or about March 7, 2008 ("Track Two Settlement Agreement"), in consideration of the following promises of each party.  Track Two Defendants and Class Plaintiffs are referred to collectively as the "Settling Parties" in the litigation entitled *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (the "MDL Class Action").  Unless otherwise provided herein, the terms defined in the Track Two Settlement Agreement shall have the same meaning in this Agreement.

I.     **Terms and Conditions**

   1.     Track Two Defendants and Lead Class Counsel hereby appoint the Escrow Agent to establish and administer an escrow account on the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment on such terms and conditions.

   2.     Track Two Defendants shall deliver to the Escrow Agent a total settlement payment in the amount of $125,000,000.00 as required by Paragraphs III.B.1 and III.C.1 of the Track Two Settlement Agreement in immediately available United States funds (the "Escrow Funds") pursuant to the wire transfer instructions provided in paragraph 1 of Section IV below.  The Escrow Agent shall confirm receipt of such funds, or any portion of such funds, as the case may be, in writing to the Settling Parties.  The total amount of $125,000,000.00 shall be delivered in two or three separate payments as provided for in Paragraph III.C.1 of the Track Two Settlement Agreement.

   3.     The Escrow Agent shall keep the precise amount of each Track Two Defendant's required contribution to the Settlement Amount confidential.  Each Track Two Defendant's required contribution shall be set forth on the confidential Final Track Two Settlement Funding Document held by the MDL Mediator.  These specified amounts are the product of a confidential mediation by the MDL Mediator, with the approval of the MDL Court, between the Track Two Defendants and Class Counsel and among the Track Two Defendants themselves. The MDL Mediator secured these contribution amounts on the condition of their remaining confidential.  Notwithstanding the above provision regarding

confidentiality, in the event that a Track Two Defendant defaults on its obligations to make monetary payments pursuant to this Agreement, the Parties may make reference to the precise amount of that Track Two Defendant's required contribution in any sealed court filing or other sealed proceedings necessary to enforce the provisions of this Agreement.  In addition, nothing herein is intended to prevent any individual Track Two Defendant from disclosing or referring to its individual contribution as it deems necessary.

4.      Until the Escrow Agent receives written notification from counsel for Track Two Defendants and Lead Class Counsel that the Track Two Settlement Agreement has become effective, it shall invest and reinvest the Escrow Funds in United States Agency or Treasury Securities (or a mutual fund investing solely in such instruments) or other similar short-term United States government obligations as shall be directed in writing by Lead Class Counsel for the Class Plaintiffs and as shall be acceptable to the Escrow Agent.  In the absence of written direction from the Settling Parties regarding the investment of the Class Escrow Funds, the Escrow Agent will invest and reinvest the Class Escrow Funds in the STI Classic U.S. Treasury Money Market Fund.  For the purposes of this Agreement, the date on which the Track Two Settlement Agreement shall become effective is as defined in Paragraph III.K of the Track Two Settlement Agreement.

5.      All interest on or other income realized by investment of the Class Escrow Funds or any portion thereof shall be accumulated and added to the Class Escrow Funds.  Any investment losses realized by investment of Class Escrow Funds or any portion thereof shall be charged to the Class Escrow Funds.

6.      This Escrow Agreement and the Class Escrow Funds are subject to the supervision and control of the United States District Court for the District of Massachusetts (the "MDL Court").  Except as set forth in paragraph 6(a) and 6(b) of this Section I, the Class Escrow Funds shall be withdrawn or otherwise removed from the Escrow Account established pursuant to this Escrow Agreement only in accordance with the terms of an order of the MDL Court delivered to the Escrow Agent by Lead Class Counsel.

7.      The Escrow Agent shall deliver the Class Escrow Funds only as set forth below:

(a)      Following receipt of written notice signed by counsel for Track Two Defendants and Lead Class Counsel stating that the Track Two Settlement Agreement has not been approved by the MDL Court or has been cancelled or terminated or has otherwise become null and void for any reason, the Escrow Agent shall disburse any portion of the Class Escrow Funds received into the Escrow Account, including any interest or other income earned thereon, to Track Two Defendants in proportion to each individual Track Two Defendant's contribution to the Class Escrow Funds, net of taxes paid or due with respect thereto, the fees and costs paid or incurred for the settlement notice, any fees or costs paid or incurred for

2

administration of the Escrow Account and payment of the ISHP Initial Payment;

(b)    Regardless of whether the Track Two Settlement Agreement has become effective, the Escrow Agent shall disburse funds as needed for

(i)    payment of taxes or estimated taxes that become due on income earned by the Class Escrow Funds, as determined by Complete Claims Solutions, Inc. ("CCS"), the Class Administrator for the Settlement, with notice of such payments to Lead Class Counsel and Track Two Defendants;

(ii)    payment of the costs associated with claims administration including, but not limited to, settlement notice.  Such payment shall be made only from the Track Two Defendants' advance payment of $28.5 million, of which $3 million is initially transferred to cover costs of notice and claims administration, which, within ten (10) business days after the later of (a) the Track Two Defendants' receipt and confirmed, written acceptance of completed Exhibit A to the Track Two Settlement Agreement and (b) MDL Court's preliminary approval of the Track Two Settlement Agreement, the Track Two Defendants shall advance to the Escrow Account pursuant to Section III.C.1 of the Track Two Settlement Agreement, plus any additional funds transferred by Track Two Defendants thereafter to cover the costs associated with notice and administration.  Payment of the costs associated with claims administration including, but not limited to, settlement notice, will be made at the direction of Lead Class Counsel, with notice of such payments provided to Track Two Defendants;

(iii)    payment of the ISHP Initial Payment (unless the Track Two Settlement Agreement is terminated pursuant to Section III.F.2); and

(iv)    all other payments contemplated by the Track Two Settlement Agreement and authorized by the MDL Court by court Order delivered to the Escrow Agent by Lead Class Counsel.

(c)    After receipt of written notice signed by counsel for Track Two Defendants and Lead Class Counsel stating that the Track Two Settlement Agreement has become effective, the Escrow Agent shall, upon receipt of an order of the Court so directing

(i) disburse any remaining amounts for reimbursement or payment of costs and expenses incurred in the provision of notice to the members of the Class and the administration and distribution of the settlement, in accordance with such order of the Court; and

(ii) distribute the remaining Escrow Funds, as ordered by the Court.

provided, however, that the Escrow Agent shall retain amounts in the Escrow Account necessary for the payment of taxes or estimated taxes and fees and expenses of the Escrow Agent, as directed by Lead Class Counsel.

8.  The Class Escrow Funds are intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of the Settling Parties, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Class Escrow Funds to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end.

9.  After the Track Two Settlement Agreement becomes effective, Track Two Defendants shall no longer have any interest in the Class Escrow Funds, and shall no longer have any rights or obligations under this Escrow Agreement.

10.  All Counsel for all Settling Parties' each warrant to and agree with the Escrow Agent that, unless otherwise expressly set forth in this Agreement, there is no security interest (as defined in the Uniform Commercial Code) in the Class Escrow Funds or any part of the Class Escrow Funds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Class Escrow Funds or any part of the Class Escrow Funds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Class Escrow Funds or any part of the Class Escrow Funds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Class Escrow Funds or any part thereof.

## II.   Provisions as to the Escrow Agent

1.  This Escrow Agreement expressly and exclusively sets forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Escrow Agreement against the Escrow Agent.

2.  This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this escrow.  Unless it is signed by the Escrow Agent as a party, no other agreement including the Track Two Settlement Agreement entered into between the parties,

or any of them, shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be deposited with the Escrow Agent or the Escrow Agent may have knowledge thereof.

3.      The Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

4.      The Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Escrow Agreement.  The Escrow Agent shall have no liability as a result of any liquidation of any investment prior to its maturity when that liquidation is necessary to provide funds to make required payments under this Escrow Agreement.

5.      The Escrow Agent shall be protected in acting upon any document which the Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retainage of the Class Escrow Funds.

6.      In the event of any disagreement between any of the parties to this Escrow Agreement, or between any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Agreement, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and the Escrow Agent shall be entitled to continue  to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the United States District Court for the District of Massachusetts, or (ii) all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and the Escrow Agent shall have been notified thereof in writing signed by all such parties.

7.      The Escrow Agent shall be indemnified and held harmless by the parties hereto from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by the Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

8.      The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of any suit, action or proceeding to enforce any provision of, or based upon any right arising out of this Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

9.      The Escrow Agent will maintain a daily record of all transactions in the Class Escrow Account and will provide the Settling Parties with a periodic statement (at a frequency to be determined from time to time but no less often than annually) reflecting all such transactions and the property held in the account as of the end of the reporting period.

10.     The Escrow Agent shall have the authority to retain a subcustodian for any or all property for as long as it deems necessary.  The Escrow Agent shall also have the authority to retain other agents, including attorneys, to assist it in the performance of its duties.

**III.    Compensation of the Escrow Agent**

1.      The Escrow Agent shall be entitled to reasonable compensation as well as reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Class Escrow Agreement (including reasonable fees and expenses of the Escrow Agent's counsel).  Lead Class Counsel is solely responsible for paying the Escrow Agent the amounts to which it is entitled, and such compensation shall be paid from the funds in the Class Escrow Account, after Court approval and subject to other provisions of this paragraph.  The Escrow Agent is entitled to reimbursement for reasonable expenses for each year or any part thereof.

2.      The Escrow Agent shall not debit the Class Escrow Funds for any charge for its fees or its costs and expenses, until approved by Lead Class Counsel after notice to Track Two Defendants.  Fees and expenses of the Escrow Agent charged against the Escrow Funds shall, to the extent possible, be paid out of interest earned by the Escrow Funds.

**IV.    Miscellaneous**

1.      Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows:

        If to the Escrow Agent:

                Frontier Bank - Trust Department

6

2825 Colby Avenue
Everett, WA  98201-3512

<u>Cash / Wire Instructions</u>:

Frontier Bank Everett
ABA #125107626
Frontier Bank Trust Department Account #_____
FFC: (Track Two AWP Settlement Class Escrow Fund/#_____)

If to Lead Class Counsel:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

If to Track Two Defendants

Steven F. Barley
HOGAN & HARTSON, LLP
111 S. Calvert St., Suite 1600
Baltimore, MD  21202
Telephone: (410) 659-2724
Facsimile: (410) 539-6981

James P. Muehlberger
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO  64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

If to CCS:

Thomas R. Glenn
Sr. Vice President & COO

7

Complete Claim Solutions, LLC
5210 Hood Road
Palm Beach Gardens, Florida  33418
Telephone:  (561) 651-7777
Facsimile:  (561) 651-7788 Fax

Any party may unilaterally designate a different address by giving notice of each change in the manner specified above to each other party.

2.      Any disputes arising under this agreement will be governed by Massachusetts law.  It shall inure to and be binding upon the parties hereto and their respective successors, heirs, and assigns.  All representations, covenants, and indemnifications contained in this Escrow Agreement shall survive the termination of this Escrow Agreement.

3.      The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

4.      If any provision of this agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

5.      The Escrow Agent may resign at any time from its obligations under this Escrow Agreement by providing written notice to the parties hereto.  Such resignation shall be effective not less than thirty (30) days after such written notice has been given.  In the event no successor escrow agent has been appointed on or prior to the date such resignation becomes effective, the Escrow Agent shall be entitled to tender into the custody of a court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement.  The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent.  Unless otherwise provided in this Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Escrow Account all amounts pursuant to Section I, paragraph 6 above.

6.      All titles and headings in this Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

7.      This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8.      This Agreement shall be effective as of the date the last party to this Agreement fully and appropriately executes this document.

　　　　IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.


**Dated:**   _____, 2008


**Counsel for Defendants**                         **Lead Counsel for Plaintiffs**


_____          _____
Counsel for Amgen Inc.                              Steve W. Berman
　　　Steven F. Barley                              Hagens Berman Sobol Shapiro LLP
　　　HOGAN & HARTSON, LLP                   1301 Fifth Avenue, Suite 2900
　　　111 S. Calvert St., Suite 1600               Seattle, WA  98101
　　　Baltimore, MD  21202                        Telephone: (206) 623-7292
　　　Telephone: (410) 659-2724                   Facsimile: (206) 623-0594
　　　Facsimile: (410) 539-6981



_____
Counsel for Aventis Pharmaceuticals
Inc., Hoechst Marion Roussel Inc.,
Sanofi-Synthelabo Inc., and ZLB
Behring, L.L.C.
　　　James P. Muehlberger
　　　SHOOK, HARDY & BACON, LLP
　　　2555 Grand Boulevard
　　　Kansas City, MO  64108
　　　Telephone: (816) 474-6550
　　　Facsimile: (816) 421-5547

**Dated:** _____, 2008

_____
Kari L. Dahl
Vice President & Manager Trust Administration
Frontier Bank - Trust Department
2825 Colby Avenue
Everett, WA  98201-3512
Telephone:  (425) 258-0225
Facsimile:  (425) 258-0216

Escrow Agent Frontier Bank – Trust Department

# EXHIBIT J

## [PROPOSED] FINAL APPROVAL ORDER

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION

MDL No. 1456

THIS DOCUMENT RELATES TO:

CIVIL ACTION:  01-CV-12257-PBS

ALL CLASS ACTIONS RELATING TO TRACK
TWO DEFENDANTS

Judge Patti B. Saris

## [PROPOSED] FINAL ORDER AND JUDGMENT GRANTING
## FINAL APPROVAL TO PROPOSED TRACK TWO CLASS ACTION SETTLEMENTS,
## APPROVING PROPOSED ALLOCATION OF SETTLEMENT FUNDS, AND
## APPROVING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
## REIMBURSEMENT OF LITIGATION EXPENSES AND COMPENSATION FOR
## CLASS REPRESENTATIVES

This Court having considered: (a) the Track Two Settlement Agreement and Release,

dated March 7, 2008, including all Exhibits thereto (the "Agreement"), between the Plaintiffs

and Defendants Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion

Roussel, Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc.,

Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation,

Pharmacia & Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia, Inc., Gensia

Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C. (the "Track

Two Defendants"); (b) the proposed allocation and distribution of funds among the Settlement

Classes; and (c) Class Counsel's application for attorneys' fees, reimbursement of litigation

expenses, and compensation for the Class Representatives; and having held a hearing on

_____, 2008, and having considered all of the submissions and arguments with respect

thereto, and otherwise being fully informed, and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.      This Final Order and Judgment incorporates herein and makes a part hereof, the

Agreement, including Exhibit B ("Class Drugs") and all other Exhibits thereto.  Unless otherwise

provided herein, the terms as defined in the Agreement shall have the same meanings for

purposes of this Final Order and Judgment.

2.      The Court has personal jurisdiction over all Class Representatives, Class

Members, and the Track Two Defendants for purposes of this settlement only, and has subject

matter jurisdiction to approve the Agreement.

3.      Based on the record before the Court, including all submissions in support of the

Class Settlements set forth in the Agreement, objections and responses thereto, as well as the

Agreement itself, the Court hereby certifies the following nationwide classes (the "Classes") for

settlement purposes only:

(a)      Medicare Part B Co-Payment Class ("Class 1")

All natural persons in the United States who, from January 1, 1991
through January 1, 2005, made, or incurred an obligation to make,
any portion of a Medicare Part B co-payment for a Class Drug
manufactured, marketed, sold, or distributed by a Released
Company.

(b)      Third-Party Payor MediGap Supplemental Insurance Class ("Class 2")

All TPPs in the United States who, from January 1, 1991 through
January 1, 2005, made, or incurred an obligation to make,
reimbursements for any portion of a Medicare Part B co-payment
for a Class Drug manufactured, marketed, sold, or distributed by a
Released Company.

> (c)    Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context ("Class 3")
>
> All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, and all TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, during the period from January 1, 1991, through March 1, 2008.

Excluded from each of the Settlement Classes are (1) the Released Companies; (2) their respective past, present, and future officers, directors, managers, employees, agents, sales representatives, and liability insurers; and (3) all hospitals, clinics, physicians, or physician practice groups, or other health care provider or group of providers, that purchased drugs manufactured, marketed, sold, or distributed by a Released Company, and that (a) administered, dispensed, or prescribed such drugs to a consumer and (b) billed a consumer, TPP, or ISHP from such drugs (the "Released Parties").  (The exclusion of Released Company "employees" from the Settlement Classes shall not affect the eligibility of any ERISA plans or other TPPs for settlement benefits regardless whether their plan participants might be excluded "employees.") Additionally excluded from each of the Settlement Classes are the following:  (1) all natural persons who only paid flat co-payments, and not any percentage co-payments, for Class Drugs; (2) all federal, state, and local governmental entities in the United States, except any non-Medicaid state or local governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payments; and (3) the Independent Settling Health Plans ("ISHPs").

In so holding, the Court finds that the prerequisites of FED. R. CIV. P. 23(a) and

(b)(3) have been satisfied for certification of the nationwide Classes for settlement purposes: Class Members, numbering in the thousands, are so numerous that joinder of all members is impracticable; there are questions of law and fact common to each of the Settlement Classes; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class Members they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Classes with regard to the consolidated claims of the Settlement Classes they represent; the common questions of law and fact predominate over questions affecting only individual Class Members, rendering the Settlement Classes sufficiently cohesive to warrant a nationwide class settlement; and the certification of the Settlement Classes is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of the MDL Class Actions.

In making all of the foregoing findings, the Court has exercised its discretion in certifying the Settlement Classes, based, *inter alia*, upon the Court's familiarity with the claims and parties in these and other cases, including prior AWP class settlements, the interests of the various constituent groups, and the negotiation process overseen by MDL Mediator Eric Green.

4.     The record shows that Notice has been given to the Settlement Classes in the manner approved by the Court in its Preliminary Approval Order of_____, 2008 [Docket No. ___].  The Court finds that such Notice:  (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that was  reasonably calculated, under the circumstances, to apprise Class Members of the terms of the Agreement and Class Settlements, and Class Members' right to object to or exclude themselves from the Settlement Classes and appear at the settlement fairness hearing held on _____ (the "Fairness Hearing"), (iii) constitutes due,

adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) meets the requirements of due process and FED. R. CIV. P. 23.

5.      No individuals or entities, other than those listed on Exhibit A hereto, have excluded themselves from the Settlement Classes.  This Order shall have no force or effect on the persons or entities listed on Exhibit A hereto.

6.      The Court finds that extensive arm's-length negotiations have taken place in good faith between Lead Class Counsel and the Track Two Defendants' Counsel resulting in the Agreement.  Additionally the Court finds that extensive arm's-length negotiations have taken place on behalf of separate counsel appointed by Lead Class Counsel to represent the interests of Consumer Class Members and TPP Class Members in order to apportion the Settlement Fund between these constituencies and that these arm's length negotiations afforded the structural protection required to ensure adequate representation of these constituencies.

7.      The Court finds that the designated class representatives are appropriate representatives for settlement purposes.  The Court finds that each of these representatives, or an agent or member thereof, has made a purchase or reimbursement payment for one or more of the Class Drugs.

8.      The Court has considered all of the factors enumerated in FED. R. CIV. P. 23(g) and finds that Class Counsel have fairly and adequately represented the interests of the Settlement Classes.

9.      Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves in all respects the Class Settlements set forth in the Agreement ("the Class Settlements") and finds that the Class Settlements, the Agreement, and the plan of distribution as set forth in Paragraphs III.E-G

5

of the Agreement, are, in all respects, fair, reasonable and adequate, and in the best interest of the Settlement Classes.

10.     The Court further approves the establishment of the Settlement Fund as set forth in the Agreement and the Escrow Agreement submitted by the Parties.  The Parties are hereby directed to implement and consummate the Class Settlements according to the terms and provisions of the Agreement.  In addition, the Parties are authorized to agree to and adopt such amendments and modifications to the Agreement that (i) are consistent in all material respects with this Final Order and Judgment, and (ii) do not limit the rights of the Settlement Classes.

11.     The claims against the Track Two Defendants on behalf of the Classes in the MDL Class Actions are hereby dismissed with prejudice and without costs to any party, except as otherwise provided herein.

12.     Upon the Effective Date of the Agreement, the Class Releasors (as defined in Paragraph II.E of the Agreement) shall release and forever discharge the Released Parties (as defined in Paragraph II.MM of the Agreement) from their respective Released Consumer Class Claims and Released TPP Class Claims (as defined in Paragraphs II.JJ and II.NN of the Agreement).

13.     The Court finds that the Escrow Account is a "Qualified Settlement Fund" as defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)     The Escrow Account is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

(b)     The Escrow Account is established to resolve or satisfy one or more

6

contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

        (c)     The assets of the Escrow Account are segregated from other assets of the Track Two Defendants, the transferor of payments to the Settlement Fund, and from the assets of persons related to the Track Two Defendants.

14.     Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

        (a)     The Escrow Account met the requirements of paragraphs 13 of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

        (b)     The Track Two Defendants and the "administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Escrow Account as coming into existence as a "Qualified Settlement Fund" on the later of the date the Escrow Account met the requirements of paragraphs 13(b) and 13(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 13 of this Order are met.  If such relation-back election is made, the assets held by the Escrow Account on such date shall be treated as having been transferred to the Escrow Account on that date.

15.     Nothing in this Final Order and Judgment, the Class Settlements, the Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by

any of the Released Parties.

16.     Class Counsel have moved pursuant to FED. R. CIV. P. 23(h), 54(d) and 52(a) for

an award of attorneys' fees and reimbursement of expenses.  Pursuant to Rules 23(h)(3) and

52(a) this Court makes the following findings of fact and conclusions of law:

(a)     that the Class Settlements confer substantial benefits on the Members of

each of the Settlement Classes;

(b)     that the value conferred on the Settlement Classes is immediate and

readily quantifiable (upon this Judgment becoming Final (as defined in the Agreement),

Settlement Class Members who have submitted valid Claim Forms will receive cash payments

that represent a significant portion of their alleged financial harms);

(c)     that Class Counsel vigorously and effectively pursued the Settlement

Class Members' claims before this Court in this highly complex case;

(d)     that the Class Settlements were obtained as a direct result of Class

Counsel's skillful advocacy;

(e)     that the Class Settlements were reached following extensive negotiation

between Lead Class Counsel and the Track Two Defendants' Counsel, and were negotiated in

good-faith and in the absence of collusion;

(f)     that during the prosecution of the Track Two Claims in the MDL Class

Actions, Class Counsel incurred expenses at least in the amount of $_____, which included

costs for expert witnesses and other expenses which the Court finds to be reasonable and

necessary to the representation of the Settlement Classes;

(g)     that Settlement Class Members were advised in the Notice approved by

the Court that Class Counsel intended to apply for an award of attorneys' fees in an amount of up

to 33 1/3% of the Settlement Fund (plus interest thereon from the date of funding of the

Settlement Fund) plus reimbursement of reasonable costs and expenses incurred in the

prosecution of this action, to be paid from the Settlement Fund;

(h)     that _____ Member(s) of the Settlement Classes has (have) submitted

written objection(s) to the award of attorneys' fees and expenses;

(i)     that counsel who recover a common benefit for persons other than himself

or his client is entitled to a reasonable attorneys' fee from the Settlement Fund as a whole.  *See,*

*e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900

n.16 (1984);

(j)     that use of the percentage of the fund method in common fund cases is the

prevailing practice in this Circuit for awarding attorneys' fees and permits the Court to focus on

a showing that a fund conferring benefit on a class resulted from the lawyers' efforts.  *In re*

*Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st

Cir. 1995); and

(k)     the requested fee award is within the applicable range of percentage

awards in this Circuit; *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. April 9, 2004)

[Doc. No. 297]; *Mowbray v. Waste Management Holdings*, No. 98-11534-WGY (D. Mass. Aug.

2, 2001); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, No. 94-11897-WGY (D. Mass. Feb. 8,

1996); *Wilensky v. Digital Equipment Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001).

Accordingly, Class Counsel are hereby awarded $_____ from the balance of the

Settlement Fund, as their fee award which the Court finds to be fair and reasonable, and which

amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of

the Agreement, with interest from _____ (the date of the funding of the Settlement

Fund) to the date of payment, at the same net interest rate earned by the Settlement Fund.

Further, Class Counsel are hereby awarded $_____ for their expenses which the

Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the

Settlement Fund in accordance with the terms of the Agreement.  The attorneys' fees and

expenses awarded by the Court shall be allocated among Class Counsel by Lead Class Counsel.

      17.    The Class Representatives and other appropriate parties, as identified in the Order

Granting Preliminary Approval of the Track Two Class Settlements, Directing Notice to the

Classes, and Scheduling Fairness Hearing, dated _____, 2008, are hereby compensated in

the amounts set forth in their declarations concerning the amount of time spent on this case.

(Document _____).

      18.    Without affecting the finality of this Final Order and Judgment, the Court retains

continuing and exclusive jurisdiction over all matters relating to administration, consummation,

enforcement, and interpretation of the Agreement and of this Final Order and Judgment, to

protect and effectuate this Final Order and Judgment, and for any other necessary purpose.  The

Track Two Defendants, Class Representatives, and all Settlement Class Members are hereby

deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose

of any suit, action, proceeding or dispute arising out of or relating to the Agreement or the

applicability of the Agreement, including the Exhibits thereto, and only for such purposes.

Without limiting the generality of the foregoing, and without affecting the finality of this Final

Order and Judgment, the Court retains exclusive jurisdiction over any such suit, action, or

proceeding.  Solely for purposes of such suit, action, or proceeding, to the fullest extent they may

effectively do so under applicable law, the parties hereto are deemed to have irrevocably waived

and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that

they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper

venue or an inconvenient forum.

19.    In the event that the Class Settlements do not become effective according to the

terms of the Agreement, this Final Order and Judgment shall be rendered null and void as

provided by the Agreement, shall be vacated and, all orders entered and releases delivered in

connection herewith shall be null and void to the extent provided by and in accordance with the

Agreement.

20.    No Class Member, either directly, representatively, or in any other capacity (other

than a Class Member who validly and timely elected to be excluded from one or more of the

Classes), shall commence, continue, or prosecute any action or proceeding against any or all

Released Party or Parties in any court or tribunal asserting any of the Released Class Claims

defined in the Agreement, and are hereby permanently enjoined from so proceeding.

21.    Pursuant to FED. R. CIV. P. 54(b) this Court expressly finds that there are no

remaining claims between Class Plaintiffs and the Track Two Defendants in the MDL.  There are

no subsequent proceedings between the Class Plaintiffs and any remaining party in the MDL that

will affect the Court's decision with respect to Class Plaintiffs' settlement with the Track Two

Defendants.  No party in the MDL will be prejudiced by the immediate entry of this Final Order

and Judgment in accordance with the Settlement Agreement.  Pursuant to FED. R. CIV. P. 54(b),

this Court expressly determines that there is no just cause for delay and expressly directs that this

11

Final Order and Judgment, upon filing in 01-CV-12257-PBS, be deemed as a final judgment with respect to each of the Settlement Classes, and specifically all such Settlement Class Members' Released Claims against the Track Two Defendants and all Released Parties.


DATED: _____           _____

Hon. Patti B. Saris

## EXHIBIT A

INDIVIDUALS THAT HAVE PROPERLY EXCLUDED
THEMSELVES FROM CLASS 1 IN ACCORDANCE WITH THE ORDER OF _____, 2008
(Docket No. ___).

**[list all Class 1 Opt Outs]**


ENTITIES THAT HAVE PROPERLY EXCLUDED
THEMSELVES FROM CLASS 2 IN ACCORDANCE WITH THE ORDER OF _____, 2008
(Docket No. ___).

**[list all Class 2 Opt Outs]**


INDIVIDUALS AND ENTITIES THAT HAVE PROPERLY EXCLUDED
THEMSELVES FROM CLASS 3 IN ACCORDANCE WITH THE ORDER OF _____, 2008
(Docket No. ___).

   1.  <u>Individuals</u>
**[list all Class 3 Individual Opt Outs]**


   2.  <u>Entities</u>
**[list all Class 3 TPP Opt Outs]**

13

# **EXHIBIT K**

## **CLAIMS PROCESS EXPLANATION**

## EXHIBIT K

This exhibit is incorporated by reference in and made a part of the Track Two Settlement Agreement and Release in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL. No. 1456 (the "Settlement Agreement").

A.     Required Claims Documentation

1.   Consumer Settlement Class Members

In order to validate a claim for payment associated with each Class Drug for which they seek payment from the Settlement Fund, Consumer Settlement Class Members must submit one proof of payment for each of the drugs listed in Exhibit B to the Settlement Agreement for which they are seeking payment.

Proof of payment for consumers in Class 1, for which the Claims Administrator has received data on co-payment obligations from CMS, and for consumers in Class 3 who have chosen the "Easy Refund Option," may be in the form of: a statement signed by the Consumer Settlement Class Member under the penalty of perjury indicating that the consumer paid or is obligated to pay a percentage co-payment for one or more of the Class Drugs during the period January 1, 1991, through January 1, 2005 (for Class 1) and through March 1, 2008 (for Class 3). This statement shall also be accepted as executed by a spouse of a deceased Consumer Settlement Class Member or a legal representative of the deceased Consumer Settlement Class Member's estate.

Proof of payment for consumers in Class 3 who have elected the "Full Estimation Refund Option," may be in the form of (1) a receipt, cancelled check, or credit card statement that shows a payment for one of the Class Drugs (other than a flat co-payment); (2) a letter from the Consumer Settlement Class Member's doctor stating that he or she prescribed and that the Consumer Settlement Class Member paid or is obligated to pay part of the cost of one of the Class Drugs (other than a flat co-payment) at least once; (3) billing records from a doctor or other health care provider evidencing an obligation to pay part of the cost of one of the Class Drugs (other than a flat co-payment); (4) an Explanation of Benefits ("EOB") from an insurer or other payor evidencing an obligation to pay part of the cost of one of the Class Drugs (other than a flat co-payment), or (5) any combination of 1-4 above.

2.   TPP Settlement Class Members

TPP Settlement Class Members shall be required to submit the amount of purchases of each drug listed as a Class A drug on Exhibit B to the Settlement Agreement for which they are seeking payment during the period of January 1, 2003, to December 31, 2003. This period is substituted for the amount of expenditures for each drug associated with the full class period in recognition of the difficulty many TPPs have in accessing claims data that are older and likely not kept electronically or on current electronic systems. This "proxy period" shall be used to determine the payments made to each TPP Settlement Class Member in accordance with the

procedures set forth below.

In order to validate a claim for payment associated with the Class Drugs for which they seek payment from the Settlement Fund, TPP Settlement Class Members with claimed expenditures for all Class Drugs listed as Class A on Exhibit B to the Agreement during the proxy period that exceed $300,000.00 in total shall be required to submit electronic claims documentation with their claim.  The form and data required to be submitted are delineated in the TPP Claim Form attached as Exhibit D to the Settlement Agreement.  Those TPP Settlement Class Members whose claimed expenditures are $300,000.00 or less need not submit electronic claims documentation with their claim but must furnish such claims documentation upon request of the Claims Administrator.

    3.    ISHP Claims Documentation

Documentation required from each member of the ISHP Group shall be that set forth on Exhibit L to the Settlement Agreement.

B.    Calculating Recognized Claim Amounts

Procedures for establishing a recognized claim for each Consumer Settlement Class Member, TPP Settlement Class Member, and ISHP Group Member have been established as follows.

    1.    Consumer Settlement Class Members in Class 1

For consumers in Class 1 for which the Claims Administrator has obtained records from CMS evidencing the consumer's total co-payment obligation under Medicare Part B, the consumer's obligation under Medicare Part B for all Class Drugs during the Class Period, as evidenced in records from CMS, shall form the basis of the Class 1 consumer's claim.  For those Class Drugs designated as "Class A" on Exhibit B to the Settlement Agreement, the consumer's total obligation related to Class A Drugs shall be multiplied by a factor of three (3x).  This figure shall be added to the consumer's total co-payment obligation for Class Drugs designated as "Class B" on Exhibit B to the Agreement (without a multiplication factor).  The sum of these two figures shall constitute the Class 1 consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Settlement Class Member.

    2.    Consumer Settlement Class Members in Class 3

For consumers in Class 3 for which the Claims Administrator does not have records from CMS, the amount to which the Class 3 consumer shall be entitled will be determined based upon the consumer's election on a claim form provided by the Claims Administrator between two options.

    a.    Easy Refund Option:  If a Class 3 consumer elects the "Easy Refund Option" on the claim form provided and the consumer's claim is verified and accepted by the Claims Administrator, the "Total Recognized Claim" used for purposes of calculating the

payment made to each such Consumer Settlement Class Member shall be equal to $35.00.

b.  <u>Full Estimation Refund Option</u>.  If a Class 3 consumer elects the "Full Estimation Refund Option" on the claim form provided, then the consumer will be required to estimate the consumer's total out-of pocket expenses associated with percentage co-payments for each drug for which the consumer is seeking payment.  Each such consumer will also be required to provide documentary support, as called for in Section A1 above in support of the consumer's estimated out-of-pocket expenses.  The consumer's estimated out-of-pocket expenses for Class A drugs shall be multiplied by a factor of three (3x), and added to the consumer's estimated out-of-pocket expenses for Class B drugs (without a multiplication factor).  The sum of these two figures will constitute the Class 3 consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Settlement Class Member.

If total valid Recognized Claims for all Consumer Settlement Class Members related to Class Drugs exceeds the amount of the Settlement Funds allocated to satisfy Consumer Settlement Class Member claims, all such consumer claims will be reduced proportionately.

3.      Sample Calculations of Hypothetical Consumer Claims

<u>Example # 1</u>

Consumer information:

Consumer Settlement Class Member in Class 1.  Consumer validly certifies under pains and penalties of perjury that the consumer paid or was obligated to pay percentage co-payments during the Class Period.

CMS records indicate total co-payment obligations under Medicare Part B to be $200 for Class A drugs and $100 for Class B drugs during the class period.

Calculation:

Class A Drugs:   $200 x 3 = $600
Class B Drugs:   $100      = $100

Total Recognized Claim = $700 unless total Recognized Claims of all Consumer Settlement Class Members exceeds the amount allocated to pay consumer claims, in which case the payment will be reduced in proportion to all such Recognized Claim amounts.

Example # 2

Consumer information:

> Consumer Settlement Class Member in both Class 1 and Class 3.  Consumer validly certifies under pains and penalties of perjury that the consumer paid or was obligated to pay percentage co-payments during the Class Period under both Medicare Part B and under one or more private health insurance plans.

> CMS records indicate total co-payment obligations under Medicare Part B to be $200 for Class A drugs and $100 for Class B drugs during the class period.

> Consumer chooses "Easy Refund Option" for Class 3 refund.

Calculation:

> Class A Drugs:   $200 x 3 = $600
> Class B Drugs:   $100      = $100

> Total Recognized Claim = $735 ($600 + $100 +$35)  unless total Recognized Claims of all Consumer Settlement Class Members exceeds the amount allocated to pay consumer claims, in which case the payment will be reduced in proportion to all such Recognized Claim amounts.

4.      Third Party Payor Settlement Class Members and ISHP Group Members

In recognition of the fact that the claims of all TPP Settlement Class Members and ISHP Group Members will exceed the total amount of funds allocated to satisfy the claims of TPP Settlement Class Members and ISHP Group Members under the Settlement Agreement and that each TPP Settlement Class Member or ISHP Group Member will be paid a pro-rata portion of the Settlement Amount allocated to TPP Settlement Class Members and the ISHP Group, the recognized claim for both TPP Settlement Class Members and ISHP Group Members shall be the total amount of purchases during the period of January 1, 2003, to December 31, 2003, of all drugs listed as Class A drugs on Exhibit B to the Agreement.  This figure, if properly supported and accepted by the Claims Administrator, is the TPP Settlement Class Member's or ISHP Group Member's "Recognized Claim" used for purposes of calculating the payment made to each TPP Settlement Class Member and ISHP Group Member.

C.      Sample Calculation of the ISHP Group Reversion Amount

In order to illustrate the calculation of the ISHP Group Reversion Amount as contemplated in the Settlement Agreement two examples are set forth below:

<u>Example #1</u>

Assumptions:

> ISHP Group Recognized Claim Percentage = 60%
> Net Fees and Expenses = $42M
> Track Two Defendant Opt-Out Refund = $3M
> Total Deposits to Class TPP Pool and ISHP Pool = $103M

ISHP Group Reversion Amount Calculation:

> ISHP Over/Underage = 60-37.5 = 22.5%
>
> Fees and Expenses Attributable to TPPs and ISHPs = $42M X .825 = $34.65M
>
> 22.5% X ($103M - $34.65M - $3M) = $14.7M
>
> $14.7M due to be paid to ISHP Group Members first from the amount remaining in the ISHP Settlement Pool and the balance from TPP Settlement Pool at the conclusion of the claims process
>
> Total payment to ISHP Group Members = $14.7M + $25.5M (ISHP Group Initial Payment) = $40.2M

<u>Example 2</u>

Assumptions:

> ISHP Group Recognized Claim Percentage = 40%
> Net Fees and Expenses = $42M
> Track Two Defendant Opt-Out Refund = $3M
> Total Deposits to Class TPP Pool and ISHP Pool = $103M

ISHP Group Reversion Amount Calculation:

> ISHP Over/Underage = 40-37.5 = 2.5%
>
> Fees and Expenses Attributable to TPPs and ISHPs = $42M X .825 = $34.65M
>
> 2.5% X ($103M - $34.65M - $3M) = $1.63M
>
> $1.63M due to be paid from ISHP Settlement Pool to ISHP Group Members.  Any funds remaining in ISHP Settlement Pool to be returned to TPP Settlement Pool at the conclusion of the claims process

5

Total payment to ISHP Group Members = $1.63M + $25.5M (ISHP Group Initial Payment) = $27.13M.

# EXHIBIT L

**ISHP CLAIMS DOCUMENTATION**

## EXHIBIT L

### ISHP CLAIMS DOCUMENTATION

On or before the deadline set for TPP Class Members to file claims pursuant to the Track Two Settlement Agreement and Release ("Track Two Settlement Agreement") as such date is set by the MDL Court in an order preliminarily approving the Track Two Settlement Agreement, each ISHP Group Member, or ISHP Group Counsel where indicated, shall submit the following claims documentation:

(1)     ISHP Group Members shall be required to submit the amount of purchases of each drug listed on Attachment 1 hereto, during the period of January 1, 2003 to December 31, 2003, net of co-pays, deductibles, and/or co-insurance.

(2)     Inclusion of the following data fields will facilitate the claims review process, and ISHP Group Members are therefore requested to provide it if practicable:

a.     <u>J-Code or NDC Number</u>

The applicable J-Code or NDC Number for each transaction.  The applicable J-Codes for each drug as well as a list of NDC numbers is attached hereto as Attachment 1.

b.     <u>Patient Identifier</u>

A random encrypted patient identification number for each transaction, which can be used to track claims.

c.     <u>Age</u>

Age information (*i.e.* the difference between date of birth and date of service or date of fill, rounded down to the nearest year) for each transaction.

d.     <u>Service and/or Fill Date</u>

Service date will often be available for J-Code entries and fill date will be available for NDC entries.  If both are available, please include.

e.     <u>Group Number</u>

The group number assigned to each transaction.  As part of the auditing process, you may be asked to provide corresponding group name for each group number.  Only the Settlement Administrator will have access to this information.

f.     <u>Amount Billed</u>

The billed charges or the initial amount billed by the provider or providers before any adjustments.

      g.    <u>Units</u>

If available, the units for each transaction should be provided.

(3)    Each ISHP Group Member shall provide a list of all self-funded healthcare plans ("SFP's") or other entities for which it is authorized to make a claim, including the identity of each entity on whose behalf the ISHP Group Member is authorized to act by name and by the Federal Employer Identification Number assigned to such entity by the United States Internal Revenue Service, if the ISHP Group Member has this information.

(4)    Each ISHP Group Member shall provide a declaration made by a duly authorized employee of each ISHP Group Member certifying:

(i)    the employee's authority to submit a claim on behalf of the ISHP Group Member;

(ii)    the ISHP Group Member's authority to settle the claims asserted in the MDL Class Actions and to release all claims related to purchases of the drugs at issue in the MDL Class Actions;

(iii)    the total net dollar amount of purchases of each of the drugs by the ISHP Group Member during the period January 1, 2003 to December 31, 2003 ;

(iv)    that the ISHP Group Member has historically utilized AWP in calculating reimbursement amounts for the brand drugs addressed by this settlement and has not included claims that are readily identifiable from a query of the ISHP Group Member's electronic claims databases as having been based on a reimbursement standard other than one that utilized AWP;

(v)    that the ISHP Group Member and each entity on whose behalf the ISHP Group Member is authorized to act waives any right it may have to receive any distribution as a TPP Class Member under the Track Two Settlement Agreement (except to the extent of an administered TPP's purchases of drugs which were not administered by an ISHP); and

(vi)    that the data and other information provided as part of the Claims Documentation submitted by the ISHP Group Member is true and accurate, based on records maintained by or otherwise available to the ISHP Group Member.

**All data and documents required hereunder must be submitted, by the deadline set by the MDL Court in the Preliminary Approval Order, to the Claims Administrator at the following address:**

Complete Claim Solutions, LLC
Hood Road Centre
5210 Hood Road
Palm Beach Gardens, FL 33418

**Attachment 1 – Covered Drugs and HCPCS Codes**

| NDC | Drug | Description | HCPCS Code(s) |
|-----|------|-------------|---------------|

# EXHIBIT M

## STATEMENT REGARDING CLASS COUNSEL & ISHP FEE AGREEMENT

## EXHIBIT M

Pursuant to Fed. R. Civ. P. 23(e)(1)(c), Plaintiffs state that they have entered into an agreement with the ISHPs regarding allocation of attorneys fees to ISHP counsel out of any award made to Class Counsel.