**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | CIVIL ACTION:  01-CV-12257-PBS |
| ) | |
| ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* ) | Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, ) | |
| No. 06-CV-11337-PBS ) | |

**ABBOTT LABORATORIES, INC.'S OPPOSITION TO THE UNITED STATES'
MOTION TO QUASH THE SUBPOENAS OF
IRA BURNEY AND DEBBIE CHANG AND IN SUPPORT OF A PROTECTIVE ORDER**

Merely two business days before Abbott Laboratories, Inc. ("Abbott") was scheduled to depose two key witnesses from the CMS Office of Legislation, the United States filed an untimely motion for a protective order and refused to present the witnesses for their noticed depositions.  As set forth more fully below, the Government's motion suffers from several deficiencies.  First, the motion is untimely filed.  Second, the motion to limit deposition testimony is premature, as courts universally deal with privilege issues on a question-by-question basis after non-privileged testimony has been taken and appropriate objections have been lodged. Third, the deponents have testimony to offer regarding numerous non-privileged topics that should be exhausted before this Court must address privilege questions.  And, finally, the Government's motion to quash the document subpoenas is moot, inasmuch as Abbott does not seek the production of privileged documents.[1]

---

[1] Abbott also disagrees with the Government's proposed application of the deliberative process privilege, but does not restate its well-briefed arguments in this opposition.  *See* discussion *infra* at 6.

For all of these reasons, Abbott respectfully asks this Court to **DENY** the United States' Motion to Quash the Subpoenas of Ira Burney and Debbie Chang and in Support of a Protective Order.

## BACKGROUND

In the summer of 2007, Abbott first requested the depositions of Ira Burney and Debbie Chang. *See* 7/27/07 Letter from Cook to Draycott (Ex. 1). After the Government's refusal to produce documents from the Office of Legislation, Abbott delayed Mr. Burney's and Ms. Chang's depositions until the document production issues were resolved. Months later, the Government subsequently produced thousands of pages of documents, even as it prevailed on a motion to withhold many documents from the Office of Legislation under the deliberative process privilege. After reviewing the production, Abbott renewed its request for the depositions of Mr. Burney and Ms. Chang and requested that the Government provide new deposition dates. *See* 1/30/08 Email from Ramsey to Draycott (Ex. 2).

Despite repeated requests that the Government comply with this Court's Case Management Order 29 ("CMO 29"), the Government refused to propose new deposition dates for these witnesses. Ultimately, Abbott was forced to issue notices and select dates for these witnesses. Weeks passed and the Government never voiced any objection to these depositions until it filed its untimely motion for a protective order just two business days before the depositions were scheduled to take place. Although Abbott proposed that the parties proceed with the depositions to cover, at the very least, topics that are clearly non-privileged, the Government refused this compromise and refused to produce the witnesses altogether. *See* 3/10/08 Letter from Cook to Draycott (Ex. 3) and 3/11/08 Email from Draycott to Cook (Ex. 4).

The record to date demonstrates numerous topics on which Mr. Burney and Ms. Chang can provide relevant evidence. According to former CMS Administrator Dr. Bruce Vladeck, for example, Mr. Burney was "the Part B expert on [CMS's] legislative staff." *See* B. Vladeck Dep. Tr. of 6/21/07 at 348 (Ex. 5). Similarly, former CMS Administrator Tom Scully testified that "Ira [Burney] was probably always the key guy driving the CMS internally" and "[m]ost incredibly complex policies came from Ira over the years, probably half your litigation." *See* T. Scully Dep. Tr. of 5/15/07 at 274-275 (Ex. 6). Additionally, both Mr. Burney and Ms. Chang had extensive communications with third parties, including Congress, with respect to the very issues at the heart of this litigation.

Abbott has not taken the same approach as the United States regarding depositions directed at its legislative activities. The United States has deposed numerous Abbott witnesses, over six days of testimony, regarding Abbott's communications with Congress. Curiously, the Government is now attempting to stonewall Abbott's request to depose these two CMS employees on this same topic even though they are the *only* CMS legislative personnel whose testimony Abbott has requested.[2]

## ARGUMENT

### I. THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER IS UNTIMELY

The United States' motion for a protective order was filed two weeks too late. For that reason alone, the motion should be denied without further consideration.

With respect to a Rule 30(b)(1) deposition, this Court's CMO 29 requires that "[a]ny motion for protective order shall be filed no later than 15 business days from receiving the requesting party's initial request." *See* CMO 29 at pg. 5 (Ex. 8). Because Abbott made a written

---

[2] Abbott is re-noticing the depositions of Mr. Burney and Ms. Chang for the week of March 24 in the event that no protective order is issued by that time. See 3/11/08 Letter from Cook to Draycott (Ex. 7).

request for the depositions of Mr. Burney and Ms. Chang on January 30, 2008, any motion for a protective order was due no later than February 21, 2008.  *See* 1/30/08 Email from Ramsey to Draycott (Ex. 2).  Instead, the Government ignored the court-ordered timeline, and filed its motion just two business days before the depositions were set to begin.

The United States has offered no explanation or excuse for its belated filing.  While in a few instances the parties have entered agreements to extend discrete CMO deadlines, that did not occur with respect to the depositions of Mr. Burney and Ms. Chang.  To the contrary, Abbott specifically advised the United States that it must abide by the timelines set forth in CMO 29 with respect to these two witnesses.  *See* 2/12/08 Email from Ramsey to Draycott (Ex. 9).  This notice to the Government was received one month before the March 2008 dates on which the depositions were scheduled to take place and well before any motion for protective order was due.

The United States has no excuse for its late filing.  Having submitted its motion weeks late, requesting no extension from Abbott, and not once indicating that a protective order was forthcoming, the United States' motion should now be denied as untimely.

## II.  PRIVILEGE ISSUES ASSOCIATED WITH DEPOSITIONS ARE PROPERLY ADDRESSED ON A QUESTION-BY-QUESTION BASIS ONCE THE DEPOSITION CONCLUDES

Even if it were timely, the Government's motion should be denied as premature.  The Government asks this Court to issue a protective order barring these depositions entirely in order to prevent testimony regarding narrow privileged conversations.  The pertinent authority, however, universally indicates that such relief is improper and that privilege issues should be decided on a question-by-question basis once the deposition has taken place, the privilege has been asserted, and a proper record has been created of the circumstances surrounding the putatively privileged communications.

4

### A. The United States Provided No Legal Authority to Support Preventing the Burney and Chang Depositions from Proceeding.

The United States improperly and inaccurately asserts that "courts routinely uphold the invocation of the deliberative process privilege to *prevent* depositions of Government officials." *See* U.S. Memo in Support at 7 (emphasis added). In fact, not one of the four cases cited by the Government supports this outlandish argument.

Three of the cases cited by the Government explicitly concern a court's analysis of the deliberative process privilege *after* the witness had already been deposed. In *Walker v. NCNB Nat'l Bank of Fla.,* 810 F. Supp. 11, 13 (D.D.C. 1993), the court conducted an analysis of whether the assertion of the deliberative process privilege had been properly invoked at a witness' deposition in regard to testimony surrounding a letter. Likewise, in *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 293 (N.D. W.V. 1992) and *Jeff D. v. Kempthorne*, Civ. No. CV-80-4091-E-BLW, 2006 WL 2540090, at *2 (D. Id. Sept. 1, 2006), the courts analyzed motions to compel additional testimony, where the deliberative process privilege was asserted at a prior deposition. In all three cases, the witness was deposed, the privilege was asserted, and litigation regarding the assertion of the privilege ensued after the deposition has taken place.

It strains credibility for the United States to rely on *Walker*, *Scott*, and *Kempthorne* as support for their request to stop depositions before they begin. Far from supporting the Government's argument, *Walker, Scott*, and *Kempthorne* all suggest that the Court should adopt Abbott's approach: Allow these depositions to proceed, permit Government counsel to object to questions they believe will invade privileged communications, and litigate those disputes on a question-by-question basis later.

The only case cited by the Government where a protective order was granted to prevent a deposition from taking place altogether is *FTC v. U.S. Grant Res., LLC*, No. Civ.A. 04-596, 2004

5

WL 1444951 (E.D. La. June 25, 2004).  In that matter, defendants had explicitly noticed a deposition calling for testimony by a government attorney.  The court held that the deposition request in that case was "an inappropriate attempt to depose opposing counsel and to delve into the theories, opinions and mental impressions of FTC attorneys." *Id.* at *9.  Abbott, of course, has done no such thing, instead noticing the depositions of two fact witnesses who had direct involvement in the central events of this case.  No comparison can by drawn between *U.S. Grant* and the circumstances of Mr. Burney's and Ms. Chang's depositions.  The *U.S. Grant* decision certainly cannot be cited to support the notion that non-attorneys be relieved of testifying regarding non-privileged matters.

      **B.**    **Courts Properly Analyze Privilege Issues Associated with Deposition Testimony on a Question-by-Question Basis.**

Instead of preventing a deposition from proceeding, as the United States has requested, courts routinely decide privilege questions on a question-by-question basis *after* the deposition has gone forward and appropriate objections have been asserted.  In *United States v. Motorola*, No. Civ.A. 94-2331TFH/JMF, 1999 WL 552558, *2  (D.D.C. May 27, 1999), for example, the court analyzed the precise issue presented here: Whether the United States can prevent a deposition from going forward on the basis that the deliberative process privilege may be invoked.  Reasoning that preventing the deposition from proceeding would be "a gross abuse of my responsibilities," Magistrate Judge Facciola held that he was "obliged to rule on the application of each privilege on a question-by-question basis" and denied the Government's motion for a protective order to prevent the requested deposition.  *Id.* at **2-3.

The *Motorola* decision is not an anomaly.  Numerous other courts have similarly concluded that it is improper to prevent a deposition on the ground that a privilege *may* be raised, because privilege issues are properly analyzed after the fact on a question-by-question basis.

*See, e.g., Evans v. City of Chicago*, 231 F.R.D. 302, 320 (N.D. Ill. 2005) ("[G]enerally a subpoenaed witness who claims that his testimony would breach a privilege still must attend a deposition to assert the privilege in response to specific questions."); *Atlantic Sounding Co., Inc. v. Townsend*, No. 3:05-cv-649-J-20HTS, 2006 WL 4702150, *1 (M.D. Fla. Apr. 20, 2006) (same); *see also United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983) (questions of privilege must be addressed on a question-by-question basis)*; In re Air Crash at Taipei, Taiwan on October 31, 2000*, 211 F.R.D. 374, 376 (C.D. Cal. 2002) (same).  Indeed, this Court itself has indicated that it makes sense to resolve deliberative process privilege issues on a question-by-question basis as they arise.  *See* Tr. of 11/13/06 Hrg. before the Hon. Patti B. Saris at 6-7, 14-15 (Ex. 10).

       The United States' wholesale refusal to produce these witnesses for deposition presents the precise difficulties identified by other courts that have denied similar motions in the past.  Without a transcript, the Court has no record as to which specific questions and topics the United States claims a privilege.  Abbott's questions may never touch on any potentially privileged communications.  Even if the Government objects, the parties may yet decide that the areas of disagreement do not warrant further litigation.  Indeed, there is no reason at all not to permit the depositions to go forward, as even a partial record can only act to narrow and sharpen the disputes between the parties at this point.  *See*, *e.g.*, *Atlantic Sounding Co.*, 2006 WL 4702150, at *2 ("Clearly the deposition should have proceeded at least as to those areas constituting common ground.  If, at some point, intractable disagreements arose as to the status of a privilege claimed for certain answers, such could have been made the subject of a proper motion.").

### III.     MR. BURNEY AND MS. CHANG CAN TESTIFY TO A NUMBER OF NON-PRIVILEGED TOPICS

The United States makes the bald assertion of privilege as to "all" of the testimony that could be offered by Mr. Burney and Ms. Chang. The record clearly demonstrates, not surprisingly, that this claim is wildly overstated. In fact, Abbott has identified several topics that are particularly illustrative of the non-privileged testimony that each of these witnesses can offer.[3]

One central aspect of these depositions will be Mr. Burney's and Ms. Chang's communications with third parties, including Congress. For example, in early 1998 Ms. Chang corresponded with Senator Ben Nighthorse Campbell, in a letter that was forwarded to Mr. Burney. Ms. Chang voiced support for President Clinton's fiscal year 1999 budget, which proposed lowering drug reimbursement from 95% of average wholesale price ("AWP") to actual acquisition cost ("AAC"). *See* 2/11/98 Letter from Chang to Campbell (Ex. 11). Ms. Chang wrote that AWP "is substantially more than what the physician or supplier who furnishes the drug pays for it" and that changing from AWP to AAC "would pay physicians their costs for acquiring drugs but eliminate their mark-ups in furnishing them to beneficiaries." *Id.* Ms. Chang's 1998 letter to Senator Campbell raises a number of non-privileged issues that Abbott is entitled to explore, even if only to obtain testimony confirming that she was advocating this interpretation of AWP on behalf of CMS at a time when the Government claims that it was unaware of the difference between AWP and AAC.

Other evidence shows that Office of Legislation staff, including Mr. Burney, discussed the Medicare Part B payment methodology for drugs with non-governmental third parties, such as the Community Oncology Alliance. *See* 12/7/04 Letter from Community Oncology Alliance

---

[3] The Government has refused Abbott's request to go forward regarding these non-privileged topics. *See* 3/10/08 Letter from Cook to Draycott (Ex. 3); 3/11/08 Email from Draycott to Cook (Ex. 4).

to CMS Administrator McClellan (Ex. 12). In addition to establishing that CMS was well aware of oncologists' claims that they relied on the "spread" between AWP and AAC to cover other medical costs, testimony by Mr. Burney may show that CMS's decision to keep the AWP payment methodology in place reflected a deliberate policy decision to cross-subsidize certain providers. Former CMS Administrator Nancy-Ann Min DeParle has already testified that she kept high AWPs in place as the payment benchmarks in 2000 in part because she learned that "the spread" was helping to support necessary cancer treatments.

Indeed, Abbott should be permitted to examine Mr. Burney and Ms. Chang regarding any of the thousands of pages that have been produced from the Office of Legislation, many of which were sent or received by Mr. Burney or Ms. Chang. *See Evans*, 231 F.R.D. at 320 (permitting testimony of a government witness as to documents that had been produced, notwithstanding a claim of privilege as to other subjects). One document about which Mr. Burney can testify is a letter from Congressman Bliley to Secretary Shalala, which was forwarded to Mr. Burney. *See* 10/16/00 Letter from Bliley to Shalala (Ex. 13). This letter, sent in 2000, points to communications and meetings that Ven-A-Care, the Relator in this case, had with two CMS Administrators, Dr. Bruce Vladeck and Nancy-Ann Min DeParle, beginning as early as 1994. *Id.* The letter sharply criticizes the Department of Health and Human Services for sitting idle despite its knowledge that Medicare paid providers at levels exceeding their acquisition costs. Congressman Bliley wrote:

> The availability of this information also calls into question the basic competence of [CMS] to administer the Medicare program. Given that [CMS] has always had the regulatory authority to stop these abusive practices, it is unconscionable that the Administration has permitted this price gouging of American taxpayers – and most important, American senior citizens – to continue for years.

*Id.* at 2.  This letter illustrates yet again a central theme of Abbott's defense: CMS knowingly and deliberately allowed providers to be compensated at levels in excess of their costs.

These are only a few examples of the proper areas of inquiry for these witnesses.  The United States previously agreed that these documents and third-party communications are not privileged.  *See* 8/10/07 Letter from Torborg to Draycott at 9 (Ex. 14).  The Government offers no explanation for how these same non-privileged communications can be protected by privilege when they are the subject of deposition testimony.  *See Motorola*, 1999 WL 552558, at *2 (applying the same question-by-question privilege analysis to testimony as applied to documents).

In addition to these substantive topics, Abbott obviously is permitted to ask questions of Mr. Burney and Ms. Chang regarding such mundane topics as document retention and the evidentiary foundation to the Government's assertions of privilege.  By definition, such questions that do not relate to the content of any communications cannot implicate privilege issues.

As the foregoing demonstrates, the Government has no good faith basis for refusing to produce these witnesses for deposition.  Mr. Burney and Ms. Chang should be compelled to attend their depositions and provide testimony regarding all non-privileged information in their possession.

## IV.     ABBOTT DOES NOT SEEK ANY PRIVILEGED DOCUMENTS AS TO WHICH THE COURT HAS PREVIOUSLY RULED

The United States raises a red herring when it seeks an order to quash the Subpoena *Duces Tecum* directed at Mr. Burney and Ms. Chang.  Unfortunately, the Government may have raised a moot point in ignorance; despite the United States' signed verification, the United States

10

never addressed this issue during the parties' meet-and-confer. Had it done so, the parties could have resolved the issue easily and not burdened the Court with unnecessary briefing.

Abbott's subpoenas to Mr. Burney and Ms. Chang do not seek any documents as to which the Court has previously upheld a claim of privilege. Abbott seeks only non-privileged documents within the witnesses' personal possession, such as their resumes, which were called for by the first document request. *See* Subpoenas *Duces Tecum* of Ira Burney and Debbie Chang at X (Exs. 15 and 16, respectively).

Contrary to the Government's claim, the document requests are not duplicative or cumulative of other discovery, as they request only documents within the witnesses' "personal possession," a key fact noticeably absent from the United States' opening brief. *See id.* It is unclear how the United States could interpret these requests as seeking "the *exact same* information" as requested in prior requests directed at the United States. *See* U.S. Memo in Support at 13 n.1 (emphasis in original). Regardless, in the vast majority of instances, CMS and OIG witnesses produced only their individual resumes in response to identical subpoenas. In the few instances where a witness has had other responsive documents within their personal possession, the production size has been around a few dozen pages. Any argument that these requests are cumulative or burdensome is simply absurd.

Based on these limitations (to which Abbott would have readily agreed earlier), the Court should deny the United States' request to quash the document requests contained in the Subpoenas *Duces Tecum* directed at Mr. Burney and Ms. Chang.

## V. THE GOVERNMENT'S DELIBERATIVE PROCESS PRIVILEGE CLAIMS ARE NOT VALID

Underlying the Government's entire motion is the basic flaw that the deliberative process privilege has no place in this case. As Abbott has argued in previous submissions, the

11

Government's allegations are inconsistent with its assertion of the deliberative process privilege. Rather, these claims of privilege appear to be little more than an attempt to hide testimony that would expose the Government's ill-conceived case against Abbott.  *See* Abbott Laboratories, Inc.'s Motion to Compel Evidence Withheld Under the Deliberative Process Privilege (Dec. 27, 2006) (Dkt. No. 3512); Abbott Laboratories, Inc.'s Memorandum in Support of Its Renewed Motion to Compel Evidence Withheld Under the Deliberative Process Privilege (March 28, 2007) (Dkt. No. 3960); Abbott Laboratories, Inc.'s Reply Memorandum in Support of Its Renewed Motion to Compel Evidence Withheld Under the Deliberative Process Privilege (July 17, 2007) (Dkt. No. 4474); Abbott Laboratories, Inc.'s Objections to Magistrate Judge Bowler's August 13, 2007 Order (Sept. 10, 2007) (Dkt. No. 4698); Abbott Laboratories, Inc.'s Emergency Motion to Compel Submission of 'Cross-Cutting' Evidence Consistent with the Court's 11/13/2007 Deliberative Process Privilege Order (Nov. 21, 2007) (Dkt. No. 4901); Abbott Laboratories, Inc.'s Motion to Compel Testimony of Government Witnesses (Mar. 3, 2008) (Dkt. No. 5112).

Abbott does not, however, intend to re-argue here its frequently repeated opposition to the Government's assertion of the deliberative process privilege.  As discussed above, the Court need not even reach those issues at this preliminary stage of the Burney and Chang depositions.  To the extent that the Court does reach these issues, though, Abbott incorporates its prior arguments by reference and reserves its rights to assert these arguments fully on appeal, if that becomes necessary.

## **CONCLUSION**

The Government has offered no legal authority supporting its untimely argument that the depositions should be prevented simply because issues relating to the deliberative process privilege may arise.  As courts have concluded time and again, the proper way to analyze

12

privilege issues associated with depositions is through an after-the-fact analysis of each assertion on a question-by-question basis.

For the foregoing reasons, the Court should **DENY** the United States' Motion to Quash the Subpoenas of Ira Burney and Debbie Chang and in Support of a Protective Order.

Dated:  March 11, 2008                                         Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

    I, R. Christopher Cook, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S OPPOSITION TO THE UNITED STATES' MOTION TO QUASH THE SUBPOENAS OF IRA BURNEY AND DEBBIE CHANG AND IN SUPPORT OF A PROTECTIVE ORDER, and supporting documents, to be served upon all counsel of record electronically by causing same to be posted via LexisNexis this 11th day of March, 2008.

                                                            /s/ R. Christopher Cook\_
                                                           R. Christopher Cook