# EXHIBIT 14

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C.  20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

Direct Number:  (202) 879-5562
dstorborg@jonesday.com

August 10, 2007

<u>VIA EMAIL</u>

M. Justin Draycott, Esq.                          Ana Maria Martinez, Esq.
Patrick Henry Building                            Assistant United States Attorney
601 D Street, N.W.                                Southern District of Florida
Washington, D.C. 20004                            99 N.E. 4th Street
                                                  Miami, FL 33132
John K. Neal, Esq.
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

      Re:     *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.*

Dear Counsel:

On July 31, August 3, and August 7, 2007, Abbott and the DOJ participated in a series of meet and confers to discuss a number of discovery-related issues.  I write to summarize my understanding of our discussions and agreements.

**Completion of Robert Vito, David Tawes, and Linda Ragone Depositions**

Pursuant to defendants' request, DOJ proposed the dates of September 5-7 to continue the depositions of Messrs. Vito and Tawes and Ms. Ragone.  As noted in my recent email to Mr. Neal, those dates will not work for Dey.  We ask that you please determine dates after 9/11 (excluding 9/19) for these depositions.  I appreciate your continuing cooperation in this regard.

You indicated that additional documents from the files of Messrs. Vito and Tawes remain to be produced.  To ensure that the defendants have adequate time to review the documents, DOJ agreed that it would produce the documents before the depositions.  You were unable to indicate when those productions would be completed.  Please complete these productions as soon as possible, in any event at least five business days prior to the deposition.

**30(b)(6) Witness Regarding the Circulation of OIG Reports**

As you know, Judge Bowler ordered the Government to produce a witness to testify relating to the circulation of OIG reports.  You indicated the Government will be producing documents that provide some insight on that issue, but do not currently have all of the requested

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 2

information necessary to prepare a witness.  In an effort to obtain a complete answer in the most efficient manner possible, the parties agreed that DOJ would initially provide an interrogatory response with a narrative detailing the requested information.  Despite Abbott's request that this information be provided as quickly as possible, you indicated that the Government could not commit to providing a response before August 31, 2007 due to staffing issues at CMS.  The parties agreed that if Abbott was not satisfied with the interrogatory response, the Government would produce a 30(b)(6) witness immediately (instead of up to 45 days from Abbott's request per CMO 29).  I emphasized that Abbott is seeking information regarding circulation of reports outside of HHS/CMS, including specifically state Medicaid programs and officials.

In addition, Mr. Draycott indicated to Judge Bowler at the July 20, 2007 hearing that he would obtain information on when OIG began publishing its reports online.  (7/20/07 Hrg. at 18-19).  Please include that information in your supplemental interrogatory response.

**Continued Deposition of Nancy-Ann DeParle**

Abbott reiterated its request for dates to continue of Ms. DeParle's deposition.  DOJ directed Abbott to contact Becky Ford or Jamie Ann Yavelberg at DOJ to discuss scheduling.

**Deposition of Robert Niemann**

The deposition of Robert Niemann is scheduled for September 14, 2007.  DOJ indicated that it will be producing additional documents from Mr. Niemann's files prior to his deposition. Please produce those documents as soon as possible.

**Deposition of Richard Morris**

The deposition of Richard Morris will be held on August 29, 2007 in Lawrenceville, Georgia.  Abbott requested that DOJ produce any documents from Mr. Morris' files sufficiently prior to the deposition.  DOJ requested that Abbott update its initial disclosures with any documents relating to Mr. Morris that we will use to support our claims.

**Deposition of Joyce Somsak**

On August 2, 2007, Abbott requested the deposition of Joyce Somsak.  DOJ has provided Abbott with suggested dates.  Abbott will discuss these dates with the other defendants and inform DOJ as to our availability as soon as possible.

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 3

**30(b)(6) or 30(b)(1) Witness Regarding Communications Between CMS and the Alabama State Medicaid Program**

Abbott had previously requested that DOJ produce a 30(b)(6) or 30(b)(1) witness to testify regarding communications between CMS and the Alabama State Medicaid Program relating to drug reimbursement issues. DOJ informed us that, after researching this issue, it was unable to find a single current or former employee from the Atlanta Regional office who can testify to the issues addressed in our depositions notice. You instead proposed to produce Larry Reed to testify on these issues. We are considering whether to depose Mr. Reed as a 30(b)(6) on this topic (reserving our right to later depose him on a broader set of topics once we receive documents from his electronic files), and will inform you of our decision as soon as possible.

**30(b)(6) or 30(b)(1) Witness Regarding the "Southern Consortium"**

Abbott had previously requested that DOJ produce a 30(b)(6) or 30(b)(1) witness to testify regarding the purpose, origin, structure, and activities of the Southern Consortium. DOJ informed us that the Southern Consortium is not a separate entity, but, instead, is nothing more than the name given to the Atlanta and Dallas regions and a "communication level" above those two regions for communicative ease. Abbott is evaluating this information and will inform DOJ if we wish to further discuss a deposition regarding this topic.

**30(b)(6) or 30(b)(1) Witness Regarding the "Medicaid Fraud and Abuse Control Technical Advisory Group" (MFACTAG)**

Abbott had previously requested that DOJ produce a 30(b)(6) or 30(b)(1) witness to testify regarding the purpose, origin, structure, and activities of MFACTAG, including the Pharmacy Workgroup, the Inspector General's Issues Workgroup, and the Legislative and Regulatory Workgroup. You provided us some further background about MFACTAG and its various groups. In addition, you identified a CMS employee, Paul Minor, as an individual with general knowledge about MFACTAG. Please provide proposed dates and a location for Mr. Minor's deposition. As discussed, I do not believe this deposition will be particularly long.

Abbott initially inquired whether Rose Crum-Johnson may be the most appropriate witness to testify regarding the Southern Consortium and MFACTAG. DOJ indicated that it had not reached out to Ms. Crum-Johnson because she was a former "high-level" employee.

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 4

**Depositions of Witnesses Identified in Abbott's July 27, 2007 Letter**

By letter dated July 27, 2007, we asked for deposition dates for the following additional witnesses: Larry Reed, Thomas Gustafson, Ira Burney, Debbie Cheng, Randall Graydon, and Kathleen Buto. DOJ indicated that it would provide proposed deposition dates for these individuals by August 10, 2007, in accordance with CMO 29. Abbott requested that DOJ ensure that it complete the production of documents from each individual's files as soon as possible, in any event sufficiently prior to the deposition to ensure defendants have sufficient time to review the documents.

**30(b)(6) Witness Regarding Status of the Government's Response to Abbott's Document Requests**

One of the first deposition notices that Abbott served in this case sought a 30(b)(6) witness to testify regarding the United States' responses to Abbott's first RFPs (*see* November 22, 2006 Notice of Deposition). Initially, Abbott agreed to wait until the DOJ's production was underway before we would request the scheduling of a witness. During our discussion this Tuesday, DOJ indicated that its production from CMS was "largely complete." But when Abbott indicated that it wished to schedule the deposition given the Government's production was largely complete, DOJ stated that it had "misspoken" and that "searches have been ongoing." Whatever the exact status is of the Government's production, nine months have passed since this notice was issued, the parties are three quarters of the way through discovery, and we believe that we are at an appropriate juncture to schedule this deposition. DOJ offered to produce a witness once it has completed producing documents. This will no doubt be at the close of discovery; conducting the deposition at that time would prohibit Abbott from requesting additional searches. One of the main purposes of this deposition is to gain information about the ongoing searches in the event additional searches should be made. Given that the DOJ deposed Abbott's 30(b)(6) witness on this same issue in March, we see no reasonable explanation for delaying this deposition for any longer. Your offer of additional carrier witnesses is appreciated and will be considered, but, as you well know, those witness are not a substitute for a witness to testify about the searches of HHS' files.

DOJ stated that it would be unable to even discuss this issue until the end of August due to staffing issues at CMS. Abbott has agreed to defer this conversation until mid-August, but reiterates it cannot wait until the end of the month to continue this conversation. Abbott informed DOJ that if it refuses to schedule this deposition in the near future, we will seek relief from the Court.

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 5

**Documents Responsive to Abbott RFPs 7 and 8 (Arrays)**

Abbott has previously requested the production of documents, such as arrays, that would show how Medicare Carriers or Medicaid Intermediaries determined payment or allowable amounts for the Subject Drugs, including information about how "median AWP" and "lowest branded AWP" were calculated. (*See* Abbott RFPs 7 & 8). We discussed the importance of receiving this information as soon as possible. You agreed that such information will not be contained in the claims data the Government intends to produce. DOJ indicated that it believes it has produced some documents responsive to this request and may continue to produce this information in the future. Please indicate where in the production you believe this information has been produced.

**Key Word Searches**

The parties discussed the DOJ's potential use of key word searches on electronic documents. DOJ would neither indicate whether it was utilizing key word searches on electronic documents in its possession, nor would it agree to produce a list of key words for Abbott to examine. You were also unable or unwilling to identify what electronic sources would be searched for responsive material. DOJ offered that if Abbott provided a list of suggested key words, it would review the list and consider implementing the terms. Abbott is working to provide a list of suggested key words to DOJ and will provide it shortly.

**Production of Documents in Electronic Form**

Abbott and DOJ discussed each party's potential production of documents in electronic form, as called for in CMO 29. Abbott informed DOJ that it is prepared to re-produce certain electronic documents in a manner that complies with the second option discussed in Mr. Lavine's recent correspondence. As discussed, Abbott's offer is based on the condition that DOJ is prepared to both conform future productions and to re-produce electronic documents that have already been provided to Abbott in a manner consistent with one of the options outlined in Mr. Lavine's letter. You indicated that you would review the specifications outlined in Mr. Lavine's correspondence and inform us if the Government is able and willing to reach agreement on this issue.

Abbott also requested that DOJ examine its previous productions of electronic documents, namely the Tawes and Ragone productions, because we noticed that we did not receive documents that were electronically attached to emails.

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 6

**Workpapers from 2007 OIG Report "States Use of New Drug Pricing Data in the Medicaid Program**

In my letter of July 27, 2007, I requested the production of the work paper file for the 2007 OIG report titled "States Use of New Drug Pricing Data in the Medicaid Program" (OEI-03-06-00490). I provided you reasons why we believed the files were relevant. For some reason, you seemed disinclined to agree to this targeted and non-burdensome request. DOJ will inform Abbott by August 14, 2007 as to its position on producing these documents.

**Work Papers from Prioritized OIG Reports**

Abbott requested that DOJ continue to produce the work papers for the OIG reports that have been prioritized by Abbott. DOJ requested that Abbott provide a list of the outstanding reports. They are:

1. Task Force on Prescription Drugs, the Office of Secretary, United States Department of Health, Education, and Welfare – Final Report (Feb. 1969);

2. HHS-OIG, "Title XIX of the Social Security Act, Limitation on Payment or Reimbursement for Drugs" (Sept. 1, 1984);

3. HCFA (Region IX), "EAC Survey Report, Hawaii Medicaid Program, EAC Patrol Initiative" (1986);

4. HHS-OIG, "Changes to the Maximum Allowable Cost Medicaid Drug Limit Could Save Millions" (CAN 08-60203, Aug. 15, 1986);

5. HHS-OIG, "Use of Average Wholesale Price in Reimbursing Pharmacies Participating in Medicaid and the Medicare Prescription Drug Program" (A-06-89-0037, Oct. 1989);

6. HHS-OIG, "Comparison of Reimbursement Prices for Multiple Source Prescription Drugs in the United States and Canada" (OEI-03-97-000470, Aug. 1, 1991);

7. HHS-OIG, "Elimination of the Weighted Average Manufacturer Price Provisions of the Medicaid Outpatient Prescription Drug Rebate Program" (A-06-93-00070, Dec. 28, 1993);

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 7

8.  HHS-OIG, "Medicaid Pharmacy – Actual Acquisition Cost of Prescription Drug Products for Brand Name Drugs" (A-06-96-00030, Apr. 1997);

9.  HHS-OIG, "Medicaid Pharmacy – Actual Acquisition Cost of Generic Prescription Drug Products" (A-06-97-00011, Aug. 1997);

10. HHS-OIG, "Cost of Dialysis-Related Drugs" (A-01-91-00526, Oct. 1992); and

11. HHS-OIG, "Physicians' Cost for Chemotherapy Drugs" (A-02-91-01049, Nov. 1992).

The parties agreed that DOJ would inform Abbott in writing if DOJ is unable to locate any of the prioritized working files.  Please provide us with this information by August 31, 2007, or indicate why that date is unreasonable.

**More Adequate Damage Disclosures**

Abbott requested that DOJ inform us of its intentions as to providing more adequate damage disclosures.  DOJ agreed that it would discuss this issue and provide Abbott with its position on whether it is in a position to update its disclosures to provide real damage figures.  Please specify any information you believe you need from Abbott.

**Claims Data**

DOJ has informed Abbott that it is prepared to begin producing claims data.  The parties agreed that DOJ will first provide a sample of the claims data to ensure computer and format compatibility.  The parties agreed that DOJ will produce a sample of the Medicare data for one J-Code for one quarter of one year.  For Medicaid, DOJ will produce a data sample for one state for one quarter of one year from the "RX" database.  You expect to produce these samples in the coming week.  After the production of the two samples, the parties will work together to obtain a sample from the Medicaid "OT" database.

Due to concerns with separating out data from the Medicaid OT database, DOJ will produce the entire OT database (after it has produced the sample, of course).  The parties agreed, however, that if at a later point the DOJ learns how to produce information from the OT database in a more focused fashion, they will inform Abbott of this.

DOJ previously indicated that states were not required to produce Medicaid claims data to CMS until 1999, but that certain states did produce claims data to CMS prior to 1999.  DOJ

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 8

confirmed that it will produce claims data for all of the states for which CMS has claims data dating back to 1991, and it will provide a list, by year, of which states provided Medicaid claims data to CMS.  You also agreed to produce any claims data, not otherwise produced from CMS's files, in the possession of the DOJ by virtue of its investigation.  I noted that documents recently produced from the under seal file suggested DOJ received claims data in the course of its investigation.  We also ask that you produce any documents responsive to RFPs 7 & 8, such as arrays, in the DOJ's possession.

Abbott inquired as to whether the carriers would have any additional claims information not in CMS's possession.  You indicated that that any additional information was not responsive to Abbott's RFP.

The parties agreed that DOJ may redact patient identifying information; DOJ will inform Abbott of the specific fields that were redacted.  However, the parties agreed that if Abbott later learns that it requires the patient information, the issue can be revisited.  Additionally, DOJ will produce all requisite data dictionaries.

**Under Seal File**

Abbott informed DOJ that it will seek the minutes from the status conferences between DOJ and the Southern District of Florida while the case was under seal, as well as a docket sheet from the under seal file.  Mr. Lavine previously indicated DOJ would not oppose Abbott seeking the docket sheet.  Assuming you are provided an opportunity to review the minutes and make appropriate redactions, please advise us whether you will oppose our request for the minutes.

**Witness Statements**

Abbott requested that DOJ produce a list of all witness statements and sworn testimony that were in its possession.  Mr. Draycott recently provided me with the names of the six individuals that provided voluntary witness statements.  Additionally, DOJ will confirm that all of the EUO's in its possession, or of which it is aware, were provided to Abbott in the Texas case.  DOJ was unwilling to provide a list of the EUO's in its possession.

**Documents Received from Third Party Subpoenas**

Abbott agreed to produce all information that it has or receives from third-party subpoenas issued by Abbott with the understanding that DOJ will also timely produce all information that it has received or will or receive from third-party subpoenas issued by the Government in this case.

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 9


**Documents from the Rulemaking Support Files & Office of Legislation**

DOJ reaffirmed its position that it will not produce documents from the Rulemaking Support Files and from the Office of Legislation based on objections of relevancy, burden, and privilege. You indicated that the Court's ruling on Abbott's pending deliberative process privilege motion may change the Government's position. If the Court does issue a ruling on the deliberative process privilege favorable to Abbott, I hope that you will not continue to rest on relevancy objections that turn on your misplaced reliance on one *statutory* interpretation case (*Lachman*). As I understand it, the Rulemaking Support Files are collected in one place already; thus, making them available for our review should not be burdensome. The DOJ did agree to produce communications between the Office of Legislation and Congress.

**Documents Referenced in Bailey and Robey Depositions**

Abbott inquired into the status of producing documents referenced in our letter dated March 27, 2007. DOJ indicated that it would be producing some of the documents requested in this letter and would be providing an updated log for those documents for which DOJ is asserting privilege.

**Documents Relating to the Louisiana Litigation**

Abbott asked about the status of the production of documents relating to the Louisiana HHS Medicaid Determination and Appeal for Louisiana State Plan Amendment No. 87-33, HHS# 88-11. You indicated that it would ensure these documents were produced shortly.

**Production of Documents Referenced in Mr. Draycott's Letter of 5/4/07**

DOJ informed Abbott that it will produce documents discussed in Mr. Draycott's letter of 5/4/07. The documents will not be redacted, but, instead, will be designated as "confidential" because they contain various manufacturers' pricing information.

**Affidavit Regarding Amicus Brief**

At the May 16, 2007 motions hearing, DOJ told Judge Bowler that it would "certainly consider" providing an affidavit describing whom at CMS or HHS the DOJ consulted in preparing the Brief of the United States as Amicus Curiae. DOJ informed Abbott that it will not produce an affidavit detailing this information. You believe this is a "dead" issue.

JONES DAY

John K. Neal
M. Justin Draycott
Ana Maria Martinez
August 10, 2007
Page 10

**Outstanding Issues from Abbott's 2nd RFPs**

As we discussed, the Government does not appear to have made much, if any, progress responding to Abbott's Second Set of Requests for Production (served 2/21/07), though your written responses indicated production may be forthcoming on many issues.  The agenda I circulated prior to the call listed several particular requests.  DOJ agreed to review the list of outstanding requests and provide Abbott with an update during the week of August 20, 2007.

If I have misunderstood your position relating to any of these topics, please let me know.

Sincerely,

/s/ David S. Torborg

David S. Torborg

cc:    Renée Brooker
       Gejaa Gobena
       Mark A. Lavine
       Ann St. Peter-Griffith
       James J. Breen
       Neil Merkl
       Sarah L. Reid
       Helen Witt
       Eric T. Gortner