```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

|   |   |
|---|---|
| In re Pharmaceutical Industry Average Wholesale Price Litigation | ) ) ) ) ) MDL No. 1456 |
| This document relates to: UNITED STATES OF AMERICA *ex rel.* VEN-A-CARE OF THE FLORIDA KEYS, INC. | ) Master File No. 01-12257-PBS ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ABBOTT LABORATORIES, INC. | ) ) |
| Defendant. | ) ) |
| CIVIL ACTION NO. 06-11337-PBS | ) ) ) |

**MEMORANDUM AND ORDER**

March 13, 2008

Saris, U.S.D.J.

**INTRODUCTION**

The United States brings this action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733 and state law,[1] seeking to

---

[1] The government's first amended complaint-in-intervention states four causes of action against Abbott. Count 1 alleges that Abbott is liable to the government under 31 U.S.C. § 3729(a)(1) for presenting or causing to be presented false or fraudulent claims to the federal government. In addition, Count 1 asserts that Abbott violated the federal anti-kickback statute. Count 2 alleges that Abbott is liable to the government under 31 U.S.C. § 3729(a)(2) for making or using false records or statements to cause false claims to be paid. Count 3 alleges a cause of action for unjust enrichment. Count 4 alleges a claim for common law fraud.

recover losses to the Medicare and Medicaid programs caused by the reporting of allegedly excessive and fraudulent prices for certain drugs by defendant Abbott Laboratories, Inc. ("Abbott"). The alleged fraudulent drug pricing scheme began by January 1, 1991 and continued through 2001.

The government has moved for leave to file its first amended complaint to include claims involving Abbott's home infusion pharmacies and Acyclovir Sodium,[2] arguing that the delay in moving for leave to amend is justified because Abbott had previously concealed information about its home infusion pharmacies[3] and the government had recently discovered evidence confirming certain of the relator's claims about Acyclovir. Abbott opposes the government's motion to amend on the grounds that it is prejudiced by the delay.

After hearing and a review of the submissions, the Court **ALLOWS**, in part, and **DENIES**, in part, the government's motion for leave to file its first amended complaint [Docket No. 4878], and **ALLOWS**, in part, and **DENIES**, in part, Abbott's motion to dismiss [Docket No. 4469].

---

[2]Acyclovir Sodium ("Acyclovir") is an antiviral drug used to treat viral infections, some of which are associated with HIV / AIDS.  Abbott's generic version of Acyclovir came on the market on April 22, 1997.

[3]The government alleges that Abbott never provided information regarding this business to the United States prior to the filing of the first government complaint.

**PROCEDURAL HISTORY[4]**

The procedural history is extremely complex, involving six different relator complaints and two government complaints. On June 23, 1995, the relator, Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care"), filed a sealed *qui tam* complaint ("R1") in the Southern District of Florida against several defendants, including Abbott. Ven-A-Care alleged that Abbott falsely represented the prices for 19 specific "National Drug Codes." The Food and Drug Administration assigns a unique 11-digit number to each drug product, which is known as a National Drug Code ("NDC"). The NDC identifies the manufacturer or labeler of the drug, a product code and a package size.

In March 1997, Ven-A-Care filed both a notice dismissing Abbott, without prejudice, as a defendant and an amended complaint reflecting this dismissal ("R2").

In August 1997, Ven-A-Care filed its second amended complaint ("R3"), which again named Abbott as a defendant, and added a number of NDCs and "J-Codes" relating to Abbott drugs,

---

[4] The factual basis for the alleged fraudulent pricing scheme is set forth in this Court's prior opinions in California ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Abbott Labs., Inc., 478 F. Supp. 2d 164 (D. Mass. 2007); United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Abbott Labs., Inc., 491 F. Supp. 2d 12 (D. Mass. 2007), with which the Court assumes familiarity. This Court also assumes familiarity with the legal issues presented in United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Dey, Inc., 498 F. Supp. 2d 389 (D. Mass. 2007) and United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Boehringer Ingelheim Corp., No. 01-12257, 2007 WL 4287572 (D. Mass. Dec. 6, 2007), many of which overlap with Abbott's motion to dismiss.

including Acyclovir.  J-Codes from the Healthcare Common Procedural Coding System ("HCPCS") are not necessarily linked to particular drugs or their manufacturers but, instead, identify a type of drug and its dosage.

Ven-A-Care filed its third amended complaint ("R4") in December 1999 and its fourth amended complaint in December 2002 ("R5").  Ven-A-Care's fourth amended complaint added numerous additional NDCs to its claims against Abbott.

In March 2006, the government elected to intervene in the portion of Ven-A-Care's *qui tam* suit alleging that Abbott committed Medicaid and Medicare fraud.  The government's complaint ("G1") included various NDCs first included in Ven-A-Care's 1995 complaint and a number of NDCs first included in Ven-A-Care's fourth amended complaint, R5, filed in December 2002.  Four of the J-Codes included in this government complaint had not been the subject of FCA claims against Abbott in any of Ven-A-Care's prior complaints.[5]  In its notice of election to intervene in part and to decline to intervene in part, the government stated that it "declines to intervene in that part of the action against Abbott as to all other drugs or HCPCS codes identified in this action."  Significantly, the government declined to intervene in the claim involving Acyclovir.

In March 2006, Ven-A-Care moved for leave to amend its

---

[5]The government contends that these four J-Codes, while not specifically mentioned in earlier complaints, involve drugs that were identified in relator's original complaint.

4

complaint as to Abbott by adopting the government's complaint-in-intervention ("R6").  The government did not object and Ven-A-Care's motion was granted.  Accordingly, the claim involving Acyclovir was dismissed.

In August 2006, this case was consolidated with and transferred to the average wholesale price ("AWP") multi-district litigation.  Abbott and the government have been engaging in discovery since late 2006 pursuant to a discovery schedule established by this Court.  Discovery, initially scheduled to end by December 31, 2007, has been extended to March 31, 2008.

Without leave of court, the government filed its "First Amended Complaint" ("G2") on June 4, 2007 to add the drug Acyclovir to its case, and to include factual allegations regarding home infusion pharmacies owned and operated by Abbott. This complaint included the NDCs and J-Codes listed in the government's initial complaint-in-intervention and added the two NDCs for Acyclovir that were first included in Ven-A-Care's complaint R3.

On July 17, 2007, Abbott moved to dismiss or partially dismiss the United States' First Amended Complaint on multiple grounds [Docket No. 4469].  After the Court informed the government that it could not file an amended complaint without leave of court, the government moved to amend on November 7, 2007 [Docket No. 4878].

**DISCUSSION**

    **a.  Delay**

Abbott argues that the government should not be allowed to amend its complaint pursuant to Fed. R. Civ. P. 15(a) because the amendment was excessively delayed, causing Abbott prejudice. Fed. R. Civ. P. 15(a)(2) provides that, after the initial amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Courts generally liberally construe Rule 15(a).  See Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'").

As background, the government had initially filed an amended complaint without seeking leave of court.  Its argument was that the complaint in intervention (G1) should be treated as the initial complaint, and, as such, it was entitled to file an amended complaint (G2) without leave of court as a matter of right under Fed. R. Civ. P. 15(a)(1).  Courts have treated a complaint in intervention as an amended complaint.  See, e.g., United States v. Baylor Univ. Med. Ctr., 469 F.3d 263, 269 (2d

6

Cir. 2006) ("If the government decides to intervene, the intervention will almost always involve an amended complaint."); <u>United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Dey, Inc.</u>, 498 F. Supp. 2d 389, 397 (D. Mass. 2007) ("Many courts have taken the view that a complaint-in-intervention should be treated as an amended complaint under Fed. R. Civ. P. 15."); <u>United States ex rel. Purcell v. MWI Corp.</u>, 254 F. Supp. 2d 69, 75 (D.D.C. 2003) ("the government's complaint in intervention is an amendment of the relator's complaint."). As such, the government was obligated to move to amend pursuant to Fed. R. Civ. P. 15(a)(2) when seeking to amend the complaint in intervention.

Abbott argues that the government's delay in amending its complaint was excessive and prejudicial because, among other reasons, its motion came shortly before the end of the discovery period. The government argues it delayed asserting Acyclovir claims until it could corroborate the relator's contentions as it did in April 2007, when an Abbott National Account Manager testified that Abbott directly marketed the mega-spread on this drug. The government had good cause to delay intervention until it had a reasonable basis for a claim. <u>See</u> 31 U.S.C. § 3730(c)(3) ("When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause."). Still, if the

delay is so significant that remaining discovery time is limited or substantial trial preparation has been completed, it may warrant the Court's denial of leave to amend.  See, e.g., LaRocca v. Borden, Inc., 276 F.3d 22, 32 (1st Cir. 2002) (affirming denial of motion to amend, the court noted that "[t]he plaintiffs filed the motion to amend after discovery had been completed and after the court had issued an all-but-dispositive ruling on cross-motions for summary judgment."); Grant v. News Group Boston, Inc., 55 F.3d 1, 5-6 (1st Cir. 1995) (affirming denial of motion to amend, the court explained that "discovery was already complete, and...[non-moving party] had nearly completed its motion for summary judgment and undoubtedly was well into its trial preparation.").

Here, Abbott has been on notice of the additional claims in this complaint since June 4, 2007 when the government initially filed its amended complaint, and the discovery period has since been extended to March 31, 2008.  Accordingly, Abbott's argument of excessive delay and prejudice is unpersuasive.

### b. Dismissal of Claims

Abbott argues that most of the Acyclovir claims must be dismissed because Ven-A-Care dismissed the Acyclovir claims when it adopted the government's complaint in 2006.  Remember that in March 2006 the government intervened in some of the claims against Abbott (G1), but declined to intervene in the pending

relator claims involving Acyclovir.  See 31 U.S.C. § 3730(b)(2). As a result of the relator's amended complaint (R6) in March 2006, Abbott contends that there are no pending Acyclovir claims in the relator's complaint in which the government can intervene.

The government does not dispute that when Ven-A-Care amended its complaint to adopt the government complaint, it dismissed the claim involving Acyclovir.  See Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 16 (1st Cir. 2003) (holding that plaintiff's "amended complaint completely supersedes his original complaint, and thus the original complaint no longer performs any function in the case.").  But the government does insist that the dismissal of the claim involving Acyclovir was ineffective because the government never consented in writing.  The FCA provides that when a private person brings a civil action, "[t]he action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  31 U.S.C. § 3730(b)(1).  There was no written consent to the dismissal of the Acyclovir claim by the Attorney General.

Abbott argues that this requirement under § 3730(b)(1) does not apply to the post-intervention time frame.  See United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715, 723 (9th Cir. 1994) (holding that "the government's consent to dismissal is only required during the initial sixty-day (or extended) period in which the government may decide whether to

intervene."). However, the plain language of the statute does not include this limitation and several circuit courts have disagreed with Killingsworth and found that the government's consent to dismissal is required even after the government declines to intervene. See United States v. Health Possibilities, P.S.C., 207 F.3d 335, 339 (6th Cir. 2000) ("rejecting the Ninth Circuit's analysis, and hold[ing] that a relator may not seek voluntary dismissal of any *qui tam* action without the Attorney General's consent."); Searcy v. Philips Elecs. N. Am. Corp., 117 F.3d 154, 159 (5th Cir. 1997) ("find[ing] Killingsworth unpersuasive."). See also United States ex rel. Globe Composite Solutions, Ltd. v. Solar Constr., Inc., 528 F. Supp. 2d 1, 3 (D. Mass. 2007) ("This court concurs with the Fifth and Sixth Circuits, and takes the position that the statute clearly does not limit the consent requirement to the sixty-day seal period. Accordingly, the Government must consent to all dismissals in a qui tam action brought by a private person").

The question, then, turns on the meaning of "action" under the FCA. Generally speaking, in other contexts, courts have distinguished between an "action" and the "claims" that make up an "action." See, e.g., Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 288 (D. Mass. 2005) ("By its terms, Rule 41(a)(2) applies to the dismissal of 'an action.'

10

Consequently, the weight of authority is that Rule 15(a), as opposed to Rule 41(a)(2), applies to an amendment which drops some but not all of the claims in an action." (citations omitted)); Addamax Corp. v. Open Software Found., Inc., 149 F.R.D. 3, 5 (D. Mass. 1993) ("the weight of authority is that Rule 41(a), Fed. R. Civ. P., applies only when an 'action' is to be dismissed, an 'action' being defined not as an individual 'cause of action' but rather as the whole case.").

While there is a split in the caselaw, many courts have held that dismissal of all of the claims against any one defendant generally does constitute the dismissal of an "action."  See, e.g., Chapman v. Bernard's Inc., 198 F.R.D. 575, 579 (D. Mass. 2001)("A court may dismiss an action as to fewer than all of the defendants because the word 'action' in Rule 41(a)(2) has been construed to mean all claims against any one defendant."); Leroux v. Lomas & Nettleton Co., 626 F. Supp. 962, 966  (D. Mass. 1986) ("this Court holds that, where Rule 41 speaks of an 'action,' this means all of the claims against any one defendant, and not necessarily all of the claims against all defendants."). But cf. Harvey Aluminum, Inc. v. Am. Cyanamid Co., 203 F.2d 105, 108 (2d Cir. 1953) ("Rule 41(a)1 provides for the voluntary dismissal of an 'action' not a 'claim'; the work [sic] 'action' as used in the Rules denotes the entire controversy, whereas 'claim' refers to what has traditionally been termed 'cause of

action.'")  Only one court has weighed in on the meaning of "action" in §3730(b)(1) but the case is factually distinguishable.  See United States ex rel. Meyer v. Horizon Health Corp., No. 00-1303, 2006 WL 1490216, at *1 (N.D. Cal. May 25, 2006) (finding consent of the court and the Attorney General under § 3730(b)(1) not necessary when one of three relators withdrew from a qui tam action because the action was not being dismissed).

Based on the caselaw that distinguishes "claims" from "actions", the Court concludes that the relator did not dismiss the action against Abbott when it amended its complaint to adopt the government's complaint, and drop the claims against Abbott involving drug NDCs the government had chosen not to intervene in, including Acyclovir.  As such, the relator did not need written permission from the Attorney General to amend its complaint by dropping some of its claims against Abbott.  This Court declines to interpret the statutory term "action" so broadly as to preclude any amendment that dismisses individual claims against a defendant without the attorney general's written consent.  Thus, when the government moved to amend (G2) to add Acyclovir in November 2007, the amendment did not relate back to the relator's second amended complaint, R3, which first asserted the Acyclovir claims.  However, the motion to amend is permitted to the extent it seeks to add timely claims involving Acyclovir

(without the benefit of the relation back doctrine).

### c. Timeliness

Abbott also argues that the bulk of the government's FCA claims should be dismissed as untimely. Abbott relies heavily on Baylor to support its argument that the government's complaints should not be permitted to relate back to Ven-A-Care's complaints. I have written at some length about relation-back issues after Baylor in both Dey, 498 F. Supp. 2d at 398 ("The unique structure of the FCA supports the government's position that the government's complaint should be treated as an amended complaint that relates back to the relator's complaint under Rule 15(c)(1)[6]"), and United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Boehringer Ingelheim Corp., No. 01-12257, 2007 WL 4287572 (D. Mass. Dec. 6, 2007). I decline to reconsider those decisions, or write any more on the issue. Abbott insists that the exception I suggested in Dey for cases in which "egregious delay may be sufficiently prejudicial to trigger due process concerns," Dey, 498 F. Supp. 2d at 399, should apply to prevent relation-back of the government's complaint in this case. On the current record, I do not find sufficient prejudice to prohibit relation-back.

The next question is what complaint the government's claims should relate back to. For the reasons stated above, the

---

[6]Effective December 1, 2007, Fed. R. Civ. P. 15(c) was amended and certain sections were re-labeled. The cited cases generally refer to the earlier version of this Rule, but the amendments do not affect this Court's analysis.

dismissal of the whole action against Abbott in 1997 (R2) was ineffective under §3730(b)(1) because there was no written consent by the Attorney General. Therefore, the claims relate back to June 1995 to the extent the drugs were listed in that complaint.

Abbott also argues that, at the very least, claims relating to any particular NDC or J-Code should relate back only to the complaint in which a particular NDC or J-Code was first named by Ven-A-Care. The government argues that its claims should relate back to the complaint naming the drug, even if the complaints involve different NDCs. As I found in Boehringer Ingelheim Corp., "subsequent amendments involving [certain drug] properly relate back to the initial complaint under either Rule 15(c)(1) or 15(c)(2) as each involves the same alleged pricing scheme for the same drug against the same defendant." Boehringer Ingelheim Corp., 2007 WL at *3. See also In re Pharm. Indus. Average Wholesale Price Litig., 498 F. Supp. 2d 402, 405 (D. Mass. 2007) ("The Court allows defendants' motion to dismiss all new drugs not listed in the initial Consolidated Complaint or Nassau County Complaint and attached exhibits. Defendants' motion is denied with respect to new NDC's and spreads pleaded in the FACC for the remaining drugs.")

**ORDER**

Defendant's motion to dismiss [Docket No. 4469] is **ALLOWED**,

14

in part, and **DENIED**, in part, and the government's motion for leave to file its first amended complaint [Docket No. 4878] is **ALLOWED**, in part, and **DENIED**, in part.  The request for discovery costs is **DENIED**.

                                         **S/PATTI B. SARIS**
                                         United States District Judge