UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne Bowler |

**MEMORANDUM BY THE UNITED STATES IN OPPOSITION TO
ABBOTT'S MOTION TO COMPEL TESTIMONY OF GOVERNMENT WITNESSES**

Abbott Laboratories Inc. (Abbott) has moved for an order overruling objections stated by counsel for the Government at the deposition of federal employees and for an order compelling additional deposition testimony from those individuals (Dkt. 5112). The particular relief requested by Abbott's current motion has already been denied by the Magistrate Judge. Abbott's subsequent Objections to the decision by the Magistrate Judge were then denied by Judge Saris. Accordingly, yet again, Abbott is attempting to re-litigate issues that have already been resolved against it.

Abbott's motion concerns objections and instructions stated by Government counsel at the depositions of nine individuals who are, or were previously, employed by either the CMS or the Office of Inspector General for the Department of Health and Human Services (DHHS-OIG). More particularly, Abbott's motion relates to instances when Government counsel instructed witnesses to refrain from revealing information protected by the deliberative process privilege when responding to questions by defense counsel. As demonstrated below, the arguments by

Abbott have already been presented to this Court and to Judge Saris with respect to the Government's assertion of the deliberative process privilege both (1) in the context of depositions of federal employees, and (2) in connection with the particular topics, and even transcript excerpts covered by the instant motion.

Significantly, **none** of the deposition questions covered by Abbott's latest motion pertain to what the Government knew about the actual prices for the drugs in the complaint in this case or Abbott's marketing of the spread for any of its drugs. Based on prior Orders by Judge Saris addressing the Government's assertion of the deliberative process privilege, these are the only two issues that are relevant at this point in the case. Rather, the questions cited in Abbott's motion pertain to broader policy issues that are not specific to the drugs in the complaint or Abbott's marketing practices. Both the Magistrate Judge and Judge Saris have consistently rejected Abbott's attempts to obtain deliberative material relating generally to CMS's policy-making. Because the deposition questions covered by Abbott's motion do not relate to Abbott's drugs or its marketing of the spread, none of them fall within the narrow categories that Judge Saris has indicated may be relevant at this point in the case.

Moreover, the objections and instructions by the United States at deposition were well-founded and narrowly-tailored. Government counsel have **not** instructed witnesses to refrain from responding to any questions with non-privileged information. To the contrary, the Government's instructions to witnesses at deposition have been directed just at pre-decisional deliberative information. Deponents have been permitted to testify about the ultimate rationales for final policies adopted by CMS and the implementation of those policies.

At this juncture, Abbott has **filed eleven prior briefs** in its attempt to overturn the Government's assertion of the deliberative process privilege in this case.  All of Abbott's motions have failed.  Inexplicably, Abbott does not even acknowledge anywhere in its latest brief that the specific relief it seeks has been covered by prior motions before the Magistrate Judge and prior Objections to Judge Saris *on the very deposition questions which are the subject of the present motion*.  Prior rulings by the Magistrate Judge and Judge Saris in response to Abbott's extensive briefing on this subject are dispositive of this latest bite by Abbott (its twelfth) at the deliberative process apple.  Accordingly, the procedural history relating to the parties' litigation over the deliberative process privilege is pertinent to the present motion and will be summarized below.

### I. <u>Background – Abbott's Prior Briefs on the Deliberative Process Privilege</u>

Prior to the United States intervening in this *qui tam* action, the Government had produced material in this MDL in response to two separate subpoenas *duces tecum*.  In responding to those subpoenas, the Government had also logged documents withheld from production under the deliberative process privilege.  The entire production in response to the MDL subpoenas was produced to Abbott at the outset of the *qui tam* litigation.

1. <u>Docket Number 3512</u>

Within weeks of discovery commencing in the intervened action, Abbott filed a motion asking the Court to overrule the Government's privilege objections in this case.  *See* Dkt. 3512. Abbott's initial motion was expressly directed at two areas.  One was the Government's assertion of the privilege in responding to written discovery requests, including the material withheld from the MDL subpoena production.  Second, Abbott explicitly sought a ruling by the Court that would restrict the Government's invocation of the deliberative process privilege with respect to

3

the testimony of government employees.  *Id.* at 7.  Abbott's proposed order, if entered, would

have directed that "the United States shall not assert the deliberative process privilege as a basis .

. . to instruct a witness not to answer at any deposition."  *Id*.  (proposed order attached to brief).

2.  Docket Numbers 3959/3960

After Abbott filed its initial motion to compel privileged material, the Government

further reviewed its privilege logs and CMS decided to release some previously withheld

documents .  The Government, consequently, issued a revised privilege log.  With respect to oral

discovery, Abbott began taking depositions of government witnesses in January 2007.

In March 2007, Abbott renewed its motion to compel documents which the Government

was continuing to withhold from production based on the deliberative process privilege.  *See*

Dkt. 3959 and 3960.  Abbott's renewed motion sought "a ruling from this Court that the

Government can no longer shield evidence responsive to Abbott's discovery efforts in this cause

under that qualified privilege."  Dkt. 3960 at 1.

3.  Docket Number 4474

On July 17, 2007, Abbott filed an additional brief in support of its renewed motion to

compel which was particularly directed at the Government's assertion of deliberative process

privilege during the deposition of Government employees.  *See* Dkt. 4474.  Abbott cited to

examples where the Government had interposed instructions to witnesses to refrain from

divulging privileged information at the depositions of five current and former agency officials.

*Id*. at 8-10.  (The testimony of each of those individuals is now the subject of Abbott's current

motion.)

The Court's August 13, 2007 Order

On August 13, 2007, the Magistrate Judge issued an order that upheld the Government's privilege objections, but which required the United States to produce approximately 60 Abbott-specific documents from its privilege log.

4.   Docket Number 4698

Abbott objected to the decision by the Magistrate Judge on September 10, 2007. *See* Dkt. 4698. Abbott's Objections were explicit concerning the purported error by the Court. Objection One stated that "Judge Bowler erred by . . . not overruling the Government's instructions [to deponents] not to answer." *Id.* at 3. Abbott asserted that its July 17, 2007 brief [Dkt. 4474] "provided examples of deposition questions that the Government had instructed witnesses not to answer on the basis of deliberative process." *Id.* at 8. According to Abbott, "the Government has continued to instruct witnesses not to answer key questions that obviously go to the heart of this case." *Id.* at 8. As relief, Abbott asked that the Court order "that the Government cannot instruct witnesses not to answer deposition questions solely on the basis of the deliberative process privilege. *Id.* at 4.

5.   Docket Number 4722

On September 17, 2007, Abbott filed a response to the Objections by the United States to the August 13 Order (in which the Government argued, principally, for *in camera* review of privileged documents rather than production directly to Abbott). *See* Dkt. 4722. Again, Abbott took up the issue of the Government's assertion of the deliberative process privilege during depositions, describing the Government's "persist[ence] in refusing to allow witnesses to answer important, relevant questions. . ." *Id*. at 10. Abbott appended deposition excerpts to its brief in support of this argument.

6.  Abbott's Oct. 1, 2007 Brief (filed under seal)

Abbott submitted a final brief to Judge Saris regarding its Objections to the Order of the Magistrate Judge on October 1, 2007.  *See* Abbott's Supplemental Submission in Support of Its Objections to Magistrate Bowler's Aug. 13, 2007 Order (Under Seal).  That brief took issue with the Government's instructions to CMS employee Larry Reed to refrain from divulging privileged information when responding to questions from Abbott's counsel.  *See id.* at 5.  (Mr. Reed's testimony is also the subject of Abbott's current motion to compel.)

November 9, 2007 Ruling by Judge Saris

In sum, Abbott assailed the Government's deposition instructions in three separate briefs submitted to Judge Saris in support of its objections to the August 13, 2007 decision by the Magistrate Judge.  (Dkts. 4698, 4722, and sealed brief.)  Judge Saris ruled on Abbott's Objections to the Magistrate Judge's Order on November 9, 2007.  *See* Dkt. 4885.  The Court's Order slightly modified that of the Magistrate Judge by requiring a narrow class of documents to be submitted to Judge Bowler for *in camera* review.  The Order required the United States to submit to the Magistrate "documents which relate to its knowledge of a 'spread' for Abbott's drugs at issue in this litigation or its knowledge of Abbott's 'marketing the spread' for any of its drugs."  The Order concluded with the statement that the "objections to the magistrate judge's order are otherwise **DENIED**."  *Id.*

7.  Docket Number 4791

While the parties were exchanging briefs relating to the Magistrate's August 2007 Order, Abbott was still attempting to get access to privileged material on other fronts.  On October 11, 2007, Abbott moved to compel the United States to produce material from CMS's Office of Legislation and its Rulemaking Support Files.  *See* Dkt. 44791.  Abbott particularly took issue

with the Government's objection to producing this material based on the deliberative process privilege. *Id.* at 13-14. As in its previous briefs, Abbott argued that the Government's privilege objections should be overruled given Abbott's purported need for the material at issue. *Id.* at 13-16.

8. Docket Number 4890

On November 19, 2007, Abbott filed a reply brief in support of its October 11 motion to compel production of the legislative and regulatory material. *See* Dkt. 4885. Yet again, Abbott assailed the Government's invocation of the deliberative process privilege to shield material from production. *Id*. at 7-8. The only significant change by Abbott to the arguments in its prior briefs was Abbott's explicitness that it wanted to obtain access to privileged material as part of its quest to re-litigate the issue foreclosed by Judge Saris's seminal November 2, 2006 decision regarding the legal definition of the term "AWP." *Id*. at 3-4.

9. Docket Number 4892

Abbott filed its motion to compel the production of Ira Burney documents on November 20, 2007. *See* Dkt. 4892. True to form, Abbott once again attacked the Government for objecting to the production of documents on the basis of the deliberative process privilege. *Id* at 4-7.

10. Docket number 4901

On November 21, 2007, the Government received Abbott's motion "to compel the submission of cross-cutting evidence." *See* Dkt. 48901. The motion focused entirely on the Government's assertion of the deliberative process privilege. The Magistrate Judge heard argument on the three preceding motions on January 31, 2008.

7

<u>February 1, 2008 Order by the Magistrate Judge</u>

On February 1, 2008, the Magistrate Judge denied the above motions by Abbott for access to privileged material (Dkts. 4890, 4892, and 4901).

11. <u>Docket Number 5049</u>

On February 15, 2008, Abbott filed its Objections to the Magistrate Judge's Order of February 1, 2008.  *See* Dkt. 5049.  Accordingly, yet again, the merits of the Government's deliberative process privilege objections were before Judge Saris.

<u>March 14, 2008 Order by Judge Saris</u>

On March 14, 2008, Judge Saris ruled on Abbott's objections to the Magistrate Judge's Order of February 1, 2008.  Much as the Court had done in November of last year, the Court held that:

> The government shall review all its files (including the Office of Legislation and Rulemaking Support Files) for documents relating to Abbott's marketing the spread or the the drugs at issue in this litigation.  If there is a claim of privilege, the document shall be reviewed by the Magistrate Judge.  Otherwise, the objections are denied.

## II.  **Argument**

Notwithstanding the eleven briefs which have been considered by the Magistrate and District Judges, as well as the two oral arguments before the Magistrate, the Government's assertion of the deliberative process privilege has been upheld in the face of direct attempts to obtain documents and testimony by Abbott.  Abbott's latest motion should, like all of its previous attempts, fail based on the procedural history noted above and its lack of merit.  The November 2007 and March 2008 Orders by Judge Saris, both of which responded to motions to compel privileged material, were very clear with respect to the categories of information which may be relevant and discoverable in this case: 1) information which relates those of defendants'

drugs which are at issue in the lawsuit brought by the United States, and 2) defendants'
marketing of the spread for their drugs.  None of the deposition questions covered by Abbott's
motion relates to either of these categories.

**A.     The Court Has Already Denied the Relief Sought by Abbott**

In briefing earlier motions, Abbott has already argued that the Court should overrule the
Government's deliberative process privilege assertions with respect to both instructions stated by
government counsel at deposition and the particular topics to which Abbott's latest motion
pertains.

1.     The Court has Already Declined to Overrule Deposition Objections

Six of Abbott's prior eleven briefs directly challenged the Government's instructions to
witnesses at deposition.  On July 17, 2007, Abbott filed a brief directly challenging the
instructions given to five of the witnesses to whom Abbott's current motion applies – Bruce
Vladeck, Charles Booth, Robert Vito, David Tawes, and Linda Ragone.  *See* Dkt 4474 a8-10.
Abbott's supplemental October 1, 2007 brief challenged the Government's objections at the
deposition of a sixth witness, Larry Reed.  By that date, eight of the nine witnesses covered by
Abbott's latest motion had already been deposed for at least a day each, several of them had
completed multiple days of testimony (Amy Bassano, who was formerly employed by the Office
of Legislation, was deposed on November 11, 2007).  Furthermore, throughout the history of this
case, Abbott has consistently requested the Court to order that "the Government cannot instruct
witnesses not to answer deposition questions solely on the basis of the deliberative process
privilege. *See, e.g.,*  Dkt.4698 (Obj. to Aug. 13, 2007 Order).  Abbott has never limited its

requested relief to a particular deponent or group of deponents. This request was squarely before

Judge Saris when she denied Abbott's objections to the Magistrate Judge's Order of August 13.

Moreover, most of the transcript excerpts appended to Abbott's new brief have already

been specifically covered by prior briefs.  For example, in July 2007 Abbott moved to compel

additional testimony from DHHS-OIG official Robert Vito concerning:

> Discussions with CMS on what a reasonable profit margin should be for Medicare
> Part B drug suppliers (Vito Dep. at 346-47)

Dkt. 4474 at 9.   Abbott's current motion covers precisely the same section of the Vito transcript.

*See* Dkt. 5112, Ex. 1 (testimony excerpt designated "Vito 1 (346:14-347:15)").   The record is

replete with additional examples of this kind of overlap between the motions.  *Compare* Dkt.

4474 at 8-10 *with* Dkt. 5112, Ex. 1.

The Court should deny Abbott's latest attempt to re-litigate issues which have already

been decided in this case.  When Judge Saris denied Abbott's Objection to the Order by the

Magistrate Judge, the denial was unqualified.  The Court did NOT state, as is often done in the

context of discovery disputes, that Abbott's Objection was denied without prejudice such that it

could be re-filed at a later time.  Incredibly, nowhere in its motion does Abbott advise the Court

that it is essentially seeking reconsideration of a motion that has already been ruled upon by both

the Magistrate Judge and Judge Saris.  In any event, even if Abbott had been candid with the

Court in that regard, there has been no development in this case, the broader MDL, or in the

pertinent jurisprudence which would make reconsideration of the prior rulings appropriate now.

2.      The Court has Already Declined to Overrule Deliberative Process
        Objections Regarding Topics Covered by the Instant Motion

In addition to hearing Abbott's challenges to the Government's deposition instructions, the Court has also previously heard and rejected Abbott's arguments that the deliberative process objections should be overruled with respect to the particular topics covered by Abbott's instant motion. Significantly, the deposition questions referenced in Abbott's brief do **not** pertain to the two topics that Judge Saris has indicated may be relevant at this point in the case -- which are, the Government's knowledge of the "spread" for the drugs at issue in this litigation and Abbott's marketing of the spread for any of its drugs.

The following examples make clear that Abbott is not seeking new relief via the instant motion, or even arguing new grounds for the relief, but rather has simply retooled arguments pertaining to topics as to which the Court has already declined to order any relief. Abbott's March 2007 deliberative process brief complained that through its assertion of privilege, "the Government has withheld documents relating to the 'entrance' and 'exit' conferences between OIG and HCFA relating to key OIG reports." *See* Dkt. 3960 at 7. The Government opposed Abbott's attempt to obtain this material and cited case law directly upholding privilege assertions for precisely the type of material as to which Abbott had moved to compel. *See* Dkt. 4076 at 16-17. Abbott's attempts to compel the production of this material were rejected by the Magistrate Judge on August 13, 2007 – a decision that was affirmed by Judge Saris on November 9, 2007.

Abbott's instant motion takes up this category of information yet again. *See* Dkt. 5115 at 3. The motion specifically requests that the Court overrule the Government's instructions to HHS-OIG official Robert Vito to refrain from describing the deliberations that occurred during entrance and exit conferences between OIG and CMS. *See id* at 3-5.

11

The rulings by both the Magistrate and District Judges in the context of motions to compel documents are dispositive of Abbott's current attempt to compel testimony on precisely the same topic. *See Federal Trade Comm'n v. U.S. Grant Res., LLC,* 2004 WL 1444951 at *9 (E.D. La. 2004)(deliberative process privilege applies in context of depositions to prevent a party from "obtaining through the back door" what it is "not entitled to acquire through the front"). *See also,* discussion and cases in the Memorandum by the United State in Support of its Motion to Quash the Subpoenas of Ira Burney and Debbie Chang and in Support of a Protective Order (Dkt 5129) at 5-7.

Furthermore, Abbott's argument regarding its purported need for the evidence covered by its current motion has already been heard by the Court.  In the instant motion, Abbott asserts, as its primary reason, that it needs to find out "why .... CMS [chose] to permit the Medicare and Medicaid programs to continue paying on AWP when officials knew that there was a 'spread' between AWP and Acquisition costs?"  Dkt. 5115 at 2.  Putting aside, for the moment, the issue of whether Abbott has actually been denied information on this issue (as will be shown in the next section of this brief, no such thing has, in fact, occurred), Abbott has repeatedly argued this point throughout its deliberative process briefs to date.  *See e.g.* Dkt. 4474 at 10 (arguing Abbott needed discovery on the issue of "*Why* didn't the Government change the way Medicare and Medicaid reimbursed drugs when CMS *knew* the published prices bore little resemblance to the decreasing market prices for those drugs")(emphasis in original); Dkt. 4698 at 13 (arguing privilege objections would prevent testimony regarding "the real reasons the Government continued to use published prices, knowing full well that they far exceeded actual acquisition costs"); Dkt. 4791 at 2 (arguing sought-after discovery would show "why Medicare and Medicaid continued to use AWP even though CMS knew the benchmark price exceeded providers'

acquisition costs for prescription drugs"); Dkt. 4890 at 1-4 (arguing for discovery as to "why the Government acquiesced in or chose to continue using a payment system based upon published AWP"); Dkt. 5049 at 5 (argument for documents showing "*why* CMS used an AWP-based system [and] the pros and cons of alternative methodologies that were considered and rejected")(emphasis in original).

Both the magistrate and district judges have found, without exception, that Abbott's argument does not present sufficient grounds for overruling the privilege objection.  The February 1, 2008 decision of the Magistrate Judge explicitly rejected this argument in connection with Abbott's motion to compel the legislative and regulatory material from CMS, which was predicated on the same purported need for privileged information as Abbott's current motion. *See* Dkt. 4791 at 2.  In denying Abbott's motion, the Magistrate Judge held that the burden of production outweighed the benefit of the information.

Abbott's arguments on this point are no more compelling when stated for a twelfth time and should be rejected yet again.

**B.    The Government's Objections and Narrowly Tailored Instructions Have Not Deprived Abbott of Any *Relevant* Evidence**

      1.    The Testimony sought by Abbott is Irrelevant

As noted above, Abbott has been attempting to compel discovery on the issue of "*why* the Government did not do anything about its payment methodology in light of [its] knowledge of [the existence of AWP spreads]" since the start of discovery.  *See, e.g.,* citations to Abbott briefs in prior section.  Abbott's arguments on this point were before Judge Saris for a second time by virtue of Abbott's Objections to the Magistrate Judge's Order of February 1, 2008.  *See* Dkt. 5049.  As explained more fully in the Government's brief in response to Abbott's Objections,

defendant's purported need for the material in question rests on several flawed premises.  First, Abbott's assertion that the Government did nothing in response to abusive AWP reporting practices is obviously incorrect in light of the statutory changes effected by the Medicare Modernization Act of 2003, as well as the other efforts undertaken by CMS prior to the passage of the MMA to respond to the problem of AWP inflation.  *See In Re Average Wholesale Price Litig.,* 491 F. Supp. 2d 20, 41-44 (D. Mass. 2007).  Second, the Government's continued reliance on an AWP-based payment system that turned out to be susceptible to costly abuse cannot insulate Abbott from liability for its role in abusing the system.  *Id.* at 94.  Moreover, the Government has also demonstrated why the issue which Abbott has so relentlessly pursued is irrelevant in light of decisions by Judge Saris in the MDL (*see In Re Average Wholesale Price Litig.,* 460 F. Supp. 2d 277,  278 (D. Mass. 2006) (construing AWP as a matter of law)) and based on First Circuit precedent which is directly on point (*United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004)(holding regulatory interpretation is resolved by reference to official public record)).  Abbott faired no better with its second set of objections to Judge Saris than it did with the earlier set given that the second set were, for the most part, denied on March 14, 2008.

For the Government's most recent response to Abbott's arguments on this issue, the United States respectfully directs the Court to its memorandum in Response to Abbott's Objections to Magistrate Judge Bowler's Feb. 1, 2008 Orders.  *See* Dkt. 5103 at 8-14.

2.    Abbott Has Not Been Prevented from Obtaining Testimony from Current and Former DHHS Officials

Contrary to Abbott's assertions, the United States has not "muzzled" any witness. Rather, Government attorneys have been careful to instruct witnesses to refrain only from describing the content of deliberative communications.  Government counsel have not instructed

14

witnesses to refrain from responding to any Abbott question with non-privileged information, and, in fact, current and former CMS officials have testified at length on the topics referenced in Abbott's motion to compel.  Even the deposition excerpts attached to Abbott's briefs demonstrate this fact.  *See* Exhibit One to Dkt. 5115.  The following exchange between counsel during the deposition of CMS (formerly HCFA) official Larry Reed on the topic of HCFA's review of Medicaid State Plan Amendments is illustrative.  As reflected below, the Government's instructions to witnesses at deposition have been directed just at *pre-decisional deliberative* information, **not** the ultimate rationales (i.e. the reasons "why") for policy decisions:

> BY MR. TORBORG [counsel for Abbott] Q.  I want to revisit some testimony we had during the last session. You indicated there were some discussions within HCFA about the differences –  the greater difference in AWP acquisition cost for generic drugs versus branded drugs, correct?
>
> MS. MARTINEZ [counsel for the Witness]:  Objection to form.
>
> THE WITNESS:  That there was HCFA discussion of that?  Yes.
>
> BY MR. TORBORG: Q.  And I asked you about those discussions, counsel asserted the deliberative process privilege.  I then asked you what policy or decision that those discussions related to, and your answer was the decision would be how to look at this in reviewing the state plans, and I asked whether or not to approve or disapprove the plans, and you answered that could be part of the decision.  My follow-up question for you, Mr. Reed, was ***what was HCFA's decision or policy? What was the final decision or policy that HCFA reached?***
>
> MS. MARTINEZ:  Objection to form.
>
> THE WITNESS:  The decision that -- and I'm not sure, HCFA may too broad of a term here, all of HCFA, but the decision was whether or not to revise regulations for looking at these types of ingredient costs or whether to issue policy instructions for that, and we didn't do -- we did not do either.
>
> BY MR. TORBORG: Q.   So the decision was not to revise the ingredient cost regulations for -- what was the second?
>
> A.  A policy guidance document.

Q.  *And what was the rationale for that decision?*

MR. DRAYCOTT [counsel for the United States]:  *You can answer*, but only  limit it to the decision itself.  You should not answer to the -- with respect to -- to the extent the answer would reveal the deliberations that resulted in that final decision.

MR. TORBORG:  I just want to argue with counsel a little bit here before you answer, and that is, *the deliberative process privilege does not apply to prevent us from understanding the rationale for the decision*.  *We, I think, all agree on that*, and if we don't agree, we can go get some case law, and I think we'll come to a quick agreement.  *So I am allowed to know what the rationale for the decision was.*

MR. DRAYCOTT:  *And he was so instructed just now*.

MR. TORBORG:  *Okay.*

MR. DRAYCOTT:  *You may state the rationale*, but you have to be careful in just stating the rationale that resulted from the deliberations, not the deliberations themselves.

THE WITNESS:  Okay.  The rationale basically is that there's a structure between CMS and the state Medicaid programs on how they operate their program and to what extent we intercede in -- in directly making them make changes to the program versus overseeing their program through the state plan process.

BY MR. TORBORG:
Q.  And what about that structure led to your decision not to revise regulations or issue any other policy guidance?

A.  That there is a structure -- there is a structure in place, again, of how we relate to state Medicaid agencies.  There are parts of the prescription drug program where we direct the states how to pay for drugs, or a maximum in aggregate to pay for drugs.  There are other parts where the states make their determination of prescription drug payment policies -- of prescription drug payment methodologies.

Q.  Any other further rationale you can provide?

A.  No, not at this point.

Dkt. 5115, Ex. 1, at 5-6.

With regard to the question that Abbott contends is "dispositive" in this case – why CMS continued to pay based on AWP "when officials knew there was a 'spread' between AWP and acquisition costs" – there has been abundant testimony on this issue.  (Moreover, it is an issue

that has already been addressed by Judge Saris at considerable length.  *See In Re Average*

*Wholesale Price Litig.,* 491 F. Supp. 2d at 40-46, 91.)  Certainly, the Government has not, by

objection or instruction, prevented Abbott from getting additional information on this topic.  As

demonstrated by the following exchange between Abbott's counsel and Thomas Gustafson

(former Deputy Director, Center for Medicare Management, CMS), the reason why CMS used

the AWPs from compendia was due to a lack of other, readily available, sources for this data:

> MR. GUSTAFSON: As a matter of practice, the agency chose to rely on the Red Book [a
> compendium of drug prices] as a proxy for the concept under discussion [actual
> wholesale price].
> BY MR. COOK [counsel for Abbott] Q.  Is the reliance reasonable?
>
> A.  Excuse me?
>
> Q.  Was that reliance reasonable?
>
> MR. MAO [counsel for the United States]: Objection, Form.
>
> THE WITNESS: We believed so at the time.
>
> BY MR. COOK: Q.  You believed it was reasonable to rely upon published average
> wholesale prices in Red Book as an accurate reflection of the average price that customers
> were paying for pharmaceutical products is that correct?
>
> MR. MAO: Objection to form.
>
> THE WITNESS: As a reasonably accurate representation.  ***Had there been a readily
> available inexpensive more accurate data source I believe we would have used one as
> we began to do in 2000.  We did not find any such source so we continued to rely on
> that which was readily available to us.***

*See* Transcript attached hereto, at 373-74.

Abbott's motion proceeds from the fiction that Abbott has been denied access to evidence

by the Government's deliberative process objections.   Abbott's motion to compel provides

selected excerpts from nine deponents.  What is not before the Court are the thousands of pages

of transcript reflecting the testimony of dozens of current and former CMS officials, many of whom have been deposed for multiple days.  For example, Robert Vito – whose testimony is a principal object of Abbott's motion – was deposed for four days.  Neither space nor time permits a full exegesis on the extent to which Abbott has obtained testimony on topics covered by its excerpts.  Nor should one be required, given that Abbott's current motion is a blatant attempt to re-litigate issues that are foreclosed by prior rulings by the Court.[1]

### III.  Conclusion

For the foregoing reasons, Abbott's Motion to Compel Testimony of Government Witnesses (Dkt. 5112), should be denied.

---

[1]  Abbott's motion covers nine witnesses and fifty-one incidents when the deliberative process privilege came up.  Given the Court's prior privilege rulings, the United States does not believe it should address each excerpt appended to Abbott's motion.  The exchange between counsel at the deposition of Larry Reed illustrates the fundamental defect in Abbott's motion as it relates to the other deposition excerpts.  In the event the Court wishes the Government to address each excerpt from Abbott separately, the United States requests permission to file a supplemental brief, as well as for leave to exceed the page limit in the Local Rules.

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

 /s/ George B. Henderson, II
George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
(617) 748-3272


R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101

Dated: March 17, 2008

JEFFREY BUCHOLTZ
ACTING ASSISTANT ATTORNEY
GENERAL

 /s/Justin Draycott
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Gejaa T. Gobena
Rebecca A. Ford
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused an electronic copy of the above MEMORANDUM BY THE UNITED STATES IN RESPONSE TO DEFENDANT ABBOTT LABORATORIES INC.'S OBJECTIONS TO MAGISTRATE JUDGE BOWLER'S FEB. 1, 2008 ORDERS to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

      /s/     

Dated: March 17, 2008                    Justin Draycott