# EXHIBIT

200

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -x

| | |
|---|---|
| IN RE: PHARMACEUTICAL | : MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | : CIVIL ACTION |
| PRICE LITIGATION | : 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | : |
| U.S. ex rel. Ven-a-Care of | : Judge Patti B. Saris |
| the Florida Keys, Inc. | : |
| v. | : |
| Abbott Laboratories, Inc., | : Chief Magistrate |
| No. 06-CV-11337-PBS | : Judge Marianne B. |

- - - - - - - - - - - - - - -x   Bowler

(CROSS NOTICED CAPTIONS ON FOLLOWING PAGES)

Videotaped deposition of DR. THOMAS A. GUSTAFSON

Volume II

Washington, D.C.

Monday, December 17, 2007

9:19 a.m.

1  unnecessarily.

2        BY MR. COOK:

3    Q.   But at a bare minimum, there is some
4  ambiguity about what the statute means, correct?

5    A.   **Oh, to be absolutely sure.  The --**

6        MR. AZORSKY:  Objection.  Form.

7        THE WITNESS:  Let me put it differently.
8  The statute, I think, contains clear English words
9  that to me are reasonably clear conceptually.
10 Exactly what you do in order to interpret and
11 implement that statute, I think, has many
12 possibilities.  So to that extent, it is open to
13 interpretation.  And the agency chose a particular
14 interpretation of how to proceed.

15       BY MR. COOK:

16   Q.   Is it fair to say that paragraph 42 does
17 not accurately describe how the agency chose to
18 interpret the statute in formulating how it proceeded
19 after passage of BBA 1997?

20       MR. MAO:  Objection.  Form.

21       MR. AZORSKY:  Objection.  Form.

22       THE WITNESS:  I don't think you can say

1   that.  I think that the -- what I've already said is

2   that the agency chose a particular practice in

3   implementing the statute.  I think the words that

4   we've been quoting from paragraph 42, or whatever it

5   is, are a reasonable capturing of that concept.  And

6   it was the agency's practice to implement that

7   through the Red Book.

8              BY MR. COOK:

9        Q.    Is it fair to say that the agency's

10  interpretation of BBA 1997 is broader than the

11  description contained in paragraph 42?

12             MR. MAO:  Objection.  Form.

13             THE WITNESS:  I don't know if we can say

14  that.  You're talking about the general concept that

15  AWP refers to a price at which a pharmaceutical firm

16  or wholesaler sells a drug to its customers.  Is that

17  the language?

18             BY MR. COOK:

19       Q.    Yes, sir.  It's Exhibit 199, paragraph 42.

20       A.    **Okay.  Let me find this.  AWP is used to**

21  **refer to the price at which a pharmaceutical firm or**

22  **a wholesaler sells a drug to a retail customer who**

1    then administers it to a patient.  That's the
2    language you're referring to?
3         Q.    Correct.
4         A.    And your question is, could we -- do we
5    have a broader, did CMS have a broader understanding
6    of it than that?
7         Q.    Yes.
8              MR. AZORSKY:  Objection.  Form.
9              THE WITNESS:  I don't think so.
10             BY MR. COOK:
11        Q.    I mean, if paragraph 42 accurately
12   described what the statutory command of Congress was
13   in the Balanced Budget Act of 1997, you would agree
14   with me that the published prices in Red Book would
15   have exceeded the amount that pharmaceutical firms
16   and wholesalers were selling drugs to retail
17   customers who then administered it to patients?
18             MR. MAO:  Objection.  Form.
19             MR. AZORSKY:  Objection.  Form.
20             THE WITNESS:  I mean, implementation is
21   not always perfect.
22             BY MR. COOK:

1      Q.   Can you point to me anyplace other than
2 paragraph 42 of the complaint at which the agency
3 expressed this as its interpretation of the Balanced
4 Budget Act of 1997?
5      A.   I don't know that I can.
6      Q.   But regardless of the conceptual meaning
7 of AWP, you would agree with me that as a matter of
8 practice, the agency did not pay 95 percent of the
9 average price at which wholesalers sold drugs to
10 their customers?
11           MR. MAO:  Objection.  Form.
12           THE WITNESS:  I would -- the -- I mean,
13 no.  As a matter of practice, the agency chose to
14 rely on the Red Book as a proxy for the concept under
15 discussion.
16           BY MR. COOK:
17      Q.   Was that reliance reasonable?
18      A.   Excuse me?
19      Q.   Was that reliance reasonable?
20           MR. MAO:  Objection.  Form.
21           MR. AZORSKY:  Objection.  Form.
22           THE WITNESS:  We believed so at the time.

 1              BY MR. COOK:
 2         Q.   You believed at the time it was reasonable
 3   to rely upon published average wholesale prices in
 4   Red Book as an accurate reflection of the average
 5   price that customers were paying for pharmaceutical
 6   products, is that correct?
 7              MR. MAO:  Objection to form.
 8              MR. AZORSKY:  Objection to form.
 9              THE WITNESS:  As a reasonably accurate
10   representation.  Had there been a readily available,
11   inexpensive, more accurate data source, I believe we
12   would have used one as we began to do in 2000.  We
13   did not find any such source, so we continued to rely
14   on that which was readily available to us.
15              BY MR. COOK:
16         Q.   But you ultimately did not use the
17   alternative source available to you in 2000, correct?
18              MR. AZORSKY:  Objection to form.
19              THE WITNESS:  You know the answer to that.
20   Of course we didn't.
21              BY MR. COOK:
22         Q.   In November of 2000, when the program

1   memorandum was withdrawn, did you still believe

2   published average wholesale prices for those drugs

3   contained in that program memoranda to be a reliable

4   and accurate reflection of what average wholesale

5   prices were for customers?

6           MR. MAO:  Objection to form.

7           MR. AZORSKY:  Objection to form.

8           THE WITNESS:  Among the available options,

9   we believed it to be a reasonably accurate product on

10  which to rely.

11          BY MR. COOK:

12      Q.  Are you aware of what the difference was

13  between the published average wholesale prices for

14  the products contained in the 2000 program memoranda

15  were as compared to the revised average wholesale

16  prices that you had obtained from the Department of

17  Justice were?

18      **A.  I don't recall in any detail.**

19      Q.  Would you be surprised to learn that some

20  of them varied by a factor of 10?

21          MR. MAO:  Objection.  Form.

22          THE WITNESS:  No.  I wouldn't.  I mean,