**Exhibit A**



Dec 21 2007
3:16PM

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>  *The City of New York, et. al.*<br>v.<br>  *Abbott Laboratories, Inc., et al.* | ) ) ) Judge Patti B. Saris ) ) ) ) ) ) |

### CHAUTAUQUA COUNTY'S OBJECTIONS AND RESPONSES TO THE BRISTOL-MYERS SQUIBB DEFENDANTS' FIRST SET OF INTERROGATORIES TO NEW YORK COUNTIES

Pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court of Massachusetts and the relevant case management orders, Plaintiff, Chautauqua County responds as follows to Bristol-Myers Squibb ("BMS") Defendants' First Set of Interrogatories to the New York Counties.

### GENERAL OBJECTIONS

1.     Plaintiff objects to the "definitions" and "instructions" to the extent they are vague, confusing and ambiguous.

2.     Plaintiff objects to the "definitions" and "instructions" to the extent they seek to create obligations broader than what is required by the Federal Rules of Civil Procedure, the Local Rules of the Transferor Court(s) and/or the local rules of this Court.

3.     Plaintiff objects to the interrogatories to the extent they seek information subject to the attorney-client privilege, the work product doctrine, or any other applicable

evidentiary or other privilege, immunity or restriction. Plaintiff's production of any document or response is without waiver of any privilege, claim of confidentiality or other objection.

4. Plaintiff objects to the interrogatories to the extent they seek documents and information that defendants already have obtained or could obtain from third-parties on the grounds that production would be unduly burdensome, duplicative and expensive.

5. Plaintiff reserves all objections or other positions it may have to the competency, relevance, materiality, privilege or admissibility of any documents produced in response to the requests for any purpose whatsoever.

6. Plaintiff objects to each interrogatory individually, and taken as a whole, to the extent that they are overly broad and unduly burdensome, and are designed to harass Plaintiff and/or to deter the assertion of claims by Plaintiff.

7. Plaintiff objects to each interrogatory to the extent that it seeks facts known to Plaintiff's counsel rather than Plaintiff. Such facts obtained by counsel through their investigation constitute privileged attorney work-product.

8. Plaintiff objects to each interrogatory to the extent that it calls for production of information readily available to defendants from public or other sources that are more convenient, less burdensome or less expensive than recourse to Plaintiff.

9. In providing responses to each interrogatory, Plaintiff does not in any way waive or intend to waive, but rather intends to preserve and is preserving:

(a) All objections as to the competency, relevancy, materiality and admissibility of each interrogatory, the responses and their subject matter;

(b) All objections as to the vagueness, ambiguity or other infirmity in each interrogatory and any objections based on the undue burden imposed by the interrogatory;

(c) All rights to object on any ground to the use of any of the responses, or their subject matter, in any subsequent proceedings, including the trial of this or any other action;

(d) All rights to object on any ground to any further interrogatory or other discovery requests involving or related to the subject matter of the interrogatory;

(e) The right to supplement responses to the interrogatories prior to trial;

(f) Any and all privileges and/or rights under the applicable Federal Rules of Civil Procedure, the Local Rules of the United States District Court of Massachusetts, the Local Rules of the Transferor Court(s) and other statutes or the common law;

(g) Plaintiff's responses are based upon, and therefore limited by, Plaintiff's present recollections. Consequently, Plaintiff reserves the right to make any changes in these responses if it appears that at any time, inadvertent errors or omissions have been made or additional information becomes available.

10. All of Plaintiff's general objections are incorporated into each of the specific responses set forth below.

## RESPONSES TO
## INTERROGATORIES

1.  **Identify each of your employees who communicates with the Department of Health concerning Medicaid reimbursement for prescription drugs.**

Plaintiff incorporates its general objections herein. Plaintiff further objects to Interrogatory No. 1 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to communications "concerning Medicaid reimbursement for" the "subject drugs," that are subject to discovery pursuant to Paragraphs 5 and 7 of Case Management Order No. 33 dated September 14, 2007. Subject to and without waiver of the foregoing, Chautauqua County does not have any employees who communicate with the Department of Health concerning Medicaid reimbursement for prescription drugs.

2.  **Identify the persons in your "fraud and overpayments" units as alleged in Paragraph 137 of the Revised FACC. If any such persons has [sic] any responsibilities relating to prescription drugs, explain those responsibilities and state for how long that person has been employed by you. For former employees, provide the dates of their employment and their last known address and telephone number.**

Plaintiff incorporates its general objections herein. Plaintiff further objects to Interrogatory No. 2 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to "responsibilities relating to" the "subject drugs" that are subject to discovery pursuant to Paragraphs 5 and 7 of Case Management Order No. 33 dated September 14, 2007. Subject to and without waiver of the foregoing, the Chautauqua County Department of Social Services Fraud and Recovery Unit does not have any specific responsibilities related to prescription drugs. Ms. Sandra Cuco serves as the Senior

4

Examiner of the Unit. Plaintiff will meet and confer with defendants to discuss whether there is any other non-privileged information responsive to this request.

**3. Describe the processes by which (a) your share of the Medicaid drug expenditures under N.Y. Social Services Law § 368-a and (b) Medicaid rebates allocated to you are determined.**

Plaintiff incorporates its general objections herein. Plaintiff further objects to Interrogatory No. 3 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects on the grounds that the term "processes" is vague and ambiguous. Plaintiff objects because the Interrogatory seeks information beyond the custody and control of Chautauqua County. Subject to and without waiver of the foregoing, Chautauqua County does not control or determine its share of Medicaid drug expenditures nor does it control or determine Medicaid rebate allocation. Both are determined at the state level and pursuant to state law.

**4. Identify each of your employees who is responsible for or has oversight of the processes you describe in response to Interrogatory No. 3.**

Plaintiff incorporates its general objections herein. Plaintiff further objects to Interrogatory No. 4 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to any discoverable information. Plaintiff further objects on the grounds that the term "processes" is vague and ambiguous. Plaintiff objects because the Interrogatory seeks information beyond the custody and control of Chautauqua County. Subject to and without waiver of the foregoing, Chautauqua County does not have any employees responsible for oversight of Chautauqua County's share of Medicaid expenditures or the allocation of Medicaid rebates.

**5. For each NDC listed on Exhibit B describe the following:**

  (a) the weighting methodology used to calculate the "AAC";

  (b) the reason the particular "AAC Source" was chosen

  (c) the meaning of the "Start Date" and "End Date" and the reasons for their selection;

  (d) the source and period for the AWP and/or FUL (where applicable);

  (e) the source and period of the "expenditures" for each plaintiff;

  (f) all classes of trade included in the "relevant classes of trade" used to calculate the "AAC";

  (g) how the "reimbursement price" was calculated;

  (h) any other information necessary to calculate the "spread" indicated; and

  (i) the criteria you used to determine where or not the NDC is a "dual channel drug."

Plaintiff incorporates its general objections herein. Plaintiff further objects to Interrogatory No. 5 on the grounds that it is vague, ambiguous and confusing. Plaintiff objects further on the grounds that the Interrogatory is overly broad and unduly burdensome. Plaintiff specifically objects to subpart (f) because it is unnecessary and duplicative insofar as Plaintiff has already identified the "relevant classes of trade" used to calculate the AAC that appears in Plaintiffs' Revised Exhibit B to the FACC. *See* Declaration of Joanne M. Cicala sworn to July 11, 2007 ("Cicala Dec.") at ¶ 10. Subject to and without waiver of the foregoing:

  (a) The McKesson ServAll database contains prices offered to McKesson ServAll GPO members. Plaintiff employed no weighting methodology associated with these prices because they are not invoice transactions. The weighted averages for Cardinal Health and Amerisource Bergen were derived from databases comprised of invoice data from Cardinal and Amerisource Bergen wholesaler sales. Plaintiff queried the databases for

all transactions for each NDC during the operative AWP or FUL period for the relevant and previously identified classes of trade. Plaintiff then calculated a weighted average transaction price through a computerized coding query of the price and units for the transactions during the relevant time period at issue.

(b) Plaintiff chose the Source for the AAC based on the Source that provided the most supportive evidence of the fraud and manipulation of Medicaid reimbursement at issue in this lawsuit.

(c) The "Start Date" and "End Date" indicate time periods in which the applicable AWP and FUL were in effect;

(d) The First Data Bank National Drug Data File ("NDDF") provided the AWP and FUL that appear in Revised Exhibit B;

(e) The source of the "expenditures" is the New York Expenditure dataset. This dataset identified the NDCs paid for by Plaintiff's Medicaid Program and the total expenditures for each NDC in any given year;

(f) As previously disclosed in the Cicala Dec. at ¶ 10, the classes of trade used to calculate the AACs in Exhibit B were:

| **Cardinal Classes of Trade** | | **ABC Classes of Trade** | |
| --- | --- | --- | --- |
| 10 | Independent | B | Miscellaneous Chain |
| 20 | Chain Pharmacy | C | Chain Drug – Primary Supplier |
| 21 | Chain Supermarket | D | Independent Small Chain |
| 22 | Chain Mass Merchandiser | E | Mass Merchandise |
| 23 | Chain Mail Order | F | Food/Drug Combination Store |
| 24 | Chain Warehouse | G | Grocery Convenience Store |
| 41 | Managed Care Home Infusion | I | Independent Drug Store |
| 42 | Managed Care Nursing Home | J | Miscellaneous Food Chain |
| 44 | Managed Care Mail Order | K | Miscellaneous |
| 50 | Med/Surg. | L | Mail Order Retail Pharmacy |
| | | N | Nursing Home Supplier |
| | | Q | Miscellaneous Warehouse |
| | | R | High Volume Warehouse |
| | | S | Surgery Center |
| | | T | Home Health Care Provider |
| | | U | Other Non Acute Care |
| | | V | Physicians/Clinics |
| | | W | Oncology |
| | | Y | High Vol. Mail Order Warehouse |
| | | 1 | Retail Interco |
| | | 4 | Dialysis |
| | | 5 | Pharmabuy |
| | | 6 | Urology |
| | | 9 | Internet |

(g) The reimbursement price was derived from the First Data Bank ("FDB") NDDF.

(h) The spreads that resulted from the McKesson ServAll data AAC and the FDB reimbursement prices were calculated by a computerized coding query that compared the FDB reimbursement price with the McKesson ServAll AAC. The spreads that resulted from the Cardinal Health and Amerisource Bergen data were calculated by dividing the difference between the AAC and the reimbursement price by the AAC;

8

(i) To identify the dual channel drugs, Plaintiff's counsel ran its at-issue NDCs through the CMS HCPCS Cross Walk files in effect from January 1, 2006 through January 1, 2007. Where an at-issue NDC appeared in such cross walk files, plaintiff identified it as dual channel.

**6.    Identify all persons involved in calculating the listed "AAC" in Exhibit B to the FACC**

Plaintiff incorporates its general objections herein. Plaintiff further objects to Interrogatory No. 6 on the grounds that it improperly seeks information protected from disclosure by the attorney work-product doctrine, or any other applicable privilege, immunity, or protection against disclosure. Plaintiff further objects because the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

Dated: December 21, 2007

Respectfully submitted,

**City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

**KIRBY McINERNEY, LLP**
830 Third Avenue
New York, New York 10022
(212) 371-6600

/s/ Joanne M. Cicala
By:   Joanne M. Cicala (JC 5032)
      James P. Carroll Jr. (JPC 8348)
      Aaron D. Hovan (AH 3290)

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the 21st day of December, 2007 she caused a true and correct copy of the Chautauqua County's Objections and Responses to the Bristol-Myers Squibb Defendants' First Set of Interrogatories to be delivered to counsel of record for defendants by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456. The objections and responses were posted to Lexis Nexis File and Serve's Electronic Service System.

/s/ Joanne M. Cicala
Joanne M. Cicala, Esq.
Kirby McInerney LLP
830 Third Avenue, 10th Floor
New York, NY 10022
(212) 371-6600