**Exhibit B**

```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MASSACHUSETTS



     In re:                          )
     PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS
     AVERAGE WHOLESALE PRICE         ) MDL No. 1456
     LITIGATION                      ) Pages 1 - ^



                              MOTION HEARING
                  BEFORE THE HONORABLE PATTI B. SARIS
                       UNITED STATES DISTRICT JUDGE




                                    United States District Court
                                    1 Courthouse Way, Courtroom 19
                                    Boston, Massachusetts
                                    October 26, 2006








                             LEE A. MARZILLI
                       CERTIFIED REALTIME REPORTER
                       United States District Court
                       1 Courthouse Way, Room 3205
                            Boston, MA   02210
                             (617)345-6787
```

```
 1    that's --
 2              THE COURT:  About 50 cents?
 3              MR. GOBENA:  55 cents, 60 cents.
 4              THE COURT:  I just want to understand.  Now, that
 5    11 percent is by state statute or by federal statute?
 6              MR. GOBENA:  That's federal statute.
 7              THE COURT:  So in the generic context --
 8              MR. GOBENA:  Yes, that's the formula.  Then on the
 9    brand context, it's obviously a different formula.
10              THE COURT:  That's best price.
11              MR. GOBENA:  Right, exactly, exactly.
12              THE COURT:  All right.
13              MR. GOBENA:  Okay.  You know, I know we don't have
14    a lot of time here, and I think our briefs pretty in detail
15    lay out a lot of our positions, but I just want to emphasize
16    a few points here.
17              THE COURT:  Well, what do you with -- I mean, I am
18    a little troubled.  I'm likely to define AWP to mean the
19    plain language of what the statute says AWP means, and we can
20    have a debate about, you know, is it mean or median or that
21    sort of thing?
22              MR. GOBENA:  Right.
23              THE COURT:  But what about the point that at some
24    point the federal government did know and for a False Claims
25    Act they did know it was false?
```

```
 1              MR. GOBENA:  Well, it's interesting.  Let me take a
 2    step back.  As far as government knowledge goes, it's our
 3    position and we lay out in our brief that it only goes in the
 4    False Claims Act context to scienter.  It only goes to
 5    scienter.  It doesn't go to falsity, as much as the
 6    defendants would like it to go there.  And scienter is
 7    defendant-specific, so I think when you're dealing with --
 8              THE COURT:  It also goes to statute of limitations,
 9    right?
10              MR. GOBENA:  It could in certain circumstances.
11              THE COURT:  When you knew or should have known to
12    bring the suit.  I mean, this was brought so early.  I mean,
13    I don't know, should you have known -- what's a False Claims
14    Act, six?
15              MR. GOBENA:  Six or ten years.  It depends.
16    There's a tolling provision built in based on -- so, in any
17    event, as far as what we knew, the question that needs to be
18    asked ultimately is, what did we know about Abbott's conduct
19    and these drugs?
20              THE COURT:  Right.
21              MR. GOBENA:  And that information was known --
22    these reports that we see out here that the defendants love
23    to trot out there, if you look at all of them, only one
24    report that Abbott has attached actually mentions an Abbott
25    drug in this case.  So if you're talking about what the
```

1   government knowledge --

2           THE COURT:  In 2000, right?

3           MR. GOBENA:  No, I'm talking about -- well, there

4   is one report that they mention that's a 1997 report.

5           THE COURT:  1997, it mentions these four drugs?

6           MR. GOBENA:  One of them.  Vancomycin is

7   mentioned.  It's talking about Medicare reimbursement.

8           THE COURT:  So taking their best case which is

9   vancomycin, why doesn't after 1997 their knowledge of the

10  falsity --

11          MR. GOBENA:  Well, this is the nature of the

12  government's knowledge defense, and it's not really a

13  defense.  The way the government relates (?) Scienter with

14  the False Claims Act, in order for them to be insulated from

15  liability, which what they're seeking to do, they're seeking

16  to use these government reports to do that, they have to show

17  that there's a meeting of the minds between them and the

18  government that allowed them to engage in this conduct.  And

19  the best case that they can make from these reports is, well,

20  the government recognized that some manufacturers were

21  misrepresenting the prices and didn't do anything.  Well,

22  that's not a meeting of the minds with the government to

23  sanction them, sanction they are reporting the false prices.

24  And so, again, this is why this is going to be a very fact

25  specific issue, your Honor, and I agree with you that it's

1    difficult to deal with these on a motion to dismiss.  You're
2    going to have to get facts, important facts.  First of all,
3    what did Abbott disclose to the government, if anything?
4    Secondly, was there any dialogue with the government, and,
5    third, did the government sanction this particular conduct
6    that Abbott was engaged in?  And, again, we're talking about
7    very specific drugs and very specific conduct.  And the
8    allegations of the complaint lay out that not only are we
9    talking about large spreads, but Abbott was out there
10   actively marketing them as an inducement to their customers
11   to purchase their drugs.
12              THE COURT:  That's your kickback case.
13              MR. GOBENA:  That's the kickback theory, but also,
14   as we laid out, there's three theories of False Claims Act
15   liability in our complaint.  One is the kickback theory, that
16   they were creating -- the spread was illegal remuneration
17   that was being used to induce customers to go buy the drugs
18   that are reimbursed by the federal government.  We also
19   allege that they engaged -- that it also constitutes a
20   fraudulent course of conduct that led to the claims being
21   presented to the United States.  And we realize that if you
22   drew a diagram, there would a cross over between the two
23   theories, but you have to look at all the conduct and the
24   particular times that this particular company engaged in, and
25   then view that against the dropback of the False Claims Act.