# Exhibit M

NEW YORK STATE

DEPARTMENT OF SOCIAL SERVICES

40 NORTH PEARL STREET, ALBANY, NEW YORK 12243

CESAR A. PERALES
*Commissioner*



October 3, 1986

RE: Medicare & MA - Limits on Drug Payments (Federal Register Publication - Ref. No. 447)

Dear Sir/Madam:

The purpose of this correspondence is to provide you with the New York State Department of Social Services' comments on the above-captioned proposed rule published in the August 19, 1986 Federal Register.

The Department has reviewed the three (3) alternative approaches to the current Medicaid rules (42 CFR 447.331 through 447.334) regarding upper limits for drug reimbursement and offers the following comments:

A. Pharmacists' Incentive Program Alternative

The New York State Department of Social Services is not in favor of the Pharmacists' Incentive Program. In order for New York to realize a significant cost benefit from this pharmacists' incentive plan, pharmacists must be allowed to make unlimited substitution of drugs. This would not be possible under current state law.

The plan proposes to set the upper limit at 150% of the least costly multiple source drug advertised in a specific quantity or volume. However, the advertised price found in the Red Book or the Blue Book may not reflect the actual purchase price (APC) and there is no rational basis for using the quantity base of 100 for tablets or capsules and pints for liquids. Generic or multiple source drug prices are competitively low for larger quantities enabling all pharmacies large or small to purchase at lower cost. There are very few pharmacies which could not purchase drugs in quantities larger than 100 tablets/capsules or pints. In fact, the pharmacist's acquisition cost is likely to be lower than the price quoted in the Red or Blue Books.

Although this plan will encourage pharmacists to become more prudent purchasers, the Medicaid program may not realize savings in an appreciable amount since the markup of the acquisition costs will be significant. Furthermore, the publication of new price limits as prices in the marketplace may not be timely and therefore, the Medicaid program will not realize the full advantage of economies available in the marketplace.

B. <u>Revision of the MAC Program Alternative</u>

The New York State Department of Social Services supports direct operation of the Maximum Allowable Cost (MAC) program by HCFA. The Pharmaceutical Reimbursement Board, a special board for establishing MAC limits, should be eliminated to overcome unnecessary delays in finalization of a MAC designated item and price.

The Department agrees that the $50,000 annual reduction in expenditures that HCFA expects is a reasonable figure.

New York strongly supports the proposed survey of drug wholesalers for assurances that the drugs proposed for MAC limits are widely and consistently available at the MAC prices. However, New York State would like the survey process extended to cover generic manufacturers and distributors whereby the purchasing practices of pharmacists could be identified since the majority of generic drug purchases seem to occur in this manner.

New York also supports the waiver of specific MAC limits for a state upon the state medicaid agency's request and satisfactory demonstration that a particular volume of the drug is too low to justify administering the limit. It is believed that such a waiver would be an improvement over the current MAC program procedures and would be more acceptable to the pharmacy community.

New York supports instituting a contact point for complaints when a MAC limit is established since this will again enhance provider and state program relations with HCFA.

New York State is strongly supportive of this alternative because it presents no administrative problems and continues what program administrators feel has been a rational approach to savings.

C. <u>Competitive Incentive Program Alternative</u>

The New York State Department of Social Services does not support the Competitive Incentive Program since a careful review of this alternative indicates that the concept would be administratively difficult to implement and control.

The proposal indicates that the starting point for establishing an upper limit for reimbursement for all drugs would be the price the pharmacy charges a majority of its private retail customers for that drug, at that time and in that quantity. This initial step for setting limits on drug reimbursement can present the State program with both administrative and technical systems problems that could dilute any potential cost benefits.

Pharmacy operations service a multitude of third party programs in addition to the Medicaid program. Therefore, it would be difficult to determine the price paid by the majority of private retail customers since cash payment for prescriptions is presently a very small percentage of these operations.

Case 1:01-cv-12257-PBS   Document 5155-15   Filed 03/21/08   Page 4 of 4

- 3 -

The Department believes that this alternative is another approach to adopting the "marketplace price" concept which the chain pharmacy organizations have been actively lobbying for. If this proposal is adopted, a good possibility exists that the large competitive pharmacies would control the program and federal/state governments would become highly dependent upon a competitive marketplace that could be manipulated by the pharmacies.

New York State strongly rejects this concept which assumes that the retail marketplace is reasonably efficient in setting drug prices that would reflect a balance between demand and supply of drugs. Medicaid patients will not shift their business from one retail drug store to another as prices change. Medicaid patients do not contribute any monies to the cost of their prescriptions. Therefore, a Medicaid patient has no incentive to shop for prices and to go to the pharmacies with lower prices.

In conclusion, New York State supports proposal "B. <u>Revision of the MAC Program</u>." The proposed revisions, which would streamline and improve the process for establishing MAC limits, can expedite the entire process of setting price limits in a manner that would be acceptable to the individual states and to pharmacies.

It should be further noted that the Maximum Allowable Cost (MAC) methodology can produce savings when enforced. The current program was implemented by the federal government on August 26, 1976 and has been an effective cost control. However, delays in adding new drug items to the list and intensive lobbying against the program by pharmacists have reduced the percentage of savings that could have been realized under the program.

Sincerely yours,

Cesar A. Perales
Commissioner

Health Care Financing Administration
Department of Health and Human Services
BERC-356-P.
P.O. Box 26676
Baltimore Maryland, 21207