UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: *State of Iowa v. Abbott Laboratories., et. al.* | CIVIL ACTION: 01-CV-12257-PBS  Judge Patti B. Saris |

**DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendant TAP Pharmaceutical Products Inc. ("TAP") moves for dismissal of the State of Iowa's ( "Iowa") claims related to its drugs Lupron® and Prevacid®, TAP's only subject drugs, for reasons not identified in defendants' joint memorandum in support of their motion to dismiss.[1] Specifically, Iowa's Lupron® claims should be dismissed because all of its claims were settled and released by settlements reached in 2001 and 2005. Iowa's Prevacid® claims should also be dismissed because Iowa has had TAP's ASPs since September 2001 and has failed to change its reimbursement methodology accordingly.

**I.    IOWA'S LUPRON® CLAIMS HAVE BEEN SETTLED AND RELEASED.**

On December 3, 2001, the State of Iowa reached a settlement with TAP that released it from any liability to the State for the marketing, sale and pricing of Lupron® (the "Settlement Agreement"). The Settlement Agreement released and forever discharged TAP . . . ."from any civil or administrative claims for damages or penalties that the state of Iowa has or may have relating to the Covered Conduct." (*See* Complaint ("Compl.") ¶ 556(c); Settlement Agreement, attached as Ex. A, at 8, ¶ 2.)

---

[1] TAP adopts and incorporates by reference the defendants' joint memorandum and, to the extent applicable, the arguments contained in the other defendants' individual memoranda in support of the motion to dismiss.

The Settlement Agreement defines "Covered Conduct" to include "alleged conduct from January 1991 through 2001 involving the marketing, sale and pricing of Lupron® ...," including, for instance, any allegation that TAP (1) inflated the AWP of Lupron® in order to establish and market the spread; (2) provided free samples of Lupron® knowing and expecting that medical providers would charge for them; (3) provided financial incentives, including grants, travel and entertainment, to induce providers to purchase Lupron®; (4) concealed the discounted price from governmental agencies; and (5) misreported Best Price and underpaid Medicaid rebates for Lupron®. (*Id.* at 2, ¶ F(i)-(v).) The conduct alleged by Iowa here unquestionably falls within the scope of claims released by the Settlement Agreement. (*See* Compl. ¶¶ 1-18, 83-154, 156, 158-177, 554-561.) The Settlement Agreement covered Iowa's full share of Medicaid damages relating to TAP's alleged inflation of AWP. The Settlement Agreement therefore precludes Iowa claims as to Lupron® arising prior to 2002.

Not only does the Settlement Agreement release all of Iowa's claims relating to the pricing, marketing or sale of Lupron® prior to 2002, but Iowa also is prohibited from pursuing any Lupron® claims on behalf of itself or its citizens because of a nationwide class settlement approved by Judge Stearns in this District in the matter of *In re: Lupron® Marketing and Sales Practices Litigation*, MDL 1430. On August 26, 2005, Judge Stearns entered a Final Order and Judgment (the "August 26, 2005 Order") certifying, for settlement purposes, a nationwide class[2] of persons and entities who had paid for Lupron®. Judge Stearns' Final Order and Judgment incorporated the terms of the detailed Settlement Agreement executed by the parties (the "Class Agreement"). Together, Judge Stearns' Order and the Class Agreement leave no doubt that the Lupron®-related claims advanced in this action by Iowa are improper and should be dismissed.

*First*, Iowa is a member of the Lupron® Purchaser Class. It is a governmental entity that allegedly made Lupron® Purchases. (Class Agmt., attached as Exh. C, ¶ 2(t).) *Second*, Iowa did

---

[2] Specifically, the "Lupron® Purchaser Class" includes: "All individual persons or entities who, during the Class Period [January 1, 1985 through March 31, 2005], made Lupron® Purchases. Excluded from the class are . . . all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products, Inc.* (D. Mass.) and related litigation." (*See* Aug. 26, 2005 Order, attached as Exhibit B.)

not submit a request to "opt out" of the Lupron® Purchaser Class. (*See* Ex. A to the Aug. 26, 2005 Order, listing all persons and entities who validly excluded themselves from the Class.) Accordingly, Iowa is subject to the release provisions of the Class Agreement and the August 26, 2005 Order. The Class Agreement provides that Releasors (which include all members of the Lupron® Purchaser Class) have released all "Released Claims."[3] Judge Stearns' August 26, 2005 Order specifically incorporates that release. (Exh. B, Aug. 26, 2005 Order, ¶ 10.) Moreover, Judge Stearns' August 26, 2005 Order permanently enjoined any class member from pursuing any action against TAP. (*Id.* ¶ 18.) Iowa has released these claims relating to Lupron®, and it has been specifically enjoined from continuing to prosecute such claims against TAP. These claims therefore should be dismissed.[4]

## II.   IOWA HAD TAP'S AVERAGE SALES PRICES AND DID NOTHING

The State's Complaint is based on one underlying premise: that each defendant allegedly engaged in a fraudulent scheme to maximize the prices at which the State reimburses providers for defendants' drugs by concealing the actual prices that providers paid for those drugs. TAP, however, has reported to the State the actual prices at which it sells its products since the last quarter of 2001 (*see, e.g.,* TAP ASP Letters to Iowa Medicaid, attached as Exh. D), and the State does not contend otherwise. (*See* Compl. ¶ 556(d)) Consequently, the State cannot plausibly claim that it was misled or defrauded about the prices at which TAP sold its products after September 30, 2001, and all of its remaining claims against TAP relating to its other drug, the self-administered branded drug, Prevacid®, purportedly arising after that date should be dismissed with prejudice.[5] Moreover, because Iowa failed to use TAP's ASP information, one

---

[3] "Released Claims," include: "any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever,…that any Releasor who has not timely excluded themselves from the Lupron® Purchaser Class… ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any litigation relating to the marketing, sale, cost, pricing or purchase of Lupron®." (Exh. C, Class Agmt. ¶2(y).)

[4] Despite an attempt to resolve the claims and an additional 30 days to meet and confer, the State will only agree to dismiss AWP or Best Price claims against TAP for Lupron® through December 4, 2001, the date of the settlement.

[5] In the Complaint, Iowa alleges that in relation to its pricing practices of the drug Prevacid®, TAP has been named as a defendant in a Louisiana Qui TAM action, *U.S. Ex. Rel. William St. John LaCorte, MD v. TAP Pharmaceuticals Inc.*, CV 03-1483 (E.D.L.A.) ("Louisiana Qui Tam") (*See* Compl. ¶¶ 562-565). Iowa fails to

can only conclude that Iowa would not have done anything differently had it had the actual sales prices prior to 2002. Thus the pre-2002 claims also should be dismissed with prejudice.

Pursuant to the Settlement Agreement TAP is required to report to the State's Medicaid program and to First DataBank, Inc. ("FDB")[6] the average sales price ("ASP")[7] for each one of its products for which the State's Medicaid program provides reimbursement, beginning with the last quarter of 2001 and continuing quarterly for a period of seven years. (*Id.* ¶ 17.) TAP has reported to the State and FDB the ASPs for Lupron® and Prevacid® -- the only products sold by TAP -- for every quarter beginning with the last quarter of 2001 -- over six years.

The State's allegation that it only recently learned that the reported AWPs bore no relationship to defendants' true prices is simply wrong as to TAP. (*See* Compl. ¶ 72.) TAP has reported to the State and FDB what the State claims to be its "true" prices -- that is, the average of the final sales price at which it has sold each of its products to customers, net of all price concessions that serve to lower the cost of the drug to the ultimate purchaser -- each quarter for the past six years. Thus, contrary to the State's allegations, TAP has been completely forthcoming about the prices at which it sells its products, and has disclosed, not concealed, information necessary for the State to determine the acquisition cost of TAP's products. (*Cf. id.* ¶¶ 133, 134, 136, 141.) Therefore, the State has no claim against TAP based on alleged price fraud after September 30, 2001. *See Lockard v. Carson*, 287 N.W. 2d 871, 878 (1980) ("Representations may not justifiably be relied on . . . 'where a plaintiff has equal information of certain knowledge as the defendant.'")[8]

---

(continued...)

mention, however, that the Louisiana Qui Tam court dismissed the action on July 26, 2005.

[6] From 1991 until 2005, Iowa's source for pharmaceutical pricing information was FDB (*See* Compl. ¶78)

[7] The Settlement Agreement defines ASP as: "the average of all final sales prices charged by TAP for the product in the United States to all purchasers [with some listed exclusions] .... net of all of the following: volume discounts; prompt pay discounts; cash discounts; chargebacks; short-dated product discounts; free goods; rebates; and all other price concessions provided by TAP to any Relevant Purchaser that result in a reduction of the ultimate cost to the purchaser ...." (*Id.* ¶ 17(c).)

[8] Thus far, two other courts have granted similar motions to dismiss brought by defendant Bayer Corporation, which, like TAP, also began reporting its ASP information to the federal and state governments in

CHI-1630405v4

Moreover, the State has no claims against TAP based on alleged price fraud prior to September 30, 2001. Despite having received the actual prices for TAP's drug for the past six years, Iowa has not changed its reimbursement methodology to account for the ASP information it received. Iowa's inaction demonstrates that it would not have done anything differently had it received the actual prices prior to 2001. It is well settled that in order to successfully maintain a claim for fraud, one must prove that he acted or refrained from acting in reliance on the truth of the fraudulent misrepresentation. *See IBP, Incl. v. FDL Foods, Inc.*, 19 F.Supp.2d 944 (N.D. Iowa 1998). Iowa has been setting its reimbursement methodology in spite of TAP's conduct, not because of it. As such, it cannot now claim that it relied on any alleged fraudulent conduct by TAP or that any such alleged conduct was the proximate cause of its damages. Consequently, the State has no claim against TAP based on alleged price fraud before September 30, 2001. *See Fashion House, Inc. v. K Mart Corporation*, 892 F.2d 1076, 1093 (1st Cir. 1989) (affirming motion for directed verdict denying fraud claim where party proceeded with the transaction at issue despite knowing of the alleged fraud).

## III. CONCLUSION

For the foregoing reasons, and those identified in defendants' joint memorandum, TAP respectfully requests that this Court dismiss the claims against TAP with prejudice.

---

(continued...)

2001 after it entered into settlement agreements similar to the one that TAP entered into with the State. *See Commonwealth of Kentucky v. Alpharma, Inc.*, No. 04-C1-148 (Franklin Circuit Court, June 23, 2006) (Order on Defendant Bayer Corporation's Motion to Dismiss) (attached as Exh. E); *State of Mississippi v. Abbott Laboratories, Inc.*, No. G2005-2021 (Chancery Court of Hinds County., July 28, 2006) (Report, Recommendation and Order No. 2 of Special Masters Granting Bayer's Motion to Dismiss) (attached as Exh. F).

Dated:  March 21, 2008

Respectfully submitted,

DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.


/s/  Toni-Ann Citera
Toni-Ann Citera
Lee Ann Russo
Rachael E. Philbin
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
Telephone:	(312) 782-3939
Facsimile:	(312) 782-8585

Brent C. Green
DUNCAN, GREEN, BROWN & LANGENESS P.C.
400 Locust Street, Suite 380
Des Moines, IA  50309
Telephone:	(515) 288-6440
Facsimile:	(515) 288-6448


ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on this 21stt day of March, 2008, a true and correct copy of DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS was served upon all counsel of record by electronic service by causing a copy to be sent to Lexis/Nexis for posting and notification.

s/ Rachael E. Philbin
Attorney for Defendant TAP Pharmaceutical Products Inc.

CHI- 1630405v41