# Exhibit C

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE LUPRON® MARKETING AND SALES PRACTICES LITIGATION ) ) ) | Master File No. 01-CV-10861 (MDL 1430) |
| THIS DOCUMENT RELATES TO ALL ACTIONS ) ) ) | |

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Class Agreement") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Settlement Court, this Class Agreement is entered into between and among (i) the Class Representatives on behalf of themselves and the Lupron® Purchaser Class (the "Plaintiffs") and (ii) Defendants TAP Pharmaceutical Products Inc. ("TAP"), Abbott Laboratories ("Abbott"), and Takeda Pharmaceutical Company Limited (f/k/a Takeda Chemical Industries, Ltd.) ("Takeda") (collectively the "Defendants"), by and through their respective counsel.

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a consolidated and coordinated proceeding comprised of actions, including the above-captioned actions, in which the Plaintiffs have alleged, *inter alia*, that some or all Defendants have engaged in improper and fraudulent marketing, pricing, and sales of the prescription drug Lupron®.

WHEREAS, Defendants have asserted a number of defenses to the claims by the Plaintiffs;

CHI-1445245

WHEREAS, the Plaintiffs and Defendants agree that this Class Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged in any Lupron® Pricing Litigation or a waiver of any defenses thereto;

WHEREAS, Class Settlement Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the class action, including the claims asserted in the complaint filed in the class action and the possible legal and factual defenses thereto, that it would be in the best interests of the Plaintiffs to enter into this Class Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Plaintiffs; and, further, that Class Settlement Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Plaintiffs;

WHEREAS, the Lupron® Purchaser Class is comprised of (i) third-party payor ("TPP") purchasers, and (ii) individual consumers ("Consumers"), who paid for all or part of the cost of Lupron® prescribed, provided or administered in the United States during the Class Period;

WHEREAS, a group of health insurance companies and health plans ("Settling Health Plans," "SHPs," or "SHP Group"), who have represented that the SHPs, in the aggregate, provide or administer prescription drug and health benefits to at least seventy percent (70%) of the 197,869,000 covered lives privately insured in the United States (based on U.S. Census data published

December 31, 2003), have executed a separate settlement agreement with Defendants (the "SHP Agreement");

WHEREAS, the settlement between the SHP Group and Defendants requires a coordination of the claims administration process for the Lupron® Purchaser Class and the SHP Group;

WHEREAS, Defendants, through their counsel, Plaintiffs, through Class Settlement Counsel, and the SHP Group, through SHP Group Counsel, after months of vigorous, arms-length negotiations, have conditionally agreed to payment by Defendant TAP of one hundred-fifty million dollars ($150,000,000) to settle the Lupron® MDL Actions and all claims of the Plaintiffs and the SHP Group, of which amount ninety-five million dollars ($95,000,000) will be allocated to the Plaintiffs and fifty-five million dollars ($55,000,000) will be allocated to the SHP Group as provided in this Class Agreement and the SHP Agreement;

WHEREAS, additional class counsel appointed by Class Settlement Counsel engaged in vigorous arms-length negotiations to apportion the ninety-five million dollars ($95,000,000) allocated to the Plaintiffs (the "Class Settlement Fund") between Consumers and TPPs, and reached agreement to apportion forty million dollars ($40,000,000) to Consumer Class Members (the "Consumer Settlement Pool") and fifty-five million dollars ($55,000,000) to TPP Class Members (the "TPP Settlement Pool");

WHEREAS, the Settlement Court has found that Takeda is not subject to personal jurisdiction as to Lupron®-related actions filed in Massachusetts,

Alabama, and Minnesota, and Takeda does not by virtue of this Class

Agreement concede that it had or has minimum contacts with any state

sufficient to subject it to personal jurisdiction in that state;

WHEREAS, Defendants, despite their belief that they have good defenses

to the claims asserted against them in the Lupron® MDL Actions and in other

Lupron® Pricing Litigation, have nevertheless agreed to enter into this Class

Agreement and the SHP Agreement to reduce and avoid further expense,

inconvenience, and the distraction of burdensome and protracted litigation,

and thereby to resolve this controversy;

NOW, THEREFORE, it is agreed by and between the undersigned on

behalf of Defendants and the Plaintiffs that any and all claims made or that

could have been made against Defendants by Plaintiffs in the Lupron® MDL

Actions or any other Lupron® Pricing Litigation be settled, compromised and

dismissed on the merits and with prejudice and, except as hereafter provided,

without costs as to Plaintiffs or Defendants, subject to the approval of the

Settlement Court, on the following terms and conditions:

1.    Lupron® Purchaser Class Definition.  Subject to the Settlement

Court's approval, and the conditions of Paragraphs 23 and 24, the undersigned

agree and consent to the certification of the following settlement class (the

"Lupron® Purchaser Class") in the Lupron® MDL Actions:

> All individual persons or entities who, during the Class Period,
> made Lupron® Purchases.  Excluded from the class are the Settling
> Health Plans; Defendants, their respective present and former,
> direct and indirect, parents, subsidiaries, divisions, partners and
> affiliates; and the United States government, its officers, agents,

agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products, Inc.* (D. Mass.) and related litigation.

2. <u>General Definitions</u>. As used in this Class Agreement, the following terms shall have the indicated meanings:

(a) "Class Period" means January 1, 1985 through the end of the Settlement Notice period established by the Settlement Court, which date shall be no earlier than December 31, 2004.

(b) "Consumer" means any person falling within the definition of the Lupron® Purchaser Class who is a natural person and not a TPP. "Consumer" includes living persons as well as the executors, heirs, administrators, trustees, or other authorized representatives of deceased persons.

(c) "Consumer Class Members" means Consumers who are not Class Opt-Outs.

(d) "Consumer Settlement Pool" means forty million dollars ($40,000,000) from the Class Settlement Fund, which amount shall be segregated into an account for Consumer Class Members as described in Paragraph 9, plus all interest or other income that accrues thereon.

(e)  "Net Consumer Settlement Pool" means the balance of the Consumer Settlement Pool after deducting fees, expenses and costs, and is more fully discussed in Paragraph 17.

(f)  "Authorized Consumer Claimant" means a Consumer Class Member who submits a Proof of Claim that is accepted in whole or in part by the Claims Administrator.

(g)  "Court" or "Settlement Court" means the Honorable Richard G. Stearns of the United States District Court for the District of Massachusetts, or if Judge Stearns is not available, another judge from the United States District Court for the District of Massachusetts who will be designated by Judge Stearns or who is appointed, or any subsequent court before which Defendants' Counsel and Class Settlement Counsel agree to settle the claims of the Lupron® Purchaser Class.

(h)  "Class Member" means any person or entity falling within the definition of the Lupron® Purchaser Class other than any Class Opt-Outs.

(i)  "Class Counsel" means all attorneys and law firms that have filed a general appearance on behalf of a putative class of plaintiffs in any of the Lupron® MDL Actions as of November 1, 2004.

(j)  "Class Settlement Counsel" means the law firms of SPECTOR ROSEMAN & KODROFF; COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.; LIEFF

6

CABRASER HEIMANN & BERNSTEIN, LLP; FOOTE MEYERS MIELKE & FLOWERS; and HAGENS BERMAN LLP.

(k)     "Class Opt-Out" means any person or entity falling within the definition of the Lupron® Purchaser Class who timely and validly submits a request for exclusion from the Lupron® Purchaser Class in accordance with the procedures set forth in the Settlement Notice. A Class Opt-Out that is a Consumer is also referred to as a "Consumer Opt-Out." A Class Opt-Out that is a TPP is also referred to as a "TPP Opt-Out."

(l)     "Class Representatives" means the named plaintiffs who have asserted claims on behalf of themselves and a putative class in the Lupron® MDL Actions.

(m)     "Claims Administrator" means Complete Claim Solutions, Inc.

(n)     "Claim Documentation" means the materials required for submission of a claim pursuant to this Class Agreement. The Claim Documentation is set forth in Exhibit F.

(o)     "Defendants" means TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited (f/k/a Takeda Chemical Industries, Ltd.).

(p)    "Defendants' Counsel" means the law firms of JONES DAY, WINSTON & STRAWN LLP, and JENNER & BLOCK LLP.

(q)    "Effective Date" has the meaning ascribed in Paragraph 7 of this Class Agreement.

(r)    "Escrow Account" means the account established pursuant to Paragraph 9 of this Class Agreement.

(s)    "Lupron®" means Lupron® and Lupron Depot®.

(t)    "Lupron® Purchases" means payment or reimbursement, direct or indirect, for all or part of the cost of Lupron® prescribed, provided or administered in the United States; including, but not limited to, the payment or partial payment for or reimbursement of Lupron® to any doctor, medical practice, pharmacy or any other health care provider, or the payment of a co-insurance amount, deductible amount, flat payment amount or co-pay amount for Lupron® pursuant to a Medicare co-insurance obligation, an insurance agreement, or other health care plan.  "Lupron® Purchases" includes, but is not limited to, transactions where the cost, reimbursement amount or price of the Lupron® to the Consumer Class Member, TPP Class Member, SHP Group Member, or any doctor, pharmacy or other health care provider, was based in any part on the Average Wholesale Price ("AWP") or any other price of Lupron® or any other product as published by Redbook, Medispan, or any similar

publication. "Lupron® Purchases" does not include purchases of Lupron® for resale purposes.

(u)    "Lupron® MDL Actions" means the consolidated claims of the Lupron® Purchaser Class and SHP Group in *In Re Lupron® Marketing and Sales Practice Litigation*, Case No. 01-CV-10861 (D. Mass.) (MDL 1430).

(v)    "Lupron® Pricing Litigation" means the Lupron® MDL Actions and all other pending litigation in any federal or state court asserting claims against the Defendants or any of them in any way similar to the Released Claims.

(w)    "Plaintiffs" means the Class Representatives together with all putative members of the Lupron® Purchaser Class.

(x)    "Releasees" means TAP Pharmaceutical Products Inc. (formerly TAP Holdings Inc.); TAP Pharmaceuticals Inc.; TAP Finance Inc.; Abbott Laboratories; Takeda Pharmaceutical Company Limited (formerly Takeda Chemical Industries, Ltd.); Takeda Pharmaceuticals North America, Inc.; Takeda America Holdings, Inc.; and each of their respective past, present and future, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, and their respective past, present and future stockholders, officers, directors, employees, managers, sales representatives, agents, attorneys, insurers, and any other persons or entities who are alleged to have been involved in the distribution, dispensing and prescription of Lupron® and any of

their legal representatives, and the predecessors, heirs, successors, executors, trustees, administrators and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

(y) "Released Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasor who has not timely excluded themselves from the Lupron® Purchaser Class, whether or not they object to the settlement and whether or not they make a claim upon or participate in the Class Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any litigation relating to the marketing, sale, cost, pricing or purchase of Lupron®. "Released Claims" specifically includes, but is not limited to, all claims against any person or entity relating to Lupron® transactions where the cost, reimbursement amount or price of the Lupron® to the Consumer Class Member, TPP Class Member, SHP Group Member, or any doctor, pharmacy or other health care provider, was based in any part on the Average Wholesale Price ("AWP") or any other price of Lupron® or any other product as published by Redbook, Medispan, or any similar publication. All Releasors covenant and agree that, after the Effective Date of this Class Agreement, they shall not seek to establish liability based, in whole or in part,

CHI-1445245

10

on any of the Released Claims. "Released Claims" shall not include claims arising out of this Class Agreement or claims between members of the Lupron® Purchaser Class and any of the Releasees concerning product liability or personal physical injury.

(z) "Releasors" means (1) all Consumer Class Members, as well as their successors, assigns, heirs, executors, trustees, and administrators, and (2) all TPP Class Members and each TPP Class Member's respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, any future operating entities created and controlled by a TPP Class Member (not including any successor of a TPP Opt-Out), and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such, and any entities or persons (including, to the extent that a TPP Class Member administered their Lupon® Purchases, all entities for which any TPP Class Member provides or provided administrative services) on whose behalf the TPP Class Member is authorized to act. All Released Claims are forever discharged, and such claims cannot be asserted by any of Releasors' future, direct and indirect, parents, subsidiaries, divisions, partners and affilliates, their respective future stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, or any successors, heirs, executors, trustees, administrators, or assigns of each of the foregoing. As used in this Paragraph, "affiliates"

means entities controlling, controlled by or under common control with a Releasor.

(aa) "Settlement Amount" means one hundred fifty million dollars ($150,000,000), which is to be paid by TAP in full and final satisfaction of all Released Claims held by any Consumer Class Member, TPP Class Member or SHP Group Member. The Settlement Amount is inclusive of any payments for reasonable attorneys' fees and costs of any kind, including all costs associated with Settlement Notice and claims and escrow administration.

(bb) "Class Settlement Fund" means ninety-five million dollars ($95,000,000), which represents the Settlement Amount minus the SHP Group Initial Payment. TAP shall transfer the Class Settlement Fund, and it shall be allocated into the "TPP Settlement Pool" and the "Consumer Settlement Pool" as provided in Paragraph 9.

(cc) "Settlement Notice" means the Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing substantially in the form annexed hereto as <u>Attachment 1</u> to <u>Exhibit A</u> and the Summary Notice annexed hereto as <u>Attachment 2</u> to <u>Exhibit A</u>.

(dd) "SHP Group," "Settling Health Plans," or "SHPs" means all of the entities identified in <u>Exhibit C</u> to this Class Agreement (the "SHP Group Members"), together with all self-funded healthcare plans and/or entities ("SFPs") for which one or more SHP Group Members provides or provided

prescription drug or health benefit services through administrative services-only contracts or as a third-party administrator and on whose behalf the SHP Group Member warrants it is authorized to make a claim, to the extent that such SHP Group Member administered such SFP's Lupron® Purchases. Such SFPs will be identified in the Claim Documentation submitted by the SHP Group pursuant to Paragraph 12 of this Class Agreement and Paragraph 4 of the SHP Agreement. Additional members may be added to the SHP Group as provided in Paragraph 17 of the SHP Agreement.

(ee)    "SHP Group Counsel" means the law firms of DEWEY BALLANTINE LLP; SCHNADER HARRISON SEGAL & LEWIS LLP; LOWEY DANNENBERG BEMPORAD & SELINGER P.C.; SUSMAN & GODFREY, LLP; and RAWLINGS & ASSOCIATES, P.L.L.C..

(ff)    "SHP Group Recognized Claim Percentage" or "SHPRCP" means the total amount of claims by all SHP Group Members that are allowed by the Claims Administrator divided by the total allowed claims of (a) all Authorized TPP Claimants, (b) all members of the SHP Group, and (c) all TPP Opt-Outs for which TAP receives a refund from the TPP Settlement Pool pursuant to Paragraph 11 of this Class Agreement.

(gg)    "SHP Group Initial Payment" means fifty-five million dollars ($55,000,000) from the Settlement Amount.

(hh)   "SHP Group Escrow" means fifteen million dollars ($15,000,000) from the SHP Group Initial Payment.

(ii)   "SHP Over/Underage" means the SHPRCP less fifty percent (50%). For example, if the SHPRCP is 60%, then the SHP Over/Underage would be a positive 10%. If the SHPRCP is 42%, then the SHP Over/Underage would be a negative 8%.

(jj)   "SHP Group Reversion Amount" means an amount calculated after all TPP claims have been processed and the total allowed claim amounts for all Authorized TPP Claimants and the SHP Group have been determined by the Claims Administrator. The SHP Group Reversion Amount is calculated differently depending on whether the SHP Over/Underage is positive or negative.

If the SHP Over/Underage is positive, then the SHP Group Reversion Amount means the amount determined by the following calculation: SHP Over/Underage x [($110,000,000 - TAP Refund) x (1 - TPP Class Fees & Expenses/$55,000,000)]. "TAP Refund" is defined in Paragraph 2(kk). "TPP Class Fees & Expenses" is defined in Paragraph 2(nn) below.

If the SHP Over/Underage is negative, the SHP Group Reversion Amount means the amount determined by the following calculation: (-SHP Over/Underage) x $110,000,000. In this formula, the "(-SHP Over/Underage)" makes the negative SHP Over/Underage a positive percentage. The SHP Group Reversion Amount calculated pursuant to this formula can be no more than

the value of the SHP Group Escrow as of the date of payment of the SHP Group Reversion Amount.

By way of illustration, Exhibit E to this Class Agreement sets forth sample calculations of the SHP Group Reversion Amount.

(kk) "TAP Refund" means the refund owed to TAP as a result of any TPP Opt-Outs, and is further described in Paragraph 11.

(ll) "Third-Party Payor" or "TPP" means a private or governmental entity that was at risk by contract to pay all or part of the cost of Lupron® prescribed, provided or administered in the United States for individual beneficiaries of the TPP's prescription drug or health coverage. Excluded are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; and the United States, its officers, agents, agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products, Inc.* (D.Mass.) and related litigation. A claim may be made pursuant to this Class Agreement on behalf of a TPP Class Member by an agent thereof, including the third-party administrator of the TPP Class Member's prescription drug or health benefit plan, if the TPP Class Member authorizes the agent to make such a claim.

(mm) "TPP Class Members" means TPPs falling within the definition of the Lupron® Purchaser Class, excluding any Class Opt-Outs.

(nn) "TPP Class Fees and Expenses" means the sum of (1) the lesser of (a) the total attorney fee award granted by the Settlement Court pursuant to Paragraph 13 of this Class Agreement times the TPP Class Formula (defined below) or (b) thirteen million seven hundred fifty thousand dollars ($13,750,000); plus (2) all litigation-related expenses and costs approved by the Settlement Court pursuant to Paragraph 13 of this Class Agreement times the TPP Class Formula. The TPP Class Formula equals (TPP Settlement Pool - TAP Refund)/((TPP Settlement Pool-TAP Refund) + Consumer Settlement Pool).

(oo) "TPP Settlement Pool" means fifty-five million dollars ($55,000,000) from the Class Settlement Fund, which amount shall be segregated into an account as provided in Paragraph 9, plus all interest or other income that accrues thereon.

(pp) "Net TPP Settlement Pool" means the TPP Settlement Pool after the payment of fees, expenses, costs, the SHP Group Reversion Amount, and the TAP Refund, if any.

(qq) "Authorized TPP Claimant" means a TPP Class Member who submits a Proof of Claim that is accepted in whole or in part by the Claims Administrator. The Claims Administrator shall not authorize any claims made by TPP Class Members on behalf of Defendants, their respective present and former, direct and indirect, parents, subsidiaries, partners and affiliates, or on behalf of any government entity to the extent that such government entity's

claims have been released or are otherwise excluded pursuant to Paragraph 1 of this Class Agreement.

(rr)   "United States" means the United States of America including its states, commonwealths, territories and possessions.

3.   <u>Reasonable Best Efforts to Effectuate This Settlement</u>.  The parties and their counsel agree to use their reasonable best efforts, including all steps and efforts contemplated by this Class Agreement and any other steps and efforts that may be necessary or appropriate, including, to the extent applicable, the steps and efforts contemplated by the SHP Agreement, by order of the Settlement Court or otherwise, to carry out the terms of this Class Agreement.

4.   <u>Motion for Preliminary Approval</u>.  Concurrent with or shortly following the submission of this Class Agreement for consideration by the Settlement Court, and in no event later than November 12, 2004, Class Settlement Counsel shall submit to the Settlement Court a motion for preliminary approval of the settlement set forth in this Class Agreement, and requesting entry of a Preliminary Approval Order substantially in the form annexed hereto as <u>Exhibit A</u>.

5.   <u>Notice to Class</u>.  In the event the Settlement Court preliminarily approves the settlement set forth in this Class Agreement, Class Settlement Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil

Procedure and the Preliminary Approval Order, provide all those members of the Lupron® Purchaser Class who can be identified by reasonable means with a copy of the Summary Notice substantially in the form annexed hereto as Attachment 2 to Exhibit A.  Notice to members of the Lupron® Purchaser Class shall also be given by publication in national print media, as ordered by the Settlement Court, and by publication on the web site established at the direction of Class Settlement Counsel.  In addition, all members of the Lupron® Purchaser Class shall be directed to review a copy of the detailed Settlement Notice, set forth in Attachment 1 to Exhibit A, which will be published on the web site and will be mailed to any Lupron® Purchaser Class Member upon request.  All costs of Settlement Notice shall be paid exclusively from the Class Settlement Fund as provided in this Class Agreement.

6.    Entry of Final Judgment.  If, after the settlement fairness hearing scheduled by the Settlement Court in the Preliminary Approval Order, the Settlement Court approves this Class Agreement, then counsel for the parties shall request that the Settlement Court enter an Order and Final Judgment substantially in the form annexed hereto as Exhibit B.

7.    Effective Date of Settlement.  The settlement detailed in this Class Agreement shall be effective on the first date after all of the following events have occurred:

(a)    entry of the Preliminary Approval Order substantially in the form annexed hereto as Exhibit A, or entry of a Preliminary Approval Order not

substantially in the form annexed hereto with respect to which neither Defendants nor Class Settlement Counsel invoke their termination rights within the period prescribed in Paragraph 8 below;

(b)     final approval by the Settlement Court of the Class Agreement, following notice to the Lupron® Purchaser Class and a fairness hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(c)     entry by the Settlement Court of an Order and Final Judgment, substantially in the form set forth in Exhibit B annexed hereto, and the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Settlement Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Class Agreement as permitted by Paragraph 8, the date that such Alternative Judgment becomes final and no longer subject to appeal or review; and

(d)     this Class Agreement is no longer subject to termination by any party as provided for in Paragraphs 8 or 25.

8.     Termination. Defendants and Class Settlement Counsel shall each have the right to terminate this Class Agreement by providing written notice of

their election to do so ("Termination Notice") to each other and to the SHP

Group within thirty (30) days of (a) the Settlement Court declining to enter the

Preliminary Approval Order substantially in the form annexed hereto as <u>Exhibit</u>

<u>A</u>; (b) the Settlement Court declining to enter the Order and Final Judgment

substantially in the form annexed hereto as <u>Exhibit B</u>; (c) the date upon which

the Order and Final Judgment is modified or reversed in any material respect

by the U.S. Court of Appeals or the U.S. Supreme Court; or (d) the date upon

which an Alternative Judgment is modified or reversed in any material respect

by the U.S. Court of Appeals or the U.S. Supreme Court. A modification at any

stage or reversal on appeal of (1) any amount of attorneys' fees and expenses

requested by plaintiff counsel from the Class Settlement Fund, (2) the amount

of incentive fees to be awarded to Class Representatives or other named

plaintiffs in any Lupron® Pricing Litigation, or (3) the proposed plan of

distribution set forth in this Class Agreement shall not constitute a material

change that would entitle a party to terminate this Class Agreement pursuant

to this Paragraph. If Class Opt-Outs exceeding a certain amount (as specified

and calculated pursuant to the terms of a Supplemental Class Agreement

between the parties) exclude themselves from the Lupron® Purchaser Class,

Defendants shall be entitled to terminate this Class Agreement pursuant to the

terms of said Supplemental Class Agreement. Defendants shall also be entitled

to terminate this Class Agreement if they exercise their right to terminate the

SHP Agreement at any time before the Settlement Court has finally approved

this Class Agreement.  Finally, Defendants shall be entitled to terminate this Class Agreement as provided in Paragraph 25.

9.    <u>Settlement Consideration</u>.  Subject to the provisions hereof, and in full, complete and final settlement of all Released Claims as provided herein, TAP agrees to transfer, within five (5) business days after the Settlement Court enters an order granting preliminary approval of this Class Agreement, the Class Settlement Fund into an Escrow Account designated by Class Settlement Counsel and acceptable to Defendants.  The Escrow Account shall be established and administered pursuant to an Escrow Agreement to be agreed upon prior to preliminary approval of this Class Agreement.  Upon receipt of the Class Settlement Fund, forty million dollars ($40,000,000) shall be segregated into an account for the Consumer Settlement Pool, and fifty-five million dollars ($55,000,000) shall be segregated into an account for the TPP Settlement Pool.  The Consumer Settlement Pool and the TPP Settlement Pool shall be invested by the Escrow Agent in short term United States Agency or Treasury Securities (or a mutual fund investing solely in such instruments) or other similar short-term United States government obligations as may be agreed upon, and any interest or other income earned thereon shall become part of the respective Consumer Settlement Pool and TPP Settlement Pool. TAP's transfer of the Class Settlement Fund to the Escrow Account shall satisfy TAP's obligation to make payments under this Class Agreement, and no other payment by any Defendant shall be required.  Defendants shall not, under any circumstances, have any liabilities, obligations or responsibilities with respect

to the investment, payment, disposition or distribution of the Class Settlement
Fund after such transfer, or with respect to any administration of claims made
upon the Class Settlement Fund.

10.    Qualified Settlement Fund.  The Escrow Account is intended by the
parties hereto to be treated as a single "qualified settlement fund" for federal
income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the
parties hereto shall cooperate with each other and shall not take a position in
any filing or before any tax authority that is inconsistent with such treatment.
Whether or not final approval of this Class Agreement has occurred, and
whether or not the Escrow Account qualifies as a qualified settlement fund
within the meaning of Treas. Reg. § 1.468B-1, the Escrow Agent shall cause to
be paid from the Escrow Account any taxes or estimated taxes due on any
income earned on the funds in the Escrow Account and all related costs and
expenses.  The parties elect that the Escrow Account should be treated as a
qualified settlement fund from the earliest possible date and agree to make any
"relation back" election that may be available.  If amounts received by the Class
Members, or by TAP upon any refund or other reversion, are construed to be
income, it is the recipient's sole responsibility to pay taxes on the amount
construed to be income, plus any penalties or interest.

11.    Modification Of Class Settlement Fund.  As detailed in the
Settlement Notice, all requests to opt out of the Lupron® Purchaser Class must
be received no later than fifteen (15) days before the final approval hearing set

by the Settlement Court. In the event that any TPP Class Members submit valid and timely requests to opt-out of the Lupron® Purchaser Class pursuant to this Class Agreement and do not thereafter participate in the SHP Agreement, TAP shall be entitled to a refund from the TPP Settlement Pool in an amount equal to the percentage of Lupron® Purchases made by such TPP Opt-Out(s) (calculated in the same manner as the SHPRCP, described in Paragraph 2(ff) to this Class Agreement) multiplied by one hundred ten million dollars ($110,000,000) (the "TAP Refund"). In the event that one or more Defendants reaches a separate settlement of any Lupron®-related claims asserted against it by one or more TPP Opt-Outs, such Defendant(s) shall provide written notice to Class Settlement Counsel of the existence of any such settlement. Such notice shall be provided to Class Settlement Counsel no later than fifteen (15) business days prior to the transfer of funds to any such TPP Opt-Out pursuant to such settlement agreement. Class Settlement Counsel may petition the Settlement Court, or any other appropriate court, for (i) an order allowing Class Settlement Counsel access to the confidential terms of any such settlement under an appropriate protective order; and (ii) an order directing that a portion of the monies to be paid pursuant to any such settlement be allocated to Class Settlement Counsel as a reasonable attorneys' fee to compensate Class Settlement Counsel for efforts undertaken in the Lupron® MDL Actions for the benefit of all putative class members.

   12.   <u>SHP Group Reversion Amount and Requirements.</u>

(a)    On or before January 21, 2005, or twenty-one (21) days prior to the final approval hearing set by the Settlement Court, whichever is later, the SHP Group shall submit its Claim Documentation to the Claims Administrator, with a copy to Class Settlement Counsel and Defendants' Counsel.

(b)    Class Settlement Counsel shall submit a schedule of all TPP Opt-Outs to SHP Group Counsel, with a copy to Defendants' Counsel, no later than thirteen (13) days before the final approval hearing set by the Settlement Court.  SHP Group Members shall then submit to the Claims Administrator, with a copy to Defendants' Counsel and Class Settlement Counsel, any necessary amendments to their Claim Documentation to exclude claims made on behalf of any TPP Opt-Outs no later than nine (9) days before the final approval hearing.

(c)    The Claims Administrator shall not authorize any claims made by SHP Group Members on behalf of Defendants, their respective present and former, direct and indirect, parents, subsidiaries, partners and affiliates, or on behalf of any government entity to the extent that such government entity's claims have been released or are otherwise excluded pursuant to Paragraph 1 of this Class Agreement.  The Claims Administrator also shall not allow duplication of claims by SHP Group Members and/or TPP Class Members.

(d)     <u>Representations and Warranties</u>.  As part of the SHP
Agreement, each Settling Health Plan shall warrant that any Claim
Documentation, data, or other information it submits to the Claims
Administrator will be true and accurate.

(e)     <u>Effect of Failure of an SHP Group Member to Submit Claim
Documentation.</u>  To verify the accuracy of claim information and to prevent
duplication of claims, the Claims Administrator may request additional
information from SHP Group Members as deemed appropriate by the Claims
Administrator.  The SHP Agreement shall set forth that SHP Group Members
will provide additional information to the Claims Administrator as requested.
The calculation of the SHP Group Reversion Amount shall not include claims of
any SHP Group Member that fails to timely submit the above Claim
Documentation or additional claims documentation requested by the Claims
Administrator.

(f)     <u>Confidentiality.</u>  All Claim Documentation (including the
identification of SFPs) or other information submitted by SHP Group Members
pursuant to this Paragraph shall be kept confidential and may be used or
disclosed only for the purpose of effectuating this Class Agreement and the
SHP Agreement, including disclosure to the Claims Administrator, Defendants,
Class Settlement Counsel, and the Settlement Court.  Adequate steps shall be
taken to protect against unlawful disclosure of confidential patient information,
if any, that is included in such Claim Documentation, or other information.

(g)    <u>SHP Group Reversion Amount Computation</u>

(1)    <u>Notice of Proposed Computation.</u>  The Claims Administrator shall make available to SHP Group Counsel a list of the identities of all TPP Class Members that submit Claim Documentation (the "TPP Claimant List"). The TPP Claimant List shall be deemed confidential and can be used only for the purposes of determining duplication of claims or whether any entity submitting Claim Documentation falls within the definition of TPP as set forth in Paragraph 2(ll). The TPP Claimant List shall be generated by the Claims Administrator and transmitted to SHP Group Counsel no later than the date for the fairness hearing set by the Settlement Court. The Claims Administrator shall also generate and transmit to SHP Group Counsel an updated and final TPP Claimant List twenty (20) days after the date set for postmark of all claims by Lupron® Purchaser Class Members, or sooner if available. SHP Group Counsel shall have the opportunity, within twenty-one (21) days of receipt of a TPP Claimant List, to identify in writing to Class Settlement Counsel any TPP Class Member that SHP Group Counsel believe has submitted a claim that is duplicative of a claim already asserted by another TPP Class Member or SHP Group Member, or that falls outside the definition of TPP as set forth in Paragraph 2(ll). At least thirty-five (35) days prior to any distribution of the Net TPP Settlement Pool under Paragraph 17 to TPP Class Members, Class Settlement Counsel shall provide SHP Group Counsel with the proposed computation of the SHP Group Reversion Amount payment, including a list reflecting the Claims Administrator's determination of the amount of each

SHP Group Member's allowed claims for Lupron® Purchases. Such computation will become binding upon the SHP Group unless within ten (10) business days of receipt of computation, SHP Group Counsel disputes the amount of the proposed SHP Group Reversion Amount payment in writing to Class Settlement Counsel. In the event of such a dispute, SHP Group Counsel may request and receive from Class Settlement Counsel a list of the TPP Class Members who have the 50 largest aggregate claims approved by the Claims Administrator and the amount of such claims (the "TPP List"). The TPP List shall be held in confidence by SHP Group Counsel, will be provided for attorneys' eyes only, and shall not be provided or shared with any other person, including any member of the SHP Group or another TPP. SHP Group Counsel shall be entitled to show the list to a single third-party consultant who is not employed by any TPP, and who agrees in writing to be bound by the same confidentiality as SHP Group Counsel, solely for purposes of dispute resolution under this Paragraph. Other than as provided in this Class Agreement and the SHP Agreement, the SHP Group and SHP Group Counsel shall not be entitled to any information collected or generated by the Claims Administrator or Class Settlement Counsel, except to the extent permitted by the Court in a proceeding under subparagraph (g)(2) below.

       (2)   <u>Dispute Procedure.</u> Class Settlement Counsel and the SHP Group shall attempt to resolve any disputes raised pursuant to this Paragraph through good faith negotiations. If the dispute cannot be resolved informally, it shall be submitted to binding arbitration. The arbitrator will be

agreed upon by the parties or, if no agreement can be reached, the arbitrator will be selected by the Settlement Court. The arbitrator's decision shall be final and will not be subject to appeal. Defendants shall not be involved in any arbitration pursuant to this Paragraph, and shall have no obligations or liability with respect thereto.

       (h)    SHP Group Reversion Amount Payment. On or before five (5) days after the Effective Date, or within five (5) days of any resolution of a dispute under Paragraph 12(g)(2) above, or within five (5) days after all TPP claims have been processed and the total authorized claim amounts for all Authorized TPP Claimants and SHP Group Members has been finally determined, whichever is later, the parties shall cause the payment of the SHP Group Reversion Amount to be made as follows:

       (1)    If the SHP Group Reversion Amount is calculated by reference to a positive SHPRCP, Class Settlement Counsel shall cause the Escrow Agent to pay from the TPP Settlement Pool and into an account designated by SHP Group Counsel an amount equal to the SHP Group Reversion Amount and SHP Group Counsel may release the SHP Group Escrow to SHP Group Members as provided in the SHP Agreement; or

       (2)    If the SHP Group Reversion Amount is calculated by reference to a negative SHPRCP, SHP Group Counsel shall cause payment to be made from the SHP Group Escrow to the TPP Settlement Pool in an amount equal to the SHP Group Reversion Amount; provided, however, that such

payment shall not exceed the total value of the SHP Group Escrow as of the date of payment of the SHP Group Reversion Amount. In addition to Defendants' right of enforcement, Class Settlement Counsel shall have the right to enforce this provision against the SHP Group.

(3) Under no circumstances shall Defendants be liable for collective payment in excess of the one hundred fifty million dollars ($150,000,000) paid by TAP pursuant to this Class Agreement and the SHP Agreement, regardless of the outcome of any disputes pursuant to Paragraph 12(g)(2) or the calculation of the SHP Group Reversion Amount pursuant to this Paragraph.

(i) <u>Conformance of SHP Agreement with this Class Agreement.</u> Any provisions of this Class Agreement requiring the cooperation of the SHP Group or binding the SHP Group to act shall be set forth as a binding requirement of the SHP Group in the SHP Agreement.

(j) <u>Defendants' Limited Liability</u>. The parties hereto agree that Defendants have no involvement with the resolution of any disputes pursuant to Paragraph 12 of this Class Agreement or Paragraph 11 of the SHP Agreement. Members of the Lupron® Purchaser Class covenant not to sue the Releasees, or any of them, based on any claim or cause of action related to or arising out of a dispute over the allocation of funds under this Class Agreement or the SHP Agreement.

13.    Attorneys' Fees And Fee Disputes.

(a)    Amount of Fees.  Understanding that the award of attorneys' fees is a matter committed to the sole discretion of the Settlement Court, Defendants will not object to Class Counsel's request to the Settlement Court for a reasonable attorneys' fee not to exceed 30% percent of the difference of ninety-five million dollars ($95,000,000) minus the TAP Refund (thus, the formula is .30 x ($95,000,000 - TAP Refund)).  Defendants also will not object to Class Counsel's request to the Settlement Court for an award of reasonable expenses.  Such fees and expenses shall be paid exclusively from the Class Settlement Fund.

(b)    Inclusion of Other Plaintiffs Counsel in Fee Award. Additionally, Class Counsel agree to use their reasonable, good faith efforts to include in the fee award all plaintiff counsel who are currently involved in any Lupron® Pricing Litigation and who timely submit a fee petition to the Settlement Court in order to participate in the settlement process.

(c)    Disputes Over Attorneys' Fees.  In the event of a dispute among Class Counsel (on the one hand) and any other plaintiffs' counsel involved in any pending Lupron® Pricing Litigation and who timely submit a fee petition under Paragraph 13(b) above (on the other hand), over the appropriate allocation of attorneys' fees, Class Counsel agree to resolve any such dispute with such other plaintiffs' counsel through binding arbitration and to allow, under reasonable terms approved by the Settlement Court, any such other

plaintiffs' counsel to participate. Those counsel who participate in any such arbitration shall agree upon the arbitrator, or, if they cannot agree, the arbitrator shall be appointed by the Settlement Court. The decision of the arbitrator will not be subject to appeal. Defendants will not be a party to or have any involvement in any such arbitration, and will have no obligations or liability with respect thereto.

(d) <u>Release of All Claims for Attorneys' Fees</u>. Upon payment pursuant to Paragraph 17(b)(3) of this Class Agreement of the attorneys' fees and expenses as awarded by the Settlement Court, all plaintiffs' counsel who submitted a fee petition to the Settlement Court release and forever discharge any claims, demands, actions, suits, causes of action, or other liabilities relating to any attorneys' fees or expenses incurred in the Lupron® MDL Actions or in any other Lupron® Pricing Litigation up to and including the date of such payment.

14. <u>All Claims Satisfied by Class Settlement Fund</u>. Each Lupron® Purchaser Class Member shall look solely to the Class Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims.

15. <u>Payment of Expenses</u>. The Defendants shall not be liable for any of the expenses of the Lupron® Pricing Litigation, including without limitation attorneys' fees, fees and expenses associated with the provision of notice to the members of the Lupron® Purchaser Class, claims administration, fees and expenses incurred in administering the Escrow Account (as provided in this

Class Agreement or the SHP Agreement), fees and expenses of expert witnesses and consultants, and expenses associated with discovery, motion practice, hearings before the Settlement Court, other courts and appeals, except as provided in Paragraph 20 below. All such fees and expenses as are approved by the Settlement Court shall be paid out of the Class Settlement Fund in accordance with this Class Agreement.

16.    Court Approval of Disbursements and Distributions. Approval by the Settlement Court shall be required prior to any disbursement or any distribution from the Class Settlement Fund, other than for any fees and expenses incurred to administer the Escrow Account, costs associated with Settlement Notice and claims administration, taxes on the Class Settlement Fund, or any TAP Refund.

17.    Disbursements and Distributions from the Class Settlement Fund. The Class Settlement Fund shall be distributed as follows or as otherwise ordered by the Settlement Court:

(a)    Prior to the Effective Date of this Class Agreement:

(1)    Any fees and expenses incurred in administering the Escrow Account shall be paid pursuant to the Escrow Agreement. The costs of Settlement Notice shall be paid by the Escrow Agent to the Claims Administrator at the direction of Class Settlement Counsel, with notice of such payments provided to Defendants. Such fees, expenses and costs referred to in

this Paragraph 17(a)(1) and (b)(1) shall be paid exclusively from the Consumer Settlement Pool, except that the greater of one million dollars ($1,000,000) or the actual costs of notice and claim administration for the TPP Class shall be paid from the TPP Settlement Pool.

(2)     Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Consumer Settlement Pool and/or the TPP Settlement Pool shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement, with notice of such disbursements provided to Class Settlement Counsel and Defendants. Such costs shall be paid ratably from the Consumer Settlement Pool and the TPP Settlement Pool in proportion to the income earned in each such pool; and

(b)     After the Effective Date of this Class Agreement, the Class Settlement Fund shall be distributed as follows:

(1)     First, any remaining fees or expenses incurred in connection with the administration of the Escrow Account shall be paid pursuant to the Escrow Agreement, and to the extent, if any, that the reasonable fees and expenses incurred as part of Settlement Notice and claims administration have not been paid, such fees and expenses shall be distributed to the Claims Administrator by the Escrow Agent with notice of such disbursements provided to Class Settlement Counsel. Such fees, expenses and costs shall be paid from the Consumer Settlement Pool and TPP Settlement Pool as provided in this Paragraph 17(a)(1);

(2)    Second, disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Consumer Settlement Pool and/or the TPP Settlement Pool shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Class Settlement Counsel. Such costs shall be paid ratably from the Consumer Settlement Pool and the TPP Settlement Pool in proportion to the income earned in the two pools;

(3)    Third, any attorneys' fees and litigation expenses awarded by the Settlement Court shall be paid to Class Settlement Counsel for distribution to all plaintiff counsel who are included in the fee award by the Settlement Court. Unless otherwise ordered by the Settlement Court, such attorneys' fees and expenses as are awarded by the Settlement Court shall be paid from the Consumer Settlement Pool and the TPP Settlement Pool in proportion to the total of the amounts deposited into the two pools.

(4)    Fourth, any incentive award determined by the Settlement Court for services rendered to the Lupron® Purchaser Class by the Class Representatives or any other named plaintiff in any Lupron® Pricing Litigation shall be distributed to such persons or entities. Defendants shall not object to Class Settlement Counsel's request that such an incentive award be paid. Any incentive award for a TPP shall be paid from the TPP Settlement Pool and any incentive award to a Consumer shall be paid from the Consumer Settlement Pool;

(5) **Fifth**, payment to TAP from the TPP Settlement Pool of the TAP Refund, if any, pursuant to Paragraph 11.

(6) **Sixth**, the Net Consumer Settlement Pool shall be payable to Authorized Consumer Claimants in accordance with a formula proposed in the Motion for Preliminary Approval, or as otherwise directed by the Settlement Court.

(i) Payments from the Net Consumer Settlement Pool to Authorized Consumer Claimants shall be made as promptly as practicable after the Effective Date. If the total of all payments to Authorized Consumer Claimants would exceed the value of the Net Consumer Settlement Pool, then the payments to all Authorized Consumer Claimants shall be reduced pro rata.

(ii) All unclaimed funds remaining in the Net Consumer Settlement Pool shall be distributed in the discretion of the Settlement Court as it deems appropriate. If all or part of any unclaimed funds is distributed to one or more charitable organizations, TAP reserves whatever right it may have to claim any appropriate tax deductions for any such charitable donation(s), and no member of the Consumer Class or the TPP Class or the SHP Group shall have a claim to any such deductions.

(7) **Seventh**, any SHP Group Reversion Amount shall be paid from or to the TPP Settlement Pool as provided in Paragraph 12 above;

(8)      Eighth, the Net TPP Settlement Pool shall be payable to Authorized TPP Claimants ratably according to each Authorized TPP Claimant's percentage of the total allowed claims of all Authorized TPP Claimants, or as otherwise directed by the Settlement Court.

(9)      Ninth, after computation and any modification pursuant to Paragraph 12(h)(2) of this Class Agreement, the balance of the SHP Group Escrow shall be distributed to the SHP Group Members according to a formula to be agreed upon by the SHP Group.

18.   Releases.

(a)      Upon the Effective Date of this Class Agreement and in accordance with Paragraphs 7 and 8, the Releasees shall be released and forever discharged from any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasor who has not timely excluded themselves from the Lupron® Purchaser Class, whether or not they object to the Class Agreement and whether or not they make a claim upon or participate in the Class Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any Lupron® Pricing Litigation.  All Releasors

CHI-1445245                              36

covenant and agree that they shall not hereafter seek to establish liability against any Releasee based, in whole or in part, on any of the Released Claims.

       (b)     In addition, each Class Member hereby expressly waives and releases, upon the Class Agreement becoming effective, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Class Member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Class Agreement, but each Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Class Agreement becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of this Class Agreement whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Releasees under

§ 17200, *et seq.*, of the California Business and Professions Code, which claims are expressly incorporated into this Paragraph.

19. <u>Preservation of Rights</u>. The parties hereto agree that this Class Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Defendants or of the truth (or by the Plaintiffs of the infirmity) of any of the claims or allegations contained in the various complaints in the Lupron® MDL Actions or any other Lupron® Pricing Litigation; and evidence thereof shall not be discoverable or used directly or indirectly by the Lupron® Purchaser Class or any third party, in any way (except that the provisions of this Class Agreement may be used by the parties to enforce its terms), whether in the Lupron® Pricing Litigation or in any other action or proceeding. The parties expressly reserve all their rights and defenses if this Class Agreement does not become final and effective substantially in accordance with the terms of this Class Agreement.

20. <u>Payments In The Event Of Termination</u>. If this Class Agreement is terminated pursuant to Paragraphs 8 or 25 hereto, or the Effective Date is prevented from occurring for any reason, then (a) the Class Settlement Fund, together with any interest or other income earned thereon, shall be returned to TAP net of (i) taxes paid or due to be paid on the Class Settlement Fund, (ii) the fees and costs paid or incurred for Settlement Notice, and (iii) any fees or costs

paid or incurred for administration of the Escrow Account; (b) the Class Agreement shall be of no force or effect, except for payment of Settlement Notice and fees and costs associated with administration of the Escrow Account; (c) any release pursuant hereto shall be of no force or effect; and (d) Plaintiffs and Defendants jointly shall request that the Settlement Court vacate any order certifying the Lupron® Purchaser Class. The parties expressly reserve all of their rights and defenses if this Class Agreement is terminated or does not become final and effective.

21.    Disposition of the SHP Group Escrow and SHP Group Reversion Amount in the Event of Termination of the Class Agreement After Final Approval. If the Settlement Court's final approval of the Class Agreement is materially altered or reversed on appeal (an "Adverse Appellate Decision") and either Defendants or Class Settlement Counsel exercise the right of termination pursuant to Paragraph 8 of this Class Agreement, then the SHP Group Escrow and SHP Group Reversion Amount shall be distributed as follows:

(a)    if the parties are not able to negotiate amendments to the Class Agreement such that it is approved by the Settlement Court and becomes effective within thirty (30) months after the entry of the Adverse Appellate Decision, then the entire amount of the SHP Group Escrow shall be returned to TAP net of (i) taxes paid or due to be paid on the SHP Group Escrow, and (ii) any fees or costs paid or incurred for administration of the Escrow Account that is established pursuant to Paragraph 5 of the SHP Agreement;

(b)    if the Adverse Appellate Decision is for non-monetary reasons that do not affect the Settlement Amount or the Class Settlement Fund and the Class Agreement is amended, finally approved by the Settlement Court, and becomes effective within thirty (30) months after entry of the Adverse Appellate Decision, then (assuming that the SHP Group Escrow and/or SHP Group Reversion Amount provisions were not modified or reversed on appeal or in subsequent negotiations among Defendants' Counsel, SHP Group Counsel, and Class Settlement Counsel) the SHP Group shall be permitted to participate in the SHP Group Escrow and SHP Group Reversion Amount on terms substantially similar to those provided above in Paragraphs 12 and 17;

(c)    if the Adverse Appellate Decision is for reasons relating to allocation of the Settlement Amount among the Consumer Class Members, TPP Class Members, and the SHP Group, then, as part of any attempted re-negotiation of the Class Agreement, any additional monies required to be allocated to one such group shall reduce the monies allocated to the remaining groups pro rata. In the case of the SHP Group, such monies re-allocated cannot exceed the value of the SHP Group Escrow, including any interest or other income earned thereon. If the Class Agreement is so amended, finally approved by the Settlement Court, and becomes effective within thirty (30) months after entry of the Adverse Appellate Decision, then the SHP Group shall be permitted to participate in the SHP Group Escrow (as adjusted) and SHP Group Reversion Amount (as adjusted) on terms substantially similar to those provided above in Paragraphs 12 and 17.

22.   **Plaintiffs Agree That The Settlement Is Fair And Reasonable and That An Injunction Is Unnecessary**.  Plaintiffs stipulate and agree that the payment of monies pursuant to this Class Agreement constitutes a fair, reasonable, and adequate settlement of all claims Plaintiffs have raised or could raise in any Lupron® Pricing Litigation.  Plaintiffs further stipulate and agree and will jointly with Defendants seek findings from the Settlement Court that further relief, in the form of an injunction against any Defendant or some other equitable relief, is not warranted in light of (i) the requirement that TAP comply with a comprehensive Corporate Integrity Agreement entered into with the United States relating to Lupron®; and (ii) changes to government statutes and regulations as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, that, among other things, changed the pricing and reimbursement approach for Lupron®.

23.   **No Admission**.  Nothing in this Class Agreement or the SHP Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by any Releasee including, without limitation, that any Releasee has engaged in any conduct or practice that violates any federal or state statute or other law.  Neither this Class Agreement, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by any Releasee as to the truth (or by the Plaintiffs as to the

infirmity) of any claim or allegation that Plaintiffs have or could have asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by Releasees. Neither this Class Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith nor the fact of this Settlement, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in connection with the parties' application for approval or enforcement of this Class Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the Lupron® Purchaser Class. This Class Agreement and all of the terms herein constitute compromises and offers to compromise covered by F.R.E. 408. In the event that this Class Agreement is terminated pursuant to Paragraphs 8 or 25, nothing in this Class Agreement or its negotiation may be used as evidence in any action between the parties hereto.

24. <u>Class Certification For Settlement Purposes Only</u>. Defendants conditionally stipulate to certification of the Lupron® Purchaser Class as defined in Paragraph 1 for settlement purposes only, and for the sole purpose of creating that settlement class. Defendants' conditional stipulation is contingent upon the execution by the parties of this Class Agreement and that this Class Agreement is finally approved by the Settlement Court and is not terminated pursuant to this Class Agreement. If the Class Agreement is for any reason not finally approved, or is otherwise terminated, Defendants reserve the right to reassert all of their objections and defenses to certification of any

class for trial purposes, and Plaintiffs will not offer Defendants' conditional stipulation to certification of the Lupron® Purchaser Class as part of this Agreement as any evidence in support of a motion to certify any class for trial purposes.

25.   Stay and Resumption of Proceedings.  The parties to this Class Agreement shall cooperate in promptly seeking a stay of all Lupron® Pricing Litigation pending in any federal or state court.  Defendants may terminate this Class Agreement if all such Lupron® Pricing Litigation is not stayed within forty-five (45) days of entry by the Settlement Court of an order granting preliminary approval of the Class Agreement.  A schedule of all such Lupron® Pricing Litigation is attached hereto as Exhibit D.  The parties agree, subject to approval of the Settlement Court, that all Lupron® MDL Actions, other than proceedings relating to the settlement contemplated herein (including but not limited to providing Notice of the Pendency of this action as a class action), shall be stayed except to the extent discovery is necessary with respect to the amount of Lupron® Purchases or other information regarding Class Opt-Outs, information necessary to effectuate notice to Class Members and for purposes of administering and consummating this Class Agreement.  In the event that this Class Agreement is terminated or the Effective Date is prevented from occurring, all such stayed proceedings will resume in the Lupron® Pricing Litigation in a reasonable manner to be approved by the Settlement Court and/or the presiding federal and state courts before which such actions are pending.

26.  <u>Claims Disputes</u>.  The parties hereby agree that all matters relating to administration of claims under this Class Agreement shall be handled by the Claims Administrator.  The parties further agree that any disputes among TPP Class Members and/or SHP Group Members relating to claims administration or settlement payments will be resolved through binding arbitration before a neutral arbitrator appointed by the parties and approved by the Settlement Court.  Defendants shall have no duties or responsibilities with respect to claims administration or any related arbitration, and shall have no liability with respect thereto.

27.  <u>Consent to Jurisdiction</u>.  Defendants and Plaintiffs hereby irrevocably submit to the exclusive jurisdiction of the Settlement Court only for the specific and very limited purpose of any suit, action, proceeding or dispute arising out of, or relating to, this Class Agreement or the applicability of the Class Agreement other than Claims Disputes, which are provided for in Paragraph 26, and for no other purpose.

28.  <u>Resolution of Disputes: Retention of Jurisdiction</u>.  Except as otherwise provided in this Class Agreement, any disputes between or among Defendants and any Class Members concerning matters contained in this Class Agreement (other than Claims Disputes) shall, if they cannot be resolved by negotiation and agreement, be submitted to the Settlement Court.  The Settlement Court shall retain jurisdiction over the implementation and enforcement of this Class Agreement.

29.     Enforcement of Settlement.  Notwithstanding Paragraph 19 above, this Class Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

30.     Binding Effect.  This Class Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

31.     Authorization to Enter Class Agreement.  The undersigned representatives of Defendants represent that they are fully authorized to enter into and to execute this Class Agreement on behalf of the Defendants.  Class Settlement Counsel represent that they are fully authorized to conduct settlement negotiations with Defense Counsel on behalf of the Plaintiffs and to enter into, and to execute, this Class Agreement on behalf of Plaintiffs, subject to Settlement Court approval pursuant to Fed. R. Civ. P. 23(e).

32.     No Party Is the Drafter.  None of the parties hereto shall be considered to be the drafter of this Class Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

33.     Choice of Law.  All terms of this Class Agreement shall be governed by and interpreted according to the substantive laws of the State of Illinois without regard to its choice of law or conflict of laws principles.

34.    Amendment or Waiver.  This Class Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Class Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Class Agreement.

35.    Execution in Counterparts.  This Class Agreement may be executed in counterparts.  Facsimile signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Class Agreement and filed with the Settlement Court.

36.    Integrated Agreement.  This Class Agreement, including the exhibits hereto and all provisions and terms from the SHP Agreement that are referenced herein, together with the Supplemental Class Agreement and any exhibits thereto, contain an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto, and supercede all prior oral or written agreements and contemporaneous oral agreements among the parties, including but not limited to the *Memorandum of Understanding Relating to Class Action*, dated as of October 11, 2004.

37.    Construction.  This Class Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through

CHI-1445245                                    46

this Class Agreement, for a complete resolution of the Released Claims with respect to the Releasees.

38.    Notices.  All notices and other communications required or permitted under this Class Agreement shall be in writing and delivered in person, by overnight delivery service or by facsimile.  Any such notice shall be deemed given as of the date of receipt and shall be delivered to the parties as follows:

(a)    If To Plaintiffs: Thomas M. Sobol, HAGENS BERMAN LLP, One Main St., 4th Floor, Cambridge, MA 02142 and David Stellings, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, 780 Third Ave., 48th Floor, New York, NY 10023.

(b)    If To Settling Health Plan: J. Hoke Peacock, SUSMAN & GODFREY, 1000 Louisiana, Suite 5100, Houston, TX 77002; Terry Loscalzo, SCHNADER HARRISON SEGAL & LEWIS LLP, 1600 Market St., Suite 3600, Philadelphia, PA 19103-7286; Michael Hefter, DEWEY BALANTINE LLP, 1301 Avenue of the Americas, New York, NY 10019; Richard Cohen, LOWEY DANNENBERG BEMPORAD & SELINGER P.C., The Gateway, One North Lexington Ave., White Plains, NY 10601; and Mark Fischer, RAWLINGS & ASSOCIATES, P.L.L.C., 1700 Waterfront Plaza, 325 W. Main St., Louisville, KY 40201.

(c)    If To Defendants:  James R. Daly, JONES DAY, 77 W. Wacker Dr., Suite 3500, Chicago, IL  60601-1692; Robert R. Stauffer, JENNER & BLOCK

LLP, One IBM Plaza, 42nd Floor, Chicago, IL 60611; and George C. Lombardi, WINSTON & STRAWN LLP, 35 W. Wacker Dr., Chicago, IL 60601.

39.  Severability.  In the event any one or more of the provisions contained in the Class Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision if Defendants and Class Settlement Counsel mutually elect to proceed as if such invalid, illegal or unenforceable provision had never been included in the Class Agreement.

40.  Headings.  The headings to this Class Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Class Agreement.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Class Agreement as of the date first written below.

Dated: November 15, 2004

Assented and agreed by and among:

HAGENS BERMAN LLP

By: _____
Thomas M. Sobol

One Main Street, 4th Floor
Cambridge, MA 02142
*Class Plaintiffs' Liason Counsel*

49

SPECTOR ROSEMAN & KODROFF

By: _____
Jeffrey L. Kodroff

1818 Market Street, Suite 2500
Philadelphia, PA 19103
*Class Co-Lead Counsel*

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

By: _____
    Lisa Mezzetti

1100 New York Avenue, N.W., Suite 500, West Tower
Washington, DC 20005
*Class Co-Lead Counsel*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____
     Joseph Saveri

275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
*Class Co-Lead Counsel*

FOOTE MEYERS  MIELKE AND FLOWERS

By: _____
        Robert Foote

416 South Second Street
Geneva, IL 60134

*Counsel for Goetting*
*Liason Counsel for Coordinated Cases*

JONES DAY

By: _____

Daniel E. Reidy
James R. Daly

77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692

*Counsel for TAP Pharmaceutical Products Inc.*

Case 1:01-cv-12257-PBS   Document 5158-4   Filed 03/21/2008   Page 56 of 57

WINSTON & STRAWN LLP

By: _____
George C. Lombardi
Erik W. Snapp

35 West Wacker Drive
Chicago, IL 60601-9703

*Counsel for Abbott Laboratories*

CHI:1445245

JENNER & BLOCK LLP

By: _____
    Thomas P. Sullivan
    Jeffrey D. Colman

One IBM Plaza
41st Floor
Chicago, IL 60611

*Counsel for Takeda Pharmaceutical Company Limited*