Exhibit F

IN THE CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

THE STATE OF MISSISSIPPI                            PLAINTIFF

v.                                                     CIVIL ACTION NO. G2005-2021

ABBOTT LABORATORIES, INC., ET AL.               DEFENDANTS

---

### REPORT, RECOMMENDATION AND ORDER NO. 2
### OF SPECIAL MASTERS
### **GRANTING BAYER'S MOTION TO DISMISS**

This matter comes before the Special Masters on the motion of Bayer Corporation, Bayer Pharmaceuticals Corporation, and Bayer Healthcare LLC (collectively, "Bayer") to dismiss the Complaint. For the reasons stated below, the Special Masters find, recommend and order that the motion be granted in part.

Plaintiff State of Mississippi alleges that over 80 pharmaceutical company defendants committed Medicaid fraud, common law fraud, mail fraud, deceptive trade practices, false advertising, restraint of trade, and other violations of Mississippi law, by improperly inflating the "average wholesale price" ("AWP") of their products. With few exceptions, the allegations of the Complaint are directed at all defendants collectively. The only specific allegations against Bayer are contained in paragraphs 29-31, which recite the names, addresses, and principal lines of business for the three Bayer defendants.[1]

---

[1] Bayer's name also appears in Exhibit B to the Complaint, which is a Program Memorandum from the federal Health Care Financing Administration, dated September 8, 2000. The Program Memorandum includes AWP data on three Bayer products – Koate, Kogenate, and Gamimune. As discussed below, each of these products is covered by the release and price reporting requirements set forth in the Bayer settlement agreement.

The Complaint does not take into account that Bayer, unlike other defendants, entered into a settlement agreement with the State in 2001.[2] The conduct at issue in the 2001 settlement and the conduct alleged by the Complaint are the same. Specifically, the settlement resolved claims that Bayer "in a manner similar to the practices of certain other manufacturers, knowingly and intentionally engaged in a marketing scheme whereby it set the Average Wholesale Prices ("AWPs") of the Qui Tam Drugs[3] at levels far higher than what the vast majority of its customers actually paid for these products . . . ." (Settlement Agreement, ¶ II.C.i). Likewise, each of the 8 counts of the Complaint is based on alleged false price reporting of AWPs. (Complaint, ¶¶ 172, 178, 181, 184, 187, 189, 193, 197).

The settlement agreement specifically releases Bayer Corporation and "its subsidiaries and affiliates" from "any civil or administrative monetary claim, action, suit or proceeding the State has or may have relating to claims submitted to the State Medicaid Program for the Covered Conduct." (Settlement Agreement, Part III (2 & 3)). In addition, it "fully discharges Bayer from any obligation to pay restitution, damages, and or any fine or penalty to the State for the Covered Conduct." Id.

In addition to the release, the settlement also contains terms requiring Bayer to supply detailed price reports to the State on a quarterly basis. In particular, since 2001, Bayer has been required to report to the State the "average sales price" for

---

[2] The Agreement was signed by the Executive Director of the State's Division of Medicaid on April 4, 2001, by the Director of the State's Medicaid Fraud Control Unit on June 4, 2001, and by Bayer on August 6, 2001.

[3] "Qui Tam Drugs" is defined to include the following Bayer products: Koate-HP, Kogenate, Konyne-80, Gamimune N 5%, Gamimune N 10%, and Thrombate III. (Settlement Agreement, II.C).

- 2 -

every drug that it sells in the United States. (Settlement Agreement, ¶ III(8)). These reports are provided "for the purpose of furnishing the State with true pricing information that accurately reflects the prices at which actual purchasers buy the drug and biological products sold by Bayer." Id. The State makes no allegation in its Complaint that Bayer has failed to provide the State with these quarterly reports of actual sales prices.

In its response to Bayer's motion to dismiss, the State concedes that the Settlement Agreement bars some portion of its claims. It contends, however, that – notwithstanding the settlement – it may still pursue: (1) pre-settlement claims that are based on causes of action other than fraud, (2) pre-settlement claims relating to Bayer products other than the "Qui Tam Drugs," and (3) post-settlement claims relating to all Bayer products. We disagree in part.

First, contrary to the State's assertion, the plain language of the release is not limited to claims based on fraud. Rather, the release covers "any civil or administrative monetary claim, action, suit or proceeding the State has or may have under any source of law for the Covered Conduct." (Settlement Agreement, ¶ III.2). This language plainly requires the dismissal of all claims for pre-settlement conduct pertaining to the six Qui Tam Drugs. See n. 3, above. All claims as to those drugs are dismissed with prejudice.

Second, the State has pleaded no basis for a claim relating to pre-settlement conduct as to products other than the Qui Tam Drugs. The only mention in the Complaint of any Bayer products occurs in Exhibit B, which refers to AWP data on three products – Koate, Kogenate, and Gamimune – each of which is a Qui Tam Drug covered by the release. See n. 1, above. Further, the settlement was preceded by a

- 3 -

broad-based investigation of Bayer led by the federal government and joined by 47 states. (Settlement Agreement, ¶ II.H). Had concerns arisen about price reporting on products other than the six Qui Tam Drugs, we trust that those concerns would have been addressed in the course of the investigation and settlement. In any event, absent any specific allegation of wrongdoing as to non-Qui Tam Drugs, we find no basis for the State's claims relating to the pre-settlement period to proceed at this point. See Harold's Auto Parts, Inc. v. Mangialardi, 889 So.2d 493, 495 (Miss. 2004). If at a later date the State has evidence the comprehensive investigation previously made against Bayer that resulted in the settlement should have included other drugs for the time prior to 2001, the State may bring a new action at that time. All claims for Bayer drugs other than the six Qui Tam drugs prior to 2001 are dismissed without prejudice.

Third, and finally, the State has not pleaded a claim with respect to the post-settlement time period. The settlement requires Bayer to report to the State on a quarterly basis the average sales price for every one of its drugs. (Settlement Agreement, ¶ III(8)). These reports are designed to provide the State with "true pricing information that accurately reflects the prices at which actual purchasers buy the drug and biological products sold by Bayer." Id. Absent any allegation that Bayer has not complied with this requirement, the State's claims – to the extent that they are directed at the post-settlement time period – are moot.[4] Those claims are thus dismissed with prejudice.

---

[4] Bayer has informed the Special Masters that the State has not, since the execution of the Settlement Agreement, raised any concerns regarding Bayer's quarterly price reports or sought any additional information from Bayer. Counsel for the State does not contest this point and, more importantly, the Complaint makes no allegation to the contrary.

WHEREFORE, on the motion to dismiss of Bayer Corporation, Bayer Pharmaceuticals Corporation, and Bayer Healthcare LLC, the Special Masters' Report, Recommend and Order that the motion be granted as set forth herein and that these defendants be dismissed from this action in accordance with this Report, Recommendation and Order.

This the 28th day of July, 2006.

_____
William L. Smith, Esq.
Special Master

_____
Ernest G. Taylor, Esq.
Special Master