UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) )  MDL No. 1456 )  |
| THIS DOCUMENT RELATES TO PROPOSED NATIONWIDE CLASSES 2 AND 3 AS TO ASTRAZENECA AND BMS | ) )  Civil Action No. 01-CV-12257 PBS ) )  Hon. Patti B. Saris |

DEFENDANT BMS'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO CERTIFY NATIONWIDE CLASSES 2 AND 3

Bristol-Myers Squibb Company ("BMS") submits this supplemental memorandum to follow up on some of the questions that arose at the hearing on plaintiffs' motion to certify nationwide classes for Classes 2 and 3 on March 18, 2008.

Knowledge and Unfairness

During the hearing, we noted that a jury is supposed to consider the knowledge of the parties in determining unfairness. In Ahern v. Scholz, 85 F. 3d 774, 798 (1st Cir. 1996), the court held: "In evaluating whether an act or practice is unfair, we assess 'the equities between the parties,' including what both parties knew or should have known."[1]  The other case we referred to during the argument was Davis v. Dawson, Inc., 15 F. Supp. 64, 146 (D. Mass. 1998), where this Court affirmed a decision by Judge Bowler, quoting Ahern.

---

[1] See also, e.g., Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007) ("[T]here [is] no unfairness where, in spite of what they were told, consumers knew the truth regarding the transaction they were entering into." (citing In re Firearm Cases, 126 Cal. App. 4th 959, 979 (Cal. App. 2005)); Balthazar v. Verizon Hawaii, Inc., 123 P.3d 194, 203 (Hawaii 2005) (holding that consumer knowledge of alleged unfair or deceptive practices precluded recovery under Hawaii unfair or deceptive trade practices statute); cf. Vallerie Transp. Service, Inc. v. Texaco, Inc., No. CV86 0083410 S, 1992 WL 32946, at *2 (Conn. Super. Feb. 10, 1992) (denying defendant's motion for summary judgment brought on the theory that conduct could not be "unfair" where plaintiff had knowledge of the circumstances of the alleged "unfairness", where the record reflected disputed evidence as to plaintiff's knowledge).

Expert Discovery

At the hearing on March 18, 2008, counsel for BMS stated that defendants intended to offer evidence of direct purchases by third party payors ("TPPs") nationwide to show knowledge of spreads, and unless plaintiffs called absent class members to testify (thereby demonstrating that class treatment is inappropriate) there would be no basis for the jury to conclude that the decision makers at those TPPs did not have access to that information. This was a major issue in the Massachusetts-only trial. Plaintiffs stated that they would strenuously object to such a showing on the ground that the Court's prior orders precluded additional expert analyses. Unfortunately, the record is not clear on this issue, although there are a number of reasons why defendants should be permitted to offer such evidence.

In Case Management Order ("CMO") No. 13, dated March 10, 2005, the Court set out a schedule for expert reports "[r]egardless of the status of the motion for class certification." (Annexed as Exhibit A.) On August 16, 2005, the Court issued its initial ruling on class certification, certifying a nationwide class for Class 1, but denying "without prejudice" plaintiffs' motion to certify nationwide classes for Classes 2 and 3 and holding that those classes would be limited to Massachusetts. In re Pharmaceutical Industry Average Wholesale Price Litig., 230 F.R.D. 61, 86 (D. Mass. 2005). On November 21, 2005, the Court entered an order amending CMO No. 13 and providing a new schedule for the filing of expert liability reports and the completion of expert depositions -- without specifying whether expert reports should cover a possible, but as yet uncertified, nationwide class, or a Massachusetts only class. (CMO #17, annexed as Exhibit B.)

In his report dated December 15, 2005, plaintiffs' expert, Dr. Raymond S. Hartman, calculated Class 2 and 3 damages on both a Massachusetts and nationwide basis. In

describing his methodology, however, Dr. Hartman explained that it was necessary for him first to calculate nationwide damages in order to estimate Massachusetts damages, which are a percentage of the national calculation. (Declaration of Raymond S. Hartman in Support of Plaintiffs' Claim of Liability and Calculation of Damages, dated Dec. 15, 2005, at 47-48, excerpts annexed as Exhibit C.) Dr. Hartman did not explicitly address whether he intended to file an additional report if and when a nationwide class was certified.

Defendants clearly had an understanding that their expert reports for Classes 2 and 3 would be limited to Massachusetts. For example, in the section of his report on direct purchases by TPPs, Dr. Eric M. Gaier stated: "It is . . . appropriate to focus on the question of what TPPs in Massachusetts knew about the differences between AWP and provider acquisition costs, and in particular on whether they would have gained knowledge through purchases of physician-administered drugs." (Merits Report and Declaration of Eric M. Gaier, Ph.D., dated March 21, 2006, at 45-46, excerpt annexed as Exhibit D.) Dr. Gaier accordingly limited his analysis to entities that did business in Massachusetts, although he included the non-Massachusetts data for those entities in his charts.

Defendants' assumption that there could be additional expert reports was corroborated by the Court's order of May 9, 2007, which provided deadlines for the submission of further expert reports in connection with the Class 1 trial. (Annexed as Exhibit E.) Plaintiffs served a voluminous new report from Dr. Hartman dated May 30, 2007. BMS objected to that report on the grounds that Dr. Hartman purported to offer expert opinions on the history of the Medicare Part B program, when he had previously testified that he was not an expert in that area; Dr. Hartman was offering a new theory for damages; and Dr. Hartman purported to analyze cross-subsidization after the passage of the Medicare Modernization Act ("MMA"), even though

he had previously testified that he had not considered that issue.[2]  [Docket No. 4324.]  The Court never decided the issue because the case settled before trial.

As this brief history demonstrates, defendants interpreted the Court's orders as limiting expert disclosure on Classes 2 and 3 to the Massachusetts class only, and plaintiffs are apparently of the view that additional expert analyses -- indeed, completely new analyses not included in Dr. Hartman's report dated December 15, 2005 -- should be permitted.  The analysis of direct purchases by TPPs nationwide is not even a new analysis because defendants have already produced the data on which the analysis would be based and Dr. Gaier has already described the methodology that he would use to conduct that analysis.  Plaintiffs are not in a position to claim prejudice.

Basic v. Levinson

During the hearing, Mr. Berman invoked the Supreme Court's decision in Basic Inc. v. Levinson, 485 U.S. 224 (1988), as support for plaintiffs' position that knowledge and reliance can be demonstrated through expert testimony.  Basic actually demonstrates the opposite, holding that there can only be a presumption of reliance where the market is efficient.  Id. at 248n. 27.  Otherwise "proof of individualized reliance [would be required] from each member of the proposed plaintiff class [and] effectively would have prevented [plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones."  Id. at 242.

Over the years, the definition of what constitute an efficient market has been refined.  In In re Polymedica Corp. Securities Litig., 432 F. 3d 1, 14 (1st Cir. 2005), the court

---

[2] Plaintiffs' experts were permitted to offer testimony and data analyses on this issue during the first trial even though they had not been disclosed in their reports and plaintiffs' experts testified at their depositions that they had been instructed by counsel not to perform such analyses. (2/28/06 Hartman Dep. Tr. 1055, 1058, 1064-65; 11/21/06 Trial Tr. 47, 50; annexed as Exhibit F.)

4

defined an efficient market as "one in which the market price of the stock fully reflects all publicly available information." (emphasis omitted.) In the companion case of In re Xcelera.com Securities Litigation., 430 F. 3d 503, 507 (1st Cir. 2005), the court noted that "plaintiffs are typically required to prove that they individually relied on a defendants' misrepresentation" and "[r]equiring proof of individual reliance, of course, would effectively preclude securities fraud class actions under Rule 23(b)(3)."

Plaintiffs' expert, Dr. Hartman, has conceded that the market at issue in this case is not an efficient market. (10/7/04 Hartman Dep. Tr. 115; annexed as Exhibit G.)[3] Dr. Hartman has also conceded:

> "I cannot make the statement that no one, no payer, knew that there weren't mega spreads. I, you know, I don't know whether they did or they didn't."

(2/27/06 Hartman Dep. Tr. 796, annexed as Exhibit H.)[4] The market is not efficient because each TPP has individualized knowledge and is able to utilize that knowledge in a variety of ways, including not relying on AWPs, changing the discount below AWPs, providing special pricing mechanisms for drugs that face multi-source competition, and using payment for the drug to cross-subsidize payment for services.[5]

In any case such as this, it is easy for plaintiffs to proffer an expert affidavit offering an opinion on the "average" or "typical" level of knowledge in the market place. That is not sufficient. Unless plaintiffs can show that all market participants have the same level of

---

[3] Also annexed as Exhibit B to the Declaration of Lyndon M. Tretter, dated January 4, 2008. [Docket No. 4979.]
[4] Also annexed as Exhibit 11 to the Supplemental Declaration of Steven M. Edwards, dated March 17, 2008 ("Supp. Edwards Decl."). [Docket No. 5145.]
[5] See generally Supp. Edwards Decl.

knowledge -- such that an ordinary participant "cannot beat the market by taking advantage of unexploited profit opportunities" -- the market is not efficient.[6]

Dated: Boston, Massachusetts
   March 26, 2008

Respectfully submitted,

**DWYER & COLLORA, LLP**
By:  /s/ Thomas E. Dwyer (BBO#139660)
  Thomas E. Dwyer (BBO# 139660)
  Jennifer M. Ryan (BBO#661498)
600 Atlantic Avenue
Boston, MA  02210
Tel:  (617) 371-1000
Fax:  (617) 371-1037
tdwyer@dwyercollora.com
jryan@dwyercollora.com

**HOGAN & HARTSON LLP**

Steven M. Edwards, Esq. (SE 2773)
Lyndon M. Tretter (LT 4031)
Thomas J. Sweeney (TS 6557)
875 Third Avenue
New York, NY  10022
Tel:  (212) 918-3640
Fax:  (212) 918-3100

*Attorneys for Defendants Bristol-Myers Squibb Company, Oncology Therapeutics Network Corporation and Apothecon, Inc.*

---

[6] A number of courts have held that the fraud on the market theory is not even available for markets that do not involve publicly available securities.  Sec. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F. 3d 63, 73 (2nd Cir. 2000).

**CERTIFICATE OF SERVICE**

I, Andrea W. Trento, hereby certify that on March 26, 2008, I have caused true and correct copies of the foregoing Defendant BMS's Supplemental Memorandum in Opposition to Plaintiffs' Motion to Certify Nationwide Classes 2 and 3, with annexed exhibits, to be served on all counsel of record by electronic service, pursuant to Paragraph 11 of the Case Management Order No. 2, by sending a copy to Lexis/Nexis for posting and notification to all parties.

Date:   New York, New York
        March 26, 2008

                                        /s/ Andrea W. Trento
                                        Andrea W. Trento