## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE   LITIGATION | ) ) ) ) ) |
| | ) |
| The State Of Iowa v. Abbott Laboratories, Inc. | ) MDL NO. 1456 ) Civil Action No. 01-12257-PBS ) ) ) Judge Patti B. Saris ) ) ) ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

I.    IOWA ALLEGES THAT IT DID NOT KNOW THE EXTENT OF DEFENDANTS'
FALSE PRICE REPORTING; IOWA'S ALLEGATIONS CONTROL
AT THIS STAGE ..................................................................................................... 4

II.    IOWA HAS ASSERTED A BREACH OF CONTRACT CLAIM ................................... 7

III.    IOWA STATES A CAUSE UNDER THE IOWA CONSUMER FRAUD ACT ............ 10

   A.   Iowa Properly Asserts Its ICFA Claim to Recover State Monies ..................................... 10

   B.   Iowa is a Person ..................................................................................................... 11

   C.   Iowa is a Consumer ................................................................................................ 12

   D.   The ICFA Should be Interpreted Liberally .............................................................. 14

   E.   Iowa and Illinois Case Law Confirm that the State May Recover Money Damages
Under this Statute .................................................................................................. 15

   F.   Particularity under the ICFA ................................................................................. 17

IV.    IOWA STATES A VALID CLAIM FOR COMMON LAW FRAUD ........................... 18

V.    IOWA STATES A CLAIM FOR UNJUST ENRICHMENT .............................................. 21

   A.   Iowa has pled Common Law Unjust Enrichment Claims for AWP and Best Price /
Nominal Price Misconduct .................................................................................... 21

   B.   Particularity of Unjust Enrichment Claims ............................................................ 22

VI.    IOWA'S BEST PRICE CLAIMS ARE NOT BARRED BY THE FILED RATE
DOCTRINE ........................................................................................................... 23

VII.    IOWA ALLEGES FUL CLAIMS .......................................................................... 24

VIII.    IOWA'S CLAIMS SHOULD NOT BE LIMITED TO 1992-1997 .............................. 25

IX.    THERE IS NO BASIS TO DISMISS IOWA'S CLAIMS ON DRUGS
WITH SPREADS OF 30% OR LESS ........................................................................ 26

CONCLUSION .................................................................................................................. 27

## TABLE OF AUTHORITIES

## Cases

*Andrew v. Baird*,
    265 N.W. 170, 175 (Iowa 1936) ........................................ 22

*Ark. La. Gas Co. v. Hall*,
    453 U.S. 571 (1981)......................................................... 26

*Bd. of Educ. v. A, C, & S, Inc.*,
    546 N.E.2d. 580 (Ill. 1989) ........................................ 17, 18

*California ex rel. Ven-A-Care*,
    478 F. Supp. 2d 164 at 172-175 (D. Mass. 2007)............... passim

*Cedar Valley Leasing, Inc. v. Iowa Dept. of Revenue*,
    274 N.W.2d 357 (Iowa 1979) ........................................ 14

*Christy v. Heil*,
    123 N.W.2d 408 (Iowa 1963) ........................................ 22

*County of Stanislaus v. Pac. Gas & Elec. Co.*,
    114 F.3d 858 (9th Cir. 1997) ........................................ 27

*Coyne v. City of Somerville*,
    972 F.2d 440 (1st Cir.1992).............................................. 7

*Davis v. United Air Lines, Inc.*,
    575 F. Supp. 677 (E.D.N.Y. 1983) .................................. 11

*Du Page Aviation Corp. v. Du Page Airport Auth.*
    594 N.E.2d 1334 (Ill. App. Ct. 1992) .............................. 17

*Hairston v. Pacific 10 Conference*,
    101 F.3d 1315 (9th Cir. 1996) ........................................ 10

*In re Lupron Marketing and Sales Practices Litigation*,
    295 F. Supp. 2d 148 (D. Mass. 2003) .............................. 28

*In re Neurontin Marketing and Sales Price Litig.*,
    244 F.R.D. 89 (D. Mass. 2007)........................................ 25

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    321 F. Supp. 2d 187 (D. Mass. 2004) .......................... passim

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   339 F. Supp. 2d 165, 181-182 (D. Mass. 2004) ................................................................ passim

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   No. 01-cv-12257-PBS,  2007 WL 1051642 (D. Mass. April 2, 2007) ............................ passim

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
   498 F. Supp. 2d 402 (D.Mass. 2007) ...................................................................................... 27

*Klamath Water Users Protective Ass'n v. Patterson,*
   204 F.3d 1206 (9th Cir. 1999) ......................................................................................... 9, 10

*Kremer v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ................................................................................................ 10

*Lockard v. Carson*,
   287 N.W.2d 871-878 (Iowa 1980) .................................................................................... 21, 22

*Maniere v. United States*,
   31 F. Cl. 410 (1994) .................................................................................................................. 9

*Massachusetts v. Mylan Labs., Inc.*,
   357 F. Supp. 2d 314 (D. Mass. 2005) ................................................................................ passim

*McGough v. Gabus,*
   526 N.W. 2d 328 (Iowa 1995) ................................................................................................ 22

*Norse v. Henry Holt & Co.*,
   991 F.2d 563 (9th Cir. 1993) ................................................................................................ 10

*People ex rel. Daley v. Datacom Systems Corp.,*
   585 N.E.2d 51 (Ill. 1991) ........................................................................................................ 19

*People ex rel. Hartigan v. E & E Hauling, Inc.*
   153 Ill.2d 473 (Ill. 1992) ......................................................................................................... 18

*Plate v. Scallon,*
   666 N.W.2d 621 (Iowa App. 2003) ......................................................................................... 23

*Roeder v. Alpha Indus., Inc.*,
   814 F.2d 22 (1st Cir.1987) ......................................................................................................... 7

*Rosen v. Board of Medical Examiners of State of Iowa*,
   539 N.W.2d 345 (Iowa 1995) .................................................................................................. 21

*Santiago Hodge v. Parke Davis & Co.,*
  909 F.2d 628 (1st Cir.1990) ........................................................................ 28

*Securitron Magnalock Corp. v. Schnabolk,*
  65 F.3d 256 (2d. Cir. 1995) ........................................................................ 15

*State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.,*
  694 N.W.2d 518 (Iowa 2005) ...................................................................... 16

*State ex rel. Miller v. New Womyn, Inc.,*
  679 N.W.2d 593 (Iowa 2004) ...................................................................... 17

*State ex rel. Miller v. Santa Rosa Sales and Marketing, Inc.,*
  475 N.W.2d 210 (Iowa 1991) ...................................................................... 19

*State ex rel. Turner v. Koscot Interplanetary, Inc.,*
  191 N.W.2d 624 (Iowa 1971) ...................................................................... 16

*State of Iowa, Dep't of Human Sv.s ex rel. Palmer v. Unisys Corp.,*
  637 N.W.2d 142, 154-5 ............................................................................... 25

*State v. Lagomarcino-Grupe Co.,*
  207 Iowa 621, 223 N.W. 512 (Iowa 1929) ................................................. 14

*United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc.,*
  491 F.Supp. 2d 12, 19-20 (D. Mass. 2007) ....................................... passim

*Whitman Realty Grp., Inc. v. Galano,*
  838 N.Y.S.2d 585 (2007) ............................................................................ 25

*Young v. Lepone,*
  305 F.3d 1 (1st Cir.2002) ............................................................................ 28

**Statutes**

42 U.S.C. § 1396r-8 ........................................................................................ 3

Fed. R. Civ. P. 60(b) ...................................................................................... 11

Fed. R. Civ. P. 8(a) .......................................................................................... 3

Fed.R.Civ.P. 12(b)(6) ....................................................................................... 7

Iowa Code § 714.16 .............................................................................. 1, 12, 17

Iowa Code § 316.1 .......................................................................................... 14

Restatement (Second) of Contracts (1979) § 312(2) cmt. A ......................... 9

**Other Authorities**

W. Prosser, Law of Torts 108 at 716 (4th ed. 1971).......................................................................... 22

Webster's Third New International Dictionary 490 (1961) ............................................................ 14

Plaintiff, the State of Iowa, by and through its respective attorneys, submits this memorandum of law in opposition to Certain Defendants' Memorandum of Law In Support of Motion To Dismiss The Complaint[1].  For the reasons set forth below, defendants' motion to dismiss should be denied in its entirety.

## PRELIMINARY STATEMENT

The State of Iowa, ("Iowa") asserts six causes of action arising from defendants' submission of false and inflated prices that serve as the basis for Iowa Medicaid drug reimbursements.  This Court's prior rulings make plain that, with one exception, all of Iowa's claims should be allowed to proceed.

Iowa alleges a violation of Iowa Code § 714.16, the Iowa Consumer Fraud Act ("ICFA"). This Court's rulings on motions to dismiss similar consumer protection claims advanced by Attorneys General and municipalities in the New York County, Montana and Nevada AWP cases make clear that this claim should be permitted to proceed.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-cv-12257-PBS,  2007 WL 1051642, at *17 (D. Mass. April 2, 2007) ("*New York Counties Case*"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 321 F. Supp. 2d 187, 206 (D. Mass. 2004) ("*Pharm. IV/Nevada and Montana*") (Court upheld plaintiffs' AWP and Best Price/Nominal Price Consumer Fraud Claims).

Iowa alleges common law fraud.  This Court's rulings on motions to dismiss similar common law fraud claims advanced by Attorneys General and municipalities in the New York, Florida, and Massachusetts AWP cases make clear that this claim should go forward.  *See New York Counties Case Case*, 2007 WL 1051642, at *12-15 (holding that plaintiffs stated a claim for common law fraud and satisfied Rule 9(b)(6)); *Massachusetts v. Mylan Labs., Inc.*, 357 F. Supp.

---

[1] Citations to the Memorandum Of Law In Support Of Certain Defendants Motion To Dismiss The Complaint appear as "Def. Mem. at ____"

2d 314 at 321-323 (D. Mass. 2005) ("*Mass. Mylan Labs.*"); *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc.*, 491 F.Supp. 2d 12, 19-20 (D. Mass. 2007) ("*US/Ven-A-Care*").

 Iowa alleges unjust enrichment.  This court's rulings on motions to dismiss similar unjust enrichment claims advanced by Attorneys General and municipalities in the Suffolk County, New York County, Massachusetts and US DOJ AWP case make clear that this claim should go forward.  *See US/Ven-A-Care* 491 F. Supp. 2d at 19-20 (denying defendants' motion to dismiss unjust enrichment claims based on AWP relying on the court's ruling in *Mass. Mylan Labs.*); *Mass. Mylan Labs.*, 357 F. Supp. 2d at 323-324 (holding that Massachusetts can maintain its unjust enrichment claim, reasoning that it "will not force plaintiff to choose its remedy at this stage of the litigation."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 339 F. Supp. 2d 165, 181-182 (D. Mass. 2004) ("*Suffolk I*") (Suffolk County's plaintiff's Best Price claims survive under an unjust enrichment theory); *New York Counties Case*, 2007 WL 1051642, at *9-10 (denying defendants' motion to dismiss New York Counties' unjust enrichment claims).

 Iowa alleges a breach of contract claim based on its status as an express and intended third party beneficiary of the Federal Medicaid Rebate Agreement, 42 U.S.C. § 1396r-8.  This court's ruling in *Mass. Mylan Labs.*, 357 F. Supp. 2d at 329 and the court's analysis of particularity in the *New York Counties Case,* 2007 WL 1051642, at *16-17, makes plain that this claim should also go forward.

 Iowa alleges its claims with particularity sufficient to withstand Fed. R. Civ. P. 8(a) and 9(b) scrutiny.  For each defendant and drug at issue, Iowa has alleged a fraudulent spread of greater than the 20-25% mark up between WAC and AWP. This court's prior rulings in the NY County, California, Montana and Nevada AWP cases all confirm that such allegations are

sufficiently particular to survive a motion to dismiss.  *See US/Ven-A-Care*, 491 F. Supp. 2d at 19-20; *California ex rel. Ven-A-Care,* 478 F. Supp. 2d 164, 171-172 (D. Mass. 2007) ("California/Ven-A-Care"); *see New York Counties Case,* 2007 WL 1051642, at *14-17; *see Pharm. IV/Nevada and Montana*, 321 F. Supp. 2d at 207-208.

Iowa alleges failure to report Best Price and abuse of the Nominal Price Exception.  This court's rulings in the New York County AWP case make clear that this claim should go forward as to certain defendants and for certain drugs.  *See New York Counties Case*, 2007 WL 1051642, at *16-17.

Iowa also alleges a private right of action under the Federal Medicaid Rebate Agreement.  Iowa acknowledges that this Court has previously ruled that there is no private right of action under this Statute.  *See Mass. Mylan Labs.*, 357 F. Supp. 2d at 326;  *See also NY Counties Case,* 2007 WL 1051642, at *4.  Iowa will not re-litigate the point but preserves the issue for appeal.

Defendants response to the above is two-fold.  First, and contrary to the pleadings, defendants argue that Iowa has knowledge of AWP inflation and that this knowledge defeats Iowa's claims *See* Def. Mem. at 1, *et seq..*  This fact-intensive argument has been repeatedly rejected by this Court at the motion to dismiss stage.  Indeed, in every single Medicaid case pending in this MDL, this Court has ruled that arguments regarding government knowledge are insufficient to defeat claims at the pleading stage. *See* Point I, *infra.*

Next, defendants argue that Iowa "fails to plead adequately each of its causes of action, and that "the Complaint lacks the particularity required by FRCP 8(a) and 9(b)."  Def. Mem. at 1-2.  As stated above and set forth in more detail below at points II through IX, the prior rulings of this Court and Iowa law firmly establish that Iowa has stated its claims.

Defendants' motion to dismiss should be denied.

## ARGUMENT

**I.     IOWA ALLEGES THAT IT DID NOT KNOW THE EXTENT OF
DEFENDANTS' FALSE PRICE REPORTING; IOWA'S ALLEGATIONS
CONTROL AT THIS STAGE**

This Court repeatedly has held that dismissal based on arguments of government
knowledge is inappropriate at the motion to dismiss stage, particularly when the plaintiff alleges
a lack of awareness of the extent of the difference between the published and actual prices, as
Iowa has done.  *See* Complaint, *Iowa v. Abbott Labs., Inc.*, No. 01-cv-12257-PBS, at ¶¶ 133-145,
617, 625 (D. Mass. Oct. 9, 2007).[2]   In the California AWP case, defendants made similar
evidentiary arguments concerning government knowledge as defendants have advanced here.
Defendants sought to introduce the same OIG reports and alleged reports of actual acquisition
costs as what appears at pages 6-8 and 9-12 of defendants' instant brief.  *See California/Ven-A-
Care, 478 F. Supp. 2d* at 174-5.

The Court denied defendants' motion to dismiss the California action.   *See
California/Ven-A-Care*, 478 F. Supp. 2d at 172-174, ("As California alleges it did not know the
extent of false drug prices, or approve them, dismissal is inappropriate".)  And so the Court has
done in every other AWP case filed by any State or local Medicaid payor.  *See, e.g., US/Ven-A-
Care*, 491 F. Supp. 2d at 19 ("DENIES the motion to dismiss based on the government's
knowledge of the fraud."); *Pharm. IV/Nevada and Montana*, 321 F. Supp. 2d at 206 (D. Mass.
2004) ("Defendants assertions regarding government knowledge of AWP spreads] … [viewed in
light of plaintiff's allegation that] they had no notice of the extent of the spread, … present issues
to be presented to a fact-finder, not to be decided at the motion to dismiss phase... With a fuller
record, including many of the documents cited by defendants, the Court will revisit the issue at

---

[2] Citations to the Complaint, *Iowa v. Abbott Labs., Inc*., No. 01-cv-12257-PBS (D. Mass. Oct. 9, 2007) appear as
"Complaint at ¶____"

4

summary judgment."); *Mass. Mylan Labs.*, 357 F. Supp. 2d at 322-323 (Holding that "[t]he reasonableness of any reliance [by the government on reported prices] is best left to a summary judgment record."); *Suffolk I,* 339 F. Supp. 2d at 180 (Holding that a motion to dismiss a common law fraud claim on the grounds that the government was aware of the fraud was "inappropriate for resolution at this stage.").

The Court should rule likewise here.  Iowa specifically has pleaded that while it was aware of the existence of a modest spread, Iowa was not aware of the extent to which AWP or FUL spreads were inflated or why such inflation existed.  *See*, for example, Complaint at ¶¶133-145, describing generally how defendants conceal provider AACs;  *Id.* at ¶143, noting that despite government investigations as early as the 1990s, it has only recently become clear that the extent of AWP inflation was understated; *Id.* at ¶134 noting that states rely on published AWPs, WACs and WAC equivalents because of the lack of alternative pricing data;  *Id.* at ¶135 noting that manufacturers made sure prices reported to CMS would not be disclosed to the states; *Id.* at ¶144 noting that untethered price reporting manipulation has rendered state EAC formulas futile; *Id.* at ¶617 noting defendants' fraudulent concealment of true AACs; and *Id.* at ¶625 noting defendants concealing rebate information from states.

Defendants' fact intensive and conclusory knowledge arguments improperly ignore the foregoing allegations and the Court's prior rulings. *See* Def. Mem. at 5-8 and 9-13.  Defendants also completely ignore the proper standards of review on a motion to dismiss.  These standards state that for purposes of defendants' motion to dismiss under Rule 12(b)(6), the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *See New York Counties Case*, 2007 WL 1051642, at *3, citing *Coyne v. City of Somerville*, 972 F.2d 440, 442-43 (1st Cir.1992).   Under these standards, a

complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Id., citing Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987).

Defendants' motion is written nearly in defiance of the requirement that every reasonable inference be granted to plaintiff. Indeed, defendants' knowledge argument suggests that these inferences should be granted in defendants' favor, despite clear law to the contrary. Defendants make no mention of the fact that plaintiffs allegations control at this stage, or that the Court has repeatedly rejected this approach. *See New York Counties, 2007 WL 1051642* at *3. *See also California/Ven-A-Care.*, 478 F. Supp. 2d at 172-174; *US/Ven-A-Care*, 491 F. Supp. 2d at 19; *Pharm. IV/Nevada and Montana*, 321 F. Supp. 2d at 206; *Mass. Mylan Labs.*, 357 F. Supp. 2d at 322-323; *Suffolk I*, 339 F. Supp. 2d at 180.

In addition, defendants attempt to justify dismissal is based on certain of this Court's Findings of Fact and Conclusions of Law from the MDL Class Trial. *See* Def. Mem. at 11-12. Defendants know full well that neither Medicaid nor government knowledge nor Iowa's knowledge were issues before the Court in that trial. Indeed, during oral argument on defendants' Motion to Dismiss the New York Counties First Amended Consolidated Complaint, the Court expressly acknowledged that Dr. Hartman had not offered an opinion on the "knowledge or expectations of Medicaid and Medicare payors" and that his opinion would therefore not apply in the Medicaid context. *See* Transcript of Motion Hearing at 18-19, Document No. 4519 (D. Mass. Jul. 26, 2007), lines 19-25 and 1-6 respectively. Defendants' arguments regarding the preclusive effect of Court's Findings from the MDL class trial should be ignored entirely. At most, defendants have raised issues of fact to be resolved on a complete record.

6

## II.   IOWA HAS ASSERTED A BREACH OF CONTRACT CLAIM

Defendants concede, as they must, that this Court has already ruled that the State has an enforceable right to sue manufacturers under the Medicaid Rebate Agreement. *See* Def. Mem. at 15 (referencing *Mass. Mylan Labs.*, 357 F. Supp. 2d at 329).  This issue should receive identical treatment here, as Massachusetts and Iowa are both express third-party beneficiaries to that agreement.  Defendants' brief provides no basis for the Court to revisit these prior rulings. Defendants' motion to dismiss this claim should be denied.

In *Mass. Mylan Labs.*, this Court denied defendants' motion to dismiss the Commonwealth of Massachusetts' breach of contract claim based on the Medicaid Rebate Agreements.  The Court held that Massachusetts was entitled to sue manufacturers under this agreement because Massachusetts was an express third-party beneficiary to it. *See Mass. Mylan Labs.,* 357 F. Supp. 2d at 329.[3]

Defendants argue, in effect, that this Court should reconsider its prior ruling and apply a more stringent standard that defendants say is applicable to governments and government agencies.  The argument is unavailing and defendants' authorities actually support plaintiffs' view.[4]

---

[3]The Court held that "the crux of third-party beneficiary analysis is the intent of the parties," *id*. *Mass. Mylan Labs.,* 357 F. Supp. 2d at 326,  and the Medicaid Rebate Statute demonstrates "a clear intent to confer a special benefit on a discrete class that includes Massachusetts."  *Id*. at 327.

[4] Defendants' attempt to rely on *Maniere v. United States*, 31 F. Cl. 410 (1994) is particularly odd.  That court held that "to entitle one to sue as a third-party beneficiary of a contract to which he is not a party, the contract must reflect the intent not merely to benefit the third-party but also to give him the direct right to compensation *or* to enforce that right against the promisor."  *Maniere* 31 F. Cl. at 417 (emphasis added).  First, this Court has already held the Rebate Agreement is clearly intended to benefit the states.  *See Mass. Mylan Labs.* 357 F. Supp. 2d at 327. Second, it is well-settled  that intended beneficiaries may enforce a contract.  *Id*. at 326.  Finally, even if this Court did not find that the contract provides Iowa with the right to enforce the contract, the Rebate Agreement gives them "the direct right to compensation."  *See* Rebate Agreement Section II *et seq.*

First, this Court was well aware of the fact that the Massachusetts Medicaid is a government agency when it upheld the Commonwealth's right to sue as third party beneficiaries of the Medicaid Rebate Agreements.

Second, defendants' argument is based on cases concerned with protecting the government from lawsuits by *incidental* beneficiaries, rather than *intended* beneficiaries. Members of the public frequently benefit from government contracts, but they are not entitled to sue under them.  "'Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.'" *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), (*citing* the Restatement (Second) of Contracts (1979) § 312(2) cmt. A.). The *Klamath* court distinguished between "intended beneficiaries," who may enforce a contract, and "incidental beneficiaries," who may not: "A promisor owes a duty of performance to any intended beneficiary of the promise, and '*the intended beneficiary may enforce the duty*,' Restatement § 304, whereas an incidental beneficiary acquires 'no right against the promisor or promisee.'  *Id.* § 315."  *Klamath* 204 F.3d at 1211, n., 9 (emphasis added).  The court continued:  "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."  *Id.*  at 1211 (*citing* Restatement § 312(2)).[5]

---

[5] Defendants' "authority" *Kremer v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) relies on the *Klamath* decision, discussed above. Defendants attempt to rely on *Kremer* to support their argument that a more stringent test should herein apply. In *Kremer*, the court ruled that a man who had received an internet domain name from the company that had contracted with the government to provide the domain names had no cause of action as a third-party beneficiary when the company inadvertently transferred his domain name to another person. However, any fair read of *Kremer* reveals that the court took the language from *Klamath* out of context. The *Klamath* court did not establish a second prong to the third-party beneficiary test. To the contrary, the *Klamath* court found that plaintiffs were not beneficiaries of the contract at all. *Klamath* 204 F.3d at 1206. The contract was between the government and a power company (Copco) that managed the water level of a dam, and the plaintiffs (the Irrigators) used the land irrigated by the dam.  *Id.* at 1209.  After reviewing the contract, the *Klamath* court concluded:

The implication is clear.  An *incidental* beneficiary cannot enforce a contract absent a clear intent to the contrary.

Iowa is not an "incidental" beneficiary, however.  The Rebate Agreement is between the Secretary of Health and Human Services and the Manufacturer *on behalf of the states*.  The first sentence of the Model Rebate Agreement reads: "The Secretary, *on behalf of* the Department of Health and Human Services *and all States* and the District of Columbia . . ." *See* Model Rebate Agreement at 1 (emphasis added).  The states are not merely intended beneficiaries, they are the *only* beneficiaries.  Permitting Iowa to sue manufacturers as a third-party beneficiary of the Rebate Agreement does not contravene the principles outlined in defendants' own cases.

---

The plain language of the Contract is sufficient to rebut the contention that the Irrigators are intended third-party beneficiaries. Neither Article 2 nor Article 6 illustrates an intention of Copco or the United States to grant the Irrigators enforceable rights. The Irrigators argue that the language of Article 2 contains such an intention because it allows Copco to go below the minimum elevation level only 'in order to protect the irrigation and reclamation requirements of Project Land.' This sentence, however, does not manifest an intention to give third-party beneficiary rights to the Irrigators; rather, it grants discretion to the United States, through the person of the Contracting Officer, to enforce the Contract by taking control of the Dam.

The Irrigators also invoke Article 6 to prove their intended beneficiary status. They rely on the phrase stating that Copco may not use water 'when it may be needed or required by the United States or any irrigation or drainage district, person, or association obtaining water from the United States for use for domestic, municipal, and irrigation purposes on Project Land.'  This phrase, however, simply preserves the United States' ultimate control over the Dam and its operations. It does not confer rights on the Irrigators. *See Norse v. Henry Holt & Co.*, 991 F.2d 563, 568 (9th Cir. 1993) (holding that contract provisions preventing interference with existing rights do not turn holders of such rights into third-party beneficiaries).

"Additionally, the recitation of constituencies whose interest bear on a government contract does not grant these incidental beneficiaries enforceable rights. Vague, hortatory pronouncements in the Contract, by themselves, are insufficient to support the Irrigators' claims that the United States and Copco intended to assume a direct contractual obligation to every domestic, municipal, or irrigation water user. *See Hairston v. Pacific 10 Conference*, 101 F.3d 1315, 1320 (9th Cir. 1996).

"Examination of the contract as a whole illustrates that it was intended to benefit only the contracting parties."  *Klamath* 204 F.3d at 1211-12.

Third, defendants are rehashing previously rejected arguments[6] and offer no persuasive rationale why the Court's *Mass. Mylan Labs.* ruling should be reconsidered.  In order for a court to reconsider a prior ruling or order, it must meet the exacting standards of Fed. R. Civ. P. 60(b). Fed. R. Civ. P. 60(b) provides that: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Defendants have satisfied none of the standards.  This prong of their motion must be denied.

## III.   IOWA STATES A CAUSE UNDER THE IOWA CONSUMER FRAUD ACT

### A.  Iowa Properly Asserts Its ICFA Claim to Recover State Monies

It is entirely unremarkable that the Iowa Attorney General would assert a cause under Iowa Code, § 714.16, the Iowa Consumer Fraud Act ("ICFA"). The ICFA provides, in relevant part,

> A civil action pursuant to this section shall be by equitable proceedings.  If it appears to the attorney general that a person has engaged in, is engaging in or is about to engage in a practice declared to be unlawful by this section, the attorney general may seek and obtain in any action in a district court a temporary restraining order, preliminary injunction or permanent injunction prohibiting the person from continuing the practice or engaging in the practice or doing an act in furtherance of the practice.  The court may make orders or judgments as necessary to restore to any person in interest any

---

[6] For example, Defendants again cite *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677 (E.D.N.Y. 1983).  This Court already considered *Davis* in the *Mass. Mylan Labs* decision.  There, this Court ruled that Massachusetts had stated a claim to sue manufacturers under the Medicaid Rebate Agreement.  *See Mass. Mylan Labs.*, 327-9.  There is no reason for the Court to revisit this issue.

> moneys or property, real or personal, which have been acquired by means of a practice declared to be unlawful by this section, including the appointment of a receiver in cases of substantial and willful violation of this section.

Iowa Code § 714.16(7)(2007)

And yet, defendants make the remarkable – and entirely unsupported – argument that "Iowa and its agencies are not 'persons' under the [I]CFA, so Iowa cannot bring a claim." Def. Mem. at 17, *et seq*. Defendants are entirely mistaken for numerous reasons. First, a plain read of the provision cited above makes clear that the Attorney General can assert this cause. The very first sentence provides that "[i]f it appears to the attorney general that a person has engaged in, is engaging in or is about to engage in a practice declared to be unlawful by this section, the attorney general may seek and obtain in any action in a district court" an order prohibiting the practice, or other relief.

Defendants' argument therefore, at its best, must be confined to the question whether the Attorney General can assert this cause not merely for injunctive or declaratory relief, but also to return monies to the state. In other words, is the State a "person in interest" to whom monies can be restored? The only reasonable answer to this question is "yes". Defendants conclude otherwise only by (a) mis-reading the ICFA, (b) ignoring the definition of person in the Iowa Code; (c) ignoring the decades of case law requiring liberal interpretation of the ICFA and its definitions; and (d) ignoring the Iowa and Illinois case law which makes clear the right of the Attorney General to assert this claim when seeking the return of monies to the State as a result of fraudulent and deceptive conduct.

**B.      Iowa is a Person**

Iowa Code § 4.1(20), which defendants cite, expressly states that

> *Unless otherwise provided by law, "person" means* individual, corporation, limited liability company, *government or government subdivision or agency*, business trust, estate, trust, partnership or association, or any other legal entity.

(emphasis added).

Defendants acknowledge this definition , as they must.  But they go on to argue that this definition is trumped by the definition of person in the IFCA itself.  That definition provides:

> "The term "person" ***includes*** any natural person or the person's legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof."

*See* Iowa Code  § 714.16(1)(j).

What defendants conveniently overlook is that the ICFA provides that the word "person" ***includes*** various types of persons.  It does not ***exclude*** any other types of persons, including for example, the types of person contained in the more general Provision 4.1(20) cited above.  In fact, the ICFA clearly is meant to expand the definition of who is a person.   It adds, not subtracts, different types of persons to the more general definition copied above.

The Iowa legislature certainly knows how to restrict (as opposed to broaden) definitions when it wants to.  And it is indisputable that the legislature did not so restrict "person" in the ICFA.   *See e.g.*, Iowa Code § 316.1 which defines person as follows- "'Person' ***means*** [not "includes"] any individual, partnership, corporation or association."

### C.  Iowa is a Consumer

Defendants claim without any authority whatsoever that Iowa cannot bring a claim under the ICFA because Iowa is not a consumer.  But the ICFA does not provide that causes may only be asserted by consumers.  Rather, the ICFA requires that the alleged wrong be consumer-oriented.  This court has already ruled that the types of wrongs undergirding Iowa's Complaint

are consumer-oriented.  *See New York Counties Case*, 2007 WL 1051642, at \*7.  Moreover, even if the ICFA did expressly provide that it could only be invoked by "consumers," the term "consumer" is not defined by the ICFA.  Consumer is defined elsewhere in Iowa law, however, and those definitions are expansive and would include Iowa Medicaid.  *See e.g.*, *Cedar Valley Leasing, Inc. v. Iowa Dept. of Revenue*, 274 N.W.2d 357, 360 (Iowa 1979), (the Court defined consumer as "one that utilizes economic goods", citing Webster's Third New International Dictionary 490 (1961)); *State v. Lagomarcino-Grupe Co.*, 207 Iowa 621, 223 N.W. 512, 513 (Iowa 1929) (The Court defining "consumer" in the context of a criminal tax code as "[o]ne who uses (economic) goods and so diminishes or destroys their utilities . . . ."  (citing Webster's International Dictionary)).

Defendants argue for a narrower reading of the term consumer (Def. Mem. at 20) based on Illinois law and the UCC, but neither of these definitions are controlling here and, even if they were, they would support plaintiff's position as set forth in more detail below.  In short, n*othing* in the ICFA or defendants' brief supports a more restrictive reading of the term "consumer."

It is worth noting that this Court denied defendants' motion to dismiss a similar consumer fraud claim in the New York County AWP Litigation.  In *New York Counties Case*, 2007 WL 1051642, at \*7, defendants argued that the Counties were not consumers.  The Court rejected the argument and held that the County plaintiffs had adequately alleged that defendants' price reporting was "materially misleading and 'consumer-oriented.'" *Id*. (*citing Suffolk I*, 339 F. Supp. 2d at 182). Further, the Court held that plaintiffs' allegations established that defendants' misconduct caused harm to consumers and to Government agencies and therefore harmed the public interest.  *See Suffolk I*, 339 F. Supp. 2d at 182-183.    That is precisely what Iowa has alleged here and, moreover, it is well settled that harm to public agencies impacts the public

interest.  *See Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d. Cir. 1995) (harm to public interest established by "interfer[ence] with [public safety agency's] decision-making process" and distraction of agency by false reports).

### D.  The ICFA Should be Interpreted Liberally

Defendants' argument rests on a narrow statutory interpretation of the terms "person" and "consumer" in the ICFA that is entirely at odds with the Iowa Supreme Court's expansive interpretation in general of the ICFA and these phrases in particular. The Iowa Supreme Courts has supported a broad interpretation of the ICFA for decades. For example, in *State ex rel. Turner v. Koscot Interplanetary, Inc.,* 191 N.W.2d 624, 630 (Iowa 1971), the court held that the ICFA "will be accorded a liberal interpretation."  More recently, in *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.,* 694 N.W.2d 518, 526 (Iowa 2005), the court reaffirmed this holding, stating that

> The definitions presented in the Iowa Consumer Fraud Act are broad and comprehensive in order to effect the wide application of the Act... These broad general definitional guidelines ensure the application of the Act in a wide variety of circumstances… [because] [i]t is impossible to frame definitions which embrace all unfair practices.

*Id.* at 525 (internal citations omitted).

In response to a direct challenge to whether the seller-defendant therein was a "person", the *Cutty* court held

> The definitions presented in the Iowa Consumer Fraud Act are broad and comprehensive in order to effect the wide application of the Act.... These broad general definitional guidelines ensure the application of the Act in a wide variety of circumstances….. The term "person" is a general one that is not on its face limited to sellers, and **we see no reason to read such a limitation into the statute**….. We will not write in such a requirement; again, to do so would …**conflict with the liberal interpretation we must give the statute.**

*See id*. at 526-531 ( emphasis added).

Additionally, Iowa Courts have specifically held that this liberal interpretation should be applied to the words "person" and "consumer". In *State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593 (Iowa 2004), the court upheld a broad, expansive interpretation of the ICFA in upholding a lower court opinion that granted restitution to consumers who were not Iowa residents.  The defendants challenged that decision, stating that non-residents were not included in the CFA's definition of "person".  The Iowa Supreme Court upheld the lower court decision, holding that

> The consumer fraud statute is not limited to residents of Iowa; in fact, it suggests the contrary. It provides that in a consumer-fraud action the court "may make orders or judgments as necessary ... to restore to any person in interest" the money they have lost. … The statute, in turn, defines **"person" broadly**…We conclude that our civil fraud statute provides for restitution on behalf of **all consumers**. . . .

*Id*. at 597 (*citing* Iowa Code § 714.16(7)).

### E.  Iowa and Illinois Case Law Confirm that the State May Recover Money Damages Under this Statute

Defendants correctly point out that the Iowa Consumer Fraud Act was patterned on the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA").  Def. Mem. at 19. Defendants incorrectly state, however, that the CFDBPA does not recognize governmental agencies as persons.  *Id*. at 20.   Defendants are completely wrong and their authorities are inapposite or not controlling.  For example, defendants cite *Bd. of Educ. v. A, C, & S, Inc*., 546 N.E.2d. 580 (Ill. 1989), for the proposition that the government is not included in the definition of "person" and therefore cannot bring an action under the CFDBPA.[7]  Def. Mem. At 20.  But

---

[7]  Defendants also cite *Du Page Aviation Corp. v. Du Page Airport Auth.* 594 N.E.2d 1334, 1342 (Ill. App. Ct. 1992) for the related proposition that the Du Page Airport Authority is a municipal corporation and therefore not a person "under the in the [Illinois CFDBPA], and  therefore not subject to suit [AS A DEFENDANT] under the

*AC&S* does not concern actions brought by the Illinois Attorney General, as explained by the ruling in *People ex rel. Hartigan v. E & E Hauling, Inc.* 153 Ill.2d 473 (Ill. 1992).

In *E&E Hauling*, the state sued public contractors based on their alleged misrepresentations and illegal dumping of material removed from construction sites. The contractors were working for the "Metropolitan Fair and Exposition Authority (the Authority) for construction of the McCormick Place Annex." *Id.* at 480. In that case, defendants alleged the complaint fails to state a cause of action under the Act because it failed to allege any harm to consumers. *Id.* at 486. The Court rejected this argument, distinguishing between the requirements for a consumer, a generic government agency, and the Attorney General to bring suit under the Illinois CFA. *Id at 487.* The Court stated that

> with respect to the Attorney General's standing to bring this action, A, C & S is not controlling. 'A person's status as a consumer relates to his or her standing to sue as an individual under the Consumer Fraud Act,' but is irrelevant to the Attorney General's standing to bring a suit....The Attorney General's standing to assert a claim under the Act comes from section 7 (Ill.Rev.Stat.1987, ch. 121 1/2, par. 267) which provides in pertinent part at § 7. Whenever the Attorney General or a State's Attorney has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by * * * this Act to be unlawful, and that proceedings would be in the public interest, he or she may bring an action in the name of the People of the State against such person…

*Id.*

The Court thus held that "Under section 7, the Attorney General is not limited in regard to whose interests he may seek to protect under the Act." *Id.*

Similarly, in *People ex rel. Daley v. Datacom Systems Corp.,* 585 N.E.2d 51 (Ill. 1991), the Illinois Attorney General asserted a claim on behalf of individuals owing fines to the City of Chicago for parking violations. Although the alleged parking violators were not consumers, the court concluded that the Attorney General could bring a claim under the Act. *Id.* at 64-5.

---

Act"). This case is doubly inapplicable, as (a) it has nothing to do with the Attorney General's standing, see *EE Hauling, infra* and (b) the Attorney General of Iowa is not a defendant in this case.

And of course, in addition to the foregoing, the Illinois Attorney General has filed an AWP case against most if not all of the same defendants as are named here and has, in that suit, asserted a CFDBA cause.[8]

To the extent the ICFA consumer protection act tracks Illinois CFDPA, as defendants state, these Illinois rulings are persuasive and support plaintiff's view. In addition, the Iowa Supreme Court has contemplated exactly the type of recoveries that the defendants claim are prohibited by the ICFA's definition of person, i.e. civil consumer fraud actions brought by the Attorney General to recover damages that are returned to the state or to state agencies. In *State ex rel. Miller v. Santa Rosa Sales and Marketing, Inc.*, 475 N.W.2d 210 (Iowa 1991), the Iowa Supreme Court held that the state was precluded from recovering damages in cases where the litigation was entered into on behalf of consumers damaged by the challenged practice. However, the *Santa Rosa* court went on to say that recovery of damages by the state on behalf of itself in a consumer fraud action would be appropriate in certain circumstances. *Id.* at 219. Thus, in denying recovery to Iowa in the *Santa Rosa* matter itself, the Court's analysis recognizes the right of Iowa to seek damages on behalf of the state under the ICFA. This recognition, when combined with the statutory scheme described above, confirms that the Iowa Attorney General may properly bring this claim for money damages.

### F.   Particularity under the ICFA

Defendants also argue that Iowa's ICFA claims are not alleged with sufficient particularity. This argument fails as well. The Iowa complaint sets forth, for each defendant and each drug at issue, the allegedly fraudulent reported price, a good faith estimate of what the true AAC for that drug was and a spread of 25% or greater. *See* Exhibit B to Complaint. This Court has previously ruled that such allegations satisfy Fed. R. Civ. P. 9(b). *See, e.g. New York*

---

[8] Oral Argument on Defendants' Motion to Dismiss is set for April 11th, 2008.

*Counties Case*, 2007 WL 1051642, at \*14-15**.** Defendants present no meaningful argument why a different ruling should issue here.  Iowa has pleaded particular spreads of 25% and greater for particular drugs.  *See* Complaint at ¶18**.**  Defendants' motion to dismiss this cause for lack of particularity, and all other reasons, should be denied.

## IV.   IOWA STATES A VALID CLAIM FOR COMMON LAW FRAUD

This Court has denied defendants' motions to dismiss claims of common law fraud in multiple instances in this MDL.  The Court should similarly deny defendants' motion to dismiss Iowa's claim.  *See New York Counties Case*, 2007 WL 1051642, at \*12-14; *US/Ven-A-Care*, 491 F. Supp. 2d at 19; *Mass. Mylan Labs.*, 357 F. Supp. 2d at 322.

The New York Counties Opinion cited above is particularly relevant given that it concerns pleadings similar to those set forth in the instant Complaint, and given that the elements for a Common Law Fraud claim are identical in New York and Iowa.[9]

In the *New York Counties* Opinion this Court denied defendants' motion to dismiss similar AWP Common Law Fraud claims as sufficiently particular, *see Id.* at \*15 ("for those drugs listed in the Exhibits identified above [Exhibits identical to those at issue in all material respects], plaintiffs have complied with Rule 9(b)". And the Court denied defendants' motions to dismiss similar Best Price claims against certain defendants for certain drugs.[10] *New York Counties Case,* 2007 WL 1051642 at \*17 (plaintiffs have pleaded Best Price claims against

---

[9]   To state a claim for common law fraud in Iowa, "the following elements must be proven: (1) a material misrepresentation, (2) made knowingly (scienter), (3) with intent to induce the plaintiff to act or refrain from acting, (4) upon which the plaintiff justifiably relies, (5) with damages."  *Rosen v. Board of Medical Examiners of State of Iowa*, 539 N.W.2d 345, 349 (Iowa 1995).  Similarly, to sustain a claim for common law fraud in New York, a plaintiff must establish that the defendant "(1) made a material false statement; (2) knowing that the statement was false; (3) acting with intent to defraud; that plaintiff (4) reasonably relied on the false representation and (5) suffered damage proximately caused by the defendant's actions."  *New York Counties Case*, 2007 WL 1051642, at \*12 (internal citations omitted).

[10]   While the Court granted defendants' motion to dismiss similar Best Price claims for other defendants, this dismissal was without prejudice to plaintiff right to replead if more information becomes available.  *See New York Counties*, 2007 WL 1051642, at \*16  (D. Mass. April 2, 2007) ("Accordingly, plaintiffs' Best Prices/fraud claims are dismissed without prejudice to replead with more specificity at a later date.")

Biogen (for Amevive, Zeralin and Avonex only), GlaxoSmithKline (for Paxil and Flonase only), Merck (for Zocor only), Pfizer (for Lipitor only), and TAP Pharmaceuticals (for Lupron only) with sufficient particularity); *See also In re Pharm. Indus. Average Wholesale Price Litig.* 2004 WL 2387125 at *3 (D. Mass. Oct. 26, 2004) (the court denied motion to dismiss Best Price fraud claims as to particular defendants where plaintiff alleged sufficient facts).

The only substantive difference between the two states' laws is that the standard of reliance is subjective in Iowa. *See Lockard v. Carson*, 287 N.W.2d 871-878 (Iowa 1980). Iowa's subjective standard is intended to protect plaintiffs. "We reject a rule…which would impose an objective standard of ordinary care on plaintiffs in fraud actions. Such a standard would be 'clearly inconsistent with the general rule that mere negligence of a plaintiff is not a defense to an intentional tort.' Moreover, such a rule would not take into account 'the effect which the representation is intended to have upon the plaintiff's mind. *Id.* (citing W. Prosser, Law of Torts 108 at 716 (4th ed. 1971))[11]

The *Lockard* Court noted that there are occasions when subjective reliance is inappropriate. "[W]here a plaintiff has *equal information* of certain knowledge as the defendant, he has no right to reply on defendant's statements. *Id.* (*citing Andrew v. Baird*, 265 N.W. 170, 175 (Iowa 1936) (emphasis added). Here, Iowa alleges repeatedly that it did not have the same information about drug pricing as defendants. Complaint at ¶¶134-142. The subjective standard should apply.

---

[11] *See also McGough v. Gabus,* 526 N.W. 2d 328 (Iowa 1995), where plaintiff purchased a vending machine business from defendants and sued alleging that defendants misrepresented the value of the business. The court rejected the defendants' argument that since the plaintiff had old tax returns, had inspected the machines, and had an opportunity to view the company's balance sheets, he could have seen that defendants' representations about the business were false. The court felt this would impose an inappropriate objective standard of reliance. "A plaintiff cannot recover if he 'blindly relies on a misrepresentation the falsity of which would have been patent to him if had utilized his opportunity to make a cursory examination or investigation.' Nevertheless, we have refused to impose an objective standard of ordinary care on plaintiffs in fraud actions. The standard is 'whether the complaining party, in view of his own information and intelligence, had a right to rely on the representation." *Id.* At 332 (citing *Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980).

In addition, Iowa law clearly establishes that reasonable reliance is a fact intensive question not properly resolved at the pleading stage. *See Christy v. Heil*, 123 N.W.2d 408, 411 (Iowa 1963)("The facts and circumstances vary in each case. Whether the purchaser should be precluded from recovery because of his investigation or opportunity to investigate is ordinarily for the trier of fact"); *Plate v. Scallon*, 2003 WL 1969194 at *2 (Iowa App. April 30, 2003) ("Generally, the question of whether a party justifiably relied on the misrepresentation of another is a question for the trier of fact"); *see also Mass. Mylan Labs* 357 F. Supp. 2d at 323 (The court holding that "[t]he reasonableness of any reliance is best left to a summary judgment record.") *See, e.g., Suffolk I*, 339 F. Supp. 2d at 180 ("[Whether] Suffolk was or should have been aware of the AWP fraud … presents a factual issue inappropriate for resolution at this stage.") Defendants ignore this and also ignore that Iowa alleges reliance. Complaint at ¶¶ 169 and 660, *e.g.*. Nothing more is required at this juncture.

Defendants also argue that Iowa fails to state a claim for fraud because the Complaint fails to allege a false representation. This is patently false as the Complaint alleges a litany of examples of defendants' false representations. *See* Complaint at ¶¶ 88-92 (defendants reported WACs or WAC equivalents that were false and inflated); *Id*. at ¶¶ 94-100 (defendants report or cause to be reported false and inflated AWPs); *Id*. at ¶¶ 104, 106, and 108 (defendants caused false and inflated FULs to issue); *Id*. at ¶ 126-129 and 132 (brand manufacturer defendants knowingly calculated and reported Best Prices excluding required factors resulting in rebate payments that were less than required); and *Id*. at ¶ 134-142 (defendants conceal their true prices).

This Court has already ruled that such allegations are sufficient to satisfy the pleading requirements for Common Law Fraud. *See New York Counties Case*, 2007 WL 1051642, at *14

(Holding that "[p]laintiffs claim that defendants submitted fraudulent wholesale pricing data to publishers, intending that the information would be relied on by Medicaid payors to calculate provider reimbursements. …, *because the misrepresentations relied on by the state caused the counties direct harm*, plaintiffs' claim of fraud is viable.") *Id.* (emphasis added). Defendants' argument as to false representations should also be ignored.

In sum, defendants offer no persuasive reason for this Court to rule differently here than it has in all above referenced cases. Defendants' motion to dismiss the common law fraud claim should be denied.

## V.      IOWA STATES A CLAIM FOR UNJUST ENRICHMENT

### A.  Iowa has pled Common Law Unjust Enrichment Claims for AWP and Best Price / Nominal Price Misconduct

This Court has repeatedly denied motions to dismiss claims of unjust enrichment based on AWP and Best Price/Nominal Price theories at this stage in the proceedings. *See US/Ven-A-Care*, 491 F. Supp. 2d at 19-20 (denying defendants' motion to dismiss unjust enrichment claims based on AWP relying on the court's ruling in *Mass. Mylan Labs.*); *Mass. Mylan Labs.*, 357 F. Supp. 2d at 324 (declining to dismiss plaintiffs' unjust enrichment claims); *Suffolk I*, 339 F. Supp. 2d at 181, 183 (declining to dismiss plaintiff's AWP and Best Price claims under an unjust enrichment theory); *New York Counties Case*, 2007 WL 1051642, at *9-10, 17 (denying defendants' motion to dismiss unjust enrichment claims based on 1) AWP  and 2) Best Prices. The denial of Best Prices Claim was limited to those claims that were stated with particularity).

The elements of Unjust Enrichment in Iowa are virtually identical to the elements in each of the states listed above.[12]   Plaintiffs ask the Court to deny defendants' motion to dismiss the unjust enrichment claims in this case as well.

Here, defendants argue that Iowa does not sufficiently allege that it conferred a benefit on defendants because the Complaint "does not allege that the pharmacies and providers passed along any overpayments to any defendant, or that any manufacturer received payments to which it was not entitled."  Def. Mem. at 24.  This Court has already rejected the identical argument in *Suffolk I*.  In *Suffolk I,* the Court held that the plaintiffs' AWP unjust enrichment claims survived defendants' motion to dismiss, notwithstanding defendants' argument that it was doctors, not manufacturers, who were benefited by over-billing.  *See Id.* at 181, 183.

## B.  Particularity of Unjust Enrichment Claims

Defendants' motions to dismiss AWP-based unjust enrichment claims similar to those alleged by Iowa were denied as to certain defendants and for certain drugs in the New York County litigation. *See New York Counties*, 2007 WL 1051642, at *9 (defendants' motions denied as to Biogen (for Amevive, Zeralin and Avonex only), GlaxoSmithKline (for Paxil and Flonase only), Pfizer (for Lipitor only), and TAP Pharmaceuticals (for Lupron only).  The same result should obtain here.  Any dismissal that is granted should also be, as it was in the New York case, without prejudice to plaintiff's right to replead at a later date and if more information became available.  *See Id*. at *16.

---

[12]   *See, e.g., State of Iowa, Dep't of Human Sv.s ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-5 (The elements of unjust enrichment are: "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances."); *Whitman Realty Grp., Inc. v. Galano*, 838 N.Y.S.2d 585, 592-3 (2007)  ("To prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution."); *In re Neurontin Marketing and Sales Price Litig.*, 244 F.R.D. 89, 104 (D. Mass. 2007) ("To establish a claim for unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.") (internal citations omitted).

## VI.    IOWA'S BEST PRICE CLAIMS ARE NOT BARRED BY THE FILED RATE DOCTRINE

This Court already has rejected defendants' Filed Rate argument.  *See Mass. Mylan Labs.* at 329.  Indeed, the argument presented at pages 25-26 of defendants' brief is nearly *verbatim* the argument defendants made – and lost – in the *Mass. Mylan Labs.* case.  Compare pages 25-26 of defendants' Consolidated Memorandum in Support of Defendants' Motion to Dismiss the Commonwealth of Massachusetts's Complaint, *Mass. Mylan Labs.*, 2004 WL 2648849 (Jan. 29, 2004) with pages 25-26 of Certain Defendants' Memorandum of Law In Support of Motion To Dismiss The Complaint.  The only difference is that, in the *Mass. Mylan Labs.* case, defendants spoke of AMP and here defendants speak of Best Price.  And yet, oddly, defendants do not even mention – or attempt to distinguish – the Court's *Mass. Mylan Labs.* decision on this point.  In *Mass. Mylan Labs.*, the Court explained that:

> [T]he Filed Rate doctrine, which limits attacks outside the regulatory process on rates filed with federal regulatory agencies. The doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 101 S. Ct. 2925, 69 L.Ed.2d 856 (1981). "The considerations underlying the doctrine ... are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to ensure that regulated companies charge only those rates of which the agency has been made cognizant." Id. at 578, 101 S.Ct. 2925 (citations omitted).

*See Mass. Mylan Labs.,* 357 F. Supp. 2d at 329.

And thus, the Court held that the Filed Rate Doctrine did not preclude claims based on false submissions of Best Price data because

> Defendants' Best Price data submissions do not constitute "rates" or "tariffs," so this doctrine is inapplicable.  The reported data do not control the rates which [d]efendants can charge customers, as a tariff would.  The fact that rebates affect the net cost of the drugs to Massachusetts does not transform the data into tariffs.  While Defendants have a duty to report accurate data for prices previously charged, this data does not control, or even affect, *prospective* prices, as a tariff would.

*Id.* at 329.

Defendants' one "new" case is *County of Stanislaus v. Pac. Gas & Elec. Co*., 114 F.3d 858, 864 (9th Cir. 1997).  It is inapposite.  There the court held that the Filed Rate Doctrine blocked the challenged conduct because the claim was "little more than a challenge to rates that FERC approved and filed."  *Stanislaus* does not impact this Court's reasoned prior ruling. Nothing in *Stanislaus* alters the fact that the Best Prices reported by defendants do not control or impact in any way defendants' future prices and are therefore not tariffs.

## VII.   IOWA ALLEGES FUL CLAIMS

Iowa alleges that defendants' failures to report accurate prices to the publishing compendia resulted in false and inflated FULs to be set by CMS. Complaint at ¶104. Defendants' memorandum acknowledges that their own published prices serve as the basis for the FULs. See Def. Mem. at 26, n18 (the government uses AWP, WAC and Direct Prices published in the national drug pricing compendia to set the FUL).  Yet, defendants claim that Iowa's FUL claims should be dismissed because defendants do not, by themselves set or report the FUL.  Def. Mem. at 26-28.  The argument is flawed and has been at least twice rejected by this Court.  *See In re Pharm. Indus. Average Wholesale Price Litig.,* 498 F. Supp. 2d 402, 405 (D.Mass. 2007) ("The Court DENIES defendants' motion to dismiss drugs subject to a Federal Upper Limit ('FUL')"); *See also California/Ven-A-Care*, 478 F. Supp. 2d at 180 ("Thus, the complaint adequately alleges a nexus between the alleged fraudulent reporting of prices to the compendia and the establishment of the FUL."). In both cases this Court made clear that given defendants' control of the prices that are published, defendants set the FUL.  The same result should occur here.

## VIII.   IOWA'S CLAIMS SHOULD NOT BE LIMITED TO 1992-1997

First Circuit law states clearly that statutes of limitation arguments are not properly resolved in the context of a motion to dismiss. In *In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148, 183-184 (D. Mass. 2003), the court made this clear in an almost identical factual context concerning AWP inflation for Lupron.  The *Lupron* court stated

> [w]hether a plaintiff knew or should have known of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury issue. *See Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir.1990) ("The determination of when appellees had knowledge of 'both the injury and its connection with the act of defendant,' is a question of fact."). Cf. *Young v. Lepone*, 305 F.3d 1, 8-9 (1st Cir.2002) (in a securities law context, factual questions as to whether "storm warnings" were sufficient to put an investor on inquiry notice are only to be determined as a matter of law when the underlying facts are either admitted or undisputed).

*Id.* at  183-184.

Defendants' fact-intensive, beyond-the-pleadings arguments regarding why Iowa's claims should be limited to 1992-1997 reveals why such prior rulings are entirely proper.  Iowa has alleged that it did not until recently know the extent of defendants' false price reporting and the extent to which the false price reporting resulted in false and inflated FULS and AWPs.  *See* Complaint at ¶¶ 133-145, 617, 625.  These pleadings control at this stage; defendants' arguments that somehow the pleadings are trumped or defeated by this Court's class rulings are misplaced. This Court has acknowledged that its class rulings did not concern Medicaid and did not concern government knowledge.  *See* Transcript of Motion Hearing at 18-19, Document No. 4519 (D. Mass. Jul. 26, 2007) lines 19-25 and 1-6 respectively.  There is no basis, therefore, on the instant record and given the posture of this case, for the Court yet to determine when the statutes of limitations for Iowa's claims began to run.

## IX.   THERE IS NO BASIS TO DISMISS IOWA'S CLAIMS ON DRUGS WITH SPREADS OF 30% OR LESS

Defendants are well aware that this Court has sustained claims in all other Medicaid AWP cases where spreads greater than the standard 20-25% mark up between WAC and AWP are alleged. *See US/Ven-A-Care* 491 F. Supp. 2d at 19-20 (relying on *California/Ven-A-Care*, 478 F. Supp. 2d at 171-172); *see New York Counties Case*, 2007 WL 1051642, at *14-17; *see Pharm. IV/Nevada and Montana*, 321 F. Supp. 2d at 207-208.  Every drug at issue in the Iowa matter has a spread greater than this 20-25% mark up.  Exhibit B to Complaint (D. Mass. Oct. 9, 2007). This prong of defendants' motion should be ignored entirely.

## CONCLUSION

For all the foregoing reasons, Certain Defendants' motion to dismiss should be denied in its entirety.

Dated:  March 28, 2008

Respectfully submitted,

TOM MILLER
ATTORNEY GENERAL FOR
THE STATE OF IOWA

By:    C. Roderick Reynolds
       J. Bradley Horn
       Assistant Attorney General
       Iowa Department of Justice
       1305 E. Walnut Street
       Hoover Bldg., 2nd Floor
       Des Moines, IA  50319


KIRBY McINERNEY LLP
Attorneys for the State of Iowa
830 Third Avenue
New York, New York 10022
(212) 371-6600

By:    _____/s/_____
       Joanne M. Cicala (JC 5032)
       James P. Carroll Jr. (JPC 8348)
       Aaron D. Hovan (AH 3290)

**<u>Certificate of Service</u>**

I certify that on March 28, 2008 a true and correct copy of the foregoing Memorandum in

Opposition to Certain Defendants' Motion to Dismiss the Complaint was served on all Counsel

of Record by electronic service pursuant to Case Management Order No. 2 by sending a copy to

LexisNexis File and Serve for posting and notification to all parties.


<u>  /s/ Aaron D. Hovan          </u>
Aaron D. Hovan