# EXHIBIT 9

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

Direct Number: (202) 879-5562
dstorborg@jonesday.com

March 27, 2007

VIA EMAIL

Ana Maria Martinez, Esq.                      Alison W. Simon, Esq.
Assistant United States Attorney              The Breen Law Firm, P.A.
Southern District of Florida                  P.O. Box 297470
99 N.E. 4th Street                            Pembroke Pines, FL 33029-7470
Miami, FL 33132

M. Justin Draycott, Esq.
Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20004

> Re:   *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.*

Dear Counsel:

As you know, Abbott has served extensive discovery seeking to understand better the specific Abbott statements and actions that Plaintiffs allege were false and fraudulent, as well as the specific false claims that Plaintiffs contend Abbott filed or caused by be filed. *See, e.g.*, Abbott Interrogatory Nos. 1, 6 & 8; Abbott RFPs to United States Nos. 6, 11, 84, 86, 92, 97, 98, 102, 105 & 107; Abbott 1st RFPs to Ven-A-Care Nos. 33, 35, 41, 46, 47, 51, 54 & 56; Abbott 2nd RFPs No. 1. More than a year has passed since the Government filed its Complaint-in-Intervention, and more than eleven years has passed since Ven-A-Care originally filed its *qui tam*, yet Plaintiffs have provided little of substance in response to Abbott's discovery in this area. For example, in responding to Abbott's interrogatories on this subject, the Government and Ven-A-Care largely just reiterated the United States' complaint or Ven-A-Care's past, redacted complaints. Your responses contain none of the detail requested in Abbott's discovery and are inadequate. This letter sets forth our view on what, at a minimum, Plaintiffs should provide now in response to this discovery.

**Allegedly False or Fraudulent Statements/Actions Made by Abbott.** At this point in the case, after having over eleven years to investigate the claims, Plaintiffs should be able to identify every allegedly "false or fraudulent statement" made by Abbott, including any "false or fraudulent price representations," upon which you intend to rely to prove your case at trial. *See* Abbott Interrogatory Nos. 1 & 6. Moreover, Plaintiffs should be able to identify, by control number or other form of identification, the specific documents, deposition transcripts, or other evidence that contain those statements or actions. *See id*.; Abbott 1st RFP to United States Nos.

JONES DAY

Ana Maria Martinez
M. Justin Draycott
Alison W. Simon
March 27, 2007
Page 2

1, 84, 86, 92, 97, 98, 102, 105 & 107; Abbott 1st RFPs to Ven-A-Care Nos. 33, 35, 41, 46, 47, 51, 54 & 56.  It is not sufficient to object to this discovery by claiming Abbott already has this information in its possession; we are entitled to know the specific statements that form the basis of your lawsuit.  Among other things, Plaintiffs should—as to each NDC at issue in the case and for each year—identify the specific false price representations that Abbott allegedly made.  This would include any statements made to third-party publishers or state Medicaid programs, as well as any other statements or actions upon which Plaintiffs intend to rely at trial.  Plaintiffs' response should state with particularity the circumstances of the alleged fraud, including the date, time, location, subject matter, and participants involved, and identify the associated documents by control number.  The fact that you might seek to supplement your discovery responses at a later point in time does not excuse you from providing the detail you now have and upon which you intend to rely at trial.

In addition, Plaintiffs should state what prices Abbott allegedly should have reported for those NDCs for those years.  *See* Abbott Interrogatory No. 6.  To the extent Plaintiffs contend they do not yet have information necessary to provide those details, Plaintiffs should state explicitly what information they need and commit to providing an answer once it receives that information.

**False Claims That Abbott Filed or Caused To Be Filed.**  As we have discussed previously with the DOJ, we believe Abbott is entitled to receive a "copy of each and every claim that you allege constitutes a 'false claim' that Abbott submitted or caused to be submitted, as alleged in Paragraph 103 of the Complaint, including specifically each and every claim as to which you seek damages or penalties under the False Claims Act."  Abbott 2nd RFPs No. 1.  *See also United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231-34 (1st Cir. 2004).  Do Plaintiffs intend to produce this information at some point to Abbott?  If so, what steps you are taking to obtain that information and when will it be provided to Abbott?  Moreover, with respect to both Medicare and Medicaid claims, in what form will Plaintiffs provide this information?

As indicated in our second set of document requests, if Plaintiffs are currently unable or unwilling to provide a copy of each and every false claim at issue in the case, in the meantime Abbott requests that Plaintiffs provide a representative sample of false claims for which you seek damages and/or penalties.  *See id.*  In connection with Medicaid claims, in order for the sample to be appropriately representative, Plaintiffs should provide, separately for each NDC at issue, a sample claim for each year (or shorter period of time if reimbursement changed during the year) and for each state Medicaid program for which Plaintiffs seek damages and/or penalties.  Abbott's request is reasonable in light of the differing (and changing) ways that each of the states reimbursed the NDCs at issue during the relevant claim period.  For Medicare claims, Plaintiffs

JONES DAY

Ana Maria Martinez
M. Justin Draycott
Alison W. Simon
March 27, 2007
Page 3


should provide, for each J-Code at issue, a sample claim for each year (or shorter period of time if reimbursement changed during the year) and for each Medicare carrier who reimbursed the J-Codes for which Plaintiffs seek damages and/or penalties.  Evidence indicates that Medicare carriers reimbursed vastly different amounts for the J-Codes at issue in the case.  *See* HHD009-1200 – 06 (Vancomycin).  We believe that Plaintiffs should have this information collected in large part already, even if only to discharge counsel's obligations under Rule 11.

**Ven-A-Care Claims.**  Abbott's RFP 19 to Ven-A-Care asks for, among other things, documents relating to Ven-A-Care's submission of claims to, and payment by, the Medicare and Medicaid programs for the Subject Drugs, as well as any repayments made by Ven-A-Care to the Medicare and Medicaid programs.  Subject to resolving confidentiality issues relating to patient medical information, Ven-A-Care's response indicates that it already has or will provide the requested information as it pertains to the Subject Drugs.  Please identify where in the production Ven-A-Care already produced this claims information, what information Ven-A-Care has relating to this document request, and when Ven-A-Care will complete its production in response to this document request.

As to patient confidentiality, Ven-A-Care's HIPPA-related objection is moot given the protective order entered in this case.  *See Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 924-925 (7th Cir. 2004) ("The regulation also allows the disclosure of such information in those proceedings 'in response to a subpoena, discovery request, or other lawful process,' § 164.512(e)(1)(ii), if the party seeking the information either notifies the patient (or at least makes a good faith effort to do so) or makes a 'reasonable effort' to secure a qualified protective order, that is, an order that prohibits the use or disclosure of the information outside the litigation and requires the return or destruction of the information at the end of the litigation."); *U.S. ex rel. Camillo v. Ancilla Sys., Inc.,* 233 F.R.D. 520, 522 (S.D. Ill. 2005) (explaining that HIPAA regulations permit "protected health information to be revealed in response to a discovery request, if the parties agree to a protective order and have presented it to the Court, or have asked the Court for a protective order").  We expect Ven-A-Care to produce immediately.  As the entry of the protective order was no surprise, Ven-A-Care presumably did not delay its efforts to gather responsive material.

Abbott's Interrogatory No. 12 also asks Ven-A-Care to "[i]dentify all instances where Ven-A-Care was over-reimbursed for drugs by Medicare Part B or Medicaid and [to] state what Ven-A-Care did with each such reimbursement."  Ven-A-Care objected to Interrogatory No. 12 by stating that the term "over-reimbursed," as used in the interrogatory, was "not defined."  Ven-A-Care Objection to Interrogatory No. 12.  Ven-A-Care then construed the term "over-reimbursed" to "mean amounts in excess of or more than what the reimbursement formula would arithmetically calculate in contrast to 'inflated reimbursement' which would implicate the

JONES DAY

Ana Maria Martinez
M. Justin Draycott
Alison W. Simon
March 27, 2007
Page 4

fraudulent and improper increase in reimbursement caused by the false reports or prices used in the formula." *Id*. Ven-A-Care went on to state that it is "Ven-A-Care's understanding that it was always reimbursed based upon the existing reimbursement formula(s) of Medicare and Medicaid and was never reimbursed an amount in excess of the applicable reimbursement formulas." *Id*. Ven-A-Care also states that, "[a]t various times, Ven-A-Care took action to refund or decline payments, or partial payments, from the Medicare Program." *Id*. Ven-A-Care stated it was "reviewing its business records relating to these instances and, upon resolution of patient confidentiality issues and any other applicable objections, will produce such records as are in its possession, custody or control." *Id*.

Ven-A-Care does not correctly read Abbott's Interrogatory No. 12 and what Abbott meant by the term "over-reimburse." The intent of Interrogatory No. 12 was to request Ven-A-Care to identify all instances where it received "excessive reimbursement," as that term is used in the Complaint (*see, e.g.*, ¶ 3), or "inflated" reimbursement, as used in Ven-A-Care's response to Interrogatory No. 12. With that clarification, and the entry of a protective order, we expect Ven-A-Care to provide a full and complete answer to Interrogatory No. 12 by identifying *all* instances where it received excessive or inflated reimbursement and stating what Ven-A-Care did with *all* such reimbursement. Ven-A-Care's existing response indicates it is reviewing its business records relating to instances where it "took action to refund or decline payments, or partial payments, from the Medicare program." *Id*. When will Ven-A-Care provide a complete response? Abbott reads Ven-A-Care's response as stating that Ven-A-Care did not make refunds or decline payments relating to reimbursements received from the Medicaid program. Please advise us if we are incorrect.

To determine whether motion practice is necessary, we would like to discuss our requests or receive a response in writing by Friday, April 6, 2007, as we intend to satisfy all meet-and-confer obligations by that date. We ask that you be prepared to take a final position on what Plaintiffs will provide by that time. Abbott would like to receive this information by May 1, 2007. Abbott of course reserves its right to receive full and complete information regarding each of the false claims for which Plaintiffs seek damages or penalties.

Thank you for your attention to these matters.

Sincerely,

/s/ David S. Torborg

David S. Torborg

JONES DAY

Ana Maria Martinez
M. Justin Draycott
Alison W. Simon
March 27, 2007
Page 5


cc:    Renée Brooker
       Gejaa Gobena
       Mark A. Lavine
       Ann St. Peter-Griffith
       James J. Breen
       Neil Merkl
       Sarah L. Reid