# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CITIZENS FOR CONSUME, et al. CIVIL ACTION NO. 01-12257-PBS
  Plaintiffs            .
                       .
V.                 . BOSTON, MASSACHUSETTS
                 . JULY 20, 2007
ABBOTT LABORATORIES, et al .
  Defendants           .
. . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the United States: John Neil, Esquire
                       Justin Draycott, Esquire
                       United States
                       Department of Justice
                       601 D Street, NW
                       Patrick Henry Building, Room 9028
                       Washington, DC  20004
                       202-307-1088

                       Gejaa T. Gobena, Esquire
                       United States Department of
                       Justice
                       601 D Street NW
                       Patrick Henry Building, Room 9028
                       Washington, DC 20004
                       202-307-1088


For Abbott Labs.:      James R. Daly, Esquire
                       Jones, Day, Reavis & Pogue
                       77 West Wacker Drive
                       Chicago, IL 60601-1692
                       312-782-3939

```
For the Relator:        Jared Anderson, Esquire
                        The Breen Law Firm, P.A.
                        3562 Old Milton Parkway
                        Alpharetta, GA 30005
                        770-740-0008

For State of Texas:     Raymond Winter, Esquire
                        300 W. 15th
                        9th Floor
                        Austin, TX 78701
```

```
Court Reporter:

Proceedings recorded by digital sound recording,
transcript produced by transcription service.
```

**MARYANN V. YOUNG**
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**



2

**I N D E X**

Proceedings                                                          3

3

1              **P R O C E E D I N G S**

2          (Court called into session)

3              THE CLERK:  The Honorable Marianne B. Bowler

4    presiding.  Today is July 20, 2007.  The case of Citizens For

5    Consume et al. v. Abbott Laboratories et al., Civil Action No.

6    01-12257 will now be heard.  Would counsel please identify

7    themselves for the record.

8              MR. NEIL:  John Neil on behalf of the United States.

9              MR. GOBENA:  Gejaa Gobena on behalf of the United

10   States.

11             MR. DRAYCOTT:  Justin Draycott on behalf of the

12   United States.

13             THE COURT:  Thank you.

14             MR. DALY:  Good morning, Your Honor, Jim Daly on

15   behalf of Abbott Laboratories.

16             THE COURT:  Thank you.

17             MR. ANDERSON:  Good morning, Your Honor, Jared

18   Anderson counsel for the Relator.

19             MR. WINTER:  Good morning, Your Honor.  I'm Raymond

20   Winter, counsel for the state of Texas.

21             THE COURT:  All right, thank you very much.  Well

22   we're start with these and take them in the order in which they

23   were filed.  So the first is Docket Entry No. 3959 which is

24   Abbott's renewed motion to compel.  Mr. Daly?

25             MR. DALY:  Your Honor, is this the one on the

1    privileged information that they will not disclose.  We agree

2    with that position.  What we disagree with strenuously is that

3    somehow that these arguments only cut in one direction, that

4    the same type of information when it's being held by Abbott is

5    absolutely privileged and we agree it is privileged and it's

6    also irrelevant.  It's not, you know, who the government in its

7    judgment within another branch of government or anywhere else

8    elected to consult about a complaint is not the evidence in

9    this case.  And again, I want to make clear that we're not

10   objecting to this because Abbott won't turn it over.  I think

11   Your Honor should be very skeptical on argument that this is

12   somehow non-privileged information they're entitled to when

13   precisely the same category of information they're asserting a

14   privilege, won't turn it over and have said, you know, you

15   don't get it.

16           THE COURT:  All right, denied at this time.  Anything

17   else, Mr. Daly?

18           MR. DALY:  Yes, Your Honor.  The third - that was all

19   the investigatory information.  The final category is we've

20   asked for the government to produce to us their evidence of

21   false claims and false statements, kind of a basic aspect of

22   the case.  They've sued us under the False Claims Act.  We've

23   asked for them to identify the false statements we made, the

24   alleged misrepresentations.  What were they?  When were they?

25   What was wrong with them and what they should have been?

32

1   That's on the false statement side.  On the false claims side

2   under the False Claims Act, we've said, give us the false

3   claims and we've even offered for them to do representative

4   samples of both.  In other words for each year, for each NDC,

5   give us the misrepresentations or the representations, give us

6   the alleged false claims and we'll start there because it is a

7   large job.

8          One of the problems is that with Medicare for example

9   I think the Court's heard mention that there are, you know,

10  twenty some carriers that actually processed the claims for

11  Medicare, they all have different AWP's that they use so the

12  same drug Abbott's Vanco, for example, for one carrier might be

13  reimbursed at $3 and for another carrier it's $15.  Well, you

14  know what, the fraud claim that they make is going to be

15  different for each one of those.  So we've asked them to come

16  forward on that.  On the Medicaid side as the Court is aware,

17  the state has a slightly different and sometimes dramatically

18  different way to reimburse these drugs.  Some of them do a lot

19  of AWP's, some of them do it on other reporting prices.  Some

20  of them put max or FUL's, maximum allowable costs or federal

21  upper limit type numbers on them and so the government has sued

22  us for all of the reimbursements by the states under Medicaid,

23  and we think it's only fair that they have to come forward and

24  show us what's false and show us what it should have been.  And

25  giving us, which they're in the process of doing, claims

33

1  information, doesn't cut it because all claims information is

2  going to say that on such and such a date the state of

3  Connecticut paid $25 for a vial of Vanco and it's going to be,

4  you know, embedded in data.  That's not going to tell us what's

5  false, what it should have been or anything like that.  So

6  that's why we've offered at least preliminarily for them to do

7  a representative sample of these items NDC by NDC, year by

8  year.

9          THE COURT:  Why not?

10          MR. DRAYCOTT:  Absolutely they're entitled to the

11  claim data as I think Mr. Daly just indicated.  We are

12  endeavoring to produce it.  It is a time consuming process

13  because of the manner in which this data is maintained.  It's

14  an antiquated system.  We can't simply download the claims data

15  to a hard drive.  We have to – and we are now in consultation,

16  that is the technical components of the two offices with Abbott

17  trying to figure out the format in which the claims data can be

18  produced.  And there's two--

19          THE COURT:  All right, so you're going to get the

20  claims data.

21          MR. DRAYCOTT:  Well, just to be--

22          MR. DALY:  Right.  They're working on it, correct.

23          MR. DRAYCOTT:  --fair to Mr. Daly, I think there's

24  two components of what he's talking about in terms of the

25  damage analysis.  The other part of it of course is what the,

34

1   it reflects the amounts that were paid and the claims that

2   were paid with respect to the subject drugs at issue.  The

3   other component is of course what should have been paid by the

4   just as Abbott has requested data information from the

5   government.  We in the same way have asked for sales and

6   transaction data from Abbott.  That is only now beginning to be

7   forthcoming and there is a back and forth between other folks

8   in my office and Abbott trying to, you know, they appear to

9   have produced some electronic media with transactional data on

10  it.  We're now trying to figure out how to open it, how to read

11  it, figuring out what kind of format it's in.  Until all that

12  is done and we can figure out what the transactional prices

13  were which is then going to indicate the range of which the AWP

14  actually should have been reported, you know, that is just a

15  time consuming process and it requires information from Abbott

16  in order for us to then be able to come up with a damage

17  calculation which will then of course will be expressed in an

18  expert report and is going to be I think the subject of a

19  future round of discovery when it comes down to the expert

20  phase of this litigation, at least the expert phase of the

21  discovery process.  And it's just too earlier for the

22  government to, since we have not even been able to open yet the

23  Abbott transactional data that we certainly can't provide that

24  information yet.

25          MR. DALY:  Just as I said, they are giving us the

35

1  claims data.  My point about that is that our requests aren't

2  about the claims data.  Our request is about what's false.

3  What's the false statement?  What's the false claim?  And we

4  believe, and as I tried to explain, the data isn't going to

5  answer that.  The data is just going to give us a transaction

6  price of 20 or 30 or 10 or 15 or $20, whatever it might be.

7          THE COURT:  Well can you tell them how in what format

8  you want this into?

9          MR. DALY:  We have, Your Honor, in a letter.  It's

10  Exhibit 8 to our brief.  We've asked them to give us by NDC by

11  year for Medicaid, I'm sorry, Medicare, a statement of, you

12  know, what's false, what's the false statement?  What are you

13  saying we misrepresented?

14          THE COURT:  All right, why not?

15          MR. DRAYCOTT:  Well we've indicated - we've indicated

16  that it is the statement, the AWP statement through the

17  compendia which again is this is a, in order to answer this

18  question you have to understand the context in which these

19  claims are made which is that the AWP is not a--

20          THE COURT:  Trust me counsel, I understand.

21          MR. DRAYCOTT:  --is not, if I've been presumptuous I

22  apologize, Your Honor.  But the reported price actually doesn't

23  go to the government.  It goes to the private compendia.  And

24  that is a transaction which the government is not a direct

25  party and certainly that is an area of discovery that we're

36

1   taking against Abbott to get those statements.  But that's

2   going to be the core statement.  With respect to the claim then

3   that, the claim which is rendered false by that statement of an

4   inflated AWP is the one that's paid for the beneficiary and

5   that's the claims data we're trying to produce and we are in

6   the process of producing.  And I think the other part of this

7   is, is again the falsity is--

8              THE COURT:  All right, I'm going to wait until

9   everything's produced.  Denied without prejudice.  You can

10  renew it after you get a look at everything.

11             MR. DALY:  I understand, Your Honor.  Judge, that's

12  all that there is on that motion.

13             THE COURT:  All right.  So the final motion is the

14  motion for a protective order.

15             MR. DALY:  Yes, Your Honor.

16             THE COURT:  4135.

17             MR. DALY:  And that I believe is ours as well, Judge.

18             THE COURT:  Yep.

19             MR. DALY:  This is the argument concerning the

20  government's notice for a deposition of Myles White--

21             THE COURT:  Right.

22             MR. DALY:  --who is the chief executive officer and

23  the chairman of the board of my client, Abbott Laboratories.

24  As the CEO and chairman, Mr. White is protected from potential

25  harassment and abuse by the law that the Court's seen in the