# EXHIBIT 8

**From:**      Dawn Claborn
**To:**        Lreed@hcfa.gov;  Sgaston@hcfa.gov;  VDrivalas@hcfa.gov
**Date:**      08/01/2001 9:36:58 AM
**Subject:**   SPA 01-15 Drugs

I provided information to Vera yesterday via fax which included a new page 33 as well as a copy of other
State Medicaid agency's drug cost methodologies.

Our drug cost methodology was derived via a two step approach which included 1) a thorough review of
what other State's were doing and selecting the percentage off of AWP that was reasonable and 2)
conducting negotiations with the Pharmacy Industry.

If you need additional information, please let me know.

Dawn Claborn

HHC009-1324        F



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Region V
Health Care Financing
Administration

Refer to:   IIO2

233 North Michigan Avenue
Suite 600
Chicago, Illinois 60601-5519

SEP 19 2001

RECEIVED
MAR 19 2004
DMCH/IIPC

Ms. Jackie Garner
Director
Illinois Department of Public Aid
Prescott E. Bloom Building
201 South Grand Avenue East
Springfield, Illinois 62763-0001

ATTN:  John Rupcich

Dear Ms. Garner:

Enclosed for your records is an approved copy of the following State Plan Amendment:

Transmittal #01-015   Prescribed Drugs--Effective July 1, 2001

If you have any additional questions, please have a member of your staff contact
Vera Drivalas at (312) 886-0792.

Sincerely,

Cheryl A. Harris
Associate Regional Administrator
Division of Medicaid & Children's Health

Enclosure

cc:   Matt Powers, Administrator
      Medical Programs

bcc:  EWeisman/CO, CPelter/CO, Brunelle, Reading File - DMCH/IIOB/IIO2 Filecode S-
      5-01 DOC il01-015app 8/20/01

**FILE
COPY**

The Health Care Financing Administration (HCFA) was renamed to the **Centers for Medicare & Medicaid Services (CMS)**.

HHC009-1316      F

DEPARTMENT OF HEALTH AND HUMAN SERVICES
HEALTH CARE FINANCING ADMINISTRATION

FORM APPROVED
OMB NO. 0938-0193

| TRANSMITTAL AND NOTICE OF APPROVAL OF STATE PLAN MATERIAL FOR: HEALTH CARE FINANCING ADMINISTRATION | 1. TRANSMITTAL NUMBER<br><br>01-15 | 2. STATE:<br><br>**ILLINOIS** |
|---|---|---|
| | 3. PROGRAM IDENTIFICATION: TITLE XIX OF THE SOCIAL SECURITY ACT (MEDICAID | |

| TO: REGIONAL ADMINISTRATOR<br>HEALTH CARE FINANCING ADMINISTRATION<br>DEPARTMENT OF HEALTH AND HUMAN SERVICES | 4. PROPOSED EFFECTIVE DATE:<br>July 1, 2001 |
|---|---|

5. TYPE OF PLAN MATERIAL *(Check One)*

☐ NEW STATE PLAN          ☐X AMENDMENT TO BE CONSIDERED AS NEW PLAN          ☐ AMENDMENT

COMPLETE BLOCKS 6 THRU 10 IF THIS IS AN AMENDMENT *(Separate Transmittal for each amendment)*

| 6. FEDERAL STATUTE/REGULATION CITATION: | 7. FEDERAL BUDGET IMPACT<br>a. FFY '01     $   3,000,000<br>b. FFY '02     $  11,000,000 |
|---|---|
| 8. PAGE NUMBER OF THE PLAN SECTION OR ATTACHMENT:<br><br>Attachment 4.19-B, page 32 and Page 33 | 9. PAGE NUMBER OF THE SUPERSEDED PLAN SECTION OR ATTACHMENT *(If Applicable)*:<br><br>Attachment 4.19-B, page 32 and Page 33 |

10. SUBJECT OF AMENDMENT

**Prescribed Drugs**

11. GOVERNOR'S REVIEW *(Check One)*

☐ GOVERNOR'S OFFICE REPORTED NO COMMENT
☐ COMMENTS OF GOVERNOR'S OFFICE ENCLOSED
☐ NO REPLY RECEIVED WITHIN 45 DAYS OF SUBMITTAL

☒ OTHER, AS SPECIFIED:
Not submitted for review by prior approval.

| 12. SIGNATURE OF AGENCY OFFICIAL: | 16. RETURN TO: |
|---|---|
| 13. TYPED NAME:  Jackie Garner | **ILLINOIS DEPARTMENT OF PUBLIC AID 201 SOUTH GRAND AVENUE, EAST SPRINGFIELD, IL. 62763-0001 ATTENTION: John Rupcich** |
| 14. TITLE:  **DIRECTOR** | |
| 15. DATE SUBMITTED<br>JUNE 22, 2001 | |

**FOR REGIONAL OFFICE USE ONLY**

| 17. DATE RECEIVED:<br>6/22/01 | 18. DATE APPROVED:<br>9/19/01 |
|---|---|

PLAN APPROVED - ONE COPY ATTACHED

| 19. EFFECTIVE DATE OF APPROVED MATERIAL: | 20. SIGNATURE OF REGIONAL OFFICIAL |
|---|---|
| 21. TYPED NAME<br>Cheryl A. Harris | 22. TITLE: Associate Regional Administrator Division of Medicaid and Children's Health |
| 23. REMARKS: | |

RECEIVED
JUN 2 8 2001
DMCH - IL/IN/OH

FORM HCFA-179 (07-92)          *Instructions on Back*

Attachment 4.19-B
Page 32

State   <u>Illinois</u>

METHODS AND STANDARDS FOR ESTABLISHING PAYMENT RATES - OTHER TYPE OF CARE -
BASIS FOR REIMBURSEMENT

3.   <u>RURAL HEALTH CLINICS:</u>  Depending on type of clinic in which services are provided.
Hospitals and encounter rate clinics: same as described in 1 and 2, respectively.  For others and
for non-Medicare covered services, fee-for-service subject to Department's established pricing
screens.

7/01   4.   <u>PRESCRIBED DRUGS:</u>
Effective ~~December 15, 2000,~~ <u>July 1, 2001,</u> pharmacies will be reimbursed for prescribed drugs
on the following basis:  the lower of either their usual and customary charge to the general public,
or the lower of :

7/01   a.   Single and multiple source legend products for   –   <u>actual market wholesale cost</u> plus
which the average wholesale price is actual       dispensing fee
market average wholesale price

b.   Other single source legend products   –   standard package size AWP of
7/01                                                 NDC on claim, less ~~10~~11%, plus a
dispensing fee ~~or the wholesale~~
~~acquisition cost plus 8% plus a~~
~~dispensing fee~~

c.   Other multiple source legend products not   –   standard package size AWP of
7/01       approved for generic interchange by the Illinois       NDC on claim, less ~~12~~ 20% plus a
Department of Public Health                        dispensing fee ~~or wholesale~~
~~acquisition cost plus 12% plus a~~
~~dispensing fee~~ or HCFA FUL plus
a dispensing fee

d.   Other multiple source legend products approved   –   ~~standard package size AWP of~~
for generic interchange by the Illinois            ~~NDC on claim, less 12%, plus a~~
Department of Public Health, ~~but not on the~~       ~~dispensing fee or~~ a State upper
7/01   ~~HCFA FUL list~~                                   ~~limit plus a dispensing fee or~~
~~wholesale acquisition cost plus~~
~~12% plus a dispensing fee~~
–   standard package size AWP of
NDC claim, less ~~12~~ 20% plus a
dispensing fee, ~~or~~ State Upper
d.   ~~Multiple source legend products approved for~~       Limit plus a dispensing  fee or
~~generic interchange by the Illinois Department~~       HCFA FUL unit price plus a
~~of Public Health, and on the HCFA FUL list~~          dispensing fee ~~or wholesale~~
~~acquisition cost plus 12% plus a~~
~~dispensing fee~~

7/01

TN# <u>01-15</u>                 Approval Date _____         Effective Date <u>07-01-01</u>
Supercedes
TN#<u>00-15</u>

HHC009-1318

Attachment 4.19-B
Page 33

State    Illinois

METHODS AND STANDARDS FOR ESTABLISHING PAYMENT RATES - OTHER TYPE OF CARE - BASIS FOR
REIMBURSEMENT

12/00    DISPENSING FEES:  Dispensing fees are based on a flat rate methodology of $4.17 $4.00 for brand name and $5.10 for generic drugs.

~~HCFA FUL limits will not be imposed on Schedule II, Controlled Substances, due to the Illinois Triplicate Prescription Program or products not approved for generic interchange by the Illinois Department of Public Health.  When such generic products are approved for interchange by the Department of Public Health,  (MAC) prices will be imposed  in accordance with 4. above.~~

7/98    ~~The use of some generic prices lower than the HCFA FUL, as described in 4 above, will ensure that aggregate reimbursement will not exceed the overall limits imposed by the HCFA FULs.~~

Drug prices are updated weekly utilizing a tape procured from the First Data Bank of San Bruno, California.

5.   OVER-THE-COUNTER DRUGS: Lesser of the usual and customary charge to the general public or the Wholesale cost plus up to 50 percent

6.   OTHER LABORATORY AND X-RAY SERVICES: Lesser of the usual and customary charge to the general public or statewide maximums established by the Department not to exceed the upper limits specified in Federal regulations.

7.   PHYSICIAN's SERVICES: Reimbursement for physician services are at the physician's usual and customary charges,
4/93–    not to exceed the maximum established by the Department.  Initially, maximum fee-for-service rates were established in 1978 when the Department reviewed the average charges for each of the allowable services.  The Department agreed to set the statewide maximum amount at 70 percent of the average charge by physician.  Annually the Department analyzes cost information and procedure code utilization of physician bills presented for Medicaid reimbursement of services rendered.  The rate maximums are periodically adjusted based upon the above factors.

Providers statewide who meet the participation requirements for the Maternal and Child Health Program or qualify by the exception process receive enhanced reimbursement rates for services provided to pregnant women and children through age 20 who are participants in the MCH Program.  The enhanced rates include:

- payment for performing a prenatal risk assessment ($15);
- payment for performing risk assessments on children ($15);
- increased reimbursement for deliveries ($400 additional);
- a $10 increase in the EPSDT screening rate; and
- an 8 percent increase in the reimbursement rate for office visits for children.

TN# 01-15                    Approval Date _____        Effective Date 07-01-01
Supercedes
TN# 00-15

HHC009-1319        L

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-15
Baltimore, Maryland 21244-1850



**Family & Children's Health Group/Centers for Medicaid & State Operations**

DATE:       NOV 3 0 2001

FROM:       Director

SUBJECT:    Wisconsin State Plan Amendment 01-009

TO:         Associate Regional Administrator
            Region V, Chicago
            Attn: Division of Medicaid and State Operations

We have completed our review of the Wisconsin State Plan Amendment (SPA) 01-009 and your
informal request to the State for additional information. We concur with your concerns that the State
has not adequately provided documentation to support the reimbursement methodology of the
Estimated Acquisition Cost (EAC) representing Average Wholesale Price (AWP) minus
11.25 percent. In addition, we have the following comments:

**Attachment 4.19B:**

1.      Please ask the State to provide the revised page(s) specifying the proposed changes.

2.      Please ask the State to provide the documentation used to determine that the proposed EAC is
        the best estimate of prices that pharmacists in the State are generally and currently paying for
        prescribed drugs.

If you have any additional questions or concerns, please contact Kim Howell of my staff at
(410) 786-6762.

Larry Reed

RECEIVED
DEC 1 3 2001
CMS-V-ORA

cc:
Regional Administrator
Division of Medicaid
Region V, Chicago
Attn: Division of Medicaid and State Operations

RECEIVED
DEC 1 3 2001

HHC009-1130       FL

| | |
|---|---|
| **From:** | "Alfred Matano" <matana@dhfs.state.wi.us> |
| **To:** | <PCarson@cms.hhs.gov> |
| **Date:** | 12/19/01 1:09PM |
| **Subject:** | Re: Wisconsin SPA 01-009 |

Hello Pam:

Here are answers to your additional questions on our pharmacy state plan amendment, #01-009.

Al Matano
Division of Health Care Financing
267-6848

>>> Rita Hallett 12/13/01 08:50AM >>>

Al
Here are the answers

1) The Legislature set the rate, so we don't have estimating data.

2) Controlled drugs are reimbursed the same as other drugs - either AWP-11.25% or MAC price.

3) Traditional fee - $4.88
Unit dose $6.94
Pharmaceutical Care - $9.45, $14.68, $22.16 or $40.11

>>> Alfred Matano 12/11/01 09:56AM >>>

>>> "Pamela Carson" <PCarson@cms.hhs.gov> 11/28/01 09:52AM >>>
additional comments:

1. The State needs to provide the data used in their decision to determine that the change is reimbursement is their best estimate.

2. Please specify the reimbursement for controlled substances.

3. Please specify the dispensing fees.

I hope that you enjoyed your time off.

Kim

Pamela Carson
National Account Representative
Centers for Medicare & Medicaid Services
Division of Medicaid & Childrens Health
233 N. Michigan Ave, Suite 600
Chicago, IL 60601
Phone# (312 ) 353-0108
Fax# (312 ) 353-3866
e-mail PCarson@CMS.HHS.gov

**CC:**         "Rita Hallett" <HALLER@dhfs.state.wi.us>, "Diane  Maculan"
<MaculDL@dhfs.state.wi.us>

HHC009-1125      L

**From:** Kimberly Howell
**To:** Carson, Pamela
**Date:** 3/25/02 2:27PM
**Subject:** Re: Fwd: Wisconsin SPA 01-009 Prescription Drugs

Pam,

No problem.

>>> Pamela Carson 03/25/02 02:51PM >>>
I'm only repeating what they said it was their concern. but thanks

>>> Kimberly Howell 03/25/02 12:07PM >>>
Pam,

The request was made based on the State's response that "after careful review of all the information, the
Wisconsin Legislature established the price to be paid for prescription drugs to be AWP minus 11.25
percent". Furthermore, the findings of the OIG reports have been disputed by both pharmacy providers &
state Medicaid agencies. The response indicates that Wisconsin's determination of the EAC was not
based solely on one data source or another, but based on results from a review of data from several
sources. The request was not meant to question Wisconsin's legislature, but simply to obtain whatever
documentation that was used to derive at the decision that AWP-11.25% was their best estimate. There
are several prior
instances where the study submitted by the State did not solely support a proposed EAC. However, a
further analysis performed by the State to derive at the proposed EAC in conjunction with the study
supported the State's best estimate of the EAC level. I hope this information addresses your concerns.

Kim
>>> Pamela Carson 03/25/02 12:28PM >>>
Kim
I think the part that really bothered them the most even thought they didn't like any of the request was that
you wanted a copy of any additional analysis that was used to arrive at the AWP minus 11.25 percent.
They think this is questioning the legislatures analysts, Since it was the legislatures that determine that
the price that would be paid for prescription drugs would be the AWP minus 11.25%.

Pamela Carson
National Account Representative
Centers for Medicare & Medicaid Services
Division of Medicaid & Childrens Health
233 N. Michigan Ave, Suite 600
Chicago, IL 60601
Phone# (312 ) 353-0108
Fax# (312 ) 353-3866
e-mail PCarson@CMS.HHS.gov

>>> Kimberly Howell 03/25/02 08:32AM >>>
Wisconsin submitted SPA 01-009 on 09/28/01, which proposes to change the EAC from AWP-10% to
AWP-11.25%. The RAI was sent to the State for the following on 12/14/01 for which the State responded
on 3/12/02:

1. The documentation used to determine that the proposed EAC is the bet estimate.
2. Specifics of "its current" dispensing fees & clarification of whether this SPA propose a change in the
dispensing fee.
3. Specifics on the copayments pursuant to Chapter 49 of the Wisconsin statute.

4.  Clarification of what is meant by the statement that "The Department will adjust payments made by providers to reflect the amounts of any allowable copayments which the providers are required to collect.

The State had adequately responded to questions 2 through 4.  In reference to #1, the State specified the title of the four studies, as well as other documentation  that was used in their determination of the EAC level, but the actual information was not submitted with their response.  A request was made to the RO to obtain a copy of the study specific to Wisconsin, & other documentation used in their determination.  The RO has indicated that
Wisconsin may be angry that the copies of the documentation has been requested.

>>> Pamela Carson 03/22/02 04:56PM >>>
FYI
Heads up.
The state plan coordinator from WI just called and he thinks the powers that be in WI are going  to be angry about your request.  Stay tuned.

| | |
|---|---|
| **From:** | Jessie Spillers |
| **To:** | CPelter@BALT3.CO3, |
| **Date:** | Fri, Sep 29, 2000 11:08 am |
| **Subject:** | South Carolina SPA Question -Reply |

Just to make doubly sure, I assume South Carolina's SPA 00-09 is approvable. Please confirm. Thanks.

> > > Cindy Pelter 09/20/00 7:56am  > > >
Hi Jessie,

I just wanted to get back to you on your question regarding the difference between the Estimated Acquisition Cost (EAC) and the drug rebate calculation.

Each State defines its EAC as being a percentage off of AWP. This percentage is determined completely at the State level. In South Carolina's SPA, for example, they are defining EAC as AWP - 10%. This calculation is then used to identify the amount at which the State reimburses its providers.

The Medicaid drug rebate calculation is a completely separate calculation from the EAC. This calculation specifies the rebate amount that manufacturers are required to pay the State Medicaid Agencies. Unlike the reimbursement calculation I described above, this amount is not decided at the State level; rather, Section 1927 (c) of the Social Security Act governs the rebate methodology which is 15.1% of AMP for brand drugs and 11% of AMP for generic drugs.

I hope that this information has helped to clarify these two calculations for you. If you have any more questions, please give me a call or send me an email.

Sincerely,

Cindy Pelter
CMSO

| | |
|---|---|
| **CC:** | SGaston@BALT2.CO2, |

HHC004-0132

**From:** Larry Reed
**To:** BALT2.CO2(KHowell, SGaston), BALT3.CO3(CPelten), A...
**Date:** Wed, Oct 4, 2000 4:43 pm
**Subject:** Comments on SC SPA 00-009 -Forwarded -Reply -Reply -Reply

Jessie,

I can't answer for the past, but simply say what the requirements are. My answers follow your questions.

1. Last year South Carolina SPA 99-08 increased the percentage from 10% to 13%. Central Office (Sue Gaston) never asked for the type of documentation then that is being asked for now.

The regulatory requirements are that the State make its best estimate of what the acquisition cost for drugs are. Why is this the State's best estimate? For example, recent OIG studies have shown the average brand name drug discount to be AWP - 17% and generics AWP - 42%. What is the basis for SC to conclude that AWP - 10% iss the proper discount.

2. Is it because they are <u>decreasing</u> the percentage back to 10% that the documentation is needed?

A decrease in this area when other documentation shows the AWP discount should be increasing, makes the basis for their estimate that much more important.

3. They were directed by their legislature to go back to 10%. They also claim that the other States in Region IV are at 10%, so why the concern from Central Office with South Carolina?

I think it would be a difficult case for the State to make that its estimate was based on the legislative directive (although perhaps the directive was based on some estimate the State could use). Please see the August 94 ARA memo for other things the State might base its estimate on.

Larry

>>> Jessie Spillers 10/04/00 09:20am >>>
Larry,

I'm getting a lot of flack from the State on your response. Their reasons are:

1. Last year South Carolina SPA 99-08 increased the percentage from 10% to 13%. Central Office (Sue Gaston) never asked for the type of documentation then that is being asked for now.

2. Is it because they are <u>decreasing</u> the percentage back to 10% that the documentation is needed?

3. They were directed by their legislature to go back to 10%. They also claim that the other States in Region IV are at 10%, so why the concern from Central Office with South Carolina?

Any assistance would be appreciated.

>>> Larry Reed 10/02/00 1:01pm >>>
Jessie- The State really needs to prove its case in proposing this change. See 42 CFR 447.301 -.333 (esp defn of EAC at .301) and memo from Director, Medicaid Bureau to all ARAs dated 8/12/94. Without that documentattion, I don't think the amendment can be approved. Larry

>>> Jessie Spillers 09/29/00 03:44pm >>>
Attached is our finacial person's comments on this SPA. It is only changing the estimated acquisition cost (UPL) from average wholesale price less 13%, to average wholesale price less 10%. To me it is approvable, do you agree?

# REPORT OF CONTACT

Date:   October 5, 1999

Author: Shirley Glaspie

Contact: Conference with CMSO & ArkDMS

Telephone: (410) 786-3325

Subject:  Arkansas SPA-99-03 – Reimbursement Methodology for Prescribed Drugs

Participants:

| | |
|---|---|
| Sue Gaston | Shirley Glaspie |
| Kelly Gomez | Sister Margaret Cano |
| Larry Reed | Andy Fredrickson |

A conference call was held on the above date to discuss the CO/RO's recommendation for disapproval of the subject plan amendment.  This recommendation is based on Section 1902(a)(30) of the Social Security Act, which requires that State payments be consistent with efficiency, economy, and quality of care.  The State has not submitted adequate documentation to justify the reasonableness of its proposed dispensing fee.  They have inappropriately added a profit of $.80 to it dispensing fee.  The calculation of a dispensing fee should already incorporate all activities relating to the dispensing of the drug and the additional profit should not be added to the dispensing fee.  In addition, there is nothing in the survey to support the discount of the reimbursement formula of AWP minus 10.5% as reflected in the SPA.  The reimbursement methodology should reflect the method described in the survey results (i.e., AWP minus 17.3%).  The disapproval package is in departmental clearance.  The 90th day expires on October 20, 1999.

We called the State to give them a heads up on the disapproval.  Ray Hanley would like to have a meeting with RO staff along with representatives from the Pharmaceutical Association to discuss our concerns before a denial letter is issued.

HHC010-0833



# Arkansas Department of Human Services
## Division of Medical Services

Donaghey Plaza South
P.O. Box 1437
Little Rock, Arkansas 72203-1437
Telephone (501) 682-8292    TDD (501) 682-6789    FAX (501) 682-1197

November 3, 1999



Andrew A. Fredrickson
Acting Associate Regional Administrator
Division of Medicaid and State Operations
1301 Young Street, Room 833
Dallas, TX 75202

Reference: SP-AR-99-003

Dear Mr. Fredrickson:

This letter responds to your letter dated January 4, 1999 regarding Arkansas State Plan Transmittal 99-003. Please consider the following additional information.

1.      Attachment 4.19-B
        Page 4
        Item 12.a. Prescribed Drugs
        1st – 4th Paragraphs

As these paragraphs provide background material, we would recommend that you remove this background language from the State Plan Amendment or only address the issues raised by this amendment. Reference to State legislation should be deleted, although if there is a pertinent part of that legislation related to this amendment, that language may be included.

**We have removed 1st and 3rd paragraphs from the state plan and have included the background information in this letter.**

Background

**To comply with Section 119 of Act 1360 of 1997, a survey was commissioned to determine the costs incurred by Arkansas pharmacists to dispense Medicaid prescriptions. Seventy percent of pharmacists enrolled in the Arkansas Medicaid program responded to the survey providing actual data from their pharmacies.**

**The survey was completed July 15, 1998. The results of the survey were Average Wholesale Price (AWP) minus 17.3% as the ingredient cost and $5.51 as a dispensing fee.**

"The Department of Human Services is in compliance with Titles VI and VII of the Civil Rights Act."

Letter to Andrew A. Fredrickson
Page 2
Subj: SP-AR-99-003

**Based on the survey, the Arkansas Division of Medical Services (DMS) set a rate consistent with efficiency and economy.  In addition the rate is designed to assure quality care and access to services as required by federal law.**

2.      Item 12.a. Prescribed Drugs
        <u>DISPENSING FEE:</u>

The survey specifies on page 2 that the cost surveys collected information on all direct and overhead costs incurred in pharmacy operations.  The survey findings support a dispensing fee of $4.71.  A profit of $.80 was added to the dispensing fee as detailed on page 3 of the survey.  The calculation of a dispensing fee should already incorporate all activities relating to the dispensing of the drug and the additional profit should not be added to the dispensing fee.  Please explain why profit was added to this figure or delete the additional $.80.

**Federal regulations governing Medicaid pharmacy reimbursement (see CFR 447.331) do not require that a dispensing fee be based on costs alone.  Rather, a "reasonable dispensing fee established by the agency" is required.  The $5.51 dispensing fee proposed by the department consists of:**

- **Average costs of dispensing per prescription of $4.71, and**
- **A minimal allowance for return of investment costs of $0.80 to reflect the reality that a retail pharmacy's existence is based upon an ability to produce a return on investment for its owners.**

**The proposed dispensing fee is a reasonable dispensing fee supported by a comprehensive survey of pharmacy dispensing costs and profit allowances.**

3.      Attachment 4.19-B
        Page 4
        Item 12.a. Prescribed Drugs
        <u>INGREDIENT COST:</u>

The survey findings clearly reflect that the majority of Arkansas pharmacies report their ingredient costs for drugs to be 17.3% of the mean discounted from AWP and the larger pharmacies could achieve further discounts.  As such, it appears that your reimbursement methodology should reflect the methodology described in the survey results, i.e. AWP minus 17.3%.  There is nothing in the survey to support the discount of the reimbursement formula of AWP minus 10.5% as reflected in the SPA.  Please provide adequate documentation to support the further reduced reimbursement formula.

**The acquisition cost survey performed by Myers and Stauffer determined that the average acquisition cost of brand name drugs is AWP minus 17.3%.  To reiterate, this was the average.  There were many brand name drug products sampled which had average acquisitions costs in the range of AWP minus 11% to 16%.  Setting the reimbursement level at AWP minus 10.5% ensures adequate reimbursement for a broad range of products.**

Letter to Andrew A. Fredrickson
Page 3
Subj: SP-AR-99-003

**Additionally, there is strong historical support for ingredient reimbursement set at AWP minus 10.5%. According to a recent survey of state Medicaid pharmacy reimbursement rates (see Pharmaceutical Benefits Under State Medical Assistance Programs, National Pharmaceutical Council, 1997) there are 28 states which reimburse for ingredient costs in the range of AWP minus 10% to 11%.**

**The proposed reimbursement change actually represents a decrease in ingredient reimbursement due to the elimination of the variable dispensing fee. The current dispensing fee is $4.51 + 10.3% x EAC. Since EAC on the typical Medicaid brand name prescription is $20 to $80, the typical dispensing fee allowance under the current method is $6.50 to over $12.00. In fact, for a sample of 20 high volume drugs, the average dispensing fee was $10.70 (see Exhibit A). Under both the current and proposed methodologies, ingredient cost is reimbursed at AWP minus 10.5%, so the only change is the dramatic reduction in the dispensing fee, by removal of the variable fee.**

4.      Item 12.a. Prescribed Drugs
        PAYMENT LIMITATIONS – INGREDIENTS:
        1ST Paragraph

Please provide a more comprehensive description of the State generic upper limit payment methodology in the SPA.

**We have added additional information to this portion of the SPA regarding the State generic upper limit.**

5.      Item 12.a. Prescribed Drugs
        PAYMENT LIMITATIONS – INGREDIENTS:
        2nd Paragraph

Please remove the phrase "on Attachment 4.19-B, page 4a" and add the word "below." It appears that you erroneously picked up a reference from the currently approved plan.

**We have revised Attachment 4.19-B, page 4a, to remove the phrase "on Attachment 4.19-B, page 4a" and added the word "below."**

6.      Attachment 4.19-B
        Page 4a
        Item 12.a. Prescribed Drugs
        PAYMENT LIMITATIONS – INGREDIENTS:
        1ST Paragraph

Please clarify what is meant by the term "certified" as used in this paragraph to describe brand name drugs.

**We have deleted the term "certified" from the state plan language. We have determined this is not an appropriate term to describe brand name drugs.**

Letter to Andrew A. Fredrickson
Page 4
Subj: SP-AR-99-003

FEDERAL BUDGET IMPACT:

The total cost shown for paid claims 7/97-6/98 ($147,653,355) does not agree with the total cost reported on the HCFA-64 ($144,348,380) for this same period, which is the actual cost claimed. Please show the calculations of the totals (ingredient cost and total fee) for FFP, and the sources from which they were derived.

**Attached is a copy of Report HMMR070J that was used to calculate the federal budget impact. The figures were based on claim dates.**

Attached is a corrected Attachment 4.19-B, pages 4 and 4a. Please substitute these corrected pages with TN 99-003.

The following information is provided to respond to questions dated October 13, 1999 from Shirley Glaspie:

INGREDIENT COST

Does the survey find that the 17.3% discount from AWP to be the best estimate of what pharmacies are generally and currently paying for drugs in Arkansas? If not, what does the survey show?

**Yes. The acquisition cost study Myers and Stauffer conducted for the Department found a mean discount of 17.3% from AWP for brand drugs. This was the average of actual brand drug acquisition prices paid by a sample of 37 Arkansas pharmacies, encompassing a total of 5,251 drug purchase observations. The small amount of variation in discounts between different pharmacies indicates that this is a reliable estimate of what pharmacies are generally paying for brand drugs in Arkansas. (Standard statistical analysis shows a confidence interval of less than 1.5% around the observed 17.3% average discount, at the 95% confidence level.)**

Does the survey show that there was a difference in discounts between the chains and independents? Please explain.

**The report issued by Myers and Stauffer dated July 15, 1998 stated a finding that there were no differences in acquisition cost that were associated with chain/ independent status. In response to subsequent attention to this issue, Myers and Stauffer has re-evaluated this aspect of the survey. Myers and Stauffer now finds that the data collected by the Arkansas survey does not provide a sufficient basis to make a determination of the actual acquisition cost discounts achieved by chain pharmacies.**

**Only six of the stores in the acquisition cost study were chain pharmacies. Of these six, three were from chains that operate their own wholesale operations. The invoices supplied by these stores to Myers and Stauffer were internal invoices generated by the chain itself, and not an invoice reflecting a true arms-length transaction with an independent distributor. In fact, average drug prices on these internal invoices were higher than prices paid by even small independent**

HHC010-0805

Letter to Andrew A. Fredrickson
Page 5
Subj: SP-AR-99-003

operations.  Given the small acquisition cost sample size for chain pharmacies, and the prima facie unreliability of the data submitted by half of the stores in the sample, it is not possible to reliably estimate chain pharmacy acquisition cost discounts.  Thus, it can not be determined based on the 1997/98 Arkansas acquisition cost study whether there is or is not a difference between the discounts obtained by chains and independents.

Subsequent to the Arkansas study, Myers and Stauffer conducted a Medicaid pharmacy study in which acquisition cost differences between chains and independents was identified as a focus area.  For this study, Myers and Stauffer ensured sufficient representation of chain stores in the acquisition cost sample, and controlled for chains that utilized internal wholesaling and invoicing.  This study did find a statistically significant difference, with chains paying less for brand drugs than independents.  Myers and Stauffer has conducted drug acquisition cost studies in three different states in the past two years, and has found an extraordinarily high level of consistency between wholesaler prices to pharmacies, from state to state.  Because of this consistency between states, it is a reasonable inference that chain stores in Arkansas also receive greater discounts than independents.

How was the $.80 allowance for profit in the dispensing fee devised?

The $0.80 profit allowance in the dispensing fee represents the difference between average gross margin and average dispensing cost.

What is the interpretation of the gross margin, what does it include?

The gross margin was derived from the selling price of pharmacies for prescriptions dispensed to non-Medicaid patients.  The gross margin is the selling price for the particular prescription, less cost of goods.

What is the interpretation of cost of goods sold, what does it include?

For the purpose of computing gross margin, we used Arkansas' current EAC rate (AWP – 10.5%) to compute cost of goods.  The cost of goods refers to an estimate of the ingredient cost only.  It does not include overhead or labor expenses.

Does the $.80 represent the difference between what the pharmacist charged and what the cost of filling a prescription was?  How did you measure this, e.g., based on Table 1 was it the reported charges by pharmacies?

No.  The $0.80 represents the difference between selling price and dispensing cost plus the above-referenced EAC formula for cost of goods.

Selling price was measured with a random sample of 50 prescriptions filled by each of the pharmacies participating in the dispensing cost survey (N=438).  Pharmacies were requested to supply the amount actually received for the prescription, including the effect of any third-party contractual write-offs.  Even

Letter to Andrew A. Fredrickson
Page 6
Subj: SP-AR-99-003

though some pharmacies are believed to have reported usual and customary charges rather than actual third-party payments, when all pharmacies are aggregated, the average selling price used in the gross margin computation is lower than "charges" due to the impact of third party contractual discounts.

The survey provides the rationale to determine the average costs of dispensing per prescription.  We do not understand the methodology used to determine that the $.80 is reasonable.

The profit allowance was derived from the results of gross margin analysis.  This approach has been used by a number of states in the past.  A profit allowance that would limit Medicaid maximum allowable payments to no more than the average amount received from other pharmacy customers (including the lower reimbursements paid by many third parties) was determined to be reasonable. Eighty cents is that number.

Please submit any other additional information the state wants to supply.

The reimbursement formula outlined in SPA 99-003 results in a net decrease in Medicaid pharmacy reimbursements relative to the formula in effect prior to July 1, 1999.  This is the result of the elimination of the variable component of the previous dispensing fee formula.  It was the State's understanding that HCFA wanted this variable free removed to allow a decrease in reimbursement.

If you have any questions, please contact me at (501) 682-8292 or Binnie Alberius at (501) 682-8361.

Sincerely,

Ray Hanley
Director

Attachments

Cc:  Breck Hopkins
     Teresa Hursey
     Binnie Alberius
     Suzette Bridges
     Richard Beck



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
Health Care Financing Administration

---

Center for Medicaid and State Operations
Family and Children's Health Programs Group
Division of Benefits Coverage and Payment
7500 Security Boulevard
Baltimore, MD 21244-1850

JAN 2 7 2000

To:   Branch Chief
      Division of Medicaid and State Operations
      Region VI- Dallas

From: Director
      Division of Benefits Coverage and Payments
      Family and Children's Health Program Group

Re:   Approval of Arkansas State Plan Amendment 99-003

We have completed our review of state plan amendment (SPA) 99-003.  This amendment
updates the Arkansas State Plan by revising Attachment 4.19-B to change the dispensing fee
component of the drug reimbursement rate to $5.51.

We conducted our review of your proposal in accordance with Federal regulations at 42 CFR
447.331 and 447.332 and the approved reimbursement methodology review and survey
procedures set forth in Arkansas State Plan Attachment 4.19-B Page 4a.  Based upon the state's
written response to the request for additional information, and information received from
subsequent telephone conversations, we are pleased to inform you that Arkansas SPA 99-03,
effective October 1, 1999 is approved for incorporation into the approved plan.  Please note, our
records indicate we disapproved SPA 91-24 on August 14, 1992.  Therefore, SPA 99-003 is an
amendment to the approved plan as amended by SPA 89-24.

Should you have any further questions regarding this amendment, please contact Kelli Gomez of
my staff at 410-786-7969.

Nicole Tapay
Director