# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | Judge Patti B. Saris |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | |
| *Inc. v. Abbott Laboratories, Inc.,* | ) | Magistrate Judge Marianne B. Bowler |
| No. 06-CV-11337-PBS | ) | |
| | ) | |
| | ) | |

## ABBOTT LABORATORIES INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL SUFFICIENT RESPONSES TO ABBOTT'S REQUESTS FOR ADMISSION

Dated:  March 31, 2008

Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Jason Winchester
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.     THE UNITED STATES' ANSWERS TO RFAs 1 THROUGH 69 ARE QUALIFIED
       BY FRIVOLOUS OBJECTIONS, AND SHOULD BE DEEMED ADMITTED. ............ 2

       A.     The United States' Objections that Documents "Speak for Themselves" are
              Improper..................................................................................................... 4

       B.     The Repeated Objections that RFAs were "Out of Context" are Frivolous. .......... 5

       C.     The Objections Based on the Government's Unease with the Potential
              Implications of their Admissions are Meritless. ..................................................... 6

       D.     The Objections Based on Admissibility Are Improper........................................... 8

II.    THE UNITED STATES' FAILURE TO ADMIT OR DENY THE TRUTH OF ITS
       PREVIOUS STATEMENTS IS IMPROPER. ................................................................... 9

III.   THE GOVERNMENT'S REFUSAL TO ANSWER SEVERAL REQUESTS FOR
       ADMISSIONS, ON GROUNDS THAT THEY CALLED FOR "LEGAL
       CONCLUSIONS," WAS IMPROPER........................................................................... 11

IV.    THE UNITED STATES' FAILURE TO RESPOND TO THE REQUESTS
       FOR ADMISSION REGARDING GOVERNMENT DRUG PURCHASES
       IS BASELESS ............................................................................................................. 13

CONCLUSION........................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Booth Oil Site Admin. Group v. Safety-Kleen Corp.*,
    194 F.R.D. 76 (W.D.N.Y. 2000) ..................................................................5, 8

*Chavenfield Corp. v. H & R Block*,
    67 F.R.D. 93 (W.D. Mo. 1973) ...................................................................14

*Chicot County Drainage Dist. v. Baxter State Bank*,
    308 U.S. 371 (1940) ...................................................................................12

*Clark v. United States*,
    8 Cl.Ct. 649 (1985) ......................................................................................9

*Doe v. Mercy Health Corp.*,
    No. 92-6712, 1993 WL 377064 (E.D. Pa. Sept. 15, 1993). ..........................6

*Fisher v. Baltimore Life Ins. Co.*,
    235 F.R.D. 617 (N.D. W.Va. 2006). .............................................................7

*Flanders v. Claydon*,
    115 F.R.D. 70 (D. Mass. 1987) .....................................................6, 7, 10, 14

*Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*,
    246 F.R.D. 522 (S.D. W.Va. 2007) ..............................................................4

*Harris v. Oil Reclaiming Co., Ltd.*,
    190 F.R.D. 674 (D. Kan. 1999) .....................................................................8

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
    No. 05-2164, 2007 WL 3171768 (D. Kan. Oct. 29, 2007). ........................12

*Henry v. Champlain Enters., Inc.*,
    212 F.R.D. 73 (N.D.N.Y. 2003) ....................................................................7

*Hill v. Equitable Trust Co.*,
    851 F.2d 691 (3d Cir. 1988) ........................................................................12

*Interland, Inc. v. Bunting*,
    No. 1:04-CV-444-ODE, 2005 WL 2414990 (N.D. Ga. March 31, 2005) .........7

*Lamoureux v. Genesis Pharm. Servs., Inc.*,
    226 F.R.D. 154 (D. Conn. 2004) ...................................................................8

# <u>TABLE OF AUTHORITIES (CONT.)</u>

**Page**

## CASES

*Lewis v. Michaels Stores, Inc.*,
    No. 3:05-cv-1323, 2007 WL 2021833 (M.D. Fla. July 12, 2007) ..........................7, 10, 14

*Miller v. Holzmann*,
    240 F.R.D. 1 (D.D.C. 2006)........................................................................................5

*In re Pharm. Industry Average Wholesale Price Litig.*,
    478 F. Supp. 2d 164 (D. Mass. 2007) ......................................................................9

*Siegel v. United States*,
    101 F. Supp. 98 (E.D.N.Y. 1951) ...........................................................................12

*Sigmund v. Starwood Urban Retail VI, LLC*,
    236 F.R.D. 43 (D.D.C. 2006)...................................................................................12

*United States  v. Barile*,
    286 F.3d 749 (4th Cir. 2002) ....................................................................................9

*United States v. Romero*,
    32 F.3d 641 (1st Cir. 1994).......................................................................................9

*Wagner v. St. Paul Fire & Marine Ins. Co.*,
    238 F.R.D. 418 (N.D. W.Va. 2006)..........................................................................8

## STATUTES AND RULES

Federal Rule of Civil Procedure 36 ................................................................ *passim*

Federal Rule of Evidence 801(d)(2) ............................................................................9

Federal Rule of Evidence 803(6) .................................................................................9

Federal Rule of Evidence 803(8) .................................................................................9

## INTRODUCTION

In an effort to help streamline the discovery process, Abbott served revised Requests for Admissions ("RFAs") on November 30, 2007.[1] (Ex. A)  Rather than burdening the parties with taking the deposition of every single relevant witness, including members of Congress and witnesses now difficult to locate due to the passage of time, Abbott's RFAs sought to obtain admissible evidence through more efficient means, as a prelude to possible stipulations at trial.

These RFAs should have been largely uncontroversial, with the majority asking the Government to authenticate various government documents and admit that certain statements made by Government officials were, in fact, made by those people in the course of their business. But the Government's response spurned Abbott's efforts to cooperate, refusing to admit or deny numerous requests and interposing a flurry of meritless objections.  See U.S.' Objs. and Resp. to Abbott's Revised First Set of Requests For Admission to Plaintiff United States of America and Relator Ven-A-Care of the Florida Keys, Inc. (2/11/08) ("Govt's RFA Resp.") (Ex. B).  In other instances, the Government simply refused to reply entirely.

Moreover, when the parties met and conferred with respect to the Government's responses, Abbott shared legal authority supporting its position that the Government's objections were unfounded.  In most instances, the Government merely responded, without elaboration, that it was unpersuaded, and refused to reconsider its positions.

Abbott's RFAs that are the subject of this motion fall into several categories; each of which is described in greater detail below:

- Requests asking the United States to admit that Government officials have made certain statements concerning AWP or payment for drugs;

---

[1] Abbott originally served RFAs on July 12, 2006, but revised them after the Court's Case Management Order limited the parties to 100 requests seeking "authentication of documents, certification of business records, or an admission that a person or entity made a statement in any document or that was otherwise recorded at the time the statement was made," along with 150 other requests that do not seek authentication.  CMO No. 29 (3/23/07).

- Requests asking the United States to admit propositions previously asserted by Government officials concerning AWP or payment for drugs;

- Requests that the United States refuses to admit or deny on the ground that Abbott is seeking a "legal conclusion" or "contention interrogatory"

- Requests seeking admissions that the United States itself has purchased the Subject Drugs at large discounts off of AWP.

Abbott's reason for serving RFAs was an effort to simplify the discovery process. The Government's obstinacy has now obstructed Abbott from officially offering evidence on these important topics, without any legal support in doing so. The Court should now require the United States to provide adequate answers to the RFAs, or else the Court should overrule the Government's improper objections and order that the RFAs be deemed admitted in full.

## ARGUMENT

Federal Rule 36(a)(6) provides that a party requesting RFAs "may move to determine the sufficiency of an answer or objection," and where the response is not in compliance with the rule, the Court "may order either that the matter is admitted or that an amended answer be served." Here, the United States has offered only qualified answers to the bulk of Abbott's RFAs, and has propounded frivolous objections in justification of their half-answers. In some instances, the Government has outright refused to give a straight answer at all. Because the Government's objections are improper, they should be overruled, and the Court should order that the Government's qualified answers be deemed admitted without qualification, or else order that the Government file amended answers.

## I.   THE UNITED STATES' ANSWERS TO RFAs 1 THROUGH 69 ARE QUALIFIED BY FRIVOLOUS OBJECTIONS, AND SHOULD BE DEEMED ADMITTED.

The majority of the RFAs for which the Government failed to provide a straight answer were, ironically, the most straight-forward and uncontroversial. These RFAs requested that the

Government admit that various statements made by Government officials and transcribed into

memoranda, official reports, or the public record were, in fact, made by those officials in the

course of their duties.  *See generally* RFAs 1-69.  With respect to each such RFA, Abbott

attached as an exhibit the document in which the statement was transcribed.  For example,

Abbott's RFA 1 reads as follows:

> On August 6, 1968, Irwin Wolkstein, Assistant Director of the Division
> of Policy and Standards at the U.S. Department of Health, Education
> and Welfare, wrote a memorandum stating that the "Red book" is a
> "listing of prices of manufacturers which is often violated by volume
> and other discounts" and "would be subject to abuse by manufacturers
> setting prices high to advantage retailers."

Abbott attached, as exhibit 1, a copy of that memorandum, and asked the Government to admit

that "Exhibit 1 is a true and accurate copy of that memorandum.  It was made at or near the time

by, or from information transmitted by, a person with knowledge of the contents of the

memorandum, and was made and kept in the course of regularly conducted business activity."  *Id.*

        In response, the Government set forth a flurry of questionable objections, stating—with

little or no explanation—that (1) the RFA was an "improper request seeking information

concerning the genuineness of the document" (despite Rule 36(a)(1)(B)'s express language

permitting RFAs about "the genuineness of any described documents"); (2) that the document

was improperly quoted "out of context" in the RFA; (3) that the document "speaks for itself";

and (4) that the RFA requested "immaterial, irrelevant . . . hearsay."  The Government then

stated that, despite its objections, it "w[ould] not challenge such an introduction on authenticity

or genuineness grounds."  Govt's RFA Resp. 4.  Thereafter, the Government offered a qualified

answer, repeating its objections and admitting only that the document was maintained by the

Government and that Wolkstein is its "listed author."  The response did not admit (or expressly

deny) that Wolkstein or any other "person with knowledge of the contents of the memorandum"

made the document, as the RFA requested.  *Id.* at 4-5.  Moreover, the response offered further

qualifications—none of which were germane to the actual admission requested—that render the

admission all but worthless:

> By making the qualified admissions herein concerning the content of
> Exhibit "1", however, the United States does not admit that the words or
> statements contained in Exhibit "1" represent any position by Centers
> for Medicare and Medicaid Services ("CMS"), or any predecessor
> agency, at any time, including for the operative period of this case from
> 1991 until 2003, but rather the United States acknowledges only that the
> quoted language is contained in Exhibit "1".
>
> The United States denies all other statements contained in this RFA not
> expressly admitted, objected to or qualified herein and submits that this
> response in no way provides any other admission or qualification
> concerning the subject matter of this exhibit or RFA.

*Id.* at 5.  A similar pattern persists through nearly all of the responses to Abbott's RFAs 1-69.

The Government offers improper objections, uncalled for qualifications, and commentary on

what it perceives to be the lack of persuasiveness of the admissions sought.  *See, e.g.*, *id.* at 18

(objecting to RFA 10 because "the quoted language is taken from a number of different pages of

this multi-page document, and spliced together improperly.").  As described below, each of these

objections is improper, and the qualifications are not "good faith" admissions or denials as

required by Rule 36(a)(4).  As such, RFAs 1-69 should be deemed admitted, or else the United

States should be required to amend their responses to provide good faith admissions or denials.

### A.    The United States' Objections that Documents "Speak for Themselves" are Improper.

The United States objected to every single RFA from 1-69 on grounds that the documents

"speak for themselves."  (*See* Govt's RFA Resp. 1-69).  However, the case law is clear that an

"objection that the referenced document speaks for itself . . . is not in compliance with Rule 36."

*Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 532 (S.D.W.Va.

2007) (internal quotation marks omitted).  As stated by one court,

> [A]s a statement of a document's text is a matter of fact, a request
> calling upon a party to admit or deny that such quoted material is the
> actual text of an identified document, relevant to the case, may not be
> ignored on the ground that the request seeks an interpretation of the text
> or that the document in question "speaks for itself." Documents do not
> speak, rather, they represent factual information from which legal
> consequences may follow. The existence of a referenced document and
> whether it contains a particular provision may well present factual
> issues of importance to the case. Thus, just as a Rule 36 request may
> seek to remove the issue of a document's "genuineness" or authenticity,
> *id.,* whether a particular document contains textual material as described
> in a request equally seeks to eliminate an unnecessary issue of fact for
> trial. It is therefore permissible to request that a party admit or deny a
> Rule 36 request as to the accuracy of quoted textual material from a
> particular document relevant to the case.

*Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000). *See also, e.g., Miller v. Holzmann,* 240 F.R.D. 1, 4 (D.D.C. 2006) ("[I]f [a] request for admission quotes a document[ ] and asks the other party to admit that the document contains the material quoted, it should be admitted if the quotation is accurate and denied if it is not. The tautological 'objection' that the finder of fact can read the document for itself to see if the quote is accurate is not a legitimate objection but an evasion of the responsibility to either admit or deny a request for admission[.]").  The United States, by contrast, cited no legal authority to support its contention that it could qualify or refuse to fully answer Abbott's RFA that the statements at issue were made in the documents because the documents "speak for themselves."  This objection is ill-founded, and the United States should therefore be required to amend its answers to admit that the identified statements were made, or else this Court should construe the Government as having admitting that those statements were made.

**B.       The Repeated Objections that RFAs were "Out of Context" are Frivolous.**

The United States also frequently objected that certain statements were "taken out of context."  (*See* Govt's RFA Resp. 1-2, 4-14, 17, 21-54, 57-68.)  This, too, is a frivolous objection to an RFA.  If the Government believes that the statements "do not say what [Abbott] asks [the

Government] to admit they do" because they are "out of context," then the Government "may

deny the RFA." *Doe v. Mercy Health Corp.*, No. Civ. A. No. 92-6712, 1993 WL 377064, at *11

(E.D. Pa. Sept. 15, 1993).  "If, on the other hand, the statements are accurately quoted or

referenced, [the Government] must admit the RFA, but is free to present evidence at trial

contradicting the quoted or referenced statement."  *Id.*; *see also Flanders v. Claydon*, 115 F.R.D.

70, 71-72 (D. Mass. 1987) ("Generally, qualification is permitted if the statement, although

containing some truth, standing alone out of context of the whole truth convey[s] unwarranted

and unfair inferences.") (quoting *Johnstone v. Cronlund*, 25 F.R.D. 42, 44 (E.D. Pa. 1960))

(internal quotation marks omitted).

     In any event, the bare objection based on "context" was improper.  Moreover, the

Government's qualified admissions show that its objections were not based on the position that

Abbott provided inaccurate quotations or references in its RFAs, or that the quoted material gave

improper inferences in light of the non-quoted material, and the Government therefore had no

basis to deny the RFAs or qualify their admissions.  *See Doe*, 1993 WL 377064, at *11.  Thus,

the objections to the RFAs should be overruled, and the United States should be deemed as

having admitted the statements were made, or else be required to provide amended answers.

     **C.**    **The Objections Based on the Government's Unease with the Potential
Implications of their Admissions are Meritless.**

     The United States also objected to RFAs 1-69 on grounds that "Abbott's definition of

AWP [is] not . . . an accurate definition of AWP or average wholesale price"[2] and qualified its

response to every RFA by stating that the statements it qualifiedly admitted did not "represent

---

    [2] Govt's RFA Resp. 4, 6-19, 20-48, 50-53, 57-58, 60-68.

any position by Centers for Medicare and Medicaid Services ("CMS"), or any predecessor agency, at any time."[3]   Both the objection and the qualifications are meritless.

As an initial matter, Abbott's RFAs 1-69 sought admissions as to whether certain statements were made, but did not ask the United States to admit to "Abbott's definition" of AWP, or whether the statements represented CMS's position.  Abbott simply asked the Government to admit that the statements were made, by persons with knowledge, in the sources identified.  As such, the objections and qualifications are not responsive to the requests, and should be overruled and ordered amended.  *See, e.g.*, *Flanders*, 115 F.R.D. at 71-72 (holding qualifications to be in bad faith where the request, as phrased, did not raise subject described by qualification); *Lewis v. Michaels Stores, Inc.*, No. 3:05-cv-1323, 2007 WL 2021833, at *2 (M.D. Fla. July 12, 2007) (requiring amended admission where party "d[id] not address the substance of th[e] assertion, but instead offer[ed] several irrelevant observations").

Moreover, the Government's true concern—its fear that these prior governmental statements are at odds with its current definition of AWP, and will be damaging to it at trial—is likewise no ground for objection.  If the Government does not like the potential implications of the statements and wishes to try to explain away their significance, it "will have the opportunity at trial" to do so, but it does "not change the admission that" the statements were made.  *See Harris v. Oil Reclaiming Co., Ltd.*, 190 F.R.D. 674, 676 (D. Kan. 1999) (rejecting party's Rule 36 objection based on potential consequences of admission, as "self-serving statements that

---

[3] The United States also purports to make a "global objection" to all of Abbott's RFPs on grounds that Abbott's AWP definition—unstated in the RFAs—was incorrect.  The "global objections" should be ignored, as "[g]eneral objections to requests for admission are prohibited."  *Fisher v. Baltimore Life Ins. Co.*, 235 F.R.D. 617, 630 (N.D. W.Va. 2006).  "Rule 36 is quite clear that the objection must be addressed to the specific matter with reasons 'therefore stated,'" and thus "[u]nless these objections are raised as to a specific request to admit, this Court [should] ignore them completely."  *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 80 (N.D.N.Y. 2003); *see also Interland, Inc. v. Bunting*, No. 1:04-CV-444-ODE, 2005 WL 2414990, at *9  (N.D. Ga. March 31, 2005) (finding "global guard tactic" of general objections to RFAs "is improper and [will be] ignore[d] . . . unless they are specifically asserted in response to a request.") (internal quotation marks omitted).

actions were taken or signatures executed in his capacity as an agent do not change his admission that the actions were taken and the signatures executed."); *Booth Oil*, 194 F.R.D. at 80 ("Even if the meaning of a document or the intent of the parties . . . is the issue ultimately to be decided, such questions do not raise a valid objection" to an RFA); *cf.* Fed. R. Civ. P. 36(a)(5) ("A party must not object solely on the ground that the request presents a genuine issue for trial.").

> **D.   The Objections Based on Admissibility Are Improper.**

Finally, the United States objects to RFAs 1-69 on grounds that the admissions sought are immaterial, irrelevant and/or hearsay.  These objections are procedurally flawed, and incorrect as a matter of law.  All should be overruled.

*First*, as a procedural matter, a party may not simply provide boilerplate objections that an RFA is irrelevant; rather, it must provide specific reasons for its objection.  *See Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 424 (N.D. W.Va. 2006) ("A broad objection that the request was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection.  Plaintiffs' objection that the request was "irrelevant" and "immaterial" clearly does not satisfy this standard and the objection must therefore fail.") (internal quotation marks and citations omitted); *see also Lamoureux v. Genesis Pharm. Servs., Inc.*, 226 F.R.D. 154, 159 (D. Conn. 2004) ("The objecting party bears the burden of demonstrating specifically how . . . each request is not relevant or how each question is overly broad, unduly burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.") (internal citations and quotation marks omitted).  Here, the United States has done nothing more than set forth bare, conclusory statements regarding admissibility.  For that reason alone, the objections should be overruled.

*Second*, the requests for admission are neither irrelevant nor immaterial; rather, they go directly to the heart of Abbott's defense.  This Court has already recognized that "[i]n some

circumstances, the government's 'knowledge [of a fraud] effectively negates the fraud or falsity required by the FCA'" and that the defenses raised by Abbott and others present a "difficult legal question." *In re Pharm. Industry Average Wholesale Price Litig.*, 478 F. Supp. 2d 164, 174-75 (D. Mass. 2007) (citation omitted). The Court expressly recognized that the "government knowledge" issue is a relevant factual matter which must be "tested in the crucible of trial." *Id.* (citation omitted). The prior government statements that are the subject of RFAs 1-69 directly show such government knowledge.

*Third*, and finally, the Government's hearsay objections (which, like the irrelevancy objections, are mere boilerplate) are clearly wrong. Every document referenced in RFAs 1-69 will be admissible on one of any number of grounds including:

- **Admissions of a party opponent**, Fed. R. Evid. 801(d)(2). *See United States v. Barile* 286 F.3d 749, 758 (4th Cir. 2002) (statements made by person "in her capacity as a government official on matters within the scope of her employment" are " the statements are of a party-opponent and therefore not hearsay."); *Clark v. United States*, 8 Cl.Ct. 649, 651 n. 1 (1985) ("statements of United States government officials concerning a matter within the scope of their employment are not hearsay");

- **Records of regularly conducted activity**, Fed. R. Evid. 803(6) ("A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity" is "not excluded by the hearsay rule."); or

- **Public records and reports**, Fed. R. Evid. 803(8). *See United States v. Romero*, 32 F.3d 641, 650 (1st Cir. 1994) ("[Rule] 803(8)(A) . . . excepts from the hearsay rule public-agency statements 'in any form' setting forth 'the activities of the office or agency.'").

The Government's relevancy and hearsay objections should be overruled.

## II.   THE UNITED STATES' FAILURE TO ADMIT OR DENY THE TRUTH OF ITS PREVIOUS STATEMENTS IS IMPROPER.

The second batch of RFAs to which the Government has improperly objected ask the Government to admit propositions taken directly from reports or briefs that were created by the

United States.  *See generally* RFAs 144-73.  For example, RFA 167 seeks an admission that "[a]s of October 20, 1992, HCFA was aware that the EAC of Vancocin/Vancomycin 500 ML was $5.00 while the median AWP for the same drug was $19.17, based on surveys of actual invoice prices at dialysis facilities during May 1991."  This is a proposition made apparent by a chart in an Oct. 20, 1992 HHS-OIG report entitled *Cost of Dialysis-Related Drugs* (A-01-91-00526) (Ex. C at 6).  Similarly, RFAs 148 and 149 ask the Government to admit that "[a]fter 1984, the Secretary of HHS was aware of a widening base of documented evidence demonstrating that AWP significantly overstated the Provider's acquisition costs," and that "[i]n or about 1984, HHS became convinced as a factual matter that there was a significant discrepancy between AWP and the actual purchase prices for drugs."  These statements come directly from HHS' brief in *Louisiana v. U.S. Dep't of Health and Human Services*, No. 89-4566 (5th Cir. July 13, 1990). (Ex. D at 28-29.)  Indeed, these latter propositions were asserted by DOJ on behalf of HHS in a *successful* attempt to convince the Fifth Circuit that Louisiana should not pay for drugs at AWP; the United States now refuses to admit that those statements are true.

     In response, the Government makes the same flawed objections that it offered in response to RFAs 1-69, objecting to "Abbott's attempts to ascribe the views of HCFA employees to the organization as a whole"[4] or "Abbott's definition of AWP."[5]  For the reasons described above, however, these objections are not responsive to the RFAs, and do not justify qualifications or outright refusals to answer the RFAs as presented.  *See Flanders*, 115 F.R.D. at 71-72; *Lewis*, 2007 WL 2021833, at *2.  The Government should be required to amend its answers as a result. The propositions stated in RFAs 144-173 either are or are not true, and the United States should

---

[4] Govt's RFA Resp. 70, 101-02, 144-45, 148-49, 151-52,  154-58, 160, 162-64, 171, 173.

[5] Govt's RFA Resp. 70, 72-75, 79-85, 89-95, 100, 103-04, 121, 130-37, 144, 146-151, 153-54, 156-173.

be required to take a position.  If that position contradicts a prior position taken by CMS, then the

Defendants and Court have a right to know it.

III.   **THE GOVERNMENT'S REFUSAL TO ANSWER SEVERAL REQUESTS FOR ADMISSIONS, ON GROUNDS THAT THEY CALLED FOR "LEGAL CONCLUSIONS," WAS IMPROPER.**

The Government also refused outright to admit or deny a number of Abbott's RFAs by

claiming that they call for a "legal conclusion."  Rule 36(a)(1)(A), however, allows requests for

admission relating to "facts, the application of law to fact, or opinions about either," which all of

Abbott's RFAs were.  As such, the Government should be required to answer the requests.

The RFAs which the Government refused to answer fall into two general categories.  The

first involves the factual existence of given laws, regulations, or other governmental authority

imposed by the Government which require (or do not require) action by Abbott and/or the

Providers at issue in the matter.[6]  For instance, RFA 80 asks for an admission that "[d]uring the

entire Relevant Claim Period, CMS had the authority to require Providers to indicate their actual

acquisition cost for drugs on the claim forms submitted for payment by Medicaid."  Likewise,

RFA #105 asks the Government to admit that "[d]uring the Relevant Claim Period, no federal

statute or regulation required Abbott or other Manufacturers to report prices to Publishers that

incorporated all discounts available to certain wholesalers, distributors, or purchasers of drugs."

These questions merely ask the Government—which created and enforces the laws which Abbott

and the providers were subjected to—to admit or deny whether any laws or regulations *existed*

relating to the actions which form the basis of the Government's false claims allegations here.

Contrary to the Government's objections, the mere question of a law's existence is a

matter of fact, and thus appropriate for an RFA pursuant to Rule 36(a)(1)(A).  As the Supreme

---

[6] Govt's RFA Resp. 72-85, 87-88, 96-100, 105-109, 142-43.

Court noted in *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940), "[t]he actual existence of a statute . . .  is an operative fact."  *See also Hill v. Equitable Trust Co.*, 851 F.2d 691, 695 (3d Cir. 1988) ("the existence of a law. . . is an operative fact") (quotation marks omitted); *Siegel v. United States*, 101 F. Supp. 98, 99 (E.D.N.Y. 1951) (referring to "existence of a law" as a fact question).  The United States should be required to admit or deny the fact that no statutes or other laws existed to require certain actions by Abbott.

The second group of RFAs that the Government refused to answer were requests for the Government's positions, or opinions, on the applicability of laws to the various players at issue in this case.[7]  For instance, RFA 89 asks whether it is the Government's position that "a Provider who submitted a claim for payment to Medicare Part B or Medicaid for a drug knowing it would be paid at an amount that exceeded its acquisition cost submitted a false claim under the False Claims Act."  The government objects to such questions as legal conclusions or "contention interrogatories"; however, such requests are clearly permitted under Rule 36, as "requests for admission . . . are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case."  *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 3171768, at *5 (D. Kan. Oct. 29, 2007).  Thus, in *Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43 (D.D.C. 2006), the court held that "it would be permissible for [a plaintiff] to propound requests for admission related to [defendant's] interpretation of" a legal document, and rejected the argument that such requests for legal conclusions were "contention interrogatories."  *Id.* at 45-46.

In any event, the Government's refusal to answer these RFAs on grounds of "legal conclusion" are disingenuous, as it *did* answer other RFAs that also sought admissions regarding

---

[7] Govt's RFA Resp. 89-95, 104, 130-37.

the Government's legal contentions related to the facts in the case. *See*, *e.g.*, Govt's RFA Resp. 130 (denying that it "contends in this litigation that the published AWP for a Subject Drug should have reflected the average of all prices paid by all wholesalers for that drug.")   The Government's views as to the application of the False Claims Act to the transactions alleged in this case are clearly appropriate topics for RFAs, and the Government's inconsistent approach indicates that the Government's refusals to answer certain RFAs have less to do with sound legal objections, and more to do with cherry-picking only those RFAs which it believes will be the least harmful or controversial.  That approach is improper, and the Government should be required to answer *all* of the requests regarding its contentions and positions in this case.

## IV.     THE UNITED STATES' FAILURE TO RESPOND TO THE REQUESTS FOR ADMISSION REGARDING GOVERNMENT DRUG PURCHASES IS BASELESS

Finally, the Government refuses to admit certain factual questions about Medicare's reimbursement practices, the United States Government's purchases of the Subject Drugs at large discounts from AWP, and the Government's awareness of pricing information for the Subject Drugs through various sources.[8]  Unlike its other objections, however, the Government often does not even make a pretense of giving a valid objection, and simply refuses to admit or deny the allegation, or else admits a question of its own choosing.  Such responses are insufficient, and should be amended or deemed to be admissions.

For instance, RFA 112 asks for an admission that Medicare Part B "reimbursed for one or more units of a Subject Drug based on or in reference to the Provider's Usual and Customary Charges."  The only substantive objection made to this request is that the term "Provider's" is "vague and ambiguous," and based on that objection, refuses to answer at all.  That "objection,"

---

[8] Govt's RFA Resp. 112, 114-123, 125-128, 142-43.

however, is rank nonsense: not only is the Government aware of what a "Provider" is, it answers *other* RFAs regarding providers despite the feigned ignorance of the term. (*See* RFA 111).

Next, RFA 115 asks for an admission that "the U.S. Government purchased Vancomycin from Abbott at a price at least ten times less than the AWP then published by First Data Bank." Instead of admitting or denying that statement, however, the Government denies that *Medicare and Medicaid* purchased Vancomycin at ten times less than the published price, when the request asked whether the *United States Government* had ever done so—a broader entity than just Medicare and Medicaid.  Likewise, RFA 127 asks for an admission that "in connection with the Medicaid Drug Rebate Program, HCFA/CMS received data from Abbott that set forth AMPs for all of the Subject Drugs," but the Government gratuitously adds the "qualification that the AMP was provided to HCFA/CMS for the sole purpose of calculating quarterly Medicaid drug rebates as required under 42 U.S.C. § 1396r-8" (a qualification found nowhere in the cited statute.)

The responses to these RFAs 112, 115-123, 125-128, and 142-43 "do not fully meet the substance of the requested admissions in that the answers are nonspecific, evasive, ambiguous," and as such, should be deemed admitted without qualification.  *Chavenfield Corp. v. H & R Block*, 67 F.R.D. 93 (W.D. Mo. 1973); *see also Flanders*, 115 F.R.D. at 71-72; *Lewis*, 2007 WL 2021833, at *2.  At a minimum, the Government should be forced to amend its answers and provide responses in good faith to these RFAs which seek nothing more than facts relating to what the Government *did* and *knew* regarding the issues in this litigation.

## CONCLUSION

Requests for admission are supposed to be a tool that cuts down on the need to prove issues at trial which are not legitimately in dispute.  The Government's failure to answer simple questions about factual matters it knows to be true does not serve these ends; rather, it shows a desire on the Government's behalf to play word games, obstruct Abbott's case, and win at all

costs.  Sadly, this gamesmanship stands in stark contrast to the Government's supposed duty to

do justice.  Such an approach to discovery should not be permitted. The Government's responses

to the Requests for Admission described herein should be deemed inadequate, and the United

States should be required to amend its answers, or have its qualified responses considered

admitted without qualification, as appropriate.

Dated:  March 31, 2008                        Respectfully submitted,

                                              /s/ R. Christopher Cook
                                              James R. Daly
                                              Tina M. Tabacchi
                                              Jason Winchester
                                              Brian J. Murray
                                              JONES DAY
                                              77 West Wacker Drive, Suite 3500
                                              Chicago, Illinois  60601
                                              Telephone:  (312) 782-3939
                                              Facsimile:   (312) 782-8585

                                              R. Christopher Cook
                                              David S. Torborg
                                              JONES DAY
                                              51 Louisiana Avenue, N.W.
                                              Washington, D.C.  20001-2113
                                              Telephone:  (202) 879-3939
                                              Facsimile:  (202) 626-1700

                                              *Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES INC.'S MEMORANDUM IN SUPPORT OF ABBOTT'S MOTION TO COMPEL SUFFICIENT RESPONSES TO ABBOTT'S REQUESTS FOR ADMISSION to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 31st day of March, 2008.

/s/ David S. Torborg
David S. Torborg

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

     I certify that the moving party communicated with counsel for the Government in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.


                              /s/ R. Christopher Cook
                              R. Christopher Cook