UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

**DEFENDANT ABBOTT LABORATORIES INC.'S RESPONSE TO THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER RELATING TO ABBOTT'S REQUESTS FOR DEPOSITIONS UNDER RULE 30(b)(6)**

The *qui tam* complaint in this case alleges that Defendant Abbott Laboratories Inc. ("Abbott") caused thousands of false claims to be submitted to many dozens of Government programs over a ten-year period. In litigation with such a broad scope, it is not surprising that discovery can at times become onerous. Nevertheless, the Government complains that Abbott has requested 30(b)(6) depositions on "79 topics and subtopics" (which is especially curious in light of the Government's requests for 30(b)(6) depositions of Abbott on over 150 topics and subtopics). But inconvenience alone does not excuse the Government from its obligations under Federal Rule 30, and the Government has provided no valid reason for this Court to quash Abbott's 30(b)(6) requests. The Government's motion for a protective order should therefore be denied.

**BACKGROUND**

Throughout the course of this protracted litigation, Abbott has attempted in various ways to determine the factual basis, if any, for the Government's allegations against Abbott. This has been particularly difficult in light of the Government's refusal to answer simple contention interrogatories (Ex. D, United States' Response to Interrogatories 1, 7, and 9 (12/4/06)), its

refusal to admit or deny statements made in the public record by senior Government officials, (Ex. E, United States' Response to Requests for Admission 144-175) and its repeated insistence that various witnesses are testifying in their individual capacities only, and not on behalf of the Government as a whole (*See, e.g.,* Tr. of Dep. of Charles Booth at 203-204 (4/23/07); Tr. of Dep. of Bruce Vladeck at 31-32 (4/4/07); Tr. of Dep. of Thomas Scully at 295 (5/15/07) and at 710, 902 (7/13/07) (excerpts attached hereto as Exhibit F)). In order to defend its case, therefore, Abbott requires a significant amount of 30(b)(6) deposition testimony. The Government now seeks a protective order to avoid this discovery method as well, claiming that Abbott's designations are unduly burdensome and harassing. (Br. at 3-4.)

But the Government's protests are misleading. It is true that Abbott's 30(b)(6) requests have several subparts, but that is for the simple reason that Abbott has attempted to make its requests particular and specific, as the Federal Rules require and as the Government requests in its brief. In reality, however, each of Abbott's 30(b)(6) requests fall into nine categories,[1] all of them factual and reasonable:

- **Testimony regarding how relevant officials contemporaneously intended, understood, interpreted or applied the terms "AWP" and "reasonable costs" in federal statutes and regulations.** (Ex. A, Nov. 20 Letter from R. Cook to G. Gobena, at Topic 2; Ex. B, 11/21/07 letter from R. Cook to G. Gobena at Topics 1-3.) This category should be uncontroversial, as Magistrate Judge Bowler specifically ruled that Abbott could serve deposition notices on exactly these topics. (Dkt. No. 4244, May 22, 2007 Order at 3-4.) Indeed, in the recent deposition of Deidre Duzor, the Government allowed the Plaintiff states to question Ms. Duzor on this topic without objection.[2]

- **The truth of factual allegations made in court filings.** (Ex. A at Topic 1.) Abbott has even provided the specific quotes whose veracity Abbott is most interested in exploring.

---

[1] The following categories do not include Topics 4-6 and 26-27 in Abbott's 11/21/07 letter (Ex. B), and Topics 1, 3, 5, 6, and 9 of Abbott's 11/30/07 letter (Ex. C). Abbott agrees to withdraw those requests.

[2] In response to the Government's disparity in treatment between the Plaintiff states and Abbott on this issue, Abbott requested that the Government withdraw its motion for a protective order, at least insofar as this topic is concerned. (Ex. G, 3/26/08 Letter from R. Cook to J. Draycott.) The Government has not done so.

- **The truth of statements made by or on behalf of CMS and the DOJ in open court, in the Federal Register, and to Congress.** (Ex. C, 11/30/07 letter from R. Cook to G. Gobena at Topic 8.) Abbott has already served the Government with requests to admit or deny these statements, many of which are direct quotes in the public record from Government officials. (*See* Ex E, Government's Responses to Requests for Admission 144-175.) At the same time, Abbott served a request for deposition testimony as to each request that the Government refused to admit or deny. The Government did not admit a single one of Abbott's requests, even those that tracked word-for-word Congressional testimony by senior Government officials. (*Id.*) Consequently, Abbott is now forced to test the veracity of these public statements through deposition testimony.

- **The reasons why CMS continued to pay based on "inflated" AWPs even after being told specifically that pharmacies and physicians were paying as little as 1/10 of the AWPs for the Subject Drugs.** (Ex. B at Topics 7-10.) Abbott seeks this testimony for the purpose of shoring up its defense that CMS made a deliberate policy decision, which was not the result of any alleged fraud by Abbott, to continue paying for the Subject Drugs at these levels.

- **CMS's role, actions, and communications regarding the promulgation of the 1991 regulation relevant to this case and the passage of the Balanced Budget Act in 1997.** (Ex. B at Topics 11-13.) This is exactly the same request made by the Government to Abbott regarding Abbott's lobbying efforts. (Ex. H, Topics 1-2.) Abbott presented 30(b)(6) testimony on the subject, in addition to producing numerous individuals from Abbott's Government Affairs Office, at the Government's request, for 30(b)(1) depositions.

- **Whether CMS knew of Abbott's conduct as alleged in the complaint and whether CMS told Abbott how it was to comply with applicable laws, regulations, or other guidance.** (Ex. B at Topics 19-21.) This topic should come as no surprise to the Government. In numerous depositions, the Government has asked Abbott employees whether they ever communicated with the Government about Abbott's prices or the "spread," and the Government has asked virtually every fact witness about Abbott's efforts to comply with applicable statutes and regulations.

- **Whether CMS preserved evidence after being asked to do so by defendant manufacturers or after it became aware that a lawsuit was pending.** (Ex. B at Topics 22-25.)

- **Whether the most critical interrogatories propounded by Abbott have been answered completely regarding (a) alleged false statements or fraudulent statements on Abbott's part; (b) alleged actions by Abbott to market the spread; and (c) notice to Abbott that its conduct was wrongful.** (Ex. C. at Topics 1, 2, and 4.)

- **CMS's approval of state plans.** (Ex. A at Topics 14-18 and Ex. C. at Topic 7.)

The last category, regarding approval of SPAs, has been satisfied by the recent 30(b)(6) testimony of senior CMS official Larry Reid, and Abbott requires no more testimony on that subject. Thus, the Government is disputing its obligation to produce a witness to discuss Government knowledge with respect to eight categories of information, all relating to the Government's conduct during the period critical to this case.

As set forth below, the Government's non-specific complaints about Abbott's requested testimony in these eight categories are not sufficient to warrant a protective order.

## ARGUMENT

Under Federal Rule of Civil Procedure 26(c), the Government bears the burden of showing "good cause" why this Court should limit Abbott's discovery through a protective order. Fed. R. Civ. P. 26(c). Prohibiting the taking of depositions is an extraordinary measure, and should be allowed only if the Government carries the "heavy burden" of justifying the order with "extraordinary circumstances" based on "specific facts." *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1998) (collecting cases).

Although the Government claims that Abbott's requests are harassing, duplicative, and otherwise improper, the Government has failed to lodge particularized objections to any one request. Instead, the Government has made vague objections that it (presumably) believes apply to each of Abbott's topics and subtopics. On their face, the Government's generalized objections cannot meet the Government's burden of showing specific "good cause" for a protective order. Moreover, as explained in more detail below, none of these general objections has merit.

A. **Abbott's 30(b)(6) topics are not unduly burdensome.**

The Government's chief argument seems to be that Abbott's 30(b)(6) requests are too difficult for the Government to bear. The complaint is curious, in light of the fact that Abbott has designated to the Government fewer than half the number of 30(b)(6) topics and subtopics

that the Government designated to Abbott (*Compare* Exs. A, B, and C with Ex. H, Government 30(b)(6) topic requests to Abbott).  In any event, any burdens that these requests impose are directly linked to the Government's own actions in this case.  It was the Government, not Abbott, that chose to wait ten years to unseal a complaint seeking recovery for thousands of allegedly false claims.  Naturally, that has made it difficult for the Government to locate the actors with personal knowledge of events during the relevant time frame, but that is not a problem of Abbott's making.  It has also been the Government's decision to refuse to divulge who has knowledge of (and can thus swear to the veracity of) many of the allegations that the Government has made in the course of this litigation.  Abbott has offered to allow the Government to provide written answers to topics seeking "all facts" or "all communications," and to limit the 30(b)(6) deposition to follow-up questions based on those written answers.  (*See* Ex. G to Government Brief, 2/8/08 Letter from R. Cook to E. Strawn.)  The Government has refused this option, although Abbott's offer still stands.

In a case that seeks hundreds of million of dollars in damages dating back to 1991, and involves millions of pages of documents, it cannot be too much to ask the *plaintiff* to reveal the factual bases for its charges of fraud.  *See, e.g., Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39 (D. Conn. 2004) (overruling burdensomeness objection and ruling that defendant must produce corporate representative to discuss thirty years of membership data "[a]lthough documentation may be voluminous, and different people affiliated with the Club may hold the information").  *See also United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) ("The attorney for the corporation is not at liberty to manufacture the corporations' contentions.  Rather, the corporation may designate a person to speak on its behalf and it is this position which the attorney must advocate.").  So far, the Government has refused to do so

through interrogatories, requests for admission, or 30(b)(1) depositions.  It is precisely this sort of "bandying" that Rule 30(b)(6) was created to eliminate.  *See* Advisory Committee Notes, Fed. R. Civ. P. Rule 30(b)(6).    Abbott's 30(b)(6) topics are proper, not unduly burdensome.

### B. Abbott's 30(b)(6) topics are described with particularity.

Ironically, the first four pages of the Government's brief lament that Abbott's 30(b)(6) topic requests contain what the Government believes to be an unreasonable number of particularized topics and subtopics, while in the argument section the Government complains that Abbott's requests are not particular enough.  As illustrated above, Abbott's requests fall into nine (now eight) categories, each set out in plain English, and each of which has been painstakingly defined through numerous sub-parts.  Especially in conjunction with the litigation history on several of Abbott's topics, that is sufficient to meet the particularity requirement of Rule 30(b)(6).  *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989) (30(b)(6) request had "reasonable particularity" when it was "specific and understandable" and where a prior clarifying letter meant that corporation "necessarily knew the scope and nature of plaintiff's interest"); *United States v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996) (Rule 30(b)(6) notice reasonably particular where the areas of inquiry "have been addressed in oral argument, and in two prior written orders").

### C. The Government Cannot Preemptively Quash a 30(b)(6) Deposition Because Some Questions Might Seek Privileged Communications.

The Government also complains that many of Abbott's 30(b)(6) topics would require the Government to reveal privileged information.  Of course, the Government cites no authority for the proposition that a Court should preemptively limit a deposition for fear that a deponent *might* be asked privileged information.  That is because case law dictates that privilege is properly asserted only *after* a specific question is posed and an objection is lodged.  In *United States  v.*

*Motorola*, No. Civ.A. 94-2331TFH/JMF, 1999 WL 552558, *2  (D.D.C. May 27, 1999), for example, the court analyzed the precise issue presented here: Whether the United States can prevent a deposition from going forward on the basis that the deliberative process privilege may be invoked.  Reasoning that preventing the deposition from proceeding would be "a gross abuse of my responsibilities," Magistrate Judge Facciola held that he was "obliged to rule on the application of each privilege on a question-by-question basis" and denied the Government's motion for a protective order to prevent the requested deposition.  *Id.* at **2-3.

The *Motorola* decision is not an anomaly.  Numerous other courts have similarly concluded that it is improper to prevent a deposition on the ground that a privilege *may* be raised, because privilege issues are properly analyzed after the fact on a question-by-question basis.  *See, e.g., Evans v. City of Chicago*, 231 F.R.D. 302, 320 (N.D. Ill.  2005) ("[G]enerally a subpoenaed witness who claims that his testimony would breach a privilege still must attend a deposition to assert the privilege in response to specific questions."); *Atlantic Sounding Co., Inc. v. Townsend*, No. 3:05-cv-649-J-20HTS, 2006 WL 4702150, *1 (M.D. Fla. Apr. 20, 2006) (same); *see also United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983) (questions of privilege must be addressed on a question-by-question basis)*; In re Air Crash at Taipei, Taiwan on October 31, 2000*, 211 F.R.D. 374, 376 (C.D. Cal. 2002) (same).  Indeed, this Court itself has indicated that it makes sense to resolve deliberative process privilege issues on a question-by-question basis as they arise.  *See* Tr. of 11/13/06 Hrg. before the Hon. Patti B. Saris at 6-7, 14-15 (Ex. I).  The Court's ruling here should be no different.[3]

---

[3] *See also* Dkt. No. 3153, Abbott's Opposition to the Motion to Quash the Subpoenas of Ira Burney and Debbie Chang.

### D. Abbott's 30(b)(6) Topics Seek Relevant, Factual Information.

#### 1. Government Knowledge Is Highly Relevant to Abbott's Defense.

The Government once again argues that discovery relating to Government knowledge is irrelevant. As this Court has repeatedly held and as overwhelming authority instructs, that this is simply not the case—evidence regarding Government officials' knowledge of how published AWPs stacked up to actual acquisition costs and their knowing acquiescence in or approval of a payment system based on published AWPs is relevant to nearly every element of the Government's various fraud claims (*e.g.*, reliance, causation, damages).

With respect to the reliance element of its common law fraud claim, evidence of Government knowledge and action (or, more accurately, inaction) must be examined to determine if the professed reliance actually occurred and whether it was reasonable. *See, e.g.*, *Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 370 (7th Cir. 1988) ("In determining whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account; if ample opportunity existed to discover the truth, then reliance is not justified.") (citation omitted); *see also Amaco Enterprises Inc. v. Smolen*, 61 F.3d 909 (9th Cir. 1995) ("Justifiable reliance requires a showing that plaintiff's reliance was reasonable in light of all the circumstances giving consideration to the plaintiff's intelligence and experience."). Thus, at the very least, the Government's common law fraud claim exposes it to deposition discovery into its knowledge, decision-making, and actions. *See Dept. of Econ. Dev. v. Arthur Anderson & Co.*, 139 F.R.D. 295, 299 (S.D.N.Y. 1991).

Similarly, the Government's causation and damages elements of its fraud claim require examination of the Government's knowledge, decision-making, and actions. If, as it appears actually occurred, the Government used an AWP-based payment system with knowledge that it

would result in payments exceeding providers' acquisition costs (*i.e.*, the Government's alleged "overpayment"), and nonetheless chose to use such a payment system for political or policy reasons, it cannot now claim that such "overpayments" were caused by Abbott.  *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1015 (N.D. Ill. 2000) (suggesting that the plaintiff "may well be unable to prove causation" because the plaintiff may have paid the defendant's rate "for reasons of speed, reliability, security, or convenience, even though they were aware that [d]efendants charged more than some competitors"); *see also JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 405 (S.D.N.Y. 2004) ("[W]here a plaintiff actually knew at the time a representation was made that it was false, she cannot claim to have relied on the truth of that representation, and any injury she suffers is therefore not attributable to the defendant."); *Grubb v. F.D.I.C.*, 868 F.2d 1151, 1165 (10th Cir. 1989) ("Under … causation standard, plaintiffs cannot recover for losses caused by their own failure, since they became aware of the fraud, to take reasonable steps to preserve their assets and avoid further harm.").  Similarly, evidence of Government knowledge and acquiescence in the payment of spreads is relevant to the Governments claims brought under the FCA, which ultimately is a fraud statute.  *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 228 (1st Cir. 2004) (finding that the FCA is a fraud statute).

       The Government claims, without support, that this Court's decision on the legal meaning of the term "average wholesale price" somehow renders all evidence of Government knowledge and decision-making irrelevant, leaving only Abbott's conduct and knowledge susceptible to discovery in this case.  That argument disregards this Court's unequivocal statements regarding the proper scope of discovery and the relevance of Government knowledge and decision-making.  This Court has already recognized that "[i]n some circumstances, the government' s 'knowledge

[of a fraud] effectively negates the fraud or falsity required by the FCA'" and that the government knowledge defenses raised by Abbott and others present a "difficult legal question." *In re Pharm. Industry Average Wholesale Price Litig.*, 478 F. Supp. 2d 164, 174-75 (D. Mass. 2007) (citation omitted). The Court expressly recognized that the "government knowledge" issue is a relevant factual matter which must be "tested in the crucible of trial." *Id.* (citation omitted). *See also* Dkt. No. 4791, 10/11/2007 Mem. in Support of Abbott's Motion to Compel Discovery Responses to Its Documents Requests Nos. 37 and 38 (setting forth the numerous comments of the Court on the relevance of evidence showing that the Government knew AWP did not reflect acquisition costs, including its comment that Government knowledge is "quite relevant" and at the "heartland" of this case); *see also* 2/21/2008 Order in *United States v. Boehringer Ingelheim Corp.*, Case No. 1:07-cv-10248 (recent decision by the Court denying the Government's motion to strike certain plaintiffs' Government knowledge defenses, ruling that such issues would be addressed at summary judgment after discovery concludes).

Surely, the Government cannot seriously contend that if Abbott proves that the Government was aware of and acquiesced in the type of spreads at issue here that it can continue to claim that it was the victim of fraud. In briefing to this Court, Abbott has submitted extensive evidence demonstrating that the state and federal governments deliberately allowed the payment of some amount of a "spread" or margin on drug payments for various reasons. *See, e.g.*, Dkt. No. 5112. Abbott does not believe that the Government can continue to argue in good faith that evidence of Government knowledge and decision-making is "irrelevant" to this fraud case.

### 2. Abbott's 30(b)(6) Topics Seek Factual Information, Not Legal Theories.

The Government argues that Abbott is impermissibly seeking to discover the Government's legal theories through a deposition witness. In fact, however, Abbott is seeking

-10-

factual information that is plainly permissible under 30(b)(6). A 30(b)(6) designee "must not only testify about facts within the corporations' knowledge, but also its subjective beliefs and opinions." *Taylor*, 166 F.R.D. at 361. Moreover, the designee is required to provide the agency's interpretation of documents and events, much like an individual plaintiff would give such interpretation at deposition. *Id.* "Were it otherwise, a corporation would be able to deceitfully select at trial the most convenient answer presented by a number of finger-pointing witnesses at the depositions." *Id.* Perhaps for this reason, "[t]he attorney for the corporation is not at liberty to manufacture the corporation's contentions. Rather, the corporation may designate a person to speak on its behalf and it is this position which the attorney must advocate." *Id.*

The Government has refused to take a consistent position on numerous factual issues, including how CMS contemporaneously interpreted the applicable statutes and regulations that governed its employees' conduct. That is not a legal question. CMS has already taken (and will continue to take) legal positions regarding the meaning of the statutes and regulations at issue in this case. However, Abbott remains free to probe whether that position is consistent with CMS' actions and understanding of those same regulations at the time the Government claims Abbott was defrauding CMS. The Government has shown no good cause why it should not provide Abbott with this relevant discovery.

**E.    Abbott Is Not Seeking to Relitigate Past Disputes.**

Perhaps most misleading is the Government's argument that Abbott seeks 30(b)(6) testimony in order to "relitigate" past discovery disputes. The Government claims, first, that Abbott is seeking to relitigate the scope of the deliberative process privilege in this case. That is not true. As it has in past depositions, the Government is free to instruct its witness not to answer based upon the deliberative process privilege where it feels such an instruction is

warranted.  The Court can then sort out whether those claims of privilege were warranted after the deposition.

Next, the Government claims that Abbott is seeking to relitigate its request for the Government to produce the party who authorized the Government's *amicus* brief regarding the meaning of AWP. (Dkt. 4244.)  But Abbott is merely following the Court's order on that motion, which instructed that the proper method for Abbott to obtain the information it sought was to conduct a deposition on the topic of:

> [A]ll factual representations and/or statements regarding how the Secretary and/or CMS intended, understood, interpreted or applied the phrase AWP in federal statutes and regulations; what the Secretary or CMS understood or believed about average wholesale prices (AWPs) published in Red Book and other national drug listings; and the Secretary or CMS's understanding of Medicare's policy of paying "reasonable costs" (Part A services) and "reasonable charges" (Part B services).

(Dkt. 4244 at 3-4.)  Far from attempting to relitigate the Court's decision, Abbott's 30(b)(6) topic designations are modeled directly after it. (Ex. A at Topic 2.)  This objection is surely no basis on which to quash Abbott's 30(b)(6) deposition request. [4]

### F. Abbott's 30(b)(6) Designations Are Not Duplicative.

The Government next claims that Abbott's 30(b)(6) topics duplicate other discovery requests Abbott has propounded throughout the course of this case.  It is true that some of Abbott's 30(b)(6) topics overlap with the written discovery Abbott propounded to the Government, but only to the extent that the Government has not answered (or has not fully answered) that discovery.  (*See* Ex. C.)   That is perfectly permissible under the Federal Rules. *See, e.g., Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125-26 (D.D.C. 2005)

---

[4] The Government's argument relating to the Court's ruling on Interrogatory 7 is moot, since Abbott has withdrawn its request for Topic 6 in the November 21, 2007 letter.

(rejecting argument that 30(b)(6) topics were unduly burdensome because they had been addressed by previous document requests and interrogatories, noting that court was "aware of no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other discovery devices"); *Marker*, 125 F.R.D. at 126 (rejecting defendant's argument that proposed 30(b)(6) topic had been adequately addressed in a prior interrogatory response, holding, "Nothing in the Federal Rules of Civil Procedure gives a party the right not to respond or inadequately respond to a Rule 30(b)(6) deposition notice . . . and elect to supply the answers in a written response to an interrogatory."). To the extent that the Government finds the 30(b)(6) procedure too inconvenient, Abbott will accept a complete written response to the prior discovery requests at issue, and will use its 30(b)(6) deposition for follow up questions only.

Nor have any of Abbott's prior depositions of Government personnel provided Abbott with the information its seeks. The Government has repeatedly objected during 30(b)(1) depositions that the deponents' testimony is individual only, and cannot be imputed to the Government as a whole. (*See, e.g.,* Tr. of Dep. of Charles Booth at 203-204 (4/23/07); Tr. of Dep. of Bruce Vladeck at 31-32 (4/4/07); Tr. of Dep. of Thomas Scully at 295 (5/15/07) and at 710, 902 (7/13/07) (collected at Ex. F)). The Government cannot have it both ways, and complain now that 30(b)(6) testimony is duplicative. Moreover, Abbott has agreed to forego the topics regarding document preservation if the Government is willing to certify that the testimony of past witnesses completely describe the Government's document preservation and collection efforts. (Ex. G to Government Brief, 2/8/08 Letter from R. Cook to E. Strawn.) The Government has declined to do so. Abbott's 30(b)(6) topics are not impermissibly duplicative.

### G.      The Government's Proposed "Compromise" Is Unacceptable.

Finally, the Government argues that the Court should force Abbott to accept the topics that the Government wishes to discuss in its 30(b)(6) depositions and nothing more. But the Government's "compromise" 30(b)(6) topics simply will not provide Abbott with the information it needs. For example, the Government has offered to present a witness to testify about how CMS "applied" the relevant laws regarding AWP (Br. at 20), but refuses to provide a witness to describe CMS's "contemporaneous interpretation" of those laws, as requested by Abbott. The latter information is relevant to Abbott's defense, and Abbott is entitled to it. The Government's proposed "compromise" is unacceptable to Abbott, and because Abbott's proposed 30(b)(6) topics are not improper, this Court should not force Abbott to limit its 30(b)(6) topics to those the Government suggests.

### CONCLUSION

The Government's motion for a protective order does not offer a single particularized objection to Abbott's 30(b)(6) topics, and has not pointed to one fact tending to show that the Government would suffer undue prejudice if Abbott's requested 30(b)(6) depositions were to go forward. That cannot be enough to show the "extraordinary circumstances" based on "specific facts" that are required to preemptively stop a deposition. *Prozina Shipping Co., Ltd.*, 179 F.R.D. at 48. Moreover, all of the Government's generalized objections are without merit. The Government's request for a protective order should be denied.

Dated:  March 31, 2008                    Respectfully submitted,

                                                  ABBOTT LABORATORIES INC.

                                                  By:  /s/ R. Christopher Cook

                                                  James R. Daly
                                                  Jason G. Winchester
                                                  Brian J. Murray
                                                  JONES DAY
                                                  77 W. Wacker Dr., Suite 3500
                                                  Chicago, Illinois  60601-1692
                                                  Telephone: (312) 782-3939
                                                  Facsimile:  (312) 782-8585

                                                  R. Christopher Cook
                                                  David S. Torborg
                                                  JONES DAY
                                                  51 Louisiana Avenue, N.W.
                                                  Washington, D.C.  20001-2113
                                                  Telephone:  (202) 879-3939
                                                  Fax:  (202) 626-1700

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on March 31, 2008, the foregoing **DEFENDANT ABBOTT LABORATORIES, INC.'S RESPONSE TO THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER RELATING TO ABBOTT'S REQUESTS FOR DEPOSITIONS UNDER RULE 30(B)(6)** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ R. Christopher Cook