# EXHIBIT A

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

Direct Number:  (202) 879-3734
christophercook@jonesday.com

November 20, 2007

VIA EMAIL

Gejaa Gobena, Esq.
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

Re:   *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.*

Dear Gejaa:

Pursuant to Paragraph 13 of Case Management Order 29, please provide dates and witnesses on the following topics:

1.   The veracity of and good faith basis for all representations and factual allegations made in this matter by the Department of Justice in any filing on behalf of CMS or HHS, including but not limited to all evidence or facts that support or contradict the following representations and allegations:

(a)   "AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient."  First Amended Compl. ¶41 (6/4/07);

(b)   "No governmental payor knew of or sanctioned Abbott's conduct as set forth in this Complaint, i.e., its deliberate manipulation of its published prices for certain of its products to induce its Customers to purchase those products."  First Amended Compl. ¶37 (6/4/07);

(c)   "The general concept that the AWP refers to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers is commonly understood in the industry."  United States' Objections and Responses to Abbott's First Set of Interrogatories, at 35 (12/4/06);

(d)   "Abbott should have reported the average or estimated acquisition cost for the pharmaceuticals at issue."  United States' Objections and Responses to Abbott's First Set of Interrogatories, at 32 (12/4/06);

Gejaa Gobena, Esq.
November 20, 2007
Page 2

    (e)    "Abbott should have reported the average or estimated acquisition cost for its products because that was the amount at which Abbott was actually selling its pharmaceuticals. Abbott was not authorized by the government, any law or any regulation to submit false or fraudulent pricing information to inflate reimbursement to its customers to help sell or market its pharmaceuticals." United States' Objections and Responses to Abbott's First Set of Interrogatories, at 32 (12/4/06);

    (f)    "The Secretary understood that Red Book and the other wholesale price guides updated their information monthly, and thus believed that the published wholesale prices were a source of acquisition costs of some physicians and therefore could be used to calculate Part B drug payments." Brief of United States as Amicus Curiae, at 15 (9/15/06, MDL 1456);

    (g)    "Under the systems that were in place for the reimbursement of generic drugs during the period covered by the United States' complaint, Abbott was obligated to report prices for its drugs that would ensure that published AWPs were consistent with the plain meaning of the regulatory term." United States' Opposition to Defendant Abbott Laboratories, Inc.'s Renewed Motion to Compel Evidence Withheld Under the Deliberative Process Privilege, at 11 (4/20/07);

    (h)    "At no time did the government sanction Abbott's conduct as set forth in the United States' Amended Complaint." United States' Objections and Responses to Abbott's Fourth Set of Interrogatories, at 10 (10/26/07);

    (i)    All representation in motions seeking, applications for, or declarations supporting an extension of the seal in this matter.

    2.    In accordance with Magistrate Judge Bowler's Order on the United States' Motion for a Protective Order Relating to the Deposition of Government Counsel (5/22/07) (Dkt. 4244), all factual representations and/or statements made by CMS or the Secretary of HHS regarding:

    (a)    how the Secretary and/or CMS intended, understood, interpreted or applied the phrase AWP in federal statutes and regulations;

    (b)    what the Secretary and/or CMS understood or believed about AWPs published in Red Book and other national drug listings; and

    (c)    the Secretary's and/or CMS's understanding of Medicare's policy of paying "reasonable costs" (Part A services) and "reasonable charges" (Part B services).

JONES DAY

Gejaa Gobena, Esq.
November 20, 2007
Page 3

                                             Sincerely,

                                             /s/ R. Christopher Cook

                                             R. Christopher Cook

cc:    James J. Breen, Esq.
         Alison Simon, Esq.
         Renée Brooker
         John K. Neal
         Ana Maria Martinez
         M. Justin Draycott
         Gejaa Gobena
         Mark A. Lavine
         Ann St. Peter-Griffith
         Neil Meryl
         Sarah L. Reid
         Helen Witt
         Eric T. Gortner