# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | Civil Action No. 01-12257-PBS |
| | Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:** *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS | Chief Magistrate Judge Marianne B. Bowler |

### UNITED STATES' OBJECTIONS AND RESPONSES TO DEFENDANT ABBOTT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the United States provides these objections and responses to Defendant Abbott Laboratories, Inc.'s ("Abbott") First Set of Interrogatories ("Interrogatories") Directed To Plaintiff United States of America And Relator Ven-A-Care Of The Florida Keys, Inc. ("Relator").

### Introductory Statement and General Objections

1.      These Interrogatories are unclear, vague, and ambiguous to the extent they are directed jointly at the United States and the Relator. The United States further objects to the extent that it is unclear as to whether Abbott seeks responses to particular Interrogatories from either the United States or the Relator, or both. The United States objects to each Interrogatory that is directed, in whole or part, to Relator. The United States is not obligated to respond to all or part of any Interrogatory that is, or should be, directed at the Relator. Thus, the United States

1

Government, the United States is not obligated to identify such documents. The United States incorporates by reference its objections to Abbott's definitions of "Documents" and "U.S. Government" in response to Instruction Number 1.

12.  The United States objects to Abbott's definitions and instructions to the extent they are inconsistent with or in excess of that which is required by the Federal Rules of Civil Procedure, Local Rules of the District of Massachusetts or Case Management Orders applicable to the above-captioned action.

## Responses and Objections to Interrogatories

<u>Interrogatory No. 1</u>: Identify each and every allegedly false or fraudulent statement or action made or taken by Abbott that relates in any way to Your claims in the Complaint, including:

(a) false or fraudulent statements made or caused to be made by Abbott and its agents;

(b) false or fraudulent claims filed by Abbott and its agents;

(c) actions or statements that caused a false or fraudulent claim to be filed; and

(d) false or fraudulent price representations.

As to each statement or action You identify, state why the statement or action was false or fraudulent and state with particularity the circumstances of the alleged fraud, including the date, time, location, subject matter, and participants in any allegedly false or fraudulent action. Identify all Documents relating to information provided in response to this Interrogatory.

<u>Response</u>:  The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.  The United States objects to this interrogatory on the following additional grounds.  Objection, as used in this interrogatory the terms "agents" and "why" are vague, ambiguous, and not subject to objective

10

application in identifying responsive information. Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced. Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as "additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence. Objection, by seeking an inventory of each and every "statement or action" "that relates in any way to Your claims in the Complaint," and "all Documents" "relating to" the United States' contentions, regardless of the level of significance of such facts and documents, the interrogatory is overly broad and unduly burdensome. Objection, by seeking identification of "all Documents," the interrogatory calls for the production of documents and information protected from disclosure by privilege and doctrine, including but not limited to, the attorney-client privilege, the work product doctrine, the common interest privilege, the deliberative process privilege, and the law enforcement investigative files privilege. Objection, the interrogatory is overly broad and unduly burdensome to the extent that it calls on the United States to organize and inventory for Abbott documents and information produced by Abbott to the United States, and Abbott can easily identify from their own files all documents

produced to the United States that "relate to" the United States' contentions. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

As stated in the United States' Complaint ("Complaint"), from approximately January 1991 through January 2001, Abbott engaged in fraudulent acts that harmed the Medicare and Medicaid Programs. The false or fraudulent statements or actions include Abbott reporting inflated pharmaceutical prices to price publications, such as the "Red Book," the "Blue Book," and the Medi-Span Hospital Formulary Guide ("Price Publications"), when Abbott knew or should have known that Medicare and Medicaid relied upon those reported prices to set reimbursement rates for Abbott's pharmaceutical products. Abbott's actual sales prices for the pharmaceutical products named in the Complaint were far less than the prices reported by Abbott. By reporting inflated prices – often 1000% higher than Abbott's actual prices – Abbott ensured its customers received inflated reimbursement from Medicare and Medicaid. Thus Abbott's acts ensured that providers would profit from choosing Abbott's products. Abbott then actively promoted "spreads" between (1) its fraudulently inflated prices and (2) its actual sales prices as an inducement to its customers.

(a) The false or fraudulent statements include the false prices reported by Abbott for the pharmaceuticals identified in the Complaint. Abbott submitted those prices and is fully knowledgeable of when it reported false prices for the pharmaceuticals at issue. Abbott is well aware of all aspects of its price reporting to the Price Publications.

(b) The United States alleges that Abbott's fraudulent acts caused the submission of false claims. The United States will also explore in discovery whether Abbott submitted false claims on behalf of certain of its customers.

(c) Abbott reported false, fraudulent and inflated drug prices for certain drugs (listed in ¶¶ 31 and 35 of the Complaint) to the Price Publications, which were relied upon by the Medicare and Medicaid programs when setting reimbursement rates for Abbott's customers.

(d) During the time frame that Abbott engaged in the fraudulent scheme, all the price representations to the Price Publications for the pharmaceuticals at issue in the Complaint were inflated and therefore false.

The specific date, time, place, and individuals involved for all of Abbott's false price representations are in Abbott's possession and have not yet been fully produced to the United States. The United States has propounded discovery to Abbott for all documents and information regarding Abbott's price reporting for the pharmaceuticals at issue. The United States has propounded an interrogatory seeking the exact same information from the entity that possesses that knowledge – Abbott. Upon Abbott's complete production to the United States of those discovery responses, both parties will possess all information responsive to this interrogatory.

Abbott's production of documents pursuant to a False Claims Act Civil Investigative Demand and agency investigative subpoenas that would be responsive to this request was incomplete. Any documents responsive to this request currently in the United States' possession have been produced as part of the United States' initial disclosures under Fed. R. Civ. P. 26. The United States expects a further, more complete production from Abbott of documents responsive to this interrogatory and to the United States' interrogatories and requests for production.

13

(c)     Abbott should have reported the average or estimated acquisition cost for the pharmaceuticals at issue.

(d)     Abbott should have reported the average or estimated acquisition cost for its products because that was the amount at which Abbott was actually selling its pharmaceuticals. Abbott was not authorized by the government, any law or any regulation to submit false or fraudulent pricing information to inflate reimbursement to its customers to help sell or market its pharmaceuticals.

(e)     The basis for which the United States claims Abbott's false prices were part of the claims process for reimbursing providers for Abbott's pharmaceuticals is set forth in ¶¶ 31-50 of the United States' Complaint.

Interrogatory No. 7: During the Relevant Claim Period, state the basis for Your contention in paragraph 42 of the Complaint that "AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient." Separately identify:

(a) which Providers or class of Providers are included in Your use of the term "retail Customer" in paragraph 42 of the Complaint;

(b) which Providers or class of Providers included in Your use of the term "retail Customer" submitted claims to Medicare Part B or Medicaid that You allege were false;

(c) all Persons who at any time believed the term AWP or "Average Wholesale Price" was used to refer a price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer, and how such Persons came to that understanding;

(d) all Persons who at any time used the term AWP or "Average Wholesale Price" to refer to a price at which a pharmaceutical firm or wholesaler sells a drug to a retail Customer;

(e) the specific basis of any Person's belief that AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient;

(f) any statement, representation, or action by Abbott that You contend caused anyone to believe that AWP was used to refer a price at which Abbott sold drugs to a retail Customer who then administers it to a patient; and

(g) any statement, representation, or action by Abbott that You contend caused anyone to believe that AWP was used to refer a price at which Abbott sold drugs to any Provider or class of Providers who submitted claims to Medicare Part B or Medicaid that You allege were false. Identify all Documents relating to the information provided in response to this Interrogatory.

Response: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, to the extent this interrogatory contains multiple subparts that are not logically part of the basic interrogatory. Objection, the terms "belief," "believe," and "action," are vague and ambiguous as used in this interrogatory. Objection, to the extent that this interrogatory seeks information about the "beliefs" and actions of an indefinite and undefined category of persons, this interrogatory seeks information that is not relevant to a claim or defense of any party to this action and the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection, to the extent that this interrogatory changes and characterizes the allegations in the

33

United States' Complaint. Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced. Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as "additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence. Objection, to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege. Objection, to the extent that this interrogatory is a premature request for information that may be contained in the plaintiffs' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders. Objection, this interrogatory is overly broad to the extent that it requests the identification of "all" Documents "relating to" the information sought by the interrogatory. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

The general concept that the AWP refers to the price at which a pharmaceutical firm or a wholesaler sells a drug to its customers is commonly understood in the industry.

(a) Retail customers are all customers that purchased Abbot drugs, whether through a wholesaler or directly from Abbott.

(b) To the extent those providers were reimbursed by Medicaid or Medicare, they were among the retail customers referred to in the Complaint. Abbott has or should have access to the names, addresses and other contact information of its purchasing customers. As claims data is produced in this matter, additional information regarding the retail customers who billed Medicaid and Medicare will be provided to Abbott.

(c) - (e) The Court has ruled in this MDL proceeding that the term "average wholesale price" should be interpreted according to its plain meaning. The United States objects to these interrogatories as being unduly burdensome, vague and not relevant. The United States need not identify all "Persons'" understanding of AWP whether it be the same or otherwise.

(f) - (g) Abbott reported prices it called "direct price," "list price," "wholesale acquisition cost," and "average wholesale price" to the Price Publications. To the United States' knowledge, Abbott never submitted any statement or qualifier that the prices it reported using these terms were false and not in keeping with the plain meaning of the pricing terms Abbott was reporting. Abbott gave no warning or indicator that it was reporting false prices when using these pricing terms to refer to the prices it reported to the Price Publications.

- penalties of $5,000 to $10,000 per Medicare and Medicaid claim for the Abbott drugs in the Complaint from January 1991 to September 28, 1999; and penalties of $5,500 to $11,000 per Medicare and Medicaid claim for the Abbott drugs in the Complaint from September 29, 1999 to January 31, 2001.

The United States will rely on testifying experts to provide damage calculations. The expert reports will be provided pursuant to Fed. R. Civ. P. 26 and the Court's scheduling order in this case.

<u>Interrogatory No. 9</u>: Paragraph 109 of the Complaint states that "Abbott has been unjustly enriched, including profits earned by Abbott because of illegal inducements Abbott arranged to be paid to its Customers." Identify with particularity all evidence that supports your contention, all illegal inducements that Abbott allegedly arranged to be paid to its Customers, and all payments by which Abbott allegedly was unjustly enriched. Identify all Documents relating to the information provided in response to this Interrogatory.

<u>Response</u>: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, as used in this interrogatory the term "payments" is vague, ambiguous, and not subject to objective application in identifying responsive information. Objection, this contention interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Abbott has responded to all the United States' factual discovery requests, before all depositions have been taken, and before third-party discovery has commenced. Objection, serving such a contention interrogatory at the outset of discovery in an attempt to mandate supplementation as

40

"additional information becomes available," or as otherwise required by the Federal Rules of Civil Procedure, imposes an undue burden on the United States by (a) requiring the United States to respond multiple times over the course of this complex case, (b) disrupting the effective administration of the United States' case, and (c) improperly infringing on attorney work product by requiring what would amount to frequent or periodic reports on counsels' ongoing review and analysis of the evidence. Objection, by seeking an inventory of "all evidence" that supports "your contention," "all illegal inducements," "all payments," and "all Documents" "relating to" the United States' contentions, regardless of the level of significance or volume of such facts and documents, the interrogatory is overly broad and unduly burdensome. Objection, the interrogatory is overly broad and unduly burdensome to the extent that it calls on the United States to organize and inventory for Abbott documents and information produced by Abbott to the United States, and Abbott can easily identify all documents produced to the United States that "relate to" United States' contentions from Abbott's own files. Objection, by seeking identification of "all Documents," the interrogatory calls for the production of documents and information protected from disclosure by privilege and doctrine, including but not limited to, the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the deliberative process privilege, and the law enforcement investigative files privilege. Objection, to the extent that this interrogatory is a premature request for information that may be contained in the United States' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders. Objection, to the extent the interrogatory purports to require the United States to draw pure conclusions of law.

41

...
...
...

Subject to and without waiving the United States' general and specific objections, and its objections to Abbott's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response.

The doctrine of unjust enrichment allows for restitution when it would be unconscionable to permit another to retain the benefit received. Abbott benefitted from reporting false prices by maintaining or increasing its market position as a result of its scheme. For example, in 1991, publically-available State Drug Utilization Data ("SDUD") showed that less than 10% of Abbott's Vancomycin sales were reimbursed by Medicaid; SDUD data shows that Abbott's market share eventually increased to approximately 80%. The relation between this increased market share and Abbott's fraudulent reporting of prices is evidenced by Abbott documents, which show consideration by Abbott employees of the additional profits that could be obtained by artificially inflating prices. While Abbott profited from this fraudulent price reporting from at least 1991 through 2001, Medicare and Medicaid paid in excess of $69 million for Vancomycin alone and approximately $145 million for large volume parenterals referred to in the United States' Complaint. The payments from the government flowed to Abbott's customers, who in turn paid Abbott for the drugs both directly and through wholesalers and group purchasing organizations, thereby maintaining and increasing Abbott's market share.

The market share maintained and increased as a result of Abbott's fraudulent scheme increased Abbott's profits. In addition, the United States will be conducting discovery as to Abbott's direct participation in the process of submitting claims to Medicaid and/or Medicare. Abbott may have caused additional damages and have been additionally enriched by directly receiving part of the spread that Abbott created for its customers through its fraudulent scheme.

The United States provided information responsive to this interrogatory in its initial disclosures under Fed. R. Civ. P. 26. The United States will rely on testifying experts to provide further damage calculations. The expert reports will be provided pursuant to Fed. R. Civ. P. 26 and the Court's scheduling order in this case.

Interrogatory No. 10: During the over ten years between the filing of the Ven- A-Care Qui Tam Complaint and the U.S. Government's decision to intervene in the action, Identify:

(a) all Persons or organizations the U.S. Government or Ven-A-Care contacted in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(b) all Persons the U.S. Government interviewed or spoke with in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(c) all Persons the U.S. Government deposed or questioned in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(d) every subpoena or document request the U.S. Government issued in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(e) every response to any subpoena or document request the U.S. Government issued in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint;

(f) all documents, transcripts, recordings (video or audio), or other materials that the U.S. Government received or that were generated in connection with its investigation of the allegations in the Ven-A-Care Qui Tam Complaint.

Response: The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, part or all of this

## VERIFICATION

I declare under penalty of perjury that the facts provided in the answers of the Department of Health and Human Services' Centers for Medicare & Medicaid Services in the foregoing Responses of the United States to Interrogatory number 16 from Defendant Abbott's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Dated: 12/04/2006

Jacqueline White
Director, Office of Strategic Operations & Regulatory Affairs
Centers for Medicare & Medicaid Services
U.S. Dept. of Health and Human Services

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above United States' Objections And Responses To Defendant Abbott's First Set Of Interrogatories to be served on the following counsel by electronic mail:

Daniel Reidy
James Daly
Tina M. Tabacchi
Brian J. Murray
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: jrdaly@jonesday.com

Martin F. Murphy
Foley Hoag LLP
155 Seaport Blvd
Boston, MA 02210-2600
Tel: (617)832.1213
Fax: (617)832.7000
Email: mmurphy@foleyhoag.com

R. Christopher Cook
David S. Torborg
Jones, Day, Reavis & Pogue
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: christophercook@jonesday.com

Neil Merkl
Paul F. Doyle,
William A. Escobar
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7811
Fax: (212) 808-7897
Email: nmerkl@kelleydrye.com

Date: December 4, 2006

/s/ Ana Maria Martinez
Ana Maria Martinez