# EXHIBIT I

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


In Re:                          )
PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE         ) MDL No. 1456
LITIGATION                      ) Pages 4-1 - 4-137


BENCH TRIAL - DAY FOUR

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
November 13, 2006, 9:15 a.m.




LEE A. MARZILLI and TIMOTHY J. WILLETTE
OFFICIAL COURT REPORTERS
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617) 345-6787

237b664b-02be-40b7-a1f6-f94f1a077769

Page 6

1     THE COURT: Mr. Henderson is sitting back there, so
2   they can file -- we've oral argument on it.
3     Mr. Henderson, are you aware of all of this?
4     MR. HENDERSON: I became aware of it this morning,
5   your Honor, and some of the background, obviously, last week.
6     THE COURT: When I was reading the rule, one
7   thought occurred to me, which is that there are distinctions
8   when Government witnesses appear as fact witnesses as opposed
9   to about what happened internally to the Government, so that
10  was one line I was drawing in my own mind and I think what
11  makes some sense here is to have an argument on it.
12    MR. HENDERSON: I agree, your Honor. The
13  Government -- obviously they're calling -- they seek to call
14  Mr. Weintraub because of his position in the Government, not
15  because he's an expert in the industry. They have lots of
16  experts in the industry, your Honor. They've got lots of
17  people who have -- who have been working in the industry.
18  They want Mr. Weintraub because he's a former Government
19  employee. They want to know what he was doing and thinking
20  when he was in the Government, and it seems clear to us that
21  whatever testimony he might offer would be covered by the
22  privilege.
23    THE COURT: Well, would it make some sense to
24  script this in advance by doing two depositions, one of each,
25  and then the Government could object whenever there was a

Page 7

1   claim of deliberative process so I'd have actually a record
2   to start deciding based on it?
3     MR. HENDERSON: Well, in the Government's view, the
4   deposition testimony is covered by Touhy regulations.
5     THE COURT: Sure.
6     MR. HENDERSON: And HHS has denied the request for
7   testimony.
8     THE COURT: Here's my concern, Mr. Henderson. I
9   know they have, but now they're part of it and I'm likely to
10  have a trial at some point down the road on the Ben-A-Care --
11  is it Florida? -- two Ben-A-Care cases. What if I make a
12  decision in this incredibly important case and I don't have
13  the key Government witnesses? That seems a little like
14  cat-and-mouse.
15    MR. HENDERSON: A decision on what, your Honor? If
16  it's a decision on the meaning of the law and the
17  regulations --
18    THE COURT: Then I'm not going to let them ask
19  that.
20    MR. HENDERSON: Okay.
21    THE COURT: I mean, that's not fair game. I've
22  ruled as a matter of statutory construction on what "AWP"
23  means. There may be certain things about the industry. I'm
24  not sure Weintraub even would know that. Isn't he just
25  somebody in the White House, right? He's not --

Page 8

1     MR. MONTGOMERY: No, no. Jennings was in the White
2   House. Weintraub was with HCFA and CMS.
3     But, your Honor, we think the place to work out
4   these questions is here, not through direct contact with
5   witnesses and telling them they cannot appear. That's
6   improper it seems to us. So we agree your Honor that there
7   ought to be a way that we could do this by deposition.
8     THE COURT: Well, let's at least have oral argument
9   on it. Why don't you work out a time to have -- when would
10  you be prepared to respond?
11    MR. HENDERSON: It would have to be later this
12  week, your Honor, tomorrow or after -- tomorrow or Thursday
13  or Friday.
14    THE COURT: The big issue is to make sure they
15  understand I would not allow them to get into the
16  deliberative process privilege, why the agency did what it
17  did.
18    MR. HENDERSON: The Government's position also is,
19  your Honor, from a jurisdictional perspective, the defendants
20  need to file an independent APA action. Now, that can be
21  done --
22    THE COURT: Where, down there or here?
23    MR. HENDERSON: No, here. It can be done here.
24    THE COURT: I don't know the answer to that, but
25  there's for sure some review of the Administrative Procedure

Page 9

1   Act and I would want a written decision about why -- there's
2   certainly enough lawyers on it. If you want them to file
3   under the Administrative Procedure Act, I'm assuming you'll
4   see one this afternoon.
5     MR. HENDERSON: We did file a brief on this a while
6   ago. They don't have a Rule 45 subpoena to enforce. There's
7   no subpoena that they're seeking to enforce. And the two
8   situations where courts have authorized judicial review of
9   agency denials on Touhy requests is one where there's an APA
10  action and two in the situation where there's a request to
11  enforce a Rule 45 subpoena, not in the underlying case
12  itself.
13    THE COURT: Well, if you want to rest on that, file
14  an action.
15    MR. MONTGOMERY: But there's no reason to even go
16  to the Touhy piece of this problem if your Honor determines
17  that the Government is a party to the case, because everybody
18  agrees Touhy doesn't apply if the Government is a party.
19    THE COURT: Well, this is a gray area. It's a gray
20  area. They have the exact same suit, but it's a different
21  suit and it's up here as part of the multi-district, but it's
22  a separate suit. It's a gray area. So then we have, well,
23  what's the basis for them. I want to know, because it makes
24  no sense to me that I'm going to hear the same people in six
25  months.

Page 14

1   MR. BERMAN: Right.
2   THE COURT: And whether something is unfair and
3   deceptive when you're dealing in the nonstatutory realm. In
4   the statutory realm we can have our briefing, but in the
5   nonstatutory realm, if in fact the industry understood they
6   were being given the go-ahead, it may be a violation of
7   statute, but not unfair and deceptive in the commercial
8   world.
9   MR. HENDERSON: And if the Government was telling
10  them that, they're entitled to that evidence.
11  THE COURT: Of course, it could be devastating to
12  you if they say, "All we told them was, you know, 30 percent
13  is in the ballpark" and you're getting a thousand percent or
14  1400 percent. It may not help.
15  MR. MONTGOMERY: We'll have to see. But I hear
16  Mr. Henderson conceding that perhaps there are some subjects
17  as to which these witnesses can testify. You'll see in the
18  letter that was sent to Mr. Weintraub that the Government's
19  position is there is nothing on which you can testify.
20  THE COURT: Why don't you file your Administrative
21  Procedure Act action, which they're conceding is the correct
22  vehicle. You in the meantime -- I don't want to wait for
23  that -- get your memo in. Maybe you can confer and figure
24  out -- I respect the deliberative process privilege and I'm
25  not going to transgress it, and one careful way of doing it

Page 15

1   might be a deposition so I can think about it and it's not
2   fast off the bench as I'm thinking as we're going.
3   MR. HENDERSON: I would suggest that the defendants
4   provide a list of questions, because their letters to the
5   agency have been very vague and broad and virtually
6   impossible in determining precisely what they want to elicit
7   from the witnesses.
8   MR. MONTGOMERY: Your Honor --
9   THE COURT: You know what?
10  MR. MONTGOMERY: -- we're in a trial.
11  THE COURT: We're in the middle of warfare, you
12  know, the combat of trial. We can't script it that way at
13  this point. So why don't you file an opposition, you file
14  your action, I'll have a hearing next week. I don't
15  understand -- if it's nonbinding on the agency as part of its
16  suit, which it would not be considered as an admission of a
17  party opponent, right?
18  MR. MONTGOMERY: Yes, your Honor.
19  THE COURT: And if it's only about facts, in other
20  words, communications back and forth as opposed to what the
21  internal agency thought process was, which -- I'm thinking
22  out loud. There may be other areas that are factual like
23  that, but at least the noninternal piece of it. I'm not
24  seeing, regardless of whether I say they're part of this
25  litigation or not, what the problem would be.

Page 16

1   MR. HENDERSON: Very well.
2   THE COURT: Let me ask you this: Do you know
3   whether they had communications with the industry? Did
4   Weintraub?
5   MR. MONTGOMERY: I don't know about Weintraub.
6   Certainly Jennings had many communications with the industry
7   with members of Congress.
8   THE COURT: Like what? Make a proffer. Like what?
9   MR. MONTGOMERY: Well, I can't make the proffer
10  because I've not been able to talk them. These witnesses are
11  chilled, if you will, by what the Government --
12  THE COURT: So you don't even know what these
13  people are going to say.
14  MR. HENDERSON: I object to Mr. Montgomery's
15  characterization, your Honor.
16  MR. MONTGOMERY: On Weintraub, I think we have a
17  better idea. I can't represent to you chapter and verse what
18  he would have to say on that subject.
19  THE COURT: Why don't you talk to them?
20  MR. HENDERSON: We have, your Honor, and Mr.
21  Montgomery has talked to them as well, and I understand with
22  respect to Mr. Jennings. Mr. Jennings does not want to
23  appear and come in court and testify.
24  THE COURT: Then he doesn't have to.
25  MR. HENDERSON: That's right. He has not been

Page 17

1   subpoenaed.
2   THE COURT: By the way, I'm not forcing them. I've
3   been told they were voluntary witnesses.
4   MR. HENDERSON: Yes. I understand --
5   MR. MONTGOMERY: I said as to Mr. Jennings that he
6   had not yet volunteered, but we were going to ask him. We
7   are still in the process of asking him.
8   THE COURT: Well, if he doesn't want to come, that
9   issue is over with. Now, what about Weintraub?
10  MR. HENDERSON: I understand Mr. Weintraub has been
11  offered a significant fee for his testimony and isn't
12  interested in testifying.
13  THE COURT: You can't pay a witness for testimony.
14  MR. MONTGOMERY: That is an extraordinary
15  statement. Mr. Weintraub is a consultant. If anything has
16  been offered to Mr. Weintraub, it's to reimburse him for his
17  time lost coming here to testify.
18  THE COURT: Well, that's a whole other issue.
19  MR. MONTGOMERY: I am not privy to those
20  communications with Mr. Weintraub.
21  MR. HENDERSON: He told us he was offered, I think,
22  $350 an hour for his testimony.
23  THE COURT: Well, that's a serious issue we'll have
24  to vet.
25  MR. MONTGOMERY: And whatever he's been offered, of