# EXHIBIT 2

1

1 - 157

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CONSUME, ET AL,                  )
                    Plaintiffs,  )
                                 )
-V-                              )   CIVIL DOCKET NO.
                                 )   01-12257-PBS
ABBOTT LABORATORIES, ET AL,      )
                                 )
                    Defendants.  )

MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

January 31, 2008

Boston, Massachusetts

APPEARANCES ON PAGE 2

Proceedings recorded by electronic sound recording,
transcript produced by Apex Reporting.

64

1  some invoices that says, "Hey, look at this price.  It's
2  higher than the rest of them."  And then not having produced
3  that stuff to us at this point.
4          So, I just want to let you know that I understand
5  your Honor's ruling that if they don't produce it, they
6  can't use it at trial.
7          MR. WINCHESTER:  That's a motion in limine, Judge.
8          THE COURT:  I'm not going to make a ruling for the
9  trial Judge.  You can raise that as a motion in limine.
10         MR. BREEN:  Thank you, your Honor.
11         THE COURT:  All right.  Are we almost finished
12 with this motion?
13         MS. BROOKER:  I hope so, almost.
14         Emails.  The United States first learned of
15 Abbott's email production from private plaintiffs and not
16 Abbott.
17         We contacted Abbott; we've gotten some production
18 from Abbott of emails, but only emails in 2002 and 2003.
19         Now, I know Abbott will say, "Well, sure, there's
20 a smattering of emails throughout the production."
21         But, what I'm referring to is the electronic
22 database of emails.  Abbott has produced those only for 2002
23 to 2003.
24         We have recent testimony -- and I have it here in
25 the binder at tab 10 -- from Lynn Leone -- a deposition that

                                                                    65

1    I believe was just taken last week or the prior week -- a
2    hospital products employee in the relevant group at Abbott,
3    -- that email was used with some frequency, at least by her
4    and others in her group starting in 1998.  I don't doubt
5    that.
6            We had a large group of attorneys reviewing
7    Abbott's email production in the last month, and it is very
8    clear to us that that is probably the greatest source of
9    highly relevant information of any documents that we've seen
10   from Abbott today.
11           The nature of the emails that we've seen from the
12   hospital products employees is clear that that was their
13   main means of communicating prices with customers and with
14   each other; communicating about AWP and invoices, as
15   Mr. Breen just identified.
16           We have never gotten more than the private
17   plaintiffs but, obviously, we're not here on behalf of the
18   private plaintiffs.
19           But no one has gotten an explanation, let alone
20   an acceptable explanation from Abbott about what happened to
21   their electronic form of emails prior to 2002.
22           And, again, their corporate designee has already
23   testified that they were well aware that there was -- that
24   this litigation would be likely in 1996, and that they were
25   putting litigation holds in place.

1          We would like a certification from Abbott that
2  they have complied with our document request and have
3  produced all emails in the electronic format.
4          If Abbott is going to say -- I'm not sure what
5  Abbott is going to say about this issue -- but if Abbott is
6  going to stand up here and say that it is too burdensome, or
7  costly, because they have to go back to the source files to
8  reproduce all of these emails, our response to that would be
9  they were on notice since, at least, 1996 when they first
10 received notice from the Government that they were under
11 investigation; that they were going to have to preserve
12 emails.
13         If they did not preserve them in a cost-effective
14 way, such that now retrieving them will make it costly, that
15 burden is on them.
16         These are really highly relevant documents that we
17 are seeking and we want them regardless of the cost.
18         MR. WINCHESTER:  Judge, I hope I can short circuit
19 this.
20         They have asked for -- and they will get -- a
21 30(b)(6) witness to talk to them specifically about, you
22 know, Abbott's systems, and what's accessible, and what's
23 not; what's been produced; what, additionally, may or may
24 not be produced; how much it would cost.
25         I disagree with about 99 percent of what the

67

1   Government just said, but I think that should set my
2   arguments aside.  I think that is the issue that will answer
3   their questions.
4           There is going to be a corporate designee to come
5   in and testify about all of these issues she's talking about
6   that should answer their questions as to what is there.
7           MS. BROOKER:  Your Honor, this is a motion to
8   compel documents.
9           We are planning to take the corporate designee's
10  testimony, and we certainly will.  But we want a
11  representation from Abbott, as we are entitled to under Rule
12  34, where we serve a document request, that they have
13  produced all documents responsive to our requests for
14  emails.
15          And, again, we would ask that the Court order
16  Abbott within 20 days from the date of this order, that they
17  get us what we are entitled to, which is an identification
18  of all of our outstanding document requests and what is
19  complete; what production is complete.
20          Until we have that, we don't know what documents
21  may be missing and what we may need to move for spoliation
22  or sanctions.
23          What we need them to say:  "We are finished with
24  document production on these categories of request for
25  production," or "We are not.  We are continuing here."

1          We only have two months left for discovery, and we
2    can--
3          THE COURT:  All right.  Within 30 days they have
4    to tell you what they've produced and what is yet to come.
5          MS. BROOKER:  Thank you, your Honor.
6          Okay.  The next category of documents is a very
7    specific category of documents.  They're called HCFA 1500
8    forms.
9          These are forms that witnesses have been asked
10   about.  I don't believe -- and I could be wrong,
11   Mr. Winchester may know -- I don't believe many of them,
12   maybe none of them, have been actually produced; the actual
13   completed forms.  Certainly, the entirety of the forms that
14   we're seeking have not.
15         These are relevant because these are claims that
16   Abbott, through its Home Infusion Services, submitted
17   directly to Medicaid and Medicare for reimbursement, or
18   caused to be submitted through some of their partners that
19   they contracted with in Home Infusion Services.
20         The Abbott case is probably unique to any of the
21   other pharmaceutical manufacturers in the AWP litigation,
22   and I can't represent what all of them do, but I don't
23   believe that anyone else had a Home Infusion Services
24   business like Abbott did, which is to say they shared in the
25   profits with their customers for the reimbursement claims

69

1  that they submitted to Medicaid and Medicare.
2          So, particularly in this case, maybe not other
3  cases, but in this case, those HCFA 1500 forms are critical.
4          Now, Abbott admitted in an RFA response, because
5  we asked them -- we gave a -- served a couple RFAs on these
6  HCFA 1500 forms -- Abbott, and I'm quoting -- "Abbott admits
7  that at some time during the claim period, it sought payment
8  for certain of the drugs dispensed through the Abbott-owned
9  home infusion pharmacies, from Medicare and Medicaid,
10 through its Home Infusion Services department of HPD
11 alternate site." That is very vague.
12         United States -- this is a key element of proof.
13 We need to prove that they submitted those claims.
14         Now, in part, I believe Abbott will say, "Well we
15 submitted what they refer to as CHIPS data. It's an acronym
16 that has to do with the data they maintain electronically
17 for this Home Infusion Services.
18         But prior to -- I'm not even exactly sure Abbott
19 would know better -- but it may have been prior to 1996, or
20 some time around there -- Abbott did not submit this kind of
21 information electronically. They literally submitted a
22 paper HCFA form for each claim they submitted.
23         We did look at the CHIPS data. It doesn't have
24 the information that we need.
25         I put behind tab No. 13 for the Court and your

70

1  Honor's law clerk, a recent federal district court decision
2  issued November 20th, 2007 in the District of Columbia, and
3  it addresses these HCFA 1500 forms.
4      And, essentially, a defendant filed a motion for
5  summary judgment to limit the relator in that case -- who
6  had brought the case -- to limit the relator to the HCFA
7  1500 forms that the relator admitted at trial.
8      Now, this particular district judge found that the
9  best evidence rule allowed other information that may have
10 -- that may be able to be similar to HCFA 1500 forms to be
11 admitted.
12     But, the point I bring this up is because it is a
13 critical piece of evidence that we need.
14     I know Abbott is going to stand up here and say
15 it's burdensome, to produce those forms.  But, there's
16 probably nothing more highly relevant than those HCFA forms.
17     It's not sufficient, the CHIPS data, and if it is
18 that onerous for Abbott to produce, then this is an instance
19 where Abbott should -- the only alternative should be for it
20 to stipulate to the precise number of claims it submitted or
21 caused to be submitted to Medicare or Medicaid either
22 itself, directly, which occurred sometimes, or through one
23 of its partners that it contracted within Home Infusion
24 Services.
25     So, this one we believe we are firmly entitled to

1  get those actual documents, which is more work for us to
2  get, frankly, than a stipulation.  But if we get a
3  stipulation from Abbott that there were 500,000, 5,000,000
4  -- I have no idea what the number would be -- claims filed
5  from 1991 to 2003, we would accept that stipulation.
6          We would need, however, some sort of assurance
7  that it is based on a real number.
8          In other words, I'm not sure how they would do
9  without themselves finding the HCFA forms and counting them
10 up.  But if they think they can do it somehow from the CHIPS
11 data, we can't.  We need that information.
12         Thank you.
13         MR. WINCHESTER:  Judge, let me just say we have
14 been very clear with them.  We are not withholding relevant
15 information having to do with the operation of Abbott's
16 former Home Infusion Services group.
17         What counsel is talking about is what they need,
18 supposedly for their case, has to do with claims that were
19 submitted through Home Infusion and payments that were made
20 by Medicare and Medicaid.
21         We believe that the data we gave them, through
22 what was called the CHIPS system, this was the system
23 through which all these claims were processed -- contains
24 fields of information that has to do with the amount that
25 was claimed and the amount that was paid for every claim.