# EXHIBIT 7



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*  *Telephone: (202) 616-3797*
*Ninth Floor*  *Telecopier: (202) 616-3085*
*Washington, D.C. 20004*

February 7, 2008

*Via Electronic Transmission*

Carol P. Geisler
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692

Re: *U.S. ex rel. Ven-a-Care of the Florida Keys Inc v. Abbott Laboratories*, 06–CV-11337-PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456/Civil Action No. 01-12257

Dear Carol:

This is to memorialize our meet and confer today on item number six from my February 5, 2008 letter to you and Jason Winchester. Below is item number six, which refers to one of Judge Bowler's rulings at the hearing on January 31, 2008. If I misunderstood any of the information you provided, please let me know right away so that we have a meeting of the minds.

> HCFA 1500 Forms - Abbott is required to meet and confer with the Department of Justice within 15 days from the date of the hearing, or no later than February 15, regarding whether CHIPS contains information on the number of Medicare claims, number of Medicaid claims and amounts of these claims from 1991 through 2003, and if not, whether other Abbott documents identify this information.

With respect to this topic, I reiterated during our call that the United States' goal is to obtain certain information, in whatever format is most efficient to both parties, pertaining to each Medicare or Medicaid claim filed, or caused to be filed, by Abbott Laboratories on behalf of its (or its customers') pharmacies through its Home Infusion Services business for the drugs in the First Amended Complaint from 1991 through 2003. To that end, as we pointed out to Judge Bowler, and I repeated today, we are willing to consider various forms of this information

-2-

depending upon what is the least time consuming and costly method for the parties, including: (1) the HCFA 1500 forms; (2) electronic data containing the same information whether it be CHIPS data or some other electronic format; or (3) a certification from Abbott containing the number of claims, amounts of claims and dates of the claims.

I told Judge Bowler that the United States could not locate claims information for the early years of the period at issue.

> But prior to – I'm not even exactly sure, Abbott would know better – but it may have been prior to 1996, or some time around there – Abbott did not submit this kind of information electronically. They literally submitted a paper HCFA form for each claim they submitted. We did look at the CHIPS data. It doesn't have the information that we need.

Tr. at 33.

In direct response, Mr. Winchester repeatedly told Judge Bowler that, to the contrary, Abbott provided the United States all the data for the Medicaid and Medicare claims for all the years that it was seeking, including claims information for the entire time period.

> **Judge, let me just say we have been very clear with them.** We are not withholding relevant information having to do with the operation of Abbott's former Home Infusion Services group. What counsel is talking about is what they need, supposedly for their case, has to do with claims that were submitted through Home Infusion and payments that were made by Medicare and Medicaid. We believe that the data we gave them, through what was called the CHIPS system, this was the system though which all these claims were processed – contains fields of information that has to do with the amount that was claimed and the amount that was paid for every claim. **So, it has been my understanding that the CHIPS data has, in a far more useable form, than these HCFA 1500 forms counsel is talking about, all the information that they need.**

\*\*\*\*\*

> And the only thing they're saying they want them for, frankly, is the number of claims and amounts claimed which, we believe, is present in the CHIPS system. We've taken that position with them.

\*\*\*\*\*

-3-

> My understanding, up until today – and, in fact, we've set this position out. **We say it's all in the CHIPS data.**

Tr. at 34-37.

I learned from you today that Mr. Winchester was wrong.

To summarize, here is the information you provided, some of which was obviously contrary to the information Mr. Winchester provided to the Court. Please inform me if my understanding is in any way incorrect.

- The CHIPS system was a defunct system that Abbott decommissioned sometime in or around early 2000.

- Abbott has restored some of the CHIPS data starting with claims information from 1995.

- CHIPS contains no claims information prior to 1995; so CHIPS has no Medicare or Medicaid claims data for the years 1991 through 1994.

- The number of claims submitted by Abbott to Medicaid or Medicare after 1998 to 1999 time period trickled off after Home Infusion Services was shut down, as no new customers were obtained and contracts were being terminated.

- When Home Infusion Services was shut down in 1998 to 1999 time period, Abbott transferred its original files, including the Medicare and Medicaid claims files (i.e., including HCFA 1500 forms) to the customers. To the extent that copies of any HCFA 1500 forms or other claims information were retained, it is likely that Abbott's records are spotty and incomplete.

- The individual patient files with claims forms and payments were arranged by customers and not types of documents, such that the HCFA 1500 forms would be found in the individual customer files and not in some separate HCFA 1500 master file.

- Abbott has only maintained four boxes of hard copies of individual patient files arranged by customers that may contain some HCFA 1500 forms for the 1991 through 1994 time period. You are having those boxes scanned now. **I requested that Abbott produce as soon as possible electronic copies of the contents of those four boxes, or search for and produce only the HCFA 1500 forms from among the boxes. To the extent that Abbott chooses to produce the entire contents of the four boxes, and given the lateness of the production, I request that these be provided in OCR format so that the United States may quickly search through these to locate the HCFA 1500 forms.**

-4-

- Abbott has two boxes of microfiche and 64 CD-Roms (approximately 700,000 pages), all of which may amount to close to one million pages of individual patient files arranged by customers. Some unknown number of HCFA 1500 forms may be contained in these nearly one million pages. However, it is likely that all of the HCFA 1500 forms are not contained in these one million pages because most were returned to the customers.

- At one time, Abbott's claims submitted to Medicaid and Medicare could be found in the CHIPS data for the 1995 to 2000 period, although for later years, there would be much fewer claims. Never at any time did the CHIPS data contain claims for years prior to 1995.

- I explained that we have learned on our own that, without certain additional information (documentary and testimonial) delineated further below, the partially restored CHIPS data is unsearchable and unuseable for any purpose. You explained that you are uncertain that this additional information could be restored. **You indicated that you would check and inform us further about the potential restoration.**

The additional information we need just to ascertain whether the CHIPS database is even searchable, includes at least the following (although until we get this minimal information, we won't know whether it is sufficient):

- The document that identifies the data dictionary (ABT-DOJ 0183148-0183425). It references about 120 different tables/files of which Abbott produced only two: the claims master file and the accounts receivable master file.

- All tables referenced in the data dictionary

- All code lookup tables and all other related tables that are associated with those referenced in the data dictionary, but not described in it

- As I indicated, it appears that the CHIPS system includes patient tables (e.g., therapies, addresses, personal information, etc.). If it is more efficient for Abbott and would expedite production, we would consider omitting the tables identified in Section III of the data dictionary (Patient Data), with the possible exceptions of the Patient Account File and the Patient Financial Coverage File (perhaps one or two more), which identify bill-to numbers, price schedules, etc. **We need further information from Abbott before we can determine whether this is reasonable.**

- A Rule 30(b)(6) deposition. Mark Lavine has requested the deposition take place on February 25 or 26, or sooner, as this request has been outstanding for months. You indicated that you might have to offer an alternate date due to your unavailability on those dates; we request an earlier date given that Abbott is in

-5-

violation of CMO-29 by not offering a date much sooner.

Please let me know of (1) the date for production of the four boxes referenced above, (2) at least two consecutive dates for the continuing data deposition(s) referenced in Mark Lavine's email of yesterday, (3) the date for production of the information referenced in the bullet points immediately above, and (4) whether the discussed CHIPS information can be restored sufficient to allow the United States to access the claims information, and, if not, whether Abbott is willing to provide a certification set forth above.

As I am sure you understand, we need to resolve this information expeditiously so that we may determine whether the parties need to re-appear before Judge Bowler on this issue. I greatly appreciate your involvement at this point since it appears that you are the person most knowledgeable about this at Jones Day.

                      Sincerely,

                      /s/

                      Renée Brooker

cc: James Breen, Jason G. Winchester

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number: (312) 269-4373
jgwinchester@jonesday.com

JP741122
080024-024348

February 13, 2008

VIA EMAIL

Renee Brooker
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
601 D. Street, NW
Ninth Floor
Room 9028
Washington, D.C. 20004

Re: U.S. ex rel. Ven-a-Care of the Florida Keys Inc. v. Abbott Laboratories Inc. 06-CV-11337

Dear Renee:

    I am writing in response to your letters of February 5 and 7, 2008 regarding the tasks ordered by Magistrate Bowler at the hearing on January 31, 2008.

    We are generally in agreement with your recitation of Magistrate Judge Bowler's orders, but we continue to believe that the transcript is the best source for what the Court ordered and disagree with some of your editorializing. I have set forth at the end of this letter our view of what was ordered and the applicable due dates.

    Your letter mentions the production of invoices. We do not agree with your suggestion that the Court ordered Abbott to produce actual sales invoices. We have provided the DOJ with all conceivably relevant information from the invoices in electronic form as part of the transactional sales data. There is no justification for producing the actual paper invoices, which as you might imagine would be incredibly voluminous if you are asking for the invoice associated with every sale of the Subject Drugs over the course of more than a decade.

    With regard to the production of HCFA 1500 forms, the Court directed us to meet and confer about this issue, and Carol Geisler had a conference with you on February 7. Selectively stringing together quotations from the transcript of our January 31 hearing, you suggest that I provided false information to Judge Bowler about the availability of claims information in the CHIPs system. I did no such thing. As the transcript plainly shows, in those portions you elected to exclude from your letter, I told the Court of my understanding that the claims information was contained in the CHIPs system, but confirmed that I would investigate further the concern that you raised for the first time in open court about whether the CHIPs data includes claims prior to 1995. ("If, in fact, it is the case that the CHIPs system doesn't answer all their

CHI-1632069v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Renee Brooker
February 13, 2008
Page 2

questions, then I guess I need to talk to them about which questions it doesn't answer, and then what sources I have to answer the questions." (Hr'g. Tr. 37-38).) If you are going to quote the transcript, please give the whole story.[1]

We continue to maintain that the CHIPs system is the best available source for information about claims submitted through the former Home Infusion Services department. Carol made clear to you on February 7 that Abbott restored this long-defunct system at great expense in order to retrieve any available data to satisfy DOJ's document requests. As Carol explained, it may not have been possible for all data contained in the CHIPs system to be restored. As agreed, we will provide you with a status of the restoration of the CHIPs system, i.e., what could or could not be restored, the size of the data restored and the difficulty of producing all of that data to you.

With regard to the actual HCFA 1500 forms, Carol told you, and Ms. Kreklow and Ms. Klaus confirmed in their depositions last week, that the only source for those paper forms is the underlying patient files, where, if these forms were kept, they were kept in the ordinary course of the Home Infusion Services business. Upon the closure of Home Infusion, the vast majority of patient files that belonged to Abbott's customers were returned to those customers. Abbott has only 4 boxes of paper files from 1991-1994 which appear to contain some HCFA 1500 forms. Abbott also has 2 boxes of microfiche, and 64 CD ROMs covering the period 1995-2000. You indicated that you did not want the 2 boxes of microfiche and the 64 CD ROMs since HCFA 1500 forms that might be contained in these files would be duplicated in the CHIPs data. As discussed, we will produce the four boxes of paper files to you as they are kept in the ordinary course of business as soon as practicable. Abbott is not obligated to undertake the exercise of tallying up the number of claims submitted through Home Infusion to Medicare and Medicaid, and we will not do so. We have produced to you the CHIPs system data, and we will produce to you the patient files, which contain all of the HCFA 1500 forms in Abbott's possession, custody, or control. That constitutes all of the information Abbott has about claims submitted through Home Infusion. DOJ can analyze the information as it sees fit.

If you wish to discuss any of these items further, please let us know.

---

[1] Since you have decided to take swipes, I might add that I found it interesting to see analyses relating to the financial performance of the former Home Infusion Services department marked by the DOJ as exhibits during the deposition of Ms. Kreklow last week, since you suggested to Judge Bowler that no such documents had been produced by Abbott.

CHI-1632069v1

JONES DAY

Renee Brooker
February 13, 2008
Page 3

                                          Sincerely,

                                          Jason G. Winchester/cg

Enclosures

cc:    James R. Daly
       Carol P. Geisler
       Jim Breen

CHI-1632069v1

JONES DAY

JONES DAY

Direct Number: (312) 269-4373
jgwinchester@jonesday.com

| Court's Order | Due Date | Transcript Cite |
|---|---|---|
| **Acyclovir Data**<br><br>Production of Acyclovir sales data and documents denied. | None | 12:12-13 |
| **Transactional Sales Data**<br><br>Abbott shall provide an affidavit stating that production of responsive transactional sales data is complete. | February 14, 2008 | 15:20-21 |
| **20% of Customers**<br><br>Abbott will complete remaining production, if any, of contracts for the bottom 20% of Alternate Site customers and any other documents relating to those customers (correspondence, etc.) that fit within the four categories delineated by the Court. Should Abbott be unable to complete the production within the deadline, Abbott will file the appropriate motion. | February 20, 2008 | 26:3-5; 26:15-16 |
| **Status of Document Production**<br><br>Abbott will provide the status of production of documents for each request for production made by the DOJ in its first four sets of RFPs. DOJ and Ven-A-Care to provide the same information to Abbott | March 1, 2008 | 31:15-16; 45:5-7 |
| **HCFA 1500 Forms**<br><br>Meet and confer regarding the availability and production of HCFA 1500 forms | February 15, 2008<br>*Completed 2/7/08* | 37:13 |
| **Home Infusion Services Department**<br><br>Provide the status of production of financial documents for Abbott's Home Infusion | March 1, 2008 | 44:1 |

CHI-1632069v1

JONES DAY

Renee Brooker
February 13, 2008
Page 2

| Court's Order | Due Date | Transcript Cite |
|---|---|---|
| Services Department. | | |
| **Alt Site Sales Force Personnel and Working Files and Deposition Dates**<br><br>Provide status of production of Alt Site sales force personnel files and working files (i.e., either produced or can't be found) and offer deposition dates for alt site sales force personnel requested by the DOJ and that were subject of the motion to compel. If Abbott cannot locate certain witnesses, it will provide DOJ with the last known address. | March 1, 2008 | 70:13-71:7 |

CHI-1632069v1