# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-11680-GAO

UNITED STATES OF AMERICA ex rel.
CHRISTINE DRISCOLL and FRANK GARCIA,
Plaintiffs

v.

SERONO INC., SERONO LABORATORIES, INC., ARES-SERONO, S.A., SERONO S.A.
ACCENT RX, INC. (f/k/a APP SPECIALTY PHARMACY, INC.), BEVERLY HILLS
PHARMACY, BIOSCRIP, INC. (f/k/a STATSCRIPT PHARMACY), CAPITOL DRUGS,
COMMCARE PHARMACY, INC., CURASCRIPT PHARMACY, INC., DISCOUNT
MEDICAL PHARMACY, ECHO DRUGS, LINCOURT PROFESSIONAL PHARMACY,
PRIORITY PHARMACY, TDI PHARMACY, and
TOTAL REMEDY AND PRESCRIPTION CENTER,
Defendants.

OPINION AND ORDER
March 18, 2008

O'TOOLE, D.J.

The original complaint in this qui tam case was filed on August 18, 2000, by relator Christine Driscoll. It consisted of a single cause of action under the federal False Claim Act ("FCA") against Serono Laboratories, Inc., and Ares-Serono, S.A. (collectively "Serono"), alleging that Serono knowingly accepted payment or reimbursement from public and private health insurers that exceeded the reimbursement price established by an agreement between Serono and the Food and Drug Administration for Serono's drug Serostim, prescribed to treat the condition known as "AIDS-wasting." Over time the original complaint was amended four times. The amendments added claims against various pharmacies that dispensed Serostim under the FCA, claims against Serono under the false claims acts of various states, and claims against the

pharmacies also for violation of state false claims acts. Relator Frank Garcia joined the action as a plaintiff with respect to the state law claims.

The United States eventually elected to intervene as to the federal claims against Serono, which were then settled. The United States elected not to intervene as to the federal claims against the pharmacy defendants. None of the States whose statutes were invoked elected to intervene. Accordingly, at this point the claims that remain are those prosecuted by the two relators, Driscoll and Garcia, against the pharmacy defendants under the FCA (Count Six of the Fourth Amended Complaint) and similar statutes of the States of California (Count Forty), Delaware (Count Forty-One), Florida (Count Forty-Three), Hawaii (Count Forty-Four), Illinois (Count Forty-Five), Massachusetts (Count Forty-Six), Nevada (Count Forty-Seven), Tennessee (Count Forty-Eight), Texas (Count Forty-Nine), Virginia (Count Fifty), and the District of Columbia (Count Forty-Two).

The defendants Lincourt Professional Pharmacy, Bioscrip, Inc., Capitol Drugs, Curascript Pharmacy, Inc., Priority Pharmacy, Total Remedy Prescription Center, and Discount Medical Pharmacy (collectively the "pharmacy defendants") have each moved for dismissal on a variety of grounds. Common to each motion is the argument that the complaint fails to plead the claims under the FCA and the similar state statues with sufficient particularity to satisfy the requirement of Federal Rule of Civil Procedure 9(b).

Rule 9(b) applies to the FCA because the FCA is a fraud statute. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 227-28 (1st Cir. 2004). Pleading an FCA violation – where the false claim for reimbursement submitted to the government is "'the *sine qua non* of a False Claims Act violation'" – requires a plaintiff to plead with particularity not just the existence of a fraudulent scheme, but details about the claim or claims submitted by the

2

defendant for payment that are allegedly false or fraudulent. See Karvelas, 360 F.3d at 225, 232 (quoting United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002)). Specifically:

> In a case such as this, details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in a complaint. However, like the Eleventh Circuit, we believe that "some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." Clausen, 290 F.3d at 1312 n. 21.

Id. at 233. Put another way, allegations about underlying schemes and other wrongful activities "invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims submitted to the government that constitute the essential element of an FCA qui tam action." Id. at 232; see also United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 731 (1st Cir. 2007) ("In the FCA context, this court has previously held that the rule requires relators to 'provide details that identify particular false claims for payment that were submitted to the government.'" (quoting Karvelas, 360 F.3d at 232)).

Applying this teaching to the present complaint,[1] it is apparent that it fails to plead the claims with sufficient particularity. Although the Fourth Amended Complaint comprises almost three hundred paragraphs (most of which deal with Serono), the allegations of fraud committed by the pharmacy defendants is mainly contained in only three paragraphs:

---

[1] Rule 9(b)'s heightened pleading standard applies with equal force to the state law fraud claims brought in this Court. Rost, 507 F.3d at 731 n.8.

3

71. On information and belief and as exhibited in Serono's January 2, 2001 memorandum, a copy of which is attached hereto as Exhibit D, the Preferred Provider Defendants receive a 3.75 percent discount on the price of Serostim. Also on information and belief, the Preferred Provider Defendants bill [the Health Care Finance Administration of the United States] HCFA, as well as other third party payers, for the full price of Serostim, thus receiving additional profit on each Serostim sale.

72. The opportunity for profit from Serostim sales was increased for the Preferred Provider Defendants because Serono offered incentives to its sales representatives for directing business to the Preferred Provider Defendants. As part of their contracts with Serono, the Preferred Provider Defendants agreed to document and to provide to Serono the volume of Serostim sales attributable to each sale representative. In turn, this information was the basis by which Serono determined whether sales representatives reached their quotas and qualified for incentive bonuses in each quarter. By linking the sales representatives' compensation to sales through its preferred providers, Serono funneled the majority of Serostim sales to the Preferred Provider Defendants, who had a strong financial motive to maximize sales because of the additional payment they received in excess of the already significant profits from selling Serostim.

73. By internal memorandum dated January 2, 2001, Serono informed its sales representatives that the preferred provider program was being immediately suspended. Serono's management advised the sales representatives that the preferred provider program was terminated because the arrangement violated HCFA guidelines:
   -- Medicaid guidelines prohibit manufactures [sic] from providing incentives or inducements to distributors for products that are used in a Medicaid population. Serostim is 75% Medicaid. The Serono Legal Team has advised the discontinuation of the Preferred Partner Program agreement immediately.

   A copy of Serono's January 2, 2001 memorandum is attached hereto as Exhibit D. Simultaneously with the issuance of the January 2, 2001, memorandum to sales representatives, Serono contacted all the Preferred Provider Defendants to cancel each written preferred provider agreement.

(Fourth Am. Compl. ¶¶ 71-73.) These paragraphs outline a fraudulent scheme, but they fail to identify a single particular false claim submitted for payment by any of the pharmacy defendants to any governmental agency at any time. There are no details concerning such matters as the specific dates, content, identification numbers, or dollar amounts of false claims actually

4

submitted. See Rost, 507 F.3d at 726, 733 (noting that the "complaint does not identify any false claim presented…to any other government health program or any particular entity or person who actually submitted such a claim" and therefore failed to satisfy the particularity requirement).

In short, the Fourth Amended Complaint suffers from precisely the same defect as did the complaint in Karvelas: it describes an allegedly illegal "scheme," but only refers to specific false claims in the most conclusory terms, rather than with particularity as required by Rule 9(b), as interpreted by the First Circuit. See Karvelas, 360 F.3d at 233.

The relators' argument that the requirements of Rule 9(b) may be deemed constructively satisfied so long as the Pharmacy Defendants have actual notice of the details has been rejected in this Circuit. See Rost, 507 F.3d at 733. In the end, when considering the Fourth Amended Complaint "as a whole," the particularity requirements of Rule 9(b) remain unsatisfied. See Karvelas, 360 F.3d at 233 n.17.

As an alternative to dismissal for failure to plead in accordance with Rule 9(b), the relators ask that they be permitted to further amend their complaint. In order to be able to plead with the required particularity in a proposed fifth amended complaint, however, the relators need to obtain discovery from the Department of Justice ("DOJ"). They request that the DOJ be permitted to respond to a subpoena duces tecum which has been served by the relators. They contend that the subpoena duces tecum is necessary to gather details (described in the relators' own words as "X claim was filed on Y date") related to the particular false claims submitted to satisfy Rule 9(b). However, the First Circuit has expressly discouraged the use of discovery by relators to obtain details of actual false claims when they have only made general, that is, not particularized, allegations in their complaint. Rost, 507 F.3d at 732 ("'[A] qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such

5

details will emerge through subsequent history.'" (quoting Karvelas, 360 F.3d at 231)). Such a view is rooted, and justified, in part, in the very structure and purpose of a qui tam case, by which a private citizen brings a suit on behalf of the government based on her own personal knowledge of fraud. These relators have no personal knowledge of acts or practices by the pharmacy defendants; they are former employees of Serono, who may have personal knowledge about what Serono did as regards submitting false claims. Like any other stranger to the business of the pharmacy defendants, the relators are unable to make specific allegations about the defendants' submission of false claims without getting it somewhere else, such as from the DOJ. (Recall that the DOJ has declined to intervene as to the claims asserted against the pharmacy defendants.) Since the relators' subpoena duces tecum is for the purpose of developing the very details and specifics which should have been in their possession *before* the filing of the complaint, the multiple motions to quash the subpoena duces tecum (dkt. no. 214, 223, 228, 262) are GRANTED.

Without the discovery that would come to the relators as a result of the subpoena duces tecum, there is no reason to expect that the relators would be able to frame a Fifth Amended Complaint that contained enough particularity to satisfy the Karvelas pleading standard. Consequently, leave to amend further would not serve any legitimate purpose, and it is therefore DENIED.[2]

---

[2] Additionally, the Court observes that both the Third and Fourth Amended Complaints were filed years after the Karvelas decision, providing the relators plenty of opportunity and time to conform their pleadings to the requisite legal standard. Despite being on notice of the relevant legal standards, and in fact amending their complaint, the current complaint still does not satisfy Rule 9(b). Such a repeated failure to cure pleading deficiencies lends further support in denying the relators' request to amend their complaint for the fifth time. See Pfizer, 507 F.3d at 733-34.

6

For the foregoing reasons, I GRANT the motions to dismiss filed by Lincourt Professional Pharmacy, Bioscrip, Inc., Curascript Pharmacy, Inc, Priority Pharmacy, and Capitol Drugs (dkt. nos. 138, 165, 173, 184, 186), as well as Discount Medical Pharmacy's motion for judgment on the pleadings (dkt. no. 242). Further, Total Remedy Prescription Center has joined in those various motions to dismiss (dkt. no. 225) and therefore the Fourth Amended Complaint is dismissed against it as well. As a result, its separate motion to dismiss (dkt. no. 224) raising separate grounds for dismissal is MOOT.

The defendant, Accent Rx, Inc., has moved to dismiss only on the ground that it is not a proper party to this action. Whether Accent RX is a proper party is a question that includes fact-based issues that cannot be resolved on a motion to dismiss, and Accent RX's motion (dkt. no. 148) is therefore DENIED.

Accent RX's motion did not raise any objection based on the Fourth Amended Complaint's failure to comply with Rule 9(b), nor did it join in any of the other co-defendants' motions. Nonetheless, it seems apparent that if the operative complaint is insufficient under Rule 9(b) as to all the other pharmacy defendants it is also insufficient as to Accent RX. For the same reasons, the relators' motions for default against Beverly Hills Pharmacy, TDI Pharmacy, Echo Drugs, Inc. (Flushing), and Echo Drugs, Inc. (Brooklyn) (dkt. nos. 197, 198, 199, 200) are DENIED. Accordingly, the complaint will be dismissed on that ground as to Accent RX, Beverly Hills Pharmacy, TDI Pharmacy, Echo Drugs, Inc. (Flushing) and Echo Drugs, Inc. (Brooklyn) as well unless the relators show, within ten days of the entry of this order, why it should not be dismissed.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge