UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>  *The City of New York, et. al.*<br>  *v.*<br>  *Abbott Laboratories, Inc., et al.* | Judge Patti B. Saris |

**PLAINTIFFS' SUR-REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL THE PRODUCTION OF CLAIMS DATA**

It remains unclear why Defendants feel it necessary to burden the Court with the instant motion to compel New York claims data. Plaintiffs already have produced claims data for all Designated FUL Drugs. At the time defendants filed their reply brief, Plaintiffs had promised to produce claims data for all other at-issue drugs by April 4, 2008. In fact, plaintiffs produced that data today, April 2, 2008.

Defendants state that the claims data produced is insufficient because it does not identify the basis of payment nor does it contain information sufficient to identify the basis of payment. Def. Reply at 1. Defendants are, in large part, wrong. Their erroneous conclusion may stem from the fact that defendants do not seem to know what the reimbursement formula is in New York. For example, defendants say that New York pays the "lower of Estimated Acquisition Cost (defined as AWP minus some fixed percentage) plus a dispensing fee, the Federal Upper Limit plus a dispensing fee, or the Usual and Customary charge submitted by the pharmacist to New York Medicaid as his or her 'billed charge.'" Def. Reply at 1. This is incorrect. New York statute provides

that when a FUL is in place, New York Medicaid reimburses at the FUL.  N.Y. Soc. Serv. L. § 367-a(9)(b)(i).  Specifically, the statute states:

> [P]ayments under this title shall be made at the following amounts: (i) if the drug dispensed is a multiple source prescription drug for which an upper limit has been set by Federal Centers for Medicare and Medicaid services, [the payment shall be] an amount equal to the specific upper limit set by such federal agency for the multiple source prescription drug.

*Id*.  Only when there is no FUL in place does New York Medicaid reimburse based on Estimated Acquisition Cost ("EAC") or Usual and Customary ("U&C").  N.Y. Soc. Serv. L. § 367-a(9)(b)(ii).

> [P]ayments under this title shall be for the following amounts: (ii) if the drug dispensed is a multiple source drug or a brand-name prescription drug for which no specific upper limit has been set by such federal agency, the lower of the estimated acquisition cost of such drug to pharmacies, or the dispensing pharmacy's usual and customary price charged to the general public.

*Id*.  Thus, if an NDC appearing in the claims data was subject to a FUL, it was paid based on that FUL.  If defendants would like plaintiffs to identify when each NDC was subject to a FUL or not, plaintiffs would be pleased to do that (though plaintiffs have every good reason to believe that defendants know full well when their drugs were on or off the FUL).

If a drug was not subject to a FUL, then New York Medicaid reimbursed based on EAC or U&C.  It is correct that the claims data does not contain an indicator to identify whether EAC or U&C served as the basis for reimbursement in such event.  However, as the accompanying affidavit of Joanne M. Cicala, sworn to April 2, 2008, explains, there are two alternative-- or complimentary—options available to securing the basis of reimbursement for these non-FUL based claims.

Option One.  Defendants have subpoenaed Computer Science Corporation (CSC) which is New York State's fiscal agent responsible for Medicaid claims processing.  *See* Cicala Aff. ¶ 1 and Exhibit A.  The data sought by Defendants' CSC subpoena includes data that, if available, would indicate whether (AWP-%) or U&C served as the reimbursement basis for all non-FUL claims.  *Id*.

Option Two.  New York State Department of Health ("NYDOH") has offered to reverse-engineer, so to speak, the basis of reimbursement for all at-issue claims.  *See* Cicala Aff. at ¶ 2.  Specifically, NYDOH has informed plaintiffs that it can back out those claims reimbursed based on FUL, and thereafter apply a logic to determine and identify which of the remaining claims were reimbursed based on AWP or U&C.  *Id*.  NYDOH has informed plaintiffs that it would be able to complete this work within three (3) weeks of defendants' agreement that this option is desirable.

This sort of approach is not novel in the context of an AWP case.  It is plaintiffs' understanding that defendants engaged in a similar exercise with the State of Missouri, a State whose claims data, like New York's, did not -- in its native form -- include a reimbursement price indicator.  *See* Cicala Aff. at ¶ 3.  In Missouri, plaintiff engaged in a similar sort of reverse-engineering process described here and then counsel for defendants (indeed, the very counsel who has filed the motion to compel) took the deposition of the Missouri entity responsible for the reverse- engineering process.  *Id*.

Plaintiffs have asked defendants whether they are interested in having NYDOH do the work described in Option Two above.  *See* Cicala Aff. at Exhibit B.  As stated, plaintiffs are informed that such work can be completed within three (3) weeks of defendants' affirmative response.

Defendants also complain that the claims data does not break out what part of the paid claim represents the dispensing fee.  This is another red herring that perhaps also results from defendants' lack of familiarity with the New York Medicaid Reimbursement statute.  The statute provides that

> [T]he department shall pay a pharmacy dispensing fee for each such prescription dispensed, which dispensing fee shall not be less than the following amounts:  (i) for prescription drugs categorized as generic by the prescription drug pricing service used by the department, four dollars and fifty cents per prescription; and (ii) for prescription drugs categorized as brand-name prescription drug by the prescription drug pricing service used by the department, three dollars and fifty cents per prescription.

N.Y. Soc. Serv. L. § 367-a(9)(d). This means that if an NDC was subject to a FUL, the dispensing fee paid for any given claim was $4.50.  If the NDC was not on a FUL and was paid based on AWP, the dispensing fee for any given generic drug claim was $4.50, and the dispensing fee for any given brand drug claim was $3.50.  *Id*.

In any event, the reverse engineering process described above would also reveal the amount of the dispensing fee paid for each at-issue claim.

## **CONCLUSION**

For all the foregoing reasons, defendants' Motion to Compel should be denied.

4

Dated: April 2, 2008

        Respectfully submitted,

        **City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

        **KIRBY McINERNEY, LLP**
        830 Third Avenue
        New York, New York 10022
        (212) 371-6600

        /s/ Joanne M. Cicala
By:   Joanne M. Cicala (JC 5032)
      James P. Carroll Jr. (JPC 8348)
      Aaron D. Hovan (AH 3290)

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the 2nd day of April, 2008 he caused a true and correct copy of Plaintiffs' Sur-Reply Memorandum in Further Support of their Opposition to Defendants' Joint Motion to Compel the Production of Claims Data to be delivered to counsel of record for defendants by electronic service by posting it to Lexis Nexis File and Serve's Electronic Service System pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.

/s/ Kathryn Bale
Kirby McInerney LLP
830 Third Avenue, 10th Floor
New York, NY 10022
(212) 371-6600