UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| *City of New York et al.* | ) ) |
| *v.* | ) ) |
| *Abbott Laboratories, et al.* | ) ) |

MDL NO. 1456
CIVIL ACTION NO.
01-12257-PBS

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOVANTS' CROSS MOTION TO QUASH ALL SUBPOENAS ISSUED BY DEFENDANTS TO THE NEW YORK STATE DEPARTMENT OF HEALTH AND/OR ITS CURRENT AND FORMER EMPLOYEES

Pursuant to Fed. Rs. Civ. P. 26 and 45(c)(3)(A), the New York State Department of Health, Mark-Richard Butt, Mary Alice Brankman and Michael A. Falzano, by and through the New York Attorney General and Plaintiffs (hereinafter collectively referred to as "Movants"), file this reply memorandum of law in further support of their Cross-Motion to Quash all Subpoenas Issued by Defendants to the New York State Department of Health and/or its current and former employees[1].

---

[1] Movants filed a consent motion for leave to file this reply memorandum on March 25, 2008 (Dkt.5163).  As of today, that motion remains *sub judice*.

## PRELIMINARY STATEMENT

Stripped of its hyperbole, defendants oppose movants' motion to quash the subpoenas served on the New York State Department of Health (hereinafter "NYDOH") and its current and former employees on the grounds that (a) from 1978-1994, NYDOH was responsible for setting the Medicaid reimbursement formula and, "[a]t the very least, NYDOH is the agency with legal responsibility for administering New York's Medicaid program"[2]; and (b) defendants have been supplying the New York Elderly Pharmaceutical Insurance Coverage  ("EPIC") program with Average Manufacturer's Price ("AMP") and Best Price information on a quarterly basis since 1991.  Defendants are mistaken on certain facts (as explained below) but even if they were not, neither ground is disputed and neither ground supports the massively overbroad and burdensome discovery sought.

Defendants say the type of "government knowledge" discovery requested is "routine in these cases". Reply/Opp. at 2.  This completely ignores the context of the Court's prior rulings on "government knowledge" discovery.  In every other case considered by this Court where the sort of "government knowledge" discovery defendants now seek was permitted, that discovery was directed at the agency actually charged with setting the reimbursement formula or other executive branch participants.  New York is different.  In New York, since 1994, the legislature has set the reimbursement formula.  Defendants themselves recognized and accepted this critical difference when they argued in the Nevada AWP action that it was proper for a New York state court to have precluded agency discovery in a New York AWP case given that the legislature,

---

[2] Defendants' Joint Memorandum in Opposition to Movants' Cross Motion to Quash and in Further Support of Defendants Motion to Compel Subpoenas Issued by Defendants to the New York State Department of Health and Three Key Witnesses ("Reply/Opp.") at 10.

not the agency, set the reimbursement rate. *See* Memorandum of Law in Opposition to Defendants' Motion to Compel and in Support of Movants' Cross Motion to Quash all Subpoenas Issued by Defendants to the New York State Department of Health, etc. ("Movants Br.") at 2-4,  5-6, *e.g.; see also People ex rel. Spitzer v. Pharmacia Corp*. 835 N.Y.S.2d 486 (3 Dep't 2007) ("the *Pharmacia* case").  Defendants' efforts now to distance themselves from their prior embrace of the *Pharmacia* ruling is nothing more than a self-serving flip-flop that should not be permitted.

Oddly, defendants indicate a willingness to resume negotiations with movants as to the scope and timing of the requested productions in their reply/opposition brief.  Query why defendants burdened the Court with their motion to compel in the first place if such negotiations remained an option.  Movants have always indicated a willingness to negotiate along these lines, a fact defendants completely ignored when they filed their motion in the first place and continue to ignore now (attaching only their own correspondence to the State as exhibits, without attaching the State's or plaintiffs' offers of compromise and responses).  As set forth below, it is reasonable to believe such negotiations would have been (and still could be) constructive given that the majority of what defendants seek is either publicly available, undisputed and/or resolvable by way of a stipulation.

**ARGUMENT**

**I.   Defendants Do Not Need Discovery Where Facts Are Publicly Available And/Or Undisputed**

Defendants' explanations as to why they need the enormous amounts of discovery sought by these subpoenas ring hollow given that so much of what they seek is either a matter of public record or undisputed.

First, defendants say that they need discovery in order to understand the history of the reimbursement rate that the Legislature set in 1994. Reply/Opp. at 3.  No one disputes that the Medicaid reimbursement formula adopted by the New York Legislature in 1994 was consistent with that which NYDOH had previously adopted.  The undeniably detailed and thorough discussion on this subject at pages 3-5 in defendants' brief and the exhibits B,C,D,E,F,G,H and I submitted with the Affidavit of Kim B. Nemirow, Esq., in and of themselves  make crystal clear that the public record concerning the establishment of the pre-1994 reimbursement formula is ample and defendants have their history well in hand. Defendants do not and presumably cannot set forth what more they could possibly need to know in order to make whatever arguments they wish concerning the Legislature's adoption of that formula.  Defendants have revealed no need for discovery on the point.[3]

Second, defendants repeatedly claim that discovery of NYDOH is needed because NYDOH sets the State MAC and the State MAC went into place in 2006.  No one disputes that

---

[3]  This is particularly true given that the discovery sought would extend back to 1978.  CMO #33 provides that the relevant time period for discovery at this juncture is 1997-2005, not 1978- 2005 as defendants essentially argue.  Given that the facts defendants seek on this point are either publicly available and/or undisputed, there is simply no basis to impose the burden of producing this discovery –especially back to 1978.

New York State implemented its State MAC in April 2006 and that NYDOH has responsibility for it.  No one disputes that the legislation authorizing the State MAC was passed in 2004.    No one disputes that other states had MAC programs in place prior to April 2006.   No one disputes that the fact of such MAC programs was a matter of public record.  No one disputes that State MACs have been adopted to control Medicaid drug costs.   Defendants can make whatever arguments they wish about New York's 2006 MAC implementation based on these undisputed facts.

Third, defendants say discovery is needed regarding the receipt of AMP and Best Price data by the New York EPIC program since 1991.  No one disputes that the EPIC program has received AMP and Best Price information from the defendant drug manufacturers since 1991.  No one disputes that the NYDOH Commissioner recently has served as a member of the EPIC administrative panel.   And, while movants—or, more accurately, NYDOH-- have not reviewed the EPIC prices in connection with briefing the instant motion, (plaintiffs are prohibited from reviewing such prices in light of the EPIC contract confidentiality provisions described below), movants suspect that such review would reveal substantially lower prices than those defendants reported or caused to be reported to the publishing compendia.   In short, the fact that EPIC has received AMPs and Best Prices and the fact that such prices are lower than defendants' published prices are not in dispute.

Defendants seek the EPIC-related discovery because they want to argue that the fact that the AMPs and Best Prices were received by the State means that the State knew or should have known how false and inflated defendants' reported prices were.  But here is where defendants' argument completely unravels.   Neither AMPS nor Best Prices are AWPs.  Neither AMPs nor

Best Prices shed any light on the AWPs defendants reported or caused to be reported and on which New York Medicaid reimbursement was based.  What defendants reported as their AMP or Best Price for a particular drug in a particular quarter does not tell anyone anything about what that drug's true Average Wholesale Price is or what that drug's true EAC is.   The discovery is therefore irrelevant.  And, even if it were relevant, NYDOH was not at liberty unilaterally to change the New York Medicaid Reimbursement formula based on the AMPs and Best Prices provided to EPIC prices for two reasons.  First, that formula is a creature of state law, not agency discretion. N.Y. Soc. Serv. L. § 367-a(9)(b) .  Second, the terms of the EPIC contract itself *prohibit NYDOH from disclosing* the AMPS and Best Price information provided by the manufacturers.  The EPIC contract provides, in relevant part:

V.    <u>CONFIDENTIALITY PROVISIONS</u>

(a)    **Information disclosed by the Manufacturer in connection with this Agreement is confidential and will not be disclosed, except as required by State and Federal law.**

(b)    The Manufacturer will maintain the confidentiality of EPIC Utilization Information and use such information only for purposes approved by EPIC, as in furtherance of Elder Law, Article  II, Title 3.  If the Manufacturer audits this information or receives additional information on such data, that information shall also be held confidential.  The Manufacturer agrees to abide by applicable State confidentiality statutes, regulations and other properly promulgated policy.

(c)    Notwithstanding the non-renewal or termination of this Agreement for any reason, these confidentiality provisions will remain in full force and effect.

(d)    **The Manufacturer hereby applies to EPIC for an exception to the disclosure of information under Public Officers Law, Article 6 (Freedom of Information) concerning information supplied by the Manufacturer for the determination of rebate amounts under this Agreement.**  The exceptions applied for are Public Officers Law Sections 87.2(c) and (d).  **The information if disclosed by EPIC would impair**

**contract awards and cause substantial injury to the competitive position of the Manufacturer.**

(e) **Both parties hereto shall inform and train, if necessary, its respective employees, agents, advisors, consultants and officials regarding the confidential nature of such data and shall cause such persons (including any board or committee) to keep such data and information confidential.**

In sum, defendants cannot justify the burden their requests would impose on the NYDOH and its current and former employees in light of the foregoing facts and confidentiality provisions. If defendants want to argue that NYDOH should have alerted the New York Legislature that the AMPs and Best Prices received by EPIC were below defendants' published prices, and that the New York Legislature should have changed its formula in response, they can do that without a stitch of discovery. There is no cause to burden the state agencies and their current and former employees where the particular underlying facts sought by the discovery demand are already known or not in dispute[4].

Next defendants say they need discovery to determine whether NYDOH communicated to CMS about FULs and what additional cost-savings programs for generic drugs New York might have contemplated. Reply/Opp. at 11.  But defendants' own brief and the Nemirow affidavit reveal that defendants already know that NYDOH did engage in such communications with CMS. *Id.* and Nemirow Exh. M.  Defendants also know that the New York Legislature, in 1994, adopted a reimbursement formula that provided that where a FUL was in place, drugs would be reimbursed based on that FUL. N.Y. Soc. Serv. L. § 367-a(9)(b)   And defendants

---

[4] If there are specific facts or inferences defendants want plaintiffs to stipulate to, defendants should identify those and plaintiffs are pleased to consider them.  Certainly this is a much more efficient approach than permitting the sort of widescale discovery defendants seek.

know that New York did not put a State MAC in place until 2006.  Once again the public record tells defendants all they need to know to make their defensive arguments.

Last, defendants argue they need discovery to authenticate documents. Reply/Opp. at 8, 16 *e.g.*  Authentication alone is no justification for the discovery sought.  Authentication may be readily resolved by way of a stipulation.

## II.  Other  Documents Sought Are Irrelevant And/Or Privileged

Defendants also say they are entitled to the wide array of noticed DOH topics because "it is impossible to believe that the executive agency charged with administering the New York Medicaid Program sits on the sideline while the Legislature sets the Medicaid reimbursement rate without its input".   Reply/Opp. at 9.  Movants agree that such would be impossible to believe.  But the fact that the New York Legislature may have received input from NYDOH or other public agencies charged with government operation does not mean that such input is relevant or discoverable.

Defendants agree with this seemingly obvious proposition and have themselves argued in this very Court that the sort of widespread discovery of state agencies they now seek is not relevant when the reimbursement formula is set by the Legislature.  Movants' Brief at 2-3, 4-6 discussing the *Pharmacia* case, and Exhibit E thereto (Transcript of Motion Hearing before Magistrate Judge Marianne B. Bowler, September 19, 2006 at 28-29).

Notwithstanding their previously admissions in this regard, Defendants now take great pains to distance themselves from the *Pharmacia* case they previously embraced.   Their efforts to distinguish *Pharmacia—*and to reject their former arguments concerning it--- are unavailing.  This flip-flop may result from the fact that defendants fail to grasp plaintiffs' articulated causes

of action.  For example, defendants write that "in contrast" to plaintiffs' case, the *Pharmacia* case included a cause of action under GBL §349. Reply/Opp. at 13.  However, there is no "contrast" here.  Plaintiffs' have twice survived motions to dismiss their GBL §349 claim. *See In re Pharm. Indust. Average Wholesale Price Litig.*, 2007 WL 1051642, at *9 (D. Mass. April 2, 2007); *In re Pharm. Indust. Average Wholesale Price Litig.*, 339 F. Supp. 2d 165, 182-3 (D. Mass. 2004).  Defendants then argue that plaintiffs must show reliance for their N.Y. Soc. Serv. L. §145-b claim, unlike the Executive Law claim in the *Pharmacia* case. Reply/Opp. at 13 Again, defendants are mistaken; Social Services Law §145-b does not require reliance[5]; it requires only the submission of a false statement- just like Executive Law §63(12), the cause of action articulated in *Pharmacia*.

Defendants also argue that their statements regarding *Pharmacia* in the Nevada AWP action pending in this Court were not factual positions of the kind required for judicial estoppel

---

[5] N.Y. Soc. Serv. L. § 145-b provides:

1. (a) It shall be unlawful for any person, firm or corporation knowingly by means of a false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished pursuant to this chapter.

(b) For purposes of this section, "statement or representation" includes, but is not limited to: a claim for payment made to the state, a political subdivision of the state, or an entity performing services under contract to the state or a political subdivision of the state; an acknowledgment, certification, claim, ratification or report of data which serves as the basis for a claim or a rate of payment, financial information whether in a cost report or otherwise, health care services available or rendered, and the qualifications of a person that is or has rendered health care services.

(c) For purposes of this section, a person, firm or corporation has attempted to obtain or has obtained public funds when any portion of the funds from which payment was attempted or obtained are public funds, or any public funds are used to reimburse or make prospective payment to an entity from which payment was attempted or obtained.

to apply.  Reply/Opp at 15.  This argument goes directly contrary to the intent of the doctrine of judicial estoppel.  "Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits."  *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2nd Cir. 2000).  "By focusing on the rationales behind judicial estoppel, the elements of the doctrine become clear. First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner."  *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 (2nd Cir. 1993).  That is precisely what has occurred here. Defendants argued a position inconsistent with what they advance now when they were before this Court on a motion to compel discovery of the Nevada state agencies. *See* Movants' Brief at 2-3, 4-6.  This Court adopted that position when it ruled in defendants' favor on that Nevada motion. *See* Transcript of Motion Hearing before Magistrate Judge Marianne B. Bowler, September 19, 2006. Defendants cannot now adopt a completely contradictory view on the propriety of the *Pharmacia* ruling because doing so suits their immediate interest. This is precisely the sort of "fast and loose" play that judicial estoppel is designed to prevent.

Defendants rely on *In re Worldcom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004).  However, the *Worldcom* court determined that judicial estoppel did not apply because the defendants' statements were not inconsistent, unlike here.  *See In re Worldcom*, 308 F. Supp. 2d at 248 ("it is entirely consistent to argue on the one hand that any litigation concerning WorldCom securities claims should be pursued in a single venue, and on the other hand, to assert that the Ten Actions are preempted by federal law and should be dismissed.").

10

Defendants' reliance on *Wight* is similarly unavailing.  In *Wight*, the court declined to rule on whether the positions were inconsistent, concluding that because "the allegedly inconsistent position … was not 'adopted by the court in some manner' judicial estoppel cannot apply to this case." *Wight*, 219 F.3d at 91 (2nd Cir. 2000) (*internal citations omitted*).[6] Again, the case is inapposite.  This Court adopted defendants' view of *Pharmacia* when it ruled in defendants' favor on that Nevada motion to compel.

Defendants themselves admit that the goal of the doctrine is to protect the integrity of the judicial process through avoidance of inconsistent judicial determinations.  Reply/Opp. at 14. Yet, they nevertheless would ask this Court to change its determination about whether *Pharmacia* was properly decided.  For the reasons set forth above, Defendants are estopped from making this argument.

In sum, there is no avoiding the relevance of the *Pharmacia* holding to the instant case. Both *Pharmacia* and the instant case concern, at bottom, defendants' submission of false and inflated prices—prices that are untethered from actual prices.  Both concern defendants' manipulation of the New York Medicaid program.  Both concern the fact that the New York Legislature defined EAC as AWP -_% and defendants' submission of false data prevented New York Medicaid from carrying out its federal charge to reimburse at EAC.

Defendants' argument also ignores the very important concerns addressed by the deliberative process privilege.  The deliberative process privilege was designed to protect

---

[6] Furthermore, the plaintiffs in *Wight* invoked the doctrine of judicial estoppel in an attempt to prevent defendants from addressing plaintiffs' standing.  The court determined that "a lack of subject matter judisdiction may be raised at any time … [and] arguments for or against standing may not be waived.  …  [I]rrespective of how the parties conduct their case, the courts

precisely these sorts of inter-agency or inter-branch policy discussions.  The privilege protects inter-agency and inter-branch "documents reflecting advisory opinions, recommendations and deliberations comprising the process by which governmental decisions and policies are formulated."  *Nat'l R.R Passenger Corp.*, 2008 WL 4377721 at * 2 (N.D.N.Y. Dec. 12, 2007); *quoting Tigue v. United States Dep't. of Justice*, 312 F.3d 70, 76 (2d Cir. 2002). Here, defendants request documents intended to assist the legislature in making Medicaid reimbursement policy decisions and establishing an effective Medicaid program.  For example, defendants seek:

> All documents concerning the implementation of any New York statutes, rules or regulations concerning reimbursement under the Medicaid or EPIC programs for prescription drugs and dual-channel drugs, including but not limited to, all comments on proposed or final regulations, all drafts of proposed or final regulations, and all memoranda, correspondence, analysis or other documents concerning implementation.

*See* Exhibit A to Movants' Brief (December 7, 2007 Subpoena to New York State Department of Health, Schedule B, at 3, ¶20)

Such documents, which indisputably reflect the Legislature's decision-making process, are absolutely protected by the privilege.  Defendants' own authorities make this plain.  The 9th Circuit opinion on which defendants reply explains that opinions or recommendations regarding facts that are part of the deliberative process are protected by the privilege.  *See Nat'l Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1120 (9th Cir. 1988).   While defendants' are correct that the deliberative process privilege is applied at the discretion of the court, such discretion is exercised after weighing the governments' interest in maintaining the confidentiality of the documents at issue versus the public's interest in disclosure of such documents.  *See*

---

have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits."  *Wight*, 219 F.3d at 90.

Reply/Opp. at 9, n. 4; *see Children First Foundation v. Martinez*, Civ. No. 1:04-CV-0927 2007 WL 4344915 at *6 (N.D.N.Y. Dec. 10, 2007)(the documents were not protected by the deliberative process privilege because the government's decision-making process was the subject of the litigation); *In re Grand Jury Subpoena dated August 9, 2000*, 218 F.Supp.2d 544, 553 (S.D.N.Y. 2002)(when "government malfeasance" is at issue, the privilege may be denied).

Here, the government's decision-making process—or any alleged government malfeasance-- are not issues in the case, and manifestly are not the subject of the litigation. As stated earlier, the public record concerning the establishment of the pre-1994 reimbursement formula is ample and defendants have demonstrated their familiarity with it. As much as defendants want to distract the court, the dispute in this litigation concerns defendants' inflated and false prices that they reported knowing that they would serve as the basis for Medicaid reimbursement.

Defendants also overstate NYDOH's involvement in Medicaid reimbursement rate or fee setting. For example, defendants say that "federal law requires NYDOH to justify as 'reasonable' any change that New York might wish to make to the reimbursement rate or dispensing fee paid to Medicaid providers." Reply/Opp.at 10. Defendants cite 42 C.F.R. §447.512-518 (2008) in support of this statement. But neither the regulation cited (which is a 2008 regulation in any event, postdating any information possibly sought by the Subpoenas), nor its predecessors nor any other regulation provides anything of the sort. Rather, 42 C.F.R. §447.512-518 and its predecessors provide that NYDOH must make a finding that its Medicaid drug reimbursements do not exceed EAC plus reasonable dispensing fees. The gravamen of this

case, ironically, is that defendants' submission of false prices prevents New York Medicaid from fulfilling its federal and state mandate to reimburse at EAC.

In light of the foregoing, movants are unable to attribute to defendants a rational basis for their continued demands for the subpoenaed documents. As discussed in detail above, defendants' motion to compel these documents is fatally defective for multiple reasons and should be denied.

## CONCLUSION

For all the foregoing reasons, movants again respectfully request (a) that Defendants'
motion to compel be denied and (b) defendants' subpoenas to State DOH and its current and
former employees be quashed in their entirety.

Dated: April 4, 2008                                    Respectfully Submitted:

                                                    ___/s/  Soshanah V. Asnis_____
                                                    Shoshanah V. Asnis, Esq. *(pro hac pending)*
                                                    New York State Office of the Attorney
                                                    General
                                                    Assistant Attorney General
                                                    Litigation Bureau
                                                    The Capitol
                                                    Albany, New York 12224
                                                    (518) 402-4579

                                                    ___/s/  Gregor N. Macmillan_____
                                                    Gregor N. Macmillan, Esq. *(pro hac pending)*
                                                    Director, Bureau of Health Insurance Programs
                                                    New York State Department of Health
                                                    Corning Tower,
                                                    The Governor Nelson A. Rockefeller
                                                    Empire State Plaza
                                                    Albany, New York 12237
                                                    (518) 408-1495

                                                    **City of New York and all captioned Counties
                                                    except Nassau and Orange, by**

                                                    **KIRBY McINERNEY, LLP**
                                                    830 Third Avenue
                                                    New York, New York 10022
                                                    (212) 371-6600

                                                    /s/ Joanne M. Cicala_____
                                                    By:  Joanne M. Cicala (JC 5032)
                                                       James P. Carroll Jr. (JPC 8348)
                                                       Aaron D. Hovan (AH 3290)

<u>CERTIFICATE OF SERVICE</u>

      The undersigned, an attorney, hereby certifies that on the 4th day of April, 2008 she caused a true and correct copy of the Reply Memorandum of Law in Further Support of Movants' Cross Motion to Quash All Subpoenas Issued by Defendants to the New York State Department of Health and/or Its Current and Former Employees to be delivered to counsel of record for defendants by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456. The response was posted to Lexis Nexis File and Serve's Electronic Service System.

<u>/s/ Joanne M. Cicala</u>
Joanne M. Cicala, Esq.
Kirby McInerney, LLP
830 Third Avenue, 10th Floor
New York, NY 10022
(212) 371-6600