# EXHIBIT E

30(b)(6) Fishman Deposition
3/12/08

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

IN RE:   PHARMACEUTICAL             )
INDUSTRY AVERAGE WHOLESALE          )
PRICE LITIGATION                    )   MDL No. 1456
------------------------------)         Civil Action
This document relates to:           )   No. 01-12257-PBS
United States of America,           )
ex. rel. Ven-a-Care of the          )
Florida Keys, Inc.,                 )   Hon. Patti Saris
   vs.                              )
Abbott Laboratories, Inc.,          )   Magistrate Judge
CIVIL ACTION NO. 06-11337-PBS       )   Marianne Bowler


         Videotaped 30(b)(6) deposition of DAVID S.
FISHMAN, called by the Plaintiffs for examination,
taken pursuant to notice, agreement and by the
provisions of the Rules of Civil Procedure for the
United States District Courts pertaining to the
taking of depositions, taken before DEBORAH HABIAN, a
Notary Public within and for the County of Cook,
State of Illinois, and a Certified Shorthand Reporter

**Page 2**

1  of said State, at the offices of JonesDay, 77 West
2  Wacker Drive, 35th Floor, Chicago, Illinois, on the
3  12th day of March, 2008, at 8:34 a.m.
4
5  APPEARANCES:
6
7     U.S. DEPARTMENT OF JUSTICE
8     COMMERCIAL LITIGATION, FRAUD
9     BY: ANN ST. PETER-GRIFFITH, ESQ.
10    99 N.E. 4th Street
11    Miami, Florida  33132
12    (305) 961-9001
13       on behalf of the United States;
14
15    ANDERSON, LLC
16    BY: C. JARRETT ANDERSON, ESQ.
17    208 West 14th Street, Suite 3-B
18    Austin, Texas  78701
19    (512) 469-4549
20       on behalf of the Relator, Ven-a-Care;
21
22

**Page 3**

1  APPEARANCES (continued):
2
3     JONES DAY
4     BY: TONI-ANN CITERA, ESQ.
5     77 West Wacker Drive
6     Chicago, Illinois  60601-1692
7     (312) 782-3939
8        on behalf of the Defendants.
9
10 ALSO PRESENT:
11    STEPHAN HOOG, VIDEOGRAPHER
12    HENDERSON LEGAL SERVICES
13
14
15
16
17
18
19
20
21
22

**Page 4**

1  INDEX OF EXAMINATIONS
2
3  WITNESS:                 DX  CX  RDX  RCX
4  DAVID S. FISHMAN
5  EXAMINATION BY:
6  ANN ST. PETER-GRIFFITH, ESQ.    06
7
8  INDEX OF EXHIBITS              PAGE
9  Exhibit Fishman 001, Sub 1 through Sub 40
10     ABT-DOJ 0394762 through 0395345     21
11 Exhibit Fishman 002, ABT-DOJ 0302503
12     Abbott Lab Ethics & Compliance Policy  147
13 Exhibit Fishman 003, Notice of Deposition   176
14 Exhibit Fishman 004, TXABT 49911
15     Proposal Analysis                 260
16 Exhibit Fishman 005, TXABT 38152
17     Proposal Analysis                 260
18 Exhibit Fishman 006, TXABT 38152
19     Injectable Comparison             269
20 Exhibit Fishman 007, ABT-DOJ 0233906
21     Catalog Price Adjustment          351
22

**Page 5**

1       THE VIDEOGRAPHER: This is Stephan Hoog of
2  Legal Video Services, Inc., 205 West Randolph Street,
3  Chicago, Illinois. I'm the operator of this camera.
4  We're on record March 12th, 2008. The time is 8:34,
5  as indicated on video screen.
6       This is the videotaped deposition of
7  David Fishman being taken on behalf of Federal Rules
8  of Civil Procedure on behalf of the Plaintiff. We are
9  at 77 West Wacker Drive, Chicago, Illinois. This case
10 is captioned In Re: Pharmaceutical Industry Inc. AWP,
11 Case No. 01-12257-PBS.
12      Will the attorneys please identify
13 themselves for the video record?
14      MS. ST. PETER-GRIFFITH: Ann St. Peter-Griffith
15 from the United States Attorney's Office, Southern
16 District of Florida on behalf of the United States.
17      MR. ANDERSON: Jarrett Anderson, counsel for
18 the lawyer.
19      MS. CITERA Toni Citera, counsel for the
20 witness and for the Defendant from JonesDay.
21      THE VIDEOGRAPHER: The court reporter today is
22 Debbie Habian. Would you please swear in the witness?

30(b)(6) Abbott (Fishman, David S.)                              March 12, 2008

### Page 258

1  opinion about a conclusion.
2      MS. ST. PETER-GRIFFITH: Sir --
3      THE WITNESS: A conclusion about --
4      MS. ST. PETER-GRIFFITH: Sir, unless she
5  instructs you not to answer, you need to answer the
6  question.
7      MS. CITERA: No, that's his answer, he's not
8  prepared to testify about that.
9
10 BY MS. ST. PETER-GRIFFITH:
11     Q. Why aren't you prepared to testify about
12 that?
13     A. Because you're asking for a conclusion.
14     Q. Sir, what's the answer to the question?
15     MS. CITERA: No.
16     THE WITNESS: I'm not prepared to testify to
17 that.
18 BY MS. ST. PETER-GRIFFITH::
19     Q. If Abbott provided in response to requests
20 for proposal information concerning AWPs and spreads,
21 would that violate the so-called practice that you
22 described earlier?

### Page 259

1      MS. CITERA: Same objections, also
2  hypothetical.
3      THE WITNESS: It's hypothetical. Depending on
4  who -- who did it, and you're seeking a -- you're
5  seeking a conclusion based on a set of facts under
6  legal analysis of the code.
7
8  BY MS. ST. PETER-GRIFFITH:
9      Q. Sir, do you know what a proposal analysis
10 is?
11     A. A proposal analysis?
12     Q. Um-hum.
13     A. I know what the words mean.
14     Q. Okay, but within Abbott HPD, do you know
15 what a proposal analysis is?
16     MS. CITERA: Objection, outside the scope.
17     THE WITNESS: Specifically, no.
18     MR. ANDERSON: Don't you want to keep the top
19 one.
20     MS. ST. PETER-GRIFFITH: Would you mark this as
21 the next exhibit?
22     THE REPORTER: Sure. It's 4.

### Page 260

1      MS. ST. PETER-GRIFFITH: And this.
2      THE REPORTER: A different one?
3      MS. ST. PETER-GRIFFITH: Um-hum.
4          (Exhibit Fishman 004 and
5          Exhibit Fishman 005
6          was marked for ID)
7      THE REPORTER: Here you go.
8      THE WITNESS: Which one do you want me to look
9  at?
10
11 BY MS. ST. PETER-GRIFFITH:
12     Q. Why don't we start with the one that says
13 "160" at the bottom?
14     A. Where would it say "160" at the bottom?
15     MS. CITERA: Here.
16     MS. ST. PETER-GRIFFITH: Where it says --
17     MS. CITERA: This one (indicating). This one
18 (indicating).
19     THE WITNESS: Oh. Oh, okay.
20     MR. ANDERSON: Ann, why don't you state for
21 the record what it's marked now and what it's
22 previously been marked? Because we have testimony

### Page 261

1  from other witnesses about the prior exhibit number.
2
3  BY MS. ST. PETER-GRIFFITH:
4      Q. Sir, I'm showing you -- this has been
5  marked as Exhibit 4?
6      A. 5.
7      Q. 5 in your deposition. It was previously
8  marked in the Beck deposition as Deposition Exhibit
9  160. Do you see that at the bottom?
10     A. I do.
11     Q. Sir, this is a proposal analysis wherein
12 Abbott provides -- wherein Abbott provided -- and if
13 you could flip to the page down at the bottom where it
14 says "38355"?
15     A. 38355?
16     Q. It's probably three quarters of the way
17 through the pack.
18     A. Yes, I've got it. 38355, yes, I have that
19 page.
20     Q. If you could look at the chart on the -- .
21 at the end, the last two columns where it says,
22 "Competitive AWP" and "Abbott AWP." Do you see that?

**262**

1  A. I do.
2  Q. Okay, that's a comparison of AWPs, okay?
3  A. Okay.
4  MS. CITERA: Objection to the commentary.
5  BY MS. ST. PETER-GRIFFITH:
6  Q. We have heard -- well, I'm just trying to
7  educate the witness on the testimony that we've
8  received on this.
9  MR. ANDERSON: Ask him, ask him.
10
11 BY MS. ST. PETER-GRIFFITH::
12 Q. Sir, do you understand what the two
13 columns reflect?
14 A. I understand --
15 MS. CITERA: Objection to form.
16 THE WITNESS: I -- based on the label of the
17 column on the top right, "Abbott AWP," I would assume
18 that those are Abbott's AWP prices.
19        "Abbott's AWP -- Competitive AWP," I
20 wouldn't know whose that was.
21
22 BY MS. ST. PETER-GRIFFITH:

**263**

1  Q. Sir, we have received testimony in this
2  case that this is a Olsten Kimberly Quality Care
3  proposal analyses, meaning this was prepared by Abbott
4  and presented to Olsten Kimberly in the context of
5  preparing for negotiations on a contract.
6  A. Okay.
7  Q. Does the provision of this information
8  concerning competitive AWPs and Abbott AWPs violate
9  the practice that you described before?
10 MS. CITERA: Objection to the form, outside the
11 scope.
12 MS. ST. PETER-GRIFFITH: It's not outside the
13 scope.
14 MS. CITERA: Again, to the extent you're asking
15 what violates and what's legal or illegal, proper and
16 improper, it's outside the scope.
17 THE WITNESS: I can state what the practice
18 was, which was not to provide AWP information to
19 customers.
20
21 BY MS. ST. PETER-GRIFFITH:
22 Q. Okay, well, this -- if this was provided

**264**

1  to an Abbott customer, would this violate the
2  practice?
3  MS. CITERA: Objection to the form, outside the
4  scope.
5  THE WITNESS: I don't know what the
6  circumstances were.
7  BY MS. ST. PETER-GRIFFITH:
8  Q. Did you do anything to investigate what
9  the circumstances were?
10 A. Until you showed me this document two
11 minutes ago, I wasn't aware of its existence.
12 Q. Okay, would it violate the practice?
13 MS. CITERA: Objection to the form, outside the
14 scope.
15 THE WITNESS: I could state what the practice
16 is and the practice was, which was not to provide AWP
17 information to customers.
18
19 BY MS. ST. PETER-GRIFFITH:
20 Q. So if this AWP information was provided to
21 customers, it would contravene that practice, right?
22 MS. CITERA: Objection to form, outside the

**265**

1  scope.
2  THE WITNESS: Again, you're -- there's no other
3  facts in evidence. I don't know the circumstances of
4  how this was prepared and who prepared it and why they
5  prepared it.
6
7  BY MS. ST. PETER-GRIFFITH:
8  Q. Okay, if the testimony is that that was
9  prepared and presented to a customer --
10 A. Okay.
11 Q. -- would that violate the practice, sir?
12 MS. CITERA: Objection to the form, outside the
13 scope.
14 THE WITNESS: You're asking for a conclusion
15 of that violation.
16
17 BY MS. ST. PETER-GRIFFITH:
18 Q. No, I'm asking about -- you've testified
19 at length that Abbott had this practice. I want to
20 know whether or not the provision of this information
21 to a customer violates that practice?
22 MS. CITERA: Objection to the form, outside the

**266**

1  scope.
2     THE WITNESS: I think I -- same answer.
3
4  BY MS. ST. PETER-GRIFFITH:
5     Q. Is that a "yes"?
6     A. About -- no, violation is -- you're asking
7  for a con -- a legal conclusion.
8     Q. I'm not asking for a legal conclusion.
9  I'm asking -- I mean it's -- well, let me ask you
10 this. What is the predicate for Abbott's practice?
11    MS. CITERA: Objection to the form.
12    THE WITNESS: It's the manner in which they
13 decided how to do business.
14
15 BY MS. ST. PETER-GRIFFITH:
16    Q. Okay, so it's an Abbott business decision?
17    A. To not pro -- business practice not to
18 provide AWP.
19    Q. Okay. Did this -- did this partic -- did
20 the provision of this information violate that Abbott
21 business practice?
22    MS. CITERA: Objection to the form, outside the

**267**

1  scope.
2     THE WITNESS: I'm having a problem with the
3  word "violate."
4
5  BY MS. ST. PETER-GRIFFITH:
6     Q. Was it consistent with Abbott's business
7  practice to provide this information to a customer?
8     A. On its face --
9     MS. CITERA: Objection to form.
10    THE WITNESS: -- I -- I'd say it's not
11 consistent.
12
13 BY MS. ST. PETER-GRIFFITH:
14    Q. The next one, I'm sorry, has at the bottom
15 493. Sir, I'm going to represent to you that
16 Exhibit 6 --
17    A. I'm sorry, which page?
18    Q. Oh, I'm sorry, just start at -- sorry, I
19 haven't flipped to a page yet.
20    A. Oh, okay.
21    MR. ANDERSON: What exhibit number is it?
22    THE WITNESS: 493, witness Kipperman 397.

**268**

1     MS. ST. PETER-GRIFFITH: Yeah, I was going to
2  say that. This is -- sir, I'm representing to you
3  that Exhibit 6 in your deposition --
4     MS. CITERA: Exhibit 4.
5     MS. ST. PETER-GRIFFITH: Oh, I'm sorry.
6     THE WITNESS: Exhibit 4.
7
8  BY MS. ST. PETER-GRIFFITH:
9     Q. (Continuing) -- Exhibit 4 in your
10 deposition is the -- was previously marked as an
11 exhibit in the Kipperman deposition as 493. And you
12 see the exhibit sticker at the bottom?
13    A. I do.
14    Q. Sir, if you could look over to the
15 columns, and just before the black line --
16    A. Yes.
17    Q. -- there's information that says, "AWP
18 from Red Book June '96"?
19    A. Yes.
20    Q. Would the provision of this information to
21 a customer -- in this case, it's Chartwell -- be
22 consistent with Abbott's practice prohibiting the

**269**

1  provision of AWP or spread information to Abbott
2  clients?
3     MS. CITERA: Objection to the form, outside the
4  scope.
5     THE WITNESS: On its face, this -- knowing no
6  other information, this would not be inconsistent.
7     MS. ST. PETER-GRIFFITH: If you could mark this
8  as Exhibit 6, please.
9           Exhibit Fishman 006 was
10          marked for ID)
11
12 BY MS. ST. PETER-GRIFFITH::
13    Q. Sir, Exhibit 6 was previously marked as
14 Exhibit 364 to the Mike Sellers deposition. Do you
15 see that?
16    A. I do.
17    Q. And I'll represent to you that this is a
18 proposal analyses prepared for Chartwell Home
19 Therapies. And do you see on the first page where it
20 says "Exhibit F," there is a column that's a double
21 column entitled "AWP Spread"? Do you see that?
22    A. I do see that.

## Page 270

1  Q. Would the provision of this AWP spread
2  information to Abbott's client --
3  A. Customer.
4  Q. -- or customer, Chartwell, be consistent
5  with the practice that Abbott had from '91 through
6  2001 prohibiting the provision of AWP or spread
7  information to customers?
8  MS. CITERA: Objection to the form, outside the
9  scope.
10  THE WITNESS: Assuming -- assuming those facts
11  and knowing no others, it would not be consistent.
12
13  BY MS. ST. PETER-GRIFFITH:
14  Q. Did Mr. Sellers happen to tell you about
15  this --
16  A. This one?
17  Q. -- proposal analyses?
18  A. No, he did not.
19  Q. Okay. Sir, did Abbott ever take any
20  disciplinary action against anyone for violating the
21  practice against providing AWP or spread information
22  to customers?

## Page 271

1  A. I don't know.
2  MS. CITERA: Objection to form, outside the
3  scope.
4  THE WITNESS: Sorry.
5  BY MS. ST. PETER-GRIFFITH:
6  Q. What -- do you want to take a break?
7  A. Can we take a break? Yeah.
8  Q. Sure, that's fine.
9  A. I waited about as long as I could.
10  THE VIDEOGRAPHER: Going off the record at
11  2:34 p.m.
12       (Recess taken.)
13  THE VIDEOGRAPHER: Beginning Videotape No. 5 in
14  the deposition of Mr. Fishman. We're back on the
15  record at 2:53 p.m.
16
17  BY MS. ST. PETER-GRIFFITH:
18  Q. Mr. Fishman --
19  A. Yes.
20  Q. -- we -- before the break, we looked at
21  some documents, and I want to ask you whether
22  anyone -- whether you've ever had an opportunity to

## Page 272

1  learn information or research information concerning
2  computer information including AWP information
3  provided by Abbott HPD or specifically Alt Site and
4  Home Infusion to Abbott customers?
5  A. I don't --
6  MS. CITERA: Ever or in preparation for this
7  deposition?
8  MS. ST. PETER-GRIFFITH: Well --
9  MR. ANDERSON: Both.
10  MS. ST. PETER-GRIFFITH: I mean both, yeah.
11  THE WITNESS: All right, the answer would be --
12  MS. CITERA: Objection to form.
13  THE WITNESS: Okay, the answer would be the
14  same for both. I'm not aware of any computer --
15  computerized information regarding this subject
16  matter.
17
18  BY MS. ST. PETER-GRIFFITH:
19  Q. Are you familiar with the CHIP system?
20  A. No.
21  Q. If Abbott had a proprietary computer
22  program called the CHIP system --

## Page 273

1  A. Okay.
2  Q. -- that Abbott customers could license
3  that provided to Abbott customers, among other
4  information, AWP information, would that violate or
5  would that be consistent with the practice at Abbott
6  concerning the non-provision of AWP and spread
7  information to customers?
8  MS. CITERA: Objection to the form, outside the
9  scope.
10  THE WITNESS: I -- it seems to me there's more
11  facts I need regarding how this computer -- how this
12  software program worked. Was the information loaded
13  onto the software program?
14
15  BY MS. ST. PETER-GRIFFITH:
16  Q. Loaded on by who?
17  A. I don't know. I don't under -- I don't
18  understand the nature of this software program.
19  Q. Okay, Abbott licensed the software program
20  to its customers, and based -- and on the software
21  program or from the software program, Abbott's
22  customers could obtain AWP information concerning

30(b)(6) Fishman Deposition
3/20/08

362

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

----------------------------------x

In re:  PHARMACEUTICAL INDUSTRY    )   MDL DOCKET NO.
                                   )
AVERAGE WHOLESALE PRICE            )   CIVIL ACTION
                                   )
LITIGATION.                        )   01CV12257-PBS
---------------------------------- x

VOLUME II

The videotaped 30(b)(6) deposition of ABBOTT (DAVID FISHMAN), called by the United States for examination, taken pursuant to subpoena and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Rachel F. Gard, Certified Shorthand Reporter, at 77 West Wacker Drive, Suite 3500, Chicago, Illinois, commencing at 8:35 a.m. on the 20th day of March, A.D., 2008.

363

1  APPEARANCES:
2
3     U.S. DEPARTMENT OF JUSTICE
4     CIVIL DIVISION
5     MS. ANN ST. PETER-GRIFFITH
6     99 N.E. 4th Street
7     Miami, Florida 33132
8     Phone: (305) 961-9003
9     Email: ann.st.peter-griffith@usdoj.gov
10       On behalf of the United States;
11
12    ANDERSON, LLC
13    MR. C. JARRETT ANDERSON
14    208 West 14th Street
15    Suite 3-B
16    Austin, Texas 78701
17    Phone: (512) 469-9191
18    Email: jarrett@anderson-llc.com
19       On behalf of the Relator Ven-A-Care of the
20       Florida Keys, Inc.;
21
22

364

1     JONES DAY
2     MS. TONI-ANN CITERA
3     222 East 41st Street
4     New York, New York 10017
5     Phone: (212) 326-3939
6     Email: tcitera@jonesday.com
7        On behalf of Abbott Laboratories and the
8        deponent.
9
10
11    ALSO PRESENT: Stephan Hoog
12        (Legal Visual Services)
13
14
15            * * * * * *
16
17
18
19
20
21
22

365

1              I N D E X
2   WITNESS                              PAGE
3   DAVID FISHMAN
4      Examination by Ms. St. Peter-Griffith   370
5      Examination by Mr. Anderson           676
6
7              E X H I B I T S
8   FISHMAN EXHIBIT                      PAGE
9   Exhibit Fishman 008 ABT-DOJ 0395435 - ABT-DOJ
10                     0395586         370
11  Exhibit Fishman 009 Additional Abbott-produced
12                     compliance documents with
13                     no Bates numbers   372
14  Exhibit Fishman 010 ABT-DOJ 0397104 - ABT-DOJ
15                     0397214 and ABT-DOJ
16                     0398240 - ABT-DOJ 0398285  374
17  Exhibit Fishman 011 Letter to Abbott from the
18                     United States Department
19                     of Justice dated September
20                     30, 1999         444
21  Exhibit Fishman 012 AR 00887 - AR 01013    487
22  Exhibit Fishman 013 ABT-DOJ 316016         552

366

1              E X H I B I T S
2   FISHMAN EXHIBIT                      PAGE
3   Exhibit Fishman 014 ABT-DOJ 351271 - ABT-DOJ
4                      351270         570
5   Exhibit Fishman 015 ABT-DOJ 335485 - ABT-DOJ
6                      335487         585
7   Exhibit Fishman 016 ABT-DOJ 307075         595
8   Exhibit Fishman 017 Document retained by
9                      Ms. Citera based on
10                     privilege       599
11  Exhibit Fishman 018 ABT-DOJ 340984 - ABT-DOJ
12                     340985         601
13  Exhibit Fishman 019 ABT-DOJ 340986 - ABT-DOJ
14                     340987         606
15
16              CERTIFIED QUESTION
17  QUESTION                             PAGE
18
19    Q. Okay. Outside of the kind
20       of big-sky picture that Abbott
21       complies with laws, does
22       Abbott have a position on

**Page 379**

1  with the type of information that is contained in
2  many of the -- or if not most of the presentations
3  that have already been produced.
4       Q.  Was there anything -- is there anything
5  unique about fraud and abuse compliance with regard
6  to Home Infusion given their slightly different
7  business model than, say, the rest of Abbott or
8  HPD?
9       A.  No, we --
10      MS. CITERA:  Objection to form.
11  BY THE WITNESS:
12      A.  We gave fraud and abuse presentations to
13  many of the businesses, including Home Infusion.
14      Q.  Okay.  But my question is, are there --
15  given Home Infusion's business model, were there
16  additional fraud and abuse issues that perhaps
17  touched upon them that might not be applicable for,
18  you know, HBS's DRG reimbursement model or even Alt
19  Site's?
20      A.  They would be --
21      MS. CITERA:  Objection to form.
22      THE WITNESS:  Sorry.

**Page 380**

1  BY MS. ST. PETER-GRIFFITH:
2       Q.  Go ahead.
3       A.  They would be -- they would be -- Their
4  business model and activities would be subject to
5  the same compliance regulations and rules and laws
6  that all the other businesses would be subject to.
7       Q.  Would the fact that Abbott's Home
8  Infusion business unit actually submitted claims,
9  either on behalf of Abbott's pharmacies or on
10  behalf of customers or consignment partners, would
11  that fact necessitate a need to look at additional
12  compliance measures?
13      MS. CITERA:  Objection to the form.
14  BY THE WITNESS:
15      A.  As I stated last time, I was not and am
16  not aware that Abbott submitted reimbursement
17  claims in its own name for itself.  I'm aware that
18  as part of the services it provided to certain Home
19  Infusion customers, it would have -- it would have
20  done billing.  It would have compiled billing
21  information and submitted it on behalf of
22  customers.

**Page 381**

1       Q.  In your sort of additional research for
2  today's deposition, nobody told you that Abbott's
3  reimbursement department submitted claims on behalf
4  of Abbott's pharmacies?
5       A.  No.
6       Q.  Did anyone tell you that Abbott's
7  pharmacies -- well, actually Abbott itself had a
8  provider number with -- or provider numbers with
9  Medicaid and Medicare for purposes of submitting
10  claims on behalf of its pharmacies?
11      MS. CITERA:  Objection to the form, outside
12  the scope.
13  BY THE WITNESS:
14      A.  I'm not aware of that.
15      Q.  Do you think if Abbott -- or is it
16  Abbott's position if it did submit claims to
17  Medicaid and Medicare on its own behalf, that that
18  would create a situation where they would need to
19  have heightened scrutiny on Medicaid and Medicare
20  fraud and abuse?
21      MS. CITERA:  Objection to the form, outside
22  the scope.

**Page 382**

1  BY THE WITNESS:
2       A.  To the extent they filed claims for --
3  under its own provider number and in its own name,
4  they would have to comply with the regulations in
5  the -- to the same extent they would comply with
6  regulations as a service provider or product
7  provider.
8       Q.  For their consignment partners?
9       A.  For their consignment partners or any of
10  their businesses, quite frankly.
11      Q.  Okay.  Did you discuss anything else with
12  Mr. Taylor?
13      A.  I did not.
14      Q.  What about Mr. Matea?
15      A.  With Mr. Matea, I had a phone
16  conversation that was less than five minutes.  And
17  he confirmed my testimony the first -- on last
18  Wednesday.  I speculated or assumed that in the
19  composition of the business conduct committee, that
20  Rick Gonzalez, in his capacity as president of
21  Abbott, was, in fact, on the business conduct
22  committee but, in fact, as I suggested in that