UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS RELATING TO TRACK 1 DEFENDANTS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS PLAINTIFFS' REPLY TO BMS'S SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
TO CERTIFY NATIONWIDE CLASSES 2 AND 3**

Class Plaintiffs submit this brief reply to the unauthorized,[1] supplemental memorandum that BMS filed after the March 18, 2008 class certification hearing (*see* Dkt. No. 5166).

**Knowledge and Unfairness**

BMS advances the unremarkable proposition that a jury may consider the parties' knowledge in determining unfairness. BMS Br. at 1 (citing, *inter alia*, *Ahern v. Scholz*, 85 F.3d 774, 798 (1st Cir. 1996); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007)). The unwritten inference that BMS wants to make is that this vitiates class treatment of Plaintiffs' claims for unfair acts or practices, because each class member's knowledge must be examined. BMS is wrong for a number of reasons.

First, in issuing its trial opinion, the Court already recognized that a plaintiff's knowledge is relevant to the unfairness inquiry, *see In re Pharm. Indus. Average Wholesale Price Litig.*,

---

[1] Briefing on Plaintiffs' motion for nationwide certification of Classes 2 and 3 is closed, and the Court has already heard oral argument. The Court did not invite any additional briefing, yet BMS felt free to submit an additional brief without seeking leave of Court. Accordingly, Plaintiffs object to BMS's submission as unauthorized but, nonetheless, are filing this reply in the event that the Court considers BMS's filing.

- 1 -

("*AWP*"), 491 F. Supp. 2d 20, 94 (D. Mass. 2007) ("Additional consideration may be given to the 'equities between the parties,' 'what a defendant knew or should have known,' and 'a plaintiff's conduct, his knowledge, and what he reasonably should have known.'" *Id.* (quoting *Swanson v. Bankers Life Co.*, 450 N.E.2d 577, 580 (1983)).  But the Court appropriately placed the focus "on the nature of [defendants'] challenged conduct and on the purpose and effect of that conduct as the ***crucial*** factors in making a . . . fairness determination." *Id.* (quoting *Mass. Employers Ins. Exch. v. Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (1995)) (emphasis added).  In other words, ***the focus is on the defendants' conduct***, and not on the conduct of the plaintiffs.  The Court highlighted this by citing to *Commonwealth v. DeCotis*, 366 Mass. 234, 316 N.E.2d 748 (1974), where the court recognized that practices can be unfair notwithstanding the plaintiff's knowledge:  "The willingness of tenants to pay resale fees, and even to contract knowingly to pay those fees, does not make the collection of such a fee fair.  It merely demonstrates the extent to which the defendants had their tenants at their mercy." *In re AWP*, 491 F. Supp. 2d at 93 (quoting *DeCotis*, 316 N.E.2d at 755).

Second, despite its acknowledgement that a plaintiff's knowledge may be relevant to the existence of unfairness, the Court has already twice ruled that inquiries into each class member's knowledge are not necessary.  In its initial class certification opinion, the Court found that common factual issues predominated for both Classes 2 and 3.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 81-82, 87-100 (D. Mass. 2005).  And after trial, the Court again decided that knowledge issues were ***not*** a material impediment to class certification.  The Court found that, even though class members had varying levels of knowledge and that most were aware that AWP did not reflect actual sales prices, they all believed that AWP bore a

reasonably predictable relationship to actual prices.[2]  The Court also found, on a ***class-wide*** basis, that "TPPs and the government did not understand the extent of the mega-spreads between published prices and true average provider acquisition costs"[3] and that, even after spreads became widely known, class members were locked into the AWP system.[4]

BMS's continued suggestion that knowledge issues cannot be examined on a class-wide basis – as opposed to a class member-by-class member interrogation – is wrong.  To reiterate: As the Massachusetts trial demonstrated, Plaintiffs' claims were susceptible of common proof, and the Court had no trouble with making class-wide findings on, among other issues, the impact of industry "knowledge."  There is no reason to believe that the issues will play out any differently in the next trial when the jury considers evidence relating to the named Plaintiffs and expert testimony relating to class-wide "knowledge."[5]

**Expert Discovery**

BMS appears to call for supplemental expert reports on both liability and damages for nationwide Classes 2 and 3 and wishes to introduce new facts based on information not previously produced in the case, to wit, data purportedly showing the specific providers to whom it has sold BMS drugs.  BMS Br. at 2-4.  Plaintiffs disagree that liability reports should be

---

[2] *See, e.g., In re AWP*, 491 F. Supp. 2d at 40 (some TPPs had staff model HMOs that were aware of discounts off AWP); *id.* ("[T]hroughout the class period, most knowledgeable insiders understood that AWP did not reflect the average sales price to providers, but that it bore a formulaic relationship to WAC of a 20 to 25 percent markup.  In addition, payors were aware there was some discounting from WAC.").

[3] *Id.* at 94; *see also id.* at 41 (finding that "[l]ess sophisticated participants, like Taft-Hartley Plans, which are union benefit funds, still did not understand that AWP was not a true market average because there was so much misinformation in the market").

[4] *Id.* at 91 (The Court found that class members faced an "insurmountable barrier to devising an alternative system," and that it was "it was not feasible for each TPP to devise its own ASP system either by doing its own survey of drug pricing, or by developing a pragmatic pricing methodology to handle the millions of annual drug transactions when there were different prices per NDC and per dose.").

[5] Moreover, no class could ever be certified under any unfair acts or practices statute if an individual examination into each class member's knowledge was a predicate to establishing liability.  Not surprisingly, no court has held in favor of the sweeping proposition that BMS is making.

- 3 -

001534-16 231584 V1

supplemented and will vigorously oppose any attempt by BMS to proffer new expert opinions based on data that BMS was under an obligation to produce, but did not produce, during fact discovery, which has long been definitively closed. Plaintiffs believe that the only supplementation that should be permitted is for the experts to update their damages reports by refining damages calculations for Classes 2 and 3 for the state UDTPAs, if any, that the Court includes in the certification order.

In any event, it is premature to decide this issue now, given that the Court has yet to issue its decision on the nationwide certification motion. As discussed during the recent hearing, Plaintiffs propose that, after the Court issues its certification decision, the parties submit a new case management order that addresses additional expert disclosures. The parties will undoubtedly be in a better position to evaluate what, if any, expert supplementation is necessary after the Court issues its order.

**Demonstrating Reliance Via Class-Wide Evidence**

Citing securities fraud cases, BMS contends that reliance can only be presumed in cases where an efficient market operates. BMS Br. at 4-5 (citing *Basic v. Levinson*, 485 U.S. 224 (1988), *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1 (1st Cir. 2005), and *In re Xcelera.com Sec. Litig.*, 430 F.3d 503 (1st Cir. 2005)).

However, no such limitation exists outside of the securities fraud context. Many courts, including those cited by Plaintiffs in their reply brief (which BMS conveniently ignores), apply a presumption of reliance in price-fixing cases or find reliance based on the introduction of class-wide evidence in consumer cases generally. *See, e.g., McLaughlin v. American Tobacco Co.*, 2008 U.S. App. Lexis 7093, at *20-22 & n.7 (2d Cir. Apr. 3, 2008) (court held that proof of reliance by circumstantial evidence may suffice under certain conditions, citing as an example

making a payment as proof of reliance upon a financial representation); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) (circumstantial evidence that is common to the whole class can be used to show reliance) (RICO case); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 179-180 & n.21 (3d Cir. 2001) (recognizing that "an illegal price-fixing scheme presumptively damages all purchasers of a price-fixed product in an affected market[,]" and that in "overcharging cases that warrant a presumption of reliance," plaintiffs meet the causation element where "they sustain economic loss by reason of the alleged conduct.") (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454 (3d Cir. 1977)); *Thorogood v. Sears Roebuck & Co.*, 2007 U.S. Dist. Lexis 81035, at *8 (N.D. Ill. Nov. 1, 2007) (noting that reliance can be presumed based on class-wide evidence that defendant marketed its dryers on a uniform, standard basis of being made of stainless steel, when they were not; class certified under UDTPAs of 29 states); *Grider v. Keystone Health Plan Central, Inc.*, 2006 U.S. Dist. Lexis 93085, at *64-65 (E.D. Pa. Dec. 21, 2006) (plaintiffs will be able to prove class-wide reliance based upon circumstantial evidence in case where defendants allegedly intentionally misrepresented, and failed to disclose, internal HMO policies and practices that were designed to systematically reduce, deny, and delay reimbursement payments to plaintiffs and their business) (RICO case); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491 (C.D. Cal. 2006) ("If class plaintiffs can show that generalized methods of proof are available to show that uniform representations were made to all class members which were misleading because they failed to disclose that all of the annuities at issue were worth less than the purchase prices paid for them or are fundamentally inferior to comparable products, then plaintiffs may be able to show that they have available a means of demonstrating reliance on a class-wide basis.") (RICO case); *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 560-63 (E.D. Va. 2000) (finding that

the very fact that class members made deficiency payments after repossession constituted circumstantial proof of reliance and framing the issue of whether reliance was reasonable as an objective inquiry common to the entire class); *Garner v. Healy*, 184 F.R.D. 598, 602 (N.D. Ill. 1999) (courts typically hold that individual reliance questions do not predominate where the fraud was perpetrated in a uniform manner); *Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 234-35 (E.D. Pa. 1999) (proof of individual causation or reliance unnecessary; if the plaintiffs can prove that the school was a "complete sham," then a fact finder can infer from the evidence that anyone who paid tuition and attended the school suffered damage) (RICO, state UDTPA and common law fraud case); *Peterson v. H & R Block Tax Servs.*, 174 F.R.D. 78, 84-85 (N.D. Ill. 1997) ("[C]ourts will presume class members' reliance when it is logical to do so or when the complaint's allegations make reliance apparent.") (RICO case); *see also Systems Mgmt. v. Loiselle*, 303 F.3d 100, 104 (1st Cir. 2002) ("Reliance is doubtless the most obvious way in which fraud can cause harm, but it is not the only way: Loiselle does not deny that a reasonably predictable consequence of his mailings was, by deceiving the college, to enable him to continue to underpay his workers.").

Here, the Court has already found at trial that Plaintiffs and class members believed that AWP was a consistent and reliable benchmark for use in negotiating drug pricing and, therefore, relied on it as such.[6] This finding was based on class-wide proof and weighs heavily in favor of either adopting a presumption of reliance or permitting reliance to be proved by objective, class-wide evidence for those five states where reliance is required (Arizona, Indiana, North Carolina, Pennsylvania and Wyoming).

---

[6] An example from the Court's findings: "[T]hrougout the class period, most knowledgeable insiders understood that AWP did not reflect the average sales price to providers, but that it bore a formulaic relationship to WAC of a 20 to 25 percent markup. In addition, payors were aware there was some discounting from WAC." *In re AWP*, 491 F. Supp. 2d at 40.

DATED: April 11, 2008					By    **/s/ Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

- 8 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on April 11, 2008, I caused copies of **CLASS PLAINTIFFS' REPLY TO BMS'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY NATIONWIDE CLASSES 2 AND 3** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                                 **/s/ Steve W. Berman**
                                                 Steve W. Berman