UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND COMPENSATION TO THE CLASS REPRESENTATIVES IN
<u>ASSOCIATION WITH THE ASTRAZENECA CLASS 1 SETTLEMENT</u>**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ...................................................................................................1

II.  HISTORY OF THE LITIGATION ......................................................................3

III. THE COURT SHOULD APPROVE THE FEE PETITION  AS FAIR AND
     REASONABLE ......................................................................................................3

  A.   Class Counsel are Entitled to Compensation Based Upon the Benefits
       Created by the Litigation .................................................................................3

  B.   The Percentage-of-the-Fund Method and Lodestar Methods are Appropriate
       for Calculating Attorneys' Fees in This Circuit...............................................4

  C.   The Requested Fee and Expense Award is Fair and Reasonable as a
       Percentage of the Benefits Achieved for the Class...........................................6

  D.   A Cross-Check With the Lodestar Confirms the Reasonableness of the
       Requested Fee and Expense Award...................................................................8

  E.   Various Other Factors Applied by This Circuit and Others Support Class
       Counsel's Request............................................................................................10

    1.   The size of the fund created and the number of people who benefit .........11

    2.   The time and labor expended by counsel..................................................11

    3.   The complexity and duration of the litigation...........................................12

    4.   The risk of nonpayment ...........................................................................13

    5.   The skill and efficiency of the attorneys involved....................................14

IV.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD  BE
     FACTORED IN THE COURT'S CONSIDERATION OF  THE FEE AND
     EXPENSE AWARD ..............................................................................................15

V.   COMPENSATION TO THE NAMED PLAINTIFFS IS APPROPRIATE.....................16

VI.  CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Activision Sec. Litig.*,
 723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................7

*In re Aetna Inc. Sec. Litig.*,
 2001 U.S. Dist. Lexis 68 (E.D. Pa. Jan. 4, 2001)..............................................11

*Bebchick v. Washington Metro. Area Transit Comm'n*,
 805 F.2d 396 (D.C. Cir. 1986) ............................................................................4

*Behrens v. Wometco Enters., Inc.*,
 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ..............13

*Blum v. Stenson*,
 465 U.S. 886 (1984)..............................................................................................4

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)..............................................................................................3

*Branch v. FDIC*,
 No. 91-CV-13270, 1998 WL 151249 (D. Mass. Mar. 24, 1998)..........................6

*Brotherton v. Cleveland*,
 141 F. Supp. 2d 907 (S.D. Ohio 2001) ..............................................................17

*In re Buspirone Antitrust Litig.*,
 2003 U.S. Dist. Lexis 26538 (S.D.N.Y. Apr. 11, 2003) ......................................6

*Bussie v. Allamerica Fin. Corp.*,
 1999 U.S. Dist. Lexis 7793 (D. Mass. May 19, 1999).......................................16

*Camden I Condo. Ass'n v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) .............................................................................5

*Central R. & Banking Co. v. Pettus*,
 113 U.S.  116 (1885)..........................................................................................4, 5

*In re Compact Discount Minimum Advertised Price Antitrust Litig.*,
 216 F.R.D. 197 (D. Me. 2003).........................................................................6, 8

*In re Compact Discount Minimum Advertised Price Antitrust Litig.*,
 292 F. Supp. 2d 184 (D. Me. 2003) ...................................................................16

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ...................................................................................6

*In re Continental Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...................................................................................5

*In re Copley Pharm., Inc.*,
    1 F. Supp. 2d 1407 (D. Wyo. 1998)........................................................................10

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*,
    108 F.R.D. 237 (1985) ......................................................................................5, 10

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    989 F. Supp. 375 (D. Mass. 1997) ...........................................................................6

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ..........................................................................17

*Eisen v. Carlisle & Jacquelin*,
    479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974)...............14

*In re Fidelity/Micron Sec. Litig.*,
    167 F.3d 735 (1st Cir. 1999).........................................................................4, 5, 15

*In re Fidelity/Micron Sec. Litig.*,
    1998 U.S. Dist. Lexis 21698 (D. Mass. June 5, 1998), *vacated on
    other grounds*, 167 F.3d 735 (1st Cir. 1999) ...........................................................6

*In re Fleet/Norstar Sec. Litig.*,
    935 F. Supp. 99 (D.R.I. 1996).................................................................................6

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...............................................................................5, 10

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ...................................................................................6

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000).............................................................................10, 13

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ...................................................................................5

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)...................................................................................10

001534-16 234347 V1

*Lipsett v. Blanco*,
   975 F.2d 934 (1st Cir. 1992)........................................................................................9

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002)...................................................................................16

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   2003 U.S. Dist. Lexis 12344 (D.D.C. June 16, 2003) .......................................................7

*In re Lupron Mktg. & Sales Practices Litig.*,
   2005 U.S. Dist. Lexis 17456 (D. Mass. Aug. 17, 2005) ................................................5, 6

*MCI Commc'ns Corp. v. American Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983) ...................................................................................13

*Mashburn v. National Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) ..............................................................................4

*In re Merry-Go Round Enters., Inc.*,
   244 B.R. 327 (Bankr. D. Md. 2000) ...............................................................................7

*In re Newbridge Networks Sec. Litig.*,
   1998 U.S. Dist. Lexis 23238 (D.D.C. Oct. 23, 1998) .......................................................12

*In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*,
   982 F.2d 603 (1st Cir. 1992)......................................................................................15

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................................6

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) ..........................................................................................5

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005)..................................................................................5, 6

*In re Revco Litig.*,
   1992 U.S. Dist. Lexis 7852 (N.D. Ohio May 5, 1992) .....................................................17

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...........................................................................10

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997)...............................................................................17

001534-16  234347 V1

*Rosenbaum v. MacAllister*,
    64 F.3d 1439 (10th Cir. 1995) ..................................................................14

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...................................................................5

*In re Southern Ohio Correctional Facility*,
    175 F.R.D. 270 (S.D. Ohio 1997)...............................................................16

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939)....................................................................................4

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .....................................................................5

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)...............................................................3, 4, 5, 8

*Trustees v. Greenough*,
    105 U.S. 527 (1882)....................................................................................5

*United States Football League v. National Football League*,
    644 F. Supp. 1040 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) .......................13

*In re Vitamins Antitrust Litig.*,
    2001 U.S. Dist. Lexis 25067 (D.D.C. July 13, 2001) ...................................7, 15

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................7

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)............................14

001534-16  234347 V1

## I.      INTRODUCTION

Class Counsel respectfully submit this Memorandum of Law in Support of their Petition for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensation to the Class Representatives in Association with the AstraZeneca Class 1 Settlement.  More specifically, and as set forth below, Class Counsel request that the Court approve an award of fees and expenses in the aggregate amount of $8,600,000, to be paid by AstraZeneca directly.

Class Counsel also request that the Court approve compensation for the Class Representatives in the amounts of $4,500 for Mr. Townsend and $7,800 for Mrs. Howe, based on $100 per hour for time that they spent providing documents and testimony in connection with the case.  Like the attorneys' fees and expenses, AstraZeneca will pay these amounts directly.

Pursuant to the terms of the Settlement, AstraZeneca does not oppose these requests. Under the terms of the Settlement, and subject to this Court's approval, AstraZeneca has agreed to pay Class Counsel $6,500,000 for attorneys' fees and $2,100,000 for litigation expenses. These amounts will not come from the money set aside to pay the claims of Class Members.  As of May 31, 2007, ten days after the AstraZeneca Class 1 Settlement was filed with the Court for preliminary approval, Class Counsel had expended a total of 198,397.88 hours in this case, a lodestar totaling $67,041,387.12 at historical billing rates, as well as $8,856,122.87 in total expenses.[1/2]

---

[1] The Declaration Of Marc H. Edelson In Support Of Class Plaintiffs' Joint Petition For Attorneys' Fees And Reimbursement Of Expenses In Relation To Settlement With AstraZeneca ("Edelson Decl."), submitted herewith, sets forth the breakdown of total unaudited attorney hours, fees and expenses incurred from inception through May 31, 2007.  Class Counsel will provide back-up for all attorney fees and expenses sought for reimbursement, if the Court wishes.  We also note that it is possible that we have not received complete information from all counsel and that, consequently, the lodestar information attached to the Edelson Declaration may change.  Nonetheless, we believe that it is a reasonable approximation of the hours and expenses incurred by counsel through May 31, 2007. Edelson Decl. at ¶ 9.

[2] The hours and expenses quoted above are cumulative for the entire AWP litigation against all Defendants from the inception of this case in 2001 through May 31, 2007.  As the Court is well aware the MDL includes multiple Defendants in two separate tracks, and this Settlement involves a resolution of claims against only

The Settlement of this ground breaking litigation provides real, immediate, and substantial cash benefits of double the damages for each Class Member who submits a valid claim.  AstraZeneca has agreed to pay Class Members who file valid claims up to an aggregate total of $24,000,000, with up to $10,000,000 going to mutually acceptable charitable organizations funding cancer research or patient care if valid claims are less than $24,000,000.

The attorneys' fee and cost award requested is eminently reasonable in light not only of the excellent result achieved for the Class (which is described in Class Counsel's Memorandum of Law in Support of Joint Motion for Final Approval of the AstraZeneca Class 1 Settlement), but also the risks involved in undertaking this unique, groundbreaking and highly complex matter as well as the immense effort required in litigating the claims and the subsequent settlement negotiations.  From its inception, this case has been intensely litigated, as AstraZeneca, like the other Defendants, challenged discovery, class certification and liability. The parties fought each other virtually every step of the way, and claims on behalf of Class 2 and Class 3 were tried to a verdict.  Litigating this case, therefore, has required immense time, energy and resources from Class Counsel.  Furthermore, as the Court is well aware, this case involved extremely complex and challenging issues of fact and law.  In addition, the Settlement was reached after months of arduous negotiations which were conducted in person, by telephone, and in writing.

Class Counsel faced considerable risk in litigating this case on a wholly contingent-fee basis.  To date, Class Counsel have not been compensated in the nearly seven years this action

---

AstraZeneca.  Due to the nature of the allegations, it is not possible to attribute each attorney hour or particular expenditure to litigation against a particular Defendant.  Some items could be allocated to specific Defendants, but many more, for example discovery from third parties and research on particular legal or factual issues that apply to all Defendants, could not be separately attributed to a particular Defendant.  Class Counsel has therefore provided the Court with its total lodestar through the month of the Class 1 Settlement with AstraZeneca.  These figures do not include lodestar and expenses incurred since May 2007.

has been pending.[3]  And they have foregone other opportunities and devoted their time to this

matter instead of others.

The result in this complex litigation and the effort required well supports the requested

attorneys' fee and expense award, is justified by relevant factors considered by courts in this

Circuit and others, and is in line with the fees that Class Counsel could have obtained at arm's-

length in the open market.  Therefore, Class Counsel respectfully request that the Court grant this

petition.

## II.    HISTORY OF THE LITIGATION

The Court is well acquainted with the history of this complex case and the unique

challenges that Class Counsel have faced in representing their clients and the Classes against a

array of sophisticated and well-represented Defendants, including AstraZeneca.  Rather than

repeat here the outlines of Plaintiffs' allegations, the history of Class Counsel's efforts, and the

details of the AstraZeneca Class 1 Settlement, Class Counsel respectfully refer the Court to Class

Counsel's Memorandum of Law in Support of Joint Motion for Final Approval of the

AstraZeneca Class 1 Settlement filed contemporaneously herewith and which is incorporated

herein by this reference.

## III.    THE COURT SHOULD APPROVE THE FEE PETITION
## AS FAIR AND REASONABLE

### A.    Class Counsel are Entitled to Compensation Based Upon the Benefits Created by the Litigation

Courts have long recognized that a lawyer who recovers a "common fund" is entitled to

reasonable attorney fees from the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

(1980); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56

---

[3] Although the Court approved a $21,615,000 award to Class Counsel out of the proceeds of the GSK settlement, that settlement is presently on appeal with the First Circuit, and Class Counsel have not been paid any fees therefrom.

F.3d 295, 305 n.6 (1st Cir. 1995) ("[t]he common fund doctrine is founded on the equitable

principle that those who have profited from litigation should share its costs"); *In re*

*Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in

creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also

to recover from the fund, as a general matter, expenses, reasonable in amount, that were

necessary to bring the action to a climax").  "The 'common fund' doctrine is designed to spread

the costs of litigation among all the beneficiaries of an identifiable fund over which a court can

exercise legitimate control, in effect guarding against the unjust enrichment of passive

beneficiaries at the expense of the active beneficiary."  *Bebchick v. Washington Metro. Area*

*Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986).

　　　　Substantial fee awards in successful cases, such as the present action, encourage and

support meritorious class actions, and promote private enforcement of, and compliance with,

various RICO and consumer protection laws.  Moreover, awards of attorney fees help to ensure

adequate enforcement of class members' legal rights.  "[A] financial incentive is necessary to

entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote

their time to complex, time-consuming cases for which they may never be paid."  *Mashburn v.*

*Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).

**B.　　The Percentage-of-the-Fund Method and Lodestar Methods are Appropriate for
　　　　Calculating Attorneys' Fees in This Circuit**

　　　　The Supreme Court has repeatedly held in cases involving the computation of a common

fund fee award that it is appropriate for the fee to be determined as a percentage-of-the-fund.  *See*

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the common fund doctrine . . . a

reasonable fee is based on a percentage of the fund bestowed on the class"); *see also Sprague v.*

*Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939); *Central R. & Banking Co. v. Pettus*, 113 U.S.

116, 124-25 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532 (1882).  In a percentage fee award, the fee is measured by the benefit conferred upon the class.

The First Circuit has left it to the trial court's discretion as to whether to apply the lodestar or percentage-of-the-fund ("POF") method or a combination of the two to award attorneys' fees.  *In re Thirteen Appeals*, 56 F.3d at 308.  In adopting what it termed this "malleable" approach, the court recognized that the POF is the prevailing method because it has distinct advantages in complex cases.  For example, it is less burdensome to administer,[4] reduces the possibility of collateral disputes, enhances efficiency throughout the litigation, and better approximates the workings of the marketplace.  *See In re Thirteen Appeals*, 56 F.3d at 307-08; *see also In re Fidelity/Micron*, 167 F.3d at 737.[5]

As a result, many district courts within the First Circuit have indicated their preference for the POF method over the lodestar method.  *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist

---

[4] "Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts."  *Id.* at 307 (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).

[5] The trend in this Circuit is consistent with the decisions nationwide awarding fees in common fund cases based on a percentage of the total recovery.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (4th ed. 2004) ("The vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases").  In addition to this Circuit, at least nine other circuits – the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia – have accepted the POF method as an appropriate method for awarding attorneys' fees.  *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) ("[i]n common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered," and in prior cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993) (noting "the recent trend toward adoption of a percentage of the fund method," and permitting use of the "percentage of the fund method" in common fund cases); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (fee award should not be based on "individual hours," but rather on the percentage that counsel "would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 744-45 (11th Cir. 1991) (percentage method mandatory in common fund cases); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985).

Lexis 17456, at *9 (D. Mass. Aug. 17, 2005); *In re Fidelity/Micron Secs. Litig.*, 1998 U.S. Dist.

Lexis 21698 (D. Mass. June 5, 1998), *vacated on other grounds*, 167 F.3d 735 (1st Cir. 1999);

*Branch v. FDIC*, No. 91-CV-13270, 1998 WL 151249, at *2-4 (D. Mass. Mar. 24, 1998); *In re*

*Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)

(describing the method as determining whether the "total fee [is] reasonable when examined as a

percentage of recovery"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377

(D. Mass. 1997); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998); *In re*

*Fleet/Norstar Secs. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996).

　　In this case in particular, where there are multiple Defendants and the Court is

considering only the fee related to settlement of a single Defendant, use of the POF method saves

the Court and the parties from the near impossible task of allocating the particular hours of the

many attorneys involved to a particular Defendant.  This Court has already used the POF

approach in awarding fees associated with the GSK settlement.

**C.     The Requested Fee and Expense Award is Fair and Reasonable as a Percentage of
the Benefits Achieved for the Class**

　　Courts have approved fee awards in common fund cases in the range of 25-45%.  *See*,

*e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (awarding class counsel

$22,311,000 in fees or 33% of class fund of $67,000,000, plus a separate award of litigation

expenses in the amount of $1,297,301); *In re Fleet/Norstar*, 935 F. Supp. at 109; *Conley*, 222

B.R. at 187; *In re Compact Disc*, 216 F.R.D. at 216 n.45; *Gaskill v. Gordon*, 160 F.3d 361, 363-

64 (7th Cir. 1998) (affirming award of 38% of class action settlement fund); *In re Pacific Enters.*

*Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common settlement

fund); *In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. Lexis 26538, at *11 (S.D.N.Y. Apr. 11,

2003) (awarding fees of 33⅓% of $220 million common fund to Direct Purchaser Plaintiff's

Class Counsel); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. Lexis 12344 (D.D.C. June 16, 2003) (awarding class counsel 30% of the common fund);  *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. Lexis 25067, at *57 (D.D.C. July 13, 2001) (determining that the one-third award was reasonable and granting class counsel fee petition in the amount of $123,188,032 plus interest, or approximately 34% of the total estimated settlement amount, in antitrust price fixing litigation); *In re Activision Sec. Litig.*, 723 F. Supp 1373, 1375 (N.D. Cal. 1989) (awarding a 32.8% fee and adopting a "policy of awarding approximately 30% of the fund as attorneys' fees in the ordinary case," as "well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable…").

In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002), the court included an exhaustive table of 34 cases generating revenues ranging from $54 million to $185 million, all of which generated fees of 30% or more, including the case at the high end of the scale (45%), the $185 million settlement in *In re Merry-Go Round Enters., Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000).  *See also* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, *Recent Trends III:  What Explains Settlements in Shareholder Class Actions?* (NERA, June 1995) (finding that "[r]egardless of case size, fees average approximately 32 percent of the settlement"); *see also* MANUAL FOR COMPLEX LITIGATION § 14.121 ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund.").  This Court already adopted the POF approach in awarding fees of 33 percent of the common fund in the GSK settlement.

The instant request falls within the foregoing ranges of reasonableness.  The Settlement Amount is $24,000,000, making the combined $8,600,000 fee and expense request approximately 35.8% of the amount.  Adding the $8,600,000 to the Settlement Amount would

- 7 -

total $32,600,000, supporting a standard 33 1/3% fee of over $9,700,000.  But by having

AstraZeneca pay a separate amount of fees and costs on top of the Settlement Amount, the Class

Members benefitted.  Even if one valued the Settlement by summing the aggregate amount of

valid claims made and the $10,000,000 *cy pres* payment (and it is still too early to do so since the

Claims Administrator is still processing claims), the amount requested would still be reasonable,

especially in light of the lodestar "cross check" discussed below.  Adding $10,000,000 to

projected claims of, say, $9,000,000, yields $19,000,000, of which $8,600,000 is 45%.  Including

the $8,600,000 fee and cost award in the denominator, results in a fee of 31%

($8,600,000/$27,600,000).

**D.    A Cross-Check With the Lodestar Confirms the Reasonableness of the Requested Fee and Expense Award**

As noted, the First Circuit also provides the Court with the discretion to employ the

lodestar approach (reasonable hours spent times reasonable hourly rated, subject to a multiplier

or discount for special circumstances, plus reasonable disbursements) in combination with the

POF approach.  *In re Thirteen Appeals*, 56 F.3d at 307; *In re Compact Disc*, 216 F.R.D. at 215-

16; *see also* MANUAL FOR COMPLEX LITIGATION § 14.122 ("the lodestar is . . . useful as a cross-

check on the percentage method by estimating the number of hours spent on the litigation and the

hourly rate, using affidavits and other information provided by the fee applicant.  The total

lodestar estimate is then divided into the proposed fee calculated under the percentage method.

The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.").

The total lodestar accumulated by Plaintiffs' counsel as of May 31, 2007 was

$67,041,387.12 at historical billing rates.  Edelson Decl. at ¶ 5.  Additionally, Class Counsel

have expended $8,856,122.87 in litigation related expenses.  Edelson Decl. at ¶ 6.

- 8 -

Dividing the total loadstar of $67,041,387.12 into the requested fee and expense award of $8,600,000 yields a "negative" multiplier of approximately 0.13.  Obviously, the lodestar has grown with additional work by counsel in implementing the Settlement, so the multiplier is actually lower.  And even if one adds the GSK award of $21,615,000 to the $8,600,000, the "negative" multiplier that results – .45 – is still low and much lower to what Class Counsel should be entitled to given the effort expended and results achieved (which easily justify a multiplier of two or three or more).

Furthermore, the lodestar calculation here is based on each law firm's historic rate (those in effect when the work was done, over the six and a half years this case has been pending).  Class Counsel are providing this historic rate calculation because it is more conservative, even though the First Circuit has noted the appropriateness of calculating the lodestar on current hourly rates (*i.e.*, in this case, those in effect in 2008 at each firm) because of the delay in payment of the fees to the firms performing the work, as well as other factors.  *See Lipsett v. Blanco*, 975 F.2d 934, 942-43 (1st Cir. 1992).  Given this precedent, it would be appropriate to calculate the lodestar of all firms at current rates, which would yield a higher total lodestar and a correspondingly lower multiplier.

The low or "negative" multiplier here is a result of the fact that the Settlement at issue involves only one of multiple Defendants.  However, it underscores the risks undertaken by Class Counsel in this matter and the fact that an enormous amount of time and money has been invested in this important and ground breaking litigation.  Even today, with significant settlements with the GSK Defendants and AstraZeneca, there is no guarantee that Class Counsel will recover the time and money invested, let alone receive a multiplier greater than 1 for the entire litigation.  Given the multipliers approved in many other cases, Class Counsel's request

- 9 -

here is more than reasonable.  *See In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1415 (D. Wyo. 1998) (finding a multiplier of two to be reasonable based on these factors); *see also In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (concluding that, under the cross-check approach, a lodestar multiple in the range of 4.5 to 8.5 is "unquestionably reasonable"); *Third Circuit Task Force*, 108 F.R.D. at 265 (suggesting that courts consider the "contingency factor" in all common fund cases).

**E.     Various Other Factors Applied by This Circuit and Others Support Class Counsel's Request**

The First Circuit has not required that lower courts use a particular set of factors to determine the reasonableness of the fee request.  However, the Third Circuit Task Force Report approved certain factors to assist courts in this analysis.  Among other things, these factors include:  (i) the size of the fund created and the number of persons benefited; (ii) the skill and efficiency of the attorneys involved; (iii) the complexity and duration of the litigation; (iv) the risk of nonpayment; (v) the amount of time devoted to the case by plaintiffs' counsel; and (vi) the awards in similar cases.  *See Third Circuit Task Force*, 108 F.R.D. at 245; *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (applying factors); *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 819-22 (same).  The Second Circuit has adopted a similar list of factors:  the time and labor expended by Class Counsel, the complexities of the litigation, the risks borne by Class Counsel in litigating this case on a contingency fee basis, the quality of the representation provided, the fee request in relation to the settlement, public policy considerations and the reaction of the Class to the settlement.  *See Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000).

Applying these factors, the award for both fees and litigation expenses in this case is fair and reasonable.

1.        **The size of the fund created and the number of people who benefit**

The total fund here eligible to be claimed is $24,000,000 and will benefit thousands of consumers.  The Settlement is described at length in Class Counsel's Memorandum of Law in Support of Joint Motion for Final Approval of AstraZeneca Class 1 Settlement, filed simultaneously herewith.  To avoid duplication, Class Counsel hereby incorporates that description by reference.

2.        **The time and labor expended by counsel**

Class Counsel have been investigating and litigating this case intensely and thoroughly over a period of six-and-a-half years.  Class Counsel have devoted considerable time, energy, and resources from the beginning of this case through discovery and motion practice, through a Class 2 and 3 Massachusetts trial and until settlement.  From the very beginning, "Defendants mounted an aggressive and vigorous defense throughout the course of this litigation." *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. Lexis 68, at *46 (E.D. Pa. Jan. 4, 2001).  Indeed, AstraZeneca still vigorously disputes that it engaged in any wrongful conduct or violation of law and is appealing the Class 2/3 trial verdict.

This litigation required an all-out effort by Class Counsel.  First, the motion practice in this case has in and of itself required enormous work, as the case raised many complex and difficult legal and factual issues.  This required Class Counsel to oppose more than one round of substantial motions to dismiss as well as class certification motions.  Second, discovery in this case was extensive.  Class Counsel had to devote substantial energy and thousands of hours in obtaining, inventorying, and examining millions of documents produced by AstraZeneca.  Even more time and effort was necessary to cull those documents and create a useful database – an invaluable tool for identifying key issues and evidence for depositions and possible trial. Additionally Class Counsel conducted over 40 depositions of AstraZeneca's current and former

employees, including senior managers, consultants, and contractors, as well as relevant third-parties, including reimbursement consultants and doctors targeted by AstraZeneca's Zoladex sales team.  The depositions resulted in nearly 700 marked deposition exhibits.

Class Counsel also spent considerable time consulting with economic experts concerning the economic impact of Defendants' scheme on the Class and the measure and amount of damages to the Class.  Finally, Class Counsel spent many hours researching and briefing complex legal issues for more than one round of motions to dismiss and class certification motions.  These "efforts in posturing this case for trial . . . played a role in spurring the settlement [and] produced a substantial payout to the class."  *In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist Lexis 23238, at *11 (D.D.C. Oct. 23, 1998).

Throughout this entire process, Class Counsel have litigated this case with extreme efficiency.  The bulk of the work was handled by a small number of experienced attorneys. Assignments were allocated so that work was performed expeditiously, efficiently and in an organized manner.  Review and repetition was avoided.

Moreover, the significant investment of time required by this action necessarily precluded Class Counsel from working on other matters.  Class Counsel expended hours and incurred expenses in prosecuting this case, and were prepared to put at risk more time and money had the AstraZeneca Class 1 litigation not settled.

Based on all of the above factors, the fee and expense award requested by Class Counsel is reasonable in light of the risk, quantity, and quality of work expended by Class Counsel over the last six-and-a-half years.

### 3.    The complexity and duration of the litigation

The complexity of the issues and the duration of the litigation support the award requested.  Class actions alleging violations of RICO and fraud, particularly in the

pharmaceutical reimbursement context, are arguably the most complex class actions to prosecute because the legal and factual issues are inherently complicated and uncertain.  In fact, in addition to the legal issues involved in overcoming the Defendants' motions to dismiss, this case involved some highly technical and complex issues with regard to pharmaceutical reimbursement systems, pharmacy benefit manager contracting, health insurance, federal regulation, and preemption. These legal issues required exhaustive research and briefing.

### 4.    The risk of nonpayment

A determination of a fair fee must include consideration of the uncertain nature of the fee, the wholly contingent outlay of large out-of-pocket sums by Plaintiffs' counsel, and the fact that the risks of failure and nonpayment are extremely high.  Many cases recognize that attorneys' risk is "perhaps the foremost factor" in determining an appropriate fee award.  *Goldberger*, 209 F.3d at 54 (citation omitted).  In *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), the court noted that:

> Generally, the contingency arrangement must be promoted to
> assure representation when a person could not otherwise afford the
> services of a lawyer…  A contingency fee arrangement often
> justifies an increase in the award of attorneys' fees.  This rule helps
> assure that the contingency fee arrangement endures.  If this
> 'bonus' methodology did not exist, very few lawyers could take on
> the representation of a class client given the investment of
> substantial time, effort, and money, especially in light of the risks
> of recovering nothing.  [*Id.* (citations omitted).]

The history of complex litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages or very small damages at trial or after appeal.  *See, e.g.*, *United States Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Commc'ns Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983)

- 13 -

(remanding antitrust judgment for new trial and damages); *Eisen v. Carlisle & Jacquelin*, 479

F.2d 1005 (2d Cir. 1973) (following two trips to the Court of Appeals and one to the U.S.

Supreme Court, plaintiffs, the putative class, and their counsel recovered nothing), *vacated on*

*other grounds*, 417 U.S. 156 (1974).

Indeed, when Class Counsel undertook representation of the Class, there were no

assurances that any fees would ever be received.  Class Counsel were aware that they would

likely have to overcome the daunting difficulties, and would have to expend thousands of hours

and millions of dollars, in prosecuting this case over an extended period of time before having

even a possibility of recovering fees and expenses.  Class Counsel alone bore the risk of the case

being dismissed at the pretrial stage, of not prevailing at trial, or even losing on appeal.

To date, Class Counsel have received no compensation during the course of this

proceeding.  Because of the risk undertaken by Class Counsel, the requested fee award is

reasonable.

> **5.     The skill and efficiency of the attorneys involved**

The experience, reputation, and ability of plaintiff's counsel has often been noted as a key

factor in a court's consideration of counsel's fee request.  *See, e.g., In re Warner Commc'ns Sec.*

*Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Rosenbaum v.*

*MacAllister,* 64 F.3d 1439, 1445 n.3 (10th Cir. 1995).  The Settlement here was not easily

achieved.  Negotiations were hard-fought and protracted and did not produce a settlement until

after the Class 2/3 trial and on the eve of the Class 1 trial.  AstraZeneca is represented by

experienced and highly-regarded counsel, and they contested this litigation at every stage.

Therefore, settlement negotiations required persistence, negotiating skill, and a willingness to

take this case to trial.  Class Counsel employed all of these, and obtained a settlement agreement.

Class Counsel here are among the country's leading firms in prosecuting and trying complex actions and class actions in particular, with particular expertise in actions involving the pharmaceutical industry, and a demonstrated track record of accepting difficult cases and taking them to trial. Due to the quality of representation and the significant results achieved by Class Counsel, the requested fee and expense award is reasonable.

### IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE FACTORED IN THE COURT'S CONSIDERATION OF THE FEE AND EXPENSE AWARD

In addition to being entitled to reasonable attorney fees, it is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Secs. Litig.*, 167 F.3d at 737; *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. Lexis 25067, at *67 (holding that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund") (citations omitted). "[B]ecause each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms." *In re Fidelity/Micron Secs. Litig.*, 167 F.3d at 737.

The expenses incurred in this litigation in the amount of $8,856,122.87 are described in the accompanying affidavit of Marc Edelson filed herewith. They are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, computerized research and other services, deposition and transcript expenses and travel expenses in connection with this litigation through May 31, 2007. These expenses were reasonable and necessary for the prosecution of this litigation. However, AstraZeneca's

agreement to pay $2,100,000 for litigation expenses is only a fraction of the total expenses that Class Counsel have incurred.

## V.      COMPENSATION TO THE NAMED PLAINTIFFS IS APPROPRIATE

Class Counsel request that the Court approve compensation in the amount of $4,500 to Mr. Townsend and $7,800 to Mrs. Howe, based on $100 per hour for time that they spent providing documents and testimony in connection with the case.  *See* Declaration of Leroy Townsend; Declaration of M. Joyce Howe.  Like the attorneys' fees and expenses, AstraZeneca will pay these amounts directly.

Compensation to named plaintiffs is "not uncommon in class action litigation . . . particularly where a common fund has been created for the benefit of the entire class. . . .  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *see also In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997) (collecting cases in which awards to named representatives approved).  A district court in the First Circuit has stated that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."  *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003). Further, in determining whether such compensation is warranted, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves.  *Bussie v. Allamerica Fin. Corp.*, 1999 U.S. Dist. Lexis 7793, at *11-12 (D. Mass. May 19, 1999).

- 16 -

The Class Representatives here actively and effectively fulfilled their obligations as representatives for the Class.  The Plaintiffs went above and beyond the call of duty in complying with demands placed upon them during this litigation.  Of crucial importance is the willingness of the Plaintiffs to bring this action in the first place.  Each of the named Plaintiffs also monitored the case and discussed its progress with counsel and consulted with counsel concerning the Settlement.

The requested compensation is more than justified, because of the named plaintiffs' active and prominent role in this litigation.  In such situations, courts have awarded compensation of the requested amount and larger.  *See*, *e.g.*, *In re Revco Litig.*, 1992 U.S. Dist. Lexis 7852, at *22 (N.D. Ohio May 5, 1992) (awarding $200,000 to a named plaintiff); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 203-04 (S.D.N.Y. 1997) (awarding $85,000 to a named plaintiff); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding $55,000 each to two named plaintiffs); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (awarding $50,000 to the class representative).

Finally, the Notice to the Class advised Class members that Class Counsel would apply for such compensation, and no Class member has to date objected to such an award.

## VI.    CONCLUSION

For the reasons set forth above, Class Counsel respectfully request that the Court approve the fee and expense petition and enter an order awarding Class Counsel the attorneys' fees and expenses requested and the compensation for the Class Representatives.

DATED:  April 17, 2008

By____/s/ **Steve W. Berman**____
 Thomas M. Sobol (BBO#471770)
 Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

001534-16 234347 V1

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on April 17, 2008, I caused copies of **CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATION TO THE CLASS REPRESENTATIVES IN ASSOCIATON WITH THE ASTRAZENECA CLASS 1 SETTLEMENT** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

/s/ Steve W. Berman
Steve W. Berman

001534-16  234347 V1