**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*State of Iowa v. Abbott Laboratories, et al.* | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**DEFENDANTS ASTRAZENECA PHARMACEUTICALS LP'S
AND ASTRAZENECA LP'S INDIVIDUAL REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR
<u>MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

AstraZeneca Pharmaceuticals LP and AstraZeneca LP (collectively, "AstraZeneca") respectfully submit this individual reply memorandum in further support of their motion to dismiss the Complaint as it relates to AstraZeneca's drug Zoladex® (goserelin acetate).

<u>**ARGUMENT**</u>

In the State of Iowa's Omnibus Opposition to Various Defendants' Individual Motions to Dismiss (the "Opposition"), Plaintiff concedes that its Zoladex-related claims for the period prior to September 4, 2003 have been settled and released according to the terms of the Settlement Agreement between AstraZeneca and the State of Iowa (attached as Exhibit A to the Affidavit of Stuart Fullerton filed in support of AstraZeneca's Individual Motion to Dismiss). (Opposition at 2.) Accordingly, Plaintiff agrees that its "Zoladex claims prior to September 4, 2003 should be dismissed." (Opposition at 3.) Nonetheless, Plaintiff argues that based on the "four corners" of the Settlement Agreement its Zoladex-related claims for the period following September 4, 2003 are still viable because the settlement bars claims only through the agreement's effective date.

However, since June 2003, the Iowa Department of Human Services ("DHS") has had at its disposal not only the average wholesale prices ("AWPs") published for Zoladex but the very pricing information Plaintiff claims should have been disclosed.  As is discussed in detail in the Complaint, AstraZeneca entered into a Corporate Integrity Agreement with the Office of the Inspector General of the United States Department of Health and Human Services on June 4, 2003 (the "CIA").[1]  *See* Compl. ¶¶ 237-241.  Pursuant to the terms of the CIA, AstraZeneca reports the Average Sale Price ("ASP")[2] for Zoladex and certain other specified drugs to, among others, the Iowa DHS, the Office of the Inspector General, Centers for Medicaid and Medicare Services, and First DataBank.  *See* CIA § III.D.2.b.

The 2003 Zoladex settlement with Iowa (and the federal government and 48 other states) resolved a five-year investigation into the marketing, sale and pricing of Zoladex.  That agreement did not require AstraZeneca to stop reporting an AWP for Zoladex, or to revise in any way how the AWP for Zoladex was calculated.  Instead, it required AstraZeneca to calculate and report, on a quarterly basis, an ASP for Zoladex to the State.  There is no allegation in the Complaint that AstraZeneca failed to calculate properly, or to report, Zoladex ASPs.

---

[1] This agreement has been posted by the United States Department of Health and Human Services, and is publicly available on its website.  *See* http://oig.hhs.gov/fraud/cia/agreements/AstraZeneca06042003.PDF.  A copy of the CIA is also attached as Exhibit A to the accompanying declaration of Katherine B. Schmeckpeper, Esq.

[2] Section III.D of the CIA defines the term "Average Sale Price" as follows:

> with respect to each dosage, form, strength and volume of [Zoladex and certain other specified drugs] … the average of all final sales prices charged by AstraZeneca for the product in the United States to all purchasers, excluding those sales exempt from inclusion in the calculation of "Best Price" for Medicaid Drug Rebate purposes, pursuant to 42 U.S.C. § 1396r-8, and excluding identifiable direct sales to hospitals. (Those purchasers for which the sales are included in the calculation of Average Sale Price are hereafter referred to as the "Relevant Purchasers.") The prices identified in the calculation of the Average Sale Price should be net of all the following: volume discounts; prompt pay discounts; cash discounts; chargebacks; short-dated product discounts; free goods; rebates [footnote omitted]; and all other price concessions provided by AstraZeneca to any Relevant Purchaser that result in a reduction of the ultimate cost to the purchaser….

Accordingly, because Iowa has been in possession of the very same "actual transaction price data" (as well as complete knowledge of the relationship between Zoladex's wholesale acquisition cost, AWP and ASP), it is impossible for Plaintiff to claim to be defrauded herein and all claims involving Zoladex must be dismissed.[3]

## CONCLUSION

If the Complaint is not dismissed in its entirety as to all defendants pursuant to the joint motion to dismiss, all of Plaintiff's claims against AstraZeneca relating to Zoladex should be dismissed for the foregoing independent reasons.

Dated:  April 18, 2008

By:   /s/ Katherine B. Schmeckpeper

Nicholas C. Theodorou
Katherine B. Schmeckpeper
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone:  (617) 832-1000

D. Scott Wise
Kimberley D. Harris
Antoinette Greenaway Ellison
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000

*Attorneys for Defendants*
*AstraZeneca Pharmaceuticals LP and*
*AstraZeneca LP*

---

[3] This Court has already ruled that by 2001, "there was a perfect storm of information that reflected the size of the spreads" between AWPs and actual market prices and it was widely known that AWPs did not represent actual averages of acquisition costs. *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 41 (D. Mass. 2007).  Plaintiff's allegations that it was still deceived by AWPs in 2003 -- despite possession of information regarding AWPs as well as ASPs -- lacks plausibility. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1973 n.14 & 1974 (2007) (holding that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on its face" and that complaint warranted dismissal "because it failed *in toto* to render plaintiffs' entitlement to relief plausible").

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on April 18, 2008 a copy to LexisNexis File & Serve for posting and notification to all parties.

                                            /s/ Katherine B. Schmeckpeper