# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | MDL No. 1456 |
| | ) | |
| | ) | CIVIL ACTION: 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *State of Iowa v. Abbott Laboratories, et al.* | ) | Judge Patti B. Saris |
| | ) | |
| | ) | |

## DEFENDANT CHIRON CORPORATION'S REPLY TO STATE OF IOWA'S OMNIBUS OPPOSITION TO VARIOUS DEFENDANTS' INDIVIDUAL MOTIONS TO DISMISS

Defendant Chiron Corporation ("Chiron") respectfully submits this Reply to the State of Iowa's ("Plaintiff's) Omnibus Opposition to Various Defendants' Individual Motions to Dismiss as to the specific allegations against Chiron. Chiron also joins in and incorporates by reference the Defendants' Joint Reply to Plaintiff's Memorandum of Law in Opposition to Certain Defendants' Motion to Dismiss the Complaint. In so doing, Chiron continues to believe that this case should be decided upon motion and thus seeks dismissal of Iowa's action *with prejudice*.

## I.   PLAINTIFF CONCEDES PARAGRAPHS 322 THROUGH 327 OF THE COMPLAINT, THUS NARROWING THIS ACTION AGAINST CHIRON.

In their Opposition, Plaintiff has narrowed its action against Chiron to only two products. Plaintiff has made clear that it is not asserting claims for any of the fifteen NDCs referenced in paragraphs 319-327 of the Complaint; instead, its claims are for the two drugs identified in Exhibit B-10:  NDC 53905-0065-01 (TOBI® 300mg/5ml solution) and NDC 53905-0991-01 (Proleukin® 22 million IU vial for injection). As such, Plaintiff has effectively amended out of

its pleading paragraphs 319-327 and the Chiron products referenced therein.[1]  As a result, the Court should grant Chiron's motion to dismiss vis-à-vis the products mentioned in paragraphs 319-327 of the Complaint or, in the alternative, strike those paragraphs.  *See* Fed. R. Civ. P. 12(f)(stating that either upon motion or the court's initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").  In so doing, only Plaintiff's TOBI® solution and Proleukin® for injection claims survive.

## II.   PRECEDENT OF THIS COURT REQUIRES DISMISSAL WHERE SPREADS ALLEGED ARE LESS THAN THIRTY PERCENT.

In light of the fact that Plaintiff has effectively amended out the drugs contained in the body of the Complaint, the two remaining drugs at issue, TOBI and Proleukin, can survive only if the spread alleged for each is greater than 30%.  Significantly, both NDCs pled have alleged spreads below 30%.[2]  In addition, Plaintiff includes a third "phantom drug" on Exhibit B-10, but this drug lacks both an NDC *and* a label name.  *See* Ex. B-10.  In its Opposition, Plaintiff claims this phantom drug is another "price point in time" for Proleukin.  If this is the case, and the phantom drug's alleged spread of 30.48% for a period of approximately three and a half months in 2001 (February 22, 2001 through June 8, 2001) is averaged with the alleged 27.22% Proleukin spread for a five and a half month period in 2000 (July 21, 2000 through December 11, 2000), the resulting spread over the entire period would be less than 30%.  *See id.*  Notably, as demonstrated in Plaintiff's Exhibit B-10 to the Complaint, Chiron's FDB-AWP for Proleukin

---

[1] Plaintiff speciously claims that the allegations contained in these paragraphs "serve as foundation for Chiron's business practice[,]" yet because Plaintiff is asserting claims only for drugs in Exhibit B-10, a veritable leap in logic is required to establish any relationship, and therefore relevance, between these allegations in the Complaint and the two drugs named in Exhibit B-10.  Moreover, these recycled paragraphs from the New York First Amended Consolidated Complaint ("FACC") merely contain extraneous allegations which are immaterial to Exhibit B-10 and notably refer to a period of time – 1995 – that is simply not relevant to the case *sub judice*.  *See* Case Management Order ("CMO") No. 33 (September 14, 2007) (limiting discovery to the period 1997 to 2005).

[2] Plaintiff alleges a spread of 26.71% for TOBI®, and 27.22% for Proleukin.

remained unchanged from July 21, 2000 through June 8, 2001.  Therefore, it is wholly appropriate to consider data in the aggregate for the *entire period* when determining whether Proleukin's spread exceeds 30%, as doing so would guard against Plaintiff's cherry-picking and/or separation of time periods during which Chiron continued to offer its products under the same reported WAC and AWP.  *See* Tr. of Motion Hearing dtd July 26, 2007, at 22-23 (requiring allegations to be made in good faith based on a "typical or average or median" price rather than an outlier price).

Plaintiff cites prior rulings in support of its contention that alleged spreads below 30% are sufficiently particular and that such claims, while permitted to proceed, are stayed.  Glaringly, however, Plaintiff fails to mention that the Court adopted Plaintiff's expert's 30% benchmark during the Track 1 Trial as the empirical liability yardstick.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 32, (D. Mass. 2007).  There, this Court held that brand name drugs with spreads of 30% or less are not subject to liability.  *See id.*  Now, however, Plaintiff seeks to have this Court back away from its ruling and permit claims on drugs with spreads below 30%.  While Chiron joins the other Defendants in rejecting Plaintiff's expert's 30% "yardstick" and continues to challenge this methodology as faulty, under this Court's precedent claims against Chiron, where Plaintiff alleges spreads less than 30%, should be dismissed.  At a minimum, the Court should stay any discovery related to those drugs.  *See* CMO No. 33.

## III.    THIS COURT'S RULING IN *SUFFOLK* MANDATES DISMISSAL OF THIS ACTION.

This Court's dispositive ruling in *Suffolk* controls, and, as noted previously in Chiron's Motion to Dismiss, this Court has now twice dismissed allegations against Chiron based on the same set of poorly-pled "facts."  This recycled complaint should fare no better.  *See In re Pharm.*

*Indus. Average Wholesale Price Litig.*, 339 F. Supp. 2d 165 (D. Mass. 2004) ("Suffolk I") (dismissing a portion of the claims as to all defendants); *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 1456, Civ.A. 01-12257-PBS, 2004 WL 2387125, at *2-3 (D. Mass. Oct. 26, 2004) ("Suffolk II") (companion order to Suffolk I, dismissing all claims as to a portion of the defendants, including Chiron); *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 1456, Civ.A. 01-12257-PBS, Memorandum and Order (D. Mass. April 8, 2005) ("*Suffolk III*") (dismissing all claims as to the "Suffolk 13," including Chiron).

This Court has consistently dismissed parties where the pleading was inadequate, and Chiron has been among those where the Court dismissed an inadequately pled complaint against it. *See Suffolk III.* Significantly, this Court in *Suffolk* did not afford Plaintiffs leave to amend their defective action. *See id.* Before this Court, again, is another action that mirrors its defective predecessors, using essentially the same theories against Chiron that this Court previously found defective in *Suffolk* and dismissed under Rule 9(b). As such, this Court should treat Iowa's claims against Chiron exactly as it treated Suffolk's defective claims against Chiron and dismiss them.

## IV.    CHIRON HAS NO OBLIGATION TO GUESS AS TO MATTERS PLED AGAINST IT.

Plaintiff claims that "[i]t is obvious that the 'phantom' drug is the same as the drug appearing immediately above it, Proleukin 22 million IU vial." Not surprisingly, Plaintiff fails to cite any authority supporting Plaintiff's "it is obvious" argument, and Chiron is not aware of any authority in favor of such conjecture. What is obvious, however, is that despite filing this recycled Complaint on October 9, 2007, replete with allegations bearing no relationship to the actual claims asserted by Plaintiff, Plaintiff chose to omit the NDC *and* label name from the

phantom drug in Exhibit B-10.[3]  Chiron has no obligation to guess as to what the phantom drug may be.  Instead, Plaintiff has an obligation to put Chiron on specific notice as to the drug or claim at issue.  *See* Fed. R. Civ. P. 9(b); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 194 (D. Mass. 2003) ("Pharm. I") (noting that in order to satisfy Rule 9(b), plaintiffs must "clearly and concisely allege with respect to each defendant:  (1) the specific drug or drugs that were purchased from defendant . . . ."); *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007) ("The particularity requirement means that a complaint must specify the time, place, and content of an alleged false representation.") (citations and internal quotation marks omitted).  Plaintiff pled the deficient phantom drug without its two main identifiers; Plaintiff should be made to fix its deficiency and clarify the record.[4]

For the foregoing reasons, and those stated in Defendants' Joint Reply, Chiron's Memorandum in support of its Motion to Dismiss, and Defendants' Joint Memorandum, Chiron respectfully requests this Court grant its Motion to Dismiss the Iowa Complaint *with prejudice*.

---

[3] In addition, Plaintiff, in direct contravention to this Court's good faith pronouncement issued during the July 26, 2007 motions hearing concerning the same counsel's New York complaint, seemingly chose to cherry-pick a narrow window in time (*i.e.*, February 22, 2001 through June 8, 2001) as its "price point" to demonstrate alleged "actionable spread for Proleukin 22 million IU Vial."  This type of arbitrary selection to demonstrate alleged "actionable spread" should not be permitted.

[4] If this was a new complaint, Plaintiff may rightly be afforded leave to amend.  But, it is not.  The same counsel who filed the NY Complaint filed a nearly identical complaint on behalf of the State of Iowa.  The same counsel at this stage of the litigation should, presumably, recognize that including a phantom drug lacking both the NDC number and label name falls woefully short of the particularity that is required of Plaintiff.  Toward that end, Chiron respectfully requests the phantom drug be dismissed from the Complaint *with prejudice*.

Dated:  April 18, 2008

/s/ D. Jacques Smith
D. Jacques Smith, Esq. (*pro hac vice*)
Larri A. Short, Esq.
Jackson D. Toof, Esq.
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
Tel:     (202) 857-6000
Fax:     (202) 857-6395
smith.jacques@arentfox.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 18, 2008, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.


/s/ D. Jacques Smith
D. Jacques Smith, Esq. (*pro hac vice*)