# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: *State of Iowa v. Abbott Laboratories, et al.* | Judge Patti B. Saris |

## MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' REPLY TO IOWA'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

DSMDB-2420968v01

In Plaintiffs' Memorandum of Law in Opposition to Certain Defendants' Motion to Dismiss ("Opposition"), Iowa concedes that prior AWP decisions by this Court require that Iowa's Medicaid Rebate Agreement claim (Count I) be dismissed.  Consistent with its prior rulings, this Court should also limit Iowa's Best Price and nominal price claims, and should dismiss those claims related to wholesale acquisition cost ("WAC"), State Maximum Allowable Cost ("SMAC"), and "WAC equivalents."  While Iowa argues that the claims under its Consumer Fraud Act have previously been decided against Defendants, in fact this Court has not previously considered applicable Iowa law.  Finally, Defendants urge the Court to limit discovery to only the time period for which damages ultimately can be claimed, and to only those drugs for which the Complaint alleged spreads in excess of thirty percent.

## ARGUMENT

### I.        IOWA AGREES THAT COUNT I SHOULD BE DISMISSED

Iowa acknowledges that the Court has already ruled against its attempt to assert a private right of action under the federal Medicaid Rebate Agreement.  Opposition at 3; *see also* Memorandum of Law in Support of Certain Defendants' Motion to Dismiss the Complaint ("Motion") at 13-14.  Count I should therefore be dismissed.

### II.       IOWA'S COMPLAINT LACKS THE PARTICULARITY REQUIRED UNDER FED. R. CIV. P. 8(a) AND 9(b)

Iowa concedes that it has not alleged most of its Best Price claims with sufficient particularity, and that, like the New York Counties' claims, the majority of Iowa's Best Price claims should be dismissed without prejudice under Rules 8(a) and 9(b).  Opposition at 18 n.10, 21, 22.  As in the *Consol. NY Counties* case, "[h]ere, with respect to most defendants, the [Plaintiff] ha[s] 'not tied the Best Prices claims to any particular drugs, discounts or other company specific practices which would support an inference of misrepresenting Best Prices.'" *City of New York v. Abbott Labs.*, No. 04-cv-06054, 2007 WL 1051642, at *10 (D. Mass. Apr. 2,

2007) ("*Consol. NY Counties*") (quoting *County of Suffolk v. Abbott Labs.*, No. 1456, Civ.A.

01-12257-PBS, 2004 WL 2387125, at *2 (D. Mass. Oct. 26, 2004)); *see also id.* at *16, *17.

The Court thus should dismiss all Best Price claims as to all but the eight drugs enumerated in its

*Consol. NY Counties* ruling.  Iowa's nominal price claims should likewise be dismissed, as they

merely reiterate similar arguments made and rejected in the *Consol. NY Counties* litigation.

Iowa's Opposition also fails to respond to Defendants' arguments that the

Complaint's WAC, "WAC equivalents," and SMAC allegations fail under Rule 9(b) because

Iowa does not tie the claims "to any particular drugs, discounts or other company-specific

practices which would support an inference of [fraud]."[1]  *County of Suffolk*, 2004 WL 2387125,

at *2; *see also* Motion at 32-33.  The Court's prior rulings require Iowa to allege, with respect to

each Defendant:  (1) the specific drugs purchased from each Defendant; (2) the allegedly

fraudulent price; and, (3) a good faith estimate of an actual market price from which a spread

may be calculated.  *Consol. NY Counties*, 2007 WL 1051642, at *14; Motion at 29.  Iowa does

not and cannot argue that it has satisfied the Court's standard for any of its five Counts as to

WAC, "WAC equivalents," and SMAC pricing.[2]

III.     **ALL DRUGS SUBJECT TO THE IOWA SMAC SHOULD BE DISMISSED
         BECAUSE THE STATE HAD KNOWLEDGE OF ACTUAL PURCHASE
         PRICES FOR THOSE DRUGS**

Iowa fails to state a claim for all drugs subject to the Iowa SMAC.  Both the Iowa

Administrative Code and the Iowa Provider Manual ("Manual"), cited in the State's Complaint at

¶ 74, show that Iowa had actual knowledge of the purchase prices for all drugs subject to the

---

[1] The State's only substantive reference to these terms is two sentences in its Preliminary
Statement.  Opposition at 2-3.

[2] The Court in *Consol. NY Counties* allowed WAC claims to survive for "[o]nly those drugs for
which the plaintiffs have alleged a spread greater than the 20-25% mark up between WAC and
AWP."  2007 WL 1051642, at *15 n.9.  Exhibit B only alleges spreads between AWP and a
"Weighted Average Market Price."

DSMDB-2420968v01

SMAC.  Therefore, the allegations that Iowa relied on Defendants' reported prices in setting SMAC are false.  Under the Iowa Administrative Code, the SMAC reimbursement benchmark is based on an average of actual pharmacy *purchase records* for a drug.  Iowa Admin. Code r. 441-79.1(8)(a)(3) (2008); Motion at 27.  The Manual states that "SMAC fees are based on the prices at which affected drugs are widely and consistently available to pharmacy providers enrolled in the Iowa Medicaid program, adjusted by a multiplier of 1.4."  Manual at 45 (Reply Exhibit A).  The Manual also states that "[p]harmacies and providers that are enrolled in the Iowa Medicaid program shall submit drug acquisition cost information or product availability information to the Department or its designee to assist the Department in monitoring and revising reimbursement rates and for the efficient operation of the pharmacy benefit."  *Id.* at 46.

Iowa admits that it "reviews pharmacist invoices for each drug" to establish the SMAC.  Complaint ¶ 109.  In its Opposition, the State did not respond to Defendants' assertions that "Iowa has had access to actual transaction prices for all Medicaid drug transactions" and that it had "access to purchase records in order to perform the SMAC calculations."  Motion at 8.  By its silence, Iowa admits that since 2001 it has been in possession of actual pharmacy acquisition cost information for all SMAC-subject drugs, and that it has relied on this information to set SMACs.

Because SMAC is calculated based on pharmacies' actual drug acquisition cost information and not reported prices such as AWP or WAC, Defendants' reported prices do not affect the SMAC, and therefore have no bearing on the amount paid by the State for any transactions reimbursed at SMAC.  Defendants therefore cannot be liable under any theory raised in the Complaint with respect to drugs reimbursed at SMAC.

DSMDB-2420968v01

IV.     **IOWA CANNOT BRING A CLAIM UNDER ITS CONSUMER FRAUD ACT ("CFA")**

Defendants do not deny that the Iowa Attorney General ("AG") is empowered to bring CFA suits; indeed, Iowa is the only state in the nation that does not permit a private right of action under its CFA,[3] so the Iowa AG is the *only* entity that may sue under the CFA. That said, it is critical to note that Iowa cannot point to *a single case* in which the Iowa AG has brought a CFA claim on behalf of the state or a State agency, nor identify a single case holding that the State of Iowa is a "person" or a "consumer" under the CFA for purposes of the recovery of damages. Iowa's CFA has been in its current form since at least 1977, yet we, too, could find no reported decision where Iowa has utilized the CFA to recover damages on its own behalf.[4]

The reason for this lack of authority is clear: the CFA specifically defines the class of "persons" and "consumers" who can be injured under the CFA, and the class does not include the State or any of its agencies.[5] And, as Iowa acknowledges, this case does not seek damages on behalf of consumers, only on behalf of the State. *See* Opposition at 10-17; *see also* Motion at 21-22. Iowa's CFA claim should be dismissed.

A.     **Iowa Is Not A "Person" Under the CFA**

In its Opposition, Iowa employs clever wordsmithing to try to show that the definition of "person" in the CFA was not meant to be exhaustive, or to exclude governmental bodies.

---

[3] *See* Press release of Iowa Attorney General Tom Miller at http://www.iowa.gov/government /ag/latest_news/releases/dec_2007/CR_Act.html ("Miller and a phalanx of advocates urged the Legislature to pass a 'Consumer Rights Act' giving Iowa consumers a 'private right of action' under the state's Consumer Fraud Act. Iowa is the only state that denies its citizens the right to file a private lawsuit under the state consumer fraud law.").

[4] Defendants likewise could find no cases where Iowa sought injunctive relief to prevent injury to the State. *See* §IV, D, *infra*.

[5] The Iowa AG apparently understands the consumer-specific nature of the CFA. *See generally* Press release of Iowa Attorney General Tom Miller at http://www.iowa.gov/government /ag/latest_news/releases/dec_2007/CR_Act.html (describing situations relevant to the CFA as including "home improvements, used car sales, car repairs, home mortgages," "door-to-door sales, purchases of goods like appliances and electronics, and charitable solicitations").

DSMDB-2420968v01

Iowa's efforts violate every canon of statutory construction.  The definition of "person" under the CFA, Iowa Code § 714.16(1)(j) (2007), differs from the general statutory definition of "person" at Iowa Code § 4.1(20) (2007).  The latter includes the State within the definition, but the former does not.  To read the two sections to mean the same thing would contradict Iowa Code § 4.7 (2007), which states that "[i]f a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both.  If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision."  The conflict between the two provisions at issue here is irreconcilable, and the general provision must yield to the CFA's more specific definition of "person," which excludes the State.[6, 7]

Iowa places great weight on the distinction between the words "means" and "includes."  Opposition at 12.  A review of the definitions section of the CFA suggests, however, that the Iowa Legislature used these terms interchangeably and for purposes of diction rather than to limit or modify any one definition.  *See* Iowa Code § 714.16(1).  Moreover, when the Iowa Legislature has intended to include the State or one of its agencies within a definition of "person," it has done so specifically.  *See, e.g.*, Iowa Code § 68A.102(17) (2007) ("'Person' means, without limitation, any individual, corporation, government or governmental subdivision or agency . . . .");  Iowa Code § 455B.171(16) (2007) (stating that person "means any agency of

---

[6] The Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"), upon which the Iowa CFA was modeled, has the very same definition of "person" as Iowa, also employing the use of the word "includes."  *See* Motion at 20 n.16.  Yet the Illinois courts have interpreted "person" not to include governmental entities, because they are omitted from the definition.  Motion at 20, (citing *Bd. of Educ. v. A, C & S, Inc.*, 546 N.E.2d 580, 598-99 (Ill. 1989)); *cf. Du Page Aviation Corp. v. Du Page Airport Auth.*, 594 N.E.2d 1334, 1342 (Ill. App. Ct. 1992).

[7] On April 18, 2008, the presiding judge in the Illinois AWP matter (Judge Flynn), ruling from the bench without written opinion, denied Defendants' motion to dismiss the Illinois CFDBPA claims.  Judge Flynn did not make any specific rulings with respect to the elements of the CFDBPA claims, nor did he consider whether the State's remedies are limited to injunctive relief, as opposed to actual damages.

DSMDB-2420968v01

the state or federal government or institution thereof, any municipality, governmental

subdivision"). Here, Iowa asks this Court to ignore rules of statutory interpretation by

inappropriately adding words to a statutory definition that the Legislature chose not to use. Iowa

law does not permit such re-drafting of a statute. *See State v. Tarbox*, 739 N.W.2d 850, 855

(Iowa 2007) ("'[W]e do not speculate as to the probable legislative intent apart from the words

used in the statute.' Second, we may not extend, enlarge, or otherwise change the meaning of a

statute under the pretext of construction." (citations omitted)).

Finally, Iowa courts recognize the principle that to extend coverage under a statute to

an entity not enumerated in the statute, that entity must be of the same class and type as the listed

entities in the statute. *See Teamsters Local Union No. 421 v. City of Dubuque*, 706 N.W.2d 709,

715-16 (Iowa 2005). According to the Supreme Court of Iowa, "[t]he rule recognizes and gives

effect to both the specific and general words [within a statute] by using the class indicated by the

specific words to extend the scope of the statute with the general words *to include additional*

*terms or objects within the class.*" *Id.* at 715 (emphasis added). Stated another way, to the

extent any unlisted entity can be considered a "person" within the scope of the CFA, it must be

of the same class and type as the other entities defined as a "person" in the CFA. The State of

Iowa bears no relationship to a "natural person," "company, trust, business entity or association,"

*see* Iowa Code § 714.16(1)(j), and therefore cannot be included within the CFA's definition of

"person."

B.    **"Liberal Construction" Of The CFA Is Designed To Protect Consumers,**
      **Not The State**

None of the cases claimed by Iowa to stand for the proposition that the CFA must be

liberally construed address whether the State is a "person," and all are easily distinguishable. In

*State ex rel. Turner v. Koscot Interplanetary, Inc.*, 191 N.W.2d 624, 630 (Iowa 1971) ("*Koscot*"),

the court simply adopted a liberal interpretation of the terms "fraud" and "fraudulent conduct" to

DSMDB-2420968v01

include pyramid-type schemes within the realm of the CFA's prohibitions.[8]  In *State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 597 (Iowa 2004), the court held that the definition of "person" in the CFA was not limited to Iowa residents but also includes citizens of other states.  The court in *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 530-31 (Iowa 2005), also considered the question of who is a "person" within the definition of the CFA, and reached the unremarkable conclusion that a commercial land developer who sold interests in a campground, granting people access to the land for recreation, was a "person" for CFA purposes.  To the extent these cases adopt a liberal interpretation of "person" or of the CFA generally, such an interpretation does not conflict with the principles of statutory construction described above or with the express words of the Iowa Legislature, which evidence the intent to exclude governmental bodies, including the State, from the definition of "person" in the CFA.

### C.    Iowa Is Not A "Consumer" Under The CFA

The CFA does not contain any language to support Iowa's assertion that the alleged wrong need only be "consumer-oriented," Opposition at 12, to fall within the prohibitions of the CFA.  Instead, the CFA specifically defines the "unlawful practices" prohibited by the CFA as practices directed towards "consumers."  Iowa Code § 714.16(1)(f) & (n) (defining deception and unfair practice).  Curiously, the State points to this Court's decision in the *Consol. NY Counties* case as indicative of how "consumer" should be defined under the *Iowa* CFA, *see* Opposition at 12-14, notwithstanding that the Iowa CFA differs significantly from that of New

---

[8] The scheme at issue in *Koscot* involved a process through which individuals seeking cosmetic merchandising positions were induced to pay money and buy products upon the assurance that they would receive a portion of the "buy-in" proceeds from others that they induced to purchase positions within the company.  The defendants in *Koscot* argued that this scheme did not fall within the prohibitions of the CFA.

DSMDB-2420968v01

York.  Similarly irrelevant is Iowa's definition of "consumer" under its tax laws.  *See* Opposition

at 13.

### D.      The State Cannot Recover Damages Under The CFA

Even if Iowa were correct that its AG is entitled to relief under § 7 of the CFA,[9] this

section would limit the State's remedies to injunctive relief.  The State is suing on its own behalf

and not on behalf of the citizens of the State or any other "person in interest."  Section 7

provides:

> A civil action pursuant to this section shall be by equitable proceedings.  If
> it appears to the attorney general that a person has engaged in, is engaging
> in, or is about to engage in a practice declared to be unlawful by this
> section, the attorney general may seek and obtain in an action in a district
> court a temporary restraining order, preliminary injunction, or permanent
> injunction prohibiting the person from continuing the practice or engaging
> in the practice or doing an act in furtherance of the practice.  The court
> may make orders or judgments as necessary to prevent the use or
> employment by a person of any prohibited practices, or which are
> necessary to restore to any *person in interest* any moneys or property, real
> or personal, which have been acquired by means of a practice declared to
> be unlawful by this section, including the appointment of a receiver in
> cases of substantial and willful violation of this section.

Iowa Code § 714.16(7) (emphasis added).  Thus, while the CFA allows the Iowa AG to seek the

return of monies or properties, that authority is limited to instances when the Iowa AG will

restore the money or property at issue to a "person."  As previously discussed, the State of Iowa

is not a "person" within the meaning of the CFA.  Accordingly, even if this Court were to find

that the Iowa AG does have the authority under the second sentence of § 7 to seek injunctive

relief, the AG could not recover any money or property because the State is not a "person."

*People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165 (Ill. 1992), cited by

the State, supports this conclusion.  *E & E Hauling* found that under § 7 of the Illinois CFDBPA,

the Illinois Attorney General has authority to seek injunctive relief against any practices declared

---

[9] For the reasons stated above and in the initial brief, Defendants do not concede this point, but
make this assumption only for purposes of argument herein.

DSMDB-2420968v01

unlawful under the CFDBPA.  *Id.* at 172 ("*Under section 7*, the Attorney General is not limited in regard to whose interests he may seek to protect under the Act." (emphasis added)); 815 Ill. Comp. Stat. 505/7 (2008).  However, the right to seek actual damages is found in § 10a(a) of the CFDBPA.[10]  815 Ill. Comp. Stat. 505/10a(a) (2008).  This distinction is important because *E & E Hauling* did not disturb the Illinois Supreme Court's previous holding in *Board of Education v. A, C. & S, Inc.*, 546 N.E.2d 580, 598-99 (Ill. 1989), that Illinois cannot seek actual damages under § 10a of the CFDBPA because Illinois is not a person.  Because the State of Iowa is not a person, at most the Iowa AG can sue under the CFA for injunctive relief under the *second* sentence of § 7 of the CFA.

Iowa's citation to *State ex rel. Miller v. Santa Rosa Sales & Marketing, Inc.*, 475 N.W.2d 210, 219 (Iowa 1991) ("*Santa Rosa*"), for the proposition that "recovery of damages by the state on behalf of itself in a consumer fraud action would be appropriate in certain circumstances," Opposition at 17, is inapt.  In *Santa Rosa*, the State sought to recover monies on behalf of citizens of Iowa who were victims of a Ponzi scheme related to the door-to-door sale of coins.  A fund from which victims were to be repaid had been created by the trial court, and on appeal one of the questions was whether unclaimed monies from this fund would escheat to the State or would be returned to the defendant.  In the context of concluding that there was no basis for ordering that the unclaimed portion of the restitution fund be distributed to the State, the court held: "This statutory language [in CFA § 714.16(7)] authorizes the attorney general to recover restitution for Iowa consumers.  However, there is no language in section 714.16 which gives authority to award unclaimed restitution funds to the State." *Santa Rosa*, 475 N.W.2d at 219.  The court later referred in passing to an Iowa Session Law from 1989 that permitted the

---

[10] In that way, § 7 of the CFDBPA is only analogous to the *second* sentence of § 7 of the Iowa CFA, while the authority to claim actual damages found in § 10a of the CFDBPA corresponds to the *third* sentence of § 7 of the Iowa CFA.

DSMDB-2420968v01

State to keep any monies it might recover from a "'civil consumer fraud judgment.'" *Id.*

(quoting 1989 Iowa Legis. Serv. (73 G.A.) H.F. 772 (ch. 316)).  This appropriations bill for the

justice system did not make any changes to the CFA, and what the *Santa Rosa* court is saying

about it is not altogether clear.  This factually unrelated case does not support the proposition

that the State is permitted to seek damages under the CFA.

## V.        THE COURT MAY CONSIDER THE PUBLIC RECORD IN THE CONTEXT OF MOTIONS UNDER FED. R. CIV. P. 9(b) AND 12(b)(6)

Although the standard of review on a motion to dismiss requires that a court consider

the facts in the light most favorable to the plaintiff, this standard does not require this Court to

turn a blind eye to facts in the public record that lend context to the allegations of the Complaint.

As demonstrated in Defendants' Motion, the public record here is important because it

demonstrates that Iowa had knowledge beyond that which it claims in the Complaint, and this

knowledge renders several of Iowa's claims defective.

Iowa argues that the Court must ignore the public record and assume true the State's

allegations that "despite government investigations as early as the 1990s, it has only recently

become clear that the extent of AWP inflation was understated."  Opposition at 5.  Nowhere in

its Opposition does Iowa explain how it can claim "recent" knowledge, when it clearly was

aware as early as 1986 that AWPs exceeded actual acquisition costs by a significant factor.  *See*

Motion at 5-12.[11]  The Iowa AWP action does not take place in a vacuum, but rather as part of an

MDL where there has been nearly six years of discovery and fact finding.  And, unlike in

*Consol. NY Counties*, the plaintiff here is the same entity that set the Medicaid reimbursement

---

[11] Remarkably, Iowa admits to having known that AWP did not represent actual transaction costs, *see* Opposition at 5, yet contends – contrary to its own understanding of the term and that of the other participants in the prescription drug market (as evidenced by the substantial public record) – that "AWP is to be construed according to its plain meaning, *to wit*, it is supposed to represent an average of the actual prices charged by wholesalers and/or paid by providers to wholesalers."  Compl. ¶ 93.

DSMDB-2420968v01

rates, so its knowledge is directly relevant.  The Court has discretion to consider the public

records cited by Defendants, many of which the Court has previously taken into account in

related litigation.

Case law makes clear that the Court may consider the public record.  *See Demick v.

City of Joliet*, 108 F. Supp. 2d 1022, 1025 (N.D. Ill. 2000) (court may take judicial notice of state

statutes); *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (court may

take judicial notice of records and reports of administrative bodies), *abrogated on other grounds*

*by Astoria Fed. Sav. & Loan Ass'n v. Solmino*, 501 U.S. 104 (1991).  As one court put it:

> "The general rule undoubtedly is that a court will not travel outside the
> record of the case before it in order to take notice of the proceedings in
> another case, even between the same parties and in the same court . . . .
> But in exceptional cases . . . the courts, in order to reach a just result, will
> make use of established and uncontroverted facts not formally of record in
> the pending litigation."

*French v. Chosin Few, Inc.*, 173 F. Supp. 2d 451, 457 (W.D.N.C. 2001) (citation omitted).

"Under Rule 201, this Court may take judicial notice of any fact 'either (1) generally known

within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned.' Fed. R.

Evid. 201(b)."  *Id.*

## VI.     IOWA'S FUL CLAIMS SHOULD BE DEFERRED UNTIL A DECISION IS MADE WITH RESPECT TO THE FUL CLAIMS IN THE *CONSOL. NY COUNTIES* LITIGATION

Iowa contends that this Court has permitted the FUL claims in the *Consol. NY*

*Counties* case to remain in that case.  Opposition at 24.  This is not entirely true.  The Court has

reserved judgment with respect to those claims pending the outcome of targeted discovery

focused on the FUL issue.  Likewise, judgment on the FUL claims should, at minimum, be

reserved here, pending the outcome of the *Consol. NY Counties* FUL discovery and briefing.

DSMDB-2420968v01

VII.   **DEFENDANTS RELY ON THEIR PRIOR ARGUMENTS WITH RESPECT TO IOWA'S BREACH OF CONTRACT, COMMON LAW FRAUD, AND UNJUST ENRICHMENT CLAIMS AND FILED RATE ARGUMENT**

Defendants have acknowledged this Court's prior adverse rulings in the breach of contract context, Motion at 15, but preserve this issue for appeal. Defendants reassert that under the more stringent test that should apply here, Iowa does not have the right to sue to enforce Medicaid Rebate Agreements. *See* Motion at 16-17. The intent of the manufacturers and HHS in entering the Rebate Agreements was to reserve enforcement powers against Manufacturers to HHS. This is evident through both the text of the Rebate Agreements, which reserve each of the various enforcement mechanisms to HHS, and the overall statutory scheme under which the parties entered into the Rebate Agreements. *Id.*[12]

In Defendants' Motion, we also argued that Iowa's common law fraud and unjust enrichment claims should be dismissed notwithstanding the Court's prior rulings. Motion at 22-25. Pursuant to the Court's March 6, 2008 directive, we are not repeating those arguments here; rather, we stand on our initial brief. We also preserve Defendants' filed rate argument.

VIII.  **IT IS ENTIRELY PROPER FOR THE COURT TO LIMIT DISCOVERY AT THIS JUNCTURE**

Iowa protests that it is inappropriate for the Court to limit the time period at issue in its Complaint. Opposition at 25. However, the Court need not consider this case in isolation from the MDL and thereby subject Defendants to discovery for time periods for which this Court has already determined, in related cases, that Defendants are not liable.

---

[12] The State's Fed. R. Civ. P. 60(b) argument is misplaced since the Rule applies only to final judgments in the context of the case in which the underlying decision was made. "Rule 60(b)'s primary purpose is to authorize the reopening of a *closed* case or a final order; however, a district court 'always ha[s] the power to modify earlier orders in a *pending* case' without relying on Rule 60(b)." *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993) (quoting *Kapco Mfg. Co. v. C & O Enters., Inc.*, 773 F.2d 151, 154 (7th Cir. 1985)).

DSMDB-2420968v01

## IX.      IT IS ENTIRELY PROPER FOR THE COURT TO LIMIT DISCOVERY TO DRUGS WITH A GREATER THAN THIRTY PERCENT SPREAD

Finally, it is likewise appropriate for the Court to remove from the case those drugs where the Complaint alleged a spread of less than thirty percent.  It would be a waste of time and resources to subject Defendants to discovery with respect to drugs that ultimately will not be included in the case.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully urge the Court to dismiss the identified claims in Iowa's Complaint.

| | |
|---|---|
| Dated:  April 18, 2008 | **/s/ J. Andrew Jackson**<br>J. Andrew Jackson<br>Tina D. Reynolds<br>Shamir Patel<br>**DICKSTEIN SHAPIRO LLP**<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br>Telephone:  (202) 420-2200<br>Facsimile:   (202) 420-2201<br><br>**/s/ Peter E. Gelhaar**<br>Peter E. Gelhaar (BBO #188310)<br>**DONNELLY, CONROY & GELHAAR, LLP**<br>One Beacon Street, 33rd Floor<br>Boston, MA 02108<br>Telephone: (617) 720-2880<br>Facsimile:  (617) 720-3554<br><br>Counsel for Defendants Baxter Healthcare Corporation and Baxter International Inc. and on behalf of:<br><br>Abbott Laboratories, Inc.<br>Agouron Pharmaceuticals, Inc.<br>Alpharma, Inc.<br>ALZA Corporation<br>Amgen Inc.<br>AstraZeneca LP<br>AstraZeneca Pharmaceuticals, LP<br>Aventis Behring LLC (n/k/a ZLB Behring LLC)<br>Aventis Pharmaceuticals, Inc. |

DSMDB-2420968v01

| | |
|---|---|
| | Barr Laboratories, Inc. |
| | Baxter Healthcare Corporation |
| | Baxter International Inc. |
| | Bayer Corporation |
| | Bayer Pharmaceuticals Corporation |
| | Ben Venue Laboratories, Inc. |
| | Boehringer Ingelheim Corporation |
| | Boehringer Ingelheim Pharmaceuticals, Inc. |
| | Bristol-Myers Squibb Company |
| | Chiron Corporation |
| | Dey, Inc. |
| | Dey, L.P. |
| | Eli Lilly and Company |
| | Endo Pharmaceuticals Inc. |
| | Ethex Corporation |
| | Ethicon, Inc. |
| | Forest Laboratories |
| | Forest Pharmaceuticals, Inc. |
| | Geneva Pharmaceuticals, Inc. |
| | Greenstone LTD. |
| | Hoffmann-La Roche Inc. |
| | Immunex Corporation |
| | Ivax Corp. |
| | Ivax Pharmaceuticals, Inc. |
| | Janssen L.P. |
| | Johnson & Johnson |
| | King Pharmaceuticals, Inc. |
| | King Research and Development |
| | McNeil-PPC, Inc. |
| | MedImmune, Inc. |
| | Merck & Co., Inc. |
| | Monarch Pharmaceuticals, Inc. |
| | Mylan Laboratories Inc. |
| | Mylan Pharmaceuticals Inc. |
| | Novartis Pharmaceuticals Corporation |
| | Novopharm USA, Inc. |
| | Oncology Therapeutics Network Corporation |
| | Ortho-Biotech Products, L.P. |
| | Ortho-McNeil Pharmaceutical, Inc. |
| | Par Pharmaceutical Companies, Inc. |
| | Par Pharmaceutical, Inc. |
| | Pfizer Inc. |
| | Pharmacia Corporation |
| | Purdue Pharma L.P. |
| | Purepac Pharmaceutical, Co. |
| | Roche Laboratories Inc. |
| | Roxane Laboratories, Inc. (N/K/A Boehringer Ingelheim Roxane, Inc.) |
| | Sandoz Inc. |

DSMDB-2420968v01

| | |
|---|---|
| | Schering Corporation |
| | Schering-Plough Corp. |
| | Sicor, Inc. |
| | SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") |
| | TAP Pharmaceutical Products Inc. |
| | Teva Pharmaceuticals USA, Inc. |
| | UDL Laboratories, Inc. |
| | Warrick Pharmaceuticals Corporation |
| | Watson Pharma, Inc. |
| | Watson Pharmaceuticals, Inc. |
| | Wyeth |
| | Wyeth Pharmaceuticals, Inc. |

DSMDB-2420968v01

## CERTIFICATE OF SERVICE

I hereby certify that I, Shamir Patel, an attorney, caused a true and correct copy of the foregoing, MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' REPLY TO IOWA'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, to be delivered to all counsel of record by electronic service via LexisNexis File & Serve, on April 18, 2008, for posting and notification to all parties.

/s/ Shamir Patel_____
Shamir Patel
**DICKSTEIN SHAPIRO LLP**
1825 Eye Street NW
Washington, DC 20006-5403
Telephone: (202) 420-2200