UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: *State of Iowa v. Abbott Laboratories, et. al.* | CIVIL ACTION: 01-CV-12257-PBS  Judge Patti B. Saris |

### DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.'S REPLY TO THE STATE'S OMNIBUS OPPOSITION TO VARIOUS DEFENDANTS' INDIVIDUAL MOTIONS TO DISMISS

The State of Iowa ("the State") is correct when its concedes, in its opposition at page 13, that its Lupron®-related claims against Defendant TAP Pharmaceutical Products Inc. ("TAP") are barred through December 3, 2001. But it has not gone far enough. Instead, it seeks to avoid the inevitable dismissal[1] of its post-December 3, 2001 Lupron®-related claims by asserting that the State is not a TPP Class Member because it was not "at risk by contract" to pay for Lupron® purchases. The State similarly hopes to escape the effect of its receipt since 2001 of Average Sale Price ("ASP") information for all of TAP's drugs, which completely undercuts its remaining Prevacid®-related AWP fraud claims.

### ARGUMENT

**A.   The State's Lupron® Claims Are Barred.**

The State's sole argument that it does not fall within the definition of "Releasors," within the 2005 Settlement is that "all reimbursements at issue were [made] pursuant to the State of Iowa's Medicaid Statute" and not by a contract. It is true that Medicaid reimbursements by the State are made under the Medical Assistance statute, Iowa Code §249A, *et seq.* (1967). More specifically, reimbursements are made pursuant to the regulations authorized under the statute.

---

[1] Notably, in all other AWP cases in which TAP is a defendant, excluding the New York Consolidated Counties case, Plaintiffs' counsel has recognized that Lupron® claims are off the table because of both the 2001 and 2005 settlement agreements. Only Iowa and the New York Consolidated Counties advance this frivolous argument.

*See, e.g.,* Iowa Admin. Code §441-77-80 (1970). Before providers, such as the pharmacies reimbursed by the State, can participate in the State Medicaid Program, however, they must enter into a Medicaid Provider Agreement with the Iowa Department of Human Services ("DHS"), the State agency that administers the State Medicaid program. *See* Iowa Admin. Code §441-79.6 (1970). In exchange for a provider's agreement to comply with various requirements, DHS agrees to "pay for medically necessary goods and/or services actually and properly provided to the Department-enrolled Medicaid member." *See* Medicaid Provider Agreement, ¶ 2.1 at http://www.ime.state.ia.us/Providers/Enrollment.html, sample attached as Exh. 1.

Thus, by virtue of the Medicaid Provider Agreement, the State is a TPP Class Member because it is "a governmental entity that was at risk by contract to pay all or part of the cost of Lupron$^®$." (Exh. C to TAP Motion to Dismiss, at ¶2(ll)) As such, the 2005 Settlement is applicable to the claims at issue here.

The State does not and cannot otherwise take issue with the fact that it was part of the class and has released its Lupron$^®$-related claims.[2] The State fits squarely within the class definition: "All individuals or entities who, during the Class Period, [January 1, 1985 through March 31, 2005], made Lupron$^®$ Purchases..." (*Id.* at ¶1) According to its complaint, the State made Lupron$^®$ Purchases during the relevant time period which are defined as "payment or reimbursement, direct or indirect, for all or part of the cost of Lupron$^®$ prescribed, provided or administered in the United States." (*Id.* at ¶2(t)) The State was not among the group of class members who "opted-out" of the class. (Exh. A to the Final Order and Judgment attached to TAP Motion to Dismiss as Exh. B) Therefore, inclusion in the class makes the State a Releasor

---

[2] Curiously, the State claims that the 2005 Settlement does not apply to it because it "relates to consumer claims and non-Medicaid third party payors." The Settlement is in no way so limited but rather covers all claims that could have been brought based on Lupron$^®$ transactions where the cost or price of Lupron$^®$ was based on AWP or any other price or product published by the pricing compendia. Exh. C to TAP Motion to Dismiss, at ¶2 (y).

CHI-1642623v3

of TAP as to Lupron®-related claims under the release provisions of the Class Agreement. (Exh. B to TAP Motion to Dismiss at ¶10; Exh. C to TAP Motion to Dismiss at ¶2(y))

Moreover, insofar as it is attempting to prosecute Lupron®-related claims in this action, the State is in direct violation of the permanent injunction issued by Judge Stearns in his August 26, 2005 Order. (Exh. B to TAP's Motion To Dismiss, ¶18) The State has released its Lupron®-related claims and has been specifically enjoined from continuing to prosecute them. There can be no alternative but to dismiss these claims.

### B. The State Cannot Pursue Fraud Claims Related to Prevacid®.

The Prevacid® claims against TAP should be dismissed based on the State's knowledge and inaction in the face of its receipt since the last quarter of 2001 of ASPs for Prevacid®. The State argues that the Prevacid® claims against TAP cannot be dismissed because Prevacid® was not addressed in the 2001 Settlement. TAP does not argue that the 2001 Settlement *per se* bars the State's Prevacid® claims.[3] The Prevacid® claims should be dismissed because of the State's knowledge and inaction as a result of the ASP reports that TAP provided the State, the Centers for Medicare and Medicaid Services and First DataBank pursuant to the 2001 Settlement. Pursuant to the 2001 Settlement Agreement the State requires TAP to provide it with the ASPs for its products. The State cannot now claim that it was defrauded by the compendia's publication of AWPs for Prevacid®, when it received ASPs for Prevacid® prices directly from TAP. While the State has received ASPs for six years, it has not changed its reimbursement methodology from an AWP-based methodology to an ASP-based one. This demonstrates that

---

[3] The State erroneously cites to the *Suffolk II*, 2004 WL 2387125 (D. Mass) opinion and the June 16, 2006 oral arguments as rejecting the argument that providing ASP information to the State bars the State's fraud claims. This is clearly wrong. In the *Suffolk II* opinion and in oral arguments, this Court decided whether the State's Cipro claims against Bayer were barred by the Bayer 2001 Settlement Agreement itself. During oral arguments the fact that Bayer had provided ASP information to the County was mentioned but the Court in no way appears to have considered the matter in reaching its decision. TAP is not arguing that the TAP 2001 Settlement Agreement itself bars the State's Prevacid® claims. Rather those claims should be dismissed because the State cannot state a claim for fraud when it knew the true prices of Prevacid® as a result of the provision in the TAP 2001 Settlement Agreement that required TAP to provide ASP information to the State.

CHI-1642623v3

- 4 -

the State would not have done anything differently if it had had the true prices all along. Even if the State's allegations are true (which TAP does not concede) and are construed in the light most favorable to the State, the State still cannot proceed on a theory of fraud when it knew the truth but did nothing differently. *See IBP, Inc. v. FDL Foods, Inc.*, 19 F. Supp.2d 944 (N.D. Iowa 1998); *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1093 (1st Cir. 1989).

Accordingly, for the foregoing reasons and for the reasons set forth in TAP's Supplemental Memorandum In Support of the Defendants' Motion to Dismiss and the Defendants' Memorandum of Law in Support of Certain Defendant's Motion to Dismiss the Complaint, in which TAP has joined, TAP respectfully requests that this Court dismiss with prejudice all claims related to Lupron® and Prevacid® in the Complaint.

- 5 -

Dated: April 18, 2008

Respectfully submitted,

DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.


/s/ Toni-Ann Citera
Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, NY 10017
Telephone:    (212) 326-3939
Facsimile:    (212) 326-8585

Lee Ann Russo
Rachael E. Philbin
JONES DAY
77 W. Wacker St., Suite 3500
Chicago, IL 60601-1676
Telephone:    (312) 782-3939
Facsimile:    (312) 782-8585

Chris B. Green
Duncan, Green, Brown & Langeness P.C.
400 Locust Street, Suite 380
Des Moines, IA 50309
Telephone:    (515) 288-6440
Facsimile:    (515) 288-6448

# EXHIBIT 1

CHI-1642623v3

# IOWA DEPARTMENT OF HUMAN SERVICES
# IOWA MEDICAID ENTERPRISE

## Iowa Medicaid Provider Agreement

This is a Provider Agreement for participation in Title XIX of the Social Security Act (as amended) and the State funded medical assistance program known as the Iowa Medicaid Program. This Agreement is between the State of Iowa, Department of Human Services, (the "Department") and the undersigned [Provider, Group Provider and its members or Practitioner(s)] (the "Provider"). The operations management responsibility for the Iowa Medicaid Program is through the Iowa Medicaid Enterprise (the "IME"). This agreement is effective upon acceptance by the Department, which shall be signified by the IME noting in its electronic files that the agreement has been accepted and the Provider is permitted to submit claims to Iowa Medicaid. On its effective date, this Agreement supersedes and replaces any existing contracts between the parties related to the provision of health care goods and/or services to recipients of the Iowa Medicaid Program. The term of this Agreement shall be six (6) years from the effective date, unless terminated earlier in accordance with the terms of this Agreement.

**Section 1. Provider Agrees:**

1.1 To adhere to professional standards and levels of service as set forth in all applicable local, State and federal laws, statutes, rules and regulations as well as administrative policies and procedures set forth by the Department relating to the Provider's performance under this Agreement and to indemnify and defend the Department from all negligent or intentional acts of the Provider, its agents and employees with the exception of State-owned facilities and providers covered by Iowa Code ch. 669 (State Tort Claims) entering into this Agreement.

1.2 For Providers subject to this provision, agree to abide by the provisions of Title VI of the Civil Rights Act of 1964 as amended (42 U.S.C. 2000e), which prohibits discrimination against any employee or applicant for employment or an applicant or recipient of services, on the basis of race, religion, color, national origin, age or sex. In addition, Providers subject to this provision agree to abide by the requirements in accordance with the terms of Section 504 of the Rehabilitation Act of 1973, (29 U.S.C. § 794) as well as the terms, conditions and requirements of Americans with Disabilities Act of 1990 (P.L. 101-336), 42 U.S.C. 12101, and regulations adopted hereunder contained in 28 CFR §§ 36.101 through 36.999, inclusive which prohibit discrimination against disabled persons. Further, Provider agrees to abide by the terms, conditions and requirements of the Health Insurance Portability and Accountability Act (HIPAA) of 1996 and adopted hereunder contained in 45 CFR 160 and 164, Iowa Code § 217.30 (Medicaid patient confidentiality), and 441 Iowa Admin. Code ch. 9 (Public Records & Fair Information Practices).

1.3 To comply with applicable Federal, State and local laws, regulations, rules, and orders when performing services under the Agreement, including without limitation, all laws applicable to the prevention of discrimination in employment, and business permits and licenses that may be required to perform services under the Agreement.

1.4 To comply with all applicable Federal and State laws, rules and written policies to the Iowa Medicaid program, including but not limited to Title XIX of the Social Security Act (as amended), the Code of Federal Regulations (CFR), the provisions of the Code of Iowa and rules of the Iowa Department of Human Services and written Department policies, including but not limited to policies contained in the Iowa Medicaid Provider Manual, and the terms of this Agreement. This section neither creates nor negates due process rights of either party.

1.5 To comply, as of December 1, 1991 and throughout the term of this Agreement, with the applicable advance directive requirements for hospitals, nursing facilities, providers of home health care and personal care services, hospices and HMOs specified in 42 CFR 489, subpart I, and 417.436. For hospital, facility

and home health agency providers, the Provider shall provide all recipients with written information regarding their rights to make health care decisions, including the right to accept or refuse treatment and the right to execute advance directives (durable power-of-attorney for health care decisions and declarations).

1.6  To comply with the disclosure requirements specified in 42 CFR, Part 455, Subpart B, including but not limited to disclosure of information regarding ownership and control, business transactions and persons convicted of crimes. Upon request, the Provider agrees to provide to the Department and the U.S. Department of Health and Human Services the information required in 42 U.S.C.A. §1396b(s) pertaining to limitations on certain physician referrals. The Department must terminate an existing Provider Agreement if a Provider fails to disclose ownership or control information as required by Federal law.

1.7  To comply with Section 6032 of the Deficit Reduction Act of 2005, codified at 42 U.S.C. § 1396a(a)(68), and the requirements of the False Claims Act. Providers subject to this provision are responsible for developing written policies for all employees that include detailed information about the False Claims Act and the other provisions named in 42 U.S.C. §1396a(a)(68). Providers subject to this provision shall include in those written policies detailed information about its policies and procedures for detecting and preventing waste, fraud, and abuse. Providers subject to this provision shall also include in any employee handbook a specific discussion of the laws described in the written policies, the rights of employees to be protected as whistleblowers and a specific discussion of the provider's policies and procedures for detecting and preventing fraud, waste, and abuse.

1.8  To comply with those Federal requirements and assurances for recipients of Federal grants provided in OMB Standard Form 424B (4-88) applicable to the Provider. The Provider is responsible for determining which requirements and assurances are applicable to the Provider. The Provider shall provide for the compliance of any subcontractors with applicable Federal requirements and assurances. The provider, as provided by 31 U.S.C. §1352 and 45 CFR 93.100 et seq., shall not pay Federally appropriated funds to any person for influencing or attempting to influence an officer or employee of any agency, a member of the U.S. Congress, an officer or employee of the U.S. Congress, or an employee of a member of the U.S. Congress in connection with the awarding of any Federal contract, the making of any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement.

1.9  To be aware of and acknowledge that payment of claims will be from Federal and State funds and that any falsification or concealment of a material fact may be prosecuted under Federal and State law.

1.10  To meet, on a continuing basis, the State and Federal licensure, certification or other regulatory requirements for Provider's specialty, including all provisions of the State of Iowa Medical Assistance law, or any rule or regulation promulgated pursuant thereto.

1.11  [For Provider Groups Only]: To warrant that the group has authority to bind all member providers to this contract; to provide the Department with names of practitioners in the group with proof of current licensure for each practitioner; to provide name(s) of individual(s) with authority to sign billings on behalf of the group; and to provide each member Provider with a copy of this Agreement.

**Section 2. Reimbursement**

2.1  The Provider acknowledges that this Agreement is based on the Provider's performance of the services contemplated hereunder. Department agrees to pay for medically necessary goods and/or services actually and properly provided to the Department-enrolled Medicaid member. All such goods and/or services must have been rendered by Provider in accordance with Federal and State law and the State policies and procedures set forth in the Iowa Medicaid Provider Manual. Financial obligations of the State of Iowa are contingent upon funds for that purpose being appropriated.

2.2  The Provider agrees to pursue the recipient's other health coverage prior to submitting a claim for goods and/or services to the IME. This includes but is not limited to Medicare, private insurance, medical benefits provided by employers and unions, worker compensation and any other third party insurance.

2.3 The Provider shall accept payment from the Department (and any applicable co-pay) as payment in full on behalf of the recipient, and agrees not to bill, retain or accept payments for any additional amounts except as provided for in paragraph 2.2 above; to immediately repay the Department in full for any claims where the Provider received payment from another party after being paid by the Department. In the event that the Provider owes the State any sum under the terms of this Agreement, any other Agreement, pursuant to any other debt subject to the law of set off, the State may set off the sum owed to the State against any sum owed by the State to the Provider in the State's sole discretion, unless otherwise required by law. The Provider agrees that this provision constitutes proper and timely notice under the law of set off.

2.4 The Department may withhold payments, in whole or in part, upon receipt of reliable evidence of fraud or willful misrepresentation as specified in 42 CFR 455.23. Department shall fully document the reliable evidence it evaluated in making a decision to withhold payment. If the Department has evidence of fraud or willful misrepresentation on the part of the Provider, the Department may notify the Provider of the temporary suspension of this Agreement. If Provider has been notified of the temporary suspension of this Agreement, Provider may not bill for services rendered to eligible recipients during the period of the suspension.

**Section 3. Notices**

All written notices or communication shall be deemed to have been given when delivered in person; or, if sent to address on file by first-class United States mail, proper postage prepaid.

Provider shall notify the Department and/or IME within five (5) days of knowledge of any of the following.

3.1 Any action which may result in the suspension, revocation, condition, limitation, qualification or other material restriction on a Provider's licenses, certifications, permits or staff privileges by any entity under which a Provider is authorized to provide goods and/or services; indictment, arrest or conviction for a felony or for any criminal charge.

3.2 Change in address or addition to or removal of practitioners or any other information pertinent to the receipt of Department Funds.

3.3 Change in ownership and to fully disclose terms of sales agreement.

**Section 4. Records**

4.1 The Provider shall maintain books, records and documents which sufficiently and properly document and calculate all charges billed to the Department throughout the term of this Agreement for a period of at least five (5) years following the date of final payment or completion of any required audit. Records to be maintained include both financial records and service records. The Provider shall permit the Auditor of the State of Iowa or any authorized representative of the State and where federal funds are involved, the Comptroller General of the United States or any other authorized representative of the United States government, to access and examine, audit, excerpt and transcribe any directly pertinent books, documents, papers, electronic or optically stored and created records or other records of the Provider relating to orders, invoices or payments or any other documentation or materials pertaining to this Agreement, wherever such records may be located. The Provider shall not impose a charge for audit or examination of the Provider's books and records.

4.2 The Department is a covered entity as defined in the Health Insurance Portability and Accountability Act (HIPAA) of 1996. Accordingly, the Department complies with the HIPAA Privacy Regulations promulgated in 45 CFR 160 and 164. Provider will furnish protected health information about potential or current Medicaid members consistent with HIPAA and other confidentiality laws.

Access to Confidential Information. The Provider's employees, agents and subcontractors may have access to confidential data maintained by the Department to the extent necessary to carry out its responsibilities

under the Agreement. The Provider shall presume that all information received pursuant to this Agreement is confidential unless otherwise designated by the Department. Provider policies of confidentiality shall address, as appropriate, information conveyed in verbal, written, and electronic formats. The Provider must designate one individual who shall remain the responsible authority in charge of all data collected, used, or disseminated by the Provider in connection with the performance of the Agreement. The Provider shall provide adequate supervision and training to its agents, employees and subcontractors to ensure compliance with the terms of this Agreement. The private or confidential data received from the Department shall remain the property of the Department at all times.

Reporting of Unauthorized Disclosure. The Provider shall immediately report to the Department any unauthorized disclosure of confidential information.

Survives Termination. The Provider's obligation under subpart 4.2 of this Agreement shall survive termination of this Agreement.

4.3   Provider shall maintain adequate medical, financial and administrative records as stated in the Iowa Medicaid Provider Manual relating to all goods and/or services rendered by Provider under this Agreement. In order to perform its utilization management, quality improvement activities, audits and fraud control unit activities, the Department and/or the IME, Federal employees, and/or authorized representatives shall be given access to the business or facility and all related recipient information and records, including claims records, and information regarding payments claimed by the provider for furnishing services under this Agreement. The provider shall provide copies of such records free of charge and in a timeframe consistent with 441 IAC 79.3 or as otherwise agreed to by Provider and the Iowa Medicaid Program.

4.4   The Provider shall permit the State, Federal government, or any other duly authorized agent to monitor all activities conducted by the Provider pursuant to the terms of this Agreement. This includes, but is not limited to conducting site visits, conducting quality control reviews, reviewing contract compliance, assessing management controls, assessing the Agreement services and activities, and providing technical assistance. This section neither creates nor negates due process rights of either party.

**Section 5. Miscellaneous**

5.1   Incorporation of Documents. Both parties mutually agree that the Department Provider Enrollment Application submitted and signed by the Provider is incorporated by reference into this Agreement and is a part hereof as though fully set forth herein. The Provider agrees to notify the Iowa Medicaid Enterprise Provider Services Unit, P.O. Box 36450, Des Moines, IA 50315 within 30 days of a change in any of the information in the Provider Enrollment Application.

5.2   Independent Contractor. The Provider assures the Department that the Provider is an independent contractor providing goods and/or services paid for by the Department and that neither the Provider nor any of the Provider's employees, agents and any subcontractors performing under this Agreement are employees or agents of the State of Iowa or any agency, division or department of the State. Neither the Provider nor its employees shall be considered employees of the Department or the State of Iowa for federal or state tax purposes. The Department will not withhold taxes on behalf of the Provider (unless required by law). The Provider is solely responsible for and shall meet all legal requirements, including payment of all applicable taxes, workers compensation, unemployment and other premiums, deductions, withholdings, overtime and other amounts, which may be legally required with respect to the provider, and the employment of all persons providing goods and/or services under this Agreement.

5.3   Certification Regarding Sales and Use Tax. By executing this Agreement, the Provider certifies it is either (a) registered with the Iowa Department of Revenue, collects, and remits Iowa sales and use taxes as required by Iowa Code chapter 423; or (b) not a "retailer" or a "retailer maintaining a place of business in the state" as those terms are defined in Iowa Code subsections 423.1(42) & (43). The Provider also acknowledges that the Department may declare the Agreement void if the above certification is false. The Provider also understands that fraudulent certification may result in the Department or its representative filing for damages for breach of contract.

5.4     Assignment/Change of Control. This contract may not be assigned, transferred or conveyed in whole or in part without the prior written consent of the other party. For the purpose of construing this clause, a transfer of a controlling interest in the Provider shall be considered an assignment.

5.5     Choice of Law and Forum. The laws of the State of Iowa shall govern and determine all matters arising out of or in connection with this Agreement without regard to the choice of law provisions of Iowa law. In the event of any proceeding of a quasi-judicial or judicial nature is commenced in connection with this Agreement, the exclusive jurisdiction for the proceeding shall be brought in Polk County District Court for the State of Iowa, Des Moines, Iowa or in the United States District Court for the Southern District of Iowa, Central Division, Des Moines, Iowa wherever jurisdiction is appropriate. This provision shall not be construed as waiving any immunity to suit or liability including without limitation sovereign immunity in State or Federal court, which may be available to the Department or the State of Iowa.

5.6     Drug Free Workplace. The Provider shall provide a drug free workplace in accordance with the Drug Free Workplace Act of 1988 and all applicable regulations.

5.7     Not a Joint Venture. Nothing in this Contract shall be construed as creating or constituting the relationship of a partnership, joint venture, (or other association of any kind or agent and principal relationship) between the parties hereto. Each party shall be deemed to be an independent contractor contracting for services and acting toward the mutual benefits expected to be derived herefrom. No party, unless otherwise specifically provided for herein, has the authority to enter into any contract or create an obligation or liability on behalf of, in the name of, or binding upon another party to this Agreement.

5.8     Severability. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement.

5.9     Third Party Beneficiaries. There are no third-party beneficiaries to this Agreement. This Agreement is intended only to benefit the State, the Department and the Provider.

**Section 6. Termination**

6.1     The Provider may terminate this Agreement at any time. Payments will be made for goods and/or services rendered up to and including the date of termination. The Provider will promptly supply all information necessary for the reimbursement of any outstanding claims.

       This Agreement shall remain in full force and effect to the end of the specified term or until terminated or canceled pursuant to rules published by the Department. All obligations of the Department and the Provider incurred or existing under this Agreement as of the date of expiration, termination or cancellation will survive the termination, expiration or conclusion of this Agreement.

6.2     The Department may terminate this Agreement, upon thirty (30) days written advance notice to the Provider of goods and/or services after it has determined:

- The Provider of goods and/or services is not substantially complying with the provision of the Agreement as set forth herein; or,

- The Provider of goods and/or services has not submitted any claims for goods and/or services rendered to recipients of the Iowa Medicaid program for a period of twelve (12) months. In such cases, the Department will notify the provider of goods and/or services that unless the Provider notifies the Department within a period of thirty (30) days from receipt of such notice, the Department will assume that the Provider of goods and/or services wishes to voluntarily terminate its participation in the Iowa Medicaid Program.

470-2965 (Rev. 7/07)

6.3     The Department may terminate this Agreement in accordance with 441 IAC 79.2.

6.4     The Department may terminate this Agreement immediately after it has determined the Provider's State license or certification under Title XVIII of the Social Security Act (Medicare) has been terminated or suspended by a competent authority.

IN WITNESS WHEREOF, in consideration of the mutual covenants set forth above and for other goods and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties have entered into the above Agreement and have caused their duly authorized representatives to execute this Agreement.

**PROVIDER:**

PROVIDER BUSINESS ENTITY NAME: _____
                                                    [Type or Print Name]

FEDERAL TAX ID #: _____

AUTHORIZED OFFICIAL'S NAME: _____
                                                   [Type or Print Name]
TITLE: _____

AUTHORIZED OFFICIAL'S SIGNATURE: _____

DATE: _____

470-2965 (Rev. 7/07)

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2008, a true and correct copy of DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.'S REPLY TO THE STATE'S OMNIBUS OPPOSITION TO VARIOUS DEFENDANTS' INDIVIDUAL MOTIONS TO DISMISS was served upon all counsel of record by electronic service, by causing a copy to be sent to Lexis/Nexis for posting and notification.

          s/ Rachael E. Philbin
          Attorney for Defendant TAP Pharmaceutical Products Inc.