**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: *State of Iowa v. Abbott Laboratories., et. al.* | Judge Patti B. Saris |

### DEFENDANT ENDO PHARMACEUTICALS INC.'S REPLY BRIEF IN SUPPORT OF ITS INDIVIDUAL MOTION TO DISMISS THE COMPLAINT OF THE STATE OF IOWA

Defendant Endo Pharmaceuticals Inc. ("Endo") submits this reply memorandum in support of its motion to dismiss the Complaint of the State of Iowa.

**I.   PLAINTIFF FAILS TO PLEAD THE REQUISITE ELEMENTS OF FUL FRAUD**

As set forth in Defendant Endo Pharmaceuticals Inc.'s Individual Motion to Dismiss the Complaint of the State of Iowa and Memorandum of Law in Support Thereof, Plaintiff fails to plead that, for each FUL-subject Endo NDC named in the Complaint, i) the drug formulation was rated as therapeutically equivalent,[1] and ii) the NDC was sold in the most common package size. Plaintiff concedes that both elements must be satisfied for a drug product to be eligible to set the FUL.[2] Because Plaintiff fails to plead those elements, it fails to allege that "defendants

---

[1] The regulation governing calculation of the FUL states that the FUL will be calculated from prices for those drug formulations that "have been evaluated as therapeutically equivalent in the most current edition of [the FDA] publication, Approved Drug Products with Therapeutic Equivalence Evaluations [(the "Orange Book")]." 42 C.F.R. § 447.332.

[2] "The State of Iowa alleges that CMS set the FUL based on reported prices for therapeutically equivalent drugs that can be purchased in the most common package size, typically quantities of 100 tablets." State Of Iowa's Omnibus Opposition To Various Defendants' Individual Motions To Dismiss ("Opposition") at 7.

submitted false or inflated published prices which, if truthful, would likely have affected the FUL." *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 402, 405 (D. Mass. 2007).

Plaintiff contends that it has sufficiently pleaded FUL fraud against Endo. That contention should be rejected. In support of its contention, Plaintiff asserts that its Complaint alleges that "all Endo drugs in the complaint and in Exhibit [B]-13 that were subject to FUL reimbursement were therapeutically equivalent." Opposition at 7. Plaintiff is wrong. The paragraph it cites in support of this assertion states only: "[g]iven that the FUL is set at 150% of the lowest reported price per unit for therapeutic bioequivalents, a comparison of the unit price for Endo drugs to the applicable FUL reveals the false and misleading nature of Endo's wholesale price information." Complaint at ¶ 367. The Complaint does not allege that Endo's drugs are therapeutic equivalents, but rather, recites a portion of the FUL-setting formula, and summarily states that a comparison of Endo's price to the FUL reveals improper pricing. The Complaint fails to allege that any Endo NDCs were eligible to have affected the FUL and should, therefore, be dismissed.

Plaintiff next addresses the quantity criteria, and contends that the Complaint adequately alleges that "had Endo reported accurate prices for that drug, the FUL reimbursement for that drug, and all NDCs applicable thereto, would have been less."[3] (emphasis in original). While this contention may be facially correct, it is misleading. Prices are not published for "drugs," but rather, for NDCs. If by "that drug," Plaintiff means all Endo NDCs of the same chemical makeup and strength, then Plaintiff is correct that the one single NDC within "that drug" that is

---

[3] Plaintiff's assertion that a FUL, once set, would apply to NDCs of other package sizes, is not in dispute.

eligible to set the FUL may have affected the FUL reimbursement for the other, ineligible, NDCs. Plaintiff's contention that "the pricing for Endo's 100 mg [sic] or most commonly available package size resulted in a false FUL being set for that drug," *id.* at 7-8, concedes that only one Endo NDC for a drug, that which is sold in the most commonly available package size, is eligible to set the FUL. Because Plaintiff concedes that the FUL is set from a single NDC,[4] and not from a "drug," those NDCs that are not sold in the most commonly available package size are ineligible to set the FUL. Therefore, the Complaint is deficient as to all Endo NDCs sold in quantities other than the most commonly available package size. Because Plaintiff fails to specify the most commonly available package size for each drug, whether it be a quantity of 100 or otherwise, Plaintiff's allegations as to all FUL-subject Endo NDCs should be dismissed.

## II.   PLAINTIFF FAILS TO ALLEGE ANY SPECIFIC MISREPRESENTATIONS MADE BY ENDO

Plaintiff asserts fraud-based allegations but fails to allege the content of any misrepresentation made by Endo. Therefore, Plaintiff's Complaint fails to meet the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

In a pleading deficiency unique to Endo among the named Defendants, Plaintiff fails to allege that Endo reported any false AWP information. Rather, Plaintiff alleges that Endo reported WAC prices, and did so "in order to inflate the published AWPs for its products." Complaint at ¶ 363. Yet, the Complaint fails to identify any WAC information reported by Endo. The Complaint also fails to allege how any purportedly false WAC information caused inflated AWPs to be published for Endo's products. Plaintiff alleges generally that AWPs are

---

[4] *See also* Complaint at ¶ 108 ("In each example of 'FUL fraud' set forth in Exhibit B, Iowa alleges that defendant's true price (or the 'actual acquisition cost' 'ACC') *for the NDC* at issue was more than 50% lower than the established FUL. Had the defendant reported its true price *for that NDC*, the operative FUL would have been based on that defendant's true price and would have been lower than it was.") (emphasis added).

-3-

"often" set pursuant to a standard formula based on WAC, but the Complaint does not assert that any such standard formula was applied to the WACs allegedly reported by Endo and, if so, what percentage mark-up was applied.  *See* Complaint at ¶ 91.

Plaintiff contends that it need not state with particularity the actual misrepresentations made by Endo because 1) the Complaint alleges that Endo's drugs were purchased by Plaintiff, and 2) the Complaint alleges a "fraudulent AWP calculated on a good faith basis, together with a spread."  Opposition at 8 (*citing In re Pharm. Indus. Average Wholesale Price Litig.*, 2007 WL 1051642, at *15 (D. Mass. Apr. 2, 2007) ("*New York Counties I*")).

Plaintiff's contention that its allegations meet the particularity requirements of Rule 9(b) should be rejected.  By requiring the identification of a "*fraudulent* AWP," this Court required Plaintiff to state with particularity an AWP that was inflated due to fraud.  *New York Counties I*, 2007 WL 1051642, at *15 (emphasis added).  An essential element of a fraud claim is the making of a false statement by the defendant and Rule 9(b) requires that allegations of fraud be plead with particularity.  Because Plaintiff fails to state with particularity, any false statement made by Endo, its fraud Complaint should be dismissed.

This Court's prior recognition of the "formulaic relationship between WAC and AWP," *New York Counties I*, at *15, does not relieve Plaintiff of its obligation to plead the false statements that form the basis of its fraud claims.  Plaintiff's own allegations establish that the "formulaic relationship" between WAC and AWP does not operate in every instance.  Plaintiff alleges numerous AWPs for other defendants' NDCs that are significantly greater than a 20-25% markup from the WACs for those NDCs.  *See* Complaint ¶¶ 205, 413-15, 422, 469-71, 479, 484, 571-72, 593 (alleging spreads between reported AWP and reported WAC of up to 2,568%).  Further, Plaintiff alleges only that the markup from WAC to AWP is "typically" 20-25%.

Complaint at ¶ 95. Plaintiff fails to allege whether that markup, or any other, was applied to Endo's reports of WAC information. *See also Massachusetts v. Mylan Labs.*, Civ. Action No. 03-11865-PBS, Mem. at 2 (D. Mass. Apr. 5, 2005) (holding that the Complaint failed to satisfy Rule 9(b) where it relied on an unspecified formulaic relationship to allege fraud as to prices that were not stated by defendants, and where the Complaint did not provide any details about how or by whom those prices were calculated).

This Court should conclude that Plaintiff fails to meet the requirements of Rule 9(b) for its failure to allege a single misrepresentation made by Endo.

## CONCLUSION

For the reasons stated above and in the Memorandum of Law in Support of Certain Defendants' Motion to Dismiss the Complaint, the Complaint should be dismissed as to Endo.

Dated: April 18, 2008
Washington, DC.

Respectfully submitted,

ARNOLD & PORTER LLP
By: /s/ David D. Fauvre
Jonathan L. Stern (admitted *pro hac vice*)
David D. Fauvre (admitted *pro hac vice*)
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000 (phone)
(202) 942-5999 (fax)
*Counsel for Defendant Endo Pharmaceuticals Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 18, 2008, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

                                                         /s/ David D. Fauvre