# EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** ) ) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*<br>CIVIL ACTION NO. 06-11337-PBS ) ) ) ) | Magistrate Marianne Bowler |

### DECLARATION OF HERB B. KUHN

I, Herb B. Kuhn, declare as follows:

1. I am the Deputy Administrator of the Centers for Medicare & Medicaid Services ("CMS"), which is a component of the Department of Health and Human Services ("HHS" or the "agency"). I have been with CMS since March 2004. I have been the Deputy Administrator since 2007. Since April 11th, 2008, I am also serving as the Acting Director of the Center for Medicaid and State Operations. I was the Director of the Center for Medicare Management from March 2004 to 2007. Prior to that, I served as the Corporate Vice President for Advocacy at Premier, Inc., a hospital performance alliance and Vice President for federal relations for the American Hospital Association.

2. As the Deputy Administrator of CMS, I share overall responsibility for the administration of all federal health care financing programs under Titles XI, XVIII, XIX, and XXI of the Social Security Act, including authority over agency records. Title XIX is the Medicaid program. The Secretary of HHS has delegated to the CMS Administrator his authority under 42 U.S.C. § 1306 to

disclose to the public information pertinent to the mission of CMS, as well as the authority of the Secretary under the Medicaid statute. 49 Fed. Reg. 35,248 (Sept. 6, 1984), as amended at 66 Fed. Reg. 35,437 (July 5, 2001)

3. I am informed that documents in the possession of CMS and the agency have been requested in the course of the above-captioned litigation. These documents were sought, first, by third-party subpoenas served in the above-captioned MDL proceeding in 2003 and, are also now the subject of discovery requests served upon the United States pursuant to Fed. R. Civ. Proc. 34 in a case or cases in which the United States is a party.

4. Generally, this litigation concerns certain drugs paid under Part B Medicare. The litigation also concerns certain Medicaid drug payment programs, including the federal upper limit (FUL), Medicaid Rebate and CMS' oversight of the state plan amendment approval process. The document at issue sets forth the internal discussions and analysis which led to the development of certain options to be explored when reviewing state plan amendments which seek to change Medicaid drug payment methodology. Final agency positions resulting from those discussions are evidenced by the decisions made during the state plan approval process. As part of its administration of the Medicaid program, the agency necessarily considered and analyzed issues that came up regarding the payment methodology for these drugs. Such discussions include those weighing the pros and cons of implementing new reimbursement methodologies, deliberations concerning how to appropriately respond to provider and congressional inquiries, and internal debates pertinent to reimbursement issues. Final agency positions resulting from those discussions are evidenced by Congressional testimony and formal agency reports to Congress, letters to outside entities, agency publications, and Federal Register notices.

## Assertion of the Deliberative Process Privilege

5.    I hereby assert a formal claim of the deliberative process privilege over a redacted portion of the document titled Review of Medicaid State Amendments, dated October 22, 2002. (See Exhibit A). A redacted version of this document has already been produced to the defendants. (See Exhibit B). The portion of the document which was redacted contained the background and analysis section of the document. The portion of the document which was produced were the options listed in the document and the recommendation to implement those options. This assertion is based on my personal review of these documents. My statements in this declaration also are based upon information personally known to me or conveyed to me by agency personnel who have reviewed the document for which the privilege is being asserted.

6.    In the paragraph below, I specify why the information for which I am asserting the deliberative process privilege properly falls within the scope of the privilege. I have determined that the document is pre-decisional and deliberative and should be withheld from full disclosure in the public interest.

7.    Review of Medicaid Drug State Plan Amendments–Decision, dated October 22, 2002 is an internal CMS memorandum, reflecting deliberations concerning HHS policy decisions or potential HHS actions. The memorandum was prepared by Pharmacy Team staff for the purpose of setting forth the available options for resolving a problem that had arisen in the Team's review of state plan amendments concerning Medicaid drug payment methodology. The memorandum was sent from Dennis G. Smith, Director, Center for Medicaid and State Operations to Thomas A. Scully, Administrator and Ruben King Shaw, Jr., Deputy Administrator and Chief Operations Officer.

Although the document is signed by Tom Scully it does not represent a final agency decision. Mr. Scully's signature simply signaled an agreement with the recommendation that all of the options could be explored to determine which were the most useful as review tools in the state plan amendment approval process.

8. The memorandum that I and my staff have reviewed and considered reflects the type of exchanges that occur within CMS when establishing, amending, and fine-tuning the policies and procedures required to effectively and efficiently administer both the Medicare and Medicaid programs. I also believe that agency personnel, when they discuss matters related to improvement of the policies and procedures which are in place, reasonably expect that the substance of their discussions will be kept confidential in order to ensure a free flow of candid advice and analysis.

9. The release of documents which contain statements or opinions by personnel which were then rejected or revised during later discussions and deliberations among agency decision-makers could disrupt and even harm the agency's mission from the dissemination of inaccurate and incomplete information. The overarching purpose of all reviews, considerations, and deliberations undertaken by the agency at every level is to ensure that the agency issue final statements regarding its policies and decisions and that they are in accordance with controlling statutes, regulations, and objectives. Consistent with that purpose, the agency must be careful that every statement which it releases accurately articulates the agency's position on any given issue or question. Effective policy-making requires the consideration of alternative and even competing goals and ways to accomplish the agency's mission. The suggestions and alternatives which are the subject of the deliberations should never be confused with actual, final, agency policy or procedure adopted at the conclusion of the deliberations.

10. In order to make fully informed decisions, I, and other senior CMS staff, must be able to rely on our staff to provide recommendations and advice to us on all matters which may affect the efficient administration of the programs for which we are responsible. The recommendations and advice must be frank if they are to have value. I rely on agency personnel to be candid with all persons who are working for the agency.

11. Based on my experience, open, candid exchanges of ideas and information among CMS personnel regarding the effective administration of the agency would be seriously inhibited if the officials believed that their internal discussions, analyses, opinions, views and recommendations would be disclosed publicly. Further, if the discussions contained or referenced in the documents attached to this declaration were subject to public disclosure, CMS personnel officials would feel constrained in their deliberations because we would have no confidence that our internal discussions would remain confidential.

12. The foregoing concerns about the potential chilling effect on the candid exchange of opinions and recommendations on agency personnel are heightened in the context of litigation, especially any case in which the Government is a party. Disclosing such deliberative documents will have a profound and detrimental impact on the free exchange of candid commentary among employees – especially with regard to those individuals who would otherwise be inclined to express critical or minority opinions.

13. For the reasons stated above, I consider that the release of the attached document would be detrimental to CMS deliberations and thus contrary to the public interest. I therefore respectfully assert the privilege for governmental deliberative communications to withhold this document from disclosure to the defendants.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 24 day of April, 2008 in Baltimore, MD.

*[signature]*