UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' OPPOSITION TO ABBOTT'S MOTION TO COMPEL
SUFFICIENT RESPONSES TO ABBOTT'S REQUESTS FOR ADMISSION AND
INCORPORATED MEMORANDUM OF LAW**

The United States, by and through the undersigned Assistant United States Attorney,

hereby submits its Opposition to Abbott's Motion to Compel Sufficient Responses to Abbott's

Requests for Admission ("RFAs") and Memorandum of Law ("Memorandum"). In support

thereof, the United States submits the following incorporated Memorandum of Law:

*BACKGROUND
REGARDING ABBOTT'S RFAs*

On March 23, 2007, this Court entered a Case Management Order allowing each party to

serve no more than 250 requests for admission under Fed. R. Civ. P. 36. However, 100 of those

requests were limited to requests seeking the authentication of documents, certification of

business records, or admissions that a person or entity made a statement. Abbott served the

instant set of 175 RFAs at issue in Abbott's Motion to Compel on December 1, 2007. Abbott's

RFAs 1 through 69[1] purport to be authentication requests.  Despite Rule 36(a)(2)'s requirement that "each matter must be separately stated", Abbott impermissibly included multiple parts in each.  The United States timely responded to and/or served its objections to the RFAs providing a 147 page single-spaced response.  Aside from the multiple parts, Abbott's RFAs were inherently flawed in numerous ways, confusing and almost always sought admission of irrelevant matters.

For example, the United States had to object to the vast majority of RFAs referencing "AWP" because Abbott's RFAs sought admissions based upon Abbott's definition of "AWP" and not the definition of AWP set forth by the United States in its September 2006 amicus brief and this Court in subsequent rulings[2].  On November 2, 2006, after over four and a half years of litigation in this MDL, Judge Saris determined, *as a matter of law,* that the term "AWP" would be construed pursuant to its plain language, and held that the term "means the average price at which wholesalers sell drugs to their customers, including physicians and pharmacies."  *In Re Average Wholesale Price Litig.,* 460 F. Supp. 2d at 278.

---

[1]Abbott's Memorandum consistently references RFA 70 as an authentication RFA; however, in that RFA, Abbott sought an admission of fact that the United States simply denied outright, subject to objections.  Abbott cannot compel the United States to change its truthful response to RFA 70 simply because Abbott does not like the denial.

[2]Abbott's RFAs incorporate and adopt by reference all definitions contained in Abbott's First Request for Production.  Abbott's First Request for Production defines Average Wholesale Price, or AWP as having "the meaning ascribed in paragraphs 44 and 50 of the [United States' original] Complaint."   Paragraphs 44 and 55 of the original Complaint, however, do not define AWP, but rather explain that AWPs relied upon by Medicare and State Medicaid programs have generally been those published by third party compendia.  (Composite Exhibit "1" hereto).

Abbott even managed to complicate what should have been simple authentication RFAs. As the United States' responses and objections reflect (Exhibit B to Abbott's Memorandum[3]), with regard to Abbott's first 69 RFAs, subject to all other possible objections to admissibility and relevance, the United States does not intend to challenge any RFA exhibit on authenticity grounds if Abbott presents at trial a complete, proper copy of the exhibit.  But that was not Abbott's intention with respect to its so-called authentication RFAs; rather, it sought to use them to obtain admissions from the United States regarding substance or meaning of the quoted language[4].  As such, they were improper, and the United States' objections are appropriate. Abbott is not asking this Court to evaluate each of the first 69 RFAs to determine the admissibility of each exhibit, but, rather seeking to have the Court deem certain quoted language within the documents as substantive, factual admissions[5].  Moreover, RFAs 1 through 69 do not

---

[3]Abbott did not file the exhibits to its RFAs, which are integral to this Court's consideration of the RFAs on an RFA by RFA basis.  So as not to burden the Clerk's docket with a voluminous discovery filing, should this Court deem it necessary, the United States can provide copies to chambers for consideration.

[4]None of the 69 documents that are Exhibits to the RFAs have been admitted into evidence in this case, and the parties have not stipulated to their admissibility – it is premature for such considerations at this point in the case.  Indeed, the United States expressly reserves its right to object to the admissibility of those documents on relevance or other grounds.

[5]Specifically, at p. 10 of its Memorandum asks that this Court overrule the United States' hearsay and relevance objections outright, claiming that the exhibits to the RFAs are admissible as public records or because they fall within a hearsay exception.  This circular argument, as the question of the evidentiary admissibility of the RFA *exhibits* in this case is clearly one for trial that cannot be prejudged in considering quotations from RFAs.  Abbott cannot obtain a preliminary ruling in advance of trial through its improper use of RFAs.  That is not to say, however, that on their face the vast majority of the quoted documents pertain to matters well outside the time period of this case, 1991 to 2003, and matters unrelated to Abbott and its drugs.

ask for as much, but rather only seek confirmation that the words are in the document.  This is a misuse of the authentication RFAs provided for in the CMO.

Regardless, the United States checked the quoted language in each of the first 69 RFAs and fairly admitted or qualified the fact that those quotes were contained in the designated exhibit, to the extent possible.  Some quotes represented spliced phrases and sentences from various fragmented places in a particular document (*i.e.* RFAs 2, 6, 8-11, 26 & 31); some just outright misquoted the cited language (*i.e.* RFAs 4, 17, 43, 50, 52).  Subject to its objections, for those RFAs numbered 1 through 69 that concerned some public documents and/or statements CMS or HCFA employees or officials made within the operative time period of this case, the United States admitted the last sentences of each RFA concerning whether it "was created at or near the time. . . and was made and kept in the course of regularly conducted business activity", to the extent possible.

With respect to the remaining RFAs (70-174), many of those RFAs were entirely improper and pertained to subject matters outside of the relevant time period or subject matter of this case, and violated this Court's discovery orders in some instances.  On their face, many of the non-authentication RFAs patently call for (incorrect) legal conclusions.  The United States objected or responded accordingly.

### *LEGAL DISCUSSION*

In responding to RFAs, the United States has made a good faith effort to respond to Abbott's RFAs, to the extent possible, though many are wholly irrelevant, or improper.  Rule 36(a)(1)(A) and (B) only permit RFAs relating to factual statements,  the applications of fact to law or opinions about either, as well as the genuineness of documents.

4

Rule 36(a)(6) provides that this Court may defer its final decision until a pretrial conference or specified time before trial.  The United States believes that many of these RFAs can be drastically simplified after the parties' post-discovery motions practice, particularly as they relate to the type and scope of defenses Abbott will ultimately be permitted to pursue at trial.

In evaluating the propriety of Abbott's RFAs, this Court can determine that final disposition of Abbott's Motion to Compel be made at a pretrial conference or at a designated time prior to trial, which will permit this Court to hear and streamline the legal and factual issues in this case after dispositive motions are decided.   The United States submits that the vast majority of the RFA responses that Abbott challenges could be rendered moot once this Court addresses the parties' anticipated motions for summary judgment, motions to strike defenses and motions *in limine*.

A decision to defer ruling on the RFAs would be within the broad discretion this Court has to manage pretrial discovery.  *See e.g. U.S. Steel v. DeMatteo Constr. Co.,* 315 F.3d 43, 53 (1st Cir. 2002) (management of pretrial discovery lies within the sound discretion of the trial court and the court of appeals will intervene only upon a clear showing of manifest injustice such as where a discovery order is plainly wrong and resulted in substantial prejudice to an aggrieved party); *City of Waltham v. United States Postal Serv.,* 11 F.3d 235, 243 (1st Cir. 1993) (district court has broad power to control discovery and in doing so can weigh discovery burdens against likelihood of finding relevant material); *Lamoureux v. Genesis Pharmacy Services, Inc.,* 226 F.R.D. 154, 159 (D. Conn. 2004).  Moreover, given the breadth of Abbott's instant Motion to Compel and Memorandum, this Court is faced with having to spend exorbitant amounts of time delving into the minutiae of challenged responses and objections, on a request by request basis.

Such an exercise is premature and unnecessary until this Court determines the various legal and factual matters that will be raised pretrial in various dispositive and *in limine* motions.

Accordingly, as a pure matter of conservation of Court and party resources, the United States at the outset requests that this Court defer any ruling or consideration of Abbott's Motion to Compel until the parties are at a pre-trial conference and permit the parties to supplement their submissions, as necessary, based upon this Court's rulings on future dispositive and *in limine* motions. Rule 36 is not a discovery procedure, and deferring matters until a final pretrial conference is appropriate if the parties will not experience prejudice. *See Bouchard v. U.S.*, 241 F.R.D. 72, 75-76 (D. Me. 2007)[6]. This Court's future rulings will likely profoundly impact, and/or moot many of the issues presented in Abbott's Memorandum.

Notwithstanding the above parallel request, the United States submits that its answers to Abbott's RFAs are more than sufficient, that its responses and objections are appropriate and that Abbott's Motion to Compel should be denied.

As a preliminary matter, Abbott seeks to strike the United States' objections to Abbott's definition of AWP in RFAs 1 through 69 (Memorandum at 10). In its definition section, Abbott in its RFAs does not distinguish to which RFAs its general definition of AWP applies. The problematic AWP definition, however, impacts numerous RFAs; all RFAs except RFAs 1-5, 49, 54-56, 59, 69, 71, 75-77, 86, 87, 96-99, 100-102, 105-120, 125-129, 138-143, 152, and 155 are on their face invalid requests because of Abbott's improper definition of AWP. Moreover, the

---

[6]There would be no prejudice to the parties, as the RFA responses are largely trial tools. Should Abbott seek to use the RFA responses in its summary judgment or other pretrial briefing, it can always cite to the underlying predicate evidence it contends supports the factual assertions. Given that many of Abbott's RFAs call for legal conclusions, or pertain to authentication matters, it is unlikely that they will be of much utility, if any, for dispositive motion purposes.

remaining are tainted to the extent that Abbott's created AWP definition indirectly impacts those RFAs. Accordingly, to the extent that any RFA referenced the term AWP, the United States objected. Abbott's attempt to change the definition of AWP for purposes of the RFAs (Memorandum at 7), renders those RFAs referencing AWP *wholly irrelevant*. Abbott cannot simply create a definition of AWP, for which it has no basis in law, for purposes of its RFAs when the Court may adopt a different definition of AWP for all other purposes in this case. Such a course would create an absurd quagmire for evidentiary and trial purposes, in contravention to Rule 36's objective in narrowing and streamlining facts for trial. *See Doe v. Mercy Health Corp.*, 1993 WL 377064, *12 (E.D. Pa. 1993).

Any motion based on Rule 26, including one seeking a determination of the sufficiency of RFA responses, has to make threshold showings of the relevancy of the materials sought. *See Lamoureaux*, 226 F.R.D. at 162. Such a motion is "inextricably dependent upon a finding of relevance *vel non*. Thus, a discussion of relevance is indispensable and essential." *Id.* In *Kasar v. Miller Printing Machinery Co.*, 36 F.R.D. 200, 203 (W.D. Pa. 1964), the court explained: "[w]here [an RFA] is argumentative and only possibly could be proper if certain facts are established, but such facts are not definitively on the record, objections to such request should be sustained."[7] (citations omitted).

---

[7]The *Kasar* court further concluded: "The rule respecting [RFAs] should not be used unless a statement of facts sought to be admitted is so phrased that it can be admitted or denied without explanation and requests which are phrased so as to infer unfairly a particular or varied conclusion from the fact admitted are objectionable, as are requests which are half truths if such half truths would infer a conclusion different from the whole truth." *Kasar,* 36 F.R.D. at 203. Here, by cherry picking its selected quotations in authentication RFAs, and more broadly characterizing half-truths in some non-authentication RFAs, Abbott impermissibly seeks to use RFAs to obfuscate the actual true facts of this case; such conduct is objectionable.

The United States should not have to subscribe to Abbott's irrelevant view of the definition of a term for purposes of answering the RFAs.  If hypothetically the United States is required to admit RFAs using Abbott's definition of AWP, and  the Court and parties use the Court's *different* definition for all other purposes, including trial, each time Abbott tries to use the admission, the Court would have to instruct that Abbott's RFAs are predicated upon a different AWP definition then what the Court is using for purposes of trial[8].  This would be simply untenable for the effective, and efficient operation of a trial.  RFAs are intended to simplify, not complicate trial.

I.   *The United States' Responses, Qualified Statements and Objections to RFAs 1 through 69 Are Entirely Proper*

     a.   *Objections and Responses to Statements Binding CMS*

As a general matter with respect to Abbott's RFAs 1 through 69, the United States did object to many RFAs (though not all) on the grounds that the statements do not bind CMS.  The bases for such objections are patently obvious from the context of the RFAs – that is, they are not statements that can be attributed to CMS or bind it for purposes of this case.  Abbott's true colors in seeking admissions of the quoted language in RFAs 1 through 69 are made clear through its Memorandum.  Abbott cannot simply say that just because some statement may have been made

---

[8]RFAs are cruder devices than other discovery tools because "a party must accept, deny or object to facts phrased by the opposition.  They exist to narrow the issues at trial where the parties unambiguously agree.  The fact is that parties in litigation conflict.  They believe different things, and they have different interpretations of both words and events.  The party that proffers the requests must recognize that its opponent [or the Court] may read those words differently." *Russo v. Baxter Healthcare Corp.*, 51 F. Supp.2d 70, 79 (D. R.I. 1999).  The *Russo* court further explains: "An answering party may always object to vague wording. . . .The Court does not encourage the parties to equivocate over language or to stonewall in order to prolong litigation." *Id.*

by an employee or contractor employed by the U.S. Government, or a legislative representative, that the statement constitutes a party admission by CMS for all purposes in this case.  Informal understandings of agency officials concerning the meaning of a regulation are not relevant. [9]

      b.    *Objections and Qualified Responses to Abbott's RFAs Concerning Quoted Language*

RFAs seeking an admission that quoted language is contained in a particular document are permissible only to a limited extent.  However, the only fact that is conclusively established through such RFAs is that the quoted language is contained the document[10].  By admitting that language is quoted properly in a particular RFA 1 through 69, the United States is not admitting the underlying fact or attribution of the admission to the author of the document, as if it were a CMS party admission.

Abbott, however, in its Memorandum contends that by qualifying each response with a disclaimer that the United States' admission that the quoted language in a document is not an admission for any other purpose, the United States is somehow undercutting its admission

---

[9]In *United States v. Lachman*, the Court of Appeals held that any interpretive issue relating to a regulation is resolved through reference to the official public record.  387 F.3d 42, 54 (1st Cir. 2004).  The "non-public understanding [of individual government officials] of the regulation do not remotely satisfy the requirements of formality and public accessibility" and are not entitled to any deference.  *Id.  See also, United States ex rel. Wright v. Agip, et al.*, No. 03-Cv-00264 at 7-9 (E.D. Tex. June 29, 2007) (denying motion to compel deposition of Government personnel regarding their understanding of regulations, and holding that "personal opinions of agency employees that were never communicated to a Defendant are simply irrelevant to either issues of falsity or knowledge")

[10]Such RFAs are of marginal utility in any event, and requests of this nature are "manifestly unreasonably cumulative and duplicative."  *Vons Companies, Inc. v. U.S.*, 51 Fed. Cl. 1, 14 (Ct. Cl. Nov. 6, 2001).  Once a document is admitted into evidence, obviously, Abbott can attempt to read its content to the jury, subject to overcoming objections that may arise.  *See id.*

regarding the fact that the quoted language is in the document.  Indeed, incredibly Abbott argues

that the inclusion of this qualification renders the RFA admission "all but worthless"

(Memorandum at 4) -- an argument that is belied on its face by the simple explanation that the

qualification is intended to clarify only what the U.S. is not admitting to, so as to avoid juror

confusion.

By so arguing, Abbott obviously intends to improperly convert the substance of the

quoted language into party admissions that it could argue before the jury.[11]  Such a tactic only

underscores the need for the qualification that the United States made in each response, and those

qualifications in RFAs 1 through 69 should not be stricken.  Moreover, Abbott's tactic

emphasizes the need to wait for admissibility determinations at the time of trial before evaluating

what admissions can be read to the jury about the content of documents that may or, ultimately,

may not be admitted trial exhibits.

   c.    *Admissibility Objections to the Exhibits Attached as 1 through 69*

At pages 8 through 10 of its Abbott Memorandum, Abbott takes exception to the United

States' admissibility objections.  It contends that Abbott is entitled to admissions that the quoted

---

[11]At page 4 of its Memorandum, Abbott cites to an example of the first RFA and contends
that the United States should be required to track down a prospective witness to confirm that the
witness was a "person with knowledge of the contents of the memorandum".  This is Abbott's
job if it wants to avoid hearsay and other admissibility challenges for the document.  It simply
cannot hoist that burden upon the United States to find the author or document creator of each
and every non-CMS document it attaches as an exhibit so that Abbott can attempt to meet its trial
evidentiary obligations.  In seeking the authentication or genuineness of documents in RFAs, a
party should only be required to research documents which it reasonably can authenticate or
confirm the genuineness of without undue burden. *See Vons*, 51 Fed. Cl. at 14 (holding that
RFAs are inappropriate where they seek to confirm the genuineness of publicly-available
documents about which party has no special knowledge and where they are "obtainable from
some other source that is more convenient, less burdensome and less expensive.")

language from the documents are "relevant", do not contain hearsay, and are otherwise

admissible.  Rule 36(a)(1)(B) permits RFAs targeted at the genuineness – *not the admissibility* --

of the documents.   Critically, an admission response to an RFA is an admission for all purposes

in this case.  (See Fed. R. Civ. P. 36(b)).  To the extent that the United States has objections to

Abbott's exhibits, which its RFA 1 through 69 quotations are derived from, for purposes of use

in this case, especially at trial, Abbott cannot overcome those objections by simply quoting

language from the documents in an RFA *before it is admitted into evidence.*

        In *Vons*, 51 Fed. Cl. at 14-15, the court made clear that if a party's RFAs seek to confirm

quotes from documents that are irrelevant, "it follows, *a fortiori*, that the quoted portions thereof

referenced in these requests are also irrelevant."  The *Vons* court also concluded that once a

Court determines that documents are irrelevant, RFA information sought concerning their

creation or authorship are similarly irrelevant. *Id*. at 20.

        The United States' objections are not boilerplate.  If the documents are not admitted at

trial, Abbott should not be permitted to use any admissions concerning the authentication of

documents – nor does Abbott cite any authority for the proposition that it can.  The Rules of

Evidence would be rendered a nullity if a party could avoid the consequence of not being able to

admit a document into evidence merely by quoting the language therein and seeking an

admission that the quote existed in the document.

        It is only at or near the time of trial that the relevance, hearsay and other admissibility

objections will be resolved.   In asserting its admissibility objections, the United States merely

preserved its right to challenge the admissibility of RFA exhibits themselves, and the

admissibility of the RFA information if the document is excluded.  Again, through this motion,

Abbott is asking this Court to review RFAs 1 through 69, and the related exhibits, and make determinations as to the admissibility of documents now – which would be a prerequisite for ruling on the admissibility objections to the RFAs predicated upon those very exhibits.

Abbott makes much of the fact that it intends to rely upon RFA Exhibits 1 through 69 in support of a "government knowledge" defense.  The United States would object to their use for this purpose, especially since the vast majority of these exhibits are: outside the time period of this case; relate to third parties or other government components; are almost entirely unrelated to the Abbott products at issue in the instant lawsuit; and/or do not reflect any CMS positions within the operative time period.  The documents advanced with RFAs 1-69 simply cannot support any legally viable defense to a False Claims Act, a matter that undoubtedly will be litigated extensively through motions practice in the coming months.  Abbott also cannot unilaterally declare that its RFAs 1 through 69 exhibits are "relevant" because it anticipates arguing government knowledge using them at a later point in time.

Further, on another discovery matter, this Court has already provided a glimpse into its view of the limits of the documents relevant to the government knowledge issue.  In its Electronic Order of March 12, 2008, relating to Abbott's Objections to the August 13, 2007 Order of Magistrate Bowler (D.E. 4885), this Court limited the review of deliberative process documents sought by Abbott to only those documents pertaining to Abbott products and/or Abbott's spread marketing conduct.

On their face, the vast majority of the RFA exhibits 1 to 69 have nothing to do with Abbott, its participation in Medicare or Medicaid, or its products that are Subject Drugs in this lawsuit.  If such a defense is not permitted, or narrowed in scope, most if not all of Exhibit 1

through 69, and the related RFAs, should be excluded as irrelevant.  Before making a

determination that a particular document is relevant to Abbott's "government knowledge"

defense (if any), this Court needs to look at each of the documents to ascertain if they pertain to

Abbott specifically, or any of the Subject Drugs.  This herculean task is better deferred until after

this Court has ruled on dispositive motions and motions *in limine*.

Abbott's contentions that some of the RFAs 1 through 69 are admissible because the

corresponding exhibit is either an admission of a party opponent or a business records are also

premature, and/or simply wrong.  Abbott misses the mark; simply because it may *argue* that a

document is a business record or party admission, that does not make the document admissible

for purposes of requiring the United States to admit information quoted language is a statement

that can be admitted in this case for use at trial.  As discussed above, Abbott cannot simply

assume that the statement of any government official, contractor or legislator is a party admission

binding upon the CMS.  (*See discussion* supra at 8 & fn.9; RFAs 144-152, 154-159, 162, 164,

166 and 173 are examples of RFAs that were also objected to on *Lachman* grounds)  Abbott also

cannot assume that its RFA exhibits are admitted business records under Rule 803(6), and

therefore, the related RFAs are relevant and the matters therein fully admissible for all purposes.

That is Abbott's burden of proof at trial, subject to possible pretrial stipulations that the parties

may enter into at or near the time of trial.  To the extent that Abbott's RFAs pertained to public

records, the United States appropriately admitted as much in its responses, to the extent possible.

i.      *Abbott's Authenticity RFAs Exceed the Number of Authenticity RFAs Permitted
        Under Case Management Order 29*

Case Management Order 29 limits the total number of authenticity RFAs to 100.  As Rule

36(a) provides, each matter of which an admission is requested shall be separately set forth.  By

packaging additional RFAs as components of RFAs 1 through 69, Abbott impermissibly seeks

232 authenticity RFA subparts, which exceed by 132 the number authorized under the Court's

CMO 29.  *See Vons*, 51 Fed. Cl. at 13 (each request must be direct, simple and "limited to

singular relevant facts.")(citing *SEC v. Micro-Moisture Controls*, 21 F.R.D. 164, 166 (S.D.N.Y.

1957) at 15.   Neither this Court, nor the United States has an obligation to pick and choose

which of its authenticity RFAs Abbott expects responses for, and this Court should reject

Abbott's arguments and attempts to compel further responses or to strike objections to RFAs 1

through 69 as a result.

      ii.     *The United States' Other Objections Regarding the Documents Speaking for*
              *Themselves and Quotations Out of Context*

The United States did object to RFAs 1 through 69 on the grounds that the attached

exhibits speak for themselves.  Additionally, the United States also objected that Abbott's

quotations were taken out of context.   These objections were not in isolation, nor did they cause

the United States to ignore the RFA altogether – rather, the United States struggled to answer

Abbott's convoluted authentication RFAs to the extent it could, admitting or denying information

outright where it could, or with qualification as necessary.  *See Kaufman*, 2006 WL 3969212, at

*3 ("as a general matter, [the party opponent] acknowledges that it denied such requests because

plaintiff was 'cherry-picking' statements out of context. . . . I will not compel additional answers

to unspecified RFAs, nor would I compel a party to provide a substantive answer to an RFA that

seeks ratification of an out-of-context, incomplete statement."); *cf. Lewis v. Michaels Stores,

Inc.*, 2007 WL 2021833, at *3 (M.D. Fla. Jul. 12, 2007)(disallowing objection deferring to

document content as best evidence, where no additional attempt was made to respond to RFA).

These objections are appropriate given that the Exhibits that serve as the basis for each RFA have not been admitted into evidence, and Abbott only picks and chooses select language, sometimes taking only phrases here and there from various pages in documents.  Moreover, it does not seek admissions of the veracity of the quoted language – only that it exists in the document[12].

II.    *The United States Properly Objected or Responded to RFAs 144-173*

Abbott contends that the United States should have admitted RFAs 144 through173 because it contends that those RFAs were derived from documents purportedly published or authored by CMS, or its predecessor agency.  Once again, Abbott is misapprehends critical evidentiary issues.  Unlike in RFAs 1 through 69, RFAs 144 through 173 do not quote documents, or often even reference them, but rather make statements of law, fact or fact and law without attribution.  This is not a question of the United States denying that certain quoted language is, or is not, contained in certain documents.  The United States is free to object to, admit, deny or qualify its responses to RFAs 144 through 173, as it sees fit and in accordance with its knowledge of the veracity of the facts (if any) at issue in each RFA.

If Abbott wants to introduce evidence to the contrary of the United States' responses to RFAs 144 through 173, it is free to do so at trial – but it cannot ask this Court to require the United States to admit the answers.  *See Harris v. Oil Reclaiming Co.,* 190 F.R.D. 674, 677-78 (D. Kan. 1999)(a denial is a sufficient answer and only remedy is to seek reimbursement of expenses incurred in making proof of contrary facts; the striking of the RFA response is

---

[12]If Abbott is not able to secure the admission of any of Exhibits 1 through 69, the objections are moot – Abbott cannot admit quoted parts of an inadmissible document.  To the extent that Abbott is able to secure their admission, Abbott can always read the quoted language from the documents subject to the rule of completeness, which is what these objections from the United States are intended to preserve.

impermissible); Rule 37(c)(2)(limiting relief for refusal to admit RFA to order reimbursing opposing party for costs incurred in making the proof).  Nor can Abbott seek different responses to these RFAs from the United States merely because it contends that undisclosed, unidentified documents reveal contrary information.  The United States, in turn, is entitled to explain the disparities, if any.  Using Abbott's RFAs 167, 148 and 149 examples from its Memorandum, there could be any number of reasons why CMS now denies or qualifies factual statements in 2008 that it may have otherwise responded to differently in another forum in 1990 or 1991.[13] Further, as discussed, to the extent that Abbott provides a flawed definition of AWP that is contrary to the evidence and the Court's definition, the United States similarly can object to the use of that irrelevant definition.

    III.     *The United States Properly Refused to Answer RFAs that Called For Legal Conclusions*

RFAs calling for purely legal conclusions, or the United States' opinion about legal interpretation are immaterial and not properly the subjects of RFAs. *See Miller v. Holzmann*, 240 F.R.D. 1, 4-5 (D.D.C. 2006)(RFA may be said to call for a legal conclusion when it purports to require a party to admit whether a statute imposes a particular obligation)(*citing Disability Rights Council of Greater Wash v. Wash. Metro Area Transit Auth.*, 234 F.R.D. 1, 3 (D.D.C. 2006). Hypothetical questions of law are also impermissible under Rule 36.  *See Vons*, 51 Fed. Cl. at 13.

---

[13] Notably, at the meet and confer, Jones Day indicated that it would provide the information concerning which documents it contended RFAs 144 to 173 were predicated upon. Other than providing a few citations verbally, Jones Day never did.  Further, to the extent that Abbott is relying upon statements carved from pleadings, motions or legal submissions in other cases, those positions are only binding upon the United States in the contexts of the cases in which they were submitted.  (*E.g.*, RFA 148 and 149 pertaining to *Louisiana v. U.S. Dept. Of Health and Human Services*, No. 89-4566.)

From the face of Abbott's RFAs, many of Abbott's non-authentication RFAs call specifically for conclusions of law, which are not properly suited for RFAs.  Abbott's RFAs do not ask, for example, "does the False Claims Act exist?"  This is also not a situation where, for example, the content of a business communication or contract is sought to be admitted.  *Compare with Booth Oil Site Administrative Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 81 (W.D.N.Y. 2000)(seeking RFA concerning content of document with legal significance to case).  Rather, Abbott impermissibly seeks admissions regarding the United States' interpretations of regulations and statutes without the context of a relevant set of facts in this case.

To the contrary, Abbott's RFAs 72-85, 87-88, 96-100, 15-109 and 142 ask principally about whether or not statutes or regulations exists, or whether they permit or disallow particular practices; such questions call for pure legal conclusions.  *See Booth Oil*, 194 F.R.D. at 79 ("'requests for admissions of law unrelated to the facts of a case' are not authorized.")(*quoting* 1970 Advisory Committee Notes); *see also*, *Kaufman v. Frank*, 2006 WL 3692612, at *3 (W.D. Wisc., Dec. 12, 2006)("if [an RFA proponent] is asking [the opposing party] to admit that the rules and regulations say what they say, then this is not a necessary or appropriate use of RFAs. There are quicker ways to lay the foundation for a rule, regulation or statute.").  Indeed, the examples cites by Abbott at page 12 of its Memorandum, RFAs 80 and 105 do just that – ask for legal conclusions about the particular authority of CMS.  If in an RFA request a party fails to tie the legal proposition contained therein to specific facts or circumstances of the case, that RFA is improper as it seeks a legal conclusion.  *Vons  v. U.S.*, 51 Fed. Cl. at 15.

Contrary to Abbott's argument, the fact that the United States "creates and enforces" the laws is immaterial and does not confer additional obligations upon the Government such that

Abbott seeks from the Government admissions it is not authorized to seek under Rule 36 from any other party opponent.  The United States is a party, not a judicial or quasi-judicial actor in this case.  The parties make arguments about the law, but it is this Court that decides legal questions.  This Court need only review each of these RFAs individually; on their face they call for improper legal conclusions, which additionally may or may not be resolved through motions practice in the future.

RFAs are "not intended for factual discovery that should be done through interrogatories or depositions."  *Russo*, 51 F. Supp.2d at 79.  The United States' position is not a fact, or even relevant to a fact in this case; nor is it the application of fact to law, or an opinion about either.  To the extent that Abbott's RFAs request that the United States admit or deny its "position" (*see e.g.*. RFAs 90-95), the RFAs improperly ask for contention information that is more properly suited for contention interrogatories.  *See Moss v. Enlarged City School Dist. of City of Amsterdam,* 166 F.Supp.2d 668 (N.D.N.Y. 2001); *In re Olympia Holding Corp.* 189 B.R. 846, 853 (Bkrty. M.D. Fla. 1995) (sustaining objections to RFAs "disguised as requests for admission").

Though informed by the facts of the case, the United States' positions are not actual *facts* of this case.  Rather, the United States' positions are legal arguments that may change or evolve over the course of a case depending upon the facts that are discovered, and the rulings of this Court.  By asking the United States to admit its "position", Abbott seeks only to lock the United States into a particular legal theory at a particular place in time – which is not the purpose of RFAs.

Rule 36 affords the opportunity for parties to confirm facts in order to streamline a case

before trial.  As one Court has explained,

> The Federal Rules are intended "to secure the just, speedy, and inexpensive determination of every action." . . . Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. *They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play*.

*Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936-37 (9th Cir. 1994)(emphasis supplied).  If Abbott desired to understand the position of the United States on any issue, it should have timely presented the Government with its questions in a straight-forward manner in interrogatories.

IV.     *The United States Properly Objected To Abbott's RFAs Pertaining to Government Drug Purchases*

The United States properly objected to Abbott's attempt to interject overly burdensome and wholly irrelevant RFAs pertaining to government purchases of Abbott products unrelated to either the Medicare or Medicaid programs.  Just like Abbott's so-called "Government knowledge" defense, Abbott's reliance upon arguments that the United States government in programs that are unrelated to Medicare or Medicaid reimbursement may have purchased drug products, is misguided and may be the subject of a future motion for summary judgment, motion to strike, and/or motion *in limine*.  Accordingly, this Court can defer resolving RFAs until just before trial, as they may become moot once this Court resolves those motions.

Even if this Court does not defer, these Government Drug Purchase RFAs ask the United States to go to every government component to see if that component purchased an Abbott product.   The purchase of products by other government components is not relevant to this case and RFAs need only concern relevant subject matter.  *See Lamoureaux*, 226 F.R.D. at 162 (evaluation sufficiency of RFA response dependent upon relevancy determination).  This case is about Medicaid and Medicare reimbursement, which have their own statutory and regulatory

authorizations – not Government drug purchasing, which is not authorized by Medicare or Medicaid for the 1991 through 2003 period.  By trying to net broad scale information concerning the entire United States Government into this case, Abbott is unduly saddling the United States with nearly impossible investigative requirements, and, at a minimum, Abbott should have to make a showing of its need for, and the relevance of, the information before the United States should be so burdened.

The United States will amend its answer to RFA 112, but it stands on its responses to RFAs 115 and 127.  In responding to RFA 115, the United States answered the relevant factual inquiry for this case, which concerns Medicare and Medicaid; to require more beyond this answer for the 12 year time period of this case would be unduly burdensome. Once again, this matter will be resolved when this Court addresses the anticipated government knowledge motions practice that will ensue before trial.  RFA 127 appropriately and fully answers that RFA.  The United States could not fairly or accurately admit or deny RFA 127 without providing the qualification that AMP data is used for the sole purpose of calculating quarterly Medicaid drug rebates.

### *Conclusion*

Based upon the forgoing, the United States respectfully requests that this Court:

a.     Defer consideration of Abbott's Motion to Compel until after all dispositive motions, motions *in limine* and pretrial matters have been resolved, permitting the parties to supplement their filings concerning the instant Motion as matters are resolved, or become moot through this Court's disposition of those motions and/or pretrial rulings; and,

b.     At such appropriate time, deny Abbott's Motion to Compel Sufficient Responses to Abbott's Requests For Admission.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN                         JEFFREY S. BUCHOLTZ
UNITED STATES ATTORNEY                      ACTING ATTORNEY GENERAL


 /s/ George B. Henderson, II               /s/  Renée Brooker
George B. Henderson, II                     Joyce R. Branda
Assistant U.S. Attorney                     Daniel R. Anderson
John Joseph Moakley U.S. Courthouse         Renée Brooker
Suite 9200, 1 Courthouse Way                Justin Draycott
Boston, MA 02210                            Rebecca Ford
(617) 748-3398                              Gejaa T. Gobena
(617) 748-3272                              Elizabeth Strawn
                                            Civil Division
R. ALEXANDER ACOSTA                         Commercial Litigation Branch
UNITED STATES ATTORNEY                      P. O. Box 261
SOUTHERN DISTRICT OF FLORIDA                Ben Franklin Station
                                            Washington, D.C.  20044
/s/ Ann M. St. Peter-Griffith               Phone:  (202) 307-1088
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101


Dated: April 25, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused an electronic copy of the above Opposition to Abbott's Motion to Compel Sufficient Responses to Abbott's Requests for Admission to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.


/s/ Ann. M. St. Peter-Griffith

Dated: April 25, 2008