# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: |
| | ) | 01-CV-12257-PBS |
| | ) | Judge Patti B. Saris |
| | ) | Magistrate Judge |
| | ) | Marianne B. Bowler |

THIS DOCUMENT RELATES TO

U.S. ex rel. Ven-A-Care of the

Florida Keys,Inc., v.

Abbott Laboratories, Inc., et al.

No. 06-CV-11337-PBS

(Caption continues on next page.)

_____

VIDEOTAPED DEPOSITION OF

CODY WIBERG

Taken March 14, 2008

Commencing at 9:13 a.m.

Page 2

```
 1              COMMONWEALTH OF KENTUCKY
 2             FRANKLIN CIRCUIT COURT - DIV 1
 3              CIVIL ACTION NO. 04-CI-1487
 4  COMMONWEALTH OF KENTUCKY            PLAINTIFF
 5  ex rel. JACK CONWAY, ATTORNEY GENERAL
 6  v.
 7  ALPHARMA USPD, INC., et al.
 8
 9           VIDEOTAPED DEPOSITION OF
10                 CODY WIBERG
11             Taken March 14, 2008
12            Commencing at 9:13 a.m.
13
14     REPORTED BY:  SUZANNE HAGEN, RPR, CRR, CBC
15     Videotaped Deposition of Cody Wiberg, taken on
16  March 14, 2008, commencing at 9:15 a.m., at the law firm
17  of Meagher & Geer, 33 South Sixth Street, #4400,
18  Minneapolis, Minnesota, 55402, before Suzanne Hagen,
19  Registered Professional Reporter, Certified Realtime
20  Reporter, Certified Broadcast Captioner, and Notary
21  Public of and for the State of Minnesota.
22             **********
```

Page 3

```
 1                  APPEARANCES
 2
 3  On Behalf of Abbott Laboratories:
 4  CHRISTOPHER COOK, ESQUIRE
 5  JONES DAY
 6  51 Louisiana Avenue, N.W.
 7  Washington, D.C. 20001-2113
 8  202-626-3939
 9  CHRISTOPHERCOOK@JONESDAY.COM
10
11  On Behalf of the Deponent, Cody Wiberg:
12  TIERNEE MURPHY, ASSISTANT ATTORNEY GENERAL
13  MANAGER, HEALTH LICENSING DIVISION
14  STATE OF MINNESOTA ATTORNEY GENERAL
15  Bremer Tower, Suite 1400
16  445 Minnesota Street
17  St. Paul, Minnesota 55101-2131
18  tiernee.murphy@state.mn.us
19
20
21
22
```

Page 4

```
 1             APPEARANCES CONTINUED
 2
 3  On Behalf of Dey, Inc., Dey, L.P., and Dey, L.P., Inc.:
 4  MARISA A. LORENZO, ESQUIRE
 5  KELLEY & DRYE
 6  101 Park Avenue
 7  New York, New York 10178
 8  212-808-7697
 9  mlorenzo@kelleydrye.com
10
11  On behalf of the U.S. Attorney's Office for the District
12  of Massachusetts:
13  JEFF FAUCI, ESQUIRE
14  THE UNITED STATES DEPARTMENT OF JUSTICE
15  1 Courthouse Way
16  John Joseph Moakley Courthouse
17  Boston, MA 02210
18  612-748-3100
19  Jeff.Fauci@USDOJ.gov
20
21
22
```

Page 5

```
 1             APPEARANCES CONTINUED
 2
 3  On behalf of Ven-A-Care:
 4  LARRY BLACK, ESQUIRE
 5  7039 Comanche Trail
 6  Austin, Texas 78732
 7  512-402-1745
 8  lblack@larryblacklaw.com
 9
10  On behalf of Roxane Laboratories, Inc., et al
11  (via teleconference):
12  MIRIAM LIEBERMAN, ESQUIRE
13  KIRKLAND & ELLIS
14  200 East Randolph Drive
15  Chicago, Illinois 60601-6636
16  United States
17  312-861-2000
18
19
20
21
22
```

Page 6

APPEARANCES CONTINUED

On behalf of Bristol-Myers
(via teleconference):
EVA DIETZ, ESQUIRE
HOGAN & HARTSON
875 Third Avenue
New York, NY 10022
212-918-3000
eldietz@hhlaw.com

On behalf of Sandose, Inc.
(via teleconference):
MILANA SALZMAN, ESQUIRE
WHITE AND CASE
1155 Avenue of the Americas
New York, New York
10036-2787
212-819-8711
msalzman@whitecase.com

Page 7

APPEARANCES CONTINUED
On behalf of Warrick-Schering and B. Braun Medical
(via teleconference):
KARIN TORGERSON, ESQUIRE
LOCKE, LORD, BISSELL & LIDDELL
2200 Ross Avenue
Suite 2200
Dallas, Texas 75201
214-740-8725
ktorgerson@lockeliddell.com

On behalf of Pfizer
(via teleconference):
KATHRYN POTALIVO
MORGAN, LEWIS & BOCKIUS
1701 Market St.
Philadelphia, PA 19103-2921
215-963-5233
kpotalivo@morganlewis.com

Also Present:
Kelly Leber, Videographer

Page 8

INDEX

WITNESS: CODY WIBERG                                PAGE

EXAMINATION BY MR. COOK:            11, 356
      MS. LORENZO:                  245
      MS. LIEBERMAN:                275
      MR. FAUCI:                    282, 375
      MR. BLACK:                    309, 382

EXHIBITS MARKED:
Exhibit Abbott 650, JDWIBERG0015 to 0022        9
Exhibit Abbott 651, KY_DMS_00000000117257     207
Exhibit Dey 124,   DEY-MDL-0105083 to 0105089  245

Page 9

         (Deposition Exhibit Abbott 650
         marked for identification.)
         VIDEOGRAPHER: Good morning. We are
going on the record. This is the videotaped
deposition of Cody Wiberg, taken on March 14, 2008.
Time now is approximately 9:12 a.m. The
deposition is being taken in the matter of
Pharmaceutical Industry, Average Wholesale Price
Litigation. Also, Commonwealth Kentucky, Jack
Conway, Attorney General, versus ALPHARMA USPD,
Inc., et al, in United States District Court for
the District of Massachusetts, case number
01-CV-12257-PBS. Also taken in the matter of State
of Texas versus Abbott, District Court of Travis
County, Texas.
         The deposition is taking place in
Minneapolis, Minnesota. My name is Kelley Leber;
I'm the videographer representing Henderson Legal
Services. Will counsel please identify themselves
for the record?
         MR. COOK: I'm Christopher Cook from
Jones Day. We represent Abbott Laboratories.

Page 10

1   MS. MURPHY: I'm Tiernee Murphy with the
2   Minnesota Attorney General's Office. I'm here --
3   I'm here on behalf of Doctor Wiberg in his capacity
4   as a State employee.
5   MS. LORENZO: Marisa Lorenzo, from
6   Kelley, Drye and Warren, representing Dey,
7   Incorporated; Dey, L.P.; and Dey, L.P.,
8   Incorporated.
9   MR. FAUCI: I'm James J. Fauci. I'm here
10  on behalf of the U.S. Attorney's Office for the
11  District of Massachusetts.
12  MR. BLACK: Larry Black for the relator,
13  Ven-a-Care.
14  MR. COOK: And on the telephone?
15  MS. LIEBERMAN: On the phone, this is
16  Miriam Lieberman with Kirkland and Ellis. I
17  represent Roxane Laboratories, Incorporated and
18  certain other companies affiliated with Boehringer
19  Ingelheim, Corporation.
20  MS. DIETZ: This is Eva Dietz with Hogan
21  & Hartson, representing Bristol Myers.
22  MS. SALZMAN: Milana Salzman, with White

Page 11

1   and Case, representing Sandose, Inc.
2   MS. TORGERSON: Karin Torgerson, with
3   Locke, Lord, Bissell and Liddell for
4   Warrick-Schering and B. Braun Medical.
5   MS. POTALIVO: Kathryn Potalivo, with
6   Morgan Lewis and Bockius, representing Pfizer.
7   VIDEOGRAPHER: Will the court reporter
8   please swear in the witness.
9   CODY WIBERG, duly sworn, was
10  examined and testified as follows:
11  EXAMINATION
12  BY MR. COOK:
13  Q. Good morning, Mr. Wiberg. Your name for the
14  record, if you could state it and spell it, please.
15  A. Cody Wiberg. Cody is spelled C- o- d- y,
16  Wiberg is W- i- b- e- r- g-.
17  Q. My name is Chris Cook, I'm with Jones Day,
18  and we represent Abbott Laboratories. You'll
19  recall you and I spoke on the phone, it must have
20  been over a month ago, for -- for about 20, 25
21  minutes, right?
22  A. I recall talking to someone. I'm afraid I

Page 12

1   didn't remember your name. But I recall talking to
2   someone about this issue, yes.
3   Q. Okay. For the record, could you tell us what
4   your current business address is?
5   A. 2829 University Avenue Southeast, Suite 530,
6   Minneapolis, Minnesota, 55414.
7   Q. Do you have any plans to change jobs any time
8   soon, or leave that -- that position?
9   A. No.
10  Q. And in the future, would we be able to
11  contact you either at that address or -- or through
12  your counsel here?
13  A. Yes.
14  Q. A few ground rules I'd like to go over before
15  we start the deposition. None of them are
16  particularly counterintuitive. I'm going to ask
17  questions, and I'm going to do my best to make them
18  as clear as possible. If there's any way in which
19  the question I ask is unclear, please ask me to
20  restate it. I'm -- I'm not trying to slip in any
21  trick questions or anything that you don't
22  understand.

Page 13

1   The way the deposition is taken, although it
2   is videotaped, we have a court reporter here, and
3   so I would ask that you give oral responses, verbal
4   responses, to the -- to the questions that we ask.
5   Can you do that for me?
6   A. Yes.
7   Q. If you could pause just a little bit after I
8   ask the question, both to make sure that I've asked
9   the question, and I'm done, and to give the court
10  reporter some time to get down what we've said, and
11  also to give your counsel time to interpose an
12  objection if -- if she feels it appropriate.
13  Although I have no reason to believe we're
14  going to get anywhere near any privilege issues, if
15  we do, and your counsel wants you not to answer the
16  question, she'll instruct you not to answer.
17  Otherwise, the interjection of an objection by any
18  of the other counsel is merely to make the record,
19  and you should go ahead and answer the question as
20  you understood it originally. Do you understand?
21  A. I do.
22  Q. I'm going to try to take a break about every

4 (Pages 10 to 13)

Wiberg, Cody                                                          March 14, 2008

Page 354
1  know, especially on generics.  You're going to see
2  a wide range of prices, depending on how the
3  individual pharmacy wants to price their products.
4    Q.  Okay.  But as far as the Medicaid rate --
5  Medicaid recipient, they have no incentive to shop
6  around, because they're not paying.  Right?
7    A.  That's correct.
8    Q.  They just go the most convenient place and
9  get it.  It's the government that is not allowed to
10 shop around, because of the way the manufacturers
11 set up the AWPs, is that right?
12       MR. COOK:  Objection.
13    A.  Well, at the time frame we're looking at,
14 there wasn't even a co-pay, so Medicaid recipients
15 at that point were not paying out-of-pocket
16 expenses.
17 BY MR. BLACK:
18    Q.  Okay.  So there is no shopping-around
19 incentive.
20    A.  Not that I would be aware of.
21    Q.  Okay.  Is it correct that, based on your
22 knowledge, '99 -- late '99 through -- when you were

Page 355
1  through this program, Minnesota never paid a
2  thousand percent more than the actual cost?
3    A.  I don't think that we ever would have.  We
4  would have had -- if these were generically
5  available products, we would have had them on -- on
6  MAC in terms of the pharmacy program.  In terms of
7  the reimbursement to physicians, again, when I
8  started there, we were paying AWP -- flat AWP.  And
9  then we were paying AWP minus 5 percent, and then
10 we brought it in line with Medicare.  So now,
11 presumably, we are paying ASP plus 6 percent.
12    Q.  Okay.  But you would be stunned if even
13 Minnesota had paid a spread such as that.
14       MR. COOK:  Objection.
15    A.  As a pharmacy program manager, I would have
16 been quite concerned.
17 BY MR. BLACK:
18    Q.  Even if it was more than 5 -- even if it was
19 500 percent, correct?
20    A.  Yes, I would have been concerned.
21    Q.  Even if it was 200 percent.
22    A.  If we were -- if we were paying that, for

Page 356
1  products that were available generically, I would
2  be concerned if we had not aggressively MACed them,
3  yes.
4    Q.  Okay.  Knowing that I'm a dunder head, people
5  keep sending me emails, saying "ask him this."
6       I apologize.
7       MR. COOK:  I have no objection to the
8  dunder head characterization.
9       MR. BLACK:  I said it myself.
10 BY MR. BLACK:
11    Q.  Looking at one other thing, and then I may be
12 done.  I told you I'd get you out of here by 5:30,
13 so I'll give someone else some time.
14       MR. BLACK:  That's all of the questions I
15 have, thank you, sir.
16       THE WITNESS:  Great.
17          RE-EXAMINATION
18 BY MR. COOK:
19    Q.  Mr. Wiberg, I'd like to -- or Doctor Wiberg.
20 I apologize for that.  I've been calling you "Mr."
21 all day.  I would like to take you back to the
22 Zantac example you gave earlier.

Page 357
1    A.  Yes.
2    Q.  I think you said the AWP was 90 cents.
3    A.  Around there, yeah.
4    Q.  The MAC was about 25 cents, and the AAC was
5  about 6 cents, right?
6    A.  Well, the -- the actual acquisition costs for
7  the store I worked as was -- was -- was around 6
8  cents, as I recall.
9    Q.  So 25 cents is what the State Medicaid
10 Program chose to pay for that 6 cent pill, right?
11    A.  That's correct.
12    Q.  Isn't that about a 400 percent spread,
13 between 6 and 25?
14    A.  Well, again, you can't -- people don't spend
15 percentages.  They spend dollars.  And what the
16 goal was -- and I don't have a calculator handy,
17 but if you do the math, typically we're talking
18 about 60 tablets.  In a typical prescription.  So,
19 you know, the actual math is -- is they're not
20 getting huge amounts of actual dollars.  And at
21 some point, I think we reduced the MAC.  Part of --
22 well, let me just say that when I came on board at

90 (Pages 354 to 357)