UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

## REPLY BRIEF IN SUPPORT OF OBJECTION OF NAMED CLASS REPRESENTATIVE, M. JOYCE HOWE, TO THE FINAL APPROVAL OF PROPOSED NATIONWIDE SETTLEMENT WITH ASTRAZENECA, AND OBJECTION TO PETITION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATION TO THE NAMED CLASS REPRESENTATIVES

Objectors play an important role in class actions. *In re Prudential Ins. Co. Of America Sales Practices Litig.*, 278 F. 3d 175, 202 (3rd Cir. 2002). They "serve as a highly useful vehicle for members of the class and for the public generally," and a lawyer for an objector who "raises pertinent questions concerning the conduct of Lead Counsel, the terms of the proposed settlement, and the costs and fees to be paid from the settlement fund ... renders a service to the class [and] aids the court." *Id.*

The objections raised by named plaintiff, Joyce Howe, to the proposed nationwide settlement with AstraZeneca have been largely treated by Class Counsel with disdain and rebuke. By this brief reply, Mrs. Howe hopes to move past the lawyers' personal animus for both her and her counsel,[1] and have this Court focus on the remaining issues she identified in her original

---

[1] Such animus has manifested itself an unseemly effort to remove Mrs. Howe from serving as a class representative, and to deny her payment of a well-deserved incentive fee, both without cause or explanation. *See* [Revised Proposed] Order Granting Preliminary Approval of the AstraZeneca Class 1 Settlement, Directing Notice to the Class and Scheduling Fairness Hearing at Docket No. 4813-2 at p. 4 (wherein the settling parties slipped into this Court's form of Order a provision designating Mr. Townsend as the lone consumer Class 1 AstraZeneca consumer Sub-Class representative, in derogation of the Court's two prior Orders appointing both Mrs. Howe and Mr. Townsend as representatives); *see also* email from Class Counsel dated April 25, 2008 at Exhibit "A" hereto (indicating that AstraZeneca intends to object to Mrs. Howe's request for an incentive fee).

objection, in hopes that consumers may benefit.[2]

Since the settlement amount is likely to be finally approved by the Court[3], Mrs. Howe's goal at this juncture is to try to ensure that all consumer Class members receive the greatest possible recovery out of the available settlement proceeds.  She believes this can happen if at least the following three (3) things are done:

> (1)    Pay all of the settlement money out to the nearly 10,000 Class members who have made claims in the actual co-payment amounts provided by CMS;
>
> (2)    Provide adequate legal protection (through a release, indemnification or otherwise) to Class members to ensure they keep all of their claim money, rather than being threatened by future subrogation claims from TPPs; and
>
> (3)    Pay the lawyers only fees and costs reasonably incurred in the pursuit of the Class 1 AstraZeneca consumer Sub-Class case.

This Court evinced an initial willingness to consider Mrs. Howe's objections with an open mind.[4] Mrs. Howe sincerely hopes it will approach these issues now with such openness.[5]

---

[2] As set forth below, while some of Mrs. Howe's original objections have been addressed by Class Counsel and AstraZeneca, many have not been addressed.  That Class Counsel have responded to some of Mrs. Howe's concerns bears witness to this Court's original observation that some of Mrs. Howe's stated objections may have merit.  *See* June 6, 2007 Hrg. Tr. at 34-37 (wherein the Court remarked, "some of those objections actually were interesting and something I'm going to want to think about at the final settlement conference.")

[3] The Court has twice issued Orders respecting the proposed settlement, finding that the amount "is sufficiently within the range of reasonableness".  *See* Order at Docket No. 4879 at 2.

[4] June 6, 2007 Hrg. Tr. 36:20 - 37:2 (THE COURT: Some of the issues were well taken; you know, why don't I increase the moneys going to class members rather than going to a *cy pres* fund.  I mean, that's a good point.  MR. HAVILAND:  We think send checks, your Honor, just send them.  THE COURT:  Or just send checks.  I can deal with that at the final analysis.)

[5] The settling parties are likely to claim that the settlement is concluded and that its terms cannot be altered at this juncture.  Such a position, if espoused, would be belied by the many changes already interposed by the settling parties *post-settlement*, which the parties contend [and Mrs. Howe agrees] improve the settlement.  *See, e.g,* the Supplemental Submission filed October

First, and of primary import, is the matter of how the money AstraZeneca has agreed to put up in settlement will be spent.  There are two issues that directly impact the amounts of the checks Class members will receive: (1) the manner in which the claim amounts are calculated, and (2) the overall fund available to pay such claims.  Once the available settlement funds are exhausted, under the terms of the settlement, Class members receive reduced amounts based on their relative pro rata shares of the overall fund.[6]

Mrs. Howe, through counsel, originally objected to the model for the calculation of consumer damages proposed by Dr. Hartman in the AstraZeneca case on grounds that it was flawed by its failure to account for the realities of actual drug payments made by consumer Class members with insurance, like Mrs. Howe.  While certain changes were made,[7] the Hartman model still wrongly assumes that all consumers with insurance pay the same amount: 20% of their 20% Medicare co-pay.  As Class Counsel know, Mrs Howe and thousands of consumers with insurance from the same insurer, United Health Group [one of the largest insurers in the

---

25, 2007 at Docket No. 4813.  Further, this Court is by no means bound to accept the settlement terms, as written, and it may require that the parties go back to the drawing board as many times as needed to get it right.  *See, generally, In re Relafen Antitrust Litig*, 231 F.R.D. 52 (D.Mass. 2005)(Young, C.J.)(wherein this Court required multiple rounds of changes before finally approving a proposed settlement).

[6] Mrs. Howe has no objection to pro rata reductions in Class member claims, provided that amount of the available consumer fund is maximized as set forth herein.  In this regard, her position on behalf of consumers is no different than the position Class Counsel have taken on behalf of their TPP clients and Classes under the GSK and Track 2 settlements – *ie*., TPPs are able to share pro rata a total settlement fund, undiluted by arbitrary caps of claims or set asides for *cy pres*.

[7] As demonstrated in prior filings, Mrs. Howe's counsel was able to prevail upon Dr. Hartman to alter his original model for consumer damages – which understated consumer damages based upon a misconception about TPP payments – to properly account for the fact that Medicare beneficiaries with supplemental insurance actually paid substantial amounts out of pocket for their drugs. This change yielded tens of millions in additional damages under the ultimate damage model proposed for the Class 1 AstraZeneca consumer Sub-Class trial.

nation], paid 50% of their 20% Medicare co-pay.  This problem has not been fixed under the claim administration process proposed for the AstraZeneca settlement.

To shortcut this issue, however, and to obtain a reasonable and fair resolution for all consumers now, as opposed to later after an appeal, Mrs. Howe respectfully suggests that the Court should reject this proposed claims administration process here in favor of the one Class Counsel and the Track 2 defendants have proposed, and this Court has approved preliminarily, for the pending Track 2 settlement.  While there may be other, unrelated issues of concern with that proposed settlement, the model for the payment of claims essentially adopts the position Mrs. Howe suggested in her initial objection here, and with which this Court reacted favorably. See June 6, 2007 Hrg. Tr. 36:20 - 37:2 ("MR. HAVILAND:  We think send checks, your Honor, just send them.  THE COURT:  Or just send checks.  I can deal with that at the final analysis."). Mrs. Howe's objection suggested that settlement proceeds could be sent directly to the Medicare beneficiaries through mailed checks using the payment information included in the CMS database, which includes the actual dollars paid toward the 20% Medicare co-pay for covered drugs.  While the settling parties here continue to staunchly resist such a proposal as being over-inclusive in attempting to treat all Class members equally and potential leading to greater payments than alleged actual damages,[8] their proposed Track 2 settlement – settling largely generic drug claims arguably more difficult than those of the Class 1 AstraZeneca consumer Sub-Class – provides for an equal payment mechanism of three times the full 20% Medicare co-pay, as calculated by CMS, regardless of whether Class members made such payments.[9]  *See, e.g,*

---

[8] *See* Class Counsel Mem. of Law In Support of Joint Motion for Final Approval at 37.

[9] *See* Class Counsel Mem. of Law In Support of Joint Motion for Final Approval at 45 (wherein Class Counsel concede that "the focus of the Track 2 proposed settlement is on reimbursing out-of-pocket payments, which can be *greater* than the actual damages incurred by

Exhibit C.1 "Short Mailed Notice to Class 1 Consumers with Pre-Paid Reply Card" at Docket No. 5133-2 at 9 of 81 (advising consumers to simply mail back the card and "[y]ou will receive a check"); Exhibit C.2 Notice, Docket No. 5133-2 at 21 of 81 (advising "[y]our claim will be calculated by the Claims Administrator based on information obtained from CMS that shows your total out-of-pocket co-payment obligations under Medicare Part B for all Class Drugs during the Class Period"); *see also*, Exhibit K at Docket 5133-4 (same).

While Class Counsel have come nearly full circle to Mrs. Howe's view on the consumer claims process, and now concede that CMS has the data by which to simply calculate amounts paid by Class members for purposes of paying their claims,[10] they have not agreed to utilize this data to pay the AstraZeneca consumer Sub-Class in the same manner as the Class 1 consumers in Track 2. They provide no reasonable explanation for not doing so. Only this Court can prevent the obvious inequity of *underpaying* the consumer Sub-Class Mrs. Howe was charged to represent adequately.

The overall amount of the settlement fund should not be artificially reduced by set asides for purported *cy pres* or unchecked attorneys' fees and costs.[11] This Court expressed some

_____

the Class Member")(emphasis supplied).

[10] In her Motion for Reconsideration filed May 22, 2007 [Docket No. 4250], Mrs. Howe rightfully pointed out that, "[t]o ensure that AstraZeneca pays the entire amount that it has agreed to pay, the Claims Administrator should calculate the proper benefit owed to each class member ... using the same CMS data that Settling Counsel cite in support of their proposed notice plan." To see the evolution of Class Counsel's viewpoint, *compare* Zoladex Settlement Claim Form filed May 21, 2007 [at Docket No. 4227-3, p. 23 of 25](asking Class members to identify both dates and amounts of drug payments), *with* Zoladex Settlement Claim Form filed October 25, 2007 [at Docket No. 4813-3, pp. 30-31 of 32](providing dates, but asking for amounts of drug payments), *with* Postcard for Track 2 settlement [at Docket No. 5133-2, p. 9 of 81](asking only for return of a signed card, as amounts of drugs payments are calculated based on CMS data).

[11] Mrs. Howe's concerns about the fee and cost reimbursement request is addressed below.

reservations about the *cy pres* provision in the settlement when the matter was first raised by

Mrs. Howe's objection, and agreed to address it at the Fairness Hearing.  *See* June 6, 2007 Hrg.

Tr. 36:20 - 37:2 ("THE COURT: Some of the issues were well taken; you know, why don't I

increase the moneys going to class members rather than going to a *cy pres* fund.  I mean, that's a

good point. ... I can deal with that at the final analysis.).  What the settling parties have done is

created an artificial cap on the funds that may be used to pay claims, and mislabeled it "*cy*

*pres*."[12]  As Mrs. Howe's objection pointed out, it appears that the original intent of this

settlement term was to channel money to the Prescription Action Litigation ("PAL") group, an

organization created and funded by Hagens Berman to bring consumer fraud litigation against

drug companies.  But, AstraZeneca's lawyers correctly objected to giving PAL any *cy pres*

dollars.[13]  Nevertheless, the *cy pres* set aside was put into the settlement agreement with no

explanation being given to Mrs. Howe or the Class in the notice or otherwise.[14]  AstraZeneca

---

[12] "A cy pres distribution is appropriate only where there is a settlement fund which is not fully distributed to the class." *Democratic Cent. Comm. v. Washington Metro. Area Transit Comm*., 84 F.3d 451, 455 (D.C.Cir.1996) (commenting that "[i]n class actions, some courts have applied the equitable doctrine of cy pres to undistributed damage or settlement funds."); 2 Newberg on Class Actions § 4.26 (4th ed.2002) (recognizing cy pres doctrine traditionally applies where settlement agreement is silent concerning distribution of unclaimed funds). "In class actions, some courts have applied the equitable doctrine of cy pres to undistributed damage or settlement funds. That doctrine permits such funds to be distributed to the 'next best' class when the plaintiffs cannot be compensated individually. The object of applying the funds to the 'next best' class is to parallel the intended use of the funds as nearly as possible by maximizing the number of plaintiffs compensated." *Democratic Cent. Committee of District of Columbia v. Washington Metropolitan Area Transit Com'n,* 84 F.3d 451, 455-456, (D.C. Cir. 1996).

[13] *See* Exhibit "F" to the Declaration of Donald E. Haviland, Jr. In Response to Court Directive Concerning the AstraZeneca Settlement, at 2 (wherein Class Counsel proposed *cy pres* amount was earmarked for "associational plaintiffs", and the undersigned objected to the "hard-wired payout to PAL"); Exhibit "I" at 2 (reflecting AstraZeneca's subsequent objection "to cy pres any amount to the consumer groups/associational plaintiffs.  In AZ's opinion they are just litigation machines").

[14] To properly evaluate the request for *cy pres* here, at a minimum, Class Counsel should be required to explain how it is that in nearly three (3) years they seemingly have not been able to

should be required to fully fund this settlement to compensate consumers here like those in Track

2, and to give credence to Class Counsel's oft-repeated exhortation that this is not a "claims-

made settlement", it is a settlement with a claims administration process (as in the GSK

settlement).[15]

Second, Class Counsel reject out-of-hand as a "red herring" Mrs. Howe's argument that

she and other insured members of the consumer Class have been left exposed to potential claims

for subrogation by their insurance carriers.  *See* Class Counsel Mem. of Law In Support of Joint

Motion for Final Approval at 36.  Indeed, they urge "it is difficult to see how this could ever

happen...".  *Id.* at 35.  Whether Class Counsel are being obtuse or disingenuous with the Court,

Mrs. Howe commends to the Court a Complaint filed in the *Vioxx* litigation *three days before*

Class Counsel made such bald statements in which Complaint Class Counsel's chosen TPP

allocation counsel in both the GSK and Track 2 settlements are seeking to assert subrogation

liens against individual claim payouts.  *See* Exhibit "B" hereto.  Whether or not Class Counsel

have entered into some sort of side agreement whereby these lawyers – and more importantly

---

find a suitable "next best" use for the more than $11 million still sitting in the consumer Class
settlement fund in *In re Lupron*, MDL 1430, despite Judge Stearns' direct request for such a
proposal.  *See* MDL 1430 Docket Nos. 514 (Order dated July 11, 2007), 515 (dated August 10,
2007 wherein Class Counsel represented that "Class Counsel will be submitting cy pres
proposals to the Court related to these remaining Funds."), and 516 (dated August 16, 2007,
stating "Co-Lead Counsel will be filing suggestions on a cy pres process soon to address the
disposition of these remaining funds").

[15] It would <u>not</u> be inequitable to require AstraZeneca to fully fund this settlement given
that they sought to add consumers in nine (9) States at the eleventh hour, even though these
States were not part of this Court's litigation class certification and thus the consumer damages
for those States were not included as part of the settlement matrix used for negotiations.
Requiring full funding would reduce the dilution impact upon the certified litigation Class
members caused by adding the consumers in all these non-certified States after the fact.  As Class
Counsel concede, "AstraZeneca bargained for 'total peace'."  Class Counsel Mem. of Law In
Support of Joint Motion for Final Approval at 36.  They should be required to pay for it.

their clients[16] – have agreed to not assert such claims against Mrs. Howe and the Class is not known,[17] but given the status of the record before the Court at the Fairness Hearing and the fiduciary duty the TPP lawyers owe their clients to pursue all manner of available recovery, it is not unreasonable for Mrs. Howe to demand some measure of protection against future potential subrogation claims by TPPs.

Lastly, as the person charged by this Court [and the one most likely] to seek to protect the interests of the Class as to such matters,[18] Mrs. Howe respectfully submits that the lawyers should be paid only a reasonable fee and reimbursement of costs actually incurred in the pursuit of the Class 1 AstraZenenca consumer Sub-Class claims.  It is clear from Class Counsel's fee submission that they seek an award of 35.8 % out of the settlement fund – well above the norm[19] and well above the amount the Court previously awarded, with reservations, out of the GSK settlement.[20]  While this Court expressed reservations previously about continuing to pay such

---

[16] As the Court can see, Mrs. Howe's insurance carrier UnitedHealth Group is one of the many plaintiffs asserting subrogation claims in the *Vioxx* Complaint.

[17] *See* Fed. R. Civ. P. 23(e)(2)("The parties seeking approval of a settlement ... must file a statement identifying any agreement made in connection with the proposed settlement"); *see also*, Exhibit M to Track 2 settlement submissions at Docket No. 5133-4, pp. 57-58 (identifying an as-yet-undisclosed agreement between Class Counsel and the same TPP counsel in *Vioxx*).

[18] *See, e.g, Murray v. E*Trade Financial Corp.*, 240 F.R.D. 392, 399 (N.D.Ill. 2006) (recognizing that "[p]art of [her] duty to protect the class requires [Mrs. Howe] to ensure that class counsel does not take an excessive fee award at the expense of the class's monetary award)(citing cases).

[19] The "benchmark" for a common fund fee award is widely recognized to be 25%.  *See, e.g, In re Lupron Marketing and Sales Practices Litigation*, 2005 WL 2006833, 5 (D.Mass., Aug. 17, 2005)("The Ninth Circuit has identified 25 percent as the appropriate 'benchmark' fee award in common fund cases. *citing Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990)).

[20] Class Counsel have taken inconsistent positions with the Court as to their view of the settlement fund and the payment of fees therefrom.  In one breadth, and in support of their view that it was proper to have negotiated their fees simultaneously with the Class settlement, they

large percentage amounts,[21] this is the Court's first opportunity to ensure that the various sub-Classes in this case do not overpay by being charged for work done in pursuit of the claims of *other* Classes, including and especially those of the TPPs.  In deciding an appropriate fee award and cost reimbursement, Mrs. Howe submits that the following legal principles should at least be considered in awarding appropriate fees to the lawyers and reimbursement of costs:

(1)    Hours expended in pursuit of losing claims or claims against defendants who are dismissed are generally not compensable.  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir.1990); *see also, Petruzzi's Inc. v. Darling-Delaware Co., Inc*., 983 F.Supp. 595, 603 (M.D.Pa.,1996).  Therefore, and by way of example only, the Class 1 AstraZeneca consumer Sub-Class should not be charged for work done in pursuit of claims against Schering [who was dismissed for lack of a consumer Class 1 representative] or Johnson & Johnson [who was dismissed entirely after a bench trial].

(2)    Hours expended in pursuit of TPP claims, and claims of Class 3 consumers, which are covered by other Classes and resolutions, should not be compensated.  Here, perhaps the best example the Court should consider is the fact that the Class 2/3 TPPs and Class 3 consumers have achieved a verdict against AstraZeneca which, if upheld on appeal, will require AstraZeneca to pay statutory fees and costs to Class Counsel.  AstraZeneca should not get a windfall by having any of those expenses paid out of this Class 1 consumer settlement fund.

(3)    Total hours expended is not a fair measurement of the value of legal services; rather, the Court should adjust the fee awarded on the basis of the quality of the work performed and the benefit to the client. *See, e.g, Prandini v. National Tea Co.,* 557 F.2d 1015 (3rd Cir. 1977). "[E]mphasis on the objective quantity of time spent should not shield wasteful or inefficient logging hours from scrutiny, and the court should reduce the compensation when that practice occurs." *Id.* at 1020.  In this case, there was "wasteful and inefficient logging hours" that can only be ferreted out by a proper review of the Court.

---

have claimed that they are seeking a statutory fee award.  In the next breadth, however, they claim they are entitled to a percentage-of-the-fund.  Respectfully, they cannot have it both ways, because the requisites for payment of statutory fees are more exacting.

[21] *See* 7/19/2007 Hrg. Tr. at 30:20–31:9 ("THE COURT: I do not guarantee that I will continue a third for every single piece of litigation because at some point there are economies that come with this, but at least with respect to the first one, I think a third is fair. I think the lodestar number you gave me was a bit overstacked because my belief is, it probably included the cases against all the defendants.").

On the cost side of the equation, Co-Lead Counsel would have this Court make a finding that an alleged reimbursement of expenses of $2,100,000.00 is "fair and reasonable" without any showing of the actual expenses incurred in the reasonable pursuit of the AstraZeneca consumer Sub-Class claims.  A review of the unrebutted record submitted by Mrs. Howe demonstrates that the fee amount agreed upon at the same time the Class settlement was reached was $8 million out of the $24 million, and a *subsequent* discussion of expense reimbursement ensued, yielding a figure of $600,000.00 for expenses.  *See generally*, Declaration of Donald E. Haviland, Jr. In Response to Court Directive Concerning the AstraZeneca Settlement and exhibits thereto.  The purported $2.1 million of expenses now claimed was never discussed, and was only carved out of the total $8.6 million after-the-fact.  On such a record, the Court should dig deeper into the costs claimed to avoid the potential for abuse.

Lastly, Mrs. Howe and her counsel object to the request of Co-Lead Counsel to have this Court award them a lump sum fee and cost amount, and leave it wholly to their unfettered discretion as to how to allocate the same amongst the various counsel who claim to have contributed to the AstraZeneca consumer Sub-Class settlement.  Such a procedure is inconsistent with the approach outlined above for awarding only fees and costs reasonably incurred in the pursuit of the consumer Sub-Class claims, and it contradicts the express terms of the fee sharing agreement Mrs. Howe's counsel entered into with Co-Lead Counsel in September 2006, the provisions of which are not being waived by interposing this objection for the benefit of Mrs. Howe and the Class.  *See, e.g, Allapattah Services, Inc. v. Exxon Corp*., 454 F.Supp. 1185 (S.D.Fl 2006)("support[ing] the proposition that district courts have the authority to reject a fee allocation that does not accurately reflect the amount of work performed by the various attorneys").

For the foregoing reasons, Joyce Howe respectfully requests that this Honorable Court consider her objections, direct the settling parties to re-negotiate the terms of their proposed settlement to address the above concerns, and return to the Court with an agreement that reflects appropriate changes.  If adopted by the parties, the proposed changes would only yield greater protections for the Class and higher claim payouts, without changing the overall settlement amount committed by AstraZeneca.  There should be no need to re-notice the Class as to such changes, should they be presented at some future date.  Ultimately, consumers would benefit.

Date: May 1, 2008                                     Respectfully submitted,

                                                      /s/ Donald E. Haviland, Jr.
                                                      Donald E. Haviland, Jr., Esquire
                                                      Michael J. Lorusso, Esquire
                                                      THE HAVILAND LAW FIRM, LLC
                                                      740 South Third Street
                                                      Third Floor
                                                      Philadelphia, PA 19147
                                                      Telephone: (215) 609-4661
                                                      Facsimile: (215) 392-4400
                                                      *Counsel for Named Plaintiff,*
                                                      *M. Joyce Howe*

**CERTIFICATE OF SERVICE**

I, Donald E. Haviland, Jr., Esquire, hereby certify that on May 1, 2008, I filed the

foregoing Reply Brief in Support of Objection of Named Class Representative, M. Joyce Howe,

to the Final Approval of Proposed Nationwide Settlement with AstraZeneca, and Objection to

Petition for Attorneys' Fees, Reimbursements, Expenses, and Compensation to the Named Class

Representative with the Clerk of this Court and used the CM/ECF system to send notification of

such filing to all registered person(s).  I also caused courtesy copies to be faxed to the Court,

Liason Counsel for class plaintiffs and counsel for AstraZeneca.

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr., Esquire
THE HAVILAND LAW FIRM
740 South Third Street
Third Floor
Philadelphia, PA 19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400
haviland@havilandlaw.com