UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) Civil Action No. 01-12257-PBS ) |
| **THIS DOCUMENT RELATES TO:** | ) Hon. Patti Saris ) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) ) |

**UNITED STATES' MOTION TO AMEND CMO-29, AND REQUEST FOR EXPEDITED RELIEF, AND INCORPORATED MEMORANDUM OF LAW**

The United States hereby requests that this Court amend the deadlines set forth in Case Management Order 29 (CMO-29), as amended, to address Abbott's large, unexpected document production on the last day of and after the close of fact discovery.[1]

Abbott produced more than **thirty-five percent** of its non-data document production on the April 25 close of fact discovery. Further, although the details provided by Abbott about have been vague, Abbott counsel notified the United States for the first time late in the day on April 24, that it would not complete its production by the discovery deadline, and that it intends to produce a potentially large volume of additional documents to the United States in the coming weeks. Abbott did not provide the United States with advance notice or seek leave of the Court to complete its production outside the fact discovery period.

---

[1] Abbott has ignored the United States' requests to meet and confer about the relief sought by this Motion. Ex. 1.

Recent testimony of Abbott's corporate designee on document collection and production suggests that Abbott did not put sufficient measures in place to locate and produce responsive or relevant documents at any time during this case. As a result, it appears that the majority of Abbott documents will not have been produced until after depositions have taken place and fact discovery has closed. Abbott has had since November 2006 to search for and produce these documents and has inexplicably failed to do so.[2] This is an abuse of the discovery process and prejudices the United States' ability to prepare its case for summary judgment and trial. The United States and its experts should not be required to press forward with the disclosure of expert reports and the filing of motions for summary judgment without the benefit of all fact discovery in this matter. CMO-29 was carefully structured with parameters and deadlines that allowed an orderly progression through fact discovery, expert discovery and summary judgment motions. The instant Motion preserves CMO-29 by setting deadlines keyed to Abbott's dilatory document productions.

Because, without leave of Court, Abbott has unilaterally moved its fact discovery deadline in CMO-29 to accommodate its late productions, the United States seeks the following relief:

- Require Abbott to file a Certification of Completion with the Court certifying the completion of its production within seven (7) days of entry of an Order;

- Allow the United States sixty (60) days from Abbott's Certification of Completion to review productions made by Abbott on or after April 25, to assess whether the United

---

[2] Notably, Abbott insisted on an expedited discovery schedule in this matter claiming that it only needed twelve months of discovery rather than the eighteen months proposed by the United States. (October 26, 2006 Judge Saris Hrg. Tr. at 42:4-11) (Ex. 2). Yet, almost eighteen months later, it is Abbott that has failed significantly to meet its discovery obligations.

- States needs to re-open or take additional depositions, or seek other discovery, and to file a Status Report addressing these issues;

- Require Abbott to make available within ten (10) days from Abbott's Certification of Completion, an Abbott corporate designee to testify about the late productions;

- Re-set the remainder of the CMO-29 deadlines to conform with the one-sided extension of the fact discovery deadline, so that the United States' expert reports are to be served thirty (30) days after the review of the United States' Status Report and a determination by this Court; and

- Any other relief the Court deems necessary or appropriate.

In addition, the United States requests that the Court expedite its consideration of this Motion given that the next CMO-29 deadline is May 27, the date for the United States' expert reports. There is no prejudice to Abbott by the granting of this Motion.

## BACKGROUND

On March 23, 2007, this Court entered CMO-29, originally setting the discovery deadline for December 31, 2007. Dkt. No. 3956. Given the size of this case, the parties could not complete all discovery by that date. As a result, the United States requested that the Court extend the discovery deadline to June 30, 2008, while Abbott insisted that no new discovery be allowed and clean-up discovery be extended only to March 31, 2008. See United States' Motion and Memorandum for Enlargement of Time to Complete Discovery at 2 (Dkt. No. 4923, 4924), and Abbott's response at 3 (Dkt. No. 4936). This Court adopted the March 31 deadline sought by Abbott. See Judge Saris's Electronic Order of December 18, 2007, in part denying Dkt. No. 4923, Motion for Extension of Time to Complete Discovery (Ex. 3). Once again, neither party could complete all document production and privilege logs by that date. See Joint Submission and Request for Expedited Consideration Regarding Completion of Document Production and

Other Pretrial Deadlines. (Dkt. No. 5206). As a result, the parties sought, and the Court allowed, an extension until April 25, 2008 to complete document production and re-set all other CMO-29 expert and summary judgment deadlines. See Judge Saris's Electronic Order of April 15, 2008, granting Dkt. No. 5206 (Ex. 3). The United States worked diligently to meet the April 25 deadline and only had to produce clean-up discovery during the month of April. Abbott, as it turns out, was nowhere near completing its production or meeting the April 25 deadline.

## ARGUMENT

A.  Abbott's Productions On or After April 25 May Exceed all Previous Productions

On April 25, Abbott produced approximately 429,000 pages of emails, plus an additional 24,000 pages of non-emails ("April 25 production"). Up until this time, Abbott's production in this case had included approximately 833,000 pages of documents (excluding "data" and unknown page counts for smaller productions of documents during depositions). Abbott's April 25 production represents more than thirty-five percent of total document production. Despite numerous depositions of Abbott corporate designees on document and email collection and production, and hearings on the United States' numerous motions to compel documents, Abbott never revealed that it was withholding massive quantities of documents or that it had not searched its HPD Shared Drive database.[3] Moreover, Abbott certified the completion of its production as required by Order of Magistrate Judge Bowler on March 3, and did not mention

---

[3] The United States has diligently pursued numerous missing categories of Abbott's document production over the course of the past eighteen months. See United States' Motion to Compel Abbott to Produce All Discovery Required by CMOs 5 and 10 (Dkt. No. 3525); United States' Second Motion to Compel Abbott Laboratories to Produce Documents (Dkt. No. 4047); and the United States' Third Motion to Compel the Production of Documents from Abbott Laboratories, Inc. and to Require that Abbott De-Designate Non-Confidential Information (Dkt. No. 4799).

4

even the possibility of these new collections of documents. See Declaration of Ellen T. Klaus, Ex. A to March 3, 2008 letter from J. Winchester to R. Brooker (Ex. 4).

Abbott counsel sent an email at 7:05 p.m. on April 24, informing the United States that on April 25, Abbott would make a supplemental document production to the United States. The United States learned on the April 28 receipt of that production that it contained over 453,000 pages of material – over thirty-five percent of Abbott's non-data production to the United States to date. Even more surprising, in that same email, counsel for Abbott informed the United States that it could not complete its production by the fact discovery deadline, and that Abbott planned to begin **new** searches through a Hospital Products Division Shared Drive and produce even more documents approximately 14-21 days later. (Ex. 1). Seeing no filing to the Court on April 25, counsel for the United States inquired at 1:52 p.m. on April 25, whether Abbott would be filing a motion to enlarge the deadline to accommodate additional productions, and indicated that the United States would consent to an enlargement of Abbott's fact discovery deadline as long as Abbott also requested to re-set the other CMO-29 deadlines. (Ex. 1). Abbott ignored the United States' inquiry and instead filed and served after 5:00 p.m. on April 25, a "status report" with very little detail about these productions. (Dkt. No. 5257) (Ex. 5).

According to counsel's email on April 24, Abbott was still reviewing an electronic production of the Shared Drive of the Hospital Products Division (HPD Shared Drive), the former Abbott division whose conduct is at issue in this case.[4] On March 13, 2008, the United

---

[4] See Judge Saris's Electronic Order of March 13, 2008, recognizing the significance in this case of the Hospital Products Division (""[Judge Bowler's] decision with respect to Richard Gonzales, a retired executive, is clearly erroneous because he was head of the Hospital Products Division at a critical time.") (Ex. 3).

5

States learned for the first time at the deposition of Alexandra Buck, Abbott's in-house counsel and corporate designee on its collection and production of electronic information, about the existence of the HPD Shared Drive. It is a computer database accessible to the HPD employees who transferred from HPD to Hospira at the time Hospira was spun into a separate entity, and on which Abbott's HPD employees saved extensive information, including, for example, email pst files and data reports (Buck Rule 30(b)(6) Dep at 45:11-16, 273:16-22, 274:14-21) (Ex. 6).[5] Each HPD employee subject to a litigation hold memorandum was required to search all responsive documents on the HPD Shared Drive and produce them. (Buck Rule 30(b)(6) Dep at 273:7-22, 274:1-21) (Ex. 6). Discovery has shown that adherence to these litigation holds was unlikely. Missing marketing plans covering the drugs at issue and years of highly relevant emails that pre-date 2002 still have not been located or produced; these have been the subject of several motions to compel.[6] See Dkt. Nos. 3525, 4047, 4799. Abbott counsel represented to Magistrate Judge Bowler at the motions hearing on January 31, 2008 that its email production was

---

[5] Abbott was confident that its paper production of hard copy documents from 1996 until 2002 was complete, because HPD employees were required to search for and print documents from the HPD Shared Drive during that time frame. (Buck Rule 30(b)(6) Dep at 273:7-22, 274-275, 276:1-12) (Ex. 6). However, Abbott did not institute any formal system to monitor which employees actually received the memoranda, or to verify which employees complied with the memoranda (Klaus Feb. 2008 Rule 30(b)(6) Dep at 227:4-22, 228-233, 234:1-19) (Ex. 7); (Buck Rule 30(b)(6) Dep at 269:22, 270-273) (Ex. 6).

[6] Abbott's email production to date consists almost exclusively of 2002-2003 email. Of the over 453,000 pages of discovery produced to the United States by Abbott on April 25, over 429,000 pages were identified by Abbott as email. Abbott has produced proportionately few emails predating 2002, and upon cursory review, it appears that the approximately 429,000 recently produced emails do not remedy Abbott's failure to produce all responsive emails for the operative period of this case (1991 to 2001).

6

complete.[7] In addition, Abbott's corporate designee testified as recently as March 13 that "there are no accessible e-mails that have not been produced." (Buck Rule 30(b)(6) Dep. at 75:1-21) (Ex. 6). In summary, given the documented inadequate preservation of, and searches for, hard copies of documents, especially the still inadequate production of pre-2002 email, and the likelihood that the HPD Shared Drive may capture them, a search of the HPD Shared Drive is necessary in order to complete discovery. The April 24 email from Abbott counsel further informed the United States that Abbott's review of the HPD Shared Drive documents would require 10 people over the course of 14 to 21 days, later to be represented as 21 days. (Ex. 1). This review by Abbott's counsel had not even begun at the close of discovery, nor could Abbott quantify the number of documents involved. See Ex. 1, Ex. 4 (Exhibit A to Status Report), Ex. 5 (Status Report). However, Abbott's representations about the length of time and number of people required to late produce this discovery to the United States suggests that the volume is significant. In sum, it appears that Abbott still has miles to go to search for documents on its HPD Shared Drive and to complete its production.

Abbott's late search through the HPD Shared Drive is inexcusable. Abbott, like any other party to litigation, is required to follow the Federal Rules of Civil Procedure in meeting its production obligations. Once it was served with the United States' document requests as early as 2006, Abbott had an obligation to search all locations for documents, which would have included locations of both hard copies and electronic documents. See Fed. R. Civ. P. 34, Advisory

---

[7]The January 31, 2008 Hrg. Tr. at 62 (Ex. 8) reads:
    Court:  So, emails and other communications within the four categories [of the May 22, 2007 Order at Dkt. No. 4244] have been produced?
    Mr. Winchester: Yes, I would say that is what we are producing, and I tell you right now we're completely and utterly done with every aspect of that.

Committee Notes 2006 ("Electronically stored information may exist in dynamic databases and other forms far different from fixed expression on paper. Rule 34(a) is amended to confirm that discovery of electronically stored information stands on equal footing with discovery of paper documents"); *Scotts Co. LLC v. Liberty Mutual Ins. Co.*, 2207 WL 1723509, at *2 (S.D. Ohio, June 12, 2007). Both Abbott and Hospira have been subject to discovery Orders in this case that should have caused them each to search, as well as notify the United States of the existence of, the HPD Shared Drive long before late March of 2008. See Court Orders of May 22, 2007 (Dkt. No. 4244, Judge Bowler ordered Abbott to produce four broad categories of documents) and September 7, 2007 (Dkt. No. 4701, Judge Saris ordered that "Hospira shall produce all relevant documents of Abbott's Hospital Products Division in its custody, possession and control").

In addition, the United States repeatedly brought to Abbott's attention over the course of the last eighteen months that entire categories of highly relevant documents were missing from Abbott's document productions. See fn. 3, supra. The United States informed the Court at a hearing on January 31, 2008, that noticeably absent categories included HPD emails that pre-date 2002, the working files of salespersons, and the marketing plans for the drugs at issue in this case. However, Abbott counsel repeatedly represented that document production was complete.[8] Counsel never informed the Court or the United States of the existence of this HPD Shared Drive, or that it had failed to search it. As part of the stipulation to dismiss Hospira from the

---

[8] Regarding the marketing plans, counsel for Abbott represented, "[w]e have searched the company for these things. . . . But I will tell the Court, we have looked for these documents. We have produced everyone of them that we have." (January 31, 2008 Hrg. Tr. at 55 and 57) (Ex. 8). Regarding Home Infusion Services documents, counsel represented: "Judge, let me just say we have been very clear with them. We are not withholding relevant information having to do with the operation of Abbott's former Home Infusion Services group." (January 31, 2008 Hrg. Tr. at 71:13-16) (Ex. 8).

case, Abbott agreed to meet all of Hospira's discovery obligations and produce its documents. See Ex. 9. Despite this agreement and the Court's Order to search Hospira, neither Abbott nor Hospira searched the HPD Shared Drive for any of these highly relevant categories of documents.[9]

### B. Still Missing Home Infusion Services Claims Data

Another critical failure in Abbott's production that is still outstanding is the database of Abbott's Home Infusion Services group, called its CHIPs database. Abbott billed directly on behalf of its own pharmacy and on behalf of its pharmacy customers for Medicaid and Medicare reimbursement, thereby helping itself to profits on its 1000% mega-spreads. While Abbott provided some CHIPs information, it largely produced a database that is as of yet unuseable to the United States or its experts. As a result, the United States cannot identify those claims billed directly by Abbott on behalf of its own pharmacies or its customers' pharmacies. This is information that is highly relevant to this case and in the possession of Abbott. The CHIPs database has been the subject of motions to compel, one of which is still pending (Dkt. No. 5180), and a deposition of a corporate designee regarding the database. See Dkt. No. 5180 at 5-6. Abbott has repeatedly obstructed the United States' discovery of this database. Id. The information in this database is critical to proceed with both expert reports on Abbott's claims and summary judgment. The United States is prejudiced without it.

---

[9]Documents retained by a single former Abbott employee, Bruce Rodman, offer a small glimpse of the nature of the relevant documents that may be on the HPD Shared Drive. Mr. Rodman produced nearly 44,000 pages of documents that he took with him when he left Abbott, approximately 40,000 of which were Home Infusion Services documents from his computer system while in HPD (Ex. 10 at 2). Most of those documents, which are highly relevant, were never produced by Abbott.

9

C.	The United States Should Not Withstand Further Prejudice to its Case

The United States has suffered prejudice to its case by Abbott's last minute and late productions of documents and its non-production of highly relevant pricing data. Abbott's discovery abuses threaten the deadlines in this case. First, the majority of depositions took place before Abbott produced over thirty-five percent of its total non-data production of documents in this case on the last day of discovery, as well as the untold volume of documents Abbott informed the United States that it intends to produce in the weeks ahead. The United States has not had the benefit of that discovery with which to question witnesses who at times have denied any memory of events in the absence of being shown specific documents.

Second, having now just received more than 453,000 pages of discovery a few days ago, the United States has had no opportunity to process or review any of these materials. It still has to be determined whether Abbott has produced these documents in a loadable and searchable format. The same is true for the anticipated production of the HPD Shared Drive documents. If the documents are not loadable, that issue will have to be addressed with Abbott. It will take some time for attorneys to review these materials (a large number of which are emails) to determine how to proceed efficiently and effectively. It may be necessary to re-open some depositions or depose additional witnesses.

Third, critically, the United States has no information about the extent of the documents to be produced by Abbott in the coming weeks. Nor does the United States have any confidence that Abbott will be able to produce these documents by the end of the month given its claim that it has no idea of the volume of materials to be searched and produced. However, the evidence suggests that the production will be substantial given the sheer number of missing categories of

10

documents (*i.e.*, emails, marketing plans, salespersons' working files). Regardless, the United States is entitled to review and digest this new information.

Fourth, the United States' experts will be prejudiced by producing reports in the absence of an untold number of additional relevant documents. They should not be so handicapped. Indeed, by way of example, Abbott counsel repeatedly suggested through deposition examination of Dr. Matthew Perri, the United States' marketing expert, who testified at a deposition in the related AWP case in Texas, that Dr. Perri did not have the benefit of reviewing numerous HPD documents that had not been produced by Abbott. (Sept. 17, 2007 Letter from R. Brooker to J. Winchester at 4-5) (Ex. 10). That line of questions was misleading and entirely unfair given that it is Abbott that is withholding documents from production. Moreover, it will be inefficient and premature for the United States' experts to disclose preliminary reports, followed by updated reports, the latter of which will be required once the additional review of these documents is complete.

Fifth, it is prejudicial and inefficient to require the United States to press forward not only with expert discovery, but with summary judgment in the absence of all of the fact discovery.

## CONCLUSION

For these reasons, in order to avoid further prejudice to its case, the United States requests that this Court Order the following remedies:

(1)  Require Abbott to file a Certification of Completion with the Court certifying the completion of its production within seven (7) days of entry of an Order;

(2)  Allow the United States sixty (60) days from Abbott's Certification of Completion to review productions made by Abbott on or after April 25 to assess whether the United States needs to re-open or take additional depositions, or seek other discovery, and to file a Status Report addressing these issues;

11

(3)   Require Abbott to make available within ten (10) days from Abbott's Certification of Completion, an Abbott corporate designee to testify about the productions;

(4)   Re-set the remainder of the CMO-29 deadlines to conform with the one-sided extension of the fact discovery deadline, so that the United States' expert reports are to be served thirty (30) days after the review of the United States' Status Report and a determination by this Court; and

(5)   Any other relief the Court deems necessary or appropriate.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

/s/ George B. Henderson, II
George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3398
Fax: (617) 748-3272

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

/s/ Ann M. St. Peter-Griffith
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
Phone: (305) 961-9003
Fax: (305) 536-4101

JEFFREY S. BUCHOLTZ
ACTING ASSISTANT ATTORNEY GENERAL

/s/ Renée Brooker
Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Elizabeth Strawn
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, DC 20044
Phone: (202) 307-1088

Dated: May 1, 2008

## CERTIFICATION

The undersigned counsel certifies pursuant to LR 7.1(a)(2) that she attempted to confer with counsel for the Defendant Abbott Laboratories, Inc. on the issues raised in this motion and the parties have not been able to reach agreement.

Dated: May 1, 2008

/s/ Renée Brooker
Renée Brooker

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above UNITED STATES' MOTION TO AMEND CMO-29, AND REQUEST FOR EXPEDITED RELIEF, AND INCORPORATED MEMORANDUM OF LAW to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: May 1, 2008

/s/ Rebecca A. Ford
Rebecca A. Ford