# EXHIBIT 7

1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

----------------------------------x

IN RE:  PHARMACEUTICAL INDUSTRY    )

AVERAGE WHOLESALE PRICE            )

LITIGATION,                        )

_____)

                                   ) 01 CV 12257-PBS

                                   )

THIS DOCUMENT RELATES TO ALL       ) Judge Patti B.

ACTIONS:                           ) Saris

                                   ) Magistrate Judge

                                   ) Marianne B. Bouler

----------------------------------x

      Deposition of ELLEN KLAUS, taken before CHRISTINE LIUBICICH, CSR, pursuant to the provisions of the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, at 77 West Wacker Drive, Suite 3500, Conference Room I, Chicago, Illinois, commencing at 9:27 a.m. on the 8th day of February, 2008.

                                                                    2

1    ATTENDANCE:

2         THE BREEN LAW FIRM

3         BY: MR. JARRETT ANDERSON

4         5755 North Point Parkway

5         Suite 39

6         Alpharetta, Georgia 30022

7         (770) 961-9419

8

9              on behalf of Venacare, Relators;

10

11                  and

12

13        UNITED STATES ATTORNEY'S OFFICE SOUTHERN

14        DISTRICT OF FLORIDA

15        BY:  MS. ANN M. ST. PETER-GRIFFITH

16        Assistant U.S. Attorney

17        99 N.E. Fourth Street

18        Miami, Florida 33132

19        (305) 961-9419

20

21              on behalf of Plaintiffs;

22

1   within their organization who might have records as

2   well.

3   BY MS. ST. PETER-GRIFFITH:

4       Q.   And my question to you, ma'am, is:  What

5   if they didn't do that?  What if people who were

6   supposed to receive the lit hold memos did not

7   receive the lit hold memos, what was the

8   consequence of that?

9       MR. WINCHESTER:  Objection.  Hypothetical.

10  Outside the scope.

11      THE WITNESS:  I can't answer that.  I don't

12  know what documents we would be talking about, if

13  there was a record hold out at the time.

14

15

16  BY MS. ST. PETER-GRIFFITH:

17      Q.   Okay.  Let me ask it this way:  Did

18  Abbott do anything to verify that everyone who was

19  supposed to receive a lit hold memo received the

20  lit hold memo?

21      MR. WINCHESTER:  Object to the form.  Asked

22  and answered.

1    THE WITNESS: We've identified individuals who
2    received the hold memo. When we have the document
3    collection, we follow up with those people to
4    collect documents, so we collected documents from
5    those people.
6    BY MS. ST. PETER-GRIFFITH:
7        Q.   Did you ever verify with those people
8    that they sent that the lit hold memo that was
9    supposed to go down their chain of command was
10   distributed down their chain of command?
11       A.   In some -- in -- yes. We were notified
12   in many instances where folks who received a record
13   hold memo received it through their manager.
14       Q.   Okay. Did you verify that everybody who
15   was supposed to receive one received one?
16       MR. WINCHESTER: Object to the form.
17       THE WITNESS: Again, we identify those folks
18   that are reasonably likely to have documents if --
19   and send the memos to those individuals and ask
20   them to forward on the memo to other people who
21   would reasonably likely have documents.
22   BY MS. ST. PETER-GRIFFITH:

1    Q.    And my question to you, ma'am, is very
2    simple:  Did Abbott have a mechanism for verifying
3    that everyone who was supposed to receive the
4    distribution of the lit hold memo received that lit
5    hold memo?
6         MR. WINCHESTER:  Objection.  Asked and
7    answered.
8         THE WITNESS:  When we go through our
9    collection process we identify people, and if we
10   have additional names that weren't on an original
11   hold memo, but somehow have the hold memo, we know
12   that it was passed on to that person.
13   BY MS. ST. PETER-GRIFFITH:
14   Q.    But did you verify whether or not all of
15   the lit hold memos were distributed as they were
16   supposed to be distributed according to Abbott
17   policy?
18        MR. WINCHESTER:  Same objection.
19        THE WITNESS:  Again, verifying -- see that a
20   memo was forwarded on to another person from the
21   original recipient to me is -- that's -- they're
22   following the directive.  That memo is being

1   forwarded on to somebody else who wasn't on the
2   original hold memo and we're now collecting
3   documents from them.
4   BY MS. ST. PETER-GRIFFITH:
5       Q.   Okay.  Let's take an example:  Let's say
6   you sent a lit hold memo to Don Robertson, which
7   you did.  I'm representing to you that you've got
8   lit hold memos in there to Don Robertson.  And Don
9   Robertson in turn was supposed to send it down to
10  his managers, who in turn were supposed to
11  distribute to their district managers, who in turn
12  were supposed to send to their sales force.  Are
13  you following me?
14      A.   Yes.
15      Q.   What did Abbott do to verify that from
16  the top, Don Robertson, all the way down to the
17  sales force, that that lit hold memo was properly
18  distributed?
19      MR. WINCHESTER:  Object to the form.
20  BY MS. ST. PETER-GRIFFITH:
21      Q.   If anything, other than relying upon Mr.
22  Robertson to send it to his staff?

1           MR. WINCHESTER:  Object to the form.

2           THE WITNESS:  Again, we relied on the individ

3    -- original recipient to forward that memo on to

4    folks in their organization that would reasonably

5    likely have documents related to whatever the topic

6    was on the hold memo.  It's also quite possible

7    that whoever the original recipient was wasn't --

8    didn't -- there was nobody else to forward it on

9    to.

10

11

12   BY MS. ST. PETER-GRIFFITH:

13      Q.   But my question is:  If there was, other

14   than -- and it's your testimony it sounds like --

15   that other than relying upon the original recipient

16   to send it down the chain, you didn't -- Abbott

17   didn't undertake any other measures to verify that

18   everyone who received a lit hold -- who supposedly

19   received a lit hold memoranda received it.

20          MR. WINCHESTER:  Objection.  Form.

21          THE WITNESS:  Well, that, we relied on the

22   individual or the original recipient, but then we

232

1   also -- when we collected documents, as I had

2   mentioned before, if that person wasn't on an

3   original hold and we were collecting documents from

4   them and they had the hold, we knew they received

5   that memo from somebody else who indicated that

6   they would have reasonably likely to have -- likely

7   to have documents.

8   BY MS. ST. PETER-GRIFFITH:

9        Q.   How does that have anything to do with

10  verifying that everyone who was supposed to receive

11  the lit hold memo received it?

12       MR. WINCHESTER:  Objection.  Form.

13  Argumentative.

14       THE WITNESS:  Abbott sends the memo to those

15  original recipients that are most likely to have

16  documents, and there is a directive in the record

17  hold memo to forward it on to people in their

18  organization who would also have documents.

19  BY MS. ST. PETER-GRIFFITH:

20       Q.   Did Abbott document in any way its

21  verification, if it had any verification, that

22  those memos were in turn distributed to everyone

1   who needed to receive them?

2       MR. WINCHESTER: Objection. Form.

3       THE WITNESS: We do have forwarding memos for
4   records hold that were sent on to other
5   individuals, and I think those are in the record
6   hold memos.

7   BY MS. ST. PETER-GRIFFITH:

8       Q.  But do you have memos -- do you have
9   E-mails or memos to everyone who should have
10  received it?

11      A.  **There may not be anybody else.**

12      Q.  Okay. But if there was, do you have --
13  can you verify that every lit hold memo that was
14  supposed to be distributed was distributed to
15  everyone it was supposed to be distributed to?

16      MR. WINCHESTER: Objection. Form.

17      THE WITNESS: Other than what I said.

18  BY MS. ST. PETER-GRIFFITH:

19      Q.  No?

20      A.  **No.**

21      Q.  Um, what would happen if someone did not
22  receive a lit hold memo and they destroyed their

1  documents; does Abbott have any way of verifying
2  whether documents may have been spoliated because
3  someone didn't receive the lit hold memo and in
4  turn destroyed their documents?
5      MR. WINCHESTER: Objection. Hypothetical.
6  Outside the scope.
7      THE WITNESS: We have no reason to believe
8  that anything was destroyed other than these 12
9  files that we know, our HR files that were
10 destroyed before 1992.
11 BY MS. ST. PETER-GRIFFITH:
12     Q.  Well, did Abbott undertake any measures
13 to research whether or not any other records were
14 destroyed?
15     MR. WINCHESTER: Objection. Form.
16     THE WITNESS: There would be no reason to. We
17 have no reason to believe that any other files were
18 destroyed. We have undertaken a massive search of
19 both the Abbott side and the Hospira HPD records.
20 BY MS. ST. PETER-GRIFFITH:
21     Q.  But you did nothing other than -- other
22 than with regard to these 12 documents or 12 files,

3

```
1      JONES DAY

2      BY:  MR. JASON G. WINCHESTER

3      77 West Wacker Drive

4      Suite 3500

5      Chicago, Illinois 60601-1592

6

7           on behalf of Defendant,

8           Abbott Laboratories;

9

10     BUREAU OF MEDI-CAL FRAUD & ELDER ABUSE

11     BY:  MR. ELISEO SISNEROS

12     DEPUTY ATTORNEY GENERAL

13     110 West A Street

14     #1100

15     San Diego, California 92101

16     (619)688-6043

17

18          on behalf of The State of California;

19

20     ALSO PRESENT:

21     ANTHONY MICHELETTO,

22     Legal Videographer.
```