# EXHIBIT 8

1

1 - 157

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
CONSUME, ET AL,              )
                Plaintiffs,  )
                             )
-V-                          )   CIVIL DOCKET NO.
                             )   01-12257-PBS
ABBOTT LABORATORIES, ET AL,  )
                             )
                Defendants.  )
```

MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

January 31, 2008

Boston, Massachusetts

APPEARANCES ON PAGE 2

Proceedings recorded by electronic sound recording, transcript produced by Apex Reporting.

*APEX Reporting*
(617) 269-2900

2

APPEARANCES:

For the United States:

    RENEE BROOKER, ESQ.
    GEJAA GOBENA, ESQ.
    JUSTIN DRAYCOTT, ESQ.
    U.S. Department of Justice
    604 D Street, NW
    Patrick Henry Building, Room 9028
    Washington, DC   20004

For the Defendants:

    JASON WINCHESTER, ESQ.
    JAMES DALY, ESQ.
    Jones Day
    77 West Wacker Drive
    Chicago, IL   60601

For the Intervenor:

    JAMES BREEN, ESQ.
    The Breen Law Firm, PA
    3562   Old Milton Parkway
    Alpharetta, GA   30005

1    in this litigation, which indicates to us -- and it's
2    certainly backed by other testimony -- that these plans were
3    widely circulated within Abbott -- used for training --
4    perhaps people hand wrote notes on them.
5        So, we're not looking for one copy of one plan.
6    There should be plans throughout Abbott Laboratories --
7    copies of these plans, rather -- for Abbott Laboratories.
8        We would request, specifically, that Abbott
9    certify that it has done everything it can to search for
10   these plans.  And we've requested in our motion that they
11   indicate all the circumstances that they are aware of and
12   what they've done to ascertain what happened to those plans:
13   Were they lost; were they destroyed; because we believe that
14   these are highly relevant documents that will form the basis
15   for a future spoilation motion, but we really need more
16   information and certification from Abbott about these plans
17   to reach that point.
18        Thank you.
19        THE COURT:  Mr. Winchester?
20        MR. WINCHESTER:  Certainly, Judge.
21        The position we actually expressed in our brief is
22   not, "The Government can't expect us to go find these."  It
23   is we have searched the company for these things.
24        When they talk about marketing plans, remember
25   what drugs we're dealing with here.

1   questions she likes from the witness at that time.
2           But I will tell the Court, we have looked for
3   these documents.  We have produced every one of them that we
4   have.
5           They've gotten some additional ones when they go
6   and subpoena, individually, former employees.  Sometimes,
7   these former employees may have kept them.  I think they've
8   turned up things that way.  But as for the company, itself,
9   we can search the company and we have given them what we've
10  got.
11          THE COURT:  All right, I'm satisfied that you can
12  ask those questions at deposition, you'll have testimony
13  under oath and if they turn up later on, you will be able to
14  use the deposition.
15          MS. BROOKER:  Thank you, your Honor.
16          The next category of documents was argued at the
17  May 16, 2000 hearing before the Court and, again, you know,
18  we cite this in our brief, it's a category documents
19  referred to as the alternate site 20 percent customers.  And
20  what I mean by that is, the key group within the Hospital
21  Products Division that is an issue in this case.  The vast
22  majority has been represented to us -- we accept it that the
23  vast majority of the customers were smaller customers
24  represented 20 percent.  But there's a lot of those
25  customers.

```
                                                              62
 1   farther and give them whatever communications we had with
 2   the customers about the weather on Tuesday.  And there is no
 3   basis for relevance for that outside the four categories.
 4           We have no issue producing, and we have gone
 5   forward producing according to the categories your Honor
 6   identified.
 7           THE COURT:  So, emails and other communications
 8   within the four categories have been produced?
 9           MR. WINCHESTER:  Yes.  I would say that is what we
10   are producing, and I tell you right now we're completely and
11   utterly done with every aspect of that.  I can't say that
12   right now they will be talking, obviously, next Thursday, to
13   our document production witness, but that has been what
14   we've expressed to the Government as what we're willing to
15   do.
16           THE COURT:  I'll allow to the extent that those
17   documents covered by the four categories should be produced,
18   but not beyond.
19           MS. BROOKER:  Your Honor, may we have a deadline
20   for that?  We have two months left of discovery.
21           I believe, in our motion, requested that Abbott
22   produce all documents within 20 days.
23           THE COURT:  Can you do it in 20 days?
24           MR. WINCHESTER:  What I'd suggest, Judge, is let
25   me check with the client.  I think we'll have more
```

71

```
 1   get those actual documents, which is more work for us to
 2   get, frankly, than a stipulation.  But if we get a
 3   stipulation from Abbott that there were 500,000, 5,000,000
 4   -- I have no idea what the number would be -- claims filed
 5   from 1991 to 2003, we would accept that stipulation.
 6             We would need, however, some sort of assurance
 7   that it is based on a real number.
 8             In other words, I'm not sure how they would do
 9   without themselves finding the HCFA forms and counting them
10   up.  But if they think they can do it somehow from the CHIPS
11   data, we can't.  We need that information.
12             Thank you.
13             MR. WINCHESTER:  Judge, let me just say we have
14   been very clear with them.  We are not withholding relevant
15   information having to do with the operation of Abbott's
16   former Home Infusion Services group.
17             What counsel is talking about is what they need,
18   supposedly for their case, has to do with claims that were
19   submitted through Home Infusion and payments that were made
20   by Medicare and Medicaid.
21             We believe that the data we gave them, through
22   what was called the CHIPS system, this was the system
23   through which all these claims were processed -- contains
24   fields of information that has to do with the amount that
25   was claimed and the amount that was paid for every claim.
```