-10-

**Lobbying Documents**

We have made numerous specific requests since at least January 2007, that Abbott produce relevant lobbying documents. *See* 01/19/07 letter from G. Gobena to J. Winchester. Please confirm by October 1 that documents in the possession of either (1) Abbott's Washington/Federal Affairs' office or (2) any corporate offices with oversight of Abbott's lobbying activities, have been produced. Please further produce or confirm by that date whether all documents Abbott has produced include all monthly activity reports created by Abbott's in-house lobbyists, internal e-mails, lobbying time reports, and all other materials such as those described by Abbott's in-house state lobbyist, Darryl Dorcy, that are related to Abbott's national lobbying efforts. *See* letter of 04/28/07 from R. Brooker to J. Winchester.

In addition, Abbott counsel has represented that it does not believe that state lobbying documents in Abbott's possession are relevant. On that basis, Abbott counsel has stated that Abbott will not be producing them. Please confirm that this is your final position on state lobbying materials, including all materials set forth under the heading "Daryl Dorcy" in our April 28, 2007 letter to Abbott counsel.

Finally, Abbott counsel has not produced any lobbying materials relating to work done by consultants or firms hired by Abbott. For example, we have learned that an Abbott consultant, Nancy Taylor, was paid to provide assistance to Abbott's efforts to shape Medicare drug reimbursement reform efforts in 1997. There are documents on Abbott's amended privilege log that Abbott counsel has withheld under a claim of attorney-client privilege and in which she is named. *See* 07/20/07 Amended Abbott Privilege Log, Entry Nos. 39-42. To the extent there are documents from outside consultants or lobbyists regarding government drug reimbursement, please provide them by October 1, or inform us whether Abbott will be continuing to withhold these materials from production so that we may set up a date for a meet and confer session with you regarding these documents.

**Medicare Working Group**

Please confirm in writing that Abbott has produced all documents relating to the Medicare Working Group by October 1, 2007.

In addition, we have learned that there were other groups or task forces at Abbott that worked on government drug reimbursement issues. For example, we note from a 1991 document that Abbott had a Reimbursement Task Force. *See* June 1, 1991 Medicare Reform Paper (ABT-DOJ 0018754-775, marked as Highly Confidential). There may have been other groups or task forces at Abbott over the years that dealt with government (state or federal) or third party drug reimbursement issues. Please provide copies of all documents relating to any task force or group that dealt in any way with government or third party reimbursement issues. *See* United States' Second Request For Production, Nos. 37-38, 40, 42.

## Congressional Investigations and the October 31, 2000 Stark Letter to Miles White

Please provide by October 1, 2007, copies of all documents reflecting analyses, discussions or any consideration of: (1) the October 31, 2000 letter from Representative Fortney Pete Stark to Miles White – or the issues raised therein generally – and (2) any Congressional consideration of AWP issues or investigations of Abbott from 1991 to the present. If Abbott asserts any claim of privilege over any such documents, the United States asks that Abbott's privilege log be updated to reflect those privilege claims by October 1, as well.

## 2001 Price Adjustment Documents

By October 1, 2007, please confirm that Abbott has produced all documents related to the 2001 price adjustment. In addition, please confirm by that date that Abbott's privilege log includes all documents related to the 2001 price change which Abbott is withholding from production based upon a claim of privilege.

## TAP Documents

Magistrate Judge Bowler denied without prejudice our discovery requests relating to TAP pharmaceuticals – discovery that she expressly ruled could be renewed upon a "further showing down the road". *See* 05/16/07 Hrg. Tr. at 62. Since that ruling, witnesses have testified that TAP individuals were involved in Abbott working groups regarding government reimbursement issues. *See* 7/30/07 Dep. Of James E. Miller at 231-232. Further Abbott employees have testified that Abbott engaged in lobbying efforts on TAP's behalf regarding government drug reimbursement issues for Lupron. *See* 07/12/07 Dep. of Cynthia Sensibaugh at 54-75, and 05/15/07 Dep. of Virginia Tobiason at 267-273, 311-313, 340-343. Further documents show that Abbott was involved in lawsuits filed by Lupron against the federal government relating to drug reimbursement policies. This additional evidence justifies further discovery into the relationship between TAP and Abbott on government drug reimbursement issues.

Moreover, Abbott, as a TAP joint venturer, was involved with the negotiations of the TAP criminal plea, civil settlement and corporate integrity agreement, and was very familiar with the issues therein as a letter signatory thereto. Critically, as Mr. Rodman's testimony (6/26/07 Dep. of Bruce Rodman at 120-124) and documents (*see e.g.,* BR 2422) reflect, components of Abbott's Hospital Products Division were involved with pricing Lupron and selling it outright to Alternate Site customers for the same operative period that TAP engaged in the criminal conduct for which it pled guilty. Judge Saris ruled on September 7, 2007, that third parties subpoenaed by the United States in this case "shall produce all documents related to pricing that drug regardless of the time period generated." Dkt. No. 4701. We see no reason why Judge Saris would require third parties to produce relevant TAP materials, but allow Abbott to continue to withhold clearly relevant materials as we set forth above.

Please let us know by October 1 whether Abbott will comport its discovery responses to Judge Saris's Order on third party discovery, or continue to withhold from production all TAP documents dealing with AWP or government drug reimbursement issues. In addition, please

-12-

confirm whether Abbott has complied with ¶ 5 of Judge Saris's September 7, 2007 Order regarding Hospira documents, as well as relevant TAP documents. We hope that Abbott will reconsider its prior positions in light of Judge Saris's ruling so that we can avoid burdening the Court with an issue on which it has previously ruled.

## MDL Electronic Mail Messages

With respect to e-mail messages previously produced by Abbott to other plaintiffs in the MDL, during our July 6, 2007 meet and confer session, Abbott counsel represented that Abbott would produce a subset of those messages which would be comprised of e-mails through 2003 that mention or relate to the subject drugs, AWP, spread marketing or other pattern and practice type conduct alleged in the United States' Complaint. *See* 07/25/07 letter from R. Ford to J. Winchester.

On August 22, 2007, Abbott produced 28 DVDs (ABT-DOJ-E 0008372 - 0545291) which were identified as containing "Abbott's e-mail production" and being "responsive to a number of the DOJ's requests". *See* 08/22/07 letter from C. Geisler to M. Lavine. Please confirm by October 1, 2007, that the August 22, 2007 production, in fact, contains the MDL e-mails previously requested. In addition, by October 1, please confirm that Abbott has searched for and produced all e-mails from 1991 to 2003 responsive to discovery requests made by the United States to date. Finally, by the same date, please provide a list, description and rationale for any e-mails withheld from Abbott's production of the MDL e-mails based upon temporal, scope, or on grounds that the e-mails do not mention or relate to the subject drugs, AWP, spread marketing or other pattern and practice type conduct alleged in the United States' Complaint.

## Cliff Krajewski Documents

Following the deposition of longtime Abbott employee Cliff Krajewski, we made specific requests for materials about which he testified. *See* letter of 04/28/07 from R. Brooker to J. Winchester. Abbott has not responded to this request. Please produce all documents referenced in the letter by October 1, 2007.

## IMS Data, Documents, Inventory of Data and Documents and Contractual Language

The United States' Second Request For Production ("RFP2") served on November 17, 2006, required the production of all documents prepared by IMS in connection with any pharmaceutical sold by HPD (RFP2, Nos. 56 and 57). So far, Abbott has not produced any of these materials. Abbott's response to RFP2 specified that, "Abbott states that it will produce IMS data" once an agreement for confidentiality was reached between Abbott, the government and IMS. Of course, the Protective Order in this case protects the confidentiality of any materials designated as confidential or highly confidential. The Protective Order is fully applicable to third parties. In that regard, please inform us by October 1, whether Abbott counsel has ever asked IMS if the protections afforded by the Protective Order were adequate, and if so, provide us the response of IMS.

-13-

During our July 6, 2007 meet and confer, Abbott counsel represented for the first time that Abbott was withholding IMS information primarily on the basis of proprietary issues asserted by IMS rather than due to confidentiality issues. We asked to see the operative language on which you were relying. You represented that you would consider our request and get back to us. Our correspondence of July 23, 2007 repeated our request for "the agreements which Abbott counsel contends prevent Abbott from producing the data." *See* 07/23/07 letter from M. Lavine to C. Geisler. We also asked for an inventory of the data being withheld from production. We further summarized statements at the meet and confer session on this issue and reiterated our outstanding requests. Thereafter, in correspondence and e-mails dated August 3, 2007, August 10, 2007, and August 20, 2007, we repeated our requests for an inventory of the withheld IMS data and the contractual language. Abbott counsel has not responded to these requests. Finally, in an August 30, 2007 e-mail, we again asked for Abbott's position "regarding our requests for the basis for its claims of IMS confidentiality and an inventory of the data being withheld." We also requested in that letter that Abbott counsel tell us whether he was "pulling the information together and need more time, or [] refusing to provide the information." Again, we received no reply.

Moreover, our request in RFP2 is broader than only the IMS data. For example, we requested all materials derived from the IMS data that reflects the market share of Abbott's pharmaceuticals. Abbott has produced few documents of that type. Please either produce all IMS data and documents by October 1, 2007, or inform us by that date that Abbott has no intention of doing so. It remains our position that it is Abbott's obligation to make good faith efforts to identify and resolve any alleged confidentiality or proprietary concerns with IMS data or information, so that the data and all related documentation can be provided to us immediately. This was also Abbott's position on third party materials produced by the United States to Abbott. Given the established protocol in this case, please move expeditiously to secure approval for the production of this data.

In sum, despite at least seven good faith attempts to get the IMS data or the contracts which Abbott claims prevent the turnover of such data, Abbott has produced no information in response to our repeated requests. Please produce the requested IMS data and information by October 1, 2007.

**Transactional Sales Data**

Despite countless requests, Abbott still has failed to produce a complete and accurate set of data, which includes all of the transactions involving the subject NDCs. Each step in the process of pursuing the data has been slow and difficult. We have been obstructed by issues ranging from Abbott's production of blank CDROMs to its unexplained production of apparently superfluous CDROMs. After several months of our discovery period elapsed, we finally received what Abbott counsel has represented is the missing data. However, when we asked for simple confirmation that we had a full set of data, Abbott reversed direction and decided it needed to recreate the entire data set. That process was first promised to be completed in about two weeks. However, another two months have passed and we still do not have the data that we and our experts require to perform the necessary damages calculations in this case.

-14-

In addition, at the recent deposition of Bruce Stowell, Abbott's corporate designee on data production, Mr. Stowell testified that Abbott archived direct sales data back to 1991 (*see* 08/30/07 Dep. of Bruce Stowell at 327-328), yet Abbott has never produced any data to the United States for any period prior to 1994. Abbott's failure to timely produce its transactional data is seriously impeding the ability of our experts to complete their work within current deadlines. The situation is particularly confounding in light of recent testimony that it takes only approximately five days for Abbott to extract the data. *See* 08/30/07 Dep. of Bruce Stowell at 244.

Our efforts to obtain a complete and accurate set of transactional data from Abbott first intensified at the meet and confer session held over the course of three days in late December 2006 when we asked for the 1995 data that had been omitted from the original data made available to the United States. Counsel may remember that the issue originally appeared simply to be a case of an inadvertently omitted CDROM. We re-stated our request for that data in our correspondence of December 22, 2006, and in our e-mail of January 19, 2007. In an e-mail response that same day, Abbott counsel stated "I believe we have located it and I will send it along." On January 20, 2007, we received a CDROM described by Abbott as containing the data for 1995. Unfortunately, as we noted in an e-mail dated January 29, 2007, the CDROM was missing six months of data. Having heard no response from Abbott counsel, we sent a follow-up e-mail on February 5, 2007 asking "when you will provide us with a complete set of the Direct National Sales Data for 1995." Abbott counsel responded later that day to the effect that Abbott was looking into it and would provide an answer "soon." We sent another follow-up e-mail on February 22, 2007, noting that we needed the data so that the United States could move forward with related discovery. Abbott counsel's e-mail response later that day acknowledged the delay and noted that the missing data needed to be "gathered." In a letter dated February 23, 2007, we raised several other related data issues that seemed appropriate to address given that Abbott was "gathering" data, rather than just trying to locate a missing CDROM. In particular, we noted that no data at all had ever been produced by Abbott regarding NDC 00074-1966-07.

On March 8, 2007, Abbott unexpectedly provided us with *six* CDROMs labeled as containing Direct Sales Data for 1995 through 2000, rather than the single CDROM for 1995 that was anticipated. No new CDROMs were provided for 1994 or 2001. The cover letter from Abbott transmitting the CDROMs contained no explanation of the reason for the six CDROMs. Moreover, *not only was the 1995 CDROM blank, but two of the other five CDROMs were blank*. All of the forgoing was summarized in our letter to Abbott counsel dated March 12, 2007. On March 26, 2007, we engaged in a telephone call to explore various data issues at which time we clarified that sections of data were missing from other years as well. As confirmed in a letter of March 27, 2007, Abbott counsel estimated that the missing information would be available in approximately one month. Our letter of March 27, 2007 also asked that Abbott confirm "the completeness of Abbott's responses to paragraphs 7 and 11-19 of the United States' Second Request to Produce, all of which touch upon the data issues we have been discussing."

On April 6, 2007, Abbott counsel sent three new CDROMs which counsel represented as containing data for 1995, 1999 and 2000. On April 17, 2007, we wrote back reminding Abbott counsel that the data for NDC 00074-1966-07 was still missing. That letter also requested

-15-

confirmation that the United States had complete data for all of the transactions involving the identified NDCs and additionally requested instructions regarding the manner in which the various CDROMs should be combined to form a complete and accurate set of Abbott transactional data. During a telephone call held on May 8, 2007, Abbott counsel represented that we would receive the data for NDC 00074-1966-07 within "a day or two." In an e-mail on May 21, 2007, we reminded Abbott counsel that we had still not yet received the data for NDC 00074-1966-07. In an e-mail response sent by Abbott counsel that same day, Abbott counsel represented that the "remaining NDC data should (hopefully) be out to you today." We did, in fact, receive some data on May 22, 2007, and by e-mail immediately noted that the transmittal correspondence sent by Abbott counsel contained no explanations, and that if we were "to avoid the need to get a single download of all of the data, we need a precise explanation of the manner in which to combine the various discs so as to have a complete set of Abbott transactional data."

In an e-mail dated June 18, 2007, the United States again inquired about "an explanation of the manner in which the transactional data needs to be assembled to create a complete set." We noted that on May 23, 2007, Abbott counsel represented that would be forthcoming "shortly" and that we had also asked about this on June 6, 2007. On June 25, 2007, having received no response from Abbott counsel, we sent another e-mail asking if we should "interpret [counsel's] silence on the transactional data to mean that the data currently in our possession cannot be assembled into a complete set, or at least that there is no way to be sure of such?" That e-mail also noted that if Abbott needed "to produce a "clean" set of that data in order to be certain that we have everything, then we need it on an urgent basis so that our experts have time to properly analyze it." In conclusion, we asked "that you please respond directly to this particular request as [we] do not recall having received any substantive response from [counsel] on this subject to date." Again having heard nothing, on June 29, 2007, the United States sent another e-mail noting that we "have been waiting months for instructions on how to assemble the various transactional data CDROMs in a way that will result in one complete set of transactional data."

Finally, on June 29, 2007, Abbott counsel represented agreed with our suggestion of pulling a clean set of data, and that Abbott was "in the process of assembling this data and will provide it . . . as soon as possible." Abbott counsel also represented that there was "an inquiry in to the people responsible for pulling the data to ask for a time line," and that further information would be made available.

On July 6, 2007, at another meet and confer session, Abbott counsel represented that the clean set of transactional data would be produced to us on July 16, 2007. No such data was produced at that time. Our correspondence of July 23, 2007, again noted that we had not been provided with the transaction data and asked Abbott counsel to "commit to a specific date on which it would provide us with this information" because we "have been waiting far too long for this information, especially the transactional data." The United States also reminded Abbott counsel that it had first raised the urgent need for the transactional data in January 2007, and that our "need to analyze complete data is significantly more dire at this point with more than half of the discovery period having elapsed." On July 25, 2007, the United States sent another letter reminding Abbott counsel again that it had promised the transactional data by July 16. *See* 07/25/07 letter from R. Ford to J. Winchester. Again receiving no response from Abbott counsel,

-16-

we sent another follow-up letter on August 3, 2007, repeating that "our need for the foregoing data is critical." An e-mail on August 10, 2007 asked for an update on the transactional data, among other things.

As of this date, Abbott has still failed to produce the complete set of transactional data that is necessary to perform our damages calculations. Likewise, Abbott counsel has not kept us informed of the status of the data or even proffered an explanation for any of the delays and missed deadlines.

Abbott's failure to provide us with the transactional data appears consistent with its pattern of conduct in related cases. As Abbott counsel is aware, Abbott's production of electronic data in the State of Texas case has been deficient and resulted in the Court granting several motions to compel filed by Texas against Abbott, and the requirement of a Rule 11 agreement. In addition, as recently as two weeks ago, on the morning of Dr. Mark Duggan's expert deposition, Abbott announced that it provided erroneous data to the State of Texas that Dr. Duggan unwittingly relied upon in performing his damages calculations. *See* letter of 08/23/07 from R. Winter, Texas A.A.G., to E. Berlin. We understand that on September 10, 2007, after a hearing, the court in Texas imposed sanctions against Abbott as a result of its failure to produce the accurate data.

Further, the recent deposition of Mr. Stowell has raised serious questions about the quality of Abbott's data productions in Texas and in this case. In particular, it appears among other things from Mr. Stowell's deposition that the question of whether Abbott has included proper chargeback data will need to be addressed. *See* 08/30/07 Dep. of Bruce Stowell at 263- 270, 355.

In short, based upon the above, the United States has little to no confidence in the data being provided by Abbott for use in our case. Please confirm by October 1, 2007, that Abbott's responses to paragraphs 7 and 11- 19 of RFP2 are complete. We also expect Abbott's full production of accurate and complete transaction data as soon as it is available, but not later than October 1, 2007.

**Acyclovir Data**

A related data issue to which Abbott counsel has never directly responded is our request that the transactional data also include the two additional NDCs listed in the Amended Complaint which was filed by the United States on June 4, 2007 (Acyclovir Sodium 500 mg 00074 4427 01 and Acyclovir Sodium 1 gm  00074 4452). We first raised this issue as far back as July 6, 2007, at which time Abbott counsel stated that it would consider the request. In a July 2007 letter, we reminded Abbott counsel that the matter was still outstanding. We also noted that adding the two additional NDCs while Abbott was preparing a clean set of data appeared to be a prudent course of action, and that if Abbott was refusing to do so, it was likely to cause significant additional delay. On August 20, 2007, having still heard no response to the request, the United States again raised the issue in a letter asking if it was "correct that Abbott is refusing to produce any transactional data on the two new NDCs." The letter of August 20, 2007 additionally asked Abbott counsel to "please state your position thereon in writing so that we will

know where you stand and can proceed accordingly".

We understand that Abbott contends that the amendment of the Complaint, which added Acyclovir Sodium, required prior leave of court and should therefore be dismissed. However, we fail to see any difference between the current situation and that which has existed throughout this case. Discovery moved forward on the 44 NDCs listed in the original Complaint while Abbott pursued its original Motion to Dismiss, and discovery should similarly move forward on the 46 NDCs listed in the Amended Complaint while Abbott pursues its current Motion to Dismiss. If Abbott believes otherwise, it should ask the Court for a stay of discovery rather than engage in apparent self help. Regardless, if Abbott were to conduct itself in a prudent and cooperative fashion, it could still provide the data on those two new NDCs without waiving the right to continue to seek dismissal of the Amended Complaint. Moreover, at this point we cannot even be sure of the basis for Abbott's refusal to produce the data since Abbott has never directly responded to our request.

Abbott's continued failure to respond to our requests and state its position is exceedingly detrimental to the expeditious resolution of discovery matters. Accordingly, on or before October 1, 2007, we request that Abbott produce data for Acyclovir Sodium 500 mg 00074-4427 and Acyclovir Sodium 1 gm 00074-4452, or explain the basis for any refusal to do so.

**CHIPS Data**

We understand from Abbott's counsels' representations that Abbott considers the production of all CHIPs data and information to be complete. Please confirm by October 1, 2007, whether all such information has been produced. Since the layout information regarding that data was only recently produced, we have not yet completed our preliminary review of that data.

**Court Ordered Privilege Log**

On May 16, 2007, this Court ordered Abbott to produce to the United States a privilege log in its entirety no later than May 21, 2007. *See* 05/16/07 Hrg. Tr. 46:19-48:18. On May 21, 2007, Abbott did in fact produce such a log, however, the log contained only 33 entries. Despite the production of that log and a subsequent version of the log, we believe Abbott has failed to comply with the Court's Order, and continues to neglect to include materials on its log which it is withholding on the basis of privilege.

On July 20, 2007, Abbott produced an amended privilege log to the United States, adding entries for documents withheld on grounds of privilege or work product from Abbott productions made to the United States between May 21, 2007 and July 20, 2007. Accompanying the July 20, 2007 amended log, Abbott produced approximately 13 additional pages of documents (Bates labeled AFT-DOJ 0297552 - 0297564), which accounted for 7 documents previously listed on Abbott's privilege log, removed from the July 20, 2007 version of the log, and voluntarily produced by Abbott to the United States. In total, the current version of Abbott's privilege log contains 38 entries (excluding the 7 documents removed from the privilege log and voluntarily produced by Abbott on July 20, 2007). This log – covering 300,000 Abbott documents produced

-18-

to date – appears to understate the documents not being produced to the United States, whether on the basis of privilege, or other protection.

Further, to date the United States has yet to receive a privilege log reflecting productions made by Abbott to the United States since July 20, 2007, including Abbott's August 15, 2007 and August 22, 2007 productions. Moreover, the United States notes that the privilege logs produced to date do not include entries for documents produced by Abbott to the United States in redacted form, such as the Contract Marketing Basic Operating Procedures Manual (ABT-DOJ 0085415 - 0085704), despite at least two prior requests that Abbott either produce the redacted sections of that document or a privilege log containing entries for such redactions if Abbott claimed they were covered by a privilege, and despite a representation made by Abbott counsel nearly three months ago that Abbott would update its privilege log to contain appropriate entries for the redacted sections of the manual, such a log has yet to be produced. *See* 06/13/07 and 06/16/07 e-mail messages from R. Brooker to T. Fumerton; and 06/18/07 response from J. Winchester to R. Brooker. These failures are a clear violation of the Court's Case Management Order. *See* Case Management Order 29,¶ 6.

We understand that sections of a Contract Marketing Basic Operating Procedure Manual produced by Abbott to the State of Texas in *The State of Texas ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, et al.*, No. D-1-GV-04-001286, were similarly redacted. We further understand that on August 15, 2007, the Texas court ordered Abbott to produce certain previously withheld/redacted sections of the manual, including sections related to Contract Pricing, Medicare / Medicaid Fraud and Abuse and the "Contract Language Glossary," over Abbott's privilege objections. The United States requests that these and other portions of the manual, which were withheld from production to the United States based upon an improper or erroneous assertion of the attorney-client privilege or work product doctrine be formally produced to the United States by October 1, 2007.

Further still, deposition testimony taken in this case indicates that certain current and former Abbott employees have collected documents related to this litigation and forwarded the documents to Abbott's in-house counsel. *See* 03/14/07 Dep. of Ellen Klaus at 110-185. Despite such representations by Abbott witnesses, the corresponding documents the witnesses provided to Abbott, appear not to have been produced to the United States to date. Accordingly, please inform us whether documents from Abbott divisions are being held or withheld by Abbott's Legal Department, and if so, whether such documents are being searched for in the process of responding to the United States' discovery requests.

By October 1, 2007, please produce privilege logs reflecting all documents withheld by Abbott to date from production to the United States based upon assertions of the attorney-client privilege or work product doctrine, including entries related to Abbott's August 15, 2007 and August 22, 2007 productions to the United States, entries related to redactions made to Abbott's Contract Marketing Basic Operating Procedures Manual and other documents redacted on such grounds, and entries related to all documents contained in this letter for which the United States is renewing it requests for production and requesting production by October 1, 2007.

**De-Designate Improper Confidentiality Designations**

As you are aware, Judge Saris recently issued two separate orders expressing her serious concern with the improper designations of materials produced in this litigation as "Confidential" or "Highly Confidential" and placed under seal in filings. *See* 09/05/2007 electronic Order re: Motion for Leave to File Under Seal Exhibits to the United States' Opposition to Abbott Laboratories Inc.'s Motion to Dismiss (Dkt. No. 4654). In the most recent Order of September 7, 2007, finding the assertion of confidentiality "frivolous," Judge Saris ruled that "[n]o further documents shall be sealed in this case unless counsel asserting confidentiality asserts the basis for the claim in a pleading subject to the sanction of Fed. R. Civ. P. 11." Dkt. No. 4701.

We agree with Judge Saris that many of Abbott's confidentiality designations have been frivolous. We have expressed serious concerns since the outset of this case with regard to Abbott's wholesale designation of virtually all documents produced in this litigation as "Confidential" or "Highly Confidential," (including, unacceptably, copies of federal regulations and publicly disseminated materials).[3] *See e.g.,* 09/15/06 United States' Motion for Protective Order. Dkt. No. 3105. We believe the vast majority of the documents designated by Abbott as "Confidential" or "Highly Confidential" are improperly designated as such.

We have seen some rather glaring examples of over designation of documents as "Confidential" or "Highly Confidential." Judge Saris had made clear that the time has come for Abbott to stop abusing the confidentiality provisions of the Protective Order in this case. Abbott's improper designations create inefficiencies and compromise the United States' ability to effectively prepare this case for trial. While the Court's recent orders have been in the context of a motion for leave to file under seal documents designated by Abbott as "Confidential" and/or "Highly Confidential," we believe Judge Saris's concern would extend to this wholesale designation, which leads to sealing motions like the ones recently denied. As a result, we ask that Abbott immediately de-designate all materials it previously marked and produced as "Confidential" or "Highly Confidential," except those that truly meet the standards set forth in the Protective Order (Dkt. No. 3804). We further request that Abbott provide the basis of any confidentiality assertions it makes on documents produced during the remainder of discovery. (*See* 09/06/07 and 09/07/07 Orders of Judge Saris, parties must provide a good faith basis for asserting any confidentiality designation). Please respond to our request no later than October 1, 2007.

**Conclusion**

Many of the categories of documents outlined above, which Abbott still has not produced, were also responsive to the United States' 1996 Civil Investigative Demand, and subsequent HHS-OIG subpoenas. The United States has recently learned from a deposition of Abbott's corporate designee on document production that the ability of the United States to investigate this case in the early years was hindered by Abbott's apparent decision to withhold many of these documents. According to corporate designee, Ellen Klaus, Abbott litigation hold memoranda

---

[3]     We further note that Abbott's over designation of documents as Confidential or Highly Confidential has extended to documents produced by third parties, such as Mr. Rodman.

-20-

and document collection efforts took place as early as 1996. *See* 03/14/07 Dep. of Ellen Klaus at 110 to 185.

At the outset of this case, Abbott insisted upon a short discovery deadline. Given Abbott's insistence that this case should be on a fast track to trial, the decelerated pace of Abbott's document production is troubling. In many instances, Abbott counsel has made promises that documents, or lists of documents, would be forthcoming, and they were not. In others, Abbott selectively removed highly relevant documents from prior productions before producing documents to the United States. Still, in others, our repeated requests for documents or more information have been ignored, as illustrated by the months (and a deposition) it took to learn simply the number of Abbott sales representatives.

Abbott's continuing conduct continues to prejudice severely the United States' ability to effectively depose Abbott employees or former employees about relevant documents. It has also resulted in the United States' inability to complete or close any depositions. It further seriously compromises the work of our experts who will necessarily need to rely upon documents, data and deposition testimony to render conclusions. Overall, Abbott's document production delays – whether by design or lack of diligence – have jeopardized the fact discovery deadline set by the Court, and prejudiced the United States' ability to prepare properly its case for trial.

We hope to receive by October 1, 2007, the actual production of all categories of documents outlined above or, in the alternative, a definitive answer from Abbott that it will not produce certain documents, so that we may seek appropriate remedies.

Sincerely,

/s/

Renée Brooker

Cc:     James Breen, Esq.