# ATTACHMENT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )<br>)<br>)<br>)<br>) | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** )<br>) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc.,* CIVIL ACTION NO. 06-11337-PBS )<br>)<br>)<br>) | |

**THE UNITED STATES' REPLY TO ABBOTT LABORATORIES INC.'S RESPONSE TO THE UNITED STATES' MOTION TO COMPEL
DOCUMENTS AND DEPOSITION TESTIMONY**

On March 31, 2008, the United States moved to compel (1) documents that were the subject of production requests issued over a year and a half ago and (2) the deposition testimony of fact witnesses in this matter. Abbott Laboratories Inc. (Abbott) filed a response (Response) that – once stripped of its colorful rhetoric – basically states that Abbott has either failed – without meaningful excuse – or refuses – without real justification – to produce the documents or the fact witnesses. The United States provides this brief reply to several points raised in Abbott's Response.[1]

**The government met and conferred with Abbott regarding the motion to compel.** Abbott begins its brief stating unequivocally that "[the government's] motion was filed without any effort to confer with Abbott about its precise contents." Response at 2. This statement is puzzling given that it is plainly disputed by the correspondence between counsel for Abbott and

---

[1] The United States has also addressed several of this topics in its recently filed Motion to Amend CMO 29. Docket #5272.

the government regarding the subject matter of the motion. *See* Exhibit 1. Abbott initially showed some resistance to discussing the document production issues. *Id*. After an exchange regarding Abbott's position on several of the document categories, counsel from Abbott stated, "I do not have any further details to offer on these issues, and therefore trust that this update will obviate the need for a [meet and confer] call today." *Id*. Ultimately, Abbott either ignored the United States' specific requests for information or gave incomplete responses.

**Abbott's production of personnel and working files for the former Alternate Site sales force is still incomplete**. In its Response, Abbott concedes that it **still** has failed to complete its production of sales force personnel and working files, despite being ordered to do so by within 30 days of the January 31, 2008 hearing before Magistrate Judge Bowler. Court intervention continues to be necessary as Abbott violates the now-expired fact discovery deadline, prejudicing the United States' ability to prepare its experts for the next phase of discovery and to prepare for trial.

**Abbott's production of documents from the "Shared Drive" is still incomplete**. The issue of whether Abbott/Hospira employees shared a drive before, during or after the Hospira spin-off is irrelevant. What is relevant is that there was a Shared Drive containing evidence used by employees whose conduct is at issue in this case that has not been produced. After 17 months of discovery, Abbott is only now in the process of reviewing the Shared Drive for responsive documents, claiming that it is doing so "as quickly as possible." Abbott has provided a general estimate that it will review and produce these documents in perhaps 21 days. This vague assurance of the tardy production is inadequate; the United States asks that the Court grant the relief requested in its Motion to Amend CMO 29, Docket #5272 (filed May 1, 2008).

**Abbott's production of CHIP data is still incomplete**. It is important to put the CHIP data into the proper context: this is the data regarding reimbursement claim submissions made directly by Abbott to Medicare and Medicaid for the drugs at issue in this case. In other words, it constitutes evidence of Abbott directly receiving the full megaspreads on the drugs at issue in this matter. This data is of paramount importance in this case.

After two and a quarter pages of dissembling, Abbott admits that the CHIP data must be produced but that it is not prepared to even provide preliminary information about the remaining CHIP data production. Indeed, Abbott claims that it needs 10 days beyond the fact discovery cutoff just to provide "information about file sizes" – not even the actual data files themselves. Response at 6. According to Abbott, the production of the actual data itself will occur at some indeterminate time after this preliminary production.

The timetable outlined by Abbott is simply unacceptable. There are no fixed deadlines and Abbott's continuing violation of CMO 29's April 25 discovery deadline conflicts with other deadlines in that order. The failure to produce this data regarding claims submitted by Abbott compromises the ability of the government's experts to complete their reports by the May 27, 2008 deadline. The threat to the expert discovery deadline is a problem of Abbott's making. Abbott should be ordered to produce the CHIP data within seven (7) days from the entry of an order granting this motion, and the reports from government experts using CHIP data should be reset commensurate with Abbott's certification of completion of production. *See* Docket #5272, United States' Motion to Amend CMO 29 (Proposed Order).

**Abbott's refuses to produce documents responsive to government subpoenas issued to former Abbott employees**. Several of Abbott's former Alternate Site field representatives

3

were subpoenaed for documents relevant to this matter. They reviewed their files and collected responsive documents. Abbott then took it upon itself to cull the former Abbott employees' document production using criteria only known to it; only a fraction of the documents the witnesses recognized as responsive and relevant were ultimately produced. Abbott states there is "no evidence that responsive materials have been withheld;" of course, it is impossible to have any such evidence since the documents have been withheld.[2]

This Court is well aware that the parties have vigorously disputed what is and is not relevant evidence in this case. Given these disputes, it is improper for Abbott to substitute its judgment for its former employees' judgment about whether documents responsive to the United States' subpoena should be produced. The end result of any conflict between Abbott and its former employees regarding what is responsive to government subpoenas should not prejudice the government. Abbott should be ordered to produce the documents it is withholding and that were collected by its former employees. If the documents are not relevant, there is prejudice to Abbott by their production. However, the United States' case will be prejudiced by their non-production.

**Abbott has either destroyed or not produced pre-2002 emails.** Abbott's arguments about spending millions to restore one month's worth of backup tapes is a red herring. There would be no need to restore backup tapes if responsive pre-2002 emails – which may now be destroyed – had been collected and produced in response to the multiple investigative demands

---

[2] It is worth noting that Abbott has expended considerable effort and resources culling and withholding the documents at issue. In the past, when prior, similar efforts were overturned by court order, the produced documents yielded relevant, important evidence.

and subpoenas dating back to 1996 that were issued during the course of the government's *qui tam* investigation.

Abbott indicates that it issued various directives not to destroy documents beginning in 1996, when the United States issued its first investigative demand to Abbott. The United States subsequently issued two investigative subpoenas, in 1997 and 2000. Yet, large swaths of pre-2002 emails were never produced and are now missing, destroyed, or contained in whole or in part on the Shared Drive for which production has not been completed.[3] Abbott effectively concedes that it did not collect and produce all emails when responding to those investigative requests. Instead, it claims that the issuance of preservation memoranda sufficiently met its obligations to provide the materials to the United States. A handful of preservation memoranda does not relieve Abbott of its obligations to demonstrate that it preserved and collected responsive emails from 1991 through 2003.

Abbott claims that its efforts yielded "hundreds" of emails generated between 1996 and 2002. Response at 10. Yet, Abbott produced hundreds of thousands of pages of emails from 2002 through the end of 2003. While email technology might have been used more after 2002, there is little doubt that the "hundreds" of pre-2002 emails Abbott produced are only a fraction of the responsive emails generated within Abbott between at least 1996 and 2002.

The United States reiterates its requests made in prior pleadings that (1) Abbott be directed to produce all responsive pre-2002 emails, (2) to restore the 1997 tapes containing pre-2002 emails and produce the responsive emails, and (3) to file with the Court a certification of

---

[3] Abbott's references to government preservation efforts are similarly a red herring, as the amount of government documents or evidence truly relevant to the claims at issue are *de minimus* and are mostly official, public documents that are and continue to be available.

the circumstances regarding the loss of a large amount of relevant pre-2002 emails during the course of the United States' investigation and subsequent litigation of this matter.  Moreover, this loss is the result of Abbott's failure to meet its discovery obligations; this cost was avoidable and should be borne by Abbott.  Indeed, the United States reserves the right to pursue any appropriate discovery sanctions if Abbott chooses not to restore any responsive, pre-2002 emails.

**Mr. Burnham and Mr. Hodgson will be deposed in a related state proceeding; the current protective order will not prevent the deposition of these witnesses.**  Abbott has fought vigorously to prevent the discovery of the evidence in Mr. Burnham's and Mr. Hodgson's possession not only in this Court, but also in a Pennsylvania state court proceeding.  As the United States has already noted for the Court, after extensive motions practice, the trial court in the Pennsylvania matter ordered that these witnesses be deposed.  *See* Docket # 4943, Notice of Decision in Related Case.  Abbott appealed the decision to the state Supreme Court and lost.  *See* Exhibit 2.  These depositions will take place in the state proceeding; there is no reason for the United States not to cross-notice them in this case, particularly where Judge Saris has indicated that the depositions should occur in this matter.  The matters and many of the drugs at issue are the same in this and the Pennsylvania proceeding.  The protective order for these witnesses should be vacated, and coordinated depositions of the witnesses be allowed to proceed.

Further, Abbott does not meaningfully contest that the Rule 30(b)(6) depositions it proffered as a substitute for Mr. Burnham's direct testimony proved inadequate, in part due to the witness' woefully inadequate preparation.  Instead, Abbott now claims that somehow asking for Mr. Burnham's testimony violates its First Amendment right to petition the government.  First of all, Mr. Burnham's deposition is not merely being sought for his personal efforts to fight

6

government attempts to use Abbott's actual, market prices to set reimbursement levels; it is being sought on numerous topics. Regardless, Abbott's invocation of the so-called "*Noerr-Pennington*" doctrine is misplaced. Abbott's principal – albeit factually unsubstantiated – defense is that the government wanted to pay grossly inflated amounts for the drugs at issue in this case because it used an AWP-based drug reimbursement system that was susceptible to abuse.

Throughout the 1990s, the Department of Health and Human Services (HHS) attempted to shift to a system that reimbursed using actual acquisition costs, and Abbott – individually and in coordination with other parties – fought the government's efforts. Abbott argues that its reporting of inflated AWPs was, in effect, its contribution to a "deliberate" government policy to overpay for drugs; in reality, Abbott and the government have been at odds on government drug reimbursement policies in that past, as the government has sought to rein in drug ingredient costs generally and to prevent the specific fraud Abbott committed in this particular matter from occurring.

The discovery sought from Mr. Burnham is not about Abbott's right to petition the government; it is about – again among numerous other topics to be covered in the deposition – Mr. Burnham's personal and direct role in effort to prevent HHS from getting access to Abbott's real market prices to set proper reimbursement levels for Abbott's drugs. If Abbott endeavors to make part of this case about why the government maintained an AWP-based reimbursement system, it stands to reason that Abbott's CEO's extensive, direct efforts to preserve an AWP-based drug reimbursement system – putting Abbott and Mr. Burnham at odds with HHS at the time – is a relevant area of discovery. Maintaining an AWP-based reimbursement scheme allowed Abbott to continue its fraud.

Insofar as Mr. Hodgson is concerned, the government has produced extensive briefing and factual evidence about his prior 30(b)(6) testimony in AWP matters about AWP-related issues.  See Docket # 4736, United States' Opposition to Duane Burnham and Thomas Hodgson's Motion for a Protective Order.  The fact that the matter involved a different drug has no bearing on Mr. Hodgson's discoverable knowledge of AWP-related matters.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant the government's motion to compel.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | JEFFREY S. BUCHOLTZ<br>ACTING ASSISTANT ATTORNEY GENERAL |

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3272
Fax: (617) 748-3398

 /s/ Gejaa T. Gobena
Joyce R. Branda
Daniel Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 307-1088

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

 /s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
Phone: (305) 961-9003
Fax: (305) 536-4101

Dated: May 2, 2008

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above **THE UNITED STATES' REPLY TO ABBOTT LABORATORIES INC.'S RESPONSE TO THE UNITED STATES' MOTION TO COMPEL DOCUMENTS AND DEPOSITION TESTIMONY** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                      /s/ Gejaa T. Gobena

Dated: May 2, 2008                        Gejaa T. Gobena