**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) _____ ) ) THIS DOCUMENT RELATES TO: ) ) *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc., et al., v. Abbott Laboratories, Inc., et al.* ) ) ) ) | MDL DOCKET NO. 1456 Civil Action No. 06-CV-11337 Lead Case No. 01-CV-12257 Judge Patti B. Saris Magistrate Judge Marianne B. Bowler |

**ABBOTT LABORATORIES INC.'S MOTION TO ENFORCE THE FEBRUARY 16, 2007 PROTECTIVE ORDER AND FOR ORDER COMPELLING PLAINTIFFS TO RETURN INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS**

Defendant Abbott Laboratories Inc. ("Abbott"), by its attorneys, hereby moves pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.1 to compel the United States and Ven-A-Care of the Florida Keys ("Plaintiffs") to return two inadvertently produced privileged documents (the "Privileged Documents") to Abbott and destroy any copies of the Privileged Documents and/or any notes, memoranda or other documents Plaintiffs have created concerning the Privileged Documents. In support of its Motion, Abbott states as follows:

**PRELIMINARY STATEMENT**

In order to facilitate the massive production of relevant, non-privileged documents in this Case, Abbott has tasked its outside counsel, Jones Day, along with additional contract attorneys, with reviewing each of its document productions for any attorney-client communications, attorney notes, attorney comments, or any attorney work product. Despite these reasonable

precautions, Abbott inadvertently produced two nearly identical privileged, one-page memos, the Privileged Documents, to Plaintiffs.

Immediately upon learning of the inadvertent production, Abbott's counsel "snapp[ed] back" the Privileged Documents. Abbott followed up on its original snap-back request, asking that Plaintiffs confirm that all copies of the Privileged Documents have been destroyed, including any copies that Plaintiffs circulated to any other counsel that has signed the Protective Order.

Plaintiffs now refuse to honor Abbott's request, taking the position that the Privileged Documents were late designated and challenging their privileged nature. Plaintiffs' assertion is without merit. As demonstrated below, given (i) the inadvertent nature of the production, (ii) the unquestionably privileged nature of the documents, and (iii) Abbott's timely snap-back, Abbott has not waived the privilege over these Privileged Documents. Accordingly, Plaintiffs should be ordered to return the Privileged Documents and to destroy any notes, memoranda or other documents Plaintiffs have created concerning the Privileged Documents.

## RELEVANT FACTS

To date, Abbott has produced well over one million pages of documents to Plaintiffs in this litigation. (*See* Ex. A, Dahl Decl. at ¶ 3.) As part of this colossal rolling production, Abbott produced approximately 48,000 pages of documents relating to its former Home Infusion Services business ("Home Infusion documents") on seven CD-ROM disks. (*Id.* at ¶ 4.) Specifically, on October 19, 2007, Abbott produced approximately 7,173 pages of Home Infusion documents, bearing production numbers ABT-DOJ 0302522 through ABT-DOJ 0309694, to the United States. (*See* Ex. B, October 19, 2007 letter from Carol Geisler to Renee Brooker regarding production of 1 CD-ROM disk). On November 8, 2007, Abbott continued its

production of Home Infusion documents, producing over 30,442 additional pages of documents, bearing production numbers ABT-DOJ 0310004 through ABT-DOJ 0340445.  (*See* Ex. C, November 8, 2007 letter from Carol Geisler to Renee Brooker regarding production of 4 CD-ROM disks).  The next day, Abbott completed its three-part production, making an additional production of 11,309 pages of Home Infusion documents (ABT-DOJ 0340446 through ABT-DOJ 0351754).  (*See* Ex. D, November 9, 2007 letter from Carol Geisler to Renee Brooker regarding production of 2 CD-ROM disks).  At the time of its production of Home Infusion documents, Abbott and its counsel were unaware that two documents protected under the attorney-client privilege and bearing the production numbers ABT-DOJ 0326756 and ABT-DOJ 0326772 were included in Abbott's production.  (*See* Ex. A at ¶¶ 11, 14.)

As it has throughout this litigation, prior to providing its production of Home Infusion documents, Abbott took steps to assure that qualified Jones Day attorneys and licensed contract attorneys reviewed all of the documents collected from its former Home Infusion Services business.  (*Id.* at ¶ 5.)  The review proceeded in a two-tiered process.  In the first-tier review, junior Jones Day attorneys and licensed contract attorneys conducted an initial review of the Home Infusion documents for responsiveness and privilege.  (*Id*. at ¶ 6.)  The first-tier reviewers were instructed to identify and mark all responsive Home Infusion documents which contained any communication to or from Abbott's in-house counsel, Abbott's legal personnel or Abbott's outside counsel as "privileged."  (*Id.* at ¶ 7.)  The first-tier reviewers were not permitted to make privilege determinations on their own; they were required to mark all responsive Home Infusion documents which contained any communication to or from Abbott's in-house counsel, Abbott's legal personnel or Abbott's outside counsel as "privileged."  (*Id.* at ¶ 8.)  Once the initial review for "privileged" documents was completed, all responsive Home Infusion Services documents

marked "privileged" were escalated to a second-tier review during which they were re-reviewed by a more experienced Jones Day attorney tasked with making a final determination regarding any privilege or immunity applicable to the previously-marked "privileged" Home Infusion Services documents. (*Id.* at ¶ 9.) Despite the two-tiered review process, two internal Abbott legal memos authored by a senior attorney in Abbott's General Counsel office and reflecting that attorney's legal advice failed to be flagged as "privileged" during first-tier review. (*Id.* at ¶ 10.) As such, those two internal memos were never escalated for second-tier review and were instead inadvertently produced to Plaintiffs. (*See id.* at ¶¶ 10-11.)

Abbott first became aware of the inadvertent production on March 20, 2008 during the deposition of David Fishman. At the deposition, Plaintiffs' counsel marked the Privileged documents as deposition exhibits. (*See* Ex. E, Excerpt of Fishman Dep. at 599:7-606:14 (Mar. 30, 2008).) This was the first time that Plaintiffs had used the documents during the litigation. (*See id.* at 600:7-14 (MS CITERA: Sure. Has this been used as an exhibit in another deposition? Can you tell me that? MS. ST. PETER-GRIFFITH: I don't think so because I'm pretty sure the only person we would have used it for is Tobiason, and this wasn't produced then. We didn't have this production then. . . .").) Upon viewing the documents, Abbott's counsel informed Plaintiffs' counsel that the documents "seem[ed] to be privileged" and stated that Abbott was "snapping back" the documents. (*See id.* at 600-01, 616-17 ("MS. CITERA: I would also add on a separate note that Exhibit 17, we are snapping back. MS. ST. PETER-GRIFFITH: Okay. Toni, do you just want to take custody, then, of the actual marked exhibit? MS. CITERA: Uh-huh. MS. ST. PETER-GRIFFITH: We'll just let the record reflect counsel for Abbott has possession of that Document.").) At the time, Plaintiffs' counsel raised no objection to Abbott's snap-back request and even destroyed a copy of the Privileged Document in front of Abbott's

counsel. (*See id.* at 616:22-617:9 (MS. CITERA: And then we would obviously ask for Exhibit 17 back. MR. ANDERSON: That's got some notes on it. We'll destroy that one. . . . You can do that just state you'll destroy it. MS. ST PETER-GRIFFITH: There we go, Toni.")

Nineteen days after the Fishman deposition, Abbott provided a written request to Plaintiffs' counsel for confirmation that all copies of the Privileged Documents, including any copies circulated to any other counsel that had signed the Protective Order, had been destroyed.[1] (*See* Ex. F, April 8, 2008 Letter from Jason G. Winchester to Renee Brooker.) On or around April 11, 2008, Plaintiffs objected for the first time to Abbott's "attempt to late designate" the Privileged Documents and "Abbott's attempt to seek their return." (*See* Ex. G.) Plaintiffs then modified their timeliness objection on April 17, 2008, generally "challeng[ing] Abbott's assertion of privilege." (*See* Ex. H.) Other than their initial objection to the "late" designation of the documents and their subsequent and unexplained "challenge" to the assertion of privilege, Plaintiffs have asserted no explicable reason as to why they believe the Privileged Documents are not privileged. (*See, e.g.,* Exs. G & H.)

After receiving Plaintiffs' letters, Abbott's counsel again reminded Plaintiffs' counsel of Abbott's original March 20, 2008 snap-back of the documents, and Abbott's April 8, 2008 reminder of its snap-back request. (*See* Ex. I, April 17, 2008 Letter from Toni Citera to Ann M. St- Peter-Griffith.) Abbott also asked Plaintiffs' counsel to confirm whether Plaintiffs intended to stand by their objection to Abbott's designation of the Privileged Documents as privileged.

---

[1] In its April 8, 2008 letter, Abbott identified an additional 9 documents (totaling 18 pages) that also had been inadvertently produced along with the approximately 78,000 pages of Home Infusion Services Documents. (*See* Ex. H.) Plaintiffs have agreed to return these documents "pursuant to [Abbott's] request and the provisions of the Protective Order," including "the Provisions of Paragraph 28 of the Protective Order. . . ." (*See* Exs. H & M at ¶ 28.) Despite returning these other documents pursuant to the Protective Order's provisions regarding "inadvertent[] or mistaken[]" production of documents, (*see* Exs. H & M at ¶ 28), Plaintiffs continue to challenge the privileged status of the Privileged Documents that are the subject of this motion.

(*See id.*)  In addition to writing Plaintiff's counsel, Abbott listed both Privileged Documents in its revised privilege log, which it produced to Plaintiffs on April 25, 2008.  (*See* Ex. J, Excerpt from Abbott's April 25, 2008 Revised Privilege Log, Nos. 121 & 122.)

Plaintiffs responded to Abbott April 17, 2008 letter, continuing to object to Abbott's privilege designation and requesting "the basis for [Abbott's] privilege Assertion."  (*See* Ex. K, April 24, 2008 Email from Ann St. Peter-Griffith to Toni Citera.)  On April 30, 2008, Abbott sent a letter to Plaintiffs' counsel describing the basis for Abbott's assertion of privilege regarding the Privileged documents and reminding Plaintiffs of Abbott's March 20, 2008 snap-back..  (*See* Ex. L, April 30, 2008 Letter from Toni Citera to Ann M. St. Peter-Griffith.)  In the letter, Abbott asked Plaintiffs to place the Privileged Documents in a sealed envelope and not to make use of the documents pending the resolution of this Motion with the Court.  (*See id.*)  Plaintiffs have not responded to Abbott's most recent letter.[2]

Given Plaintiffs' unarticulated objection to Abbott's snap-back requests and their failure to respond to Abbott's most recent letters on the matter, Abbott is now forced to ask the Court for relief and to enforce the Protective Order entered in this case.

## ARGUMENT

"The inadvertent production of a privileged document is a specter that haunts every document intensive case." *United States ex rel Bagley v. TRW, Inc.*, 204 F.R.D. 170, 176 (D. Cal. 2001) (quoting *Federal Deposit Insurance Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 479-480 (E.D. Va. 1991)); *see also* Note, Inadvertent Disclosure of Documents Subject to the Attorney-Client Privilege, 82 Mich. L. Rev. 598, 599 (1983) ("Privileged

---

[2] Abbott states, pursuant to Local Rule 37.1, that the herein described efforts by Abbott to have Plaintiffs' Counsel return the Privileged Documents to Abbott constituted consultation with Plaintiffs and a good faith attempt to resolve the discovery matter at issue in this Motion.

documents can easily slip through a screening procedure into adversaries' hands. This problem has become increasingly common as litigation and document productions grow in size.") (footnotes omitted).  This risk is particularly relevant in this case, where Abbott has produced over a million pages of documents as well as copious electronic data.

In anticipation of the extensive discovery needed in this case and the ever present risk of inadvertent production, this Court entered a protective order which, in applicable part, was designed to govern the inadvertent disclosure of attorney-client privileged information.  (*See* Ex. M, Protective Order (Feb. 16, 2007) (Dkt. 3804).)  Paragraph 28 of the Protective Order provides as follows:

> *If information subject to a claim of attorney-client privilege or work product immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel to, any claim of privilege or work-product immunity for such information.*  If a party has inadvertently or mistakenly produced information subject to a claim of immunity or privilege, upon written request made by the producing party within twenty-one (21) days of discovery of such inadvertent or mistaken production, the information for which a claim of inadvertent production is made, including all copies, shall be returned within seven (7) business days of such request unless the receiving party intends to challenge the producing party's assertion of privilege or immunity.  All copies of inadvertently or mistakenly produced documents shall be destroyed, and any document or material information reflecting the contents of the inadvertently produced information shall be expunged.  If a receiving party objects to the return of such information within the seven (7) business day period described above, the producing party may move the Court for an order compelling the return of such information.  Pending the Court's ruling, a receiving party may retain the inadvertently or mistakenly produced documents in a sealed envelope and shall not make any use of such information.

(*See id*, at ¶ 28.)

Because the Protective Order specifies that an inadvertent or mistaken production of information subject to a claim of attorney-client privilege "shall in no way prejudice or otherwise constitute a waiver of, or estoppel to, any claim of privilege," *id.*, this Court does not need to

-7-

undertake any waiver analysis[3] regarding the inadvertent production of privileged documents. *See VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8, 11-12 (D. Mass. 2000) (a court need not undertake a waiver analysis where "the parties have chosen to have the issue of inadvertent disclosure governed by the [] protective order which provides . . . that the 'inadvertent production of documents subject to . . . the attorney-client privilege shall not constitute a waiver of the . . . privilege'"). "When parties stipulate to a protective order requiring the return of inadvertently produced documents, the agreement is enforceable if the proponent actually produced the document(s) inadvertently and otherwise complies with the terms of the order." *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 95 (D. Mass. 2002); *see also In Re Sulfuric Acid Antitrust Litig.,* 235 F.R.D. 407, 417-18 (N.D. Ill. 2006) (finding that defendants met their burden of showing inadvertent disclosure because, *inter alia,* the protective order included a clause stating that a producing party does not waive privilege rights to inadvertently produced privileged documents); *see also In Re: Southeast Banking Corp. Securities and Loan Loss Reserves Litig.,* 212 B.R. 386, 394 (S.D. Fla. 1996) ("[T]he parties' agreements should be enforced and the non-waiver provision be applied."). Thus, given the clear language of the Protective Order regarding waiver, the only issues the Court must address are: (1) whether Abbott has established that there has been an "inadvertent" or "mistaken" production of documents, (2) whether the documents are subject to the attorney-client privilege, and (3) whether Abbott's informed Plaintiffs of the inadvertent production in a timely fashion. *See Unitrode*, 194 F.R.D. at 12; *see also* Ex. M, at ¶ 28.

---

[3] Absent an agreement, courts have applied three different approaches to determine if a production was inadvertent or constituted waiver of the privilege: (1) the "never waived" approach, (2) the "strict accountability" rule, or (3) the "middle test." *See Ken's Foods*, 213 F.R.D. at 95; *Amgen*, 190 F.R.D. at 290-92.

I.  **THE PRIVILEGED DOCUMENTS WERE "INADVERTENTLY" OR "MISTAKENLY" PRODUCED.**

Although the Protective Order does not define what constitutes an "inadvertent" or "mistaken" production, this Court's prior decisions provide helpful guidance in this matter. Production of privileged documents is "inadvertent" if it is the result of an "unintended rather than purposeful or grossly negligent disclosure of . . . documents." *Unitrode*, 194 F.R.D. at 9; *see also Ken's Foods*, 213 F.R.D. at 95 ("[w]hile 'inadvertence' is not defined, it is clear that the production cannot be intentional"); *VLT, Inc. v. Lucent Techs.*, NO. 00-11049-PBS, 2003 U.S. Dist. LEXIS 723, at *6 (D. Mass. Jan. 21, 2003) (affirming "gross negligence" standard, finding "in light of the caselaw in this district, the use of the word 'inadvertent' could be interpreted to mean that the parties intended to protect only negligent disclosures"). It is indisputable that the production of the Privileged Documents was neither "purposeful" or "grossly negligent."

A.  **The Production Was Not Purposeful.**

Here, the production was not "purposeful." The production of a privileged document is not considered "purposeful" when it is the occasional "result of inattention, *i.e.*, inadvertence" by a reviewer given a "clerical" or "mechanical" task of marking documents with specific characteristics. *See Unitrode*, 194 F.R.D. at 12 (finding a party's inclusion of two privileged documents in its production was not purposeful but rather the result of inattention where the reviewer was carrying out "a mechanical task" which did not require him to apply his own judgment). This is exactly what happened during the review of Abbott's Home Infusion documents. In the initial review of Home Infusion Services documents, the reviewers were not allowed to make any substantive privilege determinations. (Ex. A at ¶ 8.) Instead, the reviewers were assigned the mechanical task of marking *all* documents which contained any communication to or from Abbott's in-house counsel, in house legal personnel or outside counsel

as "privileged." (*Id.*) The determination of whether the marked documents were truly privileged or not was left to more senior Jones Day attorneys. (*Id.* at ¶ 9.) Thus, the initial reviewers had no authority to determine whether or not to produce potentially privileged documents. The simple and unfortunate fact that a reviewer missed the Privileged Documents does not make their production "purposeful." *See Unitrode*, 194 F.R.D. at 12. Because the reviewers lacked the authority to determine whether or not to produce such documents, they could not, by definition, have purposefully produced the documents to Plaintiffs.

### B. The Production Was Not The Result Of Gross Negligence.

Abbott's multi-tired review process and its limited inadvertent production of documents undercuts any potential allegation of gross negligence. Abbott took reasonable precautions to protect against producing the Privileged Documents. In particular, Abbott employed a staff of Jones Day and contract attorneys who reviewed all Home Infusion Services documents prior to their production to Plaintiffs for any potentially privileged documents. (Ex. A at ¶ 5.) The documents were reviewed for both relevance and privilege. (*Id.*) Moreover, the review process provided for a two-tiered process of review by a reviewing team comprised entirely of licensed attorneys, including senior Jones Day attorneys. (*See id* at ¶¶ 6, 9.) Indeed, the two-tiered process was designed specifically to facilitate a redundant review of any potentially privileged documents. (*See, e.g.*, *id.* at ¶¶ 5-9.)

Abbott's extensive precautions support its claim of inadvertence. *See Unitrode*, 194 F.R.D. at 11-12 (holding that where a party's counsel instructed a knowledgeable paralegal case manager to review responsive documents and to remove for the attorney's review "all documents which constitute communication to, from, or between [the client and its] attorneys" that the subsequent production of privileged materials "was not a considered or grossly negligent

decision, but the result of inattention, *i.e.*, inadvertence"); *see also Wsol v. Fiduciary Mgmt. Assocs., Inc.,* No. 99 C 1719, 1999 U.S. Dist. LEXIS 19002, at *19 (N.D. Ill. Dec. 6, 1999) ("First, plaintiffs took reasonable precautions to prevent disclosure. One of the funds' attorneys . . . conducted a privilege review of the documents to be produced . . . ."); *Angell Invs., L.L.C. v.* [**21]  *Purizer Corp.,* No. 01 C 6359, 2002 U.S. Dist. LEXIS 11545, at *5 (N.D. Ill. June 26, 2002) ("First, Purizer appears to have taken reasonable precautions to prevent disclosure by using experienced attorneys and legal assistants, who received instruction from lead counsel as to how to review Purizer's documents for privilege.")  Because Abbott employed a multi-tiered review process with numerous steps specifically designed to identify and segregate privileged communications, its actions cannot be characterized as "grossly negligent."

     Moreover, the limited number of Privileged Documents supports Abbott's claim of inadvertence.  The fact of the matter is that, in reviewing over one million pages of documents, including over 48,000 pages of Home Infusion Services documents, Abbott's counsel simply overlooked the privileged nature of the Privileged Documents, embedded amongst the thousands of pages of Home Infusion Services documents.  Such limited accidental production further supports a finding of inadvertence.  *See Unitrode*, 194 F.R.D. at 11-12 (holding stipulated protective order mandated return of two documents inadvertently produced with approximately 25,000 intentionally produced pages; proponents established that the production of the materials at issue was not a considered or grossly negligent decision, but the result of inattention, *i.e.*, inadvertence"); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 293 (D. Mass. 2000) (finding that a production of 3,821 pages of privileged documents within a 70,000 page production constituted a waiver, but that "[a]n occasional inadvertently-produced document would be more comprehensible under the circumstances"); *see also In Re Sulfuric Acid,* 235

F.R.D. at 417 ("Where discovery is extensive, mistakes are inevitable and claims of inadvertence are properly honored so long as appropriate precautions are taken."); *Hunt v. Northwest Suburban Cmty. Hosp.,* No. 03 C 50250, 2005 U.S. Dist. LEXIS 19039, at *6-7 (N.D. Ill. Sept. 2, 2005) (finding no waiver of privilege where, *inter alia,* "the one page inadvertent disclosure is miniscule compared to the voluminous documents produced in this case"); *Angell,* 2002 U.S. Dist. LEXIS 11545, at *5 (no waiver where 26 of 45,000 produced documents were privileged). Given Abbott's extensive review procedures coupled with the limited number of inadvertently produced privileged documents, it is beyond question that Abbott inadvertently produced the Privileged Documents.[4]

II.     **THE DOCUMENTS ARE PRIVILEGED**

The attorney-client privilege extends to all communications made between a client and its attorney, with a view to obtain the attorney's advice and opinions in matters of law, in relation to the client's legal rights, duties and obligations. *See F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000); *United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007). In defining the attorney-client privilege, the First Circuit has adopted Wigmore's formulation of the elements of the attorney-client privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (citing 8 J.H. Wigmore, *Evidence* §

---

[4] Indeed, Plaintiffs treatment of the 9 other inadvertently produced documents further supports Abbott's inadvertence claim, as Plaintiffs have agreed to return the documents pursuant to the provisions of Paragraph 28 of the Protective Order "inadvertent[] or mistaken[]" production of documents. (*See* Exs. J & L.)

2292, at 554 (McNaughton rev. 1961), quoted in *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997)).

Plaintiffs cannot reasonably contend that the Privileged Documents are not attorney-client communications. The Privileged Documents are two copies of a one-page February 27, 1991 internal Abbott memo regarding a "Business Marketing Agreement." (*See* Ex A at ¶ 12.) The memo is authored by James L. Albrecht, one of Abbott's Senior Attorneys, and is addressed from "The Office of General Counsel" to Mark F. Gorman and Kathy A. Riddle, two Abbott employees. (*See id.* at ¶ 12; Ex. G at 600:14-20 ("MS. ST. PETER-GRIFFITH: I'm assuming, Toni, that Gorman – I know Riddle is internal. Is Gorman internal as well? THE WITNESS: Yes. MS. CITERA: I'm assuming by the number, yeah. THE WITNESS: Yes, he's an internal – he was an internal Abbott person.").) At the time the memo was drafted, Mark F. Gorman was a Manager of Contracting and Business Development at Abbott and Kathy A. Riddle was a Contract Marketing Analyst at Abbott charged with handling the Business Marketing Agreement identified in the memo (and reporting her findings to Mr. Gorman in order to facilitate his decisions regarding the Agreement). (*See* Ex. A at ¶ 13.) The memo includes Mr. Albrecht's legal recommendations, advice, and opinions in response to a request to render a legal opinion regarding a Business Marketing Agreement. (*See id.* at ¶ 12.) Moreover, the memo is an internal Abbott communication between an Abbott manager, the Contract Marketing Analyst directly assisting the manager regarding the Business Marketing Agreement, and an attorney in Abbott's General Counsel Office. (*See id.* at ¶ 13.) As such, the Privileged Documents are unquestionably attorney-client privileged communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 389-397 (U.S. 1981); *Windsor Capital Corp.*, 524 F. Supp. at 81 ("[t]he attorney-client privilege protects communications between corporate officers and in-house counsel"); *Command*

*Transp., Inc. v. Y.S. Line (USA) Corp.*, 116 F.R.D. 94, 95-96 (D. Mass. 1987) (attorney-client privilege, in the corporate context, includes communications made by a corporation's employees to its attorney acting at the direction of corporate superiors); *see also Spalding & Evenflo Cos. v. Wilson Sporting Goods Co.*, 1999 U.S. Dist. LEXIS 21966 (D. Mass. June 9, 1999) ("communications by employees to counsel acting at the direction of corporate superiors to secure legal advice are protected by the privilege').

### III.    **ABBOTT'S SNAP-BACK WAS TIMELY.**

Plaintiffs' contention that Abbott's designation is somehow "late" is without merit. Under the Protective Order, "a party who has inadvertently or mistakenly produced information subject to a claim of immunity or privilege," may within "twenty-one (21) days of discovery of such inadvertent or mistaken production" request that the "inadvertently or mistakenly produced documents [] be destroyed, and any document or material information reflecting the contents of the inadvertently produced information shall be expunged." (*See* Ex. M at ¶ 28.)

Upon learning of the inadvertent production of the Privileged Documents at the deposition of Mr. Fishman, Abbott's counsel immediately and repeatedly requested, pursuant to the Protective Order, that Plaintiffs' counsel return and/or destroy all copies of the Privileged Documents. Then, within the 21-day window established under the protective order, Abbott's counsel sent Plaintiffs' counsel a letter, pursuant to the terms of the Protective Order, formally requesting the return and/or destruction of all copies of the inadvertently produced Privileged Documents. Abbott, therefore, unquestionably acted in a timely manner to rectify the error. *See Wsol,* 1999 U.S. Dist. LEXIS 19002, at *20 (finding plaintiffs timely rectified situation by demanding return of a privileged letter on the same day they learned of inadvertent disclosure);

-14-

*see also Angell,* 2002 U.S. Dist. LEXIS 11545, at *5 (finding two months was not an unreasonable delay).

## **CONCLUSION**

In light of the requirements of the Protective Order, this Court's case law regarding inadvertent disclosure, the privileged nature of the Privileged Documents, and Abbott's timely request for the return of the Privileged Documents, Abbott requests that the Court order Plaintiffs to return the inadvertently produced Privileged Documents, *i.e.*, ABT-DOJ 0326756 and ABT-DOJ 0326772, and the produced disc containing the original files of the Privileged Documents. Abbott further requests that the Court order Plaintiffs to destroy any copies, including both paper and electronic, of the Privileged Documents in the possession of Defendants or their counsel, order stricken all portions of any deposition transcripts related to these Privileged Documents, enter a protective order prohibiting further use of the Privileged Documents by Defendants.

Dated: May 7, 2008                                   Respectfully submitted,


                                                  /s/ Toni-Ann Citera

James R. Daly
Jason G. Winchester
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Fax:  (312) 782-8585


Toni Ann Citera
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Telephone: (212) 326-3939
Fax: (212) 755-7306


R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700


*Attorneys for Abbott Laboratories Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 7, 2008, the foregoing ABBOTT LABORATORIES, INC.'S MOTION TO ENFORCE THE FEBRUARY 16, 2007 PROTECTIVE ORDER AND FOR ORDER COMPELLING PLAINTIFFS TO RETURN INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Gabriel H. Scannapieco