UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Abbott Laboratories, Inc., No. 06-CV-11337-PBS* ) ) ) ) ) | |

### DEY, INC., DEY L.P., INC., AND DEY L.P.'S MEMORANDUM IN SUPPORT OF ABBOTT LABORATORIES INC.'S REQUEST FOR CERTIFICATION OF INTERLOCUTORY APPEAL

Dey, Inc., Dey L.P., Inc. and Dey, L.P. (collectively "Dey"), which are parties in the related action entitled *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, MDL Docket No. 05-11084-PBS (the "Dey Action"), submit this memorandum in support of Defendant Abbott Laboratories Inc.'s ("Abbott") motion pursuant to 28 U.S.C. § 1292(b) for certification of the Court's November 9, 2007 and March 12, 2008 rulings regarding the assertion by Plaintiff the United States of America ("United States") of the deliberative process privilege in this action. In its moving memorandum, Abbott correctly noted that the Court's rulings regarding the deliberative process privilege have had a substantial impact on the conduct of the Dey Action, as the United States has aggressively asserted the privilege in the Dey Action in accordance with its understanding of the Court's rulings in this action. Allowing the First Circuit the option of considering this crucial issue at this stage could save the

parties in the Dey Action from engaging in document and deposition discovery, or even a trial, only to be told to restart the process years later.[1]

## I. AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE DEY ACTION

There can be no doubt that the ultimate termination of the Dey Action turns, in part, on the final resolution of the scope of the deliberative process privilege as asserted by the United States. As demonstrated below, Point II *infra*, the information that Dey seeks cuts to the very heart of the United States' claims that the Government has been defrauded and that Dey has been unjustly enriched. While Dey is not bound by specific rulings made in this case, the United States has consistently asserted the deliberative process privilege in the broadest possible manner in responding to document requests and in instructing witnesses not to respond to questions posed in depositions, based in no small part on the assumption that whatever rule is established against Abbott will hold equally true against Dey.

So far, the United States has asserted the privilege to block questions in several depositions and in objecting to 38 separate document requests, including 21 requests to which the government refuses to search for or provide any responsive documents based on, *inter alia*, the deliberative process privilege. *See* Declaration of Sarah L. Reid, dated May 9, 2008, Ex. A at Responses 29-32, and Ex. B at Responses 23, 28, 38, 46-52, 54, 58, 60-62, 64, and 68.[2] For example, based in part of its assertion of the privilege the United States will not produce

---

[1] In the interest of brevity, Dey states that it agrees in full with Abbott's memorandum in support of its motion for certification of interlocutory appeal (Docket Entry 5256), and adopts the arguments made in that memorandum as if fully set forth herein.

[2] Exhibit A is Plaintiff United States of America's Response to Dey Defendants' First Set of Requests for Production of Documents, dated February 19, 2008. Exhibit B is Plaintiff United States of America's Response to Dey Defendants' Second Set of Requests for Production of Documents, dated March 5, 2008.

2

documents responsive to requests relating to its efforts to ensure that providers are reimbursed at their "usual and customary charge" or its communications with the pricing compendia regarding its decision to use or rely on information supplied by those publications. *See id.*, Ex. B at Responses 49-50. The United States has also asserted the privilege to limit its production of seventeen requests. *See id.*, Ex. A at Responses 2, 11, 14-16, 18-19, 24-26 and 28, and Ex. B at Responses 32, 45, 53, 63, 65, and 67. The government has objected to the limited production of communications between HHS entities and the Departments of Defense and Veterans Affairs regarding the later's purchase of Dey's Subject Drugs, as well as communications with State Medicaid directors regarding reimbursement of prescription drugs. *See id.*, at Ex. B at Responses 38 and 62. Dey will likely need to file a motion at an appropriate time regarding the United States' assertion of the deliberative process privilege in responding to Dey's requests for production, among other things.

In the event that, post-judgment, the Court of Appeals does not agree with this Court's rulings as to the applicable scope of the privilege, the Court would not be able to correct the error by simply conducting a new trial. Rather, the parties would have to substantially begin discovery of the United States anew. The United States would need to conduct new searches of its documents, resubmit itself to be deposed, and proffer new answers to interrogatories and requests to admit. Current and former federal employees would need to be deposed or redeposed (and would be even more temporally removed from the facts and events on which they are asked to testify). In the interim, the United States will be forced to maintain documents that it might otherwise destroy, to prevent against a loss of documents if the Court's deliberative process privilege rulings are reversed. Of course, as Abbott noted, this pattern would have to be

3

followed in the United States' actions against Dey, Abbott, and Roxane, as well as in any other AWP case the United State brings or unseals in the future (to the extent any such cases exist).

## II. THE EVIDENCE THAT THE UNITED STATES REFUSES TO MAKE AVAILABLE IS CRUCIAL TO DEY'S DEFENSE

The evidence Dey has been blocked from obtaining goes to the very heart of whether Dey's listing of prices in the published compendia caused any damages to the Medicare and Medicaid programs. Dey believes that the discovery that the United States refuses to make available will establish that the Government was not only aware that published AWPs were not a measure of providers' average acquisition costs, the evidence will establish that the Government considered all of the prices at its disposal and concluded that reimbursing based on published drug compendia prices was the preferable way for the Government to achieve the goals of the Medicare and Medicaid programs. Indeed, the Government must concede that the evidence sought is relevant, or likely to lead to the discovery of relevant information, since its claims of privilege would be unnecessary if the information sought was irrelevant. *See* Fed. R. Civ. P 26(b)(1) (establishing the scope of permissible discovery).

The United States is required to establish by clear and convincing evidence that it justifiably relied on a fraudulent representation or omission by Dey and that the representation caused it damages in order to prevail on its False Claims Act and common law fraud claims. The cross-cutting evidence that the United States so vigorously guards is likely to show that the Government was well aware that existence of so-called "mega spreads" for generic pharmaceuticals but understood that such spreads were necessary in order to cause a pharmacy to switch from brand to lower-cost generics. Internal HCFA/CMS deliberations on this point are unlikely to mention or target any specific pharmaceutical manufacturers, and thus will fall outside of the narrow discovery that has been allowed in this action. Documents such as those

4

identified by Abbott (*see* Abbott Memo. at 7) and others on the United States' privilege logs are likely to show that the Government, with the knowledge that published AWPs were not an actual average price, considered and rejected other reimbursement formulae in favor of using published AWPs for its own legitimate purposes.

## CONCLUSION

This Court should give the First Circuit the opportunity now to review these potentially determinative issues. Delaying appellate review of these core issues only creates the potential for the parties to have to reopen discovery and retry these cases years down the road.

For the foregoing reasons, the Court should grant Abbott Laboratories Inc.'s motion for certification of interlocutory review and allow the First Circuit the option of deciding whether the United States of America has properly invoked the deliberative process privilege.

New York, New York  
Dated: May 9, 2008

Respectfully submitted,

By: ___/s Sarah L. Reid___  
Paul F. Doyle (BBO # 133460)  
Sarah L. Reid (*pro hac vice*)  
William A. Escobar (*pro hac vice*)  
Neil Merkl (*pro hac vice*)  
Christopher C. Palermo (pro hac vice)  
KELLEY DRYE & WARREN LLP  
101 Park Avenue  
New York, NY 10178  
Tel.: (212) 808-7800  
Fax: (212) 808-7897

*Counsel for Dey, Inc., Dey L.P., Inc. and Dey L.P.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on May 9, 2008, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s Sarah L. Reid