**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. NO. 1456 |
| THIS DOCUMENT RELATES TO: *State of Iowa* v. *Abbott Labs., Inc., et al.* S.D.IOWA 4:07-CV-00461-JAJ-CFB | Civil Action No. 01-CV-12257-PBS  Judge Patti B. Saris |

**PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………...…...iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT................................................................................................................. 1

I.   IOWA'S CLAIM UNDER THE MEDICAID REBATE AGREEMENT IS
     PRESERVED FOR APPEAL................................................................................ 1

II.  IOWA HAS SATISFIED FED. R. CIV. P. 8(A) AND 9(B) .................................. 2

III. IOWA IS NOT PURSUING ANY CLAIMS FOR DRUGS REIMBURSED
     ON THE  IOWA SMAC........................................................................................ 2

IV.  IOWA STATES A VALID CLAIM UNDER THE IOWA CONSUMER FRAUD
     ACT ("ICFA"....................................................................................................... 3

          A.   IOWA IS A "PERSON" UNDER THE ICF....................................... 3

          B.   DEFENDANTS' ATTEMPT TO CONSTRICT THE ICFA DEFINITION
               OF PERSON IS CONTRARY TO IOWA LAW ...................................... 6

          C.   THE DECEPTIVE AND UNFAIR PRACTICES AT ISSUE ARE DIRECTED
               AT CONSUMERS ........................................................................ 6

          D.   THE STATE MAY RECOVER DAMAGES FOR ITSELF UNDER THE ICFA ....... 7

V.   THE COURT MAY NOT TAKE JUDICIAL NOTICE OF CONTESTED FACTS ......... 10

VI.  DEFENDANTS' MOTION TO DISMISS IOWA'S CLAIMS CONCERNING
     DRUGS REIMBURSED ON THE FUL SHOULD BE DENIED..................................... 12

VII.    DEFENDANTS PROVIDE NO BASIS FOR THIS COURT TO REVERSE
        ITS PRIOR RULINGS CONCERNING BREACH OF CONTRACT,
        COMMON LAW FRAUD, UNJUST ENRICHMENT AND THE
        FILED RATE DOCTRINE ............................................................................................. 12

VIII.   IOWA LAW DOES NOT SUPPORT LIMITING DISCOVERY AT
         THIS JUNCTURE ...................................................................................................... 13

IX.     THIS COURT HAS PREVIOUSLY DECLINED TO DISMISS DRUGS
        WITH A LESS THAN THIRTY PERCENT SPREAD AT THIS JUNCTURE ............. 13

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITES

## *Cases*

*California ex rel. Ven-A-Care*,
    478 F. Supp. 2d 164 (D.Mass., 2007) ............................................................... 10, 13

*Cedar Valley Leasing, Inc. v. Iowa Dep't. of Revenue*,
    274 N.W.2d 357 (Iowa 1979) .................................................................................. 7

*Demick v. City of Joliet*,
    108 F. Supp. 2d 1022 (N.D. Ill. 2000) .................................................................... 11

*Estate of Ryan v. Heritage Trails Assoc., Inc.*,
    745 N.W.2d 724 (Iowa 2008) ................................................................................... 4

*Florida State Bd. of Admin. v. Green Tree Fin. Corp.*,
    270 F.3d 645 (8th Cir. 2001) ................................................................................... 11

*French v. Chosin Few*,
    173 F. Supp. 2d 451 (W.D.N.C. 2001) .................................................................... 11

*In re Bailey*,
    326 B.R. 750 (Bkrtcy. S.D. Iowa 2004)..................................................................... 7

*In re Lupron Marketing and Sales Practices Litig.*,
    295 F. Supp. 2d 148 (D. Mass. 2003) ..................................................................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    321 F. Supp. 2d 187 (D. Mass. 2004) ..................................................................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    339 F. Supp. 2d 165 (D. Mass. 2004) .................................................................. 7, 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    491 F. Supp. 2d 12 (D. Mass. 2007) ....................................................................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    498 F. Supp. 2d 389 (D. Mass. April 2, 2007) ........................................................ 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    498 F. Supp. 2d 402 (D. Mass. 2007) ................................................................. 12, 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    No. 01-cv-12257-PBS, 2007 WL 1051642 (D. Mass. April 2, 2007) ............... 2, 7, 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    No. 01-cv-12257-PBS, 2007 WL 1334496 (D. Mass. May 8, 2007)....................... 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   No. 01-cv-12257-PBS, 2007 WL 2058731 (D. Mass. July 17, 2007) ................................... 10

*Kushner v. Beverly Enterprises*,
   317 F.3d 820 (8th Cir. 2003) ............................................................................................. 12

*Mack v. S. Bay Beer Distribs., Inc.*,
   798 F.2d 1279 (9th Cir. 1986) ........................................................................................... 11

*State ex rel Miller v. Cutty's Des Moines Camping Club*,
   694 N.W.2d 518 (Iowa 2005) ................................................................................................ 6

*State ex rel. Miller v. New Womyn, Inc.*,
   679 N.W.2d 593 (Iowa 2004);................................................................................................ 6

*State ex rel. Miller v. Santa Rosa Sales and Marketing, Inc.*,
   475 N.W.2d 210 (Iowa 1991) ............................................................................................ 9, 10

*State ex rel. Turner v. Koscot Interplanetary, Inc.*,
   191 N.W.2d 624 (Iowa 1971) ................................................................................................ 6

*Turner v. Iowa State Bank & Trust Co. of Fairfield*,
   743 N.W.2d 1 (Iowa 2007) .................................................................................................. 13

*Wright v. Brooke Group Ltd.*,
   114 F. Supp. 2d 797 (N.D. Iowa 2000).................................................................................. 10

**<u>Statutes</u>**

Federal Rules of Evidence
   Section 201................................................................................................................................ 10

Federal Rules of Civil Procedure 8(a) ......................................................................................... 2

Federal Rules of Civil Procedure 9(b) ......................................................................................... 2

Illinois Consumer Fraud and Deceptive Business Practices Act ....................................... 3, 7, 8, 9

Iowa Code § 455B.171 (2007)...................................................................................................... 5

Iowa Code § 68A.102 .................................................................................................................. 5

Iowa Code § 714.16 ............................................................................................................. passim

Iowa Consumer Fraud Act
   Iowa Code § 4.1 .............................................................................................................. 3, 4, 5, 7

Whistleblowers Reward & Protection Act ....................................................................... 13

***<u>Other Authorities</u>***

Shorter Oxford English Dictionary, Vol. 1, 1345 (Fifth Ed.) (2002) ........................................... 5

Webster's Third New International Dictionary 490 (1961) ........................................................ 7

## PRELIMINARY STATEMENT

Defendants' Reply Memorandum, like their opening brief, provides no justification for this Court to reverse its prior rulings concerning breach of contract, unjust enrichment, common law fraud, the filed rate doctrine, particularity or drugs reimbursed on a Federal Upper Limit ("FUL").

The only issue to be addressed, therefore, is defendants' assault on the State of Iowa's claims for money damages under the Iowa Consumer Fraud Act ("ICFA"), Iowa Code § 714.16. Defendants' primary thrust is that the State is not a person entitled to recover money damages under this statute.  As set forth below and in the State's opposition brief, defendants are mistaken altogether.  To the extent this issue is one of first impression, it is respectfully submitted that this Court should give substantial, if not dispositive, weight to the view of the Attorney General of the State of Iowa concerning the propriety of this cause, as reflected herein.

## ARGUMENT

### I.   IOWA'S CLAIM UNDER THE MEDICAID REBATE AGREEMENT IS PRESERVED FOR APPEAL

Iowa already has acknowledged that this Court previously held that there is no private right of action under the Federal Medicaid Rebate Agreement.   As stated in Iowa's Memorandum of Law in Opposition to Certain Defendants' Motion to Dismiss the Complaint ("Iowa Opp."), Iowa is not re-briefing the point here but preserves it for appeal.  Iowa Opp. at 3.

## II.      IOWA HAS SATISFIED FED. R. CIV. P. 8(a) AND 9(b)

As fully set forth in Iowa's opposition brief, Iowa has satisfied Fed. R. Civ. P. 8(a) and 9(b) wherever such Rules apply to Iowa's claims.  Iowa has set forth, for each drug at issue, the specific drug purchased, the allegedly fraudulent price and a good faith estimate of an actual market price from which a spread may be calculated.  *See* Iowa Opp. at 2-3; Iowa Complaint, *Iowa v. Abbott Labs., Inc.*, No. 01-cv-12257-PBS (D. Mass. Oct. 9, 2007) ("Complaint"), Exhibit B.  Defendants themselves acknowledge that this is precisely what this Court requires.  *See* Memorandum of Law in Support of Certain Defendants' Reply to Iowa's Opposition to Certain Defendants' Motion to Dismiss the Complaint ("Def. Reply") at 2.

Defendants' contention that Iowa has failed to make specific WAC-based allegations is groundless.  This Court already has ruled to the contrary.  "[M]any of plaintiffs' allegations concerning wholesale pricing fraud are premised on the submission of . . . either 'Wholesale Acquisition Cost' ("WAC") or an equivalent listing. . . .  Given the formulaic relationship between WAC and AWP, no more particularity is required."  *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-cv-12257-PBS, 2007 WL 1051642, at *15 (D. Mass. April 2, 2007) ("New York Counties Case").

## III.     IOWA IS NOT PURSUING ANY CLAIMS FOR DRUGS REIMBURSED ON THE IOWA SMAC

Iowa is not pursuing any claims for drugs reimbursed based on the Iowa SMAC once the SMAC became effective.  Iowa is pursuing claims for these drugs prior to the SMAC's implementation.  That portion of defendants' motion that seeks dismissal of claims for drugs subject to the SMAC is moot.

IV.    **IOWA STATES A VALID CLAIM UNDER THE IOWA CONSUMER FRAUD ACT ("ICFA")**

Defendants argue that the State of Iowa is not a "person" or a "consumer" within the meaning of Iowa Code § 714.16, the ICFA, and thus the Attorney General cannot assert a claim to recover damages under the ICFA on behalf of the State.  Defendants argue that, at best, the State can only assert a cause for injunctive relief.   Def. Reply at 4, *et seq*.

Defendants have two fundamental bases for their attack.  First, defendants assert that the Iowa Consumer Fraud Act is modeled on the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA") and the CFDBPA will not support such a claim.  In point of fact, the Illinois Attorney General has asserted a CFDBPA claim on behalf of the State of Illinois in that State's AWP case and the Illinois Court presiding recently denied defendants' motion to dismiss such claim. *See People v. Abbott Labs., et al.*, No. 05-CH-2474 at 112-113 (Cir. Ct., Ill. April 11, 2008) (denying motion to dismiss Attorney General's claim for money damages on behalf of Illinois under the CFDBPA).

Second, defendants ask this Court to ignore the express language of the Iowa Code and black-letter principles of statutory construction.  As set forth more fully below, defendants once again miss the mark.  This cause of action should not be dismissed.

A.    **Iowa Is A "Person" Under the ICFA**

Defendants' argument that Iowa is not a person rests on two misrepresentations of the Iowa Code.  First, defendants argue that the definition of person contained in the general definitions section of Iowa Code § 4.1 conflicts with the definition of person contained in the ICFA.  As any plain reading of the sections reveal, there is no conflict.  Section 4.1 says that "'person' *means* individual, corporation, limited liability company, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal

entity." Iowa Code § 4.1(20) (emphasis added).  Section 714.16 says "'person' *includes* any

natural person or the person's legal representative, partnership, corporation (domestic and

foreign), company, trust, business entity or association, and any agent, employee, salesperson,

partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof."

Iowa Code § 714.16(1)(j) (emphasis added).  There simply is no conflict.

Second, defendants argue that given the "conflict", the definition of person in ICFA

controls and that definition expressly excludes governments.  Once again, defendants are

mistaken as any plain reading reveals.  Section 714.16 does not expressly exclude anything.  *See*

*supra*.

Defendants do acknowledge that § 714.16 says "include" while § 4.1 says "means."

However, defendants then assert that these two different words have the same meaning.  With no

support whatsoever, defendants state:

> Iowa places great weight on the distinction between the words "means" and
> "includes" [citations omitted].  A review of the definitions section of the [I]CFA
> suggests, however, that the Iowa Legislature used these terms interchangeably and
> *for purposes of diction* rather than to limit or modify any one definition.

(Def. Reply at 5) (emphasis added).  There is, in fact, no evidence anywhere (including in

defendants' brief) that the Iowa Legislature uses the terms "means" and "includes"

interchangeably. Thus, it is impossible to understand what defendants mean when they refer to

"purposes of diction".

Defendants' interpretation ignores the plain meaning of statutory terms.  Well settled

black-letter principles of statutory construction provide that the first step in statutory analysis "is

to look at the statute's language."  *Estate of Ryan v. Heritage Trails Assoc., Inc.*, 745 N.W.2d

724, 729 (Iowa 2008) (citations omitted).  "[W]hen the statute's language is plain and its

meaning is clear, we look no further.'"  *Id*. at 730 (citations omitted).  Here, the statute's language is plain and its meaning is clear.  "Means" is not a synonym for "includes" by any reasonable stretch of the imagination,[1] as defendants well know (hence the absence of any legitimate support for this entirely baseless argument).

Defendants also argue that "when the Iowa Legislature has intended to include the State or one of its agencies within the definition of 'person' it has done so specifically."  Def. Reply at 5.  However, both statutes defendants cite begin their definition of the word person with the phrase "'Person' means…" not "'Person' includes".  Again, the relevant definition of person in the ICFA begins with the word "includes" and therefore adds to the general definition as discussed above.  Because these statutes begin with "means," they are independent definitions.  The statutes that defendants point to have no relevance here.[2]

Finally, defendants state that plaintiffs are "re-drafting" the statute.  Def. Reply at 6.  This mischaracterizes the State's position.  The State of Iowa does not seek to alter the meaning of the ICFA "under the pretext of construction."  Def. Reply at 6.  Rather, the State properly seeks to harmonize the definitions of "person" found in Iowa Code §§ 4.1 and 714.16 while giving full force to the intent of the legislature regarding the scope of the ICFA.

Finally, defendants misapply the doctrine of *ejusdem generis* to argue that the State "cannot be included within the [I]CFA's definition of 'person'" because it is not "of the same class and type as the other entities defined as a 'person' in the [I]CFA."  Def. Reply at 6.  For all

---

[1] The definition of "include" means to "[c]ontain *as part of a whole or as a subordinate element.*"  Shorter Oxford English Dictionary, Vol. 1, 1345 (Fifth Ed.) (2002) (emphasis added).  The relevant definition of "mean" is to "[h]ave as one's purpose or intention, have in mind"; or "[a]im at, direct one's way to"; or "[i]ntend to indicate (a *certain* object), convey (a *certain* sense) or refer to (a *certain* person or thing) when using some word, sentence, significant action, etc."  *Id*. at 1728.

[2] Iowa Code § 68A.102 is the Iowa statute governing ethics in campaign finance. It provides for a board that may impose remedies and penalties.  Iowa Code § 455B.171 (2007) is a statute that empowers the Director of the Department of Natural Resources to institute administrative orders to violators of its subsections and in some cases request that the Attorney General institute legal proceedings.

5

the reasons stated above, this analysis has no application here given that the ICFA definition of person is not expressly limited.  In sum, defendants have simply no support whatsoever for their proposition that the Iowa Legislature intended to exclude governments from the definition of person in the ICFA.

### B.    Defendants' Attempt To Constrict The ICFA Definition Of Person Is Contrary To Iowa Law

The cases submitted by the State demonstrate a decades-long trend on the part of the Supreme Court of Iowa to interpret the definitions of the ICFA broadly.  Iowa Opp. at 14-15.[3] This trend has been directly applied to the ICFA's definition of person.  In *State ex rel Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518 (Iowa 2005) the Supreme Court of Iowa specifically rejected the proposition that the term person should be limited in some way. The court wrote, "[t]he term 'person' *is a general one that is not on its face limited* to sellers and we see no reason to read such a limitation into the statute."  *Id*. at 530-531 (emphasis added).

Defendants' response to this dispositive ruling is that it was "unremarkable" for the court to conclude a seller was a person. This entirely misses the point.  The court's articulated logic was that the term "person" in the ICFA was not, on its face, limited.  The same can be said to the question at bar.  The term "person" in the ICFA is not on its face limited and thus the general definition of "person" in the Iowa Code, which includes the State, controls.

### C.    The Deceptive And Unfair Practices At Issue Are Directed At Consumers

The parties agree that the ICFA requires that the deceptive and unfair practices at issue be directed at consumers. *See* Def. Reply at 7 (citing Iowa Code § 714.16(1)(f), (n)).  That the wrongs undergirding Iowa's complaint are consumer-oriented cannot reasonably be disputed.

---

[3] *See State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 526 (Iowa 2005); *State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 597 (Iowa 2004); *State ex rel. Turner v. Koscot Interplanetary, Inc.*, 191 N.W.2d 624, 630-631 (Iowa 1971).

This court has ruled as such in other matters pending in this MDL.  Iowa Opp. at 12-13 (citing *New York Counties Case*, 2007 WL 1051642, at *7 (the practices at issue are "materially misleading and 'consumer-oriented.'")); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 339 F. Supp. 2d 165, 181-182 (D. Mass. 2004) ("Suffolk I").

Yet, defendants argue that the State cannot assert this cause because it is not, itself, a consumer.  Defendants are mistaken again.  The ICFA does not define "consumer," nor do the general provisions of the Iowa Code § 4.1.  *See* Iowa Code § 714.16; Iowa Code § 4.1.  Thus, it is appropriate to look to Iowa case law to see how "consumer" is defined.  Where a statute does not "defin[e] the words and phrases used in that chapter and does not incorporate by reference the definitions found in any other chapter of the Iowa Code . . . we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage."[4]  Iowa case law defines consumer as "one that utilizes economic goods."[5]

This prong of defendants' attack on the State's ICFA claim fails entirely.

### D.  The State May Recover Damages For Itself Under The ICFA

In their moving brief defendants argued that:

> The Iowa CFA was patterned upon the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA").  [citation omitted].  While Iowa courts do not appear to have addressed the issue, Defendants' interpretation of the CFA's definition of "person" is consistent with the Illinois Supreme Court's interpretation of the Illinois CFDBPA. . . .  Given that the Iowa CFA is patterned on the Illinois CFDBPA, it is reasonable to conclude that the State is also not a person under the CFA, and thus cannot sue or recover damages under the CFA.

*See* Memorandum of Law In Support of Certain Defendants' Motion To Dismiss the Complaint at 19-20.

---

[4] *In re Bailey*, 326 B.R. 750, 756 (Bkrtcy. S.D. Iowa 2004) (citations omitted).
[5] *Cedar Valley Leasing, Inc. v. Iowa Dep't. of Revenue*, 274 N.W.2d 357, 360 (Iowa 1979) (citing Webster's Third New International Dictionary 490 (1961)).

On reply, defendants acknowledge that the Illinois Court presiding over the Illinois Attorney General's AWP case denied defendants' motion to dismiss Illinois' CFDBPA claim. Def. Reply at 5, fn. 7.  Defendants argue, however, that the Illinois court "did not . . . consider whether the State's remedies are limited to injunctive relief, as opposed to actual damages."  *See id*.  Defendants are entirely mistaken, as their own briefing in the Illinois AWP matter demonstrates.

Echoing the arguments defendants advance here, in their memorandum of law in support of their motion to dismiss the Illinois CFDBPA AWP claim, defendants argued that:

> Section 7 [of the Illinois CFDBPA] does not authorize recovery of actual damages.  The only section in the [Illinois] Consumer Fraud Act that allows recovery of actual damages is Section 10a, and only a "person" may bring a private action under Section 10a. . . .  The attorney general does not fit that definition. . . .  Accordingly, the State cannot bring an action under Section 10a of the [CFDBPA].  And that Section provides the only basis for a claim for actual damages.

*See* Exhibit A hereto, Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint at 25-26, *People v. Abbott Labs., Inc. et al.*, No. 05-CH-2474 (Cir. Ct. Ill. Nov. 19, 2007).

In opposition, the Illinois Attorney General's opposition brief argued that Illinois was entitled to state a claim for monetary relief.  See Exhibit B hereto, The State of Illinois' Response to Defendants' Corrected Joint Motion to Dismiss at 24-25, *People v. Abbott Labs., et al.*, No. 05-CH-2474 (Cir. Ct. Ill. Jan. 25, 2008).  Specifically, the Illinois Attorney General wrote: "In seeking monetary relief, Count I uses the phrase 'restitution and actual damages.' . . . [Section] 7's authorization of 'restitution' as well as of all other 'powers necessary' authorizes the monetary relief the State seeks."  *Id.*

In sum, the briefing submitted by both parties makes clear that the question of whether the Illinois Attorney General's CFDBPA AWP claim sought the recovery of actual damages was before the Illinois Court.  Thus, defendants are entirely incorrect when they say that the Illinois AWP Court "did not . . . consider whether the State's remedies are limited to injunctive relief".  Def. Reply at 5, fn. 7.  Clearly the court did consider it and denied defendants' motion to dismiss without any limitation whatsoever.

Finally, as discussed in plaintiff's opposition, the Supreme Court of Iowa has contemplated the right of the State to recover damages on behalf of itself under the ICFA.  Iowa Opp. at 17 (citing *State ex rel. Miller v. Santa Rosa Sales and Marketing, Inc.*, 475 N.W.2d 210, 219 (Iowa 1991)).  Defendants contend, however, that *Santa Rosa* is of no moment because the court's reasoning is unclear and the case is factually unrelated.   Def. Reply at 9-10.   But defendants overlook the import of the court's analysis.

In *Santa Rosa* the state sought damages for citizens who were victims of fraud, and on appeal the issue was whether any of the unclaimed funds would escheat to the State by way of an appropriations measure.  The court denied recovery because the action was not asserted on behalf of the state.  *See Santa Rosa*, 475 N.W.2d at 219.

In so ruling, the Supreme Court of Iowa recognized, albeit in dicta, "the right of Iowa to seek damages on behalf of the state under the ICFA."  Iowa Opp. at 17.  Thus, despite finding that  Iowa could not recover in that particular case, the *Santa Rosa* court nevertheless identified the appropriations measure at issue there as contemplating a scenario where the State may seek damages on its own behalf under the ICFA.

In light of the foregoing statutory analysis, the Supreme Court of Iowa's dicta in *Santa Rosa*, and the trend to interpret the ICFA broadly, the Attorney General may assert a claim under this statute for money damages to be awarded to the state.

## V.   THE COURT MAY NOT TAKE JUDICIAL NOTICE OF CONTESTED FACTS

Defendants' arguments regarding the public record are entirely inappropriate at this stage of the case, as this Court has repeatedly ruled.[6]  Likewise improper is the suggestion that the Court may take judicial notice of such public record, or its import.  The Court may only take judicial notice of uncontested facts.  "A judicially noticed fact must be one *not subject to reasonable dispute* in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b) (emphasis added).  And of course this makes sense.  "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."  *Wright v. Brooke Group Ltd.*, 114 F. Supp. 2d 797, 816 (N.D. Iowa 2000).

Clearly the parties do not agree on the public record or its import to the State's case.  Defendants' suggestions therefore are tantamount to asking the Court to deprive the State of its right to a fair hearing and to circumvent the pleading standards of a Rule 12(b)(6) motion that protect plaintiff's right to such fair hearing.  "[W]e must assume the truth of the allegations pleaded with particularity in the complaint. The strong-inference pleading standard does not

---

[6] *See Suffolk I,* 339 F. Supp. 2d at 182; *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 401 (D. Mass. April 2, 2007) (relying on *California ex rel. Ven-A-Care*, 478 F. Supp. 2d at 174-5); *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-cv-12257-PBS, 2007 WL 1334496, at *6 (D. Mass. May 8, 2007) (relying on *California ex rel. Ven-A-Care*, 478 F. Supp. 2d at 174-5); *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-cv-12257-PBS, 2007 WL 2058731, at *9 (D. Mass. July 17, 2007) ("Florida/Ven-A-Care") (relying on *California ex rel. Ven-A-Care*, 478 F. Supp. 2d at 174-5).

license us to resolve disputed facts at this stage of the case." *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 666 (8th Cir. 2001).

Defendants' own cases confirm plaintiff's point.  Each demonstrates the type of non-controversial facts that are appropriate for judicial notice.  In *Demick v. City of Joliet*, 108 F. Supp. 2d 1022 (N.D. Ill. 2000), the plaintiff sued the city of Joliet because her name was removed from the eligibility list for firefighter positions when she reached the age of 35 pursuant to a local ordinance and the city's rules and regulations.  The plaintiff contended that this violated the Illinois Municipal Code.  The court took judicial notice of the local ordinance at issue in order to determine whether the ordinance preempted the municipal code.  "In this case, the matters outside of the pleadings – local ordinances and the City's Rules and Regulations – are matters of public record of which this court can take judicial notice." *Id.* at 1025.

In *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279 (9th Cir. 1986), the court took judicial notice of state administrative records attached as exhibits to the motion to dismiss in order to enable the court to determine whether a decision by the Unemployment Insurance Appeals Board had a collateral estoppel effect on the plaintiff's age discrimination claim. *See id.* at 1282.

Finally, in *French v. Chosin Few*, 173 F. Supp. 2d 451, 456-7 (W.D.N.C. 2001), defendants requested that the court take judicial notice of the record of the previous litigation in an attempt to demonstrate that the *extent* of prior litigation was evidence that the dispute arose out of a good faith disagreement over the alleged contractual obligation.  The issue in question was the *existence* and *volume* of the prior litigation, not the *content* of the record.  The court agreed because the majority of the record was already in evidence, and this was an "exceptional" case. *Id.* at 457.

None of these uncontroversial uses of public reports for judicial notice purposes is precedent for the very different use proposed here by defendants – to draw inferences and conclusions about whether and the extent to which the State was aware of defendants' false and inflated price reporting practices.  These are matters that are hotly contested and in dispute.  The doctrine of judicial notice is simply unavailable under these circumstances.  *See, e.g.*, *Kushner v. Beverly Enterprises*¸ 317 F.3d 820, 832 (8th Cir. 2003) (court refused to take judicial notice of facts because "[t]he documents here are asserted in an effort to prove the truth of the matters within them and inferences to be drawn from them – matters which Beverly disputes.").

### VI.    DEFENDANTS' MOTION TO DISMISS IOWA'S CLAIMS CONCERNING DRUGS REIMBURSED ON THE FUL SHOULD BE DENIED

Defendants say that this Court has "reserved judgment," with respect to the FUL claims in the New York Counties Case. In fact, "[t]he Court ***DENIE[D]*** defendants' motion to dismiss drugs subject to a Federal Upper Limit ('FUL')." *See In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 402, 405 (D. Mass. 2007) (emphasis in original).  Defendants' motion to dismiss Iowa's FUL claims should likewise be denied here.   If the Court wishes to limit discovery on such claims pending the resolution of the New York FUL summary judgment activity, on the ground that such will be instructive, Iowa has no objection.

### VII.   DEFENDANTS PROVIDE NO BASIS FOR THIS COURT TO REVERSE ITS PRIOR RULINGS CONCERNING BREACH OF CONTRACT, COMMON LAW FRAUD, UNJUST ENRICHMENT AND THE FILED RATE DOCTRINE

Defendants concede that this Court has already rejected attempts to dismiss claims asserted on behalf of states for breach of the Medicaid Rebate Agreement. Def. Reply at 12.  As set forth fully in Iowa's opposition, defendants have provided no justification here for why this Court should reverse its prior rulings on this issue.  Iowa Opp. at 7.  Similarly, defendants

acknowledge, as they must, that this Court has denied motions to dismiss similar claims for common law fraud, unjust enrichment, and has rejected defendants' filed rate arguments. *Id*. Defendants provide no basis for this Court to reverse any of these prior rulings.

## VIII.   IOWA LAW DOES NOT SUPPORT LIMITING DISCOVERY AT THIS JUNCTURE

There is no basis for the Court yet to determine when the statute of limitations for Iowa's claims began to run, or to limit discovery, based on the instant record and given the posture of this case.  Iowa law recognizes that a motion to dismiss based on the statute of limitations is proper only where "it is obvious from the uncontroverted facts contained in the petition that the applicable statute of limitations bars the plaintiff's claim for relief." *Turner v. Iowa State Bank & Trust Co. of Fairfield*, 743 N.W.2d 1, 5 (Iowa 2007).

The instant record provides no such uncontroverted facts.  Under these circumstances, this Court has repeatedly held that statutes of limitations should not be resolved at the pleading stage.  *See In re Lupron Mktg. and Sales Practices Litig.*, 295 F. Supp. 2d 148, 183-184 (D. Mass. 2003); Transcript of Motion to Dismiss Hearing at 117-118, *People v. Abbott Labs., et al.*, No. 05-CH-2474 (Cir. Ct. Ill. Apr. 11, 2008) (Court denying motion to dismiss Count IV (Whistleblowers Reward & Protection Act) on grounds that it is "premature to try to decide").

## IX.   THIS COURT HAS PREVIOUSLY DECLINED TO DISMISS DRUGS WITH A LESS THAN THIRTY PERCENT SPREAD AT THIS JUNCTURE

This Court has repeatedly denied motions to dismiss causes asserted in connection with drugs with spreads greater than 20-25%.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 12, 19-20 (D. Mass. 2007) ("*US/Ven-A-Care*") (relying on *California ex rel. Ven-A-Care*, 478 F. Supp. 2d at 171-172); *New York Counties Case*, 2007 WL 1051642, at *14-17; *In re Pharm. Indus. Average Wholesale Price Litig.*, 321 F. Supp. 2d 187, 207-208 (D.

Mass. 2004) ("*Pharm. IV/Nevada and Montana*").  All of Iowa's causes concern drugs with spreads of 25% or greater. Complaint, Exhibit B. Defendants' motion to dismiss such causes should be denied for the reasons stated herein.  Iowa has no objection to this Court limiting discovery to drugs with spreads greater than 30% until such time as Iowa establishes, on a fuller record, that a lower threshold should apply.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d at 405 ("discovery is stayed for all drugs with spreads lower than 30% until such time as the plaintiffs submit an expert affidavit providing a good faith basis for a 20-25% spread threshold.").

## CONCLUSION

For all the foregoing reasons, Certain Defendants' Motion to Dismiss the Complaint should be denied in its entirety.

Dated:  May 9, 2008

Respectfully submitted,

THOMAS J. MILLER
ATTORNEY GENERAL FOR
THE STATE OF IOWA

By:     C. Roderick Reynolds
        J. Bradley Horn
        Assistant Attorney General
        Iowa Department of Justice
        1305 E. Walnut Street
        Hoover Bldg., 2nd Floor
        Des Moines, IA  50319


KIRBY McINERNEY LLP

Attorneys for the State of Iowa
830 Third Avenue
New York, New York 10022
(212) 371-6600

By:     _____/s/_____
        Joanne M. Cicala (JC 5032)
        James P. Carroll Jr. (JPC 8348)
        Aaron D. Hovan (AH 3290)

15

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on the 9th day of May, 2008 she caused a true and correct copy of the Plaintiff's Sur-Reply Memorandum of Law in Further Opposition to Certain Defendants' Motion to Dismiss the Complaint to be delivered to counsel of record for defendants by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.  The response was posted to Lexis Nexis File and Serve's Electronic Service System.

<u>/s/Joanne M. Cicala</u>
Joanne M. Cicala, Esq.
Kirby McInerney LLP
830 Third Avenue, 10th Floor
New York, NY 10022
(212) 371-6600