UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) MDL No. 1456 ) ) Civil Action No. 01-12257-PBS ) |
| **THIS DOCUMENT RELATES TO:** | ) ) Hon. Patti B. Saris ) |
| *United States ex rel. Edward West, et al., v. Ortho-McNeil Pharmaceutical, Inc. and Johnson & Johnson.* CIVIL ACTION NO. 06-12299-PBS | ) ) ) ) ) ) |

**REPLY MEMORANDUM IN SUPPORT OF ORTHO-MCNEIL'S MOTION TO DISMISS WEST'S CLAIM FOR "MARKETING THE SPREAD TO HOSPITALS"**

West does not dispute that AWP was legally irrelevant to hospital reimbursement for administration of Levaquin IV during the relevant time period (1997 – 2000). Therefore, simply alleging that there was a difference between the amounts that hospitals paid for Levaquin IV, and a published price used for reimbursement to physicians, fails to satisfy the Court's directive that West plead a "fraudulent spread." In essence, West concedes that allegations that OMP "marketed the spread" to hospitals do not support any cause of action under the False Claims Act.[1]

---

[1] West asserts that "[t]he issue of whether the government has been injured by the submission of claims by hospitals pertains solely to the amount of damages the government has sustained." West's Opp. at 4. This is a *non-sequitur*. As explained in OMP's opening memorandum, the fact that AWP was irrelevant to hospital reimbursement means that West has not pled fundamental elements of a cause of action under the False Claims Act, including the existence of any "false claims," and the materiality of any alleged false statements. Memorandum at 6-7. West does not respond to these arguments.

Rather than defend his claim that OMP marketed a spread for Levaquin IV to hospitals, West seeks to repackage his claim as applying to unspecified classes of "providers" other than hospitals. West's belated attempt to recharacterize his marketing the spread claim should be rejected for two reasons. First, the allegations in the Second Amended Complaint concerning alleged marketing of the spread are limited to hospitals. Second, the Court's subject matter jurisdiction over West's "marketing the spread" claim is limited to claims that OMP marketed the spread to hospitals, because allegations that OMP marketed a spread concerning Levaquin IV to other categories of "providers" were publicly disclosed before West files his lawsuit, and West is not an original source of any claims concerning marketing the spread to providers other than hospitals.

### A.   West's Allegations Concerning "Marketing The Spread" Are Limited To Hospitals.

West's claim that his "marketing the spread" theory encompasses "providers" other than hospitals is belied by the title of the section in which the pertinent allegations are made in the original Complaint, the First Amended Complaint, and the Second Amended Complaint: "Rebates to increase the Medicare profit spread for hospitals." Second Amended Complaint, page 22. Indeed, West has repeatedly emphasized that his allegations of marketing the spread relate specifically to hospitals. For instance, in his pleadings before the JPML, West stated as follows:

- "[West] alleges that Ortho-McNeil used fraudulent marketing and billing scheme to inflate the average wholesale price that hospitals could charge to government programs, including Medicare and Medicaid . . . . He also alleges that Ortho-McNeil sales representatives were instructed on how to advise the hospital to hide

rebates and to alter their billing methods on Levaquin in order to bill Medicare at a higher AWP that they should have."[2]

- "Ortho also offered rebates to <u>hospitals</u> designed to increase the <u>hospitals'</u> profits. While the <u>hospitals</u> were purchasing Levaquin at a contract price from a wholesaler, they were given rebate checks directly from Ortho and the sales representative. This lowered the actual price the <u>hospitals</u> were paying for Levaquin while not affecting the AWP of Levaquin."[3]

In opposing OMP's motion to dismiss for lack of subject matter jurisdiction, West similarly described his "marketing the spread" claim as being limited to hospitals:

- "In [his First Amended Complaint] West alleges, with particularity, the circumstances of the Defendants' scheme to bribe <u>hospitals</u> to induce prescriptions of Levaquin, their manipulation of the average wholesale price of Ultram and Levaquin and "marketing of the spread" <u>to hospitals</u> . . . ."[4]

This Court has also recognized that West's marketing the spread theory relates specifically to hospitals:

- "[West] alleges that Ortho-McNeil used fraudulent marketing and billing schemes to inflate the average wholesale price that <u>hospitals</u> could charge . . . He also alleges that Ortho-McNeil sales representatives were instructed on how to advise the <u>hospital</u> to hide rebates and to alter their billing methods on Levaquin in order to bill Medicare at a higher AWP than they should have."[5]

- "In essence, Relator accuses Defendants of using rebates to 'market the spread' between what the <u>hospital</u> paid for the drug and what it would be reimbursed by Medicare and Medicaid."[6]

---

[2] Letter to MDL dated August 22, 2006, at 2 (emphasis added, citing First Amended Complaint), found at Docket Number 4308, Ex. 3.

[3] West's Opposition to Defendants' Motion to Vacate Conditional Transfer Order 31, at 6 (emphasis added), found at Docket Number 4308, Ex. 2.

[4] West's Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction, at 2 (emphasis added), found at Docket Number 4441.

[5] February 18, 2008 Memorandum Opinion ("Mem. Op,"), at 17.

[6] *Id.* at 24.

West's efforts now to repackage his claims as applying to unspecified categories of "providers" other than hospitals should be rejected. One of the purposes of Rule 9(b)'s particularity requirement is to provide notice to the defendant of the specific conduct alleged to be fraudulent. *See In re Neurontin Marketing, Sales Practices and Products*, 433 F. Supp. 2d 172, 185 (D. Mass. 2006) (*quoting New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987)). The False Claims Act contains its own particularity requirement, obligating relators like West to disclose to the government all of the factual information they have concerning the defendant's alleged unlawful conduct prior to filing suit. *See United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 725 (1st Cir. 2007) ("The FCA requires a private plaintiff bringing a claim under the Act to file a complaint under seal and serve the government with 'the complaint and written disclosure of substantially all material evidence and information' underlying the complaint, a procedure designed to allow the government to decide whether to intervene in the action."). Allowing West to now morph his claims to encompass categories of "providers" other than hospitals – which were the sole subject of his disclosures to the government and of his three Complaints – would defeat the purposes of both Rule 9(b) and the False Claims Act.[7] Given that there are significant differences in the way that hospitals, physicians, and other unspecified categories of "providers" are reimbursed for administering Levaquin IV, a vague allusion to "providers" cannot satisfy West's burden of pleading fraud with particularity – particularly when the allegations of fraud concerning the one specific class of

---

[7] While it is true, as West notes, that the Second Amended Complaint does contains allegations of misconduct directed to physicians (Opposition at 2), those allegations are that OMP provided speaker fees, grants, and gifts to physicians. *See* Second Amended Complaint ¶¶ 64, 88-92, 93-99. His marketing the spread allegations, by contrast, are expressly limited to <u>hospitals</u>. *See id.* at 22, ¶¶ 72-78.

providers that is the focus of his claim (hospitals) plainly fail to state a claim under the False Claims Act.

Finally, West's argument that he is entitled to a relaxed pleading standard (Opposition at 3), which the Court rejected in its previous opinion, is no more meritorious here. West is not a mere outsider; he was a sales representative for OMP for three years. Indeed, the Court allowed West to proceed with certain claims based on his purported personal knowledge of the misconduct he alleges. If he had knowledge of "marketing the spread" to providers other than hospitals, he could and should have provided that information to the government and then included it in his Complaint. He did not.

B. **West's Attempt To Expand His Marketing The Spread Claim Beyond Hospitals Is Foreclosed By The Court's Ruling On OMP's Motion To Dismiss For Lack of Subject Matter Jurisdiction.**

In its opinion on OMP's motion to dismiss for lack of subject matter jurisdiction, the Court held that West's allegations that OMP "marketed the spread" concerning Levaquin were publicly disclosed before West filed his Complaint. *See* Mem. Op. at 25-26. However, the Court allowed West to proceed with those aspects of his theory as to which he was an "original source," *i.e.*, as to which he had alleged facts demonstrating "direct and independent knowledge." *Id.* at 27. Specifically, the Court held that "Relator has demonstrated that this Court has jurisdiction over his allegation that Defendants used rebates to 'market the spread' between what a hospital paid for the drug and what it would be reimbursed by Medicare and Medicaid and failed to account for these rebates when reporting AWP." *Id.* at 28-29 (emphasis added). The Court bolstered this conclusion by reference to West's allegations concerning his interactions with representatives of hospitals.

5

By contrast, there are no allegations in the Complaint concerning marketing the spread (or even pricing generally) relating to categories of "providers" other than hospitals. Thus, the Court's limiting of subject matter jurisdiction to West's claim that OMP marketed the spread to hospitals was not inadvertent. The Court had already held that the "essence" of West's claim was that OMP had issued "rebates to 'market the spread' between what the hospital paid for the drug and what it would be reimbursed by Medicare and Medicaid."[8]

West is now attempting to leverage a claim over which the Court has held it does have subject matter jurisdiction (marketing the spread to hospitals) into other claims (marketing the spread to physicians and other unspecified "providers) over which the Court does not have subject matter jurisdiction because West is not an original source. The Supreme Court has held that such "claim smuggling" is prohibited. *Rockwell Intl. Corp. v. United States*, 127 S.Ct. 1397, 1410 (2007) ("The FCA does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. . . .  The plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (e)(4) if they had been asserted in a separate action.")

---

[8] *Id.* at 24.

## **CONCLUSION**

WHEREFORE, Ortho-McNeil Pharmaceutical, Inc. respectfully requests that the Court dismiss with prejudice West's claim that OMP violated the False Claims Act by "marketing the spread."


Date:  May 14, 2008                              Respectfully submitted,

                                                 ORTHO-MCNEIL PHARMACEUTICAL, INC.

                                                 By: /s/  Scott D. Stein_____
                                                     One of Its Attorneys

                                                 Scott R. Lassar
                                                 Scott D. Stein
                                                 Jordan S. Ginsberg
                                                 SIDLEY AUSTIN LLP
                                                 One South Dearborn Street
                                                 Chicago, Illinois  60603
                                                 (312) 853-7000

## **CERTIFICATE OF SERVICE**

I, Jordan S. Ginsberg, certify that on May 14, 2008, I electronically filed the foregoing document with the Clerk of the Court for the District of Massachusetts using the court's CM/ECF system. A copy of the foregoing also has been served on the following individuals by depositing a copy in the U.S. mail, first-class postage pre-paid:

George A. Zelcs
Korein Tillery, LLC
205 N. Michigan Plaza
Suite 1950
Chicago, IL 60601

Samuel S. Miller
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604

John Bruegger
Simmons Cooper LLC
707 Berkshire Blvd.
East Alton, IL 62024

Mary Louise Cohen
Phillips & Cohen LLP
2000 Massachusetts Ave N.W.
Washington, DC 20036

Erika A. Kelton
Phillips & Cohen LLP
2000 Massachusetts Ave, N.W.
Washington, DC 20036

Timothy D. Nimrod
Gregory Hooggasian, Esq.
Medicaid Fraud Control Unit
100 W. Randolph St.
12th Floor
Chicago, IL 60601

Lisa Madigan
Attorney General of Illinois
100 West Randolph Street
12th Floor
Chicago, IL 60601

Charles J Crist, Jr.
The Capitol PL-01
Tallahassee, FL 32399-1050

M. Jane Brady
Carvel State Office Building
Consumer Protection - 5th Floor
820 North French Street
Wilmington, DE 19801

Collin Wong
Bureau of Medi-Cal Fraud
Office of the Attorney General
1425 River Park Drive
Ste. 300
Sacramento, CA 95815

L Timothy Terry
Office of the Attorney General,
100 North Carson Street
Carson City, NV 89701

Randall L Clouse
Medicaid Fraud Control Unit
900 East Main St.,
5th Fl
Richmond, VA 23219

Steven Fermon
Medicaid Fraud Control Unit Illinois State Police
200 Isles Park Place
Ste 230
Springfield, IL 62703

Robert Spagnoletti
District of Columbia Attorney 's Office
Office of Corporation Counsel
441 4th St., NW
Washington, DC 20001

W Rick Copeland
Medicaid Fraud Control Unit
Office of the Attorney General
Austin, TX 78711

Jerry Kilgore
Virginia Attorney General
Office of the Attorney General
900E. Main St
5th FL
Richmond, VA 23219

Susan Kennedy
Medicaid Fraud Control Unit
Office of DC Inspector General
Washington, DC 20005

Robert Schlafly
Medicaid Fraud Control Unit Bureau of Investigations
901 R.S. Gass Blvd.
Nashville, TN 37216

Paul G Summers
Tennessee Attorney General
500 Charlotte Avenue
Nashville, TN 37243

Bill Lockyear
Office of the Attorney General
1300 I Street
Ste. 1740
Sacramento, CA 95814

Gary K Senega
Deputy Attorney General State of Hawaii
333 Queen Street
10th Floor
Honolulu, HI 96813

Greg Abbott
Texas Attorney General
Office of the Attorney General
Capitol Station, PO Box 12548
Austin, TX 78711

/s/  Jordan S. Ginsberg_____