UNITED STATES DISTRICT COURT, D. MASSACHUSETTS

In Re Pharmaceutical Industry Average Wholesale Price Litigation

| | |
|---|---|
| THE STATE OF UTAH, <br><br> Plaintiff, <br><br> vs. <br><br> ASTRAZENECA, et al. <br><br> Defendants. | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (ASTRAZENECA)** <br><br> MDL Docket No. 1456 <br> Case No.: 01CZ12257 <br><br> Judge Saris |

## INTRODUCTION

This is a motion for partial summary judgment brought by Plaintiff State of Utah against one defendant, AstraZeneca. The case involves the State's claim that its Medicaid program was defrauded by defendant's manipulation of pharmaceutical prices. Specifically, the State alleges that defendant manipulated the price under which the State Medicaid program reimbursed pharmacies. The standard for reimbursement is "Average Wholesale Price" or more commonly "AWP." This motion demonstrates that there is no material question of fact under Utah law and that judgment as to liability is therefore appropriate. The State has filed a Motion to Remand. The State suggests that the proper procedure would be to decide jurisdictional issues before deciding the summary judgement. However, if the Court feels it may move forward, the State

1

has no objection.

Under the provisions of Civil Rule 56, the State must prove the absence of a question of fact under the Utah False Claims Act. The State does this in two ways. First, judgment has been entered against the Defendant under theories of common law fraud in the State of Alabama. Since Utah must prove a lesser burden, the judgment of common law fraud requires that defendant be collaterally estopped from denying the material elements of the cause of action. Second, by testimony and affidavit, the State proves that defendant controlled its pricing both prior to and subsequent to the year 2002. Again, under the Utah False Claims Act, the State's burden is to show that a claim was "caused to be made" rather than show that a claim was fraudulently made. Under either ground, partial summary judgment as to liability is appropriate and should be entered forthwith.

## UTAH FALSE CLAIMS ACT   (Utah Stat. Ann.  Chapter 26-20)

The Utah legislature amended the Utah False Claims Act in 2007. This is the chapter that deals with false claims under the State Medicaid Act. Utah Stat. Ann. 26-20-2 (5). The amendments provide a significant change from prior law or the law in other States. Utah Stat. Ann. 26-20-7 provides in pertinent portion that "A person may not make or present or <u>cause to be made</u> or presented to an employee or officer of the state a claim for medical benefits." The Statute further provides for civil penalties. "The culpable mental state required for a civil violation of this chapter is 'knowing' or 'knowingly.'" This means that a person had actual knowledge with respect to information or acted in deliberate ignorance of the truth or falsity of

2

the information. It also means that a person acted in reckless disregard of the truth or falsity of the information. Lastly, it does not require a specific intent to defraud.

Thus, the State is only required to show that AstraZeneca caused a claim for medical benefits to be made to the state with reckless disregard for the truth and the State does not have to prove that AstraZeneca had the specific intent to defraud the State Medicaid program.

## THE REQUIREMENTS OF RULE 56

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56 ( c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). The Court should not grant summary judgment unless it appears that the non-moving party can prove no set of facts in support of his claim or defense which would entitle him to relief. *Egelston v. State College*, 535 F.2d 752,754 (2d Cir. 1976) Further, the "inferences to be drawn from the underlying facts..must be in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus Co., Inc., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)

Once the moving party discharges its burden of proof under Rule 56, the party opposing summary judgment "has the burden of coming forward with specific facts showing that there is a genuine issue for trial." *Phillips v. Kidder, Peabody & Co.*, 782 F. Supp. 854,858 (S.D. N.Y. 1991). A party opposing summary judgment may not rest upon mere allegations or denials in the pleadings. Indeed, "the mere existence of some alleged factual dispute between the parties

alone will not defeat a properly supported motion for summary judgment. Rather, enough evidence must favor the non-moving party's case that a jury could return a verdict in its favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

## COLLATERAL ESTOPPEL REQUIRES THE ENTRY OF JUDGMENT

Attached to this memorandum and incorporated by reference is the jury verdict and judgment entered against defendant in a suit for common law fraud in the State of Alabama. These documents disclose that Alabama's cause of action, like Utah's was based upon allegations that AstraZeneca manipulated the prices of its drugs to the detriment of the State Medicaid program. The allegations in Alabama were based upon common law fraud which required Alabama to show actual knowledge and intent to deceive, unlike the lesser burden existing under Utah Law.

The classic statement of Collateral Estoppel is set out in *Minneapolis Community Development Agency v. Buchanan*, 268 F.3d 562, 569 (C.A. 8 2001). "A question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit by the same parties or their privies." The first element identity of parties is satisfied. AstraZeneca does business in both Alabama and Utah. Indeed the evidence will show that the pricing of drugs is a national concern and that AstraZeneca's actions were identical with respect to Utah and Alabama.

The second element is satisfied because there was a final judgment on the merits of the fraud allegations in the Alabama trial. Alabama proved knowledge and intent to deceive. Utah

4

must merely prove reckless disregard for the truth and no intent to deceive. Thus, the judgment demonstrates more than Utah is required to prove. There is no question but that the jury verdict and the judgment are regular in form and were derived from the usual and proper course of the Alabama Courts.

The final element of estoppel is satisfied because AstraZeneca was given a full and fair opportunity to be heard on the issue of common law fraud. Again, there is no showing that the Courts of Alabama are incompetent to render justice. Accordingly, under the Full Faith and Credit clause of the Constitution, full accord should be given to the Alabama judgment. Having met the requirements for offensive collateral estoppel, judgment should be entered.

## THERE ARE NO QUESTIONS OF MATERIAL FACT

Roger Hyde, an employee of AstraZeneca testified at trial. His testimony was as follows: "Up until the last year or so manufacturers basically decided what the AWP would be. In other words, they recommended a spread over the WAC catalog price which resulted in the average wholesale price, AWP." Transcript page 346. Mr. Hyde also testified that the WAC price was not accurate.

> Q. Does AstraZeneca have a database that is called that is called its master price file?
>
> A. Yes, I believe we do. It's part of the operations group.
> Q. And would that price file database reflect your net prices for all of the—your NDCs that you manufacture, market and sell"
>
> A. It would reflect our WAC prices.

> Q. Your WAC? So it would reflect your list price without reflecting all of the discounts, rebates and other price incentives that you provide for those products?
>
> A. Yes that's correct.

Transcript Page 385.

Thus, if AWP is calculated off of the WAC price and the WAC price does not reflect discounts, rebates and other price incentives, the AWP price is incorrect and the State is overpaying for Medicaid drugs.

Further, there is evidence that AstraZeneca continued to manipulate the AWP of its drugs. Attached as Exhibit B is an affidavit of David Stallard, a C.P.A., and an Assistant Attorney General for the State of Utah. This list of drug prices contains the Average Manufacture Price and the Average Wholesale Price for AstraZeneca drugs in July 2006. The ratio between those numbers ranges from 125% to 439.7%. Certainly, there is more to AstraZeneca pricing than adding two to three percent for the wholesaler markup. The difference cannot be blamed on the wholesaler. If AstraZeneca were to be believed, AWP is an automatic calculation made by the wholesaler. AstraZeneca's testimony indicates that the State is cheated in two ways: First, AstraZeneca does not report an honest WAC; Second, the dishonest WAC is increased twenty five percent. This is what is shown when actual prices are disclosed. According to the affidavit of Mr. Stallard, Average Manufacture Price was not disclosed to the States until July, 2006. The State knows Average Wholesale Price because that is the price used for Medicaid reimbursement. The vast disparity between these prices is not an accident and

AstraZeneca is not innocent.

All that is required to be shown under the Utah law is that a party "caused to be made" a claim for medical benefits. The culpable mental state is acting "in reckless disregard for the truth." Here, the evidence indicates both that AstraZeneca knew that it was not reporting a true WAC and that AstraZeneca was reckless in pricing its drugs many multiples of true WAC and thus AWP. It is important that under the Utah law, it is irrelevant that AstraZeneca had no specific intent to defraud. What is important is that AstraZeneca manipulated both the WAC and the AWP to the detriment of Utah Medicaid.

## EVIDENCE INDICATES THAT ASTRAZENICA'S ACTIONS WERE RECKLESS

Evidence indicates that AstraZeneca has had prior experience in manipulating the price of its drugs. The Company pled guilty to manipulating the price of Zoladex in the United States District Court in the District of Delaware. (United States of America v. AstraZeneca Pharmaceuticals LP, No 03-55-JJF). In the Multi-District Litigation, this Court has tried a case against AstraZeneca under Massachusetts law and found the price of Zoladex to have been manipulated.

The State of Utah offers this evidence not to demonstrate collateral estoppel but to negate any argument that AstraZeneca was not reckless in its drug pricing. After its guilty plea, the company should have taken multiple precautions to guard against price manipulations. It is evident from the Alabama action, the testimony of AstraZeneca executives and the calculations of Mr. Stallard that this is not what happened. The applicable standard is "reckless." The State

of Utah meets that standard.

## CONCLUSION

Under the applicable Utah law, it is no defense to Medicaid liability that the offending company had no intent to defraud. It is no defense that AstraZeneca did not sell pharmaceuticals directly to pharmacies. The statute provides liability if an actor "causes to be made" a false claim. Here, AstraZeneca's representative admits that the company did not provide a true WAC. The evidence of Mr. Stallard indicates continuing manipulation in the prices relied upon by Utah Medicaid for reimbursement purposes. The Court however need not rely on this evidence. The Alabama Jury considered these allegations and found AstraZeneca liable for common law fraud. Those findings subsume the lesser requirements of Utah law. Accordingly, the Court should find that AstraZeneca is judicially estopped from further litigation of issues which have been fully and fairly litigated. The Court should enter Summary Judgment on liability and set the matter down for trial on damages.

DATED this 30th day of April, 2008.

_____
Kenneth D. Lougee