**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Master File No. 01-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*City of New York, et al.*<br>*v.*<br>*Abbott Laboratories, et al.* | |

## 30(b)(6) NOTICE OF DEPOSITION OF SCHERING CORPORATION

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition, by oral examination on the following date of defendant Schering Corporation ("Schering"), regarding the issues identified herein and the subject drugs of the litigation.  Defendant Schering shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  The deposition shall be taken before a notary public or other person authorized to administer oaths and shall be recorded by stenographic means.  The deposition will commence on March 10, 2008 at 9:30 a.m. at a location in the State of New Jersey to be agreed upon by plaintiffs and Schering, and will continue day to day until completed.

As used herein the term "subject drugs" refers to the drugs and NDCs listed in Revised Exhibit B to the First Amended Consolidated Complaint filed on June 8, 2007, with spreads of 30% or greater.  Pursuant to CMO 33, the time period covered by the topics identified in this Notice of Deposition is 1997 through 2005.  To the extent they are relevant, this notice



EXHIBIT
B

incorporates by reference the definitions and rules of construction delineated in Plaintiffs' First Request for Production of Documents to All Defendants dated October 18, 2007.

Schering shall designate a person or persons to testify under oath about the following topics:

1.      The reason(s) Schering signed Medicaid rebate agreements pursuant to 42 U.S.C. §1396r(a)(1).

2.      Schering's knowledge of the federal Medicaid program's laws, regulations, and rules including 42 C.F.R. 447.331 and 42 C.F.R. 447.301, specifically, Schering's knowledge that Medicaid reimbursements to providers are based on or derived from the prices published by pricing compendia such as First Databank.

3.      Schering's knowledge of the New York Medicaid program's laws, regulations, and rules including Schering's knowledge that the New York Medicaid program's reimbursement formula for prescription drugs uses the reported Average Wholesale Price ("AWP") and the Federal Upper Limit ("FUL").

4.      The customers who purchase the subject drugs from Schering, and the competitive environment in which the subject drugs were marketed and sold.

5.      The sales made to and prices charged to customers for the subject drugs pursuant to contracts with Schering.

6.      Chargebacks for the subject drugs, whether bundled or not, and the implementation of Schering's chargeback system.

7.      All rebates, discounts, free goods, administrative fees, and off-invoice allowances for the subject drugs, whether bundled or not.

8.      Who determines what Schering's customers pay for the subject drugs.

2

9.     How Schering determined what customers paid for subject drugs, including but not limited to the initial prices offered to prospective customers and the final net cost or price of the subject drugs to the purchaser.

10.    How Schering informed customers of price and price changes for the subject drugs, and who was involved in those communications.

11.    The rebates, discounts, incentives, fees or any other consideration of any kind offered to Schering's customers who purchase, dispense, or award formulary placement to the subject drugs.

12.    The net prices paid by Schering customers for direct or indirect purchases from Schering of the subject drugs.

13.    How Schering measures and records the profitability of the subject drugs sold by Schering.

14.    How Schering tracks sales and revenue for the subject drugs.

15.    Whether Schering calculates a net price for the subject drugs after taking into account any and all rebates, discounts, incentives, fees or other consideration paid by Schering, and if so, what the methodology is for such calculation.

16.    Schering's net revenue for the subject drugs as a percentage of Schering's reported prices.

17.    Schering's marketing and sales policies, strategies, and practices regarding the subject drugs.

18.    Who at Schering is/was responsible for developing marketing or sales policy and marketing or sales strategies regarding the subject drugs.

19.    The structure of Schering's marketing and sales force or department as it relates to the subject drugs.

20.    The training, marketing, promotional, informative and/or other sales materials supplied to Schering's sales force for the subject drugs.

21.    How Schering compensates its sales force for sales related to the subject drugs.

22.    Whether, and to what extent Schering ever considers/ed a customer's reimbursement for the subject drugs when marketing or selling the subject drugs.

23.    Whether Schering ever made reference, either orally or in writing, to published prices, reimbursement prices, reimbursement methodology, AWP, WAC or FUL for the subject drugs.

24.    The prices Schering reports for the subject drugs to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

25.    Who at Schering determines the prices reported to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

26.    How Schering determines what prices to report to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

27.    How the pricing compendia, use the prices Schering reports.

28.    Any communications between Schering and the publishing compendia, regarding how they use the prices reported by Schering.

29.    Communications between Schering and the publishing compendia.

30.    Schering's reasons for supplying pricing information to the publishing compendia.

4

31.     Whether Schering ever communicated to First DataBank, the Redbook, or Medispan that the AWP or WAC or WAC equivalent that Schering reported to these entities was not the price actually charged by wholesalers to providers or paid by wholesalers to Schering for the subject drugs and, if so, when such communications took place and of what they consisted.

32.     Whether Schering ever communicated to anyone in the New York Medicaid Program that the AWP, WAC or WAC equivalent that Schering reported to First DataBank, the Redbook, or Medispan was not a price actually charged by wholesalers to providers or paid by wholesalers to Schering for subject drugs and, if so, when such communications took place and of what they consisted.

33.     Any effort made by Schering to determine the formulary status or reimbursement status of the subject drugs.

34.     Any effort made by Schering to determine when the subject drugs were reimbursed based on FUL, or the level of any such FUL.

35.     Any effort made by Schering to determine which company's reported price(s) for the subject drugs were being used by CMS to set a FUL.

Dated:  February 11, 2008

                                        **KIRBY McINERNEY LLP**

                        By:        _____/s/_____
                                   Joanne M. Cicala, Esq.
                                   James P. Carroll Jr., Esq.
                                   Aaron D. Hovan, Esq.
                                   830 Third Avenue
                                   New York, New York 10022
                                   (212) 371-6600

                                   *On behalf of the Captioned Counties, other*
                                   *than the Counties of Nassau and Orange*

5

Ross B. Brooks, Esq.
**MILBERG WEISS LLP**
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Special Counsel for the County of Nassau*


Stanley J. Levy
Theresa A. Vitello
**LEVY PHILLIPS &**
**KONIGSBERG, LLP**
800 Third Ave. 13th Floor
New York, New York 10022
Telephone:  (212) 605-6200
Facsimile:  (212) 605-6290

*Counsel for the County of Orange*

6

## **CERTIFICATE OF SERVICE**

  I, James P Carroll Jr, hereby certify that I caused a true and correct copy of the foregoing Notice of Deposition, to be served on counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated:  February 11, 2008

                    /s/
                James P. Carroll Jr.

7