07-03-2007 1003 Tuesday.txt

```
                                                                1
1              UNITED STATES DISTRICT COURT

2               DISTRICT OF MASSACHUSETTS

3  ----------------------------------
   IN RE:                           :   Civil Action
4                                   :   No. 01-12257-PBS
   PHARMACEUTICAL INDUSTRY          :   Courtroom No. 19
5  AVERAGE WHOLESALE PRICE          :   1 Courthouse Way
   LITIGATION                       :   Boston, MA 02210
6                                   :   10:00 a.m., Tuesday
                                    :   July 3, 2007
7  ----------------------------------

8                      HEARING

9

10 Before:     THE HONORABLE PATTI B. SARIS,
               UNITED STATES DISTRICT JUDGE
11

12

13 APPEARANCES:

14 Hagens Berman Sobol Shapiro LLP, (by Steve W. Berman, Esq.)
      1301 5th Avenue, Seattle, WA 98101-1090,
15    on behalf of the Plaintiffs.

16 Hagens Berman Sobol Shapiro LLP,
      (by Edward Notargiacomo, Esq.),
17    One Main Street, Cambridge, MA 02142,
      on behalf of the Plaintiffs.
18
   The Haviland Law Firm, LLC, (by Donald E. Haviland, Esq.)
19    740 S. Third Street, Philadelphia, PA 91912,
      on behalf of the Plaintiffs.
20
   Hogan & Hartson, (by Steven J. Edwards, Esq. and Lyndon M.
21    Tretter, Esq.), 875 Third Ave., New York, NY 10022,
      on behalf of the Defendant Bristol-Myers Squibb.
22

23                  Marie L. Cloonan
                  Federal Court Reporter
24             1 Courthouse Way - Room 7200
                Boston, MA  02210- 617-439-7086
25         Mechanical Steno - Transcript by Computer


                                                                2

1  APPEARANCES CONTINUED:
2
   Dwyer & Collora, LLP, (by Thomas E. Dwyer, Jr., Esq.),
3     600 Atlantic Avenue, Boston, MA 02210-2211,
      on behalf of the Defendant Bristol-Myers Squibb.
4
   Kirkpatrick & Lockhart Preston Gates Ellis, LLP,
                     Page 1
```

EXHIBIT D

07-03-2007 1003 Tuesday.txt

9      THE COURT: I thought it was not a footnote.
10 I thought I went on and on about it. I think I went on
11 and on about everything. So, maybe I ought to look at
12 it again.
13      MR. BERMAN: I don't think you did --
14      THE COURT: I think I said that I rejected
15 plaintiffs' position that the per se liability for Class
16 1 and that I thought that the 30 percent speed limit
17 should apply to Class 1 as well. And, that would be, I
18 thought applicable to all of the defendants.
19      So, why is that not clear?
20      MR. BERMAN: Well, I didn't see that in the
21 order, your Honor.
22      THE COURT: They've got it.
23      MR. BERMAN: At the time we negotiated the --
24 via that settlement, both sides thought that was a risk
25 that could go either way. And, we discussed that with

10

1 the mediator. The mediator didn't think it was clear
2 either.
3      THE COURT: Well --
4      MR. BERMAN: It's clear now.
5      THE COURT: It's clear now. And, I will look
6 at it again. If it wasn't clear, it is clear. The 30
7 percent speed limit applies to Class 1.
8      I rejected a per se position. And, I have to
9 go look through it again, because I thought it was
10 clear. That's why I essentially had the expert go back
11 and calculate the damages again. Because, the way he
12 did it was he aggregated all the years when he did it
13 with the 30 percent speed limit. He didn't back out

Page 8

07-03-2007 1003 Tuesday.txt

14  the -- it might have been statute of limitations and on
15  the specific NDCs. That's why I needed a root
16  calculation.
17          Otherwise, I could have done it. Right? On
18  the per se. Because, he did it year by year.
19          MR. BERMAN: Correct, you could have, yeah.
20          THE COURT: I could have done that. I mean
21  ...
22          MR. BERMAN: But, we felt it was a different
23  issue with the consumers, because there's no evidence
24  that they had any knowledge of the so-called industry
25  norm of 20, 25 percent.

                                                        11

1           THE COURT: Well, I ruled to the contrary and
2   I don't accept that position. And, I thought it was
3   clear. If not, I'm making it clear now.
4           Now, I want to know what -- I'm ready, at this
5   point, to deal with Montana and Nevada and move them
6   back to their home states. I've waited because I
7   thought I would give someone the template so that
8   someone else wouldn't have to relive this entire piece
9   of it. And, the question only is, from my point of
10  view, whether or not you all want to talk to them about
11  -- before I ship it off -- whether it's worth using
12  Eric Green's expertise to try and settle it before I do
13  that or whether I should just send it.
14          MR. BERMAN: From our perspective, your Honor,
15  we are already in discussion with some of the
16  defendants. So, if you want to get Mr. Green involved,
17  the plaintiffs would not -- we think that's a good
18  idea.

Page 9

07-03-2007 1003 Tuesday.txt

19      THE COURT: I know I've only got one of you
20 here and not everybody. But, what do you think?
21      I mean, once I've got a template, does this
22 make sense? I know I've got this Medicaid and it's not
23 -- the TPPs and the Medicare statute. But, Mr. Green
24 knows so much about it right now that I'd hate to ship
25 it back to the MDL and have them ship it up to the

                                                                12

1  courts in Montana and Nevada.
2      Do you want to consult with everyone and see
3  what you want to do?
4      MR. EDWARDS: We could certainly do that, your
5  Honor. But, let me just make two observations.
6      The issues on the Medicaid cases are a little
7  bit different because you have the state actually
8  determining the reimbursement formula, paying the
9  reimbursement formula, and there's a real issue as to
10 state knowledge and state policy.
11     All of that being said, we're always happy to
12 talk to Mr. Green. Mr. Green has been very helpful.
13 And, I would anticipate that, you know, to the extent
14 that our adversaries in any case want to mediate, if
15 they would agree to use Mr. Green to mediate, we would,
16 too.
17     THE COURT: I think he's on vacation, or, at
18 least he said he was going on vacation when he called me
19 a week ago.
20     So, when do you anticipate -- I've got the
21 opinion, basically drafted, sending the case back. So,
22 the question really is: How long do you think before
23 you could talk to your colleagues?