**EXHIBIT 5**

Westlaw.

60 FR 8951-01                                                                                       Page 1
60 FR 8951-01, 1995 WL 61682 (F.R.)
**(Cite as: 60 FR 8951)**

RULES and REGULATIONS

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Health Care Financing Administration

42 CFR Part 410

[BPD-424-F]

RIN 0938-AE94

Medicare Program; Medicare Coverage of Prescription Drugs Used in
Immunosuppressive Therapy

Thursday, February 16, 1995

**\*8951** AGENCY: Health Care Financing Administration (HCFA), HHS.

ACTION: Final rule.

SUMMARY: This final rule amends the regulations to provide Medicare coverage for prescription drugs used in immunosuppressive therapy furnished to an individual who receives an organ transplant for which Medicare payment is made. This rule reflects the enactment of section 1861(s)(2)(J) of the Social Security Act that provides Medicare coverage for prescription drugs used in immunosuppressive therapy for a period of up to 1 year from the date of discharge from an inpatient hospital stay during which the Medicare-covered organ or tissue transplant was performed.

 This final rule also implements section 13565 of the Omnibus Budget Reconciliation Act of 1993 (Public Law 103-66) and section 160 of the Social Security Act Amendments of 1994 (Public Law 103-432) that, beginning January 1, 1995, expand Medicare coverage for prescription drugs used in immunosuppressive therapy from 1 year to a phased-in period of 3 years from the date of discharge from a hospital stay during which the Medicare-covered organ or tissue transplant was performed.

DATES: These regulations are effective January 1, 1995, the effective date of the statute.

FOR FURTHER INFORMATION CONTACT: Debra McKeldin, (410) 966-9671.

SUPPLEMENTARY INFORMATION:

I. Background

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

60 FR 8951-01                                                                                           Page 7
60 FR 8951-01, 1995 WL 61682 (F.R.)
**(Cite as: 60 FR 8951)**

Comment: One commenter concluded that our statement that commonly prescribed immunosuppressive drugs are available at substantial discounts from prices listed in the Red Book (an annual publication that lists drugs and their wholesale prices) is wrong because the drugs we listed (with the exception of prednisone) are sole source drugs and there is no competition to reduce the prices.

Response: Since publication of the proposed rule in January 1988, payment for Medicare Part B drugs was modified by the November 25, 1991 final rule for the fee schedule for physicians' services (56 FR 59502). Section 405.517 states that payment for drugs (other than those paid on a cost or prospective basis) is based on the lower of the estimated acquisition cost or the national **average wholesale price** of the drug. The estimated acquisition cost is determined by individual carrier surveys of actual invoice prices paid for the drug. If physicians or pharmacies receive price discounts, the reductions are reflected in their invoice costs.

Comment: One commenter objected to our statement in the preamble to the proposed rule (53 FR 1385) that mail service pharmacies "offer reduced prices that minimize beneficiaries' coinsurance liability," on the grounds that it amounted to a "commercial" on behalf of mail service pharmacies.

Response: Our intent was not to endorse one source of drugs over another, but to make the public aware of the alternative of mail service pharmacies.

Comment: One commenter expressed concern that ordering drugs through the mail eliminates patient-pharmacist contact.

Response: The absence of face-to-face contact is one of the many things a beneficiary would want to consider in deciding from whom he or she will obtain prescribed drugs.

Comment: One commenter suggested that we buy drugs from manufacturers and have them shipped directly to participating transplant centers.

Response: We lack the legal authority to do this. We administer the Medicare program at the national level as authorized by the law. We are not empowered to participate in the delivery of health care services.

Comment: One commenter asked that we update prices for immunosuppressive drugs.

Response: Medicare carriers use the Red Book or a similar publication that is updated periodically during the year for current prices.

Comment: One organization suggested that our payment policy cover not only the costs of drugs, but also pharmaceutical care services. The organization explained that in addition to traditional drug distribution services, contemporary pharmaceutical services include clinical functions that ensure the safe and effective use of drug therapy. Examples of these functions, which were characterized by the commenter as "pharmacy" services, are providing patient education, assessing patient compliance, and monitoring for therapeutic effectiveness and adverse effects.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

60 FR 8951-01                                                                    Page 8
60 FR 8951-01, 1995 WL 61682 (F.R.)
**(Cite as: 60 FR 8951)**

Response: Payment for functions furnished by pharmacists is included in the amount that Medicare pays for the drugs.

**\*8954** Comment: One commenter recommended that all payments, including those to hospital outpatient departments, should be made under Part B on a reasonable charge basis. The commenter maintained that payments based on costs do not allow the hospital to be paid a reasonable rate for pharmaceutical services and overhead and that many hospitals maintain separate inventory and purchasing practices for drugs used in the outpatient setting.

Response: The statute mandates that the outpatient department of a hospital be paid based on the lower of reasonable cost or customary charges as established in the following sections of the Act:

- Sections 1832(a)(2)(B) and 1861(s)(2)(J), which establish that drugs used in immunosuppressive therapy furnished in a provider are a covered medical service.

- Section 1833(a)(2)(B), which states that payment is based on the lesser of the reasonable cost of hospital outpatient department services as determined under section 1861(v), or the customary charges with respect to these services.

- Section 1861(u), which defines a provider of services to include a hospital.

- Section 1862(a)(14), which states, in part, that no payment may be made under Part A or Part B for any expenses incurred for items or services, other than for statutorily specified exceptions, that are furnished to an individual who is a patient of a hospital by an entity other than the hospital or under arrangements with the hospital. ("Patient" means inpatients and outpatients of a hospital.)

Therefore, if a patient is an outpatient of a hospital and receives prescription drugs from the hospital pharmacy, payment would have to be made to the hospital pharmacy according to the mandate of section 1833(a)(2)(B) of the Act. That section establishes that payment to any provider of services (in this case, the outpatient pharmacy department of a hospital) must be the lesser of the reasonable cost of these services, as determined under section 1861(v) (which includes recognition of both direct and indirect costs), or the customary charges with respect to these services.

Comment: One commenter suggested that we improve our communication with fiscal intermediaries, because some intermediaries are unaware that they should be paying for prescription drugs used in immunosuppressive therapy.

Response: We have taken steps to ensure that all contractors processing claims for prescription drugs used in immunosuppressive therapy are aware of current Medicare coverage and payment policies. We have not been informed of any specific problems in this area of program administration.

IV. Provisions of This Final Rule

The provisions of this final rule restate the provisions of the January 1988 proposed rule. The final rule differs from the proposed rule in that we have changed the term

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.