**EXHIBIT 9**

Page 1

UNITED STATES DISTRICT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------X

IN RE: PHARMACEUTICAL            ) MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE       ) CIVIL ACTION

PRICE LITIGATION                 ) 01-CV-12257-PBS

THIS DOCUMENT RELATES TO         )

U.S. ex rel. Ven-a-Care of       )

of the Florida Keys, Inc.        )

     v.                          ) No.06-CV-11337-PBS

ABBOTT LABORATORIES, INC.,       )

---------------------------X

(cross captions appear on following pages)

Deposition of HARRY LEO SULLIVAN

Volume I

Nashville, Tennessee

Tuesday, March 12, 2008

9:05 a.m.

0c585b6a-88d2-47d8-bc26-289a064ea87e

Sullivan, Harry Leo                                              March 12, 2008
Nashville, TN

Page 154

1  MAC.
2      For example, I might say, I'm not
3  paying for the tape that you use to hold the IV
4  needle into place.  I'm not paying for the IV
5  needle or the tube set.  I'm not going to -- I
6  don't want bills for that.  I know you've got to
7  do it to administer this drug.  So we're going to
8  add on the cost of this drug X, because I know
9  this, this and this always goes with it, and I
10 know there is a fixed cost for that, but I don't
11 want five bills.  I want 10 different places.
12 Bill me for the drug.  And I'll make sure that
13 the -- whatever the MAC is incorporates all your
14 other costs.  And you have to talk with providers
15 and know what that is.  I mean, you know.
16     Q.  So, in short, you would use the payment
17 for the drug itself to cross-subsidize other
18 things that might need to be paid to fairly --
19     A.  And that would include compounding.
20     Q.  And it may include nursing services
21 that were not included, things of that nature?
22     A.  (Nodding yes.)

Page 155

1      Q.  Did anyone in the federal government
2  ever tell you that you were not allowed to do
3  that?
4      A.  No.
5      Q.  And if they had told you that, what
6  would you have said?
7      A.  That I wasn't allowed to pay for
8  compounding or --
9      Q.  That you weren't allowed to use the
10 payment for the drug to cross-subsidize those
11 other services or supplies.
12     A.  If they had told me I couldn't do it,
13 what would I do?
14     Q.  Yes.
15     A.  I would have had to have found another
16 way to, to handle the billing.
17     Q.  But they never told you that.
18     A.  No.
19     Q.  Do you know if other states were doing
20 -- were adopting similar type strategies to run
21 the programs?
22     A.  No, I don't -- I mean it may be

Page 156

1  addressed in this letter.  I don't know.  It
2  seems to talk about different states, but I'm
3  sure there were varying levels of complexity in
4  the billing process, and what was and wasn't
5  billable and what was and wasn't included, but I
6  don't know it and I didn't discuss it with folks.
7      Q.  Have you heard the term cross-subsidy
8  or cross-subsidization in the context of pharmacy
9  reimbursement?
10     A.  No, not -- no, I haven't.
11     Q.  I'm going to show you another, another
12 -- going to mark that as another exhibit.
13         MR. TORBORG:  I think this is 578.
14         (Exhibit Abbott 578 marked.)
15 BY MR. TORBORG:
16     Q.  For the record, what we have marked as
17 Exhibit 578 bears the Bates numbers HHC 002-0400
18 through 407.  It's another Medicaid pharmacy
19 bulletin.  This one dated January-February of
20 1988.
21         Mr. Sullivan, if I could ask you to go
22 to Bates page ending in 402.  In particular the

Page 157

1  discussion on the first full paragraph about
2  Montana Medicaid.  Do you see that?
3      A.  Yes.
4      Q.  Where it says, Similarly, Montana
5  Medicaid compensates for the additional time and
6  expense of dispensing compounded drugs by
7  allowing the provider's usual and customary
8  charge up to 2.5 times the cost of ingredients,
9  paren, reimbursement for other outpatient drugs
10 is a lower of AWP minus 10 percent, or the cost
11 of the drug, end paren.  Do you see that?
12     A.  Yes.
13     Q.  Is that the, the type of thing that
14 Tennessee was doing?
15     A.  It's a different approach to -- yeah.
16 Make -- paying the provider for the, for the
17 compounding without -- and setting a limit on
18 what I will pay up to two and a half percent.
19 It's just a different, different twist.
20     Q.  Does it -- does this refresh your
21 recollection about any other types of approaches
22 like this that other states were using?

40 (Pages 154 to 157)