**EXHIBIT 13**

Myers & Stauffer LC (T. Allan Hansen)                             May 8, 2008
                            Overland Park, KS

                                                                      Page 1

                        COMMONWEALTH OF KENTUCKY

                     FRANKLIN CIRCUIT COURT - DIV I

                        CIVIL ACTION NO. 04-CI-1487

        ---------------------------------------X

        COMMONWEALTH OF KENTUCKY                )

        ex rel. JACK CONWAY, ATTORNEY GENERAL,  )

                 Plaintiff,                     )

                 vs.                            )

        ALPHARMA USPD, INC., et al.,            )

                 Defendants.                    )

        ---------------------------------------X


              (CAPTIONS CONTINUED ON FOLLOWING PAGE)


              VIDEOTAPED DEPOSITION OF T. ALLAN HANSEN,

        produced, sworn and examined on May 8, 2008, at

        the offices of Stinson Morrison Hecker LLP, 12

        Corporate Woods, 10975 Benson, Suite 550, Overland

        Park, Kansas 66210-2008, before William L.

        DeVries, a Certified Court Reporter, Certified

        Shorthand Reporter, Registered Diplomate Reporter,

        and Certified Realtime Reporter.

                    Henderson Legal Services, Inc.
        202-220-4158                    www.hendersonlegalservices.com

c92f78fa-195c-4b38-90e7-5c449cdb9873

```
                                    Page 298                                           Page 300
 1   rate and the dispensing fee, that the -- the       1       Q.  And Myers and Stauffer used the term
 2   relatively small amount that the -- the IV         2   "margin allowed on ingredient cost," correct?
 3   pharmacies drive up the average would be           3       A.  That's what it --
 4   immaterial to the IV pharmacies in the form of an  4       Q.  Why did you use that term "allowed"?
 5   increased dispensing fee, and yet it would         5       A.  Well, I don't know that there's a
 6   increase the dispensing fee for all other          6   specific semantic to the word allowed that I
 7   pharmacies on the basis of a service that they     7   would read into it, but it's on the basis of the
 8   did not provide.                                   8   margin that does exist on ingredient
 9          MR. TORBORG:  I think we need to change     9   reimbursement.
10   the tape.  Let's go off the record.  Thank you.   10       Q.  Did you have discussions with
11          VIDEOGRAPHER:  We are now going off the    11   pharmacists providing IV prescriptions about this
12   record at 5:36 p.m.                               12   topic of the margin making up for the
13          (WHEREIN, a recess was taken.)             13   insufficiency of dispensing fees?
14          VIDEOGRAPHER:  The time now is 5:38        14       A.  I don't recall if there were
15   p.m., and we are back on the record.  You may     15   discussions on that specific topic.
16   continue.                                         16       Q.  You may have had such discussions.  You
17       Q.  (By Mr. Torborg) Mr. Hansen, at this      17   just don't recall them as you sit here today; is
18   time the state dispensing fee for Kentucky was    18   that fair to say?
19   $4.75 as reflected in page six of your report; is 19       A.  I don't recall any specific discussions
20   that right?                                       20   on that subject with pharmacists that dispensed
21       A.  Yes.                                      21   IV prescriptions.
22       Q.  And that's quite a bit less than the      22       Q.  Do you recall discussions on this topic

                                    Page 299                                           Page 301
 1   $23.71 that you found to be the unweighted mean    1   with the Kentucky Medicaid department?
 2   cost of pharmacies dispensing IV prescriptions,    2       A.  It's my recollection that it's a topic
 3   correct?                                           3   that came up, but I don't recall the specifics of
 4       A.  Yes, it's less.                            4   any conversations.
 5       Q.  Substantially less.  Almost twenty         5       Q.  With whom do you recall having the
 6   dollars; is that right?                            6   discussions?
 7       A.  Yes.                                       7       A.  I don't specifically recall.
 8       Q.  If you read footnote ten at the end of     8       Q.  Do you general -- generally recall who
 9   this paragraph, could you read that into the       9   it was?
10   record?                                           10       A.  It would have been either Phil Kremer
11       A.  It reads, "Although typical dispensing    11   or Debbie Bahr, but I don't specifically recall a
12   fees reimburse less than the dispensing costs of  12   specific instance of that conversation.
13   I.V. pharmacies, they are generally able to break 13       Q.  Do you recall generally speaking what
14   even based on the margin allowed on ingredient    14   was conveyed in those discussions?
15   cost reimbursement."                              15       A.  The same material that's in the report.
16       Q.  Can you tell us what that means?          16       Q.  Now, in your report you would often
17       A.  It was our supposition that although      17   issue recommendations to DMS; is that right?
18   the dispensing fee that was received by a         18       A.  There were some recommendations.
19   pharmacy that dispensed IV prescriptions was less 19       Q.  Did you recommend an increase in the
20   than their cost of dispensing, that they were     20   dispensing fee for the dispensing of intravenous
21   covering their dispensing costs on the basis of   21   prescriptions in your report?
22   margins on ingredients.                           22       A.  I don't recall.
```

76 (Pages 298 to 301)

Myers & Stauffer LC (T. Allan Hansen)                          May 8, 2008
                           Overland Park, KS

Page 310

1    Q.  And what did you mean by the term
2   "subsidize"?
3    A.  That the net bottom line of total cost
4   to total reimbursement for IV pharmacies may have
5   been sufficient for them even though -- even --
6   despite the difference between dispensing costs
7   and dispensing fee.
8    Q.  And you used the term in there
9   "traditionally" in that sentence.  What did you
10  mean by that?
11   A.  I think we're just referring to the
12  fact that this is the way that -- that it has
13  been for at least a few years.
14   Q.  Did you have discussions with members
15  of Kentucky -- the Kentucky Department of
16  Medicaid Services about the notion that the
17  margins on ingredient portion of reimbursement
18  had been used to subsidize the difference between
19  dispensing costs and dispensing reimbursement?
20       MR. JOHNSTONE:  Objection, form.
21   A.  I've already stated that I believe that
22  there may have been discussions relative to IV

Page 311

1   prescriptions with DMS, but that I can't recall
2   the specifics of those conversations.
3    Q.  (By Mr. Torborg)  Then the last
4   sentence you wrote, "So long as the ingredient
5   reimbursement rate remains at AWP minus 12%, the
6   need for the Department to set a separate
7   dispensing fee for intravenous drugs is somewhat
8   mitigated by the margins realized on ingredient
9   reimbursement."  Did I read that right?
10   A.  Yes.
11   Q.  Can you tell us what you meant by that?
12   A.  Well, just to restate it another way,
13  that so long as ingredient reimbursement was AWP
14  minus twelve, they may not need to set a separate
15  dispensing fee for prescriptions for intravenous
16  drugs.
17   Q.  Would it be fair to say, Mr. Hansen,
18  that Kentucky did not establish an increase in
19  dispensing fee for intravenous prescriptions
20  because of the margin paid on the drug?
21       MR. JOHNSTONE:  Objection, form.
22   A.  I'm not sure what Kentucky Medicaid has

Page 312

1   done since 2003 regarding intravenous
2   prescriptions.
3    Q.  (By Mr. Torborg)  Well, at that time
4   what was your impression?
5    A.  I'm not sure what you mean by what was
6   my impression.  I didn't know what they were
7   going to do.
8    Q.  You had no idea what they were
9   thinking?
10   A.  No.
11   Q.  Would it be fair to assume that if the
12  margin were removed on the drug ingredient side
13  of intravenous prescriptions at this time and
14  earlier, something would have to be done to
15  increase the dispensing fee reimbursements?
16       MR. JOHNSTONE:  Objection, form.
17   A.  Well, if you read that sentence another
18  way, I think it is saying that there's the
19  possibility that the dispensing fee for
20  intravenous drugs needs to be considered if there
21  is a change in the ingredient reimbursement.
22   Q.  (By Mr. Torborg)  And you've had --

Page 313

1   you've had discussions with a number of
2   pharmacies who dispense IV prescriptions,
3   correct?
4    A.  Yes.
5    Q.  And from those discussions do you have
6   a view, Mr. Hansen, of whether or not a removal
7   of the margins on the ingredient side, but not
8   accompanied with increases in the dispensing fee
9   reimbursement, would be sufficient to ensure
10  access to care to those drugs?
11       MR. JOHNSTONE:  Objection, form,
12  foundation.
13   A.  None of my conversations led me to --
14  to be -- even want to begin to speculate on what
15  the threshold was for a pharmacy that provided
16  intravenous prescriptions to no longer accept
17  Medicaid reimbursement.
18   Q.  (By Mr. Torborg)  Would you at least
19  agree with me that it might -- that that removal
20  of the margin on ingredient side without an
21  increase on the dispensing fee side might raise
22  concerns about access -- might cause issues with