**EXHIBIT 14**

Page 604

                    UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -

IN RE:  PHARMACEUTICAL        ) MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE    ) CIVIL ACTION

PRICE LITIGATION              ) 01-CV-12257-PBS

THIS DOCUMENT RELATES TO      )

U.S. ex rel. Ven-a-Care of    ) Judge Patti B. Saris

the Florida Keys, Inc.        )

        v.                    ) Chief Magistrate

Abbott Laboratories, Inc.,    ) Judge Marianne B.

No. 06-CV-11337-PBS           ) Bowler

- - - - - - - - - - - - - - -

          (captions continue on following pages)




          Videotaped deposition of LARRY REED

                    Volume III



               Washington, D.C.

               Tuesday, March 18, 2008

               9:00 a.m.

8615aca3-c44e-4f74-a36a-79d28ca5988e

Reed, Larry - Vol. III                        March 18, 2008
                        Washington, DC

| Page 653 | Page 655 |
|---|---|

**Page 653**

1    A.  Yeah. I'm sorry. I don't see that.
2    Q.  Okay.  Let's start at the bottom of
3  your page and flipping over to the next page.
4  I'm going to read some lines into the record and
5  ask you to follow along.  Do you see where I'm
6  starting, "fair to say"?  Do you see that?
7    A.  At the bottom of page 154?  Yes.
8      MS. MARTINEZ:  I haven't found that.
9  I'm sorry.
10     THE WITNESS:  Flip to the previous
11  page.  He starts "fair to say" at the bottom of
12  the previous page.
13    Q.  I was asking Mr. Sullivan about how
14  Tennessee establishes dispensing fee of $3.91.
15  And the testimony was as follows.
16     "Question:  Fair to say that the
17  dispensing fee amount of $3.91 was not developed
18  through a study of actual dispensing costs?
19     "Answer:  Well, keep in mind you what -
20  - the Schondelmeyer study here is talking about
21  is talking about cost of dispensing.  That is not
22  the same thing as to the dispensing fee.

**Page 654**

1      "Question:  What's the difference?
2      "Answer:  Well, there shouldn't be -- I
3  should say shouldn't -- you shouldn't look at it
4  as being offset by a dispensing fee.  In other
5  words, if, whatever you said, $6.83 is the cost
6  to dispense, that doesn't mean that your
7  dispensing fee should be $6.83.
8      "Question:  Why not?
9      "Answer:  Because that's not the only
10  component to the, the reimbursement methodology,
11  that the provider is making a profit on.  So you
12  have to look at what discount off of the
13  ingredient cost went into the reimbursement as
14  well."
15     Were you able to follow that testimony?
16     MS. MARTINEZ:  Objection, form.
17    Q.  I know it's a little scrambled, but --
18     MS. MARTINEZ:  Objection, form.
19    A.  Without having the context of the
20  entire deposition I can't say that I follow that
21  logic completely.  But I see what you said in
22  that question and response, the questions and

**Page 655**

1  responses.
2    Q.  Did you know, Mr. Reed, that states
3  were looking at the profit made on the ingredient
4  side of the drug in determining what the
5  dispensing fee should be?  Were you aware of
6  that?
7      MR. WINGET-HERNANDEZ:  Objection, form.
8    A.  In our determination of dispensing fee,
9  we would look at the reasonableness of the
10  state's determination of the dispensing fee
11  alone.
12    Q.  Let me read my question and see if you
13  can answer the question I asked, which was, did
14  you know, Mr. Reed, that states were looking at
15  the profit made on the ingredient side of the
16  drug in determining what the dispensing fee
17  should be?
18     MR. WINGET-HERNANDEZ:  Objection, form.
19     MS. MARTINEZ:  Objection, form.
20    A.  And I'm not sure I can answer that
21  question.  What the states may or may not have
22  looked at, I don't know that we would have known

**Page 656**

1  or I would have known other than what we saw as
2  the end product, that a state plan amendment
3  would have a dispensing fee and/or an ingredient
4  cost determination that would be submitted to us.
5    Q.  So is it your testimony that you did
6  not become aware that states were considering the
7  profit made on the drug in determining what the
8  dispensing fee would be?
9      MS. MARTINEZ:  Objection, form.
10     MR. WINGET-HERNANDEZ:  Objection.
11    A.  I don't recall a state telling us that
12  we're going to set this dispensing fee at this
13  amount because we're overpaying on the ingredient
14  cost side.
15    Q.  Do you recall any discussions about
16  that general topic at all?
17    A.  There may have been discussions on that
18  point, but I don't recall them at this point.
19    Q.  If state pharmacy administrators that
20  you interacted with yourself, Mr. Reed, on a
21  regular basis were to come to trial and tell the
22  jury that Larry Reed could not credibly state

Henderson Legal Services, Inc.

202-220-4158                    www.hendersonlegalservices.com

8615aca3-c44e-4f74-a36a-79d28ca5988e

Reed, Larry - Vol. III                      March 18, 2008
                    Washington, DC

Page 665

1      MS. MARTINEZ:  I did.
2      A.  The question again, please.
3   BY MR. TORBORG:
4      Q.  Did you become that states were keeping
5   the dispensing fee below what the true cost of
6   dispensing was to make up for the fact that there
7   was some money being made on the ingredient side,
8   yes or no?
9      MS. MARTINEZ:  Objection, form.
10     A.  Is this during a certain time period?
11     Q.  From 1991 to 2003 did you become aware
12  of that?
13     A.  I don't recall.
14     Q.  You don't recall that discussion at all
15  ever coming up?
16     A.  I just don't recall.
17     Q.  It may be that it happened but you just
18  don't recall because it's been some time?
19     MR. WINGET-HERNANDEZ:  Objection, form.
20     A.  And again, I don't recall.
21     Q.  How about today?  Are you aware of it
22  at least today that some states are keeping the

Page 666

1   dispensing fee low because of profit being made
2   on the ingredient side?
3      MS. MARTINEZ:  Objection, form.
4      MR. WINGET-HERNANDEZ:  Objection, form.
5      A.  I am aware that in some cases the
6   dispensing fees are lower than the cost of
7   dispensing; that that cost of dispensing is
8   partially made up by the ingredient cost.  I'm
9   not saying that that is proper under the federal
10  regulations, but that may be a state's
11  perception.
12     Q.  And you know that's happening today,
13  right?
14     MR. WINGET-HERNANDEZ:  Objection to
15  form.
16     MS. MARTINEZ:  Objection, form.
17     A.  I'm aware that there is some discussion
18  of that.
19     Q.  Let's go back to 1993, what the public
20  records show us.  In particular Abbott Exhibit
21  458.
22     MR. WINGET-HERNANDEZ:  Objection, form.

Page 667

1      MS. MARTINEZ:  What exhibit are you
2   looking at?
3      MR. TORBORG: 458.
4   BY MR. TORBORG:
5      Q.  For the record, Abbott Exhibit 458 is
6   titled "Medicaid, outpatient drug costs and
7   reimbursements for selected pharmacies in
8   Illinois and Maryland."  Mr. Reed, if you would
9   take a look at that to the extent necessary to
10  let me know if you recall this report.
11     A.  (Reading.) I don't recall this report.
12     Q.  Mr. Reed, was it your practice to
13  review -- let me strike that and start over.
14     You started on the Medicaid side of
15  pharmacy issues in roughly 1990; is that right?
16     A.  That's correct.  The latter part of --
17  the mid part to latter part of 1990.
18     Q.  And I believe you testified last time
19  that you had a practice of reviewing OIG and GAO
20  reports that related to Medicaid pharmacy issues;
21  is that fair to say?
22     MS. MARTINEZ:  Object to form.

Page 668

1      A.  As a general practice I would review
2   those reports.
3      Q.  And does this report appear to relate
4   to Medicaid pharmacy issues?
5      A.  It does.
6      Q.  So regardless of whether or not you
7   recall reviewing this report here today, it would
8   have been your pattern and practice to review
9   such reports as Exhibit 458 at that time in 1993;
10  is that fair to say?
11     A.  In general, I would have looked at the
12  reports, again, on Medicaid pharmacy
13  reimbursement.
14     Q.  I'd like to ask you to go to the third
15  page of the exhibit.  It's a March 18th 1993
16  letter from GAO to various congressmen.  Go down
17  to the last paragraph on the page.  It indicates
18  "We compared drug purchase costs and Medicaid
19  reimbursements in two states, Illinois and
20  Maryland.  We selected these states because each
21  uses one of two basic formulas used by states to
22  reimburse pharmacies' drug purchase costs and

17 (Pages 665 to 668)

8615aca3-c44e-4f74-a36a-79d28ca5988e

Reed, Larry - Vol. III                      March 18, 2008
                        Washington, DC

Page 689

1  Would you be surprised if you made that statement
2  in that period of time?
3        MS. MARTINEZ:  Objection, form.
4        A.  Again, I don't recall making that
5  statement.  It's possible that -- would the
6  statement be completely outside my realm of
7  experience?  Probably not.
8        Q.  Mr. Reed, in this lawsuit do you
9  believe the government should be able to recover
10  those amounts that state Medicaid programs had to
11  use from the ingredient side for reimbursements
12  to cover insufficient dispensing fees?
13        MS. MARTINEZ:  Objection, form.
14        A.  Give me that sentence again, please.
15        Q.  Mr. Reed, in this lawsuit do you
16  believe that the federal government should be
17  able to recover those amounts that state Medicaid
18  programs deliberately used from the ingredient
19  side for reimbursements to cover insufficient
20  dispensing fees?
21        MS. MARTINEZ:  Objection, form.
22        A.  If the state had an approved state plan

Page 690

1  for that ingredient cost or that dispensing fee,
2  then those would be considered proper payments.
3        Q.  If a state deliberately paid a profit
4  on the ingredient side to subsidize insufficient
5  dispensing fees, do you believe the government
6  should be able to recover that amount?
7        MS. MARTINEZ:  Objection, form.
8        A.  And I don't think I can answer that
9  question any further than I did.  If the state
10  were to present to us an overpayment of the
11  ingredient cost to make up for an underpayment of
12  a dispensing fee, we would probably disapprove
13  that plan.
14        Q.  If it was done in writing?
15        A.  If it was done as part of the state
16  plan amendment process or if the state were to
17  ask us can we overpay on the ingredient cost to
18  make up for a deficit in dispensing, we would
19  probably have responded no.
20        Q.  But you knew that they were doing that,
21  didn't you?
22        MS. MARTINEZ:  Objection, form.

Page 691

1        A.  Again, I think that we've talked a
2  little bit about that.  I don't recall earlier
3  periods of time.  But most recently I was aware
4  that their dispensing fees may have been lower
5  than the cost of dispensing and there may have
6  been some profit in ingredient cost.
7        Q.  And that's not something that a state
8  is providing to you in writing, correct, so that
9  you could disapprove that, today?
10        A.  I don't remember a plan amendment that
11  came in that would have said that.
12        MR. TORBORG:  Why don't we take our
13  first break.
14        THE VIDEOGRAPHER:  This is the end of
15  tape 1.  Off the record at 10:36.
16        (Recess.)
17        THE VIDEOGRAPHER:  This is the
18  beginning of tape 2 in the deposition of Mr.
19  Reed.  On the record at 10:51.
20  BY MR. TORBORG:
21        Q.  Mr. Reed, would it be fair to say that
22  you can't tell me one way or the other whether

Page 692

1  you knew in 1993 that state Medicaid programs
2  were using excess payments of ingredient costs to
3  subsidize insufficient dispensing fees?
4        A.  It would fair to say that.  I don't
5  recall that memory.
6        Q.  You don't recall one way or the other
7  whether or not you had that knowledge?
8        A.  I don't recall.  That's correct.  I
9  don't recall.
10        Q.  And it's been 15 years since 1993,
11  correct?
12        A.  Correct.
13        Q.  Your memory has faded over time, I take
14  it?
15        A.  Yeah.
16        Q.  Would you agree that someone within
17  HCFA was aware that state Medicaid programs were
18  using excess payments on the ingredient side to
19  subsidize insufficient dispensing fees?
20        MS. MARTINEZ:  Objection, form.
21        A.  From the GAO report that you were
22  showing me, a HCFA official did make that

23 (Pages 689 to 692)

8615aca3-c44e-4f74-a36a-79d28ca5988e