UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) **THIS DOCUMENT RELATES TO:** *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* Civil Action No. 06-11337-PBS ) ) ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS Hon. Patti Saris |

**UNITED STATES' OPPOSITION TO ABBOTT'S MOTION TO ENFORCE THE FEBRUARY 16, 2007 PROTECTIVE ORDER AND FOR ORDER COMPELLING PLAINTIFF TO RETURN INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS**

The United States hereby submits its Opposition To Abbott's Motion To Enforce The February 16, 2007 Protective Order And For Order Compelling Plaintiff To Return Inadvertently Produced Privileged Documents[1] (D.E. 5276)("Motion"). In support thereof, the United States incorporates the following Memorandum of Law:

**FACTUAL BACKGROUND REGARDING
ALBRECHT 1991 MEMO AND ITS DISCLOSURE**

The purportedly privileged documents in question (ABT DOJ Doc Nos. 0326756 and 0326772) (hereinafter "Albrecht 1991 Memo") are copies of the same memorandum dated February 27, 1991 from Abbott in-house attorney James L. Albrecht to Mark Gorman and Kathy Riddle, Abbott Contract Marketing employees. As Abbott admits, the Albrecht 1991 Memo was

---

[1] In an abundance of caution to protect against the disclosure of the Memo's content prior to this Court's ruling, the United States is filing under seal for this Court's *in camera* review copies of the Albrecht 1991 Memo that Abbott requests this Court order the United States to return (Sealed Exhibit "A"), together with an unredacted copy of this Opposition, wherein the United States includes its argument concerning the relevance of the Memo based upon its content (Sealed Exhibit "B"). Sealed Exhibit "A" also includes ABT DOJ Doc. No. 326759 (hereinafter "Albrecht 1991 Cover Fax"). This Court's *in camera* review of the content of the Albrecht 1991 Memo and 1991 Cover Fax is important to its consideration of Abbott's privilege claim and the United States' waiver assertions.

authored by an Abbott Senior Attorney in the General Counsel's Office, and includes advice concerning an Abbott Hospital Products Division ("HPD") Home Infusion marketing agreement.[2] (Motion at p. 13). Abbott produced the Albrecht 1991 Memo with other documents concerning Abbott's relationship with an entity called H&F Marketing (ABT DOJ Doc. Nos. 326736 through 326790) (hereinafter "H&F Contract File"). A copy of the H&F Contract File (excluding the two copies of the Albrecht 1991 Memo and 1991 Cover Fax) is attached hereto as Exhibit "C".

The Albrecht 1991 Cover Fax is a document from the H&F Contract File that Abbott notified the United States on May 28, 2008 that it was also "snapping back" after the Government, as a courtesy, advised Abbott of its intent to use that document, among others, in support of its Opposition. The United States objects to Abbott's attempt to do so for the same reasons it objects to Abbott's Motion seeking an order to compel the return of the Albrecht 1991 Memo.

In filing its Motion, Abbott failed to provide copies of the subject Albrecht 1991 Memo to the Court, even though the contents of the document are important to this Court's determination of Abbott's privilege assertion. Abbott's Motion does not explain where the documents in question were maintained. According to Abbott's production log, copies of the Albrecht 1991 Memo were made a part of the general H&F Contract File and preserved as home infusion documents in Abbott's general file room "HPD 947 Corporate Records" location, and not in the General Counsel's Office. (*See* Exhibit "D", Abbott's Source Log). Providing no

---

[2] Abbott's instant Motion has brought this issue to the forefront. Subject to further inquiry and evaluation of the final voluminous privilege log produced by Abbott on May 19, 2008, the United States reserves all rights to raise the above waiver argument, and/or the application of the crime fraud exception in other motions.

information about the historic treatment of this document, Exhibit A to Abbott's Motion, the affidavit of Abbott's counsel ("Dahl Aff.") explains that only a minimal first-tier review was conducted to protect against its inadvertent disclosure by a junior Jones Day or contract attorney. (Dahl Aff. ¶ 6).

Despite the first-tier review, *two* separate copies of the Memo were not flagged for a second-tier legal review, and both were produced without any further inquiry by Abbott in November of 2007. (Dahl Aff. at ¶¶ 7-10). Abbott is silent as to whether prior to production it performed a simple electronic search for counsel or attorney indicia to prevent against inadvertent disclosure.

More than four months after production, Jones Day learned of the purported inadvertent production of the Albrecht 1991 Memo when the undersigned counsel attempted to mark it as Exhibit "17" to the David Fishman Deposition,[3] in order to ask Mr. Fishman questions concerning the advice set forth in the document. Abbott makes much of the fact that it was "snapped back" at the deposition and that the undersigned handed the copies back to Abbott counsel. The United States' provision of its copies of the Memo to Abbott counsel at the deposition was a courtesy and in no way was a waiver of its right to object to Abbott's attempt to assert inadvertent production once Abbott finally provided its required *written* notice of its intent to do so and its assertion of privilege[4] on April 8, 2008. (*See* Motion Exh. "F"). The critical

---

[3]David Fishman, an in-house Abbott Senior Attorney, was designated by Abbott as its Rule 30(b)(6) representative to testify concerning Abbott's compliance with Medicare and Medicaid fraud and abuse laws and regulations.

[4]After learning of Abbott's intent to seek to compel the return of the documents, the United States and the Relator immediately undertook the laborious task of searching for and collecting each hard copy and deleting all electronic copies. The only copies of the Albrecht 1991 Memo retained by the Government are in a sealed envelope in Government counsel's office as set forth by the Protective Order. Relator did not retain any copies.

question, for which Abbott offers no explanation, is why Abbott itself *never* discovered the inadvertent disclosure given how easy it was to locate through a routine electronic search, as the Government learned in conducting a routine electronic search of Abbott's production using Mr. Fishman's name and job title in preparation for his deposition.

It is pertinent that *every* page of the H&F Contract File produced by Abbott, including the two copies of the Albrecht 1991 Memo (Sealed Exhibit "A"), was designated "confidential" by Abbott. This Court's Protective Order makes clear that when asserting documents are confidential, a party to this action must act in good faith in so designating (Protective Order ¶¶ 3, 15)[5]. Presumably, Abbott carefully reviewed this document before designating it as confidential.

## ARGUMENT

I.  ABBOTT HAS WAIVED THE ATTORNEY-CLIENT PRIVILEGE PERTAINING TO ITS MEDICARE AND MEDICAID COMPLIANCE EFFORTS

   a.  *Abbott's Subject Matter Waiver Of The Privilege Through Its Selective Disclosure of Attorney Advice*

Abbott is not a stranger to this issue presented here. In *Abbott Laboratories v. Baxter Travenol Laboratories, Inc.*, 676 F. Supp. 831, 832 (N.D. Ill. 1987), Abbott selectively and voluntarily produced three documents reflecting advantageous opinions of its counsel, but withheld other attorney-client documents and opinions on the same subject matter. The district court ordered the production of the withheld documents, reiterating a party " 'cannot remove the seal of secrecy from so much of the privileged communications as makes for his advantage and

---

[5]In its Motion, Abbott references the fact that other privileged documents have been returned by the United States. In returning those documents in April 2008, the United States did not agree with Abbott's privilege assertions and reserved all rights to seek the production at a later point.

4

insist it shall not be removed' " to the disadvantage of his party opponent. *Id*. (quoting *Western Unition Tel. Co. v. Baltimore & Ohio Tel. Co.*, 26 F. 55, 57 (C.C.S D.N.Y. 1885).

By its conduct in this case, Abbott has waived the attorney client privilege pertaining to its Medicare and Medicaid compliance efforts. There is no dispute that the Albrecht 1991 Memo provides advice to Contract Marketing employees concerning a Home Infusion contract. (Motion at pp. 10-11). This advice, even if it was privileged at one time, has lost its privileged character. Abbott had already selectively produced attorney-prepared materials describing documents, in-house legal training and consultations, and allowed its employees to testify on these topics in attempting to demonstrate its Medicare and Medicaid compliance initiatives. Abbott also disseminated some of this material to its customers.

The United States sought the 30(b)(6) deposition testimony of the person most knowledgeable of Abbott's compliance efforts. Its representative, David Fishman, an in-house Senior Attorney, extensively testified that consultation with in-house counsel was the basis for Abbott's understanding that its HPD employees were complying with Medicare and Medicaid statutes, regulations and guidance. Mr. Fishman's testimony highlighted Abbott's in-house counsel's presentations to Abbott employees. (Exhibit "E" hereto, Fishman 30(b)(6) 3/12/08 Dep. at 225:13-16; 226:1-22; 227:1-11); Fishman 30(b)(6) 3/20/08 Dep. at 435:8-22; 436:1-12; 470:19-22; 471:1-5).[6] His testimony similarly emphasized counsel's availability to instruct and answer questions for HPD. *Id.*

---

[6] Mr. Fishman further stated that the conclusion as to whether HPD's business practices violated the False Claims Act would not have been performed by an Abbott business person, but rather would have been done as legal analysis by the General Counsel's Office. (Exhibit "E" hereto, Fishman 30(b)(6) 3/12/08 Dep. at 306:7-22; 307:1-10; 308-315; 316:1-4).

To bolster its defenses concerning Abbott's compliance initiatives, on the days before its Rule 30(b)(6) depositions on the subject of compliance, Abbott produced to the United States in excess of 30 presentations and documents created and/or reviewed by Abbott's General Counsel's Office.  Mr. Fishman's testimony explains, in part, that these voluminous presentations and communications evidence Abbott's compliance with Medicare and Medicaid, and its compliance training initiatives.  (See Exhibit "E" Fishman 30(b)(6) 3/12/08 Dep. 14:7-22: 15-24; 25:1-22; 225-227; 306-308; Fishman 30(b)(6) 3/20/08 Dep. at 371:11-22; 372; 373:3-22; 374:4-22; 375-384; 435-436); Composite Exhibit "F" hereto, collectively Fishman 30(b)(6) 3/20/08 Dep. Exhs. 1, 8, 9, & 10, in pertinent subparts).[7]  Abbott selectively produced only certain in-house counsel communications and training to aid in Mr. Fishman's testimony, while withholding other documents. (*See e.g.*, Sealed Exh. A)

Moreover, for the operative period of this case from 1991 until the end of 2000, Abbott's General Counsel wore two hats simultaneously -- first as General Counsel and second as the Compliance Officer responsible for ensuring compliance.  (Exhibit "E" hereto, Fishman 30(b)(6) 3/12/08 Dep. 205:7-13 & 208:12-19 & Fishman Dep. Exh. 1, Sub. 23 (select pages) ("Code of Business Conduct").  Abbott has the burden of showing that the compliance advice offered by its in-house lawyers was not being offered by an in-house lawyer wearing the Compliance Officer hat.  *See United States ex rel Parikh v. Premera Blue Cross*, 2006 WL 3733783, *5 (W.D. Wash., Dec. 15, 2006)(because in-house counsel may play a dual role of legal advisor and business advisor, the privilege will apply only if the communications primary purpose is to gain or provide legal assistance); *see also*, *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)(party

---

[7] These presentations and communications are too voluminous to attach as Exhibits hereto in their entirety, so Composite Exhibit "F" hereto attaches separately samples of only the initial pages of some of the documents.

6

asserting attorney-client privilege must make a clear showing that in-house counsel was acting in a "professional legal capacity").

In an effort to discover the basis for its compliance testimony, at the Fishman Deposition, counsel for the Government marked the Albrecht 1991 Memo as an exhibit to enable questioning of Abbott about early compliance instructions for its Home Infusion business unit.  During the four month span in between Abbott's production of the Memo in November of 2007 until the March 2008 deposition, Abbott never indicated that the Albrecht 1991 Memo was different from any of the other General Counsel generated compliance documents that it selectively chose to disclose.  However, once counsel for the Government attempted to use it delve into an arguably thorny compliance area for Abbott, it was "snapped back" by Abbott at the deposition.

 By invoking the snap-back process at the deposition, Abbott was able to prevent the United States from discovering information that may be problematic for Abbott.   Because of Abbott's conduct in seeking to shield it, the United States was prejudiced by its inability to pursue a line of questioning related to the Albrecht 1991 Memo.  At the same time, however, Mr. Fishman was referring to similar attorney-prepared documents to tout Abbott's compliance, drawing from the 30-plus attorney-prepared documents that Abbott produced the days of, or the days before, his two days of depositions.

Moreover, Abbott has historically selectively disclosed attorney advice and counsel generated documents to its advantage in its public dealings with clients.  Dating as far back as 1990, when customers raised questions about the legality of the Home Infusion business model, Abbott would advise those customers that its own legal advisors had reviewed and approved the model, and provided selective, advantageous information about that legal advice. (*See* Exhibit "E" hereto, Fishman 30(b)(6) Dep. Exhs. 13, 14, 15, 16, 18 & 19; Exhibit "G" hereto, Baker

1/18/08 Dep. Exh. 30).  Abbott, in its public course of dealings, used the selective in-house and outside counsel's advice to its advantage to assuage client concerns about whether its Home Infusion business model complied with Medicare and/or Medicaid statutes, regulations and guidance.  Some of these documents were also used at the Fishman deposition, and at the Rule 30(b)(1) deposition of an Alternate Site and HPD senior manager, Peter Baker.  (*See* Exhibit "E" hereto; Exhibit "G" hereto, Baker 1/18/08 Dep. Exh. "30").

The controlling authority rejects exactly the type of privilege gamesmanship that Abbott is attempting here.  *See In Re Keeper of Records, XYZ Corp.*, 348 F.3d 16, 24 (1st Cir. 2003)*; In re PolyMedica Corp. Securities Litigation*, 235 F.R.D. 28, 32 (D. Mass. 2006); *Rivera v. Kmart*, 190 F.R.D. 298, 304 (D. P.R. 2000); *see also*, *United States v. Nobles*, 422 U.S. 225, 239 (1975); *Hunt v. Blackburn*, 128 U.S. 464, 470-71 (1888).   As the First Circuit articulated in *In Re Keeper of Records, XYZ Corp.*, "[i]mplying a subject matter waiver. . . ensures fairness because it disables litigants from using attorney-client privilege as both a sword and a shield.  Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth seeking process." *In Re Keeper of Records, XYZ Corp.*, 348 F.3d at 24.

Having both provided to the Government select, but voluminous, in-house counsel presentations and written advice to evidence its compliance with Medicare and Medicaid statutes, regulations and guidance, and separately provided glimpses of its attorney's advice to publicly assure its Home Infusion consignment partners' concerns of its Medicare and Medicaid compliance, Abbott has waived any privilege over all Medicare and Medicaid in-house counsel advice on this subject matter.  *See In re AT&T Access Charge Litigation*, 451 F. Supp.2d 651, 655-56 (D. N.J. 2006)(party cannot disclose only select attorney-client information for a self-

8

serving purpose); *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981); *see Sax v. Sax*, 136 F.R.D. 542, 543-44 (D. Mass. 1991)(D. Mass. 1991); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)(it is manifestly unfair to allow a party to place privileged information at issue in a case through some affirmative act for its own benefit and then allow the party to protect against disclosure); *Starsight Telecast, Inc v. Gemstar Devl. Corp.,* 158 F.R.D. 650, 653 (N.D. Calf. 1994); *Nye v. Sage Products, Inc*., 98 F.R.D. 452, 454 (N.D. Ill. 1982)(selective production of some privileged documents waives subject matter as to other such attorney communications to avoid prejudice to other party).  On their face, the Albrecht 1991 Memo and the 1991 Cover Fax are among the documents that fall within the subject matter waiver. (*See* discussion below).  Abbott, as the party asserting the privilege, has failed to meet its burden in demonstrating that any privilege claimed concerning the Albrecht 1991 Memo and 1991 Cover Fax was not waived through a subject matter waiver as outlined herein.

    b. *Abbott's Employees Relied Upon Attorney Advice To Ensure Compliance With Medicare And Medicaid Statutes, Regulations And Guidance In Abbott's Home Infusion Operations*

Abbott Home Infusion was a unique pharmaceutical business model, unlike any other in AWP litigation because Abbott directly billed Medicaid and Medicare.  Abbott's H&F Contract is one of many contracts generated by Abbott's HPD Home Infusion business unit that grossed tens of millions of dollars annually.  (Exhibit "H" hereto, Sellers 3/31/08 30(b)(6) Dep. 479:16-22; 480:1-9).  If, as alleged in the Amended Complaint, that Home Infusion business model contravened federal and/or state law, the United States would be *severely* prejudiced if Abbott continues to shield the production of the highly-relevant Albrecht 1991 Memo, or other pertinent advice-of-counsel documents relating to that operation.

If Abbott intends to put on witnesses at trial to testify that these contracts (including the H&F Contract) complied with Medicare and Medicaid, the United States is entitled to explore with those witnesses the bases for their testimony. The Reimbursement Director and Reimbursement Compliance Specialist for the Home Infusion business unit for most of the operative period of this case, Virginia Tobiason, testified that she relied upon and exclusively deferred to in-house counsel's advice to inform her compliance decisions. (Exhibit "I", Tobiason 1/22/08 Dep. 692:9-22; 693-699; 768:1-22; 769-771; 772:1-4).

Like Ms. Tobiason, nearly all of the pertinent senior to mid-level managers of the HPD and Home Infusion business unit were asked at deposition how they knew that Abbott's Home Infusion arrangements complied with federal and state laws and regulations. In answering, each similarly deferred to advice from Abbott's in-house legal counsel, or Ms. Tobiason, as their source for their understanding that the HPD and the Home Infusion operations complied with Medicare and Medicaid statutes, regulations and guidance. *See, e.g.* Peter Baker 2/28/08 Dep. 360:10-22; 361-362: 363:1-13; 440:4-20; 443:2-22; 444:1-5; 515:11-22; 516:1-22; 517:1-5); David E. Brincks Dep. 69:13-25; 70:1-22; Donald Robertson 9/13/07 Dep. 130:11-25; 131:1-16; 137:11-25; 138:1-6; Donald Robertson 10/9/07 Dep. 344:9-25; 345:1-16; Lynn E. Leone 1/17/08 Dep. 132:17-22; 133-136; 137:1-8; 245:5-22; 246:1-18; Karla Kreklow 2/7/08 Dep. 101:7-22; 102-115: 116:1-15; Sellers 11/1/07 30(b)(1) Dep. 173:1-22; 174-175; 176:1-22). Excerpts of their select testimony are attached hereto as Composite Exhibit "J".

In their testimony, Abbott's employees cloak their compliance efforts with the appearance of an attorney-sanctioned seal of approval.[8] Especially if Abbott intends to offer or

---

[8] Abbott's Rule 30(b)(6) representative confirmed that its Home Infusion employee should have deferred to the General Counsel's Office – the apparent pre-2001 epicenter for compliance. Mr. Fishman testified that if an HPD employee had any question or concern about

10

rely upon witness testimony that is consistent with its Home Infusion managers' deposition testimony, the Government is prejudiced by its inability to examine Abbott's counsel's related compliance advice. The Government has no other way to seek Abbott's Medicare and Medicaid compliance information to test such testimony or evaluate the accuracy of its underpinnings, without discovering *all*, not just Abbott-selected, pertinent documents reflecting compliance information and advice.

    c.    *Abbott Has Refused To State Whether It Will Rely Upon An Advice Of Counsel Defense*

On April 1, 2008, Abbott answered the United States' Amended Complaint asserting as its Tenth affirmative defense that it "has complied with all applicable regulations of the federal and state governments." (*See* Abbott Answer, D.E. 5188, at p. 37). Abbott also asserts as its Seventh affirmative defense that it acted in good faith. *Id.* Despite these affirmative defenses, Abbott has repeatedly refused to disclose to the United States whether Abbott will rely upon an advice-of-counsel defense in this case. Notwithstanding this refusal, Abbott's employees' Rule 30(b)(1) testimony, its Rule 30(b)(6) representatives' testimony, and its affirmative defenses reflect that its General Counsel's advice is integral to Abbott's explanation of how it contends it complied with Medicare and Medicaid fraud and abuse statutes and regulations.

In its Third Request for Admission, the United States sought an admission from Abbott that it did not intend to rely upon advice of counsel in defending this action. (Exhibit "K" hereto, Request 10 & Objection). Refusing to answer, Abbott objected, in part, on the grounds the

---

pricing compliance activities, "[*t*]*hey should not have gone to any source other than Legal*." (Exhibit "E" hereto, Fishman 30(b)(6) 3/12/08 Dep. at 312:4-22; 315:20-22; 316:1-4)(emphasis supplied)

matter was premature and should be reserved for the pretrial order stage. By not simply stating its position, Abbott is prejudicing the United States by preventing it from discovering the bases of an advice-of-counsel defense that it may to be holding back until near the time of trial. Even if not precisely pled as an actual affirmative defense, a party's reliance upon counsel's advice can waive privilege over the subject matter of that advice if it is put directly in issue, independent of other subject matter waivers. *See United States v. Kinsella,* — F. Supp.2d —, 2008 WL 963022, at *7 (D. Me., Apr. 8, 2008).

II.  THE RELEVANCE OF THE ALBRECHT 1991 MEMO AND 1991 COVER FAX TO ABBOTT'S COMPLIANCE DEFENSE IS REFLECTED ON THE FACE OF THE DOCUMENTS

**REDACTED SECTION II -
FILED UNDER SEAL DUE TO CONTENT[9]**

---

[9]Redacted

**REDACTED SECTION II -**
**FILED UNDER SEAL DUE TO CONTENT**[10]

---

[10]Redacted

**REDACTED SECTION II -
FILED UNDER SEAL DUE TO CONTENT**

.

III.   **ABBOTT'S PRODUCTIONS OF THE ALBRECHT 1991 MEMO AND 1991 COVER FAX WERE NOT INADVERTENT**

Abbott seeks an order from this Court compelling the United States to return privileged documents that it claims are protected by the attorney-client communication privilege. "Although the attorney-client privilege is well established, it is narrowly construed because any expansion of the privilege hinders the Court in its search for truth." *Cavallaro v. United States*, 153 F. Supp.2d 52, 57 (D. Mass. 2001)(J. Saris).   Where, as here, the parties have a stipulated Protective Order regarding the inadvertent production of attorney-client privileged material, the Court makes a two-prong evaluation of the disclosure.  The Court evaluates: a) the correct legal standard for the term "inadvertent production" under the order; and, b) whether the materials disclosed were truly inadvertent under the standard." *VLT, Inc. v. Lucent Techn., Inc.*, 2003 WL 151399, at *2 (D. Mass., Jan. 21, 2003)(J. Saris).

With regard to the first prong, as Abbott's Motion concedes, the stipulated Protective Order entered in this case, by its terms, does not accord Abbott protection for this document from grossly negligent disclosure. *Id*. (Motion at 9). The parties never defined "inadvertent" to include a protection against grossly negligent disclosure.

As a result, the next step in the evaluation is whether the disclosure was merely inadvertent, or grossly negligent. In this instance, it is unclear that there ever was any inadvertence. Abbott had disclosed other attorney advice, and its Rule 30(b)(6) representative heavily relied upon disclosed advice and presentations to support his compliance testimony. Conveniently, despite a four month gap between production and "snap back", Abbott only decided to assert inadvertent production over the Albrecht 1991 Memo the moment that the United States attempted to use it at deposition, possibly to Abbott's detriment. Even more conveniently, Abbott decided only last week that the related Albrecht 1991 Cover Fax was inadvertently produced, and only after the Government as a courtesy advised Abbott through counsel that it intended to file it in support of this Opposition. Thus, a pattern has emerged where Abbott decides to asserts inadvertence when the Government advises that it intends to use a document, or calls the document to Abbott's attention. But for the Government's disclosures, it is uncertain that any "snap backs" would have occurred.

Abbott's gross negligence in performing its "first-tier review only" is best evidenced by its failure to catch the copies of Albrecht 1991 Memo incident to its confidentiality review mandated under the Stipulated Protective Order. Like all of the other H&F Contract File documents, Abbott designated the two copies of the Albrecht 1991 Memo and the Albrecht 1991 Cover Fax, as "confidential." (*See* Sealed Exhibit "A"). Under the Protective Order (D.E.

3804), Abbott was required to, in good faith, review these documents to determine whether they met the confidentiality criteria set forth in ¶¶ 3, 4 and 15 of the Order. Abbott's Motion fails to explain what confidentiality review, if any, Abbott performed. It is difficult to understand how the privileged character of the documents in question could have escaped notice if Abbott undertook proper measures to meet the good faith requirements of the Protective Order.[11]

Even if *arguendo*, it had not needed to undertake a confidentiality review, Abbott still fails to adequately explain why it was not grossly negligent. Abbott offers no explanation for why its first-tier reviewers, licensed attorneys, *twice* failed to follow the instructions that Abbott maintains they were given, and *twice* did not flag the Albrecht 1991 Memo for privilege despite its clear content.[12]

Most standard privilege reviews include elemental searches for attorney names, counsel and attorney titles, and office locations such as the "General Counsel's Office". (Dahl Aff. at ¶

---

[11] Abbott's Motion argues that its production was not purposeful or grossly negligent: a) because the first-tier or "clerical" reviewers, junior Jones Day and contract lawyers had no authority to make privilege determinations; and, b) simply because Abbott had its multi-tier review process. (Motion at pp. 9-11; Dahl Aff. ¶¶ 6-8). The description of the two-step review process in this instance, however, is immaterial as the documents *at issue never made it through the two-tier analysis*, according to Ms. Dahl and Abbott's Motion. (*See discussion* Motion at pp. 9-12; Dahl Aff. ¶ 10). *See, e.g., Amgen, Inc. v. Hoechst Marion Roussel, Inc*., 190 F.R.D. 287, 292 (D. Mass. 2000)(description of document segregation privilege review process does not explain what precautions were taken to prevent inadvertent disclosures)

[12] As detailed above, Abbott produced other documents reflecting attorney advice that it did not "snap back", but instead used affirmatively either to assuage public concerns about its compliance, or to augment and support its witnesses' testimony. (*See* Exhibit "E" hereto, Fishman 30(b)(6) 3/20/08 Dep. at 552:17-22; 553-606 & Fishman Dep. Exhs. 1, 13, 14, 15, 16, 18, & 19 (select pages))(Exhibit "F" hereto, Baker 1/18/08 Dep. at 308:7-22; 309-327, 328:1-14 & Baker Dep. Exh. 30 (select pages)). The Government had no reason to believe that Abbott viewed the Albrecht 1991 Memo or 1991 Cover Fax were produced inadvertently and should not be put in the position of having to speculate or predict whether Abbott will "snap back" a document that the Government elects to use as part of its discovery or trial strategy in this case.

16

8). If it truly sought to preserve the purported privileged character of the Albrecht 1991 Memo or Albrecht 1991 Cover Fax, Abbott could have performed a computer search for such terms prior to making its electronic production, but it apparently did not. As a result, through its gross negligence, Abbott has waived the privilege and for that reason alone the United States is entitled to retain this highly relevant Albrecht 1991 Memo and the Albrecht 1991 Cover Fax.

WHEREFORE, based upon the foregoing, the United States respectfully requests that this Court deny Abbott's Motion to Enforce the February 16, 2007 Protective Order And For Order Compelling Plaintiff To Return Inadvertently Produced Privileged Documents, and order the production of all documents that refer, relate or pertain to Abbott's in-house counsel's advice concerning: all state and federal compliance or regulatory matters; General Counsel documents pertaining to Medicare or Medicaid and/or the Subject Drugs; the General Counsel's role as Compliance Officer; or, Abbott's business dealings and pricing that refer, relate or pertain to federal and state statutes, regulations and guidance for the time period of this case.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | GREGORY G. KATSAS<br>ACTING ASSISTANT ATTORNEY GENERAL |
| /s/ George B. Henderson, II<br>George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>(617) 748-3398<br>(617) 748-3272 | /s/ Justin Draycott<br>Joyce R. Branda<br>Daniel R. Anderson<br>Renée Brooker<br>Justin Draycott<br>Rebecca Ford<br>Gejaa T. Gobena<br>Elizabeth Strawn |
| R. ALEXANDER ACOSTA<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA | Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station |
| /s/ Ann M. St. Peter-Griffith<br>Mark A. Lavine<br>Ana Maria Martinez<br>Ann St.Peter-Griffith<br>Special Attorneys for the Attorney General<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL  33132<br>Phone:  (305) 961-9003<br>Fax: (305) 536-4101 | Washington, D.C.  20044<br>Phone:  (202) 307-1088 |

Dated: June 2,  2008

Case 1:01-cv-12257-PBS   Document 5344   Filed 06/01/08   Page 19 of 19


## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a redacted electronic copy of the above Opposition to Abbott's Motion to Enforce the February 16, 2007 Protective Order And For Order Compelling Plaintiff to Return Inadvertently Produced Privileged Documents to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

      /s/ Ann. M. St. Peter-Griffith

Dated: June 2, 2008