# EXHIBIT "C"
## TO UNITED STATES' OPPOSITION TO
## ABBOTT'S MOTION TO ENFORCE (D.E. 5276)



H & F Marketing Inc 1/91
Oklahoma City, OK (J Foster)

Confidential

ABT-DOJ 326736
ABT280-0739 FL

| ACCOUNT NAME/STATE | PROPOSAL | CONTRACT | CONTRACT SIGNED | | ADDENDUM SIGNED | |
|---|---|---|---|---|---|---|
| | | | ABBOTT | ACCOUNT | ABBOTT | ACCOUNT |
| Hi-T Marketing OK City, OK | | 1/15/91 | 1/2/91 | 1/2/91 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

HERDENFILE.ORIZ

Confidential

ABT-DOJ 326737
ABT280-0740 FL

Contract, Addendum, Price Inc.

Confidential

ABT-DOJ 326738
ABT280-0741 FL



**Abbott**
**HomeCare**

900 North Shore Drive
Lake Bluff, Illinois 60044

January 31, 1991

Mr. James Foster
H and F Marketing, Inc.
d/b/a Allied IV Care
PO Box 22605
Oklahoma City, Ok.  73123

Dear Mr. Foster:

Per the request of Ms. Cheryl Griffin, Area Business Manager, we are pleased to offer the following Amendment ("Amendment") to the Home Infusion Therapy Agreement ("Agreement") between H and F Marketing, Inc. ("Customer") and Abbott Laboratories ("Abbott") dated January 15, 1991.  Once accepted by Abbott, the effective date of this Admendment shall be February 1, 1991.

New Item

IX.    Non-Competition
A.   Abbott and Customer agree that all patients referred to either party by HMOs, IPAs and physicians groups under contract with Customer for home infusion services shall be included under the terms of this agreement.
B.   Customer shall supply Abbott by March 1, 1991, a complete listing of all entities covered by the terms of subsection IX.A.
C.   Customer shall notify Abbott, in writing, of any new accounts qualifying under subsection IX.A. within thirty (30) days of the execution of a contract.
D.   If customer fails to notify Abbott of any accounts covered under the terms of subsection IX.A., Abbott shall not be bound by the terms and conditions of said subsection.

If this Amendment is acceptable to you, please sign and date below and return two signed copies to us.  A fully executed copy will be returned to you.

We Appreciate your business and the opportunity to assist in the service of your home infusion patients.  Please do not hesitate to call Cheryl Griffin at 714-363-9034 if you have any questions.

Accepted:                                 Accepted:
ABBOTT LABORATORIES                       H and F MARKETING, INC.

By: _____               By: _____
Title: Manager, Contract Marketing        Title: _____
Date: _____               Date: _____

cc:  Cheryl Griffin

0014v

ABT-DOJ 326739
ABT280-0742 FL



**Abbott
HomeCare**

900 North Shore Drive
Lake Bluff, Illinois 60044

February 27, 1991

Mr. James Foster
H and F Marketing, Inc.
d/b/a Allied IV Care
PO Box 22605
Oklahoma City, Ok.  73123

Dear Mr. Foster:

We are pleased to offer the following Amendment ("Amendment") to the Home
Infusion Therapy Agreement ("Agreement") between H and F Marketing, Inc.
("Customer") and Abbott Laboratories ("Abbott") dated January 15, 1991.  Once
accepted by Abbott, the effective date of the Amendment shall be March 1, 1991.

New Item

IX.    Non-Competition

A.  Abbott and Customer agree that all patients referred to either
party by HMOs, IPAs, and physician groups under contract with
Customer for home infusion services shall be included under the
terms of this Agreement.

B.  Abbott agrees not to convert any patients of Customer to direct
Abbott patients for the term of this Agreement, unless requested
by Customer.

C.  Abbott shall not market directly to any entities under contract
with Customer for up to one year after the last transaction of
business between Customer and said entities, provided that the
Agreement between Abbott and Customer remains in full force and
effect.

D.  Customer shall provide Abbott with a listing of all entities under
contract with Customer within thirty (30) days of execution of an
Agreement with said entities.

E.  The provisions set forth under subsection IX. A, B, and C shall
only be binding provided that gross billing for patients covered
by this Agreement are at least one million dollars ($1,000,000) on
an annualized basis for any two successive quarters, commencing
January 1, 1992.

Confidential

ABT-DOJ 326740
ABT280-0743 F

Mr. James Foster
February 27, 1991
Page 2.

If this Amendment is acceptable to you, please sign and date below and return
two signed copies to us. A fully executed copy will be returned to you.

We appreciate your business and the opportunity to service your patients.
Please contact Cheryl Griffin, Area Business Manager, at (714) 363-9034 if you
have any questions.

Accepted:                            Accepted:
ABBOTT LABORATORIES                  H and F MARKETING, INC.

By: _____          By: _____

Name: _____          Name: _____
       Please print or type                 Please print of type

Title: Manager, Contract Marketing   Title: _____

Date: _____          Date: _____

cc:  Cheryl Griffin

0014v/2-3

Confidential

ABT-DOJ 326741
ABT280-0744 L



**Abbott**
**HomeCare**

900 North Shore Drive
Lake Bluff, Illinois 60044

January 22, 1991

James Foster
H and F Marketing, Inc.
d/b/a Allied IV Care
P.O. Box 22605
Oklahoma City, OK  73123

Dear Mr. Foster:

Enclosed is a fully-executed copy of your Abbott Home Infusion Therapy
Agreement for your records. We are delighted to be working with you and look
forward to the opportunities it represents.

Please do not hesitate to contact Cheryl Griffin, Area Business Manager at
(714) 363-9034 with any questions you may have regarding this agreement.

Sincerely,

Kathryn A. Riddle
Contract Marketing and Administration

KR/lk

cc:  Cheryl Griffin, Area Business Manager

Confidential

ABT-DOJ 326742
ABT280-0745 FL

## HOME INFUSION THERAPY AGREEMENT

Customer:   H and F Marketing, Inc.                    Date:   January 15, 1991
            d/b/a Allied T.V. Care
            P.O. Box 22605
            Oklahoma City, OK  73123

Contract Term:  Two (2) Years

From:   January 1, 1991

To:     December 31, 1992

Abbott Laboratories, HomeCare Operations, ("Abbott") is pleased to provide
H and F Marketing, Inc. ("Customer") with a home infusion therapy Agreement to
supply Customer with products and services relating to home infusion therapy.

I.   SERVICES PROVIDED BY ABBOTT.

     Abbott will provide the following products and services for home I.V.
     infusion therapy patients of Customer:

     A.  Compound products, supply equipment and ancillaries according to
         patient prescriptions provided Abbott.

     B.  Deliver products, pumps and supplies to the patient's residence.

     C.  Provide home inventory management of patient products and supplies.

     D.  Provide for the pharmacy clinical management of the patient.

     E.  Provide reimbursement services, as detailed in Exhibit A on behalf of
         customer.

     F.  Provide in-service training to health care professionals on Abbott
         infusion devices and Abbott products on an as-needed basis.

     G.  Provide twenty-four toll free support staffed by a registered nurse
         for professional-to-professional consultation.

     H.  Provide twenty-four hour replacement of defective pumps, when
         medically necessary, as mutually determined by Abbott's professional
         staff and customer's nurse.

Confidential

–2–

## II. SERVICES PROVIDED BY CUSTOMER

Customer will provide the following services under this Agreement:

A. Assume Assignment of Benefits on all patients.

B. Coordinate discharge ancillary services.

C. Coordinate and manage patient training.

D. Coordinate in home follow up nursing services.

E. Provide medical clinical management services.

F. Provide patient information to Abbott for each patient receiving products and/or services under this Agreement. Patient information required by Abbott will be as indicated in Exhibit B.

G. Pay Abbott for the products and services provided by Abbott according to the fee schedule in Exhibit C.

## III. LOCKBOX

A. Customer at its expense, shall provide a dedicated lockbox exclusively for the receipt of program collections. Customer shall arrange with the financial institution administering the lockbox to transmit directly to Abbott photocopy of total contents of each envelope, including checks; a photocopy of the deposit slip and adding machine tape from the checks deposited showing the total amount deposited; photocopy of any other correspondence, upon receipt by the financial institution.

B. If once the lockbox is established, program collections and/or statements of medical benefits are inadvertently sent directly to Customer, instead of the lockbox, Customer shall submit copies of those items to Abbott within five (5) business days of receipt.

## IV. INDEMNIFICATION

Abbott shall at all times maintain product liability insurance coverage and shall indemnify, hold harmless and defend H & F Marketing against any legal action incurred or threatened as a result of product failures or alleged negligent acts or omissions by Abbott's employees or agents in the performance of responsibilities as designated in this Agreement. H & F Marketing shall at all times maintain liability insurance coverage for bodily injury and property damage, and as related to the performance of its duties in compliance with the terms of this agreement indemnify, hold harmless, and defend Abbott against any legal action incurred or threatened as a result of negligent acts or omissions of H & F's employees or agents. Both H & F and Abott agree to submit evidence of insurance upon request to the other and to agree to minimum limits of $1,000,000 per person for bodily injury and $3,000,000 per occurrence for *bodily injury or property damage.*

Confidential

-3-

### V.  MARKETING/PROMOTIONAL LITERATURE

Abbott agrees to the use of the following statement in H & F literature:
"Home infusion therapy products secured in collaboration with Abbott
HomeCare." Any other use of the Abbott name must be approved in writing
by Abbott.

### VI.  FORCE MAJEURE

Neither party will be liable for any failure to perform any duties or
obligations under this Agreement due to strikes, explosions, flood, riot,
lock out, injunction, interruption of transportation, accidents,
inability to obtain supplies at reasonable prices, war, act of
governmental authority, acts of God, or other causes beyond its control.

### VII.  CONTRACT TERM AND TERMINATION

This Agreement will be in effect for a term of two (2) years beginning on
the date of acceptance by Abbott and will be automatically renewed for
additional and successive terms of one (1) year each, unless and until
terminated.

All other terms and conditions applicable to this Agreement will be as
stated in Attachment I.

### VIII.  ACCEPTANCE

If this meets with your approval, please sign and date each copy of this
proposal, and return them to Abbott Laboratories, HomeCare Operations,
900 North Shore Drive, Lake Bluff, Illinois, 60044. This proposal must
be returned to Abbott within thirty (30) days of the date of this letter
or it shall become void. This proposal will be implemented as a contract
upon acceptance by Abbott in Lake Bluff, Illinois. We will return one
fully executed copy to you.

ACCEPTED:                          ACCEPTED:

ABBOTT LABORATORIES                H and F Marketing, Inc.

By _____          By _____

Title _Mgr. Contract Mkt. & Admin._   Title _President_

Date _22 January 1991_             Date _1/21/91_

ABT-DOJ 326745
ABT280-0748

-4-

ATTACHMENT I

## TERMS AND CONDITIONS

**CONFIDENTIAL INFORMATION:** Customer and Abbott agree to keep the terms of this Agreement confidential during the term of the Agreement and for a period of three (3) years following the termination of this Agreement. In addition, either party may, from time to time, disclose certain confidential information to the other party. Each party shall take all reasonable steps to prevent disclosure of any information designated by the other party as confidential, and shall not use or disclose any such information for a period of three (3) years following termination of this Agreement. The foregoing shall not apply to information:

    a)   which either party can show was known to it prior to the disclosure by the other party;

    b)   which is or becomes public knowledge through no fault of either party; or

    c)   which is lawfully disclosed to either party by a third party.

**PRODUCTS:** Customer understands that Abbott manufactures some but not all of the products utilized in Home Infusion Therapy. Abbott agrees to provide all products required by Customer's Home Infusion Therapy Patients whether or not manufactured by Abbott. Customer agrees to the utilization of Abbott manufactured products when available. There may be an additional charge to the patient for use of non Abbott product utilized as substitutes for available Abbott manufactured product.

**CONTRACT TERMINATION:** This Agreement will automatically terminate in the event of the bankruptcy or insolvency of either party. In the event of a breach of any material provision of this Agreement by either party, the breaching party shall have thirty (30) days after receipt of written notice of termination to effect a cure of said breach; the Agreement will terminate upon the expiration of said thirty (30) day period if no cure is effected to the satisfaction of the *non-breaching party.*

**ASSIGNMENT:** This Agreement will be governed by the laws of the state of Illinois and may not be assigned in whole or in part by either party without the other party's prior written consent.

**CASH DISCOUNT TERMS:** A prompt payment cash discount allowance of 1% 15 Days, Net 30 Days, shall apply to the full term of this Agreement.

**OTHER TERMS AND CONDITIONS:** Terms and conditions not specifically covered by this contract proposal are subject to the Abbott Hospital Products Catalog in effect at the time of invoicing and are subject to change without notice.

ABT-DOJ 326746
ABT280-0749

EXHIBIT A

Abbott will provide Reimbursement Services, to include:

- Verification and notification to Customer of the insurance/third party reimbursement status of all potential patients relative to the stated diagnosis and intended treatment.

- Obtain information required (Patient Assignment of Benefits, Certificate of Medical Need), to submit claims.

- Prepare and submit all primary and coinsurance claims on behalf of Customer and perform all reasonable collection procedures.

- Provide a monthly collection report showing month of service billed, amount billed, primary amount paid, secondary amount paid and balance due for each patient.

- Confer with Customer regarding collection referral on accounts deemed uncollectible.

- Abbott will retain all patient documentation related to reimbursement for the required amount of time.

Confidential

EXHIBIT B

PATIENT ENROLLMENT INFORMATION

Patient Referral:

When a patient is started on home therapy, the Customer should call the Abbott New Client Admissions Department at 1-800-541-6426 or FAX to (213) 949-5945. The information required at this time follows:

Type of Therapy

Patient data (name, address, diagnosis)

Hospital data (name, address)

Physician data (name, address, phone number)

Start date

Reimbursement Data (Insurance Name, Address, Phone, Patient ID numbers).

Billing information (Any special price or discount)

Confidential

ABT-DOJ 326748
ABT280-0751

EXHIBIT C

## FEE SCHEDULE

| Type of Home Infusion Therapy | PAYABLE TO ABBOTT<br>% of Gross Billings Less Bad Debt[1] |
|---|---|
| Total Parenteral Nutrition | 41% |
| Total Enteral Nutrition | 68% |
| Antibiotic Therapy | 64% |
| Chemotheropy | 62% |
| Pain Management | 62% |
| I.V. Hydration | 62% |
| Other Therapies | To be determined<br>by mutual consent |

[1]  Gross billings shall be based on Abbott's usual and customary
     price list.  Abbott shall provide to H & F Marketing, Inc. a copy
     of its usual and customary  price list as of the date of this
     agreement.  In the event H & F negotiates a discounted rate with
     an IPA, HMO, third party payor, etc. the amount payable to Abbott
     shall not be affected by such discounts or negotiated contract
     prices.

     Rates applicable to this agreement are based on one delivery per
     patient per week.  In the event additional deliveries, or one day
     delivery is requested for other than a medical necessity, H & F
     shall be responsible for payment to Abbott for an excess delivery
     charge to be billed at the cost incurred by Abbott.  In lieu of
     incurring extra charges, H & F reserves the right to pickup
     deliveries.

2837c/1-7

Confidential

ABT-DOJ 326749
ABT280-0752 L

Proposal

Confidential

ABT-DOJ 326750
ABT280-0753 FL

Other: Comp/Acct Info

Confidential

ABT-DOJ 326751
ABT280-0754 FL

H & F Marketing
Aerosolized PentamidineTherapy

2.5 Doses/Order *

| Supply Item | Qty Shipped | Std Mtl Cost/Ea | Std Mtl Cost/Tot | U & C Rate/Ea | U & C Rate/Tot |
|-------------|-------------|-----------------|------------------|---------------|----------------|
| Nebupent | 1 | 79.0000 | 79.000 | 250.38 | 250.38 |
| Isoetherine | 1 | 7.7200 | 7.720 | 15.53 | 15.53 |
| Nebulizer | 1 | 5.9900 | 5.990 | 15.65 | 15.65 |
| Sterile Water, 10c | 1 | 0.1340 | 0.134 | 1.14 | 1.14 |
| NaCl 9%, 3cc | 1 | 0.0000 | 0.000 | 0 | 0.00 |
| | | Sub-Total | 92.844 | Total | 282.700 |

| | | |
|---|---|---|
| | Total | 92.844 |
| | # Doses/Total | 1 |

| | | |
|---|---|---|
| | Supplies/Dose | 92.844 |
| (8.51/2.5) | Pharmacy Mtls | 3.408 |
| (21.44/2.5) | Order Processing | 8.576 |
| (25/2.5) | Delivery | 10.00 |
| (@ 25/bill) | Billing | 25.00 |
| | Total | 139.83 |

@ 30% Cont Mgn    Total Revenue Req.    199.75

Base Rate:
U & C Minus Bad Debt (9%)       257.26

% of Base at 30% mgn            78%

\* Estimate from John Kelton
  Assume 90+ percent of patients are treated prophylactically
  with 2.5 doses per shipment

K Riddle
7/17/91

Data given to Cheryl via phone
   7/17

Confidential

ABT-DOJ 326752
ABT280-0755 FL

**TELECOPY**

*11:00* AM/PM CST

DATE _4/10/91_

TO: _Cheryl Liffin_

FAX #: _714 - 363 - 9055_

FROM: _Mark Gorman_

Abbott Laboratories
900 North Shore Drive
Lake Bluff, IL   60044
(708) 937-1763
FAX (708) 937-0484

NO. OF PAGES (INCLUDING COVER SHEET): _2_

Sara

Make adjustments and copy to

Fax copy to

Cheryl.

Mark

KR:ss

Confidential

ABT-DOJ 326753
ABT280-0756 FL

## Consulting Agreement

This Consulting Agreement is made and entered into as of this _____day of _____, 1991, by and between Abbott Laboratories ("Abbott"), an Illinois corporation, and Health Financial Services ("HFS"), a California corporation.

Abbott and HFS shall jointly establish and approve promotional and marketing plans and projects ("projects") which are designated to market the services of Abbott HomeCare to certain expressly identified and agreed upon entities throughout the state of California.  The entities to be marketed to shall be approved in writing by Abbott and HFS in advance of the beginning of each project.

As compensation for marketing services provided by HFS, Abbott shall pay HFS five percent (5%) of all cash actually collected by Abbott for home infusion business resulting from projects approved in writing by Abbott that result in Abbott obtaining new business from HFS secured accounts.  Specifically excluded from this compensation arrangement are all publicly supported patients (e.g. Medicare, Medicaid, CHAMPUS, etc.).  Abbott shall pay no compensation to HFS for these publicly supported patients.

Abbott shall pay HFS on a monthly basis according to the terms and conditions set forth in this Consulting Agreement.

This Agreement shall commence as of the date of this Agreement and continue until terminated by either party upon thirty (30) days written notice.  In no event shall any termination permitted by this Agreement affect the rights or obligations of either party which may have accrued prior to termination, including but not limited to the right to receive compensation for services rendered prior to the effective date of termination.

Both parties agree to keep the terms of this Agreement confidential during the term of the Agreement and for a period of three (3) years following termination.

Confidential

All notices hereunder shall be in writing and shall be delivered personally or by registered or certified mail, postage prepaid, return receipt requested, to the following address of the respective parties:

> Abbott Laboratories
> Abbott HomeCare
> 900 North Shore Drive
> Lake Bluff, Il.  60044

> Health Financial Services
> P O Box 22605
> Oklahoma City, Ok.  73123

ABBOTT LABORATORIES                         HEALTH FINANCIAL SERVICES

By: _____              By:_____

Title: <u>Manager, Contract Marketing</u>     Title: _____

0035v/37–38

Confidential

ABT-DOJ 326755
ABT280-0758 L

**THIS PAGE REMOVED FOR PRIVILEGE**

ABT280-0759   FL

FEB 20 '94 14:28 SANTA FE SPRINGS H&G                            P.1/3



**Abbott**
**HomeCare**
A Division of Abbott Laboratories

# ABBOTT HOMECARE
# TELEFAX LINE:  (213) 949-5945

**TO:** _Kathy Riddle_

**FROM:** _Cheryl Griffin_

**SUBJECT:** _____

__2__ **PAGES TO FOLLOW**

```
          MESSAGES/COMMENTS SECTION
```

11829 Hamden Place, Santa Fe Springs, California 90670 · (213) 949-2800

Confidential

ABT-DOJ 326760
ABT280-0763 FL

Debbie

Please create a lotus set file
for "those guys".

H & F Marketing, Inc. thanks
Oklahoma City, OK.

ABT-DOJ 326761
ABT280-0764 FL

22-Jan-91

## ABBOTT HOMECARE P&L

### H & F MARKETING, INC., OKLAHOMA CITY, OK.
### PROPOSAL ANALYSIS

### MANAGED VENTURE ANALYSIS

| | TPN | TEN | ANTI | CHEMO | PAIN MGT | HYDRATION | TOTAL |
|---|---|---|---|---|---|---|---|
| PROGRAM BILLINGS | 1,222,312 | 88,507 | 292,351 | 47,005 | 109,916 | 35,040 | 1,775,331 |
| BAD DEBT (@ 9% BILLINGS) | 110,008 | 7,966 | 26,330 | 4,230 | 9,892 | 3,154 | 161,580 |
| | | | | | | | |
| PROGRAM NET BILLINGS | 1,112,304 | 80,541 | 266,221 | 42,775 | 100,024 | | 31,886 1,633,751 |
| | | | | | | | |
| NUMBER OF PATIENTS/YR | 8 | 6 | 3 | 1 | 2 | 1 | |
| THERAPY DAYS/PATIENT | 365 | 365 | 365 | 365 | 365 | 365 | |
| TOTAL THERAPY DAYS | 2,920 | 2,190 | 1,095 | 365 | 730 | 365 | |
| | | | | | | | |
| % NET BILLINGS TO ABBOTT | 41% | 68% | 64% | 62% | 62% | 62% | |
| NET ABBOTT REVENUE/YR | 456,045 | 54,768 | 170,382 | 26,520 | 62,015 | 19,770 | 789,499 |
| | | | | | | | |
| VARIABLE OPERATING COSTS: | | | | | | | |
| MATERIAL | 48,443 | 7,424 | 5,344 | 548 | 2,511 | 1,916 | 66,186 |
| NON-ABT MATL, ABT ACQ. | 21,433 | 1,095 | 41,490 | 1,511 | 7,234 | 456 | 73,219 |
| PATIENT NURSE START-UP | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| COMPOUNDING | 39,508 | 3,285 | 13,184 | 1,632 | 7,198 | 1,825 | 66,632 |
| DELIVERY | 20,440 | 3,833 | 7,665 | 1,460 | 3,650 | 1,825 | 38,873 |
| BILLING | 48,881 | 3,548 | 11,706 | 1,880 | 4,395 | 1,402 | 71,812 |
| FREIGHT | 2,453 | 1,489 | 460 | 62 | 124 | 307 | 4,895 |
| PUMP | 6,132 | 1,095 | 0 | 767 | 1,533 | 767 | 10,294 |
| SALES INCENTIVE | 4,560 | 548 | 1,704 | 265 | 620 | 198 | 7,895 |
| BAD DEBT | 4,560 | 548 | 1,704 | 265 | 620 | 198 | 7,895 |
| | | | | | | | |
| SUBTOTAL OPERATING COST | 196,411 | 22,864 | 83,257 | 8,390 | 27,885 | 8,893 | 347,701 |
| | | | | | | | |
| CONTRIBUTION MARGIN | 259,634 | 31,904 | 87,125 | 18,130 | 34,129 | 10,876 | 441,798 |
| | | | | | | | |
| % TO NET ABBOTT REVENUE | 57% | 58% | 51% | 68% | 55% | 55% | 56% |

OTHER:

Confidential

ABT-DOJ 326762
ABT280-0765 FL

TELECOPY

_11 : 20_ AM/PM CST

DATE   _1/22/90_

TO:     _Cheryl Duffin_

_____

_____

FAX #:   _____

FROM:   Kathryn Riddle
        Abbott HomeCare
        900 North Shore Drive
        Lake Bluff, IL  60044
        (708) 937-1774

NO. OF PAGES (INCLUDING COVER SHEET):  _2_

KR:ss

Confidential

ABT-DOJ 326763
ABT280-0766 FL

JAN 14 '91 09:03                                          P.2

8000 A
Wilshire Lt -
Oklahoma City OK. 73132

ATT: Jim Foster

Change d/b/a to: ( ALLIED I.V. CARE ) - Replace UCa

add section I H:

Provide twenty-four hour ~~avated~~ replacement
of defective pumps when medically
necessary as ~~parts~~ <ins>mutually</ins> determined by Abbott's
~~parts~~ professional staff and Customer's
nurse.

Change section V line 2:

Our Susan -
Needs to be reviewed
w Bill             "in collaboration with Abbott HomeCare"

Terms & Conditions    Products

Change the word "upcharge" on line 5 to
"additional charge."

Fee Schedule - change heading on 2nd Column:

PAYABLE TO ABBOTT
% of Gross Billings less Bad Debt

Confidential
ABT-DOJ 326764
ABT280-0767 FL

JUN 10 '91 16:50 SANTA FE SPRINGS H63        ADMINISTRATION                P.2/2

## Suggested Modifications to ABBOTT/H & F Agreement

1. We request authorization to use one of the following statements in our advertising materials.

   *No* A. A cooperative effort between H & F marketing and Abbott Laboratories, HomeCare Operation.

   *Cheryl's choice*   *or* (B) Home Infusion therapy products secured through Abbott Laboratories.

   *X* C. Home Infusion products, pumps and supplies provided by Abbott Laboratories.

*As requested by customer* We request you review the following verbage as related to replacing current language in the prospective distribution agreement between H & F and Abbott Home Care.

Page 2.
Paragraph 1V. Indeminification:
Abbott shall at all times maintain product liability coverage and indemnify, hold harmless and defend H & F Marketing against any legal action incurred or threatened as a result of product failures or alleged action or lack thereof by Abbott's staff members in the performance of responsibilities as designated in this Agreement.   H & F Marketing shall at all times maintain liability coverage for bodily injury and property damage, and as related to the performance of their duties in compliance with the terms of this agreement indemnify, hold harmless, and defend Abbott against any legal action incurred or threatened as a result of H & F's action or lack thereof. Both H & F and Abbott agree to submit evidence of insurance upon request to the other and to agree to minimum limits applicable prior to iniation of this agreement. *Faxed to Ann - ok w limits added.*

Exhibit C.
Paragraph 1. Collections:
Abbott shall provide a price list representing their usual and customary charges.  The above referenced percentage of collected revenue payable to Abbott shall be based on that price list.   In the event H & F negotiates a special rate with an IPA. HMO, third party payor etc. the amount payable to Abbott shall not be affected by discounts or negotiated contracted prices.

Rates applicable to this agreement are based on one delivery per patient per week.  In the event additional deliveries, or one day delivery is requested for other than a medical necessity, H & F shall be responsible for payment to Abbott for an excess delivery charge to be billed at the cost incurred by Abbott.  In lieu of incurring extra charges, H & F reserves the right to pick up deliveries.

I hope the above meets with your agreement please contact me if there is any questions or revisions. Talking about questions, Jim and I have one for you, please call at your earliest convenience.

Thank You
Phyllis

Confidential

ABT-DOJ 326765
ABT280-0768 FL

31-Mar-91

ABBOTT HOMECARE POL

H & F FORECASTING,INC.

PROPOSED VENTURE ANALYSIS

|  | CA | IDA | NRT | CNTG | PAIN MGT | HYDRATION | TOTAL |
|---|---|---|---|---|---|---|---|
| GROSS BILLINGS | 1,222,312 | 88,597 | 297,251 | 47,065 | 109,916 | 35,060 | 1,770,331 |
| ALLOWANCES/BAD DEBT | 205,548 | 16,117 | 76,641 | 10,811 | 23,201 | 8,735 | 341,173 |
| NET REVENUE | 1,016,964 | 72,310 | 217,750 | 36,194 | 84,633 | 26,100 | 1,454,138 |
| NUMBER OF PATIENTS/YR | 8 | 8 | 3 | 1 | 2 | 1 |  |
| THERAPY DAYS/PATIENT | 365 | 365 | 365 | 365 | 365 | 365 | 365 |
| TOTAL THERAPY DAYS | 2,920 | 2,190 | 1,095 | 365 | 730 | 365 | 365 |
| NET REVENUE TO ABBOTT | 493,312 | 35,679 | 105,453 | 25,336 | 59,244 | 19,577 | 821,613 |
| NET REVENUE TO ACCOUNT | 511 | 133 | 255 | 302 | 395 | 253 |  |
| NET ACCOUNT REVENUE/YR | 504,632 | 14,631 | 56,448 | 10,858 | 25,391 | 4,526 | 632,345 |
| VARIABLE OPERATING COSTS |  |  |  |  |  |  |  |
| MATERIAL | 48,443 | 7,636 | 5,244 | 540 | 5,211 | 1,716 | 333,572 |
| NON-MAT INFL, NET ACQ. | 21,483 | 1,995 | 41,490 | 1,311 | 7,224 | 654 | 73,219 |
| PATIENT NURS START-UP | 0 | 0 | 0 | 0 | 0 | 0 |  |
| COMPOUNDING | 39,500 | 3,285 | 13,194 | 1,632 | 7,178 | 1,825 | 44,632 |
| DELIVERY | 26,444 | 3,633 | 7,465 | 1,466 | 3,650 | 1,825 | 38,073 |
| FREIGHT | 61,028 | 4,236 | 13,074 | 2,171 | 5,861 | 1,266 | 67,227 |
| PUMP | 2,453 | 740 | 740 | 62 | 126 | 787 | 4,095 |
| SALES INCENTIVE | 6,132 | 1,495 | 1,495 | 767 | 1,533 | 767 | 10,294 |
| OTHER | 4,903 | 357 | 1,633 | 253 | 392 | 196 | 6,216 |
| MARGINAL OPERATING COST | 204,420 | 23,116 | 62,852 | 8,065 | 27,923 | 4,850 | 335,572 |
| CONTRIBUTION MARGIN | 293,892 | 32,563 | 80,611 | 16,956 | 31,321 | 14,721 | 464,040 |
| % TO NET ABBOTT REVENUE | 59% | 58% | 69% | 65% | 53% | 55% | 57% |

OTHER:

ABT-DOJ 326766
ABT260-0799 FL

B & F MARKETING, INC.
PROPOSAL ANALYSIS

COLLECTION % ANALYSIS

PATIENT ASSUMPTIONS:

(1) TPN: 74-100 GRAMS PROTEIN/DAY WITH 10% FATS ZZZ#VOL/WEEK
    TEN: 1500 CAL/DAY WITH PUMP
    ANT1: 50/50 KIT ANCEF 10#/DOSE Q6H AND MAXIMUM Z#L/DOSE Q24H
    CHEMO: CONTINUOUS CHEMOTHERAPY, 5FU, WITH PUMP
    PAIN MGT: MORPHINE, 4500G, DAY, CONTINUOUS & AMBULATORY PUMP
    HYDRATION: TWO LITERS PER DAY, WITH PUMP

Corp, this is adjusted by changes 2/28

Rates voice cnnrd to Chcgd

H & F Marketing
FSS Rates)
for Medicare Patients
act ABB.

TDH:   74-100 gms Protein
Fats 10% 2=500/wk
Ambulatory Pump
1 Del/wk
Reembursemt services
@ $143.00/Day

Enteral    1500 Calories /w Pump Infusion
@ 18.00/Day

Chemo:    5Fu  1Gm /Day   w Continious Ambulatory
Infusion  (one long over 5days)
@ 50.34/day
(Std. Fees –
960/Bag
Pump - 14
Drug AWP Qun
+ Del ? Qun

Qun   300mg  Day    STD FEES
88/Bag
Drug@AWP-
Pump  14-
Del + Qune )  @  $63.00/day

ABT-DOJ 326768
ABT280-0771 F



ABT-DOJ 326769
ABT280-0772

$415 \times .94 = 390 \times .44 = 153.$

His 143/Day

$415 \times .9 = 3735.0 \times .41 = 153.14$

288

Std. Fee - 149.50
9.00   Fats
14.00   Pump
7.00   Del

Abbott std
Cost: 71.00/day

179.50

177.50

+  17.30      Reimbursement Serv.
$\$194.80$        @ 80% = ~

Medicare Allowable (288)-     $230 -

TEH:     $41 \times .9 \times .68 = 25.009$

Medicare Allow = 23.12  (@ 80% = 18.50)

Std Fee
- Enteral = 4.80
admin  = 6.75
Pump  = 7.00
Del.  1.47

20.22
+ Reim Serv.  2.21
22.43

/Day

1500 calories

Confidential



141.27    ~~121.09~~

113.02
13.20
126.22 /day

82.04 /day-

| | |
|---|---|
| 200ms/dy. Drug | 5.00 |
| Cadd Rent | 2 00. |
| Cadd Cassette. | 3.00 |
| Claims Mgmt. | 7.14 |
| | ~~15.70~~ |
| | 22.14 |
| Misc: 20% | 4.00 |
| | 26.14 |

28.00.

70.00

107.70

230.5

Confidential





## BUSINESS MARKETING AGREEMENT

THIS AGREEMENT IS MADE AND ENTERED INTO THIS _____ DAY OF _____, 1991, BY AND BETWEEN H & F MARKETING, INC., (HEREINAFTER REFERRED TO AS "CONTRACTOR"), AND ABBOTT LABORATORIES, HOMECARE OPERATIONS, (HEREINAFTER REFERRED TO AS ABBOTT), AND SHALL BE MADE AS AN ADDENDUM TO A CERTAIN CONTRACT BETWEEN THE PARTIES CALLED "HOME INFUSION THERAPY AGREEMENT", DATED JANUARY 15, 1991.

WHEREAS, ABBOTT SEEKS MARKETING REPRESENTATION FOR THE PURPOSE OF HAVING HOME INFUSION THERAPY PATIENTS REFERRED TO ABBOTT FOR THE DELIVERY OF ABBOTT PRODUCTS AND SERVICES, AND

WHEREAS, CONTRACTOR MAINTAINS A BUSINESS CAPABLE OF MARKETING THE PRODUCTS AND SERVICES OF ABBOTT;

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES CONTAINED HEREIN, IT IS AGREED AS FOLLOWS:

### 1. REPRESENTATION:

ABBOTT HEREBY ENGAGES AND/OR EMPLOYS THE SERVICES OF CONTRACTOR TO SEEK, IDENTIFY AND MARKET TO PROSPECTIVE REFERRAL SOURCES THE PRODUCTS AND SERVICES OF ABBOTT. CONTRACTORS EFFORTS SHALL BE DIRECTED TOWARDS PRESENTING THE ATTRIBUTES AND ABILITIES OF ABBOTT TO PROSPECTIVE REFERRAL SOURCES IN A FACTUAL AND POSITIVE MANNER. IT IS UNDERSTOOD THAT CONTRACTOR DOES NOT HAVE THE ABILITY OR MEANS TO CONTROL OR DIRECT ANY REFERRALS TO ABBOTT AND WILL NOT PROVIDE REMUNERATION OF ANY TYPE (DIRECTLY OR INDIRECTLY) TO ANY REFERRAL SOURCE TO MAKE SAID REFERRALS. CONTRACTOR WARRANTS THAT IT WILL NOT EMPLOY ANY MISREPRESENTATION OF FACT OR USE ANY DECEPTIVE PRACTICES IN PERFORMING ITS OBLIGATIONS AND SERVICES UNDER THIS AGREEMENT.

### 2. INDEPENDENT CONTRACTOR:

THE PARTIES TO THIS AGREEMENT AGREE THAT CONTRACTOR IS A PROFESSIONAL COMPANY AND/OR POSSESSES SPECIAL SKILLS AND ABILITIES AND THAT ABBOTT IS RELYING UPON SUCH SPECIAL SKILLS AND ABILITIES. IT IS EXPRESSLY AGREED THAT THE RELATIONSHIP BETWEEN THE PARTIES IS THAT OF INDEPENDENT CONTRACTORS OPERATING WITHIN THE STRUCTURE OF A BONA FIDE EMPLOYMENT RELATIONSHIP FOR THE DELIVERY OF SPECIFIC SERVICES AND THAT NEITHER PARTY SHALL HAVE ANY AUTHORITY TO BIND THE OTHER OR ITS REPRESENTATIVES IN ANY WAY EXCEPT AS EXPRESSLY CONTAINED HEREIN.

### 3. CONFLICT OF INTEREST:

THIS AGREEMENT SHALL NOT CONFLICT WITH THE TERMS OF THE ORIGINAL CONTRACT TO WHICH THIS ADDENDUM IS ATTACHED AND WILL ONLY COVER BUSINESS THAT WOULD NOT BE COVERED UNDER THE ORIGINAL AGREEMENT.

Confidential

ABT-DOJ 326773
ABT280-0776 F

**4. REPUTATION:**

CONTRACTOR AGREES THAT NO PRACTICES WILL BE ENGAGED IN THAT WOULD CAUSE DAMAGE TO THE REPUTATION OF ABBOTT OR CONTRACTOR.

**5. COMPENSATION:**

IT IS AGREED THAT CONTRACTOR IS RESPONSIBLE FOR ITS OWN EXPENSES AND REMUNERATION FOR ITS EMPLOYEES, WHETHER OR NOT FEES PAID BY ABBOTT ARE SUFFICIENT TO RENDER CONTRACTOR A PROFIT. IT IS UNDERSTOOD BY BOTH PARTIES THAT CONTRACTOR IS AT RISK IN THIS ENDEAVOR AND HAS NO RIGHT TO COMPENSATION OTHER THAN THAT LISTED BELOW.

ABBOTT AGREES TO COMPENSATE CONTRACTOR THE FOLLOWING MARKETING FEES FOR SERVICES RENDERED:

$117.00 FOR EACH COMPENSATED DAY OF TOTAL PARENTERAL NUTRITION SERVICE THAT IS PROVIDED BY ABBOTT DUE TO THE MARKETING EFFORTS OF CONTRACTOR.

$3.00 FOR EACH COMPENSATED DAY OF TOTAL ENTERAL NUTRITION SERVICE THAT IS PROVIDED BY ABBOTT DUE TO THE MARKETING EFFORTS OF CONTRACTOR.

IT IS AGREED THAT SHOULD COMPENSATION SCHEDULES BE ALTERED, SUBSTANTIAL CHANGES BE MADE IN DELIVERY METHODS OR SIGNIFICANT CHANGES IN COSTS OCCUR, EITHER PARTY MAY REQUEST A REVIEW AND RENEGOTIATION OF THE ABOVE COMPENSATION SCHEDULE. THE REVIEW, IF REQUESTED SHALL BE PERFORMED WITHIN THIRTY DAYS FROM THE FORMAL REQUEST BY EITHER PARTY. EACH PARTY ASSUMES THE OBLIGATION AND RESPONSIBILITY TO INFORM THE OTHER OF ANY CONSEQUENTIAL VARIANCES.

**6. TERMINATION:**

THIS AGREEMENT SHALL RUN CONCURRENTLY WITH THE AGREEMENT TO WHICH IT IS ATTACHED. IF NOT SO DETAILED HEREIN, COVENANTS AND AGREEMENTS OF THE ORIGINAL AGREEMENT SHALL APPLY TO THIS ADDENDUM.

IN WITNESS WHEREOF, WE HAVE EXECUTED THIS AGREEMENT AS OF THE DATE FIRST WRITTEN ABOVE.

ABBOTT LABORATORIES                          H & F MARKETING, INC.
HOMECARE OPERATIONS

BY_____                    BY_____
TITLE_____                    TITLE_____

Confidential

ABT-DOJ 326774
ABT280-0777 L

FE      01 10:45                                                    P.2

TO: H & F MARKETING
    P. O. BOX 22605
    OKLAHOMA CITY, OK 73123

DATE:  _____

PLEASE BE ADVISED THAT ABBOTT LABORATORIES, HOMECARE DIV IS
COGNIZANT THAT THE AGREEMENT RECENTLY ENTERED INTO HAS
RESPONSIBILITIES FOR BOTH PARTIES.  IN AS MUCH AS H&F IS
RESPONSIBLE FOR MARKETING TO ENTITIES THAT WOULD NOT BE IN
THE NORMAL MARKETING REALM OF ABBOTT, AND THUS REPRESENT
BUSINESS WE WOULD NOT NORMALLY HAVE, PLEASE BE ASSURED THAT
ABBOTT WILL HONOR THE RELATIONSHIP WE HAVE DEVELOPED.

~~WE REALIZE THAT AFTER YOU BRING IN THE CLIENTS WE WOULD HAVE AN~~
~~UNFAIR COMPETITIVE EDGE IN CUTTING H & F OUT OF THE PICTURE~~
~~WHETHER THROUGH DIRECT SOLICITATION BY OUR REPRESENTATIVES OR~~
~~INDIRECTLY THROUGH ONE OF OUR OTHER RELATIONSHIPS, OR THROUGH ONE~~
~~OF YOUR CLIENTS COMING DIRECTLY TO US AFTER LEARNING OF THE~~
~~STRUCTURE OF THE RELATIONSHIP.~~

ABBOTT IS AN EXTREMELY ETHICAL COMPANY.  WE WOULD NEVER IN ANY
WAY TRY TO CONVERT ONE OF YOUR CLIENTS, DIRECTLY OR INDIRECTLY AND
SHOULD WE DO SO, WE DESERVE TO HAVE LEGAL ACTION BROUGHT AGAINST
US TO THE FULL EXTENT ALLOWABLE BY LAW.  WE WILL ALWAYS HONOR OUR
RELATIONSHIP.  WE DO BELIEVE, AS YOU PROBABLY WOULD AGREE, THAT
SHOULD YOU LOSE A CLIENT, AFTER ONE YEAR OF THE LAST TRANSACTION
OF BUSINESS WITH THAT CLIENT, WE SHOULD HAVE THE RIGHT TO SOLICIT
THAT CLIENT.  WE ALSO BELIEVE THAT THE SOLICITATION OF ONE
YOUR CLIENTS BY ONE OF OUR OTHER DIVISIONS WOULD NOT BE
PROHIBITED AND THEREFORE RETAIN THAT RIGHT.

ABBOTT LABORATORIES
HOMECARE DIVISION

BY _____
TITLE _____

H:F Intent (As understood from Cheryl)

— we will not market to their Docs (Accts) / IPA

{ — we will not sell to their Accts @ rates less than we charge
H:F (?)

— We will not try to steal their business —

As understood from their Fax (Cheryl says this in no way reflects their intent)

I   we will have No direct communications w/ their (Abbott: customers) prospective & current customers w/o i) going through H:F, ii) written permission —

II   all info. received from H:F shall be confidential for up to 10 terms following last transaction between parties of agreement.

III   As related to I U Health care provided in any setting other than hospital.

I   OBJECTIVES:

1) terms must be reciprocal.

2) Agree to list of Accts Abbott won't market too?

3) Do we need list of Accts they will not mkt to? —

Perhaps Parties will develop a list of accounts that the other party shall not market Home Infusion Therapy Products and/or services to w/o the other parties written consent — any info received by the other party regarding these accts shall be considered confidential information.

Confidential

ABT-DOJ 326776
ABT280-0779 F

H:F -

Signed Agreements — we want market to
their customers - / offer letter prices

Confidential

ABT-DOJ 326777
ABT280-0780 L

Kathy:
    Jim Foster also wants to add a
clause that we won't go back
and offer better prices to those
IPA's & HMO's he signs a
contract with. He is providing
me with wording. I'll fax to
you when I get it.

Confidential

ABT-DOJ 326778
ABT280-0781 FL

*To: Kathy Riddle*

*Absolutely unacceptable*

*To negotiate from this document would be ridiculous*

## NON-DISCLOSURE AND NON-CIRCUMVENTION AGREEMENT

To:  H & F MARKETING, Inc.
P. O. BOX 22605
OKLAHOMA CITY, OK  73123

*definition*

The undersigned covenants and agrees that:

*No mo. from Agent can't deal with present address + assigns can have H&F w/o H&F written approval and/or can't deal no H&F*

Neither the undersigned nor any (related) corporation, partnership, divisions, subsidiaries, employees, agents or consultants shall make any contact with, or deal with, or otherwise be involved in any transaction with any potential buyer, corporate or individual, otherwise introduced by H & F Marketing, Inc., without using H & F Marketing, Inc., for direct communication with them or without the written consent of H & F Marketing, Inc., to do so.  This agreement is also effective for the signors, heirs, assignees and/or designees.

Any corporation, organization, firm, company or individual of *Exclude divisions* which the undersigned is a party to, member of, principal agent for, employee of or otherwise that would benefit financially from association is bound by this agreement.  The undersigned confirms that he has the right, authority, power and ability to enter into this agreement, and further, agrees to provide any necessary *this would* documentation to that effect. *include all above customers?*

This agreement is a perpetuating guarantee and is to be applied to any and all transactions or sharing of ideas, information or introductions between the parties regardless of the success of the transactions, ideas, information or introductions.  The undersigned also agrees not to use or disclose any information learned from or through H & F Marketing, Inc., concerning this or any other transaction without compensation being paid to H & F Marketing, Inc., on a negotiated basis.

The undersigned will keep completely confidential the names of any introductions, be they a corporation, organization, individual or group of individuals introduced by H & F Marketing, Inc.  Such identity shall remain confidential during this transaction and during the term of this agreement, and shall include any telephone numbers, addresses, telex numbers, et al.  Such information is considered the property of H & F Marketing, Inc.,, its assignees and/or designees and shall remain so for the term of this agreement. This agreement shall remain in effect for a period of ten (10) years from the date of the last completed transaction between the parties.

Any disputes or violations of this agreement shall be settled in the courts of Oklahoma County, State of Oklahoma, and if such court rules against the undersigned, he agrees to remunerate H & F Marketing, Inc., its successors, assignees and/or designees the full amount of remuneration H & F Marketing

P.2

JAN 16 '91 13:48

Confidential

ABT-DOJ 326779
ABT280-0782 F

received had they been involved with the transaction, regardless of whether or not the undersigned received any remuneration, plus all court costs, attorney fees and other charges deemed fair by the court.

It is understood by both parties that this agreement relates to IV health care provided in any setting other than that of a hospital setting and any related service thereof.

Entered into this _____ day of _____, 1991.

ABBOTT LABORATORIES

By: _____

Title _____

P.1                                                        JAN 16 '91 13:47

Confidential

ABT-DOJ 326780
ABT280-0783 L

I.  Non-Competition.

    A.  Abbott shall not accept assignment
of benefits on any patients referred by
H & F Marketing or customers under
contract with H & F Marketing for the
term of this agreement.

    B.  H & F Marketing agrees ~~that to~~ to utilize
Abbott HomeCare ~~as~~ to supply ~~home their~~
products and services to all it's home
infusion patients.

Confidential



**CHERYL GRIFFIN**
**Area Business Manager**

25002 Oxford Drive
Laguna Niguel, California  92677

714-363-9034
fax  714-363-9035

TO: _Debbie_

AT: _____

DATE: _12/28/90_   PAGES (INC COVER SHEET): _3_

H and F Marketing Inc

Please make the following
corrections and return ~~to~~ fax
to me.  Thanks!

Confidential

ABT-DOJ 326782
ABT280-0785 FL

DEC 27 '90 16:52 MAT MGMT H60                                    P.9/10



EXHIBIT C

## FEE SCHEDULE

| Type of Home Infusion Therapy | % of ~~Billings~~ Collections Due Abbott[1] |
|---|---|
| Total Parenteral Nutrition | 41% |
| Total Enteral Nutrition | ~~80%~~ 68% |
| Antibiotic Therapy | 64% |
| Chemotheropy | 62% |
| Pain Management | 62% |
| I.V. Hydration | 62% |
| Other Therapies | To be determined by mutual consent |

1  *Collections*
~~Billings~~ shall be defined as Abbott usual and customary charges to
third party payors and/or patients for Home Infusion Therapy,
minus bad debt.  There shall be no adjustment to compensation due
Abbott ~~(Billings).~~ To reflect negotiated contractual allowances/
discounts that may be negotiated with IPA's, HMO's, etc., by
H and F Marketing, Inc.

These rates include one next day delivery per patient per week.
In the event the patient receives  i) more than one delivery per
week and/or  ii) same day deliveries, at the request of Customer,
Abbott may bill the customer for excess delivery costs at Abbott
cost.

File #  2811c/19

Confidential

P.2

DEC 28 '90 07:06

ABT-DOJ 326783
ABT280-0786 F

DEC 27 '90 16:51 MAT MGMT M60                                      P.5/10

-5-



**ATTACHMENT I**

### TERMS AND CONDITIONS

CONFIDENTIAL INFORMATION: Customer and Abbott agree to keep the terms of this Agreement confidential during the term of the Agreement and for a period of three (3) years following the termination of this Agreement. In addition, either party may, from time to time, disclose certain confidential information to the other party. Each party shall take all reasonable steps to prevent disclosure of any information designated by the other party as confidential, and shall not use or disclose any such information for a period of three (3) years following termination of this Agreement. The foregoing shall not apply to information:

    a)    which either party can show was known to it prior to the disclosure by the other party;

    b)    which is or becomes public knowledge through no fault of either party; or

    c)    which is lawfully disclosed to either party by a third party.

PRODUCTS: Customer understands that Abbott manufactures some but not all of the products utilized in Home Infusion Therapy. Abbott agrees to provide all products required by Customer's Home Infusion Therapy Patients whether or not manufactured by Abbott. Customer agrees to the utilization of Abbott manufactured products when available. There may be an upcharge to the patient for use of non Abbott product utilized as substitutes for available Abbott manufactured product.

CONTRACT TERMINATION: This Agreement will automatically terminate in the event of the bankruptcy or insolvency of either party. In the event of a breach of any material provision of this Agreement by either party, the breaching party shall have thirty (30) days after receipt of written notice of termination to effect a cure of said breach; the Agreement will terminate upon the expiration of said thirty (30) day period if no cure is effected to the satisfaction of the non-breaching party.

ASSIGNMENT: This Agreement will be governed by the laws of the state of Illinois and may not be assigned in whole or in part by either party without the other party's prior written consent.

CASH DISCOUNT TERMS: A prompt payment cash discount allowance of 1% 15 Days, Net 90 Days [30], shall apply to the full term of this Agreement.

OTHER TERMS AND CONDITIONS: Terms and conditions not specifically covered by this contract proposal are subject to the Abbott Hospital Products Catalog in effect at the time of invoicing and are subject to change without notice.

Confidential

90:28 P6, 82 230
ABT-DOJ 326784
ABT280-0787 L

P.1



**CHERYL GRIFFIN**
**Area Business Manager**

**25002 Oxford Drive**
**Laguna Niguel, California  92677**

**714-363-9034**
**fax  714-363-9035**

TO: Debbie

AT:

DATE:_____   PAGES (INC COVER SHEET): one

Faxed corrections were fine. Please send a final
Copy by Federal Express to:

Did 12/28/90 DAR

Mr. Jim Foster
H and F Marketing, Inc.
8000 A Wilshire Court
Oklahoma City, Oklahoma  73132

Include a self-addressed large envelope returned to
Abbott Home Care attn Kathy Riddle. Thanks.

Confidential

ABT-DOJ 326785
ABT280-0788 FL

:7-Dec-90

## ABBOTT HOMECARE P&L

### MEDITECH, SANTA ANA, CA.
### PROPOSAL ANALYSIS

### MANAGED VENTURE ANALYSIS

| | TPN | TEN | ANTI | CHEMO | PAIN MGT | HYDRATION | TOTAL |
|---|---|---|---|---|---|---|---|
| PROGRAM BILLINGS | 1,222,312 | 89,507 | 292,551 | 47,005 | 109,916 | 35,040 | 1,795,331 |
| NUMBER OF PATIENTS/YR | 8 | 6 | 3 | 1 | 2 | 1 | |
| THERAPY DAYS/PATIENT | 365 | 365 | 365 | 365 | 365 | 365 | |
| TOTAL THERAPY DAYS | 2,920 | 2,190 | 1,095 | 365 | 730 | 365 | |
| % NET REVENUE TO ABBOTT | 39% | 61% | 56% | 56% | 56% | 56% | |
| NET ABBOTT REVENUE/YR | 476,702 | 53,989 | 163,829 | 26,323 | 61,553 | 19,622 | 802,018 |
| | | | | | | | |
| VARIABLE OPERATING COSTS: | | | | | | | |
| MATERIAL | 48,443 | 7,424 | 5,344 | 548 | 2,511 | 1,916 | 66,186 |
| NON-ABT MATL, ABT &CO. | 21,433 | 1,095 | 41,490 | 1,511 | 7,234 | 456 | 73,219 |
| PATIENT NURSE START-UP | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| COMPOUNDING | 39,508 | 3,285 | 13,184 | 1,632 | 7,198 | 1,825 | 66,632 |
| DELIVERY | 20,440 | 3,833 | 7,665 | 1,460 | 3,650 | 1,825 | 38,873 |
| BILLING | 48,881 | 3,548 | 11,704 | 1,990 | 4,395 | 1,402 | 71,812 |
| FREIGHT | 2,453 | 1,489 | 460 | 82 | 124 | 307 | 4,925 |
| PUMP | 6,132 | 1,095 | 0 | 767 | 1,533 | 767 | 10,294 |
| SALES INCENTIVE | 4,767 | 540 | 1,638 | 263 | 616 | 196 | 8,020 |
| BAD DEBT | 4,767 | 540 | 1,638 | 263 | 616 | 196 | 8,020 |
| SUBTOTAL OPERATING COST | 196,824 | 22,849 | 83,126 | 8,586 | 27,876 | 8,890 | 347,951 |
| CONTRIBUTION MARGIN | 279,878 | 31,140 | 80,703 | 17,936 | 33,677 | 10,732 | 454,066 |
| % TO NET ABBOTT REVENUE | 59% | 58% | 49% | 68% | 55% | 55% | 57% |

OTHER:

Confidential

ABT-DOJ 326786
ABT280-0789 FL

:2-Dec-90

*(handwritten top right)* LOCKBOX? Volume Discounts last name? Address

## ABBOTT HOMECARE P&L

### MEDITECH, SANTA ANA, CA.
### PROPOSAL ANALYSIS

#### MANAGED VENTURE ANALYSIS

| | IPN | TEN | ANTI | CHEMO | PAIN MGT | HYDRATION | TOTAL |
|---|---|---|---|---|---|---|---|
| PROGRAM BILLINGS | 1,222,312 | 88,507 | 292,551 | 0 | 109,916 | 35,040 | 1,748,326 |
| | | | | | | | |
| NUMBER OF PATIENTS/YR | 8 | 6 | 3 | 0 | 2 | 1 | |
| THERAPY DAYS/PATIENT | 365 | 365 | 365 | 60 | 365 | 365 | |
| TOTAL THERAPY DAYS | 2,920 | 2,190 | 1,095 | 0 | 730 | 365 | |
| % NET REVENUE TO ABBOTT | 45% | 65% | 60% | 60% | 60% | 60% | |
| NET ABBOTT REVENUE/YR | 550,040 | 57,530 | 190,158 | 0 | 65,950 | 21,024 | 884,702 |
| | | | | | | | |
| VARIABLE OPERATING COSTS: | | | | | | | |
| MATERIAL | 48,443 | 7,424 | 5,344 | 0 | 2,511 | 1,916 | 65,638 |
| NON-RBT MATL, ABT ACE. | 21,433 | 1,095 | 41,490 | 0 | 7,234 | 456 | 71,708 |
| PATIENT NURSE START-UP | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| COMPOUNDING | 39,508 | 3,285 | 13,184 | 0 | 7,198 | 1,825 | 65,000 |
| DELIVERY | 20,440 | 3,833 | 7,665 | 0 | 3,650 | 1,825 | 37,413 |
| BILLING | 48,881 | 3,548 | 11,706 | 0 | 4,395 | 1,402 | 69,932 |
| FREIGHT | 2,453 | 1,489 | 460 | 0 | 128 | 307 | 4,833 |
| PUMP | 6,132 | 1,095 | 0 | 0 | 1,533 | 767 | 9,527 |
| SALES INCENTIVE | 5,500 | 575 | 1,902 | 0 | 659 | 210 | 8,847 |
| BAD DEBT | 5,500 | 575 | 1,902 | 0 | 659 | 210 | 8,847 |
| | | | | | | | |
| SUBTOTAL OPERATING COST | 198,291 | 22,920 | 83,652 | 0 | 27,964 | 8,918 | 341,745 |
| | | | | | | | |
| CONTRIBUTION MARGIN | 351,750 | 34,610 | 106,506 | 0 | 37,986 | 12,106 | 542,957 |
| | | | | | | | |
| % TO NET ABBOTT REVENUE | 64% | 60% | 56% | ERR | 58% | 58% | 61% |

OTHER: *(handwritten notes)* Abbott revenue is % of billing - at Usual and Customary $'s -

*(handwritten memo, lower portion)*
Merle - for your review comments - ASAP -
Here are some $'s for Cheryl Cos but -
Gat has said he will Sign an agreement on Friday -
So she is asking for Contract by Friday -
we will PROVIDE - All product & Equipment
Pharmacy Services
Reimbursement Services in their name
(No pass med -) if medical is involved
we would be shared expenses -)

OK w/ Merle - DJ.
OK to reduce 2 due Deposit up to 6.6.
5% on cost.

Confidential

ABT-DOJ 326787
ABT280-0790 FL



DEC 18 '90 07:50                                         P. 1

**CHERYL GRIFFIN**
**Area Business Manager**

**25002 Oxford Drive**
**Laguna Niguel, California   92677**

**714-363-9034**
**fax  714-363-9035**

TO: _Kathy Riddle_

AT: _____

DATE: _12|18|90_    PAGES (INC COVER SHEET): _2_

Confidential

ABT-DOJ 326788
ABT280-0791 FL

DEC 18 '90 07:51                                                    P.2

**% to Abbott(*)**

|              | TPN  | TEN  | AB   | CH   | PM   | HYD  |
|--------------|------|------|------|------|------|------|
| Proposal A:  | 37%  | 61%  | 58%  | 56%  | 56%  | 56%  |

* calculated as % of usual & customary patient charges

* risk pool for bad debt equal to 3% of amount collected from H-F, Inc.

* no volume discount

---

Proposal B:

|             | TPN  | TEN  | AB   | CH   | PM   | HYD  |
|-------------|------|------|------|------|------|------|
|             | 41%  | 68%  | 64%  | 62%  | 62%  | 62%  |

*billings (less bad debt)   H/F Responsible for ⅓ share of contractual allowances*

* calculated as % of ~~collections (excluding contractual allowances/discounts negotiated with IPAs, HMOs, etc by H-F Inc.)~~ — *amend section IIG (pg2) plus exhibit C*

* excludes Medicare and Medicaid patients

* no risk pool

* no volume discount — *delete section III. (pg 2)*

*12/18   HFF per phone conv. with doug b.*

Note:   These proposals are based on a projected "steady-state" patient volume of:

    TPN     8
    TEN     6
    AB      3
    CHEMO   1
    PM      2
    HYD     1

*Customer:   H and F Marketing, Inc*
*d/b/a Complete I.V. Care*
*P.O. Box 22605*
*Oklahoma City, Oklahoma   73123*

*pg 5 terms & conditions products line 5*
*"There may be an upcharge [to the patient] for use*
*Cash discount terms: applies to contractuals*

Confidential

ABT-DOJ 326789
ABT280-0792 FL

Complete Nursing Care
who will be providing
patient care services
+ who does carry insurance

One of the owners of; also owns

Sub contract Relationship

Complete I.V. Care

Chief Marketing — d/b/a

Abbott Contract w

Is Ashell Corporation

- Corp. Subcontracts For
- Provision of Services

Question:

12/A Qui

We accept Can' Insurance carried by Complete Nursing Care

to satisfy our insurance Requirements

Qui — Grouve carrier does not accepts our insurance requirements
@ whips his F's Abbott could be forced to longest
Nursing Care policy — U.C. Sam to change

Confidential

ABT-DOJ 326790
ABT280-0793 FL