UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,* Civil Action No. 05-11084-PBS | ) ) ) ) ) | |
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corp., et al.,* Civil Action No. 07-10248-PBS | ) ) ) ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR EXPEDITED CLARIFICATION
OF THE GOVERNING CASE MANAGEMENT ORDERS**

The United States and Relator believe that the express language in the Case Management Orders (CMOs) entered in these two cases, limiting the parties to one Rule 30(b)(6) deposition per state, means that the parties are limited to one Rule 30(b)(6) deposition per state. Defendants in the Dey and Roxane cases, on the other hand, have recently taken the position that they should be able to cross-notice any number of Rule 30(b)(1) depositions of state officials in state AWP cases, where the United States is not a party. Given (1) the limited time remaining to complete discovery in both cases; (2) the very specific limitation the Court imposed on state Medicaid depositions; and (3) Dey

and Roxane's positions on the issue, plaintiffs request that the Court immediately issue a "clarifying" Order, further reiterating the limitation already imposed in the Dey CMO, and clarified in the Roxane CMO: that "1 30(b)(6) deposition per state" means exactly that – one deposition per state.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Dey CMO

On June 14, 2007, the parties filed a Joint Motion for entry of a Case Management Order. (Docket # 4350). The parties proposed deposition limits by total hours for each side, and submitted a proposed CMO with blanks for hour limitations to be filled in by the Court. In the Joint Motion, plaintiffs argued for a limitation of 525 deposition hours for each side, while Dey argued it should be allowed 775 hours of depositions, "the same number as allotted to Abbott." Id. at 2, 6. The Court issued a CMO on June 22, 2007, rejecting both parties' positions and an hour limit on depositions. Instead, the CMO issued by the Court limited the parties to "one deposition per state as well as ten additional depositions per side." Docket # 4406 at 7. The Court indicated that Rule 30(b)(6) depositions can be up to 21 hours long, with up to 14 hours allowed for the noticing party. Id. at 3.

### The Roxane CMO

On August 31, 2007, the parties jointly moved for Entry of a Case Management Order. In preparing their proposed CMO, plaintiffs and defendants expressly followed the Dey CMO entered two months earlier. Plaintiffs and defendants reached agreement on every provision except one: "the allocation of and limit on total depositions of states participating in the Medicaid program." Docket #32 at 2. The parties included their position statements in the Joint Motion. Plaintiffs stated that they understood the Dey CMO to provide that the parties should cooperate and work out a

schedule for a single state 30(b)(6) deposition per state, and not that they could take one state deposition each. Id. at 3. Roxane disagreed, arguing that a single deposition per state would be "unworkable." Id. at 4. The Court entered the CMO on September 5, 2007, and made clear in Paragraph 15 that the parties would be allowed a single Rule 30(b)(6) deposition per state, along with 18 additional depositions "per side." Docket # 33 at 5. As in the Dey CMO, the Court allowed up to 21 hours per deposition. Id. at 3.

**The Present Issue**

Both Dey and Roxane cross-noticed some depositions of third party and government witnesses in the Abbott case. The parties reached an agreement that if defendants did not undertake extensive questioning at such cross-noticed depositions, the cross-noticed depositions would not "count" towards the total limit (10 per party in Dey, and 18 per party in Roxane). Similarly, the United States cross-noticed some depositions of third parties that were noticed in state cases where Dey and Roxane are parties. The United States sought confirmation from Dey and Roxane that if the United States did not engage in extensive questioning, the cross-noticed depositions would not count against the plaintiffs' total limit. In addition, in late February and early March, Roxane cross-noticed several depositions of state Medicaid officials whose depositions had been noticed by Abbott in the federal case.[1] The Abbott CMO did not limit the number of State Medicaid depositions, and plaintiffs and defendants attended all that occurred.

More recently, after discovery had closed in the Abbott case, Roxane served on April 30, May 4, and May 12, cross-notices of six state officials in Kentucky. On May 14, Dey served cross-

---

[1] Roxane cross-noticed depositions of state officials from Louisiana, Virginia, Indiana, California, Minnesota, Tennessee, and two from Maine.

notices of depositions of three Kentucky officials and two from Hawaii. The depositions were originally noticed in the respective state cases; all were scheduled for separate days, and some were cross-noticed on very short notice.[2] Moreover, the United States already had served a cross-notice of a Rule 30(b)(6) deposition of the Hawaii Department of Human Services, a deposition which took place May 1-2,[3] nearly two weeks before Dey served its two Rule 30(b)(1) cross-notices in the Hawaii state case.

Counsel for the United States informed counsel for Dey and Roxane that it considered the cross-notices to violate the language and intent of the CMO, in that the Court had made clear that the parties were limited to one deposition per state. The United States informed Dey and Roxane that it would consider these cross-notices to "count" against their deposition limits. Dey and Roxane indicated they believed plaintiffs' position was inconsistent with the parties' previous agreement that cross-notices of depositions in other cases, so long as the questioning was limited, would not "count," and that they believed there are no limits on cross notices for depositions in other AWP litigation in any event. Plaintiffs pointed out that the previous agreement concerned depositions in cases in which the United States and/or Roxane and Dey were already parties, and the question had been whether the deposition would count against the total limit (of ten or eighteen depositions), rather than the limit imposed on State Medicaid depositions. Here, by contrast, Roxane and Dey

---

[2] For example, Roxane's cross-notice of the deposition of Barbara Utter, an official of the Kentucky Department for Medicaid Services, was served on May 12, for a deposition scheduled May 15. Dey's cross-notice of Hawaii's Charles Duarte was served on May 14 for a deposition scheduled one week later, May 21. The United States is not a party in the state actions, and so obviously did not receive notice of the original deposition notices.

[3] Counsel for both Dey and Roxane attended. The original Rule 30(b)(6) notice had been issued by the defendants in a Hawaii state court AWP case, and included 28 topics of inquiry.

were issuing a flurry of cross-notices (six in Kentucky, for example) in cases where the United States is not a party and so would not otherwise be required to attend. Moreover, plaintiffs asserted, for state Medicaid agencies, the parties were clearly limited to a single Rule 30(b)(6) deposition.[4] The parties were unable to reach agreement.

## ARGUMENT

Defendants' position -- that they may cross-notice an unlimited number of depositions of state Medicaid officials -- would demand an effort that could potentially engulf the entire remaining discovery period in both cases. The six Kentucky depositions, for example, were scheduled to take place on six different days -- five in two different Kentucky cities, and one in Idaho. Even assuming attendance by telephone, instead of in person, it would still consume substantial time on depositions where the United States was not consulted on the schedule or location, was not given the notice contemplated by the CMOs, and yet would be required to be present to protect the United States' interests during questioning by Dey and/or Roxane.

That defendants recognize the time constraints on discovery, and the one-per-state deposition limit, is evident in the Consent Motion for an Extension of Discovery Deadline recently filed by Dey. As grounds for seeking an extension, Dey explained that it had "attended or participated in" more than 50 depositions in the Abbott case, and "it would have been unreasonable for the Parties to simultaneously schedule the 10 general depositions allotted to the Parties . . . and the fifty state depositions allowed under the Dey CMO" at the same time. Docket # 5285 at 2. Despite such

---

[4] In addition, both CMOs expressly required that for Rule 30(b)(6) depositions the parties "shall confer regarding a mutually convenient time and place and the estimated length of the deposition," and that for cross-notices of depositions in other AWP cases, the party seeking to cross-notice should give notice as soon as practicable "preferably not later than two weeks from the date of the scheduled deposition." Docket # 4406 at 4-5; # 33 at 4-5.

explicit recognition of the one-per-state limit, and of the logistical difficulties of scheduling and coordinating the number of depositions expressly permitted under the CMO, defendants apparently propose to add a significant additional burden to discovery -- by cross-noticing multiple Rule 30(b)(1) depositions in state cases.  Were Roxane and Dey to cross-notice just four 30(b)(1) depositions, as they argue they have the right to do, in only fifteen state or county cases,[5] the parties would have to commit 60 days, or twelve weeks' effort, just to attendance and questioning at those "extra" depositions.   While defendants have not indicated they intend to cross-notice that many, they have argued that there is no limit to the cross-notices they can issue, and so it could be much more.

      Limiting the discovery burden on the parties as well as state Medicaid agencies appears to be one consideration of this Court in imposing the limits it did in both CMOs.  Defendants' position that they may issue an unlimited number of cross-notices turns that consideration on its head.  A clarifying limit from this Court is needed. The United States respectfully requests a clear ruling by the Court clarifying the deposition limits set forth in the CMO.

---

[5] Plaintiffs believe there are at least 42 state or county cases, involving approximately 27 separate states.

Respectfully submitted,

GREGORY G. KATSAS
ACTING ASSISTANT ATTORNEY GENERAL

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:  /s/ George B. Henderson, II
 /s/ Barbara Healy Smith
GEORGE B. HENDERSON, II
BARBARA HEALY SMITH
JEFFREY FAUCI
Assistant U.S. Attorneys
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3263

JOYCE R. BRANDA
DANIEL R. ANDERSON
LAURIE A. OBEREMBT
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C. 20044
(202) 514-3345

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above "Memorandum in Support of Motion for Expedited Clarification of the Case Management Orders" to be served on all counsel of record via electronic service by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ George B. Henderson, II
GEORGE B. HENDERSON, II
Dated: June 2, 2008           Assistant U.S. Attorney