UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.,*<br>CIVIL ACTION NO. 06-11337-PBS | |

**MEMORANDUM BY THE UNITED STATES RELATING TO
*IN CAMERA* SUBMISSION OF DOCUMENTS PERTAINING TO ABBOTT
DRUGS PURSUANT TO THE COURT'S ORDER OF NOV. 9, 2008**

The United States files this memorandum concurrently with its submission of 21 documents for *in camera* review by the Court. The 21 documents relate to studies by the Office of Inspector (OIG) of the Department of Heath and Human Services (DHHS) and fall within one of the categories of material for which *in camera* submission is required under Judge Saris's Orders resolving challenges by Abbott to the Government's assertion of the deliberative process privilege for documents withheld from production. Although the relationship is attenuated, the documents "relate to [the Government's] knowledge of a 'spread' for Abbott's drugs at issue in this litigation ..." *See Order Re: Objections to August 13, 2007 Order by Magistrate Judge Bowler*, Nov. 9, 2007 (Dkt No. 4885) at 1; *see also* Electronic Endorsement by J. Saris re. Dkt. 5103 dated March 12, 2008 (same). The Court's Order of November 9 also directed the United States to explain why any document it has withheld should not be produced to Abbott under the "balancing test" applicable to documents withheld under the deliberative process privilege.

On December 4, 2007, the United States submitted a memorandum applying the balancing test to documents that had been withheld from productions which occurred prior to the date of that briefing. Today's memorandum applies the privilege balancing test to documents which were withheld from productions that were subsequent to December 2007.

## Background - The Documents at Issue

The documents currently being submitted for review are very similar to one of the categories of material submitted to the Court in December 2007 in that they relate to reports by OIG-DHHS. The reports are entitled "Cost of Dialysis-Related Drugs" (A–01-91-00526)[1] and "The Impact of High-Priced Generic Drugs on Medicare and Medicaid" (OEI-03-97-00510).[2] Neither report specifically mentions Abbott. The first report, relating to dialysis drugs, covers 35 products, including Vancomycin, which is a drug at issue in this litigation. Vancomycin was also one of the products referenced by the second OIG study noted above relating to high-priced generic drugs. Accordingly, the United States is submitting documents relating to both reports for *in camera* review. All of the material submitted for review involves draft versions of documents and contain comments and recommendations about the content and language that

---

[1] Documents relating to this report are behind tab "One" in the *in camera* submission and bear the following Bates numbers: HHD946-0017 thru 0056 ; HHD946-0058 thru 0069; HHD946-0070 thru 0087; HHD946-0088 thru 0103; HHD946-0104 thru 0116; HHD946-0122 thru 0138; HHD946-0160 thru 0180; HHD 946-0181 thru 0186.

[2] Documents relating to this report are behind tab "Two" in the *in camera* submission and bear the following Bates numbers: HHD911-1479 thru 1500; HHD911-1501 thru 1527; HHD911-1528 thru 1574; HHD911-1580 thru 1607; HHD911-1711 thru 1730; HHD911-1762 thru 1803; HHD911-1804 thru 1828; HHD911-1829 thru 1842; HHD911-1843 thru 1848; HHD911-1961 thru 2002; HHD911-2058 thru 2085; HHD911-2087 thru 2108; HHD911-2127 thru 2142 (identical duplicates of the foregoing documents are not being submitted *in camera*, although they have been logged by the United States).

would be included in the final versions of the OIG reports. The comments in the marginalia do not pertain specifically to prices for Vancomycin. Abbott already has the final versions of the reports, the final comments from CMS to OIG on the reports, as well as the factual information contained in the OIG work papers associated with the reports.

Given that Abbott has all this material – which includes pricing information collected during the studies – defendant's need for the documents submitted for review is virtually non-existent in comparison to the Government's interest in protecting the integrity of its deliberative processes. Any need Abbott may set forth for these documents is outweighed by the Government's interest in fostering candid internal discussions both with regard to the critique of agency programs and the public release of the findings and recommendations contained in the reports. Accordingly, the United States' privilege assertion for the material submitted for *in camera* review should be upheld.

### Argument

After concluding that the deliberative process privilege has been properly invoked, as the Court has done here, a court must balance the public interest in protection of the deliberative process against the particularized need for the information as evidence in the case before it. *See Comm. for Nuclear Responsibility, Inc. v. Seaborg,* 463 F.2d 788, 791 (D.C. Cir. 1971); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 327 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967); *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 294 (N.D. W. Va. 1992). To compel disclosure, the requesting party must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender." *Carl Zeiss*, 40 F.R.D. at 328-29. When

balancing the Government's interest in protecting its deliberative processes against an opponent's need for the evidence, the following factors should be considered:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp 577, 583 (E.D.N.Y. 1979) (citations omitted).

An application of these factors to the documents submitted by the Government redounds heavily in favor of nondisclosure. Indeed, courts routinely uphold the deliberative process privilege for draft versions of reports similar to those at issue here. *See American Fed. of Govt. Employees v. U.S. Dept. Of HHS*, 63 F.Supp. 2d 104 (D. Mass. 1999); *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1279 (11th Cir. 2004).

Factor One - Relevance of the Protected Information

The draft documents submitted for in camera review do not contain relevant evidence. To the extent the factual information about drug prices is contained in the documents – that information has been released via the production of other documents, including the final versions of the reports and associated documents. Any assessment of the relevance of the material that the United States has submitted for *in camera* review must be evaluated in the context of the information that the Government has already produced to defendants in this case.

The only additional information Abbott would obtain through the release of the privileged materials is the internal suggestions, proposed edits, and comments of agency staff on various draft iterations of the reports and associated documents. None of the suggestions, edits, or comments represents a final agency decision relating to payment policy for pharmaceutical

products. As the First Circuit held in *United States v. Lachman*, any interpretive issue relating to a statute or regulation is resolved through reference to the *official public record*. 387 F.3d 42, 54 (1st Cir. 2004). Any issue about Governmental intent, whether it be in changing a policy or refraining from a policy change, is not resolved by reference to the deliberations of individuals. Moreover, the Court has already resolved the issue of the Government's intent in using an AWP-based payment system for pharmaceuticals. *See In Re Average Wholesale Price Litig.,* 460 F. Supp. 2d 277, 278 (D. Mass. 2006). In this situation, proposed edits, marginalia, and the like on draft versions of OIG documents are irrelevant to any legitimate issue in this case.

Factor Two - Availability of Other Evidence

By withholding a select set of draft documents from the OIG, the United States has not deprived Abbott of factual information relating to what the Government knew about Abbott's real prices for its drugs. Documents reflecting the Government's knowledge of Abbott's actual prices have been produced. Final versions of OIG's reports, as well as the final CMS comments on the reports and OIG's responses to CMS's comments have been publicly available since long before this lawsuit was filed. The United States has also produced non-privileged internal OIG work paper files for both reports. Abbott extensively deposed witnesses from OIG during the previous phase of discovery in this case. Because Abbott has been given the factual information behind the reports, it cannot establish any legitimate need for the draft versions of the documents. *American Fed. Of Govt. Employees v. U.S. Dept. of HHS*, 63 F.Supp. 2d at 109 (upholding deliberative process privilege where "none of the withheld documents, including the draft reports, contain[ed] any factual information . . . that [was] not also included in the final . . . report"). To the extent that Abbott argues that what OIG knew about the prices for the subject

drugs when preparing these reports is relevant, the United States has already produced a substantial quantum of material on that issue.

Factors Three and Four  - Seriousness of the Issues and Government's Role in Case

The United States recognizes that its allegation that Abbott abused the system in place to determine payment amounts under Government healthcare programs involves a claim of the utmost seriousness.  The Government does not concede however, that the arguments made by Abbott to invade the deliberative process privilege can survive even facial scrutiny and can be deemed "serious."  Abbott states that it requires the information reflected in internal agency documents to demonstrate that the *amicus* brief filed by the Government relating to the legal issue resolved by the Court's November 2006 summary judgement ruling contained factual misstatements and that the Government mislead the Court.  Judge Saris, however, construed the term "AWP" based on its plain language, not on the basis of what any agency employee personally thought about the term.  To the extent Judge Saris considered other canons of regulatory and statutory construction, her decision adhered to the principles set out in *Lachman, supra,* and looked only to the official record to analyze regulatory intent.  Abbott's argument regarding its purported need for the material is not serious.

Factor Five - Future Effect on Government Employees

As established by the declarations by the Government officials who asserted the deliberative process privilege for the type of documents at issue and as reflected in case law directly on point, there is a real harm to the Government that would result from the release of these materials.  The Declaration of Robert Vito, of OIG, describes the harm that would result from the compelled release of draft OIG documents.  Mr. Vito sets forth the nature of the

inspection work conducted by OIG, and discusses the importance of candid and internal discussion, deliberation, and analysis to the process of conducting and issuing reports. *See* Declaration of Robert A. Vito*,* ¶ 20  (Ex. 4 to Dkt. No. 4076).  A critical part of OIG's work occurs while documents are being drafted, when agency staff engage in internal deliberation about a given report's conclusions, recommendations, and wording.  *See id.* at ¶¶ 12-14.  Mr. Vito stated that "if [his] staff or others within the OIG expected that their comments, criticisms, suggestions, or proposed edits made during [the] report process to be publicly displayed in the context of a lawsuit, this would stifle much of the very necessary candid dialogue among us.  The OIG's work would suffer as a result, to the detriment of HHS programs and the public." *Id*. at ¶ 24.

At least one court has recognized the need to protect, via the deliberative process privilege, the communications and internal workings specifically of offices of inspectors general. *See Nat'l R.R. Passenger Corp*., 376 F.3d at 1279 (upholding deliberative process privilege for internal work papers generated by Amtrak's Office of Inspector General in connection with financial and performance audits).  Moreover, Judge Saris upheld the deliberative process for draft versions of a survey report by a government agency in *American Fed. of Govt. Employees.* 63 F.Supp. 2d 104.  Moreover, both the Magistrate Judge and the presiding Judge in this case have recognized the validity of the Government's concerns given that the deliberative process privilege for the bulk of the documents on OIG's logs has been upheld, both initially by the Magistrate, and by Judge Saris over Abbott's objections.

Given that Abbott has no need for drafts of OIG documents in the context of the issues which are truly relevant in this case, the potential chilling effect that the release of such documents would have on OIG's work outweighs Abbott's interest in disclosure.

## Conclusion

Based on the foregoing, the United States respectfully requests that the Court should not require the United States to produce the 21 documents submitted *in camera* concurrently with this memorandum.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | JEFFREY S. BUCHOLTZ<br>ACTING ASSISTANT ATTORNEY GENERAL |

/s/ George B. Henderson, II  
George B. Henderson, II  
Assistant U.S. Attorney  
John Joseph Moakley U.S. Courthouse  
Suite 9200, 1 Courthouse Way  
Boston, MA 02210  
(617) 748-3398  
(617) 748-3272  

R. ALEXANDER ACOSTA  
UNITED STATES ATTORNEY  
SOUTHERN DISTRICT OF FLORIDA  

/s/ Mark A. Lavine  
Mark A. Lavine  
Ana Maria Martinez  
Ann St.Peter-Griffith  
Special Attorneys for the Attorney General  
99 N.E. 4th Street, 3rd Floor  
Miami, FL  33132  
Phone:  (305) 961-9003  
Fax: (305) 536-4101  

/s/ Justin Draycott  
Joyce R. Branda  
Daniel R. Anderson  
Renée Brooker  
Justin Draycott  
Gejaa T. Gobena  
Rebecca Ford  
Civil Division  
Commercial Litigation Branch  
P. O. Box 261  
Ben Franklin Station  
Washington, D.C.  20044  
Phone:  (202) 307-1088  

Dated: June 3, 2008.

## CERTIFICATE OF SERVICE

     I hereby certify that I have this day caused an electronic copy of the above "MEMORANDUM BY THE UNITED STATES RELATING TO DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW PURSUANT TO THE COURT'S ORDER OF NOVEMBER 9, 2007" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                               /s/ Justin Draycott

Dated: June 3, 2008                                      Justin Draycott