UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) |
| | MDL No. 1456 |
| | Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,* CIVIL ACTION NO. 05-11084-PBS | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER RELATING TO THE REQUESTS BY THE DEY DEFENDANTS FOR DEPOSITIONS UNDER RULE 30(b)(6)**

The United States of America, through its undersigned counsel, respectfully moves this Court to issue an order pursuant to Federal Rule of Civil Procedure 26(c) prohibiting defendants Dey, Inc., Dey L.P., Inc. and Dey L.P. ("Dey"), from subjecting government witnesses to deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) on fifteen of Dey's sixty-four (64) topic and 25 sub-topic areas.  *See* Exhibit A.  The topics, addressed below, seek privileged and irrelevant information, are unreasonably broad and burdensome, and/or seek information that should be obtained by other means.  Fed. R. Civ. P. 26(b)(2)(C).

I.  **BACKGROUND**

   A.   **The United States' Case**

The United States filed suit against Dey under the False Claims Act ("FCA") and the common law asserting that from at least 1992 through 2004 for the Medicare program and to the present for the Medicaid program, Dey reported false, fraudulent and inflated prices on three generic drugs (albuterol, cromolyn sodium and ipratropium bromide) ("Subject Drugs") to

pricing compendia knowing that Medicare and Medicaid relied upon those reported prices to set reimbursement rates for those drugs, all while selling the drugs to customers at far lower prices. The United States alleges that Dey marketed the government-funded "spread" between the reimbursement amounts calculated with the false price and the real price paid by its customers to increase sales of the drugs, thereby boosting Dey's profits.

### B. Extensive Discovery Provided by the United States

Both in connection with the related case against Abbott and in response to Dey's own discovery requests, the United States has provided Dey with extensive discovery from the Centers for Medicare & Medicaid Services ("CMS"), including: agency regulations and policies; broad document production showing CMS's positions and communications; CMS's responses to Office of Inspector General ("OIG") reports; CMS's verified responses to interrogatories; Rule 30(b)(1) deposition testimony of numerous witnesses for over a year, including three former CMS administrators; Rule 30(b)(6) deposition testimony on various topics; and Rule 30(b)(6) testimony of Medicare carriers.[1]  Furthermore, the United States has informed Dey that it will provide Rule 30(b)(6) deposition testimony on several of its topics.  The United States has been more than reasonable in the discovery it has provided to Dey and now seeks protection from the Court in connection with fifteen of Dey's requests that are improper under the Federal Rules of Civil Procedure.

---

[1] The United States also has provided Dey with extensive discovery from OIG, including a voluminous document production of internal work papers, depositions and verified interrogatory responses, the latter in response to discovery by Abbott.

C.   **Dey's Request for 30(b)(6) Depositions**

On April 11, 2008, Dey notified the United States that it was seeking witnesses pursuant to Rule 30(b)(6) to testify regarding 64 topics (and 25 subtopics). Following several meet and confers, the United States has determined that it must seek a protective order on the following fifteen topics: 29, 32-38, 40-42, 51, 60-62.

1. **OIG Reports on AIDs Drugs and the Medicare Part D Program**

Topic No. 29 concerns a July 2001 report on cost containment efforts in connection with AIDs drugs, none of which are at issue in this litigation. The report was prepared by the Office of Evaluation and Inspection (OEI), of the Office of Inspector General (OIG), of the Department of Health and Human Services (HHS). Dey seeks testimony regarding "[t]he investigation, preparation, drafting, approval and circulation" of the report. Topic No. 51 seeks testimony regarding CMS's comments on a January 2008 OIG report dealing with the Medicare Part D program. There are no allegations in this case against Dey with respect to the Medicare Part D program, and the report does not focus on specific drugs or manufacturers. Both of these reports are publicly available.

2. **Seal Extensions and the Government's Investigation**

Topic No. 32 seeks testimony regarding the filing of seal extensions in the original FCA case filed by relator in the United States District Court for the Southern District of Florida, "including but not limited to the reasons given for the delay, the number of extensions granted, the legal bases for those extensions, and the United States' conduct of its investigation into the allegations in the *qui tam* complaint." Topic No. 33 seeks identical testimony regarding the

3

filing of seal extensions in the FCA case filed by relator in this district. Topic No. 40 similarly seeks information regarding the United States' investigation prior to filing suit against Dey. Topic No. 42 also seeks testimony regarding the United States' investigation in the guise of asking when the United States learned of Dey's fraud.

### 3. Contentions Regarding False and Fraudulent Conduct

Topic No. 34 seeks testimony concerning every false or fraudulent statement or action by Dey "that relate in any way to Your claims in the Complaint . . . ." Topic No. 35 similarly seeks testimony regarding all instances of Dey actively promoting the spread. Topic No. 36 seeks testimony on the facts forming the basis for the government's allegation that Dey knew that its false price reporting and marketing efforts would cause customers to submit claims for fraudulently inflated reimbursement. Topic No. 37 seeks the same testimony regarding Dey's marketing of the spread as cited in topic no. 35, but in more detail, such as the name of every employee who marketed the spread, the provider to whom it was marketed, the drug marketed, the time, place and content of the alleged marketing, the provider's subsequent purchase of any drugs, and "all evidence that supports or refutes Your contention that the Provider purchased the product because of the spread between acquisition cost and reimbursement, as opposed to some other reason."

Topic No. 38 seeks testimony regarding Dey's reporting of prices on an annual basis and the falsity of these prices. Topic No. 41 asks for testimony identifying the prices Dey "should have reported" to the compendia, Medicare Part B or Medicaid. Topic No. 60 seeks testimony regarding whether or not the United States contends that the usual and customary price submitted by any provider to Medicare or Medicaid for any Dey drug at issue is false or fraudulent.

4.   **The 2003 OIG Compliance Program Guidelines for Pharmaceutical Manufacturers**

Topic No. 61 seeks testimony regarding "[t]he drafting, approval, circulation, and publication" of the 2003 OIG Compliance Program Guidelines for Pharmaceutical Manufacturers. Topic No. 62 seeks testimony regarding the definition of AWP as used in the OIG Compliance Guidelines.

II.   **ARGUMENT**

Federal Rule of Civil Procedure 30(b)(6) provides as follows:

Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

The purpose of Rule 30(b)(6) depositions, as explained by the Advisory Committee, is:

It will reduce the difficulties now encountered in determining, prior to the taking of the deposition, whether a particular employee or agent is a 'managing agent.' . . . It will curb the "bandying" by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it. . . . The provision should also assist organizations which find that an unnecessarily large number of their officers and agents are being deposed by a party uncertain of who in the organization has knowledge.

Fed. R. Civ. P. Rule 30(b)(6) advisory committee's note (internal citations omitted).

For the reasons explained below, the fifteen topics listed above are highly objectionable

and improper. There are multiple and independent adequate grounds upon which the Court should issue an order protecting the United States from designating a witness. These grounds include the fact that the topics are not described with the particularity required by Rule 30(b)(6), they seek information that is irrelevant to any matter at issue in this case, they are subject to a privilege, they are improper Rule 30(b)(6) topics, and they are unreasonably burdensome.

### A.     Dey's Rule 30(b)(6) Topics Seek Irrelevant Information

A party is only entitled to discover information that is "relevant to the subject matter" of the case or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). As a consequence, when the subject of a discovery request shows the "irrelevancy of proposed discovery," the district court may issue a protective order barring the irrelevant discovery. *E.g., Smith v. Dowson,* 158 F.R.D. 138, 141 (D. Minn. 1994).

Certain of Dey's Rule 30(b)(6) topics seek deposition testimony that is irrelevant and could not lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Topic No. 29 concerns an HHS/OIG/OEI July 2001 report on cost containment efforts in connection with AIDs drugs. There are no AIDs drug at issue in this litigation. As this Court is well aware, the United States has produced countless other HHS/OIG reports on drugs that are at issue in this litigation. The United States has further produced the workpapers for those reports and put up numerous OIG witnesses to testify concerning the reports. There is a significant burden associated both with producing the workpapers and preparing witnesses to testify. There is no justification for imposing such a burden on the United States where the report at issue does not even concern the drugs being litigated.

Topic No. 51 bears a similarly attenutated relationship to this action. Topic No. 51 seeks

testimony regarding CMS's comments on a January 2008 OIG report dealing with the Medicare Part D program.  The Part D program came into existence with the passage of the Medicare Prescription Drug Improvement and Modernization Act of 2003.  The United States has made no allegations of fraud against Dey in connection with the Medicare Part D program.  This case is focused on Dey's defrauding of the Medicare Part B program, a topic that is not discussed in this report.  Again, there is no justification for imposing on the United States the substantial burden of preparing a Rule 30(b)(6) deponent on a report that is completely irrelevant to this case.

Topic No. 61 seeks testimony regarding "[t]he drafting, approval, circulation, and publication" of the 2003 OIG Compliance Program Guidelines for Pharmaceutical Manufacturers.  Topic No. 62 seeks testimony regarding the definition of AWP as used in the OIG Compliance Guidelines.  The Guidelines speak for themselves regarding the agency's position on this topic.  As the United States advised Dey during a meet and confer on this issue, the Office of Counsel to the IG was primarily responsible for drafting these guidelines.  Leaving aside the deliberative process privilege issues discussed below, the identity of (1) the agency lawyer who wrote the draft guidelines, (2) the agency official who issued the final approval for the Guidelines, (3) the agency employees who received the draft guidelines, and (4) the agency official who directed publication of the Guidelines is utterly irrelevant to this fraud case.  Topic No. 62 fails the same relevancy test.  Again, the Guidelines contain a definition of AWP that speaks for itself.  This Court has already ruled on its interpretation of AWP.  Leaving aside the privilege issues here, there is no possible purpose to be served from requiring an agency employee to testify regarding a definition set forth in an official agency publication.  *See United States. v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004) ("agency interpretations [of regulations] are

only relevant if they are reflected in public documents").

Finally, there is a broader relevance issue here that goes to Dey's assertions that its defense in this case will focus on what government agencies may have known about the accuracy of the reported drug prices used to set reimbursement amounts under Medicare and Medicaid. It is well established that government knowledge of the falsity of a defendant's claim is not generally a defense under the FCA. *See, e.g., United States ex rel. Schwedt v. Planning Research Corp.,* 59 F.3d 196, 199 (D.C. Cir. 1995); 31 U.S.C. § 3729(a), (b).

In certain, limited circumstances, evidence of government officials' knowledge and approval of a defendant's conduct may be relevant to the question of whether the defendant possessed the requisite scienter under the FCA. To negate scienter under the FCA, Dey must show that (1) the government was fully informed by Dey concerning its creation and use of AWP spreads for its own marketing purposes and (2) the government approved of the specific conduct at issue. *See* Judge Saris's Memorandum and Order in *In re Pharm. Indus. Average Wholesale Price Litig.*, 478 F. Supp. 2d 164, 174 (D. Mass. 2007) (denying motion to dismiss California False Claims Act claim, noting that government approval of the particulars is necessary to negate scienter). The Court cited this same holding when it denied Dey's motion to dismiss the government's claims here. *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 401 (D. Mass. 2007); *see also United States ex rel. Tyson v. Amerigroup*, 488 F. Supp. 2d 719, 729-730 (N.D. Ill. 2007). There is, however, no evidence that the government was fully informed and approved of Dey's fraudulent prices on the Subject Drugs during the relevant period. Moreover, any Rule 30(b)(6) deposition testimony that Dey were to acquire now through discovery would have no bearing on defendant's scienter and is therefore irrelevant.

In sum, to the extent the topics above appear to seek evidence relevant to Dey's considerably broader (and legally incorrect) view of the government knowledge defense, such requests are irrelevant on that basis as well.  The extent to which the government may have been aware during that time period of allegations of inflated pricing on prescription drugs generally, or of false AWPs on drugs reimbursed by Medicare and Medicaid more specifically, is irrelevant to the question of whether Dey was aware at the time of the falsity of its prices.

### B. Dey's Rule 30(b)(6) Topics Seek Privileged Information

A party is not entitled to obtain discovery of information that is privileged.  Fed. R. Civ. P. 26(b)(1).  With regard to deposition discovery, the district court must quash a subpoena that "requires disclosure of privileged or other protected matter."  Fed. R. Civ. P. 45(c)(3); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001).  Although unique to the government, the deliberative process privilege may be invoked to protect against "any discovery tool, whether by interrogatory or depositions or otherwise."  *Federal Trade Comm'n v. U.S. Grant Res.*, LLC, 2004 WL 1444951 at *9 (E.D. La. 2004).  As a result, courts routinely uphold the invocation of the deliberative process privilege to prevent depositions of Government officials.  *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 13 (D.D.C. 1993); *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 293 (N.D. W.V. 1992); *Jeff D. v. Kempthorne*, 2006 WL 2540090 at *2 (D. Idaho 2006); *U.S. Grant Res.*, 2004 WL 1444951 at *9.  Indeed, as courts have recognized, the deliberative process privilege must apply to protect against disclosure of privileged information through deposition discovery in order to prevent a party from "obtaining through the back door" what it is "not entitled to acquire through the front."  *U.S. Grant Resources*, 2004 WL 1444951 at *9.

A number of Dey's Rule 30(b)(6) topic descriptions call for testimony that would reveal matters protected by the attorney-client privilege, work product doctrine, deliberative process privilege and/or common interest privilege. Dey has made no attempt to make any showing to overcome any of these protections. *See, e.g., In re Grand Jury Subpoena Dated November 8, 1979,* 622 F.2d 933, 936 (6th Cir. 1980) (on the standard to show the protections of the work product doctrine was waived.) The topics listed below, it should be noted, are improper on other grounds as well, such as irrelevance to any matter at issue in this case and undue burden.

Topic Nos. 32 and 33 seek testimony regarding the filing of seal extensions in the FCA cases filed by relator in the United States District Court for the Southern District of Florida and this District, "including but not limited to the reasons given for the delay, the number of extensions granted, the legal bases for those extensions, and the United States' conduct of its investigation into the allegations in the *qui tam* complaint." Topic Nos. 40 and 42 similarly seek information regarding the United States' investigation prior to filing suit against Dey. Although Dey did not specify the governmental agency from which it sought testimony, the United States must assume that it seeks such testimony from HHS, and not the Department of Justice.

Pursuant to this Court's order, the United States provided Dey with copies of its seal extension requests in both the FCA cases.[2] These pleadings speak for themselves regarding the Department of Justice's basis for seeking seal extensions and there is no justification for seeking testimony regarding such pleadings. It is equally improper to seek testimony regarding the United States' investigation prior to filing suit. Such a request invariably entails information

---

[2] Pursuant to the Court's order, the pleadings were redacted to ensure that information concerning non-Dey defendants was maintained under seal.

...

regarding the communications between the Department of Justice and HCFA/CMS or its agents; such communications are at the heart of the attorney-client privilege and work product doctrines. *See, e.g., F.D.I.C. v. Ogden Corp.,* 202 F.3d 454, 460 (1st Cir. 2000) (on the attorney-client privilege); *United States v. One Tract of Real Property*, 95 F.3d 422, 427 (6th Cir. 1996) (applying work product doctrine to work of government attorneys); Fed. R. Civ. P. 26(b)(3).

The courts have consistently held that inquiries into an adversary's investigation are not proper subjects for discovery. *See Massachusetts v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 154 (D. Mass.1986) ("agree[ing] with the line of cases beginning with the *Uinta Oil* case in 1964 and continuing through the *Board of Education of Evanston TP* case in 1984 which hold that interrogatories which seek the names of persons interviewed by an adverse party's attorney together with the dates and places of such interviews are improper"); *Board of Education of Evanston TP v. Admiral Heating*, 104 F.R.D. 23, 32 (N.D. Ill. 1984)(denying a motion to compel the names of persons interviewed because "to tell plaintiffs whom defendants have interviewed, where and when such interviews took place and whether or not a record was made--is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defense lawyers' preparation of their case (and thus their mental processes")); *Uinta Oil Refining Co. v. Continental Oil Co.*, 226 F.Supp. 495, 506 (D. Utah 1964) (denying request for "the names of all persons from whom plaintiffs, or their officers, employees or agents, have taken or requested statements [which] in and of itself is not a proper subject for discovery").[3]

---

[3] *See also E.E.O.C. v. Collegeville/Imagineering Ent.*, 2007 WL 1089712, at *1-2 (D. Ariz. April 10, 2007) ("where a party does not seek to learn of witnesses with knowledge about the case, and instead seeks to learn who has been contacted by opposing counsel, work product concerns arise

Furthermore, the FCA confers on the Attorney General discretion in connection with his obligation to determine how to diligently investigate various allegations of fraud brought to his attention. 31 U.S.C. § 3730(a); *see* 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 834 (1985) (absent an intent to circumscribe agency enforcement discretion and defined limits of that discretion, courts should not review discretionary agency law enforcement action). The investigatory subsection of the False Claims Act, 31 U.S.C. § 3730(a) does not confer any rights on a *qui tam* relator, much less a defendant, to enforce or challenge the actions taken pursuant to § 3730(a). Such an approach is consistent with the Government's conduct of fraud investigations that are not commenced as *qui tam* actions; in such situations, the investigative determinations are made by the government alone, and the government is not obligated to provide even non-privileged information about its investigations to outside parties.

In addition, as this Court has consistently ruled here, evidence that reflects the process of agency decision-making is shielded from discovery by the deliberative process privilege. *See*

---

[because] [s]uch discovery requests seek to track the steps of opposing counsel and their witness interview choices [and thus] focus on the actions of lawyers rather than the knowledge of witnesses"); *Lamer v. Williams Communications, LLC*, 2007 WL 445511, at *2 (N.D. Okla. Feb. 6, 2007) ("even mere disclosure of the names of non-party witnesses Plaintiff's counsel has interviewed would represent an invasion of counsel's mental impressions and strategies"); *In re Veeco Instruments, Inc. Securities Litig.*, 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007) (denying motion to compel where "[d]efendants essentially seek the identity of witnesses interviewed by counsel for the Lead Plaintiffs and relied upon in the preparation of the complaint"); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555, at *4 (N.D. Cal. Jun 21, 2005) ("parties may be compelled to disclose the identity of persons having knowledge, but may not be forced to disclose which of these individuals have in fact been interviewed"); *Ferruza v. MTI Technology*, 2002 WL 32344347, at *3 (C.D. Cal. 2002)("Although the identity and location of witnesses that may have knowledge of any discoverable matter is not protected, the identity of witnesses interviewed by opposing counsel is protected."); *Appeal of Hughes*, 633 F.2d 282, 289 (3d Cir. 1980) ("Focusing on the list of persons interviewed, we think it is plain that such a list . . . would appear to fall within the definition of work product..."); 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2028 (2007) ("Surely an interrogatory asking a party to identify all persons interviewed would contravene work product").

*NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 151 (1975) (interpreting exemption (b)(5) of the Freedom of Information Act). Its purpose is to "prevent injury to the quality of agency decisions," *id.*, and is "predicated on the recognition that 'the quality of agency decisionmaking would be seriously undermined if agencies were forced to operate in a fishbowl.'" *Dow, Jones & Co. v. Department of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990) (quoting *Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc); *see also Providence Journal Co. v. Dep't of Army,* 981 F.2d 552, 557 (1st Cir. 1992); *North Dartmouth Properties, Inc. v. United States Dep't of Housing and Urban Devel.*, 984 F. Supp. 65 (D. Mass. 1997).

To the extent these topics seek information regarding the United States' communications with relator during the course of the investigation, the information sought is also protected by the common interest privilege. *See United States ex rel. Purcell v. MWI Copr.,* 238 F.R.D. 321, 325 (D.D.C. 2006); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) ("[P]ersons who share a common interest in litigation should be able to communicate with each other to more effectively prosecute or defend their claims"); *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir.1989) (recognizing the common-interest privilege).

Topic Nos. 61 and 62 also implicate the attorney-client and deliberative process privileges. Dey seeks testimony regarding the 2003 OIG Compliance Program Guidelines for Pharmaceutical Manufacturers. As noted above, the Guidelines were prepared by the Office of Counsel to the IG. To the extent Dey seeks information beyond that stated in the Guidelines themselves, the information is either irrelevant as detailed above, or goes to the internal deliberations of agency counsel with their client. The discussions within the Office of Counsel to the IG are protected by the deliberative process privilege, and counsel's discussions with and

13

advice to other agency officials regarding the Guidelines are protected by the attorney client and deliberative process privileges. Dey has provided no basis for overcoming these privileges.

Finally, it appears that Dey is seeking to have this Court revisit its many rulings here regarding information protected by the deliberative process privilege. Abbott has filed no fewer than twelve briefs asking this Court to overturn the government's assertion of the deliberative process privilege in this case and this Court has declined. *See* Dkt. 5144 at pp. 2-8 (comprehensive list of Abbott's attempts to overturn the deliberative process privilege and this Court's Orders protecting the privilege). Now, Dey has issued a Rule 30(b)(6) request with topics that seek information protected by the deliberative process privilege. Dey's attempt to overrun the deliberative process privilege deserves the same fate as Abbott's past efforts.

In sum, these six topics are improper on the grounds that they seek testimony on matters protected by the attorney-client privilege, work product doctrine, deliberative process privilege and common interest privilege.

### B. Dey's Rule 30(b)(6) Topics Are Not Described with Reasonable Particularity And Are Inappropriate Under Rule 30(b)(6)

Under Rule 30(b)(6), a party seeking deposition testimony pursuant to Rule 30(b)(6) must "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) ("Accordingly, to allow the Rule to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."). Consistent with this requirement, Rule 30(b)(6) is also not a tool for

parties to obtain miniature trials in the form of a deposition. It is a precise discovery tool with an intended purpose, namely, to efficiently ascertain facts known to a corporate or government entity. *See* Fed. R. Civ. P. 30(b)(6) advisory committee's note.

Many of Dey's Rule 30(b)(6) topic descriptions are so unreasonably broad that identifying and preparing witnesses to fulfill them is not feasible. In addition, a number of Dey's Rule 30(b)(6) topics and sub-topics are facially inappropriate for Rule 30(b)(6) testimony. These topics seek Rule 30(b)(6) testimony on every false statement made by Dey and every occasion in which Dey marketed the spread to a provider. Topic Nos. 34-38, 41 and 60 are so broad as to mimic a trial on the merits, if it were possible to locate and fully educate sufficient witnesses to cover, for example, every false or fraudulent statement or action by Dey "that relate in any way to Your claims in the Complaint . . . ." Topic No. 41 deals with specific pricing issues that will be addressed through expert testimony  Topic No. 60 demands that the United States sort through millions of claims to Medicare and Medicaid and determine whether "the Usual and Customary price submitted by *any* provider to Medicare or Medicaid for *any* Dey Subject Drug is false or fraudulent." (Emphasis added.) These requests certainly fail the "reasonable particularity" test required under Rule 30(b)(6). *Alexander v. Fed. Bureau of Investigation*, 188 F.R.D. 111, 121 (D.D.C. 1998) (rejecting a Rule 30(b)(6) notice to depose on "any matters relevant to this case" as failing to meet the "reasonable particularity" standard of Rule 30(b)(6)).

In sum, these requests are really a trial masquerading as a deposition, complete with liability phase (*e.g.* every instance of Dey's marketing the spread) and damages phase (*e.g.* what Medicare and Medicaid would have paid based on the prices "Dey should have reported"). This, despite the fact that this information was not in the possession of the agency; government counsel

has learned of the information through its investigation, discovery of Dey's files and its engagement of experts. In order to prepare a Rule 30(b)(6) witness, government counsel would have to teach agency witnesses to memorize the government's entire trial strategy so that the witnesses could then regurgitate it at the deposition. This is not a proper use of Rule 30(b)(6).

### D. Dey's Rule 30(b)(6) Topics Seek to Ascertain the Government's Legal Positions

Certain of Dey's Rule 30(b)(6) topic descriptions appear to seek deposition testimony to ascertain the government's legal positions, as opposed to any discoverable facts. A number of courts have ruled that legal contentions are not a proper subject for Rule 30(b)(6) discovery. *See Goss Int'l Americas, Inc. v. MAN Roland, Inc,* No. Civ. 03-CV-513-SM 2006 WL 1134930 at *5 (D. N.H. April 28, 2006) (denying motion to compel Rule 30(b)(6) deposition regarding claim construction noting, "claim construction is a question of law, and legal contentions are not a proper subject for factual discovery.") Based on the sheer inefficiency of requiring an oral recitation of legal questions and the difficulty of preparing a non-attorney witness on the intricacies of questions of law, courts have held that legal positions should not be ascertained by Rule 30(b)(6) deposition. *See, e.g., id.; SmithKline Beecham Corp., v. Apotex Corp*, 2004 WL 739959 at *3 (E.D. Pa. March 23, 2004) (ruling that certain categories of proposed Rule 30(b)(6) deposition pertained to legal positions that should not be ascertained by deposition because "[i]t would be very difficult for a non-attorney witness to answer such questions at a deposition."); *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan.1996) (granting protective order against Rule 30(b)(6) deposition inquiry into legal conclusions, on grounds that producing responses to such questions is "overbroad, inefficient, and unreasonable").

Thus, all of Dey's Rule 30(b)(6) topics calling, in whole or in part, for testimony on the government's legal positions are improper. One example of such a topic is Topic No. 60 which seeks the United States' legal position regarding whether the usual and customary price submitted by any provider to Medicare or Medicaid "is false or fraudulent." This topic seeks Rule 30(b)(6) testimony establishing the government's legal positions, not evidentiary facts, and as such is an improper topic for a Rule 30(b)(6) deposition. Similarly, Topic No. 62 seeks testimony regarding the definition of AWP contained in the OIG Pharmaceutical Compliance Guidelines. Clearly, Dey is seeking testimony with respect to a legal issue, and the courts have held that Rule 30(b)(6) depositions are not an appropriate discovery vehicle.

### III.   CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court enter an order of protection with respect to Dey's Rule 30(b)(6) Topic Nos. 29, 32-38, 40-42, 51, and 60-62.

        Respectfully submitted,

        GREGORY G. KATSAS
        ACTING ASSISTANT ATTORNEY GENERAL

        MICHAEL J. SULLIVAN
        UNITED STATES ATTORNEY

By:   /s/ George B. Henderson
       GEORGE B. HENDERSON, II
       Assistant U.S. Attorney
       United States Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA 02210

(617) 748-3272

JOYCE R. BRANDA
DANIEL R. ANDERSON
LAURIE A. OBEREMBT
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 514-3345

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above "MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR A PROTECTIVE ORDER REGARDING DEY'S RULE 30(b)(6) NOTICE" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                          /s/ Laurie A. Oberembt
Dated: June 3, 2008                                        Laurie A. Oberembt