**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) <br> ) MDL NO. 1456 <br> ) Civil Action No. 01-12257-PBS <br> ) |
| THIS DOCUMENT RELATES TO: | ) <br> ) <br> ) Judge Patti B. Saris |
| *The City of New York, et. al.* <br> *v.* <br> *Abbott Laboratories, Inc.,  et al.* | ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO SCHERING CORPORATION'S MOTION FOR A PROTECTIVE ORDER**

Schering Corporation ("Schering") argues that discovery should be stayed as to it on the ground that plaintiffs have not made "good faith" allegations of spreads for Schering brand-name drugs in excess of 30%.  Schering is entirely mistaken and its motion should be denied.

**ARGUMENT**

I.      **Plaintiffs Are Entitled To Discovery On The Identified At-Issue Schering Brand-Name Drugs with Spreads Over 30%**

Exhibit B to the City of New York/New York Counties' First Amended Consolidated Complaint ("FACC") identifies twenty-five Schering brand drugs as being at issue in this case.  Plaintiffs have pleaded exemplar spreads in excess of 30% for nineteen of these twenty-five.  *See* Summary Chart annexed as Exhibit A hereto*.* Plaintiffs' spreads are based on McKesson Servall prices or weighted averages, in compliance with the Court's prior orders.  The primary purpose of these spreads is to identify which drugs are at issue in this case. In addition, CMO #33 provides that

plaintiffs are entitled to discovery on all drugs where their spreads are greater than 30%. Plaintiffs have not set forth in their pleadings a spread for every year nor every quarter, nor were they required to do so.   In order to identify which drugs were at issue in this case, plaintiffs were required to give good faith examples of spread based on either "a typical price in McKesson [ServAll] or a weighted average" (see, Transcript of July 26, 2007 Motion Hearing at 21-22 annexed as Exhibit A to Declaration of Bryan R. Diederich, sworn to May 13, 2008 and submitted in support of Schering's Motion) ("July 26, 2007 Motion Hearing"). That is what plaintiffs have done.

Schering complains that plaintiffs have not calculated spreads in good faith because plaintiffs have "gerrymandered time periods" and included prices from inappropriate classes of trade.  As to the time period arguments, Schering's concerns are entirely overblown and inappropriate. Of the nineteen Schering brand-name drugs with spreads over 30%, sixteen had exemplar spreads for three months (one quarter) or longer. *See* Summary Chart annexed as Exhibit A hereto.   Only three (Elocon, Imdur and Trilafon) presented shorter time periods.

Notably, this Court has never stated expressly what period of time is required in order for a drug to be considered at issue (*i.e.* one year, six months, one quarter, one month).  To the extent the Court feels that *any* of plaintiffs' time periods for the Schering brand-name drug spreads are too brief, plaintiffs can and will supplement their Exhibit entirely.

In the context of this motion, however, plaintiffs will offer a revised spread calculation for the three drugs identified above.  That calculation appears in Exhibit B attached hereto.  This Exhibit B has been created based on all of the wholesaler data now

in plaintiffs' possession.   It presents spreads for a one quarter period for each of the three identified drugs.  It confirms the good faith of plaintiffs' prior calculations and that each of these three drugs should be subject to discovery.

Schering also complains that plaintiffs' spreads are calculated based on wholesaler sales data for inappropriate classes of trade.    This argument was already offered by defendants in the context of their motions to dismiss the New York case and rejected by this Court.   The Court specifically stated during the July 26, 2007 oral argument on defendants' motion to dismiss, "I'm not going to get into what class of trade should be there. That's not motion to dismiss material".  *See* July 26, 2007 Motion Hearing at 21-22.

If the Court wishes to consider which classes of trade are proper at this juncture, plaintiffs respectfully submit that their class of trade selections are entirely appropriate and Schering's arguments to the contrary are mistaken. For example, Schering argues that plaintiffs should not be considering prices to "physicians/clinics" or "warehouses". Schering Mem. at 5.   This argument ignores that clinics are "Pharmacy Providers" reimbursed by New York Medicaid based on AWP. *See* FACC at ¶107; Plaintiffs' Sur-Reply Memorandum of Law in Further Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Consolidated Complaint [Dkt. No. 4499]   at 6. It ignores that the term "warehouses" as a class of trade refers to Retail Chain Warehouses and High Volume Warehouses[1] that include customers such as CVS and Wal-Mart. It is disingenuous for Schering to even suggest that the prices for Schering brand drugs to these entities are not relevant to this case or the calculation of a true acquisition cost to Pharmacy Providers.

---

[1] *See* Declaration of Joanne M. Cicala, dated July 11, 2007 at ¶ 10 [Docket no. 4454],

**II.   Schering's Arguments Regarding Temodar And Intron-A Are Improper**

Schering's arguments regarding Temodar and Intron-A are particularly misguided and improper.   First, defendants have admitted, as they must, that the classes of trade whose sales data was considered in the Track I class case differs from the relevant classes of trade at issue in plaintiffs' case.  *See* July 26, 2007 Motion Hearing at 21-22.

> THE COURT:   Well, you want – it's either a typical price in McKesson or an average price.  I'm not going to get into what class of trade should be there.  That's not motion to dismiss material.
>
> MR. TRETTER:  All right, your Honor.
>
> THE COURT:  I don't know, and I'm not going to do that, and I would need expert reports about what's fair.  I don't even remember, although you probably told me, what Medicare is using as their classes of trade.
>
> MR. TRETTER:  You mean Medicaid or Medicare?
>
> THE COURT:  Medicare, when they're doing their ASPs, I don't know how they're coming up with them.
>
> MS. CICALA:  They're different classes, your Honor.
>
> MR. TRETTER:   Yes, totally different classes of trade because there's really not much of a retail class of trade there."

 The Track I class spreads, therefore, should not control the scope of discovery in this case.

Second, even if the relevant classes of trade in this case and the Track I class case were identical (and they are not), plaintiffs respectfully decline to accept Dr. Hartman's calculations of ASPs for Temodar and Intron-A for multiple reasons, including that Dr. Harman excluded the donation of free goods from his ASP calculations. *See In re Pharmaceutical Indus. Avg. Wholesale Price Litig*., 491 F.Supp. 2d 20, 72, n. 43 (D.Mass. 2007).   Plaintiffs have maintained consistently throughout their case that

4

defendants were obligated to account for the donation of free goods in their calculation of reported prices.   *See e.g.* FACC at ¶¶33, 114, 202, 322, 425.   Indeed, the OIG Compliance Program for Pharmaceutical Manufacturers, dated April 23, 2003, requires this.  It provides, in relevant part,

> Where appropriate, manufacturers' reported prices should accurately take into account price reductions, cash discounts, free goods contingent on a purchase agreement, rebates, up-front payments, coupons, goods in kind, free or reduced-price services, grants, or other price concessions or similar benefits offered to some or all purchasers.

Federal Register, Vol. 68, No. 86, Monday May 5, 2003 at 23733-34.  Dr. Addanki's testimony in the Track I class case confirms that such free goods were provided by Schering. *See In re Pharmaceutical Indus. Avg. Wholesale Price Litig*., 491 F.Supp. 2d at 72, n. 43.  This Court's findings confirm that these free goods were removed from Dr. Hartman's ASP analysis and that Dr. Hartman's spreads dropped as a result.  *Id.*

In light of the foregoing, it would be prejudicial and truly unfair to deny the City of New York and New York Counties the discovery necessary to prosecute their cases on the basis of Dr. Hartman's conclusions insofar as they concern Temodar and Intron-A.

**III.    Schering's Fact-Based Arguments Based On The Addanki Affidavit
And The Schering AMPs Are Premature And Improper;
At Minimum, Plaintiffs Should Be Permitted Discovery As To Both**

Schering's proffer of the Addanki affidavit and its conclusions regarding the relationship between the Schering AMPs and Schering's reported prices is premature and improper.   At minimum, in order for plaintiffs to respond they must be permitted to depose Dr. Addanki regarding his methodologies and conclusions and must be permitted also to obtain necessary testimony to understand exactly which classes of trade Schering included in its AMP calculations.  For example, if Schering did not include direct sales to

the retail classes of trade in its AMPs, then the Schering AMPs will not tell plaintiffs or the Court all they need to know about the true acquisition cost for Schering drugs to the retail class of trade.  Likewise, if Schering did not include sales to mail order pharmacies in its calculation of AMPs, then Schering AMPs will not be instructive on the true acquisition cost of these retail class participants (who undeniably serve the Medicaid population).

The impropriety of Schering's conclusory AMP argument is also evidenced by the fact that even a superficial review of the Schering AMPs supports plaintiffs' contention that the Schering brands listed in Exhibit A hereto are properly part of this case.  For example, attached as Exhibit C hereto is an AMP/AWP spread table revealing, for the drugs therein identified, the number of quarters between 1997 and 2005 in which Schering's reported AWPs were more than 30% higher than its AMPs.  The table reveals, among other things, that the Elocon 0.1% Ointment and Elocon 0.1% Cream each have AWPs more than 30% greater than their AMPs *for every single quarter* between 1997-2005.  The same is true for the Intron-A 10 MMU vial.  *Id.*  Elocon is of particular interest because it is one of the drugs for which Schering argued that plaintiffs' time periods were too brief.  *See* discussion in I, *supra*, and Exhibit A hereto.  In fact, Schering's own AMPs suggest that Elocon is properly in this case and discovery should be permitted.  *See*  Exhibit C hereto.

The same might also be said for Imdur, another Schering brand-name drug whose spread period in plaintiffs' original Exhibit B was criticized by Schering.  *See* discussion in I, *supra*, and "A" hereto.  Attachment "C" reveals an AWP/AMP spread for Imdur of over 30% for twelve of the thirty-six quarters (12/36) between 1997-2005.  Again,

Schering's own AMPs suggest Imdur is properly in this case and discovery should be permitted.

Plaintiffs now provide specific detail on how "C" hereto was created. This exhibit reflects the ratio of Schering's AWPs for the listed products during the period 1997Q1 through 2005Q4. The rows contain a single entry for each Schering NDC which had, for at least one quarter during that period, a reported AWP which was at least 30% (of AMP) *above* its AMP for that quarter, or in the terms expressed in the chart, a ratio of AWP to AMP of 1.30 or more. Since the reported AWP sometimes varies with the quarter, plaintiffs used a time-weighed average to compute a single AWP for each quarter. This was done by calculating the number of days in each quarter during which each distinct AWP prevailed, and weighting the average AWP over the whole quarter accordingly. In other words, plaintiffs multiplied each AWP by the number of days it prevailed, added each of these products together for all the distinct AWPs in the same quarter, and then divided by the number of days in the quarter to obtain the weighted average.

## CONCLUSION

For all the foregoing reasons, Schering's Motion for a Protective Order should be denied in its entirety and plaintiffs should be permitted to obtain the requested discovery for all at-issue Schering brand-name drugs with spreads over 30%.

Dated: June 4, 2008

**KIRBY McINERNEY LLP**

By:        _____/s/_____
           Joanne M. Cicala, Esq.
           James P. Carroll Jr., Esq.
           Aaron D. Hovan, Esq.
           830 Third Avenue
           New York, NY 10022

(212) 371-6600

*Counsel for the City of New York and New York Counties in MDL 1456 except Nassau and Orange*

Ross B. Brooks, Esq.
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Special Counsel for the County of Nassau*

Theresa A. Vitello, Esq.
**LEVY PHILLIPS & KONIGSBERG, LLP**
800 Third Ave.
New York, NY 10022
(212) 605-6205

*Counsel for the County of Orange*

## CERTIFICATE OF SERVICE

I, James P Carroll Jr, hereby certify that I caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SCHERING CORPORATION'S MOTION FOR A PROTECTIVE ORDER** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by submitting a copy to Lexis/Nexis File & Serve for posting and notification to all parties.

Dated:  June 4, 2008                     __ _/s/ James P Carroll Jr_____
                                                        James P. Carroll Jr.