UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| *State of Arizona v. Abbott Labs., Inc., et al.*, Cause No. 1:06-CV-11069-PBS | Judge Patti B. Saris |

**THE STATE OF ARIZONA'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER LIMITING SCOPE OF DISCOVERY**

The State of Arizona ("State") seeks a protective order limiting the scope of discovery in this case. Specifically, the State seeks the Court's protection from defendants' intention to pursue discovery from virtually every Arizona state agency that has ever purchased or reimbursed prescription drugs, or even considered or discussed doing so. Defendants will not negotiate a more reasonable scope for discovery and insist that the State must maintain all documents and other materials in its agencies' files despite the fact that the massive volume of information being held does not relate to the claims or defenses in the case. The proposed discovery topics, addressed below, seek irrelevant information and are unreasonably broad and burdensome.

In this lawsuit, the State of Arizona brings claims only on behalf of its private citizens and other payors who have paid inflated charges for prescription drugs based on defendants' use of Average Wholesale Price ("AWP"). Amended Complaint, ¶ 1 (Dkt. No. 3840). The lawsuit is ***unique*** among the dozens of state AWP cases pending in that the Attorney General has brought claims only on behalf of Arizona consumers and other payors for penalties and violations of Arizona state law. The State has expressly excluded claims on behalf of its Medicaid agency or any other state agency. Thus, the contents of state files are irrelevant – even

- 1 -

to any purported "government knowledge" defense. What the State knew and when will not be a factor in proving the claims brought on behalf of these non-state government individuals and companies.

The State of Arizona has explained the distinction between this and other state AWP cases to defendants. Indeed, the State even took the extraordinary step of amending the complaint, at defendants' request, to eliminate defense concerns that the State would try to recover on its own behalf. *See generally* Amended Complaint (Dkt. No. 3840). The efforts have been to no avail. Defendants will not relent in their intention to seek discovery from potentially dozens of Arizona agencies and offices. The threat of such overreaching discovery has held the State hostage for nearly two years. The volume of documents and electronic information affected is monumental.[1] The State issued a conservative protective litigation hold at the outset of the case in good faith. Because defendants insist they will pursue this wide-ranging discovery campaign, the State imposed tremendous and unnecessary burden and expense on the State agencies that cannot release documents while the threat is pending.

The State needs relief. It is clear that defendants are using the threat of overbroad discovery to harass and oppress the State, and have even tried to use the related burden to induce the State to drop its case entirely.[2] The State and defendants have conferred unsuccessfully; matters are at an impasse. Thus, the State moves the Court for an order limiting the scope of discovery by excluding state documents from discovery. Such an order is necessary to avoid "annoyance, oppression, undue burden and expense." Fed. R. Civ. P. 26(c). In the alternative, the State seeks an order directing the defendants to provide the State a list of the categories of documents they seek and to pay reasonable storage costs for the massive collection of State documents they insist they may need.

---

[1] Notably, defendants have neither answered nor moved to dismiss the complaint nor served discovery during this period.

[2] On May 8, 2008, after defendants had repeatedly refused to discuss limiting the litigation hold or specifying discovery they sought, defense liaison counsel sent a draft Joint Stipulation of Dismissal With Prejudice and stated that the only way defendants would agree to release "any litigation hold" was if the State would execute the Stipulation. *See* Declaration of Jeniphr Breckenridge In Support of State of Arizona's Motion for Protective Order Limiting Scope of Discovery ("Breckenridge Decl."), Ex. 1 (e-mail from John P. Bueker to J. Breckenridge dated May 8, 2008, with attachment).

## I.  FACTUAL BACKGROUND

**A.  The Lawsuit Brings Claims on Behalf of Arizona Citizens and Other Payors, Not State Agencies**

The State of Arizona, through the Office of the Attorney General, brought this lawsuit on December 6, 2005, on behalf of "persons and entities in Arizona including thousands of Patients who have paid inflated charges for medications based in whole or in part on defendants'' use of the Average Wholesale Price ("AWP") Scheme. Amended Complaint, ¶ 1 (Dkt. No. 3840). The Amended Complaint states the purpose of the lawsuit: "the Attorney General seeks to secure for the people of the State of Arizona a fair and open market, free from unfair or deceived acts or practices, for all pharmaceuticals and to enable Patients in this State to better shoulder the financial burden of necessary medications" and "to return to its resident Patients the increased medication costs caused by defendants' wrongful conduct, to disgorge defendants' excessive profits from the artificially inflated AWP Scheme … and to enjoin further violations of law by Defendants." Amended Complaint, ¶¶ 20, 21 (emphasis added).

The sole claim for relief, the Consumer Fraud count, seeks "injunctive relief, civil penalties and restitution of the losses incurred by Arizona consumers as a result of the AWP Scheme." Amended Complaint, ¶ 514 (emphasis added). The complaint does not include claims on the part of the State or any State agency. The premise of the lawsuit is similar to that underlying many other state AWP lawsuits – to seek redress for fraudulent pricing manipulation related to the use of AWPs – with one important distinction. Unlike other states, Arizona brings claims solely on behalf of its citizen payors. Arizona does not assert claims on behalf of its state Medicaid agency, the Arizona Health Care Cost Containment System ("AHCCCS") or any other state entity. This distinction is critical to the State's instant request to limit the scope of discovery.

**B.  The Litigation Hold Initiated During the State's Investigation Is No Longer Necessary**

Shortly after filing the lawsuit, the Office of the Attorney General issued a litigation hold memorandum. *See* Declaration of Elaine Boughner In Support of the State of Arizona's Motion

for Protective Order Limiting Scope of Discovery ("Boughner Decl."), ¶ 4 and Ex. 1. The addressees included any State entity that might conceivably purchase or reimburse for prescription drugs or maintain information regarding the same. These recipients included the Arizona Governor's Office, AHCCCS, the Arizona Department of Corrections, the State universities, the State's veterans' agencies, Child & Family Protection, among others. Boughner Decl., Ex. 1 at Exhibit A. The memorandum directed its addressees to preserve any evidence, in any format that might be relevant to the lawsuit. *Id*. at p. 1. The memorandum listed examples of the type of documents or data that might be relevant. The examples were developed by reviewing discovery many of the defendants named in this case had served in other state AWP litigation. *Id*. at p. 4.

The State deliberately issued the broadest and most conservative litigation hold possible in good faith in order to give the State time to conduct a full investigation of the types of information available, including attorney evaluation of the types of documents the agencies were holding and the relationship between the documents and the lawsuit claims. Boughner Decl., ¶¶ 4-6. The State immediately realized that there was no nexus between the documents held and the lawsuit. Neither the State nor the agencies retaining the documents have claims in the case. *See generally* Amended Complaint. Therefore, the State concluded that the litigation hold should be released and the affected agencies should be allowed to manage the retained documents in accordance with their usual and customary document retention policies. Breckenridge Decl., ¶ 3.

**C.    The State Amends the Complaint to Address Defense Concerns Regarding Scope of Claims, Confirming no Claims are Brought on Behalf of State Agencies**

The State explained its conclusion to liaison counsel for defendants in January 2007. Breckenridge Decl., Ex. 2 (e-mail dated Jan. 16, 2007 from A. Thompson Uglietta to D. Dauphine). The State asked defendants to agree that the litigation hold could be lifted. Overall, the litigation hold, State lawyers explained, had created a costly burden on the agencies and was not justified by the non-governmental nature of the claims in the case. *Id*. As part of

- 4 -

the explanation, the State provided defendants with a list of dozens of state agencies whose drug purchases or reimbursements were not based on AWP. *Id*. Defendants initially responded with concern that the State was bringing claims on behalf of the agencies and in particular AHCCCS in this case. The State confirmed that it was not. *Id.*[3] Defendants responded formally on February 2, 2007, and refused to agree to the State's lifting of the litigation hold. Defendants attempted to justify their refusal with an unexplained and vague claim reference to relevance with respect to documents held by non-Medicaid agencies, Breckenridge Decl., Ex. 3, and specific concerns that the complaint asserted claims on behalf of AHCCCS, the State Medicaid agency. *Id*. at p. 2. Defendants suggested the State amend the complaint. *Id*. The State immediately identified the provisions that concerned defendants and amended the complaint to eliminate them. The State filed the Amended Complaint on March 13, 2007.

In May 2007, the State contacted defendants to resume discussions to narrow the scope of documents held in light of the Amended Complaint. Breckenridge Decl., Ex. 4. The State reasserted the fact that AHCCCS had no claim in the case. *Id*. The State again asked defendants to articulate what possible relevant information affected State agency files could contain. Defendants finally responded a month later citing an unrelated Department of Justice lawsuit as a basis to maintain this case's litigation hold on AHCCCS, completely ignoring the point that the litigation hold at issue in this case is unrelated to any litigation hold operating for benefit of Department of Justice proceedings.[4] Breckenridge Decl., Ex. 5.

**D.  Retention of the Affected Documents Creates Oppressive Burden for State and Its Non-Party Agencies**

The burdens on the State mounted as documents and data retained grew. Representatives of virtually every agency that had received the original litigation hold memorandum have contacted the Office of the Attorney General seeking relief from the space and financial strains

---

[3] In the same electronic mail, the State confirmed that AHCCCS might be involved in AWP litigation lead by the U.S. Department of Justice and related enforcement agencies, but that the litigation hold instituted in this case was independent of those proceedings and would not cover them. *Id.* at p. 1.

[4] In fact, neither the State lawyers nor outside state counsel in this case represent AHCCCS and any discovery of AHCCCS, if any, will have to proceed through AHCCCS counsel.

the litigation hold produced. Boughner Decl., ¶ 7. Complying with the litigation hold is an exception to the State's document retention policy. *Id*. at ¶ 8 (various agencies contacted Boughner about hundreds – or even thousands – of boxes being retained as a result of the litigation hold). Because of the breadth of the information defendants "might" seek, the agencies were paralyzed. *Id*. at ¶ 5. In addition, even where agencies can ship documents to State archives for storage, costs are incurred. By statute, State Archives charges for its services. *Id*. at ¶ 7. In addition, staff members were required to handle and track the documents. There was no way to mitigate the burden since defendants had not even identified the categories of documents they might seek.

The burdens on the State agencies go beyond the burden of storing the documents for future use. The burden of maintaining the documents potentially related to drug claims has required hundreds of hours of State employee and attorney time and, in some cases, the disruption of operations. *Id.* at ¶ 8. Legal counsel and staff have tried to walk certain agencies through indices of the retained documents to eliminate some of the retained material based on the descriptions. *Id*. The process has been painstaking and has resulted in minimal impact on the volumes stored as the State felt it had to proceed conservatively because it does not know what defendants might ultimately demand.

The strain on State operations compelled its lawyers to resume efforts in March 2008 to resolve the issue through negotiations with defendants by contacting the designated defense liaison counsel repeatedly with no response. Breckenridge Decl., Ex. 6.[5] Two months later, the firm finally contacted the State to advise that the only way they would agree to the State lifting the litigation hold for any of the agencies or their documents was if the State would dismiss its claims with prejudice – claims that do not even relate to the documents being held. Breckenridge Decl., Ex. 1.

---

[5] After two months, the firm advised the State that the designated defense liaison counsel had retired. Breckenridge Decl., ¶ 5.

- 6 -

### E.     Parties Are at Impasse With Respect to Discovery Scope

The State and defendants have conferred.  They are at an impasse.  Breckenridge Decl., ¶ 6.

In the nearly two and one half years since the State filed the original complaint in this case, defendants have neither answered the complaint nor moved to dismiss the case and have served no discovery.  The State has assured them that it will pursue no claims on behalf of the governmental entities who complied with the initial litigation hold.  Yet, defendants persist in holding the State and its agencies hostage by refusing to compromise on the litigation hold, to narrow the categories of documents they will seek, or to articulate any justifiable bases for continuing the hold.  Defendants' approach suggests that they have not done even the most minimal homework concerning what information these State agencies have or what information the defendants might reasonably use to defend themselves.

It is harassment for the defendants to force the State to operate under the constrictions of this severe hold for more than two years, with dismissal with prejudice as the only alternative for relief.  Their unfocused approach to discovery in this case has cost the State, moved some agencies into a deadlock and must be stopped.  The State now asks the Court for relief.  The State of Arizona respectfully submits that the Court should limit the scope of discovery pursuant to Federal Rule of Civil Procedure 26(c).

## II.     ARGUMENT

### A.     Under Fed. R. Civ. P. 26, the Scope of Discovery Should be Limited to the Claims in This Case

Federal Rule of Civil Procedure 26(c) provides that "upon motion by a party or by the person from whom discovery is sought … the Court may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  Courts can, and regularly do, limit the scope of discovery temporally and topically.  This is particularly true in the wake of the 2000 amendment to Rule 26 of the Federal Rules of Civil Procedure.  The rule now permits discovery only as to matters "relevant to the

*claim or defense* of any party," Fed. R. Civ. P. 26(b)(1) (emphasis added), rather than the broader pre-amendment standard permitting discovery as to matters "relevant to the *subject matter* involved in the pending action." Fed. R. Civ. P. 26(b)(1) (emphasis added). The Advisory Committee Note to the 2000 amendment indicates that the purpose of the change was to address concerns about overbroad discovery and to ensure that the focus of discovery is the actual claims and defenses in an action and to avoid the use of discovery to develop new claims or defenses. Advisory Committee Note to 2000 Amendment to Rule 26(b)(1). "[T]he actual scope of discovery should be determined according to the reasonable needs of the action." *Id*. Thus, discovery should only be provided into matters regarding alleged claims and related defenses.

Where, as here, the proposed scope of discovery extends past the parties bringing claims and deep into State agency files, reaching far beyond the "reasonable needs of the action." It is so clearly disconnected from the case claims and defenses, it should not be allowed. As described above, the case is unique among State AWP cases in that the State does not make a claim for its own damages. The claims are limited to claims on behalf of Arizona citizens, and do not include any claims on the part of the State or state-related entities – thus, there can be no credible claims that the information and data at issue are relevant. The State anticipates that defendants will raise the only argument available to them to pursue the discovery: the information within the frozen files could relate to "government knowledge" of AWP pricing. However, this is an inappropriate basis of discovery here where neither the government nor any governmental agency brings a claim.

Here, defendants' insistence on discovery from State agencies that have not brought claims is a blatant, and improper, effort to shift attention from industry marketing and pricing practices to the State. But in the absence of claims on behalf of State entities, there is not even a colorable argument that such wide-spread discovery is justified. The immateriality of any "government knowledge" is particularly acute where, as here, the government is not even a party. Even if any of the dozens of Arizona agencies touched by the litigation hold possesses

- 8 -

any information concerning AWP, there is neither a factual nor a legal basis to impute that knowledge to the state residents and Third-Party Payors on whose behalf this case is brought.

Other courts considering the question of whether to allow discovery of state agencies have agreed. In *People of the State of New York v. Pharmacia, et al.*, Index No. 904-03 (N.Y. Sup. Ct. July 19, 2006) (Breckenridge Decl., Ex. 7), the New York AWP case, the Court evaluated drug manufacturer requests to the State of New York seeking extensive discovery similar to that the State expects here – from numerous state agencies as well as the Legislature. The drug manufacturers argued that the documents they sought might reflect knowledge of AWP on the part of the State. *Id*. at p. 5. Unlike Arizona in this case, New York was seeking restitution for itself as well as its citizens. *Id*. at p. 3. The Court found, however, that any State agency's understanding of AWP was irrelevant to the claims and defenses in the case. *Id*. at p. 6. The drug manufacturers could not meet their burden to show that discovery from the agencies would be relevant. *Id*.

State information concerning AWP, or drug pricing, is irrelevant and should not be allowed.

**B.     Defendants' Expectations Regarding Discovery are not Justified by the Claims in the Case and Will Continue to Burden the State**

The scope of discovery under Rule 26 must also be read in conjunction with the limitations in Rule 26(b)(2). Rule 26 requires balance; a discovery demand may not impose "undue" burden and expense." Courts are authorized to restrict discovery where, *inter alia*, "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2). *See*, *e.g.*, *Gill v Gulfstream Park Racing Ass'n*, 399 F.3d 391, 400 & n.5 (1st Cir. 2005).

This is one of those cases. Here, the claims of the complaint are narrow. The State agencies holding documents are not parties and the State has stated unequivocally its intention

not to pursue claims on their behalf.  Thus, the massive collection of evidence defendants expect the State to preserve – and later presumably review and produce – does not on its face relate to claims in the case.  There is no reasonable basis to suggest that the proposed discovery from the files of the State could be used to resolve the issues in the case.

Requiring the agencies to maintain documents "just in case" is unfair.  The retention of the material has already created a tremendous financial and logistical burden on the agencies that have complied with the litigation hold.  *See generally* Boughner Decl.  Already, the task of maintaining all documents potentially related to drug claims has required hundreds of hours of State employee and attorney time, the expense of storage and, in some cases, the disruption of operations.  Boughner Decl., ¶ 8.  In fact, the effort required is too excessive and spread over so many agencies, that there is no reasonable way to calculate the costs.  *Id.* at ¶ 9.  The State estimates that 17 agencies have maintained documents pursuant to the litigation hold.  *Id.* at ¶ 4.  Allowing discovery to proceed will necessitate an extreme commitment of manpower to review and analyze the documents and electronic data retained in addition the expense of any eventual production.  Clearly, any eventual production would be expensive.  Given the marginal utility of State information to the claims of the State's private citizens here, the State of Arizona respectfully submits that the Court should exercise its powers to rein in the proposed discovery of State agencies before it goes any further by ordering that such discovery not be allowed.

### III.    CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court enter a protective order that the State should not be required to retain, analyze and produce documents in the hands of State agencies that have brought no claims here.  In the alternative, the State requests that the Court enter an order requiring defendants to identify specifically the categories of documents they seek and to bear the costs of storing such documents.

Dated:  June 13, 2008

                    HAGENS BERMAN SOBOL SHAPIRO LLP

                    By  **/s/ Steve W. Berman**
                       Steve W. Berman
                       Jeniphr A. E. Breckenridge
                  1301 Fifth Avenue, Suite 2900
                  Seattle, WA  98101
                  Telephone:  (206) 623-7292

                  Terry Goddard
                  Attorney General
                  Firm State Bar No. 14000
                  Ann Thompson Uglietta
                  Assistant Attorney General
                  State Bar No. 013696
                  Consumer Protection and Advocacy Section
                  1275 West Washington
                  Phoenix, AZ  85007-2997
                  Telephone:  (602) 542-0883
                  Facsimile:  (602) 542-4377
                  Consumer@azag.gov

                  *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiff's attorneys and that, on June 13, 2008, I caused copies of the foregoing document to be served on all counsel of record by the Court's electronic filing service and posted electronically via Lexis-Nexis File & Serve.

/s/ **Steve W. Berman**
Steve W. Berman

- 12 -

001534-14 239089 v1