# Exhibit G

Page 1

1                    UNITED STATES DISTRICT COURT

2                       DISTRICT OF MASSACHUSETTS

3    Civil Action No. 03-CV-11865-PBS

4    - - - - - - - - - - - - - - - - - - - - - - - - -x

5    THE COMMONWEALTH OF MASSACHUSETTS,

6                        Plaintiff,

7         v.

8    MYLAN LABORATORIES, INC.; BARR LABORATORIES, INC.;

9    DURAMED PHARMACEUTICALS, INC.; IVAX CORPORATION;

10   WARRICK PHARMACEUTICALS CORPORATION; WATSON

11   PHARMACEUTICALS, INC.; SCHEIN PHARMACEUTICAL; INC.;

12   TEVA PHARMACEUTICALS USA, INC.; PAR PHARMACEUTICAL,

13   INC.; DEY, INC.; ETHEX CORPORATION; PUREPAC

14   PHARMACEUTICAL CO.; and ROXANE LABORATORIES, INC.,

15                       Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - -x

17

18     VIDEOTAPED DEPOSITION OF PAUL L. JEFFREY, Pharm.D.

19         Thursday, June 14, 2007   9:50 a.m. to 4:26 p.m.

20                         Ropes & Gray,

21       One International Place, Boston, Massachusetts

22              Reporter:  Lisa A. Moreira, RDR/CRR

Page 2

```
 1    A P P E A R A N C E S

 2              THE COMMONWEALTH OF MASSACHUSETTS

 3              OFFICE OF THE ATTORNEY GENERAL

 4              (BY: ROBERT PATTEN, ESQ., and

 5                   COLLEEN A. McCARTHY, ESQ.)

 6              One Ashburton Place

 7              Boston, Massachusetts 02114

 8              617.727.2200

 9              robert.patten@ago.state.ma.us

10              colleen.mccarthy@ago.state.ma.us

11                   Counsel for the Plaintiff

12

13              ROPES & GRAY LLP

14              (BY: JOHN T. MONTGOMERY, ESQ., and

15                   CARISA A. KLEMEYER, ESQ.)

16              One International Place

17              Boston, Massachusetts 02110-2624

18              617.951.7000

19              john.montgomery@ropesgray.com

20              carisa.klemeyer@ropesgray.com

21                   Counsel for the Defendant, Warrick

22                   Pharmaceuticals Corporation
```

```
 1    A P P E A R A N C E S  (CONTINUED)

 2

 3              KIRKLAND & ELLIS LLP

 4              (BY:  JENNIFER ATKINS, ESQ.)

 5              655 15th Street NW

 6              Washington, D.C. 20005

 7              202.879.5000

 8              jatkins@kirkland.com

 9                   Counsel for the Defendants, Barr

10                   Laboratories, Inc., and Duramed

11                   Pharmaceuticals, Inc.

12

13

14    ALSO PRESENT:

15

16              Adam Mueller, Ropes & Gray

17                        Summer Associate

18              Adam Cook, Videographer

19

20

21

22
```

```
 1                            I N D E X

 2     WITNESS:              DIRECT    CROSS    REDIRECT    RECROSS

 3     PAUL L. JEFFREY, Pharm.D.

 4     (By Mr. Montgomery).. 006..........................

 5     (By Ms. Atkins)............ 225..........................

 6

 7                    INDEX OF EXHIBITS                        PAGE

 8     Exhibit Jeffrey 001, MA001466 to 473........... 059

 9     Exhibit Jeffrey 002, MA001286.................. 064

10     Exhibit Jeffrey 003, MA012663 to 682........... 070

11     Exhibit Jeffrey 004, MA016310 to 311........... 089

12     Exhibit Jeffrey 005, MA006810 to 812........... 098

13     Exhibit Jeffrey 006, MA001359 to 360........... 106

14     Exhibit Jeffrey 007, MA001435 to 437........... 121

15     Exhibit Jeffrey 008, MA012501 to 503........... 125

16     Exhibit Jeffrey 009, MA001251.................. 127

17     Exhibit Jeffrey 010, MA001289.................. 142

18     Exhibit Jeffrey 011, MA003514 to 525........... 147

19     Exhibit Jeffrey 012, MA003442 to 448........... 161

20     Exhibit Jeffrey 013, MA001337 to 338........... 196

21     Exhibit Jeffrey 014, MA012348 to 352........... 197

22     Exhibit Jeffrey 015, MA003598 to 603........... 205
```

```
 1        A.    I don't know that.
 2        Q.    -- for purposes of the FUL
 3   determination?
 4        A.    I don't know that.
 5        Q.    And do you monitor the extent to which
 6   MassHealth reimburses at the FUL ceiling for
 7   particular drugs?
 8        A.    Today?
 9        Q.    Today.
10        A.    No, not in all practical terms.
11        Q.    Have you monitored the proportion of
12   the drug reimbursement that's done on an FUL
13   basis at any time during your tenure?
14        A.    Yes.
15        Q.    When?
16        A.    It was routine monitoring in the maybe
17   2001 through 2003 or '4.  '3, I'm going to say.
18        Q.    And why did you stop?
19        A.    We -- at some point in time that I
20   could identify if I looked, but I don't remember
21   exactly, we hardly paid any claims at the federal
22   upper limit price, so it became a nonfactor.
```

```
 1        Q.   And was that because you adopted your
 2   own ceiling price that was lower than the federal
 3   upper limit?
 4        A.   Yes.
 5        Q.   And is that known as the MULP?
 6        A.   It was at the time, yes.
 7        Q.   What did that stand for?
 8        A.   Mass. upper limit price, Massachusetts
 9   upper limit price.
10        Q.   And what is it known as now?
11        A.   The SMAC, S-M-A-C, state maximum
12   allowable cost.
13        Q.   And just because I'm curious, why did
14   the acronym change?
15        A.   Because "MULP" was arcane.  It referred
16   only to Massachusetts.  Almost every other state
17   used state MAC, state maximum allowable cost, so
18   we could communicate more directly with our
19   colleagues on what it was.
20        Q.   And when did Massachusetts adopt the --
21   can we agree to call it the MAC program?
22        A.   Sure.
```

Jeffrey, Pharm.D., Paul L.                                              June 14, 2007
Boston, MA

Page 91

```
 1      A.    Correct.
 2      Q.    And at the end of his message at the
 3   top of the page there, he says that "Our current
 4   process is being far too bogged down by
 5   preciseness and excessively deep analysis," and
 6   that's in quotations.  Do you see that?
 7      A.    I do.
 8      Q.    How did you understand that statement?
 9      A.    I don't know exactly what Mr. Gilmore
10   was referring to there.  I don't recall.  I may
11   well have known at the time.
12      Q.    All right.  What was your understanding
13   in 2001 and 2002 of the process that was used to
14   establish these MACs?
15      A.    Well, again, I'm not -- there was no
16   process as far as I could tell, you know, so I
17   think that's what we're -- I mean...
18      Q.    Was there a formula?
19      A.    There was a formula.
20      Q.    What was the formula?
21      A.    If I have it correctly, it was 150
22   percent of the -- it may have said lowest
```

```
 1    published price of two multisource products, so I
 2    think that if I recall correctly we had -- "we,"
 3    meaning the state, had the authority to set a
 4    MULP if -- at a rate equivalent to 150 percent of
 5    the lowest public price of two or more generic
 6    equivalents.
 7         Q.    And do you know the number of generic
 8    equivalents that were necessary in order to
 9    qualify for a -- for an FUL determined by CMS?
10         A.    I do.  It was three.
11         Q.    All right.  So the federal program was
12    three.  Massachusetts was two.
13         A.    Correct.
14         Q.    And that was the way it was in 2001?
15         A.    I'm quite sure, yes.
16         Q.    And how is it today?
17         A.    The state MAC, MULP, is permitted to be
18    set when there are two products within a generic
19    -- well, two generically equivalent products, and
20    the rate is then set at 130 percent of the -- I'm
21    not sure exactly what our language says.  I think
22    we use the wholesale acquisition cost, but I
```

```
 1    don't know if it permits us to use a different
 2    indicator.  It may be something like the lowest
 3    published price.
 4         Q.    And do you have any, you know, detailed
 5    familiarity with, you know, how the folks who run
 6    the MAC program actually find the lowest
 7    published price?
 8         A.    I can tell you my understanding.
 9         Q.    What is your understanding?
10         A.    That we use the First Data Bank pricing
11    field that generates into our system a
12    calculation to populate the field for the maximum
13    allowable cost using 130 percent of the lowest
14    published wholesale net unit price, which is an
15    equivalent to the wholesale acquisition cost.  So
16    it's an algorithm, a formula, priced off of the
17    database we get from First Data Bank.
18         Q.    Are you aware that First Data Bank
19    publishes, for some drugs, at least, something
20    called a direct price?
21         A.    Yes.
22         Q.    And is direct price used in the
```

Page 230

```
 1   was -- I'm not sure what word you used.  Did you
 2   say "false statements" or --
 3        Q.   I asked if you were personally aware of
 4   any false statements made to the Commonwealth by
 5   Barr?
 6        A.   No.
 7             MS. ATKINS:  That's all I have.  Thank
 8   you.
 9             THE WITNESS:  Okay.  Thanks.
10             THE VIDEOGRAPHER:  The time is 4:26.
11   This is the end of Cassette No. 3 and the
12   conclusion of the deposition.  We are off the
13   record.
14             (Whereupon the deposition was
15   concluded at 4:26 p.m.)
16
17                      _____
18                      PAUL L. JEFFREY, PHARM.D.
19   Subscribed and sworn to and before me
20   this _____ day of _____, 20____.
21   _____
22         Notary Public
```

1  Commonwealth of Massachusetts

2  Suffolk, ss.

3      I, Lisa A. Moreira, Registered Diplomate
4  Reporter, Certified Real-Time Reporter and Notary
5  Public in and for the Commonwealth of Massachusetts,
6  do hereby certify that PAUL L. JEFFREY, Pharm.D.,
7  the witness whose deposition is hereinbefore set
8  forth, was duly sworn by me and that such deposition
9  is a true record of the testimony given by the
10 witness.
11     I further certify that I am neither related to or
12 employed by any of the parties in or counsel to this
13 action, nor am I financially interested in the
14 outcome of this action.
15     In witness whereof, I have hereunto set my hand
16 and seal this 20th day of June, 2007.

17     _____
18            Lisa A. Moreira, RDR, CRR
19            Notary Public
20            CSR No. 146299
21 My commission expires
22 December 25, 2009