# Exhibit J

Page 1

1              UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3     Civil Action No. 03-CV-11865-PBS

4     - - - - - - - - - - - - - - - - - - - - - - - -x

5     THE COMMONWEALTH OF MASSACHUSETTS,

6                   Plaintiff,

7          v.

8     MYLAN LABORATORIES, INC.; BARR LABORATORIES, INC.;

9     DURAMED PHARMACEUTICALS, INC.; IVAX CORPORATION;

10    WARRICK PHARMACEUTICALS CORPORATION; WATSON

11    PHARMACEUTICALS, INC.; SCHEIN PHARMACEUTICAL; INC.;

12    TEVA PHARMACEUTICALS USA, INC.; PAR PHARMACEUTICAL,

13    INC.; DEY, INC.; ETHEX CORPORATION; PUREPAC

14    PHARMACEUTICAL CO.; and ROXANE LABORATORIES, INC.,

15                   Defendants.

16    - - - - - - - - - - - - - - - - - - - - - - - -x

17

18        VIDEOTAPED DEPOSITION OF GARY P. GILMORE

19     Thursday, July 26, 2007   9:34 a.m. to 5:38 p.m.

20                 Greenberg Traurig, LLP

21      One International Place, Boston, Massachusetts

22         Reporter:  Lisa A. Moreira, RDR, CRR

Page 2

```
 1   A P P E A R A N C E S

 2

 3          THE COMMONWEALTH OF MASSACHUSETTS

 4          OFFICE OF THE ATTORNEY GENERAL

 5          (BY: ROBERT PATTEN, ESQ.)

 6          One Ashburton Place

 7          Boston, Massachusetts 02114

 8          617.727.2200

 9          robert.patten@ago.state.ma.us

10              Counsel for the Plaintiff

11

12          KELLEY DRYE & WARREN LLP

13          (BY:  NEIL MERKL, ESQ., and

14               SUNG W. KIM, ESQ.)

15          101 Park Avenue

16          New York, New York 10178

17          212.808.7811

18          nmerkl@kelleydrye.com

19          sukim@kelleydrye.com

20              Counsel for the Defendant

21              Mylan Laboratories, Inc.

22
```

Page 3

1   A P P E A R A N C E S (CONTINUED)

2

3           ROPES & GRAY LLP

4           (BY: CARISA A. KLEMEYER, ESQ.)

5           One International Place

6           Boston, Massachusetts 02110-2624

7           617.951.7000

8           carisa.klemeyer@ropesgray.com

9                Counsel for the Defendant

10               Warrick Pharmaceuticals

11               Corporation

12

13          KIRKLAND & ELLIS LLP

14          (BY:  REYNA S. WALTERS, ESQ.)

15          655 Fifteenth Street, NW

16          Washington, D.C. 20005

17          202.879.5000

18          rwalters@kirkland.com

19               Counsel for the Defendants Barr

20               Laboratories, Inc., and Duramed

21               Pharmaceuticals, Inc.

22

Page 4

```
 1    A P P E A R A N C E S  (CONTINUED)

 2

 3             KIRKLAND & ELLIS LLP

 4             (BY: JORDAN M. HEINZ, ESQ.)

 5             200 East Randolph Drive

 6             Chicago, Illinois 60601

 7             312.469.7027

 8             jheinz@kirkland.com

 9                    Counsel for the Defendant

10                    BoehringerIngelheim Roxane, Inc.

11

12

13    ALSO PRESENT:

14

15             Jennifer Goldstein, Legal Intern -

16                    Commonwealth

17             Jason Lachapelle, Videographer

18

19

20

21

22
```

```
 1                        I N D E X

 2

 3   WITNESS:          DIRECT   CROSS   REDIRECT   RECROSS

 4   GARY P. GILMORE

 5      (By Mr. Merkl)....  008..........................

 6      (By Mr. Heinz)..........  329.....................

 7      (By Ms. Klemeyer)........  340....................

 8

 9

10                       E X H I B I T S

11   NUMBER                  DESCRIPTION                    PAGE

12   Exhibit Gilmore 001, Resume................... 024

13   Exhibit Gilmore 002, Mylan rebate agreement... 133

14   Exhibit Gilmore 003, MA012331 and MA012332.... 181

15   Exhibit Gilmore 004, MA001466 - MA001473...... 201

16   Exhibit Gilmore 005, MA001510 - MA001545...... 235

17   Exhibit Gilmore 006, MA001457................. 248

18   Exhibit Gilmore 007, MA001435 - MA001437...... 280

19   Exhibit Gilmore 008, MA016316 - MA016318...... 321

20   Exhibit Gilmore 009, MA000858 and MA000859.... 331

21   Exhibit Gilmore 010, MA003602 and MA003603.... 340

22
```

```
 1   than they would on a brand drug because in the --
 2   ultimately the state would pay less.  If we had
 3   two chemical entities where one was a brand or
 4   generic, the state would pay less for the
 5   generic, but we would get the effect of the same
 6   chemical.
 7       Q.   So even though this is effectively a 35
 8   percent mark-up to the pharmacist, you thought
 9   that was a good idea for generics?
10       A.   At that time I didn't feel that was
11   unreasonable for generics.
12       Q.   Well, you thought it was a good idea,
13   right? That's what you were saying.
14       A.   At that time I thought it was a good
15   idea.
16       Q.   And, in fact, before that, in between
17   September 5th you thought it should even be
18   higher, like plus 7, right?
19       A.   Yes.
20       Q.   Now, well, if you're sole concern was
21   getting more to use generics rather than brands,
22   why wouldn't you leave the generics at WAC plus 5
```

Page 294

```
 1      A.   Yes.
 2      Q.   And all that has a cost associated with
 3   it, right?
 4      A.   Yes.
 5      Q.   And if all you're going to pay them is
 6   what exactly the drug costs them to acquire,
 7   they're going to lose money on the transaction,
 8   aren't they?
 9      A.   Yes.
10      Q.   Okay.  So the dispensing fee has to be
11   big enough to cover their costs and give them
12   enough profit to stay in business, right?
13      A.   Yes.
14      Q.   And did you ever form a conclusion as
15   to whether a $3 dispensing fee on top of a WAC
16   minus 2 percent would be good enough to do that?
17      A.   I never did an analysis of that.
18      Q.   Did you have an opinion?
19      A.   Yes.
20      Q.   What was your opinion?
21      A.   That in terms of a brand-name drug, it
22   would not be.
```

Page 295

```
 1        Q.    They would lose money on each sale,
 2   wouldn't they?
 3        A.    They would lose money, I believe.
 4        Q.    Now, if you reimbursed generics at the
 5   actual bare cost of covering the generic and not
 6   a penny more and only a $3 dispensing fee, they
 7   would lose money, too, right?
 8        A.    In my opinion, yes.
 9        Q.    So you really can't reimburse generics
10   at cost, right?
11        A.    Correct.
12        Q.    There has to be some give in the
13   system.  It has to be a WAC plus something,
14   right?
15        A.    If WAC is defined as the true -- the
16   actual cost, bottom, rock bottom AMP cost, there
17   needs to be given the system, yes.
18        Q.    You can't reimburse -- you can't fairly
19   reimburse for generics with a $3 dispensing fee
20   at the rock bottom cost regardless of what that's
21   called right?
22        A.    Yes, I agree.
```

```
                                                              Page 296
 1        Q.    The pharmacist has to get something
 2   more than that, right?
 3        A.    Yes.
 4        Q.    Now, at this time, September 5, 2001,
 5   when you looked at this, you felt that a fair
 6   reimbursement would be the 30 percent you knew
 7   they were getting, right, plus 5 as opposed to
 8   the 30 percent you found out they were getting
 9   plus 10, right?
10        A.    Yes.
11        Q.    So the 30 percent that they were
12   getting below WAC, that difference you learned
13   about, was essential for them to get to stay in
14   the program and make money, right?
15        A.    Yes.
16        Q.    Now, in your opinion it shouldn't have
17   been as high as WAC plus 10.  It had to come down
18   somewhat.  Right?
19        A.    Yes.
20        Q.    But coming down from WAC plus 10 to WAC
21   plus 5, in your judgment, with full knowledge
22   that they were getting drugs at WAC minus 30 plus
```

```
 1    other discounts, you felt that was fair and that
 2    was good enough?
 3         A.    In my opinion, yes.
 4         Q.    And at the time in 2001?
 5         A.    Correct.
 6         Q.    Now, later the legislature came through
 7    and they kind of barged into this, right?
 8         A.    Yes.
 9         Q.    What did they recommend?
10         A.    I believe it was WAC minus 2 across the
11    board.
12         Q.    Okay.  And did you and Mr. Jeffrey
13    discuss that?
14         A.    Yes.
15         Q.    And did you discuss that with the
16    pricing group?
17         A.    Yes.
18         Q.    And what was the opinion of the group
19    as to the advisability of WAC minus 2 across the
20    board for everything?
21         A.    I don't recall anyone being in favor of
22    WAC minus 2 across the board.
```

Case 1:01-cv-12257-PBS   Document 5383-11   Filed 06/13/08   Page 12 of 13

Gilmore, Gary P.                                                                                                       July 26, 2007
                                         Boston, MA

Page 347

```
 1              S I G N A T U R E   O F   W I T N E S S

 2

 3

 4

 5

 6

 7                                    _____

 8                                          GARY P. GILMORE

 9

10      Subscribed and sworn to and before me

11      this _____ day of _____, 20____.

12

13

14      _____

15              Notary Public

16

17

18

19

20

21

22
```

Henderson Legal Services
202-220-4158

Page 348

1   Commonwealth of Massachusetts

2   Suffolk, ss.

3        I, Lisa A. Moreira, Registered Diplomate

4   Reporter, Certified Real-Time Reporter and Notary

5   Public in and for the Commonwealth of Massachusetts,

6   do hereby certify that GARY P. GILMORE, the witness

7   whose deposition is hereinbefore set forth, was duly

8   sworn by me and that such deposition is a true

9   record of the testimony given by the witness.

10       I further certify that I am neither related to or

11   employed by any of the parties in or counsel to this

12   action, nor am I financially interested in the

13   outcome of this action.

14       In witness whereof, I have hereunto set my hand

15   and seal this 29th day of July, 2007.

16

17       _____

18            Lisa A. Moreira, RDR, CRR

19            Notary Public

20            CSR No. 146299

21   My commission expires

22   December 25, 2009