# Exhibit F



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

April 8, 2008

*VIA FACSIMILE (212) 808-7897 AND FIRST CLASS MAIL*

Neil Merkl, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178-0002

      Re: United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v.
      Dey, Inc., et al., *Civil Action No. 05-11084-PBS*

Dear Mr. Merkl:

      Enclosed please find a courtesy copy of the **United States' First Amended Cross-Notice of Deposition of Dey,** which was served electronically on Lexis Nexis on April 7, 2006.

      If you should have any questions, please do not hesitate to contact me at (617) 748-3298 or jeff.fauci@usdoj.gov.  Thank you.

                      Sincerely,

                      James J. Fauci
                      Assistant U.S. Attorney

JJF/gkb
Enclosures



## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>) |
| | ) |
| **THIS DOCUMENT RELATES TO:** | )<br>) |
| | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS | )<br>)<br>)<br>)<br>) |
| | Hon. Patti B. Saris |

---

### UNITED STATES' FIRST AMENDED CROSS-NOTICE OF DEPOSITION OF DEY

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6)of the Federal Rules of Civil Procedure, the United States by its undersigned attorneys, cross-notices the deposition of a representative of Defendants Dey, L.P. and Dey, Inc. (collectively, "Dey") who is the most knowledgeable regarding the issues identified herein and the subject drugs of the litigation. Defendant Dey shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The deposition will take place before a notary public, or any officer authorized to administer oaths, commencing at 9:00 a.m. on May 14, 2008, and will continue from day to day until completed, at the Hilton Garden Inn, 3585 Solano Avenue, Napa, California.

The deposition is being taken for the purposes of discovery, for use at trial, and for such other purposes as permitted under the Federal Rules of Civil Procedure. The deposition was originally noticed by the plaintiffs in *City of New York et al. v. Abbott Laboratories, Inc., et al.*, MDL 1456, and the plaintiffs in that case have served a Third Revised Notice of 30(b)(6) Deposition of Dey L.P. and Dey, Inc. A copy of the *City of New York* notice is attached as Exhibit A. The State of California has also cross-noticed the deposition in *State of California ex rel. Ven-a-Care v. Abbott Laboratories, Inc., et al.*, Case No. 03-cv-11226-PBS, MDL 1456. A copy of that notice is attached as Exhibit 2 hereto. In addition, the State of Florida has served a Third Amended Cross Notice of Deposition of Dey, L.P. and Dey, Inc., in *State of Florida ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Case No. 98-3032 A (Circuit Court, Leon County), a copy of which is attached as Exhibit 3.

Dey shall designate a person or persons to testify under oath about the subjects set forth below. The definitions in Local Rule 26.5 are incorporated herein by reference.[1]

1.     The subjects set forth in the Third Revised Notice of 30(b)(6) Deposition of Dey L.P. and Dey, Inc. served by the plaintiffs in *City of New York et al. v. Abbott Laboratories, Inc., et al.*, MDL 1456, attached hereto as Exhibit 1, except that the time period covered by the subjects shall be January 1, 1992, to the present.

2.     The subjects set forth in the State of California's Cross-Notice of Deposition of Dey L.P. and Dey, Inc., served by the plaintiffs in *State of California ex rel. Ven-a-Care v. Abbott Laboratories, Inc., et al.*, Case No. 03-cv-11226-PBS, MDL 1456, attached hereto as Exhibit 2, except that the time period covered by the subjects shall be January 1, 1992, to the present.

3.     The subjects set forth in the Third Amended Cross Notice of Deposition of Dey, L.P. and Dey, Inc., served by the plaintiffs in *State of Florida ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Case No. 98-3032 A (Circuit Court, Leon County), a copy of which is attached as Exhibit 3.

4.     Dey's knowledge and understanding of the laws, practices, and policies of State Medicaid agencies regarding reimbursement for Dey's drug products, including Dey's knowledge and understanding concerning State Medicaid agencies' use of published AWPs or WAC prices.

5.     Dey's knowledge and understanding of the laws, practices, and policies of the U.S. Department of Health and Human Services regarding Medicare reimbursement for Dey's drug products, including Dey's knowledge and understanding concerning the the Medicare program's use of published AWPs in determining reimbursement.

6.     With regard to the plaintiffs' claim in the Complaint (at ¶ 50) that Dey made false or fraudulent representations about drug prices and costs to *RedBook*, First DataBank, and Medispan, the factual basis for the statement in Dey's Thirteenth Defense that, "As to any statement asserted against Dey that Plaintiff allege [sic] to be false or misleading, Dey had no reasonable grounds to believe, and did not believe at the time such a statement was made, that the statement was false or misleading." This topic shall include but not be limited to:

_____

[1] When a topic requests "the identity of" an person or document, this shall mean "identify" for purposes of LR 26.5.

    a.    The identity of each employee (current and former) of Dey who held a belief that Dey's price representations were not false or fraudulent;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the belief.

7.    Dey's belief, if any, regarding any industry practice concerning drug manufacturers' setting or reporting of AWP (for purposes of publication by the compendia) for a new generic drug at the time of launch, and any industry practice concerning subsequently changing or not changing the reported or published AWP. This topic shall include but not be limited to:

    a.    The identity of each employee (current and former) of Dey who held such a belief concerning such industry practice;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the belief.

8.    Dey's belief, if any, that the United States government (or any agency or agent thereof) approved of or acquiesced in Dey's practice of causing the publication of AWPs for Dey products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

    a.    The identity of each employee (current and former) of Dey who held such a belief;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the person's belief.

9.    Dey's belief, if any, that the United States government (or any agency or agent thereof) had knowledge of Dey's practice of causing the publication of AWPs for Dey's products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

>    a.    The identity of each employee (current and former) of Dey who held such a belief;

>    b.    The time period when such person held that belief;

>    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

>    d.    All other information that formed a basis for the person's belief.

10.    Dey's belief, if any, that the United States government (or any agency or agent thereof) approved of or acquiesced in Dey causing the Medicare program to reimburse providers for Dey drugs in amounts significantly in excess of provider acquisition costs plus any established dispensing fee, including:

>    a.    The identity of each employee (current and former) of Dey who held such a belief;

>    b.    The time period when such person held that belief;

>    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

>    d.    All other information that formed a basis for the person's belief.

11.    Dey's belief, if any, that any State government (or any agency or agent thereof) had knowledge of Dey's practice of causing the publication of AWPs for Dey's drug products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

>    a.    The identity of each employee (current and former) of Dey who held such a belief;

>    b.    The time period when such person held that belief;

      c.     Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d.     All other information that formed a basis for the person's belief.

12.    Dey's belief, if any, that any State government (or any agency or agent thereof), approved of or acquiesced in Dey's practice of causing the publication of AWPs for Dey's drug products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

      a.     The identity of each employee (current and former) of Dey who held such a belief;

      b.     The time period when such person held that belief;

      c.     Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d.     All other information that formed a basis for the person's belief.

13.    Dey's belief, if any, that any State government (or any agency or agent thereof) approved of or acquiesced in Dey causing the Medicaid program to reimburse providers for Dey drugs in amounts significantly in excess of provider acquisition costs plus any established dispensing fee, including:

      a.     The identity of each employee (current and former) of Dey who held such a belief;

      b.     The time period when such person held that belief;

      c.     Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d.     All other information that formed a basis for the person's belief.

14.    The dates of each of Dey's production of documents in response to the subpoena issued to Dey by the Office of the Inspector General of the United States Department of Health and Human Services in or about October 1997, and the bates numbers of the documents produced in each separate production of documents.

15.    The dates of Dey's production of documents to the State of Texas in response to the State of Texas' discovery requests in *State of Texas ex rel. Ven-A-Care v. Dey Inc., et al.*, Cause No. GV 002327, and the bates numbers of the documents produced in each separate production of documents.

16.    Any and all actions on the part of any Dey employee, attorney or board representative to locate, withhold, or conceal the existence of documents responsive to the subpoena received by Dey from the Office of the Inspector General of the United States Department of Health and Human Services in or about October 1997 or responsive to discovery demands received from the Attorney General of the State of Texas. This includes, but is not limited to, the initial failure to produce and subsequent production of the Memorandum from Robert Mozak to Charles Rice, Pamela Marrs and Jean P. Termier dated February 24, 1992, regarding Dey's albuterol pricing strategies (see DL-TX-0090815 - DL-TX-0090855), and the reimbursement comparison worksheets concerning Dey albuterol products (see DL-TX-0090875 - DL-TX-0090879, and DL-TX-0076254).

17.    Any and all actions on the part of any Dey management, employee, attorney or board representative to link compensation paid to Dey sales personnel to their performance of duties involving the marketing of reimbursement spreads to customers or potential customers, including but not limited to their use of the "Reimbursement Comparison Worksheet" (see DL-TX-0076254).

18.    With regard to Dey's assertion in the Seventh Defense of its Answer, that "Any and all actions taken by Dey with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice," all communications between any employee or officer of Dey and Dey's attorneys, whether in-house or outside counsel, concerning the legality of any actions concerning any of the matters alleged in the complaint.

04/08/08  11:58 FAX 617 748 3969                                        ☑009

For the United States of America,

JEFFREY S. BUCHOLTZ
ACTING ASSISTANT ATTORNEY
GENERAL

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

/s/ George B. Henderson, II
GEORGE B. HENDERSON, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
(617) 748-3272

DANIEL R. ANDERSON
LAURIE A. OBEREMBT
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 514-3345

For the relator, Ven-A-Care of the
Florida Keys, Inc.,

JAMES J. BREEN
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel:  (954) 874-1635
Fax: (954) 874-1705

SHERRIE R. SAVETT
GARY L. AZORSKY
SUSAN S. THOMAS
JEANNE A. MARKEY
JOY CLAIRMONT
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3000
Facsimile: 215-875-4636


Dated: April 4, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above "United States' First Amended Cross-Notice of Deposition of Dey" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: April 4 , 2008

/s/ George B. Henderson, II
George B. Henderson, II

7

04/08/08  11:58 FAX 617 748 3969                                      ☑010

# EXHIBIT 1

04/08/08  11:58 FAX 617 748 3969                                    ☑011



Mar 31 2008
11:01PM

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) )  MDL NO. 1456 )  Civil Action No. 01-12257-PBS ) |
| THIS DOCUMENT RELATES TO: | ) )  Judge Patti B. Saris |
| *The City of New York, et. al.* | ) ) |
| *v.* | ) |
| *Abbott Laboratories, et al.* | ) ) |

## THIRD REVISED 30(b)(6) NOTICE OF DEPOSITION OF DEY, L.P. AND DEY, INC.

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition, by oral examination on the following date of the representative of defendants Dey, L.P. and Dey Inc. (collectively "Dey"), who is the most knowledgeable regarding the issues identified herein and the subject drugs of the litigation. Defendant Dey shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The deposition shall be taken before a notary public or other person authorized to administer oaths and shall be recorded by stenographic and video means. The deposition will commence at the adjournment of the transactional data deposition of Dey, L.P. and Dey, Inc., contemporaneously noticed on May 14, 2008 at 9:00 a.m. at the Hilton Garden Inn, 3585 Solano Avenue, Napa, CA 94558 and will continue day to day until completed.

As used herein the term "subject drugs" refers to the drugs and NDCs listed in Revised Exhibit B to the First Amended Consolidated Complaint filed on June 8, 2007, with spreads of 30% or greater. Pursuant to CMO 33, the time period covered by the topics identified in this Notice of Deposition is 1997 through 2005. To the extent they are relevant, this notice incorporates by reference the definitions and rules of construction delineated in Plaintiffs' First Request for Production of Documents to All Defendants dated October 18, 2007.

Dey shall designate a person or persons to testify under oath about the following topics:

1.      The reason(s) Dey signed Medicaid rebate agreements pursuant to 42 U.S.C. §1396r(a)(1).

2.      Dey's knowledge of the federal Medicaid program's laws, regulations, and rules including 42 C.F.R. 447.331 and 42 C.F.R. 447.301, specifically, Dey's knowledge that Medicaid reimbursements to providers are based on or derived from the prices published by pricing compendia such as First Databank.

3.      Dey's knowledge of the New York Medicaid program's laws, regulations, and rules including Dey's knowledge that the New York Medicaid program's reimbursement formula for prescription drugs uses the reported Average Wholesale Price ("AWP") and the Federal Upper Limit ("FUL").

4.      The customers who purchase the subject drugs from Dey, and the competitive environment in which the subject drugs were marketed and sold.

5.      The sales made to and prices charged to customers for the subject drugs pursuant to contracts with Dey.

2

6.     Chargebacks for the subject drugs, whether bundled or not, and the implementation of Dey's chargeback system.

7.     All rebates, discounts, free goods, administrative fees, and off-invoice allowances for the subject drugs, whether bundled or not.

8.     Who determines what Dey's customers pay for the subject drugs.

9.     How Dey determined what customers paid for subject drugs, including but not limited to the initial prices offered to prospective customers and the final net cost or price of the subject drugs to the purchaser.

10.     How Dey informed customers of price and price changes for the subject drugs, and who was involved in those communications.

11.     The rebates, discounts, incentives, fees or any other consideration of any kind offered to Dey's customers who purchase, dispense, or award formulary placement to the subject drugs.

12.     The net prices paid by Dey customers for direct or indirect purchases from Dey of the subject drugs.

13.     How Dey measures and records the profitability of the subject drugs sold by Dey.

14.     How Dey tracks sales and revenue for the subject drugs.

15.     Whether Dey calculates a net price for the subject drugs after taking into account any and all rebates, discounts, incentives, fees or other consideration paid by Dey, and if so, what the methodology is for such calculation.

16.     Dey's net revenue for the subject drugs as a percentage of Dey's reported prices.

17.    Dey's marketing and sales policies, strategies, and practices regarding the subject drugs.

18.    Who at Dey is/was responsible for developing marketing or sales policy and marketing or sales strategies regarding the subject drugs.

19.    The structure of Dey's marketing and sales force or department as it relates to the subject drugs.

20.    The training, marketing, promotional, informative and/or other sales materials supplied to Dey's sales force for the subject drugs.

21.    How Dey compensates its sales force for sales related to the subject drugs.

22.    Whether, and to what extent Dey ever considers/ed a customer's reimbursement for the subject drugs when marketing or selling the subject drugs.

23.    Whether Dey ever made reference, either orally or in writing, to published prices, reimbursement prices, reimbursement methodology, AWP, WAC or FUL for the subject drugs.

24.    The prices Dey reports for the subject drugs to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

25.    Who at Dey determines the prices reported to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

26.    How Dey determines what prices to report to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

27.    How the pricing compendia use the prices Dey reports.

28.    Any communications between Dey and the publishing compendia, regarding how they use the prices reported by Dey.

29.   Communications between Dey and the publishing compendia.

30.   Dey's reasons for supplying pricing information to the publishing compendia.

31.   Whether Dey ever communicated to First DataBank, the Redbook, or Medispan that the AWP or WAC or WAC equivalent that Dey reported to these entities was not the price actually charged by wholesalers to providers or paid by wholesalers to Dey for the subject drugs and, if so, when such communications took place and of what they consisted.

32.   Whether Dey ever communicated to anyone in the New York Medicaid Program that the AWP, WAC or WAC equivalent that Dey reported to First DataBank, the Redbook, or Medispan was not a price actually charged by wholesalers to providers or paid by wholesalers to Dey for subject drugs and, if so, when such communications took place and of what they consisted.

33.   Any effort made by Dey to determine the formulary status or reimbursement status of the subject drugs.

34.   Any effort made by Dey to determine when the subject drugs were reimbursed based on FUL, or the level of any such FUL.

35.   Any effort made by Dey to determine which company's reported price(s) for the subject drugs were being used by CMS to set a FUL.

5

04/08/08  11:58 FAX 617 748 3969                                           ☑016

Dated:  March 31, 2008

**KIRBY McINERNEY LLP**

By:               /s/               

Joanne M. Cicala, Esq.
James P. Carroll Jr., Esq.
Aaron D. Hovan, Esq.
830 Third Avenue
New York, New York 10022
(212) 371-6600

*On behalf of the Captioned Counties, other*
*Than the Counties of Nassau and Orange*

6

### CERTIFICATE OF SERVICE

I, Aaron D. Hovan, hereby certify that I caused a true and correct copy of the foregoing Third Revised Notice of Deposition to be served on counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: March 31, 2008

/s/   Aaron D. Hovan
Kirby McInerney LLP

# EXHIBIT 2



Jan 3 2008
4:30PM

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) AVERAGE WHOLESALE PRICE LITIGATION ) ) ) THIS DOCUMENT RELATES TO: ) *State of California, ex rel. Ven-A-Care v.* ) *Abbott Laboratories Inc., et al.* ) **Case No. 03-cv-11226-PBS** ) ) | **MDL No. 1456** **Master File No. 01-12257-PBS** **Judge Patti B. Saris** |

## STATE OF CALIFORNIA'S CROSS-NOTICE
## OF DEPOSITION OF DEY

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6)of the Federal Rules of Civil Procedure, the State of California by its undersigned attorneys, cross-notices the deposition of a representative of Defendant Dey, L.P. and Dey, Inc. (collectively, "Dey"). The deposition will take place before a notary public, or any officer authorized to administer oaths, commencing at 9:30 a.m. on Thursday, January 24, 2008, and will continue from day to day until completed, at a location in the State of California to be agreed upon by Plaintiff and Defendant. The deposition is being taken for the purposes of discovery, for use at trial, and for such other purposes as permitted under the Federal Rules of Civil Procedure.

Defendant shall designate a person or persons to testify under oath regarding the matters listed below. As used below, the term "Identified Drugs" means those drugs listed by NDC number on Exhibit A attached hereto. Please note that all subject matters concern the time period January 1, 1994 through December 31, 2004.

1.      Dey's policies or directives concerning marketing Dey drugs, and specifically any policy or directive relating to marketing the spread.

1

2.     Identify who created and who approved all marketing materials.

3.     Explain the process by which the "Reimbursement Comparison Worksheet" for Dey Unit-Dose albuterol was created, approved and implemented.

4.     All reasons why Defendant submitted AWP and WAC prices to the price reporting services, including First DataBank.

5.     The reasons why Defendant attempted to have the Identified Drugs placed on California's Medi-Cal formulary.

6.     Defendant's knowledge of the California Medi-Cal program's rules, regulations and laws, including Defendant's knowledge of the formula used by Medi-Cal for prescription drug reimbursement.

7.     Defendant's policies and practices as to how AWP and WAC for the Identified Drugs were initially set and when and why AWP and WAC would be changed.

8.     The training and education given to Defendant's sales representatives or national account managers in connection with the marketing and sale of the Identified Drugs.

9.     The types of documents given to Defendant's sales representatives or national account managers in connection with either the marketing and sale of the Identified Drugs, or customer inquiries regarding price changes or reimbursement.

10.     Defendant's policy of storing and maintaining correspondence between Defendant's sales representatives or national account managers and Defendant's customers, concerning the marketing and sale of the Identified Drugs, or inquiries regarding price changes or reimbursement, and the current location of such correspondence.

11.     Pricing strategies used in connection with the marketing and sale of the Identified Drugs.

2

12.     Identity of all documents, including reports, charts, models, analysis, worksheets and matrices used by Defendant to calculate third party reimbursement for the Identified Drugs, and the current location of such documents.

13.     Defendant's policy and procedure since becoming aware of the AWP drug pricing investigation concerning document and email retention and destruction.

14.     The computer system(s) used by Defendant to track the price of the Identified Drugs.

15.     The computer system(s) used by Defendant to track the sale of the Identified Drugs.

16.     The name and location of each database used by Defendant to store information about the prices of the Identified Drugs.

17.     The name and location of each database used by Defendant to store information concerning the sales of the Identified Drugs.

18.     The name and location of each database used by Defendant to store information concerning discounts, rebates and chargebacks in connection with the sale of the Identified Drugs.

19.     When Dey first became aware that the government (either federal or any state) was investigating the average wholesale price of drugs.

20.     Whether anyone at Dey monitored the government (either federal or any state) investigation of the average wholesale price of drugs.

21.     The organization of each of Defendant's departments or divisions responsible for pricing, marketing and sales of the Identified Drugs.

The deposition was originally noticed by the Plaintiff in *The City of New York, et al. v. Abbott Laboratories, et al.* A copy of the Revised 30(b)(6) Notice of Deposition of Dey is attached hereto as Exhibit B.

Dated: January 3, 2008                                      Respectfully submitted,

                                                            EDMUND G. BROWN JR.
                                                            Attorney General for the State of California

                                                            By:   /s/  Rita L. Hanscom
                                                            RITA L. HANSCOM
                                                            Deputy Attorney General
                                                            California Department of Justice
                                                            1455 Frazee Road, Suite 315
                                                            San Diego, California  92108
                                                            Tel:  (619) 688-6026
                                                            Fax:  (619) 688-4200

                                                            **Attorneys for Plaintiff
                                                            STATE OF CALIFORNIA**

4

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 3, 2008, a copy to Lexis-Nexis for posting and notification to all parties.

_/s/ Rita L. Hanscom_
RITA L. HANSCOM

# EXHIBIT A

Dey
Exhibit A

| NDC | PRODUCT LABEL NAME |
|---|---|
| 49502018104 | ACETYLCYSTEINE 10% VIAL |
| 49502018110 | ACETYLCYSTEINE 10% VIAL |
| 49502018130 | ACETYLCYSTEINE 10% VIAL |
| 49502018204 | ACETYLCYSTEINE 20% VIAL |
| 49502018210 | ACETYLCYSTEINE 20% VIAL |
| 49502018230 | ACETYLCYSTEINE 20% VIAL |
| 49502069703 | ALBUTEROL 0.83 MG/ML SOLUTION |
| 49502069724 | ALBUTEROL 0.83 MG/ML SOLUTION |
| 49502069729 | ALBUTEROL 0.83 MG/ML SOLUTION |
| 49502069733 | ALBUTEROL 0.83 MG/ML SOLUTION |
| 49502069760 | ALBUTEROL 0.83 MG/ML SOLUTION |
| 49502069761 | ALBUTEROL 0.83 MG/ML SOLUTION |
| 49502010501 | ALBUTEROL 5 MG/ML SOLUTION |
| 49502019620 | ALBUTEROL 5 MG/ML SOLUTION |
| 49502030327 | ALBUTEROL 90 MCG INH REFILL |
| 49502030317 | ALBUTEROL 90 MCG INHALER |
| 49502033317 | ALBUTEROL 90 MCG INHALER |
| 49502068902 | CROMOLYN NEBULIZER SOLUTION |
| 49502068912 | CROMOLYN NEBULIZER SOLUTION |
| 49502068961 | CROMOLYN NEBULIZER SOLUTION |
| 49502050001 | EPIPEN 0.3 MG AUTO-INJECTOR |
| 49502050002 | EPIPEN 0.3 MG AUTO-INJECTOR |
| 49502050101 | EPIPEN JR 0.15 MG AUTO-INJCT |
| 49502050102 | EPIPEN JR 0.15 MG AUTO-INJCT |
| 49502068503 | IPRATROPIUM BR 0.02% SOLN |
| 49502068524 | IPRATROPIUM BR 0.02% SOLN |
| 49502068529 | IPRATROPIUM BR 0.02% SOLN |
| 49502068533 | IPRATROPIUM BR 0.02% SOLN |
| 49502068560 | IPRATROPIUM BR 0.02% SOLN |
| 49502068561 | IPRATROPIUM BR 0.02% SOLN |
| 49502067603 | METAPROTERENOL 0.6% SOLN |
| 49502067624 | METAPROTERENOL 0.6% SOLN |

04/08/08   11:59 FAX 617 748 3969   ☑026

# EXHIBIT B



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) **MDL No. 1456** **Master File No. 01-12257-PBS** **Judge Patti B. Saris** |
| THIS DOCUMENT RELATES TO: | ) ) |
| *City of New York, et al.* *v.* *Abbott Laboratories, et al.* | ) ) ) ) ) |

### REVISED 30(b)(6) NOTICE OF DEPOSITION OF DEY, L.P. AND DEY INC.

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition, by oral examination on the following date of the representative of defendants Dey, L.P. and Dey Inc. (collectively "Dey"), who is the most knowledgeable regarding the issues identified herein and the subject drugs of the litigation. Defendant Dey shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The deposition shall be taken before a notary public or other person authorized to administer oaths and shall be recorded by stenographic means. The deposition will commence on January 24, 2008 at 9:30 a.m. at a location in the State of California to be agreed upon by plaintiffs and Dey, and will continue day to day until completed.

As used herein the term "subject drugs" refers to the drugs and NDCs listed in Revised Exhibit B to the First Amended Consolidated Complaint filed on June 8, 2007, with spreads of 30% or greater. Pursuant to CMO 33, the time period covered by the topics identified in this Notice of Deposition is 1997 through 2005. To the extent they are relevant, this notice

incorporates by reference the definitions and rules of construction delineated in Plaintiffs' First Request for Production of Documents to All Defendants dated October 18, 2007.

Dey shall designate a person or persons to testify under oath about the following topics:

1.      The reason(s) Dey signed Medicaid rebate agreements pursuant to 42 U.S.C. §1396r(a)(1).

2.      Dey's knowledge of the federal Medicaid program's laws, regulations, and rules including 42 C.F.R. 447.331 and 42 C.F.R. 447.301, specifically, Dey's knowledge that Medicaid reimbursements to providers are based on or derived from the prices published by pricing compendia such as First Databank.

3.      Dey's knowledge of the New York Medicaid program's laws, regulations, and rules including Dey's knowledge that the New York Medicaid program's reimbursement formula for prescription drugs uses the reported Average Wholesale Price ("AWP") and the Federal Upper Limit ("FUL").

4.      The customers who purchase the subject drugs from Dey, and the competitive environment in which the subject drugs were marketed and sold.

5.      The sales made to and prices charged to customers for the subject drugs pursuant to contracts with Dey.

6.      Chargebacks for the subject drugs, whether bundled or not, and the implementation of Dey's chargeback system.

7.      All rebates, discounts, free goods, administrative fees, and off-invoice allowances for the subject drugs, whether bundled or not.

8.      Who determines what Dey's customers pay for the subject drugs.

9.     How Dey determined what customers paid for subject drugs, including but not limited to the initial prices offered to prospective customers and the final net cost or price of the subject drugs to the purchaser.

10.     How Dey informed customers of price and price changes for the subject drugs, and who was involved in those communications.

11.     The rebates, discounts, incentives, fees or any other consideration of any kind offered to Dey's customers who purchase, dispense, or award formulary placement to the subject drugs.

12.     The net prices paid by Dey customers for direct or indirect purchases from Dey of the subject drugs.

13.     How Dey measures and records the profitability of the subject drugs sold by Dey.

14.     How Dey tracks sales and revenue for the subject drugs.

15.     Whether Dey calculates a net price for the subject drugs after taking into account any and all rebates, discounts, incentives, fees or other consideration paid by Dey, and if so, what the methodology is for such calculation.

16.     Dey's net revenue for the subject drugs as a percentage of Dey's reported prices.

17.     Dey's marketing and sales policies, strategies, and practices regarding the subject drugs.

18.     Who at Dey is/was responsible for developing marketing or sales policy and marketing or sales strategies regarding the subject drugs.

19.     The structure of Dey's marketing and sales force or department as it relates to the subject drugs.

3

20.     The training, marketing, promotional, informative and/or other sales materials supplied to Dey's sales force for the subject drugs.

21.     How Dey compensates its sales force for sales related to the subject drugs.

22.     Whether, and to what extent Dey ever considers/ed a customer's reimbursement for the subject drugs when marketing or selling the subject drugs.

23.     Whether Dey ever made reference, either orally or in writing, to published prices, reimbursement prices, reimbursement methodology, AWP, WAC or FUL for the subject drugs.

24.     The prices Dey reports for the subject drugs to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

25.     Who at Dey determines the prices reported to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

26.     How Dey determines what prices to report to the publishing compendia, including but not limited to First DataBank, Medispan and Redbook.

27.     How the pricing compendia, use the prices Dey reports.

28.     Any communications between Dey and the publishing compendia, regarding how they use the prices reported by Dey.

29.     Communications between Dey and the publishing compendia.

30.     Dey's reasons for supplying pricing information to the publishing compendia.

31.     Whether Dey ever communicated to First DataBank, the Redbook, or Medispan that the AWP or WAC or WAC equivalent that Dey reported to these entities was not the price actually charged by wholesalers to providers or paid by wholesalers to Dey for the subject drugs and, if so, when such communications took place and of what they consisted.

4

32.    Whether Dey ever communicated to anyone in the New York Medicaid Program that the AWP, WAC or WAC equivalent that Dey reported to First DataBank, the Redbook, or Medispan was not a price actually charged by wholesalers to providers or paid by wholesalers to Dey for subject drugs and, if so, when such communications took place and of what they consisted.

33.    Any effort made by Dey to determine the formulary status or reimbursement status of the subject drugs.

34.    Any effort made by Dey to determine when the subject drugs were reimbursed based on FUL, or the level of any such FUL.

35.    Any effort made by Dey to determine which company's reported price(s) for the subject drugs were being used by CMS to set a FUL.

Dated:  December 21, 2007

                                                **KIRBY McINERNEY LLP**

                                    By:    _____/s/_____

                                           Joanne M. Cicala, Esq.
                                           James P. Carroll Jr., Esq.
                                           Aaron D. Hovan, Esq.
                                           830 Third Avenue
                                           New York, New York 10022
                                           (212) 371-6600

                                           *On behalf of the Captioned Counties, other
                                           than the Counties of Nassau and Orange*

                                           Ross B. Brooks, Esq.
                                           **MILBERG WEISS LLP**
                                           One Pennsylvania Plaza
                                           New York, NY 10119
                                           (212) 594-5300

                                           *Special Counsel for the County of Nassau*

5

Stanley J. Levy
Theresa A. Vitello
**LEVY PHILLIPS &
KONIGSBERG, LLP**
800 Third Ave. 13th Floor
New York, New York 10022
Telephone: (212) 605-6200
Facsimile: (212) 605-6290

*Counsel for the County of Orange*

## CERTIFICATE OF SERVICE

I, James P Carroll Jr, hereby certify that I caused a true and correct copy of the foregoing Notice of Deposition, to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated:  December 21, 2007

/s/
James P. Carroll Jr.