UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>*U.S. ex rel. Ven-A-Care of the Florida Keys, Inc., et al., v. Abbott Laboratories, Inc., et al.*, Civil Action No. 06-CV-11337 | MDL DOCKET NO. 1456<br><br>Lead Case No. 01-CV-12257<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Marianne B. Bowler |

**ABBOTT LABORATORIES INC.'S REPLY IN SUPPORT OF ITS
MOTION TO ENFORCE THE FEBRUARY 16, 2007 PROTECTIVE ORDER AND
FOR ORDER COMPELLING PLAINTIFFS TO RETURN INADVERTENTLY
PRODUCED PRIVILEGED DOCUMENTS**

The Government's response (Dkt. No. 5344, "Opp.") to Abbott's Motion to Enforce the February 16, 2007 Protective Order and for Order Compelling Plaintiffs to Return Inadvertently Produced Privileged Documents (Dkt. No. 5276, "Motion") is telling. This is a straightforward issue: Abbott inadvertently produced the three Privileged Documents[1], and asked the Government to give them back – as the Protective Order in this case provides. In response, the Government does not argue that that inadvertent production constituted any kind of waiver, nor could it. (*See* Motion at 6-8.) And the Government only half-heartedly contests the fact that the production of these documents was inadvertent – which it clearly was. (*See id.* at 9-12.)

Instead, the Government spends the bulk of its 17-page submission affirmatively requesting that this Court find a broad subject-matter waiver of entire categories of materials, arguing that Abbott implicitly waived the attorney-client privilege pertaining to its Medicare and

---

[1] *See* Opp. Ex. A, February 27, 1991 Albrecht Memo (ABT-DOJ 0326756, -0326772) and Albrecht 1991 Cover Fax (ABT DOJ 326759) (collectively the "Privileged Documents").

Medicaid compliance efforts, which are relevant to Abbott's "compliance defense." The request is misplaced. There is no basis in law or fact to find such a waiver in this case.

Abbott's request to get its two documents back should be granted, and the Government's request for a waiver of Abbott's privilege claims over broad swaths of materials should be denied.

## I.   THE PRIVILEGED DOCUMENTS WERE PRODUCED INADVERTENTLY.

The Government does not seriously contest[2] that the Privileged Documents are confidential attorney-client communications.[3] (*See* Motion at 12-14; Opp. at 2.) Nor does the Government dispute that the Protective Order specifies that inadvertent production "shall in no way prejudice or otherwise constitute a waiver of . . . any claim of privilege." (*Id.* at 7-8, 12-14, Ex. M., Opp. at 2.) The only response the Government makes to the contentions in Abbott's motion is to contest whether Abbott's production of Privileged Documents was "inadvertent." (*See id.* at 9-12, Opp. at 14.) The Government argues in the alternative that Abbott (1) intended to disclose the Privileged Documents, or (2) acted in a grossly negligent manner by failing to catch the Privileged Documents during its confidentiality review, or by failing to undertake an electronic search for attorney names, titles, and office locations. (*See* Opp. at 15-17.) Not so.

---

[2] The Government notes in passing that copies of the Privileged Documents "were made part of the general H&F Contract File and preserved . . . in Abbott's general file room. . . and not in the General Counsel's Office." (Opposition at 2-3.) At the time of production, the H&F Contract File was located in Abbott's Corporate Records department as a centralized storage repository for its former Home Infusion Business documents, accessible on a need to know basis. The files contained in Abbott's Corporate Records department are not readily accessible to all Abbott employees or any outside individuals. Given these limitations on access, their storage did not break Abbott's institutional attorney-client confidences. *See James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 142 (D. Del. 1982); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

[3] The 1991 Cover Fax is a one page fax communication from Kathryn Riddle, an Abbott Contract Marketing Analyst, to James Albrecht, one of Abbott's Senior Attorneys. (See Opposition Ex. A, ABT-DOJ 326759.) The Cover Fax includes Ms. Riddle's hand written request for Mr. Albrecht's legal advice regarding a contract amendment. As such, it is unquestionably privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 389-397 (1981); *Cavallaro v. United States*, 284 F.3d 236; 245 (1st Cir. 2002).

*First*, Abbott's production was certainly not intentional, and the Government has no evidence that it was. The Government's whole argument here is the circular contention that because (1) Abbott had procedures in place to prevent production of privileged documents, and (2) Abbott nonetheless produced the Privileged Documents, (3) the fact of production alone shows it was intentional. (Opp. at 15.) Wrong. The fact of production shows only a failure in the procedures – the very definition of inadvertence. More important, the Government's circular *argument* notwithstanding, the undisputed *evidence* is that at the time of its production of Home Infusion Services documents, Abbott and its counsel were unaware that the two Privileged Documents were included in Abbott's Home Infusion production. (Motion Ex. A, Dahl Decl. at ¶ 14.)

The Government further suggests that, because Abbott snapped back privileged documents when the Government attempted to use them as evidence, that somehow shows the production of those documents was intentional. (Opp. at 15.) Nonsense. Abbott did not intentionally produce the Privileged Documents so that it could strategically delay its snap back until "the moment that the United States attempted to use [them] at deposition." (*See* Motion at 4, 14-15; Ex. E at 600:7-14 (Abbott snapped back the documents at the Fishman deposition because that was the first time its attorneys became aware of the inadvertent production).) Abbott simply was not aware they had been produced. Moreover, as the attorneys representing the Government must know, they had an ethical obligation to inform Abbott that they were in possession of the Privileged Documents. *See* MODEL RULES OF PROF'L CONDUCT R. 4.4(b); (2002); *id.* cmt. 2; D.C. BAR APPX. A, RULE 4.4; *id.* cmt. 2; FLA. BAR REG. R. 4-4.4; *id.* cmt.; *McMahon v. Universal Golf Constr. Corp.*, 20 Mass. L. Rep. 59 (Mass. Super. Ct. 2005). That Abbott snapped back the documents after the Government "elected to use [the Privileged

Documents] as part of its discovery or trial strategy" only shows that the Government's lawyers put their desire to build their case ahead of their ethical obligations – that reflects poorly on them, not on Abbott.

*Second*, Abbott was not grossly negligent in producing the Privileged Documents. Abbott need not show 100% accuracy to demonstrate its review process was not grossly negligent. *See* (Motion at 10-12); *VLT, Inc. v. Lucent Technologies, Inc.*, 2003 U.S. Dist. LEXIS 723 (D. Mass. Jan 21, 2003) (J. Saris). Instead, Abbott must demonstrate only that its established privilege review procedures were reasonably designed to prevent the disclosure of privileged documents. *See* (Motion at 10-11); *VLT Corp. v. Unitrode Corp.*, 194 F.R.D 8, 11-12 (D. Mass. 2000). Abbott amply satisfied that requirement by employing qualified individuals to conduct its review (*see* Motion at 10-11), providing those reviewers with reasonable guidance regarding their task (*see id.*), and achieving an overall level of success. (*See id.* at 11-12.) Again, this is a case where Abbott has produced over a million pages of documents. This motion is about three documents that were inadvertently produced.

The Government's allegation that Abbott's confidentiality designation process should have identified the privileged nature of the Privileged Documents is silly. The confidentiality review of the Home Infusion Documents was conducted separately from the two-tier privilege review and for a different purpose. (*See* Reply Ex. A, June 20, 2008 Dahl Decl. at ¶ 5.) The Jones Day staff involved in the confidentiality review was distinct from the licensed contract attorneys and junior Jones Day attorneys performing the privilege review. (*Id.* at ¶ 6.) As this review involved different attorneys and took place separately from Abbott's two-tier privilege review, the documents were not re-reviewed for responsiveness or privilege. (*Id.* at ¶¶ 8-9.)

Instead, separate indicia were examined for the determination of confidentiality.[4] (*Id.* at ¶ 7.) It is completely unremarkable that a review designed to catch one thing does not catch some other unrelated thing.

Finally, the Government's complaint that Abbott did not use computer searches to identify attorneys is of no moment. Indeed, Abbott's reliance on manual rather than electronic screening actually *refutes* the Government's claims of gross negligence. Simple electronic searches are not as reliable as individual document checks. As evidenced by the Albrecht 1991 Cover Fax, many documents contain handwriting which is unrecognized by the OCR searches championed by the Government. Abbott's "failure" to conduct (a secondary) computer search for attorney names and office locations does not support a finding of gross negligence; as this Court has noted in the past, "the failure to re-screen" cannot arise to the level of gross negligence. *See VLT, Inc. v. Lucent Technologies, Inc.*, 2003 U.S. Dist. LEXIS 723, at *10.

The production of the Privileged Documents was inadvertent. That is sufficient to overcome the Government's relevant arguments and grant Abbott's motion.

## II.     THE GOVERNMENT'S BROAD "WAIVER" ARGUMENTS ARE WRONG.

With no meritorious arguments as to the matters Abbott actually raised, the Government goes for broke, alleging broad subject-matter waiver in the hope that it might get not only the three Privileged Documents, but others as well.[5] The Government has not remotely met its

---

[4] The confidentiality designation of the 48,000 pages of responsive Home Infusion documents was made in accordance with paragraphs 3, 4, and 15 of this Court's Protective Order (Dkt. No. 3804). (Reply Ex. A. at ¶ 7.)

[5] One indication of how far afield the Government's Opposition travels is its request for a waiver of privilege over virtually all of Abbott's attorney-client communications relating to this case, including: "all documents that refer, relate or pertain to Abbott's in-house counsel's advice concerning: all state and federal compliance or regulatory matters; General Counsel documents pertaining to Medicare or Medicaid and/or the Subject Drugs; the General Counsel's role as Compliance Officer; or Abbott's business dealings and pricing that refer, relate or pertain to federal and state statutes, regulations and guidance for the time period of the case." (Opp. at 17.) This unbounded request flies in the face of well-settled law. As a general rule, subject matter waiver waives the privilege only as to other communications relating to the same subject matter. *See Bittaker v. Woodford*, 331 F.3d 715, 720-721 (9th Cir. 2003) (courts must impose a waiver "no broader than needed to ensure the fairness

burden on these allegations. *See Town of Norfolk v. U.S. Army Corps of Engineers,* 968 F.2d 1438, 1457 (1st Cir. 1992) (when the assertion of a waiver of privilege is contested, the party alleging the waiver has the burden of "demonstrat[ing] each element of the waiver").

This Court must not waive Abbott's attorney-client privilege merely because the Government has instituted litigation alleging that Abbott violated Medicaid and Medicare fraud and abuse laws. Rather, to justify subject matter waiver, the Government must show: (1) Abbott disclosed privileged information; (2) in a way involving some affirmative action (such as asserting a claim or affirmative defense) which put that privileged information at issue by making it relevant to the case; such that (3) application of the privilege will deny the Government access to information vital to rebutting Abbott's claim or affirmative defense. *See Savoy v. Richard A. Carrier Trucking*, 178 F.R.D. 346, 350 (D. Mass. 1998); *Greater Newburyport Clamshell Alliance v. Public Service Co.*, 838 F.2d 13, 18 (1st Cir. 1988). Given the stringent standard for implied waiver, "the case law reveals few genuine instances of implied waiver." *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 23 (1st Cir. 2003); *FDIC v. R.W. Beck, Inc.,* 2004 U.S. Dist. LEXIS 12128, No. 01-CV-11982-RGS, at *3 (D. Mass. Jul. 1, 2004) ("implied waivers are hen's teeth rare"). This is not such an instance.[6]

---

(continued…)

the proceedings before them"); *United States v. Upjohn Co.,* 600 F.2d 1223, 1227 n.12 (6th Cir. 1979), *rev'd on other grounds*, 449 U.S. 383 (1981). Thus, even if the Government's subject-matter contentions were correct, they would not justify such a broad production of documents.

[6] The Privileged Documents actually at issue in Abbott's motion cannot fall under any subject matter waiver requested by the Government because they are entirely distinct from the other so-called attorney advice discussed in the Government's opposition. *See Bittaker*, 331 F.3d at 720-721; *Upjohn,* 600 F.2d at 1227 n.12. The Government's compliance allegations relate to Home Infusion "consignment" contracts offering a variety of services *to certain Abbott customers*, including reimbursement services, inventory management, pharmacy services, consulting services, and training. (*See* United States First Amended Complaint (Dkt. No. 4281) at ¶¶ 124-132.) The proposed "H&F Marketing Agreement" addressed by the Privileged Documents, on the other hand, does not relate to "consignment" agreements (or even the "Home Infusion Therapy Agreement" cited by the Government (*see* Opp. at 13; Opp. Ex. C, ABT-DOJ 326743 to 326749))—it relates to an entirely different kind of relationship. As unprivileged documents produced by Abbott show, that particular agreement did not relate to Abbott's provision of

> **A.   The Government, Not Abbott, Put Abbott's Compliance With Federal Law At Issue By Suing Abbott; Even If Abbott Had Disclosed Privileged Communications (And It Has Not), Abbott Has Done Nothing To Waive Privilege.**

The Government's subject-matter waiver contentions miss the mark primarily because they confuse the law of discovery relevance with the law of waiver.  It is not enough to break privilege for the Government to sue Abbott, then suggest that Abbott's privileged materials are "relevant" to the Government's claims.  *Rhone-Poulenc*, 32 F.3d 851, 864 (3d Cir. 1994) ("Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged,and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of the issue."). Such a contention runs squarely against over a hundred years of law forbidding the disclosure of attorney-client communications regardless of their relevance to opposing parties' claims.  *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Hunt v. Blackburn*, 128 U.S 464, 470 (1888).

Accordingly, the Government must allege more than that privileged materials might be relevant to its case, or even that some such materials were "disclosed . . . in response to [plaintiff]'s broad discovery requests."  *Stratagem Development Corp. v. Heron Intern. N.V.*, 153 F.R.D. 535, 544-545 (S.D.N.Y. 1994).[7]  The Government must show that Abbott "affirmatively

---

(continued…)

reimbursement services, inventory management, pharmacy services, consulting services, or training.  (*See* Opp. Ex. C, ABT-DOJ 026773 to 326775.)  In fact, the H&F "Business Marketing Agreement" does not constitute any type of "consignment" or "Home Infusion Therapy" agreement.  (*See id.*)  Instead, the "Business Marketing Agreement" funnels services in the other direction, with H&F Marketing agreeing to provide marketing services *to Abbott's Home Infusion business*.  (*See id.*)

[7] *See also In re von Bulow*, 828 F.2d at 103; *Goss Intern. Americas, Inc. v. MAN Roland, Inc.*, 2006 WL 1575546 (D.N.H. June 2, 2006) (defendant's production of documents in response to a discovery request "is not the kind of litigation use that results in an implied waiver of privilege"); *In re Sealed Case*, 676 F.3d at 809 n. 54; *EEOC v. Johnson & Higgins, Inc.*, 1998 WL 778369, No. 93 CV 5481 LBS, at *10-11 (S.D.N.Y. 1998); *In re Shearman & Sterling,* 1986 WL 6157, Nos. 2-124, M 8-85, C84-3894 and C84-743, at *1 (S.D.N.Y. May 30, 1986).

seeks to use privileged [material] while preventing [the Government] from examining the remainder of the communication." *Id.* at 544-545.  It has not done so.

"A defendant does not waive his privilege by using privileged communications to negate claims raised by the plaintiff[.]" *Ward v. Freeman*, 854 F.2d 780, 788 (5th Cir. 1988); *see Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987).  Accordingly, that the Government has solicited evidence relevant to its "numerous allegations" that Abbott's Home Infusion business "directly profited off Abbott's alleged price fraud scheme" is of no moment. (Third Motion to Compel at 6 (Dkt. No. 4799-4800); *see* Opp. at 10.)  Because any allegedly privileged responsive communications, provided at the Government's request, are, at best, being used by Abbott to rebut the Government's allegations, there can be no subject matter waiver. *See Ward*, 854 F.2d at 789 (no subject matter waiver where defendant used its privileged communications to rebut plaintiffs' fraud allegations); *Lorenz*, 815 F.2d at 1098 (to waive the attorney-client privilege by voluntarily injecting an issue into a case, a defendant must do more than merely deny a plaintiff's allegations").

Similarly, it was the Government, not Abbott, that put in issue the "state of mind" of Abbott employees in this action.  (Opp. at 10; First Amended Complaint. (Dkt. No. 4281).)  That Abbott employees testified generally relating to their state of mind regarding Abbott's Medicare and Medicaid compliance (*see* Opp. Ex. I, Ex. J), in response to Government questioning, does not deprive Abbott of its "privilege to protect attorney client communications from disclosure in discovery" – no matter how relevant the "attorney's advice may be . . . to the matters in issue"; "the privilege applies as the interests it is intended to protect are still served by confidentiality." *Rhone-Poulenc*, 32 F.3d at 864; *Fidelity & Deposit Co. v. McCulloch*, 168 F.R.D. 516, 520 (E.D.

Pa. 1996) (finding no waiver even though documents stated that corporation's "state of mind" was affected in a relevant manner by the advice of its counsel).

Nor have Abbott's defenses to the Government's claims put privileged material at issue. As even the Government recognizes, Abbott has not asserted an advice of counsel defense against the Government's claims in this case. (Opp. at 11); *see In re Keeper of Records*, 348 F.3d at 25 (courts will allow waivers only in discrete and limited situations, "almost invariably involving advice of counsel defenses"); *Rhone-Poulenc*, 32 F.3d at 863. While the Government tries to convert defenses Abbott has asserted into that defense (arguing that Abbott's Seventh and Tenth "affirmative defenses" result in subject matter waiver), the effort fails. (Opp. at 11.) Neither is that:

- Abbott's Seventh Defense states that "Abbott's actions were taken in good faith and in accordance with established industry practice." (*See* Abbott Laboratories Answer to the United States' First Amended Complaint.) Numerous courts have rejected the Government's argument that a defendant's right to assert the privilege is waived once it asserts that it acted in good faith. *See, e.g., Cardtoons, L.C. v. Major League Baseball Ass'n*, 199 F.R.D. 677, 682 (N.D. Okla. 2001) (finding no waiver of otherwise applicable privileges occurred based on the defendant's "general assertion . . . that it did not act in bad faith but acted in good faith"); *Rhone-Poulenc,* 32 F.3d at 863 ("[n]or is the privilege waived because the advice of counsel is relevant to the defense of an action for bad faith").

- Abbott's Tenth Defense merely avers that Abbott complied with all applicable laws and regulations; that is not an implicit "advice of counsel defense" justifying waiving the privilege. *See Cardtoons*, 199 F.R.D. at 682 ( a "[d]efendant does not assert an affirmative act or defense by denying that Plaintiff can prove an element of an offense which is Plaintiff's burden to prove').

Because of the implications for waiver, courts are clear that an advice of counsel defense cannot be raised by the Government's tenuous conjecture; it is "placed in issue [only] where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *See Rhone-Poulenc*, 32 F.3d at 863; *see Robertson v. Allstate Ins. Co.*, 1999 U.S. Dist. LEXIS 2991 (E.D. Pa. Mar. 10, 1999); *George v.*

*Wausau Ins. Co.*, 2000 U.S. Dist. LEXIS 16813 (E.D. Pa. Nov. 21, 2000). No such affirmative step has been taken here. That is enough to dispatch the Government's waiver contentions.[8]

**B.    In Any Event, None Of The Specific Communications That The Government Cites Waived Any Privilege.**

Beyond these fundamental problems with even the concept of subject matter waiver, the three forms of so-called "Attorney Advice" that the Government suggests Abbott disclosed, effecting a subject-matter waiver, do not hold up. These include: (1) Abbott's 30(b)(6) testimony regarding "Abbott's compliance efforts," (Opp. at 5); (2) thirty "compliance" presentations and manuals "created and/or reviewed by Abbott's General Counsel," (*id.* at 6); and (3) Abbott's "selective[e] disclos[ures] . . . in its public dealings with clients." (*Id.* at 7-8.)

**1.    Abbott's Submitting To The Government's Discovery Requests For Compliance Testimony In This Case Did Not Waive Any Privilege.**

To begin with, Abbott's 30(b)(6) testimony regarding compliance (which the Government demanded) was not even a disclosure of privileged information. In response to the Government's notice, Abbott proffered David Fishman, one of its in-house lawyers (who had some compliance responsibilities during part of the relevant time period), as its 30(b)(6) witness on compliance issues. The Government highlights Mr. Fishman's 30(b)(6) testimony stating that "consultation with in-house counsel was the basis for Abbott's understanding that its HPD employees were complying with Medicare and Medicaid statutes, regulations and guidance."

---

[8] The implied waiver cases cited by the Government are easily distinguished. Abbott has not, through any affirmative act, put any protected communications at issue (nor has the Government pointed to any such act). In every opinion cited by the Government, the courts found that in order for there to be subject matter waiver, the party asserting the privilege must affirmatively inject an issue into the litigation either through its own claim or an affirmative defense. *See, e.g., In re Keeper of Records*, 348 F.3d 16 (denying motion to compel because defendant had not raised advice of counsel defense); *In re PolyMedica*, 235 F.R.D. 28 (denying motion to compel documents underlying accountant's report where defendants did not put the report at issue); *In re AT&T Access Charge Litigation,* 451 F. Supp.2d 651 (D.N.J. 2006) (denying motion to compel because defendant had not raised advice of counsel defense); *United States v. Exxon Corp.* 94 F.R.D. 246 (D.D.C. 1981); *see Sax v. Sax*, 136 F.R.D. 542 (D. Mass. 1991) (defendant waived privilege of communications related to counterclaim); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975); *Starsight Telecast, Inc. v. Gemstar Devl. Corp.*, 158 F.R.D. 650 (N.D. Calf. 1994). Here, Abbott has not relied on any of the communications to support any affirmative defense.

(Opp. at 5.)  But the Government fails to demonstrate that the testimony revealed confidential client confidences.  In fact, Mr. Fishman testified only generally regarding "[p]roviding legal advice with respect to contracts," "compliance matters," and "provid[ing] a series of training on . . . fraud and abuse laws and on antitrust laws and generally the code of conduct."  (*See* Opp., Ex. E.)  At no point did Mr. Fishman discuss client confidences or attorney advice.  (*See id.*)  Indeed, when asked about the specific attorney advice, Mr. Fishman (and his attorney) responded, "[t]hat would be privileged."  (Opp. Ex. E at 14:22-16:15.)

It is black-letter law that such "general assertion[s] lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege[.]" *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989).[9]  Were it otherwise, privilege could be stripped in every situation where a deponent consulted with an attorney regarding the topics raised by the cross-examining attorney.  For this reason, numerous courts, confronted with the very issue presented by the Government, have refused to find an implied waiver.[10]  The result here should be no different.

---

[9] Because the concept of implied waiver of the attorney-client privilege is not well-developed in the First Circuit, Abbott's brief draws upon persuasive authority from other federal courts that have addressed the issues raised by the Government.  *See United States v. Desir*, 273 F.3d 39, 45 (1st Cir. 2001); *United States v. Billmyer*, 57 F.3d 31, 37 (1st Cir. 1995).

[10] *See Libbey Glass, Inc. v. Oneida Ltd.*, 197 F.R.D. 342, 346-347 (N.D. Ohio 1999) (refusing to find waiver of privilege even where corporation's Executive Director of Marketing testified that attorneys provided advice regarding "the legal ramifications of copying" because deponent did not disclose substance of attorney-client communications). *In re Brand Name Prescription Drugs Antitrust Litigation*, 1995 U.S. Dist. LEXIS 12041, No. 94C897 MDL 997, at *3 (N.D. Ill. Aug. 18, 1995) (holding that a deponent's statement that "we had antitrust counsel at the major meetings . . . and the guidance we were given is that in no way can this discussion include any discussion of future impact or present impact" revealed nothing substantive about attorney-client communications, other than counsel's direction to "comply with the law generally" and did not result in a waiver of the privilege"); *Polyvision Corp. v. Smart Techs., Inc.*, 2006 U.S. Dist. LEXIS 12688 (W.D. Mich. Mar. 7, 2006); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 630 (D. Colo. 1998) (defendant's deposition testimony that corporation "relied on advice of counsel in denying [Plaintiff's] claim" does not establish an at issue waiver of the advice); *United States v. Jackson,* 969 F. Supp. 881, 883 (S.D.N.Y. 1997); *Chore-Time Equip., Inc. v. Big Dutchman, Inc.* 258 F. Supp. 233 (W.D. Mich 1966).

## 2. Abbott Did Not Waive Privilege By Producing Compliance Materials In Response To The Government's Discovery Requests.

The Government's related contention regarding Abbott's "selective" production of compliance presentations and documents (the "Compliance Documents") is equally unpersuasive. (*See* Opp. at 6; Opp. Ex. F.) These specific presentations, handbooks, and company-wide policies and procedures constitute general recitations of Medicare and Medicaid law created or reviewed by Abbott counsel acting in their cotemporaneous roles as "Compliance Officer[s]"; they relate generally to Fraud and Abuse "Issues," "Updates," "Guidelines," "Compliance Program[s]," "Contract Basics," "Presentation[s]," "Overviews," "Fact Sheets," and "Handbooks."[11] (*See* Opp. at 6, Ex. E, F.) These documents were distributed broadly to the Abbott workforce, which undercuts the Government's contention that these were privileged in the first place. *See In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 432 (N.D. Ill. 2006) (compliance manuals distributed to "every employee whose duties involve marketing, sales or production management responsibilities" not protected by the attorney-client privilege); *see also In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1016 n.6 (1st Cir. 1988).

Moreover, these specific documents they contain only general overviews of the law, neither revealing client confidences nor containing specific attorney advice. *See Hartford Life Ins. Co. v. Bank of Am. Corp.*, 2007 U.S. Dist. LEXIS 61668, at *15 (S.D.N.Y. Aug. 21, 2007) (presentation containing "generic descriptions of the law as it might apply to the securities industry," and a "general explanation of the 'due diligence defense'" is not privileged attorney advice); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. at 432; *Miller v. Smith Barney, Harris*

---

[11] As one court explained, "the discoverability . . . of internal compliance manuals has not been the subject of much judicial attention. . . . [as] they are often merely a compendium of policies and rules, which by definition neither reveal client confidences nor constitute the giving of legal advice and thus are outside the scope of the attorney-client privilege, whether viewed broadly or narrowly." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. at 432.

*Upham & Co., Inc.*, 1986 U.S. Dist. LEXIS 28787, No. 84-4307, at *6 (S.D.N.Y. Feb. 27, 1986) (compliance manuals outside of attorney-client privilege because they are simply a "compendium of internal operating procedures and rules governing the activity of brokers"); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (memoranda not privileged because they contained only "neutral, objective analyses of agency regulations"). Because the Compliance Documents "reveal[] nothing more than [Abbott]'s self evident interest in avoiding liability through general compliance with [the] laws applicable to its industry," they do not constitute confidential attorney-client communications. *Hartford Life*, 2007 U.S. Dist. LEXIS 61668, at *18.

### 3. Abbott's Sending Documents To Customers Concerning Its Home Infusion Business Did Not Waive Any Privilege.

Finally, the Government contends that Abbott, by sending documents to its customers (over a decade before this litigation began) advising that its legal advisors had reviewed its Home Infusion business model and found it to comply with relevant federal laws and regulations, somehow waived privileges. (*See* Opp. at 7-8, Ex. E, Ex. G.)[12] Not so. For one thing, the fact that this took place nearly five years before Ven-A-Care filed its sealed complaint (and 15 years before the Government unsealed that complaint) eviscerates the Government's claim of tactical disadvantage. *See Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 316 (Fed. Cl. 2002) ("because plaintiffs have failed to demonstrate any prejudice or tactical disadvantage resulting from DOE's disclosure of two memoranda in a non-judicial setting over eight years ago, related confidential documents, if privileged, may be protected from disclosure").

---

[12] Even if there were a subject matter waiver (and of course, there was not), it would not apply prospectively, as the Government advocates. *See Nye v. Sage Products, Inc.*, 98 F.R.D. 452, 454 (N.D. Ill. 1982) (refusing to apply subject matter waiver to all subsequently generated documents); *Union Pac. Resources Co. v. Natural Gas Pipeline Co.*, 1993 U.S. Dist. LEXIS 9855 (N.D. Ill. July 19, 1993); *Duplan Corp. v. Deering, Milliken, Inc.*, 397 F. Supp. 1146, 1191 (D. S.C. 1975).

For another thing, "the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all confidential communications on the same subject matter." *In re Keeper of Records*, 348 F.3d at 24. Accordingly, even if Abbott disclosed attorney-client communications to customers in pre-litigation business dealings, that by itself did nothing to prejudice the Government's case here.[13] *See id.* (that a party has introduced its lawyer into business negotiations does nothing to cause prejudice to the opposition or to subvert the truth-seeking process . . .); *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Although . . . disclosures in the public arena may be 'one-sided' or 'misleading' so long as such disclosures are and remain extrajudicial, there is no legal prejudice that warrants a broad court-imposed subject matter waiver."). There is, therefore, no justification for an implied waiver of the privilege based on such disclosures. *See id.*

## CONCLUSION

For all these reasons, Abbott's Motion should be granted, and the entirety of the Government's request for affirmative relief (including the production of all documents referring to Abbott's in-house counsel's advice concerning all state and federal compliance or regulatory matters, Medicare and Medicaid and/or the Subject Drugs, and Abbott's business dealings and pricing that refer to federal and state statutes, regulations and guidance) should be denied.

---

[13] To the contrary, it is the Government's position which risks prejudicing Abbott: Broad subject matter waiver stemming from pre-litigation, extrajudicial communications provides "perverse incentives" to commercial clients because "parties would leave attorneys out of commercial negotiations for fear that their inclusion would later force wholesale disclosure of confidential information." *Id.* at 23-24. Such a result would "strike at the heart of the attorney-client relationship – and would do so despite the absence of any eclipsing reason for the implication of a waiver." *Id.*

Dated: June 20, 2008

Respectfully submitted,

/s/ Toni-Ann Citera
James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Fax:  (312) 782-8585

Toni Ann Citera
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Telephone: (212) 326-3939
Fax: (212) 755-7306

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Abbott Laboratories Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on June 20, 2008, the foregoing ABBOTT LABORATORIES INC.'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE THE FEBRUARY 16, 2007 PROTECTIVE ORDER AND FOR ORDER COMPELLING PLAINTIFFS TO RETURN INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Gabriel H. Scannapieco