**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MDL DOCKET NO. 1456<br><br>Civil Action No. 06-CV-11337<br>Lead Case No. 01-CV-12257<br><br><br><br>Judge Patti B. Saris<br><br><br> |
| _____ | | |
| THIS DOCUMENT RELATES TO:<br><br>*U.S. ex rel. Ven-A-Care of the Florida Keys, Inc., et al., v. Abbott Laboratories, Inc., et al.* | | Magistrate Judge Marianne B. Bowler |

**ABBOTT LABORATORIES INC.'S EMERGENCY MOTION TO
AMEND CMO-29 AND REQUEST FOR EXPEDITED RELIEF**

As this Court knows, AWP-based litigation is both legally complex and fact intensive. Indeed, the litigation of even one state's claims involves the analysis of a cornucopia of legal issues and the review of a virtual warehouse of paper and electronic data. Here, the complexities abound nearly fifty-fold, as the Government's claims relate to 49 different state Medicaid programs and the Medicare program. Simply put, this case is too complex to proceed fairly in the absence of informed, reasoned and unhurried expert testimony. Without a reasonable opportunity for both sides to present meaningful expert testimony, this Court will lack the understanding needed to render a just resolution to this case.

WHEREFORE, Abbott requests that the Court enter an order setting the remaining pretrial deadlines in this matter as follows:

| DEADLINE | ACTION |
|---|---|
| August 21, 2008 | Defendants shall serve expert reports and other materials in compliance with Fed. R. Civ. P. 26(a)(2)(B). |
| September 30, 2008 | Close of expert discovery |
| October 31, 2008 | Motion for Summary Judgment shall be filed. |
| November 26, 2008 | Responses to Motion for Summary Judgment shall be filed. |

| | |
|---|---|
| December 12, 2008 | Replies to Motions for Summary Judgment shall be filed. |
| December 23, 2008 | Sur-replies to Motion for Summary Judgment shall be filed. |

Abbott further requests that the Court expedite its consideration of this Motion given that the next CMO-29 deadline is July 21, 2008, the date for Abbott's expert reports.  There is no prejudice to the Government by granting this Motion.

## **BACKGROUND**

The Government was originally required to serve its expert reports on January 31, 2008, with Abbott's serving its reports on February 28, 2008.  (*See* CMO-29 (Dkt. No. 3956).)  Through a series of agreements between the parties and a pair of rulings by this Court, the Government's January 31, 2008 deadline was moved to May 27, 2008 and then June 20, 2008 and Abbott's deadline followed by a month.  (*See* April 15, 2008 Order granting Joint Statement of counsel and Request for Expedited Consideration Regarding Completion of Document Production and Other Pretrial Deadlines (Dkt. No. 5205); May 16, 2008 Order granting Motion to Amend CMO-29 and for Expedited Relief (Dkt. 5306).)

On June 20, 2008, the Government served the expert reports of Mark Duggan, Theodore Marmor, Matthew Perri, and Stephen Schondelmeyer (collectively the "Expert Reports").  The combined Expert Reports total 437 pages and contain 198 footnotes.[1]  The accompanying expert production contains approximately 48,642 individual documents (comprising a yet unknown number of pages), including, among other things, prior drafts of expert reports, correspondence with counsel and consulting experts, and extensive back-up schedules in electronic format.  In addition to their voluminous size, the Expert Reports cover a broad range of topics, including: Plaintiffs' damages models (Duggan), government policy making (Marmor), the marketing of

---

[1] Mark Duggan's report totals 192 pages and contains 66 footnotes.  Theodore Marmor's report totals 75 pages and contains 90 footnotes.  Matthew Perri's report totals 66 pages and Stephen Schondelmeyer's report totals 105 pages and contains 42 footnotes.

2

pharmaceutical products (Perri), and a broad survey of the pharmaceutical market, drug pricing, federal-state Medicaid programs, Medicare, and Abbott's price reporting (Schondelmeyer). Prior to the production of the Expert Reports, Abbott worked diligently with its experts to begin preparing their reports for submission to Plaintiffs. However, as witnesses for the defendant, a significant portion of the opinions rendered by Abbott's experts will necessarily respond to the opinions rendered by Plaintiffs' experts. It is impossible to meaningfully formulate expert opinions responsive to those opinions prior to receiving the Government's Expert Reports.

Currently Abbott is allotted one month to submit its expert reports and, if Abbott is to have the benefit of gathering testimony in aid of its own reports, to depose the Government's experts. Abbott has met and conferred with Plaintiffs' counsel regarding the proposed deadline changes (the "Proposed Extension"). Relator's counsel indicated that they would recommend to the United States such an extension as a courtesy to Abbott.

Without providing any meaningful reason, the Government refused, as a purely tactical matter, to grant any extension. The Government takes this position even though Abbott has granted the Government extensions of time to respond to nearly every motion filed in this case. The Government's lack of fair-play is highlighted by its refusal of the extension even though it will have no effect on the summary judgment briefing schedule even though Abbott proposed to extend the close of expert discovery to give the Government more time to review Abbott's expert opinions.

## **ARGUMENT**

As a practical matter, the Government has had at least a year and-a-half to prepare its Expert Reports (and most likely much longer, as the Government collected data for an additional decade before unsealing its Complaint in Intervention in 2006). Now, despite this systematic

advantage, the Government refuses to allow Abbott more than one month during which Abbott must review the Expert Reports and expert production, depose the Government's experts (if Abbott intends to use such testimony in support of own experts' reports), and have its experts draft their corresponding reports.  Moreover, the Government asks that Abbott do so (1) even though production of key documents, including Medicaid claims data ("Claims Data") was largely produced at the very end of discovery and was riddled with errors, and (2) after the Government refused to explain its various damage theories (until the production of its Expert Reports).  The Government's systemic advantages should not be left unchecked, as they severely prejudice Abbott's ability to offer meaningful expert testimony to this Court.

> **A.   The Current Expert Discovery Schedule Does Not Afford Abbott With Sufficient Time To Review and Respond To The Government's Voluminous Expert Reports and Expert Production.**

The sheer size of the Expert Reports and expert production justifies granting the proposed extension.  In order for an expert witness to meaningfully respond to another expert's opinion, he must have a reasonable time to: (i) review the opposing report, (ii) review the materials underlying that report, (iii) formulate his own unbiased opinions relating to the issues raised in the reports, and (iv) draft his own report.[2]  Here, the Expert Reports and accompanying expert production total nearly 49,000 documents.  (*See* Background, *supra.*)  Given this immense library of materials, it would be impossible for any person to review the cited materials, let alone draft his or her own expert report within the time allotted by existing CMO-29.[3]

---

[2] Given the multifarious nature of the issues in this litigation, it was perhaps unwise for Abbott to agree to the one month window to respond to the Government's expert reports.  (*See* CMO-29 (as amended).)  However, as the progress of this case has revealed, such a small window deprives Abbott of the time necessary to reasonably and meaningfully respond to the claims of the Government's experts.

[3] Assuming, *arguendo*, that an expert witness could review the reports and underlying documents non-stop for the one month period, it would leave that person with less than forty-five seconds to review each document.

Moreover, Abbott should have the opportunity to depose the Government's experts in order to test the validity of their opinions. Indeed, as Abbott's experts review the voluminous production, so must its attorneys. The existing timeline leaves Abbott in a catch-22. Either Abbott has its experts draft their reports before Abbott can cross-examine the Government's experts or Abbott must rush to complete the depositions of the Government's experts without the opportunity of meaningfully reviewing the Expert Reports.[4] Both options prejudice Abbott's defense. Therefore, if this Court intends to allow Abbott the opportunity to offer expert testimony to rebut the Expert Reports, it must allow Abbott a reasonable amount of time to review the those reports and to depose the Government's experts.

> **B. The Government's Ongoing Production Of Medicaid Claims Data After The Close Of Discovery, And Its Reticence To Articulate Its Damages Model, Has Prejudiced Abbott's Ability To Prepare Its Expert Reports.**

Since the onset of discovery, Abbott has repeatedly requested the production of 49 states' Medicaid claims data ("Claims Data") from the Government prior to the April 25, 2008 close of fact discovery.[5] (*See* Judge Saris's Electronic Order of April 15, 2008 granting the parties' Joint Submission and Request for Expedited Consideration Regarding Completion of Document Production and Other Pretrial Deadlines (Dkt. No. 5206).) Indeed, this fundamental information should have been produced as part of the Government's initial disclosures (after the Government's decade long investigation). A detailed, state-by-state analysis of the Claims Data

---

[4] Indeed, the Government has already attempted to exploit the existing schedule, originally offering only July 3rd and 4th (later July 2nd and 3rd), 2008 for the deposition of Dr. Marmor (*less than two weeks after the Government served his report on Abbott*). Similarly, the Government offered only one set of dates for the deposition of Dr. Schondelmeyer (July 7th and 8th). The Government has since backed away from these prejudicial dates by agreeing to put Dr. Marmor up at the end of July (after Abbott's reports would be due under the current schedule, however).

[5] *See* Def. Abbott Laboratories Inc.'s First Set of Requests for Production of Documents and Tangible Things to Pl. United States of America (7/12/06), No. 6 (Ex. A) (requesting Medicare and Medicaid claims data); Ltr. from D. Torborg to L. Oberembt and J. Draycott (1/18/2008) (Ex. B); Ltr. from D. Torborg to L. Oberembt and J. Draycott (2/14/2008) (Ex. C); Ltr. from D. Torborg to M. Lavine & R. Brooker (3/5/2008) (Ex. D); Ltr. from D. Torborg to L. Oberembt, J. Draycott and A. Martinez (4/17/2008) (Ex. E); Ltr. from D. Torborg to L. Oberembt (6/23/2008) (Ex. F).

is necessary to support Abbott's defenses and refute the Government's claims and damage calculations. However, despite Abbott's repeated requests for the Claims Data and its knowledge that this data was necessary to support its claims, the Government has failed to produce any Claims Data for over half of the state Medicaid programs. Moreover, for several of the states for which the Government has produced data, it produced the data *nearly two months after the close of fact discovery.* (*See* Ltr. from L. Oberembt to D. Torborg (6/20/08) (Ex. G).) The Government's failure to timely produce such data leaves Abbott in the precarious position of responding to the Expert Reports without its experts having timely access to critical Claims Data. This tardiness justifies an extension by itself.[6] Moreover, the Government has still not produced the provider look-up table that Abbott has been requesting for months. The Government indicated in an April 25, 2008 brief in response to Abbott's motion to compel that it would be forthcoming, but Abbott still does not have it. (*See* Dkt. No. 5254, at 13.)

Likewise, the Government's unreasonable delay in articulating a clear theory of damages has prejudiced Abbott's ability to prepare its expert reports. For years now, the Government has largely ignored Abbott's discovery requests relating to Plaintiffs' damages theory.[7] Neither the Government's initial damage disclosures nor its responses to Abbott's damage interrogatories have revealed anything of significance to Abbott.[8] (*See* Gov.'s Objections and Resps. to Def.

---

[6] The Government should not be allowed to seek damages for states in which it has not timely produced Claims Data. Abbott reserves all rights to exclude such evidence, and any expert opinion that relies upon such evidence, at trial. Nevertheless, out of an abundance of caution--and because the Expert Reports seem to rely on the untimely produced Claims Data--Abbott's experts should be entitled to analyze the data.

[7] (*See, e.g.*, Ltr. from C. Cook to G. Gobena and J. Breen (8/29/06) (Ex. H); Ltr. from M. Lavine to C. Cook (9/07/06) (Ex. I); Ltr. from D. Torborg to J. Draycott (2/14/08) (Ex. C); Ltr. from D. Torborg to M. Lavine and R. Brooker (3/5/08) (Ex. C); Ltr. from E. Gortner to L. Oberembt (4/18/08) (Ex. J).

[8] Plaintiff's initial disclosures provided two damage theories. The first theory, which was accompanied by barebones spreadsheets offering little meaningful detail, is a self-defined, legally-deficient "tainted claims" approach. (*See* Plaintiffs' Rule 26(a)(1) Disclosures at 3 (8/09/06) (Ex. K).) This overly simplistic, short-cut approach sought to recoup every penny that the Medicare and Medicaid programs allegedly paid in reimbursements connected to the drugs at issue in the case – including every penny paid by State Medicaid programs. *Id.* at 3-5. This theory makes no effort to calculate damages consistent with the relevant caselaw. (*See* Ltr. from D. Torborg to M. Lavine and R.

6

Abbott's First Set of Interrogs. at 40 (relevant portions attached as Ex. L) (noting the "United States will rely on testifying experts to provide damage calculations").) Numerous other attempts to gain useful information were no more enlightening. (*See* Ltr. from D. Torborg to M. Lavine and R. Brooker (3/5/08) (Ex. D).)[9] Instead of providing meaningful, numerical information, the Government provided mere prose and legal jargon that avoided the more substantive issues confronted by actually providing calculations. (*See* Ltr. from M. Lavine to R. Cook and D. Torborg (3/14/08)) (Ex. M).) Indeed, Duggan's report represents the Government's first attempt at fully articulating its damages theories. The Government's refusal to meaningfully articulate a clear theory of damages has prejudiced Abbott's ability to prepare its expert opinions prior to the Government's production of its own Expert Reports. This failure impacts all of Abbott's reports.

### C. Abbott's Request Does Not Prejudice The Parties And Preserves This Court's Summary Judgment Briefing Schedule.

Abbott's request comes at no cost to the parties or this Court. Extending the deadline for serving Abbott's expert reports does not prejudice the Government's case -- it simply re-allocates expert deadlines in a more equitable fashion. Here, the Government has benefited from numerous extensions of its original deadline for filing expert reports (not to mention an eleven-year extension from when this case was filed to when they unsealed). Thus, while the

---

(continued…)

Brooker (3/5/08) (Ex. D).) Plaintiff's "alternative damage theory" sought damages equal to "the difference between the reimbursements inflated by the Defendants' false price reporting and the prices at which the products in the Complaint were generally and currently available in the marketplace." But Plaintiffs provided no detail regarding the methodology or assumptions to be used in this "alternative damages theory." No computation or even an estimation of damages—not a single number—was provided.

[9] Among other things, Abbott sought a numerical estimate of the actual damages alleged (segregated by state/carrier, year, and drug); the "but-for" market prices the Government contends Abbott should have report, and the bases for those calculations; the amounts the Government contends the Medicaid and Medicare programs "would have paid" to providers for dispensing or administering the Subject Drugs; the impact of Abbott's reported prices on the median AWP calculated for Medicare; and the impact of removing claims not paid under the states' estimated acquisition cost formula (*e.g.*, AWP – 10%).

7

Government could use each extension of time to fine tune its expert opinions, Abbott has been forced to wait until the production of the Expert Reports to know the full extent of Plaintiffs' theory of the case.[10]

Moreover, Abbott's Proposed Deadline leaves the Government with approximately six weeks during which to review Abbott's expert reports and depose Abbott's expert witnesses. Given the Government's existing advantages entering the final two months of expert discovery, it will not be prejudiced by rescheduling of expert discovery deadlines. Moreover, the proposed extension will not effect the overall progression of the litigation. The proposed extension preserves the summary judgment briefing schedule and corresponding deadlines. Both parties will have a full month to draft summary judgment arguments – just eleven days less than what is currently allotted under CMO-29.

## **CONCLUSION**

For these reasons, in order to avoid prejudice in defending against the Government's claims, Abbott request that the Court Order the following remedies:

- Re-set the CMO-29 deadline by which Abbott must serve its expert reports until August 21, 2008;

- Re-set the CMO-29 close of expert discovery until September 30, 2008; and

- Any other relief the Court deems necessary or appropriate.

---

[10] Although some of the Government experts have offered expert testimony in other AWP-related cases, those opinions did not provide any notice as to the contents of their June 20, 2008 expert opinions. Indeed, by way of example, Marmor's June 20, 2008 report condenses his former reports into a single footnote (*see* excerpt of June 20, 2008 Expert Report of Professor Theodore R. Marmor, PhD, at 24 n.33 (Ex. N)), while Duggan's June 20th report discusses the entirety of Medicare and Medicaid.

Dated:  June 26, 2008　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ Toni-Ann Citera

　　　　　　　　　　　　　　　　　　　　　　James R. Daly
　　　　　　　　　　　　　　　　　　　　　　Jason G. Winchester
　　　　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　　　　77 W. Wacker Dr., Suite 3500
　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois  60601-1692
　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 782-3939
　　　　　　　　　　　　　　　　　　　　　　Fax:  (312) 782-8585


　　　　　　　　　　　　　　　　　　　　　　Toni Ann Citera
　　　　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　　　　222 East 41st Street
　　　　　　　　　　　　　　　　　　　　　　New York, New York  10017-6702
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 326-3939
　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 755-7306


　　　　　　　　　　　　　　　　　　　　　　R. Christopher Cook
　　　　　　　　　　　　　　　　　　　　　　David S. Torborg
　　　　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　　　　51 Louisiana Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C.  20001-2113
　　　　　　　　　　　　　　　　　　　　　　Telephone:  (202) 879-3939
　　　　　　　　　　　　　　　　　　　　　　Fax:  (202) 626-1700

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Abbott Laboratories Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on June 26, 2008, the foregoing ABBOTT LABORATORIES INC.'S EMERGENCY MOTION TO AMEND CMO-29 AND REQUEST FOR EXPEDITED RELIEF was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Gabriel H. Scannapieco