# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C.  20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

Direct Number:  (202) 879-5562
dstorborg@jonesday.com

March 5, 2008

VIA E-MAIL

Mark A. Lavine
Assistant United States Attorney
United States Attorney's Office
99 N.E. 4 Street
Miami, Florida 33132

Renée Brooker
Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20004

Re:   *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.*,
      MDL No. 1456/Civil Action No. 01-12257-PBS

Dear Mark and Renée

      This letter follows the parties' recent meet-and-confers concerning the subject of damages.

      As counsel for Abbott explained during those calls (and on numerous previous occasions), we do not believe that the United States has provided meaningful damage information in this case.  As to the FCA and common law fraud counts, Plaintiffs' initial disclosures (served August 9, 2006) set forth two broad "theories" of damages, neither of which reveal anything of significance to Abbott, and both of which fall short of what is required under the Federal Rules.  The first theory is a legally-deficient "tainted claims" approach that seeks to recoup every penny that the Medicare and Medicaid programs allegedly paid in reimbursements for the Abbott drugs at issue in the case.  This theory makes no effort to compute *damages* in accordance with applicable law.  *See, e.g.*, *Woodbury v. United States*, 359 F.2d 370, 379 (9th Cir. 1966) (damages in FCA and fraud cases are generally measured as "the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful.").  We have found no legal support for the "tainted claims" theory.[1]

---

[1] Plaintiffs have not provided any dollar figures for Medicaid J-Code claims.  The initial disclosures merely stated that such information "is not available at this time," and that "Plaintiffs have engaged experts to explore various Medicaid J-Code damages theories."

Mark Lavine, Esq.
Renée Brooker, Esq.
March 5, 2008
Page 2

Plaintiffs' second theory, the "alternative damages theory," seeks damages under the FCA and common law fraud counts equal to "the difference between the reimbursements inflated by the Defendants' false price reporting and the prices at which the products in the Complaint were generally and currently available in the marketplace." Despite Abbott's repeated requests, however, Plaintiffs have provided no detail regarding the methodology or assumptions to be used in this theory, or any estimation of actual damages under this theory.

The United States' response to Abbott's Interrogatories No. 8 (served December 4, 2006) was similarly uninformative. This response merely repeated the substance of the initial disclosures, and indicated that the "United States will rely on testifying experts to provide damage calculations." As we indicated during our recent conversations, courts do not excuse the obligation to provide reasonable damage disclosures simply because experts may later be retained to assist or refine damages calculations. *See, e.g.*, *Oakwood Homes Corp. v. OHC*, 340 B.R. 510, 541 (Bankr. D. De. 2006) ("'If estimates are made which might be subject to revision with expert opinion, that is entirely permissible, but the requirements of Fed. R. Civ. P. 26(a)(1)(C) cannot be avoided if the opposing party insists on compliance.'") (quoting *Dixon v. Bankhead*, No. 4:00CV344, 2000 WL 33175440, *1 (N.D. Fla. Dec. 20, 2000)). Defendants do not have to wait until the expert discovery phase of litigation to obtain reasonable damage estimates.

In addition, Plaintiffs have not provided any damages information in support of the unjust enrichment claim. Plaintiffs' initial disclosures merely state that "the recovery for the Plaintiffs' unjust enrichment claim is the amounts by which the Defendants were unjustly enriched, including an accounting of all revenues unlawfully obtained by the Defendants, the imposition of a constructive trust upon such revenues, and the disgorgement of the illegal profits obtained by the Defendants, plus interest, costs, and expenses." This disclosure is insufficient. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2nd Cir. 2006) (agreeing with trial court ruling that mere language in initial damages disclosures regarding "all profits earned by Defendants" was inadequate and upholding trial court's exclusion of plaintiff's expert testimony seeking to introduce expert evidence regarding lost profits).

During our recent meet-and-confer, counsel for Abbott explained the types of information that we believe should have been provided by this point in the case. Mr. Lavine has indicated that the United States would be willing to provide some additional information, but was unclear on the substance and form that would be provided.

I indicated to Mr. Lavine that Abbott would set forth in writing the type of information it was seeking, and that we expected the United States to provide this information in a formal, signed response (including a verified response to Abbott's Interrogatory No. 8). This letter is intended to serve that purpose. It is not intended to be exhaustive, and the United States should,

JONES DAY

Mark Lavine, Esq.
Renée Brooker, Esq.
March 5, 2008
Page 3

of course, supply all information necessary to fully and fairly disclose the damage theories it intends to rely upon at trial.

**FCA and Common Law Fraud Damages.**  For each of the Medicare and Medicaid claims at issue, Abbott is entitled to some computation of damages under Plaintiffs' "alternative damages theory."  In particular, Abbott is entitled to numerical figures that fairly set forth the United States' best estimate of, in your words, the "difference between the reimbursements inflated by the Defendant's false reporting and the prices at which the products in the Complaint were generally and currently available in the marketplace."  *See Oakwood Homes*, 340 B.R. at 540 ("Courts have understood the word [computation] to require a 'specific computation' of a plaintiff's damages" and "a disclosure of a specific dollar figure") (internal citations omitted).

In addition to numerical figures, Abbott is entitled to an explanation of the methodologies and assumptions that Plaintiffs intend to use in computing FCA and common law fraud damages. *See Oakwood Homes*, 340 B.R. at 540 ("[T]he plaintiff needs to provide the defendants with an initial estimate as to their claimed damages and at least 'some analysis' of how the relevant facts lead to that dollar figure.").  It appears from our conversations that the United States does not intend to calculate damage figures separately for each of the allegedly false claims at issue in the case.  Accordingly, a detailed explanation of the methodologies and assumptions that Plaintiffs intend to use in computing damages is particularly important.

For Medicaid pharmacy (NDC) claims, Abbott believes a meaningful damage analysis under Plaintiffs' "alternative damages theory" would provide or consider at least the following:

- the total amount of Medicaid pharmacy damages sought for each state, broken out by quarter/year and NDC, and the methodologies and assumptions used to compute those damages;

- for each quarter or year during the Relevant Claim Period, the specific prices (in dollars and cents) at which you contend each of the NDCs "were generally and currently available in the marketplace" (hereafter, the "market prices");

- an explanation of the methodology used to calculate the market prices, including but not limited to the sources of these prices and the classes of trade included in the calculation;

- for each quarter or year during the Relevant Claim Period, the amount you contend each of the State Medicaid programs would have paid in ingredient cost reimbursement for each of the NDCs but for Abbott's alleged misconduct, and the factual bases for and/or assumptions used in those contentions;

JONES DAY

Mark Lavine, Esq.
Renée Brooker, Esq.
March 5, 2008
Page 4

- for each quarter or year during the Relevant Claim Period, the amount you contend each of the State Medicaid programs would have paid in dispensing fee or any other service fee reimbursement for each of the NDCs but for Abbott's alleged misconduct, and the factual bases for and/or assumptions used in those contentions;

- removal of the state portion of the allegedly false claims, so that only the federal participation share is included in the analysis;

- removal of claims that were reimbursed upon Usual and Customary or Actual charges, were covered by state maximum allowable costs or federal upper limits, or were otherwise not reimbursed upon some percentage of AWP or WAC, and/or an explanation and quantification of any recovery being sought on such claims;

- the impact of rebates paid by Abbott under the Medicaid Drug Rebate Program;

- in determining the total amount paid on the allegedly false claims, how the United States intends to remove dispensing fees paid in connection with those claims;

- the total amount of civil penalties sought, and the legal and factual basis for each penalty claim; and

- any previous recovery related to the Subject NDCs, including but not limited to any judicial proceeding or settlement with Providers.

For Medicare and Medicaid J-Code claims, Abbott believes a meaningful damage analysis under Plaintiffs' "alternative damages theory" would provide or consider at least the following:

- the total amount of Medicare damages sought for each state or Part B Carrier/DMERC, broken out by quarter/year and J-Code, and the methodologies and assumptions used to compute those damages;

- the total amount of Medicaid damages sought for each state or Part B Carrier/DMERC, broken out by quarter/year and J-Code, and the methodologies and assumptions used to compute those damages;

- for each quarter or year during the Relevant Claim Period, the specific market prices for each of the NDCs utilized in the calculation of payment amounts;

JONES DAY

Mark Lavine, Esq.
Renée Brooker, Esq.
March 5, 2008
Page 5

- an explanation of the methodology used to calculate the market prices, including but not limited to the sources of these prices and the classes of trade included in the calculation;

- for each quarter or year during the Relevant Claim Period, the amount you contend each of the Part B Carriers, DMERCs, State Medicaid programs, or Fiscal Intermediaries would have paid in ingredient cost reimbursement for each of the J-Codes but for Abbott's alleged misconduct, including an explanation of how you compute the impact of specific NDCs upon the calculated median AWP or lowest branded AWP;

- for each quarter or year during the Relevant Claim Period, the amount you contend each of the Part B Carriers, DMERCs, State Medicaid programs, or Fiscal Intermediaries would have paid in dispensing fee or any other service fee reimbursement for each of the J-Codes but for Abbott's alleged misconduct, and the methodologies or assumptions used in those contentions;

- for each quarter or year during the Relevant Claim Period, the market share for each of the Subject J-Codes, including an explanation and supporting documentation for all underlying methodologies and assumptions;

- removal of claims that were reimbursed upon Usual and Customary or Actual charges, were covered by state maximum allowable costs, or were otherwise not reimbursed upon some percentage of AWP or WAC, and/or an explanation and quantification of any recovery being sought on such claims;

- the total amount of civil penalties sought, and the legal and factual basis for each penalty claim; and

- any previous recovery related to the Subject J-Codes, including but not limited to any judicial proceeding or settlement with Providers.

**Unjust Enrichment Damages.**  As noted above, Plaintiffs have not provided any meaningful information concerning the unjust enrichment claim.  We ask that Plaintiffs provide a computation of damages for this claim, as well as the methodology you presently intend to use in computing those damages.  The computation and methodology must be consistent with applicable law on damages for unjust enrichment claims.

As previously indicated in our meet-and-confers, Abbott cannot wait until the United States submits expert reports to obtain the fundamental damage information outlined herein.

JONES DAY

Mark Lavine, Esq.
Renée Brooker, Esq.
March 5, 2008
Page 6


Accordingly, we ask that the United States supply the requested information at your earliest opportunity, but by no later than Friday, March 15, 2008. Given Mr. Lavine's previous indication that additional damage information could be provided by February 26, 2008, a deadline of Friday, March 15, 2008 is reasonable. Please advise me by Monday, March 11, 2008 if the United States is unwilling to supply the requested information by this time.

                                      Very truly yours,

                                      /s/ David S. Torborg

                                      David S. Torborg


cc:     Counsel for United States
           Counsel for Ven-A-Care
           Counsel for Dey
           Counsel for Roxanne