# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

Direct Number: (202) 879-5562
dstorborg@jonesday.com

April 17, 2008

VIA EMAIL

| | |
|---|---|
| Laurie Oberembt, Esq. | Ana Maria Martinez, Esq. |
| Senior Trial Counsel | Assistant United States Attorney |
| Commercial Litigation Branch | Southern District of Florida |
| 601 D Street, NW | 99 N.E. 4th Street |
| Washington, DC 20004 | Miami, FL 33132 |

M. Justin Draycott, Esq.
Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20004

Re:   *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories, Inc.*

Dear Counsel:

As you may recall, we have previously requested contact information from the States so that we could independently address questions that have arisen concerning Medicaid claims data produced through the Department of Justice.  *See* Torborg Letter of 3/5/08; Torborg Letter of 2/14/08.  It was our hope that we could minimize the burden on you and address these issues directly with the states.  Unfortunately, you have not provided the contact information requested.  Accordingly, since we do not know whom to contact at the states to address these issues, this letter sets forth, by state, the issues that have arisen thus far in our review of the data.  We are hereby requesting your assistance in resolving these issues.

**Connecticut.**  Our questions concern the claims data contained on compact disc HHD177, sent by Laurie Oberembt on February 25, 2008.  After a careful review of this dataset, we have observed a number of problems which indicate that that a complete re-pull of this data is necessary in order for us to conduct meaningful and/or reliable analysis of the claims reimbursed by Connecticut's Medicaid program.  The Connecticut NDC-based Medicaid claims dataset is comprised of 46 distinct files, one file per quarter.  For many of the data files, there are a number of data fields that do not correspond with the data headers provided.  For example, the data field indicated by the data header as "Paid Date" contains numeric values that appear to represent some price or dollar amount (*e.g.*, 193.98), as well as other numeric values that appear to represent a date in YYMMDD format (*e.g.*, 971125).  Other examples include the following:

JONES DAY

Laurie Oberembt
M. Justin Draycott
Ana Maria Martinez
April 17, 2008
Page 2

- Data field indicated by the header as "Refills" contains alphabetical characters (*e.g.*, A, B), as well as numeric values (*e.g.*, 2.8, 18000);

- Data field indicated by the header as "Bill Amt" contains numeric values that appear to represent some price or dollar amount (*e.g.*, 91.23), as well as numeric values that appear to represent some code (*e.g.*, 01); and

- Data field indicated by the header as "Qty Disp" contains alphabetical characters (*e.g.*, 0N14782) well as numeric values (*e.g.*, 1.6, 1013957).

Given the lack of reliable data header information denoting the information represented in each data field, and the lack of consistency in the types of data populated in each data field, the level of confidence we have in the accuracy of the dataset as a whole is low.  We do not think it is practical or even possible for us to "reconfigure" or "fix" the data to match up every data field to the correct data header.  We request that the United States or Connecticut please reproduce the data files such that each file contains the exact same fields in the exact same order in the file, and that the order of the data fields in each file correspond to one common data header provided for the entire claims dataset.

Moreover, upon comparing reimbursement units and dollars paid by Quarter and NDC in the claims dataset to state drug utilization data maintained by CMS, we noted instances where decimals appear to be missing from values populated in the reimbursement units and dollars fields.  This results in units and dollars being off by a factor of 10, 100, 1000 or more.  For example, for a certain NDC and Quarter, total units are 28,760 and dollars reimbursed are 5,657,508.00 in Connecticut's NDC-based Medicaid claims data.  For the same NDC and Quarter, total units are 2,876 and dollars reimbursed are 56,575.08 in CMS's state drug utilization data.  Reimbursement for the subject drugs is in excess of $100 million in Connecticut's NDC-based Medicaid claims data, whereas it is approximately $1.8 in CMS's state drug utilization data provided in the Government's initial disclosures.

**Florida.**  Our questions concern the claims data contained on compact disc HHD145, sent by Justin Draycott on November 30, 2007.  From the data provided, allowed charges for some of claims appear to have been based upon a "GULP Price."  Our review indicates, however, that the actual GULP information was not included in the 117 data files and 2 reference documents produced.  We are requesting a dataset containing the following fields:  Generic Upper Limit Price, NDC, price effective date, and price expiration date.  We are also requesting information necessary to comprehend the methodology used to determine the GULP Price for these claims.

JONES DAY

Laurie Oberembt
M. Justin Draycott
Ana Maria Martinez
April 17, 2008
Page 3

In addition, other claims appear to have been "manually priced." We need to understand the methodology used to "manually price" the allowed charges for these claims, and are requesting information necessary to understand this claims field.

**Illinois.**  Our questions concern the claims data contained on compact disc HHD145, sent by Laurie Oberembt on January 3, 2008. We have noted a number of areas upon which we require confirmation of our understanding of the data, as well as a couple of areas where we need additional information. In particular:

- The claims dataset was produced in two distinct formats – one for claims processed through 1996 and the other for claims processed from 1997 through 2004. The data dictionary we received appears to be for claims processed from 1997 through 2004. We request that a data dictionary for claims processed through 1996 also be provided.

- The dataset for claims processed through 1996 does not appear to include a field indicating the amount reimbursed for the claim line. We are requesting either:

    - Confirmation that the amount reimbursed for claims processed through 1996 is equivalent to allowed charges (*i.e.*, that the field named "SERV-ALLOW-CHRG" represents the amount reimbursed for the claim line); or

    - Confirmation of the field that represents the amount reimbursed for claims processed through 1996; or

    - Supplemental data containing a data field representing the amount reimbursed, along with some means of "linking" this data to the original dataset provided (*e.g.*, using Steck ID field).

- For claims processed from 1997 through 2004, the data includes a field named "EntitlementProgramCd," which is defined in the data dictionary as "a code that indicates the general Federal category of assistance the claim was paid under." This field is populated with the following values: A, B, C, D, N, which are not defined or explained in the data dictionary. For these codes, we request either:

    - Plain English description for each code; or

    - Confirmation that all claims were reimbursed by Illinois Medicaid.

JONES DAY

Laurie Oberembt
M. Justin Draycott
Ana Maria Martinez
April 17, 2008
Page 4

       In any event, we want to make sure we understand the types of claims included in the dataset so that we do not include in our analysis claims that were not reimbursed by Illinois Medicaid.

- There are a number of claims with high dispensing fees (*e.g.*, $58 to $358). We are requesting an explanation for these high dispensing fees and how these high dispensing fees factor into the determination of the amount to reimburse for the claim. To the extent this field "ProfessionalFeeAmt" is inaccurate or unreliable, we request additional data containing reliable dispensing fee information, along with some means of "linking" this data to the original dataset provided (*e.g.*, using Steck ID field).

- The dataset does not appear to include an ingredient cost field that is consistently populated with non-zero values. For all claims, we are requesting either:

    - ingredient cost data; or

    - the price(s) used to determine ingredient cost, along with some means of "linking" this data to the original dataset provided (*e.g.*, using Steck ID field).

- The dataset does not appear to include a field indicating the basis of reimbursement for each claim (*e.g.*, U&C, AWP, MAC if applicable, etc). For all claims, we are requesting this information, along with some means of "linking" this data to the original dataset provided (*e.g.*, using Steck ID field).

   **Ohio.** Our questions concern the claims data contained on compact disc HHD155, sent by Laurie Oberembt on January 8, 2008. We require definitions for encoded values in the dataset, and confirmation of the approach we are taking to correct errors in the data. We also request key additional information necessary to perform a meaningful analysis of the claims. In particular:

- The field "AWP62-ALLOW-CHG-SRC," which is described in the data dictionary as "code of how allowed amount determined," is populated with C, Z, G, A, K. Unfortunately, these letters are not defined or explained in the data dictionary. For these codes, we request that the following be provided:

JONES DAY

Laurie Oberembt
M. Justin Draycott
Ana Maria Martinez
April 17, 2008
Page 5

- Plain English explanation as to the description of each code. For example, "Code Z means that the claim allowed amount was determined based on provider-submitted usual and customary charges."

- Description of how one might confirm the accuracy of the allowed charge code on a given claim line using the data contained within that claim line. For example, "Claim lines where the allowed charge code is 'Z' may be confirmed by comparing 'AWP-CHARGE-AMT' to 'AWP62-ALLOW-CHG', which should contain equivalent values."

- It appears from our analysis that Ohio had MACs on some of the subject drugs. However, no MAC pricing information was provided in the data production. We are also requesting information necessary to comprehend the methodology used to determine the MAC prices for these claims.

- The field "AWP62-ALLOW-CHG," which is described in the data dictionary as "amount allowed for the claim," appears to be missing a decimal point. As a result, the values in this field are overstated by a factor of 100 (*e.g.*, allowed charge appears as 1643.0 rather than 16.43). We request confirmation that the corrective action to take in making this field suitable for analysis is to divide every value in this field by 100.

- The dataset does not appear to include information pertaining to dispensing fees or ingredient cost, which we believe were factored into the determination of the amount of allowed charges for each claim line. For all claims, we are requesting the following additional fields:

    - The amount of dispensing fees applicable to the claim; and

    - The price or prices (*e.g.*, AWP less discount, MAC, any other) used to determine the drug or ingredient cost.

- Additionally, to the extent we are provided with just these additional fields (rather than a complete "replacement" dataset), we request that we also be provided with some means of "linking" these additional fields to the Ohio claims dataset that was previously produced to us. This may be accomplished by using the "Steck ID" field, which is unique to each claim line. To the extent this data is included in the Ohio claims dataset, please confirm the fields containing this data.

JONES DAY

Laurie Oberembt
M. Justin Draycott
Ana Maria Martinez
April 17, 2008
Page 6


       As I am sure you realize, these are serious issues that require your immediate attention. A failure to correct these issues will make it impossible for our experts to meet the deadlines agreed upon by the parties.

       Please do not hesitate to call me to address any questions regarding our requests.

       Sincerely,

       /s/ David S. Torborg

       David S. Torborg

cc:    Counsel for the United States
        Counsel for Ven-A-Care
        Counsel for Dey
        Counsel for Roxanne