**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | Civil Action No. 01-12257-PBS |
|  | Judge Patti B. Saris |
| *State of Arizona v. Abbott Labs, et al.* 06-CV-11069-PBS |  |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF STATE OF ARIZONA'S MOTION FOR A PROTECTIVE ORDER LIMITING SCOPE OF DISCOVERY**

The State of Arizona ("Plaintiff" or "Arizona"), the named plaintiff bringing this action, seeks an order prohibiting Defendants from obtaining any discovery from State agency files. Such an order would bar Defendants from obtaining any party discovery and would force Defendants to litigate a case alleging claims against 19 pharmaceutical manufacturer families, thousands of drugs, and potentially millions of transactions entirely through third-party discovery. The law does not permit such an unfair result. The State of Arizona, like any plaintiff, has an obligation to preserve documents relevant to the claims or defenses in this case that it brings, or that could lead to the discovery of admissible evidence. The burden is on Plaintiff, not Defendants, to determine how to comply with Plaintiff's discovery obligations. Defendants do not agree that the contents of the Plaintiff's files are irrelevant. For these reasons and as explained more fully below, Plaintiff's motion should be denied.

**INTRODUCTION**

**A.   PLAINTIFF'S CLAIMS COVERING THOUSANDS OF DRUGS AND MILLIONS OF PHARMACEUTICAL TRANSACTIONS.**

Plaintiff's First Amended Complaint ("Complaint") includes a single count under the Arizona Consumer Fraud Statute, A.R.S. §§ 1521, *et seq.,* against nineteen different families of pharmaceutical manufacturers for injunctive relief, penalties, and restitution on account of every private payment, Medicare co-payment, and insurance reimbursement made in Arizona for more than a thousand drugs over an unspecified number of years, likely comprising millions of transactions. (*See* Compl. ¶ 514.) Although the Complaint does not seek to recover on behalf of Plaintiff's Medicaid program or other state agencies, the claims of the Complaint are not "narrow" as Plaintiff asserts. (*See* Arizona's Mem. in Supp. of Mot. for Protective Order ("Protective Order Mem.") at 9 (June 13, 2008) (Dkt. 5378).) In fact, although the Complaint is far from clear, the breadth of the claims rivals those asserted in the MDL Class Action before class certification and summary judgment.

The Complaint seeks to recover for Medicare co-payments, private payments, and reimbursements in all segments of the pharmaceuticals market, with respect to both self-administered and physician administered drugs, and without regard to the role Pharmaceutical Benefit Managers ("PBMs") might have played in reimbursement. Thus, while the Complaint may be "***unique*** among the dozens of state AWP cases pending," (Protective Order Mem. at 1), it presents claims and issues similar to or, in some instances, the very same as, those asserted in the MDL Class Action.[1] That MDL Class Action, presenting similarly "narrow" claims, has been pending before this Court since 2001, and is still not completely resolved.

---

[1] In fact, some Arizona citizens on whose behalf Plaintiff brings these claims already recovered for many of the transactions at issue through various settlements in the MDL class action, or, similarly, their claims have been presented to and adjudicated by this Court.

Plaintiff's Complaint does, however, differ from the MDL Class Action in some significant ways. For example, Plaintiff's Complaint is limited to transactions in Arizona, as opposed to the nationwide classes proposed by class plaintiffs. More importantly for purposes of the instant motion, the Complaint is not a class action brought by private individuals or corporations, but an action brought by the State of Arizona. (*See* Compl. ¶ 25.) Plaintiff's suggestion that an order prohibiting discovery of Arizona is justified "where, as here, the government is not even a party," (Protective Order Mem. at 8), is therefore quixotic.[2] The State of Arizona, and nobody else, brought this action against Defendants and, accordingly, appears in the caption of this case as the only Plaintiff. Plaintiff's proposed order – that "[d]iscovery from State agency files shall not be allowed," (Proposed Order Granting AZ's Mot. For Prot. Order Limiting Scope of Discovery (June 13, 2008) (Dkt. 5377-2)) – would prohibit Defendants from obtaining any discovery from *the only* opposing party in this action and would force Defendants to defend against the Complaint's sweeping and often ambiguous claims solely through third party discovery.[3]

**B.    PLAINTIFF'S REQUESTS THAT DEFENDANTS CONCEDE THAT THE PLAINTIFF HAS NO DISCOVERABLE DOCUMENTS.**

When Plaintiff approached Defendants' counsel about releasing Plaintiff from its litigation hold, Defendants' liaison counsel responded that it could not do so because it simply did not agree with the proposition that "agencies—even though they do not have actionable claims—'are irrelevant and not subject to discovery in this case.'" (*See* Declaration of John

---

[2] Plaintiff makes similarly confusing and confused assertions elsewhere in the brief . (*See* Protective Order Mem. at 4 ("[n]either the State nor the agencies retaining the documents have claims in the case."), 8 ("neither the government nor any governmental agency brings a claim."), 10 ("[g]iven the marginal utility of State information to the claims of the State's private citizens here ..."). Arizona may have brought this suit on behalf of Arizona citizens, but it is Arizona, and not private citizens of Arizona, that asserts these claims.

[3] Plaintiff notes that Defendants have not moved to dismiss, answered, or served discovery in this action, implying that Defendants are solely at fault for any delay in the progress of the case and/or discovery. (*See* Protective Order Mem. at 2 n.1, 7.) Plaintiff, however, has shown little interest in responding to Case Management Orders and briefing schedules proposed by Defendants or, more broadly, in prosecuting this case.

Bueker in Supp. of Defs.' Mem. in Opposition to Pls.' Mot. for Protective Order ("Bueker Decl.), Ex. A (February 2, 2007 letter from James Duffy to Ann Uglietta).) The justifications for Defendants' response were not, as suggested in Plaintiffs' memorandum, limited to a then-existing ambiguity as to the status of potential claims on behalf of the State Medicaid agency, AHCCCS, and potential information possessed by other state agencies that could bear on those claims. Rather, Mr. Duffy noted that "even if the State is not bringing claims on behalf of its Medicaid agency, Defendants believe that certain documents possessed by AHCCCS are relevant to the issues in this case," and invited further discussion on the topic. (*Id.* at 2.) Defendants' position, even before Plaintiff amended their Complaint, was that Arizona had unavoidable discovery obligations as the plaintiff in this action, whether or not it sought to recover on behalf of state agencies.

After Plaintiff filed its Amended Complaint to clarify that it did not seek recovery on behalf of AHCCCS, Plaintiff again sought to obtain Defendant's consent that the "State agencies, their employees and documents are not subject to discovery or disclosure obligations." (*See* Bueker Decl., Ex. B (May 8, 2007 letter from Ann Uglietta to James Duffy at 2).) Plaintiff incorrectly states that the only response to that letter cited "an unrelated Department of Justice ("DOJ") lawsuit as a basis to maintain this case's litigation hold on AHCCCS." (*See* Protective Order Mem. at 5.) While a particular Defendant facing a suit from the DOJ did write to Ms. Uglietta to confirm that the state has obligations to preserve documents in that litigation, in addition to its obligations to preserve documents in the instant action, (*See* Bueker Decl., Ex. C (June 11, 2007 letter from Eric Gortner to Ann Uglietta)), James Duffy, liaison counsel for Defendants, subsequently responded more fully on behalf of all Defendants. (See Bueker Decl., Ex. D (June 22, 2007 letter from James Duffy to Ann Uglietta).)

Mr. Duffy reiterated that Defendants "cannot responsibly confirm or agree with the State's assertion concerning the relevance of State records to the State's claims in this litigation when Defendants have not seen these documents." (*Id.*) Responding to Ms. Uglietta's criticism that Defendants did not inform her of the possible relevance of documents in the State's files, Mr. Duffy provided just a few examples of information the State might have that would be relevant to the claims and defenses in this case and that would, therefore, be discoverable, including: "[c]orrespondence between the State and various private insurers, self-insured employers or private individuals concerning drug reimbursement;" "[c]orrespondence between the State and the State Medicare carrier(s) concerning drug reimbursement;" and "internal or external analyses or studies concerning drug reimbursement." (*Id.* at 2). Mr. Duffy closed his letter by noting that "Defendants believe that the State is in the same position with respect to the preservation of documents as is any other plaintiff that files a lawsuit, and Defendants here are in no better position than are defendants generally to advise plaintiffs on how they should meet their discovery obligations." (*Id.*). Defendants' position has not changed. The State may very well have information relevant to this case, examples of which were specified by Mr. Duffy, and, as the Plaintiff in this action, has an obligation to preserve any such documents.

Recently, Plaintiff again contacted Defendants about releasing the state from its litigation hold.[4] Since Defendants previously and repeatedly emphasized that Plaintiff carried the same discovery obligations as any other plaintiff who files suit, Defendants responded to this most recent request with an e-mail indicating that Defendants would not agree to releasing the State from its discovery obligations while this case remained pending. (*See* Bueker Decl., Ex. E (May 8, 2008 e-mail from John Bueker to Jeniphr Breckenridge).) In a follow-up telephone

---

[4] Regretfully, Plaintiff's initial attempts to contact Defense liaison counsel earlier this year were sent to a partner who had recently retired resulting in an unfortunate delay in responding to the Plaintiff's request. (*See* Protective Order Mem. at 2 n.1, 7.)

conversation, Mr. Bueker reiterated the position Defendants had maintained all along—Defendants are not in a position to instruct Plaintiff as to which of its files, which Defendants have not seen, might be relevant to this case, nor do Defendants have any obligation at this stage of the litigation to instruct the state as to how to fulfill its discovery obligations.  (*See* Bueker Decl ¶ 7.)

## ARGUMENT

### I.  PLAINTIFF'S DUTY TO PRESERVE AND RETAIN DOCUMENTS UNDER THE LITIGATION HOLD REMAINS IN EFFECT.

Under well-established precedent, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Zubulake* v. *UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) ("Zubulake V").  This doctrine imposes on the litigant the "*duty to preserve* what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."  *Zubulake* v. *UBS Warburg LLC,* 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("Zubulake IV") (emphasis added).  And "[o]nce a 'litigation hold' is in place, a party and her counsel must make certain that all sources of  potentially relevant information are identified and placed 'on hold'."  *Zubulake V*, 229 F.R.D. at 432.

Upon the institution of the litigation hold, the litigant bears an "ongoing" duty to preserve and retain the documents until the litigation is over.  *Id.* at 432-33 ("Once a party and her counsel have identified all of the sources of potentially relevant information, they are under a duty to retain that information.").  That is, "[a] party or anticipated party must retain all relevant documents . . . in existence at the time the duty to preserve attaches, and any relevant documents

created thereafter." *Zubulake IV*, 220 F.R.D. at 218.  After all, "the notion of a 'duty to preserve' connotes an *ongoing* obligation." *Zubulake V*, 229 F.R.D. at 433 (emphasis added).

Thus, the duty to preserve, and consequently "[l]itigation-hold notices[,] should remain in effect until a matter is ultimately concluded." *Issuing and Managing Litigation-Hold Notices*, 64-AUG Bench & B. Minn. 20, 23 (2007).  "A matter is ultimately concluded when: 1) a final settlement agreement and release has been signed by all parties; 2) a dismissal with prejudice has been entered as to all parties; or 3) the deadline for any further appeals has run and the entered judgment has become final." *Id.*

Here, the matter is far from being "ultimately concluded" – discovery has yet to begin – yet Plaintiff wants to be relieved of its duty to preserve relevant documents.  The law does not permit such a result.  Plaintiff claims that shortly after filing suit, it issued a litigation hold including "any State entity that might conceivably purchase or reimburse for prescription drugs" and used as examples "discovery many of the defendants named in this case had served in other state AWP litigation."  (Protective Order Mem. at 4.)   Plaintiff now contends, however, that it "immediately realized that there was no nexus between the documents held and the lawsuit," notwithstanding the fact that it brought this motion only years later and have never offered any reason for its sudden "realization" or explanation other than burden for its apparent change of heart.

Plaintiff cannot back out of its litigation hold obligations for potentially relevant documents.  Although it had asked Defendants to relieve such obligation, "[t]he obligation to preserve evidence that is *potentially* relevant to imminent or ongoing litigation is an affirmative duty that rests squarely on the shoulders of [the litigant]," not the opposing party.  *Cf. United States ex rel. Koch* v. *Koch Indus., Inc.*, 197 F.R.D. 463, 484 (N.D. Okla. 1998) (emphasis added); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598, 615

(D.N.J. 1997) ("The obligation to preserve documents that are potentially discoverable materials is an affirmative one that rests squarely on the shoulders of senior corporate officers."). Although case law on litigation holds is still developing, there is no precedent for a Court prohibiting all discovery of the party who filed suit because of the expense attendant to the litigation hold it elected to impose.  As Defendants told Plaintiff in their June 22, 2007 letter, "Defendants believe that the State is in the same position with respect to the preservation of documents as is any other plaintiff that files a lawsuit, and *Defendants here are in no better position than are defendants generally to advise plaintiffs on how they meet their document preservation obligations*."  (*See* Bueker Decl., Ex. D (June 22, 2007 letter from James Duffy to Ann Uglietta, p. 2) (emphasis added).)  This Court should enforce Plaintiff's duty to preserve these potentially relevant documents and deny its motion.

## II.    THE STATE AGENCY DOCUMENTS ARE RELEVANT.

Plaintiff alleges that state agency documents are irrelevant because it brought the suit on behalf of its state consumers and other payers, not its state agencies.  But the state is the named plaintiff, it is a party to the action, its agencies are implicated, and it functions as a knowledgeable third-party payer ("TPP") in the marketplace.  The documents of its state agencies are relevant.

As explained in prior correspondence, "Defendants believe that certain documents possessed by these State agencies are relevant to the issues in this case."  (*See* Bueker Decl., Ex. A (February 2, 2007 letter from James Duffy to Ann Uglietta).)  Potentially relevant documents include, among other categories,  "correspondence between the State and various private insurers, self-insured employers or private individuals concerning drug reimbursement; correspondence between the State and the State Medicare carrier(s) concerning drug

reimbursement; and internal or external analyses or studies concerning drug reimbursement." (*See* Bueker Decl., Ex. D (June 22, 2007 letter from James Duffy to Ann Uglietta).)

Moreover, the State functions as an important player in the Arizona marketplace for pharmaceutical purchasing and reimbursement, regardless of whether Plaintiff seeks to recover specifically on behalf of state agencies. To prove similar claims in the MDL Class Action, these same lawyers representing the Plaintiff here advanced an expectations theory that purported to discern the level of "spread" the marketplace generally expected. *In re Average Wholesale Price Litig.*, 491 F.Supp.2d 20, 40 (D. Mass. 2007). Should Plaintiff pursue a similar theory here, the knowledge and activities of the state agencies participating in the marketplace should be among the information used to determine the information available to other sophisticated entities. For precisely that reason, Judge Saris, in the MDL Class Action, viewed reports by various agencies in the Federal Government and actions taken by Congress as bearing on what participants in the private marketplace knew or should have known. *Id.* at 41-44.

Likewise, in its Class certification decision, the Court, after significant discovery, refused to certify a class with respect to self-administered drugs, a claim that reappears in this Complaint, finding that "[a]t least since the start of the class period, the most knowledgeable industry insiders, like the larger TPPs, including Blue Cross/Blue Shield of Massachusetts ("BCBSMA"), the named plaintiff, came to understand that with respect to self-administered drugs, like pills, the AWP of the pill did not reflect the actual average price charged by wholesalers to retail pharmacists." *Id.* at 40. The Plaintiff in this action is another sophisticated TPP and its knowledge is also potentially relevant to what the market understood on such issues. Also relevant, as noted above, would be any information the Plaintiff might have shared with the private entities and individuals on whose behalf Plaintiff brings its claims. Allowing Plaintiff to

-9-

foreclose discovery of its state agencies would prematurely foreclose findings key to its claims and Defendants' defenses. The law forbids such result.

## III. PLAINTIFF'S REQUEST IS PATENTLY UNREASONABLE AND DOES VIOLENCE TO FUNDAMENTAL FAIRNESS.

Plaintiff requests this Court to (1) limit discovery by excluding state documents from discovery, or (2) force Defendants to provide a list of categories of documents they seek and to pay for costs associated with the litigation hold. Meanwhile, Plaintiff failed to diligently prosecute its case, and its amended complaint is unreasonably broad, amorphous, and riddled with claims, and claims with respect to drugs, previously rejected by this Court.

In short, Plaintiff wants to have its cake and eat it too. It wants release from its litigation hold obligations but has not proceeded with its case. Cost, alone, should not be a barrier to discovery, especially since the State is the one who brought this suit and is the party who has failed to prosecute the case. For example, at this time last year, Defendants' counsel repeatedly sent drafts of proposed CMOs to Plaintiff's counsel, with no response. (*See* Bueker Decl., Ex. F (June 15, 2007 email from Daniel Bennett to Sean Matt and Jeniphr Breckenridge) ("Sean and Jeniphr, I am writing to follow up on my e-mail below regarding the Proposed CMO. We would like to submit that Proposed CMO jointly to the court. Please let us now if you have any problems with our doing so.").) Defendants, for their part, have been willing to litigate this case, and in fact, have indicated a willingness to commence discovery as a way to resolve concerns raised by the state. (*See*, *e.g*., Bueker Decl., Ex. D(June 22, 2007 Letter from James Duffy to Ann Uglietta) ("Of course, discovery might shed light on these issues, which we are always open to discuss.").) Yet Plaintiff dragged its feet in prosecuting the case and now wants discovery foreclosed for its agencies.

Such an order would bar Defendants from obtaining any party discovery and would force Defendants to litigate a case alleging claims against nineteen manufacturer families,

-10-

thousands of drugs, and potentially millions of transactions entirely through third party discovery. The law does not permit such an unfair result. Plaintiff's motion should be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiff State of Arizona's Motion for a Protective Order Limiting Scope of Discovery should be DENIED.

        Submitted on behalf of Defendants by,

        /s/ John P. Bueker
        John P. Bueker (BBO #636435)
        Jobe G. Danganan (BBO #660446)
        Daniel J. Bennett (BBO #663324)
        Ropes & Gray LLP
        One International Place
        Boston, Massachusetts 02110-2624
        (617) 951-7000

        Attorneys for Defendants Schering-Plough Corporation and Warrick Pharmaceuticals Corporation

Dated:  June 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

                                              /s/ Jobe G. Danganan
                                              Jobe G. Danganan