UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | |
| | ) | MDL No. 1456 |
| ―――――――――――――――――――――――― | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti Saris |
| | ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories Inc.,* CIVIL ACTION NO. 06-11337-PBS | ) ) ) ) | |
| | ) | |

### UNITED STATES' AND VEN-A-CARE'S OPPOSITION TO ABBOTT LABORATORIES' MOTION TO AMEND CMO-29 AND REQUEST FOR EXPEDITED RELIEF

### PRELIMINARY STATEMENT

Plaintiffs respectfully submit that Abbott's motion to amend CMO 29 be denied and that the parties be required to adhere to the expert discovery schedule currently set forth in the case management order, a scheduling order jointly agreed to by Abbott Laboratories Inc. (Abbott) and the plaintiffs. Under that order, Abbott's expert reports are due on July 20, 2008. Plaintiffs do, however, join in Abbott's request for expedited consideration of Abbott's motion. Plaintiffs believe that prompt resolution will aid all parties and assist in setting expert deposition schedules. Accordingly, this opposition is filed ahead of schedule to facilitate the Court's consideration of Abbott's motion.

Abbott predicates its motion for more time for expert discovery on the alleged complexity of this case and the plaintiffs' expert reports. Abbott both exaggerates the complexities of this case and understates to the Court Abbott's intimate familiarity with the

plaintiffs' experts and their opinions.  In fact, the case is relatively straightforward:  Abbott reported prices that it knew and intended the government programs would rely upon that were as much as sixteen times (16X) their contemporaneous, average transaction prices.  Hence, they were far beyond *any* rational interpretation of what those reported prices should have been.[1] These price misrepresentations caused inflated government payments for Abbott's products.[2]

Regardless, these flawed efforts to paint the case as complex are immaterial to the motion to alter the case management schedule.  Plaintiffs oppose Abbott's request for an extension of its deadline for producing its expert reports and taking the depositions of plaintiffs' experts for two principal reasons.  First, and perhaps most important for the Court to be aware of, the material presented in the plaintiffs' expert reports – for all but one of plaintiffs' experts –  was already set forth in substantial detail in these same experts' reports and explored by Abbott in lengthy depositions in state court litigation in which Abbott is involved in Texas (Texas Abbott litigation).  Even the report of the other expert (Professor Mark Duggan) builds from many of the same base figures and methodologies similarly revealed in Texas (both Texas and the plaintiffs used Professor Duggan as an expert).  Indeed, the state of Texas used all of the experts in this case in its litigation against Abbott.  Abbott had months to review and probe the expert reports in

---

[1] For example, while Abbott's actual average price for Vancomycin  (00074-6533-01) was $5.86 in 1991 and declined throughout the relevant period to $4.31, Abbott knowingly reported prices that resulted in the publication of Direct Prices for that product of $38.00 in 1991, increasing during the relevant period to $64.35.

[2] Plaintiffs' damages expert calculates that 93.8% of all Medicaid payments for the Abbott products at issue in this case would have been lower had Abbott reported appropriate prices.

the Texas Abbott litigation, including conducting several days of depositions; Abbott already has a substantial head start on responding to the plaintiffs' expert witnesses.

Second, for this case to proceed meaningfully toward mediation and the remaining pre-trial proceedings, plaintiffs must have a clear idea, as soon as practicable, of the expert opinions that Abbott will proffer.

Based on the significant advance work Abbott already conducted in its expert discovery of the plaintiffs' witnesses through the Texas litigation and the lack of any real justification for the requested extension of expert discovery, plaintiffs respectfully ask this Court to reject the requested extension.  Alternatively, plaintiffs request that the Court make clear that in the event this request is granted, no further extensions will be permitted.

## ARGUMENT

### 1.   Abbott Has Already Conducted Extensive Discovery Involving Plaintiffs' Experts.

Buried in a footnote on the last page of its brief, Abbott acknowledges that "some of the Government experts have offered testimony in other AWP-related cases."  Abbt Mem. at 8, n 10. That is a major understatement of the circumstances of these reports.  In fact, plaintiffs herein served reports from four experts, each of whom had already been identified, submitted reports and been deposed by Abbott and its same counsel in the Texas Abbott case and each of whom relied primarily on materials available to Abbott long prior to the expert productions in this case:

- Prof. Stephen Schondelmeyer, perhaps the country's leading pharmacoeconomist, and a frequent investigator for CMS as well as consultant to numerous federal and state legislatures and Medicaid programs, previously submitted a fairly similar report in the Texas Abbott case about the scope and operations of the Medicaid

3

program and his writings are well known to defendants in these cases;

- Prof. Matthew Perri, a marketing expert from the University of Georgia, submitted a substantially similar report in the Texas Abbott case, focused entirely on Abbott's own conduct as evidenced by Abbott's own documents and witnesses (and supplemented here by late-produced documents from Abbott in this case);

- Prof. Theodore Marmor, a retired Professor of Public Policy and Political Science and Director of the post-doctoral program in Health Policy at Yale University, submitted a short rebuttal report in the Texas Abbott case challenging Abbott's claim that the Texas Medicaid program had knowingly and deliberately cross-subsidized allegedly inadequate dispensing fees by overpaying for product costs and here submitted a lengthier and broader report.  Prof. Marmor's report in this matter – like his Texas report -- focuses almost entirely on previously-identified government reports and matters of public record in presenting a reasoned and methodical analysis and refutation of defendant's primary defense: that the government entities knew of and approved of the pricing behaviors at issue in this case; and

- Prof. Mark Duggan, an economist at the University of Maryland, whose basic analysis of Abbott's actual prices is the same as he had similarly done in the Texas Abbott case, but whose report herein extended his analysis of what Texas Medicaid would have paid had Abbott submitted prices reflective of its true prices to an analysis of what all the state Medicaid programs and the federal Medicare program would have paid had Abbott submitted alternative prices.  The Abbott-

side of Prof. Duggan's analysis is nothing new to Abbott and its counsel; the expanded analysis of the other government reimbursement systems and methodologies includes additional information and analysis.  The basis of his expert opinions, however, involves exploring the same issue as in the Texas Abbott case – would the government have paid less had Abbott reported alternative prices – and it is based primarily on claims data that has been previously produced to Abbott.

Accordingly, it is an exaggeration to claim that it was "impossible to meaningfully formulate expert opinions responsive to [plaintiffs' expert opinions] prior to receiving the Government's Expert Reports."  Abbt. Mem. at 3.  Abbott could and should have started – and presumably did start – its expert consultation and preparation long before receiving plaintiffs' experts' reports.  At a minimum, Abbott has already – through expert discovery in the Texas Abbott case – developed a substantial body of information (including one or more days of deposition testimony of each witness) on the government's experts.  Abbott's unverified intimations that Abbott has not commenced expert consultation lack credibility.

**2. Further Delay Impedes Progress Towards Resolution of this Case**

It is incorrect to characterize the current situation as one that has been delayed by the government's extensions of time to complete expert reports.  Extensions were sought (and received) because of Abbott's chronic delays in completing fact discovery.  Abbott produced a substantial percentage of its overall document production in this case right at or substantially

after the close of fact discovery.[3]  In short, the plaintiffs' expert discovery extensions resulted from Abbott's failure to complete discovery on time.  Indeed, once Abbott signaled it was finally completing is document production, plaintiffs turned down Abbott's offer to extend plaintiffs' new expert discovery deadline beyond 30 days contemplated by the CMOs in this matter.

Plaintiffs object to the expert discovery delay Abbott seeks – or at least request that it be unalterably limited in extent – because they cannot continue their pretrial and mediation preparation without seeing defendant's expert reports.  Although there have been various iterations of Abbott's expected defenses, Abbott's positions have evolved and changed over time, and Abbott's expert reports will assist in confirming them once and for all.

### CONCLUSION

For the reasons set forth above, plaintiffs ask respectfully that the Court deny Abbott's motion.

---

[3] On or after April 25, 2008, the date previously set for the close of fact discovery, Abbott produced over 2.2 million pages of discovery to the United States.  This constitutes over two-thirds (2/3s) of Abbott's total, non-data production to the government during the entire discovery period.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3272
Fax: (617) 748-3398

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

 /s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St. Peter-Griffith
Special Assistant U.S. Attorneys
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101

GREGORY G. KATSAS
ACTING ASSISTANT ATTORNEY
GENERAL

 /s/ Gejaa T. Gobena
Joyce R. Branda
Daniel Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088

For Ven-A-Care of the Florida Keys,

/s/ Susan S. Thomas
Susan Schneider Thomas
Gary L. Azorsky
Rosalyn Pollack
Joy P. Clairmont
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-5711
Facsimile: 215-875-4604

7

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' AND VEN-A-CARE'S OPPOSITION TO ABBOTT LABORATORIES' MOTION TO AMEND CMO-29 AND REQUEST FOR EXPEDITED RELIEF** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

|  |  |
|---|---|
|  | /s/ Gejaa T. Gobena |
| Dated: July 2, 2008 | Gejaa T. Gobena |