# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>) MDL No. 1456<br>) Civil Action No. 01-12257-PBS<br>) |
| **THIS DOCUMENT RELATES TO:** | ) Hon. Patti B. Saris<br>) |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,* CIVIL ACTION NO. 05-11084-PBS | ) Magistrate Judge Marianne B. Bowler<br>)<br>)<br>) |

**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER RELATING TO THE REQUESTS BY THE DEY DEFENDANTS FOR DEPOSITIONS UNDER RULE 30(b)(6)**

The United States of America submits this reply memorandum in support of its motion for a protective order, pursuant to Federal Rule of Civil Procedure 26(c), prohibiting defendants Dey, Inc., Dey L.P., Inc. and Dey L.P. ("Dey"), from subjecting government witnesses to further depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) on fifteen of Dey's sixty-four (64) topic and 25 sub-topic areas. *See* Exhibit A, attached to Memorandum in Support. The topics at issue seek privileged and irrelevant information, are unreasonably broad and burdensome, and/or seek information that should be obtained by other means. Fed. R. Civ. P. 26(b)(2)(C).

### I. None of the Testimony Sought by Dey is "Central" to this Case

Dey repeatedly argues that the testimony it seeks is central to this case and charges that the United States has somehow failed to make critical witnesses available to Dey. Nothing could be farther from the truth on both counts.

Contrary to the representations in its opposition memorandum, Dey has participated in

and benefitted from extensive coordinated discovery taken of the United States in *United States ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.,* Civil Action No. 06-11337-PBS (D. Mass.), the first of the three False Claims Act cases filed by the United States in the AWP MDL proceeding. Similarly, Dey recently attended a deposition of a federal witness noticed by defendant Roxane Laboratories in *United States ex rel. Ven-a-Care of the Florida Keys, Inc., v. Boehringer Ingelheim Corp., et al.,* Civil Action No. 07-10248-PBS (D. Mass.). In fact, Dey has participated in no less than 30 depositions of government witnesses pursuant to both Rule 30(b)(1) and Rule 30(b)(6). Many of these witnesses were deposed for two, three and even four days. Dey's statement that it "has not yet been able to depose of any [sic] Government witness it has requested" is thus woefully misleading. Furthermore, the United States has produced the work papers for every Department of Health and Human Services (HHS), Office of Inspector General (OIG) report that actually concerns the drugs at issue for Dey, and Dey participated in the depositions of witnesses who testified regarding those reports.

**Topic No. 29 - The AIDS Drug Report**

Topic No. 29 concerns a July 2001 report on cost containment efforts in connection with AIDS drugs, none of which are at issue here. The report was prepared by the Office of Evaluation and Inspections (OEI) of HHS-OIG. Dey has participated in deposing no less than six OEI employees on reports that do address drugs at issue in this litigation. Dey argues that because the AIDS report contains a general chart describing "how pricing worked within the pharmaceutical industry[,]" Rule 30(b)(6) testimony is necessary "to show[] the Government's understanding of pharmaceutical pricing within the industry, and CMS' actions in the light of that understanding . . . ." Leaving aside for a moment the relevance of such general testimony in

2

a fraud case, the United States has already produced numerous witnesses on this topic from both OIG and CMS.  Dey itself questioned three former CMS administrators, Bruce Vladeck, Thomas Scully and Nancy Ann Min DeParle, during lengthy depositions that covered this general topic as well as others.  The same is true for OIG.  Dey's refusal to acknowlege the extensive discovery that has already occurred on this issue flies in the face of Judge Saris's repeated directives to the parties not to plough the same fields twice.  The information sought in Topic No. 29 is nothing more than an attempt by Dey to cover old ground in the guise of a Rule 30(b)(6) deposition.

Furthermore, in addressing the relevancy of government knowledge of drug pricing, this Court has ruled repeatedly that discovery of the government must focus on *specific* knowledge regarding a *specific* company's drugs and not general knowledge of drug pricing.  Dey acknowledges the legal basis for the Court's position that the government must "know[] and approve[] of the particulars of a claim before that claim is presented . . . ." *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999).  Dey further acknowledges that there is no specific information regarding its drugs in this report, nor does the testimony sought address any of its drugs.  Dey then attempts to argue that the government's common law fraud claim provides some basis for the discovery sought.  Here again, however, Dey tellingly admits that it is the government's "knowledge of *Dey's purported misrepresentation*" that is at issue here. (Opp. Brief at 6 (emphasis added)).  Thus, the admittedly general information sought by Dey is not relevant to this case.

### Topic No. 51 - The Medicare Part D Program

Here again, Dey seeks testimony that is far afield from the issues in this case.  Topic No. 51 focuses on CMS' comments on a January 2008 OIG report dealing with the Medicare Part D

program, the recently enacted prescription drug benefit program for senior citizens.  As the United States noted in its opening memorandum, there are no allegations in this case against Dey with respect to the Medicare Part D program, and the report does not focus on specific drugs or manufacturers.  Once again, Dey argues its need for completely general testimony regarding the broad topic of generic drugs in the Medicare Part D program.  As with the AIDS report, given the discovery that has already occurred in this case and the Court's oft-expressed views regarding the relevancy of general information, Dey cannot justify the burden to the United States of preparing a witness to testify regarding a drug program not even at issue here.

### Topic Nos. 61-62 - The 2003 OIG Compliance Guidelines

In 2003, the OIG issued compliance guidelines to pharmaceutical manufacturers.  Dey contends that it should be able to seek Rule 30(b)(6) testimony regarding the OIG personnel who prepared the guidelines and their knowledge and understanding of AWP.  Although the guidelines were issued by OIG, Dey argues the testimony sought will somehow illuminate *CMS's* general knowledge of AWP.  (Opp. Brief at 8).  It will not.  Dey then switches gears and argues that the testimony goes to the OIG's "definition" of AWP.  As this Court well knows, Judge Saris has defined AWP for purposes of the MDL and there is simply no basis for this discovery.

Dey then argues that the government's invocation of the attorney-client privilege and the deliberative process privilege are insufficient and premature.  The United States submits that the privilege issues here are sufficiently obvious that the Court may properly determine that a protective order is warranted.  Dey wants to question a Rule 30(b)(6) witness as to how and why government counsel issued the guidelines in their final format.  Leaving aside the irrelevancy of such testimony under *United States. v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004), such questions

clearly go to the heart of both privileges. Dey's efforts here are remarkably similar to defendant Abbott's attempt to depose government witnesses concerning the United States' *amicus* brief regarding the meaning of AWP. Time and time again, this Court has declined to invade the government's privileges to enable the defendants to obtain irrelevant information, particularly information that does not address a defendant's specific conduct or drugs. Dey's attempt here to override valid government privileges should meet the same fate as Abbott's earlier efforts.

### Topic Nos. 32, 33, 40 and 42 - The United States' Pre-Intervention Investigation

There is no dispute that Dey seeks information here protected by no less than four privileges: attorney-client, work-product, deliberative process and investigative files. Dey points to the ruling by Judge Saris denying Dey's motion to dismiss as the basis for seeking unprecedented discovery into why and how Department of Justice counsel chose to investigate this case and the timing of and basis for counsel's seeking authority to intervene against Dey. A review of what Judge Saris actually wrote, however, does not support the discovery sought here.

> While the number of extensions is worrisome, here, Dey has not produced any evidence that these extensions were improper, in bad faith, or prejudicial. The court originally in charge of this litigation permitted the government a number of lawful extensions to the sixty day seal deadline. Indeed, the government contends that Dey had notice of the action virtually from the time it was filed and engaged in considerable efforts to persuade the government not to intervene. Thus prejudice is unlikely. While in some circumstances egregious delay may be sufficiently prejudicial to trigger due process concerns, this record is insufficient to address any constitutional concerns.

*In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 399 (D. Mass. 2007).[1]

---

[1] In a footnote, Judge Saris also expressed her general displeasure with lengthy delays in making intervention decisions in *qui tam* cases. *Id.*, n.6.

Notwithstanding that Dey has copies of the extension requests and discovery in this case is close to completion, Dey still cannot point to any evidence of prejudice, much less of bad faith or impropriety by government counsel, that would justify the broad invasion of privilege sought here. Judge Saris's statement was not intended to give Dey license to engage in a fishing expedition, hoping to conjure up evidence of government misconduct. Dey's brief on this issue very effectively demonstrates exactly what Judge Saris suspected: Dey has not been prejudiced by the timing of the government's intervention decision. Discovery into the government's privileged communications will not demonstrate any prejudice to Dey. The bottom line is that Dey knew about the case from very early on and availed itself of every opportunity to defend against the charges in federal and state forums.

Finally, Dey argues that there is a potential public disclosure issue regarding relator's ability to bring suit. Dey points to a 1996 OIG report on albuterol as the purported public disclosure. First, the OIG report does not even qualify as a public disclosure because it does not contain the allegations or transactions of the suit against Dey. In *United States ex rel. O'Keefe v. Sverdup Corp.,* 131 F. Supp. 2d 87, 94 (D. Mass. 2001), this Court adhered to the widely accepted framework, set forth by the D.C. Circuit in *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994), for determining whether a public disclosure of the allegations or transactions has occurred. As set forth in *Springfield Terminal*, "the term 'allegation' connotes a conclusory statement implying the existence of provable supporting facts. [citation omitted] The term 'transaction' suggests an exchange between two parties or things that reciprocally affect or influence each other." 14 F.3d at 653-54. Therefore, "if $X + Y = Z$, Z represents the *allegation* of fraud and X and Y represent its essential elements." *Id.* at 654

6

(emphasis in original).  As the court emphasized, "Congress sought to prohibit *qui tam* actions *only* when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain." *Id.* (emphasis in original).  "When either of these conditions is satisfied, the government itself presumably can bring an action under the FCA and there is no place in the enforcement scheme for *qui tam* suits." *Id.*  Thus, absent the public disclosure of an allegation of fraud, both of the critical elements – "a misrepresented state of facts *and* a true state of facts" – must be in the public domain. *Id.* at 655 (emphasis in original).  The presence of one or the other, but not both, cannot be expected to set government investigators on the trail of fraud. *Id.* at 656.

     Under the *Springfield Terminal* test, it is clear that the 1996 government report cited by Dey does not constitute a public disclosure of the allegations or transactions because it does not contain the essential elements of the fraud (both X and Y), and certainly does not contain an allegation of fraud (Z).  The government report merely observes that providers often can purchase albuterol for less than the published AWP.  At most, the report reflects a concern about the government's use of published AWPs to set drug reimbursement to those providers.  Thus, to the extent the government report places anything in the public domain, it is, at most, some information about the misrepresented state of affairs and accordingly, not even half of the story.  Moreover, the true state of affairs, that Dey (and other drug companies) reported AWPs for their drugs that were inflated for the purpose of creating artificially large spreads, and reported AWPs that *no one* paid, clearly was not placed in the public domain by virtue of the government report

cited by Dey.[2] Accordingly, the government report does not constitute a public disclosure of the allegations or transactions of the instant suit and does not entitle Dey to discovery.

Second, even if Dey could establish a public disclosure for which relator was not the original source, this would not impact the Court's jurisdiction over this case. In *United States ex rel. Stone v. Rockwell*, 549 U.S. ___, 127 S. Ct. 1397 (2007), the Supreme Court noted that even the dismissal of a relator based on public disclosure grounds would not impact the United States' ability to bring suit. The relator in *Rockwell* filed his action in 1989. The government initially declined to intervene, but later sought and obtained permission to intervene in 1996, more than seven years after relator initially filed suit. 127 S. Ct. at 1403-1404. After trial and the issuance of judgement against Rockwell on certain FCA claims, Rockwell moved to dismiss relator, arguing that his claims were based on publicly disclosed information and he was not an original source. After finding that relator did not qualify as an original source, the Court went on to state that the relator's failure to satisfy the jurisdictional prerequisites imposed by the public disclosure bar did not negate the courts' jurisdiction over the government's own claims in the case. The Court held that once the government intervenes, the action becomes one brought by the government, which provides an independent basis for jurisdiction under the public disclosure bar. "Not even petitioners have suggested the bizarre result that the Government's judgment must be set aside. It is readily enough avoided, as common sense suggests it must be, by holding

---

[2] Notably, in prior AWP matters in this district, defendants like Dey have offered all the same types of reports for a variety of purposes, and the courts have properly ascribed little to no weight to them. As Judge Stearns observed, "[t]he recognition on the part of government regulators of inefficiencies in the administration of Medicare does not, as defendants contend, amount to condonation of fraudulent conduct." *In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148, 168 n.19 (D. Mass. 2003).

that an action originally brought by a private person, which the Attorney General has joined, becomes an action brought by the Attorney General once the private person has been determined to lack the jurisdictional prerequisites for suit." *Id*. at 1411.  Accordingly, while the Court did not directly address the statute of limitations issue, its decision supports the conclusion that the government's complaint in intervention relates back to the date of the relator's original complaint, even where, as in *Rockwell*, the relator's original complaint was defective.

**II. Conclusion**

For the reasons stated above, the United States respectfully requests that the Court enter an order of protection with respect to Dey's Rule 30(b)(6) Topic Nos. 29, 32-38, 40-42, 51, and 60-62.

        Respectfully submitted,

        GREGORY G. KATSAS
        ASSISTANT ATTORNEY GENERAL

        MICHAEL J. SULLIVAN
        UNITED STATES ATTORNEY

By:   /s/ George B. Henderson, II
        GEORGE B. HENDERSON, II
        Assistant U.S. Attorney
        United States Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3272

        JOYCE R. BRANDA
        DANIEL R. ANDERSON
        LAURIE A. OBEREMBT
        Civil Division

Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 514-3345